MDL 875*

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC - 1 2008

**MDL No. 875--*In re Asbestos Products Liability Litigation* (No. VI)**

FILED
CLERK'S OFFICE

*James W. Gibbens, et al., v. Aqua-Chem, Inc. et al.,*
*U.S. District Court, Middle District of Louisiana*
*Civil Action LAM 3 08-572*

### PLAINTIFFS' MOTION TO VACATE
### CONDITIONAL TRANSFER ORDER

More than two months ago, the U.S. District Court for the Middle District of Louisiana remanded this case to the state court where it had been litigated for six years due to the absence of federal subject matter jurisdiction, a decision mandated by 28 U.S.C.A. §1447(c). Federal law bars any subsequent review of that remand decision. 28 U.S.C.A. §1447(d).   Because this case has been remanded to state court, Plaintiffs respectfully request that this Court vacate the conditional transfer order entered under the authority granted in 28 U.S.C.A. §1407.

**BRENT COON & ASSOCIATES**

/s/ Lawrence G. Gettys
**LAWRENCE G. GETTYS**   (LBA# 23753)
Brent Coon & Associates
17405 Perkins Road
Baton Rouge, Louisiana 70810
Telephone: 225-751-7277
Facsimile: 225-753-4503
E-Mail: Lawrence.Gettys@bcoonlaw.com
ATTORNEYS FOR PLAINTIFFS

## OFFICIAL FILE COPY

IMAGED DEC 3  2008

PLEADING NO. 5698

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION** DEC - 1 2008

**MDL No. 875--***In re Asbestos Products Liability Litigation (***No. VI**)

FILED
CLERK'S OFFICE

*James W. Gibbens, et al., v. Aqua-Chem, Inc. et al.,*
*U.S. District Court, Middle District of Louisiana*
*Civil Action LAM 3 08-572*

<u>**BRIEF IN SUPPORT OF**</u>
<u>**MOTION TO VACATE CONDITIONAL**</u>
<u>**TRANSFER ORDER**</u>

RECEIVED
CLERK'S OFFICE
2008 DEC -1 A 10: 48
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

## **TABLE OF CONTENTS**

I.      PROCEDURAL HISTORY.........................................................................................1

II.     ARGUMENT.........................................................................................................2

      A.     Because the district court's remand order of September 19, 2008 was based
            on the absence of subject matter jurisdiction, it was not reviewable under
            28 U.S.CA. §1447(d).........................................................................................2

            1.     Even if properly invoked, Federal Rule of Civil Procedure 60(b)
                     cannot overcome the statutory ban on reviewing remand orders
                     imposed by 28 U.S.CA. §1447(d)............................................................3

            2.     Even if §1447(d) did not absolutely prohibit the district court from
                     reconsidering its remand order, the district court's "vacatur"
                     order was defective under Rule 60(b)......................................................4

      B.     Northrop never established–and the district court never
            determined-- that federal subject matter jurisdiction existed in this case............7

            1.     Northrop's removal petition is defective because it fails to
                     exclude the possibility that James Gill's injuries could have
                     been caused by acts or conduct at Avondale *not* taken under
                     the direction of a federal officer................................................................9

             2.     Northrop has failed to even *allege* that the conduct James Gill
                     claims caused his asbestosis was conduct taken under the
                     direction and control of a federal officer................................................11

             3.     Northrop failed to even *allege* a colorable federal defense....................15

                     a.     Northrop could assert no valid government contractor
                           defense under *Boyle*.................................................................16

                     b.     Northrop failed to assert a colorable federal defense
                           under the Longshore and Harbor Workers'
                           Compensation Act.....................................................................17

III.    PRAYER.............................................................................................................20

## TABLE OF AUTHORITIES

## CASES

*Arness v. Boeing International, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998)................................12

*Bahrs v. Hughes Aircraft Co.*, 795 F.Supp. 965   (D. Ariz. 1992)..............................................12

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).....................................................16-17

*Bradley v. Northrop Grumman Sys. Corp.*, 2007 WL 1115246 (E.D. La.2007)..............12, 15-16

*Browning v. Navarro*, 743 F.2d 1069 (5th Cir. 1978)...................................................................4

*Buffone Jambon v. Northrop Grumman Ship Systems, Inc*,  2007 WL 2992171
(E.D.La.2007).............................................................................................................................11, 16

*Cole v. Northrop Grumman Ship Systems, Inc.*,  2008 WL 2651428 (E.D. La. 2008)..............14

*Dow v. Baird*, 389 F.3d 882  (10th Cir. 1968)............................................................................6

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124 (3rd Cir. 1998)................................3, 7

*Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108 (2nd Cir. 2001)................................................6

*Freiburg v. Swinerton &Walberg Prop. Serv., Inc.*, 245 F.Supp.2d 1144 (D. Colo. 2002)........8

*Fung v. Abex Corp.*, 816 F.Supp 569 (N.D. Cal. 1992)............................................................12

*Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977), cert. den'd 436
U.S. 913, 98 S.Ct. 2253 (1978)....................................................................................................19

*Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E.D. La. 1997).........................................12, 14, 16

*Good v. Armstrong World Industries, Inc.,* 914 F.Supp. 1125 (E.D. Pa. 1996).......................12

*Hayes v. Koch Entertainment LP*, 2008 WL 4218773 (5th Cir. 2008, slip op.,
September 16, 2008).........................................................................................................................6

*Hunt v. Acromed Corp.*, 961 F.2d 1079, 1082 (3rd Cir. 1992)..................................................4

*In re Davitch*, 336 B.R. 241 (W.D. Pa. 2006)...............................................................6

*In re La Providencia Development Corp.*, 406 F.2d 251 (1st Cir. 1969)....................................4

*Maryland v. Soper (No. 1)*, 270 U.S. 9, 46 S.Ct. 185, 190 (1926)............................................10

*Matter of Timely Secretarial Service, Inc.*, 987 F.2d 1167 (5th Cir. 1993)..............................6

*McDowell v. Celebrezze*, 310 F.2d 43 (5th Cir. 1962)..................................................6

*Mesa v. California*, 489 U.S 121, 136-7 109 S.Ct. 959 (1989)................................7, 10, 11, 16

*Morse v. Lower Merion School District*, 132 F.3d 902 (3rd Cir. 1997)......................................8

*Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999)..................................................12

*New Jersey Dept. of Environmental Protection v. Dixo Company, Inc.*,
2006 WL 2716092  (D. N.J. 2006).......................................................................................8, 12

*New Jersey Dept. of Environmental Protection v. ExxonMobil*, 381 F.Supp.2d 398
(D. N.J. 2005)...........................................................................................................8, 11-12, 16

*Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal. 1996)...............................12, 19

*Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 942 (3rd Cir. 1990).............................19

*Poche v. Avondale Shipyards, Inc.*, 339 So.2d 1212 (La. 1977)..............................................19

*Pridgen v. Shannon*, 380 F.3d 721 (3rd Cir. 2004)......................................................................5

*Reed v. Final Oil & Chem. Co.*, 995 F.Supp. 705 (E.D. Tex. 1998)........................................12

*Ruffin v. Armco Steel Corp.*, 959 F.Supp. 770 (S.D.Tex. 1997).............................................12

*Samuel-Basset v. KIA Motors America, Inc.*, 357 F.3d 392 (3rd Cir.2004)...............................8

*Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155 (3rd Cir. 2004)................................5

*Sheppard v. Northrop Grumman Systems Corp.*, 2007 WL 1550992  (E.D. La. 2007)............15

*Snowdon v. A.W. Chesterton Co.*, 366 F.Spp.2d 157 (D. Me. 2005)........................................11

*U.S. v. Pauley*, 321 F.3d 578 (6ᵗʰ Cir. 2003)..........................................................5, 6

*Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813 (1969) ....................................8, 10, 12

*Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 37 (1921)...........................7

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5ᵗʰ Cir. 1998),
cert. den'd 526 U.S. 1034, 119 S.Ct. 1286 (1999).................................................11

## STATUTES

28 U.S.C.A.§1442(a)(1).........................................................................................7

28 U.S.C.A. §1447( c).........................................................................................3

28 U.S.C.A. §1447(d).........................................................................................3

33 U.S.C.A. §902.............................................................................................18

33 U.S.C.A. §904.............................................................................................18

33 U.S.C.A. §905...........................................................................................17-18

## RULES

Federal Rule of Civil Procedure 60(b)....................................................................5

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION  DEC - 1 2008

MDL No. 875--*In re Asbestos Products Liability Litigation (*No. VI)  FILED
CLERK'S OFFICE .

*James W. Gibbens, et al., v. Aqua-Chem, Inc. et al.,*
*U.S. District Court, Middle District of Louisiana*
*Civil Action LAM 3 08-572*

<u>BRIEF IN SUPPORT OF
MOTION TO VACATE CONDITIONAL
TRANSFER ORDER</u>

Accepting the parties' contention that federal subject matter jurisdiction did not exist, the

U.S. District Court for the Middle District of Louisiana signed and filed an order remanding this case

to state court on September 19, 2008.  Though 28 U.S.C.A. §1447(d) prohibits the review of remand

orders issued in cases where subject matter jurisdiction is absent, the district court purported to

"vacate" that remand order *sua sponte* thirty-eight days later, invoking the authority granted by

Federal Rule 60(b).  But Rule 60(b) does not give the district court power to take actions barred by

§1447(d).   Because remand orders based on the absence of jurisdiction are not reviewable, the

district court had no power to "reconsider" its September 19 remand order.   This case belongs in

Louisiana state court.  Plaintiffs respectfully request that this Court vacate the conditional transfer

order entered under the authority granted in 28 U.S.C.A. §1407.

## I.  PROCEDURAL HISTORY

Plaintiffs in the instant case filed their lawsuit in Louisiana state court more than six years

ago.  On August 6, 2008, they amended their petition to join Northrop Grumman Ship Systems, Inc.

[hereinafter "Northrop"] as a defendant with respect to the claim of James L. Gill alone, serving

Northrop on August 14.[1]  Northrup filed its notice of removal on September 11, 2008, but the trial

court granted an agreed order of dismissal and remand on September 19, 2008.[2]

Despite the fact that 28 U.S.C.A. §1447(d) prohibits the review of remand orders based on

the absence of federal subject matter jurisdiction, the trial court "reconsidered" its remand on

October 27, apparently believing that Federal Rule of Civil Procedure 60(b) provided it with

authority to do so.  Even though no party had filed the motion for relief required by Rule 60(b), the

court issued a *sua sponte* order that "vacated and set aside" the remand.  Conditional transfer order

CTO-317 was issued, and Plaintiffs filed a timely notice of opposition.  Plaintiffs' timely-filed

Motion to Vacate Conditional Transfer Order and Brief in Support followed.

## II.  ARGUMENT

**A.    Because the district court's remand order of September 19, 2008 was based
on the absence of subject matter jurisdiction, it was not reviewable under 28
U.S.C.A. §1447(d).**

This case should not be transferred to MDL-875 because on September 19, 2008, U.S.

District Judge John Parker signed and entered an order remanding this case to the 19th Judicial Court

for the Parish of East Baton Rouge.[3]  The order was issued after the court considered and

---

[1] *See* Notice to State Court of Filing Notice of Removal, September 11, 2008 and attached "Exhibit A" to that Notice ["Plaintiffs' First Supplement and Amendment to the Original Petition for Damages," August 6, 2008], attached herein as Exhibit C.

[2] *See* Order Granting Agreed Motion to Dismiss Defendant, Northrup Grumman Ship Systems, Inc. As Successor-in-Interest to Avondale Industries, Inc. and Remand Case to State Court," September 19, 2008, attached as Exhibit A; Exhibit C, Notice of Removal.

[3] See Exhibit A.

accepted the parties' contention that federal subject matter jurisdiction was lacking.[4]  If subject matter jurisdiction is lacking, the case must be remanded.[5]

Where, as here, a case is remanded to state court because federal subject matter jurisdiction is absent, that remand order is not reviewable on appeal *or otherwise*."[6]  The prohibition imposed by 28 U.S.C.A. §1447(d) applies even if the remand order was erroneous.[7]  Once the case has been remanded, §1447(d) prevents review "no matter how faulty we might consider the district court's reasoning or methods."[8]  Since this case was remanded on September 19 and the district court lacked power to reconsider that order, it cannot constitute a "tag along" action under 28 U.S.C.A. §1407. The case cannot be transferred to the MDL panel because there is no case left to transfer.

     1.       **Even if properly invoked, Federal Rule of Civil Procedure 60(b) cannot overcome the statutory ban on reviewing remand orders imposed by 28 U.S.C.A. §1447(d).**

On October 27, 2008, Judge Parker issued a *sua sponte* order in which he "vacated and set aside" his September 19 order of remand, finding that it had been entered "through mistake and

---

    [4] *See* Exhibit A, Order Granting Agreed Motion to Dismiss Defendant, Northrup Grumman Ship Systems, Inc. As Successor-in-Interest to Avondale Industries, Inc. and Remand Case to State Court," September 19, 2008, attached as Exhibit A. Judge Parker expressly states that he granted the remand order based upon the agreed motion and supporting memoranda filed by the parties; these pleadings demonstrate that remand is required because federal subject matter jurisdiction is absent. *See* Agreed Motion to Dismiss Defendant, Northrup Grumman Ship Systems, Inc. As Successor-in-Interest to Avondale Industries, Inc. and Remand Case to State Court and Memorandum in Support,  September 18, 2008, attached herein as Exhibit E.

    [5] 28 U.S.C.A. §1447( c).

    [6] 28 U.S.C.A. §1447( c), (d), emphasis added; *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 126 (3rd Cir. 1998) .

    [7] *Feidt*, 153 F.3d at 126, 128.

    [8] *Feidt*, 153 F.3d at 128.

-3-

inadvertence."[9]   Although 28 U.S.C.A. §1447(d) clearly prohibits review of remand orders based on an absence of jurisdiction by appeal "or otherwise," Judge Parker invoked Federal Rule of Civil Procedure 60(b) in support of this extraordinary action, though no party had filed a motion seeking relief from the remand order.  He made the decision to "vacate" the remand order without providing the parties with notice or an opportunity to be heard, without making any factual findings that relief was justified under Rule 60(b), and without independently ascertaining that subject matter jurisdiction existed.

Remand orders, erroneous or not, are final, and may not be reviewed by either an appellate court *or* the trial court exercising authority under Rule 60(b).[10]  Judge Parker's order was contrary to 28 U.S.C.A. §1447(d), particularly since his decision to "vacate" his remand order was unaccompanied by any analysis of the jurisdictional question on the merits.   At no point did he determine that jurisdiction existed in this case, nor did Northrop proffer the required allegations and evidence demonstrating the existence of federal subject matter jurisdiction.  Because jurisdiction is absent and the case was properly remanded, the conditional transfer order should be vacated

> **2.      Even if §1447(d) did not absolutely prohibit the district court from reconsidering its remand order, the district court's "vacatur" order was defective under Rule 60(b).**

Rule 60(b) authorizes federal courts to relieve parties from final judgements, orders, or proceedings, but only "upon motion and just terms."[11]   The rule is not to be used to correct legal

---

[9]  See Order, October 27, 2008, attached as Exhibit B.

[10]  *Hunt v. Acromed Corp.*, 961 F.2d 1079, 1082 (3rd Cir. 1992); *Browning v. Navarro*, 743 F.2d 1069, 1078 (5th Cir. 1978); *In re La Providencia Development Corp.*, 406 F.2d 251, 252-3 (1st Cir. 1969)(district court had no power to reconsider its remand order).

[11]  Fed. R. Civ. P. 60(b).

errors; that is for the appellate courts.[12]  Only extraordinary and special circumstances justify the

grant of relief under Rule 60(b).[13]

Although Judge Parker stated that his decision to reconsider the remand order was made in

reliance upon Federal Rule of Civil Procedure 60(b), no party had previously filed a motion seeking

relief from remand order, as contemplated by that rule.  As stated above, the decision was made *sua*

*sponte*, in the absence of any notice to the parties.  That being the case, no new evidence or argument

was before the court to explain the decision, and the court never articulates the factual bases for its

conclusion that the remand order had been based on "mistake and inadvertence."  Finally, the court

never made an independent determination that subject matter jurisdiction in fact existed in this case.

These actions are contrary to both Federal Rule of Civil Procedure 60(b) and 28 U.S.C.A. §1447(

c).  Even if its remand order was reviewable under 28 U.S.C.A. 1447(d)–which it was not–the court

failed to exercise the authority granted under Rule 60(b) properly.

Although Rule 60(a) clearly affords the district court with authority to reconsider orders *sua*

*sponte*, the express terms of Rule 60(b) indicate that a motion filed by a party is a prerequisite to

relief.  Nevertheless, circuits have split on whether this rule in fact allows the court to grant relief

*sua sponte*.[14]  The Sixth and Tenth Circuits have held that *sua sponte* relief is not available,[15] while

the Second, Fourth, Fifth, and Ninth Circuits have held that *sua sponte* relief is permissible.[16]  The

---

[12]  *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 173 (3rd Cir. 2004).

[13]  *Pridgen v. Shannon*, 380 F.3d 721, 728 (3rd Cir. 2004).

[14]  *See U.S. v. Pauley*, 321 F.3d 578, 581 and n. 1 (6th Cir. 2003)(analyzing conflict and collecting cases).

[15]  *Pauley*, 321 F.3d at 581; *Dow v. Baird*, 389 F.3d 882, 884-5 (10th Cir. 1968).

[16]  *Matter of Timely Secretarial Service, Inc.*, 987 F.2d 1167, 1171 (5th Cir. 1993);  *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962); *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2nd Cir. 2001).

question is open in the Third and Eighth Circuits.[17]

Judge Parker was bound to follow the rule adopted by the Fifth Circuit but failed to do so. While the Fifth Circuit does hold that Rule 60(b) permits a court to reconsider a prior order *sua sponte*, substantive compliance with Rule 60(b)'s mandate that a "motion" be filed is still required. Thus, the Fifth Circuit allows the district court to grant relief under Rule 60(b) *sua sponte* only if prior written notice of its decision to reconsider its prior order is provided.[18]   Only in this manner can the parties' due process rights be protected.

No such notice was provided in this case.  Even if 28 U.S.C.A. §1447(d) permitted the district court to reconsider its remand order–which it did not--the court failed to properly invoke Rule 60(b) to that end.   The Court abused its discretion when it "vacated" its remand order on October 27 and that decision cannot be given effect, particularly since no basis for federal subject matter jurisdiction has been articulated to date.  Because no such jurisdiction exists and the case was properly remanded, the conditional transfer order should be vacated.

**B.     Northrop never established–and the district court never determined-- that federal subject matter jurisdiction existed in this case.**

The conditional transfer order should be vacated because federal subject matter jurisdiction has never been established and does not exist in this case.   Northrop removed this case under 28

---

[17]  *In re Davitch*, 336 B.R. 241, 254 (W.D. Pa. 2006).

[18]  *Hayes v. Koch Entertainment LP*, 2008 WL 4218773 at *2 (5th Cir. 2008, slip op., September 16, 2008)(due process requires prior written notice of a court's intent to reconsider a prior decision under Rule 60(b)); *Matter of Timely Secretarial Service, Inc.*, 987 F.2d at 1171;  *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962).

U.S.C.A. §1442(a)(1), a removal provision creating a statutory exception to the "well-pleaded complaint rule" where the tortious conduct forming the basis of the plaintiff's state court case occurred at the direction of a federal officer who can state a colorable claim to a federal defense.[19]

An action may be removed to federal court under §1442(a)(1) if the suit involves the United States, a federal agency thereof or "any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity for any act under color of such office..."[20]     To demonstrate that federal subject matter jurisdiction existed under 28 U.S.C.A. §1442(a)(1), Northrop was required to show that:

   1)    its predecessor, Avondale Shipyards, was acting under direction and control of a *specific* federal officer at the time the alleged tort was committed; actions taken under the "general auspices" of a federal regulatory program are insufficient;

   2)    a causal nexus exists between the tortious conduct alleged by the Plaintiff and the exercise of allegedly federal authority; and,

   3)    a colorable federal defense exists to the Plaintiffs' claims.[21]

As always, the burden of establishing the propriety of removal and the existence of federal jurisdiction was on Northrop[22]

While §1442 is read expansively when a federal officer is the defendant, a broad interpretation of the statute is not warranted when the defendant is a private contractor like Northrop. Where private parties seek to invoke the protections of the federal officer statute, federal courts have held that the policy reasons generally favoring removals under 28 U.S.C.A. §1442 do not apply;

---

[19]  *Mesa v. California*, 489 U.S 121, 136-7 109 S.Ct. 959, 962 (1989).

[20]  28 U.S.C.A.§1442(a)(1).

[21]  *Mesa v. California*, 489 U.S at 124-5; *Feidt,* 153 F.3d at 127.

[22]  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37 (1921); *Feidt,* 153 F.3d at 127.

private parties instead bear a *special burden* to establish the official nature of their activities.[23]

Under well-established law, Northrop could not sustain its burden in the absence of "direct averments" excluding the possibility that the Plaintiffs' state court action arose from acts or conduct *not* justified by a federal duty.[24]   Moreover, because jurisdiction was challenged, Northrop could satisfy its burden only with *evidence*, not "bald allegations" or "legal conclusions."[25]

Northrop's removal petition contains nothing but "bald allegations" and "legal conclusions." Its removal petition proffers no evidence supporting the existence of federal jurisdiction, nor does it even *allege* facts supporting such jurisdiction.  Though Plaintiff James Gill claims that he suffered injury due to Northrop's failure to warn about the hazards of asbestos, or to take safety precautions, Northrop neither alleges nor tenders evidence demonstrating that either its warning policies or its workplace safety procedures were dictated by federal officers or comprehensive federal regulations. Nor can Northrop make this case, given that its own former safety director *admitted* that the federal government did *not* dictate the Avondale shipyard's ability to warn workers about the hazards of

_____

[23] *Freiburg v. Swinerton &Walberg Prop. Serv., Inc.*, 245 F.Supp.2d 1144, 1152, n. 6 (D. Colo. 2002)(Section 1442 to be read expansively only when federal officials–not government contractors–is at issue); *New Jersey Dept. of Environmental Protection v. ExxonMobil*, 381 F.Supp.2d 398, 403, n. 5 (D. N.J. 2005); *New Jersey Dept. of Environmental Protection v. Dixo Company, Inc.*, 2006 WL 2716092 at *2 (D. N.J. 2006).  Unreported cases cited herein are attached for the Court's convenience as Exhibit F

[24] *Freiburg*, 245 F.Sup. at 1155 (quoting *Mesa v. California*, 489 U.S. at 132). This requirement was expressed conversely in *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813 (1969) where the Supreme Court held that a causal connection could be established if the removing defendant established that its  relationship to the plaintiffs arose "solely" from its official duties.  *Willingham*, 395 U.S. at 409.

[25] *Willingham*, 395 U.S. at 407, n. 3 (evidence supporting exercise of federal officer jurisdiction should have appeared in removal petition);  *Samuel-Basset v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3rd Cir.2004)(where disputes over factual matters critical to remand exist, the preponderance of evidence standard applies); *New Jersey Dept. of Environmental Protection v. Dixo Company, Inc.*, 2006 WL2716092 at *2 (remanding case because party seeking to establish federal officer jurisdiction failed to present evidence supporting the existing of federal subject matter jurisdiction, citing *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3rd Cir. 1997)[court not required to credit bald allegations or legal conclusion]); *ExxonMobil*, 381 F.Supp.2d at 403, n. 5 (*quoting Freiburg v. Swinerton &Walberg Prop. Serv., Inc.*, 245 F.Supp.2d 1144, 1150 (D. Colo. 2002).

asbestos.  Finally, Northrop never asserts a colorable federal defense that could insulate it from liability for its failure to warn or take adequate safety precautions.

Northrop's removal petition failed to contain even unsupported factual allegations sufficient to demonstrate that federal subject matter jurisdiction exists in this case, and the trial court never made an independent inquiry to ensure that such jurisdiction existed.  This case was properly remanded, and should not be transferred to MDL-875.

> **1.    Northrop's removal petition is defective because it fails to exclude the possibility that James Gill's injuries could have been caused by acts or conduct at Avondale *not* taken under the direction of a federal officer.**

Northrop's removal petition contended that federal subject matter jurisdiction existed because the actions of its predecessor, Avondale Shipyard, were dictated by federal officers working for the Navy, the U.S. Coast Guard, or the U.S. Maritime Administration.[26]  More than 80 years ago, the U.S. Supreme Court held that a party seeking to invoke the federal court's jurisdiction on such a theory must *exclude* the possibility that the state court action filed by the plaintiffs arose as the result of conduct *not* dictated by a federal duty.[27]    Stated conversely, federal officer jurisdiction is established if the removing defendant can establish that his relationship with the plaintiffs was related *solely* to his official federal duties.[28]    The removing defendant must satisfy this requirement by including direct averments in his removal petition.[29]

---

[26]  *See*  Exhibit C, Notice to State Court of Filing Notice of Removal, September 11, 2008  at 6,  ¶¶8-9.

[27]  *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33, 46 S.Ct. 185, 190 (1926)(under predecessor to 28 U.S.C.A. 1442, federal officer must directly aver that the state action is based on conduct not dictated by a federal duty); *Mesa v. California*, 489 U.S. at 131-2 (following *Soper (No. 1)* in a case invoking 28 U.S.C.A. §1442).

[28]  *Willingham*, 395 U.S. at 409.

[29]  *Soper (No. 1)*, 270 U.S. at 33; *Mesa v. California*, 489 U.S. at 131-2 (following *Soper (No. 1)* in a case invoking 28 U.S.C.A. 1442).

Northrop's pleading contains no such averments.   While the company alleges that the "use of asbestos-containing materials" at the Avondale Shipyard was "required and controlled by officers of the United States,"[30] it never alleges that Avondale's  warning policies and workplace safety procedures were dictated by these federal officers, and it never attempts to exclude the possibility that James Gill's asbestos disease resulted from private shipbuilding activities occurring at Avondale.   Conversely, Northrop fails to allege that Avondale's relationship with James Gill was solely related to official federal duties imposed by the federal shipbuilding contracts and regulations.   In short, Northrop's pleading contains no "direct averments" excluding the possibility that Mr. Gill's injuries could have resulted from conduct *not* occurring at the direction of a federal officer, as clearly and expressly required by *Sofer (No. 1)*, *Mesa v. California,* and *Willingham*.

This omission is particularly critical in light of the facts, which demonstrate that Avondale built both commercial ships and Navy ships during the years that Plaintiff James Gill worked at the shipyard.[31]   That being the case, Northrop was required to directly aver (at a minimum) that James Gill could not have been exposed to asbestos at Avondale while working on these commercial ships. It failed to do so.   This failure alone was fatal to at least one of Northrop's previous attempts to invoke federal officer removal under 28 U.S.C.A. §1442(a)(1).[32]   Thus, even if we accept that Northrop's predecessor, Avondale, was acting at the direction of federal officers, Northrop's claim to federal jurisdiction must fail because it has not alleged that federally-directed conduct alone could

---

[30] *See* Exhibit C, Notice of Removal at 5, ¶5.

[31] *See Buffone Jambon v. Northrop Grumman Ship Systems, Inc.*, 2007 WL 2992171 (E.D.La.2007)(in light of the fact that Avondale Shipyard constructed both Navy ships and private ships, the court declined to find 1442(a)(1) satisfied in the absence of evidence demonstrating that the plaintiff's husband had actually worked on vessels constructed under Navy contract).

[32] *Id.*

-10-

have caused or contributed to Mr. Gill's asbestos exposure.

> **2.      Northrop has failed to even *allege* that the conduct James Gill claims caused his asbestosis was conduct taken under the direction and control of a federal officer .**

In order to establish federal subject matter jurisdiction under 28 U.S.C.A. §1442(a)(1), Northrop had to establish that it was "acting under" the direction of a federal officer within the meaning of §1442(a)(1), and that there was a causal nexus between the tortious conduct that resulted in the plaintiff's injuries and the alleged exercise of federal authority.[33] Because these two prongs of the federal officer test overlap, courts frequently consider them together,[34] and taken together, they require that the removing defendant demonstrate that the conduct complained of in the state tort suit was conduct taken under "direct and detailed control" of a federal authority.[35] Such direct and detailed control is only established by a showing of "strong government intervention" sufficient to subject the defendant to suit in state court based on actions taken at federal direction.[36] Inherent in the latter statement is the threshold requirement that a *conflict* exists between the state and federal duties, so defendants seeking a federal forum under 28 U.S.C.A. §1442(a)(1) must show that the federal dictates interfered with its ability to fulfill state law safety obligations.[37]

---

[33]  *Mesa v. California*, 489 U.S. at 124-5; *Feidt*, 153 F.3d at 127.

[34]  *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998), cert. den'd 526 U.S. 1034, 119 S.Ct. 1286 (1999); *Snowdon v. A.W. Chesterton Co.*, 366 F.Spp.2d 157, 161, n. 3 (D. Me. 2005).

[35]  *Willingham v. Morgan*, 395 U.S. at 409 (1969)(complained-of activity must occur under the direction of a federal officer); *ExxonMobil*, 381 F.Supp. at 404 (federal officer must exercise "direct and detailed control"); *Arness v. Boeing International, Inc.*, 997 F.Supp. 1268, 1273 (C.D. Cal. 1998)(same); *Reed v. Final Oil & Chem. Co.*, 995 F.Supp. 705, 710 (E.D. Tex. 1998)(same); *New Jersey Dept. of Environmental Protection v. Dixo Company, Inc.*, 2006 WL2716092 at *2 (same).

[36]  *Fung v. Abex Corp.*, 816 F.Supp 569, 572 (N.D. Cal. 1992); *Bradley v. Northrop Grumman Sys. Corp.*, 2007 WL 1115246 (E.D. La.2007); *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999).

[37]  *Ruffin v. Armco Steel Corp.*, 959 F.Supp. 770, 776 (S.D.Tex. 1997).

Removal cannot be predicated upon acts occurring under the general auspices of a federal regulatory program, even if the regulatory scheme imposes "rigid guidelines" upon the industry.[38] Instead, the party seeking to establish jurisdiction must demonstrate that the acts forming the basis of the plaintiff's suit were performed pursuant to a federal officer's "direct orders" or "comprehensive and detailed regulations."[39]

Plaintiff James Gill claims that Northrop is liable in negligence and strict liability not because asbestos was used to build ships at Avondale, but because no warnings were provided to the workers about the hazards, and because inadequate safety precautions were taken to protect workers from these hazards.[40]   But while Northrop bore a "special burden" to establish facts demonstrating the existence of federal jurisdiction in this case, it proffered no evidence demonstrating that either its failure to warn or to take adequate safety precautions was dictated by federal rules, contracts or specifications.  In fact, Northrop failed to even *allege* that it failed to warn or take safety precautions at the direction of a federal officer.

Even a generous reading of Northrop's notice of removal reveals that it has done no more

---

[38] *Fung v. Abex Corp.*, 816 F.Supp at 572; *Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal. 1996).

[39] *Good v. Armstrong World Industries, Inc.,* 914 F.Supp. 1125, 1128 (E.D. Pa. 1996);*Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998); *Ruffin v. Armco Steel Corp.*, 959 F.Supp. 770 (two years after the *Ruffin* opinion was issued, it was vacated when the trial court determined that the case had been transferred to MDL-875 prior to the original remand order; see *Ruffin v. Armco Steel Corp.*, No. Civ. A. H-95-4480, 1999 WL 318023 (S.D. Tex. Jan 29, 1999); *Bahrs v. Hughes Aircraft Co.*, 795 F.Supp. 965, 969 (D. Ariz. 1992); *New Jersey Dept. of Environmental Protection v. Dixo Company, Inc.,* 2006 WL2716092 at *2; *Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E.D. La. 1997); *Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal. 1996).

[40] *See* Exhibit C, Notice to State Court of Filing Notice of Removal, September 11, 2008 and attached "Exhibit A" to that Notice of Removal ["Plaintiffs' First Supplement and Amendment to the Original Petition for Damages", August 6, 2008] at I.16 (adding Northrop as a defendant) and VI.36H-36J (asserting strict liability and negligence claims against Northrop for failing to warn of asbestos hazards, failing to take safety precautions, provide safety equipment or provide safety supervision).

than provide a bare allegation stating that unidentified federal specifications required that asbestos products be used in ship construction, and that some federal asbestos safety regulations existed.[41] Northrop never identifies the specifications allegedly mandating the use of asbestos products, and provides no evidence of their contents. Northrop never alleges that federal officers gave "direct orders" prohibiting Avondale from taking safety precautions, from issuing respirators, or from warning of the hazards associated with asbestos exposure, and never alleges that the regulations impaired Avondale's ability to warn as required under state tort law, or to impose workplace safety precautions of the sort that might have protected Mr. Gill. There is simply no suggestion that Avondale's federal obligations prevented it from warning or taking safety precautions necessary to satisfy the obligations imposed under federal regulations and those imposed under state tort law. Indeed, Northrop's pleading suggests the contrary–that federal regulations imposed safety requirements comparable to those imposed by state tort law.[42]      As the U.S. District Court for the Eastern District of Louisiana expressly noted, the factual record contradicts Northrop's unsupported contention that federal officers dictated workplace safety. The affidavit of a U.S. Navy inspector proffered in *Cole v. Northrop Grumman Ship Systems, Inc.*[43] indicated that workplace safety was the responsibility of Avondale's own safety department, not Navy ship inspectors.[44] Avondale's own Superintendent of Outfitting, Eddie Blanchard, also testified that no federal officer

---

[41] *See* Exhibit C, at 5-7, ¶¶5-14

[42] *See* Exhibit C, Notice of Removal, at 6-7, ¶11.

[43] 2008 WL 2651428 (E.D. La. 2008).

[44] *Cole*, 2008 WL 2651428 at *4 (citing affidavit of U.S. Navy ship inspector, Felix Albert).

controlled or directed the safety department.[45]   The testimony of both Blanchard and the Navy inspector was confirmed by Avondale's former safety director, Peter Territo, who testified that Avondale's safety department was independent from the Navy, not under its control.[46]

Territo testifed in greater detail in *Gauthe v. Asbestos Corp. Ltd.*[47]   There he stated that Avondale's safety department wrote or promulgated all safety rules, and no Navy inspector ever told the Avondale safety department what rules it had to promulgate.[48]   To the contrary, Avondale's former head of safety instituted a safety program that he subsequently presented to the federal government, which adopted it.[49]   No federal officer or inspector that was aboard a vessel ever controlled Avondale's safety department, its safety programs, or its enforcement programs.[50]  Territo also admitted that there was no regulation or specification in the contracts with the Navy that would have prevented Avondale from putting up a warning sign in a naval vessel.[51]  Based upon facts like the foregoing, the Eastern District of Louisiana has repeatedly held that Northrop has failed to establish the requisite degree of federal officer control to establish the existence of federal subject

--------

[45] *Id.*

[46] *Id.*

[47] 1997 WL 3255 (E.D. La. 1997).  The Deposition of Peter R. Territo, taken in *Gauthe*, is attached as Exhibit D.

[48] Ex. D at 129:19-130:2.

[49] Ex. D at 137:6-16.

[50] Ex. D at 135:10-15, 136:2-5, 136:12-14.

[51] Ex. D at 142:25-143:17; *Sheppard v. Northrop Grumman Systems Corp.*, 2007 WL 1550992 at *6 (E.D. La. 2007).

matter jurisdiction under 28 U.S.C.A. 1442(a)(1).[52]

Northrop has failed to allege that federal officers exercised the requisite degree of control over Avondale's warning and workplace safety activities, activities that could have protected Mr. Gill. The admissions of Avondale executives Territo and Blanchard confirm that such control did not exist. In the absence of federal control over the conduct forming the basis of the plaintiff's state court suit, there can be no causal nexus between the exercise of any federal authority and that state court claim. Northrop has failed to satisfy the second and third prongs of the federal officer test.

### 3.     Northrop failed to even *allege* a colorable federal defense

Even if Northrop had properly demonstrated that federal officers controlled the warning and workplace safety procedures implemented at the Avondale Shipyard when Gill worked there, removal under §1442(a)(1) would still not be proper because Northrop failed to allege a colorable federal defense. It is this defense that provides the basis for the "arising under" jurisdiction granted n Article III.[53]

Although Northrop's removal petition contains a statement claiming the right to both a "government contractor" defense (as established by the Supreme Court in *Boyle v. United Technologies Corp.*,[54] and a defense under the Longshore and Harbor Workers' Compensation Act (LHWCA),[55] these allegations are nothing more than conclusory statements, devoid of any factual averments demonstrating that the elements of these defenses can be satisfied in this case.

---

[52] *Cole,* 2008 WL 2651428 at *5-6; *Bradley v. Northrop Grumman Systems Corp.*, 2007 WL 1115246 at *2-3 (E.D. La. 2007); *Sheppard,*, 2007 WL 1550992 at *5-6.

[53] *Mesa v. California,* 489 U.S. at 129.

[54] 487 U.S. 500, 507-8 (1988).

[55] *See* Exhibit C, Notice of Removal at 5, ¶6.

### a.    Northrop could assert no valid government contractor defense under *Boyle*

Parties performing work under government contracts may avail themselves of a defense to state tort claims if they satisfy the three-prong test articulated in *Boyle* by showing:

1)    that the United States approved reasonably precise specifications;

2)    that the equipment in question conformed to those specifications; and

3)    that the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.[56]

Northrop must also establish that the case at hand concerns a uniquely federal interest, and that a significant conflict exists between that federal policy and the applicable state law.[57]

Northrop's removal petition is silent as to all of these factors.  Although Northrop alleged that the "Federal Vessels" constructed at the Avondale Shipyard were built according to government specifications,[58] it never describes the specifications in any way, and never establishes the degree of precision required in order to comply with these specifications.  Northrop never alleges that the ships actually conformed to those specifications.  It never describes what federal interests are at stake, let alone establishing that the interests are unique, nor does it allege that the federal policies are in conflict with the duties imposed by state law.  Finally, Northrop neither states that it warned the U.S., nor that the federal officers were already aware of the dangers of asbestos exposure.  Ensuring

---

[56] *Boyle*, 487 U.S. at 512; *ExxonMobil*, 381 F.Supp.2d at 403-4.  It should be noted that Louisiana federal district court judges have held that the government contractor defense as laid out in *Boyle* extends to design and manufacturing defect cases, not failure to warn cases like this one. *See Buffone Jambon v. Northrop Grumman Ship Systems, Inc.*, 2007 WL 2992171 at *2, n. 2; *Bradley*, 2007 WL 1115246 at *3 (following Judge Duval's decision in *Gauthe*); *Gauthe*, 1997 WL 3255 at *5.

[57] *Boyle*, 487 U.S. at 507.

[58] *See* Exhibit C, Notice of Removal at 6, ¶¶8-9.

-16-

that the U.S. government was adequately warned about the hazards of products constructed under government contracts is a necessary element of the government contractor defense. No colorable claim to such a defense can be asserted in the absence of such an allegation. Despite its bald assertions to the contrary, Northrop failed to raise a colorable government contractor defense.

### b.  Northrop failed to assert a colorable federal defense under the Longshore and Harbor Workers' Compensation Act.

Northrop finally claims that it is entitled to the immunity provided to employers under Section 905 of the Longshore and Harbor Workers' Compensation Act.[59] However, Northrop again presents neither evidence nor allegations demonstrating that it can claim immunity under this statute. For example, Northrop's removal petition fails to contain the critical allegation that Northrop or Avondale obtained a compensation policy that could have covered Mr. Gill, an absolute prerequisite to immunity under the Longshore Act.[60] That petition also fails to establish that Northrop is an "employer" as contemplated by the Act, which provides immunity to "employers" providing compensation coverage to maritime workers.

It is undisputed that James Gill, the only plaintiff stating a claim against Northrop, was never employed by Northrop's predecessor, Avondale.[61] As his work history sheet confirms, during the years that Mr. Gill worked as a welder at the Avondale Shipyard, his employer was Boh Brothers

---

[59]  *Id.*; 33 U.S.C.A. §905.

[60]  33 U.S.C.A. §904, 905(a).

[61]  *See* Exhibit C, Notice to State Court of Filing Notice of Removal, September 11, 2008 and attached "Exhibit A" to that Notice of Removal ["Plaintiffs' First Supplement and Amendment to the Original Petition for Damages", August 6, 2008, at "Exhibit A," Work History Sheet, James Gill].

Construction, not Avondale.     Because the Act provides immunity to employers providing

compensation coverage to maritime workers, Northrop's failure to establish its status as a statutory

employer undermines its claim to immunity under the Act.[62]

While Plaintiffs concede that the Third and Fifth Circuits have applied the "borrowed

employee" doctrine in cases arising under the Longshore Act, that concession does not change the

result because Northrop has also failed to allege that Mr. Gill was its borrowed servant under that

doctrine.     Specifically, Northrop failed to allege that Avondale was responsible for Mr. Gill's

working conditions and that the duration of Mr. Gill's employment at Avondale was such that it was

reasonable to presume that he had acquiesced in the risks of employment at the shipyard.[63] Northrop

did no more than make the bald assertion that it had a colorable defense under the Longshore and

Harbor Workers' Compensation Act.  Such a bald assertion cannot satisfy the federal officer test.

Even if the Avondale Shipyards operated under the direct control of a federal officer when

constructing Navy ships–something Northrop failed to establish–its claim that federal subject matter

jurisdiction exists under 28 U.S.C.A. §1442(a)(1) must fail because it has stated no colorable federal

defense.  Its removal petition provided neither allegations nor evidence demonstrating that it warned

the federal government about asbestos hazards–an absolute prerequisite to immunity under the

government contractor defense.  Similarly, its removal petition contained neither allegations nor

evidence demonstrating that it was Mr. Gill's statutory employer under the Longshore and Harbor

---

[62] 33 U.S.C.A. §902 (defining "employer"); §905(a)(providing immunity to employers obtaining compensation coverage for maritime workers).

[63] *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 942 (3rd Cir. 1990)(citing *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977), cert. den'd 436 U.S. 913, 98 S.Ct. 2253 (1978); *Overly v. Raybestos-Manhattan*, 1996 WL 532150 at *3 (N.D. Cal. 1996).  The Supreme Court of Louisiana has held that even if a defendant qualifies as a statutory employer under the Longshore Act, this does not preempt state negligence causes of action.  *Poche v. Avondale Shipyards, Inc.*, 339 So.2d 1212 (La. 1977).

-18-

Workers' Compensation Act, or that it had obtained compensation to cover Mr. Gill, necessary prerequisites to immunity under that Act.    Because Northrop has neither plead nor proved a colorable federal defense, it failed to establish the existence of federal subject matter jurisdiction under 28 U.S.C.A. §1442(a)(1).

### III. PRAYER

This case was properly remanded to state court on September 19, 2008 due to the absence of subject matter jurisdiction.  Because the district court's "vacatur" order of October 27, 2008 was made in contravention with both 28 U.S.C.A. §1447(d) and Federal Rule of Civil Procedure 60(b), it should be considered a nullity.  This is particularly true given that the district court never made an independent determination that it could exercise jurisdiction over the instant case. Because this case belongs in the Louisiana state court to which it was remanded on September 19, the conditional transfer order should be vacated.

**BRENT COON & ASSOCIATES**

/s/ Lawrence G. Gettys
LAWRENCE G. GETTYS   (LBA# 23753)
Brent Coon & Associates
17405 Perkins Road
Baton Rouge, Louisiana 70810
Telephone: 225-751-7277
Facsimile: 225-753-4503
E-Mail: Lawrence.Gettys@bcoonlaw.com
ATTORNEYS FOR PLAINTIFFS

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC - 1 2008

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### MDL No. 875--*In re Asbestos Products Liability Litigation* (No. VI)

### SCHEDULE OF ACTIONS

| Case Captions | Court | C.A. No. | Judge |
|---|---|---|---|

**Plaintiffs:**
James, W. Gibbens,
Jacqueline Gibbens,
Homer W. Gill, Sr.,
James L. Gill,
Grant Hawkins,
Margie Hawkins,
Harrison J. Holloway,
Joe Lucky,
Joan Lucky,
Arcen P. Marcel,
Hilma Marcel,
Joseph Mobley,
J.W. Osborne,
Lourena Osborne,
Robert Pyle,
Dorothy Pyle

U.S. District Court        LAM 3 08-572        John V. Parker
Middle District of Louisiana

**Movant:**
James L. Gill

**Defendants:**
AQUA-CHEM,INC., (d/b/a CLEAVER-BROOKS DIVISION), AVENTIS CROPSCIENCE USA, INC. (f/k/a RHONE POULENC AG COMPANY INC.), AW CHESTERTON CO., ACandS, INC., ANCO INSULATIONS, INC., ASARCO,INC. (f/k/a AMERICA SMELTING & REFINING COMPANY), ASTEN GROUP, INC.,ASTENJOHNSON, INC. (f/k/a ASTEN, INC.), CBS CORPORATION (SUCCESSOR IN INTEREST TO WESTINGHOUSE ELECTRIC CORPORATION) CERTAINTEED CORPORATION, COLTEC INDUSTRIES, INC. (INDIVIDUALLY AND AS A SUCCESSOR TO ANCHOR PACKING COMPANY, INC.), COMBUSTION ENGINEERING, INC. (INDIVIDUALLY AND SUCCESSOR-IN-

**Y**

INTEREST TO M.H. DETRICK COMPANY, WALSH REFRACTORY CORPORATION AND REFRACTORY AND INSULATION CORPORATION), CROWN CORK & SEAL COMPANY, INC., (SUCCESSOR TO MUNDET CORK COMPANY), DANA CORPORATION, EAGLE, INC. (f/k/a EAGLE ASBESTOS & PACKING COMPANY, INC.), EXXON MOBIL OIL CORPORATION (f/k/a MOBIL OIL CORPORATION) THE FLINTKOTE COMPANY,  FOSTER WHEELER CONSTRUCTORS, INC., FOSTER WHEELER ENERGY CORPORATION, GARLOCK, INC., GENERAL ELECTRIC COMPANY, GENERAL REFRACTORIES COMPANY, GEORGIA PACIFIC CORPORATION (INDIVIDUALLY AND AS SUCCESSOR TO BESTWALL GYPSUM COMPANY), GREFCO, INC.,  HALIBURTON ENERGY SERVICE, INC. IMO INDUSTRIES, INC., IREX  CORPORATION, INGERSOLL-RAND COMPANY, J.T. THORPE COMPANY,  KELLY MOORE PAINT COMPANY, INC., THE MCCARTY CORPORATION,  METROPOLITAN LIFE INSURANCE COMPANY,  MINNESOTA MINING & MANUFACTURING CORPORATION (3M CORPORATION),NORTH BROS. INC., OGLEBAY-NORTON COMPANY, OWENS-ILLINOIS, INC., PFIZER, INC. (AS SUCCESSOR-IN -INTEREST TO QUIGLEY COMPANY, INC.), PROKO INDUSTRIES, INC.,  RILEY STOKER, INC.(d/b/a DB RILEY, INC.),TAYLOR-SEIDENBACH, INC.,UNIROYAL, INC.,(f/k/a UNITED STATES RUBBER COMPANY, INC.), VIACOM, INC., ZURN  INDUSTRIES, INC.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC - 1 2008

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION FILED
CLERK'S OFFICE

MDL No. 875--*In re Asbestos Products Liability Litigation (*No. VI)

*James W. Gibbens, et al., v. Aqua-Chem, Inc. et al.,*
*U.S. District Court, Middle District of Louisiana*
*Civil Action LAM 3 08-572*

---

## APPENDIX OF UNPUBLISHED CASES
## REGARDING MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

---

### EXHIBIT F

*Bradley v. Northrop Grumman Sys. Corp.*, 2007 WL 1115246 (E.D. La.2007)

*Buffone Jambon v. Northrop Grumman Ship Systems, Inc,* 2007 WL 2992171 (E.D.La.2007)

*Cole v. Northrop Grumman Ship Systems, Inc.*, 2008 WL 2651428 (E.D. La. 2008).

*Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E.D. La. 1997).

*Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999).

*New Jersey Dept. of Environmental Protection v. Dixo Company, Inc.*, 2006 WL 2716092 at *2 (D. N.J. 2006).

*New Jersey Dept. of Environmental Protection v. ExxonMobil*, 381 F.Supp.2d 398, 403, n. 5 (D. N.J. 2005).

*Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal. 1996).

*Sheppard v. Northrop Grumman Systems Corp.*, 2007 WL 1550992 at *6 (E.D. La. 2007).

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

DEC - 1 2008

### MDL No. 875--*In re Asbestos Products Liability Litigation* (No. VI)

FILED
CLERK'S OFFICE

#### *James W. Gibbens, et al., v. Aqua-Chem, Inc. et al.,*
*U.S. District Court, Middle District of Louisiana*
*Civil Action LAM 3 08-572*

---

### PROOF OF SERVICE

---

I hereby certify that a copy of the foregoing Motion, Brief, Schedule of Actions and this

Certificate of Service was served as noted below, on November 26, 2008, to the following:

#### VIA FEDERAL EXPRESS

United States Judicial Panel on Multi District Litigation
Thurgood Marshall Federal Judicial Building
One Columbus Circle, NE Room
G-255 North Lobby
Washington, DC 20002

#### VIA REGULAR MAIL

| | | |
|---|---|---|
| United States District Court<br>Middle District of Louisiana<br>Clerk of Court<br>777 Florida Street<br>Suite 139<br>Baton Rouge, LA  70802 | C. Kelly Lightfoot<br>HAILEY,   MCNAMARA,<br>HALL,   KARMANN   &<br>PAPALE, LLP<br>One Galleria Blvd. Ste. 1400<br>Metairie, LA 70001 | Allison N. Benoit<br>KEAN MILLER<br>18th Floor<br>One American Place<br>Baton Rouge, LA 70821 |
| Donna Young<br>BALDWIN, HASPEL, BURKE<br>& MAYER, LLC<br>Energy Centre- 22nd Floor<br>1100 Poydras Street<br>New Orleans, LA 70163 | Glenn "Max" Sweatman<br>Aultman, Tyner, Ruffin, Bell &<br>Swetman, LTD.<br>400 Poydras Street<br>Suite 1900<br>New Orleans, Louisiana 70130 | William Schuette<br>Jones Walker<br>Four United Plaza<br>8555 United Plaza Boulevard<br>Baton Rouge, LA  70809 |

| | | |
|---|---|---|
| R. Dean Church<br>Forman Perry Watkins Krutz &<br>Tardy, LLP<br>1515 Poydras Street<br>Suite 1300<br>New Orleans, LA 70112 | Diane Sweezer<br>Willingham, Fultz & Cougill<br>LLP<br>Niels Esperson Building<br>808 Travis Street, Suite 1608<br>Houston, TX 77002 | Jevan S. Fleming and/or<br>McGready Richeson<br>Abbott, Simses, & Kuchler<br>400 Lafayette Street<br>Suite 200<br>New Orleans, Louisiana 70130 |
| David E. Redmann, Jr.<br>LEMLE & KELLEHER, L.L.P.<br>2100 Pan American Life Center<br>601 Poydras Street<br>New Orleans, LA. 70130 | JOSEPH MESSINA<br>LOBMAN, CARNAHAN,<br>BATT, ANGELLE, & NADER<br>400 Texaco St., Suite 2300<br>The Texaco Centre<br>New Orleans, LA 70130 | KEVIN O'BRYON<br>O'BRYON & SCHNABEL<br>1515 Poydras St. Suite 830<br>New Orleans, LA 70112-4541 |
| Lawrence Pugh<br>Pugh, Accardo, Haas and<br>Radecker, L.L.C.<br>1100 Poydras Street<br>Suite 2000<br>New Orleans, LA  70163 | W. Scott Brown<br>Entergy LLC<br>639 Loyola Ave., 26th Floor<br>New Orleans, La. 70113 | Sue Kohn<br>Smon, Peragine, Smith &<br>Redfearn, L.L.P.<br>1100 Poydras Street<br>30th Floor<br>New Orleans, LA 70163-3000 |
| RICK SULZER<br>SULZER & WILLIAMS<br>201 Holiday Blvd. Suite 335<br>Covington, LA 70433 | Jennifer Adams<br>Deutsch, Kerrigan, and Stiles<br>755 Magazine Street<br>New Orleans, LA 70130 | |

**IN RE: ASBESTOS PRODUCTS LIABILITY**
**LITIGATION (No. VI)**                                    MDL. No. 875

PANEL SERVICE LIST (Excerpted from CTO-317)

James W. Gibbens, et al. v. Aqua-Chem, Inc., et al, M.D. Louisiana, C.A. No. 3:08-572

Peter G. Angelos
LAW OFFICES OF
PETER G. ANGELOS PC
One Charles Center
100 North Charles Street, 22nd
Floor
Baltimore, MD 21201

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street, Third Floor
Oakland, CA 94607

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204

Damon R. Pourciau
(no longer with the firm)
Please send to:
Douglas R. Kraus
BRENT COON &
ASSOCIATES 1515
Poydras Street
Suite 2200
New Orleans, LA 70112

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

David C. Landlin
HUNTON & WILLIAMS
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Pamela C. Carter
BAKER DONELSON
BEARMAN CALDWELL &
BERKOWITZ
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Halima Narcisse Smith
LUGENBUHL
WHEATON PECK
RANKIN & HUBBARD
601 Poydras Street
Suite 2775
New Orleans, LA 70130

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
& MAHINEY LTD
233 South Wacker Drive, Suite 5500
Chicago, IL 60606

Michael P. Thornton
THORNTON &
NAUMES, LLP
100 Summer Street
30th Floor
Boston, MA 02110

Lawrence G. Gettys
BRENT COON &
ASSOCIATES
17405 Perkins Road
Baton Rouge, La 70810

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

Walter G. Watkins, Jr.
FORMAN PERRY
WATKINS KRUTZ &
TARDY, PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Philip McWeeny
SCHIFF HARDIN LLP
One Maket Plaza, 32nd Floor
Spear Street Tower
San Fransico, Ca 94105

# EXHIBIT A

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
[illegible] FLA

2008 SEP 19  P 2: 25

[illegible]
BY DEPUTY CLERK

| JAMES W. GIBBENS, ET AL | § | CIVIL ACTION NO: 08-572 |
| Plaintiff, | § | |
| | § | MAGISTRATE JUDGE : _____ |
| VS. | § | |
| | § | |
| AQUA CHEM INC., ET AL , | § | |
| | § | |
| Defendant(s). | § | |
| | § | |

### ORDER GRANTING AGREED MOTION TO DISMISS DEFENDANT, NORTHROP GRUMMAN SHIP SYSTEMS, INC. AS SUCCESSOR-IN-INTEREST TO AVONDALE INDUSTRIES, INC. AND REMAND CASE TO STATE COURT

Before the Court is the Agreed Motion to Dismiss Defendant, Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. and Remand Case to State Court. Having reviewed the agreed motion and the supporting memorandum, the Court GRANTS the motion and orders the following: (1) Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. is dismissed with prejudice; (2) this case is remanded to the 19th Judicial District Court for the Parish of East Baton Rouge.

JUDGE PRESIDING

Date: September 19, 2008

# EXHIBIT B

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES W. GIBBENS, ET AL

VERSUS                                    CIVIL ACTION NO.: 08-572-JVP-DLD

AQUA-CHEM, INC., ET AL

## ORDER

On September 19, 2008, this court signed an order that authorized dismissal of Northrop Grumman Ship Systems, Inc., as Successor-in-Interest to Avondale Industries, Inc., with prejudice, and authorized remand of this case to the Nineteenth Judicial District Court for the Parish of East Baton Rouge for lack of subject matter jurisdiction (doc. 6). The court has determined that such order was entered through mistake and inadvertence and that order, dated September 19, 2008, (doc. 6) is hereby **VACATED** and **SET ASIDE** under Rule 60(b) F.R.Civ.P.

Baton Rouge, Louisiana, October 28, 2008.

JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

CC: 19th JDC

# EXHIBIT C

**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**
A LAW CORPORATION
SUITE 2775 PAN AMERICAN LIFE CENTER
601 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130

Gordon P. Wilson
Tel.: (504) 568-1990, ext. 102
Fax: (504) 310-9195

e-mail:
gwilson@lawla.com

11 September 2008

Mr. Doug Welbourn
Clerk, 19th Judicial District Court
East Baton Rouge Parish
222 St. Louis Street
P.O. Box 1991
Baton Rouge, LA 70821

     Re:     **James W. Gibbens**, *et al.* v. **Aqua-Chem, Inc.**, *et al.*
             **19th Judicial District Court, East Baton Rouge Parish**
             **No. 493-232, Division D**
             **Our File No.: 21043-08342**

Dear Mr. Welbourn:

     Enclosed are an original and two copies of the Notice to State Court of Filing of Notice of Removal in the captioned matter. Kindly file the original into the record and return the conformed copies to me in the self-addressed, stamped envelope I have provided. Also enclosed, per the instructions of your office, is this firm's check in the amount of $196.00 as payment of the fees associated with filing this pleading.

     Should you have any questions, or need additional information, please do not hesitate to contact me.

                                    Cordially,

                                      *Gordon P. Wilson/laj*
                                      Gordon P. Wilson

GPW/laj
Enclosures
cc:     All Counsel of Record (with enclosure)

333681_1

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 493-232                                                    DIVISION D

JAMES W. GIBBENS, JACQUELYN GIBBENS, HOMER W. GILL, SR., JAMES L. GILL, GRANT HAWKINS, MARGIE HAWKINS, HARRISON J. HOLLOWAY, JOE LUCKY, JOAN LUCKY, ARCEN P. MARCEL, HILMA MARCEL, JOSEPH MOBLEY, JR., J.W. OSBORNE, LOURENA OSBORNE, ROBERT PYLE, DOROTHY PYLE

VERSUS

AQUA-CHEM, INC., (D/B/A CLEAVER-BROOKS DIVISION), AVENTIS CROPSCIENCE USA, INC (F/K/A RHONE POULENC AG COMPANY INC.), AW CHESTERTON CO., ACANDS, INC., ANCO INSULATIONS, INC., ASARCO, INC. (F/K/A AMERICAN SMELTING & REFINING COMPANY), ASTEN GROUP, INC., ASTENJOHNSON, INC. (F/K/A ASTEN, INC.), CBS CORPORATION (SUCCESSOR IN INTEREST TO WESTINGHOUSE ELECTRIC CORPORATION), CERTAINTEED CORPORATION, COLTEC INDUSTRIES, INC. (INDIVIDUALLY AND AS A SUCCESSOR TO ANCHOR PACKING COMPANY, INC.), COMBUSTION ENGINEERING, INC., (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO M.H. DETRICK COMPANY, WALSH REFRACTORY CORPORATION, AND REFRACTORY AND INSULATION CORPORATION), CROWN CORK & SEAL COMPANY, INC., (SUCCESSOR TO MUNDET CORK COMPANY), DANA CORPORATION, EAGLE, INC. (F/K/A EAGLE ASBESTOS & PACKING COMPANY, INC.), EXXON MOBIL OIL CORPORATION (F/K/A MOBIL OIL CORPORATION), THE FLINTKOTE COMPANY, FOSTER WHEELER CONSTRUCTORS, INC., FOSTER WHEELER ENERGY CORPORATION, GARLOCK, INC., GENERAL ELECTRIC COMPANY, GENERAL REFRACTORIES COMPANY, GEORGIA PACIFIC CORPORATION (INDIVIDUALLY AND AS SUCCESSOR TO BESTWALL GYPSUM COMPANY), GREFCO, INC., HALIBURTON ENERGY SERVICE, INC., IMO INDUSTRIES, INC., IRRX CORPORATION, INGERSOLL-RAND COMPANY, J.T. THORPE COMPANY, KELLY MOORE PAINT COMPANY, INC., THE MCCARTY CORPORATION, METROPOLITAN LIFE INSURANCE COMPANY, MINNESOTA MINING & MANUFACTURING CORPORATION (3M CORPORATION), NORTH BROS. INC., OGLEBAY-NORTON COMPANY, OWENS-ILLINOIS. INC., PFIZER, INC. (AS SUCCESSOR-IN-INTEREST TO QUIGLEY COMPANY, INC.), PROKO INDUSTRIES, INC., RILEY STOKER, INC. (D/B/A DB RILEY, INC.), TAYLOR-SEIDENBACH, INC., UNIROYAL, INC., (F/K/A UNITED STATES RUBBER COMPANY, INC.), VIACOM, INC., ZURN INDUSTRIES, INC., BASF CORPORATION, BOLAND MACHINE & MANUFACTURING COMPANY, INC., SANK, INC. F/K/A BUCK KRIEHS COMPANY, INC., CITGO PETROLEUM CORPORATION F/K/A CITIES SERVICE RMT CORPORATION AS SUCCESSOR BY MERGER TO CIT-CON OIL CORPORATION, CROWLEY MARINE SERVICES, INC. AS SUCCESSOR BY MERGER TO DELTA STEAMSHIP LINES, INC. F/K/A DELTA LINE, INC., CONOCOPHILLIPS COMPANY, INC. AS SUCCESSOR-IN-INTEREST TO CONOCO, INC., DIXIE MACHINE, WELDING & METAL WORKS, INC., THE DOW CHEMICAL COMPANY, ENTERGY LOUISIANA, L.L.C. (F/K/A ENTERGY LOUISIANA, INC. F/K/A LOUISIANA POWER & LIGHT COMPANY), ENTERGY NEW ORLEANS, INC. (F/K/A NEW ORLEANS PUBLIC SERVICES, INC.), GEORGIA PACIFIC CONSUMER PRODUCTS LP F/K/A FORT JAMES OPERATING COMPANY, SOMETIMES ERRONEOUSLY REFERRED TO AS FORT JAMES COMPANY OR FORT JAMES COMPANY AS SUCCESSOR TO CROWN-ZELLERBACH CORP., HERCULES, INCORPORATED, INTERNATIONAL PAPER

COMPANY, MARATHON OIL COMPANY, MURPHY EXPLORATION &
PRODUCTION COMPANY -- USA AS SUCCESSOR IN INTEREST BY MERGER TO
MURPHY OIL U.S.A., INC. F/K/A MURPHY OIL CORPORATION, NORTHROP
GRUMMAN SHIP SYSTEMS, INC. AS SUCCESSOR-IN-INTEREST TO AVONDALE
INDUSTRIES, INC., OCCIDENTAL CHEMICAL CORPORATION F/K/A HOOKER
CHEMICALS & PLASTICS CORP. F/K/A HOOKER CHEMICAL CORPORATION,
ORMET PRIMARY ALUMINUM CORPORATION F/K/A ORMET CORPORATION,
PITTSBURGH PLATE GLASS COMPANY F/K/A PPG INDUSTRIES, INC.,
REYNOLDS METALS COMPANY, SHELL OIL COMPANY, TEXACO, INC., UNION
CARBIDE CORPORATION, UNION PACIFIC RAILROAD COMPANY F/K/A
SOUTHERN PACIFIC TRANSPORTATION COMPANY AS SUCCESSOR IN
INTEREST BY MERGER TO MISSOURI PACIFIC RAILROAD COMPANY, UNION
TANK CAR COMPANY, REILLY-BENTON CO., INC., HONEYWELL
INTERNATIONAL, INC. AS SUCCESSOR IN INTEREST BY MERGER TO ALLIED-
SIGNAL INC. F/K/A BENDIX CORPORATION

FILED: _____          _____
                                                   DEPUTY CLERK

## NOTICE TO STATE COURT OF FILING OF NOTICE OF REMOVAL

TO:   Clerk of Court
      19th Judicial District Court
      Parish of East Baton Rouge

**PLEASE TAKE NOTICE** that Northrop Grumman Ship Systems, Inc. as Successor-in-

Interest to Avondale Industries, Inc. has this day filed his Notice of Removal, a copy of which is

attached hereto, in the office of the Clerk of the United States District Court for the Middle District

of Louisiana.

                                   Respectfully Submitted,

                                   _____

                                   Gordon P. Wilson, La. Bar No. 20426
                                   Halima N. Smith, La. Bar No. 28233
                                   Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
                                   601 Poydras Street, Suite 2775
                                   New Orleans, LA 70130
                                   Telephone:   (504) 568-1990
                                   Facsimile:   (504) 310-9195
                                   e-mail:      gwilson@lawla.com
                                                hsmith@lawla.com
                                   **Attorneys for Northrop Grumman Ship Systems,**
                                   **Inc. as Successor-in-Interest to Avondale**
                                   **Industries, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing NOTICE TO STATE COURT OF FILING OF

NOTICE OF REMOVAL has been served on all counsel of record by e-mail, facsimile, and/or

placing copy of the same in the United States mail, postage pre-paid and properly addressed, on ___

September 2008.

                                   _____

330001_1                                    2

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES W. GIBBENS, JACQUELYN | * | CIVIL ACTION NO. _____ |
| GIBBENS, HOMER W. GILL, SR., JAMES | * | |
| L. GILL, GRANT HAWKINS, MARGIE | * | |
| HAWKINS, HARRISON J. HOLLOWAY, | * | |
| JOE LUCKY, JOAN LUCKY, ARCEN P. | * | |
| MARCEL, HILMA MARCEL, JOSEPH | * | SECTION_____ |
| MOBLEY, JR., J.W. OSBORNE, | * | |
| LOURENA OSBORNE, ROBERT PYLE, | * | |
| DOROTHY PYLE, | * | |
| PLAINTIFFS, | * | |
| VERSUS | * | MAGISTRATE JUDGE_____ |
| | * | |
| AQUA-CHEM, INC., (D/B/A CLEAVER- | * | |
| BROOKS DIVISION), AVENTIS | * | |
| CROPSCIENCE USA, INC (F/K/A RHONE | * | |
| POULENC AG COMPANY INC.), AW | * | |
| CHESTERTON CO., ACANDS, INC., | * | |
| ANCO INSULATIONS, INC., ASARCO, | * | |
| INC. (F/K/A AMERICAN SMELTING & | * | |
| REFINING COMPANY), ASTEN GROUP, | * | |
| INC., ASTENJOHNSON, INC. (F/K/A | * | |
| ASTEN, INC.), CBS CORPORATION | * | |
| (SUCCESSOR IN INTEREST TO | * | |
| WESTINGHOUSE ELECTRIC | * | |
| CORPORATION), CERTAINTEED | * | |
| CORPORATION, COLTEC INDUSTRIES, | * | |
| INC. (INDIVIDUALLY AND AS A | * | |
| SUCCESSOR TO ANCHOR PACKING | * | |
| COMPANY, INC.), COMBUSTION | * | |
| ENGINEERING, INC., (INDIVIDUALLY | * | |
| AND AS SUCCESSOR-IN-INTEREST TO | * | |
| M.H. DETRICK COMPANY, WALSH | * | |
| REFRACTORY CORPORATION, AND | * | |
| REFRACTORY AND INSULATION | * | |

CORPORATION), CROWN CORK &            *
SEAL COMPANY, INC., (SUCCESSOR        *
TO MUNDET CORK COMPANY), DANA         *
CORPORATION, EAGLE, INC. (F/K/A       *
EAGLE ASBESTOS & PACKING              *
COMPANY, INC.), EXXON MOBIL OIL       *
CORPORATION (F/K/A MOBIL OIL          *
CORPORATION), THE FLINTKOTE           *
COMPANY, FOSTER WHEELER               *
CONSTRUCTORS, INC., FOSTER            *
WHEELER ENERGY CORPORATION,           *
GARLOCK, INC., GENERAL ELECTRIC       *
COMPANY, GENERAL REFRACTORIES         *
COMPANY, GEORGIA PACIFIC              *
CORPORATION (INDIVIDUALLY AND         *
AS SUCCESSOR TO BESTWALL              *
GYPSUM COMPANY), GREFCO, INC.,        *
HALIBURTON ENERGY SERVICE, INC.,      *
IMO INDUSTRIES, INC., IRRX            *
CORPORATION, INGERSOLL-RAND           *
COMPANY, J.T. THORPE COMPANY,         *
KELLY MOORE PAINT COMPANY,            *
INC., THE MCCARTY CORPORATION,        *
METROPOLITAN LIFE INSURANCE           *
COMPANY, MINNESOTA MINING &           *
MANUFACTURING CORPORATION (3M         *
CORPORATION), NORTH BROS. INC.,       *
OGLEBAY-NORTON COMPANY,               *
OWENS-ILLINOIS. INC., PFIZER, INC.    *
(AS SUCCESSOR-IN-INTEREST TO          *
QUIGLEY COMPANY, INC.), PROKO         *
INDUSTRIES, INC., RILEY STOKER,       *
INC. (D/B/A DB RILEY, INC.), TAYLOR-  *
SEIDENBACH, INC., UNIROYAL, INC.,     *
(F/K/A UNITED STATES RUBBER           *
COMPANY, INC.), VIACOM, INC., ZURN    *
INDUSTRIES, INC., BASF                *
CORPORATION, BOLAND MACHINE &         *
MANUFACTURING COMPANY, INC.,          *
SANK, INC. F/K/A BUCK KRIEHS          *
COMPANY, INC., CITGO PETROLEUM        *
CORPORATION F/K/A CITIES SERVICE      *
RMT CORPORATION AS SUCCESSOR          *
BY MERGER TO CIT-CON OIL              *
CORPORATION, CROWLEY MARINE           *
SERVICES, INC. AS SUCCESSOR BY        *

MERGER TO DELTA STEAMSHIP          *
LINES, INC. F/K/A DELTA LINE, INC.,   *
CONOCOPHILLIPS COMPANY, INC. AS    *
SUCCESSOR-IN-INTEREST TO           *
CONOCO, INC., DIXIE MACHINE,        *
WELDING & METAL WORKS, INC.,        *
THE DOW CHEMICAL COMPANY,          *
ENTERGY LOUISIANA, L.L.C. (F/K/A     *
ENTERGY LOUISIANA, INC. F/K/A        *
LOUISIANA POWER & LIGHT           *
COMPANY), ENTERGY NEW ORLEANS,   *
INC. (F/K/A NEW ORLEANS PUBLIC      *
SERVICES, INC.), GEORGIA PACIFIC     *
CONSUMER PRODUCTS LP F/K/A FORT   *
JAMES OPERATING COMPANY,          *
SOMETIMES ERRONEOUSLY            *
REFERRED TO AS FORT JAMES         *
COMPANY OR FORT JAMES            *
COMPANY AS SUCCESSOR TO          *
CROWN-ZELLERBACH CORP.,           *
HERCULES, INCORPORATED,           *
INTERNATIONAL PAPER COMPANY,      *
MARATHON OIL COMPANY, MURPHY     *
EXPLORATION & PRODUCTION         *
COMPANY -- USA AS SUCCESSOR IN     *
INTEREST BY MERGER TO MURPHY      *
OIL U.S.A., INC. F/K/A MURPHY OIL     *
CORPORATION, NORTHROP           *
GRUMMAN SHIP SYSTEMS, INC. AS      *
SUCCESSOR-IN-INTEREST TO          *
AVONDALE INDUSTRIES, INC.,         *
OCCIDENTAL CHEMICAL             *
CORPORATION F/K/A HOOKER         *
CHEMICALS & PLASTICS CORP. F/K/A    *
HOOKER CHEMICAL CORPORATION,     *
ORMET PRIMARY ALUMINUM          *
CORPORATION F/K/A ORMET          *
CORPORATION, PITTSBURGH PLATE     *
GLASS COMPANY F/K/A PPG          *
INDUSTRIES, INC., REYNOLDS        *
METALS COMPANY, SHELL OIL         *
COMPANY, TEXACO, INC., UNION      *
CARBIDE CORPORATION, UNION       *
PACIFIC RAILROAD COMPANY F/K/A    *
SOUTHERN PACIFIC               *
TRANSPORTATION COMPANY AS       *

329966_1                              3

SUCCESSOR IN INTEREST BY MERGER   *
TO MISSOURI PACIFIC RAILROAD       *
COMPANY, UNION TANK CAR            *
COMPANY, REILLY-BENTON CO., INC.,  *
HONEYWELL INTERNATIONAL, INC.      *
AS SUCCESSOR IN INTEREST BY        *
MERGER TO ALLIED-SIGNAL INC.       *
F/K/A BENDIX CORPORATION           *
                    **DEFENDANTS.**   *
* * * * * * * * * * * * * * * * * * * * *

### NOTICE OF REMOVAL

To:    The Honorable Judges
      of the United States District Court
      for the Middle District of Louisiana

Defendant, Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale

Industries, Inc., pursuant to 28 U.S.C. § § 1441, 1442 and 1446, notices the removal of the above-

entitled action bearing number 493-232 on the docket of the 19th Judicial District Court for the

Parish of East Baton Rouge, State of Louisiana (hereinafter the "State Case") to the United States

District Court for the Middle District of Louisiana. This Court has subject matter jurisdiction under

28 U.S.C. § 1331 in that the action arises "under the Constitution, laws or treaties of the United

States" within the meaning of that statute, and under an officer of the United States pursuant to 28

U.S.C. § 1442.  The grounds for removal are as follows:

1.

Venue of the removed action is proper in this Court as it is the district court for the district

where the State Case is pending, pursuant to 28 U.S.C. § 1441(a).

2.

Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc.

is named as defendant in the State Case, which was served on it on or after August 14, 2008.  This

Notice of Removal is therefore timely filed because it is being filed within thirty (30) days after

service of process setting forth the claim for relief upon which the instant action is based.  *See* 28

U.S.C. § 1446 (b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S.Ct. 1322,

143 L.Ed.2d 448 (1999).

3.

Copies of the Petitions are attached hereto as Exhibit "A."

4.

According to the Petition, decedent, James L. Gill, contracted an asbestos related disease

after being exposed to asbestos while working at Avondale Shipyards in the early 1960's.

5.

This action involves persons acting under the authority of an officer of the United States

within the meaning of 28 U.S.C. § 1442(a)(1).  Assuming *arguendo* that James L. Gill was exposed

to asbestos from Avondale's facility, the use of asbestos-containing materials at that facility was

required and controlled by officers of the United States.

6.

Defendant is raising colorable federal defenses to this action:  first, under the jurisprudential

doctrine known as the "Government Contractor Defense" and, second, under the Longshore and

Harbor Workers' Compensation Act ("LHWCA").  Furthermore, a causal nexus exists between the

claims made by the plaintiffs and the extent to which plaintiffs' alleged damages were brought about

by officers of the United States government in compliance with federal law.

7.

From 1951 throughout the 1970's and thereafter, the vessels constructed at Avondale

pursuant to contracts executed between Avondale (on the one hand) and the United States

government (on the other) (collectively the "Federal Vessels") constituted the bulk of the

construction work performed at Avondale Shipyard which required the installation of asbestos-containing materials.

8.

The Federal Vessels were constructed at Avondale pursuant to mandatory terms, conditions, and specifications established by the United States government, including the United States Navy, the United States Coast Guard and the Maritime Administration, and under the direct supervision and monitoring of representatives of the United States government, which representatives commanded an immediate and constant presence at the Avondale shipbuilding facilities during construction and testing.

9.

The materials used in the construction of the Federal Vessels -- specifically including asbestos-containing materials -- were in fact the kind, type, and brand of materials specifically mandated by the shipbuilding contracts between Avondale and the United States government, and by the incorporated military specifications and government-approved materials lists, plans and specifications for the construction of the Federal Vessels.

10.

The ship-building process -- specifically including the application, use, and handling of asbestos-containing materials -- was monitored and enforced by inspectors and other representatives of the United States government on a day-to-day and job-specific basis.

11.

The United States government also promulgated specific safety rules, regulations, requirements, and precautions for shipbuilding. These regulations included specific permissible safe exposure levels for asbestos pursuant to the Walsh-Healy Public Contracts Act and the U.S.

Department of Labor Safety and Health Regulations for Shipbuilding, 29 C.F.R. § 1502.1, which regulations set safety standards to meet the provisions of the Longshoremen's and Harbor Workers' Compensation Act requirements to render Avondale's workplace safe pursuant to 33 U.S.C. § 941. Avondale was guided by and required to comply with these safety regulations during Federal Vessel construction. United States government safety inspectors specifically monitored and enforced these safety regulations as well as the construction of the Federal Vessels on a day-to-day and job-specific basis.

12.

The United States government required Avondale to provide representatives of the United States government, including government inspectors, with office space and other attendant facilities within the shipyard.

13.

Extensive Dock Trials, Builder's Trials, and Sea Trials on the Federal Vessels were performed by representatives of the United States government prior to the commission of each Federal Vessel to ensure conformity with the design specifications mandated by the United States government.

14.

Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. qualifies as a person "acting under any officer of the United States or any agency thereof" pursuant to 29 U.S.C. § 1442(a)(1) and the State Case is therefore removable to this Court because Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. can raise, as a federal defense, immunity under the "Government Contractors Defense." *Boyle v. United States Technologies, Inc.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); *Niemann v. McDonnell*

*Douglas Corp.*, 721 F.Supp. 1019 (S.D. Ill. 1989); *Pack v. A.C. and S., Inc.*, 838 F.Supp. 1099 (D. Md. 1993).

15.

Removal under 28 U.S.C. § 1442 does not require the consent of any served defendant. *See Ely Valley Mines, Inc. v. Hartford Acc. And Indem. Co.*, 644 F.2d 1310 (9th Cir. 1981); *Bottos v. Avakian*, 477 F.Supp. 610 (D.C. Ind. 1979), aff'd, 723 F. 2d 913 (7th Cir. 1983).

16.

Concurrent with the filing of this Notice of Removal, written notices have been given to all adverse parties, and a copy of this Notice of Removal is being filed with the Clerk of Court, 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

**WHEREFORE**, Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. hereby gives notice that the proceeding bearing number 493-232 in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana is removed therefrom to the docket of this Honorable Court for trial and determination as provided by law.

**WHEREFORE**, Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. further prays that this Honorable Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in the State Case, and thereupon proceed with this civil action as if it had originally commenced in this Court.

Respectfully Submitted:

_s/Gordon P. Wilson_____
**Gordon P. Wilson, La. Bar No. 20426**
**Halima N. Smith, La. Bar No. 28233**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:    (504) 568-1990
Facsimile:     (504) 310-9195
e-mail:         gwilson@lawla.com
                    hsmith@lawla.com
**Attorneys for Northrop Grumman Ship Systems,**
**Inc. as Successor-in-Interest to Avondale**
**Industries, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on 11 September 2008, a copy of the foregoing NOTICE OF

REMOVAL was filed electronically with the Clerk of Court using the CM/ECF system.  I further

certify that a copy of the foregoing has been served on all counsel of record by e-mail, facsimile,

and/or placing copy of the same in the United States mail, postage pre-paid and properly addressed.

_s/Gordon P. Wilson_____
**Gordon P. Wilson, La. Bar No. 20426**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:    (504) 568-1990
Facsimile:     (504) 310-9195
e-mail:         gwilson@lawla.com
**Attorneys for Northrop Grumman Ship Systems,**
**Inc. as Successor-in-Interest to Avondale**
**Industries, Inc.**

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process**
**Transmittal**
08/14/2008
CT Log Number 513749071

TO:  Theresa Hight
Northrop Grumman Systems Corporation
1840 Century Park East
Los Angeles, CA 90067-2199

RE:  Process Served in Louisiana

FOR:  Northrop Grumman Ship Systems, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

TITLE OF ACTION:  James W. Gibbens, et al., Pltfs. vs. Aqua-Chem, Inc., etc., et al. including Northrop Grumman Ship Systems, Inc., etc., Dfts.

DOCUMENT(S) SERVED:  Original and Supplemental and Amended Citation, First Supplement and Amendment to Original Petition, Certificate of Service, Order, Exhibit(s), Copy of Original Petition

COURT/AGENCY:  19th Judicial District Court, Parish of East Baton Rouge, LA
Case # 493-232

NATURE OF ACTION:  Asbestos Litigation - Fatal Injury/Wrongful Death

ON WHOM PROCESS WAS SERVED:  C T Corporation System, Baton Rouge, LA

DATE AND HOUR OF SERVICE:  By Process Server on 08/14/2008 at 08:40

APPEARANCE OR ANSWER DUE:  Within 15 days after you have received these documents

ATTORNEY(S) / SENDER(S):  Lawrence G. Gettys
Brent Coon & Associates
17405 Perkins Road
Baton Rouge, LA 70810
225-761-7277

ACTION ITEMS:  CT has retained the current log, Retain Date: 08/14/2008, Expected Purge Date:
08/24/2008
Image SOP - Page(s): 77
Email Notification, Theresa Hight theresa.hight@ngc.com
Email Notification, Joe Costello joe.costello@ngc.com
Email Notification, Judy Martinez judy.martinez@ngc.com
Email Notification, Andy Shipley andrew.shipley@ngc.com
Email Notification, Elizabeth Arteaga elizabeth.arteaga@ngc.com
Email Notification, Cynthia Thompson cynthia.thompson@ngc.com

SIGNED:  C T Corporation System
PER:  Lisa Ulrich
ADDRESS:  5615 Corporate Blvd
Suite 400B
Baton Rouge, LA 70808
TELEPHONE:  225-922-4490

Page 1 of 1 / LU

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

**EXHIBIT**

**A**

CT

2408-08-000513

## ORIGINAL AND SUPPLEMENTAL AND AMENDED CITATION

JAMES W. GIBBENS ET AL ET AL
(Plaintiff)

vs.

AQUA-CHEM, INC. ET AL ET AL
(Defendant)

NUMBER    C493232 Division D

19th JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

TO: NORTHROP GRUMMAN SHIP SYSTEMS, INC. AS
        SUCCESSOR-IN-INTEREST TO AVONDALE INDUSTRIES, INC.
        THROUGH C T C ORPORATION SYSTEMS
        5615 CORPORATE BLVD., STE. 400B
        BATON ROUGE, LA.  70808

Attached to this citation are certified copies of the Original and Supplemental and Amended Petitions*. The petitions tell you what you are being sued for.

You must EITHER do what the petitions asks OR, within fifteen (15) days after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of this Court at the Governmental Building, 222 St. Louis Street, Baton Rouge, Louisiana.

If you do not do what the petitions asks, or if you do not file an answer or legal pleading within fifteen (15) days, a judgment may be entered against you without further notice.

This citation was issued by the Clerk of Court for the East Baton Rouge Parish, on 11-AUG-2008.

_Deputy Clerk of Court for_
Deug Welborn, Clerk of Court

Requesting Attorney: LAWRENCE G GETTYS

*Also attached are the following documents:

### SERVICE INFORMATION:

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20____, served on the above named party as follows:

PERSONAL SERVICE:  On the party herein named at _____

DOMICILIARY SERVICE:  On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

SECRETARY OF STATE:  By tendering same to the within named, by handing same to _____.

DUE AND DILIGENT:  After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

RETURNED:  Parish of East Baton Rouge, this _____ day of _____, 20 ____.

SERVICE:       $_____
MILEAGE:      $_____              Deputy Sheriff
TOTAL:          $_____              Parish of East Baton Rouge

ORIGINAL AND SUPPLEMENTAL AND AMENDED CITATION -2408

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO. 493-232                                    DIVISION "D"

JAMES W. GIBBENS, ET AL

VERSUS

AQUA-CHEM, INC., (D/B/A CLEAVER-BROOKS DIVISION), ET AL

FILED: _____          _____
                                        DEPUTY CLERK

### PLAINTIFFS' FIRST SUPPLEMENT AND AMENDMENT
### TO THE ORIGINAL PETITION FOR DAMAGES

NOW INTO COURT, by and through undersigned counsel, come Plaintiffs who file this, their First Supplement and Amendment to the Original Petition for Damages and respectfully show the Court the following:

1.

Please add the following Defendants:

1.   BASF Corporation

2.   Boland Machine & Manufacturing Company, Inc.

3.   Sank, Inc. f/k/a Buck Kreihs Company, Inc.

4.   Citgo Petroleum Corporation f/k/a Cities Service RMT Corporation as Successor by Merger to Cit-Con Oil Corporation

5.   Crowley Marine Services, Inc. As Successor by Merger to Delta Steamship Lines, Inc. f/k/a Delta Line, Inc.

6.   ConocoPhillips Company, Inc. As Successor-in-Interest to Conoco, Inc.

7.   Dixie Machine, Welding, & Metal Works, Inc.

8.   The Dow Chemical Company

9.   Entergy Louisiana, L.L.C. (f/k/a Entergy Louisiana, Inc. f/k/a Louisiana Power & Light Company)

10.  Entergy New Orleans, Inc. (f/k/a New Orleans Public Services, Inc.)

11.  Georgia-Pacific Consumer Products LP f/k/a Fort James Operating Company, sometimes erroneously referred to as Fort James Company or Fort James Company as successor to Crown-Zellerbach Corp.

12.  Hercules, Incorporated

13.  International Paper Company

14. Marathon Oil Company

15. Murphy Exploration & Production company – USA as Successor in Interest by Merger to Murphy Oil U.S.A., Inc. f/k/a Murphy Oil Corporation

16. Northrop Grumman Ship Systems, Inc. As Successor-in-Interest to Avondale Industries, Inc.

17. Occidental Chemical Corporation f/k/a Hooker Chemicals & Plastics Corp. f/k/a Hooker Chemical Corporation

18. Ormet Primary Aluminum Corporation f/k/a Ormet Corporation

19. Pittsburgh Plate Glass Company f/k/a PPG Industries, Inc.

20. Reynolds Metals Company

21. Shell Oil Company

22. Texaco Inc.

23. Union Carbide Corporation

24. Union Pacific Railroad Company f/k/a Southern Pacific Transportation Company as Successor in Interest by Merger to Missouri Pacific Railroad Company

25. Union Tank Car Company

26. Reilly-Benton Co., Inc.

27. Honeywell International Inc. As Successor in Interest by Merger to Allied-Signal Inc. f/k/a Bendix Corporation

II.

Please amend Exhibit "A" to include additional work history.

III.

Please amend Exhibit "B" to include Defendants Reilly-Benton Co., Inc.; Union Carbide Corporation; and Honeywell International Inc.

IV.

Please add Exhibit "C" to identify and set forth premise Defendants as to petitioning Plaintiffs.

V.

Please add the following language:

"FACTS

*The following paragraphs only apply to Decedent, J.W. Osborne*

36A. Union Pacific Railroad Company is a Delaware corporation with its principal place of business in the state of Louisiana (hereinafter "Railroad Defendant"). It has employees and substantial business operations and presence within the State of Louisiana, and this venue.

2

Additionally, Decedent was exposed to asbestos and asbestos-containing products while on the premises of the Railroad Defendant. The Railroad Defendant is subject to service of process through its registered agent.

36B.   During his employment with the Railroad Defendant, Decedent's duties included but were not limited to serving as head brakeman.  Decedent was engaged in the performance of his duties as an employee of the Railroad Defendant at the time he was injured as hereinafter alleged.

36C.   During the course of Decedent's employment, the Railroad Defendant was engaged in interstate commerce as a common carrier by rail, and all or part of the duties of the Decedent were in furtherance of and did closely, directly and substantially affect interstate commerce; therefore, the rights and liabilities of the parties are governed by the Federal Employer's Liability Act, ("FELA") 45 U.S.C., Section 1, et seq., which grants this Court jurisdiction over this action.

36E.   During the course and scope of his employment by the Railroad Defendant, Decedent was required to work with, and in the vicinity of, toxic substances, including asbestos and asbestos-containing products.

<u>CAUSE OF ACTION UNDER FELA</u>

36F.   The Railroad Defendant is guilty of one or more of the following negligent acts or omissions in violation of the FELA:

1.   failing to provide Decedent with a safe work place;

2.   failing to test and determine the ultra-hazardous nature of products prior to requiring employees to work with same;

3.   failing to formulate and use a method of handling asbestos and asbestos-containing products, thus exposing Decedent to high concentrations of toxic dust;

4.   failing to exercise reasonable care in publishing and enforcing a safety plan and method of handling and installing said materials and products;

5.   failing to inquire of the suppliers and manufacturers of these products of their hazardous nature;

6.   failing to provide Decedent with safe and suitable tools and equipment, including adequate protective masks and/or protective inhalation devices;

3

7.    failing to provide Decedent with any instructions or adequate instructions regarding the use, handling or removal of these products;

8.    recklessly and negligently failing to disclose, warn or reveal critical medical and safety information to Decedent regarding the hazards in general and those specific hazards at Decedent's work sites;

9.    failing to properly supervise or monitor the work areas for compliance with safety regulations;

10.    failing to provide a safe and suitable means of eliminating the amount of toxic dust in the air;

11.    failing to periodically inspect their warehouse cars, locomotives, boilers, and their appurtenances in order to ascertain any contamination by toxic dusts and fibers; and

12.    any other acts or omissions as may be revealed in discovery or at trial.

360.  As a direct and proximate result, in whole or in part, of one or more of the foregoing negligent acts or omissions on the part of the Railroad Defendant, Decedent suffered exposure to toxic substances, including asbestos and asbestos-containing products which resulted in one or more of the injuries complained of in this petition including the Original Petition for Damages and any and all supplements and amendments."

VI.

Please add the following language:

"STRICT LIABILITY AND NEGLIGENCE ACTION AGAINST BASF CORPORATION; BOLAND MACHINE & MANUFACTURING COMPANY, INC.; SANK, INC. F/K/A BUCK KREIHS COMPANY, INC.; CITGO PETROLEUM CORPORATION F/K/A CITIES SERVICE RMT CORPORATION AS SUCCESSOR BY MERGER TO CIT-CON OIL CORPORATION; CONOCOPHILLIPS COMPANY, INC. AS SUCCESSOR-IN-INTEREST TO CONOCO, INC.; DIXIE MACHINE, WELDING, & METAL WORKS, INC.; THE DOW CHEMICAL COMPANY; ENTERGY LOUISIANA, L.L.C. (F/K/A ENTERGY LOUISIANA, INC. F/K/A LOUISIANA POWER & LIGHT COMPANY); ENTERGY NEW ORLEANS, INC. (F/K/A NEW ORLEANS PUBLIC SERVICES, INC.); EXXON MOBIL CORPORATION F/K/A EXXON CORPORATION AS SUCCESSOR TO STANDARD OIL COMPANY; FORT JAMES OPERATING COMPANY, A/K/A JAMES RIVER PAPER COMPANY, INC., A/K/A JAMES RIVER OPERATING COMPANY, F/K/A JAMES RIVER CORPORATION OF VIRGINIA, F/K/A JAMES RIVER CORPORATION OF NEVADA, F/K/A CROWN ZELLERBACH CORPORATION; GEORGIA-PACIFIC LLC A/K/A GEORGIA PACIFIC CORPORATION; HERCULES, INCORPORATED; INTERNATIONAL PAPER COMPANY; MARATHON OIL COMPANY; MURPHY EXPLORATION & PRODUCTION COMPANY – USA AS SUCCESSOR IN INTEREST BY MERGER TO MURPHY OIL U.S.A., INC. F/K/A MURPHY OIL CORPORATION; NORTHROP GRUMMAN SHIP SYSTEMS, INC. AS SUCCESSOR-IN-INTEREST TO AVONDALE INDUSTRIES, INC.; OCCIDENTAL CHEMICAL CORPORATION

F/K/A HOOKER CHEMICALS & PLASTICS CORP. F/K/A HOOKER CHEMICAL
CORPORATION; ORMET PRIMARY ALUMINUM CORPORATION F/K/A
ORMET CORPORATION; PITTSBURGH PLATE GLASS COMPANY F/K/A PPG
INDUSTRIES, INC.; REYNOLDS METALS COMPANY; SHELL OIL COMPANY ;
TEXACO INC.; UNION CARBIDE CORPORATION ; UNION TANK CAR
COMPANY; AND UNIROYAL, INC. F/K/A UNITED STATES RUBBER
COMPANY, INC.

THE FOLLOWING PARAGRAPHS APPLY TO THE PLAINTIFFS LISTED ON
EXHIBIT "C" ATTACHED HERETO:

36H.   Plaintiffs allege premise liability against the Defendants listed on Exhibit "C"

(hereinafter the "premise Defendants"), in failing to provide a safe place in which to work free

from the dangers of asbestos.

36I.   The premises on which Plaintiffs were injured were owned by, and were in the

custody of the premise Defendants and were unreasonably dangerous due to the presence of

asbestos-containing products, which resulted in the exposure of Plaintiffs to airborne asbestos

fibers with no precautions taken to minimize the risk of danger or warn Plaintiffs of such danger.

The unreasonably dangerous condition of the premises and the negligence of the premise

Defendants were causes of the Plaintiffs' injuries.

36J.   The premise Defendants negligently, recklessly, willfully and/or because of gross

and wanton negligence, fault, or strict liability, failed to properly discharge its duties to Plaintiffs

in the following:

    a.   Defendants failed to provide Plaintiffs with a safe work place;

    b.   Defendants failed to provide Plaintiffs with safety equipment;

    c.   Defendants failed to provide Plaintiffs with correct, adequate, or proper
       safety equipment;

    d.   Defendants recklessly and negligently failed to disclose, warn or reveal
       critical medical and safety information to Plaintiffs regarding asbestos
       hazards in general and with regard to those specific hazards at Plaintiffs'
       work sites;

    e.   Defendants recklessly concealed and negligently omitted to reveal critical
       medical and safety information from Plaintiffs regarding the safety and
       health risks associated with the asbestos and asbestos-containing products
       at their work sites;

    f.   Defendants failed to timely remove asbestos hazards from the work place;

    g.   Defendants failed to properly supervise or monitor the work areas for

5

compliance with safety regulations; and

h.  Defendants failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air.

36K.  The premise Defendants are strictly liable for hazardous things in its guarde, care, custody or right of control; and/or any other acts or omissions as may be revealed in discovery or at trial.

36L.  The above-described negligence, fault, strict liability and willful misconduct of these Defendants were proximate causes of the Plaintiffs' injuries.

VII.

Please add the following language:

**STRICT LIABILITY AND NEGLIGENCE ACTION AGAINST INDUSTRIAL AND MARINE EQUIPMENT CO. INC. AS SUCCESSOR IN INTEREST BY MERGER TO SINTES SALES, INC.; CROWLEY MARINE SERVICES, INC. AS SUCCESSOR BY MERGER TO DELTA STEAMSHIP LINES, INC. F/K/A DELTA LINE, INC.**

36M.  Plaintiffs for Harrison Holloway and Plaintiff, Homer Gill, hereby allege negligent, grossly negligent, wanton, willful and intentional misconduct on behalf of Decedent's, Harrison Holloway, employer, Industrial and Marine Equipment Co. Inc. as Successor in Interest by Merger to Sintes Sales, Inc. and Plaintiff's, Homer Gill, employer, Crowley Marine Services, Inc. as successor by Merger to Delta Steamship Lines, Inc., d/k/a Delta Line, Inc., (hereinafter "employer Defendants") in failing to provide and/or ensure a safe place in which to work free of hazardous concentrations of asbestos and asbestos-containing dust, as well as sending Decedent and Plaintiff to work in said environments, at the facilities located on Exhibit "A".

36N.  At various times, the Decedent and Plaintiff were exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by their employer Defendant.

36O.  The employer Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, undertook and assumed the duties and responsibilities owed individually and/or delegated to them for providing Decedent and Plaintiff with a safe place to work and employer Defendants wantonly and/or negligently and/or willfully and/or intentionally failed to provide Decedent and Plaintiff a safe place to work.

36P.  The premises on which employer Defendants sent Decedent and Plaintiff to work were unreasonably dangerous due to the presence of asbestos-containing products, which

6

resulted in the exposure of the Decedent and Plaintiff to airborne asbestos fibers.   Other employees of said employer Defendants created airborne asbestos fibers by and through their work around Decedent and Plaintiff.   No or inadequate precautions were taken to minimize the risk of danger or warn Decedent and Plaintiff of such danger.   These premises and/or the asbestos-containing products contained thereon were defective, and the employer Defendants knew or should have known of said condition, knew or should have known of the presence of asbestos at said premises, and knew or should have known that the work of their employees around Decedent and Plaintiff would create airborne asbestos fibers.   The unreasonably dangerous condition of the premises, as well as the negligence of all employer Defendants, was a cause of the Decedent's and Plaintiff's injuries.   Therefore the Employer Defendants are liable for Decedent's and Plaintiff's damages pursuant to La. C.C. arts. 2315.

36Q.   Decedent and Plaintiff were exposed to asbestos-containing products during the course and scope of their employment at the jobsites listed on Exhibit "A".   Decedent's and Plaintiff's exposure to asbestos products occurred without fault on their part.   Decedent and Plaintiff hereby allege that the employer Defendants are liable for their injuries, and, in failing to provide a safe place in which to work free from the dangers of respirable asbestos-containing dust and for sending Plaintiffs to work in said environments.

36R.   Other employees of said employer Defendants, among others, created this asbestos-containing dust Plaintiffs have inhaled or otherwise ingested and as a result, have suffered the injuries both physically and mentally, including, without limitation, (i) asbestosis (ii) pulmonary or bronchogenic cancer; cancer of various sites and organs; (iii) mesothelioma; (iv) impaired pulmonary capacity; (v) reduced lung volume; (vi) pleural plaques and/or pleural thickening; (vii) interstitial lung fibrosis as well as any and all lung damage;   (viii) increased susceptibility to one of the foregoing diseases and other illnesses; and (ix) mental anguish associated with the preceding conditions, and with the fear of developing the preceding conditions.

36S.   The Employer Defendants identified in Paragraph "36M" above negligently, recklessly, willfully and/or because of gross and wanton negligence, or other fault, or strict liability, failed to properly discharge its duties to Decedent and Plaintiff in the following:

      1.     The Employer Defendants failed to provide Decedent and Plaintiff with a safe work place;

2.  The Employer Defendants failed to provide Decedent and Plaintiff with safety equipment;

3.  The Employer Defendants failed to provide Decedent and Plaintiff with correct, adequate, or proper safety equipment;

4.  The Employer Defendants failed to protect Decedent and Plaintiff from any asbestos exposure;

5.  The Employer Defendants failed to provide Decedent and Plaintiff with sufficient personal protective equipment safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

6.  The Employer Defendants failed to supervise or insure compliance with safety guidelines concerning exposure to asbestos-containing products;

7.  The Employer Defendants failed to use or misused equipment and instrumentalities within their control which were intended to minimize Decedent's and Plaintiff's exposure to asbestos dust;

8.  The Employer Defendants recklessly and negligently failed to disclose, warn or reveal critical medical and safety information to Decedent and Plaintiff regarding asbestos hazards in general and with regard to those specific hazards at Decedent's and Plaintiff's work sites;

9.  The Employer Defendants recklessly concealed and negligently omitted to reveal critical medical and safety information from Decedent and Plaintiff regarding the safety and health risks associated with the asbestos and asbestos-containing products at their work sites;

10.  The Employer Defendants failed to timely remove asbestos hazards from the work place;

11.  The Employer Defendants failed to properly supervise or monitor the work areas for compliance with safety regulations;

12.  The Employer Defendants failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

13.  The Employer Defendants failed to properly perform engineering services, consulting and direction of work involving the installation, removal,

8

maintenance and/or disturbance of asbestos at Decedent's and Plaintiff's work sites;

14. The Employer Defendants failed to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

15. The Employer Defendants failed to properly perform or direct the removal and abatement of asbestos in place at Decedent's and Plaintiff's work sites."

VIII.

Please add Exhibit "D" to identify and set forth the statutory survivors and/or wrong death petitioners for the deceased Plaintiffs.

IX.

Please assert survival actions for the following deceased Plaintiffs, J W Osborne, Joel S. Ducky, and Harrison J. Holloway. The petitioners listed on Exhibit "D" are the statutory survivors of the referenced Decedents and hereby substitute themselves in Decedents' stead and hereby assert this survival action pursuant to La.C.C.Art. 2315.1.

X.

The Plaintiffs reiterate all other matters contained in the Original and Amended Petition for Damages including the prayer of the Original and Amended Petitions as though set forth at length herein.

WHEREFORE, the petitioners pray that their Original Petition be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment herein in favor of Plaintiffs and against the Defendants as originally prayed for herein.

Respectfully submitted,

BRENT COON & ASSOCIATES

LAWRENCE G. GETTYS (LSB #23753)
DOUGLAS R. KRAUS (LSB #26668)
JULIE A. JACOBS (LSB #23796)
DAMON R. POURCIAU (LSB #31529)
17405 Perkins Road
Baton Rouge, LA 70810
Tel: (225) 751-7277
Fax: (225) 753-4503

CERTIFIED
TRUE COPY

AUG  8 2008

BY _____
DEPUTY CLERK

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Supplement and Amendment to the Original Petition for Damages was this day served by United States Mail, postage pre-paid and/or by facsimile and properly addressed upon all parties as indicated on the service list attached hereto.

Baton Rouge, Louisiana this _16th_ day of _August_, 2008.

CERTIFIED TRUE COPY
001098
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA.
FILED
2008 AUG -6 PH 1:23
By
DEPUTY CLERK & RECORDER FOR
DOUG WELBORN
CLERK OF COURTE B.R. PARISH

CERTIFIED
TRUE COPY

AUG 8 2008

BY
DEPUTY CLERK

10

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO. 493-232                       DIVISION "D"

JAMES W. GIBBENS, ET AL

VERSUS

AQUA-CHEM, INC., (D/B/A CLEAVER-BROOKS DIVISION), ET AL

FILED: _____     _____

                                       DEPUTY CLERK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### ORDER

Let the above and foregoing First Supplement and Amendment to the Original Petition for Damages be filed as prayed for.

SO ORDERED this the ____ day of _Aug._, 2008.

_[signature]_

JUDGE, 19TH JUDICIAL DISTRICT COURT

### CERTIFICATE OF SERVICE

I hereby certify that a signed copy of this Order to Plaintiffs' First Supplement and Amendment to the Original Petition for Damages and Order was this day served by facsimile upon all parties as indicated on the service list attached hereto.

Baton Rouge, Louisiana this ____ day of _____, 2008.

_____

CERTIFIED TRUE COPY

AUG 8 2008

BY _____
DEPUTY CLERK

CERTIFIED TRUE COPY
0011099

DEPUTY CLERK OF COURT

19th JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2008 AUG -6 PM 1:23
DEPUTY CLERK & RECORDER
DOUG WELBORN
CLERK OF COURT & R. PARISH

11

EXHIBIT "A"

## Work History Summary

Gibbens, James W

Social Security #: 493-24-XXXX        Date of Birth:   12/8/1926

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| HILLSIDE FROZEN FOOD AND LOCKER CO. | HILLSIDE FROZEN FOOD AND LOCKER CO. | HILLSIDE, IL | MANAGER | 1947 | 1951 |
| HILLSIDE FROZEN FOOD AND LOCKER CO. | HILLSIDE FROZEN FOOD AND LOCKER CO. | HILLSIDE, IL | MANAGER | 1955 | 1957 |
| J.F. GIBBENS BUILDERS | J.F. GIBBENS BUILDERS | BAKER, LA BATON ROUGE, LA | SUPERVISOR | 1957 | 1997 |
| J.F. GIBBENS BUILDERS | J.F. GIBBENS BUILDERS | BAKER, LA BATON ROUGE, LA | INSULATOR | 1957 | 1997 |
| J.F. GIBBENS BUILDERS | J.F. GIBBENS BUILDERS | BAKER, LA BATON ROUGE, LA | ELECTRICIAN | 1957 | 1997 |
| J.F. GIBBENS BUILDERS | J.F. GIBBENS BUILDERS | BAKER, LA BATON ROUGE, LA | CARPENTER | 1957 | 1997 |
| J.F. GIBBENS BUILDERS | J.F. GIBBENS BUILDERS | BAKER, LA | ELECTRICIAN | 1957 | 1997 |
| J.F. GIBBENS BUILDERS | J.F. GIBBENS BUILDERS | BATON ROUGE, LA | INSULATOR | 1957 | 1997 |
| SELF EMPLOYED | SELF EMPLOYED | GONZALES, LA BATON ROUGE, LA BAKER, LA | SUPERVISOR | 1957 | 1997 |
| J.F. GIBBENS BUILDERS | J.F. GIBBENS BUILDERS | BAKER, LA | CARPENTER | 1957 | 1997 |
| EXXON COMPANY U S A | EXXON MARINE DIVISION | OFFSHORE, LA OFFSHORE, TX | MERCHANT MARINE ELECTRICIAN RADIO ELECTRICIAN OFFICER | 1967 | 1986 |

EXHIBIT "A"

## Work History Summary

Gill, Homer W

Social Security #: 434-48-XXXX          Date of Birth:   4/14/1934

| Employer | Job Site | City, State | Occupation | From | To |
|----------|----------|-------------|------------|------|-----|
| DELTA LINE | DELTA LINE | NEW ORLEANS, LA | ENGINEER BOILERMAKER MERCHANT MARINE MAINTENANCE MECHANIC | 1951 | 1987 |

EXHIBIT "A"

## Work History Summary

Gill, James L

Social Security #: 438-44-XXXX

Date of Birth: 1/13/1931

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| DELTA TANK | DELTA TANK | BATON ROUGE, LA | BOILERMAKER | 1953 | 1954 |
| BOYCE HARVEY | BOYCE HARVEY | BATON ROUGE, LA | LABORER | 1954 | 1954 |
| IDEAL CEMENT COMPANY | IDEAL CEMENT COMPANY | BATON ROUGE, LA | LABORER | 1954 | 1954 |
| BOYCE HARVEY | SHARP STATION | BATON ROUGE, LA | LABORER | 1954 | 1954 |
| WELDING MFG. COMPANY | KAISER ALUMINUM | CHALMETTE, LA | BOILERMAKER WELDER | 1956 | 1956 |
| WELDING MANUFACTURING CO | WELDING MANUFACTURING | CHALMETTE, LA | WELDER BOILERMAKER | 1956 | 1956 |
| NICHOLS CONSTRUCTION CO | UNION TANK CAR CO. | BAKER, LA | WELDER | 1957 | 1957 |
| F. H. MCGRAW CO. | ORMET PLANT | BURNSIDE, LA | WELDER | 1957 | 1957 |
| BOLAND MARINE AND MFG. CO. | BOLAND MARINE | NEW ORLEANS, LA | BOILERMAKER WELDER | 1960 | 1962 |
| DIXIE MACHINE WELDING AND METAL WORKS | DIXIE MACHINE | NEW ORLEANS, LA | BOILERMAKER WELDER | 1960 | 1960 |
| TODD JOHNSON DRY DOCKS | TODD SHIPYARD | ALGIERS, LA | WELDER BOILERMAKER | 1960 | 1963 |
| BOH BROS. CONSTRUCTION | FRANCE ROAD YARD | NEW ORLEANS, LA | WELDER | 1963 | 1965 |
| BOH BROS. CONSTRUCTION | KAISER ALUMINUM | GRAMERCY, LA | WELDER | 1963 | 1965 |
| BOH BROS. CONSTRUCTION | AVONDALE SHIPYARD | AVONDALE, LA | WELDER | 1963 | 1965 |
| PETER KIEWIT CONSTRUCTION | UNION CARBIDE | TAFT, LA | WELDER | 1966 | 1967 |

*James Gill Cont.*

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| WESTINGHOUSE ELECTRIC CORP | UNION CARBIDE | TAFT, LA | WELDER | 1967 | 1969 |
| COMBUSTION ENGINEERING | GULF STATES PARISH ROAD | NEW ORLEANS | WELDER | 1971 | 1988 |
| COMBUSTION ENGINEERING | COMBUSTION ENGINEERING | NEW ORLEANS | WELDER | 1971 | 1988 |
| COMBUSTION ENGINEERING | NINE MILE POINT | WESTWEGO, LA | WELDER | 1971 | 1988 |
| ATLAS ERECTION CO., INC. | HARVEY CANAL | TAFT, LA | WELDER | 1972 | 1974 |
| LANE AND CO., INC. | LANE YARD | NEW ORLEANS, LA | WELDER | 1972 | 1972 |
| LITWIN CORP. | MURPHY OIL REFINERY | CHALMETTE, LA | WELDER | 1972 | 1972 |
| ATLAS ERECTION CO., INC. | HOOKER CHEMICAL | TAFT, LA | WELDER | 1972 | 1974 |
| D. B. RILEY | D. B. RILEY | TAFT, LA | WELDER | 1973 | 1974 |
| WILLIAMS AND MCWILLIAMS | FRANCE ROAD YARD | NEW ORLEANS, LA | WELDER | 1974 | 1974 |
| GULF ENGINEERING CO., INC. | NINE MILE POINT | WESTWEGO, LA | WELDER | 1974 | 1980 |
| BLOUNT BROS. | SHELL OIL COMPANY | NORCO, LA | WELDER | 1974 | 1974 |
| TRAIL MOBILE LEASING CORP. | KAISER ALUMINUM | CHALMETTE, LA | WELDER | 1974 | 1975 |
| TELLEPSEN CONSTRUCTION | GRAIN ELEVATOR | NEW ORLEANS, LA | WELDER | 1974 | 1974 |
| GULF ENGINEERING CO., INC. | LITTLE GYPSY | NEW ORLEANS, LA | WELDER | 1974 | 1974 |
| S. K. WHITTY AND CO., INC. | SUPERDOME STADIUM | NEW ORLEANS, LA | WELDER | 1974 | 1974 |
| J. A. JONES, INC. | NUCLEAR POWER PLANT | TAFT, LA | WELDER | 1976 | 1976 |
| BURDEN CONSTRUCTION CORP. | MOBIL OIL COMPANY | CHALMETTE, LA | WELDER | 1976 | 1976 |
| NATIONAL MAINTENANCE CORP. | MARATHON OIL REFINERY | GARVILLE, LA | WELDER | 1976 | 1981 |
| DELTA MAINTENANCE INC. | SHELL OIL REFINERY | NORCO, LA | WELDER | 1976 | 1979 |
| PARSON CONSTRUCTION CO | SHELL OIL REFINERY | NORCO, LA | WELDER | 1976 | 1976 |
| BUCK KREIHS CO., INC. | BUCK KREIHS | NEW ORLEANS, LA | BOILERMAKER WELDER | 1976 | 1976 |

*James Gill Cont.*

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| FOSTER WHEELER ENERGY CORP | GULF STATES PARISH ROAD | NEW ORLEANS, LA | WELDER | 1980 | 1980 |
| LAFAYETTE STEEL ERECTORS | KAISER ALUMINUM | LAPLACE, LA | WELDER | 1980 | 1980 |
| LOU-CON, INC. | NINE MILE POINT | WESTWEGO, LA | WELDER | 1980 | 1980 |
| FOSTER WHEELER ENERGY CORP | NINE MILE POINT | WESTWEGO, LA | WELDER | 1981 | 1981 |
| GULF ENGINEERING CO., INC. | GULF STATES PARISH ROAD | NEW ORLEANS, LA | WELDER | 1981 | 1981 |
| DELTA MAINTENANCE INC. | MURPHY OIL REFINERY | CHALMETTE, LA | WELDER | 1981 | 1981 |
| ALDEL MAINT. CONTRACTOR | GOOD HOPE OIL REFINERY | NORCO, LA | WELDER | 1982 | 1982 |
| NUCLEAR INST. SERVICE CO. | NUCLEAR POWER PLANT | TAFT, LA | WELDER | 1982 | 1982 |
| DELTA MAINTENANCE INC. | MOBIL OIL REFINERY | CHALMETTE, LA | WELDER | 1982 | 1985 |
| DELTA MAINTENANCE INC. | MURPHY OIL REFINERY | CHALMETTE, LA | WELDER | 1983 | 1991 |
| WESTINGHOUSE ELECTRIC CORP | NUCLEAR POWER PLANT | TAFT, LA | WELDER | 1983 | 1983 |
| AMEC PLANT SERVICES, INC. | GOOD HOPE OIL REFINERY | NORCO, LA | WELDER | 1984 | 1985 |
| GULF ENGINEERING CO., INC. | WATERFORD 1 AND 2 | TAFT, LA | WELDER | 1985 | 1985 |
| RAM INC. | BOGALUSA PAPER MILL | BOGALUSA, LA | WELDER | 1986 | 1986 |
| FOSTER WHEELER ENERGY CORP | NINE MILE POINT | WESTWEGO, LA | WELDER | 1986 | 1986 |
| GULF ENGINEERING CO., INC. | GULF ENGINEERING CO., INC. | NEW ORLEANS, LA | WELDER | 1986 | 1991 |
| BABCOCK AND WILCOX | PAPERMILL | NEW ORLEANS, LA | WELDER | 1987 | 1989 |
| JOY TECHNOLOGIES, INC. | JOY TECHNOLOGIES, INC. | ROSENBURG, TX | WELDER | 1987 | 1987 |
| IND. CONT. SERVICES, INC. | IND. CONT. SERVICES, INC. | HAMMOND, IN | WELDER | 1988 | 1988 |
| GREAT LAKES IND CONTRACTORS | CONOCO OIL REFINERY | HAMMOND, IN | WELDER | 1988 | 1988 |
| RN PYLE MECH. CONT., INC. | RN PYLE MECH. CONT., INC. | PENSACOLA, FL | WELDER | 1988 | 1988 |
| MORRISON CONT. CO., INC. | MORRISON CONT. CO., INC. | HAMMOND, IN | WELDER | 1988 | 1988 |
| MURPHY CO, MECHANICAL CONTR | CONOCO OIL REFINERY | LIMA, OH | WELDER | 1989 | 1989 |

*James Gill Cont.*

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| BABCOCK AND WILCOX | GULF STATES PARISH ROAD | NEW ORLEANS, LA | WELDER | 1989 | 1989 |
| MID WEST IND. CONT., INC. | MURPHY OIL REFINERY | CHALMETTE, LA | WELDER | 1990 | 1991 |
| TENNESSEE VALLEY AUTHORITY | TENNESSEE VALLEY | CENTRAL CITY, KY | WELDER | 1990 | 1990 |
| ABB C-E SERVICES, INC. | NINE MILE POINT | WESTWEGO, LA | WELDER | 1991 | 1992 |

EXHIBIT "A"

## Work History Summary

Hawkins, Grant

Social Security #: 437-48-XXXX          Date of Birth: 10/17/1934

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| U.S. REYNOLDS | U.S. REYNOLDS | BATON ROUGE, LA | MECHANIC | 1948 | 1949 |
| BAROUCO, INC. | BAROUCO, INC | BATON ROUGE, LA | MECHANIC | 1950 | 1980 |
| BANUHO, INC. | EXXON | BATON ROUGE, LA | MECHANIC | 1950 | 1980 |
| BAROUCO, INC. | DOW CHEMICAL | PLAQUEMINE, LA | MECHANIC | 1950 | 1980 |
| BAROUCO, INC. | UNIROYAL | GEISMAR, LA | MECHANIC | 1950 | 1980 |
| BAROUCO, INC. | BASF | GEISMAR, LA | MECHANIC | 1950 | 1980 |
| DOW CHEMICAL | DOW CHEMICAL | PLAQUEMINE, LA | MECHANIC | 1956 | 1956 |
| QUALITY EQUIPMENT | QUALITY EQUIPMENT | BATON ROUGE, LA | MECHANIC | 1990 | 1985 |

EXHIBIT "A"

Work History Summary

Holloway, Harrison J, deceased

Social Security #: 434-32-XXXX        Date of Birth: 1/22/1928

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| STANDARD DREDGING COMPANY | STANDARD DREDGING | NEW ORLEANS, LA | MATE | 1944 | 1945 |
| ARMY TRANSPORTATION CORP. | ARMY TRANSPORTATION | NEW ORLEANS, LA | CHIEF BOATSWAIN MATE | 1945 | 1950 |
| STANDARD DREDGING COMPANY | STANDARD DREDGING | NEW ORLEANS, LA | MATE | 1950 | 1959 |
| U.S. ARMY | U.S. ARMY | FORT EUSTIS, VA | SPECIALIST 3 | 1955 | 1957 |
| SINTES ENGINEERING | SINTES ENGINEERING | NEW ORLEANS, LA | MAINTENANCE | 1960 | 1963 |
| T. L. JAMES | T. L. JAMES | NEW ORLEANS, LA | DECK CAPTAIN | 1963 | 1968 |
| T. L. JAMES | T. L. JAMES | NEW ORLEANS, LA | MATE | 1963 | 1968 |
| T. L. JAMES | T. L. JAMES | NEW ORLEANS, LA | LEVERMAN | 1963 | 1968 |
| RMK DREDGING | RMK DREDGING | NEW ORLEANS, LA | BOSNMATE | 1968 | 1971 |
| RMK DREDGING | RMK DREDGING | NEW ORLEANS, LA | DREDGE OPERATOR | 1968 | 1971 |
| MIKE HOOKS DREDGING INC. | MIKE HOOKS DREDGING INC. | NEW ORLEANS, LA | CAPTAIN | 1968 | 1968 |
| MIKE HOOKS DREDGING INC. | MIKE HOOKS DREDGING INC. | NEW ORLEANS, LA | CAPTAIN | 1970 | 1975 |
| J. RAY MCDERMOTT | MCDERMOTT SHIPYARD | AMELIA, LA | CAPTAIN | 1972 | 1985 |

EXHIBIT "A"

Work History Summary

Lucky, Joe, deceased

Social Security #: 430-38-XXXX          Date of Birth:   7/14/1928

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| MONSANTO CHEMICAL | MONSANTO CHEMICAL | LULING, LA | OPERATOR<br>BOILER OPERATOR | 1954 | 1985 |

EXHIBIT "A"

## Work History Summary

Marcei, Arceen P

Social Security #: 433-20-XXXX    Date of Birth: 9/6/1921

| Employer | Job Site | City, State | Occupation | From | To |
|----------|----------|-------------|------------|------|-----|
| MCDERMOTT | MCDERMOTT SHIPYARD | AMELIA, LA | LABORER FOREMAN | 1955 | 1982 |

EXHIBIT "A"
## Work History Summary

Mobley, Joseph

Social Security #: 437-38-XXXX        Date of Birth:   4/13/1930

| Employer | Job Site | City, State | Occupation | From | To |
|----------|----------|-------------|------------|------|-----|
| JOHNS MANVILLE | JOHNS MANVILLE | MARRERO, LA | LABORER | 1948 | 1950 |
| CELOTEX | CELOTEX | MARRERO, LA | LABORER | 1950 | 1953 |
| MCDERMOTT | MCDERMOTT SHIPYARD | HARVEY, LA | FOREMAN | 1961 | 1981 |
| | | | LABORER | | |

EXHIBIT "A"

## Work History Summary

Osborne, J W, deceased

Social Security #: 428-18-XXXX        Date of Birth: 7/17/1921

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| WESTERN UNION | WESTERN UNION | JACKSON, MS | TELEGRAPH OPERATOR/TIMEKEEPER | 1939 | 1941 |
| MISSOURI PACIFIC RAILROAD | MISSOURI PACIFIC RR | DUPO, IL | BRAKEMAN | 1941 | 1944 |
| METHYN PAINT CO | METHYN PAINT CO | ST. LOUIS, IL | LABORER | 1941 | 1941 |
| STANDARD OIL CO | STANDARD OIL CO | BATON ROUGE, LA | PIPEFITTER | 1943 | 1944 |
| US NAVY | US NAVY | MAYPORT, FL | ENGINEER | 1944 | 1946 |
| KENNISON TRUCK LINE | KENNISON TRUCK LINE | BATON ROUGE, LA | TRUCK DRIVER | 1946 | 1947 |
| KAISER ALUMINUM | KAISER ALUMINUM | BATON ROUGE, LA | WAREHOUSEMAN | 1947 | 1948 |
| CONTINENTAL CHEMICAL | CONTINENTAL CHEMICAL | LAKE CHARLES, LA | PIPEFITTER | 1948 | 1949 |
| KIRBY VACUUM | KIRBY VACUUM | BATON ROUGE, LA | SALEMAN | 1949 | 1951 |
| CONSOLIDATED ROOFING | STANDARD OIL | BATON ROUGE, LA | SUPERINTENDENT ROOFER | 1951 | 1950 |
| CONSOLIDATED ROOFING | ETHYL CHEMICAL | BATON ROUGE, LA. | SUPERINTENDENT ROOFER | 1951 | 1960 |
| ALLIED ROOFING AND SHEET METAL CO INC | ALLIED ROOFING | BATON ROUGE, LA | ROOFER | 1955 | 1959 |
| MICHIGAN STATIONS GULF OIL | MICHIGAN STATIONS GULF OIL | LANSING, MI | GAS STATION | 1959 | 1992 |

EXHIBIT "A"

## Work History Summary

Pyle, Robert, deceased

Social Security #: 431-24-XXXX     Date of Birth: 6/12/1925

| Employer | Job Site | City, State | Occupation | From | To |
|---|---|---|---|---|---|
| ROHN AND HAAS | ROHN AND HAAS | CITY, PA | OPERATOR | 1946 | 1950 |
| LION OIL COMPANY | LION OIL | ELDORADO, AR | OPERATOR | 1946 | 1949 |
| PENNSYLVANIA RAIL ROAD | PENNSYLVANIA RAILROAD | CITY, DE | OPERATOR | 1946 | 1950 |
| E. I. DUPONT | E. I. DUPONT | CITY, NJ | OPERATOR | 1950 | 1950 |
| LUNAS CONSTRUCTION | LION CHEMICAL | LULING, LA | BOILERMAKER HELPER | 1951 | 1952 |
| LION CHEMICAL | STEAM PLANT | LULING, LA | OPERATOR | 1953 | 1982 |

EXHIBIT "B"
MINER/MANUFACTURER/SELLER/SUPPLIER/DISTRIBUTOR DEFENDANTS:

1. AstenJohnson, Inc.
   State of Incorporation: Delaware
   Registered Office/Principal Business Establishment: Baton Rouge, LA

2. CBS Corporation, f/k/a Viacom, Inc. as successor to the liabilities of Westinghouse Electric Corporation
   State of Incorporation: Pennsylvania
   Registered Office/Principal Business Establishment: Baton Rouge, LA

3. Coltec Industries, Inc. (Individually and as Successor to Anchor Packing Company, Inc.)

4. Eagle, Inc. (Formerly Eagle Asbestos & Packing Co., Inc.)
   State of Incorporation: Louisiana
   Registered Office/Principal Business Establishment: New Orleans, LA

5. Garlock, Inc.

6. General Electric Company
   State of Incorporation: New York
   Registered Office/Principal Business Establishment: Harahan, LA

7. IMO Industries Inc. f/k/a IMO Delaval Inc. f/k/a Transamerica Delaval Inc. f/k/a Delaval Turbine Inc. f/k/a De Laval Turbine Inc.
   State of Incorporation: Illinois
   Registered Office/Principal Business Establishment: Richmond, VA

8. Ingersoll-Rand Company
   State of Incorporation: New Jersey
   Registered Office/Principal Business Establishment: Baton Rouge, LA

9. Owens-Illinois, Inc.
   Via the Louisiana Long-Arm Statute:

10. The McCarty Corporation
    State of Incorporation: Louisiana
    Registered Office/Principal Business Establishment: Baton Rouge, LA

11. Riley Power Inc. f/k/a Babcock Borsig Power, Inc. f/k/a DB Riley, Inc., f/k/a Riley Stoker Corporation
    State of Incorporation: Massachusetts
    Registered Office/Principal Business Establishment: Baton Rouge, LA

12. Taylor-Seidenbach, Inc.
    State of Incorporation: Louisiana
    Registered Office/Principal Business Establishment: New Orleans, LA

13. Union Carbide Corporation
    State of Incorporation: New York
    Registered Office/Principal Business Establishment: Baton Rouge, LA

14. Reilly-Benton Co., Inc.
    State of Incorporation: Louisiana
    Registered Office/Principal Business Establishment: Jefferson, LA

15. Honeywell International Inc. As Successor in Interest by Merger to Allied-Signal Inc. f/k/a Bendix Corporation
    State of Incorporation: Delaware
    Registered Office/Principal Business Establishment: Baton Rouge, LA

1

**EXHIBIT "C"**
**PREMISE DEFENDANTS LISTED WITH APPROPRIATE PLAINTIFFS:**

1.  BASF Corporation
    State of Incorporation: Delaware
    Registered Office/Principal Business Establishment: Geismar, LA
    Plaintiff: Grant Hawkins

2.  Boland Machine & Manufacturing Company, Inc.
    State of Incorporation: Louisiana
    Registered Office/Principal Business Establishment: New Orleans, LA
    Plaintiff: James Gill

3.  Senk, Inc. f/k/a Buck Kreiha Company, Inc.
    State of Incorporation: Louisiana
    Registered Office/Principal Business Establishment: New Orleans, LA
    Plaintiff: James Gill

4.  Citgo Petroleum Corporation f/k/a Cities Service RMT Corporation as
    Successor by Merger to Cit-Con Oil Corporation
    State of Incorporation: Delaware
    Registered Office/Principal Business Establishment: Lake Charles, LA
    Plaintiff: Grant Hawkins

5.  ConocoPhillips Company, Inc. As Successor-In-Interest to Conoco, Inc.
    State of Incorporation: Delaware
    Registered Office/Principal Business Establishment: New Orleans, LA
    Plaintiff: Grant Hawkins

6.  Dixie Machine, Welding, & Metal Works, Inc.
    State of Incorporation: Louisiana
    Registered Office/Principal Business Establishment: Harahan, LA
    Plaintiff: James Gill

7.  The Dow Chemical Company
    State of Incorporation: Delaware
    Registered Office/Principal Business Establishment: Plaquemine, LA
    Plaintiff: Grant Hawkins

8.  Entergy Louisiana, L.L.C. (f/k/a Entergy Louisiana, Inc. f/k/a Louisiana Power
    & Light Company)
    State of Incorporation: Texas
    Registered Office/Principal Business Establishment: Jefferson, LA
    Plaintiff: James Gill
    Plaintiff: Grant Hawkins

9.  Entergy New Orleans, Inc. (f/k/a New Orleans Public Services, Inc.)
    State of Incorporation: Louisiana
    Registered Office/Principal Business Establishment: New Orleans, LA
    Plaintiff: James Gill

10. Exxon Mobil Corporation f/k/a Exxon Corporation as Successor to Standard Oil
    Company
    State of Incorporation: New Jersey
    Registered Office/Principal Business Establishment: Baton Rouge, LA
    Plaintiff: James Gill
    Plaintiff: Grant Hawkins
    Plaintiff: J.W. Osborne

11.   Georgia-Pacific Consumer Products LP f/k/a Fort James Operating Company,
      sometimes erroneously referred to as Fort James Company or Fort James
      Company as successor to Crown-Zellerbach Corp.
      State of Incorporation: Virginia
      Registered Office/Principal Business Establishment: New Orleans, LA
      Plaintiff:  James Gill

12.   Hercules, Incorporated
      State of Incorporation: Delaware
      Registered Office/Principal Business Establishment: Baton Rouge, LA
      Plaintiff:  Grant Hawkins

13.   International Paper Company
      State of Incorporation: New York
      Registered Office/Principal Business Establishment: Bastrop, LA
      Plaintiff:  Grant Hawkins

14.   Marathon Oil Company
      State of Incorporation: Ohio
      Registered Office/Principal Business Establishment: Lafayette, LA
      Plaintiff:  James Gill

15.   Murphy Exploration & Production company – USA as Successor in Interest by
      Merger to Murphy Oil U.S.A., Inc. f/k/a Murphy Oil Corporation
      State of Incorporation: Delaware
      Registered Office/Principal Business Establishment: New Orleans, LA
      Plaintiff:  James Gill

16.   Northrop Grumman Ship Systems, Inc. As Successor-in-Interest to Avondale
      Industries, Inc.
      State of Incorporation: Delaware
      Registered Office/Principal Business Establishment: Avondale, LA
      Plaintiff:  James Gill
      Plaintiff:  Grant Hawkins

17.   Occidental Chemical Corporation f/k/a Hooker Chemicals & Plastics Corp. f/k/a
      Hooker Chemical Corporation
      State of Incorporation: New York
      Registered Office/Principal Business Establishment: Taft, LA
      Plaintiff:  James Gill
      Plaintiff:  Grant Hawkins

18.   Ormet Primary Aluminum Corporation f/k/a Ormet Corporation
      State of Incorporation: Delaware
      Registered Office/Principal Business Establishment: Burnside, LA
      Plaintiff:  James Gill

19.   Pittsburgh Plate Glass Company f/k/a PPG Industries, Inc.
      State of Incorporation: Delaware
      Registered Office/Principal Business Establishment: New Orleans, LA
      Plaintiff:  Grant Hawkins

20.   Reynolds Metals Company
      State of Incorporation: Delaware
      Registered Office/Principal Business Establishment: Baton Rouge, LA
      Plaintiff:  Grant Hawkins

21.   Shell Oil Company
      State of Incorporation: Delaware
      Registered Office/Principal Business Establishment: Baton Rouge, LA
      Plaintiff:  James Gill

# STATE OF LOUISIANA

THIS RECORD IS VALID FOR DEATH ONLY

5383592

STATE OF LOUISIANA
CERTIFICATE OF DEATH

I CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF A CERTIFICATE OR
DOCUMENT REGISTERED WITH THE
VITAL RECORDS REGISTRY OF THE
STATE OF LOUISIANA, PURSUANT TO
LSA – R.S.40:32, ET SEQ.

*Darlene W. Smith*
STATE REGISTRAR

10/30/2006  15:13   2252916335   OSBORNE,JU   PAGE  07

# STATE OF LOUISIANA

THIS RECORD IS VALID FOR DEATH ONLY

4304350

1/928867   STATE OF LOUISIANA
CERTIFICATE OF DEATH

*(death certificate form — most handwritten and typed entries illegible due to image quality)*

OFFICE OF PUBLIC HEALTH — VITAL RECORDS REGISTRY

IN ACCORDANCE WITH LSA-R.S.40:39 (C)
I CERTIFY THAT THE ABOVE IS A TRUE
AND CORRECT COPY OF A DEATH
CERTIFICATE IN MY CUSTODY.

I CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF A CERTIFICATE OR
DOCUMENT REGISTERED WITH THE
VITAL RECORDS REGISTRY OF THE
STATE OF LOUISIANA, PURSUANT TO
LSA — R.S.40:32, ET SEQ.

STATE REGISTRAR

<u>PLEASE SERVE THE FOLLOWING DEFFENDANTS #1 - #27 WITH ORIGINAL
PETITION & 1ST SUPPLEMENT:</u>

1.      BASF Corporation
     Registered Agent:
     C. T. Corporation Systems
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA  70808

2.      Boland Machine & Manufacturing Company, Inc.
     Registered Agent:
     William F. Finegan
     1402 Whitney Building
     New Orleans, LA  70130

3.      Sank, Inc. f/k/a Buck Kreihs Company, Inc.
     Registered Agent:
     Michael Tonguis
     2225 Tchoupitoulas Street
     New Orleans, LA  70130

4.      Citgo Petroleum Corporation f/k/a Cities Service RMT Corporation as
     Successor by Merger to Cit-Con Oil Corporation
     Registered Agent:
     C. T. Corporation Systems
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA  70808

5.      Crowley Marine Services, Inc.
     As Successor by Merger to Delta Steamship Lines, Inc.
     F/k/a Mississippi Shipping Company, Inc.
     Registered Agent:
     CT Corporation System
     8550 United Plaza Boulevard
     Baton Rouge, LA  70809;

6.      ConocoPhillips Company, Inc. As Successor-in-Interest to Conoco, Inc.
     Registered Agent:
     United States Corporation Company
     320 Somerulos Street
     Baton Rouge, LA  70802-6129

7.      Dixie Machine, Welding, & Metal Works, Inc.
     Registered Agent:
     Vicki H. Kihnemann
     5801 Citrus Blvd.
     Harahan, LA 70123

8.      The Dow Chemical Company
     Registered Agent:
     C. T. Corporation Systems
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA  70808

9.      Entergy Louisiana, L.L.C. (f/k/a Entergy Louisiana, Inc. f/k/a Louisiana Power
     & Light Company)
     Registered Agent:
     T. Michael Twomey.
     4809 Jefferson Hwy.
     Jefferson, LA 70121

10. Entergy New Orleans, Inc. (f/k/a New Orleans Public Services, Inc.)
    Registered Agent:
    Marcus V. Brown
    639 Loyola Avenue
    New Orleans, LA  70119

11. Georgia-Pacific Consumer Products LP f/k/a Fort James Operating Company,
    sometimes erroneously referred to as Fort James Company or Fort James
    Company as successor to Crown-Zellerbach Corp.
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA  70808

12. Hercules, Incorporated
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA  70808

13. International Paper Company
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA  70808

14. Marathon Oil Company
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA  70808

15. Murphy Exploration & Production company – USA as Successor in Interest by
    Merger to Murphy Oil U.S.A., Inc. f/k/a Murphy Oil Corporation
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA  70808

16. Northrop Grumman Ship Systems, Inc. As Successor-In-Interest to Avondale
    Industries, Inc.
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA  70808

17. Occidental Chemical Corporation f/k/a Hooker Chemicals & Plastics Corp. f/k/a
    Hooker Chemical Corporation
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA  70808

18. Ormet Primary Aluminum Corporation f/k/a Ormet Corporation
    Registered Agent:
    The Prentice-Hall Corporation System, Inc.
    320 Somerulos Street
    Baton rouge, LA  70802-6129

19.  Pittsburgh Plate Glass Company f/k/a PPG Industries, Inc.
     Registered Agent:
     The Prentice-Hall Corporation System, Inc.
     701 South Peters Street, Second Floor
     New Orleans, La 70130

20.  Reynolds Metals Company
     Registered Agent:
     C. T. Corporation Systems
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA  70808

21.  Shell Oil Company
     Registered Agent:
     Corporation Service Company
     320 Somerulos Street
     Baton Rouge, Louisiana 70802-6129

22.  Texaco Inc.
     Who may be served pursuant the Louisiana Long Arm Statute
     6001 Bollinger Canyon Rd.
     San Ramon, CA 94583

23.  Union Carbide Corporation
     Registered Agent:
     C. T. Corporation Systems
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA  70808

24.  Union Pacific Railroad Company f/k/a Southern Pacific Transportation
     Company as Successor in Interest by Merger to Missouri Pacific Railroad
     Company
     Registered Agent:
     C. T. Corporation Systems
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA  70808

25.  Union Tank Car Company
     Registered Agent:
     Corporation Service Company
     320 Somerulos Street
     Baton Rouge, Louisiana 70802-6129

26.  Reilly-Benton Co., Inc.
     Registered Agent:
     Thomas L. Cougill
     C/O Beason- Willingham, LLP,
     8550 United Plaza Blvd., Ste. 702,
     Baton Rouge, LA  70809

27.  Honeywell International Inc. As Successor in Interest by Merger to Allied-Signal
     Inc. f/k/a Bendix Corporation
     Registered Agent:
     Corporation Service Company
     320 Somerulos Street
     Baton Rouge, LA  70802-6129

PLEASE SERVE THE FOLLOWING DEFENDANTS #28 - #31 WITH FIRST
SUPPLEMENT ONLY:

28.    AstenJohnson, Inc.
    Registered Agent:
    Corporation Service Company
    320 Somerulos Street
    Baton Rouge, LA 70802-6129.

29.    CBS Corporation, f/k/a Viacom, Inc. as successor to the liabilities of
    Westinghouse Electric Corporation
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA 70808

30.    Eagle, Inc. (Formerly Eagle Asbestos & Packing Co., Inc.)
    Registered Agent:
    Susan B. Kohn
    1100 Poydras Street, 30th Floor
    New Orleans, LA 70136

31.    Exxon Mobil Corporation f/k/a Exxon Corporation as Successor to Standard Oil
    Company
    Registered Agent:
    Corporation Service Company
    320 Somerulos Street
    Baton Rouge, LA 70802

32.    General Electric Company
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA 70808

33.    IMO Industries Inc. f/k/a IMO Delaval Inc. f/k/a Transamerica Delaval Inc. f/k/a
    Delaval Turbine Inc. f/k/a De Laval Turbine Inc.
    Registered Agent:
    Corporation Service Company
    320 Somerulos St.
    Baton Rouge, LA 70802-6129

34.    Ingersoll-Rand Company
    Registered Agent:
    C. T. Corporation Systems
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA 70808

35.    Owens-Illinois, Inc.
    Via the Louisiana Long-Arm Statute:
    O-I Plaza 3
    One Michael Owens Way
    Perrysburg, Ohio 43551

36.    The McCarty Corporation
    Registered Agent:
    Paul H. Spaht
    445 N. Blvd., Suite 300
    Baton Rouge, LA 70802

37.   Riley Power Inc. f/k/a Babcock Borsig Power, Inc.
      f/k/a DB Riley, Inc., f/k/a Riley Stoker Corporation
      Registered Agent:
      Corporation Service Company
      320 Somerulos, St.
      Baton Rouge, LA 70802-6129

38.   Taylor-Seidenbach, Inc.
      Registered Agent:
      Ralph I. Shepard
      731 So. Scott St.
      New Orleans, LA 70150

39.   Uniroyal, Inc. F/k/a United States Rubber Company, Inc.
      Who may be served pursuant the Louisiana Long Arm Statute:
      c/o Uniroyal Holding, Inc.
      70 Great Hill Rd.
      Naugatuck, CT 06770

## DO NOT SERVE THE FOLLOWING DEFENDANTS:

The following defendants were mailed a courtesy copy of this pleading and will be served by this office pursuant to LA C.C.P. Article 1313 by facsimile after we have received a conformed copy from the court:

Aqua-Chem, Inc.
O'Bryon & Schnabel
Kevin O'Bryon
Fax: 504-799-4211

Anco Insulations, Inc.
Deutsch Kerrigan & Stiles LLP
Janice M. Culotta
Fax: 504-566-1201

Certainteed Corporation
Deutsch Kerrigan & Stiles LLP
Janice M. Culotta
Fax: 504-566-1201

Dana Corp.
Deutsch Kerrigan & Stiles LLP
Peggy Joffe
Fax: 504-566-1201

Coltec Industries, Inc. (Ind. and as Successor
to Anchor Packing Company, Inc.)
Garlock, Inc.
Aultman, Tyner & Ruffin
Glenn L.M. Swetman
Christopher Massenburg
Fax: 601 583-2677
Fax: 504 528-9640

Kelly-Moore Paint Company, Inc.
Sulzer & Williams
Fax: 985-898-0871

Zurn Industries, Inc.
Deutsch, Kerrigan & Stiles, LLP
Theodore L. White
Fax: 504-566-1201

JAMES N. GIBBENS, JACQUELYN § 19TH JUDICIAL DISTRICT COURT
GIBBENS, ROGER H. GILL, SR., §
FRANCES L. GILL, GRANT HAWKINS, §
MARGIE HAWKINS, HARRISON J. §
HOLLOWAY, LEON LOUKY, JOAN §
LUCKY, WARREN F. MARCEL, WILMA §
MARCEL, JOSEPH NOBLET, J.N. §
OSBORNE, LORRENA OSBORNE, §
ROBERT PYLE, DOROTHY PYLE §
§
VS. NO. 493,232 D § PARISH OF EAST BATON ROUGE
§
AQUA-CHEM, INC., (d/b/a §
CLEAVER-BROOKS DIVISION), §
AVENTIS CROPSCIENCE USA, INC. §
(f/k/a RHONE POULENC AG COMPANY §
INC.), AW CHESTERTON CO., McCands,§
INC., ANCO INSULATIONS, INC., §
ASARCO, INC. (f/k/a AMERICA §
SMELTING & REFINING COMPANY), §
ASTEN GROUP, INC., ASTENJOHNSON, §
INC. (f/k/a ASTEN, INC.), CBS §
CORPORATION (SUCCESSOR IN §
INTEREST TO WESTINGHOUSE §
ELECTRIC CORPORATION) §
CERTAINTEED CORPORATION, COLTEC §
INDUSTRIES, INC. (INDIVIDUALLY §
AND AS A SUCCESSOR TO ANCHOR §
PACKING COMPANY, INC.), COMBUSTION§
ENGINEERING, INC., (INDIVIDUALLY §
AND SUCCESSOR-IN-INTEREST TO §
W.K. DETRICK COMPANY, WALSH §
REFRACTORY CORPORATION AND §
REFRACTORY AND INSULATION §
CORPORATION), CROWN CORK & §
SEAL COMPANY, INC., (SUCCESSOR §
TO MUNDET CORK COMPANY), DANA §
CORPORATION, EAGLE, INC. (f/k/a §
EAGLE ASBESTOS & PACKING §
COMPANY, INC.), EXXON MOBIL OIL §
CORPORATION (f/k/a MOBIL OIL §
CORPORATION) THE FLINTKOTE §
COMPANY,  FOSTER WHEELER §
CONSTRUCTORS, INC., FOSTER §
WHEELER ENERGY CORPORATION, §
GARLOCK, INC., GENERAL ELECTRIC §
COMPANY, GENERAL REFRACTORIES §
COMPANY, GEORGIA PACIFIC §
CORPORATION (INDIVIDUALLY AND §
AS SUCCESSOR TO BESTWALL §
GYPSUM COMPANY), GRFFCO, INC., §
HALLIBURTON ENERGY SERVICE, INC. §
IMO INDUSTRIES, INC., IKKK §
CORPORATION, INGERSOLL-RAND §
COMPANY, J.T. THORPE COMPANY, §
KELLY MOORE PAINT COMPANY, INC., §
THE MCCARTY CORPORATION, §
METROPOLITAN LIFE INSURANCE §
COMPANY,  MINNESOTA MINING & §
MANUFACTURING CORPORATION §

(3M CORPORATION),NORTH BROS. §
INC.,OGLEBAY-NORTON COMPANY, §
OWENS-ILLINOIS, INC., §
PFIZER, INC. (AS SUCCESSOR-IN §
-INTEREST TO QUIGLEY COMPANY, §
INC.),PROKO INDUSTRIES, INC., §
RILEY STOKER, INC.(d/b/a DB §
RILEY, INC.),TAYLOR-SEIDENBACH, §
INC.,UNIROYAL, INC.,(f/k/a §
UNITED STATES RUBBER COMPANY, §
INC.),.VIACOM, INC., ZURN §
INDUSTRIES, INC. §    STATE OF LOUISIANA
                    §
FILED: _____  §
                    _____
                    DEPUTY CLERK OF COURT

### PLAINTIFFS' ORIGINAL PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Plaintiffs, JAMES W. GIBBENS, JACQUELYN GIBBENS, HOMER W. GILL, SR., JAMES L. GILL, GRANT HANKINS, MARGIE HANKINS, HARRISON J. HOLLOWAY, JOE LUCKY, JOAN LUCKY, ARCEN P. MARCEL, WILMA MARCEL, JOSEPH MOSLEY, J. W. OSBORNE, LOURENA OSBORNE, ROBERT PYLE, AND DOROTHY PYLE, residents, of the full age of majority, of the State of Louisiana, who respectfully represent that:

1.

The defendants, identified in Exhibit "B" (attached hereto and incorporated by reference), are all either foreign corporations licensed to do and/or doing business in the State of Louisiana or domestic corporations licensed to do business and doing business in the State of Louisiana. The defendants are liable to the Plaintiffs for the claims asserted herein and are solidary obligors.

2.

The damages sought by Plaintiffs, exclusive of interest and costs, exceed the minimum jurisdictional limits of the Court.

1

**3.**

Jurisdiction and venue of this mater are proper with this Court pursuant to Louisiana Code of Civil Procedure Articles 42, 73 and 74.

**4.**

Plaintiffs are properly joined in this action pursuant to Louisiana Code of Civil Procedure Articles 461 and 463.

**5.**

During the years and at the locations indicated in Exhibit "A", (attached hereto and incorporated herein by reference), Plaintiffs worked at various shipyards, steel mills, refineries, papermills, chemical plants and/or other industrial facilities in the state of Louisiana and elsewhere in the United States.  While working at said facilities, Plaintiffs were occupationally exposed to substantial quantities of asbestos containing products mined, designed, manufactured, installed, marketed, advertised, sold, and/or distributed by defendants.

**6.**

As a direct result of the Plaintiffs' exposure to the defendants' defective products, the Plaintiffs have been diagnosed as suffering from severe and incapacitating injuries as specifically set forth in Exhibit "A", including, but not limited to shortness of breath, inability to breath, decreased exercise tolerance, asbestos related pleural disease, asbestosis, lung cancer, mesothelioma and other related cancer.

**7.**

Plaintiffs have sought the services of physicians in an effort to cure and/or arrest the conditions from which they are suffering to no avail.

8.

During the course of the Plaintiffs' work history, they were
each exposed to asbestos containing products designed,
manufactured, installed, advertised, marketed, distributed and/or
sold by the defendants herein.  These products were defective and
caused the Plaintiffs to contract asbestos related diseases.
These products were not accompanied by adequate warnings in that
they did not warn the user that exposure to asbestos dust causes
the occupational diseases of asbestosis, asbestos related pleural
disease, asbestos related cancer, irreversible and progressive
lung damage, as well as other asbestos related diseases,
including pleural effusion, lung cancer, mesothelioma,
gastrointestinal cancer, and other forms of cancer.  Further, the
defendants did not warn that their asbestos containing products
brought about their pathological effects without noticeable
trauma.  These asbestos containing products were not accompanied
by adequate instructions or warning for their safe and
appropriate use, if, in fact, the products could safely be used
in any circumstance.  Alternate and safer products were available
but not used.  The designers and manufacturers of these products
were negligent in their failure to determine the environment in
which their products were used prior to introducing them into the
stream of commerce and were negligent in the manner in which they
marketed their products.  Finally, these products were
unreasonably dangerous per se.

COUNT ONE

9.

Defendants' asbestos containing products were unreasonably
dangerous due to their design for the following reasons:

4

A.   As the manufacturers of potentially dangerous products, defendants are held to the knowledge of experts.  They are required by the law to keep abreast of scientific knowledge, discoveries and advances and are presumed to know what is imparted thereby.  Defendants also have the duty to test and inspect their products.  The extent of any research and experiments must be commensurate with the dangers involved, all of which they deliberately failed to do;

B.   Even if a reasonable person would conclude that the dangers-in-fact of defendants' asbestos containing products did not outweigh the utility of those products, there were feasible ways to design defendants' products with less harmful consequences of which defendants held to the standard and skill of experts, should have been aware and feasibly could have utilized, yet failed to do so; and

C.   Even if a reasonable person would conclude that the danger-in-fact of defendants' products did not outweigh the utility of those products, the defendants held to the standard and skill of experts, should have reasonably known of the dangers inherent to the use of their asbestos containing products and could have feasibly utilized alternative products with less harmful consequence, which they failed to do.

18.

Specifically with respect to MINNESOTA MINING & MANUFACTURING CORPORATION (3M CORPORATION), the Plaintiffs' use of certain mask products which purported to provide respiratory

5

protection have contributed to cause the Plaintiffs' asbestos related disease.  The failure of these products to provide adequate protection to the Plaintiffs is both a proximate and producing cause of Plaintiffs' injuries.  The products were not accompanied by adequate instructions for safe and appropriate use, and/or instructions concerning maintenance and storage. Therefore, these respiratory protective devices were defective by reason of their design.

COUNT TWO

11.

The defendants failed to adequately warn the Plaintiffs, ordinary users of asbestos containing products, concerning the dangers related to the way said products were designed. Specifically, defendants failed to provide the Plaintiffs and/or others similarly situated with adequate warnings of all dangers inherent in the normal use of their asbestos containing products which were not within the knowledge of or obvious to the ordinary user of those products.  These dangers include the fact that the defendants' products were highly dangerous to the health of the person exposed to them in that they caused or contributed to numerous pulmonary diseases and a wide variety of cancers. Additionally, defendants failed to provide the Plaintiffs with knowledge as to reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth, there were any, to protect them from being poisoned and disabled as a result of the Plaintiffs exposure to or use of defendants' products.  Further, defendants failed to instruct the Plaintiffs as to the proper and safe use of their products, if such products could ever safely be used.

6

12.

Subsequent to the time that the defendants caused their asbestos products to be sold and placed on the job site(s) where the Plaintiffs were employed, the defendants continued to acquire additional knowledge of the dangers caused by their products. This additional knowledge included, but was not limited to, the knowledge that exposure to even small amounts of asbestos and/or asbestos containing dust can cause serious and permanent injury. Nevertheless, the defendants negligently and recklessly failed and refused to warn and advise the Plaintiffs or others similarly situated of the dangers caused by their exposure to defendants' defective products, which the defendants had reason to know were in place at Plaintiffs' job site(s). Despite the defendants' knowledge that their asbestos containing products had contaminated job sites where the Plaintiffs were required to work, even to the present time, and possessed with the information uniquely available to the defendants relating to the dangerous effects of continued asbestos exposure, the defendants refused or neglected to warn and advise of the dangers caused by their asbestos containing products to the Plaintiffs or the public at large. Defendants deliberately, intentionally and purposefully withheld such information from the Plaintiffs, thus denying Plaintiffs the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations or avoiding further dust exposure or cigarette smoking, the carcinogenic effect of which defendants have long since learned is multiplied by exposure to their asbestos containing products. Specifically, even as of the present time, the defendants have failed to warn persons such as the Plaintiffs, who defendants knew were likely exposed to their

7

asbestos containing products, of the need for continued and
regular health monitoring due to prior asbestos exposure;
defendants have never issued recall type letters or notices to
prior users of their products. Defendants intentionally delayed
the use of warnings on asbestos-containing products and failed to
advise the Plaintiffs and others exposed to their products in the
past, of medical findings known to defendants concerning the
dangers of asbestos exposure; defendants have suppressed the
decimation of information to Plaintiffs and the public at large
and falsely represented facts to Plaintiffs and the public at
large concerning the dangers of present and past asbestos
exposure. The defendants' failure to warn and intentional
misrepresentation took place before, during and after Plaintiffs
were exposed to the asbestos containing products which the
defendants manufactured. The defendants' breach of their post-
sale duty to warn Plaintiffs of the dangers posed by exposure to
the defendants asbestos containing products was a substantial
contributing cause of the Plaintiffs' damages.

COUNT THREE

13.

Defendants' products were unreasonably dangerous due to
their defective design and the defendants' failure to warn. Even
if the risk of the hazard related to the use of the defendants'
products was not discoverable under existing technology at the
time they were designed and marketed, defendants' products were
unreasonably dangerous per se because of the intrinsically
dangerous characteristics of those products, including their
construction, composition and design. Whether or not the
defendants actually perceived or could have perceived the dangers
of their products at the time they were designed and marketed, a

8

reasonable person would conclude that the danger-in-fact of those products, whether foreseeable or not, actually outweighed the benefit which flowed from the asbestos containing products.

### COUNT FOUR

14.

With conscience disregard and indifference for the safety of the Plaintiffs and other users of the asbestos-containing products which the defendants manufactured, advertised, marketed, and sold, defendants, acting through their servants, employees, representatives and agents placed their asbestos containing products in the market to be purchased and used by the public. Defendants knew that exposure to and use of their products could and would cause severe personal injury to the Plaintiffs and other persons exposed to said products.

15.

Defendants knew that their products and the component parts and accessories thereof, were defective before, during and after Plaintiffs were exposed to the defendants' asbestos containing products. Defendants intentionally, wrongfully and knowingly placed asbestos containing products on the market when they knew that said products would be handled by or used in the vicinity of persons such as the Plaintiffs who had no knowledge of the dangers involved.

16.

Defendants, by implication, in placing their asbestos containing products on the market, represented that said products could safely be used for the purposes for which they were manufactured and could safely be used and handled by Plaintiffs

9

and others similarly situated in various industries and job sites.

### 17.

Defendants' intentional misconduct was motivated by their financial interest and gain and the continued uninterrupted distribution and marketing of their products.  In pursuit of this financial motive, defendants consciously disregarded the safety of the Plaintiffs and were, in fact, consciously willing to permit their products to cause injuries to persons, such as the Plaintiffs, whom the defendants knew were exposed to their asbestos containing products without knowledge of the risk involved.

### COUNT FIVE

### 18.

Prior to placing their defective products on the market, defendants knew and possessed medical and scientific data and other knowledge that clearly indicated that asbestos and asbestos containing materials and products were hazardous to the health and safety of individuals such as the Plaintiffs, working in close proximity to such products. Defendants had specific knowledge that there was a high risk of injury or death resulting from exposure to asbestos and asbestos containing products, including, but not limited to asbestos related pleural disease, asbestosis, lung cancer, mesothelioma, and other forms of cancer and asbestos related diseases.  This knowledge was obtained, in part, from scientific studies and medical data to which the defendants had access, as well as scientific studies performed by, at the request of, or at the insistence of defendants.  With the intent to deceive the Plaintiffs and with the intent that the Plaintiffs should be, and remain, ignorant of such medical and

scientific data and with the further intent to induce Plaintiffs
to alter their position to their injury and/or risk, and in order
to gain an advantage, defendants committed the following acts of
deceptive concealment:

A.  Defendants deliberately caused to be suggested as a
fact to Plaintiffs, by not placing warning labels on
their products, that it was safe for the Plaintiffs to
work in close proximity with such materials;

B.  Defendants deliberately concealed the hazardous nature
of their products from Plaintiff by concealing the fact
that asbestos fibers released into the air as a result
of the use of the defendants' asbestos containing
products can, if inhaled, bring about pathological
effects without noticeable trauma, when defendants were
possessed with knowledge that such material was
dangerous and a threat to the health of persons coming
into contact therewith and had a duty to disclose such
facts to Plaintiffs;

C.  Defendants deliberately failed to provide Plaintiffs
with adequate respiratory protective devices although
the Plaintiffs were required to work in areas where
they would be exposed to defendants' products, even
though defendants knew such protective measures were
necessary, and had a duty to advise Plaintiffs that, if
such protective devices were not used, it would result
in injury to the Plaintiffs.

D.  Defendants deliberately concealed from Plaintiffs the
true nature of their industrial exposure to their
asbestos containing products, in that defendants knew
that the Plaintiffs, upon inhalation of asbestos fibers

11

would, in time, develop irreversible lung damage, and would be in danger of ill health. Further, the defendants concealed the fact that Plaintiffs had, in fact, been exposed to harmful materials contained in their products and concealed the fact that the materials to which Plaintiffs were exposed would cause pathological affects without noticeable trauma;

E.   Defendants deliberately failed to provide medical and scientific information to the public at large as to the true nature of the hazards of asbestos and actively concealed known medical and scientific facts from the public and the Plaintiffs;

19.

The aforementioned deliberate concealments by defendants of the true nature of the hazards resulting from inhalation of asbestos was a cause in fact of Plaintiffs' injuries.

COUNT SIX

20.

Plaintiffs repeat and allege all allegations contained in all paragraphs above as if fully set forth herein and further allege with regard to Owens-Illinois, Inc. and Metropolitan Life Insurance Company, (hereinafter referred to as the "conspiracy defendants") as follows:

21.

The conspiracy defendants, individually and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed, and conspired among themselves and with other asbestos manufacturers and distributors to injure Plaintiffs. Further, the conspiracy defendants contributed, contrived, combined, confederated and conspired to deprive

12

Plaintiffs of the opportunity of informed free choice as to whether to use their asbestos-containing products and/or to expose themselves to said dangers.  In this connection, Plaintiffs have sued the Metropolitan Life Insurance Company in its capacity as a conspirator.  These conspiracy defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to defendants' asbestos-containing products.

22.

In furtherance of said conspiracies, the conspiracy defendants performed the following overt acts:

A. For many decades, defendants, individually, jointly and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of defendants' asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

B. Despite the medical and scientific data, literature, and test reports possessed by and available to defendants, defendants individually, jointly and in conspiracy with each other, willfully and maliciously:

1. Withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases from the plaintiffs, and others similarly situated, who

13

were using and being exposed to defendants'
asbestos-containing products;

2.    Caused to be released, published and disseminated
medical and scientific data, literature and test
reports containing information and statements
regarding the risks of asbestosis, cancer,
mesothelioma and other illnesses and diseases,
which defendants knew were incorrect, incomplete,
outdated and misleading;

3.    Distorted the results of medical examinations
conducted upon plaintiffs and/or workers such as
Plaintiffs who were using the defendants'
asbestos-containing products and being exposed to
the inhalation of asbestos dust and fibers by
falsely stating and/or concealing the nature and
extent of the harm to which Plaintiffs and workers
such as Plaintiffs have suffered.

23.

By the false representations, omissions and concealments set
forth above, the conspiracy defendants, individually, jointly,
and in conspiracy with each other, intended to induce the
Plaintiffs to rely upon said false representations, omissions and
concealments, to continue to expose themselves to the dangers
inherent in the use of and exposure to defendants asbestos-
containing products.

24.

Beginning in the early 1930's, Defendant Metropolitan Life
Insurance Company entered into a conspiracy with Raybestos-
Manhattan Corporation (predecessor to Raytech Corporation) and
Johns-Manville Corporation (predecessor to the Manville

14

Corporation and the Manville Corp. Asbestos Disease Compensation
Fund) to affirmatively misrepresent material facts about the
dangers of asbestos exposure and the seriousness of the health
hazard posed by asbestos.  Other conspirators participating in
the conspiracy (or in on-going or subsequent conspiracies)
included Raytech Corporation, GAF Corporation, United States
Gypsum Company, T&N PLC., Keasbey and Mattison, Pneumo Abex
Corporation, American Brakeblok Corporation, and Owens-Illinois,
and/or these companies' predecessors and/or successors-in-
interest as set forth herein, (hereinafter called the
"conspirators"), some or all of whom were members of the Quebec
Asbestos Mining Association and/or the Asbestos Textile Institute
and/or the Industrial Hygiene Foundation.  Acting in concert, the
conspirators fraudulently misrepresented to the public and to
public officials, _inter alia_, that asbestos did not cause cancer
and that the disease asbestosis had no association with pleural
and pulmonary cancer and affirmatively suppressed information
concerning the carcinogenic and other adverse effects of asbestos
exposure on the human respiratory and digestive systems.

25.

   Additionally, Plaintiffs adopt all previous allegations as
to the Conspiracy Defendants and additionally states with respect
to any and all defendants named in this petition (or hereinafter
to be added) who were members of the Air Hygiene Foundation
(predecessor to the Industrial Hygiene Foundation), the
Industrial Hygiene Foundation, the Quebec Asbestos Mining
Association, the American Textile Institute, and/or other trade
associations whose members conspired to conceal the hazards of
asbestos.  These Defendants joined together to combat publicity
and dissemination of data on the hazards of asbestos and acted to

15

conceal medical studies from the general public, including asbestos-exposed workers such as Plaintiffs.  The above-described actions constituted intentional deception and fraud in actively misleading the public regarding the extent of the hazards of asbestos and substantially contributed to retarding the development of knowledge about such hazards, thereby substantially contributing to Plaintiffs' injuries and/or death.

26.

The Conspiracy Defendants were active conspirators and engaged in the suppression, alteration and destruction of relevant scientific studies involving the hazards of asbestos. Further, the Conspiracy Defendants and their co-conspirators, individually, as members of a conspiracy, and as agents of other co-conspirators, have been and are in a position of superior knowledge regarding the health hazards of asbestos, and therefore, the Plaintiffs had the right to rely upon the published reports commissioned by the Conspiracy Defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-containing products.

27.

The Conspiracy Defendants were active conspirators and engaged in the intentional suppression, alteration and destruction of relevant scientific studies involving the hazards of asbestos.  Defendants conspired with Johns-Manville and participated in numerous unlawful acts in furtherance of the conspiracy.

28.

Further, Conspiracy Defendants intentionally and/or fraudulently manufactured and/or sold and/or distributed and

16

marketed and/or used defective products without adequate warning
of the hazards of asbestos that could and did result in personal
injury and/or death to those exposed to its products, including
Plaintiffs.

29.

Plaintiffs reasonably and in good faith relied upon the
false intentional and fraudulent representations, omissions and
concealments made by the conspiracy defendants regarding the
nature of their asbestos-containing products.

30.

As a direct and proximate result of Plaintiffs' reliance on
the conspiracy defendants' false and fraudulent representations,
omissions and concealments, Plaintiffs sustained damages
including injuries, illnesses and disabilities, and were deprived
of the opportunity of informed free choice in connection with the
use of and exposure to defendants' asbestos-containing products.

31.

The actions and inactions of the conspiracy defendants and
their predecessors-in-interest, as specifically alleged herein
above, whether taken separately or together, were of such a
character as to constitute a pattern or practice of intentional
wrongful conduct and/or malice resulting in damage and injury to
plaintiffs.  More specifically, the conspiracy defendants and
their predecessors-in-interest, consciously and/or deliberately
engaged in willful, wanton and/or malicious conduct with regard
to the Plaintiffs.

COUNT SEVEN

32.

Defendant Metropolitan Life Insurance Company through its

17

Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to the Plaintiff by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation:

    (a)  to test fully and adequately for health risks concomitant to the normal and intended use of their products; and .

    (b)  to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiffs.

33.

In both conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. Metropolitan Life also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

34.

The Plaintiffs unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

35.

As a direct and proximate contributing result of

18

Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to the Plaintiffs from asbestos exposure was increased, and (ii) the Plaintiffs suffered the injuries described below.

36.

In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the asbestos producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiffs' decedent.

DAMAGES SUSTAINED BY PLAINTIFFS

37.

The conduct of defendants, as alleged herein, was a direct, proximate and producing cause of the damages resulting from asbestos-related diseases as set forth in Exhibit "A". Plaintiffs have been damaged in the following non-exclusive particulars;

    A.   Plaintiffs have suffered past, present and future physical and mental anguish;

    B.   Plaintiffs have incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the

19

progressively disabling character of asbestos-related
diseases from which they now suffer and will continue
to suffer in the future;

C.   Plaintiffs suffer physical impairments and permanent
disabilities at this time and will continue to suffer
this impairment in the future due to the disabling
character of asbestos-related diseases;

D.   Plaintiffs are subject to an extraordinarily increased
likelihood of developing (or the progression and/or
recurrence of) cancer of the lungs, mesothelioma and
other cancers, all due to said exposure to asbestos-
containing products manufactured, installed,
maintained, sold, distributed and/or marketed by the
defendants;

E.   Plaintiffs will require medical monitoring throughout
their lifetime to survey the progression of their
asbestos-related lung disease and to aid in the early
detection and treatment of any or all of the cancers
described above and will be required to pay for such
medical monitoring;

F.   Plaintiffs have suffered a progressive loss of earning
capacity and will continue to suffer a loss of earning
capacity and wages throughout their lifetime;

G.   Plaintiffs require or will require domestic help and
nursing care due to their disabilities and have been or
will be required to pay for such domestic help and
nursing services; and

H.   Plaintiffs have been and will be prevented from
engaging in activities which were normal to them prior

20

0 3 1 3 0 7 5 9 2

to developing symptoms from their asbestos-related diseases. Plaintiffs have been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life.

LOSS OF CONSORTIUM CLAIMS

38.

By reason of the defendants' fault, as described above, and because of the injuries and ill health effects suffered by the Plaintiffs as a result of their occupationally induced asbestos related diseases, Plaintiffs' spouses have suffered loss of consortium and have suffered mental anguish and are entitled to damages as are reasonable in the premises.

39.

Plaintiffs request a trial by jury for each and every defendant named herein.

WHEREFORE, premises considered, Plaintiffs pray that plaintiffs' Original Petition for Damages be served upon the named defendants, and that after due proceedings are had, there be judgment rendered in favor of Plaintiffs and against the defendants herein, jointly, severally, and in solido, for all damages reasonable in the premises, together with legal interest thereon from the date of judicial demand until paid, plus all cost of these proceedings, and all equitable and just relief.

Respectfully submitted,

LUNDY & DAVIS, L.L.P.

BY: _____
HUNTER W. LUNDY #8938
JACKEY W. SOUTH, 21125
Post Office Box 3010
Lake Charles, LA 70602
(337) 439-0707



CERTIFIED
TRUE COPY

CERTIFIED
TRUE COPY

AUG 0 8 2008

BY _____
DEPUTY CLERK

EXHIBIT A

## JAMES W GIBBENS      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
4201 GIBBENS-PAYNE DRIVE
BAKER, LA    70714

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|---|---|---|
| 1957-1967 | K. F. GIBBENS BUILDERS GONZALES, LA BATON ROUGE, LA | SUPERVISOR, CARPENTER, ELECTRICIAN, INSULATOR |
| 1967-1986 | EXXON COMPANY USA OFFSHORE | RADIO ELECTRICIAN OFFICER, MERCHANT MARINE, ELECTRICIAN |

DISEASE:   ASBESTOSIS

DIAGNOSIS DATE: 03/15/2001

EXHIBIT A

**HOMER W GILL**   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
13046 VITRANO LANE
INDEPENDENCE, LA   70443

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|-------|---------|-------|
| 1951-1959 | DELTA LINE<br>NEW ORLEANS, LA | BOILERMAKER, MAINTENANCE<br>MECHANIC, MERCHANT MARINE |

DISEASE:   ASBESTOSIS

DIAGNOSIS DATE: 03/15/2001

EXHIBIT A

**JAMES L. GILL**          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
13184 VITRANO ROAD
INDEPENDENCE, LA   70443

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|---|---|---|
| 1956 | KAISER ALUMINUM CHALMETTE, LA | BOILERMAKER, WELDER |
| 1957 | UNION TANK CAR CO. : BAKER, LA | WELDER |
| 1960-1962 | BOLAND MARINE & MFG. CO. NEW ORLEANS, LA | BOILERMAKER, WELDER |
| 1960-1963 | TODD JOHNSON DRY DOCKS ALGERIS, LA | BOILERMAKER, WELDER |
| 1963-1965 | AVONDALE SHIPYARD NEW ORLEANS, LA | WELDER |
| 1963-1965 | KAISER ALUMINUM GRAMERCER, LA | WELDER |
| 1966-1969 | UNION CARBIDE TAFT, LA | WELDER |
| 1972 | MURPHY OIL REFINERY CHALMETTE, LA | WELDER |
| 1972-1974 | ATLAS ERECTION CO., INC. HARVEY CANAL HARVEY, LA | WELDER |
| 1972-1974 | HOOKER CHEMICAL TAFT, LA | WELDER |
| 1974-1996 | SHELL OIL COMPANY NEW ORLEANS, LA | WELDER |
| 1974-1975 | KAISER ALUMINUM CHALMETTE, LA | WELDER |

DISEASE:    ASBESTOSIS

DIAGNOSIS DATE:03/15/2001

EXHIBIT A

**GRANT HAWKINS**  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
1985 70TH AVENUE
BATON ROUGE, LA 70807

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|---|---|---|
| 1950-1980 | BASF<br>GEISMER, LA | MECHANIC |
| 1950-1980 | EXXON<br>BATON ROUGE, LA | MECHANIC |
| 1950-1980 | UNIROYAL<br>GEISMER, LA | MECHANIC |
| 1956-1986 | DOW CHEMICAL<br>PLAQUEMINE, LA | MECHANIC |

DISEASE: ASBESTOSIS

DIAGNOSIS DATE:03/15/2001

EXHIBIT A

**HARRISON J HOLLOWAY**        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
29480 WILLOW GLENN STREET
DENHAM SPRINGS, LA    70726

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|---|---|---|
| 1944-1945 | STANDARD DREDGING COMPANY<br>NEW ORLEANS, LA | MATE |
| 1945-1950 | ATS<br>NEW ORLEANS, LA | CHIEF BOATSWAIN, MATE |
| 1950-1958 | STANDARD DREDGING COMPANY<br>NEW ORLEANS, LA | MATE |
| 1960-1963 | SINTAS ENG.<br>NEW ORLEANS, LA | MAINTENANCE |
| 1963-1968 | T. L. JAMES<br>KENNER, LA | MATE, LEVERMAN, DECK CAPTAIN |
| 1968 | MIKE HOOKS DREDGING INC.<br>LAKE CHARLES, LA | CAPTAIN |

DISEASE:    ASBESTOSIS

DIAGNOSIS DATE:03/15/2001

EXHIBIT A

**JOE LUCKY**       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
207 RIVER OAKS DRIVE
LULING, LA    70070

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|---|---|---|
| 1954-1985 | RYAN OIL LULING, LA | BOILER OPERATOR |
| 1954-1985 | MONSANTO CHEMICAL LULING, LA | OPERATOR |

DISEASE:    ASBESTOSIS

DIAGNOSIS DATE:03/14/2001

EXHIBIT A

**ARCEN P MARCEL**          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
208 HAMPTON
HOUMA, LA    70364

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|-------|---------|-------|
| 1956-1982 | MCDERMOTT VENIS, LA | LABORER, FOREMAN |

DISEASE:   ASBESTOSIS

DIAGNOSIS DATE:03/14/2001

EXHIBIT A

# JOSEPH MOBLEY          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
30133 ROB THOMAS
FRANKLINTON, LA    70458

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|-------|---------|-------|
| 1948-1950 | JOHN MANVILLE PLANT<br>MARRERO, LA | LABORER |
| 1950-1953 | CELOTEX<br>MARRERO, LA | LABORER |
| 1961-1981 | MCDERMOTT<br>HARVEY, LA | LABORER, FOREMAN |

DISEASE:    ASBESTOSIS

DIAGNOSIS DATE:03/14/2001

EXHIBIT A

**J W OSBORNE**          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
10432-A JEFFERSON HIGHWAY
BATON ROUGE, LA    70809

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|---|---|---|
| 1940's | STANDARD OIL<br>BATON ROUGE, LA | PIPEFITTER |
| | CONTINENTAL CHEMICAL<br>LAKE CHARLES, LA | PIPEFITTER |
| | OLIN MATHIESON<br>LAKE CHARLES, LA | PIPEFITTER |
| 1951-1960 | ETHEL<br>BATON ROUGE, LA | ROOFER, SUPERINTENDENT |
| | STANDARD OIL<br>BATON ROUGE, LA | ROOFER, SUPERINTENDENT |
| 1960's | STANDARD OIL<br>BATON ROUGE, LA | PIPEFITTER |

**DISEASE:**   ASBESTOSIS

**DIAGNOSIS DATE:** 03/22/2001

EXHIBIT A

ROBERT PYLE          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
306 PERTUIT LANE
RACELAND, LA     70364

Principal Jobsite(s) include, but not limited to, the following:

| DATE: | JOBSITE | TRADE |
|---|---|---|
| 1951-1982 | LION CHEMICAL LULING, LA | BOILERMAKER HELPER, OPERATOR |

DISEASE:   ASBESTOSIS

DIAGNOSIS DATE:   03/14/2001

EXHIBIT B

PLEASE SERVE

AQUA-CHEM, INC. (d/b/a CLEAVER-BROOKS DIVISION),
via Louisiana Long-Arm Statute
7800 North 113th Street
Milwaukee, Wisconsin 53224-3136

AVENTIS CROPSCIENCE USA, INC.
(f/k/a RHONE POULENC AG COMPANY, INC.)
through its agent for service of process,
C. T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

AW CHESTERTON CO.
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

ACandS, INC.
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

ANCO INSULATIONS INC.
through its agent for service of process,
Thomas B. Salhoff
Roedel, Parsons, Koch, Frost, et al
8440 Jefferson Hwy., Suite 301
Baton Rouge, LA 70809-7652

ASARCO, INCORPORATED (f/k/a AMERICAN SMELTING & REFINING COMPANY)
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

ASTENJOHNSON, INC. (f/k/a ASTEN, INC.)
through its agent for service of process,
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802-6129

ASTEN GROUP, INC.
(via the Louisiana Long-Arm Statute)
Asten Group, Inc.
1635 Market Street, Suite 1120
Philadelphia, PA 19103

CBS CORPORATION (SUCCESSOR IN INTEREST
TO WESTINGHOUSE ELECTRIC CORPORATION)
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

22

CERTAINTEED CORPORATION
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809.

COLTEC INDUSTRIES, INC. (INDIVIDUALLY AND AS A SUCCESSOR TO
ANCHOR PACKING COMPANY, INC.)
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

COMBUSTION ENGINEERING (INDIVIDUALLY AND SUCCESSOR IN INTEREST TO
M.H. DETRICK COMPANY, WALER REFRACTORY CORPORATION AND REFRACTORY
AND INSULATION CORPORATION)
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

CROWN CORK & SEAL COMPANY, INC. (SUCCESSOR TO MUNDET CORK
COMPANY)
(via the Louisiana Long-Arm Statute)
9300 Ashton Road
Pittsburgh, PA 19136

DANA CORPORATION
(via the Louisiana Long-Arm Statute)
Allen C. Goolsby, III
Hunton & Williams
951 East Byrd Street
Richmond, VA 23219

EAGLE, INC. (f/k/a EAGLE ASBESTOS & PACKING COMPANY
through its agent for service of process,
Lawrence G. Pugh, III
1100 Poydras Street
New Orleans, LA 70163-3200

EXXON MOBIL OIL CORPORATION,
(f/k/a MOBIL OIL CORPORATION)
through its agent for service of process,
The Prentice-Hall Corporation System, Inc.
701 South Peters Street, 2nd Floor
New Orleans, LA 70130

THE FLINTKOTE COMPANY
(via the Louisiana Long-Arm Statute)
C/o Christin M. Hamilton
2 Embarcadero Center, Suite 1600
San Francisco, CA  94111

FOSTER WHEELER CONSTRUCTORS, INC.
through its agent for service of process,
The Prentice-Hall Corporation System, Inc.
701 South Peters Street, 2nd Floor
New Orleans, LA 70130

FOSTER WHEELER ENERGY CORPORATION
through its agent for service of process,
United States Corporation Company
701 South Peters Street, 2nd Floor
New Orleans, LA 70130

GARLOCK, INC.
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

GENERAL ELECTRIC COMPANY
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

GENERAL REFRACTORIES COMPANY
via Louisiana Long-Arm Statute
225 City Avenue, Suite 114,
Bala Cynwyd, PA 19003.

GEORGIA PACIFIC CORPORATION (INDIVIDUALLY AND AS SUCCESSOR TO
BESTWALL GYPSUM COMPANY)
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

GRECO, INC.
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

HALIBURTON ENERGY SERVICES, INC
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

IMO INDUSTRIES, INC.
through its agent for service of process,
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802-6129

IREX CORPORATION
via Louisiana Long-Arm Statute
120 North Lime Street
Lancaster, PA 17602

24

INGERSOLL-RAND COMPANY
through agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

J.T. THORPE COMPANY
through agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

KELLY MOORE PAINT COMPANY, INC.
via Louisiana Long-Arm Statute
987 Commercial Street
San Carlos, CA 94070

THE MCCARTY CORPORATION
through its agent for service of process,
Paul H. Spaht
445 N. Boulevard, Suite 300
Baton Rouge, LA 70802

METROPOLITAN LIFE INSURANCE COMPANY
through the Secretary of State
State of Louisiana
Post Office Box 94125
Baton Rouge, LA 70804-4125

MINNESOTA MINING & MANUFACTURING CORPORATION (3M CORPORATION)
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

NORTH BROS., INC.
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

ONELDAY-NORTON COMPANY
(via the Louisiana Long-Arm Statute)
The Corporation Trust Co.
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

OWENS-ILLINOIS INC.
(via the Louisiana Long-Arm Statute)
Owens-Illinois, Inc.
One Seagate
Toledo, OH 43666

25

PFIZER, INC. (SUCCESSOR-IN-INTEREST TO QUIGLEY)
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

PROKO INDUSTRIES, INC.
(via Louisiana Long-Arm Statute)
Robert W. Hanson
14601 LBJ Freeway, Suite 400
Dallas, Texas 75150

RILEY STOKER, INC. d/b/a DB RILEY, INC.
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

TAYLOR-SEIDENBACH, INC.
through its agent for service of process,
Ralph I. Shepard,
731 S. Scott Street
New Orleans, LA 70150.

UNIROYAL, INC.
(via the Louisiana Long-Arm Statute)
UniRoyal, Inc.
70 Great Hill Road
Naugatuck, CT 06770

VIACOM INC.,
through its agent Corporation Service Company
for service of process,
320 Somerulos Street
Baton Rouge, LA 70802-6129

ZURN INDUSTRIES, INC.
through its agent for service of process,
C.T. Corporation System
8550 United Plaza Boulevard
Baton Rouge, LA 70809

22.    Texaco Inc.
     State of Incorporation: Delaware
     Registered Office/Principal Business Establishment: New Orleans, LA
     Plaintiff: Grant Hawkins

23.    Union Carbide Corporation
     State of Incorporation: New York
     Registered Office/Principal Business Establishment: Baton Rouge, LA
     Plaintiff: James Gill

24.    Union Pacific Railroad Company f/k/a Southern Pacific Transportation
     Company as Successor in Interest by Merger to Missouri Pacific Railroad
     Company
     State of Incorporation: Delaware
     Registered Office/Principal Business Establishment: Baton Rouge, LA
     Plaintiff: J.W. Osborne

25.    Union Tank Car Company
     State of Incorporation: Delaware
     Registered Office/Principal Business Establishment: Ville Platte, LA
     Plaintiff: James Gill

26.    Uniroyal, Inc. F/k/a United States Rubber Company, Inc.
     State of Incorporation: New Jersey
     Registered Office/Principal Business Establishment: Jersey City, NJ
     Plaintiff: Grant Hawkins

3

EXHIBIT "D"
WRONGFUL DEATHS/SURVIVAL ACTIONS

1.  OSBORNE, J W, DECEDENT
    Date of Death:      August 28, 2007

    Survivors/Petitioner(s):

    Sylvia Lorena Osborne        Deceased Spouse
    Date of Death:   10/6/2003

    Jackie Osborne             Major Son
    Date of Birth: January 27, 1942
    2083 Shawn Drive
    Baton Rouge, Louisiana 70806

    Toni Bezdek             Major Daughter
    Date of Birth: December 2, 1946
    12097 Old Hammond Highway
    Baton Rouge, Louisiana 70816

    Rebecca Mae Biggar        Major Daughter
    Date of Birth: September 8, 1953
    1712 Soniat Street
    New Orleans, Louisiana 70115

2.  HOLLOWAY, HARRISON JAMES, DECEDENT
    Date of Death:      January 9, 2007

    Survivors/Petitioner(s):

    Joycelyyn Marie Brewer      Major Daughter
    Date of Birth: 1/23/1949
    206 Deerfield Club Drive
    Canton, MS 39046

3.  LUCKY, JOEL S., DECEDENT
    Date of Death:      August 28, 2004

    Survivors/Petitioner(s):

    Joan Lucky                Surviving Spouse
    Date of Birth: 2/1/1935
    207 River Oaks Drive
    Luling, LA 70070

    Stafford Lucky           Major Son
    Date of Birth: 3/17/1967
    558 Cypress
    Luling, LA 70070

    Joel Lucky               Major Son
    Date of Birth: 1/3/1965
    207 Barkley Drive
    Hickory Creek, TX 75065

# STATE OF LOUISIANA

THIS RECORD IS VALID FOR DEATH ONLY

4872444          1019805          STATE OF LOUISIANA
CERTIFICATE OF DEATH



JUL 1 5 2005

I CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF A CERTIFICATE OR
DOCUMENT REGISTERED WITH THE
VITAL RECORDS REGISTRY OF THE
STATE OF LOUISIANA, PURSUANT TO
LSA — R.S.40:32, ET SEQ.

ACTING STATE REGISTRAR

5207833

# STATE OF LOUISIANA

IMPORTANT   1162 THIS RECORD IS VALID FOR DEATH ONLY

JAN 29 2007

I CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF A CERTIFICATE OR
DOCUMENT REGISTERED WITH THE
VITAL RECORDS REGISTRY OF THE
STATE OF LOUISIANA, PURSUANT TO
LSA — R.S. 40:34, ET SEQ.

ACTING STATE REGISTRAR

CERTIFICATION OF VITAL RECORD

# STATE OF ILLINOIS

DEPARTMENT OF PUBLIC HEALTH · DIVISION OF VITAL RECORDS

FILL IN THIS FORM (except signature)
WITH TYPEWRITER OR LEGIBLE PRINTING

STATE OF ILLINOIS
DWIGHT H. GREEN, Governor
Department of Public Health—Division of Vital Statistics
ORIGINAL

4900

## CERTIFICATE OF BIRTH

1. PLACE OF BIRTH
County of St. Clair
East St. Louis

2. RESIDENCE OF MOTHER: (a) STATE Illinois (b) County St. Clair (c) City or Village Dupo

3. FULL NAME OF CHILD: Jackie Wynne Osborne

Sex: Male
Color: White

FATHER
J. W. Osborne
Kentucky
Bible
Miller Body

MOTHER
Lorena Tate
Pennsylvania
Louisiana
Houston
O ha

524 So. Main St.
Dupo Illinois

I hereby certify that I attended the birth of this child

FEB 3 - 1947
Date Filed

East St. Louis, Ill.
Post Office Address

074458

This is to certify that this is a true and correct copy of the official record now on file with the Illinois Department of Public Health.

DATE ISSUED

Steven L. Perry
STEVEN L. PERRY
DEPUTY STATE REGISTRAR

August 12, 1997

# EXHIBIT D



## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

DOROTHY REED GAUTHE, ET AL     CIVIL ACTION
NO. 96-2454

VERSUS

ASBESTOS CORPORATION LTD.,     SECTION "F"
ET AL     MAGISTRATE 3

-----------------------------------------------------

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

HORACE PORCHE     CIVIL ACTION
NO. 96-2827

VERSUS

FLEXITALLIC INC., ET AL     CONSOLIDATED WITH
96-2879; 96-2882;
96-2880; 96-2877;
96-2878; 96-2881;
96-2828

SECTION "E"

Deposition of PETER R. TERRITO, taken at Avondale

Industries, Inc., 5100 River Road, Avondale,

Louisiana, on Thursday, September 26, 1996.



DEPOSITION
FILE COPY

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

2

# I N D E X

                                                    Page

Caption                                               1

Appearances                                         3-5

Agreement of Counsel                                  6

Examination

    MR. SWARR                               7,204,208

    MS. ARDOIN                                   115

    MR. CARAWAY                                  150

    MR. SHOFSTAHL                                200

    MS. BORISON                                  205

Witness' Certificate                                209

Reporter's Certificate                              210

\*   \*   \*   \*   \*

EXHIBITS:

    Territo No. 1                                12

    Territo No. 2                                65

    Territo No. 3                                68

    Territo No. 4                                69

    Territo No. 5                                70

    Territo No. 6                                85

    Territo No. 7                                86

    Territo No. 8                                96

    Territo No. 9                                98

    Territo No. 10                              106

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

3

APPEARANCES:

Representing the Plaintiffs, Dorothy Reed Gauthe,
    et al:

    LEBLANC, MAPLES & WADDELL
    Attorneys at Law
    BY:  FRANK J. SWARR, ESQUIRE
    Place St. Charles, Suite 3204
    201 St. Charles Avenue
    New Orleans, Louisiana 70170

Representing the Plaintiff, Horace Porche:

    LAW OFFICES OF STEPHEN B. MURRAY
    Attorneys at Law
    BY:  JULIE A. ARDOIN, ESQUIRE
    LL&E Tower, Suite 2550
    909 Poydras Street
    New Orleans, Louisiana 70163

Representing Foster-Wheeler Corporation:

    ADAMS & REESE
    Attorneys at Law
    BY:  TYSON B. SHOFSTAHL, ESQUIRE
    4500 One Shell Square
    701 Poydras Street
    New Orleans, Louisiana 70139

Representing Hopeman Brothers, Inc.:

    DUNCAN & COURINGTON
    Attorneys at Law
    BY:  BLAINE MOORE, ESQUIRE
    336 Lafayette Street, Suite 200
    New Orleans, Louisiana 70130

Representing Metropolitan Life Insurance Company:

    KEAN, MILLER, HAWTHORNE, D'ARMOND,
    MCCOWAN & JARMAN
    Attorneys at Law
    BY:  TODD A. ROSSI, ESQUIRE
    Energy Centre, Suite 1470
    1100 Poydras Street
    New Orleans, Louisiana 70163

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

4

Representing Pittsburgh Corning Corporation:

        PORTEOUS, HAINKEL, JOHNSON & SARPY
        Attorneys at Law
        BY:   ROBERT F. LAKEY, JR., ESQUIRE
              ROBERT S. EMMETT, ESQUIRE
        704 Carondelet Street
        New Orleans, Louisiana 70130

Representing Flintkote Company:

        HAILEY, MCNAMARA, HALL, LARMANN & PAPALE
        Attorneys at Law
        BY:   JAMES W. HAILEY, JR., ESQUIRE
        One Galleria Boulevard, Suite 1400
        Post Office Box 8288
        Metairie, Louisiana 70001-8288

Representing Westinghouse Electric Corporation:

        JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE
        Attorneys at Law
        BY:   JUDITH V. WINDHORST, ESQUIRE
        Place St. Charles
        201 St. Charles Avenue
        New Orleans, Louisiana 70170

Representing American Motorists Insurance Company AND
        Peter R. Territo:

        PLAUCHE', MASELLI & LANDRY
        Attorneys at Law
        BY:   ROBERT E. CARAWAY, III, ESQUIRE
        4240 Place St. Charles
        201 St. Charles Avenue
        New Orleans, Louisiana 70170

Representing Flexitallic (Porche case only):

        DEUTSCH, KERRIGAN & STILES
        Attorneys at Law
        BY:   WILLIAM C. HARRISON, JR., ESQUIRE
        755 Magazine Street
        New Orleans, Louisiana 70130

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

5

Representing Reilly-Benton Company:

    BERNARD, CASSISA & ELLIOTT
    Attorneys at Law
    BY:  ANN M. SICO, ESQUIRE
    1615 Metairie Road
    Metairie, Louisiana 70005

Representing Rapid American Corporation:

    ABBOTT, SIMSES, ALBUM, KNISTER & BAYNHAM
    Attorneys at Law
    BY:  MICHAEL MORRIS, ESQUIRE
    400 Lafayette Street
    Suite 200
    New Orleans, Louisiana 70130

Representing Eagle, Inc.:

    MONTGOMERY, BARNETT, BROWN, READ,
    HAMMOND & MINTZ
    Attorneys at Law
    BY:  ALISON BORISON, ESQUIRE
    3200 Energy Centre
    1100 Poydras Street
    New Orleans, Louisiana 70163-3200

Representing Minnesota Mining and Manufacturing
    Company:

    HENDERSON, HANEMANN & MORRIS
    Attorneys at Law
    KEVIN J. WEBB, ESQUIRE
    300 Lafayette Street
    Houma, Louisiana 70360


Reported by:

    RALPH D. BOYLES, JR., CP, CCR
    Certified Court Reporter
    In and for the State of Louisiana

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

6

## S T I P U L A T I O N

IT IS STIPULATED AND AGREED by and among Counsel for
the parties hereto that the deposition of the
witness may be taken pursuant to Notice, for all
purposes allowed under the Federal Rules of
Civil Procedure at the time and place
hereinabove recited;

That all formalities, save those as to the reading
and signing, are specifically waived;

That all objections, save objections as to the form
of the question and the responsiveness of the
answer, are reserved until such time as this
deposition, or any part hereof, is used or
sought to be used in evidence at the time of the
trial of the matter.

\* \* \* \* \*

RALPH D. BOYLES, JR., CP, CCR, Certified Court
Reporter, in and for the State of Louisiana,
officiated in administering the oath to the
herein witness.

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

7

```
 1              PETER R. TERRITO,
 2   620 Fos Avenue, Harvey, Louisiana 70058, after
 3   having been duly sworn, testified on his oath
 4   as follows:
 5   EXAMINATION BY MR. SWARR:
 6   Q.   Good morning, Pete.  I know you've given
 7        your share of depositions, so we won't
 8        have to go through any of the preliminary
 9        stuff.
10             Could you just give me your name and
11        address for the record?
12   A.   Peter R. Territo, 620 Fos Avenue, Harvey,
13        Louisiana 70058.
14   Q.   What is your current title with Avondale?
15   A.   Safety director today.
16   Q.   Who do you answer directly to?
17   A.   Ernie Griffin.
18   Q.   What's Mr. Griffin's title?
19   A.   He's the vice-president of Human
20        Resources.
21   Q.   What other departments are under Mr.
22        Griffin other than safety?
23   A.   The medical department, personnel,
24        employee benefits.
25   Q.   What kind of people do you have under
```

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

58

1    Q.   Did the Navy ever tell you not to control

2         the dust?

3    A.   Whenever we had dusty areas, the Navy

4         would come in and caution us, yes.

5    Q.   My question is:  Did they ever tell you

6         not to control the dust?

7    A.   No.

8    Q.   Did they ever tell you that safety was

9         slowing down production, we need to maybe

10        cut back a little bit on all of the

11        safety precautions?

12   A.   No.

13   Q.   They never did that?

14   A.   No.

15   Q.   The Navy was very concerned about safety,

16       in fact, weren't they?

17   A.   Yes.

18   Q.   What are these extra controls that you're

19       talking about that you would have done

20       had you known?  What more would you have

21       done?  Correct me if I'm wrong, but

22       you're telling me now that you were doing

23       all of these engineering controls since

24       Walsh-Healy came into effect.  What more

25       could you have done?

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

85

```
 1          Just so the record is clear, just
 2     so we know which purchase order we
 3     are referring to --
 4  MR. CARAWAY:
 5          We can get copies downstairs to
 6     attach them.
 7  MR. SWARR:
 8          Why don't we do that.  I'm going
 9     to mark these purchase orders en
10     globo as Territo No. 6.  And because
11     I'm not going to be copying the ship
12     list, I'll note for the record that
13     job number C7-1000 is LASH ships
14     built for the Waterman Steamship
15     Corporation, Job No. C4-227 are oil
16     barges built for the Pittston Marine
17     Corporation, C3-700 are LNG carriers
18     built for El Paso Natural Gas
19     Company, and C8-777B are tugs and
20     barges built for Suwannee River
21     Finance, Incorporated company.
22  EXAMINATION BY MR. SWARR:
23  Q.   Mr. Territo, Avondale was, in fact,
24     buying and using asbestos-containing
25     insulation materials up until at least
```

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

86

```
 1          1980, which had nothing to do with the
 2          United States Navy; isn't that correct?
 3     A.   Yes.
 4     Q.   Now, I want to show you real quickly what
 5          I'm sure you have seen before.  Well, I'm
 6          not too sure you have seen this.  You
 7          were asked about this material by the
 8          Hitco Materials Division in the trial in
 9          Jefferson Parish last year.  Well, in
10          September of '94.  And at the time your
11          memory of it was pretty dim.  You didn't
12          really recall the details of it?
13     A.   No, I didn't.
14     Q.   Is that still true?  Have you reviewed it
15          since then?
16     A.   No, I have not.
17          MR. SWARR:
18                I'll go ahead and make this
19          Territo No. 7.  This is a marketing
20          survey report dated May of 1975,
21          titled Asbestos Replacement Materials
22          and Applications in the Shipbuilding
23          and Ship Repair Industry, prepared by
24          Hitco Materials Division.
25     EXAMINATION BY MR. SWARR:
```

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

97

1  Q.   What was Mr. Gatlin's title back then in

2       '77?

3  A.   Plant engineering and maintenance.

4  Q.   Mr. Chantrey was the safetyman in '77?

5  A.   Yes, vice-president of Human Resources,

6       safety.

7  Q.   Would you agree with me that this

8       memorandum from the United States Navy

9       informs Avondale that there are new

10      approved substitutes for asbestos welding

11      blankets and cutting/burning safety

12      shielding and should be used?

13  A.   That's what it is.

14  Q.   And it lists four separate products, one

15      of which seems to be manufactured by

16      Hitco?

17  A.   Yes.

18  Q.   Mr. Territo, you would admit that as late

19      as 1980, after Hitco had come here and

20      informed Avondale that there were

21      available substitutes in '75, after the

22      Navy wrote a letter in '77 telling

23      Avondale to stop using asbestos and

24      replace it with these products, that

25      Avondale, nonetheless, continued to buy

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

98

```
 1        and use asbestos-containing insulation
 2        products?
 3   A.   They informed us then, you know, that
 4        there was product available on future
 5        contracts.  That's what that letter
 6        references.
 7   Q.   But three years after that letter
 8        Avondale is still buying asbestos-
 9        containing insulation products?
10   A.   If it was the same contract, they were
11        probably still buying them, I would
12        think.
13   MR. SWARR:
14             I'm going to mark this as Territo
15        No. 9.  It's three stapled pages.
16   THE WITNESS:
17             Okay.
18   EXAMINATION BY MR. SWARR:
19   Q.   Have you ever seen those documents in
20        Territo No. 9 before?
21   A.   I don't remember seeing those.
22   Q.   This is dated June 20, 1980?
23   A.   Yes.
24   Q.   Do you know from memory Kenneth Dupont,
25        William Kimble, Clarence Geier, and
```

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

129

1   Q.   They had to wear steel-toed boots if they

2         were in that situation, because that was

3         Avondale's rules?

4   A.   Yes.

5   Q.   Same thing for safety belts?  If an

6         Avondale employee had to wear that or a

7         hard hat, the Navy had to wear it, right?

8   A.   Yes.

9   Q.   That was because that was you-all's

10        rules?

11  A.   Yes.

12  Q.   Now, the Navy, they never came to you and

13        wrote your rules, did they?

14  A.   No.

15  Q.   So the safety department was independent

16        from these Federal officers that were on

17        board these vessels?

18  A.   Yes.

19  Q.   All safety rules were written or

20        promulgated by the safety department at

21        Avondale; is that correct?

22  A.   Yes.

23  Q.   And no Navy inspector at any time ever

24        told you what rules you had to

25        promulgate; is that correct?

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

130

```
 1   A.    For as long as we complied with the
 2         Longshoremen and Harbor Workers' or OSHA.
 3   Q.    The Federal laws that were on the books,
 4         that applied to all shipbuilding, and you
 5         had to comply with those, also?
 6   A.    Yes.
 7   Q.    Were there any, to your knowledge,
 8         special rules that Avondale had to follow
 9         that weren't general rules for all
10         shipbuilding?
11         MR. CARAWAY:
12              Do you mean safety rules?
13         MS. ARDOIN:
14              Safety rules.
15         THE WITNESS:
16              Not that I know of.
17   EXAMINATION BY MS. ARDOIN:
18   Q.    Not that you're aware of?
19   A.    No.
20   Q.    Did any person that you might have
21         identified as a Federal officer or
22         Government inspector -- again, when I say
23         "Federal officer," I'm talking about the
24         Navy inspectors and people who have some
25         Federal authority, did at any time they
```

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

135

1   Q.   Is this the same type of authority that
2        -- or this authority that they exercised,
3        was it similar to the instances cited in
4        your affidavit?
5   A.   Yes.
6   Q.   The work that they stopped was the same
7        type of work you would have stopped, had
8        you observed it before the naval officer?
9   A.   Yes.
10  Q.   That aside, what I'm asking you is
11       whether or not the Federal officers that
12       were on board the vessel, the naval
13       inspectors, did they control the safety
14       department of Avondale?
15  A.   No.
16  Q.   Did they control any of your policies or
17       procedures or the promulgation of
18       enforcement policies and procedures?
19  A.   Well, they had the authority to stop
20       anything that they saw that was immediate
21       danger.  So that would give them some
22       control over that, yes.
23  Q.   The same authority that OSHA now has
24       today to stop work if they see immediate
25       danger?

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

136

1   A.   Yes.

2   Q.   Did any of these Federal officers direct

3        the promulgation of safety programs at

4        Avondale?

5   A.   No.

6   Q.   Did they direct the enforcement of safety

7        programs at Avondale?

8   A.   Well, they would oversee it, yes.  They

9        would oversee it and make sure that we

10       were doing what we were supposed to do as

11       far as the law was concerned.

12  Q.   But they didn't direct how you were to go

13       about enforcing it, did they?

14  A.   No.

15  Q.   So is it a fair statement that those

16       naval officers were overseeing all

17       operations?

18  A.   Yes.

19  Q.   Did you ever read the Walsh-Healy

20       requirements prior to 1980?

21  A.   No, I don't remember.  I don't think so.

22  Q.   Can you think of any instance wherein you

23       -- and when I use the term "you," I mean

24       you individually or you as the Avondale

25       safety department both here attempted to

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

Paul W. Williams, Inc.
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

137

```
1            implement a plan that was halted because
2            the Navy didn't want you to do this, or
3            that inspectors didn't want you to do
4            this?
5     A.     I don't remember anything like that, no.
6     Q.     As a matter of fact, Jim O'Donnell had
7            instituted the Competent Man Program,
8            right?
9     A.     Yes.
10    Q.     He presented this safety program to the
11           Navy; is that correct?
12    A.     He presented it to the U.S. Department of
13           Labor, yes.
14    Q.     They liked it so much, they adopted it,
15           didn't they?
16    A.     Yes.
17    Q.     As a matter of fact, the Government
18           agencies, including the Navy, they didn't
19           prohibit you from presenting them with
20           any safety proposals, did they?
21    A.     No.
22    Q.     They didn't tell you what your safety
23           proposals had to be, did they?
24    A.     No.  Just the rules and regulations that
25           governed us, we had to follow, that was
```

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

138

1          in the contract.

2    Q.    So you have OSHA regulations after '72,

3          and you have Walsh-Healy regulations and

4          other Federal regulations that applied to

5          all shipyards that Avondale was also

6          bound it; is that correct?

7    A.    Yes.

8    Q.    And there were no special regulations for

9          Avondale, were there, as far as safety is

10         concerned?  I'm not talking about the

11         other stuff.

12   A.    No.

13   Q.    So when you say the Navy had oversight

14         authority, you're talking about these

15         standards promulgated by these different

16         agencies.  If you weren't following the

17         law, they could shut you down?

18   A.    Yes.

19   Q.    Did any Federal officer ever direct the

20         day-to-day activities of the safety

21         department at Avondale?

22   A.    Not the day-to-day.  We had inspections

23         with the Navy on board vessels.  I guess

24         the Navy came with us to inspect the

25         vessels once a week, but we had three and

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

139

```
 1          four vessels, so every day there would be
 2          an inspector there that came from central
 3          management or supervisor of shipbuilding,
 4          which the Navy inspectors worked for that
 5          was part of the program.
 6   Q.     But did those Federal officers direct the
 7          safety program, or was it just an
 8          inspector?
 9   A.     No.  They just followed the rules with us
10          that we made inspections with them.
11   Q.     Did any Federal officer -- and again when
12          I use the term "Federal officer," I mean
13          the Federal inspectors or the ones coming
14          down -- did they exercise control over
15          the safety department at Avondale?
16   MR. CARAWAY:
17              Object to the form.  I think the
18          word "control" could be open to
19          interpretation.  But, subject to
20          that, you can answer the question.
21   THE WITNESS:
22              What was the question?
23   EXAMINATION BY MS. ARDOIN:
24   Q.     I'm asking whether Federal officers
25          controlled the safety department at
```

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

140

| | | |
|---|---|---|
| 1 | | Avondale. |
| 2 | A. | No. |
| 3 | Q. | Let's see if I have much left.  Paragraph |
| 4 | | 6 of your affidavit, if we could look at |
| 5 | | that real quick, on the line where it |
| 6 | | says, "During the construction of naval |
| 7 | | vessels the Navy personnel would |
| 8 | | continuously inspect the vessel to ensure |
| 9 | | that applicable safety standards were |
| 10 | | met."  Do you see that right here? |
| 11 | A. | Yes, I see it. |
| 12 | Q. | I don't mean to sound ignorant, but what |
| 13 | | were the applicable safety standards? |
| 14 | A. | The Longshoremen and Harbor Workers' Act, |
| 15 | | OSHA standards, Walsh-Healy standards. |
| 16 | Q. | But these are standards you didn't read, |
| 17 | | right? |
| 18 | A. | Yes. |
| 19 | Q. | Did any naval inspector come to you and |
| 20 | | say, "Mr. Territo, we are going out to |
| 21 | | inspect to make sure, to ensure that the |
| 22 | | applicable safety standards were met"? |
| 23 | A. | Made inspections with him, yes. |
| 24 | Q. | So you assumed the inspections would |
| 25 | | include compliance with the general |

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

142

```
 1          vessels prior to 1980, in regard to
 2          asbestos being used in an area?
 3   A.     Prior to 1980?
 4          MR. CARAWAY:
 5               Wait a second.  I'm going to
 6          object to the form.  Did you say
 7          "warning signs"?
 8          MS. ARDOIN:
 9               Yes.
10          MR. CARAWAY:
11               Are you talking about caution
12          labels on products or warning signs
13          put up by the shipyard?
14          MS. ARDOIN:
15               I'm sorry.
16   EXAMINATION BY MS. ARDOIN:
17   Q.     Did you ever see warning signs put up by
18          the shipyard or any subcontractor like
19          Hopeman Brothers, for example, that
20          asbestos was being used in the area, or
21          with reference whatsoever about asbestos?
22   A.     I don't remember.  Before 1980?
23   Q.     Yes.
24   A.     I don't remember.
25   Q.     To your knowledge, is there any Federal
```

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

Paul W. Williams, Inc.
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

143

1          regulation or specification in the

2          contracts with the Navy that would

3          prevent you from putting up a sign in a

4          naval vessel?

5      A.   If it was under construction?

6      Q.   Yes.

7      A.   No.

8      Q.   So if you wanted to put up a warning sign

9          because lead paint is being used or lead

10         paint is being ripped out, you could do

11         that?

12     A.   Yes.

13     Q.   And you could do that back in the '50s,

14         if you wanted, or the '60s, if you

15         wanted?

16     A.   If it was something unsafe to employees,

17         yes.

18     Q.   The regulations that are promulgated by

19         the Federal Government, would you agree

20         with me that those regulations are the

21         minimal standards for safety?

22     A.   Minimal standards?

23     Q.   In other words, is there anything

24         preventing Avondale from doing more than

25         what those regulations called for?

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

151

1    Q.    I just want to make sure that a few

2          things were clear based on the testimony

3          that you've already given, Mr. Territo.

4          You started working in the safety

5          department itself around 1960, I believe

6          you testified in the past?

7    A.    Yes.

8    Q.    Is that right?

9    A.    Yes.

10   Q.    And at that time the head of the safety

11         program at Avondale was Mr. Jim

12         O'Donnell?

13   A.    Yes.

14   Q.    And Mr. O'Donnell served in that capacity

15         until approximately 1971, when Mr. Steven

16         Kennedy assumed the head position over

17         safety; is that right?

18   A.    Yes.

19   Q.    And Mr. Kennedy served in that capacity

20         until approximately 1973, when Mr. John

21         Chantrey took over that role at Avondale;

22         is that right?

23   A.    Yes.

24   Q.    Mr. Chantrey served in that capacity

25         until he left Avondale sometime in the

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

204

1    A.    ABS, yes.

2    Q.    And the United States Coast Guard?

3    A.    Yes.

4          MR. SHOFSTAHL:

5                I have no further questions.

6          Thank you.

7          MR. SWARR:

8                I have just one follow-up.

9          Anybody else?

10         MS. BORISON:

11               Alison Borison --

12         MR. SWARR:

13               I just want to ask my one while

14         you're walking over here.

15   EXAMINATION BY MR. SWARR:

16   Q.    Pete, was there any difference at all

17         between the State Department's

18         responsibilities and/or policies and

19         procedures regarding the destroyer

20         escorts versus a ship that was built

21         solely for a private --

22   A.    No.

23   Q.    -- customer?

24   A.    No.  It was the same rules.

25         MR. SWARR:

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax: (504) 834-6629

209

## WITNESS' CERTIFICATE

        I have read or have had the foregoing
testimony read to me and hereby certify that
it is a true and correct transcription of my
testimony, with the exception of any attached
corrections or changes.


_____

PETER R. TERRITO

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

210

## REPORTER'S CERTIFICATE

I, RALPH D. BOYLES, JR., CP, CCR, Certified Court Reporter, in and for the State of Louisiana, do hereby certify that the above witness was sworn to tell the truth, the whole truth, and nothing but the truth.

The foregoing testimony was taken by me in shorthand and is true and correct testimony to the best of my ability and understanding.

That I am not of counsel, not related to counsel, nor in any way interested in the outcome of this event.

---

RALPH D. BOYLES, JR., CP, CCR
Certified Court Reporter
In and for the State of Louisiana

3525 North Causeway Boulevard
Suite 632
Post Office Box 8745
Metairie, Louisiana 70011-8745

**Paul W. Williams, Inc.**
Certified Shorthand Reporters

(504) 832-0937
Fax (504) 834-6629

# EXHIBIT E

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES W. GIBBENS, ET AL | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO: 08-572 |
| | § | |
| VS. | § | |
| | § | MAGISTRATE JUDGE : _____ |
| AQUA CHEM INC., ET AL , | § | |
| | § | |
| Defendant(s). | § | |
| | § | |

## AGREED MOTION TO DISMISS DEFENDANT, NORTHROP GRUMMAN SHIP SYSTEMS, INC. AS SUCCESSOR-IN-INTEREST TO AVONDALE INDUSTRIES, INC. AND REMAND CASE TO STATE COURT

Plaintiffs JAMES W. GIBBENS, et al asks the Court to (1) dismiss with prejudice Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc.and (2) remand this case to the 19th Judicial District Court for the Parish of East Baton Rouge. As explained in Plaintiffs' Supporting Memorandum Plaintiffs have agreed to the dismissal of its claim against Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. In the absence of any claim against Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc., no basis for federal jurisdiction exists, and the case should be remanded.

BRENT COON & ASSOCIATES

**LAWRENCE G. GETTYS** (LA Bar #23753)
17405 Perkins Road
Baton Rouge, LA 70810
Telephone: (225) 751-7277
Facsimile: (225) 753-4503

*Counsel for Plaintiff(s)*

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD

**GORDON P. WILSON** (LA.Bar # 20426)
601 Poydras Street, Ste. 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

*Counsel for Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Agreed Motion to Dismiss Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. and Remand to State Court has been served upon all counsel of record by Electronic Transmission, this 18th day of September, 2008.

**LAWRENCE G. GETTYS**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES W. GIBBENS, ET AL | § | CIVIL ACTION NO: 08-572 |
| | § | |
| Plaintiff, | § | |
| | § | MAGISTRATE JUDGE : _____ |
| VS. | § | |
| | § | |
| AQUA CHEM INC., ET AL , | § | |
| | § | |
| Defendant(s). | § | |
| | § | |

## ORDER GRANTING AGREED MOTION TO DISMISS DEFENDANT, NORTHROP GRUMMAN SHIP SYSTEMS, INC. AS SUCCESSOR-IN-INTEREST TO AVONDALE INDUSTRIES, INC. AND REMAND CASE TO STATE COURT

Before the Court is the Agreed Motion to Dismiss Defendant, Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. and Remand Case to State Court. Having reviewed the agreed motion and the supporting memorandum, the Court GRANTS the motion and orders the following: (1) Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. is dismissed with prejudice; (2) this case is remanded to the 19th Judicial District Court for the Parish of East Baton Rouge.

_____
JUDGE PRESIDING

Date: _____

ORDER GRANTING AGREED MOTION TO DISMISS
DEFENDANT AND REMAND CASE TO STATE COURT                                                    Page I

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES W. GIBBENS, ET AL | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO: 08-572 |
| | § | |
| VS. | § | |
| | § | MAGISTRATE JUDGE : _____ |
| AQUA CHEM INC., ET AL , | § | |
| | § | |
| Defendant(s). | § | |
| | § | |
| | § | |

## MEMORANDUM IN SUPPORT OF AGREED MOTION
## TO DISMISS DEFENDANT
## AND REMAND CASE TO STATE COURT

    Plaintiffs JAMES W. GIBBENS, et al submit this Memorandum in Support of Agreed Motion to Dismiss Defendant, Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc. and Remand Case to State Court and would respectfully show the Court as follows:

### I.

    Plaintiffs filed this lawsuit in state court, seeking compensation for asbestos-related injuries. The case was removed to this Court on September 11, 2008, by Defendant, Northrop Grumman Ship Systems, Inc. as Successor-in-Interest to Avondale Industries, Inc.

### II.

    Northrop asserted jurisdiction under 28 U.S.C. 1441, 1442, and 1446 alleging that it was acting under the direction of a federal officer.

MEMORANDUM IN SUPPORT OF AGREED MOTION TO DISMISS
DEFENDANT AND REMAND CASE TO STATE COURT                                    Page 1

### III.

After consultation, Plaintiffs and Northrop have agreed that the claim against Northrop should be dismissed. In the absence of a claim against Northrop, no other basis for federal jurisdiction exists.

### IV.

The Court has the authority and duty to remand a case for lack of subject matter jurisdiction at any time under 28 U.S.C. § 1447(c). If Northrop is dismissed, the case should be remanded for lack of subject matter jurisdiction.

**BRENT COON & ASSOCIATES**

_____
**LAWRENCE G. GETTYS** (LA Bar #23753)
17405 Perkins Road
Baton Rouge, LA 70810
Telephone: (225) 751-7277
Facsimile: (225) 753-4503

*Counsel for Plaintiff(s)*

**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**

_____
**GORDON P. WILSON** (LA.Bar # 20426)
601 Poydras Street, Ste. 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

*Counsel for Northrop Grumman Ship Systems, Inc.*
*as Successor-in-Interest to Avondale Industries, Inc*

MEMORANDUM IN SUPPORT OF AGREED MOTION TO DISMISS
DEFENDANT AND REMAND CASE TO STATE COURT

Page 2

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Motion to Remand Including Supporting Memorandum has been served upon all counsel of record by Electronic Transmission, this _____ day of _____, 2008.

_____
LAWRENCE G. GETTYS

**MEMORANDUM IN SUPPORT OF AGREED MOTION TO DISMISS**
**DEFENDANT AND REMAND CASE TO STATE COURT**                                    Page 3

# EXHIBIT F

Westlaw

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 1115246 (E.D.La.)
(Cite as: Slip Copy)

Bradley v. Northrop Grumman Systems Corp.
E.D.La.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
Frank BRADLEY
v.
NORTHROP GRUMMAN SYSTEMS
CORPORATION, et al.
Civil Action No. 07-1422.

April 12, 2007.

Scott R. Bickford, Jeffrey Matthew Burg, Spencer R.
Doody, Martzell & Bickford, New Orleans, LA, for Frank
Bradley.
Brian C. Bossier, Edwin A. Ellinghausen, III, Richard L.
Olivier, Blue Williams, L.L.P., Metairie, LA, for
Northrop Grumman Systems Corporation.
Gordon Peter Wilson, Frederick Lewis Parks, Lugenbuhl,
Wheaton, Peck, Rankin & Hubbard, Gary Allen Lee,
Richard Marshall Perles, Lee, Futrell & Perles, LLP, New
Orleans, LA, for Peter Territo.

*ORDER AND REASONS*

A.J. McNAMARA, United States District Judge.
    *1 Before the court is the "Motion to Remand" filed
by Plaintiff, Frank Bradley. Memoranda in opposition
were filed by Northrop Grumman Systems Corporation,
individually and erroneously alleged as successor to
Avondale Shipyards, Inc., Avondale Industries, Inc.,
Ingalls Shipbuilding, Peter Territo (collectively, the
Avondale interests) and Commercial Union Insurance
Company, the alleged insurer of the executive officers of
Avondale. The motion, set for hearing on Wednesday,

April 11, 2007, is before the court on briefs, without oral
argument. Now, having considered the memoranda of
counsel, the record, and the applicable law, the court
finds that the motion should be granted.

*I. Background*

    On February 23, 2007, Plaintiff filed this suit in Civil
District Court for the Parish of Orleans, State of
Louisiana, alleging that he incurred substantial exposure
to asbestos while working as a marine electronics
technician at Avondale Shipyard from approximately
1967-68, and this exposure to asbestos caused him to
contract malignant pleural mesothelioma. (Petition at ¶¶
23-24).

    Plaintiff names numerous Defendants, including
Northrop Grumman Systems Corporation (individually
and as successor to Avondale Shipyards, Inc., Avondale
Industries, Inc., and Ingalls Shipbuilding), and Peter
Territo (an executive officer of Avondale). Plaintiff
alleges that Avondale and Territo failed to provide him
with a safe workplace through various negligent acts,
including but not limited to the failure to warn him of the
risks associated with exposure to and inhalation of
asbestos. (Petition at ¶ 50, 51, 53, 56 & 57).

    On March 23, 2007, Northrop Grumman Systems
Corporation (individually and erroneously alleged as
successor to Avondale Shipyards, Inc., Avondale
Industries, Inc., and Ingalls Shipbuilding)("Avondale")
and Peter Territo removed the matter claiming that they
"qualify as persons 'acting under' any officer of the
United States or any agency thereof" pursuant to 29
U.S.C. § 1442(a)(1) and the State Case is therefore
removable to this court because (a) they can raise, as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                            Page 2
Slip Copy, 2007 WL 1115246 (E.D.La.)
(Cite as: Slip Copy)

federal defenses, immunity under the "Government Contractors Defense" and the LHWCA, and (b) because they can demonstrate a causal nexus between the injuries claimed by plaintiff and the required presence and use of asbestos-containing materials at the Avondale facility to comply with the United States government contract specifications and requirements."(Notice of Removal at ¶ 14).

Plaintiff now moves the court to remand, arguing that the court lacks subject matter jurisdiction. The court agrees.

*II. Legal Analysis*

Pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1),

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is presiding:

(1) The United States or any agency thereof or any officer (or any acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue....

*28 U.S.C. § 1442(a)(1).

Removal pursuant to § 1442(a)(1) is meant to "ensure a federal forum in any case where a federal officer is entitled to raise a defense arising out of his official duties."*Winters v. Diamond Shamrock Chemical*

*Co.,* 149 F.3d 387, 398 (5th Cir.1998). However, the removing defendants have the burden of establishing the existence of federal jurisdiction. *Id.* at 397.

In considering whether removal was proper under 28 U.S.C. § 1442, the court must determine whether the removing defendants have established the following factors: (1) they are "persons" under § 1442(a)(1); (2) they acted under the direction of a federal officer; (3) they have demonstrated a causal nexus between plaintiff's claims and defendants' actions performed under the color of a federal office; and (4) they can raise a federal defense to plaintiff's claims. *Mesa v. California,* 489 U.S. 121, 131-32, 109 S.Ct. 959, 966, 103 L.Ed.2d 99 (1989); *Winters,* 149 F.3d at 398.[FN1]

FN1. The Fifth Circuit has noted:
the Supreme Court's admonishment that the statute's "color of federal office" requirement is neither "limited" nor "narrow," but should be afforded a broad reading as not to frustrate the statute's underlying rationale. On the other hand, the Court has clarified that the right to removal is not unbounded, and only arises when "a federal interest in the matter" exists.
*Winters,* 149 F.3d at 398 (citations omitted).

*First prong: Defendants are "persons."*

Corporations are considered "persons" for purposes of removal under § 1442. *Winters,* 149 F.3d at 398. Thus, both removing defendants (Northrop Grumman Systems Corporation and Peter Territo) satisfy the first *Mesa* prong.

*Second prong: Acting under the direction of a federal officer*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Here, the court finds that Defendants' removal fails on this prong, because Defendants have failed to establish their safety and warning-related activities were under the requisite direction of a federal officer. Federal direction requires "more than 'general auspices' of a federal officer, or participation in a regulated industry." *Savoie v. Northrop Grumman Ship Systems, Inc.,* No. 05-2086 (E.D.La.2005) (Duval, J.)(attached as Plaintiffs' Ex. B, Doc. No. 3-4), *citing Mouton v. Flextallic, Inc., 1999 WL 225438 *2 (E.D.La.1999)*(Porteous, J.). Instead, the defendants must show "strong government intervention and the threat that a defendant will be sued in state court" based on actions which follow federal direction. *Mouton, 1999 WL 225438 *2-3* (citation omitted).

Here, there is nothing in the record to establish that the safety procedures at issue were controlled by the government or related to government specifications in the building of ships at Avondale. *See also Guidroz v. The Anchor Packing Co.,* No. 98-3709 (E.D.La .1999) (Lemelle, J.)(attached as Plaintiffs' Ex. A, Doc. No. 3-3); *Mouton, 1999 WL 225438* (no causal connection between the Navy's direction pursuant to design contracts and plaintiff's failure to warn claims).

Indeed, Defendant Territo has admitted:
Q.... what I'm asking you is whether or not the Federal officers that were on board the vessels, the Naval inspectors, did they control the safety department at Avondale?
A. No.

(See Plaintiff's Ex. D, Territo Dep., p. 135).[FN2]

FN2. This deposition of Peter Territo was taken in the cases of *Gauthe v. Asbestos Corp., Ltd,* No. 9454 (E.D.La) and *Porche v. Flexitallic Inc.,* No. 96-2827 (E.D.La). However, the

quoted testimony is also applicable here.

*Third prong: Causal nexus between plaintiff's claims and defendants' actions performed under the color of a federal office*

*3 Because the court has found that Defendants have failed to demonstrate that the government exercised the requisite authority and control over Avondale's safety procedures and plans, the court concludes that there can be no causal nexus between the authority of the federal officer and Plaintiffs' claims that Defendants failed to use asbestos safely. *See also Gauthe v. Asbestos Corp., 1997 WL 3255 (E.D.La.1997)*(Duval, J.)(finding no causal nexus under similar facts and circumstances); *Guidroz v. The Anchor Packing Co.,* (Lemelle, J.) (no causal nexus); (Africk, J.)(no causal nexus between the government's direction pursuant to ship construction contracts and plaintiff's claims alleging failure to warn and provide a safe work environment).[FN3]

FN3. The court is unpersuaded by the following cases which Defendants argue support removal of this matter: *Lalonde v. Delta Field Erection,* No. 96-3244 (M.D.La.1988)(Dalby, Mag.J.); *Melford v. Territo,* No. 05-1405 (M.D.La.2006)(Parker, J); *McFarlin v. Northrop Grumman Systems Corp.,* No. 05-1406 (M.D.La.2006)(Brady, J.). (*See* copies of these opinions attached to Defendants' Memo. as Exhibits A, B & C, respectively).

*Fourth prong: Colorable federal defense*

Because Defendants have failed to meet the second and third prongs above, remand is required. However, the court also finds that Defendants have failed to establish

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1115246 (E.D.La.)
(Cite as: Slip Copy)

a colorable defense. Considering the Plaintiff's allegations herein, for reasons previously set forth by Judge Duval, neither immunity under the "Government Contractors Defense" nor immunity under the Longshore Harbor Workers Compensation Act provide Defendants with a colorable federal defense to Plaintiff's claims. *Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E.D.La.1997)(Duval, J.).

### III. Conclusion

The court concludes that this matter was improperly removed pursuant to § 1442(a)(1) and remand is required for lack of subject matter jurisdiction. Accordingly,

IT IS ORDERED that Plaintiff's "Motion to Remand" be and is hereby GRANTED for lack of subject matter jurisdiction, and the case is REMANDED to the Civil District Court for the Parish of Orleans, State of Louisiana.

IT IS FURTHER ORDERED that Defendants' "Motion to Include Statement Prescribed by 28 U.S.C. § 1292(b)" be and is hereby DENIED.

E.D.La.,2007.
Bradley v. Northrop Grumman Systems Corp.
Slip Copy, 2007 WL 1115246 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 of 2 DOCUMENTS

**DORIS RITA BUFFONE JAMBON VERSUS NORTHROP GRUMMAN SHIP SYSTEMS, INC. ET AL.**

**CIVIL ACTION NO: 07-6056, SECTION: "S" (5)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*2007 U.S. Dist. LEXIS 75652*

**October 10, 2007, Decided
October 10, 2007, Filed**

**COUNSEL:** [*1] For Doris Buffone Jambon, Plaintiff: Gerolyn Petit Roussel, LEAD ATTORNEY, Jonathan Brett Clement, Perry Joseph Roussel, Jr., Roussel & Roussel, Laplace, LA.

For Northrop Grumman Ship Systems, Inc., and its executive officers formerly known as Avondale Shipyards, Inc., Defendant: Gordon Peter Wilson, LEAD ATTORNEY, Frederick Lewis Parks, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA; Gary Allen Lee, Richard Marshall Perles, Lee, Futrell & Perles, LLP, New Orleans, LA.

For American Motorists Insurance Company, Defendant: Edwin A. Ellinghausen, III, LEAD ATTORNEY, Blue Williams, L.L.P., Metairie, LA.

For American Employer's Insurance Company, Defendant: Samuel Milton Rosamond, III, LEAD ATTORNEY, Crawford Lewis, PLLC, New Orleans, LA.

For Bayer Cropscience LP, as successor of liability to Adventis Cropscience USA Inc. formerly known as Amchem Products, Inc. formerly known as Benjamin Foster Co formerly known as Rhone-Poulenc AG Company, Defendant: Michael H. Abraham, LEAD ATTORNEY, Abbott, Simses & Kuchler, New Orleans, LA.

For Entergy Louisiana, L.L.C., formerly known as Louisiana Power & Light Company, Defendant: Cory R. Cahn, LEAD ATTORNEY, Entergy Services, Inc., New Orleans, [*2] LA.

For Owens-Illinois Inc, Defendant: Forrest Ren Wilkes, LEAD ATTORNEY, Forman, Perry, Watkins, Krutz & Tardy, LLP, New Orleans, LA.

For Reilly-Benton Company, Inc., Defendant: Ryan Andrew Beason, LEAD ATTORNEY, Beason Willingham, LLP, Houston, TX.

For Taylor-Seidenbach, Inc., Defendant: Christopher Kelly Lightfoot, LEAD ATTORNEY, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA.

For Rapid American Corporation, Defendant: Charles V. Giordano, LEAD ATTORNEY, Miranda, Warwick, Milazzo, LEAD ATTORNEY, Giordano & Hebbler, APLC, Metairie, LA.

**JUDGES:** MARY ANN VIAL LEMMON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARY ANN VIAL LEMMON

**OPINION**

*ORDER AND REASONS*

   **IT IS HEREBY ORDERED** that Doris Rita Buffone Jambon's motion to remand is **GRANTED,** and the case is **REMANDED** to Civil District Court for the Parish of Orleans, State of Louisiana. (Document #4.)

**I. BACKGROUND**

   Doris Rita Buffone is suffering from mesothelioma as a result of exposure to asbestos brought home from work on the clothes of her husband, Mason Jambon, and her two sons Billy and Bobby. Her husband and sons were employed by Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc. (Avondale), a privately owned shipyard which constructed both military [*3] and commercial vessels.

2007 U.S. Dist. LEXIS 75652, *

Jambon filed a petition for damages in Civil District Court for the Parish of Orleans, State of Louisiana, against Avondale and multiple other defendants. Avondale removed the case to federal court, alleging jurisdiction under the federal officers removal statute, *28 U.S.C. § 1442(a)(1)*. Jambon filed a motion to remand.

## II. DISCUSSION

Avondale argues that removal is proper because the action involves persons acting under the authority of an officer of the United States. Avondale contends that a causal nexus exists between the claims made by Jambon and the extent to which her alleged damages were brought about by officers of the United States government.

The defendant has the burden to establish the existence of federal jurisdiction over the controversy. *See Vasquez v. Alto Bonito Gravel Plant Corp., 56 F.3d 689, 692 (5th cir. 1995). Section 1442* provides in relevant part:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer [*4] (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

One of the most important functions of a federal officer's right of removal "is to allow a federal court to determine the validity of an asserted official immunity defense." *Winters v. Diamond, 149 F.3d 387, 397 (5th Cir. 1998).* "Removal pursuant to *§ 1442(a)(1)* is thus meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Id.* (internal quotation and citation omitted). The defendant must demonstrate that it (1) is a person within the meaning of the statute, (2) was acting under color of federal authority when committing the alleged injurious acts and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims, and (3) has asserted a colorable federal defense. *Id. at 398.*

Avondale has not carried its burden of establishing [*5] that it was acting as a person under color of federal authority when it committed the alleged acts that led to Jambon's injuries. To satisfy that requirement, "the officer must show a nexus, a causal connection between the charged conduct and asserted official authority." *Jefferson County, Ala. v. Acker, 527 U.S. 423, 119 S.Ct. 2069, 2075, 144 L. Ed. 2d 408 (1999).* The "asserted official authority" is that the United States entered a contract with Avondale to construct federal vessels, which required the installation of specific asbestos-containing materials. Avondale, however, has not established that there is a causal connection between Jambon's injuries and the construction of the vessels for the government. Avondale is a private company that builds many types of commercial, as well as military vessels. Avondale has not presented evidence that Jambon's husband and sons worked on any of the vessels that were constructed under contracts with the government. [1] Therefore, Avondale has not established that it was acting as a person under color of federal authority and that it directed Jambon's husband and sons to perform duties involving asbestos installation aboard a federally contracted vessel that ultimately led [*6] to Jambon's alleged injury. [2]

1   At oral argument, Avondale placed the blame for the absence of evidence that Jambon's relatives worked on vessels being constructed under federal contract on Jambon. However, Avondale bears the burden on that issue.

2   Even if Avondale had established a causal connection, Avondale has not established a colorable federal defense. Jambon is not covered under the Longshore Harbor Workers Compensation Act, and this is not a design defect case to which the government contractor defense applies. *See Gauthe v. Asbestos Corp., 1997 U.S. Dist. LEXIS 112, 1997 WL 3255 (E.D. La. 1997)*(unpublished).

Accordingly, the court lacks jurisdiction over the matter, and the motion to remand the case to state court is granted.

New Orleans, Louisiana, this 10th day of October, 2007.

**MARY ANN VIAL LEMMON**

**UNITED STATES DISTRICT JUDGE**

1 of 1 DOCUMENT

**LEIGH COLE, SR. VERSUS NORTHROP GRUMMAN SHIP SYSTEMS, INC, ET
AL.**

**CIVIL ACTION NO. 07-3049 SECTION "L"(1)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOU-
ISIANA**

*2008 U.S. Dist. LEXIS 78975*

**July 3, 2008, Decided
July 7, 2008, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff worker sued
defendants, a shipyard owner, a second company, an
insurance company, and several executives of the owner,
in state for personal injury due to alleged asbestos expo-
sure. One executive removed the case to federal court
pursuant to *28 U.S.C.S. § 1442(a)(1)*. The worker moved
to remand. The United States Judicial Panel on Multidis-
trict Litigation (JPML) ordered that the case be trans-
ferred to another federal district court.

**OVERVIEW:** Regarding the worker's failure to warn
claims, the executive's argument that he was acting under
the authority of a federal officer due to contractually
mandated regulatory compliance and government moni-
toring was negated by the worker's submission of affida-
vits and depositions which proved otherwise. Addition-
ally, the worker pointed to a line of factually-similar
cases decided in the present district and one from Cali-
fornia which held that the removing defendant could not
prove that the federal government restricted his ability to
warn workers of asbestos' dangers. Moreover, even as-
suming that the executive could establish the federal di-
rection and causal nexus prongs for the failure to warn
claims, he could not establish that a colorable federal
defense existed for those claims. The holding of the
Boyle decision was unavailable as a colorable federal
defense in the present case. The executive argued unsuc-
cessfully that he was entitled to immunity under the gov-
ernment contractor defense and the Longshore Harbor
Workers Compensation Act.

**OUTCOME:** The worker's motion to remand was
granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Removal > Proceedings > General
Overview*
*Evidence > Procedural Considerations > Burdens of
Proof > Allocation*
[HN1] A removing defendant carries the burden of
showing the existence of federal jurisdiction.

*Civil Procedure > Removal > Proceedings > General
Overview*
*Governments > Legislation > Interpretation*
[HN2] As a general matter, a removal statute is to be
construed narrowly and in favor of remand to state court.
Indeed, doubts regarding whether removal jurisdiction is
proper should be resolved against federal jurisdiction.
Accordingly, all disputed questions of fact must be re-
solved in favor of the non-moving party.

*Civil Procedure > Removal > Basis > Cases Involving
Federal Officers*
[HN3] See *28 U.S.C.S. § 1442(a)(1)*.

*Civil Procedure > Removal > Basis > Cases Involving
Federal Officers*
*Civil Procedure > Removal > Postremoval Remands >
General Overview*
*Civil Procedure > Removal > Proceedings > General
Overview*
*Governments > Legislation > Interpretation*
[HN4] Though generally remand to state court is favored
when removal jurisdiction is questionable, removal juris-

2008 U.S. Dist. LEXIS 78975, *

diction under the Federal Officer Removal Statute, *28 U.S.C.S. § 1442(a)(1)*, must be broadly construed. A court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction. However, liberal construction does not mean that the statute's broad language should be interpreted to imply limitless application. As the purpose of the statute is to provide a federal forum in cases where federal officials are entitled to raise a defense arising out of their official duties, the statute authorizes removal by private parties only if they were authorized to act with or for federal officers or agents in affirmatively executing duties under federal law.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
*Civil Procedure > Removal > Proceedings > General Overview*
[HN5] The Federal Officer Removal Statute, *28 U.S.C.S. § 1442(a)(1)*, only confers jurisdiction if the removing defendant establishes that the tortfeasor or involved individual is a person, who (1) acted under color of federal authority when committing the allegedly tortious conduct, (2) can demonstrate a causal nexus between the plaintiff's claims and the defendant's actions performed under color of office, and lastly, (3) can assert a federal defense to the plaintiff's claims.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
*Civil Procedure > Removal > Proceedings > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
[HN6] In applying the Federal Officer Removal Statute, *28 U.S.C.S. § 1442(a)(1)*, courts frequently look at the federal direction and causal nexus prongs of the Mesa test together as they are so closely related--the defendant must establish a causal nexus between the alleged tortious conduct and the acts performed by the defendant under the direction of a federal officer. Determination of the federal direction prong depends on the level of official control, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit. The word under must refer to what has been described as a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office. That relationship typically involves subjection, guidance, or control. The private person's acting under must involve an effort to assist, or to help carry out, the duties or tasks of a federal superior. Thus, federal direction requires more than general auspices of a federal officer, or participation in a regulated

industry. The defendant must show strong government intervention and the threat that a defendant will be sued in state court based on actions which follow federal direction.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
*Civil Procedure > Removal > Proceedings > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
[HN7] In the context of a failure to warn claim when a case is removed pursuant to the Federal Officer Removal Statute, *28 U.S.C.S. § 1442(a)(1)*, the government, at a minimum, has to provide some level of direct control over warning, and, when a defendant fails to establish that was the case, the existence of a causal nexus is negated when the defendant could not show that the government's direction and control of activities directly interfered with the defendant's ability to fulfill its state law obligation to warn employees of safety hazards. There must be some causal connection between what the officer has done under asserted federal authority and the state prosecution. It must appear that the prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law. Thus, under the causal nexus prong, there is no basis for federal officer jurisdiction for the failure to warn claims.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
*Civil Procedure > Removal > Proceedings > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
[HN8] A removing defendant is not required to establish that their federal defense is meritorious in order to satisfy *28 U.S.C.S. § 1442(a)(1)*, but must only demonstrate that a colorable claim to such defense has been made.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
*Civil Procedure > Removal > Proceedings > General Overview*
[HN9] In the context of removal under the Federal Officer Removal Statute, *28 U.S.C.S. § 1442(a)(1)*, the Boyle decision holds that liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications, (2) the equipment conformed to those specifications, and (3) the supplier warned the United States about the about the dangers in the use of the

equipment that were known to the supplier but not to the United States. Additionally, a uniquely federal interest must be involved and a conflict must exist between the federal policy and the state duty of care. Though the Boyle decision involved a products liability manufacturing defect case, it has been extended to the failure to warn context as well. However, Boyle's government contractor defense in the failure to warn context requires that a federal authority exercise some degree of direct influence over the contractor's activities with respect to warnings.

COUNSEL: [*1] For Leigh Cole, Sr., Plaintiff: Frank J. Swarr, LEAD ATTORNEY, David Ryan Cannella, Mickey P. Landry, Landry & Swarr, LLC, New Orleans, LA.

For Northrop Grumman Ship Systems, Inc., formerly known as Avondale Industries, Inc., Defendant: Brian C. Bossier, LEAD ATTORNEY, Christopher Thomas Grace, III, Edwin A. Ellinghausen, III, Blue Williams, LLP (Metairie), Metairie, LA.

For Peter Territo, Defendant: Gordon Peter Wilson, LEAD ATTORNEY, Frederick Lewis Parks, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard (New Orleans), New Orleans, LA; Gary Allen Lee, Richard Marshall Perles, Lee, Futrell & Perles, LLP, New Orleans, LA.

For OneBeacon Insurance Company As Liability Insurers of Executive Officers of Avondale Industries, Inc. formerly known as Commercial Union Insurance Company, Defendant: Samuel Milton Rosamond, III, LEAD ATTORNEY, Adam Devlin deMahy, Crawford Lewis, PLLC (New Orleans), New Orleans, LA.

For Asbestos Corporation, Ltd., Defendant: Thomas G. Milazzo, LEAD ATTORNEY, Pajares & Schexnaydre, LLC, Covington, LA.

For Hopeman Brothers, Inc., Defendant: Kaye N. Courington, LEAD ATTORNEY, Blaine Augusta Moore, Louis Oliver Oubre, Duncan, Courington & Rydberg, LLC, New Orleans, LA.

For Taylor-Seidenbach, [*2] Inc., Defendant: Christopher Kelly Lightfoot, LEAD ATTORNEY, Anne Elizabeth Medo, Claude Alvin Greco, Spiro G. Latsis, Hailey, McNamara, Hall, Larmann & Papale (Metairie), Metairie, LA; Michael Edward Hill, Gieger, Laborde & Laperouse, LLC, New Orleans, LA.

For Liberty Mutual Insurance Company, in Its Capacity as Insurer of Wayne Manufacturing, Defendant: Louis

Oliver Oubre, Duncan, Courington & Rydberg, LLC, New Orleans, LA.

For BellSouth Telecommunications, Inc., Defendant: Thomas M. Nosewicz, LEAD ATTORNEY, Robert Louis Walsh, Jones Walker (New Orleans), New Orleans, LA.

JUDGES: Eldon E. Fallon, UNITED STATES DISTRICT JUDGE.

OPINION BY: Eldon E. Fallon

OPINION

ORDER & REASONS

Before this court is the Plaintiff's Motion to Remand (Rec. Doc. No. 60). For the following reasons, the Motion to Remand is GRANTED.

I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff filed this action in the Civil District Court for Orleans Parish, Louisiana on April 17, 2007. He seeks damages for personal injury due to alleged asbestos exposure while working as a shipyard worker for Avondale Shipyards ("Avondale") in 1966 and 1967 and while working for South Central Bell in 1965 and 1966. The Plaintiff alleges that his exposure to injurious [*3] levels of airborne asbestos fibers and the Defendants' tortious acts consequently caused him to contract malignant mesothelioma, a fatal cancer of the lining of the lungs. The Plaintiff asserts claims of negligence for failure to provide a safe working environment and failure to warn, strict premises liability, and strict *garde* liability against Northrop Grumman Ship Systems, Inc. ("Northrop"), the owner of Avondale; South Central Bell; OneBeacon Insurance Company, the liability insurers of Northrop's executive officers; and several individual Northrop executive officers, including Peter Territo. Additionally, the Plaintiff asserts causes of action in strict liability and negligence against various parties who allegedly manufactured, sold and supplied unreasonably dangerous asbestos-containing products which allegedly contributed to the Plaintiff's asbestos exposure and his resulting cancer.

On May 29, 2007, Defendant Peter Territo removed this case to federal court on the basis of the Federal Officer Removal Statute, *28 U.S.C. § 1442(a)(1)*. Territo states that, assuming the Plaintiff was exposed to asbestos at Avondale, the exposure occurred while the Plaintiff was working on vessels [*4] built for the United States and the use of asbestos-containing materials was required and controlled by the United States.

The Plaintiff subsequently filed a Motion to Remand on June 7, 2007 arguing that the Court lacks subject matter jurisdiction. [1] Defendant Territo thereafter filed a memorandum in opposition, along with OneBeacon Insurance Company. Prior to the Court deciding the motion, the United States Judicial Panel on Multidistrict Litigation (the "JPML") ordered that this case be transferred to the Eastern District of Pennsylvania for inclusion in MDL No. 875. [2] The transferee court then issued a suggestion that this case should be returned "to the United States Court for the Eastern District of Louisiana for the resolution of all outstanding motions relating to the jurisdiction of this matter in federal court." [3] According to the transferee court, should the Court deny Plaintiff's motion to remand, "this case should be transferred back to the MDL 875 Transferee Court for further action." [4] Prior to the Court receiving the conditional transfer order from the JPML, the Plaintiff re-filed his motion to remand. [5] The Plaintiff re-filed his motion to remand a second time after [*5] the Court received the conditional transfer order. [6] The Court now considers the merits of the Plaintiff's motion.

> 1  Rec. Doc. No. 16. The Plaintiff also moved for Rule 11 Sanctions, withdrew this request (Rec. Doc. 21)
> 2  Rec. Doc. No. 46.
> 3  Rec. Doc. No. 62, Exhibit 1.
> 4  *Id.*
> 5  Rec. Doc. No. 55.
> 6  Rec. Doc. No. 60.

## II. LAW & ANALYSIS

[HN1] The removing defendant carries the burden of showing the existence of federal jurisdiction. *See Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993).* [HN2] As a general matter, the removal statute is to be construed narrowly and in favor of remand to state court. *See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).* Indeed, "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000).* Accordingly, all disputed questions of fact must be resolved in favor of the non-moving party. *See Burden v. Gen. Dynamics Corp., 60 F.3d 213, 216 (5th Cir. 1995).*

The Defendant bases its removal on the Federal Officer Removal Statute, *28 U.S.C. § 1442(a)(1)*, which provides, in pertinent part:

> [HN3] (a) A civil action . . . commenced in a State Court against any of the following [*6] may be removed by them to the district court of the United States for the

district and division embracing the place wherein it is pending:

> (1) The United States . . . or any officer *(or any person acting under that officer)* of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

*28 U.S.C. 1442(a)(1)* (emphasis added).

[HN4] Though generally remand to state court is favored when removal jurisdiction is questionable, removal jurisdiction under the Federal Officer Removal Statute must be broadly construed. *See Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969); see also Watson v. Philip Morris Companies, 551 U.S. ___, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007)* (internal citations omitted). The Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction. *See Louisiana v. Sparks, 978 F.2d 226 (5th Cir. 1992).*

However, liberal construction does not mean that the statute's broad language should be interpreted to imply limitless application. *Watson, 551 U.S. at ___, 168 L. Ed. 2d at 44* (reviewing statutory history, context, purpose and language and finding that fact that federal agency directs, supervises, and monitors company's activities [*7] in considerable detail does not bring company within scope of statute's language). As the purpose of this statute is to provide a federal forum in cases where federal officials are entitled to raise a defense arising out of their official duties, *see Arizona v. Manypenny, 451 U.S. 232, 241, 101 S. Ct. 1657, 68 L. Ed. 2d 58 (1981); Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 398 (5th Cir. 1998),* the United States Supreme Court has consistently repeated that the "statute authorized removal by private parties 'only' if they were authorized to act with or for federal officers or agents in affirmatively executing duties under...federal law." *168 L. Ed. 2d at 44.*

[HN5] The Federal Officer Removal Statute only confers jurisdiction if the removing defendant establishes that the tortfeasor or involved individual is a "person," [7] who (1) acted under color of federal authority when committing the allegedly tortious conduct, (2) can demonstrate a causal nexus between the plaintiff's claims and defendant's actions performed under color of office, and lastly, (3) can assert a federal defense to the plaintiff's

claims. *See Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 398 (5th Cir. 1998)* (applying test elucidated by the United States [*8] Supreme Court in *Mesa v. California, 489 U.S. 121, 131-32, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989)*).

> 7  In the present case, the parties do not dispute that the removing Defendant, Peter Territo, or Northrop is a "person" for purposes of the statute. *See Winters, 149 F.3d at 398* (corporate entities qualify as "persons" within statute's meaning).

Defendant Territo argues that he acted under color of federal authority because (1) U.S. Government inspectors closely monitored the shipyard's compliance on a daily basis due to contractually-stipulated safety regulations; (2) federal asbestos safety regulations which set standards for safe daily exposure to asbestos were specifically incorporated into the contracts; (3) U.S. Government inspectors constantly monitored the ship construction process for compliance with all contract terms; and (4) the use of asbestos insulation was required by the U.S. Government. He further argues that a causal connection can be demonstrated between his acts committed at the direction of the federal government and the plaintiff's claims, and that he can assert colorable federal defenses as he is entitled to immunity under the government contractor defense and the Longshore Harbor Workers Compensation [*9] Act ("LHWCA").

The Court now addresses whether this argument satisfies the *Mesa* test for all of the Plaintiff's claims.

[HN6] Courts frequently look at the "federal direction" and "causal nexus" prongs of the *Mesa* test together as they are so closely related-- the Defendant must establish a "causal nexus" between the alleged tortious conduct and the acts performed by the defendant under the direction of a federal officer. *See, e.g. Winters, 149 F.3d at 398.* Determination of the "federal direction" prong depends on "the level of official control, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit." *Guillory, 872 F. Supp. at 346* (internal citation omitted). The United States Supreme Court recently interpreted the meaning of the words "acting under" in the context of *Section 1442(a)(1).* The Court elucidated that "the word 'under' must refer to what has been described as a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'" *Watson, 551 U.S. at ___, 168 L. Ed. 2d at 45* (internal citation omitted). "That relationship typically [*10] involves 'subjection, guidance, or control.'" *Id.* "[T]he private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of a federal superior." *Id.* (finding private person's mere

compliance or non-compliance with law does not fall within statute scope's and constitute statutory basis for removal). Thus, "[f]ederal direction requires more than general auspices of a federal officer, or participation in a regulated industry." *Bradley v. Northrop Grumman Systems, 2007 U.S. Dist. LEXIS 45965, 2007 WL 115246, at *2 (E.D. La. 4/12/07)* (citing *Savoie v. Northrop Grumman Ship Systems, Inc., No. 05-02086, 2005 U.S. Dist. LEXIS 45248 (E.D. La. 2005)* and *Mouton v. Flextallic, Inc., 1999 U.S. Dist. LEXIS 5632, 1999 WL 225438, at *2 (E.D. La. 4/19/99)); Ryan v. Dow Chemical Co., 781 F.Supp. 934, 947 (E.D.N.Y. 1992).* "[T]he defendant must show strong government intervention and the threat that a defendant will be sued in state court based on actions which follow federal direction." *Bradley, 2007 U.S. Dist. LEXIS 45965, 2007 WL 115246, at *2* (citing *Mouton, 1999 U.S. Dist. LEXIS 5632, 1999 WL 225438, at *2-3)* (internal quotation omitted).

As regards the Plaintiff's failure to warn claims, the Defendant's argument that he was acting under the authority of a federal officer due to contractually mandated [*11] regulatory compliance and government monitoring is negated by the Plaintiffs' submission of affidavits and depositions which prove otherwise. The Plaintiff submits the affidavit of Mr. Felix Albert, a United States Navy ship inspector at Avondale from 1965 to 1976. Mr. Albert states in his sworn affidavit that

> Avondale employees did not work under the direct orders of a ship inspector and Avondale employees did not act under the direction of a ship inspector. The United States government inspectors neither monitored nor enforced safety regulations. On the job safety during the construction of vessels for the United States government was the responsibility of Avondale Shipyards' safety department.

Pl.'s Ex. 14 (Affidavit of Felix Albert).

The Plaintiff further points to Mr. Territo's deposition testimony in which he states that the shipyard's safety department was independent from and not under the control of the federal officers aboard the vessels in question. Pl.'s Ex. 15 (Deposition of Peter Territo, 9/26/96, cited in Gauthe case). Moreover, Eddie Blanchard, the shipyard's Superintendent of Outfitting during the relevant period and a former executive officer, stated that no federal [*12] officer directed or controlled the safety department, the construction of commercial vessels was done under general regulations, and no federal officer had authority over Mr. Territo or Mr. Blanchard

himself. Pl.'s Ex. 16 (Deposition of Eddie Blanchard, 9/25/96).

Lastly, the Plaintiff points to a line of factually-similar cases decided in this District and one from California which held that the removing defendant could not prove that the federal government restricted the defendant's ability to warn the plaintiff(s) of asbestos' dangers. *See Gauthe v. Asbestos Corp., 1997 U.S. Dist. LEXIS 112, 1997 WL 3255 (E.D. La. 1997); Porche v. Flexitallic, Inc., 1996 U.S. Dist. LEXIS 15877, 1996 WL 603919 (E.D. La. 1996); Savoie v. Northrop Grumman, No. 05-2086, 2005 U.S. Dist. LEXIS 45248 (E.D. La. 2005); Mouton v. Flexitallic, Inc., 1999 U.S. Dist. LEXIS 5632, 1999 WL 225438 (E.D. La. 4/19/99); Guidroz v. Anchor Packing,* No. 98-3709 (E.D. La. 1999); and *Overly v. Raybestos-Manhattan, 1996 U.S. Dist. LEXIS 13535, 1996 WL 532150 (N.D. Ca. 1996).* These cases held that, [HN7] in the context of failure to warn, the government, at a minimum, had to provide some level of direct control over warnings and the defendant failed to establish that this was the case. This in turn negated the existence of a causal nexus because the defendant could not [*13] show that the government's direction and control of activities directly interfered with the defendant's ability to fulfill its state law obligation to warn employees of safety hazards. [8] *See Maryland v. Soper, 270 U.S. 9, 22, 46 S. Ct. 185, 70 L. Ed. 449 (1926)* ("There must be come causal connection between what the officer has done under asserted federal authority and the state prosecution. It must appear that the [state] prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law."). Thus, under the causal nexus prong, there was no basis for federal officer jurisdiction for the failure to warn claims. *See McFarlain, 05-1406, 2006 U.S. Dist. LEXIS 95421 at *7.*

8  For example, in *Mouton,* the court wrote that

[a]lthough Avondale arguably "acted under" the Navy's direction when working by detailed instructions to build the destroyers, the specifications under the contract specified technical parameters, and only had more general references to safety regulations. The federal government provided no direction on warnings when using asbestos, and further did not prevent Avondale from taking its own safety precautions above the minimum standards incorporated in the federal contracts.  [*14] Thus, the Court finds that Avon-

dale has failed to establish a causal connection between the Navy's direction pursuant to the design contracts and plaintiffs failure to warn claims.

*Mouton, 1999 U.S. Dist. LEXIS 5632, 1999 WL 225438, at * 3.*

Moreover, even assuming that Defendant Territo could establish the "federal direction" and "causal nexus prongs" for the failure to warn claims, he cannot establish that a colorable federal defense exists for these claims. [HN8] The removing defendant is not required to establish that their federal defense is meritorious in order to satisfy § 1442(a)(1), but must only demonstrate that a *colorable* claim to such defense has been made. *Guillory v. Ree's Contract Serv., Inc., 872 F. Supp. 344, 346 & n.4 (S.D. Miss. 1994)* (citing *Mesa, 489 U.S. at 124-25*). The Defendant asserts that he has a colorable claim to a contractor defense as articulated in [HN9] *Boyle v. United Technologies Corp., 487 U.S. 500, 513, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988),* which holds that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States [*15] about the about the dangers in the use of the equipment that were known to the supplier but not to the United States." Additionally, a uniquely federal interest must be involved and a conflict must exist between the federal policy and the state duty of care. *Id. at 506-08.* Though *Boyle* involved a products liability manufacturing defect case, it has been extended to the failure to warn context as well. *See Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 400-01 (5th Cir. 1998)* (applying *Boyle* test to instance where government prohibited contractor from placing warning on products). However, *Boyle's* government contractor defense in the failure to warn context requires that a federal authority exercise *some degree of direct* influence over the contractor's activities with respect to warnings. *See McFarlain, 05-1406, 2006 U.S. Dist. LEXIS 95421 at *14.* Thus, it is unavailable as a colorable federal defense in this case.

The Defendant next argues that for application of *Lalonde v. Delta Field Erection,* 1998 WL 34301406 (M.D. La. Aug. 6, 1998), which held that in a failure to warn case, when the federal government does not prevent a contractor-defendant from issuing warnings, removal may still be appropriate. [*16] *See McFarlain, 05-1406, 2006 U.S. Dist. LEXIS 95421 at *11.* The *Lalonde* case was decided before the United States Supreme Court issued *Boyle,* which set parameters for immunity under

the government contractor defense, including the requirement that a conflict exist between the contractor's federal authority and its duties under state law. *McFarlain*, 05-1406, at 8. This argument must be rejected.

Additionally, courts which have looked at the Defendant's other asserted colorable defense under the LHWCA in the context of failure to warn have consistently rejected this defense as well. *See, e.g., McFarlain, 05-1406, 2006 U.S. Dist. LEXIS 95421 at *13; Mouton, 1999 U.S. Dist. LEXIS 5632, 1999 WL 225438, at *3-4; Bartley, 1996 U.S. Dist. LEXIS 3755, 1996 WL 68482, at *4; Gauthe, 1997 U.S. Dist. LEXIS 112, 1997 WL 3255, at *3-4; Bradley, 2007 U.S. Dist. LEXIS 45965, 2007 WL 1115246, at *3, Sheppard v. Northrop Grumman Systems Corp., 2007 U.S. Dist. LEXIS 38463, 2007 WL 1550992, at *6 (E.D. La. 5/24/07).*

Thus, the *1442(a)(1)* jurisdictional requirements are not met for the failure to warn claims.

### III. CONCLUSION

Accordingly, the Plaintiff's Motion to Remand is GRANTED and IT IS ORDERED that this case is hereby REMANDED to the Civil District Court for the Parish of Orleans, State of Louisiana..

New Orleans, Louisiana, this 3rd day of July, 2008.

/s/ Eldon E. Fallon

UNITED STATES DISTRICT JUDGE

Westlaw

Not Reported in F.Supp.                                          Page 1
Not Reported in F.Supp., 1997 WL 3255 (E.D.La.)
(Cite as: Not Reported in F.Supp.)

Gauthe v. Asbestos Corp.
E.D.La.,1997.
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
Dorothy Reed GAUTHE, et al.,
v.
ASBESTOS CORP., et al.
No. Civ. A. 96-2454.

Jan. 2, 1997.

*ORDER AND REASONS*

DUVAL, District Judge.

  *1 A Motion to Remand and a Motion for Sanctions
pursuant to 28 U.S.C. § 1447(c) were brought by
plaintiffs, Dorothy Reed Gauthe, Paul Gauthe, Helen
Cantrelle, Marion Fleming and Anne Richwine
("plaintiffs") and came for argument before the Court.
Having listened to argument of counsel and having
reviewed the pleadings, memoranda, deposition
testimony, affidavits and the relevant law, the Court finds
that this matter must be remanded to the 24th Judicial
District Court for the Parish of Jefferson, State of
Louisiana for the reasons that follow.

Background

  The surviving spouse and major children of Earlven
Gauthe filed the instant petition for damages in the 24th
Judicial District Court for the Parish of Jefferson on July
2, 1996. The gravamen of this survival action centers on
damages flowing from Mr. Gauthe's death which
allegedly was caused by his exposure to asbestos.

Plaintiffs contend that this exposure occurred while he
was employed at Avondale Industries, Inc. Included as
defendants are the Avondale Insurers[FN1], Avondale
Industries, Inc., and the Avondale Supervisors[FN2]
(collectively, the "Avondale Interests").[FN3] As to the
Avondale Interests, suit is limited to (1) a failure to
apprise Mr. Gauthe of the fact that he was working with
and/or around hazardous asbestos containing dust, (2)
failure to warn him of the dangers/hazards of asbestos
dust and (3) failure to provide him a safe place to work by
not warning him of the fact that he was working with
asbestos and that asbestos dust was dangerous. Thus, no
"design defect" allegations are made with respect to the
Avondale Interests, and the failure to provide a safe work
environment is limited specifically to the failure to
warn.[FN4]

  FN1. The Avondale Insurers are Travelers
  Insurance Company, Highlands Insurance
  Company, American Motorists Insurance
  Company and Commercial Union Insurance
  Company.

  FN2. The Avondale Supervisors are John
  Chantrey, Peter Territo and J.D. Roberts. Each
  of these men is accused of being responsible for
  damages sustained by Earlven Gauthe and his
  surviving family arising from Mr. Gauthe's
  employment by Avondale Shipyards, Inc. (n/k/a/
  Avondale Industries, Inc.).

  FN3. It is interesting to note that Mr. Gauthe's
  tort suit was heard in state court and resulted in
  an award there.

  FN4. This fact was raised during oral argument

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 3255 (E.D.La.)
(Cite as: Not Reported in F.Supp.)

and later verified by plaintiffs' counsel.

The Avondale Interests removed this matter 21 days later pursuant to 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute. They claim that this action involves persons--namely the Avondale Supervisors and Avondale itself-- acting under the authority of an officer of the United States because of the alleged supervision of the United States government with respect to the actual construction of naval ships at the Avondale facility. Thus, they claim removal is proper under § 1442(a)(1) because:

(a) they can raise, as federal defenses, immunity under the "government contractor immunity" defense and under the LHWCA, and (b) because they can demonstrate a causal nexus between the injuries claimed by Gauthe's successors and the acts they performed under the strict supervision of and compliance with the United States government. Boyle v. United States Technologies, Inc., 487 U.S. 500, 108 S. Ct. 2510, (1988)....

(Doc. 1, Notice of Removal, ¶ 14).

Is Removal Proper?

The burden of proof for establishing federal jurisdiction is placed upon the party seeking removal. Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S. Ct. 35 (1921). "If the right to remove is doubtful, the case should be remanded." Ryan v. Dow Chemical Co., 781 F. Supp. 934, 939 (E.D.N.Y. 1992) (citations omitted); see Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir. 1979).

*2 The United States Court of Appeals for the Fifth Circuit recognizes that § 1442(a)(1) provides the only exception to the well-pleaded complaint rule found in

Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 29 S. Ct. 42 (1908).Aquafaith Shipping, Ltd. v. Jarillas, 963 F.2d 806 (5th Cir.)cert. denied, 113 S. Ct. 413 (1992) (citing Mesa v. California, 489 U.S. 121, 136-37, 109 S. Ct. 959, 968 (1989)). Thus, by virtue of this federal statute, where "a person" "acting under" federal officers can present a colorable "government contractor defense" or other federal law defense, the case is removable by such a "person." Ryan v. Dow Chemical Co., 781 F. Supp. 934, 939 (E.D.N.Y. 1992) (emphasis added). The power to remove is absolute, provided the proper procedures are followed. Id. (citing Willingham v. Morgan, 395 U.S. 402, 406, 89 S. Ct. 1813 (1969).SeeWright & Miller, Federal Practice and Procedure, § 3727 at 459 n.35; Doe v. Kerwood, 969 F.2d 165, 168 n. 12 and accompanying text (5th Cir. 1992). There is no need to obtain other defendants' consent.

In Mesa v. California, 489 U.S. 121, 109 S. Ct. 959 (1989), the Supreme Court set forth the criteria necessary to support removal under this statute and reiterated that in order to invoke the removal power of § 1442(a)(1), a "person" seeking removal must allege a federal law defense. Crocker v. Borden, 852 F. Supp. 1322 (E.D.La. 1994) (Livaudais, J.); Akin v. Big Three Indus., Inc., 851 F. Supp. 819 (E.D. Tex. 1994); Ryan. 781 F. Supp. at 943. Thus, Mesa provides a three pronged inquiry which requires the moving "person" acting "under a federal officer" to:

(1) demonstrate that it acted under the direction of a federal officer;

(2) raise a colorable federal defense to the plaintiffs' claims; and

(3) demonstrate a causal nexus between plaintiffs' claims and acts it performed under color of federal office.

Crocker, 852 F. Supp. at 1325. There is no dispute that the removing defendants are "persons" for purposes of the statute. However, all three Mesa factors must be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                            Page 3
Not Reported in F.Supp., 1997 WL 3255 (E.D.La.)
(Cite as: Not Reported in F.Supp.)

met for removal to be proper, and the failure to find a causal nexus between plaintiffs' claims and acts defendants performed under color of federal office would render the removal of this matter improper. Thus, pretermitting whether the Avondale Interests were acting under the direction of a federal officer and whether government contractor immunity or the LHWCA provide a "colorable" federal defense to this matter, the Court will analyze the third prong.

### Causal Nexus

As framed by the court in *Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal. Sept. 9, 1996:
The final requirement under the *Mesa* test is that there be a causal nexus between the rules imposed by the United States on the defendant contractor by the federal government and the liability asserted by plaintiff. "There must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the [state] prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law." *Maryland v. Soper., 270 U.S. 9, 22 (1926)*.

*3 The *Overly* case is strikingly similar to the case at bar, and the Court finds its reasoning compelling.

This case against the Avondale Interests centers on their failure to warn; plaintiffs' allegations even with respect to a failure to provide a workplace free from the hazards of asbestos is based upon the failure to warn, not the presence of the asbestos itself or the ways and manner in which it was handled. There is no evidence that the Government restricted or prohibited Avondale's ability to notify individuals of the presence of asbestos in the work environment. Assuming that Avondale built ships under the direct supervision of the federal government, nothing about that supervision prevented Avondale from warning Mr. Gauthe about the dangers. Thus, there is no causal connection between the injury alleged by Mr. Gauthe with respect to Avondale's failure to warn and Avondale working on behalf of the federal government.

The Avondale Interests opine in a Supplemental Memorandum that somehow the causal nexus issue is met solely by virtue of the requirements of the contract under which Avondale labored. In essence they argue that to the extent they complied with the contract, any derogation Avondale may have committed with respect to its state law responsibilities to its employees should be excused, and therefore, the nexus is met. However, to the extent that argument apparently hinges on the government contractor defense, it is inapplicable.

Furthermore, the examples given ring hollow as well. For instance, the Avondale Interests state:
Another aspect of the defense is and will be that federal asbestos requirements not only did not require all employees who might be exposed to asbestos to wear respirators, but prohibited the use of respirators except where acceptable "control measures" were impractical to create safe asbestos dust levels."

In reality the provision upon which this affirmation was based is found in the Walsh-Healey Act, (Exhibit "B", Memorandum in Opposition to Remand, p. 22) states:(c) *Personal protective equipment.*--Where the above methods are impractical, personal protective equipment suited to the hazards and conditions involved should be provided. However, such equipment should not be used in lieu of suitable control measures.

This argument is simply meritless.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 4
Not Reported in F.Supp., 1997 WL 3255 (E.D.La.)
(Cite as: Not Reported in F.Supp.)

Colorable Defense

Furthermore, even if there were a causal connection, as emphasized in the *Mesa* decision, federal officer removal must be predicated on the allegation of a colorable federal defense. The Avondale interests contend that they have presented the Court with two colorable federal defenses--the Longshore Harbor Workers Compensation Act's co-employee immunity under 33 U.S.C. § 933(i) and albeit not briefed, but discussed during oral argument, "government contractor immunity" as delineated in *Boyle v. United Technologies Corp.*, 108 S. Ct. 2510 (1987).

Plaintiffs seek recovery based on Louisiana state law causes of action. The Louisiana Supreme Court has specifically recognized that persons who were injured while engaged in shipbuilding can maintain actions under Louisiana compensation statutes or under the LHWCA; thus, such persons can avail themselves of the Louisiana law which allowed suits against executive offices and fellow servants until 1976 provided that such persons have not elected to accept LHWCA benefits. *Poche v. Avondale Shipyards, Inc.*, 339 So. 2d 1212 (La. 1976). The instant plaintiffs rely on these dictates for recovery. However, the Avondale Interests ask this Court to ignore this long standing state law based on the Alabama Supreme Court's interpretation of the United States Supreme Court's decision in *Sun Ship, Inc. v. Pennsylvania*, 100 S. Ct. 2432 (1980) in *Fillinger v. Foster*, 448 So. 2d 321 (Ala. 1984).

*4 The Supreme Court in *Sun Ship* held that the 1972 extension of federal jurisdiction in this arena supplements, rather than supplants state compensation law. *Sun Ship*, 100 S. Ct. 2436. The Supreme Court did not address § 933(i)'s co-employee immunity under the LHWCA and whether that bar should pre-empt state law to the contrary. This Court is unpersuaded by the Alabama court's reasoning.

In addition, contrary to the Avondale Interests' contention, unlike *Grantham v. Avondale Industries, Inc.*, 964 F.2d 471 (5th Cir. 1992), there is no Fifth Circuit case law that conflicts with *Poche* which this Court might be required to follow given the edict in *Grantham.* In *Grantham*, an injured subcontractor worker who had received benefits under the LHWCA brought a negligence and strict liability action against the contractor which was constructing the ship. The district court held that the contractor was immune as the statutory employer of the plaintiff applying Louisiana state decisional law on this issue. The district court did so based on its belief that as the sole basis for jurisdiction was diversity, the court should apply state decisional law, not federal decisional law with respect to whether the statutory employer bar applied.

The Fifth Circuit reversed the district court because the question of immunity was one governed by federal law. Because the Fifth Circuit had not recognized statutory immunity under the LHWCA in previous decisions, *Martin v. Ingalls Shipbuilding*, 746 F.2d 231 (5th Cir. 1984), the court found that the district court erred in finding that statutory immunity applied in that case. However, in so doing, the *Grantham* court recognized that the Fifth Circuit decisional rule with respect to statutory immunity might be erroneous. It stated:

We recognize that our decisions in *Jenkins* and *Martin* did not address the Supreme Court's holding in *Sun Ship Inc. v. Pennsylvania*, 447 U.S. 715, 100 S. Ct. 2432, 65 L.Ed.2d 458 (1980), where the court held that the LHWCA supplements rather than supplants state workers' compensation schemes. We do not purport to address *Sun Ship* here; nor do we consider whether our decision in *Martin* or those of the Fourth Circuit and the courts of Louisiana reach the better result. There is a powerful argument that we have taken a wrong turn. A

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 3255 (E.D.La.)
(Cite as: Not Reported in F.Supp.)

conflict between the Fourth and Fifth Circuits over a significant maritime issue should not be left unresolved by our court en banc. This panel can only say that it is bound by the prior decisions of this court as was the district court.

*Grantham,* 964 F.2d at 474.

Thus, even that panel of the Fifth Circuit recognized that *Sun Ship* very well may require a recognition of state decisional law in such a context. Indeed, the Supreme Court in *Sun Ship* stated:

Thus, even were the LHWCA exclusive within its field, many employers would be compelled to abide by state-imposed responsibilities lest a claim fall beyond the scope of the LHWCA....

*5 Of one thing we may be certain. The exclusivity rule which appellant urges upon us would thrust employees into the same jurisdictional peril form which they were rescued by *Davis* and *Calbeck v. Travelers Insurance Co.* See Gilmore & Black 425. The legislative policy animating the LHWCA's landward shift was remedial; the amendments' framers acted out of solicitude for the workers.... To adopt appellant's position, then would blunt the thrust of the 1972 amendments, and frustrate Congress' intent to aid injured maritime laborers. We decline to do so in the name of "uniformity."

*Id.* at 2439.

Furthermore, in *Grantham,* Grantham had received federal benefits. There is no evidence in this record that Mr. Gauthe has ever accepted LHWCA benefits and thus is distinguishable on that basis.

Finally, what is most disturbing to this Court with

relation to this case is that there was a full adjudication with respect to Mr. Gauthe and his injury at Avondale in state court. This "defense" was never raised in the state proceeding; issues of estoppel and res judicata might be at play here.

With respect to the second "colorable" federal defense, that being the government contractor defense as delineated in *Boyle,* 108 S. Ct. 2518, it is inapplicable in this instance.[FN5] This is not a design defect case as this defense is framed in *Boyle,* it is a failure to warn case. Avondale did not manufacture the asbestos in question. Nor has Mr. Gauthe sued Avondale because the asbestos was of faulty design or improperly manufactured. He has sued Avondale solely for its failure to warn. To stretch the government contractor defense to encompass something other that a design defect or manufacturing defect is not indicated here.

FN5. In *Boyle v. United Technologies Corp.,* 108 S. Ct. 2510 (1988), the Supreme Court held that:

liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Smith v. Xerox Corp.,* 866 F.2d 135, 136-67 (5th Cir. 1989).

Mindful that ambiguities are generally construed against removal, *Butler v. Polk,* 592 F.2d 1293, 1296 (5th Cir. 1979), and finding that there is no the causal nexus required or a colorable defense available to the Avondale Interests, this Court has no jurisdiction over this matter, and it must be remanded to state court pursuant to 28 U.S.C. § 1447(c).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 3255 (E.D.La.)
(Cite as: Not Reported in F.Supp.)

## Motion for Sanctions

Section 1447(c) provides for an award of costs and expenses including attorney fees on a motion for remand on the basis of lack of federal subject matter jurisdiction. It is entirely within the discretion of the Court to award such fees. However, considering the complexity of the issue presented, the Court finds that such an award is not warranted. Accordingly,

IT IS ORDERED that pursuant to 28 U.S.C. § 1447(c), as this Court has no jurisdiction over this matter, the Motion to Remand is GRANTED, and the case is REMANDED to the 24th Judicial District Court for the Parish of Jefferson.

IT IS FURTHER ORDERED that the Motion for Sanctions is DENIED.

E.D.La.,1997.
Gauthe v. Asbestos Corp.
Not Reported in F.Supp., 1997 WL 3255 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)
(Cite as: 1999 WL 225438 (E.D.La.))

not prevent Avondale from taking its own safety precautions above the minimum standards incorporated in the federal contracts. Thus, the Court finds that Avondale has failed to establish a causal connection between the Navy's direction pursuant to the design contracts and plaintiff's failure to warn claims.

*2. Federal defense*

Under the third prong [FN2], the federal defense must only be alleged, not proven, because "the validity of the defense ... is a distinct subject" separate from the jurisdictional question. *Mesa,* 109 S.Ct. at 964. In general, satisfaction of the "acting under" prong for § 1442(a)(1) removal has provided sufficient evidence to establish a "colorable" government contract immunity defense. *See, e.g., Winters,* 149 F.3d at 400;*Blacknun,* 1997 WL 703773, at *3. However, the defendants claim a defense under the LHWCA, not government contractor immunity.

Section 933(i) of the LHWCA provides the exclusive remedy when an employee is injured by a co-employee's negligence. 33 U.S.C. 933(i). However, concurrent "twilight zone" jurisdiction exists between the LHWCA and state compensation statutes. *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715 (1980). The question of 933(i)'s pre-emptive effect on Louisiana compensation law in the "twilight zone" of concurrent jurisdiction remains unanswered by the Fifth Circuit. *See, e.g., Gauthe,* 1997 WL 3255, at *3. The defendants argue that the pre-emptive issues created by the case law satisfy the burden of raising the defense for purposes of removal.

*4 The defendants have not put forth any evidence that the plaintiffs have received LHWCA benefits. The Court rejects the proposition that the presence of an unresolved legal issue alone creates a colorable federal defense.

*C. Attorneys' Fees*

A court, in its discretion, may award a plaintiff's "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" when granting a motion for remand for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). However, the case law presented by both parties in the context of these facts raises issues of sufficient complexity that such an award would be unwarranted at this point. *See, e.g., Gauthe v. Asbestos Corp.,* No. Civ. A. 96-2454, 1997 WL 3255 (E.D.La.).

Accordingly,

IT IS ORDERED THAT the plaintiff Wilton David Monton's motion for remand be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that Civil Action No. 99-0162, Monton v. Flexitallic, Inc. et al.; Civil Action No. 99-0159, Hebert v. Flexitallic, Inc. et al.; Civil Action No. 99-0160, Richard v. Flexitallic, Inc. et al.; Civil Action No. 99-0405, Bircher v. Flexitallic, Inc. et al.; and Civil Action No. 99-0482, Dempster v. Flexitallic, Inc. et al., be, and is hereby, REMANDED to Civil District Court, Parish of New Orleans, State of Louisiana.

FN1. Some courts define the *Mesa* test as a four-prong approach that has an "acting under" prong and a "causal nexus" prong. *See, e.g., Gauthe v. Asbestos Corp.,* No. Civ. A. 96-2454, 1997 WL 3255 (E.D.La.); *Overlvy. Raybestos-Manhattan,* No. C-96-2853, 1996 WL 532150 (N.D.Cal.). However, the Fifth Circuit recently defined the second prong as both "that the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims." *Winters,*

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)
(Cite as: 1999 WL 225438 (E.D.La.))

Page 5

149 F.3d at 398.

FN2. Although the defendants' failure to establish
the second prong doom their removal attempt under
§ 1442(a)(1), the Court briefly adds its reasoning
under the third prong to the myriad of district court
opinions on the subject.

Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)
(Cite as: 1999 WL 225438 (E.D.La.))

Page 1

©Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
Wilton David MOUTON
v.
FLEXITALLIC, INC., et al.
No. CIV. A. 99-0162.

April 14, 1999.

ORDER AND REASONS

PORTEOUS, District J.

*1 This cause came for hearing on March 16, 1999 upon a Motion for Remand filed by plaintiff Wilton David Mouton (Mouton). Upon agreement of the parties, this ruling applies to Civil Action Numbers 99-162; 99-159; 99-160; 99-405; and 99-482. For the reasons outlined below, the Court GRANTS the plaintiff's motion and REMANDS the following cases to Civil District Court for the Parish of New Orleans, State of Louisiana, for further proceedings:

```
Mouton v. Flexitallic, Inc. et al.     No. 99-0162
Hebert v. Flexitallic, Inc. et al.     No. 99-0159
Richard v. Flexitallic, Inc. et al.    No. 99-0160
Bircher v. Flexitallic, Inc. et al.    No. 99-0405
Dempster v. Flexitallic, Inc. et al.   No. 99-0482
```

I. BACKGROUND

This case involves multiple plaintiffs alleging numerous theories of liability under state law against multiple defendants for damages based on asbestos exposure. The

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)
(Cite as: 1999 WL 225438 (E.D.La.))

petition was originally filed in state court in 1995. On December 22, 1998, an amended petition was filed adding Avondale and its executive officers for failure to warn about the dangers of asbestos, and failure to provide a safe place to work. The defendant Kennedy, as an Avondale executive officer in charge of safety, filed a motion to remove the case to this Court.

The defendants seek removal based on 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute. The defendants claim that they were acting under the authority of various branches of the United States (the Navy, the Federal Maritime Commission) when building the ships during the relevant time frame. The defendants raise the Longshore and Harbor Workers' Act (LHWCA) as their federal defense. The defendants also mention the "government contractor immunity" defense in their Motion to Remove (p.8), but deny they are asserting that defense in their Motion in Opposition to Remand (p. 41).

Plaintiff Wilton David Mouton's case was chosen for oral argument, but the parties have agreed that the court's ruling will apply to all the petitions to remand filed by the plaintiffs listed above.

II. LEGAL ANALYSIS

A. Legal Standard for Remand

A case may be removed to federal court under 28 U.S.C. § 1442(a)(1) when "any officer (or any person acting under that officer) of the United States... [is] sued in an official capacity for any act under color of such office...." 28 U.S.C. § 1442(a)(1) (Supp. II 1996). The defendants bear the burden of establishing removal jurisdiction. Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 397 (5th Cir.1998).

Supreme Court cases interpreting § 1442(a)(1) have held that the right of removal "ensure[s] a federal forum in any case where a federal officer is entitled to raise a defense arising out of his official duties." Arizona v. Manypenny, 451 U.S. 232, 241 (1981). The importance of the right requires liberal interpretation of the removal statute. Winters, 149 F.3d at 398 (citing Willingham v. Morgan, 395 U.S. 402, 407 (1969)).

B. Jurisdiction under the "Federal Officer" Statute

*2 In general, an alleged defense to a state law issue, even if it raises a federal question, is insufficient to confer subject matter jurisdiction to satisfy removal. Merrill Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986). However, 28 U.S.C. § 1442(a)(1) provides an exception when the defendant can meet a three-prong test developed from Mesa v. California, 489 U.S. 121 (1989):
   1) the defendant is "a person;"
   2) the defendant acted under the direction of a federal officer [FN1]; and
   3) the defendant raises a colorable federal defense.

For the first prong, both an individual and a corporation qualify as a "person" under § 1442(a)(1). Winters, 149 F.3d at 398. The parties do not dispute that Avondale satisfies the first prong of the Mesa test.

1. Causal Nexus Pursuant to Federal Direction

Under the second prong, § 1442(a)(1) applies to governmental contractors when they can demonstrate a "causal nexus" between the plaintiffs' claims and the acts performed under the "color of federal office." Mesa, 489 U.S. at 131-32. The "color of federal office" prong should not be construed narrowly, but does require "a federal interest in the matter." Winters, 149 F.3d at 398 (quoting Mesa, 489 U.S. at 139).

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)
(Cite as: 1999 WL 225438 (E.D.La.))

Prior decisions analyzing what constitutes federal direction have required more than "general auspices" of a federal officer, or participation in a regulated industry. *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 946(E.D.N.Y.1992). Instead, the defendant must show "strong government intervention and the threat that a defendant will be sued in state court" based on actions which follow federal direction. *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Ca.1992).

Defendants argue that sufficient federal control was exhibited to satisfy the second prong of the *Mesa* test. The defendants offer numerous exhibits consisting of contract specifications, material specifications, and inspection procedures. The defendants point out that the Navy required the use of asbestos, and performed safety inspections for compliance with the Walsh-Healey Act, the LHCWA, and Department of Labor regulations, all incorporated by reference in the military contracts. The defendant also offers affidavits of Avondale employees testifying that regulations regarding the handling of asbestos were enforced by safety inspections from the Navy and the Department of Labor. The defendants assert that the "causal nexus" requirement under *Mesa* does not require that the act complained of, i.e., failure to provide warnings, was federally authorized or mandated, but only that the act occurred within the course of Avondale's duties to the Navy.

On the other hand, plaintiffs argue that they are alleging strict premises liability and negligence, not product liability or defective design. Thus, Avondale can only satisfy the causal nexus prong if the government directed Avondale's activities regarding warnings and safety procedures to follow when working with asbestos. The plaintiff argues that the contract specifications of the naval vessels do not provide specific information regarding warnings for exposure to asbestos, and Avondale had the ability to provide safe working conditions beyond the minimum requirements that were federally mandated under the contract. Further, the plaintiff points out that exposure to asbestos occurred while building both government and commercial vessels. *See* Plaintiff's Reply Memorandum in Support of Motion to Remand, at p. 7-8.

*3 The Court finds the plaintiff's line of reasoning persuasive. Admittedly, several cases have found the federal governments' numerous technical specifications for design materials, working condition standards incorporated by reference in the contract, and inspections for compliance were sufficient to establish the causal link required under § 1442(a)(1). *See Lalonde v. Delta Field Erection, et. al*, No. 96-3244-B-M3 (M.D.La.1998) (silica exposure at U.S. rubber facility operated by a government contractor); *Blackmun v. Asbestos Defendants (BHC)*, No. C-97-3066, 1997 WL 703773 (N.D.Cal.) (Asbestos exposure while government contractor manufactured rocket motors for the USAF); *Fung*, 816 F.Supp. at 572-73 (asbestos exposure while government contractor manufactured submarines at U.S. naval facility). The Court notes that two of these cases involved operation of federally-owned facilities, and are thus distinguishable under the "causal nexus" analysis.

However, other cases have rejected the theory that the federal government's contractual design specifications satisfy the causal link required absent express contractual government specifications regarding warnings. *See, e.g., Gauthe*, 1997 WL 3255, at *2; *Overly*, 1996 WL 532150, at *4. This Court concludes that recent Fifth Circuit precedent supports this analysis. *See Winters*, 149 F.3d at 397 (finding removal proper in a failure to warn case when government's contract specifications for the manufacture of Agent Orange included provisions for packaging and transport, and specific prohibitions against warnings on the barrels).

Although Avondale arguably "acted under" the Navy's direction when working by detailed instructions to build the destroyers, the specifications under the contract specified technical parameters, and only had more general references to safety regulations. The federal government provided no direction on warnings when using asbestos, and further did

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)
(Cite as: 1999 WL 225438 (E.D.La.))

not prevent Avondale from taking its own safety precautions above the minimum standards incorporated in the federal contracts. Thus, the Court finds that Avondale has failed to establish a causal connection between the Navy's direction pursuant to the design contracts and plaintiff's failure to warn claims.

*2. Federal defense*

Under the third prong [FN2], the federal defense must only be alleged, not proven, because "the validity of the defense ... is a distinct subject" separate from the jurisdictional question. *Mesa,* 109 S.Ct. at 964. In general, satisfaction of the "acting under" prong for § 1442(a)(1) removal has provided sufficient evidence to establish a "colorable" government contract immunity defense. *See, e.g., Winters,* 149 F.3d at 400;*Blackman,* 1997 WL 703773, at *3. However, the defendants claim a defense under the LHWCA, not government contractor immunity.

Section 933(i) of the LHWCA provides the exclusive remedy when an employee is injured by a co-employee's negligence. 33 U.S.C. 933(i). However, concurrent "twilight zone" jurisdiction exists between the LHWCA and state compensation statutes. *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715 (1980). The question of 933(i)'s pre-emptive effect on Louisiana compensation law in the "twilight zone" of concurrent jurisdiction remains unanswered by the Fifth Circuit. *See, e.g., Gauthe,* 1997 WL 3255, at *3. The defendants argue that the pre-emptive issues created by the case law satisfy the burden of raising the defense for purposes of removal.

*4 The defendants have not put forth any evidence that the plaintiffs have received LHWCA benefits. The Court rejects the proposition that the presence of an unresolved legal issue alone creates a colorable federal defense.

*C. Attorneys' Fees*

A court, in its discretion, may award a plaintiff's "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" when granting a motion for remand for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). However, the case law presented by both parties in the context of these facts raises issues of sufficient complexity that such an award would be unwarranted at this point. *See, e.g., Gauthe v. Asbestos Corp.,* No. Civ. A. 96-2454, 1997 WL 3255 (E.D.La.).

Accordingly,

IT IS ORDERED THAT the plaintiff Wilton David Mouton's motion for remand be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that Civil Action No. 99-0162, Mouton v. Flexitallic, Inc. et al.; Civil Action No. 99-0159, Hebert v. Flexitallic, Inc. et al.; Civil Action No. 99-0160, Richard v. Flexitallic, Inc. et al.; Civil Action No. 99-0405, Bircher v. Flexitallic, Inc. et al.; and Civil Action No. 99-0482, Dempster v. Flexitallic, Inc. et al., be, and is hereby, REMANDED to Civil District Court, Parish of New Orleans, State of Louisiana.

FN1. Some courts define the *Mesa* test as a four-prong approach that has an "acting under" prong and a "causal nexus" prong. *See, e.g., Gauthe v. Asbestos Corp.,* No. Civ. A. 96-2454, 1997 WL 3255 (E.D.La.); *Overly v. Raybestos-Manhattan,* No. C-96-2853, 1996 WL 532150 (N.D.Cal.). However, the Fifth Circuit recently defined the second prong as both "that the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims." *Winters,*

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)
(Cite as: 1999 WL 225438 (E.D.La.))

149 F.3d at 398.

FN2. Although the defendants' failure to establish the second prong doom their removal attempt under § 1442(a)(1), the Court briefly adds its reasoning under the third prong to the myriad of district court opinions on the subject.

Not Reported in F.Supp.2d, 1999 WL 225438 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

▷Overly v. Raybestos-Manhattan
N.D.Cal.,1996.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
Robert S. OVERLY and Louise S. Overly Plaintiffs,
v.
RAYBESTOS-MANHATTAN, et al. Defendants.
No. C-96-2853 SI.

Sept. 9, 1996.

ORDER REMANDING CASE TO SUPERIOR COURT

ILLSTON, District Judge.
    *1 On September 6, 1996, the Court heard argument
on plaintiffs' motion to remand. Having considered the
arguments of counsel and the papers submitted, the Court
hereby GRANTS plaintiffs' motion to remand this case to
San Francisco County Superior Court. The Court also
GRANTS plaintiffs' motion for attorney fees and costs
under 28 U.S.C. § 1447(c).

BACKGROUND

    On April 30, 1996, plaintiffs filed the complaint in this
action in San Francisco County Superior Court. The
Superior Court granted trial preference to the case
pursuant to California Code of Civil Procedure § 36(d),
because Mr. Overly is dying and is expected to survive
only a few months; trial was set for October 7, 1996.

    On August 9, 1996, after the trial date had been set,

defendant Avondale Industries, Inc. removed the case to
federal court pursuant to 28 U.S.C §§ 1441, 1442, and 1446.
On August 20, 1996, plaintiffs filed a motion to remand and
requested that it be heard on an expedited basis.

    According to the allegations of the complaint, plaintiff
Robert Overly was exposed to asbestos while working in
a shipyard in the 1960's. Defendant Avondale controlled
part of the premises of Mr. Overly's employment during
this period of time. Plaintiffs' complaint alleges that
Avondale knew or should have known that the premises
it controlled contained hazardous conditions, namely
products containing asbestos. Plaintiffs further allege that
defendant hired contractors and subcontractors who used
products containing asbestos, but failed to warn
individuals in the surrounding area of the existence of
asbestos or to take precautions against human exposure
to the chemical.

    Plaintiffs allege that, as a result of exposure to
asbestos while working in the shipyard, Mr. Overly
acquired mesothelioma, a cancer usually resulting from
asbestos exposure. In May of this year, Mr. Overly was
diagnosed with six months remaining to live. Plaintiffs
have proceeded against Avondale on the "failure to warn
theory" of products liability.

    Avondale does not contest Mr. Overly's assertion
that he was exposed to asbestos during his work on the
Avondale shipyard. Instead, it claims that the work done
by Mr. Overly consisted primarily of work on naval ships,
and that Avondale is therefore protected by government
contractor immunity. Avondale asserts that it was under
rigid guidelines by the federal government concerning the
design of naval ships. Thus, Avondale asserts that it is
entitled to the protection of the Federal Officer Removal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

Statute, thereby providing grounds for federal jurisdiction.

## LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir.1977). Three potential bases for federal subject-matter jurisdiction are relevant to this suit: (1) federal question jurisdiction under 28 U.S.C. § 1331, [FN1] (2) admiralty jurisdiction under 28 U.S.C. § 1333, [FN2] and (3) supplemental jurisdiction under 28 U.S.C. § 1367.[FN3]

FN1. 28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

FN2. Under 28 U.S.C. § 1333, "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

FN3. Supplemental or pendent party jurisdiction exists where claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

The Court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. § 1367(c).

*2 A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand *sua sponte* or on motion of a party, and the parties who invoked the federal court's removal jurisdiction have the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

The removal statute is strictly construed against removal jurisdiction and doubt is resolved in favor of remand. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979).

The existence of federal jurisdiction on removal must normally be determined on the face of the plaintiff's complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908). A "cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co v. Taylor*, 481 U.S. 58, 63 (1987).

However, the Court may examine the entire record to determine if the real nature of the claim is federal, notwithstanding plaintiff's characterization to the contrary, when the plaintiff has, by "artful pleading," attempted to defeat defendant's right to a federal forum. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2 (1981); *Salveson*, 525 F.Supp. at 572. A complaint cannot "avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

in state law terms a claim that can be made only under federal law." *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 666 (9th Cir.1985).

The Federal Employee Removal Statute was enacted as a means for federal employees to bypass the well-pleaded complaint rule and raise immunity-related defenses as a basis for removal.

## DISCUSSION

### I. *Jurisdiction Under the Federal Officer Removal Statute*

The Federal Officer Removal Statute provides that an action may be removed by "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." Title 28 U.S.C. § 1442(a)(1). In *Mesa v. California,* 489 U.S. 121 (1989), the Supreme Court held that § 1442(a)(1) requires the moving party to: (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to plaintiff's claims; and (3) demonstrate a causal nexus between plaintiff's claims and the acts defendants performed under color of federal office. *Id.* at 124-25, 134-35. Before applying the test outlined in *Mesa,* however, a defendant must qualify as a "person" for the purposes of 28 U.S.C. § 1441(a)(1). As a corporation, defendant Avondale meets this preliminary requirement. *Fung v. Abex Corp.,* 816 F.Supp. 569, 572 (N.D.Cal.1992).

### A. Acts Under the Direction of A Federal Officer

**\*3** Under the first prong of the *Mesa* test, defendant must show that it was acting under the direction of a federal officer. It is not enough to prove only that "the

relevant acts occurred under the general auspices of' a federal officer, *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 946 (E.D.N.Y.1992), or that the defendant was a member of a regulated industry. *Id.; Bakalis v. Crossland Sav. Bank,* 781 F.Supp. 140, 144-45 (E.D.N.Y.1991). In the area of product liability, government contract immunity has been limited to cases where defendant companies can show "strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.' " *Fung v. Abex Corp.,* 816 F.Supp. at 573 (quoting *Gulati v. Zuckerman,* 723 F.Supp. 353 (E.D.Pa.1989)).

In this case, the liability asserted by the plaintiffs is limited to the failure to warn theory of products liability. Plaintiffs allege that because Avondale failed to warn Mr. Overly of the existence of asbestos in his work environment, Avondale should be held liable for his resulting illness. Plaintiffs are not pursuing a design defect claim of products liability and have offered in writing to waive all potential claims related to design defects.

Although Avondale has established that it was under substantial control by the government regarding the installation of certain products containing asbestos, it has not done so with regard to the warning of individuals of the presence of asbestos on the job site.

### B. Colorable Federal Defense

The second prong of the *Mesa* test is that defendant must possess a colorable federal defense. Defendant Avondale presents two potential federal defenses.

1. Longshore and Harbor Workers Compensation Act

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

One defense asserted by Avondale is that plaintiffs' recovery is limited to relief under the Longshore and Harbor Workers Compensation Act (LHWCA) § 1 et seq., 33 U.S.C.A. § 901 et seq. The LHWCA provides a basis for compensation from employers to certain employees injured in the course of employment while working upon navigable waters or the harbors and shipyards adjoining such waters. 33 U.S.C.A. § 903.

As an initial matter, defendant is barred from asserting a defense on this basis because the LWHCA was not mentioned in defendant's petition for removal as required under 28 U.S.C. § 1446(a).

Furthermore, even if applied to this case, the LWHCA does not constitute a colorable federal defense for Avondale. Mr. Overly was not an employee of Avondale, he was an employee of Westinghouse. The "borrowed employee" concept asserted by defendant has not been adopted by the Ninth Circuit. Furthermore, even under the Third Circuit guidelines cited by the defendant, Mr. Overly would not qualify as a "borrowed employee" for the purposes of the LWHCA because there has been absolutely no showing that he explicitly agreed to work under conditions controlled solely by Avondale. Peter v. Hess Oil Virgin Islands Corp., 903 F.2d 935, 942 (1990). Thus, the LWHCA does not constitute a colorable defense to plaintiffs' common law causes of action.

2. Government Contractor Immunity

*4 The second ground on which defendant asserts it possesses a colorable federal defense is the government contractor defense. Under this theory, contractors who supply military equipment to the government are immunized from liability under state tort law providing that they can meet the test outlined in Boyle v. United

Technologies Corp., 487 U.S. 500 (1988). In Boyle, the Court set the standard for finding state law liability for design defects in military equipment. Id. at 511. Military contractor immunity for design defects applies when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512.

The Ninth Circuit has ruled that in failure to warn product liability cases involving asbestos allegedly used in the construction of naval ships, a defendant must specifically show that "in making [its] decisions regarding warnings [it was] acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States." In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (9th Cir.1992). Thus, in order to meet the Boyle test in a failure to warn case, the defendant must show that the government affirmatively instructed it regarding the provision of warnings.

Defendant's only showing on this motion relates to the government's manufacturing and engineering specifications. Defendant has not demonstrated that the government provided "reasonably precise specifications" affecting Avondale's provision of warnings. Boyle, 487 U.S. at 512. Absent a showing by defendant that the federal government gave specific instructions to Avondale not to warn employees of the existence of asbestos, Avondale is offered no protection by government contractor immunity. See In re Hawaii Federal Asbestos Cases, 960 F.2d at 813. Therefore, defendant fails to meet the second prong of the Mesa standard because Avondale has no colorable federal defense to the charges in this case.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

## C. Causal Nexus

.   The final requirement under the *Mesa* test is that there be a causal nexus between the rules imposed by the United States on the defendant contractor by the federal government and the liability asserted by plaintiff. "[T]here must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the [state] prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law." *Maryland v. Soper*, 270 U.S. 9, 22 (1926).

Defendant has produced abundant evidence attesting to the regulations imposed by the federal government on the manufacture and design of ships built by Avondale for the U.S. Navy. However, *none* of these guidelines addresses Avondale's responsibility to warn its employees of their exposure to products containing asbestos. The government in no way restricted Avondale's ability to notify individuals of the presence of asbestos in the work environment. Thus, there is no causal connection between the control exercised by the United States over Avondale and the legal theory under which plaintiffs seek to hold Avondale liable. Consequently, Avondale has no basis on which to assert application of the Federal Officer Removal Statute, and the case must be remanded to state court.

## II. *Attorney Fees & Costs*

**\*5** Title 28 U.S.C. § 1447(c) provides that when granting a motion for remand on the basis of a lack of federal subject matter jurisdiction, a court may order the defendant to pay plaintiff "its just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award under § 1447(c) is entirely within the Court's discretion.

Under its discretion, the Court finds that the case was removed "improvidently and without jurisdiction." *Id.* The Court hereby awards plaintiffs their reasonable costs and attorney fees associated with removal, as requested, in the amount of $2,000, to be paid by defendant Avondale within ten days of the date of this order.

## CONCLUSION

For the foregoing reasons and for good cause shown, plaintiffs' motion to remand is GRANTED. Plaintiffs' motion for reasonable costs and attorney fees incurred as a direct consequence of removal is GRANTED in the amount of $2,000.

IT IS SO ORDERED.

N.D.Cal.,1996.
Overly v. Raybestos-Manhattan
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 381 F. SUPP. 2D 398

**NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, Plaintiff,
v. EXXON MOBIL CORP., Defendant.**

**Civil Action No. 04-CV-4897 (DMC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*381 F. Supp. 2d 398; 2005 U.S. Dist. LEXIS 17279*

**March 24, 2005, Decided
March 24, 2005, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, the New Jersey Department of Environmental Protection, filed separate suits in the New Jersey Superior Court, Law Division, Hudson County and Union County, against defendant oil company alleging that the company had violated the New Jersey Spill Compensation and Control Act (Spill Act). The Department filed a motion to remand after the company removed the suits pursuant to *28 U.S.C.S. § 1442(a)(1)*. They were consolidated in the court.

**OVERVIEW:** The Department brought the suits pursuant to the Spill Act, *N.J. Stat. Ann. §§ 58:10-23.11* to -23.24, seeking to recover cleanup costs, removal costs, and damages arising out of discharges at the company's Hudson and Union County properties. The company contended that the suits were removable under *28 U.S.C.S. § 1442(a)(1)* because the discharges resulted from World War II activities that it had conducted at the federal government's behest. The court held that *Fed. R. Civ. P. 6(e)* applied and extended the time for filing of the motion to remand under *28 U.S.C.S. § 1447(c)* because the notice of removal had been served on the Department by mail. The company had raised a federal contractor defense in its suit; that was a sufficient colorable federal law defense for *28 U.S.C.S. § 1442(a)(1)* removal purposes. Removal was not appropriate under *§ 1442(a)(1)* because the company had not shown the causal nexus necessary to invoke the protections of the federal officer removal statute. While the government might have directed the company's manufacture, production, storage, and transfer of petroleum products, it had not exercised control over the company's disposal of hazardous substances.

**OUTCOME:** The court granted the Department's motion to remand.

**LexisNexis(R) Headnotes**

*Civil Procedure > Removal > Basis > General Overview
Governments > Federal Government > Claims By & Against
Governments > Federal Government > Employees & Officials*
[HN1] *28 U.S.C.S. § 1442(a)(1)* directs that an action in state court brought against an officer, or person acting under that officer, of the United States or an agency thereof, for any act under color of such office maybe removed to federal court.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers
Civil Procedure > Removal > Basis > Federal Questions
Governments > Federal Government > Employees & Officials*
[HN2] *28 U.S.C.S. § 1442* represents an exception to the general rule that removal of an action is governed by the claims asserted in the plaintiff's well-pleaded complaint. This is due to the fact that federal officer removal operates on the basis of issues generally thought to be defensive in character rather than on the content of the plaintiff's claim. A defendant who is able to meet the requirements for removal under *§ 1442(a)(1)* gains access to federal court even where no federal question is presented by the plaintiff.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*

381 F. Supp. 2d 398, *; 2005 U.S. Dist. LEXIS 17279, **

*Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects*
*Civil Procedure > Removal > Postremoval Remands > Motions for Remand*
[HN3] Any motion to remand a case to state court on the basis of a defect in removal procedure must be made within 30 days of filing of the notice of removal. *28 U.S.C. § 1447(c)*. A motion to remand on the basis that the district court lacks subject matter jurisdiction may be made at any time.

*Admiralty Law > Practice & Procedure > Jurisdiction*
*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Removal > Postremoval Remands > Motions for Remand*
[HN4] *Fed. R. Civ. P. 6(e)* provides for an additional three days whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and service is accomplished through mail.

*Administrative Law > Judicial Review > Remands & Remittiturs*
*Civil Procedure > Removal > Postremoval Remands > General Overview*
*Civil Procedure > Removal > Proceedings > General Overview*
[HN5] The United States Court of Appeals for the Third Circuit has not yet ruled specifically whether *Fed. R. Civ. P. 6(e)* applies to a motion to remand where notice of removal is served by mail. A handful of cases outside the Third Circuit hold that *Rule 6(e)* is not applicable to a remand motion. A number of Third Circuit cases hold that *Rule 6(e)* is inapplicable in different circumstances, such as with regard to the delivery of a check to a claimant and the period within which an employee is required to file employment discrimination complaint with the Equal Employment Opportunity Commission.

*Civil Procedure > Removal > Postremoval Remands > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > General Overview*
[HN6] Only two cases within the Third Circuit are directly on point with regard to whether *Fed. R. Civ. P. 6(e)* applies to a motion to remand where notice of removal is served by mail. One has held that *Rule 6(e)* does not apply to extend the 30 days provided by *28 U.S.C.S. § 1447(c)*, and the other holds that *Fed. R. Civ. P. 6(e)* does apply. The reasoning in the latter case is more persuasive. In that case, the United States District Court for the Eastern District of Pennsylvania interpreted

previous holdings of the United States Court of Appeals for the Third Circuit to demonstrate that *Rule 6(e)* is inapplicable to situations where the time period commences upon the entry of a court order or judgment but does apply where the opposing party triggers the applicable response period. The court's rationale is that an opposing party is more likely to use service by mail for a strategic advantage, and *Rule 6(e)* compensates for this possibility. *Rule 6(e)* does not apply where the time period only begins once notice is received. In such a case, the rule is not necessary because the method of service is irrelevant, and the applicable response period commences when the party receives notice, negating any advantage to be gained by service by mail.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Limited Jurisdiction*
*Civil Procedure > Removal > Basis > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
[HN7] Federal courts are courts of limited jurisdiction, having the power to hear only those cases to which Congress has specifically extended jurisdiction over the subject matter. Removal of a complaint from state court to federal court is generally proper only if the federal court to which the action is removed would have jurisdiction over the matter had it originally been filed there. *28 U.S.C.S. § 1441(a), (b)*. The burden is upon a defendant to show that removal is proper, and the federal court is obligated to strictly construe the removal statutes against removal and resolve any doubts in favor of remand.

*Civil Procedure > Removal > Basis > Cases Involving Federal Officers*
*Governments > Federal Government > Employees & Officials*
*Public Contracts Law > Governmental Immunities > Sovereign Immunity*
[HN8] *28 U.S.C.S. § 1442* should be more broadly construed than *28 U.S.C.S. § 1441*. The right of removal is absolute for conduct performed under color of federal office, and the policy favoring removal should not be frustrated by a narrow, grudging interpretation of *28 U.S.C.S. § 1442(a)(1)*. Private actors seeking to assert the right of federal officer removal bear a special burden of establishing the official nature of their activities. The purpose of a broad reading of *28 U.S.C.S. § 1442* is a mistrust of states and state courts to protect federal interests, which is inapplicable when the immunity of government contractors rather than federal officials is at issue.

381 F. Supp. 2d 398, *; 2005 U.S. Dist. LEXIS 17279, **

*Civil Procedure > Removal > Basis > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
*Governments > Federal Government > Employees & Officials*
[HN9] In order to remove an action from state to federal court under *28 U.S.C.S. § 1442(a)(1)*, the following prerequisites must be satisfied: 1) the defendant must be a "person" under the statute; 2) the defendant must be an officer of the United States or an agency thereof, or the defendant must have been acting under the direction of an officer of the United States or an agency thereof; 3) the defendant must have a colorable federal defense; and 4) the defendant must establish a causal connection between the activities carried out under federal authority and the state court actions.

*Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > General Overview*
*Civil Procedure > Removal > Basis > General Overview*
[HN10] Most courts have held that a corporation qualifies as a person for purposes of *28 U.S.C.S. § 1442(a)(1)*.

*Civil Procedure > Removal > Basis > General Overview*
*Civil Procedure > Removal > Proceedings > General Overview*
[HN11] Many courts combine the second and fourth components of the *28 U.S.C.S. § 1442(a)(1)* analysis into one analysis. The United States District Court for the District of New Jersey shall do the same.

*Civil Procedure > Removal > Basis > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
[HN12] Proper removal under *28 U.S.C.S. § 1442(a)(1)* requires the defendant to raise a colorable defense under federal law. The question before the court is not whether a claimed defense is meritorious, but only whether a colorable claim to such a defense has been made.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
*Military & Veterans Law > Tort Liability*
*Public Contracts Law > Governmental Immunities > Sovereign Immunity*
[HN13] The government contractor defense for military contractors has been established by the United States

Supreme Court and extended to nonmilitary contractors by the United States Court of Appeals for the Third Circuit. The Supreme Court has announced a three-part test for determining when state tort law is displaced by federal common law in a suit against a government military contractor: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. This holding has been extended to nonmilitary contractors with the rationale that a private contractor who is compelled by a contract to perform an obligation for the United States should, in some circumstances, share the sovereign immunity of the United States.

*Environmental Law > Litigation & Administrative Proceedings > Defenses*
*Environmental Law > Litigation & Administrative Proceedings > Nuisances, Trespasses & Strict Liability*
*Public Contracts Law > Governmental Immunities > Sovereign Immunity*
[HN14] The official immunity of the type asserted under a government contractor defense is a colorable federal defense. However, it is not entirely clear that this defense, which sounds in products liability, will apply to an issue turning on the construction of state environmental law. Such an analysis goes to the merits of the defense and not to the question of whether the defense is "colorable." As such, this is a colorable federal defense for *28 U.S.C.S. § 1442(a)(1)* removal purposes.

*Civil Procedure > Removal > Basis > General Overview*
*Governments > Federal Government > Claims By & Against*
*Governments > Federal Government > Employees & Officials*
[HN15] To establish that it was "acting under" an officer of the United States for *28 U.S.C.S. § 1442(a)(1)* removal purposes, a defendant must show a causal nexus between the conduct charged in the plaintiff's claims and the acts performed by the defendant at the direction of official federal authority. Courts generally require a defendant to demonstrate that the federal officer had direct and detailed control over the operation in question. In other words, this control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court based upon actions taken pursuant to federal direction.

Case MDL No. 875    Document 5698    Filed 12/01/08    Page 196 of 217

Page 4

381 F. Supp. 2d 398, *; 2005 U.S. Dist. LEXIS 17279, **

Civil Procedure > Removal > Basis > Cases Involving Federal Officers
Governments > Federal Government > Employees & Officials
Torts > Public Entity Liability > Liability > General Overview

[HN16] Not one of the cases holding that the government exercised the requisite amount of control to trigger federal officer removal under *28 U.S.C.S. § 1442(a)(1)* involves an instance of disposal of toxic substances ordered produced by the government. All the cases are personal injury products liability actions in which the actual production of toxic substances ordered by the government gives rise to the alleged harm. Cases which have found federal officer removal inappropriate illustrate the distinction between governmental control over manufacture and production versus disposal.

COUNSEL: [**1] For ADMINISTRATOR, NEW JERSEY SPILL COMPENSATION FUND, Plaintiff: RICHARD FRANCIS ENGEL, RICHARD J. HUGHES JUSTICE COMPLEX, TRENTON, NJ.

For NEW JERSEY ENVIRONMENTAL PROTECTION, Plaintiff: RICHARD FRANCIS ENGEL, DEPARTMENT OF LAW & PUBLIC SAFETY DIVISION OF LAW, TRENTON, NJ.

For EXXON MOBIL CORPORATION, Defendant: MARC A. ROLLO, ARCHER & GREINER, A PROFESSIONAL CORPORATION, HADDONFIELD, NJ.

JUDGES: Hon. Dennis M. Cavanaugh.

OPINION BY: Dennis M. Cavanaugh

OPINION

[*400] OPINION

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiff New Jersey Department of Environmental Protection ("NJDEP") for remand of the above-captioned action to the New Jersey Superior Court, Law Division. Oral argument was heard by the Court on March 22, 2005. [1] After carefully considering the submissions and arguments of all parties, it is the finding of this Court that NJDEP's motion is **granted.**

1  The Court made its ruling on the record immediately following oral argument on March 22, 2005. However, in light of the intricacy of the issues before it, the Court subsequently determined to file this Opinion clarifying the bases for its decision to remand. The Court's findings of fact and analysis of legal arguments remain the same and thus this Opinion is substantially identical to the ruling of the Court on the record at oral argument.

[**2] I. BACKGROUND

NJDEP brought this action in state court [2] against Defendant Exxon Mobil Corp. ("Defendant") for violations of the New Jersey Spill Compensation and Control [*401] Act ("Spill Act"), *N.J.S.A. 58:10-23.11 to -23.24.* NJDEP seeks cleanup and removal costs, as well as damages for injuries to natural resources of the State of New Jersey allegedly caused by discharges at Defendant's property in Bayonne and Linden, New Jersey. [3]

2  NJDEP originally filed two suits against Defendant in New Jersey Superior Court, Law Division, Hudson County and New Jersey Superior Court, Law Division, Union County. Defendant removed both cases to federal court on October 6, 2004, where they were docketed as Civil Action Nos. 04-4897 and 04-4898. Magistrate Judge Mark Falk ordered the actions be consolidated into one on December 16, 2004.

3  Defendant refers to these properties as the Jersey Works.

Defendant filed a notice of removal in state court, contending that removal is proper [**3] pursuant to [HN1] *28 U.S.C. § 1442(a)(1),* [4] which directs that an action in state court brought against an officer, or person acting under that officer, of the United States or an agency thereof, for any act under color of such office may be removed to federal court. Defendant alleges that certain of its production activities during World War II were at the behest of and under the control of the federal government, and these activities resulted in the disposal of products included in the conduct alleged against it by NJDEP. Defendant also contends that removal is appropriate under *28 U.S.C. § 1441(a),* which permits a defendant to remove any civil action from state court if the federal courts would have had original jurisdiction under *28 U.S.C. §1331* (federal question jurisdictional statute). Defendant maintains that the claims of harm to New Jersey surface waters and coastal wetlands asserted by NJDEP fall under federal admiralty and/or federal enclave jurisdiction. NJDEP disputes both points and seeks to remand the action back to New Jersey Superior Court.

4  [HN2] *Section 1442* represents an exception to the general rule that removal of an action is governed by the claims asserted in the plaintiff's well-pleaded complaint. 14C Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdic-

Case MDL No. 875 Document 5698 Filed 12/01/08 Page 197 of 217

Page 5

381 F. Supp. 2d 398, *; 2005 U.S. Dist. LEXIS 17279, **

tion 3d §3727 (1998). This is due to the fact that federal officer removal "operates on the basis of issues generally thought to be defensive in character rather than on the content of the plaintiff's claim." Id. A defendant who is able to meet the requirements for removal under *§1442(a)(1)* "gain[s] access to federal court [even] where no federal question is presented by the plaintiff." *Ryan v. Dow Chemical Co., 781 F.Supp. 934, 939 (E.D.N.Y.1992).*

[**4] II. DISCUSSION

A. Motion to Remand

1. Timeliness

[HN3] Any motion to remand a case to state court on the basis of a defect in removal procedure must be made within thirty days of filing of the notice of removal. *28 U.S.C. § 1447(c).* A motion to remand on the basis that the district court lacks subject matter jurisdiction may be made at any time. Id. NJDEP filed its motion to remand on November 8, 2005, thirty-three days after filing of the notice of removal.

Here, Defendant argues that NJDEP's motion is untimely as it was not made within thirty days of the filing of notice of removal, and NJDEP has waived any objection to defects in removal procedure. Defendant contends that, in any event, this Court has subject matter jurisdiction sufficient to survive a motion to remand, because the action could originally have been brought here under admiralty or enclave jurisdiction. NJDEP argues that because it received notice of removal by mail, its motion was timely under [HN4] *Federal Rule of Civil Procedure 6(e),* which provides for an additional three days "whenever a party has the right or is required [**5] to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party" and service is accomplished through mail. Defendant disputes that *Rule 6(e)* is applicable to the filing of a notice of removal pursuant to *28 U.S.C. § 1447(c).*

[*402] [HN5] The Third Circuit has not yet ruled specifically whether *Rule 6(e)* applies to a motion to remand where notice of removal was served by mail. Defendant directs the Court to a handful of cases outside this Circuit which hold *Rule 6(e)* is not applicable to a remand motion, see e.g., *Pavone v. Mississippi Riverboat Amusement Corp., 52 F.3d 560 (5th Cir. 1995)* ("*Rule 6(e)* does not extend the thirty-day period of *§ 1447(c),* as that rule applies only when a party is required to act within a prescribed period after *service,* not after *filing*") (emphasis in original), as well as a number of Third Circuit cases holding *Rule 6(e)* inapplicable in different circumstances. See, e.g., *Sea-Land Svc., Inc. v. Barry, 41 F.3d 903, 908 (3d Cir. 1994) (Rule 6(e)* does not apply to allow employer an additional three days for delivery of check to claimant); [**6] *Mosel v. Hills Dep't Store, Inc., 789 F.2d 251, 253 (3d Cir. 1986) (Rule 6(e)* did not apply to extend 90-day period following receipt of right-to-sue letter from Equal Employment Opportunity Commission within which employee was required to file employment discrimination complaint).

[HN6] Only two cases within this Circuit directly on point have been brought to the Court's attention, *In re: Diet Drugs Products Liability, 2004 U.S. Dist. LEXIS 18705, 2004 WL 2062894 (E.D.Pa. Sept. 15, 2004)* (following Pavone without further analysis and holding *Rule 6(e)* does not apply to extend the thirty days provided by *§ 1447(c))* and *McPherson v. Peelle Co., 1995 U.S. Dist. LEXIS 1619, 1995 WL 56600 (E.D.Pa. Feb. 6, 1995)* (holding *Rule 6(e)* does apply). The two cases reach contrary results, but the reasoning of the District Court in *McPherson* is more persuasive. The McPherson Court interpreted previous holdings of the Third Circuit to demonstrate that *Rule 6(e)* is "inapplicable to situations where the time period commences upon the entry of a court order or judgment" but does apply "where the opposing party triggers the applicable response period." *1995 U.S. Dist. LEXIS 1619, 1995 WL 56600 at *2.* The rationale [**7] here is that "an opposing party is more likely to use service by mail for a strategic advantage and *Rule 6(e)* compensates for this possibility."Id. Similarly, *Rule 6(e)* does not apply where the time period only begins once notice is received. *1995 U.S. Dist. LEXIS 1619, [WL] at *3.* In such a case, the rule is not necessary because the method of service is irrelevant and the "applicable response period commences when the party receives notice, negating any advantage to be gained by service by mail." Id.

As such, under *Rule 6(e),* NJDEP's motion to remand, which was filed within thirty-three days of the filing of notice of removal, was timely filed. Thus, NJDEP has not waived its right to move for remand on the basis of any defects in removal procedure.

2. Section 1441 - Removal based upon Federal Subject Matter Jurisdiction

[HN7] Federal courts are courts of limited jurisdiction, having the power to hear only those cases to which Congress has specifically extended jurisdiction over the subject matter. *Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994).* Removal of a complaint from state court to federal court is generally proper only if the federal court to which [**8] the action is removed would have jurisdiction over the matter had it originally been filed there. *28 U.S.C. §§1441(a)-1441(b).* The burden is upon a defendant to show that removal is proper, and the

381 F. Supp. 2d 398, *; 2005 U.S. Dist. LEXIS 17279, **

federal court is obligated to "strictly construe the removal statutes against removal and resolve any [*403] doubts in favor of remand." *Entrekin v. Fisher Scientific, Inc., 146 F. Supp. 2d 594, 604 (3d Cir.2001)* (internal citations omitted).

### 3. *Section 1442* - Federal Officer Removal [5]

5   Defendant correctly states that [HN8] *§ 1442* should be more broadly construed than *§ 1441.* See, e.g., *Arizona v. Manypenny, 451 U.S. 232, 242, 68 L. Ed. 2d 58, 101 S. Ct. 1657 (1981)* ("the right of removal is absolute for conduct performed under color of federal office, and . . . the policy favoring removal should not be frustrated by a narrow, grudging interpretation of *§ 1442(a)(1)*") (internal quotations omitted); *Sun Buick, Inc. v. Saab Cars, Inc., 26 F.3d 1259, 1262 (1994)* (distinguishing, in dicta, *§ 1442,* "which is broadly construed," from *§ 1441,* "which is strictly construed"). However, these cases are not entirely relevant here, as they involved removal by actual federal officers, and not by government contractors attempting to invoke the protection of the statute. More applicable to the issue at hand is a case cited by NJDEP, *Freiberg v. Swinerton & Walberg Property Services, Inc., 245 F.Supp.2d 1144 (D.Colo.2002),* which held that private actors seeking to assert the right of federal officer removal "bear a special burden of establishing the official nature of their activities." *245 F.Supp. 2d at 1150.* The Freiberg Court carefully analyzed the holdings of the Supreme Court regarding federal officer removal and found that the purpose of a broad reading of *§ 1442* is a "mistrust of states and state courts to protect federal interests" and was inapplicable when the immunity of government contractors rather than federal officials was at issue. *Id. at 1152 n.6.* See also Kristina L. Garcia, The Boyle Festers: How Lax Causal Nexus Requirements and the "Federal Contractor Defense" Are Leading to a Disruption of Comity under the Federal Officer Removal Statute, *28 U.S.C. 1442(a)(1), 46 Emory L.J. 1629 (1997).*

[**9] [HN9] In order to remove an action from state to federal court under *28 U.S.C. § 1442(a)(1),* the following prerequisites must be satisfied: 1) the defendant must be a "person" under the statute; [6] 2) the defendant must be an officer of the United States or an agency thereof, or the defendant must have been acting under the direction of an officer of the United States or an agency thereof; 3) the defendant must have a colorable federal defense; and 4) the defendant must establish a causal connection between the activities carried out under fed-

eral authority and the state court actions. [7] *Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir.1998).*

6   NJDEP does not dispute Defendant's assertion that it is a person under the statute, and [HN10] most courts have held that a corporation such as Defendant qualifies as a person. Crackau v. Lucent Technologies, 2003 WL 21665135, *2 (D.N.J. Jun. 25, 2003); Arness v. Boeing North America, Inc., 997 F.Supp. 1268, 1271-72 (C.D.Cal. 1998). As such, this Court need not conduct an in-depth analysis of this prong of the test and will instead assume that Defendant is a person for purposes of *§ 1442(a)(1).*

[**10]

7   [HN11] Many courts combine the second and fourth components into one analysis. This Court shall do the same.

### a. Has Defendant Asserted a Colorable Federal Defense?

[HN12] Proper removal under *§ 1442(a)(1)* requires the defendant to raise a colorable defense under federal law. *Mesa v. California, 489 U.S. 121, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989); Bahrs v. Hughes Aircraft Co., 795 F.Supp. 965, 969 (D.Ariz. 1992).* The question before the court on this prong is "not whether [a] claimed defense is meritorious, but only whether a colorable claim to such a defense has been made." *Fung v. Abex Corp., 816 F.Supp. 569, 573 (N.D.Cal.1992).* The defense asserted by Defendant in this case is [HN13] the government contractor defense for military contractors established by the Supreme Court in *Boyle v. United Technologies Corp., 487 U.S. 500, 507-08, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988),* and [*404] extended to nonmilitary contractors by the Third Circuit in *Carley v. Wheeled Coach, 991 F.2d 1117, 1120, 28 V.I. 310 (3d Cir. 1993).* In Boyle, the Supreme Court announced a three-part test for determining when state [**11] tort law is displaced by federal common law in a suit against a government military contractor: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *487 U.S. at 512.* Carley extended this holding to nonmilitary contractors with the rationale that "a private contractor who is compelled by a contract to perform an obligation for the United States should, in some circumstances, share the sovereign immunity of the United States." *991 F.2d at 1120.*

[HN14] The official immunity of the type asserted by Defendant is a colorable federal defense. *Bahrs, 795 F.Supp. at 969.* However, it is not entirely clear that this

381 F. Supp. 2d 398, *; 2005 U.S. Dist. LEXIS 17279, **

defense, which sounds in products liability, would apply here, to an issue turning on the construction of state environmental law. On the other hand, such an analysis goes to the merits of the defense and not to the question of whether the defense is "colorable." As such, the Court finds that Defendant has asserted a colorable [**12] federal defense and move on to the final component of the test for federal officer removal.

*b. Was Defendant "Acting Under " the Direction of a Federal Officer?*

[HN15] To establish that it was "acting under" an officer of the United States, Defendant must show a causal nexus between the conduct charged in NJDEP's claims and the acts performed by Defendant at the direction of official federal authority. See *Arness, 997 F.Supp. at 1273*; *Willingham v. Morgan, 395 U.S. 402, 409, 23 L. Ed. 2d 396, 89 S. Ct. 1813 (1969)*. Courts generally require a defendant to demonstrate that the federal officer had "direct and detailed control over the operation in question." *Reed v. Fina Oil & Chemical Co., 995 F.Supp. 705, 710 (E.D.Tex.1998)*. In other words, "this control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court based upon actions taken pursuant to federal direction." *Fung, 816 F.Supp. at 572* (internal quotations omitted).

Defendant argues that it has "provided this Court with ample evidence of the requisite federal control over the Jersey Works' operations during World War II and a period [**13] thereafter." (Def.'s Br. at 25.) Specifically, Defendant presents declarations of several executives to demonstrate that the Petroleum Administration for War issued daily orders and directives regarding "the manufacture, production, storage, and transfer of petroleum products." (Id. at 26.) NJDEP contends that "Defendant has failed to produce evidence indicating that the government directed it to improperly dispose of hazardous wastes . . . Defendant has ignored the fact that [NJDEP]'s claims do not relate to Defendant's actual manufacturing and production operations." (Pl.'s Rep. Br. at 14.) NJDEP asserts that Defendant has failed to demonstrate a causal nexus between the allegations of improper disposal of toxic substances into the waters of the State of New Jersey and those of Defendant's actions directed by an officer of the federal government.

An examination of the case law cited by each party reveals much about the merits of Defendant's assertions. [HN16] Not one of Defendant's cited cases holding that the government exercised the requisite amount of [*405] control to trigger federal officer removal involves an instance of *disposal* of toxic substances ordered produced by the government. [**14] All these cases are personal injury products liability actions in which the

actual *production* of toxic substances ordered by the government gave rise to the alleged harm. In contrast, cases relied upon by NJDEP, which found federal officer removal inappropriate, illustrate the distinction between governmental control over manufacture and production versus disposal. See, e.g., *Bahrs, 795 F.Supp. at 970* ("while the government officials were undoubtedly most interested in the production of war materials, the record before this Court does not demonstrate the government's necessary control over the method of waste disposal"); *Arness, 997 F.Supp. at 1268* ("[Defendant]'s use of [hazardous materials] did not cause Plaintiffs' injuries. Rather, Plaintiffs' injuries were allegedly caused by [Defendant]'s negligent disposal and storage of [hazardous materials], which activities were not performed at the government's behest").

Accordingly, as Defendant has not offered any evidence supporting its claim that the federal government exercised control over the disposal of hazardous substances, this Court holds that Defendant has not met its burden to demonstrate [**15] the requisite causal nexus to invoke the protections of the federal officer removal statute. Removal was not appropriate pursuant to §1442(a) and the case will be remanded to state court.

**CONCLUSION**

For the reasons stated, it is the finding of this Court that Plaintiff's motion to remand is **granted.** An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh

Dennis M. Cavanaugh, U.S.D.J.

Date: March 24, 2005

**ORDER**

This matter coming before the Court upon motion by Plaintiff New Jersey Department of Environmental Protection ("NJDEP") for remand of the above-captioned action to the New Jersey Superior Court, Law Division; the Court having carefully considered the submissions and arguments of all parties; and for the reasons stated on the record on March 22, 2005, and in the Court's Opinion filed on this day;

IT IS on this 24th day of March, 2005,

ORDERED that Plaintiff's motion to remand is **granted.**

S/ Dennis M. Cavanaugh

Dennis M. Cavanaugh, U.S.D.J.

Date: March 24, 2005

Westlaw.

Slip Copy
Slip Copy, 2006 WL 2716092 (D.N.J.)
**(Cite as: 2006 WL 2716092 (D.N.J.))**

Page 1

**C**
Briefs and Other Related Documents

Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.
NEW JERSEY DEPARTMENT OF ENVIRON-
MENTAL PROTECTION, et al., Plaintiffs,
v.
DIXO COMPANY, INC., et al., Defendants.
**Civil Action No. 06-1041(SRC).**

Sept. 22, 2006.

Barry A. Knopf, Leonard Z. Kaufmann, Cohn, Lif-
land, Pearlman, Herrmann & Knopf, ESQS, Saddle
Brook, NJ, Brendan E. Ruane, Office of the NJ At-
torney General, RJ Hughes Justice Complex, for
Plaintiffs.
Damon R. Sedita, Sedita, Campisano & Campisano,
LLC, EDgewater Commons Two, Fairfield, NJ,
John Mcgahren, Stephanie Rebecca Feingold, Pat-
ton Boggs, LLP, Newark, NJ, Eugene J. Kuzinski,
Ballard Spahr Andrews & Ingersoll, LLP,
Voorhees, NJ, LInda J. Mack, Fox RothschilD LLP,
Lawrenceville, NJ, Joseph F. Lagrotteria, St. John
& Wayne, ESQS., Newark, NJ, Laurie Ann Poulos,
Holland & Knight LLP, New York, NY, for De-
fendants.
Brett D. Rickman, Office of NJ Attorney General,
Department of Law & Public Safety RJ Hughes
Justice Complex, Trenton, NJ for Counter Defend-
ant.
Kerry E. Higgins, Mckenna, Dupont, Higgins &
Byrnes, P.C., Red Bank, NJ, for Cross Claimant.

**OPINION**

CHESLER, District Judge.
*1 This matter comes before the Court upon
Plaintiffs' Motion To Remand this action (docket
item # 6) to the Superior Court of New Jersey, Law
Division, and upon the Report and Recommenda-
tion (docket item # 37) issued by United States Ma-
gistrate Judge Patty Shwartz pursuant to 28 U.S.C.

§ 636(b)(1) on June 12, 2006. Defendant Stepan
Company [FN1] ("Stepan") submitted a timely objec-
tion to the Report and Recommendation, and
Plaintiffs thereafter submitted a brief in response to
Stepan's objection. This Court has considered the
papers submitted by the parties in connection with
the motion to remand and with Judge Shwartz's Re-
port and Recommendation. It has also examined the
analysis of the Magistrate Judge, set forth in the
Opinion delivered on the record on June 12, 2006,
recommending that this action be remanded to state
court. Following a *de novo* review of those matters
in the Report and Recommendation to which objec-
tion has been filed, and for the reasons discussed
below, this Court adopts the June 12, 2006 Report
and Recommendation and grants Plaintiffs' motion
to remand this action.

> FN1. Stepan Company owns the Maywood
> Chemical Company site, one of the proper-
> ties involved in this action for natural re-
> source damages. Stepan Company acquired
> Maywood Chemical Company in 1959. For
> purposes of simplicity, this Court will refer
> to the entity as "Stepan" regardless of
> whether the conduct examined occurred
> before or after 1959.

**I. STANDARD OF REVIEW OF THE REPORT
AND RECOMMENDATION**

Title 28 U.S.C. § 636(b)(1) authorizes a district
judge to designate a magistrate judge to conduct
hearings and submit proposed findings of fact and
recommendations for the disposition of certain mo-
tions. 28 U.S.C. § 636(b)(1) Within ten days of be-
ing served with the magistrate judge's Report and
Recommendation, any party may file objections to
the Report and Recommendation. *Id.* The statute
provides that, in the event an objection is submit- ted,

[a] judge of the court shall make a de novo determ-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2006 WL 2716092 (D.N.J.)
(Cite as: 2006 WL 2716092 (D.N.J.))

Page 2

ination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*Id.*

## II. BACKGROUND

This Court adopts the magistrate judge's recitation of the factual and procedural background of this action, set forth in the transcript of proceedings before Judge Schwartz on June 12, 2006. (Transcript of Motion Before the Honorable Patty Shwartz ("Tr.") dated June 12, 2006 at 25:15-29:17.)

## III. LEGAL ANALYSIS

A. *Federal Officer Removal Statute*

Defendant Stepan's removal petition asserts that this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), which provides that actions against the "United States or any agency thereof or any officer **(or any person acting under that officer)** of the United States or of any agency thereof sued in an official or individual capacity for any act under color of such office ..." may be removed to federal court. 28 U.S.C. § 1442(a)(1) (emphasis added). As the language of the statute makes clear, a private party may remove an action based on this "federal officer" removal statute. *Id.; New Jersey Department of Environmental Protection v. Exxon Mobil Corp. ("Exxon Mobil"),* 381 F.Supp.2d 398, 401 (D.N.J.2005). To establish federal officer jurisdiction, a defendant must demonstrate that (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the

claims and the conduct performed under color of a federal office. *Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124, 127 (3d Cir.1998). This standard is known as the "*Feidt* test."

**\*2** As with removal petitions based on other statutes, the burden of establishing the propriety of removal and the existence of federal jurisdiction under section 1442(a)(1) is upon the removing party. *Feidt,* 153 F.3d at 127; *Boyer v. Snap-On Tools Corp.,* 913 F .2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085 (1991); *Gilberg v. Stepan Co.,* 24 F.Supp.2d 325, 330 (D.N.J.1998). Because the action at bar involves a private party's attempt to remove under the federal officer removal statute, the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable here. *Exxon Mobil,* 381 F.Supp.2d at 403 n. 5. To the contrary, a private party seeking to assert the right of federal officer removal " 'bear[s] a special burden of establishing the official nature of [its] activities.' " *Id.* (quoting *Freiberg v. Swinerton & Walberg Prop. Svcs., Inc.,* 245 F.Supp.2d 1144, 1150 (D.Colo.2002)).

B. *Application of the Feidt Test*

Based upon its review of plaintiffs' motion to remand and Stepan's objection to the Report and Recommendation under the *Feidt* test and under the applicable burden of proof, this Court holds that defendant has failed to meet its burden of establishing the official nature of the conduct of which plaintiffs complain. Magistrate Judge Shwartz properly applied the *Feidt* test to evaluate the existence of jurisdiction under section 1442(a)(1) and correctly concluded that defendant had failed to satisfy the second and fourth prongs of that test.[FN2] This Court finds, as the magistrate judge did, that Stepan simply has not provided sufficient evidence to establish that its discharges of hazardous substances were controlled or directed by the government.

> FN2. In *Exxon Mobil,* the court noted that "many courts combine the second and

Slip Copy
Slip Copy, 2006 WL 2716092 (D.N.J.)
**(Cite as: 2006 WL 2716092 (D.N.J.))**

Page 3

fourth components [of the *Feidt* test] into one analysis" and elected to follow suit. *Exxon Mobil,* 381 F.Supp.2d at 403 n. 7. This Court will likewise analyze the second and fourth prongs together.

To establish that it was "acting under" a federal officer within the meaning of section 1442(a)(1), the private actor defendant must demonstrate that it performed *the complained-of activity* at the direction of official federal authority. *Willingham v. Morgan,* 395 U.S. 402, 409 (1969); *Exxon Mobil,* 381 F.Supp.2d at 404; *Arness v. Boeing North American, Inc.,* 997 F.Supp. 1268, 1273 (C.D.Cal.1998). Moreover, courts generally require that the private actor defendant demonstrate that the federal officer had "direct and detailed control" over the litigated activity. *Exxon Mobil,* 381 F.Supp.2d at 404; *Arness,* 997 F.Supp. at 1273; *Reed v. Final Oil & Chem. Co.,* 995 F.Supp. 705, 710 (E.D.Tex.1998). The analysis can be summed up as follows:

Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal.

*Good v. Armstrong World Indus., Inc.,* 914 F.Supp. 1125, 1128 (E.D.Pa.1996) (citations omitted).

*\*3 The Court takes notice and accepts as true that Stepan manufactured radiological and chemical products for use by, and pursuant to contracts with, the United States government and its agencies. (Certification of John McGahren in Support of Stepan Company's Brief In Opposition to Plaintiffs' Motion To Remand ("McGahren Cert.") Ex. 1-10.) The fact that Stepan was a government contractor at the relevant time that the allegedly wrongful conduct occurred is, however, unavailing under the *Feidt* test. *Cf. Virden v. Altria Group, Inc.,* 304*

F.Supp.2d 832, 845 (N.D.W.V.2004) (observing that "paradigm cases in which private actors have succeeded in removing cases under the statute have involved government contractors with *limited discretion")* (emphasis added)). Stepan must demonstrate that the government had "direct and detailed control" over the *litigated activity.*

In this case, insofar as the claims against Stepan are concerned, the litigated activity is Stepan's discharges [FN3] of hazardous substances on Stepan's Maywood, New Jersey property. (Complaint, ¶¶ 68, 70, 73, 75, 81, 86.) In support of its position that the government did in fact direct and control discharges of hazardous material at the Maywood site, Stepan cites two items. (Defendant Stepan's Brief in Opposition to Plaintiffs' Motion For Remand at 12.) One of these is a September 21, 1987 Administrative Order, issued by the United States Environmental Protection Agency ("EPA"), which states in its findings of fact and conclusions of law that "the Atomic Energy Commission (AEC) issued a license to the Maywood Chemical Co. for the possession of thorium wastes stored on the property" and that the "AEC approved the cleanup and burial of wastes on company property."(Notice of Removal, Ex. F, ¶¶ 11-12.) The other item is an October 22, 1963 internal company memorandum discussing the thorium waste pile on the Maywood property. In relevant part, that memorandum states as follows:

FN3. Under the New Jersey Spill Compensation and Control Act, *N.J.S.A.* 58:10-23.11 et *seq.,* "discharge" means "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State when damage may result to the lands, waters or natural resources within the jurisdiction of the State."*N.J.S.A.* 58:10-23.11b

However, in 1947 the AEC prompted us to collect

Slip Copy
Slip Copy, 2006 WL 2716092 (D.N.J.)
(Cite as: 2006 WL 2716092 (D.N.J.))

Page 4

the thorium wastes separately and store them for possible emergency use in the future. Therefore, we contend that the AEC prevented Maywood from solving its problem (waste) concurrent with operating the thorium plant and especially prior to the AEC act [sic] of 1954. For this reason, we intend to approach the AEC when we are ready to move on the thorium dike asking their [sic] financial help in correcting the situation.
(McGahren Cert., Ex. 13.)

Neither of these two documents satisfies Stepan's burden of demonstrating that it acted under the direction of a federal officer in discharging hazardous substances. The AEC's approval of cleanup and burial of waste on the property does not establish that the United States or one its agencies or departments exercised direct and detailed control over the discharges of which plaintiffs complain. Even viewing this evidence in the light most favorable to Stepan, this Court concludes that, at best, it may be interpreted as showing that Stepan was acting under the general auspices of the government, a showing which falls far short of what is required to establish federal officer removal jurisdiction. The internal memorandum provides no support for Stepan's position. The opinion of an employee of the company that the AEC "prompted" Stepan to collect and store thorium waste and that it is therefore to blame for Stepan's thorium waste problem does not demonstrate that Stepan performed the complained-of discharges at the direction of federal officials.

*4 An opinion brought to the Court's attention by Stepan in a supplemental letter brief dated July 27, 2006 does not alter this Court's analysis. That opinion, in the case of *Pierce Morgan v. Ford Motor Co.,* Civil Action No. 06-1080, concerned a motion for remand based on the failure to meet the requirements of the federal officer removal statute. (Transcript of Proceedings Before the Honorable Joel A. Pisano dated July 5, 2006 (*"Pierce Morgan Tr."*) at 3:4-18: attached to July 27, 2006 Supplemental Letter Brief as Ex. 2.) The gravamen of the *Pierce Morgan* Complaint was that defendant were

negligent in their performance of an environmental clean-up as directed by an Administrative Consent Order issued by the EPA. (*Pierce Morgan* Tr. at 50:4-51:5.) The Court found, therefore, that defendants were acting under a federal office with respect to the complained-of conduct. (*Id.* at 51:22-52:2.)For the reasons discussed above, that is plainly not the case in the action at bar, in which the gravamen of the Complaint does not relate to any activity that Stepan has shown was undertaken under the government's detailed direction.

In short, Stepan has failed to present evidence that the government directed and controlled any aspect of Stepan's disposal of hazardous substances or the associated discharges.[FN4]It has not met its burden of demonstrating that federal jurisdiction exists under the federal officer removal statute.

> FN4. In support of its objections to the magistrate judge's Report & Recommendation, Stepan also submitted the Declaration of Robert Zoch, which it purports constitutes "additional facts and evidence concerning the wartime and post-war control of the federal government over the disposal of waste materials at the Maywood site and the resulting discharges."(Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 14.) This "additional evidence" reiterates that the AEC directed Stepan to segregate and store thorium and lithium waste. It does not, however, touch upon the facts crucial to the analysis of federal officer subject matter jurisdiction in this case. Specifically, like the EPA Administrative Order and internal company memorandum discussed above, it does not provide any indication that the government controlled the discharges of which plaintiff complains.

C. *Standard of Review of Remand Motion*

Slip Copy
Slip Copy, 2006 WL 2716092 (D.N.J.)
**(Cite as: 2006 WL 2716092 (D.N.J.))**

Page 5

Stepan also objects to the magistrate judge's Report & Recommendation on the ground that, according to Stepan, Magistrate Judge Shwartz did not apply the correct standard of review to plaintiffs' motion to remand. In particular Stepan asserts that the magistrate judge incorrectly required that Stepan, as the removing party, prove the facts substantiating federal officer removal, rather than accepting as true its allegations of those facts as stated in the Notice of Removal. Stepan argues, in sum, that "the magistrate judge applied a burden of proof ... that was far more demanding than what is required for a motion to remand under federal officer jurisdiction."(Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 10.) Stepan's position is incorrect and finds no support in our jurisprudence.

Once jurisdiction is challenged, the party invoking federal jurisdiction bears the burden of proving that jurisdiction is proper. *Corwin Jeep Sales v. American Motors Sales,* 670 F.Supp. 591, 595 (M.D.Pa.1986); *see also Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir.2004) (holding, in the context of a removal under 28 U.S.C. § 1441, that "[t]he party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court"). While this Court will accept all well-pleaded allegations as true, it need not credit a party's "bald assertions" or "legal conclusions." *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997). In Gilberg, this Court held that "[a] defendant cannot establish that it was a federal agency or employee, by merely alleging in its Notice, as Stepan does, that it was an 'agent or employee of the United States Government.' " *Gilberg,* 24 F.Supp.2d at 347. With respect to Stepan's removal petition, Stepan cannot establish that it was acting under the direction of a federal agency or officer by merely alleging that the "harm alleged by Plaintiffs is directly related to the actions taken both by the government itself and pursuant to detailed direction from the government ..." (Notice of Removal ¶ 26.) The position taken by Stepan, in which it urges that the Court must accept as true its allegations that the criteria for federal officer removal are met, would render the well-established burden of proof on the party asserting federal jurisdiction empty and artificial. This Court concludes that the magistrate judge applied the correct standard and properly looked to Stepan to present evidence supporting the jurisdictional averments of its removal petition.

### D. *Stepan's Request for Limited Jurisdictional Discovery*

*5 During oral argument before Magistrate Judge Shwartz on the motion for remand, Stepan requested that the Court retain jurisdiction over this case to permit the parties to conduct discovery on the merits of the claims for use of that discovery in the remanded state action. (Tr. 21:14-22:19, 23:20-24:4.) The magistrate judge was clearly correct in denying that application. If this Court does not have jurisdiction, it cannot "retain jurisdiction" and allow this action to develop in federal court without any basis of authority to adjudicate this controversy. Stepan did not present at oral argument, and does not cite in its brief objecting to the Report & Recommendation, any legal authority for this Court to retain non-existent jurisdiction.

As for its revised request that the Court retain jurisdiction to allow the parties to conduct jurisdictional discovery (Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 20), Stepan correctly recites the law, but its request will not be granted. The District Court "has inherent power and jurisdiction to decide whether it has jurisdiction." *In Re Automotive Refinishing Paint Antitrust Lit.,* 358 F.3d 288, 303 (3d Cir.2004) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706 (1982)). The Court may, in its discretion, order discovery to ascertain facts that bear on whether the Court has jurisdiction to entertain the merits of the action. *Open-*

*heimer Fund, Inc. v. Sanders,* 437 U.S. 349, 351 n. 13 (1978); *Toys 'R' Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 455-56 (3d Cir.2003). The Court, however, declines to order such jurisdictional discovery in this case. Stepan requests this relief for the first time in its brief objecting the Report & Recommendation, and the Court will therefore not entertain it.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Shwartz's Report & Recommendation and accordingly grants Plaintiffs' motion to remand. An appropriate form of order will be filed together with this Opinion.

D.N.J.,2006.
New Jersey Dept. of Environmental Protection v. Dixo Company, Inc.
Slip Copy, 2006 WL 2716092 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 5941552 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Response to Defendant Stepan's Objection to the Report and Recommendation By Magistrate Judge Shwartz (Jul. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 5941551 (Trial Pleading) Answer, Affirmative Defenses and Crossclaim (Jun. 29, 2006) Original Image of this Document (PDF)
• 2006 WL 5941550 (Trial Motion, Memorandum and Affidavit) Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion for Remand (Jun. 26, 2006) Original Image of this Document (PDF)
• 2006 WL 5941549 (Trial Motion, Memorandum and Affidavit) Brief in Support of Motion to Dismiss Third Party Complaint, Improperly Pled As a Counterclaim, On Behalf of the New Jersey Department of Transportation (Jun. 2, 2006) Original Image of this Document (PDF)
• 2006 WL 1753191 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum of Law in in Support of Motion to Remand (May 30, 2006) Original Image of this Document (PDF)
• 2006 WL 1753190 (Trial Motion, Memorandum and Affidavit) Defendant Stepan's Brief in Opposition to Plaintiffs' Motion for Remand (May 22, 2006) Original Image of this Document (PDF)
• 2006 WL 1753189 (Trial Pleading) Answer and Crossclaims to First Amended Complaint (May 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1352979 (Trial Pleading) Answer and Counterclaims of Defendant Stepan Company to First Amended Complaint (Apr. 25, 2006) Original Image of this Document (PDF)
• 2006 WL 1155332 (Trial Pleading) First Amended Complaint (Mar. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 846215 (Trial Pleading) Notice of Removal (Mar. 6, 2006)
• 2:06cv01041 (Docket) (Mar. 6, 2006)

END OF DOCUMENT

Westlaw

Not Reported in F.Supp.                                                                                   Page 1
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

▷Overly v. Raybestos-Manhattan
N.D.Cal.,1996.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
Robert S. OVERLY and Louise S. Overly Plaintiffs,
v.
RAYBESTOS-MANHATTAN, et al. Defendants.
No. C-96-2853 SI.

Sept. 9, 1996.

ORDER REMANDING CASE TO SUPERIOR COURT

ILLSTON, District Judge.
   *1 On September 6, 1996, the Court heard argument
on plaintiffs' motion to remand. Having considered the
arguments of counsel and the papers submitted, the Court
hereby GRANTS plaintiffs' motion to remand this case to
San Francisco County Superior Court. The Court also
GRANTS plaintiffs' motion for attorney fees and costs
under 28 U.S.C. § 1447(c).

BACKGROUND

   On April 30, 1996, plaintiffs filed the complaint in this
action in San Francisco County Superior Court. The
Superior Court granted trial preference to the case
pursuant to California Code of Civil Procedure § 36(d),
because Mr. Overly is dying and is expected to survive
only a few months; trial was set for October 7, 1996.

   On August 9, 1996, after the trial date had been set,

defendant Avondale Industries, Inc. removed the case to
federal court pursuant to 28 U.S.C §§ 1441, 1442, and 1446.
On August 20, 1996, plaintiffs filed a motion to remand and
requested that it be heard on an expedited basis.

   According to the allegations of the complaint, plaintiff
Robert Overly was exposed to asbestos while working in
a shipyard in the 1960's. Defendant Avondale controlled
part of the premises of Mr. Overly's employment during
this period of time. Plaintiffs' complaint alleges that
Avondale knew or should have known that the premises
it controlled contained hazardous conditions, namely
products containing asbestos. Plaintiffs further allege that
defendant hired contractors and subcontractors who used
products containing asbestos, but failed to warn
individuals in the surrounding area of the existence of
asbestos or to take precautions against human exposure
to the chemical.

   Plaintiffs allege that, as a result of exposure to
asbestos while working in the shipyard, Mr. Overly
acquired mesothelioma, a cancer usually resulting from
asbestos exposure. In May of this year, Mr. Overly was
diagnosed with six months remaining to live. Plaintiffs
have proceeded against Avondale on the "failure to warn
theory" of products liability.

   Avondale does not contest Mr. Overly's assertion
that he was exposed to asbestos during his work on the
Avondale shipyard. Instead, it claims that the work done
by Mr. Overly consisted primarily of work on naval ships,
and that Avondale is therefore protected by government
contractor immunity. Avondale asserts that it was under
rigid guidelines by the federal government concerning the
design of naval ships. Thus, Avondale asserts that it is
entitled to the protection of the Federal Officer Removal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

Statute, thereby providing grounds for federal jurisdiction.

## LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir.1977). Three potential bases for federal subject-matter jurisdiction are relevant to this suit: (1) federal question jurisdiction under 28 U.S.C. § 1331, [FN1] (2) admiralty jurisdiction under 28 U.S.C. § 1333, [FN2] and (3) supplemental jurisdiction under 28 U.S.C. § 1367 [FN3]

FN1. 28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

FN2. Under 28 U.S.C. § 1333, "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

FN3. Supplemental or pendent party jurisdiction exists where claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).
The Court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all

claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. § 1367(c).

*2 A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. See 28 U.S.C. § 1447(c). The court may remand *sua sponte* or on motion of a party, and the parties who invoked the federal court's removal jurisdiction have the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

The removal statute is strictly construed against removal jurisdiction and doubt is resolved in favor of remand. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979).

The existence of federal jurisdiction on removal must normally be determined on the face of the plaintiff's complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908). A "cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co v. Taylor*, 481 U.S. 58, 63 (1987).

However, the Court may examine the entire record to determine if the real nature of the claim is federal, notwithstanding plaintiff's characterization to the contrary, when the plaintiff has, by "artful pleading," attempted to defeat defendant's right to a federal forum. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2 (1981); *Salveson*, 525 F.Supp. at 572. A complainant cannot "avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

in state law terms a claim that can be made only under federal law." *Harper v. San Diego Transit Corp.*, 764 F.2d 663, 666 (9th Cir.1985).

The Federal Employee Removal Statute was enacted as a means for federal employees to bypass the well-pleaded complaint rule and raise immunity-related defenses as a basis for removal.

## DISCUSSION

### I. *Jurisdiction Under the Federal Officer Removal Statute*

The Federal Officer Removal Statute provides that an action may be removed by "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." Title 28 U.S.C. § 1442(a)(1). In *Mesa v. California*, 489 U.S. 121 (1989), the Supreme Court held that § 1442(a)(1) requires the moving party to: (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to plaintiff's claims; and (3) demonstrate a causal nexus between plaintiff's claims and the acts defendants performed under color of federal office. *Id.* at 124-25, 134-35. Before applying the test outlined in *Mesa*, however, a defendant must qualify as a "person" for the purposes of 28 U.S.C. § 1441(a)(1). As a corporation, defendant Avondale meets this preliminary requirement. *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal.1992).

### A. Acts Under the Direction of A Federal Officer

*3 Under the first prong of the *Mesa* test, defendant must show that it was acting under the direction of a federal officer. It is not enough to prove only that "the

relevant acts occurred under the general auspices of" a federal officer, *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 946 (E.D.N.Y.1992), or that the defendant was a member of a regulated industry. *Id.; Bakalis v. Crossland Sav. Bank*, 781 F.Supp. 140, 144-45 (E.D.N.Y.1991). In the area of product liability, government contract immunity has been limited to cases where defendant companies can show "strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.' " *Fung v. Abex Corp.*, 816 F.Supp. at 573 (quoting *Gulati v. Zuckerman*, 723 F.Supp. 353 (E.D.Pa.1989)).

In this case, the liability asserted by the plaintiffs is limited to the failure to warn theory of products liability. Plaintiffs allege that because Avondale failed to warn Mr. Overly of the existence of asbestos in his work environment, Avondale should be held liable for his resulting illness. Plaintiffs are not pursuing a design defect claim of products liability and have offered in writing to waive all potential claims related to design defects.

Although Avondale has established that it was under substantial control by the government regarding the installation of certain products containing asbestos, it has not done so with regard to the warning of individuals of the presence of asbestos on the job site.

### B. Colorable Federal Defense

The second prong of the *Mesa* test is that defendant must possess a colorable federal defense. Defendant Avondale presents two potential federal defenses.

1. Longshore and Harbor Workers Compensation Act

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

One defense asserted by Avondale is that plaintiffs' recovery is limited to relief under the Longshore and Harbor Workers Compensation Act (LHWCA) § 1 et seq., 33 U.S.C.A. § 901 et seq. The LHWCA provides a basis for compensation from employers to certain employees injured in the course of employment while working upon navigable waters or the harbors and shipyards adjoining such waters. 33 U.S.C.A. § 903.

As an initial matter, defendant is barred from asserting a defense on this basis because the LWHCA was not mentioned in defendant's petition for removal as required under 28 U.S.C. § 1446(n).

Furthermore, even if applied to this case, the LWHCA does not constitute a colorable federal defense for Avondale. Mr. Overly was not an employee of Avondale, he was an employee of Westinghouse. The "borrowed employee" concept asserted by defendant has not been adopted by the Ninth Circuit. Furthermore, even under the Third Circuit guidelines cited by the defendant, Mr. Overly would not qualify as a "borrowed employee" for the purposes of the LWHCA because there has been absolutely no showing that he explicitly agreed to work under conditions controlled solely by Avondale. *Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935, 942 (1990). Thus, the LWHCA does not constitute a colorable defense to plaintiffs' common law causes of action.

### 2. Government Contractor Immunity

**\*4** The second ground on which defendant asserts it possesses a colorable federal defense is the government contractor defense. Under this theory, contractors who supply military equipment to the government are immunized from liability under state tort law providing that they can meet the test outlined in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988). In *Boyle,* the Court set the standard for finding state law liability for design defects in military equipment. *Id.* at 511. Military contractor immunity for design defects applies when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512.

The Ninth Circuit has ruled that in failure to warn product liability cases involving asbestos allegedly used in the construction of naval ships, a defendant must specifically show that "in making [its] decisions regarding warnings [it was] acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States." *In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 813 (9th Cir.1992). Thus, in order to meet the *Boyle* test in a failure to warn case, the defendant must show that the government affirmatively instructed it regarding the provision of warnings.

Defendant's only showing on this motion relates to the government's manufacturing and engineering specifications. Defendant has not demonstrated that the government provided "reasonably precise specifications" affecting Avondale's provision of warnings. *Boyle,* 487 U.S. at 512. Absent a showing by defendant that the federal government gave specific instructions to Avondale not to warn employees of the existence of asbestos, Avondale is offered no protection by government contractor immunity. *See In re Hawaii Federal Asbestos Cases,* 960 F.2d at 813. Therefore, defendant fails to meet the second prong of the *Mesa* standard because Avondale has no colorable federal defense to the charges in this case.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

C. Causal Nexus

The final requirement under the *Mesa* test is that there be a causal nexus between the rules imposed by the United States on the defendant contractor by the federal government and the liability asserted by plaintiff. "[T]here must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the [state] prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law." *Maryland v. Soper*, 270 U.S. 9, 22 (1926).

Defendant has produced abundant evidence attesting to the regulations imposed by the federal government on the manufacture and design of ships built by Avondale for the U.S. Navy. However, *none* of these guidelines addresses Avondale's responsibility to warn its employees of their exposure to products containing asbestos. The government in no way restricted Avondale's ability to notify individuals of the presence of asbestos in the work environment. Thus, there is no causal connection between the control exercised by the United States over Avondale and the legal theory under which plaintiffs seek to hold Avondale liable. Consequently, Avondale has no basis on which to assert application of the Federal Officer Removal Statute, and the case must be remanded to state court.

II. *Attorney Fees & Costs*

**\*5** Title 28 U.S.C. § 1447(c) provides that when granting a motion for remand on the basis of a lack of federal subject matter jurisdiction, a court may order the defendant to pay plaintiff "its just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award under § 1447(c) is entirely within the Court's discretion.

Under its discretion, the Court finds that the case was removed "improvidently and without jurisdiction." *Id.* The Court hereby awards plaintiffs their reasonable costs and attorney fees associated with removal, as requested, in the amount of $2,000, to be paid by defendant Avondale within ten days of the date of this order.

CONCLUSION

For the foregoing reasons and for good cause shown, plaintiffs' motion to remand is GRANTED. Plaintiffs' motion for reasonable costs and attorney fees incurred as a direct consequence of removal is GRANTED in the amount of $2,000.

IT IS SO ORDERED.

N.D.Cal.,1996.
Overly v. Raybestos-Manhattan
Not Reported in F.Supp., 1996 WL 532150 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Slip Copy                                                                                                          Page 1
Slip Copy, 2007 WL 1550992 (E.D.La.)
(Cite as: Slip Copy)

Sheppard v. Northrop Grumman Systems Corp.
E.D.La.,2007.
Only the Westlaw citation is currently available.Euelis
"Ellau" SHEPPARD
v.
NORTHROP GRUMMAN SYSTEMS CORP., et al.
Civil Action No. 07-2208.

May 24, 2007.

Scott R. Bickford, Jeffrey Matthew Burg, Spencer R. Doody, Martzell & Bickford, New Orleans, LA, for Euelis "Ellau" Sheppard.
Brian C. Bossier, Christopher Thomas Grace, III, Edwin A. Ellinghausen, III, Blue Williams, L.L.P., Charles V. Giordano, Miranda, Warwick, Milazzo, Giordano & Hebbler, APLC, Christopher Kelly Lightfoot, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, Glenn Lyle Maximilian Swetman, Aultman, Tyner & Ruffin, Ltd., Gordon Peter Wilson, Frederick Lewis Parks, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, Gary Allen Lee, Richard Marshall Perles, Lee, Futrell & Perles, LLP, Samuel Milton Rosamond, III, Crawford Lewis, PLLC, New Orleans, LA, William L. Schuette, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, Baton Rouge, LA, for Northrop Grumman Systems Corp., et al.

ORDER AND REASONS

CARL J. BARBIER, United States District Judge.
*1 Before the Court is Plaintiff's Motion to Remand (Rec.Doc.11). This motion was opposed and was set for hearing on the briefs on May 16, 2007. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds that Plaintiff's motion should be granted.

*Factual Background*

Plaintiff initially filed this suit against Defendant, Northrop Grumman Systems Corp. ("Northrop") and several other defendants in Civil District Court for the Parish of Orleans asserting that he contracted asbestos-related lung cancer while employed as a laborer and rigger by Avondale Shipyard in Avondale, Louisiana. Northrop and Peter Territo, an executive officer (hereinafter referred to as "Defendants"), removed this action to federal court under 28 U.S.C. § 1442(a)(1) based on federal officer immunity. Defendants also stated that the Longshore and Harbor Workers' Compensation Act ("LHWCA") was a basis for removal. The day before Defendants removed this action, Plaintiff filed and served a motion for leave of court to amend his petition in state court. (Exhibit G to motion to remand). Specifically, Plaintiff sought leave to amend his petition to delete paragraphs 47 and 49, which read in pertinent part:

Avondale had the *garde* of the asbestos ... and is thereby strictly liable pursuant to Louisiana Code Article 2317.

Avondale fabricated asbestos-containing insulation products to which Petitioner was exposed and Avondale is strictly liable as a manufacturer....

Plaintiff argues that, in addition to his failure to warn claims, he erroneously asserted the above garde and product liability claims in his original petition. He claims that while neither of the above claims confer jurisdiction on this Court, he promptly (i.e., before the notice of removal was filed) sought leave to amend his petition so that Defendants could not argue that Plaintiff intended to pursue any cause of action over which this court would

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2
Slip Copy, 2007 WL 1550992 (E.D.La.)
(Cite as: Slip Copy)

have jurisdiction. Five days after this action was removed, Plaintiff, again, sought leave to amend his Complaint, which was granted two days later.

### The Parties' Arguments

Plaintiff argues that this Court should make its jurisdictional determination based on his amended Complaint even though the amendment was allowed *after* removal. Plaintiff notes that it is clear that he is not attempting to engage in forum shopping because he sought leave to amend his petition prior to removal.

Plaintiff next claims that Defendant has not satisfied its burden of proving that it is entitled to federal officer immunity. Plaintiff argues that Defendants have not properly invoked this Court's federal officer jurisdiction under § 1442(a)(1), because they cannot meet the criteria set forth in *Mesa v. California*, 489 U.S. 121, 124-25, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). First, Plaintiff claims Defendants have not shown that they were acting under federal direction at the time the tort was committed. Plaintiff asserts that Defendants cannot establish that a federal officer directed and controlled their safety and warning-related activities specifically. Second, Plaintiff asserts that Defendants do not have colorable federal defense under the government contractor defense because there is no conflict between Defendants' federal and state duties. Plaintiff notes that the testimony of Peter Territo, executive officer of Defendant, demonstrates that no government regulation or contract specification prevented him from providing safety warnings. (Exhibit I to motion to remand, p. 143). Third, Plaintiff asserts that Defendants have not shown a nexus between the Government's control and Plaintiff's legal theories. Plaintiff notes that Defendants have provided no evidence showing that a federal officer exercised "direct and detailed" control over safety and

warnings, and thus, it is impossible for Defendants to show a causal nexus between the Government's supervision and their own tortious failure to warn. Thus, according to the Mesa test, Plaintiff argues that Defendants cannot invoke federal officer jurisdiction.

\*2 Further, Plaintiff asserts that he has disclaimed any cause of action which could invoke federal officer jurisdiction. Plaintiff asserts that if the Court concludes that Defendant have pled a colorable federal officer defense, Plaintiff's petition disclaimed any cause of action which would ripen the defense. Specifically, plaintiff pled:

> Plaintiffs [sic] disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. *Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.*

(Petition, ¶ 56, *emphasis added* ). Plaintiff asserts that in similar asbestos cases (which were removed to federal court by defendants asserting federal officer jurisdiction), courts have looked to similar post-removal disclaimers to remand the cases to state court. *See, Overly v. Raybestos-Manhattan,* 1996 WL 532150 (N.D.Cal. Sept. 9, 1996); *Westbrook v. Asbestos Defendants,* 2001 WL 902642 (N.D.Cal.2001)("The court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express waiver, [defendant] can always file for removal once again.") Thus, Plaintiff asserts that if the Court determines that there is jurisdiction based on Defendants' federal officer defense, Plaintiff should be bound by his disclaimer. Also, unlike the plaintiffs in *Overly* and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3
Slip Copy, 2007 WL 1550992 (E.D.La.)
(Cite as: Slip Copy)

*Westbrook*, who disclaimed causes of action post-removal (arguably implicating concerns of forum shopping), Plaintiff here disclaimed these causes of action in his original petition filed in state court.

Last, Plaintiff asserts that the LHWCA does not provide a colorable federal defense. Plaintiff notes that in *Gauthe v. Asbestos Corp., 1997 WL 3255 (E.D.La. Jan. 2, 1997)*, Judge Duval addressed these same LHWCA arguments with regard to the Avondale Interests in an asbestos exposure case exactly the same as the case at bar. In rejecting Avondale's arguments, Judge Duval relied on both Louisiana law as well as the U.S. Supreme Court decision in *Sun Ship, Inc. v. Pennsylvania, 100 S.Ct. 2432 (1980)* to hold that the LHWCA does not preempt, but supplements, state remedies available to an injured worker. Plaintiff claims that from his Petition, it is clear that he intended to do just that: i.e., sue Defendants in state court for state law claims. Plaintiff claims that he has not availed himself of any LHWCA benefits and does not seek to do so in his petition. Thus, removal is improper on the basis of his purported LHWCA claim.

In opposition, Defendants making up the Avondale Defendants (i.e., Northrop and its executive officers) [FN1] claim that they are entitled to remove this case based on federal officer jurisdiction. Specifically, Defendants assert that the intense government presence at Avondale and government control of the construction of vessels at Avondale, where Plaintiff allegedly was exposed to asbestos, was of such a direct and detailed nature that Defendants are entitled to defend this claim in federal court. (See Exhibit D to opposition). Defendant argues in essence that construction and inspection systems designed and implemented by the government to ensure that the proper materials were used and incorporated in the proper manner were thorough, all-encompassing, and included the authority for government inspectors to order that any non-compliance found be corrected by Avondale at any stage of the construction.

FN1. An opposition advancing similar arguments was filed by Commercial Union Insurance Company (Rec.Doc.18).

*3 Defendants assert the importance of *Lalonde v. Delta Field Erection, 1998 WL 34301466 (M.D.La.1998)*. Defendants explain that in *Lalonde,* the court held that the federal government contractor, DSM, "was acting 'under an officer of the United States or of an agency thereof' for purposes of removal under § 1442(a)(1)" because DSM "operated a federal government-owned facility, exclusively for the government, under the oversight and ultimate control of officers of the federal government." Although Defendant admits that Avondale was not a government-owned facility, it argues that the work performed under contract with the government was performed exclusively for the government under the direct oversight and control of government officers. Defendant asserts that like DSM, Avondale acted exclusively for and under the control of the federal government in its operation under all of the government contracts. Defendants asserts that (1) government inspectors daily monitored compliance by Avondale with safety regulations made part of the contracts; (2) the government required the use of asbestos insulation; (3) the government specifically incorporated into the contracts federal asbestos safety regulations, which set standards for safe daily exposures to asbestos; and (4) government inspectors constantly monitored the ship construction process for compliance with all terms of the contract. Defendants claim these facts establish that the they were "acting under" the direction of the federal government and that the causal connection exists because the acts complained of were "under color" of federal office.

Next, Defendants claim they can successfully assert a colorable federal defense, i.e., the federal contractor

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1550992 (E.D.La.)
(Cite as: Slip Copy)

defense. Defendants claims they always conformed to the exceptionally precise specifications for the construction of the vessels that were drafted and approved by the government. Defendants also argue that Avondale had no knowledge of any dangers associated with the use of asbestos about which the government was not aware, given the extensive presence and control of the construction by the government, the incorporation into the contracts of the Walsh-Healey Act, and federal asbestos safety regulations promulgated by the LHWCA.

The second of Defendants' two available federal defenses is the immunity provision contained in the LHWCA. Defendants claim that Plaintiff, Territo, and Avondale satisfy the "status" and "situs" test and are, thus, all qualify for treatment under the LHWCA. Defendants assert that it is without serious dispute that federal law governs the question of whether the LHWCA preempts state law. Defendants argue that decisions such as the United States Supreme Court in *Sun Ship* make clear that Congress intended that disputes between longshore workers be resolved within the exclusive framework of the LHWCA.

Defendants also claim that the recent rulings in *Melford v. Northrop Grumman Systems Corp.*, case no. 05-1405 (M.D.La.) and *McFarlain v. Northrop Grumman Systems*, case no. 05-1406 (M.D.La.) are applicable and suggest that remand should be denied. Defendants note that the *Melford* case was removed to the Middle District of Louisiana on the same grounds that were asserted here: pervasive government regulation of federal ship construction contracts entitled the defendant to federal court jurisdiction under the Federal Officer Removal statute. The Court denied the plaintiff's motion to remand, wherein the plaintiff made the same arguments as the plaintiff here makes: the government never forced the defendant "not to warn," the *Overly* test applies, and the Federal Contractor Defense is not colorable. Defendants note that the *Melford* ruling is contrary to

every Eastern District ruling against Defendants to date.

*4 In *McFarlain*, the plaintiff urged much more than "failure-to-warn" claims. Specifically, the plaintiff had alleged "strict liability" claims. Defendants note that in Plaintiff's original Petition in this case, he also makes strict liability claims that seek to attach liability to Defendants for the mere presence of asbestos at the workplace. (See paragraphs 47 and 49 of original Petition). Defendants claim that this Court should rule as the *McFarlain* Court did and find that, at least as far as the strict liability claims are concerned, Defendant's federal contractor defense is colorable and all three prongs of the removal test are met. Similarly, Defendants claim this Court should exercise its supplemental jurisdiction over the remaining claims and deny Plaintiff's motion to remand. As for Plaintiff's post-removal amendment to delete the strict liability claims from his Petition, Defendants argue that the Court should not consider the amended Petition because what controls is the Petition as it reads at the time of removal.

*Analysis*

The Amended Petition:

Although this case was properly removed based on federal question jurisdiction, a mere seven days after removal, Plaintiff was granted leave to amend his Complaint. This amendment effectively allowed Plaintiff to delete any possibility of federal claims from his Complaint. The fact that this amendment occurred so quickly after removal and the fact that Plaintiff had sought leave to amend his petition in state court the day before Defendants filed their notice of removal prompts the Court to consider the amended petition in its determination of this motion to remand. The Supreme Court has held that if a federal claim that formed the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 5
Slip Copy, 2007 WL 1550992 (E.D.La.)
(Cite as: Slip Copy)

basis of federal question jurisdiction is dismissed, the court has discretion to remand the state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (affirming remand of state claims after plaintiff's amended complaint dropped claim that was preempted). The *Carnegie-Mellon* Court held that if a federal question is eliminated relatively soon after removal, it is ordinarily preferable to remand the case. *Id.* Indeed, the Court noted that retaining a case after a fresh federal claim is dropped early in litigation may be an abuse of discretion. *Id.* Thus, the Court concludes that in this situation, the amended Complaint will be used to determine whether the case should be remanded.

**Should this Matter be Remanded?**

The Federal Officer Removal Statute provides as follows:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is presiding:

(1) The United States or any agency thereof or any officer (or any acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue....

*528 U.S.C. § 1442(a)(1). The Fifth Circuit has explained that removal pursuant to this statute is meant to "ensure a federal forum in any case where a federal officer is entitled to raise a defense arising out of his official duties." *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir.1998). It is the removing

defendants that have the burden of establishing the existence of federal jurisdiction. *Id.* at 397. In considering whether removal was proper under the federal officer removal statute, a court must determine whether the removing defendants have established the following factors: (1) that they are "persons" under § 1442(a)(1); (2) that they acted under the direction of a federal officer; (3) that they have demonstrated a causal nexus between plaintiff's claims and defendants' actions performed under the color of a federal office; and (4) that they can raise a federal defense to plaintiff's claims. *Mesa*, 489 U.S. at 131-32; *Winters*, 149 F.3d at 398.

**(1) Are Defendants "persons" within the meaning of the statute?**

Both removing defendants (Northrop as a corporation and Territo as an executive officer for the corporation) satisfy the first *Mesa* prong. *See Winters*, 149 F.3d at 398; *Bradley v. Northrop Grumman Systems, Corp.*, 2007 WL 1115246 (E.D.La. Apr. 12, 2007).

**(2) Were Defendants acting under the direction of a federal officer?**

The Court concludes that Defendants' removal fails on this prong because they failed to establish their safety and warning-related activities were under the requisite direction of a federal officer. Federal direction requires "more than 'general auspices' of a federal officer, or participation in a regulated industry." *Savoie v. Northrop Grumman Ship Systems, Inc.*, No. 05-2086 (E.D . La.2005). Defendants must show "strong government intervention and the threat that a defendant will be sued in state court" based on actions which follow federal direction. *Mouton v. Flextallic, Inc.*, 1999 WL 225438 *2-3 (E.D.La.1999).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1550992 (E.D.La.)
(Cite as: Slip Copy)

Nothing in the record establishes that the safety procedures at issue were controlled by the government or related to government specifications in the building of ships at Avondale. *See also Bradley,* 2007 WL 1115246; *Guidroz v. The Anchor Packing Co.,* No. 98-3709 (E.D.La); *Mouton,* 1999 WL 225438 (no causal connection between the Navy's direction pursuant to design contracts and plaintiff's failure to warn claims). Territo testified that there were no federal officers on board the vessels and that Naval inspectors did not control the safety department at Avondale. (Exhibit I to motion to remand, p. 135). He also admitted that nothing in the federal regulations prevented Avondale from warning its employees of the dangers of asbestos exposure. (Exhibit I to motion to remand, p. 143). Thus, this Court finds that Defendants are not entitled to federal officer removal in this instance.

**(3) Was there a causal nexus between Plaintiff's claims and Defendants' actions performed under the color of a federal office?**

*6 Because Defendants have failed to demonstrate that the government exercised the requisite authority and control over Defendants' safety procedures, there can be no causal nexus between the authority of the federal officer and Plaintiff's claims that Defendants failed to use asbestos safely. *See also Bradley,* 2007 WL 1115246, *3; *Gauthe,* 1997 WL 3255 (no causal nexus under similar facts and circumstances).

**(4) Have Defendants established a colorable federal defense?**

The Court determines that Defendants have failed to establish a colorable defense under either the government contractor defense theory or the LHWCA defense theory. First, Defendants cannot successfully invoke the government contractor defense, as set forth in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988), because Defendants cannot carry their the burden of establishing that the following two conditions are met: 1) that the case concerns a unique federal issue, and 2) that a significant conflict exists between federal policy and state law as applied to this case. *Boyle,* 108 S.Ct. at 2515. Here, there is no conflict between Defendants' federal and state duties. Territo's own testimony demonstrates that no government regulation or contract specification prevented him or Northrop from providing safety warnings:

Q: To your knowledge, is there any Federal regulation or specifications in the contracts with the Navy that would prevent you from putting up a [warning] sign in a Navy vessel?

A: If it was under construction?

Q: Yes.

A: No.

(Exhibit I to motion to remand, p. 143). There is no conflict because Defendants could comply with both their contractual obligations and the state-prescribed duty of care. Thus, Defendants cannot take advantage of this defense.

Also, the Court finds that Defendants have not established a colorable defense under the LHWCA for the same reasons previously set forth by Judge Duval in *Gauthe,* 1997 WL 3255. The *Gauthe* court addressed these same LHWCA arguments with regard to Defendants in an asbestos exposure case. In rejecting Defendants' arguments, Judge Duval relied on both Louisiana law as well as the U.S. Supreme Court decision in *Sun Ship* to hold that the LHWCA does not preempt, but instead, supplements state remedies available to an injured worker. Thus, a person injured while shipbuilding may maintain an action under either the Louisiana state compensation scheme or the LHWCA.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 7
Slip Copy, 2007 WL 1550992 (E.D.La.)
(Cite as: Slip Copy)

A review of Plaintiff's petition reveals that it was Plaintiff's intent to sue Defendants in state court for state law claims. Thus, it appears that the facts of this specific case do not invoke federal officer jurisdiction.

In further support of the above conclusion is the fact that, in his original Petition filed in state court, Plaintiff disclaimed any cause of action which could invoke federal officer jurisdiction. Specifically, Plaintiff pled:

Plaintiffs [sic] disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

*7 (Petition, ¶ 56). Courts have looked to similar disclaimers that were filed after removal to remand cases to state court in similar asbestos cases. *Overly*, 1996 WL 532150; *Westbrook*, 2001 WL 902642 ("[t]he court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express waiver, [defendant] can always file for removal once again."). Also, the Court concludes that its decision to follow Plaintiff's disclaimer is further supported by the fact that, unlike the plaintiffs in *Overly* and *Westbrook* who disclaimed causes of action post-removal, Plaintiff here disclaimed these causes of action in his original petition in state court.

The Court is unpersuaded, just as Judge McNamara was "unpersuaded" in the *Bradley* case, by the opinions out of the Middle District of Louisiana (*Lalonde; Melford;* and *McFarlain*) that contrast with those out of

this district. First, the *Lalonde* case is inapplicable because the government in *Lalonde* specifically controlled safety matters at a government-owned facility. Here, Avondale is a privately-owned shipyard that contracts with private and public interests, and in which safety officers such as Territo operate wholly independent of any Government control. In *McFarlain*, the Court rejected the assertions that the LHWCA conferred federal jurisdiction and also rejected the argument that the Avondale defendants met their burden of removal of the failure to warn claims based on the government contractor defense. The sticking point for the *McFarlain* Court was the fact that the plaintiff had made a strict liability claim in addition to the failure to warn claim against the Avondale defendants. Here, Plaintiff has amended his petition to omit any strict liability claim. Thus at present, Plaintiff's amended petition only states theories of liability which sound in negligence, which should be remanded according to all Eastern District precedent, as explained above. Accordingly,

IT IS ORDERED that Plaintiff's Motion to Remand (Rec.Doc.11) should be and hereby is GRANTED. This matter is now remanded to the state court from which it was removed.

E.D.La.,2007.
Sheppard v. Northrop Grumman Systems Corp.
Slip Copy, 2007 WL 1550992 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.