JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 0 2009

FILED
CLERK'S OFFICE

# MDL 875

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

### DOCKET NO. 875

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THIS PLEADING APPLIES TO:

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **WALTER MCDONALD, ET. AL** | \* | **CIVIL ACTION NO. 08-4203** |
| | \* | |
| **VERSUS** | \* | **SECTION "C"** |
| | \* | |
| **CROWLEY MARITIME CORP., ET. AL** | \* | **MAGISTRATE (3)** |
| | \* | |
| | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER

Plaintiffs, Emelda Ann McDonald, individually and as personal representative of the decedent, Cathy Woodard, Karen Bacchus and Terry Cox, the natural daughters of decedent, move this Court to vacate the Conditional Transfer Order in light of the extensive discovery that has been accomplished. Substantial discovery has been completed in this matter and this case is ready to be set for trial. To avoid delay in the disposition of this matter, Plaintiffs urge this panel to vacate it's conditional order to transfer this matter to the United States District Court for the Eastern District of Pennsylvania so that it may proceed to trial in the United States District Court for the Eastern District of Louisiana.

**OFFICIAL FILE COPY**

IMAGED FEB 1 1 2009

PLEADING NO. 5745

Respectfully submitted,

**MARTZELL & BICKFORD, A.P.C.**

_[signature]_

**SCOTT R. BICKFORD T.A. (#1165)**
**SPENCER R. DOODY (#27795)**
**NEIL F. NAZARETH (#28969)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing pleading on all counsel on the panel service list attached hereto by placing same in the United States Mail, properly addressed and postage prepaid on this the 6th day of February 2009.

_[signature]_

**NEIL F. NAZARETH**

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                    MDL No. 875

### PANEL SERVICE LIST (Excerpted from CTO-318)

Walter McDonald, et al. v. Crowley Maritime Corp., et al., E.D. Louisiana,
    C.A. No. 2:08-4203
Clarence Scott Wren, Sr. v. Cooper/T. Smith Stevedoring, Inc., et al., E.D. Louisiana,
    C.A. No. 2:08-4204

Francis P. Accardo
PUGH ACCARDO HAAS
 & RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

Stephen C. Aertker, Jr.
HUVAL VEAZEY FELDER
AERTKER & RENEGAR LLC
532 E. Boston Street
Covington, LA 70433

Jerald L. Album
REICH MEEKS & TREADWAY
Two Lakeway Center, Suite 1000
3850 N. Causeway Blvd.
Metairie, LA 70002

Peter G. Angelos
LAW OFFICES OF
 PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201

B. Ralph Bailey
LAW OFFICE OF B RALPH
BAILEY
660 - 3 N. Beau Chene Drive
Mandeville, LA 70471

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Wilton Ellwood Bland, III
MOULEDOUX BLAND LEGRAND
 & BRACKETT
One Shell Square
701 Poydras Street
Suite 4250
New Orleans, LA 70139-4250

John A. Bolles
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

Alan Guy Brackett
MOULEDOUX BLAND LEGRAND
 & BRACKETT
4250 One Shell Square
701 Poydras Street
New Orleans, LA 70139-4250

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

Traci Marie Castille
FRANKE & SALLOUM PLLC
2605 14th Street
P.O. Drawer 460
Gulfport, MS 39502

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Kenneth Joseph Gelpi, Jr.
MONTGOMERY BARNETT ET AL
1100 Poydras Street
Suite 3200
New Orleans, LA 70163-3200

Charles V. Giordano
HEBBLER & GIORDANO
3636 S. I-10 Service Road West
Suite 300
Metairie, LA 70001

Stephen Porter Hall
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

Timothy P. Hurley
MAGINNIS & HURLEY
Canal Place One
365 Canal Street
Suite 2750
New Orleans, LA 70130

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street, Third Floor
Oakland, CA 94607

## MDL No. 875 - Panel Service List (Excerpted from CTO-318 (Continued)

Susan B. Kohn
SIMON PERAGINE SMITH
& REDFEARN LLP
Energy Centre, Suite 3000
1100 Poydras Street
New Orleans, LA 70163-3000

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Gary Allen Lee
LEE FUTRELL & PERLES LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
233 South Wacker Drive, Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105

Neil F. Nazareth
MARTZELL & BICKFORD
338 Lafayette Street
New Orleans, LA 70130

John K. Nieset
CHRISTOVICH & KEARNEY LLP
601 Poydras Street
Suite 2300
New Orleans, LA 70130-6078

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Patricia Cowen Penton
LEE FUTRELL & PERLES LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120

Lawrence G. Pugh, III
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

H. Philip Radecker, Jr.
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

Robert Seth Reich
REICH ALBUM & PLUNKETT
Two Lakeway Center
3850 N. Causeway Blvd.
Suite 1000
Metairie, LA 70002

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Antonio J. Rodriguez
FOWLER RODRIGUEZ
400 Poydras Street
30th Floor
New Orleans, LA 70130

Mark J. Spansel
ADAMS & REESE LLP
One Shell Square, Suite 4500
701 Poydras Street
New Orleans, LA 70139

A. Wendel Stout, III
DEUTSCH KERRIGAN & STILES
755 Magazine Street
New Orleans, LA 70130-3672

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Jefferson R. Tillery
JONES WALKER
Place St. Charles
5th Floor
201 St. Charles Avenue
New Orleans, LA 70170

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ
& TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Robert E. Williams, IV
SULZER & WILLIAMS LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

DOCKET NO. 875

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THIS PLEADING APPLIES TO:

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WALTER MCDONALD, ET. AL** | \* | **CIVIL ACTION NO. 08-4203** |
| | \* | |
| **VERSUS** | \* | **SECTION "C"** |
| | \* | |
| **CROWLEY MARITIME CORP., ET. AL** | \* | **MAGISTRATE (5)** |
| | \* | |
| | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
TO VACATE CONDITIONAL TRANSFER ORDER**

MAY IT PLEASE THE COURT:

Plaintiffs, Emelda Ann McDonald, individually and as personal representative of the decedent, Cathy Woodard, Karen Bacchus and Terry Cox, the natural daughters of decedent, move this Honorable Court to vacate the Conditional Transfer Order issued relative to this case for the reasons set forth herein.

**FACTS AND PROCEDURAL HISTORY**

1.    Walter McDonald was diagnosed with lung cancer associated with his exposure to asbestos while employed by various stevedore companies loading and unloading raw asbestos cargo.

1

the Plaintiff's service of master discovery responses on all defendants. Moreover, the parties

exchanged a substantial amount of written discovery.

Specifically, the following written discovery has been exchanged:

7.      Plaintiff propounded interrogatories, requests for admissions, and requests for production of

documents upon defendants Eagle, Inc., Certain Underwriters at Lloyds, London,

Cooper/T.Smith Stevedoring Company, Inc., Dixie Machine, Welding & Metal Works, Inc.,

Waterman Steamship Corporation, Crowley Marine Services, Inc., Sank, Inc., Sea Land

Service, Inc., and Hartford Accident and Indemnity Company on July 14, 2008. Some of

these defendants have answered, while others' responses are outstanding.

8.      On July 15, 2008 Ports America Gulfport, Inc. propounded interrogatories, requests for

admissions and requests for production of documents upon Plaintiffs and supplemental

requests for production of documents on July 23, 2008 and July 24, 2008. This discovery was

answered by the Plaintiffs on August 27, 2008.

## ARGUMENT

MDL-875 was established in 1991 for the consolidation of pre-trial and settlement matters

concerning federal court asbestos cases. The Panel stated in the July 29, 1991 Order and Opinion

establishing MDL-875 that "[t]his order does offer a great opportunity to all participants who

sincerely wish to resolve these asbestos matters fairly and with as little unnecessary expense as

possible." (Order, p. 16). The Panel transferred the pending asbestos cases in 1991 in an attempt

to manage the enormous backlog of federal court asbestos cases through a consolidated proceeding

with the goal of fairly concluding the pending cases. Based on the facts specific to this case, the

instant matter is not one that the Panel envisioned would be appropriate for transfer under 28 U.S.C. §1407(a) and the Panel's Order and Opinion establishing MDL-875.

The Judicial Panel on Multidistrict Litigation's ("Panel") authority to transfer cases to MDL is derived from 28 U.S.C. §1407(a) which states, in pertinent part, that cases "may be transferred to any district for coordinated or consolidated pretrial proceedings...... [T]ransfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions..." (Emphasis added). The Panel has denied transfer of certain cases that are advanced in the discovery stage and/or set for trial because the transfer of those cases would not "promote the just and efficient conduct of these actions." In Re Multidistrict Private Civil Treble Damage Antitrust Litigation involving Concrete Pipe, No. 12 Judicial Panel on Multidistrict Litigation, 297 F.Supp. 1125, 1126 (1968). In In Re Concrete Pipe, the Panel declined to transfer a pending case to multidistrict litigation for coordinated pretrial proceedings because pretrial proceedings were substantial." Id. See also In Re Celotex Corporation 'Techniform' Products Liability Litigation, Judicial Panel on Multidistrict Litigation, 68 F.R.D. 502, 505 (1975); In Re Ortho Pharmaceutical "Lippes Loop" Products Liability Litigation, No. 336 Judicial Panel on Multidistrict Litigation, 447 F.Supp. 1073, 1074 (1978)(The Panel vacated a show cause order finding that a transfer would not "serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation," in part, because two of the actions were advanced enough to be excluded from transfer).

I.      Substantial Discovery is Complete

Applied here and as demonstrated in the recitation of facts, substantial discovery has been

4

completed. The plaintiff has been deposed, and substantial written discovery has been completed. Dispositive motions filed by several defendants were set for hearing and timely opposed by Plaintiff; however, these motions have been stayed pending the resolution of this conditional transfer order. For these reasons, transfer to the Eastern District of Pennsylvania will only serve to delay the parties in moving this case toward trial in the Eastern District of Louisiana.

II      The Unique Set of Defendants in this Case Leaves the Court With Little to "Coordinate".

Unlike asbestos suits of yesteryear, with their myriad of identical defendants and common products liability causes of action, plaintiff brought his suit against mostly stevedore employers, contractors and two insurers of a bankrupt shipping line. This is not a case involving the "typical" asbestos manufacturers and suppliers. For these reasons, this case bears little relation to "typical" asbestos litigation (or products liability actions in general) capable of being managed by a global-type case management order or shared or coordinated discovery efforts. Judicial efficiency will best be served by allowing this case to proceed to trial in the Eastern District of Louisiana.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court vacate the Conditional Transfer Order and allow this matter to proceed to trial in a timely manner in the United States District Court for the Eastern District of Louisiana.

Respectfully submitted,

**MARTZELL & BICKFORD, A.P.C.**


**SCOTT R. BICKFORD T.A. (#1165)**
**SPENCER R. DOODY (#27795)**
**NEIL F. NAZARETH (#28969)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

**NOTICE**

A copy of this Motion to Vacate the Conditional Transfer Order and brief in support thereof and related documents have been served by regular mail on counsel of record for all represented parties and upon all unrepresented parties to the above captioned action this 6th day of February, 2009.

**NEIL F. NAZARETH**
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing pleading on all counsel on the panel service list attached hereto by placing same in the United States Mail, properly addressed and postage prepaid on this 6th day of February 2009.

**NEIL F. NAZARETH**

F:\Clients\MCDONALD.WALTER\Pleadings MDL\Motion to Vacate and Brief in Support of Opp. to Transfer.wpd

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                      MDL No. 875

PANEL SERVICE LIST (Excerpted from CTO-318)

Walter McDonald, et al. v. Crowley Maritime Corp., et al., E.D. Louisiana,
      C.A. No. 2:08-4203
Clarence Scott Wren, Sr. v. Cooper/T. Smith Stevedoring, Inc., et al., E.D. Louisiana,
      C.A. No. 2:08-4204

Francis P. Accardo
PUGH ACCARDO HAAS
 & RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

Stephen C. Aertker, Jr.
HUVAL VEAZEY FELDER
AERTKER & RENEGAR LLC
532 E. Boston Street
Covington, LA 70433

Jerald L. Album
REICH MEEKS & TREADWAY
Two Lakeway Center, Suite 1000
3850 N. Causeway Blvd.
Metairie, LA 70002

Peter G. Angelos
LAW OFFICES OF
 PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201

B. Ralph Bailey
LAW OFFICE OF B RALPH
BAILEY
660 - 3 N. Beau Chene Drive
Mandeville, LA 70471

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Wilton Ellwood Bland, III
MOULEDOUX BLAND LEGRAND
& BRACKETT
One Shell Square
701 Poydras Street
Suite 4250
New Orleans, LA 70139-4250

John A. Bolles
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

Alan Guy Brackett
MOULEDOUX BLAND LEGRAND
& BRACKETT
4250 One Shell Square
701 Poydras Street
New Orleans, LA 70139-4250

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

Traci Marie Castille
FRANKE & SALLOUM PLLC
2605 14th Street
P.O. Drawer 460
Gulfport, MS 39502

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Kenneth Joseph Gelpi, Jr.
MONTGOMERY BARNETT ET AL
1100 Poydras Street
Suite 3200
New Orleans, LA 70163-3200

Charles V. Giordano
HEBBLER & GIORDANO
3636 S. I-10 Service Road West
Suite 300
Metairie, LA 70001

Stephen Porter Hall
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

Timothy P. Hurley
MAGINNIS & HURLEY
Canal Place One
365 Canal Street
Suite 2750
New Orleans, LA 70130

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street, Third Floor
Oakland, CA 94607

**MDL No. 875 - Panel Service List (Excerpted from CTO-318 (Continued)**

Susan B. Kohn
SIMON PERAGINE SMITH
& REDFEARN LLP
Energy Centre, Suite 3000
1100 Poydras Street
New Orleans, LA 70163-3000

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Gary Allen Lee
LEE FUTRELL & PERLES LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
233 South Wacker Drive, Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105

Neil F. Nazareth
MARTZELL & BICKFORD
338 Lafayette Street
New Orleans, LA 70130

John K. Nieset
CHRISTOVICH & KEARNEY LLP
601 Poydras Street
Suite 2300
New Orleans, LA 70130-6078

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Patricia Cowen Penton
LEE FUTRELL & PERLES LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120

Lawrence G. Pugh, III
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

H. Philip Radecker, Jr.
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

Robert Seth Reich
REICH ALBUM & PLUNKETT
Two Lakeway Center
3850 N. Causeway Blvd.
Suite 1000
Metairie, LA 70002

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Antonio J. Rodriguez
FOWLER RODRIGUEZ
400 Poydras Street
30th Floor
New Orleans, LA 70130

Mark J. Spansel
ADAMS & REESE LLP
One Shell Square, Suite 4500
701 Poydras Street
New Orleans, LA 70139

A. Wendel Stout, III
DEUTSCH KERRIGAN & STILES
755 Magazine Street
New Orleans, LA 70130-3672

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Jefferson R. Tillery
JONES WALKER
Place St. Charles
5th Floor
201 St. Charles Avenue
New Orleans, LA 70170

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ
& TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Robert E. Williams, IV
SULZER & WILLIAMS LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

DOCKET NO. 875

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
THIS PLEADING APPLIES TO:

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **WALTER MCDONALD, ET. AL** | * | **CIVIL ACTION NO. 08-4203** |
| | * | |
| **VERSUS** | * | **SECTION "C"** |
| | * | |
| **CROWLEY MARITIME CORP., ET. AL** | * | **MAGISTRATE (5)** |
| | * | |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## <u>ORDER</u>

Considering the foregoing;

IT IS HEREBY ORDERED THAT, the Conditional Transfer Order (CTO-259) be vacated

and this matter shall not be transferred to the Eastern District of Pennsylvania, MDL 875.

Signed this _____ day of _____ 2009 in _____, _____.


                                            _____
                                            U.S. District Court Judge

F:\Clients\MCDONALD.WALTER\Pleadings MDL\Motion to Vacate and Brief in Support of Opp. to Transfer.wpd

FEB   8 2008


MASSACHUSETTS
GENERAL HOSPITAL


HARVARD
MEDICAL SCHOOL

Pulmonary and Critical Care Unit and
The Department of Pathology
100 Blossom Street, Cox 506
Boston, Massachusetts 02114

Tel: 617.726.8491 or 617.726.1721
Fax: 617.726.2365

Richard Kradin, M.D.
Director of Pulmonary Immunology
and Molecular Biology

Pulmonary Pathologist

March 14, 2000

Christopher H. Sherwood
Martzell & Bickford
338 Lafayette Street
New Orleans, LA  70130-3244
ph:     (504) 581-

RE:     Walter L. Mc Donald (SSN 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)

Dear Mr. Sherwood:

I have completed my review of the medical records and histologic materials in the case of Mr. Walter Mc Donald.

In 3/99 Mr. Mc Donald was a 59 year old man  with a complicated medical history that included metastaic adenocarcinoma to a lymph node in the groin with uncertain primary, gastroesophageal reflux disease, diabetes mellitus, ethanolism, and chronic pancreatitis. Attempts to identify the primary site of his metastasis, including esophagogastroscopy and colonoscopy had been unsuccessful. However, subsequent radiographs of the chest revealed a mass in the right middle lung lobe; the lungs were otherwise unremarkable.  A fine needle biopsy revealed carcinoma.

Physical examination was remarkable for normal breath sounds; there was no digital clubbing.

There are no pulmonary function test within the record.

Mr. Mc Donald had worked as a longshoreman between 1958 and 1987, loading and unloading asbestos cargoes at the Port of New Orleans. He had worked as a stevedore aboard ships and may have been exposed to asbestos while working in proximity to insulators and other tradesmen.  He was apparently a non-smoker.


EXHIBIT
A

I have reviewed 8 glass microscope slides from the Ochsner Clinic; P96-22519 (5) and P99-07641 (3). The aspiration biopsy of the groin mass shows metastatic adenocarcinoma with squamoid features. The needle biopsy of the lung mass shows adenocarcinoma with squamoid features. The tumors are judged to be related and consistent with adenocarcinoma of the lung with metastasis.

In summary, it is my opinion that Mr. McDonald had adenocarcinoma of the right lung with extrathoracic metastasis. His long-term prognosis is guarded and most likely poor. Of all of the types of pulmonary carcinoma, adenocarcinoma is most likely to present as metastatic disease, so that the clinical history in this case is well recognized.

It is my conclusion based on the occupational history of substantial exposure to asbestos with appropriate latency, that Mr. McDonald's lung carcinoma is an asbestos-related neoplasm.

If I can be of further assistance in this case, please let me know.

Sincerely yours,

Richard Kradin, M.D.

# CYTOLOGY REPORT

## ALTON OCHSNER MEDICAL FOUNDATION
### WILLIAM G. HELIS MEMORIAL LABORATORIES
*1516 JEFFERSON HIGHWAY - NEW ORLEANS, LA 70121*

### CYTOLOGY LABORATORY
(504) 842-3000 EXT. 2671

G.W. Willis, M.D.          Edwin N. Beckman, M.D.
Gist H. Farr, Jr., M.D.    John C. Scharfenberg, M.D.
Daniel L. Ferguson, M.D.   Thom F. Smilari, M.D.

**Patient Information**
MCDONALD, WALTER
C: 8225948 H: OF007904886
DOB: 09/30/1939   Sex: M
AGE: 59Y
IP/962-A

**Procedure date**
03/17/99

**Cytology No.**
P99-07641

**Specimen :**
Rt Lung FNA

Slides Received:  3

**Clinical Findings :**
Not Specified

**Prior Treatment :**
Not Specified

**FNA Information :**
Passes:  3   Pathologist: ENB   FNA by: D. Kay          Tech.: JE
(FNA Immediate Study by Pathologist)

Referred by Dr(s). :
GRANIER, STEVEN J.

**Date Received :** 03/17/99

**Date Reported :** 03/18/99

**DIAGNOSIS and/or COMMENTS :**

Non small cell carcinoma. The appearance is compatible with
primary lung origin. The non specific appearance is compatible
with the nonspecific appearance of the tumor in P96-25519.


Edwin N. Beckman, M. D.
Pathologist


(sim:JE/2)

| FINAL REPORT | Page 1 of 1 | COPY |
| --- | --- | --- |

Form revision approved 06/91

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 00-4270        SECTION "5"        DOCKET NO.

FILED

WALTER McDONALD

VERSUS

CROWLEY MARITIME CORPORATION;
SEALAND SERVICES, INC.;
WATERMAN STEAMSHIP CORPORATION;
CSR LTD;
FIBREBOARD CORPORATION
Individually and as Successor to
PABCO PRODUCTS CORPORATION;
GAF CORPORATION Individually and
as Successor to RUBEROID;
OWENS CORNING FIBERGLAS CORPORATION;
PITTSBURGH CORNING CORPORATION;
RAPID AMERICAN CORPORATION as successor to
CAREY CANADA and PHILIP CAREY, INC.;
T&N PLC Individually and as
Successor to TURNER & NEWELL, PLC, TURNER ASBESTOS FIBRES
and KEASBY & MATTISON;
SANK, INC. Individually and as Successor to
BUCK KREIHS & COMPANY, INC.;
EAGLE, INC.; and
DIXIE MACHINE, WELDING & METAL WORKS, INC.

FILED: _____        _____
                                        DEPUTY CLERK

## ORIGINAL PETITION

Petitioner, **Walter McDonald,** hereinafter referred to as "Petitioner," a resident of the State of Louisiana, who for a cause of action respectfully represents the following:

Petitioner has brought this cause of action against the following parties, hereinafter referred to collectively as "Shipping Defendant."

1.

**CROWLEY MARINE SERVICES, INC. As Successor to DELTA STEAMSHIP LINES** is a corporation organized under the laws of a state other than the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

2.

**SEALAND SERVICES, INC.** is a corporation organized under the laws of a state other than the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.



3.

**WATERMAN STEAMSHIP CORPORATION** is a corporation organized under the laws of a state other than the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

Petitioner further brings this cause of action against the following parties, hereinafter referred to collectively as "defendant asbestos companies."

4.

**FIBREBOARD CORPORATION Individually and as successor to PABCO PRODUCTS CORPORATION** is a corporation organized and existing under and by virtue of the Laws of a state other than the State of Louisiana, and licensed to do or is doing business within the State of Louisiana.

5.

**GAF CORPORATION Individually and as successor to RUBEROID** is a corporation organized and existing under and by virtue of the Laws of a state other than the State of Louisiana, and licensed to do or is doing business within the State of Louisiana.

6.

**OWENS CORNING FIBERGLAS CORPORATION** is a corporation organized under the laws of the State of Delaware which for all times pertinent hereto was doing business within the jurisdiction of this court.

7.

**PITTSBURGH CORNING CORPORATION** is a corporation organized under the laws of the State of Pennsylvania which for all times pertinent hereto was doing business within the jurisdiction of this court.

8.

**RAPID AMERICAN CORPORATION as successor to CAREY CANADA and PHILLIP CAREY, INC.** is a corporation organized under the laws of the State of Delaware which for all times pertinent hereto was doing business within the jurisdiction of this court.

Petitioner further brings this cause of action against the following parties, hereinafter referred to collectively as "asbestos fiber defendants."

9.

**CSR LTD** is a corporation organized under the laws of the Country of Australia which for all times pertinent hereto was doing business within the jurisdiction of this court.

10.

**T&N PLC Individually and as Successor to TURNER & NEWELL, PLC, TURNER ASBESTOS FIBRE and KEASBY & MATTISON** is a corporation organized under the laws of the Country of England which for all times pertinent hereto was doing business within the jurisdiction of this court.

Petitioner further brings this cause of action against the following parties, hereinafter referred to collectively as "asbestos contractor defendants."

11.

**SANK, INC., individually and as Successor to BUCK KREIHS & COMPANY, INC.** is a corporation organized under the laws of the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

12.

**EAGLE, INC.  (f/k/a EAGLE ASBESTOS & PACKING COMPANY)** is a corporation organized under the laws of the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

13.

**DIXIE MACHINE, WELDING & METAL WORKS, INC.** is a corporation organized under the laws of the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

14.

Many of the aforesaid Defendants listed are non-resident corporations in Louisiana.  However, at all times material were doing business in Louisiana, made contracts with residents of this State, committed torts in this state against residents of this

3

state, from which acts this suit arises, and such acts subject these Defendants to service of

process pursuant to the Louisiana long-arm statute.

## COUNT ONE

15.

Petitioner's action against Defendants is properly maintainable in the parish of suit

for the following reasons:

a)   Many of the Defendants are foreign corporations; and

b)   Presently, many of these same Shipping Defendants have agents or
     representatives conducting their business in a regular and
     permanent form in Orleans Parish;

c)   Petitioner's exposure to and injury from asbestos occurred, in
     substantial part, while he was present in this parish.

## COUNT TWO

Petitioner realleges and reasserts all previous allegations, and further states that:

16.

Petitioner, **Walter McDonald**, was an longshoreman from 1958 to 1987,

inclusive, who was employed by various stevedoring companies including, but not

limited to, Cooper-T. Smith, Strahan Shipping Co. and Ryan-Walsh, Inc. and its

predecessor Ryan Stevedoring Co., Inc. and worked upon vessels owned and operated by

the Shipping Defendants and others while these vessels were undergoing stevedoring

operations in the Port of New Orleans.

17.

Petitioner, **Walter McDonald**, while engaged in his various duties as a

longshoreman in the Port of New Orleans from 1958 to 1975 was exposed to substantial

quantities of asbestos fibers and asbestos dust and debris during the unloading and

loading of asbestos cargoes containing raw asbestos fiber and asbestos-containing

products.  Petitioner was also exposed to asbestos fibers from asbestos-containing

insulation products, including cements, block insulation and pipe coverings while

engaged in his duties while he and others were working aboard vessels in the Port of New

Orleans as longshoremen when other craftsmen including insulators, pipefitters, welders

and crew members of the vessel were making repairs to heating insulation and boiler

insulation:  applying and removing insulation pads, boiler lagging, boiler jackets, and

4

disassembling boiler feed pumps; and especially by working and breathing air that

contained asbestos fragments, fiber and dust.  And even when not handling the dangerous

materials himself, Petitioner was nevertheless exposed to dangerous materials and

especially the dust and fibers that were caused by the other workers in the areas where the

Petitioner was working causing him to sustain a by-stander exposure to asbestos.   As a

result, Petitioner sustained a continuous, substantial exposure to asbestos throughout his

career as a longshoreman.

**COUNT THREE**
**LIABILITY OF THE SHIPPING DEFENDANTS**

Petitioner realleges and reasserts all previous allegations, and further states that:

18.

**Delta Steamship Lines, Inc., Sealand Services, Inc. and Waterman Steamship**

**Corporation** (Shipping Defendants) are guilty of negligence under 33 U.S.C. §905(b) in

one or more of the following particulars either singularly or in combination:

a)  In failing to provide a safe place to work on a ship under the
control of the Defendant when operations under the Defendant's
supervision and control were being undertaken specifically the
repair, removal, installation or disturbance of asbestos-containing
materials resulting in the contamination of the vessel;

b)  In knowingly subjecting Petitioner to hazardous materials and/or
conditions;

c)  In failing to adequately protect Petitioner from hazardous asbestos-
containing dusts;

d)  In exposing Petitioner to asbestos in areas of the vessel that
remained under the control of Defendant at all times; and

e)  In creating a hazardous work environment in the operation, repair and
maintenance of the vessel while in part by having toxic levels of asbestos
emitted while the vessel was in port or drydock.

19.

These hazardous conditions caused the Petitioner to be exposed to asbestos fibers

which are the proximate cause of Petitioner's injuries, all to Petitioners' damage as set

forth below.

Specifically, the Defendant's vessels were rendered hazardous:

a)  As the insulating material utilized on the vessels is an
unreasonably dangerous material exposure to which caused the
Petitioner's illness;

5

b)   As a result of inadequate warnings given to Petitioner's to protect him against hazardous asbestos dust;

c)   As a result of inadequate and/or insufficient safety devices (specifically respirators) for use when Petitioner was working with or around others engaged in tearing out or reinsulating equipment with asbestos-containing material;

d)   As a result of unsafe work practices when using asbestos-containing insulation;

e)   As a result of unsafe work practices when removing asbestos cargos from their respective vessels, and

f)   As a result of none or inadequate ventilating systems aboard ship to eliminate the asbestos contamination from the vessel.

20.

The Shipping Defendants knew or should have known that the use of asbestos aboard their vessels and the transportation and removal of asbestos cargos created a hazardous work environment with asbestos levels that caused or contributed to the development of asbestos-related diseases to all individuals working on the vessel while it was in port, including Longshoremen.

21.

As a proximate result of the negligent failure of the Shipping Defendants as alleged above, the Decedent was developed asbestos-related diseases including but not limited to, lung cancer.

**COUNT FOUR**
**LIABILITY OF CONTRACTOR DEFENDANTS**

Petitioner realleges and reasserts all previous allegations, and further states that:

22.

That **SANK, INC. individually and as Successor to BUCK KREIHS COMPANY, INC., EAGLE, INC. (f/k/a Eagle Asbestos and Packing Company) and DIXIE MACHINE, WELDING & METAL WORKS, INC.** (hereinafter known as "Contractor Defendants"), each and individually, sold, distributed, installed, removed and/or supplied asbestos and asbestos-containing product(s) to Delta Steamship Lines, Inc., Lykes Bros. Steamship Co., Inc., Sealand Services, Inc. and Waterman Steamship Corporation and the Shipping Defendants vessels and other vessels in the Port of New Orleans which Petitioner came in contact with while working as a Longshoreman and

6

which Petitioner inhaled causing his asbestos-related injuries, including, but not limited
to, lung cancer.

23.

That Contractor Defendants are liable to Petitioner as professional vendors of
asbestos-containing products and, as such, because of the Defendants' size, volume of
business and merchandising practices, knew or should have known of the defects of the
asbestos products they sold, installed and removed and negligently failed to warn the
users or by-standers of potential health hazards from the use of said products.

24.

That, for all times pertinent, Petitioner was employed as a Longshoreman and
worked in close proximity to Defendants' employees, agents and/or representatives and
was exposed to, asbestos and asbestos products that Defendants supplied, installed or
removed from the Shipping Defendants' vessels where he was performing his normal job
duties as a longshoreman.

25.

That the Contractor Defendants and their employees, agents and representatives
had contracts or subcontracts with the Shipping Defendants or other entities, including
Lykes Bros. Steamship Co., Inc. to provide repairs and maintenance services on their
vessels which services included the maintenance, removal, installation and repair of
boilers, heat piping systems and machinery aboard the vessels.

26.

That during the performance of their duties aboard these vessels while in the Port
of New Orleans, the contractor Defendants removed, installed or repaired asbestos-
containing materials which created a hazardous environment to others working aboard the
ship including Petitioner, without any warning to the others working in the area of the
health hazard nor taking any measures to protect them from the hazardous conditions.

27.

That Contractor Defendants, each and individually, are liable to Petitioner because
they knew or should have known that the asbestos products which they sold, supplied,
installed and removed were unreasonably dangerous in normal use and their failure to

7

communicate said information rendered them negligent to Petitioner and such negligence

was the cause of Petitioner's injuries, including, but not limited to, lung cancer,.

## COUNT FIVE
## LIABILITY OF ASBESTOS MANUFACTURER DEFENDANTS

Petitioner realleges and reasserts all previous allegations, and further states that:

28.

Defendant, **FIBREBOARD CORPORATION Individually and as Successor**

**to PABCO PRODUCTS CORPORATION; GAF CORPORATION Individually**

**and as successor to RUBEROID; OWENS CORNING FIBERGLAS**

**CORPORATION; PITTSBURGH CORNING CORPORATION; and RAPID**

**AMERICAN CORPORATION as successor to CAREY CANADA and PHILLIP**

**CAREY, INC.,** (hereinafter referred to as "Defendant Asbestos Companies"), during all

the times mentioned herein and for a long time prior thereto, have been, and some are

now, engaged in the business of manufacturing, selling, marketing, distributing, and

otherwise placing into the stream of commerce insulation materials containing asbestos.

Said materials were expected to and did, in fact, reach the ultimate users and consumers

in substantially the same condition in which they were sold.  These asbestos products of

the Defendant Asbestos Manufacturers were defective and unreasonably dangerous in

their design and marketing, which was a producing cause of the injuries and damages

claimed herein.

29.

**BREACH OF IMPLIED AND EXPRESSED WARRANTIES**

Petitioner alleges that the Defendant Asbestos Companies, and each of them,

breached their warranties to them in the following respects:

    a)    That the Defendant Asbestos Companies knew or in the exercise of
reasonable care ought to have known that their insulation was
defective and that such insulation was not suitable for the purposes
for which it was intended;

    b)    That the Defendant Asbestos Companies knew and should have
tested their products, especially those containing asbestos, to
ascertain the safe or dangerous nature of such products before
offering them for sale, or in the alternative, should have removed
such products from the market upon ascertaining that such
products would cause asbestosis, lung cancer, and mesothelioma;

8

c)    That the Defendant Asbestos Companies should have devised a method of application for their products, especially those containing asbestos, that would have kept those using such products from contracting Asbestosis and lung cancer if the Defendant Asbestos Companies would not remove such products from sales to the public; and

d)    That the products of the Defendant Asbestos Companies, especially those containing asbestos, were warranted, either expressly or impliedly, to be merchantable, when in truth they were not, and therefore, the Defendant Asbestos Companies breached to the Petitioner, as well as to others, the warranty of merchantability.

The Defendants' breach of implied and expressed warranties resulted directly and proximately caused or contributed to Petitioner's injury and their damages to Petitioner as set forth below.

## COUNT SIX

Petitioner realleges and reasserts all previous allegations, and further states that:

30.

## STRICT LIABILITY/NEGLIGENT FAILURE TO WARN

Petitioner alleges that the Defendant Asbestos Companies, and each of them, are strictly liable and/or are negligent in their failure to warn in the following respects:

**1.    Negligent Failure to Warn**

That the Defendant Asbestos Companies knew or in the exercise of ordinary or reasonable care ought to have known that the insulation they manufactured and distributed was deleterious, poisonous, and highly harmful to Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, Defendant Asbestos Companies negligently failed to take any reasonable precautions or exercise reasonable care to warn the Petitioner of the danger and harm to which he was exposed while handling the Defendant Asbestos Companies' said insulation; and

That the Defendant Asbestos Companies knew or in the exercise of ordinary care ought to have known that their said insulation was deleterious, poisonous, and highly harmful to the Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, Defendant Asbestos Companies failed and omitted to provide the Petitioner with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there was any, to protect them from being poisoned and disabled as they were by exposure to such deleterious and harmful compound substances and other material contained in said Defendant Asbestos Companies' insulation.

**2.    Strict Products Liability, Unreasonably Dangerous Due to Defective Design**

9

That the Defendant Asbestos Companies packaged asbestos-containing insulation in such a manner that in the ordinary handling of the packaging, Petitioner came in contact with such deleterious, poisonous and highly harmful compound substances and other material contained in said Defendant Asbestos Companies' insulation;

That the Defendant Asbestos Companies failed to design their packaging and product in such a manner so as to advise and warn foreseeable users, including the Petitioner, by placing warnings on their containers of said insulation and/or on the actual insulation, to advise the handlers, other users and bystanders of the dangers of exposure with said insulation; and

**3.  Unreasonably Dangerous Per Se**

That Defendant Asbestos Companies' products are unreasonably dangerous per se.

The Defendants' breach of implied and expressed warranties resulted directly and proximately caused the injury complained of herein.

**COUNT SEVEN**
**LIABILITY OF THE ASBESTOS FIBER DEFENDANTS**

Petitioner realleges and reasserts all previous allegations, and further states that:

31.

**STRICT LIABILITY/NEGLIGENT FAILURE TO WARN**

Petitioner alleges that **CSR, LTD and T&N PLC** (Asbestos Fiber Defendants), and each of them, are strictly liable and/or are negligent in their failure to warn in the following respects:

**1.  Negligent Failure to Warn**

That the Asbestos Fiber Defendants knew or in the exercise of ordinary or reasonable care ought to have known that the asbestos fiber that they mined and distributed was deleterious, poisonous, and highly harmful to Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, Asbestos Fiber Defendants negligently failed to take any reasonable precautions or exercise reasonable care to warn the Petitioner and others of the danger and harm to which he was exposed while handling their Asbestos Fiber; and

That the Asbestos Fiber Defendants knew or in the exercise of ordinary care ought to have known that their said asbestos fiber was deleterious, poisonous, and highly harmful to the Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, Asbestos Fiber Defendants failed and omitted to provide the Petitioner with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there was any, to protect them from being poisoned and disabled as they were by exposure to such Defendant's asbestos fiber.

10

2. **Strict Products Liability, Unreasonably Dangerous Due to Defective Design**

That the Asbestos Fiber Defendants packaged, shipped, transported, distributed or otherwise put in the stream of commerce asbestos fiber in such a manner that in the ordinary handling of it, Petitioner came in contact with such deleterious, poisonous and highly harmful compound substances;

That the Asbestos Fiber Defendants failed to design their packaging in such a manner so as to advise and warn foreseeable handlers, including the Petitioner, by placing warnings on their containers of said asbestos fiber, to advise the handlers, other users and bystanders of the dangers of exposure with said insulation; and

3. **Unreasonably Dangerous Per Se**

That Asbestos Fiber Defendants' products are unreasonably dangerous per se.

The Defendants' breach of as herein above set forth resulted directly and proximately caused the injury complained of herein.

32.

Petitioner alleges that during the years he was employed as a Longshoreman and that in the performance of his normal and ordinary duties, he was required to handle large quantities of the asbestos fiber mined and distributed by the above-named Asbestos Fiber Defendants. That in addition to the fact that the Petitioner actually handled the products mined and distributed by the above-named Asbestos Fiber Defendants as a Longshoreman, the Petitioner says that on many of the vessels while not handling the asbestos fiber himself mined and distributed by the Asbestos Fiber Defendants, he was nevertheless exposed to the asbestos fiber shipments which were removed from vessels and transported for storage and further shipment by other workers in the same area where the Petitioner was working.

33.

That during the period of time in which the Petitioner was employed as a Longshoreman in the normal course of his employment, he was caused to come in contact with the asbestos fiber mined and distributed by the Asbestos Fiber Defendants, and its chemical compounds deleterious substances and matter, did sustain severe, permanent and disabling injuries as hereinafter set forth including lung cancer.

34.

That Petitioner's asbestos-related diseases were diagnosed within one year prior to filing suit.

## DAMAGES

35.

The Petitioner will show that he was permanently and severely injured; that he sustained very serious and permanent injuries to his body; that he suffered as a result of his asbestos diseases including lung cancer. Petitioner has sought the services of physicians in an effort to cure or arrest the condition from which he was suffering.

36.

That in an effort to treat, relieve and heal himself of said injuries and to regain his health, the Petitioner was obliged to incur an expense amounting to a considerable sum of money for medical and hospitalization care, expenses for medicines, supplies and so forth, the amount of which the Petitioner is unable to accurately estimate at this time.

37.

That by reason of the facts hereinabove alleged, Petitioner was made to suffer and sustain at the hands of the Defendants, and each of them, general and special damages including, but not limited to, past and future physical pain and suffering, past and future mental anguish and past and future medical expenses, in a sum above the minimum jurisdiction of this Court.

## INTEREST

38.

Petitioner submits that she is entitled to recovery of pre-judgment interest with respect to damages sustained prior to judgment in this matter, such pre-judgment interest to be calculated at the appropriate prevailing rate.

39.

Petitioner demands a trial by jury.

WHEREFORE, Petitioner prays that the Defendants and each of them be cited to appear and answer herein as the law directs, and that upon final hearing hereof, Petitioner recovers of and from the Defendants and each of them, jointly and/or severally or *in*

*solido,* for his damages as alleged in a sum above the minimum jurisdiction of this Court

for general and special damages, together with his costs and disbursements herein, and

interest on said judgment from the date thereof until paid at the prevailing interest rate,

and for such other and further relief, special and general, at law and in equity, to which

Petitioner may be entitled.

Respectfully submitted,

MARTZELL & BICKFORD

SCOTT R. BICKFORD TA (1165)
JOHN R. MARTZELL (9013)
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 - facsimile
ATTORNEYS FOR Petitioner

PLEASE SERVE:

**CROWLEY MARINE SERVICES, INC.**
**As Successor to DELTA STEAMSHIP LINES, INC.**
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70808-6129

**SEALAND SERVICES, INC.**
Through its agent for service of process
P.O. Box 2555
Elizabeth, NJ 07207-2555

**WATERMAN STEAMSHIP CORPORATION**
Through its agent for service of process
William H. Hines, Esq..
201 St. Charles Ave., 50th Floor
New Orleans, LA 70170

**FIBREBOARD CORPORATION**
**Individually and as Successor to**
**PABCO PRODUCTS CORPORATION**
Through its agent for service
United States Corporation Company
1013 Centre Road
Wilmington, DE 19805

**GAF CORPORATION, Individually and**
**as Successor to RUBEROID**
Through its agent for service of process
c/o General Counsel
1361 Apls Road
Wayne, NJ 07470

13

**OWENS CORNING FIBERGLAS CORPORATION**
C.T. Corporation System
8550 United Plaza
Baton Rouge, LA 70809

**PITTSBURGH CORNING CORPORATION**
Through its agent for service of process
800 Presque Isle Drive
Pittsburgh, PA 15239

**RAPID-AMERICAN CORPORATION, Individually**
  **and as Successor to Philip-Carey Inc.**
Through their agent for service
The Prentice-Hall Corporation System, Inc.
1013 Centre Road
Dover, DE 19805

**CSR, LTD**
Through its agent for service
1-3 O'Connell Street
Sydney, N.S.W. Australia

**T & N PLC**
**Individually and as Successor to**
**TURNER & NEWELL PLC,**
**TURNER ASBESTOS FIBRE**
**and KEASBY & MATTISON**
Through its registered agent:
T & N PLC
Bowden House
Ashburton Road, W., Trafford Park
Manchester, M17 1RA, Untied Kingdom

**SANK, INC. individually and as Successor to Buck Kreihs Company, Inc.**
Through its Agent for Service
John J. Sehrt, Jr.
3850 N. Causeway Blvd.
Lakeway II
Metairie, LA 70002

**EAGLE, INC. (Formerly EAGLE ASBESTOS & PACKING)**
Through its agent for service
Lawrence G. Pugh, III, Esq.
Montgomery, Barnett, Brown, Read, Hammond & Mintz
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3200

**DIXIE MACHINE, WELDING & METAL WORKS, INC.**
Through its Agent for Service
Vicki H. Kihnemann
5801 Citrus Blvd.
Harahan, LA 70123

F:\CLIENTS\MCDONALD.WLT\PLEADING\PETITION.ORG

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 00-4270                    DIVISION "5 "                    SECTION

WALTER McDONALD

VERSUS

CROWLEY MARITIME CORPORATION, ET AL

FILED:_____        _____
                                           **DEPUTY CLERK**

**PLAINTIFFS' CONSOLIDATED RESPONSES TO THE DISCOVERY
REQUESTS OF ALL DEFENDANTS TO ALL PLAINTIFFS
IN ALL ASBESTOS-RELATED, PERSONAL INJURY AND DEATH CASES**

TO:   ALL DEFENDANTS, By and Through Their Counsel of Record

NOW INTO COURT, appearing herein by and through undersigned counsel of record,

come Plaintiff, Walter McDonald, who submits these Consolidated Responses to all Defendants'

Discovery Requests propounded on behalf of all Defendants pursuant to the Louisiana Code of

Civil Procedure.

GENERAL OBJECTION

Plaintiff objects, and therefore declines to respond, to each interrogatory and request for

production to the extent it seeks discovery regarding confidential matters, trial preparation

information, and/or matters immune from discovery by virtue of the attorney-client privilege, the

work product doctrine, or any other such privilege or doctrine recognized under the Louisiana

Code of Civil Procedure.

**PLAINTIFF'S RESPONSE TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Please state the name and address of each person who participated in the answers to these

interrogatories or who furnished any information used in the preparation of these answers to

interrogatories.

**ANSWER TO INTERROGATORY NO. 1:**

The response to these Interrogatories were prepared by Plaintiff and his counsel.



**INTERROGATORY NO. 2:**

Please state the following:

a)     Your full name and all other names by which you have been known (including

any nicknames).

b)     The date and place of birth.

c)     Your present home address.

d)     In chronological order, the addresses where you have lived in the past 20 (twenty)

years, and the inclusive dates of your residence at each location.

e)     Your present occupation and business address:

f)     Your Social Security Number.

g)     Your drivers' license number, the state in which it was issued, the date of

issuance, and the expiration date.

**ANSWER TO INTERROGATORY NO. 2:**

a)     Walter Louis McDonald

b)     September 30, 1939, Place of birth: York, AL

c)     2430 Hamilton Street, New Orleans, LA 70118

d)     2430 Hamilton Street, New Orleans, LA 70118

e)     Retired.

f)     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

g)     Louisiana drivers license #001823203

**INTERROGATORY NO. 3:**

If you are currently married, state your spouse's name, the date of your marriage, and the

name and address of your spouse's employer.

With respect to any and all prior spouses, if any, state:

a)     The name of your former spouse and the date of the marriage.

b)     The date of the dissolution of the marriage or the death of spouse.

**ANSWER TO INTERROGATORY NO. 3:**

Walter McDonald is currently married to Emeldia Reaia McDonald.  They have been

married for approximately fifteen years.  Plaintiff was previously married to Dorothy Rogers.

The marriage to Dorothy Rogers ended in divorce.

2

**INTERROGATORY NO. 4:**

State the present name, age, date of birth, and address of each of your children, and of any person, who in any way is financially dependent upon you for support, including, but not limited to, parents, in-laws, relatives, or other people; and for each person, state the extent to which each person is dependent upon you for financial support.

**ANSWER TO INTERROGATORY NO. 4:**

Plaintiff has four children.  Their names are Sabrina, Cathy, Terry, and Karen.  None of them are dependant upon Plaintiff for financial support at this time.

**INTERROGATORY NO. 5:**

State the names and addresses of all schools that you have attended, the dates attended, the type of schools attended, and with respect to each, the highest grade reached, and the degree or certificate obtained, if any.

**ANSWER TO INTERROGATORY NO. 5:**

To the best of plaintiff's knowledge, Plaintiff attended school through York Westend High School in York, Alabama and received a High School diploma in 1958.

**INTERROGATORY NO. 6:**

If you have ever been arrested, charged, or convicted of a felony, please state the date, location of the incident, and the result of each such arrest, charge or conviction.

**ANSWER TO INTERROGATORY NO. 6:**

To the best of plaintiff's knowledge, plaintiff was previously arrested in New Orleans, LA for carrying a concealed weapon.

**INTERROGATORY NO. 7:**

If you have ever served in any capacity in the military service, please give the dates, your rank, service number, and branch of service; type of discharge; and the type of disability and/or pension you have received or are receiving, if any.

**ANSWER TO INTERROGATORY NO. 7:**

Plaintiff was never in the military.

**INTERROGATORY NO. 8:**

If you have ever filed a claim or received payment for disability from the Veterans' Administration, state the basis for your claim, when the claim was filed, the disposition of the

claim, the amount of payment you received, and the basis for such payment.

**ANSWER TO INTERROGATORY NO. 8:**

No.

**INTERROGATORY NO. 9:**

If you have ever been self-employed, state the dates of such employment, the type of work you performed, and the name of your business.

**ANSWER TO INTERROGATORY NO. 9:**

Plaintiff previously owned two sweet shops known as Mac & Cat which were located at 28 Mistletoe and 1733 Felicity.  He owned these stores for about 6 to 7 years in the 1970's.

**INTERROGATORY NO. 10:**

If you have ever been a member of a union, please state:

a)   The name of each union to which you have belonged; the number and address of each local of which you have been a member; and the dates you belonged to each union and local.

b)   Whether you were an officer, director, and/or business agent of any union, and if so, describe all positions held in any unions, and the periods during which you held such positions.

c)   Whether you were ever a member of the International Association of Heat and Frost Insulators and Asbestos Workers ("the Asbestos Workers' Union");

d)   Whether you ever received the Asbestos Workers' magazine from the Asbestos Workers' Union, and if so, state whether you ever read the greensheets.

**ANSWER TO INTERROGATORY NO. 10:**

a)   To the best of plaintiff's knowledge, plaintiff was a member of the local International Longshoreman's Association.

b)   To the best of plaintiff's knowledge, plaintiff has never been an officer, director, and/or business agent of any union.

c)   To the best of plaintiff's knowledge, plaintiff has never been a member of the International Association of Heat and Frost Insulators and Asbestos Workers.

d)   To the best of plaintiff's knowledge, plaintiff has never received the Asbestos Workers' magazine.

4

**INTERROGATORY NO. 11:**

State your income and the source of your income for each of the last five years.  If your spouse is or has been employed, please state his/her income for the last five years.

**ANSWER TO INTERROGATORY NO. 11:**

Plaintiff is currently receiving Social Security benefits in the amount of $1,000.00 per month and a union pension of $671.00 per month.  He has been retired since becoming disabled in 1986.

**INTERROGATORY NO. 12:**

a)      If you are presently employed, state the name and address of your employer, your job classification, rate of pay, and the type of work you are presently performing. If you are not presently employed, give the same information as to your last employment, together with the reasons why you are no longer employed.  Please state the same information with respect to your spouse.

b)      If you have lost any time from work because of any physical ailment, state how much time has been lost from work during the last five years and the disability that has caused you to lose time from work.

**ANSWER TO INTERROGATORY NO. 12:**

a)      Plaintiff has been disabled since 1986.

b)      Plaintiff has been disabled since 1986.

**INTERROGATORY NO. 13:**

a)      If you have ever received any accidental bodily injury, state the nature and extent of injury.

b)      If you have ever been a party to any claim or lawsuit for bodily injury, give the caption of the lawsuit, the date on which the suit was filed, the name and address of your attorney, and the ultimate disposition of the claim or lawsuit.

**ANSWER TO INTERROGATORY NO. 13:**

To the best of his knowledge, in addition to the extant matter, Plaintiff was injured on the job in 1986 while working for Cooper/T.Smith.  He filed a claim for compensation.  To the best of his knowledge, he received a settlement of $50,000.00 for this claim.  Plaintiff also sustained a

5

knee injury on the job while working for Cooper/T.Smith.   No claim was filed as a result of this injury but Plaintiff received a payment of $6,000.00.

**INTERROGATORY NO. 14:**

If you have ever filed a claim for worker's compensation, please give the following information with respect to each such claim:

a)      The name of the employer, date of claim, and claim file number.

b)      A description of the injury made the basis of the claim.

c)      The amount of money paid to you for the claim.

d)      If any lawsuit has been filed on the worker's compensation claim, the caption of the case, case number, and the court in which the case was filed.

e)      The name and address of any physician or chiropractor who has tested, treated, or examined you in connection with this claim.

f)      If you were hospitalized in connection with the claim, provide the name and address of the hospital, the length of your stay, and your primary physician during the hospitalization.

**ANSWER TO INTERROGATORY NO. 14:**

See response to Interrogatory No. 13.  Furthermore, Plaintiff has filed a claim for Longshore and Harbor Workers Compensation Act benefits against Ryan-Walsh and Cooper/T. Smith for his development of an occupational lung cancer.  The claim is currently pending.

**INTERROGATORY NO. 15:**

Described in detail your employment history, including:

a)      The name and address of each employer.

b)      The dates during which you worked for each employer,

c)      The location and description of each job site where you were employed, and the dates during which you worked at each such job site.

d)      The name and last known address of your immediate supervisor and co-workers at each job site where you are claiming exposure to asbestos.

e)      Your wage rate and hours worked in an average week for each job site where you claim you were exposed to asbestos.

f)      Your job duties, craft, and titles for each job site where you were employed and

6

claim exposure to asbestos-containing products.

g)    The reason your employment with each employer listed was terminated.

h)    Each job site and the dates during which you claim to have been exposed to asbestos.

i)    Each asbestos product to which you were exposed, including the name of the manufacturer, the trade name of the product, and the description of the product.

j)    When, where, and whether you worked with and/or around each asbestos product identified above.

k)    Whether you were exposed to any dust, fumes, or gases, and if so, what were you exposed to and at what jobs.

## ANSWER TO INTERROGATORY NO. 15:

To the best of his knowledge, Plaintiff was employed as a longshoreman from 1959 to 1986 in the Port of New Orleans, LA. During this time, he worked for various stevedoring companies in the Port. Plaintiff worked in the gang that was responsible for loading and unloading cargoes from the vessels in the Port. The cargoes included shipments of raw asbestos fibers that were being unloaded from the vessels by the longshoremen. These asbestos cargoes created dust in the cargo holds and other areas of the vessel and adjacent wharves during stevedoring operations, including unloading, loading and storage, resulting in substantial exposures to asbestos to longshoremen handling the cargos directly as well as those working in the general vicinity while these operations were ongoing. Moreover, Plaintiff, and other members of the gang handling the unloading and loading of cargoes, also removed asbestos cargoes destined for Galveston and Houston, Texas in order to unload the New Orleans cargoes. As a result, asbestos dust was emitted in the removal and restoring of the asbestos cargoes bound for Texas. The Journal of Commerce identifies the import of asbestos cargoes which were unloaded in the Port of New Orleans, Louisiana and the Ports of Galveston and Houston, Texas.

Plaintiff also had occasion to board vessels which were insulated with asbestos products resulting in asbestos exposure. While the vessels being loaded and unloaded by longshoremen, including Plaintiff, were in Port, various repair and contracting companies removed and installed asbestos-containing products on the vessels resulting in Plaintiff, and other stevedores, sustaining additional exposures to asbestos. The stevedores aboard these vessels, including Plaintiff, went

throughout these vessels including into the engine room and other areas of the vessel during the course of performing their job duties. During this time, they were exposed to asbestos-containing products while the vessel was undergoing maintenance and repair operations.

**INTERROGATORY NO. 16:**

     a)     State the name, last known address (business or home), relationship to you, present occupation, of each witness that has any knowledge of the facts relevant to this lawsuit, including those persons who have knowledge of any time that you may have been exposed to any products that may have contained asbestos.

     b)     As to each individual listed above, describe the jobsite at which they worked, their occupation at each jobsite, the asbestos-containing products they can identify at each such jobsite, and whether they worked with Plaintiff at each such jobsite.

**ANSWER TO INTERROGATORY NO. 16:**

To the best of Plaintiff's knowledge, in addition to Plaintiff, Walter McDonald, Plaintiff responds that the following may have information regarding his exposure to asbestos during the course and scope of his employment as a longshoreman: Simmie Walker, Mose Brown, and Percy Pontiff. Moreover, the following may have information concerning the dust created during the loading and unloading of asbestos cargoes as well as the shipments of asbestos into the Port of New Orleans: William Schulte, and Douglas Faulkner. Plaintiff also refers defendants to the medical records for the identity of various physicians with information regarding the history, care and treatment of Plaintiff for lung cancer including, but not limited to, Kathleen Wilson, M.D.

**INTERROGATORY NO. 17:**

If you have any direct evidence of invoices from suppliers for any purchases or products containing asbestos from any or all of the Defendants, which products were used on job sites where you worked, identify the document by name of supplier, date of invoice, name of purchaser, and place of delivery.

**ANSWER TO INTERROGATORY NO. 17:**

To the best of his knowledge, the Journal of Commerce has information pertaining the shipment of cargos including asbestos into the Ports of New Orleans, Galveston and Houston during certain periods of time. An abstract of these records is attached hereto.

**INTERROGATORY NO. 18:**

a)     When did you first experience any problems with your respiratory health, lungs, or breathing?

b)     Describe in layman's language what your physical complaints were at the time you first experienced such problems.

c)     If the physical complaints and symptoms of which you now complain are different from those you first experienced, as described above, please describe your present complaints and symptoms, and state when you first experienced those complaints.

d)     Identify each physician who has advised you that you had any of the following, and when you were so advised;

     1)     Chronic obstructive lung disease;

     2)     Emphysema;

     3)     Pneumoconiosis;

     4)     Asbestosis; or

     5)     Any other lung condition that the physician indicated was related to the exposure of asbestos-containing products.

**ANSWER TO INTERROGATORY NO. 18:**

To the best of his knowledge, Plaintiff responds that he was diagnosed with lung cancer at Ochsner Clinic on or about March 19, 1999.   Since the diagnosis of his disease, his primary treating physician has been Kathleen Wilson, M.D.

**INTERROGATORY NO. 19:**

Excluding the information provided in response to Interrogatory No. 18 above, please state the name and address of each physician who has examined or treated you, or to whom you have gone for any reason during your lifetime, the reason you consulted each physician, the dates and type of any treatment received.

**ANSWER TO INTERROGATORY NO. 19:**

Plaintiff objects to this Interrogatory as it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding the foregoing objection, Plaintiff responds, to the best of his knowledge, that he has been examined,

cared for and/or treated by the following physicians

    Kathleen Wilson, M.D.
    Ochsner Clinic
    1415 Jefferson Hwy.
    New Orleans, LA 70124

    Steven Granier, M.D.
    Ochsner Clinic
    1415 Jefferson Hwy.
    New Orleans, LA 70124

    George Furhman, M.D.
    Ochsner Clinic
    1415 Jefferson Hwy.
    New Orleans, LA 70124

    Anna C. Davis, M.D.
    St. Charles General Hospital
    3700 St. Charles Avenue
    New Orleans, LA 70115

Plaintiff has also seen various physicians in the Ochsner system over the years. A copy of

the medical records is available in the Plaintiff's master file which can be reviewed at the law

offices of Martzell & Bickford.

**INTERROGATORY NO. 20:**

Please state the name and address of any hospital or clinic in which you were examined,

had tests or x-rays performed, received outpatient care, or were hospitalized during your lifetime,

the dates and reasons for each examination, testing, hospitalization, or treatment.

**ANSWER TO INTERROGATORY NO. 20:**

Plaintiff objects to this Interrogatory as it is overly broad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding the

foregoing objection, Plaintiff submits that he has been treated in the following facilities:

    Ochsner Hospital and Clinic
    1415 Jefferson Hwy.
    New Orleans, LA 70124

    St. Charles General Hospital
    3700 St. Charles Avenue
    New Orleans, LA 70115

A copy of the medical records is available in the Plaintiff's master file which can be

reviewed at the law offices of Martzell & Bickford.

**INTERROGATORY NO. 21:**

If you have ever smoked, state when you started smoking, what type of tobacco product

you smoked, how long have you smoked, how much have you smoked of each type of tobacco

product, whether a physician ever advised you to stop smoking, and if so, who and when, and

state if applicable, the reasons you stopped smoking.

**ANSWER TO INTERROGATORY NO. 21:**

　　　Plaintiff has never smoked cigarettes.  However, he did occasionally smoke cigars

between approximately 1974 when he was 35 until approximately 1998.

**INTERROGATORY NO. 22:**

　　　If you have ever been examined through a company or union screening program for lung

or respiratory disease, give the dates, place and details of your examination, and the name of the

company or union sponsoring the program.

**ANSWER TO INTERROGATORY NO. 22:**

　　　To the best of his knowledge, Plaintiff has never been examined through a company or

union screening program for lung or respiratory disease.  However, several years ago,

Cooper/T.Smith sent him to an asbestos screening at a location near Baptist Hospital (now

Memorial Medical Center-Uptown Campus) on Napoleon Avenue, New Orleans, LA.

**INTERROGATORY NO. 23:**

　　　a)　　How and under what circumstances did you learn that asbestos could be harmful

　　　　　　to your health?

　　　b)　　When did you first believe that the lung problems or breathing problems

　　　　　　complained of might have been related to asbestos-containing products?

　　　c)　　When were you first told, and by whom, that any lung problems or breathing

　　　　　　problems complained of might have been related to asbestos-containing products?

**ANSWER TO INTERROGATORY NO. 23:**

　　　Plaintiff became aware that asbestos was hazardous to your health during casual

conversations with fellow stevedores and friends who worked at Avondale Shipyard.  He can not

recall the specific time period during which these conversations were held but believes them to

be many years ago.

**INTERROGATORY NO. 24:**

　　　a)　　Identify all expert witnesses who have been consulted in connection with this

　　　　　　action, even if they may not be called to testify at trial, if their opinion has been

11

reviewed by a testifying expert.

b)     State the impressions and opinions held by and the facts known by any consulting

expert identified above.

c)     Identify all documents and tangible things, including reports, prepared by or relied

on by any consulting expert identified above.

## ANSWER TO INTERROGATORY NO. 24:

Plaintiff objects to the discovery of "consulting experts."  Without waiving said

objection, plaintiff responds to the best of his knowledge:

1.     Dr. David Ozonoff - Expert
Boston University School of Public Health
80 East Concord Street
Boston, MA  02118

Dr. Ozonoff is a physician, epidemiologist and medical historian and his testimony,  may

be in regard to his review of the medical literature concerning asbestos diseases.  David Ozonoff,

M.D., M.P.H., a professor of medicine at Boston University, may testify live or by deposition.

(1)     The defendants knew or should have known historically that asbestos inhalation

could cause asbestosis, lung cancer, mesothelioma, and other asbestos-related diseases.

(2)     Dr. Ozonoff may also testify that a person exposed to asbestos is at a higher risk

than the normal individual to develop some form of cancer.  Dr. Ozonoff may also testify that it

is his opinion that ten years after the cessation of cigarette smoking the risk of lung cancer

attributable to smoking is almost nil.  He may also testify that only 8% - 12% of those who

smoke cigarettes in heavy quantities will never suffer any form of lung cancer.  The basis of this

opinion is founded on recent statistics filed by the National Cancer Institute, the United States

Public Service, and Herbert Seidemann and others.

Dr. Ozonoff may also testify that gastrointestinal cancer which results in a person who

also has asbestosis can be attributable to the asbestos exposure.  The basis for this opinion is

epidemiological studies by Selikoff and other that show that GI cancer is greatly increased in

those persons who have been exposed to asbestos.

Furthermore, Dr. Ozonoff may testify concerning the following:

Between the years 1898 and 1930, the medical community gradually became aware of a fibrotic

lung disease which, in 1927, actually received the name asbestosis.  By year 1930, it is Dr.

Ozonoff's opinion that there was a general acceptance that exposure to asbestos was linked to a

12

serious lung disease.  It as the disease that was caused by the inhalation of asbestos dust in sufficient quantities that would cause scarring in the lungs.  If the scarring was serious enough, it could be incapacitating and/or fatal.

The first cancer cases which were reported in association with asbestos exposure appeared in 1934.  Over the next two decades, there were a series of articles published associating asbestos exposure and lung cancer.  It is Dr. Ozonoff's opinion that, by 1949, there was a causal relationship established between asbestos exposure and cancer.

There was considerable debate about mesothelioma throughout the 1930s, 40s and 50s as to whether it was just a lung cancer or a special disease.  It was known by several names sometimes called pleural cancer, sometimes called endothelioma and it is sometimes called mesothelioma.  It is Dr. Ozonoff's opinion that the medical community associated the cause of mesothelioma with asbestos exposure perhaps as early as 1949 but it is certainly his opinion that a consensus formed no later than 1960 as to this dreaded disease.

Dr. Ozonoff may also testify as to significant pieces of medical literature and studies which have related asbestos to health risks.  Dr. Ozonoff bases his opinion in part upon those articles noted in his bibliography and more specifically the following:

1. Annual report of the chief inspector of factories for the year 1898. HMSO, 1899,  Part II, Reports, pp. 171-172.

2. Murray, H.M., "Report of the Departmental Committee on Compensation for Industrial Disease, Minutes of Evidence Appendices and Index, 3495-3496, London: Wyman and Sone (1907)

3. Pancoast, H.K., Miller, T.G., Landis, H.R.M., "A Roentgenologic Study of the Effects of Dust Inhalation upon the Lungs," Trans. Assoc. Amer. Phys. 32:97-108 (1917)

4. Cooke, W.E., "Pulmonary asbestosis," Br. Med.J., 2:1024-1025 (1927)

5. Cooke, W.E. and Hill, C.F., "Pneumoconiosis due to asbestos dust,", J. Royal Micr. Soc., 47:232-238, 1927, (reported in Br. Med. J., 1:890-891, 1927; cites in JAMA, 89:304, 1927)

6. Merewether, E.R.A., and Price, C.W., "Reports of the Effect of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry," pp. 5-34, London: HMSO (1930)

7. Merewether, E.R.A., "A memorandum on asbestosis," Tubercle:  15:69-81, 109-118, 152-159, (1933, 1934)

8. Wood, W.B. and Gloyne, S.R.,. "Pulmonary asbestosis:  a review of one hundred cases," Lancet, 2:1383-1385 (1934)

13

9.  Lynch, K.M. and Smith, W.A., "Pulmonary asbestosis. III: carcinoma of lung in asbestos-silicosis," Am. J. Cancer, 24:56-64 (1935)

10. Nordmann, M., "Der Berufskrebs der Asbestarbeiter," Z. Krebsforsch., 47:288-302 (1938)

11. Vorwald, A.J. and Karr, J.W., "Pneumoconiosis and pulmonary carcinoma," Am. J. Path., 14:49-57 (1938)

12. Hueper, W.C., Occupational tumors and allied diseases. Springfield, Ill: Chas. C. Thomas, 1942, pp. 399-405.

13. Hueper, W.C., "Cancer in its relation to occupation and environment," Bull. Am. Soc. Control of Cancer, 25:63-69 (1943)

14. "Case records of the Massachusetts General Hospital. Case 33111," NEJM, 236:407-412 (1947)

15. Annual report of the chief inspector of factories for the year 1947. London: HMSO: 1949, pp. 78-81.

16. Doll, R., "Mortality from lung cancer in asbestos workers," Br. J. Ind. Med., 12:81-86 (1955)

This is the general nature of the possible testimony of Dr. David Ozonoff. However, he will not limit any testimony to the specific articles above and may utilize certain other documents in conjunction with his testimony such as other medical articles, trade association journals and corporate documents. His testimony will be directed to issues concerning the asbestos manufacturers and suppliers as well as the shipowner defendants. Dr. Ozonoff may also testify concerning those matters contained in his report which has been served upon counsel.

2.  Dr. Thomas Mancuso - Expert
    Professor Emeritus
    University of Pittsburgh
    5127 Ellsworth Avenue
    Pittsburgh, PA  15232

Dr. Mancuso may testify by video-taped deposition taken September 1 and 2, 1983 in Mississippi in a multi-jurisdiction deposition. Dr. Mancuso may testify inter alia concerning his personal employment with Philip Carey, the predecessor to Celotex, and also the involvement that Carey had in the asbestos industry. He may further offer his opinions concerning the "state-of-the-art," threshold limit values, industrial hygiene, epidemiology and the importance of certain documents that may be called to his attention during trial. Further, Dr. Mancuso may testify concerning his experience at Philip Carey Corporation and his conversations with various officers, officials and employees of that corporation.

3.    Dr. Victor Roggli - Expert
      Department of Pathology
      Duke Medical Center
      Durham, NC  27710

Dr. Victor L. Roggli is a pulmonary pathologist at the Duke University School of

Medicine in Durham, North Carolina.  Dr. Roggli may also testify concerning the identity of

asbestos fiber and bodies by mineralogic classification.  He may testify as to the general medical

issues concerning the development, cause, and the diagnosis of mesothelioma, lung cancer,

asbestosis, and/or other asbestos-related diseases.  He may also testify on the anatomy, pathology

and physiology of the lung.  He may also testify on the matters set forth in his testimony in

Cimino v. Raymark which petitioner's counsel has produced to defendants on several occasions

in asbestos litigation.

4.    Barry I. Castleman, S.C.D. - Expert
      1722 Linden Avenue
      Baltimore, MD  21217
      Barry Castleman is an environmental consultant with a doctor of science degree from

John Hopkins University, who has extensively research the issues of the asbestos industry's

knowledge of asbestos-related diseases and the corporate response to the knowledge of the health

hazards caused by asbestos exposure.

Dr. Castleman is expected to testify about the knowledge of the defendants regarding the

effects of inhalation of asbestos fibers based upon the literature, other publications, and corporate

documents.  Additionally, Dr. Castleman may testify concerning the matters set forth in his

deposition provided in the John T. Hannon, et al versus Waterman Steamship Corp., et al; In the

United States District Court for the Eastern District of Louisiana; C.A. 80-1175 "E"(2) which has

previously been provided to counsel.

5.    Dr. William Nicholson - Expert
      Mt. Sinai Medical Center
      Division of Environmental and
      Occupational Medicine
      1 Gustave Levy Place
      New York, NY  10029

Dr. William Nicholson is expected to testify on the epidemiological literature concerning

asbestos-related disease.  He may testify concerning his research and work in the area of asbestos

such as:

      Nicholson, W.J., "Asbestos Health Effects Update," Environmental Sciences
      Laboratory, September, 1983.

Nicholson, W.J., "Airborne Asbestos Health Assessment Update," Environmental and Occupational Medicine, June, 1986.

He may testify about the various asbestos fiber types and the ability of each to cause disease. He may testify that asbestos can cause asbestosis, lung cancer, and mesothelioma. He may further testify that asbestos exposure can cause various forms of extra thoracic cancers, including laryngeal and pharyngeal cancers, stomach cancer, colon-rectal cancer, and kidney cancer. Plaintiffs refer defendants to the testimony of Dr. Nicholson in Rosemary Boyett v. Lykes Bros. Steamship Co., Inc., et al, Cause No. 90-2965, in the United States District Court for the Eastern District of Louisiana for further information on the nature of Dr. Nicholson's testimony.

6.      Charles Ay - Fact/Expert
         19481 Jasper Hill Road
         Trabuco Canyon, CA  92679

        Mr. Ay may testify regarding the use of asbestos-containing products during construction and maintenance and repair of vessels. His testimony may include, but not be limited to, the physical and chemical properties of the asbestos products utilized in insulation, the propensity of these products to create respirable dust, and his knowledge of, in general and specifically concerning the application, maintenance and repair insulation. He may address with specificity the various asbestos products used at shipyards and aboard ship, the manufacturers of these products, the asbestos content of said products and the dust created by these products during application and tear out operations. Mr. Ay may also testify regarding opinions and testimony provided his testimony during his deposition in John T. Hannon, et al versus Waterman Steamship Corp., et al, in the United States District Court for the Eastern District of Louisiana, C.A. No. 80-1175 "E"(2) and at trial in Rosemary Boyett v. Lykes Bros. Steamship Co., Inc., et al, Cause No. 90-2965, in the United States District Court for the Eastern District of Texas and Daniel Johnstone, et al versus American Oil Company, et al, in the United States District Court for the Eastern District of Louisiana. Counsel should already have a copy of this testimony.

7.      Dr. Ronald Dodson - Expert
         University of Texas
         Health Science Center
         Tyler, TX 75710

        Dr. Ronald Dodson may identify asbestos fiber and bodies by mineralogic classification. He may testify as to the general medical issues concerning the development, cause, and the diagnosis of mesothelioma, lung cancer, and/or other asbestos-related diseases. He may also

testify about his research and opinions on the different types of asbestos, their propensity to cause disease and his opinions on the quantity and quality of asbestos to cause disease.

8.    Frank Parker
       E.T.I.
       200 Brantley Lane
       Magnolia, TX 77355

Mr. Parker is an expert industrial hygienist who may testify concerning the petitioner's occupational exposure to asbestos. He may also testify concerning the asbestos dust levels which petitioner was exposed to due during the course and scope of his employment. He may also testify concerning the amount of asbestos that is necessary to produce the various diseases associated with inhalation of asbestos dust and fiber including, but not limited to, asbestosis, lung cancer and mesothelioma.

9.    Dr. Bill Longo
       Dr. Richard Hatfield
       MAS, Inc.
       3945 Lakefield Court
       Suwanee, GA 30024

Dr. Longo is an expert in material analysis. He may testify concerning the physical and chemical composition of the various asbestos-containing products manufactured by the defendants in this case including raw fiber, pipe covering, block, gaskets, wallboard and cloth. Dr. Longo may testify concerning the friability of the various asbestos-containing products manufactured by the defendants. He may also testify concerning the various methods for measurement of asbestos dust. Additionally, his testimony may include information and opinions concerning the tindel effect and the quantity of asbestos that is released in the ambient atmosphere through the installation and repair of asbestos-containing products.

10.   Dr. Richard A. Lemen - Expert
       3495 Highgate Hills Drive
       Duluth, Georgia 30097

Dr. Lemen is an industrial hygienist and public health and occupational disease expert who may testify live or by deposition that:

(1)    The defendants knew or should have known historically that asbestos inhalation could cause asbestosis, lung cancer, mesothelioma, and other asbestos-related diseases.

(2)    Dr. Lemen may also testify that a person exposed to asbestos is at a higher risk than the normal individual to develop some form of cancer. Dr. Lemen may also testify that it is his opinion that ten years after the cessation of cigarette smoking the risk of lung cancer

17

attributable to smoking is almost nil.  He may also testify that only 8% - 12% of those who smoke cigarettes in heavy quantities will ever suffer any form of lung cancer.  The basis of this opinion is founded on recent statistics filed by the National Cancer Institute, the United States Public Service, and Herbert Seidemann and others.

Furthermore, Dr. Lemen may testify concerning the following:

Between the years 1898 and 1930, the medical community gradually became aware of a fibrotic lung disease which, in 1927, actually received the name asbestosis.  It is Dr. Lemen's opinion that by 1930 there was a general acceptance that exposure to asbestos was linked to a serious lung disease.  This disease was caused by the inhalation of asbestos dust in quantities sufficient to  cause scarring in the lungs.  If the scarring was serious enough, it could be incapacitating and/or fatal.

The first cancer cases which were reported in association with asbestos exposure appeared in 1934.  Over the next two decades, there were a series of articles published associating asbestos exposure and lung cancer.  It is Dr. Lemen's opinion that, by 1949, there was a causal relationship established between asbestos exposure and cancer.

There was considerable debate, from the 1930's through the 1950's, as to whether mesothelioma was just a lung cancer or a special disease.  It was known by several names, sometimes called pleural cancer, other times called endothelioma or mesothelioma.  It is Dr. Lemen's opinion that the medical community associated the cause of mesothelioma with asbestos exposure perhaps as early as 1949 and that a consensus certainly formed no later than 1960.

Dr. Lemen may also testify as to significant pieces of medical literature and studies which have related asbestos to health risks.  Dr. Lemen bases his opinion in part upon those articles noted in his bibliography and, more specifically, the following:

Annual report of the chief inspector of factories for the year 1898.  HMSO, 1899, Part II, Reports, pp. 171-172.

Murray, H.M., "Report of the Departmental Committee on Compensation for Industrial Disease," Minutes of Evidence Appendices and Index, 3495-3496, London: Wyman and Sone (1907)

Pancoast, H.K., Miller, T.G., Landis, H.R.M., "A Roentgenologic Study of the Effects of Dust Inhalation upon the Lungs," Trans. Assoc. Amer. Phys. 32:97-108 (1917)

Cooke, W.E., "Pulmonary asbestosis,"  Br. Med.J., 2:1024-1025 (1927)

Cooke, W.E. and Hill, C.F., "Pneumoconiosis due to asbestos dust,", J. Royal

18

Micr. Soc., 47:232-238, 1927, (reported in Br. Med. J., 1:890-891, 1927; cites in JAMA, 89:304, 1927)

Merewether, E.R.A., and Price, C.W., "Reports of the Effect of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry," pp. 5-34, London: HMSO (1930)

Merewether, E.R.A., "A memorandum on asbestosis," Tubercle: 15:69-81, 109-118, 152-159, (1933, 1934)

Wood, W.B. and Gloyne, S.R.,. "Pulmonary asbestosis:  a review of one hundred  cases," Lancet, 2:1383-1385 (1934)

Lynch, K.M. and Smith, W.A., "Pulmonary asbestosis.  III:  carcinoma of lung in asbestos-silicosis," Am. J. Cancer, 24:56-64 (1935)

Nordmann, M., "Der Berufskrebs der Asbestarbeiter," Z. Krebsforsch., 47:288-302 (1938)

Vorwald, A.J. and Karr, J.W., "Pneumoconiosis and pulmonary carcinoma," Am. J. Path., 14:49-57 (1938)

Hueper, W.C., Occupational tumors and allied diseases. Springfield, Ill:  Chas. C. Thomas, 1942, pp. 399-405.

Hueper, W.C., "Cancer in its relation to occupation and environment," Bull. Am. Soc. Control of Cancer, 25:63-69 (1943)

"Case records of the Massachusetts General Hospital.  Case 33111," NEJM, 236:407-412 (1947)

Annual report of the chief inspector of factories for the year 1947.  London: HMSO:  1949, pp. 78-81.

Doll, R., "Mortality from lung cancer in asbestos workers," Br. J. Ind. Med., 12:81-86 (1955)

Wagner, J.C., et al "Diffuse pleural mesothelioma and asbestos exposure in the North Western Cape Province," Brit. J. Industr. Med, 17:260-271 (1960)

Wagner, J.C., "Epidemiology of diffuse mesotheliomal tumors: evidence of an association from studies in South Africa and the United Kingdom," Ann. N.Y. Acad. Sci., 132:575-578 (1965)

This is the general nature of the possible testimony of Dr. Lemen.  However, he will not limit any testimony to the specific articles above and may utilize certain other documents in conjunction with his testimony such as other medical articles, trade association journals and corporate documents.  His testimony will be directed to issues concerning the asbestos manufacturers and suppliers.

11.    Richard Kradin, M.D.
       Massachusetts General Hospital
       100 Blossom Street, Cox 5
       Boston, MA  02114

Dr. Richard Kradin is a pulmonary pathologist at the Harvard School of Medicine in a

Boston, Massachusetts.   He may identify asbestos fiber and bodies by mineralogic classification. He may testify as to the general medical issues concerning the development, cause, and the diagnosis of mesothelioma, lung cancer, asbestosis, and/or other asbestos-related diseases.   He may also testify on the anatomy, pathology and physiology of the lung.   Dr. Kradin may also testify concerning his review of the pathology and records in this matter and his diagnosis of an asbestos-related lung cancer.

12.     Any physician who has examined, care for and/or treated the Plaintiff.

**INTERROGATORY NO. 25:**

    a)     Identify each expert witness who may be called as a witness to testify at trial.

    b)     State the impressions and opinions held by and the facts known by any expert identified above.

    c)     Identify all documents and tangible things, including reports, prepared by or relied on by any expert identified above.

**ANSWER TO INTERROGATORY NO. 25:**

    See Plaintiff's Response to Interrogatory No. 24 above.

**INTERROGATORY NO. 26:**

    If this is a wrongful death or survival action, please state:

    a)     The date of death.

    b)     Whether the deceased had a Last Will and Testament and whether any administration has been had on the decedent's estate.

**ANSWER TO INTERROGATORY NO. 26:**

    This is not a wrongful death action.

**INTERROGATORY NO. 27:**

    If Plaintiff has entered into any settlement agreement, or received any monies from a named Defendant or any third party to this action, please state:

    a)     The name of the party or person with whom Plaintiff has entered into any settlement agreement.

    b)     The date and terms of the agreement.

    c)     The amount of money received by Plaintiff from each person or party.

**ANSWER TO INTERROGATORY NO. 27:**

Plaintiff objects to this interrogatory as it is not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 28:**

State when, (including the month, date and year), you first contacted an attorney for the purpose of obtaining professional legal services regarding your alleged asbestos exposure, and the date of any agreement to provide you with legal services regarding same.

**ANSWER TO INTERROGATORY NO. 28:**

Plaintiff objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

The reports of all expert witnesses whom Plaintiff may call at the trial of this case, and all documents reviewed by any such expert in connection with this matter.

**RESPONSE TO REQUEST NO. 1:**

Plaintiff has copies the available medical records from St. Charles General Hospital and Ochsner Clinic and placed them in the master file. A copy of Dr. Richard Kradin's report is attached. As discovery is ongoing, additional reports and records will be produced in accordance with the L.C.C.P. and the applicable Orders of this court

**REQUEST FOR PRODUCTION NO. 2:**

All photographs, films, movies, or video recordings that depict or purport to depict anything relevant to any of the matters at issue in this case, including any of the matters alleged in your complaint or petition.

**RESPONSE TO REQUEST NO. 2:**

Plaintiff does not currently have any photographs that may be used at the trial of this matter at the present time.

**REQUEST FOR PRODUCTION NO. 3:**

All documents reflecting any claims or settlements made by you in connection with any asbestos-related injury or disease that you sustained.

21

**RESPONSE TO REQUEST NO. 3:**

Plaintiff objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 4:**

All documents (including, but not limited to, notes, calendars, diaries, or like materials) prepared or kept by you and all documents made by you in connection with a) any exposure to asbestos or asbestos-containing materials; b) any conduct of the Defendants with respect to asbestos or asbestos-containing products; c) any asbestos-related injury, disease, or treatment (including mesothelioma); or d) any elements of actual damages resulting from your claimed asbestos-related injury.

**RESPONSE TO REQUEST NO. 4:**

Plaintiff will produce an exhibit list delineating the damages and liability documents which may be utilized at the trial of this matter at a later date within the time constraints dictated by this court.  Copies of medical records, medical expenses, employment and income records, if applicable, are available for inspection and copying at the Law offices of Martzell & Bickford at a mutually convenient time.

**REQUEST FOR PRODUCTION NO. 5:**

All documents that Plaintiff may seek to introduce into evidence at trial.  This request includes, but is not limited to, a) documents related to the use of asbestos or asbestos-containing products; b) documents related to safety precautions in connection with asbestos or asbestos-containing products; and  documents related to the medical risks associated with asbestos or asbestos-containing products.

**RESPONSE TO REQUEST NO. 5:**

See Plaintiff's Response to Request No. 4.

**REQUEST FOR PRODUCTION NO. 6:**

In all wrongful death cases, copies of the Decedent's death certificate, autopsy report and autopsy protocol.

**RESPONSE TO REQUEST NO. 6:**

Not applicable.

22

**REQUEST FOR PRODUCTION NO. 7:**

All copies of your medical records, including specifically any medical records relating to any respiratory, breathing, or lung related injury or illness (including, but not limited to, asbestosis, mesothelioma, emphysema, asthma, bronchitis, lung cancer and chronic obstructive pulmonary disease).

**RESPONSE TO REQUEST NO. 7:**

Plaintiff's medical records, medical expenses, employment and income records, if applicable, are available for inspection and copying at the Law offices of Martzell & Bickford at a mutually convenient time.

**REQUEST FOR PRODUCTION NO. 8:**

All x-rays and pathology materials of any kind of the Plaintiff or Decedent.

**RESPONSE TO REQUEST NO. 8:**

The available x-rays and pathology specimens are either in the possession of Plaintiff's expert or have been requested from the various health care providers and facilities. Once Plaintiff's experts have concluded their evaluation of these materials, they will be provided to Defendants with the understanding that any materials loaned by the Plaintiff are returned within a reasonable amount of time.

**REQUEST FOR PRODUCTION NO. 9:**

All documents, including sales receipts and invoices, that support your claim that you were exposed to asbestos-containing products manufactured, distributed or sold by any Defendants.

**RESPONSE TO REQUEST NO. 9:**

Plaintiff attaches some of the information that has been obtained from the Journal of Commerce on asbestos shipments into the Port of New Orleans.

**REQUEST FOR PRODUCTION NO. 10:**

All materials provided to each consulting expert identified in response to Interrogatory No. 24 a) and copies of all materials prepared by such consulting experts.

**RESPONSE TO REQUEST NO. 10:**

Plaintiff objects to this request inso far as it seeks materials immune from discovery. Without waiving said objection, Plaintiff refers to his Answer to Interrogatory No. 24.

**REQUEST FOR PRODUCTION NO. 11:**

All other documents identified in response to any of the attached interrogatories.

**RESPONSE TO REQUEST NO. 11:**

Please refer to Plaintiff's Response to Request No. 4.

**REQUEST FOR PRODUCTION NO. 12:**

Please complete and sign all authorization forms attached hereto as Exhibits A through H

and return a compete set of originals within five (5) days of signing.

**RESPONSE TO REQUEST NO. 12:**

Authorization Forms have been sent to Plaintiff to execute, and will be provided to

Defendants upon receipt.

Respectfully submitted,

**MARTZELL & BICKFORD**

SCOTT R. BICKFORD, #1165
JOHN R. MARTZELL, #9013
ANDREA F. LONG, #24157
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been sent to counsel for all

parties by delivery of same by placing a copy of same in the United States Mail, postage prepaid,

and properly addressed, this _21st_ day of March, 2001.

F:\CLIENTS\MCDONALD.WLT\DISCOVER\MASTER.DIS

24

FILED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 00-4270                    DIVISION "K"                    SECTION   5

DISTRICT COURT

WALTER MCDONALD

VERSUS

CROWLEY MARITIME CORPORATION, ET AL

FILED: _____        _____
                                                    DEPUTY CLERK

**MOTION AND INCORPORATED MEMORANDUM IN SUPPORT
FOR LEAVE OF COURT TO FILE A
<u>SECOND SUPPLEMENTAL AND AMENDED PETITION</u>**

**NOW INTO COURT**, by and through undersigned counsel, comes Petitioner, Walter

McDonald, who respectfully moves this Honorable Court for an order granting him leave to file a

Second Supplemental and Amended Petition for the reasons more fully set forth herein.

Petitioner died of asbestos-related lung cancer on November 2, 2007. Decedent-petitioner's

wife, Emelda Ann McDonald, must be substituted as petitioner-decedent's personal representative

and petitioner in proper person. Petitioner's daughters, Cathy Woodard, Karen Bacchus, and Terry

Cox are the natural daughters of decedent, Walter McDonald. Additionally, petitioner desires to add

additional parties who may bear substantial liability for his contraction of asbestos-related lung

cancer and wishes now to name these parties as defendants. Specifically, the Petitioner recently

learned that Lykes Brothers Steamship Company, whose insurer Hartford is already a named

defendant, has additional insurers who may be liable to the Petitioner for damages for the negligence

of Lykes and/or its executive officers. Accordingly, Petitioner seeks to add these additional insurers

and the executive officers of Lykes to the instant case. Petitioner also seeks to add P & O Ports

Gulfport, Inc. as an employer defendant.

Petitioner also desires to more fully set forth his causes of action against the Defendants.

L.C.C.P. Articles 1151, 1153 and 1155 provide for supplements and amendments to

pleadings. L.C.C.P. Article 1155 states as follows:

> The court, on motion of a party, upon reasonable notice and upon such terms as are
> just, may permit the mover to file a supplemental petition or answer setting forth
> items of damage, causes of action or defenses which have become exigible since the
> date of filing the original petition or answer, and which are related to or connected
> with the causes of action or defenses asserted therein.

Moreover, a Petition may be amended by leave of Court. La. C. C. P. 1151.



Petitioner desires to name Emelda Ann McDonald as personal representative and petitioner in proper person, along with Cathy Woodard, Karen Bacchus and Terry Cox, and desires to add additional Defendants who may be liable to him for damages for his contraction of asbestos-related lung cancer. Petitioner also desires to more fully set forth the causes of action against the Defendants. Furthermore, the addition of all parties potentially liable to Petitioner will prevent manifest injustice. By adding this additional Defendant, the parties hereto will be able to have a full and fair adjudication of Petitioner's claims. No undue prejudice will result due to this amended and supplemental petition.

**WHEREFORE,** for the reasons set forth in this motion, Petitioner respectfully requests that this motion be granted and that the attached order granting leave be signed, allowing him leave to file a Second Supplemental and Amended Petition.

Respectfully submitted,

**MARTZELL & BICKFORD**

**SCOTT R. BICKFORD, T.A. (#1165)**
**NEIL F. NAZARETH (#28969)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing pleading has been served upon counsel for all parties by hand, by faxing, or by mailing the same to each properly addressed and postage prepaid on this _28_ day of May, 2008.

**NEIL F. NAZARETH**

F:\Clients\MCDONALD.WLT\PLEADING\Motion for leave and 2nd Amended petition.wpd

2

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 00-4270                 DIVISION "K"                 SECTION   5

WALTER MCDONALD

VERSUS

CROWLEY MARITIME CORPORATION, ET AL

FILED: _____            _____
                                              **DEPUTY CLERK**

## O R D E R

Considering the foregoing;

**IT IS HEREBY ORDERED** that Petitioner is granted leave to file a Second Supplemental

and Amended Petition in the captioned proceedings.

New Orleans, Louisiana on this _29th_ day of _May_, 2008.

                              (Sgd.) Herbert A. Cade
                              Judge - Division "K"
                        _____
                              DISTRICT COURT JUDGE

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 00-4270                    DIVISION "K"                 SECTION   5

WALTER MCDONALD

VERSUS

CROWLEY MARITIME CORPORATION, ET AL

FILED: _____            _____
                                                          DEPUTY CLERK

## SECOND SUPPLEMENTAL AND AMENDED PETITION

I.

Petitioner realleges and reasserts all allegations in the Original Petition and First
Supplemental and Amended Petition.

II.

By adding paragraph 17(b)-(d) which read:

17(b)

Walter McDonald, the original plaintiff in this suit, died on November 2, 2007 of asbestos-
related lung cancer.  He is survived by his wife of thirty-five (35) years, Emelda Ann McDonald.
**A copy of the death certificate is attached hereto.**  Pursuant to Louisiana Civil Code Articles
2315.1 and 2315.2, Emelda Ann McDonald is entitled to survival and wrongful death claims arising
from Walter McDonald's development of, and death from, asbestos-related lung cancer,  and to
substitute herself as a party plaintiff in this suit, in lieu of her deceased husband, Walter McDonald.

17(c)

Emelda Ann McDonald was the devoted wife of Walter McDonald, and they enjoyed an
especially close and loving relationship.  Mrs. McDonald is entitled to wrongful death damages,
pursuant to Civil Code Article 2315.2, for the liability of all defendants, who are alleged to be liable
jointly and *in solido*.  She is entitled to damages for her loss of consortium and for the loss of the
society, services and companionship of her husband, Walter McDonald.  Emelda Ann McDonald
is entitled to reimbursement for all the decedent's medical bills and expenses attributable to his
asbestos-related lung cancer and his funeral and burial expenses.

4

17(d)

Cathy Woodard, Karen Bacchus, and Terry Cox are the natural daughters of Walter McDonald. These individuals are entitled to wrongful death damages, pursuant to Civil Code Article 2315.2, for the liability of all defedants, who are alleged to be liable jointly and *in solido*. They are entitled to damages for the loss of the society, services and companionship of their father, Walter McDonald.

III.

By adding paragraph 13(e)-(i) which read:

13(e)

**HARTFORD ACCIDENT AND INDEMNITY COMPANY**, already named defendant as alleged in plaintiff's First Supplemental and Amending Petition, is also made defendant as insurer of James Bernstein, Solon Turman, John Ohman, James Amos, Captain George Price, Captain Darnell and Captain Waring who, upon information and belief, were executive officers of Lykes Brothers Steamship Company ("Lykes") at all pertinent times.  James Bernstein and Solon Turman are deceased.  John Ohman, James Amos and Captains George Price, Darnell and Waring are believed to be alive but their whereabouts are unknown.  Therefore, the plaintiff cannot request service and they cannot be served.  The plaintiff has made reasonable and diligent efforts to locate them but has not been successful.  The plaintiff is entitled to sue Hartford Accident and Indemnity Company, as their insurer, under the Louisiana Direct Action Statute, Louisiana Revised Statute 22:622,  for the negligence of its insureds, Lykes and/or the executive officers of Lykes.

13(f)

During employment with Lykes Bros. Steamship Co., Inc. in 1960, 1963 to 1965 and 1969, James Bernstein and John Ohman were Port Engineers, Solon Truman and James Amos were the Presidents of Lykes for the New Orleans office and Captains George Price, Darnell and Waring were safety officers.  They all were responsible for protecting the safety of Lykes' employees.

13(g)

Made additional defendant herein, **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON** (hereinafter "Lloyd's"), a foreign corporation licensed to do and doing business in the State of Louisiana, and at all times pertinent hereto issued to Lykes Brothers Steamship Company policies of insurance underwritten by Economic Insurance Company Limited; Fine Art & General

5

Insurance Company Limited; National Provincial Insurance Company Limited; The Edinburgh Assurance Company and British Law Insurance Company. Lloyd's are foreign insurers authorized to do and doing business in the Parish of Orleans and the State of Louisiana. In 1968, Lloyd's issued policies of excess insurance to Lykes Brothers Steamship Company and its executive officers, including those executive officers named herein. Lloyd's policies of insurance issued to Lykes provide coverage for the claims asserted by the plaintiff herein. The plaintiff is entitled to sue Lloyd's, as insurer for Lykes and/or Lykes executive officers, under the Louisiana Direct Action Statute, Louisiana Revised Statute 22:622, for the negligence of its insureds, Lykes and/or the executive officers of Lykes.

### 13(h)

During employment with Lykes Bros. Steamship Co., Inc. in 1960 and 1963-1965 and 1969, James Bernstein and John Ohman were Port Engineers, Solon Truman and James Amos were the Presidents of Lykes for the New Orleans office and Captains George Price, Darnell and Waring were safety officers. They all were responsible for protecting the safety of Lykes' employees.

### 13(i)

Made Defendant, **PORTS AMERICA GULFPORT, INC.**, (f/k/a Atlantic & Gulf Stevedores, Inc., I.T.O. Corporation, and P&O Ports Gulfport, Inc.), (hereinafter **"Employer Defendant"**), is a Louisiana corporation licensed to do business and/or is doing business in the State of Louisiana. Petitioner decedent, Walter McDonald, while engaged in his various duties as a longshoreman for P&O and/or its predecessor-in-interest, ITO in the Port of New Orleans from approximately 1960 to 1986 was exposed to substantial quantities of asbestos fibers and asbestos dust and debris during the unloading and loading of asbestos cargoes containing raw asbestos fiber and asbestos-containing products. While engaged in his duties, Petitioner was also exposed to asbestos fibers from asbestos-containing insulation products, including cements, block insulation and pipe coverings, while he and others were working aboard vessels in the Port of New Orleans as longshoremen when other craftsmen including insulators, pipefitters, welders and crew members of the vessel were making repairs to heating insulation and boiler insulation: applying and removing insulation pads, boiler lagging, boiler jackets, and disassembling boiler feed pumps; and especially by working and breathing air that contained asbestos fragments, fibers and dust. And even when not handling the dangerous materials himself, Petitioner-decedent was nevertheless exposed to

6

dangerous materials and especially the dust and fibers that were caused by the other workers in the areas where the Petitioner-decedent was working causing him to sustain a by-stander exposure to asbestos. As a result, Petitioner sustained a continuous, substantial exposure to asbestos throughout his career as a longshoreman, and developed asbestos-related lung cancer.

IV.

The Petitioner re-alleges and re-avers all allegations originally pled in the original and first supplemental and amending petitions regarding "employer defendant" negligence as they relate to Ports America Gulfport, Inc. as an "employer defendant" of the petitioner decedent, as if copied herein *in extenso.*

V.

The Petitioner re-alleges and re-avers all allegations originally pled in the original and first supplemental and amending petitions, as if copied herein *in extenso,* regarding Lykes and/or vessels owned or operated by Lykes aboard which the Petitioner worked. Lykes, though not named in this petition, engaged in substantially the same activities and had substantially the same relationship to Petitioner as the named "Employer Defendants." Any and all allegations herein referring to the "Employer Defendants" apply with equal force to Lykes, for whom Plaintiff worked throughout his career as a longshoreman.

**WHEREFORE,** Petitioner prays for judgment against additional Defendants herein, **HARTFORD ACCIDENT AND INDEMNITY COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON** and **PORTS AMERICA GULFPORT, INC.** each to be cited to appear and answer herein as the law directs, and that upon final hearing hereof, Petitioner recovers of and from the Defendants herein named and those previously named, jointly and/or severally or *in solido,* for her damages as alleged in a sum above the minimum jurisdiction of this Court for general and special damages, together with his costs and disbursements herein, and interest on said judgment from the date thereof until paid at the prevailing interest rate, and for such other and further relief, special and general, at law and in equity, to which Petitioner may be entitled.

Respectfully submitted,

**MARTZELL & BICKFORD**

_[signature]_

**SCOTT R. BICKFORD T.A. (#1165)**
**NEIL F. NAZARETH (#28969)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (facsimile)

**ATTORNEYS FOR PETITIONER**

PLEASE SERVE WITH ORIGINAL PETITION,
FIRST SUPPLEMENTAL AND AMENDED PETITION
AND SECOND SUPPLEMENTAL AND AMENDED PETITION:

**HARTFORD ACCIDENT AND INDEMNITY COMPANY**
Through their Attorney of Record
John K. Nieset, Esq.
Christovich & Kearney, LLP
Pan American Life Center
601 Poydras Street, Suite 2300
New Orleans, LA 70130-6078

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**
Through their Attorney of Record
Stephen P. Hall
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130-6536

**PORTS AMERICA GULFPORT, INC.**
Through their agent for service
CT Corporation Systems
5615 Corporate Blvd
Suite 400B
Baton Rouge, LA 70808

F:\Clients\MCDONALD.WLT\PLEADING\Motion for leave and 2nd Amended petition.wpd

8

# STATE OF LOUISIANA

THIS RECORD IS VALID FOR DEATH ONLY

# COPY

5710638

IMPORTANT
PRINT or TYPE, black ink
or obtain assistance

1228458

**STATE OF LOUISIANA**
**CERTIFICATE OF DEATH**

FILE No. 117

BIRTH No.

| | | | |
|---|---|---|---|
| 1a. LAST NAME OF DECEDENT | 1b. FIRST NAME | 1c. MIDDLE NAME | 2. DATE OF DEATH |
| McDONALD | WALTER | | November 2, 2007 |

**DECEDENT**

| | | | |
|---|---|---|---|
| 3a. SEX | 3b. RACE | 3c. MARITAL STATUS | 4. SURVIVING SPOUSE |
| Male | Black | Married | Emelda Reaux |
| 5. DATE OF BIRTH | 6. AGE | 7. BIRTHPLACE | |
| September 30, 1939 | 68 | York, Alabama | |
| USUAL OCCUPATION | KIND OF BUSINESS/INDUSTRY | | |
| Long shoreman | Shipping Industry | No | |
| EVER IN U.S. ARMED FORCES | SOCIAL SECURITY NUMBER | | CHILDREN |
| No | 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 | | 2 |

**PLACE OF DEATH**

| | | |
|---|---|---|
| NAME OF FACILITY | PLACE OF DEATH IN CITY LIMITS | |
| Ochsner Foundation Hospital | No | |
| CITY, TOWN OR LOCATION OF DEATH | PARISH OF DEATH | |
| Jefferson | Jefferson | |

**RESIDENCE**

| | | |
|---|---|---|
| RESIDENCE STREET | PARISH | STATE |
| 2430 Hamilton St. | Orleans | Louisiana |
| CITY OR TOWN | ZIP CODE | INSIDE CITY LIMITS |
| New Orleans | 70118 | Yes |

**PARENTS**

| | | | |
|---|---|---|---|
| FATHER'S LAST NAME | FIRST | MIDDLE | BIRTH |
| McDonald | Kean | | York, Alabama |
| MOTHER'S LAST NAME | FIRST | MIDDLE | BIRTH |
| Walker | Louella | | York, Alabama |

**INFORMANT**

| | | |
|---|---|---|
| NAME OF INFORMANT | MAILING ADDRESS | |
| Emelda McDonald | 2430 Hamilton St. N.O.LA 70118 | 11/5/07 |

**DISPOSITION**

| | | | |
|---|---|---|---|
| CEMETERY | 11/10/07 | Carrollton Cemetery N.O.LA | |
| FUNERAL HOME | | | |
| Majestic Mortuary Service, Inc. | | 163 | E-2292 |
| 1833 Oretha C. Haley Blvd. | | | |
| New Orleans, Louisiana 70113 | | | |

**REGISTRAR**

| | | |
|---|---|---|
| s-274504 | Jefferson | 11/8/07 |

**CERTIFIER**

| FROM | TO | |
|---|---|---|
| 11-1-07 | 11-2-07 | #102/07 |

Scott Seals MD     1514 Jefferson Hwy Jefferson LA 70xx

**CAUSE OF DEATH**

a. Cardiac Arrthym
b. Electrolyte abnormalities
c. Sepsis

OFFICE OF PUBLIC HEALTH - VITAL RECORDS REGISTRY

NOV 14 2007

OPY

I CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF A CERTIFICATE OR DOCUMENT REGISTERED WITH THE VITAL RECORDS REGISTRY OF THE STATE OF LOUISIANA, PURSUANT TO LSA — R.S.40:32, ET SEQ.

Darlene W. Smith
**STATE REGISTRAR**

WARNING: It is illegal to alter or counterfeit this copy.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

NO. 00 - 4270

STATE OF LOUISIANA

SECTION " 5 "

DOCKET NO.

WALTER McDONALD

VERSUS

CROWLEY MARITIME CORPORATION;
SEALAND SERVICES, INC.;
WATERMAN STEAMSHIP CORPORATION;
CSR LTD;
FIBREBOARD CORPORATION
Individually and as Successor to
PABCO PRODUCTS CORPORATION;
GAF CORPORATION Individually and
as Successor to RUBEROID;
OWENS CORNING FIBERGLAS CORPORATION;
PITTSBURGH CORNING CORPORATION;
RAPID AMERICAN CORPORATION as successor to
CAREY CANADA and PHILIP CAREY, INC.;
T&N PLC Individually and as
Successor to TURNER & NEWELL, PLC, TURNER ASBESTOS FIBRES
and KEASBY & MATTISON;
SANK, INC. Individually and as Successor to
BUCK KREIHS & COMPANY, INC.;
EAGLE, INC.; and
DIXIE MACHINE, WELDING & METAL WORKS, INC.

FILED: _____

_____
DEPUTY CLERK

## ORIGINAL PETITION

Petitioner, **Walter McDonald**, hereinafter referred to as "Petitioner," a resident of the State of Louisiana, who for a cause of action respectfully represents the following:

Petitioner has brought this cause of action against the following parties, hereinafter referred to collectively as "Shipping Defendant."

1.

CROWLEY MARINE SERVICES, INC. As Successor to DELTA STEAMSHIP LINES is a corporation organized under the laws of a state other than the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

2.

SEALAND SERVICES, INC. is a corporation organized under the laws of a state other than the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

3.

WATERMAN STEAMSHIP CORPORATION is a corporation organized under the laws of a state other than the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

Petitioner further brings this cause of action against the following parties, hereinafter referred to collectively as "defendant asbestos companies."

4.

FIBREBOARD CORPORATION Individually and as successor to PABCO PRODUCTS CORPORATION is a corporation organized and existing under and by virtue of the Laws of a state other than the State of Louisiana, and licensed to do or is doing business within the State of Louisiana.

5.

GAF CORPORATION Individually and as successor to RUBEROID is a corporation organized and existing under and by virtue of the Laws of a state other than the State of Louisiana, and licensed to do or is doing business within the State of Louisiana.

6.

OWENS CORNING FIBERGLAS CORPORATION is a corporation organized under the laws of the State of Delaware which for all times pertinent hereto was doing business within the jurisdiction of this court.

7.

PITTSBURGH CORNING CORPORATION is a corporation organized under the laws of the State of Pennsylvania which for all times pertinent hereto was doing business within the jurisdiction of this court.

8.

RAPID AMERICAN CORPORATION as successor to CAREY CANADA and PHILLIP CAREY, INC. is a corporation organized under the laws of the State of Delaware which for all times pertinent hereto was doing business within the jurisdiction of this court.

2

Petitioner further brings this cause of action against the following parties, hereinafter referred to collectively as "asbestos fiber defendants."

9.

CSR LTD is a corporation organized under the laws of the Country of Australia which for all times pertinent hereto was doing business within the jurisdiction of this court.

10.

T&N PLC Individually and as Successor to TURNER & NEWELL, PLC, TURNER ASBESTOS FIBRE and KEASBY & MATTISON is a corporation organized under the laws of the Country of England which for all times pertinent hereto was doing business within the jurisdiction of this court.

Petitioner further brings this cause of action against the following parties, hereinafter referred to collectively as "asbestos contractor defendants."

11.

SANK, INC., individually and as Successor to BUCK KREIHS & COMPANY, INC. is a corporation organized under the laws of the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

12.

EAGLE, INC. (f/k/a EAGLE ASBESTOS & PACKING COMPANY) is a corporation organized under the laws of the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

13.

DIXIE MACHINE, WELDING & METAL WORKS, INC. is a corporation organized under the laws of the State of Louisiana which for all times pertinent hereto was doing business within the jurisdiction of this court.

14.

Many of the aforesaid Defendants listed are non-resident corporations in Louisiana.  However, at all times material were doing business in Louisiana, made contracts with residents of this State, committed torts in this state against residents of this

3

state, from which acts this suit arises, and such acts subject these Defendants to service of process pursuant to the Louisiana long-arm statute.

**COUNT ONE**

15.

Petitioner's action against Defendants is properly maintainable in the parish of suit for the following reasons:

    a)    Many of the Defendants are foreign corporations; and

    b)    Presently, many of these same Shipping Defendants have agents or representatives conducting their business in a regular and permanent form in Orleans Parish;

    c)    Petitioner's exposure to and injury from asbestos occurred, in substantial part, while he was present in this parish.

**COUNT TWO**

Petitioner realleges and reasserts all previous allegations, and further states that:

16.

Petitioner, **Walter McDonald**, was an longshoreman from 1958 to 1987, inclusive, who was employed by various stevedoring companies including, but not limited to, Cooper-T. Smith, Strahan Shipping Co. and Ryan-Walsh, Inc. and its predecessor Ryan Stevedoring Co., Inc. and worked upon vessels owned and operated by the Shipping Defendants and others while these vessels were undergoing stevedoring operations in the Port of New Orleans.

17.

Petitioner, **Walter McDonald**, while engaged in his various duties as a longshoreman in the Port of New Orleans from 1958 to 1975 was exposed to substantial quantities of asbestos fibers and asbestos dust and debris during the unloading and loading of asbestos cargoes containing raw asbestos fiber and asbestos-containing products.  Petitioner was also exposed to asbestos fibers from asbestos-containing insulation products, including cements, block insulation and pipe coverings while engaged in his duties while he and others were working aboard vessels in the Port of New Orleans as longshoremen when other craftsmen including insulators, pipefitters, welders and crew members of the vessel were making repairs to heating insulation and boiler insulation:  applying and removing insulation pads, boiler lagging, boiler jackets, and

4

disassembling boiler feed pumps; and especially by working and breathing air that contained asbestos fragments, fiber and dust.  And even when not handling the dangerous materials himself, Petitioner was nevertheless exposed to dangerous materials and especially the dust and fibers that were caused by the other workers in the areas where the Petitioner was working causing him to sustain a by-stander exposure to asbestos.   As a result, Petitioner sustained a continuous, substantial exposure to asbestos throughout his career as a longshoreman.

### COUNT THREE
### LIABILITY OF THE SHIPPING DEFENDANTS

Petitioner realleges and reasserts all previous allegations, and further states that:

18.

Delta Steamship Lines, Inc., Sealand Services, Inc. and Waterman Steamship Corporation (Shipping Defendants) are guilty of negligence under 33 U.S.C. §905(b) in one or more of the following particulars either singularly or in combination:

a)   In failing to provide a safe place to work on a ship under the control of the Defendant when operations under the Defendant's supervision and control were being undertaken specifically the repair, removal, installation or disturbance of asbestos-containing materials resulting in the contamination of the vessel;

b)   In knowingly subjecting Petitioner to hazardous materials and/or conditions;

c)   In failing to adequately protect Petitioner from hazardous asbestos-containing dusts;

d)   In exposing Petitioner to asbestos in areas of the vessel that remained under the control of Defendant at all times; and

e)   In creating a hazardous work environment in the operation, repair and maintenance of the vessel while in part by having toxic levels of asbestos emitted while the vessel was in port or drydock.

19.

These hazardous conditions caused the Petitioner to be exposed to asbestos fibers which are the proximate cause of Petitioner's injuries, all to Petitioners' damage as set forth below.

Specifically, the Defendant's vessels were rendered hazardous:

a)   As the insulating material utilized on the vessels is an unreasonably dangerous material exposure to which caused the Petitioner's illness;

5

b)   As a result of inadequate warnings given to Petitioner's to protect him against hazardous asbestos dust;

c)   As a result of inadequate and/or insufficient safety devices (specifically respirators) for use when Petitioner was working with or around others engaged in tearing out or reinsulating equipment with asbestos-containing material;

d)   As a result of unsafe work practices when using asbestos-containing insulation;

e)   As a result of unsafe work practices when removing asbestos cargos from their respective vessels, and

f)   As a result of none or inadequate ventilating systems aboard ship to eliminate the asbestos contamination from the vessel.

20.

The Shipping Defendants knew or should have known that the use of asbestos aboard their vessels and the transportation and removal of asbestos cargos created a hazardous work environment with asbestos levels that caused or contributed to the development of asbestos-related diseases to all individuals working on the vessel while it was in port, including Longshoremen.

21.

As a proximate result of the negligent failure of the Shipping Defendants as alleged above, the Decedent was developed asbestos-related diseases including but not limited to, lung cancer.

COUNT FOUR
LIABILITY OF CONTRACTOR DEFENDANTS

Petitioner realleges and reasserts all previous allegations, and further states that:

22.

That SANK, INC. individually and as Successor to BUCK KREIHS COMPANY, INC., EAGLE, INC. (f/k/a Eagle Asbestos and Packing Company) and DIXIE MACHINE, WELDING & METAL WORKS, INC. (hereinafter known as "Contractor Defendants"), each and individually, sold, distributed, installed, removed and/or supplied asbestos and asbestos-containing product(s) to Delta Steamship Lines, Inc., Lykes Bros. Steamship Co., Inc., Sealand Services, Inc. and Waterman Steamship Corporation and the Shipping Defendants vessels and other vessels in the Port of New Orleans which Petitioner came in contact with while working as a Longshoreman and

6

which Petitioner inhaled causing his asbestos-related injuries, including, but not limited to, lung cancer.

23.

That Contractor Defendants are liable to Petitioner as professional vendors of asbestos-containing products and, as such, because of the Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the asbestos products they sold, installed and removed and negligently failed to warn the users or by-standers of potential health hazards from the use of said products.

24.

That, for all times pertinent, Petitioner was employed as a Longshoreman and worked in close proximity to Defendants' employees, agents and/or representatives and was exposed to, asbestos and asbestos products that Defendants supplied, installed or removed from the Shipping Defendants' vessels where he was performing his normal job duties as a longshoreman.

25.

That the Contractor Defendants and their employees, agents and representatives had contracts or subcontracts with the Shipping Defendants or other entities, including Lykes Bros. Steamship Co., Inc. to provide repairs and maintenance services on their vessels which services included the maintenance, removal, installation and repair of boilers, heat piping systems and machinery aboard the vessels.

26.

That during the performance of their duties aboard these vessels while in the Port of New Orleans, the contractor Defendants removed, installed or repaired asbestos-containing materials which created a hazardous environment to others working aboard the ship including Petitioner, without any warning to the others working in the area of the health hazard nor taking any measures to protect them from the hazardous conditions.

27.

That Contractor Defendants, each and individually, are liable to Petitioner because they knew or should have known that the asbestos products which they sold, supplied, installed and removed were unreasonably dangerous in normal use and their failure to

7

communicate said information rendered them negligent to Petitioner and such negligence was the cause of Petitioner's injuries, including, but not limited to, lung cancer,.

**COUNT FIVE**
**LIABILITY OF ASBESTOS MANUFACTURER DEFENDANTS**

Petitioner realleges and reasserts all previous allegations, and further states that:

28.

Defendant, FIBREBOARD CORPORATION Individually and as Successor to PABCO PRODUCTS CORPORATION; GAF CORPORATION Individually and as successor to RUBEROID; OWENS CORNING FIBERGLAS CORPORATION; PITTSBURGH CORNING CORPORATION; and RAPID AMERICAN CORPORATION as successor to CAREY CANADA and PHILLIP CAREY, INC., (hereinafter referred to as "Defendant Asbestos Companies"), during all the times mentioned herein and for a long time prior thereto, have been, and some are now, engaged in the business of manufacturing, selling, marketing, distributing. and otherwise placing into the stream of commerce insulation materials containing asbestos. Said materials were expected to and did, in fact, reach the ultimate users and consumers in substantially the same condition in which they were sold.  These asbestos products of the Defendant Asbestos Manufacturers were defective and unreasonably dangerous in their design and marketing, which was a producing cause of the injuries and damages claimed herein.

29.

**BREACH OF IMPLIED AND EXPRESSED WARRANTIES**

Petitioner alleges that the Defendant Asbestos Companies, and each of them, breached their warranties to them in the following respects:

a)   That the Defendant Asbestos Companies knew or in the exercise of reasonable care ought to have known that their insulation was defective and that such insulation was not suitable for the purposes for which it was intended;

b)   That the Defendant Asbestos Companies knew and should have tested their products, especially those containing asbestos, to ascertain the safe or dangerous nature of such products before offering them for sale, or in the alternative, should have removed such products from the market upon ascertaining that such products would cause asbestosis, lung cancer, and mesothelioma;

c)      That the Defendant Asbestos Companies should have devised a method of application for their products, especially those containing asbestos, that would have kept those using such products from contracting Asbestosis and lung cancer if the Defendant Asbestos Companies would not remove such products from sales to the public; and

d)      That the products of the Defendant Asbestos Companies, especially those containing asbestos, were warranted, either expressly or impliedly, to be merchantable, when in truth they were not, and therefore, the Defendant Asbestos Companies breached to the Petitioner, as well as to others, the warranty of merchantability.

The Defendants' breach of implied and expressed warranties resulted directly and proximately caused or contributed to Petitioner's injury and their damages to Petitioner as set forth below.

## COUNT SIX

Petitioner realleges and reasserts all previous allegations, and further states that:

30.

## STRICT LIABILITY/NEGLIGENT FAILURE TO WARN

Petitioner alleges that the Defendant Asbestos Companies, and each of them, are strictly liable and/or are negligent in their failure to warn in the following respects:

1.      **Negligent Failure to Warn**

That the Defendant Asbestos Companies knew or in the exercise of ordinary or reasonable care ought to have known that the insulation they manufactured and distributed was deleterious, poisonous, and highly harmful to Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, Defendant Asbestos Companies negligently failed to take any reasonable precautions or exercise reasonable care to warn the Petitioner of the danger and harm to which he was exposed while handling the Defendant Asbestos Companies' said insulation; and

That the Defendant Asbestos Companies knew or in the exercise of ordinary care ought to have known that their said insulation was deleterious, poisonous, and highly harmful to the Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, Defendant Asbestos Companies failed and omitted to provide the Petitioner with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there was any, to protect them from being poisoned and disabled as they were by exposure to such deleterious and harmful compound substances and other material contained in said Defendant Asbestos Companies' insulation.

2.      **Strict Products Liability, Unreasonably Dangerous Due to Defective Design**

9

That the Defendant Asbestos Companies packaged asbestos-containing insulation in such a manner that in the ordinary handling of the packaging, Petitioner came in contact with such deleterious, poisonous and highly harmful compound substances and other material contained in said Defendant Asbestos Companies' insulation;

That the Defendant Asbestos Companies failed to design their packaging and product in such a manner so as to advise and warn foreseeable users, including the Petitioner, by placing warnings on their containers of said insulation and/or on the actual insulation, to advise the handlers, other users and bystanders of the dangers of exposure with said insulation; and

3.    **Unreasonably Dangerous Per Se**

That Defendant Asbestos Companies' products are unreasonably dangerous per se.

The Defendants' breach of implied and expressed warranties resulted directly and proximately caused the injury complained of herein.

### COUNT SEVEN
### LIABILITY OF THE ASBESTOS FIBER DEFENDANTS

Petitioner realleges and reasserts all previous allegations, and further states that:

31.

### STRICT LIABILITY/NEGLIGENT FAILURE TO WARN

Petitioner alleges that CSR, LTD and T&N PLC (Asbestos Fiber Defendants), and each of them, are strictly liable and/or are negligent in their failure to warn in the following respects:

1.    **Negligent Failure to Warn**

That the Asbestos Fiber Defendants knew or in the exercise of ordinary or reasonable care ought to have known that the asbestos fiber that they mined and distributed was deleterious, poisonous, and highly harmful to Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, Asbestos Fiber Defendants negligently failed to take any reasonable precautions or exercise reasonable care to warn the Petitioner and others of the danger and harm to which he was exposed while handling their Asbestos Fiber; and

That the Asbestos Fiber Defendants knew or in the exercise of ordinary care ought to have known that their said asbestos fiber was deleterious, poisonous, and highly harmful to the Petitioner's body, lungs, respiratory system, skin and health, notwithstanding which, Asbestos Fiber Defendants failed and omitted to provide the Petitioner with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there was any, to protect them from being poisoned and disabled as they were by exposure to such Defendant's asbestos fiber.

10

2.    **Strict Products Liability, Unreasonably Dangerous Due to Defective Design**

That the Asbestos Fiber Defendants packaged, shipped, transported, distributed or otherwise put in the stream of commerce asbestos fiber in such a manner that in the ordinary handling of it, Petitioner came in contact with such deleterious, poisonous and highly harmful compound substances;

That the Asbestos Fiber Defendants failed to design their packaging in such a manner so as to advise and warn foreseeable handlers, including the Petitioner, by placing warnings on their containers of said asbestos fiber, to advise the handlers, other users and bystanders of the dangers of exposure with said insulation; and

3.    **Unreasonably Dangerous Per Se**

That Asbestos Fiber Defendants' products are unreasonably dangerous per se.

The Defendants' breach of as herein above set forth resulted directly and proximately caused the injury complained of herein.

32.

Petitioner alleges that during the years he was employed as a Longshoreman and that in the performance of his normal and ordinary duties, he was required to handle large quantities of the asbestos fiber mined and distributed by the above-named Asbestos Fiber Defendants.  That in addition to the fact that the Petitioner actually handled the products mined and distributed by the above-named Asbestos Fiber Defendants as a Longshoreman, the Petitioner says that on many of the vessels while not handling the asbestos fiber himself mined and distributed by the Asbestos Fiber Defendants, he was nevertheless exposed to the asbestos fiber shipments which were removed from vessels and transported for storage and further shipment by other workers in the same area where the Petitioner was working.

33.

That during the period of time in which the Petitioner was employed as a Longshoreman in the normal course of his employment, he was caused to come in contact with the asbestos fiber mined and distributed by the Asbestos Fiber Defendants, and its chemical compounds deleterious substances and matter, did sustain severe, permanent and disabling injuries as hereinafter set forth including lung cancer.

11

34.

That Petitioner's asbestos-related diseases were diagnosed within one year prior to filing suit.

## DAMAGES

35.

The Petitioner will show that he was permanently and severely injured; that he sustained very serious and permanent injuries to his body; that he suffered as a result of his asbestos diseases including lung cancer. Petitioner has sought the services of physicians in an effort to cure or arrest the condition from which he was suffering.

36.

That in an effort to treat, relieve and heal himself of said injuries and to regain his health, the Petitioner was obliged to incur an expense amounting to a considerable sum of money for medical and hospitalization care, expenses for medicines, supplies and so forth, the amount of which the Petitioner is unable to accurately estimate at this time.

37.

That by reason of the facts hereinabove alleged, Petitioner was made to suffer and sustain at the hands of the Defendants, and each of them, general and special damages including, but not limited to, past and future physical pain and suffering, past and future mental anguish and past and future medical expenses, in a sum above the minimum jurisdiction of this Court.

## INTEREST

38.

Petitioner submits that she is entitled to recovery of pre-judgment interest with respect to damages sustained prior to judgment in this matter, such pre-judgment interest to be calculated at the appropriate prevailing rate.

39.

Petitioner demands a trial by jury.

WHEREFORE, Petitioner prays that the Defendants and each of them be cited to appear and answer herein as the law directs, and that upon final hearing hereof, Petitioner recovers of and from the Defendants and each of them, jointly and/or severally or *in*

12

*solido,* for his damages as alleged in a sum above the minimum jurisdiction of this Court

for general and special damages, together with his costs and disbursements herein, and

interest on said judgment from the date thereof until paid at the prevailing interest rate,

and for such other and further relief, special and general, at law and in equity, to which

Petitioner may be entitled.

Respectfully submitted,

MARTZELL & BICKFORD

SCOTT R. BICKFORD TA (1165)
JOHN R. MARTZELL (9013)
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 - facsimile
ATTORNEYS FOR Petitioner

PLEASE SERVE:

CROWLEY MARINE SERVICES, INC.
As Successor to DELTA STEAMSHIP LINES, INC.
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70808-6129

SEALAND SERVICES, INC.
Through its agent for service of process
P.O. Box 2555
Elizabeth, NJ 07207-2555

WATERMAN STEAMSHIP CORPORATION
Through its agent for service of process
William H. Hines, Esq..
201 St. Charles Ave., 50th Floor
New Orleans, LA 70170

FIBREBOARD CORPORATION
Individually and as Successor to
PABCO PRODUCTS CORPORATION
Through its agent for service
United States Corporation Company
1013 Centre Road
Wilmington, DE 19805

GAF CORPORATION, Individually and
as Successor to RUBEROID
Through its agent for service of process
c/o General Counsel
1361 Apls Road
Wayne, NJ 07470

13

**OWENS CORNING FIBERGLAS CORPORATION**
C.T. Corporation System
8550 United Plaza
Baton Rouge, LA  70809

**PITTSBURGH CORNING CORPORATION**
Through its agent for service of process
800 Presque Isle Drive
Pittsburgh, PA  15239

**RAPID-AMERICAN CORPORATION, Individually**
  **and as Successor to Philip-Carey Inc.**
Through their agent for service
The Prentice-Hall Corporation System, Inc.
1013 Centre Road
Dover, DE  19805

**CSR, LTD**
Through its agent for service
1-3 O'Connell Street
Sydney, N.S.W. Australia

**T & N PLC**
**Individually and as Successor to**
**TURNER & NEWELL PLC,**
**TURNER ASBESTOS FIBRE**
**and KEASBY & MATTISON**
Through its registered agent:
T & N PLC
Bowden House
Ashburton Road, W., Trafford Park
Manchester, M17 1RA, Untied Kingdom

**SANK, INC. individually and as Successor to Buck Kreihs Company, Inc.**
Through its Agent for Service
John J. Sehrt. Jr.
3850 N. Causeway Blvd.
Lakeway II
Metairie, LA  70002

**EAGLE, INC. (Formerly EAGLE ASBESTOS & PACKING)**
Through its agent for service
Lawrence G. Pugh, III, Esq.
Montgomery, Barnett, Brown, Read, Hammond & Mintz
3300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-3200

**DIXIE MACHINE, WELDING & METAL WORKS, INC.**
Through its Agent for Service
Vicki H. Kihnemann
5801 Citrus Blvd.
Harahan, LA  70123

F:\CLIENTS\MCDONALD.WLT\PLEADING\PETITION.ORG

14