JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**MDL 875**

FEB 25 2009

There BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

FILED
CLERK'S OFFICE

)
)
IN RE ASBESTOS PRODUCTS ) **MDL DOCKET NO. 875**
LIABILITY LITIGATION (NO VI) ) **(J.P.M.L.)**
)
THIS DOCUMENT RELATES TO: )
)
_____ )
)
)
ANGIE SMIDDY, as daughter, next Friend, and ) **FOR THE EASTERN DISTRICT**
representative of the Estate of BOBBIE JEAN ) **OF TENNESSEE**
ELEDGE CRAWFORD, Decedent, )
)
**Plaintiff,** ) **CASE NO. 3:08-cv-368**
)
vs. )
)
ALCOA, INC., )
)
**Defendant.** )
)

PLEADING NO. 5758

### ALCOA INC.'S RESPONSE TO PLAINTIFF'S MOTION
### TO VACATE CONDITIONAL TRANSFER ORDER - 318

COMES NOW Defendant Alcoa Inc. ("Alcoa") in response to Plaintiff's Motion to

Vacate Conditional Transfer Order - 318.  Plaintiff's Motion to Vacate should be denied and this

case should be transferred to MDL 875.

While Plaintiff makes vague, boilerplate allegations of exposure to "toxic substances"

and "chemicals dust," this is an asbestos case.  The only "chemical" or "toxic substance" which

Plaintiff mentions by name is asbestos.  The only authority Plaintiff attached to her brief --

Satterfield v. Breeding Insulation Company et al., 266 S.W.3d 347 (Tenn. 2008) -- involves

asbestos exposure.  Clearly, this is a personal injury case involving exposure to asbestos.

Plaintiff's second argument -- that take-home allegations fall outside the jurisdiction of MDL

## OFFICIAL FILE COPY

IMAGED FEB 25 2009

875 -- is similarly unpersuasive. Asbestos cases involve common questions of proof whether or not they involve take-home allegations.

Under 28 U.S.C. § 1407, the Court should consider three factors in determining whether a case should be transferred to a MDL Panel: (1) the presentation of one or more common questions of fact; (2) transfer must be for the convenience of parties and witnesses; and (3) transfer must promote the just and efficient conduct of such actions. In this case, all three factors militate in favor of transfer: (1) because this is an asbestos case, there are common questions of fact; (2) centralized handling of asbestos cases has been found to foster the convenience of parties and witnesses; and (3) centralized pretrial handling of asbestos cases fosters the administration of such actions. Accordingly, Plaintiff's Motion to Vacate should be denied, and this case should be transferred to MDL 875 for consolidated handling of pretrial matters.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed suit on September 11, 2008 against Alcoa, alleging negligence; negligence *per se*; failure to warn; negligence in hiring, training, and/or supervision of employees and supervisors; wrongful death; and a cause of action for punitive damages. An amended complaint was filed on September 12, 2008. Plaintiff claims that her mother, Bobbie Jean Eledge Crawford, was exposed to asbestos through the washing of Ms. Crawford's former husband's clothing. Her former husband was an Alcoa employee in various capacities from 1965 and 1982. (See Doc. No. 2 ¶¶ 8-18.)

Alcoa answered this case on September 18, 2008, and filed a Notice of Related Action with the Judicial Panel on Multidistrict Litigation ("JPML") identifying this case as an "asbestos personal injury action" and requesting that the Panel transfer this case to MDL 875 pursuant to the July 29, 1991 Order establishing MDL 875. On January 9, 2009, the JPML filed a

Conditional Transfer Order in the Eastern District of Tennessee. On January 23, 2009, Plaintiff

filed a Notice of Opposition to the Conditional Transfer Order.

## II.    ANALYSIS

The Judicial Panel on Multidistrict Litigation has centralized in a single district all

pending federal personal injury and wrongful death asbestos actions for consolidated and

coordinated pretrial proceedings. In re Asbestos Products Liability Litig., 771 F. Supp. 415, 425

(J.P.M.L. 1991), aff'd without opinion, Prekler v. Owens-Corning Fiberglas Corp., 60 F.3d 824

(4th Cir. 1995). In its opinion, the Panel expressed concern over the duplication of effort,

economy, potential for inconsistent decisions and the inconsistent treatment of plaintiffs in and

among the districts caused by thousands of pending asbestos cases. Id. at 420-22. In response to

this crisis, the Panel directed that all pending federal district court actions, including

subsequently filed tag-along actions, be centralized in the Eastern District of Pennsylvania. Id. at

422. In establishing the asbestos MDL docket, the Panel stated:

> the actions in this litigation involve common questions of fact
> relating to injuries or wrongful death caused by exposure to
> asbestos or asbestos containing products, and … centralization
> under § 1407 in the Eastern District of Pennsylvania will best serve
> the convenience of the parties and witnesses and promote the just
> and efficient conduct of this litigation.

Id. at 417.

Under 28 U.S.C. § 1407, there are three requirements for obtaining transfer to an MDL

panel: (1) the presentation of one or more common questions of fact; (2) transfer must be for the

convenience of parties and witnesses; and (3) transfer must promote the just and efficient

conduct of such actions. 28 U.S.C. § 1407(a). These three requirements are to be balanced and

are not entitled to equal weight. 17 Moore's Federal Practice, Multidistrict Litigation

§ 112.04[1][a] (3d ed. 2005). Against this backdrop, and for the reasons further outlined below,

it is readily apparent that transfer is appropriate here, and that Plaintiff's Motion to Vacate should be denied.

### A.   Common Questions of Fact Exist Between Plaintiffs' Action and the Actions Consolidated in MDL-875

Plaintiff's theory as to why this case should not be transferred centers on two facts. First, Plaintiff contends that this case involves exposure to asbestos and other (unspecified) toxic substances. (See Doc. No. 2 ¶¶ 13-15; Doc. No. 9 at 2-3.) Second, Plaintiff alleges that this case involves "unique issues" because it presents questions regarding "employer duty to non-employees." (Doc. No. 9 at 2-3.) Neither of these contentions has merit.

The initial criteria in evaluating whether a case should be consolidated with other cases for pretrial handling is whether there are common questions of fact between cases. In re Japanese Electronic Products Antitrust Litig., 388 F. Supp. 565, 567 (J.P.M.L. 1975) (transferring case despite fact that it involved four additional defendants and added new claims, and holding that "[t]ransfer under section 1407 is not dependent on a strict identity of issues and parties but rather on the existence of one or more common questions of fact"). Similarly, in In re "Fine Paper" Antitrust Litig., 453 F. Supp. 118 (J.P.M.L. 1978), the Panel transferred a tag-along action to a pending MDL proceeding even though "the actions now before the Panel and the actions in the transferee district involve some different defendants and some dissimilar factual issues." Id. at 121. The Panel recognized that despite the lack of complete identity in the parties and the issues, the actions before it shared questions of fact. Id.

In this case, the first requirement of commonality is satisfied because Plaintiff's claims by their very nature share a common question of fact with the cases currently pending in MDL 875 because each case currently pending before MDL 875 is a personal injury or wrongful death claim involving asbestos exposure. While Plaintiff has pleaded these claims as if they were not

asbestos-related claims, "mixed dust" and "take-home" claims remain "asbestos cases" and other cases of these types are already pending before MDL 875. "[W]hen two or more complaints assert comparable allegations against identical defendants based on similar transactions and events, common factual questions are presumed." In re: AirWest Inc. Sec. Litig., 384 F. Supp. 609, 611 (J.P.M.L. 1974).

Plaintiff has attempted to plead her Complaint in such a manner that this case cannot be removed to MDL 875. "A federal court need not blind itself to the real gravamen of a claim because plaintiff tenders a blindfold in the form of artificial characterizations in its complaint." In re Wiring Device Antitrust Litig., 498 F. Supp. 79, 82 (E.D.N.Y. 1980).[1] In evaluating Plaintiff's Motion to Vacate, the Court must compare the allegations contained in Plaintiff's Complaint to those contained in other cases already pending before the MDL. With such a review, it is clear that other cases virtually identical to Plaintiff's are already pending before MDL 875, and that Plaintiff's case belongs before MDL 875 for treatment with them.

### 1.    "Mixed Dust" Cases Are Currently Pending Before MDL 875.

MDL 875 is *the* federal forum for litigating asbestos-related injuries. New cases which share common questions with cases previously transferred to an MDL should be transferred as well. See In re Seroquel Prods. Liab. Litig., 542 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008).

---

[1]    While the "well-pleaded complaint" rule applies in situations where plaintiffs dress claims of a federal nature in state law language in an attempt to preempt federal court jurisdiction, see, e.g., Franchise Tax Board v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10 (1983), similar logic applies in a situation such as this where Plaintiff attempts to mask the true nature of her claim behind vague language in an attempt to thwart the intent of a federal statute and the clear wording of the Judicial Panel on Multidistrict Litigation Order establishing MDL 875. Under the "well-pleaded complaint" rule, removal is proper, even when a plaintiff's complaint does not expressly rely on federal law, if "a substantial, disputed question of federal law is a necessary element of a state cause of action." Jairath v. Dyer, 154 F.3d 1280, 1282 (11th Cir. 1998). In this case, transfer to MDL 875 is necessary to resolve the allegations in this case that involve asbestos-related liabilities.

Plaintiff's case, as pleaded, contains personal injury allegations related to asbestos exposure. Even if this case *does* involve questions of exposure to chemical elements and compounds other than asbestos, many other cases currently pending before MDL 875 do as well.[2] Both the Alexander case and the Simon case involve alleged exposure to "silica, alumina dust, and asbestos dust and fibers." (See Alexander Complaint ¶ 3; Simon Complaint ¶ 3.) Hamrick involves claims about "asbestos and other harmful ingredients" and "dangerous ingredients including silica." (Hamrick Complaint ¶¶ 7-8.) Plaintiff's contentions that this case should be treated differently than Alexander, Hamrick, and Simon -- all cases involving allegations of exposure to mixed substances -- should be rejected.

### 2.    "Take-Home" Cases Are Still Asbestos Cases.

"Take-home" cases are asbestos cases. Although the duty of care owed in a "take-home" case may differ from a "standard" asbestos cases, differences in legal theories are no impediment to case transfer so long as common questions of fact exist. In re Sugar Indus. Antitrust Litig., 471 F. Supp. 1089, 1094 (J.P.M.L. 1979) ("presence of foreign state law in multidistrict litigation is of no particular consequence") (internal citations omitted); In re Antibiotic Drugs Litig., 299 F. Supp. 1403, 1405-06 (J.P.M.L. 1969) ("[d]ifferent legal theories present no bar to transfer ... where common questions of fact are present" and the "fact that a cause is in . . .

---

[2]      See, e.g., Summons and Complaint, Gabriel Alexander v. Lockheed Martin Corp. et al., Case No. 08-54 (V.I. Jan. 24, 2008), attached hereto as Exhibit 1, and Theodore Simon v. Lockheed Martin Corp.., Case No. 08-55 (V.I. Jan. 24, 2008), attached hereto as Exhibit 2, both removed to MDL No. 875 by CTO-318, dated January 9, 2009, correspondence attached hereto as Exhibit 3; Complaint, Charles Hamrick v. A&I Company, Circuit Court of Kanawha County, W. Va., Case No. 5-C-54 (2005), attached hereto as Exhibit 4, removed to the Southern District of W. Va. as Case No. 2:05-CV-0286, removal papers attached hereto as Exhibit 5, and Conditional Transfer Order papers attached hereto as Exhibit 6. Post-transfer Hamrick has been returned to the Southern District of West Virginia where it awaits trial. See Remand Order, attached hereto as Exhibit 7.

district court by removal from state court has no bearing on a motion to transfer") (internal

citation omitted); In re Celotex Corp. "Technifoam" Prods. Liab. Litig., 68 F.R.D. 502, 505

(J.P.M.L. 1975) ("[A]lthough each action may raise legal issues regarding application of law of a

particular state, this is an insufficient ground for denying transfer of this litigation under Section

1407 since such issues can be presented to and resolved by the transferee judge").  Thus, even

assuming that Plaintiff is seeking to recover based on legal theories different from any of the

cases consolidated in MDL 875 (which she is not), the assertion of different legal theories based

on common factual allegations would not preclude a transfer pursuant to 28 U.S.C. § 1407. Id.

### 3.        Other "Take-Home" Cases Are Already Pending Before MDL 875

Even accounting for this "difference" in legal theory, "take-home" and "standard" cases

involve virtually identical questions of proof.  In both types of cases, the parties use similar

witnesses, the same experts, and largely the same exhibits.  The same questions need to be

answered; the same issues need to be addressed.  These include:

- Does the plaintiff suffer from an asbestos-related disease?

- Was the plaintiff's asbestos-related disease diagnosed in a reliable manner?

- Were asbestos products either manufactured by a particular defendant, or present at a defendant's premises?

- What level of fibers were released by a particular product, or were in the air at a particular premises?

- Were individual defendants aware that their products produced a level of respirable fibers that could cause harm to human health?

- What was the state of industrial hygiene knowledge on the date or dates a particular exposure was alleged to have occurred?

- Given the state of industrial hygiene knowledge, should a particular defendant be held liable for injuries suffered by a particular plaintiff?

- Are punitive damages appropriate, and, if so, at what level, given that such damages reduce the possible pool of damages left to other defendants.

Each of these questions must be answered no matter whether a particular case is "standard" or "take-home." Whether a particular case is "standard" or "take-home," the same expert pulmonologists, industrial hygienists, pathologists, historians, and other experts would be used. General testimony taken once about a particular defendant can be used across all of the federal cases pending against that defendant.[3] Given that Plaintiff's Complaint shares central factual allegations with the other MDL cases, it should be permitted to proceed to the MDL.

For the same reason, Plaintiff's contentions that "individual" factual issues predominate in the transfer analysis is a red herring. Simply stated, there are no so-called "individual" facts alleged in the instant matter. Rather, every essential factual allegation against Alcoa in this case is shared by thousands of asbestos cases pending against it and other defendants in cases which already have been finally transferred to the MDL Court. The commonality requirement is clearly satisfied.

To emphasize this point, as with "mixed dust" cases, other "take-home" cases are already pending before MDL 875.[4] The Clippard case, like Plaintiff's, involves exposure to asbestos carried home to the plaintiff on the clothes of the plaintiff's former spouse. (See Complaint ¶ 1(b).) "Take-home" cases, like "standard" asbestos cases, involve presentation of similar

---

[3]      Indeed, at least one case currently pending before MDL 875 involves the very same facility at issue as in Plaintiff's case. See Complaint for Wrongful Death, Caroline Welch v. Alcoa Inc., originally filed as Case No. L-15371 in the Circuit Court for Blount County, Tennessee, attached hereto as Exhibit 8, removed to the Eastern District of Tennessee as Case Number 06-cv-286, with the Notice of Removal attached hereto as Exhibit 9, and transferred to MDL 875 by Conditional Transfer Order 268, attached hereto as Exhibit 10.

[4]      See, e.g., Complaint, Helen Nadine Clippard v. A.W. Chesterton, Inc., Case No. 1:06-CV-000088 (Mar. 15, 1996 W.D.N.C.), attached hereto as Exhibit 11, and CTO-263, issued May 5, 2006, transferring the Clippard case to MDL 875, attached hereto as Exhibit 12.

evidence -- job sites, product-specific information, presentation of testimony regarding corporate

knowledge -- and generally involve the same experts as would testify in "products" litigation.[5]

### B.   MDL 875 is the "Convenient" Forum for Litigation of Plaintiff's Claims

Plaintiff's next argument against transfer is that it would not "serve the convenience of

the parties and witnesses."  (Doc. No. 9 at 6.)  Plaintiff notes that:

> Both the Plaintiff and Defendant are located in the Eastern
> District of Tennessee.  Counsel for both parties reside in the
> Eastern District.  The witnesses for both parties are located in the
> Eastern District.  The Smiddy litigation involves different
> questions of fact than the MDL 875 litigation and therefore, will
> not be beneficial to the Smiddy litigants.

(Id.)

As an initial matter, for the reasons previously discussed, Alcoa believes that this

litigation involves issues which are identical to other cases currently pending before MDL 875.

Plaintiff's myopic, Smiddy-centered view of this case results in a misapplication of the

"convenience" factor as it has historically been applied.  Second, because this case will be

remanded to the Eastern District of Tennessee once all common discovery has occurred,

Plaintiff's contentions regarding convenience are immaterial to her Motion to Vacate.

### 1.   "Convenience" under Section 1407 is not Case-Specific.

In assessing "convenience," the Panel does not look to the "convenience" of individual

litigants in individual cases.  Rather, the Panel looks to the interests of all of the MDL plaintiffs

---

[5]    The one issue that is present in "take-home" cases that is not in a "standard"
asbestos case is whether a premises owner has a duty to protect the spouse of an employee from
health effects caused by exposure to asbestos fibers.  Satterfield v. Breeding Insulation Company
et al., 266 S.W.3d 347 (Tenn. 2008), cited in Plaintiff's Motion, held that an employer had such a
duty under Tennessee law.  Accordingly, the one distinction between "take-home" and
"standard" cases is effectively not at issue.  Inasmuch as other "take-home" specific issues exist,
MDL 875 is able to make decisions affecting just a sub-set of its cases.

and defendants, and must consider multiple litigation as a whole and in light of the purposes of

§ 1407. In re Library Editions of Children's Books, 297 F. Supp. 385, 386 (J.P.M.L. 1968).

When dealing with large multidistrict litigation from throughout the United States, "central

depositories for documents and common depositions can save enormous amounts of time.

Having the litigation consolidated in a centrally located, convenient forum ... serves the

convenience of all the parties involved." Moore's § 112.04[1][a].

The focus of the parties' discovery in the present case will be the same as in every other

case currently pending before MDL 875. As discussed above, much of the discovery in this case

focuses on medical issues, the state-of-the-art of scientific knowledge, and questions of industrial

hygiene which have already been litigated. Plaintiff, like Alcoa and every other defendant

currently involved with MDL 875, can benefit from its coordinated case handling, including

through use of discovery which has already been conducted.[6] Indeed, at present, at least one

other Alcoa, Tennessee-related case is pending before MDL 875.[7]

Failure to consolidate this action with similar actions already pending before MDL 875 --

including Welch, which originated from the same facility -- would only result in duplicative and

onerous discovery. Manual for Complex Litigation, § 31.131 (1995) (" . . . objective of transfer

is to eliminate the duplication in discovery, avoid conflicting rulings and schedules, reduce

---

[6]     See In re Gypsum Wallboard, 303 F. Supp. 510, 511 (J.P.M.L. 1969) ("[n]or is
the fact that no discovery has taken place in this case a bar to the inclusion of this case in the San
Francisco pretrial program for the transferee court can insure that all previous discovery is made
available to new parties and can, if necessary, allow the new parties to supplement the discovery
which has already taken place."); In re Alien Children Ed. Litigation, 482 F. Supp. 326, 329
(J.P.M.L. 1979) ("the transferee judge has authority to invoke procedures whereby discovery
already completed in any action and relevant to the other actions can be made applicable to those
actions") (citing In re Airport Car Rental Antitrust Litig., 448 F.Supp. 273, 275 (J.P.M.L. 1978));
In re Olympia Brewing Co. Antitrust Litig., 415 F. Supp. 398, 401 (J.P.M.L. 1976) (same).

[7]     See discussion supra at n.3.

litigation costs and save time and effort on part of parties, the attorneys, the witnesses and the courts"). Avoiding duplicative discovery and conserving party resources is precisely the type of "convenience of the parties and witnesses" that Section 1407 is designed to promote. See In re Nigeria Charter Flight Contract Litig., No. 1613, 2004 WL 1444940, at *1376 (J.M.P.L. June 21, 2004) (stating that "[c]entralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").[8]

**2.      Case-Specific Discovery is Conducted where Convenience Dictates.**

Second, transferring this case to MDL 875 does not compel all discovery to occur in Pennsylvania. The MDL process contemplates that a certain amount of "local" discovery would necessarily occur following a period of centralized, coordinated discovery before the MDL court.[9] As has happened in a multitude of prior MDL 875 cases -- including the Hamrick case discussed previously in this brief -- the Panel can remand the case at the point when the only discovery remaining to be done is case-specific. In re Patenaude, 210 F.3d 135, 145 (3d Cir. 2000).

---

[8]      In re Koratron Patent Litigation is directly on point. 327 F. Supp. 559 (J.P.M.L. 1971). There, the Panel held that transfer was appropriate despite the fact that substantial discovery had already been completed by the transferee court. Id. at 560. The Panel reasoned that the benefits of centralized management of pre-trial proceedings would outweigh any difficulties that might arise from the transfer of tag-along cases after discovery had begun in the transferee court. Id. The Panel deemed it significant that failure to transfer the case would result in the type of duplicative discovery that Section 1407 is intended to prevent. Id. The Panel relied in part on the ability of the transferee court to ensure that all previous discovery is made available to the transferred plaintiffs, and to allow them to supplement the discovery already completed, if necessary. See id.

[9]      See Multidistrict Litigation: Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Committee of the Judiciary, 89th Cong. 56 (1966), H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1901-02 (stating that "the committee recognizes that in most cases there will be a need for local discovery proceedings to supplement coordinated discovery proceedings, and that consequently remand . . . for this purpose is desirable.").

Denying Plaintiff's Motion to Vacate does not mean that the case-specific discovery in this matter will somehow occur in Pennsylvania. Whether this case is transferred now or not, the case-specific discovery will occur wherever it is convenient for the lawyers and witnesses relevant to it. That some of these parties may be located in Tennessee now has no bearing on Plaintiff's Motion to Vacate, which should be denied.

### C.     The Just and Efficient Resolution of all the Relevant Actions Will Be Promoted by Transferring Plaintiff's Action to MDL 875.

The third and most important requirement for transfer is the Panel's determination that consolidation and transfer will provide the just and efficient conduct of the litigation. The term "efficiency" in this context "usually refers to saving judicial resources." Moore's § 112.04[1][d]. Section 1407 was enacted "as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different judicial districts." In re Food Lion, Inc., 73 F.3d 528, 532 (4th Cir. 1996).

As a general matter, asbestos cases have clogged the courts more than any other type of case in history. The issue of whether multidistrict consolidation of asbestos cases for pretrial treatment has long been settled. See, e.g., In re Asbestos Products Liability Litig., 771 F. Supp. 415, 425 (J.P.M.L. 1991), aff'd without opinion, Prekler v. Owens-Corning Fiberglas Corp., 60 F.3d 824 (4th Cir. 1995). As Plaintiff admits, since the entry of since this Order, "tens of thousands" of actions have been transferred to MDL 875. (See Doc. No. 8.) A court evaluating "tens of thousands" of actions develops a certain level of experience in resolving them. This fact -- the level of experience of a particular court -- is something that the Panel is entitled to consider when it evaluates whether a case should be transferred. See In re Plywood Antitrust Litig., 376 F. Supp. 1405, 1407 (J.P.M.L. 1974).

This is an asbestos case. Inasmuch as it is, efficient judicial administration of this case,

along with all other asbestos cases in the MDL, will be achieved by conducting their pretrial proceedings in one forum in front of one judge to avoid repeated, or possibly conflicting, rulings. See In re Air Crash Disaster Near Chicago, 476 F. Supp. 445, 447 (J.P.M.L. 1979).  Accordingly, the third factor provided under 28 U.S.C. § 1407(a) is met, and transfer is warranted here. Accordingly, Plaintiff's Motion to Vacate Conditional Transfer Order -- 318 should be denied.

### III.    CONCLUSION

WHEREFORE, the present case should be transferred to MDL 875 so that the intent and purpose of federal nationwide asbestos MDL may be achieved.  The just and efficient administration of asbestos cases necessitates the transfer of its case because, artful pleading aside, it falls squarely within the jurisdiction and purposes of MDL 875.

Accordingly, Defendant Alcoa Inc. respectfully requests that this Court deny Plaintiff's Motion to Vacate and for such other and further relief to which Alcoa may be entitled.

Respectfully submitted,


John A. Lucas
John T. Winemiller
MERCHANT & GOULD, P.C.
110 McGhee Tyson Blvd., Suite 203
Knoxville, TN  37701-4105

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 25 2009

FILED
CLERK'S OFFICE

## There BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| _____ )<br><br>IN RE ASBESTOS PRODUCTS )<br>LIABILITY LITIGATION (NO VI) )<br><br>THIS DOCUMENT RELATES TO: )<br> )<br> )<br>_____ )<br> )<br> )<br> )<br>ANGIE SMIDDY, as daughter, next Friend, and )<br>representative of the Estate of BOBBIE JEAN )<br>ELEDGE CRAWFORD, Decedent, )<br> )<br>                     Plaintiff, )<br> )<br>vs. )<br> )<br>ALCOA, INC., )<br> )<br>                     Defendant. ) | MDL DOCKET NO. 875<br>(J.P.M.L.)<br><br><br><br><br><br><br><br>FOR THE EASTERN DISTRICT<br>OF TENNESSEE<br><br><br>CASE NO. 3:08-cv-368 |

## CERTIFICATE OF SERVICE

The undersigned states that a copy of Alcoa Inc.'s Response to Plaintiffs' Motion to Vacate Conditional Transfer Order -318 along with this Certificate of Service was served upon the attached Panel Service List from CTO-318, via U.S. Mail at their addresses as disclosed on the Panel Service List, that said envelopes having been properly sealed, sufficient postage affixed thereto and same was deposited on the 24th day of February 2009, in the United States mail receptacle in Richmond, Virginia.

_____
John T. Winemiller

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                          MDL No. 875

## PANEL SERVICE LIST (Excerpted from CTO-318)

Angie Smiddy, etc. v. Alcoa, Inc., E.D. Tennessee, C.A. No. 3:08-368

Peter G. Angelos
LAW OFFICES OF
PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street
Third Floor
Oakland, CA 94607

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

William F. Mahoney
SEGAL MCCAMBRIDGE
SINGER & MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Wayne A. Ritchie, II
RITCHIE DILLARD & DAVIES
P.O. Box 1126
Knoxville, TN 37901-1126

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ
& TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

John T. Winemiller
MERCHANT & GOULD PC
110 McGhee Tyson Boulevard
Suite 203
Knoxville, TN 37701

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 25 2009

FILED
CLERK'S OFFICE

# EXHIBIT 1

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

GABRIEL ALEXANDER )
                             )    CIVIL NO. **59** /2008
                Plaintiff )
                             )    ACTION FOR DAMAGES
vs.                              )    JURY TRIAL DEMANDED
                              )
LOCKHEED MARTIN CORPORATION, )
Individually and as successor in interest to )
MARTIN MARIETTA CORPORATION, )
MARTIN MARIETTA ALUMINUM, INC & )
MARTIN MARIETTA ALUMINUM )
PROPERTIES, INC; MARTIN MARIETTA )
CORPORATION, Individually and as successor )
in interest to, MARTIN MARIETTA )
ALUMINUM, INC. & MARTIN MARIETTA )
ALUMINUM PROPERTIES, INC., )
ALCOA, INC., GLENCORE, LTD, )
f/k/a CLARENDON, LTD. AND )
ST. CROIX ALUMINA, LLC )
                              )
               Defendants )
                              )

'08 JAN 24 P4:03

## COMPLAINT

### JURISDICTIONAL ALLEGATIONS

1.    This Court has jurisdiction over the Action pursuant to Title 4 V.I.C. § 76.

2.    Plaintiff is a resident and citizen of St. Croix, U.S. Virgin Islands.

3.    Defendant **LOCKHEED MARTIN CORPORATION ("LOCKHEED"),**

individually and as successor in interest to, **MARTIN MARIETTA**

**CORPORATION, MARTIN MARIETTA ALUMINUM, INC. & MARTIN**

**MARIETTA ALUMINUM PROPERTIES, INC.** is a corporation incorporated

**EXHIBIT 1**

Alexander v. Martin Marietta Alumina Complaint

under the laws of Delaware and was doing business in the Virgin Islands at all times relevant to this action.

4.    Defendant **MARTIN MARIETTA CORPORATION,** individually and as successor in interest to  **MARTIN MARIETTA ALUMINUM, INC. & MARTIN MARIETTA ALUMINUM PROPERTIES, INC.** is a corporations incorporated under the laws of North Carolina and was doing business in the Virgin Islands at all times relevant to this action.

5.    Defendant **MARTIN MARIETTA ALUMINUM, INC.** is a corporation incorporated under the laws of North Carolina and was doing business in the Virgin Islands at all times relevant to this action.

6.    Defendant **MARTIN MARIETTA ALUMINUM PROPERTIES, INC.** is a corporation incorporated under the laws of North Carolina and was doing business in the Virgin Islands at all times relevant to this action.

7.    Defendant **ALCOA, INC.** is a corporation organized under the laws of Pennsylvania and was doing business in the Virgin Islands at all times relevant to this action.

8.    Defendant **ST. CROIX ALUMINA, LLC** is a limited liability entity that was doing business in the Virgin Islands at all times relevant to this action.

9.    Defendant **GLENCORE, LTD, f/k/a CLARENDON, LTD.** is a foreign corporation with its principal business in Connecticut and was doing business in the Virgin Islands at all times relevant to this action.

2

Alexander v. Martin Marietta Alumina,et al Complaint

## GENERAL ALLEGATIONS

1.  Plaintiff at all relative times herein was employed at the alumina processing plant on St. Croix, U.S. Virgin Islands.  Specifically from 1967-2001.

2.  During the periods of Plaintiff's employment at the alumina processing plant the said premises was owned *seriatim* by Martin Marietta Properties, Inc., Virgin Islands Alumina, Inc., and St. Croix Alumina, LLC.

3.  During Plaintiff's employment at the said plant he was continuously exposed to bauxite dust containing silica, alumina dust, and asbestos dust and fibers.

4.  Exposure to those toxic substances above listed in ¶3 have been proven to cause serious debilitating diseases such as pneumoconiosis, asbestosis, lung cancer and mesothelioma.

5.  Plaintiff has developed  pneumoconiosis and as a matter of scientific probability and reasonable medical certainty has an increased risk of developing even more serious and/or fatal disease or illness as a proximate result of his exposure to the aforementioned silica and asbestos dust and fibers at the aforementioned alumina plant.

6.  Defendants', at the relevant period of their respective ownership of the premises exercised control over the work site when Plaintiff was exposed to the aforementioned substances.  Each such Defendant supplied directly or indirectly

3

Alexander v. Martin Marietta Alumina, et al Complaint

the bauxite containing silica , and/or asbestos containing products for the use of
Plaintiff for their respective business purposes..

7.   All Defendants' in supplying the aforementioned silica, bauxite and asbestos
containing products including the installing and removing of asbestos containing
products failed to warn Plaintiff of the potential dangers of the use of these
products and their propensity to cause injury.

9.   Plaintiff's exposures have been of sufficient intensity and duration as to cause the
harm and damages to him as described herein, and Plaintiff's exposures to silica
and asbestos containing  products has been cumulative and continuing, and the
effects of such exposure are carried within Plaintiff to the present.

10   Plaintiff Worker has been exposed to substantial quantities of silica and asbestos
containing products as a result of employment duties at various times with various
employers at the alumina plant on St. Croix.  As part of said employment,
Plaintiff Worker was required to work in close proximity to these substances
which were utilized and supplied by Defendants at the alumina plant on St. Croix
for extended periods of time.  The nature of the work also resulted in Plaintiff's
inhalation of substantial quantities of asbestos dust, silica dust and alumina dust
during the course of his employment.

11.   Defendants by their actions and failure to act as hereinafter alleged have directly
and proximately caused, and are legally responsible and liable for the harm and
damages sustained by Plaintiff.  The harm and damages sustained by Plaintiff

4

Alexander v. Martin Marietta Alumina,et al Complaint

include, but are not limited to the development of diseases, illnesses and/or conditions, undergoing and continuing to undergo medical treatment, disability from their normal work, which disability will continue into the future, pain and suffering, past, present and future, a diminution in the quality and enjoyment of life, mental anguish, fear, severe emotional distress, all of which will continue into the future, and an enhanced risk of developing cancer and other diseases, illnesses and conditions, and direct and indirect expenses relating to the above, as well as loss of income, earning capacity and employability.

12.   Plaintiff expressly reserve any and all rights that he has to maintain actions for damages against the Defendants, or any one or more of them, at some future time as may be warranted should Plaintiff develop any other or additional diagnosable diseases, illnesses and/or conditions, or suffer any other or additional damages related to any other additional diagnosable diseases, illnesses and/or conditions which have not yet manifested themselves as a result of the Defendants' conduct as described herein.

## FIRST CAUSE OF ACTION FOR
## NEGLIGENCE, GROSS NEGLIGENCE, RECKLESSNESS
## AND INTENTIONALLY WRONGFUL ACTS

13.   Plaintiff realleges the allegations contained in paragraphs above.

14.   Defendants, by their actions and failure to act in causing Plaintiff to be exposed to silica and asbestos-containing products, are guilty of negligence, gross negligence,

5

Alexander v. Martin Marietta Alumina, et al Complaint

recklessness and intentionally wrongful acts which have proximately caused

Plaintiff's injuries.

15.     Defendants' actions and failure to act, include, but are not limited to, the

following:

(a)     Failing to monitor the concentration of asbestos and silica in the air at the
        alumina plant by machines, personnel, or any other method;

(b)     Failing to keep relevant records required by the applicable statutes and
        regulations;

(c)     Failing to take appropriate safety precautions regarding asbestos and silica
        exposure of Plaintiff Worker;

(d)     Failing to provide and require the wearing of protective clothing by
        Plaintiff;

(e)     Failing to provide effective respirators and/or fresh air sources;

(f)     Failing to provide changing rooms for exposed workers;

(g)     Failing to post warning signs and to keep areas clear of non-involved
        workers;

(h)     Failing to inform Plaintiff, whom they knew had no reason to realize it, of
        the inherently dangerous nature of asbestos exposure and of silica
        exposure and of the grave health risks associated with such exposure;

(i)     Failing to warn Plaintiff of the risks and hazards associated with working
        in close proximity to silica and asbestos-containing products;

(j)     Failing to keep adequate medical records regarding exposed Plaintiff ;

(k)     Failing to arrange for appropriate medical examinations and the retention
        of records relating thereto;

(l)     Failing to provide follow-up medical care for exposed Plaintiff;

(m)     Failing to place exposed asbestos and silica-containing products in

6

Alexander v. Martin Marietta Alumina,et al Complaint

impermeable bags or containers;

(n)   Causing exposed asbestos and asbestos-containing products to be hauled to an open-air dump in open-back trucks, and failing to cover the dumped asbestos and silica-containing products for days on end;

(o)   Failing to wet down exposed asbestos and silica-containing products;

(p)   Failing to investigate and discover the locations of all asbestos and silica-containing products at the alumina plant, and failing to provide information dealing with asbestos and silica-containing products, including designation of areas where they are located, in any Lockheed Martin, Martin Marietta, MMM, safety policy literature;

(q)   Failing to investigate, test, or otherwise evaluate the products used at their facilities to determine the products' hazardousness; and

(r)   Specifying the use of, inspecting and/or installing asbestos and silica-containing products at the alumina plant and, as a result thereof, knowing of the existence and location of said asbestos and silica-containing products in the alumina plant, failing to warn Plaintiff of the existence and location of same.

(16)   The foregoing are a proximate causes of Plaintiff's damages set forth herein.

## SECOND CAUSE OF ACTION
## FOR SUPPLYING CHATTEL
## DANGEROUS FOR INTENDED USE

(17)   Plaintiff realleges the allegations contained in paragraphs above.

(18)   At all times relevant to this action, Defendants supplied to Plaintiff directly, and

through others, asbestos and silica containing products to be used for Defendants'

business purposes.

(19)   Defendants failed to exercise reasonable care to make the asbestos and silica

7

Alexander v. Martin Marietta Alumina,et al Complaint

products safe for the uses for which they were supplied and/or failed to exercise

reasonable care to discover their dangerous condition or character, and to inform

those whom they expected to be exposed to them, specifically Plaintiff.

(20)     The foregoing actions of Defendants are a proximate cause of the injuries set forth

herein.

**THIRD CAUSE OF ACTION**
**FOR STRICT LIABILITY**

(21)     Plaintiff realleges the allegations contained in paragraphs above.

(22)     At all times relevant to this action, Defendants supplied to Plaintiff directly, and

through others, asbestos and silica containing products to be used for Defendants'

business purposes.

(23)     The unreasonably dangerous condition of these products is a proximate cause of

the physical harm and injuries to the Plaintiff.

(24)     As a result, Defendants are strictly liable for the physical harm caused to Plaintiff.

**FOURTH CAUSE OF ACTION**
**FOR PUNITIVE DAMAGES**

(25)     Plaintiff realleges the allegations contained in the paragraphs above.

(26)     The actions and failure to act of all Defendants in causing Plaintiff to be exposed

to asbestos and silica-containing products and to the toxic substances as detailed

herein constitute such intentional, extreme, outrageous, and unlawful conduct as

to warrant the imposition of punitive damages against them.

**WHEREFORE,** Plaintiff pray that this Honorable Court award Plaintiff compensatory

Alexander v. Martin Marietta Alumina,et al Complaint

damages and punitive damages against Defendants, jointly and severally, in amounts that

are just and equitable as proven by the evidence; award Plaintiff his costs, including

reasonable attorneys' fees; and provide for such other and further relief in favor of

Plaintiff as the Court deems just and equitable.


**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES.**


Respectfully submitted,

DATED: 1-24-08

Thomas Alkon, Esq.
Counsel for Plaintiff
Law Offices of Thomas Alkon, P.C.
2115 Queen Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Phone: (340)773-3305
Fax: (340) 773-4491


FILED 1/25/08
FEE PAID $50
BY FCB

9

# EXHIBIT 2

06/17/2008  11:23    340-776-0651            TRIDENT TRUST CO            PAGE  03

## SUMMONS                                                        (Civil Action)

### IN THE SUPERIOR COURT THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **THEODORE SIMON** | ) | **CIVIL NO. 52/2008** |
| **Plaintiff** | ) | |
| | ) | **ACTION FOR DAMAGES** |
| **vs.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **LOCKHEED MARTIN CORPORATION,** | ) | |
| **Individually and as successor in interest to** | ) | |
| **MARTIN MARIETTA CORPORATION,** | ) | |
| **MARTIN MARIETTA ALUMINUM, INC &** | ) | |
| **MARTIN MARIETTA ALUMINUM** | ) | |
| **PROPERTIES, INC; MARTIN MARIETTA** | ) | |
| **CORPORATION, Individually and as successor** | ) | |
| **in interest to, MARTIN MARIETTA** | ) | |
| **ALUMINUM, INC. & MARTIN MARIETTA** | ) | |
| **ALUMINUM PROPERTIES, INC.;** | ) | |
| **ALCOA, INC., GLENCORE, LTD** | ) | |
| **f/k/a CLARENDON, LTD. AND** | ) | |
| **ST. CROIX ALUMINA, LLC** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

**TO:**  St. Croix Alumina, LLC
Prentice Corporation Systems, Inc.
Citibank Bldg., Ste. 208
St. Thomas, VI 00802

Within the time limited by law (see note below) you are hereby required to appear before this Court and answer to a complaint filed against you in this action and in case of your failure to appear or answer, judgment by default will be taken against you as demanded in the complaint for damages.

Witness my hand and the seal of this Court this 21st day of May, 2008

Venetia Velasquez
Clerk of the Court

By _____
Deputy Clerk

Thomas Alkon, P.C.
**Attorney for Plaintiff**
**Address:**    2115 Queen Street
Christiansted, St. Croix
U.S.V.I.  00820

**NOTE:** The defendant, if served personally, is required to file his answer of other defense with the Clerk of the Court, and to serve a copy thereof upon the plaintiff's attorney within twenty (20) days after service of this summons, excluding the date of the service. The defendant, if served by publication or by personal service outside of the jurisdiction, is required to file his answer or other defense with the Clerk of the Court, and to serve a copy thereof upon the attorney for the plaintiff within thirty (30) days after the completion of the period of publication or personal service outside of the jurisdiction.

# EXHIBIT 2

—————o—————

## RETURN OF SERVICE

      I hereby certify that I received this summons on _____day of _____, 2008, and that thereafter, on the _____day of _____, 2008 I did serve the same on the above-named defendant,_____
by showing h____this original and be then delivered to h_____ a copy of the complaint and of the summons which were forwarded to me attached thereto.


_____
Marshal


_____
Deputy

SUPERIOR COURT
THE VIRGIN ISLAND
ST. CROIX, V.I.

'08 MAY 20  P4 22

05/17/2008  11:23    340-776-0651              TRIDENT TRUST CO.                    PAGE  05

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| THEODORE SIMON | ) | CIVIL NO. 5.2 /2008 |
| Plaintiff | ) | |
| | ) | ACTION FOR DAMAGES |
| vs. | ) | JURY TRIAL DEMANDED |
| | ) | |
| LOCKHEED MARTIN CORPORATION, | ) | |
| Individually and as successor in interest to | ) | |
| MARTIN MARIETTA CORPORATION, | ) | |
| MARTIN MARIETTA ALUMINUM, INC & | ) | |
| MARTIN MARIETTA ALUMINUM | ) | |
| PROPERTIES, INC; MARTIN MARIETTA | ) | |
| CORPORATION, Individually and as successor | ) | |
| in interest to, MARTIN MARIETTA | ) | |
| ALUMINUM, INC. & MARTIN MARIETTA | ) | |
| ALUMINUM PROPERTIES, INC., | ) | |
| ALCOA, INC., GLENCORE, LTD, | ) | |
| f/k/a CLARENDON, LTD. AND | ) | |
| ST. CROIX ALUMINA, LLC | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## COMPLAINT

### JURISDICTIONAL ALLEGATIONS

1.    This Court has jurisdiction over the Action pursuant to Title 4 V.I.C. § 76.

2.    Plaintiff is a resident and citizen of St. Croix, U.S. Virgin Islands.

3.    Defendant **LOCKHEED MARTIN CORPORATION ("LOCKHEED"),**

individually and as successor in interest to, **MARTIN MARIETTA**

**CORPORATION, MARTIN MARIETTA ALUMINUM, INC. & MARTIN**

**MARIETTA ALUMINUM PROPERTIES, INC.** is a corporation incorporated

06/17/2008  11:23   340-776-0651          TRIDENT TRUST CO                    PAGE 06

Simon v. Martin Marietta Alumina Complaint

under the laws of Delaware and was doing business in the Virgin Islands at all times relevant to this action.

4.    Defendant **MARTIN MARIETTA CORPORATION,** individually and as successor in interest to **MARTIN MARIETTA ALUMINUM, INC. & MARTIN MARIETTA ALUMINUM PROPERTIES, INC.** is a corporations incorporated under the laws of North Carolina and was doing business in the Virgin Islands at all times relevant to this action.

5.    Defendant **MARTIN MARIETTA ALUMINUM, INC.** is a corporation incorporated under the laws of North Carolina and was doing business in the Virgin Islands at all times relevant to this action.

6.    Defendant **MARTIN MARIETTA ALUMINUM PROPERTIES, INC.** is a corporation incorporated under the laws of North Carolina and was doing business in the Virgin Islands at all times relevant to this action.

7.    Defendant **ALCOA, INC.** is a corporation organized under the laws of Pennsylvania and was doing business in the Virgin Islands at all times relevant to this action.

8.    Defendant **ST. CROIX ALUMINA, LLC** is a limited liability entity that was doing business in the Virgin Islands at all times relevant to this action.

9.    Defendant **GLENCORE, LTD, f/k/a CLARENDON, LTD.** is a foreign corporation with its principal business in Connecticut and was doing business in the Virgin Islands at all times relevant to this action.

Simon v. Martin Marietta Alumina,et al Complaint

## GENERAL ALLEGATIONS

1. Plaintiff at all relative times herein was employed at the alumina processing plant on St. Croix, U.S. Virgin Islands.  Specifically from 1967-2001.

2. During the periods of Plaintiff's employment at the alumina processing plant the said premises was owned *seriatim* by Martin Marietta Properties, Inc., Virgin Islands Alumina, Inc., and St. Croix Alumina, LLC.

3. During Plaintiff's employment at the said plant he was continuously exposed to bauxite dust containing silica, alumina dust, and asbestos dust and fibers.

4. Exposure to those toxic substances above listed in ¶3 have been proven to cause serious debilitating diseases such as pneumoconiosis, asbestosis, lung cancer and mesothelioma.

5. Plaintiff has developed  pneumoconiosis and as a matter of scientific probability and reasonable medical certainty has an increased risk of developing even more serious and/or fatal disease or illness as a proximate result of his exposure to the aforementioned silica and asbestos dust and fibers at the aforementioned alumina plant.

6. Defendants', at the relevant period of their respective ownership of the premises exercised control over the work site when Plaintiff was exposed to the aforementioned substances.  Each such Defendant supplied directly or indirectly

3

Simon v. Martin Marietta Alumina,et al Complaint

the bauxite containing silica , and/or asbestos containing products for the use of Plaintiff for their respective business purposes..

7.      All Defendants' in supplying the aforementioned silica, bauxite and asbestos containing products including the installing and removing of asbestos containing products failed to warn Plaintiff of the potential dangers of the use of these products and their propensity to cause injury.

9.      Plaintiff's exposures have been of sufficient intensity and duration as to cause the harm and damages to him as described herein, and Plaintiff's exposures to silica and asbestos containing  products has been cumulative and continuing, and the effects of such exposure are carried within Plaintiff to the present.

10      Plaintiff Worker has been exposed to substantial quantities of silica and asbestos containing products as a result of employment duties at various times with various employers at the alumina plant on St. Croix.  As part of said employment, Plaintiff Worker was required to work in close proximity to these substances which were utilized and supplied by Defendants at the alumina plant on St. Croix for extended periods of time.  The nature of the work also resulted in Plaintiff's inhalation of substantial quantities of asbestos dust, silica dust and alumina dust during the course of his employment.

11.     Defendants by their actions and failure to act as hereinafter alleged have directly and proximately caused, and are legally responsible and liable for the harm and damages sustained by Plaintiff.  The harm and damages sustained by Plaintiff

4

Simon v. Martin Marietta Alumina,et al Complaint

include, but are not limited to the development of diseases, illnesses and/or conditions, undergoing and continuing to undergo medical treatment, disability from their normal work, which disability will continue into the future, pain and suffering, past, present and future, a diminution in the quality and enjoyment of life, mental anguish, fear, severe emotional distress, all of which will continue into the future, and an enhanced risk of developing cancer and other diseases, illnesses and conditions, and direct and indirect expenses relating to the above, as well as loss of income, earning capacity and employability.

12.  Plaintiff expressly reserve any and all rights that he has to maintain actions for damages against the Defendants, or any one or more of them, at some future time as may be warranted should Plaintiff develop any other or additional diagnosable diseases, illnesses and/or conditions, or suffer any other or additional damages related to any other additional diagnosable diseases, illnesses and/or conditions which have not yet manifested themselves as a result of the Defendants' conduct as described herein.

## FIRST CAUSE OF ACTION FOR
## NEGLIGENCE, GROSS NEGLIGENCE, RECKLESSNESS
## AND INTENTIONALLY WRONGFUL ACTS

13.  Plaintiff realleges the allegations contained in paragraphs above.

14.  Defendants, by their actions and failure to act in causing Plaintiff to be exposed to silica and asbestos-containing products, are guilty of negligence, gross negligence,

5

Simon v. Martin Marietta Alumina, et al Complaint

recklessness and intentionally wrongful acts which have proximately caused

Plaintiff's injuries.

15.    Defendants' actions and failure to act, include, but are not limited to, the

following:

(a)    Failing to monitor the concentration of asbestos and silica in the air at the
alumina plant by machines, personnel, or any other method;

(b)    Failing to keep relevant records required by the applicable statutes and
regulations;

(c)    Failing to take appropriate safety precautions regarding asbestos and silica
exposure of Plaintiff Worker;

(d)    Failing to provide and require the wearing of protective clothing by
Plaintiff;

(e)    Failing to provide effective respirators and/or fresh air sources;

(f)    Failing to provide changing rooms for exposed workers;

(g)    Failing to post warning signs and to keep areas clear of non-involved
workers;

(h)    Failing to inform Plaintiff, whom they knew had no reason to realize it, of
the inherently dangerous nature of asbestos exposure and of silica
exposure and of the grave health risks associated with such exposure;

(i)    Failing to warn Plaintiff of the risks and hazards associated with working
in close proximity to silica and asbestos-containing products;

(j)    Failing to keep adequate medical records regarding exposed Plaintiff ;

(k)    Failing to arrange for appropriate medical examinations and the retention
of records relating thereto;

(l)    Failing to provide follow-up medical care for exposed Plaintiff;

(m)    Failing to place exposed asbestos and silica-containing products in

Simon v. Martin Marietta Alumina, et al Complaint

products safe for the uses for which they were supplied and/or failed to exercise

reasonable care to discover their dangerous condition or character, and to inform

those whom they expected to be exposed to them, specifically Plaintiff.

(20)   The foregoing actions of Defendants are a proximate cause of the injuries set forth

herein.

### THIRD CAUSE OF ACTION
### FOR STRICT LIABILITY

(21)   Plaintiff realleges the allegations contained in paragraphs above.

(22)   At all times relevant to this action, Defendants supplied to Plaintiff directly, and

through others, asbestos and silica containing products to be used for Defendants'

business purposes.

(23)   The unreasonably dangerous condition of these products is a proximate cause of

the physical harm and injuries to the Plaintiff.

(24)   As a result, Defendants are strictly liable for the physical harm caused to Plaintiff.

### FOURTH CAUSE OF ACTION
### FOR PUNITIVE DAMAGES

(25)   Plaintiff realleges the allegations contained in the paragraphs above.

(26)   The actions and failure to act of all Defendants in causing Plaintiff to be exposed

to asbestos and silica-containing products and to the toxic substances as detailed

herein constitute such intentional, extreme, outrageous, and unlawful conduct as

to warrant the imposition of punitive damages against them.

**WHEREFORE,** Plaintiff pray that this Honorable Court award Plaintiff compensatory

8

Simon v. Martin Marietta Alumina, et al Complaint

damages and punitive damages against Defendants, jointly and severally, in amounts that

are just and equitable as proven by the evidence; award Plaintiff his costs, including

reasonable attorneys' fees; and provide for such other and further relief in favor of

Plaintiff as the Court deems just and equitable.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES.**

Respectfully submitted,

DATED: 1·24·08

Thomas Alkon, Esq.
Counsel for Plaintiff
Law Offices of Thomas Alkon, P.C.
2115 Queen Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Phone: (340)773-3305
Fax: (340) 773-4491

9

# EXHIBIT 3

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge W. Royal Furgeson, Jr.
United States District Court
Western District of Texas

Judge Frank C. Damrell, Jr.
United States District Court
Eastern District of California

**DIRECT REPLY TO:**
Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone:  [202] 502-2800
Fax:           [202] 502-2888
http://www.jpml.uscourts.gov

January 9, 2009

TO INVOLVED COUNSEL

Re:  MDL No. 875 -- IN RE: Asbestos Products Liability Litigation (No. VI)

(See Attached CTO-318)

Dear Counsel:

Attached hereto is a copy of a conditional transfer order filed today by the Panel involving the above-captioned matter.  This matter is transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001).  Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached for your convenience.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action.  These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court.  Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE:  January 26, 2009**   (12 noon EST)
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel Rules before filing your Notice of Opposition.

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By _Teresa Bishop_

Teresa Bishop
Intake and Records Specialist

# EXHIBIT 3

Attachments

JPML Form 39

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**Jan 09, 2009**

FILED
CLERK'S OFFICE

### UNITED STATES JUDICIAL PANEL
### on
### MULTIDISTRICT LITIGATION

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875

(SEE ATTACHED SCHEDULE)

## CONDITIONAL TRANSFER ORDER (CTO-318)

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  *See* 771 F.Supp. 415 (J.P.M.L. 1991).  Since that time, 83,678 additional actions have been transferred to the Eastern District of Pennsylvania.  With the consent of that court, all such actions have been assigned to the Honorable Eduardo C. Robreno.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Robreno.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the consent of that court, assigned to the Honorable Eduardo C. Robreno.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania.  The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof.  If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                    MDL No. 875

### SCHEDULE CTO-318 – TAG-ALONG ACTIONS

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| **CALIFORNIA CENTRAL** | |
| CAC 2 08-7434 | Carol S. Dudash, et al. v. Alstom Power, Inc., et al. |
| CAC 2 08-7548 | John Lusk, et al. v. A.B. Boyd Co., et al. |
| | |
| **CALIFORNIA NORTHERN** | |
| CAN 3 08-3013 | Jeri Redman, et al. v. A.W. Chesterton Co., Inc., et al. |
| CAN 3 08-4380 | Elmoyne Holbrook, et al. v. General Electric Co., et al. |
| CAN 3 08-4381 | Theoni Salcedo, et al. v. Newport News Shipbuilding & Dry Dock Co., et al. |
| CAN 3 08-4400 | Clark Ogle, et al. v. General Electric Co., et al. |
| CAN 3 08-4401 | Albert Hutto, et al. v. General Electric Co., et al. |
| CAN 3 08-4415 | Larry Yabarra, et al. v. General Electric Co., et al. |
| CAN 3 08-4416 | John Koloen, et al. v. General Electric Co., et al. |
| CAN 3 08-4461 | Joseph Murray, et al. v. General Electric Co., et al. |
| CAN 3 08-4489 | Daniel Tarbell, Sr., et al. v. Kaiser Ventures, LLC, et al. |
| CAN 3 08-4490 | Thomas Huff, et al. v. Kaiser Ventures, LLC, et al. |
| CAN 3 08-4656 | Brenda Lunsford, et al. v. General Electric Co. |
| CAN 3 08-4926 | Cleo Ann Conner, et al. v. General Electric Co., et al. |
| CAN 3 08-5185 | Dennis Morillas, et al. v. General Electric Co. |
| CAN 3 08-5212 | Sheila Correia, et al. v. Newport News Shipbuilding & Dry Dock Co. |
| CAN 3 08-5260 | David Sanborn, et al. v. Asbestos Corp., Ltd., et al. |
| CAN 4 08-4925 | Patsy Rood, etc. v. General Electric Co., et al. |
| CAN 4 08-5015 | Dorothy Seltmann, et al. v. A.W. Chesterton Co., et al. |
| | |
| **CONNECTICUT** | |
| CT 3 07-1359 | Lionel J. Despres, et al. v. Ampco-Pittsburgh Corp., et al. |
| CT 3 07-1912 | Hope Olivar, etc. v. Buffalo Pumps, Inc., et al. |
| CT 3 08-116 | Dorothy DeMatties, etc. v. Acmat Corp., et al. |
| CT 3 08-707 | Richard Carroll, et al. v. Buffalo Pumps, Inc., et al. |
| CT 3 08-1479 | Robert I. Hayford, Jr., et al. v. Buffalo Pumps, Inc., et al. |

**MDL No. 875 - Schedule CTO-318 Tag-Along Actions (Continued)**

DELAWARE
| | | |
|---|---|---|
| DE 1 08-624 | Herbert Pease v. A.W. Chesterton Co., Inc., et al. |
| DE 1 08-912 | Jacqueline Snyder, etc. v. A.O. Smith Corp., et al. |

FLORIDA NORTHERN
| | |
|---|---|
| FLN 1 08-206 | John Delatte, et al. v. A.W. Chesterton Co., Inc., et al. |

ILLINOIS NORTHERN
| | |
|---|---|
| ILN 1 08-5754 | Marlene Woods, etc. v. CBS Corp., et al. |

ILLINOIS SOUTHERN
| | |
|---|---|
| ILS 3 08-755 | Arvid Johnson, et al. v. Foster Wheeler Energy Corp., et al. |

LOUISIANA EASTERN
| | |
|---|---|
| LAE 2 08-4203 | Walter McDonald, et al. v. Crowley Maritime Corp., et al. |
| LAE 2 08-4204 | Clarence Scott Wren, Sr. v. Cooper/T. Smith Stevedoring, Inc., et al. |

LOUISIANA WESTERN
| | |
|---|---|
| LAW 5 08-1341 | Joan Montalbano, et al. v. Crown Cork & Seal Co., Inc. |

MICHIGAN EASTERN
| | |
|---|---|
| MIE 2 91-72030 | Alfonso Estrada, et al. v. ACandS, Inc., et al. |
| MIE 2 91-72171 | Robert H. Middleton, et al. v. ACandS, Inc., et al. |
| MIE 2 08-14920 | Garry Turner v. Grand Trunk Western Railroad, Inc. |

MINNESOTA
| | |
|---|---|
| MN 0 08-1417 | Marvin Gurewitz, etc. v. American Standard, Inc., et al. |
| MN 0 08-6301 | Marvin Dunlap, et al. v. Soo Line Railroad Co. |

NORTH CAROLINA EASTERN
| | |
|---|---|
| NCE 2 08-31 | Jerome Bowen Blake v. Anchor Packing Co., et al. |
| NCE 4 08-118 | Harvey Worthington Turnage, Jr., et al. v. Anchor Packing Co., et al. |
| NCE 4 08-137 | Diane Schechter, etc. v. Anchor Packing Co., et al. |
| NCE 5 08-378 | Jessie Darquenne Ashley, etc. v. Anchor Packing Co., et al. |
| NCE 7 08-106 | George N. White, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCE 7 08-112 | Russell Jay Aderhold, et al. v. Aqua-Chem, Inc., et al. |
| NCE 7 08-138 | David W. Williams, et al. v. Aqua-Chem, Inc., et al. |
| NCE 7 08-150 | Norwood Shelton Wood, et al. v. Anchor Packing Co., et al. |

**MDL No. 875 - Schedule CTO-318 Tag-Along Actions (Continued)**

NORTH CAROLINA MIDDLE

| | | |
|---|---|---|
| NCM 1 | 08-697 | Donald Ray Clark v. Aqua-Chem, Inc., et al. |
| NCM 1 | 08-708 | Douglas I. Grandy, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 | 08-709 | Terry W. Wyrick, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 | 08-764 | Rosa Lee Manning, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 | 08-765 | Thomas C. Purdy, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 | 08-783 | Jimmie Lee Thompson, Sr. v. Aqua-Chem, Inc., et al. |
| NCM 1 | 08-784 | Cary Brown Murphy, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1 | 08-893 | Gary Wade Shue, etc. v. Aqua-Chem, Inc., et al. |

NORTH CAROLINA WESTERN

| | | |
|---|---|---|
| NCW 1 | 07-383 | Jackie C. Laney, et al. v. A.W. Chesterton Co., Inc., et al. |
| NCW 1 | 08-478 | William M. Hamrick, Sr., et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-479 | Murray D. Washam, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-480 | Bennie G. Pryor, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-481 | Brenda T. Fuller, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-486 | Dennis W. Richard, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-487 | Linda K. Burrell, etc. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-490 | Timothy B. Grass, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-491 | William C. Sturdivant, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-493 | Sueann B. Setzer, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-494 | Danny Ray Shepherd, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-498 | Larry R. Robinette, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-499 | Gary A. Cornelius, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-500 | James F. Barker, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-502 | Charles R. Bradshaw, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-503 | Ronald K. Bridges, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-504 | Joe Dean Byers v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-505 | Robin G. Caskey, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-506 | Tommy E. Cauthen, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-508 | Leon W. Crocker, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-509 | Jacob M. Dellinger, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-511 | Timothy S. Dellinger, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-512 | Eddie Ray Evans, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-513 | Tony V. Lineberger, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-514 | Coy B. Helms, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-517 | Randy G. Mahaffey, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-518 | Gary T. McGee, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-522 | James Boyce Mitchem v. Aqua-Chem, Inc., et al. |
| NCW 1 | 08-524 | Stanley B. Rucker, et al. v. Aqua-Chem, Inc., et al. |

**MDL No. 875 - Schedule CTO-318 Tag-Along Actions (Continued)**

| | | |
|---|---|---|
| NCW 1 08-525 | | Kenneth L. Rumfelt, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 08-527 | | Danny L. Setzer, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 08-528 | | Timothy A. Sheppard v. Aqua-Chem, Inc., et al. |
| NCW 1 08-529 | | Robert L. Witherspoon, et al. v. Aqua-Chem, Inc., et al. |

NEW HAMPSHIRE
NH  1  08-458          Judith L. Jackson, etc. v. Metropolitan Life Insurance Co., et al.

NEW JERSEY
NJ  2  08-5112         Francine Peluso v. Asbestos Corp., Ltd., et al.

NEW YORK EASTERN
NYE 1  08-3221         Edward Kelchner v. A.W. Chesterton Co., Inc., et al.
NYE 1  08-3436         Mozelle Justice, etc. v. A.W. Chesterton Co., Inc., et al.

NEW YORK SOUTHERN
NYS 1  08-10228        Michael Curry v. American Standard, Inc., et al.

OHIO NORTHERN
OHN 1  08-10006        Willard E. Bartel, et al. v. A-C Product Liability Trust, et al.
OHN 1  08-10007        Willard E. Bartel, et al. v. A-C Product Liability Trust, et al.

OKLAHOMA NORTHERN
OKN 4  08-590          Donnis Lawson, etc. v. Burlington Northern & Santa Fe Railway Co.

OREGON
OR  3  08-469          Vivian L. Dunn, etc. v. B&P Process Equipment & Systems, LLC, et al.

RHODE ISLAND
RI  1  05-252          Micheline Moore, etc. v. A.W. Chesterton Co., Inc., et al.
RI  1  05-253          Helen Docherty, etc. v. A.W. Chesteron Co., Inc., et al.
RI  1  08-472          Michael D. Beamis v. Buffalo Pumps, Inc.

SOUTH CAROLINA
SC  0  08-3356         James Monroe Scott, et al. v. Aqua-Chem, Inc., et al.
SC  0  08-3415         William T. Clinton, et al. v. Aqua-Chem, Inc., et al.
SC  0  08-3561         Robert S. Glenn, Jr., et al. v. Aqua-Chem, Inc., et al.

**MDL No. 875 - Schedule CTO-318 Tag-Along Actions (Continued)**

| | | | |
|---|---|---|---|
| SC | 0 | 08-3562 | Perry Littlejohn v. Aqua-Chem, Inc., et al. |
| SC | 0 | 08-3565 | James K. Lightsey, et al. v. Aqua-Chem, Inc., et al. |
| SC | 0 | 08-3566 | Tony D. Hamilton, et al. v. Aqua-Chem, Inc., et al. |
| SC | 0 | 08-3730 | Gardy F. Oliver, Jr., et al. v. Aqua-Chem, Inc., et al. |
| SC | 0 | 08-3738 | Donald W. Ligon, et al. v. Aqua-Chem, Inc., et al. |
| SC | 0 | 08-3739 | Ronald E. Parham, et al. v. Aqua-Chem, Inc., et al. |
| SC | 2 | 08-3759 | Madge L. Pittman, etc. v. Owens-Illinois, Inc., et al. |
| SC | 7 | 08-3736 | Boyd Holcomb, et al. v. Aqua-Chem, Inc., et al. |
| SC | 7 | 08-3741 | Michael E. Parker, et al. v. Aqua-Chem, Inc., et al. |
| SC | 7 | 08-4096 | Bill Bailey, etc. v. Aqua-Chem Inc., et al. |
| SC | 8 | 08-3357 | Odell C. Weaver, et al. v. Aqua-Chem, Inc., et al. |
| SC | 8 | 08-3362 | Teresa H. Dale, et al. v. Aqua-Chem, Inc., et al. |
| SC | 8 | 08-3416 | Selma F. Whitfield, et al. v. Aqua-Chem, Inc., et al. |
| SC | 8 | 08-3420 | Shirley C. Harden, et al. v. Aqua-Chem, Inc., et al. |
| SC | 8 | 08-3424 | James Kenneth Black, et al. v. Aqua-Chem, Inc., et al. |
| SC | 8 | 08-3446 | Charles D. Crisp, et al. v. Aqua-Chem, Inc., et al. |
| SC | 8 | 08-3448 | John Michael Ashley, et al. v. Aqua-Chem, Inc., et al. |
| SC | 8 | 08-3560 | Larry M. Parker, et al. v. Aqua-Chem, Inc., et al. |

**TENNESSEE EASTERN**

| | | | |
|---|---|---|---|
| TNE | 3 | 08-368 | Angie Smiddy, etc. v. Alcoa, Inc. |

**UTAH**

| | | | |
|---|---|---|---|
| UT | 2 | 08-630 | Ronnie Smith, et al. v. Ford Motor Co., et al. |

**VIRGINIA EASTERN**

| | | | |
|---|---|---|---|
| VAE | 2 | 08-9368 | Eugene L. Beckerle v. American Standard, Inc., et al. |
| VAE | 2 | 08-9369 | Jesus Marquez v. American Standard, Inc., et al. |
| VAE | 2 | 08-9370 | Orlando Sanchez v. American Standard, Inc., et al. |
| VAE | 2 | 08-9371 | Albert W. Anderson v. American Standard, Inc., et al. |
| VAE | 2 | 08-9372 | Hjalner E. Nygard v. American Standard, Inc., et al. |
| VAE | 2 | 08-9373 | Johnny A. O'Neal, Jr. v. American Standard, Inc., et al. |
| VAE | 2 | 08-9374 | Robert A. Smith v. American Standard, Inc., et al. |
| VAE | 2 | 08-9375 | Robert Lee Zamora v. American Standard, Inc., et al. |
| VAE | 2 | 08-9377 | Michael E. Sanders v. American Standard, Inc., et al. |
| VAE | 2 | 08-9430 | Dennis R. Callihan v. American Standard, Inc., et al. |
| VAE | 2 | 08-9431 | Walter V. Ward v. American Standard, Inc., et al. |
| VAE | 2 | 08-9432 | William H. Monroe, Jr., etc. (George H. Heckman, Jr.) v. American Standard, Inc., et al. |
| VAE | 2 | 08-9433 | Donald L. Hardsaw, Sr. v. American Standard, Inc., et al. |

**MDL No. 875 - Schedule CTO-318 Tag-Along Actions (Continued)**

| | | | |
|---|---|---|---|
| VAE | 2 | 08-9434 | Emmett Kirtley v. American Standard, Inc., et al. |
| VAE | 2 | 08-9435 | Pete A. Ortega v. American Standard, Inc., et al. |
| VAE | 2 | 08-9452 | Roger K. Bergholz v. American Standard, Inc., et al. |
| VAE | 2 | 08-9453 | Ronald M. Elde v. American Standard, Inc., et al. |
| VAE | 2 | 08-9454 | Arthur J. Demasi v. American Standard, Inc., et al. |
| VAE | 2 | 08-9455 | Raymond E. Ficklin v. American Standard, Inc., et al. |
| VAE | 2 | 08-9456 | Richard L. Adams v. American Standard, Inc., et al. |
| VAE | 2 | 08-9457 | Dennis Brown v. American Standard, Inc., et al. |
| VAE | 2 | 08-9458 | Donald F. Carroll, et al. v. The Budd Co., et al. |
| VAE | 2 | 08-9459 | Larry Dixon v. American Standard, Inc., et al. |
| VAE | 2 | 08-9460 | Francis G. Gross v. American Standard, Inc., et al. |
| VAE | 2 | 08-9461 | James H. Hasenfuss v. American Standard, Inc., et al. |
| VAE | 2 | 08-9462 | John R. Hastings, Sr. v. American Standard, Inc., et al. |
| VAE | 2 | 08-9463 | Alfred A. Haugen v. American Standard, Inc., et al. |
| VAE | 2 | 08-9464 | Francis J. Hedstrom v. American Standard, Inc., et al. |
| VAE | 2 | 08-9465 | Jay R. Hutton v. American Standard, Inc., et al. |
| VAE | 2 | 08-9466 | Edward L. Lee v. American Standard, Inc., et al. |
| VAE | 2 | 08-9467 | Jack H. Lester v. American Standard, Inc., et al. |
| VAE | 2 | 08-9468 | Raymond C. Martin v. American Standard, Inc., et al. |
| VAE | 2 | 08-9469 | Harold B. Martinson v. American Standard, Inc., et al. |
| VAE | 2 | 08-9470 | Thomas C. McDougall v. American Standard, Inc., et al. |
| VAE | 4 | 08-3247 | Robert Irving Armistead v. 3M Business Products Sales, Inc., et al. |

VIRGIN ISLANDS

| | | | |
|---|---|---|---|
| VI | 1 | 08-54 | Gabriel Alexander v. St. Croix Alumina, LLC, et al. |
| VI | 1 | 08-55 | Theodore Simon v. St. Croix Alumina, LLC, et al. |

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**                                     MDL No. 875

## INVOLVED COUNSEL LIST (CTO-318)

Francis P. Accardo
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

Joseph Blaise Adams
BASSI MARTINI EDLIN & BLUM
351 California Street
Suite 200
San Francisco, CA 94104

William R. Adams
DICKIE MCCAMEY & CHILCOTE
300 Delaware Avenue
Suite 1630
Wilmington, DE 19801

Stephen C. Aertker, Jr.
HUVAL VEAZEY FELDER
AERTKER & RENEGAR LLC
532 E. Boston Street
Covington, LA 70433

Andrew G. Ahern, III
JOSEPH W BENSON PA
1701 N. Market Street
P.O. Box 248
Wilmington, DE 19899

Jerald L. Album
REICH MEEKS & TREADWAY
Two Lakeway Center, Suite 1000
3850 N. Causeway Blvd.
Metairie, LA 70002

F. Saunders Aldridge, III
HUNTER MACLEAN EXLEY
& DUNN
P.O. Box 9848
Savannah, GA 31412

Kevin C. Alexandersen
GALLAGHER SHARP
1501 Euclid Avenue
Bulkley Building, Sixth Floor
Cleveland, OH 44115

Thomas Alkon
THOMAS ALKON PC
2115 Queen Street
St. Croix, VI 00820

Patrick D. Angel
BRAYTON PURCELL LLP
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, OR 97201

Peter G. Angelos
LAW OFFICES OF PETER G
ANGELOS PC
One Charles Center
100 North Charles Street, 22nd Floor
Baltimore, MD 21201

Cynthia W. Antonucci
HARRIS BEACH LLP
100 Wall Street
New York, NY 10005

Ronald Austin, Jr.
BROTHERS & THOMPSON PC
100 West Monroe Street
Suite 1700
Chicago, IL 60603

Joshua M. Auxier
HALLORAN & SAGE
315 Post Road, West
Westport, CT 06880-4739

Melissa R. Badgett
COOLEY MANION JONES
HAKE ET AL
201 Spear Street, Suite 1800
San Francisco, CA 94105

B. Ralph Bailey
LAW OFFICE OF B RALPH BAILEY
660 - 3 N. Beau Chene Drive
Mandeville, LA 70471

John T. Barrett
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA 02110

William D. Bayliss
WILLIAMS MULLEN
Two James Center
1021 East Cary Street
P.O. Box 1320
Richmond, VA 23218-1320

David F. Beach
DRATH CLIFFORD MURPHY
& HAGEN
1999 Harrison Street, Suite 700
Oakland, CA 94612-3517

Heidi A. Bean
FRIEDMAN GAYTHWAITE WOLF
& LEAVITT
Six City Center
P.O. Box 4726
Portland, ME 04112-4726

Phillip Matthew Bender
K&L GATES LLP
222 SW Columbia Street
Suite 1400
Portland, OR 97201-6632

**MDL No. 875 - Involved Counsel List (CTO-318) (Continued)**

Joshua H. Bennett
BENNETT & GUTHRIE PLLC
1560 Westbrook Plaza Drive
Winston-Salem, NC 27103

V. Brian Bevon
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

Scott R. Bickford
MARTZELL & BICKFORD
338 Lafayette Street
New Orleans, LA 70130

Bronson D. Bills
EISENBERG & GILCHRIST
215 South State Street
900 Parkside Tower
Salt Lake City, UT 84111

Edward Birnbaum
HERZFELD & RUBIN PC
40 Wall Street
New York, NY 10005

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Roy B. Blackwell
KAUFMAN & CANOLES PC
4801 Courthouse Street
Suite 300
P.O. Box 6000
Williamsburg, VA 23188-6000

Wilton Ellwood Bland III
MOULEDOUX BLAND LEGRAND
& BRACKETT
One Shell Square
701 Poydras Street
Suite 4250
New Orleans, LA 70139-4250

Sonja E. Blomquist
LOW BALL & LYNCH
505 Montgomery Street
Seventh Floor
San Francisco, CA 94111-2584

Amarah K. Bocchino
MORRIS NICHOLS ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

John A. Bolles
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

Robert E. Boone, III
BRYAN CAVE LLP
120 Broadway
Suite 300
Santa Monica, CA 90401-2386

Claude F. Bosworth
RIZZO MATTINGLY BOSWORTH
1620 S.W. Taylor Street
Suite 350
Portland, OR 97205

Timothy W. Bouch
LEATH BOUCH CRAWFORD
& VON KELLER
134 Meeting Street
P.O. Box 59
Charleston, SC 29402-0059

Alan Guy Brackett
MOULEDOUX BLAND LEGRAND
& BRACKETT
4250 One Shell Square
701 Poydras Street
New Orleans, LA 70139-4250

Paul A. Bradley
MARON MARVEL BRADLEY &
ANDERSON PA
1201 North Market Street, Suite 900
P.O. Box 288
Wilmington, DE 19801

Alan R. Brayton
BRAYTON PURCELL LLP
222 Rush Landing Road
Novato, CA 94948-6169

Edward J. Briscoe
FOWLER WHITE BURNETT PA
Espirito Santo Plaza
14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302

Edward Kenneth Brooks
PATTERSON DILTHEY LLP
4020 WestChase Boulevard
Suite 550
Raleigh, NC 27607

Kay M. Brown
DEHAY & ELLISTON
36 South Charles Street
Suite 1300
Baltimore, MD 21201

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

Robert A. Bunda
BUNDA STUTZ & DEWITT
3295 Levis Commons Blvd.
Perrysburg, OH 43551

Lisa N. Busch
WEITZ & LUXENBERG PC
180 Maiden Lane
New York, NY 10038

David L. Campbell
BOWMAN & BROOKE LLP
50 W. Big Beaver Road
Suite 600
Troy, MI 48084

Michael P. Cascino
CASCINO VAUGHAN LAW OFFICES
220 S. Ashland Avenue
Chicago, IL 60607-5308

## MDL No. 875 - Involved Counsel List (CTO-318) (Continued)

Daniel A. Casey
K&L GATES LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 200
Miami, FL 33131-2399

Adrienne Nicole Cash
GIBBS ARMSTRONG
BOROCHOFF MULLICAN & HART
601 S. Boulder
Suite 500
Tulsa, OK 74119

Traci Marie Castille
FRANKE & SALLOUM PLLC
2605 14th Street
P.O. Drawer 460
Gulfport, MS 39502

William Thomas Causby
NELSON MULLINS RILEY
& SCARBOROUGH LLP
1330 Lady Street
Keenan Bldg., 3rd Floor
P.O. Box 11070
Columbia, SC 29211-1070

Nairi Chakalian
HAIGHT BROWN & BONESTEEL
71 Stevenson Street
20th Floor
San Francisco, CA 94105-2981

Patricia W. Christensen
PARR BROWN GEE & LOVELESS
185 South State Street
13th Floor
P.O. Box 11019
Salt Lake City, UT 84147

Demetra A. Christos
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL 60610-4714

Brian Thomas Clark
KNOTT & GLAZIER
201 Spear Street
Suite 1520
San Francisco, CA 94105

Jeanine D. Clark
MARGOLIS EDELSTEIN
216 Haddon Avenue
Suite 200
Westmont, NJ 8108

Christopher J.M Collings
MORGAN LEWIS & BOCKIUS
200 S. Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339

Keith E. Coltrain
ELMORE & WALL PA
1001 Wade Avenue
Suite 423
P.O. Box 10937
Raleigh, NC 27605

William David Conner
HAYNSWORTH SINKLER BOYD
P.O. Box 2048
Greenville, SC 29602-2048

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Noriss Ennis Cosgrove
MCCARTER & ENGLISH LLP
Renaissance Centre
405 N. King Street
8th Floor
Wilmington, DE 19801

Thomas C. Crumplar
JACOBS & CRUMPLAR PA
2 East 7th Street
P.O. Box 1271
Wilmington, DE 19899

Anne Swoboda Cruz
TUCKER ELLIS & WEST LLP
515 South Flower Stree
42nd Floor
Los Angeles, CA 90071

James P. Cunningham
CARROLL BURDICK &
MCDONOUGH LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104

Gene M. Currier
LAW OFFICE OF GENE M CURRIER
P.O. Box 1030
Dearborn Heights, MI 48127-1030

Paul E. Darsow
ARTHUR CHAPMAN
KETTERING ET AL
81 South Ninth Street
Suite 500
Minneapolis, MN 55402-3214

Whitney Aaron Davis
CHARTER DAVIS LLP
1730 I Street
Suite 240
P.O. Box 15408
Sacramento, CA 95814

William Pearce Davis
BAKER RAVENEL & BENDER
P.O. Box 8057
Columbia, SC 29202

Jason H. Daywitt
RIZZO MATTINGLY BOSWORTH
411 S.W. Second Avenue
Suite 200
Portland, OR 97204

Anna M. DiLonardo
WEINER & LESNIAK LLP
888 Veterans Memorial Highway
Suite 540
Hauppauge, NY 11788

Moira Doherty
DONGWELL LAWRENCE FINNEY
707 Wilshire Boulevard
45th Floor
Los Angeles, CA 90017

David R. Donadio
BRAYTON PURCELL LLP
222 Rush Landing Road
Novato, CA 94948-6169

**MDL No. 875 - Involved Counsel List (CTO-318) (Continued)**

Michael W. Drumke
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606-6473

Richard G. Duplantier, Jr.
GALLOWAY JOHNSON
TOMPKINS BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA 70139-1200

Bernard M. Dusich
SIEBEN POLK LAW FIRM
1640 South Frontage Road
Suite 200
Hastings, MN 55033

Nicholas L. Evanchan, Jr.
EVANCHAN & PALMISANO
One GOGO Plaza
Suite 300
Akron, OH 44311

Ernest Faitos
SELMAN BREITMAN LLP
33 New Montgomery
Sixth Floor
San Francisco, CA 94105-4537

Mark J. Fellman
400 Robert Street North
Suite 1740
St. Paul, MN 55101-2031

Dennis C. Ferguson
WILLIAMS & HUNT
257 East 200 South
Suite 500
P.O. Box 45678
Salt Lake City, UT 84145-5678

John P. Fishwick, Jr.
LICHTENSTEIN FISHWICK
& JOHNSON PLC
Liberty Trust Building
101 South Jefferson Street
Suite 400
Roanoke, VA 24011

Thomas E. Fraysse
KNOX RICKSEN LLP
1300 Clay Street
Suite 650
Oakland, CA 94612-1427

Peter J. Frommer
HINSHAW & CULBERTSON LLP
1 East Broward Boulevard
Suite 1010
Fort Lauderdale, FL 33301

James D. Gandy, III
PIERCE HERNS SLOAN
& MCLEOD
P.O. Box 22437
Charleston, SC 29413

Christian H. Gannon
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
830 Third Avenue
Suite 400
New York, NY 10022

John A. Gardner, III
HEDRICK GARDNER KINCHELOE
& GAROFALO LLP
6000 Fairview Road
Suite 1000
P.O. Box 30397
Charlotte, NC 28230

Kenneth Joseph Gelpi, Jr.
MONTGOMERY BARNETT ET AL
1100 Poydras Street
Suite 3200
New Orleans, LA 70163-3200

Charles V. Giordano
HEBBLER & GIORDANO LLC
3636 S. I-10 Service Road West
Suite 300
Metairie, LA 70001

Richard S. Glasser
GLASSER & GLASSER PLC
Crown Center Building
580 East Main Street
Suite 600
Norfolk, VA 23510

Guy Patrick Glazier
KNOTT & GLAZIER
601 S. Figueroa Street
Suite 4200
Los Angeles, CA 90017

David Patterson Gloor
GLOOR LAW GROUP LLC
225 West Wacker Drive
Suite 1700
Chicago, IL 60606

Sarah Elizabeth Godfrey
KALBAUGH PFUND
& MESSERSMITH PC
901 Moorefield Park Drive
Suite 200
Richmond, VA 23236

Adam A. Grable
MENDES & MOUNT
445 South Figueroa Street
38th Floor
Los Angeles, CA 90071

Mark C. Greene
BANKER LOPEZ GASSLER
501 East Kennedy
Suite 1700
P.O. Box 1438
Tampa, FL 33601

Vincent L. Greene, IV
MOTLEY RICE LLC
321 South Main Street
Suite 200
Providence, RI 02903

Kevin A. Guerke
SEITZ VAN OGTROP & GREEN
222 Delaware Avenue
Suite 1500
P.O. Box 68
Wilmington, DE 19899

Carlos J.E. Guzman
PAUL & HANLEY LLP
1608 Fourth Street
Suite 300
Berkeley, CA 94710

## MDL No. 875 - Involved Counsel List (CTO-318) (Continued)

Stephen Porter Hall
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

E. Brooke Halleran
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

Dean A. Hanley
PAUL HANLEY & HARLEY
1608 Fourth Street
Suite 300
Berkeley, CA 94710

Scott Harford
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York, NY 10018

Anthony C. Hayes
NELSON MULLINS RILEY
& SCARBOROUGH LLP
P.O. Box 11070
Columbia, SC 29211-1070

Ronald L. Hellbusch
BAKER & HOSTETLER LLP
303 East 17th Avenue
Suite 1100
Denver, CO 80203

John A. Heller
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603

Derek M. Hodge
LAW OFFICES OF MACKAY
& HODGE LLC
P.O. Box 303678
19a-20 Kongens Gade
St. Thomas, VI 803

Edward R. Hugo
BRYDON HUGO & PARKER
135 Main Street
20th Floor
San Francisco, CA 94105

Jeremy D. Huie
BASSI MARTINI EDLIN & BLUM
351 California Street
Suite 200
San Francisco, CA 94104

Timothy P. Hurley
MAGINNIS & HURLEY
Canal Place One
365 Canal Street
Suite 2750
New Orleans, LA 70130

Anthony J. Iaconis
DISERIO MARTIN O'CONNOR
& CASTIGLIONI LLP
One Atlantic Street
Suite 500
Stamford, CT 06901

Gabriel A. Jackson
JACKSON & WALLACE LLP
55 Francisco Street
6th Floor
San Francisco, CA 94133

H. Scott Jacobson, Jr.
STRONG & HANNI
3 Triad Center
Suite 500
Salt Lake City, UT 84180

David Aaron Jagolinzer
FERRARO LAW FIRM
4000 Ponce De Leon Blvd.
Suite 700
Miami, FL 33146

Kevin D. Jamison
POND NORTH LLP
350 South Grand Avenue
Suite 2850
Los Angeles, CA 90071

Danielle T. Jenkins
MORRISON MAHONEY LLP
10 Weybosset Street
Suite 900
Providence, RI 02903-7141

Derek Spencer Johnson
SEDGWICK DETERT MORAN
& ARNOLD LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105

J. Michael Johnson
RAWLE & HENDERSON LLP
300 Delaware Avenue
Suite 1015
Wilmington, DE 19801

Paul R. Johnson
FILICE BROWN EASSA & MCLEOD
1999 Harrison Street, 18th Floor
Oakland, CA 94612

Zandra Lynn Johnson
SMITH MOORE LEATHERWOOD
P.O. Box 87
Greenville, SC 29602

A. Timothy Jones
HAWKINS & PARNELL LLP
4000 One Peachtree Center
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Matthew Allen Kaplan
PEPPER HAMILTON LLP
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street
Third Floor
Oakland, CA 94607

## MDL No. 875 - Involved Counsel List (CTO-318) (Continued)

Christopher J. Keale
SEDGWICK DETERT MORAN &
ARNOLD LLP
Three Gateway Center
100 Mulberry Street - 12th Floor
Newark, NJ 07102

Daniel J. Kelly
HAIGHT BROWN
& BONESTEEL
71 Stevenson Street
20th Floor
San Francisco, CA 94105-2981

Brian P. Kenney
EARLY LUDWICK
& SWEENEY LLC
265 Church Street, 11th Floor
P.O. Box 1866
New Haven, CT 06508-1866

Bo Kim
PERKINS COIE LLP
South Tower
1620 26th Street
6th Floor, South Tower
Santa Monica, CA 90404-4013

Donald R. Kinsley
MARKS O'NEILL O'BRIEN
& COURTNEY PC
913 North Market Street
Suite 800
Wilmington, DE 19801

Susan B. Kohn
SIMON PERAGINE SMITH
& REDFEARN LLP
Energy Centre, Suite 3000
1100 Poydras Street
New Orleans, LA 70163-3000

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

Donald A. Krispin
JAQUES ADMIRALTY LAW FIRM
1370 Penobscot Building
645 Griswold St.
Detroit, MI 48226-4192

Kenneth K. Kyre, Jr.
PINTO COATES KYRE
& BROWN PLLC
P.O. Box 4848
Greensboro, NC 27404-4848

Kathleen M. LaBarge
BICE COLE LAW FIRM
999 Ponce de Leon Boulevard
Suite 710
Coral Gables, FL 33134

Dan E. LaBelle
HALLORAN & SAGE
315 Post Road, West
Westport, CT 06880

Adam James Lagocki
HEYL ROYSTER VOELKER
& ALLEN
124 S.W. Adams Street
Suite 600
Peoria, IL 61602

Carter T. Lambeth
JOHNSON & LAMBETH
232 Princess Street
P.O. Box 660
Wilmington, NC 28402

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Peter B. Langbord
FOLEY & MANSFIELD PLLP
150 South Los Robles Avenue
Suite 400
Pasedena, CA 91101

Richard M. Lauth
EVERT & WEATHERSBY
3405 Peidmont Road, N.E.
Suite 225
Atlanta, GA 30305-1764

H. Seward Lawlor
GLASSER & GLASSER PLC
580 East Main Street
600 Crown Center
Norfolk, VA 23510

Teresa Fizardi Lazzaroni
HAWKINS & PARNELL LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243

Gary Allen Lee
LEE FUTRELL & PERLES
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120

Lawrence Gable Lee
LYNCH DASKAL EMERY
264 West 40th Street
New York, NY 10018

Richard Eric Leff
MCGIVNEY & KLUGER PC
80 Broad Street
23rd Floor
New York, NY 10004

Robert Stuart Ludlum
PIERCE DAVIS &
PERRITANO LLP
10 Winthrop Square
Boston, MA 02110

Christopher J. Lynch
HALLORAN & SAGE
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Lillian C. Ma
TUCKER ELLIS & WEST
135 Main Street
Suite 700
San Francisco, CA 94105

Genevieve MacSteel
MCGUIREWOODS LLP
1345 Avenue of the Americas
7th Floor
New York, NY 10105

**MDL No. 875 - Involved Counsel List (CTO-318) (Continued)**

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
& MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

Megan Trocki Mantzavinos
MARKS O'NEILL O'BRIEN
& COURTNEY PC
913 North Market Street
Suite 800
Wilmington, DE 19801

Jeffrey S. Marlin
MARKS O'NEILL O'BRIEN
& COURTNEY PC
913 North Market Street
Suite 800
Wilmington, DE 19801

Christopher J. Martinez
SNELL & WILMER LLP
15 West South Temple
Suite 1200
Beneficial Tower
Salt Lake City, UT 84101

Timothy Kent Masterson
SPENCE RICKE SWEENEY
& GERNES
Degree of Honor Building, Suite 600
325 Cedar Street
St. Paul, MN 55101

Donna L. Maul
BRYDON HUGO & PARKER
135 Main Street
20th Floor
San Francisco, CA 94105

Barbara L. Maw
WRONA LAW OFFICES
1745 Sidewinder Drive
Park City, UT 84060

Moffatt Grier McDonald
HAYNSWORTH SINKLER BOYD
P.O. Box 2048
Greenville, SC 29602

S. David McNeill
S. DAVID MCNEILL ASSOC.
185 Oakland Avenue
Suite 260
Birmingham, MI 48009

Ryan J. McQueeney
SANCHEZ DANIELS & HOFFMAN
333 West Wacker Drive
Suite 500
Chicago, IL 60606

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Anissa M. Mediger
MURNANE BRANDT
30 East Seventh Street
Suite 3200
St. Paul, MN 55101-4919

Gustavo Javier Membiela
HUNTON & WILLIAMS LLP
Mellon Financial Center
1111 Brickell Avenue
Suite 2500
Miami, FL 33131-3136

Robert O. Meriwether
NELSON MULLINS RILEY
& SCARBOROUGH LLP
P.O. Box 11070
Columbia, SC 29211-0013

Gregory David Meronek
CARROLL BURDICK
& MCDONOUGH LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104

Henry Adam Meyer, III
MEYER CAVE PLLC
116 East Sheridan
Suite 207
Oklahoma City, OK 73104

Bryna Rosen Misiura
GOVERNO LAW FIRM LLC
260 Franklin Street
15th Floor
Boston, MA 02110

Willard J. Moody, Jr.
MOODY STROPLE
KLOEPPEL ET AL
500 Crawford Street
Commerce Bank Bldg., Suite 300
P.O. Box 1138
Portsmouth, VA 23705

Lacey M. Moore
NEXSEN PRUET LLC
201 South Tryon Street
Suite 1200
Charlotte, NC 28202

D. Matthew Moscon
STOEL RIVES LLP
201 South Main Street
Suite 1100
Salt Lake City, UT 84111-4904

Monica L. Mroz
LICHTENSTEIN FISHWICK
& JOHNSON PLC
101 South Jefferson Street
Suite 400
P.O. Box 601
Roanoke, VA 24004-0601

Erik David Nadolink
LECLAIR RYAN PC
707 East Main Street
11th Floor
Richmond, VA 23219

## MDL No. 875 - Involved Counsel List (CTO-318) (Continued)

Heather H. Neubauer
FOLEY & MANSFIELD PLLP
250 Marquette Avenue
Suite 1200
Minneapolis, MN 55401

Brenna Kathleen Newman
TROUTMAN SANDERS LLP
PO Box 1122
Richmond, VA 23218-1122

John K. Nieset
CHRISTOVICH & KEARNEY LLP
601 Poydras Street
Suite 2300
New Orleans, LA 70130-6078

R. Stokes Nolte
NOLTE & ASSOCIATES
1010 North Bancroft Parkway
Suite 21
Wilmington, DE 19805

Carolyn F. O'Connor
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
33 Washington Street
Newark, NJ 07102

Robert L. O'Donnell
VANDEVENTER BLACK LLP
500 World Trade Ctr
101 W. Main Street
Norfolk, VA 23510

Daniel Dennis O'Shea
JACKSON & WALLACE LLP
55 Francisco Street
6th Floor
San Francisco, CA 94133

John S. Odom, Jr.
JOHN ODOM ET AL
P.O. Drawer 1320
Shreveport, LA 71164-1320

James R. Oswald
ADLER POLLOCK & SHEEHAN
One Citizens Plaza
8th Foor
Providence, RI 02903-1345

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

E. Spencer Parris
MARTIN & JONES
410 Glenwood Avenue
Suite 200
Raleigh, NC 27603

Lisa M. Pascarella
PEHLIVANIAN & BRAATEN
2430 Route 34
P.O. Box 648
Manasquan, NJ 08736

John P. Patterson
TUCKER ELLIS & WEST
1150 Huntington Bldg.
925 Euclid Avenue
Cleveland, OH 44115

Bernard C. Pattie
LAW OFFICE OF BERNARD
PATTIE PC
1244 Queen Cross Street
Suite 5
St. Croix, VI 00820

Arvin J. Pearlman
PEARLMAN & PIANIN
24725 W. Twelve Mile Road
Suite 220
Southfield, MI 48034

Timothy Peck
SMITH MOORE LEATHERWOOD
300 N. Greene Street
Suite 1400
Greensboro, NC 27401

Patricia Cowen Penton
LEE FUTRELL & PERLES LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120

Lance Perez
MAIMONE & ASSOCIATES
170 Old Country Road
Suite 502
Mineola, NY 11501

Carl E. Pierce, II
PIERCE HERNS SLOAN
 & MCLEOD
P.O. Box 22437
Charleston, SC 29413

George S. Pitcher
WILLIAMS KASTNER
888 Southwest Fifth Avenue
Suite 600
Portland, OR 97204-2025

Christopher M. Placitella
COHEN PLACITELLA & ROTH
127 Maple Avenue
Red Bank, NJ 07701

Albert H. Poole
HUFF POOLE & MAHONEY PC
Huff, Poole & Mahoney Building
Suite 100
4705 Columbus Street
Virginia Beach, VA 23462

Andrew I. Port
EMARD DANOFF PORT
TAMULSKI & PAETZOLD
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Armand J. Della Porta, Jr.
MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN
1220 N. Market Street
Suite 500
P.O. Box 8888
Wilmington, DE 19899

Glen R. Powell
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
20th Floor
San Francisco, CA 94111

## MDL No. 875 - Involved Counsel List (CTO-318) (Continued)

Somers S. Price, Jr.
POTTER ANDERSON & CORROON
1313 N. Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951

Kenneth B. Prindle
PRINDLE DECKER & AMARO
369 Pine Street
Suite 800
San Francisco, CA 94104

Lawrence G. Pugh, III
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

Steven J. Pugh
RICHARSON PLOWDEN
& ROBINSON PA
1900 Barnwell Street
P.O. Drawer 7788
Columbia, SC 29202

Trung VI Quang
MCKENNA LONG & ALDRIDGE
101 California Street
41st. Floor
San Francisco, CA 94111

Richard T. Radcliffe, Jr.
DEHAY & ELLISTON LLP
36 S Charles St.
13th Floor
Baltimore, MD 21201

H. Philip Radecker, Jr.
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

G. Russell Ragland
LEVY PHILLIPS & KONIGSBERG
800 Third Ave
13th Floor
New York, NY 10022

Sara G. Rajan
STARK REGAN
1111 W. Long Lake Road
Suite 202
Troy, MI 48098-6310

Kevin A. Rames
LAW OFFICE OF KEVIN A RAMES
2111 Company Street
Suite 3
St. Croix, VI 00820

C. Scott Reese
COOCH & TAYLOR
P.O. Box 1680
Wilmington, DE 19899

Giovanni Regina
WATERS MCPHERSON MCNEILL
300 Lighting Way
7th Floor
Secaucus, NJ 07096

Robert Seth Reich
REICH ALBUM & PLUNKETT
Two Lakeway Center
3850 N. Causeway Blvd.
Suite 1000
Metairie, LA 70002

Donald E. Reid
MORRIS NICHOLS ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Joseph A. Rhodes, Jr.
OGLETREE DEAKINS NASH
SMOAK & STEWART PC
P.O. Box 2757
Greenville, SC 29602

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Shawn Michael Ridley
HOWARD ROME MARTIN
& RIDLEY LLP
1775 Woodside Road
#200
Redwood City, CA 94061-3436

Jennifer A. Riester
WESTON HURD
1900 Tower At Erieview
1301 East Ninth Street
Cleveland, OH 44114-1862

Wayne A. Ritchie, II
RITCHIE DILLARD & DAVIES
P.O. Box 1126
Knoxville, TN 37901-1126

Antonio J. Rodriguez
FOWLER RODRIGUEZ
400 Poyodras Street
30th Floor
New Orleans, LA 70130

Robert M. Rolfe
HUNTON & WILLIAMS LLP
Riverfront Plaza
951 East Byrd Street
Richmond, VA 23219

Maria Sylvia Rosenfeld
CHARTER DAVIS LLP
1730 I Street
Suite 240
Sacramento, CA 95814

Kimberly J. Ruppel
DICKINSON WRIGHT PLLC
38525 Woodward Ave
Suite 2000
Bloomfield Hills, MI 48304-2970

Richard L. Saville, Jr.
SAVILLE EVOLA & FLINT
322 East Broadway
Alton, IL 62002

Richard D. Schuster
VORYS SATER SEYMOUR
& PEASE LLP
2100 One Cleveland Center
1375 E. Ninth Street
Cleveland, OH 44114

## MDL No. 875 - Involved Counsel List (CTO-318) (Continued)

Carl R. Schwertz
DUANE HAUCK & GNAPP
10 East Franklin Street
Richmond, VA 23219-2106

Rebecca C. Sechrist
BUNDA STUTZ & DEWITT
One Seagate
Suite 650
Toledo, OH 43604

Charles T. Sheldon
SEDGWICK DETERT MORAN
& ARNOLD LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105

Carolin K. Shining
PAUL & HANLEY LLP
1608 Fourth Street
Suite 300
Berkeley, CA 94710

Aaron H. Simon
SIMON & SHINGLER LLP
3220 Lone Tree Way
Suite 100
Antioch, CA 94509

Jan E. Simonsen
CARR MALONEY PC
1615 L St Nw
5th Floor
Washington, DC 20036

James Walker Smith
SMITH ABBOTT LLP
48 Wall Street
11th Floor
New York, NY 10005

Lawrence S. Smith
RANSMEIER & SPELLMAN
P.O. Box 600
Concord, NH 03302-0600

M. Stephen Smith, III
RUMBERGER KIRK
& CALDWELL
Brickell Bayview Centre
80 S.W. 8th Street, Suite 3000
Miami, FL 33130-3047

Mark J. Spansel
ADAMS & REESE LLP
One Shell Square, Suite 4500
701 Poydras Street
New Orleans, LA 70139

Josette Ferrazz Spivak
HOLLSTEIN KEATING
CATTELL ET AL
1201 Orange Street
Suite 730
Wilmington, DE 19801

William E. Spivey
KAUFMAN & CANOLES
150 W. Main Street
P.O. Box 3037
Norfolk, VA 23510

Charles Monroe Sprinkle, III
HAYNSWORTH SINKLER BOYD
P.O. Box 2048
Greenville, SC 29602-2048

Geoffrey Lane Squitiero
MAHER & MURTHA
528 Clinton Avenue
P.O. Box 901
Bridgeport, CT 06601

D. David Steele
YARON & ASSOCIATES
601 California Street
21st Floor
San Francisco, CA 94108

William Robert Stewart, III
REGER RIZZO & DARNALL LLP
1001 Jefferson Plaza
Suite 202
Wilmington, DE 19801

A. Wendel Stout, III
DEUTSCH KERRIGAN & STILES
755 Magazine Street
New Orleans, LA 70130-3672

James W. Stuart
OGNE ALBERTS & STUART PC
1869 E. Maple Road
Suite 100
Troy, MI 48083

Robert J. Sweeney
EARLY LUDWICK & SWEENEY
One Century Tower
265 Church Street, 11th Floor
P.O. Box 1866
New Haven, CT 06508-1866

Michael A. Tanenbaum
SEDGWICK DETERT MORAN
& ARNOLD LLP
Three Gateway Center
12th Floor
Newark, NJ 07102

Jennifer M. Techman
EVERT WEATHERSBY & HOUFF
3405 Piedmont Road, NE
Suite 200
Atlanta, GA 30305

Mark S. Thomas
WILLIAMS MULLEN
3200 Beechleaf Court
Suite 500
Raleigh, NC 27619

Jeffrey M. Thomen
MCCARTER & ENGLISH LLP
185 Asylum Street
City Place I
Hartford, CT 06103-3495

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Jefferson R. Tillery
JONES WALKER
Place St. Charles
5th Floor
201 St. Charles Avenue
New Orleans, LA 70170

Brent Manning Timberlake
TROUTMAN SANDERS
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122

## MDL No. 875 - Involved Counsel List (CTO-318) (Continued)

Tracy E. Tomlin
NELSON MULLINS RILEY
& SCARBOROUGH LLP
100 North Tryon Street
42nd Floor
Charlotte, NC 28202-4007

Hugh J. Turner, Jr.
AKERMAN SENTERFITT
350 East Las Olas Blvd.
Suite 1600
Fort Lauderdale, FL 33301-0006

Anthony Nolan Upshaw
ADORNO & YOSS LLP
2525 Ponce de Leon Blvd.
Suite 400
Miami, FL 33134

Beth E. Valocchi
SWARTZ & CAMPBELL
300 Delaware Avenue
Suite 1130
Wilmington, DE 19801

Gerard E. Voyer
TAYLOR & WALKER PC
1300 First Virginia Tower
555 Main Street
P.O. Box 3490
Norfolk, VA 23514-3490

Gregory H. Wagoner
ANSPACH MEEKS ELLENBERGER
300 Madison Avenue
Suite 1600
Toledo, OH 43604-2633

Mark Hedderman Wall
ELMORE & WALL
P.O. Box 1200
Charleston, SC 29402

Mona Lisa Wallace
WALLACE & GRAHAM PA
525 North Main Street
Salisbury, NC 28144

Michael Waller
K&L GATES LLP
One Newark Center
10th Floor
Newark, NJ 07102-5285

Henry N. Ware, Jr.
SPOTTS FAIN PC
411 E Franklin Street
P.O. Box 1555
Richmond, VA 23218-1555

Kirk G. Warner
SMITH ANDERSON BLOUNT
DORSETT ET AL
P.O. Box 2611
2500 Wachovia Capitol Center
Raleigh, NC 27602-2611

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS
KRUTZ & TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Charles Jeffers Wattas
SMITH SHEW SCRIVNER
CORBIN & WATTS
1001 N.W. 63rd Street
Suite 101
Oklahoma City, OK 73116

Paul A. Weykamp
LAW OFFICES OF PAUL A
WEYKAMP
16 Stenersen Lane
Suite 2
Hunt Valley, MD 21030

Beranton James Whisenant, Jr.
FOLEY & MANSFIELD PLLP
4770 Biscayne Boulevard
Suite 1000
Miami, FL 33137

James C. White
MOORE & VAN ALLEN
P.O. Box 13706
Research Triangle Pa, NC 27709

Joshua David White
YARON & ASSOCIATES
601 California Street
21st Floor
San Francisco, CA 94108-2281

Richard J. Whittemore
BULLIVANT HOUSER BAILEY
888 SW Fifth Avenue
300 Pioneer Tower
Portland, OR 97204-2089

Robert E. Williams, IV
SULZER & WILLIAMS LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433

Stephen B. Williamson
MCGUIREWOODS LLP
100 North Tryon Street
Suite 2900
Charlotte, NC 28202

John T. Winemiller
MERCHANT & GOULD PC
110 McGhee Tyson Boulevard
Suite 203
Knoxville, TN 37701

Mark A. Wisniewski
KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK
One Woodward Avenue
Suite 2400
Detroit, MI 48226

Joyce J. Wood
WILCOX & SAVAGE PC
1800 Bank of America Center
Norfolk, VA 23510

George D. Yaron
YARON & ASSOCIATES
601 California Street
21st Floor
San Francisco, CA 94108

Laura P. Yee
KNOTT & GLAZIER
201 Spear Street
Suite 1520
San Francisco, CA 94105

**MDL No. 875 - Involved Counsel List (CTO-318) (Continued)**

Matthew Jason Zamaloff
CETRULO & CAPONE
Two Seaport Lane
10th Floor
Boston, MA 02210

I. Timothy Zarsadias
DEAN & GIBSON LLP
Cameron Brown Building
Suite 900
301 South McDowell Street
Charlotte, NC 28204-2686

**RULE 5.2:**   **SERVICE OF PAPERS FILED**

(a)   All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation.  Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure.  The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each.  If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address.  The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading.  The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service.  After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings.  In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)   The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion.  The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)   Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation.  Only one attorney shall be designated for each party.  Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address.  Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)   In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel.  After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)   If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel.  Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

RULE 7.4:     CONDITIONAL TRANSFER ORDERS FOR "TAG-ALONG ACTIONS"

(a)    Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)    Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)    Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)    Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)    Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)    Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:     MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)    Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)    Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)    Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)    A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)    Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

# EXHIBIT 4

## THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

CHARLES E. HAMRICK and
WANDA HAMRICK, his wife,

     Plaintiffs

     vs.

A & I COMPANY
c/o Stephen P. Goodwin, Esquire
GOODWIN & GOODWIN
P.O. Box 2107
Charleston, WV  25328-2107

A.W. CHESTERTON COMPANY
225 Fallon Road
Stoneham, MA  02180

ALLISON TRANSMISSION DIVISION OF GENERAL MOTORS
4700 West 10th Street
Indianapolis, IN  46222

BEECH AIRCRAFT COMPANY
c/o Wayne W. Wallace
9709 E. Central Avenue
Wichita, KS  67206

BOEING NORTH AMERICAN, INC.
c/o Corporation Service Company
1600 Laidley Tower
Charleston, WV  25301

BURNS INTERNATIONAL SERVICES CORPORATION,
f/k/a Borg-Warner Corporation
200 S. Michigan Avenue
Chicago, IL  60604

Civil Action No. 05-C-54

Kaufman

JURY TRIAL DEMANDED



1

**EXHIBIT 4**

COLUMBIA PAINT CORP.
d/b/a COLUMBIA PAINT TOWN
641 Jackson Avenue
Huntington, WV 25704
**Agent:** Richard A. Flowers
P.O. Box 2888
641 Jackson Avenue
Huntington, WV 25728

COOPER INDUSTRIES, INC., in its own right and as successor to Crouse-Hinds Co. and the
Cooper Bessemer Corp, and as successor-in-interest to McGraw-Edison Co., Wagner Electric
Corp., Studebaker Worthington, Inc., Edison International Inc., Tung Sol Electric, Inc. and as
successor-in-interest to Joy Manufacturing Company, a/k/a/ Joy Technologies, Inc., and others
c/o C.T. Corporation System
Oliver Building, Mellon Square
Pittsburgh, PA 15222

CURTISS-WRIGHT CORPORATION
c/o Corporation Trust Company
820 Bear Tavern Road
Trenton, NJ 08628

DANA CORPORATION, in its own right and as
successor to Smith & Kanzler, Victor
Manufacturing & Gasket Co.
4500 Dorr Street
Toledo, OH 43615

E.I. DU PONT DE NEMOURS & COMPANY
Rm. 8042 Dupont Bldg.
1007 Market Street
Wilmington, Delaware 19898

FAMOUS FURNACE & SUPPLY CO.
a/k/a Famous Supply Company of Wheeling
2300 Market Street
Wheeling, WV 26003

FLOWSERVE US, INC.,
f/k/a FLOWSERVE FSD CORPORATION, f/k/a/ Durametallic Corp.
c/o C.T. Corporation System
P.O. Box 951
Charleston, WV 25323

FOSTER WHEELER, L.L.C.,
survivor to a merger with Foster Wheeler Corporation,
f/k/a Foster Wheeler Corporation
100 American Road
Morris Plains, NJ  07950

GARLOCK SEALING TECHNOLOGIES LLC,
f/k/a Garlock, Inc.
1666 Division Street
Palmyra, NY  14522

GENERAL ELECTRIC COMPANY
3135 Easton Turnpike
Fairfield, CT  06431

GENERAL MOTORS CORPORATION
c/o CT Corporation System
P.O. Box 951
Charleston, WV  25323

GOODRICH CORPORATION,
f/k/a BFGoodrich Company,
and as successor-in-interest to Goodrich-Gulf Chemical, Inc.
Theodore E. Laszlo, Jr., Esquire
Senior Litigation Counsel
4020 Kinross Lakes Parkway
Richfield, OH  44286-9368

THE GOODYEAR TIRE & RUBBER COMPANY
Serve:  James Boyazis
1144 E. Market Street
Arkon, OH  44316

HONEYWELL INTERNATIONAL, INC.,
f/k/a AlliedSignal, Inc.,
in its own right and as successor-in-interest to
Allied Corporation, and as successor-in-interest
to Allied Chemical, and as successor-in-interest to Bendix
c/o C.T. Corporation
707 Virginia Street, E.
Charleston, WV  25301

INGERSOLL-RAND COMPANY
c/o C.T. Corporation System
1300 E. 9th Street, Ste 1010
Cleveland, OH  44114-1503

LEARJET, INC.
c/o The Corporation Company, Inc.
515 South Kansas Avenue
Topeka, KS 66603

LOCKHEED MARTIN CORPORATION,
f/k/a Martin Marietta Corporation
6801 Rockledge Drive
Bethesda, Maryland 20817

McDONNELL DOUGLAS CORPORATION
c/o CSC-Lawyers Incorporating Service Company
222 East Dunklin Street
Jefferson City, MO 65101

METROPOLITAN LIFE INSURANCE COMPANY
a/k/a METROPOLITAN INSURANCE COMPANY
One Madison Avenue
New York, New York 10010-3690

NORTHROP GRUMMAN CORPORATION
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

OWENS-ILLINOIS, INC.
One SeaGate
Toledo, OH 43666

PNEUMO ABEX CORPORATION,
Successor-in-interest to ABEX CORPORATION,
Friction Products Division
c/o The United States Corporation Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808-1645

PRATT & WHITNEY
400 Main Street
East Hartford, CT 06108

ROLLS-ROYCE CORPORATION
c/o Corporation Service Company
11 S. 12th Street
P.O. Box 1463
Richmond, VA 23218

4

UNIROYAL, INC., also known as
UNIROYAL GOODRICH TIRE COMPANY
c/o Uniroyal Holding Corp.
70 Great Hill Road
Naugatuck, CT  06770

VIACOM INC., successor by merger to CBS Corp.,
f/k/a Westinghouse Electric Corp.
Six Gateway Center
Pittsburgh, PA  15222

VIMASCO CORPORATION
Republic Way
Nitro, WV  25143
Serve:  William A. Pugh, Jr.
P.O. Box 516
Nitro, WV  25143-0516

       Defendants.

## C O M P L A I N T

1.

      Plaintiffs, Charles E. Hamrick and Wanda Hamrick, his wife, reside in Webster Springs, West Virginia. Charles E. Hamrick's social security number is 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. Charles E. Hamrick's date of birth is December 9, 1931. For many years, Charles E. Hamrick was exposed to asbestos from defendants' products and activities. Charles E. Hamrick was diagnosed with the lung injury, Asbestosis and Mesothelioma.

2.

      (a)    The defendant, A & I COMPANY, is a corporation incorporated under the laws of the State of West Virginia, with its principal place of business located in the State of West Virginia.

      (b)    The defendant, A.W. CHESTERTON COMPANY, is a corporation incorporated under the laws of the State of Massachusetts, with its principal place of business located in the State of Massachusetts.

      (c)    The defendant, ALLISON TRANSMISSION DIVISION OF GENERAL MOTORS, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Indiana.

      (d)    The defendant, BEECH AIRCRAFT COMPANY, is a corporation incorporated under the laws of the State of Kansas, with its principal place of business located in the State of Kansas.

      (e)    The defendant, BOEING NORTH AMERICAN, INC., is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Washington.

(f)     The defendant, BURNS INTERNATIONAL SERVICES CORPORATION, f/k/a/ Borg-Warner Corporation, is a corporation incorporated under the laws of the State of Maryland, with its principal place of business located in the Commonwealth of Pennsylvania.

(g)     The defendant, COLUMBIA PAINT CORP., d/b/a COLUMBIA PAINT TOWN, is a corporation incorporated under the laws of the State of West Virginia, with its principal place of business located in the State of West Virginia.

(h)     The defendant, COOPER INDUSTRIES, INC., in its own right and as successor to Crouse-Hinds Co. and the Cooper Bessemer Corp, and as successor-in-interest to McGraw-Edison Co., Wagner Electric Corp., Studebaker Worthington, Inc., Edison International Inc., Tung Sol Electric, Inc. and as successor-in-interest to Joy Manufacturing Company, a/k/a/ Joy Technologies, Inc., and others, is a corporation incorporated under the laws of the State of Ohio, with its principal place of business located in the State of Texas.

(i)     The defendant, CURTISS-WRIGHT CORPORATION, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of New Jersey.

(j)     The defendant, DANA CORPORATION, in its own right and as successor to Smith & Kanzler, Victor Manufacturing & Gasket Co., is a corporation incorporated under the laws of the State of Virginia, with its principal place of business located in the State of Ohio.

(k)     The defendant, E.I. DU PONT DE NEMOURS & COMPANY, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Delaware.

7

(l)     The defendant, FAMOUS FURNACE & SUPPLY, a/k/a Famous Supply Company of Wheeling, is a corporation incorporated under the laws of the State of West Virginia, with its principal place of business located in the State of West Virginia.

(m)     The defendant, FLOWSERVE US, INC., f/k/a FLOWSERVE FSD CORPORATION, f/k/a/ Durametallic Corp., is a corporation incorporated under the laws of the State of Michigan, with its principal place of business located in the State of Michigan.

(n)     The defendant, FOSTER WHEELER, L.L.C., survivor to a merger with Foster Wheeler Corporation, f/k/a Foster Wheeler Corporation, is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business located in the State of New Jersey.

(o)     The defendant, GARLOCK SEALING TECHNOLOGIES LLC, f/k/a Garlock, Inc., is a corporation incorporated under the laws of the State of Ohio, with its principal place of business located in the State of New York.

(p)     The defendant, GENERAL ELECTRIC COMPANY, is a corporation incorporated under the laws of the State of New York, with its principal place of business located in the State of New York.

(q)     The defendant, GENERAL MOTORS CORPORATION, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Michigan.

(r)     The defendant, GOODRICH CORPORATION, f/k/a BFGoodrich Company, and as successor-in-interest to Goodrich-Gulf Chemical, Inc., is a corporation incorporated under the laws of the State New York, with its principal place of business located in the State of Ohio.

(s)     The defendant, THE GOODYEAR TIRE & RUBBER COMPANY, is a corporation incorporated under the laws of the State of Ohio, with its principal place of business located in the State of Ohio.

(t)     The defendant, HONEYWELL INTERNATIONAL, INC., f/k/a AlliedSignal, Inc., in its own right and as successor-in-interest to Allied Corporation, and as successor-in-interest to Allied Chemical, and as successor-in-interest to Bendix, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of New Jersey.

(u)     The defendant, INGERSOLL-RAND COMPANY, is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business located in the State of New Jersey.

(v)     The defendant, LEARJET, INC., is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Kansas.

(w)     The defendant, LOCKHEED MARTIN CORPORATION, f/k/a Martin Marietta Corporation, is a corporation incorporated under the laws of the State of Maryland, with its principal place of business located in the State of Maryland.

(x)     The defendant, McDONNELL DOUGLAS CORPORATION, is a corporation incorporated under the laws of the State of Maryland, with its principal place of business located in the State of Missouri.

(y)     The defendant, METROPOLITAN LIFE INSURANCE COMPANY, a/k/a METROPOLITAN INSURANCE COMPANY, is a corporation, with its principal place of business located in the State of New York.

9

(z)     The defendant, NORTHROP GRUMMAN CORPORATION, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of California.

(aa)     The defendant, OWENS-ILLINOIS, INC., is a corporation incorporated under the laws of the State of Ohio, with its principal place of business located in the State of Ohio.

(bb)     The defendant, PNEUMO ABEX CORPORATION, Successor-in-Interest to ABEX CORPORATION, Friction Products Division, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Massachusetts.

(cc)     The defendant, PRATT & WHITNEY, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Connecticut.

(dd)     The defendant, ROLLS-ROYCE CORPORATION, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Virginia.

(ee)     The defendant, UNIROYAL, INC., also known as UNIROYAL GOODRICH TIRE COMPANY, is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business located in the State of Connecticut.

(ff)     The defendant, VIACOM INC., successor by merger to CBS Corp., f/k/a/ Westinghouse Electric Corp., is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in the Commonwealth of Pennsylvania.

(gg)     The defendant, VIMASCO CORPORATION, is a corporation incorporated under the laws of the State of West Virginia, with its principal place of business located in the State of West Virginia.

3.     The injuries and cause of action alleged herein are due in part to actions and events hereinafter described occurring in West Virginia, as a result of the Defendant corporations doing business in the State of West Virginia, and as a result of actions elsewhere.

4.     During the time Plaintiff was exposed to products of various Defendants, the products reached Plaintiff's jobsites or Plaintiff's locales without any substantial change in the condition of the product or products from the time they were sold or distributed by the Defendants.

5.     The Plaintiff, while employed in his various occupations was exposed to and did inhale asbestos dust and other dust from products of the defendants, which caused the conditions as hereinafter set forth, resulting in disability.

6.     The following defendant corporations (hereinafter defendant "sellers") or their predecessors in interest, at all times relevant, engaged in one or more of the following activities involving asbestos and/or silica and other ingredients in their materials, including, but not limited to, the mining, milling, manufacturing, distributing, supplying, selling and/or using and/or recommending, and/or installing and/or removing asbestos materials, other dangerous ingredients and products:

> A & I COMPANY;
> A.W. CHESTERTON COMPANY;
> ALLISON TRANSMISSION DIVISION OF GENERAL MOTORS;
> BEECH AIRCRAFT COMPANY;
> BOEING NORTH AMERICAN, INC.;
> BURNS INTERNATIONAL SERVICES CORPORATION,
>    f/k/a Borg-Warner Automotive, Inc.;
> COLUMBIA PAINT CORP., d/b/a COLUMBIA PAINT TOWN;
> COOPER INDUSTRIES, INC., in its own right and as successor
>    to Crouse-Hinds Co. and the Cooper Bessemer Corp, and as
>    successor-in-interest to McGraw-Edison Co., Wagner
>    Electric Corp., Studebaker Worthington, Inc., Edison International Inc.,
>    Tung Sol Electric, Inc. and as successor-in-interest to Joy Manufacturing
>    Company, a/k/a/ Joy Technologies, Inc., and others;
> CURTISS-WRIGHT CORPORATION;
> DANA CORPORATION;
> E.I. DU PONT DE NEMOURS & COMPANY;

11

FAMOUS FURNACE & SUPPLY CO.,
  a/k/a Famous Supply Company of Wheeling;
FLOWSERVE US, INC., f/k/a FLOWSERVE FSD CORPORATION,
  f/k/a/ Durametallic Corp.;
FOSTER WHEELER, L.L.C., survivor to a merger with Foster Wheeler
  Corporation, f/k/a Foster Wheeler Corporation;
GARLOCK SEALING TECHNOLOGIES LLC, f/k/a Garlock, Inc.;
GENERAL ELECTRIC COMPANY;
GENERAL MOTORS CORPORATION;
GOODRICH CORPORATION, f/k/a BFGoodrich Company;
THE GOODYEAR TIRE & RUBBER COMPANY;
HONEYWELL INTERNATIONAL, INC.,
  f/k/a AlliedSignal, Inc., in its own right and as successor-in-interest to
  Allied Corporation, and as successor-in-interest to Bendix;
INGERSOLL-RAND COMPANY;
LEARJET, INC.;
LOCKHEED MARTIN CORPORATION,
  f/k/a Martin Marietta Corporation;
McDONNELL DOUGLAS CORPORATION;
NORTHROP GRUMMAN CORPORATION;
OWENS-ILLINOIS, INC.;
PNEUMO ABEX CORPORATION, Successor-in-Interest to ABEX CORPORATION,
  Friction Products Division;
PRATT & WHITNEY;
ROLLS-ROYCE CORPORATION;
UNIROYAL, INC., also known as UNIROYAL GOODRICH TIRE COMPANY;
VIACOM INC., successor by merger to CBS Corp.,
  f/k/a/ Westinghouse Electric Corp.;
VIMASCO CORPORATION.


## COUNT I
## AGAINST -"SELLERS"


7.    At all times pertinent hereto, Plaintiff was exposed to asbestos and other harmful

ingredients contained in products manufactured, supplied, and/or sold by the various Defendants

identified as sellers acting through their agents, servants and employees.

8.    The condition of Plaintiff is a direct and proximate result of the negligence of the

Defendants, both jointly and severally, in that they produced, supplied, and/or sold, and/or used,

and/or specified and/or removed products containing asbestos and other dangerous ingredients including silica, which products Defendants knew, or in the exercise of reasonable care, should have known, were inherently, excessively, and ultrahazardously dangerous to Plaintiff.

9.      Plaintiff's condition is a direct and proximate result of the negligence of the Defendants, both jointly and severally, in that they produced, supplied and/or sold, and/or used, and/or specified, and/or delivered products containing asbestos and other dangerous ingredients and did further:

(a)     Fail to warn Plaintiff of the dangers of the said products when the Defendants knew, or should have known, that exposure to the asbestos-containing products and other ingredients of said products would cause disease and injury;

(b)     Fail to take reasonable precautions to warn the Plaintiff of the dangers to which he was exposed when the Defendants knew, or should have known, of such dangers;

(c)     Fail to exercise reasonable care to warn the Plaintiff of the danger to which he was exposed by use of the asbestos-containing products and other ingredients in said Defendants' products;

(d)     Fail to inform the Plaintiff of what would be safe and sufficient apparel for a person who was exposed to or used the product or products;

(e)     Fail to inform the Plaintiff of what would be safe, sufficient and proper protective equipment and appliances when using or being exposed to asbestos-containing products and other ingredients in said Defendants' products;

(f)     Fail to inform the Plaintiff of what would be safe and proper methods of handling and using their products;

(g)     Fail to test the asbestos-containing products in order to ascertain the dangers involved;

(h)    Fail to test the other ingredients in their products to ascertain the dangers involved;

(i)    Fail to remove the asbestos-containing products from the market when the Defendants knew, or should have known, of the hazards of the exposure to asbestos and the use of asbestos-containing products and/or of other ingredients in their products;

(j)    Fail to place any warnings on the asbestos-containing products to warn the handlers thereof of the dangers of said asbestos-containing products and failure to warn of dangers of other ingredients in their products including silica.


10.    As a direct and proximate result of the negligence of the Defendant corporations, both jointly and severally, Plaintiff has suffered, and will in the future suffer, damages for medical treatment, drugs and other unknown remedial medical measures, great pain of the body and mind, embarrassment and inconvenience, loss of earning capacity, loss of enjoyment of life, and shortening of his life expectancy.

11.    As a direct and proximate result of the negligence of the Defendant corporations, both jointly and severally, Plaintiff has suffered and is suffering from lung injury and such may progress into other severe and disabling diseases of the body, shock and other attendant nervous or emotional disorders, has an increased risk of malignancy and other diseases and injuries, all of which are or may be permanent in nature. In fact, Plaintiff is suffering from mesothelioma due to defendants' conduct.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

<u>COUNT II</u>
AGAINST "SELLERS"

12.    Plaintiff incorporates paragraphs one (1) through eleven (11) by reference hereto as fully set out herein.

13.    The Defendant corporations identified as sellers are strictly liable, both jointly and severally, to Plaintiff for failure to properly, adequately, and safely label the asbestos-containing products, and/or their silica containing products and/or products containing dangerous ingredients, for selling and/or using and/or specifying asbestos-containing products and/or silica containing products and/or products containing dangerous ingredients that were in a defective condition; for selling products that were unreasonably safe; for selling products containing asbestos, silica and other dangerous ingredients that were in a defective condition and unreasonably unsafe because of failure to give reliable and complete warnings of the known and knowable dangers involved in the use and exposure to products containing asbestos, and/or silica and/or other dangerous ingredients.

14.    As a result of the strict liability of the Defendants, both jointly and severally, Plaintiff has, and will in the future, suffer damages for medical treatment, drugs and other unknown remedial medical measures, great pain of body and mind, embarrassment and inconvenience, loss of earning capacity, loss of enjoyment of life, and shortening of his life expectancy.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

<u>COUNT III</u>
AGAINST "SELLERS"

15.    Plaintiff incorporates paragraphs one (1) through fourteen (14) by reference hereto as fully set out herein.

15

16.     Defendants expressly or impliedly warranted that the products manufactured, supplied, sold and/or delivered and/or specified by each of them were suitable and fit for the purpose for which they were manufactured and sold and were not abnormally dangerous to the general public and persons similarly situated to the Plaintiff.

17.     Said warranties by the Defendants were false and untrue and were breached by each of the said Defendants.

18.     As a direct and proximate result of Defendants' breach of said warranties, both jointly and severally, the Plaintiff suffered and will in the future suffer from diseases due to Defendants' actions, have and will suffer damages for medical treatment, drugs and other unknown remedial medical measures, great pain of body and mind, embarrassment and inconvenience, loss of earning capacity, loss of enjoyment of life, and shortening of his life expectancy and Plaintiff has been damaged as previously described.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

<u>**COUNT IV**</u>
**AGAINST "SELLERS"**

19.     Plaintiff incorporates paragraphs one (1) through eighteen (18) by reference hereto as if fully set out herein.

20.     Defendants, individually, together and/or as a group, have possessed, since the 1920's, medical and scientific data which indicated that asbestos-containing products were hazardous to health. Prompted by pecuniary motives, the Defendants, individually, together and/or as a group, willfully, wantonly and in total disregard for the safety of the Plaintiffs, failed to act upon said

medical and scientific data.  Rather, they conspired together to deceive the public and the Plaintiffs in several aspects, including, but not limited to:

      (a)     By controlling industry supported research in a manner inconsistent with the health and safety interest of the asbestos-containing products users and consumers.

      (b)     By successfully tainting reports of medical and scientific data appearing in industry and medical literature.

      (c)     By suppressing certain medical and scientific information relating to the harmful effects of exposure to asbestos-containing products.

      (d)     By prohibiting the publication of certain scientific and medical articles.

21.     Such conspiratorial activities deprived the users, mechanics, laborers and installers of Defendants' asbestos-containing products of the opportunity to determine whether or not they would expose themselves to the unreasonably and ultrahazardous dangers of the asbestos-containing products of said Defendants.

22.     As a direct and proximate result of the willful, wanton, outrageous conduct and utter disregard for the safety of the Plaintiff, Plaintiff was exposed to asbestos-containing products and contracted an asbestos-related lung injury and/or an asbestos-related malignancy.

23.     As a direct and proximate result of the willful, wanton, and reckless misconduct and utter disregard for the safety of Plaintiff, Plaintiff has been injured and damaged as previously described.

      WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## COUNT V
## AGAINST METROPOLITAN LIFE

24.     Plaintiff incorporates paragraphs one (1) through twenty three (23) by reference hereto as fully set out herein.

25.     In or about the year 1930, and at various times prior and subsequent thereto, up to and including the present time, defendant Metropolitan Life Insurance Company undertook and assumed a duty to provide the asbestos industry, the scientific community and company users of asbestos with information, inspections, instructions, supervision, recommendations, assistance, notices, reports, methods, findings, cautions, warnings, advice, designs, equipment, safeguards, guidance and services to properly, adequately and reasonably provide safe working conditions, all allegedly to preserve and protect the life, health and safety of employees exposed to asbestos, including plaintiff and his co-workers, and particularly to protect him from the dangerous and defective properties of asbestos, asbestos products and compounds and/or other dangerous substances at or about the workplace.

26.     Plaintiff avers that various employers and their employees, including plaintiff and scientists and others similarly situated, were dependent upon the undertakings of Metropolitan to preserve and protect the life, health and safety of individuals, including plaintiff, by not assisting the said companies in selling dangerous products.

27.     Metropolitan, by its active and passive negligence, failed to exercise the standard of care and skill it was obliged to exercise by reason of its aforesaid undertakings and assumption of duty, thereby causing, creating or permitting dangerous conditions and exposure to dangerous and defective substances; and thereby failing to properly safeguard plaintiff and all others similarly situated.

28.     As a result of the aforesaid negligence of the defendant Metropolitan, plaintiff was injured.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## COUNT VI
## AGAINST METROPOLITAN LIFE

29.    Plaintiff incorporates paragraphs one (1) through twenty eight (28) by reference hereto as fully set out herein.

30.    For a number of years, Metropolitan provided insurance coverage for various manufacturers of asbestos-containing products.

31.    For a number of years, Dr. A.J. Lanza served as assistant medical director of Metropolitan.

32.    At all times relevant, the activities of Dr. Lanza hereinafter described were undertaken as a servant, agent or employee of Metropolitan.

(a)    Beginning in approximately 1934, Metropolitan Life Insurance Company and certain asbestos producers and manufacturers including Johns-Manville Corporation and Raybestos Manhattan, through their agents, Vandiver Brown, attorney J.C. Hobart, Sumner Simpson and J. Rohrbach, suggested to Dr. Anthony Lanza, as agent of Metropolitan Life Insurance Company, that Lanza publish a study on asbestos in which Lanza would affirmatively misrepresent material facts about asbestos exposure and concerning the seriousness of the disease processes, asbestosis and related diseases.   This was accomplished through intentional deletion of Lanza's feeling of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestos as causing diseases less serious than they really were known to be.  As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935.   This fraudulent misrepresentation and fraudulent nondisclosure was motivated in part  by a desire to influence

19

proposed legislation to regulate asbestos exposure and to provide a defense in disputes involving Metropolitan as insurer.

(b)     In 1936, American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, and United Gypsum Company, entered into an agreement with the Saranac Laboratories.  Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and could also control in what form such publications were to occur.  This agreement gave these companies power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, these companies together with Metropolitan, exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

(c)     On November 11, 1948, representatives of the following companies met at the headquarters of Johns-Manville Corporation:  American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Inc., Thermoid Company, Union Asbestos and Rubber Company, United States Gypsum Company and Metropolitan.  U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

(d)     At this November 11, 1948 meeting, these companies and Metropolitan decided to exert their influence to materially alter and misrepresent material facts about the substance of research previously started by Dr. Leroy Gardner at the Saranac Laboratories.  Dr. Gardner's

20

research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then existing standards of dust exposure for asbestos and asbestos products.

(e)     At this meeting, these companies and Metropolitan and subsequently their agent, Dr. Vorwald, intentionally and affirmatively determined that Dr. Gardner's work should be edited to delete material facts about the cancer causing propensity of asbestos and the health effects of asbestos on humans and to delete the critique of the dust standards. This was published, as altered, in the scientific literature. These companies and Metropolitan thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, scientists, and persons exposed to asbestos such as the plaintiff.

(f)     As a direct result of the actions as described above, Dr. Gardner's edited work was published in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that Metropolitan wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of risks. Metropolitan and the companies it joined with affirmatively and deliberately disseminated this misleading publication.

(g)     Such action constituted a material affirmative misrepresentation of material facts involving Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

(h)     In 1955, Johns-Manville, for itself and on behalf of Metropolitan, through their agent Kenneth Smith, caused to be published in the AMA Archives of Industrial Health, an article entitled "Pulmonary Disability In Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr.

21

Smith's study constituted a fraudulent and material representation about the extent of the risk associated with asbestos inhalation.

(i)     In 1955, the National Cancer Institute held a meeting at which Johns-Manville, individually and as an agent for Metropolitan, and A. Vorwald, as their agent, affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, Metropolitan was in secret possession of several studies which demonstrated that positive evidence did exist.

(j)     Metropolitan approved and ratified and furthered the previous acts of Johns-Manville, Raybestos Manhattan, and A.J. Lanza.

33.     The acts of Metropolitan as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation which proximately caused injury to the plaintiff in the following manner:

(a)     Metropolitan intended the publication of false and misleading reports and/or the nondisclosure of documented reports of health hazards of asbestos, in order to:

    (i)     Maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

    (ii)    Assist in the continued pecuniary gain through the control and reduction of claims;

    (iii)   Influence proposed legislation to regulate asbestos exposure;

    (iv)    Provide a defense in lawsuits brought for injury resulting from asbestos disease.

(b)     Metropolitan intended reliance upon the published reports regarding the safety of asbestos and asbestos-related products.

(c)      Plaintiff suffered injury as a direct and proximate result of the acts alleged herein.

34.    Metropolitan has, as previously stated, altered, influenced, and created significant portions of medical literature which are false and misleading statements concerning the dangers of asbestos exposure and disease.  In so doing, Metropolitan, and its aforesaid agents, provided a body of medical literature which, when relied upon by persons investigating such literature, would have lead to a false impression of the dangers of asbestos exposure.

Additionally, the publication of such literature acted to inhibit the development of the literature and effectively delayed the dissemination of accurate knowledge of the dangers. Metropolitan owed a duty to the plaintiff, and the public as a whole, when contributing to the medical literature to do so in good faith and with the reasonable care expected of any professional contributing to such literature; Metropolitan's failure to do so is willful and wanton negligence and a separate intentional tort creating a duty to compensate the plaintiffs for injuries sustained as a proximate contributing result of the actions of Metropolitan Life Insurance Company.

35.    As a direct and proximately result of the fraudulent concealment and/or fraudulent representation by Metropolitan and its agents, the plaintiff suffered the diseases, injuries and damages set forth in the foregoing paragraphs.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## <u>COUNT VII</u>
### AIDING AND ABETTING AGAINST METROPOLITAN LIFE

36.    Plaintiff incorporates paragraphs one (1) through thirty five (35) by reference hereto as fully set out herein.

37.     Defendant, Metropolitan Life Insurance Company, individually and in concert with American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, United Gypsum Company, Thermoid Company and others knowingly agreed and conspired among themselves to engage in a course of conduct that was reasonably likely to result in injury to plaintiff.

38.     Defendant, Metropolitan Life Insurance Company, knew or should have known that the perversion of the scientific and medical literature as aforesaid would cause the harmful effects of asbestos exposure and would cause plaintiff injury.

39.     Defendant, Metropolitan Life Insurance Company, gave substantial assistance and/or encouragement to the conspirators and this aided and abetted their sale of asbestos products in a defective and dangerous condition and their reduction and control of claims against them.

40.     The actions of Metropolitan Life Insurance Company make it liable to plaintiffs pursuant to Section 876 of the Restatement of Torts (Second) since Metropolitan Life Insurance Company has acted in concert with others to cause harm to the plaintiff.

41.     As a direct and proximate result of the actions of defendant, Metropolitan Life Insurance Company, plaintiff suffered and will continue to suffer serious bodily injury; endured and will continue to endure great pain and suffering and mental anguish; incurred and will continue to incur medical expenses; lost earnings and earning capacity; and was otherwise damaged.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## COUNT VIII
## MISREPRESENTATION AGAINST METROPOLITAN
## LIFE INSURANCE COMPANY

42.    Plaintiff incorporates paragraphs one (1) through forty one (41) by reference hereto as fully set out herein.

43.    The actions of defendant Metropolitan Life Insurance Company as described above constituted conscious misrepresentation involving risk of physical harm and/or negligent misrepresentation involving risk of physical harm.

44.    Metropolitan Life Insurance Company is liable to plaintiff for his injury pursuant to Section 310 and 311 of the Restatement of Torts (Second).

45.    As a direct and proximate result of the actions of defendant, Metropolitan Life Insurance Company, plaintiff suffered and will continue to suffer serious bodily injury; endured and will continue to endure great pain and suffering and mental anguish; incurred and will continue to incur medical expenses; lost earnings and earning capacity; and was otherwise damaged.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## COUNT IX
## CONSPIRACY COUNT AGAINST UNIROYAL, INC.

46.    Plaintiff incorporates paragraphs one (1) through forty five (45) by reference hereto as fully set out herein.

47.  The defendant Uniroyal, in order to advance their own sales of asbestos containing products, engaged in a conspiracy with other manufacturers of similar asbestos containing products.  The purpose and goal of the conspiracy was to suppress, distort and misrepresent the health hazards of asbestos-containing products, particularly cloth, gaskets and packing.

25

48.   The members of the conspiracy included all members of the Asbestos Textile Institute, including Uniroyal, H.K. Porter, Raybestos Manhattan, Johns Manville, Keasby & Mattison Co., Unarco, American Asbestos Textile Corp., Asten Hill Manufacturing Co., and their predecessors.

49.  The conspiracy engaged in overt acts from 1944 forward.  These efforts included efforts in the 1940's to suppress research concerning the TLV, efforts in the 1950's to suppress research regarding cancer, and efforts in the 1960's to suppress Dr. Selikoff.  The actions of the conspiracy were carried out through the Asbestos Textile Institute and the Asbestos Information Association.

50.  The actions of the conspiracy kept plaintiff and others ignorant of the dangers of defendants' products.  In this way, the conspirators aided efforts to sell products containing asbestos.

51.  The defendant Uniroyal, as a member of the conspiracy, is liable for all injuries resulting from asbestos products of members of the conspiracy.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

### COUNT X
### PUNITIVE DAMAGES AS TO ALL DEFENDANTS

52.    Plaintiff incorporates paragraphs one (1) through fifty one (51) and all paragraphs hereinafter by reference hereto as fully set out herein.

53.    The conduct of the defendants as set forth above were willful, wanton, malicious and in reckless disregard of the safety of the plaintiff and others and therefore, justifies the award of punitive damages.

54.    As a direct and proximate result of these acts, plaintiffs suffered and will continue to suffer serious bodily injury; endured and will continue to endure great pain and suffering and mental

anguish; incurred and will continue to incur medical expenses, lost earnings and earning capacity, and was otherwise damaged.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## COUNT XI
## LOSS OF CONSORTIUM

55.    Plaintiff incorporates paragraphs one (1) through fifty four (54) by reference hereto as fully set out herein.

56.    As a direct and proximate result of the illnesses and diseases suffered by the plaintiff, the plaintiff's wife has lost the financial support of her husband for the rest and remainder of her life.

57.    The plaintiff's wife has suffered the loss of general services, companionship, and society of her husband since he contracted the diseases due to defendants' products and its related health problems, and will continue to suffer the loss of her husband's services, companionship and society for the remainder of her life.

58.    As a result of the illnesses and diseases suffered by her husband, the plaintiff's wife has rendered nursing care and other services to her husband, and it will be necessary that the plaintiff's wife continue to render such nursing services to her husband until his death, or such services were rendered prior to death.

59.    The conduct of the defendants as set forth above was in a willful, wanton, and reckless disregard of the safety of the plaintiff and therefore, justifies the award of punitive damages as well.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment on his behalf against the defendants, both jointly and severally, in an amount in excess of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## COUNT XII
## OWENS-ILLINOIS' LIABILITY FOR
## OWENS-CORNING CORPORATION

60.    Plaintiff incorporates paragraphs one (1) through fifty nine (59) by reference hereto as fully set out herein.

61.    Owens-Illinois, Inc. developed the asbestos product known as Kaylo.

62.    Owens-Illinois knew of the hazardous nature of Kaylo.

63.    If it is proved that Owens-Illinois failed to inform Owens-Corning of the dangers of Kaylo and the findings of Owens-Illinois' sponsored research regarding potential hazards of Kaylo, and failed to inform Owens-Corning of the deceptive nature of information it had published concerning Kaylo, then Owens-Illinois would have liability for Owens-Corning's asbestos products.

64.    Owens-Illinois sold Kaylo through Owens-Corning and subsequently sold all rights in Kaylo to Owens-Corning.

65.    Owens-Illinois' failure to disclose the dangers of Kaylo and its deceptive statements with respect thereto, including claims that Kaylo was not toxic or harmful, contributed to Owens-Corning's sale of Kaylo in a dangerous and defective condition.

66.    Owens-Illinois and Owens-Corning also conspired to suppress knowledge of the dangers of asbestos in Kaylo so as to increase sales of Kaylo.

67.    Owens-Illinois, with full knowledge of the toxic and dangerous characteristics of the Kaylo Insulation line it had sold to Owens-Corning, manufactured and supplied packaging to Owens-Corning for use with the Kaylo Insulation which packaging did not contain adequate warnings as to the toxic and dangerous characteristics of the Kaylo Insulation product.  As such, Owens-Illinois is liable for having contributed to the preparation and sale of a defective product and the toxic and dangerous Kaylo insulation product, which were sold without adequate warnings.

68.     The actions of Owens-Illinois kept plaintiffs and others ignorant of the dangers of asbestos in defendants' and Owens-Corning's products.  In this way, Owens-Illinois aided efforts to sell products containing asbestos.

69.     The defendant, Owens-Illinois is liable for all injuries resulting from asbestos products sold by Owens-Corning.

### COUNT XIII
**CONSPIRACY COUNTS AGAINST PNEUMO ABEX CORPORATION,
SUCCESSOR-IN-INTEREST TO ABEX CORPORATION,
FRICTION PRODUCTS DIVISION**

70.     Plaintiff incorporates paragraphs one (1) through sixty nine (69) by reference hereto as fully set out herein.

71.     The members of the conspiracy include Unarco, Johns-Manville, Raybestos Manhattan, H.K. Porter, American Asbestos Textile Corp., Asten Hill Manufacturing Co., and Pneumo Abex Corporation, successor-in-interest to Abex Corporation, Friction Products Division, and its predecessors, including American Brake Block.

72.     The conspirators agreed to conspire to assert that asbestos was safe when they knew it was not.  They also agreed to suppress information about the harmful effects of asbestos.

73.     The conspiracy occurred and functioned during the time period 1935 to the 1970's.

74.     The actions of the conspiracy kept plaintiffs and others ignorant of the dangers of asbestos and defendants' products.  In this way, the conspirators aided efforts to sell products containing asbestos.

75.     The defendant, Pneumo Abex Corporation, successor-in-interest to Abex Corporation, Friction Products Division, and its/their predecessor as a member of the conspiracy, is liable for all injuries resulting from asbestos products of members of the conspiracy.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL ISSUES TRIABLE BY A

JURY RAISED HEREIN.

GOLDBERG, PERSKY & WHITE, P.C.

BY: _____

David P. Chervenick, Esquire (W.V. I.D. 7002)
Bruce E. Mattock, Esquire (W.V. I.D. 6996)
1030 Fifth Avenue
Pittsburgh, PA 15219
(412) 471-3980

THE SEGAL LAW FIRM

BY: _____

Scott S. Segal, Esquire (W.V. I.D. 4717)
The Segal Law Firm
810 Kanawha Boulevard, E.
Charleston, WV 25301

ATTORNEYS FOR PLAINTIFFS

# EXHIBIT 5



Bank One Center, Eighth Floor
P.O. Box 1588
Charleston, WV 25326-1588
(304) 353-8000    (304) 353-8180 Fax
www.steptoe-johnson.com

Writer's Contact Information
(304) 624-8144
nuzumj@steptoe-johnson.com

April 6, 2005

**Via Hand Delivery**
Teresa L. Deppner, Clerk
United States District Court for
the Southern District of West Virginia
Room 2400, U.S. Courthouse
300 Virginia Street East
Charleston, West Virginia 25301

> Re:   *Hamrick, et ux v. A&I Company, et al.*
>       *Circuit Court of Kanawha County, West Virginia*
>       <u>*Civil Action No. 05-C-54*</u>

Dear Ms. Deppner:

Enclosed please find the original following documents:

1. Notice of Removal;
2. Proof of Notice of Removal and Filing of Notice of Removal in State Court;
3. Civil Cover Sheet; and
4. Corporate Disclosure Sheet.

Please mark these documents as "Filed" and place in the appropriate Court file. Also enclosed please find our firm check payable to the United States District Court, in the amount of $250.00 for the filing fee. Certified copies of the Kanawha County Circuit Court file will be forwarded upon receipt.

Pursuant to 28 U.S.C. § 1466(d), I have delivered a copy of the "Notice of Filing Notice of Removal" to the Clerk of the Circuit Court of Kanawha County, West Virginia, for filing.

Very truly yours,

Janna M. Nuzum

JMN/mrs
Enclosures
cc (w/encls.):  Counsel of Record

CL1005896.1

APR 18 2005

⬤ TERRALEX®

**EXHIBIT 5**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLES E. HAMRICK and
WANDA HAMRICK,

                    Plaintiffs,

v.                                          Civil Action No. _____
                                            (Removed from the Circuit Court of
                                            Kanawha County, No. 05-C-54)

A & I COMPANY, et al.,

                    Defendants.

## NOTICE OF REMOVAL

TO:   THE CLERK OF THE COURT IN THE UNITED STATES DISTRICT
      COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

          Pursuant to the United States Constitution, art. I, § 8, cl. 17 and 28 U.S.C. § 1331,

§ 1441, § 1442(a)(1) and §1446, Defendant Pratt & Whitney, by and through its undersigned

counsel, Steptoe & Johnson PLLC, hereby gives notice of its intent to remove the action captioned

·Charles E. Hamrick and Wanda Hamrick, Plaintiffs v. A & I Company, et al., from the Circuit Court

of Kanawha County, West Virginia, Civil Action No. 05-C-54, where it was filed, to the United

States District Court for the Southern District of West Virginia.   As grounds for removal, Pratt &

Whitney states as follows:

          1.     On February 4, 2005, Charles E. Hamrick and Wanda Hamrick filed a

complaint in the Circuit Court of Kanawha County, West Virginia, naming Pratt & Whitney as one

of the defendants.

CL1005595.1

APR   8 2005

2. On March 8, 2005, Pratt & Whitney was served with the Summons and Complaint in this matter, a true copy of which is attached hereto and made part hereof as Exhibit A.

3. Plaintiff was deposed on March 7, 2005, pursuant to a court order to expedite his deposition. Without waiving any defenses, including personal jurisdiction, Pratt & Whitney appeared and participated in plaintiff's deposition.

4. In his March 7, 2005, deposition, Plaintiff testified that he was exposed to asbestos through work on aircraft operated and flown by the U.S. Air Force. He has no exposure to asbestos other than through his Air Force employment. All of his exposure has taken place on United States Air Force bases. These facts make the case removable on two separate grounds.

5. First, this is a civil action which may be removed pursuant to 28 U.S.C. § 1442(a)(1) in that based on Plaintiff's testimony, Pratt & Whitney is entitled to rely on the federal officer removal statute because: (1) Pratt & Whitney would have been acting under the direction of a federal officer in the course of the acts it allegedly performed; (2) Pratt & Whitney has a federal defense to plaintiffs' claims; and (3) Pratt & Whitney intends to demonstrate that, if there is any causal nexus between plaintiff's claims and the acts it performed, the causal nexus is between plaintiffs' claims and acts performed by Pratt & Whitney under color of federal office.

6. Moreover, to the extent that testimony may be later offered the Plaintiff was exposed to asbestos contained within the engines manufactured by Pratt & Whitney which may have been on United States Air Force Planes, Pratt & Whitney would be entitled to invoke the "government contractor defense" in response to such claims against it. *See Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Pratt & Whitney intends to assert the government contractor defense to all of Plaintiffs' claims.

CL1005595.1                                    2

7.     Second, this action may also be removed pursuant to U.S. Constitution, art. I, § 8, cl. 17 and 28 U.S.C. § 1331, in that all of plaintiff's alleged exposure to asbestos-containing products allegedly manufactured by Pratt & Whitney occurred while he was on federal enclaves, specifically United States Air Force bases.

8.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that the notice of removal shall be filed within thirty (30) days after receipt of defendants, by service or otherwise, of a paper from which it may first be ascertained that the case is removable.

9.     As Pratt & Whitney removes this matter on two grounds, pursuant to 28 U.S.C. § 1441(a) and § 1441(c), consents from the other defendants have been attached to and tendered simultaneously with this removal, which are attached hereto and made part hereof as Exhibit B.[1]  Answers to the Complaint were prior filed by defendants Viacom, Inc., successor by merger to CBS Corp, f/k/a Westinghouse Electric Corp., Vimasco Corporation and Goodrich Corporation which are attached as part of Exhibit B.  These defendants, along with the others, have submitted their consent to removal.

10.    Written notice of the filing of this Notice of Removal has been served on Plaintiffs and all other parties.

11.    A copy of this Notice of Removal has been filed with the appropriate clerk of the Courts for the Circuit Court of Kanawha County, West Virginia.  A copy of the Filing of Notice of Removal filed in the state court is attached hereto as Exhibit C.

---

[1]  Pratt & Whitney, pursuant 28 U.S.C. § 1441(c)  is not required to notify and obtain consent of any other defendant in order to remove Plaintiff's action as a whole under 28 U.S.C. § 1442(a)(1) because the statute is jurisdictional in nature.

12.     Pratt & Whitney has requested from the Circuit Court of Kanawha County, West Virginia, certified copies of all documents in the Court file and will forward these documents to the Court upon receipt pursuant to 29 U.S.C. § 1447(b).  A copy of the certified docket sheet is attached as Exhibit D.

13.     Pratt & Whitney reserves the right to amend or supplement this Notice of Removal.

14.     Pratt & Whitney reserves all defenses, including, without limitation, the defense of lack of personal jurisdiction.

15.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all parties and filed with the Clerk of the Circuit Court for Kanawha County, West Virginia.

WHEREFORE, as this Court has jurisdiction pursuant to U.S. Const. art. I, § 8, cl. 17 and 28 U.S.C.§§ 1331 and 1442(a)(1), in that Pratt & Whitney is entitled to rely on the federal enclave and federal officer removal statutes, and removal pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446 is appropriate, Defendant Pratt & Whitney prays that the aforesaid civil action be removed from the Circuit Court of Kanawha County, West Virginia to the United States District Court for the Southern District of West Virginia and that the Circuit Court of Kanawha County, West Virginia proceed no further with this action.

Dated  this  6th  day of April, 2005.

Respectfully submitted,

Robert E. Gifford (WVSB #6318)
Kelly J. Little (WVSB #7279)
Janna M. Nuzum (WVSB #9134)

STEPTOE & JOHNSON PLLC          Bank One Center
Of Counsel                      P. O. Box 2190
                                Clarksburg, WV  26302-2190
                                PH:  (304) 624-8000

*Counsel for Defendant Pratt & Whitney*

# EXHIBIT 6

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888

http://www.jpml.uscourts.gov

June 6, 2005

TO INVOLVED COUNSEL

Re:  MDL-875 – In re Asbestos Products Liability Litigation (No. VI)

(See Attached Schedule CTO-248)

Dear Counsel:

Attached hereto is a copy of a conditional transfer order filed today by the Panel involving the above-captioned matter.  This matter is transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001).  Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached for your convenience.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office BY FACSIMILE, at (202) 502-2888, of any official changes in the status of the tag-along action.  These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court.  Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE:** __June 21, 2005__  (4 p.m. EST)
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel Rules before filing your Notice of Opposition.

A list of involved counsel is attached.

Very truly,

Michael J. Beck
Clerk of the Panel

By
Deputy Clerk

Attachments

JPML Form 39

# EXHIBIT 6

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN ~ 6 2005

FILED
CLERK'S OFFICE

## DOCKET NO. 875

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

## (SEE ATTACHED SCHEDULE)

## CONDITIONAL TRANSFER ORDER (CTO-248)

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 79,788 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Weiner.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Weiner.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, 771 F.Supp. 415 (J.P.M.L. 1991), and, with the consent of that court, assigned to the Honorable Charles R. Weiner.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

## SCHEDULE CTO-248 - TAG-ALONG ACTIONS
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| **ALABAMA NORTHERN** | |
| ALN 2 05-796 | Lisa Bracknell, et al. v. Aearo Co. |
| **CALIFORNIA NORTHERN** | |
| CAN 4 05-202 | Twila Hartford, et al. v. Atlas Turner, Inc., et al. |
| **MINNESOTA** | |
| MN 0 04-4236 | Edmund Joseph Casey v. Garlock Sealing Technologies, LLC, et al. |
| **MISSISSIPPI NORTHERN** | |
| MSN 3 03-236 | Lemon Covington, et al. v. Garlock Sealing Technologies, LLC, et al. |
| **NORTH CAROLINA WESTERN** | |
| NCW 1 05-95 | Faye Winchester Nicholson, etc. v. Anchor Packing Co., et al. |
| **NEW YORK EASTERN** | |
| NYE 1 05-1681 | Barbara L. Horick, etc. v. A.W. Chesterton Co., et al. |
| NYE 1 05-1777 | Lorraine Caitlin, etc. v. A.W. Chesterton Co., et al. |
| NYE 1 05-1812 | Tiffany Alders, et al. v. A.W. Chesterton Co., et al. |
| NYE 1 05-1981 | Ellen L. McIntosh, etc. v. A.W. Chesterton Co., et al. |
| NYE 1 05-2047 | Lucille M. Ray v. A.W. Chesterton Co., et al. |
| **WEST VIRGINIA SOUTHERN** | |
| WVS 2 05-286 | Charles E. Hamrick, et al. v. A&I Co., et al. |

# EXHIBIT 7



Inasmuch as no objection is
pending at this time, the
stay is lifted.

OCT - 2 2008

CLERK'S OFFICE
JUDICIAL PANEL ON

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 16 2008

FILED
CLERK'S OFFICE

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

Wanda R. Hamrick, etc. v. A&I Co., et al.,            )
E.D. Pennsylvania, C.A. No. 2:07-62873               )
(S.D. West Virginia, C.A. No. 2:05-286)              )               MDL No. 875

## CONDITIONAL REMAND ORDER

The transferee court in this litigation has, in the action on this conditional remand order: (1) severed all claims for punitive or exemplary damages; and (2) advised the Panel that coordinated or consolidated pretrial proceedings with respect to the remaining claims have been completed, and that remand of those claims to the transferor court, as provided in 28 U.S.C. §1407(a), is appropriate.

IT IS THEREFORE ORDERED that all claims in the action on this conditional remand order except the severed damages claims be remanded to the United States District Court for the Southern District of West Virginia.

IT IS ALSO ORDERED that, pursuant to Rule 7.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 436-38 (2001) (Rules), the transmittal of this order to the transferee clerk for filing shall be stayed 15 days from the date of this order. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel. This order does not become effective until it is filed in the office of the Clerk for the United States District Court for the Eastern District of Pennsylvania.

IT IS FURTHER ORDERED that, pursuant to Rule 7.6(g), the parties shall furnish the Clerk for the Eastern District of Pennsylvania with a stipulation or designation of the contents of the record to be remanded all necessary copies of any pleadings or other matter filed so as to enable said Clerk to comply with the order of remand.

A CERTIFIED TRUE COPY

OCT - 2 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

**EXHIBIT 7**

# EXHIBIT 8

# IN THE CIRCUIT FOR BLOUNT COUNTY, TENNESSEE

CAROLINE WELCH, As )
surviving Spouse and Next )
of Kin of DONALD WELCH, )
Deceased, )
                     )
            Plaintiff, )
                     )
vs. )
                     )
ALCOA, INC. )
                     )
           Defendant. )

**FILED**
JUL 2 1 2006
TOM HATCHER
CIRCUIT COURT CLERK

No. L-15371
JURY DEMANDED

## COMPLAINT FOR WRONGFUL DEATH

Comes the Plaintiff, and for her cause of action would say as follows:

### I.    Parties

1.    Plaintiff, Carolyn Welch, is the wife and surviving spouse of the decedent, Donald Welch who died of asbestos related esphogeal cancer on or about July 24, 2005. At the time of his death, Carolyn and Donald Welch were citizens and residents of Vonore, Monroe County, Tennessee.

2.    Defendant, Aluminum Company of America has changed it name to ALCOA Inc. (hereinafter "ALCOA" or "Defendant") ALCOA is incorporated under the laws of the state of Pennsylvania. ALCOA may be served through its registered agent, Corporation Service Company, 2908 Poston Ave., Nashville, Tennessee, 37203.

3.    Defendant may be served with process as indicated above under and by virtue of the laws of the State of Tennessee Long-Arm Statute, T.C.A. 20-2-214 *et seq.* through the Secretary of the State of Tennessee.

 ORIGINAL

**EXHIBIT 8**

4.     ALCOA has and continues to do business within the State of Tennessee involving the production and sale of among other things, aluminum products and/or materials.

5.     At all times relevant, ALCOA acted through their duly authorized agents, servants, and employees who were at all times relevant herein acting within the scope and course of their employment.

## II.     Venue and Jurisdiction

6.     The incidents which are the subject of this lawsuit took place in Blount County, Tennessee, at the ALCOA Inc. facility (hereinafter "ALCOA facility").

7.     The Circuit Court of Blount County, Tennessee, it the proper venue and jurisdiction for this wrongful death action.

## III.     Factual Background

8.     Decedent, Donald Welch, (hereinafter "Welch") was an employee of a contractor known as, J.M. Forrester.  On several occasions, Welch worked at the ALCOA facility in or near Alcoa, Tennessee.

9.     The Plaintiff asks for no relief under any federal law or regulation, asserts no federal claims, and withdraws any asserted claim if it is preempted by federal law. Any remedy under federal law, regulation, rule or other federal authority is expressly disclaimed.

10.     The Plaintiff does not assert any claims against Defendant as manufacturers of asbestos containing products.

11.     The ALCOA facilities at which Donald Welch, are all located in the town of Alcoa, Tennessee. The three ALCOA facilities in the vicinity are known as the West Plant (no longer still in existence, as of approximately 1998), the North Plant and the South Plant and are collectively and generally referred to by ALCOA as the "Tennessee Operations" or "Tennessee Works."

12.     ALCOA maintains principal corporate offices in Pittsburgh, Pennsylvania, where it also has an Industrial Hygiene Department. The Industrial Hygiene Department is supported by a laboratory facility in New Kensington, Pennsylvania. These Industrial Hygiene operations provide services to local facilities such as Tennessee Operations, as early as the 1940s.

13.     As early as 1935, ALCOA learned from the National Safety Council that asbestos dust was highly dangerous and "if you can see the dust, you know you have tremendous hazard." ALCOA helped establish the Air Hygiene Foundation of America, Inc. shortly thereafter and with other business groups regularly tracked research on asbestos dust hazards. ALCOA remained a corporate member and attended annual Foundation conferences, at least into the 1 940s. Internal memoranda at ALCOA in and around 1933 to 1935 indicated a need to eliminate dust as much as possible, to provide ventilation and to provide respirators to exposed workers.

14.     In 1948, ALCOA hired Thomas B. Bonney, as a key member of its Industrial Hygiene Department from his date of hire until the late 1950s at New Kensington and then the late 1950s until 1970 in Pittsburgh. From 1970 until 1986, Thomas Bonney (hereinafter "Bonney") worked for ALCOA as the senior member of its industrial hygiene department in Pittsburgh.

15.    Bonney became a certified Industrial Hygienist in 1965 and was a member of various professional associations. Included among those associations is the Industrial Hygiene Foundation of America, which had published articles on the hazards of asbestos dust exposure and asbestos-related diseases since at least February of 1937.

16.    Bonney and others in ALCOA's Industrial Hygiene Department knew as early as 1948; about the presence, of asbestos containing materials in large numbers of locations and many uses at ALCOA's local facilities, including Tennessee Operations. ALCOA regularly monitored dust levels in its plants as early as the 1940s, including asbestos dust levels, which had a time weighted, eight hour exposure threshold limit value of five million particles per cubic foot. Bonney and the others in Industrial Hygiene at ALCOA knew that asbestos was a toxic substance, that it caused asbestosis and that asbestos-related diseases had latency periods that could be as high as 20 to 30 years but considered it a "low priority item"

17.    Representatives from ALCOA attended the 1949 Second Gulf Coast Regional Conference on Industrial I-Iealth. At that conference, T. Dewey Dorsett of the Association of Casualty and Surety' Companies presented a paper entitled "The Employers Liability for Occupational Diseases." In discussing asbestosis, Mr. Dorsett pointed out "more important, however, than compensation for these diseases is prevention."

18.    Bonney and others in ALCOA's Industrial Hygiene Department were aware of studies as early as 1955 through an Industrial Hygiene digest they received in September of 1955 linking asbestos exposure with lung cancer and were aware of studies as early as 1960 linking asbestos exposure with mesothelioma. They were aware, as well,

of recommendations from experts in the field that the ACGIH threshold limit value standards at the time were too high and should be reduced.

19.     As early as 1952, ALCOA listed asbestos products as hazardous, yet made no effort to advise workers of the dangers from exposure. The following year, chest x-rays taken of workers at one of ALCOA's pot rooms and in a carbon plant revealed numerous employees with fibrosis and increased basilar markings.

20.     On August 21, 1958, Alcoa's Industrial Hygiene department circulated guidelines to its plants around the United States from the Industrial Hygiene Association on the hazards and preventive measures, as well as threshold limit values for use of and work with materials containing asbestos.

21.     In 1962 the State of California instructed ALCOA to stop sawing asbestos-containing marinite because of high asbestos dust levels that exceeded the threshold limit value, by two to six times, even with exhaust systems in place, until these levels could be brought under control. ALCOA's Industrial Hygienists, at or around that time, understood that by-standers could be exposed to harmful asbestos dust through the cutting of marinite. Workers at other ALCOA plants continued to cut asbestos-containing marinite for several decades, and ALCOA even turned the marinite shop at the Tennessee Operations into a break room in the 1990s.

22.     Internal correspondence to Bonney, dated April 9, 1965, confirms a concern at ALCOA about the use of asbestos in pot lining operations and that "even intermittent exposures to high concentrations, over long periods of time, can result in varying degrees of asbestosis according to individual susceptibility. There have been reports of increased incidence of lung cancer in persons with asbestosis."

23.     Beginning in 1964, ALCOA's industrial hygienists, including Bonney, became aware of studies showing insulation workers with light intermittent exposure to asbestos at higher risk of mesothelioma, stomach, colon and rectal cancers. ALCOA and Bonney became aware of additional studies linking asbestos to mesothelioma in January and September of 1966. These studies, which were highly publicized and renowned, prompted ALCOA's industrial hygienists to pay attention to earlier studies linking asbestos exposure with cancer.

24.     In the mid-1960s, ALCOA's industrial hygienists believed that workers breathing visible dust without protection would be unsafe and in a potentially hazardous environment. In the mid-1960s, ALCOA looked at job categories that may have heavy exposures to asbestos dust. They included: pot liners, carpenters, masons, and millwrights.

25.     In 1968, Bonney and others in ALCOA's industrial hygiene department published a book called "Industrial Hygiene Highlights" with Louis Cralley at the United States Public Health Service. At the time of the book, Bonney was aware of increased mortality studies dating from the 1920s involving asbestos-related diseases. Bonney's book noted that asbestos had been identified: as a human carcinogen in 1935 and that asbestos dust could cause cancer even in persons who live near facilities where asbestos is used.

26.     In January of 1968, an ALCOA brick mason who regularly used asbestos products in put room repairs, alerted his foreman and the industrial hygienists locally and nationally, including Bonney, about short and intermittent exposure concerns he and his family shared. This mason forwarded a newspaper clipping reporting multiple household

illnesses to wives and children, including mesothelioma, from workmen bringing asbestos dust home on their clothes.

27.     Correspondence to ALCOA's industrial hygienists, including Bonney, in 1968 from Dr. Selikoff, a renowned expert in asbestos-related diseases at Mt. Sinai Hospital at City University of New York, made no distinction between the risks posed by the multiple forms of asbestos.

28.     Asbestos-using workers at ALCOA in 1968 were not required to use respiratory protection devices. Upon information and belief, ALCOA, despite its knowledge as detailed above, did not inform its asbestos-using workers of increased risks of disease, so that those workers could voluntarily choose additional respiratory protection.

29.     In the late 1960s, ALCOA's industrial hygienists, including Bonney, became aware of a Pennsylvania State Department of Health study of mesothelioma cases between 1958 and 1963 in which victims merely lived close to asbestos plants. ALCOA is a Pennsylvania company, with its national industrial hygiene department located in Pennsylvania.

30.     In 1968, ALCOA had to respond to Union complaints about high dust levels in its pot rooms.

31.     ALCOA identified in the 1970s the materials then in use at their plants that contained asbestos, including: thermal blankets, batts, blocks, textile cloth, felts, sheets, cord, gasket materials, packing materials, transite pipe, roof tiles, shingles, tiles siding clapboard, floor tiles, wall coverings, brake pads, linings, caulking putty, joint

compound, mastics, stucco, arc chutes, braided cables, insulating fiberboard and roof paint. Many of these insulating materials were used for insulation of furnaces and pipes.

32.    On March 3, 1971, ALCOA became aware through a Chlorine Institute Environmental Health Committee report that 10 percent of workers with occupational exposure to asbestos insulation materials will die of mesothelioma, whereas only one in 10,000 in the general population would die.

33.    In 1971, ALCOA became aware of increased reports of workers outside the asbestos textile industry with asbestos-related diseases and that demolition, ripping out and tearing out of insulation and wallboard at commercial sites were a serious source of potential exposure.

34.    In April of 1972, ALCOA's industrial hygienists became aware of the Occupational Health and Safety Administration's (OSHA) planned publication of asbestos standards and directed that "all operations involving asbestos should be critically inspected." Those standards, effective in July of 1972, required ALCOA to monitor dust levels so that ALCOA would meet new, more stringent standards. At the same time, a letter was sent to local hygienists stating "whenever asbestos is routinely used and in whatever form, we must take a careful look at exposures, not only for those handling the material but of other workers in the vicinity."

35.    The 1972 standards also involved ALCOA providing asbestos exposed workers respiratory protection, exhaust ventilation, employee education, changing rooms, laundering facilities, medical monitoring and caution signs and labels. At the time these regulations became effective, ALCOA's industrial hygiene department in Pennsylvania,

according to Bonney, believed that local plants, including the Tennessee Operations had been adequately advised of the regulations and the local plant's need to follow them.

36.   A May 1973 memorandum on asbestos compliance reported that Tennessee ALCOA Operations had three areas exceeding the OSHA limits, with, among many other areas, the removal of insulation from furnaces as being of particular concern. This memorandum also recommended the prohibition of shaking coveralls, cleaning dusty clothes with an air gun, wearing street clothes while handling asbestos materials and separate clean up areas for workmen, as ways to avoid production of high levels of asbestos dust. Furthermore, the rip-out of dry asbestos insulation materials were found to produce approximately 40 times the permissible fibers per cubic centimeter, and wet producing more than 10 times the permissible limits.

37.   In May of 1973, ALCOA measured actual coveralls of workers with 5 fibers per cubic centimeter of asbestos dust on them, from mere intermittent asbestos exposure. This data was collected from the Tennessee Operations, among seven other facilities.

38.   At least as of 1972, ALCOA had a duty to warn its employees about the risks of cancer from asbestos exposure.

39.   ALCOA had a policy, according to Bonney, as of 1974, which directed ALCOA withhold exposure level information from employees who were found to be below 50 fibers per milliliter, but who had respiratory protection "fitted".

40.   In 1977, the Tennessee Operations medical director advocated to the Operations and Personnel managers, the filling of the post of industrial hygienist, which

had had no full time person, thus leaving Tennessee "undermanned" in industrial hygiene activities for the majority of the decade.

41.     An April 1979 memorandum about the Tennessee industrial hygiene efforts indicates repeated violations of the OSHA limits for asbestos exposure and that despite the documentation of problem areas over the years "either little or nothing has been done to control exposures." At this time, Tennessee still had no full-time, in house industrial hygienist.

42.     On July 6,1982, a memorandum was circulated at ALCOA that stated, "About three years ago, a more formal program was started with Plants, Purchasing and Engineering with the objective to eliminate asbestos and asbestos containing materials wherever possible. The focus has been primarily with production and process operations. Possibly, we have been remiss in not following up construction applications."

43.     In February of 1983, ALCOA implemented a policy at all of its plants to attempt to keep exposure information out of its employees' medical records. An example of information ALCOA wanted kept out of its records was given thus: "my previous work assignments involved furnace demolition with likely exposure to asbestos insulation". ... Because such statements "could prove very damaging in the event of trying to settle employee claims 20 or 30 years later."

44.     In June of 1985, Tennessee Operations reported only 16 total workers getting monitoring for past or current exposure to asbestos, with six of the individuals being already retired at that time.

45.     In 1989, ALCOA's president declared it a "good year to put problems behind us" with regard to the "asbestos situation."

46.   A 1995 ALCOA Asbestos Awareness Training Instructor Manual indicates that "significant exposures to the families of asbestos workers have occurred as a result of contaminated clothing brought home from the workplace.

47.   ALCOA first identified its workers as being at risk of exposure to asbestos, as early as 1958 and possibly earlier.  Welch worked in the close vicinity of ALCOA workers and asbestos containing insulation, however, he was never warned of the risks of asbestos exposure or the risks of taking asbestos dust home on his clothe.

48.   Even though ALCOA was familiar with reports of family member contraction of mesothelioma from workers' clothes as early as 1968 and worker contraction of mesothelioma from intermittent exposures as early as 1964, at no time did ALCOA advise Donald Welch of these risks so that he could take reasonable precautions.

49.   ALCOA knew that visible, airborne dust represents a hazardous level of dust, ALCOA ran giant fans around its furnaces and in its buildings at the Tennessee Operations and employed sweepers all of which kept visible dust circulating in the air all day, to which Mr. Welch would have been exposed while working at the ALCOA facility.  This dust was airborne in areas of the Tennessee Operations that had large quantities of asbestos containing materials.

50.   As a direct and proximate result of his exposure to asbestos containing materials and dust at the ALCOA facility Don Welch contracted the disease of esophageal cancer which caused him great pain and suffering and loss of earning capacity, and has been subjected to medical expenses.

51.     As a direct and proximate result of his exposure to asbestos containing materials and dust at the ALCOA facility Don Welch has suffered severe emotional distress, grief, fear, and mental anguish due to his disease.

## COUNT ONE - NEGLIGENCE

52.     Plaintiff adopts and incorporates by reference all relevant allegations contained in paragraphs 1 through 51 of the Complaint as if fully set out herein.

53.     Defendant knew, or in the exercise of reasonable care should have known, that persons working with or near asbestos products, or in close contact with them, such as Plaintiff, would or could come into contact with the asbestos containing materials and dust, which Defendant knew, or in exercise of ordinary care should have known, were health- and life-threatening.

54.     Defendant negligently, willfully, wantonly, recklessly, and with gross indifference for the rights of persons in Plaintiff's position omitted and failed to, among other things:

(a)     advise Plaintiff of the dangerous characteristics of their asbestos products;

(b)     provide Plaintiff with the knowledge about what would be reasonably safe and sufficient safeguards, including wearing protective apparel and monitoring equipment and not introducing work clothes into his home or personal environments, which could have been used to protect Plaintiff from the harmful exposure to their asbestos products;

(c)     place any warnings or, alternatively, adequate warnings, on their asbestos products or containers thereof to advise users of the dangers of exposure and of breathing asbestos fibers and dust;

(d)     package and contain their asbestos products in a manner to lessen or to eliminate the inhalation of asbestos fibers during the installation and removal thereof;

(e)     take reasonable precautions or to exercise reasonable care to publish, adopt, and communicate safety pl4ns and safe methods of handling, installing, and removing their asbestos products and Otherwise to recommend methods to improve the work environment; and

(f)     develop and distribute asbestos-free products or to properly design and construct asbestos products so as to avoid unreasonably and/or inherently dangerous release of asbestos fibers.

55.     Defendant ALCOA further negligently, willfully, wantonly, recklessly, and with gross indifference for the rights of persons in Plaintiffs position omitted and failed to, among other things

(a)     provide adequate safety measures and protection against deadly and life-threatening asbestos dust, despite Defendant's knowledge of the extreme risk of harm inherent to asbestos exposure;

(b)     adequately warn Plaintiff of the inherent dangers of asbestos contamination;

(c)     provide Plaintiff a safe place to work by failing to maintain the ambient and environmental conditions of the plant in proper and safe

conditions, thus increasing the risk that Plaintiff would be exposed to asbestos dust;

(d)     follow and adhere to relevant and applicable governmental statutes, regulations, and guidelines pertaining to asbestos and employees' and others' exposure to asbestos. Such failure constituted negligence per se at a minimum.

56.     Defendant's conduct was so reckless as to imply disregard for social obligations and/or demonstrated an entire want of care.

57.     As a proximate result of the negligence, gross negligence, recklessness, and gross indifference of Defendant, Plaintiff developed asbestos-related esophageal cancer due to his exposure to asbestos containing materials and dust at Defendant's facility without negligence or want of due care on his part.

## COUNT TWO - NEGLIGENCE PER SE

58.     The Plaintiff incorporate by reference the foregoing paragraphs 1-57 as though they were fully set forth herein.

59.     That during all times material and relevant herein, there were in force and effect numerous state and/or local statutes, ordinances and/or regulations which governed and regulated the activities of each Defendant, their employees, agents, and/or servants.

60.     That each Defendant, their employees, agents and/or servants, violated said state and/or local statutes, ordinances and/or regulations.

61.     That the Plaintiff herein was within a class of individuals for whom said statutes, ordinances, and/or regulations were designed to protect and safeguard.

62.     That in violating said statutes, ordinances, and/or regulations the Defendants and their employees were negligent per se.

## COUNT FOUR - NEGLIGENCE IN HIRING, TRAINING AND/OR
## SUPERVISON OF EMPLOYEES AND SUPERVISORS

71.    All of the above-referenced Plaintiffs incorporate by reference the foregoing paragraphs 1 through 70 as though they are fully set forth herein.

72.    That Defendant ALCOA herein hired, retained and otherwise employed individuals in order to perform the employer's obligations and duties including employees responsible for supervising and implementing the Asbestos Management Plans and other policies designed to keep individuals such as employees and Plaintiff from being exposed to asbestos fibers.

73.    That the Defendant ALCOA herein had a duty to hire employees and supervisors who were competent and who would otherwise perform their job functions and assignments in a reasonably safe manner and a duty to properly and adequately train its supervisors and employees in the proper and safe manner in which to perform their functions and assignments. Further, from the time that the Defendant recognized a risk of exposure to asbestos fibers the Defendant had a duty to hire employees and supervisors who would implement a program that would require that all employees wear special protective clothing and other safety measures, that would protect employees and individuals such as Plaintiff. .

74.    That the Defendant ALCOA was negligent, willful, wanton and grossly negligent and reckless in that it hired, retained and/or otherwise employed individuals who were not trained, competent, informed and who otherwise acted in an unreasonable and unsafe manner in the performance of their job functions and assignments, including but not limited to, their purchase, transportation, installation, handling, cutting, sawing,

fitting, repairing, demolishing, removal and/or packaging of asbestos and asbestos-containing materials.

75.    That the Defendant ALCOA was negligent, willful, wanton and grossly negligent and reckless in that it hired, retained and/or otherwise employed individuals who were not trained, not properly supervised or given adequate guidance or instructions as to how to implement the official company policies regarding educating their employees and other individuals regarding asbestos safety and exposure to asbestos fibers.  That the Defendant recognized that it should have one person at each location to oversee and manage their industrial hygiene program, but failed to hire such an individual or make anyone accountable to ensuring that the program was properly implemented for much of the relevant time herein.

76.    That the Defendant ALCOA was negligent, willful, wanton and grossly negligent and reckless in that it failed to properly train, inform, equip, monitor and supervise the activities of its employees and workers who were working in and/or around the Tennessee Operations.

77.    That as a direct and proximate result of the Defendant ALCOA's negligent, willful, wanton and grossly negligent and reckless hiring, training and/or supervision of its employees, agents and/or servants, the Plaintiff herein was exposed to asbestos fibers and other carcinogens, toxins, fumes and dust which caused his injuries.

### IV. Damages

78.    As a direct and proximate result of the acts and omissions on the part of ALCOA as set forth more fully above, the Plaintiff has sustained and is entitled to recover damages allowable under Tennessee law and the Tennessee wrongful death

statute including, but not limited to, loss of consortium and all damages described in T.C.A. § 20-5-113.

**WHEREFORE**, Plaintiff requests judgment against Defendants in the amount of Ten Million ($10,000,000.00) Dollars for compensatory damages and Ten Million ($10,000,000.00) Dollars for punitive damages.

Plaintiff also requests her reasonable costs in pursuing this action, post judgment interest, and such other and further relief as to which she may be entitled. Plaintiff demands a jury to try the issues of this case.

CAROLINE WELCH

By: _____

Gregory F. Coleman, Esq. (BPR No. 014092)
Adam A. Edwards, Esq. (BPR No. 023253)
Dunn MacDonald Coleman & Reynolds, P.C.
6204 Baum Drive
Knoxville, Tennessee 37919
(865)525-0505

# EXHIBIT 9

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| CAROLINE WELCH, | ) | |
| as surving Spouse and Next of Kin of | ) | |
| DONALD WELCH, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| ALCOA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL

Defendant Aloca Inc., by counsel, hereby gives notice of removal of the civil action captioned <u>Caroline Welch, as surviving Spouse and next of kin of Donald Welch, deceased</u>, Case No. L-15371, from the Circuit Court for Blount County, Tennessee to the United States District Court for the Eastern District of Tennessee at Knoxville. This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1441(a) and 1446. Furthermore, this Court has jurisdiction to adjudicate claims with respect to the parties with complete diversity and amounts in controversy in excess of $75,000 pursuant to 28 U.S.C. § 1332. The specific grounds for removal are as follows:

1.    Plaintiff Caroline Welch ("Welch") commenced this action by Complaint filed on July 21, 2006, in the Circuit Court for Blount County, Tennessee.

2.    The Complaint states claims for Negligence, Negligence Per Se, Failure to Warn, and Negligence in Hiring, Training and/or Supervision of Employees and Supervisors. It alleges that Donald Welch, who is identified as an employee of a contractor known as J.M. Forrester,

**EXHIBIT 9**

was injured as a result of his exposure to asbestos-containing products while working at the Alcoa facility located in Alcoa, Tennessee.

3.      Defendant Alcoa, Inc. ("Alcoa") was served with copies of the Summons and Complaint on July 27, 2006.

4.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served in this action are attached as Exhibit A.  *See* 28 U.S.C. § 1446(a).

5.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely and properly filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action is based." *See* 28 U.S.C. § 1446(b).

6.      According to the Complaint, Welch is a resident and citizen of Tennessee.

7.      Alcoa is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at 201 Isabella Street, Pittsburgh, Pennsylvania 15212.

8.      Welch seeks to recover from Alcoa compensatory damages in the amount of $10,000,000.00 and punitive damages in the amount of $10,000,000.00 for the allegedly asbestos-related disease and death of Donald Welch.

9.      There is complete diversity of citizenship between Welch and Alcoa, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Consequently, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

10.      Removal is appropriate because complete diversity of citizenship exists between Welch and Alcoa, the only defendant named in this action.

11.     Pursuant to 28 U.S.C. 1446(d), copies of this Notice of Removal are being served

on Welch's counsel and the Clerk of the Circuit Court of Blount County, Tennessee.

WHEREFORE, Alcoa respectfully requests that Case No. L-15371, pending in

the Circuit Court of Blount County, Tennessee, be removed to this Court.

Respectfully submitted this 27th day of July, 2005.

ALCOA INC.,

By: _____
       John A. Lucas (011198)
       John T. Winemiller (021084)
       **HUNTON & WILLIAMS, LLP**
       2000 Riverview Tower
       900 South Gay Street
       Knoxville, Tennessee 37902
       (865) 549-7700 (telephone)
       (865) 549-7704 (facsimile)

3

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 27, 2006, a copy of foregoing was filed in the United States

District Court for the Eastern District of Tennessee and was served upon the following via

United States mail, postage prepaid:

Gregory F. Coleman, Esq.
Adam A. Edwards, Esq.
  Dunn MacDonald Coleman &
Reynolds, P.C.
6204 Baum Drive
Knoxville, TN 37919
(865) 525-0505

4

# EXHIBIT 10

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 1 5 2006

FILED
CLERK'S OFFICE

**A CERTIFIED TRUE COPY**

OCT - 3 2006

ATTEST

FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

*DOCKET NO. 875*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)*

*(SEE ATTACHED SCHEDULE)*

*CONDITIONAL TRANSFER ORDER (CTO-268)*

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court
for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings
pursuant to 28 U.S.C. § 1407. *See* 771 F.Supp. 415 (J.P.M.L. 1991). Since that time, 81,426
additional actions have been transferred to the Eastern District of Pennsylvania. With the
consent of that court, all such actions have been assigned to the Honorable James T. Giles.

It appears that the actions on this conditional transfer order involve questions of fact that are
common to the actions previously transferred to the Eastern District of Pennsylvania and
assigned to Judge Giles.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation,
199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the
Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the
consent of that court, assigned to the Honorable James T. Giles.

This order does not become effective until it is filed in the Office of the Clerk of the United
States District Court for the Eastern District of Pennsylvania. The transmittal of this order to
said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition
with the Clerk of the Panel within this 15-day period, the stay will be continued until further
order of the Panel.

A TRUE COPY CERTIFIED TO FROM THE RECORD

DATED: 10.10.06

ATTEST:

DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

OCT - 3 2006

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**EXHIBIT 10**

Page 1 of 3

## SCHEDULE CTO-268 - TAG-ALONG ACTIONS
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| **ALABAMA NORTHERN** | |
| ALN 2  06-1016 | Julia Alford, et al. v. A.O. Smith Electrical Products Co., et al. |
| **CALIFORNIA NORTHERN** | |
| CAN 3  06-3287 | Joseph Kotarsky v. General Electric Co. |
| CAN 3  06-3288 | Carol Ann Winnett, et al. v. General Electric Co. |
| CAN 3  06-3724 | Kerry O'Brien, et al. v. General Electric Co., et al. |
| **INDIANA SOUTHERN** | |
| INS 1  06-831 | Kathleen Duchene v. C.E. Thurston & Sons, Inc., et al. |
| **KENTUCKY WESTERN** | |
| KYW 1  06-97 | Kenneth W. Bunch, Jr., etc. v. Cytec Fiberite, Inc. |
| **LOUISIANA EASTERN** | |
| ~~LAE 2  06-3738~~ | ~~Byron Granier, et al. v. Northrop Grumman Ship Systems, Inc., et al.~~ Opposed  9/29/06 |
| **MARYLAND** | |
| MD 1  06-1950 | Joseph A. Reed, et al. v. Owens-Corning Fiberglas Corp., et al. |
| **MAINE** | |
| ME 1  06-85 | Theodore B. Cote, et al. v. Metropolitan Life Insurance Co., et al. |
| **MINNESOTA** | |
| MN 0  06-2049 | Douglas H. McKillop, etc. v. Garlock Sealing Technologies, LLC, et al. |
| **MISSISSIPPI NORTHERN** | |
| MSN 1  06-211 | Willie B. Johnson v. John Crane, Inc., et al. |
| **MISSISSIPPI SOUTHERN** | |
| ~~MSS 1  06-660~~ | ~~Archie Lord v. Phillips 66 Co., et al.~~ Opposed 10/3/06 |
| ~~MSS 1  06-661~~ | ~~Joseph Newsome v. Phillips 66 Co., et al.~~ Opposed 10/3/06 |
| ~~MSS 1  06-662~~ | ~~Cleophus Smith v. Phillips 66 Co., et al.~~ Opposed 10/3/06 |
| MSS 1  06-668 | Larry Sparkman v. Sears, Roebuck & Co., et al. |
| MSS 1  06-686 | Herbert Lee Heyward v. Exxon Mobil Corp., et al. |
| MSS 1  06-687 | Oliver Walker, et al. v. Chicago Bridge & Iron Co., et al. |
| MSS 1  06-690 | Larry Gene Rhear, et al. v. Shell Oil Co., et al. |
| MSS 1  06-701 | Sammy Joe Bozeman v. Parker-Hannifin Corp., et al. |
| MSS 1  06-708 | Clyde Brumfield, Jr. v. Plastics Engineering Co., et al. |
| MSS 1  06-709 | Elwin Jackson Springs v. Ametek, Inc., et al. |
| MSS 1  06-717 | Robert J. Cupstid, Jr. v. Shell Oil Co., et al. |
| **NORTH CAROLINA EASTERN** | |
| NCE 2  06-15 | Cecil Clarence Craft, Jr., et al. v. A.W. Chesterton Co., et al. |
| NCE 2  06-18 | John Michael Nardi, et al. v. Aqua-Chem, Inc., et al. |
| NCE 4  06-119 | Helene A. Johnson, etc. v. Anchor Packing Co., et al. |
| NCE 4  06-127 | Gary W. Randolph, et al. v. Anchor Packing Co., et al. |

SCHEDULE CTO-268 - TAG-ALONG ACTIONS - MDL-875                                   Page 2 of 3

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| **NORTH CAROLINA EASTERN** | |
| NCE 4  06-145 | Patricia Wallace-Tilson, etc. v. Anchor Packing Co., et al. |
| NCE 4  06-148 | Robert Vaughn Scruggs, et al. v. Anchor Packing Co., et al. |
| NCE 5  06-210 | Alice F. Thompson, etc. v. Anchor Packing Co., et al. |
| NCE 5  06-228 | Elmer Lee Morgan , et al. v. Anchor Packing Co., et al. |
| NCE 5  06-242 | Marilyn R. Gillette, etc. v. 3M Co., et al. |
| NCE 5  06-249 | Charles Strahl, et al. v. Anchor Packing Co., et al. |
| **NORTH CAROLINA MIDDLE** | |
| NCM 1  06-617 | Paula Messer, etc. v. 3M Co., et al. |
| NCM 1  06-660 | George Dewey Mumford, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1  06-667 | Johnny Harold King, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1  06-668 | Ronald Lee Tolbert, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1  06-670 | William Thomas Ingram, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1  06-671 | Dale Ellis Weaver, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1  06-672 | Donnie Ray Edwards v. Aqua-Chem, Inc., et al. |
| NCM 1  06-676 | Carl Allison Hair, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCM 1  06-677 | David Eric Talbert, et al. v. Aqua-Chem, Inc., et al. |
| NCM 1  06-678 | Coy Ray Wiles, et al. v. Aqua-Chem, Inc., et al. |
| **NORTH CAROLINA WESTERN** | |
| NCW 1  06-208 | Joseph Coleman Christopher v. Aqua-Chem, Inc., et al. |
| NCW 1  06-209 | Ernest Eugene Lawing v. Aqua-Chem, Inc., et al. |
| NCW 1  06-210 | Malcolm Bruce Crittenden, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1  06-212 | Calvin Eugene McKee v. Aqua-Chem, Inc., et al. |
| NCW 1  06-213 | Leonard Kelly Carter v. Aqua-Chem, Inc., et al. |
| NCW 1  06-216 | James E. Gilstrap, et al. v. 3M Co., et al. |
| NCW 1  06-230 | Jerry Odell Hudgins, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1  06-231 | Jerry Lee Jackson, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1  06-232 | William David Stowe, Sr., et al. v. Aqua-Chem, Inc., et al. |
| **NEW MEXICO** | |
| NM 1  06-642 | William H. Monroe, Jr., etc. v. Burlington Northern & Santa Fe Railway Co. |
| **NEW YORK EASTERN** | |
| NYE 1  06-3279 | Leroy H. Webb, Jr. v. A.W. Chesterton Co., et al. |
| NYE 1  06-3280 | Barbara J. Bartley v. A.W. Chesterton Co., et al. |
| NYE 1  06-3404 | Clady J. Everhart v. A.W. Chesterton Co., et al. |
| NYE 1  06-3577 | George Smith, Jr. etc. v. A.W. Chesterton Co., et al. |
| NYE 1  06-3578 | George Collins v. A.W. Chesterton Co., et al. |
| **OHIO NORTHERN** | |
| OHN 1  06-10001 | Eugenio Panerio v. A-C Product Liability Trust, et al. |
| OHN 1  06-10002 | Charles E. Seeley v. A-C Product Liability Trust, et al. |
| **TENNESSEE EASTERN** | |
| TNE 3  06-286 | Caroline Welch, etc. v. Alcoa, Inc. |
| **TEXAS WESTERN** | |
| TXW 6  06-209 | Judith Ann Lawson, etc. v. Texas Lehigh Cement Co., et al. |

SCHEDULE CTO-268 - TAG-ALONG ACTIONS - MDL-875                    Page 3 of 3

DIST. DIV. C.A. #                    CASE CAPTION

VIRGINIA EASTERN
  VAE 2 06-8983            Norman E. Craft v. American Standard, Inc., et al.
  VAE 2 06-8984            Harry D. Powers v. American Standard, Inc., et al.
  VAE 2 06-8985            E.L. Wilson v. American Standard, Inc., et al.

WEST VIRGINIA NORTHERN
  WVN 1 06-95 ~~— — — — — Robert H. Choff, et al. v. Crown Beverage Packaging, Inc., et al.~~
                          Opposed 9/28/06

# EXHIBIT 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | ) ) ) | Civil Action No. MDL 875 |
| This Document Relates to: | ) ) ) | W.D.N.C. File No. |

## CIVIL ACTION COMPLAINT

HELEN NADINE CLIPPARD,

    Plaintiff,

       v.

A.W. CHESTERTON, INC., a
Massachusetts Corporation;

AMERICAN STANDARD, INC
a Delaware Corporation;

THE ANCHOR PACKING COMPANY,
a Delaware Corporation;

BAYER CROPSCIENCE, INC. f/k/a
AVENTIS CROPSCIENCE USA, INC.
f/k/a RHONE-POULENC AG COMPANY, INC.
f/k/a RHONE POULENC, INC. f/k/a
UNION CARBIDE AGRICULTURAL
PRODUCTS, INC. f/k/a
AMCHEM PRODUCTS, INC., a successor
To Benjamin Foster Company, a Delaware
Corporation;

BORG-WARNER CORPORATION by Its
Successor-in-interest to BORGWARNER
MORSE TEC INC., A Delaware Corporation;

CERTAINTEED CORPORATION, a
Delaware Corporation;

DAIMLERCHRYSLER CORPORATION

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**EXHIBIT 11**

f/k/a CHRYSLER CORPORATION, a )
Delaware Corporation; )
)
DANIEL INTERNATIONAL CORPORATION )
f/k/a FLUOR CAROLINA, INC., a Foreign )
Corporation: )
)
FORD MOTOR COMPANY, )
A Michigan Corporation; )
)
FLUOR ENTERPRISES, INC., successor-in- )
Interest corporation to a merger between )
Fluor Construction Corporation and Daniel )
Construction Company, a Foreign Corporation; )
)
GARLOCK SEALING TECHNOLOGIES, LLC )
f/k/a GARLOCK, INC., Independently, and as )
Successor in Interest to BELMONT PACKING )
& RUBBER COMPANY, a Delaware )
Corporation; )
)
GENERAL ELECTRIC COMPANY, a )
New York Corporation; )
)
GENERAL MOTORS CORPORATION, )
A Delaware Corporation; )
)
GOODRICH CORPORATION f/k/a )
THE B.F. GOODRICH COMPANY, )
a New York Corporation; )
)
THE GOODYEAR TIRE & RUBBER )
COMPANY, an Ohio Corporation; )
)
JOHN CRANE, INC. f/k/a JOHN CRANE )
PACKING COMPANY, a Delaware )
Corporation; )
)
3M COMPANY a/k/a )
MINNESOTA MINING & MANUFACTURING )
COMPANY, a Delaware Corporation; )
)
METROPOLITAN LIFE INSURANCE )
COMPANY, A New York Corporation; )
)
MANCHESTER TANK & EQUIPMENT, )
Individually and as Successor to )
Buckeye Boiler Co., an Ohio Corporation; )

NATIONAL SERVICES INDUSTRIES, INC )
F/K/A NSI ENTERPRISES, INC. )
F/K/A NORTH BROTHERS, INC., )
a Georgia corporation; )
  )
OWENS-ILLINOIS, INC., a Delaware )
Corporation; )
  )
SEARS, ROEBUCK AND COMPANY )
 a/k/a SEARS, a New York Corporation; )
  )
UNION CARBIDE CORPORATION; )
a New York corporation; )
  )
UNIROYAL HOLDINGS, INC., successor to )
UNIROYAL INC., a New Jersey Corporation; )
  )
VIACOM, INC., Successor in interest )
By merger into and with CBS CORPORATION )
f/k/a WESTINGHOUSE ELECTRIC CORPOR- )
ATION, a Pennsylvania Corporation, )
  )
                 Defendants. )

This action is appropriate for inclusion in the coordinated proceeding as an asbestos related action. This action is further appropriate for treatment as a "tag-along" action as required by 28 U.S.C. 1407, given the transfer of asbestos-related personal injury actions by the Judicial Panel on Multi-District Litigation to the Eastern District of Pennsylvania.

NOW COMES the Plaintiff, HELEN CLIPPARD, a citizen and resident of North Carolina, and sues the Defendants and alleges as follows:

1.    (a)    Jurisdiction is founded on diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00). As is evidenced by the caption of the instant Complaint

which is specifically incorporated herein, the Defendants are corporations incorporated under the laws of various states as stated in said caption and having their principal places of business in states other than North Carolina and which are amenable to jurisdiction in the Courts of North Carolina by virtue of their respective contacts with the State of North Carolina and/or their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of North Carolina. At times relevant hereto, each foreign corporation and/or its predecessors mined, manufactured, processed, produced, imported, converted, compounded, supplied, provided, distributed, disturbed and/or retailed substantial amounts of asbestos and asbestos-containing materials and/or dust protection equipment which were sold, distributed and used in North Carolina.

    (b)    Schedule A attached hereto identifies the asbestos exposed individual and at least one doctor who diagnosed the injured plaintiff with an asbestos related disease. Plaintiff was formerly married to Clyde Curtis Clippard, who brought asbestos home on his clothes, into their vehicles and home. References to Plaintiff's job sites below should be read to include Plaintiff's husband's job sites. References to Plaintiff's employer should be read to include Plaintiff's husband's employers.

FOR A FIRST CAUSE OF ACTION

2.    (a)    Defendants, and each of them, are, or at times relevant hereto were miners, manufacturers, processors, producers, distributors, importers, converters, compounders, and/or retailers of asbestos and asbestos-containing materials or were installers or distributors of asbestos-containing materials or dust protective equipment.

    (b)    Defendant A.W. CHESTERTON, INC. is a corporation duly organized and existing under the laws of the State of Massachusetts which has done or

4

is currently doing business in the State of North Carolina. At all times material hereto, Defendant A.W. CHESTERTON, INC. mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(c)    Defendant AMERICAN STANDARD, INC is a corporation duly organized and existing under the laws of the State of Delaware, which has done or is currently doing business in the State of North Carolina. At all times material hereto, Defendant AMERICAN STANDARD, INC. mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(d)    Defendant THE ANCHOR PACKING COMPANY is a corporation duly organized and existing under the laws of the State of Delaware which has done or is currently doing business in the State of North Carolina. At all times material hereto, Defendant THE ANCHOR PACKING COMPANY mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(e)    Defendant BAYER CROPSCIENCE, INC. f/k/a AVENTIS CROPSCIENCE USA, INC. f/k/a RHONE-POULENC AG CO. INC. f/k/a RHONE POULENC, INC. f/k/a UNION CARBIDE AGRICULTURAL PRODUCTS, INC. f/k/a AMCHEM PRODUCTS, INC., a successor to Benjamin Foster Company, is a corporation duly organized and existing under the laws of the State of Delaware, which

5

has done or is currently doing business in the State of North Carolina. At all times

material hereto, Defendant BAYER CROPSCIENCE, INC. f/k/a AVENTIS

CROPSCIENCE USA, INC. f/k/a RHONE-POULENC AG CO. INC. f/k/a RHONE

POULENC, INC. f/k/a UNION CARBIDE AGRICULTURAL PRODUCTS, INC. f/k/a

AMCHEM PRODUCTS, INC., a successor to Benjamin Foster Company, mined,

manufactured, produced, distributed, and/or sold asbestos products, either directly or

indirectly, to the employer(s) of the Plaintiff or to such other entities so that these

materials were caused to be used on Plaintiff's job sites.

      (f)     Defendant BORG-WARNER CORPORATION by Its Successor-in-

interest to BORGWARNER MORSE TEC INC. is a corporation duly organized and

existing under the laws of the State of Delaware which has done or is currently doing

business in the State of North Carolina. At all times material hereto, Defendant BORG-

WARNER CORPORATION by Its Successor-in-interest to BORGWARNER MORSE

TEC INC. mined, manufactured, produced, distributed, and/or sold asbestos products,

either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so

that these materials were caused to be used on Plaintiff's job sites.

      (g)     Defendant CERTAINTEED CORPORATION is a corporation duly

organized and existing under the laws of the State of Delaware, which has done or is

doing business in the State of North Carolina. At all times material hereto, Defendant

CERTAINTEED CORPORATION mined, manufactured, produced, distributed, and/or

sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or

to such other entities so that these materials were caused to be used on Plaintiff's job

sites.

(h)   Defendant DAIMLERCHRYSLER CORPORATION f/k/a CHRYSLER CORPORATION is a corporation duly organized and existing under the laws of the State of Delaware which has done or is currently doing business in the State of North Carolina. At all times material hereto, Defendant DAIMLERCHRYSLER CORPORATION mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(i)   Defendant DANIEL INTERNATIONAL CORPORATION f/k/a FLUOR CAROLINA, INC, is a corporation duly organized and existing under the laws of a state other than the State of North Carolina which has done or is currently doing business in the State of North Carolina.   At all times material hereto, Defendant DANIEL INTERNATIONAL CORPORATION f/k/a FLUOR CAROLINA, INC. mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites, and/or had contracting units and/or employees perform work in the vicinity of the Plaintiff that caused respirable asbestos dust to be generated and breathed by Plaintiff.

(j)   Defendant FLUOR ENTERPRISES, INC, Successor-in-Interest Corporation to a Merger between Fluor Construction Corporation and Daniel Construction Company is a corporation duly organized and existing under the laws of a state other than the State of North Carolina which has done or is currently doing business in the State of North Carolina.   At all times material hereto, Defendant FLUOR ENTERPRISES, INC., Successor-in-interest Corporation to a Merger between Fluor Construction Corporation and Daniel Construction Company, mined,

7

manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites, and/or had contracting units and/or employees perform work in the vicinity of the Plaintiff that caused respirable asbestos dust to be generated and breathed by Plaintiff.

(k)    Defendant FORD MOTOR COMPANY is a corporation duly organized and existing under the laws of the State of Michigan which has done or is currently doing business in the State of North Carolina. At all times material hereto, Defendant FORD MOTOR COMPANY mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(l)    GARLOCK SEALING TECHNOLOGIES, LLC. f/k/a GARLOCK, INC., Independently, and as Successor in Interest to BELMONT PACKING & RUBBER COMPANY, is a corporation duly organized and existing under the laws of the State of Delaware, which has done or is doing business within the State of North Carolina. At all times material hereto, Defendant GARLOCK SEALING TECHNOLOGIES, LLC f/k/a GARLOCK, INC., Independently, and as Successor in Interest to BELMONT PACKING & RUBBER COMPANY, mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(m)    Defendant GENERAL ELECTRIC COMPANY is a corporation duly organized and existing under the laws of the State of New York, which has done or is

8

currently doing business within the State of North Carolina. At all times material hereto, Defendant GENERAL ELECTRIC COMPANY mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites and/or had contracting units and/or employees perform work in the vicinity of the Plaintiff that caused respirable asbestos dust to be generated and breathed by Plaintiff.

(n)     Defendant GENERAL MOTORS CORPORATION is a corporation duly organized and existing under the laws of the State of Delaware which has done or is currently doing business in the State of North Carolina. At all times material hereto, Defendant GENERAL MOTORS CORPORATION mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(o)     Defendant GOODRICH CORPORATION f/k/a THE B.F. GOODRICH COMPANY is a corporation duly organized and existing under the laws of State of New York, which has done or is doing business in the State of North Carolina. At all times material hereto, Defendant GOODRICH CORPORATION f/k/a THE B.F. GOODRICH COMPANY mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(p)     Defendant THE GOODYEAR TIRE & RUBBER COMPANY is a corporation duly organized and existing under the laws of State of Ohio, which has done

9

or is doing business in the State of North Carolina. At all times material hereto,

Defendant THE GOODYEAR TIRE & RUBBER COMPANY mined, manufactured,

produced, distributed, and/or sold asbestos products, either directly or indirectly, to the

employer(s) of the Plaintiff or to such other entities so that these materials were caused

to be used on Plaintiff's job sites.

     (q)    Defendant JOHN CRANE, INC. f/k/a JOHN CRANE PACKING

COMPANY is a corporation duly organized and existing under the laws of the State of

Delaware, which has done or is currently doing business within the State of North

Carolina. At all times material hereto, Defendant JOHN CRANE, INC. f/k/a JOHN

CRANE PACKING COMPANY mined, manufactured, produced, distributed, and/or sold

asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to

such other entities so that these materials were caused to be used on Plaintiff's job

sites.

     (r)    Defendant MANCHESTER TANK & EQUIPMENT, Individually and

as Successor to BUCKEYE BOILER CO., is a corporation duly organized and existing

under the laws of the State of Ohio, which has done or is currently doing business within

the State of North Carolina. At all times material hereto, Defendant MANCHESTER

TANK & EQUIPMENT, Individually and as Successor to BUCKEYE BOILER CO.

mined, manufactured, produced, distributed, specified and/or sold asbestos products,

either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so

that these materials were caused to be used on Plaintiff's job sites and/or had

contracting units and/or employees perform work in the vicinity of the Plaintiff that

caused respirable asbestos dust to be generated and breathed by Plaintiff.

(s)   Defendant 3M COMPANY a/k/a MINNESOTA MINING &
MANUFACTURING COMPANY is a corporation duly organized and existing under the
laws of the State of Delaware which was or is currently doing business within the State
of North Carolina. At all times material hereto, Defendant 3M COMPANY a/k/a
MINNESOTA MINING & MANUFACTURING COMPANY mined, manufactured,
produced, distributed, and/or sold asbestos products and masks and/or respiratory
devices for dust protection, either directly or indirectly, to the employer(s) of the Plaintiff
or to such other entities so that these materials were caused to be used on Plaintiff's job
sites.

(t)   Defendant METROPOLITAN LIFE INSURANCE COMPANY is a
corporation duly organized and existing under the laws of a State other than the State of
North Carolina which has done or is doing business within the State of North Carolina.

(u)  Defendant NATIONAL SERVICES INDUSTRIES f/k/a NSI
ENTERPRISES, INC f/k/a NORTH BROTHERS, INC. is a corporation duly organized
and existing under the laws of the State of Georgia, which has done or is doing
business within the State of North Carolina. At all times material hereto, Defendant
NATIONAL SERVICES INDUSTRIES, INC f/k/a NSI ENTERPRISES, INC. f/k/a NORTH
BROTHERS, INC. mined, manufactured, produced, distributed, specified and/or sold
asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to
such other entities so that these materials were caused to be used on Plaintiff's job sites
and/or performed work in the vicinity of the Plaintiff that caused respirable asbestos dust
to be generated and breathed by Plaintiff.

(v)   Defendant OWENS-ILLINOIS, INC. is a corporation duly organized
and existing under the laws of the State of Ohio which has done or is doing business

11

within the State of North Carolina. At all times material hereto, Defendant OWENS-ILLINOIS, INC. mined, manufactured, produced, distributed, and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(w)     Defendant SEARS, ROEBUCK AND COMPANY a/k/a SEARS is a corporation duly organized and existing under the laws of the State of New York, which has done or is currently doing business within the State of North Carolina. At all times material hereto, Defendant SEARS, ROEBUCK AND COMPANY a/k/a SEARS mined, manufactured, produced, distributed, specified and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(x)     Defendant, UNION CARBIDE CORPORATION, is a corporation duly organized and existing under the laws of a State of New York, which has done or is currently doing business within the State of North Carolina. At all times material hereto, defendant, UNION CARBIDE CORPORATION, mined, manufactured, produced, distributed, specified and/or sold asbestos products, either directly or indirectly to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites and/or performed work in the vicinity of the Plaintiff that caused respirable asbestos dust to be generated and breathed by Plaintiff.

(y)     Defendant UNIROYAL HOLDINGS, INC., successor to UNIROYAL INC. is a corporation duly organized and existing under the laws of the State of New Jersey, which has done or is currently doing business within the State of North Carolina. At all times material hereto, Defendant UNIROYAL HOLDINGS, INC., successor to UNIROYAL, INC. mined, manufactured, produced, distributed, and/or sold asbestos

12

products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites.

(z)    Defendant VIACOM, INC., Successor-in-interest by merger into and with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION is a corporation duly organized and existing under the laws of the State of Pennsylvania, which was or is currently doing business within the State of North Carolina. At all times material hereto, Defendant VIACOM, INC., Successor-in-interest by merger into and with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION, mined, manufactured, produced, distributed, specified and/or sold asbestos products, either directly or indirectly, to the employer(s) of the Plaintiff or to such other entities so that these materials were caused to be used on Plaintiff's job sites and/or performed work in the vicinity of the Plaintiff that caused respirable asbestos dust to be generated and breathed by Plaintiff.

3.    The Defendants and/or their predecessors in interest, acting through their agents, servants and/or employees, caused and have caused in the past certain asbestos, asbestos-containing materials and asbestos protective equipment to be placed in the stream of interstate commerce with the result that asbestos and asbestos-containing materials came to be used by workers within states in which Plaintiff was exposed and/or performed work in the vicinity of the Plaintiff that caused respirable asbestos dust to be generated and breathed by Plaintiff.

4.    The employment history, to the extent possible at this time, of the injured Plaintiff and her former husband are attached here as Schedule B. Her exposure was a proximate cause of the Plaintiff's contraction of an asbestos-related disease.

13

5.    Each of the Defendants named in this lawsuit (except 3M and METROPOLITAN LIFE INSURANCE COMPANY), or their predecessors, mined, manufactured, processed, produced, imported, converted, specified, distributed, and/or sold said asbestos and asbestos products to which the Plaintiff was exposed during her and her former husband's work career as described herein in Paragraph 4 and/or had contracting units or employees working at Plaintiff's job sites where activities caused the generation of respirable asbestos dust which was breathed by the Plaintiff.

6.    During the course and scope of her employment, Plaintiff was exposed to asbestos and asbestos-containing materials as described herein above, which exposure directly and proximately caused Plaintiff to develop an asbestos-related disease.

7.    The illnesses and disabilities of the Plaintiff were a direct and proximate result of the negligence, recklessness and willfulness of the Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care, should have known, that the asbestos and asbestos-containing materials were deleterious, poisonous and highly harmful to Plaintiff's body, lungs, respiratory system, skin and health, the Defendants nonetheless:

(a)    Failed to advise Plaintiff of the dangerous characteristics of their asbestos and asbestos-containing products;

(b)    Failed or omitted to provide the Plaintiff with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if, in truth, they were in any way able to protect them from being poisoned and disabled as they were exposure to such deleterious and harmful asbestos-containing products;

14

(c)     Failed and omitted to place any warnings or sufficient warning on their containers of said asbestos and asbestos materials to warn the handlers thereof of the dangers to health in coming in contact with said asbestos and asbestos-containing materials;

(d)     Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing said asbestos and asbestos-containing materials;

(e)     Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to her health in coming in contact with and breathing said asbestos and asbestos related materials;

(f)     Did not recommend methods to improve the work environment with regard to Plaintiff's exposure to asbestos and asbestos-related products;

(g)     Did not adequately test their products and did not develop alternative products;

(h)     Continued to use and sell a known cancer-causing product, to-wit asbestos, even though the defendants knew, or in the exercise of ordinary care should have known, that asbestos was a cancer causing product;

(i)     After discovering that the asbestos exposure caused a progressive lung disease, the Defendants failed to warn the Plaintiff, and did not inform the Plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this Complaint;

(j)     Were otherwise negligent.

8.     The injuries of Plaintiff are also a direct and proximate result of 3M's negligence in placing into the stream of commerce respiratory devices defective in

15

design and inadequate for the purposes for which they were intended, namely preventing the inhalation of dust, including asbestos dust, generated from construction and/or insulation activities.

9.    3M knew or should have known that workers would use and rely upon their respiratory devices at sites where asbestos materials were commonly and extensively used which created substantial and constant quantities of dust and that their respiratory devices would provide inadequate protection against the inhalation of asbestos dust.

10.    Furthermore, 3M was negligent for failing to warn and/or properly instruct workers regarding the inadequacies of its respiratory devices for preventing the inhalation of asbestos dust.

<u>FOR A SECOND CAUSE OF ACTION</u>

11.    Plaintiff hereby incorporates by reference Paragraphs one (1) through ten (10), inclusive, as if the same were hereto set forth at length.

12.    The Defendants, and each of them, impliedly warranted that their products or materials at issue were of good and merchantable quality and fit for their intended use and the Plaintiff relied on said warranty.

13.    The implied warranty made by the Defendants, and each of them, that its materials at issue were of good and merchantable quality and safe for its particular intended use, was breached and that certain harmful, poisonous and deleterious asbestos and asbestos-related substances were given off into the atmosphere wherein the Plaintiff carried out her duties with the result that the Plaintiff inhaled and ingested harmful asbestos and asbestos-related substances.

14.   As a direct and proximate result of the breach of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff developed an illness, to-wit: asbestosis and/or other asbestos-induced diseases and the Plaintiff was damaged as set out herein.

<u>FOR A THIRD CAUSE OF ACTION</u>

15.   Plaintiff hereby incorporates by reference Paragraphs one (1) through fourteen (14), inclusive, as if the same were hereto set forth at length.

16.   Plaintiff, and others in her position, was working in close proximity to the asbestos and asbestos-related products of the Defendants or asbestos dust generated or not prevented by the Defendants, and each of them, and Plaintiff's presence and others in their position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

17.   The Defendants have possessed since 1929 medical and scientific data which clearly indicates that the asbestos and asbestos-containing products were hazardous to the health and safety of the Plaintiff and others in the Plaintiff's positions. Despite such knowledge and the medical and scientific data possessed by them and prompted by pecuniary motives, the Defendants, and each of them, individually and collectively, willfully, deliberately, maliciously, and callously ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity to prevent their exposure to the asbestos products of said Defendants. As a direct result, the Plaintiff was severely damaged as set forth below.

18.   From 1929 through the 1970's, the Defendants had actual knowledge of the dangers of asbestos exposure but, nevertheless, deliberately, intentionally and

willfully failed to act upon and withheld from the public the scientific and medical data in their possession regarding such dangers, thus denying Plaintiff of the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations and avoiding further dust exposure. The specifics which support an award of punitive damages to the Plaintiff are represented, in part, by the following:

(a)      Failed to warn prior users even as late as the 1970's when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)      Issued no recall type letters to prior users even to the date of filing of the Complaint;

(c)      Manipulated the medical data and reports concerning the hazards of asbestos before such reports were released to the medical professions;

(d)      Frustrated the publication of articles and literature from the 1930's through at least 1976;

(e)      Working through the American Textile Institute, labeled Dr. Irving Selikoff a "dangerous man" and embarked upon a concerted effort to denounce Dr. Selikoff's findings regarding the hazards of asbestos and thereby prevent the public from being alerted to those hazards;

(f)      Fought to exclude asbestosis and asbestos-induced cancers from state worker's compensation laws, fearing such inclusion would lead to discovery by workers of the hazards of asbestos and claims resulting therefrom;

(g)      Sought methods to defeat worker's compensation and other claims of asbestos workers who suffered from illnesses or disease from the use of and exposure to their asbestos products and the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

18

(h)      Attempted to discredit scientists, doctors, writers and medical literature who or which indicated, demonstrated or established a relationship between illness and disease from the use of and exposure to their asbestos products and the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(i)      Refused to conduct research on the relationship between asbestos exposure and disease, acting with pecuniary motives of profit at the expense of human lives;

(j)      Sought to create favorable publicity about asbestos products for pecuniary motives when they knew of their risks and dangers;

(k)      Concealed the existence of tests, data, literature and medical reports regarding the causal relationship of asbestos to mesothelioma, asbestosis, scarred lungs, respiratory disorders, cancer and other illnesses;

(l)      Despite the urging of medical personnel, refused to authorize testing and research involving the relationship of illness and disease to exposure, use of and inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of their asbestos products, fearing adverse publicity would affect the highly profitable market of asbestos sales.

19.      The acts of the Defendants, and each of them, as hereinabove set forth were fraudulent, wanton and willful and done with malice in disregard of the rights and safety of Plaintiff and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials upon the body of human beings, including Plaintiff and others similarly situated, and even though forewarned of said dangers and

further after having been forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material or defective dust protection equipment with full knowledge that the products were being used and would be used in the future to the detriment of the health of Plaintiff and others similarly situated and Plaintiff is, therefore, entitled to punitive damages.

20.     As a direct and proximate result of the negligence, carelessness, gross negligence, willful and wanton misconduct, breach of warranty, misrepresentations, and willful omissions of the Defendants, Plaintiff was caused to contract diseases and injuries to her body systems, lungs, respiratory system, heart and damage to various organs of her body, including injury to tissue and bone, such as but not limited to asbestosis, scarred lungs, respiratory disorders and other injuries, causing her pain and suffering and both mental and physical anguish.

21.     As a direct and proximate result of the negligence, carelessness, gross negligence, willful misconduct, breach of warranty, misrepresentations, and willful omissions of the Defendants, Plaintiff has been damaged and is entitled to compensatory and punitive damages.

FOR A FOURTH CAUSE OF ACTION - NEGLIGENT TESTING/LIABILITY TO
    THIRD PERSONS FOR NEGLIGENT PERFORMANCE OF UNDERTAKING
            AGAINST METROPOLITAN LIFE INSURANCE CO.

22.     Plaintiff hereby incorporates by reference Paragraphs one (1) through twenty-one (21), inclusive, as if the same were hereto set forth at length.

23.     Defendant Metropolitan Life Insurance Co. through its Policyholders Service Bureau undertook duties owed by the asbestos producing defendants to the

plaintiff by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation, the duties

      (a)     to test fully and adequately for health risks concomitant to the normal and intended use of their products; and,

      (b)     to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan Life knew or should have known that it was providing testing services of the ultimate protection of third persons, including the Plaintiff.

     24.     In both conducting said tests and in publishing their alleged results, Metropolitan Life failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. Metropolitan Life also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

     25.     The Plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan Life's testing and information dissemination, the results of which Metropolitan Life published in leading medical journals.

     26.     As a direct and proximate result of Metropolitan Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so, (i) the risk of harm to the plaintiff from asbestos exposure were increased; and (ii) the plaintiff suffered the injuries described below.

     27.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing

such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the asbestos producing defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metropolitan Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Plaintiff, and, as a proximate cause, he suffered damaged.

## DAMAGES

28.     As a result of the development of asbestosis and/or other asbestos induced diseases, Plaintiff has suffered and sustained very serious injuries to her person requiring medical treatment.

29.     Plaintiff alleges that, as a result of the conduct of the defendants, her injuries and illnesses are permanent in nature and that she will be forced to suffer for the remainder of her life and that, among other damages, her enjoyment of life has been impaired.

30.     Plaintiff alleges that as a result of the aforesaid illnesses, she has been forced to incur amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat her illnesses as aforesaid.

31.     On account of the fraudulent, malicious and willful and wanton conduct of the defendants, the Plaintiff is entitled to recover punitive damages from each of the defendants.

WHEREFORE, Plaintiff prays that the defendants, and each of them, be cited to appear and answer herein as the law directs, and that upon final hearing hereof, plaintiff

recovers judgment of and from the defendants, and each of them, jointly and severally, for their damages as alleged in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) for general, compensatory and special damages; plus a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) for punitive damages; for medical expenses in an amount to be shown upon the trial hereof; together with their costs and disbursements herein, and interest on said judgment from the date of filing until paid as by law provided, for costs of this action and such other and further relief as to which they may be entitled.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON THE ISSUES TRIABLE OF RIGHT BY A JURY.

DONALDSON & BLACK, P.A.
Attorneys for Plaintiff


By:    /s/Janet Ward Black
Janet Ward Black
NC Bar No. 12869
208 W. Wendover Avenue
Greensboro, North Carolina 27401
Tel. No. 336/273-3812
jwblack@donaldsonandblack.com


DATE:  March 14, 2006

23

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

<u>DEFENDANTS LIST</u>

A.W. Chesterton, Inc.
By and Through Its Registered Agent:
C.T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

American Standard, Inc.
c/o Its Registered Agent:
C.T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

The Anchor Packing Company
c/o Its Registered Agent
Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Bayer Cropscience, Inc. f/k/a
Aventis CropScience USA, Inc. f/k/a
Rhone-Poulenc AG Company, Inc., f/k/a
Rhone Poulenc, Inc. f/k/a
Union Carbide Agricultural Products, Inc.
f/k/a Amchem Products, Inc., a Successor
in interest to Benjamin Foster Company
By and Through Its Registered Agent:
CT Corporation System
111 Eighth Avenue
New York, NY 10011

Borg-Warner Corporation by its Successor-in-interest
BorgWarner Morse TEC Inc.
c/o Its Registered Counsel or Managing Agent
3850 Hamlin Rd.
Auburn Hills, MI 48326

CertainTeed Corporation
By and Through Its Registered Agent:
C.T. Corporation System
225 Hillsborough Street

24

Raleigh, NC 27603

Daimlerchrysler Corporation
f/k/a Chrysler Corporation
c/o Its Registered Agent
C.T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

Daniel International Corporation
f/k/a Fluor Carolina, Inc.
c/o John Reynolds, Registered Agent
100 Fluor Daniel Drive
Greenville, SC 29607

Fluor Enterprises, Inc.,
Successor-in-Interest corporation to a
Merger between Fluor Construction
Corporation and Daniel Construction Company
c/o Its Registered Agent
National Registered Agents, Inc.
120 Penmarc Drive, Suite 118
Raleigh, NC 27603

Ford Motor Company
c/o Its Registered Agent
C.T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

Garlock Sealing Technologies, LLC
f/k/a Garlock, Inc., Independently and
as successor in interest to Belmont
Packing & Rubber Company
By and Through Its Registered Agent:
C.T. Corp. System
225 Hillsborough Street
Raleigh, NC 27603

General Electric Company
By and Through Its Registered Agent:
C.T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

General Motors Corporation
c/o Its Registered Agent
C.T. Corporation System

25

225 Hillsborough Street
Raleigh, NC 27603

Goodrich Corporation f/k/a
The B. F. Goodrich Company
c/o Its Registered Agent
Corporation Service Company
327 Hillsborough Street
Raleigh, NC 27603

Goodyear Tire & Rubber Company
c/o Its Registered Agent:
Corporation Service Company
327 Hillsborough Street
Raleigh, NC 27603

John Crane, Inc. f/k/a John Crane Packing Company
By and Through Its Registered Agent:
C.T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

Metropolitan Life Insurance Company
c/o Chief Counsel, Legal Department
One Madison Avenue
New York, NY 10010-3690

Manchester Tank & Equipment
Individually and as Successor to
Buckeye Boiler Co.
c/o Its Registered Agent
C. T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

3M COMPANY
a/k/a Minnesota Mining & Manufacturing Co.
By and Through Its Registered Agent:
C.T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

National Services Industries, Inc.
f/k/a NSI Enterprises, Inc.
f/k/a North Brothers, Inc.
By and Through Its Registered Agent:
Corporation Service Company
327 Hillsborough Street

26

Raleigh, NC 27603

Owens-Illinois, Inc.
c/o Managing Agent
One Seagate
Toledo, OH 43666

Sears, Roebuck and Company
a/k/a Sears
c/o Its Registered Agent
C. T. Corporation System
225 Hillsborough Street
Raleigh, NC. 27603

Union Carbide Corporation
By and Through Its Registered Agent:
C.T. Corporation System
225 Hillsborough Street
Raleigh, NC 27603

Uniroyal Holdings, Inc., successor to Uniroyal, Inc.
By and Through Its Vice President and General Counsel
Robert D'Angelo
70 Great Hill Road
Naugatuck, CT 06770

Viacom, Inc., Successor-in-Interest by
Merger into and with CBS Corporation f/k/a
Westinghouse Electric Corporation
By and Through Its Registered Agent:
Michael D. Fricklas
1515 Broadway
New York, NY 10036

## SCHEDULE A

| Plaintiff Name | Disease/Diagnosis Date | Doctor |
|---|---|---|
| Helen Nadine Clippard | Asbestosis, 03/18/2003 | John Marvin Linster, M.D. |

## SCHEDULE B

Plaintiff-Worker Employment History
Asbestos Exposure-Worksite Information

NAME              HELEN NADINE CLIPPARD

ADDRESS:          134 Cannon Road
                  Stanley, NC 28164

OCCUPATION:       household exposure through Clyde C. Clippard, sewing, knitter,
                  maintenance

EMPLOYMENT/WORKSITE          APPROXIMATE DATES

See Attached Preliminary Work History of Plaintiff

RELATED ASBESTOS LITIGATION

                  None

SMOKING HISTORY

                  Up to 2-1/2 ppd from 1956-1962

PRODUCTS CONTAINING ASBESTOS

                  pipecovering
                  block
                  cements
                  plasters
                  gaskets
                  cloth
                  rope
                  tape
                  yarn
                  roofing products
                  fireproofing
                  packing
                  pipe
                  brakes
                  clutches

DEPENDENTS        None

## WORK HISTORY OF HELEN N. CLIPPARD

29

| DATES | EMPLOYERS | JOBSITES | JOB DUTIES |
|---|---|---|---|
| 1953 | Carolina Glove Co.<br>Conover, NC | Balls Creek Mill<br>Bald Creek/Catawba, NC | sewer |
| 1953-<br>1957 | housewife / college student | | |
| 1957-<br>1961 | Aladdin Knit Mills<br>St. Louis, MO | Mill<br>- Maiden, NC<br>Mill<br>- Bessemer City, NC | knitter |
| 1963 | Dallas Sports Knitting Co.<br>Ware Shoals, SC | American Knit mill<br>Gastonia, NC | knitter |
| 1963-<br>1970 | housewife / college student | | |
| 1964 | Gibbs Industries Inc<br>Lincolnton, NC | North State Knitting Mill<br>Lincolnton, NC | knitter |
| 1970 | Harris Teeter<br>Charlotte, NC | grocery store<br>Charlotte, NC | cosmetologist |
| 1971 | Gail's Beauty Shop<br>Alexis, NC | Beauty Shop<br>Alexis/Mt. Holly, NC | cosmetologist |
| 1971 | Jackie's Styling Lounge<br>Gastonia, NC | Beauty Shop<br>Gastonia, NC | cosmetologist |
| 1971-<br>1975 | housewife | | |
| 1972-<br>1974 | Bangor America & Subs<br>Woonsocket, RI | Edmos Mill<br>Lincolnton, NC | Knitter |
| 1974 | CMC Assets Sales Co.<br>Los Angeles, CA | | |
| 1974-<br>1975 | Union of Needletrades<br>Atlanta, GA | | Union Health<br>Insurance |
| 1975 | Standard Textile Mills<br>Paw Creek, NC | Mill<br>Paw Creek, NC | knitter |
| 1976- | Bangor America & Subs | Edmos Mill | knitter |

30

| | | | |
|---|---|---|---|
| 1979 | Woonsocket, RI | Lincolnton, NC | |
| 1977-1980 | Union of Needletrades Atlanta, GA | | Union Health Insurance |
| 1979-1980 | Stedman Mills Winston Salem, NC | Mill Gastonia, NC | knitter |
| 1980 | Adventure Knits Inc. Star, NC | Mill Star, NC | knitter |
| 1980 | Krislex Knits Inc. Lincolnton, NC | Mill Lincolnton, NC | knitter |
| 1980-1982 | housewife | | |
| 1984-1997 | Freightliner Corp. Portland, OR | Plant Mount Holly, NC | maintenance |

Retired 1997.

HELEN NADINE CLIPPARD exposed through
WORK HISTORY OF CLYDE CURTIS CLIPPARD (dec.)

### Clyde C. Clippard
#### Work History

| Dates | Employer | Job Site(s) | Job Description |
|---|---|---|---|
| 01/01/71 - 12/31/92 | Self-Employed | Curt's Garage - Stanley, NC | Mechanic |
| 01/01/68 - 12/31/70 | Poteats Garage | Stanley, NC | Mechanic |
| 01/01/61 - 12/31/65 | Poteats Garage | Stanley, NC | Mechanic |
| 01/01/59 - 12/31/60 | Pipe & Boiler Insulation | Cotton Mill - Morilton, AK; Cotton Mill - Clinton, SC; Cotton Mill - Honea Path, SC; Cotton Mill - Anniston, AL; Cotton Mill - Columbus, GA; Cotton Mill - Moultrie, AL; Cotton Mill - Society Hill, SC; Cotton Mill - Lancaster, SC; SoDyeCo - Mt. Holly, SC; Various Schools - Huntersville, NC | Asbestos Work |
| 01/01/54 - 12/31/64 | Guy M. Beaty | WBTV - Charlotte, NC; Coliseum - Charlotte, NC; Rock Hill Printing - Rock Hill, SC; Celanese - Rock Hill, SC; PPG - Shelby, | Asbestos Work |

NC; Kerr
Bleachery -
Concord, NC;
Mission Valley
Mill - New
Braunfels, TX;
Various
Schools - NC;
Schools - SC;
Schools - VA;
Pearless Wool
Mill -
Cleveland, TN;
Railroad -
Bluefield, WA;
SoDyeCo - Mt
Holly, NC;
Holston
Ordinance
Plant -
Kingsport, TN;
Florida State
Hospital -
Chatuca, FL;
Good Samaritan
Hospital -
Charlotte, NC;
Army Reserve
Center -
Charlotte, NC;
Cotton Mill -
Honea Path,
SC; Cotton
Mill -
Laurenburg,
SC; Cotton
Mill - Dillon,
SC; Cotton
Mill - Easley,
SC; Cotton
Mill - Dalton,
GA; Cotton
Mill - Kings
Mountain, NC;
Cotton Mill -
Siler City,
NC; Cotton
Mill - Rome,
GA; Cotton
Mill -
Latimore, NC;
Cotton Mill -
Lincolnton,
NC; Cotton

33

| | | | |
|---|---|---|---|
| | | Mill - Charlotte, NC; Cotton Mill - Paw Creek, NC; Cotton Mill - Gastonia, NC; Cotton Mill - Barnsville, GA;  Cotton Mill -  Macon, GA | |
| 01/01/52 - 12/31/53 | Brown Equipment Company | Charlotte, NC | Mechanic |

208 West Wendover Avenue
Greensboro, NC 27401





7005 2570 0001 4530 7882

02 1A
0004392555
MAILED FROM Z

CERTIFIED MAIL, SIGNATURE REQUIRED

GOODRICH CORPORATION
f/k/a The B.F. GOODRICH COMPANY
c/o Its Registered Agent
Corporation Service Company
327 Hillsborough Street
Raleigh, NC 27603

# EXHIBIT 12

A CERTIFIED TRUE COPY

MAY 23 2006

ATTEST

FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 5 2006

FILED
CLERK'S OFFICE

*DOCKET NO. 875*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)*

*(SEE ATTACHED SCHEDULE)*

1:06CV88

*CONDITIONAL TRANSFER ORDER (CTO-263)*

FILED
CLERK'S OFFICE
ASHEVILLE, N. C.

JUN - 1 2006

U.S. DISTRICT COURT
W. DIST. OF N. C.

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 80,642 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable James T. Giles.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Giles.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, 771 F.Supp. 415 (J.P.M.L. 1991), and, with the consent of that court, assigned to the Honorable James T. Giles.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAY 23 2006

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

A TRUE COPY CERTIFIED TO FROM THE RECORD
DATED: 5-30-06
ATTEST: Tom Dempsey
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**EXHIBIT 12**

**SCHEDULE CTO-263 - TAG-ALONG ACTIONS**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| **ALABAMA NORTHERN** | |
| ALN 2 06-330 | Jimmy T. Anderson, et al. v. A.O. Smith Electrical Products Co., et al. |
| ALN 2 06-522 | Robert Clyde Walker v. F.L. Smidth, Inc., et al. |
| **ILLINOIS NORTHERN** | |
| ILN 1 03-6165 | Richard Breeding v. Anchor Packing Co., et al. |
| ILN 1 05-6560 | Patricia A. Carver, etc. v. Allis Chalmers Corp., et al. |
| ILN 1 05-6944 | Norman Radosevic v. Northeast Illinois Regional Commuter Rail Corp., et al. |
| **LOUISIANA WESTERN** | |
| LAW 2 06-318 | Earl Babin v. A.W. Chesterton Co., et al. |
| **MINNESOTA** | |
| MN 0 06-447 | Robert E. King v. Garlock Sealing Technologies, LLC, et al. |
| MN 0 06-451 | Gene W. Olds v. Garlock Sealing Technologies, LLC, et al. |
| **MISSISSIPPI NORTHERN** | |
| MSN 1 06-44 | Jimmy Bugg v. Bendix Corp., et al. |
| MSN 1 06-45 | Cecil Grimes v. Ametek, Inc., et al. |
| MSN 1 06-46 | Roy E. Puckett v. Ametek, Inc., et al. |
| MSN 1 06-47 | Jimmy H. Brown v. Ametek, Inc., et al. |
| MSN 2 06-26 | Russell Goodwin v. Garlock, Inc. |
| MSN 2 06-29 | Sylvester Pipkin v. Ametek, Inc., et al. |
| MSN 2 06-30 | Ford Green v. Ametek, Inc., et al. |
| MSN 3 06-18 | James Gregory v. Garlock, Inc., et al. |
| MSN 3 06-19 | Robert Fuller v. Ametek, Inc., et al. |
| **MISSISSIPPI SOUTHERN** | |
| ~~MSS 1 06-132~~ | ~~Sharon Reed, etc. v. Foster Wheeler Corp., et al.~~ Opposed 5/23/06 |
| MSS 1 06-133 | V.O. Stevens v. Bendix Corp., et al. |
| MSS 1 06-142 | Donald Cummins v. Ametek, Inc., et al. |
| MSS 1 06-143 | Freddie Lee Hayes v. Certainteed Corp., et al. |
| MSS 1 06-148 | Cecil W. Whitley v. Ametek, Inc., et al. |
| MSS 1 06-161 | Jerry Robertson Ratliff, Sr. v. Garlock, Inc., et al. |
| MSS 1 06-162 | Billy Hugh Buckles v. Ametek, Inc., et al. |
| MSS 1 06-163 | Cecil S. Creel v. Aqua-Chem, Inc., et al. |
| MSS 1 06-164 | Earnest Lee Stevenson v. Bondex International, Inc., et al. |
| MSS 1 06-165 | Percy Blanton McCullough, Jr. v. Ametek, Inc., et al. |
| MSS 1 06-166 | Camellus Wigley v. Ametek, Inc., et al. |
| MSS 1 06-167 | Larry Dale Wicker v. Ametek, Inc., et al. |
| **NORTH CAROLINA MIDDLE** | |
| NCM 1 06-253 | Walton Parsons, et al. v. A.W. Chesterton, Inc., et al. |
| NCM 1 02-874 | Ruby Kaylene Huneycutt Vanhoy, etc. v. Aqua-Chem, Inc., et al. |
| **NORTH CAROLINA WESTERN** | |
| NCW 1 06-61 | Edna Sweet, et al. v. A.W. Chesterton, Inc., et al. |
| NCW 1 06-63 | Memphis Logan, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 06-65 | Gary Smith, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 06-66 | Horace K. Whelchel, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 06-71 | Russell Thomas Hilderbran, et al. v. Aqua-Chem, Inc., et al. |

SCHEDULE CTO-263 - TAG-ALONG ACTIONS - MDL-875                    Page 2 of 3

**DIST. DIV. C.A. #**          **CASE CAPTION**

**NORTH CAROLINA WESTERN**
NCW  1  06-88              Helen Nadine Clippard v. A.W. Chesteron, Inc., et al.

**NEW YORK EASTERN**
NYE  1  06-510             Mary McDaniel, etc. v. A.W. Chesteron Co., et al.
NYE  1  06-664             J.B. Tittle, et al. v. A.W. Chesteron Co., et al.

**PENNSYLVANIA WESTERN**
PAW  2  06-244             Michael J. Lindemann, etc. v. Foster-Wheeler Corp., et al.

**SOUTH CAROLINA**
SC  0  06-732             Michael David Andrews, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-741             Floyd Eugene Flynn, Sr., et al. v. Aqua-Chem, Inc., et al.
SC  0  06-752             Allen Pickens Tidwell, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-753             Tommie Lee Burris v. Aqua-Chem, Inc., et al.
SC  0  06-781             George Milton Boyd, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-795             Ronnie Houston Robinson, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-798             Roger Dale Callahan, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-806             Haskell Tidwell, Jr. v. Aqua-Chem, Inc., et al.
SC  0  06-830             Jerry Lynn Jackson, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-887             Edward Andrew Chambers v. Aqua-Chem, Inc., et al.
SC  0  06-931             Toney Truitt Payseur, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-939             Everette Thomas Hensley v. Aqua-Chem, Inc., et al.
SC  0  06-944             Bernard Hugh Faulkenberry, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-945             William Robert Massey, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-949             Steven Joe Cobb, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-951             Timothy Duane Hammond, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-956             Shelby Gene Brannock, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-957             Willard LaRue Carraway, Jr. v. Aqua-Chem, Inc., et al.
SC  0  06-961             Ronald Ervin Gordon, et al. v. Aqua-Chem, Inc., et al.
SC  0  06-962             Nathan Jennings Huskey v. Aqua-Chem, Inc., et al.
SC  0  06-965             Walter Lee Horton v. Aqua-Chem, Inc., et al.
SC  2  06-783             Leroy E. Creel, et al. v. Owens-Illinois, Inc., et al.
SC  2  06-920             Jack U. Williamson, et al. v. Owens-Illinois, Inc., et al.
SC  6  06-734             Machen Lee Carpenter, et al. v. Aqua-Chem, Inc., et al.
SC  6  06-743             Charles Jesse Tucker v. Aqua-Chem, Inc., et al.
SC  6  06-779             Alphurd Clyde Waldrop, et al. v. Aqua-Chem, Inc., et al.
SC  6  06-780             Denny Frank Arquette v. Aqua-Chem, Inc., et al.
SC  6  06-794             Danny Ray Hinson, et al. v. Aqua-Chem, Inc., et al.
SC  6  06-804             Jack Owen Blakely, Jr., et al. v. Aqua-Chem, Inc., et al.
SC  6  06-888             Donald Bostic Wright, et al. v. Aqua-Chem, Inc., et al.
SC  6  06-952             Clyde Wayne Bogan, Sr., et al. v. Aqua-Chem, Inc., et al.
SC  7  06-736             Robin Larry Goings v. Aqua-Chem, Inc., et al.
SC  7  06-744             Robert Wayne Garvin v. Aqua-Chem, Inc., et al.
SC  7  06-754             Rodney E. Byars v. Aqua-Chem, Inc., et al.
SC  7  06-836             Billy Dalton Wylie, et al. v. Aqua-Chem, Inc., et al.
SC  7  06-930             Paul Joseph McDowell, et al. v. Aqua-Chem, Inc., et al.
SC  7  06-959             Dennis Edward Deaton, et al. v. Aqua-Chem, Inc., et al.
SC  8  06-731             Clarence Douglas Hardy, et al. v. Aqua-Chem, Inc., et al.
SC  8  06-733             Terry Hansel Mullinax v. Aqua-Chem, Inc., et al.
SC  8  06-737             Bobby Eugene Gray, et al. v. Aqua-Chem, Inc., et al.
SC  8  06-740             Elbert Clark Koon, et al. v. Aqua-Chem, Inc., et al.
SC  8  06-742             Linda Davidson Durham, et al. v. Aqua-Chem, Inc., et al.
SC  8  06-745             Doyle Elton Pierce v. Aqua-Chem, Inc., et al.
SC  8  06-746             Michael Wayne Yow v. Aqua-Chem, Inc., et al.
SC  8  06-778             Fredna C. Lusk, etc. v. Aqua-Chem, Inc., et al.

SCHEDULE CTO-263 - TAG-ALONG ACTIONS - MDL-875                          Page 3 of 3

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| **SOUTH CAROLINA** | |
| SC  8  06-791 | Nathaniel Henderson, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-793 | Oliver Eugene Mercer, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-796 | Thomas Morton Reynolds, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-805 | Gerald Stephen Barton, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-820 | Claude Junior Dills v. Borg-Warner Corp., et al. |
| SC  8  06-821 | John Wiilliam Allred, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-822 | James Harold Dodd, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-829 | Milton Lewis Chapman, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-832 | GaryThomas Cann, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-835 | Michael Steven Burns v. Aqua-Chem, Inc., et al. |
| SC  8  06-837 | Larry O'Kelly, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-940 | Jimmy Ray Callaham, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-954 | Patrick Casey Evans, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-958 | Ronnie Edward Grace v. Aqua-Chem, Inc., et al. |
| SC  8  06-960 | Martin Lee McCormick, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-963 | Russell Lee Groomes, et al. v. Aqua-Chem, Inc., et al. |
| SC  8  06-964 | Jimmy Wayne Porter v. Aqua-Chem, Inc., et al. |
| SC  8  06-966 | John Alfred Jetton v. Aqua-Chem, Inc., et al. |
| **TEXAS SOUTHERN** | |
| TXS  4  06-611 | Allen Joseph Richardson, et al. v. Georgia-Pacific Corp., et al. |