MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR – 3 2009

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

### DOCKET NO. 875

### IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

**************************************************************************

THIS PLEADING APPLIES TO:

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CLARENCE SCOTT WREN, SR.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | |
| | * | **NO. 08-4204** |
| **COOPER/T. SMITH STEVEDORING, INC.,** | * | |
| **ET AL** | * | |
| | * | **SECTION "C"** |
| | * | |
| | * | |
| | * | **MAGISTRATE NO. (5)** |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER

Defendants Hartford Accident and Indemnity Co. ("Hartford") and Certain Underwriters at Lloyd's, London, Economic Insurance Company Limited, Fine Art & General Insurance Company, Limited, National Provincial Insurance Company Limited, The Edinburgh Assurance Company, and British Law Insurance Company ("Underwriters") oppose the Motion to Vacate Conditional Transfer Order filed on behalf of Plaintiff Clarence Wren.   Hartford and Underwriters dispute Mr. Wren's contentions about the readiness of this case for trial, and his arguments about the supposed "uniqueness" of this case have been considered and rejected by this Panel on prior occasions.

**OFFICIAL FILE COPY**

IMAGED MAR 4 2009

Plaintiff's first argument in support of vacating the Conditional Transfer Order is that substantial discovery has been completed in this case.  He intimates that this case is therefore ready for trial and that "transfer to the Eastern District of Pennsylvania will only serve to delay the parties in proceeding to trial in the Eastern District of Louisiana."

The minimal discovery that has taken place so far in this lawsuit can hardly be characterized as substantial.  In reality, substantial discovery remains to be completed.  In Mr. Wren's written responses to master discovery requests, he lists more than a dozen witnesses, many of whom Defendants will need to depose before trial.[1]  These witnesses include Wren's seven children, ten co-workers who may testify about his work history and exposure to asbestos, and five experts of various specialties, not counting his own treating physicians.

It is not only the Defendants who require more discovery to prepare for trial.  To date, Plaintiff's counsel has deposed no defense witnesses, and has propounded written discovery to most Defendants dealing only with one narrow jurisdictional issue.

It is simply incorrect to say that this case is ready for trial, or will be soon.  At no point in the state or federal court proceedings have the parties held a formal or informal status conference.  The case has never been set for trial or been subject to a Scheduling Order, nor have the parties had a chance to put together their own informal plan of work.  Though a few Defendants (including Hartford and Underwriters) have moved for Summary Judgment, no hearing has been held on these motions, and no court has ruled on them.  The parties have not even identified exhibits they may introduce at trial, much less exchanged them.

Next, Plaintiff claims that he would be prejudiced by consolidation before an MDL panel because he "is seventy-four years old and is dying of malignant mesothelioma," and that his

---

[1] Plaintiff's responses to these discovery requests are attached as Exhibit A.

treating physician opined that he may not live past January, 2009. Hartford and Underwriters are sympathetic to Plaintiff's age and his medical condition, but contend that his medical status is among the contested issues in this case. Though malignant pleural mesothelioma was diagnosed on July 6, 2007, based upon a small amount of biopsy tissue, a CT of his thorax done October 2, 2007, found no evidence of pleural tumor.[2] Likewise, the most recent CT of his thorax taken July 23, 2008, found, "[n]o radiographic evidence for progression of oncological disease. No new lymph nodes or lesions identified. Stable radiographic findings in the chest unchanged from the previous study."[3] In his deposition in 2008, Mr. Wren testified he was in remission.[4] During a September 16, 2008, office visit, Mr. Wren reported to his doctors that he was "doing well." He had normal respiratory effort and was clinically asymptomatic.[5] Plaintiff has provided no medical records to contradict the fact of his current asymptomatic clinical status.

The evidence supporting Plaintiff's argument that he needs to rush to trial in the District Court is far from clear. Furthermore, is it clear that proceeding in the MDL would not delay the expedient resolution of this case. As the panel noted in the Transfer Order issued April 8, 2008, "[u]nder the stewardship of the transferee court, as of March 31, 2008, (1) over 76,450 actions have been closed in the transferee district, and (2) over 1,370 actions or claims therein have been returned to their originating transferor districts." *In re Asbestos Products Liability Litigation (No. VI)*, 2008 WL 1214814 (MDL No. 875, 2008).

Finally, Plaintiff claims this case possesses a "unique set of Defendants" that leaves the Court with "little to 'coordinate.'" Plaintiff asserts that since he has not sued the "typical" (and

---

[2] See Ochsner Medical Institutions Diagnostic Imaging Services report dated October 2, 2007, attached as Exhibit B.
[3] See Ochsner Medical Institutions Diagnostic Imaging Services report dated July 23, 2008, attached as Exhibit C.
[4] Deposition of Clarence Wren, page 88, line 22, and page 169, lines 10-17. Excerpts from this deposition transcript are attached as Exhibit D.
[5] See Ochsner Clinic Foundation "Provider Note" dated September 16, 2008, attached as Exhibit E.

now, more often than not, bankrupt) asbestos manufacturers and suppliers, this case is qualitatively unrelated to the cases he presumes are more commonly brought before this Panel.

Plaintiff at once mischaracterizes the nature of this case and underestimates the Panel's ability to oversee it.  Most of the Defendants in this case, whether stevedoring companies or shipping companies, are Mr. Wren's own former employers.  It is far from "atypical" for a plaintiff in an asbestos lawsuit to make a claim against his employer.  The Panel would no doubt be able to identify the relevant issues and coordinate pretrial proceedings in an efficient manner.

This Panel has considered and rejected these identical arguments many times before.  In *In re Asbestos Products Liability Litigation (No. VI)*, the Panel pointed out that as far back as 1991 it considered and rejected arguments against consolidation based on "the uniqueness of a party's status," "the type of defendant," and "the stage of pretrial proceedings."  2008 WL 1214814 at p. 2.  Such arguments "were considered and rejected by us as grounds for carving out exceptions to transfer in this extraordinary docket."  *Id.*

For these reasons, Hartford and Underwriters submit that this action should be transferred to the Eastern District of Pennsylvania for inclusion in the coordinated pretrial proceedings occurring there and that Plaintiff's Motion to Vacate the Conditional Order be denied.

Respectfully submitted,

JOHN K. NIESET – T.A. BAR #25196
CHRISTY L. MCMANNEN - BAR #31258
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Attorneys for Hartford Accident & Indemnity Co.

4

_Stephen P. Hall by John K Nist_

**STEPHEN P. HALL – T.A. BAR #1934**
**BARBARA L. ARRAS – BAR #17908**
**PHELPS DUNBAR LLP**
20th Floor – Canal Place
365 Canal Street
New Orleans, Louisiana 70130-6534
Telephone (504) 566-1311
Attorneys for Certain Underwriters at Lloyd's
London, Economic Insurance Company Limited,
Fine Art & General Insurance Company, Limited
National Provincial Insurance Company Limited,
The Edinburgh Assurance Company, and British
Law Insurance Company

## CERTIFICATE

This is to certify that, on Feb 27, 2009, a copy of the above and foregoing has been served upon counsel of record by electronic mail and United Stats Mail Service.

John A. Boles
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130
Attorney for Waterman Steamship Corp. and Crowley Marine Services

Jacques P. DeGruy
MOULEDOUX, BLAND, LEGRAND & BRACKET, L.L.C.
One Shell Square – Suite #4250
701 Poydras Street
New Orleans, LA 70139
Attorney for Ports America Gulfport, Inc.

Neil F. Nazareth
MARTZELL & BICKFORD
338 Lafayette Street
New Orleans, LA 70130
Attorney for Plaintiff

Antonio J. Rodriguez
FOWLER, RODRIGUEZ & VANDES-FAULI
400 Poydras Street, 30th Floor
New Orleans, LA 70130
Attorney for Industrial Development Corporation of South Africa, Limited.

H. Philip Raedecker, Jr.
PUGH, ACCARDO, HAAS & RADEKEER, L.L.C.
1100 Poydras Street, Suite 2000
New Orleans, LA 70163
Attorney for Buck Kreihs Company, Inc.

Gary Lee
LEE, FUTRELL & PERLES
201 St. Chalres Avenue
Suite 4120
New Orleans, LA 70170
Attorney for Dixie Machine Welding & Metal Works, Inc.

Mark Spansel
ADAMS & REESE, LLP
One Shell Square, Suite 4500
701 Poydras Street
New Orleans, LA 70139
Attorney for Cooper T Smith Stevedoring Company, Inc.

Robert E. Williams, IV
SULZER & WILLIAMS, LLC
201 Holiday Boulevard, Suite 335
Covington, LA 70433
Attorney for SSA Gulf Terminals, Inc.

**JOHN K. NIESET**

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**DOCKET NO. 875**

**IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIS PLEADING APPLIES TO:**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CLARENCE SCOTT WREN, SR.** | \* | **CIVIL ACTION** |
| | \* | |
| **VERSUS** | \* | |
| | \* | |
| **COOPER/T. SMITH STEVEDORING,** | \* | **NO. 08-4204** |
| **INC., ET AL** | \* | |
| | \* | |
| | \* | **SECTION "C"** |
| | \* | |
| | \* | |
| | \* | **MAGISTRATE NO. (5)** |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*
\* \* \*

## CERTIFICATE OF SERVICE

Defendants Hartford Accident and Indemnity Co. ("Hartford") and Certain Underwriters at Lloyd's, London, Economic Insurance Company Limited, Fine Art & General Insurance Company, Limited, National Provincial Insurance Company Limited, The Edinburgh Assurance Company, and British Law Insurance Company ("Underwriters") certify that on March 3, 2009 they served their Memorandum in Opposition to plaintiff's Motion to Vacate Conditional Transfer Order on the following counsel by U.S. Mail, in accordance with the Panel Service List:

Francis P. Accardo
PUGH ACCARDO HAAS
   & RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000
Attorney for Buck Kreihs
Company, Inc.

Stephen C. Aertker, Jr.
HUVAL VEAZEY FELDER
AEKTKER & RENEGAR LLC
532 E. Boston Street
Covington, LA 70433
No appearance made in this
lawsuit

Jerald L. Album
REICH MEEKS &
TREADWAY
Two Lakeway Center, Suite
1000
3850 N. Causeway Blvd.
Metairie, LA 70002
No appearance made in this
lawsuit

Peter G. Angelos
LAW OFFICES OF PETER G.
ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201
No appearance made in this
lawsuit

B. Ralph Bailey
LAW OFFICE OF B RALPH
BAILEY
660 – 3 N. Beau Chene Drive
Mandeville, LA 70471
No appearance made in this
lawsuit

Wilton Ellwood Bland, III
MOULEDOUX BLAND
LEGRAND & BRACKETT
One Shell Square
701 Poydras Street
Suite 4250
New Orleans, LA 70139-4250
Attorney for Ports America
Gulfport, Inc.

John A. Bolles
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534
Attorney for Waterman
Steamship Corp. and Crowley
Marine Services

Alan Guy Brackett
MOULEDOUX BLAND
LEGRAND & BRACKETT
4250 One Shell Square
701 Poydras Street
New Orleans, LA 70139-4250
Attorney for Ports America
Gulfport, Inc.

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219
No appearance made in this
lawsuit

Traci Marie Castille
FRANKE & SALLOUM PLLC
2605 14TH Street
P.O. Drawer 460
Gulfport, MS 39502
No appearance made in this
lawsuit

Kenneth Joseph Gelpi, Jr.
MONTGOMERY BARNETT ET
AL
1100 Poydras Street
Suite 3200
New Orleans, LA 70163-3200
No appearance made in this
lawsuit

Charles V. Giordano
HEBBLER & GIORDANO
3636 S. I-10 Service Road West
Suite 300
Metairie, LA 70001
No appearance made in this
lawsuit

Timothy P. Hurley
MAGINNIS & HURLEY
Canal Place One
365 Canal Street
Suite 2750
New Orleans, LA 70130
No appearance made in this
lawsuit

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995
No appearance made in this
lawsuit

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20004-2595
No appearance made in this
lawsuit

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth St., Third Floor
Oakland, CA 94607
No appearance made in this
lawsuit

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2009 MAR – 3  A 11: 28

RECEIVED
CLERK'S OFFICE

2

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC  27401-1307
No appearance made in this
lawsuit

Susan B. Kohn
SIMON PERAGINE SMITH
 & REDFEARN LLP
Energy Centre, Suite 3000
1100 Poydras Street
New Orleans, LA  70163-3000
No appearance made in this
lawsuit

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX  75204
No appearance made in this
lawsuit

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
No appearance made in this
lawsuit

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA  31520
No appearance made in this
lawsuit

Gary Allen Lee
LEE FUTRELL & PERLES LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA  70170-4120
Attorney for Dixie Machine
Welding & Metal Works, Inc.

John D. Cooney
COONEY & CONWAY
120 N. LaSalle Street
Suite 3000
Chicago, IL  60602-2415
No appearance made in this
lawsuit

Neil F. Nazareth
MARTZELL & BICKFORD
338 Lafayette Street
New Orleans, LA  70130
Attorney for Plaintiff

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA  94111
No appearance made in this
lawsuit

Patricia Cowen Penton
LEE FUTRELL & PERLES
LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA  70170-4120
No appearance made in this
lawsuit

Lawrence G. Pugh, III
PUGH ACCARDO HAAS
 & RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA  70163-2000
Attorney for Buck Kreihs
Company, Inc.

H. Philip Radecker, Jr.
PUGH ACCARDO HAAS
 & RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA  70163-2000
Attorney for Buck Kreihs
Company, Inc.

Antonio J. Rodriguez
FOWLER RODRIGUEZ
400 Poydras Street
30th Floor
New Orleans, LA  70130
Attorney for Industrial
Development Corporation of
South Africa, Limited

Mark J. Spansel
ADAMS & REESE LLP
One Shell Square, Ste 4500
701 Poydras Street
New Orleans, LA  70139
Attorney for Cooper T. Smith
Stevedoring Company, Inc.

A. Wendel Stout, III
DEUTSCH KERRIGAN &
STILES
755 Magazine Street
New Orleans, LA 70130-3672
No appearance made in this
lawsuit

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA  02110
No appearance made in this
lawsuit

Jefferson R. Tillery
JONES WALKER
Place St. Charles
5th Floor
201 St. Charles Avenue
New Orleans, LA  70170
No appearance made in this
lawsuit

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS
 KRUTZ & TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608
No appearance made in this
lawsuit

3

William F. Mahoney
SEGAL McCAMBRIDGE
SINGER & MAHONEY LTD
233 South Wacker Dr, Suite
5500
Chicago, IL 60606
No appearance made in this
lawsuit

Robert C. Malaby
MALABY & BRADLEY
150 Broadway, Suite 600
New York, NY 10038
No appearance made in this
lawsuit

John P. McShea
McSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103
No appearance made in this
lawsuit

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105
No appearance made in this
lawsuit

Robert Seth Reich
REICH ALBUM &
PLUNKETT
Two Lakeway Center
3850 N. Causeway Blvd.
Suite 1000
Metairie, LA 70002
No appearance made in this
lawsuit

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
No appearance made in this
lawsuit

Robert E. Williams, IV
SULZER & WILLIAMS LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433
Attorney for SSA Gulf Terminals,
Inc.

Respectfully submitted,

**JOHN K. NIESET – T.A. BAR #25196
CHRISTY L. MCMANNEN - BAR
#31258
CHRISTOVICH & KEARNEY, LLP**
601 Poydras Street, Suite 2300
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Attorneys for Hartford Accident &
Indemnity Co.

4

STEPHEN P. HALL – T.A. BAR #1934
BARBARA L. ARRAS – BAR #17908
PHELPS DUNBAR LLP
20th Floor – Canal Place
365 Canal Street
New Orleans, Louisiana 70130-6534
Telephone (504) 566-1311
Attorneys for Certain Underwriters at
Lloyd's London, Economic Insurance
Company Limited, Fine Art & General
Insurance Company, Limited National
Provincial Insurance Company Limited, The
Edinburgh Assurance Company, and British
Law Insurance Company

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.                        DIVISION ""                SECTION ""

CLARENCE WREN

VERSUS

P & O PORTS GULFPORT, INC.

FILED: _____     _____
                                            DEPUTY CLERK

### PLAINTIFF'S CONSOLIDATED RESPONSES TO THE DISCOVERY REQUESTS OF ALL DEFENDANTS TO ALL PLAINTIFFS IN ALL ASBESTOS-RELATED, PERSONAL INJURY AND DEATH CASES

**TO:   ALL DEFENDANTS, by and through their counsel of record.**

NOW INTO COURT, appearing herein by and through undersigned counsel of record, comes Plaintiff, **CLARENCE WREN**, who submits his Consolidated Responses to all Defendants' Discovery Requests propounded on behalf of all Defendants pursuant to the Louisiana Code of Civil Procedure.

### GENERAL OBJECTION

Petitioner objects, and therefore declines to respond, to each interrogatory and request for production to the extent it seeks discovery regarding confidential matters, trial preparation information, and/or matters immune from discovery by virtue of the attorney-client privilege, the work product doctrine, or any other such privilege or doctrine recognized under the Louisiana Code of Civil Procedure. Furthermore, the interrogatories and request for production are presented in a way that would not allow responses because the wording is overly broad, vague and ambiguous.

### PLAINTIFF'S RESPONSE TO INTERROGATORIES

#### INTERROGATORY NO. 1

Please state the name and address of each person who participated in the answers to these interrogatories or who furnished any information used in the preparation of these answered to interrogatories.



EXHIBIT

A

**ANSWER TO INTERROGATORY NO. 1**

Plaintiff answered these interrogatories with the assistance of counsel.

**INTERROGATORY NO. 2**

Please state the following:

a)      Your full name and all other names by which you have been known (including any nicknames).

b)      The date and place of birth.

c)      Your present home address.

d)      In chronological order, the addresses where you have lived in the past 20 (twenty) years, and the inclusive dates of your residence at each location.

e)      Your present occupation and business address:

f)      Your Social Security Number.

g)      Your drivers' license number, the state in which it was issued, the date of issuance, and the expiration date.

**ANSWER TO INTERROGATORY NO. 2**

a)      Clarence Wren "Bulldog"

b)      DOB: 03/06/1934

c)      Address: 2806 Sundorn Street, Jefferson, LA 70121

d)      n/a

e)      Retired

f)      SSN: 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

g)      LA: 002104514; 10/6/2005, expiration 3/6/2010

**INTERROGATORY NO. 3**

If you are currently married, state your spouse's name, the date of your marriage, and the name and address of your spouse's employer.

With respect to any and all prior spouses, if any, state:

a.      The name of your former spouse and the date of the marriage.

b.      The date of the dissolution of the marriage or the death of spouse.

**ANSWER TO INTERROGATORY NO. 3.**

a.      Dorothy Christine Bates, October 1951

2

b.    Deceased 02/2003

## INTERROGATORY NO. 4

State the present name, age, date of birth, and address of each of your children, and of any

person, who in any way is financially dependent upon you for support, including, but not limited to,

parents, in-laws, relatives, or other people; and for each person, state the extent to which each person

is dependent upon you for financial support.

## ANSWER TO INTERROGATORY NO. 4

**Diane Salisbury**
17401 Bottle Springs Lane
Leander, TX 78641
Not dependent

**Yvonne Davis**
1321 Timberforest Drive
Westwego, LA 70094
DOB: 01/14/1956
Not dependent

**Matthew Wren, Sr.**
5182 Sycamore Drive
Jackson, MS 39212
Not dependent

**Joyce Wren**
1720 Jutland Drive
Marrero, LA 70072
DOB: 10/30/1954
Not dependent

**Alice Faye Baptiste**
919 Ft. Daniel
Leander, TX
Not dependent

**Clarence Wren, Jr.**
3513 Oregon
Eureka, CA 95503
Not dependent

**Delphine Wren**
1326 Farragut Streeet
Algiers, LA 70114
DOB: 08/15/1959
Not dependent

## INTERROGATORY NO. 5

State the names and addresses of all schools that you have attended, the dates attended, the

type of schools attended, and with respect to each, the highest grade reached, and the degree or

certificate obtained, if any.

3

**ANSWER TO INTERROGATORY NO. 5**

Plaintiff completed the 8th grade at Liberty Rosenwall in Liberty, MS.

**INTERROGATORY NO. 6**

If you have ever been arrested, charged, or convicted of a felony, please state the date, location of the incident, and the result of each such arrest, charge or conviction.

**ANSWER TO INTERROGATORY NO. 6**

Objection. Defendant is not entitled to information concerning arrests and charges in as much as said information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 7**

If you have ever served in any capacity in the military service, please give the dates, your rank, service number, and branch of service; type of discharge; and the type of disability and/or pension you have received or are receiving, if any.

**ANSWER TO INTERROGATORY NO. 7**

Not applicable.

**INTERROGATORY NO. 8**

If you have ever filed a claim or received payment for disability from the Veterans's Administration, state the basis for your claim, when the claim was filed, the disposition of the claim, the amount of payment you received, and the basis for such payment.

**ANSWER TO INTERROGATORY NO. 8**

Not applicable.

**INTERROGATORY NO. 9**

If you have ever been self-employed, state the dates of such employment, the type of work you performed, and the name of your business.

**ANSWER TO INTERROGATORY NO. 9**

Wren's Transportation, truck driver

**INTERROGATORY NO. 10**

If you have ever been a member of a union, please state:

a)   The name of each union to which you have belonged; the number and address of each local of which you have been a member; and the dates you belonged to each union and local.

b)   Whether you were an officer, director, and/or business agent of any union, and if so, describe all positions held in any unions, and the periods during which you held such positions.

c)   Whether you were ever a member of the International Association of Heat and Frost Insulators and Asbestos Workers ("the Asbestos Workers' Union");

d)   Whether you ever received the Asbestos Workers' magazine from the Asbestos Workers' Union, and if so, state whether you ever read the green sheets.

## ANSWER TO INTERROGATORY NO. 10

Plaintiff was a member of the ILA Local 3000 and Local 270 with Jahnke Laborers in New Orleans.

## INTERROGATORY NO. 11

State your income and the source of your income for each of the last five years.  If your spouse is or has been employed, please state his/her income for the last five years.

## ANSWER TO INTERROGATORY NO. 11

Plaintiff's social security printout has been ordered and will be supplemented upon receipt. Additionally, Plaintiff will provide Defendant with an authorization to obtain same upon reasonable request.

## INTERROGATORY NO. 12

a)   If you are presently employed, state the name and address of your employer, your job classification, rate of pay, and the type of work you are presently performing.  If you are not presently employed, give the same information as to you last employment, together with the reasons why you are no longer employed.  Please state the same information with respect to your spouse.

b)   If you have lost any time from work because of any physical ailment, state how much time has been lost from work during the last five years and the disability that has caused you to lose time from work.

5

**ANSWER TO INTERROGATORY NO. 12**

Plaintiff is retired

**INTERROGATORY NO. 13**

a)    If you have ever received any accidental bodily injury, state the nature and extent of injury.

b)    If you have ever been a party to any claim or lawsuit for bodily injury, give the caption of the lawsuit, the date on which the suit was filed, the name and address of your attorney, and the ultimate disposition of the claim or lawsuit.

**ANSWER TO  INTERROGATORY NO. 13**

Not applicable.  However, investigation is continuing and Plaintiff reserves the right to supplement.

**INTERROGATORY NO. 14**

If you have ever filed a claim for worker's compensation, please give the following information with respect to each such claim:

a)    The name of the employer, date of claim, and claim file number;

b)    A description of the injury made the basis of the claim;

c)    The amount of money paid to you for the claim;

d)    If any lawsuit has been filed on the worker's compensation claim, the caption of the case, case number, and the court in which the case was filed;

e)    The name and address of any physician or chiropractor who has tested, treated, or examined you in connection with this claim;

f)    If you were hospitalized in connection with the claim, provide the name and address of the hospital, the length of your stay, and your primary physician during the hospitalization.

**ANSWER TO INTERROGATORY NO. 14**

Not applicable.  However, investigation is continuing and Plaintiff reserves the right to supplement.

**INTERROGATORY NO. 15**

Describe in detail your employment history, including:

a)    The name and address of each employer;

b)   The dates during which you worked for each employer;

c)   The location and description of each job site where you were employed, and the dates during which you worked at each such job site;

d)   The name and last known address of your immediate supervisor and co-workers at each job site where you are claiming exposure to asbestos;

e)   Your wage rate and hours worked in an average week for each job site where you claim you were exposed to asbestos;

f)   Your job duties, craft, and titles for each job site where you were employed and claim exposure to asbestos-containing products;

g)   The reason your employment with each employer listed was terminated;

h)   Each job site and the dates during which you claim to have been exposed to asbestos;

i)   Each asbestos product to which you were exposed, including the name of the manufacturer, the trade name of the product, and the description of the product.

j)   When, where, and whether you worked with and/or around each asbestos product identified above;

k)   Whether you were exposed to any dust, fumes, or gases, and if so, what were you exposed to and at what jobs.

## ANSWER TO INTERROGATORY NO. 15

Plaintiff's social security earnings statements, which is attached hereto, is the best source of the names of his employers and the dates of employment.  However, Plaintiff recalls the following:

1.   a)   Jahnke Services, New Orleans, LA
     b)   Plaintiff worked off and on from approximately 1952-1970. Further, Plaintiff reserves the right to supplement and amend this response.
     c)   Please see response to a, above. Please see response to a, above.  Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.
     d)   Plaintiff does not recall at this time, but reserves the right to supplement and amend this response
     e)   Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.
     f)   Plaintiff worked as a cement worker
     g)   Better opportunity
     h)   Please see responses to a, b, and c, above
     i)   Plaintiff came in contact with asbestos-containing materials while making cement pipes at the facility on Jefferson Highway.  As discovery is ongoing, plaintiff reserves the right to supplement this response.
     j)   Please see responses to b and c, above

      k)      Asbestos dust. Investigation is continuing and Plaintiff reserves the right to supplement and amend this response.

2.    a)      Gulf Stevedore Corporation; P.O. Box 50; Mobile, AL 36601

      b)      Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

      c)      Please see response to a, above. Please see response to a, above. Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

      d)      Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

      e)      Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

      f)      Plaintiff worked as a longshoreman

      g)      Better opportunity

      h)      Please see responses to a, b, and c, above

      i)      Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans. Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel. Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos. As discovery is ongoing, plaintiff reserves the right to supplement this response.

      j)      Please see responses to b and c, above

      k)      Asbestos dust. Investigation is continuing and Plaintiff reserves the right to supplement and amend this response.

3.    a)      Lykes Corporation; P.O. Box 22554; Dallas, TX 75222

      b)      Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

      c)      Please see response to a, above. Please see response to a, above. Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

      d)      Plaintiff does not recall at this time, but reserves the right to supplement and amend this response.

      e)      Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

      f)      Plaintiff worked as a longshoreman.

      g)      Better opportunity

      h)      Please see responses to a, b, and c, above

      i)      Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans. Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel. Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos. As discovery is ongoing, plaintiff reserves the right to supplement this response.

      j)      Please see responses to b and c, above

      k)      Investigation is continuing and Plaintiff reserves the right to supplement and amend this response.

4.  a)  Cooper-T Smith Stevedoring Corporation; P.O. Box 1566; Mobile, AL 36633-1566

    b)  Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

    c)  Please see response to a, above.  Please see response to a, above.  Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

    d)  Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

    e)  Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

    f)  Plaintiff worked as a longshoreman.

    g)  Better opportunity

    h)  Please see responses to a, b, and c, above

    i)  Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans.  Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel.  Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos.  As discovery is ongoing, plaintiff reserves the right to supplement this response.

    j)  Please see responses to b and c, above

    k)  Asbestos Dust. Investigation is continuing and Plaintiff reserves the right to supplement and amend this response.

5.  a)  P & O Ports Gulfport, Incorporated
        Gulfport, MS

    b)  Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

    c)  Please see response to a, above.  Please see response to a, above.  Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

    d)  Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

    e)  Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

    f)  Plaintiff was a longshoreman

    g)  Better opportunity

    h)  Please see responses to a, b, and c, above

    i)  Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans.  Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel.  Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos.  As discovery is ongoing, plaintiff reserves the right to supplement this response.

    j)  Please see responses to b and c, above

    k)  Asbestos Dust. Investigation is continuing and Plaintiff reserves the right to supplement and amend this response.

6.  a)  Strachan Shipping Company; P.O. Box 3147, Savannah, GA 31402-3147

    b)  Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

9

c)   Please see response to a, above. Please see response to a, above. Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

d)   Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

e)   Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

f)   Plaintiff worked as a longshoreman.

g)   Better opportunity

h)   Please see responses to a, b, and c, above

i)   Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans. Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel. Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos. As discovery is ongoing, plaintiff reserves the right to supplement this response.

j)   Please see responses to b and c, above

k)   Asbestos dust. Plaintiff reserves the right to supplement and amend this response.

7.   a)   Cooper Stevedoring of Louisiana, Inc.; P.O. Box 1566, Mobile, AL 36601

b)   Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

c)   Please see response to a, above. Please see response to a, above. Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

d)   Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

e)   Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

f)   Plaintiff worked as a longshoreman.

g)   Better opportunity

h)   Please see responses to a, b, and c, above

i)   Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans. Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel. Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos. As discovery is ongoing, plaintiff reserves the right to supplement this response.

j)   Please see responses to b and c, above

k)   Asbestos dust. Plaintiff reserves the right to supplement and amend this response.

8.   a)   Dixie Stevedores, Inc.; 540 International Trade Mart; New Orleans, LA 70130

b)   Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

c)   Please see response to a, above. Please see response to a, above. Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

d)     Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

e)     Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

f)     Plaintiff worked as a longshoreman.

g)     Better opportunity

h)     Please see responses to a, b, and c, above

i)     Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans. Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel. Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos. As discovery is ongoing, plaintiff reserves the right to supplement this response.

j)     Please see responses to b and c, above

k)     Asbestos dust. Plaintiff reserves the right to supplement and amend this response.

9.     a)     Mid-Gulf Stevedores, Inc.; P.O. Box 53366; New Orleans, LA 70153

b)     Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

c)     Please see response to a, above. Please see response to a, above. Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

d)     Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

e)     Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

f)     Plaintiff worked as a longshoreman.

g)     Better opportunity

h)     Please see responses to a, b, and c, above

i)     Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans. Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel. Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos. As discovery is ongoing, plaintiff reserves the right to supplement this response.

j)     Please see responses to b and c, above

k)     Asbestos dust. Plaintiff reserves the right to supplement and amend this response.

10.     a)     James Stevedores, Inc.; 701 SE 24th St.; Fort Lauderdale, FL 33316

b)     Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

c)     Please see response to a, above. Please see response to a, above. Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

d)     Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

e)     Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

f)     Plaintiff worked as a longshoreman.

11

g)    Better opportunity

h)    Please see responses to a, b, and c, above

i)    Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans. Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel. Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos. As discovery is ongoing, plaintiff reserves the right to supplement this response.

j)    Please see responses to b and c, above

k)    Asbestos dust. Plaintiff reserves the right to supplement and amend this response.

11.    a)    Ryan-Walsh Gulf, Inc., Stevedoring Services of America; P.O. Box 24368; Houston, TX 77229

b)    Plaintiff worked off and on from approximately 1970-1987. Further, Plaintiff reserves the right to supplement and amend this response.

c)    Please see response to a, above. Please see response to a, above. Plaintiff worked at the various wharfs up and down the Riverfront including, but not limited to Napoleon Street, Nashville Ave., Louisiana Street and Jackson Ave.

d)    Plaintiff does not recall at this time, but reserves the right to supplement and amend this response

e)    Plaintiff's Social Security Printout has been ordered and will be supplemented upon receipt.

f)    Plaintiff worked as a longshoreman.

g)    Better opportunity

h)    Please see responses to a, b, and c, above

i)    Plaintiff came in contact with asbestos-containing materials while working aboard vessels from which general cargos were being unloaded at the Port of New Orleans. Plaintiff had an opportunity to board vessels while the cargo was being loaded and unloaded at the port and during which time asbestos-containing insulation products being used aboard ship contaminated the vessel. Furthermore, shore gangs came aboard the vessels and did maintenance and repair work while the longshoremen were loading and unloading cargos. As discovery is ongoing, plaintiff reserves the right to supplement this response.

j)    Please see responses to b and c, above

k)    Asbestos dust. Plaintiff reserves the right to supplement and amend this response.

Discovery is ongoing and Plaintiff will seasonably supplement and amend as additional information becomes available.

**INTERROGATORY NO. 16**

a)    State the name, last known address (business or home), relationship to you, present occupation, of each witness that has any knowledge of the facts relevant to this lawsuit, including those person who have knowledge of any time that you may have been exposed to any products that may have contained asbestos.

12

b)     As to each individual listed above, describe the jobsite at which they worked, their occupation at each jobsite, the asbestos-containing products they can identify at each such jobsite, and whether they worked with Plaintiff at each such jobsite.

## ANSWER TO INTERROGATORY NO. 16

Plaintiff recalls working with Andrew Tobias, Luther Fagan, Isaiah Randall, Major White, George Tillman, Edward Jackson, Jake Lagousa, Walter Jackson, Mervin Carbo, Benny Singleton. Further, investigation is ongoing and Plaintiff will seasonably supplement and amend as additional information becomes available.

## INTERROGATORY NO. 17

If you have any direct evidence of invoices from suppliers for any purchases or products containing asbestos from any or all of the Defendants, which products were used on job sites where you worked, identify the document by name of supplier, date of invoice, name of purchaser, and place of delivery.

## ANSWER TO INTERROGATORY NO. 17

Port import documents show shipments of tons of asbestos coming into the Port of New Orleans. Further, discovery is ongoing and Plaintiff will seasonably supplement and amend this response. Indexes of relevant documents will be provided at a later date when additional information becomes available.

## INTERROGATORY NO. 18

a)     When did you first experience any problems with your respiratory health, lungs, or breathing?

b)     Describe in layman's language what your physical complaints were at the time you first experienced such problems.

c)     If the physical complaints and symptoms of which you now complain are different from those you first experienced, as described above, please describe your present complaints and symptoms, and state when you first experienced these complaints.

d)     Identify each physician who has advised you that you had any of the following, and when you were so advised;

       1)     Chronic obstructive lung disease;

       2)     Emphysema;

13

3)   Pneumoconiosis;

4)   Asbestosis; or

5)   Any other lung condition that the physician indicated was related to the exposure of asbestos-containing products.

## ANSWER TO INTERROGATORY NO. 18

Plaintiff was diagnosed as suffering from mesothelioma on or about July, 26, 2007.  Please see medical records attached hereto.  Plaintiffs master file which contains plaintiffs medical records is available for inspection and copying at Martzell and Bickford.

## INTERROGATORY NO. 19

Excluding the information provided in response to Interrogatory No. 18 above, please state the name and address of each physician who has examined or treated you, or to whom you have gone for any reason during your lifetime, the reason you consulted each physician, the dates and type of any treatment received

## ANSWER TO INTERROGATORY NO. 19

Ochsner Clinic
1516 Jefferson Hwy.
New Orleans; LA 70121
Mesothelioma

Dr. Zoe Larned
Ochsner Clinic
1516 Jefferson Hwy.
New Orleans, LA 70121

Dr. Braddock Burns
Ochsner Clinic
1516 Jefferson Hwy.
New Orleans, LA 70121

Dr. Gene Perrino
Ochsner Clinic
1516 Jefferson Hwy.
New Orleans, LA 70121

Dr. Christine Johnson
Ochsner Clinic
1516 Jefferson Hwy.
New Orleans, LA 70121

Further, plaintiff reserves the right to seasonably supplement and amend as additional information becomes available.

14

**INTERROGATORY NO. 20**

Please state the name and address of any hospital or clinic in which you were examined, had tests or x-rays performed, received outpatient carte, or were hospitalized during your lifetime, the dates and reasons for each examination, testing, hospitalization, or treatment.

**ANSWER TO INTERROGATORY NO. 20**

Ochsner Clinic
1516 Jefferson Hwy.
New Orleans, LA 70121
Mesothelioma

**INTERROGATORY NO. 21**

If you have ever smoked, state when you started smoking, what type of tobacco product you smoked, how long have you smoked, how much have you smoked of each type of tobacco product, whether a physician ever advised you to stop smoking, and if so, who and when, and state if applicable, the reasons you stopped smoking.

**ANSWER TO INTERROGATORY NO. 21**

Plaintiff started smoking when he was 17 averaging 1 pack a day until he quit in 1988.

**INTERROGATORY NO. 22**

If you have ever been examined through a company or union screening program for lung or respiratory disease, give the dates, place and details of your examination, and the name of the company or union sponsoring the program.

**ANSWER TO INTERROGATORY NO. 22**

Plaintiff does not recall at this time, and he reserves the right to supplement this response at a later date.

**INTERROGATORY NO. 23**

a)      How and under what circumstances did you learn that asbestos could be harmful to your health?

b)      When did you first believe that the lung problems or breathing problems complained of might have been related to asbestos-containing products?

c)      When were you first told, and by whom, that any lung problems or breathing problems complained of might have been related to asbestos-containing products?

## ANSWER TO INTERROGATORY NO. 23

Plaintiff was not aware that he had an asbestos-related disease until he was diagnosed with mesothelioma in July, 2007.

## INTERROGATORY NO. 24

a)  Identify all expert witnesses who have been consulted in connection with this action, even if they may not be called to testify at trial, if their opinion has been reviewed by a testifying expert.

b)  State the impressions and opinions held by and the facts known by any consulting expert identified above.

c)  Identify all documents and tangible things, including reports, prepared by or relied on by any consulting expert identified above.

## ANSWER TO INTERROGATORY NO. 24

Plaintiff objects based on the fact that defendants are not entitled to attorney-work product and evidence concerning consulting experts.

## INTERROGATORY NO. 25

a)  Identify each expert witness who may be called as a witness to testify at trial.

b)  State the impressions and opinions held by and the facts known by any expert identified above.

c)  Identify all documents and tangible things, including reports, prepared by or relied on by any expert identified above.

## ANSWER TO INTERROGATORY NO. 25

Plaintiff may call the following experts to testify at trial:

1.  Frank Parker
    Caliche, Ltd.
    200 Brantley Lane
    Magnolia, TX 77355

Mr. Parker is an expert industrial hygienist who may testify concerning the petitioner's occupational exposure to asbestos. He may also testify concerning the asbestos dust levels which petitioner was exposed due during the course and scope of his employment. He may also testify concerning the amount of asbestos that is necessary to produce the various diseases associated with

16

inhalation of asbestos dust and fiber including, but not limited to, asbestosis, lung cancer and mesothelioma.

   2.  Dr. William Longo
      Mr. Richard Hatfield
      MAS, Inc.
      3945 Lakefield Court
      Suwanee, GA 30024

Dr. Longo and Mr. Hatfield are experts in material analysis. They may testify concerning the physical and chemical composition of the various asbestos-containing products manufactured by the defendants in this case including pipe covering, block, gaskets, wallboard and cloth. Drs. Longo and Hatfield may testify concerning the friability and characteristics of the various asbestos-containing products manufactured by the defendants. They may also testify concerning the various methods for measurement of asbestos dust and government standards for asbestos dust. Additionally, their testimony may include information and opinions concerning the tindel effect and the quantity of asbestos that is released in the ambient atmosphere through the installation and repair of asbestos-containing products and the effects of ventilation on asbestos dust.

   3.  Dr. Richard A. Lemen, Ph.D. - Expert
      Department of Environmental and Occupational Health
      Emory University
      6555 Sugarloaf Parkway
      Suite 307, PMB 181
      Duluth, Georgia 30097

Dr. Lemen is an industrial hygienist and public health and occupational disease expert who may testify live or by deposition that:

(1) The defendants knew or should have known historically that asbestos inhalation could cause asbestosis, lung cancer, mesothelioma, and other asbestos-related diseases.

(2) Dr. Lemen may also testify that a person exposed to asbestos is at a higher risk than the normal individual to develop some form of cancer. Dr. Lemen may also testify that it is his opinion that ten years after the cessation of cigarette smoking the risk of lung cancer attributable to smoking is almost nil. He may also testify that only 8% - 12% of those who smoke cigarettes in heavy quantities will ever suffer any form of lung cancer. The basis of this opinion is founded on recent statistics filed by the National Cancer Institute, the United States Public Service, and Herbert Seidemann and others.

Furthermore, Dr. Lemen may testify concerning the following:

Between the years 1898 and 1930, the medical community gradually became aware of a fibrotic lung disease which, in 1927, actually received the name asbestosis. It is Dr. Lemen's opinion that by 1930 there was a general acceptance that exposure to asbestos was linked to a serious lung disease. This disease was caused by the inhalation of asbestos dust in quantities sufficient to cause scarring in the lungs. If the scarring was serious enough, it could be incapacitating and/or fatal.

The first cancer cases which were reported in association with asbestos exposure appeared in 1934. Over the next two decades, there were a series of articles published associating asbestos exposure and lung cancer. It is Dr. Lemen's opinion that, by 1949, there was a causal relationship established between asbestos exposure and cancer.

There was considerable debate, from the 1930's through the 1950's, as to whether mesothelioma was just a lung cancer or a special disease. It was known by several names, sometimes called pleural cancer, other times called endothelioma or mesothelioma. It is Dr. Lemen's opinion that the medical community associated the cause of mesothelioma with asbestos exposure perhaps as early as 1949 and that a consensus certainly formed no later than 1960.

Dr. Lemen may also testify as to significant pieces of medical literature and studies which have related asbestos to health risks. Dr. Lemen bases his opinion in part upon those articles noted in his bibliography and, more specifically, the following:

Annual report of the chief inspector of factories for the year 1898. HMSO, 1899, Part II, Reports, pp. 171-172.

Murray, H.M., "Report of the Departmental Committee on Compensation for Industrial Disease, Minutes of Evidence Appendices and Index, 3495-3496, London: Wyman and Sone (1907).

Pancoast, H.K., Miller, T.G., Landis, H.R.M., "A Roentgenologic Study of the Effects of Dust Inhalation upon the Lungs," Trans. Assoc. Amer. Phys. 32:97-108 (1917).

Cooke, W.E., "Pulmonary asbestosis," Br. Med.J., 2:1024-1025 (1927).

Cooke, W.E. and Hill, C.F., "Pneumoconiosis due to asbestos dust,", J. Royal Micr. Soc., 47:232-238, 1927, (reported in Br. Med. J., 1:890-891, 1927; cites in JAMA, 89:304, 1927).

Merewether, E.R.A., and Price, C.W., "Reports of the Effect of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry," pp. 5-34, London: HMSO (1930).

Merewether, E.R.A., "A memorandum on asbestosis," Tubercle: 15:69-81, 109-118, 152-159, (1933, 1934).

18

Wood, W.B. and Gloyne, S.R.,. "Pulmonary asbestosis:  a review of one hundred cases," Lancet, 2:1383-1385 (1934).

Lynch, K.M. and Smith, W.A., "Pulmonary asbestosis.  III:  carcinoma of lung in asbestos-silicosis," Am. J. Cancer, 24:56-64 (1935).

Nordmann, M., "Der Berufskrebs der Asbestarbeiter," Z. Krebsforsch., 47:288-302 (1938).

Vorwald, A.J. and Karr, J.W., "Pneumoconiosis and pulmonary carcinoma," Am. J. Path., 14:49-57 (1938).

Hueper, W.C., Occupational tumors and allied diseases.  Springfield, Ill:  Chas. C. Thomas, 1942, pp. 399-405.

Hueper, W.C., "Cancer in its relation to occupation and environment," Bull. Am. Soc. Control of Cancer, 25:63-69 (1943).

"Case records of the Massachusetts General Hospital. Case 33111," NEJM, 236:407-412 (1947).

Annual report of the chief inspector of factories for the year 1947. London: HMSO: 1949, pp. 78-81.

Doll, R., "Mortality from lung cancer in asbestos workers," Br. J. Ind. Med., 12:81-86 (1955).

Wagner, J.C., et al "Diffuse pleural mesothelioma and asbestos exposure in the North Western Cape Province," Brit. J. Industr. Med, 17:260-271 (1960).

Wagner, J.C.; "Epidemiology of diffuse mesotheliomal tumors: evidence of an association from studies in South Africa and the United Kingdom," Ann. N.Y. Acad. Sci., 132:575-578 (1965).

This is the general nature of the possible testimony of Dr. Lemen.  However, he will not limit any testimony to the specific articles above and may utilize certain other documents in conjunction with his testimony such as other medical articles, trade association journals and corporate documents.  His testimony will be directed to issues concerning the asbestos manufacturers and suppliers.

4.      Dr. Arnold Brody
        Tulane Medical School
        1430 Tulane Avenue
        SL 79
        New Orleans, LA 70112

Dr. Brody may identify asbestos fiber and bodies by mineralogic classification.  He may testify as to the general medical issues concerning the development, cause, and the diagnosis of mesothelioma, lung cancer, and/or other asbestos-related diseases.  He may also testify about his research and opinions on the different types of asbestos, their propensity to cause disease and his

opinions on the quantity and quality of asbestos to cause disease.  Additionally, Dr. Brody may testify with regard to his research and writing with regard to asbestos and related diseases.

     5.     Barry I. Castleman, S.C.D. - Expert
             2412 Pickwick Rd.
             Gwynn Oak, MD 21207

Barry Castleman, an environmental consultant with a doctor of science degree from John Hopkins University, has extensively research the issues of the asbestos industry's knowledge of asbestos-related diseases and the corporate response to the knowledge of the health hazards caused by asbestos exposure.

Dr. Castleman is expected to testify about the knowledge of the defendants regarding the effects of inhalation of asbestos fibers  based upon the literature, other publications, and corporate documents.  Additionally, Dr. Castleman may testify concerning the matters set forth in his deposition provided in the John T. Hannon, et al versus Waterman Steamship Corp., et al; in the United States District Court for the Eastern District of Louisiana; C.A. 80-1175 "E"(2) which is available for inspection and copying at Martzell & Bickford. See also Dr. Castleman's book entitled Asbestos: Medical and Legal Aspects, 4th Edition 1996, and any supplements, Aspen law or business publishing.

     6.     Any and all health care providers named herein above or in medical records of Plaintiff.

     7.     Any and all experts listed by any other party to this litigation.

In light of the fact that discovery is ongoing, Defendant reserves the right to seasonably supplement and amend the foregoing interrogatory.

## INTERROGATORY NO. 26

If this is a wrongful death or survival action, please state:

a)     The date of death.

b)     Whether the deceased had a Last Will and Testament and whether any administration has been had on the decedent's estate.

## ANSWER TO INTERROGATORY NO. 26.

Not applicable.

**INTERROGATORY NO. 27**

If Plaintiff has entered into any settlement agreement, or received any monies from a named Defendant or any third party to this action, please state:

  a)  The name of the party or person with whom Plaintiff as entered into any settlement agreement.

  b)  The date and terms of the agreement.

  c)  The amount of money received by Plaintiff from each person or party.

**ANSWER TO INTERROGATORY NO. 27**

Objection, Defendant is not entitled to the information requested regarding settlements without a court order in light of confidentiality agreements regarding same.  Plaintiff further objects on the grounds that the information requested is not likely to lead to the discovery of admissible evidence.  However, not withstanding this objection, plaintiff responds that he has not entered into any settlements at this time.

**INTERROGATORY NO. 28**

State when, (including the month, date and year), you first contacted an attorney for the purpose of obtaining professional legal services regarding your alleged asbestos exposure, and the date of any agreement to provide you with legal services regarding same.

**ANSWER TO INTERROGATORY NO. 28**

Objection, Defendant is not entitled to information which is the subject of attorney-client privilege.

**RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**

The reports of all expert witnesses whom Plaintiff may call at the trial of this case, and all documents reviewed by any such expert in connection with this matter.

**RESPONSE TO REQUEST NO. 1**

Discovery is just beginning and Plaintiff reserves the right to supplement and amend.

**REQUEST FOR PRODUCTION NO. 2**

All photographs, films, movies, or video recordings that depict or purport to depict anything relevant to any of the matters at issue in this case, including any of the matters alleged in your complaint or petition.

**RESPONSE TO REQUEST NO. 2**

None at this time but Plaintiff reserves the right to seasonably supplement and amend.

**REQUEST FOR PRODUCTION NO. 3**

All documents reflecting any claims or settlements made by you in connection with any asbestos-related injury or disease that you sustained.

**RESPONSE TO REQUEST NO. 3**

Objection, defendant is not entitled to the information requested regarding settlements with out a court order in light of confidentiality agreements regarding same. Plaintiff further objects on the grounds that the information requested is not likely to lead to the discovery of admissible evidence. However, out of an abundance of caution and without waiving the foregoing objection, plaintiff responds that he has not entered into any settlements with respect to his asbestos claim.

**REQUEST FOR PRODUCTION NO. 4**

All documents (including, but not limited to, notes, calendars, diaries, or like materials) prepared or kept by you and all documents made by you in connection with (a) any exposure to asbestos or asbestos-containing materials; (b) any conduct of the Defendants with respect to asbestos or asbestos-containing products; (c) any asbestos-related injury, disease, or treatment (including mesothelioma); or (d) any elements of actual damages resulting from your claimed asbestos-related injury.

**RESPONSE TO REQUEST NO. 4**

None known at this time. Discovery is ongoing and plaintiffs reserve the right to supplement as more information becomes available.

**REQUEST FOR PRODUCTION NO. 5**

All documents that Plaintiff may seek to introduce into evidence at trial. This request includes, but is not limited to, (a) documents related to the use of asbestos or asbestos-containing products; (b) documents related to safety precautions in connection with asbestos or asbestos-

containing products; and  documents related to the medical risks associated with asbestos or asbestos-containing products.

**RESPONSE TO REQUEST NO. 5**

Discovery is ongoing and plaintiffs reserve the right to supplement this interrogatory as more information becomes available.

**REQUEST FOR PRODUCTION NO. 6**

In all wrongful death cases, copies of the Decedent's death certificate, autopsy report and autopsy protocol.

**RESPONSE TO REQUEST NO. 6**

Not applicable.

**REQUEST FOR PRODUCTION NO. 7**

All copies of your medical records, including specifically any medical records relating to any respiratory, breathing, or lung related injury or illness (including, but not limited to, asbestosis, mesothelioma, emphysema, asthma, bronchitis, lung cancer and chronic obstructive pulmonary disease).

**RESPONSE TO REQUEST NO. 7**

Please see diagnosing medical reports, attached hereto.  As medical records are requested they will be made available for inspection and copying at the law offices of Martzell and Bickford.   Additionally, Plaintiff will execute appropriate medical releases so that defendants may obtain copies of medical records.  These authorizations must be provider specific. Discovery is ongoing and Plaintiff reserves the right to supplement this request.

**REQUEST FOR PRODUCTION NO. 8**

All x-rays and pathology materials of any kind of the Plaintiff or Decedent.

**RESPONSE TO REQUEST NO. 8**

X-rays and pathology are either in the possession of Plaintiff's counsel or the applicable medical providers.   As such, X-rays and pathology, if applicable, will be made available upon arrangement between counsel.

**REQUEST FOR PRODUCTION NO. 9**

All documents, including sales receipts and invoices, that support your claim that you were exposed to asbestos-containing products manufactured, distributed or sold by any Defendants.

**RESPONSE TO REQUEST NO. 9**

None at this time.  However, discovery is ongoing and plaintiffs reserve the right to supplement as more information becomes available.

**REQUEST FOR PRODUCTION NO. 10**

All materials provided to each consulting expert identified in response to Interrogatory No. 24(a) and copies of all materials prepared by such consulting experts.

**RESPONSE TO REQUEST NO. 10**

Objection, Defendant is not entitled to attorney work product or any information relative to consulting experts.

**REQUEST FOR PRODUCTION NO. 11**

All other documents identified in response to any of the attached interrogatories.

**RESPONSE TO REQUEST NO. 11**

As discovery is ongoing, Plaintiff reserves the right to supplement as more information becomes available.

**REQUEST FOR PRODUCTION NO. 12**

Please complete and sign all authorization forms attached hereto as Exhibits A through H and return a compete set of originals within five (5) days of signing to.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**

Plaintiff will sign authorizations which are directed to specific health care providers, employers, and/or other entities which prohibit verbal communication and require that undersigned counsel be provided with copies of documents released pursuant to the request.

Respectfully submitted,

**MARTZELL & BICKFORD**

_Neil F. Nazar_

**SCOTT R. BICKFORD, #1165**
**NEIL NAZARETH #28969**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been sent to counsel for all

parties by delivery of same by Hand Delivery, Facsimile Transmission, or by placing a copy of

same in the United States Mail, postage prepaid, and properly addressed, this ___28th___ day of

___January___ , 2008


_Neil F. Nazar_
**NEIL NAZARETH**

F:\Clients\WREN, CLARENCE\Discovery\Master Discovery.wpd

OCHSNER MEDICAL INSTITUTIONS
DIAGNOSTIC IMAGING SERVICES

NAME: WREN, CLARENCE
CL NO: 0710030   SEX: M DOB: 03/06/34
PHONE:(504)831-1618
** FINALIZED **
ORD PHY: COLE, JOHN

DATE OF EXAM: 10/02/07
ORDER NUMBER: 7886572

ROOM: C-OC

EXAM: THORAX WITH CONTRAST

DATE OF EXAM: Oct  2 2007

CT   0054  -  THORAX WITH CONTRAST:
39376070

CLINICAL HISTORY:   163.1  VISCERAL PLEURA CA

PROCEDURE COMMENT:

ICD 9 CODE(S):   (163.1)

CPT 4 CODE(S)/MODIFIER(S):   ()

RESULTS: AXIAL IMAGES WERE OBTAINED THROUGH THE CHEST AFTER THE
ADMINISTRATION OF IV CONTRAST OMNIPAQUE.  COMPARISON IS MADE TO MULTIPLE
PRIOR STUDIES WITH THE MOST RECENT BEING FROM JUNE 28, 2007.

AIRWAYS ARE PATENT.  EMPHYSEMATOUS CHANGES ARE SEEN IN THE LUNGS
BILATERALLY, SIMILAR WHEN COMPARED TO PRIOR STUDY.  THE RIGHT APEX AGAIN
DEMONSTRATES AN ILL DEFINED LESION MEASURING APPROXIMATELY 1.2 X 3 CM.
THIS IS UNCHANGED IN SIZE WHEN COMPARED TO PRIOR STUDY AND WHEN COMPARED
TO PRIOR CHEST CT FROM FEBRUARY 2004.  IT APPEARS THAT MOST OF THE SOLID
PORTION HAS INVOLUTED.  THE CHRONICITY OF THIS LESION HAS A HIGH
ASSOCIATION WITH A LESION OF BENIGN NATURE.  THE LUNGS OTHERWISE
DEMONSTRATE NO MASSES OR CONSOLIDATION.  NO NEW LUNG DISEASE IS
IDENTIFIED.  THERE IS SOME MINIMAL PLEURAL THICKENING IN THE LEFT
COSTOPHRENIC SULCUS WITH SOME CALCIFICATION WHICH COULD BE RELATED TO
PLEURODESIS.  THIS COULD ALSO REPRESENT RESIDUAL MESOTHELIOMA.  THERE HAS
BEEN INTERVAL IMPROVEMENT AND RESOLUTION OF A LEFT PLEURAL EFFUSION AND
INTERVAL REMOVAL OF THE LEFT PIGTAIL CATHETER.  THE LUNGS ARE OTHERWISE
CLEAR.

NO PERICARDIAL FLUID.  STENT IS SEEN WITHIN THE CIRCUMFLEX ARTERY.  THE
HEART IS OTHERWISE UNREMARKABLE.  CALCIFIED HILAR NODES ARE SEEN IN THE
RIGHT HILUM.  THESE ARE COMPATIBLE WITH REMOTE GRANULOMATOUS DISEASE.
THE AORTA TAPERS NORMALLY.  THE VISUALIZED OSSEOUS STRUCTURES APPEAR
INTACT.  WITHIN THE PARTIALLY PORTION OF THE KIDNEYS BILATERALLY ARE TINY
HYPODENSITIES WHICH LIKELY REPRESENT CYSTS BUT ARE TOO SMALL TO
CHARACTERIZE.  THE REMAINDER OF THE VISUALIZED PORTION OF THE UPPER
ABDOMEN IS UNREMARKABLE.

IMPRESSION:
1.  IN THIS PATIENT WITH A HISTORY OF MESOTHELIOMA NO DEFINITE EVIDENCE
OF PLEURAL TUMOR COMPATIBLE WITH MESOTHELIOMA IS IDENTIFIED.  THERE IS
SOME MINIMAL PLEURAL THICKENING IN THE DEEP LEFT COSTOPHRENIC SULCUS WITH
CALCIFICATIONS WHICH COULD BE RELATED TO PLEURODESIS.

2.  INTERVAL RESOLUTION OF LEFT PLEURAL EFFUSION AND REMOVAL OF LEFT
CHEST CATHETER.

10/26/07
11:07:30.0                      X-RAY REPORTS                   PAGE: 1
                                                               CONTINUED

EXHIBIT
B

OCHSNER MEDICAL INSTITUTIONS
DIAGNOSTIC IMAGING SERVICES

DATE OF EXAM: 10/02/07
ORDER NUMBER: 7886572

NAME: WREN, CLARENCE
CL NO: 0710030   SEX: M DOB: 03/06/34
PHONE:(504)831-1618
**   FINALIZED   **
ORD PHY: COLE, JOHN

3.   RIGHT APEX LESION IS STABLE WHEN COMPARED TO PRIOR FROM 2004.

4.   SEVERE EMPHYSEMATOUS CHANGES IN THE LUNGS WHICH IS WORSE IN THE UPPER
ZONES.


Transcriptionist: MD
Transcribe Date/Time: Oct  2 2007  6:32P
Dictated by : SABA HASAN M.D.
Report reviewed by: {respons_name}
Read On: Oct  2 2007  1:38P
Previous Transcriptionist: {add_trans_code}
Previous Trans Time: {add_trans_dtime}
sh:CHARLES MATTHEWS, M.D. 10293
Images were reviewed, findings were verified and document was
electronically
SIGNED BY: CHARLES C MATTHEWS,M.D. On: Oct  3 2007  1:00P
 SABA M.D., HASAN

                    HASAN, SABA

        **********************************************

OCHSNER MEDICAL INSTITUTIONS
DIAGNOSTIC IMAGING SERVICES

NAME: WREN, CLARENCE
CL NO: 0710030   SEX: M DOB: 03/06/34
PHONE:(504)831-1618
** FINALIZED **
ORD PHY: LARNED, ZOE L

DATE OF EXAM: 07/23/08
ORDER NUMBER: 8519493

EXAM: THORAX WITH CONTRAST                    ROOM: C-OC

DATE OF EXAM: Jul 23 2008

CT    0054  -  THORAX WITH CONTRAST:   0929 HOURS.
39376070

CLINICAL HISTORY:   163.1  VISCERAL PLEURA CARCINOMA, MESOTHELIOMA.

PROCEDURE COMMENT:

ICD 9 CODE(S):   ()

CPT 4 CODE(S)/MODIFIER(S):    ()

RESULTS: COMPARISON:   MADE TO A CT SCAN OF THE PELVIS DATED APRIL 16
2008 AND CT SCAN OF THE ABDOMEN DATED NOVEMBER 19 2007.   5 MM TRANSAXIAL
CT IMAGES WERE OBTAINED FROM THE LUNG APICES DOWN TO THE SYMPHYSIS PUBIS
AFTER THE ADMINISTRATION OF 100 CC OF OMNIPAQUE 350 INTRAVENOUS CONTRAST
AS WELL AS REDI-CAT ORAL CONTRAST.

A CHEMOTHERAPY PORT IS IDENTIFIED IN THE LEFT CHEST WALL.    THE
VISUALIZED PORTION OF THE BASE OF THE NECK IS NORMAL.   OPACITY
IDENTIFIED AT THE APEX OF THE RIGHT LUNG IS UNCHANGED IN APPEARANCE SINCE
THE PREVIOUS EXAMINATION.    THIS LIKELY REPRESENTS SCARRING OR FIBROSIS.
 THERE IS MILD PLEURAL THICKENING IDENTIFIED BILATERALLY, LEFT GREATER
THAN RIGHT.   EMPHYSEMATOUS CHANGES ARE SEEN IN THE LUNG, PARTICULARLY
WORSE AT THE APICES. THE LUNGS ARE WELL EXPANDED WITHOUT PNEUMOTHORAX OR
CONSOLIDATION.   THE ASCENDING AND DESCENDING AORTA ARE ECTATIC WITH THE
ASCENDING AORTA MEASURING 4.2 CM AND THE DESCENDING AORTA MEASURING 3.5
CM.    THE LIVER, GALLBLADDER, STOMACH, PANCREAS, SPLEEN, SMALL BOWEL AND
LARGE BOWEL ARE NORMAL.    THERE IS NO EVIDENCE OF ASCITES OR LYMPH NODE
ENLARGEMENT .    THE ADRENALS AND KIDNEYS ARE NORMAL.   EACH KIDNEY
CONTAINS A HYPODENSITY TOO SMALL TO CHARACTERIZE.   THE URINARY BLADDER
WALL SHOWS MILD THICKENING.   THIS MAY BE RELATED TO INADEQUATE DISTENTION
OR CHRONIC OUTLET OBSTRUCTION.   OSSEOUS STRUCTURES DEMONSTRATE
DEGENERATIVE CHANGES.

IMPRESSION:
1.    NO RADIOGRAPHIC EVIDENCE FOR PROGRESSION OF ONCOLOGICAL DISEASE.
NO NEW LYMPH NODES OR LESIONS IDENTIFIED.    STABLE RADIOGRAPHIC FINDINGS
IN THE CHEST UNCHANGED FROM THE PREVIOUS STUDY.

2.    ECTASIA OF THE AORTA WITH DIMENSIONS MEASURED ABOVE.


Transcriptionist: EW
Transcribe Date/Time: Jul 23 2008 10:38A
Dictated by : ANKIT PANSARA M.D.
Read On: 07/23/08  1010 hours.
ap:  Michael Sullivan, M.D. 10220

10/02/08
11:37:28.2                    X-RAY REPORTS



EXHIBIT

C

PAGE: 1
CONTINUED

OCHSNER MEDICAL INSTITUTIONS
DIAGNOSTIC IMAGING SERVICES

DATE OF EXAM: 07/23/08
ORDER NUMBER: 8519493

NAME: WREN, CLARENCE
CL NO: 0710030   SEX: M DOB: 03/06/34
PHONE:(504)831-1618
**  FINALIZED  **
ORD PHY: LARNED, ZOE L

Images were reviewed, findings were verified and document was
electronically
SIGNED BY: MICHAEL A SULLIVAN,M.D. On: Jul 23 2008 10:59A
 {sgn_dr_name_2}

PANSARA, ANKIT

***************************************************

10/02/08
11:37:28.2                    X-RAY REPORTS

PAGE: 2
END OF REPORTS

OCHSNER MEDICAL INSTITUTIONS
DIAGNOSTIC IMAGING SERVICES

NAME: WREN, CLARENCE
CL NO: 0710030   SEX: M DOB: 03/06/34
PHONE:(504)831-1618
** FINALIZED **
ORD PHY: LARNED, ZOE L

DATE OF EXAM: 07/23/08
ORDER NUMBER: 8523982

EXAM: ABDOMEN WITH CONTRAST

ROOM: C-OC

DATE OF EXAM: Jul 23 2008

CT    0005  -  ABDOMEN WITH CONTRAST:
39376100

CLINICAL HISTORY:    163.1  VISCERAL PLEURA CA

PROCEDURE COMMENT:

ICD 9 CODE(S):   ()

CPT 4 CODE(S)/MODIFIER(S):   ()

RESULTS:   SEE CT THORAX WITH CONTRAST STUDY SAME DATE FOR INTERPRETATION.


IMPRESSION:  SEE CT THORAX WITH CONTRAST STUDY SAME DATE FOR
INTERPRETATION.
Transcriptionist: EW
Transcribe Date/Time: Jul 23 2008 10:40A
Dictated by : ANKIT PANSARA M.D.
Read On: Jul 23 2008 10:10A
ap:  Michael Sullivan, M.D. 10220
Images were reviewed, findings were verified and document was
electronically
SIGNED BY: MICHAEL A SULLIVAN,M.D. On: Jul 23 2008 10:59A
 {sgn_dr_name_2}

PANSARA, ANKIT

*************************************************

OCHSNER MEDICAL INSTITUTIONS
DIAGNOSTIC IMAGING SERVICES

NAME: WREN, CLARENCE
CL NO: 0710030   SEX: M DOB: 03/06/34
PHONE:(504)831-1618
**  FINALIZED  **
ORD PHY: LARNED, ZOE L

DATE OF EXAM: 07/23/08
ORDER NUMBER: 8523983

EXAM: PELVIS WITH CONTRAST

ROOM: C-OC

DATE OF EXAM: Jul 23 2008

CT   0045  -  PELVIS WITH CONTRAST:
39376120

CLINICAL HISTORY:   163.1  VISCERAL PLEURA CA

PROCEDURE COMMENT:

ICD 9 CODE(S):  ()

CPT 4 CODE(S)/MODIFIER(S):  ()

RESULTS: SEE CT THORAX WITH CONTRAST STUDY SAME DATE FOR INTERPRETATION.

IMPRESSION: SEE CT THORAX WITH CONTRAST STUDY SAME DATE FOR
INTERPRETATION.


Transcriptionist: EW
Transcribe Date/Time: Jul 23 2008 10:39A
Dictated by : ANKIT PANSARA M.D.
Read On:  07/23/08  1010 hours
ap:  Michael Sullivan, M.D. 10220
Images were reviewed, findings were verified and document was
electronically
SIGNED BY: MICHAEL A SULLIVAN,M.D. On: Jul 23 2008 10:59A
 {sgn_dr_name_2}

PANSARA, ANKIT

*************************************************

COPY

1

```
  1              CIVIL DISTRICT COURT

  2               PARISH OF ORLEANS

  3               STATE OF LOUISIANA

  4

  5

  6

  7   CLARENCE WREN, SR.,          NO: 08-943

  8

  9   VERSUS                       DIVISION "E"

 10

 11   P&O PORTS GULFPORT, INC.     SECTION 7

 12

 13

 14

 15              Videotaped perpetuation deposition of

 16   CLARENCE WREN, SR., taken on Monday, February,

 17   20, 2008, at the Law Offices of Martzell &

 18   Bickford, 338 Lafayette Street, New Orleans,

 19   Louisiana 70130 commencing at 10:40 a.m. and

 20   concluding at 3:30 p.m.

 21

 22

 23

 24

 25
```

EXHIBIT

D

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1   a building.  They demolishing a building now.

2       Q.    When you say the end, do we mean the

3   river street end --

4       A.    Close to the river.

5       Q.    Close to the river?

6       A.    Uh-huh.

7       Q.    Do you recall how tall a building it

8   was?

9       A.    No.

10      Q.    You mentioned that, as you understand

11  it right now, your condition, you're in

12  remission.  Which doctor told you that?

13      A.    My oncology doctor.

14      Q.    Which one is that?

15      A.    Dr. Larned.  However -- I can't

16  pronounce her name.  Whatever.  Larned,

17  whatever.

18      Q.    You talked a little bit about the fact

19  that you used to smoke, and you started smoking

20  at age seventeen.  Do you recall back in the old

21  days that -- well, first of all, you quit

22  smoking, right?

23      A.    Yes.

24      Q.    Why did you quit?

25      A.    I just didn't feel like it was good for

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS
315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993
619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1    A.    Yeah.   She's one of the physicians.

2    Q.    Do you recall any of the other

3    physicians?

4    A.    No, not by name.

5    Q.    You were released from the hospital

6    after four weeks?

7    A.    Yes.

8    Q.    Do you recall when you were released?

9    Would it have been July 2007?

10   A.    Yes.   It was in -- yes.   I think it was

11   in July.

12   Q.    You said that you underwent

13   chemotherapy treatment for four months?

14   A.    Yes.

15   Q.    Do you recall when the chemotherapy

16   started?

17   A.    No.   I can't pronounce what dates.

18   Q.    Does August 2007 sound about right?

19   A.    That's about right.

20   Q.    Are you undergoing chemotherapy

21   treatment currently?

22   A.    No.   I'm supposed to be in remission

23   right now.   They've been having me coming back

24   and forth doing tests to see just how it's going

25   to move or how it's going to, you know, how I'm

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS
315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

Ochsner Clinic Foundation

WREN, CLARENCE S
710030
Ochsner Clinic
JOHNSON, KRISTIN S

9/16/2008

### Provider Note

**CHIEF COMPLAINT:**
74 year old male patient presents follow up .

**HPI**
Pt presents for follow up reports doing well. No increasdd dyspnea but he needs a refill on his inhaler. He had nail injury to his right hand went to er and was put on a course of antibiotics which did resolve his symtpoms. He has some problem with fulll rom and triggering at times in that hand. His home bs have been fine. He reports his depression hasl also been stable. He has had no dizzy or weak episodes and had cardiology evaluation since our last visit.

**ALLERGIES:** No drug allergies.

**MEDICATIONS:** see medcard,

**PAST MEDICAL HISTORY:**
Type 2 diabetes, renal insufficiency with microalbuminuria, Epididymitis.
Bradycardia, hyperlipidemia, history of hypertension,
mesotheliomoa following with oncology,
Coronary artery disease with stent placement cath 1/6 non obstructive ds,
right rotator cuff tear. BPH,postherpetic neuralgia with shingles, mild PVD,
Carpal tunnel syndrome, hemorrhoids. He had a normal coloscopy in May 2003.
situational depression

**PAST SURGICAL HISTORY:**
TURP,

**FAMILY HISTORY:** His mother had diabetes. His brother had prostate cancer and colon cancer.

**ROS:**
GENERAL: No fever, chills,
CHEST: dyspnea stable no couh
CARDIOVASCULAR: Denies chest pain, PND, orthopnea or reduced exercise toleran see above

**PE:**
APPEARANCE: Well nourished, well developed, in no acute distress.
VS: bp 128/80 p 64 weight 176
HEENT: no bruits tm clear
CHEST: Lungs clear. Normal respiratory effort.
CARDIOVASCULAR: Normal S1, S2. No rubs, murmurs or gallops. No edema.
ABDOMEN: Soft. No tenderness or masses. No hepatosplenomegaly.



EXHIBIT

E

tabbies®

Page 1 of 2

Ochsner Clinic Foundation

WREN, CLARENCE S
710030
Ochsner Clinic
JOHNSON, KRISTIN S

9/16/2008

## Provider Note

MUSCULOSKELETAL: Extremities with symmetrical motion and strength. No edema
ext: no edema, no pedal lesions noted
some triggering tendonitis of his hand, no erythema

AP
1.hypertension 2. diabetes 3. hyperlipidemai
for hypertnesension: bp acceptable continue current regimine
diabetes: home numbers acceptable will review labs when available
hyperlipidemia: tolerating his current regimine
hypertension; bp controlled
hand discofort tendonitis and triggering if persist he will consider ortho
follow up 3 months sooner if problems

Electronically signed by Kristin

Electronically signed by Kristin S Johnson, M.D. 9/17/2008 8:18:39 AM

T:9/17/2008 8:20:00 AM CHART ID:7385830