MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

### BEFORE THE JUDICIAL PANEL
### ON MULTIDISTRICT LITIGATION

MAR – 3 2009

FILED
CLERK'S OFFICE

### DOCKET NO. 875

### IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

*****************************************************************************

**THIS PLEADING APPLIES TO:**

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WALTER MCDONALD, ET AL** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | |
| | * | **NO. 08-4203** |
| **CROWLEY MARITIME CORP., ET AL** | * | |
| | * | |
| | * | **SECTION "C"** |
| | * | |
| | * | **MAGISTRATE NO. (5)** |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
### TO VACATE THE CONDITIONAL TRANSFER ORDER

Defendants Hartford Accident and Indemnity Co. ("Hartford") and Certain Underwriters at Lloyd's, London, Economic Insurance Company Limited, Fine Art & General Insurance Company, Limited, National Provincial Insurance Company Limited, The Edinburgh Assurance Company, and British Law Insurance Company ("Underwriters") oppose the Motion to Vacate Conditional Transfer Order filed on behalf of Plaintiff Walter McDonald. Hartford and Underwriters dispute Mr. McDonald's contentions about the readiness of this case for trial, and his arguments about the supposed "uniqueness" of this case have been considered and rejected by this Panel on prior occasions.

## OFFICIAL FILE COPY

IMAGED MAR 4 2009

Plaintiff's first argument in support of vacating the Conditional Transfer Order is that substantial discovery has been completed in this case.  He intimates that this case is therefore ready for trial and that "transfer to the Eastern District of Pennsylvania will only serve to delay the parties in proceeding to trial in the Eastern District of Louisiana."

This lawsuit was pending for more than eight years before Plaintiff added Hartford and Underwriters as Defendants.  (At the same time, Plaintiff added another of his former employers, Ports America Gulfport, Inc., as a Defendant.)   Whatever discovery may have been completed during that period, Hartford and Underwriters did not participate in it and have not reaped the benefits of it.  Neither have they been given a similar opportunity to learn the facts of this case. Since Hartford and Underwriters were added as Defendants less than one year ago, little meaningful discovery has been completed.

In response to written discovery requests, Plaintiff identified more than a dozen witnesses, many of whom Hartford and Underwriters will need to depose in order to prepare for trial.[1]  These witnesses include Mr. McDonald's four children, eleven co-employees who will testify about his exposure to asbestos, and seven experts in various fields of expertise, not counting his treating physicians.

It is not only the Defendants who require more discovery to prepare for trial.  To date, Plaintiff's counsel has deposed no witnesses associated with the newly-added Defendants, and has propounded written discovery to them dealing only with one narrow jurisdictional issue.

Because of the paucity of discovery the parties have engaged in in the nine months since Hartford and Underwriters have been parties to this case, it is simply incorrect to say that this case is ready for trial, or will be soon.

---

[1] Plaintiff's responses to Master Discovery Requests are attached as Exhibit A.

Finally, Plaintiff claims this case possesses a "unique set of Defendants" that leaves the Court with "little to 'coordinate.'"  Plaintiff asserts that since he has not sued the "typical" (and now, more often than not, bankrupt) asbestos manufacturers and suppliers, this case is qualitatively unrelated to the cases he presumes are more commonly brought before this Panel.

Plaintiff at once mischaracterizes the nature of this case and underestimates the Panel's ability to oversee it.  Most of the Defendants in this case, whether stevedoring companies or shipping companies, are Mr. McDonald's own former employers.  It is far from "atypical" for a Plaintiff in an asbestos lawsuit to make a claim against his employer.  The Panel would no doubt be able to identify the relevant issues and coordinate pretrial proceedings in an efficient manner.

This Panel has considered and rejected these identical arguments many times before.  In *In re Asbestos Products Liability Litigation (No. VI)*, the Panel pointed out that as far back as 1991 it considered and rejected arguments against consolidation based on "the uniqueness of a party's status," "the type of defendant," and "the stage of pretrial proceedings."  2008 WL 1214814 (MDL No. 875, 2008), at p. 2.  Such arguments "were considered and rejected by us as grounds for carving out exceptions to transfer in this extraordinary docket." *Id.*

The posture of this case does not support Plaintiffs' desire to rush to trial in the District Court.  Furthermore, proceeding in the MDL would not delay the expedient resolution of this case.  As the panel noted in the Transfer Order issued April 8, 2008, "[u]nder the stewardship of the transferee court, as of March 31, 2008, (1) over 76,450 actions have been closed in the transferee district, and (2) over 1,370 actions or claims therein have been returned to their originating transferor districts." *Id.*

3

For these reasons, Hartford and Underwriters submit that this action should be transferred to the Eastern District of Pennsylvania for inclusion in the coordinated pretrial proceedings occurring there and that Plaintiff's Motion to Vacate the Conditional Transfer Order be denied.

Respectfully submitted,

**JOHN K. NIESET – T.A. BAR #25196**
**CHRISTY L. MCMANNEN - BAR #31258**
**CHRISTOVICH & KEARNEY, LLP**
Suite 2300
Pan American Life Center
601 Poydras Street
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Attorneys for Hartford Accident & Indemnity Co.

**STEPHEN P. HALL – T.A. BAR #1934**
**BARBARA L. ARRAS – BAR #17908**
**PHELPS DUNBAR LLP**
20th Floor – Canal Place
365 Canal Street
New Orleans, Louisiana 70130-6534
Telephone (504) 566-1311
Attorneys for Certain Underwriters at Lloyd's
London, Economic Insurance Company Limited,
Fine Art & General Insurance Company, Limited
National Provincial Insurance Company Limited,
The Edinburgh Assurance Company, and British
Law Insurance Company

**CERTIFICATE**

This is to certify that, on Feb 27 , 2009, a copy of the above and foregoing has been
served upon counsel of record by electronic mail and United Stats Mail Service.

John A. Boles
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130
Attorney for Waterman Steamship Corp. and Crowley Marine Services

Jacques P. DeGruy
MOULEDOUX, BLAND, LEGRAND & BRACKET, L.L.C.
One Shell Square – Suite #4250
701 Poydras Street
New Orleans, LA 70139
Attorney for Ports America Gulfport, Inc.

Neil F. Nazareth
MARTZELL & BICKFORD
338 Lafayette Street
New Orleans, LA 70130
Attorney for Plaintiff

Antonio J. Rodriguez
FOWLER, RODRIGUEZ & VANDES-FAULI
400 Poydras Street, 30th Floor
New Orleans, LA 70130
Attorney for Industrial Development Corporation of South Africa, Limited

H. Philip Raedecker, Jr.
PUGH, ACCARDO, HAAS & RADEKEER, L.L.C.
1100 Poydras Street, Suite 2000
New Orleans, LA 70163
Attorney for Buck Kreihs Company, Inc.

Gary Lee
LEE, FUTRELL & PERLES
201 St. Chalres Avenue
Suite 4120
New Orleans, LA 70170
Attorney for Dixie Machine Welding & Metal Works, Inc.

Mark Spansel
ADAMS & REESE, LLP
One Shell Square, Suite 4500
701 Poydras Street
New Orleans, LA 70139
Attorney for Cooper T Smith Stevedoring Company, Inc.

Robert E. Williams, IV
SULZER & WILLIAMS, LLC
201 Holiday Boulevard, Suite 335
Covington, LA 70433
Attorney for SSA Gulf Terminals, Inc.

**JOHN K. NIESET**

**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

**DOCKET NO. 875**

**IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**THIS PLEADING APPLIES TO:**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| WALTER MCDONALD, ET AL | \* | **CIVIL ACTION** |
| | \* | |
| **VERSUS** | \* | |
| | \* | **NO. 08-4203** |
| CROWLEY MARITIME CORP., ET AL | \* | |
| | \* | |
| | \* | **SECTION "C"** |
| | \* | |
| | \* | |
| | \* | **MAGISTRATE NO. (5)** |
| | \* | |
| \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* | \* | |

## CERTIFICATE OF SERVICE

Defendants Hartford Accident and Indemnity Co. ("Hartford") and Certain Underwriters at Lloyd's, London, Economic Insurance Company Limited, Fine Art & General Insurance Company, Limited, National Provincial Insurance Company Limited, The Edinburgh Assurance Company, and British Law Insurance Company ("Underwriters") certify that on March 3, 2009 they served their Memorandum in Opposition to plaintiff's Motion to Vacate Conditional Transfer Order on the following counsel by U.S. Mail, in accordance with the Panel Service List:



Francis P. Accardo
PUGH ACCARDO HAAS
  & RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000
Attorney for Buck Kreihs
Company, Inc.

Stephen C. Aertker, Jr.
HUVAL VEAZEY FELDER
AEKTKER & RENEGAR LLC
532 E. Boston Street
Covington, LA 70433
No appearance made in this
lawsuit

Jerald L. Album
REICH MEEKS &
TREADWAY
Two Lakeway Center, Suite
1000
3850 N. Causeway Blvd.
Metairie, LA 70002
No appearance made in this
lawsuit

Peter G. Angelos
LAW OFFICES OF PETER G.
ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201
No appearance made in this
lawsuit

B. Ralph Bailey
LAW OFFICE OF B RALPH
BAILEY
660 – 3 N. Beau Chene Drive
Mandeville, LA 70471
No appearance made in this
lawsuit

Wilton Ellwood Bland, III
MOULEDOUX BLAND
LEGRAND & BRACKETT
One Shell Square
701 Poydras Street
Suite 4250
New Orleans, LA 70139-4250
Attorney for Ports America
Gulfport, Inc.

John A. Bolles
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534
Attorney for Waterman
Steamship Corp. and Crowley
Marine Services

Alan Guy Brackett
MOULEDOUX BLAND
LEGRAND & BRACKETT
4250 One Shell Square
701 Poydras Street
New Orleans, LA 70139-4250
Attorney for Ports America
Gulfport, Inc.

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219
No appearance made in this
lawsuit

Traci Marie Castille
FRANKE & SALLOUM PLLC
2605 14TH Street
P.O. Drawer 460
Gulfport, MS 39502
No appearance made in this
lawsuit

Kenneth Joseph Gelpi, Jr.
MONTGOMERY BARNETT ET
AL
1100 Poydras Street
Suite 3200
New Orleans, LA 70163-3200
No appearance made in this
lawsuit

Charles V. Giordano
HEBBLER & GIORDANO
3636 S. I-10 Service Road West
Suite 300
Metairie, LA 70001
No appearance made in this
lawsuit

Timothy P. Hurley
MAGINNIS & HURLEY
Canal Place One
365 Canal Street
Suite 2750
New Orleans, LA 70130
No appearance made in this
lawsuit

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995
No appearance made in this
lawsuit

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20004-2595
No appearance made in this
lawsuit

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth St., Third Floor
Oakland, CA 94607
No appearance made in this
lawsuit

FILED
MULTIDISTRICT
JUDICIAL PANEL ON

2009 MAR -3 A 11: 27

CLERK'S OFFICE
2 RECEIVED

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307
No appearance made in this
lawsuit

Susan B. Kohn
SIMON PERAGINE SMITH
& REDFEARN LLP
Energy Centre, Suite 3000
1100 Poydras Street
New Orleans, LA 70163-3000
No appearance made in this
lawsuit

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204
No appearance made in this
lawsuit

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
No appearance made in this
lawsuit

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520
No appearance made in this
lawsuit

Gary Allen Lee
LEE FUTRELL & PERLES LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120
Attorney for Dixie Machine
Welding & Metal Works, Inc.

John D. Cooney
COONEY & CONWAY
120 N. LaSalle Street
Suite 3000
Chicago, IL 60602-2415
No appearance made in this
lawsuit

Neil F. Nazareth
MARTZELL & BICKFORD
338 Lafayette Street
New Orleans, LA 70130
Attorney for Plaintiff

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111
No appearance made in this
lawsuit

Patricia Cowen Penton
LEE FUTRELL & PERLES
LLP
201 St. Charles Avenue
Suite 4120
New Orleans, LA 70170-4120
No appearance made in this
lawsuit

Lawrence G. Pugh, III
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000
Attorney for Buck Kreihs
Company, Inc.

H. Philip Radecker, Jr.
PUGH ACCARDO HAAS
& RADECKER LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000
Attorney for Buck Kreihs
Company, Inc.

Antonio J. Rodriguez
FOWLER RODRIGUEZ
400 Poydras Street
30th Floor
New Orleans, LA 70130
Attorney for Industrial
Development Corporation of
South Africa, Limited

Mark J. Spansel
ADAMS & REESE LLP
One Shell Square, Ste 4500
701 Poydras Street
New Orleans, LA 70139
Attorney for Cooper T. Smith
Stevedoring Company, Inc.

A. Wendel Stout, III
DEUTSCH KERRIGAN &
STILES
755 Magazine Street
New Orleans, LA 70130-3672
No appearance made in this
lawsuit

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110
No appearance made in this
lawsuit

Jefferson R. Tillery
JONES WALKER
Place St. Charles
5th Floor
201 St. Charles Avenue
New Orleans, LA 70170
No appearance made in this
lawsuit

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS
KRUTZ & TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608
No appearance made in this
lawsuit

3

William F. Mahoney
SEGAL McCAMBRIDGE
SINGER & MAHONEY LTD
233 South Wacker Dr, Suite 5500
Chicago, IL 60606
No appearance made in this lawsuit

Robert C. Malaby
MALABY & BRADLEY
150 Broadway, Suite 600
New York, NY 10038
No appearance made in this lawsuit

John P. McShea
McSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103
No appearance made in this lawsuit

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105
No appearance made in this lawsuit

Robert Seth Reich
REICH ALBUM &
PLUNKETT
Two Lakeway Center
3850 N. Causeway Blvd.
Suite 1000
Metairie, LA 70002
No appearance made in this lawsuit

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
No appearance made in this lawsuit

Robert E. Williams, IV
SULZER & WILLIAMS LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433
Attorney for SSA Gulf Terminals, Inc.

Respectfully submitted,

JOHN K. NIESET – T.A. BAR #25196
CHRISTY L. MCMANNEN - BAR #31258
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Attorneys for Hartford Accident & Indemnity Co.

CK_DOCS 416087v1

**STEPHEN P. HALL – T.A. BAR #1934**
**BARBARA L. ARRAS – BAR #17908**
**PHELPS DUNBAR LLP**
20th Floor – Canal Place
365 Canal Street
New Orleans, Louisiana 70130-6534
Telephone (504) 566-1311
Attorneys for Certain Underwriters at Lloyd's
London, Economic Insurance Company Limited,
Fine Art & General Insurance Company, Limited
National Provincial Insurance Company Limited,
The Edinburgh Assurance Company, and British
Law Insurance Company

CK_DOCS 416087v1

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 00-4270                          DIVISION "5 "                          SECTION

WALTER McDONALD

VERSUS

CROWLEY MARITIME CORPORATION, ET AL

FILED:_____      _____
                                              DEPUTY CLERK

### PLAINTIFFS' CONSOLIDATED RESPONSES TO THE DISCOVERY REQUESTS OF ALL DEFENDANTS TO ALL PLAINTIFFS IN ALL ASBESTOS-RELATED, PERSONAL INJURY AND DEATH CASES

TO:   ALL DEFENDANTS, By and Through Their Counsel of Record

NOW INTO COURT, appearing herein by and through undersigned counsel of record, come Plaintiff, Walter McDonald, who submits these Consolidated Responses to all Defendants' Discovery Requests propounded on behalf of all Defendants pursuant to the Louisiana Code of Civil Procedure.

<u>GENERAL OBJECTION</u>

Plaintiff objects, and therefore declines to respond, to each interrogatory and request for production to the extent it seeks discovery regarding confidential matters, trial preparation information, and/or matters immune from discovery by virtue of the attorney-client privilege, the work product doctrine, or any other such privilege or doctrine recognized under the Louisiana Code of Civil Procedure.

<u>PLAINTIFF'S RESPONSE TO INTERROGATORIES</u>

<u>INTERROGATORY NO. 1:</u>

Please state the name and address of each person who participated in the answers to these interrogatories or who furnished any information used in the preparation of these answers to interrogatories.

<u>ANSWER TO INTERROGATORY NO. 1:</u>

The response to these Interrogatories were prepared by Plaintiff and his counsel.



**INTERROGATORY NO. 2:**

Please state the following:

a) Your full name and all other names by which you have been known (including any nicknames).

b) The date and place of birth.

c) Your present home address.

d) In chronological order, the addresses where you have lived in the past 20 (twenty) years, and the inclusive dates of your residence at each location.

e) Your present occupation and business address:

f) Your Social Security Number.

g) Your drivers' license number, the state in which it was issued, the date of issuance, and the expiration date.

**ANSWER TO INTERROGATORY NO. 2:**

a) Walter Louis McDonald

b) September 30, 1939, Place of birth: York, AL

c) 2430 Hamilton Street, New Orleans, LA 70118

d) 2430 Hamilton Street, New Orleans, LA 70118

e) Retired.

f) 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

g) Louisiana drivers license #001823203

**INTERROGATORY NO. 3:**

If you are currently married, state your spouse's name, the date of your marriage, and the name and address of your spouse's employer.

With respect to any and all prior spouses, if any, state:

a) The name of your former spouse and the date of the marriage.

b) The date of the dissolution of the marriage or the death of spouse.

**ANSWER TO INTERROGATORY NO. 3:**

Walter McDonald is currently married to Emeldia Reaia McDonald. They have been married for approximately fifteen years. Plaintiff was previously married to Dorothy Rogers. The marriage to Dorothy Rogers ended in divorce.

2

**INTERROGATORY NO. 4:**

State the present name, age, date of birth, and address of each of your children, and of any person, who in any way is financially dependent upon you for support, including, but not limited to, parents, in-laws, relatives, or other people; and for each person, state the extent to which each person is dependent upon you for financial support.

**ANSWER TO INTERROGATORY NO. 4:**

Plaintiff has four children.  Their names are Sabrina, Cathy, Terry, and Karen.  None of them are dependant upon Plaintiff for financial support at this time.

**INTERROGATORY NO. 5:**

State the names and addresses of all schools that you have attended, the dates attended, the type of schools attended, and with respect to each, the highest grade reached, and the degree or certificate obtained, if any.

**ANSWER TO INTERROGATORY NO. 5:**

To the best of plaintiff's knowledge, Plaintiff attended school through York Westend High School in York, Alabama and received a High School diploma in 1958.

**INTERROGATORY NO. 6:**

If you have ever been arrested, charged, or convicted of a felony, please state the date, location of the incident, and the result of each such arrest, charge or conviction.

**ANSWER TO INTERROGATORY NO. 6:**

To the best of plaintiff's knowledge, plaintiff was previously arrested in New Orleans, LA for carrying a concealed weapon.

**INTERROGATORY NO. 7:**

If you have ever served in any capacity in the military service, please give the dates, your rank, service number, and branch of service; type of discharge; and the type of disability and/or pension you have received or are receiving, if any.

**ANSWER TO INTERROGATORY NO. 7:**

Plaintiff was never in the military.

**INTERROGATORY NO. 8:**

If you have ever filed a claim or received payment for disability from the Veterans' Administration, state the basis for your claim, when the claim was filed, the disposition of the

3

claim, the amount of payment you received, and the basis for such payment.

**ANSWER TO INTERROGATORY NO. 8:**

No.

**INTERROGATORY NO. 9:**

If you have ever been self-employed, state the dates of such employment, the type of work you performed, and the name of your business.

**ANSWER TO INTERROGATORY NO. 9:**

Plaintiff previously owned two sweet shops known as Mac & Cat which were located at 28 Mistletoe and 1733 Felicity. He owned these stores for about 6 to 7 years in the 1970's.

**INTERROGATORY NO. 10:**

If you have ever been a member of a union, please state:

a)      The name of each union to which you have belonged; the number and address of each local of which you have been a member; and the dates you belonged to each union and local.

b)      Whether you were an officer, director, and/or business agent of any union, and if so, describe all positions held in any unions, and the periods during which you held such positions.

c)      Whether you were ever a member of the International Association of Heat and Frost Insulators and Asbestos Workers ("the Asbestos Workers' Union");

d)      Whether you ever received the Asbestos Workers' magazine from the Asbestos Workers' Union, and if so, state whether you ever read the greensheets.

**ANSWER TO INTERROGATORY NO. 10:**

a)      To the best of plaintiff's knowledge, plaintiff was a member of the local International Longshoreman's Association.

b)      To the best of plaintiff's knowledge, plaintiff has never been an officer, director, and/or business agent of any union.

c)      To the best of plaintiff's knowledge, plaintiff has never been a member of the International Association of Heat and Frost Insulators and Asbestos Workers.

d)      To the best of plaintiff's knowledge, plaintiff has never received the Asbestos Workers' magazine.

**INTERROGATORY NO. 11:**

State your income and the source of your income for each of the last five years.  If your spouse is or has been employed, please state his/her income for the last five years.

**ANSWER TO INTERROGATORY NO. 11:**

Plaintiff is currently receiving Social Security benefits in the amount of $1,000.00 per month and a union pension of $671.00 per month.  He has been retired since becoming disabled in 1986.

**INTERROGATORY NO. 12:**

  a)  If you are presently employed, state the name and address of your employer, your job classification, rate of pay, and the type of work you are presently performing.  If you are not presently employed, give the same information as to your last employment, together with the reasons why you are no longer employed.  Please state the same information with respect to your spouse.

  b)  If you have lost any time from work because of any physical ailment, state how much time has been lost from work during the last five years and the disability that has caused you to lose time from work.

**ANSWER TO INTERROGATORY NO. 12:**

  a)  Plaintiff has been disabled since 1986.

  b)  Plaintiff has been disabled since 1986.

**INTERROGATORY NO. 13:**

  a)  If you have ever received any accidental bodily injury, state the nature and extent of injury.

  b)  If you have ever been a party to any claim or lawsuit for bodily injury, give the caption of the lawsuit, the date on which the suit was filed, the name and address of your attorney, and the ultimate disposition of the claim or lawsuit.

**ANSWER TO INTERROGATORY NO. 13:**

To the best of his knowledge, in addition to the extant matter, Plaintiff was injured on the job in 1986 while working for Cooper/T.Smith.  He filed a claim for compensation.  To the best of his knowledge, he received a settlement of $50,000.00 for this claim.  Plaintiff also sustained a

knee injury on the job while working for Cooper/T.Smith.   No claim was filed as a result of this injury but Plaintiff received a payment of $6,000.00.

**INTERROGATORY NO. 14:**

If you have ever filed a claim for worker's compensation, please give the following information with respect to each such claim:

a)      The name of the employer, date of claim, and claim file number.

b)      A description of the injury made the basis of the claim.

c)      The amount of money paid to you for the claim.

d)      If any lawsuit has been filed on the worker's compensation claim, the caption of the case, case number, and the court in which the case was filed.

e)      The name and address of any physician or chiropractor who has tested, treated, or examined you in connection with this claim.

f)      If you were hospitalized in connection with the claim, provide the name and address of the hospital, the length of your stay, and your primary physician during the hospitalization.

**ANSWER TO INTERROGATORY NO. 14:**

See response to Interrogatory No. 13.  Furthermore, Plaintiff has filed a claim for Longshore and Harbor Workers Compensation Act benefits against Ryan-Walsh and Cooper/T. Smith for his development of an occupational lung cancer.  The claim is currently pending.

**INTERROGATORY NO. 15:**

Described in detail your employment history, including:

a)      The name and address of each employer.

b)      The dates during which you worked for each employer,

c)      The location and description of each job site where you were employed, and the dates during which you worked at each such job site.

d)      The name and last known address of your immediate supervisor and co-workers at each job site where you are claiming exposure to asbestos.

e)      Your wage rate and hours worked in an average week for each job site where you claim you were exposed to asbestos.

f)      Your job duties, craft, and titles for each job site where you were employed and

claim exposure to asbestos-containing products.

g)     The reason your employment with each employer listed was terminated.

h)     Each job site and the dates during which you claim to have been exposed to asbestos.

i)     Each asbestos product to which you were exposed, including the name of the manufacturer, the trade name of the product, and the description of the product.

j)     When, where, and whether you worked with and/or around each asbestos product identified above.

k)     Whether you were exposed to any dust, fumes, or gases, and if so, what were you exposed to and at what jobs.

**ANSWER TO INTERROGATORY NO. 15:**

To the best of his knowledge, Plaintiff was employed as a longshoreman from 1959 to 1986 in the Port of New Orleans, LA. During this time, he worked for various stevedore companies in the Port. Plaintiff worked in the gang that was responsible for loading and unloading cargoes from the vessels in the Port. The cargoes included shipments of raw asbestos fibers that were being unloaded from the vessels by the longshoremen. These asbestos cargoes created dust in the cargo holds and other areas of the vessel and adjacent wharves during stevedoring operations, including unloading, loading and storage, resulting in substantial exposures to asbestos to longshoremen handling the cargos directly as well as those working in the general vicinity while these operations were ongoing. Moreover, Plaintiff, and other members of the gang handling the unloading and loading of cargoes, also removed asbestos cargoes destined for Galveston and Houston, Texas in order to unload the New Orleans cargoes. As a result, asbestos dust was emitted in the removal and restoring of the asbestos cargoes bound for Texas. The Journal of Commerce identifies the import of asbestos cargoes which were unloaded in the Port of New Orleans, Louisiana and the Ports of Galveston and Houston, Texas.

Plaintiff also had occasion to board vessels which were insulated with asbestos products resulting in asbestos exposure. While the vessels being loaded and unloaded by longshoremen, including Plaintiff, were in Port, various repair and contracting companies removed and installed asbestos-containing products on the vessels resulting in Plaintiff, and other stevedores, sustaining additional exposures to asbestos. The stevedores aboard these vessels, including Plaintiff, went

7

throughout these vessels including into the engine room and other areas of the vessel during the course of performing their job duties.  During this time, they were exposed to asbestos-containing products while the vessel was undergoing maintenance and repair operations.

**INTERROGATORY NO. 16:**

    a)    State the name, last known address (business or home), relationship to you, present occupation, of each witness that has any knowledge of the facts relevant to this lawsuit, including those persons who have knowledge of any time that you may have been exposed to any products that may have contained asbestos.

    b)    As to each individual listed above, describe the jobsite at which they worked, their occupation at each jobsite, the asbestos-containing products they can identify at each such jobsite, and whether they worked with Plaintiff at each such jobsite.

**ANSWER TO INTERROGATORY NO. 16:**

    To the best of Plaintiff's knowledge, in addition to Plaintiff, Walter McDonald, Plaintiff responds that the following may have information regarding his exposure to asbestos during the course and scope of his employment as a longshoreman: Simmie Walker, Mose Brown, and Percy Pontiff.  Moreover, the following may have information concerning the dust created during the loading and unloading of asbestos cargoes as well as the shipments of asbestos into the Port of New Orleans: William Schulte, and Douglas Faulkner.  Plaintiff also refers defendants to the medical records for the identity of various physicians with information regarding the history, care and treatment of Plaintiff for lung cancer including, but not limited to, Kathleen Wilson, M.D.

**INTERROGATORY NO. 17:**

    If you have any direct evidence of invoices from suppliers for any purchases or products containing asbestos from any or all of the Defendants, which products were used on job sites where you worked, identify the document by name of supplier, date of invoice, name of purchaser, and place of delivery.

**ANSWER TO INTERROGATORY NO. 17:**

    To the best of his knowledge, the Journal of Commerce has information pertaining the shipment of cargos including asbestos into the Ports of New Orleans, Galveston and Houston during certain periods of time.  An abstract of these records is attached hereto.

**INTERROGATORY NO. 18:**

    a)    When did you first experience any problems with your respiratory health, lungs, or breathing?

    b)    Describe in layman's language what your physical complaints were at the time you first experienced such problems.

    c)    If the physical complaints and symptoms of which you now complain are different from those you first experienced, as described above, please describe your present complaints and symptoms, and state when you first experienced those complaints.

    d)    Identify each physician who has advised you that you had any of the following, and when you were so advised;

        1)    Chronic obstructive lung disease;

        2)    Emphysema;

        3)    Pneumoconiosis;

        4)    Asbestosis; or

        5)    Any other lung condition that the physician indicated was related to the exposure of asbestos-containing products.

**ANSWER TO INTERROGATORY NO. 18:**

To the best of his knowledge, Plaintiff responds that he was diagnosed with lung cancer at Ochsner Clinic on or about March 19, 1999.  Since the diagnosis of his disease, his primary treating physician has been Kathleen Wilson, M.D.

**INTERROGATORY NO. 19:**

Excluding the information provided in response to Interrogatory No. 18 above, please state the name and address of each physician who has examined or treated you, or to whom you have gone for any reason during your lifetime, the reason you consulted each physician, the dates and type of any treatment received.

**ANSWER TO INTERROGATORY NO. 19:**

Plaintiff  objects to this Interrogatory as it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding the foregoing objection, Plaintiff responds, to the best of his knowledge, that he has been examined,

cared for and/or treated by the following physicians

>Kathleen Wilson, M.D.
>Ochsner Clinic
>1415 Jefferson Hwy.
>New Orleans, LA 70124

>Steven Granier, M.D.
>Ochsner Clinic
>1415 Jefferson Hwy.
>New Orleans, LA 70124

>George Furhman, M.D.
>Ochsner Clinic
>1415 Jefferson Hwy.
>New Orleans, LA 70124

>Anna C. Davis, M.D.
>St. Charles General Hospital
>3700 St. Charles Avenue
>New Orleans, LA 70115

Plaintiff has also seen various physicians in the Ochsner system over the years. A copy of the medical records is available in the Plaintiff's master file which can be reviewed at the law offices of Martzell & Bickford.

**INTERROGATORY NO. 20:**

Please state the name and address of any hospital or clinic in which you were examined, had tests or x-rays performed, received outpatient care, or were hospitalized during your lifetime, the dates and reasons for each examination, testing, hospitalization, or treatment.

**ANSWER TO INTERROGATORY NO. 20:**

Plaintiff objects to this Interrogatory as it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, Plaintiff submits that he has been treated in the following facilities:

>Ochsner Hospital and Clinic
>1415 Jefferson Hwy.
>New Orleans, LA 70124

>St. Charles General Hospital
>3700 St. Charles Avenue
>New Orleans, LA 70115

A copy of the medical records is available in the Plaintiff's master file which can be reviewed at the law offices of Martzell & Bickford.

**INTERROGATORY NO. 21:**

If you have ever smoked, state when you started smoking, what type of tobacco product

you smoked, how long have you smoked, how much have you smoked of each type of tobacco product, whether a physician ever advised you to stop smoking, and if so, who and when, and state if applicable, the reasons you stopped smoking.

**ANSWER TO INTERROGATORY NO. 21:**

Plaintiff has never smoked cigarettes.  However, he did occasionally smoke cigars between approximately 1974 when he was 35 until approximately 1998.

**INTERROGATORY NO. 22:**

If you have ever been examined through a company or union screening program for lung or respiratory disease, give the dates, place and details of your examination, and the name of the company or union sponsoring the program.

**ANSWER TO INTERROGATORY NO. 22:**

To the best of his knowledge, Plaintiff has never been examined through a company or union screening program for lung or respiratory disease.  However, several years ago, Cooper/T.Smith sent him to an asbestos screening at a location near Baptist Hospital (now Memorial Medical Center-Uptown Campus) on Napoleon Avenue, New Orleans, LA.

**INTERROGATORY NO. 23:**

    a)    How and under what circumstances did you learn that asbestos could be harmful to your health?

    b)    When did you first believe that the lung problems or breathing problems complained of might have been related to asbestos-containing products?

    c)    When were you first told, and by whom, that any lung problems or breathing problems complained of might have been related to asbestos-containing products?

**ANSWER TO INTERROGATORY NO. 23:**

Plaintiff became aware that asbestos was hazardous to your health during casual conversations with fellow stevedores and friends who worked at Avondale Shipyard.  He can not recall the specific time period during which these conversations were held but believes them to be many years ago.

**INTERROGATORY NO. 24:**

    a)    Identify all expert witnesses who have been consulted in connection with this action, even if they may not be called to testify at trial, if their opinion has been

reviewed by a testifying expert.

b) State the impressions and opinions held by and the facts known by any consulting

expert identified above.

c) Identify all documents and tangible things, including reports, prepared by or relied

on by any consulting expert identified above.

**ANSWER TO INTERROGATORY NO. 24:**

Plaintiff objects to the discovery of "consulting experts."  Without waiving said

objection, plaintiff responds to the best of his knowledge:

1.      Dr. David Ozonoff - Expert
        Boston University School of Public Health
        80 East Concord Street
        Boston, MA  02118

Dr. Ozonoff is a physician, epidemiologist and medical historian and his testimony,  may

be in regard to his review of the medical literature concerning asbestos diseases.  David Ozonoff,

M.D., M.P.H., a professor of medicine at Boston University, may testify live or by deposition.

(1)      The defendants knew or should have known historically that asbestos inhalation

could cause asbestosis, lung cancer, mesothelioma, and other asbestos-related diseases.

(2)      Dr. Ozonoff may also testify that a person exposed to asbestos is at a higher risk

than the normal individual to develop some form of cancer.  Dr. Ozonoff may also testify that it

is his opinion that ten years after the cessation of cigarette smoking the risk of lung cancer

attributable to smoking is almost nil.  He may also testify that only 8% - 12% of those who

smoke cigarettes in heavy quantities will never suffer any form of lung cancer.  The basis of this

opinion is founded on recent statistics filed by the National Cancer Institute, the United States

Public Service, and Herbert Seidemann and others.

Dr. Ozonoff may also testify that gastrointestinal cancer which results in a person who

also has asbestosis can be attributable to the asbestos exposure.  The basis for this opinion is

epidemiological studies by Selikoff and other that show that GI cancer is greatly increased in

those persons who have been exposed to asbestos.

Furthermore, Dr. Ozonoff may testify concerning the following:

Between the years 1898 and 1930, the medical community gradually became aware of a fibrotic

lung disease which, in 1927, actually received the name asbestosis.  By year 1930, it is Dr.

Ozonoff's opinion that there was a general acceptance that exposure to asbestos was linked to a

12

serious lung disease.  It as the disease that was caused by the inhalation of asbestos dust in sufficient quantities

that would cause scarring in the lungs.  If the scarring was serious enough, it could be incapacitating and/or fatal.

The first cancer cases which were reported in association with asbestos exposure appeared in 1934.  Over the next two decades, there were a series of articles published associating asbestos exposure and lung cancer.  It is Dr. Ozonoff's opinion that, by 1949, there was a causal relationship established between asbestos exposure and cancer.

There was considerable debate about mesothelioma throughout the 1930s, 40s and 50s as to whether it was just a lung cancer or a special disease.  It was known by several names sometimes called pleural cancer, sometimes called endothelioma and it is sometimes called mesothelioma.  It is Dr. Ozonoff's opinion that the medical community associated the cause of mesothelioma with asbestos exposure perhaps as early as 1949 but it is certainly his opinion that a consensus formed no later than 1960 as to this dreaded disease.

Dr. Ozonoff may also testify as to significant pieces of medical literature and studies which have related asbestos to health risks.  Dr. Ozonoff bases his opinion in part upon those articles noted in his bibliography and more specifically the following:

1. Annual report of the chief inspector of factories for the year 1898. HMSO, 1899, Part II, Reports, pp. 171-172.

2. Murray, H.M., "Report of the Departmental Committee on Compensation for Industrial Disease, Minutes of Evidence Appendices and Index, 3495-3496, London: Wyman and Sone (1907)

3. Pancoast, H.K., Miller, T.G., Landis, H.R.M., "A Roentgenologic Study of the Effects of Dust Inhalation upon the Lungs," Trans. Assoc. Amer. Phys. 32:97-108 (1917)

4. Cooke, W.E., "Pulmonary asbestosis," Br. Med.J., 2:1024-1025 (1927)

5. Cooke, W.E. and Hill, C.F., "Pneumoconiosis due to asbestos dust,", J. Royal Micr. Soc., 47:232-238, 1927, (reported in Br. Med. J., 1:890-891, 1927; cites in JAMA, 89:304, 1927)

6. Merewether, E.R.A., and Price, C.W., "Reports of the Effect of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry," pp. 5-34, London: HMSO (1930)

7. Merewether, E.R.A., "A memorandum on asbestosis," Tubercle: 15:69-81, 109-118, 152-159, (1933, 1934)

8. Wood, W.B. and Gloyne, S.R.,. "Pulmonary asbestosis:  a review of one hundred cases," Lancet, 2:1383-1385 (1934)

13

9.    Lynch, K.M. and Smith, W.A., "Pulmonary asbestosis. III: carcinoma of lung in asbestos-silicosis," Am. J. Cancer, 24:56-64 (1935)

10.   Nordmann, M., "Der Berufskrebs der Asbestarbeiter," Z. Krebsforsch., 47:288-302 (1938)

11.   Vorwald, A.J. and Karr, J.W., "Pneumoconiosis and pulmonary carcinoma," Am. J. Path., 14:49-57 (1938)

12.   Hueper, W.C., Occupational tumors and allied diseases.  Springfield, Ill: Chas. C. Thomas, 1942, pp. 399-405.

13.   Hueper, W.C., "Cancer in its relation to occupation and environment," Bull. Am. Soc. Control of Cancer, 25:63-69 (1943)

14.   "Case records of the Massachusetts General Hospital.  Case 33111," NEJM, 236:407-412 (1947)

15.   Annual report of the chief inspector of factories for the year 1947. London:  HMSO:  1949, pp. 78-81.

16.   Doll, R., "Mortality from lung cancer in asbestos workers," Br. J. Ind. Med., 12:81-86 (1955)

This is the general nature of the possible testimony of Dr. David Ozonoff.  However, he will not limit any testimony to the specific articles above and may utilize certain other documents in conjunction with his testimony such as other medical articles, trade association journals and corporate documents.  His testimony will be directed to issues concerning the asbestos manufacturers and suppliers as well as the shipowner defendants.  Dr. Ozonoff may also testify concerning those matters contained in his report which has been served upon counsel.

2.    Dr. Thomas Mancuso - Expert
      Professor Emeritus
      University of Pittsburgh
      5127 Ellsworth Avenue
      Pittsburgh, PA  15232

Dr. Mancuso may testify by video-taped deposition taken September 1 and 2, 1983 in Mississippi in a multi-jurisdiction deposition.  Dr. Mancuso may testify inter alia concerning his personal employment with Philip Carey, the predecessor to Celotex, and also the involvement that Carey had in the asbestos industry.  He may further offer his opinions concerning the "state-of-the-art," threshold limit values, industrial hygiene, epidemiology and the importance of certain documents that may be called to his attention during trial.  Further, Dr. Mancuso may testify concerning his experience at Philip Carey Corporation and his conversations with various officers, officials and employees of that corporation.

3.    Dr. Victor Roggli - Expert
      Department of Pathology
      Duke Medical Center
      Durham, NC 27710

Dr. Victor L. Roggli is a pulmonary pathologist at the Duke University School of

Medicine in Durham, North Carolina.  Dr. Roggli may also testify concerning the identity of

asbestos fiber and bodies by mineralogic classification.  He may testify as to the general medical

issues concerning the development, cause, and the diagnosis of mesothelioma, lung cancer,

asbestosis, and/or other asbestos-related diseases.  He may also testify on the anatomy, pathology

and physiology of the lung.  He may also testify on the matters set forth in his testimony in

Cimino v. Raymark which petitioner's counsel has produced to defendants on several occasions

in asbestos litigation.

4.    Barry I. Castleman, S.C.D. - Expert
      1722 Linden Avenue
      Baltimore, MD 21217
      Barry Castleman is an environmental consultant with a doctor of science degree from

John Hopkins University, who has extensively research the issues of the asbestos industry's

knowledge of asbestos-related diseases and the corporate response to the knowledge of the health

hazards caused by asbestos exposure.

Dr. Castleman is expected to testify about the knowledge of the defendants regarding the

effects of inhalation of asbestos fibers based upon the literature, other publications, and corporate

documents.  Additionally, Dr. Castleman may testify concerning the matters set forth in his

deposition provided in the John T. Hannon, et al versus Waterman Steamship Corp., et al; In the

United States District Court for the Eastern District of Louisiana; C.A. 80-1175 "E"(2) which has

previously been provided to counsel.

5.    Dr. William Nicholson - Expert
      Mt. Sinai Medical Center
      Division of Environmental and
      Occupational Medicine
      1 Gustave Levy Place
      New York, NY 10029

Dr. William Nicholson is expected to testify on the epidemiological literature concerning

asbestos-related disease.  He may testify concerning his research and work in the area of asbestos

such as:

Nicholson, W.J., "Asbestos Health Effects Update," Environmental Sciences
Laboratory, September, 1983.

15

Nicholson, W.J., "Airborne Asbestos Health Assessment Update," Environmental and Occupational Medicine, June, 1986.

He may testify about the various asbestos fiber types and the ability of each to cause disease. He may testify that asbestos can cause asbestosis, lung cancer, and mesothelioma. He may further testify that asbestos exposure can cause various forms of extra thoracic cancers, including laryngeal and pharyngeal cancers, stomach cancer, colon-rectal cancer, and kidney cancer. Plaintiffs refer defendants to the testimony of Dr. Nicholson in Rosemary Boyett v. Lykes Bros. Steamship Co., Inc., et al, Cause No. 90-2965, in the United States District Court for the Eastern District of Louisiana for further information on the nature of Dr. Nicholson's testimony.

6.   Charles Ay - Fact/Expert
      19481 Jasper Hill Road
      Trabuco Canyon, CA 92679

Mr. Ay may testify regarding the use of asbestos-containing products during construction and maintenance and repair of vessels. His testimony may include, but not be limited to, the physical and chemical properties of the asbestos products utilized in insulation, the propensity of these products to create respirable dust, and his knowledge of, in general and specifically concerning the application, maintenance and repair insulation. He may address with specificity the various asbestos products used at shipyards and aboard ship, the manufacturers of these products, the asbestos content of said products and the dust created by these products during application and tear out operations. Mr. Ay may also testify regarding opinions and testimony provided his testimony during his deposition in John T. Hannon, et al versus Waterman Steamship Corp., et al, in the United States District Court for the Eastern District of Louisiana, C.A. No. 80-1175 "E"(2) and at trial in Rosemary Boyett v. Lykes Bros. Steamship Co., Inc., et al, Cause No. 90-2965, in the United States District Court for the Eastern District of Texas and Daniel Johnstone, et al versus American Oil Company, et al, in the United States District Court for the Eastern District of Louisiana. Counsel should already have a copy of this testimony.

7.   Dr. Ronald Dodson - Expert
      University of Texas
      Health Science Center
      Tyler, TX 75710

Dr. Ronald Dodson may identify asbestos fiber and bodies by mineralogic classification. He may testify as to the general medical issues concerning the development, cause, and the diagnosis of mesothelioma, lung cancer, and/or other asbestos-related diseases. He may also

testify about his research and opinions on the different types of asbestos, their propensity to cause disease and his opinions on the quantity and quality of asbestos to cause disease.

8.    Frank Parker
      E.T.I.
      200 Brantley Lane
      Magnolia, TX 77355

Mr. Parker is an expert industrial hygienist who may testify concerning the petitioner's occupational exposure to asbestos. He may also testify concerning the asbestos dust levels which petitioner was exposed to due during the course and scope of his employment. He may also testify concerning the amount of asbestos that is necessary to produce the various diseases associated with inhalation of asbestos dust and fiber including, but not limited to, asbestosis, lung cancer and mesothelioma.

9.    Dr. Bill Longo
      Dr. Richard Hatfield
      MAS, Inc.
      3945 Lakefield Court
      Suwanee, GA 30024

Dr. Longo is an expert in material analysis. He may testify concerning the physical and chemical composition of the various asbestos-containing products manufactured by the defendants in this case including raw fiber, pipe covering, block, gaskets, wallboard and cloth. Dr. Longo may testify concerning the friability of the various asbestos-containing products manufactured by the defendants. He may also testify concerning the various methods for measurement of asbestos dust. Additionally, his testimony may include information and opinions concerning the tindel effect and the quantity of asbestos that is released in the ambient atmosphere through the installation and repair of asbestos-containing products.

10.    Dr. Richard A. Lemen - Expert
       3495 Highgate Hills Drive
       Duluth, Georgia 30097

Dr. Lemen is an industrial hygienist and public health and occupational disease expert who may testify live or by deposition that:

(1)    The defendants knew or should have known historically that asbestos inhalation could cause asbestosis, lung cancer, mesothelioma, and other asbestos-related diseases.

(2)    Dr. Lemen may also testify that a person exposed to asbestos is at a higher risk than the normal individual to develop some form of cancer. Dr. Lemen may also testify that it is his opinion that ten years after the cessation of cigarette smoking the risk of lung cancer

17

attributable to smoking is almost nil.  He may also testify that only 8% - 12% of those who smoke cigarettes in heavy quantities will ever suffer any form of lung cancer.  The basis of this opinion is founded on recent statistics filed by the National Cancer Institute, the United States Public Service, and Herbert Seidemann and others.

Furthermore, Dr. Lemen may testify concerning the following:

Between the years 1898 and 1930, the medical community gradually became aware of a fibrotic lung disease which, in 1927, actually received the name asbestosis.  It is Dr. Lemen's opinion that by 1930 there was a general acceptance that exposure to asbestos was linked to a serious lung disease.  This disease was caused by the inhalation of asbestos dust in quantities sufficient to  cause scarring in the lungs.  If the scarring was serious enough, it could be incapacitating and/or fatal.

The first cancer cases which were reported in association with asbestos exposure appeared in 1934.  Over the next two decades, there were a series of articles published associating asbestos exposure and lung cancer.  It is Dr. Lemen's opinion that, by 1949, there was a causal relationship established between asbestos exposure and cancer.

There was considerable debate, from the 1930's through the 1950's, as to whether mesothelioma was just a lung cancer or a special disease.  It was known by several names, sometimes called pleural cancer, other times called endothelioma or mesothelioma.  It is Dr. Lemen's opinion that the medical community associated the cause of mesothelioma with asbestos exposure perhaps as early as 1949 and that a consensus certainly formed no later than 1960.

Dr. Lemen may also testify as to significant pieces of medical literature and studies which have related asbestos to health risks.  Dr. Lemen bases his opinion in part upon those articles noted in his bibliography and, more specifically, the following:

Annual report of the chief inspector of factories for the year 1898.  HMSO, 1899, Part II, Reports, pp. 171-172.

Murray, H.M., "Report of the Departmental Committee on Compensation for Industrial Disease," Minutes of Evidence Appendices and Index, 3495-3496, London: Wyman and Sone (1907)

Pancoast, H.K., Miller, T.G., Landis, H.R.M., "A Roentgenologic Study of the Effects of Dust Inhalation upon the Lungs," Trans. Assoc. Amer. Phys. 32:97-108 (1917)

Cooke, W.E., "Pulmonary asbestosis,"  Br. Med.J., 2:1024-1025 (1927)

Cooke, W.E. and Hill, C.F., "Pneumoconiosis due to asbestos dust,", J. Royal

Micr. Soc., 47:232-238, 1927, (reported in Br. Med. J., 1:890-891, 1927; cites in JAMA, 89:304, 1927)

Merewether, E.R.A., and Price, C.W., "Reports of the Effect of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry," pp. 5-34, London: HMSO (1930)

Merewether, E.R.A., "A memorandum on asbestosis," Tubercle: 15:69-81, 109-118, 152-159, (1933, 1934)

Wood, W.B. and Gloyne, S.R.,. "Pulmonary asbestosis: a review of one hundred cases," Lancet, 2:1383-1385 (1934)

Lynch, K.M. and Smith, W.A., "Pulmonary asbestosis. III: carcinoma of lung in asbestos-silicosis," Am. J. Cancer, 24:56-64 (1935)

Nordmann, M., "Der Berufskrebs der Asbestarbeiter," Z. Krebsforsch., 47:288-302 (1938)

Vorwald, A.J. and Karr, J.W., "Pneumoconiosis and pulmonary carcinoma," Am. J. Path., 14:49-57 (1938)

Hueper, W.C., Occupational tumors and allied diseases. Springfield, Ill: Chas. C. Thomas, 1942, pp. 399-405.

Hueper, W.C., "Cancer in its relation to occupation and environment," Bull. Am. Soc. Control of Cancer, 25:63-69 (1943)

"Case records of the Massachusetts General Hospital. Case 33111," NEJM, 236:407-412 (1947)

Annual report of the chief inspector of factories for the year 1947. London: HMSO: 1949, pp. 78-81.

Doll, R., "Mortality from lung cancer in asbestos workers," Br. J. Ind. Med., 12:81-86 (1955)

Wagner, J.C., et al "Diffuse pleural mesothelioma and asbestos exposure in the North Western Cape Province," Brit. J. Industr. Med, 17:260-271 (1960)

Wagner, J.C., "Epidemiology of diffuse mesotheliomal tumors: evidence of an association from studies in South Africa and the United Kingdom," Ann. N.Y. Acad. Sci., 132:575-578 (1965)

This is the general nature of the possible testimony of Dr. Lemen. However, he will not limit any testimony to the specific articles above and may utilize certain other documents in conjunction with his testimony such as other medical articles, trade association journals and corporate documents. His testimony will be directed to issues concerning the asbestos manufacturers and suppliers.

11.   Richard Kradin, M.D.
      Massachusetts General Hospital
      100 Blossom Street, Cox 5
      Boston, MA  02114

      Dr. Richard Kradin is a pulmonary pathologist at the Harvard School of Medicine in a

Boston, Massachusetts.   He may identify asbestos fiber and bodies by mineralogic classification. He may testify as to the general medical issues concerning the development, cause, and the diagnosis of mesothelioma, lung cancer, asbestosis, and/or other asbestos-related diseases.  He may also testify on the anatomy, pathology and physiology of the lung.  Dr. Kradin may also testify concerning his review of the pathology and records in this matter and his diagnosis of an asbestos-related lung cancer.

12.     Any physician who has examined, care for and/or treated the Plaintiff.

**INTERROGATORY NO. 25:**

      a)     Identify each expert witness who may be called as a witness to testify at trial.

      b)     State the impressions and opinions held by and the facts known by any expert identified above.

      c)     Identify all documents and tangible things, including reports, prepared by or relied on by any expert identified above.

**ANSWER TO INTERROGATORY NO. 25:**

    See Plaintiff's Response to Interrogatory No. 24 above.

**INTERROGATORY NO. 26:**

    If this is a wrongful death or survival action, please state:

    a)     The date of death.

    b)     Whether the deceased had a Last Will and Testament and whether any administration has been had on the decedent's estate.

**ANSWER TO INTERROGATORY NO. 26:**

    This is not a wrongful death action.

**INTERROGATORY NO. 27:**

    If Plaintiff has entered into any settlement agreement, or received any monies from a named Defendant or any third party to this action, please state:

      a)     The name of the party or person with whom Plaintiff has entered into any settlement agreement.

      b)     The date and terms of the agreement.

      c)     The amount of money received by Plaintiff from each person or party.

**ANSWER TO INTERROGATORY NO. 27:**

Plaintiff objects to this interrogatory as it is not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 28:**

State when, (including the month, date and year), you first contacted an attorney for the purpose of obtaining professional legal services regarding your alleged asbestos exposure, and the date of any agreement to provide you with legal services regarding same.

**ANSWER TO INTERROGATORY NO. 28:**

Plaintiff objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

The reports of all expert witnesses whom Plaintiff may call at the trial of this case, and all documents reviewed by any such expert in connection with this matter.

**RESPONSE TO REQUEST NO. 1:**

Plaintiff has copies the available medical records from St. Charles General Hospital and Ochsner Clinic and placed them in the master file. A copy of Dr. Richard Kradin's report is attached. As discovery is ongoing, additional reports and records will be produced in accordance with the L.C.C.P. and the applicable Orders of this court

**REQUEST FOR PRODUCTION NO. 2:**

All photographs, films, movies, or video recordings that depict or purport to depict anything relevant to any of the matters at issue in this case, including any of the matters alleged in your complaint or petition.

**RESPONSE TO REQUEST NO. 2:**

Plaintiff does not currently have any photographs that may be used at the trial of this matter at the present time.

**REQUEST FOR PRODUCTION NO. 3:**

All documents reflecting any claims or settlements made by you in connection with any asbestos-related injury or disease that you sustained.

**RESPONSE TO REQUEST NO. 3:**

      Plaintiff objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 4:**

      All documents (including, but not limited to, notes, calendars, diaries, or like materials) prepared or kept by you and all documents made by you in connection with a) any exposure to asbestos or asbestos-containing materials; b) any conduct of the Defendants with respect to asbestos or asbestos-containing products; c) any asbestos-related injury, disease, or treatment (including mesothelioma); or d) any elements of actual damages resulting from your claimed asbestos-related injury.

**RESPONSE TO REQUEST NO. 4:**

      Plaintiff will produce an exhibit list delineating the damages and liability documents which may be utilized at the trial of this matter at a later date within the time constraints dictated by this court.  Copies of medical records, medical expenses, employment and income records, if applicable, are available for inspection and copying at the Law offices of Martzell & Bickford at a mutually convenient time.

**REQUEST FOR PRODUCTION NO. 5:**

      All documents that Plaintiff may seek to introduce into evidence at trial.  This request includes, but is not limited to, a) documents related to the use of asbestos or asbestos-containing products; b) documents related to safety precautions in connection with asbestos or asbestos-containing products; and  documents related to the medical risks associated with asbestos or asbestos-containing products.

**RESPONSE TO REQUEST NO. 5:**

      See Plaintiff's Response to Request No. 4.

**REQUEST FOR PRODUCTION NO. 6:**

      In all wrongful death cases, copies of the Decedent's death certificate, autopsy report and autopsy protocol.

**RESPONSE TO REQUEST NO. 6:**

      Not applicable.

**REQUEST FOR PRODUCTION NO. 7:**

All copies of your medical records, including specifically any medical records relating to any respiratory, breathing, or lung related injury or illness (including, but not limited to, asbestosis, mesothelioma, emphysema, asthma, bronchitis, lung cancer and chronic obstructive pulmonary disease).

**RESPONSE TO REQUEST NO. 7:**

Plaintiff's medical records, medical expenses, employment and income records, if applicable, are available for inspection and copying at the Law offices of Martzell & Bickford at a mutually convenient time.

**REQUEST FOR PRODUCTION NO. 8:**

All x-rays and pathology materials of any kind of the Plaintiff or Decedent.

**RESPONSE TO REQUEST NO. 8:**

The available x-rays and pathology specimens are either in the possession of Plaintiff's expert or have been requested from the various health care providers and facilities.  Once Plaintiff's experts have concluded their evaluation of these materials, they will be provided to Defendants with the understanding that any materials loaned by the Plaintiff are returned within a reasonable amount of time.

**REQUEST FOR PRODUCTION NO. 9:**

All documents, including sales receipts and invoices, that support your claim that you were exposed to asbestos-containing products manufactured, distributed or sold by any Defendants.

**RESPONSE TO REQUEST NO. 9:**

Plaintiff attaches some of the information that has been obtained from the Journal of Commerce on asbestos shipments into the Port of New Orleans.

**REQUEST FOR PRODUCTION NO. 10:**

All materials provided to each consulting expert identified in response to Interrogatory No. 24 a) and copies of all materials prepared by such consulting experts.

**RESPONSE TO REQUEST NO. 10:**

Plaintiff objects to this request inso far as it seeks materials immune from discovery. Without waiving said objection, Plaintiff refers to his Answer to Interrogatory No. 24.

**REQUEST FOR PRODUCTION NO. 11:**

All other documents identified in response to any of the attached interrogatories.

**RESPONSE TO REQUEST NO. 11:**

Please refer to Plaintiff's Response to Request No. 4.

**REQUEST FOR PRODUCTION NO. 12:**

Please complete and sign all authorization forms attached hereto as Exhibits A through H and return a compete set of originals within five (5) days of signing.

**RESPONSE TO REQUEST NO. 12:**

Authorization Forms have been sent to Plaintiff to execute, and will be provided to Defendants upon receipt.

Respectfully submitted,

**MARTZELL & BICKFORD**

SCOTT R. BICKFORD, #1165
JOHN R. MARTZELL, #9013
ANDREA F. LONG, #24157
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been sent to counsel for all parties by delivery of same by placing a copy of same in the United States Mail, postage prepaid, and properly addressed, this _21 st_ day of March, 2001.

F:\CLIENTS\MCDONALD.WLT\DISCOVER\MASTER.DIS

24