**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 2 2009

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re Asbestos Products Liability | : | MDL Docket No. 875 |
| Litigation (No. VI) | : | CTO 319 |
| | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PLEADING NO. 5817

| | |
|---|---|
| GERALD L. HOFFEDITZ and JUDITH L. HOFFEDITZ | : |
| Plaintiffs, | : |
| | : |
| v. | : Docket No:  09-cv-00257 (WJM) |
| | : |
| AM GENERAL, LLC individually and as successor in interest to AM GENERAL CORP., et al., | : |
| Defendants. | : |

## DEFENDANT AM GENERAL LLC'S BRIEF IN
## OPPOSITION TO PLAINTIFFS' MOTION TO VACATE
## CONDITIONAL TRANSFER ORDER (CTO-319)

On March 4, 2009, this Panel entered CTO-319, which identified certain asbestos "tag-along actions," including this case, to be conditionally transferred to MDL-875 pursuant to 28 U.S.C. § 1407.  *See* Order of March 4, 2009 (**Ex. A**).  Plaintiffs in this matter, *Gerald and Judith Hoffeditz*, No. 09-CV-00257 (D. NJ), filed a motion to vacate CTO-319 on April 8, 2009.

Defendant AM General LLC, (hereinafter "AM General"), by its attorneys, pursuant to 7.4(f) and 7.2(c) of the Rules of Procedure of the JPML, submits this brief in opposition to the motion to vacate.  This Panel has previously determined that centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused

OFFICIAL FILE COPY IMAGED APR 2 3 2009

by asbestos or asbestos-containing products is necessary for the convenience of parties and witnesses, and will promote the just and efficient conduct of such actions. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991) (**Ex. B**). These considerations apply with equal force to the claims at issue here, which share one or more common issues with the cases currently pending in MDL-875. Plaintiffs fail to provide any valid reasons why their asbestos exposure claim should not be transferred to the MDL. As explained more fully below, this Panel should deny the motion to vacate CTO-319.

## STATEMENT OF THE CASE

Plaintiffs Gerald and Judith Hoffeditz seek to recover for personal injury allegedly resulting from exposure to asbestos-containing products during occupational and non-occupational activities. On November 5, 2008, Plaintiffs filed their Complaint, asserting product liability claims, in the Superior Court of New Jersey in and for Middlesex County, naming AM General LLC ("AM General") as one of many defendants. The Complaint fails to specify which AM General products, if any, caused Mr. Hoffeditz's exposure to asbestos. It merely alleges that Mr. Hoffeditz was exposed to asbestos from his work on personal vehicles and from his work at Letterkenny Army Depot. AM General was served with the Complaint on December 9, 2008. A copy of the Complaint is attached hereto as **Ex. C.**

Plaintiffs' Answers to Part I Interrogatories, also served on AM General on December 9, 2008, fail to provide any additional detail concerning the type or class of AM General product to which the Plaintiff was allegedly exposed. The Interrogatory answers provide some additional information regarding Mr. Hoffeditz's employment at the Letterkenny Army Depot and state that he was exposed to asbestos for approximately 25 years, but the Plaintiffs' responses fail to identify any additional detail concerning the type of vehicles he worked on during the scope of

2

his employment or outside of his employment.  A true and correct copy of Plaintiffs' Answers to Part I Interrogatories is attached hereto as **Ex. D.**

On January 7-9, 2009, Mr. Hoffeditz was deposed and, for the first time, provided detail as to which types of AM General's product to which he was allegedly exposed.  The transcript from Mr. Hoffeditz's deposition was published on January 29, 2009.  Based on Mr. Hoffeditz's deposition testimony, AM General timely filed its Notice of Removal on January 20, 2009, well within 30 days after either the deposition itself or the publication of its transcript, and immediately thereafter filed a Motion to Stay these Proceedings pending transfer of this matter to MDL-875 for consolidated and coordinated pretrial proceedings.

Plaintiffs filed a Motion to Remand this matter to state court on February 6, 2009.  AM General filed its Response in Opposition to the Motion for Remand on February 17, 2009.  Plaintiffs filed their Reply Brief on February 23, 2009.  AM General filed a Sur-Reply on March 12, 2009.  Plaintiffs filed their Sur-Sur-Reply on March 17, 2009.  Thus, briefing by all parties on the remand issue was completed a month ago.  *See* AM General's Opposition to Plaintiffs' Motion for Remand and AM General's Sur-Reply (without voluminous exhibits) (attached collectively as **Ex. E**).

## ARGUMENT

### A.    Gerald Hoffeditz's Diagnosis Provides No Support to Vacate the MDL's Transfer Order.

Plaintiff's illness is not reason enough to avoid transfer of this case to the MDL.  *See In re Asbestos Cases of Hatch, James & Dodge, G. Patterson Keahey*, No. 2:06-CV-741 TS, 2007 WL 582983, slip op. at 1-2 (D. Utah Feb. 20, 2007) (denying plaintiff's motion for relief, which asked the court to reconsider the issue of remand after the case had been transferred to the MDL based on the argument that plaintiff suffered from mesothelioma; should have his "day in court;"

and remand would allow for an expedited proceeding. The Court stated that it must consider not only plaintiff's health but <u>also</u> policy implications of judicial efficiency, including waste of judicial resources and progression of litigation) (**Ex. F**). Numerous cases currently in MDL-875 involve plaintiffs who suffer from mesothelioma and other fatal illnesses allegedly resulting from asbestos exposure. It would make no sense to exclude each of these plaintiffs from the MDL because this would surely defeat the purpose behind the MDL.

**B.** **Pendency of a Motion to Remand is Not a Sufficient Reason To Deny Transfer Of Asbestos Exposure Claims To MDL-875**

It is beyond dispute that this Panel has the authority to transfer cases in which motions to remand are pending. *See, e.g., In re Asbestos Prod. Liab. Litig. (No. VI), 170 F. Supp. 2d 1348, 1349 (J.P.J.L Oct. 18, 2001) (*finding there is no need to delay transfer in order permit resolution of pending motions to remand*) (**Ex. G**); In re Asbestos Prod. Liab. Litg. (No. VI), 1999 U.S. Dist. LEXIS 12131, at \*2 (J.P.J.L. August 2, 1999) (*declining to delay transfer to MDL pending resolution on various dispositive motions*)(**Ex. H**); In re Asbestos Prod. Liab. Litig. (No. VI), 1996 WL 143826, at \*1 (J.P.J.L. Feb. 16, 1996) (declining to delay transfer to MDL pending resolution of motions to remand) (**Ex. I**); In re Asbestos Prod. Liab. Litig. (No. VI),* 771 F. Supp. 415 (J.P.M.L. 1991) (rejecting the pendency of motions or other matters before the transferor court as grounds for carving out exceptions to transfer) (Ex. B).

Once transferred, such motions can be resolved by the MDL court. *See, e.g., In re Bextra & Celebrez Mktg., Sales Prac. & Prods. Liab. Litig.,* No. 1699, slip op. at 2 (J.P.M.L. Apr. 13, 2006) (noting that "[p]ending motions to remand these actions to state court can . . . be presented to and decided by" the MDL court) (**Ex. J**); *In re Bextra & Celebrez Mktg., Sales Prac. & Prods. Liab. Litig.,* No. 1699, slip op. at 2 (J.P.M.L. Feb. 15, 2006) ("The pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings.")

(**Ex. K**); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 288-92 (S.D.N.Y. 2001) (resolving motions to remand within MDL proceeding); *Falgoust v. Microsoft Corp.* 2000 WL 462919, at *2 (E.D. La. Apr. 19, 2000) (stating that "the JPML does have jurisdiction to transfer a case even where a jurisdictional objection is pending") (**Ex. L**); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 700 (J.P.M.L. 1995) (noting that a pending motion to remand "can be presented to and decided by transferee judge"); *In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973) (stating that "the transferee judge certainly has the power to determine the question of remand").

Indeed, courts have recognized that motions to remand *should* be decided by the MDL court in order to avoid inconsistent results in similarly situated cases. In *Ivy v. Diamond Shamrock Chem. Co.*, 901 F.2d 7 (2d Cir. 1990) – a case addressing the propriety of MDL transfer while motions to remand were pending in various district courts – the Second Circuit acknowledged that "the jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. . . . Once transferred, the jurisdictional objections can be heard and resolved by a single court . . . . *Consistency as well as economy is thus served*." *Id.* at 9 (emphasis added). This approach is consistent with that of the *Manual for Complex Litigation*, which notes that "the Pendency of motions raising questions common to related actions can itself be an additional justification for transfer." Manual for Complex Litigation, Fourth, § 20.131 at 221.

Plaintiffs have not identified *any* reason why the Eastern District of Pennsylvania is not capable of deciding the jurisdictional issues presented in the pending motion to remand. To the contrary, the MDL judge is certain to be very knowledgeable on issues relating to asbestos exposure and the range of jurisdictional issues raised by Plaintiffs. A judge with such experience

and knowledge is actually in a better position to decide the often difficult legal and factual issues that are presented by motions to remand than numerous courts across the country. Recurrent jurisdictional issues involving the applicability of the federal officer removal statute and government contractor defense have arisen in these cases as well as in numerous other cases in the MDL, and the MDL Court is well-positioned to address these matters in an efficient and consistent manner for the benefit of all parties and the judiciary. *See In re Asbestos Cases of Hatch, James & Dodge, G. Patterson Keahey*, No. 2:06-CV-741 TS, slip op. at 2 ("The MDL is familiar with the subject matter and the reoccurring common issues, and will be able to resolve asbestos litigation cases in an efficient and expeditious manner; it does by the thousands.")

In addition, to the extent any remand decision requires interpretation and application of state law, the MDL court is well-suited to decide such issues. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 288-94 (involving an MDL court in Rezulin litigation resolving motions to remand to state court under Alabama, Mississippi, Louisiana, Texas and West Virginia law).

Furthermore, coordinated resolution of all motions to remand will serve another important purpose of 28 U.S.C. § 1407 – conservation of resources of the parties, their counsel, and the judiciary. Absent coordinated treatment, substantially similar arguments for remand will be heard and decided in multiple district courts. The benefits of avoiding such a substantial waste of time and expense outweighs any possible minor inconvenience to Plaintiffs. Moreover, this Panel has already determined that "centralization of all federal court actions as one multidistrict docket (MDL-875) in the Eastern District of Pennsylvania will serve the convenience of the parties and witnesses and promote the just and efficient conduct of such actions." *In re Asbestos Prod. Liab. Litig. (No VI)*, 771 F. Supp. 415 (J.P.M.L. 1991) **(Ex. B).**

Plaintiffs rely upon the case of *Vasura v. Acands, Inc.*, 84 F. Supp. 2d 531 (S.D.N.Y. 2000), as an example of where the Panel vacated its transfer order and allowed the transferor court to decide on a pending motion to remand.  However, the facts of that case are very different from the present case.  In *Vasura*, the defendant removed the case based on diversity of citizenship jurisdiction under § 1441(a) and on the defendant's status as a "foreign state" under § 1441(d).  *Id.* at 532.  However, removal was patently improper because the defendant was not a foreign state during the time relevant to the underlying claims and diversity was lacking at the time of removal.  *Id.* at 534.  Having discovered this after the case had been transferred to the MDL, the District Court judge intervened and sought the authority from Judge Weiner of the Eastern District of Pennsylvania to rule on the motion to remand.[1]  Judge Weiner referred the question to the MDL Panel, which vacated its prior transfer order in order to allow the District Court to decide the motion to remand.  *Id.* at 533.  Because removal was, ***on its face***, improper, remand was appropriate.  *Id.* at 540.

Unlike in *Vasura*, where removal was based on § 1441(a) and (d), and where the District Court intervened to rectify a question of diversity jurisdiction, in this case, AM General properly removed this case to federal court under § 1442 because all claims Plaintiffs have asserted against it give rise to a colorable defense governed by federal law.  Indeed, both the Supreme Court of the United States and the Third Circuit have held that while §1441 requires a narrow

---

[1] While the remand motion was pending, the MDL Panel transferred the case to Judge Weiner of the Eastern District of Pennsylvania for discovery purposes. Because of uncertainty over whether the District Judge retained the authority to decide the motion, the District Judge held a conference with counsel for plaintiff and the defendant. At the conference, the District Judge informed counsel of his intention to confer with Judge Weiner about sending the case back to the District Court for the purpose of deciding the motion to remand. Judge Weiner referred that question to the MDL Panel, which vacated its prior transfer order to allow the District Court to decide Vasura's motion to remand.

interpretation, §1442 should be broadly construed. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (explaining that "Congress has decided that federal officers... require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of 28 U.S.C. § 1442(a)(1)"); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (finding that the provisions of 28 U.S.C. § 1441 "are to be strictly construed against removal and all doubts should be resolved in favor of remand"); *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994) (finding that the provisions of the federal officer removal statute are to be "broadly construed"). So, while the question of diversity of citizenship is rather black and white, demanding a narrow interpretation that can be determined from the face of the pleadings (as in *Vasura*), federal question jurisdiction pursuant to §1442 may be sustained so long as a colorable claim is set forth, as AM General has unquestionably done in this case. Thus, *Vasura* is clearly distinguishable from the present case.

Consequently, this Panel should reject Plaintiffs' arguments that their asbestos exposure claims should not be transferred to MDL-875 due to the pending motion to remand. Rather, transfer of these claims will effectuate the purposes of 28 U.S.C. § 1407 by ensuring consistency and conserving resources with respect to the motions to remand, as well as all other pretrial matters.

## **CONCLUSION**

For all of the foregoing reasons, Defendant AM General LLC respectfully requests that

this Panel deny Plaintiffs' Motion to Vacate CTO-319.

**DLA PIPER LLP (US)**

Joseph Kernen, Esquire
Nancy Shane Rappaport, Esquire
James Gross, Esquire
1650 Market Street, Suite 4900
Philadelphia, PA  19103
(215) 656-3300
Attorneys for Defendant,
AM General, LLC

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 2 2009

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

       I certify that on April 20, 2009, I caused a copy of AM General's Brief in Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO 319) to be filed via UPS with Jeffrey N. Luthi, Clerk of Panel, United States Judicial Panel on Multidistrict Litigation, One Columbus Circle, N1E, Thurgood Marshall Federal Judiciary Building, Room G 255, North Lobby, Washington, DC  2002.  I also caused to be served a copy of AM General's Brief in Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO 319) via regular mail on plaintiff's counsel listed at the address below; to all counsel listed on the attached list provided by the Judicial Panel on Multi-District Litigation; and to all defense counsel of record listed in the attached in the case of Hoffeditz v. AM General LLC, Docket No. 09-cv-257 (D. N.J.):

Arnold C. Lakind, Esquire
Szaferman, Lakind, Blumstein & Blader, P.C.
101 Grovers Mill Rd., Suite 200
Lawrenceville, NJ  08648


**s/ James Gross**
James Gross, Esquire

RECEIVED
CLERK'S OFFICE
2009 APR 22  A 11: 15
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                          MDL No. 875

PANEL SERVICE LIST (EXCERPTED FROM CTO-319)

Joseph A. Matuska, et al. v. ABB, Inc., et al., D. New Jersey, C.A. No. 2:09-193
          (Judge William J. Martini)
     Gerald L. Hoffeditz, et al. v. AM General, LLC, et al., D. New Jersey, C.A. No. 2:09-257
          (Judge William J. Martini)

Peter G. Angelos
LAW OFFICES OF PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

Gerard Cedrone
LAVIN O'NEIL RICCI CEDRONE & DISIPIO
1300 Route 73
Suite 307
MT. Laurel, NJ 08054

Mary S. Cook
WILBRAHAM LAWLER & BUBA
24 Kings Highway West
Haddonfield, NJ 08033

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Alan Ira Dunst
HOAGLAND LONGO MORAN DUNST &
DOUKAS
40 Paterson Street
P.O. Box 480
New Brunswick, NJ 08903

James J. Gross
DLA PIPER US LLP
One Liberty Place
1650 Market Street
Suite 4900
Philadelphia, PA 19103-7300

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Steven Kazan
KAZAN MCCLAIN ABRAMS FERNANDEZ
ET AL
171 Twelfth Street
Third Floor
Oakland, CA 94607

Christopher J. Keale
SEDGWICK DETERT MORAN & ARNOLD
LLP
Three Gateway Center
100 Mulberry Street - 12th Floor
Newark, NJ 07102

**MDL No. 875 - Panel Service List (Excerpted From CTO-319) (Continued)**

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Robert E. Lytle
SZAFERMAN LAKIND BLUMSTEIN &
BLADER PC
QuakerBridge Executive Center
101 Grovers Mill Road
Suite 200
Lawrenceville, NJ 08648

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER &
MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Walter G. Watkins Jr.
FORMAN PERRY WATKINS KRUTZ &
TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Gerald L. Hoffeditz and Judith L. Hoffeditz

v.

AM General, LLC, et al

Docket No: MID-L-9319-08AS

COUNSEL MAILING LIST

LAST UPDATED: February 19, 2009
Attorney: REL

Joseph Kernen, Esq.
James J. Gross, Esq.
DLA Piper LLP
2 Tower Center Boulevard
Suite 1600
East Brunswick, NJ 08816-1100
Ph:  215-656-2416
Fax: 215-656-3301
james.gross@dlapiper.com
*Attorneys for AM General, LLC*

Michelle S. Hydrusko, Esq.
McElroy, Deutsch, Mulvaney &
Carpenter, LLP
1300 Mount Kemble Ave.
Morristown, NJ 07962-8100
973-993-8100
973-425-0161- fax
mhydrusko@mdmc-law.com
*Counsel for Arvin-Meritor,
Inc.*

Nora J. Grimbergen, Esq.
Marc S. Gaffrey, Esq.
Hoagland, Longo, Moran,
   Dunst & Doukas, LLP
40 Paterson St., P.O. Box 480
New Brunswick, NJ 08903
Ph:  732-545-4717
Fax: 732-545-4579
hoagland-
asbestos@hoaglandlongo.com
*Attorneys for Borg Warner
Morse TEC, f/k/a Borg Warner;
National Gasket*

Nicea J. D'Annunzio, Esq.
Hardin, Kundla, McKeon &
   Poletto
673 Morris Ave., P.O. Box 730
Springfield, NJ 07081-0730
Ph:  973-912-5222
Fax: 973-912-9212
ndannunzio@hkmpp.com
*Attorneys for Chrysler, LLC, a
Delaware LLC*

Mary S. Cook, Esq.
Wilbraham, Lawler & Buba
24 Kings Highway West
Haddonfield, NJ 08033-2122
Ph:  856-795-4422
Fax: 856-795-4699
mcook@wlbdeflaw.com
*Attorneys for Cummins, Inc.*

Steven A. Weiner, Esq.
O'Toole Fernandez Weiner Van
Lieu, LLC
60 Pompton Avenue, 2nd Floor
Verona, NJ 07044
Ph:  973-239-5700
Fax: 973-239-3400
mfeola@ofwvlaw.com (Paralegal)
*Attorneys for Dana Corp.,
individually and as successor
to Victor Gaskets*

10202.1

Edward T. Finch, Esq.
Lavin, O'Neil, Ricci, Cedrone
   & Disipio
1300 Route 73, Suite 307
Mount Laurel, NJ 08054
Ph:  856-778-5544
Fax: 856-793-0237
efinch@lavin-law.com
**Attorneys for Detroit Diesel
Corporation; Ford Motor
Company; General Motors
Corporation, d/b/a Delco
Products**

Ethan D. Stein, Esq.
Gibbons, PC
One Penn Plaza, 37th floor
New York, New York 10119-3701
Ph:  212-613-2041
Fax: 212-554-9677
estein@gibbonslaw.com
**Attorneys for Honeywell
International, Inc. as
successor to the Bendix
Corporation**

Susan B. Fellman, Esq.
Breuninger & Fellman
1829 Front St.
Scotch Plains, NJ 07076
Ph:  908-490-9900
Fax: 908-490-9950
sfellman@comcast.net
**Attorneys for National
Automotive Parts Association
(NAPA), a/k/a Genuine Parts
Company**

Mark Debrowski, Esq.
Smith Abbot, LLP
48 Wall Street, Suite 1100
New York, NY 10005
Ph:  212-981-4501
Fax: 212-981-4502
mdebrowski@smithabbot.com
**Attorneys for Pneumo-Abex,
LLC, as successor-in-interest
to Abex Corporation f/k/a
American Brake Shoe Company**

Brian R. Ade, Esq.
Rivkin Radler, LLP
21 Main Street, Suite 158
Court Plaza South - West Wing
Hackensack, New Jersey 07601
Ph: 201-287-2460
Fax: 201-489-0495
brian.ade@rivkin.com
**Attorneys for Setco
Automotive, N.A., Inc., a/k/a
Setco Lipe Clutch**

Richard P. O'Leary, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
Ph:  973-622-4444
Fax: 973-624-7070
roleary@mccarter.com
**Attorneys for Standard Motor
Products, Inc. a/k/a EIS Brake
Parts**

Marc Z. Edell, Esq.
Picillo Caruso, Pope, Edell,
Picini
60 Route 46 East
Fairfield, New Jersey 07004
medell@carusopope.com
Ph:  973-667-6000
Fax: 973-667-1200
**Attorneys for Union Carbide
Corporation**

10202.1

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 17 2009

FILED
CLERK'S OFFICE

**EXHIBIT A**

RECEIVED
CLERK'S OFFICE
2009 APR 22  A 11: 14
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION



A CERTIFIED TRUE COPY
ATTEST

By Jakela Mells on Mar 20, 2009

FOR THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

(5965)

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**Mar 04, 2009**

FILED
CLERK'S OFFICE

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

MDL No. 875 – file

(SEE ATTACHED SCHEDULE)

**FILED**

MAR 2 0 2009

**CONDITIONAL TRANSFER ORDER (CTO-319)**

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  *See* 771 F.Supp. 415 (J.P.M.L. 1991).  Since that time, 84,244 additional actions have been transferred to the Eastern District of Pennsylvania.  With the consent of that court, all such actions have been assigned to the Honorable Eduardo C. Robreno.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Robreno.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation,</u> 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the consent of that court, assigned to the Honorable Eduardo C. Robreno.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania.  The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof.  If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Inasmuch as no objection is
pending at this time, the
stay is lifted.

**Mar 20, 2009**

CLERK'S OFFICE
UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Jeffery N. Lüthi
Clerk of the Panel

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

## SCHEDULE CTO-319 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

CALIFORNIA CENTRAL
 CAC  2  08-501          Larry Lindquist, et al. v. CLA-VAL Co., et al.

CALIFORNIA NORTHERN
 CAN 3  08-5439         Pauline Smithson, et al. v. General Electric Co., et al.
 CAN 3  08-5440         Shirley Ruby Holliday, et al. v. General Electric Co., et al.

LOUISIANA EASTERN
 ~~LAE 2  09-65~~          ~~Frank J. Williams, Jr. v. Lockheed Martin Corp., et al.~~
                               Opposed 3/20/09

MASSACHUSETTS
 MA  1  08-10078        William A. O'Connell v. Foster Wheeler Energy Corp., et al.

MAINE
 ME  1  09-32           Joseph N. Vigue, et al. v. Metropolitan Life Insurance Co., et al.
 ME  2  09-7            Susan Leet, etc. v. Aurora Pump Co., et al.

MINNESOTA
 MN  0  08-6408         Leo J. Selz v. Soo Line Railroad Co.
 MN  0  08-6473         Edward Taticek v. Soo Line Railroad Co.
 MN  0  09-97           Robert E. Mannelin v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-98           Lawrence Maul v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-99           Douglas A. Nystedt v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-101          Brenda Bischoff, etc. v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-102          Kenneth L. Olson v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-103          John Plevell v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-104          James E. Butler, Jr. v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-105          Clarence A. Cripps v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-106          Robert W. Pulkinen v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-107          James J. Dauer v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-108          Daniel F. Gangl v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-109          Gerald D. Saw v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-111          Marlyn Grunwald v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-112          Mark D. Jackson v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-113          John B. Thomatz v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-114          Louis R. Karakash v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-115          Karl R. Kuth v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-116          Carlo V. Toivari v. Garlock Sealing Technologies, LLC, et al.
 MN  0  09-117          Leslie R. Wiedenhoft v. Garlock Sealing Technologies, LLC, et al.

**MDL No. 875 - Schedule CTO-319 Tag-Along Actions (Continued)**

| | | | |
|---|---|---|---|
| MN | 0 | 09-118 | Donald W. Zimmer v. Garlock Sealing Technologies, LLC, et al. |
| MN | 0 | 09-126 | Joseph M. Baudek v. Garlock Sealing Technologies, LLC, et al. |
| MN | 0 | 09-128 | Robert L. Gouldin v. Garlock Sealing Technologies, LLC, et al. |
| MN | 0 | 09-188 | Robert H. Mingo v. Garlock Sealing Technologies, LLC, et al. |
| MN | 0 | 09-189 | Michael L. Paun v. Garlock Sealing Technologies, LLC, et al. |

NORTH CAROLINA MIDDLE

| | | | |
|---|---|---|---|
| NCM | 1 | 08-935 | Dale Litaker, etc. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-13 | Jimmy A. Miller, et al. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-14 | Tyre L. Nicholson, et al. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-16 | Elmer Leslie Sisk, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-35 | Dwight Allen Barnhardt, et al. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-36 | Paul Pritchett, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-47 | Jim Allen Woodell, et al. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-48 | Terry Russell Tilley v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-49 | Robert Kenneth Whitlock, Sr. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-55 | Michael Cleve Bray, Sr., et al. v. Aqua-Chem, Inc., et al. |
| NCM | 1 | 09-56 | Larry Joe Almond, et al. v. Aqua-Chem, Inc., et al. |

NORTH CAROLINA WESTERN

| | | | |
|---|---|---|---|
| NCW | 1 | 08-372 | Troy J. McAuley, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 08-374 | David Lee Pope, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 08-448 | Gary C. Whitworth, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-4 | Robert Lee Nichols, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-5 | Grover M. Ensley, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-6 | Jim M. Vance, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-8 | Franklin Clinton Cloninger v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-9 | Eldridge Elmer Clark, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-11 | Johnny Miller Lytton, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-12 | James Lee Plummer, Sr. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-13 | George Wagoner Ferguson, III, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-14 | Verline Borders Petty, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-15 | Larry Eugene Mauldin v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-16 | Stanley Earl Fox, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-17 | Gary Marvin Tench, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-19 | Gregory Lewis Gabriel, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-20 | Darrell Edward Garrison, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-21 | Richard Volan Rumfelt v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-24 | James Phillip Rhodes, et al. v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-25 | Clarence Barlow v. Aqua-Chem, Inc., et al. |
| NCW | 1 | 09-26 | James Edgar Cooper, III, et al. v. Aqua-Chem, Inc., et al. |

**MDL No. 875 - Schedule CTO-319 Tag-Along Actions (Continued)**

| | | |
|---|---|---|
| MN  0  09-118 | Donald W. Zimmer v. Garlock Sealing Technologies, LLC, et al. |
| MN  0  09-126 | Joseph M. Baudek v. Garlock Sealing Technologies, LLC, et al. |
| MN  0  09-128 | Robert L. Gouldin v. Garlock Sealing Technologies, LLC, et al. |
| MN  0  09-188 | Robert H. Mingo v. Garlock Sealing Technologies, LLC, et al. |
| MN  0  09-189 | Michael L. Paun v. Garlock Sealing Technologies, LLC, et al. |

NORTH CAROLINA MIDDLE

| | |
|---|---|
| NCM  1  08-935 | Dale Litaker, etc. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-13 | Jimmy A. Miller, et al. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-14 | Tyre L. Nicholson, et al. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-16 | Elmer Leslie Sisk, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-35 | Dwight Allen Barnhardt, et al. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-36 | Paul Pritchett, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-47 | Jim Allen Woodell, et al. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-48 | Terry Russell Tilley v. Aqua-Chem, Inc., et al. |
| NCM  1  09-49 | Robert Kenneth Whitlock, Sr. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-55 | Michael Cleve Bray, Sr., et al. v. Aqua-Chem, Inc., et al. |
| NCM  1  09-56 | Larry Joe Almond, et al. v. Aqua-Chem, Inc., et al. |

NORTH CAROLINA WESTERN

| | |
|---|---|
| NCW  1  08-372 | Troy J. McAuley, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  08-374 | David Lee Pope, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  08-448 | Gary C. Whitworth, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-4 | Robert Lee Nichols, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-5 | Grover M. Ensley, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-6 | Jim M. Vance, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-8 | Franklin Clinton Cloninger v. Aqua-Chem, Inc., et al. |
| NCW  1  09-9 | Eldridge Elmer Clark, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-11 | Johnny Miller Lytton, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-12 | James Lee Plummer, Sr. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-13 | George Wagoner Ferguson, III, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-14 | Verline Borders Petty, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-15 | Larry Eugene Mauldin v. Aqua-Chem, Inc., et al. |
| NCW  1  09-16 | Stanley Earl Fox, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-17 | Gary Marvin Tench, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-19 | Gregory Lewis Gabriel, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-20 | Darrell Edward Garrison, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-21 | Richard Volan Rumfelt v. Aqua-Chem, Inc., et al. |
| NCW  1  09-24 | James Phillip Rhodes, et al. v. Aqua-Chem, Inc., et al. |
| NCW  1  09-25 | Clarence Barlow v. Aqua-Chem, Inc., et al. |
| NCW  1  09-26 | James Edgar Cooper, III, et al. v. Aqua-Chem, Inc., et al. |

**MDL No. 875 - Schedule CTO-319 Tag-Along Actions (Continued)**

| | | |
|---|---|---|
| NCW 1 | 09-27 | Ernest Wade Currie, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-28 | Gary Eugene Davis, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-32 | Dennis Ray Drum, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-33 | Ronnie Lewis Finger, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-34 | David Sloan Edwards, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-35 | Donna Teague Garver, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-36 | Joseph Dail Drum, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-37 | Scotty Paul Garver, et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-38 | Brenda Diane Greene v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-39 | Marvin Leroy Gee, Jr., et al. v. Aqua-Chem, Inc., et al. |
| NCW 1 | 09-73 | Billy Burklin Baber, et al. v. Aqua-Chem, Inc., et al. |

NEW JERSEY

| | | |
|---|---|---|
| ~~NJ 2 09-193~~ | | ~~Joseph A. Matuska, et al. v. ABB, Inc., et al.~~ Opposed 3/18/09 |
| ~~NJ 2 09-257~~ | | ~~Gerald L. Hoffeditz, et al. v. AM General, LLC, et al.~~ Opposed 3/18/09 |

NEW YORK SOUTHERN

| | | |
|---|---|---|
| ~~NYS 1 08-11010~~ | | ~~Francis Bruce Travis v. 3M Co., et al.~~ Opposed 3/19/09 |
| NYS 1 | 08-11011 | Dwight O. Johnson, Jr. v. Anchor Packing, et al. |

OHIO NORTHERN

| | | |
|---|---|---|
| OHN 1 | 09-10000 | Willard E. Bartel, et al. v. A-C Product Liability Trust, et al. |
| OHN 1 | 09-10001 | Willard E. Bartel, et al. v. A-C Product Liability Trust, et al. |

SOUTH CAROLINA

| | | |
|---|---|---|
| SC 0 | 09-100 | Joyce C. Moses, et al. v. Aqua-Chem, Inc., et al. |
| SC 0 | 09-124 | Mendel Wayne Godfrey, et al. v. Aqua-Chem, Inc., et al. |
| SC 0 | 09-222 | Dean Lynn Dover, et al. v. Aqua-Chem, Inc., et al. |
| SC 0 | 09-224 | Jimmie Keith Chapman v. Aqua-Chem, Inc., et al. |
| SC 0 | 09-225 | Eugene Alfred Blackwell, et al. v. Aqua-Chem, Inc., et al. |
| SC 6 | 09-122 | Randall Jewell Booker, et al. v. Aqua-Chem, Inc., et al. |
| SC 6 | 09-162 | Larry Wayne Garmon, etc. v. Aqua-Chem, Inc., et al. |
| SC 7 | 09-179 | Leslie Steven Hall, et al. v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-99 | Donnie Ray Richardson v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-101 | Eugene Mack Edney, et al. v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-125 | Michael Leonard Merck, et al. v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-127 | Richard L. Wentzky, et al. v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-163 | George Wesley Fincher, Jr. v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-166 | Don Richard Cox, Sr. v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-176 | Billy F. Owens, et al. v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-177 | Weldon Cleo Masters, et al. v. Aqua-Chem, Inc., et al. |
| SC 8 | 09-180 | Tony Oral Getsinger, et al. v. Aqua-Chem, Inc., et al. |

**MDL No. 875 - Schedule CTO-319 Tag-Along Actions (Continued)**

TEXAS WESTERN
~~TXW 6 08-365~~        ~~Edward Wilhite, et al. v. Able Supply Co., et al.~~  Vacated 3/12/09

VIRGINIA EASTERN
| | | |
|---|---|---|
| VAE 2 | 06-8895 | Robert E. Harrelson v. American Standard, Inc., et al. |
| VAE 2 | 06-8896 | Kenneth E. Leslie v. American Standard, Inc., et al. |
| VAE 2 | 06-8898 | Carl H. Wilson, Sr. v. American Standard, Inc., et al. |
| VAE 2 | 08-9436 | Larry A. Ayers v. American Standard, Inc., et al. |
| VAE 2 | 08-9437 | Thomas Babbs v. American Standard, Inc., et al. |
| VAE 2 | 08-9438 | Julius Bahn v. American Standard, Inc., et al. |
| VAE 2 | 08-9439 | Gordon E. Breimon v. American Standard, Inc., et al. |
| VAE 2 | 08-9440 | Leo M. Bresnahan v. American Standard, Inc., et al. |
| VAE 2 | 08-9441 | Kenneth K. Carter v. American Standard, Inc., et al. |
| VAE 2 | 08-9442 | Richard C. Clark v. American Standard, Inc., et al. |
| VAE 2 | 08-9443 | Charles B. Correll v. American Standard, Inc., et al. |
| VAE 2 | 08-9444 | Tommy L. Davis v. American Standard, Inc., et al. |
| VAE 2 | 08-9445 | Everett C. Eivins v. American Standard, Inc., et al. |
| VAE 2 | 08-9446 | Paul L. Green v. American Standard, Inc., et al. |
| VAE 2 | 08-9447 | Frank D. Hartman v. American Standard, Inc., et al. |
| VAE 2 | 08-9448 | John T. Huffman v. American Standard, Inc., et al. |
| VAE 2 | 08-9449 | Robert F. Novack v. American Standard, Inc., et al. |
| VAE 2 | 08-9450 | Paul A. Fowler, Sr. v. American Standard, Inc., et al. |
| VAE 2 | 08-9451 | Don F. Gulbronson v. American Standard, Inc., et al. |
| VAE 2 | 09-9471 | Louis Coy v. American Standard, Inc., et al. |
| VAE 2 | 09-9472 | Edward J. Meeker v. American Standard, Inc., et al. |
| VAE 2 | 09-9473 | Glen Nelson v. American Standard, Inc., et al. |
| VAE 2 | 09-9474 | Lester A. Newton v. American Standard, Inc., et al. |
| VAE 2 | 09-9475 | Bennie R. Pope v. American Standard, Inc., et al. |
| VAE 2 | 09-9476 | Richard H. Ramsey v. American Standard, Inc., et al. |
| VAE 2 | 09-9477 | Harold D. Roberts v. American Standard, Inc., et al. |
| VAE 2 | 09-9478 | Max L. Scheper v. American Standard, Inc., et al. |
| VAE 2 | 09-9479 | Jim D. Shell v. American Standard, Inc., et al. |
| VAE 2 | 09-9480 | Stanley E. Smith v. American Standard, Inc., et al. |
| VAE 2 | 09-9481 | Forest D. Stufflebean v. American Standard, Inc., et al. |
| VAE 2 | 09-9482 | Jack Timmins v. American Standard, Inc., et al. |
| VAE 2 | 09-9483 | Joe L. Michael v. American Standard, Inc., et al. |
| VAE 2 | 09-9484 | Eugene N. Petersen, Jr. v. American Standard, Inc., et al. |
| VAE 2 | 09-9485 | Paul J. Powers v. American Standard, Inc., et al. |
| VAE 4 | 08-3259 | Paul H. Schulte v. Amchem Products, Inc., et al. |
| VAE 4 | 08-3260 | Herbert N. Powell v. American Air Liquide Corp., et al. |
| VAE 4 | 08-3261 | Robert L. Corley, Jr. v. Amchem Products, Inc., et al. |
| VAE 4 | 08-3262 | Clark M. White v. Amchem Products, Inc., et al. |
| VAE 4 | 08-3263 | Stephen Carl Mapp, Sr. v. Amchem Products, Inc., et al. |
| VAE 4 | 08-3264 | Hardy McCIease Gallop, Jr. v. Amchem Products, Inc., et al. |

**MDL No. 875 - Schedule CTO-319 Tag-Along Actions (Continued)**

| | | |
|---|---|---|
| VAE 4 | 08-3265 | James Edward Daniels, Jr. v. Amchem Products, Inc., et al. |
| VAE 4 | 08-3266 | Timothy Swain v. Amchem Products, Inc., et al. |
| VAE 4 | 08-3267 | Kenneth M. Watson v. Amchem Products, Inc., et al. |

**WISCONSIN EASTERN**

| | | |
|---|---|---|
| WIE 2 | 08-1006 | Nancy Brix, etc. v. Albany International Corp., et al. |

EXHIBIT B

from export subsidies, and are instead using only Korea." [29]

The other case cited in the Determination as evidence of a "general practice" does not use the "possibility" standard. *Porcelain–on–Steel Cooking Ware* first cites the established practice of excluding due to known subsidies,[30] and later states that "[i]n considering which countries' imports to use in calculating foreign market value, we generally disregard imports from countries that are also under investigation, non-market economy exporters and *countries believed to maintain export subsidies.*" [31] The *Porcelain–on–Steel Cooking Ware* determination originally uses the "known subsidies" standard, so the quoted language may be regarded as a reiteration of that standard. ITA cannot buttress the "mere possibility" standard by citing to the more pedestrian "known subsidies" standard case.

Commerce implies in the Determination that the "possibility of subsidies" standard is the equivalent of "countries believed to maintain export subsidies" used in the *Porcelain–on–Steel Cooking Ware* determination. There is a logical difference between a belief, which usually must have some basis in fact, and a possibility, which does not necessarily need any facts to back it up. Possibilities are not equivalent to beliefs, and it is not enough that a thing be possible for it to be believed. Therefore, two unjustified and unrelated prior statements do not a general practice make. ITA's statement that there is a "general practice" is unsupported.

## VII. Disqualification of Surrogates for Subsidies Found in Other Industries

ITA disqualified other countries because of subsidies applicable to areas other than shop towels, or even textiles. CNART argues that there is no reason to believe that a set of programs available to and utilized by one industry is *ipso facto* available to and being used by a totally different industry. Brief in Support, at 34. In light of

this Court's holding above, it is unnecessary to reach the merits of this argument. Comparable economies are qualified for surrogacy, and must be used in a redetermination of the dumping margin. Should the ITA disqualify Malaysia, the Philippines and Indonesia on other grounds, the Court may reach the merits of CNART's argument, but does not need to do so at this time.

## VIII. Conclusion

ITA's selection of Hong Kong as surrogate was unsupported by substantial evidence. ITA's exclusion of Indonesia, the Philippines and Malaysia was also unsupported by substantial evidence on the record as a whole. The evidence suggests that either Indonesia or the Philippines are more economically comparable to the PRC than Malaysia. All three are more comparable than Hong Kong. As a result, this case is remanded to the International Trade Administration for recalculation of the dumping margin using import values from Indonesia, the Philippines or Malaysia. In addition, the recalculation must correct the clerical errors described at pages 53 and 54 of CNART's Brief in Support.



**In re ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI).**

**MDL No. 875.**

Judicial Panel on Multidistrict Litigation.

July 29, 1991.

After issuing order to show cause why all pending federal district court actions

---

**29.** *Steel Wire Nails,* 51 Fed.Reg., at 10,248.

**30.** *Porcelain–on–Steel Cooking Ware,* 51 Fed. Reg., at 36,421.

**31.** *Id.* 51 Fed.Reg., at 36,423 (emphasis added).

not then in trial involving allegations of personal injury or wrongful death caused by asbestos should not be centralized in a single forum, the Judicial Panel on Multidistrict Litigation, Nangle, J., held that pursuant to statute governing transfer in multidistrict cases, 26,639 actions involving allegations of personal injury or wrongful death caused by asbestos would be transferred to the Eastern District of Pennsylvania for pretrial proceedings, considering that actions involved common questions of fact, and that centralization of actions would best serve convenience of parties and witnesses and promote the just and efficient conduct of litigation.

So ordered.

**Federal Courts ⬅152**

Pursuant to statute governing transfer in multidistrict cases, 26,639 actions involving allegations of personal injury or wrongful death caused by asbestos would be transferred to the Eastern District of Pennsylvania for pretrial proceedings, considering that actions involved common questions of fact, and that centralization of actions would best serve convenience of parties and witnesses and promote the just and efficient conduct of litigation. 28 U.S.C.A. § 1407.

---

Before JOHN F. NANGLE, Chairman, S. HUGH DILLIN,* MILTON POLLACK,* LOUIS H. POLLAK, HALBERT O. WOODWARD, ROBERT R. MERHIGE, Jr., and WILLIAM B. ENRIGHT, Judges of the Panel.

* Judges Dillin and Pollack did not participate in the decision of this matter.

1. It appears that the only districts with pending asbestos actions that did not effect service of the Panel's order are the Eastern District of Wisconsin and the District of Rhode Island. In view of the Panel's disposition of this docket, the actions pending there will be treated as potential tagalong actions in accordance with the Panel's Rules. *See* Rules 12 and 13, R.P.J.P.M.L., 120 F.R.D. 251, 258–59 (1988).

**OPINION AND ORDER**

Judge NANGLE, Chairman, Delivered the Opinion of the Panel, in Which Judges POLLAK, WOODWARD, MERHIGE and ENRIGHT joined.

On January 17, 1991, the Panel issued an order to show cause why all pending federal district court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos should not be centralized in a single forum under 28 U.S.C. § 1407. Because of the difficulty in serving this order on the enormous number of parties in this docket, the Panel relied on the clerks of all district courts to serve the parties to actions in their respective districts.[1] As a result, the parties to the 26,639 actions pending in 87 federal districts and listed on the following Schedule A are subject to the Panel's order.[2] [Editor's Note: All but the Summary of Schedule A has been omitted from publication by the Court.] More than 180 pleadings have been filed in response to the Panel's order, and a four hour hearing on the question of transfer was held on May 30, 1991 in New York City, at which time 37 counsel presented oral argument. In many instances the attorneys filing these pleadings or participating in oral argument were representing the views of large groups of parties.

Supporting transfer are plaintiffs in approximately 17,000 actions (including a core group of more than 14,000 plaintiffs represented by over 50 law firms) and 30 defendants (24 of which are named in more than 20,000 actions). Opposing transfer are plaintiffs in at least 5,200 actions and 454 defendants. The positions of those parties that have expressed a preference with re-

2. The Statistical Division of the Administrative Office of the United States Courts reports that as of March 31, 1991, nearly 31,000 actions were pending in federal districts. Based on Panel communications with courts throughout the country, the approximately 4,000 pending actions not embraced by the present order likely include actions that, as of January 17, 1991, were overlooked, in trial or already at least partially tried but not yet statistically closed because, *inter alia*, claims against one or more defendants were stayed under the Bankruptcy Code.

## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)   417
Cite as 771 F.Supp. 415 (Jud.Pan.Mult.Lit. 1991)

spect to transferee district are varied. Many parties suggest centralization in what amounts to their home forum. The Eastern District of Pennsylvania is the district either expressly favored or not objected to in the greatest number of pleadings. The Eastern District of Texas, which is the choice of the aforementioned core group of 14,000 plaintiffs, is also the district that has generated the most opposition from defendants. Other suggested districts that go beyond the home forum approach are the District of the District of Columbia, the Eastern District of Louisiana, the Northern District of Ohio, and the Eastern District of New York. Some parties' forum recommendations are expressed in the form of a suggested individual transferee judge or transferee judge structure.

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products, and that centralization under § 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

### DISCUSSION

Any discussion of § 1407 transfer in this docket must begin with the recognition that the question does not arise in a vacuum. Indeed, the impetus for the Panel's order to show cause was a November 21, 1990 letter signed by eight federal district judges responsible for many asbestos actions in their respective districts.[3] These judges, citing the serious problem that asbestos personal injury litigation continues to be for the federal judiciary, requested

that the Panel act on its own initiative to address the question of § 1407 transfer. Furthermore, as the title of this docket suggests, this is the sixth time that the Panel has considered transfer of asbestos litigation. On the five previous occasions (1977, 1980, 1985, 1986 and 1987) that the Panel considered the question, it denied transfer in each instance.[4]

The Panel's constancy is not as dramatic as a mere recitation of the denials might suggest, however. The 1986 and 1987 dockets considered by the Panel involved only five and two actions, respectively. The 1985 Panel decision pertained not to personal injury/wrongful death asbestos actions but rather to property damage claims of school districts that incurred significant costs in removing asbestos products from school buildings. The denial in the 1980 Panel docket was based almost exclusively on the movants' failure to offer any distinctions that would warrant a disposition different from the Panel's first asbestos decision in 1977.

It is only in the 1977 decision, pertaining to 103 actions in nineteen districts, that the Panel offered any detailed analysis of its asbestos litigation reasoning with respect to asbestos personal injury/wrongful death actions. In that decision, the Panel first listed the primary arguments of the responding parties that unanimously opposed transfer: advanced stage of proceedings in many of the actions; use of voluntary coordinating arrangements in several districts; lack of commonality among defendants and plaintiffs; circumstances of exposure predominantly unique to each action; individual questions of causation in each action; predominantly individual questions of the liability of each defendant in each action;

---

3. The signatories to this letter are Judges Walter J. Gex, III (S.D.Miss.), Thomas D. Lambros (N.D.Ohio), Alan H. Nevas (D.Conn.), Richard A. Schell (E.D.Tx.), Charles Schwartz, Jr. (E.D.La.), Charles R. Weiner (E.D.Pa.), Charles R. Wolle (S.D.Iowa) and Rya W. Zobel (D.Mass.). Additionally, Judge Jack B. Weinstein (E.D.N.Y.) has contacted the Panel staff and requested that he also be considered a signatory to the letter.

4. *In re Asbestos and Asbestos Insulation Material Products Liability Litigation*, 431 F.Supp. 906 (J.P.M.L.1977); *In re Asbestos Products Liability Litigation (No. II)*, MDL–416 (J.P.M.L. March 13, 1980) (unpublished order); *In re Asbestos School Products Liability Litigation*, 606 F.Supp. 713 (J.P.M.L.1985); *In re Ship Asbestos Products Liability Litigation*, MDL–676 (J.P.M.L. Feb. 4, 1986) (unpublished order); and *In re Leon Blair Asbestos Products Liability Litigation*, MDL–702 (J.P.M.L. Feb. 6, 1987) (unpublished order).

**418**                    **771 FEDERAL SUPPLEMENT**

local issues predominating in the discovery process; absence of possibility of inconsistent or overlapping class certifications; and the readily discernible nature of the principal area common to all actions, the state of medical and scientific knowledge at a particular time regarding the health hazards posed by exposure to asbestos.

In denying transfer in the 1977 decision, the Panel recognized the existence of some common questions of fact among the actions. For in that docket, as in the matter currently before the Panel, all actions contained allegations of personal injury or death as a result of exposure to asbestos or asbestos containing products. The Panel nevertheless held that the other criteria for § 1407 transfer were not satisfied. In relevant part, the Panel stated:

> Many factual questions unique to each action or to a group of actions already pending in a single district clearly predominate, and therefore transfer is unwarranted.... Furthermore, many of these actions already are well advanced. Some of the actions have been pending for up to four years, and trial dates or discovery cutoff dates have been set in several actions. Under these circumstances, transfer would not further the purposes of Section 1407.

*In re Asbestos and Asbestos Insulation Material Products Liability Litigation,* 431 F.Supp. 906, 910 (J.P.M.L.1977).

Many of the parties presently opposing transfer in this docket rely on the facts and reasoning of the Panel's 1977 transfer decision. They insist that the situation that warranted denial then not only still prevails but has been magnified by the greatly increased number of actions and parties in federal asbestos personal injury/wrongful death litigation—more than 30,000 pending federal actions now, as opposed to the 103 actions subject to the Panel's 1977 decision. In our view, it is precisely this change that now leads us to conclude that centralization of all federal asbestos personal injury/wrongful death actions, in the words of 28 U.S.C. § 1407(a), "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of

such actions." In short, we are persuaded that this litigation has reached a magnitude, not contemplated in the record before us in 1977, that threatens the administration of justice and that requires a new, streamlined approach.

The Panel is not the first to reach such a conclusion. Just this past March 1991, the Judicial Conference Ad Hoc Committee on Asbestos Litigation, whose members were appointed by Chief Justice William H. Rehnquist, stated as follows:

> The committee has struggled with the problems confronting the courts of this nation arising from death and disease attributable to airborne asbestos industrial materials and products. The committee has concluded that the situation has reached critical dimensions and is getting worse. What has been a frustrating problem is becoming a disaster of major proportions to both the victims and the producers of asbestos products, which the courts are ill-equipped to meet effectively.

After extensive study, the Institute for Civil Justice of the Rand Corporation in 1985 observed, with respect to how the civil justice system handles asbestos claims, that—

> The picture is not a pretty one. Decisions concerning thousands of deaths, millions of injuries, and billions of dollars are entangled in a litigation system whose strengths have increasingly been overshadowed by its weaknesses.

> The ensuing five years have seen the picture worsen: increased filings, larger backlogs, higher costs, more bankruptcies and poorer prospects that judgments—if ever obtained—can be collected.

It is a tale of danger known in the 1930s, exposure inflicted upon millions of Americans in the 1940s and 1950s, injuries that began to take their toll in the 1960s, and a flood of lawsuits beginning in the 1970s. On the basis of past and current filing data, and because of a latency period that may last as long as 40 years for some asbestos related dis-

eases, a continuing stream of claims can be expected. The final toll of asbestos related injuries is unknown. Predictions have been made of 200,000 asbestos disease deaths before the year 2000 and as many as 265,000 by the year 2015.

The most objectionable aspects of asbestos litigation can be briefly summarized: dockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recovery by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

*Report of The Judicial Conference Ad Hoc Committee on Asbestos Litigation*, 1–3 (1991) (footnote omitted) (hereinafter *Asbestos Committee Report*). The Committee pointed out that presently in the federal system nearly two new asbestos actions are being filed for every action terminated, and that at the current rate, there will be more than 48,000 actions pending in the federal courts at the end of three years. *Asbestos Committee Report, supra*, at 8.

The Committee also discussed the ongoing change in the demographics of asbestos litigation in the federal courts:

> In 1984, when the Federal Judicial Center held its first asbestos conference, asbestos litigation in the federal courts was largely concentrated in only four district courts. Since that time, however, asbestos cases have infiltrated virtually every federal district. Asbestos litigation must therefore be viewed as a national problem rather than merely a local or regional one, especially with the number of Americans affected.

*Asbestos Committee Report, supra*, at 9 (footnote omitted).

Conclusions similar to those of the Judicial Conference Asbestos Committee have also been reached by judges actively involved in asbestos litigation. In perhaps the most recent comprehensive review of asbestos litigation, Judge Jack B. Weinstein (E.D.N.Y.) observed:

> The large number of asbestos lawsuits pending throughout the country threatens to overwhelm the courts and deprive all litigants, in asbestos suits as well as other civil cases, of meaningful resolution of their claims.... Several commentators have recounted the inefficiencies and inequities of case-by-case adjudication in the context of mass tort disasters. *See, e.g.,* Rosenberg, *Class Actions for Mass Torts: Doing Individual Justice by Collective Means*, 62 Ind.L.J. 561 (1987); *Trends in Asbestos Litigation* (Federal Judicial Center 1987); Rubin, *Mass Torts and Litigation Disasters*, 20 Ga.L.Rev. 429 (1986); Note, *Class Certification in Mass Accident Cases Under Rule 23(b)(1)*, 96 Harv.L.Rev. 1143 (1983); Comment, *Federal Mass Tort Class Actions: A Step Toward Equity and Efficiency*, 47 Alb.L.Rev. 1180 (1983).
>
> The heyday of individual adjudication of asbestos mass tort lawsuits has long passed. *See* [*Asbestos Committee Report*], *supra*, at 7 ("one point on which plaintiffs' counsel, defense counsel and the judiciary can agree is that the present way in which we have attempted to resolve asbestos cases has failed"). The reasons are obvious: the complexity of asbestos cases makes them expensive to litigate; costs are exacerbated when each individual has to prove his or her claim *de novo;* high transaction costs reduce the recovery available to successful plaintiffs; and the sheer number of asbestos cases pending nationwide threatens to deny justice and compensation to many deserving claimants if each claim is handled individually. The backlog is eroding a fundamental aspiration of our judicial system to provide equality of treatment for similarly situated persons. *Cf.* [*Asbestos in the Courts: The Challenge of Mass Toxic Torts* (RAND, Inst. of Social Justice 1985)], *supra*, at 12 (recent wave of asbestos litigation marked by high concentration of claims, dominance of characteristics of individual asbestos cases, behavior of parties, lawyers and the attributes of judges "created a situation in which dispositions are

slow, costs are high, and outcomes are variable").

Overhanging this massive failure of the present system is the reality that there is not enough money available from traditional defendants to pay for current and future claims. Even the most conservative estimates of future claims, if realistically estimated on the books of many present defendants, would lead to a declaration of insolvency—as in the case of some dozen manufacturers already in bankruptcy.

*In re Johns–Manville Corporation, et al.,* No. 90–3973, slip op. at 61–63, 1991 WL 86304 (E.D.N.Y. May 16, 1991).

Given the dimensions of the perceived problem in federal asbestos litigation, it is not surprising that no ready solution has emerged. The Judicial Conference Asbestos Committee concluded that the only true solution lies in Congressional legislation. Nevertheless, it stressed that "[a]t the same time, or failing congressional action, the federal judiciary must itself act now to achieve the best performance possible from the system under current law." *Asbestos Committee Report, supra,* at 4. The Committee also noted that the Panel's order to show cause was pending at the time of the issuance of the Committee's report. The Committee observed that "this committee, by its recommendations, does not intend to affect or restrict in any way the actions of the Panel under 28 U.S.C. § 1407 or reduce the Panel's jurisdiction or authority." *Id.* at 22.[5]

It is against this backdrop that the Panel's decision and role in this litigation must be understood. First of all, our decision to order transfer is not unmindful of the fact that the impact of asbestos litigation varies from district to district, and that in some courts asbestos personal injury actions are being resolved in a fashion indistinguishable from other civil actions. It is not surprising, therefore, that parties and courts involved in such actions might urge that inclusion of their actions in multidis-

trict proceedings is inappropriate. The Panel, however, must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law. *In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of Children's Books,* 297 F.Supp. 385, 386 (J.P.M.L.1968). It is this perspective that leads us to conclude that centralization in a single district of all pending federal personal injury and wrongful death asbestos actions is necessary.

Much of the argument presented to the Panel in response to its order to show cause is devoted to parties' differing (and often inconsistent) visions of § 1407 proceedings: 1) some plaintiffs see centralized pretrial proceedings as a vehicle leading to a single national class action trial or other types of consolidated trials on product defect, state of the art and punitive damages, while many defendants staunchly oppose such a trial, favor a reverse bifurcation procedure where actual damages and individual causation are tried before liability, and hope to use § 1407 proceedings to effect the severance of claims for punitive damages through a transferee court order directing that, upon the return of any case to its transferor district, such claims not be tried until claims for compensatory damages have been resolved in all federal cases; 2) some parties hope to persuade the transferee court to establish case deferral programs for plaintiffs who are not critically ill, or who have been exposed to asbestos but do not presently show any signs of impairment (i.e., pleural registries), while many plaintiffs assert that such procedures are unfair or unconstitutional; 3) in response to the pressing concern about transaction costs in this litigation, some defendants consider § 1407 transfer necessary in order to provide a single federal forum in which limits on plaintiffs' contingent fees can be addressed, while some plaintiffs maintain that transfer is necessary to pre-

---

5. The Committee also observed that, in the interest of centralizing asbestos claims to the greatest extent possible, the Panel's authority "could be expanded to allow the Panel to trans-

fer actions for trial as well as for pretrial proceedings." *Asbestos Committee Report, supra,* at 31.

vent the depletion of defendants' limited insurance coverage by defense costs incurred in multiple districts; 4) some plaintiffs and defendants urge that transfer is necessary in order to develop through discovery proceedings nationwide product data bases on all asbestos products and corporate histories of all asbestos defendants, while other plaintiffs and defendants contend that such efforts would be of no utility and are simply designed to shift liability; 5) some plaintiffs are suggesting that defendants' finances are so fragile as to require limited fund class action determinations pursuant to Fed.R.Civ.P. 23(b)(1)(B), while other plaintiffs resist any attempt to restrict their right to pursue punitive damages; 6) some parties anticipate that a single transferee court would speed up case disposition and purge meritless claims, while others expect a system of spacing out claims so as not to overwhelm currently solvent defendants' cash flow and drive them into bankruptcy; and 7) some parties contend that a single transferee court is necessary for the purpose of exploring the opportunities for global settlements or alternative dispute resolution mechanisms, while other parties assert that such hopes are utopian at best as long as i)

more than twice as many asbestos cases remain pending in state courts as in federal courts, and ii) currently stayed claims against bankrupt defendants cannot be addressed by the transferee court.[6]

We enumerate these issues not for the purpose, as some parties seemingly misunderstand, of passing on their merits. The language of the first sentence of paragraph (b) of § 1407 is quite clear about the proper forum for resolution of such issues—"coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned" by the Panel (emphasis added). The Panel has neither the power nor the disposition to direct the transferee court in the exercise of its powers and discretion in pretrial proceedings. *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 489 (J.P.M.L.1968).

We cite these issues only as illustrations of 1) the types of pretrial matters that need to be addressed by a single transferee court in order to avoid duplication of effort (with concomitant unnecessary expenses) by the parties and witnesses, their counsel, and the judiciary, and in order to prevent inconsistent decisions;[7] and 2) why, at

---

6. There appears to be some confusion among the parties concerning the interaction of the provisions of the Bankruptcy Code and § 1407. Transfer under § 1407 of an action containing claims against a defendant in bankruptcy has no effect on the automatic stay provisions of the Bankruptcy Code (11 U.S.C. § 362). Claims that have been stayed in the transferor court remain stayed in the transferee court. The Panel, however, has never considered the pendency of such stayed claims in an action to be an impediment to transfer of the action. 28 U.S.C. § 1407(a) authorizes the Panel to transfer only "civil actions" and not claims. The complex multidistrict litigations before the Panel have often included actions brought against multiple defendants, the claims against one or more of which have been stayed as a result of bankruptcy. To have allowed the pendency of claims against a single bankrupt defendant to preclude the transfer of actions containing claims actively being litigated against common nonbankrupt defendants would have frustrated the essential purpose of § 1407.

Some parties have urged the Panel to treat the bankruptcy reorganizations themselves as "civil actions" appropriate for transfer under § 1407 to the transferee district. The reorganization

proceedings are not subject to our order to show cause, and this question is therefore not ripe for a Panel decision. We have not addressed this question before and would be reluctant to do so until: 1) the transferee court determines that other alternatives, such as coordination with the concerned bankruptcy courts, are insufficient to accomplish the goals of § 1407; and 2) other suggested means of transferring the bankruptcy reorganizations or relevant portions thereof have been fully explored by the transferee court and the concerned bankruptcy courts.

Finally, we note that to the extent that state court actions and bankruptcy proceedings are excluded from the ambit of the Panel's transfer decision, transfer will nonetheless have the salutary effect of creating one federal court with which such proceedings can be coordinated, to the extent deemed desirable by the concerned courts. Indeed, state court judges have communicated to the Panel that coordination among state courts and a single transferee court for the federal actions is an objective worthy of pursuit.

7. We note that to the extent any of these pretrial decisions are subject to appellate review pursuant to interlocutory appeal or writ of manda-

least initially, all pending federal personal injury or wrongful death asbestos actions not yet in trial must be included in § 1407 proceedings. For example, if, as some courts, parties and commentators have suggested, there are insufficient funds to fairly compensate all deserving claimants, this should be determined before plaintiffs in lightly impacted districts go to trial and secure recoveries (often including punitive damages) at the possible expense of deserving plaintiffs litigating in districts where speedy trial dates have not been available. Similarly, if there are economies to be achieved with respect to remaining national discovery, pretrial rulings or efforts at settlement, these should be secured before claims against distinct types or groups of defendants are separated out of the litigation. Finally, because many of the arguments of parties seeking exclusion from transfer are intertwined with the merits of their claims or defenses and affect the overall management of this litigation, we are unwilling, on the basis of the record presently before us, to carve out exceptions to transfer. We prefer instead to give the transferee court the opportunity to conduct a substantive review of such contentions and how they affect the whole proceedings.

It may well be that on further refinement of the issues and close scrutiny by the transferee court, some claims or actions can be remanded in advance of the other actions in the transferee district. Should the transferee court deem remand of any claims or actions appropriate, the transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., 120 F.R.D. 251, 259–61 (1988).[8] We add that for those parties urging that resolution of this litigation lies primarily in the setting of firm, credible

trial dates, § 1407 transfer may serve as a mechanism enabling the transferee court to develop a nationwide roster of senior district and other judges available to follow actions remanded back to heavily impacted districts, for trials in advance of when such districts' overburdened judges may have otherwise been able to schedule them.

We remain sensitive to the concerns of some parties that § 1407 transfer will be burdensome or inconvenient. We note that since § 1407 transfer is primarily for pretrial, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise. *See, e.g.,* Fed.R.Civ.P. 45(d)(2). Furthermore, the judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel ever to travel to the transferee district. *See Manual for Complex Litigation, Second,* § 20.22 (1985).[9] And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel, and the judiciary, thereby effectuating an overall savings of cost and a reduction of inconvenience to all concerned. *See In re Nissan Motor Corporation Antitrust Litigation,* 385 F.Supp. 1253, 1255 (J.P.M.L.1974). Hopefully, combining such practices with a uniform case management approach will, in fact, lead to sizeable reductions in transaction costs (and especially in attorneys' fees).

In a docket of this size and scope, no district emerges as the clear nexus where centralized pretrial proceedings should be conducted. The Panel has decided to centralize this litigation in the Eastern District of Pennsylvania before Judge Charles R. Weiner. We note that: 1) more asbestos personal injury or wrongful death actions

---

mus, § 1407 transfer will also help to minimize the potential for inconsistent decisions from courts of appeals.

**8.** Those parties who may seek early remand of their actions or claims are reminded of i) Panel Rule 14(d)'s expression of the Panel's reluctance to order remand absent a suggestion of remand from the transferee judge, and ii) the special affidavit requirement of that Rule. 120 F.R.D.

at 260. *See also In re Holiday Magic Securities and Antitrust Litigation,* 433 F.Supp. 1125, 1126 (J.P.M.L.1977).

**9.** Liaison counsel would be called upon by the Panel to distribute future Panel orders regarding tag-along actions and any other matters to their liaison group as contemplated in Panel Rule 8(e). R.P.J.P.M.L., *supra,* 120 F.R.D. at 255.

are pending in that district than any other; 2) the court there has extensive experience in complex litigation in general and asbestos litigation in particular; and 3) the court has graciously expressed its willingness to assume the responsibility for this massive undertaking. Furthermore, in the person of Judge Weiner the Panel finds a judge thoroughly familiar with the issues in asbestos litigation, a track record of accomplishment and successful innovation,[10] and, on the basis of the pleadings before the Panel in which an opinion was expressed, a selection to which the majority of responding plaintiffs and defendants either expressly agree or are not opposed.

Many parties have suggested that the dynamics of this litigation make it impractical, if not impossible, for one single judge to discharge the responsibilities of transferee judge, while other parties have emphasized that more than a single transferee judge would dilute the judicial control needed to effectively manage the litigation. Varying suggestions have been made that the Panel appoint additional transferee judges to handle specific issues (e.g., class or limited fund determinations, discovery, settlement, claims administration, etc.), to deal with separate types of claims or defendants (e.g., maritime asbestos actions, rail-

road worker actions, friction materials actions, tire workers actions, etc.), or to divide the litigation along regional or circuit lines (helping to insure uniformity of decisions within each circuit pertaining, *inter alia*, to state law questions involved in the actions). Each of these suggestions has merit, as long as one judge has the opportunity to maintain overall control.

Section 1407(b) contemplates that multidistrict litigation may be conducted by "a judge or judges." It further expressly provides that "upon request of the panel, a circuit judge or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of this title." And the Panel has long expressed its willingness to appoint additional transferee judges in litigations whose size and complexity make it difficult for the original transferee judge to handle § 1407 proceedings alone. *See In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs*, 320 F.Supp. 586, 588 (J.P.M.L.1970). We emphasize our intention to do everything within our power to provide such assistance in this docket.

---

**10.** The *Asbestos Committee Report, supra,* noted at 15:

Judge Charles Weiner, the asbestos case manager in the Eastern District of Pennsylvania, is able to call upon over 20 active and senior judges in the district to handle asbestos cases on a priority basis. In addition to mandating standard, abbreviated pleadings, such as complaint, answer, and discovery requests, Judge Weiner meets regularly with counsel and handles on a regular basis all motions and discovery requests. Applying these sophisticated case management techniques, Judge Weiner and his colleagues have disposed of more than 2,000 cases through 1990. Another testament to Judge Weiner's techniques comes from the Panel pleading of certain plaintiffs already before him in the Pennsylvania district:

The Eastern District of Pennsylvania may be unique in another respect, and that again is due to the involvement of the Court. Perhaps no other jurisdiction has had the mutual cooperation of liaison counsel who have been instrumental, together with the Court in attempting to resolve the asbestos problem.

The adversary system remains, but the Court has eliminated the usual posturing of the litigants and has encouraged them to come up with programs and solutions. The classic example is the unique program established by counsel with the Court of binding arbitration through stipulated percentage of defendants' liability. The arbitrators are experts in asbestos litigation, and the medical issues are tried by submission on report. The average disposition rate is four cases in one day without judicial time.

Pleading 87, Response of Greitzer and Locks at 15.

Our reference to these passages is not meant to be an endorsement of any pretrial techniques to the exclusion of others, and in no way should be viewed as limiting Judge Weiner in his assessment of the appropriate tools to be used now that all federal personal injury/wrongful death asbestos actions will be before him for pretrial proceedings. We do consider such passages to be helpful, however, in allaying the fears of parties not familiar with Judge Weiner that § 1407 transfer will result in their actions entering some black hole, never to be seen again.

**424**                              **771 FEDERAL SUPPLEMENT**

Before making any specific appointments, however, we deem it advisable to allow the transferee judge to make his own assessment of the needs of this docket and communicate his preferences to us.

The Panel is under no illusion that centralization will, of itself, markedly relieve the critical asbestos situation. It offers no panacea. Only through the combined and determined efforts of the transferee judge and his judicial colleagues, of the many attorneys involved in asbestos matters, and of the parties, can true progress be made toward solving the "asbestos mess." This order does offer a great opportunity to all participants who sincerely wish to resolve these asbestos matters fairly and with as little unnecessary expense as possible.

Finally, in light of the Panel's disposition in this docket, it is necessary to remind parties and counsel of their continuing responsibility with respect to transfer of potential tag-along actions, including those either inadvertently overlooked at the time of the January 17, 1991 filing of the Panel's order to show cause or filed subsequent to the issuance of the Panel's order

to show cause. We note that Panel Rule 13(e) provides as follows:

> Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

R.P.J.M.L., *supra*, 120 F.R.D. at 259.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the following Schedule A that are pending as of the date of this order, are not in trial, and are pending outside the Eastern District of Pennsylvania, be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for coordinated or consolidated pretrial proceedings with the actions on Schedule A that remain pending in that district and are not in trial.[11]

IT IS FURTHER ORDERED that Panel Rule 19(a) be, and the same hereby is, suspended for this docket.[12]

---

**11.** The Panel's authority under § 1407 is to transfer for "pretrial" proceedings; actions on Schedule A that have been resolved or are presently in trial are not intended to be within the scope of the Panel's transfer decision. Given the tremendous number of actions pending in almost every federal district, however, it is not possible for the Panel to know at any one time the current status of all actions on Schedule A. When, pursuant to § 1407(c), the clerks of the transferor district courts receive a certified copy of the MDL–875 transfer order from the clerk of the transferee district court, we request the transferor district clerks to notify the Clerk of the Panel of any actions on Schedule A in their districts that have been resolved or are in trial, so as to permit the Panel to issue a correction order excluding such actions from transfer. We also remind counsel in such actions of the requirements of Panel Rule 10(f):

> With respect to any action that is the subject of Panel consideration, counsel shall notify the Clerk of the Panel of any development that would partially or completely moot the matter before the Panel.

*Id.* at 257.

**12.** Panel Rule 19(a), *id.* at 263, requires clerks of transferor district courts to forward to the clerk of the transferee district court the complete original file and docket sheet for each transferred action. Because of the voluminous files in this docket, we are suspending this rule. Instead, we will rely on the judgment of the transferee judge to request from the transferor district clerks or the parties whatever case files and docket sheets he needs.

**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)    425**
Cite as 771 F.Supp. 415 (Jud.Pan.Mult.Lit. 1991)

**SUMMARY OF SCHEDULE A**
**DOCKET NO. 875**
**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

| DISTRICT | # OF CASES | DISTRICT | # OF CASES |
|---|---|---|---|
| AK. | 6 | MS., S. | 997 |
| AL., N. | 58 | MT. | 79 |
| AL., S. | 64 | NC., E. | 88 |
| AR., E. | 75 | NC., M. | 27 |
| AR., W. | 18 | NC., W. | 126 |
| AZ. | 112 | ND. | 12 |
| CA., C. | 31 | NE. | 93 |
| CA., E. | 1 | NH. | 61 |
| CA., N. | 3 | NJ. | 147 |
| CA., S. | 4 | NM. | 63 |
| CO. | 4 | NV. | 22 |
| CT. | 345 | NY., E. | 425 |
| DC. | 32 | NY., N. | 589 |
| DE. | 16 | NY., S. | 1441 |
| FL., M. | 220 | NY., W. | 420 |
| FL., N. | 1 | OH., N. | 4022 |
| FL., S. | 135 | OH., S. | 84 |
| GA., M. | 39 | OK., E. | 2 |
| GA., N. | 180 | OK., N. | 538 |
| GA., S. | 673 | OK., W. | 17 |
| HI. | 105 | OR. | 75 |
| IA., N. | 19 | PA., E. | 5703 |
| IA., S. | 65 | PA., M. | 244 |
| ID. | 30 | PA., W. | 264 |
| IL., C. | 166 | SC. | 266 |
| IL., N. | 459 | SD. | 2 |
| IL., S. | 37 | TN., E. | 78 |
| IN., N. | 1 | TN., M. | 65 |
| IN., S. | 169 | TN., W. | 29 |
| KS. | 26 | TX., E. | 1165 |
| KY., E. | 48 | TX., N. | 34 |
| KY., W. | 64 | TX., S. | 477 |
| LA., E. | 163 | TX., W. | 24 |
| LA., M. | 89 | UT. | 21 |
| LA., W. | 48 | VA., E. | 618 |
| MA. | 2630 | VA., W. | 275 |
| MD. | 597 | VI. | 61 |
| ME. | 39 | WA., E. | 14 |
| MI., E. | 242 | WA., W. | 193 |
| MI., W. | 9 | WI., W. | 22 |
| MN. | 12 | WV., N. | 23 |
| MO., E. | 69 | WV., S. | 586 |
| MO., W. | 42 | WY. | 1 |
| MS., N. | 5 | | |
| **TOTAL DISTRICTS:  87** | | **TOTAL TRANSFERS:  26,639** | |



EXHIBIT C

Appendix XII-B

# CIVIL CASE INFORMATION STATEMENT
## (CIS)



Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE:  CK    CG    CA |
| CHG/CK NO |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME **Robert E. Lytle, Esq.** | TELEPHONE NUMBER **( 609 ) 275-0400** | COUNTY OF VENUE **Middlesex** |
|---|---|---|
| FIRM NAME (If applicable) **Szaferman, Lakind, Blumstein & Blader, P.C.** | | DOCKET NUMBER (When available) **MID-L-      -08AS** |
| OFFICE ADDRESS **101 Grovers Mill Road Lawrenceville, NJ 08648** | | DOCUMENT TYPE **Complaint** |
| | | JURY DEMAND  [X] YES  [ ] NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) **Gerald L. Hoffeditz and Judith L. Hoffeditz, Plaintiffs** | CAPTION **Hoffeditz v. AM General, LLC, et al.** |
|---|---|

| CASE TYPE NUMBER (See reverse side for listing) **601** | IS THIS A PROFESSIONAL MALPRACTICE CASE?  [ ] YES  [X] NO  IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT |
|---|---|

| RELATED CASES PENDING?  [ ] YES  [X] NO | IF YES, LIST DOCKET NUMBERS |
|---|---|
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?  [ ] YES  [X] NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN  [ ] NONE  [ ] UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  [ ] YES  [X] NO | IF YES, IS THAT RELATIONSHIP | [ ] EMPLOYER-EMPLOYEE  [ ] FAMILIAL | [ ] FRIEND/NEIGHBOR  [ ] BUSINESS | [ ] OTHER (explain)_____ _____ |
|---|---|---|---|---|

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  [ ] YES  [X] NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| [♿] DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  [ ] YES  [X] NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____ |
|---|---|
| WILL AN INTERPRETER BE NEEDED?  [ ] YES  [X] NO | IF YES, FOR WHAT LANGUAGE: _____ |

ATTORNEY SIGNATURE:                          Robert E. Lytle

30 - Civil Case Information Statement (CIS)
Appendix XII-B
Rev. 2/08  Effective 2/1/08  P3/08

Powered by
HotDocs®

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510     Page 1

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
By: Robert E. Lytle, Esq.
101 Grovers Mill Road, Suite 200
Lawrenceville, N.J. 08648
(609) 275-0400

LEVY PHILLIPS & KONIGSBERG, LLP
101 Grovers Mill Road, Suite 200
Lawrenceville, N.J. 08648
(609) 720-0400
Attorneys for Plaintiffs

| | |
|---|---|
| GERALD L. HOFFEDITZ and JUDITH L. HOFFEDITZ, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MIDDLESEX COUNTY |
| Plaintiffs, | |
| v. | DOCKET NO.: MID-L-___  ____-08AS |
| AM GENERAL, LLC, individually and as successor-in-interest to AM General Corporation; ARVIN-MERITOR, INCORPORATED, f/k/a Arvin Industries, Incorporated, as successor-in-interest to Rockwell International Automotive; BORG-WARNER MORSE TEC, f/k/a Borg Warner Corporation and Borg & Beck; CHRYSLER, LLC, individually and as successor-in-interest to Chrysler Motors Corporation, and d/b/a Mopar Motor Parts Corporation; CUMMINS, INCORPORATED; DANA CORPORATION, individually and as successor to Victor Gaskets; DETROIT DIESEL CORPORATION; FORD MOTOR COMPANY, individually and a/k/a Ford Motorcraft Parts and Ford Genuine Parts; GENERAL MOTORS CORPORATION, individually and d/b/a Delco Products; HONEYWELL INTERNATIONAL, INCORPORATED, as successor-in-interest to The Bendix Corporation; NATIONAL AUTOMOTIVE PARTS ASSOCIATION | **Civil Action - Asbestos Litigation**

**COMPLAINT, JURY DEMAND, DEMAND FOR ANSWERS TO STANDARD INTERROGATORIES AND DESIGNATION OF TRIAL COUNSEL** |

494103 1

(NAPA), a/k/a Genuine Parts
Company; PNEUMO-ABEX, LLC, as
successor-in-interest to Abex
Corporation, f/k/a American
Brake Shoe Company; SETCO
AUTOMOTIVE, N.A., INCORPORATED,
a/k/a Setco Lipe Clutch;
STANDARD MOTOR PRODUCTS,
INCORPORATED, a/k/a EIS Brake
Parts; John Doe Corporations
1-50; John Doe Corporations
51-75;

                    Defendants.

Plaintiffs, Gerald L. Hoffeditz and Judith L. Hoffeditz, by
way of complaint against Defendants allege and say:

## PARTIES - PLAINTIFFS

1.   Plaintiffs, Gerald L. Hoffeditz and Judith L. Hoffeditz,
are husband and wife, residing at 1354 Lincoln Way East,
Chambersburg, PA 17202.

2.   The Plaintiff, Gerald L. Hoffeditz ("Plaintiff" or "Mr.
Hoffeditz"), was diagnosed with mesothelioma on April 28, 2008,
caused by exposure to Defendants' asbestos products.

3.   Plaintiff, Gerald L. Hoffeditz, was exposed to asbestos
during his work at the Letterkenny Army Depot, where he was
employed as a mechanic from 1968-1993.

4.   As a mechanic, Plaintiff, Gerald L. Hoffeditz, performed
brake and clutch work, as well as engine overhauls and gasket work.

5.   Plaintiff, Gerald L. Hoffeditz, also performed brake and
clutch work on his own personal vehicles.

494103 1

2

6. Throughout his work history, Plaintiff, Gerald L. Hoffeditz, was exposed to asbestos fibers, dust, minerals and/or particles and other finished an/or unfinished asbestos products.

7. As a direct and proximate cause of the above exposures, Plaintiff, Gerald L. Hoffeditz, contracted mesothelioma and has suffered, and continues to suffer, from other various diverse injuries and attendant complications.

<u>**PARTIES - DEFENDANTS**</u>

8. Defendants, AM GENERAL, LLC, individually and as successor-in-interest to AM General Corporation; ARVIN-MERITOR, INCORPORATED, f/k/a Arvin Industries, Incorporated, as successor-in-interest to Rockwell International Automotive; BORG-WARNER MORSE TEC, f/k/a Borg Warner Corporation and Borg & Beck; CHRYSLER, LLC, individually and as successor-in-interest to Chrysler Motors Corporation, and d/b/a Mopar Motor Parts Corporation; CUMMINS, INCORPORATED; DANA CORPORATION, individually and as successor to Victor Gaskets; DETROIT DIESEL CORPORATION; FORD MOTOR COMPANY, individually and a/k/a Ford Motorcraft Parts and Ford Genuine Parts; GENERAL MOTORS CORPORATION, individually and d/b/a Delco Products; HONEYWELL INTERNATIONAL, INCORPORATED, as successor-in-interest to The Bendix Corporation; NATIONAL AUTOMOTIVE PARTS ASSOCIATION (NAPA), a/k/a Genuine Parts Company; PNEUMO-ABEX, LLC, as successor-in-interest to Abex Corporation, f/k/a American Brake Shoe Company; SETCO AUTOMOTIVE, N.A., INCORPORATED, a/k/a Setco Lipe Clutch; and STANDARD MOTOR PRODUCTS, INCORPORATED, a/k/a EIS

Brake Parts, were manufacturers, suppliers or distributors of asbestos fibers, dust, minerals, particles and other finished and unfinished asbestos products that Plaintiff, Gerald L. Hoffeditz, used or to which he was exposed.

9.   John Doe Corporations 1 through 50 are the fictitious names of corporations, partnerships, and/or other business entities whose identities are not presently known, and who mined, manufactured, sold, marketed, installed and/or removed asbestos or asbestos containing products which Plaintiff, Gerald L. Hoffeditz, used or to which he was exposed.

10.   John Doe Corporations 51 through 75 are the fictitious names of corporations, partnerships, and/or other business entities whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who mined, milled, manufactured, sold, marketed, installed and/or removed asbestos, or asbestos containing products, which Plaintiff, Gerald L. Hoffeditz, used or to which he was exposed.

11.   The term "Defendants" refers to all of the entities named above.

<u>**FIRST COUNT**</u>

12.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 11 as though hereinafter set forth at length.

13.   The Defendants conduct and/or have conducted business in New Jersey at all times relevant herein.   The Defendants breached

their warranties, both express and implied, for fitness of purpose and merchantability.

14. The Defendants are strictly liable in tort.

15. As a direct and proximate result of Defendants' negligence, breach of warranties, both expressed and implied, and strict liability in tort, the Plaintiff, Gerald L. Hoffeditz, contracted mesothelioma and has suffered, and continues to suffer, from other various diverse injuries and attendant complications.

16. It was foreseeable to the Defendants that the Plaintiff, and others similarly situated, would be injured as a result of the Defendants' actions and misconduct.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, jointly and severally for:

       a) Compensatory damages;

       b) Punitive damages;

       c) Pre-judgment and post judgment interest;

       d) Costs;

       e) Attorney fees and litigation expenses; and

       f) Such other relief as the Court may deem just and proper.

## SECOND COUNT

17. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 16 as though hereinafter set forth at length.

18. The Defendants, jointly and severally, marketed an ultra-

494103 1

5

hazardous product and placed that product in the stream of commerce.

19.   As a direct and proximate result of the Defendants' actions, the Plaintiff, Gerald L. Hoffeditz, contracted mesothelioma and has suffered, and continues to suffer, from other various diverse injuries and attendant complications.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

<u>THIRD COUNT</u>

20.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 19 as though hereinafter set forth at length.

21.   Defendants breached their non-delegable duty to warn and negligently supplied defective materials and products without ensuring that the Plaintiff and his employers were warned about the dangers of asbestos exposure.

22.   Defendants' actions prevented the Plaintiff's employers from educating the Plaintiff, and their other employees, on the dangers of asbestos exposure and from taking action to minimize the

6

risks of exposure in and out of the workplace.

23. As a direct and proximate result of the Defendants' actions and inaction, the Plaintiff, Gerald L. Hoffeditz, contracted mesothelioma and has suffered, and continues to suffer, from other various diverse injuries and attendant complications.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, jointly and severally for:

    a) Compensatory damages;

    b) Punitive damages;

    c) Pre-judgment and post judgment interest;

    d) Costs;

    e) Attorney fees and litigation expenses; and

    f) Such other relief as the Court may deem just and proper.

<u>FOURTH COUNT</u>

24. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 23 as though hereinafter set forth at length.

25. Defendants willfully, wantonly and intentionally conspired, and acted in concert, to withhold information from the Plaintiff, the Plaintiff's employers and the general public concerning the known hazards associated with the use of, and exposure to, asbestos products.

26. Defendants willfully, wantonly and intentionally conspired, and acted in concert, to withhold information from the Plaintiff, Gerald L. Hoffeditz, the Plaintiff's employers and the

public relating to the fact that asbestos fiber inhalation could be fatal.

27.   Defendants willfully, wantonly and intentionally conspired, and acted in concert, to disseminate false product safety information to the Plaintiff, Gerald L. Hoffeditz, the Plaintiff's employers and the public.

28.   Defendants willfully, wantonly and intentionally conspired, and acted in concert, to prevent the dissemination of information concerning their products' hazards and dangers.

29.   Defendants willfully, wantonly and intentionally failed to take appropriate action to minimize the risks of asbestos exposure to the Plaintiff and the general public.

30.   As a direct and proximate result of Defendants' willful, wanton and intentional acts, the Plaintiff, Gerald L. Hoffeditz, contracted mesothelioma and has suffered, and continues to suffer, from other various diverse injuries and attendant complications.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

## FIFTH COUNT

31.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 30 as though hereinafter set forth at length.

32.   Plaintiff, Judith L. Hoffeditz, is the wife of Plaintiff, Gerald L. Hoffeditz.

33.   Due to the actions of the Defendants, the Plaintiff, Judith L. Hoffeditz, was wrongfully deprived of her husband's society, services, and consortium.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.


Plaintiffs hereby incorporate by reference all allegations set forth in the Standard Complaint, as amended, which is contained in the Asbestos Manual.  A copy of the Asbestos Manual which contains the Standard Complaint can be obtained from the Middlesex County Mass Tort Clerk or by visiting the following website:

494103 1

http://www.judiciary.state.nj.us/mass-tort/asbestos/asbestos_amende
d_std_complaint.pdf


### JURY DEMAND

Plaintiffs demand trial by jury as to all issues of fact so triable.

                                SZAFERMAN, LAKIND,
                                  BLUMSTEIN & BLADER, P.C.
                                Attorneys for Plaintiffs

                        By:
                                ROBERT E. LYTLE

Dated: 11/1/08


### DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Moshe Maimon, Esq. is designated as trial counsel in the above captioned matter.

                                SZAFERMAN, LAKIND,
                                  BLUMSTEIN & BLADER, P.C.
                                Attorneys for Plaintiffs

                        By:
                                ROBERT E. LYTLE

Dated: 11/1/08

## DEMAND FOR INTERROGATORIES

Pursuant to the Asbestos Litigation General Order, Section VI.B. which can be found at http://www.judiciary.state.nj.us/mass-tort/asbestos/manual/generalo rder1.pdf, Plaintiffs hereby demand that the above listed Defendants answer Standard Interrogatories in the form prescribed by the Court and within the time provided by the above referenced Order.  A copy of the Standard Interrogatories are contained in the Asbestos Manual and may be obtained from the Clerk or by visiting the following website: http://www.judiciary.state.nj.us/mass-tort/asbestos/asbestos_amende d_std_complaint.pdf

```
                    SZAFERMAN, LAKIND,
                      BLUMSTEIN & BLADER, P.C.
                    Attorneys for Plaintiffs

        By:

              ROBERT E. LYTLE
```

Dated: 11/·/08

## CERTIFICATION PURSUANT TO R. 4:5-1

Pursuant to Rule 4:5-1, I certify that the matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that I am not aware of any non-party who should be joined in this action pursuant to R. 4:28 or who is subject to joiner pursuant to R. 4:29-1 (b) because of potential liability to any party on the basis of the same facts.

494103 1                              11

I further certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are wilfully false that I am subject to punishment.

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
Attorneys for Plaintiffs

By: ROBERT E. LYTLE

Dated: 11/1/08

**EXHIBIT D**

Szaferman, Lakind, Blumstein, & Blader P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, N.J. 08648
(609) 275-0400

Levy Phillips & Konigsberg, LLP
101 Grovers Mill Road, Suite 105
Lawrenceville, N.J. 08648
(609) 720-0400

Attorneys for Plaintiffs

| | |
|---|---|
| GERALD L. HOFFEDITZ and JUDITH L. HOFFEDITZ, <br><br> Plaintiffs, <br><br> V. <br><br> AM GENERAL, LLC, individually and as successor-in-interest to AM General Corporation; et al., <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MIDDLESEX COUNTY <br><br> DOCKET NO. MID-L-9319-08 AS <br><br> <u>Civil Action – Asbestos Litigation</u> **PLAINTIFF'S ANSWERS TO PART I INTERROGATORIES, AND REQUEST FOR PRODUCTION OF DOCUMENTS** |

## <u>INTERROGATORIES</u>

I.1.    State your full name, address, and telephone number, date of birth, educational background, and social security number:

A.1.    a.  Gerald L. Hoffeditz
        b.  1354 Lincoln Way East, Chambersburg, PA 17202
        c.  (717) 264-9241
        d.  5/22/1943
        e.  High School Graduate
        f.  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

I.2.    State the complete address of all places you have resided since birth giving the inclusive dates of residence for each place named and as to each state:
        a.      fuel use for heating and cooking;
        b.      significant home improvement (e.g., additions, reinstallation, re-wiring,

00137838.WPD

12/16

                etc.);

    c.      number of family units co-occupying said structure.

A.2.    At this time, Plaintiff is able to recall residing at the following:

    I.      Unknown, PA

           1943 - *approx.* 1945

           a.      Heating: Unknown

                    Cooking: Unknown

           b.      Unknown

           c.      Single Family Unit

    II.     1352 Lincoln Way East

           Chambersburg, PA 17202

           *approx.* 1945 - *approx.* 1963

           a.      Heating:  Coal

                    Cooking: Unknown

           b.      Unknown

           c.      Single Family Unit

    III.    1354 Lincoln Way East

           Chambersburg, PA 17202

           *approx.* 1963 - present

           a.      Heating: Electric

                    Cooking: Electric

           b.      None

           c.      Single Family Unit

I.3.    Are you married or single? If you are married, set forth:

    a.      maiden name or the maiden name of your spouse;

    b.      give the date and place of marriage.

A.3.   Yes.

     a.    Judith L. Worthington

     b.    September 1, 1963 in Chambersburg, PA

    I.4.    Did you ever serve in the armed forces of the United States?  If so state which service (Army, Navy, etc.), the branch of that service, your service identification number, the years of service, type of discharge and if a medical discharge, attach a copy hereto and set forth the medical reasons.

A.4.    No.

    I.5.    If you are now or have ever been, a member of trade or labor union, provide the following:

     a.    the name of the union or unions to which you have belonged;

     b.    the inclusive dates of your membership in each;

     c.    the numbers and complete address of the local unions to which you have belonged;

     d.    all offices or other positions which you have held in each union, identifying the office, position, and union in which held and inclusive dates the position or office was held.

A.5.    No.

    I.6.    Identify all jobs and projects on which you worked with or around asbestos or materials containing asbestos and state separately as to each job or project the following:

     a.    the name and location of each job (stating the plant site, city, county and state);

     b.    the name and address of each employer for whom you worked;

     c.    the beginning and ending dates of each job or project;

     d.    the name and manufacturer of each and every product containing asbestos with which you worked or to which you were exposed on each particular

job or project and a general description of each such product;

    e.    the identity of your immediate superior or job superintendent on each such job or project;

    f.    the identity of all persons with whom you worked on each such job or project;

    g.    the approximate length of time that you worked on each such job or project;

    h.    whether or not you wore a respirator or mask on each such job or project;

    i.    your specific duties on each job.

A.6.    Plaintiff worked with or around asbestos on the following jobs:

A.6.I.

    a.    Letterkenny Army Depot

    b.    Chambersburg, PA

    c.    1968 - 1993

    d.    Plaintiff worked as a Heavy Mobile Equipment Repairer and mechanic. As such, Plaintiff worked with asbestos-containing friction products on a daily basis. During the course of this work, and as part of his regular duties, Plaintiff was continuously exposed to asbestos fibers, dust, minerals, and/or particles and other finished and/or unfinished asbestos products.

    e.    Unknown

    f.    Denny Martin

    g.    *approx.* 25 yrs.

    h.    No

    i.    See A.6.I.d. above.

I.7.    As to each exposure to each product listed in the answer to the immediately preceding interrogatory, describe by name or other description the persons or documents which you claim will establish the fact of your exposure to the product. For each witness listed, state the witnesses complete name, job title or capacity, employer, address, and telephone number. For each document listed, state a description of the document, its contents and the name, address, and telephone number of the custodian of the document.

A.7.    Plaintiff will rely on his own knowledge and may also rely upon testimony of co-workers, if available. See A.6. above.  In addition, Plaintiff believes that defendants and others possess documents responsive to this interrogatory.  Upon completion of discovery supplemental information shall be provided.

I.8.    Have you at any time during your life ever use any device to reduce your possible exposure to, or inhalation of, asbestos dust or fibers? If you answer in the affirmative, please state  for each such device:

        a.    make, model and type;

        b.    from whom received;

        c.    company or employer requirements regarding use of such device;

        d.    name, address, phone number of company or employer, document title, date and description of the source of such requirement(s) or recommendation(s);

        e.    date and time of each period of use of such device;

        f.    if you will do so without a motion to produce, please attach a copy of each writing which evidences the requirements or recommendations referred to in subpart (c) and (d.) of this interrogatories.

A.8.    No.

I.9.    Identify the disease or injuries for which claim is made by you in the above captioned complaint, and as to such disease or injury provide the following information:

        a.    a description of the symptoms of the disease or injury;

        b.    the date you first experienced any of the symptoms of the disease or injury described above;

        c.    the name and address of each doctor or other practitioner of the healing arts  who has either examined or treated you for the disease or injury described above and the dates of such treatment or examination;

        d.    the treatment provided by each doctor or other practitioner of the healing arts for the disease or injury identified above.

A.9    Plaintiff suffers from mesothelioma.

a.   Plaintiff experiences pain and suffering, mental and emotional distress, severe coughing, chest pain and respiratory discomfort/pain.  He suffers from side effects such as constipation, lack of energy and fatigue.  He can no longer benefit from certain activities such as travel and hobbies.  Plaintiff's mesothelioma has disrupted his life and his ability to work.  It has interfered with his familial, social, and other relationships and has caused him anxiety, fatigue, discomfort and inconvenience.

b.   See medical records.  Medical records will be provided by RecordTrak. www.recordtrak.com

c.   At this time Plaintiff recalls the following physicians:

    i.   David Guthrie, M.D.
         757 Norland Ave.
         Chambersburg, PA 17201

    ii.  Gregory Brown, M.D.
         601 Norland Ave.
         Chambersburg, PA 17201

    iii. John Robinson, M.D.
         755 Norland Ave.
         Chambersburg, PA 17201

d.   See medical records. Patient was treated for Mesothelioma. Medical records will be provided by RecordTrak.  www.recordtrak.com


I.10.   State the date of diagnosis made by any physician or other practitioner of the healing arts of the disease or injury which you set forth in your answer to interrogatory 9 and identify the individual making such diagnosis.


A.10.   Plaintiff was diagnosed with mesothelioma in April 2008 by Dr. David Guthrie.


I.11.   State the date you learned of the diagnosis of such disease or injury.


A.11.   Plaintiff learned of his diagnosis of mesothelioma in April 2008.

I.12.   If you have received any treatment with respect to the disease or injury set forth in your answer to interrogatory 9, state:

      a.    the name and address of each hospital, clinic, or other medical facility at which you were treated or admitted;

      b.    the dates on which said treatment or treatments were rendered, including the dates of entry into and discharge from said hospitals, clinics or other medical facility.

A.12.   Yes

    I.    a.    The Chambersburg Hospital
            112 North Seventh Street
            Chambersburg. PA 17201

           b.    See medical records.  Medical records will be provided by RecordTrak. www.recordtrak.com

I.13.   Identify each physician or other practitioner of the healing arts not previously identified hereto who has examined or treated you for any reason and for each such individual so identified provide the following information:

      a. the reason for such examination or treatment;

      b. the date of each examination or treatment;

      c. the diagnosis resulting from each such examination or treatment.

A.13.

    I.    Mark Yurek, M.D.
         1035 Wayne Ave.
         Chambersburg, PA 17201

         a.    See medical records.
         b.    See medical records.
         c.    See medical records.

    II.    Amatul Khalid, M.D.
         1988 Scotland Ave.

Chambersburg, PA 17201

    a.   See medical records.

    b.   See medical records.

    c.   See medical records.

I.14.   Identify each hospital, clinic or other medical facility not previously identified herein at which you have been examined or have received medical treatment and for each such facility identified provide the following information:

    a. the reason for such examination or treatment;

    b. the date of each such examination or treatment;

    c. if you were an inpatient, the dates of admission to and discharge from such hospital, clinic or medical facility;

    d. the diagnosis resulting from each such examination or treatment.

A.14.  See A12. *supra.*

I.15.   If you are currently receiving medical services or treatment of any nature whatsoever, state:

    a. the name or names of the person or persons attending you;

    b. the approximate frequency of said treatment or services;

    c. the date you last received said treatments or services.

A.15.

    I.     a  John Robinson, M.D.
             b.  Chemotherapy
             c.  November 2008

I.16.   If you have ever had x-rays taken of your chest, provide the following information for each set of x-rays taken:

    a. the name and address of the office or hospital where the x-rays were taken;

    b. the reason why such x-rays were taken;

    c. the date on which the x-rays were taken;

d. the information reported to you as being the x-ray diagnosis;

e. the identity of the person or persons who took the x-rays and the person or persons who made the diagnosis.

A.16.  I.    a.    The Chambersburg Hospital
              112 North Seventh Street
              Chambersburg, PA 17201
        b.    See Medical Records. Medical records will be provided by
              RecordTrak. www.recordtrak.com
        c.    See Medical Records.
        d.    See Medical Records.
        e.    See Medical Records.


I.17.    If you have filed any claim with the Social Security Administration as a result of any injuries or disease, provide the following information:

a. the date you filed said claim;

b. the nature of such claim;

c. the date upon which you first received any benefits, either for disability or for medical treatment;

d. the amount of benefits you are receiving and the frequency with which you receive these benefits.


A.17.   No.


I.18.   Have you ever been convicted of a crime? If so state the following:

a. the date of each arrest;

b. the nature of each alleged offence;

c. the place of each arrest;

d. the outcome of each charge, indicating whether you were convicted or plead guilty;

e. the court where the matter was heard and the date of the hearing.


A.18.   No.

I.19.    Do you or your counsel have written reports from any physician or practitioner of the healing arts respecting any injuries or diseases which you have identified in your response to these interrogatories? If so please attach a copy of said report to your answers to these interrogatories.

      A.19.    See medical records.  Medical records will be provided by RecordTrak.
            www.recordtrak.com

I.20.    As to any job or jobs on which you allege you were injuriously exposed to asbestos containing materials, was there any company other than your employer installing asbestos containing material at the same job site? If so, please identify each job, its location, the approximate dates on which you worked on that job and the other company.

      A.20.    See A.6 *supra*. Discovery is continuing and ongoing.  Plaintiffs reserve their right to supplement this answer.

I.21.    Do you now, or have you ever, chewed, smoked, consumed, or otherwise used tobacco products? If so, please state:

      a. the type or types of products (i.e., cigarettes, cigars, etc.);

      b. the brand name of each product listed above; (indicating whether filtered or non filtered as to each brand);

      c. the inclusive dates of use of each product listed above;

      d. the frequency of use or amount of use (i.e. one pack a day, etc.).

      A.21.    No.

I.22.    Are you aware of the United State Surgeon General's warning placed on all cigarette packages and advertisement?

      A.22.    Not applicable.

I.23.   Have you ever read the warning referred to in interrogatory I22?

A.23.   Not applicable.

I.24.   Have you ever smoked cigarettes subsequent to being aware of or reading the warning referred to in interrogatory I22?

A.24.   Not applicable.

I.25.   Have you ever smoked tobacco products other than cigarettes subsequent to being aware of or reading the warning referred to in interrogatory I22?

A.25.   Not applicable.

I.26.   State the names and current addresses of all persons who have knowledge of any relevant facts relating to this case. Unless already set forth in answers to a prior question, set forth in detail the facts of which each person allegedly has knowledge.

A.26.   Plaintiff is unaware of any other person or persons who have relevant knowledge other than his family, doctors, former co-workers and the defendants herein.  Plaintiff reserves his right to amend and supplement his response.

I.27.   Did you ever file a Workman's Compensation claim for any or all of the injuries claimed in this action?  If so state:

      a. the claim petition number;

      b. the name and address of the Workman's Compensation insurance company and its file number;

      c. the terms of final judgment, if concluded;

      d. attach hereto copies of all reports of all doctors who examined or treated you with regard to these claims;

e. attach copies of the Claim Petition and Answer in said proceedings and copy of the judgement, Order Approving Settlement, Order of Discontinuance, and/or any other Order of the Court disposing of the Workmen's Compensation Petition;

f. the name and address of the attorney who represented you in that proceeding.

A.27.  No.

I.28.    Did you file a Workman's Compensation claim at any time for any reason for any condition and/or injury other than those mentioned in the foregoing interrogatory?  If so, state:

a. the claim petition number;

b. the name and address of the Workman's Compensation insurance company and its file number;

c. the terms of final judgment, if concluded;

d. attach hereto copies of all reports of all doctors who examined or treated you with regard to these claims;

e. attach copies of the Claim Petition and Answer in said proceedings and copy of the judgement, Order Approving Settlement, Order of Discontinuance, and/or any other Order of the Court disposing of the Workmen's Compensation Petition;

f. the name and address of the attorney who represented you in that proceeding.

A.28.  No.

I.29.    Give a complete history of your employment including:

a. the date you were hired;

b. the name of each department and each plant in which you worked during your employment, giving the inclusive dates you worked in each;

c. a detailed description of your duties in each of said departments;

d. whether there was any exposure by you during the aforementioned periods of employment to any dust, fumes or other conditions;

e. if so, set forth in detail the nature of the exposure;

f. the date your employment was terminated and the reasons therefore.

A.29.  See A.6. *supra.*


I.30.    Are you presently receiving any form of benefits under any insurance policy or policies, retirement program or programs, pensions, Social Security or from any person, firm corporation, governmental body or agency? If so, set forth full details in regard thereto.


A.30.  Plaintiff is currently receiving a pension in the amount of approximately $1,000. per month.


I.31.    Give the exact date upon which you became aware that those symptoms referred to in answers to interrogatories I9 and I11 were caused by the alleged acts of any party to this lawsuit. Please respond separately as to each party so named by you.  If advised by another of said cause, set forth the name and correct address of that person.


A.31.  In April 2008 Plaintiff was diagnosed with mesothelioma.


I.32.    If you were employed at the time the symptom, injury and/or condition complained of in the present action manifested itself, state as to each date of manifestation of symptoms, injury and/or condition the following:
>    a. the name and address of the employer;
>    b. the position held and nature of work performed;
>    c. your average weekly wages for the previous year;
>    d. the period of time lost from employment, if any, giving dates;
>    e. the amount of wages lost, if any;
>    f. attach W-2 forms of I.R.S. returns for the last five (5) years.


A.32.  Not applicable.


I.33.    If there has been a return to employment or occupation, state:
>    a. the name and address of present employer;

b. position held and nature of work performed;

c. present weekly wages, earnings, income or profit.

A.33.   Not applicable.

I.34.   Itemize any and all moneys expended or expenses incurred for hospitals, doctors, nurses, x-rays, medicines, care and appliances and state the name and address of each payee and the amount paid or owed each payee.

A.34.   Expenditures are being compiled.  Plaintiff reserves the right to amend his answer.

I.35.   Itemize any and all other losses or expenses incurred not otherwise set forth.

A.35.   Expenditures are being compiled.  Plaintiff reserves the right to amend his answer.

LEVY PHILLIPS & KONIGSBERG, L.L.P.

Attorneys for Plaintiffs

By

John Guinan

800 3rd Ave., 13th Floor

New York, NY 10022

Dated: December 11, 2008

To: See attached counsel list

EXHIBIT E

Joseph Kernen, Esquire
James Gross, Esquire
**DLA PIPER LLP (US)**
**(A New Jersey Limited Liability Partnership)**
Two Tower Center Boulevard, Suite 1600
East Brunswick, New Jersey  08816-1100
Attorneys for Defendant,
AM General, LLC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GERALD L. HOFFEDITZ and JUDITH L. HOFFEDITZ**<br><br>Plaintiffs,<br><br>v.<br><br>**AM GENERAL, LLC individually and as successor in interest to AM GENERAL CORP., et al.,**<br><br>Defendants. | :<br>:<br>:<br>:<br>: Docket No:  09-cv-00257 (WJM) (MF)<br>:<br>:<br>:<br>:<br>: |

## DEFENDANT AM GENERAL LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDING........................................................... 1

II.  SUMMARY OF ARGUMENT ................................................................................... 2

III. FACTUAL BACKGROUND ....................................................................................... 4

    A.   AM General .......................................................................................... 4

    B.   The Complaint ...................................................................................... 5

    C.   Plaintiffs' Discovery Responses ........................................................... 5

    D.   Plaintiffs' Depositions ......................................................................... 7

IV.  ARGUMENT ............................................................................................................. 8

    A.   This Court Should Refrain From Ruling On Plaintiffs' Motion To Remand And Stay All Proceedings Pending Transfer To The MDL Court......................... 8

        AM General's Notice of Removal Was Timely Filed Because Plaintiffs' Deposition Transcript Was Its First Notice of Removability ................................ 9

    B.   ....................................................................................................................... 9

    C.   This Court May Consider Supplemental Facts Contained in Subsequently Filed Affidavits ................................................................................... 14

    C.   This Court May Consider Supplemental Facts Contained in Subsequently Filed Affidavits ................................................................................... 15

        ................................................................................................................... 17

V.   CONCLUSION ......................................................................................................... 18

i

EAST\42354339.1
EAST\42357144.1

## TABLE OF AUTHORITIES

**CASES**                                                                  Page(s)

*Akin v. Big Three Industries, Inc.,*
    851 F. Supp. 819 (E.D. Tex. 1994) ...............................................................10

*Durham v. Lockheed Martin Corp.,*
    445 F.3d 1247 (9th Cir. 2006) .............................................................10, 11

*Green v. A.W. Chesterton Co.,*
    366 F.Supp.2d 149 (D. Me. 2005) .............................................................10

*International Insur. Co. v. Saco Def. Inc.,*
    1999 U.S. Dist. Lexis 237 (N.D. Ill. 1999) ...........................................9, 10

*Lefall v. Dallas Indep. School Dist.,*
    28 F. 3d 521 (5th Cir. 1994) ....................................................................9

*Miller v. Principal Life Ins. Co.,*
    189 F. Supp. 2d ...........................................................................15

*Pantalone v. Aurora Pump Co.,*
    576 F. Supp. 2d 325 (D.Conn. 2008)...................................................11, 12

*USX Corp. v. Adriatic Ins. Co.,*
    345 F.3d 190 (3d Cir. 2003)...............................................................15

*Willingham v. Morgan,*
    395 U.S. 402 (1969)...................................................................15, 16


**STATUTES**

28 U.S.C. § 1367(a) ...........................................................................4

28 U.S.C. § 1442...............................................................................9

28 U.S.C. § 1442(a)(1)...........................................................................3

28 U.S.C. § 1446(b) .........................................................................3, 9

28 USC § 1441(d) ...............................................................................15

Defendant AM General LLC (hereinafter "AM General") hereby files its response in opposition to Plaintiffs' Motion to Remand this action to the Superior Court for Middlesex County, New Jersey, on the grounds that AM General's removal of this action was both timely and proper.

## I.   NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Gerald and Judith Hoffeditz seek to recover for personal injury allegedly resulting from exposure to asbestos containing products during occupational and non-occupational activities.  On November 5, 2008, Plaintiffs filed their Complaint, asserting product liability claims, in the Superior Court of New Jersey in and for Middlesex County, naming AM General LLC ("AM General") as one of many defendants.  The Complaint fails to specify which AM General products, if any, caused Mr. Hoffeditz' exposure to asbestos.  It merely alleges that Mr. Hoffeditz was exposed to asbestos from his work on personal vehicles as well and from his work at Letterkenny Army Depot.  AM General was served with the Complaint on December 9, 2008, a copy of which is attached hereto as Exhibit "A."

Plaintiffs' Answers to Part I Interrogatories, also served on AM General on December 9, 2008, fail to provide any additional detail concerning the type or class of AM General product to which the Plaintiff was allegedly exposed.  Plaintiffs provide some additional information regarding Mr. Hoffeditz's employment at the Letterkenny Army Depot and state that he was exposed to asbestos for approximately 25 years, but the Plaintiffs' responses fail to identify any additional detail concerning the type of vehicles he worked on during the scope of his employment or outside of his employment.  A true and correct copy of Plaintiffs' Answers to Part I Interrogatories is attached hereto as Exhibit "B."

On January 7-9, 2009, Mr. Hoffeditz was deposed and, for the first time, provided detail as to which types of AM General products he was exposed.  The transcript from Mr. Hoffeditz'

deposition was published on January 29, 2009. Based on Mr. Hoffeditz' deposition testimony,

AM General timely filed its Notice of Removal on January 20, 2009, well within 30 days of

either the deposition itself and the publication of its transcript, and immediately thereafter filed a

Motion to Stay these Proceedings pending transfer of this matter to MDL-875 for consolidated

and coordinated pretrial proceedings. Plaintiffs filed a Motion to Remand this matter to state

court on February 6, 2009.

## II.   SUMMARY OF ARGUMENT

Despite all the adjectives and adverbs in plaintiffs' Motion, and disingenuous accusations

of inappropriate and baseless removal for the blatant purpose of delay, plaintiffs offer no

substantive argument whatsoever, let alone evidence, to support any opposition to AM General's

defense based on federal law. Rather, plaintiffs claim that AM General's removal was untimely.

This argument is baseless and is not supported by the facts of this case. [1]

This Court should refrain from ruling on Plaintiffs' Motion pending the transfer of this

case to MDL-875 for consolidated and coordinated pretrial proceedings. If, however, this Court

takes Plaintiffs' Motion under consideration, a review of the facts and law supports a finding that

AM General timely removed this action. Plaintiffs assert a single argument in support of their

motion – that AM General should have removed this action within 30 days from service of the

Complaint. However, AM General had no notice from the Complaint alone that Mr. Hoffeditz'

---

[1] Though Plaintiffs' only stated basis to contest removal is the timeliness of AM General's Notice of Removal, they reserve the right to "supplement" their motion to address the substantive jurisdictional issues of AM General's Notice of Removal. In essence, plaintiffs claim they should have as many bites at the apple as they choose. AM General objects to Plaintiffs' "reservation" to supplement its motion at a later date. There is no reason plaintiffs could not address any arguments they may have in a single motion. Multiple motions will only serve to delay this matter. Nonetheless, should this Court entertain additional motions by Plaintiffs, AM General reserves the right to respond to each with a substantive brief in opposition.

claim against AM General stemmed from his exposure to military vehicles as opposed to civilian

vehicles.  Indeed, AM General designs and manufactures civilian and military vehicles and,

therefore, removal would have been improper if Mr. Hoffeditz's claims against it were for

alleged asbestos exposure from AM General civilian vehicles.  AM General promptly removed

this case well within 30 days from the date it received the first paper from which it could

ascertain that the case was removable, namely Mr. Hoffeditz's deposition transcript, pursuant to

28 U.S.C. § 1446(b).  Moreover, its Notice of Removal conforms to the "notice pleading"

standard required by the Federal Rules of Civil Procedure.  See *Miller v. Principal Life Ins. Co.*,

189 F. Supp. 2d 254, 257 n.2 (E.D. Pa. 2002);  and generally FED. R. CIV. P. 8.

Federal courts have made clear that AM General is entitled to provide factual support for

its removal subsequent to filing its Notice of Removal.  AM General is entitled to have the

claims against it heard in federal court because it has timely filed its Notice of Removal and has

satisfied the prerequisites for federal officer removal under 28 U.S.C. § 1442(a)(1).  Thus, after

denying Plaintiffs' Motion to Remand, this Court should retain supplemental jurisdiction over

this controversy in its entirety pursuant to 28 U.S.C. § 1367(a).

### III.   FACTUAL BACKGROUND

#### A.   AM General

During the course of AM General's production history, AM General has manufactured

many different types of vehicles both for military and civilian use, including utility vehicles,

heavy-duty trucks, and buses.  (See generally Declaration of Craig C. MacNab, attached hereto

as Exhibit "D.")  In the 1960s, AM General started the production of 1/4 ton postal vehicles for

the United States Postal Service, and in the 1970s added the production of 1/2 ton postal

vehicles.  From approximately 1968 to 1985, AM General manufactured over 175,000 postal

vehicles for the United States Postal Service.  (Exh. D at ¶ 5.)  In the 1970s, AM General entered

into the mass transit field, manufacturing two generations of passenger transit buses.  In March

of 1983, the United States Government awarded AM General the contract to build the next

generation of military transport vehicles for the Department of the Defense.  The vehicle was

characterized by the United States Government as a "High Mobility Multipurpose Wheeled

Vehicle (HMMWV)."  Since 1985, AM General has manufactured over 230,000 "HMMWV's"

for use by the Department of Defense and approximately fifty friendly foreign countries for use

in military operations.  In 1992, AM General initiated the production of the civilian version of

the "HMMWV" which came to known as the "HUMMER H1."  Unlike the "HMMWV," the

"HUMMER" is not manufactured according to detailed and precise military specifications

because it is intended for use as a civilian vehicle.  In 2002, AM General began manufacturing

the "HUMMER H2,", a commercial vehicle designed by General Motors Corporation.  AM

General has manufactured over 165,000 "HUMMERs" (both H1s and H2s) for sale to the

general civilian population and to federal and state agencies.  (Exh. D at ¶¶ 6-11)

**B.**    **The Complaint**

Plaintiffs' Complaint contains claims based on products liability, sounding in negligence

and strict liability.  *See generally,* Complaint (Exh. A).  With respect to the product liability

claims, the Complaint contains vague and general allegations that Plaintiff, Gerald Hoffeditz,

was exposed to asbestos containing products manufactured, sold, distributed, or installed by the

defendants, including AM General from 1968 until 1993 while working as a mechanic at the

Letterkenny Army Depot.  (Exh. A at ¶ 3.)  The Complaint also alleges Gerald Hoffeditz

performed maintenance on vehicles on his personal time.  (Exh. A at ¶ 5.)

The Complaint does not contain the name, type, or class of product to which Mr. Hoffeditz was allegedly exposed, or which AM General allegedly manufactured, sold, distributed or installed.  The Complaint fails to identify where or to which of AM General's products Mr. Hoffeditz was allegedly exposed, and it fails to state a specific time period when the alleged exposure to an AM General product occurred.

### C.    Plaintiffs' Discovery Responses

Plaintiffs' Responses to Part I Interrogatories, also served on AM General on December 9, 2008, failed to identify any AM General product and did not provide any details sufficient to determine whether removal would be proper.  Plaintiffs provide some additional information regarding Mr. Hoffeditz's employment at the Letterkenny Army Depot and state that he was exposed to asbestos for approximately 25 years, but the Plaintiffs' responses fail to identify where and to which of AM General's products Mr. Hoffeditz was allegedly exposed.  Plaintiffs also provide no further information regarding the non-occupational work Mr. Hoffeditz performed on vehicles.  A true and correct copy of Plaintiffs' Responses to Part I interrogatories are attached hereto as Exhibit "B."

Plaintiffs' Responses to Part I Interrogatories are devoid of any reference to AM General or an AM General Product.  As such, AM General did not have a basis to ascertain on which vehicles Mr. Hoffeditz had worked (whether built for private or government use).

### D.      Plaintiff's Deposition

Mr. Hoffeditz was deposed on January 7, 8 and 9, 2009. During his deposition, Mr. Hoffeditz testified concerning his extensive work on approximately 35 personal vehicles as well as his employment at the Letterkenny Army Depot. His deposition testimony provided the first notice to AM General of the type of products to which Mr. Hoffeditz was claiming exposure. According to Mr. Hoffeditz, his only alleged exposure to AM General products was at the Letterkenny Army Depot and consisted of working on transmissions that came out of United States Army 5 ton and 2 1/2 ton trucks. *See* Gerald Hoffeditz Deposition at 223-224, attached hereto as Exhibit "C." Mr. Hoffeditz testified that during his work as a mechanic and heavy equipment repairer at Letterkenny Army Depot from 1968 until 1993, he would tear down engines and transmissions from United States Army tanks and trucks. During his deposition testimony, Mr. Hoffeditz testified that he was allegedly exposed to airborne asbestos fibers while performing mechanical work on United States Army tanks and trucks (Exh. C. at 226-228.)

Mr. Hoffeditz testified that his exposure to AM General products took place from 1986-1993 and consisted of repairing transmissions manufactured by Rockwell that came out of United States Army 2 1/2 ton and 5 ton trucks that were allegedly manufactured by AM General for the Army. Mr. Hoffeditz was unable to identify the trucks by model number during his testimony. (Exh C at 223-226.) Mr. Hoffeditz also testified that his paychecks were issued by the Department of Defense. Moreover, Mr. Hoffeditz needed security clearance to work at the Army Depot; each department was run by a senior military official; he was not allowed on the Depot's grounds each day without a badge; he wore the badge throughout the day and he was not permitted in certain areas without elevated levels of security clearance. (Exh. C at 212-214.)

Mr. Hoffeditz's testimony further revealed that the parts he believes contained asbestos were allegedly identified as such in the Army-issued manuals – manuals that Mr. Hoffeditz was required to follow in all the work he performed. These manuals containing the United States government seal and issued by the United States government dictated what parts he was to use and how to conduct his repairs. The manuals were available in a library at the Depot and had to be signed out and returned. (Exh. C at 221-223.)

The transcript of Plaintiff Gerald Hoffeditz's deposition on January 20, 2009, was the first paper from which AM General could ascertain that this case was removable because it was the first time that allegations were made as to the type of asbestos-containing products (namely, United States Army vehicles that were designed and manufactured at the specific direction of the United States Army) to which Mr. Hoffeditz was exposed and the time and place where such exposure allegedly occurred. Plaintiff's testimony made it clear that the activities that allegedly caused his injuries, namely working with and around asbestos-containing component parts that purportedly later caused or contributed to the injuries claimed, occurred during Mr. Hoffeditz's work on 2 1/2 ton and 5 ton vehicles that were allegedly manufactured by AM General for the United States Army. His deposition testimony confirmed for the first time that Mr. Hoffeditz's claims against AM General stemmed from his work on vehicles AM General designed and manufactured specifically for the United States military and not from exposure to AM General civilian vehicles.

IV.   **ARGUMENT**

A.   **This Court Should Refrain From Ruling On Plaintiffs' Motion To Remand And Stay All Proceedings Pending Transfer To The MDL Court.**

As a threshold matter, the Court should refrain from ruling on Plaintiffs' Motion pending the expected transfer of this case to MDL-875 for consolidated and coordinated pretrial proceedings. As set forth in AM General's Motion to Stay (incorporated herein by reference), a stay or deferral of all proceedings — including consideration of Plaintiffs' Motion — pending transfer to the MDL Court is warranted to meet the goals of uniformity and efficiency that multi-district litigation is designed to serve. If this Court declines to stay proceedings, which it should not, Plaintiffs' Motion should be denied because this case was properly removed to this court pursuant to 28 U.S.C. § 1442, the "Federal Officer Removal" statute.

B.   **AM General's Notice of Removal Was Timely Filed Because Plaintiffs' Deposition Transcript Was Its First Notice of Removability.**

AM General removed this case within thirty days of its receipt of a paper from which it could be ascertained that the case was removable, pursuant to 28 U.S.C. § 1446(b). When the case stated in the complaint does not indicate grounds for removal, the thirty day time limit is not triggered. 28 U.S.C. § 1446(b); *International Insur. Co. v. Saco Def. Inc.*, 1999 U.S. Dist. Lexis 237, *3 (N.D. Ill. 1999). Instead, "a notice of removal may be filed within thirty days after receipt by the defendant of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." *Id.* The case stated by Plaintiffs in their initial pleading was not removable. The Plaintiffs' Responses to Interrogatories did not provide any information from which removability could have been ascertained. The transcript from plaintiff's January 7-9, 2009 deposition, published on January 29, 2009, was the first paper from which removability could be ascertained; therefore,

AM General's removal on January 20, 2009, well within thirty days of that triggering event, was timely.

Federal courts have held that there is no burden on defendants to investigate facts beyond a plaintiff's complaint to determine if a case may be removable. *See Lefall v. Dallas Indep. School Dist.*, 28 F. 3d 521, 525 (5th Cir. 1994) (rejecting argument that the thirty-day removal clock should begin to run when a plaintiff files a pleading that is indeterminate as to removability if the defendant would know in the exercise of due diligence that the case is removable).

Despite Plaintiffs' claims to the contrary, Defendants are not required to guess about what facts could possibly exist and what possible various bases for removal those dreamed up facts would create. "[T]he removal statute says that the thirty day time limit begins to run when the defendant can first ascertain that the case '*is* or *has become* removable,' not when the case may be removable." *International Insur. Co. v. Saco Def. Inc.*, 1999 U.S. Dist. Lexis 237 at *12-13. As that court explained, "[a] 'reasonable basis' standard is not sufficiently objective to guide defendants as to when they possess information sufficient to require them to act." *Id.* at 13-14. The purpose of the statute is to discourage a plaintiff from disguising the removability of his action by the artful drafting of his pleading and other papers and to prevent defendants from having to speculate as to whether the case is removable. *Akin v. Big Three Industries, Inc.*, 851 F. Supp. 819, 824 (E.D. Tex. 1994). Also *see Green v. A.W. Chesterton Co.*, 366 F.Supp.2d 149 (D. Me. 2005) (Noting that removal was proper because the first ascertainment of a basis for asserting federal contractor defense came not in complaint, but in supplemental interrogatory responses which identified specific Navy ships for which Westinghouse had supplied asbestos-insulated turbines pursuant to contracts with the U.S. Navy.)

Illustrative of this fact is the Ninth Circuit's opinion in *Durham v. Lockheed Martin*

*Corp.*, 445 F.3d 1247 (9th Cir. 2006). The *Durham* case was also removed pursuant to the

Federal Officer Removal statute and the underlying military contractor defense. Plaintiff

brought suit against, *inter alia*, Lockheed Martin, for alleged exposure to asbestos during his

thirty-year service as an electronics technician for the United States Air Force and Air Force

Reserves. *See id.* at 1249. In his complaint, Durham listed the Air Force facilities where he

worked, but did not allege which Lockheed products exposed him to asbestos. Ten days later,

Lockheed received plaintiff's answers to interrogatories. These interrogatories for the first time

disclosed the specifics of Durham's claim -- that he was exposed to asbestos while working on

the SR-71 Blackbird and the C-141 Starlifter aircraft on military bases where Lockheed was a

contractor. *See id.* Only then did Lockheed remove the matter as Durham's responses disclosed

to Lockheed a basis for removing the case: namely that Lockheed assembled the aircraft while

acting as an agent of a federal officer, and was therefore immune to suit as a federal contractor.

Plaintiff moved to remand the case arguing Lockheed's removal was untimely in that it was filed

30 days after plaintiff's complaint. *See id.* at 1250.

The court held that until plaintiff revealed which aircraft he had worked on during his Air

Force career, Lockheed could not assert either that its actions were taken pursuant to a federal

officer's directions, or that it had a colorable federal defense. "Lockheed, like other federal

military contractors, performs some activities on military bases that are protected by federal

contractor immunity, and others that are not." *Id.* citing *Boyle v. United Techs. Corp.*, 487 U.S.

500, 512 (1988). Further that "there wasn't enough information in Durham's complaint for

Lockheed to discern whether its allegedly wrongful conduct was protected by federal contractor

immunity." *Id.* Had it removed upon filing of the complaint, it may well have subjected itself to

fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal. As

such, the Court noted that it would not require defendants to take such a blind leap: "We don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove." *Durham*, 445 F.3d at 1251.

Plaintiffs' reliance upon *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325 (D.Conn. 2008) is misplaced. The level of information contained in plaintiffs' complaint in the *Pantalone* matter was sufficient, as the court noted, to place the defendants on notice that it was being sued based on the products delivered pursuant to its Navy contracts. The court found that in Count I of the Complaint, plaintiffs' alleged that the plaintiff "was exposed to various asbestos-containing products while in the United States Navy, at various jobsites, at various times during the years 1951-1956." *Id at 333.* The Court also found that defendants allegedly supplied the asbestos-containing products to plaintiff's employer; the plaintiff was forced to come into contact with these products as a condition of his job; and that the products reached plaintiff's employer "without any substantial change in their condition." *Id.*

Mr. Hoffeditz provided no such level of detail in the Complaint which was filed in this case. In their Complaint, Plaintiffs allege that Mr. Hoffeditz was exposed to asbestos during his work at the Letterkenny Army Depot from 1968 until 1993. As a mechanic, Mr. Hoffeditz allegedly performed brake and clutch work, as well as engine overhauls and gasket work. (Exh. A at ¶¶ 3,4.) The Complaint also alleges that Mr. Hoffeditz performed brake and clutch work on his own personal vehicles. (Exh. A at ¶ 5.) Unlike the allegations contained in the *Pantalone* complaint, AM General, who makes both military and civilian vehicles, did not have a basis to conclude from the Complaint alone that Mr. Hoffeditz's alleged exposure was a result of working on vehicles that were manufactured according to precise military specifications.

Thus, given the allegations presented in Plaintiffs' Complaint and the twenty five year time span alleged by Plaintiffs, it was impossible for AM General to ascertain whether Mr. Hoffeditz's alleged exposure to an AM General product was related to a military or civilian vehicle. Plaintiffs failed to identify in the Complaint what types of personal vehicles Mr. Hoffeditz maintained and what types of vehicles he worked on during the course and scope of his work at Letterkenny Army Depot. The Complaint also failed to identify whether Mr. Hoffeditz worked on civilian and/or military vehicles during his employment at Letterkenny. Given the twenty five year time frame of exposure alleged in the complaint, Mr. Hoffeditz could have presumably worked on any number of AM General products. (Exh. A at ¶ 5.) The information contained in Plaintiffs' Complaint was simply insufficient to place AM General on notice that the alleged exposures were a result of AM General's contracts with the United States military.

It was not until Mr. Hoffeditz testified at his deposition that his claimed exposure to AM General products was the result of the work he performed, during his employment at the Letterkenny Army Depot, to vehicles manufactured by AM General for use by the United States Army, that AM General had, for the first time, a reasonable basis to seek removal. (Exh. C.) If the Plaintiffs would have included this specific information in their Complaint or in their responses to Interrogatories (*like the plaintiffs in the Pantalone matter*), AM General would have promptly filed its notice of removal within thirty days of service of those documents.

### C.     This Court May Consider Supplemental Facts Contained in Subsequently Filed Affidavits.

AM General is entitled to present factual support for its removal after it has filed its Notice of Removal. First, and most simply, the federal courts require "notice" pleading. Section 1446(a) was amended to require defendants to conform to the "less onerous standard of notice

pleading," and defendants are required to file only a Notice of Removal.  *Miller v. Principal Life Ins. Co.,* 189 F. Supp. 2d at 257 n.2.

Second, the United States Supreme Court in *Willingham v. Morgan,* 395 U.S. 402, 408 n.3 (1969), specifically allowed an affidavit to be filed in support of removal, even though it was not offered until a later proceeding.  Similarly, in *USX Corp. v. Adriatic Ins. Co.,* 345 F.3d 190 (3d Cir. 2003), the Third Circuit Court of Appeals permitted the consideration of facts contained in an affidavit which were relevant to the party's jurisdictional basis for removal under 28 USC § 1441(d) that were first submitted in response to a motion to remand an insurance coverage case to state court.

In doing so, the Third Circuit referenced *Willingham,* noting "the Supreme Court has upheld removal where jurisdictional facts required to support the removal were found in later-filed affidavits rather than in the notice of removal." *Id.* at 206.  The Court went on to note that "other courts more recently have allowed consideration of facts contained in later-filed affidavits, treating those facts as an amendment of the notice of removal under § 1653," regarding amendments of pleadings to show jurisdiction. *See id.* citing *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 n.1 (9th Cir. 2002) (holding that the district court did not err in construing an affidavit setting forth the facts supporting the amount in controversy in a diversity case as an amendment under § 1653 to the notice of removal which stated summarily, without alleging any underlying facts, that the amount in controversy exceeded $ 75,000); *Miller v. Principal Life Ins. Co.,* 189 F. Supp. 2d 254, 257-58 (E.D. Pa. 2002) (holding that, even assuming that the defendant's initial removal petition was defective in that it did not state that a codefendant was only a nominal defendant, *Willingham* permitted treatment of an amended notice of removal filed

more than 30 days after the filing of the original removal notice and after service of a motion to remand as an amendment of the original notice under § 1653).

These cases illustrate that this Court is not precluded from considering facts contained in affidavits, or otherwise, that are filed concurrently with AM General's Opposition to Plaintiffs' Motion to Remand.

## V.      **CONCLUSION**

In sum, AM General's removal of this action was timely because AM General first ascertained the case was removable after Mr. Hoffeditz's deposition.  Neither Plaintiffs' Complaint nor the information provided in the Plaintiffs' Responses to Set I Interrogatories provided any information concerning AM General or AM General's products to which the plaintiff was allegedly exposed.  For all of the forgoing reasons, AM General respectfully requests that this Court deny Plaintiffs' Motion to Remand.

Respectfully submitted,

DLA PIPER US LLP


 _s/ James Gross_
Joseph Kernen, Esquire
James J. Gross, Esquire

Attorneys for Defendant
AM General LLC

Date:  February 17, 2009

## CERTIFICATE OF SERVICE

I certify that on February 17, 2009, I caused a copy of the attached **Defendant, AM General's Brief in Opposition to Plaintiffs' Motion for Remand** to be served by electronic mail, to plaintiffs' counsel at the below address and to all defense counsel of record via regular mail:

> Arnold C. Lakind, Esquire
> Szaferman, Lakind, Blumstein & Blader, P.C.
> 101 Grovers Mill Rd., Suite 200
> Lawrenceville, NJ  08648,

> **s/ James Gross**
> James Gross, Esquire

Joseph Kernen, Esquire
James Gross, Esquire
**DLA PIPER LLP (US)**
(A New Jersey Limited Liability Partnership)
Two Tower Center Boulevard, Suite 1600
East Brunswick, New Jersey  08816-1100
Attorneys for Defendant,
AM General, LLC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **GERALD L. HOFFEDITZ and JUDITH L. HOFFEDITZ** | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Docket  No:     09-cv-00257   (WJM) |
| | : | |
| **AM GENERAL, LLC individually and as successor in interest to AM GENERAL CORP., et al.,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR REMAND**

Pursuant to the order, dated March 6, 2009, issued by Judge Claire C. Cecchi,

Defendant, AM General, LLC ("AM General"), through its counsel, files this Sur-Reply

in Opposition to Plaintiffs' Motion for Remand.

**INTRODUCTION**

Plaintiffs argue in their Reply that this Court, in particular, is more restrained than

most courts in sustaining federal court jurisdiction for corporations like AM General, and

that "private corporation [sic] claiming a right to federal officer removal by virtue of a

government contract ***bears a special burden of establishing the official nature of its***

1

*activities.*" (Reply at 10, emphasis added.)  Yet, ironically, in the same brief, Plaintiffs also argue that AM General should have removed this case based solely on a Complaint that *nowhere states that Mr. Hoffeditz worked on AM General vehicles at the Letterkenny Army Depot.*  This flawed logic is fatal to Plaintiffs' motion.

Plaintiffs' Complaint asserts allegations uniformly against all the defendants, including defendants Ford Motor Company and National Automotive Parts Association (NAPA).  Though Plaintiffs lump all defendants into each of their allegations, they certainly would not argue that defendants such as Ford Motor Company or NAPA, who, according to Mr. Hoffeditz' testimony, did not manufacture or sell parts upon which Mr. Hoffeditz worked at Letterkenny, had grounds for removal based on the Complaint simply because they were named as defendants and Plaintiff worked at Letterkenny. Indeed, had Ford or NAPA filed for removal, Plaintiffs undoubtedly would have -- quite appropriately -- argued that remand was required because the Complaint did not state that plaintiff's work at Letterkenny was related to his exposure to their products.  Like those defendants, many products made by AM General over its history have not been built to particular government specifications that would afford it the government contractor's defense.  Therefore, before filing a notice of removal, AM General, and every other defendant, needed more information to determine the nature of the work and type of AM General products alleged to have caused Mr. Hoffeditz' asbestos exposure.

By these misstatements and flawed generalizations, Plaintiffs attempt to cloud the true issues before this Court.  AM General files this Sur-Reply to provide clarity.

2

## ARGUMENT

Though Plaintiffs state in their Reply brief that ". . . the Complaint does, in fact, affirmatively allege that Mr. Hoffeditz was exposed to asbestos contained in AM General vehicles manufactured for the military while employed at Letterkenny" (Reply at 4) and that the Complaint "clearly alleges that Mr. Hoffeditz worked on AM General vehicles at the Army Depot" (Reply at 7), this simply is not the case.  A review of the Complaint plainly reveals that, contrary to Plaintiffs' assertion, it does not contain any such allegations nor any information that would indicate that Mr. Hoffeditz performed repairs to military vehicles manufactured by AM General during his employment at the Letterkenny Army Depot.

Plaintiffs assume that the mere designation and identification of Letterkenny Army Depot in the Complaint as Mr. Hoffeditz's place of employment was sufficient for AM General to adequately and intelligently ascertain removability because Mr. Hoffeditz could not have worked on personal vehicles during his employment at Letterkenny.  But Plaintiffs' position misstates the facts and the decades of legal precedent analyzing removability.  Indeed, were the Court to follow the reasoning urged by Plaintiffs, removability under the federal officer removal provisions would be appropriate in any instance where a plaintiff alleged that he worked at a military installation, regardless of whether the plaintiff provided any information concerning the type and nature of the

products he worked with and around. This is plainly not the law.[1]  Moreover, based on

Plaintiffs' reasoning, *all* defendants would have been eligible to remove this case based

on the Complaint alone, even though Mr. Hoffeditz's deposition revealed that he was

allegedly exposed to only a select few of the defendants' products at Letterkenny.

Plaintiff alleged that the time period in which he was exposed to asbestos-

containing products was 1968 until 1993.  During this time period, Mr. Hoffeditz's

extensive exposure to vehicles and their parts allegedly came from his work at

Letterkenny, as well as non-employment related work.  AM General manufactured

vehicles that were <u>not</u> exclusively used for the military during the period of Mr.

Hoffeditz's alleged exposure.  This fact does not complicate or confuse the issue, but

rather, provides the proper context for AM General's analysis of the Complaint for

removability under the federal officer doctrine.

In their Reply, Plaintiffs assert that it was "incumbent for AM General to identify

facts which give rise to the [federal] defense."  (Reply p. 12.).  AM General was unable

to ascertain whether removal was appropriate from the Complaint and the Interrogatory

---

[1] *S ee Lefall v. Dallas Indep. School Dist.*, 28 F. 3d 521, 525 (5th Cir. 1994) (rejecting argument that the thirty-day removal clock should begin to run when a plaintiff files a pleading that is indeterminate as to removability if the defendant would know in the exercise of due diligence that the case is removable); Also see, *Green v. A.W. Chesterton Co.*, 366 F.Supp.2d 149 (D. Me. 2005) (Noting that removal was proper because the first ascertainment of a basis for asserting federal contractor defense came not in complaint, but in supplemental interrogatory responses that identified specific Navy ships for which Westinghouse had supplied asbestos-insulated turbines pursuant to contracts with the U.S. Navy.); Also see, *International Insur. Co. v. Saco Def. Inc.*, 1999 U.S. Dist. Lexis 237 at *12-13.  As that court explained, "[a] 'reasonable basis' standard is not sufficiently objective to guide defendants as to when they possess information sufficient to require them to act."  *Id.* at 13-14.  The purpose of the statute is to discourage a plaintiff from disguising the removability of his action by the artful drafting of his pleading and other papers and to prevent defendants from having to speculate as to whether the case is removable. *Citing Akin v. Big Three Industries, Inc.*, 851 F. Supp. 819, 824 (E.D. Tex. 1994)

Answers because Plaintiffs simply <u>did not allege any exposure to an AM General product</u> <u>that was manufactured for the military</u>.  Rather, Plaintiffs generally alleged that Mr. Hoffeditz worked on <u>personal</u> vehicles at home and as a mechanic at the Letterkenny Army Depot, but failed to provide any information concerning the specific products he allegedly worked with and around in each capacity.  Only after Mr. Hoffeditz testified that he worked on vehicles that were designed according to precise military specifications while employed at the Letterkenny Army Depot, could AM General ascertain that removal was proper.  Almost immediately thereafter, AM General filed the Notice of Removal with this Court.

AM General is not making a "request for lenience," as Plaintiffs claim.  *See* Reply at 9.  Indeed, as soon as AM General received service of Plaintiffs' Complaint, it considered whether removal would be proper.  Based on the law and the allegations set forth in the Complaint, AM General could not determine whether the government contractor defense, or federal officer removal, was available to it.  AM General properly removed this action within 30 days after receiving notice that such defenses were, indeed, proper.

Under these circumstances, and pursuant to the arguments contained in AM General's Opposition to Plaintiffs' Motion for Remand, AM General properly removed this matter to federal court pursuant to 28 U.S.C. §1442.  Accordingly, Plaintiffs' motion for remand should be denied.

/s/ James Gross
Joseph Kernen, Esquire
James Gross, Esquire
**DLA PIPER LLP (US)**
Attorneys for Defendant,
AM General, LLC

### CERTIFICATE OF SERVICE

I certify that on March 11, 2009, I caused a copy of the attached **Defendant's Sur-Reply in Opposition to Plaintiffs' Motion for Remand** to be served by electronic mail, to plaintiffs' counsel at the below address and to all defense counsel of record:

Arnold C. Lakind, Esquire
Szaferman, Lakind, Blumstein & Blader, P.C.
101 Grovers Mill Rd., Suite 200
Lawrenceville, NJ  08648,

s/ **James Gross**
James Gross, Esquire

**EXHIBIT F**

Westlaw.

Slip Copy                                                                                     Page 1
Slip Copy, 2007 WL 582983 (D.Utah)

C
In re Asbestos Cases of Hatch, James & Dodge, G.
Patterson Keahey
D.Utah,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Utah,Central Division.
In re ASBESTOS CASES OF HATCH, JAMES &
DODGE and G. PATTERSON KEAHEY.
Joseph Alexander Anderson, Jr. and Arva Anderson, Plaintiffs,
v.
Asbestos Defendants, et al., Defendants.
**No. 2:06-CV-741 TS.**

Feb. 20, 2007.

G. Patterson Keahey, Law Offices of G. Patterson
Keahey, Birmingham, AL, Mark F. James. Hatch
James & Dodge. Salt Lake City, UT, for Plaintiffs.
Dan R. Larsen, Karthik Nadesan, Tracy H. Fowler,
Scott A. Dubois, Kamie F. Brown, Snell & Wilmer,
Ross I. Romero, Mark J. Williams, Jones Waldo
Holbrook & McDonough, Melinda A. Morgan,
Richards Brandt Miller & Nelson, Patricia W.
Christensen, Parr Waddoups Brown Gee & Loveless, J. Kevin Murphy, Kipp & Christian, Katherine
E. Venti, John P. Ball, Jr., Parsons Behle &
Latimer, Jonathan L. Hawkins, Morgan Minnock
Rice & James, Barbara K. Berrett, Mark D. Taylor,
Berrett & Associates, Casey K. McGarvey, E. Scott
Savage, Berman & Savage PC, Rebecca L. Hill,
Scot A. Boyd, Christensen & Jensen PC, Peter W.
Billings, Christian D. Austin, Fabian & Clendenin,
Gregory S. Roberts, Ray Quinney & Nebeker, Kenneth Leigh Reich, Snow Christensen & Martineau,
Dennis C. Ferguson, Mark R. Anderson, Williams
& Hunt, Steven T. Densley, Strong & Hanni, Salt
Lake City, UT, Dennis H. Markusson, Markusson
Green & Jarvis, Mary Price Birk, Ronald L. Hellbusch, Baker & Hostetler, Denver, CO, Joseph J.
Joyce, Ryan J. Schriever, J. Joyce & Associates,
South Jordan, UT, for Defendants.

**MEMORANDUM DECISION AND ORDER
DENYING PLAINTIFFS' MOTION FOR RELIEF**

TED STEWART, United States District Judge.
*1 This matter is before the Court on Plaintiffs'
**Motion** for Relief,[FN1] wherein Plaintiffs ask the
Court to reconsider its prior determination not to
rule on Plaintiffs' **Motion** to **Remand**[FN2] this case
to state court. Defendants argue that judicial efficiency demands that this Court deny Plaintiff's **Motion** and continue in its declination to rule on the
**Motion** to **Remand**. The Court, having considered
the pleadings, the case law, and being otherwise
fully informed, will deny Plaintiff's Motion for Relief, as set forth more fully below.

FN1.Docket No. 150.

FN2.Docket No. 80.

I. *BACKGROUND*

This matter was initially filed in state court, but
was removed to this Court on September 1,
2006.FN3This Court scheduled a hearing on
Plaintiffs' **Motion** to **Remand** to the state court for
January 25, 2007. Prior to the hearing, the United
States of America Judicial Panel on Multidistrict
Litigation          ("MDL")          issued
**Conditional   Transfer   Order   269**   ("CTO
269"),FN4 which transferred Plaintiffs' case to the
United States District Court for the Eastern District
of Pennsylvania. The case will become one of many
under *In re Asbestos Products Liability Litigation
(No. VI)*.

FN3.Docket No. 1.

FN4.*See*Docket No. 143.

In response to CTO 269, the Court struck the hearing on Plaintiffs' **Motion** to **Remand**.[FN5]Plaintiffs
now move for relief, requesting this Court to reconsider its determination not to rule on the **Motion** to
**Remand** the case, and urging the Court, in its dis-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

cretion, to grant Mr. Anderson, who suffers from asbestos-caused **Mesothelioma**, his "day in court." Defendants oppose the Motion.

> FN5. Docket, November 30, 2006.

## II. DISCUSSION

Plaintiffs base their Motion for Relief on Mr. Anderson's poor health due to the **Mesothelioma** and the discretionary nature of the **conditional transfer order**. In opposition, Defendants claim that denial of the Motion will promote judicial efficiency.

A **conditional transfer order** issued by the MDL does not divest this Court of jurisdiction of pending pre-trial motions.[FN6] The Court's decision is therefore discretionary, resting largely on facts and underlying policy implications.

> FN6. Rules of Procedure of the Judicial Panel on Multidistrict Litigation R. 1.5.

### A. Mr. Anderson's Health.

Plaintiffs emphasize the rapid, terminal nature of the cancer known as **Mesothelioma** which plagues Mr. Anderson's body. The only known cause of **Mesothelioma** is asbestos. Based on the average two-year life expectancy following diagnosis, and Mr. Anderson's diagnosis with the disease on October 10, 2005, time is a major consideration. Plaintiffs assert that failure to remand the case to state court will deprive Mr. Anderson of his "day in court." But if remand is granted, Plaintiffs assert that they may be able to take advantage of the state's expedited proceeding, including an earlier trial setting.

If Mr. Anderson's health were the only factor before the Court, the decision would be easier. Unfortunately, it is not. While the Court extends its sympathy to Mr. and Mrs. Anderson, it must also consider the policy implications of judicial efficiency.

### B. Judicial Efficiency.

**\*2** Defendants assert that denial of Plaintiffs' Motion for Relief will further the goal of judicial efficiency. Following the finalization of CTO 269 and this Court's resolution or deferral of pending pre-trial delays, the case will be in the hands of the MDL. The MDL is familiar with the subject matter and the reoccurring common issues, and will be able to resolve asbestos litigation cases in an efficient and expeditious manner; it does so by the thousands.

These thousands of other cases concern Plaintiffs. Fearing that the case will "languish" in the MDL's extensive docket of products liability cases, Plaintiffs contend that the better use of judicial resources is to simply grant the Motion for Relief and address the issue of whether the removal was proper and, if federal subject matter jurisdiction is determined not to exist under the federal enclave clause because of the Master Complaint's disclaimer, then the time and resources of only one court have been expended.

Clearly, judicial efficiency depends on the issue of subject matter jurisdiction. This Court does not and will not address this issue. Whether a plaintiff under a state law tort may disclaim federal enclave jurisdiction by a master complaint without specific disclaimer in his own complaint, yet relate underlying facts of cumulative asbestos exposure during employment, which includes several federal enclaves among the many private, is not well settled by law. For this Court to decide that issue when the MDL is more than capable of making that determination would waste judicial resources and the progression of this litigation. Moreover, if the MDL decides that it has subject matter jurisdiction based on Mr. Anderson's federal enclave employment, all claims against all Defendants will be fully resolved.

The Court believes that the MDL is able to expeditiously and thoroughly resolve the issue of removal and all of Plaintiffs' claims. This judicial efficiency leads the Court to conclude that denial of Plaintiffs'

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**Motion** for Relief and continued deference on the **Motion** to **Remand** is proper under this situation. Despite Mr. Anderson's unfortunate and bleak health situation, policy implications of judicial efficiency persuade the Court to deny Plaintiffs' Motion for Relief.

III. *CONCLUSION*

Based upon the above, Plaintiffs Motion for Relief (Docket No. 150) is DENIED. The Court will continue to defer on Plaintiffs' **Motion** to **Remand** the case to the state court in order for the MDL to finalize the **conditional transfer order** and resolve the case.

SO ORDERED.

D.Utah,2007.
In re Asbestos Cases of Hatch, James & Dodge, G. Patterson Keahey
Slip Copy, 2007 WL 582983 (D.Utah)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT G**

**1348**        170 FEDERAL SUPPLEMENT, 2d SERIES

MDL–1061 can continue without any unnecessary interruption or delay.

Finally, if subsequent to transfer plaintiff continues to believe that the uniqueness of his particular situation or the type of his claims renders inclusion of *Uresti* in MDL–1061 unnecessary or inadvisable, we point out that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436–38.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, *Joe W. Uresti v. Prudential Insurance Co. of America, et al.,* W.D. Texas, C.A. No. 5:01–104, is transferred to the District of New Jersey and, with the consent of that court, assigned to the Honorable Alfred M. Wolin for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.



### In re ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI).

Justin Shane Wooley

v.

International Paper Co., et al.

Sylvia Ann Baden, et al.

v.

BPU Reynolds, Inc., et al.

No. 875.

Nos. C.A. 1:01–237, C.A. 2:01–288.

Judicial Panel on Multidistrict Litigation.

Oct. 18, 2001.

Plaintiffs who made claims for punitive damages in their asbestos litigation sought to vacate the Panel's orders conditionally transferring their actions for inclusion in centralized pretrial proceedings. The Judicial Panel on Multidistrict Litigation, William Terell Hodges, J., held that transfer was warranted.

Motion granted.

**1. Federal Courts ⚿157**

Delaying transfer of multidistrict litigation back to district court for inclusion in centralized pretrial proceedings was not warranted, in asbestos products liability litigation; although plaintiffs asserted that transfer should be denied or deferred in order to permit resolution of pending motions to remand to state court, that process would take three to four months to complete and if district court wished to address such motions it had adequate time in which to do so. 28 U.S.C.A. §1407.

**2. Federal Courts ⚿157**

Transfer by Judicial Panel on Multidistrict Litigation of lawsuits that contained claims for punitive damages, for inclusion in centralized pretrial proceedings, was warranted; although plaintiffs asserted that they were being denied their constitutional right to a jury trial because transferee court differentiated between claims for compensatory damages and claims for punitive damages choosing to retain jurisdiction over punitive damage claims for continuing pretrial effort, such administration was warranted as responsible public policy because it gave priority to compensatory claims over exemplary punitive damage windfalls. U.S.C.A. Const. Amend. 7; 28 U.S.C.A. § 1407.

BEFORE: WM. TERRELL HODGES, Chairman, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN and J. FREDERICK MOTZ, JUDGES of the Panel.

IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION     **1349**
Cite as 170 F.Supp.2d 1348 (Jud.Pan.Mult.Lit. 2001)

*TRANSFER ORDER*

WILLIAM TERELL HODGES, Chairman.

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435–36 (2001), by plaintiffs in two Southern District of Mississippi and Southern District of Texas actions to vacate the Panel's orders conditionally transferring the actions to the Eastern District of Pennsylvania for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

[1, 2]   On the basis of the papers filed and hearing session held, the Panel finds that these two actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of the actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by

asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F.Supp. 415 (Jud.Pan. Mult.Lit.1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[1] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

We are not persuaded to depart from this approach in dealing with the question of transfer of the actions now before the Panel. Plaintiffs in the Southern District of Texas action have suggested that transfer should be denied because the way in which MDL–875 is being administered effectively denies them their constitutional right to a jury trial. We reject this argument. Although the number of Section 1407 remands in this docket is proportionately small, this is only because under Judge Weiner's stewardship the vast majority of transferred actions have been able to be concluded in the transferee district

---

1. Plaintiffs in these actions have argued in essence that transfer should be denied or deferred in order to permit the resolution of pending motions to remand the actions to state court. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) Panel Rule

1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in MDL–875 can continue without any unnecessary interruption or delay.

during the course of pretrial proceedings (as of October 9, 2001, nearly 70,000 such actions have been closed in the transferee district). The fact remains that whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436–38. Accordingly, as of October 9, 2001, over 1,100 actions or claims therein have been returned to their originating transferor districts. The transferee court, when suggesting remand of claims, has differentiated between claims for compensatory damages and claims for punitive damages, choosing to retain jurisdiction over punitive damage claims for continuing pretrial effort. The Panel has deferred to this suggested approach, recognizing that the recommendations of the transferee judge regarding the timing of remand should be given great weight, because that judge, after all, is the one who supervises day-to-day pretrial proceedings. When challenged by MDL–875 parties, the appellate court with authority over Panel transfers and remands in this docket has endorsed the Panel's treatment of remand of punitive damage claims:

The resources available to persons injured by asbestos are steadily being depleted. The continuing filings of bankruptcy by asbestos defendants disclose that the process is accelerating. It is responsible public policy to give priority to compensatory claims over exemplary punitive damage windfalls; this prudent conservation more than vindicates the Panel's decision to withhold punitive damage claims on remand. It is discouraging that while the Panel and transferee court follow this enlightened practice, some state courts allow punitive damages in asbestos cases. The continued hemorrhaging of available funds deprives current and future victims of rightful compensation.

*In re Collins,* 233 F.3d 809, 812 (3rd Cir. 2000), *cert. denied,* — U.S. ——, 121 S.Ct. 2216, 150 L.Ed.2d 209 (2001). Finally, with respect to any parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL–875 unnecessary or inadvisable, we are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL–875 proceedings is no longer needed.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these two actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.



## In re BRAND–NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION

### No. MDL–997.

Judicial Panel on Multidistrict Litigation.

Oct. 19, 2001.

Antitrust treble damage action was brought by purchasers of brand name prescription drugs against manufacturers and wholesalers alleging illegal price fixing conspiracy. On defendants' motion to re-

EXHIBIT H

LEXSEE 1999 US DIST LEXIS 12131

**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI); Janice Chisholm v. United States of America, et al., N.D. California, C.A. No. 3:99-224SC; Charles I. Harley v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-38; John L. Renfro, Sr. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-71; Amiel P. Amin, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-79; Lawrence D. Graves, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-80; Clarence F. Metsker, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-81; Charles R. Ernst, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-82; Louis E. Atzinger, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-87; Harold R. Allen, Sr., et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-109; Alpha Knight, etc. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-110; Jack B. Boston, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-143; Ronald C. Foree, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-179; Raymond Hall, et al. v. Owens-Corning Fiberglas Corp., et al., W.D. Kentucky, C.A. No. 3:99-229**

**DOCKET NO. 875, C.A. No. 3:99-224SC, C.A. No. 3:99-38, C.A. No. 3:99-71, C.A. No. 3:99-79, C.A. No. 3:99-80, C.A. No. 3:99-81, C.A. No. 3:99-82, C.A. No. 3:99-87, C.A. No. 3:99-109, C.A. No. 3:99-110, C.A. No. 3:99-143, C.A. No. 3:99-179, C.A. No. 3:99-229**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

*1999 U.S. Dist. LEXIS 12131*

**July 27, 1999, Filed; August 2, 1999, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Motions were brought, pursuant to J. P. M. L. R. P. 7.4, 181 F. R. D. 1, 10 (1998), by certain plaintiffs and/or defendants in 12 Western District of Kentucky actions, and plaintiff in a remaining Northern District of California action, involving asbestos products liability.

**OVERVIEW:** Before the panel were motions brought, pursuant to J. P. M. L. R. P. 7.4, 181 F. R. D. 1, 10 (1998), by certain plaintiffs and/or defendants in 12 Western District of Kentucky actions, involving asbestos products liability, and plaintiff in a remaining Northern District of California action. All movants requested that the panel vacate the portions of its orders conditionally transferring their respective action(s) to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in the docket. The panel found that the actions involved common questions of fact with actions in the litigation previously transferred to the Eastern District of Pennsylvania and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the asbestos litigation.

**OUTCOME:** It was ordered that the 13 actions be transferred to the Eastern District of Pennsylvania because this promoted the just and efficient conduct of the litigation.

**COUNSEL:** [*1] For JANICE CHISHOLM, Plaintiff (99-CV-224): James Geagan, Clayton Kent, Brayton Purcell Curtis & Geagan, Novato, CA.

For JANICE CHISHOLM, Plaintiff (99-CV-224): Patricia J. Kenney, U.S. Attorney's Office, San Francisco, CA.

For JANICE CHISHOLM, Plaintiff (99-CV-224): Ina L. Strichartz, U.S. Department of Justice, Washington, DC.

For UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF AGRICULTURE, US FOREST SERVICE, defendants (99-CV-224): Patricia J. Kenney, U.S. Attorney's Office, San Francisco, CA.

For UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF AGRICULTURE, US FOREST SERVICE, defendants (99-CV-224): Ina L. Strichartz, U.S. Department of Justice, Washington, DC.

**JUDGES:** BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS, * LOUIS C. BECHTLE AND JOHN F. KEENAN, JUDGES OF THE PANEL.

> * Judge Sanders took no part in the decision of this matter.

**OPINION**

*TRANSFER ORDER*

Before the Panel are motions brought, pursuant to *Rule 7.4, R.P.J.P.M.L.*, 181 F.R.D. 1, 10 (1998), [*2] by i) certain plaintiffs and/or defendant Cardinal Industrial Insulation, Inc., in the twelve above-captioned Western District of Kentucky actions, and ii) plaintiff in the remaining above-captioned Northern District of California action. All movants request that the Panel vacate the portions of its orders conditionally transferring their respective action(s) to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed, [1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the

actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions [*3] not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI), 771 F. Supp. 415 (J.P.M.L. 1991).* In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, [2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket.

> 1   The parties to these actions waived oral argument and, accordingly, the question of *Section 1407* transfer of the actions was submitted on the briefs. *Rule 16.2, R.P.J.P.M.L.*, 181 F.R.D. 1, 14 (1998).

We are not persuaded to depart from this approach in dealing with the question of transfer of these actions now before the panel. We note that under Judge Weiner's stewardship, as of July 27, 1999, i) nearly 60,000 actions have been closed in the transferee district, and ii) nearly 1,000 actions or claims therein have been returned to their originating transferor districts. To parties that believe the uniqueness of their particular situation renders inclusion of their action in MDL-875 unnecessary or inadvisable, we note that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6 R.P.J.M.L., *supra,* 181 F.R.D. at 11-13. We are confident that Judge Weiner will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever he is convinced that retention in the MDL-875 proceedings is no longer

needed.

2   Parties in certain of the actions before the Panel have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on various potentially dispositive pending motions. There is no need to delay transfer in order to accommodate such an interest. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order; 2) Panel *Rule 1.5, R.P.J.P.M.L.*, *supra*, 181 F.R.D. at 3, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay

IT IS THEREFORE ORDERED that, pursuant to *28 U.S.C. § 1407*, the thirteen above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsyalvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL

/s/Signature

John F. Nangle

Chairman

ATTACHMENT

**INVOLVED COUNSEL LIST**

**DOCKET NO. 875**

**IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

Craig R. Banford

Huddleston, Bolen, Beatty, Porter & Copen

P.O. Box 2185

Huntington, WV 25722

Robert F. Barron

Kahn, Dees, Donovan & Kahn

305 Union Federal Building

P.O. Box 3646

Evansville, IN 47735

Richard C. Binzley

Thompson, Hine & Flory

127 Public Square

3900 Key Center

Cleveland, OH 44114

Sheila L. Birnbaum

Skadden, Arps, Slate, Meagher & Flom

919 Third Avenue

New York, NY 10022

Stephen M. Bowers

Hawkins & Parnell

4000 SunTrust Plaza

303 Peachtree Street, N.E.

Atlanta, GA 30308

Edward J. Cass

Gallagher, Sharp, Fulton & Norman

Bulkley Building, 7th Floor

1501 Euclid Avenue

Cleveland, OH 44115

James [*4]  E. Cleveland

Huddleston, Bolen, Beatty, Porter & Copen

1442 Winchester Avenue

P.O. Box 770

Ashland, KY 41105

Kathy K. Condo

Reed, Smith, Shaw & McClay

Mellon Square

435 Sixth Avenue

Pittsburgh, PA 15219

David A. Damico

Burns, White & Hickton

2400 Fifth Avenue Place

120 Fifth Avenue

Pittsburgh, PA 15222

Scott T. Dickens

Tachau, Maddox, Hovious & Dickens

200 South 5th Street

Suite 200 N.

Louisville, KY 40202

John L. Dotson

O'Bryan, Brown & Toner

1500 Starks Building

Louisville, KY 40202

Robert C. Ewald

Wyatt, Tarrant & Combs

500 West Jefferson Street

2600 Citizens Plaza

Louisville, KY 40202

Raymond P. Forceno

Forceno & Hannon

Philadelphia Bourse Building

Suite 1000

Independence Mall East

Philadelphia, PA 19106

Ellen B. Furman

Goldfein & Joseph

Packard Building, 17th Floor

15th & Chestnut Streets

Philadelphia, PA 19102

James M. Gary

Weber & Rose, P.S.C.

2700 Aegon Center

400 West Market Street

Louisville, KY 40202

John K. Gordinier

Pedley, Zielke, Gordinier, Olt & Pence

Starks Building, Suite 1150

455 South Fourth Avenue

Louisville, KY 40202

- UNDELIVERABLE - Gregory S. Gowen

City Law Department

601 W. Jefferson Street

[*5]  Room 200, City Hall

Louisville, KY 40202

Albert F. Grasch

Grasch, Walters & Cowen

302 West High Street

Lexington, KY 40507

Susan M. Hanson

Stich, Angell, Kreidler & Muth, P.A.

The Crossings, Suite 120

250 2nd Avenue South

Minneapolis, MN 55401

Max S. Hartz

McCarroll, Nunley & Hartz

111 East Third Street

P.O. Box 925

Owensboro, KY 12302

Harry K. Herren

Woodward, Hobson & Fulton, LLP

2500 First National Tower

Louisville, KY 40202

Frank P. Hilliard

Starks Building, Suite 380

455 S. Fourth Avenue

Louisville, KY 40202

Joseph P. Hummel

Lynch, Cox, Gioman & Mahan

500 Meidinger Tower

Louisville, KY 40202

Clayton W. Kent

Brayton, Purcell, Curtis & Geagan

222 Rush Landing Road

Novato, CA 94948

David C. Landin

Hunton & Williams

Riverfront Plaza

East Tower

951 East Byrd Street

Richmond, VA 23219

Christopher D. Lee

Kahn, Dees, Donovan & Kahn

305 Union Federal Building

P.O. Box 3646

Evansville, IN 47735

Gene Locks

Greitzer & Locks

1500 Walnut Street

Philadelphia, PA 19102

Armer H. Mahan

Lynch, Cox, Gioman & Mahan

500 Meidinger Tower

Louisville, KY 40202

Gregory L. Monge

Vanantwerp, Hughes, Monge, Jones & Edwards LLP

P.  [*6]  O. Box 1111

Ashland, KY 41105

John B. Moore

Boehl, Stopher & Graves

2300 Aegon Center

400 West Market Street

Louisville, KY 40202

M. D. Moretz

Woolf, McClane, Bright, Allen

900 Riverview Tower

900 South Gay Street

P.O. Box 900

Knoxville, TN 37902

R. K. Morton

Huddleston, Bolen, Beatty, Porter & Copen

P.O. Box 2185

Huntington, WV 25722

Ronald L. Motley

Ness, Motley, Loadholt, Richardson & Poole

P.O. Box 1137

Charleston, SC 29402

Donald A. Powell

Buckingham, Doolittle & Burroughs

50 South Main Street

P.O. Box 1500

Akron, OH 44309

John J. Repcheck

Sharlock, Repcheck & Mahler

3280 USX Tower

600 Grant Building

Pittsburgh, PA 15219

John D. Roven

9575 Katy Freeway

# 400

Houston, TX 77024

Kenneth L. Sales

Segal, Sales, Stewart, Cutler & Tillman

325 W. Main Street

2100 Waterfront Plaza

Louisville, KY 40202

Joseph D. Satterley

Segal, Sales, Stewart, Cutler & Tillman

2100 Waterfront Plaza

325 West Main Street

Louisville, KY 40202

Richard D. Schuster

Vorys, Sater, Seymour & Pease

52 East Gay Street

P.O. Box 1008

Columbus, OH 43216

Stephen F. Schuster

Ogden, Newell & Welch

 [*7]  500 West Jefferson Street

1700 Citizens Plaza

Louisville, KY 40202

Neil Selman

Selman, Breitman & Burgess

11766 Wilshire Boulevard

Sixth Floor

1999 U.S. Dist. LEXIS 12131, *7

Los Angeles, CA 90025

Thomas C. Smith

Ziegler & Schneider, PSC

541 Buttermilk Place

P.O. Box 175710

Covington, KY 41017

Thomas W. Speckman

Speckman & Hoback

2330 Citizens Plaza

Louisville, KY 40202

Robert N. Spinelli

Kelley, Jasons, McGuire & Spinelli,

One Penn Center

Suite 1400

1617 JFK Boulevard

Philadelphia, PA 19103

Ina L. Strichartz

U.S. Department Of Justice

Environmental Dept.

P.O. Box 340

Ben Franklin Station

Washington, DC 20044

Robert E. Swickle

Jaques Admiralty Law Firm, P.C.

1370 Penobscot Building

Detroit, MI 48226

Andrew J. Trevelise

Reed, Smith, Shaw & McClay

2500 One Liberty Place

Philadelphia, PA 19103

Henry A. Triplett

Bennett, Bowman, Triplett & Vittitow

200 South 5th Street

Suite 400

Louisville, KY 40202

James K. Weston

Tom Riley Law Firm

4040 First Avenue, N.E.

P.O. Box 998

Cedar Rapids, IA 52406

**EXHIBIT I**

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 143826 (Jud.Pan.Mult.Lit.)

H

In re Asbestos Products Liability Litigation (No. VI)

Jud.Pan.Mult.Lit.,1996.

Only the Westlaw citation is currently available.

Judicial Panel on Multidistrict Litigation.

In re ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI).

No. 875.

Feb. 16, 1996.

*1 *Edgardo P. Gonzales v. Owens-Corning Fiberglas Corp., et al.,* N.D. California, C.A. No. 3:95-3705

*Nicandor San Juan v. Owens-Corning Fiberglas Corp., et al.,* N.D. California, C.A. No. 3:95-3709

*Catherine H. Simoneaux, et al. v. Exxon Corp., et al.,* M.D. Louisiana, C.A. No. 3:95-652

*Faye Carlson, etc. v. Anchor Packing Co., et al.,* D. Oregon, C.A. No. 3:95-1337

*Joseph R. Headley v. Anchor Packing Co., et al.,* D. Oregon, C.A. No. 3:95-1543

Before JOHN F. NANGLE, Chairman, ROBERT R. MERHIGE, Jr., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS [FN*] and LOUIS C. BECHTLE, Judges of the Panel.

TRANSFER ORDER

JOHN F. NANGLE, Chairman.

Presently before the Panel are motions, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiffs in the five above-captioned N.D. California, M.D. Louisiana and D. Oregon actions requesting that the Panel vacate the portions of its orders conditionally transferring their respective actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before

Judge Charles R. Weiner.

On the basis of the papers filed,[FN1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI),* 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court,[FN2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the presence of unique or additional claims not relating to injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the actions now before the Panel.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the five above-captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FN* Judge Sanders took no part in the de-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 143826 (Jud.Pan.Mult.Lit.)

cision of this matter.

FN1. The parties to the five actions waived oral argument and, accordingly, the question of Section 1407 transfer with respect to the actions was submitted on the briefs. Rule 17, R.P.J.P.M.L., 147 F.R.D. 589, 600-01 (1993).

FN2. The plaintiffs in the California and Oregon actions have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on motions to remand to state court. There is no need to delay transfer in order to accommodate such interests. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order 2) Panel Rule 18, R.P.J.P.M.L., *supra,* 147 F.R.D. at 601, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so those courts concluding that such issues should be addressed by the transferee judge need not rule on them and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay

(Jud.Pan.Mult.Lit.)

END OF DOCUMENT

Jud.Pan.Mult.Lit.,1996.

In re Asbestos Products Liability Litigation (No. VI)

Not Reported in F.Supp., 1996 WL 143826

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT J

**MDL 1699**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 3 2006

FILED
CLERK'S OFFICE

*DOCKET NOS. 1657 & 1699*

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

*IN RE VIOXX MARKETING, SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION*
*IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION*

*BEFORE WM. TERRELL HODGES,[*] CHAIRMAN, JOHN F. KEENAN, D.
LOWELL JENSEN, J. FREDERICK MOTZ,[*] ROBERT L. MILLER, JR.,
KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL*

### ORDER OF TRANSFER WITH SIMULTANEOUS
SEPARATION, REMAND AND TRANSFER

Presently before the Panel are motions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in 41 actions listed on Schedule A to vacate the Panel's orders conditionally i) transferring these actions involving the prescription medication Vioxx (manufactured by Merck & Co., Inc. (Merck)) to the Eastern District of Louisiana for inclusion in the Section 1407 proceedings occurring there in MDL-1657; ii) simultaneously separating and remanding claims in these actions relating to prescription medications Bextra and Celebrex (manufactured by Pfizer Inc. (Pfizer)) to their respective transferor districts; and iii) transferring the resulting Bextra/Celebrex actions to the Northern District of California for inclusion in MDL-1699 pretrial proceedings. Defendants Pfizer, Pharmacia Corp., G.D. Searle LLC and Merck oppose these motions and urge effectuation of the Panel's orders.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with i) actions in MDL-1657 previously transferred to the Eastern District of Louisiana, and ii) actions in MDL-1699 similarly centralized in the Northern District of California. The Panel further finds that transfer for inclusion in the coordinated or consolidated pretrial proceedings in those two districts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Transfer is also appropriate for reasons expressed by the Panel in its original orders directing centralization in these two dockets. In MDL-1657, the Panel held that the Eastern District of Louisiana was a proper Section 1407 forum for actions relating to Vioxx. *See In re Vioxx Products Liability Litigation*, 360 F.Supp.2d 1352 (J.P.M.L. 2005). Likewise, the Panel held that the Northern District of California was a proper Section 1407 forum for actions relating to Bextra and/or Celebrex. *See In re Bextra and Celebrex Marketing, Sales Practices and Products*

---

[*] Judges Hodges and Motz took no part in the decision **OFFICIAL FILE COPY**

IMAGED APR 1 3 2006

- 2 -

*Liability Litigation,* 391 F.Supp.2d 1377 (J.P.M.L. 2005). Pending motions to remand these actions to state court can, in appropriate parts, be presented to and decided by each of the transferee courts. *See, e.g., In re Ivy,* 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation,* 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

Some opposing plaintiffs argue that separation and transfer of these claims for inclusion in MDL-1657 and MDL-1699 will foster inefficiency and inconsistency and/or disrupt ongoing related state court proceedings. We are unpersuaded by these arguments. *See In re Vioxx Marketing, Sales Practices and Products Liability Litigation/In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation,* ____ F.Supp.2d ____, 2006 WL 461029 (J.P.M.L. Feb. 15, 2006).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Eldon E. Fallon for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1657 -- *In re Vioxx Marketing, Sales Practices and Products Liability Litigation.* The claims relating to Pfizer's Bextra and Celebrex prescription medications are separated and remanded, pursuant to 28 U.S.C. § 1407(a), to their respective transferor courts.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1407, the resulting actions involving claims relating to Bextra and Celebrex are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1699 -- *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation.*

FOR THE PANEL:

*John F. Keenan*

John F. Keenan
Acting Chairman

## Schedule A

**MDL-1657 -- In re Vioxx Marketing, Sales Practices and Products Liability Litigation**
**MDL-1699 -- In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation**

### Eastern District of California

*Barbara Hacker v. Merck & Co., Inc., et al.*, C.A. No. 2:05-2193
*Christopher Leeson v. Merck & Co., Inc., et al.*, C.A. No. 2:05-2240

### Western District of Kentucky

*Rhoda Overstreet v. Merck & Co., Inc., et al.*, C.A. No. 3:05-561
*Randall R. Jackson, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-562
*Bonnie Mullins, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-577
*Ernest D. Weber, Jr., et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-623
*Robert Mealey, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-656
*Harold Thomas, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-669
*Joan O'Bryan, etc. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-681
*Doyle A. Coss, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-682
*Johnnie Anderson, etc. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-685
*Galen Noe, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-700
*Cathy Grace Stearns, etc. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-710
*Natella Kaye Cox v. Merck & Co., Inc., et al.*, C.A. No. 3:05-716
*Robert Sampson v. Merck & Co., Inc., et al.*, C.A. No. 3:05-722
*Douglas Adams, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:05-723

### Eastern District of Missouri

*Lonnie Case v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1562
*Jessie Abbott v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1563
*Bertha Armstead v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1564
*Berlin Jenkerson v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1565
*David Wagner v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1590
*John Kocsmersyk v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1592
*Jerry M. Dance v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1666
*Doris Crenshaw v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1669
*Jeanette Leaky v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1741
*Francesca A. Salnieri v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1744
*Vincent Calamia v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1746
*Thomas Kasper v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1747
*Bernadean Aireman v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1748
*Josephine Tourville v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1750
*Jacqueline M. Lawrence v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1751
*Adele Anthon v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1752
*James B. Elgin, Jr. v. Merck & Co., Inc., et al.*, C.A. No. 4:05-1753

- A2 -

Eastern District of Missouri (Continued)

Richard Marael v. Merck & Co., Inc., et al., C.A. No. 4:05-1755
Maroy A. West v. Merck & Co., Inc., et al., C.A. No. 4:05-1756
Hilda L. Tucker v. Merck & Co., Inc., et al., C.A. No. 4:05-1757
Arzie Stephens v. Merck & Co., Inc., et al., C.A. No. 4:05-1758
Shirley Adams, et al. v. Merck & Co., Inc., et al., C.A. No. 4:05-1947
Marie Nobles, et al. v. Merck & Co., Inc., et al., C.A. No. 4:05-2040
Bernadette Dryer, et al. v. Merck & Co., Inc., et al., C.A. No. 4:05-2043
Jean Davis, et al. v. Merck & Co., Inc., et al., C.A. No. 4:05-2076

EXHIBIT  K

MDL 1699

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 5 2006

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

*DOCKET NOS. 1657 & 1699*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE VIOXX MARKETING, SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION
IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION*

Juanell Y. McBroyer Wilkes, et al. v. Merck & Co., Inc., et al., N.D. Alabama, C.A. No. 2:05-1214
Jackie Collins v. Merck & Co., Inc., et al., S.D. Illinois, C.A. No. 3:05-651
Gracie Blount v. Merck & Co., Inc., et al., S.D. Illinois, C.A. No. 3:05-673

*BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D.
LOWELL JENSEN, J. FREDERICK MOTZ,* ROBERT L. MILLER, JR.,
KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL*

*ORDER OF TRANSFER WITH SIMULTANEOUS
SEPARATION, REMAND AND TRANSFER*

Presently before the Panel are motions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in the two Illinois actions and the health care provider defendants in the Alabama action seeking to vacate the Panel's order conditionally i) transferring these actions involving the prescription medication Vioxx (manufactured by Merck & Co., Inc. (Merck)) to the Eastern District of Louisiana for inclusion in the Section 1407 proceedings occuring there in MDL-1657; ii) simultaneously separating and remanding claims in these actions relating to prescription medications Bextra and Celebrex (manufactured by Pfizer Inc. (Pfizer)) to their respective transferor districts; and iii) transferring the resulting Bextra/Celebrex actions to the Northern District of California for inclusion in MDL-1699 pretrial proceedings. Defendants Pfizer, Pharmacia Corp., G.D. Searle LLC and Merck oppose these motions and urge effectuation of the Panel's order.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with i) actions in MDL-1657 previously transferred to the Eastern District of Louisiana, and ii) actions in MDL-1699 similarly centralized in the Northern District of California. The Panel further finds that transfer for inclusion in the coordinated or consolidated pretrial proceedings in those two districts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Transfer is also appropriate for reasons expressed by the Panel in its

---

* Judge Motz took no part in the decision of this matter.

- 2 -

original orders directing centralization in these two dockets. In MDL-1657, the Panel held that the Eastern District of Louisiana was a proper Section 1407 forum for actions relating to Vioxx. *See In re Vioxx Products Liability Litigation*, 360 F.Supp.2d 1352 (J.P.M.L. 2005). Likewise, the Panel held that the Northern District of California was a proper Section 1407 forum for actions relating to Bextra and/or Celebrex. *See In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, 391 F.Supp.2d 1377 (J.P.M.L. 2005). Pending motions to remand these actions to state court can, in appropriate parts, be presented to and decided by each of the transferee courts. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Eldon E. Fallon for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1657 – *In re Vioxx Marketing, Sales Practices and Products Liability Litigation*. The claims relating to Pfizer's Bextra and Celebrex prescription medications are separated and remanded, pursuant to 28 U.S.C. § 1407(a), to their respective transferor courts.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1407, the resulting actions involving claims relating to Bextra and Celebrex are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1699 – *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

**EXHIBIT L**

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2000 WL 462919 (E.D.La.), 2000-1 Trade Cases P 72,885

▷
Falgoust v. Microsoft Corp.
E.D.La.,2000.

United States District Court, E.D. Louisiana.
Clair FALGOUST, et al.
v.
MICROSOFT CORPORATION
No. CIV.A.00-0779.

April 19, 2000.

MCNAMARA, Chief J.
**\*1** Before the court are the following motions:

(1) "Motion to Remand" filed by Plaintiffs and opposed by Defendant Microsoft; and

(2) "Motion to Stay All Proceedings Until the MDL Panel Rules on Motions to Transfer this and Other Actions Pursuant to 28 U.S.C. § 1407" filed by Defendant and opposed by Plaintiffs.

The motions, set for hearing on April 19, 2000, are before the court on briefs without oral argument. Having considered the memoranda of counsel and the applicable law, the court now rules.

### BACKGROUND

The instant action is one of many cases filed against Microsoft after findings of fact were issued in *United States v. Microsoft* on November 5, 1999. Currently, there are motions by several parties in these cases pending before the Judicial Panel on Multidistrict Litigation ("JPML") for consolidation of all cases against Microsoft.

The Defendant requests that this court exercise its discretion and stay pretrial proceedings, including determinations of jurisdictional issues, pending a determination by the JPML. Plaintiffs oppose the motion, and urge this court to deny the stay, determine that jurisdiction is lacking and remand the

case to state court.

### ANALYSIS

The JPML is established under 28 U.S.C. § 1407. The purpose of this statute is to permit the centralization in one district of all pretrial proceedings in civil actions involving one or more common questions of fact pending in different districts.[FN1] Further, the statute seeks to eliminate potential conflicting rulings by coordinate district and appellate judges.[FN2]

> FN1.*Matter of New York City Mun. Securities Litigation,* 572 F.2d 49, 51-52 (2nd Cir.1978).

> FN2.*In re Air Crash Disaster off Long Island, N.Y. on July 17, 1996,* 965 F.Supp. 5, 7 (S.D.N.Y.1997).

A pending motion before the JPML does not affect the jurisdiction of the transferor court.[FN3] However, courts have inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[FN4]

> FN3.*In re Air Crash Disaster at Paris, France on March 3, 1974,* 376 F.Supp. 887, 888 (J.P.M.L.1974).

> FN4.*Landis v. North American Co.,* 57 S.Ct. 163, 166 (1936).

Plaintiffs assert that this court lacks subject matter jurisdiction and that jurisdictional issues should be resolved prior to any other action. While generally true, cases such as this require special consideration.

As stated previously, the purpose of the JPML is to promote judicial economy and to prevent inconsistent rulings. This case presents questions of fact

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2000 WL 462919 (E.D.La.), 2000-1 Trade Cases P 72,885

similar to the other actions pending before the JPML. Additionally, the same jurisdictional question raised in this case has been raised before this court in another case against Microsoft, and will likely be raised in many of the other cases pending against Microsoft in other districts.

In support of their opposition, Plaintiffs have included a letter from the JPML to Judge Fallon regarding *Tramonte v. Chrysler Corp.*[FN5] where a motion to transfer was pending before the JPML and a motion to remand was pending before Judge Fallon. Plaintiffs quote a sentence from the letter which states "In the Panel's experience, such motions to remand to state court often involve questions unique to an action that are well suited for decisions prior to the 1407 transfer."While in *Tramonte* there were unique questions to be considered regarding jurisdiction, this is not the case here. As previously stated, this exact issue was presented to this court in another action against Microsoft, and will surely be an issue in many of the other cases pending against Microsoft in other districts.

> FN5. Civil Action No. 95-2109 (E.D. La. June 28, 1999).

**\*2** Plaintiffs also cite *Panama v. American Tobacco Co.,*[FN6] in support of their position, and assert that "the facts of this case closely mirror those in *Panama.*" Plaintiffs' reliance on *Panama* is misplaced. Procedurally, the two cases are similar in that defendants in both cases filed motions to stay pending a decision by the JPML, and plaintiffs in both cases filed motions to remand. However, the court in *Panama* noted that not all defendants joined in the motion to transfer and consolidate with the JPML and that there was the likelihood that the JPML "may not accept this case."[FN7]

> FN6.1999 WL 350030 (E.D.La.1999).

> FN7.*Id.* at n2.

Plaintiffs assert that the JPML "does not have the power to consider the propriety of coordinated or consolidated pretrial proceedings in state court actions."[FN8]However, once removed, federal courts have jurisdiction to determine jurisdiction, the JPML has the power to transfer cases with motions to remand pending, and the district courts have discretion to stay actions pending decisions of the JPML even where jurisdictional questions exist.

> FN8. See Plaintiffs' Memorandum in Opposition at p. 5.

The Second Circuit determined that the JPML does have jurisdiction to transfer a case even where a jurisdictional objection is pending.[FN9]In *Weinke v. Microsoft,* this same issue was presented to the district court. In that case, the court exercised its jurisdiction and stayed the action pending a decision by the JPML.[FN10]

> FN9. See *In re Ivy,* 901 F.2d 7, 9 (2d Cir.1990).

> FN10.2000 WL 220496 (E.D.Wis.1999).

In *Boudreaux v. Metropolitan Life Ins. Co.,* the court stated that "[t]he transferee judge 'certainly has the power to determine the question of remand,' and if remand issues are common to many of [these cases], decisions by the transferee judge would avoid 'duplicative discovery and conflicting pretrial rulings.' '[FN11]Other cases have come to this same conclusion.[FN12]

> FN11.1995 WL 83788 at \*2, (E.D.La.1995)(quoting *In re Air Crash Disaster at Florida,* 368 F.Supp. 812, 813 (J.P.M.L.1973)).

> FN12.*In re Professional Hockey Antitrust Litigation,* 369 F.Supp. 1117, 1118 (J.P.M.L.1974); *In re Air Crash Disaster at Juneau Alaska,* 360 F.Supp. 1406 (J.P.M.L.1973).

In all of these cases the courts determined that consistency and economy would be served by resolution of these issues by a single court after transfer

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 462919 (E.D.La.), 2000-1 Trade Cases P 72,885

by the JPML. The same is true in this case. In the event that the Panel determines that consolidation of these cases is not warranted, Plaintiff may re-urge the motion.

Courts consider the following factors in deciding whether a stay of the proceedings is appropriate: 1) hardship and inequity on the moving party without a stay; 2) prejudice the non-moving party will suffer if a stay is granted; and 3) judicial economy.FN13

> FN13. See *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D.Cal.1997); See generally *Arthur-Magna, Inc. v. Del-Val Financial Corp.*, 1991 WL 13725 (D.N.J.1991); *Boudreaux v. Metropolitan Life Ins. Co.*, 1995 WL 83788 (E.D.La.1995).

First, Microsoft would suffer a considerable hardship and inequity if forced to simultaneously litigate multiple suits in multiple courts. Further, they could potentially suffer conflicting rulings by different judges in these multiple suits. Second, Plaintiffs have failed to show any significant prejudice they would suffer, beyond the slight delay pending the JPML decision. Finally, the interests of judicial economy would best be served by granting a stay.

Accordingly;

IT IS ORDERED that further proceedings in this case are STAYED pending the decision on consolidation and transfer by the JPML.

**\*3** IT IS FURTHER ORDERED that Plaintiffs' Motion to Remand is DENIED at this time and may be re-urged if necessary after the decision of the JPML.

E.D.La.,2000.
Falgoust v. Microsoft Corp.
Not Reported in F.Supp.2d, 2000 WL 462919 (E.D.La.), 2000-1 Trade Cases P 72,885

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.