**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 5 2009

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | ) | |
| | ) | |
| LIABILITY LITIGATION (No.VI) | ) | MDL Docket No. 875 |
| —————————————————— | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| MARY T. MEREDITH, et al., | ) | |
| | ) | Case No. 2:09-0886 |
| Plaintiffs, | ) | In the United States District Court |
| | ) | For the Central District of |
| v. | ) | California before Judge Manuel |
| | ) | Real |
| BONDEX INTERNATIONAL, INC.., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT LOCKHEED MARTIN CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER (CTO-320) AND REQUEST FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL TOTALING $2775.00**

## I.    INTRODUCTION

Transfer of the present asbestos case to the MDL ensures streamlining of discovery and all other pretrial proceedings. In conclusory fashion, however, without reference to a single supporting fact or to any authority whatsoever, Plaintiffs claim that "there is no convenience to the parties arising out of a transfer … to the Eastern District of Pennsylvania … [and that transfer would be] prejudicial to an efficient resolution of their claims." (Plaintiffs' Brief in Support of Motion to Vacate the Conditional Transfer Order (CTO-320), Pleading No. 5812, ("Motion to Vacate") at 3.) Worse, Plaintiffs advance patently false statements in their brief in an effort to mislead this Panel. As

PLEADING NO. 5832

detailed below, Plaintiffs' motion should be denied and Lockheed Martin should be awarded its expenses in opposing this frivolous motion.

**II.   ARGUMENT**

**A.   Transfer To The MDL Ensures Streamlining Of Discovery And Of All Other Pretrial Proceedings.**

In 1991, this Panel centralized all asbestos cases in the Eastern District of Pennsylvania "to streamline the efforts of the parties and witnesses, their counsel, and the judiciary, thereby effectuating an overall savings of cost and a reduction of inconvenience to all concerned." *In re Asbestos Products Liability Litigation (No. VI), MDL No. 875*, 771 F. Supp. 415, 422 (JPML 1991).  This panel found that "transfer is primarily for pretrial; there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise." *Id.* (citing Fed. R. Civ. P. 45(d)(2).). "Furthermore, the judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel ever to travel to the transferee district." *Id.* Plaintiffs offer only baseless conclusions and not a single supporting fact to dispute this Panel's original findings.

Similar to Plaintiffs in this case, Borden, Inc. asserted that transfer of its Sherman Act-related claim to the MDL in Pennsylvania was "inconvenien[t] to the parties and witnesses … ." *In re Sugar Industry Antitrust Litigation (East Coast), No. 201A*, 471 F. Supp. 1089, 1092 (JPML 1979).  Unlike Plaintiffs here, however, Borden provided factual support for its assertion: the entity at issue "is a Mississippi corporation, and … has its principal place of business, and presumably many of its relevant documents, in Mississippi." *Id.*  Despite Borden's factual support, this Panel ordered the transfer.  In doing so, this Panel found that "there normally is no necessity for the parties to participate in pretrial conferences held by the transferee court.  Furthermore, the depositions of the parties and witnesses can be taken in the district in which they reside."

2

*Id.* at 1094.  As in *Borden*, this Panel should deny Plaintiffs' motion to vacate the conditional transfer order.

**B.      Plaintiffs' Frivolous Motion And False Statements Warrant Denial.**

Because Plaintiffs fail to provide a single fact in support of their position or to cite any applicable authority and, instead, advance false statements, it can only be presumed that Plaintiffs motion is frivolous.  *See* MDL Rule 7.2 ("Every motion shall be accompanied by … citation of applicable authorities … .""); *see also Red Carpet Studios Div. of Source Advantage, Ltd. v. Stater*, 465 F.3d 642, 646 (6th Cir. 2006) (finding the party's "failure to join a necessary party and the several attendant misrepresentations as to the true nature of the transfer of the copyrights was vexatious conduct and rendered the motion frivolous … .").

Plaintiffs state that "[i]n their complaint," they "expressly disclaimed any cause of action or recovery based on acts or omissions undertaken at the direction of a federal officer."  (Motion to Vacate at p. 2, ¶ 2.)  False.  Nowhere in their complaint do Plaintiffs disclaim a cause of action based on acts or omissions under the direction of a federal officer.  (*See* Plaintiffs' Complaint filed in Los Angeles Superior Court on May 28, 2008, attached to Parker Declaration as Exhibit A.)

Plaintiffs claim that "Defendant Lockheed Martin Corporation filed an ***untimely*** notice of removal from California state court … ."  (Motion to Vacate at p. 1, ¶ 1 (emphasis added).)  Untrue.  Plaintiffs knew the specific Lockheed Martin aircraft at issue but withheld this information from the facts in their complaint.  Only after Lockheed Martin located Decedent's military records identifying the particular military aircraft did Lockheed Martin have a basis to remove the case on federal officer grounds.  (*See* Order Denying Plaintiffs' Motion to Remand to State Court, attached to Parker Declaration as Exhibit B (Lockheed Martin "removed within thirty days, pursuant to 28 U.S.C. § 1446.").)  Therefore, Lockheed Martin timely removed this case.

Plaintiffs state that "Lockheed filed a notice of removal claiming that all aspects of design and manufacture of its *products* were directed by a federal officer." (Motion to Vacate at p. 2, ¶ 3 (emphasis added).) Wrong. Plaintiffs imply that Lockheed Martin asserted that the design and manufacture of *all of its products* were directed by a federal officer and, therefore, that Lockheed Martin knew upon service of the complaint that the case was removable. Lockheed Martin made no such assertion. (*See* Lockheed Martin's Notice of Removal, attached to Parker Declaration as Exhibit C.)

Plaintiffs fail to advance supporting facts, authority, or *truth*. Their motion is frivolous.

## C.   Plaintiffs' Counsel Should Be Sanctioned For Filing This Frivolous Motion That Needlessly Multiplied The Proceedings.

Plaintiffs' counsel violated Section 1927, Title 28 United States Code ("§ 1927") when he filed a frivolous motion that multiplied the proceedings in this case. This Panel "may prescribe rules for the conduct of its business not inconsistent with Acts of Congress and the Federal Rules of Civil Procedure." 28 U.S.C. § 1407(f). Accordingly, this Panel can and should sanction Plaintiffs' counsel.

The United States Code states that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "For sanctions to apply under [§] 1927, the court must make a determination of recklessness" whereas "bad faith is required for sanctions under the court's inherent power." *Moser v. Bret Harte Union High School District*, 366 F. Supp. 2d 944, 952 (E.D. Cal. 2005). As detailed above in Section II.B., Plaintiffs' counsel unnecessarily multiplied the proceedings.

The Ninth Circuit affirmed the lower court's award of sanction under § 1927 when a plaintiff "did not point to any evidence to refute [Defendant]'s assertions." *Optyl*

4

*Eyewear Fashion Int'l Corp. v. Style Co.s, Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985).  In *Optyl*, the plaintiff filed a motion to disqualify defendant's counsel.  *Id.*  "At no time during the pendency of the motion did [counsel] undertake discovery to support any supposition or speculation he might have … ."  *Id.* at 1050.  The Ninth Circuit "concluded that [counsel]'s disqualification motion was utterly without merit" and made in "[b]ad faith."  *Id.*

Here, Plaintiffs fail to fashion any real argument, to provide a single fact, or to cite any authority.  Plaintiffs merely disagree with this Panel's decision to transfer the case to the MDL for purposes of streamlining discovery and pretrial matters and make up facts as they go in an attempt to mislead this panel.  *See In re Asbestos Products Liability Litigation*, 771 F. Supp. at 422.  Similar to *Optyl*, Plaintiffs filed a motion that is unsupported.  More troubling than in *Optyl*, Plaintiffs affirmatively fabricate what they cannot support.  As in *Optyl*, this panel should award Lockheed Martin its reasonable costs in opposing Plaintiffs' motion to vacate the conditional transfer order.

**D.      Lockheed Martin Incurred Reasonable Fees In Preparing It's Opposition In The Amount Of $2775.00.**

Defendant Lockheed Martin has incurred reasonable costs and attorneys' fees totaling $2775.00.  (Parker Declaration at ¶ 5.)  Plaintiffs' counsel should be required to pay these unnecessary expenditures.

*///*

*///*

*///*

*///*

*///*

*///*

*///*

*///*

### III.   CONCLUSION

This Panel created the MDL to handle asbestos cases just like the one at bar. Plaintiffs offer no reason to deviate from this Panel's thorough analysis in its 1991 opinion.  In addition, Plaintiffs' false statements and lack of authority and of supporting facts render their motion frivolous.  Lockheed Martin respectfully requests this Panel deny Plaintiffs' motion to vacate the conditional transfer order and award sanctions totaling $2775.00.

Dated:  May ___, 2009

Respectfully submitted,

KNOTT & GLAZIER LLP

By

Guy P. Glazier
Deborah M. Parker
KNOTT & GLAZIER LLP
601 South Figueroa Street, Suite 4200
Los Angeles, California 90017
Telephone: (213) 312-9200
Facsimile:  (213) 312-9201

Attorneys for Defendant
Lockheed Martin Corporation

## DECLARATION OF DEBORAH M. PARKER

I, Deborah M. Parker, declare:

1.      I am an attorney licensed to practice law in the state of California and entitled to practice before the Judicial Panel on Multidistrict Litigation under Rule 1.4.  I am an associate at Knott & Glazier LLP and counsel of record for defendant Lockheed Martin Corporation.  I make this declaration in support of Defendant Lockheed Martin Corporation's Response in Opposition to Plaintiff's Motion to Vacate the Conditional Transfer Order (CTO-320) and Request for Sanctions.  If called upon as a witness to testify to these facts, I could and would competently testify to the facts based on my personal knowledge.

2.      Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' Complaint filed in Los Angeles Superior Court on May 28, 2008.

3.      Attached hereto as Exhibit B is a true and correct copy of Judge Real's Order Denying Plaintiffs' Motion to Remand to State Court.

4.      Attached hereto as Exhibit C is a true and correct copy of Defendant Lockheed Martin Corporation's Notice of Removal.

5.      Defendant Lockheed Martin has incurred reasonable costs and attorneys' fees consisting of the following:

- I spent 8.5 hours researching federal law and local rules and preparing and editing the Opposition to Plaintiffs' Motion to Vacate the Conditional Transfer Order, preparing and editing my declaration in support of the opposition, determining supporting evidence to attach, instructing staff regarding service on the JPML, and finalizing all documents before serving

and filing.  My normal billing rate is $250 per hour for a total expense of $2125;

- Guy P. Glazier, partner of Knott & Glazier LLP, spent 2.4 hours reviewing and editing the motion and brief.  His normal billing rate is $365 per hour for a total expense of $876; and

- Geraldine Chua, paralegal employed by Knott & Glazier LLP, spent 1.9 hours gathering, analyzing and compiling the evidence to accompany the motion and preparing the CD for this Panel.  Her normal billing rate is $150 per hour for a total expense of $285.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _1st_ day of May 2009, at Los Angeles, California.

_____
Deborah M. Parker

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 5 2009

FILED
CLERK'S OFFICE

## DECLARATION OF SERVICE

I, Geraldine Chua, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. I am employed by Knott & Glazier LLP, whose business address is 601 South Figueroa Street, Suite 4200, Los Angeles, California 90017. On May 1, 2009, I served the foregoing document(s) described as:

**DEFENDANT LOCKHEED MARTIN CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER (CTO-320) AND REQUEST FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL TOTALING $2775.00**

by placing a true copy thereof in an envelope addressed to each of the person(s) named below at the address shown:

### SEE ATTACHED PANEL SERVICE LIST

[ ]   **BY PERSONAL SERVICE:** I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger employed by Time Machine Courier, whose business address is 1533 Wilshire Blvd., Los Angeles, California 90017, for personal delivery before 5:00 p.m. on May 1, 2009.

[ ]   **BY FEDERAL EXPRESS:** On the above-mentioned date, I placed a true copy of the above mentioned document(s), in a sealed envelope or package designated by Federal Express with delivery fees paid or provided for, addressed to the person(s) as indicated above and deposited same in a box or other facility regularly maintained by Federal Express or delivered same to an authorized courier or driver authorized by Federal Express.

[X]   **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on May 1, 2009. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U. S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY FACSIMILE:** From facsimile machine telephone number (213) 312-9201, on May 1, 2009, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated on the attached **Service List.**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, that the original of the aforementioned document(s) was/were printed on recycled paper, and that this Certificate of Service was executed by me on May 1, 2009 at Los Angeles, California.

_____
Geraldine Chua

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**

MDL No. 875

## PANEL SERVICE LIST (EXCERPTED FROM CTO-320)

Mary T. Meredith, et al. v. Bondex International, Inc., et al., C.D. California, C.A. No. 2:09-886
(Judge Manuel L. Real)

Peter G. Angelos
LAW OFFICES OF PETER G ANGELOS PC
One Charles Center
100 North Charles Street, 22nd Floor
Baltimore, MD 21201

Brian P. Barrow
SIMON EDDINS & GREENSTONE LLP
301 East Ocean Boulevard
Suite 1950
Long Beach, CA 90815

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

Macy M. Chan
HAWKINS PARNELL & THACKSON LLP
444 South Flower Street
Los Angeles, CA 90071

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

David M. Glaspy
GLASPY & GLASPY
One Walnut Creek Center, Suite 750
100 Pringle Avenue
Walnut Creek, CA 94596

Andy J. Goetz
PRINDLE DECKER & AMARO LLP
310 Golden Shore, 4th Floor
P.O Box 22711
Long Beach, CA 90801-5511

Alan Scott Goldberg
SELMAN BREITMAN LLP
11766 Wilshire Boulevard
Sixth Floor
Los Angeles, CA 90025-6538

Edward R. Hugo
BRYDON HUGO & PARKER
135 Main Street
20th Floor
San Francisco, CA 94105

Daniel W S Ip
POND NORTH LLP
350 South Grand Avenue
Suite 2850
Los Angeles, CA 90071

Charles W. Jenkins
POOL & SHAFFERY LLP
445 South Figueroa Street, Suite 2520
Los Angeles, CA 90071

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

**MDL No. 875 - Panel Service List (Excerpted From CTO-320) (Continued)**

John P. Katerndahl
HASSARD BONNINGTON LLP
Two Embarcadero Center
Suite 1800
San Francisco, CA 94111-3993

Steven Kazan
KAZAN MCCLAIN ABRAMS FERNANDEZ
ET AL
171 Twelfth Street, Third Floor
Oakland, CA 94607

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER &
MAHONEY LTD
233 South Wacker Drive, Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

Brien F. McMahon
PERKINS COIE
South Tower
1620 26th Street, 6th Floor
Santa Monica, CA 90404-4013

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street, 28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105

Amee A. Mikacich
FILICE BROWN EASSA & MCLEOD LLP
Lake Merritt Plz
1999 Harrison Street, Suite 1800
Oakland, CA 94612-3520

Farah Sohaili Nicol
MCKENNA LONG & ALDRIDGE LLP
444 S Flower Street
8th Floor
Los Angeles, CA 90071-2901

Heather L. Nicoletti
WALSWORTH FRANKLIN BEVINS &
MCCALL
One City Boulevard, West
Fifth Floor
Orange, CA 92868-3677

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Deborah Maria Parker
KNOTT & GLAZIER LLP
601 S. Figueroa Street
Suite 4200
Los Angeles, CA 90017

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

**MDL No. 875 - Panel Service List (Excerpted From CTO-320) (Continued)**

Henry D. Rome
HOWARD ROME MARTIN & RIDLEY LLP
1775 Woodside Road
Suite 200
Redwood, CA 94061-7715

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ & TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Melanie L. White
FOLEY & MANSFIELD PLLP
150 South Los Robles Avenue
Suite 400
Pasedena, CA 91101

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 5 2009

FILED
CLERK'S OFFICE

**Exhibit A**

1  RON C. EDDINS, CA Bar No. 243581
   JENNIFER L. BARTLETT, CA Bar No. 183154
2  ETHAN A. HORN, CA Bar No. 190296
   **SIMON, EDDINS & GREENSTONE, LLP**
3  301 E. Ocean Blvd., Ste. 1950
   Long Beach, California 90802
4  Telephone (562) 590-3400
5  Facsimile (562) 590-3412

6

7  Attorneys for Plaintiffs

8

9            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                **FOR THE COUNTY OF LOS ANGELES**

11                                    BC391585

12 **MARY T. MEREDITH, as Personal**      ) Case No.
   **Representative of the Estate of**    )
13 **KENNETH LESLIE MEREDITH,**            ) THIS ACTION CONSTITUTES COMPLEX
   **Deceased, RICHARD K. MEREDITH,**     ) ASBESTOS LITIGATION – SUBJECT TO THE
14 **and SHARON L. EPPING,**              ) GENERAL ORDERS CONTAINED IN FILE NO.
                                          ) C 700000 – DEPT. 59
15                    Plaintiffs,         )
                                          ) **COMPLAINT FOR WRONGFUL DEATH AND**
16            vs.                         ) **A SURVIVAL ACTION – ASBESTOS**
                                          ) **(NEGLIGENCE; STRICT LIABILITY)**
17 **BONDEX INTERNATIONAL, INC.;**        )
   **CBS CORPORATION** f/k/a VIACOM,      )
18 INC. (sued as successor-by-merger to CBS )
   CORPORATION f/k/a WESTINGHOUSE         )
19 ELECTRIC CORPORATION);                 )
   **CHICAGO PNEUMATIC TOOL**             )
20 **COMPANY, L.L.C.;**                   )
   **CLEAVER-BROOKS, INC.** f/k/a AQUA-   )
21 CHEM, INC., d/b/a CLEAVER-BROOKS,      )
22 DIVISION;                              )
   **COLTEC INDUSTRIES, INC.** (sued      )
23 individually and as successor-in-interest to )
   FAIRBANKS MORSE ENGINE);              )
24 **CURTISS-WRIGHT CORPORATION;**        )
   **CURTISS-WRIGHT FLOW CONTROL**        )
25 **CORPORATION;**                       )
26 **ELEMENTIS CHEMICALS, INC.,** (sued   )
   individually and as successor-in-interest to )
27 HARRISONS & CROSSFIELDS               )
   PACIFIC, INC.);                        )
28 **FOSTER WHEELER ENERGY**              )

                              1
   **COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

| | |
|---|---|
| 1 | **CORPORATION;** )
| | **FRED MEYER STORES, INC.;** )
| 2 | **GARDNER DENVER, INC.;** )
| | **GENERAL ELECTRIC COMPANY;** )
| 3 | **GENERAL MOTORS** )
| | **CORPORATION;** )
| 4 | **GEORGIA-PACIFIC CORPORATION;** )
| 5 | **IMO INDUSTRIES, INC.** (sued )
| | individually and as successor-in-interest to )
| 6 | DELAVAL TURBINE, INC); )
| | **INGERSOLL RAND COMPANY;** )
| 7 | **KAISER GYPSUM COMPANY, INC.;** )
| | **LOCKHEED MARTIN** )
| 8 | **CORPORATION;** )
| 9 | **PHILIPS ELECTRONICS NORTH** )
| | **AMERICA CORPORATION;** )
| 10 | **PUMILITE BUILDING PRODUCTS,** )
| | **INC.** f/k/a HAMMER INVESTMENTS, )
| 11 | INC.; )
| | **RILEY POWER, INC.** f/k/a RILEY )
| 12 | STOKER CORPORATION and D.B. )
| | RILEY, INC.; )
| 13 | **RPM, INC.** (sued individually and as )
| 14 | successor-in-interest to BONDEX )
| | INTERNATIONAL, INC.); )
| 15 | **RPM INTERNATIONAL, INC.** (sued )
| | individually and as successor-in-interest to )
| 16 | RPM, INC.); )
| | **RT VANDERBILT COMPANY, INC.;** )
| 17 | **SPX CORPORATION** (sued individually )
| 18 | and as successor-in-interest to WEIL- )
| | MCLAIN COMPANY, a div. of THE )
| 19 | MARLEY WYLAIN COMPANY); )
| | **T H AGRICULTURE & NUTRITION,** )
| 20 | **L.L.C.** (sued individually and as successor- )
| | in-interest to THOMPSON-HAYWARD )
| 21 | CHEMICAL); )
| | **TRANE, INC** f/k/a AMERICAN )
| 22 | STANDARD COMPANIES (sued )
| | individually and as successor-in-interest to )
| 23 | AMERICAN BLOWER COMPANY); )
| | **UNION CARBIDE CORPORATION;** )
| 24 | **UNITED TECHNOLOGIES** )
| | **CORPORATION** (sued individually and )
| 25 | as successor-in-interest to PRATT & )
| 26 | WHITNEY and OTIS ELEVATOR CO.); )
| | **WEIL-MCLAIN,** a division of the )
| 27 | MARLYE-WYLAIN COMPANY, )
| | and **DOES 1-450** INCLUSIVE, )
| 28 | )

2

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1  )
2      Defendants.

3                    GENERAL ALLEGATIONS

4           COME NOW Plaintiffs MARY T. MEREDITH, RICHARD K. MEREDITH, and

5  SHARON L. EPPING (hereinafter "Plaintiffs") who bring this action for wrongful death pursuant to

6  section 377.60 of the California Code of Civil Procedure, and comes now MARY T. MEREDITH, as

7  personal representative of the ESTATE OF KENNETH L. MEREDITH, who brings this survival

8  action pursuant to section 377.30 of the California Code of Civil Procedure, and complains and alleges

9  as follows:

10          1.      The true names and capacities, whether individual, corporate, associate, governmental

11  or otherwise, of defendants DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who

12  therefore sues said defendants by such fictitious names.  When the true names and capacities of said

13  defendants have been ascertained, Plaintiffs will amend this complaint accordingly.  Plaintiffs are

14  informed and believe, and thereon allege, that each defendant designated herein as a DOE is

15  responsible, negligently or in some other actionable manner, for the events and happenings hereinafter

16  referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter

17  alleged.

18          2.      At all times herein mentioned, each of the defendants was the agent, servant, employee

19  and/or joint venture of his co-defendants, and each of them, and at all said times each defendant was

20  acting in the full course and scope of said agency, service, employment and/or joint venture.  Plaintiffs

21  are informed and believe, and thereon allege that at all times herein mentioned, defendants **BONDEX**

22  **INTERNATIONAL, INC.; CBS CORPORATION** f/k/a VIACOM, INC. (sued as successor-by-

23  merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION);

24  **CHICAGO PNEUMATIC TOOL COMPANY, L.L.C.; CLEAVER-BROOKS, INC.** f/k/a

25  AQUA-CHEM, INC., d/b/a CLEAVER-BROOKS, DIVISION; **COLTEC INDUSTRIES, INC.**

26  (sued individually and as successor-in-interest to FAIRBANKS MORSE ENGINE); **CURTISS-**

27  **WRIGHT CORPORATION; CURTISS-WRIGHT FLOW CONTROL CORPORATION;**

28  **ELEMENTIS CHEMICALS, INC.,** (sued individually and as successor-in-interest to HARRISONS

                                      3
**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

1  & CROSSFIELDS PACIFIC, INC.); **FOSTER WHEELER ENERGY CORPORATION**; **FRED**

2  **MEYER STORES, INC.; GARDNER DENVER, INC.; GENERAL ELECTRIC COMPANY;**

3  **GENERAL MOTORS CORPORATION; GEORGIA-PACIFIC CORPORATION; IMO**

4  **INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC);

5  **INGERSOLL RAND COMPANY; KAISER GYPSUM COMPANY, INC.; LOCKHEED**

6  **MARTIN CORPORATION; PHILIPS ELECTRONICS NORTH AMERICA**

7  **CORPORATION; PUMILITE BUILDING PRODUCTS, INC.** f/k/a HAMMER INVESTMENTS,

8  INC.; **RILEY POWER, INC.** f/k/a RILEY STOKER CORPORATION and D.B. RILEY, INC.;

9  **RPM, INC.** (sued individually and as successor-in-interest to BONDEX INTERNATIONAL, INC.);

10 **RPM INTERNATIONAL, INC. (sued** individually and as successor-in-interest to RPM, INC.); **RT**

11 **VANDERBILT COMPANY, INC.; SPX CORPORATION** (sued individually and as successor-in-

12 interest to WEIL-MCLAIN COMPANY, a div. of THE MARLEY WYLAIN COMPANY); **T H**

13 **AGRICULTURE & NUTRITION, L.L.C.** (sued individually and as successor-in-interest to

14 THOMPSON-HAYWARD CHEMICAL); **TRANE, INC** f/k/a AMERICAN STANDARD

15 COMPANIES (sued individually and as successor-in-interest to AMERICAN BLOWER

16 COMPANY); **UNION CARBIDE CORPORATION; UNITED TECHNOLOGIES**

17 **CORPORATION** (sued individually and as successor-in-interest to PRATT & WHITNEY and OTIS

18 ELEVATOR CO.); and **WEIL-MCLAIN,** a division of the MARLYE-WYLAIN COMPANY, and

19 DOES 1-450 inclusive, were individuals, corporations, partnerships and/or unincorporated associations

20 organized and existing under and by virtue of the laws of the State of California, or the laws of some

21 other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized

22 to do and are doing business in the State of California, or the laws of some other state or foreign

23 jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing

24 business in the State of California, and that said defendants have regularly conducted business in the

25 County of Los Angeles, State of California.

26     3.     Plaintiffs allege herein that Decedent KENNETHL. MEREDITH developed malignant

27 mesothelioma as a result of exposure to asbestos from defendants' asbestos, asbestos-containing

28 products and/or products designed to be used in association with asbestos products ("Defendants'

**4**

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

Products"), including: **BONDEX INTERNATIONAL, INC.** (for Bondex joint compound); **CBS CORPORATION** f/k/a VIACOM, INC. (sued as successor-by-merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)(for Westinghouse turbines); **CHICAGO PNEUMATIC TOOL COMPANY, L.L.C.** (for Chicago Pneumatic air compressors); **CLEAVER-BROOKS, INC.** f/k/a AQUA-CHEM, INC., d/b/a CLEAVER-BROOKS, DIVISION (for Cleaver-Brooks boilers); **COLTEC INDUSTRIES, INC.** (sued individually and as successor-in-interest to FAIRBANKS MORSE ENGINE) (for Fairbanks Morse generators); **CURTISS-WRIGHT CORPORATION** (for Curtiss-Wright engines); **CURTISS-WRIGHT FLOW CONTROL CORPORATION** (for Curtiss-Wright engines); **ELEMENTIS CHEMICALS, INC.,** (sued individually and as successor-in-interest to HARRISONS & CROSSFIELDS PACIFIC, INC.) (as a supplier of asbestos-containing fibers); **FOSTER WHEELER ENERGY CORPORATION** (for Foster Wheeler boilers); **FRED MEYER STORES, INC.** (as a supplier of asbestos-containing joint compounds); **GARDNER DENVER, INC.** (for Gardner Denver compressors); **GENERAL ELECTRIC COMPANY** (for General Electric turbines and generators); **GENERAL MOTORS CORPORATION** (for General Motors generators); **GEORGIA-PACIFIC CORPORATION** (for Georgia-Pacific joint compounds); **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC) (for DeLaval turbines); **INGERSOLL RAND COMPANY** (for Ingersoll-Rand compressors); **KAISER GYPSUM COMPANY, INC.** (for Kaiser Gypsum joint compounds); **LOCKHEED MARTIN CORPORATION** (for Lockheed airframe and aircraft power plant); **PHILIPS ELECTRONICS NORTH AMERICA CORPORATION** (as a supplier of asbestos-containing fibers); **PUMILITE BUILDING PRODUCTS, INC.** f/k/a HAMMER INVESTMENTS, INC. (as a supplier of asbestos-containing drywall supplies); **RILEY POWER, INC.** f/k/a RILEY STOKER CORPORATION and D.B. RILEY, INC. (for DB Riley and Riley Stoker boilers); **RPM, INC.** (sued individually and as successor-in-interest to BONDEX INTERNATIONAL, INC.) (for Bondex joint compound); **RPM INTERNATIONAL, INC.** (sued individually and as successor-in-interest to RPM, INC.) (for Bondex joint compound); **RT VANDERBILT COMPANY, INC.** (as a supplier of asbestos-containing talc); **SPX CORPORATION** (sued individually and as successor-in-interest to WEIL-MCLAIN COMPANY, a div. of THE MARLEY WYLAIN

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1   COMPANY) (for Weil-McLain boilers); **T H AGRICULTURE & NUTRITION, L.L.C.** (sued

2   individually and as successor-in-interest to THOMPSON-HAYWARD CHEMICAL) (as a supplier of

3   asbestos-containing fibers); **TRANE, INC.** f/k/a AMERICAN STANDARD COMPANIES (sued

4   individually and as successor-in-interest to AMERICAN BLOWER COMPANY) (for American

5   Standard boilers); **UNION CARBIDE CORPORATION** (for Bakerlite panels and Georgia-Pacific

6   joint compound); **UNITED TECHNOLOGIES CORPORATION** (sued individually and as

7   successor-in-interest to PRATT & WHITNEY and OTIS ELEVATOR CO.) (for Pratt & Whitney

8   engines); **WEIL-MCLAIN**, a division of the MARLYE-WYLAIN COMPANY (for Weil-McLain

9   boilers).

10                         **FIRST CAUSE OF ACTION**

11                              (Negligence)

12       PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE
     ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE
13   ALLEGE AS FOLLOWS:

14       5.       Plaintiffs incorporate herein by reference, as though fully set forth therein, the general

15   allegations set forth above.

16       6.       At all times herein mentioned, each of the named defendants and DOES 1 through 450

17   was the successor, successor in business, successor in product line or a portion thereof, parent,

18   subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity

19   researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling,

20   distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing,

21   contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others,

22   packaging and advertising asbestos and products containing asbestos, including but not limited to,

23   those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called

24   "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each

25   successor, successor in business, successor in product line or a portion thereof, assign, predecessor in

26   product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially

27   owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing,

28   warranted, re-branded, manufactured for others and advertised asbestos and/or products containing

                                        **6**
     **COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

1  asbestos.  The following defendants, and each of them, are liable for the acts of each and every

2  "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy

3  against each such "alternate entity"; defendants, and each of them, have acquired the assets, product

4  line, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused

5  the destruction of Plaintiffs' remedy against each such "alternate entity"; each such defendant has the

6  ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant

7  enjoys the goodwill originally attached to each such "alternate entity".

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| BONDEX INTERNATIONAL, INC. | RPM INC.<br>RPM INTERNATIONAL INC.<br>THE REARDON COMPANY<br>DAP PRODUCTS INC.<br>WILLIAM ZINSSER CO., INC. |
| CBS CORPORATION | VIACOM INC.<br>WESTINGHOUSE ELECTRIC CORPORATION<br>BF STURTEVANT<br>VIACOM INTERNATIONAL, INC.<br>VIACOM PLUS |
| CLEAVER-BROOKS, INC. | AQUA-CHEM, INC.<br>CLEAVER-BROOKS COMPANY, INC.<br><br>DAVIS ENGINEERING |
| COLTEC INDUSTRIES, INC. | FAIRBANKS MORSE ENGINE |
| ELEMENTIS CHEMICALS, INC. | ELEMENTIS HOLDINGS, LTD.<br>ELEMENTIS PLC<br>ELEMENTIS SPECIALITIES, INC.<br>HARRISONS & CROSSFIELD (PACIFIC), INC.<br>HARCROS CHEMICALS INC. |
| FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORPORATION<br>FOSTER WHEELER CONTRACTORS, INC.<br>FOSTER WHEELER CORPORATION<br>FOSTER WHEELER DEVELOPMENT CORP.<br>FOSTER WHEELER ENERGY RESOURCES INC.<br>FOSTER WHEELER ENERGY SERVICES, INC.<br>FOSTER WHEELER ENVIRESPONSE, INC.<br>FOSTER WHEELER ENVIRONMENTAL CORPORATION<br>FOSTER WHEELER POWER GROUP, INC. |

7

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

| | |
|---|---|
| 1 | FOSTER WHEELER POWER SYSTEMS, INC. |
| 2 | FOSTER WHEELER PYROPOWER, INC. |
| 3 | FOSTER WHEELER REALTY SERVICES, INC. |
| | FOSTER WHEELER USA CORPORATION |

GARDNER DENVER, INC.
GARDNER GOVERNOR CORPORATION
GARDNER COMPANY
GARDNER DENVER INDUSTRIAL
  MACHINERY
COOPER INDUSTRIES, INC.
SYLTONE PLC
TAMROTOR
GEOQUIP
CHAMPION PNEUMATIC MACHINERY
WITTIG
ALLEN-STUART EQUIPMENT COMPANY
AIR RELIEF
BUTTERWORTH JETTING SYSTEMS
INVINCIBLE AIRFLOW SYSTEMS
HAMWORTHY BELISS & MORCOM
HOFFMAN AIR AND FILTRATION SYSTEMS
JOY MANUFACTURING COMPANY

GENERAL ELECTRIC COMPANY
GENERAL ELECTRIC BROADCASTING
  COMPANY, INC.
GENERAL ELECTRIC CAPITAL
  ASSURANCE COMPANY
GENERAL ELECTRIC PROFESSIONAL
  SERVICES COMPANY
GENERAL ELECTRIC TRADING COMPANY

GENERAL MOTORS CORPORATION
DELCO
AC-DELCO
AC SPARK PLUG COMPANY
GARWOOD INDUSTRIES, INC.
GENERAL MOTORS ACCEPTANCE
  CORPORATION
GENERAL MOTORS OVERSEAS
DISTRIBUTION CORPORATION
DETROIT DIESEL
CLEVELAND DIESEL

GEORGIA-PACIFIC CORPORATION
BESTWALL GYPSUM COMPANY
GEORGIA-PACIFIC RESINS, INC.
GEORGIA-PACIFIC WEST, INC.

IMO INDUSTRIES, INC.
DE LAVAL TURBINE INC.
WARREN PUMPS, INC.
COLFAX CORPORATION
IMO PUMP
IMO AB
COLFAX PUMP GROUP
ALLWEILER
HOUTTUIN

8

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

|   |   |
|---|---|
| 1 | C.H. WHEELER |
| 2 | INGERSOLL-RAND COMPANY |
| 3 | INGERSOLL-RAND ABG |
|   | DRESSER-RAND |
|   | POWERWORKS |
|   | THERMOKING |
| 4 | TERRY STEAM TURBINE COMPANY |
|   | WHITON MACHINE CO. |
| 5 | |
| 6 | KAISER GYPSUM COMPANY, INC. |
|   | KAISER GYPSUM COMPANY |

1       C.H. WHEELER

2  INGERSOLL-RAND COMPANY      INGERSOLL-RAND ABG

3       DRESSER-RAND
     POWERWORKS
     THERMOKING

4       TERRY STEAM TURBINE COMPANY
     WHITON MACHINE CO.

5

6  KAISER GYPSUM COMPANY, INC.      KAISER GYPSUM COMPANY

7  PHILIPS ELECTRONICS NORTH AMERICA      KONINKLIJKE ("ROYAL") PHILIPS
   CORPORATION      ELECTRONICS N.V.

8       PHILIPS CONSUMER ELECTRONICS
     PHILIPS DOMESTIC APPLIANCES AND
      PERSONAL CARE

9       NORELCO CONSUMER PRODUCTS
      COMPANY

10       PHILIPS ORAL HEALTHCARE
     PHILIPS LIGHTING

11       ADVANCE TRANSFORMER COMPANY
     PHILIPS MEDICAL SYSTEMS

12       PHILIPS SEMICONDUCTORS
     ASSEMBLEON AMERICAS

13       PHILIPS CENTER FOR MANUFACTURING
      TECHNOLOGY

14       PHILIPS SILICON VALLEY CENTER
     PHILIPS DESIGN

15       PHILIPS RESEARCH USA
     PHILIPS ADVANCED METROLOGY

16        SYSTEMS, INC.
     THOMPSON-HAYWARD CHEMICAL

17       CO.

18  RILEY POWER, INC.      RILEY STOKER CORPORATION

19  RPM INC.      RPM INTERNATIONAL INC.
     BONDEX INTERNATIONAL, INC.

20       THE REARDON COMPANY

21  RPM INTERNATIONAL, INC.      RPM, INC.

22       RPM
     CHEMICAL SPECIALTIES

23       MANUFACTURING CORP.
     RPM INC. (Medina, Ohio)

24       DAP PRODUCTS INC.
     DAP CANADA CORP.

25

26  SPX CORPORATION      THE VULCAN SOOT BLOWER COMPANY
     COPES-VULCAN

27       WEIL-MCLAIN COMPANY
     THE MARLEY WYLAIN COMPANY

28  T H AGRICULTURE & NUTRITION L.L.C.      THOMPSON-HAYWARD CHEMICAL CO.

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

| | |
|---|---|
| TRANE, INC. | AMERICAN STANDARD COMPANIES<br>AMERICAN BLOWER COMPANY |
| UNION CARBIDE CORPORATION | THE DOW CHEMICAL COMPANY<br>UNION CARBIDE CHEMICALS AND<br>PLASTICS COMPANY, INC.<br>UNION CARBIDE AND CARBON<br>CORPORATION<br>LINDE AIR PRODUCTS COMPANY<br>NATIONAL CARBON CO., INC.<br>PREST-O-LITE CO., INC.<br>UNION CARBIDE COMPANY<br>CARBIDE AND CARBON CHEMICALS<br>  CORPORATION<br>BAKELITE COROPORATION<br>UNION CARBIDE CONSUMER PRODUCTS<br>CO.<br>UNION CARBIDE MINING AND METALS<br>  DIVISION<br>UNION CARBIDE ELECTRONICS DIVISION<br>UNION CARBIDE HYDROCARBONS<br>  DIVISION<br>UNION CARBIDE FERROALLOYS DIVISION<br>JENNAT CORPORATION<br>AMERCHOL CORPORATION<br>UOP<br>UCAR CARBON COMPANY<br>UNION CARBIDE INDUSTRIAL GASES INC.<br>PRAXAIR, INC.<br>POLIMERI EUROPA S.r.l.<br>ASIAN ACETYLS COMPANY, LTD.<br>EQUATE PETROCHEMICAL COMPANY |
| UNITED TERCHNOLOGIES | PRATT & WHITNEY |
| WEIL-MCLAIN | THE MARLEY WYLAIN COMPANY |

7.     At all times herein mentioned, defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising Defendants' Products.

8.     At all times herein mentioned, defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented offered for sale, supplied, sold,

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1    inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

2    manufactured for others, packaged, and advertised Defendants' Products, including but not limited to

3    those products identified in paragraph 3 above, in that the Defendants' Products were unreasonably

4    dangerous because they released respirable asbestos fibers which resulted in personal injuries to users,

5    consumers, workers, bystanders, and others, including Plaintiffs' Decedent KENNETH LESLIE

6    MEREDITH. herein (hereinafter collectively called "exposed persons"). Said products were used at all

7    times in a manner that was reasonably foreseeable to defendants, their "alternate entities," and each of

8    them, thereby rendering said products unsafe and dangerous for use by "exposed persons". Plaintiffs

9    herein allege that their Decedent KENNETH LESLIE MEREDITH.'s exposures to Defendants'

10    Products, including but not limited to those products identified in paragraph 3 above (hereinafter

11    referred to as "defendants' products" or "defendants' asbestos and asbestos-containing products"), were

12    a substantial contributing factor in the development of his malignant mesothelioma, and his death on

13    December 14, 2006, and therefore proximately caused Plaintiffs' injuries.

14       9.    Defendants, their "alternate entities," and each of them, had a duty to exercise reasonable

15    care while engaging in the activities mentioned above and each defendants breached said duty of

16    reasonable care in that defendants, and each of them, failed to safely and adequately design, manufacture

17    and/or sell defendants' products; failed to test said products; failed to investigate the hazards of said

18    products; failed to warn "exposed persons", including Plaintiffs' Decedent KENNETH LESLIE

19    MEREDITH., of the health hazards of using defendants' products; failed to disclose the known or

20    knowable dangers of using defendants' products; failed to obtain suitable alternative materials to

21    asbestos when such alternatives were available; and as otherwise stated herein.

22       10.    The defendants' products were and are hazardous to the health and safety of Plaintiff, and

23    others in Decedent's position working with and in close proximity to such products, and since on or

24    before 1930, the hazards and dangerous propensities of the defendants' products were both known and

25    knowable to the defendants, their "alternate entities", and each of them, through the use of medical

26    and/or scientific data and other knowledge available to defendants, their "alternate entities", and each of

27    them at the time of defendants' manufacture, distribution, sale, research, study, fabrication, design,

28    modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection, service,

11

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

1    installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for

2    others, packaging and advertising, of those products, which clearly indicated the hazards and dangerous

3    propensities of asbestos presented a substantial danger to users, including Plaintiffs' Decedent

4    KENNETH LESLIE MEREDITH., of defendants' asbestos and asbestos-containing products through

5    the intended and reasonably foreseeable use of those products.

6          11.    Defendants, their "alternate entities", and each of them, knew, or reasonably should have

7    known, that Defendants' Products were dangerous and were likely to be dangerous when used in their

8    intended and reasonably foreseeable manner.

9          12.    Defendants, their "alternate entities", and each of them, knew, or reasonably should have

10   known, that defendants' asbestos products would be installed, repaired, maintained, overhauled,

11   removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out" or otherwise

12   disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous

13   and dangerous asbestos fibers, and that through such activity, "exposed persons," including Plaintiffs'

14   Decedent KENNETH LESLIE MEREDITH. herein, would be exposed to said hazardous and dangerous

15   asbestos fibers. Defendants, their "alternate entities", and each of them, knew or reasonably should have

16   known that users, such as Plaintiffs' Decedent KENNETH LESLIE MEREDITH. and others in his

17   position, working with and in close proximity to Defendants' Products would not realize or know the

18   danger. Defendants, their "alternate entities," and each of them negligently failed to adequately warn or

19   instruct of the dangers of the products. A reasonable designer, manufacturer, distributor, seller, installer,

20   buyer or supplier, under the same or similar circumstances, would have warned of the dangers to avoid

21   exposing others to a foreseeable risk of harm.  The negligent failure of defendants, their "alternate

22   entities," and each of them to warn was a substantial factor in causing harm to Plaintiffs' Decedent

23   KENNETH LESLIE MEREDITH., proximately resulting in his death on January 5, 2006, the nature of

24   which is set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

25         13.    Plaintiffs' Decedent KENNETH LESLIE MEREDITH. used, handled, or was otherwise

26   exposed to Defendants' Products referred to herein in a manner that was reasonably foreseeable to

27   defendants and each of them.  Plaintiffs' Decedent's exposure to Defendants' products occurred at

28   various locations set forth in **Exhibit "A"**, which is attached hereto and incorporated by reference

12

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

1    herein.

2         14.    As a direct and proximate result of the conduct of the defendants, their "alternate

3    entities", and each of them, as aforesaid, Decedent KENNETH LESLIE MEREDITH.'s exposure to

4    Defendants' products caused severe and permanent injury and death to the Decedent, the nature of

5    which, along with the date of Decedent's diagnosis and the date he learned such injuries were

6    attributable to exposure to Defendants' products, are set forth in **Exhibit "B",** which is attached hereto

7    and incorporated by reference herein.  Plaintiffs are informed and believe, and thereon allege, that

8    progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers

9    without perceptible trauma and that said disease results from exposure to Defendants' Products over a

10    period of time.

11         15.    Decedent KENNETH LESLIE MEREDITH. suffered from malignant pleural

12    mesothelioma, caused by exposure to asbestos and asbestos-containing products, including those

13    products identified in paragraph 3 above.  Decedent KENNETH LESLIE MEREDITH. was not aware of

14    the time of exposure that Defendants' Products presented any risk of injury and/or disease.

15         16.    As a direct and proximate result of the aforesaid conduct of defendants, their "alternate

16    entities," and each of them, Decedent KENNETH LESLIE MEREDITH. suffered permanent injuries to

17    his person, body and health, including, but not limited to, pain, discomfort, loss of weight, loss of

18    appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the

19    mental and emotional distress attendant thereto, as Decedent's malignant mesothelioma progressed,

20    from the effect of exposure to asbestos fibers, proximately resulting in his death on December 14, 2006,

21    all to Plaintiffs' general damage in a sum in excess of the jurisdictional limit of a limited civil case.

22         17.    As a direct and proximate result of the aforesaid conduct of the defendants, their

23    "alternate entities", and each of them, Decedent KENNETH LESLIE MEREDITH. incurred, and

24    Plaintiffs continue to incur, liability for physicians, surgeons, nurses, hospital care, medicine, hospices,

25    x-rays and other medical treatment, the true and exact amount thereof being presently unknown to

26    Plaintiffs, subject to proof at trial.

27         18.    As a further direct and proximate result of the said conduct of the defendants, their

28    "alternate entities", and each of them, Plaintiffs have incurred, and will incur, loss of income, wages,

13

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

profits and commissions, a diminishment of earning potential, funeral and burial expenses, and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.   As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," Plaintiffs have been, and in the future will be, deprived of the support, society, solace, care, comfort, companionship, affection, advice, services and guidance of Decedent, KENNETH LESLIE MEREDITH., the full nature and extent of which are not yet known to Plaintiffs and leave is requested to amend this complaint to conform to proof at the time of trial.

19.   Plaintiffs further allege that defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts which support Plaintiffs' prayer for punitive damages:

(a)   Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiffs' Decedent KENNETH LESLIE MEREDITH., medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom.   Although defendants, and each of them, knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person", including Plaintiffs' Decedent KENNETH LESLIE MEREDITH.

(b)   Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiffs' Decedent KENNETH LESLIE MEREDITH. as to the safety of their products.   Through their participation and association with such industry organizations, defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products.   The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically

**14**

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs' Decedent KENNETH LESLIE MEREDITH.;

    (c)  Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

    (d)  Defendants, their "alternate entities", and each of them, failed to warn Plaintiffs' Decedent KENNETH LESLIE MEREDITH. and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

    (e)  Defendants, their "alternate entities", and each of them, failed to provide Plaintiffs' Decedent KENNETH LESLIE MEREDITH.  with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, installing and sanding the products of the defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Decedent KENNETH LESLIE MEREDITH. and others applying and installing such material;

    (f)  Defendants, their "alternate entities", and each of them, knew and failed to disclose that Decedent KENNETH LESLIE MEREDITH.  and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1   pneumoconiosis, asbestosis, mesothelioma and/or cancer;

2       (g) Defendants, their "alternate entities", and each of them, failed to provide

3   information of the true nature of the hazards of asbestos materials and that exposure to these material

4   would cause pathological effects without noticeable trauma to the public, including buyers, users, and

5   physicians employed by Decedent KENNETH LESLIE MEREDITH. so that said physicians could not

6   examine, diagnose, and treat Decedent and others who were exposed to asbestos, despite the fact that

7   defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure

8   was misleading; and

9     20. Defendants, their "alternate entities", and each of them, and their officers, directors, and

10   managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of,

11   or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and

12   each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of

13   them, and each defendant's officers, directors, and managing agents participated in, authorized,

14   expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of

15   their "alternate entities" as set forth herein.

16     21. The herein-described conduct of said defendants, their "alternate entities", and each of

17   them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference

18   to the safety and health of "exposed person," including Decedent KENNETH LESLIE MEREDITH., in

19   that defendants, and each of them, continued to manufacture, market and/or sell dangerous products

20   known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial

21   hazards posed by use of their products, in order to continue to profit financially therefrom.  Defendants,

22   their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base,

23   vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and

24   justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294.  Plaintiffs,

25   for the sake of example and by way of punishing said defendants, seek punitive damages according to

26   proof.

27     22. Defendants and each of them engaged in the malicious conduct described hereinwhich

28   was intended by defendants and each of them to cause injury to the Decedent, and despicable conduct

16

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

which was carried on by the defendant with a willful and conscious disregard of the rights or safety of others, including Decedent KENNETH LESLIE MEREDITH..

23.    Defendants, and each of them, engaged in oppressive conduct described herein which was despicable conduct that subjected persons, including Decedent KENNETH LESLIE MEREDITH., to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

24.    As a direct and proximate result of such intentional conduct by defendants, their "alternate entities" and each of them, Decedent KENNETH LESLIE MEREDITH. sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.


## SECOND CAUSE OF ACTION

-    (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

26.    Defendants, their "alternate entities", and each of them, sold the aforementioned Defendants' Products and failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of the products, including Decedent KENNETH LESLIE MEREDITH., and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Decedent KENNETH LESLIE MEREDITH. and others in Decedent's position working with and in close proximity to such products.

27.    Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out" or otherwise disturbed,

17

1  said products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos

2  fibers by exposed person, including Decedent KENNETH LESLIE MEREDITH..  The defect existed in

3  all of said products when they left the possession of the defendants, their "alternate entities," and each of

4  them.  At the time Defendants' Products were used by Decedent, and others in Decedent's position

5  working with and in close proximity to such products, the products were substantially the same as when

6  they left the possession of the defendants, their "alternate entities," and each of them and/or any changes

7  made to the products after they left the possession of defendants, their "alternate entities", and each of

8  them were reasonably foreseeable to defendants, their "alternate entities", and each of them.

9  Defendants' asbestos and asbestos products were used by Decedent KENNETH LESLIE MEREDITH.,

10  and others in Decedent's position working with and in close proximity to such products, in a way that

11  was reasonably foreseeable to defendants, and each of them.  The defect in said products was a

12  substantial factor in causing harm and personal injuries to Decedent KENNETH LESLIE MEREDITH.,

13  including malignant mesothelioma, while being used in a reasonably foreseeable manner, thereby

14  rendering said products defective, unsafe, and unreasonably dangerous for their ordinary and intended

15  use.

16      28.     As a direct and proximate result of the actions and conduct outlined herein, Defendants'

17  Products failed to perform as safely as an ordinary consumer would have expected in that defendants'

18  products, and each of them, released respirable asbestos fibers during their ordinary and intended use,

19  and such hazardous exposures lacked any perceptible qualities to the human body, yet they cause severe

20  and fatal diseases, including asbestosis, lung cancer, mesothelioma and other cancers in humans.

21  Plaintiffs further allege that "exposed person", including Decedent KENNETH LESLIE MEREDITH.,

22  were unaware of the harmful effects of asbestos and further unaware of the harmful exposures to

23  Defendants' Products when such exposures occurred, and thus the failure of defendants' products to

24  perform as safely as Decedent KENNETH LESLIE MEREDITH. had reason to expect was a substantial

25  factor in causing his injuries.

26      29.     As a direct and proximate result of the actions and conduct outlined herein, Decedent

27  KENNETH LESLIE MEREDITH. has suffered the injuries and damages alleged herein.

28      30.     Plaintiffs further allege that defendants, their "alternate entities", and each of them, also

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1   engaged in the following wrongful acts:

2           (a)     Defendants, their "alternate entities", and each of them, suppressed from all

3   consumers, including Decedent KENNETH LESLIE MEREDITH., medical and scientific information

4   concerning the health hazards associated with inhalation of asbestos, including the substantial risk of

5   injury or death therefrom.   Although defendants, and each of them, knew of the substantial risks

6   associated with exposure to asbestos, they willfully and knowingly concealed such information from the

7   users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety

8   and welfare of "exposed person", including Decedent KENNETH LESLIE MEREDITH..

9           (b)     Defendants, their "alternate entities", and each of them, belonged to, participated

10  in, and financially supported industry organizations, including but not limited to the Gypsum

11  Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for

12  and on behalf of defendants, their "alternate entities", and each of them, actively promoted the

13  suppression of information about the dangers of asbestos to users of the aforementioned products and

14  materials, thereby misleading Decedent KENNETH LESLIE MEREDITH. as to the safety of their

15  products.   Through their participation and association with such industry organizations, defendants and

16  each of them knowingly and deliberately concealed and suppressed the true information regarding

17  asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants'

18  Products a false security about the safety of their products.   The Dust Control Committee, which

19  changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically

20  enlisted to study the subject of dust control.   Discussions in this committee were held many times

21  regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust,

22  and such information was suppressed from public dissemination from 1946 to a date unknown to

23  Plaintiffs at this time;

24          (c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and

25  Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in

26  Manheim and Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew

27  and possessed medical and scientific information of the connection between the inhalation of asbestos

28  fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and

**19**

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1  other industry organizations to all other defendants, their "alternate entities", and each of them, herein.

2  Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide

3  this information to consumers;

4        (d)    Defendants, their "alternate entities", and each of them, failed to warn Decedent

5  KENNETH LESLIE MEREDITH. and others of the nature of said materials which were dangerous

6  when breathed and which could cause pathological effects without noticeable trauma, despite the fact

7  that defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty

8  to disclose that said materials were dangerous and a threat to the health of persons coming into contact

9  therewith;

10        (e)    Defendants, their "alternate entities", and each of them, failed to provide

11  Decedent KENNETH LESLIE MEREDITH. with information concerning adequate protective masks

12  and other equipment devised to be used when applying, mixing, installing and sanding the products of

13  the defendants, their "alternate entities", and each of them, despite knowing that such protective

14  measures were necessary, and that they were under a duty to disclose that such materials were dangerous

15  and would result in injury to Decedent KENNETH LESLIE MEREDITH. and others applying and

16  installing such material;

17        (f)    Defendants, their "alternate entities", and each of them, knew and failed to

18  disclose that Decedent KENNETH LESLIE MEREDITH. and anyone similarly situated, upon inhalation

19  of asbestos would, in time, have a substantial risk of developing irreversible conditions of

20  pneumoconiosis, asbestosis, mesothelioma and/or cancer;

21        (g)    Defendants, their "alternate entities", and each of them, failed to provide

22  information of the true nature of the hazards of asbestos materials and that exposure to these material

23  would cause pathological effects without noticeable trauma to the public, including buyers, users, and

24  physicians employed by Decedent KENNETH LESLIE MEREDITH. so that said physicians could not

25  examine, diagnose, and treat Decedent and others who were exposed to asbestos, despite the fact that

26  defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure

27  was misleading; and

28        31.    Defendants, their "alternate entities", and each of them, and their officers, directors, and

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

1  managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of,

2  or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and

3  each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of

4  them, and each defendant's officers, directors, and managing agents participated in, authorized,

5  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of

6  their "alternate entities" as set forth herein.

7       32.    The herein-described conduct of said defendants, their "alternate entities", and each of

8  them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference

9  to the safety and health of "exposed person," including Decedent KENNETH LESLIE MEREDITH., in

10 that defendants, and each of them, continued to manufacture, market and/or sell dangerous products

11 known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial

12 hazards posed by use of their products, in order to continue to profit financially therefrom.  Defendants,

13 their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base,

14 vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and

15 justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294.  Plaintiffs,

16 for the sake of example and by way of punishing said defendants, seek punitive damages according to

17 proof.

18      33.    Defendants and each of them engaged in malicious conduct described herein which was

19 intended by defendants and each of them to cause injury to the decedent, and despicable conduct which

20 was carried on by the defendant with a willful and conscious disregard of the rights or safety of others,

21 including Decedent KENNETH LESLIE MEREDITH.

22      34.    Defendants, and each of them, engaged in the oppressive conduct described herein which

23 was despicable conduct that subjected persons, including Decedent KENNETH LESLIE MEREDITH.,

24 to cruel and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung

25 cancer and mesothelioma, in conscious disregard of those persons' rights.

26      35.    As a direct and proximate result of such intentional conduct by defendants, their

27 "alternate entities" and each of them, Decedent KENNETH LESLIE MEREDITH. sustained the injuries

28 and damages alleged herein.

**21**

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

1    WHEREFORE, Plaintiffs pray for judgment against defendants, and their "alternate entities",

2  and each of them, as hereinafter set forth.

3    36.    WHEREFORE, plaintiffs pray for judgment against defendants, their "alternate entities",

4  and each of them, in an amount to be proved at trial in each individual case, as follows:

5    DECEDENT KENNETH LESLIE MEREDITH., by and through his personal representative,

6  MARY T. MEREDITH, pursuant to Code of Civil Procedure § 377.30. et seq.:

7         1.    For DECEDENT'S medical and related expenses according to proof;

8         2.    For DECEDENT'S loss of income and income potential;

9         3.    For exemplary or punitive damages according to proof;

10    MARY T. MEREDITH, RICHARD K. MEREDITH, and SHARON L. EPPING, pursuant to

11  Code of Civil Procedure § 377.60. et seq.:

12         4.    For PLAINTIFFS' medical and related expenses according to proof;

13         5.    For PLAINITFFS' loss of income and income potential caused by DECEDENT'S

14              death, and for PLAINTIFFS' loss of decedent's financial support and financial

15              contributions;

16         6.    For funeral and burial expenses caused by DECEDENT'S death;

17         7.    For PLAINTIFFS' general damages according to proof, including damages for

18              loss of love, companionship, comfort, affection, solace, moral support and/or

19              society according to proof caused by DECEDENT'S death;

20         8.    For exemplary or punitive damages according to proof;

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**22**

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

ALL PLAINTIFFS

9.    For Plaintiffs' cost of suit herein;

10.    For exemplary or punitive damages according to proof;

11.    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in <u>C.C.P.</u> § 998, <u>C.C.P.</u> § 1032 and related provisions of law.

DATED: May 28, 2008                     **SIMON, EDDINS & GREENSTONE, LLP**

By: _____
JENNIFER BARTLETT
ETHAN A. HORN
Attorneys for Plaintiffs

<u>COMPLAINT FOR WRONGFUL DEATH – ASBESTOS</u>

1

## DEMAND FOR JURY TRIAL

2    Plaintiffs hereby demand trial by jury as to all issues so triable.

3

4    DATED:   May 28, 2008                    **SIMON, EDDINS & GREENSTONE, LLP**

5

6                                     By: _____

7                                         JENNIFER BARTLETT
                                          ETHAN A. HORN
8                                         Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**24**

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

**EXHIBIT "A"**

Decedent KENNETH LESLIE MEREDITH.'S exposure to asbestos and asbestos-containing products occurred at various locations within the States of California, Idaho, Oregon and Oklahoma, including, but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Date(s) |
|---|---|---|---|
| US Navy | *USS Ulysses S. Grant*; *SS City of Paris*; Ontario, California; Livermore, California; Burbank, California; Sunnyvale, California; Idaho; and Oklahoma | Aviation cadet; Aviation machinist mate; Maintenance & repair worker | 1942-1945 |
| Kaiser Corporation | Bonneville Dam on the Columbia River Gorge, Oregon | Electrician's helper | 1941 |
| Witzig Electrical Shop | Various residential and commercial locations in Corvallis, Oregon | Apprentice Electrician | 1945-1950 |
| George Mayer Electric Shop | Various residential and commercial locations in Corvallis, Oregon | Apprentice Electrician | 1945-1950 |
| Portland Local Electrician Union | North Santiam River in the Cascade Mountains | Electrician | 1950-1952 |
| Self | Various residential and commercial locations in Corvallis Oregon | Electrician; Supervisor | 1952-1982 |
| Self | Various personal residences in Corvallis and Palomas, Oregon | Electrician | 1960s and 1970s |

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1

## EXHIBIT "B"

2    Decedent KENNETH LESLIE MEREDITH.'s exposure to Defendants' products caused severe

3 and permanent injury and death to Decedent KENNETH LESLIE MEREDITH. including, but not

4 limited to, mesothelioma.   Decedent was diagnosed with mesothelioma on or about September 20,

5 2007.

6    KENNETH LESLIE MEREDITH. died on April 7, 2008.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**26**

**Exhibit B**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY T. MEREDITH, as Personal Representative of the Estate of KENNETH LESLIE MEREDITH, Deceased, RICHARD K. MEREDITH, and SHARON L. EPPING, <br><br>        Plaintiffs, <br><br>   v. <br><br> BONDEX INTERNATIONAL, INC., et al. <br><br>        Defendants. | CASE NO.  09-cv-0886 R (JTLx) <br><br> Hon. Manuel L. Real <br><br> [PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO REMAND TO STATE COURT |

Knott & Glazier
LLP

ORDER DENYING PLAINTIFFS' MOTION TO REMAND TO STATE COURT

1        Having reviewed all the papers and heard oral argument on April 6, 2009, this

2    Court DENIES Plaintiffs' Motion to Remand to State Court.  This order is based on

3    the Court's finding that the Complaint provided an insufficient basis to ascertain

4    removability on federal officer grounds.  *See Durham v. Lockheed Martin*

5    *Corporation,* 445 F.3d 1247, 1251 (9th Cir. 2006).  The Court further finds that

6    Lockheed Martin Corporation could not determine that the case was removable until it

7    received the decedent's military records.  It then removed the case within thirty days,

8    pursuant to 28 U.S.C. §1446.

9    IT IS SO ORDERED.

10

11

12   Dated: April 13, 2008

13                                                    Hon. Manuel L. Real
                                                      United States District Judge
14

15   Respectfully Submitted by:

16   KNOTT & GLAZIER LLP
     601 S. Figueroa Street, Suite 4200
17   Los Angeles, California 90017
     Telephone:  (213) 312-9200
18   Facsimile:  (213) 312-9201
     E-mail:      parker@knottglazier.com
19

20
     By:      /s/Deborah M. Parker
21                Deborah M. Parker

22            Attorneys for Defendant,
              LOCKHEED MARTIN CORPORATION
23

24

25

26

27

28

Knott & Glazier
LLP

1

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND TO STATE COURT**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of the foregoing document via the Central District of California CM/ECF system on April 9, 2009.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Filice Brown Eassa & McLeod LLP
1999 Harrison Street 18th Floor
Oakland, CA 94612-3541

Prindle Decker & Amaro LLP
310 Golden Shore 4th Floor
P O Box 22711
Long Beach, CA 90801-5511

Glaspy & Glaspy
100 Pringle Ave, Ste 750
Walnut Creek, CA 94596-8104


/s/ Deborah M. Parker
Deborah M. Parker

**Exhibit C**

©COPY

FILED

2009 FEB -5  AM 11: 50

CLERK U S DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES

BY _____

1  KNOTT & GLAZIER LLP
   GUY P. GLAZIER, SBN 162628
2  DEBORAH M. PARKER, SBN 228203
   601 S. Figueroa Street, Suite 4200
3  Los Angeles, California  90017
   Telephone: 213-312-9200
4  Facsimile:  213-312-9201
   E-mail:    glazier@knottglazier.com
5

6  Attorneys for Defendant,
   Lockheed Martin Corporation
7

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  MARY T. MEREDITH, as Personal
    Representative of the Estate of KENNETH
13  LESLIE MEREDITH, Deceased, RICHARD K.
    MEREDITH, and SHARON L. EPPING,
14                      Plaintiffs,
                v.
15

16  BONDEX INTERNATIONAL, INC.; CBS
    CORPORATION f/k/a VIACOM, INC. (sued as
17  successor-by-merger to CBS CORPORATION
    f/k/a WESTINGHOUSE ELECTRIC
18  CORPORATION); CHICAGO PNEUMATIC
    TOOL COMPANY, L.L.C.; CLEAVER-
19  BROOKS, INC. f/k/a AQUA-CHEM, INC., d/b/a
    CLEAVER-BROOKS , DIVISION; COLTEC
20  INDUSTRIES, INC. (sued individually and as
    successor-in-interest to FAIRBANKS MORSE
21  ENGINE); CURTISS-WRIGHT
    CORPORATION; CURTISS-WRIGHT FLOW
22  CONTROL CORPORATION; ELEMENTIS
    CHEMICALS, INC., (sued individually and as
23  successor-in-interst to HARRISONS &
    CROSSFIELDS PACIFIC, INC.); FOSTER
24  WHEELER ENERGY CORPORATION; FRED
    MEYER STORES, INC.; GARDNER DENVER,
25  INC.; GENERAL ELECTRIC COMPANY;
    GENERAL MOTORS CORPORATION;
26  GEORGIA-PACIFIC CORPORATION; IMO
    INDUSTRIES, INC. (sued individually and as
27  successor-in-interst to DELAVAL TURBINE ,
    INC); INGERSOLL RAND COMPANY;
28  KAISER GYPSUM COMPANY, INC.;

CV09- 0886 ODW (RC)

CASE NO.

(State Court Case No. BC
391585)

**DEFENDANT LOCKHEED
MARTIN CORPORATION'S
NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S.C.
§1442(a) (FEDERAL
OFFICER)**

FAXED

Knott & Glazier
LLP

1  LOCKHEED MARTIN CORPORATION;
   PHILIPS ELECTRONICS NORTH AMERICA
2  CORPORAITON; PUMILITE BULDING
   PRODUCTS, INC. f/k/a HAMMER
3  INVESTMENTS, INC.; RILEY POWER, INC.
   f/k/a RILEY STOKER CORPORATION and
4  D.B. RILEY, INC.; RPM, INC. (sued
   individually and as successor-in-interest to
5  BONDEX INTERNATIONAL, INC.); RPM
   INTERNATIONAL, INC. (sued individually and
6  as successor-in-interest to RPM, INC.); RT
   VANDERBILT COMPANY, INC.; SPX
7  CORPORATION (sued individually and as
   successor-in-interest to WEIL-MCLAIN
8  COMPANY, a div. of THE MARLEY WYLAIN
   COMPANY); T H AGRICULTURE &
9  NUTRITION, L.L.C. (sued individually and as
   successor-in-interest to THOMPSON-
10 HAYWARD CHEMICAL); TRANE, INC. f/k/a
   AMERICAN STANDARD COMPANIES (sued
11 individually and as successor-in-interest to
   AMERICAN BLOWER COMPANY); UNION
12 CARBIDE CORPORATION; UNITED
   TECHNOLOGIES CORPORATION (sued
13 individually and as successor-in-interest to
   PRATT & WHITNEY  and OTIS ELEVATOR
14 CO.); WEIL-MCLAIN, a division of the
   MARLYE-WYLAIN COMPANY, and DOES 1-
15 450 INCLUSIVE,

16                    Defendants.

17

18

19      TO THE CLERK OF THE ABOVE-ENTITLED COURT:

20          PLEASE TAKE NOTICE that Defendant LOCKHEED MARTIN

21 CORPORATION hereby removes to this Court the state court action described below.

22                      **I.      Background**

23      1.      On or about February 7, 2008, Decedent (before his death) and his wife

24 filed a personal injury action in the Circuit Court of the State of Oregon for the County

25 of Multnomah entitled *Kenneth Leslie Meredith and Mary T. Meredith v. American*

26 *Standard, Inc., et al.,* Case No. 0802-02050 (the "Oregon Complaint").  Attached as

27 Exhibit 1 is a true and correct copy of the Oregon Complaint.  In the Oregon

28 Complaint, Plaintiffs named thirty-one defendants; they did *not* name Lockheed

Knott & Glazier
LLP

DEFENDANT LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER 28
U.S.C. §1442(a) (FEDERAL OFFICER)

1   Martin Corporation ("Lockheed Martin") in their Oregon Complaint, and Lockheed

2   Martin had no involvement in the action commenced by the Oregon Complaint.  On

3   April 7, 2008, Kenneth Meredith died.  On May 13, 2008, Plaintiffs dismissed their

4   Oregon Complaint claiming their intent to file an action in California.  Attached as

5   Exhibit 2 is a true and correct copy of the Notice of Dismissal Without Prejudice

6   Under ORCP 54A(1) in the Oregon action.

7        2.     On or about May 28, 2008, Plaintiffs filed a wrongful death action in the

8   Superior Court of California for the County of Los Angeles entitled *Mary T. Meredith,*

9   *as Personal Representative of the Estate of Kenneth Leslie Meredith, Deceased,*

10  *Richard K. Meredith, and Sharon L. Epping v. Bondex International, Inc., et al.,* Case

11  No. BC 391585 (the "California Complaint").  Attached as Exhibit 3 is a true and

12  correct copy of the California Complaint.  The California Complaint names twenty-

13  eight defendants, including Lockheed Martin and alleges causes of action for

14  negligence and strict liability.  (California Complaint at 33:15-17.)  Plaintiffs served

15  Lockheed Martin on or about June 5, 2008.

16       3.     In the California Complaint, Plaintiffs allege that Decedent died from

17  exposure to asbestos from defendants' asbestos, asbestos-containing products and/or

18  products designed to be used in association with asbestos products.  (California

19  Complaint at ¶ 3 at 36:26-28.)  As to Lockheed Martin, Plaintiffs allege that

20  "Lockheed airframe and aircraft power plant" component parts are at issue.  (*Id.* at ¶ 3

21  at 37:19-20.)  Plaintiffs further allege that Decedent's exposure occurred while he

22  worked for the U.S. Navy in Burbank, California as an aviation cadet, aviation

23  machinist mate, and a maintenance and repair worker from 1942 through 1945.  (*Id.* at

24  Exhibit A at 57:1-10.)  Attached as Exhibit 5 is a true and correct copy of Lockheed

25  Martin's answer to the California Complaint.

26       4.     In the Oregon action, Decedent released his military records.  Lockheed

27  Martin first received a copy of Decedent's military records in the action commenced

28  by the California Complaint on January 30, 2009.  Attached as Exhibit 4 are true and

Knott & Glazier
LLP

2

**DEFENDANT LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER 28**
**U.S.C. §1442(a) (FEDERAL OFFICER)**

correct copies of Decedent's military records.  Decedent's Military Records show that on February 26, 1944, Decedent "completed 33 days of ground operation, maintenance, and care of the PV-1 aircraft at the Naval Training School (Aeronautical), Lockheed Aircraft Corp., Burbank, California."  (Military Records at 102 and 119.)

5.    Lockheed Martin manufactured military aircraft, including the U.S. Navy PV-1, for the United States Armed Forces in accordance with detailed specifications approved by the United States government and under the direct supervision, control, order, and directives of a federal officer acting under color of federal office.

6.    Decedent's military records described in paragraph 4 above, comprise the first pleading, motion, order or *other paper* from which it could be ascertained that Plaintiff's action properly should be removed to this Court.

7.    This Notice of Removal is being filed within 30 days of the time Lockheed Martin first received notice of the grounds for removal of this case.  This removal is therefore filed within the time period prescribed by law.  *See* 28 U.S.C. §1446(b).

8.    This action is one which may be removed to this Court by Lockheed Martin on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. §1442(a).

II.    **Federal Officer Removal Is Appropriate Under 28 U.S.C. §1442(a)**

9.    Removal is proper under 28 U.S.C. § 1442(a) when:  (a) the defendant seeking removal demonstrates that it is a "person" within the meaning of the statute; (b) the defendant demonstrates a causal nexus between the defendant's actions, taken pursuant to a federal officer's directions and under color of federal office, and the plaintiff's claims; and (c) the defendant asserts a "colorable federal defense".  *Mesa v. California*, 489 U.S. 121, 124-25, 134- 35 (1989); *see also Isaacson v. Dow Chemical Company*, 304 F. Supp. 2d 442 (E.D.N.Y. 2004).

**DEFENDANT LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1442(a) (FEDERAL OFFICER)**

Knott & Glazier
LLP

10.     Lockheed Martin is a "person" within the meaning of 28 U.S.C. § 1442(a).  *Green v. A.W. Chesteron Co.*, 366 F. Supp. 2d 149, 153 n.3 (D. Me 2005); *see also Winters v. Diamond Shamrock Chem. Co.*, 149 F. 3d 387, 398 (5th Cir. 1998) (holding corporate entities qualify as "persons" under § 1442(a)(1)); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

11.     Plaintiffs base their claims, in whole or in part, against Lockheed Martin on Decedent's alleged exposure to asbestos while working for the U.S. Navy as an aviation cadet, an aviation machinist mate, and a maintenance and repair worker between 1942 and 1954.  Decedent's military records identify the particular aircraft at issue as the U.S. Navy PV-1.  To the extent that the design or manufacture of this aircraft included asbestos-containing parts or components, such inclusion was explicitly and directly required by the United States government in its detailed and precise specifications through and under the direction of the Secretaries of the Departments of Defense, United States Army, Air Force and Navy.  Any decision regarding asbestos in this aircraft or the component parts thereof was under the full control and discretion of the United States government.  *See Green*, 366 F. Supp. 2d at 155-157 *citing Freiberg v. Swinerton & Walberg Prop. Servs.*, 245 F. Supp. 2d 1144 (D. Co. 2002).

12.     Lockheed Martin is entitled to federal officer removal under 28 U.S.C. § 1442(a) based upon the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940); *see also, City of Worcester v. HCA Management Co., Inc.*, 753 F. Supp. 31, 37 (D. Mass. 1990). *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract in carrying out a government function.  *See Yearsley*, 309 U.S. 18.  The *Yearsley* doctrine is satisfied here because the aircraft at issue was manufactured pursuant to validly conferred authority, and Lockheed Martin's conduct was within the bounds of that authority.  Indeed, if the Government had manufactured the aircraft

Knott & Glazier
LLP

4

**DEFENDANT LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1442(a) (FEDERAL OFFICER)**

1    itself, it would be immune from suit; that immunity must be extended to Lockheed

2    Martin who stepped into the Government's shoes.

3         13.    Lockheed Martin is also entitled to federal officer removal under 28

4    U.S.C. § 1442(a) based upon the separate and independent federal defense of

5    government contractor immunity. *Boyle v. United Technologies Corp.*, 487 U.S. 500

6    (1988); *see Green*, 366 F. Supp. 2d at 154; *Fung*, 816 F. Supp. At 573. *Boyle*

7    establishes that a government contractor is not liable for injuries caused by design

8    defects in equipment when the contractor builds such equipment according to

9    reasonably precise Government-approved design specifications. The government

10   contractor defense is satisfied here because the design specifications for this aircraft

11   were Government-approved, the aircraft conformed to those specifications, and

12   Lockheed Martin did not fail to warn the Government of any dangers known to

13   Lockheed Martin and unknown to the Government.    The government contractor

14   defense also applies to claims of failure to warn. *See Tate v. Boeing Helicopters*, 55 F.

15   3d 1150, 1157 (6th Cir. 1995).

### III.    Procedural Compliance

17        14.    Because Lockheed Martin satisfied the requirements for removal under 28

18   U.S.C. § 1442(a), it is entitled to remove this entire action. Joinder of the other

19   defendants in this action is not necessary to remove under 28 U.S.C. § 1442(a). *Ely*

20   *Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F. 2d 1310, 1314 (9th Cir. 1981).

21        15.    Lockheed Martin will comply with the Local Rules by giving notice of the

22   filing of this Notice as required by 28 U.S.C. § 1446(d).

### IV.    Conclusion

24        16.    Removal of this action is proper under 28 U.S.C. § 1442.  It is a civil

25   action brought in State Court and the Federal District Courts have original jurisdiction

26   over the subject matter under 28 U.S.C. § 1442(a)(1) because Lockheed Martin was

27   acting as an officer or agent of the United States.

28

**DEFENDANT LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1442(a) (FEDERAL OFFICER)**

1    **WHEREFORE**, Lockheed Martin Corporation requests that this action proceed

2  in this Court as properly removed action.

3  Dated:  February 4, 2009        Respectfully submitted,

4                           KNOTT & GLAZIER LLP

6                       By:

7                          Guy P. Glazier
                             Deborah M. Parker

8                           Attorneys for Defendant
                           Lockheed Martin Corporation

DEFENDANT LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1442(a) (FEDERAL OFFICER)