JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**MDL 8 7 5**

MAY – 8 2009

FILED
CLERK'S OFFICE

PLEADING NO. 5 8 3 8

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)          MDL DOCKET NO. 875

| | |
|---|---|
| WILLIAM H. DAWSON, et al.,<br>Plaintiffs,<br>v.<br>CBS CORPORATION, et al.,<br>Defendants. | UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA<br><br>CASE NO. CV09-0903 |
| JOHNIE D. PELFREY, JR., et al.,<br>Plaintiffs,<br>v.<br>FOSTER WHEELER, LLC, et al.,<br>Defendants. | UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA<br><br>CASE NO. CV09-0902 |

**RESPONSE TO PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL
TRANSFER ORDER**

**OFFICIAL FILE COPY**

IMAGED MAY 8 2009

GE'S RESPONSE TO MOTION TO VACATE CTO No. 320 -- MDL DOCKET No. 875

# TABLE OF CONTENTS

**PAGE**

I.    FACTUAL BACKGROUND ............................................................................. 3

    A.    *Dawson* Matter......................................................................................... 3

    B.    *Pelfrey* Matter ........................................................................................ 4

II.    DISCUSSION ................................................................................................... 5

    A.    Plaintiffs' Motion to Vacate the CTO Should Be Denied, Because These Cases – Like All Other Federal Asbestos Cases – Should Be Transferred to the Eastern District of Pennsylvania ................................................ 5

        1.    These Cases Should Be Transferred to the Eastern District of Pennsylvania Because They Share Common Questions of Fact With Other Asbestos Cases Consolidated There ........................................ 6

        2.    The Proper Forum for Plaintiffs' Motions to Remand is the Northern District of California.................................................................... 7

        3.    Vacating The CTO Is Not In The Interests of Justice ................................. 8

III.    CONCLUSION ................................................................................................ 10

**TABLE OF AUTHORITIES**

**PAGE**

**FEDERAL CASES**

*In re Asbestos Prods. Liab. Litig. v. Int'l Paper Co.* (2001)
    170 F. Supp. 2d 1348 ........................................................................................8

*In re Asbestos Products Liability Litigation (No. VI)*,
    771 F. Supp. 415 (JPML 1991)......................................................2, 3, 6, 7

*Boyle v. United Technologies Corp.*, (1988)
    487 U.S. 500 .....................................................................................................6

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
    333 F. Supp. 299 (S.D.N.Y. 1971).................................................................9

*In re "East of the Rockies" Concrete Pipe Antitrust Cases*,
    302 F. Supp. 244 (J.P.M.L. 1969) ...............................................................10

*In re Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litigation*,
    73 F.3d 528 (4th Cir. 1996) ..........................................................................10

*In re Ivy*,
    901 F.2d 7 (2d Cir. 1990)...............................................................................10

*Marley v. Elliot Turbomachinery, et al.*,
    2008 U.S. Dist. LEXIS 33715 (S.D. Florida 2008) .........................................7

*In re National Student Marketing Litigation*,
    368 F. Supp. 1311 (J.P.M.L. 1973)................................................................9

*O'Connell v. Foster Wheeler, et al.*,
    2008 U.S. Dist. LEXIS 27857 (D. Mass 2008)................................................7

**DOCKETED CASES**

*Johnie D. Pelfrey, et al. v. Foster Wheeler, LLC, et al*
    (CV09-0902) .....................................................................................................1

*Kelemen v. Buffalo Pumps, Inc.*
    No. CV08-712 R (C.D. Cal. Apr 14, 2008) .....................................................7

*Lindquist v. Cla-Val Co.*
    No. CV08-501 R (C.D. Cal. Apr 14, 2008) .....................................................7

1

**Table of Authorities**
**(Continued)**

2
PAGE

3   *Munn v. Cla-Val Co.*
       No. CV08-282 R (C.D. Cal. Apr 14, 2008) ...................................................................7
4

5   *Nelson v. Foster Wheeler, et al.*
       No. CV07-8338 VBF (C.D.Cal. Feb 8, 2008) .................................................................7
6

7   *Oberstar v. CBS Corp.,*
       No. CV08-118 PA (C.D. Cal. Feb 11, 2008) ...................................................................7

8
   *Reaser v. Allis Chalmers Corp., et al.*
9      No. CV08-01296 SCW (C.D.Cal. June 23, 2008) .........................................................7

10  *William H. Dawson, et al. v. CBS Corporation, et al*
       (CV09-0903) .....................................................................................................................1
11

12  *Wright v. Foster Wheeler, et al.*
       No. C07-05403 ................................................................................................................7
13
**STATUTES**

14
15  12 U.S.C. § 1404(a) ..................................................................................................................6

16  28 U.S.C. § 1407 ...........................................................................................................6, 7, 8

17  28 U.S.C. § 1442(a)(1).........................................................................................................2, 4, 7
18

19

20

21

22

23

24

25

26

27

28

Plaintiffs have filed a Motion for an Order Vacating the Conditional Transfer Order No. 320 ("CTO") applicable to these two asbestos cases.  General Electric Company ("GE") hereby opposes this motion and requests that it be denied as to both cases *William H. Dawson, et al. v. CBS Corporation, et al* (CV09-0903) and *Johnie D. Pelfrey, et al. v. Foster Wheeler, LLC, et al* (CV09-0902).  Counsel of record for GE in the *Jenkins* matter will respond in a separate briefing to the portion of plaintiffs' consolidated Motion to Vacate, which refers to that matter.

**Response To Averments Made By Plaintiffs**

1. As no discovery has gone forward in the *Dawson* and *Pelfrey* matters, GE does not have sufficient evidence to allow it to admit or deny wholly or in part plaintiffs' averment that Mr. Dawson and Mr. Pelfrey suffer from mesothelioma and have only 4 to 6 months to live. While GE admits that exposure to asbestos is the only *known* cause of mesothelioma, GE denies plaintiffs' averment that mesothelioma is caused solely by past exposure to asbestos-containing products.

2. Admit.

3. Admit.

4. Counsel of record for GE in the *Jenkins* matter will respond in a separate briefing to the portion of plaintiffs' consolidated Motion to Vacate, which refers to that matter.

5. Deny.  Plaintiffs in both *Dawson* and *Pelfrey* make claims for Negligence, Strict Liability, Failure to Warn, Breach of Warranties, Fraud and Conspiracy, Enterprise Liability, False Representation and Loss of Consortium, all of which are based upon plaintiffs' alleged exposure to GE turbines and other equipment aboard U.S. Navy vessels.  Plaintiffs make no allegations that either Mr. Dawson or Mr. Pelfrey encountered or were exposed to any GE product outside of their service aboard U.S. Navy vessels.  GE has raised a colorable government contractor defense to all of plaintiffs' claims by submitting evidence of the following: (1) the government approved reasonably precise specifications for the manufacture of GE turbines; (2) the turbines conformed to those specifications; and (3) GE warned the government about the dangers in the use of the turbines that were known to it, but not known to the government.

/ / /

1    Therefore, the Court has proper subject matter jurisdiction over these cases under 28 U.S.C.

2    section 1331.

3        6.    Admit, in so far as plaintiffs filed motions to remand.  However, the Court entered

4    orders staying both *Pelfrey* and *Dawson* pending transfer to the MDL, so no motion to remand

5    will be heard until the Panel issues a ruling on the instant Motion.

6        7.    Counsel of record for GE in the *Jenkins* matter will respond in a separate briefing

7    to the portion of plaintiffs' consolidated Motion to Vacate, which refers to that matter.

8        8.    Deny.  Numerous federal courts have denied remand in virtually identical cases

9    where the defendants removed claims originally filed in state court by invoking federal officer

10   jurisdiction under 28 U.S.C. 1442(a)(1).

11       9.    Deny.  Subject matter jurisdiction exists under 28 U.S.C. section 1331, as GE has

12   raised a colorable government contractor defense to all of plaintiffs' claims by submitting

13   evidence of the following: (1) the government approved reasonably precise specifications for the

14   manufacture of GE turbines; (2) the turbines conformed to those specifications; and (3) GE

15   warned the government about the dangers in the use of the turbines that were known to it, but not

16   known to the government.

17       10.   Deny.  Plaintiffs' purported disclaimers of all claims arising under Federal law is

18   not determinative, as subject matter jurisdiction under 1442(a)(1) is based upon a federal defense,

19   regardless of whether Plaintiffs' claims purport to rest solely upon state law.  Furthermore,

20   plaintiffs' "disclaimer" is illusory, as the only claims which Plaintiffs assert against GE relate to

21   the products which GE supplied to the U.S. Navy as a government contractor.

22       11.   Deny.  Plaintiffs' claims clearly present common issues of fact and law with the

23   previously transferred cases and there is nothing unusual about Mr. Dawson's and Mr. Pelfrey's

24   work history or alleged disease that would distinguish their cases from the other cases now

25   pending before Judge Giles.

26       12.   Deny.  This Court concluded in *In re Asbestos Products Liability Litigation (No.*

27   *VI)*, 771 F. Supp. 415 (JPML 1991) that transfer of cases of this type furthers the convenience of

28   the parties and witnesses.

-2-

GE's Response to Motion to Vacate CTO No. 320 -- MDL Docket No. 875

13.     Deny.  This Court concluded in *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (JPML 1991) that transfer of cases of this type advances the just and efficient conduct of these cases.

14.     Deny.  This Court concluded in *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (JPML 1991) that transfer of cases of this type is appropriate because they are sufficiently complex and time consuming.

15.     Deny.  This Court concluded in *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (JPML 1991) that transfer of cases of this type is appropriate, and the Court is well able to expedite its response to cases in which the plaintiffs have mesothelioma.

## I.     **FACTUAL BACKGROUND**

### A.     ***Dawson* Matter**

On January 22, 2009, a personal injury and loss of consortium asbestos-related action was filed in the Superior Court for the State of California in and for the County of Alameda against seven defendants, all of whom could raise a valid government contractor defense, including GE. It is entitled *William H. Dawson and Rita M. Dawson v. CBS Corporation, et al*, Case No. RG09-432149 (referred to herein as "*Dawson I*").[1]  That same day, plaintiffs filed a *second* personal injury and loss of consortium action, again in the County of Alameda, against approximately 55 other defendants who would not be able to assert a government contractor defense to plaintiffs' claims.  That case is entitled *William H. Dawson and Rita M. Dawson v. A.W. Chesterton Company*, Case No. RG09-432156 (hereinafter "*Dawson II*").[2]  But for a paragraph listing the names of all defendants sued (paragraph 4 of both complaints), the two complaints are identical, but plaintiffs did not file a notice of related cases in either action.

Concurrently with their *Dawson I* complaint, plaintiffs served on GE response to Alameda County General Order Standard Interrogatories to Plaintiffs.[3]  In those interrogatory responses, Plaintiffs make it clear that they seek to hold GE responsible for actions it took under

---

[1] The *Dawson I* Complaint is attached as Exhibit A to the Declaration of Katherine P. Gardiner, filed concurrently herewith.

[2] The *Dawson II* Complaint is attached as Exhibit B to the Declaration of Katherine P. Gardiner.

[3] Those Interrogatory responses are attached as Exhibit C to the Declaration of Katherine P. Gardiner.

1    the authority of officers of the United States Navy within the meaning of 28 U.S.C. section

2    1442(a)(1) – specifically, Plaintiffs claim that GE is liable to them under a variety of state law-

3    based theories arising from Mr. Dawson's alleged exposure to asbestos from GE marine turbines

4    and other equipment aboard U.S. Navy ships, including the *USS Bache*. Based on these claims,

5    and GE's federal defense to them, GE timely and properly removed this action to the Northern

6    District of California Court on March 2, 2009.[4] The case was ultimately assigned to Judge

7    William H. Alsup. At the time of the removal, GE notified the Judicial Panel on MultiDistrict

8    Litigation ("Panel") of this tag-along asbestos action.

9        GE filed a motion to stay the action pending transfer to the Eastern District of

10    Pennsylvania, which Judge Alsup granted on April 28, 2009. Plaintiffs filed a motion to remand

11    on April 1, 2009, but but the Court vacated the hearing date of that motion pending the Panel's

12    ruling on the instant Motion to Vacate.

13      **B.**    ***Pelfrey* Matter**

14        On January 16, 2009, plaintiffs filed a personal injury and loss of consortium asbestos-

15    related action in the Superior Court for the State of California in and for the County of Alameda

16    against five defendants, all of whom could raise a valid government contractor defense, including

17    GE. That case is entitled *Johnie D. Pelfrey, Jr. and Jan D. Pelfrey v. Foster Wheeler, LLC, et al*,

18    Case No. RG09-431222 (hereinafter "*Pelfrey I*").[5] That same day, plaintiffs filed a *second*

19    personal injury and loss of consortium action, again in the County of Alameda, against

20    approximately 45 other defendants who would not be able to assert a government contractor

21    defense to plaintiffs' claims. That case is entitled *Johnie D. Pelfrey, Jr. and Jan D. Pelfrey v.*

22    *Foster Wheeler, LLC, et al*, Case No. RG09-431218 (hereinafter "*Pelfrey II*").[6] But for a

23    paragraph listing the names of all defendants sued (paragraph 4 of both complaints), and an

24    / / /

---

25       [4] Though the *Dawson II* defendants are all necessary and interested parties to this litigation, because of GE's

26    statutory obligation under 28 USC section 1446(b) to remove this matter within 30 days of receipt of the pleading from which is may first be ascertained that the case is one that is removable, GE did not have sufficient time to move to consolidate *Dawson I* and *Dawson II* prior to removal.

27       [5] The *Pelfrey I* complaint is attached as Exhibit D to the Declaration of Katherine P. Gardiner.

28       [6] The *Pelfrey II* Complaint is attached as Exhibit E to the Declaration of Katherine P. Gardiner.

1  added claim for enterprise liability in *Pelfrey II* that is absent in *Pelfrey I*, the two complaints are

2  identical, but plaintiffs did not file a notice of related cases in either action.

3      The *Pelfrey I* Complaint alleges that Plaintiffs claim that GE is liable to them under a

4  variety of state law-based theories arising from Mr. Dawson's alleged exposure to asbestos from

5  propulsion equipment aboard U.S. Navy ships, including the *USS America,* the *USS Midway,* and

6  the *USS Barry*.  Based on these claims, and GE's federal defense to them, GE timely and

7  properly removed this action to the Northern District of California Court on March 2, 2009.[7]  The

8  case was ultimately assigned to Judge Elizabeth Patel.  At the time of the removal, GE notified

9  the Judicial Panel on MultiDistrict Litigation ("Panel") of this tag-along asbestos action.

10      GE filed a motion to stay the action pending transfer to the Eastern District of

11  Pennsylvania, which Judge Patel granted on April 10, 2009.  Plaintiffs filed a motion to remand

12  on April 1, 2009, but the Court vacated the hearing date of that motion pending the Panel's ruling

13  on the instant Motion to Vacate.

## II.  DISCUSSION

14

15  **A.  Plaintiffs' Motion to Vacate the CTO Should Be Denied, Because These
    Cases – Like All Other Federal Asbestos Cases – Should Be Transferred to
16  the Eastern District of Pennsylvania**

17

18      In their motion to vacate the CTO, Plaintiffs have not argued that their cases somehow do

19  not present common questions of fact with the other asbestos cases previously transferred to the

20  Eastern District.  This is not surprising, since Plaintiffs' claims clearly present common issues of

21  fact and law with the previously transferred cases.  There is nothing unusual about Mr. Dawson's

22  and Mr. Pelfrey's work histories or alleged diseases that would distinguish their cases from the

23  other cases now pending before Judge Giles.  These cases will present the usual kinds of

24  questions of fact common to pretrial proceedings in all other asbestos personal injury cases —

25  questions relating to Plaintiffs' work history, the nature and duration of their alleged exposure to

26

27  [7] Though the *Pelfrey II* defendants are all necessary and interested parties to this litigation, because of GE's statutory obligation under 28 USC section 1446(b) to remove this matter within 30 days of receipt of the pleading from which is may first be ascertained that the case is one that is removable, GE did not have sufficient time to move

28  to consolidate *Pelfrey I* and *Pelfrey II* prior to removal.

1    asbestos, the identification of those asbestos products, and the nature and causation of Plaintiffs'

2    alleged disease.  Moreover, insofar as GE is concerned, these cases will involve the applicability

3    of the government contractor defense, as set forth in *Boyle v. United Technologies Corp.*, (1988)

4    487 U.S. 500, to Plaintiffs' claims against it.  Accordingly, for the reasons set forth in *In re*

5    *Asbestos Products Liability Litigation (No. VI)*, these cases should be transferred to the Eastern

6    District of Pennsylvania for coordinated pretrial proceedings before Judge Giles.

7          1.     **These Cases Should Be Transferred to the Eastern District of Pennsylvania**

               **Because They Share Common Questions of Fact With Other Asbestos Cases**

8                   **Consolidated There**

9

10          Plaintiffs offer virtually no legal support for their motion grounded in either the statute

11   embodying Congress's desire that federal actions of certain kinds be consolidated in particular

12   federal courts (*see* 28 U.S.C. Section 1407), in this Panel's 1991 decision to consolidate all

13   federal asbestos actions in the Eastern District of Pennsylvania, or in any other statute or case

14   law.  Plaintiffs do not – because they cannot – offer any evidence that the *Dawson* and *Pelfrey*

15   cases do not share "common questions of fact" (*see* 28 U.S.C. Section 1407(a)) with other

16   asbestos actions consolidated in that district court.  According to 28 U.S.C. Section 1407(a), civil

17   actions involving "one or more common questions of fact" may be transferred to a particular

18   district for consolidated pretrial proceedings.  Transfers to the appropriate district court "*shall* be

19   made by the judicial panel  . . . upon its determination that transfers for such proceedings will be

20   for the convenience of the parties and witnesses and will promote the just and efficient conduct

21   of such actions." (*Id.;* emphasis added.)  In its 1991 decision transferring all federal asbestos

22   actions to the Eastern District of Pennsylvania, this Panel noted that the proper forum for

23   resolution of pretrial substantive and procedural issues – such as plaintiffs' Motion for Remand

24   in these cases – is "the transferee court."  *See In re Asbestos Products Liability Litigation (No.*

25   *VI)*, 771 F.Supp. 415, 421 (J.P.M.L 1991), *citing* 28 U.S.C. Section 1407(a).  According to the

26   CTO transferring this action, scores of federal asbestos cases have been transferred to the Eastern

27   District of Pennsylvania.  In subsequent asbestos transfer orders, the Panel has stated time and

28   again that "in the Panel's original decision [*In Re Asbestos Products Liability Litigation (No.*

1    VI)], distinctions based on such matters as *the pendency of motions* . . . before the transferor

2    court, the uniqueness of a party's status, the stage of pretrial proceedings, [and] the presence of

3    unique claims . . . were considered and rejected by the Panel as grounds for carving out

4    exceptions to transfer in this extraordinary docket." *Id.*  Plaintiffs offer no argument as to how

5    their cases differ in any relevant aspect from the other federal asbestos cases pending in the

6    MDL, nor any reasons why they should be treated differently from them.

7    **2.    The Proper Forum for Plaintiffs' Motions to Remand is the Northern District**

8    **of California**

9          Instead of providing any factual or legal argument for vacating the CTO, Plaintiffs

10   dedicate over ten pages of their present motion to a substantive argument in favor of remanding

11   their cases to Alameda County Superior Court.  Plaintiffs are making this argument to the wrong

12   court.  Under its governing statute, 28 U.S.C. § 1407, this Court has the power only to transfer

13   cases to federal district courts for "coordinated or consolidated pretrial proceedings," and to

14   ensure cases so transferred are returned to the federal transferor court upon the conclusion of

15   such proceedings.  Plaintiffs' arguments should be made — and, in fact, have been made — in

16   papers filed in the District Court for the Northern District of California.  Here, GE has opposed

17   Plaintiffs' Motions for Remand with sufficient evidence and authorities to sustain its removal,

18   both as to the timeliness of the removal and as to the appropriateness of the removal under 28

19   U.S.C. § 1442(a)(1) (the "federal officer removal" statute).[8] [9]

20   / / /

21        [8]    GE has opposed Plaintiffs' motion to remand in the *Dawson* matter.  However, as the Court ordered a stay
22   in all proceedings in the *Pelfrey* matter before any opposition to plaintiffs' motion to remand was due, GE did not
     file an opposition to Plaintiffs' motion to remand in that case.  GE is prepared to set forth all relevant evidence and
23   authorities to sustain its removal in *Pelfrey* should this Panel so request.
          [9]    GE has recently defeated similar remand motions made under substantially similar facts, as set forth in the
24   Central District and Northern District of California's orders denying remand in *Reaser v. Allis Chalmers Corp., et al.*
     No. CV08-01296 SCW (C.D.Cal. June 23, 2008); *Wright v. Foster Wheeler, et al.* No. C07-05403 MJJ (N.D. Cal.
25   Feb 21, 2008); *Oberstar v. CBS Corp.*, No. CV08-118 PA (C.D. Cal. Feb 11, 2008), *Nelson v. Foster Wheeler, et al.*
     No. CV07-8338 VBF (C.D.Cal. Feb 8, 2008); *Lindquist v. Cla-Val Co.*, No. CV08-501 R (C.D. Cal. Apr 14, 2008),
26   *Kelemen v. Buffalo Pumps, Inc.*, No. CV08-712 R (C.D. Cal. Apr 14, 2008), and *Munn v. Cla-Val Co.*, No. CV08-
     282 R (C.D. Cal. Apr 14, 2008).  *See* Gardiner Decl., ¶ 4 and Exh. C.  *See also Marley v. Elliot Turbomachinery, et*
27   *al.*, 2008 U.S. Dist. LEXIS 33715 (S.D. Florida 2008) *and O'Connell v. Foster Wheeler, et al.*, 2008 U.S. Dist.
     LEXIS 27857 (D. Mass 2008), attached as Exhibit F to the Declaration of Katherine P. Gardiner, filed concurrently
28   herewith.

1    This Panel has made it perfectly clear that transferor "courts wishing to address such

2    motions [to remand] have adequate time in which to do so, those courts concluding that such

3    issues should be addressed by the transferee judge need not rule on them, and the process of 1407

4    transfer in MDL-875 can continue without any unnecessary interruption or delay." *In re*

5    *Asbestos Prods. Liab. Litig. v. Int'l Paper Co.* (2001) 170 F. Supp. 2d 1348, 1349 fn. 1.   That is

6    precisely the process that is occurring here – the Court in both the *Dawson* and *Pelfrey* matters

7    has already had ample opportunity to address plaintiffs' motions to remand and has instead ruled

8    that any hearing on those motions to remand should be stayed pending transfer of these cases to

9    the MDL.

10    This Panel has similarly made it clear that the Eastern District of Pennsylvania is wholly

11    capable of ruling on any Motion to Remand that Plaintiffs may bring in that Court:

12    > Finally, with respect to any parties that believe the uniqueness of their particular
> situation renders inclusion of their action in MDL-875 unnecessary or inadvisable,

13    > we are confident that [the Eastern District of Pennsylvania Judge] will continue to
> promptly review arguments for returning transferred actions or claims to their

14    > transferor courts and will take all appropriate steps to assure their speedy return

15    > whenever he is convinced that retention in the MDL-875 proceedings is no longer
> needed.

16

17    *In re Asbestos Prods. Liab. Litig., supra*, 170 F. Supp. 2d at 1350.

18    Because the Panel has the authority to transfer these actions despite the pendency of

19    plaintiffs' motions to remand, because the Northern District of California court has already

20    exercised its discretion in staying Plaintiffs' Motions to Remand pending transfer of these cases

21    to the Eastern District of Pennsylvania, and because the Eastern District of Pennsylvania is well

22    positioned to handle such issues in a coordinated and consolidated manner -- because such

23    coordination or consolidation promotes judicial efficiency and consistency in keeping with the

24    congressional aims of Section 1047 -- this Panel should deny Plaintiffs' Motion to Vacate and

25    proceed with the transfer of this matter to MDL-875.

26    **3.      Vacating The CTO Is Not In The Interests of Justice**

27    Plaintiffs' motion states, without any evidentiary support, that Mr. Dawson and Mr.

28    Pelfrey are dying and it is therefore in the interests of justice to vacate the CTO.  However,

1    Plaintiffs have failed to provide this Court or GE with any information at all regarding the

2    current state of Plaintiffs' health.  Plaintiffs have not presented the Court or GE with any medical

3    records or treating physician's declarations that prove Mr. Pelfrey and Mr. Dawson are in danger

4    of an imminent death.  To the contrary, Plaintiffs' actions in this case have shown a surprising

5    disregard of timeliness and no sense of urgency.  Though Plaintiffs' cases were removed to the

6    Northern District of California on March 2, 2009, Plaintiffs waited until April 1, a month later, to

7    bring a motion to remand the case to state court.  Similarly, though this Panel issued its

8    Conditional Transfer Order on March 25, 2009, Plaintiffs again waited nearly a month, until

9    April 20, to move to vacate that order.

10            Furthermore, Plaintiffs have filed and are prosecuting separate state court actions on

11   behalf of Mr. Pelfrey and Mr. Dawson-- based upon the same alleged exposure to asbestos at

12   issue in these Federal cases -- against between 45 and 55 named defendants and hundreds of Doe

13   defendants.  Those cases are currently pending in  the California Superior Court for the County of

14   Alameda.  Clearly no real prejudice will result to Plaintiffs should the JPML transfer these two

15   separately filed cases to the Eastern District of Pennsylvania.  However, the convenience of, or

16   hardship to, individual plaintiffs is irrelevant to this Panel's transfer analysis.  In the context of

17   multidistrict litigation, the convenience of the parties and witnesses must be viewed from a

18   comprehensive group perspective rather than from the perspective of any one party or witness.

19   *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 333 F. Supp. 299,

20   304 (S.D.N.Y. 1971) (construing 12 U.S.C. § 1404(a), which uses the same language as the

21   multidistrict litigation statute, and stating that, "instead of looking to the individual convenience

22   of *each* party and *each* witness, the court must look to the overall convenience of all parties and

23   witnesses").  This Panel "must weigh the interests of all the plaintiffs and all the defendants, and

24   must consider multiple litigation as a whole in light of the purposes of the law."  *In re Nat'l*

25   *Student Mktg. Litig.*, 368 F. Supp. 1311, 1317 (J.P.M.L. 1973) (internal quotation marks

26   omitted).  Because there are "a number of inherent inconveniences in transfers for coordinated or

27   consolidated pretrial" proceedings, the "basic question before the Panel is ... whether the

28   objectives of the statute are sufficiently served to justify the necessary inconveniences of transfer

1  and remand." *In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F. Supp. 244, 254-

2  55 (J.P.M.L. 1969) (Weigel, J., concurring).

3        Transfer to the MDL is to "promote the just and efficient conduct" of the actions, and

4  implements the prime objective of the multidistrict litigation statute, which Congress enacted "as

5  a means of conserving judicial resources in situations where multiple cases involving common

6  questions of fact were filed in different districts." *In re Food Lion, Inc., Fair Labor Standards*

7  *Act "Effective Scheduling" Litig.*, 73 F.3d 528, 531-32 (4th Cir. 1996); *see also In re Ivy*, 901

8  F.2d 7, 9 (2d Cir. 1990) ("It is expected that such transfer is to be ordered only where significant

9  economy and efficiency in judicial administration may be obtained.") (*quoting* H.R. Rep. No.

10  1130 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900) (internal quotation marks omitted).

11                  **III.**   **CONCLUSION**

12        For all of the reasons discussed above, GE respectfully requests that Plaintiffs' Motion To

13  Vacate the Conditional Transfer Order be denied.

14  Dated:  May 7, 2008               SEDGWICK, DETERT, MORAN & ARNOLD LLP

15

16                  By _____

17                       Katherine P. Gardiner
                     Charles T. Sheldon

18                       Sedgwick, Detert, Moran & Arnold LLP
                     One Market Plaza, Steuart Tower, 8th Floor

19                       San Francisco, CA  94105
                     415-781-7900 (phone) / 415-781-2635 (facsimile)

20                       Attorneys for Defendant
                     GENERAL ELECTRIC COMPANY

21

22

23

24                                        RECEIVED
CLERK'S OFFICE

25                           JUDICIAL PANEL ON MULTIDISTRICT LITIGATION    2009 MAY - 8  A 10: 11

26

27

28

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 8 2009

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)                MDL DOCKET NO. 875

| | |
|---|---|
| WILLIAM H. DAWSON, et al., <br>     Plaintiffs, <br>     v. <br> CBS CORPORATION, et al., <br>     Defendants. | UNITED STATES DISTRICT COURT <br> NORTHERN DISTRICT OF CALIFORNIA <br><br> CASE NO. CV09-0903 |
| JOHNIE D. PELFREY, JR., et al., <br>     Plaintiffs, <br>     v. <br> FOSTER WHEELER, LLC, et al., <br>     Defendants. | UNITED STATES DISTRICT COURT <br> NORTHERN DISTRICT OF CALIFORNIA <br><br> CASE NO. CV09-0902 |

**DECLARATION OF KATHERINE P. GARDINER IN SUPPORT OF DEFENDANT
GENERAL ELECTRIC COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO
VACATE THE CONDITIONAL TRANSFER ORDER**

I, KATHERINE P. GARDINER, declare as follows:

    1.    I am an associate in the law firm of Sedgwick, Detert, Moran & Arnold,

attorneys of record for defendant General Electric Company ("GE"). I am duly licensed to

1  practice law before this court, and in all the courts of the State of California.  The facts contained

2  herein are of my own personal knowledge, except those matters specifically stated on

3  information and belief and as to those I believe them to be true.  If called upon to testify, I would

4  and could competently state as follows.

5          2.      Attached hereto as Exhibit A is a true and correct copy of the Complaint

6  and Preliminary Fact Sheet, filed and served on GE, in *William H. Dawson and Rita M. Dawson*

7  *v. CBS Corporation, et al*, Case No. RG09-432149, now pending before the United States

8  District Court for the Central District of California as Case No. CV 09-00903 WHA.

9          3.      Attached hereto as Exhibit B is a true and correct copy of the Complaint

10  and Preliminary Fact Sheet, filed and served on approximately fifty-five named defendants and

11  five hundred Doe defendants, in *William H. Dawson and Rita M. Dawson v. A.W. Chesterton*

12  *Company*, Case No. RG09-432156, now pending before the Superior Court of California, County

13  of Alameda.

14          4.      Attached hereto as Exhibit C is a true and correct copy of plaintiffs'

15  response to Alameda County General Order Standard Interrogatories to Plaintiffs in the *Johnie D.*

16  *Pelfrey* matter now pending before the United States District Court for the Central District of

17  California as Case No. CV 09-00903 WHA.

18          5.      Attached hereto as Exhibit D is a true and correct copy of the Complaint

19  and Preliminary Fact Sheet, filed and served on GE, in *Johnie D. Pelfrey, Jr. and Jan D. Pelfrey*

20  *v. Foster Wheeler, LLC, et al*, Case No. RG09-431222, now pending before the United States

21  District Court for the Central District of California as Case No. CV 09-00902 MHP.

22          6.      Attached hereto as Exhibit E is a true and correct copy of the Complaint

23  and Preliminary Fact Sheet, filed and served on approximately forty-five named defendants and

24  five hundred Doe defendants, in *Johnie D. Pelfrey, Jr. and Jan D. Pelfrey v. Foster Wheeler,*

25  *LLC, et al*, Case No. RG09-431218, now pending before the Superior Court of California,

26  County of Alameda.

27          7.      Attached hereto collectively as Exhibit F are true and correct copies of the

28  Courts' Orders Denying Remand in *Reaser v. Allis Chalmers Corp., et al*. No. CV08-01296

1   SCW (C.D.Cal. June 23, 2008); *Wright v. Foster Wheeler, et al.* No. C07-05403 MJJ (N.D. Cal.

2   Feb 21, 2008); *Oberstar v. CBS Corp.,* No. CV08-118 PA (C.D. Cal. Feb 11, 2008), *Nelson v.*

3   *Foster Wheeler, et al.* No. CV07-8338 VBF (C.D.Cal. Feb 8, 2008); *Lindquist v. Cla-Val Co.,*

4   No. CV08-501 R (C.D. Cal. Apr 14, 2008), *Kelemen v. Buffalo Pumps, Inc.,* No. CV08-712 R

5   (C.D. Cal. Apr 14, 2008), *Munn v. Cla-Val Co.,* No. CV08-282 R (C.D. Cal. Apr 14, 2008),

6   *Marley v. Elliot Turbomachinery, et al.,* 545 F. Supp. 2d 1266 (S.D. Florida 2008) and

7   *O'Connell v. Foster Wheeler, et al.,* 544 F. Supp. 2d 51 (D. Mass 2008.)

8           I declare under penalty of perjury under the laws of the State of California that the

9   foregoing is true and correct.

10          Executed this 6th day of May, 2009, at San Francisco, California.

11

12  By     *[signature]*

13  Katherine P. Gardiner
    Sedgwick, Detert, Moran & Arnold LLP

14  One Market Plaza, Steuart Tower, 8th Floor
    San Francisco, CA  94105

15  415-781-7900 (phone) / 415-781-2635 (facsimile)
    Attorneys for Defendant

16  GENERAL ELECTRIC COMPANY

17

18

19

20

21

22

23

24

25

26

27

28

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 8 2009

FILED
CLERK'S OFFICE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)                MDL DOCKET NO. 875

| | |
|---|---|
| WILLIAM H. DAWSON, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>CBS CORPORATION, et al.,<br>　　　　Defendants. | UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA<br><br>CASE NO. CV09-0903 |
| JOHNIE D. PELFREY, JR., et al.,<br>　　　　Plaintiffs,<br>　　v.<br>FOSTER WHEELER, LLC, et al.,<br>　　　　Defendants. | UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA<br><br>CASE NO. CV09-0902 |

**PROOF OF SERVICE**

2009 MAY - 8 A 10: 12
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION
RECEIVED
CLERK'S OFFICE

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market Plaza, Steuart Tower, 8th floor, San Francisco, California 94105.  On May 8, 2009, I served the within document(s):

**RESPONSE TO PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER**

**DECLARATION OF KATHERINE P. GARDINER IN SUPPORT OF DEFENDANT GENERAL ELECTRIC COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER**

☐　　MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐　　PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒　　OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via California Overnite.

Richard Brody, Esq.　　　　　　　　　　　Attorneys For Plaintiffs
Brent Coon and Associates
44 Montgomery Street, Suite 800
San Francisco, CA  94104
Tel: (415)489-7420
Fax: (415)489-7426

US District Court-Northern District of California　　　E-filed
450 Golden Gate Avenue
San Francisco, CA  94102

*All Other Counsel on Attached Schedule of Involved Counsel List (Excerpted From CRO-320) Served Via Overnight Courier

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on May 8, 2009, at San Francisco, California.

Christine P. Tapang

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

## SCHEDULE OF ACTIONS/INVOLVED COUNSEL LIST (EXCERPTED FROM CTO-320)

### Northern District of California

Johnie D. Pelfrey, Jr., et al. v. Foster Wheeler, LLC, et al., C.A. No. 3:09-902  (Judge Marilyn Hall Patel)
William H. Dawson, et al. v. CBS Corp., et al., C.A. No. 3:09-903  (Judge Elizabeth D. Laporte)

### Southern District of California

Michael E. Jenkins v. Allied Packing & Supply, Inc., et al., C.A. No. 3:09-101  (Judge Dana M. Sabraw)

Peter G. Angelos
LAW OFFICES OF PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201

Julie R. Beaton
KUTAK ROCK
18201 Von Karman Avenue
Suite 1100
Irvine, CA 92612-1077

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Richard A. Brody
BRENT COON & ASSOCIATES
44 Montgomery Street
Suite 800
San Francisco, CA 94104

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street, Suite 3000
Chicago, IL 60602-2415

Guillermo Escobedo
GORDON & REES LLP
101 West Broadway
Suite 2000
San Diego, CA 92101-3541

Katherine Paige Gardiner
SEDGWICK DETERT MORAN & ARNOLD LLP
One Market Plaza
8th Floor
San Francisco, CA 94105

Stephanie A. Hingle
KUTAK ROCK LLP
515 South Figueroa Street
Suite 1240
Los Angeles, CA 90071-3329

Steven K. Hwang
PERKINS & COIE
1620 26th Street
6th Floor
Santa Monica, CA 90404

**MDL No. 875 - Schedule of Actions/Involved Counsel List (Excerpted from CTO-320) (Continued)**

Kevin D. Jamison
POND NORTH LLP
350 South Grand Avenue
Suite 2850
Los Angeles, CA 90071

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Steven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street
Third Floor
Oakland, CA 94607

Maureen L. King
BARG COFFIN LEWIS & TRAPP LLP
350 California Street
22nd Floor
San Francisco, CA 94104-1435

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
HUNTON & WILLIAMS
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Peter B. Langbord
FOLEY & MANSFIELD PLLP
150 South Los Robles Avenue
Suite 400
Pasedena, CA 91101

Carrie Lin
COOLEY MANION JONES HAKE ET AL
201 Spear Street
Suite 1800
San Francisco, CA 94105

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER &
MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105

**MDL No. 875 - Schedule of Actions/Involved Counsel List (Excerpted from CTO-320) (Continued)**

Thomas Jeffrey Moses
BRYDON HUGO & PARKER
135 Main Street
20th Floor
San Francisco, CA 94105

Stephen Robert Onstot
WALSWORTH FRANKLIN BEVINS &
MCCALL
633 West Fifth Street
28th Floor
Los Angeles, CA 90071

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Francis D. Pond
POND NORTH LLP
350 South Grand Avenue
Suite 2850
Los Angeles, CA 90071

Glen R. Powell
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
20th Floor
San Francisco, CA 94111

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Dee Dee Stephens
BRENT COON & ASSOCIATES
44 Montgomery Street
Suite 800
San Francisco, CA 94104

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ & TARDY
PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Yakov Paul Wiegmann
SCHIFF HARDIN LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Don Willenburg
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
20th Floor
San Francisco, CA 94111

Dennis M. Young
FOLEY & MANSFIELD PLLP
1111 Broadway
10th Floor
Oakland, CA 94607

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 8 2009

FILED
CLERK'S OFFICE

**Exhibit A**

1 | Richard A. Brody, ESQ. (SBN 100379)
Kathleen K. Chio, ESQ. (SBN 245388)
2 | BRENT COON & ASSOCIATES
44 Montgomery Street, Suite 800
3 | San Francisco, CA 94104
Telephone: 415.489.7420
4 | Facsimile: 415.489.7426

5 | Attorneys for Plaintiffs

ENDORSED
FILED
ALAMEDA COUNTY

JAN 29 2009

CLERK OF THE SUPERIOR COURT
By _____ E. DAWSON _____
Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

WILLIAM H. DAWSON and RITA M.
DAWSON
      Plaintiffs,

v.

CBS CORPORATION, a Delaware corporation,
f/k/a VIACOM, INC., successor by merger to
CBS CORPORATION, a Pennsylvania
corporation, f/k/a WESTINGHOUSE ELECTRIC
CORPORATION; B.F. STURTEVANT CO. and
WESCO CORPORATION; FOSTER
WHEELER, LLC; GENERAL ELECTRIC
COMPANY; LESLIE CONTROLS, INC.; VIAD
CORPORATION, individually and as parent,
alter ego, and/or the entity formerly known as
THE DIAL CORPORATION, individually and as
successor in interest to GRISCOM-RUSSELL
COMPANY; WARREN PUMPS LLC; and
DOES 1-500, inclusive,

      Defendants.

Case No. **09432149**

**COMPLAINT FOR DAMAGES
(PERSONAL INJURY--ASBESTOS)**

1. **Negligence**
2. **Strict Products Liability**
3. **Failure to Warn**
4. **Breach of Warranties**
5. **Fraud and Conspiracy**
6. **Enterprise Liability**
7. **False Representation Under
   Restatement Torts Section 402-B**
8. **Loss of Consortium**
**Punitive Damages**

Plaintiffs WILLIAM H. DAWSON and RITA M. DAWSON (hereinafter "plaintiff")

complain of all defendants, and each of them, and allege:

/ / /

1

*Dawson v. CBS Corporation, et al.*

COMPLAINT FOR DAMAGES (PERSONAL
INJURY--ASBESTOS)

**GENERAL ALLEGATIONS**

1.     Plaintiffs bring this action on their own behalf and are hereinafter referred to as "plaintiff."  Plaintiffs know of no other parties who should be named as a plaintiff herein.

2.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 500, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe and thereon allege that each of said fictitiously named defendants are, through their negligence, intentional torts, and/or conduct giving rise to strict liability, responsible or liable in some manner for the occurrences herein alleged, and that the injuries herein alleged were the direct and legal result of said negligence, intentional torts, and/or conduct giving rise to strict liability.

3.     At all times mentioned in this complaint, each of the defendants was the agent and employee of each of the remaining defendants, and by their actions as alleged in this complaint each defendant was acting within the course and scope of this agency and employment, and each defendant has ratified and approved the acts of the remaining defendants.  The Federal Courts lack subject matter jurisdiction over this action as there is no federal question and incomplete diversity of citizenship exists due to the presence of one or more California defendants.  Removal is improper.  Every claim arising under the constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office).  No claim of admiralty or maritime law is raised.  Plaintiff sues no foreign state or agency. Venue is proper in Alameda County, California because the USS Proteus (AS-19) was laid down by the Moore Shipbuilding and Drydock Company in Oakland, California, on September 15, 1941. While in the U.S. Navy, Plaintiff served aboard the USS Proteus as an Engineman. Plaintiff worked with asbestos-containing diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and valves, which included

*Dawson v. CBS Corporation, et al.*         COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1    asbestos-containing components. He worked in the engine room and all over the ship and made

2    repairs to the equipment as necessary.

3        4.    CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor by

4    merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE

5    ELECTRIC CORPORATION; B.F. STURTEVANT CO; and WESCO CORPORATION;

6    FOSTER WHEELER, LLC; GENERAL ELECTRIC COMPANY; LESLIE CONTROLS, INC.;

7    VIAD CORPORATION, individually and as parent, alter ego, and/or the entity formerly known as

8    THE DIAL CORPORATION, individually and as successor in interest to GRISCOM-RUSSELL

9    COMPANY; WARREN PUMPS LLC; and DOES 1-500, inclusive, are at all times herein

10   mentioned, and were corporations or other business entities organized and existing under the laws

11   of the state of California and/or qualified to do business in this state.

12       5.    At all times mentioned herein, defendants, and each of them, were engaged in the

13   business of mining, milling, manufacturing, testing, developing, processing, importing, converting,

14   compounding, assembling, fabricating, modifying, designing, specifying, approving, supplying,

15   distributing, delivering, packaging, labeling, advertising, marketing, warranting, applying,

16   installing, and inspecting asbestos, and products produced therefrom, for sale to and use by

17   members of the general public, as well as for sale to and use by other parties to manufacture,

18   assemble, supply, distribute, label, apply and install products made therefrom, or both.

19       6.    The defendants, and each of them, acting through their agents, servants and/or

20   employees, cause, and have caused in the past, certain asbestos-containing products and asbestos-

21   related insulation, refractory materials, fireproofing, gasket and packing materials, bulkhead

22   insulation, decking materials, rope, cloth, tile flooring, boiler and turbine covers, equipment, as

23   well as various automotive gaskets, brakes, clutch and other materials to be placed on the market

24   and in the stream of interstate commerce with the result that said products and materials came into

25   use by plaintiff and those working in close proximity to plaintiff at relevant times herein.

26       7.    Plaintiff WILLIAM H. DAWSON was exposed to asbestos during the course of his

27   life in the manner and during the time periods set forth below:

28   ///

*Dawson v. CBS Corporation, et al.*                COMPLAINT FOR DAMAGES (PERSONAL
                                                   INJURY--ASBESTOS)

1  Plaintiff was employed at the following locations where he alleges possible exposure to

2  asbestos:

| Job Title | Employer | Site/Duties | Years |
|---|---|---|---|
| MECHANICS' HELPER; LABORER | AMOCO SERVICE STATION | **AMOCO SERVICE STATION** (Fayetteville Street, Asheboro, NC) Minor repair work was performed on various automobiles including but not limited to Fords, GMs, Chryslers, Packards, Studebakers, and Internationals. As a young trainee, others supervised Plaintiff when he assisted in replacing brakes and performing tuneups on the mentioned vehicles. | 1956 to 1958 |
| ENGINEMAN | UNITED STATES NAVY | **USS GENESSEE AOG-8** Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine room and all over the ship and made repairs to the equipment as necessary. | 1958 to 1962 |
| ENGINEMAN | UNITED STATES NAVY | **USS BACHE DD-470** Plaintiff worked with the steam engines and boilers, helping the machinist mates and boiler technicians. He stood watch in the engine room. He recalls during his time on the Bache, the steam pipes and valves were removed, re-lagged at the shipyard, and replaced on ship. Plaintiff was involved in the maintenance and repair of all machinery aboard the ship—including the steam engines, boilers, pumps, valves, and other equipment. | 1962 to 1966 |
| COMPANY COMMANDER | UNITED STATES NAVY | **GREAT LAKES (IL) TRAINING CENTER** Plaintiff trained recruits for one year, and taught fire-fighting school for three years. | 1966 to 1970 |
| ENGINEMAN | UNITED STATES NAVY | **USS PROTEUS AS-19 (Guam)** Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, | 1970 to 1972 |

4

*Dawson v. CBS Corporation, et al.*     COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

| Job Title | Employer | Site/Duties | Years |
|---|---|---|---|
| | | evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine room and all over the ship and made repairs to the equipment as necessary. | |
| ENGINEMAN | UNITED STATES NAVY | USS HUNLEY AS-31 (Guam) Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine room and all over the ship and made repairs to the equipment as necessary.<br><br>PUGET SOUND NAVAL SHIPYARD/BREMERTON NAVY YARD Plaintiff helped with the overhaul of the USS Hunley at Puget Sound Naval Shipyard/Bremerton Navy Yard. He worked on the engines and supervised the repair work. He overhauled the pumps (including centrifugal and reciprocating pumps) and replaced the rope packing in the pumps. He repaired and repacked valves. The overhaul involved repairing various machinery, such as the boilers and engines aboard the ship. Plaintiff also performed preventive maintenance on the ship. | 1972 to 1973 |
| ENGINEER | UNITED STATES NAVY | MAYPORT NAVAL STATION (FL) Plaintiff worked on a tug base working on tugboats in the engine shop on land. Plaintiff was in charge of engineering and worked on small tugs and small boats. | 1974 to 1976 |
| FLEET TRAINING INSTRUCTOR-- ENGINES | UNITED STATES NAVY | GUANTANAMO BAY NAVAL BASE, CUBA (GITMO) Plaintiff was a Fleet Training Instructor for ships that participated in fleet training exercises in order for Navy ships to be war-ready. Training included gunnery, navigation, and engineering components. Plaintiff would assist in the training of people in the engine rooms by holding drills. | 1976 to 1977 |

5

| Job Title | Employer | Site/Duties | Years |
|---|---|---|---|
| ENGINEER/ MECHANIC | UNITED STATES NAVY | **NAVAL AIR STATION JACKSONVILLE (FL)** Plaintiff worked in a shop that involved taking care of equipment with small engines, such as lawnmowers, weed whackers, etc. | 1977 to 1978 |
| DIESEL MECHANICS INSTRUCTOR | FLORIDA JUNIOR COLLEGE, JACKSONVILLE, FL | **FLORIDA JUNIOR COLLEGE, JACKSONVILLE, FL** Plaintiff taught a class on diesels and trucks. Plaintiff taught repairing tractor trailer trucks, including but not limited to International Harvester, Mack, International Trucks, and Freightliner, trucks. Plaintiff also recalls General Motors, Ford, Chrysler automobiles and pick-ups. Plaintiff taught engine work—including completely rebuilding engines. Plaintiff also taught brake mechanic work, clutch work, and air compressors. He performed brake and clutch work. | 1978 to 1985 |
| MECHANIC | NORTH CAROLINA LUMBER COMPANY | **ASHEBORO, NC** Plaintiff's duties included keeping conveyors moving, fixing chains and sprockets. Plaintiff worked on forklifts—he replaced the bearings in the forks, fixed alternators, worked on engines and brakes. | 1987 to 1988 |
| MECHANIC | BIO MASS ENERGY CO. | **ASHEBORO, NC** Plaintiff worked for this company that would take shavings from the planar mill to smolder, which would produce methane gas to run through the engines and make electricity. Plaintiff rebuilt these engines to run. Plaintiff worked with gaskets and packing. | 1988 to 1990 |
| MECHANIC | SELLERS' TRUCKING AND GARAGE | **BLACKANKLE, NC** Plaintiff worked as a mechanic at this garage. He and another mechanic fixed tractor-trailer trucks and performed brake jobs and pulled clutches. | 1990 to 1992 |
| MECHANIC | RENTAL TOOLS AND EQUIPMENT CO. | **GREENSBORO, NC** Plaintiff worked as a mechanic on various equipment including bulldozers and hauling equipment, including bobcats and Mack trucks. Plaintiff worked on brakes for trucks and trailers. Plaintiff serviced at Ford L350 trucks. | 1993 to 1997 |

6

8.    During the course and scope of his employment, plaintiff continually worked with and in close proximity to others who were working with asbestos and asbestos-containing products. He routinely and regularly worked in close proximity to asbestos and asbestos-containing products and was continually exposed to asbestos fibers which were released from asbestos and asbestos-containing products which were mined, milled, manufactured, processed, imported, converted, compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and sold by defendants, and each of them.

Throughout his adult life, Plaintiff was a shadetree mechanic and thus also performed automotive mechanical work on vehicles for his family, friends, and neighbors, at various locations. During Plaintiff's naval career, while on shore duty, Plaintiff performed brake repair on various automobiles at U.S. Navy Hobby Shops. Some cars that he worked on include, but are not limited to Fords, Chevrolets, GMs, Nashes, Packards, Kaisers, and Studebakers.

9.    Plaintiff's exposure to asbestos was the direct and legal cause of his development of an asbestos-related disease known and designated as mesothelioma and other illnesses and disabilities whose relationship to asbestos is as yet unknown to plaintiff herein.

## FIRST CAUSE OF ACTION

### (Negligence)

10.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations.

11.    At all times relevant herein, defendants and each of them, owed a duty of due care which required them to exercise ordinary care to protect against an unreasonable risk of harm.  This duty was owed to plaintiff.

12.    Plaintiff's development of mesothelioma and related conditions is the direct and legal result of the conduct of the defendants, and each of them, in that they negligently and carelessly researched, tested or failed to test, manufactured, designed, specified, developed, labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed, distributed and supplied asbestos and asbestos-containing products.  Defendants, and each of them,

7

*Dawson v. CBS Corporation, et al.*                COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1 | without any adequate warning to the consumer or user, produced, sold, and otherwise put into the
2 | stream of interstate commerce the foregoing materials which said defendants, and each of them,
3 | knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and
4 | highly harmful to plaintiff's body, lungs, respiratory system, skin and health.  Further, defendants,
5 | and each of them, knew, or through the exercise of ordinary care should have known, that exposure
6 | to asbestos is, and at all times relevant herein has been, associated with terminal and incurable
7 | diseases which have caused and continue to cause death.

8 | 13.    During the time period when plaintiff was exposed to asbestos in the manner
9 | described above, he had no knowledge that said exposure placed him at risk for developing the
10 | diseases described herein and therefore had no opportunity, nor can he be charged with a duty or
11 | breach of duty, to protect himself against said harmful asbestos exposure.  Plaintiff had no
12 | knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them,
13 | were actionable at law when they were committed and cannot be charged with knowledge or
14 | inquiry thereof.

15 | 14.    The mesothelioma and related conditions that afflict plaintiff developed at a
16 | microscopic and undetectable level over an extended period of time, without noticeable trauma, and
17 | was therefore unknown and unknowable to plaintiff until his physicians diagnosed him with
18 | mesothelioma and related conditions within the pertinent statute of limitations.  Prior to his
19 | diagnosis, plaintiff did not know, nor through the exercise of reasonable diligence could he have
20 | known, that his disease and related conditions were caused by his exposure to the defendants'
21 | asbestos and asbestos-containing products.

22 | 15.    As a direct and legal result of the conduct of the defendants, and each of them,
23 | plaintiff developed a disease known and designated as mesothelioma and related conditions.

24 | 16.    As a further direct and legal result of the conduct of defendants, and each of them, it
25 | has been and continues to be necessary for plaintiff to retain the services of physicians, hospitals,
26 | hospice, and other health care professionals to diagnose, treat, and provide palliative care for
27 | plaintiff from now until he approaches the end of his life.  As a further direct and legal result of the
28 | conduct of the defendants, and each of them, it will be necessary for plaintiff to retain the services

**8**

*Dawson v. CBS Corporation, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                        INJURY--ASBESTOS)

1    of health care professionals in the future for an indeterminable period of time.  Plaintiff does not

2    yet know the full extent of treatment that will be required nor the reasonable value of medical

3    services rendered or to be rendered to plaintiff herein and therefore requests leave to amend this

4    complaint when that sum is determined.

5         17.    As a direct and legal result of the conduct of the defendants, and each of them, and

6    of plaintiff's diagnosis of mesothelioma and related conditions, plaintiff has been unable to follow

7    his normal or any gainful occupation for certain periods preceding and following his diagnosis, and

8    plaintiff will remain disabled for an indeterminable time.  Plaintiff has incurred, and will incur, loss

9    of income, wages, pensions, earning potential, profits and commissions, and other pecuniary losses.

10   Plaintiff does not know the amount of said past and future losses and therefore requests leave to

11   amend this complaint when that sum is determined.

12        18.    As a further direct and legal result of the negligence of defendants, and each of

13   them, and plaintiff's diagnosis of mesothelioma and related conditions, plaintiff has been damaged

14   in his health, strength, and activity, and endured and continues to endure unrelenting physical and

15   emotional pain and suffering, emotional distress, mental distress, mental anguish, fear,

16   nervousness, grief, anxiety, worry, humiliation and indignity, the full nature and extent of which

17   are presently unknown to plaintiff and for which plaintiff has incurred general damages in excess

18   of $50,000.00.

19        19.    Since 1924, the defendants, and each of them, knew or should have known of

20   medical and scientific data and other knowledge which clearly indicated that the materials and

21   products referred to herein were and are hazardous to the health and safety of the plaintiff and

22   others in plaintiff's position working in close proximity with such materials.  The defendants, and

23   each of them, knew or should have known of the dangerous propensities of the aforementioned

24   materials and products since before that time.

25        20.    Although defendants knew or should have known of the aforementioned

26   information, defendants, and each of them, negligently, carelessly, and recklessly failed to label

27   any of the aforementioned asbestos-containing materials and products, including those with which

28   and around which plaintiff worked such as thermal insulation materials specified for or on/in

---

9

*Dawson v. CBS Corporation, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                       INJURY--ASBESTOS)

1   boilers, regarding the hazards of such materials and products to the health and safety of plaintiff

2   and others in plaintiff's position working in close proximity with such materials until 1964.

3       21.   Commencing in 1964, many of such asbestos-containing materials were not labeled

4   as hazardous by all of the defendants herein, despite the fact that the knowledge of such hazards

5   existed and that defendants, and each of them, knew or should have known of such hazards since

6   1924. At all times herein mentioned, defendants, and each of them, negligently, carelessly, and

7   recklessly:

8       A.   failed to provide information relating to the danger of the use of the

9   aforementioned materials to plaintiff and others in plaintiff's position and the general public

10   concerning the dangerous nature of the aforementioned materials to workers;

11       B.   failed to disseminate such information in a manner which would give general

12   notice to the public and knowledge of the hazardous nature thereof, when defendants were bound to

13   disclose such information;

14       C.   sold the aforementioned products and materials to plaintiff's employer(s)

15   and others without advising such employers and others of dangers of the use of such materials to

16   persons working in close proximity thereto, when defendants knew or should have known of such

17   dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers;

18       D.   negligently, carelessly and recklessly misrepresented to plaintiff, others in

19   plaintiff's position, and plaintiff's employer that it was safe for plaintiff to work in close proximity

20   to such materials, when they knew that this was not the case; and

21       E.   negligently, carelessly and recklessly failed to disclose to plaintiff, others

22   plaintiff's position, plaintiff's employer, and members of the general public, medical and scientific

23   data and knowledge of the results of studies including, but not limited to, the information and

24   knowledge of the contents of the Lanza report.

25       22.   A.   Defendants, and each of them, knew or should have known of the

26   connection between inhalation of asbestos fibers and lung cancer, asbestosis, pleural plaques, and

27   related conditions which information was disseminated through the Asbestos Textile Institute and

28   other industry organizations to all other defendants, and each of them, herein.

**10**

*Dawson v. CBS Corporation, et al.*        COMPLAINT FOR DAMAGES (PERSONAL
                                                 INJURY--ASBESTOS)

B.      At all times mentioned herein, defendants, and each of them, knew or should have known of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein.

23.      Defendants, and each of them, negligently, carelessly and recklessly failed to provide the above described medical and scientific data to plaintiff, others in plaintiff's position, plaintiff's employer(s), and members of the general public concerning such knowledge of danger, when defendants were bound to disclose it.

24.      Defendants, and each of them, knew or should have known that said asbestos-containing materials were dangerous when breathed and caused pathological effects without noticeable trauma, and that such material was dangerous and a threat to the health of persons coming into contact therewith.  Defendants, and each of them, negligently, carelessly and recklessly did not warn plaintiff, others in plaintiff's position, plaintiff's employer(s) and the general public of their information.

25.      Defendants, and each of them, knew or should have known that adequate protective masks and devices should be used by workers such as plaintiff when applying and installing the asbestos-containing products of the defendants.  Defendants, and each of them, knew or should have known that not wearing an adequate protective mask and/or device would result in injury to the plaintiff and others applying and installing such materials.  Defendants, and each of them, negligently, carelessly and recklessly do not inform workers such as plaintiff, and others applying and installing such materials of the aforementioned information.

26.      Defendants, and each of them, knew or should have known that plaintiff and anyone similarly situated in an industrial and construction setting would be exposed to defendants' asbestos-containing products, and that, upon inhalation of asbestos such persons would, in time, develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all.  Defendants, and each of them, negligently, carelessly and recklessly failed to provide information to the public at large and buyers, users, and physicians employed by plaintiff and plaintiff's employer for the purpose of conducting physical examinations of plaintiff and others

11

*Dawson v. CBS Corporation, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                                              INJURY--ASBESTOS)

1  working with or near asbestos that exposure to these materials would cause pathological effects

2  without noticeable trauma.

3      27.   The foregoing acts of the defendants, and each of them, and the negligent, careless

4  and reckless conduct of the defendants, and each of them, as described hereinabove, were done

5  recklessly, wantonly, willfully, oppressively, and in conscious disregard of the safety of plaintiff

6  herein, in that

7      A.   the defendants, and each of them, prior to and at the time of sale, distribution

8  or supply of the aforementioned products to Plaintiff s employer or to others who in turn sold to

9  Plaintiff's employers, and to other persons relevant herein, knew or should have known that the

10  foregoing asbestos fibers released from said products during the foreseeable operations of applying

11  and removing same, were dangerous when inhaled;

12      B.   defendants, and each of them, knew or should have known of the hazards

13  and dangers of working with or around asbestos products produced or supplied by defendants, and

14  each of them. The defendants, and each of them, knew or should have known that said products

15  would be used by Plaintiff and others who had no knowledge of the dangerous and hazardous

16  nature thereof; and

17      C.   defendants, and each of them, either did not warn or insufficiently warned

18  regarding the dangerous nature of said products.  Defendants, and each of them, did not place a

19  sufficient warning on the said product or package thereof regarding said dangerous nature.

20  Accordingly, plaintiff is entitled to an award of punitive damages.

21      WHEREFORE, plaintiff prays judgment as hereinafter set forth.

22  **SECOND CAUSE OF ACTION**

23  (Strict Products Liability)

24      28.   Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

25  fully set forth herein, each and every allegation contained in the General Allegations and the First

26  Cause of Action herein, except Paragraphs 11, 12 and 13.

27      29.   At all times mentioned herein, defendants, and each of them, during the ordinary

28  course of business, mined, milled, manufactured, imported, supplied, distributed, delivered,

12

*Dawson v. CBS Corporation, et al.*       COMPLAINT FOR DAMAGES (PERSONAL
                                              INJURY--ASBESTOS)

1  packaged, labeled, advertised, sold, marketed, installed, applied and otherwise introduced into the

2  stream of commerce asbestos and asbestos-containing products which were defective due to their

3  design, manufacture, sufficiency of or lack of warning, and/or failure to meet ordinary use or

4  consumer expectations of safety when used in an intended or reasonably foreseeable manner.

5      30.    The asbestos and asbestos-containing products were defective when the defendants,

6  and each of them, marketed and introduced them into the stream of commerce.  Defendants, and

7  each of them, knew that the aforementioned products would be used without inspection for defects

8  by the user thereof.

9      31.    At all times herein mentioned, plaintiff, plaintiff's employer, and other persons

10 relevant herein, purchased from defendants, and each of them, asbestos and asbestos-containing

11 products.

12     32.    *Defective Design*: The products were defectively designed in that:

13          A.    The products failed to perform as safely as an ordinary consumer would

14 expect in their intended or reasonably foreseeable use or manner of operation, or;

15          B.    The products had inherent risks of danger that outweighed their benefits;

16 alternate and safer substitute products existed and the state-of-the-art required their use given the

17 seriousness of the potential danger, likelihood of its occurrence, feasibility, cost, and adverse

18 consequences to the product and to the consumer of a safer alternative design.

19          C.    *Failure to Warn*: Defendants knew or reasonably should have known of the

20 dangerous propensities of their products but nonetheless distributed and marketed their products

21 with inadequate warning of its dangers.

22          D.    Each of defendants' products reached plaintiff without substantial change in

23 its condition.

24          E.    The aforementioned products were used by plaintiff and those in close

25 proximity to plaintiff in a foreseeable manner and in the manner for which they were intended.

26 Defendants' products were used in a manner reasonably foreseeable by defendants, which

27 defendants intended or knew they would be used, or for which they marketed them or knew they

28 were marketed to be used.

<hr>

13

*Dawson v. CBS Corporation, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                            INJURY--ASBESTOS)

1        F.     At all times mentioned herein, plaintiff was unaware of the dangerous nature

2 of the aforementioned products.

3      33.    The defective design of defendants' products and failure to warn were the proximate

4 causes of plaintiff's injuries.

5      34.    As a direct and legal result of the conduct of the defendants, and each of them,

6 plaintiff developed an asbestos-related disease known and designated as mesothelioma and related

7 conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00

8 in addition to the special damages alleged herein.

9      35.    The aforementioned products were used by plaintiff and those in close proximity to

10 plaintiff in a foreseeable manner and in the manner for which they were intended.

11      36.   A.    Defendants, and each of them, knew that defendants' asbestos-containing

12 products would be used by plaintiff and anyone similarly situated in an industrial, construction,

13 marine and automotive setting without inspection for defects.

14        B.    Defendants, and each of them, knew that such persons would be exposed to

15 defendants' asbestos-containing products.

16        C.    Defendants, and each of them, knew that, upon inhalation of asbestos from

17 defendant's asbestos-containing products, such persons would, in time, develop irreversible

18 conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all.

19        D.    At the time defendants, and each of them, placed such asbestos-containing

20 products in to the stream of commerce, defendants, and each of them, knew or should have known

21 of the risks and hazards associated with the use and/or exposure of its products.

22        E.    At the time defendants, and each of them, placed such asbestos-containing

23 products in to the stream of commerce, and subsequent thereto, defendants, and each of them,

24 failed to warn or provided inadequate warnings to persons who used or would be exposed to its

25 defective asbestos-containing products, including plaintiff, of the dangers and hazards associated

26 with its products.

27 ///

28 ///

---

14

1    F.    At the time defendants, and each of them, placed such asbestos-containing

2  products in to the stream of commerce; and subsequent thereto, defendants, and each of them failed

3  to provide instructions or provided inadequate instructions to persons who used its defective

4  asbestos-containing products, or who would be exposed to said products, including plaintiff, of the

5  dangers and hazards associated with its products.

6    G.    Defendants, and each of them, prior to and at the time of placing the

7  aforementioned products in to the stream of commerce, including but not limited to supplying said

8  products to plaintiff's employer or to others who in turn sold to plaintiff's employers, and to other

9  persons relevant herein, knew that the asbestos which plaintiff and others around him were exposed

10  to was dangerous.  The defendants, and each of them, either did not warn or insufficiently warned

11  regarding the dangerous nature of said products, and failed to place a sufficient warning on the said

12  product or package thereof regarding said dangerous nature, despite knowing that said products

13  would be used by plaintiff and others around him who had no knowledge of the dangerous and

14  hazardous nature thereof.

15    37.    The conduct of the defendants, and each of them, was motivated by their financial

16  interests.  In this financial pursuit, defendants consciously disregarded the safety of users and

17  persons exposed to their products and were consciously willing to permit their products and

18  premises to injure workers and others, including plaintiff, in order to maximize profits.  They

19  consciously disregarded the well-publicized risks of asbestos exposure because to have kept

20  consumers and end users like plaintiff safe would have required said defendants to make less

21  money or limit distribution of their products.  The defendants, and each of them, either did not

22  warn or insufficiently warned regarding the dangerous nature of said products, nor placed a

23  sufficient warning on the said product or package thereof regarding said dangerous nature, despite

24  knowing that said products would be used by plaintiff and others around him who had no

25  knowledge of the dangerous and hazardous nature thereof.  Defendants' conduct as described

26  herein was and is willful, malicious, outrageous, and in conscious disregard and indifferent to the

27  safety and health of workers and others exposed to asbestos, including plaintiff, and therefore

28  plaintiff is entitled to an award of punitive damages.

15

*Dawson v. CBS Corporation, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                             INJURY--ASBESTOS)

1    WHEREFORE, plaintiff prays judgment as hereinafter set forth.

2    ### THIRD CAUSE OF ACTION

3    (Failure to Warn)

4    38.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

5    fully set forth herein, each and every allegation contained in the General Allegations, the First

6    Cause of Action herein, except Paragraphs 11, 12 and 13, and each and every allegation contained

7    in the Second Cause of Action, except those allegations pertaining to design and manufacturing

8    defect.

9    39.    At all relevant times, the asbestos and asbestos-containing products which were

10   mined, milled, manufactured, tested, developed, processed, imported, converted, compounded

11   assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed,

12   delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by

13   defendants, and each of them, were defective as a result of defendants' failure to warn or give

14   adequate warning that the particular risk of developing an asbestos-related disease and risk of death

15   from an asbestos-related disease resulting from exposure to asbestos rendered the product unsafe

16   for its intended or reasonably foreseeable use.

17   40.    At all relevant times, the defendants, and each of them, had specific knowledge of

18   these risks or could have known of these risks by the application of scientific knowledge available

19   at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying,

20   approving, inspecting, applying and installing the asbestos and asbestos-containing products.

21   41.    As a direct and legal result of the conduct of the defendants, and each of them,

22   plaintiff developed an asbestos-related disease known and designated as mesothelioma and related

23   conditions and disabilities as previously set forth, and has incurred damages in excess of

24   $50,000.00 in addition to the special damages alleged herein.

25   WHEREFORE, plaintiff prays judgment as hereinafter set forth.

26   ///

27   ///

28   ///

<div align="center">16</div>

*Dawson v. CBS Corporation, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                       INJURY--ASBESTOS)

**FOURTH CAUSE OF ACTION**

(Breach of Warranties)

42.     AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff complains of defendants, and each of them, and alleges:

43.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations, and the First Cause of Action herein, except Paragraphs 11, 12 and 13.

44.     The defendants, and each of them, sold, supplied, delivered or otherwise distributed to plaintiff, or to another purchaser or user who subsequently sold, supplied, delivered or otherwise distributed to plaintiff, or to others working in close proximity to plaintiff, the above-described asbestos and asbestos-containing products to which plaintiff was exposed.

45.     The defendants, and each of them, knew the intended purpose of the asbestos and asbestos-containing products prior to marketing said products and knew or should have known that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing these products.

46.     The defendants, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose.

47.     Defendants, and each of them, impliedly warranted that their products were of merchantable quality and safe, fit and proper for the uses which defendants knew or intended were to be made of them at the time of selling them.

48.     Plaintiff reasonably relied on the skill, knowledge and judgment of defendants, and each of them, in plaintiff's use of the products as a basis of the bargain under which such products were bought and used.

/ / /

/ / /

/ / /

17

*Dawson v. CBS Corporation, et al.*              COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

49.   The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by defendants, and each of them, in that said products had dangerous propensities when put to the use for which each of these defendants knew or intended they were marketed or sold and would cause severe injury to users or bystanders, such as plaintiff.

50.   The defendants, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, advising plaintiff and others working in close proximity to plaintiff that dangerous levels of asbestos fiber would be released during the process of applying, installing, removing and/or disturbing said products.

51.   As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as mesothelioma and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

### FIFTH CAUSE OF ACTION

(Fraud and Conspiracy)

52.   AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff complains of the defendants, and each of them, and alleges:

53.   Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except allegations pertaining to negligence.

54.   Pursuant to Section 1708 of the Civil Code of California, the defendants, and each of them, owed a duty to plaintiff at all times relevant herein to abstain from injuring the plaintiff or infringing upon any of his rights.

///
///
///
///

18

*Dawson v. CBS Corporation, et al.*                COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1    55.    The defendants, and each of them, breached the duty they owed to plaintiff pursuant

2    to Section 1708 of the Civil Code of California by willfully deceiving plaintiff with the intent to

3    induce plaintiff to alter plaintiff's position to plaintiff's injury or risk.  The defendants, and each of

4    them, deceived the plaintiff and committed actionable fraud pursuant to Section 1709 and

5    Section 1710 of the Civil Code of California.

6    56.    The defendants, and each of them, as more fully set forth below, suggested as fact

7    that which was not true and that which defendants, and each of them, did not believe was true.

8    57.    The defendants, and each of them, as more fully set forth below, asserted as fact that

9    which was not true and that which defendants, and each of them, had no reasonable grounds for

10    believing was true.

11    58.    The defendants, and each of them, as more fully set forth below, suppressed facts

12    which they were obligated to disclose and gave information of other facts which were likely to

13    mislead for want of communication of the undisclosed facts.

14    59.    The defendants, and each of them, made promises without any intention of keeping

15    those promises.

16    60.    Since 1924, the defendants, and each of them, have known and have possessed the

17    true facts of medical and scientific data and other knowledge which clearly indicated that the

18    materials and products referred to herein were and are hazardous to the health and safety of the

19    plaintiff and others in plaintiff's position working in close proximity with such materials.  The

20    defendants, and each of them, have known of the dangerous propensities of the aforementioned

21    materials and products since before that time, and with intent to deceive plaintiff and others in his

22    position, and with intent that he and such others should be and remain ignorant of such facts, and

23    with intent to induce plaintiff and such others to alter his and their positions to him and their injury

24    and/or risk and in order to gain advantages did do the following acts:

25    A.    Defendants, and each of them, did not label any of the aforementioned

26    asbestos-containing materials and products regarding the hazards of such materials and products to

27    the health and safety of plaintiff and others in plaintiff's position working in close proximity with

28    such materials until 1964, when certain of such materials were labeled by some, but not all, of the

19

1 defendants herein, despite the fact that the knowledge of such hazards existed and was known to

2 defendants, and each of them, since 1924. By not labeling such materials as to their said hazards,

3 defendants, and each of them, caused to be suggested as a fact to plaintiff and plaintiff's employer

4 that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true

5 and defendants did not believe it to be true.

6           B.     Defendants, and each of them, suppressed information relating to the danger

7 of the use of the aforementioned materials by requesting the suppression of information to the

8 plaintiff and the general public concerning the dangerous nature of the aforementioned materials to

9 workers and by not allowing such information to be disseminated in a manner which would give

10 general notice to the public and knowledge of the hazardous nature thereof, when defendants were

11 bound to disclose such information.

12           C.     Defendants, and each of them, sold the aforementioned products and

13 materials to plaintiff's employer and others without advising such employers and others of dangers

14 of the use of such materials to persons working in close proximity thereto, when defendants knew

15 of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers.

16 Thereby, defendants caused to be positively asserted to plaintiff's employer that which was not true

17 and which defendants had no reasonable ground for believing to be true and in a manner not

18 warranted by the information possessed by said defendants, and each of them, to wit, that it was

19 safe for plaintiff to work in close proximity to such materials.

20           D.     Defendants, and each of them, suppressed and continue to suppress from

21 everyone, including plaintiff and plaintiff's employer, medical and scientific data and knowledge of

22 the results of studies including, but not limited to, the information and knowledge of the contents of

23 the Lanza report. Although bound to disclose it, defendants, and each of them, influenced

24 A. J. Lanza to change his report, the altered version of which was published in Public Health

25 Volume at page I in 1935, thereby causing plaintiff to be and remain ignorant thereof. Defendants,

26 and each of them, caused *Asbestos Magazine*, a widely disseminated trade journal, to omit mention

27 of danger, thereby lessening the probability of notice of danger to the users thereof.

28 ///

<div align="center">20</div>

_Dawson v. CBS Corporation, et al._                         COMPLAINT FOR DAMAGES (PERSONAL
                                                       INJURY--ASBESTOS)

1        E.    Defendants, and each of them, belonged to, participated in, and financially

2    supported the Asbestos Textile Institute and other industry organizations which, and on behalf of

3    defendants, and each of them, actively promoted the suppression of information of danger to users

4    of the aforementioned products and materials, thereby misleading plaintiff and plaintiff's employer

5    by the suggestions and deceptions set forth above in this cause of action.  The Dust Control

6    Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile

7    Institute, was specifically enjoined to study the subject of dust control.  Discussions in this

8    committee were held many times regarding the dangers inherent in asbestos and the dangers which

9    arise from the lack of control of dust and the suppression of such information from 1946 to a date

10   unknown to plaintiff at this time.

11       F.    Commencing in 1930 with the study of mine and mill workers at Asbestos

12   and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos- Manhattan plants

13   in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific

14   information of the connection between inhalation of asbestos fibers and mesothelioma, asbestosis,

15   pleural plaques, and related conditions, which information was disseminated through the Asbestos

16   Textile Institute and other industry organizations to all other defendants, and each of them, herein.

17   Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific

18   information of the connection between inhalation of asbestos fibers and cancer, which information

19   was disseminated through the Asbestos Textile Institute and other industry organizations to all

20   other defendants herein.  Thereby, defendants suggested as a fact that which is not true and

21   disseminated other facts likely to mislead plaintiff and plaintiff's employer and which did mislead

22   them by withholding afore-described medical and scientific data and by not giving plaintiff or

23   plaintiff's employer the true facts concerning such knowledge of danger when defendants were

24   bound to disclose it.

25   ///

26   ///

27   ///

28   ///

<div align="center">21</div>

*Dawson v. CBS Corporation, et al.*        COMPLAINT FOR DAMAGES (PERSONAL
INJURY--ASBESTOS)

1    G.    Defendants, and each of them, failed to warn plaintiff and plaintiff's

2  employer that said materials were dangerous when breathed and caused pathological effects

3  without noticeable trauma, despite the fact that defendants possessed knowledge and were under a

4  duty to disclose that such material was dangerous and a threat to the health of persons coming into

5  contact therewith.

6    H.    Defendants, and each of them, failed to provide plaintiff with information

7  concerning adequate protective masks and devices to be used when applying and installing the

8  products of the defendants, and each of them, despite the knowledge of defendants and a duty to

9  disclose that such protective measures were necessary and would result in injury to the plaintiff and

10  others applying and installing such materials if not so advised.

11    I.    Defendants, and each of them, concealed from plaintiff the true nature of the

12  industrial, construction, marine, and friction exposure of plaintiff and knew that plaintiff and

13  anyone similarly situated, upon inhalation of asbestos, would in time develop irreversible

14  conditions of either mesothelioma, asbestosis or cancer, or all, and that the materials to which he

15  was exposed would cause pathological effects without noticeable trauma despite the fact that

16  defendants were under a duty to and bound to disclose it; and

17    J.    Defendants, and each of them, failed to provide information to the public at

18  large and buyers, users, and physicians employed by plaintiff and plaintiff's employer for the

19  purpose of conducting physical examinations of plaintiff and others working with or near asbestos

20  of the true nature of the hazards of asbestos and that exposure to these materials would cause

21  pathological effects without noticeable trauma to the public, including buyers, users, and

22  physicians employed by plaintiff and plaintiff's employer so that said physicians could examine,

23  diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that

24  defendants, and each of them, were under a duty to so inform and said failure was misleading.

25  ///

26  ///

27  ///

28  ///

22

*Dawson v. CBS Corporation, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                             INJURY--ASBESTOS)

1    61.    Defendants, and each of them, having the aforementioned knowledge of facts and

2    knowing that the plaintiff did not possess such knowledge, acted falsely and fraudulently and with

3    full intent to cause plaintiff to remain unaware of those facts and to induce plaintiff to work with

4    and around unsafe products in a dangerous environment, all in violation of Section 1710 of the

5    Civil Code of the State of California.

6    62.    At all times mentioned, the defendants, and each of them, knowingly and willfully

7    conspired and agreed among themselves to perpetrate upon plaintiff the unlawful acts complained

8    of in Paragraphs 19 through 27 of the First Cause of Action and Paragraphs 54 through 61 of the

9    Fifth Cause of Action herein.

10    63.    The defendants, and each of them, and at least one of them, did the acts herein

11    alleged in Paragraph 60 through 62 of this Fifth Cause of Action in furtherance of the conspiracy

12    and agreement as herein alleged and also acted in furtherance of a conspiracy and agreement

13    between and among the defendants, and each of them, to violate State and Federal laws and

14    regulations, the exact nature and extent of which are unknown at this time but known full well to

15    defendants, and each of them.  These actions were done maliciously, wantonly, and in reckless

16    disregard for the health and safety of others, including plaintiff herein.

17    64.    Plaintiff reasonably relied upon the misrepresentations of the defendants, and each

18    of them, and in reliance on same continued to work with and around asbestos and asbestos-

19    containing products.  Plaintiff would have taken steps to protect his health and life had he known

20    the facts, which were known to the defendants, and each of them, about exposure to asbestos and

21    asbestos-containing products.  Plaintiff would not have knowingly continued to work in an unsafe

22    environment.  He had no knowledge of the foregoing facts and actions of the defendants, and each

23    of them, at the time when they were committed and cannot be charged with knowledge or inquiry

24    thereof.

25    65.    As a direct and legal result of the conduct of the defendants, and each of them,

26    plaintiff developed an asbestos-related disease known and designated as mesothelioma and related

27    conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00

28    in addition to the special damages alleged.

23

*Dawson v. CBS Corporation, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                       INJURY--ASBESTOS)

1    WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

2                              **SIXTH CAUSE OF ACTION**

3                              (Enterprise Liability)

4        66.    AS AND FOR A SIXTH CAUSE OF ACTION, plaintiff complains of the

5    defendants, and each of them, and allege:

6        67.    Plaintiff incorporates by reference as though fully set forth herein each and every

7    allegation of the General Allegations, and First, Second, Third, and Fifth Causes of Actions herein.

8        68.    The defendants, and each of them, mined, milled, manufactured, tested, developed,

9    processed, imported, converted, compounded, assembled, fabricated, modified, designed, specified,

10    approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed,

11    warranted, applied, installed, inspected and otherwise marketed asbestos and asbestos-containing

12    products. These products were defective and carried with them an inadequate warning, or no

13    warning at all, regarding the health hazards associated with asbestos exposure. The defendants,

14    and each of them, knew or should have known of the defective and hazardous nature of the

15    asbestos and asbestos-containing products at the time that said products were placed in the stream

16    of commerce.

17        69.    Plaintiff, at all times pertinent herein, was unaware and cannot be charged with

18    knowledge of the health hazards associated with exposure to asbestos fibers released from the

19    afore-alleged asbestos and asbestos-containing products of the defendants, and each of them. On

20    the other hand, the defendants, and each of them, introduced these products into the market where

21    plaintiff worked and were in a position to prevent harmful exposures to all persons therein,

22    including the plaintiff.

23        70.    Plaintiff, at all times pertinent herein, was exposed to asbestos fibers released from

24    asbestos and asbestos-containing products which are and were fungible in color, size, shape,

25    texture, and function. Said products were similar in appearance and composition and indistinct one

26    from the others, and through no fault of the plaintiff these products cannot be traced to a particular

27    defendant or other entity.

28    ///

                                              24

*Dawson v. CBS Corporation, et al.*                COMPLAINT FOR DAMAGES (PERSONAL
                                                   INJURY--ASBESTOS)

71.   In this action, plaintiff has joined as defendants a substantial share of the manufacturers and suppliers of the asbestos and asbestos-containing products which comprised the relevant market within which plaintiff was exposed to asbestos fibers.  At trial, plaintiff will prove the respective market share of the defendants, and each of them, during all times relevant herein. The liability of the defendants, and each of them, is proportional to their respective market share percentage, consistent with the rules set forth in *Sindell v . Abbott Laboratories*.

72.   As a direct and legal result of the conduct of the defendants, and each them, plaintiff developed an asbestos-related disease known and designated as mesothelioma and related conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (False Representation Under Restatement Torts Section 402-B)

73.   AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff complains of the defendants, and each of them, and alleges:

74.   Plaintiff incorporates by reference as though fully set forth herein, each and every allegation of the General Allegations, and First, Second, Third, Fourth, Fifth, and Sixth Causes of Actions herein.

75.   At the aforementioned time when defendants, and each of them, researched, manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale and sold the said asbestos and asbestos-containing products as hereinabove set forth, the defendants, and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and including plaintiff herein and his employers, that asbestos and asbestos-containing products were of merchantable quality and safe for the use for which they were intended.

/ / /

/ / /

25

*Dawson v. CBS Corporation, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                        INJURY--ASBESTOS)

1    76.    The purchasers and users of said asbestos and asbestos-containing products,

2    including plaintiff and his employers, relied upon said representations of defendants, and each of

3    them, in the selection, purchase and use of asbestos and asbestos-containing products.

4    77.    Said representations by defendants, and each of them, were false and untrue in that

5    the asbestos and asbestos-containing products were not safe for their intended use, nor were they of

6    merchantable quality as represented by defendants, and each of them, in that asbestos and asbestos

7    containing products have very dangerous properties and defects whereby said products cause lung

8    cancer, mesothelioma, asbestosis, pleural plaques, and other diseases and have other defects that

9    cause injury and damage to the users of said products, including the plaintiff herein, thereby

10    threatening the health and life of plaintiff.

11    78.    As a direct and legal result of the conduct of the defendants, and each them plaintiff

12    developed an asbestos-related disease known and designated as mesothelioma and related

13    conditions and disabilities as previously set forth, and has incurred damages in excess of

14    $50,000.00 in addition to the special damages alleged herein.

15    WHEREFORE, plaintiff prays judgment as hereinafter set forth.

16    ### EIGHTH CAUSE OF ACTION

17    (Loss of Consortium)

18    79.    AS AND FOR AN EIGHTH CAUSE of action, plaintiff RITA M. DAWSON

19    complains of defendants, and each of them, as follows:

20    80.    Plaintiff, by this reference, hereby incorporates and makes a part thereof, as though

21    fully set forth herein, each and every allegation contained in the General Allegations and each of

22    the foregoing Causes of Action herein.

23    81.    At the time that plaintiff sustained injury as more fully alleged in the First through

24    Seventh Causes of Action, and at all times thereafter, plaintiff RITA M. DAWSON was the spouse

25    of plaintiff WILLIAM H. DAWSON.

26    ///

27    ///

28    ///

26

*Dawson v. CBS Corporation, et al.*    COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

82.     Prior to said injuries, plaintiff was able to and did perform his duties as the spouse of RITA M. DAWSON.  Plaintiff is informed and believes and thereon alleges that subsequent to said injuries and as a proximate result thereof, plaintiff has been, and at some time in the future will be, incapacitated and unable to perform the necessary duties as spouse of plaintiff and the work and service usually performed in the care, maintenance, and management of the family home.

83.     As a proximate result of said injuries, plaintiff has been and will be deprived of consortium with plaintiff WILLIAM H. DAWSON, including the performance of his spouse's duties, and plaintiff RITA M. DAWSON has and will be required to perform the duties previously performed by her spouse WILLIAM H. DAWSON, all to plaintiff's damage in a sum which cannot be ascertained at this time . Plaintiff requests the right to amend this complaint to allege the amount of said damages when they are ascertained.

WHEREFORE, plaintiff WILLIAM H. DAWSON prays judgment as follows:

**First, Second, and Fifth Causes of Action**

1.     General damages in an amount in excess of $50,000.00 in accordance with proof;

2.     Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3.     Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with proof;

4.     Special damages in accordance with the proof;

5.     Prejudgment interest and post-judgment interest in accordance with law;

6.     Costs of suit; and,

7.     Such and other and further relief as the Court deems just and proper.

**Third, Fourth, Sixth and Seventh Causes of Action**

1.     General damages in an amount in excess of $50,000.00 in accordance with proof;

2.     Special damages in accordance with the proof;

3.     Prejudgment interest and post-judgment interest in accordance with law;

4.     Costs of suit; and,

5.     Such and other and further relief as the Court deems just and proper.

27

*Dawson v. CBS Corporation, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                       INJURY--ASBESTOS)

1    WHEREFORE, plaintiff RITA M. DAWSON prays judgment as follows:

2    **Eighth Cause of Action**

3    1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

4    2.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

5    accordance with proof;

6    3.    Punitive and exemplary damages in an amount found appropriate by the trier of fact

7    in accordance with proof;

8    4.    Special damages in accordance with the proof;

9    5.    Prejudgment interest and post-judgment interest in accordance with law;

10    6.    Costs of suit; and,

11    7.    Such and other and further relief as the Court deems just and proper.

12    DATED:  January 22, 2009                    BRENT COON & ASSOCIATES

13

14                                              By:

15                                                  RICHARD A. BRODY
                                                    Attorneys for Plaintiff
16

17

18

19

20

21

22

23

24

25

26

27

28

---

28

*Dawson v. CBS Corporation, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                             INJURY--ASBESTOS)

**Exhibit B**

**ORIGINAL**





ALAMEDA COUNTY

JAN 23 2009

CLERK OF THE SUPERIOR COURT
By: _____
Deputy

SUMMONS ISSUED

1  Richard A. Brody, ESQ. (SBN 100379)
   Kathleen K. Chio, ESQ. (SBN 245388)
2  BRENT COON & ASSOCIATES
   44 Montgomery Street, Suite 800
3  San Francisco, CA  94104
   Telephone:  415.489.7420
4  Facsimile:  415.489.7426

5  Attorneys for Plaintiffs

6

7

8

9          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10             IN AND FOR THE COUNTY OF ALAMEDA

11

12  WILLIAM H. DAWSON and RITA M.          Case No. **09432156**
    DAWSON
13          Plaintiffs,                    **COMPLAINT FOR DAMAGES
                                           (PERSONAL INJURY--ASBESTOS)**
14  v.
                                           **1. Negligence**
15  A.W. CHESTERTON COMPANY; ALFA          **2. Strict Products Liability**
    LAVAL, INC., individually and as parent, alter   **3. Failure to Warn**
16  ego, and s/or successor in interest to SHARPLES,  **4. Breach of Warranties**
    INC., ALFA LAVAL SEPARATION, INC., and  **5. Fraud and Conspiracy**
17  DELAVAL SEPARATOR COMPANY;            **6. Enterprise Liability**
    ALLIED PACKING & SUPPLY, INC.; ALLIS  **7. False Representation Under**
18  CHALMERS CORPORATION PRODUCT              **Restatement Torts Section 402-B**
    LIABILITY TRUST; ARVINMERITOR, INC.;  **8. Loss of Consortium**
19                                          **Punitive Damages**
    ASBESTOS CORPORATION, LTD.; BAYER
20  CROPSCIENCE, INC., as parent, alter ego,
    and/or successor in interest to AMCHEM
21  PRODUCTS, INC. and BENJAMIN FOSTER;
    BUFFALO PUMPS, INC.; individually and as
22  parent, alter ego, successor in interest and/or
    subsidiary of AMPCO PITTSBURGH
23  CORPORATION and/or BUFFALO FORGE
    COMPANY; BURNS INTERNATIONAL
24  SERVICES CORPORATION, individually and
    as parent, alter ego, and successor in interest to
25  and formerly known as BORG-WARNER
    CORPORATION; BW/IP, INC., individually and
26  as parent, alter ego, and/or successor in interest to
27

28

                                    1
─────────────────────────────────────────────
*Dawson v. A.W. Chesterton Company, et al.*     COMPLAINT FOR DAMAGES (PERSONAL
                                                INJURY--ASBESTOS)

1  BYRON JACKSON PUMPS; CARLISLE
2  SYNTEC INCORPORATED; CRANE CO.,
   individually and as parent, alter ego, and
3  successor in interest to CHAPMAN VALVE
   COMPANY, COCHRANE CORPORATION
4  and/or CHEMPUMP CORPORATION;
5  CROWN, CORK & SEAL, individually and as
   successor in interest to MUNDET CORK
6  CORPORATION; DAIMLER CHRYSLER
   CORPORATION, individually and as parent,
7  alter ego, and entity formerly known as THE
8  CHRYSLER CORPORATION and/or MOTOR
   PARTS DIVISION (MOPAR); DRESSER-
9  RAND as parent alter ego, and/or successor in
   interest to TERRY TURBINES; ELLIOTT
10 COMPANY formerly known as ELLIOTT
11 TURBOMACHINERY COMPANY, INC.;
   ENPRO INDUSTRIES, INC. as parent, alter ego,
12 and successor in interest to FAIRBANKS
   MORSE ENGINE; FMC CORPORATION,
13 individually and as parent, alter ego, and/or
14 successor in interest to NORTHERN PUMP
   COMPANY and to the PEERLESS PUMP
15 COMPANY and to the CHICAGO PUMP
   COMPANY and to DAYTON-DOWD CO.;
16 FORD MOTOR COMPANY; FREIGHTLINER
17 LLC; GARLOCK SEALING TECHNOLOGIES,
   LLC; GENERAL MOTORS CORPORATION;
18 GENUINE PARTS COMPANY, individually and
19 as parent alter ego and successor in interest to
   NATIONAL ASSOCIATION OF
20 AUTOMOTIVE PARTS and/or as parent, alter
   ego, successor in interest and doing business as
21 NAPA AUTO PARTS; GOULDS PUMPS, INC.;
22 HOLLINGSWORTH & VOSE; HONEYWELL
   INTERNATIONAL, INC., individually and as
23 success in interest to ALLIED SIGNAL, INC,
   individually and as successor in interest to THE
24 BENDIX COMPANY; HOPEMAN
25 BROTHERS, INC.; IMO INDUSTRIES, INC.,
   individually and as parent, alter ego, and entities
26 f/k/a IMO DELAVAL, INC., DELAVAL
   TURBINES, DELAVAL PUMPS, and/or
27 WORTHINGTON TURBINE, INC.;
28 INGERSOLL-RAND COMPANY; ITT
   INDUSTRIES, INC., individually and as parent,

2

*Dawson v. A.W. Chesterton Company, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                                     INJURY--ASBESTOS)

alter ego, and/or successor in interest to BELL
AND GOSSETT PUMPS; J.T. THORPE & SON,
INC.; KELSEY-HAYES COMPANY;
MAREMONT CORPORATION; MERITOR
AUTOMOTIVE, INC., individually and as
parent, alter ego and successor-in interest to
ROCKWELL AUTOMOTIVE; METALCLAD
INSULATION CORPORATION, individually
and as successor in interest to the NORCAL
INSULATION COMPANY; NAVISTAR
INTERNATIONAL CORPORATION, as parent,
alter ego, and/or successor in interest to
INTERNATIONAL TRUCK AND ENGINE and
INTERNATIONAL HARVESTER; PACCAR,
INC., individually and as parent, alter ego, and/or
successor in interest to PETERBILT,
KENWORTH, DAF and/or FODEN; PARKER
HANNIFIN CORPORATION, individually and
as parent, alter ego, and successor in interest to
SACOMO-SIERRA; PARKER HANNIFIN
CORPORATION as successor in interest to EIS
BRAKE PARTS; PLANT INSULATION
COMPANY, individually and as parent, alter, ego
and successor in interest to PLANT ASBESTOS
COMPANY; QUINTEC INDUSTRIES, INC.,
individually and as the parent, alter ego,
successor by merger and/or in interest or
otherwise liable for the actions or omissions of
WESTERN FIBERGLAS SUPPLY COMPANY,
WESTERN FIBROUS GLASS PRODUCTS
COMPANY and/or WESGLAS, INC.; RAPID
AMERICAN CORPORATION as successor in
interest to PHILIP CAREY; S.B. DECKING,
INC., individually and as successor in interest to
SELBY, BATTERSBY & COMPANY; SEPCO
CORPORATION; SOCO-LYNCH,
CORPORATION, as successor in interest to
WESTERN CHEMICAL &
MANUFACTURING COMPANY and A.J.
LYNCH & CO.; SOCO-WEST, INC.;
STERLING FLUID SYSTEMS (USA) LLC
individually and as parent, alter ego, and
successor in interest to the PEERLESS PUMP
COMPANY; TENNECO AUTOMOTIVE;
THOMAS DEE ENGINEERING COMPANY,
INC.; TRIPLE A MACHINE SHOP; TUTHILL

3

CORPORATION; UNIROYAL, INC.; VOLVO
TRUCKS NORTH AMERICA, INC. as parent,
alter ego and/or successor in interest to MACK
TRUCKS; YARWAY CORPORATION; ZURN
INDUSTRIES, LLC; and DOES 1-500, inclusive,

Defendants.

Plaintiffs WILLIAM H. DAWSON and RITA M. DAWSON (hereinafter "plaintiff")
complain of all defendants, and each of them, and allege:

## GENERAL ALLEGATIONS

1.      Plaintiffs bring this action on their own behalf and are hereinafter referred to as
"plaintiff." Plaintiffs know of no other parties who should be named as a plaintiff herein.

2.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as
DOES 1 through 500, inclusive, and therefore sues these defendants by such fictitious names.
Plaintiff will amend this complaint to allege their true names and capacities when ascertained.
Plaintiff is informed and believe and thereon allege that each of said fictitiously named defendants
are, through their negligence, intentional torts, and/or conduct giving rise to strict liability,
responsible or liable in some manner for the occurrences herein alleged, and that the injuries herein
alleged were the direct and legal result of said negligence, intentional torts, and/or conduct giving
rise to strict liability.

3.      At all times mentioned in this complaint, each of the defendants was the agent and
employee of each of the remaining defendants, and by their actions as alleged in this complaint
each defendant was acting within the course and scope of this agency and employment, and each
defendant has ratified and approved the acts of the remaining defendants. The Federal Courts lack
subject matter jurisdiction over this action as there is no federal question and incomplete diversity
of citizenship exists due to the presence of one or more California defendants. Removal is
improper. Every claim arising under the constitution, treaties, or laws of the United States is
expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or
of any officer of the U.S. or any agency or person acting under him occurring under color of such
office). No claim of admiralty or maritime law is raised. Plaintiff sues no foreign state or agency.

4

1    Venue is proper in Alameda County, California because one of the local defendants, Plant

2    Insulation Company performed work at Moore Shipbuilding and Dry Dock located in Oakland,

3    California. The USS Proteus (AS-19) was laid down by the Moore Shipbuilding and Drydock

4    Company, Oakland California, on September 15, 1941. Plant Insulation Company, based out of

5    Emeryville, California, performed such work during the time that the USS Proteus was built at

6    Moore Shipbuilding and Drydock. While in the U.S. Navy, Plaintiff served aboard the USS Proteus

7    as an Engineman. Plaintiff worked with asbestos-containing diesel engines and mechanical

8    equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems,

9    refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and

10   valves, which included asbestos-containing components. He worked in the engine room and all

11   over the ship and made repairs to the equipment as necessary.

12          4.      A.W. CHESTERTON COMPANY; ALFA LAVAL, INC., individually and as

13   parent, alter ego, and s/or successor in interest to SHARPLES, INC., ALFA LAVAL

14   SEPARATION, INC., and DELAVAL SEPARATOR COMPANY; ALLIED PACKING &

15   SUPPLY, INC.; ALLIS CHALMERS CORPORATION PRODUCT LIABILITY TRUST;

16   ARVINMERITOR, INC.; ASBESTOS CORPORATION, LTD.; BAYER CROPSCIENCE, INC.,

17   as parent, alter ego, and/or successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN

18   FOSTER; BUFFALO PUMPS, INC.; individually and as parent, alter ego, successor in interest

19   and/or subsidiary of AMPCO PITTSBURGH CORPORATION and/or BUFFALO FORGE

20   COMPANY; BURNS INTERNATIONAL SERVICES CORPORATION, individually and as

21   parent, alter ego, and successor in interest to and formerly known as BORG-WARNER

22   CORPORATION; BW/IP, INC., individually and as parent, alter ego, and/or successor in interest

23   to BYRON JACKSON PUMPS; CARLISLE SYNTEC INCORPORATED; CRANE CO.,

24   individually and as parent, alter ego, and successor in interest to CHAPMAN VALVE

25   COMPANY, COCHRANE CORPORATION and/or CHEMPUMP CORPORATION; CROWN,

26   CORK & SEAL, individually and as successor in interest to MUNDET CORK CORPORATION;

27   DAIMLER CHRYSLER CORPORATION, individually and as parent, alter ego, and entity

28   formerly known as THE CHRYSLER CORPORATION and/or MOTOR PARTS DIVISION

5

*Dawson v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                                INJURY--ASBESTOS)

1  (MOPAR); DRESSER-RAND as parent alter ego, and/or successor in interest to TERRY

2  TURBINES; ELLIOTT COMPANY formerly known as ELLIOTT TURBOMACHINERY

3  COMPANY, INC.; ENPRO INDUSTRIES, INC. as parent, alter ego, and successor in interest to

4  FAIRBANKS MORSE ENGINE; FMC CORPORATION, individually and as parent, alter ego,

5  and/or successor in interest to NORTHERN PUMP COMPANY and to the PEERLESS PUMP

6  COMPANY and to the CHICAGO PUMP COMPANY and to DAYTON-DOWD CO.;

7  FORD MOTOR COMPANY; FREIGHTLINER LLC; GARLOCK SEALING TECHNOLOGIES,

8  LLC; GENERAL MOTORS CORPORATION; GENUINE PARTS COMPANY, individually and

9  as parent alter ego and successor in interest to NATIONAL ASSOCIATION OF AUTOMOTIVE

10 PARTS and/or as parent, alter ego, successor in interest and doing business as NAPA AUTO

11 PARTS; GOULDS PUMPS, INC.; HOLLINGSWORTH & VOSE;  HONEYWELL

12 INTERNATIONAL, INC., individually and as success in interest to ALLIED SIGNAL, INC,

13 individually and as successor in interest to THE BENDIX COMPANY; HOPEMAN BROTHERS,

14 INC.; IMO INDUSTRIES, INC., individually and as parent, alter ego, and entities f/k/a IMO

15 DELAVAL, INC., DELAVAL TURBINES, DELAVAL PUMPS, and/or WORTHINGTON

16 TURBINE, INC.; INGERSOLL-RAND COMPANY; ITT INDUSTRIES, INC., individually and

17 as parent, alter ego, and/or successor in interest to BELL AND GOSSETT PUMPS; J.T. THORPE

18 & SON, INC.; KELSEY-HAYES COMPANY; MAREMONT CORPORATION; MERITOR

19 AUTOMOTIVE, INC., individually and as parent, alter ego and successor-in interest to

20 ROCKWELL AUTOMOTIVE;  METALCLAD INSULATION CORPORATION, individually

21 and as successor in interest to the NORCAL INSULATION COMPANY; NAVISTAR

22 INTERNATIONAL CORPORATION, as parent, alter ego, and/or successor in interest to

23 INTERNATIONAL TRUCK AND ENGINE and INTERNATIONAL HARVESTER; PACCAR,

24 INC., individually and as parent, alter ego, and/or successor in interest to PETERBILT,

25 KENWORTH, DAF and/or FODEN; PARKER HANNIFIN CORPORATION, individually and as

26 parent, alter ego, and successor in interest to SACOMO-SIERRA; PARKER HANNIFIN

27 CORPORATION as successor in interest to EIS BRAKE PARTS; PLANT INSULATION

28 COMPANY, individually and as parent, alter, ego and successor in interest to PLANT ASBESTOS

6

*Dawson v. A.W. Chesterton Company, et al.*       COMPLAINT FOR DAMAGES (PERSONAL
INJURY--ASBESTOS)

1   COMPANY; QUINTEC INDUSTRIES, INC., individually and as the parent, alter ego, successor

2   by merger and/or in interest or otherwise liable for the actions or omissions of WESTERN

3   FIBERGLAS SUPPLY COMPANY, WESTERN FIBROUS GLASS PRODUCTS COMPANY

4   and/or WESGLAS, INC.; RAPID AMERICAN CORPORATION as successor in interest to

5   PHILIP CAREY; S.B. DECKING, INC., individually and as successor in interest to SELBY,

6   BATTERSBY & COMPANY; SEPCO CORPORATION; SOCO-LYNCH, CORPORATION, as

7   successor in interest to WESTERN CHEMICAL & MANUFACTURING COMPANY and A.J.

8   LYNCH & CO.; SOCO-WEST, INC.; STERLING FLUID SYSTEMS (USA) LLC individually

9   and as parent, alter ego, and successor in interest to the PEERLESS PUMP COMPANY;

10  TENNECO AUTOMOTIVE; THOMAS DEE ENGINEERING COMPANY, INC.; TRIPLE A

11  MACHINE SHOP; TUTHILL CORPORATION; UNIROYAL, INC.; VOLVO TRUCKS NORTH

12  AMERICA, INC. as parent, alter ego and/or successor in interest to MACK TRUCKS; YARWAY

13  CORPORATION; ZURN INDUSTRIES, LLC;  and DOES 1 through 500, inclusive, are at all

14  times herein mentioned, and were corporations or other business entities organized and existing

15  under the laws of the state of California and/or qualified to do business in this state.

16          5.      At all times mentioned herein, defendants, and each of them, were engaged in the

17  business of mining, milling, manufacturing, testing, developing, processing, importing, converting,

18  compounding, assembling, fabricating, modifying, designing, specifying, approving, supplying,

19  distributing, delivering, packaging, labeling, advertising, marketing, warranting, applying,

20  installing, and inspecting asbestos, and products produced therefrom, for sale to and use by

21  members of the general public, as well as for sale to and use by other parties to manufacture,

22  assemble, supply, distribute, label, apply and install products made therefrom, or both.

23          6.      The defendants, and each of them, acting through their agents, servants and/or

24  employees, cause, and have caused in the past, certain asbestos-containing products and asbestos-

25  related insulation, refractory materials, fireproofing, gasket and packing materials, bulkhead

26  insulation, decking materials, rope, cloth, tile flooring, boiler and turbine covers, equipment, as

27  well as various automotive gaskets, brakes, clutch and other materials to be placed on the market

28  and in the stream of interstate commerce with the result that said products and materials came into

*Dawson v. A.W. Chesterton Company, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                                      INJURY--ASBESTOS)

1  use by plaintiff and those working in close proximity to plaintiff at relevant times herein.

2       7.    Plaintiff WILLIAM H. DAWSON was exposed to asbestos during the course of his

3  life in the manner and during the time periods set forth below:

4       Plaintiff was employed at the following locations where he alleges possible exposure to

5  asbestos:

| Job Title | Employer | Site/Duties | Years |
|---|---|---|---|
| MECHANICS' HELPER; LABORER | AMOCO SERVICE STATION | AMOCO SERVICE STATION (Fayetteville Street, Asheboro, NC) Minor repair work was performed on various automobiles including but not limited to Fords, GMs, Chryslers, Packards, Studebakers, and Internationals. As a young trainee, others supervised Plaintiff when he assisted in replacing brakes and performing tuneups on the mentioned vehicles. | 1956 to 1958 |
| ENGINEMAN | UNITED STATES NAVY | USS GENESSEE AOG-8 Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine room and all over the ship and made repairs to the equipment as necessary. | 1958 to 1962 |
| ENGINEMAN | UNITED STATES NAVY | USS BACHE DD-470 Plaintiff worked with the steam engines and boilers, helping the machinist mates and boiler technicians. He stood watch in the engine room. He recalls during his time on the Bache, the steam pipes and valves were removed, re-lagged at the shipyard, and replaced on ship. Plaintiff was involved in the maintenance and repair of all machinery aboard the ship—including the steam engines, boilers, pumps, valves, and other equipment. | 1962 to 1966 |
| COMPANY COMMANDER | UNITED STATES NAVY | GREAT LAKES (IL) TRAINING CENTER Plaintiff trained recruits for one year, and taught fire-fighting school for three years. | 1966 to 1970 |

8

| Job Title | Employer | Site/Duties | Years |
|---|---|---|---|
| ENGINEMAN | UNITED STATES NAVY | **USS PROTEUS AS-19 (Guam)** Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine room and all over the ship and made repairs to the equipment as necessary. | 1970 to 1972 |
| ENGINEMAN | UNITED STATES NAVY | **USS HUNLEY AS-31 (Guam)** Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine room and all over the ship and made repairs to the equipment as necessary.

**PUGET SOUND NAVAL SHIPYARD/BREMERTON NAVY YARD** Plaintiff helped with the overhaul of the USS Hunley at Puget Sound Naval Shipyard/Bremerton Navy Yard. He worked on the engines and supervised the repair work. He overhauled the pumps (including centrifugal and reciprocating pumps) and replaced the rope packing in the pumps. He repaired and repacked valves. The overhaul involved repairing various machinery, such as the boilers and engines aboard the ship. Plaintiff also performed preventive maintenance on the ship. | 1972 to 1973 |
| ENGINEER | UNITED STATES NAVY | **MAYPORT NAVAL STATION (FL)** Plaintiff worked on a tug base working on tugboats in the engine shop on land. Plaintiff was in charge of engineering and worked on small tugs and small boats. | 1974 to 1976 |
| FLEET TRAINING INSTRUCTOR-- ENGINES | UNITED STATES NAVY | **GUANTANAMO BAY NAVAL BASE, CUBA (GITMO)** Plaintiff was a Fleet Training Instructor for ships that participated in fleet training exercises in order for Navy ships to be war-ready. Training | 1976 to 1977 |

9

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

| Job Title | Employer | Site/Duties | Years |
|-----------|----------|-------------|-------|
| | | included gunnery, navigation, and engineering components. Plaintiff would assist in the training of people in the engine rooms by holding drills. | |
| ENGINEER/ MECHANIC | UNITED STATES NAVY | NAVAL AIR STATION JACKSONVILLE (FL) Plaintiff worked in a shop that involved taking care of equipment with small engines, such as lawnmowers, weed whackers, etc. | 1977 to 1978 |
| DIESEL MECHANICS INSTRUCTOR | FLORIDA JUNIOR COLLEGE, JACKSONVILLE, FL | FLORIDA JUNIOR COLLEGE, JACKSONVILLE, FL Plaintiff taught a class on diesels and trucks. Plaintiff taught repairing tractor trailer trucks, including but not limited to International Harvester, Mack, International Trucks, and Freightliner, trucks. Plaintiff also recalls General Motors, Ford, Chrysler automobiles and pick-ups. Plaintiff taught engine work—including completely rebuilding engines. Plaintiff also taught brake mechanic work, clutch work, and air compressors. He performed brake and clutch work. | 1978 to 1985 |
| MECHANIC | NORTH CAROLINA LUMBER COMPANY | ASHEBORO, NC Plaintiff's duties included keeping conveyors moving, fixing chains and sprockets. Plaintiff worked on forklifts—he replaced the bearings in the forks, fixed alternators, worked on engines and brakes. | 1987 to 1988 |
| MECHANIC | BIO MASS ENERGY CO. | ASHEBORO, NC Plaintiff worked for this company that would take shavings from the planar mill to smolder, which would produce methane gas to run through the engines and make electricity. Plaintiff rebuilt these engines to run. Plaintiff worked with gaskets and packing. | 1988 to 1990 |
| MECHANIC | SELLERS' TRUCKING AND GARAGE | BLACKANKLE, NC Plaintiff worked as a mechanic at this garage. He and another mechanic fixed tractor-trailer trucks and performed brake jobs and pulled clutches. | 1990 to 1992 |
| MECHANIC | RENTAL TOOLS AND EQUIPMENT CO. | GREENSBORO, NC Plaintiff worked as a mechanic on various equipment including bulldozers | 1993 to 1997 |

10

*Dawson v. A.W. Chesterton Company, et al.*　　　COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

| Job Title | Employer | Site/Duties | Years |
|---|---|---|---|
| | | and hauling equipment, including bobcats and Mack trucks. Plaintiff worked on brakes for trucks and trailers. Plaintiff serviced at Ford L350 trucks. | |

8.     During the course and scope of his employment, plaintiff continually worked with and in close proximity to others who were working with asbestos and asbestos-containing products. He routinely and regularly worked in close proximity to asbestos and asbestos-containing products and was continually exposed to asbestos fibers which were released from asbestos and asbestos-containing products which were mined, milled, manufactured, processed, imported, converted, compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and sold by defendants, and each of them.

Throughout his adult life, Plaintiff was a shadetree mechanic and thus also performed automotive mechanical work on vehicles for his family, friends, and neighbors, at various locations. During Plaintiff's naval career, while on shore duty, Plaintiff performed brake repair on various automobiles at U.S. Navy Hobby Shops. Some cars that he worked on include, but are not limited to Fords, Chevrolets, GMs, Nashes, Packards, Kaisers, and Studebakers.

9.     Plaintiff's exposure to asbestos was the direct and legal cause of his development of an asbestos-related disease known and designated as mesothelioma and other illnesses and disabilities whose relationship to asbestos is as yet unknown to plaintiff herein.

## FIRST CAUSE OF ACTION

### (Negligence)

10.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations.

11.     At all times relevant herein, defendants and each of them, owed a duty of due care which required them to exercise ordinary care to protect against an unreasonable risk of harm.  This duty was owed to plaintiff.

/ / /

11

*Dawson v. A.W. Chesterton Company, et al.*                COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

12.    Plaintiff's development of mesothelioma and related conditions is the direct and legal result of the conduct of the defendants, and each of them, in that they negligently and carelessly researched, tested or failed to test, manufactured, designed, specified, developed, labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed, distributed and supplied asbestos and asbestos-containing products.  Defendants, and each of them, without any adequate warning to the consumer or user, produced, sold, and otherwise put into the stream of interstate commerce the foregoing materials which said defendants, and each of them knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to plaintiff's body, lungs, respiratory system, skin and health.  Further, defendants, and each of them, knew, or through the exercise of ordinary care should have known, that exposure to asbestos is, and at all times relevant herein has been, associated with terminal and incurable diseases which have caused and continue to cause death.

13.    During the time period when plaintiff was exposed to asbestos in the manner described above, he had no knowledge that said exposure placed him at risk for developing the diseases described herein and therefore had no opportunity, nor can he be charged with a duty or breach of duty, to protect himself against said harmful asbestos exposure.  Plaintiff had no knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them, were actionable at law when they were committed and cannot be charged with knowledge or inquiry thereof.

14.    The mesothelioma and related conditions that afflict plaintiff developed at a microscopic and undetectable level over an extended period of time, without noticeable trauma, and was therefore unknown and unknowable to plaintiff until his physicians diagnosed him with mesothelioma and related conditions within the pertinent statute of limitations.  Prior to his diagnosis, plaintiff did not know, nor through the exercise of reasonable diligence could he have known, that his disease and related conditions were caused by his exposure to the defendants' asbestos and asbestos-containing products.

/ / /

/ / /

12

*Dawson v. A.W. Chesterton Company, et al.*                COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

15.     As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed a disease known and designated as mesothelioma and related conditions.

16.     As a further direct and legal result of the conduct of defendants, and each of them, it has been and continues to be necessary for plaintiff to retain the services of physicians, hospitals, hospice, and other health care professionals to diagnose, treat, and provide palliative care for plaintiff from now until he approaches the end of his life.  As a further direct and legal result of the conduct of the defendants, and each of them, it will be necessary for plaintiff to retain the services of health care professionals in the future for an indeterminable period of time.  Plaintiff does not yet know the full extent of treatment that will be required nor the reasonable value of medical services rendered or to be rendered to plaintiff herein and therefore requests leave to amend this complaint when that sum is determined.

17.     As a direct and legal result of the conduct of the defendants, and each of them, and of plaintiff's diagnosis of mesothelioma and related conditions, plaintiff has been unable to follow his normal or any gainful occupation for certain periods preceding and following his diagnosis, and plaintiff will remain disabled for an indeterminable time.  Plaintiff has incurred, and will incur, loss of income, wages, pensions, earning potential, profits and commissions, and other pecuniary losses.  Plaintiff does not know the amount of said past and future losses and therefore requests leave to amend this complaint when that sum is determined.

18.     As a further direct and legal result of the negligence of defendants, and each of them, and plaintiff's diagnosis of mesothelioma and related conditions, plaintiff has been damaged in his health, strength, and activity, and endured and continues to endure unrelenting physical and emotional pain and suffering, emotional distress, mental distress, mental anguish, fear, nervousness, grief, anxiety, worry, humiliation and indignity, the full nature and extent of which are presently unknown to plaintiff and for which plaintiff has incurred general damages in excess of $50,000.00.

///

///

///

13

*Dawson v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

19.     Since 1924, the defendants, and each of them, knew or should have known of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the plaintiff and others in plaintiff's position working in close proximity with such materials.  The defendants, and each of them, knew or should have known of the dangerous propensities of the aforementioned materials and products since before that time.

20.     Although defendants knew or should have known of the aforementioned information, defendants, and each of them, negligently, carelessly, and recklessly failed to label any of the aforementioned asbestos-containing materials and products, including those with which and around which plaintiff worked such as thermal insulation materials specified for or on/in boilers, regarding the hazards of such materials and products to the health and safety of plaintiff and others in plaintiff's position working in close proximity with such materials until 1964.

21.     Commencing in 1964, many of such asbestos-containing materials were not labeled as hazardous by all of the defendants herein, despite the fact that the knowledge of such hazards existed and that defendants, and each of them, knew or should have known of such hazards since 1924.  At all times herein mentioned, defendants, and each of them, negligently, carelessly, and recklessly:

A.     failed to provide information relating to the danger of the use of the aforementioned materials to plaintiff and others in plaintiff's position and the general public concerning the dangerous nature of the aforementioned materials to workers;

B.     failed to disseminate such information in a manner which would give general notice to the public and knowledge of the hazardous nature thereof, when defendants were bound to disclose such information;

C.     sold the aforementioned products and materials to plaintiff's employer(s) and others without advising such employers and others of dangers of the use of such materials to persons working in close proximity thereto, when defendants knew or should have known of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers;

/ / /

---

14

*Dawson v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                               INJURY--ASBESTOS)

D.     negligently, carelessly and recklessly misrepresented to plaintiff, others in plaintiff's position, and plaintiff's employer that it was safe for plaintiff to work in close proximity to such materials, when they knew that this was not the case; and

E.     negligently, carelessly and recklessly failed to disclose to plaintiff, others in plaintiff's position, plaintiff's employer, and members of the general public, medical and scientific data and knowledge of the results of studies including, but not limited to, the information and knowledge of the contents of the Lanza report.

22.    A.     Defendants, and each of them, knew or should have known of the connection between inhalation of asbestos fibers and lung cancer, asbestosis, pleural plaques, and related conditions which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein.

B.     At all times mentioned herein, defendants, and each of them, knew or should have known of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein.

23.    Defendants, and each of them, negligently, carelessly and recklessly failed to provide the above described medical and scientific data to plaintiff, others in plaintiff's position, plaintiff's employer(s), and members of the general public concerning such knowledge of danger, when defendants were bound to disclose it.

24.    Defendants, and each of them, knew or should have known that said asbestos-containing materials were dangerous when breathed and caused pathological effects without noticeable trauma, and that such material was dangerous and a threat to the health of persons coming into contact therewith.  Defendants, and each of them, negligently, carelessly and recklessly did not warn plaintiff, others in plaintiff's position, plaintiff's employer(s) and the general public of their information.

///
///
///

15

25.     Defendants, and each of them, knew or should have known that adequate protective masks and devices should be used by workers such as plaintiff when applying and installing the asbestos-containing products of the defendants.  Defendants, and each of them, knew or should have known that not wearing an adequate protective mask and/or device would result in injury to the plaintiff and others applying and installing such materials.  Defendants, and each of them, negligently, carelessly and recklessly do not inform workers such as plaintiff, and others applying and installing such materials of the aforementioned information.

26.     Defendants, and each of them, knew or should have known that plaintiff and anyone similarly situated in an industrial and construction setting would be exposed to defendants' asbestos-containing products, and that, upon inhalation of asbestos such persons would, in time, develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all.  Defendants, and each of them, negligently, carelessly and recklessly failed to provide information to the public at large and buyers, users, and physicians employed by plaintiff and plaintiff's employer for the purpose of conducting physical examinations of plaintiff and others working with or near asbestos that exposure to these materials would cause pathological effects without noticeable trauma.

27.     The foregoing acts of the defendants, and each of them, and the negligent, careless and reckless conduct of the defendants, and each of them, as described hereinabove, were done recklessly, wantonly, willfully, oppressively, and in conscious disregard of the safety of plaintiff herein, in that

A.      the defendants, and each of them, prior to and at the time of sale, distribution or supply of the aforementioned products to Plaintiff's employer or to others who in turn sold to Plaintiff's employers, and to other persons relevant herein, knew or should have known that the foregoing asbestos fibers released from said products during the foreseeable operations of applying and removing same, were dangerous when inhaled;

/ / /

/ / /

/ / /

16

B.      defendants, and each of them, knew or should have known of the hazards and dangers of working with or around asbestos products produced or supplied by defendants, and each of them. The defendants, and each of them, knew or should have known that said products would be used by Plaintiff and others who had no knowledge of the dangerous and hazardous nature thereof; and

C.      defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said products.  Defendants, and each of them, did not place a sufficient warning on the said product or package thereof regarding said dangerous nature. Accordingly, plaintiff is entitled to an award of punitive damages.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Strict Products Liability)

28.      Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except Paragraphs 11, 12 and 13.

29.      At all times mentioned herein, defendants, and each of them, during the ordinary course of business, mined, milled, manufactured, imported, supplied, distributed, delivered, packaged, labeled, advertised, sold, marketed, installed, applied and otherwise introduced into the stream of commerce asbestos and asbestos-containing products which were defective due to their design, manufacture, sufficiency of or lack of warning, and/or failure to meet ordinary use or consumer expectations of safety when used in an intended or reasonably foreseeable manner.

30.      The asbestos and asbestos-containing products were defective when the defendants, and each of them, marketed and introduced them into the stream of commerce.  Defendants, and each of them, knew that the aforementioned products would be used without inspection for defects by the user thereof.

31.      At all times herein mentioned, plaintiff, plaintiff's employer, and other persons relevant herein, purchased from defendants, and each of them, asbestos and asbestos-containing products.

17

*Dawson v. A.W. Chesterton Company, et al.*                COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

32.    *Defective Design*: The products were defectively designed in that:

A.    The products failed to perform as safely as an ordinary consumer would expect in their intended or reasonably foreseeable use or manner of operation, or;

B.    The products had inherent risks of danger that outweighed their benefits; alternate and safer substitute products existed and the state-of-the-art required their use given the seriousness of the potential danger, likelihood of its occurrence, feasibility, cost, and adverse consequences to the product and to the consumer of a safer alternative design.

C.    *Failure to Warn*: Defendants knew or reasonably should have known of the dangerous propensities of their products but nonetheless distributed and marketed their products with inadequate warning of its dangers.

D.    Each of defendants' products reached plaintiff without substantial change in its condition.

E.    The aforementioned products were used by plaintiff and those in close proximity to plaintiff in a foreseeable manner and in the manner for which they were intended. Defendants' products were used in a manner reasonably foreseeable by defendants, which defendants intended or knew they would be used, or for which they marketed them or knew they were marketed to be used.

F.    At all times mentioned herein, plaintiff was unaware of the dangerous nature of the aforementioned products.

33.    The defective design of defendants' products and failure to warn were the proximate causes of plaintiff's injuries.

34.    As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as mesothelioma and related conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

35.    The aforementioned products were used by plaintiff and those in close proximity to plaintiff in a foreseeable manner and in the manner for which they were intended.

///

18

*Dawson v. A.W. Chesterton Company, et al.*        COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

36.    A.    Defendants, and each of them, knew that defendants' asbestos-containing products would be used by plaintiff and anyone similarly situated in an industrial, construction, marine and automotive setting without inspection for defects.

B.    Defendants, and each of them, knew that such persons would be exposed to defendants' asbestos-containing products.

C.    Defendants, and each of them, knew that, upon inhalation of asbestos from defendant's asbestos-containing products, such persons would, in time, develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all.

D.    At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, defendants, and each of them, knew or should have known of the risks and hazards associated with the use and/or exposure of its products.

E.    At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them, failed to warn or provided inadequate warnings to persons who used or would be exposed to its defective asbestos-containing products, including plaintiff, of the dangers and hazards associated with its products.

F.    At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them failed to provide instructions or provided inadequate instructions to persons who used its defective asbestos-containing products, or who would be exposed to said products, including plaintiff, of the dangers and hazards associated with its products.

G.    Defendants, and each of them, prior to and at the time of placing the aforementioned products in to the stream of commerce, including but not limited to supplying said products to plaintiff's employer or to others who in turn sold to plaintiff's employers, and to other persons relevant herein, knew that the asbestos which plaintiff and others around him were exposed to was dangerous.  The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said products, and failed to place a sufficient warning on the said product or package thereof regarding said dangerous nature, despite knowing that said products

19

1  would be used by plaintiff and others around him who had no knowledge of the dangerous and

2  hazardous nature thereof.

3      37.    The conduct of the defendants, and each of them, was motivated by their financial

4  interests.  In this financial pursuit, defendants consciously disregarded the safety of users and

5  persons exposed to their products and were consciously willing to permit their products and

6  premises to injure workers and others, including plaintiff, in order to maximize profits.  They

7  consciously disregarded the well-publicized risks of asbestos exposure because to have kept

8  consumers and end users like plaintiff safe would have required said defendants to make less

9  money or limit distribution of their products.  The defendants, and each of them, either did not

10  warn or insufficiently warned regarding the dangerous nature of said products, nor placed a

11  sufficient warning on the said product or package thereof regarding said dangerous nature, despite

12  knowing that said products would be used by plaintiff and others around him who had no

13  knowledge of the dangerous and hazardous nature thereof.  Defendants' conduct as described

14  herein was and is willful, malicious, outrageous, and in conscious disregard and indifferent to the

15  safety and health of workers and others exposed to asbestos, including plaintiff, and therefore

16  plaintiff is entitled to an award of punitive damages.

17      WHEREFORE, plaintiff prays judgment as hereinafter set forth.

18                    **THIRD CAUSE OF ACTION**

19                        (Failure to Warn)

20      38.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

21  fully set forth herein, each and every allegation contained in the General Allegations, the First

22  Cause of Action herein, except Paragraphs 11, 12 and 13, and each and every allegation contained

23  in the Second Cause of Action, except those allegations pertaining to design and manufacturing

24  defect.

25      39.    At all relevant times, the asbestos and asbestos-containing products which were

26  mined, milled, manufactured, tested, developed, processed, imported, converted, compounded

27  assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed,

28  delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by

---

20

1   defendants, and each of them, were defective as a result of defendants' failure to warn or give

2   adequate warning that the particular risk of developing an asbestos-related disease and risk of death

3   from an asbestos-related disease resulting from exposure to asbestos rendered the product unsafe

4   for its intended or reasonably foreseeable use.

5       40.     At all relevant times, the defendants, and each of them, had specific knowledge of

6   these risks or could have known of these risks by the application of scientific knowledge available

7   at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying,

8   approving, inspecting, applying and installing the asbestos and asbestos-containing products.

9       41.     As a direct and legal result of the conduct of the defendants, and each of them,

10  plaintiff developed an asbestos-related disease known and designated as mesothelioma and related

11  conditions and disabilities as previously set forth, and has incurred damages in excess of

12  $50,000.00 in addition to the special damages alleged herein.

13      WHEREFORE, plaintiff prays judgment as hereinafter set forth.

14                          **FOURTH CAUSE OF ACTION**

15                              (Breach of Warranties)

16      42.     AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff complains of

17  defendants, and each of them, and alleges:

18      43.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

19  fully set forth herein, each and every allegation contained in the General Allegations, and the First

20  Cause of Action herein, except Paragraphs 11, 12 and 13.

21      44.     The defendants, and each of them, sold, supplied, delivered or otherwise distributed

22  to plaintiff, or to another purchaser or user who subsequently sold, supplied, delivered or otherwise

23  distributed to plaintiff, or to others working in close proximity to plaintiff, the above-described

24  asbestos and asbestos-containing products to which plaintiff was exposed.

25      45.     The defendants, and each of them, knew the intended purpose of the asbestos and

26  asbestos-containing products prior to marketing said products and knew or should have known that

27  dangerous levels of asbestos fiber would be released during the process of applying, installing and

28  removing these products.

<div align="center">21</div>

---

*Dawson v. A.W. Chesterton Company, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                                     INJURY--ASBESTOS)

46.     The defendants, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose.

47.     Defendants, and each of them, impliedly warranted that their products were of merchantable quality and safe, fit and proper for the uses which defendants knew or intended were to be made of them at the time of selling them.

48.     Plaintiff reasonably relied on the skill, knowledge and judgment of defendants, and each of them, in plaintiff's use of the products as a basis of the bargain under which such products were bought and used.

49.     The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by defendants, and each of them, in that said products had dangerous propensities when put to the use for which each of these defendants knew or intended they were marketed or sold and would cause severe injury to users or bystanders, such as plaintiff.

50.     The defendants, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, advising plaintiff and others working in close proximity to plaintiff that dangerous levels of asbestos fiber would be released during the process of applying, installing, removing and/or disturbing said products.

51.     As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as mesothelioma and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Fraud and Conspiracy)

52.     AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff complains of the defendants, and each of them, and alleges:

22

53.   Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except allegations pertaining to negligence.

54.   Pursuant to Section 1708 of the Civil Code of California, the defendants, and each of them, owed a duty to plaintiff at all times relevant herein to abstain from injuring the plaintiff or infringing upon any of his rights.

55.   The defendants, and each of them, breached the duty they owed to plaintiff pursuant to Section 1708 of the Civil Code of California by willfully deceiving plaintiff with the intent to induce plaintiff to alter plaintiff's position to plaintiff's injury or risk.  The defendants, and each of them, deceived the plaintiff and committed actionable fraud pursuant to Section 1709 and Section 1710 of the Civil Code of California.

56.   The defendants, and each of them, as more fully set forth below, suggested as fact that which was not true and that which defendants, and each of them, did not believe was true.

57.   The defendants, and each of them, as more fully set forth below, asserted as fact that which was not true and that which defendants, and each of them, had no reasonable grounds for believing was true.

58.   The defendants, and each of them, as more fully set forth below, suppressed facts which they were obligated to disclose and gave information of other facts which were likely to mislead for want of communication of the undisclosed facts.

59.   The defendants, and each of them, made promises without any intention of keeping those promises.

60.   Since 1924, the defendants, and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the plaintiff and others in plaintiff's position working in close proximity with such materials.  The defendants, and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time, and with intent to deceive plaintiff and others in his position, and with intent that he and such others should be and remain ignorant of such facts, and

23

1  with intent to induce plaintiff and such others to alter his and their positions to him and their injury

2  and/or risk and in order to gain advantages did do the following acts:

3      A.    Defendants, and each of them, did not label any of the aforementioned

4  asbestos-containing materials and products regarding the hazards of such materials and products to

5  the health and safety of plaintiff and others in plaintiff's position working in close proximity with

6  such materials until 1964, when certain of such materials were labeled by some, but not all, of the

7  defendants herein, despite the fact that the knowledge of such hazards existed and was known to

8  defendants, and each of them, since 1924. By not labeling such materials as to their said hazards,

9  defendants, and each of them, caused to be suggested as a fact to plaintiff and plaintiff's employer

10  that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true

11  and defendants did not believe it to be true.

12      B.    Defendants, and each of them, suppressed information relating to the danger

13  of the use of the aforementioned materials by requesting the suppression of information to the

14  plaintiff and the general public concerning the dangerous nature of the aforementioned materials to

15  workers and by not allowing such information to be disseminated in a manner which would give

16  general notice to the public and knowledge of the hazardous nature thereof, when defendants were

17  bound to disclose such information.

18      C.    Defendants, and each of them, sold the aforementioned products and

19  materials to plaintiff's employer and others without advising such employers and others of dangers

20  of the use of such materials to persons working in close proximity thereto, when defendants knew

21  of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers.

22  Thereby, defendants caused to be positively asserted to plaintiff's employer that which was not true

23  and which defendants had no reasonable ground for believing to be true and in a manner not

24  warranted by the information possessed by said defendants, and each of them, to wit, that it was

25  safe for plaintiff to work in close proximity to such materials.

26  ///

27  ///

28  ///

*Dawson v. A.W. Chesterton Company, et al.*        COMPLAINT FOR DAMAGES (PERSONAL
INJURY--ASBESTOS)

1    D.    Defendants, and each of them, suppressed and continue to suppress from

2 everyone, including plaintiff and plaintiff's employer, medical and scientific data and knowledge of

3 the results of studies including, but not limited to, the information and knowledge of the contents of

4 the Lanza report.  Although bound to disclose it, defendants, and each of them, influenced

5 A. J. Lanza to change his report, the altered version of which was published in Public Health

6 Volume at page I in 1935, thereby causing plaintiff to be and remain ignorant thereof.  Defendants,

7 and each of them, caused *Asbestos Magazine*, a widely disseminated trade journal, to omit mention

8 of danger, thereby lessening the probability of notice of danger to the users thereof.

9    E.    Defendants, and each of them, belonged to, participated in, and financially

10 supported the Asbestos Textile Institute and other industry organizations which, and on behalf of

11 defendants, and each of them, actively promoted the suppression of information of danger to users

12 of the aforementioned products and materials, thereby misleading plaintiff and plaintiff's employer

13 by the suggestions and deceptions set forth above in this cause of action.  The Dust Control

14 Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile

15 Institute, was specifically enjoined to study the subject of dust control.  Discussions in this

16 committee were held many times regarding the dangers inherent in asbestos and the dangers which

17 arise from the lack of control of dust and the suppression of such information from 1946 to a date

18 unknown to plaintiff at this time.

19    F.    Commencing in 1930 with the study of mine and mill workers at Asbestos

20 and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos- Manhattan plants

21 in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific

22 information of the connection between inhalation of asbestos fibers and mesothelioma, asbestosis,

23 pleural plaques, and related conditions, which information was disseminated through the Asbestos

24 Textile Institute and other industry organizations to all other defendants, and each of them, herein.

25 Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific

26 information of the connection between inhalation of asbestos fibers and cancer, which information

27 was disseminated through the Asbestos Textile Institute and other industry organizations to all

28 other defendants herein.  Thereby, defendants suggested as a fact that which is not true and

25

1  disseminated other facts likely to mislead plaintiff and plaintiff's employer and which did mislead

2  them by withholding afore-described medical and scientific data and by not giving plaintiff or

3  plaintiff's employer the true facts concerning such knowledge of danger when defendants were

4  bound to disclose it.

5        G.    Defendants, and each of them, failed to warn plaintiff and plaintiff's

6  employer that said materials were dangerous when breathed and caused pathological effects

7  without noticeable trauma, despite the fact that defendants possessed knowledge and were under a

8  duty to disclose that such material was dangerous and a threat to the health of persons coming into

9  contact therewith.

10        H.    Defendants, and each of them, failed to provide plaintiff with information

11  concerning adequate protective masks and devices to be used when applying and installing the

12  products of the defendants, and each of them, despite the knowledge of defendants and a duty to

13  disclose that such protective measures were necessary and would result in injury to the plaintiff and

14  others applying and installing such materials if not so advised.

15        I.    Defendants, and each of them, concealed from plaintiff the true nature of the

16  industrial, construction, marine, and friction exposure of plaintiff and knew that plaintiff and

17  anyone similarly situated, upon inhalation of asbestos, would in time develop irreversible

18  conditions of either mesothelioma, asbestosis or cancer, or all, and that the materials to which he

19  was exposed would cause pathological effects without noticeable trauma despite the fact that

20  defendants were under a duty to and bound to disclose it; and

21        J.    Defendants, and each of them, failed to provide information to the public at

22  large and buyers, users, and physicians employed by plaintiff and plaintiff's employer for the

23  purpose of conducting physical examinations of plaintiff and others working with or near asbestos

24  of the true nature of the hazards of asbestos and that exposure to these materials would cause

25  pathological effects without noticeable trauma to the public, including buyers, users, and

26  physicians employed by plaintiff and plaintiff's employer so that said physicians could examine,

27  diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that

28  defendants, and each of them, were under a duty to so inform and said failure was misleading.

26

61.     Defendants, and each of them, having the aforementioned knowledge of facts and knowing that the plaintiff did not possess such knowledge, acted falsely and fraudulently and with full intent to cause plaintiff to remain unaware of those facts and to induce plaintiff to work with and around unsafe products in a dangerous environment, all in violation of Section 1710 of the Civil Code of the State of California.

62.     At all times mentioned, the defendants, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon plaintiff the unlawful acts complained of in Paragraphs 19 through 27 of the First Cause of Action and Paragraphs 54 through 61 of the Fifth Cause of Action herein.

63.     The defendants, and each of them, and at least one of them, did the acts herein alleged in Paragraph 60 through 62 of this Fifth Cause of Action in furtherance of the conspiracy and agreement as herein alleged and also acted in furtherance of a conspiracy and agreement between and among the defendants, and each of them, to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time but known full well to defendants, and each of them.  These actions were done maliciously, wantonly, and in reckless disregard for the health and safety of others, including plaintiff herein.

64.     Plaintiff reasonably relied upon the misrepresentations of the defendants, and each of them, and in reliance on same continued to work with and around asbestos and asbestos-containing products.  Plaintiff would have taken steps to protect his health and life had he known the facts, which were known to the defendants, and each of them, about exposure to asbestos and asbestos-containing products.  Plaintiff would not have knowingly continued to work in an unsafe environment.  He had no knowledge of the foregoing facts and actions of the defendants, and each of them, at the time when they were committed and cannot be charged with knowledge or inquiry thereof.

65.     As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as mesothelioma and related conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00 in addition to the special damages alleged.

27

1    WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

2                        **SIXTH CAUSE OF ACTION**

3                            (Enterprise Liability)

4    66.    AS AND FOR A SIXTH CAUSE OF ACTION, plaintiff complains of the

5    defendants, and each of them, and allege:

6    67.    Plaintiff incorporates by reference as though fully set forth herein each and every

7    allegation of the General Allegations, and First, Second, Third, and Fifth Causes of Actions herein.

8    68.    The defendants, and each of them, mined, milled, manufactured, tested, developed,

9    processed, imported, converted, compounded, assembled, fabricated, modified, designed, specified,

10   approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed,

11   warranted, applied, installed, inspected and otherwise marketed asbestos and asbestos-containing

12   products.  These products were defective and carried with them an inadequate warning, or no

13   warning at all, regarding the health hazards associated with asbestos exposure.  The defendants,

14   and each of them, knew or should have known of the defective and hazardous nature of the

15   asbestos and asbestos-containing products at the time that said products were placed in the stream

16   of commerce.

17   69.    Plaintiff, at all times pertinent herein, was unaware and cannot be charged with

18   knowledge of the health hazards associated with exposure to asbestos fibers released from the

19   afore-alleged asbestos and asbestos-containing products of the defendants, and each of them.  On

20   the other hand, the defendants, and each of them, introduced these products into the market where

21   plaintiff worked and were in a position to prevent harmful exposures to all persons therein,

22   including the plaintiff.

23   70.    Plaintiff, at all times pertinent herein, was exposed to asbestos fibers released from

24   asbestos and asbestos-containing products which are and were fungible in color, size, shape,

25   texture, and function.  Said products were similar in appearance and composition and indistinct one

26   from the others, and through no fault of the plaintiff these products cannot be traced to a particular

27   defendant or other entity.

28   ///

                                    28

_Dawson v. A.W. Chesterton Company, et al._          COMPLAINT FOR DAMAGES (PERSONAL
                                                     INJURY--ASBESTOS)

71.     In this action, plaintiff has joined as defendants a substantial share of the manufacturers and suppliers of the asbestos and asbestos-containing products which comprised the relevant market within which plaintiff was exposed to asbestos fibers.  At trial, plaintiff will prove the respective market share of the defendants, and each of them, during all times relevant herein. The liability of the defendants, and each of them, is proportional to their respective market share percentage, consistent with the rules set forth in *Sindell v . Abbott Laboratories*.

72.     As a direct and legal result of the conduct of the defendants, and each them, plaintiff developed an asbestos-related disease known and designated as mesothelioma and related conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (False Representation Under Restatement Torts Section 402-B)

73.     AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff complains of the defendants, and each of them, and alleges:

74.     Plaintiff incorporates by reference as though fully set forth herein, each and every allegation of the General Allegations, and First, Second, Third, Fourth, Fifth, and Sixth Causes of Actions herein.

75.     At the aforementioned time when defendants, and each of them, researched, manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale and sold the said asbestos and asbestos-containing products as hereinabove set forth, the defendants, and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and including plaintiff herein and his employers, that asbestos and asbestos-containing products were of merchantable quality and safe for the use for which they were intended.

/ / /

/ / /

29

*Dawson v. A.W. Chesterton Company, et al.*          COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

76.     The purchasers and users of said asbestos and asbestos-containing products, including plaintiff and his employers, relied upon said representations of defendants, and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

77.     Said representations by defendants, and each of them, were false and untrue in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by defendants, and each of them, in that asbestos and asbestos containing products have very dangerous properties and defects whereby said products cause lung cancer, mesothelioma, asbestosis, pleural plaques, and other diseases and have other defects that cause injury and damage to the users of said products, including the plaintiff herein, thereby threatening the health and life of plaintiff.

78.     As a direct and legal result of the conduct of the defendants, and each them plaintiff developed an asbestos-related disease known and designated as mesothelioma and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### (Loss of Consortium)

79.     AS AND FOR AN EIGHTH CAUSE of action, plaintiff RITA M. DAWSON complains of defendants, and each of them, as follows:

80.     Plaintiff, by this reference, hereby incorporates and makes a part thereof, as though fully set forth herein, each and every allegation contained in the General Allegations and each of the foregoing Causes of Action herein.

81.     At the time that plaintiff sustained injury as more fully alleged in the First through Seventh Causes of Action, and at all times thereafter, plaintiff RITA M. DAWSON was the spouse of plaintiff WILLIAM H. DAWSON.

82.     Prior to said injuries, plaintiff was able to and did perform his duties as the spouse of RITA M. DAWSON. Plaintiff is informed and believes and thereon alleges that subsequent to said injuries and as a proximate result thereof, plaintiff has been, and at some time in the future will

30

1  be, incapacitated and unable to perform the necessary duties as spouse of plaintiff and the work and

2  service usually performed in the care, maintenance, and management of the family home.

3      83.      As a proximate result of said injuries, plaintiff has been and will be deprived of

4  consortium with plaintiff WILLIAM H. DAWSON, including the performance of his spouse's

5  duties, and plaintiff RITA M. DAWSON has and will be required to perform the duties previously

6  performed by her spouse WILLIAM H. DAWSON, all to plaintiff's damage in a sum which cannot

7  be ascertained at this time .  Plaintiff requests the right to amend this complaint to allege the

8  amount of said damages when they are ascertained.

9      WHEREFORE, plaintiff WILLIAM H. DAWSON prays judgment as follows:

10  **First, Second, and Fifth Causes of Action**

11      1.      General damages in an amount in excess of $50,000.00 in accordance with proof;

12      2.      Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

13  accordance with proof;

14      3.      Punitive and exemplary damages in an amount found appropriate by the trier of fact

15  in accordance with proof;

16      4.      Special damages in accordance with the proof;

17      5.      Prejudgment interest and post-judgment interest in accordance with law;

18      6.      Costs of suit; and,

19      7.      Such and other and further relief as the Court deems just and proper.

20  **Third, Fourth, Sixth and Seventh Causes of Action**

21      1.      General damages in an amount in excess of $50,000.00 in accordance with proof;

22      2.      Special damages in accordance with the proof;

23      3.      Prejudgment interest and post-judgment interest in accordance with law;

24      4.      Costs of suit; and,

25      5.      Such and other and further relief as the Court deems just and proper.

26  ///

27  ///

28  ///

31

1    WHEREFORE, plaintiff RITA M. DAWSON prays judgment as follows:

2    **Eighth Cause of Action**

3    1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

4    2.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

5    accordance with proof;

6    3.    Punitive and exemplary damages in an amount found appropriate by the trier of fact

7    in accordance with proof;

8    4.    Special damages in accordance with the proof;

9    5.    Prejudgment interest and post-judgment interest in accordance with law;

10   6.    Costs of suit; and,

11   7.    Such and other and further relief as the Court deems just and proper.

12   DATED:  January 22, 2009                    BRENT COON & ASSOCIATES

13

14                                              By:

15                                              RICHARD A. BRODY
                                                Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

                                32

*Dawson v. A.W. Chesterton Company, et al.*            COMPLAINT FOR DAMAGES (PERSONAL
                                                       INJURY--ASBESTOS)

**Exhibit C**

1  Richard A. Brody, Esq. (SBN 100379)
   Kathleen K. Chio, Esq. (SBN 245388)
2  BRENT COON & ASSOCIATES
   44 Montgomery Street, Suite 800
3  San Francisco, CA  94104
   Telephone:  415.489.7420
4  Facsimile:  415.489.7426

5  Attorneys for Plaintiffs

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     IN AND FOR THE COUNTY OF ALAMEDA

10

11  WILLIAM H. DAWSON and RITA M.          Case No. RG-09-432149
    DAWSON
12                                         PLAINTIFF'S RESPONSES TO
           Plaintiffs,                     ALAMEDA COUNTY SUPERIOR COURT
13                                         JOINT DEFENSE (DIEDEN) STANDARD
                                           INTERROGATORIES TO PLAINTIFFS
14  v.

15
    CBS CORPORATION, et al.,               Complaint Filed:    January 22, 2009
16                                         Trial Date:         Not Set
           Defendants.
17

18        COMES NOW PLAINTIFF WILLIAM H. DAWSON to provide the following responses

19  to this Court's Joint Defendants' Interrogatories ("Dieden" Interrogatories) to Plaintiffs, Perso

20  Injury.

21                                 INTERROGATORIES

22  INTERROGATORY NO.1 and RESPONSES TO INTERROGATORY NO. 1:

23        (a) Name:

24        First: William        Middle: Haywood      Last: Dawson

25        (b) Date of Birth: November 17, 1940

26        (c) Place of Birth: Asheboro, NC

27        (d) Address: 8947-48th Street, Live Oak, FL  32060

28        (e) Height: 6'1"

                                           1
    Dawson. V. CBS Corporation, et al.          PLAINTIFF WILLIAM H. DAWSON'S RESPONSES
    Case No. RG-09-432149                        TO STANDARD (DIEDEN) INTERROGATORIES

1   (f) Social Security Number: 238-64-XXXX.  Please note that the full social security number

2   has been redacted because of privacy concerns and identity theft concerns, but the full social

3   security number will be provided to Designated Defense Counsel to allow them to obtain necessary

4   records;

5   (g) Kaiser Number: N/A

6   (h) Government Serial Number: N/A

7   (i) Military Serial Number: 528 10 04

8   (j) Driver's License Number & State: D250-928-40-417-0

9   (k) All of the names by which YOU have been known:

10   William Dawson, Bill Dawson, Will Dawson.

11   (l) Highest grade level completed: 9th grade (1958)

12   (m) Current Spouse's Name: Rita M. Dawson

13   (n) Spouse's Date of Birth: August 1, 1937

14   (o) Date of Current Marriage: April 28, 1968

15   (p) Spouse's Current Address: 8947-48th Street, Live Oak, FL  32060

16   (q) Spouse's Occupation/Employer: Retired

17   (r) Name of any Former Spouse: N/A

18   (s) Date of any Former Marriage: N/A

19   (t) Place, date and circumstances under which any marriage(s) was (were) dissolved or

20   terminated: N/A

21   **INTERROGATORY NO. 2**:

22   For each child of any marriage (either natural or adopted), please state: (Attach additional

23   sheets, if necessary.)

24
| Name | Date of Birth | Address | Occupation |
|---|---|---|---|
| Michael A. Dawson | 07/05/56 | 1720 Turnberry Ln. Allen, TX  75002 | Electronics technician |
| Catherine A. Lamanna | 07/23/57 | 501 E. Adams St. Wisconsin Dells, WI 53965 | Financial Officer |

27   ///

2

**INTERROGATORY NO. 3:**

Is either of YOUR natural parents alive? If YOUR RESPONSE is "yes", please state for each parent:

    (a) Current age(s)

    (b) Any history of cancer or respiratory disease.

**RESPONSE TO INTERROGATORY NO. 3:**

    No.

**INTERROGATORY NO. 4:**

If either of YOUR natural parents is deceased, please state for each parent:

    (a) Name of deceased parent(s)

    (b) Age at death;

    (c) Date of death;

    (d) Place where the deceased parent(s)'s death certificate is filed.

**RESPONSE TO INTERROGATORY NO. 4:**

    (a)    Homer Dawson (father)

    (b)    84 years old

    (c)    February, 1982

    (d)    Asheboro, NC, Randolph County

    (a)    Jessie Dawson (mother)

    (b)    Unknown

    (c)    Approximately July, 1972

    (d)    Asheboro, NC, Randolph County

**INTERROGATORY NO. 5:**

Have any of YOUR blood relatives (parents, grandparents, siblings, aunts, uncles, or cousins) had cancer of any type?

**RESPONSE TO INTERROGATORY NO. 5:**

    No.

///

3

Dawson. V. CBS Corporation, et al.
Case No. RG-09-432149

PLAINTIFF WILLIAM H. DAWSON'S RESPONSES
TO STANDARD (DIEDEN) INTERROGATORIES

**INTERROGATORY NO. 6**:

If any person identified in YOUR RESPONSE to Interrogatory No. 5 is deceased, please state for each such person:

(a) His/Her complete name;

(b) Date of death;

(c) Place of death;

(d) Place where his/her death certificate would be on file; and

(e) Cause of death.

**RESPONSE TO INTERROGATORY NO. 6**:

Not applicable.

**INTERROGATORY NO 7**:

State the complete address of each of YOUR residences from January first of the year in which YOU contend that YOU were first exposed to asbestos to the present, and the inclusive dates of each period of such residence.

**RESPONSE TO INTERROGATORY NO. 7**:

935 Center Street, Asheboro, NC  27203 (1958);

Recruit Training Center, San Diego, CA (1958);

USS Genesee (1958 – 1962);

USS Bache (1962 – 1966);

2914D Meridian, FV, Great Lakes, IL (1966 - 1970);

USS Proteus (ca 1970);

6 Block, 2 New Agat, Guam.  (Oct. 1970 - 1971)

U.S. Naval Station, Guam, care of 35 Dreyfuss FPO San Francisco, CA (1971);

USS Hunley (1972 - 1973);

Rt. 3, Port Orchard, WA (April 1973 – Dec.1973);

USS Hunley (Dec. 1973 – May 1974);

Ridgeville, SC (1974);

Mayport, FL (9-30-74 – 1976);

---

4

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1    1960 Kusaie Dr., Jacksonville, FL  32216 (Dec. 1974 -1978)

2    1182 Surrey Glen Road, Middleburg, FL  32068  (1978 - 1985);

3    1729 Cedar Rock Mountain Rd., Asheboro, NC  27203 (1986 - 1999);

4    8947-48th Street, Live Oak, FL  32060 (1999 – present).

5    **INTERROGATORY NO. 8:**

6    Please state YOUR educational background and IDENTIFY all institutions attended,

7    including any apprenticeship courses, formal on-the-job training, and safety classes YOU have

8    taken, the date graduated from each institution, YOUR major course of study, and any special

9    scholastic honors or degrees received.

10   **RESPONSE TO INTERROGATORY NO. 8:**

11   Plaintiff completed the ninth grade at Asheboro High School, 1221 S Park St, Asheboro, NC

12   27203 in 1958.

13   Plaintiff completed training and received a certificate on November 1, 1963 for instruction

14   Air Conditioning and Refrigeration at U.S. Naval Station, Norfolk, VA.

15   Plaintiff was awarded a certificate dated March 29, 1968, for completion of Fire Fighter

16   Instructor Training at Fire Fighters' School at U.S. Naval Base in Philadelphia, PA.

17   Plaintiff was an honor graduate of Service School Command, U.S.N.T.C., Great Lakes

18   Illinois, earning a certificate of completion of instruction in "Engineman Class "C-1" School,

19   Service School Command, Naval Training Center, Great Lakes, Illinois, on the General Motors

20   Diesel Technician Course, dated July 2, 1970.

21   As a civilian, Plaintiff received in 1978 a teacher's certificate for part-time teaching of

22   diesel mechanics.  In 1980, he obtained a Teacher's Certificate (number 000289) at Florida Junior

23   College at Jacksonville as a full-time instructor in diesel mechanics.

24   Plaintiff received a Lucas CAV Training Certification (Certificate No. G-84-39) on June 22,

25   1984, for Technical Educator Diesel Fuel Injection Course.

26   On January 29, 1985, Plaintiff received a certificated from General Motors Corporation for

27   completion of a "5.7 Liter Diesel Engine Advanced Course".

28   ///

5

| Dawson. V. CBS Corporation, et al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

1    Plaintiff received a Certificate dated June 1, 1993 for completion of a course by Euclid

2    Industries, Inc. on Heavy-Duty Truck Foundation Air Brakes.

3    **INTERROGATORY NO. 9:**

4    Have YOU ever been convicted of a felony? If so, please state fully and in detail the date,

5    place, and nature of each such felony conviction.

6    **RESPONSE TO INTERROGATORY NO. 9:**

7    No.

8    **INTERROGATORY NO. 10:**

9    Have YOU ever been a member of the Armed Forces? If YOU have, please state: each

10   branch of service in which YOU served; the inclusive dates of YOUR service; the date of YOUR

11   discharge from active duty; YOUR service number; each place (e.g., fort, base, station, etc.) at

12   which YOU served; and, YOUR duties at each place. If YOU have not ever been a member of the

13   Armed Forces for health reasons, please state those reasons.

14   **RESPONSE TO INTERROGATORY NO. 10:**

15   Yes, Plaintiff served in the U.S. Navy from 1958 to 1978. His service number was 528 10

16   04.

17   Employer's Name and Jobsite:

18   United States Navy, USS Genesee AOG-8

19   Job Title(s):

20   Engineman

21   Date Started/Date Ended (Month, Date and Year):

22   1958 to 1962

23   Description of Job Duties:

24   Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was

25   involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers,

26   evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine

27   room and all over the ship and made repairs to the equipment as necessary.

28   ///

6

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

**Employer's Name and Jobsite:**

United States Navy, USS Bache DD-470

**Job Title(s):**

Engineman

**Date Started/Date Ended (Month, Date and Year):**

1962 to 1966

**Description of Job Duties:**

Plaintiff worked with the steam engines and boilers, helping the machinist mates and boiler technicians. He stood watch in the engine room. He recalls during his time on the Bache, the steam pipes and valves were removed, re-lagged at the shipyard, and replaced on ship. Plaintiff was involved in the maintenance and repair of all machinery aboard the ship—including the steam engines, boilers, pumps, valves, and other equipment.

**Employer's Name and Jobsite:**

United States Navy, Naval Station Great Lakes, Training Center

**Job Title(s):**

Commander

**Date Started/Date Ended (Month, Date and Year):**

1966 to 1970

**Description of Job Duties:**

Plaintiff trained recruits for one year, and taught fire-fighting school for three years.

**Employer's Name and Jobsite:**

United States Navy, USS Proteus AS-19; Guam

**Job Title(s):**

Engineman

**Date Started/Date Ended (Month, Date and Year):**

1970 to 1972

///

///

7

| *Dawson. V. CBS Corporation, et al.* | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
|---|---|
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

<u>Description of Job Duties:</u>

Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine room and all over the ship and made repairs to the equipment as necessary.  The USS Proteus was built at Moore Dry Dock in Oakland.

<u>Employer's Name and Jobsite:</u>

United States Navy, USS Hunley AS-31; Puget Sound Naval Shipyard/Bremerton Navy Yard

<u>Job Title(s):</u>

Engineman

<u>Date Started/Date Ended (Month, Date and Year):</u>

1972 to 1973

<u>Description of Job Duties:</u>

<u>USS HUNLEY AS-31 (Guam)</u>

Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers, evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine room and all over the ship and made repairs to the equipment as necessary.

<u>PUGET SOUND NAVAL SHIPYARD/BREMERTON NAVY YARD</u>

Plaintiff helped with the overhaul of the USS Hunley at Puget Sound Naval Shipyard/Bremerton Navy Yard. He worked on the engines and supervised the repair work. He overhauled the pumps (including centrifugal and reciprocating pumps) and replaced the rope packing in the pumps. He repaired and repacked valves. The overhaul involved repairing various machinery, such as the boilers and engines aboard the ship. Plaintiff also performed preventive maintenance on the ship.

<u>Employer's Name and Jobsite:</u>

United States Navy, Mayport Naval Station, FL

8

| *Dawson. V. CBS Corporation, et al.* Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES TO STANDARD (DIEDEN) INTERROGATORIES |
| --- | --- |

1  Job Title(s):

2        Engineer

3  Date Started/Date Ended (Month, Date and Year):

4        1974 to 1976

5  Description of Job Duties:

6        Plaintiff worked on a tug base working on tugboats in the engine shop on land. Plaintiff was

7  in charge of engineering and worked on small tugs and small boats.

8  Employer's Name and Jobsite:

9        United States Navy, Guantanamo Bay Naval Base, Cuba (GITMO)

10       Job Title(s):

11       Fleet Training Instructor--Engines

12  Date Started/Date Ended (Month, Date and Year):

13       1976 to 1977

14  Description of Job Duties:

15       Plaintiff was a Fleet Training Instruction for ships that participated in fleet training

16  exercises in order for Navy ships to be war-ready. Training included gunnery, navigation, and

17  engineering components. Plaintiff would assist in the training of people in the engine rooms of

18  ships by holding drills.

19  Employer's Name and Jobsite:

20       United States Navy, Naval Air Station Jacksonville, FL

21  Job Title(s):

22       Engineer/Mechanic

23  Date Started/Date Ended (Month, Date and Year):

24       1977 to 1978

25  Description of Job Duties:

26  Plaintiff worked in a shop that involved taking care of equipment with small engines, such as

27  lawnmowers, weed whackers, etc.

28  ///

9

| Dawson. V. CBS Corporation, et al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

**INTERROGATORY NO. 11:**

For every doctor who has ever treated or examined YOU during the last ten (10) years for any condition, and beyond ten (10) years for conditions related to the lungs, respiratory system, internal organs, circulatory system and/or musculo-skeletal system of the trunk, and any additional complaints or conditions stated in Response to Interrogatory NO. 17, please complete the following:

**RESPONSE TO INTERROGATORY NO. 11:**

Doctor's Name and Address: Robert G. Busch, M.D., Busch Urology, 4601 W. U.S. 90, Lake City, FL 32055

Dates of Treatment: 2003

Reason(s) for Treatment: Prostate cancer


Doctor's Name and Address:  Paul J. Schilling, M.D., Community Cancer Center, 4520 W. U.S. 90, Lake City, FL 32055

Dates of Treatment: 2008

Reason(s) for Treatment: Mesothelioma


Doctor's Name and Address: Anthony Caggiano, M.D., Cardiac and Vascular Surgery Association, 1100 NW 8th Avenue, Gainesville, FL 32601

Dates of Treatment: Nov. 2008

Reason(s) for Treatment: Lung biopsy and drainage of pleural fluid.


Doctor's Name and Address: Richard Wright, M.D., Southern Mediplex, 404 NW Hall of Fame Drive, Lake City, FL 32055

Dates of Treatment: March 2008

Reason(s) for Treatment: Primary Care Physician

///

///

10

Dawson. V. CBS Corporation, et al.
Case No. RG-09-432149

PLAINTIFF WILLIAM H. DAWSON'S RESPONSES
TO STANDARD (DIEDEN) INTERROGATORIES

**INTERROGATORY NO. 12:**

For every hospital in which YOU have ever been treated, tested, or examined, whether as an "in-patient" or as an "out-patient", during the last ten (10) years for any condition, and beyond ten (10) years for conditions related to the lungs, respiratory system, internal organs, circulatory system, and/or musculo-skeletal system of the trunk, and additional complaints or conditions stated in Response to Interrogatory No. 11, please complete the following:  (If more space is needed, please attach additional sheets containing the requested information.)

**RESPONSE TO INTERROGATORY NO. 12:**

Name & Address of Hospital: High Point Regional Hospital, 601 N. Elm Street, High Point, NC 27262

Dates of Tests, Treatment, Exam or Hospitalization: 1996

Reason(s) for Hospital Visit: Treatment for colon cancer.


Name & Address of Hospital: Shands Healthcare at Alachua General Hospital, 801 SW 2nd Ave., Gainesville, FL  32601

Dates of Tests, Treatment, Exam or Hospitalization: Nov. 2008

Reason(s) for Hospital Visit: Biopsy

**INTERROGATORY NO. 13:**

For every X-ray of the "trunk" that has ever been taken of YOU, please complete the following: (If more space is needed, please attach additional sheets containing the requested information.)

**RESPONSE TO INTERROGATORY NO.13:**

Name and address where x-ray was taken: Shands Healthcare at Alachua General Hospital, 801 SW 2nd Ave., Gainesville, FL  32601

Date(s) of x-ray and number of x-rays taken: Plaintiff believes one x-ray was taken November, 2008.

Parts(s) of body x-rayed: Chest

11

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1  **RESPONSE TO INTERROGATORY NO. 16:**

2     Yes.  Plaintiff has attached hereto as Exhibit A, true and correct copies of: a Surgical

3  Pathology Consultation from Shands  Healthcare at Alachua General Hospital, dated Nov. 24,

4  2008; a report of a CT scan of the chest, performed September 22, 2008 performed at Southern

5  Open Imaging; and a report of a March 26, 2008 PET/CT chest scan performed at Southern Open

6  Imaging.

7  **INTERROGATORY NO. 17:**

8     For each and every complaint, symptom, adverse reaction, or other injury which YOU

9  contend is directly or indirectly related to YOUR alleged exposure to asbestos or asbestos-

10  containing products, please state: (If more space is needed, please attach additional sheets

11  containing the requested information.)

12     (a) The date on which YOU first began exhibiting signs of the complaint, symptom, adverse

13  reaction, or injury;

14     (b) The date each such complaint, symptom, adverse reaction or injury ceased to affect

15  YOU;

16     (c) Any physical change in YOUR appearance occasioned by such complaint, symptom,

17  adverse reaction, or injury;

18     (d) Each part of YOUR body which YOU contend has been affected;

19     (e) State the date upon which each complaint, symptom, adverse reaction, or injury was

20  reported to a doctor or physician;

21     (f) State the name, address, and telephone number of each such physician to whom said

22  complaint, symptom, adverse reaction or injury was reported;

23     (g) Whether YOU have lost any time from work as a result of YOUR asbestos-related

24  injury or medical condition; and

25     (h) If such injury has resulted in lost time from work, please state the date on which YOU

26  first lost work and the amount of time lost from work.

27  ///

28  ///

13

| Dawson. V. CBS Corporation, et al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
|---|---|
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

**RESPONSE TO INTERROGATORY NO. 17:**

    (a)    Beginning December, 2007, Plaintiff began to experience shortness of breath and coughing.  Plaintiff now experiences extreme fatigue, loss of appetite, weight loss, and pain in his chest, side and back.

    (b)    Not applicable.  Plaintiff continues to suffer from these symptoms;

    (c)    Plaintiff has lost over 20 pounds since the onset of symptoms;

    (d)    Plaintiff's entire body has been affected by shortness of breath, coughing, extreme fatigue, loss of appetite, weight loss, and pain in his chest, side and back.

    (e)    Beginning in December, 2007, Plaintiff began to report the symptoms he experiences.

    (f)    Plaintiff refers to the information provided in response to Interrogatory No. 11, above:

    (g)    Not applicable.  Plaintiff is retired.

    (h)    Not applicable.

**INTERROGATORY NO. 18:**

Please state when YOU were first advised that YOU were suffering from an asbestos-related disease. Please include in YOU RESPONSE: (If more space is needed, please attach additional sheets containing the requested information.)

    (a) The date and time YOU were so advised;

    (b) The name, address, and telephone number of the physician and/or other person who so advised YOU;

    (c) The name, address, and telephone number of the physician who made the evaluation;

    (d) The method and information upon which such determination was based;

    (e) The name, address, and telephone number of any hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such determination;

    (f) The name, address, and telephone number of every person, including YOUR relatives, employer, or anyone acting on YOUR behalf, who was so advised. Please include the date when such persons were so advised;

14

| Dawson. V. CBS Corporation, et al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
|---|---|
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

1    (g) The name, address, and telephone number of YOUR employer(s) at the time YOUR

2  were so advised;

3    (h) The specific course(s) of treatment or therapy, including any medicine prescribed, as a

4  result of such a deter-mination and the name, phone number, and telephone number of each

5  prescribing physician;

6    (i) State whether YOU have followed the medication or therapy regime prescribed by each

7  of the said physicians for the treatment of said complaint, symptom, adverse reaction, or injury; and

8    (j) Please state the name and addresses of any other physicians or practitioner subsequently

9  affirming or making the same determination.

10  **RESPONSE TO INTERROGATORY NO. 18**:

11    (a)    My wife informed me that the diagnosis was mesothelioma on the evening of

12         November 26, 2008, after I was discharged from the hospital;

13    (b)    Anthony Caggiano, M.D., Cardiac and Vascular Surgery Association, 1100 NW 8th

14         Avenue, Gainesville, FL  32601;

15    (c)    Anthony Caggiano, M.D., Cardiac and Vascular Surgery Association, 1100 NW 8th

16         Avenue, Gainesville, FL  32601;

17    (d)    A pathology report from Shands dated Nov. 24, 2008;

18    (e)    Shands Healthcare at Alachua General Hospital, 801 SW 2nd Ave., Gainesville, FL

19         32601;

20    (f)    My wife, Rita Dawson, and my sister, Jerita Merritt, were first told that the

21         diagnosis was mesothelioma on the morning of November 24, 2008, immediately

22         after the biopsy.  We told our son and daughter approximately two weeks later.

23         Their contact information has been provided in Response to Interrogatory No. 2,

24         above;

25    (g)    Not applicable.  Plaintiff was retired at the time of diagnosis;

26    (h)    Dr. Schilling and Dr. Caggiano both suggested radiation treatment.  Their contact

27         information is provided in response to Interrogatory No. 11, above.  In addition,

28         they have suggested chemotherapy and arranged an appointment on January 28,

15

| Dawson. V. CBS Corporation, et.al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
|---|---|
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

1    2009 with Dr. Waseem Khan, Cancer Care of North Florida, 4520 W. U.S. 90, Lake

2    City, FL 32055;

3    (i)    Plaintiff has been complaint with the radiation treatment and will explore the

4    possibility of chemotherapy during his appointment with Dr. Khan on Jan. 28, 2009;

5    (j)    Dr. Schilling, whose contact information is provided in response to Interrogatory

6    No. 11, above.

7    **INTERROGATORY NO. 19:**

8    Have any of the said treating physicians informed YOU at any time that YOUR complaints,

9    symptoms, adverse reactions, or injuries may have been caused by factors other than exposure to

10   asbestos or asbestos-containing products?

11   **RESPONSE TO INTERROGATORY NO. 19:**

12   No.

13   **INTERROGATORY NO. 20:**

14   Please list all respiratory complaints and/or symptoms which YOU have suffered during

15   YOUR lifetime, and list the inclusive dates for each such complaint.

16   **RESPONSE TO INTERROGATORY NO. 20:**

17   Plaintiff does not recall suffering from any respiratory complaints prior to the recent onset

18   of his asbestos-related symptoms.

19   **INTERROGATORY NO. 21:**

20   Have YOU ever had any biopsies or tissue samples taken? If YOUR RESPONSE is in the

21   affirmative, please state for each such procedure:

22   (a) The name of the doctor performing such procedure;

23   (b) The address where such procedure was performed;

24   (c) The date which such procedure was performed; and

25   (d) The results, conclusions, and/or diagnosis from such procedure.

26   **RESPONSE TO INTERROGATORY NO. 21:**

27   Yes.

28   (a)    Anthony Caggiano, M.D.;

16

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |
|---|---|

(b)      Shands Healthcare at Alachua General Hospital, 801 SW 2nd Ave.,
          Gainesville, FL  32601;

(c)      November 24, 2008;

(d)      The diagnosis was epithelial malignant mesothelioma.

**INTERROGATORY NO. 22:**

Do YOU know of any pathology slides that were made from any of YOUR tissue samples at any time? If YOUR RESPONSE is in the affirmative, for each set of slides made please state: (If more than one, please attach list.)

(a) The name of the hospital;

(b) The name of the doctor;

(c) The current location;

(d) The date said slides were made.

**RESPONSE TO INTERROGATORY NO. 22:**

(a)      Shands Healthcare at Alachua General Hospital, 801 SW 2nd Ave., Gainesville, FL
          32601;

(b)      Micro examination was performed by William Hamilton, M.D.;

(c)      Current location is unknown;

(d)      November 24, 2008.

**INTERROGATORY NO. 23:**

Please IDENTIFY: (If more space is needed, please attach additional sheets containing the requested information.)

(a) Each doctor who has treated or examined YOU, except consultants, for asbestos-related disease, or who has reviewed any of YOUR medical records, films, tissue samples, or anything else concerning YOUR medical condition for the purpose of forming any medical opinion;

(b) YOUR medical records, film, tissue samples, documents, and other materials relating to YOUR medical condition; and

(c) Each diagnosis of asbestos-related disease.

///

17

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |
| --- | --- |

1  **RESPONSE TO INTERROGATORY NO. 23**:

2      Please refer to responses to Interrogatory Nos. 12 through 14, 16, 18, 19, 22 and 23 for the

3  information sought here.

4  **INTERROGATORY NO. 24**:

5      Have YOU sustained any injury, separate and apart from YOUR injuries or condition

6  giving rise to this lawsuit, since the date YOUR complaint was filed?

7  **RESPONSE TO INTERROGATORY NO. 24**:

8      No.

9  **INTERROGATORY NO. 25**:

10      Have you ever smoked tobacco products of any type?

11  **RESPONSE TO INTERROGATORY NO. 25**:

12      Yes.

13  **INTERROGATORY NO. 26**:

14      If YOUR response to the above interrogatory is "yes", please state fully and in detail:

15      (a) The dates and time periods during which YOU have smoked;

16      (b) The type of tobacco products YOU smoke, or have smoked. Please state whether YOU

17  inhaled the smoke or not;

18      (c) The daily frequency with which YOU smoke or have smoked;

19      (d) For any time period during which YOU ceased smoking tobacco products, please state

20  YOUR reasons for stopping;

21      (e) For any time period that YOU commenced smoking tobacco products after a period of

22  having stopped smoking, please state YOUR reasons for beginning again;

23      (f) If YOU have ever smoked cigarettes, please state the average number of packs per day

24  YOU smoked; and

25      (g) Please state the commercial brand name(s) of any tobacco products that YOU have

26  used.

27  **RESPONSE TO INTERROGATORY NO. 26**:

28      (a)    1958 – 1980;

18

| *Dawson. V. CBS Corporation, et al.* | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
|---|---|
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

1     (b)    Cigarettes, inhaled;

2     (c)    Daily;

3     (d)    Plaintiff quit smoking in 1980 because he got tired of the habit.

4     (e)    Plaintiff quit smoking for approximately 4 months in 1976 but resumed smoking

5               due to job aggravation;

6     (f)    One pack per day;

7     (g)    Kools.

8  **INTERROGATORY NO. 27:**

9      Have YOU ever been advised by a physician to stop smoking?

10 **RESPONSE TO INTERROGATORY NO. 26:**

11     No.

12 **INTERROGATORY NO. 28:**

13     Describe the extent to which YOU drank alcoholic beverages during YOUR lifetime,

14 specifying the particular kind of alco-holic beverages and the quantity consumed per week.

15 **RESPONSE TO INTERROGATORY NO. 28:**

16     In the Navy, there was no drinking aboard ship.  On shore duty, Plaintiff drank only

17 moderately, perhaps 6 to 12 beers a week.  From approximately 1975 until 2006, Plaintiff did not

18 consume any alcohol. Beginning in approximately 2006, Plaintiff consumed one or two beers per

19 week or an occasional glass of wine.  At the present time, Plaintiff does not consume any alcohol.

20 **INTERROGATORY NO. 29:**

21     For every type of employment that YOU have ever had, whether self employed or

22 employed by others, please complete the following: (If more space is needed, please attach

23 additional sheets containing the requested information.)

24 **RESPONSE TO INTERROGATORY NO. 29 and NO. 30:**

25 Employer's Name and Address:

26     Amoco Service Station, Fayetteville St., Asheboro, NC

27 Job Title(s):

28     Mechanics' Helper; Laborer

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1  Date Started/Date Ended (Month, Date and Year):

2      1956 to 1958

3  Description of Job Duties:

4      Plaintiff worked at this Amoco Service Station part time as a laborer/mechanics' helper.

5  Minor work was performed on various automobiles, including but not limited to Fords, GMs,

6  Chryslers, Packards, Studebakers, and Internationals. As a young trainee, others supervised

7  Plaintiff when he assisted in replacing brakes and performing tune-ups on the mentioned vehicles.

8      Do YOU claim exposure to asbestos at this employment?  Yes

9

10  Employer's Name and Address:

11      United States Navy, USS Genesee AOG-8

12  Job Title(s):

13      Engineman

14  Date Started/Date Ended (Month, Date and Year):

15      1958 to 1962

16  Description of Job Duties:

17      Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was

18  involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers,

19  evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine

20  room and all over the ship and made repairs to the equipment as necessary.

21      Do YOU claim exposure to asbestos at this employment?  Yes.

22

23  Employer's Name and Address:

24      United States Navy, USS Bache DD-470

25  Job Title(s):

26      Engineman

27  Date Started/Date Ended (Month, Date and Year):

28      1962 to 1966

20

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.* Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES TO STANDARD (DIEDEN) INTERROGATORIES |

1    Description of Job Duties:

2         Plaintiff worked with the steam engines and boilers, helping the machinist mates and boiler

3    technicians. He stood watch in the engine room. He recalls during his time on the Bache, the steam

4    pipes and valves were removed, re-lagged at the shipyard, and replaced on ship. Plaintiff was

5    involved in the maintenance and repair of all machinery aboard the ship—including the steam

6    engines, boilers, pumps, valves, and other equipment.

7         Do YOU claim exposure to asbestos at this employment?  Yes

8

9    Employer's Name and Address:

10        United States Navy, Naval Station Great Lakes, Training Center

11   Job Title(s):

12        Commander

13   Date Started/Date Ended (Month, Date and Year):

14        1966 to 1970

15   Description of Job Duties:

16        Plaintiff trained recruits for one year, and taught fire-fighting school for three years.

17        Do YOU claim exposure to asbestos at this employment?   Yes.

18

19   Employer's Name and Address:

20        United States Navy, USS Proteus AS-19; Guam_

21   Job Title(s):

22        Engineman

23   Date Started/Date Ended (Month, Date and Year):

24        1970 to 1972

25   Description of Job Duties:

26        Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was

27   involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers,

28

21

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1  evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine

2  room and all over the ship and made repairs to the equipment as necessary.

3         Do YOU claim exposure to asbestos at this employment?  Yes.

4

5  **Employer's Name and Address:**

6      United States Navy, USS Hunley AS-31; Puget Sound Naval Shipyard/Bremerton Navy

7  Yard

8  **Job Title(s):**

9      Engineman

10  **Date Started/Date Ended (Month, Date and Year):**

11      1972 to 1973

12  **Description of Job Duties:**

13  **USS HUNLEY AS-31 (Guam)**

14      Plaintiff worked with diesel engines and mechanical equipment aboard the ship. He was

15  involved in the repair and overhaul of air conditioning systems, refrigeration units, boilers,

16  evaporators and associated auxiliary equipment such as pumps and valves. He worked in the engine

17  room and all over the ship and made repairs to the equipment as necessary.

18  **PUGET SOUND NAVAL SHIPYARD/BREMERTON NAVY YARD**

19      Plaintiff helped with the overhaul of the USS Hunley at Puget Sound Naval

20  Shipyard/Bremerton Navy Yard. He worked on the engines and supervised the repair work. He

21  overhauled the pumps (including centrifugal and reciprocating pumps) and replaced the rope

22  packing in the pumps. He repaired and repacked valves. The overhaul involved repairing various

23  machinery, such as the boilers and engines aboard the ship. Plaintiff also performed preventive

24  maintenance on the ship.

25      Do YOU claim exposure to asbestos at this employment?  Yes

26

27  **Employer's Name and Address:**

28      United States Navy, Mayport Naval Station, FL

22

| *Dawson. V. CBS Corporation, et al.* Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES TO STANDARD (DIEDEN) INTERROGATORIES |
|---|---|

1   Job Title(s):

2       Engineer

3   Date Started/Date Ended (Month, Date and Year):

4       1974 to 1976

5   Description of Job Duties:

6       Plaintiff worked on a tug base working on tugboats in the engine shop on land. Plaintiff was

7   in charge of engineering and worked on small tugs and small boats.

8           Do YOU claim exposure to asbestos at this employment?   Yes

9

10  Employer's Name and Address:

11      United States Navy, Guantanamo Bay Naval Base, Cuba (GITMO)

12      Job Title(s):

13      Fleet Training Instructor--Engines

14  Date Started/Date Ended (Month, Date and Year):

15      1976 to 1977

16  Description of Job Duties:

17      Plaintiff was a Fleet Training Instruction for ships that participated in fleet training

18  exercises in order for Navy ships to be war-ready. Training included gunnery, navigation, and

19  engineering components. Plaintiff would assist in the training of people in the engine rooms of

20  ships by holding drills.

21          Do YOU claim exposure to asbestos at this employment?   Yes.

22

23  Employer's Name and Address:

24      United States Navy, Naval Air Station Jacksonville, FL

25  Job Title(s):

26      Engineer/Mechanic

27  Date Started/Date Ended (Month, Date and Year):

28      1977 to 1978

<center>23</center>

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1  Description of Job Duties:

2      Plaintiff worked in a shop that involved taking care of equipment with small engines, such

3  as lawnmowers, weed whackers, etc.

4      Do YOU claim exposure to asbestos at this employment?   Yes.

5

6  Employer's Name and Address:

7      Florida Junior College, Jacksonville, FL

8  Job Title(s):

9      Diesel Mechanics Instructor

10  Date Started/Date Ended (Month, Date and Year):

11      1978 to 1985

12  Description of Job Duties:

13      Plaintiff taught a class on diesels and trucks. Plaintiff taught repairing tractor-trailer trucks,

14  including but not limited to International Harvester, Mack, International Trucks, and Freightliner

15  trucks. Plaintiff also recalls General Motors, Ford, Chrysler automobiles and pick-ups. Plaintiff

16  taught engine work, which included completely rebuilding engines. Plaintiff also taught brake

17  mechanic work, clutch work, and air compressors. He performed brake and clutch work. Plaintiff

18  specifically recalls Bendix brake boxes at this location and believes that used Bendix brakes,

19  among others during this employment. Plaintiff believes that the replacement parts were from local

20  auto parts houses in the Jacksonville area. Plaintiff thinks that at least one of these parts houses was

21  a NAPA auto store.

22      Do YOU claim exposure to asbestos at this employment?  Yes.

23

24  Employer's Name and Address:

25      North Carolina Lumber Company, Asheboro, NC

26  Job Title(s):

27      Mechanic

28  Date Started/Date Ended (Month, Date and Year):

24

| Dawson. V. CBS Corporation, et al.<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |
| --- | --- |

1      1987 to 1988

2    Description of Job Duties:

3      Plaintiff's duties included keeping conveyors moving, fixing chains and sprockets. Plaintiff

4    worked on forklifts. He replaced the bearings in the forks, fixed alternators, worked on engines and

5    brakes.

6      Do YOU claim exposure to asbestos at this employment?   Yes.

7

8    Employer's Name and Address:

9      Bio Mass Energy Co., Asheboro, NC

10    Job Title(s):

11      Mechanic

12    Date Started/Date Ended (Month, Date and Year):

13      1988 to 1990

14    Description of Job Duties:

15      Plaintiff worked for this company that would take shavings from the planar mill to smolder,

16    which would produce methane gas to run through the engines and make electricity. Plaintiff's

17    duties included rebuilding these engines to run. Plaintiff worked with gaskets and packing.

18      Do YOU claim exposure to asbestos at this employment?   Yes.

19

20    Employer's Name and Address:

21      Sellers' Trucking and Garage, Blackankle, NC

22    Job Title(s):

23      Mechanic

24    Date Started/Date Ended (Month, Date and Year):

25      1990 to 1992

26    Description of Job Duties:

27

28

<div align="center">25</div>

| Dawson. V. CBS Corporation, et al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
|---|---|
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

1    Plaintiff worked as a mechanic at this garage. He and another mechanic fixed tractor-trailer

2    trucks and performed brake jobs and pulled clutches. Plaintiff recalled working on Mack trucks

3    here.

4    Do YOU claim exposure to asbestos at this employment?    Yes.

5

6    Employer's Name and Address:

7    Rental Tools and Equipment Co., Greensboro, NC

8    Job Title(s):

9    Mechanic

10    Date Started/Date Ended (Month, Date and Year):

11    1993 to 1997

12    Description of Job Duties:

13    Plaintiff worked as a mechanic on various equipment including bulldozers and hauling

14    equipment, including bobcats and Mack trucks. Plaintiff worked on brakes for trucks and trailers.

15    Plaintiff serviced Ford F-350 trucks—including performing brake jobs, clutch jobs, etc. With

16    respect to servicing the Ford F-350 trucks, Plaintiff recalls putting a set of Bendix brakes on at least

17    one of these trucks.

18    Do YOU claim exposure to asbestos at this employment?    Yes.

19

20    Plaintiff served as an engineman in the U.S. Navy from 1958 to 1978. Plaintiff served

21    aboard the USS Genesee (AOG-8), USS Bache (DD-470), USS Proteus (AS-19), and the USS

22    Hunley (AS-31). Plaintiff also served as a Fleet Training Instructor for engines on board U.S.,

23    Navy ships conducting fleet training exercises at Guantanamo Bay Naval Base. During the course

24    of his naval career, Plaintiff recalls working with and around the following equipment, including

25    but not limited to: Allis Chalmers pumps and other equipment; Buffalo pumps; Crane gaskets and

26    packing; Elliott turbines, superchargers and other turbomachinery; Northern pumps; Peerless

27    pumps; Garlock gaskets; Goulds pumps; DeLaval pumps; Ingersoll-Rand pumps and compressors;

28

<div align="center">26</div>

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1  Leslie Control valves; Westinghouse equipment; Foster Wheeler boilers; General Electric

2  equipment; Griscom-Russell valves and pumps; and Warren pumps.

3       Plaintiff also worked as an automotive mechanic at various garages and as a shade tree

4  mechanic. Plaintiff repaired and rebuilt engines, performed brake jobs and clutch work and other

5  automotive work. Plaintiff recalls performing repairs on the following vehicles, including but not

6  limited to: Mack, Freightliner, Peterbilt, International Harvester, International and GMC trucks;

7  John Deere forklifts; 1940 Ford, 1941 Ford, 1941 Plymouth, 1947 Studebaker, 1955 Oldsmobile,

8  1955 Ford, 1956 Packard, 1957 Ford, 1961 Ford, 1962 Ford, 1962 Nash Rambler, 1963 Ford, 1963

9  Volkswagen, 1963 Chevrolet, 1964 Lincoln, 1966 Buick, 1966 Cadillac, 1966 Volkswagen, 1968

10  Dodge, 1970 Plymouth, 1977 Chevrolet, 1978 Chevrolet, 1986 Ford, 1996 GMC Jimmy, and 2003

11  Dodge Dakota. Plaintiff recalls working with the following friction materials, including but not

12  limited to: Victor gaskets; Bendix brakes; Raybestos-Manhattan brakes; Grizzly brakes; Delco

13  Moraine brakes; Mopar brakes; EIS brakes; Ford brakes; Wagner brakes; Carlisle heavy duty

14  brakes and friction products; and Kelsey-Hayes heavy duty brakes and friction products.

15       With respect to all of the described friction work, Plaintiff believes that some situations

16  required him to procure parts from the various car dealerships. Plaintiff also recalls obtaining

17  replacement parts at local auto parts houses including but not limited to NAPA stores. Plaintiff

18  reserves the right to supplement and amend this response as further information becomes available.

19  Discovery and investigation continue.

20  **INTERROGATORY NO. 30:**

21       For each employment in which YOU claim YOU were exposed to asbestos, please list: (If

22  more space is needed, please attach additional sheets containing the requested information.)

23       (a) The date of YOUR claimed exposure to asbestos;

24       (b) The manner and duration of exposure;

25       (c) Whether YOUR duties included the installation of asbestos-containing materials;

26       (d) Whether your duties included the tearing out or removal of asbestos-containing

27  materials;

28       (e) The type of asbestos-containing materials to which YOU were exposed;

27

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1      (f) The location of each job site, including the name of each plant, state, and city where

2  located, along with the beginning and ending date of each job;

3      (g) If YOU have at any time worked in a shipyard, please IDENTIFY the names of all ships

4  upon which YOU worked;

5      (h) For each such job identified in response to subpart (f) and/or (g), please state the name

6  and last known address of YOUR immediate supervisor or job superintendent on such job;

7      (i) For each such job identified in response to subparts (f) and/or (g), please state:

8         (1) The names and last known addresses of all persons with whom YOU worked

9  regularly on such job;

10         (2) The job site where YOU worked with each person;

11         (3) The inclusive dates during which YOU worked with each person.

12      (j) Any other persons YOU are aware of that have any information regarding the supply,

13  use, or distribution of products containing asbestos to which YOU may have been exposed. For

14  each such person, please state:

15         (1) The person's name;

16         (2) The person's place of employment;

17         (3) The inclusive dates of said employment; and

18         (4) The current address and phone number of the person.

19  **RESPONSE TO INTERROGATORY NO. 30:**

20      Please see Response to Interrogatory No. 29, above, for the information sought here.

21  **INTERROGATORY NO. 31:**

22      Were YOU ever exposed to asbestos products outside of YOUR work environment? If so,

23  please state:

24      (a) Date and place of such exposure;

25      (b) The circumstances surrounding each exposure; and

26      (c) The manner and duration of exposure.

27  ///

28  ///

28

*Dawson. V. CBS Corporation, et al.*
Case No. RG-09-432149

PLAINTIFF WILLIAM H. DAWSON'S RESPONSES
TO STANDARD (DIEDEN) INTERROGATORIES

**RESPONSE TO INTERROGATORY NO. 31:**

Yes. Plaintiff also performed mechanic work on his own, friends' and family members' personal vehicles. He made various types of repairs to these vehicles including but not limited to brake jobs and clutch work. Plaintiff recalls working on the following vehicles, which include but are not limited to: 1940 Ford, 1941 Ford, 1941 Plymouth, 1947 Studebaker, 1955 Oldsmobile, 1955 Ford, 1956 Packard, 1957 Ford, 1961 Ford, 1962 Ford, 1962 Nash Rambler, 1963 Ford, 1963 Volkswagen, 1963 Chevrolet, 1964 Lincoln, 1966 Buick, 1966 Cadillac, 1966 Volkswagen, 1968 Dodge, 1970 Plymouth, 1977 Chevrolet, 1978 Chevrolet, 1986 Ford, 1996 GMC Jimmy, and 2003 Dodge Dakota. Plaintiff reserves the right to supplement and amend this response as further information continue. Discovery and investigation continue.

**INTERROGATORY NO. 32:**

For each type of asbestos material and/or asbestos-containing product for which YOU claim exposure, please state:

(a) The employer, job site, and dates where contact with each such asbestos material or product occurred;

(b) The name of the manufacturer of that asbestos material or product;

(c) The trade name of that material or product;

(d) Any name used by yourself or other workers in referring to that material or product, such as a nickname or slang term for that material or product.

(e) A description of the box, container, or wrapping that contained that product, including size, color, and all writing on that box, including size and color of writing; and

(f) A description of any labels, tags, or warnings on the box, container, or wrapping advising of possible health hazards or advising of methods of use or precautions to be taken.

**RESPONSE TO INTERROGATORY NO. 32:**

(a) – (f): Plaintiff served as an engineman in the U.S. Navy from 1958 to 1978. Plaintiff served aboard the USS Genesee (AOG-8), USS Bache (DD-470), USS Proteus (AS-19), and the USS Hunley (AS-31). Plaintiff also served as a Fleet Training Instructor for engines on board U.S., Navy ships conducting fleet training exercises at Guantanamo Bay Naval Base. During the course

29

| Dawson. V. CBS Corporation, et al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
|---|---|
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

of his naval career, Plaintiff recalls working with and around the following equipment, including but not limited to: Allis Chalmers pumps and other equipment; Buffalo pumps; Crane gaskets and packing; Elliott turbines, superchargers and other turbomachinery; Northern pumps; Peerless pumps; Garlock gaskets; Goulds pumps; DeLaval pumps; Ingersoll-Rand pumps and compressors; Leslie Control valves; Westinghouse equipment; Foster Wheeler boilers; General Electric equipment; Griscom-Russell valves and pumps; and Warren pumps.

Plaintiff also worked as an automotive mechanic at various garages and as a shade tree mechanic. Plaintiff repaired and rebuilt engines, performed brake jobs and clutch work and other automotive work. Plaintiff recalls performing repairs on the following vehicles, including but not limited to: Mack, Freightliner, Peterbilt, International Harvester, International and GMC trucks; John Deere forklifts; 1940 Ford, 1941 Ford, 1941 Plymouth, 1947 Studebaker, 1955 Oldsmobile, 1955 Ford, 1956 Packard, 1957 Ford, 1961 Ford, 1962 Ford, 1962 Nash Rambler, 1963 Ford, 1963 Volkswagen, 1963 Chevrolet, 1964 Lincoln, 1966 Buick, 1966 Cadillac, 1966 Volkswagen, 1968 Dodge, 1970 Plymouth, 1977 Chevrolet, 1978 Chevrolet, 1986 Ford, 1996 GMC Jimmy, and 2003 Dodge Dakota. Plaintiff recalls working with the following friction materials, including but not limited to: Victor gaskets; Bendix brakes; Raybestos-Manhattan brakes; Grizzly brakes; Delco Moraine brakes; Mopar brakes; EIS brakes; Ford brakes; Wagner brakes; Carlisle heavy duty brakes and friction products; and Kelsey-Hayes heavy duty brakes and friction products.

With respect to all of the described friction work, Plaintiff believes that some situations required him to procure parts from the various car dealerships. Plaintiff also recalls obtaining replacement parts at local auto parts houses including but not limited to NAPA stores.

Plaintiff further refers defendants to his responses to Interrogatory No. 29 and 30. Plaintiff reserves the right to supplement and amend this response as further information becomes available. Discovery and investigation continue.

**INTERROGATORY NO. 33:**

At any location where YOU claim exposure to asbestos, were any cartons, containers, or wrappings bearing the name, the trade name, or any other identification of any of the defendants in this lawsuit? If so, please state separately for each defendant:

<div align="center">30</div>

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1      (a) Each location, the inclusive dates, and the frequency that these cartons, containers, or

2  wrappings were present;

3      (b) The identity of each person who can testify that such cartons, containers, or wrappings

4  were present;

5      (c) The identity of each document that indicates that such cartons, containers, or wrappings

6  were present;

7      (d) All evidence known to YOU that these cartons, containers, or wrappings contained

8  asbestos material and/or asbestos-containing products; and

9      (e) The type of asbestos material and/or asbestos-containing products which were contained

10  in each carton, container, or wrapping.

11  **RESPONSE TO INTERROGATORY NO. 33**:

12      Plaintiff recalls that some of the Bendix brakes that he worked with as an automotive

13  mechanic came packaged in a blue box with "Bendix" written on the side. At this time, Plaintiff

14  cannot recall any other packaging of the asbestos and asbestos-containing products at issue in this

15  lawsuit. Plaintiff reserves the right to supplement or amend this response as more information

16  becomes available. Discovery and investigation continue.

17  **INTERROGATORY NO. 34**:

18      If YOU have ever been exposed to asbestos products manufactured by companies not

19  named as defendants in this lawsuit, please state:

20      (a) The identity of the manufacturer of said product;

21      (b) The date and place of each such exposure;

22      (c) The circumstances surrounding each such exposure (i.e., whether YOU were working

23  with the product or merely near an area where it was being used);

24      (d) The nature of the product; and

25      (e) As to any such exposure in a work situation, the identity of YOUR employer, as well as

26  the address of the particular job site at which YOU were so exposed.

27  ///

28  ///

31

| *Dawson. V. CBS Corporation, et al.* <br> Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES <br> TO STANDARD (DIEDEN) INTERROGATORIES |
| --- | --- |

**RESPONSE TO INTERROGATORY NO. 34**:

Plaintiff believes he was undoubtedly exposed to additional products whose manufacturers and brand names he does not yet know. Plaintiff believes he was exposed to Johns-Manville insulating cement, Harbison-Walker firebrick, Flexitallic gaskets, and Babcock & Wilcox boilers during his naval career. Plaintiff believes he was exposed to Raybestos-Manhattan brakes as an automotive mechanic. All of these entities named are bankrupt. Additionally, Plaintiff has named specific products, which Plaintiff's counsel believes are currently bankrupt and as such cannot, by law, be named in this action. Plaintiff reserves the right to supplement and amend this response as further information becomes available. Discovery and investigation continue.

**INTERROGATORY NO. 35**:

To the best of the plaintiff's own knowledge or recollection, what percentage of YOUR total alleged contact or exposure to asbestos, or materials containing asbestos, do YOU attribute to each individual or entity which YOU claim was a manufacturer or supplier of asbestos or materials containing asbestos?

(a) Please indicate the manner and factors relied upon in making each such percentage calculation;

(b) Please state the identity, capacities, and job titles of all individuals assisting YOU or otherwise involved in calculating the above percentages;

(c) Please IDENTIFY all DOCUMENTS, WRITINGS or other records, if any relied upon in calculating the percentages referred to above, and further, state the present location and the identity of the present custodian of each such document or writing; and

(d) If YOU are unable to attribute such percentages, please state all efforts YOU have made to ascertain such percentages.

**RESPONSE TO INTERROGATORY NO. 35**:

Plaintiff objects to this Interrogatory on the basis that it calls for expert opinion.

**INTERROGATORY NO. 36**:

For each person that YOU worked with during any time in which YOU claim exposure to asbestos, please state:

32

*Dawson. V. CBS Corporation, et al.*
Case No. RG-09-432149

PLAINTIFF WILLIAM H. DAWSON'S RESPONSES
TO STANDARD (DIEDEN) INTERROGATORIES

1    (a) That person's name;

2    (B) That person's place of employment where said asbestos exposure occurred;

3    (c) The inclusive dates during which YOU worked with that person;

4    (d) The current address of that person; and

5    (e) The current telephone number of that person.

6   **RESPONSE TO INTERROGATORY NO. 36:**

7    Plaintiff's shipmates in the R division on the USS Bache include: Anderson, D.; Benowitz,

8  M.; Bissonnette, R. E.M.C.; Boozer, L.; Brackett, J.; Buchanan, __; Childs, R.; Drew, D.; Erb, T.;

9  Garnett, W.; Gunia, R.; Harris, K.; Howington, Q.; Hrabosky, W.; Huskins, D.; Lindsey, K.;

10  McGarry, P.; McKay, D., Ens.; Meal. J.; Miles, R.; Mischke, T.; Munch, P.; O'Brien, B.; Osborne,

11  A.; Peques, L.; Pruett, C.; Read, F.; Skuczas, L.; Slevin, R.; Takac, J.J., Lt.; Tyndall, L.; Vantol, R.;

12  Webster, D.; Whipple, G. MMC. Other shipmates aboard the USS Bache include: Allan, Jerry;

13  Bacon, Thomas; Jensen, Edgar; Richter, Klaus; and, Willis, Norman.

14    Plaintiff also identifies Tom Wilson, another mechanic who worked with him at Sellers'

15  Trucking and Garage in Blackankle, NC. Plaintiff believes Mr. Wilson's last known address was in

16  Blackankle, NC. At this time, Plaintiff does not possess any contact information of any of the

17  identified persons. Plaintiff reserves the right to supplement and amend this response as more

18  information becomes available. Discovery and investigation continue.

19   **INTERROGATORY NO. 37:**

20    Please IDENTIFY those individuals who worked at any location where YOU may have

21  been exposed to asbestos, whether or not their employment coincided with yours, and list:

22    (a) The person's place of employment where the asbestos exposure allegedly occurred;

23    (b) The inclusive dates of that person's employment;

24    (c) The current address of that person; and

25    (d) The current telephone number of that person.

26   **RESPONSE TO INTERROGATORY NO. 37:**

27    Plaintiff's shipmates in the R division on the USS Bache include: Anderson, D.; Benowitz,

28  M.; Bissonnette, R. E.M.C.; Boozer, L.; Brackett, J.; Buchanan, __; Childs, R.; Drew, D.; Erb, T.;

<div align="center">33</div>

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1  Garnett, W.; Gunia, R.; Harris, K.; Howington, Q.; Hrabosky, W.; Huskins, D.; Lindsey, K.;

2  McGarry, P.; McKay, D., Ens.; Meal. J.; Miles, R.; Mischke, T.; Munch, P.; O'Brien, B.; Osborne,

3  A.; Peques, L.; Pruett, C.; Read, F.; Skuczas, L.; Slevin, R.; Takac, J.J., Lt.; Tyndall, L.; Vantol, R.;

4  Webster, D.; Whipple, G. MMC. Other shipmates aboard the USS Bache include: Allan, Jerry;

5  Bacon, Thomas; Jensen, Edgar; Richter, Klaus; and, Willis, Norman.

6      Plaintiff also identifies Tom Wilson, another mechanic who worked with him at Sellers'

7  Trucking and Garage in Blackankle, NC. Plaintiff believes Mr. Wilson's last known address was in

8  Blackankle, NC. At this time, Plaintiff does not possess any contact information of any of the

9  identified persons. Plaintiff reserves the right to supplement and amend this response as more

10  information becomes available. Discovery and investigation continue.

11  **INTERROGATORY NO 38**:

12      For any person that YOU are aware of that has any information whatsoever regarding the

13  supply, use, or distribution of products containing asbestos to which YOU may have been exposed,

14  please state:

15      (a) That person's name;

16      (b) That person's place of employment;

17      (c) The dates of said employment;

18      (d) The address of said person; and

19      (e) The telephone number.

20  **RESPONSE TO INTERROGATORY NO. 38**:

21      Plaintiff is not aware of any such persons, but is informed and believes this information is

22  in the possession, custody and control of defendants and will propound discovery and depose

23  defendants' COR/PMK witnesses to obtain this information. Plaintiff reserves the right to

24  supplement and amend these responses as more information becomes available. Discovery and

25  investigation continue.

26  **INTERROGATORY NO 39**:

27      Please IDENTIFY by date, purchaser, seller, and product each and every invoice, bill, or

28  statement in YOUR possession, custody, or control, including any in YOUR attorneys' possession

34

| Dawson. V. CBS Corporation, et al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

1  or control, which YOU contend demonstrates the sale of asbestos-containing products to any

2  location at which YOU were employed.

3  **RESPONSE TO INTERROGATORY NO 39:**

4      Plaintiff does not possess any such documents, but is informed and believes these

5  documents are currently in the possession, custody, and control of defendant and will propound

6  discovery to obtain them. Plaintiff reserves the right to supplement and amend these responses as

7  more information becomes available. Discovery and investigation continue.

8  **INTERROGATORY NO 40:**

9      Did YOU at any time receive, have knowledge, or possess any advice, publication, warning,

10  order, directive, requirement, or recommendation, whether oral or written, which purported to

11  advise or warn YOU of the possible harmful affects of exposure to, or inhalation of, asbestos or

12  asbestos-containing products?

13  **RESPONSE TO INTERROGATORY NO 40:**

14      No.

15  **INTERROGATORY NO. 41:**

16      Did anyone ever suggest or recommend that YOU should use any device to reduce YOUR

17  possible exposure to, or inhalation of, asbestos dust or fibers?

18  ///

19  **RESPONSE TO INTERROGATORY NO. 41:**

20      No.

21  **INTERROGATORY NO. 42:**

22      Have YOU ever seen any warning labels on packages or containers of asbestos products?

23  **RESPONSE TO INTERROGATORY NO. 42:**

24      No. Plaintiff never saw any warning labels.

25  **INTERROGATORY NO. 43:**

26      Please state whether any of YOUR employers have either required, or made available,

27  physical examinations for their employees. If such physical examinations have either been required

28  or made available to YOU, please state:

<div align="center">35</div>

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1      (a) The nature and extent of examinations;

2      (b) The frequency of examinations;

3      (c) Whether they were required or optional;

4      (d) Whether X-ray examination was included;

5      (e) The frequency, including specific dates and times with which YOU submitted to such

6 examinations;

7      (f) Whether YOU received the results of any such examinations, the dates that they were

8 given to YOU, and the nature of the results;

9      (g) The name, address, and telephone number of the examining physician, nurse, or

10 technician; and

11      (h) YOUR detailed reasons for failing to submit to such examination when required or

12 made available, if YOU did so fail to submit.

13 **RESPONSE TO INTERROGATORY NO. 43**:

14      (a)     Physical exams for re-enlistment;

15      (b)     Approximately every 4-6 years;

16      (c)     Required;

17      (d)     Plaintiff does not recall if x-rays were included in the exam;

18      (e)     Approximately every 4-6 years.  Plaintiff does not recall the specific dates;

19      (f)     No;

20      (g)     Plaintiff does not recall;

21      (h)     Not applicable.

22 **INTERROGATORY NO. 44**:

23      Are YOU or have YOU been a member of any labor union, including, but not limited to, the

24 Heat, Frost, Insulation, and Asbestos Workers Union?

25 **RESPONSE TO INTERROGATORY NO. 44**:

26      No.

27 **INTERROGATORY NO. 45**:

28      Did YOU ever receive any issue of "The Asbestos Worker"?

36

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |
|---|---|

1    **RESPONSE TO INTERROGATORY NO. 45:**

2        No.

3    **INTERROGATORY NO. 46:**

4        Other than "The Asbestos Worker", did YOU ever receive any newspapers, newsletters, or

5    other publications from any labor union of which YOU were a member?

6    **RESPONSE TO INTERROGATORY NO. 46:**

7        Not applicable.

8    **INTERROGATORY NO. 47:**

9        Have YOU ever attended any international or local union meetings, seminars, conferences,

10    or conventions which discussed (in whole or in part) occupational exposure to asbestos?

11    **RESPONSE TO INTERROGATORY NO. 47:**

12        Not applicable.

13    **INTERROGATORY NO. 48:**

14        Are YOU presently employed?

15    **RESPONSE TO INTERROGATORY NO. 48:**

16        No.

17    **INTERROGATORY NO. 49:**

18        If YOUR RESPONSE to Interrogatory No. 48 is "no", please state the last date worked and

19    the reason that YOU are not currently employed. Are YOU receiving any form of disability

20    pension? If so, please state:

21        (a) From whom;

22        (b) The amounts received each month; and

23        (c) The anticipated duration of the disability pension.

24    **RESPONSE TO INTERROGATORY NO. 49:**

25        Plaintiff last worked in 1997 or 1998. He stopped working because the arthritis in his

26    wrists had become so severe that he was unable to turn wrenches, which he needed to be able to do

27    to perform work as a mechanic.

28        (a)    Plaintiff receives disability benefits from the VA because of his arthritis.

37

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1      (b)     Plaintiff currently receives $2823.00 each month as of January, 2009.

2      (c)     Plaintiff's VA disability is permanent.

3  **INTERROGATORY NO. 50:**

4     State fully and in detail YOUR annual earnings for the past ten (10) years:

5  **RESPONSE TO INTERROGATORY NO. 50:**

6     Plaintiff has estimated the amount of monthly VA payments received in 2002, 2003, 2004

7  and 2005, and believes them to be accurate.

8     1999: $32,903 total (VA $1973/month, Social Security $7987 for partial year, and

9  retirement $105/month)

10     2000: $39,852 total (VA $2153/month, Social Security $1168/month and retirement

11  $0/month)

12     2001: $40,872 total (VA $2228/month, Social Security $1176/month and retirement

13  $0/month)

14     2002: $41,556 total (VA $2275/month, Social Security $1188/month and retirement

15  $0/month)

16     2003: $42,300 total (VA $2325/month, Social Security $1200/month and retirement

17  $0/month)

18     2004: $43,020 total (VA $2366/month, Social Security $1219/month and retirement

19  $0/month)

20     2005: $54.021 total (VA $2429/month, Social Security $1242/month and retirement $9969

21  for partial yr.)

22     2006: $55,608 total (VA $2528/month, Social Security $1286/month and retirement

23  $820/month)

24     2007: $58,500 total (VA $2610/month, Social Security $1439/month and retirement

25  $826/month)

26     2008: $66,804 (VA $2669/month, Social Security $1471/month and retirement

27  $1427/month)

28  ///

38

| Dawson. V. CBS Corporation, et al. | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES |
|---|---|
| Case No. RG-09-432149 | TO STANDARD (DIEDEN) INTERROGATORIES |

1   **INTERROGATORY NO. 51:**

2       State the total hospital expenses, if any, that YOU have incurred to date as a result of the

3   injuries, complaints, etc., which YOU attribute to YOUR alleged exposure to asbestos. Please

4   itemize each charge, if more than one hospital is involved.

5   **RESPONSE TO INTERROGATORY NO. 51:**

6       Because Plaintiff was so recently diagnosed with mesothelioma, he has not yet received any

7   medical bills.

8   **INTERROGATORY NO. 52:**

9       State the total medical expenses (other than hospitalization) which YOU have incurred, or

10   which has been incurred on YOUR behalf, to date as a result of the injuries, complaints, etc., which

11   YOU attribute to YOUR alleged exposure to asbestos, itemizing each such charge.

12   **RESPONSE TO INTERROGATORY NO. 52:**

13       Because Plaintiff was so recently diagnosed with mesothelioma, he has not yet received any

14   medical bills.

15   **INTERROGATORY NO. 53:**

16       Has any insurance company, union, or any other person, firm, or corporation paid for or

17   reimbursed YOU for, or become obligated to pay for, any medical or hospital expenses incurred by

18   the alleged exposure to asbestos? If so, please list such expenses, itemizing the dates incurred, the

19   nature of such expenses, and the names and addresses of the insurance company, union, person,

20   firm, or corporation who or which has paid, or is obligated to pay for, the payment of, or

21   reimbursement for, said expenses.

22   **RESPONSE TO INTERROGATORY NO. 53:**

23       Because Plaintiff was so recently diagnosed with mesothelioma, he has not yet received any

24   medical bills.

25   **INTERROGATORY NO. 54:**

26       As a result of YOUR alleged exposure to asbestos, have YOU lost, or do YOU claim of,

27   any wages or earnings? If so, please state:

28

<div align="center">39</div>

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1     (a) How much time was lost from work or employment, listing the dates involved and the

2  name and address of the employer;

3     (b) The gross amount of salary or earnings which YOU received each payday, stating the

4  intervals of such paydays (e.g., weekly, bi-monthly, monthly);

5     (c) State the gross amount of salary or earnings actually lost due to the exposure;

6     (d) Of the total sum stated in response to subpart (c) of this interrogatory, state YOUR net

7  take-home pay after deduction of taxes and all other authorized deductions;

8     (e) If self-employed, state the total time lost from business, listing the dates involved and

9  the gross financial loss to YOU, stating the nature of such loss and how incurred; and

10     (f) Of the sum stated in YOUR response to subpart (e) of this interrogatory, state YOUR net

11  loss after deduction of taxes.

12  **RESPONSE TO INTERROGATORY NO. 54:**

13     Plaintiff does not receive wages, but he does receive a monthly pension.  Plaintiff's

14  investigation and discovery are continuing.

15  **INTERROGATORY NO. 55:**

16     Have YOU ever incurred any expense or financial loss, including property damage, other

17  than as listed above, which YOU attribute in any degree to YOUR asbestos products? If so, please

18  state such financial losses, expenses and property damage, giving the dates incurred and the

19  amounts involved and the nature of each such expense or loss.

20  **RESPONSE TO INTERROGATORY NO. 55:**

21     At the present time, Plaintiff is not aware if any such expenses.

22  **INTERROGATORY NO. 56:**

23     Has any insurance company, union, or other person, firm or corporation paid for, or

24  reimbursed YOU for, or become obligated to pay for, or reimburse, YOU or anyone on YOUR

25  behalf for any sums of money (excluding medical or hospital expenses) to pro-vide any of the

26  following: disability or other benefits, loss of earnings, property damage or any other item resulting

27  from the alleged exposure to asbestos?

28  ///

<div align="center">40</div>

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1   **RESPONSE TO INTERROGATORY NO. 56**:

2        Because Plaintiff was so recently diagnosed with mesothelioma that he has not yet received

3   any medical bills.

4   **INTERROGATORY NO.57**:

5        If YOUR RESPONSE to the preceding interrogatory is "yes", please state:

6        (a) The sum or sums of money expended, itemizing the dates incurred;

7        (b) The nature of the obligation giving rise to the payment or reimbursement; and

8        (c) The name and address of the insurance company, union, or other person, firm or

9   corporation, who or which has paid for, or is obligated for, payment of or reimbursement for such

10  sums of money.

11       Please attach copies of the documentation of this information to these interrogatories.

12  **RESPONSE TO INTERROGATORY NO. 57**:

13       Because Plaintiff was so recently diagnosed with mesothelioma that he has not yet received

14  any medical bills.

15  **INTERROGATORY NO. 58**:

16       Have YOU at any time made a claim for, or received, any health or accident insurance

17  benefits, Workers' Compensation payments, disability benefits, pension, accident compensation

18  payments, or veteran's disability compensation. (This interrogatory is limited to <u>any</u> asbestos-

19  related claim, or any non-asbestos-related claim in which the claims made or monies received for

20  such claims is or was <u>in excess of $500.00</u> and/or disability/accident claims involving more than

21  four (4) weeks off work. If so, please state: (If more than one, please attach a list.)

22       (a) The illness, injury, or injuries, for which YOU made the claim;

23       (b) The date when such injury or injuries were sustained, the place of occurrence, and the

24  nature of the accident or incident causing such injury;

25       (c) The names and addresses of YOUR employer(s) at the time of each injury or illness;

26       (d) The names and addresses of the examining doctors for each injury or illness;

27       (e) The name of the board, tribunal, or superior officer before which or to whom the claim

28  or claims were made or filed;

41

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |
|---|---|

1      (f) The date the claim was filed;

2      (g) The claim, file, or other number by which YOUR claim was identified;

3      (h) The present status of such claims (pending settlement, dismissal, etc.);

4      (i) The amounts of the benefits, awards, or payments;

5      (j) The dates covering the times during which YOU received the benefits, awards, or

6  payments; and

7      (k) The identity of the agencies or insurance companies from whom YOU received the

8  awards, benefits, or payments.

9  **RESPONSE TO INTERROGATORY NO. 58:**

10      (a)    Arthritis;

11      (b)    Not applicable: arthritis is a chronic condition, not a specific injury;

12      (c)    U.S. Navy;

13      (d)    Unknown at the present time;

14      (e)    U.S. Navy;

15      (f)    Approximately 1977;

16      (g)    Plaintiff's Social Security number is the claim number;

17      (h)    The claim was approved in 1978

18      (i)    When Plaintiff began receiving VA disability benefits in 1977, his disability rating

19      was 30%. Plaintiff estimates that his benefit payment at that time was

20      approximately $150 - $200 per month. In 1998, his disability rating was increased

21      to 90%, with a commensurate increase in benefit amounts. As of January 1, 2009,

22      Plaintiff receives $2823.00 per month;

23      (j)    Plaintiff began receiving benefits in 1977 for a disability rating of 30%, for which

24      he received approximately $150 – $200 per month. His rating was increased to 90%

25      in 1998 and the current amount of benefits is $2823.00 per month.

26      (k)    Veterans' Administration.

27  ///

28  ///

42

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

**INTERROGATORY NO. 59:**

If YOU ever had an application for life, health, accident, medical, hospital, or liability insurance rejected, please state:

(a) The date of application(s);

(b) The date of rejection(s);

(c) The type of insurance for which YOU applied;

(d) The identity of the insurance company with which each application was filed; and

(e) The reason for the rejection(s).

**RESPONSE TO INTERROGATORY NO. 59:**

Not applicable. Plaintiff has never received any such denial.

**INTERROGATORY NO. 60:**

If YOU have ever been a party to an action for damages for any personal injury YOU suffered, please state:

(a) The identity of all parties to the action(s) and their attorneys;

(b) The court and place where each such action was filed and the date(s) of the filing;

(c) The nature and extent of the injuries claimed whether any permanent disability remains; and

(d) The present status of each action, and if concluded, the final result thereof, including the amount of any settlement or judgment.

**RESPONSE TO INTEROGATORY NO. 60:**

Not applicable.

**INTERROGATORY NO. 61:**

Have YOU ever made claim for personal injury other than against this defendant, or other defendants named in this lawsuit, for the same injuries which YOU now claim are related to YOU alleged exposure to asbestos?

**RESPONSE TO INTERROGATORY NO. 61:**

No.

///

43

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

**INTERROGATORY NO. 62**:

Have YOU received any payment of reimbursements, or have any payments been made on YOUR behalf, from any source as a result of YOUR alleged exposure to asbestos, including settlements with either a party or potential defendant?

**RESPONSE TO INTERROGATORY NO. 62**:

No.

**INTERROGATORY NO. 63**:

Please IDENTIFY, by name, address, and phone number each person known to you, or YOUR attorneys, who can IDENTIFY the manufacturer or distributor of any of the asbestos-containing products YOU allege as having been in YOUR general vicinity during any period in which YOU allege exposure to asbestos-containing products.

**RESPONSE TO INTERROGATORY NO. 63**:

Plaintiff's shipmates in the R division on the USS Bache include: Anderson, D.; Benowitz, M.; Bissonnette, R. E.M.C.; Boozer, L.; Brackett, J.; Buchanan, __; Childs, R.; Drew, D.; Erb, T.; Garnett, W.; Gunia, R.; Harris, K.; Howington, Q.; Hrabosky, W.; Huskins, D.; Lindsey, K.; McGarry, P.; McKay, D., Ens.; Meal. J.; Miles, R.; Mischke, T.; Munch, P.; O'Brien, B.; Osborne, A.; Peques, L.; Pruett, C.; Read, F.; Skuczas, L.; Slevin, R.; Takac, J.J., Lt.; Tyndall, L.; Vantol, R.; Webster, D.; Whipple, G. MMC. Other shipmates aboard the USS Bache include: Allan, Jerry; Bacon, Thomas; Jensen, Edgar; Richter, Klaus; and, Willis, Norman. Investigation and discovery continue.

**INTERROGATORY NO. 64**:

Please IDENTIFY each and every tangible item (not already identified above) including photographs, diagrams, correspondence, or objects which YOU contend evidences YOUR exposure to asbestos-containing products.

**RESPONSE TO INTERROGATORY NO. 64**:

Plaintiff has a cruise book from the USS Bache, copies of which will be made available at his deposition. Plaintiff also has books from the time he was stationed at the Great Lakes, which

44

| | |
|---|---|
| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

1    will also be made available at this deposition.  Plaintiff may have some photographs responsive to

2    the information and items sought here, but does not presently know their location.

3    **INTERROGATORY NO. 65:**

4         Please IDENTIFY any work diaries, photographs, calendars, company brochures, medical

5    bills, invoices, business cards, and physical objects (e.g., asbestos pipe), which are in YOUR

6    personal care, custody, or control, relevant to the subject matter of this lawsuit.

7    **RESPONSE TO INTERROGATORY NO. 65:**

8         Plaintiff has a cruise book from the USS Bache, copies of which will be made available at

9    his deposition.  Plaintiff also has books from the time he was stationed at the Great Lakes, which

10   will also be made available at this deposition.  Plaintiff may have some photographs responsive to

11   the information and items sought here, but does not presently know their location.

12   **INTERROGATORY NO. 66:**

13        Have YOU or anyone on YOUR behalf requested from the Social Security office a listing

14   of all past employers and dates of employment? If so, please either attach a copy or give the

15   employer's name, address, date, and quarterly Social Security credit for each employer listed.

16   **RESPONSE TO INTERROGATORY NO. 66:**

17        Yes, counsel for Plaintiff has requested his earning history from the Social Security

18   Administration, but has not yet received it.

19   **INTERROGATORY NO.67:**

20        Please state the name, address, and telephone number of every person who assisted YOU in

21   any way in responding to these interrogatories.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |
|---|---|

**RESPONSE TO INTERROGATORY NO.67:**

Plaintiff and Plaintiff's counsel, Brent Coon & Associates, 44 Montgomery St., Suite 800, San Francisco, CA 94104, (415) 489-7420.

DATED: January 27, 2009

BRENT COON & ASSOCIATES

RICHARD A. BRODY,
Attorneys for Plaintiffs

46

*Dawson. V. CBS Corporation, et al.*
Case No. RG-09-432149

PLAINTIFF WILLIAM H. DAWSON'S RESPONSES
TO STANDARD (DIEDEN) INTERROGATORIES

# EXHIBIT A

FROM :DR CAGGIANO                    FAX NO. :352 3787057           Dec. 02 2008 09:16AM P1
Date : 11/26/2008    Time: 3:55 PM    To: CAGGIANO MI , ANTHONY @ 9,378-7057
                     Page: 001

## SHANDS
**HealthCare at Alachua General Hospital**
**SURGICAL PATHOLOGY CONSULTATION**
Pathology Laboratory, 801 S.W. 2nd Avenue
Gainesville, Florida 32601
Ph: (352) 733 0256   Fax: (352) 733-0259

Patient Name   **DAWSON, WILLIAM H**
Medical Record #  01204287 - AGH
Date of Birth  11/17/1940
Age. Gender  68, M
Accession #  **AST-08-04451**
Report Type  Surgical
Date Obtained  11/24/2008
Date Received  11/24/2008

Pat. Encounter #: 001509156521
Patient's Location: AICU-3313
Service: GENERAL SURGERY
Ref Physician(s) / Surgeon(s): CAGGIANO MD, ANTHONY

**SPECIMEN(S) SUBMITTED/PROCEDURES ORDERED:**
A. Right parietal pleura fs (88305)        A. Frozen Section Charge (88331)
B. Right parietal pleura (88305)           B. Calretinin (88342)
B. Wilm's Tumor Protein (88342)            B. CEA-MONO/Carcinoembryo Ag (88342)
B. Anti-Thyroid Transcription Factor-1, TTF-1 (88342)   B. Leu-M1/CD-15) (88342)

**CLINICAL DIAGNOSIS/HISTORY:** 68 year old male with history of colon cancer and prostate cancer presenting with right pleural effusion.

**DIAGNOSIS:**
    **FROZEN SECTION DIAGNOSIS (BY DR. DREW):**
        FSA1. Epithelial atypia suspicious for malignancy; final diagnosis pending permanent sections and
            additional studies.
    **PERMANENT SECTION DIAGNOSIS:**
      A. Right parietal pleura;
          Epithelial malignant mesothelioma.
      B. Right parietal pleura;
          Epithelial malignant mesothelioma, see comment

**COMMENT:** Adipose tissue and fibrous connective tissue of pleural membrane are diffusely permeated by an epithelial neoplasm with predominantly sheet-like growth pattern and focal tubular-acinar formation. Mitotic figures are frequent. Tumor expresses Calretinin and nuclear WT1. The tumor does not express carcinoembryonic antigen, thyroid transcription factor or Leu-M-1. Histologic pattern and immunostain profile support the above diagnosis.

**GROSS DESCRIPTION:** The specimen is received in formalin in two containers.

A. "A. Right parietal pleura." Received fresh for frozen section is a strip of grey-pink soft tissue that is 10.0 x 3.7 x 0.4 cm. Focal firm vaguely nodular areas are identified and sampled for frozen section. Representative sections are submitted as follows:
        FSA1   Frozen section tissue
        A2,A3   Additional firm nodular areas
B. "B. Right parietal pleura." Received in formalin are five strips of rubbery pink-white soft tissue with a small amount of attached adipose tissue, overall measuring 12.1 x 6.0 x 4 cm in aggregate. Focal firm nodular areas are identified. Representative sections of the nodules are submitted in cassettes B1 and B2.

"I, or my qualified designee, have performed the gross examination and description and preparations referenced herein, and have personally issued this report"   I have personally reviewed the gross description and specimen

Frozen Exam By: Dr. Peter Drew
Gross Exam By: Melanie Zona, P.A.
Micro Exam By: Dr. William Hamilton

Diagnostic/Retrieval Codes: T29000  M41000  M90503

Note: Test system have been developed and their performance characteristics determined by Shands Medical Administration. The FDA has determined that such clearance is not necessary. These tests are used for clinical purposes and should not be regarded as investigational or for research use. This laboratory is certified under the Clinical Laboratory Improvement Amendment of 1988 (CLIA '88) as qualified to perform high complexity clinical laboratory tests.

Service Date: 11/24/2008  Acct #: 001509156521  UDN: AST0804451  DocType: SURGICAL PATHOLOGY Report



SOUTHERN
OPEN IMAGING CENTER
CT · MRI · ULTRASOUND

**PATIENT:** Dawson, William                    11/17/40
**CHART NUMBER:** DW3156
**DATE OF EXAMINATION:** 00/__/08
**REFERRING PHYSICIAN:** Dr. Wright

**Examination:**     CT scan of the Chest

**Clinical:**     Abnormal study. Evaluate for abnormality.

**Technical:**     5mm axial images were obtained through the chest without contrast. Images were submitted in soft tissue and lung windows. Coronal reconstructed images were also submitted.

**Findings:**     Comparison is made to previous study dated 03/26/08.

**Lungs:** In the right mid lung there is a lobular area of abnormal soft tissue that measures 3.5 x 2.2cm on axial image 33 of series 4. This area is slightly more lobular and prominent than seen on the prior examination. I cannot exclude an underlying mass. There is an unusual lobular linear area of increased attenuation extending into the right middle lobe on axial images 30 and 31 of series 4. This too was seen previously and may represent scar, but again I cannot exclude tumor. Soft tissue extending inferiorly into the right lower lobe may also represent atelectasis and/or infiltration. Patchy increased attenuation at the right lung base likely represents compressive atelectasis given the large right pleural effusion. There is some nodularity of the periphery of the right upper lobe on axial images 11 through 18 and again, an infiltrative process could have this appearance. There are no left-sided pulmonary nodules or masses or consolidative change. There is mild dependent atelectasis at the left lung base.

**Mediastinum:** There is abnormal soft tissue along the right side of the mediastinum. This is nonspecific and may represent a rim of atelectasis or scar. I cannot exclude infiltration. Soft tissue extends towards the esophagus and tracheoesophageal groove, as well as prevertebral soft tissue on axial images 11 through 15. I cannot exclude mediastinal invasion. Overall this has increased compared to the prior examination.

**Heart/Thoracic Aorta/Great Vessels:** There is dense coronary artery atherosclerosis. There is atherosclerosis of the aorta. There is fluid in the pericardial recesses, which can be seen normally. There is no definite pericardial effusion.

**Pleura:** There is a large right pleural effusion. There is no significant left-sided pleural effusion. There is a calcified pleural plaque along the margin of the left upper lobe on image 26 of series 4. This can be seen in the setting of prior inflammation, as well as asbestos exposure. Additional calcified pleural plaques are seen along the posterior aspect of the left hemithorax.

**Thorax and Chest Wall:** No osseous abnormalities are identified of the thorax or visualized ribs. No soft tissue masses are identified of the chest wall musculature.

**Continued on page two...**

289 SW Stonegate Terrace, Suite 102 • Lake City, Florida 32024 • (386) 755-4788 • FAX (386) 755-9980
Toll Free 1-877-755-4788
www.southernopenmri.com



Page Two
Dawson, William
DW3156
09/22/08
CT Scan of the Chest

<u>Visualized Osseous Spine</u>: There are degenerative changes of the spine.  No definite acute osseous abnormalities are identified.

<u>Visualized Upper Abdomen</u>:  There is atherosclerosis of the aorta.

<u>Visualized Lower Neck</u>:   No masses are identified in the visualized lower neck.

IMPRESSION:

1.   Increased prominence of lobular soft tissue along the right major fissure.  This is nonspecific atelectasis, but lung consolidation could have this appearance.  I cannot exclude an underlying mass.

2.   Large right pleural effusion.

3.   Calcified pleural plaques along the left pleura can indicate prior inflammation or trauma, but I cannot exclude asbestos exposure.   There is no evidence of interstitial fibrosis to diagnose asbestosis.

4.   Abnormal soft tissue at the periphery of the right lung.  This too is nonspecific.  I cannot exclude neoplasm. Given the calcified pleural plaques and this appearance, pleural-based neoplasm including mesothelioma should be considered.

5.   Dense coronary artery atherosclerosis, as well as aortic atherosclerosis.

Electronically verified by:

_____
Gregory M. Carney, M.D.
GMC/tw:  D:T: 00/24/08:  09/24/08

389 SW Stonegate Terrace, Suite 102 • Lake City, Florida .32024 • (386) 755-4788 • FAX (386) 755-9980
Toll Free 1-877-755-4788
www.southernopenmri.com

9/28/08

NONE

**Patient Open Imaging Center**
289 SW Stonegate Terrace, Suite 102
Lake City FL 32024
386-755-4788 FAX: 386-755-9980

**PATIENT NAME: DAWSON, WILLIAM**
DATE OF BIRTH: 11-17-1940
MRN: DW-3150          ACCT#:
ACCESSION NUMBER: A737190
EXAM DATE: 3-26-2008

ORDERING PHYSICIAN: WRIGHT, RICHARD
PRIMARY CARE PHYSICIAN:
PATIENT LOCATION: OUTPATIENT
FLOOR/ROOM:

EXAM DESCRIPTION: CT CHEST WITH AND WITHOUT CONTRAST

---

HISTORY:   Cough and shortness of breath for 3 months.

CT CHEST WITHOUT AND WITH CONTRAST.

TECHNIQUE: Axial computed tomography images were obtained of the chest both before and after the administration of intravenous contrast.

FINDINGS:   There is a small to moderate right pleural effusion. No left pleural effusion is present. No pneumothorax is seen. There is extensive, predominantly linear opacity along the right major fissure, branching to also extend along the right minor fissure. Portions of this opacity are somewhat nodular. This may represent prominent focal scarring or atelectasis. There is no clear sign of pneumonia or neoplasm. There is no sign of pulmonary fibrosis or other diffuse interstitial process. No endobronchial lesion is seen.

The thyroid gland appears unremarkable. There is no mediastinal, hilar, or axillary adenopathy. Thoracic degenerative disc disease is identified. The visualized upper abdomen appears unremarkable.

IMPRESSION:
1. SMALL TO MODERATE RIGHT PLEURAL EFFUSION.
2. PROMINENT OPACITY EXTENDING ALONG THE RIGHT MAJOR AND MINOR FISSURES, LIKELY REPRESENTING PROMINENT ATELECTASIS OR SCAR BUT INDETERMINATE IN NATURE. A FOLLOWUP CHEST CT COULD BE OBTAINED IN 6 MONTHS TO ENSURE RESOLUTION OR STABILITY.

Dictated and Electronically Signed:
Raja P. Reddy, M.D., Body Imaging Radiologist
3-26-2008   10:52 pm          Turnaround: 10 Hrs 47 Minutes

1

## VERIFICATION

2

3   I, WILLIAM H. DAWSON, have read the foregoing Responses to Plaintiff's Responses to

4   Alameda County Superior Court Standard (Dieden) Interrogatories, know the contents thereof and

5   certify that the same are true of my own knowledge.

6   Executed on this 27th day of January, 2009, in Live Oak, Florida. I declare under

7   penalty of perjury of the laws of the state of California that the foregoing is true and correct.

8                              *William H. Dawson*

9                              WILLIAM H. DAWSON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

47

| *Dawson. V. CBS Corporation, et al.*<br>Case No. RG-09-432149 | PLAINTIFF WILLIAM H. DAWSON'S RESPONSES<br>TO STANDARD (DIEDEN) INTERROGATORIES |

**Exhibit D**

ENDORSED
FILED
ALAMEDA COUNTY

JAN 1 0 2009

CLERK OF THE SUPERIOR COURT
By _____
Deputy

1  Richard A. Brody, Esq. (SBN 100379)
   Karen J. Chedister, Esq. (SBN 099473)
2  Dee Dee Stephens, Esq. (SBN 230199)
   BRENT COON & ASSOCIATES
3  44 Montgomery Street, Suite 800
   San Francisco, CA 94104
4  Telephone: 415.489.7420
   Facsimile: 415.489.7426
5
6  Attorneys for Plaintiffs
7
8
9          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10               IN AND FOR THE COUNTY OF ALAMEDA
11
12 JOHNIE D. PELFREY, JR. and JAN D.        Case No. 09 431222
   PELFREY,
13                                          COMPLAINT FOR DAMAGES
14         Plaintiff,                       (PERSONAL INJURY--ASBESTOS)
15 v.                                       1.  Negligence
                                            2.  Strict Products Liability
16 FOSTER WHEELER, LLC; GENERAL            3.  Failure to Warn
   ELECTRIC COMPANY; VIACOM, INC.,          4.  Breach of Implied Warranties
17 individually and as parent, alter ego, successor in   5.  Fraud and Conspiracy
   interest and/or successor by merger to CBS   6.  False Representation Under
18 CORPORATION fka WESTINGHOUSE                 Restatement Torts Section 402-B
   ELECTRIC CORPORATION; VIAD              7.  Loss of Consortium
19 CORPORATION (Griscom-Russell); WARREN   Punitive Damages
   PUMPS; and DOES 1 through 500, inclusive,
20
21         Defendants.
22
       Plaintiffs JOHNIE D. PELFREY, JR. and JAN D. PELFREY ("Plaintiffs") complain of all
23 defendants, and each of them, and allege:
24                          GENERAL ALLEGATIONS
25     1.     Plaintiffs bring this action on their own behalf. Plaintiffs know of no other parties
26 who should be named as a Plaintiff herein.
27 ///
28 ///

                                           1

Pelfrey v. Foster Wheeler, LLC, et al.          COMPLAINT FOR DAMAGES (PERSONAL
                                                           INJURY--ASBESTOS)

2.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 500, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of said fictitiously named defendants are, through their negligence, intentional torts, and/or conduct giving rise to strict liability, responsible or liable in some manner for the occurrences herein alleged, and that the injuries herein alleged were the direct and legal result of said negligence, intentional torts, and/or conduct giving rise to strict liability.

3.     At all times mentioned in this complaint, each of the defendants was the agent and employee of each of the remaining defendants, and by their actions as alleged in this complaint each defendant was acting within the course and scope of this agency and employment, and each defendant has ratified and approved the acts of the remaining defendants. The Federal Courts lack subject matter jurisdiction over this action as there is no federal question and incomplete diversity of citizenship exists due to the presence of one or more California defendants. Removal is improper. Every claim arising under the constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office). No claim of admiralty or maritime law is raised. Plaintiff sues no foreign state or agency. Venue is proper in Alameda County.

4.     FOSTER WHEELER, LLC; GENERAL ELECTRIC COMPANY; VIACOM, INC., individually and as parent, alter ego, successor in interest and/or successor by merger to CBS CORPORATION fka WESTINGHOUSE ELECTRIC CORPORATION; VIAD CORPORATION (Griscom-Russell); WARREN PUMPS; and DOES 1 through 500, inclusive, are at all times herein mentioned, and were corporations or other business entities organized and existing under the laws of the state of California and/or qualified to do business in this state.

/ / /

/ / /

/ / /

2

*Pelfrey v. Foster Wheeler, LLC, et al.*                            COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

5.     At all times mentioned herein, defendants, and each of them, were engaged in the business of mining, milling, manufacturing, testing, developing, processing, importing, converting, compounding, assembling, fabricating, modifying, designing, specifying, approving, supplying, distributing, delivering, packaging, labeling, advertising, marketing, warranting, applying, installing, and inspecting asbestos, and products produced therefrom, for sale to and use by members of the general public, as well as for sale to and use by other parties to manufacture, assemble, supply, distribute, label, apply and install products made therefrom, or both.

6.     The defendants, and each of them, acting through their agents, servants and/or employees, cause, and have caused in the past, certain asbestos-containing products and asbestos-related insulation, refractory materials, fireproofing, gasket and packing materials, bulkhead insulation, decking materials, rope, cloth, tile flooring, boiler and turbine covers, as well as various automotive gaskets, brakes, clutch and other materials to be placed on the market and in the stream of interstate commerce with the result that said products and materials came into use by Plaintiff and those working in close proximity to Plaintiff at relevant times herein.

7.     Plaintiff Johnie D. Pelfrey was exposed to asbestos during the course of his life in the manner and during the time periods set forth below:

Plaintiff Johnie D. Pelfrey, Jr. ("Plaintiff") was employed at the following locations where Plaintiffs allege possible exposure to asbestos:

A.     United States Navy – (September 1963 – November 1976) – Plaintiff was exposed to asbestos when he went through basic training in San Diego, CA, training to work in the boiler rooms. He stood watch in the boiler rooms maintaining and repairing boilers and other equipment, and working in close proximity to others doing such work. He slept in the boiler room for six months on the USS Barry, on which he served for approximately one year. During his time in the Navy, Plaintiff served on several other vessels, including but not limited to the USS Stribling, USS Midway, and USS America. He also worked shoulder to shoulder with other trades who installed, cut, manipulated, disturbed, removed and swept the debris of asbestos and asbestos-containing products including but not limited to insulation, pipe covering, block, cement, gaskets, cloth, packing, wicking, and rope.

<div align="center">3</div>

*Pelfrey v. Foster Wheeler, LLC, et al.*          COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1       B.     Shipyard in Philadelphia, Pennsylvania – (approximately 1976 – 1977) – Plaintiff

2  was exposed to asbestos when he worked in the shops doing repair work to steam propulsion

3  equipment, including but not limited to motors, boilers, pumps, etc. for both United States Navy

4  vessels and privately owned tugboats.

5       C.     Shipyard in Norfolk, Virginia – (approximately 1978 – 1979) – Plaintiff was

6  exposed to asbestos when he worked in the shops doing repair work to steam propulsion

7  equipment, including but not limited to motors, boilers, pumps, etc. for both United States Navy

8  vessels and privately owned tugboats.

9       D.     Shipyard in Charleston, North Carolina – (approximately 1979 – 1980) – Plaintiff

10  was exposed to asbestos when he worked in the shops doing repair work to steam propulsion

11  equipment, including but not limited to motors, boilers, pumps, etc. for both United States Navy

12  vessels and privately owned tugboats.

13       E.     Cape Canaveral Hospital in Florida – (1980 – 1984) – Plaintiff was exposed to

14  asbestos when he worked in the HVAC shop and as the Facilities Director.

15       F.     Hospital near Covington/Clifton Forge, West Virginia – (1984 – 1986) – Plaintiff

16  was exposed to asbestos when he worked as the Director of Engineering.

17       G.     Baptist Hospital in Jacksonville, FL – (1987) – Plaintiff was exposed to asbestos

18  while he worked in the HVAC maintenance department.

19       H.     White House NAS in Jacksonville, FL – (1988) – Plaintiff was exposed to asbestos

20  while he worked in the HVAC maintenance department.

21       I.     Unknown HVAC Company – (1989) – Plaintiff was exposed to asbestos while he

22  worked as an estimator.

23       J.     ServiceMaster – Director/Assistant Director of Engineering – various hospitals in

24  Des Moines, IA – (1990) – Plaintiff was exposed to asbestos while he worked in the plant

25  operations department.

26       K.     ServiceMaster - Mercy Hospital – Port Huron, MI – (1990 – 1991) – Plaintiff was

27  exposed to asbestos while he worked in the maintenance department.

28  ///

*Pelfrey v. Foster Wheeler, LLC, et al.*           COMPLAINT FOR DAMAGES (PERSONAL
                                           INJURY--ASBESTOS)

1    L.    ServiceMaster – Charity Hospital – New Orleans, LA – (1991 – 1994) - Plaintiff

2    was exposed to asbestos while he worked in the maintenance department.

3    M.    Saturn of Tallahassee – (1998 – 1999) – Plaintiff was exposed to asbestos while he

4    worked as a new and used car salesman.

5    N.    Harley-Davidson of Tallahassee – (2000) – Plaintiff was exposed to asbestos while

6    he worked as a new and used motorcycle salesman.

7    O.    Proctor Honda – (2001 – 2008) – Plaintiff was exposed to asbestos when he worked

8    at this new and used car dealership when he would visit his friend in the service area or when he

9    would drop off a client's car to the service area. Plaintiff was a new and used car salesman who

10    was exposed to asbestos-containing products including but not limited to brakes, exhaust systems,

11    clutches, mufflers, gaskets, and engines.

12        Plaintiff's father worked in shipyards in Chester, Pennsylvania (possibly Sunco) and as an

13    assembly line work at the Ford Motor Company in Chester, Pennsylvania.  Plaintiff's mother also

14    worked in shipyards in the 1940s.

15    8.    During the course and scope of his employment, Plaintiff continually worked with

16    and in close proximity to others who were working with asbestos and asbestos-containing products.

17    He routinely and regularly worked in close proximity to asbestos and asbestos-containing products

18    and was continually exposed to asbestos fibers which were released from asbestos and asbestos-

19    containing products which were mined, milled, manufactured, processed, imported, converted,

20    compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and

21    sold by defendants, and each of them.

22    9.    Plaintiff's exposure to asbestos was the direct and legal cause of his development of

23    an asbestos-related disease known and designated as mesothelioma and other illnesses and

24    disabilities whose relationship to asbestos is as yet unknown to Plaintiff herein.

25    ///

26    ///

27    ///

28    ///

5

*Pelfrey v. Foster Wheeler, LLC, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                               INJURY--ASBESTOS)

## FIRST CAUSE OF ACTION

### (Negligence)

10.     Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations.

11.     At all times relevant herein, defendants and each of them, owed a duty of due care which required them to exercise ordinary care to protect against an unreasonable risk of harm.  This duty was owed to Plaintiffs.

12.     Plaintiff's development of mesothelioma and related conditions is the direct and legal result of the conduct of the defendants, and each of them, in that they negligently and carelessly researched, tested or failed to test, manufactured, designed, specified, developed, labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed, distributed and supplied asbestos and asbestos-containing products.  Defendants, and each of them, without any adequate warning to the consumer or user, produced, sold, and otherwise put into the stream of interstate commerce the foregoing materials which said defendants, and each of them knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to Plaintiff's body, lungs, respiratory system, skin and health.  Further, defendants, and each of them, knew, or through the exercise of ordinary care should have known, that exposure to asbestos is, and at all times relevant herein has been, associated with terminal and incurable diseases which have caused and continue to cause death.

13.     During the time period when Plaintiff was exposed to asbestos in the manner described above, he had no knowledge that said exposure placed him at risk for developing the diseases described herein and therefore had no opportunity, nor can he be charged with a duty or breach of duty, to protect himself against said harmful asbestos exposure.  Plaintiff had no knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them, were actionable at law when they were committed and cannot be charged with knowledge or inquiry thereof.

///

///

6

14.     The mesothelioma, asbestosis, pleural plaques, and related conditions that afflict Plaintiff developed at a microscopic and undetectable level over an extended period of time, without noticeable trauma, and was therefore unknown and unknowable to Plaintiff until his physicians diagnosed him with mesothelioma, asbestosis, pleural plaques and related conditions within the pertinent statute of limitations.  Prior to his diagnosis, Plaintiff did not know, nor through the exercise of reasonable diligence could he have known, that his disease and related conditions were caused by his exposure to the defendants' asbestos and asbestos-containing products.

15.     As a direct and legal result of the conduct of the defendants, and each of them, Plaintiff developed a disease known and designated as mesothelioma, asbestosis, pleural plaques and related conditions.

16.     As a further direct and legal result of the conduct of defendants, and each of them, it has been and continues to be necessary for Plaintiff to retain the services of physicians, hospitals, hospice, and other health care professionals to diagnose, treat, and provide palliative care for Plaintiff from now until he approaches the end of his life.  As a further direct and legal result of the conduct of the defendants, and each of them, it will be necessary for Plaintiff to retain the services of health care professionals in the future for an indeterminable period of time.  Plaintiff does not yet know the full extent of treatment that will be required nor the reasonable value of medical services rendered or to be rendered to Plaintiff herein and therefore requests leave to amend this complaint when that sum is determined.

17.     As a direct and legal result of the conduct of the defendants, and each of them, and of Plaintiff's diagnosis of mesothelioma, asbestosis, pleural plaques and related conditions, Plaintiff has been unable to follow his normal or any gainful occupation for certain periods preceding and following his diagnosis, and Plaintiff will remain disabled for an indeterminable time.  Plaintiff has incurred, and will incur, loss of income, wages, pensions, earning potential, profits and commissions, and other pecuniary losses.  Plaintiff does not know the amount of said past and future losses and therefore requests leave to amend this complaint when that sum is determined.

7

18.     As a further direct and legal result of the negligence of defendants, and each of them, and Plaintiff's diagnosis of mesothelioma, asbestosis, pleural plaques and related conditions, Plaintiff has been damaged in his health, strength, and activity, and endured and continues to endure unrelenting physical and emotional pain and suffering, emotional distress, mental distress, mental anguish, fear, nervousness, grief, anxiety, worry, humiliation and indignity, the full nature and extent of which are presently unknown to Plaintiff and for which Plaintiff has incurred general damages in excess of $50,000.00.

19.     Since 1924, the defendants, and each of them, knew or should have known of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the Plaintiff and others in Plaintiff's position working in close proximity with such materials. The defendants, and each of them, knew or should have known of the dangerous propensities of the aforementioned materials and products since before that time.

20.     Although defendants knew or should have known of the aforementioned information, defendants, and each of them, negligently, carelessly, and recklessly failed to label any of the aforementioned asbestos-containing materials and products, including those with which and around which Plaintiff worked such as thermal insulation materials specified for or on/in boilers, regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964.

21.     Commencing in 1964, many of such asbestos-containing materials were not labeled as hazardous by all of the defendants herein, despite the fact that the knowledge of such hazards existed and that defendants, and each of them, knew or should have known of such hazards since 1924. At all times herein mentioned, defendants, and each of them, negligently, carelessly, and recklessly:

A.     failed to provide information relating to the danger of the use of the aforementioned materials to Plaintiff and others in Plaintiff's position and the general public concerning the dangerous nature of the aforementioned materials to workers;

///

8

*Pelfrey v. Foster Wheeler, LLC, et al.*                          COMPLAINT FOR DAMAGES (PERSONAL
                                                                                              INJURY--ASBESTOS)

1           **B.**    failed to disseminate such information in a manner which would give general

2 notice to the public and knowledge of the hazardous nature thereof, when defendants were bound to

3 disclose such information;

4           **C.**    sold the aforementioned products and materials to Plaintiff's employer(s)

5 and others without advising such employers and others of dangers of the use of such materials to

6 persons working in close proximity thereto, when defendants knew or should have known of such

7 dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers;

8           **D.**    negligently, carelessly and recklessly misrepresented to Plaintiff, others in

9 Plaintiff's position, and Plaintiff's employer that it was safe for Plaintiff to work in close proximity

10 to such materials, when they knew that this was not the case; and

11           **E.**    negligently, carelessly and recklessly failed to disclose to Plaintiff, others in

12 Plaintiff's position, Plaintiff's employer, and members of the general public, medical and scientific

13 data and knowledge of the results of studies including, but not limited to, the information and

14 knowledge of the contents of the Lanza report.

15       22.   **A.**    Defendants, and each of them, knew or should have known of the

16 connection between inhalation of asbestos fibers and lung cancer, asbestosis, pleural plaques, and

17 related conditions which information was disseminated through the Asbestos Textile Institute and

18 other industry organizations to all other defendants, and each of them, herein.

19           **B.**    At all times mentioned herein, defendants, and each of them, knew or should

20 have known of the connection between inhalation of asbestos fibers and cancer, which information

21 was disseminated through the Asbestos Textile Institute and other industry organizations to all

22 other defendants herein.

23       23.   Defendants, and each of them, negligently, carelessly and recklessly failed to

24 provide the above described medical and scientific data to Plaintiff, others in Plaintiff's position,

25 Plaintiff's employer(s), and members of the general public concerning such knowledge of danger,

26 when defendants were bound to disclose it.

27 ///

28 ///

<div align="center">9</div>

24.   Defendants, and each of them, knew or should have known that said asbestos-containing materials were dangerous when breathed and caused pathological effects without noticeable trauma, and that such material was dangerous and a threat to the health of persons coming into contact therewith. Defendants, and each of them, negligently, carelessly and recklessly did not warn Plaintiff, others in Plaintiff's position, Plaintiff's employer(s) and the general public of their information.

25.   Defendants, and each of them, knew or should have known that adequate protective masks and devices should be used by workers such as Plaintiff when applying and installing the asbestos-containing products of the defendants. Defendants, and each of them, knew or should have known that not wearing an adequate protective mask and/or device would result in injury to the Plaintiff and others applying and installing such materials. Defendants, and each of them, negligently, carelessly and recklessly do not inform workers such as Plaintiff, and others applying and installing such materials of the aforementioned information.

26.   Defendants, and each of them, knew or should have known that Plaintiff and anyone similarly situated in an industrial and construction setting would be exposed to defendants' asbestos-containing products, and that, upon inhalation of asbestos such persons would, in time, develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all. Defendants, and each of them, negligently, carelessly and recklessly failed to provide information to the public at large and buyers, users, and physicians employed by Plaintiff and Plaintiff's employer for the purpose of conducting physical examinations of Plaintiff and others working with or near asbestos that exposure to these materials would cause pathological effects without noticeable trauma.

27.   The foregoing acts of the defendants, and each of them, and the negligent, careless and reckless conduct of the defendants, and each of them, as described hereinabove, were done recklessly, wantonly, willfully, oppressively, and in conscious disregard of the safety of Plaintiff herein, in that

///

///

*Pelfrey v. Foster Wheeler, LLC, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                            INJURY--ASBESTOS)

1    A.    the defendants, and each of them, prior to and at the time of sale, distribution

2  or supply of the aforementioned products to Plaintiff's employer or to others who in turn sold to

3  Plaintiff's employers, and to other persons relevant herein, knew or should have known that the

4  foregoing asbestos fibers released from said products during the foreseeable operations of applying

5  and removing same, were dangerous when inhaled;

6    B.    defendants, and each of them, knew or should have known of the hazards

7  and dangers of working with or around asbestos products produced or supplied by defendants, and

8  each of them. The defendants, and each of them, knew or should have known that said products

9  would be used by Plaintiff and others who had no knowledge of the dangerous and hazardous

10  nature thereof; and

11    C.    defendants, and each of them, either did not warn or insufficiently warned

12  regarding the dangerous nature of said products.  Defendants, and each of them, did not place a

13  sufficient warning on the said product or package thereof regarding said dangerous nature.

14  Accordingly, Plaintiff is entitled to an award of punitive damages.

15    WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

16  ## SECOND CAUSE OF ACTION

17  ### (Strict Products Liability)

18    28.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

19  fully set forth herein, each and every allegation contained in the General Allegations and the First

20  Cause of Action herein, except Paragraphs 11, 12 and 13.

21    29.    At all times mentioned herein, defendants, and each of them, during the ordinary

22  course of business, mined, milled, manufactured, imported, supplied, distributed, delivered,

23  packaged, labeled, advertised, sold, marketed, installed, applied and otherwise introduced into the

24  stream of commerce asbestos and asbestos-containing products which were defective due to their

25  design, manufacture, sufficiency of or lack of warning, and/or failure to meet ordinary use or

26  consumer expectations of safety when used in an intended or reasonably foreseeable manner.

27  ///

28  ///

11

*Pelfrey v. Foster Wheeler, LLC, et al.*    COMPLAINT FOR DAMAGES (PERSONAL
INJURY--ASBESTOS)

30.     The asbestos and asbestos-containing products were defective when the defendants, and each of them, marketed and introduced them into the stream of commerce. Defendants, and each of them, knew that the aforementioned products would be used without inspection for defects by the user thereof.

31.     At all times herein mentioned, Plaintiff, Plaintiff's employer, and other persons relevant herein, purchased from defendants, and each of them, asbestos and asbestos-containing products.

32.     *Defective Design*: The products were defectively designed in that:

A.     The products failed to perform as safely as an ordinary consumer would expect in their intended or reasonably foreseeable use or manner of operation, or;

B.     The products had inherent risks of danger that outweighed their benefits; alternate and safer substitute products existed and the state-of-the-art required their use given the seriousness of the potential danger, likelihood of its occurrence, feasibility, cost, and adverse consequences to the product and to the consumer of a safer alternative design.

C.     *Failure to Warn*: Defendants knew or reasonably should have known of the dangerous propensities of their products but nonetheless distributed and marketed their products with inadequate warning of its dangers.

D.     Each of defendants' products reached Plaintiff without substantial change in its condition.

E.     The aforementioned products were used by Plaintiff and those in close proximity to Plaintiff in a foreseeable manner and in the manner for which they were intended. Defendants' products were used in a manner reasonably foreseeable by defendants, which defendants intended or knew they would be used, or for which they marketed them or knew they were marketed to be used.

F.     At all times mentioned herein, Plaintiff was unaware of the dangerous nature of the aforementioned products.

33.     The defective design of defendants' products and failure to warn were the proximate causes of Plaintiff's injuries.

12

*Pelfrey v. Foster Wheeler, LLC, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                                                     INJURY--ASBESTOS)

34.     As a direct and legal result of the conduct of the defendants, and each of them, Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

35.     The aforementioned products were used by Plaintiff and those in close proximity to Plaintiff in a foreseeable manner and in the manner for which they were intended.

36.     A.     Defendants, and each of them, knew that defendants' asbestos-containing products would be used by Plaintiff and anyone similarly situated in an industrial and construction setting without inspection for defects.

B.     Defendants, and each of them, knew that such persons would be exposed to defendants' asbestos-containing products.

C.     Defendants, and each of them, knew that, upon inhalation of asbestos from defendant's asbestos-containing products, such persons would, in time, develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all.

D.     At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, defendants, and each of them, knew or should have known of the risks and hazards associated with the use and/or exposure of its products.

E.     At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them, failed to warn or provided inadequate warnings to persons who used or would be exposed to its defective asbestos-containing products, including Plaintiff, of the dangers and hazards associated with its products.

F.     At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them failed to provide instructions or provided inadequate instructions to persons who used its defective asbestos-containing products, or who would be exposed to said products, including Plaintiff, of the dangers and hazards associated with its products.

///

<div align="center">13</div>

*Pelfrey v. Foster Wheeler, LLC, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                            INJURY--ASBESTOS)

1    G.    Defendants, and each of them, prior to and at the time of placing the

2  aforementioned products in to the stream of commerce, including but not limited to supplying said

3  products to Plaintiff's employer or to others who in turn sold to Plaintiff's employers, and to other

4  persons relevant herein, knew that the asbestos which Plaintiff and others around him were exposed

5  to was dangerous.  The defendants, and each of them, either did not warn or insufficiently warned

6  regarding the dangerous nature of said products, and failed to place a sufficient warning on the said

7  product or package thereof regarding said dangerous nature, despite knowing that said products

8  would be used by Plaintiff and others around him who had no knowledge of the dangerous and

9  hazardous nature thereof.

10    37.    The conduct of the defendants, and each of them, was motivated by their financial

11  interests.  In this financial pursuit, defendants consciously disregarded the safety of users and

12  persons exposed to their products and were consciously willing to permit their products and

13  premises to injure workers and others, including Plaintiff, in order to maximize profits.  They

14  consciously disregarded the well-publicized risks of asbestos exposure because to have kept

15  consumers and end users like Plaintiff safe would have required said defendants to make less

16  money or limit distribution of their products.  The defendants, and each of them, either did not

17  warn or insufficiently warned regarding the dangerous nature of said products, nor placed a

18  sufficient warning on the said product or package thereof regarding said dangerous nature, despite

19  knowing that said products would be used by Plaintiff and others around him who had no

20  knowledge of the dangerous and hazardous nature thereof.  Defendants' conduct as described

21  herein was and is willful, malicious, outrageous, and in conscious disregard and indifferent to the

22  safety and health of workers and others exposed to asbestos, including Plaintiff, and therefore

23  Plaintiffs are entitled to an award of punitive damages.

24    WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

25  ///

26  ///

27  ///

28  ///

14

## THIRD CAUSE OF ACTION

### (Failure to Warn)

38.   Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations, the First Cause of Action herein, except Paragraphs 11, 12 and 13, and each and every allegation contained in the Second Cause of Action, except those allegations pertaining to design and manufacturing defect.

39.   At all relevant times, the asbestos and asbestos-containing products which were mined, milled, manufactured, tested, developed, processed, imported, converted, compounded assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by defendants, and each of them, were defective as a result of defendants' failure to warn or give adequate warning that the particular risk of developing an asbestos-related disease and risk of death from an asbestos-related disease resulting from exposure to asbestos rendered the product unsafe for its intended or reasonably foreseeable use.

40.   At all relevant times, the defendants, and each of them, had specific knowledge of these risks or could have known of these risks by the application of scientific knowledge available at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying, approving, inspecting, applying and installing the asbestos and asbestos-containing products.

41.   As a direct and legal result of the conduct of the defendants, and each of them, Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Breach of Warranties)

42.   AS AND FOR A FOURTH CAUSE OF ACTION, Plaintiffs complain of defendants, and each of them, and alleges:

<center>15</center>

*Pelfrey v. Foster Wheeler, LLC, et al.*   COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

43.     Plaintiffs, by this reference, hereby incorporate and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations, and the First Cause of Action herein, except Paragraphs 11, 12 and 13.

44.     The defendants, and each of them, sold, supplied, delivered or otherwise distributed to Plaintiff, or to another purchaser or user who subsequently sold, supplied, delivered or otherwise distributed to Plaintiff, or to others working in close proximity to Plaintiff, the above-described asbestos and asbestos-containing products to which Plaintiff was exposed.

45.     The defendants, and each of them, knew the intended purpose of the asbestos and asbestos-containing products prior to marketing said products and knew or should have known that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing these products.

46.     The defendants, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose.

47.     Defendants, and each of them, impliedly warranted that their products were of merchantable quality and safe, fit and proper for the uses which defendants knew or intended were to be made of them at the time of selling them.

48.     Plaintiff reasonably relied on the skill, knowledge and judgment of defendants, and each of them, in Plaintiff's use of the products as a basis of the bargain under which such products were bought and used.

49.     The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by defendants, and each of them, in that said products had dangerous propensities when put to the use for which each of these defendants knew or intended they were marketed or sold and would cause severe injury to users or bystanders, such as Plaintiff.

///

///

///

16

*Pelfrey v. Foster Wheeler, LLC, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                            INJURY--ASBESTOS)

50.   The defendants, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, advising Plaintiff and others working in close proximity to Plaintiff that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing said products.

51.   As a direct and legal result of the conduct of the defendants, and each of them, Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, Plaintiffs pray judgment as is hereinafter set forth.

<div align="center"><strong>FIFTH CAUSE OF ACTION</strong></div>

<div align="center">(Fraud and Conspiracy)</div>

52.   AS AND FOR A FIFTH CAUSE OF ACTION, Plaintiffs complain of the defendants, and each of them, and alleges:

53.   Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except allegations pertaining to negligence.

54.   Pursuant to Section 1708 of the Civil Code of California, the defendants, and each of them, owed a duty to Plaintiff at all times relevant herein to abstain from injuring the Plaintiff or infringing upon any of his rights.

55.   The defendants, and each of them, breached the duty they owed to Plaintiff pursuant to Section 1708 of the Civil Code of California by willfully deceiving Plaintiff with the intent to induce Plaintiff to alter Plaintiff's position to Plaintiff's injury or risk.  The defendants, and each of them, deceived the Plaintiff and committed actionable fraud pursuant to Section 1709 and Section 1710 of the Civil Code of California.

56.   The defendants, and each of them, as more fully set forth below, suggested as fact that which was not true and that which defendants, and each of them, did not believe was true.

/ / /

17

57. The defendants, and each of them, as more fully set forth below, asserted as fact that which was not true and that which defendants, and each of them, had no reasonable grounds for believing was true.

58. The defendants, and each of them, as more fully set forth below, suppressed facts which they were obligated to disclose and gave information of other facts which were likely to mislead for want of communication of the undisclosed facts.

59. The defendants, and each of them, made promises without any intention of keeping those promises.

60. Since 1924, the defendants, and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the Plaintiff and others in Plaintiff's position working in close proximity with such materials. The defendants, and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time, and with intent to deceive Plaintiff and others in his position, and with intent that he and such others should be and remain ignorant of such facts, and with intent to induce Plaintiff and such others to alter his and their positions to him and their injury and/or risk and in order to gain advantages did do the following acts:

A. Defendants, and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the defendants herein, despite the fact that the knowledge of such hazards existed and was known to defendants, and each of them, since 1924. By not labeling such materials as to their said hazards, defendants, and each of them, caused to be suggested as a fact to Plaintiff and Plaintiff's employer that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and defendants did not believe it to be true.

/ / /

/ / /

18

*Pelfrey v. Foster Wheeler, LLC, et al.*

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1         **B.**    Defendants, and each of them, suppressed information relating to the danger

2 of the use of the aforementioned materials by requesting the suppression of information to the

3 Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to

4 workers and by not allowing such information to be disseminated in a manner which would give

5 general notice to the public and knowledge of the hazardous nature thereof, when defendants were

6 bound to disclose such information.

7         **C.**    Defendants, and each of them, sold the aforementioned products and

8 materials to Plaintiff's employer and others without advising such employers and others of dangers

9 of the use of such materials to persons working in close proximity thereto, when defendants knew

10 of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers.

11 Thereby, defendants caused to be positively asserted to Plaintiff's employer that which was not true

12 and which defendants had no reasonable ground for believing to be true and in a manner not

13 warranted by the information possessed by said defendants, and each of them, to wit, that it was

14 safe for Plaintiff to work in close proximity to such materials.

15         **D.**    Defendants, and each of them, suppressed and continue to suppress from

16 everyone, including Plaintiff and Plaintiff's employer, medical and scientific data and knowledge

17 of the results of studies including, but not limited to, the information and knowledge of the contents

18 of the Lanza report. Although bound to disclose it, defendants, and each of them, influenced

19 A. J. Lanza to change his report, the altered version of which was published in Public Health

20 Volume at page I in 1935, thereby causing Plaintiff to be and remain ignorant thereof. Defendants,

21 and each of them, caused *Asbestos Magazine*, a widely disseminated trade journal, to omit mention

22 of danger, thereby lessening the probability of notice of danger to the users thereof.

23         **E.**    Defendants, and each of them, belonged to, participated in, and financially

24 supported the Asbestos Textile Institute and other industry organizations which, and on behalf of

25 defendants, and each of them, actively promoted the suppression of information of danger to users

26 of the aforementioned products and materials, thereby misleading Plaintiff and Plaintiff's employer

27 by the suggestions and deceptions set forth above in this cause of action. The Dust Control

28 Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile

<div align="center">19</div>

*Pelfrey v. Foster Wheeler, LLC, et al.*         COMPLAINT FOR DAMAGES (PERSONAL
                                             INJURY—ASBESTOS)

1   Institute, was specifically enjoined to study the subject of dust control.  Discussions in this

2   committee were held many times regarding the dangers inherent in asbestos and the dangers which

3   arise from the lack of control of dust and the suppression of such information from 1946 to a date

4   unknown to Plaintiff at this time.

5          F.      Commencing in 1930 with the study of mine and mill workers at Asbestos

6   and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos- Manhattan plants

7   in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific

8   information of the connection between inhalation of asbestos fibers and mesothelioma, asbestosis,

9   pleural plaques, and related conditions, which information was disseminated through the Asbestos

10  Textile Institute and other industry organizations to all other defendants, and each of them, herein.

11  Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific

12  information of the connection between inhalation of asbestos fibers and cancer, which information

13  was disseminated through the Asbestos Textile Institute and other industry organizations to all

14  other defendants herein.  Thereby, defendants suggested as a fact that which is not true and

15  disseminated other facts likely to mislead Plaintiff and Plaintiff's employer and which did mislead

16  them by withholding afore-described medical and scientific data and by not giving Plaintiff or

17  Plaintiff's employer the true facts concerning such knowledge of danger when defendants were

18  bound to disclose it.

19         G.      Defendants, and each of them, failed to warn Plaintiff and Plaintiff's

20  employer that said materials were dangerous when breathed and caused pathological effects

21  without noticeable trauma, despite the fact that defendants possessed knowledge and were under a

22  duty to disclose that such material was dangerous and a threat to the health of persons coming into

23  contact therewith.

24         H.      Defendants, and each of them, failed to provide Plaintiff with information

25  concerning adequate protective masks and devices to be used when applying and installing the

26  products of the defendants, and each of them, despite the knowledge of defendants and a duty to

27  disclose that such protective measures were necessary and would result in injury to the Plaintiff and

28  others applying and installing such materials if not so advised.

<center>20</center>

1        I.     Defendants, and each of them, concealed from Plaintiff the true nature of the

2  industrial and construction exposure of Plaintiff and knew that Plaintiff and anyone similarly

3  situated, upon inhalation of asbestos, would in time develop irreversible conditions of either

4  pneumoconiosis, asbestosis or cancer, or all, and that the materials to which he was exposed would

5  cause pathological effects without noticeable trauma despite the fact that defendants were under a

6  duty to and bound to disclose it; and

7        J.     Defendants, and each of them, failed to provide information to the public at

8  large and buyers, users, and physicians employed by Plaintiff and Plaintiff's employer for the

9  purpose of conducting physical examinations of Plaintiff and others working with or near asbestos

10  of the true nature of the hazards of asbestos and that exposure to these materials would cause

11  pathological effects without noticeable trauma to the public, including buyers, users, and

12  physicians employed by Plaintiff and Plaintiff's employer so that said physicians could examine,

13  diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that

14  defendants, and each of them, were under a duty to so inform and said failure was misleading.

15     61.     Defendants, and each of them, having the aforementioned knowledge of facts and

16  knowing that the Plaintiff did not possess such knowledge, acted falsely and fraudulently and with

17  full intent to cause Plaintiff to remain unaware of those facts and to induce Plaintiff to work with

18  and around unsafe products in a dangerous environment, all in violation of Section 1710 of the

19  Civil Code of the State of California.

20     62.     At all times mentioned, the defendants, and each of them, knowingly and willfully

21  conspired and agreed among themselves to perpetrate upon Plaintiff the unlawful acts complained

22  of in Paragraphs 19 through 27 of the First Cause of Action and Paragraphs 54 through 61 of the

23  Fifth Cause of Action herein.

24     63.     The defendants, and each of them, and at least one of them, did the acts herein

25  alleged in Paragraph 60 through 62 of this Fifth Cause of Action in furtherance of the conspiracy

26  and agreement as herein alleged and also acted in furtherance of a conspiracy and agreement

27  between and among the defendants, and each of them, to violate State and Federal laws and

28  regulations, the exact nature and extent of which are unknown at this time but known full well to

<div align="center">21</div>

1   defendants, and each of them. These actions were done maliciously, wantonly, and in reckless
2   disregard for the health and safety of others, including Plaintiff herein.

3       64.    Plaintiff reasonably relied upon the misrepresentations of the defendants, and each
4   of them, and in reliance on same continued to work with and around asbestos and asbestos-
5   containing products. Plaintiff would have taken steps to protect his health and life had he known
6   the facts, which were known to the defendants, and each of them, about exposure to asbestos and
7   asbestos-containing products. Plaintiff would not have knowingly continued to work in an unsafe
8   environment. He had no knowledge of the foregoing facts and actions of the defendants, and each
9   of them, at the time when they were committed and cannot be charged with knowledge or inquiry
10  thereof.

11      65.    As a direct and legal result of the conduct of the defendants, and each of them,
12  Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis,
13  pleural plaques, and related conditions and disabilities as previously set forth and has incurred
14  damages in excess of $50,000.00 in addition to the special damages alleged.

15      WHEREFORE, Plaintiffs pray judgment as is hereinafter set forth.

16                          **SIXTH CAUSE OF ACTION**
17          (False Representation Under Restatement Torts Section 402-B)

18      66.    AS AND FOR A SEVENTH CAUSE OF ACTION, Plaintiffs complain of the
19  defendants, and each of them, and alleges:

20      67.    Plaintiffs incorporate by reference as though fully set forth herein, each and every
21  allegation of the General Allegations, and First, Second, Third, Fourth, Fifth, and Sixth Causes of
22  Actions herein.

23      68.    At the aforementioned time when defendants, and each of them, researched,
24  manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed,
25  advertised, marketed, warranted, inspected, repaired, offered for sale and sold the said asbestos and
26  asbestos-containing products as hereinabove set forth, the defendants, and each of them, expressly
27  and impliedly represented to members of the general public, including the purchasers and users of
28  said product, and including Plaintiff herein and his employers, that asbestos and asbestos-

                                    22

*Pelfrey v. Foster Wheeler, LLC, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                                  INJURY--ASBESTOS)

75.   Prior to said injuries, Plaintiff Johnie D. Pelfrey, Jr. was able to and did perform his duties as the spouse of Jan D. Pelfrey. Plaintiff is informed and believes and thereon alleges that subsequent to said injuries and as a proximate result thereof, Johnie D. Pelfrey, Jr. has been, and at some time in the future will be, incapacitated and unable to perform the necessary duties as spouse of Plaintiff Jan D. Pelfrey and the work and service usually performed in the care, maintenance, and management of the family home.

76.   As a proximate result of said injuries, Plaintiff Jan D. Pelfrey has been and will be deprived of consortium with Johnie D. Pelfrey, Jr., including the performance of his spouse's duties, and Plaintiff Jan D. Pelfrey has and will be required to perform the duties previously performed by her spouse Johnie D. Pelfrey, all to Plaintiffs' damage in a sum which cannot be ascertained at this time. Plaintiffs request the right to amend this complaint to allege the amount of said damages when they are ascertained.

WHEREFORE, Plaintiff prays judgment as follows:

**First, Second, and Fifth Causes of Action**

1.   General damages in an amount in excess of $50,000.00 in accordance with proof;

2.   Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3.   Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with proof;

4.   Special damages in accordance with the proof;

5.   Prejudgment interest and post-judgment interest in accordance with law;

6.   Costs of suit; and,

7.   Such and other and further relief as the Court deems just and proper.

///
///
///
///
///

24

*Pelfrey v. Foster Wheeler, LLC, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                            INJURY--ASBESTOS)

**Third, Fourth, and Sixth Causes of Action**

 1.     General damages in an amount in excess of $50,000.00 in accordance with proof;

 2.     Special damages in accordance with the proof;

 3.     Prejudgment interest and post-judgment interest in accordance with law;

 4.     Costs of suit; and,

 5.     Such and other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff Jan D. Pelfrey prays judgment as follows:

**Seventh Cause of Action**

 1.     General damages in an amount in excess of $50,000.00 in accordance with proof;

 2.     Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

 3.     Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with proof;

 4.     Special damages in accordance with the proof;

 5.     Prejudgment interest and post-judgment interest in accordance with law;

 6.     Costs of suit; and,

 7.     Such and other and further relief as the Court deems just and proper.


DATED:  January 15, 2009                    BRENT COON & ASSOCIATES

                                            By: _____
                                               KAREN J. CHEDISTER
                                               DEE DEE STEPHENS
                                               Attorneys for Plaintiffs


25

*Pelfrey v. Foster Wheeler, LLC, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                            INJURY--ASBESTOS)

**Exhibit E**



*7151317*

1   Richard A. Brody, Esq. (SBN 100379)
    Karen J. Chedister, Esq. (SBN 099473)
2   Dee Dee Stephens, Esq. (SBN 230199)
    BRENT COON & ASSOCIATES
3   44 Montgomery Street, Suite 800
    San Francisco, CA  94104
4   Telephone:  415.489.7420
    Facsimile:  415.489.7426
5
    Attorneys for Plaintiffs
6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF ALAMEDA

10                                          Case No. RG09 - 431218
11  JOHNIE D. PELFREY, JR. and JAN D.
    PELFREY,
12                                          COMPLAINT FOR DAMAGES
           Plaintiff,                       (PERSONAL INJURY--ASBESTOS)
13
                                            1.  Negligence
14  v.                                      2.  Strict Products Liability
                                            3.  Failure to Warn
15  ALLIED PACKING & SUPPLY, INC.; ALLIS-   4.  Breach of Implied Warranties
    CHALMERS CORPORATION PRODUCT            5.  Fraud and Conspiracy
16  LIABILITY TRUST, individually and as parent, 6.  Enterprise Liability
    alter ego, and successor in interest to ALLIS 7.  False Representation Under
17  CHALMERS; AMCHEM PRODUCTS, INC.;            Restatement Torts Section 402-B
    AMERICAN ASBESTOS COMPANY;            8.  Loss of Consortium
18  ANCHOR PACKING COMPANY; ASBESTOS      **Punitive Damages**
    CORPORATION, LTD.; ASBESTOS
19  CORPORATION, LTD; A. W. CHESTERTON
20  COMPANY; BRENNTAG WEST, individually
    and as parent, alter ego, successor by merger,
21  and/or successor in interest to SOCO-LYNCH
    CORP., individually and as parent, alter ego,
22  successor by merger and successor in interest to
23  WESTERN CHEMICAL; BUFFALO PUMPS,
    INC.; COLTEC INDUSTRIES, INC.; CRANE
24  CO.; CROWN CORK & SEAL (USA),
25  individually and as successor in interest to
    MUNDET CORK CORPORATION; COOPER
26  INDUSTRIES, INC.; ELLIOTT COMPANY;
    FMC CORPORATION, individually and as
27  successor in interest to PEERLESS PUMPS;
28  GARLOCK, INC.; GOULDS PUMPS;

                                            1

*Pelfrey v. Allied Packing & Supply, Inc., et al.*     COMPLAINT FOR DAMAGES (PERSONAL
                                                       INJURY--ASBESTOS)

HONEYWELL INTERNATIONAL, INC., as successor in interest to BENDIX; HOPEMAN BROTHERS, INC.; IMO INDUSTRIES, INC.; INGERSOLL-RAND; ITT CORPORATION, individually and as successor in interest to BELL & GOSSETT PUMPS; J. T. THORPE & SON, INC.; KENTILE FLOORS, INC.; LESLIE CONTROLS; M. SLAYEN & ASSOCIATES; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS; PARKER HANNIFIN CORPORATION, individually and as the parent, alter ego and successor in interest to SACOMO SIERRA and EIS BRAKE PARTS; PLANT INSULATION COMPANY; POWER ENGINEERING & EQUIPMENT COMPANY; PROKO INDUSTRIES, INC.; QUINTEC INDUSTRIES, INC.; RAPID AMERICAN CORP., as parent, alter ego and successor in interest to CAREY CANADA, INC.; RAPID AMERICAN CORP., individually and as parent, alter ego and successor in interest to PHILIP CAREY MANUFACTURING CORP, as successor in interest to PANACON CORP.; RAPID AMERICAN CORPORATION, as parent, alter ego and successor in interest to PHILIP CAREY CORP.; S.B DECKING, INC., individually and as successor in interest to SELBY, BATTERSBY & CO.; SEPCO CORPORATION; SOCO-LYNCH CORPORATION, as successor in interest to WESTERN CHEMICAL; STERLING FLUID SYSTEMS (U.S.A.), INC. , individually and as parent, alter ego and/or f/k/a PEERLESS PUMPS; SULZER PUMPS (US) INC., formerly known as SULZER BINGHAM PUMPS. INC.; SYD CARPENTER MARINE ENGINEERING; THOMAS DEE ENGINEERING COMPANY; TRIPLE A MACHINE SHOP, INC.; TUTHILL CORPORATION; UNIROYAL, INC.; and DOES 1-500, inclusive,

Defendants.

/ / /

/ / /

2

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

*Pelfrey v. Allied Packing & Supply, Inc., et al.*

1    Plaintiffs JOHNIE D. PELFREY, JR. and JAN D. PELFREY ("Plaintiffs") complain of all

2    defendants, and each of them, and allege:

## GENERAL ALLEGATIONS

4    1.    Plaintiffs bring this action on their own behalf. Plaintiffs know of no other parties

5    who should be named as a Plaintiff herein.

6    2.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

7    DOES 1 through 500, inclusive, and therefore sue these defendants by such fictitious names.

8    Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

9    Plaintiffs are informed and believe and thereon allege that each of said fictitiously named

10   defendants are, through their negligence, intentional torts, and/or conduct giving rise to strict

11   liability, responsible or liable in some manner for the occurrences herein alleged, and that the

12   injuries herein alleged were the direct and legal result of said negligence, intentional torts, and/or

13   conduct giving rise to strict liability.

14   3.    At all times mentioned in this complaint, each of the defendants was the agent and

15   employee of each of the remaining defendants, and by their actions as alleged in this complaint

16   each defendant was acting within the course and scope of this agency and employment, and each

17   defendant has ratified and approved the acts of the remaining defendants.  The Federal Courts lack

18   subject matter jurisdiction over this action as there is no federal question and incomplete diversity

19   of citizenship exists due to the presence of one or more California defendants.  Removal is

20   improper.  Every claim arising under the constitution, treaties, or laws of the United States is

21   expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or

22   of any officer of the U.S. or any agency or person acting under him occurring under color of such

23   office).  No claim of admiralty or maritime law is raised.  Plaintiff sues no foreign state or agency.

24   Venue is proper in Alameda County.

25   / / /

26   / / /

27   / / /

28   / / /

3

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                COMPLAINT FOR DAMAGES (PERSONAL
                                                                  INJURY--ASBESTOS)

4.    ALLIED PACKING & SUPPLY, INC.; ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST, individually and as parent, alter ego, and successor in interest to ALLIS CHALMERS; AMCHEM PRODUCTS, INC.; AMERICAN ASBESTOS COMPANY; ANCHOR PACKING COMPANY; ASBESTOS CORPORATION, LTD.; ASBESTOS CORPORATION, LTD; A. W. CHESTERTON COMPANY; BRENNTAG WEST, individually and as parent, alter ego, successor by merger, and/or successor in interest to SOCO-LYNCH CORP., individually and as parent, alter ego, successor by merger and successor in interest to WESTERN CHEMICAL; BUFFALO PUMPS, INC.; COLTEC INDUSTRIES, INC.; CRANE CO.; CROWN CORK & SEAL (USA), individually and as successor in interest to MUNDET CORK CORPORATION; COOPER INDUSTRIES, INC.; ELLIOTT COMPANY; FMC CORPORATION, individually and as successor in interest to PEERLESS PUMPS; GARLOCK, INC.; GOULDS PUMPS; HONEYWELL INTERNATIONAL, INC., as successor in interest to BENDIX; HOPEMAN BROTHERS, INC.; IMO INDUSTRIES, INC.; INGERSOLL-RAND; ITT CORPORATION, individually and as successor in interest to BELL & GOSSETT PUMPS; J. T. THORPE & SON, INC.; KENTILE FLOORS, INC.; LESLIE CONTROLS; M. SLAYEN & ASSOCIATES; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS; PARKER HANNIFIN CORPORATION, individually and as the parent, alter ego and successor in interest to SACOMO SIERRA and EIS BRAKE PARTS; PLANT INSULATION COMPANY; POWER ENGINEERING & EQUIPMENT COMPANY; PROKO INDUSTRIES, INC.; QUINTEC INDUSTRIES, INC.; RAPID AMERICAN CORP., as parent, alter ego and successor in interest to CAREY CANADA, INC.; RAPID AMERICAN CORP., individually and as parent, alter ego and successor in interest to PHILIP CAREY MANUFACTURING CORP, as successor in interest to PANACON CORP.; RAPID AMERICAN CORPORATION, as parent, alter ego and successor in interest to PHILIP CAREY CORP.; S.B DECKING, INC., individually and as successor in interest to SELBY, BATTERSBY & CO.; SEPCO CORPORATION; SOCO-LYNCH CORPORATION, as successor in interest to WESTERN CHEMICAL; STERLING FLUID SYSTEMS (U.S.A.), INC. , individually and as parent, alter ego and/or f/k/a PEERLESS PUMPS; SULZER PUMPS (US) INC., formerly known as SULZER BINGHAM PUMPS. INC.; SYD CARPENTER

4

1 | MARINE ENGINEERING; THOMAS DEE ENGINEERING COMPANY; TRIPLE A

2 | MACHINE SHOP, INC.; TUTHILL CORPORATION; UNIROYAL, INC.; and DOES 1-500,

3 | inclusive, are at all times herein mentioned, and were corporations or other business entities

4 | organized and existing under the laws of the state of California and/or qualified to do business in

5 | this state.

6 |      5.    At all times mentioned herein, defendants, and each of them, were engaged in the

7 | business of mining, milling, manufacturing, testing, developing, processing, importing, converting,

8 | compounding, assembling, fabricating, modifying, designing, specifying, approving, supplying,

9 | distributing, delivering, packaging, labeling, advertising, marketing, warranting, applying,

10 | installing, and inspecting asbestos, and products produced therefrom, for sale to and use by

11 | members of the general public, as well as for sale to and use by other parties to manufacture,

12 | assemble, supply, distribute, label, apply and install products made therefrom, or both.

13 |      6.    The defendants, and each of them, acting through their agents, servants and/or

14 | employees, cause, and have caused in the past, certain asbestos-containing products and asbestos-

15 | related insulation, refractory materials, fireproofing, gasket and packing materials, bulkhead

16 | insulation, decking materials, rope, cloth, tile flooring, boiler and turbine covers, as well as various

17 | automotive gaskets, brakes, clutch and other materials to be placed on the market and in the stream

18 | of interstate commerce with the result that said products and materials came into use by Plaintiff

19 | and those working in close proximity to Plaintiff at relevant times herein.

20 |      7.    Plaintiff Johnie D. Pelfrey was exposed to asbestos during the course of his life in

21 | the manner and during the time periods set forth below:

22 |      Plaintiff Johnie D. Pelfrey, Jr. ("Plaintiff") was employed at the following locations where

23 | Plaintiffs allege possible exposure to asbestos:

24 |      A.    United States Navy – (September 1963 – November 1976) – Plaintiff was exposed

25 | to asbestos when he went through basic training in San Diego, CA, training to work in the boiler

26 | rooms. He stood watch in the boiler rooms maintaining and repairing boilers and other equipment,

27 | and working in close proximity to others doing such work. He slept in the boiler room for six

28 | months on the USS Barry, on which he served for approximately one year. During his time in the

5

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                     COMPLAINT FOR DAMAGES (PERSONAL
                                                      INJURY--ASBESTOS)

1   Navy, Plaintiff served on several other vessels, including but not limited to the USS Stribling, USS

2   Midway, and USS America. He also worked shoulder to shoulder with other trades who installed,

3   cut, manipulated, disturbed, removed and swept the debris of asbestos and asbestos-containing

4   products including but not limited to insulation, pipe covering, block, cement, gaskets, cloth,

5   packing, wicking, and rope.

6        B.      Shipyard in Philadelphia, Pennsylvania – (approximately 1976 – 1977) – Plaintiff

7   was exposed to asbestos when he worked in the shops doing repair work to steam propulsion

8   equipment, including but not limited to motors, boilers, pumps, etc. for both United States Navy

9   vessels and privately owned tugboats.

10       C.      Shipyard in Norfolk, Virginia – (approximately 1978 – 1979) – Plaintiff was

11  exposed to asbestos when he worked in the shops doing repair work to steam propulsion

12  equipment, including but not limited to motors, boilers, pumps, etc. for both United States Navy

13  vessels and privately owned tugboats.

14       D.      Shipyard in Charleston, North Carolina – (approximately 1979 – 1980) – Plaintiff

15  was exposed to asbestos when he worked in the shops doing repair work to steam propulsion

16  equipment, including but not limited to motors, boilers, pumps, etc. for both United States Navy

17  vessels and privately owned tugboats.

18       E.      Cape Canaveral Hospital in Florida – (1980 – 1984) – Plaintiff was exposed to

19  asbestos when he worked in the HVAC shop and as the Facilities Director.

20       F.      Hospital near Covington/Clifton Forge, West Virginia – (1984 – 1986) – Plaintiff

21  was exposed to asbestos when he worked as the Director of Engineering.

22       G.      Baptist Hospital in Jacksonville, FL – (1987) – Plaintiff was exposed to asbestos

23  while he worked in the HVAC maintenance department.

24       H.      White House NAS in Jacksonville, FL – (1988) – Plaintiff was exposed to asbestos

25  while he worked in the HVAC maintenance department.

26       I.      Unknown HVAC company – (1989) – Plaintiff was exposed to asbestos while he

27  worked as an estimator.

28  / / /

6

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                                       INJURY–ASBESTOS)

1     J.     ServiceMaster – Director/Assistant Director of Engineering – various hospitals in

2   Des Moines, IA – (1990) – Plaintiff was exposed to asbestos while he worked in the plant

3   operations department.

4     K.     ServiceMaster - Mercy Hospital – Port Huron, MI – (1990 – 1991) – Plaintiff was

5   exposed to asbestos while he worked in the maintenance department.

6     L.     ServiceMaster – Charity Hospital – New Orleans, LA – (1991 – 1994) - Plaintiff

7   was exposed to asbestos while he worked in the maintenance department.

8     M.     Saturn of Tallahassee – (1998 – 1999) – Plaintiff was exposed to asbestos while he

9   worked as a new and used car salesman.

10     N.     Harley-Davidson of Tallahassee – (2000) – Plaintiff was exposed to asbestos while

11   he worked as a new and used motorcycle salesman.

12     O.     Proctor Honda – (2001 – 2008) – Plaintiff was exposed to asbestos when he worked

13   at this new and used car dealership when he would visit his friend in the service area or when he

14   would drop off a client's car to the service area. Plaintiff was a new and used car salesman who

15   was exposed to asbestos-containing products including but not limited to brakes, exhaust systems,

16   clutches, mufflers, gaskets, and engines.

17     Plaintiff's father worked in shipyards in Chester, Pennsylvania (possibly Sunco) and as an

18   assembly line work at the Ford Motor Company in Chester, Pennsylvania.  Plaintiff's mother also

19   worked in shipyards in the 1940s.

20     8.     During the course and scope of his employment, Plaintiff continually worked with

21   and in close proximity to others who were working with asbestos and asbestos-containing products.

22   He routinely and regularly worked in close proximity to asbestos and asbestos-containing products

23   and was continually exposed to asbestos fibers which were released from asbestos and asbestos-

24   containing products which were mined, milled, manufactured, processed, imported, converted,

25   compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and

26   sold by defendants, and each of them.

27   ///

28   ///

7

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                                                           INJURY--ASBESTOS)

9.     Plaintiff's exposure to asbestos was the direct and legal cause of his development of an asbestos-related disease known and designated as mesothelioma and other illnesses and disabilities whose relationship to asbestos is as yet unknown to Plaintiff herein.

## FIRST CAUSE OF ACTION

### (Negligence)

10.     Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations.

11.     At all times relevant herein, defendants and each of them, owed a duty of due care which required them to exercise ordinary care to protect against an unreasonable risk of harm.  This duty was owed to Plaintiffs.

12.     Plaintiff's development of mesothelioma and related conditions is the direct and legal result of the conduct of the defendants, and each of them, in that they negligently and carelessly researched, tested or failed to test, manufactured, designed, specified, developed, labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed, distributed and supplied asbestos and asbestos-containing products.  Defendants, and each of them, without any adequate warning to the consumer or user, produced, sold, and otherwise put into the stream of interstate commerce the foregoing materials which said defendants, and each of them knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to Plaintiff's body, lungs, respiratory system, skin and health.  Further, defendants, and each of them, knew, or through the exercise of ordinary care should have known, that exposure to asbestos is, and at all times relevant herein has been, associated with terminal and incurable diseases which have caused and continue to cause death.

/ / /
/ / /
/ / /
/ / /
/ / /

8

*Pelfrey v. Allied Packing & Supply, Inc., et al.*

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

13.     During the time period when Plaintiff was exposed to asbestos in the manner described above, he had no knowledge that said exposure placed him at risk for developing the diseases described herein and therefore had no opportunity, nor can he be charged with a duty or breach of duty, to protect himself against said harmful asbestos exposure.  Plaintiff had no knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them, were actionable at law when they were committed and cannot be charged with knowledge or inquiry thereof.

14.     The mesothelioma, asbestosis, pleural plaques, and related conditions that afflict Plaintiff developed at a microscopic and undetectable level over an extended period of time, without noticeable trauma, and was therefore unknown and unknowable to Plaintiff until his physicians diagnosed him with mesothelioma, asbestosis, pleural plaques and related conditions within the pertinent statute of limitations.  Prior to his diagnosis, Plaintiff did not know, nor through the exercise of reasonable diligence could he have known, that his disease and related conditions were caused by his exposure to the defendants' asbestos and asbestos-containing products.

15.     As a direct and legal result of the conduct of the defendants, and each of them, Plaintiff developed a disease known and designated as mesothelioma, asbestosis, pleural plaques and related conditions.

16.     As a further direct and legal result of the conduct of defendants, and each of them, it has been and continues to be necessary for Plaintiff to retain the services of physicians, hospitals, hospice, and other health care professionals to diagnose, treat, and provide palliative care for Plaintiff from now until he approaches the end of his life.  As a further direct and legal result of the conduct of the defendants, and each of them, it will be necessary for Plaintiff to retain the services of health care professionals in the future for an indeterminable period of time.  Plaintiff does not yet know the full extent of treatment that will be required nor the reasonable value of medical services rendered or to be rendered to Plaintiff herein and therefore requests leave to amend this complaint when that sum is determined.

/ / /

9

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                    COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

17.    As a direct and legal result of the conduct of the defendants, and each of them, and of Plaintiff's diagnosis of mesothelioma, asbestosis, pleural plaques and related conditions, Plaintiff has been unable to follow his normal or any gainful occupation for certain periods preceding and following his diagnosis, and Plaintiff will remain disabled for an indeterminable time. Plaintiff has incurred, and will incur, loss of income, wages, pensions, earning potential, profits and commissions, and other pecuniary losses. Plaintiff does not know the amount of said past and future losses and therefore requests leave to amend this complaint when that sum is determined.

18.    As a further direct and legal result of the negligence of defendants, and each of them, and Plaintiff's diagnosis of mesothelioma, asbestosis, pleural plaques and related conditions, Plaintiff has been damaged in his health, strength, and activity, and endured and continues to endure unrelenting physical and emotional pain and suffering, emotional distress, mental distress, mental anguish, fear, nervousness, grief, anxiety, worry, humiliation and indignity, the full nature and extent of which are presently unknown to Plaintiff and for which Plaintiff has incurred general damages in excess of $50,000.00.

19.    Since 1924, the defendants, and each of them, knew or should have known of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the Plaintiff and others in Plaintiff's position working in close proximity with such materials. The defendants, and each of them, knew or should have known of the dangerous propensities of the aforementioned materials and products since before that time.

20.    Although defendants knew or should have known of the aforementioned information, defendants, and each of them, negligently, carelessly, and recklessly failed to label any of the aforementioned asbestos-containing materials and products, including those with which and around which Plaintiff worked such as thermal insulation materials specified for or on/in boilers, regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964.

///

10

B.     At all times mentioned herein, defendants, and each of them, knew or should have known of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein.

23.     Defendants, and each of them, negligently, carelessly and recklessly failed to provide the above described medical and scientific data to Plaintiff, others in Plaintiff's position, Plaintiff's employer(s), and members of the general public concerning such knowledge of danger, when defendants were bound to disclose it.

24.     Defendants, and each of them, knew or should have known that said asbestos-containing materials were dangerous when breathed and caused pathological effects without noticeable trauma, and that such material was dangerous and a threat to the health of persons coming into contact therewith.  Defendants, and each of them, negligently, carelessly and recklessly did not warn Plaintiff, others in Plaintiff's position, Plaintiff's employer(s) and the general public of their information.

25.     Defendants, and each of them, knew or should have known that adequate protective masks and devices should be used by workers such as Plaintiff when applying and installing the asbestos-containing products of the defendants.  Defendants, and each of them, knew or should have known that not wearing an adequate protective mask and/or device would result in injury to the Plaintiff and others applying and installing such materials.  Defendants, and each of them, negligently, carelessly and recklessly do not inform workers such as Plaintiff, and others applying and installing such materials of the aforementioned information.

26.     Defendants, and each of them, knew or should have known that Plaintiff and anyone similarly situated in an industrial and construction setting would be exposed to defendants' asbestos-containing products, and that, upon inhalation of asbestos such persons would, in time, develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or

/ / /

/ / /

/ / /

*Pelfrey v. Allied Packing & Supply, Inc., et al.*

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1   all. Defendants, and each of them, negligently, carelessly and recklessly failed to provide

2   information to the public at large and buyers, users, and physicians employed by Plaintiff and

3   Plaintiff's employer for the purpose of conducting physical examinations of Plaintiff and others

4   working with or near asbestos that exposure to these materials would cause pathological effects

5   without noticeable trauma.

6         27.    The foregoing acts of the defendants, and each of them, and the negligent, careless

7   and reckless conduct of the defendants, and each of them, as described hereinabove, were done

8   recklessly, wantonly, willfully, oppressively, and in conscious disregard of the safety of Plaintiff

9   herein, in that

10         A.    the defendants, and each of them, prior to and at the time of sale, distribution

11   or supply of the aforementioned products to Plaintiff's employer or to others who in turn sold to

12   Plaintiff's employers, and to other persons relevant herein, knew or should have known that the

13   foregoing asbestos fibers released from said products during the foreseeable operations of applying

14   and removing same, were dangerous when inhaled;

15         B.    defendants, and each of them, knew or should have known of the hazards

16   and dangers of working with or around asbestos products produced or supplied by defendants, and

17   each of them. The defendants, and each of them, knew or should have known that said products

18   would be used by Plaintiff and others who had no knowledge of the dangerous and hazardous

19   nature thereof; and

20         C.    defendants, and each of them, either did not warn or insufficiently warned

21   regarding the dangerous nature of said products. Defendants, and each of them, did not place a

22   sufficient warning on the said product or package thereof regarding said dangerous nature.

23   Accordingly, Plaintiff is entitled to an award of punitive damages.

24         WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

25   / / /

26   / / /

27   / / /

28   / / /

<div align="center">13</div>

*Pelfrey v. Allied Packing & Supply, Inc., et al.*         COMPLAINT FOR DAMAGES (PERSONAL
                                                          INJURY--ASBESTOS)

## SECOND CAUSE OF ACTION

### (Strict Products Liability)

28.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except Paragraphs 11, 12 and 13.

29.    At all times mentioned herein, defendants, and each of them, during the ordinary course of business, mined, milled, manufactured, imported, supplied, distributed, delivered, packaged, labeled, advertised, sold, marketed, installed, applied and otherwise introduced into the stream of commerce asbestos and asbestos-containing products which were defective due to their design, manufacture, sufficiency of or lack of warning, and/or failure to meet ordinary use or consumer expectations of safety when used in an intended or reasonably foreseeable manner.

30.    The asbestos and asbestos-containing products were defective when the defendants, and each of them, marketed and introduced them into the stream of commerce.  Defendants, and each of them, knew that the aforementioned products would be used without inspection for defects by the user thereof.

31.    At all times herein mentioned, Plaintiff, Plaintiff's employer, and other persons relevant herein, purchased from defendants, and each of them, asbestos and asbestos-containing products.

32.    *Defective Design*: The products were defectively designed in that:

A.    The products failed to perform as safely as an ordinary consumer would expect in their intended or reasonably foreseeable use or manner of operation, or;

B.    The products had inherent risks of danger that outweighed their benefits; alternate and safer substitute products existed and the state-of-the-art required their use given the seriousness of the potential danger, likelihood of its occurrence, feasibility, cost, and adverse consequences to the product and to the consumer of a safer alternative design.

C.    *Failure to Warn*: Defendants knew or reasonably should have known of the dangerous propensities of their products but nonetheless distributed and marketed their products with inadequate warning of its dangers.

14

*Pelfrey v. Allied Packing & Supply, Inc., et al.*

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1        D.     Each of defendants' products reached Plaintiff without substantial change in

2  its condition.

3        E.     The aforementioned products were used by Plaintiff and those in close

4  proximity to Plaintiff in a foreseeable manner and in the manner for which they were intended.

5  Defendants' products were used in a manner reasonably foreseeable by defendants, which

6  defendants intended or knew they would be used, or for which they marketed them or knew they

7  were marketed to be used.

8        F.     At all times mentioned herein, Plaintiff was unaware of the dangerous nature

9  of the aforementioned products.

10     33.     The defective design of defendants' products and failure to warn were the proximate

11  causes of Plaintiff's injuries.

12     34.     As a direct and legal result of the conduct of the defendants, and each of them,

13  Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis,

14  pleural plaques, and related conditions and disabilities as previously set forth and has incurred

15  damages in excess of $50,000.00 in addition to the special damages alleged herein.

16     35.     The aforementioned products were used by Plaintiff and those in close proximity to

17  Plaintiff in a foreseeable manner and in the manner for which they were intended.

18     36.   A.     Defendants, and each of them, knew that defendants' asbestos-containing

19  products would be used by Plaintiff and anyone similarly situated in an industrial and construction

20  setting without inspection for defects.

21        B.     Defendants, and each of them, knew that such persons would be exposed to

22  defendants' asbestos-containing products.

23        C.     Defendants, and each of them, knew that, upon inhalation of asbestos from

24  defendant's asbestos-containing products, such persons would, in time, develop irreversible

25  conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all.

26        D.     At the time defendants, and each of them, placed such asbestos-containing

27  products in to the stream of commerce, defendants, and each of them, knew or should have known

28  of the risks and hazards associated with the use and/or exposure of its products.

*Pelfrey v. Allied Packing & Supply, Inc., et al.*         COMPLAINT FOR DAMAGES (PERSONAL
INJURY--ASBESTOS)

E.     At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them, failed to warn or provided inadequate warnings to persons who used or would be exposed to its defective asbestos-containing products, including Plaintiff, of the dangers and hazards associated with its products.

F.     At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them failed to provide instructions or provided inadequate instructions to persons who used its defective asbestos-containing products, or who would be exposed to said products, including Plaintiff, of the dangers and hazards associated with its products.

G.     Defendants, and each of them, prior to and at the time of placing the aforementioned products in to the stream of commerce, including but not limited to supplying said products to Plaintiff's employer or to others who in turn sold to Plaintiff's employers, and to other persons relevant herein, knew that the asbestos which Plaintiff and others around him were exposed to was dangerous.  The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said products, and failed to place a sufficient warning on the said product or package thereof regarding said dangerous nature, despite knowing that said products would be used by Plaintiff and others around him who had no knowledge of the dangerous and hazardous nature thereof.

37.     The conduct of the defendants, and each of them, was motivated by their financial interests.  In this financial pursuit, defendants consciously disregarded the safety of users and persons exposed to their products and were consciously willing to permit their products and premises to injure workers and others, including Plaintiff, in order to maximize profits.  They consciously disregarded the well-publicized risks of asbestos exposure because to have kept consumers and end users like Plaintiff safe would have required said defendants to make less money or limit distribution of their products.  The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said products, nor placed a sufficient warning on the said product or package thereof regarding said dangerous nature, despite

16

*Pelfrey v. Allied Packing & Supply, Inc., et al.*

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1    knowing that said products would be used by Plaintiff and others around him who had no

2    knowledge of the dangerous and hazardous nature thereof.  Defendants' conduct as described

3    herein was and is willful, malicious, outrageous, and in conscious disregard and indifferent to the

4    safety and health of workers and others exposed to asbestos, including Plaintiff, and therefore

5    Plaintiffs are entitled to an award of punitive damages.

6         WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION

(Failure to Warn)

9         38.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

10   fully set forth herein, each and every allegation contained in the General Allegations, the First

11   Cause of Action herein, except Paragraphs 11, 12 and 13, and each and every allegation contained

12   in the Second Cause of Action, except those allegations pertaining to design and manufacturing

13   defect.

14        39.    At all relevant times, the asbestos and asbestos-containing products which were

15   mined, milled, manufactured, tested, developed, processed, imported, converted, compounded

16   assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed,

17   delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by

18   defendants, and each of them, were defective as a result of defendants' failure to warn or give

19   adequate warning that the particular risk of developing an asbestos-related disease and risk of death

20   from an asbestos-related disease resulting from exposure to asbestos rendered the product unsafe

21   for its intended or reasonably foreseeable use.

22        40.    At all relevant times, the defendants, and each of them, had specific knowledge of

23   these risks or could have known of these risks by the application of scientific knowledge available

24   at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying,

25   approving, inspecting, applying and installing the asbestos and asbestos-containing products.

26   / / /

27   / / /

28   / / /

17

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                COMPLAINT FOR DAMAGES (PERSONAL
                                                                  INJURY--ASBESTOS)

41. As a direct and legal result of the conduct of the defendants, and each of them, Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Breach of Warranties)

42. AS AND FOR A FOURTH CAUSE OF ACTION, Plaintiffs complain of defendants, and each of them, and alleges:

43. Plaintiffs, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations, and the First Cause of Action herein, except Paragraphs 11, 12 and 13.

44. The defendants, and each of them, sold, supplied, delivered or otherwise distributed to Plaintiff, or to another purchaser or user who subsequently sold, supplied, delivered or otherwise distributed to Plaintiff, or to others working in close proximity to Plaintiff, the above-described asbestos and asbestos-containing products to which Plaintiff was exposed.

45. The defendants, and each of them, knew the intended purpose of the asbestos and asbestos-containing products prior to marketing said products and knew or should have known that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing these products.

46. The defendants, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose.

47. Defendants, and each of them, impliedly warranted that their products were of merchantable quality and safe, fit and proper for the uses which defendants knew or intended were to be made of them at the time of selling them.

///

18

*Pelfrey v. Allied Packing & Supply, Inc., et al.*

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

48.     Plaintiff reasonably relied on the skill, knowledge and judgment of defendants, and each of them, in Plaintiff's use of the products as a basis of the bargain under which such products were bought and used.

49.     The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by defendants, and each of them, in that said products had dangerous propensities when put to the use for which each of these defendants knew or intended they were marketed or sold and would cause severe injury to users or bystanders, such as Plaintiff.

50.     The defendants, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, advising Plaintiff and others working in close proximity to Plaintiff that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing said products.

51.     As a direct and legal result of the conduct of the defendants, and each of them, Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, Plaintiffs pray judgment as is hereinafter set forth.

### FIFTH CAUSE OF ACTION

#### (Fraud and Conspiracy)

52.     AS AND FOR A FIFTH CAUSE OF ACTION, Plaintiffs complain of the defendants, and each of them, and alleges:

53.     Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except allegations pertaining to negligence.

54.     Pursuant to Section 1708 of the Civil Code of California, the defendants, and each of them, owed a duty to Plaintiff at all times relevant herein to abstain from injuring the Plaintiff or infringing upon any of his rights.

///

19

*Pelfrey v. Allied Packing & Supply, Inc., et al.*

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

55.    The defendants, and each of them, breached the duty they owed to Plaintiff pursuant to Section 1708 of the Civil Code of California by willfully deceiving Plaintiff with the intent to induce Plaintiff to alter Plaintiff's position to Plaintiff's injury or risk.  The defendants, and each of them, deceived the Plaintiff and committed actionable fraud pursuant to Section 1709 and Section 1710 of the Civil Code of California.

56.    The defendants, and each of them, as more fully set forth below, suggested as fact that which was not true and that which defendants, and each of them, did not believe was true.

57.    The defendants, and each of them, as more fully set forth below, asserted as fact that which was not true and that which defendants, and each of them, had no reasonable grounds for believing was true.

58.    The defendants, and each of them, as more fully set forth below, suppressed facts which they were obligated to disclose and gave information of other facts which were likely to mislead for want of communication of the undisclosed facts.

59.    The defendants, and each of them, made promises without any intention of keeping those promises.

60.    Since 1924, the defendants, and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the Plaintiff and others in Plaintiff's position working in close proximity with such materials.  The defendants, and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time, and with intent to deceive Plaintiff and others in his position, and with intent that he and such others should be and remain ignorant of such facts, and with intent to induce Plaintiff and such others to alter his and their positions to him and their injury and/or risk and in order to gain advantages did do the following acts:

A.    Defendants, and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the

20

1  defendants herein, despite the fact that the knowledge of such hazards existed and was known to

2  defendants, and each of them, since 1924.  By not labeling such materials as to their said hazards,

3  defendants, and each of them, caused to be suggested as a fact to Plaintiff and Plaintiff's employer

4  that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true

5  and defendants did not believe it to be true.

6         B.     Defendants, and each of them, suppressed information relating to the danger

7  of the use of the aforementioned materials by requesting the suppression of information to the

8  Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to

9  workers and by not allowing such information to be disseminated in a manner which would give

10  general notice to the public and knowledge of the hazardous nature thereof, when defendants were

11  bound to disclose such information.

12         C.     Defendants, and each of them, sold the aforementioned products and

13  materials to Plaintiff's employer and others without advising such employers and others of dangers

14  of the use of such materials to persons working in close proximity thereto, when defendants knew

15  of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers.

16  Thereby, defendants caused to be positively asserted to Plaintiff's employer that which was not true

17  and which defendants had no reasonable ground for believing to be true and in a manner not

18  warranted by the information possessed by said defendants, and each of them, to wit, that it was

19  safe for Plaintiff to work in close proximity to such materials.

20         D.     Defendants, and each of them, suppressed and continue to suppress from

21  everyone, including Plaintiff and Plaintiff's employer, medical and scientific data and knowledge

22  of the results of studies including, but not limited to, the information and knowledge of the contents

23  of the Lanza report.  Although bound to disclose it, defendants, and each of them, influenced

24  A. J. Lanza to change his report, the altered version of which was published in Public Health

25  Volume at page I in 1935, thereby causing Plaintiff to be and remain ignorant thereof.  Defendants,

26  and each of them, caused *Asbestos Magazine*, a widely disseminated trade journal, to omit mention

27  of danger, thereby lessening the probability of notice of danger to the users thereof.

28  ///

<div align="center">21</div>

*Pelfrey v. Allied Packing & Supply, Inc., et al.*

COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

1    E.    Defendants, and each of them, belonged to, participated in, and financially
2   supported the Asbestos Textile Institute and other industry organizations which, and on behalf of
3   defendants, and each of them, actively promoted the suppression of information of danger to users
4   of the aforementioned products and materials, thereby misleading Plaintiff and Plaintiff's employer
5   by the suggestions and deceptions set forth above in this cause of action.  The Dust Control
6   Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile
7   Institute, was specifically enjoined to study the subject of dust control.  Discussions in this
8   committee were held many times regarding the dangers inherent in asbestos and the dangers which
9   arise from the lack of control of dust and the suppression of such information from 1946 to a date
10  unknown to Plaintiff at this time.
11    F.    Commencing in 1930 with the study of mine and mill workers at Asbestos
12  and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos- Manhattan plants
13  in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific
14  information of the connection between inhalation of asbestos fibers and mesothelioma, asbestosis,
15  pleural plaques, and related conditions, which information was disseminated through the Asbestos
16  Textile Institute and other industry organizations to all other defendants, and each of them, herein.
17  Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific
18  information of the connection between inhalation of asbestos fibers and cancer, which information
19  was disseminated through the Asbestos Textile Institute and other industry organizations to all
20  other defendants herein.  Thereby, defendants suggested as a fact that which is not true and
21  disseminated other facts likely to mislead Plaintiff and Plaintiff's employer and which did mislead
22  them by withholding afore-described medical and scientific data and by not giving Plaintiff or
23  Plaintiff's employer the true facts concerning such knowledge of danger when defendants were
24  bound to disclose it.
25    G.    Defendants, and each of them, failed to warn Plaintiff and Plaintiff's
26  employer that said materials were dangerous when breathed and caused pathological effects
27  without noticeable trauma, despite the fact that defendants possessed knowledge and were under a
28  ///

22

*Pelfrey v. Allied Packing & Supply, Inc., et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                                                              INJURY--ASBESTOS)

duty to disclose that such material was dangerous and a threat to the health of persons coming into contact therewith.

H. Defendants, and each of them, failed to provide Plaintiff with information concerning adequate protective masks and devices to be used when applying and installing the products of the defendants, and each of them, despite the knowledge of defendants and a duty to disclose that such protective measures were necessary and would result in injury to the Plaintiff and others applying and installing such materials if not so advised.

I. Defendants, and each of them, concealed from Plaintiff the true nature of the industrial and construction exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos, would in time develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and that the materials to which he was exposed would cause pathological effects without noticeable trauma despite the fact that defendants were under a duty to and bound to disclose it; and

J. Defendants, and each of them, failed to provide information to the public at large and buyers, users, and physicians employed by Plaintiff and Plaintiff's employer for the purpose of conducting physical examinations of Plaintiff and others working with or near asbestos of the true nature of the hazards of asbestos and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employer so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that defendants, and each of them, were under a duty to so inform and said failure was misleading.

61. Defendants, and each of them, having the aforementioned knowledge of facts and knowing that the Plaintiff did not possess such knowledge, acted falsely and fraudulently and with full intent to cause Plaintiff to remain unaware of those facts and to induce Plaintiff to work with and around unsafe products in a dangerous environment, all in violation of Section 1710 of the Civil Code of the State of California.

///

///

62.     At all times mentioned, the defendants, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon Plaintiff the unlawful acts complained of in Paragraphs 19 through 27 of the First Cause of Action and Paragraphs 54 through 61 of the Fifth Cause of Action herein.

63.     The defendants, and each of them, and at least one of them, did the acts herein alleged in Paragraph 60 through 62 of this Fifth Cause of Action in furtherance of the conspiracy and agreement as herein alleged and also acted in furtherance of a conspiracy and agreement between and among the defendants, and each of them, to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time but known full well to defendants, and each of them.  These actions were done maliciously, wantonly, and in reckless disregard for the health and safety of others, including Plaintiff herein.

64.     Plaintiff reasonably relied upon the misrepresentations of the defendants, and each of them, and in reliance on same continued to work with and around asbestos and asbestos-containing products.  Plaintiff would have taken steps to protect his health and life had he known the facts, which were known to the defendants, and each of them, about exposure to asbestos and asbestos-containing products.  Plaintiff would not have knowingly continued to work in an unsafe environment.  He had no knowledge of the foregoing facts and actions of the defendants, and each of them, at the time when they were committed and cannot be charged with knowledge or inquiry thereof.

65.     As a direct and legal result of the conduct of the defendants, and each of them, Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00 in addition to the special damages alleged.

WHEREFORE, Plaintiffs pray judgment as is hereinafter set forth.

### SIXTH CAUSE OF ACTION

(Enterprise Liability)

66.     AS AND FOR A SIXTH CAUSE OF ACTION, Plaintiffs complain of the defendants, and each of them, and allege:

24

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

67.     Plaintiffs incorporate by reference as though fully set forth herein each and every allegation of the General Allegations, and First, Second, Third, and Fifth Causes of Actions herein.

68.     The defendants, and each of them, mined, milled, manufactured, tested, developed, processed, imported, converted, compounded, assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, inspected and otherwise marketed asbestos and asbestos-containing products. These products were defective and carried with them an inadequate warning, or no warning at all, regarding the health hazards associated with asbestos exposure. The defendants, and each of them, knew or should have known of the defective and hazardous nature of the asbestos and asbestos-containing products at the time that said products were placed in the stream of commerce.

69.     Plaintiff, at all times pertinent herein, was unaware and cannot be charged with knowledge of the health hazards associated with exposure to asbestos fibers released from the afore-alleged asbestos and asbestos-containing products of the defendants, and each of them. On the other hand, the defendants, and each of them, introduced these products into the market where Plaintiff worked and were in a position to prevent harmful exposures to all persons therein, including the Plaintiff.

70.     Plaintiff, at all times pertinent herein, was exposed to asbestos fibers released from asbestos and asbestos-containing products which are and were fungible in color, size, shape, texture, and function. Said products were similar in appearance and composition and indistinct one from the others, and through no fault of the Plaintiff these products cannot be traced to a particular defendant or other entity.

71.     In this action, Plaintiff has joined as defendants a substantial share of the manufacturers and suppliers of the asbestos and asbestos-containing products which comprised the relevant market within which Plaintiff was exposed to asbestos fibers. At trial, Plaintiff will prove the respective market share of the defendants, and each of them, during all times relevant herein. The liability of the defendants, and each of them, is proportional to their respective market share percentage, consistent with the rules set forth in *Sindell v . Abbott Laboratories.*

25

72.     As a direct and legal result of the conduct of the defendants, and each them, Plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

(False Representation Under Restatement Torts Section 402-B)

73.     AS AND FOR A SEVENTH CAUSE OF ACTION, Plaintiffs complain of the defendants, and each of them, and alleges:

74.     Plaintiffs incorporate by reference as though fully set forth herein, each and every allegation of the General Allegations, and First, Second, Third, Fourth, Fifth, and Sixth Causes of Actions herein.

75.     At the aforementioned time when defendants, and each of them, researched, manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale and sold the said asbestos and asbestos-containing products as hereinabove set forth, the defendants, and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and including Plaintiff herein and his employers, that asbestos and asbestos-containing products were of merchantable quality and safe for the use for which they were intended.

76.     The purchasers and users of said asbestos and asbestos-containing products, including Plaintiff and his employers, relied upon said representations of defendants, and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

77.     Said representations by defendants, and each of them, were false and untrue in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by defendants, and each of them, in that asbestos and asbestos

/ / /

/ / /

26

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                                      INJURY--ASBESTOS)

1  containing products have very dangerous properties and defects whereby said products cause lung

2  cancer, mesothelioma, asbestosis, pleural plaques, and other diseases and have other defects that

3  cause injury and damage to the users of said products, including the Plaintiff herein, thereby

4  threatening the health and life of Plaintiff.

5       78.    As a direct and legal result of the conduct of the defendants, and each them Plaintiff

6  developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural

7  plaques, and related conditions and disabilities as previously set forth, and has incurred damages in

8  excess of $50,000.00 in addition to the special damages alleged herein.

9       WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

### EIGHTH CAUSE OF ACTION

(Loss of Consortium)

10

11

12       79.    AS AND FOR AN EIGHTH CAUSE of action, Plaintiff Jan D. Pelfrey complains

13  of defendants, and each of them, as follows:

14       80.    Plaintiffs, by this reference, hereby incorporate and make a part thereof, as though

15  fully set forth herein, each and every allegation contained in the General Allegations and each of

16  the foregoing Causes of Action herein.

17       81.    At the time that Plaintiff sustained injury as more fully alleged in the First through

18  Seventh Causes of Action, and at all times thereafter, Plaintiff Jan D. Pelfrey was the spouse of

19  Plaintiff Johnie D. Pelfrey.

20       82.    Prior to said injuries, Plaintiff Johnie D. Pelfrey, Jr. was able to and did perform his

21  duties as the spouse of Jan D. Pelfrey.  Plaintiff is informed and believes and thereon alleges that

22  subsequent to said injuries and as a proximate result thereof, Johnie D. Pelfrey, Jr. has been, and at

23  some time in the future will be, incapacitated and unable to perform the necessary duties as spouse

24  of Plaintiff Jan D. Pelfrey and the work and service usually performed in the care, maintenance,

25  and management of the family home.

26  ///

27  ///

28  ///

27

83.     As a proximate result of said injuries, Plaintiff Jan D. Pelfrey has been and will be deprived of consortium with Johnie D. Pelfrey, Jr., including the performance of his spouse's duties, and Plaintiff Jan D. Pelfrey has and will be required to perform the duties previously performed by her spouse Johnie D. Pelfrey, all to Plaintiffs' damage in a sum which cannot be ascertained at this time.  Plaintiffs request the right to amend this complaint to allege the amount of said damages when they are ascertained.

WHEREFORE, Plaintiff prays judgment as follows:

**First, Second, and Fifth Causes of Action**

1.     General damages in an amount in excess of $50,000.00 in accordance with proof;

2.     Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3.     Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with proof;

4.     Special damages in accordance with the proof;

5.     Prejudgment interest and post-judgment interest in accordance with law;

6.     Costs of suit; and,

7.     Such and other and further relief as the Court deems just and proper.

**Third, Fourth, Sixth and Seventh Causes of Action**

1.     General damages in an amount in excess of $50,000.00 in accordance with proof;

2.     Special damages in accordance with the proof;

3.     Prejudgment interest and post-judgment interest in accordance with law;

4.     Costs of suit; and,

5.     Such and other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff Jan D. Pelfrey prays judgment as follows:

/ / /

/ / /

/ / /

/ / /

*Pelfrey v. Allied Packing & Supply, Inc., et al.*                    COMPLAINT FOR DAMAGES (PERSONAL INJURY--ASBESTOS)

**Eighth Cause of Action**

1.     General damages in an amount in excess of $50,000.00 in accordance with proof;

2.     Damàges for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3.     Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with proof;

4.     Special damages in accordance with the proof;

5.     Prejudgment interest and post-judgment interest in accordance with law;

6.     Costs of suit; and,

7.     Such and other and further relief as the Court deems just and proper.

DATED:  January 15, 2009         BRENT COON & ASSOCIATES

By:      _____

KAREN J. CHEDISTER
DEE DEE STEPHENS
Attorneys for Plaintiff

29

**Exhibit F**

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          CENTRAL DISTRICT OF CALIFORNIA

7

8    ROBERT REASER, et al.          )      CV 08-1296-SVW (SSx)
                                     )
9                   Plaintiffs,      )      ORDER DENYING PLAINTIFFS'
                                     )      MOTION FOR REMAND [18]
10              v.                   )
                                     )
11   ALLIS CHAMBERS CORPORATION, et  )
     al.                             )
12                  Defendants.      )
     ───────────────────────────     )
13                                   )
                                     )
14                                   )

15   **I.    Statement of Facts**

16        Plaintiffs Robert and Christine Reaser brought this action

17   against General Electric Company ("GE"), Viad Corporation ("Viad")[1],

18   and other Defendants in Los Angeles Superior Court on January 25,

19   2008.  (Motion for Remand, at 1 ("Motion").)  Plaintiffs allege that

20   Robert Reaser ("Reaser") developed malignant mesothelioma as a result

21   of exposure from Defendants' asbestos or asbestos-containing products

22   aboard United States naval ships.  (Complaint, at ¶ 3 ("Complaint").)

23   Reaser served in the U.S. Navy from 1951 to 1964, during which he was

24   allegedly exposed to asbestos while working on the *U.S.S Shea*, *U.S.S.*

25   *Boston*, *U.S.S. Providence*, and the *U.S.S. Wilkinson*.  (Defendant Viad

26   Notice of Removal, at 3.)  Plaintiffs allege that Defendants violated

27   their state law duties to warn Reaser about the dangers of asbestos

28

---

[1]   Defendants Viad and GE were the only defendants who removed the
case and filed oppositions to the Motion for Remand.

1    exposure from equipment found on naval vessels.  (Motion, at 1.)

2    Viad, later joined by GE, removed the case to federal court based on

3    the federal officer removal statute, which provides federal

4    jurisdiction over claims against "any officer (or any person acting

5    under that officer) of the United States or of any agency      thereof

6    . . . for any act under color of such office . . ."  28 U.S.C.  §

7    1442(a)(1).  This statute does not require all Defendants to consent

8    to removal.  See Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253

9    (9th Cir. 2006) ("Whereas all defendants must consent to removal

10   under section 1441 . . . . a federal office or agency defendant can

11   unilaterally remove a case under section 1442.")

12       Plaintiffs, clearly anticipating that one or more Defendants

13   would attempt to remove the case to federal court, included a

14   disclaimer in the Complaint which attempts to waive any cause of

15   action arising from exposure to asbestos dust that occurred in a

16   federal enclave, expressly excluding from the disclaimer U.S. Navy

17   vessels.  Plaintiffs also disclaim any cause of action resulting from

18   exposure to asbestos dust caused by any acts or omissions of

19   Defendants committed at the direction of a U.S. officer.  (Complaint,

20   at ¶ 4.)  On April 14, 2008, Plaintiffs filed a motion for remand to

21   state court on the ground that this Court lacks subject matter

22   jurisdiction.  (Motion, at 2.)

23   ///

24   ///

25

26   **II.  Analysis**

27

28

Three main issues must be addressed in examining Plaintiffs'
Motion.  The first is whether the standard of review includes a
requirement that Defendants meet a "special burden" in showing that
federal officer jurisdiction is proper.  The second is whether
Defendants meet the elements of federal officer jurisdiction.  The
third is whether Plaintiffs' disclaimer should be determinative as to
the question of remand.

**A.   Standard of Review**

A party seeking removal under § 1442(a)(1) must demonstrate that
(a) it is a person within the meaning of the statute; (b) it can
assert a "colorable federal defense"; and (c) there is a causal nexus
between its actions, taken pursuant to a federal officer's
directions, and the plaintiff's claims.  <u>Durham</u>, 445 F.3d at 1251.
Defendants Viad and GE assert that they must prove only by a
preponderance of the evidence that removal to federal court is
proper, as typically required. (<u>See</u> Defendant Viad Opposition Motion,
at 3.)

Plaintiffs argue, however, that Defendants have a "special
burden" in showing that federal officer jurisdiction is proper.
(Motion, at 3.)  Plaintiffs assert that the special burden requires
Defendants to present concrete, verifiable evidence regarding
satisfaction of federal officer jurisdiction, particularly with
respect to satisfying the existence of a colorable federal defense.
This burden would create a higher standard for Defendants at this
stage of the litigation process.  Citing to <u>Williams v. General</u>
<u>Electric Co.</u>, Plaintiffs allege that because § 1442(a)(1) is

1  "predicated on the protection of federal activity and an

2  anachronistic mistrust of state courts' ability to protect and

3  enforce federal interests and immunities from suit, private actors

4  seeking to benefit from its provisions bear a special burden in

5  establishing the official nature of their activities."  (Motion, at

6  3) (quoting Williams v. General Electric Co., 418 F. Supp. 2d 610,

7  614 (M.D. PA. 2005)).  Furthermore, Plaintiffs rely on Hilbert v.

8  McDonnell Douglas Corp. in arguing for a heightened burden in

9  satisfying the three prongs of § 1442(a)(1).  529 F. Supp. 2d 187 (D.

10  Mass. 2008).  In Hilbert, the defendants claimed that the military,

11  through its contracts, exercised its discretion in such a way as to

12  prevent them from warning the plaintiff about the dangers of

13  asbestos, similar to the present assertions by Viad and GE.  Id. at

14  199.  The court required that the defendants submit actual citations

15  to regulations or contracts evidencing the government's alleged

16  control over asbestos warnings.  Because the defendants did not

17  produce such evidence, the court held that this "sort of speculation

18  is not remotely adequate" to satisfy federal officer jurisdiction and

19  remanded the case.  Id. at 202-203.

20      The Ninth Circuit, however, has rejected the notion that

21  defendants must meet a special burden in order to satisfy the three

22  prongs of federal officer jurisdiction.  In Durham, the Ninth Circuit

23  noted that, while removal under § 1441 is to be strictly construed,

24  the federal officer removal statute is to receive a generous

25  interpretation.  According to the Ninth Circuit, "the Supreme Court

26  has held that the right of removal is absolute for conduct performed

27  under color of federal office, and has insisted that the policy

28

4

1  favoring removal should not be frustrated by a narrow, grudging

2  interpretation of § 1442(a)(1)." Durham, 445 F.3d at 1252 (citing

3  Arizona v. Manypenny, 451 U.S. 232, 242 (1981)).  Therefore, when

4  federal officers and their agents are seeking a federal forum, the

5  Court is to interpret § 1442 broadly in favor of removal. Id.  In

6  following the Supreme Court's broad interpretation of § 1442 and

7  rejecting the need for a special burden, the Ninth Circuit has

8  maintained that Defendants must simply make an adequate showing that

9  the requirements of federal office jurisdiction are met to support

10  removal to federal court. Id. at 1252-1253.  Therefore, to qualify

11  for removal, Defendants must be a person under the statute, raise a

12  colorable federal defense, and present a basis for a causal

13  connection between the charged conduct and the asserted government

14  authority. Willingham v. Morgan, 395 U.S. 402, 409 (1969) (citing

15  Maryland v. Soper (No. 1), 270 U.S. 9, 33 (1926)).  Defendants need

16  not prove their federal defense or a causal nexus to justify removal.

17

18      **B.    Three Prongs of Removal under § 1442(a)(1)**

19          1.    Person

20      As corporations, Defendants Viad and GE meet the preliminary

21  requirement that the party seeking removal is a person within the

22  meaning of § 1442(a)(1). See Fung v. Abex Corp., 816 F. Supp. 569,

23  572 (N.D. Cal. 1992).  There is no dispute between the parties as to

24  this prong.

25

26          2.    Colorable Federal Defense

27

28

1    Defendants seek removal under the government or military

2    contractor defense, which protects a government contractor from

3    liability for acts done by him while complying with government

4    specifications during execution of performance under a contract with

5    the United States.  McKay v. Rockwell Intern. Corp., 704 F.2d 444,

6    448 (9th Cir. 1983).  The Supreme Court recognized the contractor

7    defense in Boyle v. United Technologies Corp., where it held that

8    liability for design defects in military equipment could not be

9    imposed on a private government contractor under state law where: (1)

10   the United States approved reasonably precise specifications; (2) the

11   equipment conformed to those specifications; and (3) the supplier

12   warned the United States about the dangers in the use of the

13   equipment that were known to the supplier, but not to the United

14   States.  Boyle v. United Technologies Corp., 487 U.S. 500, 512

15   (1988).  This defense has been extended to failure to warn cases;

16   however, it is inapplicable in the absence of evidence that the

17   defendants' decision to not provide a warning was "in compliance with

18   reasonably precise specifications imposed on it by the United

19   States."  Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th

20   Cir. 1996).  Where there is no conflict between requirements imposed

21   under a federal contract and a state law duty to warn, the Court

22   should defer to state law.  Id.

23   ///

24   ///

25

26        a.   **Reasonably Precise Specifications**

27

28

6

1        To illustrate that reasonably precise specifications set forth

2   by the Navy exist and that these specifications conflict with the

3   state law duty to warn, Defendants rely on the declarations of Dr.

4   Cushing and Admiral Lehman.   Dr. Cushing, President of C.R. Cushing &

5   co., Inc., Naval Architects, Marine Engineers and Transportation

6   Consultants, notes that the U.S. government was intimately involved

7   in the manufacture of any contractors' equipment used in U.S.

8   vessels, "as the equipment manufactured for those vessels was

9   designed and built to meet precise and exacting specifications of the

10  U.S. Navy." (Cushing Dec., at 4.)  Furthermore, Dr. Cushing asserts

11  that "[w]hether certain equipment used aboard U.S. Naval vessels

12  should have warnings, and the content and format of any such warning,

13  was determined solely by the U.S. Navy." (Id. at 5.)  Admiral

14  Lehman, a retired Rear Admiral of the U.S. Navy, states that

15  "equipment suppliers were prohibited from providing any warnings on

16  or to accompany equipment supplied to the Navy without the consent

17  and approval of the Navy." (Lehman Dec., at 5.)  Moreover, Admiral

18  Lehman claims that certain types of warnings were simply not approved

19  by the Navy, such as any warnings associated with hazards from

20  asbestos.  (Id.)  Plaintiffs argue that these declarations do not

21  refer to actual contracts or any personal knowledge of contractual

22  obligations owed by Defendants, but rather are mere speculations

23  about what the Navy would have permitted.  (Plaintiffs' Reply, at 6.)

24  Essentially, Plaintiffs assert that Defendants have not adequately

25  shown that the Navy set forth reasonably precise specifications, such

26  that Defendants fail to raise a colorable federal defense.[2]

27
_____
[2]  Plaintiffs further argue that Admiral Lehman and Dr. Cushing lack

28  personal knowledge and that their declarations lack foundation and

7

1    Plaintiffs' argument relates to their assertion that Defendants

2    must prove their case in order to satisfy the three prongs for

3    removal under § 1442.  (Motion, at 3.)  Because the Supreme Court and

4    the Ninth Circuit has declined to require that any such burden be

5    placed on defendants in federal officer removal cases, the argument

6    that actual contracts are required to illustrate reasonably precise

7    specifications at this stage of the litigation process necessarily

8    fails.  See Willingham, 395 U.S. at 407 (noting that to be colorable,

9    the defense does not need to be clearly sustainable, as the purpose

10   of § 1442 is to secure that the validity of the defense will be tried

11   in federal court).  Defendants need not establish the validity of

12   their federal defense in order to justify removal.  Rather, they must

13   only raise a colorable federal defense.  The declarations made by

14   Admiral Lehman and Dr. Cushing describe general naval policies and

15   shipbuilding practices, and illustrate the lack of discretion given

16   to government contractors in supplying equipment to naval vessels.

17   As Plaintiffs point out, the declarations do not reference any

18   specific contractual provisions that prohibit Defendants from placing

19   warnings on naval equipment about the dangers of asbestos exposure.

20

21   are speculative.  These arguments lack merit because Admiral Lehman
     and Dr. Cushing's declarations are based on years of experience and
22   training in regard to the design and operation of U.S. Navy vessels.
     Both declarants state that they are personally familiar with the
23   degree of supervision and control of the Navy over the actions of its
     contractors.  The declarations describe typical Navy specifications
24   and offer explanations as to why warnings about asbestos would not
     have been permitted.  (See Lehman Dec., at 2-3; Cushing Dec., at 2,
25   5.)  Additionally, Plaintiffs claim the declarations are inadmissible
     per the "best evidence rule."  Fed. R. Evid. 1002.  This argument
26   also lacks merit because Admiral Lehman and Dr. Cushing are not
     trying to "prove the content of a writing," but rather they are
27   relying on their independent knowledge and familiarity regarding Navy
     specifications in making their assertions.  Id.
28

8

1    The absence of specific prohibitions, however, does not render these

2    declarations useless; rather, the declarations provide Defendants

3    with a basis for asserting a colorable federal defense, which is all

4    that is needed at the removal stage.   A central district court

5    similarly determined that Admiral Lehman's declaration created an

6    inference that military contractors did not provide a warning

7    concerning the dangers of asbestos because the Navy did not permit

8    any such warning.   Oberstar v. CBS Corp., No. CV 08-118 PA, at 5

9    (C.D. Cal. Feb. 11, 2008) (citing Nesbiet v. General Electric Co.,

10   399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005)).   Once again, the court

11   noted that defendants must only show a colorable federal defense at

12   this stage of the litigation process, not one that will ultimately

13   prevail.   Id.   Additionally, a Northern District of California court

14   has specifically rejected the argument that a defendant must produce

15   actual contractual documentation in order to demonstrate that it

16   worked under reasonably precise specifications.   See Ballenger v.

17   Agco Corp., 2007 WL 1813821, at *3 (N.D. Cal. June 22, 2007) (stating

18   that to require past contracts would frustrate the purpose of §

19   1442).   In this action, based on the declarations of Admiral Lehman

20   and Dr. Cushing, it is possible to find that the Navy set forth

21   reasonably precise specifications regarding the use of warnings, such

22   that Defendants have a basis for asserting a colorable federal

23   defense.

24

25            **b.   Conformity to Reasonably Precise Specifications**

26        As to the second element of the government contractor defense,

27   Defendants must show that the products supplied to the U.S. Navy

28

1  conformed to the reasonably precise specifications set forth by the

2  Navy.  Essentially, Defendants must show that the Navy received what

3  it sought.  Based on the declarations by Admiral Lehman and Dr.

4  Cushing, it can be inferred that any deviation from the Navy's

5  specifications would have resulted in rejection of the equipment.

6  (See Cushing Dec., at 4-5; Lehman Dec., at 4.)  Thus, if Plaintiff

7  Reaser had been exposed to asbestos on naval vessels where Defendants

8  had supplied asbestos-containing equipment, it is likely that this

9  equipment conformed to the detailed specifications set forth by the

10  Navy.  Had this equipment not complied with the Navy's specifications

11  regarding design, installation, and warnings, it is a fair inference

12  that the equipment would not have been placed on the ships.  (Lehman

13  Dec., at 4-5.)

14

15                    c.    **Warnings by Defendants**

16       Finally, the third element of the military contractor defense

17  requires that Defendants did not fail to warn the Navy of any dangers

18  associated with asbestos that were known by Defendants but not the

19  government.  As the Supreme Court in Boyle noted, "[t]he third

20  condition is necessary because, in its absence, the displacement of

21  state tort law would create some incentive for the manufacturer to

22  withhold knowledge of risks, since conveying that knowledge might

23  disrupt the contract but withholding it would produce no liability."

24  Boyle, 487 U.S. at 512.  Dr. Lawrence Betts, a retired Navy captain,

25  states in his declaration that the Navy's knowledge regarding the

26  dangers of asbestos and its health effects represented the state of

27  the art.  (Betts Dec., at 18.)  Furthermore, he notes that "[d]uring

28

1   the period from the early 1920s to the late 1960s, there was nothing

2   about the hazards associated with the use of asbestos-containing

3   products . . . on United States Navy ships known by a manufacturer .

4   . . that was not known by the United States and the United States

5   Navy." (Id.)  Based on this evidence, it seems possible to find that

6   the information possessed by the Navy exceeded any information that

7   could have been provided by Defendants, such that the third element

8   is sufficiently satisfied for raising a defense.  Therefore, it

9   appears that Defendants have raised a colorable federal defense.

10

11              3.    **Causal Nexus**

12       The final prong necessary to satisfy federal officer removal

13   requires Defendants to demonstrate that the Navy controlled the

14   warnings Defendants could place on its equipment and that this

15   control prevented Defendants from fulfilling its alleged state law

16   duty to warn of the dangers associated with asbestos exposure.

17   Essentially, there must be a causal nexus between the claims against

18   Defendants and the acts they performed under color of federal office.

19   Ballenger, 2007 WL 1813821at *3-4.  Similar to the second prong,

20   Defendants must simply show the existence of a likely causal

21   connection, not prove such a connection.  See Jefferson County v.

22   Acker, 527 U.S. 423, 432 (1999) ("Just as requiring a clearly

23   sustainable defense rather than a colorable defense would defeat the

24   purpose of the removal statute . . . so would demanding an airtight

25   case on the merits in order to show the required causal connection.")

26   Again, as shown above by the declarations of Lehman, Cushing, and

27   Betts, the Navy had direct control over all aspects of the equipment

28

1   supplied to its ships.  It can therefore be inferred that the reason

2   why Defendants did not place warnings on their equipment was because

3   such warnings were precluded by the Navy's detailed specifications.

4   (See Lehman Dec., at 4.)  Plaintiffs allege that Defendants failed to

5   warn of asbestos dangers, yet this alleged failure to warn,

6   Defendants assert, resulted from the Navy's prohibitions and/or

7   control over any such warning.  Therefore, Defendants adequately show

8   a causal nexus between Plaintiffs' claims and Defendants' actions.

9       Because Defendants have adequately asserted a colorable federal

10   defense and a causal nexus between Plaintiffs' claims and Defendants'

11   acts performed under the direction of the Navy, it appears that

12   Defendants satisfy the three prongs of § 1442(a)(1).

13

14       **C.   Disclaimer**

15       Plaintiffs additionally argue that removal is improper because

16   of disclaimers appearing in the Complaint. Plaintiffs include two

17   disclaimers in the Complaint. The first disclaimer does not operate

18   to disclaim any cause of action subject to federal officer removal.

19   (Complaint, at ¶ 4.) The second disclaimer, however, specifically

20   disclaims "any cause of action or recovery for any injuries resulting

21   from exposure to asbestos dust caused by any acts or omissions of a

22   party Defendant committed at the direction of an officer of the

23   United States Government." (Id.) However, because removal pursuant to

24   the federal officer removal statute is premised on the existence of a

25   colorable federal defense, rather than the manner in which a

26   plaintiff's complaint is constructed, courts have found that neither

27   a plaintiff's disclaimer nor its characterization of his claims is

28

                                   12

1  determinative.  See Oberstar, No. CV 08-118 PA at 3. See also Durham,

2  445 F.3d at 1253 ("[R]emovals under section 1441 are subject to the

3  well-pleaded complaint rule, while those under section 1442 are

4  not."); Ballenger, 2007 WL 1813821 at *2 ("Under the federal office

5  removal statute, suits against federal officers may be removed

6  despite the nonfederal cast of the complaint.")  The Court takes a

7  similar view.  Plaintiffs' second disclaimer effectively mirrors

8  Defendants' federal contractor defense and so in no way prevents

9  litigation of the applicability of that defense in state court, which

10  is precisely what the federal officer removal statute seeks to avoid.

11  To grant a plaintiff's motion for remand based on such a disclaimer

12  would, therefore, render the federal officer removal statute

13  completely ineffectual in the face of an "artfully constructed"

14  complaint.  Oberstar, No. CV 08-118 at 3.  The Court cannot allow

15  Plaintiffs to evade federal officer removal in such a fashion.

16      Plaintiffs rely on Westbrook v. Asbestos Defendants, where the

17  court, when faced with similar facts and evidence, found the

18  plaintiffs' disclaimer to be determinative and remanded the case back

19  to state court. 2001 WL 902642 at *3 (N.D. Cal. July 31, 2001).

20  However, Westbrook is distinguishable from the present case in that

21  the plaintiffs in Westbrook disclaimed "any claims arising out of

22  work done on United States Navy ships."  Id. at *2.  In other words,

23  the plaintiffs in Westbrook specifically waived any causes of action

24  stemming from asbestos exposure on naval vessels; instead premising

25  their claims on injuries arising from work done on private ships.

26  Id.  As a result, unlike in the present case, the parties in

27  Westbrook had no need to litigate any issue resembling the federal

28

1  contractor defense in order to determine the applicability of the

2  plaintiffs' disclaimer.  Therefore, remand in that case did not

3  undermine the purposes of § 1442(a)(1), as remand here would, and so

4  was appropriate.

5

6  **III. Conclusion**

7

8      Based on the foregoing reasons, Plaintiffs Robert and Christine

9  Reaser's Motion for Remand is DENIED.

10

11      IT SO ORDERED.

12

13  DATED:_____June 23, 2008_____

14                                         STEPHEN V. WILSON
                                           UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ALBERT WRIGHT JR.,                          No. C07-05403 MJJ

12              Plaintiff,                        **ORDER DENYING MOTION TO
                                                 REMAND**
13      v.

14   A.W. CHESTERTON COMPANY INC,

15              Defendant.
     _____/

16

17                                    **INTRODUCTION**

18        Before the Court is Plaintiffs Albert Wright, Jr. ("Mr. Wright") and Marva Wright's

19   (collectively, "Plaintiffs") Motion to Remand.  (Docket No. 23.)  Defendants Foster Wheeler

20   ("Foster Wheeler") and Leslie Controls ("Leslie Controls") (collectively, "Defendants") oppose the

21   Motion.[1]  For the following reasons, the Court **DENIES** the Motion.

22                                 **FACTUAL BACKGROUND**

23        This is a personal injury action arising out of injuries allegedly sustained by Mr. Wright due

24   _____

25        [1] Plaintiff objects to Leslie Controls' Joinder in Foster Wheeler's Notice of Removal and Leslie Controls' Joinder
     in Foster Wheeler's Opposition to this Motion.  Whether or not Leslie Controls may join the Notice of Removal is not,
26   however, dispositive of this Motion because any defendant can unilaterally remove a case under § 1442.  *See Durham v.
     Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (explaining that a federal officer or agency defendant can unilaterally remove
27   a case under § 1442).  Therefore, for purposes of this Motion, the Court need not determine whether Leslie Controls' may
     join in Foster Wheeler's Notice of Removal.   However, once the case is removed by Foster Wheeler, the Court perceives
28   no reason why Leslie Controls may not Join in Foster Wheeler's Opposition to Plaintiff's Motion to Remand.  In addition,
     Leslie Controls filed its joinder in the opposition not less than 21 days before the hearing date with both the Court and
     Plaintiffs.  (*See* Plf.'s Objection, Docket No. 44 at 2.)  The Court therefore perceives no prejudice from Leslie Control's
     failure to efile.  *See* Civ. L.R. 7-3(a).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  to exposure to Defendants' asbestos and asbestos-containing products. (*See* Keller Decl., Exh. A

2  ("Complaint") ¶¶ 10-15.) Plaintiffs allege that Mr. Wright contracted lung cancer as a result of his

3  exposure to these products during his employment as a machinist and flange turner, among other

4  places, for the Navy. (*Id.* ¶¶ 11, 36-37, Exh. A.) Mr. Wright worked aboard twenty-six or more

5  Navy ships and vessels in his career.[2] (*See id.* at Exh. A.)

6          Plaintiffs filed this asbestos action on September 13, 2007 in San Francisco County Superior

7  Court against Defendant Foster Wheeler, Leslie Controls and dozens of other defendants. (*See*

8  Keller Decl., Exh. A ("Complaint").) Plaintiffs brought claims of negligence, strict liability, false

9  representation, intentional tort, premises owner/contractor liability and loss of consortium. (*See*

10  Complaint at 1.) Plaintiffs argue, in this Motion, that Plaintiffs' claims against Foster Wheeler are

11  based only on its failure to warn about the dangers of asbestos that Foster Wheeler incorporated into

12  the design and manufacture of its boilers. (Plfs.' Mem. of P. & A. at 14.) Indeed, in the Complaint,

13  Plaintiffs "disclaim any cause of action or recovery for any injuries and damages resulting from

14  exposure to asbestos caused by the acts or omissions of defendants committed at the specific

15  direction of an officer of the United States Government acting within his official capacity." (*See*

16  Complaint ¶ 9a.) Foster Wheeler filed a Notice of Removal on October 23, 2007. (*See* Notice of

17  Removal, Docket No. 1.) Plaintiffs now seek an order remanding this case to state court.

18                                          **LEGAL STANDARD**

19          Pursuant to 28 U.S.C. § 1441(a), a defendant in a civil action may remove a case from state

20  court to federal district court if the district court has subject matter jurisdiction over the case. The

21  Court strictly construes the removal statute against removal and Defendants have the burden of

22  establishing that removal jurisdiction is proper. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th

23  Cir. 1992).

24          Removal pursuant to 28 U.S.C. § 1442, however, is different. Pursuant to 28 U.S.C. §

25  1442(a)(1), a civil action may be removed by "[a]ny officer of the United States or any agency

26

27          [2] Mr. Wright worked aboard various Navy vessels including, but not limited to, the USS Midway, USS Enterprise, USS Kitty Hawk, USS Coral Sea, USS Oriskany, USS Constellation, USS Mount Hood, USS John F Kennedy, USS Hancock, USS Ticonderoga, USS Providence, USS Mount Baker, USS Mauna Kea, USS Pigeon, USS Pyro, USS Guitarro,

28  USS Drum, USS Pintado USS Hawkbill, USS Permit, USS Swordfish, USS Halibut, USS Grayback, USS Brinkley Bass, USS Trigger, and USS Wahoo.

1  thereof, or person acting under him, for any act under color of such office." 28 U.S.C. § 1442(a)(1).

2  To satisfy this provision a party must "(1) demonstrate that it acted under the direction of a federal

3  officer; (2) raise a colorable federal defense to plaintiff's claims; and (3) demonstrate a causal nexus

4  between plaintiff's claims and the acts defendants performed under color of federal office." *Fung v.*

5  *Abex Corp.*, 816 F.Supp. 569, 517 (N.D.Cal. 1992) (citing *Mesa v. California*, 489 U.S. 121, 124-

6  125, 134-135 (1989)).[3]

7       Unlike removal under § 1441(a), the presumption under § 1442 is in favor of removal. *See*

8  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252-53 (9th Cir. 2006). In *Durham*, after a

9  review of the relevant case law, the Ninth Circuit stated that "when federal officers and their agents

10  are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.* at

11  1252. The Court further explained that "[b]ecause it's so important to the federal government to

12  protect federal officers, removal rights under section 1442 are much broader than those under

13  section 1441." *Id.* at 1253 (noting that the breadth of the removal rights are exemplified by, inter

14  alia, the fact that under § 1442 a federal officer can remove a case even if the plaintiff could not have

15  filed the case in federal court to begin with, that removal under § 1442 is not subject to the well-

16  pleaded complaint rule and that a federal officer or agency can unilaterally remove a case under

17  section 1442).[4]

18                                    **ANALYSIS**

19       Plaintiffs argue that Defendants fail to establish that Foster Wheeler acted under the direction

20  of a federal officer, raised a colorable federal defense, or established a causal nexus between its

21  alleged action under the control of a federal officer and Plaintiffs' claims. Plaintiffs also raise

22  evidentiary objections to Defendants' evidence.

---

23
24       [3] The removing party must also qualify as a federal officer or person acting under the same. As a corporation, Foster Wheeler meets this requirement. *See Fung*, 816 F.Supp. at 572. Additionally, the parties do not contend otherwise.

25       [4] Plaintiffs correctly argue that the Ninth Circuit, in *Durham*, was confronted with the question of whether the removal petition was timely, so the court did not reach the merits of the defendant's removal petition. Plaintiff understates,
26  however, the breadth of the holding in *Durham*. While *Durham* needed only to determine the timeliness question, the Court analyzed the history of § 1442. In so doing, the Circuit's determination that there should be a presumption in *favor* of
27  removal was not limited to the mere question of timeliness. In addition, the Circuit makes the presumption determination in order to come to its final holding. Thus, the language regarding the breadth and presumption in favor of removal was not
28  dicta, but essential to the holding and thus binding. A recent decision from this court interpreted it as such and accordingly denied a motion to remand. *See Ballenger v. AGCO*, No. C 06-2271, 2007 WL 1813821 (N.D. Cal. June 22, 2007).

**United States District Court**
For the Northern District of California

1    Defendants, on the other hand, argue that they have submitted sufficient evidence on each of

2    the required elements for removal under § 1442 in both their Notice of Removal and the exhibits

3    attached to their Opposition to this Motion.  The Court turns first to the evidentiary challenges, then

4    to the merits.

5    **I.    Evidentiary Issues**

6        In the instant case, Defendants submit four declarations.  Plaintiff raises evidentiary

7    objections to all four.  The general contours of these objections are outlined in this section.  Below,

8    in the discussion on the merits, if the outcome relies on evidence that is specifically challenged, it

9    shall be so noted and the objection resolved.

10       The first two declarations, attached to Defendant's Notice of Removal, are the declarations

11   of J. Thomas Schroppe, a retired Foster Wheeler executive, and Ben J. Lehman, a retired Rear

12   Admiral of the United States Navy.  These declarations are offered for the purpose of demonstrating

13   that Foster Wheeler was subject to government specifications and oversight in all aspects of the

14   design of its boilers, including the relevant warnings attached thereto.  (*See* Affidavit of J. Thomas

15   Schroppe, Notice of Removal, Exhibit B and Affidavit of Ben J. Lehman, Notice of Removal,

16   Exhibit C).  Plaintiffs object to the admissibility of these affidavits for four reasons.  (*See* Plfs.'

17   Evid. Obj.)  First, Plaintiffs argue that under Federal Rule of Evidence ("FRE") 402, the challenged

18   evidence is not relevant.  Next, under FRE 602, Plaintiffs contend that the witnesses do not have

19   personal knowledge of the matters asserted.  Third, some of the evidence is purportedly inadmissible

20   hearsay under FRE 802.  Finally, Plaintiffs argue that these declarations violate the best evidence

21   rule, under FRE 1002-1004.[5]

22       As a general matter, none of these objections are meritorious.  First, the declarations are

23   relevant to this Motion because they are related to the Navy's level of control over Foster Wheeler's

24   production activities.  (*See* Notice of Removal, Exhs. B, C.)  Mr. Wright alleges that his injuries

25   were caused by his work on at least twenty-six Navy ships, not just one or even a small handful.

26   While Defendants only cite one ship by name in their Notice of Removal, they note that the

27

28       [5] While Plaintiffs refer to the "secondary evidence rule" and cite FRE 1003, the Court presumes, given the
description of the objection, that the objection is based on FRE 1002.

4

1   allegations are related to "exposure while working on, among other ships, the USS Constellation."

2   (*See* Notice of Removal at 2.)  Thus, evidence regarding general navy practices, as it relates to the

3   Navy's contracts with Foster Wheeler, is both relevant and appropriate.  Insofar as Plaintiff argues

4   that the testimony is not relevant because these declarations are dated prior to the inception of this

5   action in state court, this argument is unavailing.  The fact that the declaration pre-dates the

6   inception of the suit does not undermine the relevance of the practices testified to, all of which

7   occurred prior to the date the declaration was signed.

8        Next, both Schroppe and Lehman testify to their personal knowledge of the facts contained in

9   the declaration.  Schroppe states that he is personally familiar with the degree of supervision and

10  control exercised by the Navy and its agencies in procurement contracts with Foster Wheeler for

11  boilers and auxiliary equipment because he was personally involved in such contracts at all the

12  various stages of contracting.  (*See id.*, Exh. B at 2.)  Lehman testifies that his years of experience

13  with the Navy have caused him to be thoroughly familiar with U.S. Navy specifications and the

14  means by which the U.S. Navy controlled its contracts and inspection procedures.  (*See id.*, Exh. C

15  at 9.)  Thus, Schroppe and Lehman's testimony regarding the Navy's contracting and specifications

16  related to Foster Wheeler boilers is based on personal knowledge.  Third, insofar as specific

17  statements are inadmissible hearsay, this will be taken up as is relevant, below.  However, as a

18  general matter, the majority of the challenged statements are based on personal knowledge, not an

19  out of court statement, and are not inadmissible hearsay.  Finally, these declarations do not violate

20  the Best Evidence Rule.  Under FRE 1002, "to prove the content of a writing, recording, or

21  photograph, the original writing, recording, or photograph is required."  Here, Schroppe and

22  Lehman, in their declarations, do not attempt to prove the content of a writing, recording or

23  photograph.  While the declarations cite various specifications that are also written, such as the

24  Military Specifications ("Mil Specs"), they rely on their independent knowledge of the contents and

25  therefore need not submit the document/s themselves.

26       The third declaration, by Thomas J. Moses, counsel for Foster Wheeler, includes a copy of

27  Plaintiffs' Preliminary Asbestos Litigation Statement, a copy of a Government Purchase Order, and

28  a copy of a District Court case.  (Moses Decl., Exhs. A-C.)  Plaintiff objects to the Purchase Order,

5

**United States District Court**
For the Northern District of California

1   arguing that it never references the USS Constellation and Defendant's attorney never establishes a

2   foundation for its authenticity or how he is qualified to submit or interpret it. (Plfs.' Reply at 9.)

3   The Court agrees that the Government Purchase Order lacks some foundation and specificity.

4   However, the Court need not determine the admissibility of this document as the Court need not rely

5   on it to resolve this Motion.

6        Finally, the fourth declaration, by Lawrence Stilwell Betts ("Betts"), includes forty-five

7   exhibits. Plaintiffs generally object to the entire declaration on the same grounds that they object to

8   the Schroppe and Lehman declarations.  As above, as a general matter, these objections are not

9   meritorious.  However, insofar as the Court's decision relies on specific portions of the Betts

10   declarations, the objections thereto are considered below.

11        Plaintiffs also argue that the Court should not consider the Betts declaration because it was

12   untimely.  The Court, however, finds this argument unavailing.  First, Plaintiffs contend that a

13   removal notice cannot be amended or supplemented after the time for removal has expired. (*See*

14   Plfs.' Reply at 5.)  While this may be the case, Defendants do not seek to amend their removal

15   notice.  In addition, the issues raised in the Betts declaration, and attached exhibits, were generally

16   raised in Defendants' Notice of Removal. (*See* Notice of Removal, Exh. C at 14-15.)  Thus, the

17   untimeliness argument is unavailing.  In addition, the Betts declaration was filed with the Court on

18   December 17, 2007, more than the requisite time in advance of the January 29, 2008 hearing in this

19   matter.  While Defendants failed to efile the exhibits, the Court received copies on December 17,

20   2007 and Plaintiffs received copies on December 18, 2007, also more than 21 days before the

21   hearing in this matter.  Thus, while Defendants may have committed a procedural error in filing this

22   declaration, the Court perceives no prejudice from the Court's consideration of the Betts declaration

23   in resolving this matter.

24   **II.**      **The Merits**

25        **a.**      **The First and Third *Mesa* Prongs: Foster Wheeler acted under the direction of a**

26                   **federal officer and Foster Wheeler demonstrated a causal nexus.**

27        Under *Mesa*, Defendants must establish that Foster Wheeler acted under the direction of a

28   federal officer.  489 U.S. at 121, 134-45.  In addition, Defendants must establish that there is a

United States District Court
For the Northern District of California

1    causal nexus between Plaintiff's claims and Foster Wheeler's actions under the control of a federal

2    officer. *See id.* Defendants contend that they have established both of these prongs. The Court

3    agrees.

4          To show that Defendants acted under the direction of a federal officer, Foster Wheeler cannot

5    simply show that the "relevant acts occurred under the general auspices of a federal officer, such as

6    being a participant in a regulated industry." *Fung*, 816 F. Supp. at 572 (quotations omitted).

7    Instead, "[a] majority of courts have held that the federal official must have 'direct and detailed

8    control' over the defendant." *Id.* (quoting *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947

9    (E.D.N.Y. 1992).

10         Relying on *Good v. Armstrong World Industries*, 914 F.Supp. 1125 (E.D.Pa. 1996), Plaintiffs

11   contend that Foster Wheeler must also cite a specific federal officer who designed, manufactured or

12   even directed the design and manufacture of the boilers present in the Navy vessels and installations

13   identified in Plaintiffs' Complaint. (Plfs.' Mem. of P. & A. at 8-9.) Plaintiffs, however, provide no

14   authority establishing that this is a requirement in the Ninth Circuit. In fact, such a finding would be

15   in potential conflict with the removal standard enunciated in *Durham*. Thus, Plaintiffs have not

16   shown that Defendants, in this circuit, are required to cite a specific federal officer, as long as they

17   show that they acted under the requisite direct and detailed control of a federal official. *See Fung*,

18   816 F. Supp. at 572.

19         Here, Defendants have provided sufficient evidence supporting a finding that the Navy had

20   direct and detailed control over their ability to place asbestos warnings on their boilers provided to

21   the Navy. Under contracts between Foster Wheeler and the Navy for boilers and auxiliary

22   equipment, the Navy was responsible for all design aspects and approved the equipment at multiple

23   steps along the way. (*See* Notice of Removal, Exh. B. ("Schroppe Decl") ¶¶ 2, 5, 8, 9, 12, 14, 19.)

24   In addition, the Navy exercised significant direction and control over the contents of all written

25   documentation to be delivered with the naval boilers. (*Id.* ¶ 21.) Under the Navy's precise

26   specifications, Foster Wheeler was not permitted to affix any type of warning or caution statement to

27   a piece of equipment intended for installation onto a Navy vessel, beyond those required by the

28

7

1   Navy. (*Id.* ¶ 22.)[6]

2        Plaintiffs offer no contradictory evidence. Instead, Plaintiffs argue that there is no evidence

3 that the asbestos-containing components were anything other than standard stock equipment. (Plfs.'

4 Mem. of P. & A. at 10.) However, the evidence presented by Defendants establishes that the boilers

5 that Foster Wheeler designed and manufactured for the Navy were subject to specific design

6 requirements and control that resulted in equipment that was specific to the needs of the Navy and

7 not standard stock equipment. In addition, Plaintiffs argue that Defendants' evidence is insufficient

8 and contradictory. However, perceiving no real contradictions in the evidence, and given the

9 presumption in favor of removal under *Durham,* this evidence is sufficient to establish the Navy's

10 direct and detailed control over Defendants' design of the boilers and the warnings attached thereto.

11        Next, Plaintiffs argue that there is no causal nexus because there is no proof that a specific

12 federal officer directed Foster Wheeler about warnings specifically. However, as discussed above,

13 there is no requirement that Defendants cite a specific federal officer by name, as long as the

14 requisite direction, control and causal nexus is established. In addition, Defendants offer evidence

15 that the Navy would not permit Foster Wheeler to affix any type of warning or caution statement to a

16 piece of equipment intended for installation onto a navy vessel, beyond those required by the Navy.

17 (*See* Schroppe Decl. ¶ 22; Lehman Decl. ¶ 14.) As Lehman testified, "[t]o do so would have

18 interfered with the U.S. Navy's mission and control of its ships and personnel." (Lehman Decl. ¶

19 14.) Thus, Defendants have established a causal nexus between Plaintiff's claims and Foster

20 Wheeler's actions under the control of a federal officer.[7]

21     **b.**    **Second *Mesa* Prong: Foster Wheeler raises a colorable federal defense to**

22           **Plaintiffs' claims.**

23        Foster Wheeler urges the Court to determine its right to remove under 28 U.S.C. 1442(a)(1)

24 in light of the government contractor's defense set forth in *Boyle v. United Technologies Corp.*, 487

---

25

26     [6] The evidence specifically relied upon in this paragraph is admissible despite Plaintiffs' objections to the contrary. The objections to these sections of the Schroppe declaration are the same boilerplate objections discussed above and the evidence is admissible for the same reasons already stated.

27

28     [7] The evidence specifically relied upon in this paragraph is admissible despite Plaintiffs' objections to the contrary. The objections to these sections of the Schroppe and Lehman declarations are the same boilerplate objections discussed above and the evidence is admissible for the same reasons already stated.

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    U.S. 500 (1988).  As discussed more fully below, the Court finds that there is sufficient evidence in

2    the record to raise a colorable government contractor defense.

3         In *Boyle*, the Supreme Court found that liability arising from state law, here the duty to warn,

4    may not be imposed in instances where "(1) the United States approved reasonably precise

5    specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the

6    United States about the dangers in the use of the equipment that were known to the supplier but not

7    to the United States."  *Id.* at 512.  As noted above, Plaintiffs waive all claims against Foster Wheeler

8    save for those arising from a failure to warn. (*See* Complaint ¶ 9a.)  The Ninth Circuit clarified the

9    contractor defense as it applies to failure to warn claims in *Butler v. Ingalls Shipbuilding, Inc.*, 89

10   F.3d 582, 586 (9th Cir. 1996).  The court in *Butler* found the contractor defense to be "inapplicable

11   to a failure to warn claim in the absence of evidence that in making its decision whether to provide a

12   warning . . . [defendant] was acting in compliance with reasonably precise specifications imposed on

13   [it] by the United States."  *Id.* at 586 (quotations omitted).

14        In the instant case, as discussed above, Defendants provide sufficient evidence, by way of the

15   Schroppe and Lehman declarations, that satisfies the first and second prongs of the *Boyle* test; the

16   United States Navy required, and approved, reasonably precise specifications and Foster Wheeler's

17   equipment conformed to these specifications.  The outstanding question, therefore, is whether

18   Defendants submit sufficient evidence to establish the third prong; whether Foster Wheeler warned

19   the United States about the dangers in the use of the equipment that were known to Foster Wheeler

20   but not to the United States.

21        Defendants submit two declarations to support their contention that Foster Wheeler did not

22   have any knowledge about the dangers of the use of asbestos that were not known to the United

23   States Navy.  First, Lehman testified that the U.S. Navy was well aware of the dangers of asbestos

24   and conducted extensive research concerning the hazard of exposure to asbestos, thus staying abreast

25   of the latest information, including the results of research. (Lehman Decl. ¶ 13.)  The Navy made

26   deliberate decisions on the allocation of its resources in light of this knowledge. (*Id.*)  Next,

27   Defendants submit the declaration of Lawrence Stilwell Betts, a retired Navy captain and medical

28   professional who is familiar with the industrial products used by the Navy, the Navy work

1   environments and the Navy occupational health program.  Betts testified that the Navy controlled

2   asbestos exposure consistent with the then current state of accepted scientific and medical

3   knowledge balanced by needs for national defense.  (Betts Decl. ¶ 31.)  Betts further testified that

4       [t]he Navy's knowledge regarding the applications of asbestos and the health effects
    represented the state of the art.  During the period from the early 1920s to the late

5       1960s, there was nothing about the hazards associated with the use of asbestos
    containing products used on or in boilers and auxiliary equipment on United States

6       Navy ships known by a boiler manufacturer, like Foster Wheeler, that was not known
    by the United States government and the United States Navy.

7   (Betts Decl. ¶ 32.)[8]

8       Plaintiff, in response, argues that, inter alia, Defendants have failed to establish that the Navy

9   had knowledge about the dangers of using Foster Wheeler's asbestos-containing equipment or

10  boilers specifically.  However, the testimony above regarding the Navy's superior knowledge is only

11  part of the record before the Court.  Betts testifies that the Navy had the most current knowledge

12  regarding the dangers of asbestos.  Schroppe and Lehman's testimony further establishes that the

13  Navy knew of, and in fact required, the specific design parameters for the boilers made by Foster

14  Wheeler.  Thus, if the boilers contained asbestos, then it was by design, known by the Navy, and was

15  approved and/or required by the Navy.  The warnings regarding such asbestos were also according

16  to, and limited by, the specifications set forth by the Navy.  Thus, Plaintiff's argument that the Navy

17  did not have knowledge about the asbestos contained in Foster Wheeler's boilers is unavailing.

18  Plaintiffs also present other related arguments challenging the Betts declaration.  Each argument,

19  like their primary argument, discussed above, is similarly unavailing given the totality of the

20  evidence in the record.

21      The Court is mindful that Defendants need only present a colorable federal defense to

22  Plaintiff's claims and need not prove that the defense will be meritorious.  *See Mesa*, 489 U.S. at

23  128; *Ballenger*, 2007 WL 1813821 at *4.  Here, on this record, the Court finds that Defendants have

24  established that they have a colorable federal defense.

25  //

26

27  _____

28      [8] The evidence specifically relied upon in this paragraph is admissible despite Plaintiffs' objections to the contrary.
The objections to these sections of the Lehman and Betts declarations
are the same boilerplate objections discussed above and the evidence is admissible for the same reasons already stated.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Remand.  Pursuant to the clear language in *Durham*, the Court must interpret § 1442 broadly in favor of removal.  Given the evidence in the record, Defendants have established the requisite basis for removal.

**IT IS SO ORDERED.**

Dated: February 21, 2008

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| C. Kevin Reddick | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Remand filed by plaintiffs Robert and Linda Oberstar ("Plaintiffs") (Docket No. 7). Also before the Court is a Motion to Stay originally filed in case number 08-143 PA (JWJx) by defendant General Electric Co. (Docket No. 5).[1] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for February 11, 2008, is vacated, and the matters taken off calendar.

Plaintiffs allege claims for negligence, strict liability, and loss of consortium arising out of Mr. Oberstar's exposure to asbestos-containing products manufactured, fabricated, installed, or otherwise distributed by defendants. Specifically, Plaintiffs' claims assert that defendants violated their obligations imposed under state law to warn Mr. Oberstar of the dangers associated with their asbestos-containing products. Among other places, Plaintiffs allege that Mr. Oberstar was exposed to the asbestos contained in defendants' products while he served aboard the aircraft carrier U.S.S. Midway from 1959 to 1963. Plaintiffs commenced the action in Los Angeles Superior Court on December 3, 2007 and served defendants Viad Corp. ("Viad") and General Electric Co. ("GE") on December 10, 2007. Viad removed the action to this Court on January 8, 2008 and GE filed a Notice of Removal on January 9, 2008. Both Viad and GE based their Notices of Removal on 28 U.S.C. § 1442(a)(1)'s federal officer removal statute. 28 U.S.C. § 1442(a) provides, in relevant part:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the

---

[1]     Because defendants General Electric Co. and Viad Corp. filed separate Notices of Removal, there were originally two case numbers assigned to this action. Because both case numbers referred to the same case originally filed by plaintiffs in Los Angeles Superior Court, the Court consolidated the two actions into CV 08-118 PA (JWJx), dismissed CV 08-143 PA (JWJx), and directed that all future filings should reference only CV 08-118 PA (JWJx). Plaintiff also filed a Motion to Remand in CV 08-143 PA (JWJx) (Docket No. 14). That Motion will be addressed in this Order.

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | |

> United States for the district and division embracing the place wherein it is
> pending: (1) The United States or any agency thereof or any officer (or
> any person acting under that officer) of the United States or of any agency
> thereof, sued in an official or individual capacity for any act under color of
> such office . . . .

28 U.S.C. § 1442(a).

Suits against federal officers are an exception to the general rule that a case is removable only if
the federal question appears on the face of a properly pleaded complaint. See Jefferson County v.
Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075, 144 L. Ed. 2d 408 (1999). "Under the federal officer
removal statute, suits against federal officers may be removed despite the nonfederal cast of the
complaint; the federal-question element is met if the defense depends on federal law." Id. "A party
seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the
statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions,
and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham v. Lockheed Martin
Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting Jefferson County, 527 U.S. at 431, 119 S. Ct. 2075,
144 L. Ed. 2d 408 and citing Mesa v. California, 489 U.S. 121, 124-25, 131-35, 109 S. Ct. 959, 962,
965-67, 103 L. Ed. 2d 99 (1989)).

In establishing the propriety of removal under the federal officer removal statute, the defendant
need not prove a valid federal defense, only a colorable defense:

> In construing the colorable federal defense requirement, we have rejected
> a "narrow, grudging interpretation" of the statute, recognizing that "one of
> the most important reasons for removal is to have the validity of the
> defense of official immunity tried in a federal court." We therefore do not
> require the officer virtually to "win his case before he can have it
> removed."

Jefferson County, 527 U.S. at 431, 119 S. Ct. at 2075, 144 L. Ed. 2d 408 (quoting Willingham v.
Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969)). Indeed, unlike other
removal statutes, which are to be interpreted strictly, "the Supreme Court has mandated a generous
interpretation of the federal officer removal statute . . . ." Durham, 445 F.3d at 1252. As the Supreme
Court has held, "the right of removal is absolute for conduct performed under color of federal office, and
has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging
interpretation of § 1442(a)(1).'" Arizona v. Manypenny, 451 U.S. 232, 242, 101 S. Ct. 1657, 1664, 68
L. Ed. 2d 58 (1981) (quoting Willingham, 395 U.S. at 407, 89 S. Ct. at 1816, 23 L. Ed. 2d 396); see also
Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the
Supreme Court that when federal officers and their agents are seeking a federal forum, we are to
interpret section 1442 broadly in favor of removal.").

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | | Date | February 11, 2008 |
|----------|---------------------|--|------|-------------------|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|-------|----------------------------------------------|

In removing the action pursuant to the federal officer removal statute, defendants claim that they are entitled to assert the "military contractor defense." The military contractor defense shields contractors from liability for state tort law for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Technologies Corp., 487 U.S. 500, 512, 108 S. Ct. 2510, 2518, 101 L. Ed. 2d 442 (1988). Although originally developed in the design defect context, the military contractor defense also applies in cases where a plaintiff alleges that the government contractor breached a state law duty to warn of potential dangers. In actions alleging a failure to warn claim against a military contractor, the supplier cannot be liable when it can show: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-04 (7th Cir. 1996); see also In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (9th Cir. 1992).

As an initial matter, Plaintiffs argue in their Motions to Remand that they have disclaimed any claim that could allow this Court to exercise jurisdiction pursuant to the federal officer removal statute. Specifically, the Complaint alleges:

> Plaintiffs hereby disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave, which expressly excludes U.S. Navy vessels. Plaintiffs disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party Defendant committed at the direction of an officer of the United States Government.

Complaint, ¶ 4. In support of their argument that their waiver of claims prevents defendants from removing this action pursuant to § 1442(a)(1), Plaintiffs principally rely on Westbrook v. Asbestos Defendants (BHC), No. C-01-1661 VRW, 2001 WL 902642 (N.D. Cal. July 31, 2001). In Westbrook, the district court relied upon the plaintiff's disclaimer of "any claims arising out of work done on United States Navy ships" to support its conclusion that federal officer removal was not proper. Unlike in Westbrook, Plaintiffs here have not disclaimed claims against defendants arising out of exposure occurring on Navy vessels. Indeed, despite their purported disclaimer, Plaintiffs specifically seek damages from defendants for exposure to asbestos Mr. Oberstar may have come in contact with while he served on the U.S.S. Midway. Because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiffs' disclaimer nor its characterization of their claims are determinative. See Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007) ("Machnik's argument that the suit must be remanded because his complaint disclaimed any federal claims is unavailing . . . . Subject matter jurisdiction under § 1442(a)(1) is based upon a federal defense, regardless of whether the

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | | Date | February 11, 2008 |
|---|---|---|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | | |

plaintiff's cause of action rests on state law. . . . [O]nce GE meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction."); Ballenger v. Agco Corp., No. C 06-2271 CW, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007) (denying motion to remand despite complaint's disclaimer of "any claim arising from any act or omission of the United State, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States").

Plaintiffs additionally argue that defendants have not met their burden to establish the existence of a valid federal defense to Plaintiffs' claims. Specifically, while conceding that defendants are "persons" within the meaning of § 1442(a)(1), Plaintiffs contend that defendants have not demonstrated that they can assert either a "colorable federal defense" or a "causal nexus" between their actions taken at the direction of a federal officer and Plaintiffs' claims. Durham, 445 F.3d at 1251. According to Plaintiffs, defendants lack the evidence to establish that federal officers prevented defendants from providing necessary warnings. As a result, according to Plaintiffs, defendants cannot prove either the applicability of the military contractor defense or the requisite causal nexus.

In their Motions to Remand, Plaintiffs state that their "complaint contains causes of action limited to state-based failure to warn claims." Motion to Remand, p. 6, ll. 8-9. Similarly, in their Reply, Plaintiffs state that they "did not necessarily sue GE or Viad for using asbestos, but rather for failing to warn of the hazards associated with it. Both GE and Viad claim they were acting under federal direction when they designed and manufactured their equipment, but such a showing is immaterial for purposes of this lawsuit and motion for remand." Reply, p. 8, ll. 4-8. According to Plaintiffs, absent evidence of specific facts that defendants were prevented from placing warnings on their products, defendants cannot meet their burden to establish the availability of the military contractor defense. Contrary to Plaintiffs' assertions, however, defendants' burden at this stage of the proceedings is not so exacting.

To establish their military contractor defense, defendants rely in large part on the declarations of Ben Lehman and Lawrence Betts. Lehman is a retired Rear Admiral, who joined the Navy in 1942 and served as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944 and as Ship Superintendent at the San Francisco Naval Shipyard from 1952 to 1954. Lehman also worked as an engineer at GE from 1946 to 1948. Betts, a physician, served in the Navy from 1972 until 2001 when he retired with the rank of Captain.

Lehman's declaration indicates that during the period when the U.S.S. Midway was built and continuing during Mr. Oberstar's service in the Navy, "the Navy had complete control over every aspect of each piece of equipment used on Navy ships." Lehman Decl., ¶ 6. According to Lehman:

> Military specifications governed every characteristic of this equipment,
> including instructions and warnings. Drawings for nameplates, texts of
> instruction manuals, and every other document relating to the

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

construction, maintenance, and operation of the vessel was approved by the Navy. This control included the decision of what warnings should or should not be included. Thus, the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment.

Furthermore, the Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment, including turbines and turbine manuals. The Navy was intimately involved with and had final approval of all technical and engineering drawings, operating manuals, safety or hazard information, and any other written information that accompanied a piece of equipment. The Navy determined the nature of hazards to be subject to any precautionary labeling and the content of any such labeling. . . . In short, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation, and warnings associated with its ships and did not permit deviation by any of its contractors.

Lehman Decl., ¶¶ 6 & 7. In reviewing a nearly identical declaration submitted by Lehman, the court in Nesbiet v. General Elec. Co. concluded that Lehman's Declaration raised "the inference that GE did not provide a warning concerning the dangers of asbestos because the Navy did not permit any such warning." 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005). Although the Lehman Declaration may not establish the absence of a triable issue of fact with respect to the first two prongs of the Boyle test, as modified by Oliver for a failure to warn claim, defendants need not prove so much at this preliminary stage of the proceedings. See Oliver, 96 F.3d at 1003 (applying military contractor defense when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government . . . ."). Again, to establish the propriety of their removal, defendants must only show a "colorable" federal defense, not a winning one.

The third prong of the military contractor defense requires the contractor to have "warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Id. at 1004. Defendants rely on the Betts Declaration to meet this third factor of the Boyle test. Through his training and experience, Betts became familiar with "the history and practice of the Navy occupational health program from its early days before World War II until the present time." Betts Decl., ¶ 2. According to Betts, the "Navy's knowledge regarding the applications of asbestos and the health effects represented the state of the art. During the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos-containing products on a marine steam turbine on United States Navy ships known by a turbine manufacturer, like General Electric Company, that was not known by the United States and the United States Navy." Id., ¶ 30. Based upon the Betts Declaration, defendants have provided sufficient evidence that there were no dangers known by them that were not known by the government. See Nesbiet, 399 F. Supp. 2d at 209 ("[A]ccording to Betts's affidavit, GE could not have possessed any information regarding the dangers

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |

posed by the use of asbestos-containing products in marine steam turbines that was not already known by the U.S. Navy.").

The Court therefore concludes that defendants have met their burden, at this stage of the proceedings, to establish a "colorable" military contractor defense for purposes of removal under § 1442(a)(1).[2] The Court also finds that defendants have submitted sufficient evidence of a "causal nexus" between Plaintiffs' claims and the actions defendants took at the direction of a federal officer. As did the court in Nesbiet, this Court finds that defendants' evidence "is sufficient for purposes of section 1442(a) to demonstrate that the Navy's control over warnings directly interfered with GE's duty to warn under state law. Thus, GE [and Viad] ha[ve] satisfied the 'causal nexus' requirement." Id. at 213.

For all of the foregoing reasons, the Court finds that defendants have raised a "colorable" federal defense to the claims alleged in Plaintiffs' Complaint. As a result, defendants' removals pursuant to § 1442(a)(1) were proper. Plaintiffs' Motions to Remand are therefore denied. With respect to the Motion to Stay, GE seeks to stay this action pending the anticipated transfer of this action to the Eastern District of Pennsylvania as a potential "tag-along action" to Multidistrict Litigation Number 875. According to GE, transfer to the MDL is "imminent." Assuming this is true, GE will suffer little if any prejudice between now and the time this case is eventually is transferred to the MDL should no stay be imposed. Accordingly, the Court finds that GE has failed to establish the necessity for a stay. The Court therefore declines to stay these proceedings.

IT IS SO ORDERED.

---

[2]    The Court recognizes that when faced with arguably similar evidence, other courts have reached a different result. See, e.g., Hilbert v. McDonnell Douglas Corp., No. 07CV11900-NG, 2008 WL 53266 (D. Mass. Jan. 3, 2008). The Court declines to follow Hilbert because, in the Court's view, Hilbert places too high a burden on a defendant to prove its military contractor defense at such an early stage in the litigation. Given the liberality with which removals under § 1442 are to be considered, Hilbert's more exacting standard appears to conflict with Ninth Circuit precedent. See Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").

**SEND**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

Case No.   **CV 07-8338VBF(RCx)**                          Dated: **February 8, 2008**

Title:     Donald Nelson, et al. -*v*- Alfa Laval, Inc., et al.

---

PRESENT:   HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

|                           |                          |
|---------------------------|--------------------------|
| Rita Sanchez              | None Present             |
| Courtroom Deputy          | Court Reporter           |

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                     None Present

**PROCEEDINGS (IN CHAMBERS):    RULING RE: PLAINTIFF'S MOTION TO REMAND
                                [FLD 1/7/08]**

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for February 11, 2008 at 1:30 p.m. is hereby vacated and the matter taken off calendar.

After review of all papers filed, the Motion to Remand is DENIED. First, although most removal statutes are narrowly construed, the Federal Officer Removal Statute is an outlier. Plaintiff cannot plead around the "government contractor" defense. Second, Defendant Foster Wheeler has presented sufficient evidence to set forth a colorable government contractor defense. Although the evidence is not overwhelming, it is sufficient to meet the low bar of a "colorable" defense at this stage.

MINUTES FORM 90                              Initials of Deputy Clerk __rs__
CIVIL - GEN

-1-

## 1.   Background

### a.   Filing History

Plaintiff Donald Nelson and his wife, Hilaria Nelson, filed this action in California Superior Court in November, 2007 against several manufacturers of asbestos-containing products.   Plaintiffs allege that Donald Nelson contracted malignant pleural mesothelioma, a type of cancer, due to exposure to asbestos while serving as a fireman/boiler tender in the U.S. Navy aboard a destroyer from 1959 to 1963.  Defendant Foster Wheeler was served on November 28, 2007 and removed this action to federal court on December 27, 2007.

Foster Wheeler asserts that Nelson's injuries stem from service on a Navy destroyer that was commissioned in 1946.  Foster Wheeler designed and built boilers and auxiliary equipment for the U.S. Navy.  It is possible that Foster Wheeler boilers and equipment were on the ship on which Mr. Nelson served.

Plaintiffs filed this present Motion to Remand to State Court on January 7, 2008. Defendant Foster Wheeler filed an Opposition and supporting declaration on January 18, 2008.  Plaintiffs filed a Reply brief in support of their Motion to Remand on January 25, 2008.  Defendant Leslie Controls, Inc. filed a joinder to Foster Wheeler's Notice of Removal and Opposition to Motion to Remand on January 25, 2008.  Plaintiffs filed a Reply to Leslie Control's Joinder on January 29, 2008.

### b.   Federal Officer Removal Statute and Federal Contractor Defense

The basis for Foster Wheeler's removal is 28 U.S.C. § 1442(a)(1), which authorizes removal in a civil case "commenced in a State court against … [t]he United States or any agency thereof or any officer (or person acting under that officer) of the United States or of any agency thereof…"  Removal is proper under the Federal Officer Removal Statue where the moving party: (1) demonstrates that it acted under the direction of a federal officer; (2) demonstrates a causal nexus between the plaintiff's claims and the defendant's acts performed under color of federal office; and (3) raises a colorable federal defense to the

MINUTES FORM 90                                    Initials of Deputy Clerk   rs
CIVIL - GEN

plaintiff's claims.  <u>Mesa v. California</u>, 489 U.S. 121, 124-45, 134-35, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

As to the first and second factors, Foster Wheeler argues that it was acting under the direction of the United States Navy and its officers.  Acting under this direction, Foster Wheeler submits that it was not allowed to vary from design specifications approved by the Navy nor affix warnings to its boilers.  To prove that it followed with the directions of the Navy in design and manufacture of its products, Defendant Foster Wheeler filed several declarations – J. Thomas Schroppe, Ben Lehman and Lawrence Stillwell Betts – with their Notice of Removal.

To meet the third prong of removal under the Federal Officer Removal Statute, Foster Wheeler must submit a "colorable" federal defense.  Foster Wheeler submits that it intends to offer a "government contractor" defense, under the case <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).  Under <u>Boyle</u>, to establish a federal contractor defense, the defendant must prove (1) "The United States approved reasonably precise specifications" for the military equipment supplied by the contractor; (2) "the equipment conformed to those specifications;" and (3) "the [military contractor] warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States."

According to Foster Wheeler, the government contractor defense is available in a failure to warn case "where there is evidence that the government was involved in the decision to give, or not to give, a warning."  <u>Kerstetter v. Pacific Scientific Co.</u>, 210 F.3d 431, 438 (5th Cir.), <u>cert. denied</u> 531 U.S. 919 (2000).

## 2.    **Summary of Arguments**

Plaintiffs' Motion argues that the Complaint expressly disclaims all federal claims.  Instead, according to the Plaintiffs, they seek only to assert state-law duty to warn claims, and therefore, removal was not proper.  Plaintiffs also assert that the government contractor defense is untenable because Foster Wheeler has presented insufficient evidence

MINUTES FORM 90                                    Initials of Deputy Clerk ___rs___
CIVIL - GEN

to support the contention that the Navy specifically directed the design and production of boilers and auxiliary equipment.

### 3.   Burden on Removal

#### a.   The Well-Pleaded Complaint Rule and Plaintiff's Disclaimer

Plaintiffs argue that removal was improper because they disclaimed all federal remedies.  Plaintiffs' Complaint, paragraph 4, states:

> "Plaintiffs hereby disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave, which expressly excludes U.S. Navy vessels.  Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party Defendant committed at the direction of an officer of the United States Government."

Plaintiffs argue that such disclaimers are generally given effect as an extension of the well-pleaded complaint rule.  See, e.g., Jefferson County v. Acker, 527 U.S. 423, 430-31, 119 S.Ct. 2069 (1999).

Despite this rule, suits against federal officers "may be removed despite the nonfederal cast of the complaint."  Jefferson County, 527 U.S. at 430.  "The statute providing for removal of any civil action against the United States or any agency or officer thereof creates an exception to the well-pleaded complaint rule; even if a plaintiff's complaint does not, on its own, raise a federal question, federal jurisdiction is proper where a defendant establishes the statutory requirements."  Machnik v. Buffalo Pumps, Inc., 506 F.Supp.2d 99 (D. Conn. 2007).

#### b.   Application of 28 U.S.C. § 1442(a)(1)

Removal statutes are, as a general rule, narrowly interpreted.  See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  ("Removal statutes are to be strictly construed, and any doubts as to the right of removal be resolved in favor or remanding to state court.")  The

MINUTES FORM 90                              Initials of Deputy Clerk ___rs___
CIVIL - GEN

Federal Officer Removal Statute, however, is subject to a more liberal interpretation than the general federal removal statue. The Supreme Court has "held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow or grudging interpretation of 28 U.S.C. § 1142(a)(1)." Arizona v. Manypenny, 451 U.S. 282, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (quoting Willingham v. Morgan, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)).

The Ninth Circuit has stated: "[W]e do not interpret our jurisdiction under section 1442 so strictly…the Supreme Court has mandated a generous interpretation of the federal officer removal statute." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir. 2006). The Ninth Circuit noted, after describing the history of the Federal Officer Removal Statute: "We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." Id. at 1252 (citing Bradford v. Harding, 284 F.2d 307, 310 (2d Cir. 1960)).

Plaintiff submits that, despite this authority, the removal statute should be narrowly construed, and that Foster Wheeler, as a private party, "bear[s] a special burden in establishing the official nature of their activities." See Reply, p.2, citing Williams v. Gen. Elec. Co., 418 F.Supp.2d 610 (M.D. Penn. 2005), quoting Freiberg v. Swinerton & Walberg Property Svcs., Inc., 245 F.Supp. 2d 1144, 1150 (D.Colo. 2002). Even accepting that Foster Wheeler bears a "special burden" as a private party asserting a government contractor defense, for purposes of removal, Foster Wheeler need only advance a "colorable" government contractor defense for removal to be appropriate.

## 4.    Requirements for Federal Jurisdiction under 28 U.S.C. § 1442(a)(1)

As noted above, removal under 28 U.S.C. § 1442(a)(1) is appropriate where a Defendant:  (1) demonstrates that it acted under the direction of a federal officer; (2) demonstrates a causal nexus between the plaintiff's claims and the defendant's acts performed under color of federal office; and (3) raises a colorable federal defense to the plaintiff's claims.  Mesa v. California, 489 U.S. at 124-25, 134-35 (1989).

MINUTES FORM 90                                    Initials of Deputy Clerk ___rs___
CIVIL - GEN

a.    Whether Foster Wheeler Acted Pursuant to a Federal Officer's
Directions

Plaintiffs argue that "Foster Wheeler ... must provide evidence that the Navy – in its contract specifications – prohibited Foster Wheeler from issuing warning about the hazards of asbestos. Mot. at 7.

While the affidavits may be somewhat generic, they are sufficient to set forth a "colorable" claim of a government contractor defense.[1]  The declaration of J. Thomas Schroppe establishes that Foster Wheeler was required to follow the directions of the Navy. Mr. Schroppe was an employee and past president of Foster Wheeler.  His experience gives him sufficient personal knowledge to testify to the amount of control exercised by the Navy over its contractors.  He states that Foster Wheeler would not have been permitted to affix a warning label to a piece of equipment manufactured for the Navy.

The declaration of Admiral Ben J. Lehman also establishes that the level of control that the Navy exercised over its contractors.  Admiral Lehman acted in various capacities for the Navy from 1942 through 1954, including acting as a ship superintendent.  He also states that Foster Wheeler would not be permitted to affix a warning to equipment.

Further, Plaintiffs argue "Foster Wheeler offers no actual specification or contracts wherein the Navy ever precluded it from issuing warning about asbestos.  Foster Wheeler attempts to rely on the generic and previously-prepared declaration of J. Thomas Schroppe and Admiral Ben J. Lehman." Mot. at 8.

---

[1] In addition to the Affidavits submitted by Foster Wheeler, Defendant Leslie Controls submits a declaration with its Joinder.  This declaration is by Mr. Matt Wrobel, a corporate representative of Leslie Controls, is more general than that submitted by Foster Wheeler and covers a later time frame.  In addition, the Court notes that this Joinder was filed late, on January 25, 2008, after the time for Reply.  For this reason, the Court does not base its decision on the evidence and arguments submitted with the late-filed Joinder.

MINUTES FORM 90                                    Initials of Deputy Clerk   rs
CIVIL - GEN

-6-

With their Opposition to the Motion to Remand, however, Foster Wheeler submits a purchase order dated October 18, 1942, for boilers. This purchase order contains a 36 page appendix detailing the specifications for each piece of equipment. This demonstrates that all of the products produced by Foster Wheeler for the Navy were subject to strict controls and design specifications.

> **b.** Whether a Causal Nexus Exists Between the Defendant's Actions Under Color of Federal Office and Plaintiff's Claims

Similar issues regarding removal by federal contractors have arisen frequently. The more persuasive and analogous precedent support denying the motion to remand. In Ballenger v. Agco Corp., 2007 WL 1813821 (N.D. Cal. 2007), the plaintiff alleged that he was injured from exposure to asbestos while working on a shipyard that manufactured ships for the Navy.[2] The court determined, on evidence similar to that submitted here, that removal was proper. The court noted, in response to the plaintiff's evidentiary objections that defendants "[are] not required to produce contracts from decades past in order to demonstrate that it worked under the direction of federal officers; to require such documentation would frustrate the purpose of section 1442(a)(1)." Id. at *3 (citing Durham, 445 F.3d at 1252).

In Machnik v. Buffalo Pumps, Inc., 506 F.Supp.2d 99 (D. Conn. 2007), Defendant General Electric (GE) removed and the Plaintiff sought to remand. The court considered whether removal was proper, where GE claimed to provide goods and services to the U.S. Navy. The court stated the plaintiff's claims "against GE are based only upon his exposure to asbestos-containing products supplies by GE to the U.S. Navy. Because of this, once GE meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction." Id. at 104.

Plaintiff relies, in part, on In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (2d Cir. 1992). As Defendant Foster Wheeler submits, however, this case is distinguishable. In the Hawaii Federal Asbestos Cases, the Ninth Circuit found that the government contractor defense was unavailable because the asbestos-containing goods at issue were the same as

---

[2] The case is misidentified in the Defendant's papers but attached as exhibit B to their declaration.

MINUTES FORM 90                                    Initials of Deputy Clerk ___rs__
CIVIL - GEN

☑ 009/009

those commercially available.  That is, the goods at issue there were not specially produced for the government and according to government specifications.  Here, however, the boilers were built specially for combat vessels and according to detailed government specifications.

      c.      <u>Colorable Federal Defense</u>

      To support removal, Foster Wheeler needs to set forth a "colorable" federal defense. <u>Mesa v. California</u>, 489 U.S. 121, 133-34 (1989).  As noted above, Foster Wheeler seeks to assert a federal contractor defense, which requires proving three elements.  (1) "The United States approved reasonably precise specifications" for the military equipment supplied by the contractor; (2) "the equipment conformed to those specifications;" and (3) "the [military contractor] warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States."

      First, as noted above, Defendant must show that it acted under the direction of a federal officer.  "Whether a defendant is 'acting under' the direction of a federal officer depends on the detail and specificity of the federal direction of the defendant's activities and whether the government exercises control over the defendants." <u>Watson v. Phillip Morris Cos.</u>, 420 F.3d 852, 856-67 (8th Cir. 2005).  As noted above, it appears there was fairly specific direction and control over the equipment supplied.

      Second, the evidence of conformity with specifications is weak.  Nevertheless, the evidence is sufficient to set forth a "colorable" defense.

      Third, as set forth in the declaration of Dr. Betts, it is unlikely that Foster Wheeler held superior knowledge regarding asbestos and failed to warn the Navy.  The declaration of Dr. Betts details the level of knowledge the Navy had regarding the effects of exposure to asbestos.  Dr. Betts states that the Navy has had state-of-the-art knowledge regarding asbestos since the 1920s and exercised control over all warnings on equipment, such as boilers.  Mot. at 12.

MINUTES FORM 90                           Initials of Deputy Clerk   <u>rs</u>
CIVIL - GEN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

**CASE NO.: CV 08-501-R**                                   Date: **April 14, 2008**

**TITLE: LARRY LINDQUIST et al V. CLA-VAL CO., et al.**
======================================================================
**PRESENT:**

### HON. MANUEL L. REAL, JUDGE

<u>William Horrell</u>                                      <u>Sheri Kleeger</u>
**Deputy Clerk**                                           **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**

    Brian Barrow                              John Lister
                                Peter langbord


**PROCEEDINGS:**    Plaintiff's Motion for Remand to State Court



        **The Court hears arguments of counsel.**

        **The Court DENIES the motion.**


<u>5 min</u>


**MINUTES FORM 90**                              **Initials of Deputy Clerk   WH**
**CIVIL -- GEN**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

**CASE NO.: CV 08-712-R**                                     Date: **April 14, 2008**

**TITLE: DAVID KELEMAN et al V. BUFFALO PUMPS INC; CLA-VAL CO., et al.**
========================================================================
**PRESENT:**

### HON. MANUEL L. REAL, JUDGE

**William Horrell**                                           **Sheri Kleeger**
**Deputy Clerk**                                              **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**

   **Brian Barrow**                                     **John Lister**
                                                        **Peter langbord**

**PROCEEDINGS:**    Plaintiff's Motion for Remand to State Court

**The Court hears arguments of counsel.**

**The Court DENIES the motion.**

                                                        5 min

**MINUTES FORM 90**                        **Initials of Deputy Clerk   WH**
**CIVIL -- GEN**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

**CASE NO.: CV 08-282-R**                                        Date: **April 14, 2008**

**TITLE: TED MUNN and DONNA MUNN V. CLA-VAL CO., et al.**
============================================================================
**PRESENT:**

### HON. MANUEL L. REAL, JUDGE

**William Horrell**                                    **Sheri Kleeger**
**Deputy Clerk**                                       **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**

Brian Barrow                                   Thomas Moses
                                               John Lister
                                               Peter langbord
                                               Brian Davis

**PROCEEDINGS:**     Plaintiff's Motion for Remand to State Court


**The Court hears arguments of counsel.**

**The Court DENIES the motion.**



5 min

**MINUTES FORM 90**                            Initials of Deputy Clerk __WH__
**CIVIL -- GEN**



LEXSEE 2008 U.S. DIST. LEXIS 33715

**DAVID A. MARLEY, et al., Plaintiffs, vs. ELLIOT TURBOMACHINERY CO., INC., et al., Defendants.**

**CASE NO. 07-23042-CIV-JORDAN**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION**

*545 F. Supp. 2d 1266*; *2008 U.S. Dist. LEXIS 33715*

**March 12, 2008, Decided**
**March 13, 2008, Entered**

**COUNSEL:** [**1] For David Marley, Plaintiff: Case A. Dam, LEAD ATTORNEY, Ferraro Law Firm, Miami, FL; David Aaron Jagolinzer, LEAD ATTORNEY, Ferraro & Associates, Miami, FL.

For Pauline E. Marley his wife, Plaintiff: Case A. Dam, LEAD ATTORNEY, Ferraro Law Firm, Miami, FL; David Aaron Jagolinzer, LEAD ATTORNEY, John Joseph Clark, LEAD ATTORNEY, Ferraro & Associates, Miami, FL.

For Elliott Turbomachinery Co., Inc., Defendant: Edward Joy Briscoe, LEAD ATTORNEY, Helaine S. Goodner, LEAD ATTORNEY, Fowler White Burnett, Miami, FL.

For Viad Corporation f/k/a The Dial Corporation, Defendant: Abigail Morrison Cohen, LEAD ATTORNEY, Conroy Simberg Ganon Krevans & Abel, Hollywood, FL.

For Cleaver Brooks, Defendant: Timothy Clark, LEAD ATTORNEY, Timothy Clark, Plantation, FL.

For Buffalo Pumps Inc., Goodyear Tire & Rubber Company, Velan Valve Corp., Defendants: Kathleen Margaret LaBarge, LEAD ATTORNEY, Bice Cole Law Firm, Coral Gables, FL.

For Warren Pumps LLC, General Electric Company, Defendants: Evelyn Fletcher, LEAD ATTORNEY, Hawkins & Parnell, Atlanta, GA.

For Carrier Corporation, Defendant: David M. Hawthorne, LEAD ATTORNEY, Hugh J. Turner, Jr., LEAD ATTORNEY, Akerman Senterfitt & Eidson, Fort Lauderdale, FL.

For [**2] Crane Co., Defendant: Rebecca Carrie Kibbe, LEAD ATTORNEY, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Miami, FL.

For Ingersoll-Rand Company, Defendant: Steven A. Edelstein, Coral Gables, FL.

For American Optical Corporation, Defendant: Hugh J. Turner, Jr., LEAD ATTORNEY, Akerman Senterfitt & Eidson, Fort Lauderdale, FL.

For Garlock Sealing Technologies LLC, John Crane, Inc., Greene, Tweed & Company, Inc., Foster Wheeler Energy Corp., Defendants: M. Stephen Smith, III, LEAD ATTORNEY, Rumberger Kirk & Caldwell, Miami, FL.

For Alfa Laval Inc., Defendant: Frank Joseph Sioli, Jr, LEAD ATTORNEY, Brown Sims, P.C., Miami, FL.

For Kentile Floors, Inc., Defendant: Lori Anne M. Rovner, LEAD ATTORNEY, Virginia Easley Johnson, LEAD ATTORNEY, Foley & Mansfield, P.L.L.P., Miami, FL.

For General Motors Corporation, Defendant: Henry Salas, LEAD ATTORNEY, Cole, Scott, & Kissane P.A., South Miami, FL.

545 F. Supp. 2d 1266, *; 2008 U.S. Dist. LEXIS 33715, **

For E.I. Dupont De Nemours and Company, Defendant: Sergio Edward Pagliery, Shook Hardy & Bacon, Miami, FL.

For Goulds Pumps, Inc., Defendant: Peter Joel Frommer, LEAD ATTORNEY, Hinshaw & Culbertson, Fort Lauderdale, FL.

**JUDGES:** Adalberto Jordan, United States District Judge.

**OPINION BY:** Adalberto Jordan

**OPINION**

[*1269]  **AMENDED ORDER DENYING MOTION [**3] TO REMAND**

Elliott Turbomachinery and Viad removed this action to federal court pursuant to *28 U.S.C. § 1442(a)(1)*. Pending is the plaintiffs' motion to remand, arguing that the defendants had not sufficiently shown a federal colorable defense and a nexus between this action and their official duties. For the reasons stated below, the motion to remand [D.E. 2] is DENIED.

**I. FACTUAL BACKGROUND**

This action is in essence a dispute about the defendants' ability, under their contract with the Navy, to warn Mr. Marley that unprotected asbestos exposure could cause mesothelioma and other ailments. The defendants were retained by the Navy in the 1940s to manufacture numerous ship parts and devices for the *U.S.S. Lake Champlain*. The manufactured products contained asbestos but did not have any type of warning about the dangers of unprotected asbestos exposure.

Mr. Marley was a Navy sailor assigned to the *Lake Champlain* from 1959-1983. During his assignment, he was allegedly exposed to the asbestos contained in the defendants' products. As a result of this exposure, he allegedly developed mesothelioma. This suit is brought by Mr. Marley and his wife.

Elliot and Viad removed this action under §1442(a)(1), [**4] invoking federal officer jurisdiction. In support of removal, Elliot filed the affidavits of retired Admiral Ben J. Lehman and retired Admiral Roger B. Horne. [1]

1  Viad joined Elliot's removal filings.

**A. ADMIRAL LEHMAN**

Admiral Lehman joined the United States Navy in 1942 and remained on active duty until 1946. He served as ship superintendent and dry docking officer at the Brooklyn Navy Yard between 1942 and 1944. In 1950, he was assigned as a ship superintendent at the San Francisco Naval [*1270] Shipyard. During his Naval service, he was personally responsible for the creation of Navy specifications for the procurement of materials and machinery used on Navy vessels. He is familiar with Navy specifications, equipment manuals, and qualified product lists, which are used in the construction and repair of Navy and commercial ships. *See* Lehman Aff. at PP 1-2.

Admiral Lehman states that in the 1940s and 1950s, "the Navy had complete control over every aspect of each piece of equipment. Military specifications governed every characteristic of the equipment used on Navy ships, including the instructions and warnings ... Thus the Navy controlled the decision making with respect to instructions and warnings [**5] on every piece of equipment." *See id.* at P 7. Admiral Lehman further states that the "Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment ... The Navy determined the nature of hazards to be subject to any precautionary handling and the content of any such labeling." *See id.* at P 8.

Admiral Lehman's conclusion is (1) that manufacturers and suppliers were prohibited from providing any warning without the consent of the Navy, and (2) that "certain types of warnings would not have been approved by the Navy given the necessary performance needs and capabilities of the shipboard equipment, the ships, and Navy personnel. This would have included, but not been limited to, any potential warnings associated with asbestos including, but not limited to, recommendations regarding respiratory protection and repair and maintenance practices." *See id.* at P 10. According to Admiral Lehman, prior to the mid 1960s, the Nevy relied on its own occupational health program to provide training and prevent the hazards of asbestos to shipyard workers. *See id.* at PP 11, 13 (c).

**B. ADMIRAL HORNE**

Admiral Horne is a retired rear admiral of the [**6] United States Navy. He began his career in 1956. Throughout his Navy career, he concentrated in the areas of ship design, engineering, construction, overhaul, and inspection. He achieved the rank of chief engineer and deputy commander at the Naval Sea Systems Command for Ship Design and Engineering. *See* Horne Aff. at P 2.

According to Admiral Horne, it was common for the Navy to send inspectors to the plants of manufacturers to assure conformance with the Navy specifications and requirements. *See id.* at P 7. He also states that the Navy specifications covered the nature of any communication

affixed to products supplied to the Navy by third parties. "Vendors such as Defendants would not have been permitted (either under the specifications or, as a matter of Navy practice) to attach any type of warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos, without prior discussion, approval and acceptance by the Navy." *Id.* at P 12.

Admiral Horne concludes that any warning affixed by a vendor "would have been rejected as contrary to the Navy protocols for instruction and training relating to use of asbestos materials." *See id.* "The Navy [**7] determined to address the potential hazards of asbestos on Navy ships through training and not through warnings." *See id.* at P 14.

## II. ANALYSIS

I conclude that removal of this action was appropriate under the federal officer removal statute.

A state-court action against any person acting under the direction of an [*1271] officer of the United States or its agencies can be removed to federal court pursuant to *§ 1442(a)(1)*. The purpose of *§ 1442(a)(1)* is to permit the removal of "those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed ... under color of office." *See Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1427 (11th Cir. 1996)*(internal citations omitted). The statute reflects Congress' intent "to provide a federal forum for cases where federal officials must raise defenses arising from their official duties." *See id.* As such, *§ 1442(a)(1)* is an exception to the well-pleaded complaint rule, which generally precludes removal where a federal question is not apparent within the four corners of the complaint. *See Mesa v. California, 489 U.S. 121, 136-37, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989)*.

Removal under *§ 1442(a)(1)* generally depends on the [**8] satisfaction of two separate requirements. First, the defendant must *"advance a 'colorable defense arising out of [his] duty to enforce federal law.'" See Magnin, 91 F.3d at 1427* (internal citations omitted, emphasis added). Second, the defendant must establish that the suit is for acts performed "under the color of office." This requirement is satisfied by showing "'a causal connection' between what the officer has done under asserted official authority and the action against the defendants." *See id. See also Jefferson Co. v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)*(internal citations omitted). I find that the defendants have made a sufficient showing on both requirements.

### A. A COLORABLE DEFENSE

The defendants have advanced a colorable federal defense to the plaintiffs' claims. A colorable defense is a defense that is "plausible." *See Magnin, 91 F.3d at 1427 (citing Mesa, 489 U.S. at 129)*. In construing the colorable federal defense requirement, the Supreme Court has rejected "a narrow grudging interpretation" of the term, "recognizing that 'one of the most important reasons for removal is to have the validity' of the defense of official immunity tried in a federal court." *See Jefferson, 527 U.S. at 432* [**9] (internal citations omitted). *See also Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969)* ("We ... do not require the officer virtually to " win his case before he can have it removed.") Thus, a defense may be colorable even if the court ultimately rejects it. Indeed, no determination of fact is required at the removal stage. All a removing defendant needs to do is to make a showing that his federal defense "is not without foundation and made in good faith." *See Nesbiet v. Gen. Electric, 399 F.Supp.2d 205, 211 n.44 (S.D.N.Y. 2005)* (internal citations omitted).

With this standard in mind, I turn to the federal defense advanced in this case. The defendants have raised a federal contractor defense to the plaintiffs' failure to warn claims. *See* Not. of Removal [D.E. 1] at P 9. The defendants contend that their "alleged failure to warn of the hazards of asbestos resulted from the Navy's prohibition of such warnings." *See id.* at 10.

The Supreme Court recognized the federal contractor defense in *Boyle v. United Techs., Corp., 487 U.S. 500, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988)*. *Boyle* involved the crash of a United States Marine helicopter in a training exercise off the Virginia coast. The pilot survived the accident impact, but [**10] he could not open the helicopter's outward escape hatch and drowned. The pilot's estate sued the manufacturer of the helicopter, alleging that the escape hatch should have been designed to open inward to facilitate escape. The manufacturer's [*1272] defense was that it had designed the helicopter pursuant to government specifications requiring an escape hatch that swung outward. On these facts, the Court held that liability for design defects in military equipment could not be imposed under state law when (1) the government approved reasonably precise specifications, (2) the equipment conformed to those specifications, and (3) the supplier warned the United States about dangers known to the supplier but not known to the United States. *See 487 U.S. at 512*.

The Eleventh Circuit extended the holding of *Boyle* to failure to warn claims in *Dorse v. Eagle-Picher Indus., Inc., 898 F.2d 1487, 1489 (11th Cir. 1990)*. [2] Like this case, *Dorse* involved a claim that a manufacturer had failed to warn about the hazards of asbestos. The court noted that the federal contractor defense bars liability when (1) the case concerns an area of uniquely federal

interest and (2) there is "a significant conflict" between [**11] an identifiable federal policy or requirement and a state law duty. The defense fails as a matter of law, however, if the contractor can "comply with both its contractual obligations and the state-prescribed duty of care." *See id. at 1489* (internal citation omitted). [3]

> 2   The *Dorse* panel adopted the reasoning of the district court's order granting summary judgment in favor of the plaintiff on the defendant's government contractor defense.
>
> 3   The Eleventh Circuit ultimately concluded that the defendant had failed to produce sufficient evidence indicating that his contractual obligations prevented compliance with the state law duty to warn and entered summary judgment in favor of the plaintiff. *See 898 F.2d at 1489.* The summary judgment standard is obviously significantly higher than the colorable defense standard.

The parties do not dispute that the procurement of Navy vessels (and parts for those vessels) is an area of uniquely federal interest. *See Boyle, 487 U.S. 504-505* (civil liability arising from performance of procurement contracts with government is an area of "uniquely federal interest"); *Dorse, 898 F.2d at 1489* ("procurement of asbestos in World War II for naval ships is undeniably [**12] an area of uniquely federal interest"). The dispute in this case is whether the defendants have shown a "good faith foundation" to argue that there was a conflict between their contractual obligations with the Navy and the state law duty to warn.

To satisfy their burden, the defendants have filed the affidavits of Admiral Lehman and Admiral Horne. According to Admiral Lehman, in the 1940s and the 1950s the Navy dictated every aspect of the warnings associated with its ships and did not permit deviation by any of its contractors. He concludes that the Navy would have rejected any asbestos warning suggested by the defendants as contrary to its policy to deal with the asbestos problem through training and not through warning. *See* Lehman Aff. at P 10. Admiral Horne concurs with Admiral Lehman and states that "any request to include a warning regarding asbestos in an equipment manual would have been rejected as contrary to Navy protocols for instruction and training relating to use of asbestos materials." *See* Horne Aff. at P 15.

The affidavits of Admiral Lehman and Admiral Horne are not unique to this case. Almost identical affidavits have been filed by the defendants in lawsuits all over [**13] the country. District courts, however, are split on whether these are sufficient to "advance" a colorable government contractor defense.

In *Nesbiet*, for example, the court concluded that the affidavits were sufficient to [*1273] satisfy the removing defendant's burden. The court emphasized that at this stage of the proceedings the defendant had to "demonstrate merely that its claim to the military contractor defense is 'colorable.'" *See 399 F.Supp.2d at 212.* Similarly, in *Harris v. Rapid American Corp.*, the court recently held that the affidavits, albeit general in nature, were sufficient to support removal. *See 532 F. Supp. 2d 1001 (N.D.Ill. 2007). See also Contois v. Able Indus., Inc., 523 F.Supp.2d 155, 160 (D.Conn. 2007); Ballenger v. Agco Corp., 2007 U.S. Dist. LEXIS 47042, 2007 WL 1813821 (N.D.Call. June 22, 2007).*

On the other hand, several courts have held that these type of affidavits are too general and vague to satisfy the removal burden of proof. *See e.g., Hilbert v. McDonnell Douglas Corp., 529 F. Supp. 2d 187 (D.Mass. 2008); Westmiller v. IMO Indus., Inc., 2005 U.S. Dist. LEXIS 29371, 2005 WL 2850334, *2 (W.D. Wash. Oct. 20, 2005); Schilz v. A.P. Green Indus., Inc., 2002 U.S. Dist. LEXIS 1176, 2002 WL 102608, *1 (N.D.Cal. Jan. 15, 2002).*

After reviewing [**14] these cases, I conclude that the affidavits of Admirals Lehman and Horne are sufficient to "advance" a colorable federal contractor defense. Without a doubt, the affidavits are lacking on specificity and leave a lot of room for speculation. But at this stage, they do provide a good faith foundation to show (1) that the Navy controlled the warnings to be affixed on parts manufactured by independent contractors, and (2) that the Navy was likely to reject any asbestos warning given its policy to deal with the asbestos problem exclusively through training.

I agree that the Admirals' depositions in other cases suggest that they do not know of any instance when the Navy prohibited a warning proposed by a manufacturer or supplier. I also understand that there is a dispute as to whether the Navy manuals encouraged or prohibited the use of warnings. These arguments undermine the credibility of the Admirals, and raise a number of questions that the defendants will have to answer to ultimately prevail on their defense. But that is a merits question for another day. I do not need to determine credibility or likelihood of success at the removal stage. Factual disputes about the Admirals' testimony [**15] should be resolved in federal court as long as the defendants have a good faith foundation for their contractor defense. *See Magnin, 91 F.3d at 1427-28.* Because I find that the defendants have satisfied this low standard, removal was proper.

## B. CASUAL NEXUS AND "ACTING UNDER" REQUIREMENTS

Although some courts treat the casual nexus and "acting under" requirements separately, both issues tend to "collapse into a single requirement: that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct order or to comprehensive detailed regulations." *See In re Methyl Tertiary Butyl Ether Prod., 488 F.3d 112, 125 (2d Cir. 2007). See also Magnin, 91 F.3d at 1429* (analyzing both requirements together). In other words, the defendants need to show that "his relationship to the plaintiff 'derived solely from his official duties.'" *See Magnin, 91 F.3d at 1427-28 (citing Willingham, 395 U.S. at 406).*

It is undisputed at this stage that the defendants manufactured and supplied the asbestos-containing products in the course of their contractual relationship with the Navy. Admiral Lehman's affidavit sufficiently establishes that the defendants were acting [**16] under federal authority when they supplied the asbestos-containing parts without warnings. Admiral Lehman generally states that the Navy has control over "what warnings should or should not be included." *See* Lehman Aff. at P 7. He [*1274] further states that "the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment." *See id.* Therefore, there is no question that the defendants' relationship with the plaintiff derived solely from the defendants' official duties. This is sufficient to establish a casual nexus under *Magnin. See 91 F.3d at 1429*

The plaintiffs suggest that the defendants need to show that the Navy actually prohibited asbestos warnings to establish a "casual nexus" at the removal stage. I disagree. "Just as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute ... so would demanding an airtight case on the merits in order to show the required causal connection." *Jefferson County, 527 U.S. at 432-33.* All a defendant needs to do to show a casual nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract [**17] with the Navy. *See Magnin, 91 F.3d at 1427-28.* This the defendants have done. [4]

4   The recent Supreme Court decision in *Watson v. Philip Morris Co., 127 S.Ct. 2301, 168 L. Ed. 2d 42 (2007)* is not helpful to the plaintiffs' position. *Watson* stands for the proposition that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *See 127 S.Ct. at 2308.* As the Court explained the term "acting under" requires "an effort to assist, or to help carry out the duties or tasks of the federal superior." *See id. at 2307.* Here, plaintiffs' own complaint indicate that the defendants were hired by the Navy to manufacture the ship parts and devices that the Navy ultimately installed in the *Lake Champlain. See* Compl. Exposure Sheets. This is sufficient to show that the defendants helped carry out the Navy's duties or tasks.

## C. DISCLAIMER

Finally, I reject the plaintiffs' argument that the disclaimer of any claim arising from an act or omission compelled by the Navy warrants remand. In their complaint, the plaintiffs allege that:

> Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an [**18] act or omission on a federal enclave, or any federal office of the U.S. or agency or person acting under him occurring under color of such office.)

Compl. at P 5.

This disclaimer is circular. Its applicability depends on a determination of the core question in this case: whether the defendants's purported omission - the failure to warn - was required or caused by their contractual relationship with the Navy. If the failure to warn was required by the Navy, the disclaimer applies and the plaintiffs' claims fail as a matter of law. If the failure to warn was not required by the Navy, then the disclaimer does not apply. The problem with this argument is that the defendants have the right to have this question decided in federal court. *See Jefferson, 527 U.S. at 432* (defendants have a right to have "the validity" of the defense of official immunity tried in a federal court").

I understand that a number of courts have found that federal liability disclaimers defeat removal under § 1442(a)(1). *See e.g., Westbrook v. Asbestos Defendants, 2001 U.S. Dist. LEXIS 11575, 2001 WL 902642, *3 (N.D.Cal. July 31, 2001).* The disclaimers in those cases, however, waived any liability arising out of work done on federal premises, irrespective [**19] of whether the work was done under the requirements of a federal agency or not. In contrast, the disclaimer here is more limited and is contingent on the Navy's contractual limitations and specifications. [*1275] I am reluctant to find that the plaintiffs can defeat a government contractor's right to remove by disclaiming any claim arising from any act or omission compelled by a government agency. Such a circular disclaimer would defeat the purpose § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government.

545 F. Supp. 2d 1266, *; 2008 U.S. Dist. LEXIS 33715, **

## III. CONCLUSION

In sum, while Admiral Lehman's and Admiral Horne's affidavits fall far short from establishing that the defendants were not able to warn Mr. Marley about the danger of unprotected asbestos exposure, they are sufficient to "advance" a colorable government contractor defense and establish a nexus between this action and the defendants' official duties. Removal was appropriate. Accordingly, the plaintiffs' motion to remand is denied.

Unless this case is transferred to the Multi-District Litigation Panel before then, the parties shall file the joint scheduling report required by Local Rule 16.1(B)(2) by [**20] March 21, 2008.

DONE and ORDERED in chambers in Miami, Florida, this 12th day of March, 2008.

/s/ Adalberto Jordan

Adalberto Jordan

United States District Judge



LexisNexis·

LEXSEE 2008 U.S. DIST. LEXIS 27857

### WILLIAM A. O'CONNELL v. FOSTER WHEELER ENERGY CORPORATION, A.W. CHESTERTON COMPANY, and BUFFALO PUMPS, INC.

### CIVIL ACTION NO. 08-10078-RGS

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

*544 F. Supp. 2d 51; 2008 U.S. Dist. LEXIS 27857*

### April 7, 2008, Decided

**COUNSEL:** [**1] For Foster Wheeler Energy Corporation, Defendant: Victoria M. Almeida, Mark O. Denehy, LEAD ATTORNEYS, Adler Pollock and Sheehan PC, Providence, RI.

For Buffalo Pumps, Inc., Defendant: David M. Governo, Bryna Rosen Misiura, Michael D. Simons, LEAD ATTORNEYS, Marianne E. Brown, Governo Law Firm LLC, Boston, MA.

For William A. O'Connell, Plaintiff: Edward P. Coady, LEAD ATTORNEY, Coady & Associates, Boston, MA; David W. Fanikos, Coady Law Firm, Boston, MA.

For A.W. Chesterton Company, Defendant: Tracy A.R. Jolly, John B. Manning, Jonathan F Tabasky, LEAD ATTORNEYS, Cooley, Manion & Jones, LLP, Boston, MA.

**JUDGES:** Richard G. Stearns, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Richard G. Stearns

**OPINION**

[*53] MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR REMAND

April 7, 2008

STEARNS, D.J.

Plaintiff William A. O'Connell was diagnosed with malignant mesothelioma in July of 2007. O'Connell alleges an exposure to asbestos while working at the Fore River Shipyard (Fore River) in Quincy, Massachusetts, from approximately 1960 to 1961. O'Connell claims that defendants, including Buffalo Pumps, Inc., (Buffalo Pumps), [1] [**2] were negligent and breached a duty under state law by failing to warn him of the health hazards associated with asbestos.

> 1   Buffalo Pumps manufactured and supplied pumps for United States Navy ships.

O'Connell filed this action in Middlesex Superior Court on November 9, 2007. On January 18, 2008, Buffalo Pumps filed a notice of removal pursuant to *28 U.S.C. § 1442(a)(1)*, the Federal Officer Removal Statute (FORS). [2] On February 6, 2008, O'Connell filed a motion to remand. [3] Buffalo Pumps filed its opposition on March 11, 2008. [4]

> 2   Specifically, *section 1442(a)(1)* provides: "A [**3] civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." *28 U.S.C. § 1442(a)(1)*.
> 3   O'Connell also requests costs and fees incurred as a result of the removal pursuant to *28 U.S.C. § 1447(c)*.

Case MDL No. 875   Document 5838   Filed 05/08/09   Page 241 of 245

Page 2

544 F. Supp. 2d 51, *; 2008 U.S. Dist. LEXIS 27857, **

4   No other defendant filed a brief in opposition to the motion to remand.

## DISCUSSION

Under FORS, an action filed in state court may be removed, despite the non-federal cast of the complaint, if: (1) the defendant can demonstrate it was acting under the direction of a federal officer or agency; (2) the defendant has a colorable defense under federal law; and (3) a causal connection exists between the defendant's acts or omissions and the claims [**4] asserted by the plaintiff. 5 See *Mesa v. California*, 489 U.S. 121, 132-134, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 196 (D. Mass. 2008); *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005). The defendant bears the [*54] burden on all three elements. See *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 831 (1st Cir. 1997). At issue here is whether Buffalo Pumps can assert a colorable federal defense to O'Connell's failure to warn claim. 6

5   Although removal statutes are typically construed narrowly, the purpose of FORS is to ensure a federal forum for defenses of official immunity. See *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969). Accordingly, the policy favoring removal "should not be frustrated by a narrow, grudging interpretation of *§ 1442(a)(1).*" Id.

6   O'Connell has expressly waived any claim based on defective design and "any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of party committed at the direction of an officer of the United States Government." Complaint at P 4. In O'Connell's view, this disclaimer eliminates federal subject matter [**5] jurisdiction, including any that would attach under FORS This is not the law. The removal statute creates an exception to the well-pleaded complaint rule. See *Jefferson County v. Acker*, 527 U.S. 423, 430-431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999); *Mesa v. California*, 489 U.S. 121, 136, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989). "[R]egardless of whether the plaintiff's cause of action rests on state law . . . once [defendant] meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction." *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007). See also *Ballenger v. Agco Corp.*, No. 06-2271-CW, 2007 U.S. Dist. LEXIS 47042, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007)

(denying motion to remand despite the disclaimer of "[e]very claim arising under the Constitution, treaties, or laws of the United States . . . includ[ing] any claim arising from an act on a Federal Enclave as defined by *Article I, section 8, clause 17 of the United States Constitution* . . . any claim arising from any act or omission of the United States, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed [**6] under specific direction of the United States, any agency thereof or any Officer of the United States.").

### Colorable Federal Defense

Buffalo Pumps asserts that it is immune from state tort liability on grounds that it was acting as a military contractor at the time of O'Connell's alleged asbestos exposure. See *Boyle v. United Techs., Corp.*, 487 U.S. 500, 506, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988) (analyzing a design defect defense under FORS). The purpose of the defense is to shield government contractors from state tort liability for defects in military equipment where there is a "significant conflict" between state law and the "uniquely federal interest" in immunizing the trade-off between greater safety and greater combat effectiveness. *Id.* at 511-512. To demonstrate a colorable military contractor defense in a failure to warn context, 7 the contractor must produce sufficient evidence suggesting a genuine conflict between its federal obligations and a state law imposing liability for the failure to warn. State law will be displaced if the contractor can show that: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) [**7] the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-1004 (7th Cir. 1996) (applying the military contractor defense announced in *Boyle, supra*, to failure-to-warn claims). For removal purposes, the defendant's showing need only be plausible; not necessarily conclusive of the issue. See *Jefferson County*, 527 U.S. at 431.

7   Although the First Circuit has yet to address the federal contractor defense in the failure to warn context, the court will follow persuasive opinions in other circuits which have held that the defense should apply. See *Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 350 (4th Cir. 1998) (citing to cases from the Second, Fifth, Sixth, Seventh, and Ninth Circuits).

Buffalo Pumps argues that the communication of safety and health information [*55] about asbestos to Fore River workers was a matter exclusively within the Navy's control. Buffalo Pumps offers the affidavits of the following four persons in support of its position: (1) Roger Horne (Horne Affidavit), a retired Rear Admiral of the United States Navy; (2) Dr. Samuel Forman (Forman Affidavit), [**8] the proprietor of an occupational health clinic monitoring asbestos exposure and a student of the Navy's historical awareness of asbestos hazards; (3) David Sargent Jr. (Sargent Affidavit), also a Navy Rear Admiral; and (4) Martin Kraft (Kraft Affidavit), the current production manager for Buffalo Pumps. The affidavits and attached exhibits clearly establish a plausible federal contractor defense.

The analysis required by the first and second elements of the Boyle defense are closely tied. Under the first prong, the defendant must establish that the United States approved "reasonably precise specifications" for the equipment supplied by the contractor, including the appropriate wording of any warnings regarding a potential hazard. See *Hilbert, 529 F. Supp. 2d at 198*. Although the contractor need not show that the government prohibited it from supplementing the warnings with warnings of its own, it must produce evidence that it was acting within the parameters of reasonably precise specifications imposed by the United States. Cf. *Oliver, 96 F.3d at 1004* (there must be an element of constraint; while a *dictat* is not required, government oversight must extend beyond the mere "rubber stamping" [**9] of a contractor's unilateral conduct). A defendant will meet its burden under the second element of the test if it can demonstrate that "any deviation from [the government's] specifications would likely have resulted in rejection of the equipment." *Nesbiet, 399 F. Supp. 2d at 212*. See also *Hilbert, 529 F. Supp. 2d at 198 n.11*.

Buffalo-Pumps satisfies the first two elements by virtue of the Horne and Sargent Affidavits. Admiral Horne attests to his work as a naval ship engineer and his personal knowledge of naval ship specifications, including centrifugal pumps and related equipment, during the time of O'Connell's employment at Fore River. The Sargent Affidavit is relevant to establishing the historical pervasiveness of Navy control overall aspects of shipbuilding contracts. [8] Considered together, the affidavits reasonably establish that the specifications for the pump component supplied to the Navy by Buffalo Pumps were detailed, precise, and under the Navy's pervasive control. They also demonstrate that the Navy insisted on a meticulous review and approval process for written materials accompanying components supplied to its ships. As Admiral Sargent explains:

[t]he Navy also had precise [**10] specifications as to the nature of the written materials to be delivered with equipment supplied to the Navy, which included engineering reference materials to assist the naval operators and maintenance personnel in servicing and maintaining such equipment and to assist the Navy training establishment to develop instructional materials and courses. These written materials are and were generically known as "instruction books" [*56] or "technical manuals." Through specifications, the Navy required that certain equipment be supplied with a defined number of copies of one or more instruction books or technical manuals.

Navy personnel participated intimately in the preparation and review of these instruction books and technical manuals in a standardized format used by the Navy. These manuals included safety information to the extent -- and only to the extent -- directed by the Navy. Manufacturers of components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to include any type of warning or caution statement in instruction books or technical manuals, beyond those required and approved by [**11] the Navy without prior discussion and approval by the Navy. The Navy dictated, reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis. The Navy . . . often created lengthy memoranda detailing word-by-word line edits to the content of technical manuals submitted for approval, including the wording of instructional material and warnings.

Sargent Affidavit, at PP 47-48. [9] Admiral Horne gives a similar explanation of the Navy's control over the content of any cautionary materials supplied by its contractors, as well as the reasons for that control:

[i]n addition to specifications regarding design and manufacturing of the equipment itself, the Navy also had detailed specifications that governed the form and content of written materials to be delivered with equipment, including pumps, supplied to the Navy. These written mate-

rials typically consisted of technical or instruction manuals that were designed to assist the Navy engineering staff in servicing and maintaining the equipment. Navy personnel participated in and approved the preparation of this kind of information. The Navy specifications for these manuals contained detailed direction [**12] as to the kinds of information to be included. . . .

The Navy relied on its training and procedures regarding general shipboard safety hazards, such as asbestos. The Navy believed that excessive warnings for common shipboard hazards led to apathy and resulting disregard of hazard. Thus, the Navy would not have permitted (either under the specifications or, as a matter of Navy practice) a vendor such as Buffalo Pumps to attach any type of warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos.

Horne Affidavit, at PP 11, 16. Admiral Sargent further emphasizes that the communication of safety and health information in written materials relating to pumps or other components had to be consistent with the Navy's overall practices and priorities, and the realities of its workplaces:

[t]he reasons for the Navy's detailed control over and review and approval of all written communication regarding equipment it procured was to ensure consistency of that information with the overall goals and priorities of the Navy in its operations. The Navy employed millions of uniformed and civilian personnel aboard thousands of vessels and at hundreds [**13] of land-based facilities around the world. The information provided [*57] with regard to equipment had to be consistent with the Navy's overall evaluation of the appropriate types and level of information its personnel required to efficiently perform their job responsibilities under a variety of circumstances. In addition, written communications regarding work practices, including safety precautions and equipment, had to be coordinated with the training of Navy personnel, the physical circumstances in which they performed their work, and the tools, protective devices and equipment

and other materials available aboard Navy vessels and at Navy installations.

Sargent Affidavit, at P 49.

8    Although Sargent's duty post-dates O'Connell's employment, he is competent to testify because in his service he was responsible for all "matters relating to both the technical and programmatic details of design, construction, delivery and support of both new and in-service aircraft carriers, expeditionary warfare and auxiliary ships of the Navy." Such "in-service" ships included those that were built as far back as the 1950's. The exhibits to Sargent's affidavit include revisions to a 1959 technical manual for [**14] a submarine pump, which contains specific cautionary (non-asbestos) language demonstrating the depth of the Navy's control over the details of the written materials contractors were required to distribute.

9    Admiral Sargent attaches to his affidavit a 1959 example of the detailed editing undertaken by the Navy of a draft manual submitted by a contractor for review and approval. Attached to the Kraft Affidavit is an additional example, in this case to a draft equipment manual Buffalo Pumps submitted to the Navy in 1966.

The third element of the test requires the contractor to have warned the government about hazards of which it had knowledge, but were unknown to the government. See Nesbiet, 399 F. Supp. 2d at 212. The Horne Affidavit satisfies this element. According to Horne, the Navy's knowledge of the dangers of asbestos on board its ships was far more advanced than anything that would have been known to a contractor like Buffalo Pumps. [10] Therefore, the third element is met and Buffalo Pumps has a colorable defense. [11]

10    According to the Horne Affidavit:

[t]he Navy had state of the art knowledge regarding the potential risks associated with exposure to asbestos and asbestos-containing [**15] products. Acting with this knowledge about asbestos-related hazards, the Navy affirmatively addressed the issue of asbestos-related safety precautions. The Navy established its MilSpecs to accounts for the safety precautions it deemed appropriate. In dealing with asbestos, the Navy conducted

Case MDL No. 875   Document 5838   Filed 05/08/09   Page 244 of 245

Page 5

544 F. Supp. 2d 51, *; 2008 U.S. Dist. LEXIS 27857, **

its own training, adopted its own precautionary measures and procedures and provided its own warnings where such warnings were deemed appropriate.

Horne Affidavit, at P 12.

11   Horne's testimony is further corroborated by Forman's affidavit, who, pursuant to Navy orders, reviewed the Navy's historical knowledge and practices in industrial hygiene in relation to asbestos. Forman cites to several Navy studies verifying that as early as 1922, the Navy recognized and attempted to mitigate the harm of exposure by seamen to asbestos. Foreman Affidavit, P 14. Forman cites to a study appearing in a 1947 issue of the Navy's Safety Review, which noted the potential health hazards resulting from asbestos exposure. Foreman Affidavit, P 32. Further, Forman cites to a 1958 safety handbook for pipefitters which warned of the dangers of asbestos and the need to wear dust respirators. Foreman Affidavit, P 37.

O'Connell [**16] argues that the affidavits submitted by Buffalo Pumps closely track those that were rejected by the district court in Hilbert, [12] and urges this court to follow suit. Hilbert, however, is not persuasive in the disposition of this case because of two essential differences in the [*58] showings by defendant. First, although the plaintiff in Hilbert claimed exposure to asbestos while serving in the Navy, the Hilbert defendants failed to produce an affiant with personal knowledge of the Navy's shipbuilding program. See Hilbert, 529 F. Supp. 2d at 200 (finding that the "most important" affiant was deficient because his knowledge was limited to Air Force practices, while the plaintiff was exposed while serving in the Navy). Here, Buffalo Pumps has submitted the affidavits of Admirals Horne and Sargent; both of whom have personal knowledge of the detailed specifications imposed on contractors by the Navy during the period of O'Connell's alleged exposure. Accordingly, the affiants do not resort to the level of "speculation" that the Hilbert court found objectionable. [13] Second, the Hilbert defendants failed to provide any evidence that the Navy regulated the content, and not just the form, of the [**17] relevant written materials. See id. at 201. Buffalo Pumps, however, has submitted examples of detailed, word-by-word, revisions provided by the Navy upon review of written manuals and instructions. Accordingly, the court does not find the Hilbert decision to be applicable.

12   O'Connell cites Hilbert for the proposition that in order to avail itself of the federal contrac-

tor defense a defendant must provide either: (1) non-testimonial evidence that the military affirmatively prohibited warnings (e.g., contracts or regulations); or (2) evidence that the contractor tried to give an asbestos warning, but was stopped by the Navy. The court disagrees with that characterization of the opinion. While citations to regulations or contractual provisions barring warnings would certainly be sufficient to state a colorable claim, the weight of the cases suggest that there is no "strict requirement that the government 'prohibit' warnings altogether or 'dictate' the contents of the warnings actually incorporated." Oliver, 96 F.3d at 1004 n.8. See also Quiles v. Sikorsky Aircraft, 84 F.Supp. 2d 154, 171 n.5 (D. Mass. 1999). Indeed, what concerned the Hilbert court was the complete lack of testimony from [**18] individuals with personal knowledge of the matters at hand. See Hilbert, 529 F. Supp. 2d at 202-203 ("[The defendants'] argument thus boils down to a bald, unsupported assertion that if they had attempted to warn about the hazards of asbestos, the government would have exercised its discretion to bar the warning. At least on this record, that sort of speculation is not remotely adequate. It does not come close to demonstrating -- even colorably -- that the government exercised its discretion to issue 'reasonably precise specification' as to health and safety warnings.").

13   To the extent that O'Connell takes issue with statements in the affidavits regarding general Navy practices, the court notes that his Complaint is not limited to any one ship or employer. O'Connell's allegations are directed towards exposure "during the course of his employment at the Fore River Shipyard" while working on the USS Long Beach and "other ships."

Acting Under and Causal Connection

As a practical matter, this remaining element is closely bound to the determination that Buffalo Pumps has a colorable military contractor defense. Since the Navy issued reasonably precise specifications as to the warnings, the [**19] court concludes, for purposes of this motion, that: (1) the Navy exercised a substantial degree of control over Buffalo Pumps's provision of warnings; and (2) the Navy's control over these warnings impeded Buffalo Pumps's ability to independently fulfill its state law obligation to warn of the dangers of asbestos (if indeed it knew of these dangers). See Nesbiet, 399 F. Supp. 2d at 212; Contois v. Able Indus., Inc., 523 F. Supp. 2d 155, 161 (D. Conn. 2007). Buffalo Pumps has therefore satisfied all three elements of the statute and the case was properly. removed. [14]

544 F. Supp. 2d 51, *; 2008 U.S. Dist. LEXIS 27857, **

14   The court is aware that removal of this case will require transfer to the asbestos multidistrict litigation in the Eastern District of Pennsylvania over plaintiff's objection.

ORDER

For the foregoing reasons, plaintiff's motion to remand this action to state court is DENIED. The parties' motions for a hearing are also DENIED.

SO ORDERED.

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE