JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 14 2009

FILED
CLERK'S OFFICE

**MDL 875**

PLEADING NO. 5840

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | § | |
| LIABILITY LITIGATION | § | CIVIL ACTION NO. MDL 875 |
| | § | |

This Document Relates to:

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| REGGY TAYLOR, Individually, KATHY LANE, | § | |
| Individually, and ROBERT M. TAYLOR, | § | |
| Individually and as Personal Representative of the | § | |
| Estate of Rose Taylor, Deceased, and | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | |
| | § | |
| | § | Civil Case No: A-08CA-017-LY |
| | § | |
| | § | |
| LUCENT TECHNOLOGIES INC., | § | |
| | § | |
| Defendant. | § | |

## LUCENT TECHNOLOGIES INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER 320
## RELATIVE TO CIVIL ACTION NO. A-08CA-017-LY (WD Texas, Austin Division)

Defendant Lucent Technologies Inc., now known as Alcatel-Lucent USA Inc., Individually and as successor in interest to Western Electric Company Inc. for the purpose of the claims asserted herein ("Lucent") hereby responds to Plaintiffs' Motion and Brief to Vacate the Conditional Transfer Order (CTO – 320), filed on or about March 25, 2009, as it relates to *Taylor, et al. v. Lucent Technologies Inc.*, Civil Action No. A-08CA-017-LY (W.D. Texas,

OFFICIAL FILE COPY

IMAGED MAY 1 4 2009

Austin Division)(hereinafter "Motion to Vacate").  Lucent respectfully submits that, based on the

facts and law as set forth below, Plaintiffs' Motion to Vacate should be denied.

## I.      Introduction and Procedural History

A.  Plaintiffs' Original Action in Texas State Court

Over three years ago, on or about January 18, 2006, counsel for Plaintiffs filed a lawsuit

on behalf of Rose Taylor and Robert Taylor in Travis County, Texas (Cause No. D-I-GN-06-

0196).  Plaintiffs alleged Mrs. Taylor suffered bystander exposure to asbestos, brought home on

the clothes and person of her husband, Robert Taylor.  Plaintiffs originally sued approximately

26 companies, including Lucent, claiming all of those defendants caused her injury.  Mrs. Taylor

was deposed on March 8, 2006.  Mr. Taylor was deposed on May 4, 2006.  Mrs. Taylor died in

June of 2006.  The case was transferred to the Texas Asbestos MDL (Cause No. 2006-19618).

B.  Plaintiffs' Action in New Jersey State Court

With the Texas action concurrently being litigated, on or about August 10, 2007, Plaintiff

filed the same lawsuit in New Jersey (Docket No. L-7062-07).[1]  The allegations and the

defendants in the New Jersey lawsuit were virtually identical to those in the pending Texas

lawsuit.  Accordingly, Lucent filed a Motion to Dismiss the New Jersey action based on the

principles of comity and *Forum Non Conveniens*.  While Lucent's motion was pending, on or

about November 6, 2007, seventeen months after Mrs. Taylor died and almost two years after the

original complaint was filed, Plaintiff nonsuited the Texas claims in an apparent attempt to keep

the matter in New Jersey.  Oral argument on Lucent's motion was heard on November 16, 2007.

Despite Plaintiffs' attempts to distance themselves from Texas courts in favor of a new forum,

the New Jersey action was dismissed by order dated December 10, 2007.

---

[1]      At this point Mr. Taylor had been substituted as the Personal Representative of the Estate of Rose Taylor.

C. Plaintiffs Refile Action in Texas Federal Court

On January 7, 2008, Plaintiffs filed the case again in Texas, but this time filed in federal court, in the Western District (Cause No. A-08CA-017-LY).[2]  In this action, Plaintiffs sued approximately 6 companies, including Lucent.  The case sat in the Texas Western District for eight months with basically no action by Plaintiffs, until approximately September 9, 2008, when Plaintiffs' attorney organized a Rule 26(f) conference call with all Defendants in the case.  The parties were not able to finalize a proposed scheduling order during that call, and Mr. Hendler agreed to organize another call to complete the Rule 26(f) requirements.  The next day, Mr. Hendler noticed a second deposition of his client Robert Taylor.  Mr. Hendler, however, never followed up on organizing another call, nor did he attempt to go forward with the second deposition of Mr. Taylor.  Instead, Plaintiffs began slowly contacting and dismissing Defendants.  Plaintiffs dismissed the last of Lucent's co-defendants on January 13, 2009.

On or about January 26, 2009, Mr. Hendler contacted counsel for Lucent requesting a day to discuss the case.  At that time, he did not state he wanted to conduct a Rule 26(f) conference.  When the scheduled call began, on January 30, 2009 at 4:00 p.m., Mr. Hendler stated it was to be a Rule 26(f) conference.  As counsel for Lucent was not aware of the nature of Hendler's call, she was not prepared to discuss Rule 26(f) matters.  In addition, counsel for Lucent informed Mr. Hendler that she would need to confirm with the Court certain of his representations to her before proceeding with the Rule 26(f) call.  Counsel for Lucent also informed Mr. Hendler of Lucent's intent to remove the matter to the MDL if he was not going to dismiss Lucent as he had

---

[2]      On June 10, 2008, Plaintiffs filed another lawsuit, this time against Mrs. Rose Taylor's former employer, claiming that Mrs. Taylor's exposure at work for many years is what led to her contracting mesothelioma.  *Taylor v. Dana Kepner Co., Inc.*, C.A. No. A 08 CA 64 OLY (W.D. Tx. Austin Div.). Upon information and belief, this case is still pending.

all the other Defendants.   Affidavit of Lenore L. Espinosa, dated March 19, 2009, ¶¶ 3-6 (attached as Exhibit A).

Apparently in response to learning of the impending removal, Mr. Hendler alleged (falsely) that Lucent refused to participate in a Rule 26(f) conference, and immediately submitted a unilateral proposed scheduling order to the Court.   As a result, the parties were called before the Court to discuss a scheduling order.   At that time, the Court provided a possible trial date and ordered the parties to reach some compromise as to deadlines for a standard scheduling order. The parties did as ordered and submitted that to the Court.   Throughout this process, Lucent maintained that transfer to the MDL was appropriate, and reiterated its intent to continue to pursue transfer of the case.   To date, the Court has entered neither the compromise scheduling order as submitted after the hearing, nor a scheduling order with the dates of the Court's own choosing.

## II.   The Health of a Non-Asbestos Plaintiff Does Not Impact Transfer of a Matter to the MDL

Plaintiffs' lead argument against transfer to the MDL is that Plaintiff Robert Taylor is in poor health.   *See* Motion to Vacate at 2-3.   The argument for expediting trials to allow someone their "day in court" typically applies to those plaintiffs suffering from the physical injury that is the subject of the lawsuit.   Mrs. Rose Taylor, on whose alleged asbestos-related injury this lawsuit is based, died in June 2006, almost three years ago.   Plaintiffs made no attempt to give her a "day in court."   To the contrary, Plaintiffs waited three years after the original filing of this suit, and placed this action in three separate courts, before pressing for any set scheduling order dates.   Plaintiffs only requested an expedited trial date, and claimed a health issue with regard to Mr. Taylor, after they were noticed of a possible transfer to the federal MDL.

Plaintiffs' counsel claimed his client's severe health issues entitled him to take a second video deposition of Mr. Taylor in March, 2009.[3]  Plaintiffs' counsel refused to continue the deposition even to the next week due to his alleged concern over Mr. Taylor's health.  Plaintiffs' counsel also represented this second deposition would be mainly to memorialize Mr. Taylor's alleged pain and suffering, and any additional alleged monetary damages, during the days leading up to Mrs. Taylor's death.  Based on these representations, Lucent agreed to go forward with this follow-up deposition as scheduled, but reserved its rights to continue to pursue removal of the case to the MDL.  At his deposition, Mr. Taylor testified that, while he does have diabetes and some other health issues, they do not limit his ability to get around.  He just goes a little slower.  He testified that he was currently in a rehabilitation facility (where the deposition took place) for some physical therapy type work to assist him in walking better.  Deposition of Robert Taylor, dated March 27, 2009 (hereinafter "Taylor Dep.") at 21-22; 28-30.[4]  He did not, however, testify that he had any health crisis necessitating expedited proceedings.  In fact, he testified that he "feel[s] pretty good all the time," was going home from the rehabilitation facility, and maintained an active schedule.  Taylor Dep. at 21-22; 30.

Since Mr. Taylor is not claiming he has suffered an asbestos-related personal injury, his health status provides no basis for either accelerating any asbestos related trial proceedings or prohibiting transfer to the MDL.  Even if it did, Plaintiffs' dilatory tactics in pursing their claims, their attempts at forum shopping, and Mr. Taylor's own testimony that he "feels good," clearly demonstrate that there is no factual basis for their argument.

---

[3]     Mr. Taylor was originally deposed on May 4, 2006 in the original lawsuit.

[4]     Excerpts from Robert Taylor's 2009 Deposition are attached as Attachment 1 to the Declaration of Morgan M. Culbreth.  Culbreth's Declaration is attached as Exhibit B to this Motion and is incorporated by reference.

### III.     Plaintiffs' Arguments That This Case Does Not Meet the Requirements of 28 U.S.C. § 1407 Must be Rejected

A.     The Cases Cited by Plaintiffs are not Applicable

Plaintiffs cite twenty-seven cases in their Motion to Vacate, arguing that those cases support their theory that transfer is inappropriate because the Taylor case (1) is a "well-developed action"; (2) presents "individualized issues"; and (3) can be handled effectively outside the Philadelphia MDL proceeding via "alternative" means.   What Plaintiffs have not provided, however, is a case even comparable to the situation currently before the Panel, in which transfer to the MDL of an asbestos personal injury tag along case was held improper for any reason.   Of the twenty-seven cases cited, twenty-two deal with one or more parties seeking an *initial* consolidation or centralization for their class of cases under 28 U.S.C. §1407.   They do *not* deal with whether a tag-along action should be transferred with other like cases already before the MDL.   More tellingly, of the twenty-seven cases cited by Plaintiffs, *only two* even relate to asbestos matters, and neither of those is applicable here.

Plaintiffs cite *In re Asbestos Products Liability Litigation (No. VI)*, 545 F. Supp. 2d 1362 (J.P.M.L. 2008) as support for their position that transfer is not proper.   This 2008 case, however, involved the MDL judge, on his own motion, suggesting that it was time for everything except the punitive damages issues to be remanded to the original venue.   In other words, the case was already before the MDL pursuant to a Section 1407 transfer order, and apparently had completed the pre-trial discovery phase that the MDL oversees.[5]   That case did *not* hold that the case was inappropriate for transfer, or improperly transferred, to the MDL.

---

[5]     Contrary to Plaintiffs' assertions, no reason was given for ordering the remand by the judge.   Importantly, however, this case shows that personal injury asbestos cases should be transferred to the MDL for appropriate pre-trial matters, and that judge will decide when it is appropriate for remand.

The only other asbestos case cited by Plaintiff -- *In re Asbestos School Prods. Liab. Litig.*, 606 F. Supp. 713 (J.P.M.L. 1985) -- involves asbestos property damage cases, not personal injury claims. That matter was decided several years prior to the 1991 transfer of all asbestos personal injury claims to the MDL pursuant to *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). Furthermore, in the 1991 transfer order, the Panel explains why, unlike the property damage matters, asbestos personal injury actions *should* be centralized for pre-trial proceedings under Section 1407 in one court.

B.      All Asbestos Personal Injury Cases are Properly Centralized Under §1407

As discussed previously, the sole asbestos personal injury case cited in the Motion to Vacate, *In re Asbestos Products Liability Litigation (No. VI)*, 345 F. Supp. 2d 1362 (J.P.M.L. 2008), never even discusses the issues currently raised by Plaintiffs. It deals solely with the Judge's decision that it was now time for some of the issues to be transferred back to the original venue. The previous case in the reporter volume, however, specifically addresses Plaintiffs' type of arguments, and affirms the conditional transfer order for several tag along asbestos personal injury cases. *See In re Asbestos Products Liability Litigation (No. VI)*, 545 F. Supp. 2d 1359 (J.P.M.L. 2008). This decision demonstrates Plaintiffs' motion is totally without merit.

In *In re Asbestos Products Liability Litigation (No. VI)*, 545 F. Supp. 2d 1359 (J.P.M.L. 2008), plaintiffs with five asbestos personal injury lawsuits pending in four districts moved to vacate the Conditional Transfer Order that would place them in the MDL, just as Plaintiffs are attempting to do here. The Panel denied the motion and transferred all the cases to the Eastern District of Pennsylvania for consolidated or coordinated pretrial proceedings. In so doing, the Panel found that:

> these actions involve common questions of fact with actions in
> this litigation previously transferred to the Eastern District of

> Pennsylvania, and that transfer of these actions to the Eastern
> District of Pennsylvania for inclusion in MDL No. 875 will serve
> the convenience of the parties and witnesses and promote the just
> and efficient conduct of the litigation.

*Id.*, at 1360.

The Panel did not list the specific arguments made by the plaintiffs as to why their

asbestos personal injury cases were somehow different from all the others which met the Section

1407 transfer criteria. The Panel did, however, refer back to its initial transfer order in 1991 for

the reasons why transfer was appropriate:

> We further find that transfer of these actions is appropriate for
> reasons that we set out in our original decision in this docket
> directing centralization of all pending federal court actions not
> then in trial involving allegations of personal injury or wrongful
> death caused by asbestos or asbestos-containing products. *See In
> re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp.
> 415 (J.P.M.L. 1991). Particularly, in our original decision
> distinctions based on such matters as <u>the pendency of motions or
> other matters</u> before the transfer or court, <u>the uniqueness of a
> party's status</u>, <u>the type of defendant</u>, the docket condition of any
> specific federal district, <u>the stage of pretrial proceedings</u>, the
> <u>presence of unique claims</u> or additional claims not relating to
> asbestos injury or death, and/or the unanimity of opposition to
> transfer by the parties to an action, were considered and rejected
> by us as grounds for carving out exceptions to transfer in this
> extraordinary docket. We are not persuaded to depart from this
> approach in dealing with the question of transfer of the present
> actions.

*In re Asbestos Products Liability Litigation (No. VI)*, 545 F. Supp. 2d at 1360-61 (footnotes

omitted; emphasis added).

C.    Plaintiffs Offer No Arguments Not Already Addressed by the Panel

Plaintiffs first argue that the case "is a well-developed action that has been effectively

managed" by the Texas District Court which, combined with the "lengthy pendency of this

action," justifies vacating the CTO. *See* Motion to Vacate, at 4-5. This case had been pending a

8

long time, however, not due to ongoing pretrial activity, but rather because of Plaintiffs' decision not to prosecute the matter. With the exception of Mr. Taylor's follow-up deposition in March 2009, which lasted less than one hour, the discovery undertaken on this matter occurred under one or more of the earlier iterations of this lawsuit in another court, starting in January 2006. The only involvement the District Court has had to date was a hearing in which it directed the parties to agree on some proposed deadlines. The Court has not even entered a Scheduling Order on those dates yet. Accordingly, Plaintiffs' arguments that this is a well developed action are factually lacking. Furthermore, these arguments are encompassed within the "pendency of motions or other matters" and the "stage of pretrial proceedings" arguments already addressed and soundly rejected by the Panel. *Id.*, 545 F. Supp. at 1361.

Next, Plaintiffs argue that there are no common questions of fact because Lucent is not a defendant in many MDL cases and the decedent's medical records and exposure data are highly individualized. *See* Motion to Vacate, at 7-8. Once again, these issues were previously rejected by the Panel – they are nothing more than arguments on the "type of defendant" and the "uniqueness of a party's status." *Id.* Furthermore, *every* person claiming that asbestos exposure resulted in personal injury or death has a unique medical history and exposure data. If that was a sufficient ground to prevent coordination under Section 1407, no asbestos cases would be in the MDL. This prong of Plaintiffs' argument is likewise totally without merit.

Last, Plaintiffs argue that there are alternatives to consolidation. *See* Motion to Vacate, at 9. The Panel, however, by consolidating all asbestos personal injury cases in 1991, and reaffirming that ruling and the associated rationale in 2008, has already determined these alternatives are not sufficient for these type cases. The cases cited by Plaintiff are not on point, not only because they do not involve asbestos personal injury matters, but because they all deal

9

with a very *limited* number of actions before the Panel requesting transfer for an *initial* consolidation under Section 1407. *See In re New Century Mortgage Corp. Prescreening Litig.*, 473 F. Supp. 2d 1383 (J.P.M.L. 2007) (denying initial consolidation under Section 1407 for three cases where Panel found no common questions of fact); *In re Lycoming Crankshaft Prods. Liability Litig.*, 473 F. supp. 2d 1380 (J.P.M.L. 2007) (denying transfer for initial consolidation under Section 1407 of three actions, two of which were already consolidated under a federal district court judge); *In re Edward D. Jones & Co., L.P., Overtime Pay Litig.*, 442 F. Supp. 2d 1370 (J.P.M.L. 2006) (denying transfer for initial consolidation under Section 1407 where only three actions involved); *In re Eli Lilly and Company (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978) (same). At the time the personal injury asbestos claims were first transferred to the Panel for consolidation, there were 26,639 actions pending in 87 federal districts. *In re Asbestos Products Liability Litig.*, 771 F. Supp 415, 416 (J.P.M.L. 1991). Clearly, the cases cited by Plaintiffs, dealing with a maximum of three actions, offer no support for their position.

Despite Plaintiffs' attempts to create a distinguishable situation, all of their contentions have been considered and rejected by the Panel. A review of the Panel's decision in *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991) clearly shows why Plaintiffs' arguments must fail even today. That matter came before the Panel on an order to show cause "why all pending federal district court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos should not be centralized in a single forum under 28 U.S.C. § 1407." In ultimately holding that "the actions in this litigation involve common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos-containing products, and that centralization under §1407 in the

Eastern District of Pennsylvania will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation," the Panel relied upon several crucial factors, including the fact that "a single transferee court" must be in place to coordinate all pending federal asbestos personal injury or wrongful death matters "in order to avoid duplication of effort (with concomitant unnecessary expenses) by the parties and witnesses, their counsel, and the judiciary, and in order to prevent inconsistent decisions." *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. at 421.  Plaintiffs have presented no new argument as to why the Panel's prior rationale and decisions should not apply to the present action. Accordingly, Plaintiffs' Motion to Vacate should be denied.

## IV.     CONCLUSION

The Panel has determined that "all pending federal personal injury or wrongful death asbestos actions not yet in trial ***must*** be included in § 1407 proceedings." 771 F. Supp. at 422. (Emphasis added).  To be sure, this is likely the reason why Plaintiffs' brief cites various MDL actions involving copyrights, patents, helicopter crashes, and non-asbestos product liability cases.  They have no choice but to rely on the wholly unrelated factual situations mentioned above to muddy the water because they lack the case law and facts to squarely address this Panel's prior rulings in *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991) and *In re Asbestos Products Liability Litigation (No. VI)*, 545 F. Supp. 2d 1359 (J.P.M.L. 2008).  The fact that Plaintiffs fail to cite even a single relevant asbestos personal injury decision from this Panel in support of their motion is evidence of the fact that prior precedent from the Panel mandates that this entire action be transferred to the docket of MDL 875.  Plaintiffs' Motion to Vacate the Conditional Transfer Order should therefore be denied.

Respectfully submitted,

_Morgan M. Culbreth_

Morgan M. Culbreth
TBN 24059631
Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
One Allen Center
500 Dallas, Suite 3000
Houston, Texas 77002-4709
Telephone: 713-655-5768
Facsimile: 713-655-0020
E-mail: morgan.culbreth@odnss.com
ATTORNEY FOR DEFENDANT LUCENT
TECHNOLOGIES, INC.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 14 2009

FILED
CLERK'S OFFICE

### CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2009, I filed the foregoing document with the Clerk of the Court for the United States Judicial Panel on Multidistrict Litigation via hand delivery and served a copy to each attorney listed below by the method indicated next to the attorney's name and to each attorney on the attached Involved Counsel List (excerpted from CTO-320).

Scott M. Hendler (hand delivery)
HendlerLaw, P.C.
816 Congress Avenue, Suite 1230
Austin, TX 78701
Telephone: 512.439.3200
Facsimile: 512.439.3201
Attorney for Plaintiffs

_Morgan M. Culbreth_

Morgan M. Culbreth

**IN RE:  ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**

MDL No. 875

## INVOLVED COUNSEL LIST (EXCERPTED FROM CTO-320)

Reggy Taylor, et al. v. Lucent Technologies, Inc., et al., W.D. Texas, C.A. No. 1:08-17
(Judge Lee Yeakel)

Peter G. Angelos
LAW OFFICES OF PETER G. ANGELOS
PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 211201

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Russell W. Budd
BARON & Budd pc
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Scott M. Hendler
HENDLERLAW, PC
816 Congress Avenue
Suite 1670
Austin, TX 78701

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shall Plaza
Houston, TX 77002-4995

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Seven Kazan
KAZAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street
Third Floor
Oakland, CA 94607

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX 75204

David C. Landin
HUNTON & WILLIAMS
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER &
MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia PA 19103


Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Harry Tracy Richardson, III
STRONG PIPKIN BISSELL &
LEDYARD LLP
595 Orleans
Suite 1400
Beaumont, TX 77701-3255

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street
30th Floor
Boston, MA 02110

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ &
TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 1 4 2009

FILED
CLERK'S OFFICE

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| REGGY TAYLOR, Individually, KATHY LANE, Individually, and ROBERT M. TAYLOR, Individually and as Personal Representative of the Estate of Rose Taylor, Deceased, and<br><br>Plaintiffs,<br><br>V.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    Civil Case No: A-08CA-017-LY<br>§<br>§<br>§ |

## AFFIDAVIT OF LENORE L. ESPINOSA

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **HARRIS COUNTY** | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Lenore L. Espinosa, known to me to be the person whose name is subscribed to this instrument, who having been by me first duly sworn, upon her oath deposes and states as follows:

1. "My name is Lenore L. Espinosa. I am over the age of twenty-one (21) years, of sound mind, capable of making this Affidavit, and fully competent to testify as to the matters stated herein. I have personal knowledge of all the facts stated herein, and they are true and correct.

2. On January 18, 2006, Scott Hendler ("Mr. Hendler") filed a lawsuit on behalf of Plaintiffs in Travis County, Texas (Cause No. D-1-GN-06-0196). Subsequently, the matter was transferred to the Texas Asbestos MDL (Cause No. 2006-19618). On November 6, 2007, Plaintiffs non-suited their Texas claims. (*See* Attachment 1,

1

Plaintiff's Notice of Nonsuit Without Prejudice).  On August 10, 2007, Plaintiffs then filed the same lawsuit in New Jersey (Docket No. L-7062-07).  The allegations in the New Jersey suit were almost verbatim to the former Texas suit.  Accordingly, the New Jersey Court granted Defendant Lucent Technologies Inc., Individually and as Successor-in-Interest to Western Electric Co.'s ("Lucent Technologies") Motion to Dismiss for *Forum Non Conveniens*.  (*See* Attachment 2, Order Granting Defendant's Motion to Dismiss for *Forum Non Cenveniens*).  Subsequently, on January 7, 2008, Mr. Hendler filed the present case (Cause No. A-08CA-017-LY) in the Western District of Texas on behalf of Plaintiffs.

3.  On or about September 9, 2008, Mr. Hendler, held a Rule 26(f) conference call with all Defendants in the case at that time.  However, the parties were unable to finalize a proposed scheduling order.  It is my recollection that Mr. Hendler was to subsequently contact Defendants and propose a date to continue the Rule 26(f) conference call.  Mr. Hendler did not do so; instead Mr. Hendler began to dismiss all Defendants, with the exception of Lucent Technologies.

4.  On or about January 26, 2009, Mr. Hendler then contacted me to schedule a time where we could discuss the case.  Mr. Hendler did not indicate that he wished to conduct a Rule 26(f) conference call.  The call was scheduled for Friday, January 30, 2009 at 4 p.m.

5.  During the Friday, January 30, 2009 conference call, Mr. Hendler informed me that the call was to be a Rule 26(f) conference call.  As I was not aware that the call was to be a Rule 26(f) conference, I was not properly prepared to discuss this matter.  Additionally, to my knowledge the Court had not issued a Rule 26(f) order.  Mr. Hendler then explained that per the Court's clerk, the Court does not issue an order; rather, the parties

should propose their own.  I then informed Mr. Hendler that I would contact the Court's clerk to confirm.   I also informed Mr. Hendler that Lucent Technologies intended to remove the case to the federal MDL.

6.  On or about Tuesday, February 3, 2009, Mr. Hendler contacted me without notice and informed me that he wanted to have a conference call with the Court's clerk to discuss the Court's procedures.  Again, as I had no notice of Mr. Hendler's intent to conduct a conference call with the Court's clerk, I was unable to participate at that time due to a deadline conflict.  On or about February 5, 2009, only two days after Mr. Hendler's February 3, 2009 call, I received notice of Plaintiff's Proposed Scheduling Order and his allegations that I had refused to participate in a Rule 26(f) conference.

7.  The facts surrounding this lawsuit have been in litigation since January 18, 2006.  Although the present case was filed on January 7, 2008, an unsuccessful Rule 26(f) conference was not conducted until September 9, 2008.  At all times Lucent Technologies has in good faith participated in all proceedings.  As Mr. Hendler did not give me any notice that he intended to conduct an additional Rule 26(f) conference, I was unable to participate in such a conference.

8.  Further affiant sayeth not."

_Lenore L. Espinosa_

SWORN TO AND SUBSCRIBED BEFORE ME and personally known to be LENORE L. ESPINOSA, this _19th_ day of March 2009, to certify which witness my hand and seal of office.

_Notary Public, State of Texas_

Allison Anne Nelson
My Commission Expires
12/13/2011

ATTACHMENT 1



CAUSE NO. 2006-19618

ROBERT M. TAYLOR, Individually and as §      IN THE DISTRICT COURT OF
Personal Representative of the Estate of §
ROSE TAYLOR, Deceased, §
§
Plaintiffs; §      HARRIS COUNTY, TEXAS
§
V. §
§
BONDEX, INC., et al §
§
Defendants. §
§      11th JUDICIAL DISTRICT

Transferred from
CAUSE NO. D-1-GN-06-0196

ROBERT TAYLOR Individually and as §      IN THE DISTRICT COURT OF
Personal Representative of the Estate of §
ROSE TAYLOR, Deceased, §
§
Plaintiffs, §
§
V. §      TRAVIS COUNTY, TEXAS
§
BONDEX, INC., et al §
§
Defendants. §      353rd JUDICIAL DISTRICT

PLAINTIFF'S NOTICE OF NONSUIT WITHOUT PREJUDICE

Plaintiff, ROBERT M. TAYLOR, Individually and as Personal Representative of the Estate

of ROSE TAYLOR, Deceased, hereby gives notice that they non-suit and dismiss without prejudice

their claims against All Remaining Defendants.

Respectfully submitted,
HENDLERLAW, P.C.

By:   _Scott M. Hendler_

Scott M. Hendler
Texas Bar No. 09445500
816 Congress Ave., Suite 1670
Austin, Texas 78701
Telephone: (512) 439-3200
Facsimile: (512) 439-3201
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Plaintiff's Notice of Nonsuit Without Prejudice to all Remaining Defendants has been served on all counsel of record via facsimile, CM/RRR, regular mail, LEXIS-NEXIS or hand-delivery on November 6, 2007.

Scott M. Hendler

ATTACHMENT 2

COHEN, PLACITELLA & ROTH
A Professional Corporation
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003
Attorneys for Plaintiffs

**FILED**

DEC 1 0 2007

JUDGE ANN McCORMICK

Robert M. Taylor, Individually, and as Executor of the Estate of his wife, Rose Taylor,

Plaintiffs,

v.

3M Company, et al.,

Defendants.

SUPERIOR   COURT OF NEW JERSEY
LAW DIVISION: MIDDLESEX COUNTY
DOCKET NO. MID-L-7062-07 AS

*Civil Action*

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR FORUM
NON CONVENIENS**

This matter having been opened to the Court by Thacher Proffitt & Wood, LLP, attorneys for defendant, Lucent Technologies, Inc., for an Order granting defendant's motion to dismiss plaintiff's complaint as to defendant Lucent Technologies, Inc., individually and as successor in interest to Western Electric Company, Inc., pursuant to the doctrine of *forum non conveniens*, and the Court having considered the papers submitted by the parties and the oral argument of counsel on Friday, November 16, 2007,

FOR THE REASONS SET FORTH
ON THE RECORD ON 11/16/07

IT IS ON THIS 10 DAY OF Dec, 2007, ORDERED AS FOLLOWS:

ORDERED that the Motion to Dismiss of Defendant Lucent Technologies, Inc. is hereby granted and the Complaint is hereby dismissed without prejudice as to Defendant, Lucent Technologies, Inc., individually and as successor in interest to Western Electric Company pursuant to the doctrine of *forum non conveniens* subject to the following conditions; and it is further

ORDERED that the Complaint is hereby dismissed without prejudice pursuant to the doctrine of *forum non conveniens* against all other defendants named which include AT&T, Individually and

as Successor-in-Interest to SBC Communications, f/k/a Southwestern Bell Company, Inc., Individually and as Successor-in-Interest to AT&T; Bondex International, Inc.; Crown Cork & Seal Company, Inc., Successor-in-Interest to Mundet Cork Company; Cytec Engineered Materials Inc., Individually and as Successor-in-Interest to Fiberite Corporation a/k/a ICI Composites, Inc.; General Electric Company; Metropolitan-Life Insurance Company; Plastics Engineering Corporation; Rapid American, as Successor-by-Merger to Glen Alden Corporation, Briggs Manufacturing Corporation, and Phillip Carey Manufacturing Corporation; Rogers Corporation; Southwestern Bell Telephone, L.P. d/b/a AT&T Texas; The Sherwin-Williams Company; T.H. Agriculture & Nutrition; CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation; and Vyncolit North America, Inc., Individually and as Successor-in-Interest to Rogers Corporation a/k/a Multiple Composites Division of Rogers Corporation; and it is further

ORDERED that the Statute of Limitations in this matter is hereby tolled from the date that the Complaint was filed in New Jersey plus twenty (20) business days following entry of this Order so that Plaintiffs may re-file this matter in a Court of competent jurisdiction; and it is further

ORDERED that all Defendants hereby agree to submit to the jurisdiction in the State of Texas should the matter be re-filed there; and it is further

ORDERED that the Court's prior Order of November 2, 2007 dismissing the case without prejudice as to defendants Plastics Engineering Corporation and T.H. Agriculture & Nutrition is hereby vacated in light of this Order; and it is further

ORDERED that a copy of the within Order shall be served upon all counsel of record within seven (7) days of the date of its entry.

Honorable Ann G. McCormick, J.S.C.

2

# EXHIBIT B

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**IN THE UNTIESD STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | § | |
| LIABILITY LITIGATION | § | CIVIL ACTION NO. MDL 875 |
| | § | |

This Document Relates to:

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| REGGY TAYLOR, Individually, KATHY LANE, | § | |
| Individually, and ROBERT M. TAYLOR, | § | |
| Individually and as Personal Representative of the | § | |
| Estate of Rose Taylor, Deceased, and | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | |
| | § | |
| | § | Civil Case No: A-08CA017LY |
| | § | |
| | § | |
| LUCENT TECHNOLOGIES INC., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF MORGAN M. CULBRETH**

1. My name is Morgan M. Culbreth. The facts stated in this declaration are within my personal knowledge and are true.

2. Attached to this Declaration as Attachment "1" are true excerpts from the deposition of Robert M. Taylor taken March 27, 2009.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 13, 2009.

Morgan M. Culbreth

# ATTACHMENT 1

Robert Taylor
March 27, 2009

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

REGGY TAYLOR, Individually,      )
KATHY LANE, Individually,        )
and ROBERT M. TAYLOR,            )
Individually and as Personal     )
Representative of the Estate     )
of Rose Taylor, Deceased,        )
          Plaintiffs,            )
                                 )   Civil Action
VS.                              )   No. AO8CA017 LY
                                 )
LUCENT TECHNOLOGIES, INC.,       )
Individually and as              )
Successor-in-Interest to         )
Western Electric Co.,            )
          Defendants.            )

************************************************

VIDEOTAPED ORAL DEPOSITION
OF
ROBERT M. TAYLOR
MARCH 27, 2009
VOLUME 1

************************************************

VIDEOTAPED ORAL DEPOSITION OF ROBERT M. TAYLOR,

produced as a witness at the instance of the Plaintiffs

and duly sworn, was taken in the above-styled and

numbered cause on the 27th day of March, 2009, from

11:11 a.m. to 11:54 a.m., before LEICA TURNER, a

Certified Shorthand Reporter in and for the State of

Texas, reported by machine shorthand, at Presbyterian

Village North, 8600 Skyline Drive, Dallas, Texas 75243,

pursuant to the Federal Rules of Civil Procedure and

the provisions stated on the record or attached hereto.

Robert Taylor
March 27, 2009

Page 21

1       A.    In the rehab?

2       Q.    Yes.

3       A.    Three weeks.

4       Q.    So is this a permanent place for you to live

5   or --

6       A.    No.

7       Q.    Why are you here, to your knowledge?

8       A.    Why am I here?

9       Q.    In this rehab center that we're sitting in

10  today?

11      A.    Oh, well, I'm having trouble walking.

12  Diabetes has gotten into my legs.

13      Q.    Have you been hospitalized lately?

14      A.    No, just the rehab center.

15      Q.    Was it your choice to come here to the rehab

16  center?

17      A.    No.

18      Q.    Somebody tell you, you had to come?

19      A.    Yes.

20      Q.    Who told you, you had to come?

21      A.    You mean drive over here or what?

22      Q.    No.  Did a doctor tell you to come to the

23  rehab center?

24      A.    Yes.

25      Q.    Who was that?  What doctor?

Robert Taylor
March 27, 2009

1      A.   Dr. John Webb.  His telephone number is

2  (214) 879-6969.

3      Q.   You have a good memory.  Do you expect to

4  leave here?

5      A.   Oh, you bet.

6      Q.   And where will you go when you leave?

7      A.   I got a house out here, a home about a mile

8  from here.

9      Q.   How long have you lived in that house?

10     A.   31 -- no, 41 years.

11     Q.   You know all your neighbors?

12     A.   Oh, yeah.

13     Q.   Do you socialize with them?

14     A.   Yeah.

15     Q.   What do y'all do?

16     A.   Well, the women sit and twiddle their thumbs

17  and we usually spend the time in my garage playing

18  cards sometimes.

19     Q.   Is that fun?

20     A.   Oh, yeah.

21     Q.   And the women folk, they just do their own

22  thing --

23     A.   Yeah.

24     Q.   -- when you play cards?  What else do y'all

25  do?

Robert Taylor
March 27, 2009

1    Q.    Do you even know what kind of -- what the

2    purpose of the medication was that he recommended?

3    A.    Well, yeah, yeah.

4    Q.    What was it supposedly for?

5    A.    Oh, he thought I was depressed and I guess it

6    was for that.

7    Q.    Did he diagnose you as depressed?

8    A.    No.

9    Q.    No.  Did he give you any diagnosis other than

10   the medical issues you told me about which would be

11   your diabetes and skin cancer?

12   A.    No, not other than those.

13   Q.    Have you had any sort of counseling with

14   respect to any grief over which you're suing other than

15   talking to Dr. Webb and the one discussion you had with

16   Priest Dugan?

17   A.    No other.

18   Q.    I'm sorry?

19   A.    No other consultations.

20   Q.    What is the last trip you took?

21   A.    Road trip?

22   Q.    Road or plane or bus or boat?

23   A.    I haven't been in a plane in 25 years.  But I

24   imagine I come down to Austin to see that guy over

25   there.

Robert Taylor
March 27, 2009

Page 29

1    Q.    Oh, to see Reggy behind me?

2    A.    (Moving head up and down)

3    Q.    When did you last go see Reggy?

4    A.    A long time ago.

5    Q.    Has your own health affected your ability to

6    move around?

7    A.    Yes.

8    Q.    And would that be because of the diabetes and

9    the prior stroke or heart attack you had?

10   A.    Well, the diabetes affected my legs now, but

11   that started that not long ago.

12   Q.    What about the restricted breathing you

13   talked about in your prior deposition from your heart

14   issues?

15   A.    Yeah, I got one lung that's not holding as

16   much air as it should.

17   Q.    Has that limited your ability to get

18   around?

19   A.    No, I just have to go slower.

20   Q.    What kind of physical activity do you do

21   now?

22   A.    I'm in rehab over here close by.  Two hours a

23   day we take physical rehab.

24   Q.    You got to exercise?

25   A.    Yeah.

Robert Taylor
March 27, 2009

Page 30

1      Q.   Do you like it?

2      A.   No.

3      Q.   Were the --

4      A.   They just help me.

5      Q.   Yeah.   Are you moving around better?

6      A.   Yeah.

7      Q.   Now, I think I understand that you had had a

8  prior heart attack; is that right?

9      A.   Prior what?

10     Q.   Heart attack?

11     A.   Oh, yeah.

12     Q.   Maybe 2001?

13     A.   2001.

14     Q.   Was that stressful?

15     A.   Was it stressful?

16     Q.   Yeah.

17     A.   You never had one, have you?

18     Q.   No.

19     A.   Yes, it was stressful.

20     Q.   Do you have any lingering side effects from

21  that heart attack?

22     A.   Well, I take six pills for it every day.

23  Now, I don't know whether that's side effects, but

24  it's -- I feel pretty good all the time.

25     Q.   You have skin cancer now?

Robert Taylor
March 27, 2009

Page 44

1   STATE OF TEXAS        )

2   COUNTY OF DALLAS      )

3        I, Leica Turner, a Certified Shorthand Reporter

4   duly commissioned and qualified in and for the State of

5   Texas, do hereby certify that pursuant to the agreement

6   hereinbefore set forth, there came before me on the

7   27th day of March, 2009, from 11:11 a.m. to 11:54 a.m.,

8   at Presbyterian Village North, 8600 Skyline Drive,

9   Dallas, Texas  75243, the following named person to

10  wit, ROBERT M. TAYLOR, who was by me duly sworn to

11  testify the truth and nothing but the truth of his/her

12  knowledge touching and concerning the matters in

13  controversy in this cause; and that he/she was

14  thereupon carefully examined up his/her oath and

15  his/her examination reduced to writing under my

16  supervision; that to the best of my ability the

17  deposition is a true record of the testimony given by

18  the witness, same to be sworn to and subscribed by said

19  witness before any Notary Public, pursuant to the

20  agreement of the parties.

21       I further certify that I am neither attorney nor

22  counsel for, nor related to or employed by, any of the

23  parties to the action in which this deposition is

24  taken, and further that I am not a relative or employee

25  of any attorney or counsel employed by the parties

Stratos Legal Services
800-971-1127

Robert Taylor
March 27, 2009

Page 45

1   hereto, or financially interested in the action.

2         In witness whereof, I have hereunto set my hand

3   and affixed my CSR seal this _____ day of

4   _____, 2009.

5

6

7         LEICA TURNER, Texas CSR #5622
        Expiration Date:  12/31/09

8       Firm Registration No. 484
        Stratos Legal

9       1001 West Loop South
        Suite 809

10      Houston, Texas  77027
        Phone:  713.481.2180

11      Fax:  713.583.9191
        Toll Free:  800.971.1127

12

13

14

15

16

17

18

19

20

21

22

23

24

25