**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 3 2009

FILED
CLERK'S OFFICE

**PLEADING NO. 5895**

UNITED STATES OF AMERICA
BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (No. VI)

ROBERT SHEPHERD and
SHIRLEY SHEPHERD,

          Plaintiffs,

          v.

ALLIED SIGNAL, INC., et al.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

MDL Docket No. 875

CASE NO. 1:09-cv-10016-JGC

JUDGE JAMES G. CARR

## PNEUMO-ABEX, LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Defendant Pneumo-Abex, LLC, Successor in Interest to Abex Corporation (hereinafter "Abex"),

by and through its attorneys hereby files this Response in Opposition to Plaintiffs Robert

Shepherd and Shirley Shepherd's (hereinafter "Plaintiffs") Motion to Vacate Conditional

**OFFICIAL FILE COPY**       **IMAGED** AUG - 3 2009

Transfer Order.   Abex respectfully requests this Court deny Plaintiffs' Motion to Vacate Conditional Transfer Order for the following reasons:

1.   The instant case involves one or more common questions of fact pending in different districts.

2.   Pursuant to 28 USC § 1407, transfer of the action will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the action.

**WHEREFORE, Abex asks this Panel to DENY Plaintiff's Motion to Vacate Conditional Transfer Order.**

A Brief in Support of this Motion is attached hereto and incorporated by reference herein.

Respectfully submitted,

*/s/ Christopher J. Caryl*
JOSEPH J. MORFORD (0067103)
joseph.morford@tuckerellis.com
CHRISTOPHER J. CARYL (0069676)
christopher.caryl@tuckerellis.com
ARUN J. KOTTHA (0083549)
arun.kottha@tuckerellis.com
TUCKER ELLIS & WEST LLP
1150 Huntington Building
925 Euclid Avenue
Cleveland, OH  44115-1414
Telephone:     (216) 592-5000
Facsimile:      (216) 592-5009

*Attorneys for Separate Defendant*
*Pneumo-Abex, LLC, Successor in Interest to*
*Abex Corporation*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG – 3 2009

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

A true and accurate copy of *Pneumo-Abex, LLC, Successor in Interest to Abex Corporation's Response in Opposition to Plaintiff's Motion to Vacate Conditional Transfer Order* was sent via ordinary U.S. Mail, postage prepaid, this 31st day of July, 2009 to:

## COUNSEL OF RECORD

Mark C. Meyer, Esq.                          Counsel for Plaintiffs
Charles J. McLeigh, Esq.
Goldberg Persky & White
1030 Fifth Avenue, 3rd Floor
Pittsburgh, PA 15219-6295


John J. Duffy, Esq.                          Counsel for Plaintiffs
John J. Duffy and Associates
Brendan Place
23823 Lorain Road
Suite 279
North Olmsted, OH 44070


Glenn A. Huetter, Jr., Esq.                  Counsel for Allied Signal, Inc.
Willman & Arnold
705 McKnight Park Drive
Pittsburgh, PA 15237


Brad A. Rimmel, Esq.                         Counsel for Ford Motor Company
Roetzel & Andress - Akron
222 South Main Street, Ste. 400
Akron, OH 44308

## INVOLVED COUNSEL LIST

Peter G. Angelos, Esq.
LAW OFFICES OF PETER G ANGELOS PC
One Charles Center
100 North Charles Street, 22nd Floor
Baltimore, MD 21201

Janet W. Black, Esq.
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Russell W. Budd, Esq.
BARON & BUDD PC
3102 Oaklawn Avenue, Suite 1100
Dallas, TX 75219

John D. Cooney, Esq.
COONEY & CONWAY
120 North LaSalle Street, Suite 3000
Chicago, IL 60602-2415

Glenn A. Huetter, Jr., Esq.
WILLIAM & AROLD
705 McKnight Park Drive
Pittsburg, PA 15237

Claire R. Hurley, Esq.
SUTTER O'CONNELL MANION &
FARCHONE
3600 Erieview Tower
1301 East Ninth Street
Cleveland, OH 44114

Roger B. Lane, ESq.
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Diana Nickerson Jacobs, Esq.
GOLDBERG PERSKY & WHITE
1030 Fifth Avenue, 3rd Floor
Pittsburgh, PA 15219-6295

Kevin M. Jordan, Esq.
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Paul Kalish, Esq.
CROWELL & MORIG LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Steven Kazan, Esq.
KAAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street, Third Floor
Oakland, CA 94607

Peter A. Kraus, Esq.
WATERS & KRUS LLP
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204

David C. Landin, Esq.
HUTON & WILLIAMS
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Brad A. Rimmel, Esq.
ROETZEL & ANDRESS
222 South Main Street, Suite 400
Akron, OH 44308

4

William F. Mahoney, Esq.
SEGAL MCCAMBRIDGE SINGER &
MAHONEY LTD
233 South Wacker Drive, Suite 5500
Chicago, IL 60606

Robert C. Malaby, Esq.
MAABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea, Esq.
MCSHEA TECCE PC
Mellon Ban Center
1717 Arch Street, 28th Floor
Philadelphia, PA 19103

Thomas A. Packer, Esq.
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Michael P. Thornton, Esq.
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Walter G. Watkins, Jr., Esq.
FORMAN PERRY WATKIS KRUTZ &
TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Philip McWeeny, Esq.
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105

Joseph F. Rice, Esq.
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 3 2009

FILED
CLERK'S OFFICE

UNITED STATES OF AMERICA
BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (No. VI)

MDL Docket No. 875

ROBERT SHEPHERD and
SHIRLEY SHEPHERD,

    Plaintiffs,

   v.

ALLIED SIGNAL, INC., et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 1:09-cv-10016-JGC

JUDGE JAMES G. CARR

## PNEUMO-ABEX, LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER

I.  **Introduction**

  Plaintiffs Robert and Shirley Shepherd filed this product liability action in Cuyahoga County, Ohio on April 3, 2009 alleging injury from exposure to asbestos.  (*See* Plaintiff's Complaint, attached hereto as Exhibit "A").   Abex removed the case based on diversity

jurisdiction to the United States District Court for the Northern District of Ohio on May 4, 2009 and filed the Notice of Tag-Along Action on June 9, 2009. The Clerk of the Panel on Multidistrict Litigation issued a Conditional Transfer Order on June 16, 2009. Plaintiffs filed a Motion to Vacate Conditional Transfer Order on July 15, 2009.

## II.    **Argument**

28 USC § 1407 mandates transfers which are deemed by the Panel to "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions," where the case involves "one or more common questions of fact...pending in different districts." The instant action falls squarely within the boundaries of § 1407 and as such, this Panel should deny Plaintiffs' Motion to Vacate Conditional Transfer Order.

### *Common questions of fact*

The instant action involves several common questions of fact to actions pending in different districts. This action alleges asbestos exposure resulting in an asbestos-related disease. This action claims asbestos is hazardous and alleges, *inter alia*, that defendants breached a duty to warn of such hazards. This claim necessarily involves the question of Defendants' knowledge of the alleged hazards of asbestos. These factual issues are the same in virtually all asbestos-related products liability actions currently pending in the MDL. As such, this case involves one or more common questions of fact with cases pending in different districts.

### *Convenience of the parties and witnesses*

No party to this action is domiciled or resides in the state of Ohio. No Defendant is either incorporated or holds its principal place of business in Ohio, and Plaintiffs are domiciled in southern Kentucky. Robert Shepherd was recently deposed near his house in southern Kentucky

and alleges exposure to asbestos in Ohio and Florida. Any co-worker depositions will be taken near their place of residence. Neither the parties nor witnesses are inconvenienced by the transfer.

### Just and efficient conduct of the action

MDL No. 875, relating to personal injury actions allegedly caused by asbestos products was created in 1991 by the Judicial Panel on Multidistrict Litigation, and consolidated in the Eastern District of Pennsylvania. (*See* Memorandum of Judge Eduardo C. Robreno, dated April 30, 2009, attached hereto as Exhibit "B"). Recently, the presiding Judicial Officer has initiated "several new policies and procedures" to improve and expand the case management system put in place by Judges Weiner and Giles. As a result of the improvements, "a significant number of pending claims have been resolved in the past several months." *Id*. The efficiencies created by the recent improvements is exactly what § 1407 contemplates in the "just and efficient conduct" of the instant action. Further, it is the stated policy of the Eastern District of Pennsylvania to initiate an "an aggressive, pro-active policy in setting cases for settlement conferences, motion hearings and trials" in MDL No. 875. (*See*, MDL No. 875 Clerk's Office website, 7/28/2009, attached hereto as Exhibit "C"). As such, the transfer will promote the goals of a "just and efficient conduct" of the instant action.

## III.   Conclusion

Wherefore, Abex respectfully requests that because the mandates and goals of 28 USC § 1407 are satisfied, Plaintiffs' Motion to Vacate Conditional Transfer Order should be DENIED in its entirety.

Respectfully submitted,

/s/ Christopher J. Caryl
JOSEPH J. MORFORD (0067103)
joseph.morford@tuckerellis.com
CHRISTOPHER J. CARYL (0069676)
christopher.caryl@tuckerellis.com
ARUN J. KOTTHA (0083549)
arun.kottha@tuckerellis.com
TUCKER ELLIS & WEST LLP
1150 Huntington Building
925 Euclid Avenue
Cleveland, OH  44115-1414
Telephone:      (216) 592-5000
Facsimile:      (216) 592-5009

*Attorneys for Separate Defendant*
*Pneumo-Abex, LLC, Successor in Interest to*
*Abex Corporation*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 3 2009

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

A true and accurate copy of *Pneumo-Abex, LLC, Successor in Interest to Abex Corporation's Brief in Opposition to Plaintiff's Motion to Vacate Conditional Transfer Order* was sent via ordinary U.S. Mail, postage prepaid, this 31st day of July, 2009 to:

### COUNSEL OF RECORD

Mark C. Meyer, Esq.                          Counsel for Plaintiffs
Charles J. McLeigh, Esq.
Goldberg Persky & White
1030 Fifth Avenue, 3rd Floor
Pittsburgh, PA 15219-6295


John J. Duffy, Esq.                          Counsel for Plaintiffs
John J. Duffy and Associates
Brendan Place
23823 Lorain Road
Suite 279
North Olmsted, OH 44070


Glenn A. Huetter, Jr., Esq.                  Counsel for Allied Signal, Inc.
Willman & Arnold
705 McKnight Park Drive
Pittsburgh, PA 15237


Brad A. Rimmel, Esq.                         Counsel for Ford Motor Company
Roetzel & Andress - Akron
222 South Main Street, Ste. 400
Akron, OH 44308

5

## INVOLVED COUNSEL LIST

Peter G. Angelos, Esq.
LAW OFFICES OF PETER G ANGELOS PC
One Charles Center
100 North Charles Street, 22nd Floor
Baltimore, MD 21201

Diana Nickerson Jacobs, Esq.
GOLDBERG PERSKY & WHITE
1030 Fifth Avenue, 3rd Floor
Pittsburgh, PA 15219-6295

Janet W. Black, Esq.
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Kevin M. Jordan, Esq.
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Russell W. Budd, Esq.
BARON & BUDD PC
3102 Oaklawn Avenue, Suite 1100
Dallas, TX 75219

Paul Kalish, Esq.
CROWELL & MORIG LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

John D. Cooney, Esq.
COONEY & CONWAY
120 North LaSalle Street, Suite 3000
Chicago, IL 60602-2415

Steven Kazan, Esq.
KAAN MCCLAIN ABRAMS
FERNANDEZ ET AL
171 Twelfth Street, Third Floor
Oakland, CA 94607

Glenn A. Huetter, Jr., Esq.
WILLIAM & AROLD
705 McKnight Park Drive
Pittsburg, PA 15237

Peter A. Kraus, Esq.
WATERS & KRUS LLP
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204

Claire R. Hurley, Esq.
SUTTER O'CONNELL MANION &
FARCHONE
3600 Erieview Tower
1301 East Ninth Street
Cleveland, OH 44114

David C. Landin, Esq.
HUTON & WILLIAMS
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane, ESq.
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Brad A. Rimmel, Esq.
ROETZEL & ANDRESS
222 South Main Street, Suite 400
Akron, OH 44308

William F. Mahoney, Esq.
SEGAL MCCAMBRIDGE SINGER &
MAHONEY LTD
233 South Wacker Drive, Suite 5500
Chicago, IL 60606

Robert C. Malaby, Esq.
MAABY & BRADLEY
150 Broadway
Suite 600
New York, NY 10038

John P. McShea, Esq.
MCSHEA TECCE PC
Mellon Ban Center
1717 Arch Street, 28th Floor
Philadelphia, PA 19103

Thomas A. Packer, Esq.
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Michael P. Thornton, Esq.
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Walter G. Watkins, Jr., Esq.
FORMAN PERRY WATKIS KRUTZ &
TARDY PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Philip McWeeny, Esq.
SCHIFF HARDIN LLP
One Market Plaza, 32nd Floor
Spear Street Tower
San Francisco, CA 94105

Joseph F. Rice, Esq.
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO**

AUG – 3 2009

FILED
CLERK'S OFFICE

**ASBESTOS PERSONAL INJURY, LOSS OF CONSORTIUM**

**ROBERT SHEPHERD. and
SHIRLEY SHEPHERD, his wife**
**363 Lockett Street**
**Monticello, KY 42633**

CASE NO. _____

**ALLIED SIGNAL, INC., in its own right**
and as successor-in-interest to Allied Corporation,
successor-in-interest to Bendix Corporation
Columbia Road at Park Avenue
Morristown, NJ 07692

**CHRYSLER LLC**
1000 Chrysler Drive
Auburn Hills, MI 48351

**FORD MOTOR COMPANY**
The American Road
Dearborn, MI 48121

**GENERAL MOTORS CORPORATION**
c/o CT Corporation System
1300 E. Ninth Street, Suite 1010
Cleveland, OH 44114

**HONEYWELL INTERNATIONAL, INC.,**
**f/k/a Allied Signal, Inc., as successor in**
**interest to Bendix Corporation**
c/o CSC-Lawyers Incorporating System
50 W. Broad Street
Suite 1800
Columbus, OH 43215



**PNEUMO-ABEX LLC,**
Successor by merger to Pneumo-Abex Corporation
c/o Prentice-Hall Corporation
50 W. Broad Street, Suite 1800
Columbus, OH  43215

**JOHN DOES 1-100**
Manufacturers, Sellers or
Installers of Asbestos-Containing
Products.

   Defendants.

## COMPLAINT

1.      This Complaint is filed pursuant to the Standing Order Regarding Asbestos Personal Injury Complaints.

2.      Plaintiffs bring this action on their own behalf.

3.      The plaintiff husband worked at a variety of jobsites in Ohio during his career, including a Shell Service Station in Cincinnati, OH.   Plaintiff husband was diagnosed with mesothelioma on October 7, 2008.

4.      As a direct and proximate result of defendants' conduct as more fully described herein plaintiff incurred medical and hospital expenses and sustained pain and suffering as a result of his injuries.

5.      As a direct and proximate result of defendants' conduct as more fully described herein plaintiff incurred medical and hospital expenses sustained pain and suffering as a result of his injuries.

6.      The plaintiff as a direct and proximate result of the defendants' conduct as more fully described herein, contracted mesothelioma which caused him great pain, suffering and severe mental anguish.

7.      The plaintiff husband as a direct and proximate result of the defendants' conduct as more fully described herein contracted asbestos related disease which caused plaintiffs great pain, suffering and severe mental anguish.

8.      As a direct and proximate result of defendants' conduct as more fully described herein, the spouse individually and in her own right as the spouse of the plaintiff experienced severe emotional distress; loss of support from the reasonably expected earning capacity of the plaintiff husband; loss of services of the plaintiff husband; loss of society of the plaintiff husband, including

but not limited to loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training and education.

9. (a).   The named defendants are either domestic Ohio corporations or foreign corporations either incorporated under the laws of another state or organized under the laws of a foreign country and are qualified to do business in Ohio.

9.(b).   The real names and addresses of defendants John Does 1-100 manufacturers, sellers or installers of asbestos-containing products have not been determined, despite reasonable efforts of the plaintiffs to do so.

10.   Defendants, at all times relevant and pertinent hereto, were engaged in the business of mining, milling, manufacturing, fabricating, designing, formulating, producing, creating, making, constructing, installing, assembling and/or rebuilding asbestos-containing products or components thereof; and/or selling, distributing, preparing, blending, packaging, labeling, and/or otherwise participated in placing asbestos-containing products in the stream of commerce to which plaintiff husband was exposed.

11.   During the period of time he was engaged, the plaintiff was exposed to and did inhale asbestos dust and asbestos fibers released from the asbestos-containing products of defendants and/or their predecessors-in-interest, which directly and proximately caused plaintiff to contract asbestos related disease with associated complications, which resulted in disability.

12.   The  diseases as set forth herein with associated complications were directly and proximately caused by the acts of the defendants acting through their agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of said defendants, and the defendants are liable therefore, jointly and severally.

## CLAIM I - STRICT LIABILITY FOR DEFECTIVE DESIGN

13.     All prior allegations are incorporated by reference as if fully rewritten herein.

14.     At all times relevant herein, including the times they left defendants' control and were put into commerce, asbestos-containing products and/or their component parts and ingredients were defective in design or formulation of the products exceeded the benefits associated therewith; and/or the products were more dangerous than an ordinary consumer, user, mechanic, laborer or installer of defendants' products would expect when used in a manner that were intended or reasonably foreseeable by the defendants.

15.     The defendants participated in placing in commerce asbestos-containing products which they knew were defective and/or unreasonably dangerous to the user or consumer, and acted in flagrant disregard for the safety of persons who might be harmed by their products.

16.     As a direct and proximate result of the acts of the defendants, the plaintiffs suffered the injuries and damages as alleged herein, and the defendants are liable therefore, jointly and severally, to the plaintiffs in strict liability for the defective design of their products at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM II - STRICT LIABILITY FOR FAILURE TO WARN

17.     All prior allegations are incorporated by reference as if fully rewritten herein.

18.     Defendants' products were defective due to inadequate warning or instruction at the time of marketing in that defendants knew or, in the exercise of reasonable care, should have known about risks associated with their products and failed to provide reasonable and/or adequate warning or instruction in light of the likelihood of harm and likely seriousness of that harm.

19.     Alternatively, the asbestos-containing products were defective due to inadequate post-marketing warning or instruction in that at relevant times after the products left the defendants'

control, defendants knew or, in the exercise of reasonable care, should have known about risks associated with the products and failed to provide reasonable and/or adequate post-marketing warning or instruction in the exercise of reasonable care in light of the likelihood of harm and likely seriousness of that harm.

20.     The use of defendants' products causing the injuries and damages sustained by plaintiffs were reasonably foreseeable by defendants.

21.     The defendants participated in placing in commerce asbestos-containing products which they knew were defective, and acted in flagrant disregard for the safety of persons who might be harmed by their products.

22.     As a direct and proximate result of the defective aspect(s) of the defendants' asbestos-containing products, plaintiffs sustained the injuries and damages as alleged herein, and the defendants are liable therefore, jointly and severally, to the plaintiffs in strict liability for their failure to warn at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM III - NEGLIGENCE

23.     All prior allegations are incorporated by reference as if fully rewritten herein.

24.     Defendants owed a duty of due care to plaintiffs in designing, manufacturing, distributing, selling, installing, repairing, handling, tearing out, or otherwise putting into the stream of commerce the asbestos-containing products at issue.

25.     Defendants, at the time of designing, manufacturing, distributing, selling, installing, repairing, handling, tearing out, or otherwise placing the asbestos products into the stream of commerce, knew, or in the exercise of reasonable care, should have known, about risks associated with the products.  Defendants were negligent and breached their duty of due care to plaintiffs by taking or failing to take the following actions in light of the reasonably foreseeable dangers caused

by their design, manufacture, sale, distribution, installation, repair, handling, tear out, or other activity in placing the asbestos-containing products at issue in the stream of commerce:

    a.    Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations which should have been designed to provide to plaintiffs knowledge about the hazards caused by exposure to the dust, and how to eliminate the hazards;

    b.    Failing to provide adequate product inserts, informative brochures, employee training literature, posters, hazard tags, and other written materials which should have been designed to provide to workers knowledge about the hazards caused by exposure to dust, and how to eliminate the hazards;

    c.    Failing to conduct on-site personnel training sessions with dust exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the dust, and how to eliminate the hazards;

    d.    Failing to adequately test and research the products at issue as to the dusts hazards created during their use and degeneration, and failing thereafter to provide the results of such tests and research to exposed workers;

    e.    Failing to inspect the work places in which their products were being used so as to determine whether the products used were deleterious to the health of exposed workers;

    f.    Failing to design, process and transport their products in a manner intended to minimize liberation of asbestos dust during normal handling and use;

    g.    Failing to specify and market their products on the express agreement that necessary engineering controls, work practices, or other industrial hygiene controls should be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

h.      Failing to eliminate asbestos as a constituent of their products and substitute less hazardous ingredients;

i.      Failing to recall their products;

j.      Failing to take adequate precautions and industrial hygiene measures to protect plaintiffs and exposed workers when installing, repairing, or tearing out asbestos-containing products including, but not limited to, providing protection from dust emanating from the installation, repair, and/or removal process; failing to use local ventilation; failing to provide warnings to plaintiff and workers in the facilities at issue that exposure to dust was hazardous; failing to use wet-down procedures; failing to adequately clean up debris from the installation, repair and/or removal process; and failing to take other appropriate safety and industrial hygiene measures.

k.      Otherwise failing to act reasonably under the totality of the circumstances.

26.      The hazards posed by the asbestos-containing products at issue and the resulting injuries and damages to plaintiffs were reasonably foreseeable, or should have been reasonably foreseeable, by defendants.

27.      As a direct and proximate result of defendants' negligence, plaintiffs sustained the injuries and damages as alleged herein, and defendants are liable, therefore, jointly and severally, to the plaintiffs in negligence at common law and as otherwise allowed under Ohio law.

## CLAIM IV - BREACH OF WARRANTY

28.      All prior allegations are incorporated by reference as if fully rewritten herein.

29.      At the time they left defendants' control, the asbestos-containing products were defective due to their failure to conform to representations of the defendants, including express and implied representations as to the safety, quality and fitness for purpose of the products and

representations as to scientific data and research showing safety, quality and fitness for purpose of the products.

30.     Defendants' conduct was in flagrant disregard of the safety of persons who might be harmed by the product.

31.     As a direct and proximate result of the defendants' products' failure to conform to express and implied warranties made by defendants, plaintiffs sustained the injuries and damages alleged herein, and the defendants are liable therefore, jointly and severally, to the plaintiffs for breach of implied and express warranties at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM V - CONSPIRACY, CONCERT OF ACTION AND COMMON ENTERPRISE

32.     All prior allegations are incorporated by reference as if fully rewritten herein.

33.     Defendants, individually, together and/or as a group, along with their insurers, and other companies beyond the reach of this court due to bankruptcy or orders of the federal courts prohibiting the bringing of any cause of action against them (hereinafter THE ASBESTOS INDUSTRY) have possessed since 1929, medical and scientific data which indicated that asbestos-containing products were hazardous to health.  Prompted by pecuniary motives, the defendants, individually, together, with their insurers and/or as a group, willfully and wantonly ignored and/or failed to act upon said medical and scientific data.  Rather, they conspired together to deceive the public in several aspects:  by controlling industry-supported research in a manner inconsistent with the health and safety interest of asbestos users and consumers; by successfully tainting reports of medical and scientific data appearing in industry and medical literature; by suppressing the dissemination of certain medical and scientific information relating to the harmful effects of exposure to asbestos-containing products; and by prohibiting the publication of certain scientific and medical articles.  Such conspiratorial activities deprived the users, mechanics, laborers and installers

9

of defendants' asbestos products of the opportunity to determine whether or not they would expose themselves to the unreasonably dangerous asbestos products of said defendants. As a direct and proximate result of the aforesaid actions, plaintiffs and decedents were exposed to asbestos dust and fibers and contracted asbestos disease, asbestosis, cancer and other asbestos related diseases.

34. THE ASBESTOS INDUSTRY has conspired together to deceive the public, the plaintiffs and decedents in several aspects, including, but not limited to:

a. Controlling industry supported research in a matter inconsistent with the health and safety interests of the products' users and consumers.

b. Successfully tainting reports of medical and scientific data appearing in industry medical literature.

c. Suppressing certain medical scientific information relating to the harmful effects of exposure to asbestos-containing products.

d. Prohibiting the publication of certain scientific and medical articles.

e. THE ASBESTOS INDUSTRY, knowing such statements to be patently false, knowingly conspired to positively assert that the asbestos products were safe to work with or around.

f. THE ASBESTOS INDUSTRY, knowing that harm would occur, caused workers, such as the plaintiffs, to remain ignorant of the harmful effects of asbestos products with which they worked or around which they worked.

g. One or more members of THE ASBESTOS INDUSTRY refused to warn their employees, the government, the public, the employers of people such as the plaintiffs about the hazards of asbestos.

h. Two or more members of THE ASBESTOS INDUSTRY agreed in writing not to disclose the results of research regarding the effects of exposure to asbestos unless the results suited their own selfish

and malicious pecuniary interests.

i.    The statements made by THE ASBESTOS INDUSTRY constituted false statements of material facts.

j.    THE ASBESTOS INDUSTRY, at the time the statements were made, knew or believed the statements made were false.

k.    THE ASBESTOS INDUSTRY intended that the government, the public, the plaintiffs and decedents would act in reliance of the false statements previously stated.

l.    The public, the plaintiffs, acted in reliance on the truth of statements made that asbestos were safe for its intended and reasonably foreseeable uses.

m.    The plaintiffs' injuries, as previously stated, were directly and proximately caused by the reliance upon the false statements by THE ASBESTOS INDUSTRY.

35.    Once the knowledge and evidence of the dangers of asbestos products escaped the control of the defendants and their insurers the defendants, their insurers, and other companies beyond the reach of this court due to bankruptcy or orders of the federal courts prohibiting the bringing of any cause of action against them continued to conspire to deceive the public, the courts and the government about the magnitude of the potential harm. The defendants and their insurers have conspired to hide or destroy evidence, lie to the courts and the public about their financial status, and have continued in their attempts to influence and manipulate the medical literature being published.

36.    Additionally, THE ASBESTOS INDUSTRY, directly and through their agents, created fraudulent defenses to prevent persons, such as the plaintiffs, who were harmed by their products and mislead by the conspiratorial and fraudulent actions of the defendants and their

insurers, from receiving due compensation for their injuries.   Even after the courts and the public have become aware of the conspiratorial and fraudulent activities of the defendants and their insurers the defendants and their insurers continue in their ongoing conspiracy to this very day.

37.     The conduct of THE ASBESTOS INDUSTRY were and are in a flagrant disregard for the rights and safety of persons who might be harmed by their products and to those persons, like the plaintiffs, who have been harmed by their products.

38.     As a direct and proximate result of the fraudulent and conspiratorial conduct of THE ASBESTOS INDUSTRY, plaintiffs sustained the injuries and damages alleged, for which the defendants are jointly and severally liable for their conspiratorial and fraudulent enterprise, at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM VI - ALTERNATIVE LIABILITY

39.     All prior allegations are incorporated by reference as if fully rewritten herein.

40.     The Defendants, and at least two of them, committed the tortious acts complained of herein.

41.     Due to the indivisible nature of the injury suffered by the plaintiffs, Plaintiffs are unable to adequately identify which of the Defendants who sold or otherwise injected into the stream of commerce the exact and specific asbestos product which caused the indivisible injuries complained of herein.   That inability is not through any fault of the Plaintiffs or due to any fault of the Plaintiffs.

42.     The named Defendants and those that are beyond the reach of this action due to bankruptcy or orders of federal judges prohibiting the bringing of any cause of action in this court for the injuries complained of herein, sold or otherwise injected into the stream of commerce the asbestos products present in the Plaintiffs' environment to which the plaintiff was thereby exposed.

43.     All of the asbestos products sold, produced or otherwise injected into the stream of commerce were virtually identical in that they all shared a common defect, that being the inclusion of respirable asbestos within the product.

44.     For the acts of the of the defendants stated herein, the defendants each individually and alternatively liable to the Plaintiffs for the injuries herein stated, for which the defendants are liable at common law and pursuant to R.C. 2307.71 et seq.

### CLAIM VII - MARKET SHARE LIABILITY

45.     All prior allegations are incorporated by reference as if fully rewritten herein.

46.     The named defendants and those set forth above that are under the protection of federal courts, sold, promoted or otherwise participated in the injecting of asbestos products into the stream of commerce which constituted a substantial share of all the asbestos containing products in the state of Ohio.

47.     Respirable asbestos fibers emitted by defendants' products are completely fungible materials incapable of being distinguished one from the other when inhaled by the plaintiffs, as the asbestos fibers were in fact inhaled.

48.     As a direct and proximate cause of the contributing to said substantial share of the asbestos product market of Ohio by any or all of the defendants, any and all of the defendants have caused damage to the Plaintiffs as herein described, for which the defendants are liable at common law and pursuant to R.C. 2307.71 et seq..

### CLAIM XIII - LOSS OF CONSORTIUM

49.     All prior allegations are incorporated by reference as if fully rewritten herein.

50.     The spouse of the plaintiff has suffered in her own right the injuries previously alleged as a direct and proximate cause of defendants' acts, for which the defendants are liable.

## CLAIM XIV - PUNITIVE DAMAGES

51.     All prior allegations are incorporated by reference as if fully rewritten herein.

52.     The defendants' actions as stated herein constitute a flagrant disregard for the rights

and safety of the public and the plaintiffs for which they are liable for punitive damages.

**WHEREFORE,** Plaintiffs demand judgment against defendants, jointly and severally, in an

amount in excess of $25,000.00 that will fully and fairly compensate plaintiffs for their injuries and

will serve the ends of justice to punish and deter defendants for their acts, together with costs,

attorney fees and any other relief to which plaintiff may be entitled.

**JURY TRIAL DEMANDED AS TO ALL COUNTS.**

JOHN J. DUFFY & ASSOCIATES


By: /s/ by Culvert
     John J. Duffy, Esquire (0032839)
     Brendan Place
     23823 Lorain Road, Suite 270
     North Olmsted, OH  44070
     (440) 779-6636


GOLDBERG, PERSKY & WHITE, P.C.


By:
     Mark C. Meyer, Esquire
     Stephanie N. Bell, Esquire
     Joseph J. Cirilano, Esquire (#:0080038)
     (Motion for admission pro hac vice)
     1030 Fifth Avenue
     Pittsburgh, PA  15219
     (412) 471-3980

## PLAINTIFF'S COMPLAINT BROCHURE

### BIOGRAPHICAL INFORMATION:

| | |
|---|---|
| Plaintiff Husband: | Robert Shepherd |
| Plaintiff Wife: | Shirley Shepherd |
| Plaintiff's address: | 363 Lockett Street |
| | Monticello, KY 42633 |
| Decedent's name: | Not Applicable |
| Social Security #: | 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(H) |
| Date of Birth: | May 23, 1937 (H) |
| Date of Diagnosis: | October 7, 2008 |
| Date of Death: | N/A.  Both plaintiffs are living. |
| Disease process: | Mesothelioma |
| | |
| Work History: | Shell Service Station; Cincinnati, Ohio 1965-1976 |

In addition, plaintiff was exposed to asbestos while performing mechanical maintenance work on cars and trucks in a non-occupational capacity.

### LIST OF DEFENDANT PRODUCTS THAT WILL BE IDENTIFIED

#### RESERVATION OF RIGHTS

The following information on defendant's products to be identified has been compiled as a result of plaintiff's ongoing investigation and is necessarily incomplete.  The information on defendant's products is derived from a number of sources including client communications, co-worker interviews, depositions, affidavits, interrogatories, defendant document productions, non-party discovery and multiple other sources.  Plaintiff's investigation is ongoing and undoubtedly will uncover additional asbestos containing materials that defendants sold, supplied, manufactured or used.  Plaintiffs reserve the right to supplement, amend, and revise their disclosure of defendant's products as additional information becomes available.

| DEFENDANT | ASBESTOS-CONTAINING PRODUCT |
|---|---|
| **Chrysler Corporation** | Brakes, clutches and gaskets on automobiles. |
| **Ford Motor Company** | Brakes, clutches and gaskets on automobiles. |
| **General Motors** | Brakes, clutches and gaskets on automobiles. |
| **Honeywell International** | Bendix brand brakes. |
| **Pneumo Abex** | Brakes and clutch facings. |

### END OF BROCHURE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS          :
LIABILITY LITIGATION (No. VI)  :     MDL DOCKET NO. 875
                                 :
                                 :     Civil Action No.
                                 :     2:01-md-875
THIS DOCUMENT RELATES TO          :
ALL ACTIONS                       :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        April 30, 2009

I.  INTRODUCTION

MDL no. 875 involves claims relating to personal injuries allegedly caused by asbestos products.  In 1991, the Judicial Panel on Multidistrict Litigation (the "Panel") transferred and consolidated these cases in the Eastern District of Pennsylvania as MDL 875.  According to the January 1, 2009 Panel report, there were 58,625 cases, encompassing 3.3 million claims, pending in MDL 875.[1]

To manage this complex case, over the course of the litigation, the Court has issued 17 administrative orders.  To complement this administrative architecture, the presiding Judicial Officer has instituted several new policies and procedures[2] that expanded upon the case management system put in

---

[1]   These statistics are drawn from the Jan. 1, 2009 MDL 875 statistical update provided by the Panel to Judge Robreno and the Clerk of the Court in the Eastern District of Pennsylvania.

[2]   See accompanying Exhibit "A", the MDL 875 Case Management Flowchart.  This chart is meant as a visual representation of the Court's administrative regime, illustrating categories of cases

place by Judge Weiner and Judge Giles.[3]  As a result, a

significant number of pending claims have been resolved in the

past several months.[4]  Plaintiffs' motion requests amendments to

six of these administrative orders.  For the reasons set forth

below,[5] the Court declines to adopt Plaintiffs' proposed

amendments.


II.   DISCUSSION OF THE MERITS

    A. Procedure for Remand of Appropriate Cases to Transferor
       District Courts

       Plaintiffs' first request that the Court remand: (1)

the 151 malignancy cases listed in Exhibit "J" of their motion;

and (2) any case in which a motion for remand has already been

filed. (Pls. Mot. at 17, Ex. J.)  This request for a wholesale

remand does not include specific information regarding the

circumstances or procedural status of any individual case.  The

motion simply lists the respective Plaintiff's name, civil action

_____

and their respective paths to resolution.

[3]  The undersigned was designated Judge of MDL 875 on October
16, 2008.

[4]  The Court has established an MDL 875 website, available at
www.paed.uscourts.gov/mdl875.asp.  The website reports all
activity in the case and is a helpful tool for the Court and the
litigants.

[5]  During the course of calendar year 2009, the court has
resolved 510,000 claims, either by settlement, voluntary
dismissal or dismissals.  Case management procedures in place
include motion hearings, status and scheduling conferences, rules
to show cause, Daubert hearings, and procedures for requesting
settlement conferences and trials.  See MDL 875 website,
available at www.paed.uscourts.gov/mld875.asp.

number, case style and disease.   (Id. at Ex. J.)   Previously, the
Court declined a similar wholesale disposition of cases suggested
by defendants in connection with enforcement of Administrative
Order no. 12.   In re: Asbestos Prods. Liab. Litig. (No. VI), 254
F.R.D. 266, 268 (E.D. Pa. 2008).

Remanding cases to the transferor court at an early
date remains an important administrative goal of the Court.
Remand of individual cases, however, should occur only in a
manner consistent with the goal of the efficient administration
of the case,[6] and in the interest of justice in the individual
case being remanded.[7]   In order to promote these goals the Court
will implement a procedure whereby requests for a suggestion of
remand in individual cases may be brought to the attention of the
Court.[8]

By order on this day, the Court will issue
Administrative Order no. 18, which provides that Plaintiffs may
file a motion requesting the entry of a suggestion of remand with

---

[6]   The Panel has transferred the asbestos personal injury cases
to the Eastern District of Pennsylvania "for coordinated or
consolidated pretrial proceedings."   28 U.S.C. § 1407(a) (1976).
A case "shall be remanded by the panel at or before the
conclusion of such pretrial proceedings."   Id.   The Panel rules
state that a remand shall be considered by the Panel on the
motion of any party, upon a suggestion of remand from the
transferee court, or upon the Panel's own initiative, through a
conditional remand order, an order to show cause or another
appropriate order.   JPML Rules of Procedure, 7.6(c) (2001).

[7]   Motions to remand to the appropriate state court for lack of
subject matter jurisdiction, however, may be filed at any time.

[8]   The factors the Court will consider, inter alia,  are listed
in Administrative Order no. 18, ¶7 a-h.

the Court.  This motion must include, at a minimum, the following
information:

1.) The civil action number of the case in the district
where it was originally filed;

2.) The civil action number of the case in the Eastern
District of Pennsylvania, if the case has been assigned
an E.D. Pa. civil action number;

3.) The name of the plaintiff in the case;

4.) The diagnosing report or opinion relied upon by the
plaintiff in compliance with Administrative Order no.
12;

5.) The identity of defendants that are still viable[9] in the
case;

6.) A certification that the motion requesting the
suggestion of remand has been served upon counsel for
all other parties to the action; and

7.) The specific reasons why remand is appropriate in this
case.  In particular, Plaintiff should specify:

a.) Whether Plaintiff has complied with Administrative
Orders 12 and 12A;

b.) Whether the injured Plaintiff is alive;

c.) Whether the parties have submitted a Rule 26(f)
report to the Court;

---

[9]   A viable defendant is a defendant which has not been
dismissed from the case and is not in bankruptcy proceedings.

d.) Whether all relevant discovery has been completed or has been substantially completed.  If not, identify the discovery still to be completed;

e.) The extent to which settlement conferences have been held in the case and the status of settlement negotiations;

f.) Whether there are any outstanding motions in the case.  Counsel seeking remand should be able to certify that there are no outstanding motions remaining in the case;

g.) Whether, if the case is remanded, the Plaintiff is prepared for trial without delay once on the transferor court's normal docket; and

h.) The status of congestion in the transferor court docket.

Once a motion requesting a suggestion of remand has been filed with the Court and served on all other parties to the action, any party opposing the motion will have fourteen (14) days in which to file a response.  If a response is filed, then the Court will decide whether to suggest remand based on the contents of the motion and the response, or schedule a hearing on the matter.  If there is no response within fourteen days, the other parties to the action are deemed to have consented, and the

Court will decide whether to suggest remand based on the content of that respective Plaintiff's motion.[10]

Under these circumstances, Plaintiffs' request to remand the 151 named malignancy cases, and the numerous other cases in which a motion to remand has been filed previously is denied.  If Plaintiffs believe that remand is appropriate in any _individual_ case, the Plaintiff in such case may file a motion for suggestion of remand that conforms to the requirements of Administrative Order no. 18.

### B. Motley Rice's Role as Plaintiffs' Steering Committee Liaison Counsel for the MDL 875 Submissions Database

Next, Plaintiffs' request that the Court relieve Motley Rice ("Motley Rice") of its duties regarding the MDL 875 submissions database.  (Pls. Mot. to Amend at 17.)  The database was created by Administrative Order no. 13 as a tool for the Court to manage the information submitted by Plaintiffs pursuant to Administrative Order no. 12.[11]  (Administrative Order no. 13, doc. no. 5040, Jan. 29, 2008.)  The law firms of Forman, Perry, Watkins, Krutz & Tardy, LLP ("Forman Perry") and Motley Rice were

---

[10]   Once a suggestion of remand is filed with the Panel, the procedures for effecting the remand can be found in Rule 7.6 of the Judicial Panel on Multidistrict Litigation Rules of Procedure.

[11]   Administrative Order no. 12 requires, _inter alia_, the submission of a diagnostic report by the plaintiff in each case and the submission of identifying information particular to that case.  Submissions made pursuant to Administrative Order no. 12 are collected in an electronic database, which is consulted by the parties and the Court in making scheduling decisions.

appointed to assist the Court in managing the database by
Defendants' steering committee and Plaintiffs' steering
committee, respectively.  Id.  Forman Perry was also tasked with
uploading to the database any paper Administrative Order no. 12
submissions that had been submitted prior to the creation of the
database.  When Forman Perry last updated the Court on the
progress of uploading paper submissions, Forman Perry indicated
that the database included 80% of such submissions.

        The continuing assistance of counsel from each steering
committee is important in maintaining the functionality and
impartiality of the database.  The Court is very appreciative of
the many hours that both Motley Rice and Forman Perry have spent
assisting with the administration of the MDL 875 submissions
database.

        With that said, the Court has no particular preference
as to which member of the Plaintiffs' steering committee is
liaison counsel in charge of the MDL 875 submissions database.
Nevertheless, Motley Rice has not provided the Court with the
name of another member of the steering committee that is ready,
willing and able to fill their role.  The Court is reluctant to
appoint another law firm sua sponte to fill this important
position.  If Motley Rice reaches an agreement with another
steering committee member to take over these duties, the Court
will entertain a motion to relieve Motley Rice at that time.
Meanwhile, Motley Rice's obligations as Plaintiffs' steering

committee appointee for the database, pursuant to Administrative
Order no. 13, shall continue until further order of the Court.


  C. Filing Dismissal Orders on PACER/ECF in the Eastern
    District of Pennsylvania

    The third request made by Plaintiffs is that the Court
allow Plaintiffs to file dismissal orders and/or orders for
transfer to the "bankruptcy only" docket on PACER/ECF.  (Pls.
Mot. to Amend at 17.)  The Clerk of the Court is in the process
of transferring all electronic files in all cases to this
judicial district and assigning each individual plaintiff in the
MDL 875 litigation from across the country an Eastern District of
Pennsylvania civil action number.[12]

    If the case involves multiple plaintiffs, the Court is
severing the cases and requiring such Plaintiffs to file an
amended complaint and pay a filing fee.  Each Plaintiff who files
an amended complaint is then assigned an E.D. Pa. number.[13] Once

---

[12] A significant number of Plaintiffs in the litigation have
already been assigned E.D. Pa. civil action numbers.  In such
cases, Plaintiffs' counsel are required to file these and any
other motions electronically on the PACER/ECF system, pursuant to
MDL 875 Administrative Order no. 11, section 1(B)(II) and Local
Rule of Civil Procedure 5.1.2(2)(a).  The Court will sever each
multi-plaintiff case and assign each Plaintiff an E.D. Pa. civil
action number and require that Plaintiff file an amended
complaint.  The amended complaint must be mailed as a hard copy
to the E.D. Pa. Clerk's Office, and include a copy of the
document saved as a PDF on a CD-ROM.  Once the amended complaint
is received and uploaded, the E.D. Pa. PACER/ECF system will be
available for electronic filing in each Plaintiff's case.

[13] Cases with E.D. Pa. numbers, if originating in another
district (the transferor court), in the event of remand, will be
remanded to the transferor court.

a Plaintiff is assigned an E.D. Pa. civil action number, either by transfer of the file from the transferor district or by the filing of an amended complaint in this district, these motions may be filed electronically in the E.D. Pa. using the PACER/ECF system.  Until Plaintiff is assigned an E.D. Pa. civil action number, any motions filed on behalf of that Plaintiff must be filed in the transferor district court and a separate copy must be sent to the clerk in the E.D. Pa.  This policy is reflected in the recently amended Administrative Order no. 11. (Administrative Order no. 11, doc. no. 5936, Mar. 16, 2009.)

Once all of the cases are transferred from the various district courts to the E.D. Pa., which the Court expects will occur in the next few months, PACER/ECF filing on the E.D. Pa system will be available to all Plaintiffs and Defendants in the entire MDL 875 litigation.

D. Grouping Non-Malignant Claims for Settlement Conference

Finally, Plaintiffs request that the Court allow them to group non-malignant cases for settlement conferences.  (Pls. Mot. to Amend at 17.)  The Court is scheduling settlement conferences, both in individual cases and groups of cases, on an ongoing basis.  Four Magistrate Judges and at least one District Judge are also conducting settlement conferences in appropriate cases on an ongoing basis.  With these available resources, the Court is able to schedule many individual and group settlement

conferences simultaneously.  If Plaintiffs' counsel wishes to request a settlement conference in a case or group of cases, the procedures making such request are available on the MDL 875 website.  See "Settlement Conference Procedures," MDL 875: In re: asbestos website, available at www.paed.uscourts.gov/mdl875.asp.

III.  CONCLUSION

　　　The Court's case management procedures are not arbitrary.  These procedures are designed to help manage a large and diverse docket and to accommodate fairly the many diverse interests present in the litigation.  The request by certain Plaintiffs to alter it wholesale will neither improve efficiency nor promote the interests of justice.

　　An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | MDL DOCKET NO. 875 |
| LIABILITY LITIGATION (No. VI) | : | |
| | : | |
| | : | Civil Action No. |
| | : | 2:01-md-875 |
| THIS DOCUMENT RELATES TO | : | |
| ALL ACTIONS | : | |

## O R D E R

AND NOW, this **30th** day of **April, 2009,** it is hereby

**ORDERED** that certain Plaintiffs' motion to alter or amend

Administrative Order nos. 3, 12, 13, 14, 15 and 16 (doc. no.

5539) is **DENIED without prejudice.**

It is further **ORDERED** that Administrative Order no. 18 shall

be entered forthwith.

**AND IT IS SO ORDERED.**

        s/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**

## EXHIBIT "A"

### MDL-875 CASE MANAGEMENT FLOW CHART

1.   Case filed, and transferred to the E.D. Pa

2.   If a plaintiff is in a multi-plaintiff case, the Court is
     severing out each plaintiff and they must file with the
     court an amended complaint within 60 days of the order
     severing their case.

3.   Plaintiff must comply with Administrative Order no. 12



**Note:** A non-viable defendant
is a party that is in
Bankruptcy proceedings

April 29, 2009



In Re: Asbestos (MDL No. 875)

| Home Page | Contents | Services |
| Documents | MDL | Search |

Select an Option and Click the Go! Button-->   [Go!]

## IMPORTANT

PLEASE SEE Comprehensive MDL 875 Calendar. On this calendar are all currently scheduled Settlement Conferences, Motions Hearings, and Status and Scheduling Conferences.

For Cases in which a Rule 26(f) Conference is ordered, PLEASE SEE Discovery Plan Template. This template includes the Court's presumptive deadlines for completing the necessary steps of trial preparation.

PLEASE SEE Case management flow chart. This flow chart illustrates the Court's case management scheme.

NOTICE TO ALL COUNSEL IN MDL 875: If a plaintiff has been assigned an E.D. Pa. case number, all documents must be filed electronically via CM/ECF in that docket number. It is NOT necessary to send a courtesy copy to Chambers if a document is filed electronically. If counsel feels that they wish to send a courtesy copy, please clearly indicate that it is a courtesy copy so duplicate docket entries are not made. Also, on proposed orders, please include "Presiding Judge Eduardo C. Robreno" under the signature line.

NOTICE: Updates made on July 27, 2009. See Updates link below for details.



- Updates
- Case Administration & Contact Information
- Steering Committees
- Settlement Conference Procedures
- Settlement Conference Schedule
- Motion Procedure
- Motions Schedule
- Trial Procedure
- Information for Cases Originally Filed in the Eastern District of Pennsylvania
- Administrative Orders
- *Administrative Order No. 12A*
- Comprehensive MDL 875 Calendar
- Opinions

## INTRODUCTION

MDL 875, In Re: Asbestos Products Liability Litigation (No. VI), involves issues relating to personal injury damages caused by asbestos products. It currently consists of about 60,000 cases and 3,500,000 claims transferred by the Judicial Panel on MultiDistrict Litigation to the Eastern District of Pennsylvania. Each case typically consists of claims by multiple plaintiffs against multiple defendants.

As Chief Judge Becker described it, asbestos "is a tale of danger known about in the 1930s, [with] exposure inflicted upon millions of Americans in the 1940s and 1950s, [with] injuries that began to take their toll in the 1960s, and [with] a flood of lawsuits beginning in the 1970s".[1] Asbestos related diseases may have a latency period of 40-50 years, resulting in a continuous stream of claims that has continued through the present. One of the purposes of transferring all the federal asbestos litigation into a single district was to "facilitate global settlements, and allow the transferee court to fully explore ... national disposition techniques such as classes and sub-classes under Rule 23".[2] In early 1993, a class action was commenced which sought to settle the claims of between 25,000 and 2,000,000 individuals who had been exposed to asbestos products. The settlement was between the

proposed class of individuals and a group of 20 companies known as the Center for Claims Resolution (CCR). The 3rd Circuit Court of Appeals, in Georgine v. Amchem Products (83 F. 3d. 610), ruled that the class did not satisfy the requirements of Federal Rule of Civil Procedure 23. In 1997, the Supreme Court subsequently affirmed this ruling in Amchem Products, Inc. v. Windsor (521 U.S. 591).

After the Supreme Court ruled that the proposed settlement class should be decertified, the next opportunity for a mass settlement was through legislative action. There have been several attempts at legislative action to facilitate the resolution of asbestos claims, but none have received the support necessary to become law. These attempts are the Fairness in Asbestos Compensation Act of 1999[3], the Asbestos Compensation Act of 2000[4], the Asbestos Claims Criteria and Compensation Act of 2003[5], and the Fairness in Asbestos Injury Resolution (FAIR) Act of 2006[6]. The FAIR act was sponsored by Sen. Arlen Specter of Pennsylvania, was introduced in the Senate and was reported by the Senate Judiciary Committee. It was never voted on by the Senate.

Since the Supreme Court decision in Windsor, the Eastern District of Pennsylvania has approached MDL 875 under a "one plaintiff, one claim" policy. Beginning with Administrative Order No. 12, the court has initiated an aggressive, pro-active policy in setting cases for settlement conferences, motion hearings and trials. Presiding Judge Robreno has devised further procedures for resolving these actions which will commence in January, 2009. The procedures can be found by clicking on the links above.

## Documents may require Adobe Reader. Please read the Document Tips before accessing documents!

[1] Georgine v. Amchem Products, Inc., 83 F.3d 610, 618 (3rd Cir. 1996).
[2] See Id. at 619.
[3] S. 758, 106th Cong. (1999).
[4] H.R. 1283, 106th Cong. (2000).
[5] S. 413, 108th Cong. (2003).
[6] S. 3274. 109th Cong. (2006).

PLEASE NOTE Judicial Disclosure Notice from Presiding Judge Eduardo C. Robreno.