MDL 875

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 14 2009

FILED
CLERK'S OFFICE

PLEADING NO. 5905

# BEFORE THE JUDICIAL PANEL ON

# MULTIDISTRICT LITIGATION

MDL No. 875    -    IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION

(NO. VI)

---

*List only the cases you are opposing*:

***Roosevelt Samuel v. Liberty Mutual Insurance Co., et al.,*** M.D. Louisiana, C.A. No. 09-448

## MOTION TO VACATE CTO-324

Now comes Plaintiff, Roosevelt Samuel, who moves this Panel to vacate its order conditionally transferring this matter to the Eastern District of Pennsylvania for inclusion in the centralized proceedings occurring there on that docket. Support for this motion is set forth in "Memorandum in Support of Plaintiff's Motion to Vacate CTO-324" filed in this matter.

OFFICIAL FILE COPY    IMAGED AUG 1 4 2009

Respectfully submitted:

Brian F. Blackwell (La. Bar Roll No. 18119)
Sandra A. Jelks (La. Bar Roll No. 22088)
**BLACKWELL & ASSOCIATES**
9270 Siegen Lane, Suite 201
Baton Rouge, Louisiana 70810
Telephone:   (225) 769-2462
Telecopier:   (225) 769-2463
E-mail:        brian@blackwell-associates.com

*Counsel for plaintiff, Roosevelt Samuel*

## <u>SCHEDULE OF ACTIONS – RELATED CASES PENDING IN FEDERAL DISTRICTS</u>

CASE NAME:  Roosevelt Samuel v. Liberty Mutual Insurance Company

CASE NUMBER:  No. 09-448-JVP-SCR

DISTRICT & DIVISION:  Middle District of Louisiana, Civil Division

JUDGE:  Judge John V. Parker

PARTIES:
      Roosevelt Samuel
      Bituminous Fire and Marine Insurance Company
      The Traveler's Indemnity Company
      Liberty Mutual Insurance Company
      Royal Indemnity Company as successor by merger to Royal Insurance Company of
          America f/k/a Royal Globe Insurance Company, individually and as successor by
          merger to Queen Insurance Company of America

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all parties as noted below:

### DEFENSE COUNSEL by U.S. Mail

**Bituminous Fire and Marine Insurance Company, The Traveler's Indemnity Company, Liberty Mutual Insurance Company as the insurers of B & B Engineering and Supply Co. of Louisiana, Inc. and B. & B. Engineering and Supply Company Inc. and their executive officers**
Duncan Courington & Rydberg
Mr. William J. Sommers, Jr. and Ms. Magali Puente Martin
400 Poydras Street, Suite 1200
New Orleans, LA 70130

**Royal Indemnity Company as successor by merger to Royal Insurance Company of America f/k/a Royal Globe Insurance Company, individually and as successor by merger to Queen Insurance Company of America as insurer of The Aber Company, Inc.**
Pugh Accardo Haas & Radecker, LLC
Mr. Lawrence G. Pugh, III and Ms. Jacqueline A. Romero
Energy Center
1100 Poydras Street, Suite 3200
New Orleans, LA 70163-3200

**Liberty Mutual Insurance Company as insurer of The Aber Company, Inc.**
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
Ms. Elia Diaz-Yaeger and Ms. Katherine L. Osborne
27th Floor, Pan American Life Center
601 Poydras Street
New Orleans, LA 70130

**INVOLVED COUNSEL by U.S. Mail**

Peter G. Angelos
Law Offices of Peter G. Angelos PC
One Charles Center, 22nd Floor
100 North Charles Street
Baltimore, MD  21201

Janet W. Black
Ward Black PA
208 West Wendover Avenue
Greensboro, NC  27401-1307
Russell W. Budd
Baron & Budd PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX  75219

John D. Cooney
Cooney & Conway
120 North LaSalle Street
Suite 3000
Chicago, IL  60602-2415

Elia Demetria Diaz-Yaeger
Lugenbuhl Wheaton Peck Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA  70130

William F. Mahoney
Segal McCambridge Singer &
Mahoney Ltd.
233 South Wacker Drive, Suite 5500
Chicago, IL  60606

Kevin M. Jordan
Baker Botts LLP
910 Louisiana
One Shell Plaza
Houston, TX  77002-4995

Paul Kalish
Crowell & Moring LLP
1001 Pennsylvanie Avenue, N.W.
Washington, DC  20004-2595
Peter A. Kraus
Waters & Kraus LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX  75204

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074

Roger B. Lane
Lane & Gossett
1601 Reynolds Street
Brunswick, GA  31520

William J. Sommers, Jr.
Duncan Courington & Rydberg LLC
400 Poydras Street
Suite 1200
New Orleans, LA  70130

Robert C. Malaby
Malaby & Bradley
150 Broadway, Suite 600
New York, NY 10038

Michael P. Thornton
Thornton & Naumes LLP
100 Summer Street, 30th Floor
Boston, MA 02110

John P. McShea
McShea Tecce PC
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Walter G. Watkins, Jr.
Forman Perry Watkins Krutz &
Tardy PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Philip McWeeny
Schiff Hardin LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Steven Kazan
Kazan McClain Abrams
Fernandez et al
171 Twelfth Street
Third Floor
Oakland, CA 94607

Thomas A. Packer
Gordon & Reese LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Lawrence G. Pugh, III
Pugh Accardo Hass &
Radecker LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA 70163-2000

Joseph F. Rice
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

## DISTRICT COURT, MIDDLE DISTRICT OF LOUISIANA by U.S. Mail

U.S. District Court, Middle District of Louisiana
Clerk of Court
777 Florida Street, Suite 139
Baton Rouge, LA 70801

Baton Rouge, Louisiana, this 13th day of August, 2009.

Sandra A. Jelks

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

MDL No. 875        -        IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION

(NO. VI)

---

*List only the cases you are opposing*:

***Roosevelt Samuel v. Liberty Mutual Insurance Co., et al.,*** M.D. Louisiana, C.A. No. 09-448

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE CTO-324

This memorandum is submitted on behalf of the plaintiff, Roosevelt Samuel, in support of his Motion to Vacate CTO-324. For the reasons that follow, this matter does not share sufficient questions of fact with those in the centralized proceedings occurring on the docket in MDL No. 875. Furthermore, inclusion of this case in those proceedings will not serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

## I.    BACKGROUND

This is an action initiated by Roosevelt Samuel in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana on May 27, 2009, against the insurers of The Aber

Company, Inc. ("Aber"), B&B Engineering and Supply Company Inc. ("B&B") and B&B Engineering and Supply Co. of Louisiana, Inc. ("B&B-La.") and the executive officers of B&B and B&B-La. pursuant to the Louisiana Direct Action Statute, Louisiana Revised Statute 22:1269.

The petition alleges that all of these defendants caused or contributed to Mr. Samuel's development of malignant mesothelioma under theories of strict products liability, strict liability and negligence.

On July 13, 2009, Liberty Mutual Insurance Company, Bituminous Fire and Marine Insurance Company and The Traveler's Indemnity Company as the insurers of B&B, B&B-La. and the executive officers of B&B and B&B-La., with the consent of the insurers of Aber, removed this matter to the U.S. District Court Middle District of Louisiana. An Amended Notice of Removal was filed on July 14, 2009.

On July 17, 2009, the Judicial Panel on Multidistrict Litigation conditionally transferred the case, to the Eastern District of Pennsylvania, consolidating it with other cases involving asbestos-related injury for pre-trial purposes. On July 30, 2009, Plaintiff filed a Notice of Opposition to CTO-324. On August 10, 2009, Mr. Samuel filed a Motion to Remand this matter

as it is non-removable under 28 USC § 1332(c)(1) and the second sentence of 28 USC § 1441(b).[1]

For the reasons that follow, Roosevelt Samuel submits that the order, conditionally transferring his case to MDL No. 875, should be vacated.

## II.   LAW AND ARGUMENT

To qualify for transfer, a civil action must meet the following criteria.  First, it must involve one or more common questions of fact pending in more than one action previously transferred.  Second, transfer must promote the just and efficient conduct of the action and be for the convenience of parties and witnesses.  *Ivy v. Diamond Shamrock Chem. Co.*, 901 F.2d 7, 9 (2d Cir. 1990) (citation omitted).  Mr. Samuel's case meets neither of these criteria.

### THE UNIQUE FACT ISSUES IN THIS CASE CLEARLY PREDOMINATE

Mr. Samuel's cause of action is based upon the Louisiana Direct Action Statute.[2] Because Direct Action Statutes are recognized in only a handful of states, few, if any, MDL No.

---

[1] Attached hereto as Exh. "A."

[2] The Louisiana legislature enacted the Louisiana Direct Action Statute to protect the interest of injured parties by allowing them to bring an action directly against the responsible tortfeasor's insurer.  The statute reflects the legislature's concern over insurers' then routine practice of inserting "no action" clauses into their policies.  The no-action clause allowed the insurer to reimburse the insured only after the insured had paid the injured party.  If the tortfeasor was insolvent or bankrupt, the injured party was left without compensation.  Viqar M. Shariff, *Recent Developments:  Grubbs v. Gulf Internation Marine Co.:  The Louisiana Supreme Court Declares the Direct Action Statute Applicable to Marine P&I Insurance*, 68 TUL. L. REV. 1653.

875 cases are based upon this Statute.  Thus, this case raises very limited questions of fact common to the MDL No. 875 litigation.

Making this case even more unique is that these particular insurance companies, with Aber and B&B as their insureds, are not defendants in previously transferred cases.  As a result, this is not a case where substantial discovery as to these particular defendants has already taken place in MDL No. 875.  Rather, Plaintiff will seek discovery from these companies, in their capacity as insurers of Aber and B&B, that is vastly different from the discovery obtained from the common core of defendants involved in MDL No. 875 cases.

Therefore, because unique fact issues clearly predominate, the first criteria for transfer is not satisfied.

### TRANSFER OF THIS MATTER IS NOT CONVENIENT

Neither the parties nor their witnesses would be convenienced by a transfer because the greatest part of discovery will relate to local issues.  In addition, a majority of witnesses are local.

**TRANSFER OF THIS MATTER DOES NOT PROMOTE EFFICIENCY**

Transfer is to be ordered only where **significant** economy and efficiency in judicial administration may be obtained. *Ivy*, 901 F.2d at 9 (emphasis added). With very little, if any, facts in common with other MDL No. 875 actions and with a majority of witnesses in the area where the suit is pending, as noted above, this case is just as easily resolved by the District Court. To do otherwise would be to transfer for the sake of transferring, and would not serve one of the goals of the multidistrict litigation scheme -- that being, the efficient administration of the case. (Judge Eduardo C. Robreno's Mem. of 4-30-09).

Efficient pretrial proceedings can be accomplished without transfer, and in fact, have already begun. For instance, on July 28, 2009, Mr. Samuel's video perpetuation deposition took place. In addition, prior to his deposition, Plaintiff provided all defendants with his response to their master discovery requests. As to the limited amount of common facts, any discovery that has been completed in MDL No. 875 can be made available in this case without recourse to transfer, thus avoiding what little discovery would be duplicated. For these reasons, the efficient conduct of this action would not be promoted by transfer.

**JUSTICE WILL NOT BE SERVED IF THIS CASE IS TRANSFERRED**

As of January 1, 2009, **58,625 cases, encompassing 3.3 million claims**, were pending in MDL No. 875 (Judge Eduardo C. Robreno's Mem. of 4-30-09)(emphasis added). Due to the

enormous number of claims pending in MDL No. 875 and the inherent nature of the multidistrict litigations proceeding (*see generally*, *Sales v. Weyerhaeuser Co.*, 156 P.3d 303 (Wash. App. 2d Div. 4/2407); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695 (S.D. Tex. 2002); *In re Maine Asbestos Cases*, 44 F. Supp. 2d 368 (D. Me. 1999)), Mr. Samuel, who is dying from malignant mesothelioma, will never have his day in court if this case is transferred.[3]   Moreover, the "overriding objective" of the Eastern District of Pennsylvania District Court "that the sick and dying, … should have their claims addressed first" will not be achieved.   *In re Patenaude*, 210 F.3d 135, 139 (3d Cir. 2000)(citation omitted).

**CONCLUSION**

As the foregoing establishes, the criteria for transfer of this case has not been met.  Mr. Samuel's case is moving forward.  However, transfer would interrupt this orderly progress being made and would result in no benefit to the litigation as a whole.  Therefore, Roosevelt Samuel respectfully requests that, in his case, CTO-324 be vacated.

---

[3] Important to note is that a hearing to give Mr. Samuel an expedited trial date had been on the 19th Judicial District Court's docket.  Therefore, in all probability, Mr. Samuel will have his day in court if this case is not transferred.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 14 2009

FILED
CLERK'S OFFICE

Respectfully submitted:

Brian F. Blackwell (La. Bar Roll No. 18119)
Sandra A. Jelks (La. Bar Roll No. 22088)
**BLACKWELL & ASSOCIATES**
9270 Siegen Lane, Suite 201
Baton Rouge, Louisiana 70810
Telephone:   (225) 769-2462
Telecopier:   (225) 769-2463
E-mail:  brian@blackwell-associates.com
              sandy@blackwell-associates.com
*Counsel for plaintiff, Roosevelt Samuel*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing **Memorandum in Support of**

**Motion to Vacate CTO-324** has been served upon all parties as noted below:

**DEFENSE COUNSEL by U.S. Mail**

**Bituminous Fire and Marine Insurance Company, The Traveler's Indemnity Company, Liberty Mutual Insurance Company as the insurers of B & B Engineering and Supply Co. of Louisiana, Inc. and B. & B. Engineering and Supply Company Inc. and their executive officers**

Duncan Courington & Rydberg
Mr. William J. Sommers, Jr. and Ms. Magali Puente Martin
400 Poydras Street, Suite 1200
New Orleans, LA  70130

**Royal Indemnity Company as successor by merger to Royal Insurance Company of America f/k/a Royal Globe Insurance Company, individually and as successor by merger to Queen Insurance Company of America as insurer of The Aber Company, Inc.**

Pugh Accardo Haas & Radecker, LLC
Mr. Lawrence G. Pugh, III and Ms. Jacqueline A. Romero
Energy Center
1100 Poydras Street, Suite 3200
New Orleans, LA  70163-3200

**Liberty Mutual Insurance Company as insurer of The Aber Company, Inc.**

Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
Ms. Elia Diaz-Yaeger and Ms. Katherine L. Osborne
27th Floor, Pan American Life Center
601 Poydras Street
New Orleans, LA  70130

**<ins>INVOLVED COUNSEL by U.S. Mail</ins>**

Peter G. Angelos
Law Offices of Peter G. Angelos PC
One Charles Center, 22nd Floor
100 North Charles Street
Baltimore, MD  21201

Janet W. Black
Ward Black PA
208 West Wendover Avenue
Greensboro, NC  27401-1307
Russell W. Budd
Baron & Budd PC
3102 Oaklawn Avenue
Suite 1100
Dallas, TX  75219

Kevin M. Jordan
Baker Botts LLP
910 Louisiana
One Shell Plaza
Houston, TX  77002-4995

Paul Kalish
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Peter A. Kraus
Waters & Kraus LLP
3219 McKinney Avenue
Suite 3000
Dallas, TX  75204

John D. Cooney
Cooney & Conway
120 North LaSalle Street
Suite 3000
Chicago, IL  60602-2415

Elia Demetria Diaz-Yaeger
Lugenbuhl Wheaton Peck Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA  70130

William F. Mahoney
Segal McCambridge Singer &
Mahoney Ltd.
233 South Wacker Drive, Suite 5500
Chicago, IL  60606

Robert C. Malaby
Malaby & Bradley
150 Broadway, Suite 600
New York, NY  10038

John P. McShea
McShea Tecce PC
1717 Arch Street
28th Floor
Philadelphia, PA  19103

Philip McWeeny
Schiff Hardin LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA  94105

David C. Landin
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074

Roger B. Lane
Lane & Gossett
1601 Reynolds Street
Brunswick, GA  31520

William J. Sommers, Jr.
Duncan Courington & Rydberg LLC
400 Poydras Street
Suite 1200
New Orleans, LA  70130

Michael P. Thornton
Thornton & Naumes LLP
100 Summer Street, 30th Floor
Boston, MA  02110

Walter G. Watkins, Jr.
Forman Perry Watkins Krutz &
Tardy PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Steven Kazan
Kazan McClain Abrams
Fernandez et al
171 Twelfth Street
Third Floor
Oakland, CA  94607

Thomas A. Packer
Gordon & Reese LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA  94111

Lawrence G. Pugh, III
Pugh Accardo Hass &
Radecker LLC
1100 Poydras Street
Energy Centre, Suite 2000
New Orleans, LA  70163-2000

Joseph F. Rice
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464

## DISTRICT COURT, MIDDLE DISTRICT OF LOUISIANA by U.S. Mail

U.S. District Court, Middle District of Louisiana
Clerk of Court
777 Florida Street
Suite 139
Baton Rouge, LA  70801

Baton Rouge, Louisiana, this 13th day of August, 2009.

Sandra A. Jelks

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 1 4 2009

FILED
CLERK'S OFFICE

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ROOSEVELT SAMUEL                               CIVIL ACTION

VERSUS                                                 NUMBER 09-448-JVP-SCR

THE ABER COMPANY, INC., ET AL

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### MOTION TO REMAND

This memorandum is submitted on behalf of the plaintiff, Roosevelt Samuel, in support of his Motion to Remand this matter to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.  For the reasons that follow, Roosevelt Samuel submits this Court lacks subject matter jurisdiction over this matter under 28 U.S.C §1332 and that it should, therefore, be remanded to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

## I.    BACKGROUND

On March 19, 2009, Mr. Samuel was diagnosed with malignant pleural mesothelioma at the Veteran's Administration Medical Center ("VAMC") in Houston, Texas.[1]  On April 14, 2009, Mr. Samuel filed suit against various defendants in Madison County, Illinois.  The present action was initiated by Roosevelt Samuel in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana on May 27, 2009.[2]

---

[1] See "Exhibit F" to the Notice of Removal.

[2] The present suit was filed in an effort to obtain a full recovery of the damages to which he is entitled because (a) none of the individual or corporate defendants in the present action are subject to personal jurisdiction in Illinois (the individual and corporate defendants are citizens of the states of Louisiana and Texas who, to the best of counsel's knowledge, information and belief, do not sufficient contacts with the State of Illinois for it to exercise "long-arm" jurisdiction over them) and (b) Illinois does not permit

For purposes of stating a cause of action against the insurers named as defendants, Mr. Samuel made allegations against four distinct categories of insureds. Those categories include (1) manufacturers, sellers, suppliers and distributors of asbestos and/or asbestos-containing products to which Mr. Samuel was exposed,[3] (2) contractors who installed and removed asbestos and/or asbestos-containing products to which Mr. Samuel was exposed,[4] (3) employers of Mr. Samuel,[5] and (4) the executive officers of B&B and B&B-La.[6] The petition also alleges a cause of action against the insurers of Aber, B&B, B&B-La. and the executive officers of B&B and B&B-La.[7]

The petition alleges that all of the insureds in their various capacities caused or contributed to Mr. Samuel's development of malignant mesothelioma under theories of strict products liability, strict liability and negligence and that the Direct Action Insurance Defendants were liable to him as a result of that fault.

---

"direct action" suits against insurers. *Rockford Mutual Ins. Co., v. Amerisure Ins. Co.*, 925 F.2d 193, 196 (7th Cir. 1991)(a strong public policy in Illinois prohibits direct actions against insurance companies)

[3] The Aber Company, Inc. ("Aber"), B & B Engineering and Supply Company Inc. ("B&B") and B & B Engineering and Supply Co. of Louisiana, Inc. ("B&B-La.")

[4] Aber, B&B and B&B-La.

[5] B&B and B&B-La.

[6] Armand H. Hullinghorst, W. Robert Murfin and W. M. Proudfit.

[7] Those insurers are: Royal Indemnity Company as successor by merger to Royal Insurance Company of America formerly known as Royal Globe Insurance Company, individually and as successor by merger to Queen Insurance Company of America ("Royal"), Bituminous Fire and Marine Insurance Company ("Bituminous"), The Traveler's Indemnity Company ("Travelers") and Liberty Mutual Insurance Company ("Liberty Mutual"). These defendants are hereinafter collectively referred to as the "Direct Action Insurance Defendants"

Concurrently with the filing of the petition, and in light of his precarious health and age,[8] Mr. Samuel requested a hearing to determine whether he was entitled to a preferential trial setting under Louisiana Code of Civil Procedure article 1573.[9]

On June 9, 2009, in accordance with various Case Management Orders adopted by the 19th Judicial District Court, Mr. Samuel provided all defense counsel with master discovery responses. Those master discovery responses consisted of 37 pages of responses to written discovery,[10] an affidavit of Mr. Samuel, the diagnosing pathology report from the VAMC and various authorizations that were signed by Mr. Samuel.[11]

On June 19, 2009, counsel for plaintiff scheduled Mr. Samuel's video perpetuation deposition for July 8, 2009 and advised defense counsel that Mr. Samuel would be available for a discovery deposition on July 7, 2009.

On June 24, 2009, defendants filed a motion to quash Mr. Samuel's video perpetuation deposition in the state court action.[12] On that date, defense counsel also

---

[8] Mr. Samuel is 77 years of age.

[9] Louisiana Code of Civil Procedure article 1573 provides: "The court shall give preference in scheduling upon the motion of any party to the action who presents to the court documentation to establish that the party has reached the age of seventy years or who presents to the court medical documentation that the party suffers from an illness or condition because of which he is not likely to survive beyond six months, if the court finds that the interests of justice will be served by granting such preference."

[10] The responses included answers to 44 interrogatories (not including sub-parts) and responses to 11 requests for production of documents.

[11] This included authorizations for the release of medical records, medical bills, employment records, union records, unemployment records, veteran's records, military records, tax records, social security records and social security earnings records.

[12] Record Document No. 14.

received a copy of Mr. Samuel's depositions in the Illinois case.[13]  On June 30, 2009, all counsel were informed that a hearing would be held on July 2, 2008 concerning Mr. Samuel's request for an expedited trial setting and the Defendants' motion to quash Mr. Samuel's video perpetuation deposition.

On July 1, 2009, Defendants filed a Joint Motion to Dismiss for Forum Non Conveniens.[14]  On July 2, 2009 Defendants filed a joint opposition to Mr. Samuel's motion for a preferential trial date.[15]

A hearing was held on July 2, 2009 before state district judge *ad hoc* Robert J. Burns.[16]  The state district court granted the relief requested by the defendants in their motion to quash on the basis that they had not yet had an opportunity to review the transcripts of Mr. Samuel's deposition taken in the Illinois proceeding.  The state district judge granted defendants an additional 20 days to prepare for Mr. Samuel's deposition and ordered that Mr. Samuel's video perpetuation deposition could proceed on July 28, 2009.[17]

---

[13] Amended Notice of Removal, ¶3.  These depositions (discovery and evidence) lasted six days and encompass 1165 pages of testimony.

[14] This pleading was not included in the filings from the state court record.  Counsel for plaintiff searched the state court record on July 22, 2009 and was unable to locate this pleading

[15] This pleading was also not included in the filings from the state court record.  Counsel for plaintiff searched the state court record on July 22, 2009 and was unable to locate this pleading

[16] Record Document No. 14

[17] *Id.*  The deposition was originally scheduled for July 8, 2009.

On July 13, 2009, this matter was removed to this Court.[18]  An Amended Notice of Removal was filed on July 14, 2009.[19]  The Amended Notice of Removal alleges "fraudulent joinder" based solely upon Mr. Samuel's answers to the following three questions posed to him during his deposition taken in the Illinois case:

> Q.   Did you ever work with or around Aber Company? Does that ring a bell?
>
> A.   I remember Aber Company, but I never did work around them.  Whether they were out in the field or not, I don't know.
>
> Q.   Did you ever -- was Aber Company a distributor like B&B or do you know?
>
> A.   If I'm not mistaken, they were sort of like B&B.
>
> Q.   Okay.  Did you ever use any of their product or go to any of their facilities or see them as a contractor around on any facility?
>
> A.   I can't recall that right now.[20]

On July 15, 2009, in accordance with the state district court's order and counsel for plaintiff's intention announced in open court on July 2, 2009, counsel for Mr. Samuel noticed Mr. Samuel's video perpetuation deposition in this matter for July 28, 2009.  As previously announced to defense counsel in open court, counsel for Mr. Samuel also

---

[18] This matter was removed by Liberty Mutual, Bituminous and Travelers as the insurers of B&B, B&B-La. and the executive officers of B&B and B&B-La. with the consent of Royal and Liberty Mutual as insurers of Aber.

[19] Record Document No. 3.

[20] Deposition of Roosevelt Samuel, p. 129 (June 10, 2009).

advised defense counsel of Mr. Samuel's availability for discovery deposition on July 27, 2007.[21]

On July 21, 2009, defendants filed a Joint Motion to Quash Perpetuation Deposition of Roosevelt Samuel, or alternatively, for Protective Order.[22]  This motion was denied by Ruling on Motion to Quash or for Protective Order on July 24, 2009.[23]

Defendants then sought leave for additional time, beyond that permitted by Rule 30(d)(1) of the Federal Rules of Civil Procedure, to cross-examine Mr. Samuel at his video perpetuation deposition.[24]  By Ruling on Motion for Additional Time entered on July 27, 2009, the Court granted defendants motion and permitted them an "additional 10 and ½ hours, after the plaintiff's direct examination is concluded, to question the plaintiff."[25]  Mr. Samuel's deposition proceeded on July 28, 2009.  At that deposition, the defendants' examination of Mr. Samuel lasted from 1:27 P.M. to 1:57 P.M., a total of 30 minutes.

For the reasons that follow, Roosevelt Samuel submits that this matter is non-removable under 28 U.S.C. §1332(c)(1) and 28 U.S.C. §1441(b) and, as such, that this Court lacks subject matter jurisdiction over this matter and that it should, therefore, be remanded to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

---

[21] Despite this offering, no defendant ever noticed Mr Samuel's discovery deposition.

[22] Record Document No. 7

[23] Record Document No  18

[24] Record Document No  19

[25] Record Document No. 23.

## II.  LAW AND ARGUMENT

### A.  Federal Jurisdiction Generally

"'Federal courts are courts of limited jurisdiction.'" *Rasul v. Bush*, 542 U.S. 466, 489, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004)(*quoting Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)); *Johnson v. United States*, 460 F.3d 616, 621 n. 6 (5th Cir. 2006); *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 337 (5th Cir. 2004); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). "'They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" *Rasul*, 542 U.S. at 489, 124 S.Ct. 2686 (*quoting Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673 (citations omitted)). A federal district court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery*, 243 F.3d at 916 (*citing Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).

Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. §§ 1331, 1332; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005);

*McDonal*, 408 F.3d at 181; *Howery*, 243 F.3d at 914-15; *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000).

### B.    Federal Jurisdiction over Removed Actions

In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. See 28 U.S.C. § 1447(c); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 (5th Cir. 2005).

When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006); *In re Hot-Hed Inc.*, 477 F.3d 320 (5th Cir. 2007); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005); *Boone*, 416 F.3d at 388; *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Howery*, 243 F.3d at 919. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)(*citing* 28 U.S.C. § 1441(a)); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). "The removal statute ties the propriety of removal to the original jurisdiction of the federal district courts." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); *see* 28 U.S.C. § 1441(a). Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any

doubt resolved against removal and in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir.2007); *In re Hot-Hed Inc.*, 47,7 F.3d at 323; *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002); *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002); *Manguno*, 276 F.3d at 723.

In order to determine whether jurisdiction is present in a removed action, the claims set forth in the state court petition are considered as of the date of removal. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 558 n. 1 (5th Cir. 2004); *Manguno*, 276 F.3d at 723; *Howery*, 243 F.3d at 916; *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *Texas Beef Group v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000). In removed cases when, as in the present case, there is no suggestion that a federal question is involved, subject matter jurisdiction exists only if there is complete diversity among the parties and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332; *Lincoln Prop. Co.*, 546 U.S. at 89, 126 S.Ct. 606; *Exxon Mobil Corp.*, 545 U.S. at 552, 125 S.Ct. 2611; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996); *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 323 (5th Cir.), *cert. denied*, 534 U.S. 997, 122 S.Ct. 468, 151 L.Ed.2d 384 (2001); *Gebbia*, 233 F.3d at 882. Complete diversity requires that no plaintiff be a citizen of the same state as any defendant. *See Exxon Mobil Corp.*, 545 U.S. at 552, 125 S.Ct. 2611; *Caterpillar Inc.*, 519 U.S. at 68, 117 S.Ct. 467; *Heritage Bank*, 250 F.3d at 323; *Howery*, 243 F.3d at 920. Furthermore, removal is appropriate only if none of the parties properly joined and

served as defendants are citizens of the state in which the action was brought. *See* 28 U.S.C. § 1441(b); *Lincoln Prop. Co.*, 546 U.S. at 89, 126 S.Ct. 606; *Gasch*, 491 F.3d at 281; *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 531-32 (5th Cir. 2006).

### C.    28 U.S.C. §1332(c)(1) and 28 U.S.C. §1441(b)

In the present case, there is no dispute that Mr. Samuel is a citizen of the State of Texas and the Direct Action Insurance Defendants are incorporated in and have their principal places of business in states other than Texas. Mr. Samuel contends, however, that this action is non-removable because Liberty Mutual and Royal (as the insurers of Aber) are deemed to be citizens of the State of Louisiana (where Aber is incorporated) and Bituminous, Travelers and Liberty Mutual (as the insurers of B&B-La.) are deemed to be citizens of the State of Louisiana (where B&B-La. is incorporated).

The removing defendants acknowledge in the Amended Notice of Removal that this "is an asbestos action brought ... under the Louisiana Direct Action statute."[26] The Louisiana Direct Action statute, LSA-R.S. 22: 1269, provides Mr. Samuel with a "right of direct action against the insurer." LSA-R.S. 22:1269(B)(1). Pursuant to 28 U.S.C. §1332(c)(1), the Direct Action Insurance Defendants are deemed to be citizens of:

(1)    any State by which the insurer has been incorporated;

(2)    the State where the insurer has its principal place of business; and

(3)    the State of which the insured is a citizen.

Thus, under 28 U.S.C. §1332(c)(1), all of the Direct Action Insurance Defendants are deemed to be citizens of the State of Louisiana because both Aber and B&B-La. are

---

[26] Amended Notice of Removal ¶1.

incorporated in, and therefore citizens of, the State of Louisiana. As such, this action is non-removable under 28 U.S.C. §1441(b) which provides, in pertinent part, that:

> Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The Petition for Damages clearly alleges that Aber and B&B-La. are incorporated in the State of Louisiana.[27] The Amended Notice of Removal also alleges that Aber is a Louisiana corporation.[28] The Amended Notice of Removal seeks to classify B&B-La. as "formerly [being] a Louisiana corporation."[29]

Because Aber and B&B-La. are both Louisiana corporations, their insurers are also deemed to be Louisiana corporations and the action against them is non-removable under 28 U.S.C. §1332(c)(1) and the second sentence of 28 U.S.C. §1441(b).

### D.   Fraudulent Joinder

In an effort to establish the existence of diversity jurisdiction, the Direct Action Insurance Defendants have alleged that Aber was fraudulently joined as a defendant to this action based solely upon Mr. Samuel's answers to the following three questions posed to him during his deposition taken in the Illinois case:

> Q.   Did you ever work with or around Aber Company? Does that ring a bell?
>
> A.   I remember Aber Company, but I never did work around them. Whether they were out in the field or not, I don't know.

---

[27] See Exhibit "B", Exhibit "B-1" and Exhibit "C" to Petition for Damages

[28] Record Doc. No. 3, ¶ 2.

[29] Record Doc. No. 3, ¶ 9.

> Q.   Did you ever -- was Aber Company a distributor like B&B or do you know?
>
> A.   If I'm not mistaken, they were sort of like B&B.
>
> Q.   Okay   Did you ever use any of their product or go to any of their facilities or see them as a contractor around on any facility?
>
> A.   I can't recall that right now.[30]

The Direct Action Insurance Defendants have alleged that B&B-La. was fraudulently joined as a defendant to this action based on the alleged dissolution of B&B-La.[31]

"Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) *cert. denied*, 544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed.2d 755 (2005).

There are two bases on which the district court might determine that a plaintiff improperly joined a non-diverse defendant to defeat subject matter jurisdiction: "(1) actual fraud in the plaintiff's pleading of jurisdictional facts, or (2) inability to establish a cause of action." *Kling Realty Company Inc. v. Chevron USA Inc.*, No. 08-30043, p. 4 (5th. Cir. 07/10/2009)(*quoting Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir.

---

[30] Deposition of Roosevelt Samuel, p 129 (June 10, 2009)

[31] Record Doc No 3, ¶ 9.

2007)).  Under the second prong,[32] the test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*).  "This means that there must be a reasonable possibility of recovery, not merely a theoretical one." *Campbell,* 509 F.3d at 669 (*quoting Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462 (5th Cir. 2003)).  The burden of persuasion on a party claiming improper joinder is a "heavy one." *Id.*

A determination of fraudulent joinder must be based on an analysis of the causes of action alleged in the complaint at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir. 1995); *Hook v. Morrison Milling Co.,* 38 F.3d 776, 780 (5th Cir. 1994). Where the defendant maintains that federal jurisdiction is proper, the court must evaluate all the factual allegations in the plaintiffs state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff, and then examine relevant state law and resolve all uncertainties in favor of the nonremoving party. *Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462-63 (5th Cir. 2003) *cert. denied,* 546 U.S. 813, 126 S.Ct. 335, 163 L.Ed.2d 48 (2005); Travis, 326 F.3d at 649; *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002); *Hart,* 199 F.3d at 246; *Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir. 1999).

---

[32] Defendants have not suggested that the first prong is applicable

In the instant case, because the Direct Action Insurance Defendants do not claim actual fraud in the plaintiff's pleadings, the Direct Action Insurance Defendants must demonstrate that there is no possibility that Mr. Samuel could establish a cause of action against either Aber or B&B-La. *See Gasch*, 491 F.3d at 281; *Larroquette*, 466 F.3d at 374; *Holder*, 444 F.3d at 387; *Guillory*, 434 F.3d at 308; *Melder*, 404 F.3d at 330; *Smallwood*, 385 F.3d at 573; *Travis*, 326 F.3d at 648; *Great Plains Trust Co.*, 313 F.3d at 312; *Hart*, 199 F.3d at 246. "In evaluating a claim of fraudulent joinder, [the Court does] not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff may do so." *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997) *cert. denied*, 523 U.S. 1072, 118 S.Ct. 1511, 140 L.Ed.2d 665 (1998); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996); Burden, 60 F.3d at 216. "'If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham ... and is not fraudulent in fact or in law.'" *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981)(*quoting Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 177 (5th Cir.1968)); *accord Travis*, 326 F.3d at 647. "'If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then there is no fraudulent joinder,'" and the case must be remanded for lack of diversity *Great Plains Trust Co.*, 313 F.3d at 312 (*quoting Badon*, 236 F.3d at 286 (*quoting Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir.) *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993))); *see Gray*, 390 F.3d at 402; *Smallwood*, 385 F.3d at 589-90; *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 751.

In assessing whether a plaintiff could possibly establish a claim against a non-diverse defendant, the court must apply the law of the state in which the action was brought—in this case, Louisiana. *See Travis*, 326 F.3d at 647; *Hart*, 199 F.3d at 247. "[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiff['s] allegations and the pleaded theory of recovery." *Griggs*, 181 F.3d at 701; *see Burden*, 60 F.3d at 218-21.

> (1)   **Claims against Aber and B&B-La. as manufacturers, sellers, suppliers and distributors of asbestos and/or asbestos-containing products**

The petition alleges that Aber and B&B-La. were "manufacturers, sellers, distributors and/or suppliers of asbestos products" and the asbestos-containing products that Aber and B&B-La. sold reached Mr. Samuel's "exposure sites listed on Exhibit "A" where he was exposed to them." Petition for Damages, ¶13 and Exhibit "B". The petition further alleges that "[t]he products manufactured, sold, distributed, supplied and/or used by [Aber and B&B-La.] were defective, unreasonably dangerous, and unreasonably dangerous *per se*, to Roosevelt Samuel, an intended and foreseeable user and bystander, who was exposed to these products." Petition for Damages, ¶16. The petition further alleges that Aber and B&B-La. "are liable to Plaintiff in strict liability..." pursuant to Louisiana Civil Code article 2317. Petition for Damages ¶17. The petition further alleges that Aber and B&B-La. were "also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate case of [Mr. Samuel's] injuries." Petition for Damages ¶19.

Due to the date of Mr. Samuel's asbestos exposure, this case is not governed by the Louisiana Products Liability Act, La. R.S. 9:2800.51. *Gilboy v. American Tobacco Co.*, 582 So.2d 1263 (La. 1991). Rather, it is controlled by the Louisiana Supreme Court's decision in *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La. 1986).

The petition clearly and unequivocally alleges a cause of action against Aber, B&B and B&B-La. under *Halphen*.

> (2)   **Claims against Aber and B&B-La. as contractors who installed and removed asbestos and/or asbestos-containing products**

The petition alleges that Aber and B&B-La. were contractors that contracted with the owners of the jobsites where Mr. Samuel worked to perform work that included the application, demolition, displacement, disturbance, fabrication, installation, purchase, removal, repair, replacement, tearing out and use of asbestos-containing products and materials prior to and/or during Roosevelt Samuel's work at those jobsites. Petition for Damages ¶¶20, 22. The petition further alleges that the performance of these activities "resulted in the release of substantial quantities of asbestos dust into the work environment" and that "Roosevelt Samuel was exposed to and inhaled substantial quantities of asbestos dust as a direct and proximate result" of the activities Aber and B&B-La. Petition for Damages ¶¶23-24. The petition alleges causes of action sounding in negligence (¶25) and strict liability (¶30).

(3)    **Mr. Samuel did not fraudulently join Aber to defeat removal**

The removing defendants premised the removal of this action on three questions

that were asked of Mr. Samuel during his deposition taken in the Illinois case.

However, in his perpetuation deposition take in the present case, Mr. Samuel testified:

Q.    Are you familiar with a company called The Aber
Company?

A.    I've heard of them.

Q.    Okay. And what do you know about The Aber
Company?

A.    Nothing but they did the same thing as B & B.

Q.    Okay. So, The Aber Company, from what you know,
was an insulation supplier and contractor?

A.    Right.

Q.    Okay. On the jobs that we were talking about that are
listed on Samuel Exhibit No. 1, I understand from --
maybe it was unsaid, so let's make it said so the jury
can hear it. Some of the times that you would deliver
to these jobsites were B & B Engineering had the
maintenance contract; is that fair?

A.    Yes.

Q.    Okay. And I know you said some of the times were
hot shots, they had a turnaround going on.

A.    Right.

Q.    Is that fair?

A.    Right

Q.    And then some of the times, I would presume that they were building something new, a new construction job; is that fair?

A.    That's true.

Q.    Okay. And then the other category would be where y'all actually sold materials to the plant site itself; is that right?

A.    At some times, yes.

Q.    Okay. On the turnarounds and the construction jobs, can you give me an idea on how big those jobs might have been at different facilities? Were they big enough sometimes to where one contractor couldn't do the whole thing?

A.    Yes. Sometimes there were different contractors in there.

Q.    And when we're talking about contractors, we're talking about insulation –

A.    Insulation contractors.

Q.    Okay. So sometimes the insulation job was so big that it would be B & B and somebody else –

A.    Right.

Q.    -- doing the insulation?

A.    Right.

Q.    Okay. And on those occasions where it was B & B and somebody else, did you -- did your activities take you near where the other companies were doing their work?

A.    Sometimes I would go close, sometimes I would pass.

Q.    Okay.  Were they doing the same things that we
talked about that the people for B & B were doing?

A.    Yes.

Q.    And what did that include?

A.    Putting  on  insulation,  taking  it  off,  cutting,
fabricating.

Q.    Okay.  And on those occasions where there was more
than one contractor at the jobsites, do you think that
you were close enough to where you could see the
dust from the other contractors' work going on?

A.    Yes.  I would pass by them, and there would be
insulation people.

Q.    Okay.  And would you -- would you be able to say
that, just like with the B & B insulators, that the
activities of the other companies' insulators would
have caused dust to get on your clothes and for you to
breathe that dust?

A.    Yes

Q.    Okay.  And would it be fair to say that on the jobs
that are listed on Samuel 1, the work site list that
we've been talking about, that over the period of time
that you worked for B & B Engineering and B & B
Insulation that your work would have taken you
through most of the areas of all of these plants?  Is
that fair?

A.    That's fair.

Q.    If a company like The Aber Company was working in
one of those plants at the same time that B & B was,
do you think that you would have been exposed to
asbestos from their operations?

MS. ROMERO: Objection.

Q.    (BY MR. BLACKWELL) You can answer it.

A.    Yes.

Q.    Okay. And how?

A.    Going through the plants, you would be going by different areas where different people would be working; and people that was working for B & B, they all had B & B logos on their hard hats, so them are the only ones I would be looking for, you know, with the -- I could identify; and I wouldn't be paying the rest of them too much attention because I would be looking for the B & B people.

Q.    Okay. But you know that they were there?

A.    Yeah.[33]

Aber's own documents[34] show that it performed "major insulation work" at the following sites where Mr. Samuel worked:

| Type | Job No. | Plant Owner | Location |
|------|---------|-------------|----------|
| Boiler | 528 | Humble | Baytown, TX |
| Boiler | 902 | Kaiser Aluminum | Baton Rouge, LA |
| Boiler | 903 | Kaiser Aluminum | Baton Rouge, LA |
| Major Installation | 116 | Phillips Petroleum Co. | Pasadena, TX |
| Major Installation | 120 | Great Southern Alkali (Olin) | Lake Charles, LA |
| Major Installation | 163 | Dow Chemical Co. | Freeport, TX |
| Major Installation | 166 | Dow Chemical Co. | Freeport, TX |
| Major Installation | 265 | Texas Company | Port Arthur, TX |
| Major Installation | 327 | Jefferson Chemical Co. | Port Arthur, TX |
| Major Installation | 442 | Shell Chem. Corporation | Deer Park, TX |
| Major Installation | 500 | Humble Oil Company | Baytown, TX |
| Major Installation | 726 | Shell Chemical Corp. | Deer Park, TX |

---

[33] Oral and Videotaped Deposition of Roosevelt Samuel, pp. 59-63 (July 28, 2009)

[34] See Exhibit "A" to Petition for Damages and Exhibit A attached hereto.

In addition, the affidavit of John R. Buish[35] shows that Aber performed work at the following job sites where Mr. Samuel worked:

| Plant Owner | Location |
|---|---|
| Amoco | Texas City, TX |
| Union Carbide | Texas City, TX |
| Arco | Houston, TX |
| Exxon | Baytown, TX |

Finally, documentation discovered from Royal[36] shows that Aber performed work at the following job sites where Mr. Samuel worked:

| Job No. | Plant Owner | Location |
|---|---|---|
| 9179 | Monsanto | Texas City, TX |
| 8067 | Phillips Pet. Co. | Deer Park, TX |
| 9181 | Shell Oil Co. | Deer Park, TX |
| 9182 | Goodyear Tire & Rubber Co. | Houston, TX |

The foregoing information, coupled with Mr. Samuel's deposition testimony, is sufficient not only to state a cause of action against Aber under Louisiana law but is also sufficient to survive summary judgment. *Adams v. Owens-Corning Fiberglas Corp.*, 2004 CA 1589, p. 4-5 (La. App. 1st Cir. 09/23/2005), 921 So.2d 972, *writ denied*, 2005-C-2318 (La. 03/10/2006) 925 So.2d 519.

Defendants' allegation that Aber was fraudulently joined as a defendant to this action is without merit.

### (4)   Mr. Samuel did not fraudulently join B&B-La. to defeat removal

We regard to his exposure to the operations of B&B-La., Mr. Samuel testified:

---

[35] See Exhibit "A" to Petition for Damages and Exhibit A attached hereto.
[36] See Exhibit "A" to Petition for Damages and Exhibit A attached hereto

Q.    All right. Let's talk, if we can, about the three sites that are handwritten at the bottom of page 2 that you asked that I add this morning. Did you ever deliver insulation materials when you worked for B & B Engineering to the Kaiser Aluminum plant in Baton Rouge?

A.    Yes.

Q.    Okay. Describe for me where the Kaiser Aluminum plant in Baton Rouge was when you delivered those materials.

A.    Well, when I delivered to Kaiser, I just went over the Mississippi River, come over the river; and it's down on the -- on the right. If you jump out of your truck, you would jump in the middle of the plant.

Q.    And when you're talking about going over the Mississippi River, you're talking about going over the bridge on US 190?

A.    Yes.

Q.    The old Mississippi bridge?

A.    The old Mississippi, right.

Q.    Not the one that's on I-10 now?

A.    No. It was over on 190.

Q.    Okay. So that -- the Kaiser Aluminum plant was literally right to your right at the base of the bridge?

A.    Right.

Q.    And how many times did you make deliveries to Kaiser Aluminum?

A.    I didn't go there but one time.

Q.    Okay. Was the process the same that we've been talking about for the last 45 minutes?

A       Yes.

Q       Okay.  When you got to Kaiser Aluminum, did you
        have to check in at the gate?

A.      Yes.

Q.      And did you -- were you looking for people at that
        point in time that worked for B & B Engineering or B
        & B Engineering and Supply of Louisiana?

A.      Louisiana.

Q.      Okay.  So you were making up shorts for the
        Louisiana company?

A.      Yes.  We had stuff that they didn't have at that time.

Q.      Okay.  When you got to the gate, did the guy at
        Kaiser say, "Hey, do you have your hard hat and
        goggles" –

A.      Right.

Q.      -- and other safety equipment that was required?

A.      Right.

Q.      And did he -- was he able to tell you, like the other
        ones, "You need to go into the plant over there"?

A.      Right.

Q.      And is that what you did?

A.      Yes.

Q.      And you found the B & B Engineering and Supply of
        Louisiana person that you was looking for?

A.      Right.

Q.    Okay. And when you went into Kaiser, could you see the same operations going on that we've talked about as far as installing, removing, replacing insulation products?

A.    Yes.

Q.    And this delivery would have happened in the '60's?

A.    Yes.

Q.    And about how long, you reckon, it took you on the Kaiser site to find who you were looking for and to unload your materials and get on out of there?

A.    I was in that plant for about, I would say, two or three hours because I wasn't familiar with the people that was working in there, you know, the man that I was supposed to find. Like, the people who was working at the refineries here, well, once I went out there, I knew them; and I knew who I was looking for.

      Then, when I was over there, you know, I would tell them who I was looking for; and they would tell me, "Oh, he was down there while ago." Then I would go where he said; and, "Oh, yeah, he left; and he went over" (indicating). So you would have to walk around there looking for him.

Q.    Was the -- was the Kaiser Aluminum plant in Baton Rouge different than the refineries that you had been delivering stuff to in any way?

A.    Not really. It's kind of like a city. When you've been to one, you've been to them all.

Q.    Okay.

A.    It's one bigger than the other one.

Q.    It's just a matter of finding one person in that city?

A.    Finding one in there, right.

Q.   I understand. Did -- and you ultimately found the person who worked for B & B Engineering and Supply at the Kaiser -- of Louisiana at the Kaiser facility in Baton Rouge and got out of there in a couple or three hours?

A.   Yes

Q.   Okay. And did you tell me that you did see people applying and removing insulation products during that time frame?

A.   Yes.

Q.   Okay. And were you close enough in doing what you were doing to have seen those operations create dust?

A.   Yes

Q.   And did you -- you think you got that dust on you and breathed it in?

A.   Yes, because they was dropping some of it and some of it liked to have hit me.

Q.   Okay. That made it -- made this job stand out in your mind?

A.   Yes.

Q.   Okay.

A.   I don't know whether they was throwing it down or it was falling.

Q.   What would happen to that insulation when it would hit the ground?

A.   Bust up in dust [37]

---

[37] Oral and Videotaped Deposition of Roosevelt Samuel, pp 46-51 (July 28, 2009).

Meosthelioma can result from very brief exposures to asbestos.  *See Rando v. Anco Insulations, Inc.*, 08-1163 c/w 08-1169 (La. 09/26/2008), 992 So.2d 972; *Hennegan v. Cooper/T. Smith Stevedoring Co., Inc.*, 02-0282 (La. App. 4th Cir. 12/30/2002), 837 So.2d 96, 105;  *Egan v. Kaiser Alum. & Chem. Corp.*, 94-1939 (La. App. 4th Cir. 05/22/1996).

Its insurers argue that B&B-La. was fraudulently joined because it was dissolved. However, LSA-R.S. 12:148(C) provides:

> Upon issuance of the certificate of dissolution, the corporate existence shall cease as of the effective date stated in the certificate, <u>except for the sole purpose of any action or suit</u> commenced theretofore by, or <u>commenced timely against, the corporation</u>

(emphasis added).  The present suit was commenced timely against B&B-La.  LSA-R.S. 12:147 provides:

> A.    A corporation in liquidation may have the benefit of subsections C, D and E of this section by following the procedure set forth in subsection B of this section.

> B.    After the proceeding for dissolution has taken effect, notice thereof shall be (1) given by registered or certified mail to all known creditors of, to all persons believed to have valid and subsisting claims (excluding prescribed and time-barred claims) against, and to all persons having unfulfilled contracts with, the corporation, and (2) published once a week for two successive weeks in a newspaper of general circulation in the parish in which the corporation's registered office is located.  Such notice shall call on the addressees to present their claims in writing and in detail, at a specified place and by a specified date, not less than six months after the notice was mailed. The giving and publication of such notice shall not be deemed an acknowledgement of the validity of any claim against the corporation, waiver of any defense or set-off to any such claim, interruption of

prescription on, or tolling of any statute of limitation applicable to, any such claim, or revival of any claim which has been barred by any prescription, peremption or statute of limitations.

C.      If any addressee of such notice shall not present his claim or claims as prescribed in the notice, such of his claims as would be enforceable against the corporation except for the provisions of this subsection shall, unless suit has been entered thereon in a court of competent jurisdiction before the final date prescribed in the notice for presentation thereof, be perpetually and peremptorily barred, except to the extent, if any, that the court may allow them against any remaining undistributed assets of the corporation on a finding that the claimant had some valid excuse for his failure so to present his claim.

D.      All claims which would be enforceable by suit against the corporation except for the provisions of this subsection, on which suit has not been filed in a court of competent jurisdiction before the expiration of three years after the proceeding for dissolution takes effect (or, if the notice prescribed in subsection B of this section was not given and publication thereof commenced within one month after the proceeding takes effect, before the expiration of three years after the giving or completion of publication of the notice, whichever is later), shall be barred perpetually and peremptorily.

E.      The time limits provided in subsections C and D of this section shall not be subject to suspension on any ground, or to interruption except by timely presentation of the claim as to subsection C or timely suit as to subsection D

F.      The provisions of subsections C and D of this section shall not preclude the enforcement at any time, without regard to whether a claim has been presented or a suit filed timely as prescribed in said subsections, of any valid and subsisting lien securing any claim against, or indebtedness of, the corporation.

There is absolutely no evidence that B&B-La. followed the procedure set forth in LSA-R.S. 12:147(B). As such, B&B-La. is not entitled to the benefit of LSA-R.S 12:147(C), (D) and (E).

Reading LSA-R.S. 12:147 and 148 together leads to the conclusion that the corporate existence of B&B-La. continues to exist for the purpose of timely commenced actions filed against it. There can be do doubt that this action, commenced within 90 days of Mr. Samuel's diagnosis, was timely commenced against B&B-La.

The foregoing information, coupled with Mr. Samuel's deposition testimony, is sufficient not only to state a cause of action against B&B-La. under Louisiana law but is also sufficient to survive summary judgment. *Adams v. Owens-Corning Fiberglas Corp.*, 2004 CA 1589, p. 4-5 (La. App. 1st Cir. 09/23/2005), 921 So.2d 972, *writ denied*, 2005-C-2318 (La. 03/10/2006) 925 So.2d 519.

Defendants' allegation that B&B-La. was fraudulently joined as a defendant to this action is without merit.

III.   **CONCLUSION**

For all of the above and foregoing reasons, plaintiff, Roosevelt Samuel submits that there was a glaring lack of good faith in the improvident removal of this action from state court. Clearly, this action is non-removable under 28 U.S.C. §1332(c)(1) and 28 U.S.C. §1441(b). Simply stated, this Court lacks subject matter jurisdiction over this matter. For that reason, Roosevelt Samuel submits that this matter should be immediately remanded to the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.

Respectfully submitted:


s/Brian F. Blackwell
Brian F. Blackwell (18119)
**BLACKWELL & ASSOCIATES**
9270 Siegen Lane, Suite 201
Baton Rouge, Louisiana 70810
Telephone:   (225) 769-2462
Telecopier:   (225) 769-2463
E-mail:      brian@blackwell-associates.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon all parties as noted below:

**Bituminous Fire and Marine Insurance Company, The Traveler's Indemnity Company, Liberty Mutual Insurance Company as the insurers of B & B Engineering and Supply Co. of Louisiana, Inc. and B. & B. Engineering and Supply Company Inc. and their executive officers**

By electronic notification via CM/ECF to:

Mr. William J. Sommers, Jr. (WSommers@duncour.com)
Ms. Magali Puente Martin (mmartin@duncour.com)

**Royal Indemnity Company as successor by merger to Royal Insurance Company of America f/k/a Royal Globe Insurance Company, individually and as successor by merger to Queen Insurance Company of America as insurer of The Aber Company, Inc.**

By electronic notification via CM/ECF to:

Mr. Lawrence G. Pugh, III (lpugh@pugh-law.com)
Ms. Jacqueline A. Romero (jromero@pugh-law.com)

**Liberty Mutual Insurance Company as insurer of The Aber Company, Inc.**

By electronic notification via CM/ECF to:

Ms. Elia Diaz-Yaeger (ediaz-yaeger@lawla.com)
Ms. Katherine L. Osborne (kosborne@lawla.com)

Baton Rouge, Louisiana, this 10th day of August, 2009.

*s/Brian F. Blackwell* _____