**MDL 875**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 26 2009

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)          MDL DOCKET NO. 875

LILIA NEPOMUCENO, et al.,                UNITED STATES DISTRICT COURT
     Plaintiffs,                        CENTRAL DISTRICT OF CALIFORNIA
    v.
A.W. CHESTERTON COMPANY, et al.,
     Defendants.                       CASE NO. CV09-06092

**RESPONSE TO PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL
TRANSFER ORDER**

    Plaintiffs have filed a Motion for an Order Vacating the Conditional Transfer Order No.

326 in this asbestos case.  General Electric Company ("GE") hereby opposes this motion and

requests that it be denied.  GE does not, however, object to a stay of transfer of this matter to the

Eastern District of Pennsylvania pending the Central District of California's ruling on plaintiffs'

Motion to Remand, scheduled for hearing on October 26, 2009.

///

**OFFICIAL FILE COPY**

**IMAGED OCT 26 2009**

PLEADING NO. 5954

## I.   FACTUAL BACKGROUND

On July 21, 2009, a wrongful death asbestos-related action was filed in the Superior Court for the State of California in and for the County of Los Angeles -- *Lilia Nepomuceno, et al. v. A.W. Chesterton Company, et al.*, Case No. BC 418256.[1]  In their complaint, Plaintiffs seek to hold GE responsible for actions it took under the authority of officers of the United States Navy within the meaning of 28 U.S.C. section 1442(a)(1) – specifically, Plaintiffs claim that GE is liable to them under a variety of state law-based theories arising from decedent Eugenio Nupomuceno's alleged exposure to asbestos from GE marine turbines and other equipment aboard U.S. Navy ships, including the USS Ticonderoga and the USS Ajax.  Based on these claims, and GE's federal defense to them, GE timely and properly joined in defendant Viad Corporation's removal of this action to the Central District of California Court on August 24, 2009.  The case was ultimately assigned to Judge Manual Real.  At the time of the removal, Viad notified the Judicial Panel on Multi District Litigation ("Panel") of this tag-along asbestos action.

Plaintiffs filed a Motion for Remand on September 18, 2009, which was set for hearing on October 19, 2009, and rescheduled by Judge Real for a new hearing date of October 26, 2009.[2]

## II.   DISCUSSION

**A.**   **Plaintiffs' Motion to Vacate the CTO Should Be Denied, Because This Case – Like All Other Federal Asbestos Cases – Should Be Transferred to the Eastern District of Pennsylvania**

In their motion to vacate the CTO, Plaintiffs have not argued that their case somehow does not present common questions of fact with the other asbestos cases previously transferred to the Eastern District.  This is not surprising, since Plaintiffs' claims clearly present common issues of fact and law with the previously transferred cases.  There is nothing unusual about Mr.

---

[1] Complaint is attached as Exhibit A to the Declaration of Katherine P. Gardiner ("Gardiner Decl."), filed concurrently herewith.

[2] Plaintiffs' Motion to Vacate CTO-326 does not include any averments set forth in numbered paragraphs as required under Rule 7.1(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML").  Consequently, GE's opposition to Plaintiffs' Motion to Vacate CTO-326 does not include any corresponding responses to averments as required under JPML Rule of Procedure 7.1(b).

Nepomuceno's work history or alleged disease that would distinguish his case from the other cases now pending before Judge Robreno. This case will present the usual kinds of questions of fact common to pretrial proceedings in all other asbestos personal injury cases — questions relating to decedent's work history, the nature and duration of his alleged exposure to asbestos, the identification of those asbestos products, and the nature and causation of decedent's alleged disease. Moreover, insofar as GE is concerned, this case will involve the applicability of the government contractor defense, as set forth in *Boyle v. United Technologies Corp.*, (1988) 487 U.S. 500, to Plaintiffs' claims against it. Accordingly, for the reasons set forth in *In re Asbestos Products Liability Litigation (No. VI)*, this case should be transferred to the Eastern District of Pennsylvania for coordinated pretrial proceedings before Judge Robreno.

## 1. This Case Should Be Transferred to the Eastern District of Pennsylvania Because It Shares Common Questions of Fact With Other Asbestos Cases Consolidated There

Plaintiffs offer virtually no legal support for their motion grounded in either the statute embodying Congress's desire that federal actions of certain kinds be consolidated in particular federal courts (*see* 28 U.S.C. Section 1407), in this Panel's 1991 decision to consolidate all federal asbestos actions in the Eastern District of Pennsylvania, or in any other statute or case law. Plaintiffs do not – because they cannot – offer any evidence that this case is not one sharing "common questions of fact" (*see* 28 U.S.C. Section 1407(a)) with other asbestos actions consolidated in that district court. According to 28 U.S.C. Section 1407(a), civil actions involving "one or more common questions of fact" may be transferred to a particular district for consolidated pretrial proceedings. Transfers to the appropriate district court "*shall* be made by the judicial panel . . . upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." (*Id.;* emphasis added.) In its 1991 decision transferring all federal asbestos actions to the Eastern District of Pennsylvania, this Panel noted that the proper forum for resolution of pretrial substantive and procedural issues – such as plaintiffs' Motion for Remand in this case – is "the transferee court." *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F.Supp. 415, 421 (J.P.M.L 1991), *citing* 28 U.S.C. Section 1407(a). According to the CTO transferring

1  this action, scores of federal asbestos cases have been transferred to the Eastern District of

2  Pennsylvania.  In subsequent asbestos transfer orders, the Panel has stated time and again that "in

3  the Panel's original decision [*In Re Asbestos Products Liability Litigation (No. VI)*], distinctions

4  based on such matters as *the pendency of motions* . . . before the transferor court, the uniqueness

5  of a party's status, the stage of pretrial proceedings, [and] the presence of unique claims . . . were

6  considered and rejected by the Panel as grounds for carving out exceptions to transfer in this

7  extraordinary docket." *Id.*  Plaintiffs offer no argument as to how their case differs in any

8  relevant aspect from the other federal asbestos cases pending in the MDL, nor any reasons why it

9  should be treated differently from them.

10          **2.**     **The Pendency of Plaintiffs' Motion to Remand is No Basis for**

11                 **Vacating the CTO**

12       Plaintiffs' sole argument for vacating the CTO is their argument that the Central District

13 of California must hear Plaintiffs' Motion to Remand.  Plaintiffs are mistaken.  To the contrary,

14 this Panel has made perfectly clear that transferor "courts wishing to address such motions [to

15 remand] have adequate time in which to do so, those courts concluding that such issues should be

16 addressed by the transferee judge need not rule on them, and the process of 1407 transfer in

17 MDL-875 can continue without any unnecessary interruption or delay." *In re Asbestos Prods.*

18 *Liab. Litig. v. Int'l Paper Co.* (2001) 170 F. Supp. 2d 1348, 1349 fn. 1.  That is precisely the

19 process that is occurring here – Plaintiffs' Motion to Remand will be heard on October 26, 2009

20 by Judge Real of the Central District of California.  The pendency of this hearing is no basis for

21 vacating the CTO.[3]   Suffice it to say here that GE has opposed Plaintiffs' Motion for Remand

---

22       [3] This Panel has similarly made clear that the Eastern District of Pennsylvania is wholly

23 capable of ruling on any Motion to Remand that Plaintiffs may bring:

24       Finally, with respect to any parties that believe the uniqueness of their particular

25       situation renders inclusion of their action in MDL-875 unnecessary or inadvisable,
      we are confident that [the Eastern District of Pennsylvania Judge] will continue to

26       promptly review arguments for returning transferred actions or claims to their
      transferor courts and will take all appropriate steps to assure their speedy return

27       whenever he is convinced that retention in the MDL-875 proceedings is no longer
      needed.

28

1   with sufficient evidence and authorities to sustain its removal, both as to the timeliness of the

2   removal and as to the appropriateness of the removal under 28 U.S.C. § 1442(a)(1) (the "federal

3   officer removal" statute).

4   **B.   Vacating the CTO Would Waste the Time and Resources of this Court and of the Parties; However, GE Does Not Oppose a Stay of the CTO Until the Central District Rules on Plaintiff's Motion to Remand.**

5

6   Plaintiffs' motion is styled as a motion to vacate the CTO.  However, Plaintiffs' argument

7   relies only on their belief that the Central District of California should hear and decide their

8   motion for remand.  GE does not oppose a stay of the CTO until such time as the Central District

9   of California decides Plaintiffs' motion.  GE does, however, oppose Plaintiffs' motion to vacate

10  the CTO.  Plaintiffs have made no argument, and have produced no evidence, that their case does

11  not present questions of fact similar to those previously transferred to the Eastern District.  As

12  discussed above, Plaintiffs' case is typical of the scores of asbestos cases already transferred to

13  the Eastern District for coordinated pretrial proceedings.  Plaintiffs' attempt to reopen the general

14  issue of the advantages and disadvantages of coordinated pretrial discovery proceedings for

15  asbestos personal injury cases is belated; that issue has already been decided by this Court in *In*

16  *re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (JPML 1991).  Further, Rule

17  1.5 of this Court provides that the "pendency of a [CTO] does not affect or suspend proceedings

18  in the district court in which the action is pending and does not limit the pretrial jurisdiction of

19  that court."  Thus, it would be a waste of the time and resources of this Court and of the parties to

20  vacate the CTO, only to reissue it if the motion to remand is denied.

21  ///

22  ///

23  ///

24  ///

25  ///

26

27  *In re Asbestos Prods. Liab. Litig., supra,* 170 F. Supp. 2d at 1350.

28

1

2  III.   **CONCLUSION**

3          For all of the reasons discussed above, GE respectfully requests that Plaintiffs' Motion To

4  Vacate the Conditional Transfer Order be denied.  However, if it is deemed appropriate, GE has

5  no objection to a stay of the CTO until such time as the Central District of California has ruled

6  on Plaintiffs' motion to remand.

Dated:  October 22, 2009                        SEDGWICK, DETERT, MORAN & ARNOLD LLP

By _____
                                                Katherine P. Gardiner
                                                Charles T. Sheldon
                                                Sedgwick, Detert, Moran & Arnold LLP
                                                One Market Plaza, Steuart Tower, 8th Floor
                                                San Francisco, CA  94105
                                                415-781-7900 (phone) / 415-781-2635 (facsimile)
                                                Attorneys for Defendant
                                                GENERAL ELECTRIC COMPANY

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 2 6 2009

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)                    MDL DOCKET NO. 875

LILIA NEPOMUCENO, et al.,                UNITED STATES DISTRICT COURT
     Plaintiffs,                           CENTRAL DISTRICT OF CALIFORNIA
    v.
A.W. CHESTERTON COMPANY, et al.,
     Defendants.                          CASE NO. CV09-06092

**DECLARATION OF KATHERINE P. GARDINER IN SUPPORT OF DEFENDANT
GENERAL ELECTRIC COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO
VACATE THE CONDITIONAL TRANSFER ORDER**

I, KATHERINE P. GARDINER, declare as follows:

      1.     I am an associate in the law firm of Sedgwick, Detert, Moran & Arnold,

attorneys of record for defendant General Electric Company ("GE"). I am duly licensed to

practice law before this court, and in all the courts of the State of California. The facts contained

herein are of my own personal knowledge, except those matters specifically stated on

1  information and belief and as to those I believe them to be true.  If called upon to testify, I would

2  and could competently state as follows.

3      2.      Attached hereto as Exhibit A is a true and correct copy of the Complaint

4  and Preliminary Fact Sheet, filed and served on GE, in *Lilia Nepomuceno, et al. v. A.W.*

5  *Chesterton Company, et al.*, Case No. BC 418256, now pending before the United States District

6  Court for the Central District of California as Case No. CV09-6092 R.

7      3.      On September 18, 2009, Plaintiffs filed in the Central District of

8  California a Motion for Remand this matter to state court.  That Motion was set for hearing on

9  October 19, 2009.  The hearing was rescheduled by Judge Real to October 26, 2009.

10      I declare under penalty of perjury under the laws of the State of California that the

11  foregoing is true and correct.

12      Executed this 22nd day of October 2009, at San Francisco, California.

13

14  By _____

15  Katherine P. Gardiner

16

17

18

19

20

21

22

23

24

25

26

27

28

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 26 2009

FILED
CLERK'S OFFICE

**Exhibit A**

Denyse Clancy, Esq. (SBN 255276)
John Langdoc, Esq. (SBN 235509)
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: 214/521-3605
Facsimile: 214/520-1181

Jennifer K. Berg, Esq. (SBN 147427)
Eric Brown, Esq. (SBN 229622)
Jed Borghei, Esq. (SBN 257049)
BARON & BUDD, P.C.
9465 Wilshire Blvd., Suite 460
Beverly Hills, CA 90212
Telephone: 310/860-0476
Facsimile: 310/860-0480

Attorneys for Plaintiffs,

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 2 1 2009

John A. Clarke, Executive Officer/Clerk

BY MARY GARCIA, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES - CENTRAL DISTRICT

LILIA R. NEPOMUCENO Individually and as
Successor-In-Interest to EUGENIO
NEPOMUCENO, Deceased;  EUGENE R.
NEPOMUCENO; MICHAEL R. NEPOMUCENO;
AND RONALD NEPOMUCENO,

Plaintiffs,

vs.

A. W. CHESTERTON COMPANY;
ALFA LAVAL, INC.;
ALLIS-CHALMERS CORPORATION PRODUCT
LIABILITY TRUST;
ARMSTRONG INTERNATIONAL, INC.;
AURORA PUMP COMPANY;
BUFFALO PUMPS, INC.;
CARRIER CORPORATION, Individually and as
successor-in-interest to Elliott Company and
successor-in-interest to Crocker-Wheeler Company;
CBS CORPORATION, f/k/a Viacom, Inc.
(successor-by-merger to CBS Corporation,
successor-by-merger to Westinghouse Electric
Corporation), Individually and as
successor-in-interest to B.F. Sturtevant Company;
CLEAVER-BROOKS, INC., Individually and f/k/a
Aqua-Chem, Inc.;
CLEAVER-BROOKS, INC., Individually and f/k/a
AQUA-CHEM, Inc., d/b/a Cleaver-Brooks Division

CASE NO.

BC 418256

**COMPLAINT FOR
WRONGFUL DEATH
AND SURVIVAL**

BY FAX

1 (successor-in-interest to Davis Engineering )
Company); )
2 CRANE CO., Individually and as successor-in- )
interest to Chapman Valves; )
3 CROWN CORK & SEAL COMPANY, INC., )
Individually and as successor-in-interest to Mundet )
4 Cork Company; )
DRESSER-RAND COMPANY, Individually and as )
5 successor-in-interest to Terry Steam Turbine and )
Whiton Machine Company; )
6 FMC CORPORATION, Individually, on behalf of )
and as successor-in-interest to Peerless Pump Co., )
7 John Bean Pumps, Chicago Pumps, Dayton-Dowd )
Pump Co., Ohio Apex Division, and Link Belt )
8 Company; )
FOSTER WHEELER ENERGY CORPORATION; )
9 GARDNER DENVER NASH, LLC, Individually )
and as successor-in-interest to The Nash )
10 Engineering Co.; )
GARDNER DENVER, INC. f/k/a Gardner Denver )
11 Machinery, Inc.; )
GARLOCK SEALING TECHNOLOGIES, L.L.C., )
12 Individually and as successor-in-interest to Garlock, )
Inc.; )
13 GENERAL ELECTRIC COMPANY; )
GOULDS PUMPS INCORPORATED; )
14 GRISCOM RUSSELL COMPANY; )
IMO INDUSTRIES, INC., Individually and as )
15 successor-in-interest to DeLaval Turbine, Inc.; )
INGERSOLL-RAND COMPANY, Individually and )
16 as successor-in-interest to the Aldrich Company; )
INGERSOLL-RAND COMPANY, Individually )
17 and as successor-in-interest to Terry Steam Turbine )
Company and the Whiton Machine Company; )
18 JOHNSON CONTROLS, INC.; )
LESLIE CONTROLS, INC.; )
19 MECHANICAL DRIVES & BELTING (f/k/a L.A. )
Rubber Company); )
20 METALCLAD INSULATION CORPORATION; )
OWENS-ILLINOIS, INC., Individually and as )
21 successor-in-interest to Owens-Illinois Glass )
Company and d/b/a O-I; )
22 PENTAIR, INC., Individually and as )
successor-in-interest to Aurora Pump Company; )
23 SPX CORPORATION, Individually and as )
successor-in-interest to General Signal Corp. )
24 (successor-in-interest to Aurora Pump Company); )
THOMAS DEE ENGINEERING CO.; )
25 TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A )
Shipyard); )
26 VELAN STEAM TRAP CORPORATION; )
VELAN VALVE CORP., Individually and as )
27 successor-in-interest to Velan Steam Trap )
Corporation; )
28

1  WARREN PUMPS, L.L.C., f/k/a Warren Pumps, )
2  Inc. (Individually and as successor-in-interest to The )
   Quimby Pump Company); )
3  WEIR VALVES & CONTROLS USA, INC., )
   Individually and as successor-in-interest to Atwood )
4  & Morrill Co., Inc.; )
   YARWAY CORPORATION; )
5  YORK INTERNATIONAL CORPORATION, )
   Individually and as successor-in-interest to Central )
6  Environmental Systems, Inc., f/k/a Borg-Warner )
   Central Environmental Systems, Inc.; York-Luxaire, )
7  Inc.; Luxaire, Inc., and The C.A. Olsen )
   Manufacturing Company and d/b/a "Moncrief )
8  Furnaces" d/b/a York Hearing & Air Conditioning, )
   and DOES 1-300

9            Defendants.

10  _____

11       COME NOW, Plaintiffs LILIA R. NEPOMUCENO Individually and as Successor-

12  In-Interest to EUGENIO NEPOMUCENO, Deceased,  EUGENE R. NEPOMUCENO,

13  MICHAEL R. NEPOMUCENO, AND RONALD NEPOMUCENO for causes of action

14  against Defendants, and each of them, complain and allege as follows:

15                          GENERAL ALLEGATIONS

16       1.     Lilia R. Nepomuceno appears individually and as Decedent, Eugenio

17  Nepomuceno's, successor-in-interest.  Plaintiffs, Lilia R. Nepomuceno,  Eugene R.

18  Nepomuceno , Michael R. Nepomuceno and Ronald Nepomuceno are the heirs at law of

19  Decedent.  At all times mentioned herein, these Plaintiffs have been and are citizens of the

20  United States, residing in the State of California.

21       2.     The true names and/or capacities, whether individual, corporate, associate,

22  governmental, or otherwise, of Defendants, Does 1 through 300, inclusive, are unknown to

23  Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and

24  when the true names and capacities of said Defendants by such fictitious names; and when

25  the true names and capacities of said Defendants have been ascertained, Plaintiffs will

26  amend this complaint accordingly.  Plaintiffs are informed and believe, and thereon allege

27  that each Defendant designated herein as a DOE is responsible, negligently or in some

28

1   other actionable manner, for the events and happenings hereinafter alleged, either through

2   said Defendant's own conduct or through the conduct of its agents, servants or employees,

3   or due to the ownership, lease or sale of the instrumentality causing the injury, or in some

4   other manner.

5        3.     Plaintiffs are informed and believe, and thereon allege that at all times

6   mentioned herein, that Defendants, and each of them, were the agents, servants, employees

7   and/or joint venturers of their co-Defendants and were, as such, acting within the scope,

8   course, and authority of said agency, employment and/or joint venture, in that each and

9   every Defendant, as aforesaid, when acting as a principal, was negligent in the selection

10   and hiring of each and every other Defendant as the agent, servant, employee and/or joint

11   venturer.

12        4.     Decedent EUGENIO NEPOMUCENO ("Decedent") was a California

13   resident during a substantial period of his asbestos exposure upon which Plaintiffs' claims

14   are based.

15        5.     Plaintiffs are informed and believe, and thereon allege, that at all times

16   mentioned herein, Defendants A. W. CHESTERTON COMPANY; ALFA LAVAL, INC.;

17   ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST; ARMSTRONG

18   INTERNATIONAL, INC.; AURORA PUMP COMPANY; BUFFALO PUMPS, INC.;

19   CARRIER CORPORATION, individually and as successor-in-interest to Elliott

20   Company, successor-in-interest to Crocker-Wheeler Company; CBS CORPORATION,

21   f/k/a Viacom, Inc. (successor-by-merger to CBS Corporation, successor-by-merger to

22   Westinghouse Electric Corporation), individually and as successor-in-interest to B.F.

23   Sturtevant Company; CLEAVER-BROOKS, INC., individually and f/k/a Aqua-Chem,

24   Inc.; CLEAVER-BROOKS, INC., individually and f/k/a AQUA-CHEM, Inc., d/b/a

25   Cleaver-Brooks Division (successor-in-interest to Davis Engineering Company); CRANE

26   CO., individually and as successor-in-interest to Chapman Valves; CROWN CORK &

27   SEAL COMPANY, INC. (individually and as successor-in-interest to Mundet Cork

28   Company); DRESSER-RAND COMPANY, individually and as successor-in-interest to

1   Terry Steam Turbine and Whiton Machine Company; FMC CORPORATION,

2   individually, on behalf of and as successor-in-interest to Peerless Pump Co., John Bean

3   Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, and Link Belt

4   Company; FOSTER WHEELER ENERGY CORPORATION; GARDNER DENVER

5   NASH, LLC, individually and as successor-in-interest to The Nash Engineering Co.;

6   GARDNER DENVER, INC. f/k/a Gardner Denver Machinery, Inc.; GARLOCK

7   SEALING TECHNOLOGIES, L.L.C., individually and as successor-in-interest to

8   Garlock, Inc.; GENERAL ELECTRIC COMPANY; GOULDS PUMPS

9   INCORPORATED; GRISCOM RUSSELL COMPANY; IMO INDUSTRIES, INC.

10   (individually and as successor-in-interest to DeLaval Turbine, Inc.); INGERSOLL-RAND

11   COMPANY individually and as successor-in-interest to the Aldrich Company;

12   INGERSOLL-RAND COMPANY individually and as successor-in-interest to Terry

13   Steam Turbine Company and the Whiton Machine Company; JOHNSON CONTROLS,

14   INC.; LESLIE CONTROLS, INC.; MECHANICAL DRIVES & BELTING (f/k/a L.A.

15   Rubber Company); METALCLAD INSULATION CORPORATION;

16   OWENS-ILLINOIS, INC. individually and as successor-in-interest to Owens-Illinois

17   Glass Company and d/b/a O-I; PENTAIR, INC., individually and as successor-in-interest

18   to Aurora Pump Company; SPX CORPORATION, individually and as

19   successor-in-interest to General Signal Corp. (successor-in-interest to Aurora Pump

20   Company); THOMAS DEE ENGINEERING CO.; TRIPLE A MACHINE SHOP, INC.

21   (a/k/a Triple A Shipyard); VELAN STEAM TRAP CORPORATION; VELAN VALVE

22   CORP., individually and as successor-in-interest to Velan Steam Trap Corporation;

23   WARREN PUMPS, L.L.C., f/k/a Warren Pumps, Inc. (individually and as successor-in-

24   interest to The Quimby Pump Company); WEIR VALVES & CONTROLS USA, INC.,

25   individually and as successor-in-interest to Atwood & Morrill Co., Inc.; YARWAY

26   CORPORATION; YORK INTERNATIONAL CORPORATION, individually and as

27   successor-in-interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central

28   Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and The C.A. Olsen

1  Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Hearing & Air

2  Conditioning and DQES 1-300, inclusive, are corporations organized and existing under

3  and by virtue of the laws of the State of California, or the laws of some other state of the

4  United States of America, or some foreign jurisdiction, and that said Defendants were

5  authorized to do and are doing business in the State of California, and that said Defendants

6  have regularly conducted business in the State of California.

7       6.     At all times mentioned above, Defendants, and each of them, were engaged

8  in the business of manufacturing, fabricating, designing, assembling, distributing, leasing,

9  buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and

10  advertising a certain substance, the generic name of which is asbestos, and other products

11  containing said substance.

12       7.     Decedent EUGENIO NEPOMUCENO was exposed to Defendants' asbestos

13  and asbestos containing products contributing to and causing the development of

14  mesothelioma.   As a result of exposure to Defendants' asbestos and asbestos containing

15  products, asbestos fibers entered his body.  Decedent suffered from mesothelioma and

16  each of defendants asbestos and asbestos containing products that entered his body was a

17  substantial factor in bringing about, prolonging, or aggravating Decedent's mesothelioma

18  and, eventually, Decedent's death.  The asbestos and asbestos containing products

19  decedent was exposed to were manufactured or supplied by a named Defendant.

20       8.     Decedent Eugene R. Nepomuceno and Plaintiff Lilia R. Nepomuceno were

21  married at all times relevant to this action, and had been husband and wife.  Plaintiffs

22  Lilia R. Nepomuceno, Eugene R. Nepomuceno , Michael R. Nepomuceno and Ronald

23  Nepomuceno, are each wrongful death heirs of the Decedent.

24       9.     Prior to Decedent's injuries and eventual death as alleged, Decedent was able

25  and did perform duties as a spouse.  Subsequent to the injuries and as a proximate result

26  thereof, Decedent was unable to perform the necessary duties as a spouse and the work

27  and service usually performed in the care, maintenance and management of the family

28  home, and due to his death, Decedent will be unable to perform such work, service and

1   duties in the future.  As a proximate result thereof, Decedent's spouse, Lilia Nepomuceno

2   has been permanently deprived and will be deprived of the consortium of her spouse,

3   including the performance of duties, all to her damages, in an amount presently unknown

4   to Plaintiffs, but which will be proved at the time of trial.

5        10.    Prior to Decedent's injuries and eventual death as alleged, Plaintiff, Lilia R.

6   Nepomuceno as the Decedent's wife, and Plaintiffs Eugene R. Nepomuceno , Michael R.

7   Nepomuceno and Ronald Nepomuceno, as children of the Decedent, enjoyed love,

8   comfort, society, companionship, solace, and moral support of Decedent.  Due to

9   Decedent's death, and as a proximate result thereof, Plaintiffs Lilia R. Nepomuceno,

10   Eugene R. Nepomuceno , Michael R. Nepomuceno and Ronald Nepomuceno will be

11   deprived of such consortium of Decedent in the future, in an amount presently unknown to

12   Plaintiffs, but which will be proved at the time of trial.

13        11.    Discovery of the cause of Plaintiffs' loss of consortium, as herein alleged,

14   first occurred within one year of the date this complaint was filed.

15        12.    Further, as a direct and proximate result of the acts of Defendants, and each

16   of them, and the severe injuries caused thereby to decedent as set forth in this complaint,

17   Decedent's spouse has suffered, and for a long period of time will continue to suffer loss

18   of consortium, including but not by way of limitation, loss of services, marital relations,

19   society, comfort, companionship, love and affection of said spouse, and has suffered

20   severe mental and emotional distress as a result thereof.

21                     **FIRST CAUSE OF ACTION**

22                         (Negligence)

23                  (Against all Defendants)

24        13.    Plaintiffs hereby incorporate by reference, as though fully set forth herein,

25   each and every allegation contained in the General Allegations above.

26        14.    At all times herein mentioned, each of the named Defendants and DOES 1

27   through 300 was the successor, successor in business, successor in product line or a

28   portion thereof, assign, predecessor, predecessor in business, predecessor in product line

1   or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or

2   partial owner of or member in an entity researching, studying, manufacturing, fabricating,

3   designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

4   supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

5   marketing, warranting, re-branding, manufacturing for others, packaging and advertising

6   as certain product, namely asbestos, and other products containing asbestos.  Said entities

7   shall hereinafter collectively be called "Alternate Entities."  Each of the herein named

8   Defendants is liable for the tortious conduct of each successor, successor in business,

9   successor in product line or a portion thereof, assign, predecessor in product line or a

10   portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

11   entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

12   fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for

13   sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

14   marketed, warranted, re-branded, manufactured for others and advertised a certain

15   product, namely asbestos, and other products containing asbestos.  The following

16   Defendants, and each of them, are liable for the acts of each and every "Alternate Entity,"

17   and each of them, in that there has been a virtual destruction of Plaintiff's remedy against

18   each such "Alternate Entity;" Defendants, and each of them, have acquired the assets,

19   product line, or a portion thereof, of each such "Alternate Entity;" such "Alternate Entity;"

20   Defendants, and each of them, caused the destruction of Plaintiff's remedy against each

21   such "Alternate Entity;" each such Defendant has the ability to assume the risk-spreading

22   role of each such "Alternate Entity;" and that each such Defendant enjoys the goodwill

23   originally attached to each such "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CARRIER CORPORATION | individually and as successor-in-interest to Elliott Company, successor-in-interest to Crocker-Wheeler Company |

| CBS CORPORATION | f/k/a Viacom, Inc. (successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric Corporation), individually and as successor-in-interest to B.F. Sturtevant Company |
| CLEAVER-BROOKS, INC. | individually and f/k/a Aqua-Chem, Inc. |
| CLEAVER-BROOKS, INC. | individually and f/k/a AQUA-CHEM, Inc., d/b/a Cleaver-Brooks Division (successor-in-interest to Davis Engineering Company) |
| CRANE CO. | individually and as successor-in-interest to Chapman Valves |
| CROWN CORK & SEAL COMPANY, INC. | (individually and as successor-in-interest to Mundet Cork Company) |
| DRESSER-RAND COMPANY | individually and as successor-in-interest to Terry Steam Turbine and Whiton Machine Company |
| FMC CORPORATION | individually, on behalf of and as successor-in-interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, and Link Belt Company |
| GARDNER DENVER NASH, LLC | individually and as successor-in-interest to The Nash Engineering Co. |
| GARDNER DENVER, INC. | f/k/a Gardner Denver Machinery, Inc. |
| GARLOCK SEALING TECHNOLOGIES, L.L.C. | individually and as successor-in-interest to Garlock, Inc. |
| IMO INDUSTRIES, INC. | (individually and as successor-in-interest to DeLaval Turbine, Inc.) |
| INGERSOLL-RAND COMPANY | individually and as successor-in-interest to Terry Steam Turbine Company and the Whiton Machine Company |
| MECHANICAL DRIVES & BELTING | (f/k/a L.A. Rubber Company) |
| OWENS-ILLINOIS, INC. | individually and as successor-in-interest to Owens-Illinois Glass Company and d/b/a O-I |
| PENTAIR, INC. | individually and as successor-in-interest to Aurora Pump Company |
| SPX CORPORATION | individually and as successor-in-interest to General Signal Corp. (successor-in-interest to Aurora Pump Company) |
| TRIPLE A MACHINE SHOP, INC. | (a/k/a Triple A Shipyard) |
| VELAN VALVE CORP. | individually and as successor-in-interest to Velan Steam Trap Corporation |
| WARREN PUMPS, L.L.C. | f/k/a Warren Pumps, Inc. (individually and as successor-in-interest to The Quimby Pump Company) |
| WEIR VALVES & CONTROLS USA, INC. | individually and as successor-in-interest to Atwood & Morrill Co., Inc. |

| YORK INTERNATIONAL CORPORATION | individually and as successor-in-interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Hearing & Air Conditioning |
|---|---|

15. Defendants had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein, Defendants, and each of them, negligently and carelessly researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance, in that said substance was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Decedent EUGENIO NEPOMUCENO.

16. Decedent EUGENIO NEPOMUCENO was a worker who, for a substantial length of time, used, handled, and was otherwise exposed to the asbestos and asbestos containing products manufactured, sold, or distributed by the entities listed in Paragraph 5 above, in a manner that was reasonably foreseeable, through his occupational exposure to asbestos while serving in the United States Navy as a Steward, Machinist Mate, and Engineering Officer from 1953 through 1975 aboard the USS Kearsage; USS General J.C. Breckinridge; USS Watchman; USS Kishwaukee; USS Ticonderoga; USS Ajax; and when stationed at locations including, but not limited to, Todd Shipyard, Seattle, WA; Naval Shipyard, Subic Bay, Philippines; Naval Shipyard, Pearl Harbor, HI; Hunter's Point, San Francisco, CA; Naval Air Station, Pt. Mugu, CA; Naval Training Center, San Diego, CA; Naval Air Station, Key West, FL; Long Beach Naval Shipyard, Long Beach, CA. Decedent was also exposed to Defendants' asbestos and asbestos-containing

1 products while working as a ship inspector with the Planning Research Corp., San Diego,

2 CA from 1975 to 1978. As a result of his exposure to Defendants' asbestos and asbestos

3 containing products, asbestos fibers entered Decedent's body. Decedent suffered from

4 mesothelioma and each of Defendants' asbestos and asbestos containing products that

5 entered his body was a substantial factor in bringing about, prolonging, or aggravating

6 Decedent's mesothelioma and, eventually, Decedent's death. The asbestos and asbestos

7 containing products Decedent was exposed to were manufactured or supplied by a named

8 Defendant.

9       17.    As a direct and proximate result of the above-referenced conduct of the

10 Defendants, and each of them, as aforesaid, said exposure to said asbestos caused severe

11 and permanent injury to Decedent's lungs and body, including, but not limited to the

12 disease mesothelioma.

13       18.    On or about January 21, 2009, Decedent EUGENIO NEPOMUCENO died as

14 a result of his mesothelioma.

15       19.    Plaintiffs are informed and believe, and thereupon allege, that mesothelioma

16 is a vicious, painful and invariably fatal malignancy of the lining of the lung, stomach, or

17 heart and that said disease results from exposure to asbestos and asbestos products over a

18 period of time. There is no known cure for any form of malignant mesothelioma.

19       20.    As a direct and proximate result of the aforesaid conduct of the Defendants,

20 and each of them, Decedent suffered severe and permanent injuries leading to his eventual

21 death from mesothelioma.

22       21.    As a direct and proximate result of the aforesaid conduct of the Defendants,

23 and each of them, Decedent was compelled to and did employ the services of hospitals,

24 surgeons, physicians, nurses, and the like, to care for and treat him, and did incur medical,

25 hospital and professional incidental expenses, including funeral expenses. When said

26 amounts are ascertained and calculated, Plaintiffs will allege said amounts.

27       22.    The above-referenced conduct of said Defendants, and each of them, was and

28 is willful, malicious, outrageous and/or in conscious disregard and indifference to the

1  safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.

2  Defendants are guilty of oppression, fraud, or malice and engaged in conduct which was

3  intended by the Defendants to cause injury to the Decedent or conduct which was carried

4  on by the Defendants with a conscious disregard of the rights or safety of others.

5  Defendants subjected Plaintiff's Decedent to cruel and unjust hardship in conscious

6  disregard of his rights and engaged in intentional misrepresentation, deceit, or

7  concealment of a material fact known to the Defendants with the intention on the part of

8  the Defendants of thereby depriving Plaintiff's Decedent of property or legal rights or

9  otherwise causing injury.  Plaintiffs therefore, for the sake of example and by way of

10  punishing Defendants, seek punitive damages, according to proof.

11      23.     Plaintiffs further allege all of the foregoing portions of this cause of action

12  specifically against those Defendants who supplied asbestos fibers (as pled against those

13  Defendants who manufactured asbestos products), and any other asbestos fiber supplier or

14  distributor to manufacturers of the asbestos-containing products to which Plaintiff's

15  Decedent was exposed, as well as any DOE Defendants who may be determined at a later

16  date.

17                          **SECOND CAUSE OF ACTION**

18                          (Strict Liability)

19                          (Against all Defendants)

20      24.     Plaintiffs hereby incorporate by reference, as though fully set forth herein,

21  each and every allegation contained in the First Cause of Action.

22      25.     At all times mentioned herein, Defendants, and each of them, researched,

23  manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted,

24  inspected, repaired, offered for sale, and sold a certain substance, the generic name of

25  which is asbestos, and other products containing said substance which Defendants knew

26  were to be used without inspection for defects and which substance contained design and

27  manufacturing defects, in that same was capable of causing and did, in fact, cause personal

28  injuries to the users, consumers, and bystanders while being used in a reasonably

1 foreseeable manner, thereby rendering same unsafe and dangerous for use by the

2 consumers, users, and bystanders.

3      26.     As a direct and proximate result of the above described conduct by

4 Defendants and each of them, Decedent EUGENIO NEPOMUCENO suffered severe and

5 permanent injuries to his person, as alleged hereinabove.

6      27.     At all times mentioned herein, the asbestos and asbestos products

7 manufactured, sold, or distributed by the Defendants failed to perform as safely as an

8 ordinary consumer would expect when used in an intended or reasonably foreseeable

9 manner, and the risk of danger inherent in this substance and products outweighs the

10 benefits of said substance and products.

11      28.     At all times mentioned herein, the foreseeable use of the asbestos and

12 products containing said substance discussed above involved a substantial danger not

13 readily recognizable to an ordinary user, consumer, or bystander, but which danger was

14 known or knowable to Defendants, and Defendants failed to adequately warn of the

15 substantial danger.

16      29.     As a direct and proximate result of the above described conduct by

17 Defendants, and each of them, Decedent suffered severe and permanent injuries to his

18 person, including his eventual death, as alleged herein above.

19      30.     The above-referenced conduct of said Defendants, and each of them, was and

20 is willful, malicious, outrageous and/or in conscious disregard and indifference to the

21 safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.

22 Defendants are guilty of oppression, fraud, or malice and engaged in conduct which was

23 intended by the Defendants to cause injury to the Decedent or conduct which was carried

24 on by the Defendants with a conscious disregard of the rights or safety of others.

25 Defendants subjected Plaintiff's Decedent to cruel and unjust hardship in conscious

26 disregard of his rights and engaged in intentional misrepresentation, deceit, or

27 concealment of a material fact known to the Defendants with the intention on the part of

28 the Defendants of thereby depriving Plaintiff's Decedent of property or legal rights or

1   otherwise causing injury.  Plaintiffs therefore, for the sake of example and by way of

2   punishing Defendants, seek punitive damages, according to proof.

3       31.    Plaintiffs further allege all of the foregoing portions of this cause of action

4   specifically against those Defendants who supplied asbestos fibers (as pled against those

5   Defendants who manufactured asbestos products), and any other asbestos fiber supplier or

6   distributor to manufacturers of the asbestos-containing products to which Plaintiff's

7   Decedent was exposed, as well as any DOE Defendants who may be determined at a later

8   date.

9                        **THIRD CAUSE OF ACTION**

10                          (Breach of Warranty)

11                          (Against all Defendants)

12      32.    Plaintiffs hereby incorporate by reference, as though fully set forth herein,

13   each and every allegation contained in the First and Second Causes of Action.

14      33.    Defendants, and each of them, expressly and implicitly, warranted that said

15   substance was reasonably fit for its intended use without endangering human life, and that

16   such substance was of interchangeable quality.

17      34.    Defendants, and each of them, breached the above described expressed and

18   implied warranties in that said substance was defective, which defects permitted and/or

19   caused said substance to seriously and permanently cause injury to Decedent EUGENIO

20   NEPOMUCENO including, but not limited to, the disease mesothelioma and other lung

21   damage, while said substance was used in a manner that was reasonably foreseeable.

22      35.    As a direct and proximate result of the above described breaches of

23   warranties by Defendants, and each of them, Decedent suffered severe and permanent

24   injuries to his person, including death, as alleged herein above in this complaint.

25      36.    The above-referenced conduct of said Defendants, and each of them, was and

26   is willful, malicious, outrageous and/or in conscious disregard and indifference to the

27   safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.

28   Defendants are guilty of oppression, fraud, or malice and engaged in conduct which was

1   intended by the Defendants to cause injury to the Decedent or conduct which was carried

2   on by the Defendants with a conscious disregard of the rights or safety of others.

3   Defendants subjected Plaintiff's Decedent to cruel and unjust hardship in conscious

4   disregard of his rights and engaged in intentional misrepresentation, deceit, or

5   concealment of a material fact known to the Defendants with the intention on the part of

6   the Defendants of thereby depriving Plaintiff's Decedent of property or legal rights or

7   otherwise causing injury.  Plaintiffs therefore, for the sake of example and by way of

8   punishing Defendants, seek punitive damages, according to proof.

9        37.     Plaintiffs further allege all of the foregoing portions of this cause of action

10   specifically against those Defendants who supplied asbestos fibers (as pled against those

11   Defendants who manufactured asbestos products), and any other asbestos fiber supplier or

12   distributor to manufacturers of the asbestos-containing products to which Plaintiff's

13   Decedent was exposed, as well as any DOE Defendants who may be determined at a later

14   date.

15                        **FOURTH CAUSE OF ACTION**

16             (False Representation Under Restatement of Torts Section 402-B)

17                          (Against All Defendants)

18        38.     Plaintiffs hereby incorporate by reference, as though fully set forth herein,

19   each and every allegation contained in the First through Third Causes of Action.

20        39.     At the aforementioned time when Defendants, their "Alternate Entities," and

21   each of them, researched, manufactured, fabricated, designed, modified, tested or failed to

22   test, inadequately warned or failed to warn, labeled, assembled, distributed, leased,

23   bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for

24   installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged

25   and advertised the said asbestos and asbestos-containing products, as herein above set

26   forth, the Defendants, their "Alternate Entities," and each of them, expressly and impliedly

27   represented to members of the general public, including the purchasers and users of said

28   product, and other "exposed persons," including the Decedent herein and his employers,

that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

40.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the Decedent and his employers, relied upon said representations of Defendants, their "Alternate Entities,"and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

41.     Said representations by Defendants, their "Alternate Entities," and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "Alternate Entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including Decedent herein.

42.     As a direct and proximate result of said false representations by Defendants, their "Alternate Entities," and each of them, the Decedent suffered severe and permanent injuries to his person, including death, as alleged herein above in this complaint.

43.     The above-referenced conduct of said Defendants, and each of them, was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff's Decedent. Defendants are guilty of oppression, fraud, or malice and engaged in conduct which was intended by the Defendants to cause injury to the Decedent or conduct which was carried on by the Defendants with a conscious disregard of the rights or safety of others. Defendants subjected Plaintiff's Decedent to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff's Decedent of property or legal rights or

1    otherwise causing injury. Plaintiffs therefore, for the sake of example and by way of

2    punishing Defendants, seek punitive damages, according to proof.

3        44.     Plaintiffs further allege all of the foregoing portions of this cause of action

4    specifically against those Defendants who supplied asbestos fibers (as pled against those

5    Defendants who manufactured asbestos products), and any other asbestos fiber supplier or

6    distributor to manufacturers of the asbestos-containing products to which Plaintiff's

7    Decedent was exposed, as well as any DOE Defendants who may be determined at a later

8    date.

9                       **FIFTH CAUSE OF ACTION**

10                           (Intentional Tort)

11                      (Against All Defendants)

12        45.     Plaintiffs hereby incorporate by reference, as though fully set forth herein,

13    each and every allegation contained in the First through Fourth Causes of Action.

14        46.     At all times pertinent hereto, the Defendants, their "Alternate Entities," and

15    each of them, owed Decedent a duty, as provided for in Section 1708, 1709 and 1710 of

16    the Civil Code of the State of California, to abstain from injuring the person, property or

17    rights of the Decedent. When a duty to act was imposed, as set forth herein, the

18    Defendants, their "Alternate Entities," and each of them, did do the acts and omissions in

19    violation of that duty, thereby causing injury to the Decedent as is more fully set forth

20    herein. Such acts and omissions consisted of acts falling within Section 1709 (Deceit) and

21    Section 1710 (Fraud) and more specifically, included suggestions of fact which were not

22    true and which Defendants, their "Alternate Entities," and each of them, did not believe to

23    be true; assertions of fact which were not true and which Defendants, their "Alternate

24    Entities," and each of them, had no reasonable ground for believing to be true, and the

25    suppression of fact when a duty existed to disclose it, all as are more fully set forth herein;

26    the violation of any one such duty gave rise to a cause of action for violation of the rights

27    of the Decedent as provided for in the aforementioned Civil Code sections.

28        47.     Since on or before 1930, the Defendants, their "Alternate Entities," and each

1   of them, have known and have possessed the true facts of medical and scientific data and

2   other knowledge which clearly indicated that the asbestos and asbestos-containing

3   products they manufactured, sold, or distributed, to which Decedent was exposed, were

4   and are hazardous to the health and safety of Decedent, and others in Decedent's position

5   working in close proximity with such materials.  The Defendants, their "Alternate

6   Entities," and each of them, have known of the dangerous propensities of other of the

7   aforementioned materials and products since before that time.  With intent to deceive

8   Decedent, and others in Decedent's position, and with intent that he and such others should

9   be and remain ignorant of such facts with intent to induce Decedent and such others to

10  alter his and their positions to his and their injury and/or risk and in order to gain

11  advantages, the following acts occurred:

12       (a)     Defendants, their "Alternate Entities," and each of them, did not label any of

13  the aforementioned asbestos-containing materials and products regarding the hazards of

14  such materials and products to the health and safety of Decedent and others in Decedent's

15  position working in close proximity with such materials until 1964 when certain of such

16  materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and

17  each of them, herein when the knowledge of such hazards was existing and known to

18  Defendants, their "Alternate Entities," and each of them, since on or before 1930.  By not

19  labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and

20  each of them, caused to be suggested as a fact to Decedent that it was safe for Decedent to

21  work in close proximity to such materials when in fact it was not true and Defendants,

22  their "Alternate Entities," and each of them, did not believe it to be true.

23       (b)     Defendants, their "Alternate Entities," and each of them, suppressed

24  information relating the danger of use of the aforementioned materials by requesting the

25  suppression of information to the Decedent and the general public concerning the

26  dangerous nature of the aforementioned materials to workers, by not allowing such

27  information to be disseminated in a manner which would have given general notice to the

28  public and knowledge of the hazardous nature thereof when Defendants, their "Alternate

1     Entities," and each of them, were bound to disclose such information;

2     (c)     Defendants, their "Alternate Entities," and each of them, sold the

3 aforementioned products and materials to Decedent's employer and others without

4 advising Decedent and others of the dangers of use of such materials to persons working

5 in close proximity thereto when Defendants, their "Alternate Entities," and each of them,

6 knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By

7 said conduct, Defendants, their "Alternate Entities," and each of them, caused to be

8 positively asserted to Decedent that which was not true and that which Defendants, their

9 "Alternate Entities," and each of them, had not reasonable ground for believing to be true,

10 to wit, that it was safe for Decedent to work in close proximity to such materials;

11     (d)     Defendants, their "Alternate Entities," and each of them, suppressed from

12 Decedent medical and scientific data and knowledge of the contents of the Lanza report.

13 Although bound to disclose it, Defendants, their "Alternate Entities," and each of them

14 influenced A.J. Lanza to change his report, the altered version of which was published in

15 Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Decedent and others

16 to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of

17 them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of

18 danger, thereby lessening the probability of notice of danger to users thereof;

19     (e)     Defendants, their "Alternate Entities," and each of them, belonged to,

20 participated in, and financially supported the Asbestos Textile Institute and other industry

21 organizations which, for and on behalf of Defendants, their "Alternate Entities," and each

22 of them, actively promoted the suppression of information of danger to users of the

23 aforementioned products and materials, thereby misleading Decedent by the suggestions

24 and deceptions set forth above in this cause of action. The Dust Control Committee,

25 which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute

26 was specifically enlisted to study the subject of dust control. Discussions in this

27 committee were held many times regarding the dangers inherent in asbestos and the

28 dangers which arise from the lack of control of dust, and such information was suppressed

1  from public dissemination from 1946 to a date unknown to Decedent at this time;

2      (f)    Commencing in 1930 with the study of mine and mill workers at Asbestos

3  and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan

4  plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities,"

5  and each of them, knew and possessed medical and scientific information of the

6  connection between inhalation of asbestos fibers and asbestosis, which information was

7  disseminated through the Asbestos Textile Institute and other industry organizations to all

8  other Defendants, their "Alternate Entities," and each of them, herein.  Between 1942 and

9  1950, the Defendants, their "Alternate Entities," and each of them suggested to the public

10  as a fact that which is not true and disseminated other facts likely to mislead Decedent.

11  Such facts did mislead Decedent and others by withholding the afore-described medical

12  and scientific data and other knowledge and by not giving Decedent the true facts

13  concerning such knowledge of danger, which Defendants, their "Alternate Entities," and

14  each of them, were bound to disclose;

15      (g)    Defendants, their "Alternate Entities," and each of them, failed to warn

16  Decedent and others of the nature of said materials which were dangerous when breathed

17  and which could cause pathological effects without noticeable trauma, despite the fact that

18  Defendants, their "Alternate Entities," and each of them, possessed knowledge and were

19  under a duty to disclose that said materials were dangerous and a threat to the health of

20  persons coming into contact therewith;

21      (h)    Defendants, their "Alternate Entities," and each of them, failed to provide

22  Decedent with information concerning adequate protective masks and other equipment

23  devised to be used when applying and installing the products of the Defendants, and each

24  of them, despite knowing that such protective measures were necessary, and that they were

25  under a duty to disclose that such materials were dangerous and would result in injury to

26  the Decedent and others applying and installing such material;

27      (i)    Defendants, their "Alternate Entities," and each of them, when under a duty

28  to so disclose, concealed from Decedent the true nature of the industrial exposure of

1  Decedent and knew that Decedent and anyone similarly situated, upon inhalation of

2  asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis

3  and/or cancer.  Defendants, their "Alternate Entities," and each of them, also concealed

4  from Decedent and others that harmful materials to which they were exposed would cause

5  pathological effects without noticeable trauma;

6      (j)    Defendants, their "Alternate Entities," and each of them, failed to provide

7  information of the true nature of the hazards of asbestos materials and that exposure to

8  these materials would cause pathological effects without noticeable trauma to the public,

9  including buyers, users, and physicians employed by Decedent and Decedent's employers

10  so that said physicians could examine, diagnose and treat Decedent and others who were

11  exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each

12  of them, were under a duty to so inform and said failure was misleading; and

13      (k)    Defendants, their "Alternate Entities," and each of them, failed to provide

14  adequate information to physicians and surgeons retained by Decedent's employers and

15  their predecessor companies, for purposes of making physical examinations of Decedent

16  and other employees as to the true nature of the risk of such materials and exposure thereto

17  when they in fact possessed such information and had a duty to disclose it.

18      48.    Defendants, their "Alternate Entities," and each of them, willfully failed and

19  omitted to complete and file First Report of Occupational Injury of Illness regarding

20  Decedent's injuries, as required by law, and did willfully fail and omit to file report of

21  injury and occupational disease with the State of California.  Decedent was in the class of

22  persons with respect to whom a duty was owed to file such reports and who would have

23  been protected thereby if the fact of danger from products complained of had become

24  known.

25      49.    Defendants, their "Alternate Entities," and each of them, having such

26  aforementioned knowledge, and the duty to inform Decedent about the true facts, and

27  knowing the Decedent did not possess such knowledge and would breathe such material

28  innocently, acted falsely and fraudulently and with full intent to cause Decedent to remain

1   unaware of the true facts and to induce Decedent to work in a dangerous environment, all

2   in violation of sections 1708, 1709 and 1710 of the Civil Code of the State of California.

3        50.    As a direct and proximate result of said intentional torts by Defendants, their

4   "Alternate Entities," and each of them, the Decedent suffered severe and permanent

5   injuries to his person, including death, as alleged herein above in this complaint.

6        51.    The above-referenced conduct of said Defendants, and each of them, was and

7   is willful, malicious, outrageous and/or in conscious disregard and indifference to the

8   safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.

9   Defendants are guilty of oppression, fraud, or malice and engaged in conduct which was

10  intended by the Defendants to cause injury to the Decedent or conduct which was carried

11  on by the Defendants with a conscious disregard of the rights or safety of others.

12  Defendants subjected Plaintiff's Decedent to cruel and unjust hardship in conscious

13  disregard of his rights and engaged in intentional misrepresentation, deceit, or

14  concealment of a material fact known to the Defendants with the intention on the part of

15  the Defendants of thereby depriving Plaintiff's Decedent of property or legal rights or

16  otherwise causing injury.  Plaintiffs therefore, for the sake of example and by way of

17  punishing Defendants, seek punitive damages, according to proof.

18       52.    Plaintiffs further allege all of the foregoing portions of this cause of action

19  specifically against those Defendants who supplied asbestos fibers (as pled against those

20  Defendants who manufactured asbestos products), and any other asbestos fiber supplier or

21  distributor to manufacturers of the asbestos-containing products to which Plaintiff's

22  Decedent was exposed, as well as any DOE Defendants who may be determined at a later

23  date.

24  ### SIXTH CAUSE OF ACTION

25  (Premises Owner/Contractor Liability)

26       53.    Plaintiffs, by this reference, incorporate the allegations contained in the First

27  through Fifth Causes of Action.

28       54.    At all times mentioned herein, the Premises Owner/Contractor Liability

1  Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or

2  controlled the premises where Plaintiff's Decedent was present.  The information provided

3  is preliminary, based on recall over events covering many years and further investigation

4  and discovery may produce more reliable information.  Additionally, Plaintiff's Decedent

5  might have been present at these or other Premises Owner/Contractor Liability

6  Defendants' premises at other locations and on other occasions.

7      55.    Prior to and at said times and places, said Premises Owner/Contractor

8  Liability Defendants, and each of them, respectively, caused certain asbestos-containing

9  insulation, other building materials, products and toxic substances to be constructed,

10  installed, maintained, used, supplied, replaced, repaired and/or removed on each of the

11  aforesaid respective premises, by their own workers and/or by various contractors, and

12  caused the release of dangerous quantities of toxic asbestos fibers and other toxic

13  substances into the ambient air and thereby created a hazardous and unsafe condition to

14  Plaintiff's Decedent and other persons exposed to said asbestos fibers and toxic substances

15  while present at said premises.

16      56.    At all times mentioned herein, said Premises Owner/Contractor Liability

17  Defendants, and each of them, knew or in the exercise of ordinary and reasonable care

18  should have known, that the foregoing conditions and activities created a dangerous,

19  hazardous, and unsafe condition and unreasonable risk of harm and personal injury to

20  Plaintiff's Decedent and other workers or persons so exposed present on each of the

21  aforesaid respective premises.

22      57.    At all times relevant herein, Plaintiff's Decedent entered said premises and

23  used or occupied each of said respective premises as intended and for each of the

24  respective Premises Owner/Contractor Liability Defendants' request and invitation.  In so

25  doing, Plaintiff's Decedent was exposed to dangerous quantities of asbestos fibers and

26  other toxic substances released into the ambient air by the aforesaid hazardous conditions

27  and activities managed, maintained, initiated, and/or otherwise created, controlled, or

28  caused by said Premises Owner/Contractor Liability Defendants, and each of them.

1   fibers and other toxic substances by reason of such contractors' failure to take necessary

2   precautions.

3      65.    The work of contractors on premises controlled by the Premises

4   Owner/Contractor Defendants created an unsafe premise and an unsafe work place by

5   reason of the release of dangerous quantities of toxic substances including but not limited

6   to asbestos.

7      66.    The unsafe premise or work place was created, in part, by the negligent

8   conduct of the contractors employed by the Premises Owner/Contractor Defendants.  Said

9   negligent conduct includes but is not limited to:

10     a.     Failure to warn of asbestos and other toxic dusts;

11     b.     Failure to suppress the asbestos-containing or toxic dusts;

12     c.     Failure to remove the asbestos-containing and toxic dusts through the use of

13           ventilation or appropriate means;

14     d.     Failure to provide adequate breathing protection, i.e., approved respirators or

15           masks;

16     e.     Failure to inspect and/or test the air;

17     f.     Failure to provide medical monitoring.

18      67.    The Premises Owner/Contractor Defendants' duty to maintain and provide

19   safe premises, a safe place to work, and to warn of dangerous conditions are non-

20   delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400,

21   et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder.

22   Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of

23   said duties whether by themselves or others.

24      68.    Prior to and at said times and places, said Premises Owner/Contractor

25   Liability Defendants were subject to certain ordinances, statutes, and other government

26   regulations promulgated by the United States Government, the State of California, and

27   others, including but not limited to the General Industry Safety Orders promulgated

28   pursuant to California Labor Code §6400 and the California Administrative Code under

1   the Division of Industrial Safety, Department of Industrial Relations, including but not

2   limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105,

3   4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other

4   toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California

5   Health & Safety Code §40200, et seq., which empowers the California Air Quality

6   Management Districts to promulgate regulations covering emission standards for

7   hazardous air pollutants.  Such state and federal standards required said Premises

8   Owner/Contractor Liability Defendants to provide specific safeguards or precautions to

9   prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and

10   said Premises Owner/Contractor Liability Defendants failed to provide the required

11   safeguards and precautions.  Defendants' violations of said codes include but are not

12   limited to:

13      (a)    Failing to comply with statutes and allowing ambient levels of airborne

14              asbestos fiber to exceed the permissible/allowable levels with regard to the

15              aforementioned statutes;

16      (b)    Failing to segregate work involving the release of asbestos or other toxic

17              dusts;

18      (c)    Failing to suppress dust using prescribed ventilation techniques;

19      (d)    Failing to suppress dust using prescribed "wet down" techniques;

20      (e)    Failing to warn or educate Plaintiff's Decedent or others regarding asbestos or

21              other toxic substances on the premises;

22      (f)    Failing to provide approved respiratory protection devices;

23      (g)    Failing to ensure "approved" respiratory protection devices were used

24              properly;

25      (h)    Failing to provide for an on-going health and screening program for those

26              exposed to asbestos on the premises;

27      (i)    Failing to provide adequate housekeeping and clean-up of the work place;

28      (j)    Failing to properly warn of the hazards associated with asbestos as required

1    by statute;

2    (k)    Failing to properly report renovation and disturbance of asbestos-containing

3    materials;

4    (l)    Failing to have an asbestos removal supervisor as required by regulation;

5    (m)    Failing to get approval for renovation as required by statutes; and

6    (n)    Failing to maintain records as required by statute.

7    69.    Premises Owner/Contractor Liability Defendants, and each of them, were the

8    "statutory employer" of Plaintiff's Decedent as defined by the California Labor Code and

9    California case law.

10    70.    Plaintiff's Decedent at all times was unaware of the hazardous condition or

11    the risk of personal injury created by Defendants' violation of said regulations, ordinances

12    or statutes.

13    71.    At all times mentioned herein, Plaintiff's Decedent was a member of the class

14    of persons whose safety was intended to be protected by the regulations, statutes or

15    ordinances described in the foregoing paragraphs.

16    72.    At all times mentioned herein, said Premises Owner/Contractor Liability

17    Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care

18    should have known, that the premises that were in their control would be used without

19    knowledge of, or inspection for, defects or dangerous conditions, that the persons present

20    and using said premises would not be aware of the aforesaid hazardous conditions to

21    which they were exposed on the premises, and that such persons were unaware of the

22    aforesaid violations of codes, regulations and statutes.

23    73.    As a legal consequence of the foregoing, Plaintiff's Decedent developed an

24    asbestos-related illness - mesothelioma, which has caused great injury, disability, and

25    death as previously set forth, and Plaintiff's Decedent has suffered damages as herein

26    alleged.

27    74.    The above-referenced conduct of said Defendants, and each of them, was and

28    is willful, malicious, outrageous and/or in conscious disregard and indifference to the

1  safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.

2  Defendants are guilty of oppression, fraud, or malice and engaged in conduct which was

3  intended by the Defendants to cause injury to the Decedent or conduct which was carried

4  on by the Defendants with a conscious disregard of the rights or safety of others.

5  Defendants subjected Plaintiff's Decedent to cruel and unjust hardship in conscious

6  disregard of his rights and engaged in intentional misrepresentation, deceit, or

7  concealment of a material fact known to the Defendants with the intention on the part of

8  the Defendants of thereby depriving Plaintiff's Decedent of property or legal rights or

9  otherwise causing injury.  Plaintiffs therefore, for the sake of example and by way of

10  punishing Defendants, seek punitive damages, according to proof.

11      75.      Plaintiffs further allege all of the foregoing portions of this cause of action

12  specifically against those Defendants who supplied asbestos fibers (as pled against those

13  Defendants who manufactured asbestos products), and any other asbestos fiber supplier or

14  distributor to manufacturers of the asbestos-containing products to which Plaintiff's

15  Decedent was exposed, as well as any DOE Defendants who may be determined at a later

16  date.

17      WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in

18  and amount to be proved at trial in each individual case, as follows:

19      1.      General damages according to proof;

20      2.      Damages for medical and related expenses, according to proof;

21      3.      Damages for funeral, burial, incidental, and related expenses, according to

22              proof;

23      4.      Damages for the present value of financial contributions which Decedent

24              would have given Plaintiffs had he lived;

25      5.      Damages for the pecuniary value of services which Plaintiffs might have

26              reasonably expected to receive from Decedent;

27      6.      Damages for loss of earning capacity, according to proof;

28      7.      Damages for loss of earning, according to proof;

8.  Damages for Decedent's other economic losses, according to proof;

9.  Exemplary or punitive damages according to proof;

10.  Plaintiffs' damages for loss of consortium according to proof;

11.  Prejudgment interest, according to proof;

12.  Costs of suit incurred herein; and

13.  Such other an further relief as this Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032 and related provisions of law.

DATED: July 21, 2009                    BARON & BUDD, P.C.


                                        By: _____
                                             JED BORGHEI, ESQ.
                                             Attorneys for Plaintiffs: LILIA R.
                                             NEPOMUCENO,   EUGENE R.
                                             NEPOMUCENO, MICHAEL R.
                                             NEPOMUCENO, AND RONALD
                                             NEPOMUCENO

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 2 6 2009

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)                    MDL DOCKET NO. 875

LILIA NEPOMUCENO, et al.,                UNITED STATES DISTRICT COURT
        Plaintiffs,                CENTRAL DISTRICT OF CALIFORNIA
    v.
A.W. CHESTERTON COMPANY, et al.,
        Defendants.                CASE NO. CV09-06092

## CERTIFICATE OF SERVICE

    I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Sedgwick Detert Moran & Arnold, LLP, One Market Plaza, Steuart Tower, 8th Floor, San Francisco, CA  94105.  On October 23, 2009, I served the within document(s):

    **RESPONSE TO PLAINTIFF'S MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER**

    **DECLARATION OF KATHERINE P. GARDINER IN SUPPORT OF DEFENDANT GENERAL ELECTRIC COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER**

| | | |
|---|---|---|
| 1 | ☐ | FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m. |
| 2 | | |
| 3 | ☒ | MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below. |
| 4 | | |
| 5 | ☐ | PERSONAL SERVICE - by causing personal delivery from an Agent from First Legal, Inc. of the document(s) listed above to the person(s) at the address(es) set forth below. |
| 6 | | |
| 7 | ☐ | OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via . |
| 8 | | |

9

SEE ATTACHED SERVICE LIST

10

    I am readily familiar with the firm's practice of collection and processing correspondence
11 for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
12 motion of the party served, service is presumed invalid if postal cancellation date or postage
meter date is more than one day after date of deposit for mailing in affidavit.
13

14     I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.  Executed on October 23, 2009, at San Francisco, California.
15

16

17                                              Christine P. Williams

18

19

20

21

22

23

24

25

26

27

28

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                                MDL No. 875

## INVOLVED COUNSEL LIST (Excerpted from CTO-326)

Lilia Nepomuceno, et al. v. A.W. Chesterton Co., et al., C.D. California, C.A. No. 2:09-6092
(Judge Manuel L. Real)

Peter G. Angelos
LAW OFFICES OF PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201

Janet W. Black
WARD BLACK PA
208 West Wendover Avenue
Greensboro, NC 27401-1307

Jed Borghei
BARON & BUDD PC
9465 Wilshire Boulevard, Suite 460
Beverly Hills, CA 90212

Eric L. Brown
BARON & BUDD PC
9465 Wilshire Boulevard, Suite 460
Beverly Hills, CA 90212

Russell W. Budd
BARON & BUDD PC
3102 Oaklawn Ave., Suite 1100
Dallas, TX 75219

John D. Cooney
COONEY & CONWAY
120 North LaSalle Street
Suite 3000
Chicago, IL 60602-2415

Kevin M. Jordan
BAKER BOTTS LLP
910 Louisiana
One Shell Plaza
Houston, TX 77002-4995

Jennifer Judin
DEHAY & ELLISTON LLP
800 West 6th Strret, Suite 788
Los Angeles, CA 90017

Paul Kalish
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Steven Kazan
KAZAN MCCLAIN ABRAMS FERNANDEZ ET AL
171 Twelfth Street, Third Floor
Oakland, CA 94607

Peter A. Kraus
WATERS & KRAUS LLP
3219 McKinney Ave., Suite 3000
Dallas, TX 75204

David C. Landin
HUNTON & WILLIAMS
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074

Roger B. Lane
LANE & GOSSETT
1601 Reynolds Street
Brunswick, GA 31520

Peter B. Langbord
FOLEY & MANSFIELD PLLP
150 South Los Robles Avenue
Suite 400
Pasedena, CA 91101

**MDL No. 875 - Involved Counsel List (Excerpted from CTO-326) (Continued)**

Jennie Levin
HAWKINS PARNELL & THACKSON LLP
444 South Flower Street
Suite 1100
Los Angeles, CA 90071

Lillian C. Ma
TUCKER ELLIS & WEST LLP
135 Main Street, Suite 700
San Francisco, CA 94105

William F. Mahoney
SEGAL MCCAMBRIDGE SINGER
   & MAHONEY LTD
233 South Wacker Drive
Suite 5500
Chicago, IL 60606

Robert C. Malaby
MALABY & BRADLEY
150 Broadway, Suite 600
New York, NY 10038

John P. McShea
MCSHEA TECCE PC
Mellon Bank Center
1717 Arch Street
28th Floor
Philadelphia, PA 19103

Philip McWeeny
SCHIFF HARDIN LLP
One Market Plaza
32nd Floor
Spear Street Tower
San Francisco, CA 94105

Thomas A. Packer
GORDON & REES LLP
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA 94111

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant. SC 29464

John K. Son
TUCKER ELLIS & WEST LLP
515 South Flower St., 42nd Floor
Los Angeles, CA 90017-2223

Robert E. Thackston
HAWKINS PARNELL & THACKSTON LLP
4514 Cole Ave., Suite 500
Dallas, TX 75205

Michael P. Thornton
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Edward R. Ulloa
HAWKINS PARNELL & THACKSON LLP
444 South Flower Street
Suite 1100
Los Angeles, CA 90071

Walter G. Watkins, Jr.
FORMAN PERRY WATKINS KRUTZ & TARDY
PLLC
P.O. Box 22608
Jackson, MS 39225-2608

Previn A. Wick
POND NORTH LLP
350 South Grand Avenue
Suite 2850
Los Angeles, CA 90071