**MDL 875**

# HARRIS & HARRIS, LLP

ATTORNEYS AT LAW

COLONIAL BANK BUILDING
SUITE 450
2501 20TH PLACE SOUTH
BIRMINGHAM, ALABAMA 35223

TELEPHONE: (205) 871-5777

FACSIMILE: (205) 871-0029

Writer's email: nicole@harris-harris.com

December 1, 2009

PLEADING NO. 5992

**VIA FEDERAL EXPRESS**
Mr. Jeffery N. Luthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal Judiciary Building
Room G-255, North Lobby
Washington, DC 20002

RE:    MDL No. 875 - - IN RE: Asbestos Products Liability (No. VI)
       Charles Corley, et al. v. Long-Lewis, Inc. et al.
       N.D. Alabama, C.A. No. 2:09-1812
       (Judge Harwell G. Davis, III)

Dear Mr. Luthi:

On November 25, 2009, CBS Corporation submitted to the MDL Panel "Defendant CBS Corporation's Response to Plaintiffs' Motion to Vacate Condition Transfer Order." Therein, CBS incorporated by reference some arguments and authorities previously asserted by it to the Federal District Court for the Northern District of Alabama, in the context of briefing on Plaintiffs' Motion to Remand the action.

Because these pleadings were referred to within CBS Corporation's November 25, 2009 submission to the MDL, for the convenience of the MDL Panel, CBS Corporation supplements herein its November 25, 2009 Response to Plaintiffs' Motion to Vacate Condition Transfer Order with the following District Court pleadings:

(1)    Defendant CBS Corporation's Notice of Consent to Removal and of Additional Grounds for Removal Jurisdiction Under 28 U.S.C. § 1442(a)(1);

(2)    Defendant CBS Corporation's Response to Plaintiffs' Motion to Remand; and

(3)    CBS Corporation's Sur-Reply In Further Opposition to Plaintiffs' Motion to Remand

**OFFICIAL FILE COPY**

IMAGED DEC - 3 2009

Mr. Jeffrey N. Luthi
December 1, 2009
Page 2

_____

(3)     CBS Corporation's Sur-Reply In Further Opposition to Plaintiffs' Motion to
         Remand

        In addition, enclosed, please find four copies of the above referenced pleadings, as
well as a computer generated disk containing each of these documents in Adobe Acrobat
(PDF) format.

                                            Sincerely,

                                            Nicole Mapp Hardee

NMH/shj
Enclosures

cc:     Involved Counsel List (without Enclosures, but will be provided upon request)

MULTIDISTRICT LITIGATION
Case 2:09-cv-01083-HGD Document 50-22 Filed 09/10/2009 Page 1 of 50   FILED
DEC - 3 2009
2009-Sep-11 PM 02:28
U.S. DISTRICT COURT
FILED   N.D. OF ALABAMA
CLERK'S OFFICE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| LONG-LEWIS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### DEFENDANT CBS CORPORATION'S NOTICE OF CONSENT TO REMOVAL AND OF ADDITIONAL GROUNDS FOR REMOVAL JURISDICTION UNDER 28 U.S.C. § 1442(a)(1)

Defendant CBS CORPORATION ("Westinghouse")[1] hereby gives formal notice of its consent to the removal of this action from the Circuit Court of Jefferson County as affected by Defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division. Additionally, as Plaintiffs appear to allege that Plaintiff Charles Corley ("Corley") was exposed to asbestos due to work with or around turbines and/or similar items of marine equipment which were designed, manufactured and supplied by Westinghouse under the Navy's detailed direction and control and which included asbestos-containing components only as dictated by the Navy's own plans, specifications and/or regulations, Westinghouse has a personal right of "federal officer" removal under 28 U.S.C. § 1442(a)(1). Westinghouse's assertion of this independent basis for removal is timely in that it is being asserted within thirty (30) days of Westinghouse's receipt of notice of

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom, Inc ) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

1

factual allegations supporting federal officer removal. Should Plaintiffs file a motion to remand this case, Westinghouse respectfully requests an opportunity to respond more fully in writing, but offers the following short and plain statement of its personal right of removal at this time.

Removal is proper under 28 U.S.C. § 1442(a)(1) where a defendant can show: (1) that it acted under the direction of a federal officer; (2) that a "causal nexus" exists between its actions under color of its federal officer and at least one of the plaintiff's claims; and (3) that it can state at least a colorable federal law-based defense to the plaintiffs' claims. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989). *See also*, *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996). Westinghouse can satisfy each of these three prongs relative to Plaintiffs' asbestos-related claims in the instant case.

In designing, manufacturing and supplying turbines and similar items of marine equipment to the United States Navy, Westinghouse acted under the detailed direction and control of the Navy and its officers. More specifically, such equipment was designed and manufactured in strict compliance with precise, detailed, specifications promulgated by Navy Sea Systems Command. An Inspector of Naval Machinery who was resident at Westinghouse's premises personally oversaw the manufacturing process, enforcing compliance with the Navy's design specifications. Finally, Westinghouse's Navy equipment was subjected to extensive testing and inspection by the Navy as a prerequisite to its approval, acceptance and use aboard Navy ships. Such facts clearly establish that Westinghouse was "acting under" the Navy and its officers in its design, manufacture and supply of Navy equipment.

2

In this case, Plaintiffs allege that Corley was injured due, in part, to exposure to asbestos-containing components used in or on Westinghouse Navy equipment. As reflected above, any use of asbestos in conjunction with such equipment was the direct result of the Navy's own detailed plans, specifications and/or regulations. Thus, the existence of a causal nexus between Westinghouse's actions under color of its federal office and Plaintiffs' claims is "axiomatic."

Under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Westinghouse can state at least a colorable federal defense to this action, i.e., government contractor immunity from liability for injuries arising from any exposure to asbestos attributable to its Navy equipment. More specifically, Westinghouse can make at least a colorable showing in this case that: (1) its Navy equipment was designed and manufactured in compliance with detailed Navy specifications; (2) such equipment was accepted only after the Navy tested and inspected it and found it to be in compliance with said specifications; and (3) the Navy was, at all times relevant to this case, fully and independently aware of potential asbestos-related health hazards. *See Boyle*, 487 U.S. at 512; *Glassco v. Miller Equip. Co.*, 966 F.2d 641, 642-43 (11th Cir. 1992).

Consistent with the above discussion, numerous federal district courts have previously held that jurisdiction exists under 28 U.S.C. § 1442(a)(1) relative to asbestos-related personal injury or wrongful death claims brought against Westinghouse and other similarly-situated Navy equipment suppliers. *See, e.g. Murphy v. General Electric Co.*, 2009 WL 2151192 (D. Conn. July 15, 2009); *Seigfried v. Allegheny Ludlum Corp.*, 2009 WL 1035001 (W.D. Pa. Apr. 17, 2009); *Beamis v. Buffalo Pumps*, 2009 WL 462543 (D.R.I. Feb. 23, 2009); *Curry v. American Standard, Inc.*, 2009 WL 308029 (S.D.N.Y.

3

Feb. 6, 2009); *Redman v. A.W. Chesterton Co.*, 2008 WL 5048205 (N.D. Cal. Nov. 25, 2008); *Carroll v. Buffalo Pumps*, 2008 WL 4793725 (D. Conn. Oct. 27, 2008); *Dematties v. Acmat Corp.*, 2008 WL 4735145 (D. Conn. Oct. 27, 2008); *Redman v. A.W. Chesterton Co.*, 2008 WL 4447729 (N.D. Cal. Sept. 30, 2008); *Desperes v. AMPCO-Pittsburgh Corp.*, 2008 WL 4329881 (D. Conn. Sept. 22, 2008); *O'Connell v. Foster Wheeler Energy Corp.*, 2008 WL 1722079 (D. Mass. Apr. 7, 2008); *Marley v. Elliot Turbomachinery Co.*, 2008 WL 1700326 (S.D. Fla. Mar. 13, 2008); *Wright v. A.W. Chesterton Co.*, 2008 WL 512728 (N.D. Cal. Feb. 25, 2008); *Contois v. Able Indus.*, 523 F. Supp. 2d 155 (D. Conn. 2007); *Machnik v. Buffalo Pumps*, 506 F. Supp. 2d 99 (D. Conn. 2007); *Ferguson v. Lorillard Tobacco Co.*, 475 F. Supp. 2d 725 (N.D. Ohio Feb. 15, 2007); *Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205 (S.D.N.Y. 2005); *McAboy v. Imo Indus.*, 2005 WL 2898047 (W.D. Wash. Oct. 27, 2005); *Mitchell v. AC&S, Inc.*, 2004 WL 3831228 (E.D. Va. Dec. 15, 2004); *Fink v. Todd Shipyards*, 2004 WL 856734 (E.D. La. April 20, 2004); *Delancey v. General Elec. Co.*, 2004 WL 3247173 (E.D. La. Mar. 31, 2004); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695 (S.D. Tex. 2002); *Carter v. ACandS, Inc.*, 2002 WL 31682352 (E.D. Tex. 2002); *Crocker v. Borden, Inc.*, 852 F. Supp. 1322 (E.D. La. 1994); *Pack v. ACandS, Inc.*, 838 F. Supp. 1099 (D. Md. 1993); *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992). Westinghouse submits that these authorities have properly interpreted and applied 28 U.S.C. § 1442(a)(1) and that a similar ruling would be called for in this case in the event that Plaintiffs' seek a remand of this matter to state court.

Notably, Westinghouse is not required to notify, or obtain the consent of, any other defendant to this action in order to assert its "federal officer" removal rights relative

to this entire suit pursuant to 28 U.S.C. § 1442 (a)(1).  *See, Fowler v. Southern Bell Tel.
& Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965).  Rather, the instant pleading is intended
solely to give notice to this Court and to all parties to this civil action that all claims
stated against Westinghouse in this matter independently fall within the scope of this
Court's jurisdiction under 28 U.S.C. § 1442(a)(1) regardless of the merits of the removal
as originally affected by Defendants Garlock Sealing Technologies LLC and Owens-
Illinois, Inc. and that Westinghouse intends to assert its statutory right thereunder to have
its federal law-based defense tried in a federal district court.

RESPECTFULLY SUBMITTED, this 10th day of September, 2009.

James A. Harris, III
**Attorney Code: Har141**
Nicole M. Hardee
**Attorney Code: MAP006**
2501 20th Place South, Suite 450
Birmingham, Alabama 35223
FAX:  (205) 871-0029
TEL:  (205) 871-5777
Email: jamey@harris-harris.com
Email: nicole@harris-harris.com

OF COUNSEL:

HARRIS & HARRIS, LLP

Attorneys for CBS Corporation, a
Delaware corporation, f/k/a Viacom
Inc., successor by merger to CBS
Corporation, a Pennsylvania
corporation, f/k/a
Westinghouse Electric Corporation

5

Case MDL No. 875   Document 5992   Filed 12/03/09   Page 8 of 145

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

   G. Patterson Keahey, Jr., Esquire
   Law Offices of G. Patterson Keahey, P.C.
   One Independence Plaza, Suite 612
   Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Of Counsel

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

CHARLES CORLEY AND      *
MYRA CORLEY      *
     *
     Plaintiff,      *
     *
     vs.      *      Case No.:_____
     *
LONG-LEWIS, INC., et al.,      *
     *
     Defendants.      *

## CONSENT FOR REMOVAL

COMES NOW Defendant, Fairbanks Morse Pump Corporation, by and through

counsel, and consents and joins in the Removal of the above-styled action by co-

defendants, Garlock Sealing Technologies LLC and Owens-Illinois, Inc., to the United

States District Court for the Northern District of Alabama, Southern Division, from the

Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September 2009.

EDWARD B. McDONOUGH, JR. MCD020)
Attorney for Defendant,
Fairbanks Morse Pump Corporation

OF COUNSEL:
EDWARD B. McDONOUGH, JR., P.C.
POST OFFICE BOX 1943
MOBILE, ALABAMA 36633
Telephone:      251-432-3296
Facsimile:      251-432-3300
Email: EBM@emcdonoughlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

EDWARD B. McDONOUGH, JR.

2

644860 1

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. _____ |
| LONG-LEWIS, INC., et al., | ) ) | |
| Defendants. | ) | |

### CONSENT FOR REMOVAL

COMES NOW Defendant Metropolitan Life Insurance Company, by and through counsel, and consents in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

_____
Michael A. Vercher (ASB-4976-H32M)
One of the Attorneys for Defendant
Metropolitan Life Insurance Company

OF COUNSEL:

CHRISTIAN & SMALL, LLP
505 North Twentieth Street
1800 Financial Center
Birmingham, AL 35203
Telephone:    (205) 795-6588
Facsimile:    (205) 328-7234
mavercher@csattorneys.com

1

644860.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

OF COUNSEL

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| LONG-LEWIS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### CONSENT FOR REMOVAL

COMES NOW Defendant IMO Industries, Inc., with full reservation of all rights and defenses, by and through the undersigned counsel, and joins in and consents to the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully submitted this 10th day of September, 2009.

FREDERICK G. HELMSING, JR. (HELMF3421)
McDowell Knight Roedder & Sledge, L.L.C.
11 North Water Street, Suite 13290 (36602)
Post Office Box 350
Mobile, Alabama 36601
Ph. (251) 432-5300
Fax (251) 432-5300
fhelmsing@mcdowellknight.com

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

                        G. Patterson Keahey, Jr., Esquire
                        Law Offices of G. Patterson Keahey, P.C.
                        One Independence Plaza, Suite 612
                        Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

                        Frederick G. Helmsing, Jr.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES CORLEY and MYRA CORLEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | Case No. _____ |
| | ) | |
| **LONG-LEWIS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant Yarway Corporation , by and through undersigned counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

Edwin Bryan Nichols (ASB-9028-N69N)
Maynard Cooper & Gale, PC
1901 Sixth Avenue North
Suite 2400
205.254.1184
205.714.6490
bnichols@maynardcooper.com

1

644860.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

_____
Attorney

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. _____ |
| LONG-LEWIS, INC., et al., | ) ) | |
| Defendants. | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant Sepco Corporation, by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

Frank Lankford, Jr. LAN037
ASB: 8409-K71F
Attorney for Sepco Corporation
FEL@hfsllp.com

OF COUNSEL:

HUIE, FERNAMBUCQ & STEWART, LLP

Three Protective Center

2801 Highway 280 South, Suite 200

Birmingham, AL 35223-2484
Telephone: (205) 251-1193

1

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Frank Lankford, Jr.

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. _____ |
| LONG-LEWIS, INC., et al., | ) ) | |
| Defendants. | ) ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant Refractory Sales and Service Company, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

Frank Lankford, Jr. LAN037
ASB: 8409-K71F
Attorney for Refractory Sales and Service Company, Inc.
FEL@hfsllp.com

OF COUNSEL:

HUIE, FERNAMBUCQ & STEWART, LLP

Three Protective Center

2801 Highway 280 South, Suite 200

Birmingham, AL 35223-2484
Telephone: (205) 251-1193

1

644860.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Frank Lankford, Jr.

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

CHARLES CORLEY and MYRA )
CORLEY, )
)
     Plaintiffs, )
)
vs. )    Case No. _____
)
LONG-LEWIS, INC., et al., )
)
     Defendants. )

## CONSENT FOR REMOVAL

    COMES NOW Defendant John Crane, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

    Respectfully Submitted this 10th day of September, 2009.

                              Frank Lankford, Jr. LAN037
                              ASB: 8409-K71F
                              Attorney for John Crane, Inc.
                              FEL@hfsllp.com

OF COUNSEL:

HUIE, FERNAMBUCQ & STEWART, LLP

Three Protective Center

2801 Highway 280 South, Suite 200

Birmingham, AL 35223-2484
Telephone:  (205) 251-1193

1

Case MDL No. 875   Document 5993   Filed 12/03/09   Page 22 of 145

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Frank Lankford, Jr.

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES CORLEY and MYRA CORLEY,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| **LONG-LEWIS, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant Honeywell International, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

Frank Lankford, Jr. LAN037
ASB: 8409-K71F
Attorney for Honeywell International, Inc.
FEL@hfsllp.com

**OF COUNSEL:**

HUIE, FERNAMBUCQ & STEWART, LLP

Three Protective Center

2801 Highway 280 South, Suite 200

Birmingham, AL 35223-2484
Telephone: (205) 251-1193

1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Frank Lankford, Jr.

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

CHARLES CORLEY and MYRA )
CORLEY, )
          )
      Plaintiffs, )
          )
vs. )    Case No. _____
          )
LONG-LEWIS, INC., et al., )
          )
      Defendants. )

## CONSENT FOR REMOVAL

COMES NOW Defendants FMC Corporation on behalf of its former Construction Equipment Group, former Turbo Pump Operation, and former Chicago Pump and Peerless Pump businesses (improperly sued as "FMC Corporation individually and as successor in interest to Food Machinery and Chemical Corporation, Coffin Turbo Pumps, Chicago Pumps, Peerless Pumps, WECO, Chiksan, Link-Belt, Well Equipment Mfg. Corp., Hamer, and John Bean Pump Co."), and Georgia-Pacific LLC (identified in Plaintiffs' Complaint as "Georgia-Pacific, LLC, Individually and as a Successor to Bestwall Gypsum Company"), by and through counsel, and consent and join in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

C. Paul Cavender ASB-8784-E67C
Allan R. Wheeler ASB-4726-R49A
Attorneys for Defendants
FMC CORPORATION on behalf of its
former Construction Equipment
Group, former Turbo Pump
Operation, and former Chicago
Pump and Peerless Pump businesses
and
GEORGIA-PACIFIC LLC

BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Paul.Cavender@burr.com
Allan.Wheeler@burr.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and exact copy of the foregoing
pleading has been served upon the following counsel for parties in interest herein by
delivering same to the offices of said counsel, or by mailing same to the offices of said
counsel by United States Mail with sufficient postage thereon to carry the same to its
destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Allan R. Wheeler

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| LONG-LEWIS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT FOR REMOVAL

COME NOW Defendants, Crane Co., Bill Vann Company, Inc., and Foster Wheeler Corporation, by and through counsel, and consent to and join in the Removal of the above-styled action by Co-Defendants, Garlock Sealing Technologies LLC and Owens-Illinois, Inc., to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully submitted this 10th day of September, 2009,

_J. Grey Redditt, Jr._

F. GREY REDDITT, JR.
TIMOTHY A. CLARKE
*Attorneys for Crane Co., Bill Vann Company, Inc., and Foster Wheeler Corporation*

Of Counsel:
Vickers, Riis, Murray and Curran, LLC
56 St. Joseph Street
Suite 1100
Post Office Drawer 2568
Mobile, Alabama 36652-2568
Telephone:    (251)432-9772
Facsimile:    (251)432-9781
E-Mail:       gredditt@vickersriis.com
              tclarke@vickersriis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009,


F. Grey Redditt, Jr.

2

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES CORLEY and MYRA CORLEY,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **vs.** | ) | Case No. _____ |
| | ) | |
| **LONG-LEWIS, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant Wittichen Supply Company, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully submitted this 10th day of September, 2009.

_____
Brian M. Blythe
Attorney for Wittichen Supply Company, Inc.
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
bblythe@babc.com

1

644860.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

_____
Attorney

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. _____ |
| LONG-LEWIS, INC., et al., | ) ) | |
| Defendants. | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant Warren Pumps, LLC, improperly designated as Warren Pumps, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

_____
William T. Mills, II
Porterfield, Harper, Mills & Motlow
22 Inverness Center Parkway
Suite 600
Birmingham, Alabama 35242
(205) 980-5000
(205) 980-5001 Fax
wtm@phm-law.com

1

644860.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

William T. Mills, II

2

644860.1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES CORLEY and MYRA CORLEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** _____ |
| | ) | |
| **LONG-LEWIS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant General Electric Company, by and through

counsel, and consents and joins in the Removal of the above-styled action by

co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc.

to the United States District Court for the Northern District of Alabama,

Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

_____
Jenelle R. Evans
Balch & Bingham LLP
P.O. Box 306
Birmingham, AL 35203
Telephone: (205) 226-8760
Facsimile: (205) 488-5686
jevans@balch.com

1

644860.1

**OF COUNSEL:**
**S. Allen Baker**
**Jenelle R. Evans**
**Houston Smith**
**Balch & Bingham LLP**
**P.O. Box 306**
**Birmingham, AL 35203**
**Telephone: (205) 226-8760**
**Facsimile: (205) 488-5686**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Jenelle R. Evans

2

644860.1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES CORLEY and MYRA CORLEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | Case No. _____ |
| | ) | |
| **LONG-LEWIS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant Honeywell, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

Jenelle R. Evans
Balch & Bingham LLP
P.O. Box 306
Birmingham, AL 35203
Telephone: (205) 226-8760
Facsimile: (205) 488-5686
jevans@balch.com

1

644860 1

**OF COUNSEL:**
**S. Allen Baker**
**Jenelle R. Evans**
**Houston Smith**
**Balch & Bingham LLP**
**P.O. Box 306**
**Birmingham, AL 35203**
**Telephone: (205) 226-8760**
**Facsimile: (205) 488-5686**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Jenelle R. Evans

2

644860.1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES CORLEY and MYRA CORLEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. _____** |
| | ) | |
| **LONG-LEWIS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant ELLIOTT COMPANY, by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

_____
Y. ALEX WYATT, III
PARSONS, LEE & JULIANO, P.C.
300 Protective Center
2801 Highway 280 South
Birmingham, AL 35223
(205) 326-6000
awyatt@pljpc.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

OF COUNSEL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. _____ |
| LONG-LEWIS, INC., et al., | ) ) | |
| Defendants. | ) ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant Gardner Denver, Inc., by and through counsel, and

consents and joins in the Removal of the above-styled action by co-defendants Garlock

Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for

the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson

County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

_____
JAMES G. HOUSE, III (HOU012)

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
200 S. Lamar Street
City Centre Building, Suite 100
P. O. Box 22608
Jackson, MS 39225-2608
Telephone: (601) 960-8600
Facsimile: (601) 960-8613

1

644860.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

JAMES G. HOUSE, III

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY AND | * | |
| MYRA CORLEY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Case No.:_____ |
| | * | |
| LONG-LEWIS, INC., et al., | * | |
| | * | |
| Defendants. | * | |

## CONSENT FOR REMOVAL

COMES NOW Defendant, Buffalo Pumps, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants, Garlock Sealing Technologies LLC and Owens-Illinois, Inc., to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

EDWARD B. McDONOUGH, JR. MCD020)
Attorney for Defendant,
BUFFALO PUMPS, INC.

OF COUNSEL:
EDWARD B. McDONOUGH, JR., P.C.
POST OFFICE BOX 1943
MOBILE, ALABAMA 36633
Telephone:    251-432-3296
Facsimile:    251-432-3300
Email: EBM@emcdonoughlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

EDWARD B. McDONOUGH, JR.

2

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | |
|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. _____ ) |
| LONG-LEWIS, INC., et al., | ) ) |
| Defendants. | ) |

### CONSENT FOR REMOVAL

COMES NOW Defendant  Crown Cork & Seal Company, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies, LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully submitted this 10th day of September, 2009.

/s/ Walter T. Gilmer, Jr.
WALTER T. GILMER, JR. (GILMW5452)
ANNE LAURIE SMITH (SMITA2262)
Attorney for Defendant
Crown Cork & Seal Company, Inc.

**OF COUNSEL:**

**McDOWELL KNIGHT ROEDDER
& SLEDGE, L.L.C.**
Post Office Box 350
Mobile, Alabama 36601
Phone: (251) 432-5300
Fax: (251) 432-5303

1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

> /s/ Walter T. Gilmer, Jr. _____

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. _____ |
| LONG-LEWIS, INC., et al., | ) ) | |
| Defendants. | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant, Long-Lewis, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

_____
Jeff Friedman (FRI 018)
Lee Patterson (PAT 060)
Attorneys for Long-Lewis, Inc..

OF COUNSEL:
FRIEDMAN LEAK
3800 Colonnade Parkway, Ste. 650
Birmingham, Alabama 35243
Telephone: 205-278-7000
Facsimile: 205-278-7001

1

644860 1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Of Counsel

644860 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| LONG-LEWIS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT FOR REMOVAL

COMES NOW Defendant, CIRCOR International, Inc., by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

_____
Jeff Friedman (FRI 018)
Lee Patterson (PAT 060)
Attorneys for CIRCOR International, Inc.

OF COUNSEL:
FRIEDMAN LEAK
3800 Colonnade Parkway, Ste. 650
Birmingham, Alabama 35243
Telephone: 205-278-7000
Facsimile: 205-278-7001

1

644860 1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> G. Patterson Keahey, Jr., Esquire
> Law Offices of G. Patterson Keahey, P.C.
> One Independence Plaza, Suite 612
> Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

_____
Of Counsel

2

644860 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| LONG-LEWIS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CONSENT FOR REMOVAL</u>

COMES NOW Defendant Ford Motor Company, by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

W. Larkin Radney IV
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203
(205) 581-0700
(205) 581-0799 (Fax)

1

644860.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

_____
Attorney

2

644860.1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

CHARLES CORLEY and MYRA CORLEY,  )
)
    Plaintiffs,  )
)
vs.  )   Case No. _____
)
LONG-LEWIS, INC., et al.,  )
)
    Defendants.  )

## CONSENT FOR REMOVAL

COMES NOW Defendant Emerson Electric Company, by and through counsel, and consents and joins in the Removal of the above-styled action by co-defendants Garlock Sealing Technologies LLC and Owens-Illinois, Inc. to the United States District Court for the Northern District of Alabama, Southern Division, from the Circuit Court of Jefferson County, Alabama.

Respectfully Submitted this 10th day of September, 2009.

W. Larkin Radney IV
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203
(205) 581-0700
(205) 581-0799 (Fax)

1

644860.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

Respectfully submitted this 10th day of September, 2009.

Attorney

2

644860.1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA – SOUTHERN DIVISION

CHARLES CORLEY and MYRA CORLEY,   )
   )
     Plaintiffs,   )
   )
vs.   )     Case No. 2:09-cv-1812
   )
LONG-LEWIS, INC., et al.,   )
   )
     Defendants.   )

### DEFENDANT CBS CORPORATION'S RESPONSE TO
### PLAINTIFFS' MOTION TO REMAND

COMES NOW, CBS Corporation ("Westinghouse")[1], opposing Plaintiffs' Motion to Remand. Plaintiff Charles Corley ("Corley") allegedly contracted mesothelioma due, in part, to contact with turbines or turbine-generators that were designed and manufactured by Westinghouse for use aboard Navy ships including the *U.S.S. Cavalier*, the *U.S.S. Valley Forge* and the *U.S.S. Caloosahatchee*. Plaintiffs' motion must be denied as this Court has jurisdiction over their claims against Westinghouse under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

Stated simply, this Court has § 1442(a)(1)-based jurisdiction over Plaintiffs' claims if: 1) the design and manufacture of Westinghouse's Navy turbines were subject to Navy supervision and control, thus constituting activity under the direction of a federal officer; 2) Plaintiffs' claims arise from Westinghouse's activity under color of that state office; and 3) Westinghouse can state at least a colorable federal law-based defense to Plaintiffs' claims.

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom, Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

Mesa v. California, 489 U.S. 121 (1989); Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1427 (11th Cir. 1996).  As to the third prong of this test, the government contractor defense asserted by Westinghouse applies whenever a military equipment supplier is sued for a defect in its equipment and shows that: 1) the government developed or approved reasonably precise specifications for the equipment; 2) the equipment conformed to the specifications; and 3) the defendant warned the government as to any equipment-related hazards that were known by it but not by the government.  Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1988).  As Westinghouse's evidence satisfies each of these standards, this Court has subject matter jurisdiction and Plaintiffs' Motion to Remand must be denied.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

As to Westinghouse, Plaintiffs rely on two cases from the District of Massachusetts (Holdren v. Buffalo Pumps, 614 F. Supp. 2d 129 (D. Mass. 2009) and Hilbert v. McDonnell Douglas Corp., 529 F. Supp. 2d 187 (D. Mass. 2008)) to argue that a Navy equipment supplier can only remove asbestos-related warning-based claims under § 1442(a)(1) upon proof that it proposed an asbestos-related warning in relation to its equipment only to have that warning rejected by the Navy.  (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Remand, pp. 20-24).[2] As thus framed, Plaintiffs' Motion to Remand fails for two

---

[2] Plaintiffs also claim that this removal was untimely; more specifically, while acknowledging that the removal was affected within thirty days of the service of their complaint on the removing Defendants, they urge that the timeliness of the removal must be measured against those Defendants' purported pre-service "advance notice" of the removable nature of this suit.  (Plaintiffs' Memorandum of Law in Support of Motion to Remand, pp. 24-26).  Plaintiffs' assertion (devoid of supporting authority) that "a fair reading of 28 U.S.C. § 1446(b) supports advance notice as being the impetus from, which time [for removal] begins to run" (Id., p. 26) is, however, foreclosed by Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344 (1999) which, instead, holds that § 1446(b)'s thirty-day removal period cannot be triggered by a defendant's pre-service notice of the removable nature of the plaintiff's claims.  In short, "[t]he 30 day period [for removal] in no event begins to run prior to service of process on the defendant."  Badon v. RJR Nabisco, 224 F.3d 382, 390, n. 12 (5th Cir. 2000).  As such, the removal in this case was timely.

2

Case MDL No. 875   Document 5992-8   Filed 12/03/09   Page 55 of 145

separate reasons.

First, it is settled both: 1) that this Court's jurisdiction turns on Plaintiffs' allegations as they existed at the time of removal; and 2) that the presence of a single removable claim renders this entire case removable. In this regard, while Plaintiffs now characterize their complaint as stating only warning-based claims (Plaintiffs' Memorandum of Law in Support of Motion to Remand, pp. 20-24), that pleading plainly stated both warning-based and non-warning-related design-based claims against Westinghouse relative to Corley's alleged injury. In particular, Plaintiffs alleged, separate from any question of warnings, that: 1) Westinghouse was negligent in designing and manufacturing equipment that incorporated (or was designed for use with) asbestos; and 2) Westinghouse's equipment was rendered defective for strict liability purposes based on the mere use of asbestos. As such design-based claims fall squarely in the scope of § 1442(a)(1), this case was properly removed regardless of whether Plaintiffs' warning-based claims are independently removable.

Second, even viewing Plaintiffs' warning-based claims in isolation, the rigorous jurisdictional test they propose is incompatible with the law of this jurisdiction and the great weight of authority. Westinghouse has shown that the Navy established detailed standards and regulations regarding turbine-related warnings; that these standards and regulations precluded any additional warnings by Westinghouse without the Navy's prior approval; that the Navy carefully inspected and approved the warnings and other written materials furnished with Westinghouse's turbines; and that the Navy was, at all relevant times, aware of asbestos-related hazards. Such evidence brings even Plaintiffs' warning-based claims within § 1442(a)(1)'s jurisdictional scope.

## STATEMENT OF RELEVANT FACTS

Plaintiffs' May 7, 2009 Original Complaint alleged asbestos exposure due to: 1) Corley's work as a "boiler room technician" and "ship-wide maintenance worker" aboard various Navy ships between 1946 and 1973; 2) his shade tree auto mechanic work in Jefferson County, Alabama from 1973 until the 1990s; and 3) his operation of an HVAC repair business in Jefferson County, Alabama from 1973 until the 1990s. (Original Complaint, ¶ 1). As to Westinghouse, Plaintiffs alleged Corley's exposure to "[a]sbestos containing products, including but not limited to air compressors, pumps and valves." (Id., ¶ 5(6)). No indication was given as to whether the alleged Westinghouse-related exposure had occurred during Corley's Navy service or during his HVAC work. While Plaintiffs plainly asserted warning-based claims, they also alleged that (for strict liability purposes) Defendants' products were rendered defective and unreasonably dangerous by the mere use of asbestos in their construction. (Id., ¶ 11(g)). Similarly, they alleged that Defendants' use of asbestos in designing and manufacturing their products constituted negligence. (Id., ¶¶ 16(a) and 16(e)).[3]

Later, on or around August 8, 2009, Plaintiffs filed their Reponses to Defendants' Master Discovery Requests, alleging Corley's exposure to asbestos-containing Westinghouse products "including but not limited to" "air compressors, pumps and valves,

---

[3] While Plaintiffs filed a First Amended Complaint on June 24, 2009, the sole purpose of that amendment was to change the capacity in which Carrier Corporation had been sued; the First Amended Complaint did not further specify the site of any Westinghouse-specific exposure (First Amended Complaint, ¶ 5(6)), nor did it abandon the claim that Defendants' mere use of asbestos provided a basis for both strict liability and a finding of negligence (Id., ¶¶ 11(g), 16(a) and 16(e)). Similarly, while Plaintiffs filed a Second Amended Complaint on July 24, 2009, the sole purpose of that amendment was to add Garlock Sealing Technologies, LLC ("Garlock') and Owens-Illinois, Inc. ("Owens-Illinois") as Defendants. The substance of Plaintiffs' allegations remained unchanged. (Second Amended Complaint, ¶¶ 5(6), 11(g), 16(a) and 16(e)).

wire, turbines, controls, switchgear, electrical panels, seals, packing and insulation" and stating that such Westinghouse-specific exposures were alleged in "Jefferson County, Alabama and the United States Navy at various ports and destinations between approximately 1946 and 2008." However, no indication was given as to which Westinghouse products had allegedly been encountered by Corley while serving in the Navy and which had allegedly been encountered during his later HVAC work.

Finally, beginning on August 25, 2009, Corley was deposed and alleged for the first time that he was exposed to Westinghouse Navy turbines and turbine generators aboard the *U.S.S. Cavalier*, the *U.S.S. Valley Forge* and the *U.S.S. Caloosahatchee*. (August 25, 26, 27 and 31, 2009 Discovery Deposition of Charles Corley, hereinafter "Corley Depo.," 125:14-20, 232:2-13, 292:16-293:10) (excerpts attached hereto as "Exhibit A").[4] This case was removed by Garlock and Owens-Illinois within thirty days of the date of that deposition testimony – i.e., on September 10, 2009.

Westinghouse has tendered herewith a declaration by James Gate ("Gate") (attached as "Exhibit B"). Using Westinghouse's turbine-generators aboard the *U.S.S. Cavalier* as a case study, Gate has testified that Westinghouse's Navy turbines were designed and manufactured in compliance with detailed Navy specifications – specifications which, during the relevant time period, required the use of asbestos. (Gate Decl., ¶¶ 5-28).[5] All aspects of turbine design (including the choice of materials used in

---

[4] Corley believed that he may also have worked around Westinghouse turbines and/or generators aboard the *U.S.S. Monterrey*. (Corley Depo., 189:2-14). There is no record, however, of any Westinghouse turbine or turbine-related equipment ever being installed aboard the *U.S.S. Monterrey*.

[5] The *U.S.S. Cavalier* was commissioned in January 1944. The *U.S.S. Caloosahatchee* was commissioned in October 1945. The *U.S.S. Valley Forge* was commissioned in November 1946.

their manufacture) were specified by the Navy; conformance to those specifications was enforced at Westinghouse's plant by Navy officers; and Westinghouse had no ability to deviate from those specifications without Navy approval. (Id., ¶¶ 6-7 and 10). Notably, such detailed Navy control was not limited to the design stage; rather, it extended throughout the turbines' manufacture, testing and acceptance. (Id., ¶¶ 15-27). In short, Westinghouse's Navy turbines were not "off-the-shelf" or "stock item" products; they were custom-designed to meet exacting Navy specifications, and were accepted as conforming to those specifications only after thorough testing. (Id., ¶¶ 12, 17-19, and 23-28).

Gate also described the Navy's control over the warnings and other written materials to be furnished with Westinghouse's turbines. As explained by Gate:

> Westinghouse and its employees ordinarily would have had no substantive contact with U.S. Navy sailors or Navy civilian employees who were assigned to work aboard vessels for which Westinghouse supplied equipment following the Navy's acceptance of such vessels. With regard to any contact between Westinghouse and Navy, Navy shipyard, or contract shipyard personnel during the initial construction of a Navy vessel, the Navy established and enforced precise chains of communication between Westinghouse and such personnel that Westinghouse was required to follow. Westinghouse was not authorized to discuss safety issues (or any substantive issues) with such personnel except with the prior express permission of the Navy.

> Regardless of whether a particular Navy vessel was constructed at a Navy shipyard or at a contract shipyard, the U.S. Navy had precise specifications as to the nature of any communication affixed to equipment supplied by Westinghouse to the Navy. Westinghouse would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to affix any type of warning or caution statement to equipment intended for installation onto a Navy vessel, beyond those required by the Navy, without prior discussion with, and approval by, the Navy.

> Similarly, regardless of whether a particular Navy vessel was constructed at a Navy shipyard or at a contract shipyard, the U.S. Navy had precise specifications as to the nature of written materials to be delivered

with its turbines, turbine generators and similar marine equipment which included engineering reference materials to assist the engineering staff to service and maintain the turbines, which could generically be called "instruction books" or "technical manuals." The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information in a standardized format used by the Navy. These manuals included safety information to the extent – and only to the extent – directed by the Navy.

Some naval equipment, such as main reduction turning gears, have warning or caution plates, which are in a standardized format and set by the Navy. Both under the specifications and regulations, and in practice, the Navy had ultimate control over the nature of the warnings communicated to Navy, Navy shipyard and/or contract shipyard personnel in relation to shipboard equipment and materials.

(Id., ¶¶ 29-32).

Westinghouse has also tendered excerpts from the deposition of Samuel A. Forman, M.D. ("Forman") in Dorse v. Armstrong World Indus., et al., Case No. 82-2308-CIV-JLE (S.D. Fla.) (attached as "Exhibit C"). At the Navy's request, Forman conducted an internal review of the Navy's historical occupational medicine and industrial hygiene records. (Forman Depo., pp. 10 and 50). Based on that review, Forman avers that the Navy knew of asbestos-related hazards no later than 1922 – well before either Corley's alleged exposure or the construction of the Navy ships at issue in this case. (Id., pp. 75-77).

## JURISDICTIONAL STANDARDS APPLICABLE TO § 1442(A)(1)-BASED REMOVALS

Plaintiffs urge that a presumption exists against removal so that any jurisdictional doubt must result in a remand. (Plaintiffs' Memorandum of Law in Support of Motion to Remand, pp. 5-6). That statement of law is incorrect, at least as to the basis for removal urged by Westinghouse. While most removals are, in fact, subject to rigorous jurisdictional

review with any doubts resolved in favor of a remand, a different paradigm applies to removals under § 1442(a)(1), whose jurisdictional scope "is much broader." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252-53 (9th Cir. 2006). In stark contrast to other removal statutes, § 1442(a)(1)'s parameters must be given a "generous" and "liberal" construction, and its terms interpreted "broadly in favor of removal." Id. See also, Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 398 (5th Cir. 1998) (in order that its unique public policy interests may be fully realized rather than frustrated, § 1442(a)(1) must not be constrained by a "grudgingly narrow interpretation"), cert. denied, 526 U.S. 1034 (1999); McMahon v. Presidential Airways, 410 F. Supp. 2d 1189, 1196 (M.D. Fla. 2006). The Supreme Court has, in fact, declared that § 1442(a)(1) must be broadly construed, rejecting the notion that the removal rights afforded thereby are "'narrow'" or "'limited'" Willingham v. Morgan, 395 U.S. 402, 406 (1969).

Additionally, the "well-pleaded complaint" rule simply does not apply in the context of federal officer removals as § 1442(a)(1) constitutes an exception to that general rule. Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n. 12 (2006); Mesa, 489 U.S. at 136-37 (noting that the entire purpose behind § 1442(a)(1) is to "overcome" the "well-pleaded" complaint rule); Durham, 445 F.3d at 1253; Lazuka v. F.D.I.C., 931 F.2d 1530, 1533-34 (11th Cir. 1991). Thus, regardless of Plaintiffs' subjective characterization of their own claims (or even their attempted disclaimer of removable claims), removal under § 1442(a)(1) is proper to the extent that Westinghouse has been sued for its conduct while "acting under" a federal officer and can state a colorable federal law-based defense to Plaintiffs' claims. See, e.g., Murphy v. General Electric Co., 2009 WL 2151192 at *5 (D. Conn. July 15, 2009); Carroll v. Buffalo Pumps, 2008 WL 4793725 at *2 (D. Conn. Oct. 27,

2008); <u>Redman v. A.W. Chesterton Co.</u>, 2008 WL 4447729 at *3 (N.D. Cal. Sept. 30, 2008); <u>Despres v. AMPCO-Pittsburgh Corp.</u>, 577 F. Supp. 2d 604, 607-08 (D. Conn. 2008); O'Connell v. Foster Wheeler Energy Corp., 544 F. Supp. 2d 51, 54 n.6 (D. Mass. 2008); <u>Marley v. Elliot Turbomachinery Co.</u>, 545 F. Supp. 2d 1266, 1274 (S.D. Fla. 2008); <u>Machnik v. Buffalo Pumps</u>, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007); <u>Ballenger v. AGCO Corp.</u>, 2007 WL 1813821 at *2 (N.D. Cal. June 22, 2007); <u>Anderson v. Avondale Indus.</u>, 1994 WL 679827 at *2 (E.D. La. Dec. 5, 1994). <u>Cf.</u>, <u>Jefferson Cty. v. Acker</u>, 527 U.S. 423, 430-31 (1999) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint."). Under such circumstances, and assuming all procedural requirements have been met, the defendant's right to removal is absolute. <u>Anderson</u>, <u>supra</u>.

Stated differently, "because federal officer jurisdiction is based on the defendants' defenses, not the plaintiffs' claims," a plaintiff's purported disclaimer of removable claims while asserting asbestos-related claims involving Navy equipment is wholly nonsensical. <u>Carroll</u>, 2008 WL 4793725 at *2. <u>See also</u>, <u>Murphy</u>, 2009 WL 2151192 at *5 ("plaintiffs' attempts to disclaim federal jurisdiction must fail because federal officer jurisdiction is based on the defendants' defenses, not the plaintiffs' claims"); <u>Marley</u>, 545 F. Supp. 2d at 1274 (invalidating a disclaimer of removable claims when coupled with claims arising from the defendant's supply of Navy equipment as an impermissibly "circular" attempt to deprive the defendant of its right under § 1442(a)(1) to have its government contractor defense tried in federal court) (<u>citing</u>, <u>Acker</u>, 527 U.S. at 432). Thus, as stressed in <u>Ballenger</u>:

> the fact that [a plaintiff's] complaint expressly disavows any federal claims is not determinative [of removal jurisdiction under § 1442(a)(1)]. Rather, removal is proper under the federal officer removal statute if the moving

party: (1) demonstrates that it acted under the direction of a federal officer; (2) raises a colorable federal defense to the plaintiff's claims; and (3) demonstrates a causal nexus between the plaintiff's claims and the defendants acts performed under color of federal office.

<u>Ballenger</u>, 2007 WL 1813821 at *2.

## ARGUMENT

I.    **This case was properly removed if either Plaintiffs' warning-based claims *or* their design-based claims satisfy the criteria of § 1442(a)(1).**

The propriety of a removal must be determined based on the jurisdictional facts at the time of removal. <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 116 n. 2 (2d Cir. 2003); <u>Gebbia v. Wal-Mart Stores</u>, 233 F.3d 880, 883 (5th Cir. 2000). Thus, this Court's jurisdiction turns on the nature of the claims asserted by Plaintiffs at the time of removal and is unaffected by any post-removal attempt to ignore or abandon any removable claims <u>Rockwell Int'l Corp. v. United States</u>, 549 U.S. 457, 474 n.6 (2007); <u>Vera</u>, <u>supra</u>; <u>Sparta Surgical Corp. v. National Ass'n of Secs. Dealers</u>, 159 F.3d 1209, 1213 (9th Cir. 1998); <u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 264 (5th Cir. 1995); <u>Carter v. ACandS, Inc.</u>, 2002 WL 31682352 at *4 (E.D. Tex. June 27, 2002); <u>Madden v. Able Supply Co.</u>, 205 F. Supp. 2d 695, 699 n.3 (S.D. Tex. 2002). In short, this Court "must assess the complaint as it stood when the removal petition was filed, not as [Plaintiffs] may now wish [they] had crafted it." <u>Magnin</u>, 91 F.3d at 1428. As set forth above, it is indisputable that Plaintiffs' Second Amended Complaint asserted both warning-based and non-warning-related design-based claims against Westinghouse – i.e., claims that, regardless of any warning, Westinghouse was negligent in having designed and manufactured equipment that included, or required the use of, asbestos and that such equipment was rendered defective

10

for purposes of strict liability due to the mere presence of asbestos. (Second Amended Complaint, ¶¶ 11(g), 16(a) and 16(e)).6

It is equally well-settled that, "if one claim cognizable under [§ 1442(a)(1)] is present, the entire action is removed, regardless of the relationship between the [§ 1442(a)(1)] claim and the non-removable claims." National Audubon Soc'y v. Department of Water & Power, 496 F. Supp. 499, 507 and 509 (E.D. Cal. 1980). See also, Nadler v. Mann, 951 F.2d 301, 306 n. 9 (11th Cir. 1992). In fact, few principles are more firmly established than that, where any aspect of a case falls within the jurisdiction of the federal courts, the entire case falls within such jurisdiction. Mayor v. Cooper, 73 U.S. 247, 252-53 (1867) ("[n]or is it any objection [to federal jurisdiction] that questions are involved which are not all of a Federal character. If one of the latter exist, *if there be a single such ingredient in the mass*, it is sufficient. *That element is decisive upon the subject of jurisdiction*".) (emphasis added) (cited with approval, Mesa, 489 U.S. at 129).

Thus, where both design and warning-based claims are asserted relative to a defendant's Navy equipment, the entire suit may be removed upon a showing that the design-based claims are subject to §1442(a)(1), regardless of the independent removability of the warning–based claims. See, e.g., Kluka v. Anco Insulations, 2008 WL 2444517 at

_____

[6] This distinguishes the cases relied on by Plaintiffs in support of their Motion to Remand – cases in which only warning-based claims were stated. Holdren, 614 F. Supp. 2d at 144; Hilbert, 529 F. Supp. 2d at 198, n.10. The remands in both Holdren and Hilbert, in fact, depended in large measure on the absence of design-based claims. See, Holdren, 614 F. Supp. 2d at 137 (noting that defendants in cases involving only warning-based claims "stand apart from military contractors sued for design defects"); Hilbert, 529 F. Supp. 2d at 197 (contrasting the case before it with situations in which non-warning-related design defect claims have been stated against military equipment suppliers, noting that such design-based claims provide "[t]he paradigmatic case" for application of the government contractor defense). Given this crucial distinction alone, the cases relied on by Plaintiffs have no bearing on the removability of this case – a case which *does* include such design-based claims. Nonetheless, and as discussed at length below, the conclusion reached by the Holdren/Hilbert court is wholly unpersuasive even as to the removability of warning-based claims brought against Navy equipment suppliers.

11

*4 and n. 10 (M.D. La. Apr. 28, 2008) (as the plaintiff's premises liability-based asbestos-related injury claims were removable, the entire case was properly removed and the court need not consider the removability of his warning-based claims); Contois v. Able Indus., 523 F. Supp. 2d 155, 164-65 (D. Conn. 2007) (as the complaint raised both warning and design-based asbestos-related claims against Navy equipment suppliers, a § 1442(a)(1) removal was proper "as long as [the defendants] have a military contractor defense to any of the plaintiff's claims"). In short, and as discussed below, as the Navy required the use of asbestos in (or in conjunction with) Westinghouse's Navy turbines, the removal of this entire case was proper based on Plaintiffs' design-based claims, regardless of whether their warning-based claims would also have been independently removable.

II.     **Plaintiffs' claims based on the mere use of asbestos in (or in conjunction with) Westinghouse's Navy turbines are removable under § 1442(a)(1).**

Plaintiffs' election to ignore their design-based claims rather than contest their removability is understandable. Consistent with the discussion above, the removal of this case was proper so long as Westinghouse: 1) was acting "under the color of state office" – i.e., acting under the direction of a federal officer – while committing the acts which allegedly injured Corley; and 2) can state at least a colorable federal law-based defense to Plaintiffs' claims. See, e.g., Magnin, 91 F.3d at 1427; Marley, 545 F. Supp. 2d at 1271. Where this test has been met:

> [a]llowing removal by a defendant who acted at the direction and behest of a government entity preserves the interests of federal law "by protecting those who carry out the directives of the federal government from the state court systems" and is fully consistent with the policy rationale of section 1442, which seeks the uniform application of federal law and the preservation of federal supremacy.

Mitchell v. AC&S, Inc., 2004 WL 3831228 at *4 (E.D. Va. Dec. 15, 2004) (cit. omitted).[7]

Each of these requirements has been satisfied as to Plaintiffs' design-based claims against

Westinghouse given the Navy's intensive and ongoing involvement in the design,

manufacture, testing and installation of Westinghouse's Navy turbines (and, in particular,

the Navy's requirement that asbestos be used in, or with, those turbines) and the Navy's

independent knowledge of asbestos-related health hazards.

> **A.   Westinghouse was acting under color of state office in its design and manufacture of its Navy turbines and a causal nexus exists between that conduct and Plaintiffs' claims.**

The concept of "color of state office" for purposes of § 1442(a)(1), while not

"unbounded," is neither "limited" nor "narrow" and should be "afforded a broad reading so

as not to frustrate the statute's underlying rationale." Winters, 149 F.3d at 398 (quoting,

Murray v. Murray, 621 F.2d 103, 107 (5th Cir. 1980)). See also, Isaacson v. Dow Chem.

Co., 517 F.3d 129, 136 (2d Cir. 2008); Hoste v. Shanty Creek Mgmt., 246 F. Supp. 2d 776,

781 (W.D. Mich. 2002) (the requirements of showing that a defendant's actions were taken

under "color of state office" and that the plaintiff's claims are subject to a colorable federal

law defense constitute "threshold showings only," they are "not difficult to establish" and

"the removing party need not win the case in order to have it removed").  In short, and as

---

[7] Westinghouse notes Plaintiffs' repeated suggestion that this removal was affected for purposes of delay. (Plaintiffs' Memorandum of Law in Support of Motion to Remand, pp. 2 and 3-5). While that charge is false, it is also immaterial.  Though it is axiomatic that "a defendant will remove only when it perceives removal to be an advantageous litigation strategy," "[r]emoval is a statutory right" and "[a]s long as defendant is within its rights to remove under the [relevant removal] statute, defendant's motives for removal are irrelevant in determining whether removal is proper."  Bryfogle v. Carvel Corp., 666 F. Supp. 730, 733 (E.D. Pa. 1987). See also, Harris v. Rapid Am. Corp., 532 F. Supp. 2d 1001, 1006 (N.D. Ill. 2007) (an allegation that a removal was motivated by a desire to delay through a transfer to MDL-875 is irrelevant to the question of removability under § 1442(a)(1)). Cf., Beamis v. Buffalo Pumps, Inc., 2009 WL 462543 at *3-4 (D.R.I. Feb. 23, 2009) (the purported "black hole" nature of MDL-875 provides no basis to abridge a right of removal if the Mesa test has been satisfied).  In short, the only proper jurisdictional question is whether the Mesa standards have been met, regardless of Defendants' subjective motivations in affecting this removal.

summarized by the Supreme Court as to the closely related "causal nexus" requirement, "[j]ust as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute . . . so would demanding an airtight case on the merits in order to show the required causal connection." Acker, 527 U.S. at 432-33.

At least as the concept is defined in the Eleventh Circuit, the requirement of proof of a causal nexus between the plaintiff's injury and the defendant's actions under color of state office is satisfied by evidence tending to show that the defendant's relationship to the plaintiff "derived solely from [its] official duties." Marley, 545 F. Supp. 2d at 1273 (quoting, Magnin, 91 F.3d at 1427). See also, Holton v. Blue Cross & Blue Shield, 56 F. Supp. 2d 1347, 1351 (M.D. Ala. 1999); Bagwell v. Brannum, 533 F. Supp. 362, 363 (N.D. Ga. 1982). Such a showing is had as to asbestos-related claims where the defendant offers proof that it supplied its asbestos-containing equipment under the direction and control of the Navy – i.e. evidence tending to reflect that "the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy." Marley, 545 F. Supp. 2d at 1274. Stated differently, while Mesa's "acting under" prong requires more than mere proof that the "'relevant acts occurred under the general auspices of' a federal officer," and instead requires proof of "direct and detailed" governmental control, this standard is plainly met where a plaintiff has alleged asbestos exposure due to the defendant's design and construction of military equipment and where the evidence reflects ongoing control and supervision over that design and construction work by federal officers. Fung v. Abex Corp., 816 F. Supp. 569, 572-73 (N.D. Cal. 1992) (quoting, Ryan v. Dow Chem. Co., 781 F. Supp. 934, 947 (E.D.N.Y. 1992)). See also, DeLancey v. General Elec., 2004 WL 3247173 at *2 (E.D. La. Mar. 31, 2004). Such a finding is particularly appropriate where (as

14

here) the federal officers monitored the defendant's performance on an ongoing basis and where the military equipment in question was "subject to inspection, test, and approval by the government." Fung, 816 F. Supp. at 572-73.

Given these well-settled standards, it is unsurprising that Gate's testimony as to the extent of the Navy's involvement in the design and manufacture of Westinghouse's Navy turbines has repeatedly been found sufficient to satisfy Mesa. See, e.g., Mitchell, 2004 WL 3831228 at *2; Carter, 2002 WL 31682352 at *4-5; Madden, 205 F. Supp. 2d at 700-01; Crocker v. Borden, Inc., 852 F. Supp. 1322, 1326 (E.D. La. 1994); Pack v. ACandS, Inc., 838 F. Supp. 1099, 1103 (D. Md. 1993) (quoting, Fung, 816 F. Supp. at 572). Cf., Nesbiet v. General Elec. Co., 399 F. Supp. 2d 205, 212-13 (S.D.N.Y. 2005) (reaching an identical conclusion based on similar evidence of Navy control as to turbines designed and manufactured by General Electric Company); Machnik v. Buffalo Pumps, 506 F. Supp. 2d 99, 103 (D. Conn. 2007) (same); Fink v. Todd Shipyards, 2004 WL 856734 at *3 (E.D. La. April 20, 2004) (same). A similar result is called for in this case.

Similarly, even viewing the related "causal nexus" requirement in isolation, where a plaintiff claims injury from exposure to an asbestos-containing product and a showing is made that the defendant's design and manufacture of that product was controlled by the government, the causal nexus required by § 1442(a)(1) has not simply been established – it is "axiomatic." Madden, 205 F. Supp. 2d at 701-02. See also, Pantalone v. Aurora Pump Co., 576 F. Supp. 2d 325, 330-31 (D. Conn. 2008); Mitchell, 2004 WL 3831228 at *5; Crocker, 852 F. Supp. at 1327. As Plaintiffs allege an asbestos-related injury due to Corley's contact with Westinghouse's Navy turbines, and as Westinghouse has shown that the Navy required the use of asbestos in (or with) that equipment, Mesa's "causal nexus"

aspect has also been satisfied as to Plaintiffs' design-based claims.

**B.    Westinghouse can state at least a colorable government contractor defense to Plaintiffs' non-warning-related design-based claims.**

As to the "colorable federal defense" prong of § 1442(a)(1)'s jurisdictional test, a defendant "need not prove the asserted [federal] defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." Winters, 149 F.3d at 400.  As explained in Willingham, 395 U.S. at 407, "one of the most important reasons for removal is to have the validity of the defense . . . tried in a federal court.  The officer need not win his case before he can have it removed."  Thus, an in-depth analysis of the merits of the invoked defense is inappropriate (as collateral to the issue of jurisdiction); whether the defendant will ultimately prevail on the defense is not the controlling jurisdictional question – the only proper inquiry for purposes of § 1442(a)(1) is whether the defendant has asserted a "colorable claim to the defense."  See, e.g., Isaacson, 517 F.3d at 138-39 ("[t]o be 'colorable,' the defense need not be 'clearly sustainable, as the purpose of the [federal officer removal] statute is to secure that the validity of the defense will be tried in federal court"); Magnin, 91 F.3d at 1427 (the asserted defense "need only be plausible; its ultimate validity is not to be determined at the time of removal"); McMahon, 410 F. Supp. 2d at 1197; Madden,  205 F. Supp. 2d at 701; Holton, 56 F. Supp. 2d at 1351; Crocker, 852 F. Supp. at 1326-27;  Pack, 838 F. Supp. at 1103;  Fung, 816 F. Supp. at 573.  Or, as stated in Marley, 545 F. Supp. 2d at 1271:

> a defense may be colorable even if the court ultimately rejects it.  Indeed no determination of fact is required at the removal stage.  All a removing defendant needs to do is to make a showing that his federal defense "is not without foundation and made in good faith."

(quoting, <u>Nesbiet</u>, 399 F. Supp. 2d at 211 n. 44 (cit. omitted)).  In sum, <u>Mesa</u>'s colorable

federal defense requirement must be liberally construed and must not be used to "frustrate

the policy of protecting federal officers by adopting a 'narrow, grudging interpretation of §

1442(a)(1).'" <u>Madden</u>, 205 F. Supp. 2d at 701 (quoting, <u>Willingham</u>, 395 U.S. at 407).  <u>See</u>

<u>also</u>, <u>Hoste</u>, 246 F. Supp. 2d at 781.

      In this case, Westinghouse has asserted a government contractor defense – a

defense that "generally immunizes government contractors from civil liability arising out of

the performance of federal procurement contracts."  <u>Bailey v. McDonnell Douglas Corp.</u>,

989 F.2d 794, 797 (5th Cir. 1993).  This defense rests on the recognition that military

equipment design is "assuredly a discretionary function" of the government and that this

critical governmental function (which entails a balancing of "technical, military, and even

social considerations, including specifically the trade-off between greater safety and

greater combat effectiveness") must not be subjected to "second-guessing" through suits

against the equipment's suppliers.  <u>Boyle</u>, 487 U.S. at 511.  Thus, a military equipment

supplier cannot be held liable for an alleged defect if: 1) the government developed or

approved "reasonably precise specifications" for the equipment; 2) the equipment

conformed to those specifications; and 3) "the supplier warned the United States about the

dangers in the use of the equipment that were known to the supplier but not to the United

States." <u>Id.</u>, at 512.  <u>See also</u>, <u>Glassco v. Miller Equip. Co.</u>, 966 F.2d 641, 642-43 (11th

Cir. 1992); <u>Harduvel v. General Dynamics Corp.</u>, 878 F.2d 1311, 1316 (11th Cir. 1989),

<u>cert. denied</u>, 494 U.S. 1030 (1990); <u>McMahon</u>, 410 F. Supp. 2d at 1197; <u>Dorse v. Eagle-</u>

<u>Picher Indus.</u>, 716 F. Supp. 589, 590 (S.D. Fla. 1989), <u>aff'd</u>, 898 F.2d 1487 (11th Cir.

1990).  While the defense "may sometimes seem harsh in its operation, it is a necessary

17

consequence of the incompatibility of modern products liability law and the exigencies of national defense." Harduvel, 878 F.2d at 1322.

1.    **The design and manufacture of Westinghouse's Navy turbines were governed by reasonably precise Navy specifications.**

Based on Gate's testimony as to the Navy's control over Westinghouse's design and manufacture of its Navy turbines (and, more specifically, the use of asbestos in or with such turbines), it is self-evident that Westinghouse can state at least a colorable government contractor defense to asbestos-related claims involving such equipment. Mitchell, 2004 WL 3831228 at *4; Madden, 205 F. Supp. 2d at 701; Carter, 2002 Wl 31682352 at *4; Crocker, 852 F. Supp. at 1327; Pack, 838 F. Supp. at 1103. Cf., Contois, 523 F. Supp. 2d at 160 (reaching the same conclusion as to claims involving Navy equipment supplied by Buffalo Pumps and General Electric). In this regard, the instant case is, in fact, analogous to Glassco, supra.

The Glassco defendant manufactured a lineman's belt for use by the Army. The plaintiff alleged that the belt was defective because it was made of leather rather than some other material, but the evidence reflected that the Army's specifications had required the use of leather. The Glassco court affirmed a summary judgment based on the government contractor defense, holding that a specification that a particular material be used in a product's design is a reasonably precise specification and that any assertion that state tort law was violated by the use of that material gives rise to precisely the type of "significant conflict" on which the government contractor defense rests. Glassco, 966 F.2d at 643.

The same conclusion is called for here. Stated simply, "significant conflict" has been

18

shown between the Navy's design specifications requiring the use of asbestos in conjunction with Westinghouse's Navy turbines and Plaintiffs' effort to impose tort-based liability on Westinghouse due to the presence of asbestos in or on its Navy turbines.

### 2. Westinghouse's turbines conformed to the Navy's specifications.

There is no dispute that Westinghouse's turbines conformed to the Navy's specifications. Rather, the fact that the Navy accepted Westinghouse's turbines after their design, manufacture and testing is evidence of such conformance. Miller v. Diamond Shamrock Co., 275 F.3d 414, 420 (5th Cir. 2001); Machnik, 506 F. Supp. 2d at 103-04. This is particularly true given Gate's testimony as to the deliberation with which the Navy inspected and tested those turbines. Smith v. Xerox Corp., 866 F.2d 135, 138-39 (5th Cir. 1989). See also, Kerstetter v. Pacific Scientific Co., 210 F.3d 431, 435-36 (5th Cir.) ("[e]xtensive government involvement in the design, review, development and testing of a product, as well as extensive acceptance and use of the product following production, is evidence that the product line generally conformed with the government-approved specifications"), cert. denied, 531 U.S. 919 (2000); In re Air Disaster at Ramstein Air Base, 81 F.3d 570, 575 (5th Cir.), cert. denied, 519 U.S. 1028 (1996); Kleeman v. McDonnell Douglas Corp., 890 F.2d 698, 702 (4th Cir. 1989), cert. denied, 495 U.S. 953 (1990) (where the evidence establishes the existence of an extensive and ongoing "back and forth" exchange between the government and the manufacturer/contractor as to product design, "the process itself becomes persuasive evidence of product conformity to precise specifications").

3.   **Westinghouse did not fail to warn the Navy of any unknown hazard associated with its turbines.**

Finally, as to the "warning prong" of the government contractor defense, "[t]he duty to warn [under Boyle] requires disclosure only when the supplier's knowledge of the danger or defect is superior to that of the government." Miller v. United Techs. Corp., 233 Conn. 732, 780, 660 A.2d 810 (Conn. 1995). Thus, even where a supplier did not warn the government as to the hazard alleged to have caused injury, Boyle's third prong is satisfied by proof *either*: 1) that the supplier was unaware of the hazard; *or* 2) that the government was otherwise aware of that hazard. Haltiwanger v. Unisys Corp., 949 F. Supp. 898, 904 (D.D.C. 1996). Thus, "[i]f the government was already independently aware of the risk and chose to act regardless of that knowledge," the supplier is excused of any duty to "warn" the government of this known hazard and can, instead, claim the protection of the government contractor defense. Haltiwinger, 949 F. Supp. at 904.

In this case, Westinghouse had no duty to warn the Navy of asbestos-related hazards of which it was already aware. See, e.g., Harris v. Rapid Am. Corp., 532 F. Supp. 2d 1001, 1006 (N.D. Ill. 2007) (evidence that the Navy has known of asbestos-related hazards from at least the 1940s excused any duty to warn on the part of equipment providers); Machnik, 506 F. Supp. 2d at 104 (the evidence established that the Navy had been aware of asbestos-related hazards since the 1920s and was, in fact, in a better position to understand those hazards than its equipment suppliers); Niemann v. McDonnell Douglas Corp., 721 F. Supp. 1019, 1028 (S.D. Ill. 1989). Thus, given the Navy's undisputed knowledge of asbestos-related hazards at all times relevant to this case, Westinghouse has satisfied each element of Mesa's "colorable federal defense" test.

20

In sum, Plaintiffs' design-based claims that Westinghouse's Navy turbines were defective because of the mere presence of asbestos and that Westinghouse was negligent in designing and manufacturing asbestos-containing turbines are plainly removable under § 1442(a)(1). Thus, and regardless of whether their warning-based claims would also have been independently removable, the removal of this entire case was proper. Magnin, 91 F.3d at 1428.

III.   **Even when viewed in isolation, Plaintiffs' warning-based claims were independently removable under § 1442(a)(1).**

Distilled to its essence, Plaintiffs' objection to this Court's exercise of jurisdiction over their warning-based claims is that Westinghouse cannot show that its alleged failure to warn was sufficiently attributable to Navy direction and control to satisfy Mesa because it cannot prove that it proposed an asbestos-related warning in conjunction with its turbines only to have the Navy specifically and expressly forbid that warning. While it appears that this was the conclusion reached by the Holdren/Hilbert court, the greater weight of authority counsels a different result.

A.   **The Navy exercised sufficient control over the warnings supplied with Westinghouse's turbines to bring Westinghouse's alleged failure to warn within the scope of its state office and to give rise to a causal nexus between that conduct and Corley's alleged injury.**

Plaintiffs are correct that there is no evidence of record that Westinghouse ever specifically proposed to the Navy that an asbestos-related warning be furnished with its turbines. The evidence is undisputed, however: 1) that the Navy created and enforced specifications which governed the communication of any warnings associated with Westinghouse's turbines; 2) that Westinghouse was precluded from supplementing or

altering the warnings or other written information supplied with its turbines without the Navy's prior express approval; 3) that the Navy was, at all relevant times, aware both of the asbestos content of Westinghouse's Navy turbines and of health hazards associated with asbestos; and 4) that the Navy carefully reviewed the warnings and other written materials provided by Westinghouse in conjunction with its turbines and, despite the absence of any asbestos-related warning, approved them as written. These undisputed facts are sufficient to satisfy the combined "color of state office" and "causal nexus" requirements relative to Plaintiffs' warning-based claims, at least as those requirements are interpreted and applied in the Eleventh Circuit.

As noted above, the Eleventh Circuit rule is that, for purposes of removal jurisdiction, a causal nexus has been shown between an alleged injury and the defendant's conduct under color of state office if the evidence tends to show that the defendant's relationship to the plaintiff "derived solely from [its] official duties." Marley, 545 F. Supp. 2d at 1273 (quoting, Magnin, 91 F.3d at 1427); Holton, 56 F. Supp. 2d at 1351; Bagwell, 533 F. Supp. at 363. In this case, any failure to warn relative to Westinghouse's Navy turbines necessarily occurred in the context of Westinghouse's performance of its duties as a military equipment supplier, making the question of whether such a purported failure is attributable to the Navy's direction and control – or rather to a "frolic" on Westinghouse's part – a factual question for a federal jury, not a jurisdictional issue for this Court.

That conclusion is simply bolstered by the undisputed evidence in this case that the Navy was directly involved in the communication of any warnings associated with Westinghouse's Navy turbines and retained the ultimate right to review and approve all such warnings. Under the majority interpretation of § 1442(a)(1), evidence tending to show

22

that the Navy "retained ultimate decision-making authority" and a right of "final approval" as to the warnings supplied with a particular item of equipment is sufficient to satisfy § 1442(a)(1)'s "acting under" and "causal nexus" prongs relative to asbestos-related warning-based claims even in the absence of evidence that the defendant equipment supplier proposed an asbestos-related warning to the Navy only to have the Navy expressly and specifically forbid that warning.  Pantalone, 576 F. Supp. 2d at 330-31.  See also, DeMatties v. Acmat Corp., 2008 WL 4735145 at *2 (D. Conn. Oct. 27, 2008); Redman, 2008 WL 4447729 at *5 (warning-related asbestos claims fall within the scope of § 1442(a)(1) upon evidence that no additional warning by the equipment supplier was possible without the Navy's authorization; a defendant is *not* required to establish that it proposed an asbestos-related warning which was rejected by the Navy in order to avail itself of federal officer removal jurisdiction); O'Connell, 544 F. Supp. 2d at 55 (where the evidence reflects that the government provided reasonably precise specifications regarding the defendant's communication of product-related warnings, that defendant "need not show that the government prohibited it from supplementing the [specified] warnings with warnings of its own"); Ballenger, 2007 WL 1813821 at *3 ("it would make no difference if [the defendant] had been able to issue more stringent asbestos warnings on its Navy [equipment]," as the "causal nexus" requirement was fully satisfied by the defendant's evidence that the Navy exercised ultimate authority as to the content of the warnings); Nesbiet, 399 F. Supp. 2d at 212-13.

In this case, Gate has testified that the Navy ultimately determined the nature and content of any warnings that were either attached to Westinghouse's Navy turbines or included in the technical manuals provided therewith.  He has also testified that

Westinghouse's communications with Navy personnel were tightly controlled, and that Westinghouse was not authorized to provide safety-related information to such persons above and beyond the warnings specifically authorized by the Navy. Such testimony is more than sufficient to satisfy Mesa. Thus, any lack of asbestos warnings relative to Westinghouse's turbines is properly attributable to the Navy, and a causal nexus exists between the Navy's dictates and Plaintiffs' warning-based claims for purposes of § 1442(a)(1). See, e.g., Madden, 205 F. Supp. 2d at 701-702 (Gate's testimony "demonstrates that warnings (if any) furnished by Westinghouse in connection with the turbines were made pursuant to Navy directives" and that "any warnings promulgated (or not promulgated) with respect to the turbines were governed by Navy guidelines," rendering proof of a causal nexus as to the plaintiff's failure to warn claim "axiomatic"); Carter, 2002 WL 31682352 at *4-5 (Mesa's "acting under" and "causal nexus" prongs were satisfied by Gate's testimony that "the U.S. Navy had ultimate control over warnings affixed to equipment on naval vessels, as well as written materials accompanying Westinghouse turbines used on board naval vessels").

**B.     Westinghouse's evidence as to the Navy's direct involvement in, and control over, the choice of warnings to be furnished with its Navy turbines gives rise to at least a colorable government contractor defense on Westinghouse's part as to Plaintiffs' warning-based claims.**

Plaintiffs' challenge to Westinghouse's ability to state a colorable federal defense to their warning-based claims is equally deficient. Unquestionably, the government contractor defense applies to warning-based as well as design-based claims if "there is evidence that the government was involved in the decision to give, or not to give, a warning." Kerstetter, 210 F.3d at 438 (quoting, In re Air Disaster at Ramstein Air Base, 81 F.3d at 575). See

24

also, Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003 (7th Cir. 1996), cert. denied, 520 U.S. 1116 (1997); Machnik, 506 F. Supp. 2d at 102-03; Miller, 233 Conn. at 782-83. Stated differently, "[i]n failure to warn cases, [the government contractor defense] means that the ultimate product users cannot sue the contractor for failure to warn if the government controlled which warnings the contractor was allowed to provide to those users, and thereby precluded the warnings at issue from being given." Densberger v. United Tech. Corp., 297 F.3d 66, 75 (2d Cir. 2002) (emphasis deleted), cert. denied, 537 U.S. 1147 (2003).[8]

The fact that a specific warning was not expressly precluded by the government's plans and specifications does not take a warning-based claim outside the scope of the government contractor defense if the government was involved in the decision of what warnings were to be supplied in conjunction with military equipment (and/or carefully reviewed and approved the warnings provided by the equipment's supplier) and was, itself, aware of the potential hazard. Kerstetter, 210 F.3d at 438. In short, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." Id. Thus, even absent evidence that the giving of a specific warning was considered by the government, Boyle is satisfied by a showing of the government's direct involvement in the

---

[8] The extension of the government contractor defense to warning-based claims flows naturally from Boyle, as the choice of equipment-related warnings presents just as much a matter of governmental discretion as the choice of equipment design. See, e.g., Jurzec v. American Motors Corp., 856 F.2d 1116, 1118-19 (8th Cir. 1988); Myslakowski v. United States, 806 F.2d 94, 97-98 (6th Cir. 1986), cert. denied, 480 U.S. 948 (1987). This is particularly true as to the Navy's decision to build ships incorporating large amounts of asbestos while failing to fully inform sailors and shipyard workers of known health risks – a course of conduct that has been labeled a prototypical "discretionary function" of the government that was consistent "both with the policy of building ships rapidly and the existing standard of design." Gordon v. Lykes Bros. Steamship Co., 835 F.2d 96, 100 (5th Cir.), cert. denied, 488 U.S. 825 (1988). See also, Sea-Land Serv. v. U.S.A., 919 F.2d 888, 891-93 (3d Cir. 1990), cert. denied, 500 U.S. 941 (1991); In re Joint E. and S. Dist. Asbestos Litig., 891 F.2d 31, 36-38 (2d Cir. 1989).

choice of equipment-related warnings generally. Tate v. Boeing Helicopters, 140 F.3d 654, 658 (6th Cir. 1998).  As stated by the Tate court:

> In the failure to warn context, discretion occurs where the government is both knowledgeable and concerned about the contents of the proposed warnings before granting its approval [of the equipment].  **The government is sufficiently knowledgeable when it has a complete enough understanding of the proposed warnings to reasonably recognize which hazards have been thoroughly addressed and which have not. . . Where government knowledge and concern are exhibited through the review process, it may be fairly said that the government has decided which warnings should and should not be provided to end users.**

Id.  (emphasis added).   Stated differently, for purposes of the government contractor defense:

> Government **discretion** is required, not dictation or prohibition of warnings. Where a contractor proposes warnings that the government substantively approves, and satisfies the second and third conditions [of the Boyle analysis], the [government contractor] defense displaces state [warning-related tort] law – **even if the government did not "prohibit" the contractor from proposing more alarming warnings**.

Tate v. Boeing Helicopters, 55 F.3d 1150, 1157 (6th Cir. 1995) (emphasis added).  See also, Nicholson v. United Techs. Corp., 697 F. Supp. 598, 603-04 (D. Conn. 1988).  These principles are particularly applicable where a military equipment supplier is precluded from making changes to a technical manual (or other potential source of warnings) absent the government's express approval.  See, e.g., Ferguson v. Lorillard Tobacco Co., 475 F. Supp. 2d 725, 730 (N.D. Ohio 2007); Yeroshefsky v. Unisys Corp., 962 F. Supp. 710, 721 (D. Md. 1997); Haltiwanger, 949 F. Supp. at 906-07; In re Aircraft Crash Litig. Frederick, Md., May 6, 1981, 752 F. Supp. 1326, 1366-67 (S.D. Ohio 1990), aff'd without op., 935 F.2d 269 (6th Cir. 1991).  See also, Miller, 233 Conn. at 784 (Boyle's "reasonably precise specifications" test is satisfied where the government specified the contents of a product's

26

technical manuals, reviewed the manuals to ensure compliance with the specifications, and thereafter "had to approve any subsequent revisions to the manuals").

Thus, in the specific context of a warning-based asbestos-related injury claim brought against a Navy equipment supplier, the Navy need not have expressly forbade an asbestos-related warning in order for the government contractor defense to apply, at least for jurisdictional purposes; rather, "the crux of the issue is whether the government provided any instruction or specification as to any warnings or labels that the federal contractor could put on its product." McAboy v. IMO Indus., 2005 WL 2898047 at *4 (W.D. Wash. Oct. 27, 2005). See also, DeMatties, 2008 WL 4735145 at *2 (a defendant removing an asbestos-related claim under § 1442(a)(1) need not show that the Navy explicitly and specifically forbade an asbestos-related warning in order to state a colorable government contractor defense to a warning-based claim). As such, and given Westinghouse's evidence that the Navy directly participated in the decision of which warnings were to be furnished with Westinghouse's Navy turbines, specifically reviewed and approved all warnings and written materials related to those turbines and forbid Westinghouse from supplementing or altering the authorized warnings without the Navy's prior express approval, Westinghouse has stated at least a colorable government contractor defense to Plaintiffs' warning-based claims – even when those claims are viewed in isolation from their clearly removable design-based claims.[9]

---

[9] It is this very evidence which distinguishes the instant case from Dorse, in which the defendant acknowledged that its ability to unilaterally communicate warnings in conjunction with its insulation was **not** limited or impeded in any way by the Navy. See, Dorse, 898 F.2d at 1489-90.

## CONCLUSION

Given the Navy's affirmative and specific dictate that asbestos be used in and with Westinghouse's Navy turbines, Plaintiffs' design-based claims arising solely from the presence of asbestos in or on those turbines falls squarely within the scope of § 1442(a)(1), affording Westinghouse an absolute right to defend this suit in federal court regardless of the independent removability of Plaintiffs' warning-based claims. In any event, and as set forth herein, Westinghouse has submitted sufficient evidence to demonstrate, at least for jurisdictional purposes, that Plaintiffs' warning claims also fall within § 1442(a)(1)'s liberal and expansive scope. Accordingly, the removal of this case was proper and Plaintiff' Motion to Remand must be denied.

RESPECTFULLY SUBMITTED, this 9th day of October, 2009.

> s/James A. Harris, III
> James A. Harris, III
> **Attorney Code: Har141**
> Nicole M. Hardee
> **Attorney Code: MAP006**
> 2501 20th Place South, Suite 450
> Birmingham, Alabama 35223
> FAX: (205) 871-0029
> TEL: (205) 871-5777
> Email: jamey@harris-harris.com
> Email: nicole@harris-harris.com

OF COUNSEL:

HARRIS & HARRIS, LLP

> Attorneys for Defendant
> CBS Corporation, a Delaware
> corporation, f/k/a Viacom, Inc.,
> successor by merger to CBS
> Corporation, a Pennsylvania
> corporation, f/k/a Westinghouse Electric
> Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2009 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

s/James A. Harris, III
OF COUNSEL

FILED
2009 Oct-09 PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## FREEDOM COURT REPORTING

Page 1

1                IN THE CIRCUIT COURT OF

2                JEFFERSON COUNTY, ALABAMA

3

4    CIVIL ACTION NUMBER: 1-CV-09-901544.00

5    CHARLES CORLEY and MYRA CORLEY,

6         Plaintiffs,

7              vs.

8    LONG-LEWIS, INC., et al.,

9         Defendants.

10

11          S T I P U L A T I O N

12          IT IS STIPULATED AND AGREED by and

13   between the parties through their respective

14   counsel that the video deposition of CHARLES

15   CORLEY may be taken before Mickey L. Turner, Court

16   Reporter and Notary Public, at Embassy Suites,

17   2300 Woodcrest Place, Birmingham, Alabama 35209,

18   on August 25, 26, 27 and August 31, 2009.

19          IT IS FURTHER STIPULATED AND

20   AGREED that the signature to and the reading of

21   the deposition by the witness is waived, the

22   deposition to have the same force and effect as if

23   full compliance had been had with all laws and

### 367 VALLEY AVENUE
(205) 397-2397  BIRMINGHAM, ALABAMA 35209  877-373-3660
EXHIBIT "A"

## FREEDOM COURT REPORTING

Page 125

```
1    seen.  I thought it was great.  I had no idea --
2    we had no idea there was any harm in it.  If
3    somebody had told us that asbestos was harmful,
4    then we would have took precautions probably, but
5    we had no idea there was any harm in it.  I didn't
6    know I was exposing myself to this type of stuff.
7    Q.    Did you ever see anything on the box other
8    than the word Kaylo?
9    A.    Size.
10   Q.    What size?
11   A.    Well, they had one inch or had some one
12   inch.  They were on little short boxes, two to
13   four foot boxes were -- up to six inches.
14   Q.    Any other products that you can recall or
15   equipment or machinery on the USS Cavalier during
16   the time frame you served?
17   A.    What about the generator?
18   Q.    All right.  What's the name brand or
19   manufacturer of the generator?
20   A.    Westinghouse.
21   Q.    Any other equipment, machinery or products
22   you worked with or around on the USS Cavalier
23   other than the ones you have identified?
```

# FREEDOM COURT REPORTING

Page 232

1   A.      No, I don't.

2   Q.      Do you know the name brand or manufacturer

3   of the generator on the Valley Forge?

4   A.      Uh, I would say Westinghouse.

5   Q.      You say "I would say."  Do you know whether

6   or not it was?

7   A.      I'm not absolutely positive.  But it was a

8   Westinghouse on a General Electric.  I believe it

9   was a Westinghouse, because I'm trying to picture

10  in my mind where it sat and everything.  And I

11  really -- there was never anything done to it

12  except the routine maintenance on a generator, and

13  so I never paid much attention to it.

14  Q.      What about the boiler, do you know the name

15  brand or manufacturer of the boiler?

16  A.      They were Foster Wheeler's.

17  Q.      How many boilers were there?

18  A.      Four, two in each space.

19  Q.      What about the blowers?  Do you know the

20  brand name or manufacturer of the blowers?

21  A.      No, I don't.

22  Q.      Were there any other pumps that were

23  located in the fire room number two on the Valley

## FREEDOM COURT REPORTING

Page 292

1    exactly what the status was at any time and he

2    could start putting pressure, but it was -- it was

3    a frustrating job.

4         MR. LITTLE:  I have been shown a note that

5    we just have a few more minutes left on the tape,

6    so we are going to take a break, sir.

7         THE WITNESS:  Yes, sir.

8         MR. KEAHEY:  Let's take a ten-minute break,

9    please.

10        VIDEO TECHNICIAN:  This ends videotape

11   number one.  We are off the record at 10:25 A.M.

12           (Whereupon, a recess was taken.)

13        VIDEO TECHNICIAN:  Stand by.  This begins

14   videotape number two.  We are back on the record

15   at 10:38 A.M.

16   Q.   Mr. Corley, when you were serving on the

17   USS Caloosahatchee, you told us that, I guess from

18   July of '65 until up to the last year, you were on

19   the ship and then the last year, I assume, from

20   1968 through 1969, you were at the Key Shipyard in

21   Baltimore, Maryland; is that right?

22   A.   Yes, in office space there.

23   Q.   While serving on the ship as the chief

### 367 VALLEY AVENUE
### (205) 397-2397  BIRMINGHAM, ALABAMA 35209  877-373-3660

## FREEDOM COURT REPORTING

Page 293

```
1    engineering, engineering officer, can you identify
2    any particular types of equipment, machinery,
3    insulation products or materials that you believe
4    may have contained asbestos that you worked with
5    or around?
6    A.    It's strange, but I can't remember the
7    boilers.  I'm sorry, but I don't remember any of
8    the names of the units except we had a General
9    Electric main engine and turbine.  We had
10   Westinghouse generators.
11   Q.    Any other name brands or manufacturers of
12   equipment, machinery, products, insulation
13   materials, those types of things that you can
14   identify on the Caloosahatchee?
15   A.    Well, uh, I can't recall them right now.
16   Q.    When you worked at the Key Shipyard in the
17   office for that last year, '68 through December of
18   '69, do you believe you had any exposure to any
19   type of asbestos materials, equipment, machinery
20   or products?
21   A.    No, I did not.
22   Q.    When did you -- or where did you go when
23   you completed your service on the Caloosahatchee
```

STATE OF CALIFORNIA )
) SS
COUNTY OF SANTA CLARA )

## AFFIDAVIT OF JAMES M. GATE
## IN SUPPORT OF NOTICE OF REMOVAL OF CIVIL ACTION
## BY VIACOM, INC., SUCCESSOR TO WESTINGHOUSE ELECTRIC CORPORATION

I, James M. Gate, being under penalty of perjury, declare and say:

1.      I am the former manager of Design Verification of the Marine Division of Westinghouse Electric Corporation ("Westinghouse"), located in Sunnyvale, California.

2.      I joined Westinghouse in 1953, immediately after receiving a Bachelor of Science degree in Marine Engineering from the United States Merchant Marine Academy at King's Point, New York. Except for the period of 1971 to 1976, I was involved in marine engineering during my entire career at Westinghouse, and during that time was stationed principally at Westinghouse's Marine Division, initially in Lester, Pennsylvania, until operations were moved to Sunnyvale, California. My work involved both United States Navy and Merchant Marine vessels. I retired from Westinghouse in December, 1994.

2.      I submit this affidavit to attest to the level of supervision and control by the United States Navy ("U.S. Navy" or "Navy") and its officers, such as the Inspector of Naval Machinery ("INM"), over the design and manufacture by Westinghouse of equipment intended for installation on U.S. Navy vessels, particularly propulsion turbines and turbine-generator sets and related equipment (hereinafter "turbines"), and specifically concerning the USS Cavalier (APA-37).

4.      I am personally familiar generally with the extent of the U.S. Navy control over the production of turbines built by Westinghouse for the U.S. Navy vessels because I participated in the design, manufacture, testing, and sea trials of these turbines, and personally interacted with the Navy's machinery inspectors, officers such as Capt. A. L. Rosenstein and Capt. O. Earle, Chief INMs formerly stationed at Westinghouse's Lester, Pennsylvania plant. As test engineer at Westinghouse's Lester plant, I also interfaced with Navy Inspector James Moodie. At the Navy Bureau of Ships ("BuShips") and its successor, Naval Sea Systems Command ("NAVSEA") (hereinafter referred to collectively as "NAVSEA"), I would meet with the Head of the Navy's Steam Turbine Branch, Turbine & Gear Desk, Howard Ball, to discuss the Navy's requirements for turbines to be built by Westinghouse. Under the authority of the Turbine & Gear Desk were the Navy's Main Turbine Section and Auxiliary Turbine Section. Other Westinghouse personnel and I worked under the direction of Walter Sharp in the Main Turbine Section. We also worked under the direction of Robert Trout in the Navy's Auxiliary Turbine Section, a division of the

Page 1 of 7

EXHIBIT "B"

Turbine & Gear Desk until 1982, when it was folded into the Main Turbine Section. Mr. Trout wrote the Navy's turbine generator and auxiliary steam turbine specifications for several Navy vessels.

5.     Westinghouse made and supplied turbines for U.S. Navy ships under contracts between Westinghouse and the shipyards and/or the United States of America, specifically the Navy Department, which administered the contract through NAVSEA, which acted under authority of the Secretary of the Navy. NAVSEA personnel exclusively developed ship designs and plans, as well as comprehensive and detailed regulations and specifications for all shipboard equipment, and its officers supervised, enforced, and approved the vendor's compliance with the plans, regulations and specifications.  Changes to the plans and specifications could only be authorized by the Navy through one of its officers. Westinghouse's production of turbines for Navy vessels was immediately supervised by the INM, a naval officer subordinate to various levels of command within NAVSEA.  The INM, who worked on-site at Westinghouse's Marine Division plants in Lester, Pennsylvania and Sunnyvale, California, exercised immediate, direct and detailed control over all aspects of Westinghouse's production of turbines for Navy vessels. The INM observed the manufacturing process, and enforced compliance with design specifications.

6.     I have reviewed the records for the turbines manufactured and supplied by Westinghouse in connection with the Navy vessels at issue in this action, namely the USS Cavalier (APA-37), and based upon my review of these records, I have verified that the turbines were manufactured and supplied by Westinghouse for these vessels under the strict direction and control of the officers of the U.S. Navy.

7.     Westinghouse's records concerning the USS Cavalier (APA-37) include military specifications incorporated by the NAVSEA specifications and Westinghouse's approved drawings to build turbines as specified.  Westinghouse sold turbine generators for installation aboard the USS Cavalier (APA-37).

8.     With respect to the turbines supplied by Westinghouse for use aboard the USS Cavalier (APA-37), all aspects of the design, performance requirements, and materials used for construction, including thermal insulation, were specified by NAVSEA, which acted under authority of the Secretary of the Navy. Compliance with the specifications, which could not be changed without direct approval of Auxiliary Turbine Section personnel was directly enforced at Westinghouse's plant by the INM, although the Turbine & Gear Desk officials ultimately controlled these details.

9.     In the case of the USS Cavalier (APA-37), NAVSEA specifications incorporated military specifications, and these documents require use of asbestos-containing thermal insulation for the turbines. Having reviewed the contract documents relative to this ship, I can attest that Westinghouse did not supply the thermal insulation.  On the contrary, the Navy provided the thermal insulation to be used with these Westinghouse turbines.

Page 2 of 7

10.     Westinghouse, during all aspects of its turbine work (i.e., design, manufacture, testing and sea trials) for U.S. Navy vessels, including the USS Cavalier (APA-37), performed its work under immediate supervision by the Navy through NAVSEA officers.  This supervision and control was exercised through contract documents, design and construction drawings, written specifications, and personal oversight of Westinghouse's work by ship design engineers and machinery specialists employed by the Navy. The chain of Navy authority between Westinghouse and the Secretary of Navy was multi-tiered and staffed by officers of varying levels of responsibility, and virtually no aspect of the development, manufacture, and testing of naval turbines escaped this close control.

11.     Before the construction of a U.S. Navy vessel, including the USS Cavalier (APA-37), there was an extensive set of General Specifications for ships of the United States Navy as well as U.S. Navy specifications, or military specifications known as MilSpecs, already in place which governed all aspects of ship construction.  The MilSpecs totaled tens of thousands of pages and governed all aspects of a vessel's design and construction and specified the materials to be used, including asbestos-containing thermal insulation.

12.     The U.S. Navy specifications for the Westinghouse turbines manufactured for the USS Cavalier (APA-37) incorporated several lower-level specifications, including those governing the components or materials used for or with the turbines, such items as metals, bearings, packings, gaskets, insulation, etc. Some of these specifications required the use of asbestos-containing materials, such as thermal insulation for turbines.

13.     The turbines manufactured and supplied by Westinghouse for any U.S. Navy vessel, including the referenced ships, had to meet detailed and precise U.S. Navy specifications. Additionally, each turbine was specifically designed for the vessel or class of vessels in question. In other words, the turbines for a vessel or class were not interchangeable, but instead, were custom built, i.e, they were not "off the shelf" products.

14.     NAVSEA developed the initial conceptual design for all classes of naval vessels. By the time an outside design consultant began to participate in the design phase of a new turbine, such as the turbines and related equipment for the USS Cavalier (APA-37), the U.S. Navy had specified at least the weight, size, power output, speed, and other design parameters of the turbine.

15.     In the design phase of the turbine project, as in all other phases, the U.S. Navy retained ultimate decision authority over the design of the turbines. If an engineering disagreement arose between the Navy and the outside design consultant, the Navy controlled the design adopted. All final design drawings and specifications required express U.S. Navy approval and adoption.

16.     Following the Navy's acceptance of a quotation for manufacture of the prototype turbine, the prototype vendor would begin tooling and construction under continuing U.S. Navy supervision and oversight.  During manufacture of a turbine at sites such as Westinghouse's

Page 3 of 7

former Lester, Pennsylvania facility, the Navy had an on-site INM. In the 1950s and 1960s, the INM was typically a Naval Captain (the rank immediately below Admiral). Captains Rosenstein and Earle noted above, are examples. In later years, the INM was typically a Commander (the rank immediately below Captain). The INM was on-site full time in a separate set of offices called the Defense Contract Management Office. Later, after Westinghouse transferred its turbine manufacturing operations to its plant in Sunnyvale, California, the INM worked on-site in Sunnyvale. Frequently, Westinghouse engineers such as myself dealt directly with the Navy's Main Turbine and Auxiliary Turbine sections in Washington, D.C. A number of U.S. Navy civilian employees, including inspectors and engineers, supported the INM on site. At the Lester facility, for example, the INM's staff would typically include more than ten full-time civilian U.S. Navy inspectors and several mechanical engineers. One of the individuals who supervised Westinghouse's work was James Moodie, noted above. All members of the INM staff were Navy employees and had access to all areas of the production facility at all times.

17. During the construction of the prototype turbine, all drawing approvals and any report of out-of-tolerance machining were submitted to, and approved by, the INM or by the mechanical engineers working under him.

18. Many steps of the production process required in-process testing. For example, all welds were tested. All weld testing reports were reviewed and approved by the INM on site. The INM also approved the procedures used to test welds. Similarly, other test results (e.g. balance testing, vibration testing, tolerance measurements, machine variations and the like) were reviewed and approved by the INM. Any reports which resulted in the replacement of a component part were also sent to NAVSEA, the Department of the Navy in Washington, D.C., for its review and approval.

19. Before shipment, the turbine typically was tested at the site of manufacture. A detailed test agenda for on-site testing was approved by the U.S. Navy. The agenda included tests for power output at various levels of steam pressure, vibration and noise tests, bearing temperature tests and the like. The test agenda was then conducted on the turbine. The performance of the test agenda was closely monitored by the INM and all test results were submitted to him. The manufacturer then prepared a final report on the prototype turbine, including all test reports. This final report then was submitted for approval by the on-site INM. Following INM approval, the final report was forwarded to NAVSEA in Washington, D.C., where further approval was required before the manufacturer could ship the turbine.

20. Following the completion of the test agenda, the turbine was typically fully disassembled and inspected. This disassembly and inspection was carried on in the personal presence of the on-site INM. One or more of the INM's mechanical engineers would also attend the disassembly inspection. Any abnormalities discovered at this point would lead to rejection of the turbine or to modifications and re-testing. A report of each tear down was prepared and was then approved and signed by the INM.

21.     Paralleling the manufacture of the prototype, the U.S. Navy would prepare a Request for Quotation on the production models of the turbine, subject to any changes developed during the production and testing of the prototype turbine unit. The resulting quotations would then be subject to a similar review as that described above with respect to the prototype unit, including quotation review meetings. Approval of the quotation would eventually be given to one or more vendors. Often two or more vendors were selected to supply production units. In many instances, the manufacturer of the prototype unit would secure part or all of the contract work for the production units, but in some instances the manufacturer of the prototype would not be selected for the production contract.

22.     The manufacturing process for the production units then proceeded under the same level and intensity of U.S. Navy supervision as described above for the prototype unit. The INM, assisted by Navy civilian inspectors and mechanical engineers as described above, would oversee and approve virtually every aspect of the manufacture and testing of the turbine. As before, a test agenda for the production units was approved by the U.S. Navy and all reports from the tests were approved by the on-site INM. Following the completion of the test series, each individual turbine was fully torn down in the presence of mechanical engineers working for the INM. Any abnormalities were noted and resolved. A final report was prepared for each individual turbine, incorporating these test reports, and was approved both by the on-site INM, headed up by Captain Rosentein and by the Department of the Navy in Washington, D.C., Robert Trout. Re-assembly of each turbine was then approved by the U.S. Navy civilian inspections, headed up by James Moodie, prior to shipment.

23.     The first production unit was then shipped to the shipyard with construction responsibilities for the first vessel. The turbine was typically installed by shipyard personnel acting under supervision of engineers from the Supervisor of Shipbuilding, who was subordinate to the Commander of Naval Sea Systems. Typically, the involvement of the turbine vendor at this stage of the process (i.e., from delivery of the turbine to completion of the sea trials) was the presence on-site of an engineer acting in liaison and troubleshooting capacity.

24.     Once the turbine was installed, it was typically tested in place by the shipyard using an artificial load and under less than full power. This testing was reviewed and approved by U.S. Navy personnel at the shipyard. Any deficiencies discovered at this stage were required to be remedied by Westinghouse.

25.     Once the ship was launched and outfitted, sea trials followed. The first test was called the "builder's trial" and was conducted by the shipyard using its personnel with senior U.S. Navy personnel on board for observation and approval. Representatives from the major component vendors would also attend such trials. (I have participated personally on two occasions as the Westinghouse turbine representative on the builder's trial on the initial vessels of a new class.)

26.     Following successful completion of the builder's trials, the U.S. Navy would conduct its own sea trial, called an "acceptance trial." Acceptance trials were fully conducted

and staffed by U.S. Navy officers, civilian employees and crew, with shipyard and manufacturers' representatives along to observe. As before, any deficiencies discovered in the turbine during acceptance trials would be the responsibility of Westinghouse to correct.

27. Following the acceptance trials, the vessel was commissioned and would typically embark on a "shakedown cruise." During this cruise, the operation of all components of the vessel were further evaluated and tested under the widest possible range of operating conditions.

28. During the launching, outfitting, and sea trials of the first vessel in the new class, other vessels in the class may be under construction on a trailing schedule. Each and every vessel would go through essentially the same construction, inspection, testing, sea trials, and shakedown procedure as described above for the first vessel for the class.

29. All equipment, including the turbines supplied by Westinghouse for the USS Cavalier (APA-37), was built in accordance with the U.S. Navy specifications in existence at the time and was approved by the U.S. Navy.

30. Westinghouse and its employees ordinarily would have had no substantive contact with U.S. Navy sailors or Navy civilian employees who were assigned to work aboard vessels for which Westinghouse supplied equipment. The Navy established precise chains of communication between Westinghouse and Navy personnel that Westinghouse was required to follow. Westinghouse was not authorized to discuss safety issues (or any substantive issues) with Navy sailors or Navy civilian employees.

31. The U.S. Navy had precise specifications as to the nature of any communication affixed to machinery supplied by Westinghouse to the Navy. Westinghouse would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to affix any type of warning or caution statement to equipment intended for installation onto a naval vessel, beyond those required by the Navy, without prior discussion with and approval by the Navy.

32. The U.S. Navy had precise specifications as to the nature of written materials to be delivered with its turbines, which included engineering reference materials to assist the engineering staff to service and maintain the turbines, which could generically be called "instruction books" or "technical manuals." The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information in a standardized format used by the Navy. These manuals included safety information to the extent – and only to the extent – directed by the Navy.

33. Some naval equipment, such as main reduction turning gears, have warning or caution plates, which are in a standardized format and set by the Navy. Both under the specifications and regulations, and in practice, the Navy had ultimate control over the nature of the warnings communicated to naval personnel in relation to shipboard equipment and materials.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that if called as a witness, I could competently testify to the foregoing facts, all of which are within my own personal knowledge.

Executed this day ___29___ day of _September_, of 2009.

JAMES M. GATE

THE STATE OF CALIFORNIA     §
                            §
COUNTY OF SANTA CLARA       §

Personally appeared before me this ___29th___ day of ___SEPT.___, 2009, James M. Gate, who made oath that the statements contained in the affidavit above are true and correct to the best of his knowledge.

Subscribed and sworn to before me this ___29TH___ day of ___SEPT.___, 2009.

My Commission expires: ___08|20|2013___

Notary Public

State of CA
County of Santa Clara } ss.
JURAT
Subscribed & sworn before me on the 29 TH day of SEPT. 2009
By JAMES M. GATE
proved to me on the basis of
Satisfactory evidence to be the person who appeared before me
NOTARY PUBLIC



PAVNEET SINGH
COMM. # 1858741
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
COMM. EXPIRES AUG. 20, 2013

Page 7 of 7

*Forman*
*Discovery dep.*
*2948.002*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

- - -

JOSEPHINE DORSE, et al.,        :

            Plaintiffs,        :

    vs.                        :    CASE NO. 82-2308-CIV-JLK

ARMSTRONG WORLD INDUSTRIES,
INC., et al.,
                              :

            Defendants.        :

- - -

        Deposition of SAMUEL A. FORMAN, M.D., a witness

herein, taken by the plaintiffs as upon cross-examination

pursuant to the Federal Rules of Civil Procedure and

pursuant to agreement between counsel as to the time and

place, and stipulations hereinafter set forth, at the

offices of Ace Reporting Services, 216 East Ninth Street,

Cincinnati, Ohio, at 9:30 a.m. on Saturday, March 4, 1989,

before Karla Lester, RPR-CM, a notary public within and for

the State of Ohio.

- - -

**EXHIBIT "C"**

2

APPEARANCES:

2          On behalf of the plaintiffs:

3                Charles S. Siegel, Esq.
                      of
4                Baron & Budd, P.C.
                 8333 Douglas Avenue
5                10th Floor
                 Dallas, Texas 75225

6          On behalf of defendant, Eagle-Picher Industries,
7          Inc.:

8                Catherine R. Baumer, Esq.
                      of
9                Spriggs & Hollingsworth
                 1015 Fifteenth Street, N.W.
10               Washington, D.C.  20005-2686

11                          - - -

12              S T I P U L A T I O N S

13          It is stipulated by and between counsel for the

14    respective parties that the deposition of SAMUEL A. PORMAN,

15    M.D., a witness herein, may be taken at this time by the

16    plaintiffs as upon cross-examination and pursuant to the

17    Federal Rules of Civil Procedure, all other legal

18    formalities being waived by agreement; that the deposition

19    may be taken in stenotypy by the notary public-court

20    reporter and transcribed by her out of the presence of the

21    witness; that the transcribed deposition is to be submitted

22    to the witness for his examination and signature, and that

23    signature may be affixed out of the presence of the notary

24    public.

3

I N D E X

Witness                                    Cross-examination

SAMUEL A. FORMAN, M.D.

   by Mr. Siegel                                        4

- - -

1  those physicians and nurses.

2      We're also involved in survey work, which is really

3  an internal key element, we call it, but it's an internal

4  systematic survey on a two-year cycle of all our plant

5  medical units, so we stay apprised of their capabilities,

6  and the plant management is informed of what their people

7  are doing, and what they should be doing in some cases.

8      Q.    Now, Doctor, you're a medical doctor; is that

9  correct?

10      A.    Yes, I'm a physician, a medical doctor.

11      Q.    What disciplines are you Board certified in?

12      A.    I'm Board certified by the American Board of

13  Preventive Medicine in the subspecialty of occupational

14  medicine.

15      Q.    Okay.  Is that the only certification you have?

16      A.    Yes, it is.

17      Q.    Okay.  Have you -- do you have any plans to

18  become Board certified in any other area?

19      A.    No, I don't.  I do have some additional

20  certifications related to occupational medicine, and I think

21  the most important one is, I am a NIOSH "A-reader" for

22  occupational lung diseases, which is a brief certification.

23      Q.    "A-reader" as opposed to a "B-reader"?

24      A.    "A-reader" is one who has taken the American

50

1   Bath Iron Works?  Dreessen's study of asbestosis at the Bath
2   Iron Works from December 1944?
3          A.   Yes, that is the document.
4          Q.   All right.  You can continue with your answer
5   to the previous question.
6          A.   After a year and a half, that avocation became
7   official, and I was officially assigned to elucidate and
8   rediscover the history of occupational medicine and
9   industrial hygiene in the Navy.
10         Q.   When was that?
11         A.   It would have been the summer of 1985.
12         Q.   Okay.  So you were still at the Naval
13  Environmental Health Center?
14         A.   That's correct.
15         Q.   Your assignment changed to become sort of a
16  historian about the history of occupational medicine in the
17  Navy?
18         A.   No.  All my previous duties existed.  This was
19  added.
20         Q.   Okay.  Were you the only person who had such a
21  historical assignment?
22         A.   To my knowledge, yes --
23         Q.   Okay.
24         A.   -- definitely as to the medical department of

75

1    A.    Only hearsay, yes.

2    Q.    Okay.

3    A.    I don't believe they currently do, do they?

4    Q.    No.  Have you ever been approached to testify

5  by plaintiffs in asbestos litigation who have suffered

6  asbestos injury?

7    A.    No.

8    Q.    Okay.  And you are comfortable with your role

9  in testifying on behalf of the asbestos manufacturer, as it

10  evolves?

11   A.    I'm comfortable in the role of sharing my area

12  of expertise that I have, and to date, I've been comfortable

13  with the individuals who have contacted me and invited me to

14  testify.

15   O.    Okay.  Were you aware of the result in the

16  Johns-Manville case?

17   A.    I understand that it didn't come to a

18  conclusion.  It was determined on a technicality and was

19  thrown out, or somehow ruled in the government's favor, but

20  I don't know the technical reasons for that.  I don't know

21  that it was like a definitive precedent-setting thing, as

22  the government and Manville people were speaking of it prior

23  to the verdict.

24   Q.    Okay.  In your opinion, when did the Navy first

ACE REPORTING SERVICES

216 EAST NINTH STREET   CINCINNATI, OHIO 45202

76

1   learn of the hazards of asbestos?

2       A.   I would say the Navy would have learned of

3   asbestos hazards in the 1920s, according to my research, all

4   from written or published primary sources.

5       Q.   Well, what was the first instance of something

6   that makes you believe the Navy knew about asbestos hazards?

7       A.   For sure, a paper in the area of occupational

8   medicine and industrial hygiene published in the U.S. Naval

9   Medical Bulletin in 1922.  There may well have been prior

10  knowledge on the basis of a Public Health Service monograph

11  published during World War I on occupational diseases,

12  including asbestos lung disease.

13      I would infer that some Navy physicians were aware of

14  that publication.  The first Navy documentation I have is

15  their own publication from 1922, the Navy's own publication.

16      Q.   Now, what was contained in that publication?

17      A.   It was instructions to medical officers making

18  them aware of occupational hazards, in general, and specific

19  occupational diseases, exposures and trades involved in

20  them, and preventive measures for specific hazards.  It's a

21  very impressive document for its time.

22      Q.   In what regard was asbestos discussed?

23      A.   It was discussed under occupational dust

24  hazards, in the section related to that, along with other

Case 2:09-cv-00812-PGD   Document 5992   Filed 12/03/09   Page 101 of 145

77

1    ones, like silicosis.

2          Q.    What was asbestos said to cause?

3          A.    Asbestos was said to cause occupational lung

4    problems.  I don't believe they yet used the term

5    "asbestosis," per se, but they're referring to occupational

6    lung diseases that have all the signs and symptoms of

7    asbestosis.

8          Q.    Were there studies referred to in this paper,

9    or in this section regarding asbestos hazards, or was it

10   just a brief overview?

11         A.    This particular study takes it as a known fact,

12   and it doesn't justify itself.  They must have been aware of

13   previously published studies in Great Britain, dating back

14   to near the turn of the century.  But they take it as a

15   sufficiently well-known observation, as they don't need

16   separate justification.

17         Q.    Now, as a historian of naval knowledge, how do

18   you think -- or maybe it's reflected in this document.  How

19   do you think naval personnel became aware of this hazard?

20         A.    By "naval personnel," what do you mean?  Who do

21   you mean?

22         Q.    Well, when you say "they take it as an accepted

23   fact that asbestos causes occupational lung problems," how

24   would that have made itself known to the Navy?

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA – SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES CORLEY and MYRA CORLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 2:09-cv-1812 |
| | ) | |
| LONG-LEWIS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## CBS CORPORATION'S SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

COMES NOW CBS Corporation ("Westinghouse")[1], tendering this sur-reply in further opposition to Plaintiffs' remand motion and in response to the additional arguments stated in Plaintiffs' October 19, 2009 "Response to Defendant Westinghouse's Response to Plaintiffs' Motion to Remand." In that brief, Plaintiffs urge: 1) that their Second Amended Complaint states only warning-based claims against Westinghouse, rendering "moot" the question of whether design defect claims arising from the use of asbestos in or on Westinghouse's Navy turbines are removable under 28 U.S.C. § 1442(a)(1); and 2) that their warning-based claims are not removable, despite undisputed evidence of the Navy's ultimate authority over the warnings to be furnished with Westinghouse's Navy turbines, absent further evidence that Westinghouse affirmatively proposed an asbestos-related warning only to have that request rejected by the Navy. As set forth herein, neither of these arguments is persuasive in the instant case.

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom, Inc ) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

1

## Jurisdictional Standards Applicable to § 1442(a)(1)-Based Removals

Before turning to these arguments, Westinghouse notes that Plaintiffs continue to urge that this Court must strictly construe § 1442(a)(1), resolving any doubts in favor of a remand. (Plaintiffs' Reply Brief, p. 2). That contention is insupportable. Rather, as stressed in Westinghouse's prior brief, § 1442(a)(1) differs from other removal statutes in that it is to be liberally construed, with all doubts resolved *in favor of removal*. Willingham v. Morgan, 395 U.S. 402, 406 (1969); McMahon v. Presidential Airways, 410 F. Supp. 2d 1189, 1196 (M.D. Fla. 2006).

The essence of Plaintiffs' argument is that this standard is inapplicable to Westinghouse due to its status as a "private contractor." (Plaintiffs' Reply Brief, pp. 10-11). Importantly, however, and contrary to the *ipse dixit* pronouncements of a handful of district court judges (e.g., Freiberg v. Swinerton & Walberg Prop. Servs., 245 F. Supp. 2d 1144, 1150 (D. Colo. 2002)), such liberality extends to *all* § 1442(a)(1)-based removals, regardless of whether the defendant is a federal officer/employee or a private contractor acting under the direction and control of such a person. See, e.g., Prewett v. Goulds Pumps (IPG), 2009 WL 2959877 at *3 (W.D. Wash. Sept. 9, 2009); Campbell v. Brook Trout Coal, 2008 WL 4415078 at *6, n. 9 (S.D. W. Va. Sept. 25, 2008); Edgardo Salamante, et al. v. Quintec Indus., et al., CV 08-4674 PA, In Chambers – Court Order, p. 2, n.1 (JTLx) (C.D. Cal. Sept. 22, 2008) (slip opinion, attached as "Exhibit A"); Robert Reaser, et al. v. Allis Chambers Corp., et al., CV 08-1296-SVW (SSx), Order Denying Plaintiffs' Motion for Remand, pp. 3-5 (C.D. Cal. June 23, 2008) (slip opinion, attached as "Exhibit B"). Notably, this novel dichotomy of applying a stricter level of scrutiny to § 1442(a)(1)-based removals by private contractors has not been endorsed by any Circuit Court of Appeals; rather, those courts uniformly engage in the same liberal construction of § 1442(a)(1) regardless of whether the removing

2

defendant is a private contractor or a federal employee.  See, e.g., Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir. 2006); Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397-98 (5th Cir. 1998), cert. denied, 526 U.S. 1034 (1999).  In fact, the Eleventh Circuit Court of Appeals has stressed in a different context that the question of whether a removing defendant is a federal employee or a mere contractor of the federal government is immaterial to the § 1442(a)(1) jurisdictional analysis as that removal provision is equally available to federal officers and to private contractors acting under a the government's direction and control.  Allen v. Christenberry, 327 F.3d 1290, 1296 (11th Cir.), cert. denied, 540 U.S. 877 (2003).  Thus, to the extent this Court harbors any doubts regarding the propriety of removal, those doubts must be resolved in favor of retaining jurisdiction over this case.

## Argument

I.  **As Plaintiffs' claims arise from alleged asbestos exposure relative to equipment which contained asbestos only as directed by the Navy, those claims are subject to removal under § 1442(a)(1) regardless of any "artful pleading" by Plaintiffs – either before or after removal was had.**

Plaintiffs now contend that, while their Second Amended Complaint admittedly alleges non-warning-based design defect claims against other defendants, only "failure to warn" claims are stated against Westinghouse. (Plaintiffs' Reply Brief, pp. 4-7).  That characterization simply cannot be squared with the plain language of that pleading.

For example, in relation to their strict liability claim, Plaintiffs alleged that "*[t]he Defendants'* asbestos-containing products . . . were in a defective condition and were unreasonably dangerous" merely in that they emitted asbestos fibers in their ordinary and anticipated use – no distinction is drawn between Navy-related and non-Navy-related defendants, products or exposures. (Second Amended Complaint, ¶ 10(a)) (emphasis added).  It is in the context of this universal

3

charge of strict liability that Plaintiffs assert that the mere use of asbestos by "**the Defendants**" subjects them to liability.  (Id., ¶ 11(a) and (g)).

Similarly, as to their negligence claims, Plaintiffs plainly allege that "*[e]ach* of the Defendants" negligently breached certain duties, "includ[ing], without limitation" the purported duty of using some material other than asbestos in designing and manufacturing their products.  (Id., ¶ 16(a)) (emphasis added).  In short, both design defect and warning-based claims are asserted as to the entire universe of Defendants by Plaintiffs' Second Amended Complaint.

Plaintiffs' litigation strategy in this regard cannot now be undone by reliance on the boilerplate disclaimer of removable claims set forth in ¶ 6 of their Second Amended Complaint. First, as a factual matter, Plaintiffs' reply brief is, itself, schizophrenic in its position as to whether non-warning-based design defect claims involving Westinghouse's Navy turbines would fall within the scope of § 1442(a)(1) and, thus, at least theoretically, the scope of their disclaimer.  Initially, they seem to concede that any claim against Westinghouse based on the mere use of asbestos in or on its Navy turbines would fall within federal officer removal jurisdiction. (Plaintiffs' Reply Brief, pp. 4 and 6-7).  They then cite to Good v. Armstrong World Indus., 914 F. Supp. 1125 (E.D. Penn. 1996), however, for the proposition that even non-warning-based design defect claims involving Westinghouse's Navy turbines may not be amenable to removal under § 1442(a)(1), urging that, even in this regard, the evidence "does not show that Westinghouse was acting under the direction and detailed control of a federal officer." (Id., p. 15).  In short, even given a second bite at the apple via their reply brief, Plaintiffs remain equivocal as to whether a design defect claim based on the mere use of asbestos in or on Westinghouse's Navy turbines would be removable under § 1442(a)(1) and, thus, at least arguably subject to their disclaimer.

4

Such factual fuzziness only highlights the more intrinsic failure of Plaintiffs' reliance on their purported disclaimer of removable claims, at least as it relates to Westinghouse's removal rights under § 1442(a)(1). As stressed in Westinghouse's prior brief, the "well-pleaded complaint" rule simply does not apply to § 1442(a)(1)-based removals. Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n. 12 (2006); Mesa v. California, 489 U.S. 121, 136-37 (1989). Thus, the clear majority rule is that – regardless of the subjective spin Plaintiffs now place on their Second Amended Complaint, and despite their purported disclaimer of "federal officer"-related claims – Westinghouse is entitled to remove this suit if the evidence tends to show that Plaintiffs' claims arise from its conduct while "acting under" a federal officer and that it can state at least a colorable federal law-based defense to those claims. See, e.g., Murphy v. General Electric Co., 2009 WL 2151192 at *5 (D. Conn. July 15, 2009); Carroll v. Buffalo Pumps, 2008 WL 4793725 at *2 (D. Conn. Oct. 27, 2008); Redman v. A.W. Chesterton Co., 2008 WL 4447729 at *3 (N.D. Cal. Sept. 30, 2008); Salamante, supra, pp. 3-4; Despres v. AMPCO-Pittsburgh Corp., 577 F. Supp. 2d 604, 607-08 (D. Conn. 2008); O'Connell v. Foster Wheeler Energy Corp., 544 F. Supp. 2d 51, 54 n.6 (D. Mass. 2008); Reaser, supra, pp. 12-13; Marley v. Elliot Turbomachinery Co., 545 F. Supp. 2d 1266, 1274 (S.D. Fla. 2008); Robert Oberstar, et al. v. CBS Corp., et al., CV 08-118-PA (JWJx), 2008 U.S. District LEXIS 14023 at *8 (C.D. Cal.. Feb. 11, 2008) (slip opinion, attached as "Exhibit C"); Machnik v. Buffalo Pumps, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007); Ballenger v. AGCO Corp., 2007 WL 1813821 at *2 (N.D. Cal. June 22, 2007); Anderson v. Avondale Indus., 1994 WL 679827 at *2 (E.D. La. Dec. 5, 1994).

Properly understood, Plaintiffs' disclaimer simply seeks to shift the venue for assessing Westinghouse's removal rights under § 1442(a)(1) – i.e., by having the state court determine that issue under the guise of interpreting and applying Plaintiffs' boilerplate disclaimer, rather than this Court making such a determination as part of its jurisdictional analysis. If such an approach is allowed, Plaintiffs will have effectively eviscerated §1442(a)(1) and its underlying purposes. Marley, 545 F. Supp. 2d at 1274. See also, Reaser, supra (Exhibit B), pp. 12-14; Ballenger, 2007 WL 1813821 at *2. Westinghouse is afforded an absolute right under § 1442(a)(1) to have the removability of Plaintiffs' Second Amended Complaint determined by this Court; Plaintiffs are not allowed the luxury of asserting both design defect and warning-based claims and then invoking their vague disclaimer to rewrite their pleading as they "wish [they] had crafted it" – i.e., as asserting only warning-based claims. Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1428 (11th Cir. 1996). Rather, as Plaintiffs initially raised design defect claims against all Defendants including Westinghouse arising from their mere use of asbestos, and as such claims are removable under § 1442(a)(1)[2], this entire case has been properly removed.

Westinghouse further respectfully submits that – even **had** Plaintiffs carefully crafted their Second Amended Complaint to state only warning-based claims against Westinghouse – such artful pleading could not deprive this Court of jurisdiction or deny Westinghouse its removal rights as a "federal officer." Regardless of which theories of recovery Plaintiffs assert or disavow, their

---

[2] As alluded to above, Plaintiffs largely decline to contest the merits of removal relative to design defect claims, seemingly acknowledging that the Navy required the use of asbestos in or on Westinghouse's turbines. (Plaintiffs' Reply Brief, pp. 6-7). As stressed in Westinghouse's prior brief, the fact that it has been sued for use of a substance whose use was dictated by the Navy plainly gives rise to a colorable government contractor defense. Glassco v. Miller Equip. Co., 966 F.2d 641, 642-43 (11th Cir. 1992). Numerous courts have, in fact, held that Westinghouse is entitled to remove such claims under § 1442(a)(1). See, e.g., See, Mitchell v. AC&S, Inc., 2004 WL 3831228 (E.D. Va. Dec. 15, 2004); Madden v. Able Supply Co., 205 F. Supp. 2d 695 (S.D. Tex. 2002); Carter v. ACandS, Inc., 2002 WL 31682352 (E.D. Tex. 2002); Crocker v. Borden, Inc., 852 F. Supp. 1322 (E.D. La. 1994); Pack v. ACandS, Inc., 838 F. Supp. 1099 (D. Md. 1993).

6

complaint states a single cause of action – i.e., a cause of action for an indivisible asbestos-related injury allegedly caused (at least in part) by contact with Westinghouse's Navy turbines. As explained in <u>Baltimore S.S. Co. v. Phillips</u>, 274 U.S. 316, 321 (1927):

> A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. *The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action.* The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. *The thing, therefore, which in contemplation of law as its cause, becomes a ground for action, is not the group of facts alleged in the declaration, bill, or indictment, but the result of these in a legal wrong, the existence of which, if true, they conclusively evince.*

(internal quotations and cites omitted) (emphasis added).

Despite this well-settled distinction between a cause of action and a mere theory of recovery (as well as the common law's general distaste for "claim-splitting") the well-pleaded complaint rule can sometimes afford a plaintiff a means to avoid a removal through his own unilateral choice of the theory on which recovery is sought for his injury. Under that rule, the determination of whether a suit falls within the scope of federal question jurisdiction *for purposes of 28 U.S.C. §§ 1331 and 1441(a)* turns on the specific allegations made on the complaint's face. <u>See</u>, <u>Aetna Health v. Davila</u>, 542 U.S. 200, 207 (2004). In short, the well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987) (fn. omitted). As noted above, however, that rule has no application to a § 1442(a)(1)-based removal. <u>Kircher</u>, 547 U.S. at 644.

That crucial distinction has clear import in this case in which – regardless of which specific theories of recovery have been asserted or disavowed – it is undisputed that any contact between Corley and Westinghouse-attributable asbestos arose from Westinghouse's design and manufacture of its Navy turbines. Plaintiffs nonetheless contend that Westinghouse, in failing to warn regarding asbestos-related hazards, was acting outside the scope of the Navy's overall direction and control, rendering removal improper. This contention is untenable given the Supreme Court's landmark decision in Willingham, supra.

In Willingham, a prisoner brought a state court suit against a federal prison's warden and chief medical officer for purportedly intentionally-inflicted injuries. The case was removed to federal court, the plaintiff successfully appealed the district court's denial of his motion for remand, and the defendants successfully petitioned the Supreme Court for review. The Willingham Court began its analysis by stressing that "the right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court." Willingham, 395 U.S. at 406. Thus, that Court admonished against any interpretations of § 1442(a)(1) that would:

> have the anomalous result of allowing removal only when the [defendants have] a clearly ascertainable defense. The suit would be removed only to be dismissed. Congress certainly meant more than this when it chose the words "under color of . . . office." . . . The [defendant] need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).

Id., at 407.

After stating these guiding principles, the Court turned to the argument that – while the plaintiff's sole contact with the defendants had occurred in the prison and, thus, within the context of

8

the defendants' federal employment – the specific acts that had caused his injuries were not taken under color of the defendants' federal office and were instead "'a frolic of [the defendants'] own which had no relevancy to their official duties as employees or officers of the United States.'" Id., at 407-08. Rejecting this argument, the Court held that "it was sufficient for [the defendants] to have shown that their relationship with [the plaintiff] derived solely from their official duties" and, more specifically, that the defendants had satisfied their obligation to show a causal connection between their conduct within the color of their office and the plaintiff's injuries. Id., at 409. In this regard, the Willingahm Court stated:

> *once [the defendants] had shown that their only contact with [the plaintiff] occurred inside the penitentiary while they were performing their duties, we believe that they had demonstrated the required "causal connection."* The connection consists, simply enough, of the undisputed fact that [the defendants] were on duty, at their place of federal employment, at all the relevant times. *If the question raised is whether they were engaged in some kind of "frolic of their own" in relation to [the plaintiff], then they should have the opportunity to present their version of the facts to a federal, not a state, court. This is exactly what the removal statute was designed to accomplish.*

Id. See also, Marley, 545 F. Supp. 2d at 1273 (quoting, Magnin, 91 F.3d at 1427); Ballenger, supra; LaLonde v. Delta Field Erection, 1998 WL 34301466 at *3-4 (M.D. La. Aug. 6, 1998).

A similar conclusion is demanded here. It is uncontested that any contact between Corley and Westinghouse-attributable asbestos arose from Westinghouse's design and manufacture of its Navy turbines. Whether Westinghouse's alleged failure to warn fell within the scope of the Navy's overall control of the design and manufacture of such turbines – or, as Plaintiffs seem to contend, reflects a non-Navy directed "frolic" on Westinghouse's part – is a question Westinghouse "should have the opportunity to present . . . to a federal, not a state, court." Willingham, 395 U.S. at 409.

9

In fact, a stronger case for removal is presented here than was confronted in <u>Willingham</u>. As noted above, the <u>Willingham</u> plaintiff alleged that the sole cause of his injuries had been a series of intentional acts which took place entirely outside the scope or "color" of the defendants' federal office. In this case, even assuming Westinghouse's alleged failure to warn somehow fell outside the scope of its concurrent role as a designer and manufacturer of Navy equipment, other acts by Westinghouse which ***did*** fall within the scope of its federal office (i.e., its design and manufacture of turbines containing asbestos) would necessarily also constitute causes-in-fact of Plaintiffs' harm. In short, Plaintiffs' cause of action, if any, is for a single indivisible injury caused in part by Westinghouse's total course of conduct, at least some aspects of which fell within the scope of its federal office for purposes of § 1442(a)(1). Thus, removal would have been warranted in this case, even had Plaintiffs' limited the scope of their claims against Westinghouse to a theory of "failure to warn," as it is well-settled that, where one aspect of a cause of action falls within § 1442(a)(1), the entire suit is removable. <u>See, e.g.</u>, <u>National Audubon Soc'y v. Department of Water & Power</u>, 496 F. Supp. 499, 509 (E.D. Cal. 1980).[3]

Stated differently, Plaintiffs cannot prevail on their "failure to warn" theory of recovery against Westinghouse absent proof that Corley's injury was due to a design defect (i.e., the presence of asbestos) in or on Westinghouse's Navy turbines – absent the presence of asbestos, no asbestos-

---

[3] By way of comparison, the inherent interdependence of a "failure to warn" claim with the conduct purportedly giving rise to the need for a warning has been considered in various cases in which a plaintiff has attempted to evade a statute of repose intended to protect builders of improvements to realty by shaping his theory of recovery as one for a failure to warn of a defect rather than for the creation of that defect. Courts have repeatedly rejected such efforts, noting that even a purely warning-based theory of recovery necessarily turns on the defendant's performance of its duties as a builder as – absent proof of a defect – there could be no liability for a failure to warn. <u>See, e.g.</u>, <u>Taylor v. S&W Development</u>, 279 Ga. App. 744, 746, 632 S.E.2d 700, 702 (2006); <u>O'Brien v. City of Chicago</u>, 285 Ill. App. 3d 864, 870, 674 N.E.2d 927, 933 (1996), <u>app. denied</u>, 172 Ill. 2d 554, 679 N.E.2d 381 (1997); <u>Rose v. Fox Pool Corp.</u>, 335 Md. 351, 377-78, 643 A.2d 906, 919 (Md. App. 1994). <u>Cf.</u>, <u>Krull v. Thermogas Co.</u>, 522 N.W.2d 607 (Iowa 1994) (holding that a "failure to recall" claim fell within Iowa's construction statute of repose as, absent a defect in the improvement's construction, no duty to recall could have arisen).

related warning could have been required. Given this inherent intertwining of even a purely warning-based theory of recovery with Westinghouse's overall course of conduct in designing and manufacturing its Navy turbines – as well the inapplicability of the well-pleaded complaint rule to § 1442(a)(1) – Plaintiffs cannot thwart Westinghouse's statutory removal rights through sharp practice and artful pleading.

II.     **Even if Plaintiffs' warning-based claims are viewed in isolation, the assertion that the removal of this case required proof that Westinghouse asked to provide an asbestos-related warning only to have that request rejected by the Navy simply cannot be squared with the greater weight of authority.**

In a remarkable example of irony, Plaintiffs charge Westinghouse with "offer[ing] their very best snippets from a litany of cases" while cautioning that Westinghouse "cannot 'spot quote' [its] way around the very straightforward analysis under the current body of law regarding federal officer removal." (Plaintiffs' Reply Brief, p. 16). The irony arises from the fact that Plaintiffs' primary objection to Westinghouse's removal – i.e., their assertion that evidence of the Navy's ongoing involvement in the decision of what warnings would be given with Westinghouse's turbines and its ultimate decision-making authority in that regard is insufficient to justify a removal absent evidence that Westinghouse affirmatively proposed an asbestos-related warning only to have that warning forbidden by the Navy – is based on a handful of decisions which are decidedly contrary to the great weight of persuasive authority.

Stated simply, most courts which have considered § 1442(a)(1)-based removals of asbestos-related "failure to warn" claims by Navy equipment suppliers, and which have been presented with evidence similar to that submitted by Westinghouse here, have held that a colorable government contractor defense has been stated and that removal jurisdiction has been established. See, e.g., Kirks v. General Elec. Co., 2009 WL 2970391 at *3 (D. Del. Sept. 17, 2009); Allen v. General Elec.

Co., 2009 WL 2766583 at *4-5 (D. Conn. Aug. 27, 2009); Kotecki v. Buffalo Pumps, 2009 WL

2253169 at *3-5 (D. Conn. July 28, 2009); Murphy, 2009 WL 2151192 at *3-5; Seigfried v.

Allegheny Ludlum Corp., 2009 WL 1035001 at *13 (W.D. Pa. Apr. 17, 2009); Curry v. American

Standard, Inc., 2009 WL 308029 at *2 (S.D.N.Y. Feb. 6, 2009); Carroll, 2008 WL 4793725 at *2-3;

Dematties v. Acmat Corp., 2008 WL 4735145 at *2-3 (D. Conn. Oct. 27, 2008); Redman, 2008 WL

4447729 at *4-7; Salamante, supra (Exhibit A), pp. 4-7; Marley, 545 F. Supp. 2d at 1271-73;

O'Connell, 544 F. Supp. 2d at 54-65; Reaser, supra (Exhibit B), pp. 6-9; Wright v. A.W. Chesterton

Co., 2008 WL 512728 at *4-7 (N.D. Cal. Feb. 25, 2008); Oberstar, supra (Exhibit C), pp. 4-6;

Contois v. Able Indus., 523 F. Supp. 2d 155, 160-61 (D. Conn. 2007); Machnik, 506 F. Supp. 2d at

102-04; Nesbiet v. General Elec. Co., 399 F. Supp. 2d 205, 211-12 (S.D.N.Y. 2005); McAboy v.

IMO Indus., 2005 WL 2898047 at *4 (W.D. Wash. Oct. 27, 2005); Madden, 205 F. Supp. 2d at 701-

02; Carter, 2002 WL 31682352 at *4.

In contrast, the rationale espoused in Holdren v. Buffalo Pumps, 614 F. Supp. 2d 129 (D.

Mass. 2009) and Hilbert v. McDonnell Douglas Corp., 529 F. Supp. 2d 187 (D. Mass. 2008)[4] on

which Plaintiffs rely in seeking a remand has been routinely rejected as unpersuasive and as wholly

inconsistent with the greater weight of authority interpreting both § 1442(a)(1) and the government

contractor defense. See, e.g., Seigfried, 2009 WL 1035001 at *13; O'Connell, 544 F. Supp. 2d at 55

and 57, n. 12; Marley, 545 F. Supp. 2d at 1273; Salamante, supra (Exhibit A), p. 7, n. 2.

Additionally, numerous other federal district courts have rejected the Holdren and/or Hilbert

essential holding (i.e., that an asbestos-related "failure to warn" claim can only be removed by a

Navy equipment supplier upon proof that it affirmatively proposed an asbestos warning which was

---

[4] As noted by District Judge Gertner, her Holdren opinion was just a restatement or clarification of her almost

rejected by the Navy) without mentioning those decisions by name. See, e.g., DeMatties, 2008 WL 4735145 at *2; Redman, 2008 WL 4447729 at *5; Ballenger, 2007 WL 1813821 at *3; O'Connell, 2008 WL 1722079 at *2; McAboy, 2005 WL 2898047 at *4. In short, and as explained at length in Westinghouse's prior brief, a proper understanding of the application of the government contractor defense to a warning-based claim is one that recognizes that:

> Government *discretion* is required, not dictation or prohibition of warnings. Where a contractor proposes warnings that the government substantively approves, and satisfies the second and third conditions [of the Boyle analysis], the [government contractor] defense displaces state [warning-related tort] law – *even if the government did not "prohibit" the contractor from proposing more alarming warnings*.

Tate v. Boeing Helicopters, 55 F.3d 1150, 1157 (6th Cir. 1995) (emphasis added). See also, Nicholson v. United Techs. Corp., 697 F. Supp. 598, 603-04 (D. Conn. 1988). This rationale is only strengthened in cases – such as this one – in which the government forbade modifications of, or additions to, the product's warnings without its prior express approval. See, e.g., Ferguson v. Lorillard Tobacco Co., 475 F. Supp. 2d 725, 730 (N.D. Ohio 2007); Yeroshefsky v. Unisys Corp., 962 F. Supp. 710, 721 (D. Md. 1997); Haltiwanger v. Unisys Corp., 949 F. Supp. 898, 906-07 (D.D.C. 1996); In re Aircraft Crash Litig. Frederick, Md., May 6, 1981, 752 F. Supp. 1326, 1366-67 (S.D. Ohio 1990), aff'd without op., 935 F.2d 269 (6th Cir. 1991). See also, Miller v. United Techs. Corp., 233 Conn. 732, 784, 660 A.2d 810 (Conn. 1995) (Boyle's "reasonably precise specifications" test is satisfied where the government specified the contents of a product's technical manuals, reviewed the manuals to ensure compliance with the specifications, and thereafter "had to approve any subsequent revisions to the manuals"). In short, Plaintiffs' invocation of Holdren/Hilbert

---

identical remand order entered in the Hilbert case. See, Holdren, 614 F. Supp. 2d at 139.

constitutes the kind of "spot-citing" condemned in their own reply, amounting to a request that this Court turn a blind eye to "the current body of law regarding federal officer removal." (Plaintiffs' Reply Brief, p. 16).

If possible, Plaintiffs' reliance on <u>Good</u>, <u>supra</u>, is even more puzzling. In that case, the court found that an earlier, less detailed, version of James Gate's declaration sufficed to establish that Westinghouse **was** acting under the Navy's control in the design and manufacture of its Navy turbines. <u>Good</u>, 914 F. Supp. at 1129. Nonetheless, it held that remand was appropriate despite this proof of Navy control primarily because Gate had not identified by name the specific Navy officers with whom he had dealt and whom he had identified by title or rank as directing Westinghouse's performance of its duties. <u>Id</u>. In a like manner, the <u>Good</u> court acknowledged that Westinghouse **had** raised a colorable government contractor defense to asbestos-related claims involving its Navy turbines, yet held that remand was still proper as the case before it did not raise the type of broad policy concerns which it believed had led to the creation of this defense. <u>Id</u>., at 1130-31.

Westinghouse is unaware of any reported decision (pre- or post-dating <u>Good</u>) that shares its holding that a failure to name the specific individual federal officers who directed a defendant's conduct is fatal to a § 1442(a)(1) removal if the evidence otherwise reflects governmental control. Rather, <u>Good</u> has been soundly criticized in this regard. <u>Seigfried</u>, 2009 WL 1035001 at *9; <u>Wright</u>, 2008 WL 512728 at *4; <u>Mitchell</u>, 2004 WL 3831228 at *3; <u>Williams v. Todd Shipyards Corp.</u>, 1996 U.S. Dist. LEXIS 22676 at *13-15 (S.D. Tex. Apr. 2, 1996). As stated by the <u>Mitchell</u> court, "[t]o refuse to accept the direction of a branch of the armed services as the direction of a 'federal officer' is to 'deny that the government is composed of entities as well as people.'" <u>Mitchell</u>, <u>supra</u>. Similarly, Westinghouse is unaware of any other reported decision holding that a remand is proper

14

despite the stating of a colorable government contractor defense based on the district court's own independent weighing of purported policy considerations underlying that defense.  Quite the contrary, such a notion has likewise been rejected by other courts.  See, e.g., Feidt v. Owens Corning Fiberglas, 153 F.3d 124, 128-29 (3d Cir. 1998); Kirks, 2009 WL 2970391 at *2, n. 3.  Instead, the better authority – and the holding of each Circuit Court of Appeals to consider the question – is that, where each of the three prongs of Boyle v. United Techs. Corp., 487 U.S. 500 (1988) has been satisfied, a court asked to pass on a government contractor defense should not engage in an independent determination of whether sufficient "conflict" with state tort law has been shown; rather, the very purpose of Boyle – and particularly its first prong – is a determination of whether sufficient conflict exists to displace state tort law.  See, e.g., Tate v. Boeing Helicopters, 140 F.3d 654, 660-61(6th Cir. 1998); Lewis v. Babcock Indus., 985 F.2d 83, 86-87 (2d Cir.), cert. denied, 509 U.S. 924 (1993).  Cf., Augustine v. Bell Helicopter Textron, 922 S.W.2d 287, 290 (Tex. App. – Fort Worth 1996).  As observed by the Lewis Court, "answering the question whether the Government approved reasonably precise specifications for the design feature in question necessarily answers the question whether the federal contract conflicts with state law."  Lewis, 985 F.2d at 87.  In short, no aspect of Good affords persuasive support for Plaintiffs' remand motion in this case.

Finally, Plaintiffs – relying on Sether v. Agco Corp., 2008 WL 1701172 (S.D. Ill. Mar. 28, 2008) – seem to suggest that Gate's declaration is insufficient evidence of the Navy's control of Westinghouse's design and manufacture of its Navy turbines unless Westinghouse, as part of this Court's preliminary jurisdictional inquiry, also submits the actual decades-old contracts and military specifications which governed that work.  Once again, however, any such holding in Sether is contrary to the prevailing interpretation of § 1442(a)(1).  See, Seigfried, 2009 WL 1035001 at *13.

Despite Plaintiffs' suggestion, the better authority as to the proper scope of this Court's jurisdictional analysis under § 1442(a)(1) holds that – once Westinghouse tendered Gate's declaration – it was **not** required to also produce the contracts or written specifications which controlled its Navy turbine work as a prerequisite to the exercise of federal officer removal jurisdiction. Plainly, requiring a Navy equipment manufacturer "to produce contracts from decades past in order to demonstrate that it worked under the direction of federal officers . . . would frustrate the purpose of [§] 1442(a)(1)." Ballenger, 2007 WL 1813821 at *3. See also, Reaser, supra (Exhibit B), pp. 7-9. Thus, Gate's testimony based on his own personal knowledge – even if insufficient in and of itself to establish the merits of Westinghouse's government contractor defense at trial – is more than sufficient to satisfy Mesa's jurisdictional analysis, particularly given the liberality with which § 1442(a)(1) is to be interpreted and applied. Wright, 2008 WL 512728 at *3. Cf., Harris v. Rapid Am. Corp., 532 F. Supp. 2d 1001, 1005-06 (N.D. Ill. 2007) (holding that similar "general background and knowledge" testimony offered by another Navy turbine manufacturer was sufficient at least for the limited purposes of the purely "preliminary" jurisdictional inquiry required for disposing of a motion for remand, and noting that the plaintiff's challenges to the veracity or accuracy of that testimony are more properly reserved for the ultimate determination of the plaintiff's claims on their merit).

## Conclusion

To the extent this Court accepts Plaintiffs' invitation to assess the scope of its jurisdiction by engaging in a "very straightforward analysis under the current body of law regarding federal officer removal," it is readily apparent that none of the objections raised by Plaintiffs justify a remand of

16

their claims against Westinghouse.[5] Thus, Westinghouse renews its request that Plaintiffs' remand motion be denied.

RESPECTFULLY SUBMITTED, this 29th day of October, 2009.

> s/ James A. Harris, III
> James A. Harris, III
> **Attorney Code: HAR141**
> Nicole M. Hardee
> **Attorney Code: MAP006**
> 2501 20th Place South, Suite 450
> Birmingham, Alabama 35223
> FAX: (205) 871-0029
> TEL: (205) 871-5777
> Email: jamey@harris-harris.com
> Email: nicole@harris-harris.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2009 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

G. Patterson Keahey, Jr., Esquire
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

> s/James A. Harris, III
> OF COUNSEL

---

[5] As noted in Plaintiffs' reply, a Conditional Transfer Order has been entered to transfer this case to the asbestos MDL situated in the United States District Court for the Eastern District of Pennsylvania, MDL-875, so that it can be considered jointly with other pending asbestos-related suits. Thus, to the extent this Court disagrees, and finds that the state of authority is in sufficient conflict that the prevailing "body of law" is difficult to discern, Westinghouse submits that the proper course would be to abstain from deciding Plaintiffs' motion. While a district court retains jurisdiction to consider the merits of a motion for remand despite a pending transfer to an MDL court, it also has the discretion to stay such a motion pending transfer and such a stay may be particularly appropriate if the issues on which the remand motion turns are difficult questions common to many of the cases consolidated within the MDL rather than a truly case-specific question such as the timeliness of a removal given the events and pleadings in that specific case. See, generally, Maiben v. CSX Transp., 2009 WL 1211186 (S.D. Ala. May 1, 2009); Gavitt v. Meck & Co., 2008 WL 4642782 at *1 (M.D. Fla. Oct. 20, 2008); Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1049 (E.D. Wisc. 2001).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |

| Karen Park | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**    IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Remand filed by plaintiffs Edgardo R. Salamante and Nola Salamante ("Plaintiffs") (Docket No. 26). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for September 22, 2008, is vacated, and the matter taken off calendar.

Plaintiffs allege claims for negligence, breach of warranty, strict liability, and loss of consortium arising out of Mr. Salamante's exposure to asbestos-containing products manufactured, fabricated, installed, or otherwise distributed by defendants. Specifically, Plaintiffs' claims that defendants violated their obligations imposed under state law to warn Mr. Salamante of the dangers associated with their asbestos-containing products. Plaintiffs allege that Mr. Salamante was exposed to the asbestos contained in defendants' products between 1957 and 1996 when he was a steward aboard various United States Navy vessels, as well as a shipwright and mechanic at the Long Beach Naval Shipyard in Long Beach, California. Plaintiffs commenced the action in Los Angeles Superior Court on June 2, 2008 and served defendant Foster Wheeler Energy Corp. ("Foster Wheeler") on June 19, 2008. Foster Wheeler removed the action to this Court on July 17, 2008. Foster Wheeler based its Notice of Removal on 28 U.S.C. § 1442(a)(1)'s federal officer removal statute. 28 U.S.C. § 1442(a) provides, in relevant part:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a).

Suits against federal officers are an exception to the general rule that a case is removable only if the federal question appears on the face of a properly pleaded complaint. See Jefferson County v.

SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075, 144 L. Ed. 2d 408 (1999). "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Id. "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting Jefferson County, 527 U.S. at 431, 119 S. Ct. at 2075, and citing Mesa v. California, 489 U.S. 121, 124–25, 131–35, 109 S. Ct. 959, 962, 965–67, 103 L. Ed. 2d 99 (1989)).

In establishing the propriety of removal under the federal officer removal statute, the defendant need not prove a valid federal defense, only a colorable defense:

> In construing the colorable federal defense requirement, we have rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." We therefore do not require the officer virtually to "win his case before he can have it removed."

Jefferson County, 527 U.S. at 431, 119 S. Ct. at 2075 (quoting Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969)). Indeed, unlike other removal statutes, which are to be interpreted strictly, "the Supreme Court has mandated a generous interpretation of the federal officer removal statute . . . ." Durham, 445 F.3d at 1252. The Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" Arizona v. Manypenny, 451 U.S. 232, 242, 101 S. Ct. 1657, 1664, 68 L. Ed. 2d 58 (1981) (quoting Willingham, 395 U.S. at 407, 89 S. Ct. at 1816); see also Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").[1]

---

[1] Plaintiffs argue that Foster Wheeler, a private actor, has a "special burden" in establishing the official nature of its activities, relying on Williams v. General Elec. Co., 418 F. Supp. 2d 610, 614 (M.D. Pa. 2005) (citing Freiberg v. Swinerton & Walberg Prop. Servs., Inc., 245 F. Supp. 2d 1144, 1150 (D. Colo. 2002). Plaintiffs cite no Ninth Circuit case for this proposition. On the contrary, in Durham, discussed above, the Ninth Circuit found that a broad interpretation of the federal officer removal statute was appropriate as applied to a government contractor. See 445 F.3d at 1252. In the absence of binding authority to the contrary, the Court follows the Ninth Circuit's articulation of the appropriate interpretation of the statute. See id.

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|----------|----------------------|------|--------------------|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

In removing the action pursuant to the federal officer removal statute, Foster Wheeler claims that it is entitled to assert the "military contractor defense." The military contractor defense shields contractors from liability for state tort law for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Tech. Corp., 487 U.S. 500, 512, 108 S. Ct. 2510, 2518, 101 L. Ed. 2d 442 (1988). Although originally developed in the design defect context, the military contractor defense also applies in cases where a plaintiff alleges that the government contractor breached a state law duty to warn of potential dangers. In actions alleging a failure to warn claim against a military contractor, the supplier cannot be liable when it can show: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003–04 (7th Cir. 1996); see also In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (9th Cir. 1992).

Plaintiffs argue in their Motion to Remand that they have disclaimed any claim that could allow this Court to exercise jurisdiction pursuant to the federal officer removal statute. Specifically, the Complaint alleges:

> Plaintiff specifically disclaims any federal cause of action or any claim that would give rise to federal jurisdiction. To the extent that any of Plaintiff's asbestos exposure took place on a federal enclave, or to the extent that any of Plaintiff's asbestos exposure occurred on board vessels of the United States military (including Naval ships) or in the construction, maintenance and/or repair of United States military vessels and/or aircraft, Plaintiff's negligence claims against manufacturers, sellers and suppliers of asbestos-containing products installed on such vessels and/or aircraft are not based on the theory of defective design, but rather are based only on the theory of failure to warn. Since there is no evidence that the United States Government, or any of its military branches, specifically instructed manufacturers from which it purchased asbestos-containing products not to warn about the health hazards associated with exposure to asbestos, there can be no valid claim to federal jurisdiction pursuant to federal enclave, federal officer or federal contractor provisions of the United States Code. This disclaimer pertains to all of plaintiffs' claims, including those of negligence and products liability, as asserted herein.

(Complaint, ¶ 4.) Despite their purported disclaimer, Plaintiffs specifically seek damages from defendants for exposure to asbestos Mr. Salamante may have come in contact with while he served on

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

various United States Navy vessels, as well as at the Long Beach Naval Shipyard. First, because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiffs' disclaimer nor its characterization of their claims are determinative. See Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007) ("[Plaintiff's] argument that the suit must be remanded because his complaint disclaimed any federal claims is unavailing . . . . Subject matter jurisdiction under § 1442(a)(1) is based upon a federal defense, regardless of whether the plaintiff's cause of action rests on state law. . . . [O]nce [Defendant] meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction."); Ballenger v. Agco Corp., No. C 06-2271 CW, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007) (denying motion to remand despite complaint's disclaimer of "any claim arising from any act or omission of the United States, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States"). Moreover, Plaintiffs' disclaimer is based on an alleged lack of evidence by the defendants that the government prevented the defendants from providing warnings regarding asbestos-related health hazards. To the extent that Foster Wheeler does have such evidence, Plaintiffs' disclaimer is ineffective for this reason as well.

In their Motion to Remand, Plaintiffs state that their "complaint contains causes of action limited to state-based failure to warn claims." (Motion to Remand, p. 7, ll. 27–28.) Plaintiffs argue that Foster Wheeler has not met its burden to establish the existence of a valid federal defense to Plaintiffs' claims. Specifically, while conceding that Foster Wheeler is a "person" within the meaning of § 1442(a)(1), Plaintiffs contend that Foster Wheeler has not demonstrated that it can assert either a "causal nexus" between its actions taken at the direction of a federal officer and Plaintiffs' claims or a "colorable federal defense" based on military contractor immunity. See Durham, 445 F.3d at 1251. According to Plaintiffs, absent evidence of specific facts that Foster Wheeler was prevented from placing warnings on its products, Foster Wheeler cannot meet its burden to prove either the requisite causal nexus or the applicability of the military contractor defense. Contrary to Plaintiffs' assertions, however, Foster Wheeler's burden at this stage of the proceedings is not so exacting.

To establish their military contractor defense, defendants rely in large part on the declarations of J. Thomas Schroppe, Ben Lehman, and Lawrence Betts. Schroppe is a retired engineer who worked at Foster Wheeler from 1962 to 1999. Lehman is a retired Rear Admiral, who joined the Navy in 1942 and served as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944 and as Ship Superintendent at the San Francisco Naval Shipyard from 1952 to 1954. Lehman also worked as an engineer at GE from 1946 to 1948. Betts, a physician, served in the Navy from 1972 until 2001 when he retired with the rank of Captain.

Lehman's declaration indicates that during the period during Mr. Salamante's service in the Navy, "the U.S. Navy had complete control over every aspect of every piece of equipment" used on Navy ships. (Lehman Decl., ¶ 10.) According to Lehman:

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|

| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. |
|---|---|

Military specifications governed every significant characteristic of the equipment used on U.S. Navy Ships, including instructions and warnings. Drawings for nameplates, the texts of instruction manuals, and every other document relating to the construction, maintenance, and operation of the vessel was approved by the U.S. Navy. This control included the decision of what warnings should or should not be included. Thus, the U.S. Navy controlled the decisions with regard to instructions and warnings on every piece of equipment. The U.S. Navy would not, and could not, permit any equipment manufacturer or supplier to interfere with the Navy's mission by placing warnings on any equipment [or in any instructions or manuals with accompanied the equipment] on any U.S. Navy ships or in any shipyards in which U.S. Navy Ships were built or repaired that might cause Sailors or workers to deviate from their mission . . . .

In addition to specifications for the design and manufacture of the equipment itself, the U.S. Navy also had detailed specifications that governed the form and content of the written materials to be delivered with the equipment, including boilers, to be supplied to the U.S. Navy. . . . In short, the U.S. Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors.

The U.S. Navy would never permit a supplier to suggest, advise, or require any actions that would be disruptive to the normal operation of the ship in its primary function of defending our Country. . . . Any written material regarding procedures for working around boilers that differed would have interfered with the normal and necessary operations of U.S. Navy ships. Indeed, in its specifications for manuals the U.S. Navy specifically limited warning information to items and events dealing with the operation of equipment. By definition, the application or removal of insulation would have been included.

. . . .

The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to asbestos hazards on their equipment. This would have included boilers. Further, the U.S. Navy would not have allowed Foster Wheeler to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor in accordance with its contracts, including its technical operations manuals. To do so would have

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

interfered with the U.S. Navy's mission and control of its ships and personnel.

(Lehman Decl., ¶¶ 10–14 (first alteration in original).) In reviewing a similar declaration submitted by Lehman, the court in Nesbiet v. General Elec. Co. concluded that Lehman's declaration raised "the inference that GE did not provide a warning concerning the dangers of asbestos because the Navy did not permit any such warning." 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005).

Schroppe, who is personally familiar with the degree of supervision and control exercised by the Navy in procurement contracts with Foster Wheeler for boilers and other auxiliary equipment, stated that technical manuals accompanying naval boilers "included safety information related to the operation of naval boilers only to the extent directed by the Navy." (Schroppe Decl., ¶ 21.)

> Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

(Id., ¶ 22.) Although the Lehman and Schroppe Declarations may not establish the absence of a triable issue of fact with respect to the first two prongs of the Boyle test, as modified by Oliver for a failure to warn claim, Foster Wheeler need not prove so much at this preliminary stage of the proceedings. See Oliver, 96 F.3d at 1003 (applying military contractor defense when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government . . . ."). Again, to establish the propriety of their removal, Foster Wheeler must only show a "colorable" federal defense, not a winning one.

The third prong of the military contractor defense requires the contractor to have "warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Id. at 1004. Defendants rely on the Betts Declaration to meet this third factor of the Boyle test. Through his training and experience, Betts became familiar with "the history and practice of the Navy occupational health program from its early days before World War II until the present time." (Betts Decl., ¶ 2.) According to Betts, the "Navy's knowledge regarding the applications of asbestos and the health effects represented the state of the art. During the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos-containing products on a marine steam boiler on United States Navy ships known by a boiler manufacturer, like Foster Wheeler, that were not known by the United States and the United States Navy." (Id., ¶ 31.) Based upon the Betts Declaration, Foster Wheeler has provided sufficient evidence that there were no dangers known by

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

it that were not known by the government. See Nesbiet, 399 F. Supp. 2d at 209 ("[A]ccording to Betts's affidavit, [Defendant] could not have possessed any information regarding the dangers posed by the use of asbestos-containing products in marine steam turbines that was not already known by the U.S. Navy.").

The Court therefore concludes that Foster Wheeler has met its burden, at this stage of the proceedings, to establish a "colorable" military contractor defense for purposes of removal under 1442(a)(1).[2] The Court also finds that Foster Wheeler has submitted sufficient evidence of a "causal nexus" between Plaintiffs' claims and the actions Foster Wheeler took at the direction of a federal officer. As did the court in Nesbiet, this Court finds that Foster Wheeler's evidence "is sufficient for purposes of section 1442(a) to demonstrate that the Navy's control over warnings directly interfered with [Defendant's] duty to warn under state law. Thus, [Defendant] has satisfied the 'causal nexus' requirement." Id. at 213.

For all of the foregoing reasons, the Court finds that defendants have raised a "colorable" federal defense to the claims alleged in Plaintiffs' Complaint. As a result, Foster Wheeler's removal pursuant to § 1442(a)(1) was proper. Plaintiffs' Motion to Remand is therefore denied.

In its Opposition, Foster Wheeler asks that the Court stay determination of the Motion to Remand pending a decision by the Multidistrict Litigation Panel whether to transfer this case to the Eastern District of Pennsylvania as a potential "tag-along action" to MDL No. 875. The Court notes that Foster Wheeler did not move for a stay, but rather simply asked for one in its Opposition. Foster Wheeler argues that a stay would serve judicial economy. The Court, however, finds that judicial economy would best be served by moving this case forward so it may be litigated in the proper forum. Determining that federal jurisdiction exists appears to be an appropriate prerequisite to determining which federal forum is best. The Court therefore denies Foster Wheeler's request for a stay.

IT IS SO ORDERED.

---

[2]     The Court recognizes that when faced with arguably similar evidence, other courts have reached a different result. See, e.g., Barrett v. CLA-VAL Co., Case No. 07-7774 PSG (FFMx) (C.D. Cal. Feb. 5, 2008); Hilbert v. McDonnell Douglas Corp., No. 07CV11900-NG, 2008 WL 53266 (D. Mass. Jan. 3, 2008). The Court declines to follow these cases because, in the Court's view, they place too high a burden on a defendant to prove its military contractor defense at such an early stage in the litigation. Given the liberality with which removals under § 1442 are to be considered, this more exacting standard appears to conflict with Ninth Circuit precedent. See Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").

1

2

3

4

5                 UNITED STATES DISTRICT COURT

6                 CENTRAL DISTRICT OF CALIFORNIA

7

8 ROBERT REASER, et al.        )    CV 08-1296-SVW (SSx)
                           )

9            Plaintiffs,   )    ORDER DENYING PLAINTIFFS'
                           )    MOTION FOR REMAND [18]

10       v.                 )
                           )

11 ALLIS CHAMBERS CORPORATION, et  )
al.                         )

12           Defendants.   )
                           )

13 _____ )
                           )

14                            )

15 **I.    Statement of Facts**

16      Plaintiffs Robert and Christine Reaser brought this action

17 against General Electric Company ("GE"), Viad Corporation ("Viad")[1],

18 and other Defendants in Los Angeles Superior Court on January 25,

19 2008.  (Motion for Remand, at 1 ("Motion").)  Plaintiffs allege that

20 Robert Reaser ("Reaser") developed malignant mesothelioma as a result

21 of exposure from Defendants' asbestos or asbestos-containing products

22 aboard United States naval ships.  (Complaint, at ¶ 3 ("Complaint").)

23 Reaser served in the U.S. Navy from 1951 to 1964, during which he was

24 allegedly exposed to asbestos while working on the *U.S.S Shea*, *U.S.S.*

25 *Boston*, *U.S.S. Providence*, and the *U.S.S. Wilkinson*.  (Defendant Viad

26 Notice of Removal, at 3.)  Plaintiffs allege that Defendants violated

27 their state law duties to warn Reaser about the dangers of asbestos

28

---

[1]   Defendants Viad and GE were the only defendants who removed the
case and filed oppositions to the Motion for Remand.

1    exposure from equipment found on naval vessels.  (Motion, at 1.)

2    Viad, later joined by GE, removed the case to federal court based on

3    the federal officer removal statute, which provides federal

4    jurisdiction over claims against "any officer (or any person acting

5    under that officer) of the United States or of any agency    thereof

6    . . . for any act under color of such office . . ."  28 U.S.C.  §

7    1442(a)(1).  This statute does not require all Defendants to consent

8    to removal.  See Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253

9    (9th Cir. 2006) ("Whereas all defendants must consent to removal

10   under section 1441 . . . a federal office or agency defendant can

11   unilaterally remove a case under section 1442.")

12        Plaintiffs, clearly anticipating that one or more Defendants

13   would attempt to remove the case to federal court, included a

14   disclaimer in the Complaint which attempts to waive any cause of

15   action arising from exposure to asbestos dust that occurred in a

16   federal enclave, expressly excluding from the disclaimer U.S. Navy

17   vessels.  Plaintiffs also disclaim any cause of action resulting from

18   exposure to asbestos dust caused by any acts or omissions of

19   Defendants committed at the direction of a U.S. officer.  (Complaint,

20   at ¶ 4.)  On April 14, 2008, Plaintiffs filed a motion for remand to

21   state court on the ground that this Court lacks subject matter

22   jurisdiction.  (Motion, at 2.)

23   ///

24   ///

25

26   **II.  Analysis**

27

28

2

Three main issues must be addressed in examining Plaintiffs' Motion. The first is whether the standard of review includes a requirement that Defendants meet a "special burden" in showing that federal officer jurisdiction is proper. The second is whether Defendants meet the elements of federal officer jurisdiction. The third is whether Plaintiffs' disclaimer should be determinative as to the question of remand.

**A.    Standard of Review**

A party seeking removal under § 1442(a)(1) must demonstrate that (a) it is a person within the meaning of the statute; (b) it can assert a "colorable federal defense"; and (c) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and the plaintiff's claims. <u>Durham</u>, 445 F.3d at 1251. Defendants Viad and GE assert that they must prove only by a preponderance of the evidence that removal to federal court is proper, as typically required. (<u>See</u> Defendant Viad Opposition Motion, at 3.)

Plaintiffs argue, however, that Defendants have a "special burden" in showing that federal officer jurisdiction is proper. (Motion, at 3.) Plaintiffs assert that the special burden requires Defendants to present concrete, verifiable evidence regarding satisfaction of federal officer jurisdiction, particularly with respect to satisfying the existence of a colorable federal defense. This burden would create a higher standard for Defendants at this stage of the litigation process. Citing to <u>Williams v. General Electric Co.</u>, Plaintiffs allege that because § 1442(a)(1) is

3

"predicated on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden in establishing the official nature of their activities." (Motion, at 3) (quoting <u>Williams v. General Electric Co.</u>, 418 F. Supp. 2d 610, 614 (M.D. PA. 2005)). Furthermore, Plaintiffs rely on <u>Hilbert v. McDonnell Douglas Corp.</u> in arguing for a heightened burden in satisfying the three prongs of § 1442(a)(1). 529 F. Supp. 2d 187 (D. Mass. 2008). In <u>Hilbert</u>, the defendants claimed that the military, through its contracts, exercised its discretion in such a way as to prevent them from warning the plaintiff about the dangers of asbestos, similar to the present assertions by Viad and GE. <u>Id.</u> at 199. The court required that the defendants submit actual citations to regulations or contracts evidencing the government's alleged control over asbestos warnings. Because the defendants did not produce such evidence, the court held that this "sort of speculation is not remotely adequate" to satisfy federal officer jurisdiction and remanded the case. <u>Id.</u> at 202-203.

The Ninth Circuit, however, has rejected the notion that defendants must meet a special burden in order to satisfy the three prongs of federal officer jurisdiction. In <u>Durham</u>, the Ninth Circuit noted that, while removal under § 1441 is to be strictly construed, the federal officer removal statute is to receive a generous interpretation. According to the Ninth Circuit, "the Supreme Court has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy

4

favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." Durham, 445 F.3d at 1252 (citing Arizona v. Manypenny, 451 U.S. 232, 242 (1981)).  Therefore, when federal officers and their agents are seeking a federal forum, the Court is to interpret § 1442 broadly in favor of removal.  Id.  In following the Supreme Court's broad interpretation of § 1442 and rejecting the need for a special burden, the Ninth Circuit has maintained that Defendants must simply make an adequate showing that the requirements of federal office jurisdiction are met to support removal to federal court.  Id. at 1252-1253.  Therefore, to qualify for removal, Defendants must be a person under the statute, raise a colorable federal defense, and present a basis for a causal connection between the charged conduct and the asserted government authority.  Willingham v. Morgan, 395 U.S. 402, 409 (1969) (citing Maryland v. Soper (No. 1), 270 U.S. 9, 33 (1926)).  Defendants need not prove their federal defense or a causal nexus to justify removal.

**B.    Three Prongs of Removal under § 1442(a)(1)**

1.    Person

As corporations, Defendants Viad and GE meet the preliminary requirement that the party seeking removal is a person within the meaning of § 1442(a)(1).  See Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992).  There is no dispute between the parties as to this prong.

2.    Colorable Federal Defense

5

Defendants seek removal under the government or military contractor defense, which protects a government contractor from liability for acts done by him while complying with government specifications during execution of performance under a contract with the United States. McKay v. Rockwell Intern. Corp., 704 F.2d 444, 448 (9th Cir. 1983). The Supreme Court recognized the contractor defense in Boyle v. United Technologies Corp., where it held that liability for design defects in military equipment could not be imposed on a private government contractor under state law where: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier, but not to the United States. Boyle v. United Technologies Corp., 487 U.S. 500, 512 (1988). This defense has been extended to failure to warn cases; however, it is inapplicable in the absence of evidence that the defendants' decision to not provide a warning was "in compliance with reasonably precise specifications imposed on it by the United States." Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th Cir. 1996). Where there is no conflict between requirements imposed under a federal contract and a state law duty to warn, the Court should defer to state law. Id.

///

///

a.  **Reasonably Precise Specifications**

6

To illustrate that reasonably precise specifications set forth
by the Navy exist and that these specifications conflict with the
state law duty to warn, Defendants rely on the declarations of Dr.
Cushing and Admiral Lehman.  Dr. Cushing, President of C.R. Cushing &
co., Inc., Naval Architects, Marine Engineers and Transportation
Consultants, notes that the U.S. government was intimately involved
in the manufacture of any contractors' equipment used in U.S.
vessels, "as the equipment manufactured for those vessels was
designed and built to meet precise and exacting specifications of the
U.S. Navy." (Cushing Dec., at 4.)  Furthermore, Dr. Cushing asserts
that "[w]hether certain equipment used aboard U.S. Naval vessels
should have warnings, and the content and format of any such warning,
was determined solely by the U.S. Navy." (Id. at 5.)  Admiral
Lehman, a retired Rear Admiral of the U.S. Navy, states that
"equipment suppliers were prohibited from providing any warnings on
or to accompany equipment supplied to the Navy without the consent
and approval of the Navy." (Lehman Dec., at 5.)  Moreover, Admiral
Lehman claims that certain types of warnings were simply not approved
by the Navy, such as any warnings associated with hazards from
asbestos. (Id.)  Plaintiffs argue that these declarations do not
refer to actual contracts or any personal knowledge of contractual
obligations owed by Defendants, but rather are mere speculations
about what the Navy would have permitted. (Plaintiffs' Reply, at 6.)
Essentially, Plaintiffs assert that Defendants have not adequately
shown that the Navy set forth reasonably precise specifications, such
that Defendants fail to raise a colorable federal defense.[2]

---

[2]  Plaintiffs further argue that Admiral Lehman and Dr. Cushing lack
personal knowledge and that their declarations lack foundation and

1    Plaintiffs' argument relates to their assertion that Defendants

2    must prove their case in order to satisfy the three prongs for

3    removal under § 1442.  (Motion, at 3.)  Because the Supreme Court and

4    the Ninth Circuit has declined to require that any such burden be

5    placed on defendants in federal officer removal cases, the argument

6    that actual contracts are required to illustrate reasonably precise

7    specifications at this stage of the litigation process necessarily

8    fails.  See Willingham, 395 U.S. at 407 (noting that to be colorable,

9    the defense does not need to be clearly sustainable, as the purpose

10   of § 1442 is to secure that the validity of the defense will be tried

11   in federal court).  Defendants need not establish the validity of

12   their federal defense in order to justify removal.  Rather, they must

13   only raise a colorable federal defense.  The declarations made by

14   Admiral Lehman and Dr. Cushing describe general naval policies and

15   shipbuilding practices, and illustrate the lack of discretion given

16   to government contractors in supplying equipment to naval vessels.

17   As Plaintiffs point out, the declarations do not reference any

18   specific contractual provisions that prohibit Defendants from placing

19   warnings on naval equipment about the dangers of asbestos exposure.

20

21   are speculative.  These arguments lack merit because Admiral Lehman
     and Dr. Cushing's declarations are based on years of experience and
22   training in regard to the design and operation of U.S. Navy vessels.
     Both declarants state that they are personally familiar with the
23   degree of supervision and control of the Navy over the actions of its
     contractors.  The declarations describe typical Navy specifications
24   and offer explanations as to why warnings about asbestos would not
     have been permitted.  (See Lehman Dec., at 2-3; Cushing Dec., at 2,
25   5.)  Additionally, Plaintiffs claim the declarations are inadmissible
     per the "best evidence rule."  Fed. R. Evid. 1002.  This argument
26   also lacks merit because Admiral Lehman and Dr. Cushing are not
     trying to "prove the content of a writing," but rather they are
27   relying on their independent knowledge and familiarity regarding Navy
     specifications in making their assertions.  Id.
28

8

The absence of specific prohibitions, however, does not render these declarations useless; rather, the declarations provide Defendants with a basis for asserting a colorable federal defense, which is all that is needed at the removal stage. A central district court similarly determined that Admiral Lehman's declaration created an inference that military contractors did not provide a warning concerning the dangers of asbestos because the Navy did not permit any such warning. <u>Oberstar v. CBS Corp.</u>, No. CV 08-118 PA, at 5 (C.D. Cal. Feb. 11, 2008) (citing <u>Nesbiet v. General Electric Co.</u>, 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005)). Once again, the court noted that defendants must only show a colorable federal defense at this stage of the litigation process, not one that will ultimately prevail. <u>Id.</u> Additionally, a Northern District of California court has specifically rejected the argument that a defendant must produce actual contractual documentation in order to demonstrate that it worked under reasonably precise specifications. <u>See Ballenger v. Agco Corp.</u>, 2007 WL 1813821, at *3 (N.D. Cal. June 22, 2007) (stating that to require past contracts would frustrate the purpose of § 1442). In this action, based on the declarations of Admiral Lehman and Dr. Cushing, it is possible to find that the Navy set forth reasonably precise specifications regarding the use of warnings, such that Defendants have a basis for asserting a colorable federal defense.

**b. Conformity to Reasonably Precise Specifications**

As to the second element of the government contractor defense, Defendants must show that the products supplied to the U.S. Navy

conformed to the reasonably precise specifications set forth by the
Navy.  Essentially, Defendants must show that the Navy received what
it sought.  Based on the declarations by Admiral Lehman and Dr.
Cushing, it can be inferred that any deviation from the Navy's
specifications would have resulted in rejection of the equipment.
(See Cushing Dec., at 4-5; Lehman Dec., at 4.)  Thus, if Plaintiff
Reaser had been exposed to asbestos on naval vessels where Defendants
had supplied asbestos-containing equipment, it is likely that this
equipment conformed to the detailed specifications set forth by the
Navy.  Had this equipment not complied with the Navy's specifications
regarding design, installation, and warnings, it is a fair inference
that the equipment would not have been placed on the ships.  (Lehman
Dec., at 4-5.)

### c.  **Warnings by Defendants**

Finally, the third element of the military contractor defense
requires that Defendants did not fail to warn the Navy of any dangers
associated with asbestos that were known by Defendants but not the
government.  As the Supreme Court in Boyle noted, "[t]he third
condition is necessary because, in its absence, the displacement of
state tort law would create some incentive for the manufacturer to
withhold knowledge of risks, since conveying that knowledge might
disrupt the contract but withholding it would produce no liability."
Boyle, 487 U.S. at 512.  Dr. Lawrence Betts, a retired Navy captain,
states in his declaration that the Navy's knowledge regarding the
dangers of asbestos and its health effects represented the state of
the art.  (Betts Dec., at 18.)  Furthermore, he notes that "[d]uring

10

the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos-containing products . . . on United States Navy ships known by a manufacturer . . . that was not known by the United States and the United States Navy." (Id.)  Based on this evidence, it seems possible to find that the information possessed by the Navy exceeded any information that could have been provided by Defendants, such that the third element is sufficiently satisfied for raising a defense.  Therefore, it appears that Defendants have raised a colorable federal defense.

### 3.   Causal Nexus

The final prong necessary to satisfy federal officer removal requires Defendants to demonstrate that the Navy controlled the warnings Defendants could place on its equipment and that this control prevented Defendants from fulfilling its alleged state law duty to warn of the dangers associated with asbestos exposure. Essentially, there must be a causal nexus between the claims against Defendants and the acts they performed under color of federal office. Ballenger, 2007 WL 1813821at *3-4.  Similar to the second prong, Defendants must simply show the existence of a likely causal connection, not prove such a connection.  See Jefferson County v. Acker, 527 U.S. 423, 432 (1999) ("Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute . . . so would demanding an airtight case on the merits in order to show the required causal connection.") Again, as shown above by the declarations of Lehman, Cushing, and Betts, the Navy had direct control over all aspects of the equipment

11

1  supplied to its ships.  It can therefore be inferred that the reason

2  why Defendants did not place warnings on their equipment was because

3  such warnings were precluded by the Navy's detailed specifications.

4  (See Lehman Dec., at 4.)  Plaintiffs allege that Defendants failed to

5  warn of asbestos dangers, yet this alleged failure to warn,

6  Defendants assert, resulted from the Navy's prohibitions and/or

7  control over any such warning.  Therefore, Defendants adequately show

8  a causal nexus between Plaintiffs' claims and Defendants' actions.

9       Because Defendants have adequately asserted a colorable federal

10  defense and a causal nexus between Plaintiffs' claims and Defendants'

11  acts performed under the direction of the Navy, it appears that

12  Defendants satisfy the three prongs of § 1442(a)(1).

13

14      **C.   Disclaimer**

15       Plaintiffs additionally argue that removal is improper because

16  of disclaimers appearing in the Complaint. Plaintiffs include two

17  disclaimers in the Complaint. The first disclaimer does not operate

18  to disclaim any cause of action subject to federal officer removal.

19  (Complaint, at ¶ 4.) The second disclaimer, however, specifically

20  disclaims "any cause of action or recovery for any injuries resulting

21  from exposure to asbestos dust caused by any acts or omissions of a

22  party Defendant committed at the direction of an officer of the

23  United States Government." (Id.) However, because removal pursuant to

24  the federal officer removal statute is premised on the existence of a

25  colorable federal defense, rather than the manner in which a

26  plaintiff's complaint is constructed, courts have found that neither

27  a plaintiff's disclaimer nor its characterization of his claims is

28

12

determinative. <u>See</u> <u>Oberstar</u>, No. CV 08-118 PA at 3. <u>See also</u> <u>Durham</u>,
445 F.3d at 1253 ("[R]emovals under section 1441 are subject to the
well-pleaded complaint rule, while those under section 1442 are
not."); <u>Ballenger</u>, 2007 WL 1813821 at *2 ("Under the federal office
removal statute, suits against federal officers may be removed
despite the nonfederal cast of the complaint.")  The Court takes a
similar view.  Plaintiffs' second disclaimer effectively mirrors
Defendants' federal contractor defense and so in no way prevents
litigation of the applicability of that defense in state court, which
is precisely what the federal officer removal statute seeks to avoid.
To grant a plaintiff's motion for remand based on such a disclaimer
would, therefore, render the federal officer removal statute
completely ineffectual in the face of an "artfully constructed"
complaint.  <u>Oberstar</u>, No. CV 08-118 at 3.  The Court cannot allow
Plaintiffs to evade federal officer removal in such a fashion.

Plaintiffs rely on <u>Westbrook v. Asbestos Defendants</u>, where the
court, when faced with similar facts and evidence, found the
plaintiffs' disclaimer to be determinative and remanded the case back
to state court. 2001 WL 902642 at *3 (N.D. Cal. July 31, 2001).
However, <u>Westbrook</u> is distinguishable from the present case in that
the plaintiffs in <u>Westbrook</u> disclaimed "any claims arising out of
work done on United States Navy ships." <u>Id.</u> at *2.  In other words,
the plaintiffs in <u>Westbrook</u> specifically waived any causes of action
stemming from asbestos exposure on naval vessels; instead premising
their claims on injuries arising from work done on private ships.
<u>Id.</u>  As a result, unlike in the present case, the parties in
<u>Westbrook</u> had no need to litigate any issue resembling the federal

13

contractor defense in order to determine the applicability of the plaintiffs' disclaimer. Therefore, remand in that case did not undermine the purposes of § 1442(a)(1), as remand here would, and so was appropriate.

**III. Conclusion**

Based on the foregoing reasons, Plaintiffs Robert and Christine Reaser's Motion for Remand is DENIED.

IT SO ORDERED.

DATED:    June 23, 2008

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

FILED

2009 Oct-29 AM 11:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| C. Kevin Reddick | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Remand filed by plaintiffs Robert and Linda Oberstar ("Plaintiffs") (Docket No. 7). Also before the Court is a Motion to Stay originally filed in case number 08-143 PA (JWJx) by defendant General Electric Co. (Docket No. 5).[1/] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for February 11, 2008, is vacated, and the matters taken off calendar.

Plaintiffs allege claims for negligence, strict liability, and loss of consortium arising out of Mr. Oberstar's exposure to asbestos-containing products manufactured, fabricated, installed, or otherwise distributed by defendants. Specifically, Plaintiffs' claims assert that defendants violated their obligations imposed under state law to warn Mr. Oberstar of the dangers associated with their asbestos-containing products. Among other places, Plaintiffs allege that Mr. Oberstar was exposed to the asbestos contained in defendants' products while he served aboard the aircraft carrier U.S.S. Midway from 1959 to 1963. Plaintiffs commenced the action in Los Angeles Superior Court on December 3, 2007 and served defendants Viad Corp. ("Viad") and General Electric Co. ("GE") on December 10, 2007. Viad removed the action to this Court on January 8, 2008 and GE filed a Notice of Removal on January 9, 2008. Both Viad and GE based their Notices of Removal on 28 U.S.C. § 1442(a)(1)'s federal officer removal statute. 28 U.S.C. § 1442(a) provides, in relevant part:

> A civil action or criminal prosecution commenced in a State court against
> any of the following may be removed by them to the district court of the

---

[1/]     Because defendants General Electric Co. and Viad Corp. filed separate Notices of Removal, there were originally two case numbers assigned to this action. Because both case numbers referred to the same case originally filed by plaintiffs in Los Angeles Superior Court, the Court consolidated the two actions into CV 08-118 PA (JWJx), dismissed CV 08-143 PA (JWJx), and directed that all future filings should reference only CV 08-118 PA (JWJx). Plaintiff also filed a Motion to Remand in CV 08-143 PA (JWJx) (Docket No. 14). That Motion will be addressed in this Order.

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | |

United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a).

Suits against federal officers are an exception to the general rule that a case is removable only if the federal question appears on the face of a properly pleaded complaint. See Jefferson County v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075, 144 L. Ed. 2d 1069 (1999). "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Id. "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting Jefferson County, 527 U.S. at 431, 119 S. Ct. 2075, 144 L. Ed. 2d 408 and citing Mesa v. California, 489 U.S. 121, 124-25, 131-35, 109 S. Ct. 959, 962, 965-67, 103 L. Ed. 2d 99 (1989)).

In establishing the propriety of removal under the federal officer removal statute, the defendant need not prove a valid federal defense, only a colorable defense:

> In construing the colorable federal defense requirement, we have rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." We therefore do not require the officer virtually to "win his case before he can have it removed."

Jefferson County, 527 U.S. at 431, 119 S. Ct. at 2075, 144 L. Ed. 2d 408 (quoting Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969)). Indeed, unlike other removal statutes, which are to be interpreted strictly, "the Supreme Court has mandated a generous interpretation of the federal officer removal statute . . . ." Durham, 445 F.3d at 1252. As the Supreme Court has held, "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" Arizona v. Manypenny, 451 U.S. 232, 242, 101 S. Ct. 1657, 1664, 68 L. Ed. 2d 58 (1981) (quoting Willingham, 395 U.S. at 407, 89 S. Ct. at 1816, 23 L. Ed. 2d 396); see also Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-118 PA (JWJx) | | Date | February 11, 2008 |
|---|---|---|---|---|
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | | |

In removing the action pursuant to the federal officer removal statute, defendants claim that they are entitled to assert the "military contractor defense." The military contractor defense shields contractors from liability for state tort law for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Technologies Corp., 487 U.S. 500, 512, 108 S. Ct. 2510, 2518, 101 L. Ed. 2d 442 (1988). Although originally developed in the design defect context, the military contractor defense also applies in cases where a plaintiff alleges that the government contractor breached a state law duty to warn of potential dangers. In actions alleging a failure to warn claim against a military contractor, the supplier cannot be liable when it can show: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-04 (7th Cir. 1996); see also In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (9th Cir. 1992).

As an initial matter, Plaintiffs argue in their Motions to Remand that they have disclaimed any claim that could allow this Court to exercise jurisdiction pursuant to the federal officer removal statute. Specifically, the Complaint alleges:

> Plaintiffs hereby disclaim any cause of action or recovery for any injuries
> caused by any exposure to asbestos dust that occurred in a federal enclave,
> which expressly excludes U.S. Navy vessels. Plaintiffs disclaim any cause
> of action or recovery for any injuries resulting from exposure to asbestos
> dust caused by any acts or omissions of a party Defendant committed at
> the direction of an officer of the United States Government.

Complaint, ¶ 4. In support of their argument that their waiver of claims prevents defendants from removing this action pursuant to § 1442(a)(1), Plaintiffs principally rely on Westbrook v. Asbestos Defendants (BHC), No. C-01-1661 VRW, 2001 WL 902642 (N.D. Cal. July 31, 2001). In Westbrook, the district court relied upon the plaintiff's disclaimer of "any claims arising out of work done on United States Navy ships" to support its conclusion that federal officer removal was not proper. Unlike in Westbrook, Plaintiffs here have not disclaimed claims against defendants arising out of exposure occurring on Navy vessels. Indeed, despite their purported disclaimer, Plaintiffs specifically seek damages from defendants for exposure to asbestos Mr. Oberstar may have come in contact with while he served on the U.S.S. Midway. Because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiffs' disclaimer nor its characterization of their claims are determinative. See Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007) ("Machnik's argument that the suit must be remanded because his complaint disclaimed any federal claims is unavailing . . . . Subject matter jurisdiction under § 1442(a)(1) is based upon a federal defense, regardless of whether the

---

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

plaintiff's cause of action rests on state law. . . . [O]nce GE meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction."); Ballenger v. Agco Corp., No. C 06-2271 CW, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007) (denying motion to remand despite complaint's disclaimer of "any claim arising from any act or omission of the United State, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States").

Plaintiffs additionally argue that defendants have not met their burden to establish the existence of a valid federal defense to Plaintiffs' claims. Specifically, while conceding that defendants are "persons" within the meaning of § 1442(a)(1), Plaintiffs contend that defendants have not demonstrated that they can assert either a "colorable federal defense" or a "causal nexus" between their actions taken at the direction of a federal officer and Plaintiffs' claims. Durham, 445 F.3d at 1251. According to Plaintiffs, defendants lack the evidence to establish that federal officers prevented defendants from providing necessary warnings. As a result, according to Plaintiffs, defendants cannot prove either the applicability of the military contractor defense or the requisite causal nexus.

In their Motions to Remand, Plaintiffs state that their "complaint contains causes of action limited to state-based failure to warn claims." Motion to Remand, p. 6, ll. 8-9. Similarly, in their Reply, Plaintiffs state that they "did not necessarily sue GE or Viad for using asbestos, but rather for failing to warn of the hazards associated with it. Both GE and Viad claim they were acting under federal direction when they designed and manufactured their equipment, but such a showing is immaterial for purposes of this lawsuit and motion for remand." Reply, p. 8, ll. 4-8. According to Plaintiffs, absent evidence of specific facts that defendants were prevented from placing warnings on their products, defendants cannot meet their burden to establish the availability of the military contractor defense. Contrary to Plaintiffs' assertions, however, defendants' burden at this stage of the proceedings is not so exacting.

To establish their military contractor defense, defendants rely in large part on the declarations of Ben Lehman and Lawrence Betts. Lehman is a retired Rear Admiral, who joined the Navy in 1942 and served as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944 and as Ship Superintendent at the San Francisco Naval Shipyard from 1952 to 1954. Lehman also worked as an engineer at GE from 1946 to 1948. Betts, a physician, served in the Navy from 1972 until 2001 when he retired with the rank of Captain.

Lehman's declaration indicates that during the period when the U.S.S. Midway was built and continuing during Mr. Oberstar's service in the Navy, "the Navy had complete control over every aspect of each piece of equipment used on Navy ships." Lehman Decl., ¶ 6. According to Lehman:

> Military specifications governed every characteristic of this equipment,
> including instructions and warnings. Drawings for nameplates, texts of
> instruction manuals, and every other document relating to the

| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 4 of 6 |
|---|---|---|

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
| Title | Robert Oberstar, et al. v. CBS Corp., et al. | | |

> construction, maintenance, and operation of the vessel was approved by the Navy. This control included the decision of what warnings should or should not be included. Thus, the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment.
>
> Furthermore, the Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment, including turbines and turbine manuals. The Navy was intimately involved with and had final approval of all technical and engineering drawings, operating manuals, safety or hazard information, and any other written information that accompanied a piece of equipment. The Navy determined the nature of hazards to be subject to any precautionary labeling and the content of any such labeling. . . . In short, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation, and warnings associated with its ships and did not permit deviation by any of its contractors.

Lehman Decl., ¶¶ 6 & 7. In reviewing a nearly identical declaration submitted by Lehman, the court in Nesbiet v. General Elec. Co. concluded that Lehman's Declaration raised "the inference that GE did not provide a warning concerning the dangers of asbestos because the Navy did not permit any such warning." 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005). Although the Lehman Declaration may not establish the absence of a triable issue of fact with respect to the first two prongs of the Boyle test, as modified by Oliver for a failure to warn claim, defendants need not prove so much at this preliminary stage of the proceedings. See Oliver, 96 F.3d at 1003 (applying military contractor defense when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government . . . ."). Again, to establish the propriety of their removal, defendants must only show a "colorable" federal defense, not a winning one.

The third prong of the military contractor defense requires the contractor to have "warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Id. at 1004. Defendants rely on the Betts Declaration to meet this third factor of the Boyle test. Through his training and experience, Betts became familiar with "the history and practice of the Navy occupational health program from its early days before World War II until the present time." Betts Decl., ¶ 2. According to Betts, the "Navy's knowledge regarding the applications of asbestos and the health effects represented the state of the art. During the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos-containing products on a marine steam turbine on United States Navy ships known by a turbine manufacturer, like General Electric Company, that was not known by the United States and the United States Navy." Id., ¶ 30. Based upon the Betts Declaration, defendants have provided sufficient evidence that there were no dangers known by them that were not known to the government. See Nesbiet, 399 F. Supp. 2d at 209 ("[A]ccording to Betts's affidavit, GE could not have possessed any information regarding the dangers

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-118 PA (JWJx) | Date | February 11, 2008 |
|---|---|---|---|

| Title | Robert Oberstar, et al. v. CBS Corp., et al. |
|---|---|

posed by the use of asbestos-containing products in marine steam turbines that was not already known by the U.S. Navy.").

The Court therefore concludes that defendants have met their burden, at this stage of the proceedings, to establish a "colorable" military contractor defense for purposes of removal under § 1442(a)(1).[2]  The Court also finds that defendants have submitted sufficient evidence of a "causal nexus" between Plaintiffs' claims and the actions defendants took at the direction of a federal officer. As did the court in Nesbiet, this Court finds that defendants' evidence "is sufficient for purposes of section 1442(a) to demonstrate that the Navy's control over warnings directly interfered with GE's duty to warn under state law. Thus, GE [and Viad] ha[ve] satisfied the 'causal nexus' requirement." Id. at 213.

For all of the foregoing reasons, the Court finds that defendants have raised a "colorable" federal defense to the claims alleged in Plaintiffs' Complaint. As a result, defendants' removals pursuant to § 1442(a)(1) were proper. Plaintiffs' Motions to Remand are therefore denied. With respect to the Motion to Stay, GE seeks to stay this action pending the anticipated transfer of this action to the Eastern District of Pennsylvania as a potential "tag-along action" to Multidistrict Litigation Number 875. According to GE, transfer to the MDL is "imminent." Assuming this is true, GE will suffer little if any prejudice between now and the time this case is eventually is transferred to the MDL should no stay be imposed. Accordingly, the Court finds that GE has failed to establish the necessity for a stay. The Court therefore declines to stay these proceedings.

IT IS SO ORDERED.

---

[2]  The Court recognizes that when faced with arguably similar evidence, other courts have reached a different result. See, e.g., Hilbert v. McDonnell Douglas Corp., No. 07CV11900-NG, 2008 WL 53266 (D. Mass. Jan. 3, 2008). The Court declines to follow Hilbert because, in the Court's view, Hilbert places too high a burden on a defendant to prove its military contractor defense at such an early stage in the litigation. Given the liberality with which removals under § 1442 are to be considered, Hilbert's more exacting standard appears to conflict with Ninth Circuit precedent. See Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").