UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Apr 28, 2010

FILED
CLERK'S OFFICE

# UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **MDL NO. 875** ) | |
| ) | **CTO #334** |
| **KRIS M. CHILDERS,** individually, and ) | |
| as the personal representative of the ) | **Civil Action No.:** |
| Estate of **DAYTON SHEPHERD**, ) | |
| deceased, ) | **CV 10-PWG-0944-S** |
| ) | **(ALN-2 10:944)** |
| **Plaintiffs,** ) | |
| **v.** ) | |
| ) | **JURY DEMAND** |
| **LONG-LEWIS, INC.,** individually and ) | |
| as successor to **BURRELL CORP.,** f/k/a ) | |
| **LONG LEWIS HARDWARE** ) | |
| **COMPANY; et al.,** ) | |
| ) | |
| **Defendants.** | |

## NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER

Kris M. Childers, individually and as the personal representative of the Estate of Dayton Shepherd, deceased, ("Plaintiffs"), by and through undersigned counsel, hereby oppose the Conditional Transfer Order, filed in the above-captioned case, to the United States Judicial Panel on Multidistrict Litigation, MDL No. 875 for the following reasons:

1. Plaintiffs have filed a Motion to Remand in the United States District Court for the Northern District of Alabama, Southern Division to be heard May 11, 2010 by the Honorable Chief Magistrate Judge Paul W. Greene.

2. The Order from Magistrate Judge Green, filed in United States District Court for the Northern District of Alabama, Southern Division, granting Plaintiffs' hearing on the Plaintiffs' Motion to Remand is attached as Exhibit "A."

3. Plaintiffs' Brief in Support of Motion to Remand is attached hereto as Exhibit "B."

4.  Plaintiffs' Notice of Opposition to the Conditional Transfer Order filed in the United States District Court for the Northern District of Alabama, Southern Division is attached hereto as Exhibit "C."

Wherefore, Plaintiff's respectfully oppose the Conditional Transfer Order.


Respectfully Submitted,

S/*Katherine McFarland*

Katherine McFarland, Esq.
*Attorney for Plaintiff*
LEVIN PAPANTONIO THOMAS MITCHELL
ECHSNER & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996
Telephone: (850) 435-7000

KMCFARLAND@LEVINLAW.COM


April 20, 2010

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Apr 28, 2010

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2010, a copy of the foregoing was filed by electronic mail through the Multidistrict Litigation Panel.  Notice of this filing will be available to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court system.

_____S/*Katherine McFarland*_____

Katherine McFarland, Esq.
*Attorney for Plaintiff*

FILED

2010 Apr-16  PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PLAINTIFFS'
EXHIBIT
A

| | |
|---|---|
| KRIS M. CHILDERS, individually, and as the personal representative of the Estate of DAYTON SHEPHERD, deceased | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 10-PWG-944-S ) |
| LONG-LEWIS, INC., individually and as successor to BURRELL CORP., f/k/a LONG LEWIS HARDWARE COMPANY; et al., | ) ) ) ) ) |
| Defendants. | ) ) |

O R D E R

On February 26, 2010, Kris M. Childers, as the personal representative of the estate of

Dayton Shepherd, a citizen of Alabama, initiated this wrongful death civil action under Alabama law

alleging that during Mr. Shepherd's term of employment with the United States Air Force from 1949

until 1962 and Shepherd Chevrolet-Oldsmobile of Aliceville, Alabama, from 1973 until 1999, he

was "... exposed to primary asbestos contamination while working as an aircraft and automobile

mechanic." (Doc. #1, Exhibit A, State Action Complaint at p.4 (CV 2010-900655.00)).  The

complaint filed by Ms. Childers alleges that as a result of this exposure, Mr. Shepherd contracted

mesothelioma, an asbestos related disease which is fatal, leading to his death on or about March 21,

2009.  *Id.*  Ms. Childers has named both Alabama citizens and the citizens of other states as

defendants in her action.[1]  On April 12, 2010, one of the foreign defendants, United Technologies

---

[1]     Alabama defendants includes Birmingham Rubber and Gaskin Co., (3); Long-Lewis, Inc. (19); McConnell Sales and Engineering Corp. (21); Refractory Sales and Service Co., Inc. (26) and Wittichen Supply Co. (29).

Corporation (UTC),[2] removed the action from the Circuit Court of Jefferson County, Alabama, to

the United States District Court for the Northern District of Alabama purportedly pursuant to 28

U.S.C. § 1442(a)(1) and § 1446 asserting jurisdiction of the federal court is found or established as

a product of a "Military Contractor Immunity" theory.  (Doc. #1).  UTC contends, *inter alia*, that

removal is proper without the consent of the remaining defendants presumably including the non-

diverse defendants.

The plaintiff has filed a motion to remand (doc. #13),[3] as well as a notice of opposition to

a conditional transfer order (doc. #11) and requests an emergency hearing (doc. #12).[4]

---

[2]    UTC claims that it was "improperly sued as Pratt & Whitney Power Systems, a division of United
Technologies."

[3]    The motion is, to say the least, "bare bones." In a demonstration of perspicacity or prescience or both, however,
Ms. Childers noted at paragraph 3 of her complaint that as to:

### REMOVAL

3. Removal of this action is improper for the following reasons: (a) the federal
courts lack subject matter jurisdiction over this action; (b) this action does not
involve a federal question; (c) there is lack of complete diversity of citizenship
between the Plaintiff and Defendants; (d) the presence of Alabama defendants
eliminates the Defendants' right of removal even when there is complete diversity
of citizenship between the plaintiff and defendants; (e) the Plaintiff expressly
disclaims every claim arising under the Constitution, treaties or law of the United
States (including any claim arising from an act or omission on a federal enclave, or
by any officer of the United States or any agency or person acting under him/her
under color of such office); (f) no claim of admiralty or maritime law is raised; (g)
the Plaintiff sues no foreign state or agency; and (h) the Circuit Court of Jefferson
County, Alabama, is proper venue for this action.

Paragraph 3(a)(b)(c)(d) appear applicable and (e) certainly is. (Doc. #1-1, p. 16 of 24).

[4]    The motion avers that on April 13, 2010, a conditional transfer order "... was filed in the above-referenced
matter." The order itself does not appear before the court nor does the plaintiffs' motion identify the deadline,
if any, by which an opposition is due to be recorded.

## JURISDICTION–GENERAL PRINCIPLES

The United States District Court for the Northern District of Alabama is a creation of Congress under the United States Constitution, Article III, and possesses only that portion of the constitutionally permissible field of Article III jurisdiction specifically granted to it.  The contours of that jurisdiction may not, and must not, be expanded by judicial usurpation. *Snyder v. Harris*, 394 U.S. 332, 341, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969).  "Subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power.  Whether raised by the litigants or not the federal courts, including appellate courts, are duty-bound to determine jurisdiction and dismiss [or remand] any case in which it is found to be wanting." *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983). Subject-matter jurisdiction can never be waived nor conferred by the consent of the parties. *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).  As the Supreme Court has explained that "'the rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, [and] requires this court, of its own motion, to deny its jurisdiction, and, ... that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.'" *Insurance Corporation of Ireland*, 456 U.S. at 702, 102 S.Ct. at 2104 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)).

It is well-settled that the defendants, as the parties removing an action to federal court, bear the burden of establishing federal jurisdiction. See *Diaz v. Shepherd*, 85 F.3d 1502, 1505 (11th Cir. 1996). Removal statutes must be strictly construed because of the significant federalism concerns raised by removal jurisdiction. *See Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 61

3

S.Ct. 868, 85 L.Ed. 1214 (1941). Placing the burden on the removing defendant and resolving all

doubts in favor of plaintiff as against the defendant is consistent with, if not required by, the

Constitution and statutory limitation on the exercise of federal judicial power. *B, Inc. v. Miller

Brewing Company*, 663 F.2d 545 (5th Cir. 1981).[5]

The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), grants officers of the federal

government the right to remove civil and criminal actions brought against them in state court on

account of their official acts. In *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99

(1989), the Supreme Court construed the statute to permit removal by federal employees. This body

of law was applied to private contractors working for the federal government in *Boyle v. United

Technologies Corp.*, 487 U.S. 500, 511-12, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).[6] In *Boyle*, a

diversity action, the plaintiff's estate alleged that the design defect in a helicopter manufactured by

the defendant caused the plaintiff's death. The Court held that private military contractors could

claim protection against state tort law liability for injury caused by the products they manufactured

according to the government's explicit specifications. The court acknowledged the state's interests

in adjudicating state tort law, but concluded that on occasion unique federal interests, such as those

implicated in *Boyle*, displaced that law. Taken together, *Boyle* and *Mesa* at least nominally permit

private military contractors to stand in the shoes of federal officers who are sued in state court, if

they can allege a colorable "federal contractor defense," and remove the action to federal court (and

thereafter to an MDL docket). It is significant that *Boyle* itself, however, emphasized that federal

---

[5]/   The court acknowledges, of course, that the plaintiffs' actual "motion to remand" is little more than a book mark. The plaintiffs have informed both the court and the defendants that she will explain later why remand should occur. Separate and distinct from the plaintiffs' obligations related to removal are the court's Article III obligations to determine subject matter jurisdiction at any stage of the proceeding.

[6]/   Presumably the institutional memory of UTC recalled *Boyle*.

common law does not lightly displace state law. See *Boyle*, 487 U.S. at 518, 108 S.Ct. 2510. As

the paradigmatic case involving the manufacture of military equipment, *Boyle* acknowledged that

the government may make a trade off between effectiveness of such equipment and safety. *Boyle*,

487 U.S. at 511, 108 S.Ct. at 2510. In such a case, the court observed that "it makes little sense to

insulate the government against financial liability for the judgment that a particular feature of

military equipment is necessary when the government produces the equipment itself, but not when

it contracts for the production." (*Id.*, at 512, 108 S.Ct. 2510). Thus, the Court concluded that state

law that holds government contractors liable for design defects in military equipment, where those

defects derived from "reasonably precise specifications" in government contracts presents a conflict

of federal policy and must be displaced. (*Id.*, at 513, 108 S.Ct. 2510).

## PROCEDURAL POSTURE

Many times in an action that is or may become subject to a conditional transfer order, the

removing defendant seeks a stay of the action in the district of filing in order to await the MDL

transfer. In the instant case, it is the plaintiff that has acted first in seeking to both oppose and avoid

the transfer. Without regard to which party initiated the current controversy, "the district court has

broad discretion to stay a proceeding as an incident to its power to control its own dockets." *Clinton*

*v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). In determining the

appropriate procedural remedy "the court, in its sound discretion, must assess and balance the nature

and substantiality of the injustices claimed on either side." *Feld Entertainment, Inc. v. A.S.P.C.A.*,

523 F. Supp. 2d 1, 3 (D. D.C. 2007). A conditional transfer order would have the effect of

transferring this action to the United States District Court for the Eastern District of Pennsylvania

in an action apparently styled under MDL No. 875, *In Re Asbestos Products Liability Litigation No.*

5

VI.[7]  The issue presented in the notice of removal, and presumably the subject of the plaintiff's

motion to remand, address the propriety of removal under 28 U.S.C. § 1442(a)(1).  As such, the

question does not raise issues exclusively within the area of the expertise of the MDL Court.  This

court is as qualified to evaluate the factors necessary to establish federal jurisdiction as any other

federal court.  Where, as here, a motion to remand does not "implicate [ ] issues that are within the

exclusive jurisdiction of the MDL Court ... the motion [    ] to remand can be resolved without

encroaching on the exclusive territory of the MDL court."  *In Re Massachusetts Diet Drug*

*Litigation*, 338 F. Supp. 2d 198, 201 (D. Mass. 2004).  Motions to remand are appropriately

considered before any other judicial act, including the act of transfer, because "issues affecting the

court's subject matter jurisdiction are 'fundamentally preliminary.'"  *Wren-Dan Farms, Inc. v.*

*Monsanto Company*, 952 F. Supp. 370, 373 (W.D. La. 1997) (quoting *Leroy v. Great Western*

*United Corporation*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464, 472 (1979)) ("A court

considers challenges to subject matter jurisdiction before determining whether personal jurisdiction

exists or venue is proper.")  *Id.*, citing *Leroy*, 443 U.S. at 180, 99 S.Ct. at 2714.  In the instant case

there is neither controlling authority currently identified nor compelling reasons which tend to

establish the superiority of the Eastern District of Pennsylvania to resolve the pedestrian

jurisdictional issue implicated by the Notice of Removal.  If Ms. Childers must proceed in the

Eastern District of Pennsylvania to obtain her remedy, she is entitled to know that now.  If Ms.

Childers and the non-"contractor" defendants are entitled to remain in the Circuit Court of Jefferson

---

[7]/     As defined in Rule 1.1 of the *Rules of Procedure of the Judicial Panel on Multi-District Litigation*, "[a] 'tag-along' action refers to a civil action pending in a district court and involving common questions of fact with actions previously transferred under § 1407."  199 F.R.D. 425, 435-36 (2001).  See also Rule 7.4 (discussing conditional transfer orders for "tag-along" actions) and 7.5 (miscellaneous provisions concerning a "tag-along" actions).

County for whatever reason, they are entitled to that notice as well. Because UTC bears the burden of advancing a colorable defense arising out of a duty to enforce federal law and establishing that the challenged acts were performed under color of federal office, UTC must satisfy that burden in the Northern District of Alabama. UTC must establish a colorable defense arising from a duty to enforce federal law which means the defense must be at least "plausible." *Magin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (citing *Mesa*, 489 U.S. at 129, 109 S.Ct. 959.

ORDER

It is therefore ORDERED that the plaintiffs' motion for "emergency" hearing is GRANTED. (Doc. #12). The plaintiffs' notice of opposition to potential conditional transfer is NOTED. (Doc. #11). The plaintiffs are DIRECTED to amend and submit the Motion to Remand not later than April 24, 2010. The response to the motion by UTC must be received not later than May 4, 2010.[8] A hearing is SCHEDULED for May 11, 2010 at 9:00 a.m. in Courtroom 3, United States Courthouse, Birmingham, Alabama.

As to the foregoing it is SO ORDERED this the 16th day of April, 2010.

_Paul W Greene_
_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

_____

[8] At this time the only parties involved in the removal/remand question are the plaintiff and UTC. No other defendant has joined in the removal, however, any defendant subject to the jurisdiction of this court may also file a response to the plaintiffs' motion within the same time frames.

FILED

2010 Apr-23  AM 09:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| KRIS M. CHILDERS, individually and as the personal representative of the Estate of DAYTON SHEPHERD, deceased, | ) ) ) ) ) | **PLAINTIFFS' EXHIBIT B** |
|     Plaintiff, | ) | **CIVIL ACTION NUMBER** |
| v. | ) ) | **2:10-cv-00944-PWG** |
| LONG LEWIS, INC., et al., | ) ) | **JURY DEMAND** |
|     Defendants. | ) ) | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND

---

Respectfully Submitted,

s/ Hirlye R. "Ryan" Lutz, III
HIRLYE R. "RYAN" LUTZ,III(ASB-6641-E59L)
ANNESLEY H. DeGARIS(ASB-9182-A63A)
CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue
Birmingham, Alabama 35205
PHONE: 205-271-7159
FACSIMILE: 205-324-7896


Dated:      April 23, 2010

**OF COUNSEL:**
Scott Barnes, Esquire
Katherine A. McFarland, Esquire
LEVIN PAPANTONIO THOMAS MITCHELL
ECHSNER & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996
Telephone: (850) 435-7000

# TABLE OF CONTENTS

A.  NATURE OF THE CASE...................................................................1

B.  THE CONTOURS OF THE FEDERAL OFFICER DEFENSE..........2

C.  THE FEDERAL CONTRACTOR DEFENSE...............................3

D.  DEFENDANT HAS FAILED TO DEMONSTRATE THAT IT IS
    ENTITLED TO REMOVAL BASED ON THE FEDERAL OFFICER
    REMOVAL STATUTE ("FORS").................................................6

    1.  *The Defendant Cannot Show Causal Nexus between the
        Navy and the Plaintiffs' Claims because the Navy Forbade
        Warnings about the Hazards of Asbestos*............................6

    2.  *Defendant UTC Failed to Sate any Federal Officer Under
        Whom Defendant UTC was Acting*......................................8

    3.  *Defendant UTC Failed to set Forth the Specifications and
        Regulations with which a Federal Officer Requires Defendant
        UTC's Work to Comply*.........................................................9

E.  FEDERAL COURTS AROUND THE NATION HAVE REPEATEDLY
    HELD THAT THE GOVERNMENT CONTRACTOR DEFENSE
    DOES NOT APPLY TO FAILURE TO WARN CASES................10

F.  THE REMOVAL REQUESTED BY DEFENDANT UTC IS
    CONTRARY TO LEGISLATIVE INTENT AND THIS REMOVAL
    IS IMPROPER......................................................................12

G.  IN THE ALTERNATIVE, PLAINTIFFS' REQUEST THIS
    HONORABLE COURT TO SEVER OUT THE CALIMS AGAINST
    UTC.................................................................................14

H.  CONCLUSION....................................................................15

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Boyle v. United Technologies Corp.,*
    487 U.S. 500, 511 (1988) ................................................................. **3,4,10,11**

*Butler  v. Ingalls Shipbuilding, Inc.,*
    89  F.3d 582, 585 (9th Cir. 1996).......................................................... **5,**

*Crocker  v. Borden, Inc.,*
    852 F.Supp. 1322 (E.D. LA 1994) ........................................................ **14**

*Densberger v. United Tech. Corp.,*
    283 F.3d 110 (2d Cir. 2002) ............................................................. **2,4,**

*Diaz v. Shepherd,*
    85 F.3d 1502, 1505 (11th Cir. 1996)...................................................... **2**

*Dorse v. Eagle Picher Indus.,*
    898 F.2d 1487 (11th Cir. 1990)......................................................... **5,11**

*Feidt v. Owens-Corning Fiberglas Corp.,*
    153 F.3d. 124, 127 (3d Cir. 1998)........................................................ **13**

*Freiberg v. Swinerton & Walberg Prop. Servs., Inc.,*
    245 F. Supp.2d 1144 (D. Colo. 2002) ..................................................... **5**

*Good v. Armstrong,*
    914 F. Supp. 1125, 1128- 29 (E.D. Pa. 1996) ...................................... **8,9,13**

*Harduvel  v. General Dynamics Corp.,*
    878 F. 2d 1311,1318 (11th Cir. 1989)..................................................... **5**

*Hilbert v.  McDonnell Douglas Corp.,*
    529 F.Supp.2d 187 (D. Mass. 2008) .................................................... **8,12**

*In re Joint Eastern and Southern District New York Asbestos Litigation,*
    897 F.2d 626, 630 (2nd Cir. 1990)....................................................... **11**

*In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.,*
    327 F. Supp. 2d 554 (D. Md. 2004) ....................................................... **5**

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,*

ii

500 U.S. 72, 111 S.Ct. 1700 (1991)............................................................... 12

*Kerstetter v. Pacific Scientific Co.*,
   210 F.3d 431 (5th Cir. 2000)................................................................ 11

*Kleemann v. McDonnell Corp.*,
   890 F.2d 698, 701-03 (4th Cir. 1989) ...................................................... 5

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375, 377 (1994).......................................................................... 2

*Megill v. Worthington Pump Co.*,
   1999 WL 191565 (D. Del.) ...................................................................... 12

*Mesa v. California*,
   489 U.S. 121, 124-125, 134-135 (1989) ............................................... 3,6

*Miranda v. Abex Corp. et al.*,
   08-CV-5509, 2008 WL 4778886 (S.D.N.Y. Oct. 31, 2008) ........................ 7,8,12

*New Jersey Dept. of Envtl. Prot. v. Exxon Mobil Corp.*,
   381 F. Supp.2d 398 (D.N.J. 2005) ....................................................... 9,11

*Oliver v. Oshkosh Truck Corp.*,
   96 F.3d 992 (7th Cir. 1996) ................................................................. 5,11

*Parlin v. Dyncorp Intl, Inc.*,
   2009 WL 3636756 (D. Del. Sept. 30, 2008)............................................... 8

*Pittsburgh Inst. of Aero. v. Allegheny County Airport Auth.*,
   2008 WL 2456491 (W.D. Pa.)................................................................... 8

*Reg'l Med. Transp. Inc. v. Highmark, Inc.*,
   541 F. Supp. 2d 718, 724 (E.D. Penn 2008)............................................... 9

*Shamrock Oil & Gas Corp. v. Sheets*,
   313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ..................................... 2

*Tate v. Boeing Helicopters*,
   55 F.3d 1150 (6th Cir. 1995)................................................................ 10,11

*Texas First Nat. Bank v. Wu*,
   347 F.Supp.2d 389, 294 (S.D. Tex. 2004) ................................................. 2

*Trevino v. General Dynamics Corp.*,
   865 F.2d 1474 (5th Cir. 1989) ................................................................ 5

*United Mine Workers v. Gibbs*,
   383 U.S. 715 (1996) ........................................................................... 14

*Vasquez v. Alto Bonito Gravel Plant Corp.*,
   56 F.3d 689, 694 (5th Cir. 1995) ........................................................... 2

*Williams v. General Electric*,
   418 F.Supp.2d 610 (M.D. Pa. 2005) ...................................................... 8

*Winters v. Diamond Shamrock Chemical Co.*,
   149 F.3d 387, 398 (5th Cir. 1998) ......................................................... 3

## STATUTES AND CODES

*Code of Federal Regulations*,
   29 C.F.R. § 1915.1001 ...................................................................... 13

*Federal Tort Claims Act*,
   28 U.S.C. §1346 ................................................................................. 3

*United States Code*,
   28 U.S.C. §1442 ................................................... 1,2,3, 8,9,12,13,15

*United States Code*,
   28 U.S.C. §1446 ................................................................................. 2

*United States Code*,
   28 U.S.C. §2680 ................................................................................. 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KRIS M. CHILDERS, individually and as the personal representative of the Estate of DAYTON SHEPHERD, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | **CIVIL ACTION NUMBER** |
| v. | ) ) | **2:10-cv-00944-PWG** |
| LONG LEWIS, INC., et al., | ) ) | **JURY DEMAND** |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND

Kris M. Childers, individually, and as the personal representative of the Estate of Dayton Shepherd, deceased, ("Plaintiffs"), by and through the undersigned counsel, pursuant to 28 U.S.C. § 1447 (c), hereby move this Court to Remand this entire matter to the Circuit Court of Jefferson County, Alabama, and in support thereof, states as follows:

### A.    Nature of the Case

On February 26, 2010, Kris Childers, individually and as personal representative of the estate of Dayton Shepherd, an Alabama citizen, filed this wrongful death civil action under Alabama law. During Mr. Shepherd's employment with the United States Air Force from 1949 to 1962, Mr. Shepherd was exposed to asbestos as an aircraft mechanic, working on the Defendant's

1

engines. As a result of his exposure to asbestos, Mr. Shepherd developed mesothelioma, a fatal and aggressive cancer, and subsequently died March 21, 2009. On April 12, 2010, Defendant United Technologies Corporation ("UTC") filed a Notice of Removal of this action to the United States District Court for the Northern District of Alabama, alleging the federal court retains jurisdiction under U.S.C. § 1442(a)(1) and §1446, commonly referred to as the "government contractor defense."

Plaintiffs' filed a Motion to Remand, a Notice of Opposition to the Conditional Transfer, and Requested an Emergency Hearing, which hearing the Court granted and scheduled for May 11, 2010 in an Order entered April 16, 2010. Additionally, Defendant UTC's reply to Plaintiff's Brief in Support of Motion to Remand is due May 4, 2010.

## B.    The Contours of the Federal Officer Defense

Defendant UTC argues that removal of the instant case to federal court, and subsequently, the federal MDL, is warranted under the Federal Officer Removal Statute ("FORS"), pursuant to 28 U.S.C. §1442(a)(1). It is well settled that the Defendant bears the burden of establishing federal jurisdiction. See *Diaz v. Shepherd,* 85 F.3d 1502, 1505. (11th Cir. 1996). Case law is clear that,

> "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute ... which is not to be expanded by judicial decree

2

. . It is to be <u>presumed that a cause lies outside this limited jurisdiction</u> . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994) (citations omitted, emphasis added.

Accordingly, courts ruling on motions for remand must resolve any doubt in favor of remand. *See Vasquez v. Alto Bonito Gravel Plant Corp.,* 56 F.3d 689, 694 (5th Cir. 1995); *Texas First Nat. Bank v. Wu,* 347 F.Supp.2d 389, 294 (S.D. Tex. 2004). See also, *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

In order to remove a case under the FORS, a defendant has the obligation to satisfy three criteria. Specifically the defendant must, (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to plaintiff's claims; and (3) demonstrate a causal nexus between plaintiff's claims and the acts defendant performed under color of federal office. See *Mesa v. California,* 489 U.S. 121, 124-125, 134-135 (1989).

The Federal Officer Removal Statute (28 U.S.C. §1442(a)(1)) provides federal jurisdiction over claims "against any officer of the United States or any agency thereof, or any person acting under him, for any act under color of such office...." Under this statute, however, a defendant must establish that: (1) it is a "person"; (2) it acted "pursuant to a federal officers directions" and that a "causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims"; and (3) it has a "colorable federal defense." *Mesa* at 123-

3

34, *see also Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398

(5th Cir. 1998). The defendant cannot meet all of these requirements.

## C.   The Federal Contractor Defense

Assuming the applicability of the *Mesa* standard to private contractors, the

Defendant is not obliged to prove that the federal contractor defense will be

successful -- only that it has some basis in law and fact. *Id.* 489 U.S. at 128.

The outlines of the "federal contractor defense" were provided in *Boyle v.*

*United Technologies Corp.*, 487 U.S. 500, 511. In the Federal Tort Claims Act,

28 U.S.C. § 1346(b), Congress authorized damages to be recovered against the

United States for harm caused by the negligent or wrongful conduct of

government employees, to the extent that a private person would be liable under

the law of the place where the conduct occurred. It excepted from this consent to

suit, however, any claim based on the exercise or performance or the failure to

exercise or perform a discretionary function or duty on the part of a federal agency

or an employee of the government, whether or not the discretion involved was

abused. 28 U.S.C. § 2680(a).

The *Boyle* Court noted, "it makes little sense to insulate the Government

against financial liability for the judgment that a particular feature of military

equipment is necessary when the Government produces the equipment itself, but not

when it contracts for the production." *Id.* at 512. Thus, the Court concluded that

state law that holds government contractors liable for design defects in military

equipment, where those defects derived from "reasonably precise specifications" in government contracts, presents a conflict with federal policy and must be displaced. *Id.* at 513. However, the Court made clear that the existence of a federal interest is not sufficient to warrant displacement of state law. State law will be preempted only if there is a significant conflict between defendant's contractual duties to the federal government, and its state law duties. *Id.*

In its decision, the Court announced a three-part test for determining when state tort law is displaced by federal common law in a suit against a government military contractor. State tort law is displaced when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier, but not to the United States. *Id.* at 512.[1] Plaintiff respectfully submits that only the first of these factors, whether the government exercised its discretion and approved reasonably precise specifications as to the warnings, is at issue in the instant case.

---

[1] Similarly, the Second Circuit succinctly disposed of a government contractor defense raised by the same Defendant in this case by holding that unless the government "precluded the warnings at issue from being given," liability attaches. Again involving the instant Defendant, in *Densberger v. United Tech. Corp.,* 283 F.3d 110 (2d Cir. 2002), several Army officers died in a helicopter crash. Their widows sued United Technologies Corp., the helicopter manufacturer, on a failure-to-warn theory, and UTC asserted the government contract defense. The jury rejected the defense and found in plaintiffs' favor. On appeal, UTC argued that the district court should have applied the defense as a matter of law to bar plaintiffs' claims. The Second Circuit affirmed, but held the defense was irrelevant and in fact should not have been submitted to the jury at all.

In considering design-defect cases in which a defendant asserts the federal contractor defense, courts have found that the government exercised its judgment as to the specifications in three broad categories of cases. First, the government might simply dictate the design in its entirety (the "direct control" theory). See, e.g., *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 585 (9th Cir. 1996). Second, the government and the contractor might engage in a back-and-forth as to the content of the design -- or, in this situation, the warnings (the "negotiation" theory). See, *e.g., Kleemann v. McDonnell Douglas Corp.,* 890 F.2d 698, 701-03 (4th Cir. 1989). And finally, there might be some extrinsic evidence that the government exercised independent judgment in approving a particular design or warning (the "extrinsic evidence" theory). See, e.g., *Harduvel v. General Dynamics Corp.,* 878 F.2d 1311, 1318 (11th Cir. 1989)(noting evidence showed that Air Force was aware of possibility of chafing in wiring, but approved the design regardless); *cf. Trevino,* 865 F.2d at 1480 (noting that "substantive review" is sufficient to satisfy the requirement).

The Fifth Circuit has also noted that if "the government approved imprecise or general guidelines, then discretion over important design choices would be left to the government contractor." *Trevino,* 865 F.2d at 1481. *Accord, Oliver*, 96 F.3d at 1004. The same is true of warnings. If the government was silent as to whether or not the contractors were permitted to warn, or there was no discussion about the content of the warnings, the question becomes whether a federal

6

policy is harmed by holding the defendants to their state-law duties to warn. If no federal policy is infringed and the contractor had discretion over whether to warn, then the affirmative federal contractor defense must fail. See, e.g., *Dorse v. Eagle-Picher Indus., Inc.,* 898 F.2d 1487, 1488-90 (11th Cir. 1990); *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.,* 245 F.Supp.2d 1144, 1155 (D.Colo. 2002); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.,* 327 F.Supp.2d 554, 563 (D.Md. 2004) (holding that contractor defense was not available where defendants could not show that the "FCC restricted or prohibited them from providing additional safeguards or information").

**D.    Defendant Has Failed to Demonstrate That It is Entitled To Removal Based on the Federal Officer Removal Statute ("FORS").**

*1. The Defendant Cannot Show a "Causal Nexus" between the Navy and the Plaintiffs'*

*Claims because the Navy Never Forbade Warnings About the Hazards of Asbestos.*

The Plaintiffs do not dispute that the Defendant satisfies the first part of the *Mesa* test, in that it is a "person" within the meaning of the statute. But the second prong of the test cannot be satisfied because the defendants have offered no credible evidence to demonstrate that they acted at the specific direction of the Navy to omit warnings about the dangers of asbestos exposure. Simply put,

because the federal government never prohibited warnings regarding asbestos, the Defendant cannot show that they acted pursuant to a federal officer's directions. Therefore, Defendant cannot demonstrate the existence of any causal nexus between the plaintiffs' failure-to-warn claims and what the military supposedly directed a defendant to do. The Defendant claims the military exercised its discretion in such a way as to prevent them from warning Mr. Shephard and others similarly situated, about the dangers of asbestos. Defendant attaches two affidavits to its notice of removal, those of Allan J. Shiffler and William Ringo, Ph.D. in an attempt to support its claim that "the government made us do it."

Of the three kinds of evidence of federal judgment listed above -- direct control, negotiation, and extrinsic evidence -- the defendants rely solely on the first. They claim that the military specifications, though not explicitly forbidding warnings about asbestos, were so precise that the defendants could not simultaneously warn about asbestos and conform to the specifications.

Specifically, the Shiffler's affidavit makes a general reference to the "Air Force" having responsibility and control without specificity. See Shiffler Affidavit, Exhibit B to Defendant's Notice of Removal. Shiffler attests that the UTC subsidiary Pratt & Whitney performed its work under the immediate supervision of the United States military, exercised through "contract documents, design and construction drawings, written specifications, and personal oversight."

8

However, no such documents, drawings, specifications or evidence of oversight has been produced or included with Defendant's Notice.

Ringo's affidavit is irrelevant for the purposes of removal. It contains only assertions regarding Mr. Shepherd's exposure to asbestos through his mechanical work on aircraft engines. Whether Mr. Shepherd's exposure to asbestos from the Defendant's products caused his mesothelioma, which Plaintiffs' allege is indeed the case, is a substantive issue for a factfinder. It has no bearing on the procedural posture of this case. Nothing in Ringo's affidavit support its assertion that it is entitled to the government contractor defense.

On review of the evidence, there is simply no basis upon which the Court can conclude that a conflict existed between the federal contracts and the defendants' state-law duty to warn. The defendants do not submit any unpaid, non-testimonial evidence, i.e. citations to regulations or contracts, of the government's alleged control over the warnings. Defendants present no evidence of any specifications or directives regarding warnings that were or were not permitted to be placed on asbestos-containing products. Neither of the submitted affidavits is sufficient to demonstrate that defendant was acting at the direction of the military when it failed to give any warnings as to the hazards of the asbestos contained in its products.

Regarding the use of such affidavits from paid 'experts' in asbestos cases, the Honorable Shira Sheindlin, U.S.D.J. in *Miranda v. Abex et al.,* 08-CV-5509

9

(S.D.N.Y. October 31, 2008) ruled that similar affidavits submitted by a defendant <u>did not</u> raise a colorable federal defense to warrant removal of a case to federal court.

Judge Sheindlin's ruling came on the heels of another Federal decision that found a defendant's affidavits insufficient to raise a colorable federal defense. The court in *Hilbert v. McDonnell Douglas Corp.,* held that the defendant's main argument "boils down to a bald, unsupported assertion" that if the defendants had attempted to provide a warning, the government would have exercised its discretion to bar such a warning. 529 F.Supp.2d 187, 202 (D..Mass 2008). Such speculation was held to not even "come close to demonstrating – even colorably – that the government exercised its discretion.. . as to health and safety warnings." Id. at 202-203. *See also, Williams v. General Electric,* 418 F.Supp.2d 610 (M.D.Pa. 2005).

The same issue is evident in the present case. The affidavit of Mr. Shiffler is of the generic, "boiler-plate" variety. This is exactly the type of general affidavit that was rejected by the Court in *Williams*, *Good*, *Hilbert* and *Miranda* – failing to comply with the requirements of the statute. *See also, Parlin v. DynCorp Intl, Inc.,* 2009 WL 3636756 (D. Del. Sept. 30, 2008); *Good v. Armstrong,* 914 F. Supp. 1125, 1128- 29 (E.D. Pa. 1996) (holding that turbines manufactured and supplied according to the "strict direction and control of the United States Navy/Department

of Navy" was insufficient to show that defendant was acting under a federal officer); *Pittsburgh Inst. of Aero. v. Allegheny County Airport Auth.,* (W.D. Pa. June 16, 2008).

*2. Defendant UTC Failed to State any Federal Officer Under Whom Defendant UTC was Acting.*

Even if the affidavits of Mr. Shiffler and Dr. Ringo were found to apply to the present case, they still fail to state with the requisite specificity that protection under FORS is warranted.

When a defendant seeks to remove a case pursuant to 28 U.S.C. §1442 alleging it is acting under a federal officer, a specific person must be identified." *Good* at 1128- 29. The Court in *Good* explained that, "[a]cting under the direction of the Navy is not the same thing as acting under the direct and detailed control of a federal officer." *Id.* at 1129. If the defendant establishes strong government intervention such that the defendant may be liable for actions in state court for missteps under federal direction, the defendant has sufficiently satisfied this requirement. *New Jersey Dept. of Envtl. Prot. v. Exxon Mobil Corp.* at 404, *supra.* Defendant UTC in this matter has failed to state any specific person who maintained direct and detailed control under which defendant UTC was acting and therefore removal cannot be supported based on 28 U.S. C. § 1442.

*3. Defendant UTC Failed to Set Forth the Specifications and Regulations with which a Federal Officer Required Defendant UTC's Work to Comply.*

In the absence of direct orders from a federal officer, a defendant can also establish he was acting under a federal official if it shows that the official provided regulations and specifications for the defendant to follow. *Good,* 914 F. Supp at 1130. For example, when in the course of administering Medicare claims, a defendant is accused of being bound by, but misapplying Medicare's complex regulations, the administrative role and the complexity of the Medicare regulations provide support to establish that the defendant was "acting under comprehensive and detailed regulations and not the general auspices of federal direction." *Reg'l Med. Transp. Inc. v. Highmark, Inc.,* 541 F. Supp. 2d 718, 724 (E.D. Penn 2008).

Defendant UTC has failed to show any complex or detailed regulations, which it was required to follow such that it could support federal officer removal. The Defendant's notice is therefore insufficient to establish a colorable defense under the statute and the case must be remanded to Alabama state court.

**E.    Federal Courts Around the Nation Have Repeatedly Held That the Government Contractor Defense Does Not Apply To Failure to Warn Cases.**

Plaintiff's claim is brought partly on a failure-to-warn theory, and there is no evidence that the Defendant's failure to warn was a decision taken in the course of their official duties.

The issue is whether there was a specific directive or guidance from the Navy instructing UTC as to whether they were or were not prohibited from placing warning labels on their products, or what such a warning label must state.

There is no evidence that such a directive existed in the present case. The federal government never approved, specified, or prohibited warnings regarding Defendants' asbestos- containing products, nor has Defendant provided any evidence whatsoever to show that the government imposed any regulations on Defendants regarding the duty to provide, or not to provide such warnings. Therefore, Defendant's federal officer removal must fail in this case.

Every circuit court that has addressed the application of the *Boyle* doctrine to failure-to-warn cases has concluded that the government contractor defense is available in that context only when the contractor's warning or lack thereof conforms to a specific directive or "reasonably precise" specification from the government.

> "Simply because the government exercises discretion in approving a design does not mean that the government considered the appropriate warnings, if any that should accompany the product." *Id.* at 1156. *Tate v. Boeing Helicopters,* 55 F.3d 1150 (6th Cir. 1995)

13

The Defendant must then present evidence that the government exercised discretion over a warning before the government contractor defense will bar a failure to warn claim, even if the defendant would-be immune from a design-defect claim.

The Seventh Circuit also noted that it is well established that a defendant may not defeat a state failure to warn claim simply by establishing the elements of the government contractor defense with respect to a design defect claim because "design defect and failure to warn claims differ practically as well as theoretically." *Oliver v. Oshkos Truck Corp.,* 96 F. 3d 992, 1003 (7th Cir. 1996). The Sixth and Seventh Circuits both applied the same factors used by the Fifth Circuit in *Kerstetter v. Pacific Scientific Co,* 210 F.3d 431 (5th Cir. 2000), *Tate*, 55 F.3d at 1157; and *Oliver,* 96 F.3d at 1003-1004.

The reasoning in *Tate* shows that simply exercising discretion over the project is not sufficient to find removal appropriate in a failure to warn case; the matter at issue is whether the government considered the appropriateness of warning in the specific circumstance. Therefore, using the standard of review mandated by the court in *New Jersey Dept. of Envtl. Prot. v. Exxon Mobil Corp.,* supra, this Court should find that Defendant's failure to warn was not a part of their broader official conduct, and thus, in light of Defendant's failure to provide any further support for their position, remand is appropriate.

14

Other federal courts around the country have come to the same conclusion as those discussed above. *See e.g., In re Joint Eastern and Southern District New York Asbestos Litigation,* 897 F.2d 626, 630 (2d Cir.1990); *Dorse v. Eagle Picher Indus.,* 898 F.2d 1487, 1489 (11th Cir. 1990). These consistent interpretations among all of these courts are expected; the Supreme Court contemplated this result in *Boyle.* One fundamental tenet underlying the *Boyle* doctrine is that state law should not be preempted when the state law duty sought to be imposed on a contractor is not contrary to a duty assumed under a government contract. *Id.* at 508-509.

Although Defendants need not prove the merits of its defense to warrant removal, they still must prove that the federal officer defense is available. The consensus of federal courts around the nation is that this defense is not available in a failure to warn context where there was no specific prohibition on warnings or order as to what such a warning should contain. *See also Megill v. Worthington Pump Co.,* 1999 WL 191565 (D. Del.); *see also Hilbert v. McDonnell Douglas Corp.,* 529 F.Supp.2d 187 (D. Mass 2008); *Miranda v. Abex et al.,* 2008 WL 4778886 (S.D.N.Y.).

In short, Defendants have not provided any basis for Removal as they have failed to demonstrate that they were complying with government specifications when they *neglected to warn* Plaintiff about the foreseeable

15

hazards of asbestos from their products. Rather, by not affixing appropriate warning labels to their asbestos and asbestos-containing machinery, they were violating their state common law duty to workers and foreseeable victims such as Dayton Shephard.

**F.**     **The Removal Requested by Defendant UTC is Contrary to Legislative Intent and thus Removal is Improper.**

Congress enacted 28 U.S.C. §1442 due to concerns over possible state manipulation of a federal officer's immunity defense and state interference with federal policies. *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 111 S.Ct. 1700 (1991). The Supreme Court went further in *International Primate*, determining that if either prong of the legislative intent fails, removal is improper. *Id.* at 85 (disallowing removal by a federal agency under 28 U.S.C. § 1442 because there was little likelihood that a state court would go against express agency immunity even if the state court was hostile to the federal interest).

Here, UTC seeks the removal of a personal injury action due to asbestos exposure and asserts the government contractor defense. Yet, asbestos is currently regulated to prevent injury from exposure, precluding the possibility that state bias will negatively affect future government contracts. *See* 29 C.F.R. § 19 15.1001 (Standards for Asbestos Use).

16

Mr. Shephard's case is similar to the plaintiff in *Good.* The defendant in the *Good* case, discussed *supra,* noticed removal pursuant to 28 U.S.C. § 1442, stating the government contractor defense to a personal injury suit due to asbestos exposure. *Good,* 914 F.Supp. 1125 (E.D. Penn. 1996). The Court noted that the use of the government contractor defense was insufficient to effectuate removal in such a situation because no federal interest would be harmed by adjudication of the claim in state court. *Id.* at 1131. *See also Feidt,* 153 F.3d at 127 (citing the policy reasons in *Good*).

In describing the policy reasons for denying removal, the Court in *Good* stated:

> "The impact of this personal injury action on the federal interest in protecting future defense procurement-the fundamental point of the government contract defense-is speculative. It is common knowledge that asbestos is no longer used in the design and manufacture of equipment, so that this lawsuit cannot interfere with a federal program involving products that contain asbestos. Therefore, the adjudication of this personal injury action in state court does not threaten the enforcement of a federal policy sufficient to warrant removal." *Good,* 914 F.Supp at 1131; *See also Feidt,* 153 F.3d at 127.

This provision states there is no federal interest in protecting the use of asbestos in future government contracts because asbestos is so highly regulated as to discourage any use. The Defendant's actions are contrary to the Legislature's intent in enacting § 1442, and there is a patent lack of federal interest in this personal injury case. Therefore, removal is improper.

**G.    In the Alternative, Plaintiffs' Request this Honorable Court Sever Out the Claims Against UTC**

For the reasons set forth above, Plaintiff respectfully requests that this case be remanded to state court. If, however, the Court denies remand, plaintiffs respectfully request, in the alternative, that this Court sever out the claims against Defendant UTC, the federal officer defendant, so that the remainder of Plaintiffs' case can proceed in state court. Upon consideration of the policies of "judicial economy, convenience, and fairness to the parties," severance of the lone federal claim, that of UTC, from the remaining state law claims is warranted. *Crocker v. Borden, Inc.*, 852 F.Supp. 1322,1330 (E.D. LA. 1994).

In *Crocker*, Judge Livaudais held that severance and remand of all claims against all defendants *except* for those claims involving UTC marine turbines was necessary so as to preserve plaintiffs' right to a "speedy and efficient determination of their claims." *Id.* at 1331. In fact, the defendant in that case filed its own motion for severance, claiming that severance was warranted where evaluation of third-party claims against the defendant by primary defendants would only create confusion for the jury. *Id.* Evaluating the considerations of judicial economy and fairness first embraced in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), and conscious of the inevitable reality of MDL litigation, Judge Livaudais found that if the plaintiffs' claims were not remanded to state court, it would take

years before these cases were resolved. Moreover, there was "no reason to believe that, in terms of expediency and efficiency, these cases ought to be in federal court where they would be tried with all due haste. . .quite the opposite appears to be the truth." *Crocker*, 852 F.Supp. at 1330.

The present case alleges state law claims against numerous defendants, not just UTC. Further, UTC is the only defendant alleging federal jurisdiction. Therefore, should this Court find remand is not warranted, severance is appropriate out of fairness to the Plaintiffs' claims, as a matter of judicial economy and, finally, so that Plaintiffs' can timely proceed in state court on their state law claims as to the other defendants.

## H. Conclusion

After considering the lack of evidence presented by the Defendant and all of the case law on this issue, this case should be remanded to state court. The defendants have not shown that contracts or regulations provided reasonably precise specifications as to any warnings regarding asbestos. For that reason, the defendants cannot show a conflict between their federal contractual obligation and the state-law duty to warn, and have not established a colorable federal defense. By the same reasoning, the defendants have failed to establish a causal connection between acts done pursuant to the federal contract and the plaintiff's injury. Therefore, this Court does not have removal jurisdiction pursuant to the

federal officer removal statute, 28 U.S.C. § 1442, and is without subject-matter

jurisdiction to hear the case.

Respectfully Submitted,

s/ Hirlye R. "Ryan" Lutz, III
HIRLYE R. "RYAN" LUTZ,III(ASB-6641-E59L)
ANNESLEY H. DeGARIS(ASB-9182-A63A)
CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue
Birmingham, Alabama 35205
PHONE: 205-271-7159
FACSIMILE: 205-324-7896

**OF COUNSEL:**
Scott Barnes, Esquire
Katherine A. McFarland, Esquire
LEVIN PAPANTONIO THOMAS MITCHELL
ECHSNER & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996
Telephone: (850) 435-7000

April 23, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be available to all adverse parties by operation of the Court's electronic filing system. Parties may access this filing through the Court system.

s/ Hirlye R. "Ryan" Lutz, III
OF COUNSEL

Westlaw

Page 1

Not Reported in F.Supp.2d, 1999 WL 191565 (D.Del.)
**(Cite as: 1999 WL 191565 (D.Del.))**

▷

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
David E. MEGILL and Jenny Lee W. Megill, his
wife, Plaintiffs,
v.
WORTHINGTON PUMP, INC., et al., Defendants.
**No. CIV. A. 98-76-SLR.**

March 26, 1999.

Robert Jacobs, Esquire, Vincent J.X. Hedrick, II,
Esquire, of Jacobs & Crumplar, Wilmington,
Delaware, attorneys for plaintiffs.

Christian J. Singewald, Esquire, of White & Willi-
ams, Wilmington, Delaware, attorneys for defend-
ant Worthington Pump, Inc.


MEMORANDUM OPINION

ROBINSON, District J.


I. INTRODUCTION

*1 Plaintiffs David E. Megill and Jenny Lee W.
Megill brought suit against numerous defendants in
the Superior Court of the State of Delaware in and
for New Castle County. In their complaint, it is al-
leged that plaintiff David E. Megill was exposed to
asbestos and asbestos-containing products and that
plaintiffs were injured thereby. The complaint con-
tains allegations that Worthington Pump, Inc.
("Worthington") and other defendants were

at all times pertinent directly or indirectly engaged
in the mining, manufacturing, distribution, sales, li-
censing, leasing, installation, removal or use of as-
bestos and asbestos-containing products. They were
also engaged in the development, manufacture, dis-
tribution, sales, licensing or leasing of equipment
procedures and/or technology necessary to mine,

manufacture, sell, distribute, install, remove and the
use of asbestos and asbestos-containing products.

(D.I.2, Ex. A, 8) Plaintiffs further allege that
[t]he defendants were negligent in conducting the
above activities in that despite the fact that the de-
fendants knew or should have known that asbestos
exposure could result in serious injury, disease and/
or death they:

(a) Failed to substitute, suggest, promote or require
the substitution of materials other than asbestos;

(b) Failed to adequately warn all the potential vic-
tims of asbestos including the plaintiff as well as
other users, bystanders, household members and
members of the general public of the risks of asbes-
tos;

(c) Failed to adequately test, research and investig-
ate asbestos and/or its effects prior to sale, as to
use, and/or exposure of the plaintiff and others sim-
ilarly situated;

(d) Failed to adequately package, distribute and use
asbestos in a manner which would minimize the es-
cape of asbestos fibers therefore adding to the ex-
posure of the plaintiff and others similarly situated;

(e) Failed to take adequate steps to remedy the
above failure, including but not limited to recall of
asbestos and asbestos products, to conduct research
as to how to cure or minimize asbestos injuries, to
distribute asbestos so as to render it safe or safely
remove the asbestos now in place.

(D.I.2, Ex. A, 13)

Through preliminary discovery, defendant Wor-
thington determined that plaintiff David Megill was
exposed to its products while working on board
United States Navy vessels. Based on this informa-
tion, Worthington filed a notice of removal in Feb-
ruary 1998 pursuant to 28 U.S.C. § 1442(a)(1),
which provides in relevant part that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 191565 (D.Del.)
**(Cite as: 1999 WL 191565 (D.Del.))**

[a] civil action ... commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office ....

**\*2** Plaintiffs responded thereto by filing a motion to remand. Following limited discovery, briefing was completed.

For the reasons stated below, plaintiffs' motion to remand (D.I.5) shall be granted.

## II. FACTS

The relevant facts of record are not in dispute. Defendant Worthington supplied various pumps to the U.S. Navy for use on naval vessels. As averred by John P. McAdams,

all Navy combat vessel equipment, including Worthington pumps, were built according to U.S. Navy and Military specifications under the supervision of Naval officers and civilian employees. Such equipment was approved for installation aboard these vessels exclusively by the Navy and its designated officers and employees.

(D.I.2, Ex. G, 13) According to the military specifications included in the record, asbestos was specifically mentioned twice: 1) paragraph 3.2.8 provides that "[a]ll packing and gaskets shall be in accordance with Drawing B-153" which, in turn, specifies "asbestos metallic cloth, sheet" and "asbestos metallic cloth, gasket;" and 2) paragraph 3.3.9.14 provides that "[p]ump casing joints shall be made up using compressed asbestos sheet gaskets." (*See, e.g.,* D.I. 2, Ex. D to Ex. F and Ex. A to Ex. G) The court has discerned no evidence that the specifications address the issues of product research

(aside from quality assurance and performance testing), packaging, labels, and warnings as they relate to asbestos. Similarly, there is no evidence of record that Worthington's commercial products (which comport with commercial specifications) in any way deviated from the products sold to the Navy (which comported with military specifications). (D.I. 44 at 38-39, 115, 124)

## III. ANALYSIS

As noted above, defendant Worthington has removed this litigation from state to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Consequently, it is Worthington's burden to demonstrate that subject matter jurisdiction exists and that removal was proper. *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990). In this regard, the Third Circuit apparently has drawn a distinction between the removal provisions of [section] 1441, which " 'are to be strictly construed against removal and all doubts should be resolved in favor of remand," ' *id.* (quoting *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987)), and the provisions of the federal officer removal statute, which are to be "broadly construed." *Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1262 (3d Cir.1994). To establish removal jurisdiction under § 1442(a), a defendant such as Worthington must establish that:

(1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

**\*3** *Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124, 127 (3d Cir.1998). *See Mesa v. California,* 489 U.S. 121, 129 (1989).

With respect to the first of the above requirements, the court finds that, as a corporation, defendant

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 191565 (D.Del.)
**(Cite as: 1999 WL 191565 (D.Del.))**

Worthington is a "person" within the meaning of the federal officer removal statute. *See Good v. Armstrong World Indus., Inc.,* 914 F.Supp. 1125, 1127-28 (E.D.Pa.1996).

The second factor has been described as requiring "a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations." *Id.* at 1128. In *Good,* as in the case at bar, the removing defendant offered evidence that it "manufactured and supplied the equipment pursuant to strict direction and control of the United States Navy/Department of the Navy" through "contract documents, design and construction drawings, written specifications, and personal oversight of Westinghouse's work by Naval officers and by civilian employees of the U.S. Navy." *Id.* at 1128-29. Recognizing that "the United States Navy and many individuals employed by the Navy worked with Westinghouse," the court in *Good* nevertheless concluded that Westinghouse had not demonstrated "that the Secretary of the Navy or any other federal officer directly controlled and supervised the work of Westinghouse." *Id.* The court in *Good* further found that none of the documents relied on by Westinghouse even mentioned asbestos, bolstering the court's conclusion in that case that no federal officer had "specified the use of asbestos in the design and manufacture" of the Westinghouse products at issue. *Id.* at 1130.

Following the Third Circuit's mandate to broadly construe the federal officer removal statute, the court finds that Worthington has "set forth the substance of the regulations and specifications" which required "the use of asbestos in the design and manufacture" of its pumps supplied to the Navy. *Id.* at 1130. Under these circumstances, the court concludes that defendant has adequately demonstrated that it acted "pursuant to an officer's direct orders or comprehensive and detailed regulations." *Id.* at 1128.

The third factor requires a removing defendant to show that there is a colorable federal defense to a plaintiff's claims. Defendant Worthington asserts the federal common law government contractor defense, as enunciated by the Supreme Court in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988). [FN1] The Supreme Court, in deciding when a contractor providing military equipment to the Federal Government can be held liable under state tort law for injury caused by a design defect, held in *Boyle* that

> FN1. The record contains no evidence that the pumps sold by Worthington to the U.S. Navy were different from those pumps sold commercially. Because the Third Circuit in *Carley v. Wheeled Coach,* 991 F.2d 1117 (3d Cir.1993), concluded that the government contractor defense should be available to all contractors who are "compelled by a contract to perform an obligation for the United States," even where a nonmilitary product is at issue, *id.* at 1120, the *Boyle* analysis is still appropriate.

[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated-*i.e.,* they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.
**\*4** *Id.* at 512.

The *Boyle* analysis has been applied in failure to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

warn cases, such as the one at bar. *See e.g., In re Hawaii Fed. Asbestos Cases,* 960 F.2d 806 (9th Cir.1992); *In re Joint E. & S. Dist. New York Asbestos Litig.,* 897 F.2d 626 (2d Cir.1990). Indeed, the determination of whether defendant has demonstrated a colorable defense under *Boyle* collapses into the analysis required for determining whether defendant has shown a causal connection between plaintiffs' claims and the conduct performed under color of a federal office.

The Supreme Court in *Boyle* held that the government contractor defense pre-empts state tort law when "the state-imposed duty of care that is the asserted basis of the contractor's liability ... is precisely contrary to the duty imposed by the Government contract...." *Boyle,* 487 U.S. at 509 (emphasis added). As recognized by the courts above, in order to establish that *Boyle* displaces any state law duty to warn, defendant

must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear to us that *Boyle* 's requirement of government approval of "reasonably precise specifications" mandates that the federal duties be imposed upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, ... and thus that the Government itself "dictated" the content of the warnings meant to accompany the product.

*In Re Joint E. & S. Dist. New York Asbestos Lit.,* 897 F.2d at 630. In *In Re New York,* as well as in *In Re Hawaii,* the respective courts found that the government in no way had prohibited the contractors from placing warnings on their asbestos-containing products. Both courts concluded that "[t]here thus existed no conflict between [the contractors'] state law duty to provide adequate warnings to the users of their [products] and the [product design] conditions imposed on them pursuant to the agreements they had entered into with the Government." *In Re Hawaii,* 960 F.2d at 812. To put the point differ-

ently, a crucial element of both the *Boyle* defense and the removal requirements is missing if the contractor fails to establish a causal connection between the conduct being supervised by the federal officer/government and the conduct deemed offensive in the plaintiff's complaint.

In the case at bar, plaintiffs assert liability based on the following conduct: 1) failure to substitute other materials for asbestos; 2) failure to warn; 3) failure to adequately research the dangers of asbestos; 4) failure to adequately package, distribute and use asbestos; and 5) failure to remedy the above failures. Worthington has not established that the U.S. Navy prohibited it from substituting materials or otherwise changing the specifications, so long as protocol was followed. (D.I. 44 at 25-32, 41-6) Likewise, there is no evidence of record that the U.S. Navy prohibited defendant from, or otherwise directed defendant in, issuing warnings or researching and effecting product safety. Under these circumstances, the court concludes that there is no causal connection between plaintiffs' claims and the conduct performed under color of a federal office; thus, there is no colorable federal defense.

IV. CONCLUSION

*5 For the reasons stated, plaintiffs' motion to remand is granted.

An order shall issue.

D.Del.,1999.
Megill v. Worthington Pump, Inc.
Not Reported in F.Supp.2d, 1999 WL 191565 (D.Del.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4778886 (S.D.N.Y.)
**(Cite as: 2008 WL 4778886 (S.D.N.Y.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Ernesto MIRANDA and Diana Miranda, Plaintiffs,
v.
ABEX CORPORATION, et al., Defendants.
**No. 08 Civ. 5509(SAS).**

Oct. 31, 2008.

West KeySummary
**Removal of Cases 334 ⚖═21**

334 Removal of Cases
    334II Origin, Nature, and Subject of Controversy
        334k21 k. Actions against or for acts of United States officers. Most Cited Cases

**Removal of Cases 334 ⚖═102**

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k101 Grounds for Remand
            334k102 k. Want of jurisdiction or of cause for removal. Most Cited Cases
The federal officer removal statute did not give the federal court jurisdiction over an asbestos injury case, in which the plaintiff sought a remand to state court. The manufacturer of aircraft components failed to demonstrate that the government prevented it from including warnings on the components. Remand was appropriate in light of the absence of a colorable federal defense. 28 U.S.C.A. § 1442(a)(1) .

Patrick J. Timmins, Esq., Levy, Phillips & Konigsberg, LLP, New York, NY, for Plaintiffs.

Joseph A. D'Avanzo, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Stamford, CT, Charles Christopher De Martino, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker LLP, White Plains,

NY, for Defendants Boeing Company and Boeing Integrated Defense Systems.

Anna Maria DiLonardo, Esq., Weiner Lesniak, LLP, Hauppauge, NY, for Defendant Bondex International, Inc.

Scott A. Harford, Esq., Lynch Daskal Emery, LLP, New York, NY, for Defendants Chrysler LLC, Georgia Pacific Corporation, and Goodyear Tire & Rubber.

Erich Gleber, Esq., Segal, McCambrige, Singer & Mahoney, New York, NY, for Defendant Duramettalic Corporation.

John Francis Parker, Esq., Mound Cotton Wollan & Greengrass, New York, NY, for Defendant Epson America, Inc.

Thomas Russell Pantino, Esq., Mendes & Mount, LLP, New York, NY, for Defendants Fairchild Corporation and Hitco Carbon & Composites.

Michael Alan Tanenbaum, Esq., Sedgwick, Detert, Moran & Arnold, LLP, Newark, NJ, for Defendants GE Aviation Systems LLC and Texas Instruments, Inc.

Erik Christopher DiMarco, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY, for Defendant General Dynamics.

Nancy Loraine Pennie, Esq., Aaronson, Rappaport, Feinstein & Deutsch, LLP, New York, NY, for Defendant General Motors Corporation.

Patrick Joseph Dwyer, Esq., Katherine E. Hauck, Esq., Smith, Stratton, Wise, Heher & Brennan, LLP, Princeton, NJ, for Defendant Goodrich Corporation.

Donald Richard Pugliese, Sr., Esq., McDermott, Will & Emery, LLP, New York, NY, for Defendant HoneyWell International, Inc.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4778886 (S.D.N.Y.)
**(Cite as: 2008 WL 4778886 (S.D.N.Y.))**

Elizabeth Marion Young, Esq., Aaronson, Rappaport, Feinstein & Deutsch, LLP, New York, NY, for Defendant International Business Machines Corporation.

Robert Dorrance Brown, Jr., Esq., Gibbons P.C., Newark, NJ, for Defendant Konica Minolta Business Solutions U.S.A., Inc.

Daniel Seth Meyers, Esq., Bracewell & Giuliani, LLP, New York, NY, Annalyn G. Smith, Esq., Bracewell & Giuliani LLP, San Antonio, TX, for Defendant Lear Seigler Service, Inc.

Julie Lynn Mer, Esq., Weiner Lesniak, LLP, Hauppauge, NY, for Defendant Lockheed Martin Corporation.

Samantha Maxwell Burd, Esq., Landman, Corsi, Bllaine & Ford, P.C., Newark, NJ, for Defendants Metropolitan Transit Authority and New York City Transit Authority.

James Mark Altman, Esq., Christopher Robert Strianese, Esq., Bryan Cave LLP, New York, NY, for Defendant Nasco Air Brakes, Inc.

Elisa T. Gilbert, Esq., The Gilbert Firm LLC, New York, NY, for Defendant Northrop Gruman Corporation.

Arthur David Bromberg, Esq., L'Abbate, Balkan, Colavita & Contini, LLP, Garden City, NY, for Defendant Old Orchard Industrial Corporation.

Richard P O'Leary, Esq., McCarter & English, LLP, New York, NY, for Defendant Parker Hannifin Corporation.

### OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge.

### I. INTRODUCTION

**\*1** On June 18, 2008, defendants Northrop Gruman Corporation and Lockheed Martin Corporation removed this asbestos-related tort action to federal court after invoking the federal officer removal statute, section 1442(a)(1) of Title 28 of the United States Code.[FN1] Plaintiffs Ernesto and Diana Miranda now move to remand the suit to state court. For the reasons stated below, the Mirandas' motion to remand the case to state court is granted.

FN1. 28 U.S.C. § 1442(a)(1).

### II. BACKGROUND

Ernesto Miranda and his wife, Diana, brought this action in New York state court in March 2008. Late in 2007, Ernesto was diagnosed with mesothelioma, a fatal form of cancer attributed to asbestos exposure.[FN2] The Mirandas' claim was based in part on Ernesto's alleged exposure to asbestos from aircraft during his service in the United States Air Force.[FN3] Miranda also alleged asbestos exposure apart from his service in the Air Force. The Mirandas assert that the defendants are liable to them for failing to warn Ernesto of the hazards of asbestos exposure. In response, many of the aviation-related defendants asserted a federal contractor defense which-when properly asserted-allows removal to federal court.[FN4]

FN2. See 12/19/07 Letter from Dr. Cliff P. Connery to Dr. Gary Burke, Ex. 1 to Defendant General Electric Company's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand ("Def.Mem.").

FN3. See Def. Mem. at 3.

FN4. See 28 U.S.C. § 1442(a)(1).

On August 28, 2008, the Mirandas filed a motion to remand the case back to New York state court.[FN5] In a memorandum of law accompanying this motion, the Mirandas asserted that they had waived "all aviation-related claims."[FN6] On October 6, 2008, the Mirandas supplemented this waiver with

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4778886 (S.D.N.Y.)
**(Cite as: 2008 WL 4778886 (S.D.N.Y.))**

a motion to "dismiss all claims stated in their Complaint arising out of Mr. Miranda's employment in the United States Air Force."[FN7] Based on their waiver of all aviation-related claims, the Mirandas argued that there are "no claims now pending to which [defendants] could possibly allege a basis of federal jurisdiction."[FN8] The Mirandas also represent that because Ernesto is gravely ill, his case has already been scheduled for trial in state court. [FN9]

> FN5. *See* Plaintiffs' Motion to Remand.

> FN6. *See* Plaintiffs' Reply Brief in Support of Plaintiffs' Motion to Remand ("Reply Brief") at 1.

> FN7. *See* Plaintiffs' Motion to Dismiss Pursuant to Rule 41(a) (2).

> FN8. Plaintiffs' Reply Memorandum in Support of Plaintiff s Motion to Dismiss and in Further Support of Remand at 1.

> FN9. *See* Reply Brief at 1.

In opposition to the Mirandas' motion to remand, defendant General Electric ("GE") argues that the Mirandas' dismissal of the aviation-related claims does not strip this Court of jurisdiction under the federal officer removal statute.[FN10] In essence, GE argues that while the Mirandas have decided not to pursue any aviation-related claims, other defendants have brought cross-claims against GE for contribution in light of Ernesto's aviation-related asbestos exposures. In defending these cross-claims, GE will invoke its federal contractor defense. As GE notes, "Plaintiffs' aviation exposures are in this case regardless of any ministerial dismissal of the 'aviation claims' in the Complaint. As long as these exposures are in the case and a claim, by any party, exists that those exposures were a substantial contributing cause of plaintiffs' injuries, GE has a federal defense in this action."[FN11]

> FN10. *See* Defendant General Electric Company's Memorandum of Law in Re-

sponse to Plaintiffs' Motion to Dismiss Pursuant to Rule 41(a) (2), and in Further Opposition to Remand at 1-2.

> FN11. *Id.* at 2.

## III. APPLICABLE LAW

Ordinarily, the well-pleaded complaint rule dictates that a defendant may remove an action from state court to federal court only if the case could have been filed in federal court in the first instance.[FN12] Thus federal question jurisdiction may be invoked only " 'when a federal question is presented on the face of the plaintiffs' properly pleaded complaint.' "[FN13] Suits against federal officers are an exception to this general rule.[FN14] "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."[FN15]

> FN12. *See City of Rome v. Verizon Comm'ns, Inc.,* 362 F.3d 168, 174 (2d Cir.2004) (citation omitted).

> FN13. *Vera v. Saks & Co.,* 335 F.3d 109, 113 (2d Cir.2003) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). *Accord Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

> FN14. *See Jefferson County v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).

> FN15. *Id.*

**\*2** The federal officer removal statute provides that "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may remove to federal court.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4778886 (S.D.N.Y.)
**(Cite as: 2008 WL 4778886 (S.D.N.Y.))**

FN16 If the defendant moving for removal is not a federal officer or agency, three conditions must be satisfied for removal to be appropriate. *First,* the defendant must show that it is a "person" as that term is used in section 1442(a)(1). FN17 *Second,* the defendant must offer a colorable federal defense. FN18 *Third,* "it must establish that it was 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct and asserted official authority." FN19 While other removal statutes are interpreted narrowly, the federal officer removal statute "must be liberally construed." FN20

> FN16. 28 U.S.C. § 1442(a)(1).

> FN17. *See In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.,* 488 F.3d 112, 124 (2d Cir.2007).

> FN18. *Id.* (citing *Mesa v. California,* 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)).

> FN19. *Id.* (citing *Willingham v. Morgan,* 395 U.S. 402, 409, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)).

> FN20. *Isaacson v. Dow Chemical Co.,* 517 F.3d 129, 136 (2d Cir.2008) (citing *Watson v. Phillip Morris Cos., Inc.,* 551 U.S. 142, 127 S.Ct. 2301, 2304-05, 168 L.Ed.2d 42 (2007); *Willingham,* 395 U.S. at 407 ("Th[e] policy [of providing the protection of a federal forum to federal officers] should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).")). *Accord Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1253 (9th Cir.2006) ("Because it's so important to the federal government to protect federal officers, removal rights under section 1442 are much broader than those under section 1441.").

**IV. DISCUSSION**

**A. "Person" within the Meaning of Section 1442(a)(1)**

In order for removal to be proper under the federal officer removal statute, GE must be a "person" within the meaning of section 1442(a)(1). FN21 The Second Circuit has held that "it is clear that corporations are 'persons' within the meaning of [section 1442(a)(1) ]." FN22 Thus, GE satisfies the first requirement for removal under the federal officer removal statute.

> FN21. *See In re MTBE,* 488 F.3d at 124.

> FN22. *Id.* Federal courts presume that the term "persons" includes corporations "unless the context indicates otherwise." *Isaacson,* 517 F.3d at 135 (citing 1 U.S.C. § 1). "Because the legislative history is devoid of evidence suggesting that Congress intended § 1442 not apply to corporate persons, the ordinary presumption established in 1 U.S.C. § 1 controls." *Id.* at 136.

**B. Colorable Federal Defense**

**1. Legal Standard**

For removal to be proper, GE must also assert a colorable federal defense. FN23 GE claims that it is immune from state tort liability arising from Ernesto Miranda's alleged aviation-related asbestos exposure because it was serving as military contractor at the time of Miranda's alleged exposure. FN24 Such a defense, if established, "presents a colorable federal defense in both design defect and failure to warn cases." FN25

> FN23. *See In re MTBE,* 488 F.3d at 124.

> FN24. *See* Def. Mem. at 17.

> FN25. *Machnik v. Buffalo Pumps Inc.,* 506 F.Supp.2d 99, 102 (D.Conn.2007) (citing *Boyle v. United Techs. Corp.,* 487 U.S.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4778886 (S.D.N.Y.)
**(Cite as: 2008 WL 4778886 (S.D.N.Y.))**

500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); *Grispo v. Eagle-Picher Indus., Inc.,* 897 F.2d 626, 629 (2d Cir.1990)).

"The military contractor defense is premised on federal displacement of state law where state law significantly conflicts with the federal interest embodied in the federal government's sovereign immunity for discretionary functions."[FN26] To show such a conflict, and thus to assert this federal defense, a defendant contractor must satisfy three requirements. *First,* it must demonstrate that " '(1) the United States approved reasonably precise specifications' for the military equipment supplied by the contractor."[FN27] *Second,* it must show that " 'the equipment conformed to those specifications.' "[FN28] *Third,* the defendant contractor must show that it " 'warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States.' "[FN29] In the failure to warn context, the first prong of this test requires a showing that "whatever warnings accompanied the product resulted from a determination of a government official, and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product."[FN30]

> FN26. *In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831, 839 (2d Cir.1992) (citing *Boyle,* 487 U.S. at 511).

> FN27. *Machnik,* 506 F.Supp.2d at 102 (quoting *Boyle,* 487 U.S. at 512).

> FN28. *Id.* (quoting *Boyle,* 487 U.S. at 512).

> FN29. *Id.* (quoting *Boyle,* 487 U.S. at 512).

> FN30. *Grispo,* 897 F.2d at 631 (citations omitted). *Accord Machnik,* 506 F.Supp.2d at 103 ("To prove the 'reasonably precise specifications' requirement, [the defendant] must show that the government actively participated in creating the specifications for the products and warning labels

[defendant] supplied, and that the government imposed these specifications on [defendant].") (citing *In re Agent Orange Prod. Liab. Litig.,* 304 F.Supp.2d 404, 434 (E.D.N.Y.2004)).

**2. Analysis**

**\*3** In determining whether a defendant has asserted a colorable federal defense, courts are permitted "to look beyond the pleadings to the evidence submitted by the parties regarding the Motion to Remand."[FN31] A review of the evidence submitted by GE shows that it has failed to assert a colorable federal defense.

> FN31. *Hilbert v. McDonnell Douglas Corp.,* 529 F.Supp.2d. 187, 196-97 (D.Mass.2008) (citing *Machnik,* 506 F.Supp.2d at 103).

In support of its asserted federal defense, GE offers an affidavit from Joseph D. Gould, who has worked at GE's Military Engines Operation since 1974 and who "has affirmed that he is familiar with the procedures and practices associated with providing jet aircraft engines for the U.S. Military through government contracts."[FN32] According to Gould,

> FN32. Def. Mem. at 18.

"all aspects of th[e] ... design, manufacture, testing and acceptance [of aircraft] engines would have been performed under the immediate close supervision of the United States Air Force and/or Navy .... This supervision and control would have been exercised through contract documents, design and construction drawings, written specifications and personal oversight by engineers and government specialists on site at GE Aircraft Engines .... "[FN33]

> FN33. Affidavit of Joesph D. Gould, Ex. 5 to Def. Mem., at ¶ 6.

He also notes that "detailed drawings would have

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4778886 (S.D.N.Y.)
**(Cite as: 2008 WL 4778886 (S.D.N.Y.))**

been reviewed and approved by U.S. Air Force personnel and/or their representatives before production of the component parts and assembly of the engines commenced."[FN34]

FN34. *Id.* ¶ 7.

In this failure to warn case, GE can assert a federal defense only if the Air Force "dictated" the content of warnings to it.[FN35] The Gould Affidavit demonstrates that GE employees worked closely with Air Force personnel in the design and construction of Air Force jets, yet it says nothing about asbestos warnings-the subject of this lawsuit. In a recent asbestos case in the District of Massachusetts, by contrast, "[e]ach of the defendants claim[ed] that the military, through its contracts, exercised its discretion in such a way as to prevent them from warning [the plaintiff] about the dangers of asbestos."[FN36] In this case, however, GE makes no such claim. Similarly, GE fails to "rebut the obvious inference: that [it] never tried to warn about asbestos at all."[FN37]

FN35. *Grispo,* 897 F.2d at 631.

FN36. *Hilbert,* 529 F.Supp.2d at 199.

FN37. *Id.* at 202.

The Gould Affidavit-the only evidence provided by GE as to the control of the Air Force over jet design and construction-suggests that "the government was silent as to whether or not [GE was] permitted to warn, or that there was no discussion about the content of the warnings.[FN38] As such, there seems to be no conflict between federal policy and holding GE to its state-law duty to warn.[FN39] Accordingly, GE's asserted federal defense fails.

FN38. *Id.* at 199.

FN39. *See id.* ("If no federal policy is infringed and the contractor had discretion to warn, then the affirmative federal contractor defense must fail.") (citing *Dorse v. Eagle-Picher Indus., Inc.,* 898 F.2d 1487,

1488-90 (11th Cir.1990); *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.,* 245 F.Supp.2d 1144, 1155 (D.Colo.2002); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.,* 327 F.Supp.2d 554, 563 (D.Md.2004)).

**V. CONCLUSION**

As GE has not demonstrated that the government prevented it from including warnings on the aircraft components it manufactured, it has failed to establish a colorable federal defense. Therefore, because the Court does not have jurisdiction in this case under the federal officer removal statute, plaintiffs' motion to remand is granted. The Clerk of the Court is directed to close this motion (08 Civ. 5491, Docket No. 57) and this case.

**\*4 SO ORDERED:**

S.D.N.Y.,2008.
Miranda v. Abex Corp.
Not Reported in F.Supp.2d, 2008 WL 4778886 (S.D.N.Y.)

END OF DOCUMENT

Westlaw.

Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)
**(Cite as: 2009 WL 3636756 (Del.Super.))**

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware,
New Castle County.
Cynthia PARLIN, Individually, and in her Capacit-
ies as Surviving Spouse of Samuel Parlin, And As
Executrix of the Estate of Samuel Parlin, Deceased,
Plaintiffs,
v.
DYNCORP INTERNATIONAL, INCORPOR-
ATED, a Delaware Corporation, Parent of the co-
defendant DYNCORP entities, formerly known as
DI Acquisition Corporation; Dyncorp International
LLC, a Delaware Limited Liability Corporation;
and Doe Entities 1-10, Defendants.
**C.A. No. 08c-01-136 FSS.**

Submitted: June 2, 2009.
Decided: Sept. 30, 2009.

West KeySummary
**Death 117 ⛭25**

117 Death
   117III Actions for Causing Death
      117III(A) Right of Action and Defenses
         117k20 Defenses
            117k25 k. Satisfaction or release. Most
Cited Cases
Wife's right to sue for wrongful death was not re-
leased when her husband signed a release of his
rights against his employer, and subsequently died
during employment. Husband signed a contract
with his employer that said he waived any rights to
sue the employer if he died during the course of
employment. After his death, the wife still had the
right to sue for wrongful death as wrongful death
was a derivative claim that was separate and dis-
tinct from her husband's rights. The wife had the
ability to contract and did not release husband's em-

ployer from any liability towards herself.

**MEMORANDUM OPINION AND ORDER**

FRED S. SILVERMAN, Judge.

*1 On January 16, 2006, Plaintiff-Decedent,
Samuel Parlin, was killed by a roadside bomb in
Baghdad, Iraq. Parlin, a citizen of the State of
Georgia, was employed as an international police
liaison officer by non-party, DynCorp International
FZ, LLC, a Dubai company owned by Defendants,
DynCorp International, Inc., and DynCorp Interna-
tional LLC. Defendants are Delaware corporations
with principal places of business in Virginia and
Texas, respectively. On January 16, while Parlin
was on his way to a job interview at the direction of
Defendants, an improvised explosive device deton-
ated near his vehicle, fatally injuring him.

Before beginning work in Iraq, Parlin signed an
employment agreement with DynCorp. The agree-
ment expressly provides that it is governed by the
law of the Dubai Internet City. The agreement also
describes the general nature and duties of Parlin's
job, and further states:

> The Employee understands and accepts the fact
> that he ... may be exposed to dangers due to the
> nature of the mission. The Employee agrees that
> neither Employer nor its affiliates will be liable
> in the event of death ... to Employee, except as
> stated below. Employer will obtain ... insurance
> ... on behalf of the Employee. The Employee
> agrees to accept these insurance benefits as full
> satisfaction of any claim for death, injury or dis-
> ability against Employer and its affiliates.

DynCorp, as promised, obtained a $250,000 insur-
ance policy for Parlin. After he was killed, Parlin's
widow, Cynthia, received the policy's limits. Now,
as discussed below, Defendants contend that the
employment agreement not only extinguished Par-
lin's survival claim, but also eliminated Cynthia

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:21-cv-00875-PWC Document 6154-1 Filed 04/28/10 Page 49 of 60
Case 2:10-cv-00944-PWC Document 31 Filed 04/23/10 Page 36 of 47

Page 2

Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)
**(Cite as: 2009 WL 3636756 (Del.Super.))**

Parlin's wrongful death claim.

### I.

On January 16, 2008, Cynthia Parlin filed claims against Defendants under Delaware's wrongful death [FN1] and survival [FN2] statutes. In February 2008, the case was removed to the United States District Court for the District of Delaware. Subsequently, the District Court granted Plaintiffs' Motion for Remand, and the case returned to this court.

> FN1. 10 *Del. C.* §§ 3721-22, 3724-25.

> FN2. 10 *Del. C.* §§ 3701, 3704.

On November 11, 2008, Defendants moved to dismiss. As mentioned, Defendants contend that when Parlin agreed to accept the benefits in his employment agreement, he released all claims, by anyone, related to his death. Furthermore, Defendants assert that the agreement is governed by Dubai law. Oral argument was heard on March 6, 2009, and supplemental filings were called for by the court during oral argument, and by order on May 19, 2009. The parties filed supplemental briefs on June 2, 2009.

### II.

Under Superior Court Civil Rule 12(b)(6), a case may be dismissed for failure to state a claim upon which relief can be granted. The court must accept all well-pleaded allegations as true, and "[t]he test for sufficiency is ... whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint. If [plaintiff] may recover, the motion must be denied." [FN3]

> FN3. *Spence v. Funk,* 396 A.2d 967, 968 (Del.1978).

**\*2** If, on a 12(b)(6) motion to dismiss, "matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" [FN4] In that instance, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." [FN5]

> FN4. Super. Ct. Civ. R. 12(b)(6).

> FN5. *Id.*

In limited circumstances, however, "it may be proper for a trial court to decide a motion to dismiss by considering documents referred to in a complaint." [FN6] "The exception has been used in cases in which the document is integral to a plaintiff's claim and incorporated in the complaint [.]" [FN7]

> FN6. *In re Gen. Motors (Hughes) S'holder Litig.,* 897 A.2d 162, 169 (Del.2006).

> FN7. *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d 59, 69 (Del.1995).

Plaintiffs' claims are based upon events that took place while Parlin was working in Baghdad pursuant to his employment agreement. Because of the significant role the agreement plays in this matter, it is integral to Plaintiffs' claims and will be incorporated by reference, without converting the motion to dismiss into one for summary judgment.

In addition, under Superior Court Civil Rule 44.1, "[t]he Court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Delaware Rules of Evidence. The Court's determination shall be treated as a ruling on a question of law." [FN8] Generally, "the movant will submit enough 'relevant material' to the Court to sufficiently establish the content of foreign law." [FN9]

> FN8. Super. Ct. Civ. R. 44.1.

> FN9. *Republic of Panama v. Am. Tobacco Co.,* 2006 WL 1933740, at \*5 (Del.Super. June 23, 2006).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)
**(Cite as: 2009 WL 3636756 (Del.Super.))**

Because the foreign law issue, by definition, presents a question of law, the court's consideration of materials regarding foreign law will not convert the motion to dismiss into one for summary judgment. Under Rule 44.1, the court may consider any relevant material, which here includes the various legal experts' submissions. As explained below, however, the decision does not turn on foreign law because the result is the same under both Delaware and Dubai law.

### III.

First, Defendants argue that the "release" in Parlin's employment agreement is valid under Dubai law, and thus, the claims "brought on behalf of Mr. Parlin must be dismissed for failure to state a claim." Defendants contend that Parlin's employment agreement, by its terms, is governed by Dubai law because of Paragraph 19: "[t]his Contract shall be governed by and interpreted under the laws of the Dubai Internet City." Defendants argue that "Dubai has a 'material relationship' to the events underlying this lawsuit," and that Dubai and United Arab Emirates's overarching laws "are not 'repugnant' to Delaware public policy." Defendants further claim that UAE labor law governs, and the release in Parlin's employment agreement is valid because "the decedent's family was compensated in excess of the statutorily required amount under the UAE Labor Law[.]"

In the alternative, Defendants contend that the release in Parlin's employment agreement is valid under Delaware law and under the federal Defense Base Act,[FN10] which limits certain releases. Defendants further submit that, due to the release, Cynthia Parlin "cannot bring any actions that would be derived from the decedent's claims ... against Defendant based upon the wrongful death or survival statutes."

FN10. 33 U.S.C. § 915(b).

**\*3** In response, Plaintiffs assert that Cynthia Parlin

was not a party to the release, and that "a claim for wrongful death is an independent action maintained for the benefit of the loved one, not the decedent, and as such cannot be released by only the decedent." Additionally, Plaintiffs argue that "defendants have made no clear showing of the propriety of applying Dubai law," and that no choice of law analysis is necessary because Defendants' arguments fail under both Delaware and Dubai law.

### IV.

"Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction."[FN11] Courts have found that a material relationship exists where a party's principal place of business is located within the foreign jurisdiction,[FN12] a majority of the activity underlying the action occurred within the foreign jurisdiction,[FN13] and where parties to a contract performed most of their services in the foreign state.[FN14] Furthermore, a foreign jurisdiction's laws may not be used to interpret a contractual provision "in a manner repugnant to the public policy of Delaware [.]"[FN15]

> FN11. *J.S. Alberici Constr. Co. v. Mid-West Conveyor Co., Inc.,* 750 A.2d 518, 520 (Del.2000); *Annan v. Wilmington Trust Co.,* 559 A.2d 1289, 1293 (Del.1989)
> .

> FN12. *Maloney-Refaie v. Bridge at Sch., Inc.,* 2008 WL 2679792, at \*4 n. 16 (Del.Ch. July 9, 2008); *Shadewell Grove IP, LLC v. Mrs. Fields Franchising, LLC,* 2006 WL 1375106, at \*7 (Del.Ch. May 8, 2006); *Hills Stores Co. v. Bozic,* 769 A.2d 88, 112 (Del.Ch.2000).

> FN13. *E.I. du Pont de Nemours & Co. v. Bayer CropScience L.P.,* 958 A.2d 245, 249 n. 9 (Del.Ch.2008).

> FN14. *Bozic,* 769 A.2d at 112. *See also*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Knight v. Caremark Rx, Inc.,* 2007 WL 143099, at *5 n. 14 (Del.Ch. Jan.12, 2007) ("Alabama clearly satisfies this test because the claims and counterclaims that the Settlement Agreement resolved were pending in its state courts.").

> FN15. *J.S. Alberici Constr. Co.,* 750 A.2d at 520.

Parlin's employment agreement plainly states that Dubai law governs the contract. While Dubai arguably does not have a strong material relationship to this action-Parlin was from Georgia, Defendants are Delaware corporations, and Parlin's employment and death were in Baghdad-Dubai's relationship to the case is similar to Delaware's. Regardless, as explained below, the result is the same under both Delaware and Dubai law. Thus, "the Court may resolve the dispute without a choice between the laws of the competing jurisdictions." [FN16]

> FN16. *Lagrone v. Am. Mortell Corp.,* 2008 WL 4152677, at *5 (Del.Super.Sept.4, 2008); *see also Berg Chilling Sys., Inc. v. Hull Corp.,* 435 F.3d 455, 462 (3d Cir.2006) ("According to conflicts of law principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question."). *Cf. Travelers Indem. Co. v. Lake,* 594 A.2d 38, 47 (Del.1991) (generally, Delaware courts use the "most significant relationship test" when a choice of law analysis is necessary).

Furthermore, Defendants represent that "UAE Labor Law provides an exclusive remedy that prescribes the payment of a certain amount of damages in the event of an employee's injury or death without regard to negligence." Nevertheless, both parties' experts, notably Defendants', opined that Cynthia Parlin would be entitled to bring an action in tort under Article 282 of the Civil Code. [FN17]

Thus, it does not appear that the statutory amount of damages allowed under UAE labor law is the exclusive remedy for Cynthia Parlin.

> FN17. First Decl. of Omar Al Shaikh, at 5 ¶ H ("The waiver provision does not prevent the employee or his family from filing a claim for compensation against the employer on the grounds of negligence under the general law."); First Legal Op. of Hassan Arab, at 2-3 ("A claim could be brought by Mrs. Parlin for general compensation under the Civil Code for negligence pursuant to Article 282 of the Civil Code."); Op. of Samir A. Salloum, at 11 ("[A] claim could be brought by Mrs. Cynthia Parlin for compensation as per Article 282 of the UAE Civil Transactions Law, and in order to be eligible for compensation, Mrs. Cynthia Parlin will have to establish the negligence/default of the Defendants that caused the death of Mr. Samuel Parlin.").

### V.

Delaware courts recognize the validity of general releases. [FN18] "Where the release is clear and unambiguous, it only will be set aside where there is fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries." [FN19]

> FN18. *Chakov v. Outboard Marine Corp.,* 429 A.2d 984, 985 (Del.1981); *Cunningham v. Walter,* 1998 WL 473007, at *2 (Del.Super. April 2, 1998).

> FN19. *Edge of the Woods, Ltd. P'ship v. Wilmington Sav. Fund Soc'y, FSB,* 2000 WL 305448, at *4 (Del.Super.Feb.7, 2000)

As presented above, the employment agreement states that Parlin "agrees that neither Employer nor its affiliates will be liable in the event of death" and that "[t]he Employee agrees to accept [the] insur-

Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)
(Cite as: 2009 WL 3636756 (Del.Super.))

ance benefits as full satisfaction of any claim for death ... against Employer and its affiliates." It appears that Parlin clearly and unambiguously waived his claims, and there are no allegations of fraud, duress, coercion, or mistake. Thus, the release is valid under Delaware law.

*4 Additionally, based upon the declaration of Omar Al Shaikh, a Dubai attorney specializing in UAE labor law:

[I]n order for [the general release] to be valid where an employee has died as a result of an accident at work[,] the employer is required to pay the employee's family (as defined in Article 149) a one time lump sum payment equal to his basic remuneration for 24 months, provided that the amount of the compensation is not less than AED 18,000 (USD $4,904.63) nor greater than AED 35,000 (USD $9,536.78).[FN20]

FN20. First Decl. of Omar Al Shaikh, at 4 ¶ F.

Al Shaikh further opines that "the maximum amount is the most the employer would be statutorily required to pay under the UAE Labor Law. However[,] the law does not prevent an employer from paying more than AED 35,000."[FN21]

FN21. Id.

For the release to be valid, the statutory amount owed to Parlin's family was approximately USD $86,627.28, which could be paid under an insurance policy.[FN22] Cynthia Parlin received $250,000.00 from the insurance policy issued on Parlin's behalf. Because this amount exceeded $86,627.28, the release appears valid. Furthermore, Hassan Arab, partner of a Dubai law firm, opined that the release is valid not only under UAE labor law, but also under the Civil Code. Article 296 of the Civil Code states that "[a]ny condition purporting to provide exemption from liability for a harmful act shall be void."[FN23] The release nevertheless appears valid, even under Article 296, because Parlin's employ-

ment agreement did not purport to provide an exemption from liability. Rather, it merely provided an insurance policy in lieu of Parlin's right to sue his employer for his death or injury.

FN22. Id. at 4-5 ¶ G.

FN23. First Decl. of Charles S. Laubach, at 5 ¶ 12.

Finally, Defendants contend that "the general release contained in Mr. Parlin's employment agreement is valid under the Defense Base Act." Thirty-three U.S.C. § 915(b) provides: "[n]o agreement by an employee to waive his right to compensation under this chapter shall be valid."

Parlin's employment agreement was not, however, a waiver of compensation under the Defense Base Act. The release did not require forfeiture of Defense Base Act benefits.[FN24] Instead, the release was simply a waiver of his right to sue Defendants in exchange for insurance benefits. Therefore, even under the Defense Base Act, Parlin's release is valid. Assuming the release is enforceable, the dispositive issue is whether it barred Parlin's estate's survival claim or Cynthia Parlin's wrongful death claim.

FN24. It is suggested that Parlin's family receives benefits under the Act.

**VI.**

**A. Survival Claim**

Under Delaware's survival statute, a decedent's estate has a cause of action against a defendant for "the prosecution of claims on behalf of [the] deceased."[FN25] "A survival action, filed by the personal representative of the estate, recovers any damage sustained by the decedent between the injury and his/her death, for which the decedent could have recovered had he/she lived."[FN26] Recoverable damages under the statute are "pain and suffer-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)
(Cite as: 2009 WL 3636756 (Del.Super.))

ing from the time of injury to the time of death, expenses incurred in endeavoring to be cured of such injuries and loss of earnings resulting from such injuries from time of injury to time of death."[FN27]

> FN25. *Pipher v. Burr,* 1998 WL 110135, at *2 (Del.Super.Jan.29, 1998); 10 *Del. C.* § 3701.

> FN26. *Franz v. U.S.,* 791 F.Supp. 445, 448 (D.Del.1992). *See also Bennett v. Andree,* 252 A.2d 100, 103 (Del.1969) (holding that "an administratrix has the same cause of action the deceased had prior to [his] death"); *Coulson v. Shirks Motor Express Corp.,* 107 A.2d 922, 925 (Del.1954) ("The result of this amendment has not been the creation of a new cause of action, but rather the continuance in the executor or administrator of a deceased of the same right of action which accrued to the deceased during his lifetime because of the negligent act of the defendant.").

> FN27. *Pipher,* 1998 WL 110135, at *3.

**\*5** By signing the employment agreement containing the release, Parlin waived his estate's survival claim. As mentioned, the agreement stated that Parlin "agree[d] to accept [the] insurance benefits as full satisfaction of any claim for death ... against Employer and its affiliates." Because Parlin waived his right to sue Defendants for his injuries and death, his estate is barred from pursuing the survival claim.

### B. Wrongful Death Claim

As explained above, Parlin's release knocks out his survival claim. That holding, however, leaves open the question of whether Parlin's release also knocks out Cynthia Parlin's claim, as next-of-kin, for relief under Delaware's wrongful death statute. Whether Cynthia Parlin has a wrongful death claim turns on how Delaware law treats the deceased's putative release of her statutory claim. That is an open ques-

tion.

Defendants' argument begins with a truism: wrongful death claims are "derivative." From that, Defendants conclude in bootstrap fashion that because Parlin signed a release knocking out his own tort claim against Defendants, *ipso facto* the release knocked out his next-of-kin's "derivative" claim. In other words, Defendants say that if, for any reason, Parlin cannot sue them for his death, no one else can. Now, the court will consider the implications of a wrongful death claim's derivative nature in this case's context.

Delaware courts have repeatedly held that if a decedent's estate fails to sue the tortfeasor before the statute of limitations has run, any wrongful death claim is also time barred. *Drake v. St. Francis Hospital*[FN28] holds that "the statutory right of action created by the Delaware wrongful death statute has *always* been a separate and different right of action than that held by the deceased. Nevertheless, in this jurisdiction, it has been 'held subject to the same [infirmities] as would have existed in a suit by the deceased if still alive.' " [FN29] *Drake,* as well as *Reyes v. Kent General Hospital,*[FN30] and *Milford Memorial Hospital, Inc. v. Elliott,*[FN31] hold that wrongful death claims are barred if decedent allowed the statute of limitations to lapse before dying.

> FN28. 560 A.2d 1059 (Del.1989).

> FN29. *Id.* at 1062. *See also Reyes v. Kent Gen. Hosp., Inc.,* 487 A.2d 1142, 1146 (Del.1984); *Milford Mem'l Hosp., Inc. v. Elliott,* 210 A.2d 858, 860 (Del.1965). *See also Lovett v. Chenney,* 2007 WL 687228, at *3 (Del.Super. March 2, 2007), *aff'd,* 2008 WL 4483736 (Del.Supr. Oct.7, 2008) (holding that, because decedent's remedies were limited to the Workers' Compensation Act, his estate could not maintain a tort action against his employer); *Young v. Allstate Ins. Co.,* 1990 WL 63959, at *2-3 (Del.Super.Feb.26, 1990) (holding that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)
(Cite as: 2009 WL 3636756 (Del.Super.))

wrongful death claims were barred because an exclusion in decedent's insurance policy would stand as an infirmity to decedent had he survived and filed suit).

FN30. 487 A.2d at 1145-46.

FN31. 210 A.2d at 860-61.

Defendants read too much into *Drake* and its progeny. The *Drake* line of cases stands for the proposition that, as to wrongful death claims, the statute of limitations on a decedent's claim works as a statute of repose, not only extinguishing decedent's primary claim, but also any derivative claim. The subtext to *Drake* is the concern that the derivative claimants are not given special treatment, such as extra time in which to file suit.

In contrast to the *Drake* line of cases, *Jones v. Elliott* [FN32] holds that, where a husband unilaterally releases his primary personal injury claim following a motor vehicle accident, his wife is not bound by the release and may still pursue a loss of consortium claim. [FN33] While *Jones* was not a wrongful death case, loss of consortium claims, like wrongful death claims, are derivative. [FN34] *Jones* explains:

FN32. 551 A.2d 62 (Del.1988).

FN33. *Id.* at 63, 65. *Cf. Sobolewski v. German,* 127 A. 49, 52 (Del.Super.1924) (holding that "[i]t being apparent that no action based on loss of consortium or damage to property could have been brought by the deceased, consequently, no such action can be maintained by the wife").

FN34. *See, e.g., Bejger v. Shreeve,* 1997 WL 524057, at *3 (Del.Super. April 15, 1997); *Thompson v. DuPont De Nemours, Rockford Ctr.,* 1991 WL 166122, at * 1 (Del.Super. July 31, 1991).

*6 The husband is the holder of the primary cause of action for physical injury against the tortfeasor, and thus only he can extinguish his

right to such claim. On the other hand, the wife is the holder of the derivative claim for loss of consortium. This is a claim for a separate and distinct injury resulting from the physical injury to the husband and may be maintained independently, if, as occurred here, the spouse having the direct claim has unilaterally foreclosed the opportunity to assert the consortium claim. [FN35]

FN35. *Jones,* 551 A.2d at 65.

Of course, "the physically injured spouse must have a valid claim in order for the loss of consortium claim to spring into existence." [FN36]

FN36. *Id.* at 64.

After *Jones,* in *Spadaro v. Abex Corporation,* [FN37] this court dealt with an issue similar to the one at hand. *Spadaro* involved wrongful death actions filed by a decedent's wife and two sons. Before his death, decedent and his spouse signed a release on their behalf and on behalf of their "heirs, executors, administrators, successors and assigns" that waived all claims against defendants. [FN38] While the court dismissed the spouse's wrongful death claim, *Spadaro* held that "since [the sons] had the power to contract for themselves, their parents did not have the power to contract for them." [FN39] Thus, because the sons did not sign the waiver, the court denied summary judgement for defendants on the sons' wrongful death claims. *Spadaro* explains:

FN37. 1993 WL 603378 (Del.Super.Sept.9, 1993).

FN38. *Id.* at * 1.

FN39. *Id.* at *2.

In Delaware, a wrongful death action is maintained for the benefit of the loved ones of the decedent and not for the benefit of the estate. Therefore, although a wrongful death claim is a derivative claim, this does not mean that a release of the underlying claim automatically releases the tortfeasor from wrongful death and loss of con-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)
**(Cite as: 2009 WL 3636756 (Del.Super.))**

sortium claims.FN40

> FN40. *Id.* at *1. *Cf. Perry v. Philadelphia. B. & W.R. Co.,* 77 A. 725, 735 (Del.Super.1910) (holding that "such right of action is dependent upon the right of the party injured, had he not died in consequence of his injuries, to maintain his action for personal injuries"); *but see Spadaro v. Abex Corp.,* 1994 WL 713840, at *1 (Del.Super. July 20, 1994) ("The *Perry* case, however, was decided under a prior version of the wrongful death act[.]").

In the instant case, while Parlin signed the employment agreement containing the release, the agreement does not purport to release any claims besides Parlin's. More importantly, Cynthia Parlin did not sign the agreement or a release. The sense of justice FN41 that saved the loss of consortium claim in *Jones* is at least as compelling in the wrongful death context. If a husband cannot unilaterally extinguish his wife's loss of consortium claim, he should not be able to unilaterally extinguish his next-of-kin's wrongful death claim.

> FN41. *Jones,* 551 A.2d at 65 ("[J]ustice requires that the wife's claim not be foreclosed by the husband's unilateral action.").

As *Jones* explains, "[t]here is a difference between the right to extinguish a primary cause of action and the right to extinguish a derivative cause of action." FN42 A release, signed only by the decedent and that fails to reference decedent's heirs, is not the type of "infirmity" spoken of by the courts in these cases, such as the tolling of the statute of limitations.

> FN42. *Id.*

It is one thing for the victim of a tort to choose not to sue the tortfeasor, as in *Drake, et al.,* or for Parlin to have agreed with Defendants to waive his

claims in return for insurance, as he did. It is something else for Defendants to send Parlin into a war zone without obtaining a waiver from his next-of-kin. The court cannot identify a legitimate reason why Parlin was inherently vested with authority to waive anyone else's rights besides his own. The fact that the family's claim is "derivative" only means that it begins with and flows from an actual tort against the deceased. Therefore, the waiver here simply extinguishes Parlin's claim. It does not vaporize Defendants' allegedly tortious behavior. Absent their victims' waivers, Defendants must answer to those whom Defendants have wronged. In short, Parlin's general release did not extinguish his family's wrongful death claim.

*7 Of course, Plaintiffs will have to prove liability to recover.FN43 After discovery, Defendants have leave to move for summary judgment if they can show, viewing the evidence in the proper light, that even if Parlin had not signed a release, he still could not have recovered in tort. Defendants contend that "under Delaware law, Mr. Parlin's primary assumption of the risk 'constitute[s] a complete bar to recovery, as a matter of law, even in a comparative negligence jurisdiction[,]' such as Delaware." FN44 At this early stage, however, this issue is not ripe.

> FN43. *Id.*

> FN44. *See Spencer v. Wal-Mart Stores East, LP,* 930 A.2d 881, 885-86 (Del.2007).

### C. Dubai Law and UAE Civil Code

Finally, based upon the court's limited knowledge of Dubai and UAE law, and the contradictory expert opinions submitted by the parties, it appears that under Dubai law, the release does not apply to Cynthia Parlin. Simply put, she did not sign the release and the release contains no reference to Parlin's heirs. Even under the UAE Civil Code, nothing indicates that the release extended to Parlin's wid-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)
**(Cite as: 2009 WL 3636756 (Del.Super.))**

ow or any other family member.[FN45]

> FN45. UAE Civil Code Art. 250 (quoted in Second Legal Op. of Hassan Arab, at 9) ("The effects of the contract shall extend to the contracting parties and their general successors ... unless it appears from the contract or from the nature of the transaction or from the provisions of the law that the effects were not to extend to a general successor."); *cf.* Art. 252 (quoted in Op. of Samir A. Salloum, at 14) ("a contract shall not impose an obligation upon a third party but may create a right in his favor").

Regardless, the applicability of Dubai or UAE law to the wrongful death claim is not dispositive, as the wrongful death claim arises through Delaware law. In other words, the validity of a release of claims under Delaware's wrongful death statute presents a question of Delaware law.

In sum, under Delaware and Dubai law, the release in Parlin's employment agreement is valid. Thus, his estate's survival claim is extinguished. Cynthia Parlin's wrongful death claim, however, is not barred because Parlin's unilateral release did not extend to his widow's claim.

### VII.

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** as to the deceased's survival claim, and **DENIED** as to Cynthia Parlin's wrongful death claim.

**IT IS SO ORDERED.**

Del.Super.,2009.
Parlin v. Dyncorp Intern., Inc.
Not Reported in A.2d, 2009 WL 3636756 (Del.Super.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Not Reported in F.Supp.2d, 2008 WL 2456491 (W.D.Pa.)
**(Cite as: 2008 WL 2456491 (W.D.Pa.))**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Pennsylvania.
PITTSBURGH INSTITUTE OF AERONAUTICS,
Plaintiff,
v.
ALLEGHENY COUNTY AIRPORT AUTHOR-
ITY, A Political Subdivision of the Commonwealth
of Pennsylvania, Defendant.
**No. 2:07cv1638.**

June 16, 2008.

John J. Romza, Covelli Law Offices, Pittsburgh,
PA, for Plaintiff.

Robert J. Williams, Schnader, Harrison, Segal &
Lewis, Pittsburgh, PA, for Defendant.

### *MEMORANDUM ORDER*

DAVID STEWART CERCONE, District Judge.

**\*1** AND NOW, this 16th day of June, 2008, upon
due consideration of plaintiff's Motion for Remand
(Document No. 5) and the parties' submissions in
conjunction therewith, IT IS ORDERED that
plaintiff's motion be, and the same hereby is, gran-
ted and the action is remanded pursuant to 28
U.S.C. § 1447(c) to the Court of Common Pleas of
Allegheny County forthwith.

On November 30, 2007, defendant removed this ac-
tion on the grounds that plaintiff's breach of con-
tract claim "arises under" the Constitution because
it turns on the application of federal statutes and
regulations, and, in the alternative, defendant is en-
titled to invoke the "federal officer defense" pursu-
ant to 28 U.S.C. § 1442(a). Defendant's reliance on
either ground to establish jurisdiction is misplaced.

It is well settled "that for a civil action to arise un-

der 28 U.S.C. § 1331(a), the 'right or immunity cre-
ated by the Constitution or laws of the United
States must be an element, and an essential one, of
the plaintiff's cause of action' and that 'the contro-
versy must be disclosed upon the face of the com-
plaint, unaided by the answer or by the petition for
removal.' " *Westmoreland Hospital Association v.
Blue Cross of Western Pennsylvania,* 605 F.2d 119,
122 (3d Cir.1979) (*quoting Gully v. First National
Bank,* 299 U.S. 109, 112-13, 57 S.Ct. 96, 81 L.Ed.
70 (1936)), *accord First National Bank of Aberdeen
v. Aberdeen National Bank,* 627 F.2d 843 (8th
Cir.1980) (federal law must be essential element of
plaintiff's cause of action to remove on basis of fed-
eral question jurisdiction). Here, plaintiff's com-
plaint unequivocally raises a cause of action for
common law breach of contract, notwithstanding
defendant's attempt to construe the action as turning
on whether plaintiff breached a separate contract
involving federal law and regulations. Because fed-
eral law is not implicated in plaintiff's cause of ac-
tion, defendant cannot transcend the well pleaded
complaint rule by raising a separate breach of con-
tract claim.

It equally is well settled that in order for a court to
exercise jurisdiction under § 1442(a) a defendant
must establish that (1) it is a "person" within the
meaning of the statute; (2) the plaintiff's claims are
based upon conduct by the defendant "acting un-
der" a federal office; (3) it raises a colorable federal
defense; and (4) there is a casual nexus between the
claims and the conduct performed under color of a
federal office. *Feidt v. Owens Corning Fiberglas
Corp.,* 153 F.3d 124, 127 (3rd Cir.1998) (citing
*Mesa v. California,* 489 U.S. 121, 129, 109 S.Ct.
959, 103 L.Ed.2d 99 (1989)). Additionally, a
private party invoking § 1442(a)(1) bears the spe-
cial burden of establishing the official nature of its
activities in order to overcome the strong policy
reasons against extending the federal officer de-
fense to private individuals. *N.J. Dept. of Envtl.
Protection v. Exxon Mobile Corp.,* 381 F.Supp.2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2456491 (W.D.Pa.)
**(Cite as: 2008 WL 2456491 (W.D.Pa.))**

398, 403 (D.N.J.2005).

Defendant's contention that it is entitled to invoke the federal officer defense is without merit. Assuming without deciding that the Allegheny Airport Authority is a "person" for purposes of § 1442(a), defendant cannot satisfy the second prong of the test. In order to make a showing that one acted under a federal office, one must unequivocally demonstrate that it performed the activity complained of at the direction of official federal authority and a federal officer had direct and detailed control over the activity. *Exxon Mobile Corp.,* 381 F.Supp.2d at 404. Establishing that the relevant acts occurred under the general auspices of federal direction is insufficient because mere participation in a regulated industry does not prove direct and detailed control. *Good v. Armstrong World Indus.,* 914 F.Supp. 1125, 1128 (E.D.Pa.1996); *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 947 (E.D.N.Y.1992).

**\*2** Defendant has not identified a sound basis from which to conclude that it was acting pursuant to any detailed federal direction. Instead, it asserts that the holdings in *Ryan* and *Teague v. Grand River Dam Authority,* 279 F.Supp. 703 (N.D.Okla.1968), stand for the proposition that action taken pursuant to federal regulation can constitute detailed federal direction. But a careful reading reveals that in each case a federal officer issued direct orders to the defending parties. *See Ryan* 781 F.Supp. at 950 (The government issued orders subjecting the defendant to criminal sanctions for disobedience.); *Teague,* 279 F.Supp. at 705 (The Army Corp of Engineers ordered the Grand River Dam Authority to open flood gates.). Here, no such direct order was issued. Because defendant can only demonstrate that it was acting pursuant to general federal regulation, the court lacks jurisdiction under § 1442(a).

W.D.Pa.,2008.
Pittsburgh Institute of Aeronautics v. Allegheny County Airport Authority
Not Reported in F.Supp.2d, 2008 WL 2456491 (W.D.Pa.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

FILED
2010 Apr-15  AM 09:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA - SOUTHERN DIVISION

| | | |
|---|---|---|
| KRIS M. CHILDERS, individually, and as the personal representative of the Estate of **DAYTON SHEPHERD**, deceased, | ) ) ) ) ) | Civil Action No.: |
| **Plaintiffs,** | ) ) | CV 10-PWG-0944-S |
| vs. | ) ) | |
| **LONG-LEWIS, INC.,** individually and as successor to **BURRELL CORP.,** f/k/a **LONG LEWIS HARDWARE COMPANY; et al.,** | ) ) ) ) ) | **JURY DEMAND** |
| **Defendants.** | ) | |

**PLAINTIFFS'
EXHIBIT
C**

### NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER

Kris M. Childers, individually, and as the personal representative of the Estate of Dayton Shepherd, deceased, ("Plaintiffs"), by and through undersigned counsel, hereby oppose the Conditional Transfer Order filed April 13, 2010, in the case captioned above to the United States District Court for the Eastern District of Pennsylvania for the following reasons:

1. Plaintiffs have filed a Motion to Remand in this Court.

2. Plaintiffs have filed a Request for Emergency Hearing before this Court.

Wherefore, Plaintiffs respectfully request that this court stay the above captioned case.

1

Respectfully Submitted,

s/Leila H. Watson
Leila H. Watson (ASB-3023-S74L)
*Attorney for Plaintiffs*

**OF COUNSEL:**

CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue
Birmingham, Alabama 35205
Phone:       205-328-2200
Facsimile:   205-324-7896
Email:       lwatson@cwcd.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be available to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court system.

s/Leila H. Watson
OF COUNSEL