IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HOMER MOORE, | Case No. CV 10-01638 RS |
| Plaintiff, | **ORDER GRANTING REMAND** |
| v. | |
| ASBESTOS DEFENDANTS (B*P), et al, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Homer Moore ("Moore") filed a complaint in the Superior Court of California, County of San Francisco on March 2, 2010, alleging asbestos-related injuries against various defendants, including Metalclad Insulation Corporation ("Metlaclad"). Moore alleges that he was exposed to asbestos while working at Mare Island Naval Shipyard as a shipwright from 1964 to 1971 and as an insulator from 1971 to 1974. He alleges that Metalclad is liable because, in December 1968, Metalclad brokered a shipment to the U.S. Navy of asbestos-containing Unibestos thermal insulation from Pittsburg Corning for use in the nuclear reactor compartments of certain U.S. Navy submarines: the USS Drum, the USS Guitarro, the USS Hawkbill and the USS Pintado.

Metalclad filed its Notice of Removal with this Court on April 16, 2010, claiming federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1). Specifically, Metalclad alleges that it has a colorable military contractor defense to Moore's claims. Plaintiff moves to remand the case back to the San Francisco Superior Court.

## II. LEGAL STANDARD

A party seeking removal under 28 U.S.C. § 1442(a)(1) must demonstrate: (1) that it is a person within the meaning of the statute; (2) that it acted under the direction of a federal officer; (3) that it raises a colorable federal defense to plaintiff's claims; and (4) that there is a causal nexus between plaintiff's claims and the acts defendant performed under color of federal law. *Mesa v. California*, 489 U.S. 121, 124-125 (1989); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-572 (N.D. Cal. 1992). Generally, there is a strong presumption against removal jurisdiction and, as a result, removal statutes are to be construed strictly against removal. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566-567 (9th Cir. 1992). Federal officer removal, however, is an exception to this rule, such that "when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

The military contractor defense "immunizes contractors who supply military equipment to the Government from the duties imposed by state tort law." *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 810 (9th Cir. 1992). As this defense is an affirmative defense, the defendant has the burden of proof. *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997). The defense is appropriate when the defendant establishes that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the suppliers but not the United States." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1998).

Defendants can only invoke the military contractor defense, however, where the materials delivered to the United States constitute "military equipment." *In re Hawaii*, 960 F.2d at 812. "Where the goods ordered by the military are those readily available, in substantially similar form, to commercial users, the military contractor defense does not apply." *Id.* at 811. A mere showing that the manufacture and design of materials "occurred under the general auspices of federal direction" is not in and of itself sufficient to show that the materials qualify as "military equipment." *See Fung*, 816 F.Supp. at 572. Rather, a majority of courts have held that a

1 defendant seeking removal must show that "the federal official [had] 'direct and detailed control'
2 over the defendant." *Id.* (quoting *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D.N.Y.
3 1992).
4    Similarly, in the face of a state failure to warn claim, the military contractor defense
5 applies when: "(1) the United States exercised its discretion and approved the warnings, if any;
6 (2) the contractor provided warnings that conformed to the approved warnings; and (3) the
7 contractor warned the United States of dangers in the [product's] use about which the contractor
8 knew, but the United States did not." *Oxford v. Foster Wheeler*, 177 Cal. App. 4th 700, 712
9 (2009). The military contractor defense is inapplicable to a failure to warn claim unless there is
10 evidence that "in making its decision whether to provide a... suitable warning, [the defendant]
11 was 'acting in compliance with reasonably precise specifications imposed on [it] by the United
12 States.'" *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996) (citing *In re
13 Federal Asbestos Cases*, 960 F.2d 806, 813 (9th Cir.1992)).
14                                III. DISCUSSION
15    Two courts in this district have decided motions to remand following removal by
16 Metalclad of state-filed claims based upon facts very similar to those presented here. *See
17 Delahaye v. Asbestos Defs.*, Case No. C09-5504 JSW, 2010 WL 366611 (N.D. Cal. Jan. 25,
18 2010); *Fong v. Asbestos Defs.*, Case No. C10-0287 THE, 2010 WL 1526099 (N.D. Cal. Apr 15,
19 2010). Although neither *Delahaye* nor *Fong* represent binding authority, this Court adopts the
20 reasoning in those decisions for the purpose of evaluating whether the 1968 shipment of
21 Unibestos constituted "military equipment."
22    In its opposition, Metalclad maintains that the decisions in *Delahaye* and *Fong* did not
23 address, (1) the argument that the special purity and certification requirements under MIL-I-
24 24244, a military specification requiring that insulation used in nuclear compartments be free
25 from certain contaminants, differentiated the 1968 shipment of Unibestos from the insulation
26 used previously such that the 1968 shipment was in fact "military equipment," or (2) the
27 additional evidence in the form of expert testimony from Rear Admiral Ben J. Lehman (Ret.)
28 ("Lehman") that the Navy precluded Metalclad from making any warnings about the hazards of

the Unibestos it supplied. The evidence presented, however, fails to satisfy Metalclad's burden of establishing a colorable federal defense because none of this evidence demonstrates that the Navy had "direct and detailed" control over the design and manufacturing of the Unibestos, or that Metalclad was precluded from placing warning labels on its product.

A. Military Equipment

In his motion to remand, Moore argues that the Unibestos Metalclad brokered for the Navy was never required to contain asbestos, was not manufactured pursuant to a design promulgated by the military and was available to the general commercial market, and therefore was not designed with unique military applications in mind. In support of the commercial availability of Unibestos, plaintiff submits an advertisement from Union Asbestos and Rubber Company ("UNARCO"), which designed and produced Unibestos beginning in 1936 until Pittsburgh Corning purchased the product line in 1962. Grant Decl. in Supp. of Mot. Exhs. C, E; Feng Decl. Exhs. J-M.

In its opposition, Metalclad asserts that the Unibestos Metalclad brokered in 1968 was "nuclear grade," and was designed and manufactured pursuant to an Award Contract that specified a number of detailed requirements. Specifically, Metalclad argues that the Unibestos was manufactured in conformity with Navy specification MIL-I-24244, which enumerated certain standards as to the insulation's purity and corrosive qualities that were in addition to requirements imposed by previous specifications.[1] MIL-I-24244 also imposed a number of testing and control requirements, and the Metalclad Award Contract mandated that Navy employees be present at Pittsburg Corning's plant to ensure that the brokered Unibestos complied with those requirements. Heflin Decl. at ¶¶ 9L, 11. Metalclad argues that these purity and testing standards deemed the Unibestos that satisfied MIL-I-24244 as "military equipment." None of this evidence, however, demonstrates that the Navy actually had "direct and detailed" control over the brokered Unibestos. See Fung, 816 F.Supp. at 572. Instead, the evidence simply suggests that the Unibestos met certain rigorous standards and requirements imposed by

---

[1] MIL-I-2781 was a military specification for thermal insulation that was developed over many years prior to the articulation of MIL-I-24244, and which lacked some of the additional requirements of MIL-I-24244. Heflin Decl. at ¶ 14.

4

CASE NO. CV 10-01638 RS
ORDER GRANTING MOTION TO REMAND

1  the Navy. As the Court in *Delahaye* explained, the fact that a contractor's product meets the
2  military's specifications does not by itself make that product "military equipment." 2010 WL
3  366611 at *3; *see also, See In re Hawaii*, 960 F.2d at 812. Here, Metalclad has presented no
4  other evidence of the Navy's "direct and detailed" control over the 1968 shipment besides the
5  Metalclad Award Contract, which, while it mandated certain testing and analysis of the piping
6  insulation, did not require any unique design or manufacturing specifications.[2] Lehman Decl.
7  Exh. B.

8      Nor is there any evidence that the Unibestos delivered in 1968 differed in any substantial
9  way from the material that, as indicated by the UNARCO advertisement, was readily available to
10  commercial users. Metalclad argues that the mere fact that the product satisfied the heightened
11  purity and testing requirements of MIL-I-24244 means that it must have been different from the
12  "non-nuclear grade" Unibestos that was sold commercially. Metalclad goes on to characterize
13  the brokered Unibestos as a "distinct formula" and as a "single shipment of Unibestos produced
14  and shipped pursuant to the classified MIL-I-24244 specification ('nuclear grade Unibestos')."
15  Def. Opp. at 1. Based upon the evidence presented, however, this characterization is without
16  support. In fact, Pittsburgh Corning, which manufactured the Unibestos from 1962 until 1972,
17  responded to a series of interrogatories as part of an asbestos class-action in the Superior Court
18  of California, County of San Francisco in 1997 with the statement that its "asbestos thermal
19  insulation product complied with: Military Specification MIL.I.24244 [and] Military
20  Specification MIL.I.2781..." Feng Decl., Exh. J at 31. What is worth noting is that Pittsburgh
21  Corning provided its "product" - in the singular - complied with both military specifications; it

---

[2] Metalclad additionally argues that "[t]he evidence adduced by Metalclad also colorably suggests that the testing and purity requirements for nuclear-grade Unibestos resulted in a different manufacturing process than that used for commercial Unibestos." Opp. at 18. This is a misapplication of the standard under *Mesa*. *Mesa* requires that the defendant raise a "colorable federal defense" to plaintiff's claims to support removal pursuant to 28 U.S.C. § 1442(a)(1). 489 U.S. at 124-125. Evidence of a different manufacturing run would support an inference, under the military contractor defense, that the product was military equipment because it was different from a product readily available to commercial users. *See In re Hawaii*, 960 F.2d at 811. Metalclad has presented no actual evidence, however, that there was in fact a different manufacturing process in this case; other evidence that "colorably suggests" such evidence is insufficient under *Mesa* or *In re Hawaii*. Moreover, as discussed below, statements from Pittsburg Corning, which manufactured the Unibestos in 1968, suggest that there was no separate manufacturing process for the brokered insulation.

1. did not go further by providing that the MIL-I-24244-complying insulation was somehow a
2. different product or formulation from that complying with MIL-I-2781. Moreover, Pittsburg
3. Corning also offered, in response to a series of interrogatories in a case venued in the United
4. States District Court for the Eastern District of Texas, that it "made no alterations [of Unibestos]
5. during 1962-1972." Grant Decl. in Supp. of Mot. Exh. D. In other words, contrary to
6. Metalclad's assertions, the evidence presented suggests that the Unibestos complying with MIL-
7. I-24244 actually had the same formulations as that which complied with MIL-I-2781, and was
8. readily available to commercial users.

9. Although Metalclad concludes that "this particular shipment of nuclear-grade Unibestos
10. was produced according to military specifications and possessed specific qualities that served a
11. military purpose" (Def. Opp. at 16), none of the evidence presented demonstrates that the
12. brokered Unibestos was created to fulfill a unique military need, or that the government
13. exercised "direct and detailed" control over the design and manufacture of the insulation.
14. Therefore, Metalclad has not met its burden of establishing that the 1968 shipment was "military
15. equipment" as is required under *In re Hawaii*.

16. B.    Duty to Warn

17. Metalclad also argues that it has presented a colorable defense to Moore's state law
18. failure to warn claims because the military precluded Metalclad from making any warnings
19. about the hazards of the Unibestos that it supplied. In support of this argument, Metalclad
20. introduces a declaration from Lehman, in which he attests that "it is my opinion that insulation
21. suppliers were prohibited from providing any warnings to be placed on or to accompany
22. insulation supplied to the Navy without the consent and approval of the Navy." Leham Decl. at
23. ¶ 12. According to Lehman, "[t]he Navy could not permit unauthorized hazard labels which
24. might interfere with the ability of sailors to perform their duties in the heat of battle... At most, it
25. is possible that suppliers of insulation delivered to the Navy could merely have told personnel to
26. follow the Navy's own mandates for handling asbestos." *Id.* at ¶ 14. "In short," Lehman attests,
27. "the Navy dictated every aspect of the design, manufacture, installation, overhaul, written
28.

1 documentation and warnings associated with its ships and did not permit deviation by any of its
2 contractors." *Id.* at ¶ 9.
3      Metalclad, however, must show that it was complying with "reasonably precise
4 specifications" in deciding whether to provide a warning as to the brokered Unibestos. *Butler*,
5 89 F.3d at 586. None of the evidence presented, including the Lehman declaration, suggests that
6 this was the case. Although Lehman attests that "[c]onsistent with the practice of Navy
7 contractors at that time, I understand that Unibestos insulation was delivered with an asbestos
8 warning label on the outside of the packaging starting in November of 1968," he provides no
9 evidence of what that warning label contained or which Navy specifications mandated the
10 contents of that warning. Nor does the Award Contract, or any of the other voluminous evidence
11 presented by Metalclad, indicate which "reasonably precise specification" Metalclad was
12 following that precluded it from adding a warning label. Indeed, although Lehman draws
13 general conclusions about the Navy's standardization of warning labels, Metalclad offers no
14 evidence of any particular Navy specification that would have been in conflict with its duties to
15 warn under state law. Without such evidence, the generalized notion that the Navy controlled
16 warning label content does not defeat a failure to warn claim. In short, in the absence of any
17 effort to warn about the dangers of asbestos, Metalclad cannot rely on the hypothetical assertion
18 that such an effort would have been futile. Therefore, Metalclad's defense to the failure to warn
19 claims, as it relates to the military contractor defense, is not "colorable" and cannot defeat
20 plaintiff's motion to remand.
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

7

CASE NO. CV 10-01638 RS
ORDER GRANTING MOTION TO REMAND

## V. CONCLUSION

For the reasons stated above, the motion to remand is granted. However, because Metalclad presented additional arguments based upon new evidence from those submitted in *Delahaye* and *Fong*, and because those arguments raised a close question of law, the request for sanctions is denied.

IT IS SO ORDERED.

Dated: 07/01/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE