# TUCKER ELLIS & WEST LLP

### ATTORNEYS AT LAW

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 17 2010

FILED
CLERK'S OFFICE

135 Main Street   Suite 700   San Francisco, California   94105
phone 415.617.2400   facsimile 415.617.2409   www.tuckerellis.com

CLEVELAND   COLUMBUS   LOS ANGELES   SAN FRANCISCO

Direct Dial: 415-617-2210
Email: monica.williams@tuckerellis.com

MDL 875

July 30, 2010

Clerk of the Panel
Judicial Panel on Multi-District Litigation
One Columbus Circle, N.E.
Thurgood Marshall Federal Judiciary Building
Room G-255, North Lobby
Washington, DC 20002-8004

**Re:    In Re: Asbestos Product Liability Litigation (No. VI)**
**MDL 875 Proceedings**

Dear Clerk of the Panel:

Pursuant to Rule 7.5(e) of the Rules of the Judicial Panel on Multidistrict Litigation, we write on behalf of our client, defendant Carrier Corporation, to notify the Clerk of the Panel of the following potential "tag-along" action in MDL No. 875:

<u>Theresa Hinkle, et al. v. A.W. Chesterton Company, Inc., et al.</u>

This asbestos-related action is pending in the United States District Court for the Northern District of California, Civil Action No. <u>CV10-3329 EMC</u>.

As the enclosed Complaint indicates, this action involves questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Eduardo C. Robreno. We respectfully request that your "tag-along" procedures be utilized to transfer the <u>Hinkle</u> action to the MDL 875 proceedings pending before Judge Robreno of the Eastern District of Pennsylvania for coordinated pre-trial proceedings.

2010 AUG -2   P 3: 00
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION
RECEIVED
CLERK'S OFFICE

SFOiManage/011939/002404/190322

**OFFICIAL FILE COPY**

IMAGED AUG 17 2010

PLEADING NO. 6270

## TUCKER ELLIS & WEST LLP

ATTORNEYS AT LAW

Clerk of the Panel
July 30, 2010
Page 2

    Copies of this letter have been served on all known counsel in the <u>Hinkle</u> action. Additionally, a copy of this letter will be served on the Northern District Court, the Clerk of the Court for the Eastern District of Pennsylvania and to Judge Robreno, to whom the previously transferred asbestos actions have been assigned.

Respectfully submitted,

TUCKER ELLIS & WEST LLP

Monica D. Williams

Enclosures

cc:    All Counsel (w/out enclosures)
       Bruce Lassman, Esq. (enclosures)
       Honorable Eduardo C. Robreno (enclosures)
       Clerk, USDC Eastern District of PA (enclosures)
       Clerk, USDC Northern District of CA (enclosures)



SUMMONS ISSUED

# FILED

San Francisco County Superior Court

SEP 2 2 2009

GORDON PARK-LI, Clerk

_____ Chris Butt _____
Deputy Clerk

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 1 7 2010

FILED
CLERK'S OFFICE

Stephen M. Fishback, Esq. (State Bar No. 191646)
Daniel L. Keller, Esq. (State Bar No. 191738)
J. Bruce Jackson (State Bar No. 173215)
**KELLER, FISHBACK & JACKSON LLP**
18425 Burbank Blvd., Suite 610
Tarzana, CA 91356
Telephone:  818.342.7442
Facsimile:  818.342.7616

CASE MANAGEMENT CONFERENCE SET

AUG 1 8 2010   -1:30PM

DEPARTMENT 206

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE CITY AND COUNTY OF SAN FRANCISCO
## (UNLIMITED JURISDICTION)

| | |
|---|---|
| THERESA HINKLE, individually and successor in interest to JOHN HINKLE, JR., deceased; DEBORAH ASPLING; LEILANI BURGUIN; and CARLA HINKLE;<br><br>        Plaintiffs,<br><br>vs.<br><br>A.W. CHESTERTON COMPANY, INC.; ASBESTOS CORPORATION LTD.; BELL & GOSSETT; BORG-WARNER CORPORATION by its successor-in-interest BORGWARNER MORSE TEC INC.; BUFFALO PUMPS, INC.; CARRIER CORPORATION; CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-in-interest to and formerly known as VIACOM, INC. and WESTINGHOUSE ELECTRIC CORPORATION; CRANE CO.; CROSBY VALVE, INC.; CROWN CORK & SEAL COMPANY, INC., individually and as successor-in-interest to MUNDET CORK COMPANY; DANA CORPORATION; DOUGLASS INSULATION COMPANY, INC.; DOWMAN PRODUCTS, INC.; | Case No.  **CGC-09-275360**<br><br>**COMPLAINT FOR DAMAGES**<br>**(WRONGFUL DEATH)**<br>**(ASBESTOS)**<br><br>**(ACTION IS SUBJECT TO GENERAL ORDERS IN FILE NO. 828684)**<br><br>Negligence<br>Strict Liability<br>False Representation Under Restatement<br>    Section 402-B<br>Intentional Tort<br>Premises Owner/Contractor Liability<br>Negligence- Vehicle, Clutch & Brake<br>    Components<br>Strict Liability- Vehicle, Clutch & Brake<br>    Components<br>Survival Action<br><br>**THIS CASE IS SUBJECT TO MANDATORY ELECTRONIC FILING PURSUANT TO AMENDED G.O. 158** |

COMPLAINT FOR WRONGFUL DEATH

PAGE 1

DURABLA MANUFACTURING COMPANY;
FAIRBANKS MORSE COMPANY;
FLOWSERVE CORPORATION, individually
    and as successor-in- interest to
    WORTHINGTON PUMPS and
    DURAMETALLIC CORPORATION;
FMC CORPORATION;
FORD MOTOR COMPANY;
FOSTER WHEELER LLC;
GARLOCK SEALING TECHNOLOGIES,
    LLC, individually and successor-in-interest
    to GARLOCK, INC.;
GENERAL ELECTRIC COMPANY;
GEORGIA-PACIFIC CORPORATION;
GRINNELL CORPORATION;
HIGHLAND STUCCO AND LIME
    PRODUCTS, INC.;
HONEYWELL INTERNATIONAL, INC.
    individually and formerly known as ALLIED
    SIGNAL, INC., as successor-in-interest to
    the BENDIX CORPORATION;
IMO INDUSTRIES, INC. individually and as
    successor-in-interest to DELALVAL
    PUMPS and WARREN PUMPS;
INGERSOLL-RAND COMPANY;
ITT INDUSTRIES, INC. individually and as
    successor-in-interest to BELL & GOSSETT;
J.T. THORPE & SON, INC.;
JOHN K. BICE CO., INC.;
KAISER GYPSUM COMPANY, INC.;
METALCLAD INSULATION
    CORPORATION, individually and as
    successor-in-interest to NOR-CAL
    INSULATION;
MINNESOTA MINING CORPORATION aka
    3M COMPANY;
OWENS-ILLINOIS, INC.;
PAREX LAHABRA INC., fka LA HABRA
    PRODUCTS, INC.;
RAPID AMERICAN CORP., individually and
    as successor-in-interest to PHILIP CAREY
    CORPORATION;
RPM, INC.;
SEPCO CORPORATION:
SOCO-WEST, INC.;
STERLING FLUID SYSTEMS (USA) LLC,
    dba and individually and successor-in-interest
    to PEERLESS PUMP COMPANY, INDIAN

HEAD, INC.;
THE GOODYEAR TIRE & RUBBER
   COMPANY;
TRANE USA INC.;
UNION CARBIDE CORPORATION;
WARREN PUMPS, LLC;
YORK INTERNATIONAL CORPORATION;
DOES 1-500;
         Defendants

---

Plaintiffs herein and hereby allege as follows in this Complaint for Damages, Wrongful Death Asbestos, as follows:

Plaintiffs, THERESA HINKLE, individually and successor in interest to JOHN HINKLE, JR., deceased; DEBORAH ASPLING; LEILANI BURGUIN; and CARLA HINKLE; hereinafter "Plaintiffs" COMPLAIN AND ALLEGE AS FOLLOWS:

1. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 500, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein anonymously as a DOE 1-500 is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages thereby to the plaintiffs, as hereinafter alleged.

2. At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. This action is subject to the San Francisco Superior Court's General Orders.

3. Plaintiffs are informed and believe, and thereon alleges that at all times herein mentioned, defendants on Exhibits "B" – "C" and DOES 1 through 500, inclusive, were and are

corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## FIRST CAUSE OF ACTION
### (Negligence)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:**

4.   At all times herein mentioned, each of the named defendants and DOES 1  through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants are liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of

1  plaintiffs' remedies against each such "alternate entity"; defendants, and each of them, have

2  acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such

3  "alternate entity"; defendants, and each of them, caused the destruction of plaintiffs' remedies

4  against each such "alternate entity"; each such defendant has the ability to assume the risk-

5  spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

6  originally attached to each such "alternate entity."

7     5.  At all times herein mentioned, defendants, their "alternate entities," and each of them,

8  were and/or are engaged in the business of researching, manufacturing, fabricating, designing,

9  modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

10  inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-

11  branding, manufacturing for others, packaging and advertising a certain product, namely asbestos

12  and other products containing asbestos.  Said asbestos and other products containing asbestos

13  (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-containing

14  products") specifically include, but are not limited to: adhesives/tape/mastic; insulating and

15  insulation materials, boilers, refractory materials, pumps, compressors, valves, motors, turbines,

16  cloth, chillers, heaters, condensers, gaskets, packing, brakes, clutches, engines, automobiles,

17  trucks, and other automotive component parts, wallboard, joint/taping compound, acoustical

18  products, fireproofing, plaster, stucco, asbestos fiber product, and other materials containing

19  asbestos currently unknown or unspecified by plaintiffs but likely to be ascertained during the

20  course and scope of discovery and investigation.

21     6.  At all times herein mentioned, defendants, their "alternate entities" and each of them,

22  singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed,

23  modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health

24  hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected,

25  serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

26  manufactured for others, packaged and advertised, a certain product, namely asbestos, and other

27  products containing asbestos, in that said products caused personal injuries to users, consumers,

28  workers, bystanders and others, including the Decedent herein, (hereinafter collectively called

**COMPLAINT FOR WRONGFUL DEATH**                                                    PAGE 5

1   "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby
2   rendering said products unsafe and dangerous for use by "exposed persons".

3       7. Defendants, their "alternate entities," and each of them, had a duty to exercise due care
4   in the pursuance of the activities mentioned above and defendants, and each of them, breached said
5   duty of due care.

6       8. Defendants, their "alternate entities" and each of them, knew, or should have known,
7   and intended that the aforementioned asbestos and products containing asbestos would be
8   transported by truck, rail, ship and other common carriers, that in the shipping process the products
9   would break, crumble or be otherwise damaged; and/or that such products would be used for
10  insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other
11  applications, including, but not limited to sawing, chipping, hammering, scraping, sanding,
12  breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos
13  fibers, and that through such foreseeable use and/or handling "exposed persons," including
14  Decedent herein, would use or be in proximity to and exposed to said asbestos fibers.

15      9. Decedent has used, handled or been otherwise exposed to asbestos and asbestos-
16  containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
17  exposure to asbestos and asbestos-containing products occurred at various locations as set forth in
18  Exhibit "A," among others, attached to plaintiffs' Complaint and incorporated by reference herein.
19
20      9a.   Defendants, their "alternate entities," and each of them breached their legal duties
21  by, among other acts and inactions:

22      (a) failing to warn Decedent of the dangers, characteristics, and potentialities of their
23  asbestos-containing products when they knew or should have known that exposure to their
24  asbestos-containing products would cause disease and injury;
25      (b) failing to warn Decedent of the dangers to which he was exposed when they knew or
26
27  should have known of the dangers;
28      (c) failing to exercise reasonable care to warn Decedent of what would be safe, sufficient,

1   and proper protective clothing, equipment, and appliances when working with or near or being

2   exposed to their asbestos and asbestos-containing products;

3          (d) failing to provide safe, sufficient and proper protective clothing, equipment and

4   appliances with their asbestos and asbestos-containing products;

5          (e) failing to test its asbestos and asbestos-containing products in order to ascertain the

6   extent of danger involved upon exposure thereto;

7          (f) failing to conduct such research as should have been conducted in the exercise of

8   reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and

9   asbestos-containing products;

10

11         (g) failing to remove the product or products from the market when the defendants'

12   corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-

13   containing products;

14         (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to

15   asbestos to adequately warn and apprise Decedent of said dangers, hazards, and potentialities

16   discovered;

17

18         (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos

19   to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards,

20   and potentialities;

21         (j) failing to advise Decedent and others that the risks inherent in their asbestos-containing

22   product greatly outweighed the benefits, if any,  afforded by such products; and

23

24         (k) generally using unreasonable, careless, and negligent conduct in the manufacture,

25   fabrication, supply, distribution, sale, installation, and/or use of their asbestos and asbestos-

26   containing products, among other actions/inactions.

27         Plaintiffs disclaim any cause of action or recovery for any injuries and damages resulting

28

from exposure to asbestos caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States Government acting within in his official capacity. To the extent that any of the Decedent's relevant asbestos exposure occurred on board active vessels or aircraft of the United States military or the construction and/or repair of such vessels or aircraft occurred on proven federal enclaves, plaintiffs' negligence and strict liability claims against manufacturers, sellers and suppliers of pumps, valves, boilers, turbines, separators, steam traps, engines and other mechanical or similar equipment installed in such vessels and aircraft are not based on the theory of defective design, but rather on the theory of failure to warn of the health risks and hazards associated with working with and/or around asbestos and asbestos-containing products only and renders such defendants liable in both negligence and in strict products liability for such marketing defect.

10.  As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused Decedent, JOHN HINKLE, JR., to contract asbestosis, asbestos pleural diseases, lung cancer, and other asbestos-related diseases, from which he died on or about September 23, 2008.

11.  Plaintiffs did not learn of the causal relationship between Decedent's exposure to asbestos and his death until less than one year before the date on which this complaint is filed.

12.  Plaintiffs are the heirs of JOHN HINKLE, JR., deceased, as follows:

A.      THERESA HINKLE, spouse and successor-in-interest to JOHN HINKLE, JR;

B.      DEBORAH ASPLING, daughter;

C.      LEILANI BURGUIN, daughter;

D.      CARLA HINKLE, daughter.

13.   Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

14.   Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

15.   As a result of the conduct of defendants, and each of them, plaintiffs' sustained pecuniary loss resulting from the loss of love, comfort, society, attention, services and support of Decedent in a sum invoking the unlimited jurisdiction limits of this Court.

16.   The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
#### (Strict Liability)

**AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

17.   Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations contained in Paragraphs 4-5 and 8-16 of the First Cause of Action herein.

18.   Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or

COMPLAINT FOR WRONGFUL DEATH

1    user without inspection for defects therein or in any of their component parts and without

2    knowledge of the hazards involved in such use.

3        19.   Said asbestos and asbestos-containing products were defective and unsafe for their

4    intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The

5    defect existed in the said products at the time they left the possession of defendants, their

6    "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including

7    asbestosis, other lung damage, and cancer to "exposed persons," including Decedent herein, while

8    being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and

9    dangerous for use.

10       20.   "Exposed persons" did not know of the substantial danger of using said products. Said

11    dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate

12    entities," and each of them, further failed to adequately warn of the risks to which Decedent and

13    others similarly situated were exposed.

14       21.   In researching, manufacturing, fabricating, designing, modifying, testing or failing to

15    test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

16    sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

17    marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos

18    and asbestos-containing products, defendants, their "alternate entities," and each of them, did so

19    with conscious disregard for the safety of "exposed persons" who came in contact with said

20    asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and

21    each of them, had prior knowledge that there was a substantial risk of injury or death resulting

22    from exposure to asbestos or asbestos-containing products, including, but not limited to,

23    mesothelioma, lung cancer, and asbestosis.  Said knowledge was obtained, in part, from scientific

24    studies, government data, and medical data to which defendants had access, as well as scientific

25    studies performed by, at the request of, or with the assistance of, said defendants, their "alternate

26    entities," and each of them, and which knowledge was obtained by said defendants, their "alternate

27    entities," and each of them on or before 1930, and thereafter.

28       22.   On or before 1930, and thereafter, said defendants, their "alternate entities" and each

**COMPLAINT FOR WRONGFUL DEATH**

1  of them, were aware that members of the general public and other "exposed persons," who would

2  come in contact with their asbestos and asbestos-containing products, had no knowledge or

3  information indicating that asbestos or asbestos-containing products could cause injury, and said

4  defendants, their "alternate entities," and each of them, knew that members of the general public

5  and other "exposed persons," who came in contact with asbestos and asbestos-containing products,

6  would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products

7  was safe, when in fact said exposure was extremely hazardous to health and human life.

8       23.    With said knowledge, said defendants, their "alternate entities," and each of them,

9  opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

10  offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant,

11  re-brand, manufacture for others, package and advertise said asbestos and asbestos-containing

12  products without attempting to protect "exposed persons" from or warn "exposed persons" of, the

13  high risk of injury or death resulting from exposure to asbestos and asbestos-containing products.

14  Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high

15  risk of injury or death resulting from exposure to asbestos and asbestos-containing products,

16  defendants, their "alternate entities," and each of them, intentionally failed to reveal their

17  knowledge of said risk, and consciously and actively concealed and suppressed said knowledge

18  from "exposed persons" and members of the general public, thus impliedly representing to

19  "exposed persons" and members of the general public that asbestos and asbestos-containing

20  products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and

21  each of them, engaged in this conduct and made these implied representations with the knowledge

22  of the falsity of said implied representations.

23       24.    The above-referenced conduct of said defendants, their "alternate entities," and each

24  of them, was motivated by the financial interest of said defendants, their "alternate entities," and

25  each of them, in the continuing, uninterrupted research, design, modification, manufacture,

26  fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection,

27  installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing

28  for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance

1   of said financial motivation, said defendants, their "alternate entities," and each of them,

2   consciously disregarded the safety of "exposed persons" and in fact were consciously willing and

3   intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons"

4   and induced persons to work with and be exposed thereto, including Decedent.

5         25.   Plaintiffs allege that the aforementioned defendants, their "alternate entities," and

6   each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for

7   their intended use but that their asbestos and asbestos-containing products, created an

8   unreasonable risk of bodily harm to exposed persons.

9         26.   Plaintiffs further allege Decedent's injuries are a result of cumulative exposure to

10   asbestos and various asbestos-containing products manufactured, fabricated, inadequately

11   researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased,

12   bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

13   repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by

14   the aforementioned defendants, their "alternate entities," and each of them and that plaintiffs

15   cannot identify precisely which asbestos or asbestos-containing products caused the injuries

16   complained of herein.

17         27.   Decedent relied upon defendants, their "alternate entities'," and each of their

18   representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-

19   containing products.  As a direct and proximate result of the conduct of the defendants, their

20   "alternate entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-

21   containing products caused Decedent to contract asbestosis, lung cancer and other asbestos-

22   related diseases from which he died on September 23, 2008.

23         WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

24   each of them, as hereinafter set forth.

25   / / /

26   / / /

27   / / /

28   **THIRD CAUSE OF ACTION**

**(False Representation Under Restatement of Torts Section 402-B)**

**AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

28.   Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

29.   At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the defendants, their "alternate entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the Decedent herein and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

30.   The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the Decedent and his employers, relied upon said representations of defendants, their "alternate entities," and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

31.   Said representations by defendants, their "alternate entities," and each of them, were false and untrue, and defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products  were not safe for their intended use, nor were they of merchantable quality as represented by defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the

1    health and life of said persons, including Decedent herein.

2        32.   As a direct and proximate result of the conduct of the defendants, their "alternate

3    entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing

4    products caused plaintiffs' Decedent to contract asbestosis, lung cancer and other asbestos-related

5    diseases from which he died on September 23, 2008.

6        WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

7    each of them, as hereinafter set forth.

8                          **FOURTH CAUSE OF ACTION**
9                              **(Intentional Tort)**

10   **AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF
     ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708**
11   **THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT
     "B," DOES 11-300, THEIR "ALTERNATE ENTITIES," AND ALLEGE AS**
12   **FOLLOWS:**

13

14       33.   Plaintiffs, by this reference, hereby incorporate by reference, as though fully set forth

15   herein, each and every allegation contained in the First and Third Causes of Action herein

16   excepting therefrom allegations pertaining to negligence.

17       34.   At all times pertinent hereto, the defendants, their "alternate entities," and each of

18   them, owed Decedent a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of

19   the State of California, to abstain from injuring the person, property or rights of the Decedent.

20   When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and

21   each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the

22   Decedent as is more fully set forth herein. Such acts and omissions consisted of acts falling within

23   Section 1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of

24   fact which were not true and which defendants, their "alternate entities," and each of them, did not

25   believe to be true; assertions of fact which were not true and which defendants, their "alternate

26   entities," and each of them, had no reasonable ground for believing to be true, and the suppression

27   of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any

28   one such duty gave rise to a cause of action for violation of the rights of the Decedent as provided

1    for in the aforementioned Civil Code sections.

2         35.    Since on or before 1930, the defendants, their "alternate entities," and each of them,

3    have known and have possessed the true facts of medical and scientific data and other knowledge

4    which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiffs'

5    First Cause of Action were and are hazardous to the health and safety of Decedent, and others in

6    Decedent's position working in close proximity with such materials. The defendants, their

7    "alternate entities," and each of them, have known of the dangerous propensities of other of the

8    aforementioned materials and products since before that time. With intent to deceive Decedent,

9    and others in Decedent's position, and with intent that he and such others should be and remain

10   ignorant of such facts with intent to induce Decedent and such others to alter his and their

11   positions to his and their injury and/or risk and in order to gain advantages, the following acts

12   occurred:

13         a.    Defendants, their "alternate entities," and each of them, did not label any

14   of the aforementioned asbestos-containing materials and products regarding the hazards of such

15   materials and products to the health and safety of Decedent, and others in Decedent's position

16   working in close proximity with such materials, until 1964 when certain of such materials were

17   labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein

18   when the knowledge of such hazards was existing and known to defendants, their "alternate

19   entities," and each of them, since on or before 1930. By not labeling such materials as to their said

20   hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to

21   Decedent that it was safe for Decedent to work in close proximity to such materials, when in fact it

22   was not true, and defendants, their "alternate entities," and each of them, did not believe it to be

23   true;

24         b.    Defendants, their "alternate entities," and each of them, suppressed

25   information relating to the danger of use of the aforementioned materials by requesting the

26   suppression of information to the Decedent and the general public concerning the dangerous nature

27   of the aforementioned materials to workers, by not allowing such information to be disseminated

28   in a manner which would given general notice to the public and knowledge of the hazardous

1 | nature thereof when defendants, their "alternate entities," and each of them, were bound to disclose
2 | such information;

3 |        c.       Defendants, their "alternate entities," and each of them, sold the
4 | aforementioned products and materials to Decedent's employer and others without advising
5 | Decedent and others of the dangers of use of such materials to persons working in close proximity
6 | thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and
7 | had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their
8 | "alternate entities," and each of them, caused to be positively asserted to Decedent that which was
9 | not true and that which defendants, their "alternate entities," and each of them, had no reasonable
10 | ground for believing to be true, to wit, that it was safe for Decedent to work in close proximity to
11 | such materials;

12 |        d.       Defendants, their "alternate entities," and each of them, suppressed from
13 | Decedent medical and scientific data and knowledge of the results of studies including, but not
14 | limited to, the information and knowledge of the contents of the Lanza report. Although bound to
15 | disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change
16 | his report, the altered version of which was published in Public Health Reports, Volume 50 at page
17 | 1 in 1935, thereby causing Decedent and others to be and remain ignorant thereof. Defendants,
18 | their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated
19 | trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to
20 | the users thereof;

21 |        e.       Defendants, their "alternate entities," and each of them, belonged to,
22 | participated in, and financially supported the Asbestos Textile Institute and other industry
23 | organizations which, for and on behalf of defendants, their "alternate entities," and each of them,
24 | actively promoted the suppression of information of danger to users of the aforementioned
25 | products and materials, thereby misleading Decedent by the suggestions and deceptions set forth
26 | above in this cause of action. The Dust Control Committee, which changed its name to the Air
27 | Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject
28 | of dust control. Discussions in this committee were held many times regarding the dangers

1   inherent in asbestos and the dangers which arise from the lack of control of dust, and such

2   information was suppressed from public dissemination from 1946 to a date unknown to Decedent

3   at this time;

4          f.       Commencing in 1930 with the study of mine and mill workers at

5   Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-

6   Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate

7   entities," and each of them, knew and possessed medical and scientific information of the

8   connection between inhalation of asbestos fibers and asbestosis, which information was

9   disseminated through the Asbestos Textile Institute and other industry organizations to all other

10  defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the

11  defendants, their "alternate entities," and each of them, acquired medical and scientific information

12  of the connection between inhalation of asbestos fibers and cancer, which information was

13  disseminated through the Asbestos Textile Institute and other industry organizations to defendants

14  herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as

15  a fact that which is not true and disseminated other facts likely to mislead Decedent. Such facts did

16  mislead Decedent and others by withholding the afore-described medical and scientific data and

17  other knowledge and by not giving Decedent the true facts concerning such knowledge of danger,

18  which defendants, their "alternate entities," and each of them, were bound to disclose;

19         g.       Defendants, their "alternate entities," and each of them, failed to warn

20  Decedent and others of the nature of said materials which were dangerous when breathed and

21  which could cause pathological effects without noticeable trauma, despite the fact that defendants,

22  their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose

23  that said materials were dangerous and a threat to the health of persons coming into contact

24  therewith;

25         h.       Defendants, their "alternate entities," and each of them, failed to provide

26  Decedent with information concerning adequate protective masks and other equipment devised to

27  be used when applying and installing the products of the defendants, and each of them, despite

28  knowing that such protective measures were necessary, and that they were under a duty to disclose

**COMPLAINT FOR WRONGFUL DEATH**

1    that such materials were dangerous and would result in injury to the Decedent and others applying

2    and installing such material;

3           i.       Defendants, their "alternate entities," and each of them, when under a

4    duty to so disclose, concealed from Decedent the true nature of the industrial exposure of

5    Decedent and knew that Decedent and anyone similarly situated, upon inhalation of asbestos

6    would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.

7    Defendants, their "alternate entities," and each of them, also concealed from Decedent and others

8    that harmful materials to which they were exposed would cause pathological effects without

9    noticeable trauma;

10          j.       Defendants, their "alternate entities," and each of them, failed to provide

11   information of the true nature of the hazards of asbestos materials and that exposure to these

12   materials would cause pathological effects without noticeable trauma to the public, including

13   buyers, users, and physicians employed by Decedent and Decedent's employers so that said

14   physicians could examine, diagnose and treat Decedent and others who were exposed to asbestos,

15   despite the fact that defendants, their "alternate entities," and each of them, were under a duty to so

16   inform and said failure was misleading; and

17          k.       Defendants, their "alternate entities," and each of them, failed to provide

18   adequate information to physicians and surgeons retained by Decedent's employers and their

19   predecessor companies, for purposes of making physical examinations of Decedent and other

20   employees as to the true nature of the risk of such materials and exposure thereto when they in fact

21   possessed such information and had a duty to disclose it.

22       36.   Defendants, their "alternate entities," and each of them, willfully failed and omitted

23   to complete and file First Report of Occupational Injury of Illness regarding Decedent's injuries, as

24   required by law, and did willfully fail and omit to file report of injury and occupational disease

25   with the State of California. Decedent was in the class of persons with respect to whom a duty was

26   owed to file such reports and who would have been protected thereby if the fact of danger from

27   products complained of had become known.

28       37.   Defendants, their "alternate entities," and each of them, having such aforementioned

1     knowledge, and the duty to inform Decedent about the true facts, and knowing the Decedent did

2     not possess such knowledge and would breathe such material innocently, acted falsely and

3     fraudulently and with full intent to cause Decedent to remain unaware of the true facts and to

4     induce Decedent to work in a dangerous environment, all in violation of Sections 1708, 1709,

5     1710, and 1711 of the Civil Code of the State of California.

6          WHEREFORE, plaintiffs pray judgment as is hereinafter set forth.

7

8
### FIFTH CAUSE OF ACTION
(Premises Owner/Contractor Liability)

9     **AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF
ACTION, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C," DOES

10     301-450, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES
OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM,

11     AND ALLEGE AS FOLLOWS:**

12          38.   Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 9-16

13     of the First Cause of Action.

14          39.   At all times herein mentioned, each of the Premises Owner/Contractor Liability

15     Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor,

16     predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial

17     owner of an entity causing certain asbestos-containing insulation, other building materials,

18     products and toxic substances to be constructed, installed, maintained, used, replaced, repaired

19     and/or removed on the respective premises owned, leased, maintained, managed and/or controlled

20     by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the

21     herein-named defendants is liable for the tortious conduct of each successor, successor-in-

22     business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or

23     partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation

24     and other toxic substances. The defendants, and each of them, are liable for the acts of each and

25     every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs'

26     remedies against each such alternate entity; defendants, and each of them, have acquired the assets,

27     or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the

28     destruction of plaintiffs' remedies against each such alternate entity; each such defendant has the

---

**COMPLAINT FOR WRONGFUL DEATH**

1  ability to assume the risk-spreading role of each such alternate entity, and that each such defendant

2  enjoys the goodwill originally attached to each such alternate entity.

3      40.  At all times mentioned herein, the above-listed Premises Owner/Contractor Liability

4  Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or

5  controlled the premises listed on Exhibit "A" and others where Decedent was present. The

6  information provided on Exhibit "A" is preliminary, based on recall over events covering many

7  years and further investigation and discovery may produce more reliable information.

8  Additionally, Decedent might have been present at those or other Premises Owner/Contractor

9  Liability Defendants' premises at other locations and on other occasions.

10     41.  Prior to and at said times and places, said Premises Owner/Contractor Liability

11  Defendants, and each of them, respectively, caused certain asbestos-containing materials, other

12  building materials, products and toxic substances to be constructed, installed, disturbed,

13  maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective

14  premises, by their own workers and/or by various contractors and/or subcontractors, and caused

15  the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the

16  ambient air and thereby created a hazardous and unsafe condition to Decedent and other persons

17  exposed to said asbestos fibers and toxic substances while present at said premises.

18     42.  At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

19  and each of them, knew or in the exercise of ordinary and reasonable care should have known, that

20  the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and

21  unreasonable risk of harm and personal injury to Decedent and other workers or persons so

22  exposed present on each of the aforesaid respective premises.

23     43.  At all times relevant herein, Decedent entered said premises and used or occupied

24  each of said respective premises as intended and for each of the respective Premises

25  Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective

26  Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, Decedent

27  was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the

28  ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated,

1   and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability

2   Defendants, and each of them.

3       44.   Decedent at all times was unaware of the hazardous condition or the risk of personal

4   injury created by the aforesaid presence and use of asbestos products and materials and other toxic

5   substances on said premises.

6       45.   The hazardous condition or risk of personal injury created by the aforesaid presence

7   and use of asbestos products and materials and other toxic substances on said premises was not a

8   known condition that Decedent's employer was hired to correct or repair.

9       46.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants

10  and each of them, remained in control of the premises where Decedent was performing his work.

11      47.   At all times mentioned herein, the Premises Owner/Contractor Liability Defendants

12  owed to Decedent, and others similarly situated, a duty to exercise ordinary care in the

13  management of such premises in order to avoid exposing workers such as Decedent to an

14  unreasonable risk of harm and to avoid causing injury to said person.

15      48.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

16  and each of them, knew, or in the exercise of ordinary and reasonable care should have known,

17  that the premises that were in their control would be used without knowledge of, or inspection for,

18  defects or dangerous conditions, and that the persons present and using said premises would not be

19  aware of the aforesaid hazardous conditions to which they were exposed on the premises.

20      49.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

21  and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises

22  or to abate or correct, or to warn Decedent of, the existence of the aforesaid dangerous conditions

23  and hazards on said premises.

24      50.   At all times herein mentioned, said Premises Owner/Contractor Liability Defendants

25  and each of them, negligently provided unsafe equipment for the performance of the work that

26  caused or contributed to Decedent's injuries.

27      51.   Prior to and at the times and places aforesaid, said Premises Owner/Contractor

28  Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials,

COMPLAINT FOR WRONGFUL DEATH                                    PAGE 21

1 | other building materials, products and toxic substances to be constructed, installed, maintained,

2 | used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their

3 | own workers and/or by employing various contractors, and caused the release of dangerous

4 | quantities of toxic asbestos fibers and other toxic substances into the ambient air, and thereby

5 | injured Decedent.

6 |     52.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

7 | and each of them, should have recognized that the work of said contractors would create during the

8 | progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm

9 | Decedent and others unless special precautions were taken. The said Premises Owner/Contractor

10 | Liability Defendants, and each of them, knew or should have known that the work required special

11 | procedures and instruction so as to be accomplished in a safe manner and avoid injury to Decedent

12 | and others. The Premises Owner/Contractor Liability Defendants were aware or should have been

13 | aware that such special procedures and instructions were not taken nor provided.

14 |     53.   In part, Decedent was exposed to dangerous quantities of asbestos fibers and other

15 | toxic substances by reason of such premises owners and/or contractors' failure to take the

16 | necessary precautions.

17 |     54.   The work, actions and/or inactions of contractors on premises controlled by the

18 | Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by

19 | reason of the release of dangerous quantities of toxic substances including, but not limited to,

20 | asbestos.

21 |     55.   The unsafe premise or work place was created, in part, by the negligent conduct of

22 | the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct

23 | includes, but is not limited to:

24 |     a.   Failure to advise and warn of asbestos and other toxic dusts;

25 |     b.   Failure to suppress the asbestos-containing or toxic dusts;

26 |     c.   Failure to remove the asbestos-containing and toxic dusts through use of

27 |     ventilation or other approved appropriate means;

28 |     d.   Failure to provide adequate breathing protection, i.e., approved respirators or

COMPLAINT FOR WRONGFUL DEATH                        PAGE 22

masks;

    e.    Failure to inspect and/or test the air; and

    f.    Failure to provide proper medical monitoring, medical check-ups, and reviews.

56.    The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

57.    Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including, but not limited to, the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including, but not limited to, Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code §40200, et seq., which empowers the Bay Area Air Quality Management District to promulgate regulations including, but not limited to, BAAQMD. Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include, but are not limited to:

    a.    Failing to comply with statutes and allowing ambient levels of airborne

1   asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

2   statutes;

3         b.   Failing to segregate work involving the release of asbestos or other toxic dusts;

4         c.   Failing to suppress dust using prescribed ventilation techniques;

5         d.   Failing to suppress dust using prescribed "wet down" techniques;

6         e.   Failing to warn or educate Decedent or others regarding asbestos or other toxic

7   substances on the premises;

8         f.   Failing to provide approved respiratory protection devices;

9         g.   Failing to ensure "approved" respiratory protection devices were used

10   properly;

11         h.   Failing to provide for an on-going health screening program for those exposed

12   to asbestos on the premises which included disclosure and/or discussion of ongoing health

13   consequences of asbestos exposure with Decedent;

14         i.   Failing to provide adequate housekeeping and clean-up of the work place;

15         j.   Failing to properly warn of the hazards associated with asbestos as required by

16   these statutes;

17         k.   Failing to properly report renovation and disturbance of asbestos-containing

18   materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401 and S.C.A.Q.M.D

19   regulations;

20         l.   Failing to get approval for renovation as required by statutes;

21         m.   Failing to maintain records as required by statute;

22         n.   Failing to conform to and comply with statutes, rules, and regulations regarding

23   worker and workplace safety; including but not limited to those mandated by OSHA, EPA, and

24   California legislature;

25         o.   Failing to provide Decedent with alternative, safe, asbestos-free work areas

26   and/or failure to remove Decedent from an asbestos-laden environment where ongoing exposures

27

28   to asbestos increased the risk of Decedent contracting an asbestos-related disease; and

---

**COMPLAINT FOR WRONGFUL DEATH**

p.   Failing to have an asbestos removal supervisor as required by regulation.

58.   Decedent at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances or statutes.

59.   At all times mentioned herein, Decedent was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

60.   In such circumstances where Decedent was the employee or "statutory employee" as defined by the California Labor Code and California case law of said Premises Owner/Contractor Liability Defendants, such Premises Owner/Contractor Liability Defendants owed a duty of care to prevent injury, harm, damage, or loss to Decedent. Instead, well outside the normal risk of Decedent's employment, said Premises Owner/Contractor Liability Defendants caused Decedent to be exposed to asbestos-containing materials, products, and other toxic substances, and fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos and toxic products contamination, as well as the known and recognized injurious health consequences of repeated and reoccurring exposures by Decedent to asbestos-containing materials, products, and other toxic substances.

61.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

62.   Said Premises Owner/Contractor Liability Defendants knew of the harmful exposures to asbestos sustained by Decedent at, by and/or through the actions and/or inactions of their own employees or others under the direct and immediate instruction, control and/or supervision of said Premises Owner/Contractor Liability and said Premises Owner/Contractor Liability Defendants concealed and/or failed to disclose to Decedent the harmful effects and bodily injuries suffered by Decedent as a result of such exposures to asbestos.

1    63.   As a legal consequence of the foregoing, Decedent's exposure to asbestos and

2    asbestos-containing products caused Decedent to contract lung cancer and other asbestos-related

3    diseases from which he died on September 23, 2008.

4        WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

5    each of them, as hereinafter set forth.

6                          **SIXTH CAUSE OF ACTION**
7                  **(Negligence – Vehicle, Clutch & Brake Components)**

8    **AS AND FOR A FURTHER SIXTH SEPARATE AND DISTINCT CAUSE OF
     ACTION FOR PRODUCTS LIABILITY (NEGLIGENCE) FOR CLUTCH COMPONENTS
9    AND BRAKE ASSEMBLIES, MECHANISMS AND LININGS, PLAINTIFFS COMPLAIN
     OF DEFENDANTS LISTED ON EXHIBIT "D" ATTACHED HERETO, and DOES 451-
10   500, AND ALLEGE AS FOLLOWS:**

11       64.   Plaintiffs, by this reference, incorporate the allegations contained in the First through

12   Fourth Causes of Action as though fully set forth herein.

13       65.   Defendants listed on Exhibit "D" attached hereto and DOES 451-500, manufactured

14   or supplied defective asbestos-containing products, materials, and parts including, but not limited

15   to: automobiles; trucks; tractors and/or heavy equipment; and/or other vehicles. Additionally

16   and/or alternatively, said defendants manufactured and/or supplied defective asbestos-containing

17   products, materials, and parts including, but not limited to: brakes; clutches; clutch components;

18   brake components; brake assemblies, linings, and mechanisms; clutch assemblies, linings, and

19   mechanisms; gaskets; and other related products which were incorporated into various makes and

20   models of automobiles, trucks, tractors, heavy equipment, and/or other vehicles and modes of

21   transportation manufactured, sold or supplied by said defendants as original and/or aftermarket

22   equipment and parts. Said asbestos-containing products, including vehicles, including autos,

23   trucks, and tractors, heavy equipment, as well as clutch components and brake assemblies or

24   mechanisms or linings and gaskets which were a necessary component part were negligently

25   manufactured, sold, or supplied in that:

26

27

28

**COMPLAINT FOR WRONGFUL DEATH**                                    PAGE 26

a.      The design of said asbestos-containing vehicles incorporated and specified the use of asbestos-containing clutch facings/plates, brake/brakes linings, gaskets, and related parts and equipment;

b.      Asbestos clutch components and brake linings and mechanisms and gaskets wear and/or deteriorate during regular and ordinary use, thus creating friable asbestos dust, which accumulates in and around the engine compartment, clutch components, brake assemblies and/or brake mechanisms, wheel well, wheel cylinder, and other areas on the vehicle body and vehicle component parts;

c.      The design of said vehicles, including autos' and trucks' clutch components and brake assemblies, require as a part of their normal operation, use, inspection and maintenance that the asbestos clutch components and brake linings be removed and replaced and vehicle gaskets be similarly removed and replaced;

d.      Said defendants specified and required the use of asbestos-containing clutch components and brake linings and gaskets and related asbestos-containing products throughout the time period 1940-1990;

e.      Particularly during the inspection, removal and replacement of asbestos-containing clutch components and brake linings, asbestos-containing dust was necessarily and inherently generated because of the design of the clutch components and brake assemblies and/or mechanisms.  The same results occurred when installing or removing asbestos-containing gaskets;

f.      Defendants knew or should have known that the asbestos-containing dust would be generated during the regular use, inspection  and maintenance of the vehicles, clutch components and brake assemblies, mechanisms and linings, and gaskets and that such dust created an increased risk of asbestos disease for all users, consumers, or others who breathed said asbestos-containing dust;

g.      The defendants, and each of them, failed to warn and/or properly instruct users, consumers, or others of the asbestos-containing dust hazard which existed at the time of regular operation, inspection, maintenance or replacement of vehicles and the associated asbestos clutch components and brake linings and gaskets.  Such failure includes, but is not limited to:

COMPLAINT FOR WRONGFUL DEATH

1          i.      Failure to place prominent and/or adequate warnings or instructions

2 for safe use and handling in and on the clutch components and brake assemblies, mechanisms,

3 linings, brake pads, wheel drums, brake mechanism, gaskets, or other parts of the vehicles or

4 vehicle component parts;

5          ii.     Failure to place adequate warnings or instructions in the owners'

6 manuals accompanying said automobiles, trucks and vehicles;

7          iii.    Failure to place adequate warnings or instructions on various repair

8 manuals and instructions published by defendants and others;

9          iv.    Failure to provide adequate information regarding the asbestos

10 hazards associated with the regular inspection, use and maintenance of the clutch components and

11 brake mechanisms, assemblies and/or linings, and gaskets; and

12          v.     Failure to place prominent and/or adequate warnings or instructions

13 for safe use and handling in and on the packaging of clutch components and brake assemblies,

14 mechanisms, linings, brake pads, wheel drums, brake mechanism, gaskets, or other parts or

15 vehicle component parts.

16     h.  Said asbestos-containing vehicles, including autos, trucks, and tractors and/or

17 heavy equipment, released harmful asbestos into the ambient air which Decedent breathed during

18 the normal and intended use of said vehicles, including, but not limited to, the regular operation,

19 inspection, maintenance, and repair of such vehicles., and normal and intended use of said

20 asbestos-containing clutch components and brake assemblies, mechanisms, linings, brake pads,

21 wheel drums, brake mechanism, gaskets, and related products. Said asbestos-containing vehicles

22 and component parts contained no warning or caution as to their asbestos content. The asbestos-

23 containing vehicles and component parts were not substantively alter in any way, in either design

24 or function, at the times during which harmful asbestos exposures occurred as a result of working

25 with and around said asbestos-containing products. The risk of harm as a result of working with

26 and/or around said asbestos-containing products outweighed any perceived benefit of such

27 products and such products should have and could have been designed and manufactured without

28 excessive risk of harm resulting from the incorporation, use, and specification of asbestos into said

asbestos-containing products, including vehicles and components parts.

66.    The asbestos-containing products, including vehicles, gaskets, clutch components and brake assemblies, mechanisms and/or linings, specified, manufactured, sold or supplied by defendants, failed to perform as safely as the ordinary consumer would expect, even though they performed as designed.

67.    Defendants' specification, use and design of asbestos-containing vehicles, gaskets, clutch components and brake linings, both as original equipment and as replacement parts, created unreasonable inherent risks which outweighed the benefits of said use and/or design.

68.    The dangers inherent in asbestos-containing vehicles, gaskets, clutch components and brake linings and related products were unknown and unforeseeable to the unsophisticated Decedent and others.

69.    The asbestos-containing vehicles, gaskets, clutch components and brake assemblies, mechanisms and/or linings specified, sold or supplied by defendants inspected, maintained, and repaired by Decedent and others were not substantially nor improperly altered from that of their original manufacture, nor used in an unintended or unforeseeable fashion.

70.    Decedent's exposure to asbestos-containing dust, which caused his injury, was from the inspection, use and maintenance of defendants' vehicles, gaskets, clutch components and brake mechanisms, assemblies and/or linings, and related products and equipment. Said work produced the release of asbestos dust, which Decedent inhaled, thus increasing his risk for all asbestos-related disease.

71.    Defendants also should have provided a post-sale warning regarding the health risks associated with working with and/or around their asbestos-containing products since defendants knew their asbestos-containing products posed a substantial risk of harm to the Decedent and others similarly situated, defendants were in the best position to provide a warning in that they knew of the identity of the distributors, retailers, and/or users of their products, defendants knew or should have known that Decedent and others were unaware of the health risks associated with the

1    use of defendant's asbestos-containing products, and a warning could have been communicated or

2    published without excessive difficulty by defendants.

3        72.   Defendants' negligence and defective products as described in this cause of action

4    were a direct cause of Decedent's injuries, and the injuries and damages thereby sustained by

5    plaintiffs.

6

7        WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

8    each of them, as hereinafter set forth.

9                    **SEVENTH CAUSE OF ACTION**
                **(Strict Liability – Vehicle, Clutch & Brake Components)**
10

11       **AS AND FOR A FURTHER SEVENTH SEPARATE AND DISTINCT CAUSE OF
    ACTION FOR PRODUCTS LIABILITY (STRICT LIABILITY) FOR CLUTCH
12   COMPONENTS AND BRAKE ASSEMBLIES, BRAKE MECHANISMS AND BRAKE
    LININGS, PLAINTIFFS COMPLAIN OF DEFENDANTS LISTED ON EXHIBIT "D"
13   ATTACHED HERETO and DOES 451-500, AND ALLEGE AS FOLLOWS:**

14

15       73.   Plaintiffs, by this reference, incorporate the allegations contained in the Second and

16   Sixth Causes of Action as though fully set forth herein, excepting therefrom any allegations of

17   negligence.

18       74.   Defendants' defective products as described in this cause of action did not perform as

19   safely as an ordinary consumer would have expected at the time of Decedent's and others' use.

20       75.   Defendants' defective products as described in this cause of action were used by

21   Decedent and others in a manner foreseeable by defendants.

22       76.   The gravity of the potential harm resulting from the use of defendants' defective

23   products as described in this cause of action, and the likelihood such harm would occur,

24   outweighed the cost of feasible alternative and safer designs, including providing adequate

25   warning of such potential harm, including asbestos-related disease and death.

26       77.   Defendants' conduct and defective products as described in this cause of action were

27   a direct cause of Decedent's injuries and death, and the injuries and damages thereby sustained by

28   plaintiffs.

---

COMPLAINT FOR WRONGFUL DEATH                                              PAGE 30

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## EIGHTH CAUSE OF ACTION
### (Survival Action)

**AS AND FOR A FURTHER, EIGHTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR SURVIVAL DAMAGES, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, INCLUSIVE, AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

78.     Plaintiffs incorporate by reference herein each and every paragraph of the First through Seventh Causes of Action of this complaint, and makes them a part of this, the Eighth Cause of Action, as though fully set forth herein.

79.     On September 23, 2008, Decedent, JOHN HINKLE, JR, who would have been a plaintiff in this action if he had lived, died.

80.     As a proximate result of the conduct of the defendants and each of them, Decedent was required to, and did, employ physicians and surgeons to examine, treat and care for him, and did incur medical and incidental expenses in a sum to be subsequently determined.

81.     As a further, direct and proximate cause of the conduct of defendants, and each of them, Decedent was prevented from attending to his usual occupation for a period of time, could not maintain or exceed his income capacity, and thereby incurred damages for loss of earnings in a sum to be subsequently determined.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as is hereinafter set forth.

## DAMAGES

Plaintiffs pray judgment against defendants and each of them as follows:

For general damages according to proof;

For special damages according to proof;

For medical expenses according to proof;

For loss of income according to proof;

For punitive damages according to proof;

1     For burial and funeral expenses according to proof;

2     For plaintiffs' costs of suit herein; and

3     For such other further relief as this Court and the law deems just and proper.

4

5     Dated: September 21, 2009           **KELLER, FISHBACK & JACKSON LLP**

6

7                            By

8                              J. Bruce Jackson
                              Attorneys for Plaintiff

## EXHIBIT "A"

1

2      Decedent, JOHN CARL HINKLE, JR., died from asbestos-related diseases, including, but

3  not limited to, lung cancer and asbestosis, on September 23, 2008.

4      Decedent, JOHN CARL HINKLE, JR., performed and worked around others who
performed many and various repair, maintenance, overhaul and restoration tasks with asbestos-

5  containing products, which may have included, but are not limited to, asbestos-containing:
tape/mastic, insulating and insulation materials, boilers, refractory materials, pumps, compressors,

6  valves, motors, turbines, cloth, chillers, heaters, condensers, gaskets, packing, fiber product, and

7  other asbestos-containing products and materials currently unknown or unspecified by plaintiffs.

8      Decedent also performed and worked around others who performed various repair,
overhaul, maintenance and restoration tasks on numerous United States Navy seagoing vessels.

9  Such repair, overhaul, maintenance and restoration tasks included, but were not limited to,
overhauling and maintaining hydraulic equipment used in manufacturing aircraft parts, lathes,

10  drill presses and grinders. Decedent also performed repairs and installed various piping systems
on aircraft carriers, destroyers, missile compartments, new submarines (non-nuclear), new

11  submarine reactor compartments and general nuclear submarines.

12

13      Plaintiffs allege and believe that JOHN CARL HINKLE, JR.'s exposures to asbestos may
have occurred at job sites including, but not limited to, those listed below. Decedent, JOHN

14  CARL HINKLE, JR., was also exposed to asbestos dust that was carried into his work areas on
the person and clothing of co-workers.  While performing his regular job duties, his person and

15  clothing were contaminated with such asbestos dust.

16      Decedent, JOHN CARL HINKLE, JR., was also exposed to asbestos-containing building
materials while performing and in the vicinity of others performing home repairs and renovations

17  in California between approximately 1950 and 2000. JOHN CARL HINKLE, JR. used taping
and joint/taping compound, insulation, wallboard, flooring materials, stucco, plaster, fiber product

18  and other asbestos containing materials to perform this work, causing him to be exposed to

19  respirable asbestos which he breathed.

20      Decedent, JOHN CARL HINKLE JR., and others in his immediate vicinity, also
performed automotive repair and maintenance to a variety of makes and models of vehicles

21  between approximately 1940 and 1990.  Such repair and maintenance may have included, but was

22  not limited to: inspect, remove and install asbestos-containing friction products on asbestos-
containing automobiles and trucks, such as brakes and clutches, and related component parts;

23  inspect, remove and install asbestos-containing automotive gaskets and gasketing materials;
clean-up using compressed air, push brooms, dry cloths and other tools after performing such

24  tasks; and other vehicle repair and maintenance tasks.  Such repair and maintenance caused

25  decedent to be exposed to harmful respirable asbestos, which he breathed.

26      Plaintiffs allege and believe that JOHN CARL HINKLE, JR.'s exposure occurred at job
sites including, but not limited to, the following:

27

28

---

**COMPLAINT FOR WRONGFUL DEATH**                                                   PAGE 33

| | |
|---|---|
| EMPLOYER: | United States Navy |
| DATE: | 1941-1961 |
| DURATION: | Approximately 20 years |
| JOB TITLE: | Engineman |
| SITE: | U.S. Navy aboard USS ENTEMINDOR SS 340; USS GUAVINA AG/SSO 362; USS BARRACUDA SSK 1; USS TIRU SS 416; USS SALMON; Barber's Point, San Diego, CA, Long Beach, CA |

| | |
|---|---|
| EMPLOYER: | General Dynamics Corporation |
| DATE: | April 1961 – July 1961 |
| DURATION: | Approximately 2 ½ months |
| JOB TITLE: | Assembly line Worker |
| SITE: | San Diego, CA |

| | |
|---|---|
| EMPLOYER: | Mare Island Naval Shipyard |
| DATE: | 1961-1964 |
| DURATION: | Approximately 3 years |
| JOB TITLE: | Apprentice Pipefitter |
| SITE: | Vallejo, CA |

| | |
|---|---|
| EMPLOYER: | Mare Island Naval Shipyard |
| DATE: | 1964-1997 |
| DURATION: | Approximately 33 years |
| JOB TITLE: | Pipefitter |
| SITE: | Vallejo, CA |

| | |
|---|---|
| EMPLOYER: | Hunters Point Naval Shipyard |
| DATE: | 1964-1997 |
| DURATION: | Various/Unknown |
| JOB TITLE: | Pipefitter |
| SITE: | San Francisco, CA |

| | |
|---|---|
| EMPLOYER: | Oakland/Alameda Naval Air Station |
| DATE: | 1964-1997 |
| DURATION: | Various/Unknown |
| JOB TITLE: | Pipefitter |
| SITE: | Oakland/Alameda, CA |

Plaintiffs' investigation and discovery are continuing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT FOR WRONGFUL DEATH**

**EXHIBIT "B"**

A.W. CHESTERTON COMPANY, INC.;

ASBESTOS CORPORATION LTD.;

BELL & GOSSETT;

BORG-WARNER CORPORATION by its successor-in-interest BORGWARNER
    MORSE TEC INC.;

BUFFALO PUMPS, INC.;

CARRIER CORPORATION;

CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-
    in-interest to and formerly known as VIACOM, INC. and WESTINGHOUSE
    ELECTRIC CORPORATION;

CRANE CO.;

CROSBY VALVE, INC.;

CROWN CORK & SEAL COMPANY, INC., individually and as successor-in-interest to
    MUNDET CORK COMPANY;

DANA CORPORATION;

DOUGLASS INSULATION COMPANY, INC.;

DOWMAN PRODUCTS, INC.;

DURABLA MANUFACTURING COMPANY;

FAIRBANKS MORSE COMPANY;

FLOWSERVE CORPORATION, individually and as successor-in- interest to
    WORTHINGTON PUMPS and DURAMETALLIC CORPORATION;

FMC CORPORATION;

FORD MOTOR COMPANY;

FOSTER WHEELER LLC;

GARLOCK SEALING TECHNOLOGIES, LLC, individually and successor-in-interest to
    GARLOCK, INC.;

GENERAL ELECTRIC COMPANY;

GEORGIA-PACIFIC CORPORATION;

GRINNELL CORPORATION;

HIGHLAND STUCCO AND LIME PRODUCTS, INC.;

HONEYWELL INTERNATIONAL, INC. individually and formerly known as ALLIED
SIGNAL, INC., as successor-in-interest to  the BENDIX CORPORATION;

IMO INDUSTRIES, INC. individually and as successor-in-interest to DELALVAL
PUMPS;

INGERSOLL-RAND COMPANY;

ITT INDUSTRIES, INC. individually and as successor-in-interest to BELL & GOSSETT;

J.T. THORPE & SON, INC.;

JOHN K. BICE CO., INC.;

KAISER GYPSUM COMPANY, INC.;

METALCLAD INSULATION CORPORATION, individually and as  successor-in-interest to
NOR-CAL INSULATION;

MINNESOTA MINING CORPORATION aka 3M COMPANY;

OWENS-ILLINOIS, INC.;

PAREX LAHABRA INC., fka LA HABRA PRODUCTS, INC.;

RAPID AMERICAN CORP., individually and as successor-in-interest to PHILIP CAREY
CORPORATION;

RPM, INC.;

SEPCO CORPORATION:

SOCO-WEST, INC.;

STERLING FLUID SYSTEMS (USA) LLC, dba and individually and successor-in-interest
to PEERLESS PUMP COMPANY, INDIAN  HEAD, INC.;

THE GOODYEAR TIRE & RUBBER COMPANY;

TRANE USA INC.;

1  UNION CARBIDE CORPORATION;

2  WARREN PUMPS, LLC;

3  YORK INTERNATIONAL CORPORATION;

4
   Does 1-300
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "C"

2

3    CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-
            in-interest to and formerly known as VIACOM, INC. and  WESTINGHOUSE
4            ELECTRIC CORPORATION;

5    FOSTER WHEELER LLC;

6    GENERAL ELECTRIC COMPANY;

7    J.T. THORPE & SON, INC.;

8
     METALCLAD INSULATION  CORPORATION, individually and as  successor-in-interest to
9            NOR-CAL  INSULATION;

10   DOES 301-450;

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR WRONGFUL DEATH**                                                      PAGE 38

## EXHIBIT "D"

1

2    Does 451-500;

3    BORG-WARNER CORPORATION by its successor-in-interest BORGWARNER
          MORSE TEC INC.;

4

5    DANA CORPORATION;

6    FORD MOTOR COMPANY;

7    HONEYWELL INTERNATIONAL, INC. formerly known as ALLIED SIGNAL,
          INC., as successor-in-interest to the BENDIX CORPORATION;

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28