## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: ASBESTOS PRODUCTS            )        MDL-875
LIABILITY LITIGATION (NO. VI)       )
                                    )
                                    )
                                    )

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

GAYLE LYAUTEY, and PATRICIA         )        CASE NO.: 10- 22891- CV-JORDAN
LYAUTEY, his wife,                  )
                                    )
    Plaintiffs,                     )
                                    )
v.                                  )
                                    )
ALFA LAVAL, INC., et. al.           )
                                    )
    Defendants.                     )
_____     )

## DEFENDANT VIAD CORP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 339 TO MULTIDISTRICT LITIGATION NO. 875

Defendant, Viad Corp, improperly sued herein as "Viad Corporation f/k/a The Dial Corporation, individually and as successor in interest to Griscom-Russell Company" (hereinafter "Viad"), by and through its undersigned counsel, hereby submits this Memorandum of Law in Opposition to the Plaintiffs' Amended Motion to Vacate the Conditional Transfer Order No. 339 transferring this matter to Multidistrict Litigation No. 875.

I.    **ARGUMENT**

The federal asbestos multidistrict litigation docket No. 875 (hereinafter "MDL") was specifically created to centralize all personal injury and wrongful death asbestos related litigation. Thus the MDL is the appropriate and proper venue for transfer of this case.

A.    **Plaintiffs' Case was Properly Removed to Federal Court**

In their moving papers, the Plaintiffs contend that this action was improperly removed to federal court. Viad has a right to have the merits of its military contractor defense litigated in federal court. Plaintiffs' contention to the contrary is nothing more than an attack on the merits of Viad's defense under the guise of a motion to vacate this Conditional Transfer Order. "Factual disputes about the Admirals' testimony should be resolved in federal court as long as the defendants have a good faith foundation for their contractor defense." Marley v. Elliott Turbomachinery, Co., 545 F.Supp.2d 1266, 1273 (S.D. Fla. 2008).

Viad is entitled to litigate this case in federal court pursuant to 28 U.S.C. § 1442(a)(1). Plaintiffs allege that Gale Lyautey's injuries were caused by exposure to asbestos while he served in the United States Navy aboard the *U.S.S. Wrangle, U.S.S. Beatty, U.S.S. Tutuila, U.S.S. Cavalla, U.S.S. Hissem, U.S.S. Constant, U.S.S. Barbour County* and *U.S.S. Direct* from 1954 to 1974, from equipment Viad's alleged predecessor, Griscom-Russell Company, supplied to the Navy during World War II. Viad has alleged a military contractor defense, which immunizes Viad from liability for those injuries, and entitles Viad to litigate its defense in federal court. The Affidavits and the documents filed with the Notice of Removal demonstrate that the U.S. Navy controlled asbestos warnings on equipment manufactured for the Navy by military contractors, and satisfy the low standard required to support removal to federal court pursuant to 28 U.S.C. § 1442(a)(1). Marley, at 1273. See also, Hagen v. Benjamin Foster, Co., et. al., E.D.Pa MDL-875, Civil Action No. 07-63346, September 24, 2010 – Memorandum of Law Denying Plaintiff's Motion for Remand attached as Exhibit A.

In Hagen, Judge Eduardo C. Robreno, the presiding judge over MDL-875, denied plaintiff's motion for remand after analyzing similar affidavits submitted in support of removal.

2

Judge Robreno found that those affidavits showed the Navy controlled warnings on products manufactured for the Navy, including the decision regarding whether warnings should be required, and "established a colorable defense that satisfies Section 1442(a)(1)'s colorable defense requirement. <u>Hagen</u>, at 29-31. <u>Hagen</u> is factually similar to this instant case, thus the Plaintiffs' motion to vacate the conditional transfer order as well as their motion to remand should be denied.[1]

**B.      <u>The MDL is the Appropriate Venue for this Case</u>**

In moving to vacate the conditional transfer order, the Plaintiffs argue at the outset that the MDL in Philadelphia is inconvenient for the parties or witnesses. Viad notes that it is based in Arizona and the multitude of its expert witnesses will likewise be from outside of the jurisdiction of Florida. In creating the federal asbestos MDL, the Panel chose Philadelphia in large part for the convenience of the litigants. The Panel found that the largest numbers of asbestos cases were in proximity to Philadelphia and also that

> On the basis of the papers filed and the hearing held, … the actions in this litigation involve common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products, and that centralization under § 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

<u>In re Asbestos Product Liability Litigation</u> (No. VI), 771 F.Supp 415, 417 (Jud.Pan.Mult.Lit., 1991).

---

[1] It is Viad's position that the Judicial Panel on Multidistrict Litigation (hereinafter "Panel") is not the proper Court for the parties to argue the merits of Plaintiffs' motion to remand. As such, Viad will not submit its detailed opposition and memorandum of law to Plaintiffs' motion to remand that has already been filed in the United States District Court for the Southern District of Florida. Viad reserves the right to supplement this Court's record if Viad's memorandum of law supporting its opposition to Plaintiffs' motion to remand is an issue that the Panel wants to consider.

The Panel recognized that the transfer might be burdensome or inconvenient to some, but explained that the "§ 1407 transfer is primarily for pretrial, [so] there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise. Furthermore... it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel, and the judiciary." Id. at 422.

The defendant's lack of proximity to either Florida or the MDL courts coupled with the Panel's dispensing of the same inconvenience argument in In re Asbestos Products Liability Litigation renders the Plaintiffs' argument without merit.

### C.    The MDL is a Just and Efficient Venue to Conduct this Action

The Plaintiffs further argue that the MDL is unjust or inefficient, claiming that the defendants seek to avail themselves of the "black hole" that is the federal asbestos MDL. To the contrary, the MDL is the appropriate venue for the litigation.

Before the creation of the MDL, both federal and state courts faced "an asbestos-litigation crisis." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 598 (1997). The courts were overwhelmed with asbestos lawsuits.

> The most objectionable aspect of asbestos litigation can be briefly summarized: dockets in both federal and state courts continue to grow; long delays are routine, trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recovery by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

Id. (citing the Report of the Judicial Conference Ad Hoc Committee on Asbestos Litg. at 2-3 (Mar. 1991)). In creating federal asbestos MDL-875, the court was persuaded that asbestos litigation had reached a magnitude that threatened the administration of justice and that required

a new, streamlined approach. In re Asbestos Products Liability Litigation, 771 F.Supp at 418. The centralization of all federal asbestos personal injury/wrongful death actions, in the words of 28 U.S.C. S1407(a), "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." Id.

In undertaking the asbestos litigation crisis, the MDL court has successfully created procedures for overseeing the asbestos docket. In re Asbestos Prods. Liab. Litig., 1996 WL 539589, *1 (E.D. Pa Sept. 16, 1996). For instance, through the MDL the parties developed a settlement model that resolved cases in the New England area; a model that is now employed nationwide. Id. As a result of the MDL court's efforts, significant gains have been made to resolve cases. In 1996, the number of cases resolved exceeded the number of new cases filed. Id. at *2. In 1997 and 1998, the MDL court was closing 10,000 cases a year. In re Patenaude, 210 F.3d 135, 140 (3d Cir. 2000). By September 2006, nearly 75,000 of the 110,000 cases in the MDL were resolved. See Judicial Panel on Multidistrict Litig., Statistical Analysis on Multidistrict Litigation 2006, at 11 (Summary of Docket on Multidistrict Litigation Pending as of Sept. 30, 2006, or Closed since Oct. 1, 2005), available at http://www.jpml.uscourts.gov/Statistics/statistics.html.

More recently, MDL-875 has become even more efficient at the management and resolution of cases. Between August 1, 2006 and October 31, 2008, approximately 53,794 asbestos cases were transferred to MDL-875 and 1,806 were terminated. See U.S. District Court for the Eastern District of Pennsylvania, Asbestos Products Liability Litigation Caseload Statistics (2010) attached as Exhibit B. Between November 1, 2008 and December 31, 2009, approximately 43,929 asbestos cases were transferred to MDL-875 and 45,028 were terminated. Id. And. between January 1, 2010 and September 29, 2010, approximately 21,881 asbestos cases

were transferred to MDL-875 and 54,966 were terminated. Id. As of September 29, 2010, approximately 17,292 asbestos cases are pendi ng in MDL-875. Id. Thus, the Plaintiffs' disparaging comments regarding the MDL, including their description of the MDL as a "black hole" for asbestos cases, is absolutely misplaced and unsupported by the statistical data.

In seeking to avoid transfer to the MDL, the Plaintiffs cite to Maine Asbestos, 44 F.Supp.2d 368 (D.Me 1999), and argue that cases go untouched in the MDL. The Maine Asbestos opinion makes disparaging comments regarding the MDL only in passing, indeed, in a footnote. Maine Asbestos, 44 F.Supp.2d at 374 n.2. Notably, the Maine Asbestos court cites neither statistics nor authority for its statements and, moreover, its comments were centered on the MDL's early interest in achieving a global settlement, a now defunct goal.

Additionally, Plaintiffs are misguided in quoting Madden v. Able Supply Company, 205 F.Supp.2d 695 (S.D. Texas, 2002). The court in that case held that keeping the subject claim in federal court would not increase efficiency or expediency, but the court focused its decision largely on the fact that state court trial was set for a mere eight weeks away. Additionally, the case involved forty defendants with claims based on state law, and only one defendant who was the basis for federal officer jurisdiction. The court severed that one federal contractor and sent that portion of the case to federal court, remanding the additional forty defendants and their claims to state court for disposition.[2]

Similarly, the Plaintiffs quote from Rosamond v. Garlock Sealing Technologies, Inc., 2004 WL 943924 (N.D. Miss, 2004), but fail to advise the court that Rosamond was remanded to

---

[2] Just recently in this case, on September 28, 2010, the Plaintiffs moved the United States District Court for the Southern District of Florida to sever the federal contractor defendants from the state court claims (S.D. Fla Doc. 109). Thus the Plaintiffs attempt to create and manufacturer the scenario presented in the Madden case. However, this is not an issue for this Honorable Court to decide.

state court because of a lack of subject matter jurisdiction due to the lack of diversity of citizenship and also because the removal was not timely filed in regard to the one-year statute of limitations. A variety of federal judges may disagree with the administration of MDL No. 875 to some degree, however their dicta is not binding on this court and it does not preempt the fact the MDL was specially created to preside over asbestos litigation.

The MDL has a strong grasp on the cases within its docket. Recently, Judge Eduardo C. Robreno of the MDL issued Administrative Orders and procedures regarding the MDL, thereby strengthening the court's procedures over the docket. Copies of the recent Administrative Orders and procedures are available at www.paed.uscourts.gov/mdl875d.asp. These recent orders, procedures, and the aforementioned record of resolving a significant number of cases and remanding many others for trial plainly demonstrates the MDL court's dedication to managing and resolving asbestos litigation cases.

The MDL 875 has extensive experience in complex asbestos litigation, and the published cases and available statistics demonstrate that the MDL is a fair and appropriate venue for the pretrial litigation of this case. As such, Plaintiffs' motion to vacate should be denied.

D.      **Plaintiffs' Constitutional Rights will Not be Violated by Transfer to the MDL**

Plaintiffs incorrectly contend that a transfer to the MDL would violate the Plaintiffs' state right to redress or right to open access to the courts under Article I, Sections 21 and 22 of the Florida Constitution and the Seventh and Fourteenth Amendments to the United States Constitution

> *1.      Transfer to the MDL will not violate the Plaintiffs' State right of redress or right of open access to the courts.*

Plaintiffs' argument hinges on blanket speculation that Plaintiffs' avenues for redress will be foreclosed merely by the case transferring to MDL-875. To the contrary, and as shown above, the MDL has extensive experience with asbestos ligation and the goal of the asbestos MDL is to streamline and simplify that litigation for both the court and the parties. Plaintiffs' assertions are a broad leap neither supported by the published cases, nor by the statistical record of resolved MDL cases, but instead support by the dicta of a few discontented judges.

Transfer to the MDL is not a total denial of Plaintiffs' right of redress and the Plaintiffs are not being denied the right to open access in court. Conversely, the MDL is the judicial innovation for handling this exact category of litigation and Plaintiffs' ability to remand the case back to the transferor court for trial is not foreclosed. Plaintiffs' rights pursuant to Article I, Sections 21 and 22 of the Florida Constitution are not being violated, as the management of their litigation is merely being transferred to the forum with the expertise to expedite the pretrial litigation of this matter.

> 2.      *Transfer to the MDL will not violate the right to trial by jury as guaranteed by the Seventh Amendment to the United States Constitution and Article I Section 22 of the Florida Constitution.*

In seeking to vacate the conditional transfer order, Plaintiffs argue that such a transfer will violate their right to trial by jury. Again, Plaintiffs hinge their argument on the unsupported claim that a trial will be unduly delayed once the case is transferred to the MDL. Empirical evidence shows that MDL-875 is successful in handling and remanding cases to trial where appropriate.

Notably, the MDL court has already denied the same constitutional argument that Plaintiffs attempt to make. The Plaintiffs in a Southern District of Texas action argued that a conditional transfer should be denied because the way in which MDL-875 is being administered

effectively denies them their constitutional right to a jury trial. In re Asbestos Products Liability Litigation, 170 F.Supp 1348, 1349-1350 (Jud.Pan.Mult.Lit., 2001). The Panel flatly rejected this argument, finding that although the number of § 1407 remands is proportionately small, this is only because the vast majority of transferred actions have been able to be concluded in the transferee district during the course of pretrial proceedings. Id. The Panel further explained that whenever the transferee/MDL judge deems remand of any claim or action is appropriate, procedures are utilized to accomplish § 1407 remand for trial with a minimum of delay. Id. "The Panel has deferred to this suggested approach, recognizing that the recommendations of the transferee judge regarding the timing of remand should be given great weight, because that judge, after all, is the one who supervises day-to-day pretrial proceedings." Id. at 1350.

Plaintiffs admit that reasonable delays and alternative process in jury trials has been accepted as constitutional. See Plaintiffs' Memorandum of Law at pp. 8-9. However, the Plaintiffs attempt to distinguish the typical MDL timeline as unreasonable by quoting cases in which judges have made disapproving statements in dicta, but never as part of their decision. In Maine Asbestos, Madden v. Able Supply Company, and Rosamond v. Garlock Sealing Technologies, Inc., each discussed above, the courts' dicta regarding the MDL played no role or only a limited role in the final disposition of each case by the court.

Plaintiffs inappropriately attempt to analogize this case to the unreasonable delays that took place in Armster v. U.S. Dist. Court for the Central Dist. of Florida, 792 F.2d 1423 (9th Cir. 1986). In that case, all trials were outright suspended due to budgetary concerns. In Armster, the court held that the civil jury trial system may not be suspended for a lack of funds and that it was an unconstitutional violation of plaintiff's right to trial by jury. Transfer of this case to the

MDL for pretrial litigation is in no way analogous to a trial suspension due to lack of funds, nor is there any evidence other than speculation that an unconstitutional delay will occur.

Given the enormous numbers of asbestos cases relying on similar facts and the same defendants, collective pretrial litigation in the MDL is the most just and efficient way to handle asbestos cases. The MDL can and does remand cases to the transferor courts for trial when appropriate. As such, the Plaintiffs' right to a trial by jury is alive and well within MDL-875.

## II.    CONCLUSION

The MDL is the proper forum for the pretrial litigation of this action, since it is both adequately convenient and provides just and efficient administration of asbestos litigation. Furthermore, there are no violations of Plaintiffs' Constitutional rights by a conditional transfer to the MDL.

**WHEREFORE**, Defendant Viad Corp respectfully requests that Plaintiffs' Amended Motion to Vacate Conditional Transfer Order to the MDL No. 339, be Denied.

### CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing document has been served via CM/ECF and via U.S. Mail to all counsel on the attached service list on this 5th day of October, 2010.

> **FOLEY & MANSFIELD, P.L.L.P.**
> 4770 Biscayne Boulevard, Suite 1000
> Miami, Florida 33137
> 305-438-9899 (main)
> 305-438-9819 (facsimile)
>
> BERANTON J. WHISENANT, JR.
> Florida Bar No.: 0788651
> bwhisenant@foleymansfield.com
>
> Counsel for **VIAD CORP**