BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
MDL DOCKET NO. 875

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE ASBESTOS PRODUCTS<br>LIABILITY LITIGATION<br>(NO. VI)<br><br>This Document Relates To: | )<br>)<br>)<br>)<br>)<br>)<br>)   MDL-875 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:10-cv-22891-AJ

| | |
|---|---|
| GALE LYAUTEY and PATRICIA LYAUTEY,<br>his wife,<br><br>    Plaintiffs,<br><br>v.<br><br>ALFA-LAVAL, INC., et al.,<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANT ELLIOTT'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' AMENDED MOTION TO VACATE
CONDITIONAL TRANSFER ORDER NO. 339**

Defendant, sued as Elliott Turbomachinery Co., Inc. (hereinafter "Elliott" or "Defendant"), by

and through undersigned counsel, hereby respectfully submits the following Response in Opposition

to Plaintiffs' Amended Motion to Vacate Conditional Transfer Order No. 339 ("CTO") and states:

## I.   PRELIMINARY STATEMENT

Transfer of this asbestos action to MDL 875 "is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products." *In re Asbestos Products Liab. Litig. (No. VI)*, 170 F. Supp. 2d 1348, 1349 (J.P.M.L. 2001). Plaintiffs' arguments -- that Defendants have no valid government contractor defense; the action was not properly removed; transfer will inconvenience Plaintiffs and their witnesses, who are located in Florida; MDL 875 is a "black hole" (Brief at 4) and an "empty promise . . . for the sick and dying" (*id.* at 5); transfer will deny them their right to a jury trial -- have been repeatedly rejected by the Judicial Panel on Multidistrict Litigation ("Panel") since 1991. *See In re Asbestos Products Liab. Litig. (No. VI)*, 560 F. Supp. 2d 1367, 1368 n.2 (J.P.M.L. 2008); *In re Asbestos Products Liab. Litig. (No. VI)*, 545 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008); *In re Asbestos Products Liab. Litig. (No. VI)*, 170 F. Supp. 2d 1348 (J.P.M.L. 2001); *In re Asbestos Products Liab. Litig. (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991).[1] Plaintiffs' contentions are further undermined by Administrative Order No. 12, issued by the United States District Court for the Eastern District of Pennsylvania, pursuant to which MDL No. 875 "has initiated an aggressive, pro-

---

[1] Although Plaintiffs contend that Defendants' government contractor defense is not supported by the affidavit of Rear Admiral Ben Lehman, this argument was rejected by the United States District Court for the Southern District of Florida in *Marley v. Elliott Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008) (J. Jordan), and numerous other courts. *See* cases collected in Ex. 1, Elliott's Memorandum of Law in Opposition to Plaintiffs' Emergency Motion to Remand; *Boston v. Eastern Refractories Co.*, Case No. 07-63993 (E.D. Pa. Aug. 25, 2010). Plaintiffs' motion to remand is pending before Judge Jordan of the United States District Court for the Southern District of Florida. Although Plaintiffs assert (Brief at 3) that Judge Jordan "is set to hear argument" on their motion for summary judgment and remand, those motions have not as yet been set for hearing.

active policy in setting cases for settlement conferences, motion hearings and trials." *See About MDL 875*, http://www.paed.uscourts.gov/mdl875a.asp (last visited Sept. 23, 2010).

## II.   PROCEDURAL BACKGROUND

Plaintiffs filed an asbestos action in Florida state court seeking damages for negligence and strict liability based on alleged failure to warn. Defendant Foster Wheeler removed the action to federal court on August 9, 2010, on the basis of federal officer removal. Elliott, a military contractor, joined in the removal. Plaintiffs filed an Emergency Motion to Remand or, in the Alternative, Motion for Summary Judgment as to Defendants' Government Contractor Defense [only as to Foster Wheeler]. Foster Wheeler moved for a stay of proceedings until the Judicial Panel on Multidistrict Litigation ruled on transfer to MDL No. 875. The Panel entered a Conditional Transfer Order on September 1, 2010.

## III.   ARGUMENT

**TRANSFER OF THE CASE TO MDL 875 WILL SERVE THE CONVENIENCE OF THE WITNESSES AND PARTIES, PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE LITIGATION, AND WILL NOT DENY PLAINTIFFS THEIR CONSTITUTIONAL RIGHTS**

Plaintiffs' arguments in support of vacating the CTO are shopworn and flawed. This case is indistinguishable from the hundreds of thousands of cases previously transferred to MDL 875, and should likewise be transferred.

FOWLER WHITE BURNETT P.A. • ESPIRITO SANTO PLAZA, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131-3302 • (305) 789-9200

Every published Judicial Panel decision addressing challenges to the propriety of transfer to MDL 875 has ordered transfer. *See In re Asbestos Products Liab. Litig. (No. VI)*, 560 F. Supp. 2d at 1368; *In re Asbestos Products Liab. Litig. (No. VI)*, 545 F. Supp. 2d at 1361; *In re Asbestos Products Liab. Litig. (No. VI)*, 170 F. Supp. 2d 1348; *In re Asbestos Products Liab. Litig. (No. VI)*, 771 F. Supp. 415. There is no reason why the instant case should be an exception.

Although Plaintiffs argue at the outset (Brief at 3) that the Defendants' reliance on affidavits from Navy experts to support their government contractor defense is "tantamount to a fraud," this argument has been rejected by countless courts. (*See* Ex. 1 at 11-12). Moreover, the issue can properly be addressed by MDL 875 in determining whether to remand, and was in fact recently decided by Judge Robreno in *Boston v. Eastern Refractories Co.*, Case No. 07-63993, in granting a summary judgment in favor of a government contractor in a failure to warn case.

Second, as the Panel has concluded, individual circumstances such as the location of Plaintiffs and their treating physicians, do not militate against transfer to MDL 875:

> Particularly, in our original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the stage of pretrial proceedings, the presence of unique claims or additional claims not relating to asbestos injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by us as grounds for carving out exceptions to transfer in this extraordinary docket. n3 We are not persuaded to depart from this approach in dealing with the question of transfer of the present actions.

*In re Asbestos Products Liab. Litig.,* 545 F. Supp. 2d at 1361.

-4-

By the same token, the deteriorating health of a plaintiff is likewise insufficient to preclude transfer to MDL 875:

> Plaintiffs base their Motion for Relief on Mr. Anderson's poor health due to the Mesothelioma and the discretionary nature of the conditional transfer order. In opposition, Defendants claim that denial of the Motion will promote judicial efficiency.

*   *   *

> Plaintiffs emphasize the rapid, terminal nature of the cancer known as Mesothelioma which plagues Mr. Anderson's body. The only known cause of Mesothelioma is asbestos. Based on the average two-year life expectancy following diagnosis, and Mr. Anderson's diagnosis with the disease on October 10, 2005, time is a major consideration. Plaintiffs assert that failure to remand the case to state court will deprive Mr. Anderson of his "day in court." But if remand is granted, Plaintiffs assert that they may be able to take advantage of the state's expedited proceeding, including an earlier trial setting.

> If Mr. Anderson's health were the only factor before the Court, the decision would be easier. Unfortunately, it is not. While the Court extends its sympathy to Mr. and Mrs. Anderson, it must also consider the policy implications of judicial efficiency.

> Defendants assert that denial of Plaintiffs' Motion for Relief will further the goal of judicial efficiency. Following the finalization of CTO 269 and this Court's resolution or deferral of pending pre-trial delays, the case will be in the hands of the MDL. The MDL is familiar with the subject matter and the reoccurring common issues, and will be able to resolve asbestos litigation cases in an efficient and expeditious manner; it does so by the thousands.

*   *   *

> The Court believes that the MDL is able to expeditiously and thoroughly resolve the issue of removal and all of Plaintiffs' claims. This judicial efficiency leads the Court to conclude that

-5-

> denial of Plaintiffs' Motion for Relief and continued deference
> on the Motion to Remand is proper under this situation. Despite
> Mr. Anderson's unfortunate and bleak health situation, policy
> implications of judicial efficiency persuade the Court to deny
> Plaintiffs' Motion for Relief.

*In re Asbestos Cases,* 2007 U.S. Dist. LEXIS 12023, at *6-9 (D. Utah. Feb. 20, 2007).

Third, Plaintiffs' argument that the MDL is a "black hole" where cases "are forever mired in inactivity" (Brief at 4) has been rejected time and again by the Panel, is not supported by Plaintiffs' "statistics," and is directly refuted by the procedures implemented by Judge Robreno in MDL No. 875. In 2008 the Panel, denying motions to vacate CTO's, noted that over 76,000 actions had been closed in MDL 875, and that procedures were available in the MDL to effectuate the remand of cases in a timely manner:

> Under the stewardship of the transferee court, as of March 31,
> 2008, (1) over 76,450 actions have been closed in the transferee
> district, and (2) over 1,370 actions or claims therein have been
> returned to their originating transferor districts. To any parties
> that believe the uniqueness of their particular situation renders
> continued inclusion of their action in MDL No. 875
> unnecessary or inadvisable, whenever the transferee court
> deems remand of any claims or actions appropriate, procedures
> are available whereby this may be accomplished with a
> minimum of delay. See Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at
> 436-38. We are confident that the transferee court will continue
> to promptly review arguments for returning transferred actions
> or claims to their transferor courts and will take all appropriate
> steps to assure their speedy return whenever it is convinced that
> retention in the MDL No. 875 proceedings is no longer needed.

*In re Asbestos Products Liab. Litig.,* 545 F. Supp. 2d at 1361.

FOWLER WHITE BURNETT P.A. • ESPIRITO SANTO PLAZA, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131-3302 • (305) 789-9200

Although Plaintiffs assert that few cases were remanded between 1998 and 2005, the numbers they tout do not tell the full story: "Although the number of Section 1407 remands in MDL No. 875 is proportionately small, this is only because under the transferee court's stewardship, the vast majority of transferred actions have been able to be concluded in the transferee district during the course of pretrial proceedings." *In re Asbestos Products Liab. Litig.*, 560 F. Supp. 2d at 1369. The Panel has expressed confidence "that the transferee court will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever it is convinced that retention in MDL No. 875 is not longer needed." *In re Asbestos Products Liab. Litig.*, 545 F. Supp. 2d at 1369. Plaintiffs have not shown otherwise.

In addition, Plaintiffs' argument is further undermined by the fact that it relies on statistics that substantially predate the implementation of Administrative Order No. 12, pursuant to which the court has "initiated an aggressive, pro-active policy in setting cases for settlement conferences, motions, hearings and trials." *See* www.paed.uscourts.gov/mdl875p.asp. Indeed, the MDL 875's *recent* "Caseload Statistics" (*see* Ex. 2 hereto) reflect that 115,949 cases transferred to MDL 875 between 8/1/2006 and 6/30/2010, and that 84,674 cases were terminated. *See also In re Asbestos Products Liab. Litig.*, 560 F. Supp. 2d at 1369 n.4 (the MDL noted that "the vast majority of transferred actions have been able to be concluded in the transferee district during the course of pretrial proceedings." ).[2]

---

[2] Plaintiffs' argument that cases are buried in MDL 875 is effectively undercut by the following time table in an asbestos case recently transferred to MDL 875 -- *Krieger v. Alfa Laval, Inc.* Case No. 10-69373 (E.D. Pa.), Case No. 10-80594 (S.D. Fla.) -- which reflects that the cases

FOWLER WHITE BURNETT P.A. • ESPIRITO SANTO PLAZA, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131-3302 • (305) 789-9200

Plaintiffs' invocation of the Founding Fathers and right to a jury trial (Brief at 8-10) ignores the fact that this Court has repeatedly "*rejected* the contention, which is again raised by plaintiffs in the three Florida actions here, that 'the way in which MDL 875 is being administered effectively denies [plaintiff] their constitutional right to a jury trial.'" *In re Asbestos Products Liab. Litig. (VI)*, 560 F. Supp. 2d 1367 at 1368 n.3 (quoting *In re Asbestos Products Liab. Litig. (VI)*, 170 F. Supp. 2d at 1349) (emphasis added).

Finally, Plaintiffs' assertion (Brief at 10) that in the "original removal/remand debate" "defendants did not address this [MDL-as-black-hole issue] because they know they cannot credibly defend the transfer of this case to the MDL . . ." flatly misrepresents the record. At p. 15 of its response in opposition to plaintiffs' motion to remand, Elliott argued this point extensively. (*See* Ex. 1).

In sum, Plaintiffs' Amended Motion to Vacate Conditional Transfer Order 339 is plainly lacking in merit if not frivolous: "Appellants may be displeased that, as a consequence of these steps, they will have to litigate in the Asbestos MDL, which they deride as 'a black hole' and 'the third level of Dante's inferno'. . . However, these metaphors do not justify an interruption in the normal function of the legal system." *In re United States Lines*, 1998 U.S. Dist. LEXIS 10135, at *19 (S.D.N.Y. July 8, 1998).

---

are moved along expeditiously: (1) May 10, 2010: Defendant filed Notice of Removal (S.D. Fla. D.E. 1); (2) May 25, 2010: MDL Conditional Transfer Order filed (S.D. Fla. D.E. 64); (3) July 1, 2010: confirming transfer of case to MDL (E.D. Pa. D.E. 1); (4) July 8, 2010: MDL Order Setting Status and Scheduling Conference (E.D. Pa. D.E. 7); (5) July 21, 2010: MDL Status and Scheduling Conference; and (6) August 9, 2010: MDL Scheduling Order issued (E.D. Pa. D.E. 32).

FOWLER WHITE BURNETT P.A. • ESPIRITO SANTO PLAZA, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131-3302 • (305) 789-9200

## IV.   CONCLUSION

Based upon the foregoing arguments and authorities, Defendant Elliott respectfully requests that the Plaintiffs' Motion to Vacate Conditional Transfer Order 339 be denied.

Respectfully submitted,

*s/Helaine S. Goodner*
Edward J. Briscoe
Fla. Bar No. 109691
Email: ebriscoe@fowler-white.com
Helaine S. Goodner
Fla. Bar No. 462111
Email: hgoodner@fowler-white.com
FOWLER WHITE BURNETT P.A.
1395 Brickell Avenue, 14th Floor
Miami, Florida 33131-3302
Telephone: (305) 789-9200

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2010, the foregoing document was filed with the JPML by e-mail.

*s/Helaine* S. Goodner
Helaine S. Goodner

W:\81091\RESPON32-in opposition to Amended Motion to vacate Conditional Transfer Order.HSG

-9-

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:10-cv-22891-AJ

GALE LYAUTEY and PATRICIA LYAUTEY,
his wife,

      Plaintiffs,

v.

ALFA-LAVAL, INC., et al.,

      Defendants.

## DEFENDANT ELLIOTT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO REMAND (D.E. 60)

Defendant, sued as Elliott Turbomachinery Co., Inc. (hereinafter "Elliott" or Defendant), by and through undersigned counsel, hereby respectfully submits the following memorandum of law in opposition to Plaintiff's Emergency Motion to Remand (D.E. 60) and states:

### I. SUMMARY OF ARGUMENT

Virtually the same arguments advanced by Plaintiffs Gale Lyautey and Patricia Lyautey (collectively "Lyautey or Plaintiff") in support of remand were made to this Court in *Marley v. Elliott Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008), and *rejected*.[1] This Court held in *Marley* that Elliott had properly removed the case on the basis of federal officer jurisdiction because the affidavit of Rear Admiral Ben Lehman, also submitted in the instant case, was sufficient to advance a *colorable* government contractor defense and establish a causal nexus, and that at the removal stage of a failure to warn case, military contractors were not required to show that the Navy

---

[1] Plaintiff's counsel in the *Marley* case is also Lyautey's counsel in this case.

prohibited asbestos warnings.   Notwithstanding Plaintiff's shrill rhetoric that Defendants are conducting a "charade" by removing the case (Pl. Mot. at 2), and that the "government contractor defense is an outright farce" (*id.* at 9), Plaintiff has not advanced any arguments that were not raised and rejected in *Marley,* and that have not been rejected by numerous courts nationwide subsequent to *Marley,* including the asbestos MDL in *Boston v. Eastern Refractories Co.*, Case No. 07-63993 (E.D. Pa. Aug. 25, 2010). (Order attached as Ex. 1).   Although Plaintiff contends that *Marley* "was based on a less complete record than is now available" (Pl. Mot. at 2), and that post-*Marley* depositions demonstrate that Admiral Lehman's affidavit is not based on personal knowledge and lacks foundation, these arguments are *deja vu* and without merit.   In *Marley,* the Plaintiffs likewise relied on prior testimony of Admiral Lehman in an attempt to undermine his credibility and opinions. Properly rejecting "a narrow, grudging interpretation" of the colorable federal defense requirement, *Jefferson County v. Acker,* 527 U.S. 423, 431 (1999), this Court ruled in *Marley* that "factual disputes about the Admirals' testimony should be resolved in federal court as long as the defendants have a good faith foundation for their contractor defense." *Marley,* 545 F. Supp. 2d at 1273.[2] Moreover, MDL 875 held in *Boston* that expert testimony similar to Admiral Lehman's established that the Navy "provided precise specifications, which conflicted with General Dynamics' ability to plac[e] warnings on asbestos-containing components." *Boston,* at 3.

Removal in government contractor cases "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that

---

[2]Admiral Lehman's affidavit in *Marley* is attached hereto as Ex. 2.

-2-

CASE NO.: 1:10-cv-22891-AJ

the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133

(2d Cir. 2008) (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007)). Policy

considerations supporting federal officer removal based upon the military contractor defense would

be substantially undermined if Navy contractors, such as Elliott, that "helped carry out the Navy's

duties or tasks," *Marley*, 545 F. Supp. 2d at 1274 n.4., were denied the protection of a federal forum:

> The military contractor defense is based upon substantive policy considerations as well as pragmatic procedural factors in controlling litigation. The government contractor defense, provides substantive protection for the armed forces and its suppliers. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988). Section 1442(a)(1) provides procedural protection. Failure to apply the federal officer removal statute would allow into the back door of state litigation what the government contractor defense barred at the front door.
>
> * * *
>
> Because government contractor cases are freighted with factual findings, Boyle, while laying down a substantive rule, may be readily circumvented by state courts unsympathetic to the defendants.

*Isaacson v. Dow Chem. Co. (In re Agent Orange Prod. Liab. Litig.)*, 304 F. Supp. 2d 442, 451

(E.D.N.Y. 2004), *aff'd*, 517 F.3d 129 (2d Cir. 2008).

## II. STATEMENT OF THE CASE AND FACTS

While serving in the U.S. Navy as a boiler tender and fireman, Gale Lyautey was allegedly

exposed to asbestos-containing products of the Defendants, which caused injury. Plaintiff filed an

action in Florida state court seeking damages for negligence and strict liability based on alleged

failure to warn. Defendant Foster Wheeler removed the action to federal court on August 9, 2010,

on the basis of federal officer removal. (D.E. 1). Elliot, a military contractor, joined in the removal.

-3-

(D.E. 32). Plaintiff filed an Emergency Motion to Remand or, in the Alternative, Motion for Summary Judgment as to Defendants' Government Contractor Defense (only as to Wheeler). (D.E. 60). Foster Wheeler moved for a stay of proceedings until such time as the Judicial Panel on Multidistrict Litigation rules on transfer of the case to MDL 875 in the Eastern District of Pennsylvania. (D.E. 62). Elliott joined in the stay motion. (D.E. 64). The Judicial Panel on Multidistrict Litigation entered a Conditional Transfer Order on September 1, 2010 (Ex. 3).[3]

    *A.    Affidavit of Rear Admiral (USN, Retired) Ben J. Lehman.* Admiral Lehman is a retired Rear Admiral of the United States Navy, where he served on active duty, in part, as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944, and as a Ship Superintendent at the San Francisco Naval Shipyard from 1950 to 1952, where he personally supervised and oversaw ship alterations and equipment overhauls. (D.E. 1-6, Lehman Aff. ¶¶1, 3). He also worked at two major ship building companies from 1969 to 1975. (*Id.*, ¶1). By virtue of his experience, professional training, education, and research, Admiral Lehman is familiar with the plans, designs and specifications used in the construction and repair of Navy ships, the Navy's knowledge of asbestos hazards and use of asbestos insulation, the Navy's occupational hazard communication program, and Navy equipment manuals and regulations governing the warnings permitted by the Navy. (*Id.*, ¶¶1, 3). His testimony is based *inter alia* on his review of specifications,

---

    [3]The issuance of a Conditional Transfer Order supports a stay of the case, in the interest of judicial economy, until the Panel rules dispositively on the transfer to MDL 875. *Reaser v. A.W. Chesterton, Co.*, 2008 U.S. Dist. LEXIS, at *4 (M.D. Fla. Nov. 25, 2008).

documents regarding the Navy's hazard communication program, and his extensive career experience in the Navy and personal knowledge of Navy procurement practices. (*Id.* ¶¶ 1, 5, 13).

Admiral Lehman attested to the following: (1) the Navy did not permit government contractors to deviate from military specifications of equipment to be installed on Navy vessels (D.E. 1-6, ¶¶5-6); (2) "the Navy had complete control over every aspect of every piece of equipment" (*id.*, ¶10); (3) military specifications governed every characteristic of the equipment used on Navy ships, including the instructions and warnings and the decisions of what warnings should or should not be included." (*id.*, ¶10); (4) the Navy "dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors" (*id.*, ¶11); (5) starting in the 1930s, the Navy conducted extensive research concerning the hazard of exposure to asbestos (*id.*, ¶13); (6) the Navy "made a conscious and informed decision about how asbestos would be used on its ships and how exposures would be controlled, if at all, on its ships" (*id.*); (7) the Navy would not have allowed its equipment suppliers to affix any warning related to asbestos hazards on their equipment and "[t]o do so would have interfered with the U.S. Navy's mission and control of its ships and personnel" (*id.*, ¶14); and (8) the Navy "would not, and could not, permit any equipment manufacturer or supplier to interfere with the Navy's mission by placing warnings on any equipment [or in any instructions or manuals which accompanied the equipment] on any U.S. Navy ships or in any shipyards in which U.S. Navy ships were built or repaired that might cause Sailors or workers to deviate from their mission or require the U.S. Navy to devote scarce resources to programs it deemed not essential, in its unilateral view,"

-5-

such as the provision of respiratory protection and the implementation of wet down procedures (*id.*, ¶¶10, 13).

B.   *Plaintiff's Evidence.* Plaintiff has not provided any expert testimony which controverts Admiral Lehman's testimony.   Although Plaintiff argues (Pl. Mot. at 13) that Admiral Lehman "wholly exaggerate[s] the Navy's control over warnings . . . ," Plaintiff does not offer even a scintilla of evidence to support this contention.

## ARGUMENT

1.   **ELLIOTT HAS ESTABLISHED A COLORABLE MILITARY CONTRACTOR DEFENSE AND A CAUSAL NEXUS SUFFICIENT TO SUPPORT FEDERAL OFFICER REMOVAL**

In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988), the Supreme Court held that a government contractor is immune from state tort liability for design defects in equipment manufactured for the Government when: (1) the Government approved reasonably precise specifications; (2) the equipment conformed to the specifications; and (3) the supplier warned the Government about hazards known to the supplier but not to the Government.   The Eleventh Circuit held in *Dorse v. Eagle-Picher Indus., Inc.*, 898 F. 2d 1487, 1489 (11th Cir. 1990), in a failure to warn case the government must show "significant conflict" between its state law duty to warn and the governments' warning specifications. Granting summary judgment for the plaintiff, the Eleventh Circuit ruled that the defendant had not shown that its contractual duties prevented compliance with its state law duty to warn. *Id.* at 1489-90.

In *Marley*, 545 F. Supp. 2d at 1270, the Plaintiffs alleged that Elliott and other military contractors failed to warn of the hazards of asbestos.   Marley argued in support of remand, as does

-6-

CASE NO.: 1:10-cv-22891-AJ

Lyautey, that Defendants had not shown a conflict because they had not adduced evidence that the Navy prohibited them from warning; the affidavit of Admiral Lehman was speculative and without foundation; and MDL 875 was a "black hole." (Case No. 07-23042, D.E. 2-1 at 15). Based in part on the affidavit of Admiral Lehman, this Court ruled that Elliott had established a *colorable* federal defense, noting that "a defense may be colorable even if the court ultimately rejects it. Indeed, no determination of fact is required at the removal stage. All a removing defendant needs to do is to make a showing that his federal defense 'is not without foundation and made in good faith.'" *Id.* at 1271 (quoting *Nesbiet v. Gen. Electric*, 399 F. Supp.2d 205, 211 n.44 (S.D.N.Y. 2005)). Acknowledging that "[a]lmost identical" affidavits of Admiral Lehman had been filed in other lawsuits, that the "[d]istrict courts, however, are split on whether these are sufficient to 'advance' a colorable government contractor defense," *Marley*, 545 F. Supp. 2d at 1272, and that the affidavits left room for speculation, this Court nonetheless concluded that Elliott had met its burden because the affidavit provided

> a good faith foundation to show (1) that the Navy controlled the warnings to be affixed on parts manufactured by independent contractors, and (2) that the Navy was likely to reject any asbestos warning given its policy to deal with the asbestos problem exclusively through training.
>
> I agree that the Admirals' depositions in other cases suggest that they do not know of any instance when the Navy prohibited a warning proposed by a manufacturer or supplier. I also understand that there is a dispute as to whether the Navy manuals encouraged or prohibited the use of warnings. These arguments undermine the credibility of the Admirals, and raise a number of questions that the defendants will have to answer to ultimately prevail on their defense. But that is a merits question for another day. I do not need to determine credibility

-7-

> or likelihood of success at the removal stage. Factual disputes about the Admirals' testimony should be resolved in federal court as long as the defendants have a good faith foundation for their contractor defense. *See Magnin,* 91 F.3d at 1427-28. Because I find that the defendants have satisfied this low standard, removal was proper.

*Id.* at 1273. This Court also concluded in *Marley* that Elliot had established the requisite causal connection for purposes of federal officer removal: "[T]here is no question that the defendants' relationship with the plaintiff derived solely from the defendants' official duties. This is sufficient to establish a causal nexus under *Magnin* [*v. Teledyne Continental Motors,* 91 F.3d 1424, 1429 (11th Cir. 1996)] . . . . ". *Marley,* 545 F. Supp. 2d. at 1274.

Accordingly, this Court concluded in *Marley* that "removal of this action was appropriate under the federal office removal statute," *id.* at 1270, and should do so as well in the instant case for precisely the same reasons. Admiral Lehman's affidavit establishes a colorable federal defense and causal nexus sufficient to support removal. Admiral Lehman's testimony that the Navy's specifications governed all aspects of the equipment or Navy vessels, including warnings; the Navy did not permit its contractors to make any changes; and the Navy would not allow contractors to place asbestos warnings on equipment (D.E. 1-6, ¶¶ 6, 8-10), shows that the Navy provided precise specifications which excluded asbestos warnings.

There is no merit to any arguments advanced by Plaintiff here in support of remand. First, although Plaintiff contends that remand should be granted because Admiral Lehman does not state that the Navy expressly *prohibited* warnings (*see* Pl. Mot. at 7-9), this argument was rejected in *Marley* and has not improved with the passage of time:

-8-

CASE NO.: 1:10-cv-22891-AJ

> The Plaintiffs suggest that the defendants need to show that the Navy actually prohibited asbestos warnings to establish a "causal nexus" at the removal stage. I disagree. "Just as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute ... so would demanding an airtight case on the merits in order to show the required causal connection." *Jefferson County*, 527 U.S. at 432-33, 119 S.Ct. 2069. All a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy. *See Magnin*, 91 F.3d at 1427-28. This the defendants have done.

*Marley*, 545 F. Supp. 2d at 1274.

Second, contrary to Plaintiff's contention (Pl. Mot. at 8), the instant case is *not* "precisely analogous to *Dorse*." As recognized in *Marley*, 545 F. Supp. 2d at 1272 n.3, *Dorse* is distinguishable because it was based on the "summary judgment standard [which] is obviously significantly higher than the colorable defense standard."

Third, Plaintiff argues that remand should be granted because other courts have "consistently" concluded that the affidavit of Admiral Lehman is insufficient to support removal (*see* Pl. Mot. at 9, *see also* 9-12). They are less than candid in failing to acknowledge that numerous courts post-*Marley* have held that the affidavit of Admiral Lehman, and similar affidavits, are sufficient to support federal officer removal based on the government contractor defense. Significantly, MDL 875 very recently entered an order in *Boston* (Case No. 07-63993 D.E. 82) (Ex. 1), granting the defendants' motion for summary judgment on the basis of the government contractor defense. Based upon the affidavit of Admiral Horne, Judge Robreno found that the defendant "had produced evidence showing that the United States provided precise specifications, which conflicted with

-9-

CASE NO.: 1:10-cv-22891-AJ

General Dynamics' ability to place warnings on asbestos-containing components." Boston, (Ex. 1

at 3). Admiral Horne testified in relevant part:

> "[N]o private contractor, such as Electric Boat, could have affixed a written warning anywhere aboard an active Naval warship during its construction or repair, advising of the risk of asbestos exposure, except by express permission of the United States Navy. To do so without the Navy's express approval would be deviation from the detailed and specific instructions mandated by the Navy. The Navy's detailed specifications did not leave room for individual vendors to make determinations about inclusion of asbestos warnings."

(*Id.*). The court concluded that the affidavit "shows that the United States government provided

precise and exacting specifications for the product at issue, and that these specifications excluded

warnings from individual manufacturers." *Id.* Judge Robreno rejected Plaintiffs' argument that the

contractor had not shown that it had tried to warn the Navy: "Plaintiffs have asserted no specific

facts to controvert Admiral Horne's testimony." *Id.* at 4. The same is true in the instant case.

In addition, *Marley* was followed in the similar case of *Corley v. Long-Lewis, Inc.*, 688 F.

Supp. 2d 1315, 1334 (N.D. Ala. 2010), in which the court held that the affidavit "raises the inference

that GE did not provide a warning concerning the dangers of asbestos because the Navy did not

permit any such warning," thereby establishing that the Navy controlled all warnings, in turn

supporting an inference that no warnings appeared because the Navy prohibited them. The

defendants were not required to show that the Navy prohibited asbestos warnings. *Id.* at 1334-35.

The *Corley* court distinguished *Dorse*, and held that factual disputes about the affiant's testimony

"should be resolved in federal court because defendants have a good faith foundation for their

contractor defense." *Id.*

-10-

Numerous cases subsequent to *Marley* have held that the affidavit of Admiral Lehman is

sufficient to show a good faith basis for the government contractor defense. *See, e.g., Beckwith v.*

*General Electric Co.*, 2010 U.S. Dist LEXIS 30360, at *16-17 (D. Conn. March 30, 2010) (affidavit

of Admiral Lehman showed that Navy would not have permitted manufacturers to place warnings

on equipment without approval and that defendants were not "required to disclose the exact

government specifications or contracts stating specifically that the defendants were not to affix their

particular asbestos warnings or . . . an actual time when the asbestos warnings were actually rejected

. . . ."); *Curry v. American Standard, Inc.*, 2009 U.S. Dist. LEXIS 12101 (S.D.N.Y. Feb. 6, 2009)

(rejecting argument that the Navy did not prohibit warnings and that the affidavits did not cite

military specifications requiring the removal of asbestos warnings from manuals); *Kirks v. General*

*Elec. Co.*, 654 F. Supp 2d 220, 224 (D. Del. 2009) (relying in part on Admiral Lehman's affidavit,

the Court concluded that the defendant raised a colorable federal defense, and established a causal

nexus between the failure to warn claims and the Navy's control over the warnings provided by GE

on its turbines); *Kotecki v. Buffalo Pumps, Inc.*, 2009 U.S. Dist. LEXIS 65170, at *12-13 (D. Conn.

July 28, 2009) (same); *Murphy v. GE*, 2009 U.S. Dist. LEXIS 60177, at *12 (D. Conn. July 15,

2009) (same) Lehman Affidavit stating that (contractors could not deviate from Navy specifications

established that the Navy imposed "reasonably precise specifications" on its contractors with respect

to warnings and that materials supplied by a contractor that "were not entirely consistent with the

Navy's extensive specifications probably would have been rejected"); *Siegfried v. Allegheny Ludlum*

*Corp.*, 2009 U.S. Dist. LEXIS 128350, at *52 (W.D. Pa. March 25, 2009) (same); *Reaser v. Allis*

*Chalmers Corp.*, 2008 U.S. Dist. LEXIS 112344, at *11-12 (C.D. Cal. June 23, 2008) ("The absence

-11-

of specific prohibitions, however, does not render these declarations [of Admiral Lehman] useless; rather, the declarations provide Defendants with a basis for asserting a colorable federal defense, which is all that is needed at the removal stage.").

Fourth, Plaintiff's reliance on *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129 (D. Mass. 2009) (Pl. Mot. at 10-11) is misplaced.  Although *Holdren* held that affirmative evidence of an express prohibition against asbestos warnings was required to remove the action, its strict interpretation of the removal statute is contrary to the *colorable* standard and is contrary to *Marley*.[4]

Further, there is no merit to Plaintiff's argument (Pl. Mot. at 18-20) that Admiral Lehman's testimony in prior proceedings is inconsistent with his affidavit here, and that he previously admitted that there is no evidence that the Navy prohibited any manufacturer from warning.  (*Id.* at 16). Similar arguments were made and rejected in *Marley,* where this Court held that such contentions simply present "a merits question for another day." *Id.* at 1273.  Moreover, although Admiral Lehman has testified that he was not aware of any *document* specifically prohibiting vendors from

_____

[4] Moreover, Massachusetts federal courts are divided.  In *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54-7 (D. Mass. 2008) this Court denied a motion to remand where an Affidavit established the Navy's pervasive control over all cautionary material supplied by its contractors, and the reason for such control, showed that the Navy "exercised its discretion and approved certain warnings" and the contractor provided the warnings required by the Navy.

Plaintiff also relies on *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187 (D. Mass. 2008) (Pl. Mot. at 12), in which the court held that the affiants merely speculated that the Navy would have rejected manufacturers' attempts to affix warnings. It was noted in *Siegfried,* 2009 U.S. Dist. LEXIS 128350, at *50, that "[c]ontrary to the *Hilbert* case . . . a majority of courts have held that because federal officer removal is to be broadly construed and because the removing defendant only has to assert a colorable defense . . . affidavits such as those produced in this case [including Admiral Lehman] are sufficient."

CASE NO.: 1:10-cv-22891-AJ

warning about asbestos (*see* Pl. Mot. at 16), and that the Navy did not prohibit manufacturers from asking the Navy for permission to do things not in military specifications (*id.* at 18), such testimony does not conflict with his affidavit or render it speculative.[5] As he has explained, the Navy would have rejected asbestos warnings suggested by the manufacturers because such warnings might cause sailors or workers to deviate from their mission or cause the Navy to denote scarce resources to programs such as provision of respiratory protection and implementation of wet down or containment procedures. (Lehman Aff. at 10, 13).[6] Admiral Lehman's prior testimony that he was not aware of a situation in which a vendor's request to affix an asbestos warning label had been made

---

[5] Although Plaintiff asserts (Pl. Mot. at 16-17) that Admiral Lehman previously testified that the government never rejected equipment or a manual including an asbestos warning, he does not cite any supporting testimony.   In response to the question whether the Navy prohibited manufacturers from seeking consent to include something "above and beyond what the military specification called for" (Pl. Mot., Ex. J at 121-22), the following exchange occurred (*id.*):

|  |  |
|---|---|
| THE WITNESS: | Did the Navy prohibit people from asking for permission to do other things? |
| MR. KIRBY: | Yes. |
| THE WITNESS: | No, there was no prohibition, and sometimes manufacturers did ask the Navy for permission to do things. |

[6] Admiral Lehman's prior deposition testimony in *Sweeney v. Saberhagen Holdings* (Case No. 05-01637, W.D. Wash. December 23, 2005), and trial testimony in *Riggle v. Allis-Chalmers Corp.* (Case No. 04-01018-L, Dallas District Court), which Plaintiffs cited in *Marley* in support of remand (D.E. 37 and D.E. 30, respectfully) are consistent with his testimony in *Marley* and the subject affidavit.

-13-

FOWLER WHITE BURNETT P.A. • ESPIRITO SANTO PLAZA, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131-3302 • (305) 789-9200

CASE NO.: 1:10-cv-22891-AJ

and refused, is *consistent* with the Navy procurement practice of controlling all aspects of equipment production and warnings, and permitting no deviations.

Equally flawed is the argument (Pl. Mot. at 14-15) that "SECNAVINST 5160.8" (D.E. 60-4, Ex. I) shows that defendants were not precluded from placing asbestos warnings on equipment. As several courts have held, this "Uniform Labeling Program for Hazardous Industrial Chemicals and Materials" "would not have applied to product manufacturers . . . that contracted with the Navy because, by its terms, 'it governed the labeling of hazardous chemicals by Navy personnel, not outside product manufacturers.'" *Murphy v. General Elec. Co.*, 2009 U.S. Dist. LEXIS 60177, at *7 (D. Conn. July 15, 2009) (quoting *Contois v. Able Indus. Inc.*, 523 F. Supp. 2d 155, 162 (D. Conn. 2007) (citing *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 104 n.3 (D. Conn. 2007)).

As in *Marley*, Plaintiff has not shown -- and cannot show -- that it is "crystal clear that there is absolutely no foundation to the statements . . ." (Pl. Mot. at 15) in Admiral Lehman's affidavit. Based upon his extensive experience in the Navy, where he was integrally involved in all aspects of Navy procurement practices and procedures with regard to ships, the contention that his affidavit lacks foundation is baseless. *See, e.g., Nesbiet,* 399 F. Supp. 2d at 207-09 (finding that Admiral Lehman had sufficient personal knowledge of military contracts during the 1940's to establish that the Navy imposed reasonably precise specifications on military contractors); *Reaser,* 2008 U.S. Dist. LEXIS 112344, at 10 n.2 (the argument that affidavit lacks foundation and is speculative "lack[s] merit because Admiral Lehman['s] . . . declaration [] [is] based on years of experience and training in regard to the design and operation of U.S. Navy vessels. Both declarants state that they are

-14-

personally familiar with the degree of supervision and control of the Navy over the actions of its contractors.").[7]

Finally, there is no merit to Plaintiff's argument that the subject case was "unfairly" removed in order to bury it in the MDL. (*See* Pl. Mot. at 9, 13). MDL 875 rejected the argument that *Marley* should have been transferred back to the District Court for the Southern District of Florida following a conditional transfer to the MDL, noting that it had "previously rejected the contention, which is again raised by plaintiffs in the three Florida actions here, that 'the way in which MDL 875 is being administered effectively denies [plaintiff] their constitutional right to a jury trial.'" *In re Asbestos Prods. Liab. Litig.*, 560 F. Supp. 2d 1367, 1369 n.3 (J.P.M.L. 2008). The MDL further noted that "[u]nder the stewardship of the transferee court, as of June 2, 2008, (1) over 77,000 actions have been closed in the transferee district . . ."*id.* at 1369, and "the vast majority of transferred actions have been able to be concluded in the transferee district during the course of pretrial proceedings." *Id.* at 1369 n.4.[8]

---

[7] Plaintiff also argues (Pl. Mot. at 13) that Lehman's opinion "flatly misrepresents the content of the very military specifications to which they cite in support, their conclusion [that] the Navy precluded asbestos warnings."

[8] The notion that cases are buried in MDL 875 is effectively undercut by the following time table in an asbestos case recently transferred to MDL 875 -- *Krieger v. Alfa Laval, Inc.* Case No. 10-69373 (E.D. Pa.), Case No. 10-80594 (S.D. Fla.) -- which reflects that the cases are moved along expeditiously: (1) May 10, 2010: Defendant filed Notice of Removal (S.D. Fla. D.E. 1); (2) May 25, 2010: MDL Conditional Transfer Order filed (S.D. Fla. D.E. 64); (3) July 1, 2010: confirming transfer of case to MDL (E.D. Pa. D.E. 1); (4) July 8, 2010: MDL Order Setting Status and Scheduling Conference (E.D. Pa. D.E. 7); (5) July 21, 2010: MDL Status and Scheduling Conference; and (6) August 9, 2010: MDL Scheduling Order issued (E.D. Pa. D.E. 32).

Plaintiff's assertion that in *Marley* "despite every effort to expeditiously move the estates case to trial, it still remains pending in the MDL 2½ years later" (Pl. Mot. at 2 n.1) is misleading.

FOWLER WHITE BURNETT P.A. • ESPIRITO SANTO PLAZA, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131-3302 • (305) 789-9200

CASE NO.: 1:10-cv-22891-AJ

In sum, removal was appropriate.

## CONCLUSION

Based upon the foregoing arguments and authorities, Defendant Elliott respectfully requests that the Plaintiff's motion to remand be denied.

Respectfully submitted,

*s/Helaine S. Goodner*
Edward J. Briscoe
Fla. Bar No. 109691
Email: ebriscoe@fowler-white.com
Helaine S. Goodner
Fla. Bar No. 462111
Email: hgoodner@fowler-white.com
FOWLER WHITE BURNETT P.A.
1395 Brickell Avenue, 14th Floor
Miami, Florida 33131-3302
Telephone: (305) 789-9200

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2010, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Helaine S. Goodner*
Helaine S. Goodner

---

*Plaintiffs'* counsel in *Marley* requested a three-month extension of the discovery deadline. While Plaintiffs' counsel in the *Marley* case tried to place the blame on removal for the lack of an opportunity to testify the fact is that removal of that case did not have any effect on Mr. Marley's ability to testify; Plaintiffs' counsel could have taken an evidentiary deposition of Mr. Marley while he was still alive, as is typically done in asbestos cases to perpetuate testimony, despite the fact that the case was in federal court.

-16-