ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:10-cv-02447-EDL

Reynolds et al v. Kaiser Ventures LLC, et al.,
Assigned to: Magistrate Judge Elizabeth D. Laporte
Cause: 28:1442 Petition for Removal- Breach of Contract

Date Filed: 06/02/2010
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Linda Reynolds**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to James*
*Reynolds, Deceased*

represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jamie Reynolds**

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alliree Reynolds**
*as Legal Heirs of James Reynolds,*
*Deceased*

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Kaiser Ventures LLC**

represented by **Africa E. Davidson**
Bassi Edlin Huie & Blum LLP
351 California Street, Suite 200
San Francisco, CA 94104
415 397-9006
Fax: 415 397-1339
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeremy D. Huie**
Bassi Edlin Huie & Blum LLP
351 California Street, Suite 200
San Francisco, CA 94104
415-397-9006
Fax: 415 397-1339
Email: jhuie@bmeblaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Metropolitan Life Insurance
Company**

**Defendant**

**General Dynamics Corporation**

**Defendant**

**Todd Shipyards Corporation**          represented by **George D. Yaron**
Yaron & Associates
601 California Street, 21st Floor
San Francisco, CA 94108
415-658-2929
Fax: 415-658-2930
Email: gyaron@yaronlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hielam Chan**
Yaron & Associates
601 California Street, 21st Floor
San Francisco, CA 94108
415-658-2929
Fax: 415-658-2930
*ATTORNEY TO BE NOTICED*

**Keith E. Patterson**
Yaron & Associates
601 California Street, 21st Floor
San Francisco, CA 94108
415-658-2929
Fax: 415-658-2930
Email: kpatterson@yaronlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Northrop Grumman Shipbuildings,
Inc**          represented by **Daniel James Kelly**
Tucker Ellis & West LLP
135 Main Street, Suite 700
San Francisco, CA 94105

415-617-2400
Fax: 415-617-2409
Email: daniel.kelly@tuckerellis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nairi Paterson**
Haight Brown & Bonesteel LLP
71 Stevenson Street, 20th Floor
San Francisco, CA 94105-2981
(415) 546.7500
Fax: (415) 546.7505
Email: npaterson@hbblaw.com
*TERMINATED: 09/20/2010*
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/02/2010 | 1 | NOTICE OF REMOVAL FROM STATE COURT (NO PROCESS) from Superior Court for the State of California; County of San Francisco. Their case number is CGC 10275547. (Filing fee $350.00 receipt number 34611046510). Filed byKaiser Ventures LLC. (aaa, COURT STAFF) (Filed on 6/2/2010) (tn, COURT STAFF). (Additional attachment(s) added on 6/4/2010: # 1 Civil Cover Sheet) (tn, COURT STAFF). (Entered: 06/04/2010) |
| 06/02/2010 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 9/7/2010. Case Management Conference set for 9/14/2010 10:00 AM. Signed by Senior Judge Samuel Conti on 6/2/10. (Attachments: # 1 SC Standing Order, # 2 Standing Order)(aaa, COURT STAFF) (Filed on 6/2/2010) (Entered: 06/04/2010) |
| 06/02/2010 | 3 | Declaration of AFRICA E. DAVIDSON in Support of 1 Notice of Removal from State Court; filed byKaiser Ventures LLC. (Related document(s) 1 ) (aaa, COURT STAFF) (Filed on 6/2/2010) (tn, COURT STAFF). (Entered: 06/04/2010) |
| 06/02/2010 | 4 | NOTICE OF TAG-ALONG ACTION by Kaiser Ventures LLC (aaa, COURT STAFF) (Filed on 6/2/2010) (tn, COURT STAFF). (Entered: 06/04/2010) |
| 06/02/2010 | 5 | REASSIGNMENT ORDER: GOOD CAUSE APPEARING THEREFOR, IT IS ORDERED that this case is reassigned to the **San Francisco** division. **Honorable Elizabeth D. Laporte** for all further proceedings. Counsel are instructed that all future filings shall bear the initials **EDL** immediately after this case number. The **Honorable Samuel Conti** No longer presides over this case. Signed by the Executive Committee on 6/2/10. (aaa, COURT STAFF) (Filed on 6/2/2010) (Entered: 06/04/2010) |
| 06/02/2010 |  | CASE DESIGNATED for Electronic Filing. (aaa, COURT STAFF) (Filed on 6/2/2010) (Entered: 06/04/2010) |
| 06/03/2010 | 6 | JOINDER to the re 1 Notice of Removal of Action Filed by Defendant |

| | | |
|---|---|---|
| | | Northrop Grumman Shipbuildings, Inc. (tn, COURT STAFF) (Filed on 6/3/2010) (Entered: 06/04/2010) |
| 06/08/2010 | 7 | NOTICE of Appearance by George D. Yaron (Yaron, George) (Filed on 6/8/2010) (Entered: 06/08/2010) |
| 06/23/2010 | 8 | *Defendant Kaiser Ventures* ANSWER to Complaint *For Survival, Wrongful Death-Asbestos* byKaiser Ventures LLC. (Huie, Jeremy) (Filed on 6/23/2010) (Entered: 06/23/2010) |
| 07/06/2010 | 9 | ORDER SETTING Initial Case Management Conference for 9/21/2010 10:00 AM in Courtroom E, 15th Floor, San Francisco. Signed by Judge Elizabeth D. Laporte on 7/6/2010. (Attachments: # 1 Standing Order)(lmh, COURT STAFF) (Filed on 7/6/2010) (Entered: 07/06/2010) |
| 09/16/2010 | 10 | CLERKS NOTICE RESETTING Initial Case Management Conference to **11:00 AM** on 9/21/2010 before Judge Laporte in Courtroom E, 15th Floor, San Francisco. (lmh, COURT STAFF) (Filed on 9/16/2010) (Entered: 09/16/2010) |
| 09/20/2010 | 11 | NOTICE of Change of Address by Daniel James Kelly *;withdrawal of Nairi Paterson* (Kelly, Daniel) (Filed on 9/20/2010) (Entered: 09/20/2010) |
| 09/20/2010 | 12 | Joint MOTION and *Stipulation to Stay Proceeding Regarding Transfer to Asbestos MDL #8875 in the Eastern District of Pennsylvania & [Proposed] Order to Stay* filed by Alliree Reynolds, Jamie Reynolds, Linda Reynolds. (Donadio, David) (Filed on 9/20/2010) (Entered: 09/20/2010) |
| 09/21/2010 | 13 | STIPULATION AND ORDER AS MODIFIED by Magistrate Judge Elizabeth D. Laporte terminating re 12 Motion to Appoint Counsel; granting in part and denying in part re 12 Motion to Stay. (edllc2, COURT STAFF) (Filed on 9/21/2010) (Entered: 09/21/2010) |
| 09/21/2010 | | ***Set Deadlines/Hearings: Joint Case Management Statement due 12/14/2010 &Initial Case Management Conference re-set for 12/21/2010 at 10:00 AM..(tn, COURT STAFF) (Entered: 09/27/2010) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/19/2010 10:00:13 | | | |
| **PACER Login:** | jp0001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:10-cv-02447-EDL |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

1  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON❖PURCELL LLP
2  Attorneys at Law
   222 Rush Landing Road
3  P.O. Box 6169
   Novato CA 94948-6169
4  (415) 898-1555

5  Attorneys for Plaintiffs

6

7

**ENDORSED**
**FILED**
San Francisco County Superior Court

APR 1 3 2010

ASBESTOS
CASE MANAGEMENT CONFERENCE CLERK OF THE COURT
BY: _____ PARAM NATT _____
Deputy Clerk

OCT - 8 2010 9³⁰ AM

DEPARTMENT   220

8              SUPERIOR COURT OF CALIFORNIA

9                COUNTY OF SAN FRANCISCO

10

11  LINDA REYNOLDS, as Wrongful Death      )  ASBESTOS
    Heir, and as Successor-in-Interest to  )  No.
12  JAMES REYNOLDS, Deceased; and          )
    JAMIE REYNOLDS and ALLIREE             )  CGC-10-275547
13  REYNOLDS, as Legal Heirs of JAMES      )  COMPLAINT FOR SURVIVAL,
    REYNOLDS, Deceased,                    )  WRONGFUL DEATH - ASBESTOS
14                                         )
               Plaintiffs,                 )
15                                         )
    vs.                                    )
16                                         )
    GENERAL ELECTRIC COMPANY;              )
17  Defendants as Reflected on Exhibit 1   )
    attached to the Summary Complaint      )
18  herein; and DOES 1-8500.               )

19

20          1.      JAMES REYNOLDS (hereinafter and in the Complaint referred to as "decedent")

21  died on August 24, 2009.

22          2.      LINDA REYNOLDS is the Successor-in-Interest to decedent.

23          3.      The heirs-at-law of decedent and their relationships to the decedent are:

24  NAME                      AGE                    RELATIONSHIP TO DECEDENT

25  LINDA REYNOLDS            62 Years               Spouse
    JAMIE REYNOLDS            Over 18                Son
26  ALLIREE REYNOLDS          Over 18                Daughter

27          4.      Plaintiffs bring this action as specified in Section 377.60 of the Code of Civil

28  Procedure as decedent's legal heirs.

THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158

K:\Injured\6512\pld\cmp-wdsrv2Met.wpd                    1
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1        5.     At all times prior to his death, decedent was a faithful and dutiful spouse to

2   plaintiff LINDA REYNOLDS and parent to plaintiff children.

3        6.     Plaintiffs' claims are as set forth in ©Brayton❖Purcell Master Complaint for

4   [Survival] [Loss of Consortium] Wrongful Death (hereinafter "Master Complaint") - Asbestos

5   No. 828684 filed March 3, 2003, in San Francisco Superior Court.  A copy of the Master

6   Complaint and General Order No. 55 may be obtained upon request from Brayton❖Purcell, and

7   designated portions of the Master Complaint are incorporated by reference herein pursuant to the

8   authority conferred by General Order No. 55. Plaintiffs' claims are as set forth in said Master

9   Complaint against defendants herein as follows:

10   ///

11   ///

12   ///

K:\Injured\65121\pld\cmp-wdsrv2Met.wpd      2
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

| Cause of Action | B | B-1 | C | D | E | F | G | H | I | J | K | L | M | N | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First (Negligence-Survival) | ☒ | ☐ | | | | | | | | | | | | | |
| Second (Products Liability-Survival) | ☒ | ☐ | | | | | | | | | | | | | |
| Third (False Representation) | ☐ | ☐ | ☐ | | | | ☐ | | | | ☐ | ☐ | ☐ | | |
| Fourth (Loss of Consortium) | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | | | ☐ | ☐ | ☐ | | |
| Fifth (Negligence-Wrongful Death) | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | | | |
| Sixth (Products Liability-Wrongful Death) | ☒ | ☐ | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | | | |
| Seventh (Premises Owner/Contractor Liability) | ☐ | ☐ | ☒ | ☐ | | | ☐ | | | | ☐ | ☐ | ☐ | | |
| Eighth, Ninth, Tenth (Unseaworthiness, Negligence [Jones Act],Maintenance and Cure) | | | | ☐ | | | | | | | | | | | |
| Eleventh (Longshore and Harbor Workers Compensation Act [LHWCA]) | | | | | ☒ | | | | | | | | | | |
| Twelfth, Thirteenth (F.E.L.A.) | | | | | | ☐ | | | | | | | | | |
| Fourteenth, Fifteenth (Respiratory Safety Devices) | | | | | | | ☐ ☐ | | | | | | | | |
| Sixteenth, Seventeenth (Brake Shoe Grinding) | | | | | | | ☒ | | | | | | | | |
| Eighteenth (Concert of Action) | | | | | | | | ☒ | | | | | | | |
| Nineteenth (Fraud, Deceit/Negligent Misrepresentation) | | | | | | | | | ☒ ☒ | | | | | | |
| Twentieth (Fraud and Deceit/Concealment) | | | | | | | | | | ☒ | | | | | |
| Twenty-First (Fraud and Deceit/Intentional Misrepresentation) | | | | | | | | | | ☐ | | | | | |
| Twenty-Second (Fraud/Deceit - Kent) | | | | | | | | | | | | | | | |
| Twenty-Third (Aiding/Abetting Battery - Met Life) | | | | | | | | | | | | | | | |
| Twenty-Fourth (Civil Battery) | | | | | | | | | | | | | | ☒ | |

DEFENDANTS* ON EXHIBITS:

*and their alternate entities as set forth in the Master Complaint or on any Exhibit.

1    7.    Decedent's asbestos-related injury, date of diagnosis, employment status, and

2  history of exposure to asbestos are as stated on Exhibit A.

3    8.    Paragraph 9 of the Master Complaint is amended to add the following sentence:

4  In part, and without limitation as to other defendants, defendants GENERAL DYNAMICS

5  CORPORATION, TODD SHIPYARDS CORPORATION, KAISER VENTURES LLC,

6  NORTHROP GRUMMAN SHIPBUILDING, INC., manufactured, modified, serviced and/or

7  repaired asbestos-containing ships and vessels.

8    9.    Plaintiffs hereby amend the Master Complaint on file herein, to incorporate a

9  new Twenty-Third Cause of Action, set forth below, specially plead against the defendant listed

10  on Exhibit N, namely METROPOLITAN LIFE INSURANCE COMPANY. (Plaintiffs are in

11  the process of amending the Master Complaint herein and will include this new Cause of Action

12  in said amendment.)

13
14
15

"TWENTY-THIRD CAUSE OF ACTION
Aiding and Abetting Battery
[Against Metropolitan Life Insurance Company
and Does 7501-7900, Inclusive]

16    AS AND FOR A FURTHER, TWENTY-THIRD, SEPARATE AND DISTINCT

17  CAUSE OF ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF(S)

18  COMPLAINS OF DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY,

19  DEFENDANTS ON EXHIBIT N, DOES 7501-7900, THEIR ALTERNATE ENTITIES AND

20  EACH OF THEM, AND ALLEGES AS FOLLOWS:

21    239.    Plaintiff incorporates herein by reference, as though fully set forth hereat, each

22  and every allegation of the First through Third and Eighteenth, Nineteenth, Twentieth, and

23  Twenty-First Causes of Action as though fully set forth herein. (As used throughout this cause

24  of action, 'plaintiff' refers to all named plaintiffs and/or all named decedents from whom the

25  named plaintiffs' injuries may derive.)

26    240.  This cause of action is for the aiding and abetting of battery by METROPOLITAN

27  LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical

28  ///

K:\Injured\6512\pld\cmp-wdsrv2Met.wpd                    4
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1  director Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation
2  ("J-M").

3    241. Plaintiff is informed and believes, and thereon alleges, that at all times herein
4  mentioned defendant MET LIFE was and is a corporation organized and existing under and by
5  virtue of the laws of the State of New York or the laws of some other state or foreign
6  jurisdiction, and that this defendant was and is authorized to do and/or was and is doing
7  business in the State of California, and regularly conducted or conducts business in the County
8  of San Francisco, State of California. At times relevant to this cause of action, MET LIFE was
9  an insurer of J-M.

10    242. Plaintiff, was exposed to asbestos-containing dust created by the use of the
11  asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the
12  asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease
13  and injuries.

14    243. Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-
15  related disease in Canadian mines and mills, including those of J-M. Those studies revealed
16  that miners and mill workers were contracting asbestosis at relatively low levels of dust.
17  McGill University, which conducted the studies, sought permission from MET LIFE to publish
18  the results but they were never published. MET LIFE prepared its own report of these studies.

19    244. Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S.
20  plants manufacturing asbestos-containing products, including a J-M plant. Those studies
21  showed that workers in substantial numbers were contracting asbestosis, at levels less than what
22  became the Threshold Limit Value ('TLV") of 5mppcf. The MET LIFE report was never
23  published or disseminated except to plant owners, including J-M.

24    245. In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,
25  New Jersey. Results were consistent with those of the Canadian and previous U.S. plant
26  studies. They were never published.

27    246. In 1934, J-M and others whose plants MET LIFE had studied agreed with MET
28  LIFE that it should issue a report of its studies.

K:\Unjured\6512\pld\cmp-wdsrv2Met.wpd                                5
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1     247. MET LIFE submitted a draft of its report to J-M. J-M requested, for legal and

2  business reasons, that certain critical parts of the draft be changed. MET LIFE's official in

3  charge was Lanza. MET LIFE through Lanza did make changes that J-M requested, including:

4          (a)     Deletion of MET LIFE's conclusion that the permissible dust level for asbestos

5                  should be less than that for silica;

6          (b)     Addition of the phrase that asbestosis clinically appeared to be milder than

7                  silicosis.

8  The report, thus altered, was published in 1935. It was misleading, and intentionally so,

9  because it conveyed the incorrect propositions that asbestosis was a less serious disease process

10  than silicosis and that higher levels of asbestos dust could be tolerated without contracting

11  diseases than was the case for silica dust.

12     248. MET LIFE had a close relationship with J-M. It invested money in J-M. It

13  provided group health and life insurance to J-M. MET LIFE IN 1934 agreed to supply

14  industrial hygiene services to J-M, including dust counts, training employees to monitor dust

15  levels, examining employees, and recommending protective equipment. MET LIFE and Lanza

16  were viewed as experts on industrial dusts.

17     249. In 1933, MET LIFE through Lanza issued the following advices to J-M:

18          (a)     Disagreeing with the recommendation of a J-M plant physician, MET LIFE

19                  advised against warning workers of the fact that asbestos dust is hazardous to

20                  their health, basing its advice in view of the extraordinary legal situation;

21          (b)     When the plant physician judged the best disposition of an employee with

22                  asbestosis was to remove him from the dust, MET LIFE advised instead that

23                  disposition should depend on his age, nature of work and other factors and to

24                  leave him alone if he is old and showing no disability, for, MET LIFE stated,

25                  economic and production factors must be balanced against medical factors.

26     250. J-M followed the MET LIFE advices and did not warn its workers, including

27  plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying

28  workers of their disease.

1   251. In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation

2   ("AHF"). One of the AHF purposes was to develop standards for dust levels that would serve

3   as a defense in lawsuits and workers' compensation claims.

4   252. MET LIFE funded partially another study that tentatively recommended in 1938 a

5   TLV for asbestos dust of 5mpccf, the same as for silica dust. MET LIFE was aware of data

6   from its own, unpublished reports that showed that level was too high for asbestos dust. MET

7   LIFE nonetheless promoted that TLV as proper.

8   253. In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the

9   AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.

10   That report showed that workers exposed to less than the recommended maximum levels of

11   dust were developing disease. MET LIFE was a member of the IHF and Lanza was on its

12   medical committee. The Hemeon report, which was supplied to J-M and other owners, never

13   was published.

14   254. In 1936, J-M and other asbestos companies agreed with a leading medical research

15   facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the

16   others retained control over publication of the results. In 1943 Saranac's Dr. Leroy Gardner, in

17   charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long

18   fiber asbestos contracted cancer.

19   255. Dr. Gardner died in 1946. J-M and other companies wanted parts of the Saranac

20   results published and enlisted the assistance of MET LIFE's Lanza. J-M and other companies

21   decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as

22   Saranac's critique of existing dust standards. Lanza directed Saranac to delete the offending

23   materials. Saranac did so, and the altered report was published in 1951 by Saranac's Dr.

24   Vorwald, in the *AMA Archives of Industrial Hygiene*.

25   256. Lanza left MET LIFE at the end of 1948, and took a position at New York

26   University, funded by MET LIFE. He continued to misrepresent that asbestos does not cause

27   cancer into the 1950s.

28   ///

K:\Injured\6512\pld\cmp-wdsrv2Met.wpd                    7
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1       257. The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE

2   official was on its medical committee, through Drs. Braun and Truan conducted a study of

3   Canadian miners. The original report, in 1957, found an increased incidence of lung cancer in

4   persons exposed to asbestos. The sponsors, including J-M, caused those findings to be stricken,

5   and the report published in 1958 contained the false conclusion that asbestos exposure alone did

6   not increase the risk of lung cancer.

7       258. The false and misleading reports that a link between asbestos exposure and cancer

8   was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low

9   or zero.

10      259. J-M not later than 1933 was inflicting asbestos dust on its workers in its plants

11  knowing that the dust was hazardous and was causing workers to contract disease that could

12  and would disable and kill them. As MET LIFE advised, J-M did not warn its workers of the

13  hazard. J-M committed battery on workers in its plants, including plaintiffs' decedent, by that

14  conduct.

15      260. MET LIFE knew that J-M's conduct constituted a breach of its duties to its

16  workers. MET LIFE gave substantial assistance to J-M in committing batteries on its workers,

17  including plaintiff's decedent, through MET LIFE's conduct described above, including by:

18      (a)    Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in

19             view of the extraordinary legal situation, such that J-M did not warn its workers,

20             including plaintiff's decedent;

21      (b)    Deleting the findings of its own draft report that the allowable limits for asbestos

22             dust should be less than those for silica dust, and promoting a false and unsafe

23             TLV which specified maximum levels of silica dust, and promoting a false and

24             unsafe TLV which specified maximum levels of dust for workers, including

25             plaintiffs' decedent, which MET LIFE knew was wrong through its own studies;

26  ///

27  ///

28  ///

1    (c)    Advising J-M to keep certain workers continuing to work at dusty areas in the

2          plant even after J-M was aware that their lungs showed asbestos-induced

3          changes, lest other workers including plaintiffs' decedent be alerted to the

4          dangers of working in the dust.

5    WHEREFORE, plaintiff prays judgment as is hereinafter set forth."

6    Dated: 4/10/10                                    BRAYTON❖PURCELL LLP

7

8                                                      By:

9                                                         David R. Donadio
                                                          Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\6512\pld\cmp-wdsrv2Met.wpd                          9
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1    **Re:**    <u>Karen Hellen, et al. v. Asbestos Defendants (B\*P), et al.</u>
             <u>San Francisco County Superior Court Case No. CGC-08-274507</u>

2

3                      **<u>PROOF OF SERVICE – ELECTRONIC TRANSMISSION</u>**

4    STATE OF CALIFORNIA/COUNTY OF San Francisco

5        I am a citizen of the United States and an employee in the County of San Francisco. I
am over the age of eighteen (18) years and not a party to the within action. My business

6    address is BASSI, EDLIN, HUIE & BLUM LLP, 351 California Street, Suite 200, San
Francisco, California 94104.

7

8        On the date executed below, I electronically served the document(s) via LexisNexis

9    File & Serve, described below, on the recipients designated on the Transaction Receipt located
on the LexisNexis File & Serve website.

10

11          **DESIGNATION OF EXPERT WITNESSES AND DECLARATION OF
RESHMA A. BAJAJ, ESQ. IN SUPPORT THEREOF C.C.P. SECTION 2034**

12

13    On the following parties:

14

15        SEE SERVICE LIST PROVIDED BY LEXIS-NEXIS

16        I declare under penalty of perjury that the foregoing is true and correct and that this

17    document is executed on September 17, 2010, at San Francisco, California.

18

19                                /s/ CHRISTINE GILL

20                                CHRISTINE GILL

21

22

23

24

25

26

27

28    220982

                                         1