(JCx), DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:10-cv-07264-SVW -JCG

Kwang Scanlon v. Asbestos Companies                    Date Filed: 09/29/2010
Assigned to: Judge Stephen V. Wilson                   Jury Demand: Defendant
Referred to: Magistrate Judge Jay C. Gandhi            Nature of Suit: 368 P.I. : Asbestos
Case in other court: Superior Court State of CA County of   Jurisdiction: Federal Question
                     Los Angeles, BC 443647
Cause: 28:1441 Notice of Removal - Asbestos Litigation

**Plaintiff**

**Kwang Scanlon**                       represented by   **Denyse F Clancy**
*Individually and as Successor-In-*                     Baron & Budd PC
*Interest to Michael Scanlon, deceased*                 3102 Oak Lawn Avenue Suite 1100
                                                        Dallas, TX 75219
                                                        214-521-3605
                                                        Fax: 214-520-1181
                                                        Email: dclancy@baronbudd.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Eric Policastro**
                                                        Baron & Budd PC
                                                        3102 Oak Lawn Avenue Suite 1100
                                                        Dallas, TX 75219
                                                        214-521-3605
                                                        Fax: 214-520-1181
                                                        *ATTORNEY TO BE NOTICED*

                                                        **John Langdoc**
                                                        Barron and Budd PC
                                                        3102 Oak Lawn Avenue Suite 1100
                                                        Dallas, TX 75219
                                                        214-521-3605
                                                        Fax: 214-520-1181
                                                        Email: jlangdoc@baronbudd.com
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Asbestos Companies**

**Defendant**

**A.W. Chesterton Company**

**Defendant**

**Alfa Laval, Inc.**

**Defendant**

**American Standard, Inc.**
*individually and as successor-in-interest to The Trane Company*

**Defendant**

**Armstrong International, Inc.**

**Defendant**

**Astenjohnson, Inc.**
*formerly known as*
Asten, Inc.

**Defendant**

| | | |
|---|---|---|
| **Buffalo Pumps, Inc.**<br>*Erroneously Sued As*<br>Air & Liquid Systems Corporation,<br>Successor by Merger to Buffalo Pumps,<br>Inc. | represented by | **Glen R Powell**<br>Gordon & Rees LLP<br>275 Battery Street Suite 2000<br>San Francisco, CA 94111<br>415-986-5900<br>Fax: 415-986-8054<br>Email: gpowell@gordonrees.com<br>*ATTORNEY TO BE NOTICED* |
| | | **James G Scadden**<br>Gordon & Rees LLP<br>Embarcadero Center West<br>275 Battery Street 20th Floor<br>San Francisco, CA 94111<br>415-986-5900<br>Fax: 415-986-8054<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael J Pietrykowski**<br>Gordon & Rees LLP<br>Embarcadero Center West<br>275 Battery Street 20th Floor<br>San Francisco, CA 94111<br>415-986-5900<br>Fax: 415-986-8054<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **CBS Corporation**<br>*f/k/a Viacom, Inc. (successor-by-merger<br>to CBS Corporation, successor-by-<br>merger to Westinghouse Electric* | represented by | **David G Larmore**<br>Pond North LLP<br>350 South Grand Avenue Suite 3300<br>Los Angeles, CA 90071 |

*Corporation)*

213-617-6171
Fax: 213-623-3594
Email: dlarmore@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Francis D Pond**
Pond North LLP
350 South Grand Avenue Suite 3300
Los Angeles, CA 90071
213-617-6170
Fax: 213-623-3594
*ATTORNEY TO BE NOTICED*

**Kevin D Jamison**
Pond North LLP
350 South Grand Avenue Suite 3300
Los Angeles, CA 90071
213-617-7170
Fax: 213-623-3594
Email: kjamison@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cleaver Brooks, Inc.**
*individually and*
*formerly known as*
Aqua-Chem, Inc.

**Defendant**

**Crane Co.**
*individually and as successor in interest*
*to Chapman Valves*

**Defendant**

**Crown Cork & Seal Company, Inc.**
*individually and as successor-in-*
*interest to Mundet Cork Company*

**Defendant**

**Douglas Insulation Company, Inc.**

**Defendant**

**Flowserve Corporation**
*formerly known as*
The Duriron Company

**Defendant**

**FMC Corporation**
*individually, on behalf of and as*
*successor-in-interest to Peerless Pump*

*Co., John Bean Pumps, Chicago
Pumps, Dayton-Dowd Pump Co, Ohio
Apex Division, and Link Belt Company*

**Defendant**

**Foster Wheeler Energy Corporation**

**Defendant**

**Goulds Pumps Incorporated**

**Defendant**

**Henry Vogt Machine Co.**

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**John Crane, Inc.**

**Defendant**

**J.T. Thorpe & Son, Inc.**

**Defendant**

**Mechanical Drives & Belting**
*formerly known as*
L.A. Rubber Company

**Defendant**

**Metalclad Insulation Corporation**

**Defendant**

**Owens-Illinois, Inc.**

**Defendant**

**Quintec Industries, Inc.**
*individually and successor-by-merger
to Western Fibrous Glass Products
Company (f/k/a Western Fiberglas
Company)*

**Defendant**

**DOES**
*1-100*

**Defendant**

**Thomas Dee Engineering Co.**

**Defendant**

**Triple A Machine Shop, Inc.**

*also known as*
Triple A Shipyard

**Defendant**

**Warren Pumps, L.L.C.**
*formerly known as*
Warren Pumps, Inc.

**Defendant**

**Yarway Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/29/2010 | 1 | NOTICE OF REMOVAL from Superior Court State of CA County of Los Angeles, case number BC443647 with Conformed copy of summons and complaint. Case assigned to Judge Stephen V. Wilson, Discovery to Magistrate Judge Jacqueline Chooljian. (Filing fee $ 350 PAID), filed by Defendant Buffalo Pumps, Inc.(car) (Additional attachment(s) added on 10/1/2010: # 1 Exhibits 1 - 2, # 2 Exhibits 3 - 8) (ds). (Entered: 09/30/2010) |
| 09/29/2010 | 2 | AIR & LIQUID SYSTEMS CORPORATION, Successor by Merger to Buffalo Pumps, Inc.'s Notice of Tag-Along Action (car) (ds). (Entered: 09/30/2010) |
| 09/29/2010 | 3 | DEFENDANT AIR & LIQUID SYSTEMS CORPORATION, Successor by Merger to Buffalo Pumps, Inc.'s Certification of Interested Parties, identifying Corporate Parent Ampco-Pittsburgh Corporation (car) Modified on 9/30/2010 (car). (ds). (Entered: 09/30/2010) |
| 09/29/2010 | 4 | DEFENDANT AIR & LIQUID SYSTEMS CORPORATION, Successor by Merger to Buffalo Pumps, Inc's Notice of Removal to Adverse Party (car) (Additional attachment(s) added on 10/1/2010: # 1 Exhibit Part 1, # 2 Exhibit Part 2) (ds). (Entered: 09/30/2010) |
| 10/01/2010 | 5 | ORDER RE: STATUS CONFERENCE by Judge Stephen V. Wilson that a Status Conference set for 11/1/2010 at 3:00 PM before the Honorable Stephen V. Wilson. The attorneys attending this conference MUST be those who are in charge of the conduct of the trial. Attendance is mandatory. (jp) (Entered: 10/01/2010) |
| 10/01/2010 | 6 | NEW CASE ORDER by Judge Stephen V. Wilson, (bp) (Entered: 10/01/2010) |
| 10/05/2010 | 7 | CERTIFICATE OF SERVICE filed by Defendant Buffalo Pumps, Inc., re Notice (Other) 4 *Notice of Removal to Adverse Parties* served on October 5, 2010. (Powell, Glen) (Entered: 10/05/2010) |
| 10/13/2010 | 8 | ANSWER to Notice of Removal, 1 JURY DEMAND. *Filing State Court Answer and Jury Demand* filed by Defendant CBS Corporation. (Attachments: # 1 Certificate of Interested Parties, # 2 Notice of Related Cases)(Jamison, Kevin) (Entered: 10/13/2010) |
| 10/14/2010 | 9 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents |

| | | |
|---|---|---|
| | | RE: Answer to Complaint 8 . The following error(s) was found: Certificate of Interested Parties and Notice of Related Cases should be filed as separate documents and not as attachments to the Answer. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (vh) (Entered: 10/14/2010) |
| 10/18/2010 | 10 | NOTICE OF MOTION AND MOTION to Remand Case to Los Angeles Superior Court filed by Plaintiff Kwang Scanlon. (Attachments: # 1 Memorandum Memorandum and Points of Authorities in Support of Plaintiffs' Motion for Remand, # 2 Declaration Declaration of John Langdoc in Support of Plaintiffs' Motion for Remand, # 3 Exhibit Exhibits to Declaration of John Langdoc in Support of Plaintiffs' Motion for Remand, # 4 Proposed Order Proposed Order on eclaration of John Langdoc in Support of Plaintiffs' Motion for Remand)(Clancy, Denyse) (Entered: 10/18/2010) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 10/19/2010 10:59:41 | | |
| **PACER Login:** | jp0001 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 2:10-cv-07264-SVW -JCG End date: 10/19/2010 |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

1 | John Langdoc, Esq. (SBN 235509)
2 | Denyse Clancy, Esq. (SBN 255276)
Eric Policastro, Esq. (SBN 264605)
BARON & BUDD, P.C.
3 | 3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
4 | Telephone: 214/521-3605
800/222-2766
5 | Facsimile: 214/520-1181

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 13 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
KEI LaFLEUR-CLAYTON

6 | Attorneys for Plaintiff

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | COUNTY OF LOS ANGELES - CENTRAL DISTRICT

B C 4 4 3 6 4 7

9 |

10 | KWANG SCANLON, Individually and as
Successor-In-Interest to MICHAEL SCANLON,
11 | Deceased;

12 | Plaintiff,

13 | vs.

14 | ASBESTOS COMPANIES;
A. W. CHESTERTON COMPANY; ALFA
15 | LAVAL, INC.; AMERICAN STANDARD, INC.,
individually and as successor-in-interest to The
16 | TRANE COMPANY; ARMSTRONG
INTERNATIONAL, INC.; ASTENJOHNSON,
17 | INC. (f/k/a Asten, Inc.); BUFFALO PUMPS, INC.;
CBS CORPORATION, f/k/a Viacom, Inc.
18 | (successor-by-merger to CBS Corporation,
successor-by-merger to Westinghouse Electric
19 | Corporation); CLEAVER-BROOKS, INC.,
individually and f/k/a Aqua-Chem, Inc.;
20 | CRANE CO., individually and as successor in
interest to Chapman Valves; CROWN CORK &
21 | SEAL COMPANY, INC. (individually and as
successor-in-interest to Mundet Cork Company);
22 | DOUGLASS INSULATION COMPANY, INC.;
FLOWSERVE CORPORATION, f/k/a The Duriron
23 | Company; FMC CORPORATION, individually, on
behalf of and as successor-in-interest to Peerless
24 | Pump Co., John Bean Pumps, Chicago Pumps,
Dayton-Dowd Pump Co., Ohio Apex Division, and
25 | Link Belt Company; FOSTER WHEELER
ENERGY CORPORATION; GOULDS PUMPS
26 | INCORPORATED; HENRY VOGT MACHINE
COMPANY; INGERSOLL-RAND COMPANY;
27 | JOHN CRANE, INC.J.T. THORPE & SON, INC.;
MECHANICAL DRIVES & BELTING (f/k/a L.A.
28 | Rubber Company); METALCLAD INSULATION

CASE NO.

**COMPLAINT FOR
WRONGFUL DEATH
AND SURVIVAL**

[COMPLEX ASBESTOS
LITIGATION-SUBJECT
TO THE GENERAL
ORDERS CONTAINED
IN FILE NO. C700000].

Causes of Action
1. Negligence
2. Strict Liability
3. Loss of Consortium

BY FAX

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL                    Page 1

1  CORPORATION; OWENS-ILLINOIS, INC. )
2  QUINTEC INDUSTRIES, INC., individually and )
   successor-by-merger to Western Fibrous Glass )
3  Products Company (f/k/a Western Fiberglas )
   Company); THOMAS DEE ENGINEERING CO.; )
4  TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A )
   Shipyard); WARREN PUMPS, L.L.C., f/k/a Warren )
5  Pumps, Inc.; YARWAY CORPORATION; )
   DOES 1-100 )
6                                            )
              Defendants.                    )
7  _____ )

8       COME NOW, Plaintiff KWANG SCANLON, Individually and as Successor-In-Interest

9  to MICHAEL SCANLON, Deceased and for causes of action against Defendants. Plaintiff

10 complains and alleges as follows:

11                           **GENERAL ALLEGATIONS**

12      1.      Kwang Scanlon appears individually and as successor-in-interest to Decedent

13 Michael Scanlon. Plaintiff is an heir at law of Decedent. At all times mentioned herein,

14 Plaintiff has been and is a citizen of the United States, residing in the State of California.

15      2.      The true names and/or capacities, whether individual, corporate, associate,

16 governmental, or otherwise, of Defendants, Does 1 through 100, inclusive, are unknown to

17 Plaintiff at this time; who, therefore, sue said Defendants by such fictitious names; and when

18 the true names and capacities of said Defendants by such fictitious names have been

19 ascertained, Plaintiff will amend this complaint accordingly. Plaintiff is informed and

20 believes, and thereon alleges that each Defendant designated herein as a DOE is responsible,

21 negligently or in some other actionable manner, for the events and happenings hereinafter

22 alleged, either through said Defendant's own conduct or through the conduct of its agents,

23 servants or employees, or due to the ownership, lease or sale of the instrumentality causing

24 the injury, or in some other manner.

25      3.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned

26 herein, Defendants were the agents, servants, employees and/or joint venturers of their co-

27 Defendants and were, as such, acting within the scope, course, and authority of said agency,

28

1    employment and/or joint venture, in that each and every Defendant–when acting as a
2    principal–was negligent in the selection and hiring of each and every other Defendant as the
3    agent, servant, employee and/or joint venturer.

4        4.    Decedent MICHAEL SCANLON ("Decedent") was a California resident during
5    a substantial period of his asbestos exposure upon which Plaintiff's claims are based.

6        5.    Plaintiff is informed and believes, and thereon alleges, that at all times
7    mentioned herein, Defendants A. W. CHESTERTON COMPANY; ALFA LAVAL, INC.;
8    AMERICAN STANDARD, INC., individually and as successor-in-interest to The TRANE
9    COMPANY; ARMSTRONG INTERNATIONAL, INC.; ASTENJOHNSON, INC. (f/k/a
10   Asten, Inc.); BUFFALO PUMPS, INC.; CBS CORPORATION, f/k/a Viacom, Inc.
11   (successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric
12   Corporation); CLEAVER-BROOKS, INC., individually and f/k/a Aqua-Chem, Inc.; CRANE
13   CO., individually and as successor in interest to Chapman Valves; CROWN CORK & SEAL
14   COMPANY, INC. (individually and as successor-in-interest to Mundet Cork Company);
15   DOUGLASS INSULATION COMPANY, INC.; FLOWSERVE CORPORATION, f/k/a The
16   Duriron Company; FMC CORPORATION, individually, on behalf of and as
17   successor-in-interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd
18   Pump Co., Ohio Apex Division, and Link Belt Company; FOSTER WHEELER ENERGY
19   CORPORATION; GOULDS PUMPS INCORPORATED; HENRY VOGT MACHINE
20   COMPANY; INGERSOLL-RAND COMPANY; JOHN CRANE, INC.;J.T. THORPE &
21   SON, INC.; MECHANICAL DRIVES & BELTING (f/k/a L.A. Rubber Company);
22   METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.; QUINTEC
23   INDUSTRIES, INC., individually and successor-by-merger to Western Fibrous Glass
24   Products Company (f/k/a Western Fiberglas Company); THOMAS DEE ENGINEERING
25   CO.; TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A Shipyard); WARREN PUMPS,
26   L.L.C., f/k/a Warren Pumps, Inc.; YARWAY CORPORATION, and DOES 1-300, inclusive,
27   are corporations organized and existing under and by virtue of the laws of the State of
28   California, or the laws of some other state of the United States of America, or some foreign

1    jurisdiction, and that said Defendants were authorized to do and are doing business in the

2    State of California, and that said Defendants have regularly conducted business in the State

3    of California.

4        6.    At all times mentioned above, Defendants, and each of them, were engaged in

5    the business of manufacturing, fabricating, designing, assembling, distributing, leasing,

6    buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and

7    advertising a certain substance, the generic name of which is asbestos, and other products

8    containing asbestos.

9        7.    Decedent was exposed to Defendants' asbestos and asbestos containing products

10   contributing to and causing the development of mesothelioma. Decedent was exposed to

11   Defendants' asbestos and asbestos containing products through his occupational exposure to

12   asbestos while actively serving in the United States Navy from 1964 through 1966 aboard the

13   U.S.S. Piedmont (AD-17) at locations including but not limited to San Diego Naval Shipyard,

14   San Diego, CA and while on the U.S.S. Piedmont itself. Decedent was exposed to millions

15   of asbestos fibers by working around and with others grinding and pulverizing Defendants'

16   asbestos products aboard the U.S.S. Piedmont in many locations throughout the ship on a

17   frequent and regular basis. As a result of exposure to Defendants' asbestos and asbestos

18   containing products, asbestos fibers entered his body. Decedent suffered from mesothelioma

19   and each of Defendants' asbestos and asbestos containing products that entered his body was

20   a substantial factor in bringing about, prolonging, or aggravating Decedent's mesothelioma

21   and, eventually, Decedent's death.

22       8.    Decedent and Plaintiff KWANG SCANLON were married at all times relevant

23   to this action and were husband and wife up to Decedent's death.  Plaintiff is the wrongful

24   death heir of the Decedent.

25       9.    Prior to Decedent's injuries and eventual death as alleged, Decedent was able and

26   did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof,

27   Decedent was unable to perform the necessary duties as a spouse and the work and service

28   usually performed in the care, maintenance and management of the family home, and due to

1   his death, Decedent will be unable to perform such work, service and duties in the future. As

2   a proximate result thereof, Decedent's spouse, has been permanently deprived and will be

3   deprived of the consortium of her spouse, including the performance of duties, all to her

4   damages, in an amount presently unknown to Plaintiff, but which will be proved at the time

5   of trial.

6        10.    Prior to Decedent's injuries and eventual death as alleged, Plaintiff enjoyed love,

7   comfort, society, companionship, solace, and moral support of Decedent. Due to Decedent's

8   death, and as a proximate result thereof, Plaintiff will be deprived of such consortium of

9   Decedent in the future, in an amount presently unknown to Plaintiff, but which will be proved

10   at the time of trial.

11        11.    Discovery of the cause of Plaintiff's loss of consortium, as herein alleged, first

12   occurred within one year of the date this complaint was filed.

13        12.    Further, as a direct and proximate result of the acts of defendants, and each of

14   them, and the severe injuries caused thereby to Decedent as set forth in this complaint,

15   Decedent's spouse has suffered, and for a long period of time will continue to suffer loss of

16   consortium, including but not by way of limitation, loss of services, marital relations, society,

17   comfort, companionship, love and affection of said spouse, and has suffered severe mental

18   and emotional distress as a result thereof.

19                         **FIRST CAUSE OF ACTION**

20                             (Negligence)

21                       (Against all Defendants)

22        13.    Plaintiff hereby incorporates by reference, as though fully set forth herein, each

23   and every allegation contained in the General Allegations above.

24        14.    At all times herein mentioned, each of the named Defendants and DOES 1

25   through 100 was the successor, successor in business, successor in product line or a portion

26   thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion

27   thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or

28   member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

1    labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

2    inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

3    re-branding, manufacturing for others, packaging and advertising as certain product, namely

4    asbestos, and other products containing asbestos.  Said entities shall hereinafter collectively

5    be called "Alternate Entities." Each of the herein named Defendants is liable for the tortious

6    conduct of each successor, successor in business, successor in product line or a portion

7    thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or

8    partial owner, or wholly or partially owned entity, or entity that it was a member of, or

9    funded, that researched, studied, manufactured, fabricated, designed, modified, labeled,

10   assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced,

11   installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured

12   for others and advertised a certain product, namely asbestos, and other products containing

13   asbestos.  The following Defendants, and each of them, are liable for the acts of each and

14   every "Alternate Entity," and each of them, in that there has been a virtual destruction of

15   Plaintiff's remedy against each such "Alternate Entity;" Defendants, and each of them, have

16   acquired the assets, product line, or a portion thereof, of each such "Alternate Entity;" such

17   "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiff's remedy

18   against each such "Alternate Entity;" each such Defendant has the ability to assume the risk-

19   spreading role of each such "Alternate Entity;" and that each such Defendant enjoys the

20   goodwill originally attached to each such "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| A. W. CHESTERTON COMPANY | |
| ALFA LAVAL, INC | |
| AMERICAN STANDARD, INC. | individually and as successor-in-interest to The TRANE COMPANY |
| ARMSTRONG INTERNATIONAL, INC. | |
| ASTENJOHNSON, INC. | (f/k/a Asten, Inc.) |
| BUFFALO PUMPS, INC. | |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION, f/k/a Viacom, Inc. | (successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric Corporation) |
| CLEAVER-BROOKS, INC. | individually and f/k/a Aqua-Chem, Inc. |
| CRANE CO. | individually and as successor in interest to Chapman Valves |
| CROWN CORK & SEAL COMPANY, INC. | (individually and as successor-in-interest to Mundet Cork Company) |
| DOUGLASS INSULATION COMPANY, INC. | |
| FLOWSERVE CORPORATION | f/k/a The Duriron Company |
| FMC CORPORATION | individually, on behalf of and as successor-in-interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, and Link Belt Company |
| FOSTER WHEELER ENERGY CORPORATION | |
| GOULDS PUMPS INCORPORATED | |
| HENRY VOGT MACHINE COMPANY | |
| INGERSOLL-RAND COMPANY | |
| JOHN CRANE, INC. | |
| J.T. THORPE & SON, INC. | |
| MECHANICAL DRIVES & BELTING | (f/k/a L.A. Rubber Company) |
| METALCLAD INSULATION CORPORATION | |
| OWENS-ILLINOIS, INC. | |
| QUINTEC INDUSTRIES, INC. | individually and successor-by-merger to Western Fibrous Glass Products Company (f/k/a Western Fiberglas Company) |
| THOMAS DEE ENGINEERING CO. | |
| TRIPLE A MACHINE SHOP, INC. | (a/k/a Triple A Shipyard) |
| WARREN PUMPS, L.L.C. | f/k/a Warren Pumps, Inc |
| YARWAY CORPORATION | |

| **DEFENDANT** | **ALTERNATE ENTITY** |
| --- | --- |
| DOES 1-100 | |

15. Defendants had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein, Defendants, and each of them, negligently and carelessly researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold a certain substance, the generic name of which is asbestos, and other products containing asbestos. Plaintiff alleges that asbestos was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Decedent MICHAEL SCANLON.

16. Decedent MICHAEL SCANLON was a worker who, for a substantial length of time, has used, handled, and been otherwise exposed to the asbestos and asbestos products referred to in Paragraph 7 above, in a manner that was reasonably foreseeable, while serving his county aboard the U.S.S. Piedmont.

17. As a direct and proximate result of the above-referenced conduct of the Defendants, Decedent's exposure to said asbestos caused severe and permanent injury to Decedent's lungs and body, including, but not limited to the disease mesothelioma.

18. On or about February 13, 2010, Decedent MICHAEL SCANLON died as a result of the mesothelioma.

19. Plaintiff is informed and believes, and thereupon alleges, that mesothelioma is a vicious, painful and invariably fatal malignancy of the lining of the lung, stomach, or heart and that said disease results from exposure to asbestos and asbestos products. There is no known cure for any form of malignant mesothelioma.

20. As a direct and proximate result of the aforesaid conduct of the Defendants, and

1   each of them, Decedent suffered severe and permanent injuries leading to his eventual death

2   from mesothelioma.

3       21.    As a direct and proximate result of the aforesaid conduct of the Defendants,

4   Decedent was compelled to and did employ the services of hospitals, surgeons, physicians,

5   nurses, and the like, to care for and treat him, and did incur medical, hospital and professional

6   incidental expenses, including funeral expenses.  When said amounts are ascertained and

7   calculated, Plaintiff will allege said amounts.

8       22.    At all times herein mentioned, Defendants, and each of them were aware that the

9   original gaskets and packing supplied, manufactured, or procured with their equipment would

10   need to be removed and replaced with new gaskets and packing during ordinary operation and

11   maintenance of their equipment. Heat and pressure generated by operation would affect the

12   original and replacement gaskets and packing – e.g., making them brittle, friable and not

13   reusable, making replacement necessary and dangerous. It was foreseeable that the process

14   of removing old gaskets and packing, and replacing them with the new materials during

15   ordinary maintenance operations would cause the disturbance of asbestos and/or asbestos

16   containing materials, releasing asbestos into the air. It was also foreseeable that Defendant's

17   equipment needed to be insulated with asbestos containing thermal insulation materials and

18   that the negligent design of Defendant's equipment through its ordinary operation caused the

19   degradation of asbestos containing thermal insulation and the foreseeable removal of these

20   insulation materials and application of new insulation materials, which would cause the

21   disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air.

22       23.    The above-referenced conduct of said Defendant was and is willful, malicious,

23   outrageous, oppressive, despicable, and/or in conscious disregard and indifference to the

24   safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.

25   Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was

26   intended by Defendants to cause injury to Decedent and Plaintiff or conduct which was

27   carried on by Defendants with a conscious disregard of the rights or safety of others.

28   Defendant subjected Plaintiff's Decedent to cruel and unjust hardship in conscious disregard

1   of his rights and thereby depriving Plaintiff's Decedent of property or legal rights or otherwise

2   causing injury.   Plaintiff therefore, for the sake of example and by way of punishing

3   Defendants, seeks punitive damages, according to proof based upon the following facts:

4         (a)     Defendants, their "Alternate Entities," and each of them, did not label any of the

5   aforementioned asbestos-containing materials and products regarding the hazards of such

6   materials and products to the health and safety of Decedent and others in Decedent's position

7   working in close proximity with such materials until 1964 when certain of such materials

8   were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them,

9   herein when the knowledge of such hazards was existing and known to Defendants, their

10   "Alternate Entities," and each of them, since on or before 1930.   By not labeling such

11   materials as to their said hazards, Defendants, their "Alternate Entities," and each of them,

12   caused to be suggested as a fact to Decedent that it was safe for Decedent to work in close

13   proximity to such materials when in fact it was not true and Defendants, their "Alternate

14   Entities," and each of them, did not believe it to be true.

15         (b)     Defendants, their "Alternate Entities," and each of them, suppressed information

16   relating the danger of use of the aforementioned materials by requesting the suppression of

17   information to the Decedent and the general public concerning the dangerous nature of the

18   aforementioned materials to workers, by not allowing such information to be disseminated

19   in a manner which would have given general notice to the public and knowledge of the

20   hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were

21   bound to disclose such information;

22         (c)     Defendants, their "Alternate Entities," and each of them, sold the

23   aforementioned products and materials to Decedent's employer and others without advising

24   Decedent and others of the dangers of use of such materials to persons working in close

25   proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of

26   such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct,

27   Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to

28   Decedent that which was not true and that which Defendants, their "Alternate Entities," and

1   each of them, had not reasonable ground for believing to be true, to wit, that it was safe for

2   Decedent to work in close proximity to such materials;

3       (d)    Defendants, their "Alternate Entities," and each of them, suppressed from

4   Decedent medical and scientific data and knowledge of the contents of the Lanza report.

5   Although bound to disclose it, Defendants, their "Alternate Entities," and each of them

6   influenced A.J. Lanza to change his report, the altered version of which was published in

7   Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Decedent and others

8   to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of them,

9   caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger,

10  thereby lessening the probability of notice of danger to users thereof;

11      (e)    Defendants, their "Alternate Entities," and each of them, belonged to,

12  participated in, and financially supported the Asbestos Textile Institute and other industry

13  organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of

14  them, actively promoted the suppression of information of danger to users of the

15  aforementioned products and materials, thereby misleading Decedent by the suggestions and

16  deceptions set forth above in this cause of action. The Dust Control Committee, which

17  changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was

18  specifically enlisted to study the subject of dust control. Discussions in this committee were

19  held many times regarding the dangers inherent in asbestos and the dangers which arise from

20  the lack of control of dust, and such information was suppressed from public dissemination

21  from 1946 to a date unknown to Decedent at this time;

22      (f)    Commencing in 1930 with the study of mine and mill workers at Asbestos and

23  Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants

24  in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each

25  of them, knew and possessed medical and scientific information of the connection between

26  inhalation of asbestos fibers and asbestosis, which information was disseminated through the

27  Asbestos Textile Institute and other industry organizations to all other Defendants, their

28  "Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their

1     "Alternate Entities," and each of them suggested to the public as a fact that which is not true

2     and disseminated other facts likely to mislead Decedent.  Such facts did mislead Decedent and

3     others by withholding the afore-described medical and scientific data and other knowledge

4     and by not giving Decedent the true facts concerning such knowledge of danger, which

5     Defendants, their "Alternate Entities," and each of them, were bound to disclose;

6         (g)     Defendants, their "Alternate Entities," and each of them, failed to warn Decedent

7     and others of the nature of said materials which were dangerous when breathed and which

8     could cause pathological effects without noticeable trauma, despite the fact that Defendants,

9     their "Alternate Entities," and each of them, possessed knowledge and were under a duty to

10     disclose that said materials were dangerous and a threat to the health of persons coming into

11     contact therewith;

12         (h)     Defendants, their "Alternate Entities," and each of them, failed to provide

13     Decedent with information concerning adequate protective masks and other equipment

14     devised to be used when applying and installing the products of the Defendants, and each of

15     them, despite knowing that such protective measures were necessary, and that they were under

16     a duty to disclose that such materials were dangerous and would result in injury to the

17     Decedent and others applying and installing such material;

18         (i)     Defendants, their "Alternate Entities," and each of them, when under a duty to

19     so disclose, concealed from Decedent the true nature of the industrial exposure of Decedent

20     and knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in

21     time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.

22     Defendants, their "Alternate Entities," and each of them, also concealed from Decedent and

23     others that harmful materials to which they were exposed would cause pathological effects

24     without noticeable trauma;

25         (j)     Defendants, their "Alternate Entities," and each of them, failed to provide

26     information of the true nature of the hazards of asbestos materials and that exposure to these

27     materials would cause pathological effects without noticeable trauma to the public, including

28     buyers, users, and physicians employed by Decedent and Decedent's employers so that said

1   physicians could examine, diagnose and treat Decedent and others who were exposed to

2   asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were

3   under a duty to so inform and said failure was misleading; and

4       (k)    Defendants, their "Alternate Entities," and each of them, failed to provide

5   adequate information to physicians and surgeons retained by Decedent's employers and their

6   predecessor companies, for purposes of making physical examinations of Decedent and other

7   employees as to the true nature of the risk of such materials and exposure thereto when they

8   in fact possessed such information and had a duty to disclose it.

9       24.    Plaintiff further alleges all of the foregoing portions of this cause of action

10   specifically against those Defendants who supplied asbestos fibers (as pled against those

11   Defendants who manufactured asbestos products) and any other asbestos fiber supplier or

12   distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent

13   was exposed, as well as any DOE Defendants who may be determined at a later date.

14                     **SECOND CAUSE OF ACTION**

15                         (Strict Liability)

16                    (Against all Defendants)

17       25.    Plaintiff hereby incorporate by reference, as though fully set forth herein, each

18   and every allegation contained in paragraphs 1 through 24.

19       26.    At all times mentioned herein, Defendants researched, manufactured, tested,

20   designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered

21   for sale, and sold asbestos, and other products containing asbestos, which Defendants knew

22   were to be used without inspection for defects and which substance contained design and

23   manufacturing defects, in that same was capable of causing and did, in fact, cause personal

24   injuries to the users, consumers, and bystanders while being used in a reasonably foreseeable

25   manner, thereby rendering same unsafe and dangerous for use by the consumers, users, and

26   bystanders.

27       27.    As a direct and proximate result of the above described conduct by Defendants,

28   Decedent MICHAEL SCANLON suffered severe and permanent injuries to his person, as

1  alleged above.

2      28.    At all times mentioned herein, the asbestos and products containing said
3  substance discussed above failed to perform as safely as an ordinary consumer would expect
4  when used in an intended or reasonably foreseeable manner, and the risk of danger inherent
5  in this substance and products outweighs the benefits of said substance and products.

6      29.    At all times mentioned herein, the foreseeable use of the asbestos and products
7  containing said substance discussed above involved a substantial danger not readily
8  recognizable to an ordinary user, consumer, or bystander, but which danger was known or
9  knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

10      30.    As a direct and proximate result of the above described conduct by Defendants
11  and each of them, Decedent suffered severe and permanent injuries to his person, including
12  his eventual death.

13      31.    The above-referenced conduct of said Defendant was and is willful, malicious,
14  outrageous, oppressive, despicable, and/or in conscious disregard and indifference to the
15  safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.
16  Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was
17  intended by the defendant to cause injury to the plaintiff or conduct which was carried on by
18  the defendant with a conscious disregard of the rights or safety of others. Defendant subjected
19  Plaintiff's Decedent to cruel and unjust hardship in conscious disregard of his rights and
20  engaged in intentional misrepresentation, deceit, or concealment of a material fact known to
21  the defendant with the intention on the part of the defendant of thereby depriving Plaintiff's
22  Decedent of property or legal rights or otherwise causing injury.  Plaintiff therefore, for the
23  sake of example and by way of punishing Defendant, seeks punitive damages, according to
24  proof.

25      32.    Plaintiff further alleges all of the foregoing portions of this cause of action
26  specifically against those Defendants who supplied asbestos fibers (as pled against those
27  Defendants who manufactured asbestos products), and any other asbestos fiber supplier or
28  distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent

was exposed, as well as any DOE Defendants who may be determined at a later date.

### THIRD CAUSE OF ACTION

(Loss of Consortium)

(Against All Defendants)

33.    Plaintiff incorporates by reference paragraphs 1 through 32 as if set forth fully herein.

34.    Plaintiff and Decedent were married at all times relevant to this action were, up to Decedent's death, husband and wife.

35.    Prior to Plaintiff MICHAEL SCANLON's injuries as alleged, Decedent MICHAEL SCANLON was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Decedent has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and Decedent will be unable to perform such work, service and duties in the future. As a proximate result thereof, Decedent's spouse KWANG SCANLON has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiff but which will be proved at the time of trial.

36.    Further, as a direct and proximate result of the acts of Defendants–and the severe injuries caused thereby to Decedent and Plaintiff as set forth in this complaint–Decedent's spouse, KWANG SCANLON, has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as general nervousness as a result thereof.

37.    Discovery of the cause of Plaintiff's loss of consortium, first occurred within one year of the date this complaint was filed.

WHEREFORE, Plaintiff prays judgment against Defendants in and amount to be proved

1   at trial in each individual case, as follows:

2     1.     General damages according to proof;

3     2.     Damages for medical and related expenses, according to proof;

4     3.     Damages for funeral, burial, incidental, and related expenses, according to

5            proof;

6     4.     Damages for the present value of financial contributions which Decedent would

7            have given Plaintiff had he lived;

8     5.     Damages for the pecuniary value of services which Plaintiff might have

9            reasonably expected to receive from Decedent;

10     6.     Damages for loss of earning capacity, according to proof;

11     7.     Damages for loss of earning, according to proof;

12     8.     Damages for Decedent's other economic losses, according to proof;

13     9.     Exemplary or punitive damages according to proof;

14     10.    Plaintiff's damages for loss of consortium according to proof;

15     11.    Prejudgment interest, according to proof;

16     12.    Costs of suit incurred herein; and

17     13.    Such other an further relief as this Court may deem just and proper, including

18           costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032 and

19           related provisions of law.

20

21   DATED: August 13, 2010        BARON & BUDD, P.C.

22

23                     By: _John Langdoc_

24                          JOHN LANGDOC, ESQ.
                            Attorneys for Plaintiff: KWANG SCANLON

25

26

27

28