ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:10-cv-04258-RS

Belk v. Lockheed Martin Corporation          Date Filed: 09/21/2010
Assigned to: Hon. Richard Seeborg            Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury     Nature of Suit: 368 P.I. : Asbestos
                                             Jurisdiction: Diversity

**Plaintiff**

**Finas Belk**                   represented by   **David R. Donadio**
                                                  Brayton Purcell LLP
                                                  222 Rush Landing Road
                                                  Novato, CA 94948-6169
                                                  (415) 898-1555
                                                  Fax: 415-898-1247
                                                  Email: DDonadio@braytonlaw.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Alan R. Brayton**
                                                  Brayton Purcell LLP
                                                  222 Rush Landing Road
                                                  P.O. Box 6169
                                                  Novato, CA 94948-6169
                                                  415-898-1555
                                                  Fax: 415-898-1247
                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Lockheed Martin Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/21/2010 | 1 | COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL; against Lockheed Martin Corporation ( Filing fee $ 350.00, receipt number 34611050024.). Filed byFinas Belk. (aaa, COURT STAFF) (Filed on 9/21/2010) (Additional attachment(s) added on 10/1/2010: # 1 Civil Cover Sheet) (ga, COURT STAFF). (Additional attachment(s) added on 10/1/2010: # 2 Exhibit) (ga, COURT STAFF). (Entered: 09/23/2010) |
| 09/21/2010 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 12/22/2010. Case Management Conference set for 12/29/2010 10:30 AM. |

| | | |
|---|---|---|
| | | Signed by Magistrate Judge James Larson on 9/21/10. (Attachments: # 1 JL Standing Order, # 2 Standing Order)(aaa, COURT STAFF) (Filed on 9/21/2010) (Entered: 09/23/2010) |
| 09/21/2010 | 3 | NOTICE OF TAG-ALONG ACTION by Finas Belk (aaa, COURT STAFF) (Filed on 9/21/2010) (ga, COURT STAFF). (Entered: 09/23/2010) |
| 09/21/2010 | 4 | Declination to Proceed Before a U.S. Magistrate Judge and Request for Assignment to a United States District Judge; by Finas Belk. (aaa, COURT STAFF) (Filed on 9/21/2010) (ga, COURT STAFF). (Entered: 09/23/2010) |
| 09/21/2010 | 5 | Certificate of Interested Entities or Persons by Finas Belk (aaa, COURT STAFF) (Filed on 9/21/2010) (ga, COURT STAFF). (Entered: 09/23/2010) |
| 09/21/2010 | 6 | Summons Issued as to Lockheed Martin Corporation. (aaa, COURT STAFF) (Filed on 9/21/2010) (Entered: 09/23/2010) |
| 09/21/2010 | | CASE DESIGNATED for Electronic Filing. (aaa, COURT STAFF) (Filed on 9/21/2010) (Entered: 09/23/2010) |
| 09/24/2010 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (fj, COURT STAFF) (Filed on 9/24/2010) (Entered: 09/24/2010) |
| 09/24/2010 | 8 | ORDER REASSIGNING CASE. Case reassigned to Hon. Richard Seeborg for all further proceedings. Magistrate Judge James Larson no longer assigned to the case. Signed by Executive Committee on 9/24/10. (ha, COURT STAFF) (Filed on 9/24/2010) (Entered: 09/24/2010) |
| 09/24/2010 | 9 | ORDER RE: 8 REASSIGNING CASE TO JUDGE SEEBORG. Initial Case Management Conference set for 1/13/2011 10:00 AM in Courtroom 3, 17th Floor, San Francisco.Signed by Judge Richard Seeborg on 9/24/10. (cl, COURT STAFF) (Filed on 9/24/2010) (Entered: 09/24/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/20/2010 06:01:25 | | |
| **PACER Login:** | jp0001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:10-cv-04258-RS |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FINAS BELK,

        Plaintiff,

vs.

LOCKHEED MARTIN CORPORATION,

        Defendant.

CV 10 — 4258

No.

COMPLAINT FOR ASBESTOS
PERSONAL INJURY/ PRODUCTS
LIABILITY; DEMAND FOR JURY TRIAL

I.

PARTIES

1.     Plaintiff in this action, FINAS BELK, has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

2.     Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3.     The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

4.     All of Plaintiff's claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendant and supplied to, installed and/or maintained by defendant at Plaintiff's worksites, over a period of years, caused from release of

///

K:\Injured\109534\FED\cmp fed (PI) revised.wpd        1
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1 | toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative,

2 | progressive, incurable lung diseases.

3 |      5.     Plaintiff claims damages for an asbestos-related disease arising from a series of

4 | occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing

5 | products, when handled in the manner in which they were intended, released harmful asbestos

6 | fibers which when inhaled by Plaintiff, caused serious lung disease.

7 |      6.     As used herein, Plaintiff shall mean the above-captioned asbestos-injured

8 | Plaintiff.

9 |      7.     Plaintiff is informed and believes, and thereon alleges that at all times herein

10 | mentioned, Defendant was and is corporations, partnerships, unincorporated associations, sole

11 | proprietorships and/or other business entities organized and existing under and by virtue of the

12 | laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

13 | said defendant, was and is authorized to do and are doing business in the State of California, and

14 | that said defendant has regularly conducted business in the County of San Francisco, State of

15 | California.

16 | **II.**

17 | **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

18 |      8.     <u>Jurisdiction</u>: Plaintiff FINAS BELK is a citizen of the State of Mississippi.

19 |     Defendant is each corporations incorporated under the laws of and having its principal

20 | places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| LOCKHEED MARTIN CORPORATION | Maryland |

24 |     This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

25 | between citizens of different states in which the matter in controversy exceeds, exclusive of costs

26 | and interest, seventy-five thousand dollars.

27 |      9.     <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of

28 | California and assignment to the San Francisco Division of said district is proper as a substantial

K:\Injured\109534\FED\cmp fed (PI) revised.wpd     2

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1  part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred

2  within the County of San Francisco, California, and Defendant is subject to personal jurisdiction

3  in this district at the time the action is commenced.

### III.

### CAUSES OF ACTION

FIRST CAUSE OF ACTION
(Negligence)

8  PLAINTIFF FINAS BELK COMPLAINS OF DEFENDANT LOCKHEED MARTIN

9  CORPORATION, ITS "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A

10  CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

11      10.     At all times herein mentioned, each of named defendant was the successor,

12  successor in business, successor in product line or a portion thereof, assign, predecessor,

13  predecessor in business, predecessor in product line or a portion thereof, parent, holding

14  company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

15  or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

16  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

17  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

18  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

19  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

20  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

21  asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

22  called ALTERNATE ENTITIES. Each of the herein named defendant is liable for the tortious

23  conduct of each successor, successor in business, successor in product line or a portion thereof,

24  assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

25  venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

26  entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

27  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

28  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

1  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

2  products containing asbestos. The following defendant, is liable for the acts of each and every

3  ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of

4  plaintiff's remedy against each such ALTERNATE ENTITY; defendant, has acquired the assets,

5  product line, or a portion thereof, of each such ALTERNATE ENTITY; defendant, caused the

6  destruction of plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant

7  has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that

8  each such defendant enjoys the goodwill originally attached to each such ALTERNATE

9  ENTITY:

10  DEFENDANT                                ALTERNATE ENTITY

11  LOCKHEED MARTIN CORPORATION       LOCKHEED CORPORATION
                                             LOCKHEED MISSILES & SPACE CO., INC.
12                                           LOCKHEED AIRCRAFT CORPORATION
                                             LOCKHEED PROPULSION COMPANY
13                                           GLENN L. MARTIN AIRCRAFT COMPANY
                                             LOCKHEED MARTIN TACTICAL SYSTEMS, INC.
14                                           LORAL CORPORATION

15       11.    At all times herein mentioned, defendant, its ALTERNATE ENTITIES, and each

16  of them, were and are engaged in the business of researching, manufacturing, fabricating,

17  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

18  supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

19  promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

20  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

21  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

22  asbestos and other products containing asbestos.

23       12.    At all times herein mentioned, defendant, its ALTERNATE ENTITIES and each

24  of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated,

25  designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

26  the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

27  sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed,

28  represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded,

1   manufactured for others, packaged and advertised, a certain product, namely asbestos, and other

2   products containing asbestos, in that said products caused personal injuries to users, consumers,

3   workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called

4   "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby

5   rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

6        13.    Defendant, its ALTERNATE ENTITIES, and each of them, had a duty to exercise

7   due care in the pursuance of the activities mentioned above and defendant, breached said duty of

8   due care.

9        14.    Defendant, its ALTERNATE ENTITIES, and each of them, knew, or should have

10   known, and intended that the aforementioned asbestos and products containing asbestos and

11   related products and equipment, would be transported by truck, rail, ship, and other common

12   carriers, that in the shipping process the products would break, crumble, or be otherwise

13   damaged; and/or that such products would be used for insulation, construction, plastering,

14   fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

15   limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

16   breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the

17   release of airborne asbestos fibers, and that through such foreseeable use and/or handling

18   "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to

19   said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

20   persons working in proximity to said products, directly or through reentrainment.

21        15.    Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-

22   containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

23   exposure to asbestos and asbestos-containing products is on current information as set forth at

24   various locations and circumstances in **Exhibit A**, attached to plaintiff's complaint and

25   incorporated by reference herein.

26        16.    As a direct and proximate result of the acts, omissions, and conduct of the

27   defendant, its ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to

28   asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or

1    harm to the plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated

2    by reference herein.

3         17.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

4    disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

5    without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

6    asbestos and asbestos-containing products over a period of time.

7         18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

8    containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

9    containing products presented risk of injury and/or disease.

10        19.    As a direct and proximate result of the aforesaid conduct of defendant, its

11   ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,

12   permanent injuries and/or future increased risk of injuries to their persons, body and health,

13   including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and

14   emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to

15   Plaintiff's general damage.

16        20.    As a direct and proximate result of the aforesaid conduct of the defendant, its

17   "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur

18   in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

19   and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this

20   time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost

21   thereof is ascertained.

22        21.    As a further direct and proximate result of the said conduct of the defendant, its

23   "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and

24   extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to

25   conform to proof at the time of trial.

26        22.    Defendant, its ALTERNATE ENTITIES, and each of them, and their officers,

27   directors and managing agents participated in, authorized, expressly and impliedly ratified, and

28   had full knowledge of, or should have known of, each of the acts set forth herein.

1     23.     Defendant, its "alternate entities," and each of them, are liable for the fraudulent,

2   oppressive, and malicious acts of its ALTERNATE ENTITIES, and each of them, and each

3   defendant's officers, directors and managing agents participated in, authorized, expressly and

4   impliedly ratified, and had full knowledge of, or should have known of, the acts of each of its

5   ALTERNATE ENTITIES as set forth herein.

6     24.     The herein-described conduct of said defendant, its ALTERNATE ENTITIES,

7   and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious

8   disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of

9   example and by way of punishing said defendant, seeks punitive damages according to proof.

10        WHEREFORE, Plaintiff prays judgment against defendant, its "alternate entities," and

11   each of them, as hereinafter set forth.

12                         SECOND CAUSE OF ACTION
                               (Products Liability)
13

14     AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

15   ACTION FOR PRODUCTS LIABILITY, PLAINTIFF FINAS BELK COMPLAINS OF

16   DEFENDANT LOCKHEED MARTIN CORPORATION, ITS "ALTERNATE ENTITIES,"

17   AND EACH OF THEM, AS FOLLOWS:

18     25.     Plaintiff incorporates herein by reference, as though fully set forth herein, the

19   allegations contained in each paragraph of the First Cause of Action herein.

20     26.     Defendant, its ALTERNATE ENTITIES, and each of them, knew and intended

21   that the above-referenced asbestos and asbestos-containing products would be used by the

22   purchaser or user without inspection for defects therein or in any of its component parts and

23   without knowledge of the hazards involved in such use.

24     27.     Said asbestos and asbestos-containing products were defective and unsafe for their

25   intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The

26   defect existed in the said products at the time they left the possession of defendant, its "alternate

27   entities," and each of them. Said products did, in fact, cause personal injuries, including

28   asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while

1  being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and
2  dangerous for use.

3       28.    "Exposed persons" did not know of the substantial danger of using said products.
4  Said dangers were not readily recognizable by "exposed persons". Said defendant, its
5  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
6  which Plaintiff and others similarly situated were exposed.

7       29.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
8  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
9  sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,
10  marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
11  and asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them, did
12  so with conscious disregard for the safety of "exposed persons" who came in contact with said
13  asbestos and asbestos-containing products, in that said defendant, its ALTERNATE ENTITIES,
14  and each of them, had prior knowledge that there was a substantial risk of injury or death
15  resulting from exposure to asbestos or asbestos-containing products, including, but not limited to,
16  asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific
17  studies performed by, at the request of, or with the assistance of, said defendant, its
18  ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
19  defendant, its ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

20       30.    On or before 1930, and thereafter, said defendant, its ALTERNATE ENTITIES
21  and each of them, were aware that members of the general public and other "exposed persons",
22  who would come in contact with their asbestos and asbestos-containing products, had no
23  knowledge or information indicating that asbestos or asbestos-containing products could cause
24  injury, and said defendant, its ALTERNATE ENTITIES, and each of them, knew that members
25  of the general public and other "exposed persons", who came in contact with asbestos and
26  asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos
27  and asbestos-containing products was safe, when in fact said exposure was extremely hazardous
28  to health and human life.

1     31.    With said knowledge, said defendant, its ALTERNATE ENTITIES, and each of

2 them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease,

3 buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

4 warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-

5 containing products without attempting to protect "exposed persons" from or warn "exposed

6 persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

7 containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed

8 persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

9 containing products, defendant, its ALTERNATE ENTITIES, and each of them, intentionally

10 failed to reveal their knowledge of said risk, and consciously and actively concealed and

11 suppressed said knowledge from "exposed persons" and members of the general public, thus

12 impliedly representing to "exposed persons" and members of the general public that asbestos and

13 asbestos-containing products were safe for all reasonably foreseeable uses. Defendant, its

14 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

15 representations with the knowledge of the falsity of said implied representations.

16     32.    The above-referenced conduct of said defendant, its ALTERNATE ENTITIES,

17 and each of them, was motivated by the financial interest of said defendant, its ALTERNATE

18 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

19 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

20 sale, inspection, installation, contracting for installation, repair, marketing, warranting,

21 rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-

22 containing products. In pursuance of said financial motivation, said defendant, its ALTERNATE

23 ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

24 were consciously willing and intended to permit asbestos and asbestos-containing products to

25 cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

26 including Plaintiff.

27     33.    Plaintiff alleges that the aforementioned defendant, its ALTERNATE ENTITIES,

28 and each of them impliedly warranted their asbestos and asbestos-containing products to be safe

1    for their intended use but that their asbestos and asbestos-containing products, created an

2    unreasonable risk of bodily harm to exposed persons.

3       34.     Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos

4    and various asbestos-containing products manufactured, fabricated, inadequately researched,

5    designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered

6    for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

7    marketed, warranted, rebranded, manufactured for others, packaged and advertised by the

8    aforementioned defendant, its ALTERNATE ENTITIES, and each of them and that Plaintiff

9    cannot identify precisely which asbestos or asbestos-containing products caused the injuries

10    complained of herein.

11       35.    Plaintiff relied upon defendant's, its "alternate entities'", and each of their

12    representations, lack of warnings, and implied warranties of fitness of asbestos and their

13    asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has

14    been injured permanently as alleged herein.

15       36.     As a direct and proximate result of the actions and conduct outlined herein,

16    Plaintiff has suffered the injuries and damages previously alleged.

17       WHEREFORE, Plaintiff prays judgment against defendant, its ALTERNATE ENTITIES,

18    and each of them, as hereinafter set forth.

19                                  **IV.**

20                           **PRAYER**

21       WHEREFORE, Plaintiff prays judgment against defendant, its ALTERNATE ENTITIES,

22    and each of them in an amount to be proved at trial, as follows:

23         (a)     For Plaintiff's general damages according to proof;

24         (b)     For Plaintiff's loss of income, wages and earning potential according to proof;

25         (c)     For Plaintiff's medical and related expenses according to proof;

26         (d)     For Plaintiff's cost of suit herein;

27         (e)     For exemplary or punitive damages according to proof;

28         (f)     For damages for fraud according to proof; and

1      (g)    For such other and further relief as the Court may deem just and proper, including

2      costs and prejudgment interest.

3

4  Dated: _____9/5/10_____        BRAYTON❖PURCELL LLP

5

6                        By: _____

7                            David R. Donadio
                             Attorneys for Plaintiff

8

9

10                         JURY DEMAND

11     Plaintiff hereby demands trial by jury of all issues of this cause.

12

13 Dated: _____9/5/10_____        BRAYTON❖PURCELL LLP

14

15                       By: _____

16                           David R. Donadio
                             Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

X:\Injured\109534\FED\cmp fed (PI) revised.wpd

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1                                    EXHIBIT A

2    Plaintiff:  FINAS BELK

3

4    Plaintiff's injuries:  Plaintiff was diagnosed with lung cancer on or about April 2004.

5

6    Retirement Status:  The injured party retired from his last place of employment at regular

7    retirement age.  He has therefore suffered no disability from his asbestos-related disease as

8    "disability" is defined in California Code of Civil Procedure § 340.2.

9

10   Defendant:  Plaintiff contends that the asbestos-containing products to which he was or may have

11   been exposed to were manufactured, supplied, distributed, installed and/or contracted for by

12   Defendant.  Plaintiff's exposure to asbestos occurred at the following times and places, and

13   involved exposure to dust created by the contractors and the products of the entities listed below.

14   The exposure includes, but is not limited, to the following presently known contractors and the

15   manufacturers and distributors of asbestos-containing products:

16

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| John Tyler Belk and Ary Mae Belk | Family farm Pheba, MS | Farmhand | Approximately 1947-1957 (summers and after school) |

20   Job Duties:  Plaintiff milked cows, picked cotton, corn and peas, and plowed the field.  Plaintiff
21   is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| GRIT Pheba, MS | Pheba, MS | Newspaper Deliveryman | Approximately 1952-1953 |

25   Job Duties:  Plaintiff delivered a weekly newspaper.  Plaintiff is currently unaware if he was
26   exposed to asbestos during this employment.

27   ///

28   ///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Sunflower Stores Inc Sunflower Food Store PO Box 990 Minneapolis, MN | Sunflower Food Store West Point, MS | Clerk | 7/1956-9/1956 |

Job Duties: Plaintiff stocked shelves and bagged groceries. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Frank C Cambell Owner West Point Gravel Co West Point, MS | West Point Gravel Pit West Point, MS | Laborer | 1957 |

Job Duties: Plaintiff separated clogs of dirt from gravel in an outdoor gravel pit. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force locations including but not limited to: U.S. Air Force Lackland Air Force Base. San Antonio, TX | Trainee | 3/1957-5/1957 |
| | U.S. Air Force Amarillo, TX | Aircraft Mechanic (Apprentice) | 5/1957-9/1957 |

Job Duties: Plaintiff joined the Air Force and spent a month in basic training at Lackland Air Force Base in San Antonio, Texas. Plaintiff then became an aircraft mechanic apprentice in Amarillo, Texas, and was certified as a bomber aircraft mechanic. Plaintiff learned how to maintain the entire plane, including the engine, flight controls, fuel and hydraulic systems and brakes. Plaintiff was being trained in classroom on how to work on BOEING B-47s (GENERAL ELECTRIC engines) and B-52s (PRATT & WHITNEY engines). Plaintiff recalls the following co-workers (aircraft mechanics) in Amarillo: Todd and Mr. Grogan. Plaintiff currently contends that he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Homestead Air Force Base, FL | Aircraft Mechanic | 10/1957-3/1961 |

Job Duties: Plaintiff was an aircraft mechanic stationed at Homestead Air Force Base in Florida. Plaintiff performed maintenance on 30-50 brand-new BOEING B-47 Stratojets (J47 GENERAL ELECTRIC engines), and believes he performed work on original equipment on these planes. Plaintiff refueled aircraft. Plaintiff performed electrical work and removed, stripped, and installed wires, starters, actuators, and generators. Plaintiff recalls cutting and stripping insulated wire. Plaintiff recalls working on plane engines almost daily and removed and installed starter

1  gaskets, generator gaskets, pump gaskets, and tail cone gaskets on these GE engines. Plaintiff
2  would have to scrape off many of these gaskets. Each plane had 6 engines. Plaintiff changed heat
   shields each time he worked on tail cone of engines if they were damaged. These heat shields
3  were made of fibrous material sandwiched between 2 pieces of sheet-metal. Plaintiff recalled
   that the heat shields inside tail cones were sometimes dusty when he shook them out. Plaintiff
4  recalls heat shields on the B-47s, on all 6 engines. The heat shields were located around the tail
   cones of these engines. The heat shields were blanket material, not ridged, approximately ½" +
5  in thickness, and all one piece wrapping around the tail cone. The heat shield was covered on
   both sides with a foil or flexible metal material and sealed around all the edges. The inner layer
6  of the heat shields was a yellowish white fibrous material, which was visible when the heat
   shields were damaged. The heat shields wrapped around the tail cones and were laced together
7  using safety wire. When performing engine cone repair or replacement, it was necessary to
   remove the heat shield. During periodic maintenance of the B-47 with 6 engines, at least two of
8  the heat shields were usually damaged and required replacement. Crew chief tasks readied the
   aircraft for take-off and included changing wheels and brakes. Plaintiff changed brakes on the B-
9  47s, including removing the original equipment, approximately 30-50 times. Plaintiff would pull
   the tires, take the brake pads off, and use compressed air to blow out the brake dust. Plaintiff
10 recalls performing 50-80 brake inspections. Plaintiff would have to remove the wheel, measure
   the brake pad, and clean out the brake assembly with compressed air. Each plane had approx. 8
11 sets of brakes. Plaintiff also changed out hydraulic piston gaskets, o-rings, hoses, landing gear,
   and high pressure hydraulic systems. Plaintiff's periodic maintenance duties included removing
12 wing panels and engines and inspecting same; tearing the engine apart and putting it together
   again, replacing parts as needed; and preventive inspections. Plaintiff would take as long as 2-3
13 weeks to perform heavy maintenance on one plane. Plaintiff worked next to other workers inside
   the dock: electricians, hydraulics specialists, and field maintenance "heavy" mechanics, who
14 performed engine overhauls. Plaintiff did not wear a mask. Plaintiff currently contends that he
   was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Minot AFB, ND | Aircraft Mechanic | 3/1961-12/1961 |

18 Job Duties: Plaintiff transferred for advanced training in performing maintenance of BOEING
19 B-52s (PRATT & WHITNEY engines). Plaintiff was honorably discharged before training
   began. Plaintiff is currently unaware if he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Holyoke Magazine Press Corp 1 Appleton Street Holyoke, MA | Holyoke Magazine Press Holyoke, MA | Machine operator | 9/1961-12/1961 |

24 Job Duties: Plaintiff operated a trimming machine and band saw cutting magazine paper for
25 about a year at a magazine printing shop in Holyoke, Massachusetts. Plaintiff is currently
   unaware if he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Park & Shop Inc 200 W Congress St Savannah GA | Park & Shop garage Savannah, GA | Parking attendant | 10/1962-3/1963 |

1  Job Duties:  Plaintiff parked cars at a garage.  Plaintiff is currently unaware if he was exposed to
2  asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Hunter Air Force Base, Savannah, GA | Aircraft Mechanic | 1/1962-1964 |

6  Job Duties:  Plaintiff reenlisted in the Air Force and was assigned to Hunter Air Force Base in
7  Savannah, Georgia, where he was an aircraft mechanic on BOEING B-47s (J47 GENERAL
   ELECTRIC engines), working mostly as a crew chief.  Plaintiff's work was almost identical to
8  his work at Homestead Air Force Base as described above.  Plaintiff performed inspection,
   removal and replacement of brakes, heat shields, tail cones, tail cone gaskets, starters, starter
9  gaskets between starter and engine, actuators, o-rings, generators, generator
   gaskets, pneumatics, hydraulic systems, pistons, hoses, stripping and cutting electrical wire with
10 insulation.  Plaintiff recalls the following co-workers and aircraft mechanic crew chiefs: Mr.
   Grogan, Pennsylvania; and Jeff Moore, Washington, D.C.  Plaintiff currently contends that he
11 was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Lockbourne Air Force Base, Columbus, OH | Aircraft Mechanic | 1964-1966 |

15 Job Duties:  Plaintiff was a crew chief performing mechanical work on approximately 30 brand-
16 new BOEING KC-135 Stratotankers (PRATT & WHITNEY engines), and believes he performed
   work on original equipment on these planes as 12 of the 30 new planes were on-site when he
17 arrived at Lockbourne and the other 18 came over this two years directly from Boeing factories in
   Kansas or Washington states.  Plaintiff's work was almost identical to his work at Homestead
18 Air Force Base as described above.  Plaintiff performed inspection, removal and replacement of
   brakes, heat shields, tail cones, tail cone gaskets, starters, starter gaskets between starter and
19 engine, engine gaskets, actuators, o-rings, generators, generator gaskets, pneumatics, hydraulic
   systems, pistons, hoses, stripping and cutting electrical wire with insulation.  Plaintiff recalls heat
20 shields on the KC-135s, on all 4 engines.  The heat shields were located around the tail cones of
   these engines.  The heat shields were blanket material, not ridged, approximately ½" + in
21 thickness, and all one piece wrapping around the tail cone.  The heat shield was covered on both
   sides with a foil or flexible metal material and sealed around all the edges.  The inner layer of the
22 heat shields was a yellowish white fibrous material, which was visible when the heat shields
   were damaged.  The heat shields wrapped around the tail cones and were laced together using
23 safety wire.  When performing engine cone repair or replacement, it was necessary to remove the
   heat shield.  During periodic maintenance of the KC-135s with 4 engines, the frequency of
24 finding damaged heat shields during engine periodic maintenance was not as high as with the B-
   47s (when at least two of the heat shields were usually damaged and required replacement), but
25 was a common occurrence.  Crew Plaintiff changed out gaskets when working on the PRATT &
   WHITNEY engines.  Plaintiff worked on the auxiliary power units and removed and replaced the
26 units' blanket insulation.  Plaintiff performed approximately 50 brake inspections.  Plaintiff
   would have to remove the wheel, measure the brake pad, and clean out the brake assembly with
27 compressed air.  Plaintiff also performed approximately 25-30 brake jobs, including removing
   original equipment , and installed replacement BENDIX or BF GOODRICH brakes.  Plaintiff
28 was assigned to duties in the periodic maintenance hangar.  Plaintiff recalls co-worker Hubert

1 | Mills (aircraft mechanic), Deceased. Plaintiff currently contends that he was exposed to asbestos
2 | during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force (Kadena AFB) Okinawa, Japan | Aircraft Mechanic | 1966-1969 |

Job Duties: Plaintiff performed heavy maintenance on approximately 30 to 50 BOEING B-52 Stratofortresses (PRATT & WHITNEY engines) and approximately 30 KC-135 Stratotankers while at Kadena Air Force Base in Okinawa, Japan. Plaintiff's work was almost identical to his work at Homestead Air Force Base as described above but at a more frequent rate. Plaintiff performed inspection, removal and replacement of brakes, heat shields, tail cones, tail cone gaskets, starters, starter gaskets between starter and engine, engine gaskets, actuators, o-rings, generators, generator gaskets, pneumatics, hydraulic systems, pistons, hoses, stripping and cutting electrical wire with insulation. Plaintiff changed out gaskets when working on the PRATT & WHITNEY engines. Plaintiff performed approximately 80 brake inspections. Plaintiff would have to remove the wheel, measure the brake pad, and clean out the brake assembly with compressed air. Plaintiff also performed approximately 30 brake jobs during which he used compressed air. Plaintiff repaired anything that needed to be fixed and did everything from changing brakes to working on engines. Plaintiff changed tail-cone heat pads once or twice a month in the hangar or outside on the flight line. Plaintiff did not wear a mask. Plaintiff performed maintenance on the flight line or pulled the plane into the dock to fix it there. Plaintiff currently contends that he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Castle AFB, Atwater, CA | Aircraft Mechanic | 1969-1970 |

Job Duties: Plaintiff was crew chief for about a year at Castle Air Force Base in Atwater, California, performing maintenance on the KC-135 Stratotankers (PRATT & WHITNEY engines). Plaintiff's work was almost identical to his work at Homestead Air Force Base as described above. Plaintiff performed inspection, removal and replacement of brakes, heat shields, tail cones, tail cone gaskets, starters, starter gaskets between starter and engine, engine gaskets, actuators, o-rings, generators, generator gaskets, pneumatics, hydraulic systems, pistons, hoses, stripping and cutting electrical wire with insulation. Plaintiff changed out gaskets when working on the PRATT & WHITNEY engines. Plaintiff worked on the auxiliary power units and removed and replaced the units' blanket insulation. Plaintiff performed brake inspections. Plaintiff would have to remove the wheel, measure the brake pad, and clean out the brake assembly with compressed air. Plaintiff also performed brake jobs during which he used compressed air. Plaintiff also performed maintenance duties in the periodic maintenance hangar. Plaintiff recalls co-worker William B. Coleman, Columbus, Ohio. Plaintiff currently contends that he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force-Ramey AFB Puerto Rico | Aircraft Mechanic | 1971 |

1   Job Duties:  Plaintiff performed brake and engine work on BOEING KC-135 Stratotankers
    (PRATT & WHITNEY engines).  During the first 3-6 months of duty plaintiff performed hands
2   on maintenance work to aircraft, and the remaining time he worked as a technical order librarian.
    Plaintiff's work was almost identical to his work at Homestead Air Force Base as described
3   above.  Plaintiff performed inspection, removal and replacement of brakes, heat shields, tail
    cones, tail cone gaskets, starters, starter gaskets between starter and engine, engine gaskets,
4   actuators, o-rings, generators, generator gaskets, pneumatics, hydraulic systems, pistons, hoses,
    stripping and cutting electrical wire with insulation.  Plaintiff changed out gaskets when working
5   on the PRATT & WHITNEY engines.  Plaintiff worked on the auxiliary power units and
    removed and replaced the units' blanket insulation.  Plaintiff performed brake inspections.
6   Plaintiff would have to remove the wheel, measure the brake pad, and clean out the brake
    assembly with compressed air.  Plaintiff also performed brake jobs during which he would used
7   compressed air.  Plaintiff recalls co-workers William B. Coleman, Columbus, Ohio, and Robert
    Harrison, Tampa, Florida.  Plaintiff currently contends that he was exposed to asbestos during
8   this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force McConnell AFB, Wichita, KS | Librarian | 1971-1976 |

12

13  Job Duties:  Plaintiff performed hands on work and work in the Technical Order Library.  The
    majority of his work was in library but would be called on to help aircraft mechanics performing
14  work on approximately 30 BOEING KC-135 Stratotankers (PRATT & WHITNEY engines).
    Plaintiff's hands on work was almost identical to his work at Homestead Air Force Base as
15  described above but at a diminished rate.  Plaintiff performed inspection, removal and
    replacement of brakes, heat shields, tail cones, tail cone gaskets, starters, starter gaskets between
16  starter and engine, engine gaskets, actuators, o-rings, generators, generator gaskets, pneumatics,
    hydraulic systems, pistons, hoses, stripping and cutting electrical wire with insulation.  Plaintiff
17  changed out gaskets when working on the PRATT & WHITNEY engines.  Plaintiff worked on
    the auxiliary power units and removed and replaced the units' blanket insulation.  Plaintiff
18  performed brake inspections.  Plaintiff would have to remove the wheel, measure the brake pad,
    and clean out the brake assembly with compressed air.  Plaintiff also performed brake jobs during
19  which he would used compressed air.  Eighty percent of plaintiff's job duties were updating
    technical manuals as a technical order librarian.  Plaintiff recalls co-workers Jay Starks, Mobile,
20  Alabama;  Robert Harrison, Tampa, Florida; and Allen Williams, Houston, Texas.  Plaintiff
    currently contends that he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Columbus AFB, Columbus, MS | Librarian | Approximately 1976 |

24

25  Job Duties:  Plaintiff worked in the Technical Order library.  Plaintiff helped refuel B52s and
    KC-135s but did not perform hands on maintenance work.  Plaintiff is currently unaware if he
26  was exposed to asbestos during this service.

27  ///

28  ///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | Blytheville AFB Blytheville, AR | Aircraft Mechanic | 1976 (approximately 3 months) |

Job Duties: Plaintiff supervised maintenance on approximately 20 BOEING KC-135 Stratotankers and also performed some hands-on brake inspection work and removal and replacement of starters, including changing out engine gaskets. Plaintiff currently contends that he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Ellsworth AFB, Rapid City, SD | Librarian | 1976-1978 |

Job Duties: Plaintiff managed the technical order library on base. Plaintiff did not perform hands on aircraft maintenance work at this location. Plaintiff is currently unaware if he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Keesler AFB, Biloxi, MS | Instructor | 1978-1981 |
| | | Aircraft Mechanic | 1981-2/1984 |

Job Duties: Plaintiff performed special duty providing military training for air-traffic controllers for three years at Keesler Air Force Base. Following this assignment, plaintiff performed some aircraft mechanical duties in the dock on a LOCKHEED Hercules C-130s (4 ALLISON (ROLLS-ROYCE, PLC) turboprop engines). Plaintiff recalls helping coworker Owens Curry perform the inspection, removal and replacement of engine starter gaskets on the ALLISON (ROLLS-ROYCE, PLC) engines. Plaintiff recalls the following co-worker at Keesler Air Force Base: Owens Curry (aircraft mechanic), Biloxi, Mississippi. Plaintiff recalls the following supervisors at Keesler Air Force Base: George Bean, aircraft maintenance superintendent, Tennessee, and Mr. Vollunuth, chief student training advisor, Biloxi, Mississippi.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Aquasis Services Company Inc 2849 Hidden Springs Cir Pensacola FL & Data Monitor Systems Inc 1455 S Douglas Blvd Ste A Midwest City, OK | U.S. Air Force Keesler AFB, Biloxi, MS | Librarian (Technical Order) | 1984-1990 |

Job Duties: Following plaintiff's retirement from the Air Force in February 1984, plaintiff worked as a technical order librarian as a civilian contractor at Keesler Air Force Base in Biloxi,

1   Mississippi.  Plaintiff did not perform hands on aircraft maintenance work at this location.
    Plaintiff is currently unaware if he was exposed to asbestos during this employment.
2

3   | Employer | Location of Exposure | Job Title | Exposure Dates |
    |---|---|---|---|
4   | Improved Benevolent & Protective Order of Elks of the World 576 Veron Gilbert Elk Lodge c/o Jackie Mitchell PO Box 1115 Biloxi MS | Elks Lodge Biloxi, MS | Manager | 1991-1993 |
5
6
7

8   Job Duties:  Plaintiff performed administrative work for this fraternal organization.  Plaintiff is
    currently unaware if he was exposed to asbestos during this employment.
9

10  | Employer | Location of Exposure | Job Title | Exposure Dates |
    |---|---|---|---|
11  | US Dept of Defense | U.S. Air Force Keesler AFB, Biloxi, MS | Housekeeper (Supervisor) | 1994-1/2002 |
12

13  Job Duties:  Plaintiff was a housekeeping supervisor as a civilian contractor at Keesler Air Force
    Base.  Plaintiff recalls demolition, remodel, and renovation  performed during the time he was on
14  this job.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

15  NON-OCCUPATIONAL EXPOSURE

16  Friction

17  1956 FORD Mercury  Plaintiff purchased this vehicle used in approximately 1963.  Plaintiff
    changed the brakes once on all 4 wheels on his used 1956 FORD Mercury in approximately
18  1963.  Plaintiff wiped the brake shoes down with a rag and slammed the drums on the ground,
    which created dust.  Plaintiff did this work in the driveway and did not wear a mask.  Plaintiff
19  used BENDIX replacement brakes which he purchased at the Hunter Air Force Base service
    station.
20
    1964 FORD Fairlane 500  Plaintiff purchased this vehicle used in approximately 1965.  Plaintiff
21  changed brakes once on his used 1964 FORD in approximately 1966/67.  Plaintiff wiped the
    brake shoes down with a rag and slammed the drums on the ground, which created dust.  Plaintiff
22  performed the brake job in a parking lot.  Plaintiff purchased and installed BENDIX replacement
    brakes from the Kadena Air Force Base PX.
23
    1973 PONTIAC  Plaintiff purchased this vehicle new in 1973.  Plaintiff performed 2 separate
24  brake jobs on this vehicle.  Plaintiff performed the first brake job in approximately 1977 during
    which he removed the two rear wheels' brakes.  Plaintiff wiped the brake shoes down with a rag
25  and slammed the drums on the ground, which created dust.  Plaintiff removed the original brake
    equipment on his 1973 PONTIAC  Plaintiff installed BENDIX replacement brakes during this
26  first brake job.  Plaintiff later performed a second brake job on this automobile in approximately
    1978/79 during which he removed and replaced the two front wheels' brakes.  Plaintiff wiped the
27  brake shoes down with a rag and slammed the drums on the ground, which created dust.  Plaintiff
    removed the original brake equipment on his 1973 PONTIAC.  Plaintiff did this work in the
28  driveway and did not wear a mask.  Plaintiff purchased and used BENDIX replacement brakes

1   for both brake jobs at the McConnell and/or Keesler Air Force Base service stations.  Plaintiff
2   contends that he was exposed to asbestos when he performed work on these vehicles.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

K:\Injured\109534\FED\cmp fed (PI) revised.wpd

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL