USMJ_Webb

# U.S. District Court
## EASTERN DISTRICT OF NORTH CAROLINA (Eastern Division)
### CIVIL DOCKET FOR CASE #: 4:10-cv-00136-F

Modlin v. Domtar Paper Company, LLC et al
Assigned to: Senior Judge James C. Fox
Cause: 42:1396 - Tort Negligence

Date Filed: 10/01/2010
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**James Davis Modlin**
*Individually and as Executor of the*
*Estate of Faye Taylor Modlin*

represented by **Michael B. Pross**
Wallace and Graham, P.A.
525 N. Main St.
Salisbury, NC 28144
(704)633-5244
Fax: 633-9434
Email: mpross@wallacegraham.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Domtar Paper Company, LLC**
*a Delaware corporation*

**Defendant**

**Weyerhaeuser Company**
*a Washington corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/01/2010 | 1 | COMPLAINT against Domtar Paper Company, LLC, Weyerhaeuser Company ( Filing fee $ 350 receipt number 0417-1348350.), filed by James Davis Modlin. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons) (Pross, Michael) (Entered: 10/01/2010) |
| 10/01/2010 | 2 | FINANCIAL DISCLOSURE STATEMENT by James Davis Modlin. (Pross, Michael) (Entered: 10/01/2010) |
| 10/04/2010 | | NOTICE OF DEFICIENCY re: Summons attached to 1 Complaint. Counsel failed to add his name and address on the summons. Counsel is instructed to refile the summons and include his name and address on each summons. FURTHER, counsel failed to add the party text information when adding the parties to the case. Clerks Office added the party text for all the parties, but reminds counsel for future reference. (Heath, D.) (Entered: 10/04/2010) |

| 10/04/2010 | | NOTICE OF DEFICIENCY re: 1 Complaint. Summons does not reflect address of plaintiff's counsel. Please add plaintiff's counsel's address to the summons. Also, the case caption on the summons should reflect the case caption on the complaint. (Berryhill, E.) (Entered: 10/04/2010) |
|---|---|---|
| 10/05/2010 | 3 | NOTICE by James Davis Modlin re 1 Complaint; *proposed summons for defendant Domtar Paper Company* (Pross, Michael) Modified on 10/7/2010 to include the document attached (Edwards, S.). (Entered: 10/05/2010) |
| 10/05/2010 | 4 | NOTICE by James Davis Modlin re 1 Complaint *proposed summons for defendant Weyerhaeuser Company* (Pross, Michael) Modified on 10/7/2010 to include the document attached (Edwards, S.). (Entered: 10/05/2010) |
| 10/07/2010 | | NOTICE OF CORRECTION re: 3 Notice-(other), 4 Notice-(other). Counsel failed to describe what was attached to the notice. Case manager included the information for each summons attached to these docket entries. Counsel is reminded to include a description of document attached to Notice-(other). Additionally, the court prefers flattened pdf fillable forms, as stated in Section B (3) of the Administrative Policies and Procedures Manual. The attachments had not been flattened. Be sure to flatten future documents. No need to refile anything. (Edwards, S.) (Entered: 10/07/2010) |
| 10/07/2010 | 5 | Summons Issued as to Domtar Paper Company, LLC, and Weyerhaeuser Company. (Grady, B.). (Entered: 10/08/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/04/2010 10:11:22 | | |
| **PACER Login:** jp0001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** 4:10-cv-00136-F |
| **Billable Pages:** 1 | **Cost:** | 0.08 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**NORTHERN DIVISION**
**4:10-cv-136**

| | |
|---|---|
| JAMES DAVIS MODLIN, Individually )<br>And as Executor of the Estate of )<br>FAYE TAYLOR MODLIN, )<br> )<br>      Plaintiffs, )<br> )<br> )<br>v. )<br> )<br>WEYERHAEUSER COMPANY, )<br>a Washington corporation, )<br> )<br>DOMTAR PAPER COMPANY, LLC, )<br>a Delaware corporation, )<br> )<br>      Defendants. )<br>_____ ) | **COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiffs, complaining of the Defendants, allege and say:

## I.  Identification of Parties and Jurisdiction

1.  This action is brought pursuant to the Wrongful Death Act, N.C. Gen. Stat. 28A-18-1 *et seq.*, for the wrongful death of the decedent, Faye Taylor Modlin, on behalf of all persons entitled to recover damages.

2.  The plaintiff, James Davis Modlin ("Plaintiff"), a surviving spouse of Faye Taylor Modlin ("decedent"), and the Executor of the Estate of Faye Taylor Modlin, deceased, is an individual residing at 2121 Poplar Chapel Rd, Jamesville, NC 27846.  Plaintiff was appointed Executor of the Estate of Faye Taylor Modlin, deceased, by the General Court of Justice, Superior Court Division, Martin County, North Carolina on November 6, 2008, file number 08E226.  Plaintiff maintains this action on behalf of herself and the estate pursuant to her powers under N.C. Gen. Stat. 28A-13-3.

3. The defendant, WEYERHAEUSER, INC., is a corporation incorporated under the laws of the State of Washington, having its principal place of business located at 33663 Weyerhaeuser Way South, Federal Way, Washington 98063 and a registered agent for service of process located at National Registered Agents, Inc., 120 Penmarc Drive, Raleigh NC 27603. At all times relevant herein Defendant owned and operated a facility in Plymouth, North Carolina where Mr. Modlin worked and was exposed to asbestos fibers. The Defendant's manufacturing facility in Plymouth, North Carolina was located in both Martin County and Washington County.

4. The defendant, DOMTAR PAPER COMPANY, LLC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located at 100 Kingsley Park Drive, Fort Mill, South Carolina 29715-6476 and a registered agent for service of process located at National Registered Agents, Inc., 120 Penmarc Drive, Raleigh NC 27603. At all times relevant herein Defendant owned and operated a facility in Plymouth, North Carolina where Mr. Modlin worked and was exposed to asbestos fibers. The Defendant's manufacturing facility in Plymouth, North Carolina was located in both Martin County and Washington County.

5. This Court has personal jurisdiction over the defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or, at all material times are or have been engaged in business in the State of North Carolina.

6. Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because a substantial part of the events or omissions giving rise to this action occurred in Washington and Martin County, North Carolina.

7. This Court has jurisdiction of this matter pursuant to 28 U.S.C.A. §1332 because the Plaintiff's are citizens of the State of North Carolina and defendants are not citizens of the State

of North Carolina. Further, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. At all times pertinent hereto, the defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said defendant.

9. Plaintiff has satisfied all conditions precedent to the filing of this action.

10. That Faye Taylor Modlin was, at all times relevant herein, the spouse of an employee who was employed by Defendant Weyerhaeuser, Modlin. Ms. Modlin was exposed to asbestos fibers and other carcinogens, and dust from the clothing that her spouse wore home from his employment at Defendant Weyerhaeuser's facility in Plymouth, North Carolina. Ms. Modlin was injured by the wrongful and tortuous conduct of Defendant. On August 21, 2008 Ms. Modlin was diagnosed with lung cancer, which was caused or significantly contributed by her exposures to asbestos fibers. Ms. Modlin died as a result of this asbestos induced lung cancer on October 2, 2008.

11. Plaintiffs assert their claims jointly in one action since their claim for relief arise out of the same transaction, occurrence or series of transactions or occurrences and since there are questions of law and fact common to all parties arising in the action under Rule 20 of the North Carolina Rules of Civil Procedure.

12. At all times mentioned herein, Defendant Weyerhaeuser, acted through their duly authorized agents, servants, and employees who were at all times relevant herein acting within the scope and course of their employment.

13. Upon information and belief Defendant, Domtar, was either a successor in interest to Defendant Weyerhaeuser and assumed the liabilities for Defendant Weyerhaeuser.

## II. Background Information and Factual Allegations

14. Plaintiffs incorporate the allegations of paragraphs 1 through 13 herein.

15. The Weyerhaeuser facility at which the Plaintiff worked was located in Plymouth, North Carolina, and is approximately ¾ of a mile long. The entire facility is built on approximately 350 acres and encompasses at least 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction was asbestos-containing. There are steam-producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper. There were numerous other types of asbestos-containing products used in the facility including but not limited to gaskets, packing, dryer felts, brake shoes, blankets and gloves.

16. Because of the presence of asbestos in their facilities, Weyerhaeuser employed an Industrial Hygienist, Joseph Wendlick, hereinafter "Wendlick," from 1966 until 1985, to evaluate the hazardous nature of asbestos and other toxic substances which were present within its facilities.

17. Wendlick was a member of the American Industrial Hygiene Association, the American Academy of Industrial Hygiene, the National Forest Products Association, the American Paper Institute, and the National Council for Air and Stream Improvement for the Pulp and Paper Institute. He belonged to and regularly attended the meetings of the American Industrial Hygiene Association. Representatives of Defendant Weyerhaeuser also sat as Officers of the Wood Products Section of the National Safety Council beginning as early as 1957.

18. Upon information and belief, Wendlick recognized and made the company aware of the need to institute an asbestos program at all of the Weyerhaeuser facilities in the 1970s to protect the employees and others exposed as a result of its presence and use at its facilities.

19. In the early 1970s, Wendlick advised management of the need to bring asbestos under control, not only for the protection of employee health but also because OSHA promulgated rules required it. He wrote an asbestos program for the Weyerhaeuser facilities and even shared that program with each state agency in which Weyerhaeuser had operations.

20. In the early 1970s, Weyerhaeuser was made aware there was unequivocally a direct relationship between asbestos inhalations and the production of asbestosis and lung cancer in susceptible employees and that short duration exposures were capable of producing these diseases.

21. By July 10, 1974, Weyerhaeuser was aware that the OSHA requirements mandated a medical surveillance program be implemented to include an extensive medical history with particular attention to pre-existing cardiovascular, pulmonary or gastrointestinal conditions, pulmonary function testing and chest x-rays. Wendlick pointed out in a memo on October 17, 1974 that those various trades whose employees would be affected and for whom a medical surveillance program was needed included maintenance personnel, pipe fitters, masons, mechanics, and many others who have been or are being exposed to asbestos fibers arising from the handling of asbestos materials. Mr. Modlin was employed in these occupations during this time period.

22. Upon information and belief, because of the company's recognition that virtually everything that was heated within the facilities was insulated with asbestos-containing materials and Weyerhaeuser used asbestos throughout their plants and operations, it was recognized that

virtually everyone within the facilities was potentially being exposed to significant amounts of asbestos dusts.

23. In the early to mid 1970s, Wendlick conducted thousands of air samples of those within the facilities, including air samples of the hands, the winder men, the back tenders, the machine tenders, the maintenance people, electricians, pipe fitters, pipe covers, cleaning and housekeeping personnel, anyone working around paper machines, and those working at other trades. The company allowed the use of compressed air and the air was monitored during 'blow downs' because of the recognition that blow downs would cause asbestos to float in the air.

24. The results of the air sampling confirmed that Mr. Modlin and others throughout the facilities were being exposed to tremendous amounts of asbestos in the air and that these exposures often far exceeded the OSHA permissible limit for asbestos exposures.

25. As a result of his visit to the Plymouth facilities in the 1970s, Wendlick made the company aware of egregious and unsafe practices in place involving the improper use, handling and disposal of asbestos-containing materials and other hazard substances.

26. As a result of his air monitoring surveys, Weyerhaeuser recognized the need to provide respirators and other protective measures to employees being exposed to asbestos materials and to place them in a medical surveillance program due to their past and on-going exposures to asbestos.

27. On November 3, 1975, Wendlick informed Weyerhaeuser that asbestosis was occurring at much lower levels of occupation exposure than previously thought and that new facts suggested a 92-fold greater risk of developing and dying of lung cancer among smoking asbestos workers as compared to individuals who neither smoke nor work with asbestos. Wendlick also advised Weyerhaeuser that OSHA indicated that:

> Because of the variability of individual response to carcinogens
> and other factors, the concept of a *no effect* or *threshold level* may
> have little real significance on the basis of existing knowledge.
> While some level, below which exposure to a carcinogen does not
> cause cancer, may conceivably exist for any one individual, other
> individuals of the working population may have cancer induced by
> exposures so low as to be effectively zero.

28. Wendlick further advised Weyerhaeuser in his November 1975 memo of the unending spiral of increasingly more stringent standards on substances such as asbestos because of the increasing knowledge regarding the hazardous nature of exposures, and that the proposed standard at that time would lower the permissible exposure by a factor of 10 for the time-weighted average.

29. Wendlick additionally informed Weyerhaeuser of the September 29, 1975 communication from the Director of NIOSH to the Deputy Assistant Secretary of the Department of Labor for OSHA that "multiple and consistent epidemiological studies leave virtually no doubt that asbestos is carcinogenic to man."

30. Weyerhaeuser recognized that its employees should be included in an appropriate medical surveillance even when the exposures were significantly less than the acceptable levels promulgated in the OSHA standards. As proof of the extent of the problem, approximately twenty (20) employees in the Plymouth facility were given chest x-rays in 1978. Out of the 20 employees given chest x-rays, seven (7) employees had abnormalities present which could be explained by their asbestos exposure.

31. Defendant Weyerhaeuser recognized that the potential advantages of a comprehensive medical monitoring program would include the reduction of carrier insurance rates, medical spin-off including early detection of cancer and other pulmonary and non-pulmonary conditions,

improved employee attitudes as well as substantial cost savings resulting from less unsubstantiated workers compensation awards.

32. Defendant Weyerhaeuser was aware that the failure to inaugurate medical surveillance programs on employees exposed to asbestos and other carcinogens, would subject the company to citations for failure to comply with state and federal OSHA, employee emotional problems and alcoholism problems, and demands from unions, and potential civil suits for disregard of their employees' health.

33. Although the need for special training regarding the hazardous nature of asbestos materials and the need to avoid exposures has been recognized by Weyerhaeuser since the early 1970's, these Plaintiff-Employees and others were not provided with training of the hazardous nature or of any special procedures to use in the handling and disposal of asbestos materials.

34. Although the need for special protective clothing has been recognized by Weyerhaeuser since the early 1970's, the Modlin and other employees were not provided with any special protective clothing. A policy was first written for Defendant Weyerhaeuser's facility in Marshfield, Wisconsin in 1972 that the company shall furnish work coveralls which shall be tight fitting with wrist and ankle closures to minimize dust contact with body. Further, that these coveralls shall be laundered regularly in a washing machine and dryer in or near a shower room located at the facility to prevent employees from bringing contaminated clothing home.

35. Pamphlets were drafted in 1974 to be distributed to employees entitled "Working with Asbestos in Weyerhaeuser Company." These pamphlets stated that in order to prevent carrying asbestos dust home in your clothes, you will also be provided with special clothing which may be disposable or can be washed several times to allow use on several occasions. Further, the pamphlet specifically stated that "[T]he main purpose of the clothing is to protect

you and your family from exposure to dust off the job.  It will collect asbestos dust and prevent you from taking it home in your own clothes."  The pamphlet further advised employees to use whatever protective clothing or equipment that is provided.  Neither Modlin nor his spouse, were provided with this pamphlet.

36.  Although the need to warn the employees, customers, contractors and citizens regarding the hazards of asbestos caused by the products and materials present in Defendant's facilities was a stated objective of the Defendant, there was no information provided to the employees or their families in North Carolina regarding the potential hazards caused by employees bringing asbestos dust home on their clothes. An Asbestos Risk Control Strategy was devised in 1986 that recognized the risk of asbestos disease among community members and recommended that community members be provided with hazard information.  Further, the written asbestos strategy specifically stated that "Education is being provided to employee families and the public."

37. Defendant Weyerhaeuser had knowledge regarding the consequences of its continued use of asbestos containing products without adequate protective measures to protect its employees and their families.  Despite this knowledge Weyerhaeuser choose not to protect employees and their families from a known occupational carcinogen, asbestos.

38. That Defendant was aware of North Carolina Occupational Safety and Health Standard 29 CFR 19010.1001 (h) that provides that "if an employee is exposed to asbestos, tremolite, anthophyllite, actinolite, or a combination of these minerals above the TWA and/or excursion limits, the employer shall provide at no cost to the employee and ensure that the employee uses appropriate work clothing and equipment such as, but not limited to:

     (i)     Coveralls or similar full-body clothing;

    (ii)     Gloves, head coverings, and foot coverings; and

    (iii)    Face shields, vented goggles, or other appropriate protective equipment
          which complies with § 1910.133 of this Part."

Further, that "the employer shall ensure that employees remove work clothing contaminated with asbestos, tremolite, anthophyllite, actinolite only in change room provided in accordance with paragraph (i)(1) of this section."

    39. That Defendant Weyerhaeuser was aware of the on-going and hazardous asbestos and other exposures of Mr. Modlin throughout the dates of his employment but recklessly, intentionally, and willfully failed to warn their employees and others of their exposures and to protect them from known and recognized hazards, and committed other wrongful and egregious acts which form the basis of the claims alleged hereinafter.

    40. The asbestos manual co-authored by Jerry Foster specifically acknowledged therein that since the "1960's – studies showed that insulation workers who has (sic) worked with asbestos 20 years+ were dying from cancer and later, found that families were also exposed and were dying."

    41. The Defendant knew that general mill employees were continuing to work with and around asbestos-containing materials.

    42. The essential provisions of the written Asbestos Program of Weyerhaeuser included the identification of asbestos, repair or removal, employee training, proper records, and medical surveillance. Notwithstanding the prior knowledge of Weyerhaeuser that these special procedures were necessary, very few if any actions were taken to implement any of these procedures during the years that Sirrine performed asbestos related work at the site.

    43. During these years, Employees were working throughout the Plymouth facility and were being injuriously exposed to asbestos without their knowledge or consent and, accordingly,

their clothing and bodies were contaminated with asbestos which they carried home to their wives and families, who were exposed from being in their presence and when they washed their clothing.

44.  While an expansive asbestos abatement program was initially undertaken as part of the asbestos written program in 1987 and 1988, this program was significantly curtailed or abandoned for the objective of worker protection in approximately 1990 and continued only as necessary for capital improvements.

45.  Mr. Modlin's unprotected injurious exposures to asbestos which he brought home on his contaminated clothes continued during his employment and until Mr. Modlin ceased his employment for Weyerhaeuser.  Ms. Modlin has been diagnosed with serious asbestos related diseases as a direct result of the actions and omissions of this Defendant.

46.  That each Defendant recognized the injurious nature of asbestos and owed a duty to all foreseeable plaintiffs, including the Plaintiffs herein, to prevent their injurious exposure.

### III.    First Cause of Action

## NEGLIGENCE, WILLFUL, WANTON, RECKLESS AND GROSS NEGLIGENCE AS TO DEFENDANT WEYERHAEUSER

47.  Plaintiff incorporates by reference the foregoing paragraphs 1 to 46 as though they are fully set forth herein.

48.    That Ms. Modlin was exposed to asbestos dust and fibers from Defendant Weyerhaeuser's facility from her spouse's work clothes.  That Ms. Modlin had no knowledge regarding the hazards of the asbestos dust on her spouse's work clothes and would directly handle the contaminated clothing and inhale the asbestos dust and fibers.  As a result of said exposures, Ms. Modlin was diagnosed with asbestosis and asbestos related lung cancer.  Ms.

Modlin was unaware that she was at an increased risk of developing an asbestos related disease including cancer.

49. That Plaintiff, FAYE TAYLOR MODLIN, was the spouse of the Employee James David Modlin from March 1, 1953 until her death on October 5, 2008. Ms. Modlin was exposed to second hand asbestos dust and fibers from Weyerhaeuser Company through her husband's clothing, and as a result of said exposure, was diagnosed with asbestosis on February 23, 2002. Ms. Modlin was then diagnosed with lung cancer on August 21, 2008 and subsequently died as a result of said lung cancer on October 5, 2008. James Davis Modlin was employed by Weyerhaeuser Company from March 22, 1965 until March 30, 1993 at Defendant's facility in Plymouth, North Carolina. James Davis Modlin was exposed to asbestos dust and fibers at Weyerhaeuser Company, and as a result of said exposure, was diagnosed with asbestosis on January 20, 2001.

50. At all relevant times hereto, the Defendant Weyerhaeuser had specific knowledge that a major health hazard existed in their facilities which was being carried out of their facilities and that it was their moral and legal duty to ensure compliance with company policy and state and federal requirements to provide a safe working environment for those working at the facility and their families.

51. Defendant Weyerhaeuser realized at least as early as 1974 that all employees, including employees at the facility in Plymouth, North Carolina, should wear special protective clothing in order to prevent carrying asbestos dust home to their families due to the high levels of exposure to asbestos dusts and other potential carcinogens in their facilities. Further, Defendant Weyerhaeuser had a duty to warn its own employees and their families regarding this known hazard.

52.  However, no such special protective clothing was provided to employees in North Carolina to keep them from carrying asbestos dust home to their families despite the high levels of asbestos dust present in the facility and the recognized risk that carrying the dust home would expose the family members of employees to a known carcinogen.

53.  That the Defendant Weyerhaeuser breached its non-delegable duty by exposing and/or allowing the Ms. Modlin to become exposed to asbestos and/or asbestos-containing materials in their own homes and failing to warn their employees and families regarding this known hazard.

54.  Defendants, Domtar and/or Weyerhaeuser were willfully, wantonly, and grossly and recklessly negligent in direct and substantial disregard to the safety and health of the Plaintiffs and other employees in that Defendant:

> a.  Recognized the need for medical monitoring yet failed to include in the medical monitoring program those individuals whose work experiences had exposed and were continuing to expose them to known and hazardous asbestos and other materials;
>
> b.  Recognized that employees had little, if any, knowledge of the harmful effects of asbestos exposures yet failed to advise, warn, or educate them regarding their need to be included in a medical monitoring program;
>
> c.  Failed to warn employees and their families of the increased risk of the development of serious and progressive lung and other diseases resulting from asbestos exposures, including asbestos-related pleural disease, asbestosis, lung cancer, and other asbestos-related cancers;
>
> d.  Failed to advise supervisors and employees of the need for precautions when working in areas where asbestos was in use and damaged;
>
> e.  Failed to advise employees and supervisors of the need for respiratory protection and failed to provide sufficient respiratory protection to those who required it;
>
> f.  Failed to advise employees and supervisors of the need to be removed from ongoing exposures and/or the need for reassignment to asbestos-free positions;

g. Failed to implement comprehensive plans to protect employees and their families from injurious exposure and to prevent worsening of asbestos-related diseases;

h. Failed repeatedly to follow the advice of several safety and medical consultants to implement procedures to protect employees and their families; and

i. Failed to supervise and monitor those who were responsible for educating, training, counseling, and protecting employees and their families.

55. The conduct of Defendants Domtar and/or Weyerhaeuser, as set forth above, was committed with a conscious and intentional disregard for, and indifference to, the rights and safety of employees and Plaintiff, which the Defendants know or should have known was reasonably likely to result in injury, damage, or other harm to Ms. Modlin.

56. Defendants Domtar and/or Weyerhaeuser was willfully, wantonly, grossly and recklessly negligent in direct and substantial disregard to the safety and health of the Plaintiffs and other individuals who were exposed to asbestos through employees of Defendant Weyerhaeuser who brought home asbestos, a known carcinogen, on their clothing and, therefore, justifies the award of punitive damages.

57. That as a direct and proximate cause of the acts and/or omissions of Defendants Domtar and/or Weyerhaeuser herein by failing to provide protective clothing to employees while at work to prevent the transference of asbestos dust to their homes and failing to warn their employees regarding this known hazard, the Plaintiffs were exposed to asbestos dust which their spouses unknowingly brought home on their clothing from Defendant Weyerhaeuser's facility in Plymouth, North Carolina. Further, the Plaintiffs are at an increased risk of developing a large number of asbestos related cancers, including lung cancer, laryngeal cancer, throat cancer, colon cancer and other gastro-intestinal cancers.

### IV.    Second Cause of Action

## NEGLIGENCE, WILLFUL, WANTON, RECKLESS AND GROSS NEGLIGENCE IN HIRING, TRAINING AND/OR SUPERVISION OF EMPLOYEES AND SUPERVISORS AS TO DEFENDANT WEYERHAEUSER

58.    All of the above-referenced Plaintiffs incorporate by reference the foregoing paragraphs 1 through 57 as though they are fully set forth herein.

59.    That Defendant Weyerhaeuser herein hired, retained and otherwise employed individuals in order to perform the employers obligations and duties at the Weyerhaeuser Paper and Pulp Facility in Plymouth, North Carolina including employees responsible for supervising and implementing the Asbestos Risk Control Strategy and other policies designed to keep employees from bringing asbestos fibers home on their clothes and informing their employees and families regarding this hazard.

60.    That the Defendant Weyerhaeuser herein had a duty to hire employees and supervisors who were competent and who would otherwise perform their job functions and assignments in a reasonably safe manner and a duty to properly and adequately train its supervisors and employees in the proper and safe manner in which to perform their functions and assignments. Further, from the time that the Defendant recognized a risk of employees carrying asbestos dust home to their families, the Defendant had a duty to hire employees and supervisors who would implement a program that would require that all employees wear special protective clothing that would stay at Defendant's facility.

61.    That the Defendant Weyerhaeuser was negligent, willful, wanton and grossly negligent and reckless in that it hired, retained and/or otherwise employed individuals who were not trained, competent, informed and who otherwise acted in an unreasonable and unsafe manner in the performance of their job functions and assignments, including but not limited to, their

purchase, transportation, installation, handling, cutting, sawing, fitting, repairing, demolishing, removal and/or packaging of asbestos and asbestos-containing materials.

62.   That the Defendant Weyerhaeuser was negligent, willful, wanton and grossly negligent and reckless in that it hired, retained and/or otherwise employed individuals who were not trained, not properly supervised or given adequate guidance or instructions as to how to implement the official company policies regarding educating their employees about bringing home asbestos fibers and making sure that all employees wore protective clothing to prevent this hazard.  That the Defendant recognized that it should have one person at each location to oversee and manage their asbestos program, but failed to hire such an individual or make anyone accountable to ensuring that the program was properly implemented.

63.   That the Defendant Weyerhaeuser was negligent, willful, wanton and grossly negligent and reckless in that it failed to properly train, inform, equip, monitor and supervise the activities of its employees and workers who were working in and/or around the Weyerhaeuser facility in Plymouth, North Carolina.  Out of the approximately two thousand (2000) employees working at the Plymouth facility in 1990, only twenty-two (22) employees were trained to work with asbestos.

64.   That as a direct and proximate result of the Defendant Weyerhaeuser's negligent, willful, wanton and grossly negligent and reckless hiring, training and/or supervision of its employees, agents and/or servants, the Plaintiffs herein were exposed to asbestos fibers and other carcinogens, toxins, fumes and dust which was brought into their homes through contaminated clothing and hereby caused their injuries.

## V.     Third Cause of Action

### INHERENTLY DANGEROUS ACTIVITY

65.  The Plaintiffs incorporate by reference the foregoing paragraphs 1 through 64 as though they were fully set out herein.

66.  That the transportation, use of, installation, handling, removing, distributing, and/or packaging of asbestos and asbestos-containing materials are inherently dangerous activities.

67.  That the aforementioned activities can only be performed safely provided certain precautions are taken, but will, in the ordinary course of events, cause injury and/or harm to others if necessary precautions are omitted.

68.  That since asbestos activities are inherently dangerous, the Defendant had a non-delegable duty to see that the Employees had a safe place to work and that the proper measures and safeguards were implemented and taken to avoid asbestos dust being taken home on their clothing to their family members.

69.  The Defendant breached its non-delegable duty to perform its activities with adequate precautions taken and thus failed to provide Employees, including Modlin a safe place to work and that no proper safety measures were implemented.

70.  The Defendant breached its non-delegable duty by exposing and/or allowing the Employees to become exposed to asbestos and/or asbestos-containing materials resulting in these exposures being carried home to their spouses.

71.  That as a direct and proximate result of the acts and/or omissions of each Defendant, its employees, servants and/or agents, Ms. Modlin contracted asbestosis and a progressive and fatal asbestos-related cancer.

## VI.    Fourth Cause of Action

## NEGLIGENCE PER SE DUE TO VIOLATION OF APPLICABLE STATE AND/OR LOCAL STATUTES, ORDINANCES AND REGULATIONS

72.  The Plaintiffs incorporate by reference the foregoing paragraphs 1 through 71 as though they were fully set forth herein.

73.  That during all times material and relevant herein, there were in force and effect numerous state and/or local statutes, ordinances and/or regulations which governed and regulated the activities of the Defendant, their employees, agents, and/or servants.

74.  That Defendant, their employees, agents and/or servants, violated said state and/or local statutes, ordinances and/or regulations.

75.  That the Plaintiff and employees herein were within a class of individuals for whom said statutes, ordinances, and/or regulations were designed to protect and safeguard.

76.  That in violating said statutes, ordinances, and/or regulations the Defendants and their employees were negligent per se.

77.  That the injuries suffered by Ms. Modlin was a foreseeable, direct, and proximate result of the violations stated herein.

## VII.  Fifth Cause of Action

## FAILURE TO WARN

78.  Plaintiffs incorporate by reference the foregoing paragraphs 1 through 77 as though they are fully set forth herein.

79.  That at all times material hereto, Defendants knew or should have known of the harmful effects of exposure to asbestos dust and of the probability that asbestos fibers would be carried out of the workplace and into the homes of the workers.

80. Defendants had a duty to warn individuals working at the plant of the existence and danger of asbestos materials that had been distributed, delivered, installed, used, removed, transported, and/or otherwise handled on the premises of the Defendant Weyerhaeuser.

81. Defendants knew, or should have known, that the products, without an adequate warning or instruction, created an unreasonably dangerous condition that posed a substantial risk of harm to the Plaintiff, who is a reasonably foreseeable claimant.

82. That even after the Defendant became aware that asbestos was posing a substantial risk of harm, the Defendant failed to take reasonable steps to give adequate warnings or instructions or to take other reasonable action under the circumstances.

83. That the Plaintiffs were not aware of the risks created by the failure to warn of Defendants.

84. That the failure to warn by Defendants was the direct and proximate cause of the injuries of the Plaintiffs.

## VIII.   Sixth Cause of Action

### LOSS OF CONSORTIUM

85. All of the above referenced Plaintiff-Employees incorporate by reference the foregoing paragraphs 1 through 84 as though they are fully set forth herein.

86. As a direct and proximate cause of the acts of the Defendants as described herein, the Plaintiff, JAMES DAVIS MODLIN has suffered the loss of consortium, general services, companionship and society of his respective spouse, Ms. Modlin, and will continue to suffer the loss of consortium, general services, companionship and society of his spouse, the Plaintiff, in the future. Further, Ms. Modlin rendered nursing care, medical and other services to his spouse until her death on October 5, 2008 due to her injuries.

87. Therefore, that as a direct and proximate result of the injuries sustained by Ms. Modlin, Plaintiff Mr. Modlin has also suffered a compensable injury for loss of consortium.

## IX.   DAMAGES

88. The above-referenced Plaintiff, Ms. Modlin and Mr. Modlin incorporate by reference the foregoing paragraphs 1 through 87 as though they are fully set forth herein.

89. That as a result of the foregoing conduct, Plaintiffs have been proximately damaged in an amount in excess of this Court's minimal jurisdictional requirements.

90. That as a result, Ms. Modlin has been injured, has suffered direct and irreparable harm to lungs, respiratory systems, bodies and overall health, including, but not limited to asbestosis and lung cancer.   That as a result of the injuries sustained, Ms. Modlin incurred medical care and treatment including but not limited to prescription medication, nursing and home care, physician and hospital expenses, diagnostic testing and other related and necessary medical expenses.

91. Mr. and Ms. Modlin seek all actionable damages for their injuries, both economic and non-economic, caused by the negligent, grossly negligent, willful, wanton and reckless acts and/or omissions of the Defendants.

92. That the conduct of Defendants as set forth in the above-stated causes of actions were willful, wanton, malicious and in reckless disregard for the safety of the Plaintiffs.

93. That the conduct of each Defendant, as referenced above, justifies an award of punitive damages for the Plaintiffs contained herein.

### Demand for Jury Trial and Judgment

**WHEREFORE**, the PLAINTIFF prays for relief as follows:

1.    That the PLAINTIFF have and recover from DEFENDANTS, a sum in excess of $100,000.00, plus interest thereon, from and after the date of the filing of this action, until paid in the highest amount allowed by law for their injuries.

2.    That because of the DEFENDANTS' gross negligence, willful, wanton, malicious and reckless disregard for the safety of the PLAINTIFF and others, PLAINTIFF recovers from DEFENDANT'S punitive damages.

3.    That the costs of this action be taxed against the DEFENDANT'S.

4.    That all issues of fact be tried by a jury.

5.    For such other and further relief as the Court may deem just and proper.

This the 1st day of October, 2010.

WALLACE & GRAHAM, P.A.


_____/s/Michael B. Pross_____
Michael B. Pross
NC State Bar No. 27050
525 North Main Street
Salisbury, North Carolina 28144
704/633-5244