# U.S. District Court
# EASTERN DISTRICT OF NORTH CAROLINA (Eastern Division)
# CIVIL DOCKET FOR CASE #: 4:10-cv-00138-BR

Tinker et al v. Albany International Corporation et al
Assigned to: Judge W. Earl Britt
Demand: $75,000,000
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 10/06/2010
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

## Plaintiff

**Elwood Samuel Tinker**

represented by **William M. Graham**
Wallace & Graham, PA
525 N. Main St.
Salisbury, NC 28144
704-633-5244
Fax: 704-633-9434
Email: bgraham@wallacegraham.com
*ATTORNEY TO BE NOTICED*

## Plaintiff

**Vonnie Smith Tinker**

represented by **William M. Graham**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**Albany International Corporation**

## Defendant

**AstenJohnson, Inc.**

## Defendant

**CBS Corporation, a Delaware Corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation**

represented by **Jennifer M. Techman**
Evert Weathersby Houff
3405 Piedmont Rd.
Suite 200
Atlanta, GA 30305
678-651-1200
Fax: 678-651-1201
Email: jmtechman@ewhlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Defendant

**CertainTeed Corporation**

## Defendant

**Crane Co.**

**Defendant**

**Foster Wheeler Energy Corporation**    represented by   **Jennifer M. Techman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**General Electric Company**

**Defendant**

**Goulds Pumps, Inc.**

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**Metlife Inc.**

**Defendant**

**National Service Industries, Inc.
(f/k/a North Brothers Company)**

**Defendant**

**Owens-Illinois, Inc.**

**Defendant**

**Scapa North America, Inc.**

**Defendant**

**SEPCO Corporation**

**Defendant**

**Trane U.S. Inc., f/k/a American
Standard**

**Defendant**

**Uniroyal, Inc., f/k/a United States
Rubber Company, Inc.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 10/06/2010 | 1 | COMPLAINT against Albany International Corporation, AstenJohnson, Inc., CBS Corporation, a Delaware Corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation, CertainTeed Corporation, Crane Co., Foster Wheeler Energy Corporation, General Electric Company, Goulds Pumps, Inc., Ingersoll- |

| | | |
|---|---|---|
| | | Rand Company, Metlife Inc., National Service Industries, Inc. (f/k/a North Brothers Company), Owens-Illinois, Inc., SEPCO Corporation, Scapa North America, Inc., Trane U.S. Inc., f/k/a American Standard, Uniroyal, Inc., f/k/a United States Rubber Company, Inc. ( Filing fee $ 350 receipt number 0417-1352078.), filed by Vonnie Smith Tinker, Elwood Samuel Tinker. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Summonses) (Graham, William) (Entered: 10/06/2010) |
| 10/06/2010 | 2 | FINANCIAL DISCLOSURE STATEMENT by Elwood Samuel Tinker, Vonnie Smith Tinker. (Graham, William) (Entered: 10/06/2010) |
| 10/12/2010 | 3 | Summons Issued as to Albany International Corporation, AstenJohnson, Inc., CBS Corporation, a Delaware Corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation, CertainTeed Corporation, Crane Co., Foster Wheeler Energy Corporation, General Electric Company, Goulds Pumps, Inc., Ingersoll-Rand Company, Metlife Inc., National Service Industries, Inc. (f/k/a North Brothers Company), Owens-Illinois, Inc., SEPCO Corporation, Scapa North America, Inc., Trane U.S. Inc., f/k/a American Standard, Uniroyal, Inc., f/k/a United States Rubber Company, Inc. (Berryhill, E.) (Entered: 10/12/2010) |
| 10/22/2010 | 4 | ANSWER to 1 Complaint by Foster Wheeler Energy Corporation. (Techman, Jennifer) (Entered: 10/22/2010) |
| 10/22/2010 | 5 | FINANCIAL DISCLOSURE STATEMENT by Foster Wheeler Energy Corporation (Techman, Jennifer) (Entered: 10/22/2010) |
| 10/22/2010 | 6 | ANSWER to 1 Complaint by CBS Corporation, a Delaware Corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation. (Techman, Jennifer) (Entered: 10/22/2010) |
| 10/22/2010 | 7 | FINANCIAL DISCLOSURE STATEMENT by CBS Corporation, a Delaware Corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation. (Techman, Jennifer) (Entered: 10/22/2010) |
| 11/01/2010 | 8 | AFFIDAVIT of Service for Summons and Complaint served on All Defendants. See Document for Specific Dates, filed by Elwood Samuel Tinker, Vonnie Smith Tinker. (Graham, William) (Entered: 11/01/2010) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 11/04/2010 10:13:07 | | |
| PACER Login: | jp0001 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 4:10-cv-00138-BR |
| Billable Pages: | 2 | Cost: | 0.16 |

https://ecf.nced.uscourts.gov/cgi-bin/DktRpt.pl?710450959078649-L_770_0-1        11/4/2010

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY      :    Civil Action No.  MDL 875
LITIGATION (NO. VI)                       :
                                                :
_____ :
This Document Relates to:                     :

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
File No.: 4:10-cv-138

Elwood Samuel Tinker and Vonnie Smith Tinker,     :
spouse,                                               :
                                                :
                Plaintiffs,                      :    **CIVIL ACTION COMPLAINT**
                                                  :
                       vs.                             :
                                                  :
Albany International Corporation;                   :    **JURY TRIAL DEMANDED**
AstenJohnson, Inc.;                                       :
CBS Corporation, a Delaware Corporation f/k/a      :
        Viacom, Inc., successor by merger to CBS      :
        Corporation, a Pennsylvania Corporation, f/k/a   :
        Westinghouse Electric Corporation;            :
CertainTeed Corporation;                               :
Crane Co.;                                             :
Foster Wheeler Energy Corporation;                 :
General Electric Company;                            :
Goulds Pumps, Inc.;                                    :
Ingersoll-Rand Company;                             :
Metlife Inc.                                            :
National Service Industries, Inc. (f/k/a North Brothers   :
        Company);                                    :
Owens-Illinois, Inc.                                  :
Scapa North America, Inc.;                           :
SEPCO Corporation;                                  :
Trane U.S. Inc., f/k/a American Standard Inc.;       :
Uniroyal, Inc., f/k/a/ United States Rubber Company,    :
        Inc.,                                          :
                                                  :
                Defendants.                    :
_____ :

## CIVIL ACTION COMPLAINT

PLAINTIFF, Elwood Samuel Tinker, an individual, and Vonnie Smith Tinker, his spouse, by and through their attorneys, Wallace and Graham, PA, hereby brings this Civil Action Complaint, whereof the following is a statement:

### JURISDICTION AND VENUE

1.      This action was originally filed in the Circuit Court of Holmes County, Mississippi, civil action number 2002-548.   This action was subsequently removed to federal court and transferred to the MDL 875.  Plaintiff filed a Fifth Amended Complaint in accordance with the Court's order.  On October 6, 2009, the action was dismissed, without prejudice, by Judge Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania.

2.      This action is being re-filed in this Court in accordance with Mississippi and North Carolina savings statutes, which allow an action to be re-filed within one year from the date of dismissal without prejudice. *See NC R. Civ. P. 41*

3.      This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

4.      Further, this Court has jurisdiction over the parties because the Plaintiffs are citizens of the State of North Carolina and none of the Defendants are citizens of the State of North Carolina.    The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

5.      Pursuant to 28 U.S.C.A. §1391 (2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

6.      This action is appropriate for inclusion in the coordinated proceeding as an asbestos related action. This action is further appropriate for treatment as a "tag-along" action as required by 28 U.S.C. 1407, given the transfer of asbestos-related personal injury actions by the Judicial Panel on Multi-District Litigation to the Eastern District of Pennsylvania.

## PARTIES

7.      Plaintiff, Elwood Samuel Proctor (hereinafter "Plaintiff"), is a citizen and resident of Beaufort County, North Carolina. Plaintiff was diagnosed with asbestos related injuries, in particular, Lung Cancer, and claims damages against the defendants identified herein.

8.      Plaintiff, Vonnie Smith Tinker (hereinafter "Plaintiff-Spouse"), is a citizen and resident of Beaufort County, North Carolina.

9.      Plaintiffs bring this action for monetary damages as a result of Plaintiff contracting an asbestos-related disease—to wit: Lung Cancer. Plaintiff's exposure to asbestos occurred during the course of his employment listed on Schedule I, attached to this Complaint.

10.      All of the named defendants are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute.

11.      ALBANY INTERNATIONAL CORPORATION, (named in the Fifth Amended Complaint as "ALBANY INTERNATIONAL CORPORATION, Individually and as Successor in Interest to Albany Felt Company"), is a foreign corporation, who may be served through its registered agent, CT Corporation System, 150 Fayetteville St Box 1011, Raleigh, NC 27601.

12.      ASTENJOHNSON, INC., (named in the Fifth Amended Complaint as "ASTEN, INC., Individually and as Successor in Interest to Asten Group, Inc." and "ASTEN-HILL"), is a

foreign corporation, who may be served through its registered agent, Corporation Service Company, 327 Hillsborough St, Raleigh, NC 27603.

13.     CBS CORPORATION, a Delaware Corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation, (named in the Fifth Amended Complaint as "VIACOM, INC. (f/k/a CBS Corporation f/k/a Westinghouse Electric Company)") is a foreign corporation, who may be served through its registered agent, Corporation Service Company, 327 Hillsborough St, Raleigh, NC 27603.

14.     CERTAINTEED CORPORATION is a foreign corporation, who may be served through its registered agent, CT Corporation System, 150 Fayetteville St Box 1011, Raleigh, NC 27601.

15.     CRANE CO.,(named in the Fifth Amended Complaint as "CRANE COMPANY Individually and as Successor in Interest to Cyclotherm Corporation, Cyclotherm Boiler Company, Jenkins Valves, Inc., Jenkins Bros. Valve Company, Powers Process Controls, f/k/a as Powers Regulator Company, Deming Co., Chapman Valve Mfg. Co., Alloyco Valve"), is a foreign corporation who may be served with process through its registered agent, Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

16.     FOSTER WHEELER ENERGY CORPORATION, (named in the Fifth Amended Complaint as "FOSTER-WHEELER CONSTRUCTORS, INC.", "FOSTER-WHEELER CORPORATION" and "FOSTER-WHEELER ENERGY CORPORATION"), is a foreign corporation who may be served with process through its registered agent, CT Corporation System, 150 Fayetteville St Box 1011, Raleigh, NC 27601.

17.     GENERAL ELECTRIC COMPANY, is a foreign corporation who may be served with process through its registered agent, CT Corporation System, 150 Fayetteville St Box 1011, Raleigh, NC 27601.

18.      GOULDS PUMPS, INC., (named in the Fifth Amended Complaint as "ITT-GOULDS PUMPS, Individually and as Successor in Interest to Goulds Pumps, Inc. and Allis Chalmers Pump Division"), is a foreign corporation who may be served with process through its registered agent, 240 Fall St., Seneca Falls, NY 13148.

19.      INGERSOLL-RAND COMPANY is a foreign corporation who may be served with process through its registered agent, CT Corporation System, 150 Fayetteville St Box 1011, Raleigh, NC 27601.

20.      METLIFE INC., (named in the Fifth Amended Complaint as "METROPOLITAN LIFE INSURANCE COMPANY"), is a foreign corporation who may be served with process through its corporate offices, 200 Park Ave., New York, NY 10166.

21.      NATIONAL SERVICE INDUSTRIES, INC. (f/k/a North Brothers Company), (named in the Fifth Amended Complaint as "NATIONAL SERVICES INDUSTRIES, INC." and "NORTH BROTHERS, INC."), is a foreign corporation who may be served with process through its registered agent, Corporation Service Company 40 Technology Parkway S Ste 300, Norcross, GA 30092.

22.      OWENS-ILLINOIS, INC., (named in the Fifth Amended Complaint as "OWENS-ILLINOIS, INC. (successor to Owens-Illinois Glass Company)"), is a foreign corporation who may be served with process through its managing agent, One Michael Owens Way, Perrysburg, OH 43551.

23.      SCAPA NORTH AMERICA, INC. (named in the Fifth Amended Complaint as "SCAPAP FABRICS, INC."), is a foreign corporation who may be served with process through its registered agent, Eric Springer, 111 Great Pond Dr, Windsor, CT 06095.

24.     SEPCO CORPORATION is a foreign corporation who may be served with process through its registered agent, CT Corporation System, 818 W Seventh St, Los Angeles, CA 90017.

25.     TRANE U.S. INC., f/k/a AMERICAN STANDARD INC., (named in the Fifth Amended Complaint as "AMERICAN STANDARD (individually and as successor-in-interest to Kewanee Boiler Corporation"), is a foreign corporation who may be served with process through its registered agent, CT Corporation System, 150 Fayetteville St Box 1011, Raleigh, NC 27601.

26.     UNIROYAL, INC. f/k/a UNITED STATES RUBBER COMPANY, INC., (named in the Fifth Amended Complaint as "UNIROYAL FIBER & TEXTILE DIVISION OF UNIROYAL, INC., Individually and as Successor in Interest to U.S. Rubber Co, Naugatuck Chemical Co., and Royalite Chemical Division of U.S. Rubber Co.", "UNIROYAL HOLDING, INC., (Individually and as successor-in-interest to U.S. Rubber Company)" and "UNIROYAL INC"), is a foreign corporation who may be served with process through its registered agent, 70 Great Hill Rd., Naugatuck, CT 06770.

## PRODUCT LIABILITY

27.     Each Defendant corporation or its predecessor-in-interest, with the exception of Metlife Inc., is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

28.     Plaintiff shows that for a period of many years, he worked with and/or was exposed, either directly or indirectly, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products while working in various locations as shown herein:

| Employer Name | Jobsite | City | State | From | To | Trade/Duty Occupation |
|---|---|---|---|---|---|---|
| US Navy | Landing Craft Infantry | Cleveland | OH | 1944 | 1946 | Under water demolition |
| US Navy | Landing Craft Infantry | Cleveland | OH | 1944 | 1946 | Ships company |
| General Cable Corporation | General Cable Corp. | St. Louis | MO | 1946 | 1946 | Laborer |
| Anderson Milling Co. Inc. | Anderson Milling Co. Inc. | Washington | NC | 1950 | 1950 | Laborer |
| North Carolina Pulp Co. | Weyerhaeuser Corporation | Plymouth | NC | 1951 | 1960 | Laborer |
| North Carolina Pulp Co. | Weyerhaeuser Corporation | Plymouth | NC | 1951 | 1960 | Millwright |
| Boyd and Boyd | Boyd and Boyd | Belhaven | NC | 1956 | 1958 | Laborer |
| Weyerhaeuser Corporation | Weyerhaeuser Corporation | Plymouth | NC | 1961 | 1988 | Laborer |
| Weyerhaeuser Corporation | Weyerhaeuser Corporation | Plymouth | NC | 1961 | 1988 | Mechanic |
| Roddy Selby | Roddy Selby | Belhaven | NC | 1962 | 1962 | Laborer |

Plaintiff would show that he has been exposed as previously described, on numerous occasions, to asbestos fibers, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products mined, produced, distributed, installed, and/or sold by Defendants and, in so doing, has inhaled great quantities of asbestos fibers. Further Plaintiff alleges, as more specifically set out below, that he has suffered injuries proximately caused by exposure to asbestos fibers and/or asbestos-containing products mined, produced, designed, manufactured, distributed, installed, and/or and sold by Defendants.

29.     Plaintiff alleges that he was exposed to asbestos fibers, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products as previously described. In that each exposure to such products caused or

contributed to Plaintiff's injuries, Plaintiff says that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

COUNT ONE

30. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

31. The illness and disability of Plaintiff is a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities mined, designed, manufactured, produced, distributed, installed, sold and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being. Defendants were negligent in one, some, and/or all of the following respects, among others, same being the proximate cause of Plaintiff's illness and disability:

> a. in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;
>
> b. in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;
>
> c. in failing to place timely and adequate warnings on the containers of said

asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

d. in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

e. in failing to develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

f. in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

g. in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

h. in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery requiring or calling for the use of asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

## COUNT TWO

32.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

33.     Plaintiff was exposed to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were produced, designed, manufactured, and/or distributed by Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery as previously described. Plaintiff would show that the defective condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of Defendants.

34.     Defendants are engaged in the business of selling and/or installing asbestos, asbestos-containing products, and/or machinery requiring or calling for asbestos or asbestos-containing products, and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold and/or installed, were a proximate cause of the injuries of Plaintiff.

35.     Defendants knew that these asbestos fibers, asbestos-containing products, and/or machinery would be used without inspection for defects and, by placing them on the market, or by installing them in or near where Plaintiff worked, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation, installation, and/or removal of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

36.     Plaintiff was unaware of the hazards and defects in the asbestos-containing products of Defendants that made them unsafe for purposes of manipulation, installation, and/or

removal. Similarly, Plaintiff was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

37.     During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of Defendants, these asbestos-containing products and/or machinery were being utilized in a manner that was intended by Defendants.

## COUNT THREE

38.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

39.     Plaintiff further alleges that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiff's injuries, diseases, and illnesses by exposing Plaintiff to harmful and dangerous asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products as previously described. Defendants and/or their predecessors-in-interest further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers. In this connection, Plaintiff has sued Metlife Inc. in its capacity as a conspirator. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to, either directly or indirectly, Defendants asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

40.     In furtherance of said conspiracies, Defendants and/or their predecessors-in-interest performed the following overt acts:

a.     for many decades, Defendants, individually, jointly, and in conspiracy with each
       other, have been in possession of medical and scientific data, literature, and test
       reports which clearly indicated that the inhalation of asbestos dust and fibers
       resulting from the ordinary and foreseeable use of said asbestos-containing
       products and/or machinery requiring or calling for the use of asbestos and/or
       asbestos-containing products were unreasonably dangerous, hazardous,
       deleterious to human health, carcinogenic, and potentially deadly;

b.     despite the medical and scientific data, literature, and test reports possessed by
       and available to Defendants, Defendants individually, jointly, and in conspiracy
       with each other, fraudulently, willfully, and maliciously:

c.     withheld, concealed, and suppressed from Plaintiff who were using and being
       exposed to Defendants' asbestos-containing products and/or machinery requiring
       or calling for the use of asbestos and/or asbestos-containing products said medical
       and scientific data, literature, and test reports regarding the risks of asbestosis,
       cancer, mesothelioma and other illnesses and diseases;

d.     caused to be released, published, and disseminated medical and scientific data,
       literature, and test reports containing information and statements regarding the
       risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which
       Defendants knew were incorrect, incomplete, outdated, and misleading; and

e.     distorted the results of medical examinations conducted upon Plaintiff and
       workers such as Plaintiff who were using asbestos, asbestos-containing products,
       and/or machinery requiring or calling for the use of asbestos and/or asbestos-
       containing products and being exposed to the inhalation of asbestos dust and
       fibers by falsely stating and/or concealing the nature and extent of the harm to

which Plaintiff and workers such as Plaintiff have suffered; and

f.      by the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose themselves to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

41.      Plaintiff reasonably and in good faith relied upon the false and fraudulent representations, omissions, and concealments made by Defendants regarding the nature of their asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

42.      As a direct and proximate result of Plaintiff's reliance on Defendants' false and fraudulent representations, omissions, and concealments, Plaintiff has sustained damages including injuries, illnesses, and disabilities and have been deprived of the opportunity of informed free choice in connection with the use of and exposure to, either directly or indirectly, Defendants' asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

43.      Moreover, Defendants continue to contrive, combine, confederate and conspire among themselves to injure Plaintiff and to deprive Plaintiff of their rightful recoveries. As a direct and proximate result of Defendants' ongoing actions, Plaintiff continues to sustain damages.

44.      Beginning in the early 1930's, Defendant Metlife Inc. entered into a conspiracy with Raybestos-Manhattan Corporation (predecessor to Raytech Corporation) and Johns-

Manville Corporation (predecessor to the Manville Corporation and the Manville Corp. Asbestos Disease Compensation Fund) to affirmatively misrepresent material facts about the dangers of asbestos exposure and the seriousness of the health hazard posed by asbestos. Other conspirators participating in the conspiracy (or in on-going or subsequent conspiracies) included, but were not limited to, Raytech Corporation, American Brakeblok Corporation, and OAF Corporation, T&N, Plc., Keasbey and Mattison, United States Gypsum Company, and Owens-Illinois, and/or these companies' predecessors and/or successors-in-interest as set forth herein, (hereinafter called the "Conspiracy Defendants"), some or all of whom were members of the Quebec Asbestos Mining Association and/or the Asbestos Textile Institute and/or the Industrial Hygiene Foundation. Acting in concert, the Conspiracy Defendants fraudulently misrepresented to the public and to public officials, inter alia, that asbestos did not cause cancer, that the disease asbestosis had no association with pleural and pulmonary cancer and affirmatively suppressed information concerning the carcinogenic and other adverse effects of asbestos exposure on the human respiratory and digestive systems.

45.    Additionally, Plaintiff adopts all previous allegations as to Defendants and additionally state with respect to any and all Defendants named in this petition (or hereinafter to be added) who were members of the Air Hygiene Foundation (predecessor to the Industrial Hygiene Foundation), the Industrial Hygiene Foundation, the Quebec Asbestos Mining Association, the American Textile Institute, and/or other trade associations whose members conspired to conceal the hazards of asbestos: These Defendants (the "Trade Association Conspiracy Defendants") joined together to combat publicity and dissemination of data on the hazards of asbestos and acted to conceal medical studies from the general public, including asbestos-exposed workers such as Plaintiff. The above-described actions constituted intentional deception and fraud by actively misleading the public about the extent of the hazards of asbestos

and substantially contributed to retarding the development of knowledge about such hazards, thereby substantially contributing to Plaintiff's injuries. The Trade Association Conspiracy Defendants were active conspirators and engaged in the suppression, alteration and destruction of relevant scientific studies involving the hazards of asbestos. These Defendants and their co-conspirators conspired with Johns-Manville and/or participated in numerous unlawful acts in furtherance of the conspiracies.

46.     Further, the Conspiracy Defendants and the Trade Association Conspiracy Defendants committed the tort of assault and battery upon Plaintiff by intentionally, knowingly and/or recklessly causing them bodily harm. Plaintiff specifically asserts the doctrine of transferred intent.

47.     Further, the Conspiracy Defendants and the Trade Association Conspiracy Defendants, and their trade association co-conspirators, individually, as members of a conspiracy, and as agents of other co-conspirators, have been and are in a position of superior knowledge regarding the health hazards of asbestos, and therefore, Plaintiff had the right to rely upon the published reports commissioned by the Defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-containing products.

48.     Further, the Conspiracy Defendants and the Trade Association Conspiracy Defendants intentionally manufactured and/or installed and/or sold and/or distributed and/or marketed a defective product in that they intentionally manufactured and/or installed and/or distributed and/or sold and/or marketed and/or used asbestos-containing products without adequate warnings of the hazards of asbestos that could and did result in personal injury and/or death to those exposed to their products, including Plaintiff.

<u>COUNT</u> <u>FOUR</u>

49.     All of the allegations contained in the previous paragraphs are realleged herein.

50.     The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury to the Plaintiff. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, willfulness, wantonness and/or malice with regard to Plaintiff and should be held liable in punitive and exemplary damages to Plaintiff.

<u>COUNT</u> <u>FIVE</u>

51.     All of the allegations contained in the previous paragraphs are realleged herein.

52.     Defendant Metlife Inc. through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to Plaintiff by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation, the duties:

a.   to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

b.   to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

c.   In undertaking these duties, Metlife Inc. knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff.

d.   In both conducting said tests and in publishing their alleged results, Metlife Inc. failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. Metlife Inc. also caused to be published

intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

53.     Plaintiff unwittingly but justifiably relied upon the thoroughness of Metlife Inc. tests and information dissemination, the results of which Metlife Inc. published in leading medical journals.

54.     As a direct and proximate contributing result of Metlife Inc.'s failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so: (i) the risk of harm to Plaintiff from asbestos exposure was increased, and (ii) Plaintiff suffered the injuries described below.

55.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Metlife Inc. acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiff.

## COUNT SIX

56.     All of the allegations contained in the previous paragraphs are realleged herein.

57.     The actions of all Defendants aided, abetted, encouraged, induced, or directed the negligent and/or intentional acts of each and every other Defendant.

58.     Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of Plaintiff.

59.     The actions of each Defendant are a proximate cause of Plaintiff's injuries. As a result, all Defendants are jointly liable for the damage caused by their combined actions.

## DAMAGES

60. All of the allegations contained in the previous paragraphs are realleged herein.

61. As a direct and proximate result of Defendants' tortuous conduct as aforesaid, Plaintiffs have developed asbestos-related lung disease and other related physical conditions. Plaintiffs have been damages in the following particulars:

     a. Plaintiff has suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout his lifetimes;

     b. Plaintiff has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the progressively disabling character of asbestos-related lung disease and other related physical conditions from which they now suffer and will continue to suffer in the future;

     c. Plaintiff suffers a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of asbestos-related lung disease and other related physical conditions;

     d. Plaintiff suffers a permanent partial disability at this time and will become permanently and totally disables in the future due to the progressive character of asbestos-related lung disease and other related physical conditions;

     e. Plaintiff has suffered a progressive loss of earning capacity and will continue to suffer a loss of earning capacity and wages throughout his lifetime;

     f. Plaintiff requires or will require domestic help and nursing care due to his disabilities and has been or will be required to pay for such domestic help and nursing services;

    g. Prior to the onset of symptoms, Plaintiff was extremely active and participated in numerous hobbies and activities, and as a result of his illness, Plaintiff has been and will be prevented from engaging in some of said activities which were normal to them prior to developing symptoms from asbestos-related lung disease. Plaintiff has been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life;

    h. Plaintiff's spouse has suffered and will suffer the loss of her spouse's services, consortium, financial support and the care and comfort of his society because her spouse's injuries and disabilities, and she has incurred or will incur expenses in the future for medical and nursing attention rendered to her spouse. Plaintiff's spouse has suffered and will continue to suffer mental anguish as a consequence of her spouse's illness and disease; and

    i. Plaintiff seeks punitive and exemplary damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, for general damages, special damages, for punitive and exemplary damages, for their costs expended herein, for prejudgment interest from the date of Plaintiff's exposure to asbestos fibers, asbestos-containing products, and/or machinery calling for the use of asbestos-containing products, and for post-judgment interest on the judgment at the rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 6th day of October, 2010.

Respectfully submitted,

WALLACE AND GRAHAM, P.A.

s/William M. Graham
William M. Graham, Esquire (NCSBN 17972)
Cathy A. Williams, Esquire (NCSBN 33534)
Attorneys for Plaintiff
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
Tel. No. (704) 633-5244
Fax: (704) 633-9434
E-Mail:       bgraham@wallacegraham.com
              cwilliams@wallacegraham.com