# Exhibit A

COPY

1  Roger E. Gold, Esq. (SBN 214802)
    Eric Brown, Esq. (SBN229622)
2  BARON & BUDD, P.C.
    9465 Wilshire Blvd., Suite 460
3  Beverly Hills, CA 90212
    Telephone: 310/860-0476
4  Facsimile: 310/860-0480

5  Attorneys for Plaintiffs

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 2 2 2008

John A. Clarke, Executive Officer/Clerk
BY SHAUNYA WESLEY, Deputy

7       SUPERIOR COURT OF THE STATE OF CALIFORNIA

8      COUNTY OF LOS ANGELES - UNLIMITED JURISDICTION

10  MICHAEL SCANLON and KWANG SCANLON    )  CASE NO.  BC389555

11          Plaintiff,          )  **COMPLAINT FOR
                               )  PERSONAL INJURIES**

12  vs.                         )

13  A. W. CHESTERTON COMPANY; ADVOCATE  )  [COMPLEX ASBESTOS
    MINES, LTD.; ALFA LAVAL, INC.;            )  LITIGATION-SUBJECT
14  ALLIS-CHALMERS CORPORATION PRODUCT  )  TO THE GENERAL
    LIABILITY TRUST; AMCORD, INC., individually  )  ORDERS CONTAINED
15  and as successor-in-interest to Riverside Cement;  )  IN FILE NO.  C700000].
    AMERICAN STANDARD, INC., individually and  )
16  as successor-in-interest to The TRANE        )
    COMPANY; ARMSTRONG INTERNATIONAL,  )
17  INC.; ASBESTOS CORPORATION, LTD.;     )
    ASTENJOHNSON, INC. (f/k/a Asten, Inc.);    )
18  ASTRA FLOORING COMPANY; BONDEX    )
    INTERNATIONAL, INC.; BUFFALO PUMPS,  )
19  INC.; CBS CORPORATION, f/k/a Viacom, Inc.  )
    (successor-by-merger to CBS Corporation,    )
20  successor-by-merger to Westinghouse Electric  )
    Corporation); CLEAVER-BROOKS, INC.,    )
21  individually and f/k/a Aqua-Chem, Inc.; CRANE  )
    CO., individually and as successor in interest to  )
22  Chapman Valves; CROWN CORK & SEAL    )
    COMPANY, INC. (individually and as      )
23  successor-in-interest to Mundet Cork Company);  )
    DOUGLASS INSULATION COMPANY, INC.;  )
24  FAIRBANKS MORSE PUMP CORPORATION;  )
    FAMILIAN CORP.; FLOWSERVE        )
25  CORPORATION, f/k/a The Duriron Company;  )
    FMC CORPORATION, individually, on behalf of  )
26  and as successor-in-interest to Peerless Pump Co.,  )
    John Bean Pumps, Chicago Pumps, Dayton-Dowd  )
27  Pump Co., Ohio Apex Division, and Link Belt  )
    Company; FOSTER WHEELER ENERGY    )
28  CORPORATION; FRYER KNOWLES, INC., a  )

1  California Corporation; FRYER KNOWLES, INC.,
   a Washington Corporation; GARLOCK SEALING
2  TECHNOLOGIES, L.L.C. (individually and as
   successor-in-interest to Garlock, Inc. and as
3  successor-in-interest to Fairbank Morse, Inc.);
   GENERAL ELECTRIC COMPANY;
4  GEORGIA-PACIFIC, LLC, f/k/a Georgia-Pacific
   Corporation, individually and as
5  successor-in-interest to Bestwall Gypsum Company;
   GOULDS PUMPS INCORPORATED;
6  HAMILTON MATERIALS, INC. (f/k/a Hamilton
   Distributing, Inc.); HANSON PERMANENTE
7  CEMENT, INC., (f/k/a Kaiser Cement Corporation,
   individually and as successor-in-interest to Kaiser
8  Gypsum Company, Inc.); HENRY VOGT
   MACHINE COMPANY; HILL BROTHERS
9  CHEMICAL COMPANY; HOPEMAN
   BROTHERS, INC.; IMO INDUSTRIES, INC.;
10 INGERSOLL-RAND COMPANY; J.T. THORPE &
   SON, INC.; KAISER GYPSUM COMPANY, INC.;
11 KAMAN INDUSTRIAL TECHNOLOGIES
   CORPORATION SII TO WINN SUPPLY
12 COMPANY; LESLIE CONTROLS, INC.; M.
   SLAYEN & ASSOCIATES, INC.; MECHANICAL
13 DRIVES & BELTING (f/k/a L.A. Rubber
   Company); METALCLAD INSULATION
14 CORPORATION; PARKER HANNIFIN CORP.
   (individually and as successor-in-interest to
15 SACOMA SIERRA and SACOMO
   MANUFACTURING COMPANY); PLANT
16 INSULATION COMPANY, FORMERLY
   ASBESTOS COMPANY OF CA; PLANT
17 PRODUCTS & SUPPLY COMPANY; QUINTEC
   INDUSTRIES, INC., individually and
18 successor-by-merger to Western Fibrous Glass
   Products Company (f/k/a Western Fiberglas
19 Company); RPM, INC., individually and as
   successor-in-interest Bondex International, Inc.;
20 SEPCO CORPORATION; SOCO WEST, INC.
   (f/k/a Brenntag West, Inc., f/k/a Soco-Lynch
21 Corporation, f/k/a Soco-Western Chemical
   Corporation, f/k/a Stinnes-Western Chemical
22 Corporation; THOMAS DEE ENGINEERING CO.;
   TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A
23 Shipyard); UNION CARBIDE CORPORATION;
   WARREN PUMPS, L.L.C., f/k/a Warren Pumps,
24 Inc.; YARWAY CORPORATION; ZURN
   INDUSTRIES, INC., a/k/a and successor-by-merger
25 to Erie City Iron Works and d/b/a "Keystone"
   branded products, and DOES 1-300
26
27          Defendants.
   _____
28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COME NOW, Plaintiffs MICHAEL SCANLON and KWANG SCANLON and for causes of action against Defendants, and each of them, complain and allege as follows:

## 1. GENERAL ALLEGATIONS

1. The true names and/or capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown to Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and when the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiffs, as hereinafter alleged, either through said Defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, lease or sale of the instrumentality causing the injury, or in some other manner.

2. Plaintiffs are informed and believe, and thereon allege that at all times mentioned herein, Defendants and each of them, were the agents, servants, employees and/or joint venturers of their co-Defendants and were, as such, acting within the scope, course, and authority of said agency, employment and/or joint venture, in that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring or each and every other Defendant as the agent, servant, employee and/or joint venturer.

1
2
3
    3. Plaintiff MICHAEL SCANLON was and is a California resident during a substantial period of his asbestos exposure upon which Plaintiffs' claims are based.

4
5
6
7
8
9
10
11
12
    4. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants and DOES 1 through 300, inclusive, are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state of the United States of America, or some foreign jurisdiction, and that said Defendants were authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the State of California.

13
14
15
16
17
18
    5. At all times mentioned above, Defendants, and each of them, were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance.

19
20
21
22
23
24
25
26
27
28
    6. Plaintiff MICHAEL SCANLON was exposed to Defendants' asbestos and asbestos containing products contributing to and causing the development of mesothelioma. Plaintiff was exposed to Defendants' asbestos and asbestos containing products through his occupational to asbestos while serving in the United States Navy from 1964 through 1966 aboard the U.S.S. Piedmont (AD-17) at locations including but not limited to San Diego Naval Shipyard, San Diego, CA and while performing work in the construction and remodel of homes. As a result of exposure to Defendants' asbestos and asbestos containing products, asbestos fibers entered his body. Plaintiff suffers from

mesothelioma and each of Defendants asbestos and asbestos containing products that entered his body was a substantial factor in bringing about, prolonging, or aggravating Plaintiff's mesothelioma. The asbestos and asbestos containing products Plaintiff was exposed to were manufactured or supplied by a named defendant.

7. The Federal Courts lack jurisdiction over this action and removal is therefore improper. There is incomplete diversity of citizenship due to the presence of a California defendant. Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed. This includes any claim arising from an act on a Federal Enclave as defined by Article I, section. 8, clause 17 of the United States Constitution. This also includes any claim arising from any act or omission of the Untied States, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States. No claim of admiralty or maritime law is raised. Plaintiffs sue no foreign state or agency. Venue is proper in San Francisco County, Superior Court of California.

## **FIRST CAUSE OF ACTION**

### (Negligence)

### (Against all Defendants)

8. Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the General Allegations above.

9. At all times herein mentioned, each of the named Defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a

portion thereof, assign, predecessor, predecessor in business, predecessor in product line

or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or

partial owner of or member in an entity researching, studying, manufacturing, fabricating,

designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

marketing, warranting, re-branding, manufacturing for others, packaging and advertising

as certain product, namely asbestos, and other products containing asbestos. Said entities

shall hereinafter collectively be called "Alternate Entities." Each of the herein named

Defendants is liable for the tortious conduct of each successor, successor in business,

successor in product line or a portion thereof, assign, predecessor in product line or a

portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for

sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

marketed, warranted, re-branded, manufactured for others and advertised a certain

product, namely asbestos, and other products containing asbestos. The following

Defendants, and each of them, are liable for the acts of each and every "Alternate Entity,"

and each of them, in that there has been a virtual destruction of Plaintiff's remedy against

each such "Alternate Entity;" Defendants, and each of them, have acquired the assets,

product line, or a portion thereof, of each such "Alternate Entity;" such "Alternate Entity;"

Defendants, and each of them, caused the destruction of Plaintiff's remedy against each

such "Alternate Entity;" each such Defendant has the ability to assume the risk-spreading

role of each such "Alternate Entity;" and that each such Defendant enjoys the goodwill

originally attached to each such "Alternate Entity."

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| A. W. CHESTERTON COMPANY | |
| ADVOCATE MINES, LTD. | |
| ALFA LAVAL, INC. | |
| ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST | |
| AMCORD, INC. | individually and as successor-in-interest to Riverside Cement |
| AMERICAN STANDARD, INC. | individually and as successor-in-interest to The TRANE COMPANY |
| ARMSTRONG INTERNATIONAL, INC. | |
| ASBESTOS CORPORATION, LTD. | |
| ASTENJOHNSON, INC. | (f/k/a Asten, Inc.) |
| ASTRA FLOORING COMPANY | |
| BONDEX INTERNATIONAL, INC. | |
| BUFFALO PUMPS, INC. | |
| CBS CORPORATION | f/k/a Viacom, Inc. (successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric Corporation) |
| CLEAVER-BROOKS, INC. | individually and f/k/a Aqua-Chem, Inc. |
| CRANE CO. | individually and as successor in interest to Chapman Valves |
| CROWN CORK & SEAL COMPANY, INC. | (individually and as successor-in-interest to Mundet Cork Company) |
| DOUGLASS INSULATION COMPANY, INC. | |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| FAIRBANKS MORSE PUMP CORPORATION | |
| FAMILIAN CORP. | |
| FLOWSERVE CORPORATION | f/k/a The Duriron Company |
| FMC CORPORATION | individually, on behalf of and as successor-in-interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, and Link Belt Company |
| FOSTER WHEELER ENERGY CORPORATION | |
| FRYER KNOWLES, INC. | a California Corporation |
| FRYER KNOWLES, INC. | a Washington Corporation |
| GARLOCK SEALING TECHNOLOGIES, L.L.C. | (individually and as successor-in-interest to Garlock, Inc. and as successor-in-interest to Fairbank Morse, Inc.) |
| GENERAL ELECTRIC COMPANY | |
| GEORGIA-PACIFIC, LLC | f/k/a Georgia-Pacific Corporation, individually and as successor-in-interest to Bestwall Gypsum Company |
| GOULDS PUMPS INCORPORATED | |
| HAMILTON MATERIALS, INC. | (f/k/a Hamilton Distributing, Inc.) |
| HANSON PERMANENTE CEMENT, INC. | (f/k/a Kaiser Cement Corporation, individually and as successor-in-interest to Kaiser Gypsum Company, Inc.) |
| HENRY VOGT MACHINE COMPANY | |
| HILL BROTHERS CHEMICAL COMPANY | |
| HOPEMAN BROTHERS, INC. | |
| IMO INDUSTRIES, INC. | |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| INGERSOLL-RAND COMPANY | |
| J.T. THORPE & SON, INC. | |
| KAISER GYPSUM COMPANY, INC. | |
| KAMAN INDUSTRIAL TECHNOLOGIES CORPORATION SII TO WINN SUPPLY COMPANY | |
| LESLIE CONTROLS, INC. | |
| M. SLAYEN & ASSOCIATES, INC. | |
| MECHANICAL DRIVES & BELTING | (f/k/a L.A. Rubber Company) |
| METALCLAD INSULATION CORPORATION | |
| PARKER HANNIFIN CORP. | (individually and as successor-in-interest to SACOMA SIERRA and SACOMO MANUFACTURING COMPANY) |
| PLANT INSULATION COMPANY, FORMERLY ASBESTOS COMPANY OF CA | |
| PLANT PRODUCTS & SUPPLY COMPANY | |
| QUINTEC INDUSTRIES, INC. | individually and successor-by-merger to Western Fibrous Glass Products Company (f/k/a Western Fiberglas Company) |
| RPM, INC. | individually and as successor-in-interest Bondex International, Inc. |
| SEPCO CORPORATION | |
| SOCO WEST, INC. | (f/k/a Brenntag West, Inc., f/k/a Soco-Lynch Corporation, f/k/a Soco-Western Chemical Corporation, f/k/a Stinnes-Western Chemical Corporation |
| THOMAS DEE ENGINEERING CO. | |
| TRIPLE A MACHINE SHOP, INC. | (a/k/a Triple A Shipyard) |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| UNION CARBIDE CORPORATION | |
| WARREN PUMPS, L.L.C. | f/k/a Warren Pumps, Inc. |
| YARWAY CORPORATION | |
| ZURN INDUSTRIES, INC. | a/k/a and successor-by-merger to Erie City Iron Works and d/b/a "Keystone" branded products |
| DOES 1-300 | |

10. Defendants had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein, Defendants, and each of them, negligently and carelessly researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance, in that said substance was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Plaintiff MICHAEL SCANLON.

11. On or before 1933, and thereafter, said DEFENDANTS were aware that users of asbestos and asbestos products, as well as members of the general public who would be exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and said DEFENDANTS knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to

asbestos and asbestos products, would assume, and in fact did assume, that exposure to

asbestos and asbestos products was safe, when in fact said exposure was extremely

hazardous to human life. .

12. With said knowledge, said DEFENDANTS opted to manufacture and

distribute said asbestos and asbestos products without attempting to protect users from or

warn users of, the high risk of injury or death resulting from exposure to asbestos and

asbestos products. Rather than attempting to protect users and workers from, or warn

workers and users of, the high risk of injury or death resulting from exposure to asbestos

and asbestos products, DEFENDANTS intentionally failed to reveal their knowledge of

said risk, fraudulently, consciously and actively concealed and suppressed said knowledge

from members of the general public that asbestos and asbestos products were unsafe for all

reasonably foreseeable use, with the knowledge of the falsity of said implied

representations

13. The above referenced conduct of said DEFENDANTS was motivated by the

financial interest of said DEFENDANTS in the continuing, uninterrupted distribution and

marketing of asbestos and asbestos products. In pursuance of said financial motivation,

said DEFENDANTS consciously disregarded the safety of the users of, and persons

exposed to, asbestos and asbestos products, and were in fact, consciously willing to permit

asbestos and asbestos products to cause injury to workers and users thereof, and persons

exposed thereto, including plaintiff.

14. Plaintiff MICHAEL SCANLON. is a worker who, for a substantial length of

time, has used, handled, and been otherwise exposed to the asbestos and asbestos products

referred to in Paragraph 6 above, in a manner that was reasonably foreseeable, while he was working as described in paragraph Six above.

15. As a direct and proximate result of the above-referenced conduct of the Defendants, and each of them, as aforesaid, said exposure to said asbestos caused severe and permanent injury to Plaintiff's lungs and body, including, but not limited to the disease mesothelioma.

16. On or about [Date of diagnosis], Plaintiff MICHAEL SCANLON was advised that he has the asbestos-related disease, mesothelioma. Prior to that date, Plaintiff did not know, nor did he have reason to know, that he had contracted this disease related to his exposure to asbestos. Prior to said date, Plaintiff was not aware that exposure to asbestos presented any risk of injury and/or disease to him, and had not been advised or informed by anyone that he could contract, nor indeed did contract, any disease, sickness or injury as a result of working in the vicinity of asbestos.

17. Plaintiff is informed and believes, and thereupon alleges, that mesothelioma is a vicious, painful and invariably fatal malignancy of the lining of the lung, stomach, or heart and that said disease results from exposure to asbestos and asbestos products over a period of time. There is no known cure for any form of malignant mesothelioma.

18. As a direct and proximate result of the aforesaid conduct of the Defendants, and each of them, Plaintiff has suffered, and continues to suffer, severe and permanent injuries to his person, body and health, including, but not limited to, the disease mesothelioma, all to his general damage in a sum within the jurisdictional limits of this court.

19. As a direct and proximate result of the aforesaid conduct of the Defendants, and each of them, Plaintiff was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat him, and did incur medical, hospital and professional incidental expenses, and Plaintiff is informed and believes and thereupon alleges that by reason of said Plaintiff's injuries, he will necessarily incur additional like expenses for an indefinite period of time in the future, and when said amounts are ascertained, he will allege said amounts.

20. At all times herein mentioned, Defendants, and each of them were aware that the original gaskets and packing supplied with their equipment would need to be removed and replaced with new gaskets and packing during ordinary operation and maintenance of their equipment. Heat and pressure generated by operation would affect the original and replacement gaskets and packing – e.g., making them brittle, friable and not reusable, making replacement necessary and dangerous. It was foreseeable that the process of removing old gaskets and packing, and replacing them with the new materials during ordinary maintenance operations would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air. It was also foreseeable that Defendant's equipment needed to be insualted with asbestos containing thermal insulation materials and that the negligent design of Defendant's equipment through its ordinary operation caused the degradation of asbestos containing thermal insulation and the foreseeable removal of these insulation materials and application of new insulation materials, which would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air.

21. The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

## SECOND CAUSE OF ACTION
### (Strict Liability)
### (Against all Defendants)

22. Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First Cause of Action.

23. At all times mentioned herein, Defendants, and each of them, researched, manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to the users, consumers, and bystanders while being used in a reasonably

foreseeable manner, thereby rendering same unsafe and dangerous for use by the consumers, users, and bystanders.

24. As a direct and proximate result of the above described conduct by Defendants and each of them, Plaintiff MICHAEL SCANLON suffered severe and permanent injuries to his person, as alleged hereinabove.

25. At all times mentioned herein, the asbestos and products containing said substance discussed above failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the risk of danger inherent in this substance and products outweighs the benefits of said substance and products.

26. At all times mentioned herein, the foreseeable use of the asbestos and products containing said substance discussed above involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

27. As a direct and proximate result of the above described conduct by Defendants and each of them, Plaintiff suffered severe and permanent injuries to his person, as alleged hereinabove.

28. The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause

injury to the plaintiff or conduct which was carried on by the defendant with a conscious

disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust

hardship in conscious disregard of his rights and engaged in intentional misrepresentation,

deceit, or concealment of a material fact known to the defendant with the intention on the

part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise

causing injury. Plaintiff therefore, for the sake of example and by way of punishing

Defendant, seeks punitive damages, according to proof.

### THIRD CAUSE OF ACTION
(False Representation Under Restatement of Torts Section 402-B)
(Against All Defendants)

29. Plaintiffs hereby incorporate by reference, as though fully set forth herein, each

and every allegation contained in the First through Second Causes of Action.

30. At the aforementioned time when Defendants, their "Alternate Entities," and

each of them, researched, manufactured, fabricated, designed, modified, tested or failed to

test, inadequately warned or failed to warn, labeled, assembled, distributed, leased,

bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for

installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged

and advertised the said asbestos and asbestos-containing products, as herein above set

forth, the Defendants, their "Alternate Entities," and each of them, expressly and impliedly

represented to members of the general public, including the purchasers and users of said

product, and other "exposed persons," including the Plaintiff herein and his employers,

that asbestos and asbestos-containing products, were of merchantable quality, and safe for

the use for which they were intended.

31. The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the Plaintiff and his employers, relied upon said representations of Defendants, their "Alternate Entities,"and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

32. Said representations by Defendants, their "Alternate Entities," and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "Alternate Entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including Plaintiff herein.

33. As a direct and proximate result of said false representations by Defendants, their "Alternate Entities," and each of them, the Plaintiffs sustained the injuries and damages herein above set forth.

34. The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust

hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

## FOURTH CAUSE OF ACTION

(Intentional Tort)

(Against All Defendants)

35. Plaintiffs, hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First through Third Causes of Action.

36. At all times pertinent hereto, the Defendants, their "Alternate Entities," and each of them, owed Plaintiff a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the Plaintiff. When a duty to act was imposed, as set forth herein, the Defendants, their "Alternate Entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the Plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Deceit) and Section 1710 (Fraud) and more specifically, included suggestions of fact which were not true and which Defendants, their "Alternate Entities," and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "Alternate Entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the

violation of any one such duty gave rise to a cause of action for violation of the rights of the Plaintiff as provided for in the aforementioned Civil Code sections.

37. Since on or before 1930, the Defendants, their "Alternate Entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in Plaintiff's First Cause of Action were and are hazardous to the health and safety of Plaintiff, and others in Plaintiff's position working in close proximity with such materials. The Defendants, their "Alternate Entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time. With intent to deceive Plaintiff, and others in Plaintiff's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a) Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to

work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b) Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Plaintiff's employer and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Plaintiff that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Plaintiff to work in close proximity to such materials;

(d) Defendants, their "Alternate Entities," and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his report, the altered version of which was published in

Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e) Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(f) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public

as a fact that which is not true and disseminated other facts likely to mislead Plaintiff.

Such facts did mislead Plaintiff and others by withholding the afore-described medical and

scientific data and other knowledge and by not giving Plaintiff the true facts concerning

such knowledge of danger, which Defendants, their "Alternate Entities," and each of them,

were bound to disclose;

(g) Defendants, their "Alternate Entities," and each of them, failed to warn Plaintiff

and others of the nature of said materials which were dangerous when breathed and which

could cause pathological effects without noticeable trauma, despite the fact that

Defendants, their "Alternate Entities," and each of them, possessed knowledge and were

under a duty to disclose that said materials were dangerous and a threat to the health of

persons coming into contact therewith;

(h) Defendants, their "Alternate Entities," and each of them, failed to provide

Plaintiff with information concerning adequate protective masks and other equipment

devised to be used when applying and installing the products of the Defendants, and each

of them, despite knowing that such protective measures were necessary, and that they were

under a duty to disclose that such materials were dangerous and would result in injury to

the Plaintiff and others applying and installing such material;

(i) Defendants, their "Alternate Entities," and each of them, when under a duty to

so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff

and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would,

in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.

Defendants, their "Alternate Entities," and each of them, also concealed from Plaintiff and

1   others that harmful materials to which they were exposed would cause pathological effects

2   without noticeable trauma;

3

4   (j) Defendants, their "Alternate Entities," and each of them, failed to provide

5   information of the true nature of the hazards of asbestos materials and that exposure to

6   these materials would cause pathological effects without noticeable trauma to the public,

7   including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so

8   that said physicians could examine, diagnose and treat Plaintiff and others who were

9

10   exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each

11   of them, were under a duty to so inform and said failure was misleading; and

12   (k) Defendants, their "Alternate Entities," and each of them, failed to provide

13   adequate information to physicians and surgeons retained by Plaintiff's employers and

14

15   their predecessor companies, for purposes of making physical examinations of Plaintiff

16   and other employees as to the true nature of the risk of such materials and exposure thereto

17   when they in fact possessed such information and had a duty to disclose it.

18

19   38. Defendants, their "Alternate Entities," and each of them, willfully failed and

20   omitted to complete and file First Report of Occupational Injury of Illness regarding

21   Plaintiff's injuries, as required by law, and did willfully fail and omit to file report of

22   injury and occupational disease with the State of California. Plaintiff was in the class of

23   persons with respect to whom a duty was owed to file such reports and who would have

24

25   been protected thereby if the fact of danger from products complained of had become

26   known.

27

28

39. Defendants, their "Alternate Entities," and each of them, having such aforementioned knowledge, and the duty to inform Plaintiff about the true facts, and knowing the Plaintiff did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Plaintiff to remain unaware of the true facts and to induce Plaintiff to work in a dangerous environment, all in violation of sections 1708, 1709 and 1710 of the Civil Code of the State of California.

40. The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

## SIXTH CAUSE OF ACTION

(Premises Owner/Contractor Liability)

(Against Premises and Contractor Defendants Only Listed on Exhibit "A")

41. Plaintiffs, by this reference, incorporate the allegations contained in the First through Fifth Causes of Action.

---

42. At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises described in Paragraph 6, which is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, Plaintiff might have been present at these or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

43. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

44. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

45. At all times relevant herein, Plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

46. Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

47. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, remained in control of the premises where Plaintiff was performing his work.

48. At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, owed to Plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

49. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

50. Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Plaintiff.

51. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff and others unless special precautions were taken.

52. In part, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take necessary precautions.

53. The work of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

54. The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

a. Failure to warn of asbestos and other toxic dusts;

b. Failure to suppress the asbestos-containing or toxic dusts;

c. Failure to remove the asbestos-containing and toxic dusts through the use of ventilation or appropriate means;

d. Failure to provide adequate breathing protection, i.e., approved respirators or masks;

e. Failure to inspect and/or test the air;

f. Failure to provide medical monitoring.

55. The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

56. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts

to promulgate regulations covering emission standards for hazardous air pollutants. Such state and federal standards required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

(a) Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b) Failing to segregate work involving the release of asbestos or other toxic dusts;

(c) Failing to suppress dust using prescribed ventilation techniques;

(d) Failing to suppress dust using prescribed "wet down" techniques;

(e) Failing to warn or educate Plaintiff or others regarding asbestos or other toxic substances on the premises;

(f) Failing to provide approved respiratory protection devices;

(g) Failing to ensure "approved" respiratory protection devices were used properly;

(h) Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

(i) Failing to provide adequate housekeeping and clean-up of the work place;

(j) Failing to properly warn of the hazards associated with asbestos as required by statute;

(k) Failing to properly report renovation and disturbance of asbestos-containing materials;

(l) Failing to have an asbestos removal supervisor as required by regulation;

(m) Failing to get approval for renovation as required by statutes; and

(n) Failing to maintain records as required by statute.

57. Premises Owner/Contractor Liability Defendants, and each of them, were the "statutory employer" of Plaintiff as defined by the California Labor Code and California case law.

58. Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances or statutes.

59. At all times mentioned herein, Plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

60. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

61. As a legal consequence of the foregoing, Plaintiff developed an asbestos-related illness - mesothelioma, which has caused great injury and disability as previously set forth, and Plaintiff has suffered damages as herein alleged.

62. The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

## SEVENTH CAUSE OF ACTION

(Loss of Consortium)

(Against All Defendants)

63. Plaintiff's spouse incorporates by reference each and every paragraph of the First through Sixth Causes of Action herein.

64. Plaintiffs were married at all times relevant to this action were, and are now, husband and wife.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

65. Prior to Plaintiff MICHAEL SCANLON's injuries as alleged, Plaintiff MICHAEL SCANLON was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Plaintiff has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and Plaintiff will be unable to perform such work, service and duties in the future. As a proximate result thereof, Plaintiff's spouse KWANG SCANLON has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiffs but which will be proved at the time of trial.

66. Further, as a direct and proximate result of the acts of Defendants, and each of them, and the severe injuries caused thereby to Plaintiff as set forth in this complaint, Plaintiff's spouse KWANG SCANLON has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as general nervousness as a result thereof.

67. Discovery of the cause of Plaintiff's spouse KWANG SCANLON's loss of consortium, as herein alleged , first occurred within one year of the date this complaint was filed.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them in and amount to be proved at trial in each individual case, as follows:

1. General damages according to proof;

2. Damages for medical and related expenses, according to proof;

3. Damages for loss of earning capacity, according to proof;

4. Damages for loss of earnings, according to proof;

5. Damages for Plaintiff's other economic losses, according to proof;

6. Exemplary or punitive damages according to proof;

7. Plaintiff's spouse's damages for loss of consortium according to proof;

8. Prejudgment interest, according to proof;

9. Costs of suit incurred herein; and

10. Such other and further relief as this Court may deem just and proper, including

costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and

related provisions of law.

DATED: _April 21, 2008_          BARON & BUDD, P.C

                                 By: _____
                                     Roger E. Gold, Esq. (SBN 214802)

# Exhibit B

1 | Roger Gold, Esq. (SBN 214802)
Eric Brown, Esq. (SBN229622)
2 | BARON & BUDD, P.C.
9465 Wilshire Blvd., Suite 460
3 | Beverly Hills, CA 90212
Telephone: 310/860-0476
4 | Facsimile: 310/860-0480

5 | Attorneys for Plaintiffs

6

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

9

10 | MICHAEL SCANLON and KWANG SCANLON          )   Case No.: BC389555
11 |                                           )   PLAINTIFF'S RESPONSES TO
     |          Plaintiffs,                    )   STANDARD INTERROGATORIES
12 |                                           )
     |     vs.                                 )   [SET ONE – P.I.]
13 |                                           )
     | A. W. CHESTERTON COMPANY, et al         )
14 |                                           )
     |          Defendants.                    )
15 |                                           )

16 | PROPOUNDING PARTY:   DEFENDANTS

17 | RESPONDING PARTY:    PLAINTIFF, Mike  Scanlon

18 |                          RESPONSES

19 | **RESPONSE TO STANDARD INTERROGATORY NO. 1.**

20 |         Full name:            Mike  Scanlon

     |         Present address:     P.O. Box 7408, Laguna Niguel, California 92607
21 |
     |         Date of birth:       March 14, 1943
22 |
     |         Place of birth       Pasadena, California
23 |
     |         Social Security No.:  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
24 |
     |         Height: 5' 10"        Weight:    190 pounds
25 |
     |         Driver's License state of issuance:      California
26 |
     |         Driver's License number:        H0782466
27

28 | PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

**RESPONSE TO STANDARD INTERROGATORY NO. 2.**    Plaintiff has been known by these other names, including nicknames, during these inclusive dates:

    From 1943 to Present:    Michael

**RESPONSE TO STANDARD INTERROGATORY NO. 3.**    Plaintiff has resided at the following addresses during the dates shown for the period of 10 years prior to the date of these interrogatories:

    From 1987 to 2002:    2248 Apple Creek, Los Angeles, Hacienda Heights, California

**RESPONSE TO STANDARD INTERROGATORY NO. 4.**

    Spouse:                           Kwang C. Scanlon

    Spouse's age:               63

    Spouse's present address:      P.O. Box 7408, Laguna Niguel, California 92607

    Date of marriage         July 1984

    Place of marriage       Las Vegas, Nevada

**RESPONSE TO STANDARD INTERROGATORY NO. 5.**

    Previous spouse:         Pat Bonnell

    Date of marriage:        February 1965

    Place of marriage:       San Gabriel, California

    Circumstances under which marriage was dissolved or terminated:    Irreconcilable Differences

**RESPONSE TO STANDARD INTERROGATORY NO. 6.**

    a.    Spouse's employer:    Remax

        Spouse's employer's address:  33882 Niguel Road, Dana Point, California 92629

    b.    Spouse is employed on a full time basis.

    c.    Average salary: $40,000 per year

**RESPONSE TO STANDARD INTERROGATORY NO. 7.**

Plaintiff's children:

    Name: Debbie Scanlon Wall

    Age:   42

    Present address:      2112 Seccombe Ct., Walnut Creek, California 94598

- 2 -

N:\_CLIENTS\S\SCANLON.M.CA\MS  Standard living.rogs.wpd

PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

Name: Michelle K. Scanlon

Age:   23

Present address:        P. O. Box 7452, Laguna Niguel, California 92607

**RESPONSE TO STANDARD INTERROGATORY NO. 8.**

    a.    Full name:    Michelle K. Scanlon

            Present residence address:    P. O. Box 7452, Laguna Niguel, California

            92607

    b.    Relationship to Plaintiff:    Daughter

            Degree of financial dependency upon Plaintiff:    100%

    c.    Amounts contributed from all sources to his support during the five years

            preceding Plaintiff's responses to these interrogatories:    $150,000

    d.    Last year claimed as dependent by Plaintiff for federal income tax purposes:

            yes

**RESPONSE TO STANDARD INTERROGATORY NO. 9.**    **(a-d)** No members of
Plaintiff's immediate family (i.e., parents, siblings, children and grandchildren) are suffering
or have suffered from any respiratory impairment, illness or condition.

**RESPONSE TO STANDARD INTERROGATORY NO. 10.**

    a.    Name:  Charles Scanlon

            Nature of cancer:    Prostrate Cancer

            Cancer site:    Prostrate

    b.    Date cancer first developed and/or was diagnosed:    2002

    c.    Name/address of treating/diagnosing physician:    Unknown

**RESPONSE TO STANDARD INTERROGATORY NO. 11.**    **(a-c)** No members of
Plaintiff's immediate family (i.e., parents, siblings, children and grandchildren) died
because of cancer or a pulmonary condition or currently has a pulmonary disease or cancer.

**RESPONSE TO STANDARD INTERROGATORY NO. 12.**    Plaintiff completed his
Masters in 1975 at Cal State Poly University in Pomona, California.

**RESPONSE TO STANDARD INTERROGATORY NO. 13.**

    a.    Name/address of school or other institution:  California Teaching Credential

    b.    Dates attended:      1972

- 3 -

PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

1    c.    Nature of education and/or training received:    Teaching Credential

2    d.    Type of degree or certificate received:    Teaching Certificate

**RESPONSE TO STANDARD INTERROGATORY NO. 14.**

3

4    a.    Date license issued:    1978

    b.    Name/address of agency issuing license:    California Dept. of Real Estate

5    c.    Profession, trade or occupation for which license was issued:    Broker's

6        License

7    d.    Plaintiff's license was never suspended or revoked.

**RESPONSE TO STANDARD INTERROGATORY NO. 15.**    Plaintiff states he has

8
never been convicted of a felony.

9

**RESPONSE TO STANDARD INTERROGATORY NO. 16.**

10    a.    Branch of service:    U.S. Navy

11        Serial number:    537-94-55

12        Highest rank or grade held:    E3

13    b.    Dates of service:    1964 - 1966

14    c.    Type of discharge:    Honorable

15    d.    Locations, including ships, and dates of service for each:

        From 1964-1966   Plaintiff served onboard the USS Piedmont (AD-17) and

16        in the home port of San Diego, California and foreign ports

17    e.    Specific nature of duties at each of the above locations or ships:

18        Plaintiff worked throughout the ship, a destroyer tender, and for an extended

19        period in San Diego where he saw work to various types of equipment related

        to the Piedmont and other vessels the Piedmont was servicing and performed

20        work scraping the decks and flooring of the ship.

21    f.    Description of work environment at each of the above locations or ships:

22        Plaintiff worked throughout the ship, a destroyer tender, and for an extended

23        period in San Diego where he saw work to various types of equipment related

        to the Piedmont and other vessels the Piedmont was servicing and performed

24        work scraping the decks and flooring of the ship.

25    g.    Veteran's Administration number:    Plaintiff has not applied for Veteran's

26        Benefits

27

- 4 -

28    PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

**RESPONSE TO STANDARD INTERROGATORY NO. 17.**   As a member of the Armed Forces, Plaintiff received or participated in correspondence courses while training to be a Yeoman.

**RESPONSE TO STANDARD INTERROGATORY NO. 18.**

    a.    Name/address of Plaintiff's present employer:    Remax, 33882 Niguel Rd., Dana Point, California 92629

    b.    Name/address of Plaintiff's immediate supervisor, boss or foreman: Monica Allbright

    c.    Nature of Plaintiff's work:    Real Estate Sales

          Plaintiff's job title:    Real Estate Agent

    d.    Plaintiff normally works 10 hours per week.

    e.    Date Plaintiff's employment began:    January 2, 2007

          Starting position if different from current position:    Not Applicable

    f.    Plaintiff's present rate of pay:  Commission

    g.    N/A.

**RESPONSE TO STANDARD INTERROGATORY NO. 19.**

See answer to Standard Interrogatory No. 18 above.

**RESPONSE TO STANDARD INTERROGATORY NO. 20.**   Plaintiff currently receives Social Security in the amount of $1,700 on a monthly basis from March 2008 and will continue to receive this for an unknown period at this time.

**RESPONSE TO STANDARD INTERROGATORY NO. 21.**   **(a-b)** Plaintiff was unable to work for two months in 2001 due to Testicular Cancer.  Plaintiff continues to work, at a lessened capacity however, due to his malignant mesothelioma.

**RESPONSE TO STANDARD INTERROGATORY NO. 22.**   Plaintiff has never been discharged or voluntarily left a position due to health problems.

**RESPONSE TO STANDARD INTERROGATORY NO. 23.**   **(a-d)** Plaintiff has never been a member of any labor union.

**RESPONSE TO STANDARD INTERROGATORY NO. 24.**   **(a-g)** Plaintiff did not come into contact with chromium, cadmium, mercury, or beryllium, or materials, alloys or pigments containing any of these metals while working for any employer.

1 **RESPONSE TO STANDARD INTERROGATORY NO. 25.**   (a-f)  Plaintiff

2 personally performed or worked adjacent to others performing the following job duties:

3 Plaintiff was employed by U.S. Navy from 1964 -1966 as a Yeoman, and Office worker
onboard the USS Piedmont (AD-17) and in the home port of San Diego, California and

4 foreign ports.  Plaintiff was worked throughout the ship, a destroyer tender, and for an

5 extended period in San Diego where he saw work to various types of equipment related to

6 the Piedmont and other vessels the Piedmont was servicing and performed work scraping

7 the decks and flooring of the ship.  From 1966 - 1969 Plaintiff was employed as a School
custodian at Various Elementary Schools in San Diego, California and any potential

8 exposure to asbestos from this work is unknown.  Mr. Scanlon has also performed home

9 remodel work in the mid-late 1970's and in so doing has worked with and around joint

10 compound products and drywall products, flooring and stucco products as well.   Plaintiffs

11 investigation and discovery is continuing and on going.

12 **RESPONSE TO STANDARD INTERROGATORY NO. 26.**   (a-f)  Plaintiff was

13 employed by U.S. Navy from 1964 -1966 as a Yeoman, and Office worker onboard the USS
Piedmont (AD-17) and in the home port of San Diego, California and foreign ports.

14 Plaintiff was worked throughout the ship, a destroyer tender, and for an extended period in

15 San Diego where he saw work to various types of equipment related to the Piedmont and

16 other vessels the Piedmont was servicing and performed work scraping the decks and

17 flooring of the ship.  From 1966 - 1969 Plaintiff was employed as a School custodian at

18 Various Elementary Schools in San Diego, California and any potential exposure to asbestos

19 from this work is unknown.  Mr. Scanlon has also performed home remodel work in the
mid-late 1970's and in so doing has worked with and around joint compound products and

20 drywall products, flooring and stucco products as well.   Plaintiffs investigation and

21 discovery is continuing and on going.

22 **RESPONSE TO STANDARD INTERROGATORY NO. 27.**    Plaintiff was employed

23 by U.S. Navy from 1964 -1966 as a Yeoman, and Office worker onboard the USS Piedmont
(AD-17) and in the home port of San Diego, California and foreign ports.  Plaintiff was

24 worked throughout the ship, a destroyer tender, and for an extended period in San Diego

25 where he saw work to various types of equipment related to the Piedmont and other vessels

26 the Piedmont was servicing and performed work scraping the decks and flooring of the ship.

27

28

1  From 1966 - 1969 Plaintiff was employed as a School custodian at Various Elementary

2  Schools in San Diego, California and any potential exposure to asbestos from this work is

3  unknown.  Mr. Scanlon has also performed home remodel work in the mid-late 1970's and

   in so doing has worked with and around joint compound products and drywall products,

4  flooring and stucco products as well.   Plaintiffs investigation and discovery is continuing

5  and on going.

6  **RESPONSE TO STANDARD INTERROGATORY NO. 28.**   **(a-d)**  Plaintiff does not

7  believe he was ever exposed to asbestos other than at the times or locations identified in

8  response to Interrogatory Nos. 26 and 27.

   **RESPONSE TO STANDARD INTERROGATORY NO. 29.**   **(a-h)**  To the best of

9  Plaintiff's knowledge, none of his employers ever suggested or recommended that he should

10 use any device to reduce his possible exposure to, or inhalation of asbestos.

11 **RESPONSE TO STANDARD INTERROGATORY NO. 30.**   **(a-b)**  To the best of

12 Plaintiff's knowledge, Plaintiff never saw any signs, warnings, labels, instructions, or safety

13 precautions pertaining to the use, storage, or disposal of asbestos or asbestos-containing

   products.

14 **RESPONSE TO STANDARD INTERROGATORY NO. 31.**   **(a-g)**  Plaintiff began

15 experiencing breathing problems in 2006.  His symptoms included shortness of breath and a

16 cough.  These symptoms became progressively worse.  On September 25, 2007 a

17 diaphragmatic excisional biopsy was performed by Dr. Amir Abolhoda.  The biopsy

18 revealed malignant mesothelioma  See also Physician List attached hereto.  Plaintiff's expert

   report linking the Plaintiff's mesothelioma with asbestos exposure will be supplemented.

19 **RESPONSE TO STANDARD INTERROGATORY NO. 32.**

20      a.      Date Plaintiff made the complaint:     April 2007

21      b.      Nature of the complaint Plaintiff made:     Plaintiff still works, but at a lesser

22              capacity, due to the progression of his Mesothelioma and the treatment he

23              received and is currently receiving for his illness.

24      c.      Name/address of Plaintiff's employer:        Remax, 33882 Niguel Road,

               Dana Point, California 92629

25              Name of the person to whom Plaintiff made the complain:    Monica Allbright

26

27

28

N:\CLIENTS\S\SCANLON.M.CA\MS. Standard living resps.wpd

PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

1 | **RESPONSE TO STANDARD INTERROGATORY NO. 33.**   **(a-c)** Plaintiff has no
2 | reason to believe or suspect that his complaints, symptoms, adverse reactions or injuries
3 | described in his response to Standard Interrogatory No. 31 were caused by anything other
  | than exposure to asbestos (including, but not limited to , smoking, heart disease, exposure to
4 | lung irritants other than asbestos, or pulmonary diseases such as emphysema, pneumonia,
5 | asthma, or bronchitis).

6 | **RESPONSE TO STANDARD INTERROGATORY NO. 34.**   Plaintiff continues to
7 | work.

8 | **RESPONSE TO STANDARD INTERROGATORY NO. 35.**   Plaintiff suffers both
  | physical complications and mental anguish.  Plaintiff has difficulty breathing, is bound to
9 | fits of coughing, and cannot enjoy physical activities and other aspects of daily life.
10 | Plaintiff is aware that he has a terminal disease that cannot be cured, and must cope with the
11 | reality of impending death.  The amount of general damages is in excess of $1,000,000.00,
12 | to be determined according to proof at trial.

13 | **RESPONSE TO STANDARD INTERROGATORY NO. 36.**   **(a-j)** See Plaintiff's
14 | Tobacco Questionnaire attached hereto.
   | **RESPONSE TO STANDARD INTERROGATORY NO. 37.**   **(a-d)** To the best of
15 | Plaintiff's knowledge, Plaintiff has not given a smoking history to a physician, nurse,
16 | insurance carrier, worker's compensation board, or employer that is inconsistent in any way
17 | with the smoking history given in Plaintiff's Tobacco Questionnaire.

18 | **RESPONSE TO STANDARD INTERROGATORY NO. 38.**   Plaintiff has provided, or
19 | shortly will provide authorizations necessary for Defendants to obtain hospital billing
   | information, including total hospital expenses, if any, that Plaintiff has incurred to date as a
20 | result of the injuries, complaints, etc., which Plaintiff attributes to his exposure to asbestos,
21 | itemizing each charge, if more than one hospital is involved.

22 | **RESPONSE TO STANDARD INTERROGATORY NO. 39.**   Plaintiff has provided, or
23 | shortly will provide authorizations necessary for Defendants to obtain medical billing
   | information, including the total medical expenses (other than hospitalization) which Plaintiff
24 | has incurred, or which has been incurred on your behalf, to date, as a result of the injuries,
25 | complaints, etc. which Plaintiff attributes to his exposure to asbestos, itemizing such
26 | charges.

27 |

N:\_CLIENTS\S\SCANLON.M.CA\MS  Standard living rogs.wpd

28 |

1  **RESPONSE TO STANDARD INTERROGATORY NO. 40.**   (a-c)  No person has
2  contributed any money, goods, services or benefits of any kind, during the previous ten
3  years for the support of either Plaintiff or Plaintiff's spouse.

4  **RESPONSE TO STANDARD INTERROGATORY NO. 41.**   Plaintiff is unaware of
   any insurance company, union, or other person, firm or corporation that has paid for or
5  reimbursed Plaintiff, or anyone on Plaintiff's behalf for, or has become obligated to pay for
6  or reimburse Plaintiff or anyone on Plaintiff's behalf for, any medical or hospital expense
7  incurred by his exposure to asbestos.

8  **RESPONSE TO STANDARD INTERROGATORY NO. 42.**   (a-f)  Plaintiff will
   supplement this information in the form of an expert economic report.

9  **RESPONSE TO STANDARD INTERROGATORY NO. 43.**   Plaintiff will supplement
10  this information in the form of an expert economic report.

11  **RESPONSE TO STANDARD INTERROGATORY NO. 44.**   (a-c)  Plaintiff is
12  unaware of any insurance company, union, or other person, firm or corporation that has paid
13  for or reimbursed Plaintiff for, or has become obligated to pay for or reimburse Plaintiff or
   anyone on Plaintiff's behalf for, any sums of money (excluding medical or hospital
14  expenses) or provided any disability or other benefits, loss of earnings, property damage or
15  other item resulting from Plaintiff's exposure to asbestos.

16  **RESPONSE TO STANDARD INTERROGATORY NO. 45.**   (a-f)  Plaintiff suffers
17  both physical complications and mental anguish.  Plaintiff has difficulty breathing, is bound
18  to fits of coughing, and cannot enjoy physical activities and other aspects of daily life.
   Plaintiff is aware that he has a terminal disease that cannot be cured, and must cope with the
19  reality of impending death.  The amount of general damages is in excess of $1,000,000.00,
20  to be determined according to proof at trial.

21  **RESPONSE TO STANDARD INTERROGATORY NO. 46.**   Other than potential
22  attorney-client privileged communications, Plaintiff never received newspapers, newsletters
23  or any other publications which discussed the subject of worker exposure to asbestos.

24  **RESPONSE TO STANDARD INTERROGATORY NO. 47.**   (a-e)  To the best of
   Plaintiff's knowledge, he has never attended any international  or local union meetings,
25  seminars, conferences or conventions where the subjects of occupational health and, in
26  particular, exposure to asbestos were discussed.

27

28
NA_CLIENTS\S\SCANLON.M.CA\MS  Standard living regs.wpd
PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

1   **RESPONSE TO STANDARD INTERROGATORY NO. 48.**   (a-e)  To the best of

2   Plaintiff's knowledge, he has never been informed by any person in a local or international

3   union of any possible hazards associated with exposure to asbestos.

    **RESPONSE TO STANDARD INTERROGATORY NO. 49.**   (a-f)  To the best of

4   Plaintiff's knowledge, other than communications with Plaintiff's counsel or their agents,

5   Plaintiff has never completed, in whole or part, or been requested to complete a

6   questionnaire provided to Plaintiff by any labor union, relating to the subjects of

7   occupational health and/or exposure to asbestos.

8   **RESPONSE TO STANDARD INTERROGATORY NO. 50.**   To the best of Plaintiff's

    knowledge, Plaintiff has never received "dirty" pay, "dusty" pay, "asbestos" pay or any

9   other similar additional compensation from any employer for his exposure to asbestos.

10  **RESPONSE TO STANDARD INTERROGATORY NO. 51.**   (a-b)  Plaintiff did not at

11  any time receive, have knowledge of or possess a tangible copy of any advice, publication,

12  warning, order, directive, requirement or recommendation, whether written or oral, which

13  purported to advise or warn Plaintiff of the possible harmful effects of exposure to, or

    inhalation of, asbestos or advise or recommend as to techniques, methods or equipment

14  which would serve to reduce or guard against such potentially dangerous exposure.

15  **RESPONSE TO STANDARD INTERROGATORY NO. 52.**   (a-c)  This question is

16  not applicable, as Plaintiff's response to the preceding interrogatory is that Plaintiff did not

17  at any time receive, have knowledge of or possess a tangible copy of any advice,

18  publication, warning, order, directive, requirement or recommendation, whether written or

19  oral, which purported to advise or warn Plaintiff of the possible harmful effects of exposure

    to, or inhalation of, asbestos or advise or recommend as to techniques, methods or

20  equipment which would serve to reduce or guard against such potentially dangerous

21  exposure.

22  **RESPONSE TO STANDARD INTERROGATORY NO. 53.**   (a-d)  Plaintiff has never

23  made a claim for personal injury or filed an action or proceeding in any court or other

    forum, other than in the present matter.

24  **RESPONSE TO STANDARD INTERROGATORY NO. 54.**

25      a.      Date claim was filed:  1975

26      b.      Basis of claim:        Broken Leg

27

N:\_CLIENTS\S\SCANLON.M.CA\MS  Standard living rogs.wpd

28   PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

1    c.    Organization receiving claim:    El Monte School District

2    d.    Present status of claim:        Completed

3    e.    Plaintiff did receive benefits as a result of the claim.

     f.    Amount of any benefit received, if applicable:    Plaintiff is unable to recall

4    g.    Date Plaintiff first received such benefits:    1975

5    **RESPONSE TO STANDARD INTERROGATORY NO. 55.**

6    a.    Name and address of each insurance carrier and number:    Plaintiff is unable

7          to recall at the present moment his life insurance carrier.  Plaintiff has an

           Accidental Death Policy with C.U.N.A.   Plaintiff will supplement his

8          policy numbers.

9    b.    Amount of insurance coverage provided by the policy: Plaintiff is unable to

10         recall the amount of Life Insurance he has.  Plaintiff is covered by $25,000 in

11         Accidental Death.

12   c.    Date of effective period of the policy:        Life Insurance - 2001 and

13         Accidental Death - 1998.

14   d.    Name and address of the person or entity having possession of the policy:

15         Mike Scanlon, P.O. Box 7408, Laguna Niguel, California 92607

     e.    Named insured of the insured policy: Mike Scanlon

16   f.    Type of policy:        Life Insurance, Accidental Death

17   g.    Plaintiff did not undergo any medical examination incidental to applying for,

18         obtaining or retaining the policy.

     **RESPONSE TO STANDARD INTERROGATORY NO. 56.**   **(a-e)**  Plaintiff has never

19   been refused insurance coverage for health, life, disability or accident insurance.

20   **RESPONSE TO STANDARD INTERROGATORY NO. 57.**    **(a-h)**  See Response to

21   Standard Interrogatory No. 54.

22   **RESPONSE TO STANDARD INTERROGATORY NO. 58.**    **(a-c)**  Plaintiff will

23   provide authorizations necessary for Defendant to obtain Plaintiff's medical records.  See

     also Plaintiff's Physician List and Hospitalization List attached hereto.

24   **RESPONSE TO STANDARD INTERROGATORY NO. 59.**    **(a-g)**  Plaintiff was

25   employed by U.S. Navy from 1964 -1966 as a Yeoman, and Office worker onboard the USS

26   Piedmont (AD-17) and in the home port of San Diego, California and foreign ports.

27

                              - 11 -          NA_CLIENTS:S:SCANLON.M.CA:MS  Standard living rogs.wpd

28

1   Plaintiff was worked throughout the ship, a destroyer tender, and for an extended period in
2   San Diego where he saw work to various types of equipment related to the Piedmont and
3   other vessels the Piedmont was servicing and performed work scraping the decks and
4   flooring of the ship.  From 1966 - 1969 Plaintiff was employed as a School custodian at
    Various Elementary Schools in San Diego, California and any potential exposure to asbestos
5   from this work is unknown.  Mr. Scanlon has also performed home remodel work in the
6   mid-late 1970's and in so doing has worked with and around joint compound products and
7   drywall products, flooring and stucco products as well.   Plaintiffs investigation and
8   discovery is continuing and on going.  Plaintiff advises that due to the length of time he was
    exposed to asbestos, the information contained therein may not be complete.  Plaintiff also
9   will supplement these responses with a copy of Plaintiff's Social Security records when
10  received.

11  **RESPONSE TO STANDARD INTERROGATORY NO. 60.**   **(a-c)** Plaintiff was
12  employed by U.S. Navy from 1964 -1966 as a Yeoman, and Office worker onboard the USS
13  Piedmont (AD-17) and in the home port of San Diego, California and foreign ports.
    Plaintiff was worked throughout the ship, a destroyer tender, and for an extended period in
14  San Diego where he saw work to various types of equipment related to the Piedmont and
15  other vessels the Piedmont was servicing and performed work scraping the decks and
16  flooring of the ship.  From 1966 - 1969 Plaintiff was employed as a School custodian at
17  Various Elementary Schools in San Diego, California and any potential exposure to asbestos
18  from this work is unknown.  Mr. Scanlon has also performed home remodel work in the
19  mid-late 1970's and in so doing has worked with and around joint compound products and
    drywall products, flooring and stucco products as well.   Plaintiffs investigation and
20  discovery is continuing and on going.  Plaintiff also will supplement these responses with a
21  copy of Plaintiff's Social Security records when received.

22  **RESPONSE TO STANDARD INTERROGATORY NO. 61.**      To the best of Plaintiff's
23  knowledge, none of his employers provided safety equipment (including, but not limited to
24  ventilation systems, respirators or protective clothing) to protect against the inhalation of
    lung irritants or toxic substances.

25

26

27

28

- 12 -

N:\_CLIENTS\S\SCANLON.M.CA\MS  Standard Iving roqs.wpd

PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

1  **RESPONSE TO STANDARD INTERROGATORY NO. 63.**   (a-u)  Plaintiff has
2  provided, or shortly will provide authorizations necessary for Defendant to obtain medical
3  records.  See also Plaintiff's Physician List and Hospitalization List attached hereto.

   **RESPONSE TO STANDARD INTERROGATORY NO. 64.**   (a-e)  See Response to
4  Standard Interrogatory No. 63, above.

5  **RESPONSE TO STANDARD INTERROGATORY NO. 65.**   (a-d)  Plaintiff has
6  provided, or shortly will provide authorizations necessary for Defendants to obtain any
7  medical records of Plaintiff which would reflect the requested information, if it exists,
8  including if Plaintiff ever received any nursing care or housekeeping services, or was
   confined to bed or home as a result of any injury, illness, emotional or psychological illness
9  or distress, the dates during which Plaintiff received the nursing care or housekeeping
10 services or was confined to bed or home, the addresses where such confinement took place,
11 the name, address and relationship to Plaintiff of all persons administering any care or
12 services to Plaintiff and the injury, physical condition or illness which necessitated such care
13 or services.

   **RESPONSE TO STANDARD INTERROGATORY NO. 66.**     Plaintiff had no
14 employer or prospective employer who either required or made available physical
15 examinations, including x-rays, for their employees.  See also Plaintiff's Physician List and
16 Hospitalization List attached hereto.

17 **RESPONSE TO STANDARD INTERROGATORY NO. 67.**   (a-h)  Plaintiff began
18 experiencing breathing problems in 2006.  His symptoms included shortness of breath and a
   cough.  These symptoms became progressively worse.  On September 25, 2007 a
19 diaphragmatic excisional biopsy was performed by Dr. Amir Abolhoda.  The biopsy
20 revealed malignant mesothelioma.  See also Physician List attached hereto.  Plaintiff's
21 expert report linking the Plaintiff's mesothelioma with asbestos exposure will be
22 supplemented.

23 **RESPONSE TO STANDARD INTERROGATORY NO. 68.**     The only known cause of
   mesothelioma is exposure to asbestos.  Plaintiff's expert report linking the Plaintiff's
24 mesothelioma with asbestos exposure will be supplemented.

25

26

27
                                    - 13 -               N:\_CLIENTS\S\SCANLON.M.CA\MS Standard living.rogs.wpd
28            PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

1 **RESPONSE TO STANDARD INTERROGATORY NO. 69.**   **(a-c)**  See Response to

2 Standard Interrogatory no. 65.

3 **RESPONSE TO STANDARD INTERROGATORY NO. 70.**   **(a-h)**  See Response to

Standard Interrogatory No. 67.

4 **RESPONSE TO STANDARD INTERROGATORY NO. 71.**   See Response to

5 Standard Interrogatory No. 68.

6 **RESPONSE TO STANDARD INTERROGATORY NO. 72.**   **(a-c)**  See Response to

7 Standard Interrogatory No. 65.

8 **RESPONSE TO STANDARD INTERROGATORY NO. 73.**   See Plaintiff's

Hospitalization List, attached hereto.

9 **RESPONSE TO STANDARD INTERROGATORY NO. 74.**   See Plaintiff's Physician

10 List, attached hereto.

11 **RESPONSE TO STANDARD INTERROGATORY NO. 75.**   **(a-g)**  See Plaintiff's

12 Hospitalization List attached hereto.

13 **RESPONSE TO STANDARD INTERROGATORY NO. 76.**   **(a-c)**  See Plaintiff's

Physician and Hospitalization Lists, attached hereto.

14 **RESPONSE TO STANDARD INTERROGATORY NO. 77.**   **(a-d)**  To the best of

15 Plaintiff's knowledge, he has not been treated or examined by a physician, nurse, or

16 therapist other than those occasions identified in Plaintiff's Physician List and Hospital List

17 attached hereto.

18 **RESPONSE TO STANDARD INTERROGATORY NO. 78.**   **(a-f)**  Plaintiff has

provided, or shortly will provide the authorizations necessary for Defendant to obtain the

19 requested information.

20

21 ///

22

23 ///

24

25 ///

26 ///

27

N:\_CLIENTS\S\SCANLON.M.CA\MS  Standard living rogs.wpd

28 PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

1  **RESPONSE TO STANDARD INTERROGATORY NO. 79.**   (a-e)  See Response to

2  Standard Interrogatory No. 78.

3

4  Dated: *April 23*, 2008

5                                          BARON & BUDD, P.C.

6

7                              By _____

8                                  *for*  Eric Brown
                                   Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                           - 15 -              N:\_CLIENTS\SCANLON.M.CA\MS  Standard living rogs.wpd

28  PLAINTIFF'S RESPONSES TO STANDARD INTERROGATORIES

# Exhibit C

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH

## CERTIFICATE OF DEATH

STATE FILE NUMBER — 3201019005969

LOCAL REGISTRATION NUMBER

**DECEDENT'S PERSONAL DATA**

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| MICHAEL | FRANK | SCANLON |

- AKA, ALSO KNOWN AS — Include Full AKA (FIRST, MIDDLE, LAST)
- 4. DATE OF BIRTH mm/dd/ccyy: 03/14/1943
- 5. AGE Yrs.: 66
- 6. SEX: M
- 7. BIRTH STATE/FOREIGN COUNTRY: CA
- 10. SOCIAL SECURITY NUMBER: 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
- 11. EVER IN U.S. ARMED FORCES?: X YES
- 12. MARITAL STATUS: MARRIED
- 7. DATE OF DEATH mm/dd/ccyy: 02/13/2010
- 8. HOUR: 0945
- 12. EDUCATION: HS GRADUATE
- 13. DECEDENT HISPANIC/LATINO: YES
- 14. DECEDENT'S RACE: WHITE
- 15. USUAL OCCUPATION: REALTOR
- 16. KIND OF BUSINESS OR INDUSTRY: REAL ESTATE
- 17. YEARS IN OCCUPATION: 35

**USUAL RESIDENCE**

- 20. DECEDENT'S RESIDENCE: 24551 RUE DE GAURGUIN
- 21. CITY: LAGUNA NIGUEL
- 22. COUNTY/PROVINCE: ORANGE
- 23. ZIP CODE: 92677
- 24. YEARS IN COUNTY: 8
- 25. STATE/FOREIGN COUNTRY: CA

**INFORMANT**

- 26. INFORMANT'S NAME, RELATIONSHIP: KWANG SCANLON, WIFE
- 27. INFORMANT'S MAILING ADDRESS: 24551 RUE DE GAURGUIN, LAGUNA NIGUEL, CA 92677

**SPOUSE AND PARENT INFORMATION**

- 28. NAME OF SURVIVING SPOUSE—FIRST: KWANG
- MIDDLE: YI
- LAST (BIRTH NAME):
- 32. NAME OF FATHER/PARENT—FIRST: CHARLES
- MIDDLE:
- LAST: SCANLON
- BIRTH STATE: NY
- 36. NAME OF MOTHER/PARENT—FIRST: ELIZABETH
- MIDDLE:
- LAST (BIRTH NAME): GROW
- BIRTH STATE: CA

**FUNERAL DIRECTOR / LOCAL REGISTRAR**

- 40. DISPOSITION DATE mm/dd/ccyy: 02/24/2010
- 41. PLACE OF FINAL DISPOSITION: SACRAMENTO VALLEY NATIONAL CEMETERY, 5810 MIDWAY ROAD, DIXON, CA 95620
- 42. TYPE OF DISPOSITION: BU
- 43. SIGNATURE OF EMBALMER: PATRICK MCCORMICK
- LICENSE NUMBER: EMB9049
- 44. NAME OF FUNERAL ESTABLISHMENT: MC CORMICK & SON
- FD1312
- 46. SIGNATURE OF LOCAL REGISTRAR: JONATHAN FIELDING, MD
- 47. DATE mm/dd/ccyy: 02/16/2010

**PLACE OF DEATH**

- 101. PLACE OF DEATH: CITY OF HOPE
- 103. COUNTY: LOS ANGELES
- 102. IF HOSPITAL, SPECIFY ONE: X IP
- 104. IF OTHER THAN HOSPITAL, SPECIFY ONE:
- 105. FACILITY ADDRESS OR LOCATION WHERE FOUND: 1500 E. DUARTE RD
- 106. CITY: DUARTE

**CAUSE OF DEATH**

- 107. CAUSE OF DEATH
  - IMMEDIATE CAUSE (A): RESPIRATORY FAILURE — MINS
  - DUE TO (B): MESOTHELIOMA - NOT WORK RELATED — 28MONS
- 108. DEATH REPORTED TO CORONER?: X YES
- 109. BIOPSY PERFORMED?: X YES
- 110. AUTOPSY PERFORMED?: YES
- 111. USED IN DETERMINING CAUSE?: YES
- 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107: NO
- 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112: 09/--/2007 STERNOTOMY WITH RESECTION OF MASS

**PHYSICIAN'S CERTIFICATION**

- 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
  - Decedent Attended Since: 02/05/2010
  - Decedent Last Seen Alive: 02/12/2010
- 115. SIGNATURE AND TITLE OF CERTIFIER: JOANNE ELIZABETH MORTIMER M.D.
- 116. LICENSE NUMBER: G87336
- 117. DATE mm/dd/ccyy: 02/16/2010
- 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE: JOANNE ELIZABETH MORTIMER M.D. 1500 E DUARTE ROAD, DUARTE, CA 91010

**CORONER'S USE ONLY**

- 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
- 120. MANNER OF DEATH: Natural
- 121. INJURED AT WORK: YES
- 122. PLACE OF INJURY
- 123. DESCRIBE HOW INJURY OCCURRED
- 125. LOCATION OF INJURY
- 126. SIGNATURE OF CORONER / DEPUTY CORONER
- 127. DATE mm/dd/ccyy
- 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER

**STATE REGISTRAR**

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|

*1000000142902*

This is a true certified copy of the record filed in the County of Los Angeles Department of Public Health if it bears the Registrar's signature in purple ink.

DATE ISSUED — *Jonathan E Fielding* — 037 — FEB 23 2010

Director of Public Health and Registrar

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

H D 1 7 5 9 3 5 5



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# Exhibit D

1  John Langdoc, Esq. (SBN 235509)
   Denyse Clancy, Esq. (SBN 255276)
2  Eric Policastro, Esq. (SBN 264605)
   BARON & BUDD, P.C.
3  3102 Oak Lawn Avenue, Suite 1100
   Dallas, Texas  75219
4  Telephone: 214/521-3605
                800/222-2766
5  Facsimile: 214/520-1181

6  Attorneys for Plaintiff

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 13 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A.E. LaFLEUR-CLAYTON

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8           COUNTY OF LOS ANGELES - CENTRAL DISTRICT

9                                                    B C 4 4 3 6 4 7

10 KWANG SCANLON, Individually and as          )  CASE NO.
   Successor-In-Interest to MICHAEL SCANLON,   )
11 Deceased;                                    )
                                                )  **COMPLAINT FOR**
12              Plaintiff,                       )  **WRONGFUL DEATH**
                                                )  **AND SURVIVAL**
13 vs.                                          )
                                                )  [COMPLEX ASBESTOS
14 ASBESTOS COMPANIES;                          )  LITIGATION-SUBJECT
   A. W. CHESTERTON COMPANY; ALFA              )  TO THE GENERAL
15 LAVAL, INC.; AMERICAN STANDARD, INC.,       )  ORDERS CONTAINED
   individually and as successor-in-interest to The )  IN FILE NO. C700000].
16 TRANE COMPANY; ARMSTRONG                    )
   INTERNATIONAL, INC.; ASTENJOHNSON,           )
17 INC. (f/k/a Asten, Inc.); BUFFALO PUMPS, INC.; )  Causes of Action
   CBS CORPORATION, f/k/a Viacom, Inc.          )  1. Negligence
18 (successor-by-merger to CBS Corporation,     )  2. Strict Liability
   successor-by-merger to Westinghouse Electric  )  3. Loss of Consortium
19 Corporation); CLEAVER-BROOKS, INC.,          )
   individually and f/k/a Aqua-Chem, Inc.;      )
20 CRANE CO., individually and as successor in   )
   interest to Chapman Valves; CROWN CORK &    )
21 SEAL COMPANY, INC. (individually and as      )
   successor-in-interest to Mundet Cork Company); )
22 DOUGLASS INSULATION COMPANY, INC.;           )
   FLOWSERVE CORPORATION, f/k/a The Duriron     )
23 Company; FMC CORPORATION, individually, on    )
   behalf of and as successor-in-interest to Peerless )
24 Pump Co., John Bean Pumps, Chicago Pumps,    )
   Dayton-Dowd Pump Co., Ohio Apex Division, and )
25 Link Belt Company; FOSTER WHEELER           )
   ENERGY CORPORATION; GOULDS PUMPS            )
26 INCORPORATED; HENRY VOGT MACHINE            )
   COMPANY; INGERSOLL-RAND COMPANY;            )
27 JOHN CRANE, INC.;J.T. THORPE & SON, INC.;     )
   MECHANICAL DRIVES & BELTING (f/k/a L.A.      )
28 Rubber Company); METALCLAD INSULATION        )

BY FAX

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL          Page 1

CORPORATION; OWENS-ILLINOIS, INC. )
QUINTEC INDUSTRIES, INC., individually and )
successor-by-merger to Western Fibrous Glass )
Products Company (f/k/a Western Fiberglas )
Company); THOMAS DEE ENGINEERING CO.; )
TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A )
Shipyard); WARREN PUMPS, L.L.C., f/k/a Warren )
Pumps, Inc.; YARWAY CORPORATION; )
DOES 1-100 )
                                                  )
          Defendants.                             )
_____  )

COME NOW, Plaintiff KWANG SCANLON, Individually and as Successor-In-Interest

to MICHAEL SCANLON, Deceased and for causes of action against Defendants.  Plaintiff

complains and alleges as follows:

## GENERAL ALLEGATIONS

1.      Kwang Scanlon appears individually and as successor-in-interest to  Decedent

Michael Scanlon.  Plaintiff is an heir at law of Decedent.  At all times mentioned herein,

Plaintiff has been and is a citizen of the United States, residing in the State of California.

2.      The true names and/or capacities, whether individual, corporate, associate,

governmental, or otherwise, of Defendants, Does 1 through 100, inclusive, are unknown to

Plaintiff at this time; who, therefore, sue said Defendants by such fictitious names; and when

the true names and capacities of said Defendants by such fictitious names have been

ascertained, Plaintiff will amend this complaint accordingly.  Plaintiff is informed and

believes, and thereon alleges that each Defendant designated herein as a DOE is responsible,

negligently or in some other actionable manner, for the events and happenings hereinafter

alleged, either through said Defendant's own conduct or through the conduct of its agents,

servants or employees, or due to the ownership, lease or sale of the instrumentality causing

the injury, or in some other manner.

3.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned

herein, Defendants were the agents, servants, employees and/or joint venturers of their co-

Defendants and were, as such, acting within the scope, course, and authority of said agency,

1   employment and/or joint venture, in that each and every Defendant–when acting as a

2   principal–was negligent in the selection and hiring of each and every other Defendant as the

3   agent, servant, employee and/or joint venturer.

4       4.    Decedent MICHAEL SCANLON ("Decedent") was a California resident during

5   a substantial period of his asbestos exposure upon which Plaintiff's claims are based.

6       5.    Plaintiff is informed and believes, and thereon alleges, that at all times

7   mentioned herein, Defendants A. W. CHESTERTON COMPANY; ALFA LAVAL, INC.;

8   AMERICAN STANDARD, INC., individually and as successor-in-interest to The TRANE

9   COMPANY; ARMSTRONG INTERNATIONAL, INC.; ASTENJOHNSON, INC. (f/k/a

10   Asten, Inc.); BUFFALO PUMPS, INC.; CBS CORPORATION, f/k/a Viacom, Inc.

11   (successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric

12   Corporation); CLEAVER-BROOKS, INC., individually and f/k/a Aqua-Chem, Inc.; CRANE

13   CO., individually and as successor in interest to Chapman Valves; CROWN CORK & SEAL

14   COMPANY, INC. (individually and as successor-in-interest to Mundet Cork Company);

15   DOUGLASS INSULATION COMPANY, INC.; FLOWSERVE CORPORATION, f/k/a The

16   Duriron Company; FMC CORPORATION, individually, on behalf of and as

17   successor-in-interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd

18   Pump Co., Ohio Apex Division, and Link Belt Company; FOSTER WHEELER ENERGY

19   CORPORATION; GOULDS PUMPS INCORPORATED; HENRY VOGT MACHINE

20   COMPANY; INGERSOLL-RAND COMPANY; JOHN CRANE, INC.;J.T. THORPE &

21   SON, INC.; MECHANICAL DRIVES & BELTING (f/k/a L.A. Rubber Company);

22   METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.; QUINTEC

23   INDUSTRIES, INC., individually and successor-by-merger to Western Fibrous Glass

24   Products Company (f/k/a Western Fiberglas Company); THOMAS DEE ENGINEERING

25   CO.; TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A Shipyard); WARREN PUMPS,

26   L.L.C., f/k/a Warren Pumps, Inc.; YARWAY CORPORATION, and DOES 1-300, inclusive,

27   are corporations organized and existing under and by virtue of the laws of the State of

28   California, or the laws of some other state of the United States of America, or some foreign

1   jurisdiction, and that said Defendants were authorized to do and are doing business in the

2   State of California, and that said Defendants have regularly conducted business in the State

3   of California.

4       6.      At all times mentioned above, Defendants, and each of them, were engaged in

5   the business of manufacturing, fabricating, designing, assembling, distributing, leasing,

6   buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and

7   advertising a certain substance, the generic name of which is asbestos, and other products

8   containing asbestos.

9       7.      Decedent was exposed to Defendants' asbestos and asbestos containing products

10  contributing to and causing the development of mesothelioma. Decedent was exposed to

11  Defendants' asbestos and asbestos containing products through his occupational exposure to

12  asbestos while actively serving in the United States Navy from 1964 through 1966 aboard the

13  U.S.S. Piedmont (AD-17) at locations including but not limited to San Diego Naval Shipyard,

14  San Diego, CA and while on the U.S.S. Piedmont itself. Decedent was exposed to millions

15  of asbestos fibers by working around and with others grinding and pulverizing Defendants'

16  asbestos products aboard the U.S.S. Piedmont in many locations throughout the ship on a

17  frequent and regular basis. As a result of exposure to Defendants' asbestos and asbestos

18  containing products, asbestos fibers entered his body. Decedent suffered from mesothelioma

19  and each of Defendants' asbestos and asbestos containing products that entered his body was

20  a substantial factor in bringing about, prolonging, or aggravating Decedent's mesothelioma

21  and, eventually, Decedent's death.

22      8.      Decedent and Plaintiff KWANG SCANLON were married at all times relevant

23  to this action and were husband and wife up to Decedent's death.  Plaintiff is the wrongful

24  death heir of the Decedent.

25      9.      Prior to Decedent's injuries and eventual death as alleged, Decedent was able and

26  did perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof,

27  Decedent was unable to perform the necessary duties as a spouse and the work and service

28  usually performed in the care, maintenance and management of the family home, and due to

his death, Decedent will be unable to perform such work, service and duties in the future. As a proximate result thereof, Decedent's spouse, has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiff, but which will be proved at the time of trial.

10.     Prior to Decedent's injuries and eventual death as alleged, Plaintiff enjoyed love, comfort, society, companionship, solace, and moral support of Decedent. Due to Decedent's death, and as a proximate result thereof, Plaintiff will be deprived of such consortium of Decedent in the future, in an amount presently unknown to Plaintiff, but which will be proved at the time of trial.

11.     Discovery of the cause of Plaintiff's loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

12.     Further, as a direct and proximate result of the acts of defendants, and each of them, and the severe injuries caused thereby to Decedent as set forth in this complaint, Decedent's spouse has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as a result thereof.

## FIRST CAUSE OF ACTION

(Negligence)

(Against all Defendants)

13.     Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the General Allegations above.

14.     At all times herein mentioned, each of the named Defendants and DOES 1 through 100 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

1  labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

2  inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

3  re-branding, manufacturing for others, packaging and advertising as certain product, namely

4  asbestos, and other products containing asbestos.  Said entities shall hereinafter collectively

5  be called "Alternate Entities."  Each of the herein named Defendants is liable for the tortious

6  conduct of each successor, successor in business, successor in product line or a portion

7  thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or

8  partial owner, or wholly or partially owned entity, or entity that it was a member of, or

9  funded, that researched, studied, manufactured, fabricated, designed, modified, labeled,

10  assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced,

11  installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured

12  for others and advertised a certain product, namely asbestos, and other products containing

13  asbestos.  The following Defendants, and each of them, are liable for the acts of each and

14  every "Alternate Entity," and each of them, in that there has been a virtual destruction of

15  Plaintiff's remedy against each such "Alternate Entity;" Defendants, and each of them, have

16  acquired the assets, product line, or a portion thereof, of each such "Alternate Entity;" such

17  "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiff's remedy

18  against each such "Alternate Entity;" each such Defendant has the ability to assume the risk-

19  spreading role of each such "Alternate Entity;" and that each such Defendant enjoys the

20  goodwill originally attached to each such "Alternate Entity."

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| A. W. CHESTERTON COMPANY | |
| ALFA LAVAL, INC | |
| AMERICAN STANDARD, INC. | individually and as successor-in-interest to The TRANE COMPANY |
| ARMSTRONG INTERNATIONAL, INC. | |
| ASTENJOHNSON, INC. | (f/k/a Asten, Inc.) |
| BUFFALO PUMPS, INC. | |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION, f/k/a Viacom, Inc. | (successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric Corporation) |
| CLEAVER-BROOKS, INC. | individually and f/k/a Aqua-Chem, Inc. |
| CRANE CO. | individually and as successor in interest to Chapman Valves |
| CROWN CORK & SEAL COMPANY, INC. | (individually and as successor-in-interest to Mundet Cork Company) |
| DOUGLASS INSULATION COMPANY, INC. | |
| FLOWSERVE CORPORATION | f/k/a The Duriron Company |
| FMC CORPORATION | individually, on behalf of and as successor-in-interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, and Link Belt Company |
| FOSTER WHEELER ENERGY CORPORATION | |
| GOULDS PUMPS INCORPORATED | |
| HENRY VOGT MACHINE COMPANY | |
| INGERSOLL-RAND COMPANY | |
| JOHN CRANE, INC. | |
| J.T. THORPE & SON, INC. | |
| MECHANICAL DRIVES & BELTING | (f/k/a L.A. Rubber Company) |
| METALCLAD INSULATION CORPORATION | |
| OWENS-ILLINOIS, INC. | |
| QUINTEC INDUSTRIES, INC. | individually and successor-by-merger to Western Fibrous Glass Products Company (f/k/a Western Fiberglas Company) |
| THOMAS DEE ENGINEERING CO. | |
| TRIPLE A MACHINE SHOP, INC. | (a/k/a Triple A Shipyard) |
| WARREN PUMPS, L.L.C. | f/k/a Warren Pumps, Inc |
| YARWAY CORPORATION | |

| **DEFENDANT** | **ALTERNATE ENTITY** |
| --- | --- |
| DOES 1-100 | |

15.     Defendants had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein, Defendants, and each of them, negligently and carelessly researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold a certain substance, the generic name of which is asbestos, and other products containing asbestos. Plaintiff alleges that asbetsos was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Decedent MICHAEL SCANLON.

16.     Decedent MICHAEL SCANLON was a worker who, for a substantial length of time, has used, handled, and been otherwise exposed to the asbestos and asbestos products referred to in Paragraph 7 above, in a manner that was reasonably foreseeable, while serving his county aboard the U.S.S. Piedmont.

17.     As a direct and proximate result of the above-referenced conduct of the Defendants, Decedent's exposure to said asbestos caused severe and permanent injury to Decedent's lungs and body, including, but not limited to the disease mesothelioma.

18.     On or about February 13, 2010, Decedent MICHAEL SCANLON died as a result of the mesothelioma.

19.     Plaintiff is informed and believes, and thereupon alleges, that mesothelioma is a vicious, painful and invariably fatal malignancy of the lining of the lung, stomach, or heart and that said disease results from exposure to asbestos and asbestos products.  There is no known cure for any form of malignant mesothelioma.

20.     As a direct and proximate result of the aforesaid conduct of the Defendants, and

1    each of them, Decedent suffered severe and permanent injuries leading to his eventual death

2    from mesothelioma.

3         21.    As a direct and proximate result of the aforesaid conduct of the Defendants,

4    Decedent was compelled to and did employ the services of hospitals, surgeons, physicians,

5    nurses, and the like, to care for and treat him, and did incur medical, hospital and professional

6    incidental expenses, including funeral expenses.  When said amounts are ascertained and

7    calculated, Plaintiff will allege said amounts.

8         22.    At all times herein mentioned, Defendants, and each of them were aware that the

9    original gaskets and packing supplied, manufactured, or procured with their equipment would

10   need to be removed and replaced with new gaskets and packing during ordinary operation and

11   maintenance of their equipment. Heat and pressure generated by operation would affect the

12   original and replacement gaskets and packing – e.g., making them brittle, friable and not

13   reusable, making replacement necessary and dangerous. It was foreseeable that the process

14   of removing old gaskets and packing, and replacing them with the new materials during

15   ordinary maintenance operations would cause the disturbance of asbestos and/or asbestos

16   containing materials, releasing asbestos into the air. It was also foreseeable that Defendant's

17   equipment needed to be insulated with asbestos containing thermal insulation materials and

18   that the negligent design of Defendant's equipment through its ordinary operation caused the

19   degradation of asbestos containing thermal insulation and the foreseeable removal of these

20   insulation materials and application of new insulation materials, which would cause the

21   disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air.

22        23.    The above-referenced conduct of said Defendant was and is willful, malicious,

23   outrageous, oppressive, despicable, and/or in conscious disregard and indifference to the

24   safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.

25   Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was

26   intended by Defendants to cause injury to Decedent and Plaintiff or conduct which was

27   carried on by Defendants with a conscious disregard of the rights or safety of others.

28   Defendant subjected Plaintiff's Decedent to cruel and unjust hardship in conscious disregard

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL                                    Page 9

of his rights and thereby depriving Plaintiff's Decedent of property or legal rights or otherwise causing injury.  Plaintiff therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof based upon the following facts:

(a)     Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Decedent and others in Decedent's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930.  By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Decedent that it was safe for Decedent to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b)     Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c)     Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Decedent's employer and others without advising Decedent and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein.  By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Decedent that which was not true and that which Defendants, their "Alternate Entities," and

1    each of them, had not reasonable ground for believing to be true, to wit, that it was safe for

2    Decedent to work in close proximity to such materials;

3        (d)    Defendants, their "Alternate Entities," and each of them, suppressed from

4    Decedent medical and scientific data and knowledge of the contents of the Lanza report.

5    Although bound to disclose it, Defendants, their "Alternate Entities," and each of them

6    influenced A.J. Lanza to change his report, the altered version of which was published in

7    Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Decedent and others

8    to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of them,

9    caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger,

10   thereby lessening the probability of notice of danger to users thereof;

11       (e)    Defendants, their "Alternate Entities," and each of them, belonged to,

12   participated in, and financially supported the Asbestos Textile Institute and other industry

13   organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of

14   them, actively promoted the suppression of information of danger to users of the

15   aforementioned products and materials, thereby misleading Decedent by the suggestions and

16   deceptions set forth above in this cause of action. The Dust Control Committee, which

17   changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was

18   specifically enlisted to study the subject of dust control. Discussions in this committee were

19   held many times regarding the dangers inherent in asbestos and the dangers which arise from

20   the lack of control of dust, and such information was suppressed from public dissemination

21   from 1946 to a date unknown to Decedent at this time;

22       (f)    Commencing in 1930 with the study of mine and mill workers at Asbestos and

23   Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants

24   in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each

25   of them, knew and possessed medical and scientific information of the connection between

26   inhalation of asbestos fibers and asbestosis, which information was disseminated through the

27   Asbestos Textile Institute and other industry organizations to all other Defendants, their

28   "Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their

1    "Alternate Entities," and each of them suggested to the public as a fact that which is not true

2    and disseminated other facts likely to mislead Decedent. Such facts did mislead Decedent and

3    others by withholding the afore-described medical and scientific data and other knowledge

4    and by not giving Decedent the true facts concerning such knowledge of danger, which

5    Defendants, their "Alternate Entities," and each of them, were bound to disclose;

6        (g)    Defendants, their "Alternate Entities," and each of them, failed to warn Decedent

7    and others of the nature of said materials which were dangerous when breathed and which

8    could cause pathological effects without noticeable trauma, despite the fact that Defendants,

9    their "Alternate Entities," and each of them, possessed knowledge and were under a duty to

10   disclose that said materials were dangerous and a threat to the health of persons coming into

11   contact therewith;

12       (h)    Defendants, their "Alternate Entities," and each of them, failed to provide

13   Decedent with information concerning adequate protective masks and other equipment

14   devised to be used when applying and installing the products of the Defendants, and each of

15   them, despite knowing that such protective measures were necessary, and that they were under

16   a duty to disclose that such materials were dangerous and would result in injury to the

17   Decedent and others applying and installing such material;

18       (i)    Defendants, their "Alternate Entities," and each of them, when under a duty to

19   so disclose, concealed from Decedent the true nature of the industrial exposure of Decedent

20   and knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in

21   time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.

22   Defendants, their "Alternate Entities," and each of them, also concealed from Decedent and

23   others that harmful materials to which they were exposed would cause pathological effects

24   without noticeable trauma;

25       (j)    Defendants, their "Alternate Entities," and each of them, failed to provide

26   information of the true nature of the hazards of asbestos materials and that exposure to these

27   materials would cause pathological effects without noticeable trauma to the public, including

28   buyers, users, and physicians employed by Decedent and Decedent's employers so that said

1   physicians could examine, diagnose and treat Decedent and others who were exposed to

2   asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were

3   under a duty to so inform and said failure was misleading; and

4          (k)   Defendants, their "Alternate Entities," and each of them, failed to provide

5   adequate information to physicians and surgeons retained by Decedent's employers and their

6   predecessor companies, for purposes of making physical examinations of Decedent and other

7   employees as to the true nature of the risk of such materials and exposure thereto when they

8   in fact possessed such information and had a duty to disclose it.

9        24.   Plaintiff further alleges all of the foregoing portions of this cause of action

10   specifically against those Defendants who supplied asbestos fibers (as pled against those

11   Defendants who manufactured asbestos products) and any other asbestos fiber supplier or

12   distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent

13   was exposed, as well as any DOE Defendants who may be determined at a later date.

14                        **SECOND CAUSE OF ACTION**

15                             (Strict Liability)

16                        (Against all Defendants)

17        25.   Plaintiff hereby incorporate by reference, as though fully set forth herein, each

18   and every allegation contained in paragraphs 1 through 24.

19        26.   At all times mentioned herein, Defendants researched, manufactured, tested,

20   designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered

21   for sale, and sold asbestos, and other products containing asbestos, which Defendants knew

22   were to be used without inspection for defects and which substance contained design and

23   manufacturing defects, in that same was capable of causing and did, in fact, cause personal

24   injuries to the users, consumers, and bystanders while being used in a reasonably foreseeable

25   manner, thereby rendering same unsafe and dangerous for use by the consumers, users, and

26   bystanders.

27        27.   As a direct and proximate result of the above described conduct by Defendants,

28   Decedent MICHAEL SCANLON suffered severe and permanent injuries to his person, as

1    alleged above.

2        28.    At all times mentioned herein, the asbestos and products containing said

3    substance discussed above failed to perform as safely as an ordinary consumer would expect

4    when used in an intended or reasonably foreseeable manner, and the risk of danger inherent

5    in this substance and products outweighs the benefits of said substance and products.

6        29.    At all times mentioned herein, the foreseeable use of the asbestos and products

7    containing said substance discussed above involved a substantial danger not readily

8    recognizable to an ordinary user, consumer, or bystander, but which danger was known or

9    knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

10       30.    As a direct and proximate result of the above described conduct by Defendants

11   and each of them, Decedent suffered severe and permanent injuries to his person, including

12   his eventual death.

13       31.    The above-referenced conduct of said Defendant was and is willful, malicious,

14   outrageous, oppressive, despicable, and/or in conscious disregard and indifference to the

15   safety of users of said asbestos and asbestos products, including Plaintiff's Decedent.

16   Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was

17   intended by the defendant to cause injury to the plaintiff or conduct which was carried on by

18   the defendant with a conscious disregard of the rights or safety of others. Defendant subjected

19   Plaintiff's Decedent to cruel and unjust hardship in conscious disregard of his rights and

20   engaged in intentional misrepresentation, deceit, or concealment of a material fact known to

21   the defendant with the intention on the part of the defendant of thereby depriving Plaintiff's

22   Decedent of property or legal rights or otherwise causing injury.  Plaintiff therefore, for the

23   sake of example and by way of punishing Defendant, seeks punitive damages, according to

24   proof.

25       32.    Plaintiff further alleges all of the foregoing portions of this cause of action

26   specifically against those Defendants who supplied asbestos fibers (as pled against those

27   Defendants who manufactured asbestos products), and any other asbestos fiber supplier or

28   distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent

was exposed, as well as any DOE Defendants who may be determined at a later date.

### THIRD CAUSE OF ACTION

(Loss of Consortium)

(Against All Defendants)

33.     Plaintiff incorporates by reference paragraphs 1 through 32 as if set forth fully herein.

34.     Plaintiff and Decedent were married at all times relevant to this action were, up to Decedent's death, husband and wife.

35.     Prior to Plaintiff MICHAEL SCANLON's injuries as alleged, Decedent MICHAEL SCANLON was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Decedent has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and Decedent will be unable to perform such work, service and duties in the future. As a proximate result thereof, Decedent's spouse KWANG SCANLON has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiff but which will be proved at the time of trial.

36.     Further, as a direct and proximate result of the acts of Defendants—and the severe injuries caused thereby to Decedent and Plaintiff as set forth in this complaint—Decedent's spouse, KWANG SCANLON, has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as general nervousness as a result thereof.

37.     Discovery of the cause of Plaintiff's loss of consortium, first occurred within one year of the date this complaint was filed.

WHEREFORE, Plaintiff prays judgment against Defendants in and amount to be proved

1   at trial in each individual case, as follows:

2      1.    General damages according to proof;

3      2.    Damages for medical and related expenses, according to proof;

4      3.    Damages for funeral, burial, incidental, and related expenses, according to

5             proof;

6      4.    Damages for the present value of financial contributions which Decedent would

7             have given Plaintiff had he lived;

8      5.    Damages for the pecuniary value of services which Plaintiff might have

9             reasonably expected to receive from Decedent;

10     6.    Damages for loss of earning capacity, according to proof;

11     7.    Damages for loss of earning, according to proof;

12     8.    Damages for Decedent's other economic losses, according to proof;

13     9.    Exemplary or punitive damages according to proof;

14     10.   Plaintiff's damages for loss of consortium according to proof;

15     11.   Prejudgment interest, according to proof;

16     12.   Costs of suit incurred herein; and

17     13.   Such other an further relief as this Court may deem just and proper, including

18            costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032 and

19            related provisions of law.

20

21   DATED: August 13, 2010         BARON & BUDD, P.C.

22

23                By: *John Langdoc*

24                    JOHN LANGDOC, ESQ.

                       Attorneys for Plaintiff: KWANG SCANLON

25

26

27

28

# Exhibit E

1   MICHAEL J. PIETRYKOWSKI (SBN: 118677)
    mpietrykowski@gordonrees.com
2   JAMES SCADDEN (SBN: 90127)
    jscadden@gordonrees.com
3   GLEN R. POWELL (SBN: 219453)
    gpowell@gordonrees.com
4   GORDON & REES LLP
    275 Battery Street, Suite 2000
5   San Francisco, CA  94111
    Telephone:  (415) 986-5900
6   Facsimile:  (415) 986-8054

7   Attorneys for Defendant
    AIR & LIQUID SYSTEMS CORPORATION, SUCCESSOR BY MERGER TO BUFFALO
8   PUMPS, INC. (ERRONEOUSLY SUED AS BUFFALO PUMPS INC.)

9

10                          UNITED STATES DISTRICT COURT

11                          CENTRAL DISTRICT OF CALIFORNIA

12
    KWANG SCANLON, _Individually and as_       **CV10 7264-SVW**
13  MICHAEL SCANLON, deceased,                 _Successor-in-Interest to_   **(JC(Gx)**
                                               CASE NO. BC-443647
14              Plaintiff(s),                  (Los Angeles County Superior Court)

15          v.                                 **NOTICE OF REMOVAL OF ACTION
                                               UNDER 28 U.S.C. SECTIONS 1442 AND
16  ASBESTOS COMPANIES;                        1446**
    A. W. CHESTERTON COMPANY; ALFA
17  LAVAL, INC.; AMERICAN STANDARD,
    INC., individually and as successor-in-interest
18  to The TRANE COMPANY; ARMSTRONG
    INTERNATIONAL, INC.; ASTENJOHNSON,
19  INC. (f/k/a Asten, Inc.); BUFFALO PUMPS,
    INC.; CBS CORPORATION, f/k/a Viacom,
20  Inc. (successor-by-merger to CBS Corporation,
    successor-by-merger to Westinghouse Electric
21  Corporation); CLEAVER BROOKS, INC.,
    individually and f/k/a Aqua-Chem, Inc.;
22  CRANE CO., individually and as successor in
    interest to Chapman Valves; CROWN CORK &
23  SEAL COMPANY, INC. (individually and as
    successor-in-interest to Mundet Cork
24  Company); DOUGLASS INSULATION
    COMPANY, INC.; FLOWSERVE
25  CORPORATION, f/k/a The Duriron Company;
    FMC CORPORATION, individually, on behalf
26  of and as successor-in-interest to Peerless Pump
    Co., John Bean Pumps, Chicago Pumps,
27  Dayton-Dowd Pump Co, Ohio Apex Division,
    and Link Belt Company; FOSTER WHEELER
28  ENERGY CORPORATION; GOULDS

FILED
CLERK, U.S. DISTRICT COURT

SEP 29 2010
2:18

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

-1-

1  PUMPS INCORPORATED; HENRY VOGT
   MACHINE COMPANY; INGERSOLL-RAND
2  COMPANY; JOHN CRANE, INC.; J.T.
   THORPE & SON, INC.; MECHANICAL
3  DRIVES & BELTING (f/k/a L.A. Rubber
   Company); METALCLAD INSULATION
4  CORPORATION; OWENS-ILLINOIS, INC.;
   QUINTEC INDUSTRIES, INC., individually
5  and successor-by-merger to Western Fibrous
   Glass Products Company (f/k/a Western
6  Fiberglas Company); THOMAS DEE
   ENGINEERING CO.; TRIPLE A MACHINE
7  SHOP, INC. (a/k/a Triple A Shipyard);
   WARREN PUMPS, L.L.C., f/k/a Warren
8  Pumps, Inc.; YARWAY CORPORATION;
   DOES 1-100,
9
                                Defendants.
10

11  **TO THE CLERK AND THE HONORABLE JUDGE OF THE ABOVE-ENTITLED**
12
   **COURT:**
13
        **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. sections 1442 and 1446,
14
   defendant  AIR AND LIQUID SYSTEMS CORPORATION, successor by merger to Buffalo
15
   Pumps, Inc. ("Buffalo Pumps") individually hereby gives notice of the removal of this action,
16
   originally filed in the Los Angeles County Superior Court, to the United States District Court for
17
   the Central District of California based on the following grounds:
18
        1.    **Jurisdiction.**  This Court has subject matter jurisdiction over this case because
19
   the claims involve a person, Buffalo Pumps, acting under the authority of an officer or agency of
20
   the United States. 28 U.S.C. § 1442; *Freiberg v. Swinerton & Walberg Property Services, Inc.*
21
   245 F.Supp.2d 1144, 1150 (2002).
22
        2.    **Intradistrict Assignment.**  The claims are pending within the District and the
23
   Division of this Court.  Therefore, the claims should be assigned to this Division.
24
        3.    **Timeliness.**  This Notice of Removal is timely because it was filed within thirty
25
   (30) days of formal service of the Summons and Complaint upon Buffalo Pumps, consistent with
26
   the requirements of 28 U.S.C. section 1446(b) and Rule 6 of the Federal Rules of Civil
27
   Procedure.
28

4     **Background.**  On or about August 13, 2010, plaintiffs filed their Complaint against approximately 27 defendants, including Buffalo Pumps, in the Superior Court of the State of California, County of Los Angeles.

5.     In the Complaint, Plaintiff KWANG SCANLON (plaintiff) alleges decedent MICHAEL SCANLON was exposed to asbestos containing products manufactured by a number of defendants, including Buffalo Pumps, while employed by the United States Navy aboard the USS PIEDMONT (AD-17) and while serving at the San Diego Naval Shipyard from 1964-1966. (A true and correct copy of the Summons and Complaint is attached as **Exhibit 1** to this Notice of Removal.)

6.     Any equipment manufactured for the U.S. Navy by Buffalo Pumps to be used aboard U.S Naval vessels or in a Naval shipyard was manufactured under the direction and control of a federal officer. (See, generally, Declaration of Ret. Adm. Roger Horne, **Exhibit 2** and the Declaration of Martin Kraft, **Exhibit 3**.)  Buffalo Pumps manufactured and designed equipment sold to the Navy according to the precise, detailed specifications of the U.S. Navy. The United States Navy enforced compliance with those design specifications and no aspect of the design of that equipment escaped the close control of the United States Navy and its officers, including all aspects of warnings associated with the equipment. (*Id.*)  Accordingly, Buffalo Pumps was acting under an officer or agent of the United States within the meaning of 28 U.S.C. § 1442(a)(1).

7.     **Legal Authorities.**  Should plaintiffs file a motion to remand in this case, Buffalo Pumps requests an opportunity to respond more fully in writing, but, for now, offers the following authorities:

8.     Removal is appropriate where, as here, the removing party (1) acted under the direction of a federal officer; (2) raises a colorable federal defense to plaintiffs' claims and (3) can demonstrate a causal nexus between plaintiffs' claims and the acts it performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25 (1989).

9.     In 2006, the Ninth Circuit unequivocally stated that "the Supreme Court has mandated a generous interpretation of the federal officer removal statute . . . [and] has held that

1    the right of removal is absolute for conduct performed under color of federal office, and has

2    insisted that the policy favoring removal should not be frustrated by a narrow, grudging

3    interpretation of § 1442(a)(1)." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th

4    Cir. 2006) (citations omitted).  In light of the *Durham* court's ruling, California federal district

5    courts have repeatedly interpreted section 1442 broadly in favor of removal where a

6    manufacturer of equipment demonstrates that it acted under the direction of a federal officer,

7    raises a colorable federal defense to plaintiffs' claims and establishes a causal connection

8    between its alleged action under the control of a federal officer and plaintiffs' claims.  *See, e.g.,*

9    *Ballenger v. Agco Corp.*, 2007 WL 1813821 (N.D. Cal. June 22, 2007) (a copy of Judge

10   Wilken's Order is attached as **Exhibit 4**); *Nelson v. Alfa Laval, Inc.* et al, CV 07-8338VBF(RCx)

11   (a copy of Judge Fairbank's Order is attached as **Exhibit 5**); *Wright v. A.W Chesterton, Inc.*, CV

12   07-05403MJJ (a copy of Judge Jenkin's Order is attached as **Exhibit 6**); *Oberstar v. CBS Corp.*,

13   CV 08-118PA (JWJx) (a copy of this order is attached as **Exhibit 7**); *Jenkins v. Allied Packing*

14   *and Supply, Inc.* 09 CV101-DMS, (a copy of this order is attached as **Exhibit 8**).

15            10.      As recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988),

16   Buffalo Pumps has a federal defense to this action: i.e., government contractor immunity from

17   liability for injuries arising from any exposure to asbestos-containing equipment on board United

18   States Navy vessels, or at U.S. Navy land based installations, insofar as they were manufactured

19   or supplied by Buffalo Pumps.  See also *Carley v. Wheeled Coach*, 991 F.2d 1117, 1123 (3d Cir.

20   1993); *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 700 (4th Cir. 1989); *Garner v.*

21   *Santoro,*  865 F.2d 629, 634 (5th Cir. 1991).

22            11.      Removal on federal officer (e.g., federal contractor) grounds is also allowed in

23   failure to warn cases.  In *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 438 (5th Cir.) *cert.*

24   *denied* 519 U.S. 919 (2000), the court held that the government contractor defense is available in

25   "failure to warn" actions where the evidence shows that the lack of a warning reflects

26   governmental direction and control rather than the unfettered discretion of the product's

27   manufacturer.

28            12.      As noted in *Kerstetter,* "[t]he government need not prepare the specifications to

                                                    -4-

1  be considered to have approved them." *Id* at 435.  The only material issue is whether the

2  manufacturer's designs and specifications were subjected to "substantial review" rather than a

3  mere "rubber stamp" approval. *Id.*   Substantial review is established where there is evidence of

4  a "continuous back and forth" between the contractor and the government." *Id.*  In this regard,

5  "[t]he specifications need not address the specific defect alleged; the government need only

6  evaluate the design feature in question." *Id.*  Applying these general principals to "failure to

7  warn" claims, the fact that government specifications or regulations did not specifically preclude

8  the exact warning desired by a plaintiffs does not take a "failure to warn" claim outside the scope

9  of a government contractor defense, so long as the government was generally involved in

10  decisions relating to product warnings and was aware of the hazard in question. *Id* at 438.

11       13.    Further, according to Ret. Admiral Roger Horne: "The Navy retained the final say

12  over the design of any piece of equipment and made the ultimate decision regarding how to

13  resolve an engineering disagreement between the Navy and an outside supplier.  Without prior

14  discussion, approval and acceptance by the Navy, a warning related to asbestos hazards would

15  not have been permitted." See **Exhibit 2**, page 5 at ¶ 12.)

16       14.    "[A]ll equipment, including pumps supplied by Buffalo Pumps for use aboard

17  Navy vessels, was manufactured pursuant to Navy specifications under close supervision by

18  personnel employed by the Navy and approved for installation aboard these vessels exclusively

19  by the Navy and its designated officers.  Any warning purportedly required by state law would

20  not have found its way into a ship as a permanent label on a pump or as a warning in

21  accompanying written materials unless it had been required specifically in the specifications for

22  the product that were issued by the Navy." *Id* at ¶ 15.

23       15.    As explained in the declaration of Martin Kraft: "In the design phase of the pump

24  project, as in all other phases, the Navy retained ultimate decision authority over the design of

25  the pumps.  If engineering disagreements arose between the Navy and an outside design

26  consultant, the Navy controlled the design adopted.  All pumps supplied by Buffalo Pumps to the

27  Navy were built in accordance with the Navy specifications or other technical documentation

28  identified in applicable contract documents." See **Exhibit 3**, page 3 at ¶ 8.

-5-

16.     In addition: "Navy specifications or other technical documents identified in applicable contract documents required Buffalo Pumps to submit for approval and acceptance by the federal government drafts of any manuals, drawings or other written materials required to be provided with regard to pumps it manufactured for the Navy. These requirements were far more detailed and stringent than those imposed by commercial customers.  (Exhibit A at 3.5; 3.6; Exhibit B at 3.27; 3.28)."  *Id* at ¶ 13.

17.     This approval and acceptance process was not merely a process of submission by Buffalo Pumps of drawings and manuals.  The Navy's review encompassed all aspects of the technical manuals and other written materials submitted to it for approval in the pump design and manufacture process.  Based on my experience and my review of historical materials, I am aware that the Navy required specific changes to the content and wording of manuals submitted by Buffalo Pumps and other naval equipment manufacturers.  These changes included specific edits to cautionary and instructional language, and including warnings and cautions.  Examples of correspondence of this type are attached as Exhibit C."  *Id* at ¶ 14.

18.     Buffalo Pumps is not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiffs' action as a whole under 28 U.S.C. §1442(a)(l).  *Ely Valley Mines, Inc. v. Hartford Accident Indem. Co.,* 644 F.2d 1310, 1315 (9th Cir. 1981); *Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1034-35 (1998).

19.     A properly removed case cannot be remanded for discretionary or policy reasons, such as allegations of related state cases or contentions that judicial economy compels remand.  *Thermitron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 343-44 (1976); *Elrad v. United Life & Accident Ins. Co.,* 624 F. Supp. 742, 743 (N.D. Ill. 1985).

20.     Buffalo Pumps has attached those documents required by 28 U.S.C. section 1446(a) and (b) and the local rules of the United States District Court, Southern District of California, including a copy of the Summons and Complaint filed against it by the plaintiff. **Exhibit 1.**

WHEREFORE, defendant Buffalo Pumps Inc. respectfully requests that the above action now pending against it in the Superior Court of California, County of Los Angeles, be removed

-6-

1    to this Court.

2    Dated: Sept. 28 _____, 2010                    GORDON & REES LLP

3

4                                                   By: _____

5                                                   MICHAEL J. PIETRYKOWSKI
                                                    GLEN R. POWELL
6                                                   Attorneys for Defendant
                                                    AIR & LIQUID SYSTEMS CORPORATION,
7                                                   SUCCESSOR BY MERGER TO BUFFALO
                                                    PUMPS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUFFP/1065431/8489143v.1

-7-
NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1442 AND 1446

# Exhibit F

1  John Langdoc, Esq. (SBN 235509)
   Denyse Clancy, Esq. (SBN 255276)
2  Eric Policastro, Esq. (SBN 264605)
   BARON & BUDD, P.C.
3  3102 Oak Lawn Avenue, Suite 1100
   Dallas, Texas  75219
4  Telephone: 214/521-3605
              800/222-2766
5  Facsimile: 214/520-1181

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 KWANG SCANLON, Individually and as  )   CASE NO: 2:10-CV-07264-SVW-JCG
   Successor-In-Interest   to   MICHAEL )
12 SCANLON, Deceased;                   )   **PLAINTIFFS' AMENDED MOTION FOR**
                                        )   **REMAND TO THE SUPERIOR COURT,**
13          Plaintiffs,                  )   **COUNTY OF LOS ANGELES;**
                                        )   **DECLARATION OF JOHN LANGDOC;**
14 vs.                                   )   **MEMORANDUM OF POINTS AND**
                                        )   **AUTHORITIES; [PROPOSED] ORDER**
15 ASBESTOS COMPANIES, et al.           )
                                        )
16          Defendants.                  )   Hearing:    December 6, 2010
                                        )   Time:       1:30 p.m.
17                                       )   Judge:      Hon. Stephen V. Wilson
                                        )   Courtroom.: 6
18 ─────────────────────────────────    )

19 **PLAINTIFFS' NOTICE OF MOTION AND AMENDED MOTION FOR REMAND TO**
              **THE SUPERIOR COURT, COUNTY OF LOS ANGELES**
20

21      TO  THE   HONORABLE  COURT  AND  TO  ALL  DEFENDANTS  AND  THEIR

22 ATTORNEYS OF RECORD HEREIN:

23      PLEASE TAKE NOTICE THAT, on December 6, 2010 at 1:30 p.m., in Courtroom 6 of the

24 United States District Court for the Central District of California, located at 312 North Spring

25 Street, Los Angeles, Califomia, 90012 before the Honorable Stephen V. Wilson, Plaintiffs will and

26 hereby do move this Court to immediately remand this case to the Superior Court of the State of

27 California, County of Los Angeles. Defendant BUFFALO PUMPS moved this court for removal on

28

─────────────────────────────────────────────────────────────────────────
   PLAINTIFFS' AMENDED MOTION FOR REMAND TO THE SUPERIOR COURT, COUNTY OF LOS ANGELES

1   September 29, 2010. The Court granted Defendant's Notice on October 1, 2010. Remand of this case

2   is proper because BUFFALO PUMPS cannot avail itself to the military contractor defense; therefore,

3   this court lacks federal jurisdiction.

4          Plaintiffs' motion is based on the accompanying Memorandum of Points and Authorities, the

5   attached Declaration of John Langdoc, all attached exhibits, all papers and records on file in this case,

6

7   and any further oral and documentary evidence as may be presented at the hearing on this matter.

8          Based on the foregoing, Plaintiffs respectfully request that this Court immediately remand this

9   case to the Superior Court of the State of California, County of Los Angeles.

10

11
DATED: November 8, 2010                              BARON & BUDD, P.C

12

13

14                                                   John Langdoc
                                                     Attorney for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

PLAINTIFFS' AMENDED MOTION FOR REMAND TO THE SUPERIOR COURT, COUNTY OF LOS ANGELES

# Exhibit G

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**                                          MDL No. 875

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO–341)

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407. *See* 170 F.Supp.2d 1348 (J.P.M.L. 2001). Since that time, 85,387 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Eduardo C Robreno.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Robreno.

Pursuant to Rule 7.1 of the <u>Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation</u>, the action(s) on the attached schedule are transferred under 28 U.S.C. §1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the consent of that court, assigned to the Honorable Eduardo C Robreno.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed 7 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 7–day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

**IN RE: ASBESTOS PRODUCTS LIABILITY**
**LITIGATION (NO. VI)**                                    MDL No. 875

### SCHEDULE CTO−341 − TAG−ALONG ACTIONS

| **DIST** | **DIV.** | **C.A.NO.** | **CASE CAPTION** |
|---|---|---|---|

**CALIFORNIA CENTRAL**

| | | | |
|---|---|---|---|
| CAC | 2 | 10−06698 | John Lewis Jones et al v. Air &Liquid Systems Corporation et al |
| CAC | 2 | 10−07264 | Kwang Scanlon v. Asbestos Companies |

**CALIFORNIA NORTHERN**

| | | | |
|---|---|---|---|
| CAN | 3 | 10−02447 | Reynolds et al v. Kaiser Ventures LLC, et al., |
| CAN | 3 | 10−04022 | Fong et al v. General Electric Company et al |
| CAN | 3 | 10−04258 | Belk v. Lockheed Martin Corporation |
| CAN | 4 | 10−04021 | Hancock v. General Electric Company et al |

**DELAWARE**

| | | | |
|---|---|---|---|
| DE | 1 | 10−00767 | Wolz v. Viad Corp. |

**ILLINOIS NORTHERN**

| | | | |
|---|---|---|---|
| ILN | 1 | 10−06190 | Conroy v. A.W. Chesterton Company et al |

**MAINE**

| | | | |
|---|---|---|---|
| ME | 2 | 10−00386 | Donna M. Egeland, etc. v. General Electric Co., et al. |
| ME | 2 | 10−00387 | Laurel Elderkin−Graham, et al. v. New England Insulation Co., Inc., et al. |

**MARYLAND**

| | | | |
|---|---|---|---|
| MD | 1 | 10−02573 | McElroy et al v. 3M Company et al |

**MISSISSIPPI SOUTHERN**

| | | | |
|---|---|---|---|
| MSS | 1 | 10−00491 | Ballard v. American Optical Corporation et al |
| MSS | 1 | 10−00492 | Sandifer v. North Bros. Co., Inc. et al |

**NORTH CAROLINA MIDDLE**

NCM        1        10−00722        KELLY v. GUERLAIN, INC., et al

WASHINGTON WESTERN

WAW        2        10−01585        Abbay v. Armstrong International Inc et al

WISCONSIN EASTERN

WIE        2        10−00356        Burkee v. Degussa−Ney Dental Inc et al

# Exhibit H

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

## MDL No. 875 IN RE: ASBESTOS PRODUCTS LIABILITY
## LITIGATION (NO. VI)

*Kwang Scanlon. v. Asbestos Companies., et al.,* C.D. CALIFORNIA, C.A.
NO. 2:10-07264

## PLAINTIFF'S NOTICE OF OPPOSITION TO
## CTO-341-TAG-ALONG ACTIONS

I represent Plaintiff Kwang Scanlon in the above-captioned action,

which is included on the conditional transfer order (CTO-341-TAG-ALONG

ACTIONS), attached hereto as Exhibit A. Plaintiff submits this opposition

to the conditional transfer order. I understand that the motion and brief to

vacate are due within 14 days.

Date: October 26, 2010   Sincerely,

BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

John Langdoc, Esq. (SBN 235509)
Tiffany Dickenson, Esq. (SBN 257049)
Counsel for Plaintiffs

1

Paul Kiesel, Esq.  (SBN 119854)
KIESEL, BOUCHER & LARSON, L.L.P.
8648 Wilshire Blvd.
Beverly Hills, CA 90212
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

# EXHIBIT A

### UNITED STATES JUDICIAL PANEL
on
### MULTIDISTRICT LITIGATION

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**                                       MDL No. 875

#### (SEE ATTACHED SCHEDULE)

#### CONDITIONAL TRANSFER ORDER (CTO−341)

On July 29, 1991, the Panel transferred 21,937 civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407. *See* 170 F.Supp.2d 1348 (J.P.M.L. 2001). Since that time, 85,387 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Eduardo C Robreno.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Robreno.

Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. §1407 to the Eastern District of Pennsylvania for the reasons stated in the order of July 29, 1991, and, with the consent of that court, assigned to the Honorable Eduardo C Robreno.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed 7 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 7−day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)                                        MDL No. 875

### SCHEDULE CTO–341 – TAG–ALONG ACTIONS

| DIST | DIV. | C.A.NO. | CASE CAPTION |
|------|------|---------|--------------|

**CALIFORNIA CENTRAL**

| | | | |
|------|------|---------|--------------|
| CAC | 2 | 10–06698 | John Lewis Jones et al v. Air &Liquid Systems Corporation et al |
| CAC | 2 | 10–07264 | Kwang Scanlon v. Asbestos Companies |

**CALIFORNIA NORTHERN**

| | | | |
|------|------|---------|--------------|
| CAN | 3 | 10–02447 | Reynolds et al v. Kaiser Ventures LLC, et al., |
| CAN | 3 | 10–04022 | Fong et al v. General Electric Company et al |
| CAN | 3 | 10–04258 | Belk v. Lockheed Martin Corporation |
| CAN | 4 | 10–04021 | Hancock v. General Electric Company et al |

**DELAWARE**

| | | | |
|------|------|---------|--------------|
| DE | 1 | 10–00767 | Wolz v. Viad Corp. |

**ILLINOIS NORTHERN**

| | | | |
|------|------|---------|--------------|
| ILN | 1 | 10–06190 | Conroy v. A.W. Chesterton Company et al |

**MAINE**

| | | | |
|------|------|---------|--------------|
| ME | 2 | 10–00386 | Donna M. Egeland, etc. v. General Electric Co., et al. |
| ME | 2 | 10–00387 | Laurel Elderkin–Graham, et al. v. New England Insulation Co., Inc., et al. |

**MARYLAND**

| | | | |
|------|------|---------|--------------|
| MD | 1 | 10–02573 | McElroy et al v. 3M Company et al |

**MISSISSIPPI SOUTHERN**

| | | | |
|------|------|---------|--------------|
| MSS | 1 | 10–00491 | Ballard v. American Optical Corporation et al |
| MSS | 1 | 10–00492 | Sandifer v. North Bros. Co., Inc. et al |

**NORTH CAROLINA MIDDLE**

| NCM | 1 | 10-00722 | KELLY v. GUERLAIN, INC., et al |

**WASHINGTON WESTERN**

| WAW | 2 | 10-01585 | Abbay v. Armstrong International Inc et al |

**WISCONSIN EASTERN**

| WIE | 2 | 10-00356 | Burkee v. Degussa-Ney Dental Inc et al |

PROOF OF SERVICE

I am a resident of, or employed in the County of Dallas, State of Texas. I am over the age of 18 and not a party to this action. My business address is: 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas 75219.

On the 26th of October, 2010, I served Plaintiff's Notice of Opposition to Conditional Transfer Order (CTO-341) via facsimile to the Defendants listed below:

Date: 10-26-2010

Karen Hewlett

DEFENSE COUNSEL:

Keith M. Ameele
Foley & Mansfield, P.L.L.P.
300 South Grand Avenue
Suite 2800
Los Angeles, CA 90071
(213) 283-2100 (Phone)
(213) 283-2101 (Fax)
Attorneys for FLOWSERVE
CORPORATION

Anthony J. Calero
Lombardi, Loper & Conant, L.L.P.
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612
(510)433-2600 (Phone)
(510)433-2699 (Fax)
Attorneys for MECHANICAL DRIVES &
BELTING

G. Jeffery Coons
Gordon & Rees, L.L.P.
Embarcadero Center West
Twentieth Floor
275 Battery Street
San Francisco, CA 94111
(415)986-5900 (Phone)
(415)986-8054 (Fax)
Attorneys for GOULDS PUMPS
INCORPORATED

Joseph Duffy
Morgan, Lewis & Bockius, L.L.P.
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132
(213) 612-2500 (Phone)
(213) 612-2501 (Fax)
Attorneys for YARWAY CORPORATION

Stephen P. Farkas
K&L Gates LLP
10100 Santa Monica Boulevard,
Seventh Floor
Los Angeles, CA 90067
(310)552-5000 (Phone)
(310)552-5001 (Fax)
Attorneys for CRANE CO.

Stephen C. Klausen
Prindle, Amaro, Goetz, Hillyard, Barnes &
Reinholtz, LLP
310 Golden Shore, 4th Floor
Long Beach, CA 90801-5511
(562)436-3946 (Phone)
(562)495-0564 (Fax)
Attorneys for ALFA LAVAL, INC.

Michael T. McCall
Walsworth, Franklin, Bevins & McCall, L.L.P.
Fifth Floor
One City Blvd. West
Orange, CA  92868-3677
(714) 634-2522 (Phone)
(714) 634-0686 (Fax)
Attorneys for QUINTEC INDUSTRIES,
INC., THOMAS DEE ENGINEERING CO.

James G. Murray
Prindle, Amaro, Goetz, Hillyard, Barnes &
Reinholtz, LLP
Fourth Floor
310 Golden Shore
Long Beach, CA  90802
(562) 436-3946 (Phone)
(562) 495-0564 (Fax)
Attorneys for HENRY VOGT MACHINE
COMPANY

Robert L. Nelder
Hassard & Bonnington
Two Embarcadero Center
Suite 1800
San Francisco, CA  94111
(415) 288-9800 (Phone)
(415) 288-9802 (Fax)
Attorneys for JOHN CRANE, INC.

Dean A. Olson
Morris, Polich & Purdy, L.L.P.
1055 West Seventh Street
24th Floor
Los Angeles, CA  90017
(213) 891-9100 (Phone)
(213) 488-1178 (Fax)
Attorneys for CROWN, CORK, & SEAL
COMPANY, INC.

Michael J. Pietrykowski
Gordon & Rees, L.L.P.
Embarcadero Center West
Twentieth Floor
275 Battery Street

San Francisco, CA  94111
(415) 986-5900 (Phone)
(415) 986-8054 (Fax)
Attorneys for AMERICAN STANDARD,
INC. (KEWANEE), INGERSOLL-RAND
COMPANY, BUFFALO PUMPS, INC.

Frank D. Pond
Pond North, L.L.P.
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071
(213) 617-6170 (Phone)
(213) 623-3594 (Fax)
Attorneys for CBS CORPORATION
(WESTINGHOUSE, VIACOM)

William J. Sayers
McKenna, Long & Aldridge, L.L.P.
300 S. Grand Avenue, 14th Floor
Los Angeles, CA  90071-2901
(213) 688-1000 (Phone)
(213) 243-6330 (Fax)
Attorneys for METALCLAD INSULATION
CORPORATION

Robert Thackston
Hawkins, Parnell & Thackston, LLP
444 South Flower Street, Suite 1100
Los Angeles, CA  90071
(213) 486-8000 (Phone)
(213) 486-8080 (Fax)
Attorneys for WARREN PUMPS, L.L.C.

Jeffrey R. Williams
Schiff Hardin, L.L.P.
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA  94105
(415) 901-8700 (Phone)
(415) 901-8701 (Fax)
Attorneys for OWENS-ILLINOIS,

## Karen Hewlett

| | |
|---|---|
| **From:** | Karen Hewlett |
| **Sent:** | Tuesday, October 26, 2010 12:17 PM |
| **To:** | 'Keith M. Ameele@12132832101'; 'Anthony J. Calero@15104332699'; 'G. Jeffery Coons@ 14159868054'; 'Joseph Duffy@12136122501'; 'Jeffery J. Fadeff@14153971339'; 'Stephen P. Farkas@13105525001'; 'A. Scott Goldberg@13104732525'; 'Stephen C. Klausen@ 15624950564'; 'Michael T. McCall@17146340686'; 'James G. Murray@15624950564'; 'Robert L. Nelder@14152889802'; 'Dean A. Olson@12134881178'; 'Michael J. Pietrykowski@ 14159868054'; 'Frank D. Pond@12136233594'; 'William J. Sayers@12132436330'; 'James G. Scadden@14159868054'; 'Robert Thackston@12134868080'; 'Jeffrey R. Williams@ 14159018701' |
| **Subject:** | Michael Scanlon, et al.; Cause No. BC443647 |
| **Attachments:** | Document.pdf |

| Counsel | Fax | Phone | Def(s) |
|---|---|---|---|
| Keith M. Ameele | (213) 283-2101 | (213) 283-2100 | FLOWSERVE |
| Anthony J. Calero | (510)433-2699 | (510)433-2600 | LARUBBER |
| G. Jeffery Coons | (415)986-8054 | (415)986-5900 | GOULDS |
| Joseph Duffy | (213) 612-2501 | (213) 612-2500 | YARWAY |
| Jeffery J. Fadeff | (415)397-1339 | (415)397-9006 | JTTHORPESON |
| Stephen P. Farkas | (310)552-5001 | (310)552-5000 | CRANECO |
| A. Scott Goldberg | (310)473-2525 | (310)445-0800 | AQUCHEM |
| Stephen C. Klausen | (562)495-0564 | (562)436-3946 | ALFALAVAL |
| Michael T. McCall | (714) 634-0686 | (714) 634-2522 | QUINTEC, TDENG |
| James G. Murray | (562) 495-0564 | (562) 436-3946 | HENRYVOGT |
| Robert L. Nelder | (415) 288-9802 | (415) 288-9800 | CRANE |
| Dean A. Olson | (213)488-1178 | (213)891-9100 | CROWNCORK |
| Michael J. Pietrykowski INGERSOLL | (415)986-8054 | (415)986-5900 | AMERISTDR, BUFFALOP, |
| Frank D. Pond | (213) 623-3594 | (213) 617-6170 | WESTINGHO |
| William J. Sayers | (213)243-6330 | (213)688-1000 | METALCLAD |
| James G. Scadden | (415)986-8054 | (415)986-5900 | FOSTER |
| Robert Thackston | (213) 486-8080 | (213) 486-8000 | WARRENP |
| Jeffrey R. Williams | (415)901-8701 | (415)901-8700 | OWENSILL |