1   MICHAEL J. PIETRYKOWSKI (SBN: 118677)
    mpietrykowski@gordonrees.com
2   JAMES SCADDEN (SBN: 090127)
    jhughes@gordonrees.com
3   GLEN R. POWELL (SBN 219453)
    gpowell@gordonrees.com
4   KRISTINE M. GLOVER (SBN 245246)
    kglover@gordonrees.com
5   GORDON & REES LLP
    Embarcadero Center West
6   275 Battery Street, Twentieth Floor
    San Francisco, CA 94111
7   Telephone: (415) 986-5900
    Facsimile: (415) 986-8054
8
    Attorneys for Defendant
9   AIR & LIQUID SYSTEMS CORPORATION,
    successor by merger to BUFFALO PUMPS, INC.
10
    **BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**
11

12  IN RE: ASBESTOS PRODUCTS          )   MDL DOCKET NO. 875
    LIABILITY LITIGATION              )
13                                    )
                                      )
14  KWANG SCANLON v. ASBESTOS         )   **DECLARATION OF KRISTINE
    COMPANIES, ET AL.**               )   **M. GLOVER IN SUPPORT OF
15                                    )   DEFENDANT AIR & LIQUID
                                      )   SYSTEMS CORPORATION'S
16                                    )   OPPOSITION TO PLAINTIFFS'
                                      )   MOTION TO VACATE
17                                    )   CONDITIONAL TRANSFER
                                      )   ORDER (CTO-341)**
18                                    )
                                      )
19                                    )
                                      )
20

21

22  I, Kristine M. Glover, hereby declare:

23       1.      I am an attorney duly licensed to practice before the courts of the

    State of California.  I am also admitted to practice in the USDC, Central and
24
    Northern Districts of California.
25
         2.      I am an associate with Gordon & Rees LLP, attorneys of record for
26
    AIR & LIQUID SYSTEMS CORPORATION, successor by merger to BUFFALO
27
    PUMPS, INC. ("Buffalo"), and one of the attorneys chiefly responsible for this
28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

DECLARATION IN SUPPORT OF AIR & LIQUID CORP.'S OPPOSITION TO PLAINTIFFS'
CONSOLIDATED MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-341)

1  representation.  In that capacity, I have personal knowledge regarding all matters

2  contained in this declaration.

3       3.      A true and correct copy of Buffalo's Notice of Removal in the matter

4  of *Kwang Scanlon v. Asbestos Companies, et al.* is attached hereto as Exhibit A.

5       4.      A true and correct copy of Buffalo's Opposition to Plaintiffs' Motion

6  to Remand and Stay for of All Proceedings is attached hereto as Exhibit B.

7       5.      A true and correct copy of the parties' joint stipulation to stay the

8  status conference pending final transfer to the United States District Court for the

9  Eastern District of Pennsylvania is attached hereto as Exhibit C.

10      6.      A true and correct copy of Judge Stephen V. Wilson's Order

11  rescheduling the status conference is attached hereto as Exhibit D.

12      7.      A true and correct copy of Judge Eduardo Robreno's Order in *Hagen*

13  *v. Benjamin Foster Co., et al.*, Case No. CV No. 07-63346, is attached hereto as

14  Exhibit E.

15       I declare under penalty of perjury the foregoing is true and correct.

16

17  Dated:  December 2, 2010          GORDON & REES LLP

18                                    By:

19                                    KRISTINE M. GLOVER
                                      Attorneys for Defendants
20                                    AIR & LIQUID SYSTEMS
                                      CORPORATION, successor by merger to
21                                    BUFFALO PUMPS, INC.

22

23

24

25

26

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

BUFFP/1065431/8870731v.1

-2-

DECLARATION IN SUPPORT OF AIR & LIQUID CORP.'S OPPOSITION TO PLAINTIFFS'
CONSOLIDATED MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-341)

# EXHIBIT A

1   MICHAEL J. PIETRYKOWSKI (SBN: 118677)
    mpietrykowski@gordonrees.com
2   JAMES SCADDEN (SBN: 90127)
    jscadden@gordonrees.com
3   GLEN R. POWELL (SBN: 219453)
    gpowell@gordonrees.com
4   GORDON & REES LLP
    275 Battery Street, Suite 2000
5   San Francisco, CA  94111
    Telephone:  (415) 986-5900
6   Facsimile:  (415) 986-8054

7   Attorneys for Defendant
    AIR & LIQUID SYSTEMS CORPORATION, SUCCESSOR BY MERGER TO BUFFALO
8   PUMPS, INC. (ERRONEOUSLY SUED AS BUFFALO PUMPS INC.)

9

10                          UNITED STATES DISTRICT COURT

11                         CENTRAL DISTRICT OF CALIFORNIA

12                                                    CV10 7264-SVW
                                                                    JT(Cx)
13   KWANG SCANLON, *Individually and as      CASE NO. BC-443647
     MICHAEL SCANLON, deceased,  Successor-in-Interest to   (Los Angeles County Superior Court)

14                    Plaintiff(s),           NOTICE OF REMOVAL OF ACTION
                                              UNDER 28 U.S.C. SECTIONS 1442 AND
15          v.                                1446

16   ASBESTOS COMPANIES;
     A. W. CHESTERTON COMPANY; ALFA
17   LAVAL, INC.; AMERICAN STANDARD,
     INC., individually and as successor-in-interest
18   to The TRANE COMPANY; ARMSTRONG
     INTERNATIONAL, INC.; ASTENJOHNSON,
19   INC. (f/k/a Asten, Inc.); BUFFALO PUMPS,
     INC.; CBS CORPORATION, f/k/a Viacom,
20   Inc. (successor-by-merger to CBS Corporation,
     successor-by-merger to Westinghouse Electric
21   Corporation); CLEAVER BROOKS, INC.,
     individually and f/k/a Aqua-Chem, Inc.;
22   CRANE CO., individually and as successor in
     interest to Chapman Valves; CROWN CORK &
23   SEAL COMPANY, INC. (individually and as
     successor-in-interest to Mundet Cork
24   Company); DOUGLASS INSULATION
     COMPANY, INC.; FLOWSERVE
25   CORPORATION, f/k/a The Duriron Company;
     FMC CORPORATION, individually, on behalf
26   of and as successor-in-interest to Peerless Pump
     Co., John Bean Pumps, Chicago Pumps,
27   Dayton-Dowd Pump Co, Ohio Apex Division,
     and Link Belt Company; FOSTER WHEELER
28   ENERGY CORPORATION; GOULDS

FILED
CLERK, U.S. DISTRICT COURT

SEP 29 2010
2:18

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

-1-

PUMPS INCORPORATED; HENRY VOGT
MACHINE COMPANY; INGERSOLL-RAND
COMPANY; JOHN CRANE, INC.; J.T.
THORPE & SON, INC.; MECHANICAL
DRIVES & BELTING (f/k/a L.A. Rubber
Company); METALCLAD INSULATION
CORPORATION; OWENS-ILLINOIS, INC.;
QUINTEC INDUSTRIES, INC., individually
and successor-by-merger to Western Fibrous
Glass Products Company (f/k/a Western
Fiberglas Company); THOMAS DEE
ENGINEERING CO.; TRIPLE A MACHINE
SHOP, INC. (a/k/a Triple A Shipyard);
WARREN PUMPS, L.L.C., f/k/a Warren
Pumps, Inc.; YARWAY CORPORATION;
DOES 1-100,

                                    Defendants.

**TO THE CLERK AND THE HONORABLE JUDGE OF THE ABOVE-ENTITLED**

**COURT:**

  **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. sections 1442 and 1446,

defendant  AIR AND LIQUID SYSTEMS CORPORATION, successor by merger to Buffalo

Pumps, Inc. ("Buffalo Pumps") individually hereby gives notice of the removal of this action,

originally filed in the Los Angeles County Superior Court, to the United States District Court for

the Central District of California based on the following grounds:

  1.  **Jurisdiction.**  This Court has subject matter jurisdiction over this case because

the claims involve a person, Buffalo Pumps, acting under the authority of an officer or agency of

the United States.  28 U.S.C. § 1442; *Freiberg v. Swinerton & Walberg Property Services, Inc.*

245 F.Supp.2d 1144, 1150 (2002).

  2.  **Intradistrict Assignment**.  The claims are pending within the District and the

Division of this Court.  Therefore, the claims should be assigned to this Division.

  3.  **Timeliness.**  This Notice of Removal is timely because it was filed within thirty

(30) days of formal service of the Summons and Complaint upon Buffalo Pumps, consistent with

the requirements of 28 U.S.C. section 1446(b) and Rule 6 of the Federal Rules of Civil

Procedure.

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1442 AND 1446

1      4     **Background**. On or about August 13, 2010, plaintiffs filed their Complaint

2 against approximately 27 defendants, including Buffalo Pumps, in the Superior Court of the

3 State of California, County of Los Angeles.

4      5.     In the Complaint, Plaintiff KWANG SCANLON (plaintiff) alleges decedent

5 MICHAEL SCANLON was exposed to asbestos containing products manufactured by a number

6 of defendants, including Buffalo Pumps, while employed by the United States Navy aboard the

7 USS PIEDMONT (AD-17) and while serving at the San Diego Naval Shipyard from 1964-1966.

8 (A true and correct copy of the Summons and Complaint is attached as **Exhibit 1** to this Notice

9 of Removal.)

10      6.     Any equipment manufactured for the U.S. Navy by Buffalo Pumps to be used

11 aboard U.S Naval vessels or in a Naval shipyard was manufactured under the direction and

12 control of a federal officer. (See, generally, Declaration of Ret. Adm. Roger Horne, **Exhibit 2**

13 and the Declaration of Martin Kraft, **Exhibit 3**.) Buffalo Pumps manufactured and designed

14 equipment sold to the Navy according to the precise, detailed specifications of the U.S. Navy.

15 The United States Navy enforced compliance with those design specifications and no aspect of

16 the design of that equipment escaped the close control of the United States Navy and its officers,

17 including all aspects of warnings associated with the equipment. (*Id.*) Accordingly, Buffalo

18 Pumps was acting under an officer or agent of the United States within the meaning of 28 U.S.C.

19 § 1442(a)(1).

20      7.     **Legal Authorities**. Should plaintiffs file a motion to remand in this case, Buffalo

21 Pumps requests an opportunity to respond more fully in writing, but, for now, offers the

22 following authorities:

23      8.     Removal is appropriate where, as here, the removing party (1) acted under the

24 direction of a federal officer; (2) raises a colorable federal defense to plaintiffs' claims and (3)

25 can demonstrate a causal nexus between plaintiffs' claims and the acts it performed under color

26 of federal office. *Mesa v. California*, 489 U.S. 121, 124-25 (1989).

27      9.     In 2006, the Ninth Circuit unequivocally stated that "the Supreme Court has

28 mandated a generous interpretation of the federal officer removal statute . . . [and] has held that

1   the right of removal is absolute for conduct performed under color of federal office, and has

2   insisted that the policy favoring removal should not be frustrated by a narrow, grudging

3   interpretation of § 1442(a)(1)." *Durham v. Lockheed Martin Corp.*, 445 F. 3d 1247, 1252 (9th

4   Cir. 2006) (citations omitted).  In light of the *Durham* court's ruling, California federal district

5   courts have repeatedly interpreted section 1442 broadly in favor of removal where a

6   manufacturer of equipment demonstrates that it acted under the direction of a federal officer,

7   raises a colorable federal defense to plaintiffs' claims and establishes a causal connection

8   between its alleged action under the control of a federal officer and plaintiffs' claims. *See, e.g.,*

9   *Ballenger v. Agco Corp.*, 2007 WL 1813821 (N.D. Cal. June 22, 2007) (a copy of Judge

10   Wilken's Order is attached as **Exhibit 4**); *Nelson v. Alfa Laval, Inc.* et al, CV 07-8338VBF(RCx)

11   (a copy of Judge Fairbank's Order is attached as **Exhibit 5**); *Wright v. A.W Chesterton, Inc.,* CV

12   07-05403MJJ (a copy of Judge Jenkin's Order is attached as **Exhibit 6**); *Oberstar v. CBS Corp.,*

13   CV 08-118PA (JWJx) (a copy of this order is attached as **Exhibit 7**); *Jenkins v. Allied Packing*

14   *and Supply, Inc.* 09 CV101-DMS, (a copy of this order is attached as **Exhibit 8**).

15         10.    As recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988),

16   Buffalo Pumps has a federal defense to this action: i.e., government contractor immunity from

17   liability for injuries arising from any exposure to asbestos-containing equipment on board United

18   States Navy vessels, or at U.S. Navy land based installations, insofar as they were manufactured

19   or supplied by Buffalo Pumps.  See also *Carley v. Wheeled Coach,* 991 F.2d 1117, 1123 (3d Cir.

20   1993); *Kleeman v. McDonnell Douglas Corp.,* 890 F.2d 698, 700 (4th Cir. 1989); *Garner v.*

21   *Santoro,*  865 F.2d 629, 634 (5th Cir. 1991).

22         11.    Removal on federal officer (e.g., federal contractor) grounds is also allowed in

23   failure to warn cases.  In *Kerstetter v. Pacific Scientific Co.,* 210 F. 3d 431, 438 (5th Cir.) *cert.*

24   *denied* 519 U.S. 919 (2000), the court held that the government contractor defense is available in

25   "failure to warn" actions where the evidence shows that the lack of a warning reflects

26   governmental direction and control rather than the unfettered discretion of the product's

27   manufacturer.

28         12.    As noted in *Kerstetter*, "[t]he government need not prepare the specifications to

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1442 AND 1446

1  be considered to have approved them." *Id* at 435.  The only material issue is whether the

2  manufacturer's designs and specifications were subjected to "substantial review" rather than a

3  mere "rubber stamp" approval.  *Id.*   Substantial review is established where there is evidence of

4  a "continuous back and forth" between the contractor and the government." *Id.*  In this regard,

5  "[t]he specifications need not address the specific defect alleged; the government need only

6  evaluate the design feature in question." *Id.*  Applying these general principals to "failure to

7  warn" claims, the fact that government specifications or regulations did not specifically preclude

8  the exact warning desired by a plaintiffs does not take a "failure to warn" claim outside the scope

9  of a government contractor defense, so long as the government was generally involved in

10  decisions relating to product warnings and was aware of the hazard in question. *Id* at 438.

11         13.     Further, according to Ret. Admiral Roger Horne: "The Navy retained the final say

12  over the design of any piece of equipment and made the ultimate decision regarding how to

13  resolve an engineering disagreement between the Navy and an outside supplier.  Without prior

14  discussion, approval and acceptance by the Navy, a warning related to asbestos hazards would

15  not have been permitted." See **Exhibit 2**, page 5 at ¶ 12.)

16         14.     "[A]ll equipment, including pumps supplied by Buffalo Pumps for use aboard

17  Navy vessels, was manufactured pursuant to Navy specifications under close supervision by

18  personnel employed by the Navy and approved for installation aboard these vessels exclusively

19  by the Navy and its designated officers.  Any warning purportedly required by state law would

20  not have found its way into a ship as a permanent label on a pump or as a warning in

21  accompanying written materials unless it had been required specifically in the specifications for

22  the product that were issued by the Navy." *Id* at ¶ 15.

23         15.     As explained in the declaration of Martin Kraft: "In the design phase of the pump

24  project, as in all other phases, the Navy retained ultimate decision authority over the design of

25  the pumps.  If engineering disagreements arose between the Navy and an outside design

26  consultant, the Navy controlled the design adopted.  All pumps supplied by Buffalo Pumps to the

27  Navy were built in accordance with the Navy specifications or other technical documentation

28  identified in applicable contract documents." See **Exhibit 3**, page 3 at ¶ 8.

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1442 AND 1446

16.     In addition: "Navy specifications or other technical documents identified in applicable contract documents required Buffalo Pumps to submit for approval and acceptance by the federal government drafts of any manuals, drawings or other written materials required to be provided with regard to pumps it manufactured for the Navy. These requirements were far more detailed and stringent than those imposed by commercial customers. (Exhibit A at 3.5; 3.6; Exhibit B at 3.27; 3.28)." *Id* at ¶ 13.

17.     This approval and acceptance process was not merely a process of submission by Buffalo Pumps of drawings and manuals.  The Navy's review encompassed all aspects of the technical manuals and other written materials submitted to it for approval in the pump design and manufacture process.  Based on my experience and my review of historical materials, I am aware that the Navy required specific changes to the content and wording of manuals submitted by Buffalo Pumps and other naval equipment manufacturers.  These changes included specific edits to cautionary and instructional language, and including warnings and cautions.  Examples of correspondence of this type are attached as Exhibit C." *Id* at ¶ 14.

18.     Buffalo Pumps is not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiffs' action as a whole under 28 U.S.C. §1442(a)(l). *Ely Valley Mines, Inc. v. Hartford Accident Indem. Co.,* 644 F.2d 1310, 1315 (9th Cir. 1981); *Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1034-35 (1998).

19.     A properly removed case cannot be remanded for discretionary or policy reasons, such as allegations of related state cases or contentions that judicial economy compels remand. *Thermitron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 343-44 (1976); *Elrad v. United Life & Accident Ins. Co.,* 624 F. Supp. 742, 743 (N.D. Ill. 1985).

20.     Buffalo Pumps has attached those documents required by 28 U.S.C. section 1446(a) and (b) and the local rules of the United States District Court, Southern District of California, including a copy of the Summons and Complaint filed against it by the plaintiff. **Exhibit 1.**

WHEREFORE, defendant Buffalo Pumps Inc. respectfully requests that the above action now pending against it in the Superior Court of California, County of Los Angeles, be removed

1    to this Court.

2    Dated: _Sept. 28_____, 2010      GORDON & REES LLP

3

4                                By:

5                                  MICHAEL J. PIETRYKOWSKI
                                 GLEN R. POWELL

6                                  Attorneys for Defendant
                                 AIR & LIQUID SYSTEMS CORPORATION,

7                                  SUCCESSOR BY MERGER TO BUFFALO
                                 PUMPS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUFFP/1065431/8489143v.1

-7-

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1442 AND 1446

1

## PROOF OF SERVICE

2      I am a resident of the State of California, over the age of eighteen years, and not a party
to the within action.  My business address is:  Embarcadero Center West, 275 Battery Street,

3   Suite 2000, San Francisco, CA 94111.  On the date set forth below, I served the within
documents:

4

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1442 AND 1446**

5

6   ☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.

7   ☒   by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in United States mail in the State of California at San Francisco,

8         addressed as set forth below.

9   ☐   by personally arranging for the hand delivery via *USA Network Messengers* the
document(s) listed above to the person(s) at the address(es) set forth below.

10     Baron & Budd, LLP
       9465 Wilshire Blvd Ste 460

11     Beverly Hills, CA 90212
       Telephone:      310.860.0476

12     Facsimile:      310.860.0480
       *Plaintiffs' Counsel*

13

14     I am readily familiar with the firm's practice of collection and processing correspondence
for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

15   day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage

16   meter date is more than one day after the date of deposit for mailing in affidavit.

17     I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.     Executed on **September 29, 2009**, at San Francisco, California.

18

19

20     _Samantha Oryall_
       Samantha Oryall

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| KWANG SCANLON, Individually and as Successor-In-Interest to MICHAEL SCANLON, Deceased | Air & Liquid Systems Corporation, successor by merger to Buffalo Pumps, Inc. (erroneously sued as Buffalo Pumps, Inc.) |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Jennifer K. Berg (SBN: 147427) Baron & Budd 9465 Wilshire Boulevard, Suite 460 Beverly Hills, CA 90212 Tele: 310.860-0476 | Michael J. Pietrykowski (SBN: 1118677) Glen R. Powell (SBN 219453) GORDON & REES LLP 275 Battery Street, 20th Floor San Francisco, CA 94111 Telephone: 415.986.5900 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ MONEY DEMANDED IN COMPLAINT: $ 0.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Title 28 U.S.C. section 1442(a)(1) and 1446

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☒ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

CV10 7264

| FOR OFFICE USE ONLY: | Case Number: |
|---|---|

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                CIVIL COVER SHEET                Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

Case 2:10-cv-07264-SVW -JCG   Document 1    Filed 09/29/10   Page 10 of 11   Page ID #:55

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                             ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
 ☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
 ☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date September 29, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV10- 7264 SVW (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
    312 N. Spring St., Rm. G-8
    Los Angeles, CA 90012

[ ] **Southern Division**
    411 West Fourth St., Rm. 1-053
    Santa Ana, CA 92701-4516

[ ] **Eastern Division**
    3470 Twelfth St., Rm. 134
    Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

# EXHIBIT B

1   MICHAEL J. PIETRYKOWSKI (SBN: 118677)
    mpietrykowski@gordonrees.com
2   JAMES SCADDEN (SBN: 090127)
    jhughes@gordonrees.com
3   GLEN R. POWELL (SBN 219453)
    gpowell@gordonrees.com
4   GORDON & REES LLP
    Embarcadero Center West
5   275 Battery Street, Twentieth Floor
    San Francisco, CA 94111
6   Telephone: (415) 986-5900
    Facsimile: (415) 986-8054
7
8   Attorneys for Defendant
    AIR & LIQUID SYSTEMS CORPORATION,
9    successor by merger to BUFFALO PUMPS, INC.

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

13  KWANG SCANLON, individually and        CACD CIVIL ACTION NO.
    as Successor-in-Interest to Michael     2:10-cv-07264-SVW-JCG
14  Scanlon, Deceased
                                            **DEFENDANT BUFFALO PUMPS,**
15                      Plaintiff,           **INC'S REQUEST FOR STAY OF**
                                            **ALL PROCEEDINGS AND**
16       v.                                  **OPPOSITION TO MOTION FOR**
                                            **REMAND**
17  ASBESTOS COMPANIES, et al.,

18                      Defendants.

19

20

21

22

23

24

25

26

27

28

*(left margin, vertical text)* Gordon & Rees LLP  Embarcadero Center West  275 Battery Street, Suite 2000  San Francisco, CA 94111

## Table of Contents

Page No.

I.   THE ENTIRE ACTION SHOULD BE STAYED PENDING
     TRANSFER TO THE MDL ..................................................................... 1

     A.   MDL No. 875 ............................................................................... 1

     B.   This Court Has The Authority to Stay This Action .................... 2

          1.   Judicial Economy Mandates a Stay .................................. 2

          2.   Buffalo Pumps Will Be Prejudiced Absent a Stay ............ 3

          3.   The Potential Prejudice to Plaintiff is Minimal .............. 4

II.  OPPOSITION TO MOTION FOR REMAND .......................................... 4

     A.   The Navy Directed, Controlled The Design & Warnings ............ 5

     B.   Buffalo Pumps' Evidentiary Burden Has Been Met .................... 5

III. FACTS ................................................................................................. 7

     A.   Procedural History & Plaintiffs' Allegations ............................. 7

     B.   Buffalo Pumps Complied With Strict Government
          Specifications ............................................................................. 7

     C.   The Navy Exercised Strict Control Over Written
          Communications, Including Warnings ........................................ 9

     D.   The Navy Was "As Knowledgeable" as Informed Experts
          Regarding Asbestos, and Knew More than Buffalo Pumps ....... 10

IV.  ARGUMENT ....................................................................................... 11

     A.   The Federal Officer Removal Statute is Broadly Construed in
          Favor of Removal ....................................................................... 11

     B.   Removal is Proper Under A Four-Part Test ............................... 11

          1.   Buffalo Pumps Is A Person Under § 1442 ...................... 12

          2.   Buffalo Pumps Acted Under The Direction Of A Federal
               Officer ............................................................................. 12

          3.   Buffalo Pumps Has Raised a Colorable Federal
               "Government Contractor" Defense Pursuant to *Boyle* ..... 13

               a.   The Government Approved Reasonably Precise
                    Specifications for Buffalo Pumps Equipment and
                    the Buffalo Pumps Equipment Conformed to
                    Those Specifications ................................................ 14

               b.   There Were No Dangers About Asbestos Known
                    to Buffalo Pumps That Were Not Known to The
                    U.S. Navy ................................................................ 17

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

i

Table of Contents
(Cont.)

Page No.

4.   A Causal Nexus Exists Between Buffalo Pumps Work
For The Navy And Mr. Scanlon's Alleged Injuries ................. 18

V.     CONCLUSION ....................................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

BUFFALO PUMPS' REQUEST FOR STAY OF ALL PROCEEDINGS AND OPPOSITION
TO MOTION FOR REMAND

Table of Authorities

Page No.

**Cases**

*Arizona v. Manypenny*
    451 U.S. 232 (1981) .................................................................6

*Ballenger v. Agco Corporation*
    2007 WL 1813821 (N.D. Cal. June 22, 2007) .................................12

*Boyle v. United Technologies Corporation*
    487 U.S. 500 (1988) ..........................................................passim

*Burgess v. Colorado Serum., Co. Inc.*
    772 F.2d 844 (11th Cir. 1985) .................................................14

*Colorado v. Symes*
    286 U.S. 510 (1932) ...........................................................14

*Durham v. Lockheed Martin Corporation*
    445 F. 3d 1247 (9th Cir. 2006) ........................................6, 11, 12

*Emory v. McDonnell Douglas Corp*
    148 F. 3d 347 (4th Cir. 1998) .................................................17

*Fung v. Abex Corp.*
    816 F. Supp. 569 (N.D. Cal. 1992) ...........................................13

*Good v. Prudential Insurance Co. of America*
    5 F. Supp. 2d 804 (N.D. Cal. 1998) ...........................................2

*In re Air Disaster at Ramstein Air Base*
    81 F. 3d 570 (5th Cir. 1996) .................................................15

*In re Asbestos Products Liability Litigation (No. VI)*
    771 F. Supp. 415 (J.P.M.L. 1991) ......................................1, 2, 3, 4

*In re Hawaii Federal Asbestos Case*
    960 F. 2d 806 (9th Cir. 1992) .................................................16

*In Re Joint Eastern and Southern Dist. New York Asbestos Litigation*
    897 F. 2d 626 (2d Cir. 1990) ...............................................15, 17

*Kerstetter v. Pacific Scientific Co.*
    210 F. 3d 431 (5th Cir.), cert, denied 519 U.S. 919 (2000) ...........7, 15, 18

*Landis v. North American Co.*
    299 U.S. 248 (1936) ............................................................2

*McKay v. Rockwell Intern. Corp.*
    704 F.2d 444 (9th Cir. 1983) .................................................14

*Mesa v. California*
    489 U.S. 121 (1989) ...........................................................12

*Nesbiet v. GE*
    399 F. Supp. 2d 205 (S.D.N.Y. 2005) .......................................6, 14

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

iii

# Table of Contents
(Cont.)

Page No.

*Oliver v. Oshkosh Truck Corp.*
   96 F. 3d 992 (6th Cir. 1996).....................................................15, 16, 18

*Reiser v. Fitzmaurice*
   1996 U.S. Dist. LEXIS 1368 (S.D.N.Y. 1996)...................................14

*Rivers v. Walt Disney Co.*
   980 F. Supp. 1358 (C.D. Cal. 1997)...............................................2, 3

*Tate v. Boeing Helicopters*
   55 F. 3d 1150 (6th Cir. 1995).............................................................15

*Watson v. Phillip Morris Companies, Inc.*
   551 U.S. 142 (2007); 127 S. Ct. 2301 ...............................................13

*Willingham v. Morgan*
   395 U.S. 402 (1969)...................................................................6, 13, 16

*Winters v. Diamond Shamrock Chem. Co.*
   149 F. 3d 387 (5th Cir. 1998).............................................................6

**Statutes**

28 U.S.C. section 1047 .............................................................................2

28 U.S.C. section 1407 .............................................................................1

28 U.S.C. section 1442 ....................................................................passim

**Rules**

Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Rule 7.5 ........1

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUFFALO PUMPS' REQUEST FOR STAY OF ALL PROCEEDINGS AND OPPOSITION
TO MOTION FOR REMAND

1    AIR & LIQUID SYSTEMS CORPORATION, successor by merger to

2    BUFFALO PUMPS, INC. ("Buffalo Pumps") moves for a stay of all proceedings

3    in this action pending transfer to the MDL and brings this Opposition to plaintiff

4    Kwang Scanlon's ("plaintiff") Motion for Remand at least 21 days prior to the

5    hearing on the Motion as required by Local Rule 7.9.

6    **I.    THE ENTIRE ACTION SHOULD BE STAYED PENDING**
     **TRANSFER TO THE MDL**

7

8    **A.    MDL No. 875**

9    Defendant Buffalo Pumps requests a stay of all proceedings in this action

10   pending transfer to MDL No. 875, the multidistrict ("MDL") proceeding

11   established in the Eastern District of Pennsylvania for co-ordination of all pretrial

12   proceedings in federal product liability actions involving claims of injury from

13   asbestos exposure. *See In re Asbestos Products Liability Litigation (No. VI),* 771

14   F. Supp. 415 (J.P.M.L. 1991).  There is no dispute that this action involves factual

15   claims of injury from asbestos exposure.  Plaintiff alleges decedent MICHAEL

16   SCANLON was exposed to asbestos containing products manufactured by a

17   number of defendants, including Buffalo Pumps, while employed by the United

18   States Navy aboard the USS PIEDMONT (AD-17) and while serving at the San

19   Diego Naval Shipyard from 1964-1966.  *See* Summons and Complaint attached as

20   **Exhibit 1** to Buffalo Pump's Notice of Removal.

21   Pursuant to Rule 7.5(e) of the Rules of Procedure of the Judicial Panel on

22   Multidistrict Litigation, Buffalo provided notice to the Clerk of the Panel on

23   MultiDistrict Litigation ("JPML") on  October 5, 2010, of this tag-along action

24   which involves common questions of fact with numerous other asbestos actions

25   previously transferred by the Panel pursuant to 28 U.S.C. Section 1407.  JMPL

26   Correspondence, attached as **Exhibit 9** to Declaration of Glen R. Powell ("Powell

27   Decl.").  On October 21, 2010, this case was conditionally transferred by the Panel,

28   pending final transfer to the MDL No. 875.  *See* Conditional Transfer Order,

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   attached to Powell Decl as **Exhibit 10**.  Since that time, plaintiff has filed a Motion

2   to Vacate the Conditional Transfer Order.  Buffalo Pumps Opposition is due on

3   December 2.  *See* Briefing Scheduling attached to Powell Decl. as **Exhibit 11.**

### B.      This Court Has The Authority to Stay This Action

5        This court should exercise it's discretion to stay all further proceedings in

6   this action until a decision is rendered on the Motion to Vacate the Conditional

7   Transfer Order.  The decision to grant or deny a temporary stay of proceedings

8   pending a ruling on the transfer of the matter to the MDL court lies within this

9   court's discretion.  *See Landis v. North American Co.,* 299 U.S. 248, 254-55

10  (1936) ("the power to stay proceedings is incidental to the power inherent in every

11  court to control the disposition of the causes on it's docket with economy of time

12  and effort for itself, for counsel, and for litigants"); *see also Good v. Prudential*

13  *Insurance Co. of America,* 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998).

14       Courts analyze three factors when determining whether to issue a stay of

15  proceedings pending possible transfer to the MDL: (1) the judicial resources that

16  would be saved by avoiding duplicative litigation if the cases are in fact

17  coordinated; (2) the hardship and inequity to the moving party if the action is not

18  stayed; and (3) the potential for prejudice to the non-moving party.  *See Rivers v.*

19  *Walt Disney Co.,* 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).

### 1.      Judicial Economy Mandates a Stay

21       Granting a stay of proceedings here will promote judicial economy.  The

22  purpose of the multidistrict litigation is to coordinate the pretrial management of

23  actions sharing common facts in a just and efficient manner.  *See* 28 U.S.C.

24  Section 1047(a).  Here, where the MDL Panel has already coordinated asbestos-

25  related injury actions in the Eastern District of Pennsylvania, there is no question

26  that a stay of these proceedings will promote just and efficient conduct of

27  litigation.  *See In re Asbestos Prods. Liab. Litig., (No. VI (1991),* 771 F.Supp. 415,

28  418; *see also Rivers v. Walt Disney Co.,* 980 F.Supp. at 1360 (court should not

2

1  expend limited resources "familiarizing itself with the intricacies of a case that

2  would be heard [for pre-trial] purposes by another judge.")  The *Rivers* court also

3  noted that "any efforts on behalf of this Court concerning case management will

4  most likely have to be replicated by the judge assigned to handle the consolidated

5  litigation." *Id*. At 1361.

6      Granting a stay in this action pending its inevitable transfer to MDL No. 875

7  will conserve the resources of this Court and prevent duplicative pretrial

8  management efforts.  Indeed, it was primarily the substantial burden on the

9  individual district courts in handling their asbestos cases that led to the creation of

10  the federal asbestos consolidation.  *See In Re Asbestos Products Liability*

11  *Litigation (No. VI)*, 771 F.Supp. at 419.  Without a stay, this Court will need to

12  oversee discovery, hear motions, and generally manage this action until the CTO

13  has become final and the case is transferred to the Eastern District of Pennsylvania

14  for pre-trial proceedings.  A stay should therefore be granted.

15      **2.**   **Buffalo Pumps Will Be Prejudiced Absent a Stay**

16      The prejudice to Buffalo Pumps would be substantial if a stay is not granted.

17  As discussed above, all federal asbestos cases are transferred to the Eastern District

18  of Pennsylvania for consolidated pretrial proceedings.  At the time the asbestos

19  consolidation was set up, it was noted that the courts already had in place "standard

20  pleadings, such as complaint, answer, and discovery." *Id*. At 423.  The Court

21  "meets regularly with counsel and handles on a regular basis all motions and

22  discovery requests." *Id*.  To begin discovery, case management, and other pretrial

23  proceedings in this court, before the case has been transferred to the district court

24  that handles all federal asbestos cases, with its own local rules and case

25  management procedures, would lead to substantial additional – and completely

26  duplicative and wasteful costs to be incurred by Buffalo Pumps.  Buffalo Pumps

27  would have to comply with all case management requirements, and in general fully

28  litigate this action in this Court, and then, if the case is transferred to Pennsylvania,

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

3

1   comply with that court's case management requirements for asbestos cases,

2   including opposing any renewed motion for remand that plaintiff may file.  See

3   MDL No. 875 Administrative Order No. 18, providing procedures for seeking

4   remand.

5                 **3.**      <u>The Potential Prejudice to Plaintiff is Minimal</u>

6        Transfer of asbestos cases to the Eastern District of Pennsylvania was

7   created, among other reasons, to *benefit* plaintiffs as a whole, despite the slight

8   procedural delay that transfer entails, by avoiding wasteful and duplicative

9   litigation.  *See In re Asbestos Prods. Liab. Litig., (No. VI)*, 771 F.Supp. at 419.

10        Furthermore, Plaintiff's pending motion for remand may be renewed once

11   the case is transferred to the Eastern District of Pennsylvania and consolidated

12   under MDL-875.  See MDL No. 875 Administrative Order No. 18; *Hagen v.*

13   *Benjamin Foster Co., et al.*, CV No. 07-63346, pg. 4 (a copy of Judge Robrano's

14   Order is attached as **Exhibit 12** to Powell Decl.)  As such, the transfer of this case

15   to the MDL, and granting of the stay requested, will in no way affect Plaintiff's

16   ability to move for remand should she chose to, conduct discovery and proceed

17   with her case.  Absolutely no harm will result to plaintiff if this Court stays this

18   matter pending transfer to the MDL in the interests of judicial efficiency.

19   **II.**      **OPPOSITION TO MOTION FOR REMAND**

20        If this court decides to consider and rule on plaintiff's motion for remand, it

21   should deny plaintiff's motion.  Buffalo Pumps properly removed this case,

22   consistent with the requirements of the federal officer removal statute, 28 U.S.C.

23   § 1442(a)(1).  Pursuant to this statute, both Congress and the United States

24   Supreme Court have long recognized that persons acting under the direction and

25   control of federal officers (including the United States Navy and its officers) have

26   a distinct and independent right to remove a case so that it may be adjudicated in a

27   federal district court.  The claims plaintiff asserts against Buffalo Pumps involve

28   acts taken by Buffalo Pumps under the direction and control of the United States

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

4

1  Navy and its officers.  This Court should therefore deny plaintiffs' motion for

2  remand.

3       **A.**     <u>The Navy Directed, Controlled The Design & Warnings</u>

4       Buffalo Pumps manufactured and designed equipment sold to the

5  government according to the precise, detailed specifications of the U.S. Navy.

6  Declaration of Ret. Admiral Roger Horne ("Horne Decl."), **Exhibit 2** to Buffalo

7  Pump's Notice of Removal, ¶ 5.  The United States Navy enforced compliance

8  with those specifications.  *Id.*  No aspect of the design of that equipment escaped

9  the close control of the United States Navy and its officers, including all aspects of

10 warnings associated with the equipment.  *Id.* at ¶ 13-15.

11      "All pumps supplied by Buffalo Pumps to the Navy were built in accordance

12 with the Navy specifications or other technical documentation identified in

13 applicable contract documents."  Declaration of Martin Kraft ("Kraft Decl."),

14 attached to Buffalo Pump's Notice of Removal, Exhibit 3, ¶ 8.  Military

15 specifications, also know as "MilSpecs governed numerous aspects of the pump

16 design and manufacture, including the designation of materials to be used in

17 construction. Among numerous other requirements, **the specifications state that**

18 **"[p]ump casing joints shall be made up using compressed asbestos sheet**

19 **gaskets."** (Exhibit A, at 3.4.1.5; Exhibit B, at 3.26)."  *Id.* at ¶ 6.  (Emphasis added.)

20      The U.S. Navy also exercised direction and control over all written

21 documentation to be delivered with Buffalo Pumps.  "[T]he Navy required specific

22 changes to the content and wording of manuals submitted by Buffalo Pumps and

23 other naval equipment manufacturers.  These changes included specific edits to

24 cautionary and instructional language, and including warnings and cautions.

25 Examples of correspondence of this type are attached as Exhibit C."  *Id* at ¶ 14.

26      **B.**     <u>Buffalo Pumps' Evidentiary Burden Has Been Met</u>

27      Plaintiffs wrongly argue that this court should resolve any doubts about

28 removal in favor of remand, in direct contradiction of the weight of authority on

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

5

1   the issue.  A government contractor's protection under § 1442 is much broader

2   then removal jurisdiction under other statutes.  *See, e.g., Durham v. Lockheed*

3   *Martin Corporation,* 445 F. 3d 1247, 1252 (9th Cir. 2006) (citations omitted).  The

4   U.S. Supreme Court "has held that the right of removal is absolute for conduct

5   performed under color of federal office, and has insisted that the policy favoring

6   removal 'should not be frustrated by a narrow, grudging interpretation of

7   1442(a)(1)." *Arizona v. Manypenny*, 451 U.S. 232, 242, (1981) (quoting

8   *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

9        Plaintiffs' also inappropriately urge this court to require that removing

10  defendants prove all the elements of the federal officer defense at the time of

11  removal in order to keep this case in federal court.  But that is not the law.  Buffalo

12  Pumps "need not prove the asserted defense, but need only articulate it's colorable

13  applicability to the plaintiff's claims." *Winters v. Diamond Shamrock Chem. Co.,*

14  149 F. 3d 387, 400  (5th Cir. 1998).  As noted by the *Willingham* court, "one of the

15  most important reasons for removal is to have the validity of the defense of official

16  immunity tried in a federal court.  The officer need not win his case before he can

17  have it removed." *Willingham, supra,* 395 U.S. at 407.  "[N]o determination of fact

18  is required at the removal stage.  All a removing defendant needs to do is to make a

19  showing that his federal defense "is not without foundation and made in good

20  faith." *Nesbiet v. GE,* 399 F. Supp. 2d 205 (S.D.N.Y. 2005).

21        Declarations submitted by Ret. Admiral Roger Horne, Martin Kraft and Dr.

22  Samuel Forman (discussed infra) on behalf of Buffalo Pumps in support of its

23  federal officer defense satisfy the colorable defense good faith foundation

24  evidentiary standard.  They describe in detail the direction and control over Buffalo

25  Pumps supplied to the government and the level of Navy knowledge about the

26  dangers of asbestos.  These affidavits are sufficient to establish that Buffalo Pumps

27  were specially produced at the direction of the government, according to strict

28  government specifications, and that the U.S. Navy knew more about the dangers of

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

6

1   asbestos than Buffalo Pumps and so Buffalo Pumps had no duty to warn.  *Boyle v.*

2   *United Technologies Corporation*, 487 U.S. 500, 512 (1988).

3        While the government contractor defense is available in "failure to warn"

4   actions where, as here, the evidence shows that the lack of a warning reflects

5   governmental direction and control rather than the unfettered discretion of the

6   product's manufacturer (*Kerstetter v. Pacific Scientific Co.,* 210 F. 3d 431, 438 (5th

7   Cir.), *cert, denied* 519 U.S. 919 (2000)).  the defense is also available where, as

8   here, plaintiffs also assert a design defect claim.  Pl. Complaint, ¶ 26, pg. 13;

9   *Boyle, supra,* 487 U.S. at 511-512.  Under either theory of recovery, the federal

10  officer defense applies and this court should deny plaintiffs' remand motion in

11  response to plaintiffs' failure to warn and design defect claims.

### III.   FACTS

A.   <u>Procedural History & Plaintiffs' Allegations</u>

14       On or about August 13, 2010, plaintiff filed her wrongful death Complaint

15  against approximately 27 defendants, including Buffalo Pumps, in the Superior

16  Court of the State of California, County of Los Angeles.  The Complaint included

17  a failure to warn and design defect claims.

18       Plaintiff alleges decedent MICHAEL SCANLON was exposed to asbestos

19  containing products manufactured by a number of defendants, including Buffalo

20  Pumps, while employed by the United States Navy aboard the USS PIEDMONT

21  (AD-17) and while serving at the San Diego Naval Shipyard from 1964-1966.  (A

22  true and correct copy of the Summons and Complaint is attached as **Exhibit 1** to

23  Buffalo's Notice of Removal.)

24   B.   <u>Buffalo Pumps Complied With Strict Government Specifications</u>

25       Buffalo Pumps' equipment for the U.S. Navy was provided pursuant to, and

26  complied with, government specifications.  Martin Kraft is Buffalo Pumps' long

27  serving company witness.  He states that "[t]he manufacture of [Buffalo] pumps

28  for use on Navy vessels is governed by an extensive set of general and specific

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

7

1   federal standards and specifications, chiefly military specifications known as

2   "Milspecs".  The Milspecs governed all aspects of a pump's design and

3   construction and specified the materials to be used, including materials such as

4   gaskets and packing used in pumps. . . . .  Among numerous other requirements,

5   **the specifications state that "[p]ump casing joints shall be made up using**

6   **compressed asbestos sheet gaskets."** (Exhibit A, at 3.4.1.5; Exhibit B, at 3.26)."

7   Kraft Decl., **Exhibit 3, ¶¶** 5,6.

8       "In the design phase of the pump project as in all other phases, the Navy

9   retained ultimate decision authority over the design of the pumps.  If engineering

10  disagreements arose between the Navy and an outside design consultant, the Navy

11  controlled the design adopted."  *Id.* at ¶  8.  All equipment Buffalo Pumps

12  manufactured and supplied to the U.S. Navy was in fulfillment of government

13  contracts and followed precise specifications set forth by the U.S. government:

- Military specifications for Buffalo Pumps and other equipment intended for use on Naval vessels, known as "Milspecs," were drafted, approved, and maintained by the U.S. Navy to encompass all aspects of shipboard equipment, including material requirements. Kraft Decl., ¶ ¶ 5-6; Horne Decl., ¶ ¶  10-11.  These contract specifications reflected the state of the art and the special needs of vessels destined for combat.  *Id.*  The Navy's unique specifications for pumps and other auxiliary equipment were communicated to suppliers such as Buffalo Pumps and the Navy issued its Request for Proposal for shipboard equipment.  Horne Decl., ¶ 11.

- The U.S. Navy, through several layers of authority, exercised detailed technical control over ship design, construction and repair.  Horne Decl., ¶ 6-7.  For example, the Navy dictated characteristics unique to Navy pump applications that differed from pumps sold to commercial customers, including "stringent endurance requirements, and the testing to document them, that differed from standard commercial standards and expectations (Exhibit A at 4.1.2; Exhibit B at 4.4.2); use of different metals — gun metal, nickel-copper alloys, specialized bronzes, and other materials — not frequently used by Buffalo Pumps in non-military applications (Exhibit A at 3.4.1.7; Exhibit B. at 3.2.1-2); "standard" Navy sizes for input and output piping and, therefore, for the associated flanges on the pumps, that differed from those in commercial industry (Exhibit A at 3.3.16.8; Exhibit B at Fig. 1-6.); special hardware and fittings that differed from those in standard use in commercial applications (Exhibit A at 3.3.22); and specialized welding procedures different from standard welding used on commercial pumps (Exhibit A at 3.3.2.4)."  Kraft Decl., attached to Powell Decl., Exhibit 3, ¶ 12.

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

8

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

**C.** **The Navy Exercised Strict Control Over Written Communications, Including Warnings**

The U.S. Navy also exercised direction and control over all written documentation to be delivered with Buffalo Pumps. Admiral Horne explains that "the Navy had detailed specifications that governed the form and content of written materials to be delivered with equipment, including pumps, supplied to the Navy. These written materials typically consisted of technical or instruction manuals that were designed to assist the Navy engineering staff in servicing and maintaining the equipment. Navy personnel participated in and approved the preparation of this kind of information. The Navy specifications for these manuals contained detailed direction as to the kinds of information to be included. . . . These specifications did not require manufacturers of Naval equipment, such as pumps, to include warnings pertaining to potential asbestos hazards. Indeed, for the reasons already discussed above, a manufacturer such as Buffalo Pumps would not have been permitted to include a warning regarding asbestos in an equipment manual or on a product label. The Navy's detailed specifications did not leave room for individual manufacturers to make determinations about the inclusion of a warning." Horne Decl., **Exhibit 2**, ¶ 13-15.

Martin Kraft's discussion of warnings is consistent with that of Admiral Horne. He states the "[N]avy specifications or other technical documents identified in applicable contract documents required Buffalo Pumps to submit for approval and acceptance by the federal government drafts of any manuals, drawings or other written materials required to be provided with regard to pumps it manufactured for the Navy. These requirements were far more detailed and stringent than those imposed by commercial customers. (Exhibit A at 3.5; 3.6; Exhibit B at 3.27; 3.28)." Kraft Decl., **Exhibit 3**, ¶ 13. "[T]he Navy required specific changes to the content and wording of manuals submitted by Buffalo Pumps and other naval equipment manufacturers. These changes included specific

9

1  edits to cautionary and instructional language, and including warnings and

2  cautions.  Examples of correspondence of this type are attached as Exhibit C." *Id*

3  at ¶ 14.

**D.   The Navy Was "As Knowledgeable" as Informed Experts Regarding Asbestos, and Knew More than Buffalo Pumps**

6  The Navy knew far more about asbestos than Buffalo Pumps.  "As early as

7  1922, the Navy recognized, as exemplified by its instructions to officers published

8  in the Navy Medical Bulletin, the health hazards associated with airborne asbestos

9  dust and the appropriate protective measures to prevent asbestos exposure.  These

10  included the use of water to dampen dust, exhaust systems to remove dust,

11  enclosed chambers to prevent escape of dust and respirators (Exhibit G)."

12  Declaration of Samuel A. Forman, M.D. ("Forman Decl."), attached as Exhibit 13,

13  ¶ 14 to Powell Decl..  "The Navy's knowledge in the areas of asbestos and

14  associated health conditions has been quite complete when compared to available

15  knowledge over time, and at least by the early 1940s, the Navy had become a

16  leader in the field of occupational medicine relating to, among other things,

17  asbestos exposure." *Id* at ¶ 13.  For example, in the early 1940s, the U.S. Navy

18  developed a set of "Minimum Requirements for Safety and Industrial Health in

19  Contract Shipyards," which included guidelines on minimum safety requirements

20  with respect to exposure to asbestos dust.  Forman Decl., ¶ 23-25.

21  Dr. Forman states that "the Navy's occupational health program in no way

22  depended upon, required or sought advice from equipment manufacturers

23  regarding long-term occupational health issues, including those posed by exposure

24  to asbestos dust.  I have not uncovered -- nor would I have expected to based on

25  my research and experience and the extent of the Navy's knowledge in these areas

26  - situations in which the Navy solicited from suppliers of shipboard equipment any

27  information or guidance regarding the appropriate methods for the prevention of

28  exposure to asbestos.  Given the Navy's state-of-the-art knowledge concerning

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

10

1   asbestos related hazards and its robust safety and health program, it would be

2   unreasonable to assume that the Navy would have accepted any advice pertaining

3   to asbestos related safety precautions from a manufacturer of equipment." *Id* at

4   ¶ 45.

## IV.   ARGUMENT

6          The evidence set out above establishes that Buffalo Pumps did in fact make

7   pumps under the direction and control of the Navy through its contracts to design,

8   manufacture and supply pumps to precise specifications.  The evidence also shows

9   that the presence of or absence of warnings was strictly controlled by the Navy.

10  The Navy was as aware of the potential hazards of asbestos as anyone.  Buffalo

11  Pumps is therefore entitled to remove this case pursuant to 28 U.S.C. § 1442.

**A.   The Federal Officer Removal Statute is Broadly Construed in
        Favor of Removal**

14         A civil action may be removed by "[a]ny officer of the United States or any

15  agency thereof, *or person acting under him*, for any act under color of such office."

16  28 U.S.C § 1442(a)(1) (emphasis added).   "[T]he Supreme Court has mandated a

17  generous interpretation of the federal officer removal statute . . . [and] has held that

18  the right of removal is absolute for conduct performed under color of federal

19  office, and has insisted that the policy favoring removal should not be frustrated by

20  a narrow, grudging interpretation of § 1442(a)(1)."  *Durham, supra,* 445 F. 3d at

21  1252.  Plaintiff wrongly argues that this Court should strictly construe the federal

22  officer removal statute against removal and in favor of remand.  As *Durham*

23  recognizes, removal rights are much broader under the federal officer removal

24  statute (§ 1442) than when based on other grounds, and the presumption is in favor

25  of removal.

**B.   Removal is Proper Under A Four-Part Test**

27         Removal complies with section 1442 when a defendant establishes that: (1)

28  it is a person; (2) it acted under the direction of a federal officer; (3) it can raise a

11

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   colorable federal defense to plaintiff's claims and; (4) there is a causal nexus

2   between plaintiff's claims and the acts it performed under color of federal office.

3   *Mesa v. California*, 489 U.S. 121, 124-25 (1989).  No fewer than five California

4   federal district courts have held that they are required to interpret section 1442

5   broadly in favor of removal in such circumstances.  *Ballenger v. Agco*

6   *Corporation*, 2007 WL 1813821 (N.D. Cal. June 22, 2007) (a copy of Judge

7   Wilken's Order is attached to Buffalo Pumps' Notice of Removal as Exhibit 4);

8   *Nelson v. Alfa Laval, Inc. et al*, CV 07-8338VBF(RCx) (a copy of Judge

9   Fairbank's Order is attached to Buffalo Pumps' Notice of Removal as Exhibit 5);

10  *Wright v. A.W Chesterton, Inc.*, CV 07-05403MJJ (a copy of Judge Jenkin's Order

11  is attached to Buffalo Pumps' Notice of Removal as Exhibit 6); *Oberstar v. CBS*

12  *Corp.*, CV 08-118PA (JWJx) (a copy of this order is attached to Buffalo Pumps'

13  Notice of Removal as Exhibit 7); *Jenkins v. Allied Packing and Supply, Inc.* 09

14  CV101-DMS, (a copy of this order is attached to Buffalo Pumps' Notice of

15  Removal as Exhibit 8).  In addition, *see Hagen v. Benjamin Foster Co.,* et al CV

16  07-63346, wherein Judge Edguardo Robreno sitting in MDL No. 875 held that "a

17  defendant is entitled to removal under Section 1442(a) (1) where [as here] the

18  defendant identifies facts which, viewed in the light most favorable to the

19  defendant entitle him or her to a complete defense" (a copy of this order is attached

20  hereto as **Exhibit 12**, page 15).

21   1.   **Buffalo Pumps Is A Person Under § 1442**

22   Plaintiff does not dispute that Buffalo Pumps is a corporation and as such is

23  a person within the meaning of the statute.  *Fung v. Abex Corp.* 816 F. Supp. 569,

24  572 (N.D. Cal. 1992).  Accordingly, this element is met.

25   2.   **Buffalo Pumps Acted Under The Direction Of A Federal**

26   **Officer**

27   Buffalo Pumps satisfies the "acting under" a federal officer requirement

28  where it shows it "lawfully assist[s] the federal officer in the performance of his

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

12

1  official duty." *Watson v. Phillip Morris Companies, Inc.* 551 U.S. 142 (2007); 127

2  S. Ct. 2301, 2307 (citations omitted.)  The U.S. Supreme Court has ruled that

3  government contractors (such as Buffalo Pumps) meet the "acting under"

4  definition because "the assistance that government contractors provide federal

5  officers goes beyond simple compliance with the law and helps officers fulfill

6  other basic governmental tasks.  In the context of *Watson,* for example, Dow

7  Chemical fulfilled the terms of a contractual agreement by providing the

8  Government with a product that it used to help conduct a war."  *Id* at 2308.

9       Here, support for the proposition that Buffalo Pumps acted under the

10  direction of the U.S. Navy is set forth in the Declaration of Martin Kraft, company

11  witness for Buffalo Pumps, and the Declaration of Ret. Admiral Roger Horne.  The

12  comprehensive declarations of Mr. Kraft and Ret. Admiral Roger Horne coupled

13  with the *Watson* court's own finding that government contractors meet the

14  requirements of § 1442(a) confirm that Buffalo Pumps satisfies this element.

15       **3.    Buffalo Pumps Has Raised a Colorable Federal**
      **"Government Contractor" Defense Pursuant to *Boyle***

16

17       The U.S. Supreme Court has held that a defendant such as Buffalo Pumps

18  need not prove that it can sustain the federal officer defense, but only must present

19  a colorable claim. *Willingham, supra,* 395 U.S. at 407.  A defense may be

20  colorable even if the court ultimately rejects it.  "At the removal stage it is not the

21  Court's role to assess the validity of a particular defense.  The . . . phrase 'under

22  color of . . .office' allows removal, even if, on the record then existing, it could not

23  be said that the officers had a clearly sustainable defense.'"  *Nesbiet v. GE,* 399 F.

24  Supp. 2d 205, 210-211 (S.D.N.Y. 2005), *citing Reiser v. Fitzmaurice,* 1996 U.S.

25  Dist. LEXIS 1368 at *3 (S.D.N.Y. 1996).  Removal under § 1442 requires no

26  conclusive determination of facts, "but it must fairly appear from the showing

27  made that the claim is not without foundation and is made in good faith."

28  *Colorado v. Symes* 286 U.S. 510, 519 (1932).

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

13

1   Here, Buffalo Pumps has asserted the government contractor defense.

2   Under this defense, a government contractor is protected from liability "for acts

3   done by him while complying with government specifications during execution of

4   performance of a contract with the United States." *McKay v. Rockwell Intern.*

5   *Corp.*, 704 F.2d 444, 448 (9th Cir. 1983).  The rationale underpinning the

6   government contractor defense is that, given the immunity afforded the Federal

7   government for claims arising out of the performance of discretionary functions,

8   "in circumstances in which the government would not be liable, private contractors

9   who act pursuant to government directives should not be liable." *Burgess v.*

10   *Colorado Serum., Co. Inc.*, 772 F.2d 844, 846 (11th Cir. 1985).

11   The government contractor defense bars liability when:  "(1) the United

12   States approved reasonably precise specifications; (2) the equipment conformed to

13   those specifications; and (3) the supplier warned the United States about the

14   dangers in the use of the equipment that were known to the supplier but not to the

15   United States." *Boyle, supra,* 487 U.S. at 512.  Each of these requirements is met in

16   this case.

17       **a.**    **The Government Approved Reasonably Precise**
18              **Specifications for Buffalo Pumps Equipment and the**
           **Buffalo Pumps Equipment Conformed to Those**
19              **Specifications**

20   The uncontroverted evidence submitted by Buffalo Pumps establishes that

21   the U.S. Navy provided precise and detailed specifications that controlled every

22   aspect of the design and manufacture of Buffalo Pumps, including any warnings or

23   written information accompanying the equipment.  Kraft Decl., ¶¶ 3-15; Horne

24   Decl., ¶¶ 5-23.  The U.S. Navy not only provided exact specifications for the

25   equipment it needed, it also retained the "final say" over the design of any piece of

26   equipment.  Horne Decl., ¶ 12.

27   Plaintiffs argue that Buffalo Pumps must provide evidence that the

28   Government had reasonably precise specifications with respect to warnings or that

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

14

1   warnings were prohibited.  The cases cited by plaintiffs however are outliers that

2   reflect a minority view.  In the majority view, Buffalo Pumps is required only to

3   show that the lack of a warning reflects governmental direction and control rather

4   than the unfettered discretion of the product's manufacturer.  *See e.g., Kerstetter,*

5   *supra,* 210 F.3d at 438.  The weight of authority on the issue, including cases relied

6   upon by plaintiffs, hold that the government contractor defense may be applied in

7   failure to warn cases where the government was involved to some degree in the

8   decision to provide or not to provide a warning.  See *In Re Joint Eastern and*

9   *Southern Dist. New York Asbestos Litigation,* 897 F. 2d 626 (2d Cir. 1990);

10  *Kerstetter, supra,* 210 F. 3d at 438; *In re Air Disaster at Ramstein Air Base,* 81 F.

11  3d 570 (5th Cir. 1996); *Tate v. Boeing Helicopters,* 55 F. 3d 1150 (6th Cir. 1995);

12  *Oliver v. Oshkosh Truck Corp.* 96 F. 3d 992 (6th Cir. 1996).

13       More specifically, in *In re Joint Asbestos Litigation,* 897 F. 2d at 630, the

14  Second Circuit held that the government contractor defense could apply in a failure

15  to warn case if it could be shown that the government officials were the "agents or

16  decision" regarding the content of warnings.  As noted above, Buffalo Pumps has

17  submitted such proof.  In *Oliver,* the Seventh Circuit held that the government

18  contractor defense applied to bar a state law failure to warn claim and rejected the

19  suggestion that a warning case required proof that the government "prohibited"

20  warnings altogether or "dictated" the contents the warning actually incorporated.

21  96 F. 3d at 1004, fn. 8.

22       Although the Ninth Circuit declined to apply the government contractor

23  defense to a failure to warn claim in *In re Hawaii Federal Asbestos Cases,* 960 F.

24  2d 806 (9th Cir. 1992), that case is distinguishable in several respects.  First, the

25  procedural posture in that case was different.  The defendant asbestos manufacturer

26  was appealing from judgment **following a trial**.  960 F. 2d at 808.  On this point, it

27  should be noted that the U.S. Supreme Court has held that a defendant need not

28  prove its case to maintain a government contractor defense at this early stage.

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

15

1    *Willingham v. Morgan,* 395 U.S. 402, 406-407 (1969).  Second, the asbestos

2    insulation products at issue were not considered "military equipment" because

3    (unlike he present case) they were not specifically manufactured for the military.

4    *Id* at 811-812.  Third, in stark contrast to the extensive declarations here, there was

5    a complete lack of evidence in *In re Hawaii* regarding the government's role with

6    regard to the approval of the nature or content of the product's warnings.  *Id.*

7         Here, Buffalo Pumps has provided that which was lacking in *In re Hawaii*

8    *Federal Asbestos Cases,* including evidence that any products Buffalo Pumps

9    manufactured for the U.S. Navy were provided subject to the direction and control

10   of the Navy, and that the Navy was intimately involved with every aspect of their

11   manufacture and the nature and content of any warnings that may accompany

12   Buffalo Pumps's equipment.

13        To meet its evidentiary burden under *Boyle* with respect to the colorable

14   defense element, all Buffalo Pumps need show is that the United States approved

15   reasonably precise specifications and the Buffalo Pumps equipment conformed to

16   those specifications.  Nothing more.  Here, Martin Kraft establishes that as early as

17   1953, the U.S. Navy Milspecs governed all aspects of a Buffalo Pumps' design and

18   construction and, contrary to plaintiff's claim, did specify the use of asbestos

19   containing sheet gaskets.  Kraft Decl., ¶ 5, 6.  Plaintiffs do not claim that the

20   Buffalo Pumps did not conform to these precise specifications.  Moreover, this

21   defendant has provided evidence showing that their pumps would have conformed

22   to those specifications.  Admiral Horne states that "the Navy retained the final say

23   over the design of a piece of equipment and made the final ultimate decision

24   regarding how to resolve an engineering disagreement between the Navy and an

25   outside supplier."  Horne Decl., ¶ 12.  "[A] warning relating to asbestos hazards

26   would not have been permitted."  *Id.*  Under *Boyle,* this evidence meets the

27   colorable defense good faith foundation evidentiary standard.  Buffalo Pumps has

28   shown that its " military contractor's defense under Boyle is to claim, "the

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

16

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  government made me do it." *In re Joint Asbestos Litigationn*, 897 F. 2d at 632.

2                  **b.**    **There Were No Dangers About Asbestos Known to**

3                      **Buffalo Pumps That Were Not Known to The U.S. Navy**

4      *Boyle* stands for the proposition that Buffalo Pumps was required to warn

5  the U.S. Navy about those hazards that were known to Buffalo Pumps, but not to

6  the U.S. Navy. *Boyle, supra*, 487 U.S. at 512. But the fact is **there were no such**

7  **hazards.** Since long before Mr. Scanlon began his Navy service and at all times

8  since, the U.S. Navy was as knowledgeable and sophisticated as anyone about the

9  potential hazards of asbestos. The Navy's knowledge concerning the hazards of

10  asbestos was state of the art, and the Navy was implementing programs of their

11  own that they believed were appropriate to control such hazards. Forman Decl.,

12  ¶¶ 13-14; 23-35, 43-45, **Exhibit 13.** Any effort by Buffalo Pumps to communicate

13  a warning would not have been accepted. *Id.* at ¶ 45.

14      The evidence submitted by Buffalo Pumps clearly demonstrates that the

15  Navy was fully aware of the hazards associated with the use of asbestos and as

16  such Buffalo Pumps had no duty to warn the U.S. Navy. *See Emory v. McDonnell*

17  *Douglas Corp.,* 148 F. 3d 347, 352 (4th Cir. 1998) [supporting the proposition that

18  Buffalo Pumps had no duty to warn the U.S. Navy about hazards of which it was

19  already aware].

20      It should be noted that Buffalo Pumps need not present proof , though it has,

21  that the government knew of the precise danger for the defense to apply. Buffalo

22  Pumps satisfies the Navy knowledge element as a matter of law where there is "no

23  indication" that the contractor "possessed any greater knowledge" than the

24  government concerning dangers. *Oliver v. Oshkosh Truck Corp.,* 96 F. 3d 992,

25  1001 (7th Cir. 1996) (finding in favor of contractor despite lack of specific

26  evidence government knew of defect); *Kerstetter v. Pacific Scientific Co.,* 210 F.

27  3d 431, 438 n. 9 (5th Cir. 2000) (affirming summary judgment where there was "no

28  evidence that [contractor] knew information . . .that was not known to the

1    government.")

2        **4.    A Causal Nexus Exists Between Buffalo Pumps Work For
3               The Navy And Mr. Scanlon's Alleged Injuries**

4        The facts set forth above show that there is a causal nexus between the

5    federal direction of Buffalo Pumps and the claims for which it has been sued ---

6    namely, failure to warn of some defect in its product.  As discussed above, the U.S.

7    Navy directed and controlled all specifications for manufacturing pumps, including

8    specifying the materials to be used in such equipment and ensuring that Buffalo

9    Pumps conformed to those specifications.  Further, Buffalo Pumps' duty to warn

10   extends only to those hazards unknown to the government.  Moreover, Buffalo

11   Pumps' evidence shows that the Navy controlled the nature of warnings to be

12   included with its equipment and that the Navy did not permit contractors to deviate

13   from any of its specifications.  Thus, with respect to plaintiff's failure to warn

14   claim, there is a causal nexus between these claims and Buffalo Pumps' actions

15   taken pursuant to the directions of federal officers.

16                        V.    **CONCLUSION**

17       Buffalo Pumps is being sued for products it made under the control and

18   direction of federal officers in the U.S. Navy.  Removal was proper.  This Court

19   should deny plaintiff's motion for remand.

20   DATED:  November 14, 2010            Respectfully submitted,

21
22                                       GORDON & REES LLP
                                         By.
23                                       GLEN R. POWELL
                                         Attorneys for Defendant AIR & LIQUID
24                                       SYSTEMS CORPORATION, successor by
25                                       merger to BUFFALO PUMPS, INC.

26

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

BUFFALO PUMPS' REQUEST FOR STAY OF ALL PROCEEDINGS AND OPPOSITION
TO MOTION FOR REMAND

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP, Embarcadero Center West, 275 Battery Street, Suite 2000, San Francisco, CA 94111. On **November 15, 2010**, the following documents:

**DEFENDANT BUFFALO PUMPS, INC.'S REQUEST FOR STAY OF ALL PROCEEDINGS AND OPPOSITION TO MOTION FOR REMAND**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in UNITED STATES MAIL in the State of California at San Francisco, addressed as set forth below.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **November 15, 2010**, at San Francisco, California.

_Samantha Oryall_
Samantha Oryall

# EXHIBIT C

1   John Langdoc, Esq. (SBN 235509)
    Denyse Clancy, Esq. (SBN 255276)
2   Eric Policastro, Esq. (SBN 264605)
    BARON & BUDD, P.C.
3   3102 Oak Lawn Avenue, Suite 1100
    Dallas, Texas 75219
4   Telephone: 214/521-3605
              800/222-2766
5   Facsimile: 214/520-1181

6   Attorneys for Plaintiff

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  KWANG SCANLON, Individually and as  )  CASE NO: 2:10-CV-07264-SVW-JCG
    Successor-In-Interest to MICHAEL  )
12  SCANLON, Deceased;  )  **JOINT STIPULATION TO STAY STATUS**
                 )  **CONFERENCE**
13        Plaintiff,  )
                 )
14                )
    vs.  )  Judge:    Hon. Stephen V. Wilson
15                )  Courtroom.:  6
    ASBESTOS COMPANIES, et al.  )
16                )
          Defendants.  )
17                )
                )
18  _____)

19        **JOINT STIPULATION TO STAY STATUS CONFERENCE**

20      Plaintiff, Kwang Scanlon, individually and as successor-in-interest to Michael Scanlon

21  ("Plaintiff"), and Buffalo Pumps, Inc. and Flowserve Corporation ("Defendants")[1/] enter into this

22  stipulation requesting a stay in the November 1, 2010 Status Conference in this case. This court's

23

24  order of October 1, 2010 set a Status Conference on November 1, 2010. On October 21, 2010, the

25  United States Judicial Panel on Multidistrict Litigation filed a Conditional Transfer Order in this case.

26  Counsel for Plaintiff and Defendants respectfully request this Court to stay the Status Conference on

27

28

_____

[1/]  Defendant CBS Corporation has been dismissed by agreement. See Exhibit 1 attached hereto.

1    November 1, 2010, pending final transfer to the United States District Court for the Eastern District

2    of Pennsylvania.

3          Plaintiff and Defendants respectfully request the court's approval to this Joint Stipulation to

4    stay the Status Conference in this matter.

5

6

7    DATED: October 29, 2010                           BARON & BUDD, P.C

8

9                                                      By: *John Langdoc* _____

10                                                         John Langdoc
                                                           Attorney for Plaintiff

11

12                                                     GORDON & REES LLP

13

14                                                     By: _____
                                                           Glen R. Powell
15                                                         Attorney for Buffalo Pumps, Inc.

16

17                                                     FOLEY & MANSFIELD PLLP

18

19                                                     By: _____
                                                           Keith M. Ameele
20                                                         Attorney for Flowserve Corporation

21

22

23

24

25

26

27

28

1    November 1, 2010, pending final transfer to the United States District Court for the Eastern District

2    of Pennsylvania.

3        Plaintiff and Defendants respectfully request the court's approval to this Joint Stipulation to

4    stay the Status Conference in this matter.

5

6

7    DATED: October 29, 2010                    BARON & BUDD, P.C

8

9                                               By: _____

10                                                  John Langdoc
                                                    Attorney for Plaintiff

11

12                                              GORDON & REES LLP

13

14                                              By: _____

15                                                  Glen R. Powell
                                                    Attorney for Buffalo Pumps, Inc.

16

17                                              FOLEY & MANSFIELD PLLP

18

19                                              By: _____

20                                                  Keith M. Ameele
                                                    Attorney for Flowserve Corporation

21

22

23

24

25

26

27

28

-2-

JOINT STIPULATION TO STAY STATUS CONFERENCE



1    November 1, 2010, pending final transfer to the United States District Court for the Eastern District

2    of Pennsylvania.

3        Plaintiff and Defendants respectfully request the court's approval to this Joint Stipulation to

4    stay the Status Conference in this matter.

5

6

7    DATED: October 29, 2010                          BARON & BUDD, P.C

8

9                                                     By: _____

10                                                         John Langdoc
                                                          Attorney for Plaintiff

11

12                                                   GORDON & REES LLP

13

14                                                   By: _____

15                                                       Glen R. Powell
                                                        Attorney for Buffalo Pumps, Inc.

16

17                                                   FOLEY & MANSFIELD PLLP

18                                                   By: _____

19                                                       Keith M. Ameele
                                                        Attorney for Flowserve Corporation

20

21

22

23

24

25

26

27

28
                                              -2-

                        JOINT STIPULATION TO STAY STATUS CONFERENCE

**Certificate of Service**

I am a resident of, or employed in the County of Dallas, State of Texas.  I am over the age of 18 and not a party to this action. My business address is: 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas 75219.

On the 29th day of October, 2010, I served the following documents:

JOINT STIPULATION TO STAY STATUS CONFERENCE

[PROPOSED] ORDER

by method indicated below, on the parties in this action:

Keith M. Ameele
Foley & Mansfield, P.L.L.P.
300 South Grand Avenue
Suite 2800
Los Angeles, CA  90071
(213) 283-2100 (Phone)
(213) 283-2101 (Fax)
        Attorneys for FLOWSERVE CORPORATION

Glen R. Powell
Gordon & Rees, L.L.P.
Embarcadero Center West
Twentieth Floor
275 Battery Street
San Francisco, CA  94111
(415)986-5900 (Phone)
(415)986-8054 (Fax)
        Attorneys for GOULDS PUMPS INCORPORATED

X       **BY ECF/PACER**
        By transmitting the same via ECF/PACER on all parties opting for E-Service.

        (STATE)       I declare under penalty of perjury under the laws of the State of Texas that the above is true and correct.
        (FEDERAL)   I declare under penalty of perjury under the laws of the United States that I am employed in the office of a member of the bar of this court at whose direction the service is made.

Dated:   29th day of October, 2010

Renee Vasquez

# EXHIBIT 1

**Lindsey Goldstein**

| | |
|---|---|
| **From:** | Eric Policastro |
| **Sent:** | Friday, October 29, 2010 4:40 PM |
| **To:** | Lindsey Goldstein |
| **Subject:** | Fw: Scanlon dismissal |

```
------Original Message------
From: Kevin D. Jamison
To: Eric Policastro
Cc: David Larmore
Subject: RE: Scanlon dismissal
Sent: Oct 27, 2010 12:14 PM
```

Eric — attached is the stipulation and order.  If you want to sign and scan, sending it
back to us, we can get the stip/order re: dismissal filed.

Thanks, Kevin

```
-----Original Message-----
From: Eric Policastro [mailto:epolicastro@baronbudd.com]
Sent: Monday, October 25, 2010 12:27 PM
To: Kevin D. Jamison
Cc: David Larmore
Subject: RE: Scanlon dismissal
```

That would be helpful.  Thanks.

```
-----Original Message-----
From: Kevin D. Jamison [mailto:KJamison@PondNorth.com]
Sent: Monday, October 25, 2010 2:25 PM
To: Eric Policastro
Cc: David Larmore
Subject: Re: Scanlon dismissal
```

Agreed. Shall my office prepare the stipulation and order re dismissal
and waiver of costs?

Thanks, Kevin

```
Kevin D. Jamison
POND NORTH LLP
350 South Grand Avenue
Suite 3300
Los Angeles, California 90071
Main:  213/617-6170
Fax:   213/623-3594
Direct:  213/617-6197
Cell:   909/319-5938
```

Sent from my wireless handheld.

```
----- Original Message -----
From: Eric Policastro <epolicastro@baronbudd.com>
To: Kevin D. Jamison
Cc: David Larmore
Sent: Mon Oct 25 12:21:58 2010
Subject: RE: Scanlon dismissal
```

Kevin— Plaintiffs can dismiss CBS without prejudice in exchange for a

1

mutual waiver.  Agreed?
-----Original Message-----
From: Kevin D. Jamison [mailto:KJamison@PondNorth.com]
Sent: Monday, October 25, 2010 2:16 PM
To: Eric Policastro; Jennifer Berg
Cc: David Larmore
Subject: RE: Scanlon dismissal


Eric - I haven't heard from you.  Are we able to connect

------Original Message Truncated------

1   FRANK D. POND (Bar No. 126191)
    KEVIN D. JAMISON (Bar No. 222105)
2   kjamison@pondnorth.com
    DAVID G. LARIMORE (Bar No. 216041)
3   dlarimore@pondnorth.com
    POND NORTH LLP
4   350 South Grand Avenue, Suite 3300
    Los Angeles, CA 90071
5   Telephone:   (213) 617-6170
    Facsimile:   (213) 623-3594
6
    Attorneys for Defendant CBS CORPORATION, a
7   Delaware corporation, f/k/a Viacom Inc., successor by
    merger to CBS Corporation, a Pennsylvania corporation,
8   f/k/a Westinghouse Electric Corporation

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION, LOS ANGELES

12

13   KWANG SCANLON, Individually and      Case No:  2:10-CV-07264-SVW-JCG
     as successor-in-interest to MICHAEL
14   SCANLON,                             STIPULATION AND [PROPOSED]
                                          ORDER RE: DISMISSAL OF
15             Plaintiffs,                DEFENDANT CBS CORPORATION

16        v.                             Judge: Hon. Stephen V. Wilson
                                         Courtroom:  6
17   ASBESTOS COMPANIES, et al.
     Defendants.

18

19        IT IS HEREBY STIPULATED AND AGREED TO by and between counsel

20   for Plaintiff KWANG SCANLON, Individually and as successor-in-interest to

21   MICHAEL SCANLON (hereinafter "Plaintiff") and Defendant CBS

22   CORPORATION, a Delaware corporation, f/k/a Viacom Inc., successor by merger

23   to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric

24   Corporation ("Westinghouse") that pursuant to Federal Rules of Civil Procedure

25   41:

26        1.            Defendant CBS CORPORATION, a Delaware corporation,

27                      f/k/a Viacom Inc., successor by merger to CBS Corporation, a

28

                                    1
     STIPULATION AND [PROPOSED] ORDER RE: DISMISSAL OF DEFENDANT CBS
                               CORPORATION
     4520-2152:633633.1

1                Pennsylvania corporation, f/k/a Westinghouse Electric

2                Corporation, shall be dismissed from the action without

3                prejudice;

4

5       2.          Each party shall bear their own costs.

6  DATED:                     BARON & BUDD, P.C.

7

8

9                        By: _____

                               John Langdoc

10                          Eric A. Policastro

                          Attorneys for Plaintiff, KWANG

11                        SCANLON, Individually and as

                        successor-in-interest to MICHAEL

12                        SCANLON

13  DATED:                     POND NORTH LLP

14

15

16                        By: _____

                               Kevin D. Jamison

17                        Attorneys for Defendant CBS

                        CORPORATION, a Delaware

18                        corporation, f/k/a Viacom Inc.,

                        successor by merger to CBS

19                        Corporation, a Pennsylvania

                        corporation, f/k/a Westinghouse

20                        Electric Corporation

21                          ORDER

22      Having read and considered the foregoing joint stipulation of the parties, and

23  good cause being shown:

24

25  IT IS SO ORDERED:

26  Dated: _____, 2010   _____

27                          UNITED STATE DISTRICT COURT JUDGE

28

STIPULATION AND [PROPOSED] ORDER RE: DISMISSAL OF DEFENDANT CBS CORPORATION

4520-2152-6336333.1

1

## PROOF OF SERVICE

2

3          I declare that I am over the age of eighteen (18) and not a party to this
action.  My business address is 350 South Grand Avenue Suite 3300, Los Angeles,
4    CA 90071.

5          On October    , 2010, I served the following document(s):**STIPULATION
AND [PROPOSED] ORDER RE: DISMISSAL OF DEFENDANT CBS**
6    **CORPORATION** on the interested parties in this action by placing a true and
correct copy of such document, enclosed in a sealed envelope, addressed as
7    follows:

8                        **SEE ATTACHED SERVICE LIST**

9    ☒    I am readily familiar with the business' practice for collection and
processing of correspondence for mailing with the United States Postal
10        Service.  I know that the correspondence was deposited with the United
States Postal Service on the same day this declaration was executed in the
11        ordinary course of business.  I know that the envelope was sealed and, with
postage thereon fully prepaid, placed for collection and mailing on this date
12        in the United States mail at, Los Angeles, California, on all parties not
opting for E-service.

13

☒    By E-Service:  I electronically served the above document(s) via
14        ECF/PACER on all parties opting for E-Service.

15
Executed:  October ___, 2010.
16
☐ .       (State)      I declare under penalty of perjury under the laws of the
17                                  State of California that the above is true and correct.

18   ☒       (Federal)    I declare that I am employed in the office of a member of
the bar of this court at whose direction the service was
19                                  made.

20
                                      _____
21                                    Kathy Jo Johnston
                                      4520-2152
22

23

24

25

26

27

28

3
STIPULATION AND [PROPOSED] ORDER RE: DISMISSAL OF DEFENDANT CBS
CORPORATION
4520-2152.633633.1

## MASTER SERVICE LIST

### SCANLON v. ASBESTOS COMPANIES, et al.
### United States District Court, Central District of California
### Case No. 2:10-CV-07264 SVW (JCGx)

**Part A:  Parties to be E-Served:**

| Attorney Name & Address | Telephone/Facsimile | Representing |
|---|---|---|
| BARON & BUDD P.C. 3102 Oak Lawn Avenue, Suite 1100 Dallas TX 75219 Denyse F. Clancy, Esq. Email: dclancy@baronbudd.com John Langdoc, Esq. Email: jlangdoc@baronbudd.com Eric Policastro, Esq. ATTORNEYS TO BE NOTICED | T: 214-521-3605 F: 214-520-1181 | Plaintiff |
| GORDON & REES LLP 275 Battery Street, Suite 2000 San Francisco  CA  94111 Glen R. Powell, Esq. Email: gpowell@gordonrees.com James G. Scadden, Esq. Michael J. Pietrykowski, Esq. ATTORNEYS TO BE NOTICED | T: 415-986-5900 F: 415-986-8054 | Defendant Buffalo Pumps, Inc., erroneously sued as Air & Liquid Systems Corporation, etc. |

**Part B:  Parties to be Mail-Served:**

| Attorney Name & Address | Telephone/Facsimile | Representing |
|---|---|---|
| BASSI MARTINI & BLUM LLP 351 California Street, Suite 200 San Francisco  CA  94104 | T: 415-397-9006 F: 415-397-1339 | J. T. Thorpe & Son, Inc. |
| COOLEY MANION JONES HAKE & KUROWKIS 201 Spear Street, Suite 1800 San Francisco  CA  94105 | T: 415-512-4381 F: 415-512-6791 | A. W. Chesterton Company |
| K & L GATES, LLP 10100 Santa Monica Blvd., 7th Floor Los Angeles, CA  90067 | T: 310-552-5000 F: 310-552-5001 | Crane Co. |
| LOMBARDI LOPER & CONANT LLP 1999 Harrison Street, Suite 2600 Oakland  CA  94612 | T: 510-433-2600 F: 510-433-2699 | Mechanical Drives & Belting |
| LOW BALL & LYNCH 505 Montgomery Street, 7th Floor | T: 415-981-6630 | Armstrong International, Inc. |

4

STIPULATION AND [PROPOSED] ORDER RE: DISMISSAL OF DEFENDANT CBS
CORPORATION

4520-2152:633633.1

| Attorney Name & Address | Telephone/Facsimile | Representing |
|---|---|---|
| San Francisco  CA  94111 | F: 415-399-1506 | |
| MCKENNA, LONG & ALDRIDGE 300 S. Grand Avenue, Suite 1400 Los Angeles, CA  90071 | T: 213-688-1000 F: 213-243-6330 | Metalclad Insulation Corporation |
| MORRIS, POLICH & PURDY, LLP 1055 West Seventh Street, 24th Floor Los Angeles, CA  90017 | T: 213-891-9100 F: 213-488-1178 | Crown Cork & Seal Company, Inc. |
| MORGAN LEWIS & BOCKIUS LLP 300 South Grand Avenue, 22nd Floor Los Angeles  CA  90071 | T: 213-612-2500 F: 213-612-2501 | Yarway Corporation |
| PRINDLE, AMARO, GOETZ, HILLYARD, BARNES & REINHOLTZ, LLP 310 Golden Shore, 4th Floor P.O. Box 22711 Long Beach, CA  90801-5511 | T: 562-436-3946 F: 562-495-0564 | Alfa Laval, Inc. |
| SELMAN BREITMAN LLP 11766 Wilshire Boulevard, 6th Floor Los Angeles  CA  90025 | T: 310-445-0800 F: 310-473-2525 | Cleaver-Brooks, Inc. |
| SELMAN BREITMAN LLP 33 New Montgomery Street, 6th Floor San Francisco  CA  94105 | T: 415-979-0400 F: 415-979-2099 | Douglas Insulation Company, Inc. |
| WALSWORTH FRANKLIN BEVINS & McCALL One City Boulevard, East, 5th Floor Orange  CA  92868 | T: 714-634-2522 F: 714-634-0686 | Quintec Industries, Inc. |

5

STIPULATION AND [PROPOSED] ORDER RE: DISMISSAL OF DEFENDANT CBS
CORPORATION

4520-2152.633633.1

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV10-7264-SVW-JCGx | Date | November 3, 2010 |
|---|---|---|---|
| Title | Kwang Scanlon v. Asbestos Companies | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**      IN CHAMBERS ORDER RESETTING THE STATUS CONFERENCE

The status conference originally scheduled for November 1, 2010 is rescheduled to December 6, 2010 at 3:00 p.m.

Initials of Preparer                    :                    PMC

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONNA L. HAGEN, Individually :    CONSOLIDATED UNDER
and as Executrix of the    :    MDL 875
Estate of MALCOLM HAGEN,    :
                         :
     Plaintiff,      :    CIVIL ACTION
                         :    NO. 07-63346
     v.                  :
                         :
BENJAMIN FOSTER CO., et al.,    :
                         :
     Defendants.      :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    SEPTEMBER 24, 2010

TABLE OF CONTENTS

I.    INTRODUCTION...............................................2
II.   BACKGROUND.................................................3
     A.   Plaintiff's Suit.....................................3
     B.   Defendants' Removal and Plaintiff's Motion to
         Remand..............................................4
         1.   Affidavit of J. Thomas
             Schroppe.......................................5
         2.   Affidavit of David Hobson......................6
         3.   Affidavit of Admiral Ben J. Lehman.............7
         4.   Affidavit of Admiral Roger B. Horne............9
         5.   Affidavit of Captain Lawrence Stilwell Betts.....9
III.  LEGAL STANDARD.............................................10
IV.   DISCUSSION.................................................14
     A.   The Colorable Federal Defense Requirement...........16
         1.   Legal Standard.................................16
             i.   Supreme Court Decisions...................16
             ii.  Lower Court Decisions.....................18
             iii. Standard to be Applied....................24
         2.   Application....................................27
             i.   Elements of the Government Contractor
                 Defense...................................27
             ii.  Applying the Defense to Defendants'
                 Facts....................................29
     B.   The Acting Under Requirement.......................31
     C.   The Causal Nexus Requirement.......................32
V.    CONCLUSION................................................34

1

## I.    INTRODUCTION

Donna L. Hagen, individually and as executrix of the estate of Malcolm Hagen ("Plaintiff"), has moved to remand this action—which is consolidated as part of the MDL-875 asbestos products liability litigation—to New Jersey state court. Plaintiff argues the Court should remand due to lack of subject matter jurisdiction.  Defendants Foster Wheeler Corporation and General Electric Company (collectively, "Defendants") filed timely responses in opposition to Plaintiff's motion.

Since MDL-875 was certified by the Judicial Panel on Multidistrict Litigation (the "Panel") in 1991, thousands of individual plaintiffs have had their cases consolidated in the Eastern District of Pennsylvania for coordinated pretrial proceedings.[1]  A common path to consolidation in MDL-875 is removal by one or more defendants to an appropriate federal district court, followed by transfer by the Panel to the Eastern District of Pennsylvania.  In many of the MDL-875 cases, the jurisdictional basis for removal is the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which allows a defendant to remove a suit to federal court following a preliminary showing of a federal defense.  This memorandum evaluates the contours of the

---

[1]    For the most recent statistical breakdown, see U.S. District Court for the Eastern District of Pennsylvania, Asbestos Products Liability Litigation Caseload Statistics (2010), http://www.paed.uscourts.gov/documents/MDL/MDL875/Aug2010.pdf.

2

showing required by Section 1442(a)(1) and concludes Defendants
have sufficiently established the jurisdictional predicate to
avail themselves of this forum.  Thus, for the reasons set forth
below, Plaintiff's motion to remand will be denied.


## II.  BACKGROUND

### A.   Plaintiff's Suit

Malcolm Hagen ("Hagen") was exposed to asbestos while
working as an outside machinist in close proximity to asbestos-
containing machinery and insulation aboard the U.S.S. Kitty Hawk.
Hagen's responsibilities included assisting mechanics as they
installed and repaired machinery aboard ships at the shipyard.
Hagen worked in this capacity from 1958-1961.  Plaintiff alleges
that, on or around February 7, 2006, Hagen was diagnosed with
mesothelioma allegedly caused by exposure to asbestos while
aboard the U.S.S. Kitty Hawk.

Plaintiff filed suit on July 11, 2006 in the Superior
Court of New Jersey, Middlesex County, alleging products
liability claims for failure to warn against thirteen named
defendants and fifty unnamed defendants.  Specifically, each
defendant manufacturer is alleged to have carelessly or
negligently processed, manufactured, packaged, distributed,
delivered and sold asbestos products without warnings.[2]  (Compl.

---

[2]     Plaintiff does not assert design defect claims.

3

¶ 8.)  Plaintiff further alleges that this failure to warn was the actual and proximate cause of Hagen's mesothelioma.  (<u>Id.</u> ¶ 9.)  On May 28, 2008, Hagen died of mesothelioma.  Donna Hagen, who was already a named plaintiff in the suit, was named executrix of Hagen's estate and substituted as plaintiff in Hagen's stead.

     B.   <u>Defendants' Removal and Plaintiff's Motion to Remand</u>

On October 12, 2006, Defendants removed this case to federal court under 28 U.S.C. § 1442(a)(1).  As explained below, removal under Section 1442(a)(1) is only appropriate where, amongst other things, a so-called "colorable" federal defense is raised.  Plaintiff, arguing removal under Section 1442(a)(1) was improper based on this standard, filed a motion to remand to state court on October 19, 2006.  Before Plaintiff's motion was ruled upon, Plaintiff's case was transferred to the Eastern District of Pennsylvania and consolidated under MDL-875.  Upon transfer, Plaintiff's motion was denied without prejudice.  (<u>See</u> doc. no. 2.)  On June 10, 2009, Plaintiff renewed her motion to remand before this Court.  (<u>See</u> doc. no. 41.)

Defendants oppose Plaintiff's motion and submit several affidavits in opposition.[3]  Specifically, Defendants contend

_____

    [3]   The Court may properly consider these materials in weighing the merits of Plaintiff's motion to remand.  <u>See, e.g.,</u> <u>Hilbert v. McDonnell Douglas Corp.</u>, 529 F. Supp. 2d 187, 196 (D. Mass. 2008) ("[I]n seeking to determine whether the defendants have met [the removal] burden, the Court is permitted to look

4

these affidavits establish the subject matter jurisdiction
predicate under Section 1442(a)(1) insofar as they entitle
Defendants to the "government contractor defense" set forth in
Boyle v. United Technologies Corp., 487 U.S. 500 (1988).  Thus,
the affidavits all make the same basic point:  that Plaintiff's
failure to warn claim against Defendants relates to the
government's control over the allegedly tortious product's
design.  These affidavits—namely, those of (1) J. Thomas
Schroppe; (2) David Hobson; (3) Admiral Ben J. Lehman; (4)
Admiral Roger B. Horne, Jr.;[4] and (5) Captain Lawrence Stilwell
Betts—are discussed in turn.[5]

      1.   Affidavit of J. Thomas Schroppe

      J. Thomas Schroppe ("Schroppe") is a former employee of
Foster Wheeler Corporation ("Foster") who began his career at
Foster as a proposal engineer in the marine department and

---

beyond the pleadings to the evidence submitted by the parties
regarding the Motion to Remand.").

    [4]    Admiral Horne's affidavit was attached as an exhibit to
Plaintiff's motion.

    [5]    The Court held a hearing on Plaintiff's motion to
remand on December 4, 2009.  Following the hearing, the Court
permitted the parties to submit additional materials for the
Court to review in resolving Plaintiff's motion.  (See doc. no.
68.)  Defendants' additional submissions include a copy of the
relevant Military Specification manual referred to in the various
affidavits.  However, because the Court concludes the initial
affidavits are themselves sufficient to establish that removal
under Section 1442(a)(1) was proper, it is unnecessary to outline
the content of any additional materials beyond those discussed in
this memorandum.

ultimately became President of Foster.   (Schroppe Aff. ¶ 1.)
Over the course of his employment, Scroppe avers that he became
"personally familiar with the degree of supervision and control
exercised by the Navy and its agencies in procurement contracts
with Foster."  (Id. ¶ 2.)   According to Schroppe, the control
exercised required Foster to comply with precise ship
specifications for each individual project, as well as military
specifications.  (Id. ¶¶ 5, 6.)  These specifications covered all
specific components of boilers built for use by the Navy.  (Id.)

     Schroppe further avers that Foster was obliged to
provide technical manuals relating to the operation of naval
boilers which included safety information.  (Id. ¶ 21.)
According to Schroppe, the Navy exercised "intense direction and
control" over the documents and "participated intimately in the
preparation of this kind of information and exercised . . .
control over its contents."  (Id.)   Further, Schroppe represents
that "the Navy had precise specifications, practices and
procedures that governed the content of any communication affixed
to machinery supplied by Foster Wheeler to the Navy" which would
not permit Foster to include "any type of warning or caution
statement to a piece of equipment intended for installation onto
a Navy vessel."  (Id. ¶ 22.)

     2.   Affidavit of David Hobson

     David Hobson ("Hobson") is a former employee of General

6

Electric Company ("GE") who joined GE in 1969 and worked there until his retirement in 1996. (Hobson Aff. ¶ 1.) During his tenure, he worked as the manager of Navy customer service for GE's Navy and small steam turbine business. (Id. ¶ 1.) In this capacity, Hobson had "frequent and extensive business dealings" with the Navy regarding the Navy's purchase and use of marine steam turbines. (Id. ¶ 3.) According to Hobson, all such turbines were supplied to the Navy pursuant to a contract with the Navy Sea Systems Command ("NSSC") whereby NSSC's officers supervised and specified the requirements for "[a]ll aspects of the design, performance requirements and materials used for construction." (Id. ¶¶ 6, 7.)

Hobson states that any thermal insulation materials, whether or not containing asbestos, were applied to GE products after they were turned over to the Navy, and were supplied or installed by entities other than GE. (Id. ¶ 7.) Further, each turbine manufactured by GE was specifically and uniquely manufactured for the vessel or class of vessels which that contract pertained to. (Id. ¶ 10.) And, ultimately, the Navy exercised complete oversight over both the manufacture and safety testing phases of the process. (Id. ¶ 13-14.)

   3.   Affidavit of Admiral Ben J. Lehman

Admiral Ben J. Lehman ("Admiral Lehman") is a retired Rear Admiral of the United States Navy. (Lehman Aff. ¶ 1.)

Admiral Lehman details the level of control that the Navy
asserted over all aspects of the equipment that was supplied
pursuant to government contracts.  (Id. ¶ 2.)  He corroborates
Hobson and Schroppe's averments, emphasizing the importance of
adhering to government directives.  (See id. ¶ 6 ("I can attest
that the military specifications for boilers and other equipment
intended for use on vessels of the U.S. Navy . . . were drafted,
approved, and maintained by the U.S. Navy . . . to encompass all
aspects of shipboard equipment, including the material
requirements.").)

     In fact, Admiral Lehman states that "[m]ilitary
specifications governed every significant characteristic of the
equipment used on the U.S. Navy ships, including the instructions
and warnings."  (Id. ¶ 10.)  "This control included the decision
of which warnings should or should not be included."  (Id.)  And,
according to Admiral Lehman, the Navy "would not, and could not,
permit any equipment manufacturer or supplier to interfere with
the Navy's mission by placing warnings on any equipment" or
accompanying instructions or manuals.  (Id.)  This, as Admiral
Lehman goes on to explain, relates to Navy specifications that
"specifically limited warning information to items and events
dealing with the operation of equipment."  (Id. ¶ 12.)  According
to Admiral Lehman, "the application or removal of insulation
would [necessarily] not have been included."  (Id.)

4.   <u>Affidavit of Admiral Roger B. Horne</u>

Admiral Roger B. Horne ("Admiral Horne") worked as the chief engineer and deputy commander for NSSC, and also served as the commander of several shipyards throughout the country. (Horne Aff. ¶ 2.)   Admiral Horne attests to the "level of supervision, direction and control exercised by the U.S. Navy over the design and manufacture of equipment, including boilers and auxiliary equipment . . . intended for installation on Navy vessels." (<u>Id.</u> ¶ 4.)

In particular, Admiral Horne states that "Navy specifications . . . covered the nature of any communication affixed to boilers or other equipment supplied to the Navy." (<u>Id.</u> 12.)   Further, Admiral Horne avers that the specifications promulgated by the Navy "governed every characteristic of the equipment used on Navy ships, including the instructions and warnings" and covered "what warnings should or should not be included." (<u>Id.</u> ¶ 13.)   Finally, as to written materials provided with the equipment, Admiral Horne states that "[t]he Navy was intimately involved with and had final approval of all . . . safety or hazard information and any other written information that accompanied a piece of equipment." (<u>Id.</u> ¶ 14.)

5.   <u>Affidavit of Captain Lawrence Stilwell Betts</u>

Captain Lawrence Stilwell Betts ("Captain Betts") is a medical doctor and retired U.S. Navy Captain. (Betts Aff. ¶ 1.)

During his Navy career, Captain Betts was a warfare medical department officer, and became familiar with the industrial products used by the Navy in this capacity. (Id. ¶ 2.)  From 1987 to 1989, Captain Betts was stationed on the U.S.S. Kitty Hawk—the naval vessel at issue in the instant case. (Id. ¶ 2.)

Captain Betts asserts that, beginning in the early 1920s, the Navy recognized that inhaling asbestos fibers in significant doses could result in pulmonary disease. (Id. ¶ 28.) In fact, Captain Betts avers that the Navy's knowledge of asbestos-related health hazards was unsurpassed. (Id. ¶ 31; see also id. ¶ 32 ("There was no information concerning any asbestos-containing hazard or danger posed by any asbestos-containing product applied to any marine boiler on a United States Navy ship known to a boiler manufacturer . . . that was not known to the United States and the United States Navy.").)  However, according to Captain Betts, the Navy continued to use asbestos aboard ships due to military necessity. (Id. ¶ 5.)


III. LEGAL STANDARD

As a general matter, removal of an action from state court is only permissible to the extent that the action could have initially been brought in federal court. See 28 U.S.C. § 1441.  Although Article III of the Constitution would permit it, see Osborn v. Bank of the United States, 22 U.S. 738, 824 (1824)

10

(holding Article III permits jurisdiction because "[t]he question forms an original ingredient . . . . Whether it be in fact relied on or not"), the original jurisdiction Congress has conferred on federal courts does not generally allow a defendant to remove a suit to federal court on the basis of a federal defense. See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908) (describing the statutory grant of federal question jurisdiction to only permit jurisdiction "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]" and that it is not enough "that the plaintiff alleges some anticipated [federal law] defense").

The federal officer removal statute, which confers jurisdiction over cases in which a federal officer is a defendant by explicitly allowing defendants to remove such actions, is an exception to this general principle. See Jefferson County v. Acker, 527 U.S. 423, 431 (1999) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."); Mesa v. California, 489 U.S. 121, 136 (1989) (explaining that the federal officer removal statute is a "pure jurisdictional statute . . . [that] grant[s] district court jurisdiction over cases in which a federal officer is a defendant"). Amongst other parties, it allows the following class of defendants to remove a state

11

action to federal court:

> The United States or any agency thereof or any officer (or
> any person acting under that officer) of the United States
> or of any agency thereof, sued in an official or individual
> capacity for any act under color of such office or on
> account of any right, title or authority claimed under any
> Act of Congress for the apprehension or punishment of
> criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).  Thus, to establish subject matter

jurisdiction under Section 1442(a)(1), an individual defendant

must show:

> (1) it is a "person" within the meaning of the statute; (2)
> the plaintiff's claims are based upon the defendant's
> conduct "acting under" a federal office; (3) it raises a
> colorable federal defense; and (4) there is a causal nexus
> between the claims and the conduct performed under color of
> a federal office.

Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d

Cir. 1998).

Here, the applicable defense raised is the government

contractor defense which, based on principles of preemption,

cloaks government contractors like Defendants from ordinary

state-law liability.  It applies where:  "(1) the United States

approved reasonably precise specifications; (2) the equipment

conformed to those specifications; and (3) the supplier warned

the United States about the dangers in the use of the equipment

that were known to the supplier but not to the United States."

Boyle, 487 U.S. at 512.  And because the government contractor

defense is the basis for invoking this Court's jurisdiction in

this suit against non-government entities who furnished equipment

12

to the military, resolution of Plaintiff's motion to remand
effectively turns on how colorable Defendants' federal defense
really is.   Thus, although the Court considers each element
required for removal separately, its analysis begins (and
essentially ends) with the colorable defense requirement.[6]

In so doing, the Court is cognizant that, unlike the
analysis undertaken with respect to other removal statutes, see
Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009) (explaining the
general rule that removal statutes "are to be strictly construed,
with all doubts to be resolved in favor of remand"), the Court
must broadly construe Defendants' ability to remove under Section
1442(a)(1) as to avoid frustrating its policy objective of
"hav[ing] the validity of the defense of official immunity tried

---

[6]     However, the Court need not address the person
requirement at any length.  Although some courts have held
corporations are not persons under Section 1442(a)(1) based on an
inappropriately narrow construction of the statute, see Krangel
v. Crown, 791 F. Supp. 1436, 1446 (S.D. Cal. 1992) (concluding
corporations do not qualify as persons under Section 1442(a)(1)
due to "the fact that ambiguities should be resolved against
federal jurisdiction, and the strong interest of the states in
adjudicating the rights and obligations of their citizens"), it
is well settled that corporations such as Defendants do qualify
as persons under the statute and that such non-government
entities may seek removal under Section 1442(a)(1) based on the
government contractor defense.  See, e.g., Good v. Armstrong
World Indus., Inc., 914 F. Supp. 1125, 1127-28 (E.D. Pa. 1996)
(concluding corporation is a person under Section 1442(a)(1) and
recognizing the corporation's ability to remove to federal court
via the government contractor defense); see also Holdren v.
Buffalo Pumps, Inc., 614 F. Supp. 2d 129, 142 (D. Mass. 2009)
(collecting authority and explaining "government contractors are
entitled to seek removal under the statute").

13

in a federal court" by applying a "narrow, grudging interpretation." Willingham v. Morgan, 395 U.S. 402, 407 (1969); see Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1262 (3d Cir. 1994) (distinguishing the general removal standard from the standard applicable in cases removed pursuant to Section 1442(a)).

With these principles in mind, the Court turns to the merits of Plaintiff's motion.


IV.   DISCUSSION

As noted, the dispute in this case turns on whether Defendants' evidence supporting the government contractor defense suffices to meet the standard for removal under Section 1442(a)(1). Defendants assert their affidavits and supporting materials demonstrate that the Navy exercised control over the manufactured products and that, consequently, the government contractor defense precludes state-law liability for any failure to warn. On the other hand, Plaintiff claims Defendants' evidence is generic boilerplate that does not satisfy the elements for removal. In support of this contention, Plaintiff points to a series of cases rejecting Section 1442(a)(1) removal whilst considering similar—and in some instances, precisely the same—affidavits to those offered here. Defendants, in turn, point to several other cases reaching the opposite conclusion.

14

At its essence, the split in authority boils down to an argument over what a defendant must proffer to defeat a plaintiff's motion for remand.[7]  Beneath the surface, the divide appears to be a consequence of two clashing objectives a court facing a plaintiff's motion to remand must consider:   (1) the Supreme Court's mandate to broadly construe a defendant's removal under Section 1442(a)(1); and (2) the bounds of federal subject matter jurisdiction imposed by both the Constitution and the removal statute itself.   After considering these competing objectives, the Court determines that a defendant is entitled to removal under Section 1442(a)(1) where the defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense.[8]  Defendants' pleading

---

[7]     As noted, some cases have held that affidavits like those at issue in this case are insufficient because they are non-specific boilerplate.  See Lindenmayer v. Allied Packing & Supply, Inc., No. 09-5800, 2010 WL 234906 (N.D. Cal. Jan. 14, 2010); Holdren, 614 F. Supp. 2d at 129; Williams v. Gen. Elec. Co., 418 F. Supp. 2d 610 (M.D. Pa. 2005); Westmiller v. Imo Indus., Inc., No. 05-945, 2005 WL 2850334 (W.D. Wash. Oct. 20, 2005).  Plaintiff urges that this conclusion represents an emerging trend.  However, it is clear that many cases continue to find remand appropriate in such circumstances.  See Corley v. Long-Lewis, Inc., 688 F. Supp. 2d 1315 (N.D. Ala. 2010); Kirks v. Gen. Elec. Co., 654 F. Supp. 2d 220 (D. Del. 2009); Seigfried v. Allegheny Ludlum Corp., 09-125, 2009 WL 1035001 (W.D. Pa. Apr. 17, 2009); Machnik v. Buffalo Pumps, Inc., 506 F. Supp. 2d 99 (D. Conn. 2007); Ferguson v. Lorillard Tobacco Co., 475 F. Supp. 2d 725 (N.D. Ohio 2007); Nesbiet v. Gen. Elec. Co., 399 F. Supp. 2d 205 (S.D.N.Y. 2005).

[8]     These facts may be cited in the answer, the notice of removal or in the response to a motion for remand.  Given that the Supreme Court has referred to the colorable defense element

15

materials, including the affidavits, plainly satisfy this
standard.

    A.    <u>The Colorable Federal Defense Requirement</u>

        1.    <u>Legal Standard</u>

           i.    <u>Supreme Court Decisions</u>

    The Court's analysis begins with the colorable federal
defense requirement for Section 1442(a)(1) removal, which stems
from the Supreme Court's decision in <u>Mesa v. California</u>.  In
<u>Mesa</u>, California issued criminal complaints against several
employees of the United States Postal Service who sought removal
to federal court under Section 1442(a)(1).  489 U.S. at 123.  The
government, in opposing remand, urged the Court to adopt a
reading of Section 1442(a)(1) that would permit a federal officer
to remove a suit to federal court without requiring the presence
of a federal defense.  <u>See</u> <u>id.</u> at 964.  Citing constitutional
concerns about the breadth of such an interpretation, the Court
determined the statute requires a federal defense as a condition
precedent to removal.  <u>See</u> <u>id.</u> at 969 ("Adopting the Government's

_____

as a "pleading requirement[]" and "averment," it is debatable
whether a defendant must, at this stage of the proceeding, submit
affidavits or other evidentiary materials to make out a colorable
federal defense.  <u>Mesa</u>, 489 U.S. at 133.  Indeed, a defendant
removing an action is generally only required to file "a notice
of removal signed pursuant to Rule 11 . . . containing a short
and plain statement of the grounds for removal."  28 U.S.C. §
1446.  However, the Court need not resolve this issue as
Defendants have submitted such materials in responding to
Plaintiff's motion for remand.

view would eliminate the substantive Art. III foundation of §
1442(a)(1) and unnecessarily present grave constitutional
problems. We are not inclined to abandon a longstanding reading
of the officer removal statute that clearly preserves its
constitutionality and adopt one which raises serious
constitutional doubt.").

But while Mesa affirmatively settled that Section
1442(a)(1) requires a colorable federal defense to effect removal
under the statute, it did not clarify what defenses qualify as
such. Instead, it simply described the federal defense as a
"pleading requirement[]" that must be satisfied for removal under
the statute. Id. at 133. Nevertheless, other Supreme Court
cases elucidate the colorable defense requirement. In Willingham
v. Morgan, for example, the Supreme Court explained the scope of
Section 1442(a)(1):

> The federal officer removal statute is not 'narrow' or
> 'limited.' At the very least, it is broad enough to cover
> all cases where federal officers can raise a colorable
> defense arising out of their duty to enforce federal law.
> One of the primary purposes of the removal statute—as its
> history clearly demonstrates—was to have such defenses
> litigated in the federal courts.

395 U.S. at 406-07. As the Court succinctly put it, an "officer
need not win his case before he can have it removed." Id. at
407. Similarly, in Arizona v. Manypenny, the Court spoke of the
Section 1442(a)(1)'s purpose of "ensur[ing] a federal forum in
any case where a federal official is entitled to raise a defense

17

arising out of his official duties" as to allow a defendant the
opportunity to have his or her defense adjudicated in federal
court.  451 U.S. 232, 241 (1981).  In Jefferson County v. Acker,
the Court echoed the important policy of providing a federal
forum in discussing the colorable federal defense requirement:

> In construing the colorable federal defense requirement, we
> have rejected a "narrow, grudging interpretation" of the
> statute, recognizing that "one of the most important reasons
> for removal is to have the validity of the defense of
> official immunity tried in a federal court."  We therefore
> do not require the officer virtually to "win his case before
> he can have it removed."

527 U.S. at 431 (internal citations omitted) (quoting Willingham,
395 U.S. at 407).

Under these authorities, it is clear that the Supreme
Court's treatment of Section 1442(a)(1)'s colorable defense
requirement urges an expansive interpretation which allows
jurisdiction to be exercised by the federal courts to the limits
imposed by the statute.  This interpretation, however, is
necessarily tempered by the constitutional concerns that—as the
Mesa Court stated—might emerge in the absence of a colorable
defense requirement.

ii.  Lower Court Decisions

Lower courts have struggled in striking the balance
between the breadth of Section 1442(a)(1)'s grant of jurisdiction
and the constitutional limits imposed by Article III.  This is
illustrated by the District of Massachusetts' discussion in

<u>Holdren v. Buffalo Pumps, Inc.</u>, where the court granted the plaintiff's motion to remand in the face of many of the same affidavits submitted in the instant case.   614 F. Supp. 2d at 139.   The <u>Holdren</u> Court did so because the evidence presented by the defendants purportedly did not show "that the Navy ever exercised its final authority in any fashion that either expressly barred or broadly preempted the inclusion of asbestos warnings."   <u>Id.</u>   In so holding, the <u>Holdren</u> Court cited "the Supreme Court's admonition that Section 1442(a) should not be subject to a 'narrow, grudging interpretation,'" <u>id.</u> at 140 (quoting <u>Manypenny</u>, 451 U.S. at 242), but expressed constitutional concerns befitting a non-deferential review of whether a defendant's defense is colorable:

> As a constitutional matter, a defendant must aver something more than his status as a federal officer in order to bring his case into a federal forum.   It is only the assertion of a colorable federal defense that justifies the federal court's limited Article III jurisdiction in these cases. Without this requirement, § 1442(a) would "expand[ ] the jurisdiction of the federal courts beyond the bounds established by the Constitution."   Because it alone confers Article III jurisdiction, the "colorable" standard requires that a federal court carefully weigh the plausibility of the proffered defense.

<u>Id.</u> at 140 (internal citations omitted) (quoting <u>Mesa</u>, 489 U.S. at 136); <u>see also id.</u> at 141 ("A colorable federal defense . . . is not a requirement that may be reduced to the point of vanishing altogether.").   Although not always explicit, many of the other decisions granting a plaintiff's motion to remand seem

informed by similar concerns.  See, e.g., Lindenmayer, 2010 WL
234906, at *5 ("Relaxing this standard too far . . . could well
err in the opposite direction—by providing a federal forum to a
party whose acts were outside its federal directives." (internal
marks omitted) (quoting Holdren, 614 F. Supp. 2d at 141)).

      And, in accord with these concerns over a
liberalization of the standard, many courts have drawn
distinctions between the class of defendants involved where
removal under Section 1442(a)(1) is predicated on the government
contractor defense.  The Holdren Court noted, for example, that
"private government contractors—particularly those in failure-to-
warn cases—are several degrees distant from the paradigmatic
federal officer protected by 28 U.S.C. § 1442(a)(1)."  614 F.
Supp. 2d at 136; see also Prewett v. Goulds Pumps (IPG), No. 09-
0838, 2009 WL 2959877, at *3 (W.D. Wash. Sept. 9, 2009) ("The
situation of a private contractor asserting a government
contractor defense is different because the federal interest is
not as obvious.").

      Thus, in applying the Supreme Court's teachings, the
doctrinal conflict created by the interplay of the statute's
breadth and the potential constitutional limits that lurk in the
background has led courts to conflicting conclusions.  For
example, some courts analyzing removal under Section 1442(a)(1)
equivocate between the terms "plausible" and "colorable."  See,

                                    20

e.g., Bennett v. MIS Corp., 607 F.3d 1076, 1089 (6th Cir. 2010)

("[A] colorable federal defense need only be plausible."); see

also United States v. Todd, 245 F.3d 691, 693 (8th Cir. 2001)

("For a defense to be considered colorable, it need only be

plausible . . . ."); Magnin v. Teledyne Cont'l Motors, 91 F.3d

1424, 1427 (11th Cir. 1996) (explaining that a colorable defense

"need only be plausible").  In doing so, however, many

distinguish the showing required for removal from the ultimate

evidentiary showing at trial, suggesting the colorable defense

standard is not an onerous one to satisfy.[9]  See Bennett, 607

F.3d at 1091 (holding defense was colorable insofar as it was an

issue of first impression that had been accepted by other

courts); Todd, 245 F.3d at 693 (deeming defense colorable because

it "at the very least plausibly shields" defendants); Marley v.

Elliot Turbomachinery Co., 545 F. Supp. 2d 1266, 1271-73 (S.D.

Fla. 2008) (explaining a colorable defense is a plausible one,

and describing it as a "low standard" that can be met even where

there are disputes as to the merits of the defense).  Yet other

---

[9]    Indeed, the term "plausible" is generally used
differently in the Section 1442(a)(1) context than in cases
determining whether a complaint should be dismissed under Rule
12(b)(6) in accordance with Twombly and its progeny.  See Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The latter
standard, which defines plausible factual allegations as those
that go beyond the speculative level, seems more exacting than
that required by many courts deeming a colorable defense a
plausible one when evaluating whether to grant a plaintiff's
motion to remand.

courts follow the Holdren Court's lead and—albeit not
explicitly—apply a heightened standard at the remand stage that
requires courts to "carefully weigh the plausibility of the
proffered defense." Holdren, 614 F. Supp. 2d at 140. This is
particularly evident upon review of the series of cases resolving
the same issue in this case:  namely, whether the government
contractor defense colorably shields defendants from failure to
warn liability for asbestos-related injuries allegedly sustained
on Navy ships where the defendants contend the Navy would not
have allowed any such warnings.

        Given the inability of lower courts to develop a
consistent approach to the issue, it is unsurprising that the
results have varied considerably even where identical or
substantially similar evidentiary materials are submitted to the
court.[10]  Some, such as the Marley Court, have concluded that the
affidavits establish a colorable defense.  See, e.g., Marley, 545
F. Supp. 2d at 1273 (holding the affidavits establish a good
faith defense even though the arguments against the defense

─────────────────

[10]    As the court in Marley v. Elliot Turbomachinery Co.
noted in considering two of the affidavits present in this
case—those of Admiral Lehman and Admiral Horne—"[a]lmost
identical affidavits have been filed by the defendants in
lawsuits all over the country." 545 F. Supp. 2d at 1273.  The
affidavits of Admiral Lehman and Admiral Horne submitted to this
Court appear to be similar if not identical to those submitted in
Marley.  The same is true of the affidavits of Captain Betts,
Schroppe and Hobson which, though not discussed in Marley, are
considered by courts evaluating whether to remand in several
cases.

"raise a number of questions that the defendants will have to
answer to ultimately prevail"); see also Pantalone v. Aurora Pump
Co., 576 F. Supp. 2d 325, 331-32 (D. Conn. 2008) ("Through the
factual assertions in its notice of removal and supporting
affidavits, Buffalo Pumps has met the three elements of the
government-contractor defense . . . ."). Others, however, remand
on the ground that the affidavits leave too many questions open
to establish a colorable federal defense:

> [T]he Court's decision rests ultimately on what is missing
> from the record.  The defendants have submitted no evidence
> that the Navy expressly prohibited asbestos warnings by
> manufacturers; no evidence that they ever attempted to warn
> about asbestos on products destined for the Navy; no
> evidence that the Navy ever rejected any other
> manufacturer's proposed asbestos warning; and no evidence
> that defendants warned of asbestos on other, non-military
> equipment they produced during the same period, by contrast
> to the equipment they supplied to the Navy.  Finally, they
> offer no persuasive evidence of an overall Navy-wide policy
> that would have conflicted with manufacturer asbestos
> warnings.

Holdren, 614 F. Supp. 2d at 137; see Lindenmayer, 2010 WL 234906,

at *6 (holding affidavits from Captain Betts, Schroppe and

Admiral Lehman did not raise a colorable defense to plaintiff's

failure to warn claim because of the "absence of any effort to

warn about asbestos"); Westmiller, 2005 WL 2850334, at *2

(concluding an affidavit from Admiral Lehman stating "the Navy

had complete control over every aspect of each piece of

equipment" and "dictated every aspect of the design, manufacture,

installation, overhaul, written documentation and warnings with

its ships" was insufficient to establish a colorable defense).
As the language in Holdren and like cases criticizing the lack of
"persuasive evidence" of a Navy policy prohibiting warnings make
clear, Holdren, 614 F. Supp. 2d at 137, the decisions rejecting
affidavits like those submitted in the instant case deem
insufficient averments that the Navy would not have allowed any
warnings to be made.

_____iii. Standard to be Applied

        Upon review of the many thoughtful opinions and
applying the Supreme Court's clear teaching that a colorable
defense need not be proven at this stage of the litigation due to
the broad removal right the statute creates, the Court declines
to follow those courts that have seemingly required a heightened
showing of a colorable federal defense.  Moreover, neither the
Article III concerns some courts have raised nor the fact that
this particular case involves private contractors asserting the
government contractor defense compels a different conclusion.

        Although the Supreme Court has expressed concerns about
the constitutionality of Section 1442(a)(1) if a colorable
defense was not required for removal, see Mesa, 489 U.S. at 969,
it did not—as cases like Holdren suggest—expressly hold the lack
of a colorable defense requirement would "expand[ ] the
jurisdiction of the federal courts beyond the bounds established
by the Constitution."  Holdren, 614 F. Supp. 2d at 140 (internal

                              24

marks omitted) (quoting Mesa, 289 U.S. at 136). Rather, it adopted a narrower interpretation of Section 1442(a)(1) to avoid resolution of this very question. See Mesa, 489 U.S. at 969. Thus, the Article III concerns that allegedly require the court to "carefully weigh the plausibility of the proffered defense," Holdren, 614 F. Supp. 2d at 140, are overstated; the colorable defense requirement is a simple statutory limit on subject matter jurisdiction that may or may not be coextensive with what Article III permits.[11] The Court, therefore, can balance the interest in broadly construing removal under Section 1442(a)(1) against its statutory limits and any associated constitutional concerns without requiring defendants to make such a significant showing of the merits of their defense at this early stage. In any event, if it later becomes evident that the relevant facts developed in the litigation do not support jurisdiction, the

---

[11]   Article III extends the federal judicial power to cases "arising under" federal law and those involving diversity of citizenship, and reflects the outer bounds of the district court's authority to resolve a dispute. But it is just that, for original jurisdiction may only be exercised where and to the extent Congress allows it by statute. Because the two most common statutory bases for jurisdiction—28 U.S.C. § 1331 and 28 U.S.C. § 1332, which confer jurisdiction over federal questions and actions in which there is diversity of citizenship respectively—nearly reach that afforded by Article III, it is often unnecessary to distinguish between the jurisdiction Article III allows and that Congress permits courts to exercise. Nevertheless, it is understood that Congress has not always extended original jurisdiction to the full extent permitted by Article III.   Compare, e.g., Osborn, 22 U.S. at 824 with Mottley, 211 U.S. at 153.

Court will do what it would do in any removed case:  dismiss and remand the action based on lack of subject matter jurisdiction.[12] See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action"); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

And though it is perhaps true that the defendants in this and similar cases are not "the paradigmatic federal officer protected" by Section 1442(a)(1), Holdren, 614 F. Supp. 2d at 136, it is axiomatic that these defendants are nevertheless protected by the statute.  After all, "[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006).

While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or

---

[12]    Proceeding in this fashion is particularly appropriate in view of the limited opportunity for appellate review of remand orders.  See 28 U.S.C. § 1447(d) ("An order remanding a case to the State court . . . is not reviewable on appeal or otherwise . . . ."); Feidt, 153 F.3d at 126-27 (concluding the court of appeals lacked jurisdiction to review the district court's remand order where defendant had removed the action under Section 1442(a)(1)).

dissect the facts stated.  Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense.  Cf. Black's Law Dictionary 282 (9th ed. 2009) (defining a colorable claim as "a claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)").  It is the sufficiency of the facts stated—not the weight of the proof presented—that matters.  For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense.  It is not the Court's role to impose judicially created tolls on those who seek to travel on it.  Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.[13]

2.   Application

i.   Elements of the Government Contractor Defense

As noted, the defense relied on in this case is the government contractor defense.  The government contractor defense displaces state law where "(1) the United States approved

---

[13]   Presumably, the merits of Defendants' defense will be tested on a motion for summary judgment or at trial.  By allowing Defendants' defense to be resolved in this forum, the Court adheres to Section 1442(a)(1)'s clear mandate.

27

reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle, 487 U.S. at 512. Although the Boyle decision applied the government contractor defense to a design defect products liability claim rather than a failure to warn claim products liability claim, courts have recognized the defense's applicability to failure to warn claims like Plaintiff's. See, e.g., Feidt, 153 F.3d at 127 (suggesting the district court properly considered the government contractor defense as a basis for removal of plaintiff's failure to warn claim); see also Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003 (7th Cir. 1996) ("[W]hen state law would otherwise impose liability for a failure to warn, that law can be displaced . . . ."); Tate v. Boeing Helicopters, 55 F.3d 1150, 1157 (6th Cir. 1995) (recognizing a distinction between applying the government contractor defense to design defect claims and failure to warn claims, but holding "the rationale for applying the government contractor defense to a failure to warn claim tracks the Boyle analysis closely").

However, because "design defect and failure to warn claims differ practically as well as theoretically," courts have required the government approval to "transcend rubber stamping" for the defense to shield a government contractor from failure to

28

warn liability. <u>Tate</u>, 55 F.3d at 1156, 1157. That is, "a manufacturer asserting the federal contractor defense must show that the federal government issued reasonably precise specifications covering warnings—specifications that reflect a considered judgment about the warnings at issue." <u>Holdren</u>, 614 F. Supp. 2d at 143. Nevertheless, the test applied is largely derived from <u>Boyle</u>:

> (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

<u>Tate</u>, 55 F.3d at 1157; <u>see also</u> <u>Oshkosh</u>, 96 F.3d at 1003-04 (same).

### ii.  <u>Applying the Defense to Defendants' Facts</u>

The Court's task, then, is to determine whether Defendants have a colorable claim that the government contractor defense shields them from liability to Plaintiff. As noted, this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants, and does not address the merits of the defense. Under this standard, it is clear that Defendants raise a colorable defense because Defendants would prevail on their defense at trial if the facts raised were proven.

First, the affidavits submitted show (1) that the Navy exercised direction and control over the products created; which (2) Defendants conformed to by failing to warn. The affidavits do

this by stating that Defendants would not be permitted to include
"any type of warning or caution statement," (Schroppe Aff. ¶ 22),
and that the applicable specifications furnished by the Navy
required manufacturers to yield all oversight of the manufacture
and testing phases to the Navy. (See, e.g., Hobson Aff. ¶ 13-14.)
This is particularly true given that the specifications "covered
the nature of any communication affixed to boilers or other
equipment supplied to the Navy." (See Horne Aff. ¶ 12.) Indeed,
according to Defendants' evidence, the Navy controlled "the
decision of which warnings should or should not be included."
(Lehman Aff. ¶ 10.) Therefore, to the extent the affidavits are
true, it is clear that the Navy was responsible for the lack of
warnings. This demonstrates the first two elements of the
government contractor defense.

Second, the affidavits submitted satisfy the third
element of the defense—namely, that Defendants warned the Navy of
the dangers in Defendants' equipment that Defendants knew of but
the Navy did not. As the language of this prong indicates, the
defense does not require the contractor to warn the government
where "the government knew as much or more than the defendant
contractor about the hazards of the . . . product." Beaver Valley
Power Co. v. Nat'l Eng'g & Contracting Co., 883 F.2d 1210, 1216
(3d Cir. 1989). Captain Betts' affidavit expressly speaks to this
point, stating that "[t]here was no information concerning any

30

Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992) (internal marks omitted) (quoting Ryan v. Dow Chem. Co., 781 F. Supp. 934, 947 (E.D.N.Y. 1992)).

Because a defendant's government contractor defense in a failure to warn case is only colorable if the defendant identifies facts demonstrating the government's actions "transcend rubber stamping," Tate, 55 F.3d at 1157, any defendant who satisfies the colorable defense requirement will necessarily meet the acting under requirement of Section 1442(a)(1) as well.  That is, in cases involving assertion of the government contractor defense to a plaintiff's failure to warn suit, the burden for demonstrating the defendant acted under an officer of the United States is lower than that associated with demonstrating a colorable federal defense.  Cf. Holdren, 614 F. Supp. 2d at 149 (finding defendants satisfied the acting under requirement even though they did not meet the colorable defense requirement).  Accordingly, for the same reasons the Court determined Defendants' federal defense is colorable, Defendants have also established they were acting under a federal officer as to satisfy Section 1442(a)(1)'s acting under requirement.

C.   The Causal Nexus Requirement

The final requirement for removal under Section 1442(a)(1) is that the defendant demonstrate a causal nexus between the conduct performed under federal direction and, in this case, Plaintiff's failure to warn claim.  See Mesa, 489 U.S. at

32

131-34.  To do so, a defendant seeking removal must "by direct
averment exclude the possibility that [the defendant's action] was
based on acts or conduct of his not justified by his federal
duty."  Id. at 132 (quoting Maryland v. Soper (No. 1), 270 U.S. 9,
33 (1926)).

Although some courts have suggested the causal nexus
requirement should be more closely scrutinized than Section
1442(a)(1)'s other requirements, see Holdren, 614 F. Supp. 2d at
149 ("[A]s a jurisdictional fact, causation is judged by a
somewhat stricter 'reasonable probability' standard"), it is
evident that the causal nexus requirement "is closely related to
evidence supporting a colorable federal defense" where a
government contractor is the defendant because both elements
require the "defendant [to] show that it acted at the federal
government's command."  Id.  Indeed, just as the acting under
analysis becomes redundant where a defendant in a government
contractor case makes out a colorable federal defense, resolving
the causal nexus requirement is not difficult in light of the
Court's colorability determination because the causal nexus
analysis "is essentially the same as [that associated with] the
colorable defense requirement."[14]  Prewett, 2009 WL 2959877, at *7.

_____

[14]   The similarities between the respective showings
required are further demonstrated by the fact that some courts
have collapsed the causal nexus and acting under prongs into one
single requirement.  See, e.g., Good, 914 F. Supp. at 1128 ("The
'acting under' language in the statute forces [the defendant] to
show a causal nexus between the plaintiffs' claims and the

33

As outlined above, Defendants have a colorable federal defense that any failure to warn relates to the Navy's control over the product Defendants manufactured for the government. Thus, the necessary causal connection exists because the liability Defendants face arises from their official duties, performed in accordance with a valid government contract.  See Willingham, 395 U.S. at 409 (holding a causal nexus is established where it is shown the defendant's "relationship to [the plaintiff] derived solely from [his or her] official duties").   Therefore, the Court finds Defendants have demonstrated a causal nexus between Plaintiff's failure to warn claims and the conduct performed under color of a federal office as to satisfy Section 1442(a)(1)'s causal nexus requirement.

V.   CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand will be denied.  An appropriate Order will follow.

---

conduct taken pursuant to direction from a federal officer.").

34

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is:  Embarcadero Center West, 275 Battery Street, Suite 2000, San Francisco, CA 94111.  On the date set forth below, I served the within documents:

**DECLARATION OF KRISTINE M. GLOVER IN SUPPORT OF DEFENDANT AIR & LIQUID SYSTEMS CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-341)**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

☐    by personally arranging for the hand delivery via *USA Network Messengers* the document(s) listed above to the person(s) at the address(es) set forth below.

☒    by electronically serving the document(s) described above via United States District Court Electronic Case Filing website (CM/ECF notification system) on the recipients designated on the electronic service list that is located on the Pacer website.

| | |
|---|---|
| Baron & Budd, PC<br>9465 Wilshire Blvd Ste 460<br>Beverly Hills, CA 90212<br>Telephone:      310.860.0476<br>Facsimile:      310.860.0480<br>***Plaintiffs' Counsel*** | |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.     Executed on **December 2, 2010**, at San Francisco, California.

*Samantha Oryall*
Samantha Oryall