ADRMOP, E-Filing

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:10-cv-05095-SBA

| | |
|---|---|
| McCoy et al v. Northrop Grumman Shipbuilding, Inc. | Date Filed: 11/10/2010 |
| Assigned to: Hon. Saundra Brown Armstrong | Jury Demand: Plaintiff |
| Demand: $0 | Nature of Suit: 368 P.I. : Asbestos |
| Cause: 28:1332 Diversity-Asbestos Litigation | Jurisdiction: Diversity |

**Plaintiff**

**Louisa Keoseyan McCoy**
*as Wrongful Death Heir, and as
Successor-in-Interest to Howard
McCoy, Deceased*

represented by **David R. Donadio**
Brayton Purcell LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
(415) 898-1555
Fax: (415) 898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
(415) 898-1555
Fax: (415) 898-1247
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bruce McCoy**

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dwayne McCoy**

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cheryl Ann Suddith**
*as Legal Heirs of Howard McCoy,*
*Deceased*

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Northrop Grumman Shipbuilding,
Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/17/2010 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Saundra Brown Armstrong for all further proceedings. Judge Magistrate Judge Elizabeth D. Laporte no longer assigned to the case.. Signed by Executive Committee on 11/17/10. (as, COURT STAFF) (Filed on 11/17/2010) (Entered: 11/17/2010) |
| 11/16/2010 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (lmh, COURT STAFF) (Filed on 11/16/2010) (Entered: 11/16/2010) |
| 11/10/2010 | | CASE DESIGNATED for Electronic Filing. (kk, COURT STAFF) (Filed on 11/10/2010) (Entered: 11/19/2010) |
| 11/10/2010 | 6 | Declination to Proceed Before a United States Magistrate Judge & Request for Reassignment to a United States District Court Judge filed by Bruce McCoy, Dwayne McCoy, Louisa Keoseyan McCoy & Cheryl Ann Suddith. (tn, COURT STAFF) (Filed on 11/10/2010) (Entered: 11/12/2010) |
| 11/10/2010 | 5 | NOTICE of Tag-Along Action filed by Bruce McCoy, Dwayne McCoy, Louisa Keoseyan McCoy & Cheryl Ann Suddith. (tn, COURT STAFF) (Filed on 11/10/2010) (mjj2, COURT STAFF). (Entered: 11/12/2010) |
| 11/10/2010 | 4 | Certification of Interested Entities or Persons filed by Bruce McCoy, Dwayne McCoy, Louisa Keoseyan McCoy & Cheryl Ann Suddith. (tn, COURT STAFF) (Filed on 11/10/2010) (mjj2, COURT STAFF). (Entered: 11/12/2010) |
| 11/10/2010 | 3 | ADR SCHEDULING ORDER: Joint Case Management Statement due 2/15/2011 & InitialCase Management Conference set for 2/22/2011 at 10:00 AM.. (tn, COURT STAFF) (Filed on 11/10/2010) (Entered: 11/12/2010) |

| 11/10/2010 | 2 | SUMMONS Issued as to Defendant Northrop Grumman Shipbuilding, Inc.. (tn, COURT STAFF) (Filed on 11/10/2010) (mjj2, COURT STAFF). (Entered: 11/12/2010) |
|---|---|---|
| 11/10/2010 | 1 | COMPLAINT for Survival, Wrongful Death - Asbestos & Demand for Jury Trial - [Summons Issued] against Northrop Grumman Shipbuilding, Inc., [Filing Fee:$350.00, Receipt Number 34611052784] Filed by Plaintiffs Louisa Keoseyan McCoy, Bruce McCoy, Dwayne McCoy & Cheryl Ann Suddith. (tn, COURT STAFF) (Filed on 11/10/2010) (Additional attachment(s) added on 11/18/2010: # 1 Civil Cover Sheet) (mjj2, COURT STAFF). (Entered: 11/12/2010) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/13/2010 12:54:25 | | |
| **PACER Login:** bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** 4:10-cv-05095-SBA |
| **Billable Pages:** 3 | **Cost:** | 0.24 |

ORIGINAL FILED

2010 NOV 10 P 1:08

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**           EDL

10                   **SAN FRANCISCO DIVISION**

11  LOUISA KEOSEYAN McCOY, as            ) C No. 10 · 5095
    Wrongful Death Heir, and as Successor-in-  )
12  Interest to HOWARD McCOY, Deceased,  )
    and BRUCE McCOY, DWAYNE          )   COMPLAINT FOR SURVIVAL,
13  McCOY, and CHERYL ANN SUDDITH,   )   WRONGFUL DEATH - ASBESTOS;
    as Legal Heirs of HOWARD McCOY,      )   DEMAND FOR JURY TRIAL
14  Deceased,                            )
                                         )
15          Plaintiffs,                  )
                                         )
16  vs.                                  )
                                         )
17  NORTHROP GRUMMAN                     )
    SHIPBUILDING, INC.,                  )
18                                       )
            Defendant.                   )
19

20                          **I.**

21                        **PARTIES**

22      1.     Plaintiffs in this action are the above-captioned successor-in-interest to, or the

23  personal representative of the estate of Decedent; and the personal representatives on behalf of

24  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

25  "Plaintiffs."

26      2.     The person who sustained asbestos-related lung injuries and death as a result of

27  their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

28  hereinafter "Decedent" is, with the date of death: HOWARD McCOY died November 16, 2009.

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\109129\FED\cmp fed (wd).wpd                    1
         COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1  LOUISA KEOSEYAN McCOY is the spouse of HOWARD McCOY and is hereinafter referred
2  to as "surviving spouse."

3       3.      Decedent sustained an asbestos-related lung disease and death by precisely the
4  following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-
5  containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related
6  diseases is explained on **Exhibit A**, attached to plaintiffs' complaint and incorporated by
7  reference herein.

8       4.      All of plaintiffs' claims arise out of a similar series of occurrences: repeated
9  exposure to asbestos-containing products manufactured, distributed, and/or sold by defendant
10  and supplied to, installed and/or maintained by defendant at Decedent's worksites, over a period
11  of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,
12  resulting in cumulative, progressive, incurable lung diseases.

13       5.      Each plaintiff claims damages for an asbestos-related disease arising from an
14  identical series of occurrences not dependent on Decedent's worksite but on the fact that
15  asbestos-containing products, when handled in the manner in which they were intended, released
16  harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The
17  allegations of plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature
18  of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are
19  all identical.

20       6.      Plaintiffs are informed and believe, and thereon allege, that at all times herein
21  mentioned, defendant was and is corporation, partnership, unincorporated association, sole
22  proprietorship and/or other business entity organized and existing under and by virtue of the laws
23  of the State of California, or the laws of some other state or foreign jurisdiction, and that said
24  defendant, was and is authorized to do and are doing business in the State of California, and that
25  said defendant has regularly conducted business in the State of California.

26  ///
27  ///
28  ///

## II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.     <u>Jurisdiction</u>:  Plaintiff LOUISA KEOSEYAN McCOY is a citizen of the State of California.  Plaintiff(s) BRUCE McCOY, DWAYNE McCOY, and CHERYL ANN SUDDITH are citizens of the following states, respectively: California, California and California.

Defendant is each corporation incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| NORTHROP GRUMMAN SHIPBUILDING, INC. | Virginia |

This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.     <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred within the County of San Francisco, California, and Defendant is subject to personal jurisdiction in this district at the time the action is commenced.

### III.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF LOUISA KEOSEYAN McCOY COMPLAINS OF DEFENDANT NORTHROP GRUMMAN SHIPBUILDING, INC., ITS "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.     At all times herein mentioned, the named defendant was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate,

1    venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of

2    or member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

3    labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

4    inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing,

5    endorsing servicing, installing, contracting for installation, repairing, marketing, warranting,

6    rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

7    directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or

8    other products containing asbestos.  Said entities shall hereinafter collectively be called

9    ALTERNATE ENTITIES.  The herein named defendant is liable for the tortious conduct of each

10   successor, successor in business, successor in product line or a portion thereof, assign,

11   predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-

12   venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it

13   was a member of, or funded, that researched, studied, manufactured, fabricated, designed,

14   modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

15   inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

16   rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

17   products containing asbestos.  The following defendant, is liable for the acts of each and every

18   ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of

19   plaintiffs' remedy against each such ALTERNATE ENTITY; defendant, has acquired the assets,

20   product line, or a portion thereof, of each such ALTERNATE ENTITY; defendant, caused the

21   destruction of plaintiffs' remedy against each such ALTERNATE ENTITY; each such defendant

22   has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that

23   each such defendant enjoys the goodwill originally attached to each such ALTERNATE

24   ENTITY:

25   DEFENDANT                          ALTERNATE ENTITY
     NORTHROP GRUMMAN                   AVONDALE INDUSTRIES, INC.
26      SHIPBUILDING, INC.                 AVONDALE SHIPYARDS, INC.
                                        INGALLS SHIPBUILDING, INC.
27                                      NEWPORT NEWS SHIPBUILDING AND
                                           DRY DOCK COMPANY
28                                      NORTHROP GRUMMAN SHIP SYSTEMS, INC.
                                        NORTH CAROLINA SHIPBUILDING

10.     At all times herein mentioned, defendant, its ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.     At all times herein mentioned, defendant, its ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

12.     Defendant, its ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendant, and each of them, breached said duty of due care.

13.     Defendant, its ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

1 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
2 breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the
3 release of airborne asbestos fibers, and that through such foreseeable use and/or handling
4 "exposed persons," including Decedent herein, would use or be in proximity to and exposed to
5 said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
6 persons working in proximity to said products, directly or through reentrainment.

7      14.      Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
8 containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
9 exposure to asbestos and asbestos-containing products is on current information as set forth at
10 various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
11 herein.

12      15.      As a direct and proximate result of the acts, omissions, and conduct of the
13 defendant, its ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to
14 asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or
15 harm to the Decedent as set forth in **Exhibit A**, attached to plaintiffs' complaint and incorporated
16 by reference herein.

17      16.      Plaintiffs are informed and believe, and thereon alleges, that progressive lung
18 disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
19 without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
20 asbestos and asbestos-containing products over a period of time.

21      17.      Decedent suffered from a condition related to exposure to asbestos and asbestos-
22 containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-
23 containing products presented any risk of injury and/or disease.

24      18.      As a direct and proximate result of the aforesaid conduct of the defendant, its
25 "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,
26 nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact
27 amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this
28 complaint accordingly when the true and exact cost thereof is ascertained.

19. As a direct and proximate result of the aforesaid conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20. As a direct and proximate result of the aforesaid conduct of defendant, its ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21. As a further direct and proximate result of the said conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. As a further direct and proximate result of the said conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23. Defendant, its ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24. Defendant, its ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of its ALTERNATE ENTITIES, and each of them, and defendant's officers, directors, and managing agents participated in, authorized, expressly

///

1  and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of its
2  ALTERNATE ENTITIES as set forth herein.

3      25.      The herein-described conduct of said defendant, its ALTERNATE ENTITIES,
4  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in
5  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed
6  persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive
7  damages against said defendant.

8      WHEREFORE, plaintiffs pray judgment against defendant, its "alternate entities," and
9  each of them, as hereinafter set forth.

10                    SECOND CAUSE OF ACTION
                      (Products Liability - Survival)
11

12      PLAINTIFF LOUISA KEOSEYAN McCOY AS SUCCESSOR-IN-INTEREST TO THE
13  DECEDENT HOWARD McCOY COMPLAINS OF DEFENDANT NORTHROP GRUMMAN
14  SHIPBUILDING, INC., ITS "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR
15  A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR
16  PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

17      26.      Plaintiffs incorporate herein by reference, as though fully set forth herein, each
18  paragraph of the First Cause of Action herein.

19      27.      Defendant, its "alternate entities," and each of them, knew and intended that the
20  above-referenced asbestos and asbestos-containing products would be used by the purchaser or
21  user without inspection for defects therein or in any of their component parts and without
22  knowledge of the hazards involved in such use.

23      28.      Said asbestos and asbestos-containing products were defective and unsafe for their
24  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
25  and/or death. The defect existed in the said products at the time they left the possession of
26  defendant, its ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause
27  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
28  ///

1 persons," including Decedent herein, while being used in a reasonably foreseeable manner,
2 thereby rendering the same defective, unsafe, and dangerous for use.

3    29.    "Exposed persons" did not know of the substantial danger of using said products.
4 Said dangers were not readily recognizable by "exposed persons." Said defendant, its
5 ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
6 which Decedent and others similarly situated were exposed.

7    30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
8 to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
9 sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,
10 promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
11 marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
12 and asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them, did
13 so with conscious disregard for the safety of "exposed persons" who came in contact with said
14 asbestos and asbestos-containing products, in that said defendant, its ALTERNATE ENTITIES,
15 and each of them, had prior knowledge that there was a substantial risk of injury or death
16 resulting from exposure to asbestos or asbestos-containing products, including, but not limited to,
17 asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from
18 scientific studies performed by, at the request of, or with the assistance of, said defendant, its
19 ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
20 defendant, its ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

21    31.    On or before 1930, and thereafter, said defendant, its ALTERNATE ENTITIES
22 and each of them, were aware that members of the general public and other "exposed persons,"
23 who would come in contact with their asbestos and asbestos-containing products, had no
24 knowledge or information indicating that asbestos or asbestos-containing products could cause
25 injury, and said defendant, its ALTERNATE ENTITIES, and each of them, knew that members
26 of the general public and other "exposed persons," who came in contact with asbestos and
27 asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos
28 ///

1  and asbestos-containing products was safe, when in fact said exposure was extremely hazardous
2  to health and human life.

3      32.    With said knowledge, said defendant, its ALTERNATE ENTITIES, and each of
4  them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease,
5  buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,
6  warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-
7  containing products without attempting to protect "exposed persons" from, or warn "exposed
8  persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-
9  containing products. Rather than attempting to protect "exposed persons" from, or warn
10 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
11 asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them,
12 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
13 and suppressed said knowledge from "exposed persons" and members of the general public, thus
14 impliedly representing to "exposed persons" and members of the general public that asbestos and
15 asbestos-containing products were safe for all reasonably foreseeable uses. Defendant, its
16 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
17 representations with the knowledge of the falsity of said implied representations.

18     33.    The above-referenced conduct of said defendant, its ALTERNATE ENTITIES,
19 and each of them, was motivated by the financial interest of said defendant, its ALTERNATE
20 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
21 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
22 sale, inspection, installation, contracting for installation, repair, marketing, warranting,
23 rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise
24 directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing
25 products. In pursuance of said financial motivation, said defendant, its ALTERNATE
26 ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact
27 were consciously willing and intended to permit asbestos and asbestos-containing products to
28 ///

1 cause injury to "exposed persons" and induced persons to work with and be exposed thereto,
2 including Decedent.

3     34.   Plaintiffs allege that the aforementioned defendant, its ALTERNATE ENTITIES,
4 and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe
5 for their intended use, but that their asbestos and asbestos-containing products, created an
6 unreasonable risk of bodily harm to exposed persons.

7     35.   Plaintiffs relied upon defendant, its ALTERNATE ENTITIES, and each of their
8 representations, lack of warnings, and implied warranties of fitness of asbestos and their
9 asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent
10 suffered permanent injury and death as alleged herein.

11     36.   As a direct and proximate result of the actions and conduct outlined herein,
12 Decedent have suffered the injuries and damages herein alleged.

13     WHEREFORE, plaintiffs pray judgment against defendant, its "alternate entities", and
14 each of them, as hereinafter set forth.

15
THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)
16

17     PLAINTIFF LOUISA KEOSEYAN McCOY, AS WRONGFUL DEATH HEIR, AND
18 AS SUCCESSOR-IN-INTEREST TO HOWARD McCOY DECEASED, AND PLAINTIFF(S)
19 BRUCE McCOY, DWAYNE McCOY, and CHERYL ANN SUDDITH AS LEGAL HEIRS OF
20 DECEDENT, COMPLAIN OF DEFENDANT NORTHROP GRUMMAN SHIPBUILDING,
21 INC., ITS "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD,
22 SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE
23 (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

24     37.   Plaintiffs incorporate by reference each paragraph contained within the First
25 Cause of Action as though fully set forth herein.

26     38.   The heirs at law of the Decedent and their relationship to the Decedent is set forth
27 above.

28 ///

1   39.    The individuals set forth as heirs constitute all of the surviving heirs of the
2   Decedent.

3   40.    As a direct and proximate result of the conduct of the defendant, its
4   ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-
5   containing products caused Decedent to develop diseases from which condition Decedent died.
6   Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of
7   filing the complaint.

8   41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the
9   surviving spouse.

10   42.    As a direct and proximate result of the conduct of defendant, and each of them,
11   and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss
12   of care, society, comfort, attention, services, and support of Decedent all to the damage of
13   Decedent's heirs.

14   43.    As a further direct and proximate result of the conduct of defendant, and the death
15   of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not
16   ascertained.

17        WHEREFORE, plaintiffs pray judgment against defendant, as hereinafter set forth.

18                          FOURTH  CAUSE OF ACTION
                          (Products Liability - Wrongful Death)
19

20        PLAINTIFF LOUISA KEOSEYAN McCOY, AS WRONGFUL DEATH HEIR, AND
21   AS SUCCESSOR-IN-INTEREST TO HOWARD McCOY DECEASED, AND PLAINTIFF(S)
22   BRUCE McCOY, DWAYNE McCOY, and CHERYL ANN SUDDITH AS LEGAL HEIRS OF
23   DECEDENT, COMPLAIN OF DEFENDANT NORTHROP GRUMMAN SHIPBUILDING,
24   INC., ITS "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH,
25   SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS
26   LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

27   44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each
28   paragraph of the First, Second and Third Causes of Action herein.

45.     As a direct and proximate result of the conduct of defendant, Decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, plaintiffs pray judgment against defendant, its "alternate entities," and each of them, as hereinafter set forth.

## IV.

## DAMAGES AND PRAYER

WHEREFORE, plaintiffs pray judgment against defendant, its "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

(a)     For plaintiffs' general damages according to proof;

(b)     For plaintiffs' loss of income, wages and earning potential according to proof;

(c)     For plaintiffs' medical and related expenses according to proof;

(d)     For plaintiffs' cost of suit herein;

(e)     For exemplary or punitive damages according to proof;

(f)     For damages for fraud according to proof; and

(g)     For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated:  __11/8/10__          BRAYTON❖PURCELL LLP


By: _____
David R. Donadio
Attorneys for Plaintiffs


## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated:  __11/8/10__          BRAYTON❖PURCELL LLP


By: _____
David R. Donadio
Attorneys for Plaintiffs

K:\Injured\109129\FED\cmp fed (wd).wpd                    13
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1    EXHIBIT A

2    Decedent:  HOWARD McCOY, Deceased.

3

4    Decedent's injuries:  Decedent's exposure to asbestos and asbestos-containing products caused

5    severe and permanent injury to the decedent, including, but not limited to breathing difficulties

6    and/or other lung damage. Decedent was diagnosed with lymphoma on or about February 2009,

7    with asbestosis and asbestos-related pleural disease on or about September 2008.

8

9    Decedent died on November 16, 2009.

10

11   Retirement Status:  The Injured Party retired from his last place of employment as a result of

12   becoming disabled due to an illness not related to asbestos.  He has therefore suffered no

13   disability from his asbestos-related disease as "disability" is defined in California Code of Civil

14   Procedure § 340.2.

15

16   Defendant:  Plaintiffs contend that the asbestos-containing products to which Decedent was or

17   may have been exposed to were manufactured, supplied, distributed, installed and/or contracted

18   for by defendant.  Decedent's exposure to asbestos occurred at the following times and places,

19   and involved exposure to dust created by the contractors and the products of the entities listed

20   below.  The exposure includes, but is not limited, to the following presently known contractors

21   and the manufacturers and distributors of asbestos-containing products:

22

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Carl J. Nelson and V. C. Anderson Publication Research Service 201 N. Wells St. Chicago, IL | Unknown | Unknown | 1950 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently
unaware if decedent was exposed to asbestos during this employment.

28   ///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Allied Stores of Penn-Ohio, Inc. Pomeroy's Inc. P.O. Box 1867 Harrisburg, PA 17105 | Roman's Department Store, Cincinnati, Ohio | Stock Clerk | 1950 (approximately 6 weeks) |

Job Duties:  Decedent worked as a stock clerk in the warehouse. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Hospital, Bremerton, WA | Trainee | 1950 |
|  | Camp Pendleton, Oceanside, CA |  |  |

Job Duties: Decedent underwent training to become a Psychiatric Technician at Bremerton, Washington. Decedent completed specialized Corpsman training at Camp Pendleton, Oceanside, California. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Hospital, San Diego, CA | Corpsman | 1950-1955 |
|  | GENERAL H.W. BUTNER  (AP-113) |  |  |
|  | Seoul, Korea |  |  |

Job Duties:  Decedent worked as a Navy Corpsman.  Decedent traveled  to Korea on the GENERAL H.W. BUTNER.  Decedent arrived at Seoul and immediately went into combat. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| The Great Atlantic & Pacific Tea Co. 1625 S. Grand Blvd. St. Louis, MO | The Great Atlantic & Pacific Tea Company, St. Louis, MO | Stock Clerk | 1955 |

Job Duties:  Decedent worked as a stock clerk.  Plaintiff is currently unaware if decedent was exposed to asbestos.

///

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Chicago Printed String Co.<br>2320 Logan Blvd.<br>Chicago, IL | Chicago Printed String Co.,<br>Chicago, IL | Forklift Operator | 1955 |

Job Duties: Decedent operated a forklift in the warehouse, moving and transporting cases of ribbon. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Illinois Bell Telephone Co.<br>One AT&T Center<br>c/o Marion Ellis<br>909 Chestnut St. One<br>Attn: Center 28-R<br>St. Louis, MO 63101 | Cincinnati Bell Telephone,<br>Cincinnati, Ohio | Electrician | 1955-1956 |

Job Duties: Decedent worked at the switching station hooking up and installing telephone terminals on surface panels of switches. Decedent worked in the switch room. Decedent cut, spliced, and installed WESTERN ELECTRIC (LUCENT TECHNOLOGIES, INC.) & WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) electrical wire and cables. Decedent installed and repaired electric motor compressors. Decedent obtained the electrical products he used from his employer. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| VA Medical Center<br>Cincinnati<br>c/o Lisa L. Wise<br>3100 Vine St.<br>Cincinnati, OH 45219 | Veterans Administration<br>Medical Center,<br>Cincinnati, OH | Trainee | 1956 |

Job Duties: Decedent trained to become a physical therapist. Decedent did not recall the names of any supervisors or coworkers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Duke Energy Ohio Inc.<br>c/o Sharon Walker<br>139 E. 4th St.<br>Cincinnati, OH 45202 | Unknown | Unknown | 1956-1957 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| CBS Corp. c/o Westinghouse Electric Corp. Tax Dept. 1515 Broadway, Fl. 32 New York, NY 10036 | Westinghouse Electric, Cincinnati, OH | Electrician | 1957 |

Job Duties:  Decedent worked throughout the Westinghouse Electric building complex consisting of multiple building structures.  Decedent used GENERAL CABLE (GENERAL CABLE CORPORATION) asbestos-insulated electrical wire.  Decedent drilled and cut holes through Bakelite panels in order to thread wire and hang breaker boxes.  Decedent installed and drilled through the back panel of WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) circuit breakers. Decedent drilled through phenolic resin when installing electrical panels.  Decedent installed, hooked up, and wired electric motor compressors.  Decedent installed CUTLER-HAMMER (EATON ELECTRICAL, INC.) breaker boxes and cut into the back panel in order to screw and mount it onto the surface.  Decedent installed electrical panels, cutting and drilling Bakelite. Decedent used drills, wire cutters, wire strippers, and pliers. Decedent worked in close proximity to plumbers who were installing pipelines.  Decedent requisitioned his materials and electrical components from his employer.  Decedent worked in close proximity to air conditioning mechanics who were installing air conditioning units.  Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Fluorescent Fixtures of California 352 Shaw Rd. S. San Francisco, CA 94080 | Fluorscent Fixtures of California, San Francisco, CA | Electrician | 1958 |

Job Duties:  Decedent worked aboard ships installing lighting and other electrical fixtures. Decedent cut through existing asbestos-containing insulation in order to perform the installation. Decedent used asbestos-insulated electrical wires.  Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| The Cook Allison Coffee Co. 4444 Sunset Blvd. Los Angeles, CA 90027 | Unknown | Unknown | 1958 |

Job Duties:  Decedent did not recall the specifics of this employment.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Hunters Point Naval Shipyard c/o Code 641, B Bldg. Vallejo, CA 94592 | Hunters Point Naval Shipyard, San Francisco, CA | Electrician | 1958-1963 |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Hunters Point Naval Shipyard c/o Code 641, B Bldg. Vallejo, CA 94592 (cont'd) | Hunters Point Naval Shipyard, San Francisco, CA | Electrician | 1958-1963 |
| | Shop 51 | | |
| | BON HOMME RICHARD (CV-31) | | |
| | CONSTELLATION (CV-64) | | 1961-1963 (approximately) |
| | FORRESTAL (CV-59) | | |
| | HELENA (CA-75) | | |
| | HORNET (CVS-12) | | |
| | KEARSARGE (CVS-33) | | |
| | KITTY HAWK (CVA-63) | | 1961-1963 (approximately) |
| | LEXINGTON (CV-16) | | |
| | MIDWAY (CVA-41) | | |
| | ORISKANY (CVA-34) | | |
| | RANGER (CV-61) | | |
| | SEA WOLF (SSN-575) | | |
| | TICONDEROGA (CV-14) | | |
| | VALLEY FORGE (CV-45) | | |

Job Duties: Decedent worked in Shop 51 and aboard ships. Decedent worked with asbestos containing electrical components manufactured by the following, including but not limited to: WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)), SQUARE D (SCHNEIDER ELECTRIC USA, INC. (FKA SQUARE D COMPANY)) electrical panels, SQUARE D (SCHNEIDER ELECTRIC USA, INC. (FKA SQUARE D COMPANY)) switch gear, GENERAL ELECTRIC (GENERAL ELECTRIC COMPANY) electrical panels, GENERAL ELECTRIC (GENERAL ELECTRIC COMPANY) switch gear, CUTLER-HAMMER (EATON ELECTRICAL, INC.), WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) MICARTA and GENERAL CABLE (GENERAL CABLE CORPORATION).  Decedent drilled and cut Bakelite material.
        Decedent performed electrical work throughout the ships, including the boiler rooms, engine rooms, steering compartments and Captain's Quarters. Decedent recalled the voltage on

the ships was 440 volts. Decedent removed, cut, spliced and installed asbestos-insulated, high voltage, electrical wire. Decedent ran asbestos-insulated electrical wire and cable throughout the ships. Decedent ran wire and hooked up machinery throughout the ships. Decedent worked on transformers, circuit breakers, panels, cables, generators, and motor starters. Decedent installed SQUARE D (SCHNEIDER ELECTRIC USA, INC. (FKA SQUARE D COMPANY)) electrical panels and switch gear. Decedent drilled through phenolic resin when installing electrical panels. Decedent cleaned WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) motor starters with compressed air.  Decedent blew dust from and cleaned the contacts on electrical contacts.  Decedent recalled scraping carbon build-up from the arc shields of switch gear. Decedent cleaned carbon residue off of arc chutes.  Decedent used compressed air to blow fine dust out of the switch gear. Decedent drilled through WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) MICARTA. Decedent installed breakers, panels, wire, cable, and control switches.  Decedent removed and disturbed asbestos-containing pipe insulation.  Decedent worked in close proximity to other trades removing asbestos containing insulation.  Decedent worked in close proximity to insulators who were removing and installing OWENS-CORNING FIBERGLAS asbestos-containing pipe insulation.  Decedent worked in close proximity to insulators who were installing and disturbing  hard, grey, asbestos-containing pipe insulation.  Decedent recalled limited visibility aboard the ships due to the dust.  Decedent worked in close proximity to machinists who were repairing, replacing, maintaining, and disturbing asbestos containing insulation and gaskets on the following equipment, including but not limited to:  boilers, generators, turbines, air compressors, valves and pumps.

Decedent worked in various shops within Shop 51.  While working in the Electrical Shop, decedent tore down and repaired equipment that had been removed from ships.  Decedent worked in the Battery Shop tearing down and rebuilding batteries.  In the Generator Shop, decedent repaired and tested generators that had been removed from ships.  Decedent removed and replaced gaskets when working on the generators.  Decedent worked in the Machine Shop repairing and re-fabricating machines and small electrical tools such as drills.  Decedent worked in the Gyroshop repairing gyros.  Decedent worked in the Controller shop repairing and drilling holes in WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) breaker boxes.  Decedent recalled working in the Engraving Shop where he made signs, labels, name tags, and door tags out of Bakelite.  Decedent used a small electrical drill to etch the Bakelite.  Decedent made name tags out of Bakelite that all employees, including himself, pinned to their chest.  Decedent recalled this was an extremely dusty process.  Decedent recalled Shop 51 always being a dusty environment.  Decedent worked in close proximity to laborers who were cleaning and sweeping the shop.  Decedent used drills, saws, pliers, wire cutters and wire strippers.  Decedent obtained materials and supplies from the shipyard.  Decedent worked with the following co-workers: Sam Logan, San Francisco, California, Steve Arzaga, deceased, and Mike McGuire, Long Barn, California.  Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| California Vegetable Concentrates Inc. 250 North St. White Plains, NY 10605 | California Vegetable Concentrate, Modesto, CA | Electrician | 1963 |

Job Duties: Decedent performed electrical maintenance work, ran electrical wire and cable, and wired machinery throughout the facility. Decedent cut and spliced asbestos insulated wire. Decedent repaired and maintained conveyor belts. Decedent drilled through phenolic resin when installing electrical panels. Decedent opened and rebuilt switch panels that contained electrical control equipment. Decedent installed and repaired electric motor compressors. Decedent sanded and removed carbon residue from switch gears and blew fine dust out of the switchgear.

Decedent disturbed existing pipe insulation. Decedent recalled cutting into existing insulation in order to reach and repair electrical wiring and equipment. Decedent worked with electrical components manufactured by the following, including but not limited to: SQUARE D (SCHNEIDER ELECTRIC USA, INC. (FKA SQUARE D COMPANY)) circuit breakers, CUTLER-HAMMER (EATON ELECTRICAL, INC.) asbestos containing electrical wires, CUTLER HAMMER (EATON ELECTRICAL, INC.) breaker boxes, GENERAL CABLE (GENERAL CABLE CORPORATION) asbestos containing electrical wires and cable, WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) circuit breakers and switchgear, and WESTERN ELECTRIC (LUCENT TECHNOLOGIES, INC.) wire. Decedent obtained electrical products and materials from his employer. Decedent recalled GRAYBAR ELECTRIC (GRAYBAR ELECTRIC COMPANY, INC.) supplying the above mentioned asbestos containing electrical components. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Best Fertilizers Co. Box 198 Lathrop, CA 95330 | Best Fertilizer, Lathrop, CA | Electrician | 1963-1964. (approximately one year) |

Job Duties: Decedent performed electrical maintenance work; ran electrical wire and cable; and wired machinery throughout the facility. Decedent cut and spliced asbestos insulated wire. Decedent repaired and maintained conveyor belts. Decedent drilled through phenolic resin when installing electrical panels. Decedent opened and rebuilt switch panels that contained electrical control equipment. Decedent installed and repaired electric motor compressors. Decedent sanded and removed carbon residue from switch gears and blew fine dust out of the switchgear. Decedent disturbed existing pipe insulation. Decedent recalled cutting into existing insulation in order to reach and repair electrical wiring and equipment. Decedent worked with electrical components manufactured by the following, including but not limited to: SQUARE D (SCHNEIDER ELECTRIC USA, INC. (FKA SQUARE D COMPANY)) circuit breakers, CUTLER-HAMMER (EATON ELECTRICAL, INC.) asbestos containing electrical wires, CUTLER HAMMER (EATON ELECTRICAL INC.) breaker boxes, GENERAL CABLE (GENERAL CABLE CORPORATION) asbestos containing electrical wires and cable, WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) circuit breakers and switchgear, and WESTERN ELECTRIC (LUCENT TECHNOLOGIES, INC.) wire. Decedent obtained electrical products and materials from his employer. Decedent recalled GRAYBAR ELECTRIC (GRAYBAR ELECTRIC COMPANY, INC.) supplying the above mentioned asbestos containing electrical components. Decedent obtained electrical products and materials from his employer. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Campbell Soup Co. Campbell Pl. Camden, NJ 08103 | Campbell Soup Company, Modesto, CA | Electrician | 1964 |

Job Duties: Decedent performed electrical maintenance work, ran electrical wire and cable, and wired machinery throughout the facility. Decedent sanded and removed carbon residue from switch gear and blew fine dust out of the switchgear. Decedent recalled cutting into existing insulation in order to reach and repair electrical wiring and equipment. Decedent worked with electrical components manufactured by the following, including but not limited to: SQUARE D (SCHNEIDER ELECTRIC USA, INC. (FKA SQUARE D COMPANY)) circuit breakers,

1  CUTLER-HAMMER (EATON ELECTRICAL, INC.) asbestos containing electrical wires,
   CUTLER HAMMER (EATON ELECTRICAL, INC.) breaker boxes, GENERAL CABLE
2  (GENERAL CABLE CORPORATION) asbestos containing electrical wires and cable,
   WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA
3  WESTINGHOUSE ELECTRIC CORPORATION)) circuit breakers and switchgear, and
   WESTERN ELECTRIC (LUCENT TECHNOLOGIES, INC.) wire. Decedent obtained electrical
4  products and materials from his employer. Decedent recalled GRAYBAR ELECTRIC
   (GRAYBAR ELECTRIC COMPANY, INC.) supplying the above mentioned asbestos containing
5  electrical components. Decedent obtained electrical products and materials from his employer.
   Plaintiff currently contends decedent was exposed to asbestos during this employment.

6

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Sharpe Army Depot SDSSH RFA-CA Sacramento Army Depot for Sharpe Ad Sacramento, CA 95813 | Sharpe Army Depot, Lathrop, CA | Unknown | 1964 |

11  Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently
   unaware if decedent was exposed to asbestos during this employment.

12

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Army Defense Depot Tracy Defense Depot Tracy Chrisman Rd. Tracy, CA 95376 | Rough and Ready Island, Stockton, CA | Estimator | 1964-1968 |

17  Job Duties: Decedent worked at this think tank as a planner and estimator. Decedent worked in
   an office researching material and product costs. Plaintiff is currently unaware if decedent was
18  exposed to asbestos during this employment.

19

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Modesto City Elementary School Dist. Stanislaus Co Supt of Schools 801 County Center, No. 3 Court Modesto, CA 95350 | Various schools including the following, but not limited to: | Electrician | 1971-1972 |
|  | Thomas Downey High School, Modesto, CA |  |  |
|  | Fred C. Beyer High School, Modesto, CA |  |  |
|  | Modesto High School, Modesto, CA |  |  |

Job Duties: Decedent worked as an electrician, traveling and working at all schools in the Modesto School District. Decedent worked during the new construction of Fred C. Beyer High School, Modesto, California. Decedent performed electrical service and repair work. Decedent ran, cut, and spliced asbestos insulated electrical wire. Decedent installed breaker boxes and drilled through the panels to mount the boxes. Decedent performed electrical installation on machinery and installed various electrical fixtures throughout the school buildings. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| David B. McDaniels Marias Imports 921 - 10th St. Modesto, CA 95354 | David McDaniels Modesto, CA | Driver | 1974 |

Job Duties: Decedent drove an import route from Modesto to Mexico where he picked up products and returned to Modesto, California. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Dick J. Vaughan Deevon Industries 3104 Yorkshire Lane Modesto, CA 95350 | D. Vaughan Industries, Modesto, CA | ~~Installer~~ Electrician | 1974 |

Job Duties: Decedent installed water softening equipment at both commercial and residential locations. Decedent mounted electrical boxes on the wall, drilling through the back panel. Decedent cut, spliced, and connected asbestos-containing electrical wires. Decedent obtained materials from his employer. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| John A. Sanders Radio Shack Associate Store Sacramento Auto Stereo 221 McHenry Ave. Modesto, CA 95354 | Radio Shack Modesto, CA | Installer | 1977-1978 |

Job Duties: Decedent installed automobile stereo systems. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Orangeburg Avenue Baptist Church 313 E. Orangeburg Ave. Modesto, CA 95350 | Orangeburg Avenue Baptist Church, Modesto CA | Cook | 1978-1980 |

Job Duties: Decedent worked as a chef preparing meals. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Richard Jennings 6700 N. First St., #110 Fresno, CA 93710 | Richard Jennings, DDS Fresno, CA | Repairman | 1988-1990 |

Job Duties: Decedent performed maintenance repair work at a dentist office. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

Throughout his career as an electrician, Decedent recalled working with electrical components manufactured by the following, including but not limited to: CUTLER-HAMMER (EATON ELECTRICAL, INC.) asbestos insulated electrical cable; SQUARE D (SCHNEIDER ELECTRIC USA, INC. (FKA SQUARE D COMPANY)) electrical panels; GENERAL ELECTRIC (GENERAL ELECTRIC COMPANY) switchgear, circuit panels, and asbestos insulated wire and cable; WESTERN ELECTRIC (LUCENT TECHNOLOGIES, INC.) and WESTINGHOUSE ELECTRIC (CBS CORPORATION (FKA VIACOM, INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) asbestos insulated electrical cable. Throughout his employment, Decedent recalled GRAYBAR ELECTRIC (GRAYBAR ELECTRIC COMPANY, INC.) supplying asbestos containing electrical components, including those identified above. Throughout his employment, decedent recalled cutting, splicing and installing asbestos insulated electrical wires and cable; drilling and punching holes in bakelite; drilling and mounting circuit panels and electrical boxes composing of bakelite.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL