ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:10-cv-05508-JSW

Hensley et al v. AVCO Corporation
Assigned to: Hon. Jeffrey S. White
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 12/03/2010
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

## Plaintiff

**Gillian Hensley**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Bobby Joe*
*Hensley, Deceased*

represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

## Plaintiff

**Bobby Joe Hensley, Jr.**
*as Legal Heir ob Bobby Joe Hensley,*
*Deceased*

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

## Plaintiff

**Kim Hensley**
*as Legal Heir ob Bobby Joe Hensley,*
*Deceased*

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AVCO Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/09/2010 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Jeffrey S. White for all further proceedings. Magistrate Judge Donna M. Ryu no longer assigned to the case. Signed by the Executive Committee on December 9, 2010. (cjl, COURT STAFF) (Filed on 12/9/2010) (Entered: 12/09/2010) |
| 12/07/2010 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (ig, COURT STAFF) (Filed on 12/7/2010) (Entered: 12/08/2010) |
| 12/03/2010 | | CASE DESIGNATED for Electronic Filing. (cjl, COURT STAFF) (Filed on 12/3/2010) (Entered: 12/07/2010) |
| 12/03/2010 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 3/9/2011. Case Management Conference set for 3/16/2011 01:30 PM in Courtroom 4, 3rd Floor, Oakland. (Attachments: # 1 Standing Order)(cjl, COURT STAFF) (Filed on 12/3/2010) (Entered: 12/07/2010) |
| 12/03/2010 | 5 | Summons Issued as to AVCO Corporation. (cjl, COURT STAFF) (Filed on 12/3/2010) (cjl, COURT STAFF). (Entered: 12/07/2010) |
| 12/03/2010 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Bobby Joe Hensley, Jr, Gillian Hensley, Kim Hensley. (cjl, COURT STAFF) (Filed on 12/3/2010) (cjl, COURT STAFF). (Entered: 12/07/2010) |
| 12/03/2010 | 3 | NOTICE of Tag-Along Action by Bobby Joe Hensley, Jr, Gillian Hensley, Kim Hensley. (cjl, COURT STAFF) (Filed on 12/3/2010) (cjl, COURT STAFF). (Entered: 12/07/2010) |
| 12/03/2010 | 2 | Certificate of Interested Entities by Bobby Joe Hensley, Jr, Gillian Hensley, Kim Hensley. (cjl, COURT STAFF) (Filed on 12/3/2010) (cjl, COURT STAFF). (Entered: 12/07/2010) |
| 12/03/2010 | 1 | COMPLAINT (with jury demand) against AVCO Corporation (Filing fee $350, receipt number 34611053522). Filed by Gillian Hensley, Bobby Joe Hensley, Jr, Kim Hensley. (cjl, COURT STAFF) (Filed on 12/3/2010) (Additional attachment(s) added on 12/8/2010: # 1 Civil Cover Sheet) (cjl, COURT STAFF). (Entered: 12/07/2010) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |
|  |

| 12/13/2010 12:53:39 | | |
|---|---|---|
| **PACER Login:** bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** 3:10-cv-05508-JSW |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

ORIGINAL
FILED

2010 DEC -3 P 12: 26

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   ALAN R. BRAYTON, ESQ., S.B. #73685
2   DAVID R. DONADIO, ESQ., S.B. #154436
    BRAYTON❖PURCELL LLP
    Attorneys at Law
3   222 Rush Landing Road
    P.O. Box 6169
4   Novato, California 94948-6169
    (415) 898-1555
5   (415) 898-1247 (Fax No.)

6   Attorneys for Plaintiffs                E-filing

7

8                   UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA          DMR

10                    SAN FRANCISCO DIVISION

11  GILLIAN HENSLEY, as Wrongful Death    )   No.
    Heir, and as Successor-in-Interest to )
12  BOBBY JOE HENSLEY, Deceased, and      )        CV10        5508
    BOBBY JOE HENSLEY, JR. and KIM        )
13  HENSLEY, as Legal Heirs of BOBBY      )   COMPLAINT FOR SURVIVAL,
    JOE HENSLEY, Deceased,                )   WRONGFUL DEATH - ASBESTOS;
14                                        )   DEMAND FOR JURY TRIAL
                                          )
15              Plaintiffs,               )
                                          )
    vs.                                   )
16                                        )
    AVCO CORPORATION,                     )
17                                        )
              Defendant.                  )
18

19

20                              I.

21                          PARTIES

22      1.      Plaintiffs in this action are the above-captioned successor-in-interest to, or the

23  personal representative of the estate of Decedent; and the personal representatives on behalf of

24  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

25  "Plaintiffs."

26      2.      The person who sustained asbestos-related lung injuries and death as a result of

27  their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

28  hereinafter "Decedent" is, with the date of death: BOBBY JOE HENSLEY died December 7,

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\106923\FED\PLD\cmp fed (wd).wpd                          1
        COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1  2009. GILLIAN HENSLEY is the spouse of BOBBY JOE HENSLEY and is hereinafter
2  referred to as "surviving spouse."

3      3.      Decedent sustained an asbestos-related lung disease and death by precisely the
4  following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-
5  containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related
6  diseases is explained on **Exhibit A**, attached to plaintiffs' complaint and incorporated by
7  reference herein.

8      4.      All of plaintiffs' claims arise out of a similar series of occurrences: repeated
9  exposure to asbestos-containing products manufactured, distributed, and/or sold by defendant
10 and supplied to, installed and/or maintained by defendant at Decedent's worksites, over a period
11 of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,
12 resulting in cumulative, progressive, incurable lung diseases.

13     5.      Each plaintiff claims damages for an asbestos-related disease arising from an
14 identical series of occurrences not dependent on Decedent's worksite but on the fact that
15 asbestos-containing products, when handled in the manner in which they were intended, released
16 harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The
17 allegations of plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature
18 of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are
19 all identical.

20     6.      Plaintiffs are informed and believe, and thereon allege, that at all times herein
21 mentioned, defendant was and is corporation, partnership, unincorporated association, sole
22 proprietorship and/or other business entity organized and existing under and by virtue of the laws
23 of the State of California, or the laws of some other state or foreign jurisdiction, and that said
24 defendant, was and is authorized to do and are doing business in the State of California, and that
25 said defendant has regularly conducted business in the State of California.

26 ///
27 ///
28 ///

**II.**

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

7.    Jurisdiction:  Plaintiff GILLIAN HENSLEY is a citizen of the State of Oregon. Plaintiff(s) BOBBY JOE HENSLEY, JR. and KIM HENSLEY are citizens of the following states, respectively: California and Texas.

Defendant is each corporation incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| AVCO CORPORATION | Rhode Island |

This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.    Venue / Intradistrict Assignment.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred within the County of San Francisco, California, and Defendant is subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF GILLIAN HENSLEY COMPLAINS OF DEFENDANT AVCO CORPORATION, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.    At all times herein mentioned, the named defendant was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of

1    or member in an entity researching, studying, manufacturing, fabricating, designing, modifying,
2    labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,
3    inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing,
4    endorsing servicing, installing, contracting for installation, repairing, marketing, warranting,
5    rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise
6    directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or
7    other products containing asbestos. The herein named defendant is liable for the tortious conduct
8    of each successor, successor in business, successor in product line or a portion thereof, assign,
9    predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-
10    venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it
11    was a member of, or funded, that researched, studied, manufactured, fabricated, designed,
12    modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,
13    inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,
14    rebranded, manufactured for others and advertised a certain product, namely asbestos, and other
15    products containing asbestos.

16    10.    At all times herein mentioned, defendant, was and is engaged in the business of
17    researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing,
18    leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing,
19    approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for
20    installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging,
21    specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or
22    advertising a certain product, namely asbestos and other products containing asbestos.

23    11.    At all times herein mentioned, defendant, singularly and jointly, negligently, and
24    carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test,
25    abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled,
26    distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized,
27    approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for
28    installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and

1  advertised, a certain product, namely asbestos, and other products containing asbestos, in that
2  said products caused personal injuries to users, consumers, workers, bystanders and others,
3  including the Decedent herein, (hereinafter collectively called "exposed persons"), while being
4  used in a manner that was reasonably foreseeable, thereby rendering said products hazardous,
5  unsafe, and dangerous for use by "exposed persons."

6      12.    Defendant, had a duty to exercise due care in the pursuance of the activities
7  mentioned above and defendant, and each of them, breached said duty of due care.

8      13.    Defendant, knew, or should have known, and intended that the aforementioned
9  asbestos and products containing asbestos and related products and equipment, would be
10  transported by truck, rail, ship, and other common carriers, that in the shipping process the
11  products would break, crumble, or be otherwise damaged; and/or that such products would be
12  used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft
13  and/or other applications, including, but not limited to unpacking, preparing, using, sawing,
14  drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting,
15  "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that
16  through such foreseeable use and/or handling "exposed persons," including Decedent herein,
17  would use or be in proximity to and exposed to said asbestos fibers, which contaminated the
18  packaging, products, environment, and clothing of persons working in proximity to said
19  products, directly or through reentrainment.

20      14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
21  containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
22  exposure to asbestos and asbestos-containing products is on current information as set forth at
23  various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
24  herein.

25      15.    As a direct and proximate result of the acts, omissions, and conduct of the
26  defendant, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products
27  caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in
28  **Exhibit A**, attached to plaintiffs' complaint and incorporated by reference herein.

1    16.    Plaintiffs are informed and believe, and thereon alleges, that progressive lung
2 disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
3 without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
4 asbestos and asbestos-containing products over a period of time.

5    17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-
6 containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-
7 containing products presented any risk of injury and/or disease.

8    18.    As a direct and proximate result of the aforesaid conduct of the defendant,
9 Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-
10 rays and other medical treatment, the true and exact amount thereof being unknown to plaintiffs
11 at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and
12 exact cost thereof is ascertained.

13    19.    As a direct and proximate result of the aforesaid conduct of the defendant,
14 Decedent incurred liability for the reasonable value of medial care provided by Decedent's family
15 members measured by, inter alia, the costs associated with the hiring a registered nurse, home
16 hospice, or other service provider, the true and exact amount thereof being unknown to plaintiffs
17 at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and
18 exact costs are known or at time of trial.

19    20.    As a direct and proximate result of the aforesaid conduct of defendant, Decedent
20 suffered permanent injuries to his person, body, and health, including, but not limited to,
21 asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional
22 distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all
23 to his general damage in the sums to be proven at trial.

24    21.    As a further direct and proximate result of the said conduct of the defendant,
25 Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a
26 diminishment of earning potential, and other pecuniary losses, the full nature and extent of which
27 are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to
28 proof at the time of trial.

1      22.    As a further direct and proximate result of the said conduct of the defendant,

2  Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent

3  injury to Decedent, and ultimately Decedent died on the date previously stated herein.

4      23.    Defendant, and their officers, directors and managing agents participated in,

5  authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of,

6  each of the acts set forth herein.

7      24.    Defendant, is liable for the fraudulent, oppressive, and malicious acts, and

8  defendant's officers, directors, and managing agents participated in, authorized, expressly and

9  impliedly ratified, and had full knowledge of, or should have known of, as set forth herein.

10     25.    The herein-described conduct of said defendant, was and is despicable, willful,

11 malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the

12 safety, health, and rights of "exposed persons," including Decedent herein, giving rise to

13 Decedent's claim herein alleged for punitive damages against said defendant.

14      WHEREFORE, plaintiffs pray judgment against defendant, as hereinafter set forth.

15                        SECOND CAUSE OF ACTION
                        (Products Liability - Survival)

16

17      PLAINTIFF GILLIAN HENSLEY AS SUCCESSOR-IN-INTEREST TO THE

18 DECEDENT BOBBY JOE HENSLEY COMPLAINS OF DEFENDANT AVCO

19 CORPORATION; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT

20 CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS

21 FOLLOWS:

22     26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

23 paragraph of the First Cause of Action herein.

24     27.    Defendant,, knew and intended that the above-referenced asbestos and asbestos-

25 containing products would be used by the purchaser or user without inspection for defects therein

26 or in any of their component parts and without knowledge of the hazards involved in such use.

27     28.    Said asbestos and asbestos-containing products were defective and unsafe for their

28 intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

1   and/or death. The defect existed in the said products at the time they left the possession of
2   defendant. Said products did, in fact, cause personal injuries, including asbestosis, other lung
3   damage, cancer, and death to "exposed persons," including Decedent herein, while being used in
4   a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for
5   use.

6      29.    "Exposed persons" did not know of the substantial danger of using said products.
7   Said dangers were not readily recognizable by "exposed persons." Said defendant, further failed
8   to adequately warn of the risks to which Decedent and others similarly situated were exposed.

9      30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
10   to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
11   sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,
12   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
13   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
14   and asbestos-containing products, defendant, did so with conscious disregard for the safety of
15   "exposed persons" who came in contact with said asbestos and asbestos-containing products, in
16   that said defendant, had prior knowledge that there was a substantial risk of injury or death
17   resulting from exposure to asbestos or asbestos-containing products, including, but not limited to,
18   asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from
19   scientific studies performed by, at the request of, or with the assistance of, said defendant, and
20   which knowledge was obtained by said defendant, on or before 1930, and thereafter.

21      31.    On or before 1930, and thereafter, said defendant,  was aware that members of the
22   general public and other "exposed persons," who would come in contact with their asbestos and
23   asbestos-containing products, had no knowledge or information indicating that asbestos or
24   asbestos-containing products could cause injury, and said defendant, knew that members of the
25   general public and other "exposed persons," who came in contact with asbestos and asbestos-
26   containing products, would assume, and in fact did assume, that exposure to asbestos and
27   asbestos-containing products was safe, when in fact said exposure was extremely hazardous to
28   health and human life.

1    32.    With said knowledge, said defendant, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendant, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendant, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33.    The above-referenced conduct of said defendant, was motivated by the financial interest of said defendant, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendant, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent.

34.    Plaintiffs allege that the aforementioned defendant, impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use, but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

1    35.    Plaintiffs relied upon defendant, and each of their representations, lack of

2    warnings, and implied warranties of fitness of asbestos and their asbestos-containing products.

3    As a direct, foreseeable, and proximate result thereof, Decedent suffered permanent injury and

4    death as alleged herein.

5    36.    As a direct and proximate result of the actions and conduct outlined herein,

6    Decedent have suffered the injuries and damages herein alleged.

7    WHEREFORE, plaintiffs pray judgment against defendant, as hereinafter set forth.

8    ## THIRD CAUSE OF ACTION
     (Negligence - Wrongful Death)

9

10    PLAINTIFF GILLIAN HENSLEY, AS WRONGFUL DEATH HEIR, AND AS

11    SUCCESSOR-IN-INTEREST TO BOBBY JOE HENSLEY DECEASED, AND PLAINTIFF(S)

12    BOBBY JOE HENSLEY, JR. and KIM HENSLEY AS LEGAL HEIRS OF DECEDENT,

13    COMPLAIN OF DEFENDANT AVCO CORPORATION; EACH FOR A THIRD, SEPARATE,

14    FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL

15    DEATH), COMPLAIN AS FOLLOWS:

16    37.    Plaintiffs incorporate by reference each paragraph contained within the First

17    Cause of Action as though fully set forth herein.

18    38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth

19    above.

20    39.    The individuals set forth as heirs constitute all of the surviving heirs of the

21    Decedent.

22    40.    As a direct and proximate result of the conduct of the defendant, as aforesaid, the

23    exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from

24    which condition Decedent died. Plaintiffs were unaware that the death caused by asbestos-

25    related disease until within one year of filing the complaint.

26    41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the

27    surviving spouse.

28    ///

1    42.    As a direct and proximate result of the conduct of defendant, and each of them,

2    and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

3    of care, society, comfort, attention, services, and support of Decedent all to the damage of

4    Decedent's heirs.

5    43.    As a further direct and proximate result of the conduct of defendant, and the death

6    of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not

7    ascertained.

8        WHEREFORE, plaintiffs pray judgment against defendant, as hereinafter set forth.

9                    FOURTH CAUSE OF ACTION
                    (Products Liability - Wrongful Death)
10

11        PLAINTIFF GILLIAN HENSLEY, AS WRONGFUL DEATH HEIR, AND AS

12    SUCCESSOR-IN-INTEREST TO BOBBY JOE HENSLEY DECEASED, AND PLAINTIFF(S)

13    BOBBY JOE HENSLEY, JR. and KIM HENSLEY AS LEGAL HEIRS OF DECEDENT,

14    COMPLAIN OF DEFENDANT AVCO CORPORATION; EACH FOR A FOURTH,

15    SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

16    LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

17    44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

18    paragraph of the First, Second and Third Causes of Action herein.

19    45.    As a direct and proximate result of the conduct of defendant, Decedent's heirs

20    have sustained the injuries and damages previously alleged.

21        WHEREFORE, plaintiffs pray judgment against defendant, as hereinafter set forth.

22                            IV.

23                    DAMAGES AND PRAYER

24        WHEREFORE, plaintiffs pray judgment against defendant, in an amount to be proved at

25    trial in each individual case, as follows:

26    (a)    For plaintiffs' general damages according to proof;

27    (b)    For plaintiffs' loss of income, wages and earning potential according to proof;

28    (c)    For plaintiffs' medical and related expenses according to proof;

K:\ln\ured\106923\FED\PLD\cmp fed (wd).wpd                11
                    COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1    (d)    For plaintiffs' cost of suit herein;

2    (e)    For exemplary or punitive damages according to proof;

3    (f)    For damages for fraud according to proof; and

4    (g)    For such other and further relief as the Court may deem just and proper, including

5    costs and prejudgment interest.

6    Dated: _____                    BRAYTON❖PURCELL LLP

7

8                                                 By: _____
                                                     David R. Donadio
9                                                    Attorneys for Plaintiffs

10

11

12                                   JURY DEMAND

13    Plaintiffs hereby demand trial by jury of all issues of this cause.

14

15    Dated: _____                    BRAYTON❖PURCELL LLP

16

17                                                 By: _____
                                                     David R. Donadio
18                                                   Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1    EXHIBIT A

2  <u>Decedent</u>: BOBBY JOE HENSLEY, Deceased.

3

4  <u>Decedent's injuries</u>: Decedent's exposure to asbestos and asbestos-containing products caused

5  severe and permanent injury to the decedent, including, but not limited to breathing difficulties

6  and/or other lung damage. Decedent was diagnosed with lung cancer on or about March 2007,

7  asbestosis on or about February 2007 and asbestos-related pleural disease on or about November

8  2007.

9

10  Decedent died on December 7, 2009.

11

12  <u>Retirement Status</u>: The Injured Party retired from his last place of employment as a result of

13  becoming disabled due to an illness not related to asbestos. He has therefore suffered no

14  disability from his asbestos-related disease as "disability" is defined in California Code of Civil

15  Procedure § 340.2.

16

17  <u>Defendant</u>: Plaintiffs contend that the asbestos-containing products to which Decedent was or

18  may have been exposed to were manufactured, supplied, distributed, installed and/or contracted

19  for by defendant. Decedent's exposure to asbestos occurred at the following times and places,

20  and involved exposure to dust created by the contractors and the products of the entities listed

21  below. The exposure includes, but is not limited, to the following presently known contractors

22  and the manufacturers and distributors of asbestos-containing products:

23

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Gletis Yule Hensley, Owensville, IN | Owensville High School, Owensville, IN | Laborer | 1940's |

24

25

26  Job Duties: Decedent worked in the boiler room with his father, Gletis Yule Hensley, deceased,
   tearing off old asbestos insulation and replacing it with new asbestos-containing pipe insulation.
27  Decedent cut and removed the old asbestos-containing pipe insulation, cleaned and repaired the
   pipelines and applied new asbestos-containing pipe insulation. Decedent recalled the room
28  filling with dust during removal of the pipe insulation. Plaintiff currently contends decedent was
   exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Gletis Yule Hensley, Owensville, IN | Various residential and commercial sites in the Owensville, IN area | Laborer | 1940's |

Job Duties: Decedent worked for his father repairing roofs damaged by tornados. Decedent tore off and removed old asphalt shingles. Decedent tarred and roofed homes and commercial buildings. Decedent cut and installed new asbestos composition asphalt shingles. Decedent recalled his father bought the shingles from Owensville Lumber Yard, Owensville, Indiana. Decedent recalled rebuilding two 75 foot grain silos. Decedent recalls the silos were concrete construction. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Lafe P. Mauch Owensville Lumber & Supply Co., Owensville, IN | Owensville Lumber & Supply Co., Owensville, IN | Laborer | 04/1948-03/1949 |
| Owensville Lumber & Supply, Owensville, IN | Owensville Lumber & Supply, Owensville, IN | Laborer | 07/1949-09/1949; 04/1950-09/1950 |

Job Duties: Decedent worked in a lumber yard unloading box cars and delivering lumber. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Johnson Melon Growers, Inc., Owensville, IN | Johnson Melon Growers, Inc., Owensville, IN | Laborer | 07/1948-09/1948 |

Job Duties: Decedent worked in the fields and drove a truck. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Dwayne T. Yeager Marathon Service Garage Owensville, IN | Marathon Service Garage Owensville, IN | Service Station Attendant | 01/1950-12/1950 |

Job Duties: Decedent pumped gas, washed windshields, and swept up the garage. Decedent assisted with brake jobs and learned how to change brakes during this employment. Decedent recalled using compressed air to blow out brakes, and wiped the assembly. Decedent performed work on all makes and models of domestic vehicles. Decedent worked with asbestos-containing BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brakes. Decedent swept and cleaned asbestos-containing dust and debris from the garage. Plaintiff currently contends decedent was exposed to asbestos during this employment.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| T & L Construction Company Centralia, IN | Unknown | Unknown | 04/1950-06/1950 |

Job Duties:  Plaintiff does not currently recall the specifics of decedent's employment.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Polk Genung Polk Co. Fort Branch, IN | Machine Shop, Fort Branch, IN | Welder | 07/1950-09/1950 |

Job Duties:   Plaintiff assisted his father with welding and riveting tanks and boilers.  Plaintiff used lathes, drill presses, and grinders to make rivets.  Plaintiff used a pneumatic gun and sledge hammer to punch rivets.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Jack Beiter Lancaster, OH | Jack Beiter Lancaster, OH | Laborer | Off and on from the late-1940s through the mid-1950s |

Job Duties: Decedent performed maintenance and repair to a generator and conveyor motors.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| United States Air Force | US Air Force, Sheppard Air Force Base Wichita Falls, TX | Trainee | 1/14/51-3/15/51 |
| | New Mexico Highlands University, Las Vegas, NM | Aircraft Mechanic | 3/16/51-7/07/51 |

Job Duties:  Decedent completed basic training at Sheppard Air Force Base, Wichita Falls, Texas.  Decedent attended Aircraft and Engine (A&E) School at Highland University, in Las Vegas, New Mexico.  Decedent learned various aspects of reciprocating engine maintenance and worked with engine components including props, hydraulics, pumps, tubes, valves, fittings, electrical, exhaust lines, carburetors, manifolds, gaskets and auxiliary equipment.  Decedent worked on LYCOMING (AVCO CORPORATION) in-line engines, CURTISS WRIGHT (CURTISS-WRIGHT CORPORATION) engines, PRATT & WHITNEY (UNITED TECHNOLOGIES CORPORATION) 930 series engines, and 1835 series engines.  Decedent also worked on radial helicopter engines.  Decedent recalled the engines were set up in separate rooms throughout a building on the campus.  Decedent recalled removing a cloth type material from the exhaust lines and manifold on the engines.
    Decedent completed basic training with the following:  Joe Crowe, address unknown; Don White, address unknown; Kenny Sharp, address unknown; Frank Garrett, address unknown,

1   and  Bob Redman, address unknown.  Plaintiff currently contends decedent was exposed to
2   asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| United States Air Force | US Air Force, Chanute AFB, Rantoul, IL | Aircraft Mechanic | 7/08/51-9/19/51 |
| | US Air Force, Lockbourne AFB, Columbus, OH | Aircraft Mechanic | 3/19/52 |
| | US Air Force, RAF Schulthorp AFB England, UK | Aircraft Mechanic | 3/20/52 -5/07/52 |
| | US Air Force, Lockbourne AFB, Columbus, OH | Aircraft Mechanic | 4/05/52- 5/08/52 |
| | US Air Force, Lockbourne AFB, Columbus, OH | Aircraft Mechanic | 5/13/54 - 10/11/54 |
| | US Air Force, RAF Mildenhall, AFB England, UK | Aircraft Mechanic | 4/06/54- 5/12/54 |
| | US Air Force, RAF Lakenheath AFB England, UK | Aircraft Mechanic | 1952-1955 |
| | US Air Force, Goose AFB, Labrador, Canada | Aircraft Mechanic | 10/11/54 - 11/12/54 |
| | US Air Force, Lockbourne AFB, Columbus, OH | Aircraft Mechanic | 11/12/54 - 01/08/1955 |

Job Duties:  Decedent was sent to Chanute Air Force Base, where he was assigned to the 91st Air
Refueling Squadron. Decedent was assigned as crew chief on a KB-29P Superfortress (THE
BOEING COMPANY). The KB-29P was a B-29 bomber converted to a tanker for air refueling.
Decedent went through training at Chanute to learn maintenance specific to the CURTISS-
WRIGHT (CURTISS-WRIGHT CORPORATION) 3350 series engines onboard this aircraft.
    Decedent's unit was then assigned to Lockbourne Air Force Base, Columbus, Ohio.
Decedent was responsible for the maintenance of the entire aircraft. Decedent's unit traveled to
England, and was stationed at Schulthorp Air Force Base and Lakenheath Air Force Base.
Decedent recalled the unit was re-assigned to KC-97's in approximately 1953.
    Decedent returned to Chanute to train for maintenance of PRATT & WHITNEY
(UNITED TECHNOLOGIES CORPORATION) 4360 Engines used on the KC-97 (THE
BOEING COMPANY). Decedent recalled the KC-97 had four PRATT & WHITNEY (UNITED
TECHNOLOGIES CORPORATION) 4360 Engines.  Decedent was responsible for all of the
maintenance to this aircraft.
    Decedent checked and changed tires, started the engines, refueled the aircraft, and
removed the cowlings. Decedent performed engine repair work. Decedent removed and changed
cylinders, scraped and removed existing gaskets, changed engines, plugs, filters, exhaust systems,
and the step-up transformers. Decedent removed the cowling from the engine.  Decedent used an
air compressor to blow asbestos-containing dust from the brakes.  Decedent unbolted

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

transformers, replaced electrical lighting, and cut and removed existing asbestos-insulated electrical wiring. Decedent worked as a supervisor and oversaw aircraft repair and maintenance. Decedent worked alongside aircraft mechanics performing engine work. Decedent performed pre-flight and post-flight inspection.

Decedent recalled the following crew members: Joe Crowe, Owensville, Indiana; Robert Redman, address unknown; Don White, address unknown; Captain Helley, deceased; Colonel Hovick, address unknown; first name unknown, last name Dorsey, Roseburg, Ohio; Lonnie Eubanks, Louisiana; Mr. Rosenbaughm, address currently unknown; Bob Haynes, Texas. Plaintiff currently contends decedent was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Associated Machines Inc. Lancaster, OH | Plastic Factory, Lancaster, OH | Inspector | 01/1955-03/1955 |

Job Duties: Decedent recalled inspecting ignition and distributor housing components. Decedent worked with asbestos-containing Bakelite (UNION CARBIDE CORPORATION). Decedent used a knife to scrape excess Bakelite (UNION CARBIDE CORPORATION) off of the distributor caps after they came out of an oven. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| BFS American Tire LLC Firestone, Nasvhille, TN | Firestone Tire & Rubber, Lancaster, OH | Mechanic | 04/1955-09/1955 |

Job Duties: Decedent changed tires and wheels for large trucks. Decedent recalled blowing asbestos-containing dust out of the brake drums using an air compressor, while the wheels were off. Decedent removed the brake drum, inspected the lining, and sanded the lining as necessary. Decedent observed and performed brake work on domestic cars and pickups, large tractors and farm equipment. Decedent worked with BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Joseph Martin Martin Engineering Co. Fort Branch, IN | Unknown | Unknown | 10/1955-03/1956 |

Job Duties: Plaintiff does not currently recall the specifics of decedent's employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Potter & Brumfield MFG Co. Inc. Princeton, IN | Potter & Brumfield, Princeton, IN | Laborer | 04/1956-06/1956 |

Job Duties: Decedent worked in a factory where electrical components were manufactured. Decedent worked with asbestos-containing Bakelite (UNION CARBIDE CORPORATION). Decedent adjusted multiple breaker points encased in and attached to Bakelite (UNION

CARBIDE CORPORATION). Decedent recalled the following co-worker: brother, Roy Hensley. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Rolland & Ralph Nauman Nauman Out Advertising Centralia, IN | Lancaster, OH | Laborer | 07/1956-09/1956 |

Job Duties: Decedent removed and installed advertisement signs on billboards in Lancaster, Ohio. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Rohr Corporation, Chula Vista, CA | Rohr Corporation, Chula Vista, CA | Inspector | 07/1956-06/1957 |

Job Duties: Decedent inspected motor aircraft mounts for flaws using a process called magnafluxing. Decedent worked in close proximity to workers who were assembling the motor mounts Plaintiff recalls Gene Garrett, deceased. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Rainbow Tavern Fort Branch, IN | Rainbow Tavern Fort Branch, IN | Bartender | 10/1956-03/1957 |

Job Duties: Decedent was employed as a bartender. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Ruth B. Posladek TA Ruth's Bonnie Bell Café, San Diego, CA | Bonnie Bell Café, San Diego, CA | Unknown | 07/1957-09/1957 |

Job Duties: Plaintiff does not currently recall the specifics of decedent's employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| General Dynamics-Convair, San Diego, CA | General Dynamics-Convair, San Diego, CA | Inspector | 07/1957-1965 |

Job Duties: Decedent inspected all aspects of the Atlas Missile 1A. Decedent started out inspecting small components and seam and spot welds. Decedent later inspected the tanks and nose cones at a high pressure test center. Decedent recalled the components for the missile, including the nose cone, were subcontracted out, and assembled at Convair. Decedent recalled opening the nose cone to gain access to the main relief valve. Decedent leak tested the hydrogen, helium and oxygen spheres above the engine compartment. Decedent was the welding inspector who certified welders working on the Atlas 1A project. Decedent used asbestos gloves when

1  certifying welders. Decedent inspected heliarc welded fuel ducts. Decedent also inspected the
   launcher and transport trailer. Decedent was in close proximity to work on the nose and exit
2  cones. Decedent observed the replacement of relief valves on the nose cone. Decedent cleaned
   the interior of the missile of all dust and debris. Decedent was in close proximity when several
3  exit cones were broken, creating dust and debris. Decedent worked in close proximity to outside
   contractors. Decedent disturbed existing asbestos-containing pipe insulation. Decedent observed
4  constant repair to insulated piping systems. Decedent recalled the following co-workers: Ray
   Milsap, address unknown; Whitey Kime, address unknown; Richard Williams, address unknown;
5  Roy Hensley, Verlyn Prestage, San Diego, California; Bill Wade, last known address
   Lakeside/Santee, San Diego; Carl Huffacre, address unknown; Joe Balesteras, address unknown;
6  Mr. Brady, address unknown; George Comfort, address unknown; Eddie Beourgois, address
   unknown; and Moe Worthington, address unknown. Plaintiff currently contends decedent was
7  exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Self-Employed | Various residential and commercial sites, San Diego, CA | Painter | 1960-1965 (approximately) |

Job Duties: Decedent painted the interiors and exteriors of buildings during remodel jobs.
Decedent occasionally had to use spackle to patch nail holes and cracks in walls before painting.
Decedent smoothed walls and joints with sand paper before painting. Decedent worked with
Verlyn Prestage, San Diego, California. Plaintiff currently contends decedent was exposed to
asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Maxwell Bridge Building Contractors, San Diego, CA | Maxwell Bridge Building Contractors, San Diego, CA | Laborer | 1965-1969 |

Job Duties: Decedent cured concrete poured for freeway bridges, and culverts. Plaintiff is
currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Daley Construction, San Diego, CA | Various highway construction projects in San Diego, CA | Laborer | 1966-1977 |

Job Duties: Decedent poured concrete and laid asphalt for freeway bridges, and culverts.
Decedent observed the addition of UNION CARBIDE (UNION CARBIDE) Calidria raw
asbestos fiber to concrete prior to pumping it. Decedent worked with common cement mixed
with UNION CARBIDE Calidria raw asbestos. Decedent was covered in concrete debris and
dust at the end of each day.
    Daley had its own mechanical shop where maintenance and repair work was performed
on Daley's trucks, including brake, clutch, and engine work. Decedent was routinely in this
shop, overseeing and assisting with brake replacement, clutch replacement, muffler replacement
and engine repair work. Decedent observed maintenance and repair to KENWORTH (PACCAR
INC.), and PETERBILT (PACCAR INC.) trucks in the shop. These trucks were purchased new
from ALESSIO MOTORS, Chula Vista, California. Decedent recalled new PETERBILT
(PACCAR INC.) trucks were also purchased from Tommy Houser, San Diego, California.

K:\Injured\106923\FED\PLD\cmp fed (wd).wpd

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1    Decedent worked with his son Bobby Joe Hensley, Jr, San Diego, California; Leroy
Candler c/o Brayton✦Purcell LLP; Errol Marshall, superintendent, Arkansas; Dale Higdon, San
2  Diego, California; Dan Jellison, La Mesa, California; Gene Browning, address currently
unknown; John Nelson, El Cajon, California; Gene Brokaw, Rancho Bernardo, California; Bill
3  Vadlee, address currently unknown; Mitch Davison, address currently unknown. Decedent
recalled the following truck drivers: John Ame, address unknown; Don Daly Sr., deceased;
4  Tommy Lovell, deceased, and Tony Beliz, San Diego, California. Plaintiff currently contends
decedent was exposed to asbestos during this employment.

5

6  NON-OCCUPATIONAL EXPOSURE:

7  Decedent owned several automobiles throughout his lifetime. Decedent performed all of the
maintenance on these vehicles, including brake, clutch and gasket replacement. Decedent
8  performed work on the following vehicles:

9  1940 PLYMOUTH (DAIMLERCHRYSLER CORPORATION). Decedent bought this vehicle
used in 1953 in Lancaster, Ohio. Decedent replaced the brakes and clutch and overhauled the
10  engine. Decedent replaced the engine and exhaust gaskets, and replaced the muffler and tail
pipe. Decedent scraped old asbestos-containing gasket material from the engine head with a
11  scraper. Decedent removed the original muffler, exhaust system and head gaskets. Decedent
knew it was the original manufacturer's equipment gaskets because of the low mileage on the
12  vehicle when he purchased it.   Decedent filed and sanded new asbestos-containing BENDIX
(HONEYWELL INTERNATIONAL, INC.) brake shoes with sand paper.

13

14  1947 Pontiac: Decedent purchased this vehicle used around 1955-1956.  Decedent performed
engine gasket and exhaust work, removing and replacing asbestos-containing gaskets.

15  1953 Six-Cylinder CHEVROLET (GENERAL MOTORS CORPORATION):  Decedent bought
this car used in the late 1950's from an unknown dealership in San Diego, California. Decedent
16  replaced the original manufacturer's equipment brakes and clutch and overhauled the engine.
Decedent installed new asbestos-containing engine and exhaust gaskets. Decedent scraped old
17  asbestos-containing gasket material from the engine head with a scraper.  Decedent filed and
sanded new asbestos-containing BENDIX (HONEYWELL INTERNATIONAL, INC.) brake
18  shoes with sand paper.  Decedent knew he removed the original manufacturer's equipment
brakes and gaskets because of the low mileage on the vehicle when he purchased it.

19

20  1953 FORD Pick Up (FORD MOTOR COMPANY).  Decedent bought this car used in the early
1960's.  Decedent replaced the brakes and clutch and overhauled the engine.  Decedent replaced
21  the engine and exhaust gaskets.  Decedent scraped old asbestos-containing gasket material from
the engine head with a scraper.  Decedent hand sanded new asbestos-containing brake shoes with
22  sand paper.

23  1958 Eight Cylinder CHEVROLET Convertible (GENERAL MOTORS CORPORATION):
Decedent purchased this vehicle used in 1961, with low mileage, from his brother-in-law, Dunil
24  Henry, San Diego, California, who worked at Drew Ford, San Diego, California.  Decedent
replaced the original equipment manufacturer's muffler and brakes.  Decedent cut and removed
the original manufacturer's equipment muffler.

25

26  1967 FORD (FORD MOTOR COMPANY) pickup: Decedent purchased this vehicle used from
Drew Ford (FORD MOTOR COMPANY), San Deigo, California.   Decedent replaced the
27  original exhaust system with one purchased from the FORD (FORD MOTOR COMPANY)
dealership.  Decedent removed and replaced asbestos-containing gaskets.

28  1968 INTERNATIONAL (NAVISTAR, INC.) Scout: Decedent purchased this used in 1978 or
1979 from Lloyd Eide, of Audi & Volkswagen Dealership, Bozeman, Montana.  Decedent

1   removed the original fuel pump and the original manufacturer's exhaust system and asbestos-
2   containing gaskets.

    1964 FORD (FORD MOTOR COMPANY) Mustang: Decedent purchased this vehicle used in
3   1966 or 1967, with low mileage. Decedent purchased this vehicle from his brother-in-law, Dunil
    Henry, San Diego, California, at Drew Ford, San Diego, California. Decedent removed the
4   original manufacturer's equipment brakes and installed new asbestos-containing BENDIX
    (HONEYWELL INTERNATIONAL, INC.) brakes. Decedent hand sanded the replacement
5   brakes before installing them. Decedent knew he removed the original manufacturer's
    equipment brakes because of the low mileage.
6
    1974 4-door FORD LTD. (FORD MOTOR COMPANY): Decedent purchased this vehicle used
7   in 1975 or 1976 with low mileage. Decedent replaced the original manufacturer's equipment
    muffler. Decedent knew he removed the original manufacturer's equipment muffler because of
8   the low mileage.

9   1983 HOLIDAY RAMBLER: Decedent purchased this new at Rangish Brothers, Mizzoula,
    Montana. Decedent replaced the electric/magnetic brakes on this vehicle on several occasions.
10  Decedent removed the original manufacturer's equipment brake pads. Decedent purchased
    replacement parts, including asbestos-containing replacement brakes from Bozeman RV,
11  Bozeman, Montana.

12  Plaintiff currently contends decedent was exposed to asbestos during these automotive repairs.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28