ADRMOP, E-Filing

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:10-cv-05096-CW

Gottschall et al v. General Electric Company et al
Assigned to: Hon. Claudia Wilken
Demand: $0
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 11/10/2010
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

#### Plaintiff

**Kimbra Gottschall**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Robert*
*Gottschall, Deceased*

represented by **David R. Donadio**
Brayton Purcell LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
(415) 898-1555
Fax: (415) 898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
(415) 898-1555
Fax: (415) 898-1247
*ATTORNEY TO BE NOTICED*

#### Plaintiff

**Debra Gaball**

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

#### Plaintiff

**Raymond Gottschall**

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert W. Gottschall**          represented by  **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald Gottschall**          represented by  **David R. Donadio**
*as Legal Heirs of Robert Gottschall,*                   (See above for address)
*Deceased*                                 *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Northrop Grumman Shipbuilding, Inc.**

**Defendant**

**Viad Corp.**

**Defendant**

**Unisys Corporation**

**Defendant**

**General Dynamics Corporation**

**Defendant**

**Todd Shipyards Corporation**

| Date Filed | # | Docket Text |
|------------|---|-------------|

| 11/18/2010 | 9 | CASE MANAGEMENT SCHEDULING ORDER FOR REASSIGNED CIVIL CASE: Case Management Statement due by 2/15/2011. Case Management Conference set for 2/22/2011 02:00 PM. Signed by Judge Claudia Wilken on 11/18/2010. (ndr, COURT STAFF) (Filed on 11/18/2010) (Entered: 11/18/2010) |
|---|---|---|
| 11/17/2010 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Claudia Wilken for all further proceedings. Judge Magistrate Judge Elizabeth D. Laporte no longer assigned to the case.. Signed by Executive Committee on 11/17/10. (as, COURT STAFF) (Filed on 11/17/2010) (Entered: 11/17/2010) |
| 11/16/2010 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (lmh, COURT STAFF) (Filed on 11/16/2010) (Entered: 11/16/2010) |
| 11/10/2010 | | CASE DESIGNATED for Electronic Filing. (tn, COURT STAFF) (Entered: 11/12/2010) |
| 11/10/2010 | 6 | Declination to Proceed Before a United States Magistrate Judge & Request for Reassignment to a United States District Court Judge filed by Debra Gaball, Kimbra Gottschall, Raymond Gottschall, Robert W. Gottschall & Ronald Gottschall.(tn, COURT STAFF) (Filed on 11/10/2010) (Entered: 11/12/2010) |
| 11/10/2010 | 5 | NOTICE of Tag-Along Action filed by Debra Gaball, Kimbra Gottschall, Raymond Gottschall, Robert W. Gottschall & Ronald Gottschall. (tn, COURT STAFF) (Filed on 11/10/2010) (mjj2, COURT STAFF). (Entered: 11/12/2010) |
| 11/10/2010 | 4 | Certification of Interested Entities or Persons filed by Debra Gaball, Kimbra Gottschall, Raymond Gottschall, Robert W. Gottschall & Ronald Gottschall.(tn, COURT STAFF) (Filed on 11/10/2010) (mjj2, COURT STAFF). (Entered: 11/12/2010) |
| 11/10/2010 | 3 | ADR SCHEDULING ORDER: Joint Case Management Statement due 2/15/2011 & InitialCase Management Conference set for 2/22/2011 at 10:00 AM.. (tn, COURT STAFF) (Filed on 11/10/2010) (Entered: 11/12/2010) |
| 11/10/2010 | 2 | SUMMONS Issued as to Defendants General Dynamics Corporation, General Electric Company, Northrop Grumman Shipbuilding, Inc., Todd Shipyards Corporation, Unisys Corporation & Viad Corp.. (tn, COURT STAFF) (Filed on 11/10/2010) (mjj2, COURT STAFF). (Entered: 11/12/2010) |
| 11/10/2010 | 1 | COMPLAINT for Survival, Wrongful Death - Asbestos; Demand for Jury Trial - [Summons Issued] against General Dynamics Corporation, General Electric Company, Northrop Grumman Shipbuilding, Inc., Todd Shipyards Corporation, Unisys Corporation & Viad Corp., [Filing Fee: $350.00, Receipt Number 34611052787] Filed by Plaintiffs Raymond Gottschall, Debra Gaball, Kimbra Gottschall, Robert W. Gottschall & Ronald Gottschall. (tn, COURT STAFF) (Filed on 11/10/2010) (Additional attachment(s) added on 11/18/2010: # 1 Civil Cover Sheet) (mjj2, COURT STAFF). (Entered: 11/12/2010) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |

| 12/13/2010 13:08:38 | | | |
|---|---|---|---|
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:10-cv-05096-CW |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11  KIMBRA GOTTSCHALL, as Wrongful        )   CV10        5096
    Death Heir, and as Successor-in-Interest to  )
12  ROBERT GOTTSCHALL, Deceased, and      )
    DEBRA GABALL, RAYMOND                 )
13  GOTTSCHALL, ROBERT W.                 )   COMPLAINT FOR SURVIVAL,
    GOTTSCHALL, RONALD                    )   WRONGFUL DEATH - ASBESTOS;
14  GOTTSCHALL, as Legal Heirs of         )   DEMAND FOR JURY TRIAL
    ROBERT GOTTSCHALL, Deceased,          )
15                                        )
                 Plaintiffs,              )
16                                        )
    vs.                                   )
17                                        )
    GENERAL ELECTRIC COMPANY,             )
18  NORTHROP GRUMMAN                      )
    SHIPBUILDING, INC., VIAD CORP.,       )
19  UNISYS CORPORATION, GENERAL           )
    DYNAMICS CORPORATION, TODD            )
20  SHIPYARDS CORPORATION,                )
                                          )
21               Defendants.              )

22

23                      I.

24                    PARTIES

25       1.       Plaintiffs in this action are the above-captioned successor-in-interest to, or the

26  personal representative of the estate of Decedent; and the personal representatives on behalf of

27  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

28  "Plaintiffs."

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1     2.     The person who sustained asbestos-related lung injuries and death as a result of

2 their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

3 hereinafter "Decedent" is, with the date of death: ROBERT GOTTSCHALL died April 14, 2010.

4 KIMBRA GOTTSCHALL is the spouse of ROBERT GOTTSCHALL and is hereinafter referred

5 to as "surviving spouse."

6     3.     Decedent sustained an asbestos-related lung disease and death by precisely the

7 following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

8 containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related

9 diseases is explained on **Exhibit A**, attached to plaintiffs' complaint and incorporated by

10 reference herein.

11     4.     All of plaintiffs' claims arise out of a similar series of occurrences: repeated

12 exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

13 and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period

14 of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,

15 resulting in cumulative, progressive, incurable lung diseases.

16     5.     Each plaintiff claims damages for an asbestos-related disease arising from an

17 identical series of occurrences not dependent on Decedent's worksite but on the fact that

18 asbestos-containing products, when handled in the manner in which they were intended, released

19 harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The

20 allegations of plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature

21 of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are

22 all identical.

23     6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein

24 mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

25 proprietorships and/or other business entities organized and existing under and by virtue of the

26 laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

27 said defendants, and each of them, were and are authorized to do and are doing business in the

28 ///

1 State of California, and that said defendants have regularly conducted business in the State of
2 California.

## II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

5     7.     Jurisdiction: Plaintiff KIMBRA GOTTSCHALL is a citizen of the State of
6 California. Plaintiff(s) DEBRA GABALL, RAYMOND GOTTSCHALL, ROBERT W.
7 GOTTSCHALL, RONALD GOTTSCHALL are citizens of the following states, respectively:
8 California, California, Montana, California.

9     Defendants are each corporations incorporated under the laws of and having its principal
10 places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | Connecticut |
| NORTHROP GRUMMAN SHIPBUILDING, INC. | Virginia |
| VIAD CORP. | Arizona |
| UNISYS CORPORATION | Pennsylvania |
| GENERAL DYNAMICS CORPORATION | Virginia |
| TODD SHIPYARDS CORPORATION | Washington |

18     This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action
19 between citizens of different states in which the matter in controversy exceeds, exclusive of costs
20 and interest, seventy-five thousand dollars.

21     8.     Venue / Intradistrict Assignment. Venue is proper in the Northern District of
22 California and assignment to the San Francisco Division of said district is proper as a substantial
23 part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred
24 within the County of San Francisco, California, and Defendants are subject to personal
25 jurisdiction in this district at the time the action is commenced.

26 ///
27 ///
28 ///

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF KIMBRA GOTTSCHALL COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, NORTHROP GRUMMAN SHIPBUILDING, INC., VIAD CORP., UNISYS CORPORATION, GENERAL DYNAMICS CORPORATION, TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.     At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

1  products containing asbestos. The following defendants, and each of them, are liable for the acts

2  of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

3  destruction of plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each

4  of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

5  ENTITY; defendants, and each of them, caused the destruction of plaintiffs' remedy against each

6  such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

7  role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

8  originally attached to each such ALTERNATE ENTITY:

9  | DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
|  | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
|  | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
|  | G E INDUSTRIAL SYSTEMS |
|  | CURTIS TURBINES |
|  | PARSONS TURBINES |
|  | GENERAL ELECTRIC JET ENGINES |
| NORTHROP GRUMMAN SHIPBUILDING, INC. | AVONDALE INDUSTRIES, INC. |
|  | AVONDALE SHIPYARDS, INC. |
|  | INGALLS SHIPBUILDING, INC. |
|  | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
|  | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
|  | NORTH CAROLINA SHIPBUILDING |
| VIAD CORP. | ARMOUR AND COMPANY |
|  | ARMOUR & CO. |
|  | ARMOUR & COMPANY |
|  | THE GREYHOUND CORPORATION |
|  | G. ARMOUR ARIZONA COMPANY |
|  | ARIZONA DIAL |
|  | 111 CORPORATION |
|  | BALDWIN LOCOMOTIVES |
|  | BALDWIN LOCOMOTIVE WORKS |
|  | LIMA-HAMILTON CORPORATION |
|  | LIMA LOCOMOTIVE WORKS |
|  | BALDWIN-LIMA-HAMILTON CORPORATION |
|  | BALDWIN-LESSING-HAMILTON |
|  | THE MIDVALE COMPANY |
|  | THE DIAL CORPORATION |
|  | THE NEW DIAL CORP. |
|  | ALSTOM POWER, INC. |
|  | ECOLAIRE HEAT TRANSFER, INC, HEAT EXCHANGE DIVISION |
|  | ALSTOM HEAT EXCHANGE DIVISION |
|  | GRISCOM-RUSSELL (product) |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| UNISYS CORPORATION | SPERRY RAND CORPORATION<br>SPERRY CORPORATION<br>SPERRY GYROSCOPE CORPORATION<br>MEMOREX CORPORATION |
| GENERAL DYNAMICS CORPORATION | CONVAIR<br>VULTEE AIRCRAFT INC.<br>CONSOLIDATED VULTEE AIRCRAFT CORPORATION<br>ASBESTOS CORPORATION LIMITED |
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION<br>SEATTLE-TACOMA SHIPBUILDING CORP. |

10. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

1    12.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
2  exercise due care in the pursuance of the activities mentioned above and defendants, and each of
3  them, breached said duty of due care.

4    13.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
5  have known, and intended that the aforementioned asbestos and products containing asbestos and
6  related products and equipment, would be transported by truck, rail, ship, and other common
7  carriers, that in the shipping process the products would break, crumble, or be otherwise
8  damaged; and/or that such products would be used for insulation, construction, plastering,
9  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
10 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
11 breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the
12 release of airborne asbestos fibers, and that through such foreseeable use and/or handling
13 "exposed persons," including Decedent herein, would use or be in proximity to and exposed to
14 said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
15 persons working in proximity to said products, directly or through reentrainment.

16    14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
17 containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
18 exposure to asbestos and asbestos-containing products is on current information as set forth at
19 various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
20 herein.

21    15.    As a direct and proximate result of the acts, omissions, and conduct of the
22 defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure
23 to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,
24 or harm to the Decedent as set forth in **Exhibit A**, attached to plaintiffs' complaint and
25 incorporated by reference herein.

26    16.    Plaintiffs are informed and believe, and thereon allege, that progressive lung
27 disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
28 ///

1 without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
2 asbestos and asbestos-containing products over a period of time.

3    17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-
4 containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-
5 containing products presented any risk of injury and/or disease.

6    18.    As a direct and proximate result of the aforesaid conduct of the defendants, their
7 "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,
8 nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact
9 amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this
10 complaint accordingly when the true and exact cost thereof is ascertained.

11    19.    As a direct and proximate result of the aforesaid conduct of the defendants, their
12 ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value
13 of medial care provided by Decedent's family members measured by, inter alia, the costs
14 associated with the hiring a registered nurse, home hospice, or other service provider, the true
15 and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to
16 amend this complaint accordingly when the true and exact costs are known or at time of trial.

17    20.    As a direct and proximate result of the aforesaid conduct of defendants, their
18 ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person,
19 body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and
20 related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,
21 from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven
22 at trial.

23    21.    As a further direct and proximate result of the said conduct of the defendants,
24 their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,
25 entitlements, wages, profits, and commissions, a diminishment of earning potential, and other
26 pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is
27 requested to amend this complaint to conform to proof at the time of trial.

28 ///

22. As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24. Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

25. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive damages against said defendants.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
(Products Liability - Survival)

PLAINTIFF KIMBRA GOTTSCHALL AS SUCCESSOR-IN-INTEREST TO THE DECEDENT ROBERT GOTTSCHALL COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, NORTHROP GRUMMAN SHIPBUILDING, INC., VIAD CORP., UNISYS CORPORATION, GENERAL DYNAMICS CORPORATION, TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

1    26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each
2    paragraph of the First Cause of Action herein.

3    27.    Defendants, their "alternate entities," and each of them, knew and intended that
4    the above-referenced asbestos and asbestos-containing products would be used by the purchaser
5    or user without inspection for defects therein or in any of their component parts and without
6    knowledge of the hazards involved in such use.

7    28.    Said asbestos and asbestos-containing products were defective and unsafe for their
8    intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
9    and/or death. The defect existed in the said products at the time they left the possession of
10   defendants, their ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause
11   personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
12   persons," including Decedent herein, while being used in a reasonably foreseeable manner,
13   thereby rendering the same defective, unsafe, and dangerous for use.

14   29.    "Exposed persons" did not know of the substantial danger of using said products.
15   Said dangers were not readily recognizable by "exposed persons." Said defendants, their
16   ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
17   which Decedent and others similarly situated were exposed.

18   30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
19   to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
20   sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,
21   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
22   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
23   and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
24   did so with conscious disregard for the safety of "exposed persons" who came in contact with
25   said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
26   ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
27   death resulting from exposure to asbestos or asbestos-containing products, including, but not
28   limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part,

K:\Injured\113016\FED\cmp fed (wd).wpd          10

1  from scientific studies performed by, at the request of, or with the assistance of, said defendants,
2  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
3  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

4      31.   On or before 1930, and thereafter, said defendants, their ALTERNATE
5  ENTITIES and each of them, were aware that members of the general public and other "exposed
6  persons," who would come in contact with their asbestos and asbestos-containing products, had
7  no knowledge or information indicating that asbestos or asbestos-containing products could
8  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
9  members of the general public and other "exposed persons," who came in contact with asbestos
10 and asbestos-containing products, would assume, and in fact did assume, that exposure to
11 asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
12 hazardous to health and human life.

13      32.   With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
14 of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
15 lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
16 market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
17 asbestos-containing products without attempting to protect "exposed persons" from, or warn
18 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
19 asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn
20 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
21 asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
22 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
23 and suppressed said knowledge from "exposed persons" and members of the general public, thus
24 impliedly representing to "exposed persons" and members of the general public that asbestos and
25 asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their
26 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
27 representations with the knowledge of the falsity of said implied representations.
28 ///

1      33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

2  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

3  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

4  manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

5  sale, inspection, installation, contracting for installation, repair, marketing, warranting,

6  rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

7  directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

8  products.  In pursuance of said financial motivation, said defendants, their ALTERNATE

9  ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

10  were consciously willing and intended to permit asbestos and asbestos-containing products to

11  cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

12  including Decedent.

13      34.    Plaintiffs allege that the aforementioned defendants, their ALTERNATE

14  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

15  products, to be safe for their intended use, but that their asbestos and asbestos-containing

16  products, created an unreasonable risk of bodily harm to exposed persons.

17      35.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

18  their representations, lack of warnings, and implied warranties of fitness of asbestos and their

19  asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

20  suffered permanent injury and death as alleged herein.

21      36.    As a direct and proximate result of the actions and conduct outlined herein,

22  Decedent have suffered the injuries and damages herein alleged.

23      WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and

24  each of them, as hereinafter set forth.

25  ///

26  ///

27  ///

28

1

2

### THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

3       PLAINTIFF KIMBRA GOTTSCHALL, AS WRONGFUL DEATH HEIR, AND AS

4   SUCCESSOR-IN-INTEREST TO ROBERT GOTTSCHALL DECEASED, AND

5   PLAINTIFF(S) DEBRA GABALL, RAYMOND GOTTSCHALL, ROBERT W.

6   GOTTSCHALL, RONALD GOTTSCHALL AS LEGAL HEIR(S) OF DECEDENT,

7   COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, NORTHROP

8   GRUMMAN SHIPBUILDING, INC., VIAD CORP., UNISYS CORPORATION, GENERAL

9   DYNAMICS CORPORATION, TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE

10  ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND

11  DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN

12  AS FOLLOWS:

13      37.     Plaintiffs incorporate by reference each paragraph contained within the First

14  Cause of Action as though fully set forth herein.

15      38.     The heirs at law of the Decedent and their relationship to the Decedent is set forth

16  above.

17      39.     The individuals set forth as heirs constitute all of the surviving heirs of the

18  Decedent.

19      40.     As a direct and proximate result of the conduct of the defendants, their

20  ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

21  containing products caused Decedent to develop diseases from which condition Decedent died.

22  Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

23  filing the complaint.

24      41.     At all times prior to his death, Decedent was a faithful and dutiful spouse to the

25  surviving spouse.

26      42.     As a direct and proximate result of the conduct of defendants, and each of them,

27  and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

28  ///

1  of care, society, comfort, attention, services, and support of Decedent all to the damage of
2  Decedent's heirs.

3      43.    As a further direct and proximate result of the conduct of defendants, and each of
4  them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount
5  currently not ascertained.

6      WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as
7  hereinafter set forth.

8  FOURTH CAUSE OF ACTION<br>(Products Liability - Wrongful Death)
9

10      PLAINTIFF KIMBRA GOTTSCHALL, AS WRONGFUL DEATH HEIR, AND AS
11  SUCCESSOR-IN-INTEREST TO ROBERT GOTTSCHALL DECEASED, AND
12  PLAINTIFF(S) DEBRA GABALL, RAYMOND GOTTSCHALL, ROBERT W.
13  GOTTSCHALL, RONALD GOTTSCHALL AS LEGAL HEIR(S) OF DECEDENT,
14  COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, NORTHROP
15  GRUMMAN SHIPBUILDING, INC., VIAD CORP., UNISYS CORPORATION, GENERAL
16  DYNAMICS CORPORATION, TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE
17  ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND
18  DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH),
19  COMPLAIN AS FOLLOWS:

20      44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each
21  paragraph of the First, Second and Third Causes of Action herein.

22      45.    As a direct and proximate result of the conduct of defendants, and each of them,
23  Decedent's heirs have sustained the injuries and damages previously alleged.

24      WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and
25  each of them, as hereinafter set forth.

26  ///
27  ///
28  ///

## IV.

## DAMAGES AND PRAYER

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

(a)    For plaintiffs' general damages according to proof;

(b)    For plaintiffs' loss of income, wages and earning potential according to proof;

(c)    For plaintiffs' medical and related expenses according to proof;

(d)    For plaintiffs' cost of suit herein;

(e)    For exemplary or punitive damages according to proof;

(f)    For damages for fraud according to proof; and

(g)    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: _____                    BRAYTON❖PURCELL LLP


By: _____
        David R. Donadio
        Attorneys for Plaintiffs




JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated: _____                    BRAYTON❖PURCELL LLP


By: _____
        David R. Donadio
        Attorneys for Plaintiffs


K:\Injured\113016\FED\cmp fed (wd).wpd

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

EXHIBIT A

Decedent: ROBERT GOTTSCHALL, Deceased.

Decedent's injuries: Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the decedent, including, but not limited to breathing difficulties and/or other lung damage. Decedent was diagnosed with mesothelioma on or about January 2010, asbestosis and asbestos-related pleural disease on or about March 2010.

Decedent died on April 14, 2010.

Retirement Status: The injured party retired from his last place of employment at regular retirement age. He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendants: Plaintiffs contend that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them. Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| Sunnyslope Fruit Exchange Box 1441 Wenatchee, WA | Unknown | Unknown | 7/1951 - 12/1951 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Pacific American Foods Inc.<br>1600 Norton Building<br>Seattle, WA | Unknown | Unknown | 12/1952 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Training Center<br>San Diego, CA | Trainee | 12/21/1951<br>(9 ½ weeks) |

Job Duties: Decedent completed basic training at this facility. Decedent does not currently recall the names of any supervisors or coworkers. Plaintiff is currently unaware if decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | BUCK<br>(DD-761) | Machinist Mate | 3/1952 - 11/1953 |
| | Mare Island Naval Shipyard<br>Vallejo, CA | | 7/1952 - 9/1952 |
| | Naval Repair Facility<br>Sasebo, Japan | | 1953<br>(Approx. 2 weeks) |

Job Duties: Decedent initially performed job duties as a fireman in the aft engine room. Later, as a machinist mate, decedent disturbed asbestos insulation when he assisted in repairing one of the bilge pumps that had malfunctioned. Decedent used a hacksaw to cut a section of asbestos-containing lagging from a steam pipe to access and repair a flange. Decedent recalled that the asbestos half round insulation was gray and covered with asbestos cloth. Decedent mixed dry asbestos cement powder to cover the damaged area of pipe insulation. Decedent disturbed asbestos-containing lagging pads on the GENERAL ELECTRIC turbines, which contained a total of 4 pads. Decedent wired the gray asbestos pads back into place after repair. When the ship went into Mare Island Naval Shipyard for repairs, decedent again removed the asbestos pads so that the work could be inspected. Decedent replaced a lot of GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) asbestos gaskets that had orange lettering on them, including using a paint scraper and wire brush to remove 6 gaskets from the turbine during repairs. Decedent cut several inches of asbestos insulation off flanges in order to reach the bolts. Decedent also handled and installed asbestos gaskets manufactured by FLEXITALLIC (GASKET HOLDINGS INC.) and cut gaskets to size from asbestos sheet gasket material manufactured by GARLOCK SEALING TECHNOLOGIES, LLC. Decedent used replacement packing manufactured by JOHN CRANE, INC. Decedent lived on board the ship during the overhaul at Mare Island Naval Shipyard, Vallejo, California. Decedent assisted during overhaul of the engine room. Decedent was in proximity to ship's crew who removed asbestos-containing insulation while performing various jobs including repacking pumps, valves and removing equipment. Decedent replaced packing and gaskets on CRANE CO. valves. Decedent stood watch in the fireroom four hours each day during removal of asbestos insulation from steam

1  pipes using scrapers and a saw, which created dust. Decedent was also in proximity to Mare
2  Island personnel when they removed asbestos insulated pump and turbine casings. Decedent also
   assisted shipyard personnel during a 2 week period at Naval Repair Facility, Sasebo, Japan,
3  which included work similar to that performed at Mare Island. Decedent identified asbestos
   insulation materials used in his presence: JOHNS MANVILLE (MANVILLE TRUST)
4  THERMOBESTOS block insulation. Decedent recalled the following coworkers: Jim Suits,
   Santa Monica, California; Mr Woods, address unknown and Mr McDermott, address unknown.
5  Plaintiff currently contends decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | US Naval Base Adak, AK; Great Sitkin Island, AK | Machinist Mate | 3/1954 - 3/1955 |

Job Duties: Decedent repaired pumps, 4 "donkey" boilers and engines. Decedent repaired the
boilers and steam reciprocating pumps in Pump House #1, as part of a 4 man crew. Decedent
pulled the burner housing off and entered the boilers through a side hatch, and cleaned and ripped
out the asbestos refractory material. Decedent also replaced the asbestos door gasket and burner
face gasket, punching holes in the gasket material. Decedent removed and installed exhaust
manifold gaskets on the 6-cylinder CHRYSLER (CHRYSLER LLC) engines which powered
pumps for diesel fuel. Decedent recalled the following co-worker: Mr. London, address
unknown. Plaintiff currently contends decedent was exposed to asbestos during this military
service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | JAMES O'HARA (T-AP-179) | Machinist Mate | 3/1955 (a few days) |

Job Duties: Decedent was transported on this ship from Alaska to Seattle, Washington.
Decedent did not recall the names of any supervisors or coworkers. Plaintiff currently contends
decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Mare Island Naval Shipyard Vallejo, CA | Machinist Mate | 4/1955 - 11/1956 |
|  | PELIAS (AS-14) |  | (Approx. 1 week) |

Job Duties: Decedent was present aboard the PELIAS during extensive renovation work
converting the previously decommissioned ship into an accommodation ship. Decedent assisted
in removing bags of lagging debris which had been taken off ducts and pipes in the overhead
spaces. The compartments where decedent worked were extremely dusty. Plaintiff currently
contends decedent was exposed to asbestos during this military service.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|---------------------|-----------|----------------|
| US Navy | Naval Repair Facility San Diego, CA NEREUS (AS-17) | Petty Officer | 11/1956 - 9/1957 |

Job Duties: Decedent was in charge of the fire-room, operating and maintaining equipment. Decedent also worked as an assistant oil king, maintaining a low pressure oil system and refueling submarines. Decedent worked as an assistant engineer and an officer of the watch where he maintained a high pressure air system. Decedent's duties took him throughout the ship, including checking the engine room, fire room and after steering spaces. Decedent and his crew repaired one of the two identical boilers, which was damaged in an explosion. Decedent and his 3 man crew removed and disturbed asbestos-containing insulation materials including asbestos pipe and block insulation. Decedent and his crew chipped and tore out asbestos-containing refractory materials from inside the boiler, which took approximately 15 - 16 hours. Decedent and his crew rebricked the inside of the boiler using asbestos-containing refractory cement which they mixed. Decedent scraped and chipped off the asbestos-containing front burner gasket, and removed asbestos pipe insulation from all steam pipes connected to the boiler, cutting and replacing it with new asbestos-containing insulation materials. Decedent's crew mixed sacks of asbestos-containing cement and applied it to joints on the steam pipes. Plaintiff currently contends decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|---------------------|-----------|----------------|
| US Navy | Hunters Point Naval Shipyard San Francisco, CA | Petty Officer | 9/1957 - 11/1957 |

### NEREUS (AS-17)

Job Duties: Decedent worked as an assistant engineer and an officer of the watch, maintaining a high pressure air system. Decedent's duties took him throughout the ship, including checking the engine room, fire room and after steering spaces. Decedent recalled that additional repairs to the boiler that exploded on the NEREUS were performed at Hunters Point Naval Shipyard, San Francisco, California and took about 3 months. Decedent lived and worked on board the ship during these repairs, his station being in the fireroom where he checked on the progress of the boiler repair work. In the laundry, decedent replaced steam presses, washing machines, water trackers and the dry cleaning plant. Decedent and his crew removed asbestos insulated piping coming off of the steam presses. Decedent handled 2 asbestos gaskets manufactured by FLEXITALLIC (GASKET HOLDINGS INC.). Decedent repaired evaporators and high pressure air compressors. Decedent changed and cleaned the valves on the WORTHINGTON compressor. Decedent removed the insulation pads when he descaled a FOSTER WHEELER (FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION)) evaporator. Decedent and his crew pulled out evaporator tubes to clean them, and removed asbestos-containing pipe insulation to gain access to the tubes. Decedent worked in proximity to shipyard workers cutting, installing and wrapping wire on asbestos half round pipe insulation. Decedent and his crew replaced approximately 30 steam valves in the fire room, and decedent personally replaced 2 valves. Decedent swept up the fire room after the work was complete. Plaintiff currently contends decedent was exposed to asbestos during this military service.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Repair Facility San Diego, CA | Petty Officer | 11/1957 - 1/1958 |
| | Seal Beach, CA | | |
| | Pier 95 Seattle, WA | | |
| | NEREUS (AS-17) | | 11/1957 - 3/1958 |

Job Duties: Decedent recalled that the NEREUS spent a short time at the Naval Repair Facility, San Diego, California, and then went to Seal Beach, California, to pick up torpedoes. The NEREUS spent a few days at Pier 95 in Seattle, Washington where there was an open house for civilians to tour the ship. Plaintiff currently contends decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Long Beach Naval Shipyard Long Beach, CA | Machinist Mate | 4/1958 - 5/20/1959 |
| | OKANOGAN (APA-220) | | |
| | Pearl Harbor Naval Shipyard Honolulu, HI | | |
| | Naval Repair Facility Yokosuka, Japan | | 4/1959 |

Job Duties: Decedent boarded the OKANOGAN (APA-220) at Long Beach Naval Shipyard and was assigned to the engine room. Decedent performed maintenance on the steam turbine generator, main propulsion equipment, lube oil pumps, bilge pumps, condensate pumps and fuel oil transfer pumps.

Decedent rebuilt a condensate pump; worked on steam exhaust piping and a steam inlet, removing insulation and a lagging pad prior to performing repairs. Decedent re-insulated the exhaust. Decedent used about 6-8 GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets in flanges on exhaust and drain lines. Decedent performed maintenance and repair work on the WESTINGHOUSE main turbine and the three WESTINGHOUSE generator turbines which required him to remove exterior lagging and replace the sealing materials between the top and bottom turbine casings, creating dust. Decedent and crew replaced asbestos packing in valves and pumps. Decedent replaced an existing CRANE CO. steam valve with a new CRANE CO. valve. Decedent worked in proximity to repairs of the 2 boilers while the ship was at the Naval Repair Facility, Yokosuka, Japan. Decedent worked in proximity to shipyard workers tearing out asbestos refractory materials and tearing asbestos pipe insulation and lagging off two steam generators. Plaintiff currently contends decedent was exposed to asbestos during this military service.

During his career in the US Navy from 1951 - 1959, decedent recalled that he replaced and repaired many CRANE CO. (CRANE CO.) valves, replacing the packing and internal bonnet

K:\Injured\113016\FED\cmp fed (wd).wpd

21

1  gaskets as well as exterior flange gaskets. Most of the CRANE CO. (CRANE CO.) valves
2  decedent worked on were steam system valves. On many of the valves decedent worked, he cut,
   removed and replaced asbestos-containing packing manufactured by JOHN CRANE, INC.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Dollie Modra Heights Grocery 21025 Highway 99 Lynnwood, WA 98036 | Unknown | Unknown | 1959 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently
unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Army | Fort Ord Monterey, CA | Military Policeman | 8/21/1959 (Approx. one month) |

Job Duties: Decedent picked up and delivered prisoners. Plaintiff is currently unaware if
decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Army | US Army Fort Eustis, VA | Maintenance Engineer | 10/1959 - 5/1962 |

Job Duties: Decedent was assigned to the maintenance crew working on 20 LCM-8 landing
craft. Decedent performed maintenance and repair work on the 4 GENERAL MOTORS
CORPORATION engines, using a hacksaw blade and linoleum knife to cut and tear asbestos-
containing insulation off exhaust piping. Decedent replaced the intake and exhaust manifold
gaskets. Decedent and other maintenance personnel cut and applied new asbestos-containing
insulation. Plaintiff currently contends decedent was exposed to asbestos during this military
service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Army | US Army Camp Leroy Johnson New Orleans, LA | Maintenance Engineer | 5/1962 - 8/20/1962 |

Job Duties: Decedent was assigned to the maintenance crew working on 40 LCM-8 landing
craft. Decedent performed maintenance and repair work on the 4 engines, using a hacksaw blade
and linoleum knife to cut and tear asbestos-containing insulation off exhaust piping. Decedent
and other maintenance personnel cut and applied new asbestos-containing insulation. Plaintiff
currently contends decedent was exposed to asbestos during this military service.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA | Marine Machinist | 8/1962 - 4/1964 |
| | ANDREW JACKSON (SSBN-619) | | |
| | WOODROW WILSON (SSBN-624) | | |
| | DANIEL BOONE (SSBN-629) | | |
| | KAMEHAMEHA (SSBN-642) | | |
| | SCAMP (SSN-588) | | |
| | PERMIT (SSN-594) | | |
| | PLUNGER (SSN-595) | | |
| | Unknown destroyer | | |

Job Duties: Decedent worked out of Shop 36 as a marine machinist. Decedent performed new construction of SSBN submarines on the building ways. Generally on the submarines, decedent installed missile handling rails, bolted in after signal injectors, installed torpedo tubes, installed missile control launch pads, and aligned missile hatch actuating cylinders. Decedent cut asbestos blankets from a large roll and applied them to heaters and motors. Decedent worked in proximity to and at times assisted welders and electricians. Decedent passed through the engine rooms and auxiliary machinery spaces in proximity to Shop 64 insulators who were applying white colored asbestos pipe insulation and lagging. Decedent removed armored plating from the #1 gun mount on the unknown destroyer. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Hunters Point Naval Shipyard Bldg. B Vallejo CA 94592 | Hunters Point Naval Shipyard San Francisco, CA | Marine Machinist | 4/1964-3/1965 |
| | SCABBARD FISH (SS-397) | | |
| | ARCHERFISH (AGSS-311) | | (3 hours) |

Job Duties: Decedent worked on the sail of the SCABBARD FISH, a diesel powered submarine during an upgrade. Decedent removed periscopes, replaced the bearing foundations and installed a new antenna. Decedent worked in the sail control room and the sail room. Decedent repaired the bearings for the periscope on the hull, worked on the two scopes, the ship antenna, ECM mast and radar antenna. Decedent worked adjacent to various trades including but not limited to:

1  riggers, shipfitters and welders. Decedent worked on board the <u>ARCHERFISH</u> submarine for 3
2  hours. Decedent adjusted the periscope hoist cylinders. Plaintiff currently contends decedent
   was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Kaiser Steel Resources Inc. & Subsidiaries Payroll 3633 E. Inland Empire Blvd. Ste 850 Ontario, CA | Kaiser Steel Napa, CA | Boilermaker | 3/1965- 12/1966 |

8  Job Duties: Decedent ground, measured and welded steel pipes. Decedent worked adjacent to
   various outside contractors performing repair work at this location. Decedent welded steel
9  plates onto field boilers being constructed. Plaintiff currently contends decedent was exposed to
   asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Defense Finance & Accounting Service 1240 East Ninth Street Cleveland, OH | Mare Island Naval Shipyard Vallejo, CA | | 1966 - 12/19/1989 |
| | | Marine Machinist | 12/1966-12/1969 |
| | | Marine Machinist (Instructor) | 12/1969-6/1971 |
| | | Marine Machinist (Foreman) | 6/1971-12/1989 |
| | <u>SCAMP</u> (SSN-588) | | 1966 - 4/1988 |
| | <u>PERMIT</u> (SSN-594) | | 1966 - 12/1987 |
| | <u>PLUNGER</u> (SSN-595) | | |
| | <u>NAUTILUS</u> (SSN-571) | | |
| | <u>SEAWOLF</u> (SSN-575) | | 1966 - 3/1987 |
| | <u>SWORDFISH</u> (SSN-579) | | 1966 - 12/1989 |
| | <u>SARGO</u> (SSN-583) | | |
| | <u>SKIPJACK</u> (SSN-585) | | |
| | <u>HALIBUT</u> (SSGN-587) | | 1966 - 1976 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Defense Finance & Accounting Service 1240 East Ninth Street Cleveland, OH (cont'd.) | Mare Island Naval Shipyard Vallejo, CA | | 1966 - 12/19/1989 |
| | SCULPIN (SSN-590) | | 1966 - 12/1989 |
| | SHARK (SSN-591) | | |
| | SNOOK (SSN-592) | | 1966 - 1986 |
| | BARB (SSN-596) | | 1966 - 12/1989 |
| | GEORGE WASHINGTON (SSN-598) | | 1966 - 1/1985 |
| | PATRICK HENRY (SSBN-599) | | 1966 - 2/1989 |
| | ROBERT E. LEE (SSBN-601) | | 1966 - 11/1983 |
| | POLLACK (SSN-603) | | 1966 - 1989 |
| | DACE (SSN-607) | | 1966 - 12/1988 |
| | THOMAS A. EDISON (SSBN-610) | | 1966 - 12/1989 |
| | JOHN MARSHALL (SSBN-611) | | |
| | FLASHER (SSN-613) | | |
| | HADDOCK (SSN-621) | | |
| | JOHN C. CALHOUN (SSBN-630) | | |
| | STONEWALL JACKSON (SSBN-634) | | |
| | STURGEON (SSN-637) | | |
| | TAUTOG (SSN-639) | | |
| | GRAYLING (SSN-646) | | 1969 - 12/1989 |
| | POGY (SSN-647) | | 1971 - 12/1989 |
| | ASPRO (SSN-648) | | 1969 - 12/1989 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Defense Finance & Accounting Service 1240 East Ninth Street Cleveland, OH (cont'd.) | Mare Island Naval Shipyard Vallejo, CA | | 1966 - 12/19/1989 |
| | PUFFER (SSN-652) | | 1969 - 12/1989 |
| | MARIANO G. VALLEJO (SSBN-658) | | |
| | GURNARD (SSN-662) | | |
| | HAMMERHEAD (SSN-663) | | 1968 - 12/1989 |
| | HAWKBILL (SSN-666) | | 1966 - 12/1987 |
| | PINTADO (SSN-672) | | 1967 - 12/1987 |
| | DRUM (SSN-677) | | 1968 - 12/1989 |
| | SILVERSIDES (SSN-679) | | 1972 - 1989 |
| | WILLIAM H. BATES (SSN-680) | | 1973 - 1989 |
| | PARCHE (SSN-683) | | 1974 - 1989 |
| | CAVALLA (SSN-684) | | 1974 - 1989 |
| | RICHARD B. RUSSELL (SSN-687) | | 1975 - 1989 |
| | NEW YORK CITY (SSN-696) | | 1979 - 1989 |
| | LA JOLLA (SSN-701) | | 1979 - 1989 |
| | VESUVIUS  (AE-15) | | 1966 - 1974 |
| | MOUNT BAKER (AE-34) | | 1971 - 1989 |
| | MAUNA KEA (AE-22) | | 1966 - 12/1989 |
| | JOHN A. BOLE (DD-755) | | 1966 - 2/1974 |
| | LOFBERG (DD-759) | | 1966 - 2/1973 |
| | THOMPSON (DD-627) | | 1966 - 1972 |
| | NEPTUNE (ARC-2) | | 1966 - 1973 |
| | DOLPHIN (AGSS-555) | | 1968 - 12/1989 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Defense Finance & Accounting Service 1240 East Ninth Street Cleveland, OH (cont'd.) | Mare Island Naval Shipyard Vallejo, CA | | 1966 - 12/19/1989 |
| | GRAYBACK (APSS-574) | | 1968 - 12/1989 |
| | DARTER (SSN-576) | | 1966 - 12/1989 |
| | BARBEL (SSN-580) | | |
| | Naval Repair Facility San Diego, CA | | |
| | Pearl Harbor Naval Shipyard Peal Harbor, HI | | |
| | Hunters Point Naval Shipyard, San Francisco, CA | | |
| | Naval Air Station Alameda, CA | | |

Job Duties: Decedent worked out of Shop 36 as a marine machinist. Decedent performed new construction of SSBN submarines on the building ways and repairs on other vessels. Generally on the submarines, decedent installed missile handling rails, bolted in after signal injectors, installed torpedo tubes, installed missile control launch pads, and aligned missile hatch actuating cylinders. Decedent cut asbestos blankets from a large roll and applied them to heaters and motors. Decedent worked in proximity to and at times assisted welders and electricians. Decedent passed through the engine rooms and auxiliary machinery spaces in proximity to Shop 64 insulators who were applying white colored asbestos pipe insulation and lagging. Decedent installed many new valves manufactured by CRANE CO. (CRANE CO.), and installed the asbestos-containing packing material which came attached to the new valves. Throughout his career at Mare Island Naval Shipyard, from 1966 - 1986, decedent recalled that on approximately 50% of the valves he worked on, he cut, removed and replaced asbestos-containing packing manufactured by JOHN CRANE, INC.

Throughout his employment at Mare Island Naval, Naval Shipyard, decedent recalled being sent to other ship yards including but not limited to: Naval Repair Facility San Diego, Pearl Harbor Naval Shipyard, Hunters Point Naval Shipyard, San Francisco, California and Naval Air Station Alameda, California.

On the SCAMP, decedent removed the trash disposal unit, and removing and re-installing the periscope. On the PERMIT and PLUNGER, decedent installed a periscope while laggers insulated steam pipes, generators and turbines in his proximity. Decedent recalled that laggers cut and applied grayish pipe insulation and asbestos cloth. Decedent worked in proximity to Shop 38 outside machinists, Shop 64 laggers, Shop 56 Pipefitters and Shop 17 Sheet metal mechanics working with asbestos-containing insulation, gaskets and packing. Decedent overhauled slide valves in the torpedo room. Decedent repacked approximately 35-40 steam valves in the engine room. Decedent recalled that on approximately 50% of the valves he

1    worked on, he cut, removed and replaced asbestos-containing packing manufactured by JOHN
2    CRANE, INC.

3    From 1966 - 1989, while working at Mare Island Naval Shipyard, Vallejo, California, decedent
     recalled the following supervisors: Harold Diefendorf, Napa, California; Kenneth Gibson,
     deceased (formerly c/o Brayton✧Purcell, LLP); Harold Durr, c/o Brayton✧Purcell, LLP;  Bob
4    Creek, Oregon; and coworkers: Charles Violet, Vallejo, California; Guy Taylor, deceased;
     George Johnson, c/o Brayton✧Purcell, LLP; Kenneth Kershner, c/o Brayton✧Purcell, LLP;
5    Richard Hooker, deceased (formerly c/o Brayton✧Purcell, LLP);  Edward Knight, c/o
     Brayton✧Purcell, LLP; William Marco, c/o Brayton✧Purcell, LLP; John Heinmiller, c/o
6    Brayton✧Purcell, LLP;  John Mortensen, c/o Brayton✧Purcell, LLP; Albert Pellonari, c/o
     Brayton✧Purcell, LLP; James Beavers, c/o Brayton✧Purcell, LLP; Delbert Brookings, deceased
7    (formerly c/o Brayton✧Purcell, LLP); Donald Christian, c/o Brayton✧Purcell, LLP;  Frank
     Markovich, c/o Brayton✧Purcell, LLP; Luis Norman, Vallejo, California; Frank Balcena,
8    Vallejo, California; Norm Werst, Fairfield, California; Leroy Graham, Vacaville, California; Ray
     Grumbrecht, address unknown; Harold Halloran, Napa, California; Stanley Hogberg, Crescent
9    City, California; Walter Olmstead, deceased; George Horvath, Napa, California; Gary Winters,
     Napa, California; Noel Johnson, Puget Sound, Washington; Willie Santiago, Vallejo, California;
10   Ted Corey, Vallejo, California. Robert Hayes, Fairfield, California; Dave Smith, American
     Canyon, California; J. D Fuller, Napa, California; Tom Norberg, Vallejo, California; Leo
11   Sunnen, deceased; John Henry, deceased. Plaintiff currently contends decedent was exposed to
     asbestos during this employment.
12

| 13 Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| 14 Department of Defense | Mare Island Naval Shipyard Vallejo, CA | Marine Machinist | |
| 16 | MARKAB  (AR-23) | | 1966 - 1969 (Approximately 6 weeks) |

18   Job Duties: On the MARKAB, decedent worked on a complete overhaul.  Decedent worked on
     the No. 1 and No. 2 boilers.  On the boiler, decedent removed the hand hole covers, cleaned the
19   gasket seating surfaces, resurfaced the asbestos-containing gasket seating surfaces and reinstalled
     the hand-hole covers with new asbestos-containing gaskets.  Decedent recalled that when
20   cleaning the gasket seating surface, he went inside the down cover tube header, broke the hand-
     hole cover off, and removed the gasket material.  Decedent used a mirror and a pneumatic wire
21   brush to scrape and remove the asbestos-containing reside from the inside the flange. If the
     gasket was stuck inside of the flange, decedent removed it from the hand-hole cover using a
22   screw driver.  Decedent scraped and removed hand-hole gaskets running along the back side of
     the boiler and along the sides.  Decedent worked alongside tradesmen  from Shop 41 debricking
23   the inside of the boiler, and reinstalling new firebrick.  Decedent recalled that the outside covers
     of the boilers were removed for accessibility and stripped down.  Decedent installed CRANE
24   CO. (CRANE CO.) valves in the auxiliary steam line.  Decedent worked within feet of Shop 72
     laborers helping clean and haul out asbestos-containing debris from the interior repair work.
25   Decedent worked within feet of various other tradesmen employed on this vessel including but
     not limited to the following: Shop 64 laggers, Shop 56 machinists, Shop 51 electricians and
26   Shop 17 sheetmetal workers.  Decedent recalled Shop 64 laggers were working above them on
     the piping systems and steam piping systems on the front of a boiler, removing existing asbestos-
27   containing pipe insulation and reinstalling new asbestos-containing insulation while he
     performed his repairs to boilers. Additionally, decedent worked in proximity to laggers in the
28   engineering spaces, engine room and fire room, installing new asbestos-containing insulation and
     re-installing lagging in the engine room and the fireroom.  Decedent recalled the following

1  coworker on this vessel: Luis Norman, Vallejo, California.  Plaintiff currently contends decedent
2  was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA; | Marine Machinist | |
| | RAINIER (AE-5) | | 1966 (8 days) |

Job Duties: On the RAINIER , decedent overhauled a GRISCOM-RUSSELL (VIAD CORP.)
evaporator in the upper level of the engine room.  Decedent recalled the following coworkers
from Shop 38: Gary Winters.  Decedent recalled rigger Major Jackson, current address unknown.
Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA; | Marine Machinist | |
| | SPERRY (AS-12) | | 1967 (5 days) |

Job Duties: On the SPERRY, decedent worked on the ALLIS-CHALMERS generator covers in
the engine room during an overhaul.  Decedent removed the covers to perform repair work.
Decedent worked adjacent to pipefitters installing and removing lagging from the exhaust pipes
while he was working on the generators.  Plaintiff currently contends decedent was exposed to
asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA; | Marine Machinist | |
| | NEREUS (AS-17) | | 1967 (4 weeks) |

Job Duties: On the NEREUS, decedent worked on a FOSTER WHEELER (FOSTER
WHEELER LLC (FKA FOSTER WHEELER CORPORATION)) evaporator to repair a leak in
the tube bundle.  Decedent recalled working adjacent to laggers from Shop 64 who were
removing existing asbestos-containing pipe insulation, while he was loosening the bolts on the
tube bundles.  Decedent worked around Shop 64 laggers insulating the tube bundle with
asbestos-containing insulation after replacement.  Decedent performed a hydro test on the
evaporator.  Decedent removed a couple of steam presses in the laundry room.  Decedent recalled
the following coworkers: Noel Johnson, Wayne Meyers, Crescent City, California.  Plaintiff
currently contends decedent was exposed to asbestos during this employment.

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | WILTSIE (DD-716) | Marine Machinist | 1968 |

Job Duties: On the WILTSIE, decedent built an evaporator for the engine room. Decedent removed the asbestos-containing insulating blanket from the steam piping leading to the evaporator sections. Decedent removed the asbestos insulation blankets to access flanges by cutting the wires and prying them off the pipes. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA; | Marine Machinist | 1968 |
| | LONG BEACH (CGN-9) | | (1 month) |

Job Duties: On the LONG BEACH, decedent performed nuclear refueling. Decedent overhauled the main steam valves in two engine rooms, with coworker John Henry (deceased). Decedent overhauled 6 valves, three of which were in one engine room, and the other three in the other engine room. Decedent recalled asbestos-containing pipe insulation had been removed by Shop 64 laggers right before repair work was performed. After performing tests on valves, asbestos-containing pipe insulation was re-applied by other tradesmen within feet of decedent in the engine room where he was working. Decedent adjusted asbestos-containing packing in valves when there were leaks during testing. When repairing a leak, decedent worked adjacent to an insulator who was replacing asbestos-containing pipe insulation on piping. While working on this ship, decedent worked adjacent to various tradesmen including but not limited to: pipefitters, sheet metal workers, welders, shipfitters, marine machinists and electricians. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA; | Marine Machinist | 1968 |
| | BAINBRIDGE (CGN-25) | | (Approx. 6 weeks) |

Job Duties: On the BAINBRIDGE, decedent worked on an overhaul and performed refueling. Decedent overhauled a steam generator located in Engine Room Number 2. Decedent worked with coworker Noel Johnson, Puget Sound, Washington. Decedent removed and replaced asbestos-containing gaskets. Decedent cut and installed gaskets from asbestos-containing sheet gasket material provided by the shop. Decedent removed and replaced asbestos-containing FLEXITALLIC (GASKET HOLDINGS INC.) gaskets by unbolting the flange to access the gasket. Decedent worked within feet of Shop 64 insulators who were cutting and removing asbestos-containing insulation from the steam generators prior to performing repairs. Decedent worked adjacent to Shop 64 laggers removing asbestos-containing pipe insulation from turbine casing. Decedent worked adjacent to various tradesmen including but not limited to: machinists performing repair work to a generator, pipefitters and welders. Decedent recalled the following coworkers: Noel Johnson, Puget Sound, Washington; John Henry, deceased. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Naval Repair Facility San Diego, CA | Marine Machinist | 1969 |
| | WORDEN (DLG-18) | | 8/1969 (6 weeks) |

Job Duties: On the WORDEN, decedent worked on an overhaul. Decedent performed repair work to steam generators. Decedent overhauled valves that were associated with the turbine steam supply, exhaust and drain systems. Decedent removed and replaced asbestos-containing braided-rope packing in valves when overhauling them. Decedent worked in the engine room simultaneously with Shop 64 insulators who were stripping and removing asbestos-containing pipelagging from steam piping and other associated piping in the engine room. Decedent recalled Shop 64 insulators, installing preformed asbestos-containing insulation pads on valves and a generator. Decedent occasionally walked past the forced draft blowers while insulators were performing repairs to boilers. Decedent recalled working adjacent to the following tradesmen throughout the vessel: Shop 41 electricians, personnel from Shop 38 removing and replacing asbestos-containing packing on valves, pipefitters, welders and machinists. Decedent recalled the following coworkers: Luis Norman, Vallejo, California; Willie Santiago, Vallejo, California; Noel Johnson, Puget Sound, Washington. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA; | Marine Machinist Instructor | |
| | PERMIT (SSN-594) | | 12/1969 - 1/1970; mid 1980's |

Job Duties: On the PERMIT, decedent worked in the reactor compartment. Decedent cut canopies, removed union caps, torqued valves shut, cut the union bell caps and hooked up jumber cables. Decedent recalled Shop 64 insulators removed asbestos-containing lagging from the main nuclear steam generator right above his work area in the reactor compartment. Decedent recalled Shop 64 insulators were working approximately 2 feet above him and asbestos-containing pipe insulation frequently fell down into his work area. Decedent also worked in the engine room on the PERMIT while insulators were installing asbestos-containing pipe insulation. In the engine room, decedent removed and replaced asbestos-containing packing on valves connected to the steam turbine generators and main turbines. Decedent replaced more than a dozen valves.

Decedent returned to the PERMIT again in the mid 1980s. Decedent overhauled the main steam valves, cleaned the condenser tubes and packed the valves with asbestos-containing roll-packing obtained from the shop. Decedent recalled various other tradesmen including but not limited to: Shop 64 insulators and welders. Plaintiff currently contends decedent was exposed to asbestos during this employment.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA; | Marine Machinist Instructor | |
| | PYRO (AE-24) | | 1969 (8 hours) |

Job Duties: On the PYRO decedent performed repair work on the main feed pump. Decedent repacked valves in the engine room. Decedent recalled the ship's crew was installing pipe insulation adjacent to the aft of the pump, wiring asbestos-containing insulation pads on the piping. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard Vallejo, CA; | Marine Machinist Instructor | |
| | GUITARRO (SSN-665) | | 1969 - 1972 |

Job Duties: On the GUITARRO, decedent prepared the box girder during new construction. Decedent worked in the engine room. Decedent worked adjacent to asbestos-containing pipe insulation being installed on pipes on bulkheads and throughout the engine room. Decedent recalled insulation work was performed by insulators from Shop 64. Decedent recalled various tradesmen working on this vessel including but not limited to: Shop 26 welders, shipfitters and pipefitters. Decedent recalled the following coworker: Carl Beach, deceased.
  Decedent returned to the GUITARRO on a second occasion, performing re-fueling work. Decedent recalled the following coworkers during this occasion: Bob Hayes, address unknown, C.R. Page, asbestos unknown. Decedent recalled that piping throughout the auxiliary machine space was insulated with asbestos.
  Decedent returned to GUITARRO again, and performed core removal coolant work. Decedent worked in the nuclear reactor compartment. Decedent removed the gauge glasses and replaced them. Decedent bagged material including but not limited to: gaskets, fasteners, check valves and bulbs. Decedent removed and replaced asbestos-containing gaskets. Decedent recalled the following coworker: Norm Werst, Fairfield, California. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Customer Company PO. Box 886 Benicia, CA 94510-0886 | Unknown | Unknown | 1979 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Defense Finance & Accounting Service 1240 East Ninth Street Cleveland, OH | Hunters Point Naval Shipyard San Francisco, CA ; Naval Air Station Alameda, CA | Marine Machinist (Foreman) | 1983-1984; <br><br> 1985-1989 |
| | ENTERPRISE (CVN-65) | | 1983 - 1984; 1989 |
| | CARL VINSON (CVN-70) | | 1985 - 1989 (a total of one year) |
| | TEXAS (CGN-39) | | 1983; 1985-1989 |
| | ARKANSAS (CGN-41) | | 1983; 1985-1989 |
| | CALIFORNIA (CGN-36) | | 1983; 1985-1989 |

Job Duties:   While working out of Mare Island Naval Shipyard, decedent was periodically assigned to Hunters Point Naval Shipyard and Naval Air Station, Alameda, California, where he participated in repairs of the ships listed above.  Decedent overhauled the main steam valves. Decedent overhauled valves in the engine room.  Decedent adjusted asbestos-containing packing in valves when there were leaks during testing. While working on these ships, decedent worked adjacent to various tradesmen including but not limited to: pipefitters, sheet metal workers, welders, shipfitters, marine machinists and electricians. On the USS ENTERPRISE decedent repaired and replaced numerous CRANE CO. valves used in an overflow discharge system. The valves appeared to have undergone little use.  Decedent recalled that on the valves he worked on, he cut, removed and replaced asbestos-containing packing that was manufactured by JOHN CRANE, INC.  Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| K-Mart, Inc. 2301 Mountain Industrial Blvd. Ste B Tucker, GA | Unknown | Unknown | 1989-1990 |

Job Duties:  Decedent did not recall the specifics of this employment.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Gelow, Inc. Gelows Texaco P.O. Box 1384 Santa Rosa, CA  95402-1384 | Unknown | Unknown | 1990-1992; 1994-1995 |

Job Duties:  Decedent did not recall the specifics of this employment.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Cultured Stone Corp. Stone Products, Inc. PO. Box 270 Napa, CA 94559-0270 | Unknown | Unknown | 1993; 1996-1997 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Remedy Temp, Inc. PO Box 45174 San Francisco, CA | Unknown | Unknown | 1993-1994 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

NON-OCCUPATIONAL EXPOSURE:

Automobile Repair:
Decedent performed brake jobs, clutch jobs and engine gasket jobs on various personal vehicles from 1951 - 1965. Decedent removed old drum brakes, cleaning the brake assemblies and drums and installing new drum brakes. Decedent performed repair to the following vehicles:

In approximately 1951 in Wenatchee, Washington, decedent changed the brakes on a 1935 Chevrolet. Decedent used asbestos-containing replacement brakes manufactured by BENDIX (HONEYWELL INTERNATIONAL, INC.). Plaintiff currently contends decedent was exposed to asbestos during these automobile repairs.

In approximately 1956 - 1957, decedent changed the brakes on a 1950 Chevrolet Fleetwood which decedent bought used. Decedent used asbestos-containing replacement brakes manufactured by BENDIX (HONEYWELL INTERNATIONAL, INC.) purchased from the GRAND AUTO, INC. (CSK AUTO, INC.) store in Vallejo, California. Plaintiff currently contends decedent was exposed to asbestos during these automobile repairs.

PARA-OCCUPATIONAL EXPOSURE:
Decedent was exposed to asbestos through the work done by his father Harold John Gottschall (deceased) during his employment as a carman for the Great Northern Railroad in the Wenatchee, Washington area. Decedent's father occasionally maintained rail cars, sometimes working on passenger cars as a coach cleaner. Decedent occasionally assisted his father as a coach cleaner at night. Decedent's father brought his soiled work overalls home once a week for decedent's mother to wash. Decedent occasionally picked his father up in the family car in the railroad yard parking lot. Decedent lived with his father from 1939 to December 1951. Plaintiff currently contends decedent was exposed to asbestos as a result of his father's employment.