1  John R. DaCorsi, SBN 44983
   Jason L. Rumsey, SBN 219637
2  DaCORSI, PLACENCIO & RUMSEY, P.C.
   21031 Ventura Boulevard, Suite 1200
3  Woodland Hills, California 91364-2229
   Telephone:     (818) 884-6666
4  Facsimile:     (818) 884-8677

5  Phil Heeger, Esq.
   HEEGER & ASSOCIATES
6  21031 Ventura Boulevard, Suite 1200
   Woodland Hills, California 91364-2229
7  Telephone:     (818) 703-6415
   Facsimile:     (818) 703-7063

8
   Attorneys for Plaintiffs,
9  EDWARD SMITH, JR.,
   SHIRLEY SMITH

10

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF LOS ANGELES

13

14  EDWARD SMITH, JR., an individual;        ) Case No.        B C 4 4 7 8 8 7
    SHIRLEY SMITH, an individual,            )
15                                           )
                  Plaintiffs,                )
16                                           )
          vs.                                )     COMPLAINT FOR:
17                                           )
    GENERAL DYNAMICS CORPORATION,            )  1.   NEGLIGENCE;
18  a Delaware corporation; BATH IRON        )
    WORKS; AMERICAN STANDARD, INC.           )  2.   STRICT LIABILITY;
19  (d/b/a American Standard Products, Inc.);)
    BECHTEL CONSTRUCTION COMPANY;            )  3.   FALSE REPRESENTATION;
20  Bechtel Corporation; BUFFALO PUMPS,      )
    INC. (sued individually and as           )  4.   INTENTIONAL
21  successor-in-interest to Buffalo Forge   )       TORT/INTENTIONAL
    Company); BW/IP INTERNATIONAL, INC.      )       FAILURE TO WARN; AND
22  (sued individually and as                )
    successor-in-interest to Byron Jackson   )  5.   LOSS OF CONSORTIUM.
23  Pumps); CBS CORPORATION f/k/a            )
    Viacom, Inc., successor by merger with CBS ) [THIS ACTION CONSTITUTES
24  Corporation f/k/a Westinghouse Electric  )  COMPLEX ASBESTOS LITIGATION –
    Corporation; COOPER US, INC. f/k/a       )  SUBJECT TO THE GENERAL ORDERS
25  Cooper Industries, LLC (sued individually)  CONTAINED IN FILE NO. C 700000]
    and as successor-in-interest to Gardner  )
26  Denver, Inc.); CRANE CO.; DURABLA        )
    MANUFACTURING COMPANY;                   )
27  FLOWSERVE CORPORATION (sued              )
    individually and as successor-in-interest to )
28  Byron Jackson Pump Co.); FMC             )

                                   1
                              COMPLAINT

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

OCT 20 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A. El LaFLEUR-CLAYTON

1     CORPORATION (sued individually and as )
       successor-in-interest to Northern Pump )
2     Company); GARDNER DENVER, INC.; )
       GARLOCK SEALING TECHNOLOGIES, )
3     LLC (sued individually and as )
       successor-in-interest to Garlock, Inc.); )
4     GENERAL ELECTRIC COMPANY; IMO )
       INDUSTRIES, INC. (sued individually and )
5     as successor-in-interest to DeLaval Steam )
       Turbine Company); INGERSOLL-RAND )
6     COMPANY; LESLIE CONTROLS, INC.; )
       OWENS-ILLINOIS, INC. (sued individually )
7     and as successor-in-interest to Owens-Illinois )
       Glass Company); THORPE INSULATION )
8     COMPANY; WARREN PUMPS, LLC (sued )
       individually and as successor-in-interest to )
9     Quimby Pump Co.); and Does 1-350 )
       Inclusive, )
10                            )
                  Defendants. )
11                            )

12

13       Plaintiffs, EDWARD SMITH, JR. and SHIRLEY SMITH, allege as follows:

14          1.     Plaintiff, EDWARD SMITH, JR..("Edward Smith, Jr."), is an individual residing

15 in Alexandria, Louisiana.

16          2.     Plaintiff, SHIRLEY SMITH.("Shirley Smith"), is an individual residing in

17 Alexandria, Louisiana.

18          3.     The true names and capacities of defendants DOES 1 through 350, inclusive,

19 whether individual, corporate, associate or otherwise are unknown to Plaintiff, who therefore

20 sues such defendants by fictitious names. Plaintiff will amend this complaint to show their true

21 names and capacities when they have been ascertained. Plaintiff is informed and believes and on

22 that information and belief alleges that each of the defendants designated in this complaint as

23 DOES 1 though 350, inclusive, was, in some manner and to some extent, a substantial factor in

24 causing Plaintiff's losses as alleged in this complaint.

25          4.     At all times herein mentioned, each of the Defendants was the agent, servant,

26 employee and/or joint venturer of the other Defendants, and each of them, and at all said times

27 each Defendant was acting in the full course and scope of said agency, service, employment

28 and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times

1  herein mentioned, Defendants AMERICAN STANDARD, INC., d/b/a AMERICAN

2  STANDARD PRODUCTS, INC.; BECHTEL CONSTRUCTION COMPANY; BECHTEL

3  CORPORATION; BUFFALO PUMPS, INC. ( sued individually and as successor-in-interest to

4  BUFFALO FORGE COMPANY); BW/IP INTERNATIONAL, INC. ( sued individually and as

5  successor-in-interest to BYRON JACKSON PUMPS); CBS CORPORATION f/k/a VIACOM,

6  INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC

7  CORPORATION; COOPER US, INC. f/k/a COOPER INDUSTRIES, LLC ( sued individually

8  and as successor-in-interest to GARDNER DENVER, INC.); CRANE CO.; DURABLA

9  MANUFACTURING COMPANY; FLOWSERVE CORPORATION ( sued individually and as

10  successor-in-interest to BYRON JACKSON PUMP CO.); FMC CORPORATION ( sued

11  individually and as successor-in-interest to NORTHERN PUMP COMPANY); GARDNER

12  DENVER, INC.; GARLOCK SEALING TECHNOLOGIES, LLC ( sued individually and as

13  successor-in-interest to GARLOCK, INC.); GENERAL ELECTRIC COMPANY; IMO

14  INDUSTRIES, INC. ( sued individually and as successor-in-interest to DeLAVAL STEAM

15  TURBINE COMPANY); INGERSOLL-RAND COMPANY; LESLIE CONTROLS, INC.;

16  OWENS-ILLINOIS, INC. ( sued individually and as successor-in-interest to OWENS-ILLINOIS

17  GLASS COMPANY); THORPE INSULATION COMPANY; WARREN PUMPS, LLC ( sued

18  individually and as successor-in-interest to QUIMBY PUMP CO.,), and DOES 1-350

19  INCLUSIVE (all collectively, "Defendants"), were individuals, corporations, partnerships and/or

20  unincorporated associations organized and existing under and by virtue of the laws of the State of

21  California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and

22  each of them, were and are authorized to do and are doing business in the State of California, or

23  the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them,

24  were and are authorized to do and are doing business in the State of California, and that said

25  Defendants have regularly conducted business in the County of Los Angeles, State of California..

26

27  **FIRST CAUSE OF ACTION**
(Negligence - Plaintiffs Against All Defendants)

28      5.    Plaintiffs incorporate by this reference the allegations contained in paragraphs 1

3

1 | through 5 of this Complaint.

2 |      6.    At all times herein mentioned, each of the named Defendants and DOES 1

3 | through 350 was the successor, successor in business, successor in product line or a portion

4 | thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or

5 | member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

6 | labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

7 | inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

8 | re-branding, manufacturing for others, packaging and advertising a certain substance, the generic

9 | name of which is asbestos, and other products containing said substance. Those entities shall

10 | hereinafter collectively be called "alternate entities." Each of the herein named Defendants is

11 | liable for the tortious conduct of each successor, successor in business, successor in product line

12 | or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary,

13 | whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or

14 | funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and

15 | advertised a certain substance, the generic name of which is asbestos, and other products

16 | containing said asbestos. The following Defendants, and each of them, are liable for the acts of

17 | each and every "alternate entity", and each of them, in that there has been a virtual destruction of

18 | Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have

19 | acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants,

20 | and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate

21 | entity"; each such Defendant has the ability to assume the risk-spreading role of each such

22 | "alternate entity"; and that each such Defendant enjoys the goodwill originally attached to each

23 | such "alternate entity".

24 | DEFENDANT                               ALTERNATE ENTITY

25 | AMERICAN STANDARD, INC. (dba         AMERICAN STANDARD COMPANIES, INC.
     AMERICAN STANDARD PRODUCTS, INC.)    KEWANEE BOILER CORPORATION

26 |                                     THE TRANE COMPANY
                                    U.S. RADIATOR

27 |                                     AMERICAN RADIATOR CO.
                                    WESTINGHOUSE AIR BRAKE CORP.

28 |                                     WABCO

| | | |
|---|---|---|
| 1 | BECHTEL CONTRUCTION | COMPANY BECHTEL CONSTRUCTION COMPANY |
| 2 | | BECHTEL CONTRUCTION OPERATIONS INCORPORATED |
| 3 | | BECHTEL ENERGY CORPORATION |
| 4 | BECHTEL CORPORATION | BECHTEL CONSTRUCTION COMPANY |
| | | BECHTEL CONSTRUCTION OPERATIONS |
| 5 | | INCORPORATED |
| | | BECHTEL ENERGY CORPORATION |
| 6 | | |
| | BUFFALO PUMPS, INC. | BUFFALO FORGE COMPANY |
| 7 | | |
| | BW/IP INTERNATIONAL, INC. | BORG WARNER INDUSTRIAL PRODUCTS |
| 8 | | BORG-WARNER INDUSTRIAL PRODUCTS, INC. |
| 9 | | BW/IP, INC. |
| | | BW/IP INTERNATIONAL (GP), NC. |
| 10 | | BW/IP INTERNATIONAL (LP), INC. |
| | | DURCO INTERNATIONAL |
| 11 | | BYRON JACKSON PUMPS |
| 12 | CBS CORPORATION | WESTINGHOUSE ELECTRIC CORPORATION |
| 13 | | WESTINGHOUSE CREDIT CORPORATION |
| | | BF STURTEVANT |
| 14 | | VIACOM INTERNATIONAL, INC. |
| | | VIACOM PLUS |
| 15 | | CBS CORPORATION |
| | | CBS BROADCASTING INC. (fka CBS INC.) |
| 16 | | BLOCKBUSTER INC. |
| | | MARKETWATCH.COM |
| 17 | | SPORTSLINE.COM |
| | | WESTWOOD ONE, INC. |
| 18 | | VIACOM, INC. |
| 19 | COOPER INDUSTRIES, INC. | ALCO PRODUCTS, INC. |
| | | McGRAW-EDISON COMPANY |
| 20 | | STUDEBAKER-WORTHINGTON CORP. |
| | | GARDNER DENVER, INC. |
| 21 | | COOPER B-LINE |
| | | COOPER BUSSMANN |
| 22 | | COOPER CROUSE-HINDS |
| | | COOPER MENVIER |
| 23 | | COOPER WIRING DEVICES |
| | | COOPER LIGHTING |
| 24 | | COOPER POWER SYSTEMS |
| 25 | CRANE CO. | CRANE ENVIRONMENTAL |
| | | CRANE PUMPS AND SYSTEMS |
| 26 | | VALVE SERVICES |
| | | CRANE VALVE GROUP |
| 27 | | CRANE SUPPLY |
| | | CHAPMAN VALVE CO. |
| 28 | | DEMING PUMPS |

5

| | | |
|---|---|---|
| 1 | | JENKINS VALVES |
| | | COCHRANE, INC. |
| 2 | | |
| | DURABLA MANUFACTURING COMPANY | DURABLA |
| 3 | | |
| | FLOWSERVE CORPORATION | THE DURIRON COMPANY, INC. |
| 4 | | WORTHINGTON PUMP CO. |
| | | INGERSOLL-DRESSER PUMPS |
| 5 | | BW/IP INTERNATIONAL |
| | | BYRON JACKSON PUMPS |
| 6 | | FLOWSERVE US INC. |
| | | UNITED CENTRIFUGAL PUMPS |
| 7 | | ACEC PUMPS |
| | | WILSON-SNYDER PUMPS |
| 8 | | STORK POMPEN |
| | | DURCO INTERNATIONAL |
| 9 | | SCIENCO PUMPS |
| | | ALDRICH PUMP COMPANY |
| 10 | | INGERSOLL-RAND |
| | | WESTERN LAND ROLLER IRRIGATION |
| 11 | | PUMPS |
| | | SIER-BATH PUMPS |
| 12 | | WORTHINGTON PUMPS |
| | | WORTHINGTON-SIMPSON LTD. |
| 13 | | DRESSER INDUSTRIES |
| | | PACIFIC PUMPS |
| 14 | | JEUMONT-SCHNEIDER PUMPS |
| | | PLEUGER PUMPS |
| 15 | | TKL |
| | | VALTEK CONTROL VALVES |
| 16 | | ATOMAC KG |
| | | AUTOMAX/ACCORD |
| 17 | | KAMMER CONTROL VALVES |
| | | SEREG CONTROL VALVES |
| 18 | | MECAIR |
| | | BATTIG AG |
| 19 | | ANCHOR/DARLING |
| | | ANCHOR VALVES |
| 20 | | NOBLE ALLOY VALVES |
| | | SCHMIDT ARMATUREN |
| 21 | | GESTRA |
| | | P&W. |
| 22 | | NAF AB |
| | | NAVAL |
| 23 | | PMV |
| | | LIMITORQUE |
| 24 | | HENRY VOGT MACHINE COMPANY |
| | | ARGUS |
| 25 | | THE EDWARD VALVE & |
| | | MANUFACTURING COMPANY |
| 26 | | ROCKWELL MANUFACTURING |
| | | COMPANY |
| 27 | | McCANNA /HILLS-McCANNA |
| | | NORDSTROM VALVE |
| 28 | | MARPAC |

6

COMPLAINT

| | |
|---|---|
| 1 | SERCK-AUDCO |
| | WORCESTER VALVE CO. |
| 2 | WORCESTER CONTROLS CORPORATION |
| | NORBRO |
| 3 | FIVE STAR SEALS |
| | PACIFIC WIETZ |
| 4 | DURAMETALLIC CORPORATION |
| | PAC-SEAL |
| 5 | |
| | FMC CORPORATION |
| 6 | PEERLESS PUMP COMPANY |
| | McNALLY INDUSTRIES-NORTHERN PUMP |
| 7 | FMC AGRICULTURAL PRODUCTS |
| | FMC BIOPOLYMER |
| 8 | FMC LITHIUM |
| | FMC ALKALI CHEMICALS |
| 9 | FMC FORET |
| | NORTHERN PUMPS COMPANY |
| 10 | GARDNER DENVER, INC. |
| | GARDNER GOVERNOR CORPORATION |
| 11 | GARDNER COMPANY |
| | GARDNER DENVER INDUSTRIAL |
| 12 | MACHINERY |
| | COOPER INDUSTRIES, INC. |
| 13 | SYLTONE PLC |
| | TAMROTOR |
| 14 | GEOQUIP |
| | CHAMPION PNEUMATIC MACHINERY |
| 15 | WITTIG |
| | ALLEN-STUART EQUIPMENT COMPANY |
| 16 | AIR RELIEF |
| | BUTTERWORTH JETTING SYSTEMS |
| 17 | INVINCIBLE AIRFLOW SYSTEMS |
| | HAMWORTHY BELISS & MORCOM |
| 18 | HOFFMAN AIR AND FILTRATION |
| | SYSTEMS |
| 19 | GARLOCK SEALING TECHNOLOGIES, LLC |
| | GARLOCK, INC. |
| 20 | GARLOCK SEALING TECHNOLOGIES |
| | GULFWESTERN |
| 21 | GARLOCK FLUIDTEC PRODUCTS |
| | GARLOCK HELICOFLEX |
| 22 | GARLOCK METALLIC GASKETS |
| | GARLOCK RUBBER TECHNOLOGIES |
| 23 | COLTEC INDUSTRIES, INC. |
| | FAIRBANKS-MORSE |
| 24 | BELMONT PACKING & RUBBER CO. |
| | GARLOCK PACKING CO. |
| 25 | U.S. GASKET CO. |
| | GENERAL ELECTRIC COMPANY |
| 26 | GENERAL ELECTRIC BROADCASTING |
| | COMPANY, INC. |
| 27 | GENERAL ELECTRIC CAPITAL |
| | ASSURANCE COMPANY |
| 28 | GENERAL ELECTRIC PROFESSIONAL |
| | SERVICES COMPANY |

7

| | | |
|---|---|---|
| 1 | | GENERAL ELECTRIC TRADING COMPANY |
| 2 | IMO INDUSTRIES, INC. | DeLAVAL TURBINE INC. |
| 3 | | WARREN PUMPS, INC. |
| | | COLFAX CORPORATION |
| 4 | | IMO PUMP |
| 5 | | IMO AB |
| | | ALLWEILER HOUTTUIN |
| 6 | | SIEMENS AG (as successor-in-interest to DEMAG DELAVAL TURBOMACHINERY CORP.) |
| 7 | | COLFAX PUMP GROUP |
| | | COLFAX CORPORATION |
| 8 | | DeLAVAL STEAM TURBINE COMPANY |
| 9 | INGERSOLL-RAND COMPANY | INGERSOLL-RAND EQUIPMENT CORPORATION |
| 10 | | INGERSOLL-RAND TRANSPORTATION SERVICES COMPANY |
| 11 | | DRESSER-RAND |
| | | POWERWORKS |
| 12 | | TERRY STEAM TURBINE COMPANY |
| | | THERMOKING |
| 13 | | WORTHINGTON PUMP COMPANY |
| | | WHITON MACHINE COMPANY |
| 14 | | BUTTERWORTH COMPANY |
| 15 | LESLIE CONTROLS, INC. | CIRCOR INTERNATIONAL, INC. |
| 16 | THORPE INSULATION COMPANY | THE THORPE COMPANY |
| | | ASBESTOS PRODUCTS CORPORATION |
| 17 | | ASBESTOS PRODUCTS COMPANY OF SAN DIEGO |
| 18 | | PLANT INSULATION CO. |
| | | PLANT MANUFACTURING CO. |
| 19 | | THORPE PRODUCTS CO. |
| 20 | OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS CORPORATION |
| 21 | | FENCO |
| | | MARINE ENGINEERING |
| 22 | | FESCO |
| | | FIBERGLAS ENGINEERING AND SUPPLY COMPANY |
| 23 | | WILLIAM LANE COMPANY |
| 24 | | SILICARE INSULATION |
| | | ASBESTOS ENGINEERING & SUPPLY CO. |
| 25 | | OWENS-BROCKWAY GLASS CONTAINERS |
| 26 | | BROCKWAY GLASS CO., INC. |
| | | OWENS-ILLINOIS GLASS COMPANY |
| 27 | | |
| 28 | THORPE INSULATION COMPANY | FARWEST INSULATION CONTRACTING |
| | | THE THORPE COMPANY |

8

COMPLAINT

|  |  |
|---|---|
| | ASBESTOS PRODUCTS CORPORATION |
| | ASBESTOS PRODUCTS COMPANY OF SAN |
| | DIEGO |
| | PLANT INSULATION CO. |
| | PLANT MANUFACTURING CO. |
| | THORPE PRODUCTS CO. |
| WARREN PUMPS LLC | |
| | WARREN PUMPS INC. |
| | WARREN PUMPS-HOUDAILLE, INC. |
| | COLFAX PUMP GROUP |
| | ALWEILER AG |
| | HOUTTUIN BV |
| | IMO PUMP |
| | QUIMBY PUMP CO. |
| | ZENITH PUMPS |

7.     At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising a certain substance, the generic name of which is asbestos and other products containing that substance.

8.     At all times herein mentioned, Defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, Packaged, and advertised a certain substance, the generic name of which is asbestos, and other products and equipment containing said substance, in that said substance proximately caused personal injuries to users, consumers, workers, bystanders, and others, including the Plaintiffs herein (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the "exposed persons".

9.     Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the asbestos and products containing asbestos would be transported by

9

*COMPLAINT*

1 | truck, rail, ship and other common carriers, and that in the shipping process the products would

2 | break, crumble or be otherwise damaged; resulting in the release of airborne asbestos fibers, and

3 | that through such foreseeable use and/or handling "exposed persons", including Plaintiffs herein,

4 | would use or be in proximity of and exposed to said asbestos fibers.

5 |     10.    Defendants, their "alternate entities", and each of them, knew, or should have

6 | known, and intended that the aforementioned asbestos and asbestos-containing products and

7 | equipment, and/or that such products would be used for insulation, construction, plastering,

8 | fireproofing, soundproofing, automotive, aircraft, waterborne craft or ships, and/or other

9 | applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding,

10 | breaking, removal, "rip-out", and other manipulation, resulting in the release of airborne asbestos

11 | fibers, and that through such foreseeable use and/or handling "exposed persons", including

12 | Plaintiffs herein, would use or be in proximity to and exposed to said asbestos fibers.

13 |     11.    Plaintiff Edward Smith, Jr. has used, handled, or been otherwise exposed to

14 | asbestos and asbestos-containing products and equipment referred to herein in a manner that was

15 | reasonably foreseeable. Plaintiff Edward Smith, Jr.'s exposure to asbestos and

16 | asbestos-containing products occurred at various locations, including while serving in the United

17 | States Navy onboard the U.S.S. Mansfield and while working at the ARCO Wilmington

18 | California oil refinery.

19 |     12.    As a direct and proximate result of the conduct of the Defendants, their "alternate

20 | entities", and each of them, Plaintiff Edward Smith, Jr.'s exposure to asbestos and

21 | asbestos-containing products caused severe and permanent injury to the Plaintiffs, including

22 | Plaintiff Edward Smith, Jr. developing mesothelioma.

23 |     13.    Plaintiffs first learned of his mesothelioma diagnosis and that his injuries were

24 | attributable to exposure to asbestos and/or asbestos-containing products in May 2010.

25 |     14.    Plaintiffs are informed and believe, and thereon allege, that progressive lung

26 | disease, cancer and other serious diseases, including mesothelioma, are caused by inhalation of

27 | asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos

28 | and asbestos-containing products over a period of time.

COMPLAINT

15.     Plaintiff Edward Smith, Jr. suffers from malignant pleural mesothelioma, caused by an exposure to asbestos and asbestos-containing products and equipment. Plaintiff Edward Smith, Jr. was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

16.     As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities", and each of them, Plaintiff Edward Smith, Jr. has suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, throat cancer, other lung damage and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in a sum in excess of the jurisdictional limit of a limited civil case.

17.     As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities", and each of them, Plaintiff Edward Smith, Jr. has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

18.     Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

19.     Defendants, their "alternate entities", and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each Defendants' officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

20.     The herein-described conduct of said Defendants, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiffs, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

1

## SECOND CAUSE OF ACTION
2  (Strict Liability - Plaintiffs Against All Defendants)

3      21.    Plaintiffs incorporate by this reference the allegations contained paragraphs 1

4  through 6, 12 through 17, and 20 of this Complaint.

5      22.    Defendants, their "alternate entities", and each of them, knew and intended that

6  the above-referenced asbestos and asbestos-containing products would be used by the purchaser

7  or user without inspection for defects therein or in any of their component parts and without

8  knowledge of the hazards involved in such use.

9      23.    Said asbestos and asbestos-containing products were defective and unsafe for their

10  intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The

11  defect existed in the said products at the time they left the possession of the Defendants, their

12  "alternate entities," and each of them. Said products did, in fact, cause personal injuries,

13  including asbestosis, mesothelioma, other lung damage, and cancer to "exposed persons",

14  including Plaintiff Edward Smith, Jr. herein, while being used in a reasonably foreseeable

15  manner, thereby rendering the same defective, unsafe, and dangerous for use.

16      24.    "Exposed persons" did not know of the substantial danger of using said products.

17  Said dangers were not readily recognizable by "exposed persons". Said Defendants, their

18  "alternate entities", and each of them, further failed to adequately warn of the risks to which

19  Plaintiff Edward Smith, Jr. and others similarly situated were exposed.

20      25.    In researching, manufacturing, fabricating, designing, modifying, testing, or

21  failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying,

22  offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation,

23  repairing, marketing, warranting, re-branding, designing and/or manufacturing for others,

24  packaging, and advertising asbestos and asbestos-containing products and equipment,

25  Defendants, their "alternate entities", and each of them, did so with conscious disregard for the

26  safety of "exposed persons" who came in contact with said asbestos and asbestos-containing

27  products, including, but not limited to, asbestosis, mesothelioma, other lung damages, and

28  cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request

12

1    of, or with the assistance of, said Defendants, their "alternate entities", and each of them, on or

2    before 1930, and thereafter.

3       26.    On or before 1930, and thereafter, said Defendants, their "alternate entities" and

4    each of them, were aware that members of the general public and other "exposed persons", who

5    would come in contact with their asbestos and asbestos-containing products, had no knowledge

6    or information indicating that asbestos or asbestos-containing products could cause injury, and

7    said Defendants, their "alternate entities", and each of them, knew that members of the general

8    public, and other "exposed persons", who came in contact with asbestos and asbestos-containing

9    products, would assume, and in fact did assume, that exposure to asbestos and

10    asbestos-containing products was safe, when in fact said exposure was extremely hazardous to

11    health and human life.

12       27.    With said knowledge, Defendants, their "alternate entities", and each of them,

13    opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

14    offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

15    warrant, re-brand, manufacture for others, package, and advertise said asbestos and

16    asbestos-containing products without attempting to protect "exposed persons" from, or warn

17    "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

18    asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn

19    "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

20    asbestos-containing products, Defendants, their "alternate entities", and each of them,

21    intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and

22    consciously and actively concealed and suppressed said knowledge from "exposed persons" and

23    members of the general public, thus impliedly representing to "exposed persons" and members of

24    the general public that asbestos and asbestos-containing products were safe for all reasonably

25    foreseeable uses. Defendants, their "alternate entities", and each of them, engaged in this conduct

26    and made these implied representations with the knowledge of the falsity of said implied

27    representations.

28       28.    The above-referenced conduct of said Defendants, their "alternate entities", and

1  each of them, was motivated by the financial interest of said Defendants, their "alternate

2  entities", and each of them, in the continuing, uninterrupted research, design, modification,

3  manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

4  sale, inspection, installation, contracting for installation, repair, marketing, warranting,

5  re-branding, manufacturing for others, packaging and advertising of asbestos and

6  asbestos-containing products. In pursuance of said financial motivation, Defendants, their

7  "alternate entities", and each of them, consciously disregarded the safety of "exposed persons"

8  and in fact were consciously willing and intended to permit asbestos and asbestos-containing

9  products to cause injury to "exposed persons" and induced persons to work with and be exposed

10 thereto, including Plaintiff Edward Smith, Jr.

11      ·29.  · Plaintiffs allege that Defendants, their "alternate entities", and each of them,

12 impliedly warranted their asbestos and asbestos-containing products and equipment to be safe for

13 their intended use, but their asbestos and asbestos-containing products created an unreasonable of

14 bodily harm to "exposed persons."

15      30.    Plaintiffs further allege that Plaintiff Edward Smith, Jr.'s injuries are a result of

16 cumulative exposure to asbestos and various asbestos-containing products and equipment

17 manufactured, fabricated, inadequately researched, designed, modified, inadequately tested,

18 labeled, assembled, distributed, leased, brought, offered for sale, supplied, sold, inspected,

19 serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

20 manufactured for others, packaged and advertised by the aforementioned Defendants, their

21 "alternate entities", and each of them, that Plaintiffs cannot identify precisely which asbestos or

22 asbestos-containing products caused and/or contributed to the injuries complained of herein.

23 Among the injurious exposures alleged herein are Plaintiff Edward Smith, Jr.'s exposures to

24 asbestos supplied with, affixed and/or added to, and/or installed on the following equipment ·

25 aboard the U.S. Naval vessel USS Mansfield or at the ARCO Wilmington California oil refinery:

26 Byron Jackson pumps; Buffalo pumps; Crane valves; Gardner Denver pumps and air

27 compressors; General Electric turbines; DeLaval pumps; Northern pumps; Leslie valves; Warren

28 pumps, Westinghouse valves, pumps, forced draft blowers and compressors; Worthington pumps

14

COMPLAINT

1   designed by IMO Industries, Inc., and Ingersoll-Rand compressors, and Bath Iron Works boilers,

2   among others.

3       31.   Plaintiff Edward Smith, Jr. relied upon Defendants, their "alternate entities", and

4   each of their representations, lack of warnings, and implied warranties of the fitness of asbestos

5   and asbestos-containing products. As a direct, foreseeable, and proximate result thereof,

6   Plaintiffs have been injured permanently as alleged herein.

7       32.   As a direct and proximate result of the actions and conduct outlined herein,

8   Plaintiff Edward Smith, Jr. has suffered the injuries and damages alleged herein.

9                      **THIRD CAUSE OF ACTION**
                (False Representation Under Restatement of Torts Section 402-B
10                        Plaintiffs Against All Defendants)

11      33.   Plaintiffs incorporate by this reference the allegations contained paragraphs 1

12   through 6, 12 through 17, and 20 of this Complaint

13      34.   At the aforementioned time when Defendants, their "alternate entities", and each

14   of them, researched, manufactured, fabricated, designed, modified, tested or failed to test,

15   inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for

16   sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

17   warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and

18   asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities",

19   and each of them, expressly and impliedly represented to members of the general public,

20   including the purchasers and users of said product, and other "exposed persons", including,

21   without limitation, Plaintiff Edward Smith, Jr. and his employers, that asbestos and

22   asbestos-containing products, were of merchantable quality, and safe for the use for which they

23   were intended.

24      35.   The purchasers and users of said asbestos and asbestos-containing products, and

25   other "exposed persons", including, without limitation, Plaintiff Edward Smith, Jr., and his

26   employers, relied upon said representations of Defendants, their "alternate entities", and each of

27   them, in the selection, purchase, and use of asbestos and asbestos-containing products.

28      36.   Said representation by Defendants, their "alternate entities", and each of them,

                                    15

1  were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and

2  asbestos-containing products and equipment were not safe for their intended use, nor were they

3  of merchantable quality as represented by Defendants, their "alternate entities", and each of them,

4  in that asbestos and asbestos-containing products and equipment have very dangerous properties

5  and defects whereby said products cause asbestosis, other lung damages, and cancer, and have

6  other defects that cause injury and damage to the users of said products and other "exposed

7  persons", thereby threatening the health and life of said persons, including Plaintiff Edward

8  Smith, Jr. herein.

9      37.  As a direct and proximate result of said false representations by Defendants, their

10  "alternate entities", and each of them, Plaintiffs sustained the injuries and damages alleged

11  herein.

12

13                            **FOURTH CAUSE OF ACTION**
   (Intentional Tort/Intentional Failure to Warn - Plaintiffs Against All Defendants)

14      38.  Plaintiffs incorporate by this reference the allegations contained paragraphs 1

15  through 6, 12 through 17, and 20 of this Complaint.

16      39.  At all times pertinent hereto, the Defendants, their "alternate entities", and each of

17  them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code

18  of the State of California, to abstain from injuring the person, property, or rights of the Plaintiffs.

19  When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities",

20  and each of them, did do the acts and omissions in violation of that duty, thereby causing injury

21  to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts falling

22  within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State

23  of California and, more specifically, included suggestions of fact which were not true and which

24  Defendants, their "alternate entities", and each of them, did not believe to be true; assertions of

25  fact which were not true and which Defendants, their "alternate entities", and each of them, had

26  no reasonable ground for believing to be true, and the suppression of fact when a duty existed to

27  disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a

28  cause of action for violation of rights of the Plaintiffs as provided for in the aforementioned Civil

                                            16

1   Code sections.

2        40.      Since on or before 1930, the Defendants, their "alternate entities", and each of

3   them, have known and have possessed the true facts of medical and scientific data and other

4   knowledge which clearly indicated that the asbestos and asbestos-containing products and

5   equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health

6   and safety of Plaintiffs, and others in Plaintiff Edward Smith, Jr.' position working in close

7   proximity with such materials. The Defendants, their "alternate entities", and each of them, have

8   known of the dangerous propensities of the aforementioned materials and products since before

9   that time. With intent to deceive Plaintiff Edward Smith, Jr., and others in Plaintiffs' position,

10  and with intent that he and such others should be and remain ignorant of such facts with intent to

11  induce Plaintiffs and such others to alter his and their positions to his and their injury and/or risk

12  and in order to gain advantages, the following acts occurred:

13              (a)     Defendants, their "alternate entities", and each of them, did not label any

14  of the aforementioned asbestos-containing materials, products, and equipment regarding the

15  hazards of such materials and products to the health and safety of Plaintiffs and others in

16  Plaintiffs' position working in close proximity with such materials until 1964, when certain of

17  such materials were labeled by some, but not all, of Defendants, their "alternate entities", and

18  each of them, since on or before 1930. By not labeling such materials, products, and equipment

19  as to their said hazards, Defendants, their "alternate entities", and each of them, caused to be

20  suggested as a fact to Plaintiffs that it was safe for Plaintiff Edward Smith, Jr. to work in close

21  proximity to such materials, when in fact it was not true; and Defendants, their "alternate

22  entities", and each of them, did not believe it to be true;

23              (b)     Defendants, their "alternate entities", and each of them, suppressed

24  information relating to the danger of use of the aforementioned materials, products, and

25  equipment by requesting the suppression of information to the Plaintiffs and the general public

26  concerning the dangerous nature of the aforementioned materials to workers, by not allowing

27  such information to be disseminated in a manner which would have given general notice to the

28  public and knowledge of the hazardous nature thereof when Defendants, their "alternate entities",

    and each of them, were bound to disclose such information;

1        (c)     Defendants, their "alternate entities", and each of them, sold the

2  aforementioned products, materials, and equipment to Plaintiff Edward Smith, Jr.' employers and

3  others without advising Plaintiff Edward Smith, Jr., his employer, and others of the dangers of

4  use of such materials to person working in close proximity thereto when Defendants, their

5  "alternate entities", and each of them, knew of such dangers, and had a duty to disclose such

6  dangers all as set forth herein. By said conduct, Defendants, their "alternate entities", and each of

7  them, caused to be positively asserted to Plaintiff Edward Smith, Jr. that which was not true and

8  that which Defendants, their "alternate entities," and each of them had no reasonable ground for

9  believing to be true, to wit: that it was safe for Plaintiff Edward Smith, Jr. to work in close

10  proximity to such materials;

11        (d)    Defendants, their "alternate entities", and each of them, suppressed from

12  Plaintiffs medical and scientific data and knowledge of the results of studies including, but not

13  limited to, the information and contents of the "Lanza Report." Although bound to disclose it,

14  Defendants, their "alternate entities", and each of them, influenced A. J. Lanza, M.D. to change

15  his report, the altered version of which was published in Public Health Reports, Volume 50, at

16  page 1, in 1935, thereby causing Plaintiffs and others to be and remain ignorant thereof.

17  Defendants, their "alternate entities", and each of them, caused Asbestos Magazine, a widely

18  disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice

19  of danger to the users thereof;

20        (e)     Defendants, their "alternate entities", and each of them, belonged to,

21  participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene

22  Foundation and other industry organizations which, for and on behalf of Defendants, their

23  "alternate entities", and each of them, actively promoted the suppression of information of

24  danger to users of the aforementioned products and materials, thereby misleading Plaintiff

25  Edward Smith, Jr. by the suggestions and deceptions set forth above in this cause of action. The

26  Dust Control Committee, which changed its name to the Air Hygiene Committee, of the

27  Asbestos Textile Institute, was specifically enlisted to study the subject of dust control.

28  Discussions in this committee were held many times regarding the dangers inherent in asbestos

**COMPLAINT**

1    and the dangers, which arise from the lack of control of dust, and such information was

2    suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

3              (f)      Commencing in 1930 with the study of mine and mill workers at Asbestos

4    and Thetford lines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan

5    plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and

6    each of them, knew and possessed medical and scientific information of the connection between

7    the inhalation of asbestos fibers and asbestosis, which information was disseminated through the

8    Asbestos Textile Institute and other industry organizations to all other Defendants, their

9    "alternate entities", and each of them, herein. Between 1942 and 1950, the Defendants, their

10   "alternate entities", and each of them, suggested to the public as a fact that which is not true and

11   disseminated other facts likely to mislead Plaintiffs. Such facts did mislead Plaintiffs and others

12   by withholding the afore-described medical and scientific data and other knowledge and by not

13   giving Plaintiff Edward Smith, Jr. the true facts concerning such knowledge of danger, which

14   Defendants, their "alternate entities", and each of them, were bound to disclose;

15             (g)      Defendants, their "alternate entities", and each of them, failed to warn

16   Plaintiff Edward Smith, Jr. and others of the nature of said materials which were dangerous when

17   breathed and which could cause pathological effects without noticeable trauma, despite the fact

18   that Defendants, their "alternate entities", and each of them, possessed knowledge and were

19   under a duty to disclose that said materials were dangerous and a threat to the health of persons

20   coming into contact therewith;

21             (h)      Defendants, their "alternate entities", and each of them, failed to provide

22   Plaintiff Edward Smith, Jr. with information concerning adequate protective masks and other

23   equipment devised to be used when applying and installing the products of the Defendants, their

24   "alternate entities", and each of them, despite knowing that such protective measures were

25   necessary, and that they were under a duty to disclose that such materials were dangerous and

26   would result in injury to Plaintiff Edward Smith, Jr. and others applying and installing such

27   material;

28             (i)      Defendants, their "alternate entities", and each of them, when under a duty

19

1    to so disclose, concealed from Plaintiff Edward Smith, Jr. the true nature of the industrial

2    exposure of Plaintiff Edward Smith, Jr. and knew that Plaintiff and anyone similarly situated,

3    upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis,

4    asbestosis, and/or cancer. Defendants, their "alternate entities", and each of them, also concealed

5    from Plaintiff Edward Smith, Jr. and others that harmful materials to which they were exposed

6    would cause pathological effects without noticeable trauma;

7           (j)     Defendants, their "alternate entities", and each of them, failed to provide

8    information of the true nature of the hazards of asbestos materials and that exposure to these

9    material would cause pathological effects without noticeable trauma to the public, including

10    buyers, users, and physicians employed by Plaintiff Edward Smith, Jr. so that said physicians

11    could not examine, diagnose, and treat Plaintiffs and others who were exposed to asbestos;

12    despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to

13    so inform and said failure was misleading; and

14           (k)     Defendants, their "alternate entities", and each of them, failed to provide

15    adequate information to physicians and surgeons retained by Plaintiff Edward Smith, Jr.'

16    employers and their predecessor companies, for purposes of making physical examinations of

17    Plaintiff Edward Smith, Jr. and other employees as to the true nature and risk of such materials

18    and exposure thereto when they in fact possessed such information and had a duty to disclose it.

19       41.     Defendants, their "alternate entities", and each of them, willfully failed and

20    omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiffs'

21    injuries, as required by law, and did willfully fail and omit to file a Report of Injury and

22    Occupational Disease with the State of California. Plaintiff Edward Smith, Jr. was in the class of

23    persons with respect to whom a duty was owed to file such reports and who would have been

24    protected thereby if the fact of danger from products complained of had become known.

25       42.     Defendants, their "alternate entities", and each of them, having such

26    aforementioned knowledge, and the duty to inform Plaintiff Edward Smith, Jr. about the true

27    facts, and knowing the Plaintiff Edward Smith, Jr. did not possess such knowledge and would

28    breathe such material innocently, acted falsely and fraudulently and with full intent to cause

20

1  Plaintiff Edward Smith, Jr. to remain unaware of the true facts and to induce Plaintiff Edward

2  Smith, Jr. to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710

3  of the Civil Code of the State of California .

4                            **FIFTH CAUSE OF ACTION**

5              (Loss of Consortium - Shirley Smith Against All Defendants)

6         43.    Plaintiffs incorporate by this reference the allegations contained paragraphs 1

7  through 6, 12 through 17, and 20 of this Complaint.

8         44.    Plaintiffs Edward Smith, Jr. and Shirley Smith were, during all times mentioned

9  in this complaint, and are now, husband and wife.

10        45.    Prior to Plaintiff Edward Smith, Jr.' injuries as alleged, he was able and did

11 perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Plaintiff

12 Edward Smith, Jr. has been unable to perform the necessary duties as a spouse and the work and

13 services usually performed in the care, maintenance, and management of the family home, and he

14 will be unable to perform such work, service and duties in the future. As a proximate result

15 thereof, Shirley Smith has been permanently deprived and will be deprived of the consortium of

16 her spouse, including the performance of duties, all to his damages, in an amount presently

17 unknown but which will be proved at the time of trial.

18        46.    Plaintiff Shirley Smith' discovery of this cause of her loss of consortium, as herein

19 alleged, first occurred within one year of the date this Complaint was filed.

20        47.    As a direct and proximate result of the acts of Defendants, their "alternate

21 entities", and each of them, and the severe injuries caused thereby to Plaintiff Edward Smith, Jr.,

22 as set forth in this complaint, Plaintiff Shirley Smith has suffered, and for a long period of time

23 will continue to suffer, loss of consortium, including, but not limited, loss of services, marital

24 relations, society, comfort, companionship, love and affection of said spouse, and has suffered

25 severe mental and emotional distress and general nervousness as a result thereof.

26 ///

27 ///

28 ///

1    WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate

2    entities", and each of them, as follows::

3    **FIRST CAUSE OF ACTION:**

4       1.   For compensatory damages according to proof;

5       2.   For pre-judgment interest at the legal rate on all sums awarded, from the date of

6           the breach of contract to the date of judgment;

7       3.   For punitive damages in an amount sufficient to punish Defendants and deter

8           similar future conduct;

9       4.   For costs of suit herein; and

10       5.   For such other further relief as is just and proper.

11    **SECOND CAUSE OF ACTION:**

12       1.   For compensatory damages according to proof;

13       2.   For pre-judgment interest at the legal rate on all sums awarded, from the date of

14           the breach of contract to the date of judgment;;

15       3.   For punitive damages in an amount sufficient to punish Defendants and deter

16           similar future conduct;

17       4.   For costs of suit herein; and

18       5.   For such other further relief as is just and proper.

19    **THIRD CAUSE OF ACTION:**

20       1.   For compensatory damages according to proof;

21       2.   For pre-judgment interest at the legal rate on all sums awarded, from the date of

22           the breach of contract to the date of judgment;

23       3.   For all reasonable attorneys' fees incurred in this action;

24       4.   For punitive damages in an amount sufficient to punish Defendants and deter

25           similar future conduct;

26       5.   For costs of suit herein; and

27       6.   For such other further relief as is just and proper.

28    ///

COMPLAINT

1  FOURTH CAUSE OF ACTION:

2      1.    For compensatory damages according to proof;

3      2.    For pre-judgment interest at the legal rate on all sums awarded, from the date of

4            the interference to the date of judgment;

5      3.    For punitive damages in an amount sufficient to punish Defendants and deter

6            similar future conduct;

7      4.    For costs of suit herein; and

8      5.    For such other further relief as is just and proper.

9  FIFTH CAUSE OF ACTION:

10      1.    For compensatory damages according to proof;

11      2.    For pre-judgment interest at the legal rate on all sums awarded, from the date of

12            the interference to the date of judgment;

13      3.    For punitive damages in an amount sufficient to punish Defendants and deter

14            similar future conduct;

15      4.    For costs of suit herein; and

16      5.    For such other further relief as is just and proper.

17

18  Dated:  October 19, 2010        DaCORSI, PLACENCIO & RUMSEY, P.C.

19

20                By_____

21                     Jason L. Rumsey
                   Attorney for Plaintiffs,

22                     EDWARD SMITH, JR. And
                   SHIRLEY SMITH

23

24

25

26

27

28

COMPLAINT