ADRMOP, E-Filing

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:10-cv-05968-PJH

Dizon v. General Electric Company et al
Assigned to: Hon. Phyllis J. Hamilton
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 12/30/2010
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

### Plaintiff

**Joanna Dizon**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Nellia Dizon,*
*Deceased*

represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**General Electric Company**

### Defendant

**Northrop Grumman Shipbuilding, Inc.**

### Defendant

**Bath Iron Works Corporation**
*formerly known as*
Foster Wheeler Corporation

### Defendant

**Foster Wheeler LLC**

**Defendant**

**Lockheed Shipbuilding Company**

**Defendant**

**United States Steel Corporation**
*formerly known as*
USX Corporation

**Defendant**

**Todd Shipyards Corporation**

**Defendant**

**General Dynamics Corporation**

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

| Date Filed | # | Docket Text |
|---|---|---|
| 01/04/2011 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Phyllis J. Hamilton for all further proceedings. Magistrate Judge Laurel Beeler no longer assigned to the case. Signed by the Executive Committee on January 4, 2011. (cjl, COURT STAFF) (Filed on 1/4/2011) (Entered: 01/04/2011) |
| 01/03/2011 | 6 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (ls, COURT STAFF) (Filed on 1/3/2011) (Entered: 01/03/2011) |
| 12/30/2010 | 7 | Summons Issued as to Bath Iron Works Corporation, CBS Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Lockheed Shipbuilding Company, Northrop Grumman Shipbuilding, Inc., Todd Shipyards Corporation, United States Steel Corporation. (cjl, COURT STAFF) (Filed on 12/30/2010) (Entered: 01/03/2011) |
| 12/30/2010 |  | CASE DESIGNATED for Electronic Filing. (cjl, COURT STAFF) (Filed on 12/30/2010) (Entered: 12/30/2010) |
| 12/30/2010 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 4/14/2011. Case Management Conference set for 4/21/2011 01:30 PM in Courtroom 4, 3rd Floor, Oakland. (Attachments: # 1 Standing Order)(cjl, COURT STAFF) (Filed on 12/30/2010) (Entered: 12/30/2010) |
| 12/30/2010 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Joanna Dizon. (cjl, COURT STAFF) (Filed on 12/30/2010) (Entered: 12/30/2010) |
| 12/30/2010 | 3 | NOTICE of Tag-Along Action by Joanna Dizon. (cjl, COURT STAFF) (Filed on 12/30/2010) (Entered: 12/30/2010) |

| 12/30/2010 | 2 | Certificate of Interested Entities by Joanna Dizon. (cjl, COURT STAFF) (Filed on 12/30/2010) (Entered: 12/30/2010) |
|---|---|---|
| 12/30/2010 | 1 | COMPLAINT (with jury demand) against Bath Iron Works Corporation, CBS Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Lockheed Shipbuilding Company, Northrop Grumman Shipbuilding, Inc., Todd Shipyards Corporation, United States Steel Corporation (Filing fee $350, receipt number 34611054460). Filed byJoanna Dizon. (cjl, COURT STAFF) (Filed on 12/30/2010) (Entered: 12/30/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/10/2011 10:48:38 | | |
| **PACER Login:** bp0355 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 4:10-cv-05968-PJH |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

ORIGINAL FILED

2010 DEC 30  P 12: 23

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NO. DIST. DISTRICT OF CALIFORNIA

E-filing

7

8                 **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10                 **SAN FRANCISCO DIVISION**

11 JOANNA DIZON, as Wrongful Death          )   No. _____
   Heir, and as Successor-in-Interest to    )
12 NELLIA DIZON, Deceased,                   )   CV10 5968
                                             )
13              Plaintiff,                    )   COMPLAINT FOR SURVIVAL,
                                             )   WRONGFUL DEATH - ASBESTOS;
14 vs.                                        )   DEMAND FOR JURY TRIAL
                                             )
15 GENERAL ELECTRIC COMPANY,                 )
   NORTHROP GRUMMAN                          )
16 SHIPBUILDING, INC., BATH IRON             )
   WORKS CORPORATION, FOSTER                 )
17 WHEELER LLC (FKA FOSTER                   )
   WHEELER CORPORATION),                     )
18 LOCKHEED SHIPBUILDING                     )
   COMPANY, UNITED STATES STEEL             )
19 CORPORATION (FKA USX                      )
   CORPORATION), TODD SHIPYARDS             )
20 CORPORATION, GENERAL                      )
   DYNAMICS CORPORATION, CBS                )
21 CORPORATION (FKA VIACOM INC.,            )
   FKA WESTINGHOUSE ELECTRIC               )
22 CORPORATION),                             )
                                             )
23              Defendants.                   )

24

25                          **I.**

26                       **PARTIES**

27     1.    Plaintiff in this action is the above-captioned successor-in-interest to, or the

28 personal representative of the estate of Decedent; and the personal representatives on behalf of

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1 the legal heirs, or the heirs-at-law, of the Decedent, and is all hereinafter referred to as
2 "Plaintiff."

3    2.    The person who sustained asbestos-related lung injuries and death as a result of
4 their inhalation of asbestos fibers through the person's occupational exposure to asbestos,
5 hereinafter "Decedent" is, with the date of death: NELLIA DIZON died January 4, 2010.
6 JOANNA DIZON is the spouse of NELLIA DIZON and is hereinafter referred to as "surviving
7 spouse."

8    3.    Decedent sustained an asbestos-related lung disease and death by precisely the
9 following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-
10 containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related
11 diseases is explained on **Exhibit A**, attached to plaintiff's complaint and incorporated by
12 reference herein.

13    4.    All of plaintiff's claims arise out of a similar series of occurrences: repeated
14 exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants
15 and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period
16 of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,
17 resulting in cumulative, progressive, incurable lung diseases.

18    5.    Each plaintiff claims damages for an asbestos-related disease arising from an
19 identical series of occurrences not dependent on Decedent's worksite but on the fact that
20 asbestos-containing products, when handled in the manner in which they were intended, released
21 harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The
22 allegations of plaintiff regarding the nature of Decedent's asbestos-related diseases, the nature of
23 asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all
24 identical.

25    6.    Plaintiff is informed and believes, and thereon alleges, that at all times herein
26 mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole
27 proprietorships and/or other business entities organized and existing under and by virtue of the
28 laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

1    said defendants, and each of them, were and are authorized to do and are doing business in the

2    State of California, and that said defendants have regularly conducted business in the State of

3    California.

4

**II.**

5

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

6    7.    Jurisdiction: Plaintiff JOANNA DIZON is a citizen of the State of California.

7    Plaintiff(s) are citizens of the following states, respectively: .

8    Defendants are each corporations incorporated under the laws of and having its principal

9    places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | Connecticut |
| NORTHROP GRUMMAN SHIPBUILDING, INC. | Virginia |
| BATH IRON WORKS CORPORATION | Maine |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | New Jersey |
| LOCKHEED SHIPBUILDING COMPANY | Maryland |
| UNITED STATES STEEL CORPORATION (FKA USX CORPORATION) | Pennsylvania |
| TODD SHIPYARDS CORPORATION | Washington |
| GENERAL DYNAMICS CORPORATION | Virginia |
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | New York |

22    This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

23    between citizens of different states in which the matter in controversy exceeds, exclusive of costs

24    and interest, seventy-five thousand dollars.

25    8.    Venue / Intradistrict Assignment. Venue is proper in the Northern District of

26    California and assignment to the San Francisco Division of said district is proper as a substantial

27    part of the events or omissions which give rise to the claims asserted by plaintiff herein occurred

28    ///

1  within the County of San Francisco, California, and Defendants are subject to personal

2  jurisdiction in this district at the time the action is commenced.

### III.

### CAUSES OF ACTION

#### FIRST CAUSE OF ACTION
(Negligence)

7  PLAINTIFF JOANNA DIZON COMPLAINS OF DEFENDANTS GENERAL

8  ELECTRIC COMPANY, NORTHROP GRUMMAN SHIPBUILDING, INC., BATH IRON

9  WORKS CORPORATION, FOSTER WHEELER LLC (FKA FOSTER WHEELER

10  CORPORATION), LOCKHEED SHIPBUILDING COMPANY, UNITED STATES STEEL

11  CORPORATION (FKA USX CORPORATION), TODD SHIPYARDS CORPORATION,

12  GENERAL DYNAMICS CORPORATION, CBS CORPORATION (FKA VIACOM INC., FKA

13  WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND

14  EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

15  9.     At all times herein mentioned, each of the named defendants was the successor,

16  successor in business, successor in product line or a portion thereof, assign, predecessor,

17  predecessor in business, predecessor in product line or a portion thereof, parent, holding

18  company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

19  or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

20  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

21  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

22  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

23  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

24  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

25  asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

26  called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

27  conduct of each successor, successor in business, successor in product line or a portion thereof,

28  assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

1 venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or
2 entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,
3 designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,
4 sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,
5 rebranded, manufactured for others and advertised a certain product, namely asbestos, and other
6 products containing asbestos. The following defendants, and each of them, are liable for the acts
7 of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual
8 destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each
9 of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE
10 ENTITY; defendants, and each of them, caused the destruction of plaintiff's remedy against each
11 such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading
12 role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill
13 originally attached to each such ALTERNATE ENTITY:

14 | DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
|  | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
|  | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
|  | G E INDUSTRIAL SYSTEMS |
|  | CURTIS TURBINES |
|  | PARSONS TURBINES |
|  | GENERAL ELECTRIC JET ENGINES |
| NORTHROP GRUMMAN SHIPBUILDING, INC. | AVONDALE INDUSTRIES, INC. |
|  | AVONDALE SHIPYARDS, INC. |
|  | CONTINENTAL MARITIME INDUSTRIES, INC. |
|  | EASTERN IDAHO CONSTRUCTION COMPANY |
|  | INGALLS SHIPBUILDING, INC. |
|  | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
|  | NORTH CAROLINA SHIPBUILDING |
|  | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
|  | SERVICE ENGINEERING INDUSTRIES, INC. |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| LOCKHEED SHIPBUILDING COMPANY | LOCKHEED SHIPBUILDING AND CONSTRUCTION COMPANY |
|  | PUGET SOUND BRIDGE & DRY DOCK COMPANY |
|  | PUGET SOUND BRIDGE & DREDGING COMPANY |

28 ///

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| UNITED STATES STEEL CORPORATION (FKA USX CORPORATION) | USX CORPORATION<br>CONSOLIDATED WESTERN PIPE & STEEL<br>CONSOLIDATED WESTERN STEEL CORPORATION<br>CONSOLIDATED STEEL SHIPYARD<br>WESTERN PIPE & STEEL<br>CONSOLIDATED SHIPBUILDING CORP.<br>UNITED STATES STEEL, LLC<br>U.S. STEEL SUPPLY<br>U.S. STEEL COMPANY<br>COLUMBIA STEEL COMPANY<br>AMERICAN BRIDGE & IRON<br>CARNEGIE-ILLINOIS STEEL CORPORATION<br>FEDERAL SHIPBUILDING<br>AMERICAN TRISTAR<br>OIL WELL SERVICING COMPANIES<br>OIL WELL SUPPLY COMPANY<br>MARATHON OIL CORPORATION<br>COLUMBIA-GENEVA STEEL DIVISION |
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION<br>SEATTLE-TACOMA SHIPBUILDING CORP. |
| GENERAL DYNAMICS CORPORATION | CONVAIR<br>VULTEE AIRCRAFT INC.<br>CONSOLIDATED VULTEE AIRCRAFT CORPORATION<br>ASBESTOS CORPORATION LIMITED |
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC.<br>CBS CORPORATION<br>WESTINGHOUSE ELECTRIC CORPORATION<br>WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY<br>B.F. STURTEVANT<br>KPIX TELEVISION STATION<br>PARAMOUNT COMMUNICATIONS, INC<br>GULF & WESTERN INDUSTRIES, INC.<br>NORTH & JUDD MANUFACTURING COMPANY |

10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

1    11.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and
2  each of them, singularly and jointly, negligently, and carelessly researched, manufactured,
3  fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed
4  to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,
5  supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,
6  installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
7  rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,
8  and other products containing asbestos, in that said products caused personal injuries to users,
9  consumers, workers, bystanders and others, including the Decedent herein, (hereinafter
10  collectively called "exposed persons"), while being used in a manner that was reasonably
11  foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by
12  "exposed persons."

13    12.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
14  exercise due care in the pursuance of the activities mentioned above and defendants, and each of
15  them, breached said duty of due care.

16    13.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
17  have known, and intended that the aforementioned asbestos and products containing asbestos and
18  related products and equipment, would be transported by truck, rail, ship, and other common
19  carriers, that in the shipping process the products would break, crumble, or be otherwise
20  damaged; and/or that such products would be used for insulation, construction, plastering,
21  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
22  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
23  breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the
24  release of airborne asbestos fibers, and that through such foreseeable use and/or handling
25  "exposed persons," including Decedent herein, would use or be in proximity to and exposed to
26  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
27  persons working in proximity to said products, directly or through reentrainment.
28  ///

1    14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
2  containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
3  exposure to asbestos and asbestos-containing products is on current information as set forth at
4  various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
5  herein.

6    15.    As a direct and proximate result of the acts, omissions, and conduct of the
7  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure
8  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,
9  or harm to the Decedent as set forth in **Exhibit A**, attached to plaintiff's complaint and
10  incorporated by reference herein.

11    16.    Plaintiff is informed and believes, and thereon alleges, that progressive lung
12  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
13  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
14  asbestos and asbestos-containing products over a period of time.

15    17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-
16  containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-
17  containing products presented any risk of injury and/or disease.

18    18.    As a direct and proximate result of the aforesaid conduct of the defendants, their
19  "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,
20  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact
21  amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this
22  complaint accordingly when the true and exact cost thereof is ascertained.

23    19.    As a direct and proximate result of the aforesaid conduct of the defendants, their
24  ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value
25  of medial care provided by Decedent's family members measured by, inter alia, the costs
26  associated with the hiring a registered nurse, home hospice, or other service provider, the true
27  and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to
28  amend this complaint accordingly when the true and exact costs are known or at time of trial.

20. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21. As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24. Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

25. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive damages against said defendants.

1    WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and
2    each of them, as hereinafter set forth.

3                              SECOND CAUSE OF ACTION
                              (Products Liability - Survival)
4

5    PLAINTIFF JOANNA DIZON AS SUCCESSOR-IN-INTEREST TO THE DECEDENT
6    NELLIA DIZON COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,
7    NORTHROP GRUMMAN SHIPBUILDING, INC., BATH IRON WORKS CORPORATION,
8    FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), LOCKHEED
9    SHIPBUILDING COMPANY, UNITED STATES STEEL CORPORATION (FKA USX
10   CORPORATION), TODD SHIPYARDS CORPORATION, GENERAL DYNAMICS
11   CORPORATION, CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE
12   ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM;
13   EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION
14   FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

15   26.    Plaintiff incorporates herein by reference, as though fully set forth herein, each
16   paragraph of the First Cause of Action herein.

17   27.    Defendants, their "alternate entities," and each of them, knew and intended that
18   the above-referenced asbestos and asbestos-containing products would be used by the purchaser
19   or user without inspection for defects therein or in any of their component parts and without
20   knowledge of the hazards involved in such use.

21   28.    Said asbestos and asbestos-containing products were defective and unsafe for their
22   intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
23   and/or death. The defect existed in the said products at the time they left the possession of
24   defendants, their ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause
25   personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
26   persons," including Decedent herein, while being used in a reasonably foreseeable manner,
27   thereby rendering the same defective, unsafe, and dangerous for use.

28   ///

1   29.   "Exposed persons" did not know of the substantial danger of using said products.

2   Said dangers were not readily recognizable by "exposed persons." Said defendants, their

3   ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

4   which Decedent and others similarly situated were exposed.

5   30.   In researching, manufacturing, fabricating, designing, modifying, testing or failing

6   to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

7   sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

8   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

9   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

10   and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

11   did so with conscious disregard for the safety of "exposed persons" who came in contact with

12   said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

13   ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

14   death resulting from exposure to asbestos or asbestos-containing products, including, but not

15   limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part,

16   from scientific studies performed by, at the request of, or with the assistance of, said defendants,

17   their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

18   defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

19   31.   On or before 1930, and thereafter, said defendants, their ALTERNATE

20   ENTITIES and each of them, were aware that members of the general public and other "exposed

21   persons," who would come in contact with their asbestos and asbestos-containing products, had

22   no knowledge or information indicating that asbestos or asbestos-containing products could

23   cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

24   members of the general public and other "exposed persons," who came in contact with asbestos

25   and asbestos-containing products, would assume, and in fact did assume, that exposure to

26   asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

27   hazardous to health and human life.

28   ///

32. With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent.

///

1     34.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE

2  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

3  products, to be safe for their intended use, but that their asbestos and asbestos-containing

4  products, created an unreasonable risk of bodily harm to exposed persons.

5     35.    Plaintiff relied upon defendants', their ALTERNATE ENTITIES, and each of their

6  representations, lack of warnings, and implied warranties of fitness of asbestos and their

7  asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent

8  suffered permanent injury and death as alleged herein.

9     36.    As a direct and proximate result of the actions and conduct outlined herein,

10  Decedent have suffered the injuries and damages herein alleged.

11     WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities", and

12  each of them, as hereinafter set forth.

13

## THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

14

15     PLAINTIFF JOANNA DIZON, AS WRONGFUL DEATH HEIR, AND AS

16  SUCCESSOR-IN-INTEREST TO NELLIA DIZON DECEASED, AND PLAINTIFF(S) AS

17  LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC

18  COMPANY, NORTHROP GRUMMAN SHIPBUILDING, INC., BATH IRON WORKS

19  CORPORATION, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION),

20  LOCKHEED SHIPBUILDING COMPANY, UNITED STATES STEEL CORPORATION

21  (FKA USX CORPORATION), TODD SHIPYARDS CORPORATION, GENERAL

22  DYNAMICS CORPORATION, CBS CORPORATION (FKA VIACOM INC., FKA

23  WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND

24  EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE

25  OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

26     37.    Plaintiff incorporates by reference each paragraph contained within the First

27  Cause of Action as though fully set forth herein.

28  ///

1    38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth
2    above.

3    39.    The individuals set forth as heirs constitute all of the surviving heirs of the
4    Decedent.

5    40.    As a direct and proximate result of the conduct of the defendants, their
6    ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-
7    containing products caused Decedent to develop diseases from which condition Decedent died.
8    Plaintiff was unaware that the death caused by asbestos-related disease until within one year of
9    filing the complaint.

10    41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the
11    surviving spouse.

12    42.    As a direct and proximate result of the conduct of defendants, and each of them,
13    and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss
14    of care, society, comfort, attention, services, and support of Decedent all to the damage of
15    Decedent's heirs.

16    43.    As a further direct and proximate result of the conduct of defendants, and each of
17    them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount
18    currently not ascertained.

19    WHEREFORE, plaintiff prays judgment against defendants, and each of them, as
20    hereinafter set forth.

21                                    FOURTH  CAUSE OF ACTION
                                    (Products Liability - Wrongful Death)
22

23    PLAINTIFF JOANNA DIZON, AS WRONGFUL DEATH HEIR, AND AS
24    SUCCESSOR-IN-INTEREST TO NELLIA DIZON DECEASED, AND PLAINTIFF(S)  AS
25    LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC
26    COMPANY, NORTHROP GRUMMAN SHIPBUILDING, INC., BATH IRON WORKS
27    CORPORATION, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION),
28    LOCKHEED SHIPBUILDING COMPANY, UNITED STATES STEEL CORPORATION

1  (FKA USX CORPORATION), TODD SHIPYARDS CORPORATION, GENERAL

2  DYNAMICS CORPORATION, CBS CORPORATION (FKA VIACOM INC., FKA

3  WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND

4  EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT

5  CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS

6  FOLLOWS:

7      44.     Plaintiff incorporates herein by reference, as though fully set forth herein, each

8  paragraph of the First, Second and Third Causes of Action herein.

9      45.     As a direct and proximate result of the conduct of defendants, and each of them,

10  Decedent's heirs have sustained the injuries and damages previously alleged.

11      WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

12  each of them, as hereinafter set forth.

13                                  **IV.**

14                          **DAMAGES AND PRAYER**

15      WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

16  each of them in an amount to be proved at trial in each individual case, as follows:

17      (a)     For plaintiff's general damages according to proof;

18      (b)     For plaintiff's loss of income, wages and earning potential according to proof;

19      (c)     For plaintiff's medical and related expenses according to proof;

20      (d)     For plaintiff's cost of suit herein;

21      (e)     For exemplary or punitive damages according to proof;

22      (f)     For damages for fraud according to proof; and

23  ///

24  ///

25  ///

26

27

28

1    (g)    For such other and further relief as the Court may deem just and proper, including

2    costs and prejudgment interest.

3    Dated:   1/28/10                              BRAYTON❖PURCELL LLP

4

5                                                  By:

6                                                      David R. Donadio
                                                       Attorneys for Plaintiff

7

8

9                                    JURY DEMAND

10    Plaintiff hereby demands trial by jury of all issues of this cause.

11

12    Dated:   1/28/10                             BRAYTON❖PURCELL LLP

13

14                                                 By:

15                                                     David R. Donadio
                                                       Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\113734\FED\cmp fed (wd).wpd                16
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

Decedent:  NELLIA DIZON, Deceased.

Decedent's injuries:  Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the decedent, including, but not limited to breathing difficulties and/or other lung damage.  Decedent was diagnosed with lung cancer on or about February 2005.

Decedent died on January 4, 2010.

Retirement Status:  Decedent stopped working on December 2009, due to her asbestos related illness.

Defendants:  Plaintiff contends that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.  Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Wells Fargo Bank | Wells Fargo Bank Northern California | Customer Service Representative | 1979 - 2007 |

Job Duties: Decedent worked as a customer service representative in a bank. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

PARA-OCCUPATIONAL EXPOSURE:  Decedent was exposed to asbestos through the work done by her father Alfonso Talorda, c/o Brayton❖Purcell, LLP, when plaintiff's father wore his dirty work clothes home and decedent helped her  mother shake and wash the dusty clothes along with the rest of the family's clothes.  Decedent lived with her father from 1957 to 1988 during his employment as an electrician as outlined below:

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Repair Facility Subic Bay, Philippines | Electrician | 2/3/1957 - 7/1977 |
| | AGERHOLM (DD-826) | | 2/3/1957 - 7/1977 |
| | AJAX (AR-6) | | 2/3/1957 - 7/1977 |
| | ALAMO (LSD-33) | | 2/3/1957 - 7/1977 |
| | ALFRED A. CUNNINGHAM (DD-752) | | 2/3/1957 - 7/1971 |
| | BAGLEY (DE-1069) | | 1971 - 7/1977 |
| | BLUE RIDGE (AGC-19) | | 1970 - 7/1977 |
| | BRADLEY (DE-1041) | | 1963 - 7/1977 |
| | CARPENTER (DD-825) | | 2/3/1957 - 7/1977 |
| | CHICAGO (CG-11) | | 2/3/1957 - 7/1977 |
| | COOK (DE-1083) | | 1970 - 7/1977 |
| | CORAL SEA (CV-43) | | 2/3/1957 - 7/1977 |
| | DECATUR (DD-936) | | 2/3/1957 - 7/1977 |
| | DULUTH (LPD-6) | | 1966 - 7/1977 |
| | ENHANCE (AM-437) | | 2/3/1957 - 7/1977 |
| | ESSEX (CV-9) | | 2/3/1957 - 6/1969 |
| | ESTEEM (AM-438) | | 2/3/1957 - 7/1977 |
| | GALANT (MSO-489) | | 2/3/1957 - 7/1977 |
| | GALVESTON (CLG-3) | | 1959 - 7/1977 |
| | HALEAKALA (AE-25) | | 1960 - 7/1977 |
| | HALSEY (DLG-23) | | 1962 - 7/1977 |
| | HANCOCK (CV-19) | | 2/3/1957 - 7/1977 |
| | HASSAYAMPA (AO-145) | | 2/3/1957 - 7/1977 |
| | HECTOR (AR-7) | | 2/3/1957 - 7/1977 |
| | HOLLISTER (DD-788) | | 2/3/1957 - 7/1977 |
| | ILLUSIVE (AM-448) | | 2/3/1957 - 7/1977 |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy (cont'd.) | Naval Repair Facility Subic Bay, Philippines | Electrician | 2/3/1957 - 7/1977 |
| | INFLICT (AH-456) | | 2/3/1957 - 7/1977 |
| | IWO JIMA (LPH-2) | | 1962 - 7/1977 |
| | KANSAS CITY (AOR-3) | | 1971 - 7/1977 |
| | KAWISHIWI (AO-146) | | 2/3/1957 - 7/1977 |
| | KEARSARGE (CV-33) | | 2/3/1957 - 7/1977 |
| | MARS (AFS-1) | | 1964 - 7/1977 |
| | MATHEWS (AKA-96) | | 2/3/1957 - 7/1977 |
| | MAUNA KEA (AE-22) | | 1958 - 7/1977 |
| | MISPILLION (AO-105) | | 2/3/1957 - 7/1977 |
| | MONTICELLO (LSD-35) | | 1958 - 7/1977 |
| | MOUNT MCKINLEY (AGC-7) | | 2/3/1957 - 1969 |
| | NAVASOTA (AO-106) | | 2/3/1957 - 1974 |
| | NEW JERSEY (BB-62) | | 4/1968 - 12/1969 |
| | NIAGARA FALLS (AFS-3) | | 4/1967 - 7/1977 |
| | OKINAWA (LPH-3) | | 1961 - 7/1977 |
| | ORISKANY (CV-34) | | 3/1959 - 9/1976 |
| | PAUL REVERE (APA-248) | | 2/3/1957 - 7/1977 |
| | PRAIRIE (AD-15) | | 2/3/1957 - 7/1977 |
| | REPOSE (AH-16) | | 2/3/1957 - 5/1970 |
| | RICHARD B. ANDERSON (DD-786) | | 2/3/1957 - 1975 |
| | SAN JOSE (AFS-7) | | 1971 - 7/1977 |
| | SANCTUARY (AH-17) | | 1967 - 7/1977 |
| | SOMERS (DD-947) | | 2/3/1957 - 1966 |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy (cont'd.) | Naval Repair Facility Subic Bay, Philippines | Electrician | 2/3/1957 - 7/1977 |
| | TICONDEROGA (CV-14) | | 2/3/1957 - 11/1973 |
| | TORTUGA (LSD-26) | | 2/3/1957 - 1969 |
| | TRIPOLI (LPH-10) | | 1967 - 7/1977 |
| | TULARE (AKA-112) | | 2/3/1957 - 7/1977 |
| | TURNER JOY (DD-951) | | 2/3/1957 - 7/1977 |
| | VALLEY FORGE (CV-45) | | 2/3/1957 - 1969 |
| | VANCOUVER (LPD-2) | | 1964 - 7/1977 |
| | WABASH (AOR-5) | | 1971 - 7/1977 |
| | WADDELL (DDG-24) | | 1965 - 7/1977 |
| | WALDO COUNTY (LST-1163) | | 2/3/1957 - 1970 |
| | WHITE PLAINS (AFS-4) | | 1969 - 7/1977 |
| | WICHITA (AOR-1) | | 1970 - 7/1977 |

Job Duties: Decedent's father repaired, maintained, constructed and performed trouble-shooting on electrical equipment, both onboard ships listed above and in the electrical shop. Decedent's father sailed onboard ships to test and correct discrepancies in the ventilation systems. Decedent's father worked in proximity to other trades engaged in the rip out and installation of asbestos-containing steam pipe insulation as well as welders who used asbestos-containing blankets. Decedent's father assisted in the installation of asbestos-containing pipe insulation. Decedent's father recalls supervisor Frank Collin, address unknown. Plaintiff currently contends decedent was exposed to asbestos as a result of her father's employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Bethlehem Steel Corp. San Francisco, CA | Bethlehem Shipyard San Francisco, CA | Electrician | 7/1977 - 1982 |
| | ANDREW JACKSON (SSBN-619) | | |
| | CARPENTER (DD-825) | | |
| | CHICAGO (CG-11) | | |
| | CORAL SEA (CV-43) | | |
| | ENTERPRISE (CVAN-65) | | |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Bethlehem Steel Corp. San Francisco, CA (cont'd.) | Bethlehem Shipyard San Francisco, CA | Electrician | 7/1977 - 1982 |
| | GALLANT (MSO-489) | | |
| | HALEAKALA (AE-25) | | |
| | HECTOR (AR-7) | | |
| | HEPBURN (FF-1055) | | |
| | KANSAS CITY (AOR-3) | | |
| | KILAUEA (T-AE-26) | | |
| | MARS (AFS-1) | | |
| | NIAGARA FALLS (AFS-3) | | |
| | TULARE (AKA-112) | | |
| | WABASH (AOR-5) | | |
| | WICHITA (AOR-1) | | |

Job Duties: Decedent's father repaired, maintained, constructed and performed trouble-shooting on electrical equipment, both onboard ships and in the electrical shop. Decedent's father installed and operated the stress-relief machine. Decedent's father worked in proximity to other trades engaged in the rip out of asbestos-containing steam pipe insulation. Decedent's father recalls supervisor Dave Fegan, address unknown. Plaintiff currently contends decedent was exposed to asbestos as a result of her father's employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Todd Shipyard Corp. Seattle, WA | Todd Shipyard San Francisco, CA | Electrician | 1982 - 1984 |
| | CORAL SEA (CV-43) | | |
| | ENTERPRISE (CVAN-65) | | |
| | MAUNA KEA (AE-22) | | |
| | MISPILLION (AO-105) | | |
| | ROANOKE (AOR-7) | | |

Job Duties: Decedent's father repaired, maintained, constructed and performed trouble-shooting on electrical equipment, both onboard ships and in the electrical shop. Decedent's father installed and operated the stress-relief machine. Decedent's father worked in proximity to other trades engaged in the rip out of asbestos-containing steam pipe insulation. Decedent's father recalls

1   supervisor Mark Pittman, address unknown.  Plaintiff currently contends decedent was exposed
2   to asbestos as a result of her father's employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| City & County of San Francisco Municipal Railway 160 South Va Ness Ave. San Francisco, CA | San Francisco Municipal Railway 949 Presidio Street San Francisco, CA | Electrician | 1984 -1988 |

Job Duties:  Decedent's father maintained the electrical systems of the Municipal Railway
Building at 949 Presidio Street, San Francisco, California.  Decedent's father worked inside the
attic and the boiler room.  Decedent's father also worked in the shop area in proximity to
mechanics working on asbestos-containing brakes and clutches. Decedent's father recalls
supervisor Phil Cornyn, address unknown.  Plaintiff currently contends decedent was exposed to
asbestos as a result of her father's employment.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL