MICHAEL J. PIETRYKOWSKI (SBN: 118677)
mpietrykowski@gordonrees.com
JAMES SCADDEN (SBN: 090127)
jhughes@gordonrees.com
GLEN R. POWELL (SBN 219453)
gpowell@gordonrees.com
KRISTINE M. GLOVER (SBN 245246)
kglover@gordonrees.com
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Twentieth Floor
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Defendant
AIR & LIQUID SYSTEMS CORPORATION,
successor by merger to BUFFALO PUMPS, INC

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 875 |
| KWANG SCANLON v. ASBESTOS COMPANIES, ET AL. | **NOTICE OF THE FEDERAL DISTRICT COURT'S DENIAL OF PLAINTIFFS' AMENDED MOTION FOR REMAND** |

TO THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION AND ALL PARTIES OF RECORD:

Please take notice that the Hon. Stephen Wilson, USDC Central District of California, considered an Amended Motion For Remand to State Court filed by plaintiff Kwang Scanlon. The hearing on that motion took place on December 6, 2010.

On December 15, 2010, that court issued it's Order DENYING plaintiff's Amended Motion For Remand. A copy of the Order is attached hereto as **Exhibit A.**

- 1 -

- 2 -

In light of this Order, the panel hearing to consider plaintiff's Motion to Vacate Conditional Transfer Order, scheduled for January 27, 2011, in New Orleans is MOOT.

Defendant Air & Liquid Systems, successor by merger to Buffalo Pumps, Inc. therefore requests that this Court take the panel hearing on plaintiff's Motion to Vacate Conditional Transfer Order off calendar and transfer this action to MDL 875.

Dated:  January 21, 2010            GORDON & REES LLP

By: _____
GLEN R. POWELL
Attorneys for Defendant
AIR & LIQUID SYSTEMS
CORPORATION, successor by merger to
BUFFALO PUMPS, INC.

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On **January 21, 2010**, I served the within documents:

**NOTICE OF THE FEDERAL DISTRICT COURT'S DENIAL OF PLAINTIFFS' AMENDED MOTION FOR REMAND**

☒ by electronically serving the document(s) described above via the Court Electronic Case Filing website (CM/ECF notification system) on the recipients designated on the electronic service list that is located on the Pacer website.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **January 21, 2010**, at San Francisco, California.

_Samantha Oryall_
Samantha Oryall

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KWANG SCANLON, Individually and as successor-in-interest to MICHAEL SCANLON, <br><br> Plaintiffs, <br><br> v. <br><br> ASBESTOS COMPANIES, et al., <br><br> Defendants. | CV 10-7264-SVW (JCGx) <br><br> ORDER DENYING PLAINTIFFS' AMENDED MOTION FOR REMAND TO THE SUPERIOR COURT, COUNTY OF LOS ANGELES AND STAYING ACTION [18] <br><br> JS - 6 |

## I. INTRODUCTION

On April 22, 2008, Plaintiff Michael Scanlon and his wife Kwang Scanlon filed a personal injury action in California state court against numerous defendants, including Buffalo Pumps ("Defendant"). After Michael Scanlon's death, his wife filed an Amended Complaint on August 13, 2010. The Amended Complaint alleges that Michael Scanlon's death was the result of exposure to Defendant's asbestos-containing valves and pumps while serving in the U.S. Navy from 1964 to 1966 as a destroyer tender aboard the U.S.S. Piedmont. Defendant was served with the Amended Complaint on August 30, 2010.

On September 29, 2010, Defendant filed a Notice of Removal, stating that this Court has jurisdiction pursuant to the federal officer removal statute, which creates federal jurisdiction over claims against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). On November 8, 2010, Plaintiff filed this Motion to Remand, arguing that the Court lacks subject matter jurisdiction.

## II. APPLICABLE LAW

A civil action may be removed by "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." 28 U.S.C. § 1442(a)(1). "[T]he Supreme Court has mandated a generous interpretation of the federal officer removal statute . . . [and] has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir. 2006) (internal quotations and citations omitted). Section 1442(a)(1) does not require all defendants to consent to removal. See id. ("Whereas all defendants must consent to removal under section 1441 . . . a federal office or agency defendant can unilaterally remove a case under section 1442.").

A party seeking removal under 28 U.S.C. § 1442(a)(1) must demonstrate that (i) it is a "person" within the meaning of the statute; (ii) it acted under the direction of a federal officer; (iii) it can assert a "colorable federal defense"; and (iv) there is a causal

1  nexus between its actions, taken pursuant to a federal officer's
2  directions, and the plaintiff's claims. Jefferson County, Ala. v.
3  Acker, 527 U.S. 423, 431 (1999); Mesa v. California, 489 U.S. 121, 124-
4  25, 234-35 (1989); Durham, 445 at 1253.

5

6  III. ANALYSIS
7     A.   A "Person" Within the Meaning of § 1442(a)(1)
8        As a corporation, Defendant qualifies as a "person" within the
9  meaning of § 1442(a)(1). See Fung v. Abex Corp., 816 F. Supp. 569, 572
10 (N.D. Cal. 1992); Ballenger v. Agco Corp., 2007 WL 1813821, at *2 n.4
11 (N.D. Cal. June 22, 2007).

12    B.   Acting Under the Direction of a Federal Officer
13       "To show that it was acting under the direction of a federal
14 officer, [Defendant] must show that a federal officer had direct and
15 detailed control over it." Ballenger, 2007 WL 1813821 at *3 (internal
16 quotation omitted). "If it establishes only that the relevant acts
17 occurred under the general auspices of a federal officer, such as being
18 a participant in a regulated industry, it is not entitled to remove
19 under section 1442(a)(1)." Id.; Fung, 816 at 571-72.
20       Defendant contends that it acted under the direction of the U.S.
21 Navy. Specifically, Defendant included declarations from Ret. Admiral
22 Roger Horne ("Horne Dec.") and Martin Kraft, Defendant's production
23 manager. (Kraft Dec. ¶ 1, attached as Ex. 3 to Not. of Removal).
24 Kraft states that "Buffalo Pumps has . . . made and supplied pumps for
25 Navy ships under contracts between Buffalo Pumps and shipyards and/or
26 the United States of America, specifically the Navy Department." (Id.
27 at ¶ 3.) "The manufacture of pumps for use on Navy vessels is governed
28

3

by an extensive set of general and specific federal standards and specifications . . . ." (Id. at ¶ 5.) Morever, "the Navy imposed requirements that made the pumps it procured different in fundamental ways from pumps supplied for commercial applications." (Id. at ¶ 10.) Among the various military specifications, the Navy required that "pump casings joints shall be made up using compressed asbestos sheet gaskets." (Id. at ¶ 6.)

Horne corroborates these statements in his declaration, which states, "The U.S. Navy, through several layers of authority, exercised detailed technical control over ship design, construction and repair." (Horne Dec. ¶ 7, attached as Ex. 2 to Not. of Removal.) Additionally, "the Navy dictated characteristics unique to Navy pump applications that differed from pumps sold to commercial customers, including stringent endurance requirements . . . that differed from standard commercial standards and expectations . . . ." (Id. at ¶ 12.) (internal citations omitted).

These declarations are sufficient to establish that a federal officer had "direct and detailed control" over Defendant. Thus, Defendant has shown that it acted under the direction of a federal officer.

C. **Colorable Federal Defense**

To satisfy this prong, Defendant must show that it has a colorable federal defense-it need not prove that its defense will be meritorious. Mesa, 489 U.S. at 128; Fung, 816 F. Supp. at 573. As the Supreme Court explained, "The officer need not win his case before he can have it removed." Willingham v. Morgan, 395 U.S. 402, 407 (1969).

Defendant seeks removal under the government or military contractor defense, which protects a government contractor from liability for acts done by him while complying with government specifications during execution of performance under a contract with the United States. McKay v. Rockwell Intern. Corp., 704 F.2d 444, 448 (9th Cir. 1983). The Supreme Court recognized the contractor defense in Boyle v. United Technologies Corp., 487 U.S. 500, 512 (1988), where it held that liability for design defects in military equipment could not be imposed on a private government contractor under state law where: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier, but not to the United States. This defense has been extended to "failure to warn" cases; however, it is inapplicable in the absence of evidence that the defendant's decision to not provide a warning was "in compliance with reasonably precise specifications imposed on it by the United States." Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th Cir. 1996). Where there is no conflict between requirements imposed under a federal contract and a state law duty to warn, the Court should defer to state law. Id.

### 1. Reasonably Precise Specifications

Plaintiff has cited the Ninth Circuit case In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 811 (9th Cir. 1992), which stated that the military contractor defense is unavailable in situations where the product is substantially similar to products sold to other commercial users. Plaintiff argues that in this case there is "no evidence that

the products Buffalo Pumps sold to the Navy were *any different than those sold on the open commercial market*." (Mot. at 5) (emphasis in original). Therefore, Plaintiff argues that Defendant cannot make a showing of a colorable federal defense.

Plaintiff is incorrect. Defendant *has* submitted evidence that the products supplied to the Navy were different from its other commercial products. Among the many statements made by Horne and Kraft that explain the differences, Kraft explicitly states that "the Navy imposed requirements that made the pumps it procured different in fundamental ways from pumps supplied for commercial applications." (Kraft Dec. ¶ 10.) Based on this statement, along with the other statements submitted in the declarations, it is possible to find that the Navy set forth reasonably precise specifications, such that Defendant has a basis for asserting a colorable federal defense.

**2. Conformity to Reasonably Precise Specifications**

Defendant asserts that "[a]ll pumps supplied by Buffalo Pumps to the Navy were built in accordance with the Navy specifications or other technical documentation identified in applicable contract documents." (Kraft Dec. ¶ 8.) Plaintiff makes no effort to refute this argument. Therefore, Defendant has satisfied the element at this stage.

**3. Warning by Defendant**

The third element of the military contractor defense requires that Defendant did not fail to warn the Navy of any dangers associated with asbestos that were known by Defendant but not the government. As the Supreme Court in <u>Boyle</u> noted, "[t]he third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of

6

risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability." Boyle, 487 U.S. at 512. Defendant includes a declaration from Dr. Samuel Forman, who conducted extensive asbestos-related medical research while serving in the Navy. (Forman Dec. ¶¶ 3-7, attached as Ex. 13 to Dec. of Glen Powell.) According to Dr. Forman, the Navy's knowledge concerning hazards of asbestos was state of the art, and the Navy was implementing their own programs to control the hazards. (Id. at ¶¶ 13-14, 23-25, 43-45.) Furthermore, Horne states that "Buffalo Pumps would not have been permitted to include a warning regarding asbestos in an equipment manual or on a product label." (Horne Dec. ¶ 14.) Thus, at this stage, it appears that Defendant may have had no duty to warn the Navy because the Navy was fully aware of the hazzards associated with the use of asbestos. Defendants have raised a colorable federal defense.

### D. Causal Nexus

The final prong necessary to satisfy federal officer removal requires Defendants to demonstrate a causal nexus between the claims against it and the acts it performed under color of federal office. As referenced above, Defendant has included declarations that support its argument that the Navy required the use of asbestos, Defendant complied with those specifications, and Plaintiff's injury is alleged to stem from Defendant's use of asbestos. Defendant has also included declarations to support its defense that it was not permitted to include warnings with its products and that Defendant did not have any greater knowledge about the dangers of asbestos than the Navy. (Horne Dec. ¶ 14.) Plaintiff makes no attempt to refute these arguments.

7

Therefore, at this stage in the proceedings, Defendant has made an adequate showing that there is a causal nexus between Plaintiff's claims and Defendant's acts performed under the direction of the Navy. Having satisfied the four-part test under 28 U.S.C. § 1442(a)(1), Defendant has shown that removal is proper.

IV.  CONCLUSION

Plaintiff's Motion to Remand is DENIED. This case is STAYED pending the completion of the Multidistrict Litigation currently before the United States District Court for the Eastern District of Pennsylvania.

IT IS SO ORDERED.

DATED: December 15, 2010

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE