# U.S. District Court
## District of South Carolina (Aiken)
## CIVIL DOCKET FOR CASE #: 1:10-cv-03202-ASB
## Internal Use Only

Brown v. Owens-Illinois Inc et al                    Date Filed: 12/17/2010
Assigned to: Unassigned - ASB                        Jury Demand: None
Cause: 28:1332 Diversity-Asbestos Litigation         Nature of Suit: 368 P.I. : Asbestos
                                                     Jurisdiction: Diversity

**Plaintiff**

**Ida Inez Brown**                    represented by    **Marion C Fairey , Jr**
                                                        Speights and Runyan
                                                        PO Box 685
                                                        Hampton, SC 29924
                                                        803-943-4444
                                                        Fax: 803-943-4599
                                                        Email: bfairey@embarqmail.com
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Owens-Illinois Inc**
*a Delaware Corporation*

**Defendant**

**EI Du Pont De Nemours and Company**    represented by    **Dell P Chappell**
*a Delaware Corporation*                                   Nelson Mullins Riley and Scarborough
                                                           PO Box 11070
                                                           Columbia, SC 29211
                                                           803-255-9428
                                                           Fax: 803-255-9080
                                                           Email: dell.chappell@nelsonmullins.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Lucile H Cohen**
                                                           Nelson Mullins Riley and Scarborough
                                                           (Cola)
                                                           PO Box 11070
                                                           Columbia, SC 29211
                                                           803-255-9332
                                                           Email: lucie.cohen@nelsonmullins.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael Woodrow Hogue**
                                                           Nelson Mullins Riley and Scarborough

PO Box 11070
Columbia, SC 29211
803-799-2000
Fax: 803-256-7500
Email: michael.hogue@nelsonmullins.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Covil Corporation**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/17/2010 | 1 | NOTICE OF REMOVAL from Barnwell County Court of Common Pleas, case number 2010-cp-06-368. (Filing fee $ 350 receipt number 0420-3107876), filed by EI Du Pont De Nemours and Company. (Attachments: # 1 Exhibit A - Hagen V Benjamin Foster Co, # 2 Exhibit B - Owens Illinois Inc Consent to Removal, # 3 Exhibit C - State Record Process Pleadings and Orders copies)(gpre, ) (Entered: 12/20/2010) |
| 12/17/2010 | 2 | Local Rule 26.01 Answers to Interrogatories by EI Du Pont De Nemours and Company.(gpre, ) (Entered: 12/20/2010) |
| 12/17/2010 | 3 | Corporate Disclosure Statement by EI Du Pont De Nemours and Company. (gpre, ) (Entered: 12/20/2010) |
| 12/20/2010 | 4 | NOTICE TO COUNSEL: Pursuant to the Judicial Filing Preferences, "All legal memoranda MUST be converted rather than scanned." Please refer to these preferences for all additional pleadings. (gpre, ) (Entered: 12/20/2010) |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | | |
|---|---|---|
| Ida Inez Brown, | ) | CIVIL ACTION NO.  1:10-cv-3202-ASB |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE |
| vs. | ) | |
| | ) | |
| Owens-Illinois, Inc. | ) | MAGISTRATE |
| a Delaware Corporation, | ) | |
| | ) | |
| E. I. DuPont Nemours and Company, | ) | |
| a Delaware Corporation | ) | |
| | ) | |
| Covil Corporation, | ) | |
| a South Carolina Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY'S NOTICE OF REMOVAL

To:  Plaintiff Ida Inez Brown, through counsel of record:

Marion C. Fairey, Jr.
The Fairey Law Firm, LLC
304 Lee Avenue
Post Office Box 661
Hampton South Carolina 29924

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1442, 1446, and

Local Civil Rule 83.IV.01, D.S.C., E. I. du Pont de Nemours and Company ("DuPont"),

incorrectly named as E. I. DuPont Nemours and Company, defendant in a civil action entitled

"Ida Inez Brown v. Owens-Illinois, Inc., et al.," Case Number 10-06-CP-368, in the Court of

Common Pleas of the Second Judicial Circuit, in and for Barnwell County, South Carolina ("the

state court action"), is removing the state court action to the U.S. District Court for South
Carolina.

Copies of this Notice of Removal are herewith served upon you as counsel of record for
the Plaintiff, and another copy of this Notice is being filed with the Clerk of the Court of
Common Pleas of the Second Judicial Circuit, in and for Barnwell County, South Carolina, in
which the state court action was originally filed, in conformity with 28 U.S.C. § 1446(d).

DuPont represents that the grounds for removal are as follows:

1.     The above-entitled action has been commenced by Plaintiff against DuPont by the
filing of a Summons and Complaint, with Case Number 10-06-CP-368, and serving the
Summons and Complaint upon DuPont on or about November 18, 2010, and this case is now
pending in the South Carolina Court of Common Pleas for Barnwell County, which is located
within the above-named Division of this Court.

2.     Pursuant to 28 U.S.C. § 1446(b), a Notice of Removal is timely when it is "filed
within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting
forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b);
see Barbour v. Int'l Union, 594 F.3d 315, 326 (4th Cir. 2010) (holding that in cases involving
multiple defendants, each defendant, once served with formal process, has thirty days to file a
notice of removal pursuant to 28 U.S.C. § 1446(b)).  DuPont received a copy of the Summons
and Complaint, which is the initial pleading that named DuPont as a party in the state court
action, on or about November 18, 2010.  Therefore, this Notice of Removal is timely filed.

3.     Plaintiff alleges in her Complaint that she was exposed to asbestos from 1952
through 1986 as a result of work performed by her spouse and children at the Savannah River
Plant. See Complaint ¶¶ 11-12. The Savannah River Plant was constructed on Federal land by

DuPont in the early 1950s and was operated by DuPont as a contractor for the United States Government until the late 1980s. See generally United States v. Livingston, 179 F. Supp. 9 (E.D.S.C. 1959), aff'd, 364 U.S. 281 (1960).

4.     In her Complaint, Plaintiff asserts various claims against DuPont, including negligence (Count I), gross negligence and intentional, willful and wanton, and reckless misconduct (Count II), negligence per se (Count III), breach of implied warranties (Count IV), fraud (Count V), and strict liability (also labeled as Count V). Her Complaint seeks both compensatory and punitive damages.

5.     Among the bases for her claims against DuPont, Plaintiff alleges that DuPont proximately caused her asbestos-related injury through DuPont's installation and maintenance of asbestos-containing materials at the Savannah River Plant, as well as through its alleged failure to remove and replace those asbestos-containing materials. See Complaint ¶¶ 13, 20, 29. In Count III of her Complaint, Plaintiff alleges that DuPont's use of asbestos-containing materials at the Savannah River Plant constituted negligence per se. See Complaint ¶¶ 33-36. In Count IV, Plaintiff alleges that DuPont failed to represent accurately to Plaintiff that its use of asbestos and asbestos-containing products at the Savannah River Plant were unfit and unsafe for use. See Complaint ¶¶ 39, 40, 42. In Count V, among other fraud allegations, Plaintiff alleges that DuPont suppressed and concealed information regarding the asbestos-containing materials used at the Savannah River Plant. See Complaint ¶¶ 47-51.

6.     DuPont is removing this action to U.S. District Court pursuant to 28 U.S.C. § 1442(a)(1), commonly referred to as Federal Officer Removal. This statute provides in pertinent part:

**§ 1442. Federal officers or agencies sued or prosecuted**

(a) A civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

7.      The application of this removal statute to asbestos personal injury cases involving United States Government contractors was recently analyzed by the U.S. District Judge, the Hon. Eduardo C. Robreno, presiding over MDL No. 875, the multi-district litigation proceeding to which all asbestos personal injury cases in the U.S. District Courts have been transferred by the MDL Panel for pre-trial proceedings. See Hagen v. Benjamin Foster Co., MDL Docket No. 875, C.A. No. 07-63346, 2010 WL 3745297 (E.D. Pa. Sept. 24, 2010), attached as **Exhibit A**.

8.      The facts regarding DuPont's construction and operation of the Savannah River Plant are described in detail in the 1959 decision of the U.S. District Court for the Eastern District of South Carolina in United States v. Livingston, supra.

9.      DuPont's removal is proper under 28 U.S.C. § 1442(a)(1) because this suit involves acts taken by "a federal officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ." DuPont is entitled to seek removal under 28 U.S.C. § 1442(a)(1) given its role as a contractor to the United States Government in connection with Plaintiff's claims of exposure to asbestos from asbestos-containing materials used in the construction and operation of the Savannah River Plant.

10.     As described in the Livingston decision, the Savannah River Plant is a large nuclear materials production facility constructed by DuPont on Federal land in the early 1950s at

4

the request of the United States Government, which DuPont agreed to do for a fee of one dollar "because it was said to be of vital importance to the security and defense of the United States." 179 F. Supp. at 16-17. DuPont thereafter operated the Savannah River Plant as a contractor for different agencies of the United States Government. Plaintiff's claims of exposure to materials used at the Savannah River Plant directly implicate the United States Government because the United States was the sole owner of the Savannah River Plant, including all asbestos-containing materials on the Plant, and exercised direct control and supervision over all activities at the Plant.

11.     DuPont's construction and operation of the Savannah River Plant, including the installation and use of asbestos-containing materials, was performed under the direction and supervision of officers of the United States Government.

12.     In light of Plaintiff's claims that DuPont caused her injuries through its installation, use, and maintenance of asbestos-containing materials at the Savannah River Plant, through its failure to remove such materials from the Savannah River Plant, and through its alleged suppression and concealment of information regarding such materials at the Savannah River Plant, there is a clear nexus between Plaintiff's claims and the work DuPont performed under the direction and supervision of Federal officers.

13.     DuPont intends to raise and rely on the government contractor defense as that defense is set forth by the United States Supreme Court in Boyle v. United Technologies Corporation, 487 U.S. 500 (1988).

14.     Accordingly, DuPont has met the requirements of removal and qualifies as a "person" acting under the authority of a federal officer as set forth in 28 U.S.C. § 1442(a)(1).

15.     As an additional basis for removal of this action to U.S. District Court, DuPont also removes this action pursuant to 28 U.S.C. § 1331 on the grounds that Plaintiff's claims

5

assert that tortious conduct occurred on and hazardous and defective materials were located on a Federal Enclave. Among other things, the asbestos-containing materials which Plaintiff alleges caused her injuries, and with regard to which she sues DuPont for negligence, negligence per se, and strict liability, were the property of the United States Government. It is well established that the U.S. District Courts have Federal question jurisdiction over tort claims that arise on Federal Enclaves. See, e.g., Durham v. Lockheed Martin, 445 F.3d 1247 (9th Cir. 2006); Mater v. Holley, 200 F.2d 123, 125 (5th Cir. 1952). The Savannah River Plant is, and has been from its inception, owned by the United States Government and located on Federal land, and qualifies as a Federal Enclave.

16.     Pursuant to the above described Federal Enclave jurisdiction, served defendant Owens-Illinois, Inc. joins this removal as evidenced by its executed Consent to Removal being filed simultaneously and attached as **Exhibit B**. Such consent is not required for purposes of Federal Officer Removal under 28 U.S.C. § 1442(a)(1).

17.     DuPont submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff.

18.     DuPont files herewith in this Court a copy of all process, pleadings, and orders served upon it in this action, which are attached as **Exhibit C**.

19.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Plaintiff and filed with the Clerk of Court of Common Pleas for the Second Judicial Circuit, Barnwell County, where this case was originally filed.

20.     If any question arises as to the propriety of the removal of this action, DuPont requests the opportunity to present a memorandum of law, as well as oral argument, and, if

necessary, additional affidavits and other evidence, in support of its position that the case is removable.

WHEREFORE, Defendant DuPont hereby removes this matter from the South Carolina Court of Common Pleas for the Second Judicial Circuit, Barnwell County, to the U.S. District Court for the District of South Carolina, Aiken Division.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:     s/Dell P. Chappell
        Michael W. Hogue
        Federal Bar No. 5696
        E-Mail: michael.hogue@nelsonmullins.com
        Dell P. Chappell
        Fed. Bar No. 7830
        E-mail: dell.chappell@nelsonmullins.com
        Lucile H. Cohen
        Federal Bar No. 10195
        E-mail: lucie.cohen@nelsonmullins.com
        Meridian / 17th Floor
        1320 Main Street
        Post Office Box 11070 (29211)
        Columbia, SC 29201
        Telephone: (803) 799-2000
        Facsimile: (803) 256-7500

ATTORNEYS FOR DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY

December 17, 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | | |
|---|---|---|
| Ida Inez Brown, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Owens-Illinois, Inc. | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| E. I. DuPont Nemours and Company, | ) | |
| a Delaware Corporation | ) | |
| | ) | |
| Covil Corporation, | ) | |
| a South Carolina Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

CERTIFICATE OF SERVICE

I certify that I have served the foregoing counsel in this action with a copy of the

document(s) hereinbelow specified by electronic filing or by U.S. Mail, postage prepaid, to the

following address(es):

Pleadings:          **DEFENDANT  E. I. DU PONT DE NEMOURS AND COMPANY'S
                    NOTICE OF REMOVAL with CERTIFICATE OF INTEREST**

Counsel Served:

Marion C. Fairey, Jr.
The Fairey Law Firm, LLC
304 Lee Avenue
Post Office Box 661
Hampton South Carolina 29924
Attorney for Plaintiff

Daniel B. White
Stephanie G. Flynn
GALLIVAN, WHITE & BOYD, P.A.
P.O. Box 10589
Greenville, SC 29603
Attorneys for Covil Corporation

Robert O. Meriwether
Nelson Mullins Riley & Scarborough, LLP
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC  29201
Attorneys for Texas Instruments Incorporated

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/Dell P. Chappell
　　　Dell P. Chappell
　　　1320 Main Street / 17th Floor
　　　Post Office Box 11070 (29211)
　　　Columbia, SC  29201
　　　(803) 799-2000

Attorneys for:  Defendant E. I. du Pont de Nemours and
Company

Columbia, South Carolina

December 17, 2010

9

# EXHIBIT A

Westlaw.

Page 1

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Donna L. HAGEN, Individually and as Executrix of the
Estate of Malcolm Hagen, Plaintiff,
v.
BENJAMIN FOSTER CO., et al., Defendants.
**Civil Action No. 07-63346.**
**MDL No. 875.**

Sept. 24, 2010.

**Background:** Executrix of deceased's estate brought
state-court products liability action against manufacturers
of asbestos-containing machinery and insulation used
aboard Navy ship, alleging failure to warn. Action was
removed to federal court and transferred as part of multi-
district litigation. Executrix moved to remand.

**Holdings:** The District Court, Eduardo C. Robreno, J.,
held that:

(1) manufacturers advanced colorable government con-
tractor defense;

(2) manufacturers were acting under federal officer; and

(3) manufacturers established causal nexus between their
conduct and executrix's action.

Motion denied.

West Headnotes

**[1] Removal of Cases 334 ⟜21**

334 Removal of Cases
  334II Origin, Nature, and Subject of Controversy
    334k21 k. Actions Against or for Acts of United
States Officers. Most Cited Cases
The federal officer removal statute, which confers juris-
diction over cases in which a federal officer is a defendant
by explicitly allowing defendants to remove such actions,
is an exception to the general principle that defendants
cannot remove lawsuits to federal court on the basis of a
federal defense. 28 U.S.C.A. § 1442(a)(1).

**[2] Removal of Cases 334 ⟜21**

334 Removal of Cases
  334II Origin, Nature, and Subject of Controversy
    334k21 k. Actions Against or for Acts of United
States Officers. Most Cited Cases
To establish subject matter jurisdiction under the federal
officer removal statute, an individual defendant must
show: (1) it is a person within the meaning of the statute;
(2) the plaintiff's claims are based upon the defendant's
conduct acting under a federal office; (3) it raises a co-
lorable federal defense; and (4) there is a causal nexus
between the claims and the conduct performed under color
of a federal office. 28 U.S.C.A. § 1442(a)(1).

**[3] Removal of Cases 334 ⟜21**

334 Removal of Cases
  334II Origin, Nature, and Subject of Controversy
    334k21 k. Actions Against or for Acts of United
States Officers. Most Cited Cases
Courts must broadly construe a defendant's ability to re-
move an action under the federal officer removal statute so
as to avoid frustrating its policy objective of having the
validity of the defense of official immunity tried in a fed-
eral court by applying a narrow, grudging interpretation.
28 U.S.C.A. § 1442(a)(1).

**[4] Products Liability 313A ⟜133**

313A Products Liability
  313AII Elements and Concepts
    313Ak132 Warnings or Instructions
      313Ak133 k. In General. Most Cited Cases

**Products Liability 313A ⟜177**

313A Products Liability
  313AII Elements and Concepts
    313Ak177 k. Government Contractors. Most Cited
Cases
A manufacturer asserting the government contractor de-
fense in a failure-to-warn action must show that the federal
government issued reasonably precise specifications cov-
ering warnings, specifications that reflect a considered
judgment about the warnings at issue.

**[5] Products Liability 313A ⟜133**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**


313A Products Liability
   313AII Elements and Concepts
      313Ak132 Warnings or Instructions
         313Ak133 k. In General. Most Cited Cases

**Products Liability 313A** 🔑 **177**

313A Products Liability
   313AII Elements and Concepts
      313Ak177 k. Government Contractors. Most Cited Cases
The government contractor defense applies in failure-to-warn actions where: (1) the federal government exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the government of the dangers in the equipment's use about which the contractor knew, but the government did not.

**[6] Removal of Cases 334** 🔑 **21**

334 Removal of Cases
   334II Origin, Nature, and Subject of Controversy
      334k21 k. Actions Against or for Acts of United States Officers. Most Cited Cases
Manufacturers of asbestos-containing machinery and insulation used aboard Navy ship advanced colorable government contractor defense to products liability action alleging failure to warn, as required for removal under federal officer removal statute; manufacturers submitted affidavits showing that Navy exercised direction and control over products created and prohibited manufacturers from including any type of warning or caution statement, and that manufacturers warned Navy of dangers in their equipment that they knew of but Navy did not. 28 U.S.C.A. § 1442(a)(1).

**[7] Removal of Cases 334** 🔑 **21**

334 Removal of Cases
   334II Origin, Nature, and Subject of Controversy
      334k21 k. Actions Against or for Acts of United States Officers. Most Cited Cases
Manufacturers of asbestos-containing machinery and insulation used aboard Navy ship were acting under federal officer, as required to remove products liability action alleging failure to warn under federal officer removal statute; Navy exercised direction and control over products created and prohibited manufacturers from including any

type of warning or caution statement. 28 U.S.C.A. § 1442(a)(1).

**[8] Removal of Cases 334** 🔑 **21**

334 Removal of Cases
   334II Origin, Nature, and Subject of Controversy
      334k21 k. Actions Against or for Acts of United States Officers. Most Cited Cases
A defendant acts under a federal officer for purposes of the federal officer removal statute where his or her actions that led to the lawsuit were based on a federal officer's direct orders or comprehensive and detailed regulations. 28 U.S.C.A. § 1442(a)(1).

**[9] Removal of Cases 334** 🔑 **21**

334 Removal of Cases
   334II Origin, Nature, and Subject of Controversy
      334k21 k. Actions Against or for Acts of United States Officers. Most Cited Cases
Manufacturers of asbestos-containing machinery and insulation used aboard Navy ship established causal nexus between their conduct in failing to provide warnings on their products and products liability action alleging failure to warn, as required to remove action under federal officer removal statute; Navy exercised direction and control over products created and prohibited manufacturers from including any type of warning or caution statement. 28 U.S.C.A. § 1442(a)(1).

Michael J. Zukowski, K & L Gates, Pittsburgh, PA, Christopher J. Keale, Sedgwick Detert Moran & Arnold LLP, Michael Alan Tanenbaum, Sedgwick Detert Moran & Arnold Esqs., Gina Calabria, Joseph A. Gallo, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Newark, NJ, Edward Michael Keating, III, Hollstein Keating Cattell Johnson & Goldstein PC, Brady L. Green, Morgan, Lewis & Bockius, Charles F. Forer, Eckert Seamans Cherin & Mellott LLC, Daniel J. Ryan, Jr., Joshua D. Scheets, Joan P. Depfer, Marshall, Dennehey, Warner, Coleman & Goggin, P.C., Barbara K. Gotthelf, McCarter & English, Theresa M. Mullaney, Kent & McBride PC, Frank C.B. Friestedt, Joshua H. Beisler, McGivney & Kluger, P.C., Tracey M. McDevitt, Reilly, Janiczek & Mcdevitt, P.C., Philadelphia, PA, Lisa M. Pascarella, Pehlivanian Braaten & Pascarella, Manasquan, NJ, John J. Fanning, Raghu N. Bandlamudi, Cullen and Dykman Bleakley Platt LLP, Brooklyn, NY, for Defendants.

MEMORANDUM

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

1:10-cv-03202-ASB   Date Filed 12/17/10   Entry Number 1   Page 4 of 15
Case MDL No. 875   Document 6673.1   Filed 01/27/11   Page 15 of 47

Page 3

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

EDUARDO C. ROBRENO, District Judge.

| | TABLE OF CONTENTS | | |
|---|---|---|---|
| I. | INTRODUCTION | | 2 |
| II. | BACKGROUND | | 3 |
| | A. | Plaintiff's Suit | 3 |
| | B. | Defendants' Removal and Plaintiff's Motion to Remand | 4 |
| | | 1. Affidavit of J. Thomas Schroppe | 5 |
| | | 2. Affidavit of David Hobson | 6 |
| | | 3. Affidavit of Admiral Ben J. Lehman | 7 |
| | | 4. Affidavit of Admiral Roger B. Horne | 9 |
| | | 5. Affidavit of Captain Lawrence Stilwell Betts | 9 |
| III. | LEGAL STANDARD | | 10 |
| IV. | DISCUSSION | | 14 |
| | A. | The Colorable Federal Defense Requirement | 16 |
| | | 1. Legal Standard | 16 |
| | | i. Supreme Court Decisions | 16 |
| | | ii. Lower Court Decisions | 18 |
| | | iii. Standard to be Applied | 24 |
| | | 2. Application | 27 |
| | | i. Elements of the Government Contractor Defense | 27 |
| | | ii. Applying the Defense to Defendants' Facts | 29 |
| | B. | The Acting Under Requirement | 31 |
| | C. | The Causal Nexus Requirement | 32 |
| V. | CONCLUSION | | 34 |

## I. INTRODUCTION

*1 Donna L. Hagen, individually and as executrix of the estate of Malcolm Hagen ("Plaintiff"), has moved to remand this action-which is consolidated as part of the MDL-875 asbestos products liability litigation-to New Jersey state court. Plaintiff argues the Court should remand due to lack of subject matter jurisdiction. Defendants Foster Wheeler Corporation and General Electric Com-pany (collectively, "Defendants") filed timely responses in opposition to Plaintiff's motion.

Since MDL-875 was certified by the Judicial Panel on Multidistrict Litigation (the "Panel") in 1991, thousands of individual plaintiffs have had their cases consolidated in the Eastern District of Pennsylvania for coordinated pre-trial proceedings.[FN1] A common path to consolidation in MDL-875 is removal by one or more defendants to an appropriate federal district court, followed by transfer by the Panel to the Eastern District of Pennsylvania. In many

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

of the MDL-875 cases, the jurisdictional basis for removal is the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which allows a defendant to remove a suit to federal court following a preliminary showing of a federal defense. This memorandum evaluates the contours of the showing required by Section 1442(a)(1) and concludes Defendants have sufficiently established the jurisdictional predicate to avail themselves of this forum. Thus, for the reasons set forth below, Plaintiff's motion to remand will be denied.

## II. BACKGROUND

### A. *Plaintiff's Suit*

Malcolm Hagen ("Hagen") was exposed to asbestos while working as an outside machinist in close proximity to asbestos-containing machinery and insulation aboard the U.S.S. Kitty Hawk. Hagen's responsibilities included assisting mechanics as they installed and repaired machinery aboard ships at the shipyard. Hagen worked in this capacity from 1958-1961. Plaintiff alleges that, on or around February 7, 2006, Hagen was diagnosed with mesothelioma allegedly caused by exposure to asbestos while aboard the U.S.S. Kitty Hawk.

Plaintiff filed suit on July 11, 2006 in the Superior Court of New Jersey, Middlesex County, alleging products liability claims for failure to warn against thirteen named defendants and fifty unnamed defendants. Specifically, each defendant manufacturer is alleged to have carelessly or negligently processed, manufactured, packaged, distributed, delivered and sold asbestos products without warnings.[FN2] (Compl.¶ 8.) Plaintiff further alleges that this failure to warn was the actual and proximate cause of Hagen's mesothelioma. (*Id.* ¶ 9.) On May 28, 2008, Hagen died of mesothelioma. Donna Hagen, who was already a named plaintiff in the suit, was named executrix of Hagen's estate and substituted as plaintiff in Hagen's stead.

### B. *Defendants' Removal and Plaintiff's Motion to Remand*

On October 12, 2006, Defendants removed this case to federal court under 28 U.S.C. § 1442(a)(1). As explained below, removal under Section 1442(a)(1) is only appropriate where, amongst other things, a so-called "colorable" federal defense is raised. Plaintiff, arguing removal under Section 1442(a)(1) was improper based on this standard, filed a motion to remand to state court on October 19, 2006. Before Plaintiff's motion was ruled upon, Plaintiff's case was transferred to the Eastern District of Pennsylvania

and consolidated under MDL-875. Upon transfer, Plaintiff's motion was denied without prejudice. (*See* doc. no. 2.) On June 10, 2009, Plaintiff renewed her motion to remand before this Court. (*See* doc. no. 41.)

**\*2** Defendants oppose Plaintiff's motion and submit several affidavits in opposition.[FN3] Specifically, Defendants contend these affidavits establish the subject matter jurisdiction predicate under Section 1442(a)(1) insofar as they entitle Defendants to the "government contractor defense" set forth in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Thus, the affidavits all make the same basic point: that Plaintiff's failure to warn claim against Defendants relates to the government's control over the allegedly tortious product's design. These affidavits-namely, those of (1) J. Thomas Schroppe; (2) David Hobson; (3) Admiral Ben J. Lehman; (4) Admiral Roger B. Horne, Jr.; [FN4] and (5) Captain Lawrence Stilwell Betts-are discussed in turn.[FN5]

### 1. *Affidavit of J. Thomas Schroppe*

J. Thomas Schroppe ("Schroppe") is a former employee of Foster Wheeler Corporation ("Foster") who began his career at Foster as a proposal engineer in the marine department and ultimately became President of Foster. (Schroppe Aff. ¶ 1.) Over the course of his employment, Schroppe avers that he became "personally familiar with the degree of supervision and control exercised by the Navy and its agencies in procurement contracts with Foster." (*Id.* ¶ 2.) According to Schroppe, the control exercised required Foster to comply with precise ship specifications for each individual project, as well as military specifications. (*Id.* ¶¶ 5, 6.) These specifications covered all specific components of boilers built for use by the Navy. (*Id.*)

Schroppe further avers that Foster was obliged to provide technical manuals relating to the operation of naval boilers which included safety information. (*Id.* ¶ 21.) According to Schroppe, the Navy exercised "intense direction and control" over the documents and "participated intimately in the preparation of this kind of information and exercised ... control over its contents." (*Id.*) Further, Schroppe represents that "the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy" which would not permit Foster to include "any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel." (*Id.* ¶ 22.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

*2. Affidavit of David Hobson*

David Hobson ("Hobson") is a former employee of General Electric Company ("GE") who joined GE in 1969 and worked there until his retirement in 1996. (Hobson Aff. ¶ 1.) During his tenure, he worked as the manager of Navy customer service for GE's Navy and small steam turbine business. (*Id.* ¶ 1.) In this capacity, Hobson had "frequent and extensive business dealings" with the Navy regarding the Navy's purchase and use of marine steam turbines. (*Id.* ¶ 3.) According to Hobson, all such turbines were supplied to the Navy pursuant to a contract with the Navy Sea Systems Command ("NSSC") whereby NSSC's officers supervised and specified the requirements for "[a]ll aspects of the design, performance requirements and materials used for construction." (*Id.* ¶¶ 6, 7.)

**\*3** Hobson states that any thermal insulation materials, whether or not containing asbestos, were applied to GE products after they were turned over to the Navy, and were supplied or installed by entities other than GE. (*Id.* ¶ 7.) Further, each turbine manufactured by GE was specifically and uniquely manufactured for the vessel or class of vessels which that contract pertained to. (*Id.* ¶ 10.) And, ultimately, the Navy exercised complete oversight over both the manufacture and safety testing phases of the process. (*Id.* ¶ 13-14.)

*3. Affidavit of Admiral Ben J. Lehman*

Admiral Ben J. Lehman ("Admiral Lehman") is a retired Rear Admiral of the United States Navy. (Lehman Aff. ¶ 1.) Admiral Lehman details the level of control that the Navy asserted over all aspects of the equipment that was supplied pursuant to government contracts. (*Id.* ¶ 2.) He corroborates Hobson and Schroppe's averments, emphasizing the importance of adhering to government directives. (*See id.* ¶ 6 ("I can attest that the military specifications for boilers and other equipment intended for use on vessels of the U.S. Navy ... were drafted, approved, and maintained by the U.S. Navy ... to encompass all aspects of shipboard equipment, including the material requirements.").)

In fact, Admiral Lehman states that "[m]ilitary specifications governed every significant characteristic of the equipment used on the U.S. Navy ships, including the instructions and warnings." (*Id.* ¶ 10.) "This control included the decision of which warnings should or should not be included." (*Id.*) And, according to Admiral Lehman, the Navy "would not, and could not, permit any equipment

manufacturer or supplier to interfere with the Navy's mission by placing warnings on any equipment" or accompanying instructions or manuals. (*Id.*) This, as Admiral Lehman goes on to explain, relates to Navy specifications that "specifically limited warning information to items and events dealing with the operation of equipment." (*Id.* ¶ 12.) According to Admiral Lehman, "the application or removal of insulation would [necessarily] not have been included." (*Id.*)

*4. Affidavit of Admiral Roger B. Horne*

Admiral Roger B. Horne ("Admiral Horne") worked as the chief engineer and deputy commander for NSSC, and also served as the commander of several shipyards throughout the country. (Horne Aff. ¶ 2.) Admiral Horne attests to the "level of supervision, direction and control exercised by the U.S. Navy over the design and manufacture of equipment, including boilers and auxiliary equipment ... intended for installation on Navy vessels." (*Id.* ¶ 4 .)

In particular, Admiral Horne states that "Navy specifications ... covered the nature of any communication affixed to boilers or other equipment supplied to the Navy." (*Id.* 12.) Further, Admiral Horne avers that the specifications promulgated by the Navy "governed every characteristic of the equipment used on Navy ships, including the instructions and warnings" and covered "what warnings should or should not be included." (*Id.* ¶ 13.) Finally, as to written materials provided with the equipment, Admiral Horne states that "[t]he Navy was intimately involved with and had final approval of all ... safety or hazard information and any other written information that accompanied a piece of equipment." (*Id.* ¶ 14.)

*5. Affidavit of Captain Lawrence Stilwell Betts*

**\*4** Captain Lawrence Stilwell Betts ("Captain Betts") is a medical doctor and retired U.S. Navy Captain. (Betts Aff. ¶ 1.) During his Navy career, Captain Betts was a warfare medical department officer, and became familiar with the industrial products used by the Navy in this capacity. (*Id.* ¶ 2.) From 1987 to 1989, Captain Betts was stationed on the U.S.S. Kitty Hawk-the naval vessel at issue in the instant case. (*Id.* ¶ 2.)

Captain Betts asserts that, beginning in the early 1920s, the Navy recognized that inhaling asbestos fibers in significant doses could result in pulmonary disease. (*Id.* ¶ 28.) In fact, Captain Betts avers that the Navy's knowledge of asbestos-related health hazards was unsurpassed. (*Id.* ¶ 31; *see*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

*also id.* ¶ 32 ("There was no information concerning any asbestos-containing hazard or danger posed by any asbestos-containing product applied to any marine boiler on a United States Navy ship known to a boiler manufacturer ... that was not known to the United States and the United States Navy.").) However, according to Captain Betts, the Navy continued to use asbestos aboard ships due to military necessity. (*Id.* ¶ 5.)

### III. LEGAL STANDARD

As a general matter, removal of an action from state court is only permissible to the extent that the action could have initially been brought in federal court. *See* 28 U.S.C. § 1441. Although Article III of the Constitution would permit it, *see Osborn v. Bank of the United States,* 9 Wheat. 738, 22 U.S. 738, 824, 6 L.Ed. 204 (1824) (holding Article III permits jurisdiction because "[t]he question forms an original ingredient.... Whether it be in fact relied on or not"), the original jurisdiction Congress has conferred on federal courts does not generally allow a defendant to remove a suit to federal court on the basis of a federal defense. *See Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (describing the statutory grant of federal question jurisdiction to only permit jurisdiction "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]" and that it is not enough "that the plaintiff alleges some anticipated [federal law] defense").

[1][2] The federal officer removal statute, which confers jurisdiction over cases in which a federal officer is a defendant by explicitly allowing defendants to remove such actions, is an exception to this general principle. *See Jefferson County v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."); *Mesa v. California,* 489 U.S. 121, 136, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989) (explaining that the federal officer removal statute is a "pure jurisdictional statute ... [that] grant[s] district court jurisdiction over cases in which a federal officer is a defendant"). Amongst other parties, it allows the following class of defendants to remove a state action to federal court:

*5 The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such

office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). Thus, to establish subject matter jurisdiction under Section 1442(a)(1), an individual defendant must show:

(1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124, 127 (3d Cir.1998).

Here, the applicable defense raised is the government contractor defense which, based on principles of preemption, cloaks government contractors like Defendants from ordinary state-law liability. It applies where: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle,* 487 U.S. at 512. And because the government contractor defense is the basis for invoking this Court's jurisdiction in this suit against non-government entities who furnished equipment to the military, resolution of Plaintiff's motion to remand effectively turns on how colorable Defendants' federal defense really is. Thus, although the Court considers each element required for removal separately, its analysis begins (and essentially ends) with the colorable defense requirement.[FN6]

[3] In so doing, the Court is cognizant that, unlike the analysis undertaken with respect to other removal statutes, *see Brown v. Jevic,* 575 F.3d 322, 326 (3d Cir.2009) (explaining the general rule that removal statutes "are to be strictly construed, with all doubts to be resolved in favor of remand"), the Court must broadly construe Defendants' ability to remove under Section 1442(a)(1) as to avoid frustrating its policy objective of "hav[ing] the validity of the defense of official immunity tried in a federal court" by applying a "narrow, grudging interpretation." *Willingham v. Morgan,* 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *see Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1262 (3d Cir.1994) (distinguishing the general removal standard from the standard applicable in cases

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

removed pursuant to Section 1442(a)).

With these principles in mind, the Court turns to the merits of Plaintiff's motion.

**IV. DISCUSSION**

As noted, the dispute in this case turns on whether Defendants' evidence supporting the government contractor defense suffices to meet the standard for removal under Section 1442(a)(1). Defendants assert their affidavits and supporting materials demonstrate that the Navy exercised control over the manufactured products and that, consequently, the government contractor defense precludes state-law liability for any failure to warn. On the other hand, Plaintiff claims Defendants' evidence is generic boilerplate that does not satisfy the elements for removal. In support of this contention, Plaintiff points to a series of cases rejecting Section 1442(a)(1) removal whilst considering similar-and in some instances, precisely the same-affidavits to those offered here. Defendants, in turn, point to several other cases reaching the opposite conclusion.

**\*6** At its essence, the split in authority boils down to an argument over what a defendant must proffer to defeat a plaintiff's motion for remand. <sup>FN7</sup> Beneath the surface, the divide appears to be a consequence of two clashing objectives a court facing a plaintiff's motion to remand must consider: (1) the Supreme Court's mandate to broadly construe a defendant's removal under Section 1442(a)(1); and (2) the bounds of federal subject matter jurisdiction imposed by both the Constitution and the removal statute itself. After considering these competing objectives, the Court determines that a defendant is entitled to removal under Section 1442(a)(1) where the defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense.<sup>FN8</sup> Defendants' pleading materials, including the affidavits, plainly satisfy this standard.

*A. The Colorable Federal Defense Requirement*

*1. Legal Standard*

*i. Supreme Court Decisions*

The Court's analysis begins with the colorable federal defense requirement for Section 1442(a)(1) removal, which stems from the Supreme Court's decision in *Mesa v.*

*California.* In *Mesa,* California issued criminal complaints against several employees of the United States Postal Service who sought removal to federal court under Section 1442(a)(1). 489 U.S. at 123. The government, in opposing remand, urged the Court to adopt a reading of Section 1442(a)(1) that would permit a federal officer to remove a suit to federal court without requiring the presence of a federal defense. *See id.* at 964. Citing constitutional concerns about the breadth of such an interpretation, the Court determined the statute requires a federal defense as a condition precedent to removal. *See id.* at 969 ("Adopting the Government's view would eliminate the substantive Art. III foundation of § 1442(a)(1) and unnecessarily present grave constitutional problems. We are not inclined to abandon a longstanding reading of the officer removal statute that clearly preserves its constitutionality and adopt one which raises serious constitutional doubt.").

But while *Mesa* affirmatively settled that Section 1442(a)(1) requires a colorable federal defense to effect removal under the statute, it did not clarify what defenses qualify as such. Instead, it simply described the federal defense as a "pleading requirement[ ]" that must be satisfied for removal under the statute. *Id.* at 133. Nevertheless, other Supreme Court cases elucidate the colorable defense requirement. In *Willingham v. Morgan,* for example, the Supreme Court explained the scope of Section 1442(a)(1):

> The federal officer removal statute is not 'narrow' or 'limited.' At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. One of the primary purposes of the removal statute-as its history clearly demonstrates-was to have such defenses litigated in the federal courts.

**\*7** 395 U.S. at 406-07. As the Court succinctly put it, an "officer need not win his case before he can have it removed." *Id.* at 407. Similarly, in *Arizona v. Manypenny,* the Court spoke of the Section 1442(a)(1)'s purpose of "ensur[ing] a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties" as to allow a defendant the opportunity to have his or her defense adjudicated in federal court. 451 U.S. 232, 241, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981). In *Jefferson County v. Acker,* the Court echoed the important policy of providing a federal forum in discussing the colorable federal defense requirement:

> In construing the colorable federal defense requirement, we have rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
(Cite as: 2010 WL 3745297 (E.D.Pa.))

reasons for removal is to have the validity of the defense of official immunity tried in a federal court." We therefore do not require the officer virtually to "win his case before he can have it removed."

527 U.S. at 431 (internal citations omitted) (quoting _Willingham, 395 U.S. at 407_).

Under these authorities, it is clear that the Supreme Court's treatment of Section 1442(a)(1)'s colorable defense requirement urges an expansive interpretation which allows jurisdiction to be exercised by the federal courts to the limits imposed by the statute. This interpretation, however, is necessarily tempered by the constitutional concerns that-as the _Mesa_ Court stated-might emerge in the absence of a colorable defense requirement.

ii. _Lower Court Decisions_

Lower courts have struggled in striking the balance between the breadth of Section 1442(a)(1)'s grant of jurisdiction and the constitutional limits imposed by Article III. This is illustrated by the District of Massachusetts' discussion in _Holdren v. Buffalo Pumps, Inc._, where the court granted the plaintiff's motion to remand in the face of many of the same affidavits submitted in the instant case. 614 F.Supp.2d at 139. The _Holdren_ Court did so because the evidence presented by the defendants purportedly did not show "that the Navy ever exercised its final authority in any fashion that either expressly barred or broadly preempted the inclusion of asbestos warnings." _Id._ In so holding, the _Holdren_ Court cited "the Supreme Court's admonition that Section 1442(a) should not be subject to a 'narrow, grudging interpretation,' " _id._ at 140 (quoting _Manypenny_, 451 U.S. at 242), but expressed constitutional concerns befitting a non-deferential review of whether a defendant's defense is colorable:

> As a constitutional matter, a defendant must aver something more than his status as a federal officer in order to bring his case into a federal forum. It is only the assertion of a colorable federal defense that justifies the federal court's limited Article III jurisdiction in these cases. Without this requirement, § 1442(a) would "expand[ ] the jurisdiction of the federal courts beyond the bounds established by the Constitution." Because it alone confers Article III jurisdiction, the "colorable" standard requires that a federal court carefully weigh the plausibility of the proffered defense.

*8 _Id._ at 140 (internal citations omitted) (quoting _Mesa_,

489 U.S. at 136); _see also id._ at 141 ("A colorable federal defense ... is not a requirement that may be reduced to the point of vanishing altogether."). Although not always explicit, many of the other decisions granting a plaintiff's motion to remand seem informed by similar concerns. _See, e.g., Lindenmayer_, 2010 WL 234906, at *5 ("Relaxing this standard too far ... could well err in the opposite direction-by providing a federal forum to a party whose acts were outside its federal directives." (internal marks omitted) (quoting _Holdren_, 614 F.Supp.2d at 141)).

And, in accord with these concerns over a liberalization of the standard, many courts have drawn distinctions between the class of defendants involved where removal under Section 1442(a)(1) is predicated on the government contractor defense. The _Holdren_ Court noted, for example, that "private government contractors-particularly those in failure-to-warn cases-are several degrees distant from the paradigmatic federal officer protected by 28 U.S.C. § 1442(a)(1)." 614 F.Supp.2d at 136; _see also Prewett v. Goulds Pumps (IPG)_, No. 09-0838, 2009 WL 2959877, at *3 (W.D.Wash. Sept.9, 2009) ("The situation of a private contractor asserting a government contractor defense is different because the federal interest is not as obvious.").

Thus, in applying the Supreme Court's teachings, the doctrinal conflict created by the interplay of the statute's breadth and the potential constitutional limits that lurk in the background has led courts to conflicting conclusions. For example, some courts analyzing removal under Section 1442(a)(1) equivocate between the terms "plausible" and "colorable." _See, e.g., Bennett v. MIS Corp._, 607 F.3d 1076, 1089 (6th Cir.2010) ("[A] colorable federal defense need only be plausible."); _see also United States v. Todd_, 245 F.3d 691, 693 (8th Cir.2001) ("For a defense to be considered colorable, it need only be plausible...."); _Magnin v. Teledyne Cont'l Motors_, 91 F.3d 1424, 1427 (11th Cir.1996) (explaining that a colorable defense "need only be plausible"). In doing so, however, many distinguish the showing required for removal from the ultimate evidentiary showing at trial, suggesting the colorable defense standard is not an onerous one to satisfy. [FN9] _See Bennett_, 607 F.3d at 1091 (holding defense was colorable insofar as it was an issue of first impression that had been accepted by other courts); _Todd_, 245 F.3d at 693 (deeming defense colorable because it "at the very least plausibly shields" defendants); _Marley v. Elliot Turbomachinery Co._, 545 F.Supp.2d 1266, 1271-73 (S.D.Fla.2008) (explaining a colorable defense is a plausible one, and describing it as a "low standard" that can be met even where there are disputes as to the merits of the defense). Yet other courts

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

follow the *Holdren* Court's lead and-albeit not explicitly-apply a heightened standard at the remand stage that requires courts to "carefully weigh the plausibility of the proffered defense." *Holdren,* 614 F.Supp.2d at 140. This is particularly evident upon review of the series of cases resolving the same issue in this case: namely, whether the government contractor defense colorably shields defendants from failure to warn liability for asbestos-related injuries allegedly sustained on Navy ships where the defendants contend the Navy would not have allowed any such warnings.

**\*9** Given the inability of lower courts to develop a consistent approach to the issue, it is unsurprising that the results have varied considerably even where identical or substantially similar evidentiary materials are submitted to the court.[FN10] Some, such as the *Marley* Court, have concluded that the affidavits establish a colorable defense. *See, e.g., Marley,* 545 F.Supp.2d at 1273 (holding the affidavits establish a good faith defense even though the arguments against the defense "raise a number of questions that the defendants will have to answer to ultimately prevail"); *see also Pantalone v. Aurora Pump Co.,* 576 F.Supp.2d 325, 331-32 (D.Conn.2008) ("Through the factual assertions in its notice of removal and supporting affidavits, Buffalo Pumps has met the three elements of the government-contractor defense...."). Others, however, remand on the ground that the affidavits leave too many questions open to establish a colorable federal defense:

> [T]he Court's decision rests ultimately on what is missing from the record. The defendants have submitted no evidence that the Navy expressly prohibited asbestos warnings by manufacturers; no evidence that they ever attempted to warn about asbestos on products destined for the Navy; no evidence that the Navy ever rejected any other manufacturer's proposed asbestos warning; and no evidence that defendants warned of asbestos on other, non-military equipment they produced during the same period, by contrast to the equipment they supplied to the Navy. Finally, they offer no persuasive evidence of an overall Navy-wide policy that would have conflicted with manufacturer asbestos warnings.

*Holdren,* 614 F.Supp.2d at 137; *see Lindenmayer,* 2010 WL 234906, at \*6 (holding affidavits from Captain Betts, Schroppe and Admiral Lehman did not raise a colorable defense to plaintiff's failure to warn claim because of the "absence of any effort to warn about asbestos"); *Westmiller,* 2005 WL 2850334, at \*2 (concluding an affidavit from Admiral Lehman stating "the Navy had complete control

over every aspect of each piece of equipment" and "dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings with its ships" was insufficient to establish a colorable defense). As the language in *Holdren* and like cases criticizing the lack of "persuasive evidence" of a Navy policy prohibiting warnings make clear, *Holdren,* 614 F.Supp.2d at 137, the decisions rejecting affidavits like those submitted in the instant case deem insufficient averments that the Navy would not have allowed any warnings to be made.

iii. *Standard to be Applied*

Upon review of the many thoughtful opinions and applying the Supreme Court's clear teaching that a colorable defense need not be proven at this stage of the litigation due to the broad removal right the statute creates, the Court declines to follow those courts that have seemingly required a heightened showing of a colorable federal defense. Moreover, neither the Article III concerns some courts have raised nor the fact that this particular case involves private contractors asserting the government contractor defense compels a different conclusion.

**\*10** Although the Supreme Court has expressed concerns about the constitutionality of Section 1442(a)(1) if a colorable defense was not required for removal, *see Mesa,* 489 U.S. at 969, it did not-as cases like *Holdren* suggest-expressly hold the lack of a colorable defense requirement would "expand[ ] the jurisdiction of the federal courts beyond the bounds established by the Constitution ." *Holdren,* 614 F.Supp.2d at 140 (internal marks omitted) (quoting *Mesa,* 289 U.S. at 136). Rather, it adopted a narrower interpretation of Section 1442(a)(1) to avoid resolution of this very question. *See Mesa,* 489 U.S. at 969. Thus, the Article III concerns that allegedly require the court to "carefully weigh the plausibility of the proffered defense," *Holdren,* 614 F.Supp.2d at 140, are overstated; the colorable defense requirement is a simple statutory limit on subject matter jurisdiction that may or may not be coextensive with what Article III permits.[FN11] The Court, therefore, can balance the interest in broadly construing removal under Section 1442(a)(1) against its statutory limits and any associated constitutional concerns without requiring defendants to make such a significant showing of the merits of their defense at this early stage. In any event, if it later becomes evident that the relevant facts developed in the litigation do not support jurisdiction, the Court will do what it would do in any removed case: dismiss and remand the action based on lack of subject matter jurisdiction.[FN12] *See* Fed.R.Civ.P. 12(h)(3) ("If the court de-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

termines at any time that it lacks subject matter jurisdiction, the court must dismiss the action"); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

And though it is perhaps true that the defendants in this and similar cases are not "the paradigmatic federal officer protected" by Section 1442(a)(1), *Holdren,* 614 F.Supp.2d at 136, it is axiomatic that these defendants are nevertheless protected by the statute. After all, "[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1253 (9th Cir.2006).

While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense. *Cf. Black's Law Dictionary* 282 (9th ed.2009) (defining a colorable claim as "a claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)"). It is the sufficiency of the facts stated-not the weight of the proof presented-that matters. For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose judicially created tolls on those who seek to travel on it. Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.[FN13]

2. *Application*

i. *Elements of the Government Contractor Defense*

*11 As noted, the defense relied on in this case is the government contractor defense. The government contractor defense displaces state law where "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle,* 487 U.S. at 512. Although

the *Boyle* decision applied the government contractor defense to a design defect products liability claim rather than a failure to warn claim products liability claim, courts have recognized the defense's applicability to failure to warn claims like Plaintiff's. *See, e.g., Feidt,* 153 F.3d at 127 (suggesting the district court properly considered the government contractor defense as a basis for removal of plaintiff's failure to warn claim); *see also Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 1003 (7th Cir.1996) ("[W]hen state law would otherwise impose liability for a failure to warn, that law can be displaced...."); *Tate v. Boeing Helicopters,* 55 F.3d 1150, 1157 (6th Cir.1995) (recognizing a distinction between applying the government contractor defense to design defect claims and failure to warn claims, but holding "the rationale for applying the government contractor defense to a failure to warn claim tracks the *Boyle* analysis closely").

[4][5] However, because "design defect and failure to warn claims differ practically as well as theoretically," courts have required the government approval to "transcend rubber stamping" for the defense to shield a government contractor from failure to warn liability. *Tate,* 55 F.3d at 1156, 1157. That is, "a manufacturer asserting the federal contractor defense must show that the federal government issued reasonably precise specifications covering warnings-specifications that reflect a considered judgment about the warnings at issue." *Holdren,* 614 F.Supp.2d at 143. Nevertheless, the test applied is largely derived from *Boyle:*

> (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

*Tate,* 55 F.3d at 1157; *see also Oshkosh,* 96 F.3d at 1003-04 (same).

ii. *Applying the Defense to Defendants' Facts*

[6] The Court's task, then, is to determine whether Defendants have a colorable claim that the government contractor defense shields them from liability to Plaintiff. As noted, this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants, and does not address the merits of the defense. Under this standard, it is clear that Defendants raise a colorable defense because Defendants would prevail on their defense at trial if the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

facts raised were proven.

**\*12** First, the affidavits submitted show (1) that the Navy exercised direction and control over the products created; which (2) Defendants conformed to by failing to warn. The affidavits do this by stating that Defendants would not be permitted to include "any type of warning or caution statement," (Schroppe Aff. ¶ 22), and that the applicable specifications furnished by the Navy required manufacturers to yield all oversight of the manufacture and testing phases to the Navy. (*See, e.g.,* Hobson Aff. ¶ 13-14.) This is particularly true given that the specifications "covered the nature of any communication affixed to boilers or other equipment supplied to the Navy." (Horne Aff. ¶ 12.) Indeed, according to Defendants' evidence, the Navy controlled "the decision of which warnings should or should not be included." (Lehman Aff. ¶ 10.) Therefore, to the extent the affidavits are true, it is clear that the Navy was responsible for the lack of warnings. This demonstrates the first two elements of the government contractor defense.

Second, the affidavits submitted satisfy the third element of the defense-namely, that Defendants warned the Navy of the dangers in Defendants' equipment that Defendants knew of but the Navy did not. As the language of this prong indicates, the defense does not require the contractor to warn the government where "the government knew as much or more than the defendant contractor about the hazards of the ... product." *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.,* 883 F.2d 1210, 1216 (3d Cir.1989). Captain Betts' affidavit expressly speaks to this point, stating that "[t]here was no information concerning any asbestos-containing hazard or danger posed by any asbestos-containing product applied to any marine boiler on a United States Navy ship known to a boiler manufacturer ... that was not known to the United States and the United States Navy." (Betts Aff.¶ 32.) Captain Betts made this statement based on his personal knowledge as a medical doctor and retired U.S. Navy Captain. (*Id.* ¶ 1.) It is possible that further proceedings will cast doubt on Captain Betts' claim, but-if true-Defendants would satisfy the third element of the defense insofar as they would have warned the Navy of every danger they were aware of that the Navy was unaware of. Thus, Defendants meet the third element of the government contractor defense as well, and have established a colorable federal defense that satisfies Section 1442(a)(1)'s colorable defense requirement.

*B. The Acting Under Requirement*

[7][8] The federal officer removal statute only extends removal authority to persons acting under an officer of the United States. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,* 500 U.S. 72, 80, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). A defendant acts under a federal officer where his or her actions that led to the lawsuit were based on a federal "officer's direct orders or comprehensive and detailed regulations." *Good,* 914 F.Supp. at 1128. That is, it is not enough for a defendant to show that "the relevant acts occurred under the general auspices of a federal officer." *Fung v. Abex Corp.,* 816 F.Supp. 569, 572 (N.D.Cal.1992) (internal marks omitted) (quoting *Ryan v. Dow Chem. Co.,* 781 F.Supp. 934, 947 (E.D.N.Y.1992)).

**\*13** Because a defendant's government contractor defense in a failure to warn case is only colorable if the defendant identifies facts demonstrating the government's actions "transcend rubber stamping," *Tate,* 55 F.3d at 1157, any defendant who satisfies the colorable defense requirement will necessarily meet the acting under requirement of Section 1442(a)(1) as well. That is, in cases involving assertion of the government contractor defense to a plaintiff's failure to warn suit, the burden for demonstrating the defendant acted under an officer of the United States is lower than that associated with demonstrating a colorable federal defense. *Cf. Holdren,* 614 F.Supp.2d at 149 (finding defendants satisfied the acting under requirement even though they did not meet the colorable defense requirement). Accordingly, for the same reasons the Court determined Defendants' federal defense is colorable, Defendants have also established they were acting under a federal officer as to satisfy Section 1442(a)(1)'s acting under requirement.

*C. The Causal Nexus Requirement*

[9] The final requirement for removal under Section 1442(a)(1) is that the defendant demonstrate a causal nexus between the conduct performed under federal direction and, in this case, Plaintiff's failure to warn claim. *See Mesa,* 489 U.S. at 131-34. To do so, a defendant seeking removal must "by direct averment exclude the possibility that [the defendant's action] was based on acts or conduct of his not justified by his federal duty." *Id.* at 132 (quoting *Maryland v. Soper (No. 1),* 270 U.S. 9, 33, 46 S.Ct. 185, 70 L.Ed. 449 (1926)).

Although some courts have suggested the causal nexus requirement should be more closely scrutinized than Section 1442(a)(1)'s other requirements, *see Holdren,* 614 F.Supp.2d at 149 ("[A]s a jurisdictional fact, causation is judged by a somewhat stricter 'reasonable probability'

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

standard"), it is evident that the causal nexus requirement "is closely related to evidence supporting a colorable federal defense" where a government contractor is the defendant because both elements require the "defendant [to] show that it acted at the federal government's command." *Id.* Indeed, just as the acting under analysis becomes redundant where a defendant in a government contractor case makes out a colorable federal defense, resolving the causal nexus requirement is not difficult in light of the Court's colorability determination because the causal nexus analysis is "essentially the same as [that associated with] the colorable defense requirement." [FN14] *Prewett,* 2009 WL 2959877, at *7.

As outlined above, Defendants have a colorable federal defense that any failure to warn relates to the Navy's control over the product Defendants manufactured for the government. Thus, the necessary causal connection exists because the liability Defendants face arises from their official duties, performed in accordance with a valid government contract. *See Willingham,* 395 U.S. at 409 (holding a causal nexus is established where it is shown the defendant's "relationship to [the plaintiff] derived solely from [his or her] official duties"). Therefore, the Court finds Defendants have demonstrated a causal nexus between Plaintiff's failure to warn claims and the conduct performed under color of a federal office as to satisfy Section 1442(a)(1)'s causal nexus requirement.

**V. CONCLUSION**

*14 For the foregoing reasons, Plaintiff's motion to remand will be denied. An appropriate Order will follow.

> FN1. For the most recent statistical breakdown, see U.S. District Court for the Eastern District of Pennsylvania, Asbestos Products Liability Litigation Caseload Statistics (2010), http:// www.paed.uscourts.gov/documents/MDL/MDL875/Aug2010.pdf.

> FN2. Plaintiff does not assert design defect claims.

> FN3. The Court may properly consider these materials in weighing the merits of Plaintiff's motion to remand. *See, e.g., Hilbert v. McDonnell Douglas Corp.,* 529 F.Supp.2d 187, 196 (D.Mass.2008) ("[I]n seeking to determine whether the defendants have met [the removal] burden, the Court is permitted to look beyond the

pleadings to the evidence submitted by the parties regarding the Motion to Remand.").

> FN4. Admiral Horne's affidavit was attached as an exhibit to Plaintiff's motion.

> FN5. The Court held a hearing on Plaintiff's motion to remand on December 4, 2009. Following the hearing, the Court permitted the parties to submit additional materials for the Court to review in resolving Plaintiff's motion. (*See* doc. no. 68.) Defendants' additional submissions include a copy of the relevant Military Specification manual referred to in the various affidavits. However, because the Court concludes the initial affidavits are themselves sufficient to establish that removal under Section 1442(a)(1) was proper, it is unnecessary to outline the content of any additional materials beyond those discussed in this memorandum.

> FN6. However, the Court need not address the person requirement at any length. Although some courts have held corporations are not persons under Section 1442(a)(1) based on an inappropriately narrow construction of the statute, *see Krangel v. Crown,* 791 F.Supp. 1436, 1446 (S.D.Cal.1992) (concluding corporations do not qualify as persons under Section 1442(a)(1) due to "the fact that ambiguities should be resolved against federal jurisdiction, and the strong interest of the states in adjudicating the rights and obligations of their citizens"), it is well settled that corporations such as Defendants do qualify as persons under the statute and that such non-government entities may seek removal under Section 1442(a)(1) based on the government contractor defense. *See, e.g., Good v. Armstrong World Indus., Inc.,* 914 F.Supp. 1125, 1127-28 (E.D.Pa.1996) (concluding corporation is a person under Section 1442(a)(1) and recognizing the corporation's ability to remove to federal court via the government contractor defense); *see also Holdren v. Buffalo Pumps, Inc.,* 614 F.Supp.2d 129, 142 (D.Mass.2009) (collecting authority and explaining "government contractors are entitled to seek removal under the statute").

> FN7. As noted, some cases have held that affidavits like those at issue in this case are insufficient because they are non-specific boilerplate.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

*See Lindenmayer v. Allied Packing & Supply, Inc.,* No. 09-5800, 2010 WL 234906 (N.D.Cal. Jan. 14, 2010); *Holdren,* 614 F.Supp.2d at 129; *Williams v. Gen. Elec. Co.,* 418 F.Supp.2d 610 (M.D.Pa.2005); *Westmiller v. Imo Indus., Inc.,* No. 05-945, 2005 WL 2850334 (W.D.Wash. Oct.20, 2005). Plaintiff urges that this conclusion represents an emerging trend. However, it is clear that many cases continue to find remand appropriate in such circumstances. *See Corley v. Long-Lewis, Inc.,* 688 F.Supp.2d 1315 (N.D.Ala.2010); *Kirks v. Gen. Elec. Co.,* 654 F.Supp.2d 220 (D.Del.2009); *Seigfried v. Allegheny Ludlum Corp.,* 09-125, 2009 WL 1035001 (W.D.Pa. Apr.17, 2009); *Machnik v. Buffalo Pumps, Inc.,* 506 F.Supp.2d 99 (D.Conn.2007); *Ferguson v. Lorillard Tobacco Co.,* 475 F.Supp.2d 725 (N.D.Ohio 2007); *Nesbiet v. Gen. Elec. Co.,* 399 F.Supp.2d 205 (S.D.N.Y.2005).

FN8. These facts may be cited in the answer, the notice of removal or in the response to a motion for remand. Given that the Supreme Court has referred to the colorable defense element as a "pleading requirement [ ]" and "averment," it is debatable whether a defendant must, at this stage of the proceeding, submit affidavits or other evidentiary materials to make out a colorable federal defense. *Mesa,* 489 U.S. at 133. Indeed, a defendant removing an action is generally only required to file "a notice of removal signed pursuant to Rule 11 ... containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446. However, the Court need not resolve this issue as Defendants have submitted such materials in responding to Plaintiff's motion for remand.

FN9. Indeed, the term "plausible" is generally used differently in the Section 1442(a)(1) context than in cases determining whether a complaint should be dismissed under Rule 12(b)(6) in accordance with *Twombly* and its progeny. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The latter standard, which defines plausible factual allegations as those that go beyond the speculative level, seems more exacting than that required by many courts deeming a colorable defense a plausible one when evaluating whether to grant a plaintiff's motion to remand.

FN10. As the court in *Marley v. Elliot Turbomachinery Co.* noted in considering two of the affidavits present in this case-those of Admiral Lehman and Admiral Horne-"[a]lmost identical affidavits have been filed by the defendants in lawsuits all over the country." 545 F.Supp.2d at 1273. The affidavits of Admiral Lehman and Admiral Horne submitted to this Court appear to be similar if not identical to those submitted in *Marley.* The same is true of the affidavits of Captain Betts, Schroppe and Hobson which, though not discussed in *Marley,* are considered by courts evaluating whether to remand in several cases.

FN11. Article III extends the federal judicial power to cases "arising under" federal law and those involving diversity of citizenship, and reflects the outer bounds of the district court's authority to resolve a dispute. But it is just that, for original jurisdiction may only be exercised where and to the extent Congress allows it by statute. Because the two most common statutory bases for jurisdiction-28 U.S.C. § 1331 and 28 U.S.C. § 1332, which confer jurisdiction over federal questions and actions in which there is diversity of citizenship respectively-nearly reach that afforded by Article III, it is often unnecessary to distinguish between the jurisdiction Article III allows and that Congress permits courts to exercise. Nevertheless, it is understood that Congress has not always extended original jurisdiction to the full extent permitted by Article III. *Compare, e.g., Osborn,* 22 U.S. at 824 *with Mottley,* 211 U.S. at 153.

FN12. Proceeding in this fashion is particularly appropriate in view of the limited opportunity for appellate review of remand orders. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court ... is not reviewable on appeal or otherwise...."); *Feidt,* 153 F.3d at 126-27 (concluding the court of appeals lacked jurisdiction to review the district court's remand order where defendant had removed the action under Section 1442(a)(1)).

FN13. Presumably, the merits of Defendants' defense will be tested on a motion for summary judgment or at trial. By allowing Defendants'

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)
**(Cite as: 2010 WL 3745297 (E.D.Pa.))**

defense to be resolved in this forum, the Court adheres to Section 1442(a)(1)'s clear mandate.

FN14. The similarities between the respective showings required are further demonstrated by the fact that some courts have collapsed the causal nexus and acting under prongs into one single requirement. *See, e.g., Good,* 914 F.Supp. at 1128 ("The 'acting under' language in the statute forces [the defendant] to show a causal nexus between the plaintiffs' claims and the conduct taken pursuant to direction from a federal officer.").

E.D.Pa.,2010.
Hagen v. Benjamin Foster Co.
--- F.Supp.2d ----, 2010 WL 3745297 (E.D.Pa.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | | |
|---|---|---|
| Ida Inez Brown, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Owens-Illinois, Inc. | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| E. I. DuPont Nemours and Company, | ) | **CONSENT TO REMOVAL** |
| a Delaware Corporation | ) | |
| | ) | |
| Covil Corporation, | ) | |
| a South Carolina Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Owens-Illinois herewith consents to and joins in the removal of the above matter

to the United States District Court, District of South Carolina, Aiken Division.

Respectfully submitted,

Robert O. Meriwether
Nelson Mullins Riley & Scarborough, LLP
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000
Robert.Meriwether@nelsonmullins.com

Attorneys for Owens-Illinois, Inc.

Columbia, South Carolina

12 / 17 , 2010

Case MDL No. 875   Document 6673-1   Filed 01/27/11   Page 29 of 47

# EXHIBIT C

# The Fairey Law Firm, LLC

304 Lee Avenue
Post Office Box 661
Hampton, South Carolina 29924
(803) 943-6444
(803) 943-5517 (fax)

MARION C. FAIREY, JR.

bfairey@embarqmail.com

November 15, 2010

***Via Certified Mail Restricted Delivery***
E. I. DuPont Nemours and Company
CT Corporation System
2 Office Park Court, Suit 103
Columbia, SC 29223

      Re:    Ida Inez Brown v. Owens-Illinois Corporation, a Delaware Corporation, E.I.
             DuPont Nemours and Company, a Delaware Corporation, and Covil Corporation,
             a South Carolina Corporation
             Case No. 10-06-CP-368

Dear Sir/Madam:

      Enclosed please find Summons & Complaint for service upon you as the registered agent
for E.I. DuPont Nemours and Company regarding the above referenced cases.

      Please feel free to contact me with any questions or concerns.

      With kind regards,

                        Sincerely,

                        Amber R. Adams
                        Paralegal to
                        Marion C. Fairey, Jr.

/ara
Enclosures

STATE OF SOUTH CAROLINA ) 
)          IN THE COURT OF COMMON PLEAS
)
COUNTY OF BARNWELL )
)
Ida Brown )         CIVIL ACTION COVERSHEET
                  Plaintiff(s) )
)         2010-CP - 06- 368
vs. )
)
Owens-Illinois, DuPont and Covil Corp. )
                 Defendant(s) )

| | |
|---|---|
| (Please Print) | SC Bar #:   64998 |
| Submitted By: Marion C. Fairey, Jr. | Telephone #:   (803) 943-6444 |
| Address: 304 Lee Avenue, Post Offic Box 661 | Fax #:   (803) 943-5517 |
|       Hampton, South Carolina 29924 | Other: |
| | E-mail:   bfairey@embarqmail.com |

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)
*If Action is Judgment/Settlement do not complete*

☒ JURY TRIAL demanded in complaint.     ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20___ -CP-___-___ | ☒ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☒ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
| | ☐ Transfer of Structured | ☐ Other (899) | ☐ Worker's Comp (960) |
| |    Settlement Payment Rights | | ☐ Zoning Board (970) |
| |    Application (760) | | ☐ Administrative Law Judge (980) |
| | ☐ Other (799) | | ☐ Public Service Commission (990) |

| Special/Complex /Other | | | |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | ☐ Employment Security Comm (991) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) | | |
| ☐ Other (699) | ☐ Sexual Predator (510) | | |

Submitting Party Signature: _____      Date: 11/15/2010

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

IN THE STATE OF SOUTH CAROLINA )
                             )
COUNTY OF BARNWELL      )

IN THE COURT OF COMMON PLEAS

Ida Inez Brown,                )

Case No. 10-06-CP-_36.8_

        Plaintiff,      )

     v.                   )

**SUMMONS**

Owens-Illinois, Inc.,
a Delaware Corporation,

E. I. DuPont Nemours and Company,
A Delaware Corporation,

Covil Corporation,
A South Carolina Corporation

        Defendants.

TO THE ABOVE-NAMED DEFENDANTS AND YOUR ATTORNEYS:

     YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action of which a copy is herewith served upon you, and to serve a copy of your Answer on the subscriber at his office, P. O. Box 661, Hampton, South Carolina, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the plaintiff will apply to the Court for relief demanded in the Complaint.

                         Respectfully submitted,

                         THE FAIREY LAW FIRM, LLC
                         Marion C. Fairey, Jr.
                         304 Lee Avenue
                         Post Office Box 661
                         Hampton, South Carolina 29924
                         (803) 943-6444

November 15, 2010
Hampton, South Carolina

IN THE STATE OF SOUTH CAROLINA )
                                )       IN THE COURT OF COMMON PLEAS
COUNTY OF BARNWELL              )

Ida Inez Brown,                 )       Case No. 10-06-CP- 3 6 8
                                )
            Plaintiff,          )
                                )
    v.                          )
                                )       **COMPLAINT**
                                )       **JURY TRIAL DEMANDED**
                                )
Owens-Illinois, Inc.            )
a Delaware Corporation,         )
                                )
E. I. DuPont Nemours and Company, )
a Delaware Corporation          )
                                )
Covil Corporation,              )
a South Carolina Corporation.   )
                                )
                                )
            Defendants.         )
_____)

TO THE ABOVE-NAMED DEFENDANTS AND YOUR ATTORNEYS:

Plaintiff, Ida Inez Brown, respectfully alleges as follows:

## PARTIES

1.     Plaintiff, Ida Inez Brown, is and was at all times relevant and remains a resident of the State of South Carolina.

2.     The above-named Defendants (and/or their predecessors-in-interest) are all corporations, companies or other business entities which have been and/or are now engaged in the business of mining, milling, brokering, transporting, designing, manufacturing, selling and/or distributing asbestos or asbestos-containing products. Reference to the above-named Defendants contained herein include predecessors-in-interest to the above-named Defendants. References to "asbestos products", "products" or "asbestos materials" contained herein refer to asbestos or

asbestos-containing products.

3. The Defendant Owens-Illinois is and out-of-state corporation.

4. The Defendant E. I. DuPont Nemours and Company is an out-of-state.

5. The Defendant Covil Corporation is a South Carolina Corporation.

### STATEMENT OF JURISDICTION

6. Plaintiff is a resident of the State of South Carolina.

7. The injuries complained of below occurred in whole or in part in the State of South Carolina and Barnwell County.

8. Defendants used the ports of South Carolina or the roads and other means of transportation in the State of South Carolina to transport their products into the State of South Carolina where they sold and/or distributed their products to South Carolina residents or entities for use in South Carolina.

9.    Defendants are all subject to the jurisdiction of this court in that Defendants transacted business in this state, entered into agreements or contracts in this state or carried out contracts in this state, committed tortious acts in whole or in part in this state, sent agents or employees into this state for the purposes of selling, marketing, distributing, designing or supplying asbestos or asbestos-containing products to residents of South Carolina for use in this state, and/or produced, manufactured or distributed goods with the reasonable expectation that those goods would be used in this state and the goods were used in this state.

## SUBSTANTIVE ALLEGATIONS

10.    Defendants installed, maintained, demolished, ripped out, repaired, mined, manufactured, processed, sold, distributed, brokered, marketed and/or placed into the stream of commerce asbestos and asbestos-containing products knowing that they knew were used in the State of South Carolina and that individuals such as the Plaintiff would be exposed to asbestos or asbestos-containing products.

11.    The Plaintiff's husband and children were employed at the Savannah River Site collectively through the period of time from 1952 thru 1986. During said employment, the Plaintiff's husband and children worked with and around asbestos and asbestos-containing products that were mined, manufactured, processed, sold, distributed, brokered, marketed and/or placed in the stream of commerce by the above-named Defendants.

12.    The Plaintiff would handle and launder the clothes of her husband and children after they had worked in or around asbestos or asbestos-containing materials at the Savannah River Plant and she was exposed to these materials at her home in Barnwell, South Carolina.

13.    As a direct and proximate result of the Plaintiff's exposure to asbestos and

asbestos-containing products installed, maintained, demolished, ripped out, repaired, mined, milled, brokered, designed, marketed, manufactured and/or sold by the Defendants, she developed mesothelioma -- a rare and deadly form of cancer to which there is no known cure. The Plaintiff has had significant sections of her lungs removed in an attempt to curb the spread of this deadly cancer.

### Count I: Negligence

14.    The Plaintiff incorporates each allegation as if fully set forth in this count.

15.    At all times material hereto, Defendants knew or should have known that asbestos and asbestos-containing products, in their ordinary and foreseeable uses, would release fibers and debris onto the skin and clothing of those who worked around it and that by-standers such as the Plaintiff would be exposed to asbestos fibers and debris while handling and laundering the clothes of these workers.

16.    At all times material hereto, Defendants manufactured, marketed, brokered, mined, milled, processed, distributed and/or sold asbestos products which Defendants knew, or through the exercise of reasonable care, should have known were defective and would cause injury to exposed persons such as the Plaintiff.

17.    Defendants failed to warn, or adequately or sufficiently warn, either directly or indirectly, the foreseeable users of the hazards associated with these materials or of the personal injury they could cause.

18.    Defendants failed to test or adequately test the asbestos and/or asbestos-containing products or use alternate non-asbestos products in their place.

19.    Defendants failed to represent accurately to persons such as the Plaintiff, either directly or indirectly, that asbestos and asbestos-containing products can pose a health

hazard.

20. Defendants failed to remove or recommend the removal of asbestos-containing products from the market; to undertake the responsibility to test for, and remove and replace, asbestos materials when they knew or should have known that the presence of such asbestos material in a readily-releasable form would cause personal injury to persons such as the Plaintiff.

21. Defendants at all times have failed and continue to fail to perform their continuing duties to warn, recall, and abate.

22. As a result of Defendants' conduct, the decedent suffered substantial injury and harm, and as a result of this injury and harm, will be subjected to a premature and severely painful death.

**COUNT II:**
**GROSS NEGLIGENCE AND INTENTIONAL,**
**WILLFUL AND WANTON, AND RECKLESS MISCONDUCT**

23. The Plaintiff incorporates each allegation as if fully set forth in this count.

24. At all times material hereto, Defendants knew or should have known that asbestos and/or asbestos-containing products, in their ordinary and foreseeable uses, would be carried home on the skin and clothing of laborers who worked around said products and expose by-standers such as the Plaintiff to the carcinogenic asbestos fibers while handling and laundering clothing.

25. At all times material hereto, Defendants installed, maintained, demolished ripped out, repaired, manufactured, mined, milled, brokered, marketed, designed, processed, distributed and/or sold asbestos or asbestos-containing products which Defendants knew, or through the exercise of reasonable care, should have known were defective and would cause

serious, debilitating and deadly diseases in those persons exposed to said materials.

26.  Defendants failed to warn, or adequately or sufficiently warn, either directly or indirectly, the foreseeable users of the hazards of these materials.

27.  Defendants failed to test or adequately test the asbestos and/or asbestos-containing products or use alternate non-asbestos products in their place.

28.  Defendants failed to represent accurately to decedent, either directly or indirectly, that asbestos as used in the Defendants' asbestos products could pose a health hazard whereby plaintiff was induced to utilize such products.

29.  Defendants failed to remove or recommend the removal asbestos and/or asbestos-containing products from the market; to undertake the responsibility to test for, and remove and replace, asbestos materials when they knew or should have known that exposure to such materials would cause serious debilitating and deadly diseases in exposed persons such as the Plaintiff.

30.  Defendants at all times failed to perform their continuing duties to warn, recall, and abate.

31.  As a result of Defendants' conduct, Plaintiff has suffered injury and substantial harm and will suffer a premature and severely painful death.

32.  Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff.

### COUNT III: NEGLIGENCE *PER SE*

33.  The Plaintiff incorporates each allegation as if fully set forth in this count.

34.  At all times relevant, the Defendants knew or should have known that the

exposures to asbestos and asbestos-containing materials incurred by the Plaintiff were in violation of state and federal law and regulation.

35. The Defendants' failure to prevent the Plaintiff's exposures breached duties created by statute and/or regulation.

36. The Defendants' failure to comply with state and federal law and regulations regarding asbestos exposure constitute negligence *per se*.

37. As a direct and proximate cause of the Defendants' breaches, the Plaintiff has suffered injury and substantial harm and will suffer a premature and severely painful death.

**COUNT IV: BREACH OF IMPLIED WARRANTIES**

38. The Plaintiff incorporates each allegation as if fully set forth in this count.

39. Defendants failed to represent accurately to the Plaintiff, either directly or indirectly, that asbestos and asbestos-containing products are unfit and unsafe for use.

40. Defendants intended that their asbestos and asbestos-containing products and those asbestos and/or asbestos-containing products within Defendants' control, were to be used where laborers such as the Plaintiff's husband and children would apply, work around, repair, use and remove said products, and impliedly warranted through the sale, advertising, and/or marketing of their products that asbestos and asbestos materials were safe and fit for their normal and foreseeable uses.

41. Plaintiff, as a foreseeable person exposed to the Defendants' asbestos and/or asbestos-containing products, relied upon Defendants' representations, skill, expertise and judgment in assuming that asbestos and asbestos-containing materials were safe, and would not cause the decedent any injury.

42. Defendants breached these implied warranties in that asbestos and asbestos-

containing products as manufactured, distributed, used, maintained, ripped out, demolished and/or sold by Defendants are poisonous, carcinogenic, deleterious, and highly harmful.

43.    As a direct and proximate result of Defendants' breach of implied warranties of good and merchantable quality and fitness for a particular purpose and for their intended use, the Plaintiff suffered substantial injury and harm and said injury and harm will result in the premature and painful death of the Plaintiff.

44.    All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff.

### COUNT V: FRAUD

45.    Plaintiff hereby incorporates by reference each allegation contained herein as if fully set forth in this Count.

46.    Defendants, at all times in mining, milling, producing, manufacturing, designing, brokering, distributing and/or selling their asbestos and asbestos-containing products, knew that these products were hazardous and/or potentially hazardous to human life and health and knew that asbestos fibers cause disease, injury, and death, including but not limited to mesothelioma.

47. Defendants, at all times in marketing, their products, falsely and fraudulently represented expressly or impliedly to Plaintiff's husband and children, the public and the market that their products were safe and Defendants suppressed and concealed facts that asbestos products are hazardous and that asbestos fiber could cause disease, injury and death to humans. Defendants knew of the dangerous propensities when they sold asbestos or asbestos-containing products.  Defendants also on other occasions failed to even notify product users that their

products included asbestos.

48.     Defendants at all times have had a continuing duty to disclose the dangerous propensities of their products to Plaintiff, the public, and the market, and the suppression of these facts constituted misleading and fraudulent misrepresentations because Defendants gave information of other facts, including the uses for which they represented their products were suited, which were likely to mislead for want of communication of the suppressed facts, including the hazardous nature of asbestos and asbestos fibers.

49.  The misrepresentations, suppressions, and failures to disclose information were made by Defendants with the intent to induce the use the products of Defendants in reliance thereon.

50.  Defendants have continued at all times to the present to falsely and fraudulently misrepresent, suppress, and fail to disclose the dangerous propensities of these products including the facts that these products release dangerous and deadly asbestos fibers during ordinary product use.

51.  Plaintiff, the public, and the market, at the times these failures to disclose and suppressions of fact occurred, and at the time of the use of the products, were ignorant of the existence of the facts which Defendants suppressed and failed to disclose and relied upon false or misleading information disseminated by these Defendants and continued using these products.  If Plaintiff, the public, and the market had been aware of the existence of the facts not disclosed by Defendants, Plaintiff would not have exposed herself to asbestos and asbestos products installed, maintained, demolished, ripped out, repaired, mined, manufactured, processed, sold, distributed, brokered, marketed and/or placed into the stream of commerce by these Defendants, and would have not suffered and would not suffer, the damages and injuries alleged herein.

52.  As a direct and proximate result of Defendants suppression of facts and failure to disclose, the Plaintiff was injured and suffered substantial injury and harm and such injury will result in the premature and painful death of the Plaintiff.

53.  All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff.

### COUNT V:  STRICT LIABILITY

54. The Plaintiff incorporates each allegation as if fully set forth in this count.

55. The Defendants engaged in the business of installing, maintaining, repairing, ripping out, and/or selling or distributing asbestos and/or asbestos-containing products.

56. Asbestos and products containing asbestos such as the ones Plaintiff was exposed to were defective and unreasonably dangerous, unfit for their intended use because of the deleterious, highly harmful and deadly effects they cause to Plaintiff and others similar to Plaintiff.

57. The Defendants reasonably expected persons such as the Plaintiff to be exposed to their asbestos or asbestos-containing.

58. The Plaintiff was exposed to asbestos and/or asbestos-containing products in the manner in which it was intended and expected by the Defendants.

59. As a direct and proximate cause of the Plaintiff's use and exposure to the Defendants' defective and unreasonably dangerous asbestos and asbestos-containing products, the decedent suffered substantial injury and harm which will result in the premature and severely painful death of the Plaintiff.

60. The Defendants' acts and omissions as alleged herein were conducted intentionally, wilifully and wantonly, or in reckless indifference to the rights of the Plaintiff.

## COUNT VI: CONCERT OF ACTION

61. The Plaintiff incorporates each allegation as if fully set forth in this count.

62. This count is applicable only to Defendant Owens-Illinois, Inc.

62. Defendant acted pursuant to a common plan, concert of action and a concerted course of conduct with respect to the activities referred to herein, which activities were performed for the benefit of the Defendant and others as members of the asbestos industry.

63. Defendant knew or had reason to know that the conduct of some or all of other parties would subject Plaintiff and others persons like Plaintiff to serious, debilitating and deadly injury, constituting numerous breaches of legal duties, and gave substantial assistance or encouragement to others by cooperating with, assisting in, and furthering the activities referred herein, and by adhering to an industry-wide practice of refusing to provide adequate warnings and refusing to adequately test.

64. Defendant gave substantial assistance to other culpable parties and together caused Plaintiff and others like Plaintiff to suffer injury.

65. As a result of the Defendant's acts described herein, Plaintiff has suffered substantial and material harm and such harm will result in the premature and painful death of the Plaintiff.

66. Defendants' acts and omissions complained of in this count were committed intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff.

### COUNT VII: CIVIL CONSPIRACY

67. The Plaintiff incorporates each allegation as if fully set forth in this Count.

68. This count is applicable only to Defendant Owens-Illinois, Inc.

69. Defendant reached an agreement or tacit understanding with other culpable parties to do the aforesaid acts with the unlawful intent to mine, mill, produce, broker, design, market and sell asbestos and asbestos-containing products by suppressing knowledge about the dangers of asbestos, and by marketing without adequate testing and without adequate warnings.

70. The Defendant reached an agreement or tacit understanding with other culpable parties to foster and cultivate the generation, assimilation and publication of misleading or false scientific and medical data relating to asbestos and asbestos-related disease in an effort

to lessen or eliminate their own and the industry's liability and that as a direct and proximate result of the Defendant's agreement or tacit understanding, the real and known hazards of exposure to asbestos and asbestos-containing products were suppressed from the public and from finders-of-fact in legal proceedings and that the public and finders-of-fact in legal proceedings have been misled.

71.    The aforesaid acts, and similar acts, were committed in furtherance of this conspiracy to derive substantial financial gain from the sale of asbestos and asbestos-containing products or from the avoidance of liability associated with selling asbestos and asbestos-containing products in an unlawful manner.

72.    Defendant's combination with other culpable parties provided Defendants with additional power to inflict injury, harm and damages; such power would not have otherwise existed absent such combination.

73.    As a result of the Defendants' actions described herein, the Plaintiff suffered substantial and material harm and will suffer a painful and premature death.

74.    All Defendant's acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff.

### JURY TRIAL DEMANDED

75.    The Plaintiff respectfully demands a Jury Trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

A. Plaintiff recover the general, special and punitive damages determined to have been sustained by her, including, but not limited to, the loss of the companionship, comfort,

protection, services, society, advice, care, counsel and support of her husband, and the judgment

therefore be entered herein against the Defendants in an amount to be determined, but under no

circumstances recover in excess of $74,999.99, exclusive of interest and costs; and

      B. The Court grant such other, further or different relief as may be deemed just

and proper.

                   Respectfully submitted,

                   THE FAIREY LAW FIRM, LLC
                   Marion C. Fairey, Jr.
                   304 Lee Avenue
                   Post Office Box 661
                   Hampton, South Carolina 29924
                   (803) 943-6448

By:                  
                   ATTORNEY FOR THE PLAINTIFF

Hampton, South Carolina
This 15th day of November, 2010





**CERTIFIED MAIL™**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7009 2820 0000 6419 5261

United States Postage
PITNEY BOWES
$010.38⁰
02 1P
0002932153    NOV 16 2010
MAILED FROM ZIP CODE 29924

The Tarey Law Firm, LLC
P.O. Box 661
Hampton, SC 29924

E. I. DuPont Nemours and Company
CT Corporation System
2 Office Park Court, Suit 103
Columbia, SC 29223