James L. Oberman, Esq. (C.S.B. #120938)
Francis E. Fernandez, Esq. (C.S.B. #65775)
Ian A. Rivamonte, Esq. (C.S.B. #232663)
KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, California 94607
Telephone: (510) 302-1000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY VEST and CAROLINE VEST,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLIED PACKING & SUPPLY, INC., et al.,<br><br>Defendants. | Case No. 4:11-cv-00061 (LB)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION TO IMMEDIATELY REMAND ASBESTOS-CANCER CASE TO CALIFORNIA SUPERIOR COURT [28 U.S.C. § 1447(c)]**<br><br>Date: TBA<br>Time: TBA<br>Courtroom: Hon. Laurel Beeler<br>Courtroom 4, Oakland District Ct. |

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## TABLE OF CONTENTS

Page

I. INTRODUCTION . . . . . 1

II. STATEMENT OF ISSUES TO BE DECIDED . . . . . 2

III. STATEMENT OF FACTS . . . . . 2

A. The Complaints and Plaintiffs' Allegations Against McDonnell Douglas . . . . . 2

B. Plaintiffs' and McDonnell Douglas' Discovery Responses . . . . . 3

C. Percipient Witnesses Testified About McDonnell Douglas Military Aircraft . . . . . 5

D. McDonnell Douglas Has Actively Invoked the State Court's Jurisdiction . . . . . 6

IV. ARGUMENT . . . . . 8

A. Legal Standard . . . . . 8

B. McDonnell Douglas' Notice of Removal is Untimely . . . . . 9

C. McDonnell Douglas Waived Any Claims that This Action is Removable . . . . . 11

D. McDonnell Douglas Fails to Establish the "Government Contractor" Defense to Plaintiffs' Design-Defect Claims . . . . . 13

E. McDonnell Douglas Fails to Establish the "Government Contractor" Defense to Plaintiffs' Failure-to-Warn Claims . . . . . 15

F. Plaintiffs Are Entitled to Recover Their Reasonable Attorneys' Fees . . . . . 17

G. Alternatively, Should the Court Find that McDonnell Douglas Raised a Colorable Federal Defense, Plaintiffs Would Waive Their Claims of Exposure to Asbestos from Military Aircraft . . . . . 17

V. CONCLUSION . . . . . 18

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Boland v. Bank Sepah-Iran*, 614 F.Supp. 1166 (S.D. N.Y. 1985) .... 12

*Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988) .... 13-16

*Brown v. Demco, Inc.*, 792 F.2d 478 (5th Cir. 1986) .... 12

*Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 585 (9th Cir. 1996) .... 14

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) .... 8

*Fung v. Abex Corp.*, 816 F.Supp. 569, 571-572 (N.D.Cal. 1992) .... 8

*Goldberg v. CPC Int'l, Inc.*, 495 F.Supp. 233, 236-237 (N.D. Cal. 1980 .... 9

*Holdren v. Buffalo Pumps, Inc.*, 614 F.Supp.2d 129, 143 (D. Mass. 2009) .... 16

*In re Asbestos Products Liability Litigation*, 254 F.R.D. 266 (E.D. Pa. 2008) .... 18

*In re Hawaii Fed. Asbestos Cases*, 960 F.3d 806, 813 (9th Cir. 1992) .... 14, 16

*In re Joint Eastern and Southern Dist. New York Asbestos Litigation*, 897 F.2d 626, 630 (2d Cir. 1990) .... 16

*Jacko v. Thorn Americas, Inc.*, 121 F.Supp.2d 574, 576 (E.D. Tex. 2000) .... 12

*Lovern v. General Motors Corp.*, 121 F3d 160, 161(4th Cir. 1997) .... 9

*Mesa v. California*, 489 U.S. 121, 133-134 (1989) .... 8

*Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-1004 (7th Cir. 1996) .... 16

*Oxford v. Foster Wheeler LLC*, 177 Cal.App.4th 700, 711-712 (Cal.App.-1st 2009) .... 15

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

*Rosenthal v. Coates*,
148 U.S. 142, 147 (1893) . . . . . . . . . . 13

*Shamrock Oil & Gas Corp. v. Sheets*,
313 U.S. 100 (1941) . . . . . . . . . . 12

*Tate v. Boeing Helicopters*
55 F.3d 1150,1156-1157 (6th Dist. 1995) . . . . . . . . . . 15, 16

*Willingham v. Morgan*,
395 U.S. 402, 405 (1969) . . . . . . . . . . 8

*Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*,
365 F.3d 1244, 1246 (11th Cir. 2004) . . . . . . . . . . 11, 12

*Zbranek v. Hofheinz*,
727 F.Supp. 324, 325 (E.D. Tex. 1989) . . . . . . . . . . 11-13

**DOCKETED CASES**

*Capretto v. Stryker Corp.*,
2007 WL 2462138 . . . . . . . . . . 12

*Lindenmayer v. Allied Packing & Supply, Inc.*,
2010 WL 234906, *7 (N.D. Cal. January 14, 2010) . . . . . . . . . . 17

*Westbrook v. Asbestos Defendants*,
2001 WL 902642, **2-3 (N.D. Cal. July 31, 2001) . . . . . . . . . . 17

**STATUTES**

28 U.S.C. § 1442(a)(1) . . . . . . . . . . 8

28 U.S.C. § 1446(b) . . . . . . . . . . 9

28 U.S.C. § 1447(c) . . . . . . . . . . 17, 18

28 U.S.C. § 1447(d) . . . . . . . . . . 8

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## I. INTRODUCTION

Defendant McDonnell Douglas Corporation ("McDonnell Douglas") filed its Notice of Removal on the same day it was tentatively ordered to produce documents on unencrypted compact discs and little more than a month before the scheduled start of a February 14, 2011 trial. Plaintiff Timothy Vest was diagnosed with malignant mesothelioma, a devastating asbestos-caused cancer. Under California law, he will lose his right to recover his obviously substantial pain-and-suffering damages arising from his illness if his case is not tried while he remains alive. In a maneuver that seriously jeopardizes Timothy Vest's ability to have his case tried while his condition remains stable, McDonnell Douglas has filed a Notice of Removal to this Court contending that McDonnell Douglas had only recently discovered that it had a right to remove this action based on a trumped up colorable federal-officer defense. But McDonnell Douglas' grounds for removing this action at this late stage are entirely suspect, especially given that when McDonnell Douglas removed this case to federal court, the state court had tentatively ordered McDonnell Douglas to produce to plaintiffs numerous documents on unencrypted compact discs.

McDonnell Douglas has effectively waived its right to remove this action for two reasons. First, McDonnell Douglas was put on notice by June 2010 that plaintiffs' allegations against it include Timothy Vest's exposure to asbestos from McDonnell Douglas military aircraft, namely KC-10s and B-23s, serviced at World Airways' Hangar 110 at the Oakland International Airport ("Hangar 110") from 1973 through 1983. Indeed, McDonnell Douglas' discovery responses demonstrate that McDonnell Douglas knew that certain aircraft at issue in this case were allegedly designed pursuant to military specifications. Plaintiffs' discovery responses and the testimony of several percipient witnesses likewise explained that McDonnell Douglas' KC-10s and B-23s were serviced at Hangar 110 during the years when Timothy Vest and his father, Warren Vest, were present at Hangar 110. Second, McDonnell Douglas has effectively submitted to the state court's jurisdiction because it took substantial offensive or defensive action in the state court action. McDonnell Douglas' filing of, among other documents, a motion for summary judgment or, alternatively, summary adjudication, and a motion to bifurcate the trial indicates McDonnell Douglas' willingness to litigate in state court before it removed this case to federal court.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Even if the Court is willing to consider the merits of McDonnell Douglas' removal of this case, McDonnell Douglas offers **nothing** in its Notice of Removal demonstrating that the Air Force or any other branch of the military ever required McDonnell Douglas to incorporate asbestos-containing materials into its aircraft. Also, McDonnell Douglas' Notice of Removal is entirely silent as to whether the Air Force precluded McDonnell Douglas in any way from warning of the hazards posed by its product's asbestos content. In sum, all McDonnell Douglas offers with its Notice of Removal is purely speculative and conclusory conjecture that the Air Force purportedly designed and specified the parts to be used in McDonnell Douglas' military aircraft.

Accordingly, this lawsuit must be immediately remanded to the California Superior Court for Alameda County from which it came.

## II. STATEMENT OF ISSUES TO BE DECIDED

A. May McDonnell Douglas remove this case to federal court when it knew months before it filed its Notice of Removal that plaintiffs' claims against it include claims stemming from Timothy Vest's exposure to asbestos in aircraft McDonnell Douglas manufactured and supplied to the Air Force that were maintained and repaired at Hangar 110 from 1973 through 1983?

B. Has McDonnell Douglas waived its right to remove this case to federal court when McDonnell Douglas has actively invoked the state court's jurisdiction because it took substantial offensive or defensive action in the state court action, including the filing of a motion for summary judgment relying on California law and a motion to bifurcate the trial?

C. May McDonnell Douglas assert government-contractor immunity when it presents no evidence with its Notice of Removal demonstrating that it designed or manufactured its aircraft pursuant to the mandate of any federal officer?

D. May McDonnell Douglas assert government-contractor immunity when it presents no evidence with its Notice of Removal demonstrating that it ever attempted to warn, or that the Air Force prohibited warnings, about asbestos-related health hazards associated with the components utilized in McDonnell Douglas' aircraft?

## III. STATEMENT OF FACTS

### A. The Complaints and Plaintiffs' Allegations Against McDonnell Douglas

Plaintiff Timothy Vest suffers from malignant mesothelioma, a grave asbestos-related cancer. [Exhibits to Rivamonte Decl.: Dr. Hammar Decl. (Ex. 30) at ¶¶ 1-13; Dr. Salyer Decl. (Ex. 31) at ¶¶ 1-11; and Dr. Shrager Depo. (Ex. 32) at 12:23-25, 13:16-24, 14:17-15:2, 21:22-22:4, 25:14-26:6, 41:13-42:19, 43:17-47:2, 50:3-13, 51:18-23, 57:18-58:11.] On December 17, 2009,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

plaintiffs filed their complaint for personal injuries, negligence, strict products liability (consumer-expectation and failure-to-warn defects), fraud, conspiracy to defraud and loss of consortium against several named and "DOE" defendants who are alleged to have exposed plaintiff Timothy Vest to asbestos that was a substantial factor in causing his mesothelioma. [Plaintiffs' Initial Complaint, Ex. 1 to Rivamonte Decl.] On January 22, 2010, plaintiffs amended the complaint to name McDonnell Douglas in place of defendant DOE 3. [Amendment to Complaint Adding Doe Defendant, Ex. 2 to Rivamonte Decl.] On January 28, 2010, McDonnell Douglas was served the summons and complaint. [Proof of Service of Summons, Ex. 2 to Rivamonte Decl.] Thereafter, plaintiffs filed a First Amended Complaint on May 3, 2010 and a Second Amended Complaint on May 28, 2010. [Exhibits to Rivamonte Decl.: First Amended Complaint (Ex. 3) and Second Amended Complaint (Ex. 4).]

Plaintiffs in their Second Amended Complaint allege, in part, that Timothy Vest was continually exposed to asbestos and asbestos-containing products for which McDonnell Douglas and other defendants are responsible from at least 1973 to 1983 while Timothy Vest was present at Hangar 110. [Second Amended Complaint, Ex. 4 to Rivamonte Decl. at 3:27-28, 4:25-5:8.] The amended complaint also alleges that Timothy Vest was exposed to asbestos when his father, Warren Vest, brought home toxic asbestos fibers on his clothes, person and personal effects after his daily work at Hangar 110. [*Id.*]

**B. Plaintiffs' and McDonnell Douglas' Discovery Responses**

On April 15, 2010, McDonnell Douglas served its Response to Plaintiffs' Standard Interrogatories. [McDonnell Douglas' Response to Standard Interrogatories, Ex. 5 to Rivamonte Decl.] In part, McDonnell Douglas objected to plaintiffs' standard interrogatories "insofar as they [sought] information or production of documents regarded by the United States Government or military as classified, sensitive, or subject to any special protections and the disclosure of such information or documents, if any, will be subject to strictures imposed by the government or military." [*Id.* at 2:8-11.] Further, McDonnell Douglas objected to plaintiffs' standard interrogatories on the ground that "the design of any aircraft that may be at issue [in this litigation] was approved [by] the United States Government and sold to its customers (*e.g.* Government,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

airlines, couriers), who may have performed maintenance and modifications to the aircraft, possibly including the installation of parts or systems containing some quantity of asbestos." [*Id.* at 4:1-11.]

On March 31, 2010, McDonnell Douglas propounded on plaintiffs its first set of special interrogatories. [McDonnell Douglas' Special Interrogatories to Plaintiffs, Ex. 6 to Rivamonte Decl.] When plaintiffs were asked to describe each McDonnell Douglas aircraft that exposed Timothy Vest to asbestos, plaintiffs in their May 12, 2010 responses identified, in part, McDonnell Douglas DC-8s and DC-10s. [*Id.* at 2:11-15 and Plaintiffs' Responses to McDonnell Douglas' Special Interrogatories, Ex. 7 to Rivamonte Decl. at 2:4-3:16.] Plaintiffs also identified McDonnell Douglas' KC-10 **military** aircraft as one of several McDonnell Douglas airplanes that utilized asbestos-containing components. [*Id.*]

On June 4, 2010, McDonnell Douglas served plaintiffs its Responses to Plaintiffs' Special Interrogatories. [McDonnell Douglas' Initial Responses to Plaintiffs' Special Interrogatories, Ex. 8 to Rivamonte Decl.] When plaintiffs asked McDonnell Douglas whether any of its DC-8 aircraft, generally, or any other aircraft McDonnell Douglas supplied to World Airways, specifically, contained asbestos-composed products, McDonnell Douglas responded, in part, that "the design of any aircraft that may be at issue was approved [by] the United States Government and sold to its customers (*e.g.,* Government, airlines, couriers), who may have performed maintenance and modifications" that may have included the "installation of parts and systems containing some quantity of asbestos." [*Id.* at 8:3-26, 9:11-15, 10:6-11, 10:24-28, 11:19-24, 12:2-13, 13:4-6, 13:20-24, 14:20-26, 15:11-15, 23:20-23, 24:8-12, 25:3-6, 25:19-23, 26:14-17, 27:2-6, 27:25-28:1, 28:14-18, 29:14-17, 30:2-6, 31:2-5, 31:18-22, 32:13-16, 33:1-5, 33:24-27, 34:12-16, 35:7-10, 35:23-27, 36:23-26, 37:11-15, 38:11-14, 38:27-39:3, 39:22-25, 40:10-14, 41:5-8, 41:21-25, 42:21-23, 43:9-13, 44:9-11, 44:25-45:1, 45:20-22, 46:8-12, 47:3-6, 47:20-24, 48:20-23, 49:9-13.] McDonnell Douglas provided the same response in its July 12, 2010 supplemental responses and December 17, 2010 amended responses. [Exhibits to Rivamonte Decl.: McDonnell Douglas' Supplemental Responses (Ex. 9) at 9:4-6, 9:27, 10:14-18, 11:21-26, 12:7-13, 12:22-28, 13:11-15, 14:11-17, 15:2-6, 20:18-21, 21:2-6, 21:19-23, 22:14-17, 22:26-23:2, 23:15-19, 24:15-18, 24:27,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

25:1-4, 25:13-17, 25:26-26:2, 26:11-15, 26:28-27:4, 28:1-4, 28:17-21, 29:17-20, 30:1-5, 30:14-18, 31:3-7, 32:3-6, 32:19-23, 33:19-22, 34:4-8, 34:17-22, 35:7-11, 36:7-11, 36:24-28; and McDonnell Douglas' Amended Responses (Ex. 10) at 9:4-6, 10:15-19, 11:13-18, 11:28-12:5, 12:16-19, 13:7, 13:10-16, 14:3, 14:8-11, 14:26, 17:25-27, 18:1, 18:17-20, 19:15-18, 20:5-8, 20:24-21:1, 21:16, 21:20-23, 22:10, 22:15-18, 23:6-11, 24:10-13, 24:23-26, 25:9-13, 25:28-26:4, 26:14-17, 26:28-27:4, 27:14-17, 28:5-9, 28:19-23, 29:5-9, 29:19-24, 30:11-16, 30:26.]

On November 3, 2010, plaintiffs served on McDonnell Douglas and all other defendants plaintiffs' response to defendant Lathrop Construction Associates' Request for Production of Documents. [Plaintiffs' Responses to Lathrop's Document Requests, Ex. 11 to Rivamonte Decl.] Plaintiffs in those responses produced an article from the September 1973 edition of *Air Transport World* entitled "World Air Center Posts $18 Million in Sales as Target for 1973." [*Id.*] The article explains, in part, that World Airways "won a competition to complete the interiors of two military DC-9s at a cost of $300,000 to $400,000 each." [*Id.*]

**C. Percipient Witnesses Testified About McDonnell Douglas Military Aircraft**

On June 3, 2010, James Hales was deposed as World Airways' Person Most Qualified and Custodian of Records ("PMQ/COR") in this case. [Hales Depo., Ex. 12 to Rivamonte Decl. at 10:5-21, 14:12-16 and attached Exhibits 1-3 thereto.] When Mr. Hales was asked what types of airplanes he recalled having been serviced at Hangar 110, he identified the Air Force's McDonnell Douglas KC-10s. [*Id.* at 80:17-81:15.] When Mr. Hales was asked whether World Airways mechanics worked on the KC-10s, he testified that there "were specific [World Airways] mechanics and crews who were approved to work on the KC-10." [*Id.* at 82:17-83:2.]

On June 4, 2010, World Airways' counsel Malcolm Benge was deposed in this case. [Benge Depo., Ex. 13 to Rivamonte Decl. at 10:3-9, 11:1-13, 13:11-14:22.] He testified that the Air Force contracted World Airways to do maintenance work on the Air Force's KC-10 tankers and that such maintenance was performed at Hangar 110. [*Id.* at 29:25-30:17.]

On July 8, 2010, Claude Fross was deposed in this case. [Fross Depo., Ex. 14 to Rivamonte Decl.] He was a former World Airways employee who worked at Hangar 110 from its opening in 1973 until 1986. [*Id.* at 14:20-15:1, 20:11-21:4.] According to Mr. Fross, aircraft

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

maintenance work was being done in Hangar 110 all day, everyday. [*Id.* at 51:5-53:2.] When Mr. Fross was asked to look at the floor plan for Core A of Hangar 110, he acknowledged that Hangar 110 had a "military sales area" in Core A. [*Id.* at 88:22-89:2, 92:22-93:10.]

On August 19, 2010, Timothy Vest's father, Warren Vest, was deposed. [Warren Vest Depo., Ex. 15 to Rivamonte Decl. at 10:20-24.] Warren Vest was a pilot for World Airways and his office was located inside Hangar 110. [*Id.* at 8:19-23, 10:4-24.] Warren Vest testified that World Airway's founder, Edward Daly, owned B-23s and that this aircraft was maintained in Hangar 110. [*Id.* at 125:9-25.] Indeed, Warren Vest recalled flying one of Mr. Daly's B-23s to San Diego, California in 1978. [*Id.* at 126:3-16.] Warren Vest also testified that KC-10 military airplanes were also serviced at Hangar 110. [*Id.* at 146:24-147:7.] Everyday, from 1976 to 1985, Warren Vest visited the maintenance area of Hangar 110 to ensure that any repairs or service on World Airways aircraft were completed on time. [*Id.* at 151:15-152:12, 271:24-272:22.] Indeed, while Warren Vest recognized that World Airways' maintenance personnel "had a big obligation to the military" and that sometimes maintenance on military aircraft "would get priority," Warren Vest wanted to make sure that projects involving World Airways aircraft would get as much attention as the military aircraft. [*Id.*]

**D. McDonnell Douglas Has Actively Invoked the State Court's Jurisdiction**

The state court action was set to go to trial on February 14, 2011. [Minutes of July 2, 2010 Case Management Conference, Ex. 33 to Rivamonte Decl.]

On June 4, 2010, plaintiffs moved to compel McDonnell Douglas to produce its PMQ/COR for deposition. [Plaintiffs' Notice of Motion and Motion to Compel PMQ/COR Deposition, Ex. 16 to Rivamonte Decl.] Plaintiffs in their motion contended that McDonnell Douglas refused to produce any corporate witness in this case on the ground that plaintiffs' deposition notice did not seek "information at-issue in this case." [*Id.* at 2:1-6.] On June 21, 2010, McDonnell Douglas opposed plaintiffs' motion to compel. [McDonnell Douglas' Opposition to Plaintiffs' Motion to Compel, Ex. 17 to Rivamonte Decl.] After the hearing on the motion was continued several times, Judge Kenneth Mark Burr on December 10, 2010 ordered McDonnell Douglas to produce responsive documents to plaintiffs and to produce its PMQ/COR

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

for deposition on ten days notice. [Order Granting Plaintiffs' Motion to Compel, Ex. 18 to Rivamonte Decl.] However, McDonnell Douglas did not comply with Judge Burr's order, instead producing 14 password-encrypted compact discs that contained unsearchable and unprintable documents. [Plaintiffs' Notice of Motion and Motion to Compel McDonnell Douglas' Compliance with Order, Ex. 19 to Rivamonte Decl. at 1:28-2:14.] On December 28, 2010, plaintiffs filed their motion to compel compliance on shortened time and McDonnell Douglas filed its opposition on January 4, 2011. [*Id.* and McDonnell Douglas' Opposition to Plaintiffs' Motion to Compel Compliance, Ex. 20 to Rivamonte Decl.] On January 6, 2011, Judge Jo-Lynne Q. Lee issued a tentative ruling granting plaintiffs' motion to compel and directing McDonnell Douglas at its own expense to produce compact discs containing printable and searchable documents. [Court's Tentative Ruling, Ex. 21 to Rivamonte Decl.] McDonnell Douglas removed this case to federal court the same day that Judge Lee issued her tentative ruling. [*See* McDonnell Douglas' Notice of Removal.]

On July 2, 2010, McDonnell Douglas filed its motion to compel plaintiffs to provide further responses to McDonnell Douglas' special interrogatories. [McDonnell Douglas' Motion to Compel, Ex. 22 to Rivamonte Decl.] Plaintiffs thereafter filed their opposition to the motion on November 10, 2010. [Plaintiffs' Opposition to McDonnell Douglas' Motion to Compel, Ex. 23 to Rivamonte Decl.] McDonnell Douglas on November 24, 2010 dropped the motion. [November 24, 2010 Order, Ex. 24 to Rivamonte Decl.]

On October 29, 2010, McDonnell Douglas filed its Motion for Summary Judgment or, Alternatively, Motion for Summary Adjudication contending, in part, that there are no triable factual issues as to whether Timothy Vest was exposed to asbestos for which McDonnell Douglas is responsible. [McDonnell Douglas' Notice of Motion for Summary Judgment, Ex. 25 to Rivamonte Decl. at 2:10-16.] On December 30, 2010, plaintiffs filed their opposition to the summary-judgment motion. [Plaintiffs' Opposition to McDonnell Douglas' Motion for Summary Judgment, Ex. 26 to Rivamonte Decl.] Because the hearing on McDonnell Douglas' summary-judgment is set for January 14, 2011, McDonnell Douglas reply papers would have been due on January 7, 2011 but for its removal of this case to this Court on January 6, 2011. [*Id.*]

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Finally, on December 18, 2010, McDonnell Douglas filed its Motion for Separate Trial Re: Medical Causation and/or Order Bifurcating Trial. [McDonnell Douglas' Notice of Motion to Bifurcate, Ex. 27 to Rivamonte Decl.] McDonnell Douglas contended that a separate trial regarding Timothy Vest's medical condition is first required before any issues about liability and causation arises. [*Id.* at 1:8-17.] On January 3, 2011, plaintiffs filed written opposition to McDonnell Douglas' motion to bifurcate. [Plaintiffs' Opposition to Motion to Bifurcate, Ex. 28 to Rivamonte Decl.]

## IV. ARGUMENT

### A. Legal Standard

The only ground for removal that McDonnell Douglas alleges in its Notice of Removal is "federal officer removal" pursuant to 28 U.S.C. § 1442(a)(1), which provides that a civil action commenced in state court is removable when "any officer (or any person acting under that officer) of the United States or of any agency thereof, [is] sued . . . for any act under color of such office." As the removing party, McDonnell Douglas must demonstrate that this case is removable under section 1442(a)(1). To do so, McDonnell Douglas must: (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to plaintiffs' claims; and (3) demonstrate a causal nexus between plaintiffs' claims and the acts McDonnell Douglas performed under color of federal office. [*Mesa v. California*, 489 U.S. 121, 133-134 (1989); *Fung v. Abex Corp.*, 816 F.Supp. 569, 571-572 (N.D.Cal. 1992).]

At the core of the removal statute is the premise that "[f]ederal jurisdiction rests on a federal interest in the matter." [*Willingham v. Morgan*, 395 U.S. 402, 405 (1969).] While the removal standard is equally applied to true federal officers and private agents of federal officers, "it cannot be said that there is a sufficient federal interest to justify a federal forum" when a "private company violates state law at its own discretion rather than at the government's discretion and in accordance with federal duties." [*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).] An order remanding a case to state court is not "reviewable on appeal or otherwise." [28 U.S.C. § 1447(d).]

//

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**B. McDonnell Douglas' Notice of Removal is Untimely**

McDonnell Douglas' Notice of Removal is untimely because McDonnell Douglas received notice of plaintiffs' claims against it arising from its military aircraft months before it filed its Notice of Removal on January 6, 2011. After a defendant learns that an action is removable, the defendant has 30 days to remove the case to federal court. [28 U.S.C. § 1446(b).] A defendant's failure to file a timely notice of removal waives the right to removal. [*Id.; see Goldberg v. CPC Int'l, Inc.*, 495 F.Supp. 233, 236-237 (N.D. Cal. 1980).] The 30-day removal period starts to run upon the defendant's receipt of an "amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is . . . removable." [28 U.S.C. § 1446(b) (emphasis added).] Appellate courts have defined "other paper" in section 1446(b) to include discovery responses such as answers to interrogatories, requests for admissions or deposition testimony. [*See Lovern v. General Motors Corp.*, 121 F3d 160, 161(4th Cir. 1997) (where grounds for removal do not appear on the face of the initial pleading, courts may look to "documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal").]

Contrary to McDonnell Douglas' assertions, it was well aware more than 30 days before it filed its Notice of Removal on January 6, 2011 that plaintiffs allege that Timothy Vest was exposed to asbestos from components installed, removed or maintained on both civilian and military aircraft manufactured by McDonnell Douglas that were serviced at Hangar 110 from 1973 to 1983. First, McDonnell Douglas knew when it was first served the complaint on January 22, 2010 and at all times thereafter that plaintiffs allege that Mr. Vest was exposed to asbestos from the aircraft-maintenance activities at Hangar 110 between 1973 and 1983. [Exhibits to Rivamonte Decl.: Complaint (Ex. 1); Amendment to Complaint Adding Doe Defendants (Ex. 2); First Amended Complaint (Ex. 3) and Second Amended Complaint (Ex. 4).] Second, McDonnell Douglas in its April 15, 2010 responses to standard interrogatories, June 4, 2010 responses to special interrogatories and July 12, 2010 supplemental responses to special interrogatories specifically recited that the United States government approved the "design of any aircraft that may be at issue" in this case. [Exhibits to Rivamonte Decl.: McDonnell Douglas' Responses to Standard Interrogatories (Ex. 5) at 4:1-11; McDonnell Douglas' Initial Responses to Special

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Interrogatories (Ex. 8) at 8:3-26, 9:11-15; and McDonnell Douglas' Supplemental Responses to Special Interrogatories (Ex. 9) at 9:4-6, 9:27, 10:14-18.] Third, plaintiffs in their May 12, 2010 responses to McDonnell Douglas' special interrogatories stated that Timothy Vest was exposed to asbestos from McDonnell Douglas aircraft serviced at Hangar 110, identified McDonnell Douglas' KC-10 military aircraft as one of several airplanes that utilized asbestos-containing components and that such aircraft were serviced at Hangar 110. [Exhibits to Rivamonte Decl.: McDonnell Douglas' Special Interrogatories (Ex. 6) at 2:11-15 and Plaintiffs' Responses to McDonnell Douglas' Special Interrogatories (Ex. 7) at 2:4-3:16.] Finally, plaintiffs in their November 3, 2010 response to defendant Lathrop Construction Associates' document requests produced to defendants a September 1973 article regarding Hangar 110, which expressed that World Airways "won a competition to complete the interiors of two military DC-9s" at Hangar 110. [Plaintiffs' Responses to Lathrop's Document Requests, Ex. 11 to Rivamonte Decl.] Thus, McDonnell Douglas' own interrogatory responses many months ago evinced that McDonnell Douglas was fully aware that plaintiffs' claims in this case included allegations that Timothy Vest had been exposed to asbestos from parts in McDonnell Douglas' military aircraft. Plaintiffs' complaints and subsequent discovery responses placed McDonnell Douglas on notice of that fact from the outset of this case.

Additionally, numerous witnesses in this case gave deposition testimony months ago putting McDonnell Douglas on notice of plaintiffs' allegations that Timothy Vest was exposed to asbestos from military aircraft at Hangar 110. James Hales was deposed on June 3, 2010 and he testified that McDonnell Douglas KC-10s utilized by the Air Force were maintained and serviced at Hangar 110. [Hales Depo., Ex. 12 to Rivamonte Decl. at 10:5-21, 14:12-16, 80:17-81:15, 82:17-83:2.] Malcolm Benge also testified on June 4, 2010 that the Air Force contracted World Airways to perform maintenance work on the Air Force's KC-10 tankers at Hangar 110. [Benge Depo., Ex. 13 to Rivamonte Decl. at 10:3-9, 11:1-13, 13:11-14:22, 29:25-30:17.] Claude Fross on July 8, 2010 testified that aircraft maintenance work was being done in Hangar 110 all day and all night, and that Hangar 110 had a dedicated area for "military sales." [Fross Depo., Ex. 14 to Rivamonte Decl. at 51:5-53:2, 88:22-89:2, 92:22-93:10.] Finally, Warren Vest testified on August

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

19, 2010 that among the military aircraft serviced and repaired in the maintenance area of Hangar 110 from 1976 to 1985 included B-23s and KC-10s. [Warren Vest Depo., Ex. 15 to Rivamonte Decl. at 8:19-23, 10:4-24, 125:9-25, 126:3-16, 146:24-147:7, 151:15-152:12, 271:24-272:22.] McDonnell Douglas knew since it was first served the complaint and, at the latest, when it was served plaintiffs' responses to special interrogatories that Timothy Vest was exposed to asbestos when he was present at Hangar 110 from 1973 to 1981 and when Warren Vest brought home on his person, clothes and personal effects toxic asbestos fibers after a day's work at Hangar 110. [Exhibits to Rivamonte Decl.: Complaint (Ex. 1) at 4:12-17; First Amended Complaint (Ex. 3) at 5:1-8; Second Amended Complaint (Ex. 4) at 5:1-8; Plaintiffs' Responses to McDonnell Douglas' Special Interrogatories (Ex. 7) at 2:4-3:16.]

So McDonnell Douglas cannot legitimately contend that it was first made aware of Timothy Vest's exposure to asbestos-containing parts from McDonnell Douglas' military aircraft on December 30, 2010 when it was served with the declaration of industrial-hygiene expert John Templin in support of plaintiffs' opposition to McDonnell Douglas' summary-judgment motion. [Notice of Removal at 6:14-26.] To the contrary, the aspects of Mr. Templin's declaration on which McDonnell Douglas relies were all derived from Mr. Templin's review of the transcripts of the deposition testimony of Warren Vest, Claude Fross and James Hales – all of which occurred between June 2010 and August 2010. [Templin Decl., Ex. 29 to Rivamonte Decl. at 8:26-21:13.]

**C. McDonnell Douglas Waived Any Claims that This Action is Removable**

An additional reason why this case must immediately be remanded to state court is because McDonnell Douglas waived its right to remove "by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court." [*Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP,* 365 F.3d 1244, 1246 (11th Cir. 2004) (emphasis added; internal quotes omitted).]

*Zbranek v. Hofheinz*, 727 F.Supp. 324, 325 (E.D. Tex. 1989) is instructive. In *Zbranek*, plaintiffs filed an action in state court alleging various state law tort claims. [*Id.*] The defendants actively litigated their case in state court by filing a motion for summary judgment and participating in numerous proceedings such as an injunction hearing and a hearing on special

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

exceptions. [*Id.*] After more than 30 days passed since defendants were served the complaint, the defendants removed the case to federal court because they allegedly were unable to determine until well after the 30 days had passed that plaintiffs had a civil rights claim. [*Id.*] The district court disagreed and remanded the case back to state court because defendants lost their right to remove "by actively invoking the state court's jurisdiction in seeking an injunction, summary judgment and order requiring re-pleading by plaintiffs." [*Id., citing to Brown v. Demco, Inc.*, 792 F.2d 478 (5th Cir. 1986).] In so doing, the district court specifically recognized that "a federal court is bound to consider the stage of the state court litigation in ruling on a motion to remand." [*Id.* at 326, *citing to Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).] Thus, the district court ruled that remand was additionally warranted because the "state court litigation . . . ha[d] advanced considerably" and it "would be a waste of judicial resources to now force all these parties into federal court, to repeat their already extensive motion practice." [*Id., citing to Boland v. Bank Sepah-Iran*, 614 F.Supp. 1166 (S.D. N.Y. 1985).] District Judge William Alsup of the Northern District of California in *Capretto v. Stryker Corp.*, 2007 WL 2462138 at *3, cited *Zbranek* with approval when he granted a plaintiff's remand motion because the defendants in *Capretto* had "invoked the state's jurisdiction to resolve issues" by filing motions for summary judgment.

Here, McDonnell Douglas engaged in "substantial offensive and defensive actions in state court" by filing a motion for summary judgment or, alternatively, motion for summary adjudication, a motion to bifurcate the trial and a motion to compel plaintiffs' further responses to discovery, and also by filing opposition to plaintiffs' numerous motions to compel McDonnell Douglas to produce documents. [Exhibits 16-27 to Rivamonte Decl.; *Yusefzadeh, supra,* 365 F.3d 1244, 1246.] Like the defendants in *Zbranek* and *Capretto*, McDonnell Douglas here actively invoked the jurisdiction of the Alameda County Superior Court through its extensive motions practice, thus demonstrating McDonnell Douglas' "clear intent to have the state court proceed on the merits of the case." [*See Jacko v. Thorn Americas, Inc.*, 121 F.Supp.2d 574, 576 (E.D. Tex. 2000).]

Further, this case has been set for trial in Alameda County Superior Court on February 14, 2011 – little more than a month after this case was removed to federal court. [Minutes of July 2,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

2010 Case Management Conference, Ex. 33 to Rivamonte Decl.] Given the advanced stage of the state court litigation and the parties' "extensive motion practice," including McDonnell Douglas' summary-judgment motion and motion to bifurcate and plaintiffs' oppositions to those motions, it "would be a waste of judicial resources to now force [the] parties into federal court" only to repeat the same motions and litigate the same issues already before the state court. [*Zbranek, supra,* 727 F.Supp. 324, 325.] Indeed, the timing of McDonnell Douglas' removal is especially suspicious given that the state court had issued a tentative ruling compelling McDonnell Douglas to produce its documents to plaintiffs on unencrypted compact discs. [Exhibits 19-21 to Rivamonte Decl.] Plaintiffs note that a defendant who argues and loses an issue in state court cannot remove the action to federal court in that event because the removal effectively becomes an appeal of the adverse decision. [*See Rosenthal v. Coates*, 148 U.S. 142, 147 (1893) (defendant simply cannot "experiment on his case in the state court, and, upon an adverse decision, then transfer it to the Federal court."]

**D. McDonnell Douglas Fails to Establish the "Government Contractor" Defense to Plaintiffs' Design-Defect Claims**

McDonnell Douglas erroneously claims that removal is justified because it has raised a colorable federal defense, specifically the government contractor defense under *Boyle v. United Technologies Corp.,* 487 U.S. 500, 504 (1988). However, McDonnell Douglas in its Notice of Removal submits no competent evidence, such as military specifications or affidavits from competent witnesses, demonstrating that the Air Force or any other branch of the United States military ever required McDonnell Douglas to incorporate asbestos-containing materials into its KC-10 and B-23 military airplanes. Indeed, McDonnell Douglas in its Notice of Removal offers only unsupported assertions in support of the alleged government-contractor defense. [McDonnell Douglas' Notice of Removal at ¶¶ 14, 21-30.]

The government contractor defense immunizes government contractors from liability for state torts when the contractor's contractual duties to the government conflict with its ability to abide by state law. [*Boyle, supra,* 487 U.S. 500, 507.] For this defense to apply, McDonnell Douglas must show that: (1) the United States approved reasonably precise specifications; (2) its

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

aircraft conformed to those specifications; and (3) McDonnell Douglas warned the United States about the dangers in the use of the equipment that were known to it, as the supplier of the equipment, but not to the United States. [*Id.* at 512.]

The first and second elements of *Boyle* are designed to assure that the defense is only available when the United States is exercising its discretionary function. [*Id.*] Essentially, the government contractor defense under *Boyle* is a claim by the contractor that the "Government made me do it." [*In re Hawaii Fed. Asbestos Cases*, 960 F.3d 806, 813 (9th Cir. 1992).] As the Ninth Circuit elaborated in *In re Hawaii*, "*Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion." [*Id.*]

The military-contractor defense might be available to McDonnell Douglas if McDonnell Douglas "could demonstrate . . . that the Government's specifications required asbestos in [its] products, and not just a certain level of performance." [*In re Hawaii, supra,* 960 F.3d 806, 813.] However, mere approval or "rubber stamping" of a defective design is insufficient. [*Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 585 (9th Cir. 1996) ("When the government merely accepts, without any substantive review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion").] Also, mere performance standards, as opposed to design specifications, do not constitute "reasonably precise specifications." [*In re Hawaii, supra,* 960 F.3d 806, 813 ("specifications must require more than a certain level of performance").] As the Supreme Court in *Boyle* elaborated:

> If, for example, the United States contracts for the purchase and installation of an air conditioning unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context.

[*Boyle, supra,* 487 U.S. 500, 509.]

Here, McDonnell Douglas submits no evidence whatsoever showing that the Air Force required it to include toxic asbestos-containing parts in its military aircraft in a manner that caused

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

persons such as Timothy Vest to be exposed. [McDonnell Douglas' Notice of Removal at ¶¶ 14, 21-30 and attached Exhibits A-E thereto.] The issue before the Court is not whether the Air Force had the authority to decide whether it used asbestos, nor is it whether the Air Force had any specifications that pertained to the use of asbestos. Rather, the true issue is who decided that asbestos be used in McDonnell Douglas' aircraft – McDonnell Douglas or the United States government. [*Boyle, supra,* 487 U.S. 500, 512.] McDonnell Douglas provides no evidence that it was the Air Force that made the decision to incorporate asbestos into the plans. Rather, McDonnell Douglas makes only conclusory and unsupported assertions about the Air Force's authority and vague claims about alleged design specifications. Because McDonnell Douglas provides no evidence showing that the Air Force or any other branch of the military required McDonnell Douglas' aircraft to use asbestos-containing parts, McDonnell Douglas fails to demonstrate that it possesses a colorable federal defense based on government contractor immunity under *Boyle*.

**E. McDonnell Douglas Fails to Establish the "Government Contractor" Defense to Plaintiffs' Failure-to-Warn Claims**

Glaringly absent from McDonnell Douglas' Notice of Removal is any assertion or evidence showing that the Air Force made a discretionary decision as to asbestos-related product warnings regarding McDonnell Douglas' military aircraft. [McDonnell Douglas' Notice of Removal at ¶¶ 14, 21-30 and attached Exhibits A-E thereto.] McDonnell Douglas thus ignores that the complaint's strict-products-liability claims include allegations that McDonnell Douglas failed to warn persons, such as Timothy Vest, about asbestos-related health hazards. [Second Amended Complaint, Ex. 4 to Rivamonte Decl. at 9:6-12:1.]

The government-contractor defense is **not** established merely by satisfying the defense's prerequisites as to design-defect claims. [*Oxford v. Foster Wheeler LLC*, 177 Cal.App.4th 700, 711-712 (Cal.App.-1st 2009) *citing Tate v. Boeing Helicopters* 55 F.3d 1150,1156-1157 (6th Dist. 1995).] Rather, McDonnell Douglas must separately establish a colorable government-contractor defense to plaintiffs' failure-to-warn claims. Here, McDonnell Douglas must show that: (1) the government exercised its discretion and approved certain warnings; (2) McDonnell Douglas, as the

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

contractor, provided warnings required by the government; and (3) McDonnell Douglas warned the government about the dangers in the equipment's use that were known to McDonnell Douglas but not to the government. [*Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-1004 (7th Cir. 1996).]

As with the *Boyle* elements pertaining to design-defect claims, McDonnell Douglas must show that the government made a discretionary decision as to product warnings that significantly interfered with its ability to abide by state law, thus creating a conflict between a federal interest and a state law duty. [*See Boyle, supra*, 487 U.S. at 511-512.] To make this showing, McDonnell Douglas must demonstrate that: (1) the government prohibited warnings in general; (2) the government prohibited warnings as to the specific feature in question; (3) the government dictated specific warnings; or (4) there was some "back and forth" discussion between McDonnell Douglas and the government with respect to the warnings. [*Oliver, supra*, 96 F.3d 992, 1003-1004, *Tate, supra*, 55 F.3d 1157, and *In re Joint Eastern and Southern Dist. New York Asbestos Litigation*, 897 F.2d 626, 630 (2d Cir. 1990); *see also Holdren v. Buffalo Pumps, Inc.*, 614 F.Supp.2d 129, 143 (D. Mass. 2009) ("a manufacturer asserting the federal contractor defense must show that the federal government issued reasonably precise specifications covering warnings – specifications that reflect a considered judgment about the warnings at issue").] If the government cannot be said to have made a decision – if it was simply silent – there is no federal policy or interest to protect. [*Holdren, supra,* 614 F.Supp.2d 129, 144.]

Here, McDonnell Douglas makes no assertion in its Notice of Removal showing that the Air Force prevented it from providing warnings about asbestos-related health hazards arising from exposure to asbestos-containing parts in its military aircraft, including the KC-10s and B-23s. [McDonnell Douglas' Notice of Removal at ¶¶ 14, 21-30 and attached Exhibits A-E thereto.] Instead, all of McDonnell Douglas' assertions in its Notice of Removal focus on the Air Force's purported control over the design of the aircraft, including the Air Force's alleged requirements that McDonnell Douglas install asbestos-containing parts. [*Id.*] McDonnell Douglas thus does not show that it possesses a colorable federal-contractor defense as to plaintiffs' failure-to-warn claims. [*In re Hawaii, supra,* 960 F.3d 806.]

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**F. Plaintiffs Are Entitled to Recover Their Reasonable Attorneys' Fees**

As previously explained, McDonnell Douglas' removal of this case to federal court was patently improper. The removal has caused plaintiffs considerable delay, prejudice and expense in challenging it. Title 28, section 1447(c) of the United State Code specifies that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Plaintiffs' counsel collectively have devoted well in excess of 36 hours to researching and preparing this motion-to-remand filing. Therefore, plaintiffs should also be awarded their attorneys' fees related to moving for remand here in the amount of $16,350.00. [Rivamonte Decl. at ¶ 35; Oberman Decl. at ¶ 2; Stewart Decl. at ¶ 2; Amell Decl. at ¶ 2; Agnoli Decl. at ¶ 2; and Myers Decl. at ¶ 2.]

**G. Alternatively, Should the Court Find that McDonnell Douglas Raised a Colorable Federal Defense, Plaintiffs Would Waive Their Claims of Exposure to Asbestos from Military Aircraft**

In the event that this Court is otherwise inclined to **deny** this motion to remand – and to the extent the Court finds that McDonnell Douglas has in fact raised a colorable government-contractor defense as to plaintiffs' design-defect claims, plaintiffs will agree to limit their claims against McDonnell Douglas for Timothy Vest's exposure to asbestos in military aircraft to their claims for negligent and strict-liability failure to warn. Moreover, in the event that this Court is otherwise inclined to **deny** this motion – and to the extent that the Court finds that McDonnell Douglas has raised a colorable government-contractor defense as to **both** plaintiffs' design-defect **and** failure-to-warn claims, plaintiffs will agree to limit their claims against McDonnell Douglas to claims stemming from Timothy Vest's exposures to asbestos in non-military, civilian aircraft.

Such a waiver by plaintiffs of any potentially federal claims is in itself sufficient to eviscerate McDonnell Douglas' grounds for removal and also compels the Court to remand this case to California Superior Court. [*See Westbrook v. Asbestos Defendants*, 2001 WL 902642, **2-3 (N.D. Cal. July 31, 2001) and *Lindenmayer v. Allied Packing & Supply, Inc.*, 2010 WL 234906, *7 (N.D. Cal. January 14, 2010).]

//

//

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**V. CONCLUSION**

McDonnell Douglas was on notice many months before removing this case to federal court on January 6, 2011 that plaintiffs' claims against it include Timothy Vest's exposure to asbestos from McDonnell Douglas' military aircraft, including KC-10s and B-23s, that were serviced at World Airway's Hangar 110 in Oakland, California. McDonnell Douglas also invoked the state court's jurisdiction when it engaged in substantial actions in state court, including filing a motion for summary judgment or, alternatively, motion for summary adjudication and a motion to bifurcate the trial. Federal case law is clear that McDonnell Douglas' conduct and more than 30 days' notice of plaintiffs' claims against it effectively waived McDonnell Douglas' claims that this action is removable.

In any event, McDonnell Douglas has presented no evidence that it acted under a federal officer and that there was a causal nexus between the plaintiffs' claims and any acts McDonnell Douglas performed under the color of federal office. Indeed, McDonnell Douglas' true goal here has nothing to do with any belief that its government contractor's defense will hold up, but rather to simply delay – and ultimately deny – plaintiff Timothy Vest his day in court. McDonnell Douglas has already given notice that this case may be subject to transfer to the Eastern District of Pennsylvania through its Tag-Along Action, where it will encounter significant delay and likely not get a trial date while Mr. Vest is still alive. [*See In re Asbestos Products Liability Litigation,* 254 F.R.D. 266 (E.D. Pa. 2008) (noting that the MDL panel's docket included 59,000 pending cases encompassing some 3.5 million asbestos-related claims).] Accordingly, pursuant to 28 U.S.C. § 1447(c), the Court must grant plaintiffs' motion to immediately remand the case to state court, where state law enables Mr. Vest to continue and promptly try his case against McDonnell Douglas and other defendants.

DATED: January 10, 2011

KAZAN, McCLAIN, LYONS,
GREENWOOD & HARLEY
A Professional Law Corporation

By [signature]
Ian A. Rivamonte

Attorneys for Plaintiffs

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Case MDL No. 875 Document 6658 Filed 01/28/11 Page 23 of 217

Exhibit E - Declaration of Ian A. Rivamonte in Support of Plaintiffs' Emergency Motion to Immediately Remand Asbestos-Cancer Case to California Superior Court [28 U.S.C. Sec. 1447(c)]

Case3:11-cv-00061-JSW Document17-3 Filed01/10/11 Page1 of 5

James L. Oberman, Esq. (C.S.B. #120938)
Francis E. Fernandez, Esq. (C.S.B. #65775)
Ian A. Rivamonte, Esq. (C.S.B. #232663)
KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, California 94607
Telephone: (510) 302-1000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY VEST and CAROLINE VEST,

Plaintiffs,

vs.

ALLIED PACKING & SUPPLY, INC., et al.,

Defendants.

Case No.: 4:11-cv-00061 (LB)

**DECLARATION OF IAN A. RIVAMONTE IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO IMMEDIATELY REMAND ASBESTOS-CANCER CASE TO CALIFORNIA SUPERIOR COURT [28 U.S.C. § 1447(c)]**

Date: TBA
Time: TBA
Courtroom: Hon. Laurel Beeler
Courtroom 4, Oakland District Ct.

I, Ian A. Rivamonte, declare:

1. I am an attorney licensed to practice in all courts of the State of California and in this Court, and I am an associate of Kazan, McClain, Lyons, Greenwood & Harley, a Professional Law Corporation, attorneys of record for the plaintiffs herein. I have personal knowledge of the facts expressed in this declaration and, if asked, could and would testify competently to the truth of those facts.

2. Attached as Exhibit 1 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of plaintiffs' December 14, 2009 Complaint.

3. Attached collectively as Exhibit 2 hereto, and incorporated fully herein by reference, are true endorsed-filed copies of the January 22, 2010 Amendment to Complaint Adding

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/726899.1

Declaration of Ian Rivamonte in Support of Plaintiffs' Emergency Motion to Remand
Case No.: 4:11-cv-00061 (LB)

1

Doe Defendant and the January 28, 2010 Proof of Service of Summons and Complaint.

4. Attached as Exhibit 3 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of plaintiffs' May 3, 2010 First Amended Complaint.

5. Attached as Exhibit 4 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of plaintiffs' May 28, 2010 Second Amended Complaint.

6. Attached as Exhibit 5 hereto, and incorporated fully herein by reference, is a true copy of defendant McDonnell Douglas Corporation's ("McDonnell Douglas") April 15, 2010 Responses to Plaintiffs' Standard Interrogatories.

7. Attached as Exhibit 6 hereto, and incorporated fully herein by reference, is a true copy of McDonnell Douglas' March 31, 2010 First Set of Interrogatories to Plaintiffs Timothy and Caroline Vest.

8. Attached as Exhibit 7 hereto, and incorporated fully herein by reference, is a true copy of plaintiffs' May 12, 2010 Responses to McDonnell Douglas' First Set of Interrogatories to Plaintiffs.

9. Attached as Exhibit 8 hereto, and incorporated fully herein by reference, is a true copy of McDonnell Douglas' June 4, 2010 Responses to Plaintiffs' Special Interrogatories, Set One.

10. Attached as Exhibit 9 hereto, and incorporated fully herein by reference, is a true copy of McDonnell Douglas' July 12, 2010 Supplemental Responses to Plaintiffs' Special Interrogatories, Set One.

11. Attached as Exhibit 10 hereto, and incorporated fully herein by reference, is a true copy of McDonnell Douglas' December 17, 2010 Amended Responses to Plaintiffs' Special Interrogatories, Set One.

12. Attached as Exhibit 11 hereto, and incorporated fully herein by reference, is a true copy of plaintiffs' November 3, 2010 Responses to Lathrop Construction Associates, Inc.'s Request for Production of Documents, Set One.

13. Attached as Exhibit 12 hereto, and incorporated fully herein by reference, is a true copy of the cover page, attorney-appearance pages, reporter-certification page and all excerpts of

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

the transcript of James Hales' June 3, 2010 deposition testimony.

14. Attached as Exhibit 13 hereto, and incorporated fully herein by reference, is a true copy of the cover page, attorney-appearance pages, reporter-certification page and all excerpts of the transcript of Malcolm Benge's June 4, 2010 deposition testimony.

15. Attached as Exhibit 14 hereto, and incorporated fully herein by reference, is a true copy of the cover page, attorney-appearance pages, reporter-certification page and all excerpts of the transcript of Claude Fross' July 8, 2010 deposition testimony.

16. Attached as Exhibit 15 hereto, and incorporated fully herein by reference, is a true copy of the cover page, attorney-appearance pages, reporter-certification page and all excerpts of the transcript of Warren Vest's August 19, 2010 deposition testimony.

17. Attached as Exhibit 16 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of plaintiffs' June 4, 2010 Notice of Motion to Compel McDonnell Douglas' Compliance with Plaintiffs' Notice of Person Most Qualified and Custodian of Records Deposition and For Sanctions.

18. Attached as Exhibit 17 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of McDonnell Douglas' June 21, 2010 Opposition to Plaintiffs' Motion to Compel McDonnell Douglas' Compliance with Plaintiffs' Notice of Person Most Qualified and Custodian of Records Deposition and For Sanctions.

19. Attached as Exhibit 18 hereto, and incorporated fully herein by reference, is a true copy of Judge Kenneth Mark Burr's December 10, 2010 Order Granting Plaintiffs' Motion to Compel McDonnell Douglas' Compliance with Plaintiffs' Notice of Person Most Qualified and Custodian of Records Deposition.

20. Attached as Exhibit 19 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of plaintiffs' December 28, 2010 Notice of Motion and Motion to Compel McDonnell Douglas' Compliance with the Alameda County Superior Court's December 10, 2010 Discovery Order and For Monetary Sanctions.

21. Attached as Exhibit 20 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of McDonnell Douglas' January 4, 2011 Opposition to Plaintiffs' Motion to

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Compel McDonnell Douglas' Compliance with the Alameda County Superior Court's December 10, 2010 Discovery Order and For Monetary Sanctions.

22. Attached as Exhibit 21 hereto, and incorporated fully herein by reference, is a true copy of Judge Jo-Lynne Q. Lee's January 6, 2011 Tentative Ruling Granting Plaintiffs' Motion to Compel McDonnell Douglas' Compliance with the Alameda County Superior Court's December 10, 2010 Discovery Order.

23. Attached as Exhibit 22 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of McDonnell Douglas' July 1, 2010 Notice of Motion and Motion to Compel Further Responses to Special Interrogatories and Production of Documents.

24. Attached as Exhibit 23 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of plaintiffs' November 10, 2010 Opposition to McDonnell Douglas' Motion to Compel Further Responses to Special Interrogatories and Production of Documents.

25. Attached as Exhibit 24 hereto, and incorporated fully herein by reference, is a true copy of Judge Kenneth Mark Burr's November 24, 2010 Order Regarding McDonnell Douglas' Motion to Compel Further Responses to Special Interrogatories and Production of Documents.

26. Attached as Exhibit 25 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of McDonnell Douglas' October 29, 2010 Notice of Motion for Summary Judgment Or, in the Alternative, Summary Adjudication.

27. Attached as Exhibit 26 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of plaintiffs' December 30, 2010 Opposition to McDonnell Douglas' Motion for Summary Judgment Or, in the Alternative, Summary Adjudication.

28. Attached as Exhibit 27 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of McDonnell Douglas' December 16, 2010 Notice of Motion and Motion for Separate Trial Re: Medical Causation and/or Order Bifurcating Trial.

29. Attached as Exhibit 28 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of plaintiffs' January 3, 2011 Opposition to McDonnell Douglas' Motion for Separate Trial Re: Medical Causation and/or Order Bifurcating Trial.

30. Attached as Exhibit 29 hereto, and incorporated fully herein by reference, is a true

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

endorsed-filed copy of the December 22, 2010 Declaration of John Templin in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment/Adjudication.

31. Attached as Exhibit 30 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of the December 8, 2010 Declaration of Samuel P. Hammar, M.D. in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment/Adjudication.

32. Attached as Exhibit 31 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of the December 3, 2010 Declaration of William R. Salyer, M.D. in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment/Adjudication.

33. Attached as Exhibit 32 hereto, and incorporated fully herein by reference, is a true copy of the cover page, attorney-appearance pages, reporter-certification page and all excerpts of the transcript of Joseph B. Shrager, M.D.'s December 13, 2010 deposition testimony.

34. Attached as Exhibit 33 hereto, and incorporated fully herein by reference, is a true endorsed-filed copy of the Minutes of the July 2, 2010 Case Management Conference in this case.

35. I am the attorney who, on behalf of plaintiffs, researched and prepared this motion to remand. I have over six years of experience as a lawyer licensed to practice law in California and admitted to the Bar of this Court. When my time is billed, it is billed at the rate of $450 per hour. I devoted well more than 15 hours to researching and preparing this motion.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that I executed this declaration on January 10, 2011 at Oakland, California.

Ian A. Rivamonte

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET, SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

*Timothy Vest and Caroline Vest v. Allied Packing & Supply, Inc., et al.*

U.S.D.C., Northern District of California Case No. C-11-00061 LB

# Exhibit 1

Gordon D. Greenwood, Esq. (C.S.B. #136097)
Justin A. Bosl, Esq. (C.S.B. #241117)
KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation
171 Twelfth Street, Third Floor
Oakland, California 94607
Telephone: (510) 465-7728

Attorneys for Plaintiffs

ENDORSED
FILED
ALAMEDA COUNTY
DEC 17 2009
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

TIMOTHY VEST and CAROLINE VEST,

Plaintiffs,

vs.

ALLIED PACKING AND SUPPLY; CYPRUS AMAX MINERALS COMPANY, individually, and as successor in interest, parent, alter ego and equitable trustee of CYPRUS MINES CORPORATION, SIERRA TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION CYPRUS MINES CORPORATION and PAUL W. WOOD COMPANY; THE DEXTER CORPORATION; DOWMAN PRODUCTS, INC.; GARLOCK SEALING AND TECHNOLOGIES, LLC.; GEORGIA-PACIFIC LLC, formerly known as GEORGIA-PACIFIC CORPORATION; HAMILTON MATERIALS, INC.; HENKEL CORPORATION, individually and as successor in interest, parent, alter ego and equitable trustee to HENKEL LOCTITE CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee to THE DEXTER CORPORATION; HEXCEL CORPORATION; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY, INC.; KENTILE FLOORS, INC.; RAYMOND INTERIOR SYSTEMS-NORTH, individually and as successor in interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER, INC.; WORLD AIRWAYS, INC.;

No. RG09489518

**COMPLAINT FOR PERSONAL INJURIES; STRICT LIABILITY; BREACH OF WARRANTIES; NEGLIGENCE; FRAUD; AIDING AND ABETTING FRAUD; AIDING AND ABETTING BATTERY; CONSPIRACY; (ALTERNATIVE ENTERPRISE AND CONCERT OF ACTION LIABILITY); PREMISES LIABILITY; AND LOSS OF CONSORTIUM**

**Code of Civil Procedure § 36(d)**

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

METROPOLITAN LIFE INSURANCE COMPANY; and FIRST DOE through THREE HUNDRED THIRTIETH DOE, inclusive,

Defendants.

Plaintiff TIMOTHY VEST alleges:

## PRODUCTS DEFENDANTS:

### FIRST CAUSE OF ACTION

**Negligence**
**[Against All Product Defendants]**

**I.**

Plaintiff Timothy Vest brings this action on his own behalf. The masculine form as used in this complaint, if applicable as shown by the context hereof, applies to a female person or a corporation.

**II.**

Plaintiff does not know the true names and capacities, whether corporate, associate or individual of defendants sued herein as FIRST DOE through THREE HUNDRED THIRTIETH DOE, inclusive, and each of them, and for that reason prays leave to insert the true names and capacities of said defendants when the same are ascertained. Plaintiff is informed and believes and therefore alleges that each of the defendants designated herein as a DOE is negligently, intentionally and/or strictly liable or responsible in some manner for the events and happenings herein referred to, and proximately caused injury and damages to plaintiff thereby as herein alleged.

**III.**

At all times herein mentioned, each of the defendants was the agent and employee of each of the remaining defendants, and was at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of the remaining defendants.

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IV.

Defendants ALLIED PACKING AND SUPPLY; CYPRUS AMAX MINERALS COMPANY, individually, and as successor in interest, parent, alter ego and equitable trustee of CYPRUS MINES CORPORATION, SIERRA TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION CYPRUS MINES CORPORATION and PAUL W. WOOD COMPANY; THE DEXTER CORPORATION; DOWMAN PRODUCTS, INC.; GARLOCK SEALING AND TECHNOLOGIES, LLC.; GEORGIA-PACIFIC LLC, formerly known as GEORGIA-PACIFIC CORPORATION; HAMILTON MATERIALS, INC.; HENKEL CORPORATION, individually and as successor in interest, parent, alter ego and equitable trustee to HENKEL LOCTITE CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee to THE DEXTER CORPORATION; HEXCEL CORPORATION; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY, INC.; KENTILE FLOORS, INC.; RAYMOND INTERIOR SYSTEMS-NORTH, individually and as successor in interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER, INC.; WORLD AIRWAYS, INC.; METROPOLITAN LIFE INSURANCE COMPANY; FIRST DOE through FIFTIETH DOE, inclusive, were at all times herein and still are corporations authorized to and doing business in the State of California and are hereby designated PRODUCTS defendants.

V.

PRODUCTS defendants' products at issue in this complaint consist of asbestos and asbestos-containing products, or products as to which PRODUCTS defendants knew or should have known that reasonably foreseeable uses of the products would expose persons such as plaintiff who worked with or around the products to friable asbestos. These products were defective in their design, manufacture, labeling, marketing and/or warning and are referred to throughout this complaint as "asbestos" or "asbestos-containing products."

VI.

At all times herein mentioned defendants, and each of them, were engaged in the business of mining, manufacturing, assembling, supplying, packaging, installing and labeling asbestos, and products produced therefrom, for sale to and use by the members of the general public as well as to

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

other parties for use of the said products to manufacture and supply products therefrom.

**VII.**

At all times herein mentioned, defendants FIFTY-FIRST DOE through TWO HUNDRED TENTH DOE were Officers and Directors of named defendants herein as FIRST DOE through FIFTIETH DOE.

**VIII.**

The defendants, and each of them, acting through their agents, servants and/or employees, cause and have caused in the past, certain asbestos-containing products and asbestos-related materials, to be placed in the stream of commerce with the result that said products and materials came into contact and/or use by plaintiff.

**IX.**

Plaintiff Timothy Vest was exposed to asbestos brought home on his father's, Warren Vest's, clothes, shoes, person and other items transported into the home from his work as a worker at World Airways, Inc., located in Oakland, California from 1965 to 2005. Also, as a worker from the period 1985-2001, plaintiff worked with and was exposed to asbestos, asbestos products and asbestos-related insulation and building materials mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them. During the course of his work plaintiff was exposed to asbestos and asbestos-containing materials at a number of locations and in a number of employments, including, without limitation:

(1) From 1985 to 1988 while working as a ramp supervisor at Continental Airlines, Inc. at Los Angeles International Airport in Los Angeles, California;

(2) In 1986 while working for Sandy's Ski Rentals in Santa Monica, California.

(3) In 1989 while working for Fletcher's Team and Ski in Livermore, California.

(4) From 1990 to 2001 while working as a Commercial Airline Pilot at Emery Worldwide Airlines, Inc. in New York, New York; Dayton, Ohio; Oakland, California; and Los Angeles, California.

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

X.

During the course and scope of plaintiff's father's work and plaintiff's work, plaintiff was exposed to asbestos products and asbestos-related materials of defendants, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

XI.

The illness and disability of plaintiff is the direct and proximate result of the negligence of the defendants, and each of them, in that they produced, sold and otherwise put into the stream of commerce, the foregoing materials which the said defendants, and each of them, knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to plaintiff's body, lungs, respiratory system, skin and health.

XII.

Plaintiff, exercising reasonable diligence, discovered the aforealleged conduct, misconduct and culpability of defendants, and each of them, on or after October 2009, when a physician informed him of diagnosis of his asbestos-related mesothelioma. Plaintiff could not have discovered such condition sooner because such condition was brought about without noticeable trauma until it had advanced to such a point that diagnosis could be made. Such a diagnosis required the services of an expert, and since plaintiff did not possess such expertise, he could not know, in the exercise of reasonable care, of the cause of his injury until such time as he was diagnosed and advised. Plaintiff could not know, until such advice, of the culpability of the defendants, and each of them.

XIII.

As a direct and proximate result of the conduct of the defendants, and each of them, plaintiff experienced and continues to experience prolonged pain and suffering, the necessity for medical treatment, injuries including, but not limited to, mesothelioma, severe shock to his nervous system, and other injuries, the exact extent of which are unknown to plaintiff.

XIV.

By reason of the aforesaid allegations, it has been necessary for plaintiff to engage the services of physicians, surgeons, and hospitals; plaintiff does not know the reasonable value of said

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

services which were and are still reasonably required and requests leave to amend this complaint to insert said sum when it is ascertained.

XV.

By reason of the aforesaid allegations, plaintiff has been unable to follow his normal gainful occupation for certain periods after the date of said events, and plaintiff has been disabled for an indefinite time; plaintiff does not now know the value of the employment which has been lost to him, and requests leave to amend this complaint to insert the reasonable value thereof when such is ascertained.

XVI.

By reason of the aforesaid negligence of defendants, and each of them, plaintiff has been damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to special damages herein alleged.

XVII.

The foregoing acts of the defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## SECOND CAUSE OF ACTION

**Breach of Implied Warranty**
**[Against All Product Defendants]**

AS AND FOR A SECOND CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

**I.**

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence. Defendants made this implied warranty to plaintiff's employer, plaintiff's father, plaintiff's father's employer, and/or others with whom plaintiff was in privity.

**II.**

The defendants, and each of them, impliedly warranted that the said materials were of good and merchantable quality and fit for their intended use.

**III.**

The implied warranty made by the defendants, and each of them, that the asbestos and asbestos-related materials were of good and merchantable quality for the particular intended use was breached in that certain harmful, poisonous and deleterious matter and particles were given off into the atmosphere wherein plaintiff's father and plaintiff and others in their positions carried out their duties as workers working with such materials and other related materials.

**IV.**

As a direct and proximate result of the breach of implied warranty of good and merchantable quality and fitness for the particular intended use, plaintiff developed an illness, to wit: mesothelioma, which caused great disability, as previously set forth.

**V.**

By reason of the aforesaid, plaintiff has been damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to special damages herein alleged.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

### THIRD CAUSE OF ACTION

**Strict Product Liability**
**Manufacturing Defect/Design Defect/Failure to Warn**
**[Against All Product Defendants]**

AS AND FOR A THIRD CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

**I.**

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence.

**II.**

At all times herein mentioned, plaintiff's father's employer and plaintiff's employer or those entities that installed and/or handled the products to which plaintiff was exposed purchased from defendants, and each of them, asbestos and asbestos products hereinafter referred to as products that were defective in design, manufacturing, labeling, marketing and/or warning.

**III.**

Defendants, and each of them, knew that the aforementioned products would be used without inspection for design, manufacturing, labeling, marketing and/or warning defects by the user thereof.

**IV.**

At all times mentioned herein, plaintiff reasonably was unaware of the dangerous nature of the aforementioned products.

**V.**

At all times mentioned herein, defendants, and each of them, were aware of the dangerous and defective nature of the design, manufacturing, labeling and/or marketing of the aforementioned products, when said products were used in the manner for which they were intended, and were aware that persons who foreseeably would be exposed to the asbestos containing products were not aware of the dangerous and defective nature of the design, manufacture, labeling and/or marketing of the products, yet defendants took no action to warn or otherwise protect those who foreseeably

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

would be exposed to said defective and improperly labeled products.

VI.

PRODUCTS defendants manufactured, distributed, and sold asbestos-containing products. The asbestos-containing products contained a manufacturing defect when they left PRODUCTS defendants' possession, and plaintiff's father and plaintiff used those asbestos-containing products in a way that was reasonably foreseeable to defendants.

VII.

The aforementioned products were defective in design because they did not perform as safely as an ordinary consumer would have expected them to perform. At the time plaintiff's father and plaintiff used the asbestos-containing products, they were substantially the same as when they left PRODUCTS defendants' possession; any change made to the asbestos-containing products after they left defendants' possession was reasonably foreseeable to defendants; the asbestos-containing products did not perform as safely as an ordinary consumer would have expected at the time of use; and Plaintiff used the products in the way that was reasonably foreseeable to PRODUCTS defendants.

VIII.

The aforementioned products lacked sufficient instructions and warnings of potential dangers. PRODUCTS defendants manufactured, distributed, and sold asbestos-containing products; those asbestos-containing products had potential dangers that were known or knowable by the use of scientific knowledge available at the time of the manufacture, distribution, and sale of the products; the potential hazards presented a substantial danger to Plaintiff; ordinary consumers would not have recognized the potential dangers; PRODUCTS defendants failed to adequately warn or instruct of the potential dangers; and these asbestos-containing products were used in a way that was reasonably foreseeable to PRODUCTS defendants.

IX.

The aforementioned products were used by plaintiff's father and plaintiff in the manner for which they were intended, or plaintiff foreseeably was exposed to said products when they were used in the manner for which they were intended.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

X.

As a direct and proximate result of the foregoing conduct, plaintiff developed an illness, to wit: mesothelioma, which caused great disability, as previously set forth.

XI.

As a proximate result of the defective design, manufacturing, labeling, marketing and/or warning of these aforementioned materials and products, plaintiff was generally damaged as is more fully set forth herein and in addition has sustained special damages hereinabove alleged.

XII.

The foregoing acts of the defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that the foregoing products and materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## FOURTH CAUSE OF ACTION

**Fraud/Failure to Warn**
**[Against All Product Defendants]**

AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

I.

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence.

II.

At all times pertinent hereto, the defendants, and each of them, owed plaintiff a duty, as provided for in Sections 1708 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. In violation of that duty, the defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1710, and more specifically were suggestions of fact which were not true and which the defendants did not believe to be true, assertions of fact of that which was not true, which the defendants had no reasonable ground for believing it to be true, and the suppression of facts when a duty existed to disclose it, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned code sections.

III.

Since 1924, the defendants, and each of them, have known and have been possessed of the true facts consisting of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of plaintiff's father, plaintiff, and others in plaintiff's father's and plaintiff's position working in close proximity with such materials and have known of the dangerous propensities of other of the aforementioned materials and products prior to that time and with intent to deceive plaintiff's father and plaintiff, and others in their positions and with intent that he and such others should be and remain ignorant of such facts and with intent to induce plaintiff's father and plaintiff and such others to alter their positions to their injury and/or risk and in order to gain advantages did do the following acts:

a. Defendants, and each of them, did not label any of the aforementioned asbestos-

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

containing materials and products as to the hazards of such materials and products to the health and safety of plaintiff's father and plaintiff and others in plaintiff's father's and plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the defendants herein, when the knowledge of such hazards was existing and known to defendants, and each of them, since 1924. By not labeling such materials as to their said hazards defendants, and each of them, caused to be suggested as a fact to plaintiff's father and plaintiff and plaintiff's father's and plaintiff's employers that it was safe for plaintiff's father and plaintiff to work in close proximity to such materials when in fact it was not true and defendants did not believe it to be true;

b. Defendants, and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when defendants were bound to disclose such information;

c. Defendants, and each of them, sold the aforementioned products and materials to plaintiff's father's employer and plaintiff's employer and others without advising such employers and others of the dangers of use of such materials to persons working in close proximity thereto, when defendants knew of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers. Thereby, defendants caused to be positively asserted to plaintiff's father's employer and plaintiff's employer of that which was not true and which defendants had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by said defendants, and each of them, of that which was and is not true, to wit, that it was safe for plaintiff's father and plaintiff to work in close proximity to such materials;

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

d. Defendants, and each of them, suppressed from everyone, including plaintiff's father and plaintiff and plaintiff's father's employer and plaintiffs employer, and continue to suppress, medical and scientific data and knowledge of the accurate results of studies including, but not limited to, suppressing information contained in the unpublished Lanza report by participating in the influencing of A.J. Lanza to change his report, which altered version was published in *Public Health Reports*, Volume 50 at page 1 in 1935, when they were bound to disclose it unaltered, and by causing Asbestos Magazine, a widely disseminated trade journal, to omit any mention of the dangers of inhaling asbestos dust, thereby lessening the probability of notice of danger to those exposed to asbestos, and thereby caused plaintiff's father and plaintiff to be and remain ignorant thereof;

e. Defendants, and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and/or other industry organizations which actively promoted the suppression of information of danger to users of the aforementioned products and materials for and on behalf of defendants, and each of them, thereby misleading plaintiff's father and plaintiff and plaintiff's father's employer and plaintiffs employer to their prejudice through the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (I) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to plaintiff at this time;

f. Commencing in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein. Between 1942 and 1950 the defendants, and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein. Thereby, defendants suggested as a fact that which is not true and disseminated other facts likely to mislead plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer and which did mislead them for want of communication of true facts which consisted of the aforedescribed medical and scientific data and other knowledge by not giving plaintiff's father and plaintiff or plaintiff's father's employer and plaintiff's employer the true facts concerning such knowledge of danger, when defendants were bound to disclose it;

g. Failed to warn plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer of the nature of the said materials, to wit: dangerous when breathed, causing pathological effects without noticeable trauma, when possessed with knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it;

h. Failed to provide plaintiff's father and plaintiff with information concerning adequate protective masks and devices for use with and application and installation of the products of the defendants, and each of them, when they knew that such protective measures were necessary, when they were under a duty to disclose such information, and if not advised as to use would result in injury to plaintiff's father and plaintiff and others applying and installing such materials;

i. Concealed from plaintiff's father and plaintiff the true nature of the industrial exposure of plaintiff, the fact that they and each of them, knew that plaintiff's father and plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and such person would immediately be in not good health, the fact that he had

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

in fact been exposed to harmful materials and the fact that the materials to which he was exposed would cause pathological effects without noticeable trauma, when under a duty to and bound to disclose it;

j. Failed to provide information to the public at large and buyers, users and physicians employed by plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer for the purpose of conducting physical examinations of plaintiff's father and plaintiff and others working in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose, and treat workers coming into contact with asbestos, in that the materials to which plaintiff's father and plaintiff had been exposed would cause pathological effects without noticeable trauma, when under a duty to supply such information and such failure is likely to mislead for want of communication of such facts; and

k. Defendants, and each of them, affirmatively misrepresented that asbestos containing products were safe to use and handle, when they knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

IV.

Each of the foregoing acts, suggestions, assertions and forbearances to act when a duty existed to act, the said defendants, and each of them, having such knowledge, knowing plaintiff's father and plaintiff did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce plaintiff's father and plaintiff to work in a dangerous environment and to cause plaintiff's father and plaintiff to remain unaware of the true facts, all in violation of Section 1710 of the Civil Code of the State of California.

V.

Plaintiff's father and plaintiff relied upon the said acts, suggestions, assertions and forbearances; had plaintiff's father and plaintiff known the true facts, they would not have continued to work in the said environment.

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

VI.

By reason of the aforesaid premises, plaintiff has been damaged in his health, strength and activity in addition to special damages hereinabove alleged.

VII.

Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, and each of them, and plaintiff is entitled to exemplary and punitive damages. The foregoing conduct of the defendants, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff's father and plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's employer and plaintiffs employers or to those entities that installed and/or handled the asbestos products to which plaintiff's father and plaintiff were exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. In addition to the unlawful conduct described above, the defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

VIII.

Plaintiff had no knowledge that the foregoing acts were actionable at law when they were committed, and cannot be charged with knowledge or inquiry thereof.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

///

///

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Case4:11-cv-00061-LB Document17-4 Filed01/10/11 Page18 of 47

**FIFTH CAUSE OF ACTION**

**Conspiracy to Defraud/Failure to Warn**
**[Against All Product Defendants]**

AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

**I.**

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence and agency, and the Fourth Cause of Action herein.

**II.**

At all times mentioned, the defendants, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon plaintiff the acts complained of as set forth in the First and Fourth Causes of Action as are incorporated herein.

**III.**

Defendants, and each of them, did the acts and things herein alleged in Paragraph II of the Fourth Cause of Action, incorporated herein, in furtherance of the conspiracy and agreement as herein alleged and did further conspire to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time, but known full well to defendants and each of them.

**IV.**

Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, and each of them, and plaintiff is entitled to exemplary and punitive damages. The foregoing conduct of the defendants, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's employer and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff's father and plaintiff were exposed, knew that the

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. In addition to the unlawful conduct described above, the defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

V.

By reason of the aforesaid acts of defendants, and each of them, plaintiff has suffered damage to his health, strength and activity.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**Market Share/Enterprise Liability/Negligence**
**[Against All Product Defendants]**

AS AND FOR A SIXTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

I.

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First Cause of Action.

II.

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times relevant herein, the number of producers of asbestos and asbestos products of the type that plaintiff used or was otherwise exposed to, and the nature and structure of the asbestos market and industry, was such that there is and was a substantial likelihood that plaintiff would have actually used or otherwise been exposed to the products of each of the defendants.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**SEVENTH CAUSE OF ACTION**

**Market Share/Enterprise Liability/Strict Liability/Defective Product Design, Manufacturing, Labeling, Marketing and/or Warning**
**[Against All Product Defendants]**

AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

**I.**

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Third Cause of Action and in Paragraph II of the Sixth Cause of Action.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**EIGHTH CAUSE OF ACTION**

**Market Share/Concert of Action/Negligence**
**[Against All Product Defendants]**

AS AND FOR AN EIGHTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants and each of them, and alleges:

**I.**

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First Cause of Action, Paragraph II of the Fourth Cause of Action, and Paragraph II of the Sixth Cause of Action.

**II.**

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times relevant herein, each of the defendants has:

(1) Cooperated in the defective design, manufacturing, labeling and/or marketing of uniformly defective and dangerous asbestos products;

(2) Knowingly adhered to an inadequate industry-wide standard of safety that failed to warn plaintiff, or any other person likely to be exposed to the hazards caused by the use of their products, that exposure to asbestos fibers could cause asbestosis, mesothelioma, and lung cancer and other cancers and diseases or that it could otherwise cause death or serious permanent disability;

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

(3) Delegated research, investigative, and other safety functions to various trade associations and industry leaders that failed to adequately and accurately investigate the risks caused by the use of asbestos and that minimized and suppressed the publication of the information concerning the hazards of asbestos; and

(4) Otherwise jointly created and controlled the risk that was the proximate cause of the injuries of plaintiff.

III.

Plaintiff is informed and believes and thereon alleges that at all times relevant herein, the nature and structure of the asbestos industry and market was such that the foregoing acts and omissions of each of the defendants, acting separately and in combination, were a substantial factor in bringing about the aforesaid injury-causing standards, practices and risk, and were otherwise the proximate and legal cause of, and a substantial factor in, bringing about the injuries to plaintiff.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**NINTH CAUSE OF ACTION**

**Market Share/Concert of Action/Strict Liability/Defective Product Design [Against All Product Defendants]**

AS AND FOR A NINTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

I.

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Third Cause of Action, Paragraph II of the Fourth Cause of Action, Paragraph II of the Sixth Cause of Action, and Paragraphs II and III of the Eighth Cause of Action.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**TENTH CAUSE OF ACTION**

**Market Share/Concert of Action/Conspiracy to Defraud/Failure to Warn [Against All Product Defendants]**

AS AND FOR A TENTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

I.

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Fifth and Ninth Causes of Action.

II.

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times herein, each of the defendants knew that the aforesaid failure to warn was industry-wide and that the use of their products and the products of others in the industry, without inspection and protection from the hazards of dust inhalation and without an adequate warning by any of them, created and increased the risk of death and disease from cancer, asbestosis, and other related diseases.

III.

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times herein, each of the defendants, acting in concert and pursuant to a common plan, and in order to maximize the sale of their products and to minimize claims for damages and compensation, knowingly assisted, aided, abetted, encouraged and ratified the conduct of each other:

(1) In the defective design, manufacturing, labeling and/or marketing of a uniformly defective and hazardous asbestos product without adequate tests and without an adequate warning to their consumers and users; and

(2) In suppressing and discouraging the discovery and publication of information concerning the true hazards of asbestos by and to the public at large.

Said conduct was the proximate and legal cause of, and a substantial factor in, bringing about the injuries of plaintiff.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

///

///

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## PREMISES DEFENDANTS:

### ELEVENTH CAUSE OF ACTION

**Negligence/Failure to Warn**
**[Against All Premises Defendants]**

AS AND FOR AN ELEVENTH CAUSE OF ACTION, plaintiff complains of defendants WORLD AIRWAYS, INC.; TWO HUNDRED ELEVENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE, inclusive. These defendants were at all times herein and still are corporations authorized to and doing business in the State of California, and are hereafter designated the PREMISES defendants. Plaintiff alleges against the PREMISES defendants, and each of them:

**I.**

Plaintiff, by this reference, hereby incorporates and makes a part thereof, as though fully set forth herein, each and every allegation contained in the First through Tenth Causes of Action herein.

**II.**

Plaintiff does not know the true names or capacities of the defendants sued herein under the fictitious names of TWO HUNDRED ELEVENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE, inclusive, whether corporate, associate or individual, and plaintiff prays leave to amend this complaint to allege said true names and/or capacities when the same are ascertained. Plaintiff is informed and believes and therefore alleges that each of the defendants designated herein as a DOE is negligently, intentionally and/or strictly liable or responsible in some manner for the events and happenings herein referred to, and proximately caused injury and damages to plaintiff as hereinafter alleged.

**III.**

At all times herein mentioned, defendants TWO HUNDRED TWENTY-SIXTH DOE through TWO HUNDRED SEVENTY-FIFTH DOE were Officers and Directors of named defendants herein as TWO HUNDRED ELEVENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IV.

At all times mentioned herein, the PREMISES defendants each respectively owned, maintained, managed, and/or controlled one or more of those premises where plaintiff's father worked while employed as set forth in Part VIII of the First Cause of Action, which is herein incorporated by reference.

V.

Prior to and at said times and places, each said PREMISES defendant caused certain asbestos-containing insulation and other building materials and products and machinery to be specified, manufactured, constructed, supplied, installed, maintained, used, replaced, and/or repaired and otherwise be present at the aforesaid premises, by its own workers and/or various independent contractors so as to allow and cause the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby contaminate the entire premises and create a hazardous condition and unreasonable risk of harm and personal injury to plaintiff's father and plaintiff and other persons exposed to said asbestos fibers while working on said premises, or otherwise using or coming on said premises, unless special precautions were taken.

VI.

At all relevant times mentioned herein, each said PREMISES defendant had a nondelegable duty to exercise reasonable care to inspect and make safe the premises it owned, maintained, managed and/or controlled, and to discover the aforesaid dangerous conditions. PREMISES defendants, and each of them, also created or contributed to said dangerous conditions, by specifying, manufacturing, supplying, installing, maintaining, using, replacing, repairing, and/or requiring the use and/or handling of asbestos-containing materials on said premises, and by failing to properly supervise their own employees or the employees of others over whom said defendants had control in performing work which caused the release of asbestos fibers into the ambient air and the contamination of the entire premise, when defendants knew or in the exercise of ordinary and reasonable care should have known that the foregoing conditions and activities were present on said premises and created a dangerous and hazardous condition and unreasonable risk of harm and personal injury to plaintiff and other persons coming on the aforesaid premises.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

VII.

At all times relevant herein, plaintiff's father entered said premises and used and occupied said premises as intended and for the benefit and advantage of each said PREMISES defendant and at each said PREMISES defendant's request and invitation. In so doing, plaintiff's father and plaintiff were exposed to dangerous quantities of asbestos fibers released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by each said PREMISES defendant.

VIII.

Plaintiff's father at all relevant times used the premises with due care and was unaware of and in the exercise of ordinary care could not have discovered the risk of personal injury and the hazardous conditions created by the aforesaid presence of asbestos products and materials on said premises.

IX.

At all relevant times mentioned herein, each said PREMISES defendant knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in its control would be used as alleged without knowledge of, or inspection for, defects or dangerous conditions, which were not apparent or obvious, and that persons using said premises would not be aware of the aforesaid hazardous conditions and contamination on the premises to which they were exposed.

X.

At all times pertinent hereto, the PREMISES defendants, and each of them, owed plaintiff's father and plaintiff a duty, as provided in Section 1708 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of plaintiff's father and plaintiff. When a duty to act was imposed, as set forth herein, the defendants, and each of them, did do the acts and omissions in violation of that duty, thereby proximately causing injury to the plaintiff as is more fully set forth herein.

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Case4:11-cv-00061-LB Document19-4 Filed01/10/11 Page26 of 47

XI.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to warn plaintiff's father and plaintiff and plaintiff's father's employer that said materials were dangerous when breathed and caused pathological effects without noticeable trauma, despite the fact that defendants possessed knowledge and were under a duty to disclose that such material was dangerous and a threat to the health of persons coming into contact therewith.

XII.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to provide plaintiff's father and plaintiff with information concerning adequate protective masks and devices to be used when applying, installing, disturbing, or otherwise working around asbestos-containing products, and each of them, despite the knowledge of the PREMISES defendants and a duty to disclose that such protective measures were necessary and would result in injury to the plaintiff and others applying, installing, disturbing, or otherwise working around such materials if not so advised.

XIII.

At all relevant times mentioned herein, PREMISES defendants, and each of them, concealed from plaintiff the true nature of the industrial exposure of plaintiff, and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and that the materials to which he was exposed would cause pathological effects without noticeable trauma despite the fact that PREMISES defendants were under a duty to and bound to disclose it.

XIV.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by plaintiff's father and plaintiff and plaintiff's father's employer so that said physicians could examine, diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that PREMISES defendants, and each of them, were under a

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

duty to so inform and said failure was misleading.

XV.

At all relevant times mentioned herein, said PREMISES defendants, and each of them, negligently failed to take steps to abate or correct the dangerous conditions, or to make the premises safe or to warn plaintiff's father and plaintiff of the existence of the aforesaid dangerous conditions and hazards on said premises, although the risk of plaintiff's injuries was a foreseeable consequence of the negligence of defendants and each of them.

XVI.

As a legal consequence of the foregoing, plaintiff developed an asbestos-related disease which caused illness and death as previously set forth and has suffered general and special damages as alleged herein.

XVII.

The foregoing acts of the PREMISES defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, by the defendants, and each of them, in that the defendants, and each of them knew, at the time defendants manufactured, supplied or required the use and/or handling of asbestos-containing materials and/or failed to properly supervise their own employees or the employees of others over whom defendants had control who installed and/or handled the asbestos products to which plaintiff's father and plaintiff were exposed, that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## TWELFTH CAUSE OF ACTION

### Negiligent Hiring and Negligent Exercise of Retained Control [Against All Premises Defendants]

AS AND FOR A TWELFTH CAUSE OF ACTION, plaintiff complains of PREMISES defendants, and each of them, as follows:

I.

Plaintiff refers to and incorporates herein by reference the First through Eleventh Causes of Action of this Complaint.

II.

At all relevant times herein, the PREMISES defendants and each of them negligently hired, retained and kept contractors on jobs to perform asbestos related work, and knew or in the exercise of reasonable care and diligence should have known that the contractors, independent contractors, subcontractors, employees, manufacturers, suppliers, distributors, workers and others these defendants employed or engaged to or responsible for the manufacture, distribution, installation, inspection, maintenance, repair, replacement, removal and/or disposing of asbestos and asbestos-containing materials on the aforementioned premises were incompetent and unfit to perform the duties for which they were employed, retained, hired or used, and that an unreasonable risk of harm to plaintiff's father and plaintiff and other persons on the aforesaid premises would exist as a legal consequence of such initial and/or continued employment, retention or contract. PREMISES defendants and each of them failed to exercise reasonable caution in selecting, retaining and continuing to use each of the employees, contractors, independent contractors and/or subcontractors who performed asbestos-related work, including those that employed plaintiff's father, even though said PREMISES defendants knew or in the reasonable exercise of ordinary and reasonable care should have known that failure to choose these persons carefully to perform asbestos-related work and/or allow such persons to continue to perform asbestos-related work after the PREMISES defendants, and each of them, became aware of the negligent manner in which the work was being performed created a dangerous and hazardous condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed while working for or

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

in the vicinity of negligent contractors or exposed to asbestos fibers on such persons' clothing, shoes and person. PREMISES defendants, and each of them, also negligently exercised the control they retained of the operative details – including, without limitation, the asbestos-related details – of plaintiff's father's and plaintiff's work, thereby negligently exposing plaintiff's father and plaintiff to asbestos that was a legal cause of plaintiff's mesothelioma.

III.

The foregoing acts of the PREMISES defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, by the defendants, and each of them, in that the defendants, and each of them knew – at the time defendants manufactured, supplied or required the use and/or handling of asbestos-containing materials to which plaintiff's father and plaintiff were exposed, and/or failed to properly train, hire and/or supervise their own employees or the employees of others over whom defendants had control who installed and/or handled the asbestos products to which plaintiff was exposed, and/or negligently exercised the control they retained of the asbestos-related details of plaintiff's father's and plaintiff's – that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

///

///

///

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET - THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## THIRTEENTH CAUSE OF ACTION

**Conspiracy/Concert of Action**
**[Against Metropolitan Life Insurance Company and Does 276-330, Inclusive]**

I.

Plaintiff hereby incorporates by reference each and every allegation of the preceding causes of action herein. (As used throughout this cause of action, "plaintiff" refers to all named plaintiffs.)

II.

The term "conspirators" as used in this cause of action includes, but is not limited to, METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), Anthony Lanza, M.D., Johns-Manville Corporation ("Manville"), Raybestos-Manhattan Corporation ("Raybestos") and the other entities and individuals identified in this cause of action.

III.

Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned defendant METROPOLITAN LIFE INSURANCE COMPANY was and is a corporation organized and existing under and by virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is doing business in the State of California, and regularly conducted or conducts business in the County of Alameda, State of California. At times relevant to this cause of action, MET LIFE was an insurer of Manville and Raybestos.

IV.

Plaintiff was exposed to asbestos-containing dust created by the use of the asbestos products manufactured, distributed and/or supplied by one or more of the conspirators named below. The exposure to the asbestos or asbestos-related products supplied by the conspirator(s) caused plaintiff's asbestos-related disease, injuries and/or death.

V.

The conspirators, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves, with other asbestos manufacturers and distributors, with certain individuals including but not limited to Anthony Lanza, M.D. ("Lanza") and with defendant MET

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

LIFE to injure plaintiff in the following fashion (the following is not an exclusive list of the wrongful acts of the conspirators, but, rather, is a representative list):

(a) Beginning in 1929, MET LIFE entered agreements with Manville and others to fund studies of the effects of asbestos exposure on Canadian asbestos miners. When the data from these studies proved that Canadian asbestos miners were developing asbestosis, MET LIFE, Manville and others suppressed its publication; further, Lanza (then a MET LIFE employee) actively misrepresented the results of the Canadian study for many years thereafter to meetings of health-care professionals seeking information regarding asbestos exposure.

(b) In approximately 1934, conspirators Manville and MET LIFE, through their agents Vandiver Brown and attorney J.C. Hobart, and conspirator Raybestos, through its agents Sumner Simpson and J. Rohrback, suggested to MET LIFE associate director Lanza that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts and conclusions about asbestos, including but not limited to descriptions of the seriousness of the asbestosis disease process. The misrepresentation was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestosis as a disease process less critical than it was known to be by the conspirators. As a result, Lanza's study was published in the medical literature in 1935 with these misleading statements. The conspirators were motivated to effectuate this fraudulent misrepresentation and fraudulent non-disclosure in part by the desire to influence proposed legislation to regulate asbestos exposure, to provide a defense in lawsuits involving Manville, Raybestos and MET LIFE (as Manville's and Raybestos's insurer), and to promote the use of Manville's and Raybestos's asbestos products.

(c) The above-described conspiracy continued in 1936, when additional co-conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Manville, Keasbey & Mattison Company (then an alter ego to conspirator Turner & Newall), Raybestos, Russell Manufacturing (whose liabilities have been assumed by H.K. Porter Company), Union Asbestos and Rubber Company and United States Gypsum Company entered into an agreement with a leading medical research facility, the Saranac Laboratories. Under the

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

agreement, the conspirators acquired the power to decide what information Saranac Laboratories could publish regarding asbestos disease and could also control in what form such publications were to occur. Their agreement provided these conspirators the power and ability to affirmatively misrepresent the results of the work at Saranac Laboratories, and also gave these conspirators power to suppress material facts included in any of the facility's studies. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings concerning the health effects of asbestos exposure.

(d) The conspiracy was furthered when on November 11, 1948 representatives of the following conspirators met at Manville headquarters: Manville, American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company (then an alter ego of conspirator Turner & Newall), Raybestos, Thermoid Company (whose assets and liabilities were later purchased by H.K. Porter Company), Union Asbestos and Rubber Company, United States Gypsum Company and MET LIFE. U.S. Gypsum did not send a company employee to the meeting, but instead authorized Vandiver Brown of Manville to represent its interest at the meeting and to take action on its behalf.

(e) At the November 11, 1948 meeting, these conspirators and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research conducted by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards for asbestos-dust exposure.

(f) At this meeting, these conspirators intentionally and affirmatively decided that Dr. Gardner's work should be edited to delete material facts about the cancer-causing propensity of asbestos, the health effects of asbestos on humans and the critique of the dust standards. The conspirators then published these deceptive and fraudulent statements in the medical literature as edited by Dr. Vorwald. These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to both the public and the class of persons exposed to asbestos, including

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

plaintiff's father and plaintiff.

(g) As a direct result of influence exerted by the conspirators, a Dr. Vorwald in 1951 published Dr. Gardner's edited work in *The Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health* in a form that stressed those portions of Dr. Gardner's work that the conspirators wished to be stressed, but that omitted reference to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of asbestos's risks. The conspirators affirmatively and deliberately disseminated this deceptive and fraudulent Vorwald publication to university libraries, government officials, government agencies and others.

(h) Such actions constitute a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

(I) When Dr. Vorwald subsequently tried to publish more complete information regarding Dr. Gardner's animal studies, the conspirators required his discharge from the Saranac Laboratories, denied him permission to publish or complete Dr. Gardner's work and actively discouraged institutions of higher learning from hiring or retaining Dr. Vorwald in any capacity.

(j) The following conspirators were members of the trade association known as Quebec Asbestos Mining Association (Q.A.M.A.): Manville, Carey-Canada individually and as successor in interest to Quebec Asbestos Corporation, the Celotex Corporation as successor in interest to Quebec Asbestos Corporation, National Gypsum Company and Turner & Newall as successor in interest to Bell Asbestos. These conspirators, members of Q.A.M.A., participated in the above-described misrepresentation of the work of Dr. Leroy Gardner published by Arthur Vorwald in the *AMA Archives of Industrial Health* in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 1/29/47, 11/26/47, 3/6/48, 10/15/48, 3/8/49 and 9/6/50, all indicating close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, who acted on behalf of all Q.A.M.A. members.

(k) In furtherance of the conspiracy that commenced in 1929, conspirators who were members of the Q.A.M.A. as described above began in about 1950 to formulate a plan to influence

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

public opinion concerning the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory control of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

(l) This plan of misrepresentation and influence over the medical literature began in about 1950 when the aforementioned Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Arthur Vorwald in 1952 indicated that, based on experiments with laboratory animals, a cancer/asbestos relationship might exist, these Q.A.M.A. members refused to further fund the study, terminated the study and prevented any public discussion or dissemination of the results.

(m) As a result of the termination of the Q.A.M.A./Saranac study, the conspirators fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer. These affirmative misrepresentations were made by conspirators and conspirators' agents K.W. Smith, M.D., Paul Cartier, M.D., A.J. Vorwald, M.D., Lanza, Vandiver Brown and Ivan Sabourin and were directed to, among others, U.S. government officials, Canadian government officials, the U.S. National Cancer Institute, medical organizations, health professionals and the general public, including plaintiff.

(n) The Q.A.M.A. conspirators subsequently contracted with the Industrial Hygiene Foundation and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Drs. Braun and Truan (Braun and Truan) reported to the Q.A.M.A. that asbestosis did increase a worker's risk of developing lung cancer.

(o) The Q.A.M.A. conspirators, in furtherance of the conspiracy that began in 1929, caused the work by Braun and Truan to be published in 1958, but with the findings concerning the increased incidence of cancer in asbestos-exposed persons edited out and stricken by agents of the Q.A.M.A. The published version of the Braun/Truan study contained a conclusion that asbestos exposure alone did not increase the incidence of lung cancer, a conclusion known by the

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

conspirators to be false.

(p) By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting documented findings that asbestosis did increase the risk of lung cancer, the conspirators affirmatively misrepresented to, and concealed from, the public the extent of the risks associated with inhaling asbestos fibers.

(q) In furtherance of the ongoing 1929 conspiracy, the Q.A.M.A. in about 1958 publicized the fraudulently edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that inhaling asbestos fibers did not cause cancer.

(r) The foregoing fraudulent misrepresentations, which began in 1929 and continued with the publication in 1958 of the Braun/Truan study, influenced the standards set for acceptable levels of asbestos exposure. The developers of such standards failed to lower the maximum exposure limits because a cancer risk associated with asbestos inhalation had not been proven.

(s) In furtherance of the 1929 conspiracy, Q.A.M.A. conspirators decided at their trade association meeting in 1967 that they would intentionally mislead consumers about the extent of risks associated with inhaling asbestos.

(t) In furtherance of the 1929 conspiracy, a symposium concerning the health effects of asbestos was conducted at the Saranac Laboratories in 1952. The following conspirators were in attendance: MET LIFE, Lanza, Manville, Turner & Newall, Raybestos and Q.A.M.A. members through their agents Cartier, Sabourin and LaChance.

(u) At the 1952 Saranac meeting, the occurrence of lung cancer and asbestosis in product users was discussed, as was the carcinogenic properties of all asbestos-fiber types. In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these conspirators conspired to prevent publication of the record of this 1952 Saranac Symposium, and it was not published. In addition, the conspirators induced Vorwald not to announce the results of his and Dr. Gardner's laboratory studies showing excess cancers in asbestos-exposed animals. The conspirators in this way fraudulently misrepresented existing secret data that was prevented from being publicized

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

because of the secrecy provisions contained in the previously described 1936 Saranac agreement.

(v) The following co-conspirators were members of the trade organization known as The Asbestos Textile Institute (ATI): Raybestos, Manville, H.K. Porter, Keasbey & Mattison (individually and through its alter ego, Turner & Newall), National Gypsum, Uniroyal, Inc. (individually and through its alter egos, CDU Holding Company), Uniroyal Holding Company, Uniroyal Goodrich Tire Company and Asbestos Corporation, Ltd..

(w) In furtherance of the foregoing conspiracy, the conspirators and ATI members in 1942 received a report from W.C.L. Hemeon (Hemeon) concerning asbestos that suggested the then-existing maximum asbestos-exposure limits be re-evaluated. These conspirators caused the Hemeon report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing maximum asbestos-exposure limit was safe and acceptable. Thereafter, these conspirators withheld additional material information on the dust standards from the American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing ACGIH evaluations of its Threshold Limit Values for asbestos exposure.

(x) In furtherance of the foregoing conspiracy, co-conspirator National Gypsum, through its agents and following an inquiry from the Indiana Division of Industrial Hygiene (IDIH) concerning the health hazards of asbestos-spray products, in 1953 refused to mail a proposed response to the IDIH indicating that those applying the products should wear respirators when doing so. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos-spray products to wear respirators, and thereby misrepresented the risks associated with asbestos exposure.

(y) In furtherance of the foregoing conspiracy, conspirator Manville through its agent Kenneth Smith in 1955 caused to be published in *The AMA Archives of Industrial Health* an article entitled "Pulmonary Disability in Asbestos Workers." This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with inhaling asbestos.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

(z) In furtherance of the foregoing conspiracy, the National Cancer Institute in 1955 held a meeting at which conspirator Manville, individually and as agent for other co-conspirators, and A. Vorwald, as agent of all the conspirators, affirmatively misrepresented that there was no existing animal study indicating any relationship between asbestos exposure and cancer when, in fact, the conspirators secretly possessed several suppressed studies positively demonstrating the existence of such a link.

(aa) In furtherance of the foregoing conspiracy, these conspirators and members of the ATI in 1957 jointly rejected a proposed research study on cancer and asbestos, and this resulted in their fraudulently concealing from the public material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

(bb) In furtherance of the foregoing conspiracy, conspirators who in 1964 were members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently published by Dr. Irving J. Selikoff of the Mount Sinai Research Center. These members of the ATI thereafter embarked on a campaign to further misrepresent the association between asbestos exposure and lung cancer.

(cc) The conspirators founded and funded the Mellon Institute and the Industrial Hygiene Foundation (IHF) to research issues concerning the health effects of inhaling asbestos dust and for the express purpose of delaying or preventing compensation to workers who suffered asbestos disease. Beginning in the early 1940's, the IHF was involved in a study by Dr. Hemeon entitled "Report of Preliminary Dust Investigation for Asbestos Textile Institute," which was published in June 1947. This study was conducted in conjunction with members of the Asbestos Textile Institute and found that workers exposed to less than the recommended maximum asbestos-exposure levels were nonetheless developing disease. As a part of the conspiracy, the IHF never published this study.

(dd) Beginning in the mid-1950's, the IHF and Mellon Institute were involved in the publication of works by Braun and Truan entitled "An Epidemiological Study of Lung Cancer in Asbestos Miners." In its original, unedited form in September 1957, this study concluded that

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

workers with asbestosis had an increased incidence of lung cancer and that the Canadian government had been under-reporting occurrences of asbestosis. The final, published version of this study in June 1958 deleted the conclusion that workers with asbestosis suffered an increased incidence of lung cancer and that the Canadian government had been under-reporting asbestosis cases. The IHF and the Mellon Institute conspired with the members of the Quebec Asbestos Mining Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, and other conspirators to suppress the above-described information concerning asbestos and cancer.

(ee) The above-described actions of the IHF and the Mellon Institute constituted intentional deception and fraud in actively misleading the public about the extent of the hazards linked to breathing asbestos dust. These actions also substantially contributed to retarding the development of knowledge about the hazards of asbestos and thereby substantially contributed to injuries suffered by plaintiffs.

(ff) From the early 1920's until the 1970's, Manville, Raybestos and other conspirators undertook continual and systemic monitoring of the workers employed in their plants manufacturing asbestos products. The monitoring included chest x-rays taken for the purpose of discovering whether the workers were suffering from asbestosis or other asbestos diseases. MET LIFE and Lanza actively assisted and participated in many of the monitoring programs. The conspirators, including MET LIFE, failed to disclose and actively concealed the results of the monitoring. The conspirators also failed to disclose the nature, extent and frequency of asbestos disease among the workers and instead encouraged the workers to continue work until they were completely and totally disabled. The conspirators further intentionally concealed from the workers employed in their manufacturing plants the nature and extent of the risks associated with asbestos exposure.

(gg) All conspirators identified herein approved, ratified and furthered the previous conspiratorial acts of conspirators Manville, Raybestos, Lanza and MET LIFE, and all the alleged conspirators during the time and circumstances previously described acted as agents and co-conspirators of the other conspirators.

(hh) MET LIFE was an active participant in the foregoing conspiracy and benefitted

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

thereby. MET LIFE benefitted from its involvement in the conspiracy in the following non-exclusive list of ways, among others:

(i) By providing workers' compensation insurance to co-conspirators.

(ii) By providing life insurance for employees of the co-conspirators.

(iii) By providing health insurance or health care for the employees of the co-conspirators.

(iv) By purchasing substantial stock in asbestos-related companies, including stock of the co-conspirators.

(v) By developing information by which asbestos-related claims for compensation could be defeated.

VI.

The previously described acts of the conspirators constitute fraudulent concealment and/or fraudulent misrepresentation, which caused injury to the plaintiff in the following ways, among others:

(a) The material published or caused to be published by the conspirators was false and incomplete in that the conspirators knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

(b) The conspirators individually, as members of a conspiracy and as agents of other conspirators, intended to – and did – publish false and misleading reports that misrepresented or failed to disclose known health hazards associated with common uses of asbestos-containing products. Their purposes were to (1) maintain a favorable business climate for the continued sale and distribution of asbestos and asbestos-related products, (2) assist in the conspirators' continued pecuniary gain through the sale of their products, (3) influence proposed legislation to regulate asbestos exposure in a way that favored the conspirators' interests and (4) aid in defending lawsuits seeking compensation for injury resulting from asbestos exposure.

(c) Plaintiff's father and plaintiff and others reasonably relied, both directly and indirectly, on the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and also on the absence of published medical and scientific

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Case4:11-cv-00061-LB Document17-4 Filed01/10/11 Page40 of 47

reports of the hazards of continued exposure to asbestos. Plaintiff's father and plaintiff believed asbestos to be safe and was unaware of the hazards of that material because of the conspiratorial conduct described herein.

(d) Conspirators – individually, as members of a conspiracy and as agents of other co-conspirators – were and are in a position of superior knowledge regarding the health hazards of asbestos and therefore plaintiff's father and plaintiff reasonably relied (both directly and indirectly) on the published reports commissioned by the conspirators regarding the health hazards of asbestos and the absence of published information (because of the suppression by the conspiracy) concerning the hazards of asbestos and asbestos-related products.

(e) As a direct result of the continuing and ongoing conduct of the conspirators, as alleged herein, the plaintiff contracted asbestos-related disease, and plaintiff suffered injuries and incurred damages as described in greater detail elsewhere in the complaint.

**VII.**

MET LIFE acted in concert with the foregoing parties (the conspirators) and pursuant to a common design, as previously delineated, to cause injury to plaintiff.

**VIII.**

MET LIFE knew that the conduct of Manville, Raybestos and the other conspirators was coercive, fraudulent and deceitful toward others (including plaintiff's father and plaintiff) and that conspirators' conduct was a breach of duty or duties owed to plaintiff's father and plaintiff; and MET LIFE gave substantial assistance and encouragement to Manville and the other conspirators in breaching their duties to plaintiff's father and plaintiff and others.

**IX.**

Plaintiff and/or plaintiff's father was insured, directly or indirectly, by MET LIFE and as such was owed a fiduciary duty by MET LIFE that was breached by MET LIFE's foregoing conduct and conspiracy, thereby causing plaintiff's asbestos-related injuries.

**X.**

The conspirators made representations to plaintiff's father and plaintiff and others concerning asbestos-containing products, including but not limited to:

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

(a) the statements set forth and summarized in the foregoing paragraphs;

(b) that asbestos in commercially used insulation products was not hazardous (this statement was known to be false by the conspirators);

(c) that the amount of asbestos in the air necessary to cause disease was five million particles per cubic foot (this statement was known to be false by the conspirators);

(d) that asbestos does not cause cancer (this statement was known to be false by the conspirators);

In addition, the conspirators actively concealed facts from plaintiff's father and plaintiff and others, including but not limited to:

(a) that asbestos-related disease can be a fatal disease;

(b) that asbestos causes various forms of lung cancer;

(c) that individuals should protect themselves from breathing asbestos dust;

(d) the extent of asbestos disease in exposed populations;

(e) information regarding the levels of airborne asbestos that can cause disease;

(f) their experience with workers' compensation claims related to asbestos exposure; and

(g) the concealment described in the other paragraphs of this cause of action.

**XI.**

The conspirators further knew that their foregoing statements were false and that, by their acts, they were actively concealing adverse information concerning the health effects of asbestos, including the facts described in the preceding paragraphs of this cause of action. The conspirators made these false statements and concealed these facts with the intent to deceive. Plaintiff's father and plaintiff and others relied both directly and indirectly on the foregoing false statements and their lack of knowledge resulting from the conspirators' fraudulent concealment. As a consequence of the foregoing fraudulent misrepresentations and concealment, plaintiff was injured and damaged as more fully described elsewhere in the complaint.

**XII.**

The asbestos-containing products that conspirators manufactured, marketed, distributed,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

sold and otherwise supplied were defective in that they caused plaintiff's father and plaintiff and others similarly situated to be exposed to the products' asbestos content and thereby caused the injuries and damages as more fully detailed elsewhere in the complaint.

XIII.

Additionally and alternatively, as a direct result of defendants' and conspirators' (including, without limitation, MET LIFE's) actions and omissions, plaintiff's father and plaintiff were caused to remain ignorant of all the dangers of asbestos, which resulted in plaintiff's father, plaintiff, his/her agents, employers and the general public being unaware of the true and full dangers of asbestos. Defendants' and conspirators' actions and omissions also deprived plaintiff's father and plaintiff of the opportunity to decide for himself or herself whether he/she wanted to take the risk of being exposed to asbestos, denied plaintiff's father and plaintiff the opportunity to take precautions against the dangers of asbestos and caused plaintiff's damages as described elsewhere in this complaint.

XIV.

The foregoing conduct of defendants and the conspirators was despicable, willful and carried on in conscious disregard of the rights or safety of plaintiff's father and plaintiff. Defendants and the conspirators intended by such conduct to conceal and/or misrepresent material facts known to them for the purpose of thereby depriving plaintiff's father and plaintiff and others of property or legal rights, or otherwise causing injury. So in addition to actual damages, plaintiff is entitled to recover damages from defendants and the conspirators for the sake of example and by way of punishing defendants and conspirators.

///

///

///

///

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## ALL DEFENDANTS:

### FOURTEENTH CAUSE OF ACTION

### (Loss of Consortium)

AS AND FOR A FOURTEENTH CAUSE OF ACTION, plaintiff Caroline Vest complains of all defendants, and each of them, and alleges:

I.

This plaintiff, for and on behalf of herself, brings this action on her own behalf.

II.

Plaintiff refers to and incorporates herein by reference the First through Thirteenth Causes of Action of this complaint.

III.

At the time that plaintiff Timothy Vest sustained injury as more fully alleged in all the previous causes of action, and at all times thereafter, plaintiff Caroline Vest was the wife of plaintiff Timothy Vest.

IV.

Prior to said injuries, plaintiff Timothy Vest was able to and did, perform his duties as the husband of plaintiff Caroline Vest. Plaintiff is informed and believes and thereon alleges that subsequent to said injuries and as a proximate result thereof, plaintiff Timothy Vest has been, and some time in the future will be, incapacitated and unable to perform the necessary duties as husband of plaintiff Caroline Vest and the work and service usually performed in the care, maintenance and management of the family home.

V.

As a proximate result of said injuries, plaintiff Caroline Vest has been and will be deprived of consortium with plaintiff Timothy Vest, including the performance of her husband's duties and on plaintiff's part will be required to perform the duties previously performed by plaintiff Timothy Vest, all to plaintiff's damage in a sum which cannot be ascertained at this time. Plaintiff requests the right to amend this complaint to allege the amount of said damages when they are ascertained.

WHEREFORE, plaintiff Caroline Vest prays judgment against defendants, conspirators and

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

their "alternate entities," and each of them as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with the proof;

2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

4. Special damages in accordance with the proof;

5. Prejudgment interest and post-judgment interest in accordance with law;

6. Costs of suit; and

7. Such other and further relief as the Court deems just and proper in the premises.

WHEREFORE, plaintiff Timothy Vest prays judgment against defendants, conspirators and their "alternate entities," and each of them as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with the proof;

2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof:

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

4. Special damages in accordance with the proof;

5. Prejudgment interest and post-judgment interest in accordance with law;

6. Costs of suit; and

7. Such other and further relief as the Court deems just and proper in the premises.

DATED: December 14, 2009

KAZAN, McCLAIN, LYONS,
GREENWOOD & HARLEY
A Professional Law Corporation

By: [signature]
Justin A. Bosl

Attorneys for Plaintiffs

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

*Timothy Vest and Caroline Vest v. Allied Packing & Supply, Inc., et al.*

U.S.D.C., Northern District of California Case No. C-11-00061 LB

# Exhibit 2



Case MDL No. 875 Document 6658-4 Filed 01/28/11 Page 73 of 217
Case4:11-cv-00061-LB Document17-4 Filed01/10/11 Page46 of 47

*7648865*

Gordon D. Greenwood, Esq. (C.S.B. #136097)
Justin A. Bosl, Esq. (C.S.B. #241117)
KAZAN, McCLAIN, LYONS,
GREENWOOD & HARLEY
A Professional Law Corporation
171 Twelfth Street, Third Floor
Oakland, California 94607
Telephone: (510) 465-7728
Attorneys for Plaintiffs

FILED
ALAMEDA COUNTY
JAN 25 2010
CLERK OF THE SUPERIOR COURT
By ______ Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

TIMOTHY VEST and CAROLINE VEST,

Plaintiffs,

ALLIED PACKING & SUPPLY, INC., et. al.,

Defendants.

No. RG09489518

**AMENDMENT TO COMPLAINT ADDING DOE DEFENDANT**

Plaintiffs hereby amend the complaint in this action by substituting the following true name in place of the corresponding fictitious name everywhere the fictitious name appears or is referenced in the complaint.

| TRUE NAME | FICTITIOUS NAME |
|---|---|
| MCDONNELL DOUGLAS CORPORATION | DOE 3 |

DATED: January 22, 2010

KAZAN, McCLAIN, LYONS,
GREENWOOD & HARLEY
A Professional Law Corporation

By ______
Justin Bosl
Attorneys for Plaintiffs

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

JBOSL/471120.1

AMENDMENT TO COMPLAINT

Exhibit 2-44

1

*8243696*

Attorney or Party without Attorney:
JUSTIN A. BOSL, ESQ. (C.S.B.#241117)
KAZAN, MCCLAIN ABRAMS, LYONS,et al.
171 TWELFTH STREET
3RD FLOOR
OAKLAND, CA 94607
Telephone No:

Attorney for: Plaintiff

Ref. No. or File No: VEST

FILED
ALAMEDA COUNTY
2010 FEB -5 PM 3:21
CLERK OF THE SUPERIOR COURT
BY [signature] DEPUTY

Insert name of Court, and Judicial District and Branch Court:
ALAMEDA COUNTY SUPERIOR COURT

Plaintiff: TIMOTHY VEST, et al.
Defendant: ALLIED PACKING & SUPPLY, INC., et al.

| PROOF OF SERVICE SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number: |
| --- | --- | --- | --- | --- |
| | Fri, Jan. 01, 2010 | | | RG09489518 |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; AMENDMENT TO COMPLAINT ADDING DOE DEFENDANT; AMENDMENT TO COMPLAINT ADDING DOE DEFENDANTS; AMENDMENT TO COMPLAINT ADDING DOE DEFENDANT; COMPLAINT FOR PERSONAL INJURIES; STRICT LIABILITY; BREACHH OF WARRANTIES; NEGLIGTENCE; FRAUD; AIDING AND ABETTING FRAUD; AIDING AND ABETTING BATTERY; CONSPIRACY; (ALTERNATIVE ENTERPRISE AND CONCERT OF ACTION LIABILITY); PREMISES LIABILITY; AND LOSS OF CONSORTIUM; ADR INFORMATION PACKAGE.

3. a. *Party served:* MCDONNELL DOUGLAS CORPORATION
   b. *Person served:* BECKY DEGEORGE, PROCESS SPECIALIST, CSC, REGISTERED AGENT

4. *Address where the party was served:* 2730 GATEWAY OAKS DRIVE, SUITE 100, SACRAMENTO, CA 95833

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Wed., Jan. 27, 2010 (2) at: 3:50PM

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
   *as the person sued under the fictitious name of:* Doe 3
   *on behalf of:* MCDONNELL DOUGLAS CORPORATION
   Under CCP 416.10 (corporation)

7. ***Person Who Served Papers:***
   a. Nancy Graddy

First Legal
1814 "I" Street
Sacramento, CA 95814
Telephone (916) 444-5111
Fax (916) 443-3111
www.firstlegalnetwork.com

Recoverable Cost Per CCP 1033.5(a)(4)(B)

   d. ***The Fee for Service was:***
   e. I am: (3) registered California process server
      *(i)* Independent Contractor
      *(ii) Registration No.:* 04-010
      *(iii) County:* Placer
      *(iv) Expiration Date:* Fri, Apr. 23, 2010

8. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

Date:Thu, Jan. 28, 2010

N. Graddy
(Nancy Graddy)

*Timothy Vest and Caroline Vest v. Allied Packing & Supply, Inc., et al.*

U.S.D.C., Northern District of California Case No. C-11-00061 LB

# Exhibit 3

*8563833*

Gordon D. Greenwood, Esq. (C.S.B. #136097)
Justin A. Bosl, Esq. (C.S.B. #241117)
Elina Agnoli, Esq. (C.S.B. #261732)
KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation
171 Twelfth Street, Third Floor
Oakland, California 94607
Telephone: (510) 465-7728

Attorneys for Plaintiffs

FILED
ALAMEDA COUNTY
MAY - 3 2010
CLERK OF THE SUPERIOR COURT
By ___ Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

TIMOTHY VEST and CAROLINE VEST,

Plaintiffs,

vs.

ALLIED PACKING AND SUPPLY; CYPRUS AMAX MINERALS COMPANY, individually, and as successor in interest, parent, alter ego and equitable trustee of CYPRUS MINES CORPORATION, SIERRA TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION CYPRUS MINES CORPORATION and PAUL W. WOOD COMPANY; THE DEXTER CORPORATION; DOWMAN PRODUCTS, INC.; GARLOCK SEALING AND TECHNOLOGIES, LLC.; GEORGIA-PACIFIC LLC, formerly known as GEORGIA-PACIFIC CORPORATION; HAMILTON MATERIALS, INC.; HENKEL CORPORATION, individually and as successor in interest, parent, alter ego and equitable trustee to HENKEL LOCTITE CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee to THE DEXTER CORPORATION; HEXCEL CORPORATION; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY, INC.; KENTILE FLOORS, INC.; RAYMOND INTERIOR SYSTEMS-NORTH, individually and as successor in interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER, INC.; MCDERMOTT/SEALY, INC.;

No. RG09489518

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES; STRICT LIABILITY; BREACH OF WARRANTIES; NEGLIGENCE; FRAUD; AIDING AND ABETTING FRAUD; AIDING AND ABETTING BATTERY; CONSPIRACY; (ALTERNATIVE ENTERPRISE AND CONCERT OF ACTION LIABILITY); PREMISES LIABILITY; AND LOSS OF CONSORTIUM**

**Code of Civil Procedure § 36(d)**

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PARKER HANNIFIN, individually, and as successor in interest, parent, alter ego and equitable trustee of CLEVELAND WHEELS & BRAKES; GEORGE E. MASKER, INC.; F.P. LATHROP CORPORATION; MCDONNELL DOUGLAS CORPORATION; LIFE TECHNOLOGIES CORPORATION, successor by merger to INVITROGEN CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee of THE DEXTER CORPORATION; LATHROP CONSTRUCTION ASSOCIATES, INC., individually and as successor in interest, parent, alter ego, and equitable trustee of F.P. LATHROP CONSTRUCTION COMPANY; WORLD AIRWAYS, INC.; METROPOLITAN LIFE INSURANCE COMPANY; and EIGHTH DOE through THREE HUNDRED THIRTIETH DOE, inclusive,

Defendants.

Plaintiff TIMOTHY VEST alleges:

## PRODUCTS DEFENDANTS:

### FIRST CAUSE OF ACTION

**Negligence**
**[Against All Product Defendants]**

**I.**

Plaintiff Timothy Vest brings this action on his own behalf. The masculine form as used in this complaint, if applicable as shown by the context hereof, applies to a female person or a corporation.

**II.**

Plaintiff does not know the true names and capacities, whether corporate, associate or individual of defendants sued herein as EIGHTH DOE through THREE HUNDRED THIRTIETH DOE, inclusive, and each of them, and for that reason prays leave to insert the true names and capacities of said defendants when the same are ascertained. Plaintiff is informed and believes and therefore alleges that each of the defendants designated herein as a DOE is negligently,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

intentionally and/or strictly liable or responsible in some manner for the events and happenings herein referred to, and proximately caused injury and damages to plaintiff thereby as herein alleged.

III.

At all times herein mentioned, each of the defendants was the agent and employee of each of the remaining defendants, and was at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of the remaining defendants.

IV.

Defendants ALLIED PACKING AND SUPPLY; CYPRUS AMAX MINERALS COMPANY, individually, and as successor in interest, parent, alter ego and equitable trustee of CYPRUS MINES CORPORATION, SIERRA TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION CYPRUS MINES CORPORATION and PAUL W. WOOD COMPANY; THE DEXTER CORPORATION; DOWMAN PRODUCTS, INC.; GARLOCK SEALING AND TECHNOLOGIES, LLC.; GEORGIA-PACIFIC LLC, formerly known as GEORGIA-PACIFIC CORPORATION; HAMILTON MATERIALS, INC.; HENKEL CORPORATION, individually and as successor in interest, parent, alter ego and equitable trustee to HENKEL LOCTITE CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee to THE DEXTER CORPORATION; HEXCEL CORPORATION; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY, INC.; KENTILE FLOORS, INC.; RAYMOND INTERIOR SYSTEMS-NORTH, individually and as successor in interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER; MCDERMOTT/SEALY, INC.; PARKER HANNIFIN, individually, and as successor in interest, parent, alter ego and equitable trustee of CLEVELAND WHEELS & BRAKES; GEORGE E. MASKER, INC.; F.P. LATHROP CORPORATION; MCDONNELL DOUGLAS CORPORATION; LIFE TECHNOLOGIES CORPORATION, successor by merger to INVITROGEN CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee of THE DEXTER CORPORATION; LATHROP CONSTRUCTION ASSOCIATES, INC., individually and as successor in interest,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

parent, alter ego, and equitable trustee of F.P. LATHROP CONSTRUCTION COMPANY; WORLD AIRWAYS, INC.; METROPOLITAN LIFE INSURANCE COMPANY; and EIGHTH DOE through FIFTIETH DOE, inclusive, were at all times herein and still are corporations authorized to and doing business in the State of California and are hereby designated PRODUCTS defendants.

**V.**

PRODUCTS defendants' products at issue in this complaint consist of asbestos and asbestos-containing products, or products as to which PRODUCTS defendants knew or should have known that reasonably foreseeable uses of the products would expose persons such as plaintiff who worked with or around the products to friable asbestos. These products were defective in their design, manufacture, labeling, marketing and/or warning and are referred to throughout this complaint as "asbestos" or "asbestos-containing products."

**VI.**

At all times herein mentioned defendants, and each of them, were engaged in the business of mining, manufacturing, assembling, supplying, packaging, installing and labeling asbestos, and products produced therefrom, for sale to and use by the members of the general public as well as to other parties for use of the said products to manufacture and supply products therefrom.

**VII.**

At all times herein mentioned, defendants FIFTY-FIRST DOE through TWO HUNDRED TENTH DOE were Officers and Directors of named defendants herein as EIGHTH DOE through FIFTIETH DOE.

**VIII.**

The defendants, and each of them, acting through their agents, servants and/or employees, cause and have caused in the past, certain asbestos-containing products and asbestos-related materials, to be placed in the stream of commerce with the result that said products and materials came into contact and/or use by plaintiff.

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IX.

Plaintiff Timothy Vest was exposed to asbestos brought home on his father's, Warren Vest's, clothes, shoes, person and other items transported into the home from his work as a worker at World Airways, Inc., located in Oakland, California from 1965 to 2005, and was also exposed to asbestos, asbestos products and asbestos-related insulation, building materials and equipment mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them, when he accompanied his father to work at World Airways, Inc. from 1965 to 1987.

From the period 1972 to 1983, plaintiff was exposed to asbestos, asbestos products and asbestos-related insulation, building materials and equipment mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them, when he played in and around construction sites surrounding his childhood home in Dublin, California.

Also, as a worker from the period 1985-2001, plaintiff worked with and was exposed to asbestos, asbestos products and asbestos-related insulation, building materials and equipment mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them. During the course of his work plaintiff was exposed to asbestos and asbestos-containing materials at a number of locations and in a number of employments, including, without limitation:

(1) From 1985 to 1988 while working as a ramp supervisor at Continental Airlines, Inc. at Los Angeles International Airport in Los Angeles, California;

(2) In 1986 while working for Sandy's Ski Rentals in Santa Monica, California.

(3) From 1988 to 1990 while working as a certified flight instructor at Ahart Aviation in Livermore, California;

(4) In 1989 while working for Fletcher's Team and Ski in Livermore, California.

(5) From 1990 to 2001 while working as a Commercial Airline Pilot at Emery Worldwide Airlines, Inc. in New York, New York; Dayton, Ohio; Oakland, California; and Los Angeles, California.

In addition, from the period 1983 to 2001, plaintiff was exposed to asbestos, asbestos

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

products and asbestos-related materials mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them when he performed repair and maintenance work on his personal aircraft, and when he was around others performing such work.

X.

During the course and scope of plaintiff's father's work and plaintiff's work and activities, plaintiff was exposed to asbestos products and asbestos-related materials and equipment of defendants, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

XI.

The illness and disability of plaintiff is the direct and proximate result of the negligence of the defendants, and each of them, in that they produced, sold and otherwise put into the stream of commerce, the foregoing materials which the said defendants, and each of them, knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to plaintiff's body, lungs, respiratory system, skin and health.

XII.

Plaintiff, exercising reasonable diligence, discovered the aforealleged conduct, misconduct and culpability of defendants, and each of them, on or after October 2009, when a physician informed him of diagnosis of his asbestos-related mesothelioma. Plaintiff could not have discovered such condition sooner because such condition was brought about without noticeable trauma until it had advanced to such a point that diagnosis could be made. Such a diagnosis required the services of an expert, and since plaintiff did not possess such expertise, he could not know, in the exercise of reasonable care, of the cause of his injury until such time as he was diagnosed and advised. Plaintiff could not know, until such advice, of the culpability of the defendants, and each of them.

XIII.

As a direct and proximate result of the conduct of the defendants, and each of them, plaintiff experienced and continues to experience prolonged pain and suffering, the necessity for medical treatment, injuries including, but not limited to, mesothelioma, severe shock to his nervous

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

system, and other injuries, the exact extent of which are unknown to plaintiff.

XIV.

By reason of the aforesaid allegations, it has been necessary for plaintiff to engage the services of physicians, surgeons, and hospitals; plaintiff does not know the reasonable value of said services which were and are still reasonably required and requests leave to amend this complaint to insert said sum when it is ascertained.

XV.

By reason of the aforesaid allegations, plaintiff has been unable to follow his normal gainful occupation for certain periods after the date of said events, and plaintiff has been disabled for an indefinite time; plaintiff does not now know the value of the employment which has been lost to him, and requests leave to amend this complaint to insert the reasonable value thereof when such is ascertained.

XVI.

By reason of the aforesaid negligence of defendants, and each of them, plaintiff has been damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to special damages herein alleged.

XVII.

The foregoing acts of the defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

thereof, such as plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**SECOND CAUSE OF ACTION**

**Breach of Implied Warranty**
**[Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION]**

AS AND FOR A SECOND CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

**I.**

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence. Defendants made this implied warranty to plaintiff's employer, plaintiff's father, plaintiff's father's employer, and/or others with whom plaintiff was in privity.

**II.**

The defendants, and each of them, impliedly warranted that the said materials were of good and merchantable quality and fit for their intended use.

**III.**

The implied warranty made by the defendants, and each of them, that the asbestos and asbestos-related materials were of good and merchantable quality for the particular intended use was breached in that certain harmful, poisonous and deleterious matter and particles were given off into the atmosphere wherein plaintiff's father and plaintiff and others in their positions carried out their duties as workers working with such materials and other related materials.

**IV.**

As a direct and proximate result of the breach of implied warranty of good and merchantable quality and fitness for the particular intended use, plaintiff developed an illness, to

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

wit: mesothelioma, which caused great disability, as previously set forth.

V.

By reason of the aforesaid, plaintiff has been damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to special damages herein alleged.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**THIRD CAUSE OF ACTION**

**Strict Product Liability**
**Manufacturing Defect/Design Defect/Failure to Warn**
**[Against All Product Defendants Except WORLD AIRWAYS, INC.]**

AS AND FOR A THIRD CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC., and alleges:

I.

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence.

II.

At all times herein mentioned, plaintiff's father's employer and plaintiff's employer or those entities that installed and/or handled the products to which plaintiff was exposed purchased from defendants, and each of them, asbestos and asbestos products hereinafter referred to as products that were defective in design, manufacturing, labeling, marketing and/or warning.

III.

Defendants, and each of them, knew that the aforementioned products would be used without inspection for design, manufacturing, labeling, marketing and/or warning defects by the user thereof.

IV.

At all times mentioned herein, plaintiff reasonably was unaware of the dangerous nature of the aforementioned products.

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

V.

At all times mentioned herein, defendants, and each of them, were aware of the dangerous and defective nature of the design, manufacturing, labeling and/or marketing of the aforementioned products, when said products were used in the manner for which they were intended, and were aware that persons who foreseeably would be exposed to the asbestos containing products were not aware of the dangerous and defective nature of the design, manufacture, labeling and/or marketing of the products, yet defendants took no action to warn or otherwise protect those who foreseeably would be exposed to said defective and improperly labeled products.

VI.

PRODUCTS defendants manufactured, distributed, and sold asbestos-containing products. The asbestos-containing products contained a manufacturing defect when they left PRODUCTS defendants' possession, and plaintiff's father and plaintiff used those asbestos-containing products in a way that was reasonably foreseeable to defendants.

VII.

The aforementioned products were defective in design because they did not perform as safely as an ordinary consumer would have expected them to perform. At the time plaintiff's father and plaintiff used the asbestos-containing products, they were substantially the same as when they left PRODUCTS defendants' possession; any change made to the asbestos-containing products after they left defendants' possession was reasonably foreseeable to defendants; the asbestos-containing products did not perform as safely as an ordinary consumer would have expected at the time of use; and Plaintiff used the products in the way that was reasonably foreseeable to PRODUCTS defendants.

VIII.

The aforementioned products lacked sufficient instructions and warnings of potential dangers. PRODUCTS defendants manufactured, distributed, and sold asbestos-containing products; those asbestos-containing products had potential dangers that were known or knowable by the use of scientific knowledge available at the time of the manufacture, distribution, and sale of the products; the potential hazards presented a substantial danger to Plaintiff; ordinary consumers

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

would not have recognized the potential dangers; PRODUCTS defendants failed to adequately warn or instruct of the potential dangers; and these asbestos-containing products were used in a way that was reasonably foreseeable to PRODUCTS defendants.

IX.

The aforementioned products were used by plaintiff's father and plaintiff in the manner for which they were intended, or plaintiff foreseeably was exposed to said products when they were used in the manner for which they were intended.

X.

As a direct and proximate result of the foregoing conduct, plaintiff developed an illness, to wit: mesothelioma, which caused great disability, as previously set forth.

XI.

As a proximate result of the defective design, manufacturing, labeling, marketing and/or warning of these aforementioned materials and products, plaintiff was generally damaged as is more fully set forth herein and in addition has sustained special damages hereinabove alleged.

XII.

The foregoing acts of the defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that the foregoing products and materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**FOURTH CAUSE OF ACTION**

**Fraud/Failure to Warn**
**[Against All Product Defendants]**

AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

**I.**

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence.

**II.**

At all times pertinent hereto, the defendants, and each of them, owed plaintiff a duty, as provided for in Sections 1708 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. In violation of that duty, the defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1710, and more specifically were suggestions of fact which were not true and which the defendants did not believe to be true, assertions of fact of that which was not true, which the defendants had no reasonable ground for believing it to be true, and the suppression of facts when a duty existed to disclose it, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned code sections.

**III.**

Since 1924, the defendants, and each of them, have known and have been possessed of the true facts consisting of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of plaintiff's father, plaintiff, and others in plaintiff's father's and plaintiff's position working in close proximity with such materials and have known of the dangerous propensities of other of the

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

aforementioned materials and products prior to that time and with intent to deceive plaintiff's father and plaintiff, and others in their positions and with intent that he and such others should be and remain ignorant of such facts and with intent to induce plaintiff's father and plaintiff and such others to alter their positions to their injury and/or risk and in order to gain advantages did do the following acts:

a. Defendants, and each of them, did not label any of the aforementioned asbestos-containing materials and products as to the hazards of such materials and products to the health and safety of plaintiff's father and plaintiff and others in plaintiff's father's and plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the defendants herein, when the knowledge of such hazards was existing and known to defendants, and each of them, since 1924. By not labeling such materials as to their said hazards defendants, and each of them, caused to be suggested as a fact to plaintiff's father and plaintiff and plaintiff's father's and plaintiff's employers that it was safe for plaintiff's father and plaintiff to work in close proximity to such materials when in fact it was not true and defendants did not believe it to be true;

b. Defendants, and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when defendants were bound to disclose such information;

c. Defendants, and each of them, sold the aforementioned products and materials to plaintiff's father's employer and plaintiff's employer and others without advising such employers and others of the dangers of use of such materials to persons working in close proximity thereto, when defendants knew of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers. Thereby,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

defendants caused to be positively asserted to plaintiff's father's employer and plaintiff's employer of that which was not true and which defendants had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by said defendants, and each of them, of that which was and is not true, to wit, that it was safe for plaintiff's father and plaintiff to work in close proximity to such materials;

d. Defendants, and each of them, suppressed from everyone, including plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer, and continue to suppress, medical and scientific data and knowledge of the accurate results of studies including, but not limited to, suppressing information contained in the unpublished Lanza report by participating in the influencing of A.J. Lanza to change his report, which altered version was published in *Public Health Reports*, Volume 50 at page 1 in 1935, when they were bound to disclose it unaltered, and by causing Asbestos Magazine, a widely disseminated trade journal, to omit any mention of the dangers of inhaling asbestos dust, thereby lessening the probability of notice of danger to those exposed to asbestos, and thereby caused plaintiff's father and plaintiff to be and remain ignorant thereof;

e. Defendants, and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and/or other industry organizations which actively promoted the suppression of information of danger to users of the aforementioned products and materials for and on behalf of defendants, and each of them, thereby misleading plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer to their prejudice through the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (I) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

information from 1946 to a date unknown to plaintiff at this time;

f. Commencing in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein. Between 1942 and 1950 the defendants, and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein. Thereby, defendants suggested as a fact that which is not true and disseminated other facts likely to mislead plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer and which did mislead them for want of communication of true facts which consisted of the aforedescribed medical and scientific data and other knowledge by not giving plaintiff's father and plaintiff or plaintiff's father's employer and plaintiff's employer the true facts concerning such knowledge of danger, when defendants were bound to disclose it;

g. Failed to warn plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer of the nature of the said materials, to wit: dangerous when breathed, causing pathological effects without noticeable trauma, when possessed with knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it;

h. Failed to provide plaintiff's father and plaintiff with information concerning adequate protective masks and devices for use with and application and installation of the products of the defendants, and each of them, when they knew that such protective measures were necessary, when they were under a duty to disclose such information, and if not advised as to use would result in injury to plaintiff's father

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

and plaintiff and others applying and installing such materials;

i. Concealed from plaintiff's father and plaintiff the true nature of the industrial exposure of plaintiff, the fact that they and each of them, knew that plaintiff's father and plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and such person would immediately be in not good health, the fact that he had in fact been exposed to harmful materials and the fact that the materials to which he was exposed would cause pathological effects without noticeable trauma, when under a duty to and bound to disclose it;

j. Failed to provide information to the public at large and buyers, users and physicians employed by plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer for the purpose of conducting physical examinations of plaintiff's father and plaintiff and others working in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose, and treat workers coming into contact with asbestos, in that the materials to which plaintiff's father and plaintiff had been exposed would cause pathological effects without noticeable trauma, when under a duty to supply such information and such failure is likely to mislead for want of communication of such facts; and

k. Defendants, and each of them, affirmatively misrepresented that asbestos containing products were safe to use and handle, when they knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

IV.

Each of the foregoing acts, suggestions, assertions and forbearances to act when a duty existed to act, the said defendants, and each of them, having such knowledge, knowing plaintiff's father and plaintiff did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce plaintiff's father and plaintiff to work in a dangerous environment and to cause plaintiff's father and plaintiff to remain unaware of the true

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

facts, all in violation of Section 1710 of the Civil Code of the State of California.

V.

Plaintiff's father and plaintiff relied upon the said acts, suggestions, assertions and forbearances; had plaintiff's father and plaintiff known the true facts, they would not have continued to work in the said environment.

VI.

By reason of the aforesaid premises, plaintiff has been damaged in his health, strength and activity in addition to special damages hereinabove alleged.

VII.

Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, and each of them, and plaintiff is entitled to exemplary and punitive damages. The foregoing conduct of the defendants, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff's father and plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's employer and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff's father and plaintiff were exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. In addition to the unlawful conduct described above, the defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

VIII.

Plaintiff had no knowledge that the foregoing acts were actionable at law when they were committed, and cannot be charged with knowledge or inquiry thereof.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**FIFTH CAUSE OF ACTION**

**Conspiracy to Defraud/Failure to Warn**
**[Against All Product Defendants]**

AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

**I.**

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence and agency, and the Fourth Cause of Action herein.

**II.**

At all times mentioned, the defendants, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon plaintiff the acts complained of as set forth in the First and Fourth Causes of Action as are incorporated herein.

**III.**

Defendants, and each of them, did the acts and things herein alleged in Paragraph II of the Fourth Cause of Action, incorporated herein, in furtherance of the conspiracy and agreement as herein alleged and did further conspire to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time, but known full well to defendants and each of them.

**IV.**

Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, and each of them, and plaintiff is entitled to exemplary and punitive damages. The foregoing conduct of the defendants, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's employer and plaintiff's employers or to those entities that installed and/or

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

handled the asbestos products to which plaintiff's father and plaintiff were exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. In addition to the unlawful conduct described above, the defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

V.

By reason of the aforesaid acts of defendants, and each of them, plaintiff has suffered damage to his health, strength and activity.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**Market Share/Enterprise Liability/Negligence**
**[Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges: ]**

AS AND FOR A SIXTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

I.

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First Cause of Action.

II.

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times relevant herein, the number of producers of asbestos and asbestos products of the type that plaintiff used or was otherwise exposed to, and the nature and structure of the asbestos

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Case4:11-cv-00061-LB Document17-5 Filed01/10/11 Page21 of 46

market and industry, was such that there is and was a substantial likelihood that plaintiff would have actually used or otherwise been exposed to the products of each of the defendants.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**SEVENTH CAUSE OF ACTION**

**Market Share/Enterprise Liability/Strict Liability/Defective Product Design, Manufacturing, Labeling, Marketing and/or Warning**
**[Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:]**

AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

**I.**

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Third Cause of Action and in Paragraph II of the Sixth Cause of Action.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**EIGHTH CAUSE OF ACTION**

**Market Share/Concert of Action/Negligence**
**[Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:]**

AS AND FOR AN EIGHTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

**I.**

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First Cause of Action, Paragraph II of the Fourth Cause of Action, and Paragraph II of the Sixth Cause of Action.

**II.**

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times relevant herein, each of the defendants has:

(1) Cooperated in the defective design, manufacturing, labeling and/or marketing of

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

uniformly defective and dangerous asbestos products;

(2) Knowingly adhered to an inadequate industry-wide standard of safety that failed to warn plaintiff, or any other person likely to be exposed to the hazards caused by the use of their products, that exposure to asbestos fibers could cause asbestosis, mesothelioma, and lung cancer and other cancers and diseases or that it could otherwise cause death or serious permanent disability;

(3) Delegated research, investigative, and other safety functions to various trade associations and industry leaders that failed to adequately and accurately investigate the risks caused by the use of asbestos and that minimized and suppressed the publication of the information concerning the hazards of asbestos; and

(4) Otherwise jointly created and controlled the risk that was the proximate cause of the injuries of plaintiff.

III.

Plaintiff is informed and believes and thereon alleges that at all times relevant herein, the nature and structure of the asbestos industry and market was such that the foregoing acts and omissions of each of the defendants, acting separately and in combination, were a substantial factor in bringing about the aforesaid injury-causing standards, practices and risk, and were otherwise the proximate and legal cause of, and a substantial factor in, bringing about the injuries to plaintiff.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## NINTH CAUSE OF ACTION

**Market Share/Concert of Action/Strict Liability/Defective Product Design [Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:]**

AS AND FOR A NINTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

I.

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

allegation contained in the Third Cause of Action, Paragraph II of the Fourth Cause of Action, Paragraph II of the Sixth Cause of Action, and Paragraphs II and III of the Eighth Cause of Action.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**TENTH CAUSE OF ACTION**

**Market Share/Concert of Action/Conspiracy to Defraud/Failure to Warn [Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:]**

AS AND FOR A TENTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

**I.**

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Fifth and Ninth Causes of Action.

**II.**

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times herein, each of the defendants knew that the aforesaid failure to warn was industry-wide and that the use of their products and the products of others in the industry, without inspection and protection from the hazards of dust inhalation and without an adequate warning by any of them, created and increased the risk of death and disease from cancer, asbestosis, and other related diseases.

**III.**

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times herein, each of the defendants, acting in concert and pursuant to a common plan, and in order to maximize the sale of their products and to minimize claims for damages and compensation, knowingly assisted, aided, abetted, encouraged and ratified the conduct of each other:

(1) In the defective design, manufacturing, labeling and/or marketing of a uniformly defective and hazardous asbestos product without adequate tests and without an adequate warning

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

to their consumers and users; and

(2) In suppressing and discouraging the discovery and publication of information concerning the true hazards of asbestos by and to the public at large.

Said conduct was the proximate and legal cause of, and a substantial factor in, bringing about the injuries of plaintiff.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

///

///

///

///

## PREMISES DEFENDANTS:

### ELEVENTH CAUSE OF ACTION

**Negligence/Failure to Warn**
**[Against All Premises Defendants]**

AS AND FOR AN ELEVENTH CAUSE OF ACTION, plaintiff complains of defendants WORLD AIRWAYS, INC.; LATHROP CONSTRUCTION ASSOCIATES, INC., individually, and as successor in interest, parent, alter ego, and or equitable trustee of F.P. LATHROP CONSTRUCTION COMPANY; RAYMOND INTERIOR SYSTEMS-NORTH, individually and as successor in interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER, INC.; and TWO HUNDRED THIRTEENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE, inclusive. These defendants were at all times herein and still are corporations authorized to and doing business in the State of California, and are hereafter designated the PREMISES defendants. Plaintiff alleges against the PREMISES defendants, and each of them:

I.

Plaintiff, by this reference, hereby incorporates and makes a part thereof, as though fully set forth herein, each and every allegation contained in the First through Tenth Causes of Action herein.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Case4:11-cv-00061-LB Document17-5 Filed01/10/11 Page29 of 46

II.

Plaintiff does not know the true names or capacities of the defendants sued herein under the fictitious names of TWO HUNDRED THIRTEENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE, inclusive, whether corporate, associate or individual, and plaintiff prays leave to amend this complaint to allege said true names and/or capacities when the same are ascertained. Plaintiff is informed and believes and therefore alleges that each of the defendants designated herein as a DOE is negligently, intentionally and/or strictly liable or responsible in some manner for the events and happenings herein referred to, and proximately caused injury and damages to plaintiff as hereinafter alleged.

///

///

III.

At all times herein mentioned, defendants TWO HUNDRED TWENTY-SIXTH DOE through TWO HUNDRED SEVENTY-FIFTH DOE were Officers and Directors of named defendants herein as TWO HUNDRED THIRTEENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE.

IV.

At all times mentioned herein, the PREMISES defendants each respectively owned, maintained, managed, and/or controlled one or more of those premises where plaintiff's father worked while employed as set forth in Part VIII of the First Cause of Action, which is herein incorporated by reference.

V.

Prior to and at said times and places, each said PREMISES defendant caused certain asbestos-containing insulation and other building materials and products and machinery to be specified, manufactured, constructed, supplied, installed, maintained, used, replaced, and/or repaired and otherwise be present at the aforesaid premises, by its own workers and/or various independent contractors so as to allow and cause the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby contaminate the entire premises and create a

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

hazardous condition and unreasonable risk of harm and personal injury to plaintiff's father and plaintiff and other persons exposed to said asbestos fibers while working on said premises, or otherwise using or coming on said premises, unless special precautions were taken.

VI.

At all relevant times mentioned herein, each said PREMISES defendant had a nondelegable duty to exercise reasonable care to inspect and make safe the premises it owned, maintained, managed and/or controlled, and to discover the aforesaid dangerous conditions. PREMISES defendants, and each of them, also created or contributed to said dangerous conditions, by specifying, manufacturing, supplying, installing, maintaining, using, replacing, repairing, and/or requiring the use and/or handling of asbestos-containing materials on said premises, and by failing to properly supervise their own employees or the employees of others over whom said defendants had control in performing work which caused the release of asbestos fibers into the ambient air and the contamination of the entire premise, when defendants knew or in the exercise of ordinary and reasonable care should have known that the foregoing conditions and activities were present on said premises and created a dangerous and hazardous condition and unreasonable risk of harm and personal injury to plaintiff and other persons coming on the aforesaid premises.

VII.

At all times relevant herein, plaintiff's father entered said premises and used and occupied said premises as intended and for the benefit and advantage of each said PREMISES defendant and at each said PREMISES defendant's request and invitation. In so doing, plaintiff's father and plaintiff were exposed to dangerous quantities of asbestos fibers released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by each said PREMISES defendant.

VIII.

Plaintiff's father at all relevant times used the premises with due care and was unaware of and in the exercise of ordinary care could not have discovered the risk of personal injury and the hazardous conditions created by the aforesaid presence of asbestos products and materials on said premises.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IX.

At all relevant times mentioned herein, each said PREMISES defendant knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in its control would be used as alleged without knowledge of, or inspection for, defects or dangerous conditions, which were not apparent or obvious, and that persons using said premises would not be aware of the aforesaid hazardous conditions and contamination on the premises to which they were exposed.

X.

At all times pertinent hereto, the PREMISES defendants, and each of them, owed plaintiff's father and plaintiff a duty, as provided in Section 1708 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of plaintiff's father and plaintiff. When a duty to act was imposed, as set forth herein, the defendants, and each of them, did do the acts and omissions in violation of that duty, thereby proximately causing injury to the plaintiff as is more fully set forth herein.

XI.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to warn plaintiff's father and plaintiff and plaintiff's father's employer that said materials were dangerous when breathed and caused pathological effects without noticeable trauma, despite the fact that defendants possessed knowledge and were under a duty to disclose that such material was dangerous and a threat to the health of persons coming into contact therewith.

XII.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to provide plaintiff's father and plaintiff with information concerning adequate protective masks and devices to be used when applying, installing, disturbing, or otherwise working around asbestos-containing products, and each of them, despite the knowledge of the PREMISES defendants and a duty to disclose that such protective measures were necessary and would result in injury to the plaintiff and others applying, installing, disturbing, or otherwise working around such materials if not so advised.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

XIII.

At all relevant times mentioned herein, PREMISES defendants, and each of them, concealed from plaintiff the true nature of the industrial exposure of plaintiff, and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and that the materials to which he was exposed would cause pathological effects without noticeable trauma despite the fact that PREMISES defendants were under a duty to and bound to disclose it.

XIV.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by plaintiff's father and plaintiff and plaintiff's father's employer so that said physicians could examine, diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that PREMISES defendants, and each of them, were under a duty to so inform and said failure was misleading.

XV.

At all relevant times mentioned herein, said PREMISES defendants, and each of them, negligently failed to take steps to abate or correct the dangerous conditions, or to make the premises safe or to warn plaintiff's father and plaintiff of the existence of the aforesaid dangerous conditions and hazards on said premises, although the risk of plaintiff's injuries was a foreseeable consequence of the negligence of defendants and each of them.

XVI.

As a legal consequence of the foregoing, plaintiff developed an asbestos-related disease which caused illness and death as previously set forth and has suffered general and special damages as alleged herein.

XVII.

The foregoing acts of the PREMISES defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, by the

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

defendants, and each of them, in that the defendants, and each of them knew, at the time defendants manufactured, supplied or required the use and/or handling of asbestos-containing materials and/or failed to properly supervise their own employees or the employees of others over whom defendants had control who installed and/or handled the asbestos products to which plaintiff's father and plaintiff were exposed, that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## TWELFTH CAUSE OF ACTION

**Negiligent Hiring and Negligent Exercise of Retained Control**
**[Against All Premises Defendants]**

AS AND FOR A TWELFTH CAUSE OF ACTION, plaintiff complains of PREMISES defendants, and each of them, as follows:

**I.**

Plaintiff refers to and incorporates herein by reference the First through Eleventh Causes of Action of this Complaint.

**II.**

At all relevant times herein, the PREMISES defendants and each of them negligently hired, retained and kept contractors on jobs to perform asbestos related work, and knew or in the exercise of reasonable care and diligence should have known that the contractors, independent contractors, subcontractors, employees, manufacturers, suppliers, distributors, workers and others these defendants employed or engaged to or responsible for the manufacture, distribution, installation,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

inspection, maintenance, repair, replacement, removal and/or disposing of asbestos and asbestos-containing materials on the aforementioned premises were incompetent and unfit to perform the duties for which they were employed, retained, hired or used, and that an unreasonable risk of harm to plaintiff's father and plaintiff and other persons on the aforesaid premises would exist as a legal consequence of such initial and/or continued employment, retention or contract. PREMISES defendants and each of them failed to exercise reasonable caution in selecting, retaining and continuing to use each of the employees, contractors, independent contractors and/or subcontractors who performed asbestos-related work, including those that employed plaintiff's father, even though said PREMISES defendants knew or in the reasonable exercise of ordinary and reasonable care should have known that failure to choose these persons carefully to perform asbestos-related work and/or allow such persons to continue to perform asbestos-related work after the PREMISES defendants, and each of them, became aware of the negligent manner in which the work was being performed created a dangerous and hazardous condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed while working for or in the vicinity of negligent contractors or exposed to asbestos fibers on such persons' clothing, shoes and person. PREMISES defendants, and each of them, also negligently exercised the control they retained of the operative details – including, without limitation, the asbestos-related details – of plaintiff's father's and plaintiff's work, thereby negligently exposing plaintiff's father and plaintiff to asbestos that was a legal cause of plaintiff's mesothelioma.

## III.

The foregoing acts of the PREMISES defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, by the defendants, and each of them, in that the defendants, and each of them knew – at the time defendants manufactured, supplied or required the use and/or handling of asbestos-containing materials to which plaintiff's father and plaintiff were exposed, and/or failed to properly train, hire and/or supervise their own employees or the employees of others over whom defendants had control who installed and/or handled the asbestos products to which plaintiff was exposed, and/or negligently exercised the control they retained of the asbestos-related details of plaintiff's father's

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

and plaintiff's – that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

///

///

**THIRTEENTH CAUSE OF ACTION**

**Conspiracy/Concert of Action**
**[Against Metropolitan Life Insurance Company and Does 276-330, Inclusive]**

**I.**

Plaintiff hereby incorporates by reference each and every allegation of the preceding causes of action herein. (As used throughout this cause of action, "plaintiff" refers to all named plaintiffs.)

**II.**

The term "conspirators" as used in this cause of action includes, but is not limited to, METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), Anthony Lanza, M.D., Johns-Manville Corporation ("Manville"), Raybestos-Manhattan Corporation ("Raybestos") and the other entities and individuals identified in this cause of action.

**III.**

Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned defendant METROPOLITAN LIFE INSURANCE COMPANY was and is a corporation organized and existing under and by virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

doing business in the State of California, and regularly conducted or conducts business in the County of Alameda, State of California. At times relevant to this cause of action, MET LIFE was an insurer of Manville and Raybestos.

IV.

Plaintiff was exposed to asbestos-containing dust created by the use of the asbestos products manufactured, distributed and/or supplied by one or more of the conspirators named below. The exposure to the asbestos or asbestos-related products supplied by the conspirator(s) caused plaintiff's asbestos-related disease, injuries and/or death.

V.

The conspirators, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves, with other asbestos manufacturers and distributors, with certain individuals including but not limited to Anthony Lanza, M.D. ("Lanza") and with defendant MET LIFE to injure plaintiff in the following fashion (the following is not an exclusive list of the wrongful acts of the conspirators, but, rather, is a representative list):

(a) Beginning in 1929, MET LIFE entered agreements with Manville and others to fund studies of the effects of asbestos exposure on Canadian asbestos miners. When the data from these studies proved that Canadian asbestos miners were developing asbestosis, MET LIFE, Manville and others suppressed its publication; further, Lanza (then a MET LIFE employee) actively misrepresented the results of the Canadian study for many years thereafter to meetings of health-care professionals seeking information regarding asbestos exposure.

(b) In approximately 1934, conspirators Manville and MET LIFE, through their agents Vandiver Brown and attorney J.C. Hobart, and conspirator Raybestos, through its agents Sumner Simpson and J. Rohrback, suggested to MET LIFE associate director Lanza that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts and conclusions about asbestos, including but not limited to descriptions of the seriousness of the asbestosis disease process. The misrepresentation was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestosis as a disease process less critical than it was known to be by the

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

conspirators. As a result, Lanza's study was published in the medical literature in 1935 with these misleading statements. The conspirators were motivated to effectuate this fraudulent misrepresentation and fraudulent non-disclosure in part by the desire to influence proposed legislation to regulate asbestos exposure, to provide a defense in lawsuits involving Manville, Raybestos and MET LIFE (as Manville's and Raybestos's insurer), and to promote the use of Manville's and Raybestos's asbestos products.

(c) The above-described conspiracy continued in 1936, when additional co-conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Manville, Keasbey & Mattison Company (then an alter ego to conspirator Turner & Newall), Raybestos, Russell Manufacturing (whose liabilities have been assumed by H.K. Porter Company), Union Asbestos and Rubber Company and United States Gypsum Company entered into an agreement with a leading medical research facility, the Saranac Laboratories. Under the agreement, the conspirators acquired the power to decide what information Saranac Laboratories could publish regarding asbestos disease and could also control in what form such publications were to occur. Their agreement provided these conspirators the power and ability to affirmatively misrepresent the results of the work at Saranac Laboratories, and also gave these conspirators power to suppress material facts included in any of the facility's studies. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings concerning the health effects of asbestos exposure.

(d) The conspiracy was furthered when on November 11, 1948 representatives of the following conspirators met at Manville headquarters: Manville, American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company (then an alter ego of conspirator Turner & Newall), Raybestos, Thermoid Company (whose assets and liabilities were later purchased by H.K. Porter Company), Union Asbestos and Rubber Company, United States Gypsum Company and MET LIFE. U.S. Gypsum did not send a company employee to the meeting, but instead authorized Vandiver Brown of Manville to represent its interest at the meeting and to take action on its behalf.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

(e) At the November 11, 1948 meeting, these conspirators and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research conducted by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards for asbestos-dust exposure.

(f) At this meeting, these conspirators intentionally and affirmatively decided that Dr. Gardner's work should be edited to delete material facts about the cancer-causing propensity of asbestos, the health effects of asbestos on humans and the critique of the dust standards. The conspirators then published these deceptive and fraudulent statements in the medical literature as edited by Dr. Vorwald. These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to both the public and the class of persons exposed to asbestos, including plaintiff's father and plaintiff.

(g) As a direct result of influence exerted by the conspirators, a Dr. Vorwald in 1951 published Dr. Gardner's edited work in *The Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health* in a form that stressed those portions of Dr. Gardner's work that the conspirators wished to be stressed, but that omitted reference to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of asbestos's risks. The conspirators affirmatively and deliberately disseminated this deceptive and fraudulent Vorwald publication to university libraries, government officials, government agencies and others.

(h) Such actions constitute a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

(I) When Dr. Vorwald subsequently tried to publish more complete information regarding Dr. Gardner's animal studies, the conspirators required his discharge from the Saranac Laboratories, denied him permission to publish or complete Dr. Gardner's work and actively discouraged institutions of higher learning from hiring or retaining Dr. Vorwald in any capacity.

(j) The following conspirators were members of the trade association known as Quebec

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Asbestos Mining Association (Q.A.M.A.): Manville, Carey-Canada individually and as successor in interest to Quebec Asbestos Corporation, the Celotex Corporation as successor in interest to Quebec Asbestos Corporation, National Gypsum Company and Turner & Newall as successor in interest to Bell Asbestos. These conspirators, members of Q.A.M.A., participated in the above-described misrepresentation of the work of Dr. Leroy Gardner published by Arthur Vorwald in the *AMA Archives of Industrial Health* in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 1/29/47, 11/26/47, 3/6/48, 10/15/48, 3/8/49 and 9/6/50, all indicating close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, who acted on behalf of all Q.A.M.A. members.

(k) In furtherance of the conspiracy that commenced in 1929, conspirators who were members of the Q.A.M.A. as described above began in about 1950 to formulate a plan to influence public opinion concerning the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory control of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

(l) This plan of misrepresentation and influence over the medical literature began in about 1950 when the aforementioned Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Arthur Vorwald in 1952 indicated that, based on experiments with laboratory animals, a cancer/asbestos relationship might exist, these Q.A.M.A. members refused to further fund the study, terminated the study and prevented any public discussion or dissemination of the results.

(m) As a result of the termination of the Q.A.M.A./Saranac study, the conspirators fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer. These affirmative misrepresentations were made by conspirators and conspirators' agents K.W. Smith, M.D., Paul Cartier, M.D., A.J. Vorwald, M.D., Lanza, Vandiver Brown and Ivan Sabourin and

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

were directed to, among others, U.S. government officials, Canadian government officials, the U.S. National Cancer Institute, medical organizations, health professionals and the general public, including plaintiff.

(n) The Q.A.M.A. conspirators subsequently contracted with the Industrial Hygiene Foundation and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Drs. Braun and Truan (Braun and Truan) reported to the Q.A.M.A. that asbestosis did increase a worker's risk of developing lung cancer.

(o) The Q.A.M.A. conspirators, in furtherance of the conspiracy that began in 1929, caused the work by Braun and Truan to be published in 1958, but with the findings concerning the increased incidence of cancer in asbestos-exposed persons edited out and stricken by agents of the Q.A.M.A. The published version of the Braun/Truan study contained a conclusion that asbestos exposure alone did not increase the incidence of lung cancer, a conclusion known by the conspirators to be false.

(p) By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting documented findings that asbestosis did increase the risk of lung cancer, the conspirators affirmatively misrepresented to, and concealed from, the public the extent of the risks associated with inhaling asbestos fibers.

(q) In furtherance of the ongoing 1929 conspiracy, the Q.A.M.A. in about 1958 publicized the fraudulently edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that inhaling asbestos fibers did not cause cancer.

(r) The foregoing fraudulent misrepresentations, which began in 1929 and continued with the publication in 1958 of the Braun/Truan study, influenced the standards set for acceptable levels of asbestos exposure. The developers of such standards failed to lower the maximum exposure limits because a cancer risk associated with asbestos inhalation had not been proven.

(s) In furtherance of the 1929 conspiracy, Q.A.M.A. conspirators decided at their trade association meeting in 1967 that they would intentionally mislead consumers about the extent of risks associated with inhaling asbestos.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

(t) In furtherance of the 1929 conspiracy, a symposium concerning the health effects of asbestos was conducted at the Saranac Laboratories in 1952. The following conspirators were in attendance: MET LIFE, Lanza, Manville, Turner & Newall, Raybestos and Q.A.M.A. members through their agents Cartier, Sabourin and LaChance.

(u) At the 1952 Saranac meeting, the occurrence of lung cancer and asbestosis in product users was discussed, as was the carcinogenic properties of all asbestos-fiber types. In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these conspirators conspired to prevent publication of the record of this 1952 Saranac Symposium, and it was not published. In addition, the conspirators induced Vorwald not to announce the results of his and Dr. Gardner's laboratory studies showing excess cancers in asbestos-exposed animals. The conspirators in this way fraudulently misrepresented existing secret data that was prevented from being publicized because of the secrecy provisions contained in the previously described 1936 Saranac agreement.

(v) The following co-conspirators were members of the trade organization known as The Asbestos Textile Institute (ATI): Raybestos, Manville, H.K. Porter, Keasbey & Mattison (individually and through its alter ego, Turner & Newall), National Gypsum, Uniroyal, Inc. (individually and through its alter egos, CDU Holding Company), Uniroyal Holding Company, Uniroyal Goodrich Tire Company and Asbestos Corporation, Ltd..

(w) In furtherance of the foregoing conspiracy, the conspirators and ATI members in 1942 received a report from W.C.L. Hemeon (Hemeon) concerning asbestos that suggested the then-existing maximum asbestos-exposure limits be re-evaluated. These conspirators caused the Hemeon report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing maximum asbestos-exposure limit was safe and acceptable. Thereafter, these conspirators withheld additional material information on the dust standards from the American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing ACGIH evaluations of its Threshold Limit Values for asbestos exposure.

(x) In furtherance of the foregoing conspiracy, co-conspirator National Gypsum,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

through its agents and following an inquiry from the Indiana Division of Industrial Hygiene (IDIH) concerning the health hazards of asbestos-spray products, in 1953 refused to mail a proposed response to the IDIH indicating that those applying the products should wear respirators when doing so. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos-spray products to wear respirators, and thereby misrepresented the risks associated with asbestos exposure.

(y) In furtherance of the foregoing conspiracy, conspirator Manville through its agent Kenneth Smith in 1955 caused to be published in *The AMA Archives of Industrial Health* an article entitled "Pulmonary Disability in Asbestos Workers." This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with inhaling asbestos.

(z) In furtherance of the foregoing conspiracy, the National Cancer Institute in 1955 held a meeting at which conspirator Manville, individually and as agent for other co-conspirators, and A. Vorwald, as agent of all the conspirators, affirmatively misrepresented that there was no existing animal study indicating any relationship between asbestos exposure and cancer when, in fact, the conspirators secretly possessed several suppressed studies positively demonstrating the existence of such a link.

(aa) In furtherance of the foregoing conspiracy, these conspirators and members of the ATI in 1957 jointly rejected a proposed research study on cancer and asbestos, and this resulted in their fraudulently concealing from the public material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

(bb) In furtherance of the foregoing conspiracy, conspirators who in 1964 were members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently published by Dr. Irving J. Selikoff of the Mount Sinai Research Center. These members of the ATI thereafter embarked on a campaign to further misrepresent the association between asbestos exposure and lung cancer.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

(cc) The conspirators founded and funded the Mellon Institute and the Industrial Hygiene Foundation (IHF) to research issues concerning the health effects of inhaling asbestos dust and for the express purpose of delaying or preventing compensation to workers who suffered asbestos disease. Beginning in the early 1940's, the IHF was involved in a study by Dr. Hemeon entitled "Report of Preliminary Dust Investigation for Asbestos Textile Institute," which was published in June 1947. This study was conducted in conjunction with members of the Asbestos Textile Institute and found that workers exposed to less than the recommended maximum asbestos-exposure levels were nonetheless developing disease. As a part of the conspiracy, the IHF never published this study.

(dd) Beginning in the mid-1950's, the IHF and Mellon Institute were involved in the publication of works by Braun and Truan entitled "An Epidemiological Study of Lung Cancer in Asbestos Miners." In its original, unedited form in September 1957, this study concluded that workers with asbestosis had an increased incidence of lung cancer and that the Canadian government had been under-reporting occurrences of asbestosis. The final, published version of this study in June 1958 deleted the conclusion that workers with asbestosis suffered an increased incidence of lung cancer and that the Canadian government had been under-reporting asbestosis cases. The IHF and the Mellon Institute conspired with the members of the Quebec Asbestos Mining Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, and other conspirators to suppress the above-described information concerning asbestos and cancer.

(ee) The above-described actions of the IHF and the Mellon Institute constituted intentional deception and fraud in actively misleading the public about the extent of the hazards linked to breathing asbestos dust. These actions also substantially contributed to retarding the development of knowledge about the hazards of asbestos and thereby substantially contributed to injuries suffered by plaintiffs.

(ff) From the early 1920's until the 1970's, Manville, Raybestos and other conspirators undertook continual and systemic monitoring of the workers employed in their plants manufacturing asbestos products. The monitoring included chest x-rays taken for the purpose of discovering whether the workers were suffering from asbestosis or other asbestos diseases. MET

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

LIFE and Lanza actively assisted and participated in many of the monitoring programs. The conspirators, including MET LIFE, failed to disclose and actively concealed the results of the monitoring. The conspirators also failed to disclose the nature, extent and frequency of asbestos disease among the workers and instead encouraged the workers to continue work until they were completely and totally disabled. The conspirators further intentionally concealed from the workers employed in their manufacturing plants the nature and extent of the risks associated with asbestos exposure.

(gg) All conspirators identified herein approved, ratified and furthered the previous conspiratorial acts of conspirators Manville, Raybestos, Lanza and MET LIFE, and all the alleged conspirators during the time and circumstances previously described acted as agents and co-conspirators of the other conspirators.

(hh) MET LIFE was an active participant in the foregoing conspiracy and benefitted thereby. MET LIFE benefitted from its involvement in the conspiracy in the following non-exclusive list of ways, among others:

(i) By providing workers' compensation insurance to co-conspirators.

(ii) By providing life insurance for employees of the co-conspirators.

(iii) By providing health insurance or health care for the employees of the co-conspirators.

(iv) By purchasing substantial stock in asbestos-related companies, including stock of the co-conspirators.

(v) By developing information by which asbestos-related claims for compensation could be defeated.

VI.

The previously described acts of the conspirators constitute fraudulent concealment and/or fraudulent misrepresentation, which caused injury to the plaintiff in the following ways, among others:

(a) The material published or caused to be published by the conspirators was false and incomplete in that the conspirators knowingly and deliberately deleted references to the known

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

health hazards of asbestos and asbestos-related products.

(b) The conspirators individually, as members of a conspiracy and as agents of other conspirators, intended to – and did – publish false and misleading reports that misrepresented or failed to disclose known health hazards associated with common uses of asbestos-containing products. Their purposes were to (1) maintain a favorable business climate for the continued sale and distribution of asbestos and asbestos-related products, (2) assist in the conspirators' continued pecuniary gain through the sale of their products, (3) influence proposed legislation to regulate asbestos exposure in a way that favored the conspirators' interests and (4) aid in defending lawsuits seeking compensation for injury resulting from asbestos exposure.

(c) Plaintiff's father and plaintiff and others reasonably relied, both directly and indirectly, on the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and also on the absence of published medical and scientific reports of the hazards of continued exposure to asbestos. Plaintiff's father and plaintiff believed asbestos to be safe and was unaware of the hazards of that material because of the conspiratorial conduct described herein.

(d) Conspirators – individually, as members of a conspiracy and as agents of other co-conspirators – were and are in a position of superior knowledge regarding the health hazards of asbestos and therefore plaintiff's father and plaintiff reasonably relied (both directly and indirectly) on the published reports commissioned by the conspirators regarding the health hazards of asbestos and the absence of published information (because of the suppression by the conspiracy) concerning the hazards of asbestos and asbestos-related products.

(e) As a direct result of the continuing and ongoing conduct of the conspirators, as alleged herein, the plaintiff contracted asbestos-related disease, and plaintiff suffered injuries and incurred damages as described in greater detail elsewhere in the complaint.

VII.

MET LIFE acted in concert with the foregoing parties (the conspirators) and pursuant to a common design, as previously delineated, to cause injury to plaintiff.

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

VIII.

MET LIFE knew that the conduct of Manville, Raybestos and the other conspirators was coercive, fraudulent and deceitful toward others (including plaintiff's father and plaintiff) and that conspirators' conduct was a breach of duty or duties owed to plaintiff's father and plaintiff; and MET LIFE gave substantial assistance and encouragement to Manville and the other conspirators in breaching their duties to plaintiff's father and plaintiff and others.

IX.

Plaintiff and/or plaintiff's father was insured, directly or indirectly, by MET LIFE and as such was owed a fiduciary duty by MET LIFE that was breached by MET LIFE's foregoing conduct and conspiracy, thereby causing plaintiff's asbestos-related injuries.

X.

The conspirators made representations to plaintiff's father and plaintiff and others concerning asbestos-containing products, including but not limited to:

(a) the statements set forth and summarized in the foregoing paragraphs;

(b) that asbestos in commercially used insulation products was not hazardous (this statement was known to be false by the conspirators);

(c) that the amount of asbestos in the air necessary to cause disease was five million particles per cubic foot (this statement was known to be false by the conspirators);

(d) that asbestos does not cause cancer (this statement was known to be false by the conspirators);

In addition, the conspirators actively concealed facts from plaintiff's father and plaintiff and others, including but not limited to:

(a) that asbestos-related disease can be a fatal disease;

(b) that asbestos causes various forms of lung cancer;

(c) that individuals should protect themselves from breathing asbestos dust;

(d) the extent of asbestos disease in exposed populations;

(e) information regarding the levels of airborne asbestos that can cause disease;

(f) their experience with workers' compensation claims related to asbestos exposure;

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

and

(g) the concealment described in the other paragraphs of this cause of action.

XI.

The conspirators further knew that their foregoing statements were false and that, by their acts, they were actively concealing adverse information concerning the health effects of asbestos, including the facts described in the preceding paragraphs of this cause of action. The conspirators made these false statements and concealed these facts with the intent to deceive. Plaintiff's father and plaintiff and others relied both directly and indirectly on the foregoing false statements and their lack of knowledge resulting from the conspirators' fraudulent concealment. As a consequence of the foregoing fraudulent misrepresentations and concealment, plaintiff was injured and damaged as more fully described elsewhere in the complaint.

XII.

The asbestos-containing products that conspirators manufactured, marketed, distributed, sold and otherwise supplied were defective in that they caused plaintiff's father and plaintiff and others similarly situated to be exposed to the products' asbestos content and thereby caused the injuries and damages as more fully detailed elsewhere in the complaint.

XIII.

Additionally and alternatively, as a direct result of defendants' and conspirators' (including, without limitation, MET LIFE's) actions and omissions, plaintiff's father and plaintiff were caused to remain ignorant of all the dangers of asbestos, which resulted in plaintiff's father, plaintiff, his/her agents, employers and the general public being unaware of the true and full dangers of asbestos. Defendants' and conspirators' actions and omissions also deprived plaintiff's father and plaintiff of the opportunity to decide for himself or herself whether he/she wanted to take the risk of being exposed to asbestos, denied plaintiff's father and plaintiff the opportunity to take precautions against the dangers of asbestos and caused plaintiff's damages as described elsewhere in this complaint.

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

XIV.

The foregoing conduct of defendants and the conspirators was despicable, willful and carried on in conscious disregard of the rights or safety of plaintiff's father and plaintiff. Defendants and the conspirators intended by such conduct to conceal and/or misrepresent material facts known to them for the purpose of thereby depriving plaintiff's father and plaintiff and others of property or legal rights, or otherwise causing injury. So in addition to actual damages, plaintiff is entitled to recover damages from defendants and the conspirators for the sake of example and by way of punishing defendants and conspirators.

## ALL DEFENDANTS:

### FOURTEENTH CAUSE OF ACTION

### (Loss of Consortium)

AS AND FOR A FOURTEENTH CAUSE OF ACTION, plaintiff Caroline Vest complains of all defendants, and each of them, and alleges:

I.

This plaintiff, for and on behalf of herself, brings this action on her own behalf.

II.

Plaintiff refers to and incorporates herein by reference the First through Thirteenth Causes of Action of this complaint.

III.

At the time that plaintiff Timothy Vest sustained injury as more fully alleged in all the previous causes of action, and at all times thereafter, plaintiff Caroline Vest was the wife of plaintiff Timothy Vest.

IV.

Prior to said injuries, plaintiff Timothy Vest was able to and did, perform his duties as the husband of plaintiff Caroline Vest. Plaintiff is informed and believes and thereon alleges that subsequent to said injuries and as a proximate result thereof, plaintiff Timothy Vest has been, and some time in the future will be, incapacitated and unable to perform the necessary duties as husband of plaintiff Caroline Vest and the work and service usually performed in the care,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

maintenance and management of the family home.

V.

As a proximate result of said injuries, plaintiff Caroline Vest has been and will be deprived of consortium with plaintiff Timothy Vest, including the performance of her husband's duties and on plaintiff's part will be required to perform the duties previously performed by plaintiff Timothy Vest, all to plaintiff's damage in a sum which cannot be ascertained at this time. Plaintiff requests the right to amend this complaint to allege the amount of said damages when they are ascertained.

WHEREFORE, plaintiff Caroline Vest prays judgment against defendants, conspirators and their "alternate entities," and each of them as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with the proof;

2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

4. Special damages in accordance with the proof;

5. Prejudgment interest and post-judgment interest in accordance with law;

6. Costs of suit; and

7. Such other and further relief as the Court deems just and proper in the premises.

WHEREFORE, plaintiff Timothy Vest prays judgment against defendants, conspirators and their "alternate entities," and each of them as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with the proof;

2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof:

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

4. Special damages in accordance with the proof;

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

5. Prejudgment interest and post-judgment interest in accordance with law;

6. Costs of suit; and

7. Such other and further relief as the Court deems just and proper in the premises.

DATED: May 3, 2010

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation

By: Justin A. Bosl

Attorneys for Plaintiffs

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

*Timothy Vest and Caroline Vest v. Allied Packing & Supply, Inc., et al.*

U.S.D.C., Northern District of California Case No. C-11-00061 LB

# Exhibit 4

Gordon D. Greenwood, Esq. (C.S.B. #136097)
Justin A. Bosl, Esq. (C.S.B. #241117)
KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation
171 Twelfth Street, Third Floor
Oakland, California 94607
Telephone: (510) 465-7728

ENDORSED
FILED
ALAMEDA COUNTY
MAY 28 2010
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

Attorneys for Plaintiffs

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

TIMOTHY VEST and CAROLINE VEST,

Plaintiffs,

vs.

ALLIED PACKING AND SUPPLY; ALTA BUILDING MATERIALS CO.; CYPRUS AMAX MINERALS COMPANY, individually, and as successor in interest, parent, alter ego and equitable trustee of CYPRUS MINES CORPORATION, SIERRA TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION CYPRUS MINES CORPORATION and PAUL W. WOOD COMPANY; DEAN'S MATERIALS, INC. dba CONSTRUCTION MATERIAL SUPPLIER; THE DEXTER CORPORATION; DOWMAN PRODUCTS, INC.; GARLOCK SEALING AND TECHNOLOGIES, LLC.; GEORGIA-PACIFIC LLC, formerly known as GEORGIA-PACIFIC CORPORATION; HAMILTON MATERIALS, INC.; HENKEL CORPORATION, individually and as successor in interest, parent, alter ego and equitable trustee to HENKEL LOCTITE CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee to THE DEXTER CORPORATION; HEXCEL CORPORATION; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY, INC.; KENTILE FLOORS, INC.; THE PORT OF OAKLAND; RAYMOND INTERIOR SYSTEMS-NORTH,

No. RG09489518

**SECOND AMENDED COMPLAINT FOR PERSONAL INJURIES; STRICT LIABILITY; BREACH OF WARRANTIES; NEGLIGENCE; FRAUD; AIDING AND ABETTING FRAUD; AIDING AND ABETTING BATTERY; CONSPIRACY; (ALTERNATIVE ENTERPRISE AND CONCERT OF ACTION LIABILITY); PREMISES LIABILITY; AND LOSS OF CONSORTIUM**

**Code of Civil Procedure § 36(d)**

ZAN, McCLAIN, LYONS, REENWOOD & HARLEY
PROFESSIONAL
W CORPORATION
TWELFTH STREET
THIRD FLOOR
LAND, CA 94607
10) 302-1000
10) 465-7728
(510) 835-4913

individually and as successor in interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER, INC.; MCDERMOTT/SEALY, INC.; PARKER HANNIFIN, individually, and as successor in interest, parent, alter ego and equitable trustee of CLEVELAND WHEELS & BRAKES; GEORGE E. MASKER, INC.; F.P. LATHROP CORPORATION; MCDONNELL DOUGLAS CORPORATION; LIFE TECHNOLOGIES CORPORATION, successor by merger to INVITROGEN CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee of THE DEXTER CORPORATION; LATHROP CONSTRUCTION ASSOCIATES, INC., individually and as successor in interest, parent, alter ego, and equitable trustee of F.P. LATHROP CONSTRUCTION COMPANY; WORLD AIRWAYS, INC.; METROPOLITAN LIFE INSURANCE COMPANY; and TENTH DOE through THREE HUNDRED THIRTIETH DOE, inclusive,

Defendants.

Plaintiff TIMOTHY VEST alleges:

## PRODUCTS DEFENDANTS:

### FIRST CAUSE OF ACTION

**Negligence**
**[Against All Product Defendants]**

**I.**

Plaintiff Timothy Vest brings this action on his own behalf. The masculine form as used in this complaint, if applicable as shown by the context hereof, applies to a female person or a corporation.

**II.**

Plaintiff does not know the true names and capacities, whether corporate, associate or individual of defendants sued herein as TENTH DOE through THREE HUNDRED THIRTIETH DOE, inclusive, and each of them, and for that reason prays leave to insert the true names and capacities of said defendants when the same are ascertained. Plaintiff is informed and believes and

BRAYTON, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
1 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

therefore alleges that each of the defendants designated herein as a DOE is negligently, intentionally and/or strictly liable or responsible in some manner for the events and happenings herein referred to, and proximately caused injury and damages to plaintiff thereby as herein alleged.

III.

At all times herein mentioned, each of the defendants was the agent and employee of each of the remaining defendants, and was at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of the remaining defendants.

IV.

Defendants ALLIED PACKING AND SUPPLY; ALTA BUILDING MATERIOALS CO.; CYPRUS AMAX MINERALS COMPANY, individually, and as successor in interest, parent, alter ego and equitable trustee of CYPRUS MINES CORPORATION, SIERRA TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION CYPRUS MINES CORPORATION and PAUL W. WOOD COMPANY; DEAN'S MATERIALS, INC. dba CONSTRUCTION MATERIAL SUPPLIER; THE DEXTER CORPORATION; DOWMAN PRODUCTS, INC.; GARLOCK SEALING AND TECHNOLOGIES, LLC.; GEORGIA-PACIFIC LLC, formerly known as GEORGIA-PACIFIC CORPORATION; HAMILTON MATERIALS, INC.; HENKEL CORPORATION, individually and as successor in interest, parent, alter ego and equitable trustee to HENKEL LOCTITE CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee to THE DEXTER CORPORATION; HEXCEL CORPORATION; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY, INC.; KENTILE FLOORS, INC.; RAYMOND INTERIOR SYSTEMS-NORTH, individually and as successor in interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER; MCDERMOTT/SEALY, INC.; PARKER HANNIFIN, individually, and as successor in interest, parent, alter ego and equitable trustee of CLEVELAND WHEELS & BRAKES; GEORGE E. MASKER, INC.; F.P. LATHROP CORPORATION; MCDONNELL DOUGLAS CORPORATION; LIFE TECHNOLOGIES CORPORATION, successor by merger to

BRAYTON, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
1 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

INVITROGEN CORPORATION, individually and as successor in interest, parent, alter ego, and equitable trustee of THE DEXTER CORPORATION; LATHROP CONSTRUCTION ASSOCIATES, INC., individually and as successor in interest, parent, alter ego, and equitable trustee of F.P. LATHROP CONSTRUCTION COMPANY; WORLD AIRWAYS, INC.; METROPOLITAN LIFE INSURANCE COMPANY; and TENTH DOE through FIFTIETH DOE, inclusive, were at all times herein and still are corporations authorized to and doing business in the State of California and are hereby designated PRODUCTS defendants.

V.

PRODUCTS defendants' products at issue in this complaint consist of asbestos and asbestos-containing products, or products as to which PRODUCTS defendants knew or should have known that reasonably foreseeable uses of the products would expose persons such as plaintiff who worked with or around the products to friable asbestos. These products were defective in their design, manufacture, labeling, marketing and/or warning and are referred to throughout this complaint as "asbestos" or "asbestos-containing products."

VI.

At all times herein mentioned defendants, and each of them, were engaged in the business of mining, manufacturing, assembling, supplying, packaging, installing and labeling asbestos, and products produced therefrom, for sale to and use by the members of the general public as well as to other parties for use of the said products to manufacture and supply products therefrom.

VII.

At all times herein mentioned, defendants FIFTY-FIRST DOE through TWO HUNDRED TENTH DOE were Officers and Directors of named defendants herein as TENTH DOE through FIFTIETH DOE.

VIII.

The defendants, and each of them, acting through their agents, servants and/or employees, cause and have caused in the past, certain asbestos-containing products and asbestos-related materials, to be placed in the stream of commerce with the result that said products and materials came into contact and/or use by plaintiff.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IX.

Plaintiff Timothy Vest was exposed to asbestos brought home on his father's, Warren Vest's, clothes, shoes, person and other items transported into the home from his work as a worker at World Airways, Inc., located in Oakland, California from 1965 to 2005, and was also exposed to asbestos, asbestos products and asbestos-related insulation, building materials and equipment mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them, when he accompanied his father to work at World Airways, Inc. from 1965 to 1987.

From the period 1972 to 1983, plaintiff was exposed to asbestos, asbestos products and asbestos-related insulation, building materials and equipment mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them, when he played in and around construction sites surrounding his childhood home in Dublin, California.

Also, as a worker from the period 1985-2001, plaintiff worked with and was exposed to asbestos, asbestos products and asbestos-related insulation, building materials and equipment mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them. During the course of his work plaintiff was exposed to asbestos and asbestos-containing materials at a number of locations and in a number of employments, including, without limitation:

(1) From 1985 to 1988 while working as a ramp supervisor at Continental Airlines, Inc. at Los Angeles International Airport in Los Angeles, California;

(2) In 1986 while working for Sandy's Ski Rentals in Santa Monica, California.

(3) From 1988 to 1990 while working as a certified flight instructor at Ahart Aviation in Livermore, California;

(4) In 1989 while working for Fletcher's Team and Ski in Livermore, California.

(5) From 1990 to 2001 while working as a Commercial Airline Pilot at Emery Worldwide Airlines, Inc. in New York, New York; Dayton, Ohio; Oakland, California; and Los Angeles, California.

In addition, from the period 1983 to 2001, plaintiff was exposed to asbestos, asbestos

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

products and asbestos-related materials mined, manufactured, processed, imported, converted, compound, sold and/or installed by the defendants, and each of them when he performed repair and maintenance work on his personal aircraft, and when he was around others performing such work.

X.

During the course and scope of plaintiff's father's work and plaintiff's work and activities, plaintiff was exposed to asbestos products and asbestos-related materials and equipment of defendants, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

XI.

The illness and disability of plaintiff is the direct and proximate result of the negligence of the defendants, and each of them, in that they produced, sold and otherwise put into the stream of commerce, the foregoing materials which the said defendants, and each of them, knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to plaintiff's body, lungs, respiratory system, skin and health.

XII.

Plaintiff, exercising reasonable diligence, discovered the aforealleged conduct, misconduct and culpability of defendants, and each of them, on or after October 2009, when a physician informed him of diagnosis of his asbestos-related mesothelioma. Plaintiff could not have discovered such condition sooner because such condition was brought about without noticeable trauma until it had advanced to such a point that diagnosis could be made. Such a diagnosis required the services of an expert, and since plaintiff did not possess such expertise, he could not know, in the exercise of reasonable care, of the cause of his injury until such time as he was diagnosed and advised. Plaintiff could not know, until such advice, of the culpability of the defendants, and each of them.

XIII.

As a direct and proximate result of the conduct of the defendants, and each of them, plaintiff experienced and continues to experience prolonged pain and suffering, the necessity for medical treatment, injuries including, but not limited to, mesothelioma, severe shock to his nervous

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

system, and other injuries, the exact extent of which are unknown to plaintiff.

XIV.

By reason of the aforesaid allegations, it has been necessary for plaintiff to engage the services of physicians, surgeons, and hospitals; plaintiff does not know the reasonable value of said services which were and are still reasonably required and requests leave to amend this complaint to insert said sum when it is ascertained.

XV.

By reason of the aforesaid allegations, plaintiff has been unable to follow his normal gainful occupation for certain periods after the date of said events, and plaintiff has been disabled for an indefinite time; plaintiff does not now know the value of the employment which has been lost to him, and requests leave to amend this complaint to insert the reasonable value thereof when such is ascertained.

XVI.

By reason of the aforesaid negligence of defendants, and each of them, plaintiff has been damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to special damages herein alleged.

XVII.

The foregoing acts of the defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

thereof, such as plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**SECOND CAUSE OF ACTION**

**Breach of Implied Warranty**
**[Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION]**

AS AND FOR A SECOND CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

**I.**

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence. Defendants made this implied warranty to plaintiff's employer, plaintiff's father, plaintiff's father's employer, and/or others with whom plaintiff was in privity.

**II.**

The defendants, and each of them, impliedly warranted that the said materials were of good and merchantable quality and fit for their intended use.

**III.**

The implied warranty made by the defendants, and each of them, that the asbestos and asbestos-related materials were of good and merchantable quality for the particular intended use was breached in that certain harmful, poisonous and deleterious matter and particles were given off into the atmosphere wherein plaintiff's father and plaintiff and others in their positions carried out their duties as workers working with such materials and other related materials.

**IV.**

As a direct and proximate result of the breach of implied warranty of good and merchantable quality and fitness for the particular intended use, plaintiff developed an illness, to

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

wit: mesothelioma, which caused great disability, as previously set forth.

V.

By reason of the aforesaid, plaintiff has been damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to special damages herein alleged.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**THIRD CAUSE OF ACTION**

**Strict Product Liability**
**Manufacturing Defect/Design Defect/Failure to Warn**
**[Against All Product Defendants Except WORLD AIRWAYS, INC.]**

AS AND FOR A THIRD CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC., and alleges:

I.

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence.

II.

At all times herein mentioned, plaintiff's father's employer and plaintiff's employer or those entities that installed and/or handled the products to which plaintiff was exposed purchased from defendants, and each of them, asbestos and asbestos products hereinafter referred to as products that were defective in design, manufacturing, labeling, marketing and/or warning.

III.

Defendants, and each of them, knew that the aforementioned products would be used without inspection for design, manufacturing, labeling, marketing and/or warning defects by the user thereof.

IV.

At all times mentioned herein, plaintiff reasonably was unaware of the dangerous nature of the aforementioned products.

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

V.

At all times mentioned herein, defendants, and each of them, were aware of the dangerous and defective nature of the design, manufacturing, labeling and/or marketing of the aforementioned products, when said products were used in the manner for which they were intended, and were aware that persons who foreseeably would be exposed to the asbestos containing products were not aware of the dangerous and defective nature of the design, manufacture, labeling and/or marketing of the products, yet defendants took no action to warn or otherwise protect those who foreseeably would be exposed to said defective and improperly labeled products.

VI.

PRODUCTS defendants manufactured, distributed, and sold asbestos-containing products. The asbestos-containing products contained a manufacturing defect when they left PRODUCTS defendants' possession, and plaintiff's father and plaintiff used those asbestos-containing products in a way that was reasonably foreseeable to defendants.

VII.

The aforementioned products were defective in design because they did not perform as safely as an ordinary consumer would have expected them to perform. At the time plaintiff's father and plaintiff used the asbestos-containing products, they were substantially the same as when they left PRODUCTS defendants' possession; any change made to the asbestos-containing products after they left defendants' possession was reasonably foreseeable to defendants; the asbestos-containing products did not perform as safely as an ordinary consumer would have expected at the time of use; and Plaintiff used the products in the way that was reasonably foreseeable to PRODUCTS defendants.

VIII.

The aforementioned products lacked sufficient instructions and warnings of potential dangers. PRODUCTS defendants manufactured, distributed, and sold asbestos-containing products; those asbestos-containing products had potential dangers that were known or knowable by the use of scientific knowledge available at the time of the manufacture, distribution, and sale of the products; the potential hazards presented a substantial danger to Plaintiff; ordinary consumers

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

would not have recognized the potential dangers; PRODUCTS defendants failed to adequately warn or instruct of the potential dangers; and these asbestos-containing products were used in a way that was reasonably foreseeable to PRODUCTS defendants.

IX.

The aforementioned products were used by plaintiff's father and plaintiff in the manner for which they were intended, or plaintiff foreseeably was exposed to said products when they were used in the manner for which they were intended.

X.

As a direct and proximate result of the foregoing conduct, plaintiff developed an illness, to wit: mesothelioma, which caused great disability, as previously set forth.

XI.

As a proximate result of the defective design, manufacturing, labeling, marketing and/or warning of these aforementioned materials and products, plaintiff was generally damaged as is more fully set forth herein and in addition has sustained special damages hereinabove alleged.

XII.

The foregoing acts of the defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that the foregoing products and materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## FOURTH CAUSE OF ACTION

### Fraud/Failure to Warn
### [Against All Product Defendants]

AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

I.

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence.

II.

At all times pertinent hereto, the defendants, and each of them, owed plaintiff a duty, as provided for in Sections 1708 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. In violation of that duty, the defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1710, and more specifically were suggestions of fact which were not true and which the defendants did not believe to be true, assertions of fact of that which was not true, which the defendants had no reasonable ground for believing it to be true, and the suppression of facts when a duty existed to disclose it, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned code sections.

III.

Since 1924, the defendants, and each of them, have known and have been possessed of the true facts consisting of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of plaintiff's father, plaintiff, and others in plaintiff's father's and plaintiff's position working in close proximity with such materials and have known of the dangerous propensities of other of the

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

aforementioned materials and products prior to that time and with intent to deceive plaintiff's father and plaintiff, and others in their positions and with intent that he and such others should be and remain ignorant of such facts and with intent to induce plaintiff's father and plaintiff and such others to alter their positions to their injury and/or risk and in order to gain advantages did do the following acts:

a. Defendants, and each of them, did not label any of the aforementioned asbestos-containing materials and products as to the hazards of such materials and products to the health and safety of plaintiff's father and plaintiff and others in plaintiff's father's and plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the defendants herein, when the knowledge of such hazards was existing and known to defendants, and each of them, since 1924. By not labeling such materials as to their said hazards defendants, and each of them, caused to be suggested as a fact to plaintiff's father and plaintiff and plaintiff's father's and plaintiff's employers that it was safe for plaintiff's father and plaintiff to work in close proximity to such materials when in fact it was not true and defendants did not believe it to be true;

b. Defendants, and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when defendants were bound to disclose such information;

c. Defendants, and each of them, sold the aforementioned products and materials to plaintiff's father's employer and plaintiff's employer and others without advising such employers and others of the dangers of use of such materials to persons working in close proximity thereto, when defendants knew of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers. Thereby,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

defendants caused to be positively asserted to plaintiff's father's employer and plaintiff's employer of that which was not true and which defendants had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by said defendants, and each of them, of that which was and is not true, to wit, that it was safe for plaintiff's father and plaintiff to work in close proximity to such materials;

d. Defendants, and each of them, suppressed from everyone, including plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer, and continue to suppress, medical and scientific data and knowledge of the accurate results of studies including, but not limited to, suppressing information contained in the unpublished Lanza report by participating in the influencing of A.J. Lanza to change his report, which altered version was published in *Public Health Reports*, Volume 50 at page 1 in 1935, when they were bound to disclose it unaltered, and by causing Asbestos Magazine, a widely disseminated trade journal, to omit any mention of the dangers of inhaling asbestos dust, thereby lessening the probability of notice of danger to those exposed to asbestos, and thereby caused plaintiff's father and plaintiff to be and remain ignorant thereof;

e. Defendants, and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and/or other industry organizations which actively promoted the suppression of information of danger to users of the aforementioned products and materials for and on behalf of defendants, and each of them, thereby misleading plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer to their prejudice through the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (I) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

information from 1946 to a date unknown to plaintiff at this time;

f. Commencing in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein. Between 1942 and 1950 the defendants, and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein. Thereby, defendants suggested as a fact that which is not true and disseminated other facts likely to mislead plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer and which did mislead them for want of communication of true facts which consisted of the aforedescribed medical and scientific data and other knowledge by not giving plaintiff's father and plaintiff or plaintiff's father's employer and plaintiff's employer the true facts concerning such knowledge of danger, when defendants were bound to disclose it;

g. Failed to warn plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer of the nature of the said materials, to wit: dangerous when breathed, causing pathological effects without noticeable trauma, when possessed with knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it;

h. Failed to provide plaintiff's father and plaintiff with information concerning adequate protective masks and devices for use with and application and installation of the products of the defendants, and each of them, when they knew that such protective measures were necessary, when they were under a duty to disclose such information, and if not advised as to use would result in injury to plaintiff's father

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

and plaintiff and others applying and installing such materials;

i. Concealed from plaintiff's father and plaintiff the true nature of the industrial exposure of plaintiff, the fact that they and each of them, knew that plaintiff's father and plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and such person would immediately be in not good health, the fact that he had in fact been exposed to harmful materials and the fact that the materials to which he was exposed would cause pathological effects without noticeable trauma, when under a duty to and bound to disclose it;

j. Failed to provide information to the public at large and buyers, users and physicians employed by plaintiff's father and plaintiff and plaintiff's father's employer and plaintiff's employer for the purpose of conducting physical examinations of plaintiff's father and plaintiff and others working in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose, and treat workers coming into contact with asbestos, in that the materials to which plaintiff's father and plaintiff had been exposed would cause pathological effects without noticeable trauma, when under a duty to supply such information and such failure is likely to mislead for want of communication of such facts; and

k. Defendants, and each of them, affirmatively misrepresented that asbestos containing products were safe to use and handle, when they knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

IV.

Each of the foregoing acts, suggestions, assertions and forbearances to act when a duty existed to act, the said defendants, and each of them, having such knowledge, knowing plaintiff's father and plaintiff did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce plaintiff's father and plaintiff to work in a dangerous environment and to cause plaintiff's father and plaintiff to remain unaware of the true

Kazan, McClain, Lyons, Greenwood & Harley
A Professional Law Corporation
71 Twelfth Street
Third Floor
Oakland, CA 94607
(510) 302-1000
(510) 465-7728
Fax (510) 835-4913

facts, all in violation of Section 1710 of the Civil Code of the State of California.

V.

Plaintiff's father and plaintiff relied upon the said acts, suggestions, assertions and forbearances; had plaintiff's father and plaintiff known the true facts, they would not have continued to work in the said environment.

VI.

By reason of the aforesaid premises, plaintiff has been damaged in his health, strength and activity in addition to special damages hereinabove alleged.

VII.

Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, and each of them, and plaintiff is entitled to exemplary and punitive damages. The foregoing conduct of the defendants, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff's father and plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's employer and plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff's father and plaintiff were exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. In addition to the unlawful conduct described above, the defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

VIII.

Plaintiff had no knowledge that the foregoing acts were actionable at law when they were committed, and cannot be charged with knowledge or inquiry thereof.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## FIFTH CAUSE OF ACTION

### Conspiracy to Defraud/Failure to Warn
### [Against All Product Defendants]

AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

I.

Plaintiff by this reference hereby incorporates and makes a part hereof as though fully set forth herein at length all and singular the allegations contained in the First Cause of Action herein, excepting therefrom allegations pertaining to negligence and agency, and the Fourth Cause of Action herein.

II.

At all times mentioned, the defendants, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon plaintiff the acts complained of as set forth in the First and Fourth Causes of Action as are incorporated herein.

III.

Defendants, and each of them, did the acts and things herein alleged in Paragraph II of the Fourth Cause of Action, incorporated herein, in furtherance of the conspiracy and agreement as herein alleged and did further conspire to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time, but known full well to defendants and each of them.

IV.

Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, and each of them, and plaintiff is entitled to exemplary and punitive damages. The foregoing conduct of the defendants, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's father's employer and plaintiff's employers or to those entities that installed and/or

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

handled the asbestos products to which plaintiff's father and plaintiff were exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. In addition to the unlawful conduct described above, the defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

V.

By reason of the aforesaid acts of defendants, and each of them, plaintiff has suffered damage to his health, strength and activity.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## SIXTH CAUSE OF ACTION

**Market Share/Enterprise Liability/Negligence**
**[Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges: ]**

AS AND FOR A SIXTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

I.

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First Cause of Action.

II.

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times relevant herein, the number of producers of asbestos and asbestos products of the type that plaintiff used or was otherwise exposed to, and the nature and structure of the asbestos

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

market and industry, was such that there is and was a substantial likelihood that plaintiff would have actually used or otherwise been exposed to the products of each of the defendants.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**SEVENTH CAUSE OF ACTION**

**Market Share/Enterprise Liability/Strict Liability/Defective Product Design, Manufacturing, Labeling, Marketing and/or Warning**
**[Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:]**

AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

**I.**

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Third Cause of Action and in Paragraph II of the Sixth Cause of Action.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**EIGHTH CAUSE OF ACTION**

**Market Share/Concert of Action/Negligence**
**[Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:]**

AS AND FOR AN EIGHTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

**I.**

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First Cause of Action, Paragraph II of the Fourth Cause of Action, and Paragraph II of the Sixth Cause of Action.

**II.**

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times relevant herein, each of the defendants has:

(1) Cooperated in the defective design, manufacturing, labeling and/or marketing of

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

uniformly defective and dangerous asbestos products;

(2) Knowingly adhered to an inadequate industry-wide standard of safety that failed to warn plaintiff, or any other person likely to be exposed to the hazards caused by the use of their products, that exposure to asbestos fibers could cause asbestosis, mesothelioma, and lung cancer and other cancers and diseases or that it could otherwise cause death or serious permanent disability;

(3) Delegated research, investigative, and other safety functions to various trade associations and industry leaders that failed to adequately and accurately investigate the risks caused by the use of asbestos and that minimized and suppressed the publication of the information concerning the hazards of asbestos; and

(4) Otherwise jointly created and controlled the risk that was the proximate cause of the injuries of plaintiff.

III.

Plaintiff is informed and believes and thereon alleges that at all times relevant herein, the nature and structure of the asbestos industry and market was such that the foregoing acts and omissions of each of the defendants, acting separately and in combination, were a substantial factor in bringing about the aforesaid injury-causing standards, practices and risk, and were otherwise the proximate and legal cause of, and a substantial factor in, bringing about the injuries to plaintiff.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## NINTH CAUSE OF ACTION

**Market Share/Concert of Action/Strict Liability/Defective Product Design [Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:]**

AS AND FOR A NINTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

I.

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

allegation contained in the Third Cause of Action, Paragraph II of the Fourth Cause of Action, Paragraph II of the Sixth Cause of Action, and Paragraphs II and III of the Eighth Cause of Action.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**TENTH CAUSE OF ACTION**

**Market Share/Concert of Action/Conspiracy to Defraud/Failure to Warn [Against All Product Defendants except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:]**

AS AND FOR A TENTH CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them except WORLD AIRWAYS, INC. and MCDONNELL DOUGLAS CORPORATION, and alleges:

**I.**

Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Fifth and Ninth Causes of Action.

**II.**

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times herein, each of the defendants knew that the aforesaid failure to warn was industry-wide and that the use of their products and the products of others in the industry, without inspection and protection from the hazards of dust inhalation and without an adequate warning by any of them, created and increased the risk of death and disease from cancer, asbestosis, and other related diseases.

**III.**

Plaintiff is informed and believes and on the basis of such information and belief alleges that at all times herein, each of the defendants, acting in concert and pursuant to a common plan, and in order to maximize the sale of their products and to minimize claims for damages and compensation, knowingly assisted, aided, abetted, encouraged and ratified the conduct of each other:

(1) In the defective design, manufacturing, labeling and/or marketing of a uniformly defective and hazardous asbestos product without adequate tests and without an adequate warning

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

to their consumers and users; and

(2) In suppressing and discouraging the discovery and publication of information concerning the true hazards of asbestos by and to the public at large.

Said conduct was the proximate and legal cause of, and a substantial factor in, bringing about the injuries of plaintiff.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## PREMISES DEFENDANTS:

### ELEVENTH CAUSE OF ACTION

**Negligence/Failure to Warn**
**[Against All Premises Defendants]**

AS AND FOR AN ELEVENTH CAUSE OF ACTION, plaintiff complains of defendants WORLD AIRWAYS, INC.; LATHROP CONSTRUCTION ASSOCIATES, INC., individually, and as successor in interest, parent, alter ego, and or equitable trustee of F.P. LATHROP CONSTRUCTION COMPANY; RAYMOND INTERIOR SYSTEMS-NORTH, individually and as successor in interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER, INC.; and TWO HUNDRED THIRTEENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE, inclusive. These defendants were at all times herein and still are corporations authorized to and doing business in the State of California, and are hereafter designated the PREMISES defendants. Plaintiff alleges against the PREMISES defendants, and each of them:

**I.**

Plaintiff, by this reference, hereby incorporates and makes a part thereof, as though fully set forth herein, each and every allegation contained in the First through Tenth Causes of Action herein.

**II.**

Plaintiff does not know the true names or capacities of the defendants sued herein under the fictitious names of TWO HUNDRED THIRTEENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE, inclusive, whether corporate, associate or individual, and plaintiff prays leave to amend this complaint to allege said true names and/or capacities when the same are ascertained.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Plaintiff is informed and believes and therefore alleges that each of the defendants designated herein as a DOE is negligently, intentionally and/or strictly liable or responsible in some manner for the events and happenings herein referred to, and proximately caused injury and damages to plaintiff as hereinafter alleged.

III.

At all times herein mentioned, defendants TWO HUNDRED TWENTY-SIXTH DOE through TWO HUNDRED SEVENTY-FIFTH DOE were Officers and Directors of named defendants herein as TWO HUNDRED THIRTEENTH DOE through TWO HUNDRED TWENTY-FIFTH DOE.

IV.

At all times mentioned herein, the PREMISES defendants each respectively owned, maintained, managed, and/or controlled one or more of those premises where plaintiff's father worked while employed as set forth in Part VIII of the First Cause of Action, which is herein incorporated by reference.

V.

Prior to and at said times and places, each said PREMISES defendant caused certain asbestos-containing insulation and other building materials and products and machinery to be specified, manufactured, constructed, supplied, installed, maintained, used, replaced, and/or repaired and otherwise be present at the aforesaid premises, by its own workers and/or various independent contractors so as to allow and cause the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby contaminate the entire premises and create a hazardous condition and unreasonable risk of harm and personal injury to plaintiff's father and plaintiff and other persons exposed to said asbestos fibers while working on said premises, or otherwise using or coming on said premises, unless special precautions were taken.

VI.

At all relevant times mentioned herein, each said PREMISES defendant had a nondelegable duty to exercise reasonable care to inspect and make safe the premises it owned, maintained, managed and/or controlled, and to discover the aforesaid dangerous conditions. PREMISES

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

defendants, and each of them, also created or contributed to said dangerous conditions, by specifying, manufacturing, supplying, installing, maintaining, using, replacing, repairing, and/or requiring the use and/or handling of asbestos-containing materials on said premises, and by failing to properly supervise their own employees or the employees of others over whom said defendants had control in performing work which caused the release of asbestos fibers into the ambient air and the contamination of the entire premise, when defendants knew or in the exercise of ordinary and reasonable care should have known that the foregoing conditions and activities were present on said premises and created a dangerous and hazardous condition and unreasonable risk of harm and personal injury to plaintiff and other persons coming on the aforesaid premises.

VII.

At all times relevant herein, plaintiff's father entered said premises and used and occupied said premises as intended and for the benefit and advantage of each said PREMISES defendant and at each said PREMISES defendant's request and invitation. In so doing, plaintiff's father and plaintiff were exposed to dangerous quantities of asbestos fibers released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by each said PREMISES defendant.

VIII.

Plaintiff's father at all relevant times used the premises with due care and was unaware of and in the exercise of ordinary care could not have discovered the risk of personal injury and the hazardous conditions created by the aforesaid presence of asbestos products and materials on said premises.

IX.

At all relevant times mentioned herein, each said PREMISES defendant knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in its control would be used as alleged without knowledge of, or inspection for, defects or dangerous conditions, which were not apparent or obvious, and that persons using said premises would not be aware of the aforesaid hazardous conditions and contamination on the premises to which they were exposed.

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

X.

At all times pertinent hereto, the PREMISES defendants, and each of them, owed plaintiff's father and plaintiff a duty, as provided in Section 1708 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of plaintiff's father and plaintiff. When a duty to act was imposed, as set forth herein, the defendants, and each of them, did do the acts and omissions in violation of that duty, thereby proximately causing injury to the plaintiff as is more fully set forth herein.

XI.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to warn plaintiff's father and plaintiff and plaintiff's father's employer that said materials were dangerous when breathed and caused pathological effects without noticeable trauma, despite the fact that defendants possessed knowledge and were under a duty to disclose that such material was dangerous and a threat to the health of persons coming into contact therewith.

XII.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to provide plaintiff's father and plaintiff with information concerning adequate protective masks and devices to be used when applying, installing, disturbing, or otherwise working around asbestos-containing products, and each of them, despite the knowledge of the PREMISES defendants and a duty to disclose that such protective measures were necessary and would result in injury to the plaintiff and others applying, installing, disturbing, or otherwise working around such materials if not so advised.

XIII.

At all relevant times mentioned herein, PREMISES defendants, and each of them, concealed from plaintiff the true nature of the industrial exposure of plaintiff, and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and that the materials to which he was exposed would cause pathological effects without noticeable trauma despite the fact that PREMISES defendants were under a duty to and bound to disclose it.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
71 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

XIV.

At all relevant times mentioned herein, PREMISES defendants, and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by plaintiff's father and plaintiff and plaintiff's father's employer so that said physicians could examine, diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that PREMISES defendants, and each of them, were under a duty to so inform and said failure was misleading.

XV.

At all relevant times mentioned herein, said PREMISES defendants, and each of them, negligently failed to take steps to abate or correct the dangerous conditions, or to make the premises safe or to warn plaintiff's father and plaintiff of the existence of the aforesaid dangerous conditions and hazards on said premises, although the risk of plaintiff's injuries was a foreseeable consequence of the negligence of defendants and each of them.

XVI.

As a legal consequence of the foregoing, plaintiff developed an asbestos-related disease which caused illness and death as previously set forth and has suffered general and special damages as alleged herein.

XVII.

The foregoing acts of the PREMISES defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, by the defendants, and each of them, in that the defendants, and each of them knew, at the time defendants manufactured, supplied or required the use and/or handling of asbestos-containing materials and/or failed to properly supervise their own employees or the employees of others over whom defendants had control who installed and/or handled the asbestos products to which plaintiff's father and plaintiff were exposed, that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## TWELFTH CAUSE OF ACTION

### Negilgent Hiring and Negligent Exercise of Retained Control [Against All Premises Defendants]

AS AND FOR A TWELFTH CAUSE OF ACTION, plaintiff complains of PREMISES defendants, and each of them, as follows:

I.

Plaintiff refers to and incorporates herein by reference the First through Eleventh Causes of Action of this Complaint.

II.

At all relevant times herein, the PREMISES defendants and each of them negligently hired, retained and kept contractors on jobs to perform asbestos related work, and knew or in the exercise of reasonable care and diligence should have known that the contractors, independent contractors, subcontractors, employees, manufacturers, suppliers, distributors, workers and others these defendants employed or engaged to or responsible for the manufacture, distribution, installation, inspection, maintenance, repair, replacement, removal and/or disposing of asbestos and asbestos-containing materials on the aforementioned premises were incompetent and unfit to perform the duties for which they were employed, retained, hired or used, and that an unreasonable risk of harm to plaintiff's father and plaintiff and other persons on the aforesaid premises would exist as a legal consequence of such initial and/or continued employment, retention or contract. PREMISES defendants and each of them failed to exercise reasonable caution in selecting, retaining and continuing to use each of the employees, contractors, independent contractors and/or

AZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
TWELFTH STREET
THIRD FLOOR
KLAND, CA 94607
510) 302-1000
510) 465-7728
X (510) 835-4913

subcontractors who performed asbestos-related work, including those that employed plaintiff's father, even though said PREMISES defendants knew or in the reasonable exercise of ordinary and reasonable care should have known that failure to choose these persons carefully to perform asbestos-related work and/or allow such persons to continue to perform asbestos-related work after the PREMISES defendants, and each of them, became aware of the negligent manner in which the work was being performed created a dangerous and hazardous condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed while working for or in the vicinity of negligent contractors or exposed to asbestos fibers on such persons' clothing, shoes and person. PREMISES defendants, and each of them, also negligently exercised the control they retained of the operative details – including, without limitation, the asbestos-related details – of plaintiff's father's and plaintiff's work, thereby negligently exposing plaintiff's father and plaintiff to asbestos that was a legal cause of plaintiff's mesothelioma.

III.

The foregoing acts of the PREMISES defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, by the defendants, and each of them, in that the defendants, and each of them knew – at the time defendants manufactured, supplied or required the use and/or handling of asbestos-containing materials to which plaintiff's father and plaintiff were exposed, and/or failed to properly train, hire and/or supervise their own employees or the employees of others over whom defendants had control who installed and/or handled the asbestos products to which plaintiff was exposed, and/or negligently exercised the control they retained of the asbestos-related details of plaintiff's father's and plaintiff's – that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff's father and plaintiff, would be

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## THIRTEENTH CAUSE OF ACTION

**Conspiracy/Concert of Action**
**[Against Metropolitan Life Insurance Company and Does 276-330, Inclusive]**

I.

Plaintiff hereby incorporates by reference each and every allegation of the preceding causes of action herein. (As used throughout this cause of action, "plaintiff" refers to all named plaintiffs.)

II.

The term "conspirators" as used in this cause of action includes, but is not limited to, METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), Anthony Lanza, M.D., Johns-Manville Corporation ("Manville"), Raybestos-Manhattan Corporation ("Raybestos") and the other entities and individuals identified in this cause of action.

III.

Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned defendant METROPOLITAN LIFE INSURANCE COMPANY was and is a corporation organized and existing under and by virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is doing business in the State of California, and regularly conducted or conducts business in the County of Alameda, State of California. At times relevant to this cause of action, MET LIFE was an insurer of Manville and Raybestos.

IV.

Plaintiff was exposed to asbestos-containing dust created by the use of the asbestos products manufactured, distributed and/or supplied by one or more of the conspirators named below. The exposure to the asbestos or asbestos-related products supplied by the conspirator(s) caused plaintiff's asbestos-related disease, injuries and/or death.

V.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

The conspirators, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves, with other asbestos manufacturers and distributors, with certain individuals including but not limited to Anthony Lanza, M.D. ("Lanza") and with defendant MET LIFE to injure plaintiff in the following fashion (the following is not an exclusive list of the wrongful acts of the conspirators, but, rather, is a representative list):

(a) Beginning in 1929, MET LIFE entered agreements with Manville and others to fund studies of the effects of asbestos exposure on Canadian asbestos miners. When the data from these studies proved that Canadian asbestos miners were developing asbestosis, MET LIFE, Manville and others suppressed its publication; further, Lanza (then a MET LIFE employee) actively misrepresented the results of the Canadian study for many years thereafter to meetings of health-care professionals seeking information regarding asbestos exposure.

(b) In approximately 1934, conspirators Manville and MET LIFE, through their agents Vandiver Brown and attorney J.C. Hobart, and conspirator Raybestos, through its agents Sumner Simpson and J. Rohrback, suggested to MET LIFE associate director Lanza that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts and conclusions about asbestos, including but not limited to descriptions of the seriousness of the asbestosis disease process. The misrepresentation was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestosis as a disease process less critical than it was known to be by the conspirators. As a result, Lanza's study was published in the medical literature in 1935 with these misleading statements. The conspirators were motivated to effectuate this fraudulent misrepresentation and fraudulent non-disclosure in part by the desire to influence proposed legislation to regulate asbestos exposure, to provide a defense in lawsuits involving Manville, Raybestos and MET LIFE (as Manville's and Raybestos's insurer), and to promote the use of Manville's and Raybestos's asbestos products.

(c) The above-described conspiracy continued in 1936, when additional co-conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Manville, Keasbey & Mattison Company (then an alter ego to conspirator Turner & Newall),

ZAN, MCCLAIN, LYONS, REENWOOD & HARLEY PROFESSIONAL V CORPORATION TWELFTH STREET THIRD FLOOR LAND, CA 94607 10) 302-1000 10) 465-7728 (510) 835-4913

Raybestos, Russell Manufacturing (whose liabilities have been assumed by H.K. Porter Company), Union Asbestos and Rubber Company and United States Gypsum Company entered into an agreement with a leading medical research facility, the Saranac Laboratories. Under the agreement, the conspirators acquired the power to decide what information Saranac Laboratories could publish regarding asbestos disease and could also control in what form such publications were to occur. Their agreement provided these conspirators the power and ability to affirmatively misrepresent the results of the work at Saranac Laboratories, and also gave these conspirators power to suppress material facts included in any of the facility's studies. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings concerning the health effects of asbestos exposure.

(d) The conspiracy was furthered when on November 11, 1948 representatives of the following conspirators met at Manville headquarters: Manville, American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company (then an alter ego of conspirator Turner & Newall), Raybestos, Thermoid Company (whose assets and liabilities were later purchased by H.K. Porter Company), Union Asbestos and Rubber Company, United States Gypsum Company and MET LIFE. U.S. Gypsum did not send a company employee to the meeting, but instead authorized Vandiver Brown of Manville to represent its interest at the meeting and to take action on its behalf.

(e) At the November 11, 1948 meeting, these conspirators and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research conducted by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards for asbestos-dust exposure.

(f) At this meeting, these conspirators intentionally and affirmatively decided that Dr. Gardner's work should be edited to delete material facts about the cancer-causing propensity of asbestos, the health effects of asbestos on humans and the critique of the dust standards. The

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

conspirators then published these deceptive and fraudulent statements in the medical literature as edited by Dr. Vorwald. These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to both the public and the class of persons exposed to asbestos, including plaintiff's father and plaintiff.

(g) As a direct result of influence exerted by the conspirators, a Dr. Vorwald in 1951 published Dr. Gardner's edited work in *The Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health* in a form that stressed those portions of Dr. Gardner's work that the conspirators wished to be stressed, but that omitted reference to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of asbestos's risks. The conspirators affirmatively and deliberately disseminated this deceptive and fraudulent Vorwald publication to university libraries, government officials, government agencies and others.

(h) Such actions constitute a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

(I) When Dr. Vorwald subsequently tried to publish more complete information regarding Dr. Gardner's animal studies, the conspirators required his discharge from the Saranac Laboratories, denied him permission to publish or complete Dr. Gardner's work and actively discouraged institutions of higher learning from hiring or retaining Dr. Vorwald in any capacity.

(j) The following conspirators were members of the trade association known as Quebec Asbestos Mining Association (Q.A.M.A.): Manville, Carey-Canada individually and as successor in interest to Quebec Asbestos Corporation, the Celotex Corporation as successor in interest to Quebec Asbestos Corporation, National Gypsum Company and Turner & Newall as successor in interest to Bell Asbestos. These conspirators, members of Q.A.M.A., participated in the above-described misrepresentation of the work of Dr. Leroy Gardner published by Arthur Vorwald in the *AMA Archives of Industrial Health* in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 1/29/47, 11/26/47, 3/6/48, 10/15/48, 3/8/49 and 9/6/50, all indicating close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin,

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

who acted on behalf of all Q.A.M.A. members.

(k) In furtherance of the conspiracy that commenced in 1929, conspirators who were members of the Q.A.M.A. as described above began in about 1950 to formulate a plan to influence public opinion concerning the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory control of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

(l) This plan of misrepresentation and influence over the medical literature began in about 1950 when the aforementioned Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Arthur Vorwald in 1952 indicated that, based on experiments with laboratory animals, a cancer/asbestos relationship might exist, these Q.A.M.A. members refused to further fund the study, terminated the study and prevented any public discussion or dissemination of the results.

(m) As a result of the termination of the Q.A.M.A./Saranac study, the conspirators fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer. These affirmative misrepresentations were made by conspirators and conspirators' agents K.W. Smith, M.D., Paul Cartier, M.D., A.J. Vorwald, M.D., Lanza, Vandiver Brown and Ivan Sabourin and were directed to, among others, U.S. government officials, Canadian government officials, the U.S. National Cancer Institute, medical organizations, health professionals and the general public, including plaintiff.

(n) The Q.A.M.A. conspirators subsequently contracted with the Industrial Hygiene Foundation and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Drs. Braun and Truan (Braun and Truan) reported to the Q.A.M.A. that asbestosis did increase a worker's risk of developing lung cancer.

(o) The Q.A.M.A. conspirators, in furtherance of the conspiracy that began in 1929, caused the work by Braun and Truan to be published in 1958, but with the findings concerning the

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

increased incidence of cancer in asbestos-exposed persons edited out and stricken by agents of the Q.A.M.A. The published version of the Braun/Truan study contained a conclusion that asbestos exposure alone did not increase the incidence of lung cancer, a conclusion known by the conspirators to be false.

(p) By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting documented findings that asbestosis did increase the risk of lung cancer, the conspirators affirmatively misrepresented to, and concealed from, the public the extent of the risks associated with inhaling asbestos fibers.

(q) In furtherance of the ongoing 1929 conspiracy, the Q.A.M.A. in about 1958 publicized the fraudulently edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that inhaling asbestos fibers did not cause cancer.

(r) The foregoing fraudulent misrepresentations, which began in 1929 and continued with the publication in 1958 of the Braun/Truan study, influenced the standards set for acceptable levels of asbestos exposure. The developers of such standards failed to lower the maximum exposure limits because a cancer risk associated with asbestos inhalation had not been proven.

(s) In furtherance of the 1929 conspiracy, Q.A.M.A. conspirators decided at their trade association meeting in 1967 that they would intentionally mislead consumers about the extent of risks associated with inhaling asbestos.

(t) In furtherance of the 1929 conspiracy, a symposium concerning the health effects of asbestos was conducted at the Saranac Laboratories in 1952. The following conspirators were in attendance: MET LIFE, Lanza, Manville, Turner & Newall, Raybestos and Q.A.M.A. members through their agents Cartier, Sabourin and LaChance.

(u) At the 1952 Saranac meeting, the occurrence of lung cancer and asbestosis in product users was discussed, as was the carcinogenic properties of all asbestos-fiber types. In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these conspirators conspired to prevent publication of the record of this 1952 Saranac Symposium, and it was not published. In

BRAYTON, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
1 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

addition, the conspirators induced Vorwald not to announce the results of his and Dr. Gardner's laboratory studies showing excess cancers in asbestos-exposed animals. The conspirators in this way fraudulently misrepresented existing secret data that was prevented from being publicized because of the secrecy provisions contained in the previously described 1936 Saranac agreement.

(v) The following co-conspirators were members of the trade organization known as The Asbestos Textile Institute (ATI): Raybestos, Manville, H.K. Porter, Keasbey & Mattison (individually and through its alter ego, Turner & Newall), National Gypsum, Uniroyal, Inc. (individually and through its alter egos, CDU Holding Company), Uniroyal Holding Company, Uniroyal Goodrich Tire Company and Asbestos Corporation, Ltd..

(w) In furtherance of the foregoing conspiracy, the conspirators and ATI members in 1942 received a report from W.C.L. Hemeon (Hemeon) concerning asbestos that suggested the then-existing maximum asbestos-exposure limits be re-evaluated. These conspirators caused the Hemeon report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing maximum asbestos-exposure limit was safe and acceptable. Thereafter, these conspirators withheld additional material information on the dust standards from the American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing ACGIH evaluations of its Threshold Limit Values for asbestos exposure.

(x) In furtherance of the foregoing conspiracy, co-conspirator National Gypsum, through its agents and following an inquiry from the Indiana Division of Industrial Hygiene (IDIH) concerning the health hazards of asbestos-spray products, in 1953 refused to mail a proposed response to the IDIH indicating that those applying the products should wear respirators when doing so. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos-spray products to wear respirators, and thereby misrepresented the risks associated with asbestos exposure.

(y) In furtherance of the foregoing conspiracy, conspirator Manville through its agent Kenneth Smith in 1955 caused to be published in *The AMA Archives of Industrial Health* an article entitled "Pulmonary Disability in Asbestos Workers." This published study materially altered the

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with inhaling asbestos.

(z) In furtherance of the foregoing conspiracy, the National Cancer Institute in 1955 held a meeting at which conspirator Manville, individually and as agent for other co-conspirators, and A. Vorwald, as agent of all the conspirators, affirmatively misrepresented that there was no existing animal study indicating any relationship between asbestos exposure and cancer when, in fact, the conspirators secretly possessed several suppressed studies positively demonstrating the existence of such a link.

(aa) In furtherance of the foregoing conspiracy, these conspirators and members of the ATI in 1957 jointly rejected a proposed research study on cancer and asbestos, and this resulted in their fraudulently concealing from the public material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

(bb) In furtherance of the foregoing conspiracy, conspirators who in 1964 were members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently published by Dr. Irving J. Selikoff of the Mount Sinai Research Center. These members of the ATI thereafter embarked on a campaign to further misrepresent the association between asbestos exposure and lung cancer.

(cc) The conspirators founded and funded the Mellon Institute and the Industrial Hygiene Foundation (IHF) to research issues concerning the health effects of inhaling asbestos dust and for the express purpose of delaying or preventing compensation to workers who suffered asbestos disease. Beginning in the early 1940's, the IHF was involved in a study by Dr. Hemeon entitled "Report of Preliminary Dust Investigation for Asbestos Textile Institute," which was published in June 1947. This study was conducted in conjunction with members of the Asbestos Textile Institute and found that workers exposed to less than the recommended maximum asbestos-exposure levels were nonetheless developing disease. As a part of the conspiracy, the IHF never published this study.

[B]AZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL [L]AW CORPORATION
[2]1 TWELFTH STREET
THIRD FLOOR
[OA]KLAND, CA 94607
(510) 302-1000
(510) 465-7728
[FA]X (510) 835-4913

(dd) Beginning in the mid-1950's, the IHF and Mellon Institute were involved in the publication of works by Braun and Truan entitled "An Epidemiological Study of Lung Cancer in Asbestos Miners." In its original, unedited form in September 1957, this study concluded that workers with asbestosis had an increased incidence of lung cancer and that the Canadian government had been under-reporting occurrences of asbestosis. The final, published version of this study in June 1958 deleted the conclusion that workers with asbestosis suffered an increased incidence of lung cancer and that the Canadian government had been under-reporting asbestosis cases. The IHF and the Mellon Institute conspired with the members of the Quebec Asbestos Mining Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, and other conspirators to suppress the above-described information concerning asbestos and cancer.

(ee) The above-described actions of the IHF and the Mellon Institute constituted intentional deception and fraud in actively misleading the public about the extent of the hazards linked to breathing asbestos dust. These actions also substantially contributed to retarding the development of knowledge about the hazards of asbestos and thereby substantially contributed to injuries suffered by plaintiffs.

(ff) From the early 1920's until the 1970's, Manville, Raybestos and other conspirators undertook continual and systemic monitoring of the workers employed in their plants manufacturing asbestos products. The monitoring included chest x-rays taken for the purpose of discovering whether the workers were suffering from asbestosis or other asbestos diseases. MET LIFE and Lanza actively assisted and participated in many of the monitoring programs. The conspirators, including MET LIFE, failed to disclose and actively concealed the results of the monitoring. The conspirators also failed to disclose the nature, extent and frequency of asbestos disease among the workers and instead encouraged the workers to continue work until they were completely and totally disabled. The conspirators further intentionally concealed from the workers employed in their manufacturing plants the nature and extent of the risks associated with asbestos exposure.

(gg) All conspirators identified herein approved, ratified and furthered the previous conspiratorial acts of conspirators Manville, Raybestos, Lanza and MET LIFE, and all the alleged

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

conspirators during the time and circumstances previously described acted as agents and co-conspirators of the other conspirators.

(hh) MET LIFE was an active participant in the foregoing conspiracy and benefitted thereby. MET LIFE benefitted from its involvement in the conspiracy in the following non-exclusive list of ways, among others:

(i) By providing workers' compensation insurance to co-conspirators.

(ii) By providing life insurance for employees of the co-conspirators.

(iii) By providing health insurance or health care for the employees of the co-conspirators.

(iv) By purchasing substantial stock in asbestos-related companies, including stock of the co-conspirators.

(v) By developing information by which asbestos-related claims for compensation could be defeated.

VI.

The previously described acts of the conspirators constitute fraudulent concealment and/or fraudulent misrepresentation, which caused injury to the plaintiff in the following ways, among others:

(a) The material published or caused to be published by the conspirators was false and incomplete in that the conspirators knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

(b) The conspirators individually, as members of a conspiracy and as agents of other conspirators, intended to – and did – publish false and misleading reports that misrepresented or failed to disclose known health hazards associated with common uses of asbestos-containing products. Their purposes were to (1) maintain a favorable business climate for the continued sale and distribution of asbestos and asbestos-related products, (2) assist in the conspirators' continued pecuniary gain through the sale of their products, (3) influence proposed legislation to regulate asbestos exposure in a way that favored the conspirators' interests and (4) aid in defending lawsuits seeking compensation for injury resulting from asbestos exposure.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

(c) Plaintiff's father and plaintiff and others reasonably relied, both directly and indirectly, on the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and also on the absence of published medical and scientific reports of the hazards of continued exposure to asbestos. Plaintiff's father and plaintiff believed asbestos to be safe and was unaware of the hazards of that material because of the conspiratorial conduct described herein.

(d) Conspirators – individually, as members of a conspiracy and as agents of other co-conspirators – were and are in a position of superior knowledge regarding the health hazards of asbestos and therefore plaintiff's father and plaintiff reasonably relied (both directly and indirectly) on the published reports commissioned by the conspirators regarding the health hazards of asbestos and the absence of published information (because of the suppression by the conspiracy) concerning the hazards of asbestos and asbestos-related products.

(e) As a direct result of the continuing and ongoing conduct of the conspirators, as alleged herein, the plaintiff contracted asbestos-related disease, and plaintiff suffered injuries and incurred damages as described in greater detail elsewhere in the complaint.

**VII.**

MET LIFE acted in concert with the foregoing parties (the conspirators) and pursuant to a common design, as previously delineated, to cause injury to plaintiff.

**VIII.**

MET LIFE knew that the conduct of Manville, Raybestos and the other conspirators was coercive, fraudulent and deceitful toward others (including plaintiff's father and plaintiff) and that conspirators' conduct was a breach of duty or duties owed to plaintiff's father and plaintiff; and MET LIFE gave substantial assistance and encouragement to Manville and the other conspirators in breaching their duties to plaintiff's father and plaintiff and others.

**IX.**

Plaintiff and/or plaintiff's father was insured, directly or indirectly, by MET LIFE and as such was owed a fiduciary duty by MET LIFE that was breached by MET LIFE's foregoing conduct and conspiracy, thereby causing plaintiff's asbestos-related injuries.

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

X.

The conspirators made representations to plaintiff's father and plaintiff and others concerning asbestos-containing products, including but not limited to:

(a) the statements set forth and summarized in the foregoing paragraphs;

(b) that asbestos in commercially used insulation products was not hazardous (this statement was known to be false by the conspirators);

(c) that the amount of asbestos in the air necessary to cause disease was five million particles per cubic foot (this statement was known to be false by the conspirators);

(d) that asbestos does not cause cancer (this statement was known to be false by the conspirators);

In addition, the conspirators actively concealed facts from plaintiff's father and plaintiff and others, including but not limited to:

(a) that asbestos-related disease can be a fatal disease;

(b) that asbestos causes various forms of lung cancer;

(c) that individuals should protect themselves from breathing asbestos dust;

(d) the extent of asbestos disease in exposed populations;

(e) information regarding the levels of airborne asbestos that can cause disease;

(f) their experience with workers' compensation claims related to asbestos exposure; and

(g) the concealment described in the other paragraphs of this cause of action.

XI.

The conspirators further knew that their foregoing statements were false and that, by their acts, they were actively concealing adverse information concerning the health effects of asbestos, including the facts described in the preceding paragraphs of this cause of action. The conspirators made these false statements and concealed these facts with the intent to deceive. Plaintiff's father and plaintiff and others relied both directly and indirectly on the foregoing false statements and their lack of knowledge resulting from the conspirators' fraudulent concealment. As a consequence of the foregoing fraudulent misrepresentations and concealment, plaintiff was injured

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

and damaged as more fully described elsewhere in the complaint.

XII.

The asbestos-containing products that conspirators manufactured, marketed, distributed, sold and otherwise supplied were defective in that they caused plaintiff's father and plaintiff and others similarly situated to be exposed to the products' asbestos content and thereby caused the injuries and damages as more fully detailed elsewhere in the complaint.

XIII.

Additionally and alternatively, as a direct result of defendants' and conspirators' (including, without limitation, MET LIFE's) actions and omissions, plaintiff's father and plaintiff were caused to remain ignorant of all the dangers of asbestos, which resulted in plaintiff's father, plaintiff, his/her agents, employers and the general public being unaware of the true and full dangers of asbestos. Defendants' and conspirators' actions and omissions also deprived plaintiff's father and plaintiff of the opportunity to decide for himself or herself whether he/she wanted to take the risk of being exposed to asbestos, denied plaintiff's father and plaintiff the opportunity to take precautions against the dangers of asbestos and caused plaintiff's damages as described elsewhere in this complaint.

XIV.

The foregoing conduct of defendants and the conspirators was despicable, willful and carried on in conscious disregard of the rights or safety of plaintiff's father and plaintiff. Defendants and the conspirators intended by such conduct to conceal and/or misrepresent material facts known to them for the purpose of thereby depriving plaintiff's father and plaintiff and others of property or legal rights, or otherwise causing injury. So in addition to actual damages, plaintiff is entitled to recover damages from defendants and the conspirators for the sake of example and by way of punishing defendants and conspirators.

///

///

///

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

## ALL DEFENDANTS:

### FOURTEENTH CAUSE OF ACTION

### (Loss of Consortium)

AS AND FOR A FOURTEENTH CAUSE OF ACTION, plaintiff Caroline Vest complains of all defendants, and each of them, and alleges:

**I.**

This plaintiff, for and on behalf of herself, brings this action on her own behalf.

**II.**

Plaintiff refers to and incorporates herein by reference the First through Thirteenth and Fifteenth Causes of Action of this complaint.

**III.**

At the time that plaintiff Timothy Vest sustained injury as more fully alleged in the First through Thirteenth and Fifteenth Causes of Action causes of action, and at all times thereafter, plaintiff Caroline Vest was the wife of plaintiff Timothy Vest.

**IV.**

Prior to said injuries, plaintiff Timothy Vest was able to and did, perform his duties as the husband of plaintiff Caroline Vest. Plaintiff is informed and believes and thereon alleges that subsequent to said injuries and as a proximate result thereof, plaintiff Timothy Vest has been, and some time in the future will be, incapacitated and unable to perform the necessary duties as husband of plaintiff Caroline Vest and the work and service usually performed in the care, maintenance and management of the family home.

**V.**

As a proximate result of said injuries, plaintiff Caroline Vest has been and will be deprived of consortium with plaintiff Timothy Vest, including the performance of her husband's duties and on plaintiff's part will be required to perform the duties previously performed by plaintiff Timothy Vest, all to plaintiff's damage in a sum which cannot be ascertained at this time. Plaintiff requests the right to amend this complaint to allege the amount of said damages when they are ascertained.

///

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**FIFTEENTH CAUSE OF ACTION**

**(For Dangerous Conditions of Premises Against Defendant THE PORT OF OAKLAND)**

AS AND FOR A FIFTEENTH CAUSE OF ACTION, plaintiff complains and alleges against only defendant THE PORT OF OAKLAND as follows:

**I.**

Plaintiff, by this reference, hereby incorporates and makes a part hereof as though fully set forth herein each and every allegation contained in the First through Fourteenth Causes of Action.

**II.**

At all relevant times herein, defendant THE PORT OF OAKLAND (hereafter "PORT") owned, controlled and/or managed the premises known as the World Air Center, Hangar 110 located in Oakland, California.

Plaintiff TIMOTHY VEST in the course of his life from approximately 1973 through 1983, was present while work involving the use, disturbance, and manipulation of asbestos and asbestos-containing products which occurred during demonstrative, maintenance, construction, and/or renovation work at Hangar 110, as described above.

While visiting his father at Hangar 110, plaintiff TIMOTHY VEST and others in his proximity regularly disturbed and otherwise manipulated asbestos-containing products used during building maintenance, construction and renovation as specified to be used by PORT but without any precautions to prevent exposure and protect persons present during use including, but not limited to, asbestos-containing aircraft parts, thermal insulation, sheetrock, drywall products, and fireproofing on these properties owned, managed or controlled by PORT, and was thereupon exposed to and injured by asbestos and asbestos-containing products as hereinbefore set forth.

**III.**

Pursuant to Government Code § 945.4, plaintiff filed claim with the Port as required.

**IV.**

From 1973 and thereafter through 1983, the above-described premises were in a dangerous

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

condition that created a substantial risk of the type of injury suffered by plaintiff as hereinbefore alleged. The property was used by plaintiff TIMOTHY VEST with due care in a manner that defendant PORT knew or should have foreseen it would be used in that PORT caused to have the previously described asbestos and asbestos-containing products specified, installed, inspected, maintained, repaired, removed and replaced on the aforementioned premises, which products defendant PORT actually knew or, in the exercise of its duty of care owed to plaintiff, should have known created a dangerous and hazardous condition of the public property, within the meaning of Government Code §§ 830, et seq., to which plaintiff TIMOTHY VEST was foreseeably exposed.

V.

From 1973 and thereafter through 1983, PORT had actual knowledge of the existence of the above-described condition and knew or should have known of its dangerous character a sufficient time prior to the dates upon which plaintiff TIMOTHY VEST was exposed thereto to have taken measures at the buildings described in Paragraph II, above, to protect or warn against the dangerous conditions. Defective asbestos-containing products were used at these sites at the express behest and instruction of defendant PORT. Plaintiff and others observed PORT workers and employees at these sites during construction and saw PORT employees inspecting, approving, and signing off on work including that involving the use of asbestos containing products at the sites as it was performed.

VI.

From 1973 and thereafter through 1983, defendant PORT failed to make reasonable, adequate or sufficient inspections of its own property or property within its custody or control, which failure caused PORT to fail to determine whether the property complied with or violated any enactments or contained or constituted any hazard to health and safety, within the meaning of Government Code §§ 830, et seq.

VII.

From 1973 and thereafter through 1983, defendant PORT failed to protect against the aforementioned unreasonably dangerous conditions on PORT's premises, in that it failed to repair, remedy or correct the dangerous conditions, failed to provide safeguards against the dangerous

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

conditions and failed to warn of the dangerous conditions, which failures were the legal cause of plaintiff's injuries as hereinbefore alleged.

VIII.

From 1973 and thereafter through 1983, defendant PORT owed a duty under Civil Code § 3479 to prevent, remedy, repair and abate any condition which is injurious to health or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life and defendant PORT knew, by and through their agents, employees, departments and research, that asbestos was dangerous and injurious to human health. The PORT breached said duties, and have thereby created a nuisance and caused injuries to plaintiff.

///

WHEREFORE, plaintiff Caroline Vest prays judgment against defendants, conspirators and their "alternate entities," and each of them as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with the proof;

2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof (except as to defendant THE PORT OF OAKLAND);

4. Special damages in accordance with the proof;

5. Prejudgment interest and post-judgment interest in accordance with law;

6. Costs of suit; and

7. Such other and further relief as the Court deems just and proper in the premises.

WHEREFORE, plaintiff Timothy Vest prays judgment against defendants, conspirators and their "alternate entities," and each of them as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with the proof;

2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof:

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof (except as to defendant THE PORT OF OAKLAND);

4. Special damages in accordance with the proof;

5. Prejudgment interest and post-judgment interest in accordance with law;

6. Costs of suit; and

7. Such other and further relief as the Court deems just and proper in the premises.

DATED: May 28, 2010

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation

By: [signature]
Justin A. Bosl

Attorneys for Plaintiffs

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**PROOF OF SERVICE**

Re: ***TIMOTHY VEST and CAROLINE VEST v. ALLIED PACKING & SUPPLY, et al.***
Alameda County Superior Court No. RG09489518

I declare that:

I am employed in the County of Alameda, State of California. I am over the age of 18 years and not a party to the within action. My business address is 171 Twelfth Street, Third Floor, Oakland, California 94607. On **May 28, 2010**, I served the following document(s):

**SECOND AMENDED COMPLAINT FOR PERSONAL INJURIES; STRICT LIABILITY; BREACH OF WARRANTIES; NEGLIGENCE; FRAUD; AIDING AND ABETTING FRAUD; AIDING AND ABETTING BATTERY; CONSPIRACY; (ALTERNATIVE ENTERPRISE AND CONCERT OF ACTION LIABILITY); PREMISES LIABILITY; AND LOSS OF CONSORTIUM**

by transmitting a true copy via the following method:

_______ (By Facsimile) By personally transmitting a true copy thereof via facsimile to

_______ (By PERSONAL SERVICE) By causing to be hand delivered via Modern Express Courier, tracking number ________, a true copy thereof to

_______ (By OVERNIGHT DELIVERY) By delivering to an authorized courier authorized by the express service to receive documents or depositing in a box or other facility regularly maintained by the express carrier a true copy thereof, on this date, and addressed to

**XX** (By U.S. MAIL) I am readily familiar with this office's business practice for collection and processing of correspondence for mailing with the United States Postal Service. This document will be sealed with postage fully prepaid and will be deposited with the United States Postal Service this date in the ordinary course of business, in envelopes addressed to
**See attached service list**

I declare under penalty of perjury that the foregoing is true and correct. Executed on **May 28, 2010** at Oakland, California.

[signature]
Randi Wiener

KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

SERVICE LIST CASE: Vest, Timothy & Caroline [NE 1430] ACTION #: RG09489518 May 28, 2010 2:46 PM

BECHERER, KANNETT & SCHWEITZER
1255 Powell Street, , Emeryville, CA 94608-2604
PH: (510) 658-3600
FAX: (510) 658-1151
FOR: CYPRUS AMAX MINERALS CO/sii/pae/alt/eqt/CYPRUS MINES CORP; CYPRUS AMAX MINERALS CO/sii/pae/alt/eqt/SIERRA TALC & CHEMICAL COMPANY; CYPRUS AMAX MINERALS CO/sii/pae/alt/eqt/UNITED SIERRA DIVISION; CYPRUS AMAX MINERALS CO/sii/pae/et of PAUL W. WOOD COMPANY; CYPRUS AMAX MINERALS COMPANY

BERRY & BERRY
P.O. Box 16070, Oakland, CA 94610
PH: (510) 835-8330
FAX: (510) 835-5117
FOR: DESIGNATED DEFENSE COUNSEL

BRYAN CAVE LLP
2 Embarcadero Center, Suite 1410, San Francisco, CA 94111
PH: 415-675-3400
FAX: 415-675-3434
FOR: MCDONNELL DOUGLAS CORPORATION; WORLD AIRWAYS, INC.

BRYAN CAVE, LLP
120 Broadway, Suite 300, Santa Monica, CA 90401-2305
PH: (310) 576-2100
FAX: (310) 576-2200
FOR: MCDONNELL DOUGLAS CORPORATION; WORLD AIRWAYS, INC.

CHAPMAN & INTRIERI
2236 Mariner Square Drive, Suite 300, Alameda, CA 94501-1019
PH: (510) 864-3600
FAX: (510) 864-3601
FOR: DEXTER CORPORATION; HENKEL CORPORATIO sii/pae/et to HENKEL LOCTITE CORPORATION; HENKEL CORPORATION; HENKEL LOCTITE CORPORATION ; HENKEL LOCTITE CORPORATION sii/pae/et to THE DEXTER CORPORATION; LIFE TECH CORP by merger to INVITROGEN CORP sii/pae/et THE DEXTER CORP; LIFE TECHNOLOGIES CORPORATION suc by merger to INVITROGEN CORPORATION

COUNSEL UNKNOWN
FOR: DEAN'S MATERIALS, INC. dba CONSTRUCTION MATERIAL SUPPLIER; MCDERMOTT/SEALY, INC.

DeHAY & ELLISTON, LLP
1300 CLAY STREET, SUITE 840, Oakland, CA 94612
PH: 510-285-0750
FAX: 510-285-0740
FOR: KAISER GYPSUM COMPANY, INC.

DONGELL LAWRENCE FINNEY LLP
707 Wilshire Boulevard, 45th Floor, Los Angeles, CA 90017-3609
PH: 213-943-6100
FAX: 213-943-6101
FOR: GEORGE E. MASKER, INC.

FOLEY & MANSFIELD
1111 Broadway, 10th Floor, Oakland, CA 94607
PH: 510-590-9500
FAX: 510-590-9595
FOR: KELLY-MOORE PAINT COMPANY, INC.; RAYMOND INTERIOR SYSTEMS - NORTH; RAYMOND INTERIOR SYSTEMS - NORTH sii/pae/eqt to JAMES L. WHITTAKER

GLASPY & GLASPY
One Walnut Creek Center, 100 Pringle Ave Ste 750, Walnut Creek, CA 94596
PH: (925) 947-1300
FAX: (925) 947-1594
FOR: GARLOCK SEALING TECHNOLOGIES LLC

HERR & ZAPALA
152 North 3rd Street, Suite 500, San Jose, CA 95112
PH: (408) 287-7788
FAX: (408) 927-0408
FOR: ALLIED PACKING AND SUPPLY

McKENNA, LONG & ALDRIDGE
101 California Street, 41st Floor, San Francisco, CA 94111
PH: (415) 267-4000
FAX: (415) 267-4198
FOR: HEXCEL CORPORATION

McKENNA, LONG & ALDRIDGE LLP
300 S. Grand Avenue, 14th Floor, Los Angeles, CA 90071
PH: 213-688-1000
FAX: 213-243-6330
FOR: HEXCEL CORPORATION

PERKINS COIE LLP
Four Embarcadero Center, Suite 2400, San Francisco, CA 94111
PH: (415) 344-7000
FAX: (415) 344-7288
FOR: GEORGIA PACIFIC LLC fka GEORGIA PACIFIC CORPORATION

SERVICE LIST CASE: Vest, Timothy & Caroline [NE 1430] ACTION #: RG09489518 May 28, 2010 2:46 PM
Page Two

SEDGWICK, DETERT, MORAN & ARNOLD
One Market Plaza, Steuart Tower, 8th Floor, San Francisco, CA 94105
FOR: PARKER HANNIFIN; PARKER HANNIFIN sii/pae/et of CLEVELAND WHEELS AND BRAKES
PH: (415) 781-7900
FAX: (415) 781-2635

SELMAN & BREITMAN
33 New Montgomery Street, Sixth Floor, San Francisco, CA 94105
FOR: KENTILE FLOORS, INC.
PH: (415) 979-0400
FAX: (415) 979-2099

STEPTOE & JOHNSON
633 West Fifth Street, Suite 700, Los Angeles, CA 90071
FOR: METROPOLITAN LIFE INSURANCE COMPANY
PH: (213) 439-9400
FAX: (213) 439-9599

THE MAU LAW FIRM
950 Harrison Street, Suite 213, San Francisco, CA 94107
FOR: GEORGE E. MASKER, INC.
PH: 415-495-8082
FAX: 415-495-8084

VASQUEZ, ESTRADA & CONWAY LLP
Courthouse Square, 1000 Fourth Street, Suite 700, San Rafael, CA 94901
FOR: ALTA BUILDING MATERIALS CO.
PH: (415) 453-0555
FAX: (415) 453-0549

WALSWORTH, FRANKLIN, BEVINS & McCALL
601 Montgomery Street, 9th Floor, San Francisco, CA 94111
FOR: HAMILTON MATERIALS, INC.
PH: (415) 781-7072
FAX: (415) 391-6258

WALSWORTH, FRANKLIN, BEVINS & McCALL - DOWMAN
601 Montgomery Street, 9th Floor, San Francisco, CA 94111
FOR: DOWMAN PRODUCTS, INC.
PH: (415) 781-7072
FAX: (415) 391-6258

WILLIAMS KASTNER
Two Union Square, 601 Union Street, Suite 4100, Seattle, WA 98101
FOR: PARKER HANNIFIN; PARKER HANNIFIN sii/pae/et of CLEVELAND WHEELS AND BRAKES
PH: 206-628-6621
FAX: 206-628-6611

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER
525 Market Street, 17th Floor, San Francisco, CA 94105-2722
FOR: F.P. LATHROP CORPORATION; LATHROP CONSTRUCTION ASSOCIATES, INC.; LATHROP ONSTRUCTION ASSOC, INC. sii/pae/et F.P. LATHROP CONSTRUCTION
PH: (415) 433-0990
FAX: (415) 434-1370

End of Service List

*Timothy Vest and Caroline Vest v. Allied Packing & Supply, Inc., et al.*

U.S.D.C., Northern District of California Case No. C-11-00061 LB

# Exhibit 5

Meet & Confer 4/29
Last Day to File MTC 6/4

**BRYAN CAVE LLP**
Robert E. Boone III, California Bar No. 132780
James C. Pettis, California Bar No. 223953
M. Angela Buenaventura, California Bar No. 264130
120 Broadway, Suite 300
Santa Monica, California 90401
Telephone: (310) 576-2100
Facsimile: (310) 576-2200

Attorneys for Defendant
McDONNELL DOUGLAS CORPORATION

RECEIVED
APR 19 2010
KAZAN, McCLAIN, LYONS
GREENWOOD & HARLEY
Records

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ALAMEDA**

TIMOTHY VEST and CAROLINE VEST,

Plaintiffs,

vs.

ALLIED PACKING AND SUPPLY, et al.,

Defendants.

Case No. RG09489518

**DEFENDANT McDONNELL DOUGLAS CORPORATION'S RESPONSE TO PLAINTIFFS' STANDARD "DIEDEN" INTERROGATORIES**

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PROPOUNDING PARTIES: Plaintiffs Timothy and Caroline Vest

RESPONDING PARTY: Defendant McDonnell Douglas Corporation

SET NUMBER: Plaintiffs' Standard "Dieden" Interrogatories to Defendants

Defendant McDonnell Douglas Corporation ("MDC") responds to Plaintiffs' Standard "Dieden" Interrogatories to Defendants.

## PRELIMINARY STATEMENT

This response is made solely for the purpose of this action. MDC has not yet completed investigation of the facts relating to this action, and has not completed preparation for trial or its associated discovery. As discovery proceeds, MDC may discover facts, information, evidence, documents, and things that are not set forth in this response but that may be responsive. The following response is based on present knowledge, information and belief and is complete as to MDC's best knowledge at this time. Furthermore, MDC has prepared this response based on its good faith interpretation and understanding of individual interrogatories but reserves the right to correct any inadvertent errors or omissions. MDC also reserves the right to conduct discovery with reference to, or to offer into evidence at the time of trial, any and all facts, evidence, documents, and things developed during the course of discovery and trial preparation, notwithstanding the reference to certain facts, evidence, documents, and things in this response. In addition, MDC reserves the right to revise and further supplement its responses based upon any information, evidence, and documentation that may be discovered subsequent to the service of this response, as appropriate. Additionally, except for the facts that are expressly admitted, no admission of any nature whatsoever is to be implied or inferred from this response.

## GENERAL OBJECTIONS

The following General Objections are applicable to, and are incorporated by reference into, each of MDC's responses.

1. MDC objects to these Interrogatories to the extent that they purport to require MDC to provide information regarding occurrences that took place or documents that were created outside of the specific dates of any purported or alleged exposure to any MDC product that may be

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

at issue on the grounds that such documents and occurrences are neither relevant to the subject matter of this action nor reasonably calculated to the lead to the discovery of admissible evidence.

2. MDC objects to the Interrogatories to the extent that they call for information that is protected from discovery by the attorney client privilege, the work product doctrine, and/or any other applicable privilege.

3. MDC objects to the disclosure of trade secret information and asserts each and every applicable privilege and rule governing confidentiality to the fullest extent provided by law.

4. MDC objects to the Interrogatories insofar as they seek information or production of documents regarded by the United States Government or military as classified, sensitive, or subject to any special protections and the disclosure of such information or documents, if any, will be subject to the strictures imposed by the government or military.

5. MDC objects to the Interrogatories insofar as they purport to impose upon MDC obligations and burdens different from, inconsistent with, or in excess of those imposed by the California Code of Civil Procedure.

6. MDC objects to the Interrogatories to the extent that they purport to require information relating to MDC's activities other than those that concern any aircraft that may be at issue in this matter on the grounds that such topics are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

7. MDC objects to the Interrogatories to the extent that they purport to require information regarding information already in the possession, custody or control of Plaintiffs or their attorneys, or that is publicly available.

8. MDC objects to the Interrogatories as unduly burdensome and overbroad in both scope and time because they seek information regarding aircraft and components without meaningful limits. Further, the Interrogatories are not properly limited to the time periods that Mr. Vest may have worked around any MDC aircraft.

9. MDC objects to the Interrogatories to the extent that they seek information regarding MDC's facilities, employees, or employment practices on the basis that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Neither Mr.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Vest nor his father were employed by MDC, neither worked at MDC facilities, or were ever on MDC premises.

10. MDC objects generally to the "1930 to the present" time period for information responsive to each interrogatory on the grounds that it is overly broad, unduly burdensome, oppressive, harassing and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, because Plaintiff was not even born until 1965.

11. MDC objects generally to Plaintiffs' various definitions of the word "IDENTIFY" when used in connection with documents or writings, oral communications, persons, and products on the grounds that it is overbroad and unduly burdensome because it requests numerous items of information, and, therefore, causes the special interrogatories referring to this word to likewise be overbroad, unduly burdensome and compound, and to contain subparts in violation of California Code of Civil Procedure sections 2030.010 *et seq*.

12. MDC objects generally to Plaintiffs' definition and use of the terms "IDENTIFY" and "IDENTITY" in connection with non-party individuals who are past and/or present employees of MDC on the grounds that Plaintiffs seek information, such as home addresses and telephone numbers and job titles, that is not subject to disclosure pursuant to the privacy interests and rights of such individuals, including privacy rights under the California and United States Constitutions.

13. MDC objects generally to Plaintiffs' definition of the word "NATURE" of any product on the grounds that it is overbroad and unduly burdensome because it requests numerous items of information, and therefore, causes the special interrogatories referring to this term to likewise be overbroad, unduly burdensome and compound, and to contain subparts in violation of California Code of Civil Procedure sections 2030.010 *et seq*. Plaintiffs' definition is also vague, ambiguous and confusing when applied to MDC's products (or components thereof) allegedly involved in this action.

14. MDC objects generally to Plaintiffs' definitions of "RAW ASBESTOS FIBER" and/or "ASBESTOS-CONTAINING PRODUCTS" on the grounds that such definitions are unreasonably vague, overbroad, unduly burdensome and oppressive, and requests information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence,

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

rendering each referring interrogatory likewise objectionable. The aircraft that may be at-issue in the present litigation contain extremely complex specifications and designs, and comprise a multitude of component parts and systems provided by numerous independent manufacturers and subcontractors. Accordingly, any such aircraft cannot fairly be characterized as a product as though it were a simple, unitary object. Moreover, it would be an extraordinarily burdensome undertaking to conduct a complete survey of all of the component parts and systems of all MDC aircraft to determine whether they do, may, or have contained some asbestos fibers in any form. Furthermore, the design of any aircraft that may be at issue was approved the United States Government and sold to its customers (*e.g.*, Government, airlines, couriers), who may have performed maintenance and modifications to the aircraft, possibly including the installation of parts or systems containing some quantity of asbestos. Accordingly, MDC objects to any interrogatory served on it that incorporates or relies on the term "asbestos products" or "asbestos-containing products," on the grounds that such an interrogatory is overbroad, vague, ambiguous, unintelligible, unduly burdensome, and oppressive in the context of an aircraft manufacturer. MDC does not consider airplanes to be "asbestos products" or "asbestos-containing products." In addition, MDC notes that there is no admissible evidence that Mr. Vest performed any maintenance work on any specific component of any MDC aircraft. MDC further notes that it has no information or knowledge that, and there is no evidence whatsoever that, any such type components around which Mr. Vest may have worked were originally installed on any MDC aircraft at the time the aircraft was delivered. After delivery of the aircraft to its customer, any modifications, alterations, maintenance, repairs and/or replacement of such original components would have been performed by persons and/or entities other than MDC.

15. MDC objects generally to Plaintiffs' definition and use of the term "DEFENDANT" insofar as it may be construed to include entities other than MDC or its predecessors (such Douglas Aircraft Company) or successors, on the grounds that it is overly broad, unduly burdensome, oppressive and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

With respect to the individual verifying these answers on your behalf, state the following:

a. their name;

b. their present business address;

c. their present job title;

d. their date of first employment with you, and the dates and titles of each job position they have held while they were employed by you.

**RESPONSE TO INTERROGATORY NO. 1:**

a. Daniel H. Marcotte

b. The Boeing Company, Long Beach, California

c. Senior Manager, Systems

d. Mr. Marcotte was initially employed by MDC in April 1989 as a Service Engineer, Avionics. Mr. Marcotte was promoted in October 1997 to Manager of Avionics and Electrical. Mr. Marcotte was promoted again in November 1999 to Senior Manager, Systems, where he remains today.

**INTERROGATORY NO. 2:**

State whether YOU are a corporation. If so, state:

a. YOUR full corporate name;

b. the state of incorporation;

c. the date of incorporation;

d. the address of YOUR principal place of business;

e. if YOU are wholly-owned or if more than five (5) percent of the ownership interest of YOUR COMPANY is owned by another business entity, state that entity's name and principal place of business.

**RESPONSE TO INTERROGATORY NO. 2:**

No. MDC ceased to exist as an entity effective January 1, 2010.

**INTERROGATORY NO. 3:**

Has THIS DEFENDANT ever been identified, known, or done business under any other name? If so, please state such name or names and the time period during which THIS DEFENDANT was so known or identified.

**RESPONSE TO INTERROGATORY NO. 3:**

Yes. MDC was originally incorporated in Maryland in 1939 under the name "McDonnell Company." In 1967, McDonnell Aircraft Corporation merged with Douglas Aircraft Company, Inc., a Delaware corporation. The surviving corporation was "McDonnell Douglas Corporation," or MDC. In 1997, MDC became a wholly owned subsidiary of The Boeing Company. Effective January 1, 2010, MDC ceased to exist an entity and the surviving entity is The Boeing Company.

**INTERROGATORY NO. 4:**

State whether YOU have ever been registered or qualified to do business in the State of California. If so, state the date YOU became qualified to conduct business in the State of California.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Yes, approximately 1960 to December 31, 2009.

**INTERROGATORY NO. 5:**

Does THIS DEFENDANT currently have, or has THIS DEFENDANT had a department, division, subdivision, branch or group responsible for the design, development, manufacture, testing and use of ASBESTOS-CONTAINING PRODUCT(S). If so, state:

a. the name of each present or former corporate department, division, subdivision, branch of group;

b. the IDENTITY of the person most knowledgeable about such department, division, subdivision, branch of group.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

unintelligible, and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, with respect to the phrase "a department, division, subdivision, branch or group responsible for the design, development, manufacture, testing and use of ASBESTOS-CONTAINING PRODUCT(S)," especially in light of the fact that for many decades MDC has been a manufacturer of many different commercial and military aircraft and other aerospace products. As such, virtually all of its past employees have been and/or are involved, in some way, in the design, development, manufacture, testing and/or use of MDC's products. MDC has never had a discrete "department, division, subdivision, branch or group responsible for the design, development, manufacture, testing and use of" MDC products, irrespective of whether they contained asbestos, and to the exclusion of the responsibilities, function(s) and/or purpose(s) of other portions of the company. MDC further notes that its aircraft and other products, which were and/or are comprised of hundreds of thousands of components, are neither raw asbestos nor products that would traditionally or commonly be considered as "asbestos-containing" products. Insofar as this interrogatory requests MDC to provide information regarding each and every model aircraft and/or other aerospace product it has designed, developed, manufactured and/or tested over the years, without regard to whether any component part of such aircraft or other product contained any asbestos, it is overly broad, unduly burdensome and oppressive. To provide the requested information (to the extent MDC even understands what is being requested) would require MDC to expend an enormous amount of resources, including thousands of man-hours, to identify, locate, acquire, review and copy hundreds of thousands of records, as well as to identify, locate, contact and interview possibly thousands of past MDC employees, many of whom are now deceased.

**INTERROGATORY NO. 6:**

Has THIS DEFENDANT engaged in the MARKETing of ASBESTOS-CONTAINING PRODUCT(S) comprised in whole or in part of amosite asbestos fiber; if so, please state:

a. the trade, brand name and/or generic name of each type of product;

b. the date(s) THIS DEFENDANT first MARKETed each type of product;

c. the date(s), THIS DEFENDANT ceased MARKETing each type of product;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

d. a general description of the chemical composition of each type of product, including:

(i) the type(s) and/or grade(s) of RAW ASBESTOS FIBER contained in each type of product;

(ii) the quantitative percentage of the type(s) of RAW ASBESTOS FIBER in each type of product;

(iii) any change(s) in the quantitative percentages of the type(s) of RAW ASBESTOS FIBER in each type of product;

e. the NATURE of each type of product;

f. a description of any wording, markings and/or logo on each type of product;

g. the recommended use(s) of each type of product, including temperature limits;

h. the name(s) of the manufacturer(s) of each type of product;

i. the name(s) and address(es) of the supplier(s) of the amosite asbestos fiber used in each type of product;

j. the IDENTITY of the person(s) most knowledgeable concerning the purchase of amosite asbestos fiber by THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and unintelligible, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, especially because for decades MDC has been a manufacturer of many different commercial and military aircraft and other aerospace products. MDC's aircraft and other products, which were and/or are comprised of hundreds of thousands of components, are neither raw asbestos nor products that would traditionally or commonly be considered as "asbestos-containing" products. Insofar as this interrogatory requests MDC to provide information regarding each and every model aircraft and/or other aerospace product it has designed, developed, manufactured, and/or tested over the years, without regard to whether any component part of such

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

aircraft or other product contained any asbestos, amosite or otherwise, it is overly broad, unduly burdensome and oppressive. To provide the requested information (to the extent MDC even understands what is being requested) would require MDC to expend an enormous amount of resources, including thousands of man-hours, to identify, locate, acquire, review and copy hundreds of thousands of records, as well as to identify, locate, contact and interview possibly thousands of past MDC employees, many of whom are now deceased.

**INTERROGATORY NO. 7:**

Has THIS DEFENDANT engaged in the MARKETing of amosite asbestos fiber; if so, please state:

a. the name and location of each amosite asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of amosite asbestos fiber mined;

b. the date(s) THIS DEFENDANT first MARKETed amosite asbestos fiber;

c. the date(s) THIS DEFENDANT ceased MARKETing amosite asbestos fiber;

d. the grade(s) of such amosite asbestos fiber MARKETed by THIS DEFENDANT;

e. the recommended use(s) of each grade of such amosite asbestos fiber, including any temperature limits;

f. the name(s) and address(es) of the supplier(s) of amosite asbestos fiber to THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 7:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 8:**

Has THIS DEFENDANT engaged in the MARKETing of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of chrysotile asbestos fiber; if so, please state:

a. the trade, brand name and/or generic name of each type of product;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

b. the date(s) this Defendant first MARKETed each type of product;

c. the date(s) THIS DEFENDANT ceased MARKETing each type of product;

d. a general description of the chemical composition of each type of product, including:

(iv) the type(s) and/or grade(s) of RAW ASBESTOS FIBER contained in each type of product;

(v) the quantitative percentage of the type(s) of RAW ASBESTOS FIBER in each type of product;

(vi) any change(s) in the quantitative percentages of the type(s) of RAW ASBESTOS FIBER in each type of product;

e. the NATURE of each type of product;

f. a description of any wording, markings and/or logo on each type of product;

g. the recommended use(s) of each type of product, including temperature limits;

h. the name(s) of the manufacturer(s) of each type of product;

i. the name(s) and address(es) of the supplier(s) of the chrysotile asbestos fiber used in each type of product;

j. the IDENTITY of the person(s) most knowledgeable concerning the purchase of chrysotile asbestos fiber by THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and unintelligible, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, especially because for decades MDC has been a manufacturer of many different commercial and military aircraft and other aerospace products. MDC's aircraft and other products, which were and/or are comprised of hundreds of thousands of components, are neither raw asbestos nor products that would traditionally or commonly be considered as "asbestos-containing" products. Insofar as this interrogatory requests MDC to provide information regarding

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

each and every model aircraft and/or other aerospace product it has designed, developed, manufactured, and/or tested over the years, without regard to whether any component part of such aircraft or other product contained any asbestos, chrysotile or otherwise, it is overly broad, unduly burdensome and oppressive. To provide the requested information (to the extent MDC even understands what is being requested) would require MDC to expend an enormous amount of resources, including thousands of man-hours, to identify, locate, acquire, review and copy hundreds of thousands of records, as well as to identify, locate, contact and interview possibly thousands of past MDC employees, many of whom are now deceased.

**INTERROGATORY NO. 9:**

Has THIS DEFENDANT engaged in the MARKETing of chrysotile asbestos fiber; if so, please state:

a. the name and location of each chrysotile asbestos mine which THIS DEFENDANT presently operates, has operated, or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of chrysotile asbestos fiber mined;

b. the date(s) THIS DEFENDANT first MARKETed chrysotile asbestos fiber;

c. the date(s) THIS DEFENDANT ceased MARKETing chrysotile asbestos fiber;

d. the grade(s) of such chrysotile asbestos fiber MARKETed by THIS DEFENDANT;

e. the recommended use (s) of each grade of such chrysotile asbestos fiber, including temperature limits;

f. the name(s) and address(es) of the supplier(s) of chrysotile asbestos fiber to THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 9:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: No.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 10:**

Has THIS DEFENDANT engaged in the MARKETing of ASBESTOS-CONTAINING PRODUCTS comprised in whole or in part of crocidolite asbestos fiber; if so, please state:

a. the trade, brand name and/or generic name of each type of product;

b. the date(s) THIS DEFENDANT first MARKETed each type of product;

c. the date(s) THIS DEFENDANT ceased MARKETing each type of product;

d. a general description of the chemical composition of each type of product, including:

(i) the type(s) and grade(s) of asbestos fiber contained in each type of product;

(ii) the quantitative percentage of the type(s) of fiber in each type of product;

(iii) any change(s) in the quantitative percentages of the type(s) of asbestos fiber in each type of product;

e. the NATURE of each type of product;

f. a description of any wording, markings and/or logo on each type of product;

g. the recommended use(s) of each type of product, including temperature limits;

h. the name of the manufacturer of each type of product;

i. the name(s) and address(es) of the supplier(s) of the crocidolite asbestos fiber used in each type of product;

j. the IDENTITY of the person(s) most knowledgeable concerning the purchase of crocidolite asbestos fiber by THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and unintelligible, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, especially because for decades MDC has been a manufacturer of

many different commercial and military aircraft and other aerospace products. MDC's aircraft and other products, which were and/or are comprised of hundreds of thousands of components, obviously are neither raw asbestos nor products that would traditionally or commonly be considered as "asbestos-containing" products. Insofar as this interrogatory requests MDC to provide information regarding each and every model aircraft and/or other aerospace product it has designed, developed, manufactured, and/or tested over the years, without regard to whether any component part of such aircraft or other product contained any asbestos, crocidolite or otherwise, it is overly broad, unduly burdensome and oppressive. To provide the requested information (to the extent MDC even understands what is being requested) would require MDC to expend an enormous amount of resources, including thousands of man-hours, to identify, locate, acquire, review and copy hundreds of thousands of records, as well as to identify, locate, contact and interview possibly thousands of past MDC employees, many of whom are now deceased.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 11:**

Has THIS DEFENDANT engaged in the MARKETing of crocidolite asbestos fiber; if so, please state:

a. the name and location of each crocidolite asbestos mine which THIS DEFENDANT presently operates, has operated, in the, and/or in which THIS DEFENDANT has or had an ownership interest, including the dates of such ownership, and the grade of asbestos fiber mined;

b. the date(s) THIS DEFENDANT first MARKETed crocidolite asbestos fiber;

c. the date(s) THIS DEFENDANT ceased MARKETing crocidolite asbestos fiber;

d. the grade(s) of such crocidolite asbestos fiber MARKETed by THIS DEFENDANT.

e. the recommended use(s) of each grade of such crocidolite asbestos fiber, including temperature limits;

f. the name(s) and address(es) of the supplier(s) of crocidolite asbestos fiber to THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 12:**

Does or did THIS DEFENDANT have a controlling ownership interest in any COMPANY which MARKETed ASBESTOS-CONTAINING PRODUCT(S); if so, please state:

      a.    the name of such COMPANY;

      b.    the date of incorporation of such COMPANY;

      c.    the state of incorporation of such COMPANY;

      d.    the date such interest was acquired;

      e.    the date such interest was changed or terminated, if applicable;

      f.    the name and location of each facility of such COMPANY;

      g.    the name of each type of ASBESTOS-CONTAINING PRODUCT(S) manufactured, processed, and/or assembled by such COMPANY.

**RESPONSE TO INTERROGATORY NO. 12:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 13:**

Does or did THIS DEFENDANT have a controlling ownership interest in any COMPANY that MARKETed RAW ASBESTOS FIBER; if so, please state:

      a.    the name of such COMPANY;

      b.    the date of incorporation or charter of such COMPANY;

      c.    the state or country of incorporation of such COMPANY;

      d.    the date such interest was acquired;

      e.    the dates such interest changed or terminated, if applicable;

      f.    the name and location of each asbestos mine owned by such COMPANY;

      g.    the grade and type of RAW ASBESTOS FIBER mined at each mine.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**RESPONSE TO INTERROGATORY NO. 13:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 14:**

Has THIS DEFENDANT warehoused any RAW ASBESTOS FIBER or ASBESTOS-CONTAINING PRODUCT(S) in the State of California; if so, please state:

        a.      the address of each warehouse facility;

        b.      the year(s) THIS DEFENDANT utilized each facility;

        c.      the IDENTITY of the custodian of warehousing records.

**RESPONSE TO INTERROGATORY NO. 14:**

In addition to its General Objections, which are incorporated in by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, with respect to the term "warehoused," and insofar as it seeks information regarding "warehousing" facilities and/or operations.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No. MDC was never engaged in the warehousing business.

**INTERROGATORY NO. 15:**

Has THIS DEFENDANT owned or operated facilities anywhere in the United States in which ASBESTOS-CONTAINING PRODUCT(S) have been manufactured, processed and/or assembled; if so, state:

        a.      the address of each such facility, including city and state.

**RESPONSE TO INTERROGATORY NO. 15:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and unintelligible, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, especially because for decades MDC has been a manufacturer of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

many different commercial and military aircraft and other aerospace products, none of which were manufactured at facilities within the "Geographic Limitation" of these Interrogatories. MDC's aircraft and other products, which were and/or are comprised of hundreds of thousands of components, are neither raw asbestos nor products that would traditionally or commonly be considered as "asbestos-containing" products. Insofar as this interrogatory requests MDC to provide information regarding the facilities wherein each and every model aircraft and/or other aerospace product was designed, developed, manufactured and/or tested over the years, without regard to whether any component part of such aircraft or other product contained any asbestos, it is overly broad, unduly burdensome and oppressive. To provide the requested information (to the extent MDC even understands what is being requested) would require MDC to expend an enormous amount of resources, including thousands of man-hours, to identify, locate, acquire, review and copy hundreds of thousands of records, as well as to identify, locate, contact and interview possibly thousands of past MDC employees, many of whom are now deceased.

**INTERROGATORY NO. 16:**

If THIS DEFENDANT owned or operated facilities in which ASBESTOS-CONTAINED PRODUCT(S) have been manufactured, processed and/or assembled, please state:

a. the date said facilities began operation;

b. the date said facility ceased operation; and

c. the name of each type of ASBESTOS-CONTAINING PRODUCT manufactured, processed or assembled at each such facility.

**RESPONSE TO INTERROGATORY NO. 16:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and unintelligible, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, especially because for decades MDC has been a manufacturer of many different commercial and military aircraft and other aerospace products, none of which were manufactured at facilities within the "Geographic Limitation" of these Interrogatories. MDC's aircraft and other products, which were and/or are comprised of hundreds of thousands of

components, are neither raw asbestos nor products that would traditionally or commonly be considered as "asbestos-containing" products. Insofar as this interrogatory requests MDC to provide information regarding the facilities wherein each and every model aircraft and/or other aerospace product was designed, developed, manufactured and/or tested over the years, without regard to whether any component part of such aircraft or other product contained any asbestos, it is overly broad, unduly burdensome and oppressive. To provide the requested information (to the extent MDC even understands what is being requested) would require MDC to expend an enormous amount of resources, including thousands of man-hours, to identify, locate, acquire, review and copy hundreds of thousands of records, as well as to identify, locate, contact and interview possibly thousands of past MDC employees, many of whom are now deceased.

**INTERROGATORY NO. 17:**

Has THIS DEFENDANT purchased or otherwise acquired any rights to the manufacture of ASBESTOS-CONTAINING PRODUCT(S) from another COMPANY? If so, state:

a. the date of purchase or acquisition of such rights;

b. the trade, brand, and/or generic name of such ASBESTOS-CONTAINING PRODUCT(S);

c. the name and location of any COMPANY from which such rights were purchased or acquired;

d. the IDENTITY of the custodian of records of such purchase(s) or acquisition(s).

**RESPONSE TO INTERROGATORY NO. 17:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 18:**

Has THIS DEFENDANT applied for and/or received any patent(s) for any ASBESTOS-CONTAINING PRODUCT(S). If so, state for each such ASBESTOS-CONTAINING PRODUCT:

      a.    the product for which each patent was applied and/or issued;

      b.    the date(s) of application;

      c.    the date(s) of issuance of the patent(s), if granted;

      d.    the date(s) of renewal, if any;

      e.    the patent number(s);

      f.    the name of the individual or COMPANY to whom each patent was issued;

      g.    the IDENTITY of the custodian of patent records of THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 18:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 19:**

Has THIS DEFENDANT registered any trademark(s) for any ASBESTOS-CONTAINING PRODUCT(S); if so, state for each such ASBESTOS-CONTAINING PRODUCT:

      a.    the product for which each trademark was registered;

      b.    whether the registration was State or Federal;

          (i)    if State, name the State;

      c.    the date(s) or registration;

      d.    the term(s) thereof;

      e.    the date(s) of renewal;

      f.    the name of the individual or COMPANY to whom each trademark was registered;

      g.    the IDENTITY of the custodian of such trademark records of THIS DEFENDANT.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**RESPONSE TO INTERROGATORY NO. 19:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Such information is equally available to Plaintiffs and their counsel through the U.S. Patents and Trademark Office and other sources.

**INTERROGATORY NO. 20:**

Did this DEFENDANT contract with the General Services Administration and/or other federal-government agency for the sale, anywhere in the United States, of RAW ASBESTOS FIBER between 1930 and 1980; if so, state for each such sale:

a. the grade(s) and type(s) of RAW ASBESTOS FIBER;

b. the quantity;

c. the date(s) of delivery;

d. the location(s), including the address(es) of delivery.

e. the name(s) of the agency with which THIS DEFENDANT contracted;

f. the date(s) of execution of such contract(s);

g. the IDENTITY of the custodian of such contract records of THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 20:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

///

///

///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 21:**

Did THIS DEFENDANT contract with the General Services Administration and/or other federal-government agency for the sale, anywhere in the United States, of ASBESTOS-CONTAINING PRODUCT(S) between 1930 and 1980, please state for each such sale:

a. the type of product;

b. the quantity;

c. the date(s) of delivery;

d. the location(s), including the address(es) of delivery.

e. the name(s) of the agency with which THIS DEFENDANT contracted;

f. the date(s) of execution of such contract(s);

g. the IDENTITY of the custodian of such contract records of THIS DEFENDANT.

**RESPONSE TO INTERROGATORY NO. 21:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 22:**

Does THIS DEFENDANT have any records of the MARKETing, advertisement, or delivery of its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S) in or to NORTHERN CALIFORNIA? If so, state:

a. the manner in which the records are kept, (e.g., in boxes, files, or microfilm, microfiche or computer tape or disk);

b. the location(s) and address(es) where such records are maintained;

c. the IDENTITY of the custodian of such records.

**RESPONSE TO INTERROGATORY NO. 22:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. MDC further objects that this interrogatory is vague and ambiguous when applied to MDC's business.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 23:**

If THIS DEFENDANT has in its possession any records of the MARKETing, advertisement, or delivery of its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCTS (including microfilm, microfiche, computer tape or disk, or any other system in which data is taken from other records), state whether THIS DEFENDANT has retained the original DOCUMENTS from which the data entered into these modes of storage was obtained. If THIS DEFENDANT has not retained such original DOCUMENTS, state:

a. the date(s) when and location(s) where the original DOCUMENTS were disposed of;

b. the IDENTITY of the custodian of the original DOCUMENTS at the time of their disposal.

**RESPONSE TO INTERROGATORY NO. 23:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: Not applicable.

**INTERROGATORY NO. 24:**

Does THIS DEFENDANT have in its possession any exemplar(s) of advertisements or brochures describing its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCTS; if so, please state:

a. the location of each exemplar;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

b. the year(s) in which said exemplar(s) was utilized;

c. the IDENTITY of the custodian of such exemplars.

**RESPONSE TO INTERROGATORY NO. 24:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 25:**

State the following:

a. the address(es) where the corporate records of THIS DEFENDANT (including minutes from the Board of Directors meetings and corporation annual reports), are currently located;

b. the IDENTITY of the custodian of such records.

**RESPONSE TO INTERROGATORY NO. 25:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and is vague and ambiguous with respect to the phrase "corporate records," which is not clearly defined. MDC notes that it had numerous employees who were responsible for maintaining records prepared in the ordinary course of its business. Persons acting in such capacity are too numerous to identify in this response.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: MDC ceased to exist as an entity effective January 1, 2010. MDC's prior Board of Directors meeting minutes and annual reports are maintained in Chicago, Illinois. Without clarification as to the other specific records about which this interrogatory is seeking information, MDC cannot further respond.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 26:**

Describe the packaging or containers in which THIS DEFENDANT sold and/or distributed RAW ASBESTOS FIBER, including composition, dimension, shape and color.

**RESPONSE TO INTERROGATORY NO. 26:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Not applicable.

**INTERROGATORY NO. 27:**

Describe any logo, design, marking or printing, including size and color, which appeared on the packaging or containers in which THIS DEFENDANT sold and/or distributed RAW ASBESTOS FIBER.

**RESPONSE TO INTERROGATORY NO. 27:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Not applicable.

**INTERROGATORY NO. 28:**

Describe the packaging or containers in which THIS DEFENDANT sold and/or distributed ASBESTOS-CONTAINING PRODUCT(S), including composition, dimension, shape and color.

**RESPONSE TO INTERROGATORY NO. 28:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is vague and ambiguous.

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Not applicable.

**INTERROGATORY NO. 29:**

Describe any logo, design, marking or printing, including size and color, which appeared on the packaging or containers in which THIS DEFENDANT sold and/or distributed ASBESTOS-CONTAINING PRODUCT(S).

**RESPONSE TO INTERROGATORY NO. 29:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Not applicable.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 30:**

Does THIS DEFENDANT have any exemplar(s) of packaging or containers in which its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S) were sold and/or distributed; If so, state:

a. the location of each exemplar;

b. the year(s) in which said exemplar(s) was utilized;

c. the IDENTITY of the custodian of such exemplars.

**RESPONSE TO INTERROGATORY NO. 30:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Not applicable.

**INTERROGATORY NO. 31:**

Did THIS DEFENDANT put warnings of asbestos-related health hazards on bags of RAW ASBESTOS FIBER; if so, please state:

a. the wording of such warning(s), including size, location, and colors;

b. whether the warning was put on a tag attached to the bags;

c. the date such warning(s) was first used;

d. whether any change was made in the wording of such warnings, the date(s) of such change, and the reasons for such change.

**RESPONSE TO INTERROGATORY NO. 31:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Not applicable.

**INTERROGATORY NO. 32:**

Did THIS DEFENDANT put warnings of asbestos-related health hazards on the packaging or containers of ASBESTOS-CONTAINING PRODUCT(S)? If so, please state:

a. the wording of such warnings, including size, location on the packaging or containers, and color;

b. the date such warning(s) was first used;

c. whether any change was made in the wording of such warning(s), the date(s) of such change, and the reason(s) for such change.

**RESPONSE TO INTERROGATORY NO. 32:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Not applicable.

**INTERROGATORY NO. 33:**

Has THIS DEFENDANT distributed any brochures or pamphlets that contain warnings of any asbestos-related health hazards; if so, please state:

a. the wording of such warning;

b. the method used to distribute such brochures or pamphlets;

c. the date(s) such brochures or pamphlets were first issued;

d. whether THIS DEFENDANT has exemplar(s) of such brochures or pamphlets;

e. the IDENTITY of the custodian of such exemplar(s).

**RESPONSE TO INTERROGATORY NO. 33:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence insofar as it requests information regarding "brochures" or "pamphlets" that MDC was requested or obligated to distribute or make available to its employees and/or independent contractors by any federal or state government, or agency or other body thereof, such as OSHA. MDC also objects that the terms "brochures" and "pamphlets" are vague and ambiguous.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 34:**

Did THIS DEFENDANT warn its employees and/or CONTRACT UNIT(S), anywhere in the United States, that exposure to asbestos could be hazardous to human health. If so, state:

a. whether copies of DOCUMENTS containing such warnings exist;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

b. the IDENTITY of the custodian of such DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 34:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: MDC complied with all applicable OSHA regulations, including any that required MDC to provide any warnings to its employees about asbestos.

**INTERROGATORY NO. 35:**

State the IDENTITY of medical directors and/or industrial hygienists retained by THIS DEFENDANT in the United States.

**RESPONSE TO INTERROGATORY NO. 35:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. MDC also objects that the term "retained" is vague and ambiguous and overly broad. The interrogatory is further oppressive because it seeks to impose upon MDC the enormous task of identifying former employees who may have held such positions.

**INTERROGATORY NO. 36:**

Has any employee of THIS DEFENDANT testified by deposition on behalf of THIS DEFENDANT in a third-party case, brought in the United States, wherein the plaintiff has alleged an asbestos-related injury? If so, for each such third party case, please state:

a. the caption and case number;

b. the court of filing including state and county;

c. the date of the deposition;

d. the name and address of plaintiff's counsel of record.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**RESPONSE TO INTERROGATORY NO. 36:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: At this time, MDC recalls that deposition testimony was given in the following cases:

A. Starling v. Lockheed Aircraft Corp., Case No. 80-899-CIV-J-B.

B. United States District Court for the Middle District of Florida.

C. May 20, 1981.

D. Ellis E. Neder, Jr., 233 E. Bay Building, Suite 1008, Jacksonville, Florida.

E. Stan Brinks & Associates, 1655 Beverly Blvd., Los Angeles, California.

A. Dickerman v Asbestos Defendants (BHC), Case No. 300726.

B. Superior Court for the State of California for the County of San Francisco.

C. November 1, 2002.

D. Brayton Purcell, 222 Rush Landing Road, Novato, California 94948-6169.

E. Tooker & Antz, 818 Mission Street, 5th Floor, San Francisco, California.

A. Dibler v. A.W. Chesterton, et al., Case No. 41152

B. Superior Court for the State of California for the County of San Francisco.

C. August 4, 2004.

D. Paul, Hanley & Harley, LLP, 1608 Fourth Street, Suite 300, Berkeley, California.

E. Ludwig Klien, Toluca Lake, California, (800) 540-0687.

**INTERROGATORY NO. 37:**

Has THIS DEFENDANT been a member of the following:

a. Asbestos Textile Institute (ATI);

b. Industrial Hygiene Foundation and/or Industrial Health Foundation (IHF);

c. Mineral Wool Institute;

d. Industrial Mineral Insulation Manufacturers Institute;

e. Magnesia Silica Insulation Manufacturers Association;

f. National Insulation Manufacturers Association (NIMA);

g. Thermal Insulation Manufacturers Association (TIMA);

h. Asbestos Information Association (AIA);

i. Quebec Asbestos Mining Association (QAMA);

j. National Safety Council;

k. Asbestos Cement Producers Association;

l. Refractories Institute;

m. any other organizations or associations of manufacturers, miners, distributors, importers, labelers, suppliers and/or sellers of ASBESTOS-CONTAINING PRODUCTS;

(i) please state the name(s) of such organizations or associations.

**RESPONSE TO INTERROGATORY NO. 37:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is unreasonably vague, overbroad, unduly burdensome and oppressive, and requests information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. MDC objects to subparagraph (m) on the grounds that it is vague and ambiguous and fails to identify or describe with particularity the specific organization or association about which information is sought. The interrogatory is further oppressive because it seeks to impose upon MDC the enormous task of identifying former employees who may have been members of the above-identified organizations. Given the large number of employees MDC had over the years, it is impossible to identify all memberships.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows:

a.. No.

b. No.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

c. No.

d. No.

e. No.

f. No.

g. No.

h. No.

i. No.

j. Yes.

k. No.

l. No.

m. No.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 38:**

For each organization, association or other entity identified in your Response to Interrogatory No. 37, please state:

a. the dates during which THIS DEFENDANT was a member.

b. the name(s) of any publication(s) received by THIS DEFENDANT from such association or organization.

c. the name of such committee or subcommittee of which THIS DEFENDANT was a member, and the dates of such committee or subcommittee membership.

**RESPONSE TO INTERROGATORY NO. 38:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is unreasonably vague, overbroad, unduly burdensome and oppressive, and requests information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. MDC objects to subparagraph (m) on the grounds that it is vague and ambiguous and fails to identify or describe with particularity the specific organization or association about which information is sought. The interrogatory is further oppressive because it seeks to impose upon MDC the enormous task of identifying former employees who may have

been members of the above-identified organizations. Given the large number of employees MDC had over the years, it is impossible to identify all memberships.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows:

a. MDC was a member of the National Safety Council at least as far back as 1955. MDC notes that it may have been a member earlier than 1955, but it has not located such information.

b. MDC has searched for but not found this information. MDC is informed and believes that it received publications from the National Safety Council, but MDC cannot at this time identify any of those materials.

c. MDC was a member of the Aerospace Committee, at least as far back as 1955.

**INTERROGATORY NO. 39:**

Has THIS DEFENDANT received any DOCUMENT(S) containing results or conclusions of any studies and/or tests conducted by the Saranac Laboratory at the Trudeau Foundation relating to the human health consequences of exposure to asbestos? If so, please:

a. IDENTIFY all such DOCUMENT(s);

b. state the date upon which THIS DEFENDANT first received such DOCUMENT(S);

c. the IDENTITY of the custodian of such DOCUMENT(s).

**RESPONSE TO INTERROGATORY NO. 39:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 40:**

State whether THIS DEFENDANT has ever maintained a library (or libraries) in the United States which contains books, articles, periodicals, journals and/or reference materials that relate to the subjects of asbestos, industrial hygiene, medicine, safety, occupational disease and/or engineering. If so, state:

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

a. the date each such library was established;

b. the location of each such library;

c. the IDENTITY of each librarian or other person in charge of such library;

**RESPONSE TO INTERROGATORY NO. 40:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: MDC has searched but not found sufficient information to respond to this interrogatory. At one time, MDC maintained a library called the Douglas Aircraft Company Technical Library, which may have contained such information. MDC is informed and believes that this library existed as far back as 1961, and perhaps earlier, at 4000 Lakewood Boulevard, Long Beach, California 90846. The library no longer operates.

**INTERROGATORY NO. 41:**

Has THIS DEFENDANT exchanged documents containing the results of or communicated with any individual or other COMPANY regarding tests and/or studies of the relationship between the inhalation of asbestos fibers and development of disease(s); if so, please state:

a. each individual or COMPANY with whom the information was exchanged or to whom it was communicated;

b. the date(s) of any such exchanges or communications;

c. the IDENTITY of the custodian of such documents.

**RESPONSE TO INTERROGATORY NO. 41:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is unreasonably vague, overbroad, unduly burdensome and oppressive, and requests information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks the disclosure of communications with OSHA regarding compliance with OSHA requirements.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 42:**

Has any employee of THIS DEFENDANT testified before the Occupational Safety and Health Administration, the National Institute of Occupational Safety and Health, or any committee or subcommittee of the United States Congress on the inhalation of asbestos dust and the development of diseases; if so, please state:

a. the entity before whom such testimony was given;

b. the date(s) and location(s) of such testimony

c. the IDENTITY of the individual(s) who so testified;

d. whether any DOCUMENTS were presented to the entity before which testimony was given;

e. whether copies of DOCUMENTS presented were retained by THIS DEFENDANT;

(i) if so, state the IDENTITY of the custodian of the DOCUMENT(S).

**RESPONSE TO INTERROGATORY NO. 42:**

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 43:**

At any of the physical facilities identified in the response to Interrogatory No. 15, has THIS DEFENDANT conducted, or caused to be conducted, tests and/or studies of ambient asbestos dust created during the manufacture, processing and/or assembling of ASBESTOS-CONTAINING PRODUCT(S); if so, please state:

a. each manufacturing facility, including location and address; at which any such test and/or study was conducted;

b. the date of each such test and/or study;

c. the individual(s) or entity conducting each such test and/or study;

d. whether THIS DEFENDANT has any documents containing the results and/or conclusions of each such study.

e. the IDENTITY of the custodian of the documents.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**RESPONSE TO INTERROGATORY NO. 43:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows without regard to the existence (or non-existence) of any asbestos in any of the aircraft involved in this action. MDC did not cause any testing of ambient asbestos dust to be done at any location where Mr. Vest may have worked around aircraft.

**INTERROGATORY NO. 44:**

Has THIS DEFENDANT conducted, or caused to be conducted, any tests and/or studies on ambient asbestos dust levels at any location or job site where its ASBESTOS-CONTAINING PRODUCTS were utilized in the United States; if so, please state:

a. the location, including name and address, at which each such test and/or study was conducted;

b. the individual(s) or entity conducting each such test, and/or study;

c. the date of each such test and/or study;

d. whether THIS DEFENDANT has any DOCUMENTS containing the results and/or conclusions of each such test and/or study;

e. the IDENTITY of the custodian of these DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 44:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows without regard to the existence (or non-existence) of any asbestos in any of the aircraft involved in this action. MDC did not cause any testing of ambient asbestos dust to be done at any location where Mr. Vest may have worked around aircraft.

**INTERROGATORY NO. 45:**

Did THIS DEFENDANT have any laboratory or other facility anywhere in the United States at which it conducted, or caused to be conducted, any tests and/or studies of its ASBESTOS-CONTAINING PRODUCTS to measure the amount of asbestos dust generated by any use for which such products were designed; if so, please state:

a. the location, including name and address, at which each such test and/or study was conducted;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

b. the individual(s) or entity conducting each such test, and/or study;

c. the date of each such test and/or study;

d. whether THIS DEFENDANT has any DOCUMENTS containing the results and/or conclusions of each such test and/or study;

e. the IDENTITY of the custodian of these DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 45:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows without regard to the existence (or non-existence) of any asbestos in any of the aircraft involved in this action: No.

**INTERROGATORY NO. 46:**

Has THIS DEFENDANT made available to its employees engaged in the MARKETing of its RAW ASBESTOS FIBER and/or its ASBESTOS-CONTAINING PRODUCT(S), a medical examination program; if so, please state:

a. whether chest x-rays or pulmonary function tests were part of such program(s);

b. whether participation in any such program was a mandatory condition of employment or was voluntary;

(i) if mandatory as a condition of employment, how frequently each employee was required to undergo such examination;

c. whether THIS DEFENDANT has DOCUMENTS of such program;

d. the IDENTITY of the custodian of such DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 46:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows without regard to the existence (or non-

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

existence) of any asbestos in any aircraft that may be involved in this action: MDC had various medical and health programs available to its employees. The terms and features of such programs varied over time. MDC did not adopt any of those programs for the purpose of determining the absence or presence of any purported asbestos-related disease with any employees. However, it was MDC's policy to perform a physical examination of new employees. That examination typically includes a chest x-ray. Periodically, employees traveling overseas may have be required to undergo an overseas physical exam, which typically would include a chest x-ray.

a. Not applicable.

b. Not applicable.

c. Not applicable.

d. Not applicable.

**INTERROGATORY NO. 47:**

Has THIS DEFENDANT notified in writing any individuals or COMPANIES to whom it MARKETed RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S), anywhere in the United States, of the potential relationship between exposure to asbestos and disease; if so, please state:

a. the date(s) THIS DEFENDANT provided this information;

b. the means used for transmittal of such information;

c. whether THIS DEFENDANT has any copies of any DOCUMENTS transmitting such information;

d. the IDENTITY of the custodian of such documents.

**RESPONSE TO INTERROGATORY NO. 47:**

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows without regard to the existence (or non-existence) of any asbestos in aircraft that may be involved in this action:

(a) December 1989; October 1992; such information may have been provided on other dates.

(b) Mail, but such information may have been transmitted by other means.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

(c) Yes.

(d) Eileen D. Powell.

**INTERROGATORY NO. 48:**

Has THIS DEFENDANT required any individual(s) who MARKETed its ASBESTOS-CONTAINING PRODUCT(S) to wear respirators or face masks; if so, please state:

a. the job title(s), if known, of individual(s) required to wear respirators or face masks;

b. the date(s) on which THIS DEFENDANT first required the wearing of respirators or face masks;

c. the means by which the requirement to wear respirators or face masks was communicated;

d. whether THIS DEFENDANT has any copies of DOCUMENTS communicating such requirements;

e. the IDENTITY of the custodian of such DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 48:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows without regard to the existence (or non-existence) of any asbestos in aircraft that may be involved in this action: No.

**INTERROGATORY NO. 49:**

Does or did THIS DEFENDANT utilize or employ any CONTRACT UNIT. If so, please state:

a. the inclusive periods of time the CONTRACT UNIT(S) was utilized or employed;

b. the business address and name of the CONTRACT UNIT(S);

c. whether THIS DEFENDANT has any DOCUMENTS showing the location(s) of the job site(s) where the CONTRACT UNIT(S) worked, and if so, state the IDENTITY of the custodian of such DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 49:**

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 50:**

Has THIS DEFENDANT received any written communication or other document, other than a claim for workers' compensation, that any person was claiming injury as a result of exposure to its RAW ASBESTOS FIBER and/or ASBESTOS-CONTAINING PRODUCT(S); if so, please IDENTIFY the first such written communication or DOCUMENT.

**RESPONSE TO INTERROGATORY NO. 50:**

Subject to and without waiving its General Objections, which are incorporated by reference, MDC responds as follows: Mr. Vest testified that he never performed maintenance work on any aircraft, but observed others performing maintenance work on DC-8s while he worked as a pilot, mainly on the ramp at various non-MDC facilities. MDC believes, based on information available at this time, that this matter is the first lawsuit filed against it where a pilot claimed injury as a result of observing others perform maintenance work on DC-8 aircraft as described by Mr. Vest.

**INTERROGATORY NO. 51:**

Has any person filed a claim for asbestos-related injury regarding THIS DEFENDANT against any workers' compensation insurance carrier which provided coverage for THIS DEFENDANT; if so, please state:

a. the date of such claim;

b. the name of claimant;

c. the caption;

d. the case number;

e. the court in which the claim was filed;

f. the IDENTITY of the custodian of such documents.

**RESPONSE TO INTERROGATORY NO. 51:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

admissible evidence insofar as it seeks information regarding claims regarding alleged exposure to any purported asbestos in any building or other facility, any product which MDC did not design or manufacture, or any aircraft or components thereof other than those specific aircraft and their particular components allegedly involved in this action.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows without regard to the existence (or non-existence) of any asbestos in any of the aircraft involved in this action: MDC is not aware of any workers' compensation claims against it or any of its workers' compensation carrier(s) regarding any alleged exposure by a pilot to any purported asbestos in DC-8 aircraft.

**INTERROGATORY NO. 52:**

Has any person filed a workers' compensation claim for asbestos-related injury against THIS DEFENDANT; if so, please state:

a. the date of such claim;

b. the name of claimant;

c. the caption;

d. the case number;

e. the court in which the claim was filed;

f. the IDENTITY of the custodian of such documents.

**RESPONSE TO INTERROGATORY NO. 52:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding claims regarding alleged exposure to any purported asbestos in any building or other facility, any product that MDC did not design or manufacture, or any aircraft or components thereof other than DC-8 aircraft and their particular components allegedly involved in this action, which components Mr. Vest was unable to identify in his deposition.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows without regard to the existence (or non-existence) of any asbestos in any of the aircraft involved in this action: MDC is not aware of any workers' compensation claims against it or any of its workers' compensation carrier(s) regarding any alleged exposure by a pilot to any purported asbestos in DC-8 aircraft.

**INTERROGATORY NO. 53:**

Does THIS DEFENDANT have insurance available to cover judgment(s) entered against it in asbestos-related personal injury lawsuits; if so, please state:

a. the name and principal place of business of any insurance carrier who has issued such policy of insurance;

b. the number and effective date of each policy;

c. the amount(s) of coverage of each policy;

d. the applicable dates of coverage;

e. any reservation of rights contained in each such policy;

f. the amount of coverage presently exhausted under each such policy.

g. the amount of coverage presently available under each such policy;

h. whether limits contained in each such policy include costs of defense.

**RESPONSE TO INTERROGATORY NO. 53:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: MDC has sufficient insurance coverage for Plaintiffs' claims for compensatory damages. Such coverage would be provided by numerous insurance underwriters, including but not limited to certain underwriters at Lloyds of London. The limits of any such policies would be sufficient to satisfy any reasonable judgment for compensatory damages against MDC in this case.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**INTERROGATORY NO. 54:**

Has THIS DEFENDANT owned or operated any petroleum refining facilities; if so, please state:

    a.    whether any ASBESTOS-CONTAINING PRODUCT(S) WERE MARKETed on the premises of such refining facilities;

        b.    the location, including the name and address of all such refining facilities;

        c.    the dates of operation of such refining facilities;

        d.    the types of ASBESTOS-CONTAINING PRODUCT(S) MARKETed on such premises;

        e.    the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS MARKETed on such premises;

        f.    whether THIS DEFENDANT has documents identifying such MARKETing;

        g.    the IDENTITY of the custodian of such documents.

**RESPONSE TO INTERROGATORY NO. 54:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. MDC further objects that this interrogatory is vague, ambiguous and unintelligible in the context of this action.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 55:**

Has THIS DEFENDANT held a controlling ownership interest in any COMPANY which owned or operated petroleum refining facilities: if so, for the period(s) of time during which THIS DEFENDANT held such interest, please state:

    a.    whether any ASBESTOS-CONTAINING PRODUCTS were MARKETed on the premises of such refining facilities;

        b.    the location, including the name and address of all such refining facilities;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

c. the dates of operation of such refining facilities;

d. the types of ASBESTOS-CONTAINING PRODUCTS MARKETed on such premises;

e. the names of the manufacturers of any ASBESTOS-CONTAINING PRODUCTS MARKETed on such premises;

f. whether THIS DEFENDANT has DOCUMENTS identifying such MARKETing;

g. the IDENTITY of the custodian of such DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 55:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. MDC further objects that this interrogatory is vague, ambiguous and unintelligible in the context of this action.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

**INTERROGATORY NO. 56:**

Has THIS DEFENDANT contracted with any COMPANY for the MARKETing of ASBESTOS-CONTAINING PRODUCT(S) on any premises owned or leased by THIS DEFENDANT; if so, please state:

a. the location, including name and address of such premises;

b. the name and address of each such COMPANY;

c. the types of ASBESTOS-CONTAINING PRODUCTS;

d. the name of the manufacturers of such ASBESTOS-CONTAINING PRODUCTS;

e. whether THIS DEFENDANT has DOCUMENTS of such MARKETing;

f. the IDENTITY of the custodian of such DOCUMENTS.

///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**RESPONSE TO INTERROGATORY NO. 56:**

In addition to its General Objections, which are incorporated by reference, MDC objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. MDC further objects that this interrogatory is vague, ambiguous and unintelligible in the context of this action.

Subject to and without waiving these objections and its General Objections, which are incorporated by reference, MDC responds as follows: No.

Dated: April 15, 2010

**BRYAN CAVE LLP**
Robert E. Boone III
James C. Pettis
M. Angela Buenaventura

By: ______________________
James C. Pettis
Attorneys for Defendant
McDONNELL DOUGLAS CORPORATION

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

**VERIFICATION**

I have read the foregoing **DEFENDANT McDONNELL DOUGLAS CORPORATION'S RESPONSE TO PLAINTIFFS' STANDARD "DIEDEN" INTERROGATORIES** and know its contents.

I am a senior manager of The Boeing Company and am authorized to make this verification for and on behalf of its former subsidiary McDonnell Douglas Corporation ("MDC"). The matters stated in MDC's responses are not within my personal knowledge; the facts therein have been assembled by authorized employees and counsel of MDC, and I am informed and believe that the facts stated therein are true and correct.

Executed on April 15, 2010 at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Daniel H. Marcotte

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 120 Broadway, Suite 300, Santa Monica, California 90401-2305.

On April 15, 2010, I served the foregoing document, described as **DEFENDANT McDONNELL DOUGLAS CORPORATION'S RESPONSE TO PLAINTIFFS' STANDARD "DIEDEN" INTERROGATORIES**, on each interested party in this action, as follows:

Denise Abrams, Esq.
Justin A. Bosl, Esq.
KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation
171 Twelfth Street, Third Floor
Oakland, CA 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

☒ (BY MAIL) I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth below. I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Bryan Cave LLP, Santa Monica, California. I am readily familiar with Bryan Cave LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

☐ (BY FEDERAL EXPRESS) I deposited in a box or other facility maintained by Federal Express, an express carrier service, or delivered to a courier or driver authorized by said express carrier service to receive documents, a true copy of the foregoing document addressed to Plaintiffs' counsel. Copies were placed in a sealed envelope designated by said express service carrier, with delivery fees paid or provided for.

Executed on April 15, 2010, at Santa Monica, California.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Karina Lopez