Exhibit G, Part 1 - McDonnell Douglas Corporation's Opposition to Plaintiffs' Motion to Remand and Exhibits
Case MDL No. 875 Document 6659 Filed 01/28/11 Page 1 of 29

Case3:11-cv-00061-JSW Document57 Filed01/23/11 Page1 of 34

Robert E. Boone III, California Bar No. 132780
James C. Pettis, California Bar No. 223953
Linda C. Hsu, California Bar No. 239880
**BRYAN CAVE LLP**
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200
Emails: reboone@bryancave.com
james.pettis@bryancave.com
linda.hsu@bryancave.com

Attorneys for Defendant
McDONNELL DOUGLAS CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

TIMOTHY VEST and CAROLINE VEST,

Plaintiffs,

vs.

ALLIED PACKING AND SUPPLY, *et al.*,

Defendants.

Case No. C-11-0061 JSW
Honorable Jeffrey S. White

**DEFENDANT MCDONNELL DOUGLAS CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

[Filed concurrently with Declarations of Thomas J. Croslin, Larry L. Fogg, and Robert E. Boone III; Appendix of Exhibits; and [Proposed] Order]

Date: February 4, 2011
Time: 9:00 A.M.
Courtroom: 11, 19th Floor

Defendant McDonnell Douglas Corporation ("MDC") submits the following Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Remand Case to California Superior Court and for Payment of Fees ("Motion for Remand"). MDC is filing with this Opposition the Supporting Declarations of Thomas J. Croslin, Larry L. Fogg, and Robert E. Boone III, and Appendix of Exhibits.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

819856\0307472

MDC's OPPOSITION TO PLAINTIFFS' MOTION TO REMAND [Case No. 3:11-CV-00061-JSW]

**TABLE OF CONTENTS**

**Page**

I. FACTUAL AND PROCEDURAL BACKGROUND ... 1
A. The Truth About Mr. Vest's Medical Condition ... 1
B. Plaintiffs Concealed Their KC-10 and B-23 Claims Until a Few Days Before MDC Removed the Case ... 1
1. Plaintiffs' Complaints Failed to Identify Grounds for Removal ... 1
2. Plaintiffs Never Disclosed Their KC-10 and B-23 Claims in Discovery ... 1
3. Percipient Witness Testimony Did Not Provide Removal Grounds ... 2
4. MDC's Discovery Responses Did Not Concede Removal Grounds ... 3
5. Plaintiffs First Disclosed Their Military Exposure Claims in Late December 2010/Early January 2011 While Opposing MDC's MSJ ... 3
C. MDC Built B-23 and KC-10 Military Aircraft Pursuant to Contracts With and Under the Direction and Control of Federal Officers ... 4
II. THE TEST FOR "FEDERAL OFFICER" REMOVAL JURISDICTION ... 7
III. MDC'S REMOVAL WAS TIMELY ... 8
IV. MDC NEVER WAIVED ITS RIGHT TO REMOVE BECAUSE IT NEVER LITIGATED PLAINTIFFS' MILITARY EXPOSURE CLAIMS IN STATE COURT ... 10
V. FEDERAL OFFICER REMOVAL JURISDICTION IS PROPER ... 10
A. MDC Acted Under Direction of Federal Officers ... 11
B. A Causal Nexus Exists Between MDC's Actions Under Color of Federal Office and Plaintiffs' Claims ... 12
C. MDC Has Demonstrated a "Colorable Federal Defense" ... 13
D. MDC's *Boyle* Defense Applies to Plaintiffs' Failure to Warn Claims ... 16
VI. PLAINTIFFS' PURPORTED DISCLAIMER CANNOT DEFEAT REMOVAL ... 20
VII. PLAINTIFFS ARE NOT ENTITLED TO FEES AND COSTS ... 22
VIII. CONCLUSION ... 22

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akin v. Big Three Industries*, 851 F. Supp. 819 (E.D. Tex. 1994) .......... 13, 14

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) .......... passim

*Brewster v. A.W. Chesterton Co.*, 2007 U.S. Dist. LEXIS 29420 (N.D. Cal. 2007) .......... 22

*Bynum v. FMC Corp.*, 770 F.2d 556 (5th Cir. 1985) .......... 16

*Dewey v. Asbestos Defendants*, No. C 04-4645 (N.D. Cal. Jan. 3, 2005) .......... 13

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) .......... passim

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635 (9th Cir. 2003) .......... 10

*Faddish v. General Electric Co.*, 2010 WL 4146108 (E.D. Pa. Oct. 20, 2010) .......... 15, 17, 18

*Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992) .......... 11, 12, 13

*Hagen v. Benjamin Foster Co.,* 2010 WL 3745297 (E.D. Pa. Sept. 24, 2010) .......... iv, 7, 10

*Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689 (9th Cir. 2005) .......... 9

*In re Aircraft Crash Litigation Frederick, Maryland*, 752 F. Supp. 1326 (S.D. Ohio 1990) .......... 12

*In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992) .......... 18, 19

*Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698 (4th Cir. 1989), *cert. denied*, 110 S. Ct. 2219 (1990) .......... 15

*Koutsoubos v. Boeing Vertol*, 553 F. Supp. 340 (E.D. Pa. 1982), *aff'd*, 755 F.2d 352 (3d Cir.), *cert. denied*, 474 U.S. 821 (1985) .......... 14, 15

*Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062 (9th Cir. 1979) .......... 20

*Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67 (3rd Cir. 1990) .......... 15

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) .......... 22

*Mesa v. California*, 489 U.S. 121 (1989) .......... 7, 13, 14

*Mortgage Electronic Registration Systems, Inc. v. Rothman*, 2005 U.S. Dist. LEXIS 12270 (N.D. Ill. 2005) .......... 21

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

*Nicholson v. United Technologies Corp.*, 697 F.Supp. 598 (D.Conn. 1988) .......... 16, 17

*Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019 (S.D. Ill. 1989) .......... passim

*Oxford v. Fosther Wheeler LLC,* 177 Cal. App. 4th 700 .......... 19, 20

*Pack v. AC&S*, 838 F. Supp. 1099 (D. Md. 1993) .......... 11, 12, 14

*Proctor v. Vishay Intertechnology, Inc.*, 2007 WL 518616 (N.D. Cal. 2007) .......... 10

*Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946 (4th Cir. 1989) .......... 16

*Redman v. A.W. Chesterton Co.*, 2008 WL 4447729 (N.D. Cal. 2008) .......... 20, 21

*Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230 (9th Cir. 1994) .......... 10

*Smith v. Xerox Corp.*, 866 F.2d 135 (5th Cir. 1989) .......... 16

*Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp. 577 (N.D. Cal. 1993) .......... 15

*U.S. v. Aerodex*, 469 F.2d 1003 (5th Cir. 1972) .......... 12

*U.S. v. Bornstein*, 423 U.S. 303 (1976) .......... 12

*Willingham v. Morgan,* 395 U.S. 402 (1969) .......... 21

*Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) .......... 7

**Statutes**

28 U.S.C § 1442(a)(1) .......... iv

28 U.S.C. § 1442 .......... 7, 20, 21

28 U.S.C. § 1446(b) .......... 8

28 U.S.C. § 2680(a) .......... 14

31 U.S.C. § 3729(a) .......... 12

31 U.S.C. § 3730(a) .......... 12

31 U.S.C. § 3730(b)(1) .......... 12

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

**SUMMARY OF ARGUMENT**

This Court must construe the federal officer statute expansively and view all facts identified by MDC, including those in its removal notice and this opposition, in the light most favorable to MDC. *Hagen v. Benjamin Foster Co.,* 2010 WL 3745297 at *6 & n. 8 (E.D. Pa. Sept. 24, 2010). All doubts must be resolved in MDC's favor. *See id.*

**MDC timely removed this action**. Under *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006), federal officer removal is not triggered until plaintiff discloses sufficient information from which it is apparent that a valid basis for federal officer removal exists – that is, enough detailed facts to support each of the substantive requirements for federal officer removal. Plaintiffs failed to disclose their claims of exposure regarding the B-23 and KC-10 military aircraft (collectively the "Aircraft") until the end of December 2010, while opposing MDC's summary judgment motion. MDC removed the case within a week.

**MDC never waived its right to remove**. MDC never waived its right to remove because it never actively litigated Plaintiffs' KC-10 or B-23 claims in state court.

**Federal officer jurisdiction is proper**. MDC has satisfied all the requirements for federal officer jurisdiction. MDC is a "person" under Section 1442(a)(1). MDC acted under the direction of a federal officer when it included asbestos-containing components in the Aircraft. There is a causal connection between Plaintiffs' claims and MDC's alleged conduct under the direction of federal officers. MDC has asserted a colorable federal defense – the "government contractor" defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). The U.S. Air Force approved and controlled the specifications and design of the Aircraft, including asbestos components and all warnings. The Aircraft complied with those requirements. Since the Government had superior knowledge about asbestos hazards, MDC was not required to warn about asbestos.

**Plaintiffs' purported disclaimer fails and cannot defeat removal**. Plaintiffs' post-removal attempt to disclaim their military claims does not divest this Court of jurisdiction. Plaintiffs have not disclaimed anything, let alone all military liability. In any event, MDC's government contractor defense is still at issue under cross-complaints against MDC. Consequently, federal jurisdiction exists and the case should not be remanded.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Truth About Mr. Vest's Medical Condition

Plaintiffs' counsel misrepresents Mr. Vest's medical status. As explained in MDC's Motion to Stay (Docs. 30, 30-1, 31), Mr. Vest's tumor was removed and has not recurred; he is not currently suffering from mesothelioma or dying. In any event, Mr. Vest's medical condition – good or bad – does not bear on the jurisdictional issue at hand.

### B. Plaintiffs Concealed Their KC-10 and B-23 Claims Until a Few Days Before MDC Removed the Case

#### 1. Plaintiffs' Complaints Failed to Identify Grounds for Removal

None of Plaintiffs' three complaints (Docs. 17-4 to 17-6) identify any MDC product by type, name or model, or any components thereof. The word "aircraft" does not even appear in the pleadings. Thus, a basis for removal jurisdiction was not apparent from any of Plaintiffs' complaints.

#### 2. Plaintiffs Never Disclosed Their KC-10 and B-23 Claims in Discovery

In March 2010, MDC served product identification contention interrogatories on Plaintiffs. (Ex. 6 to Rivamonte Decl. (Doc. 17-7 at 47-64).) Interrogatory No. 2 requested Plaintiffs to identify each MDC aircraft and aircraft component that Plaintiffs contended was a source of exposure to Mr. Vest. (*Id.* at 6-187 (Doc. 17-7 at 49).) Plaintiffs' May 12, 2010 response to this interrogatory was non-responsive: "MDC designed, manufactured, specified, distributed, sold and supplied DC-7, DC-8, DC-9, DC-10, MD-80, MD-90 and MD-11 aircraft and aircraft component parts, products and materials to World Airways, Continental Airlines and Emery Worldwide Airlines and provided continued product support assistance to these operators including, but not limited to, troubleshooting, technical and advisory assistance, and part specifications." (Ex. 7 to Rivamonte Decl. at 7-204 at 67:6-11.) Even assuming this sentence adequately articulated (which it did not) that Plaintiffs were contending that Mr. Vest was exposed to asbestos from these commercial planes, this sentence does not identify any military planes such as the KC-10 or B-23. In short, there was no basis at that time for MDC to believe that Mr. Vest had been exposed to asbestos from either the KC-10 or B-23.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

Plaintiffs' passing reference in its response to the fact that MDC's 1989 and 1992 All Operator Letters ("AOLs") applied to the KC-10, among numerous other aircraft, did not amount to a statement by Plaintiffs that they were contending Mr. Vest was exposed to asbestos from maintenance work performed on KC-10 aircraft at World Airways. (*Id.* (lines 12-17).) Plaintiffs' reference to the AOLs made no connection to any specific operator, facility, time period, or maintenance work. Indeed, Plaintiffs' April 2010 discovery responses were devoid of any facts regarding the basis for any claims regarding KC-10 aircraft, including the details of any maintenance on any KC-10 aircraft, the identification of any KC-10 components, etc. (*See generally* Ex. 7 to Rivamonte Decl.) By contrast, Plaintiffs provided more detailed (albeit still insufficient) information about their DC-8 and DC-10 claims. (*E.g., id.,* at 7-204 at 67:27-28, 7-205 to 7-207 at 68:22-70:12.) For example, Plaintiffs' Response to Interrogatory No. 18 stated that World Airways mechanics worked on "DC-8s, DC-10s and other aircraft designed and manufactured by [MDC]," but, again, there is no mention of the KC-10 (or B-23) in this sentence. (*Id.* at 7-209 (lines 2-3).)

MDC pressed Plaintiffs for more adequate discovery responses, including proper and adequate identification of which MDC aircraft Plaintiffs contended were a source of asbestos exposure to Mr. Vest, and the facts upon which they based such claims. Plaintiffs amended their responses in November 2010. (*See* Ex. 37 (all Exhibits are attached to the Appendix of Exhibits).) Plaintiffs failed to attach their amended discovery responses to their Motion. The reason they did not disclose those responses is obvious: their amended responses continued to conceal their military claims, and more blatantly so, which completely eviscerates Plaintiffs' timing and waiver arguments.

Plaintiffs' amended responses identified only DC-8 and DC-10 aircraft. (*Id.* at 1-2.) Plaintiffs did not identify the KC-10 or the B-23. (*Id.*) In fact, neither the KC-10 nor the B-23 is referenced anywhere in Plaintiffs' amended discovery responses. (*See generally id.*)

**3. Percipient Witness Testimony Did Not Provide Removal Grounds**

The vague testimony of World Airways' employees James Hale, Warren Vest, Malcolm Benge and Claude Fross did not trigger MDC's removal clock. Each of these witnesses may have mentioned the KC-10 or B-23 briefly in their deposition, but none of them testified that Mr. Vest was even present, let alone exposed to asbestos, when this undefined work was done on a KC-10 or B-23.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

Absent such testimony, there was no basis on which MDC could have known Plaintiffs were claiming, or intended to claim, Mr. Vest was exposed to asbestos from the Aircraft. The mere fact that an airplane had some maintenance performed on it does not necessarily mean that such maintenance created a risk of exposure to asbestos. These witnesses' non-specific testimony is not disclosure by the Plaintiffs, particularly in light of Plaintiffs' discovery responses.

**4. MDC's Discovery Responses Did Not Concede Removal Grounds**

Plaintiffs argue that MDC knew of its removal grounds regarding the KC-10 and B-23 in June and July 2010, based on MDC's statement, in its discovery responses, that the design of MDC's aircraft were approved by the Government. (Mtn. Remand, Doc. 17 at 4:12-5:6.) Plaintiffs misconstrue this statement. MDC's reference to the "Government" in that statement is to the Federal Aviation Administration (FAA), not the U.S. military. Plaintiffs contended that Mr. Vest was exposed to asbestos from commercial aircraft, *i.e.*, the DC-8 and DC-10. The FAA approved (certified) the design of those planes. This statement has nothing to do with any military aircraft, the "government contractor" defense or federal officer removal grounds.

Plaintiffs also contend that MDC knew of its removal grounds in April 2010, based on MDC's general objections to Plaintiffs' Standard Interrogatories insofar as they sought classified information. (*Id.* at 3:22-26.) Again, Plaintiffs misconstrue MDC's discovery response. This language is general precautionary language only meant to protect the restricted status of classified information that might be responsive to any discovery request. It is not a concession of removal grounds.

**5. Plaintiffs First Disclosed Their Military Exposure Claims in Late December 2010/Early January 2011 While Opposing MDC's MSJ**

MDC received its first notice in the case that Plaintiffs contend that Mr. Vest was exposed to asbestos in KC-10 military aircraft when Plaintiffs opposed MDC's Motion for Summary Judgment ("MSJ") on December 30, 2010. (Doc. 17-13 at 17-41.) MDC's MSJ was brought, in part, on the grounds that Plaintiffs lacked sufficient evidence of asbestos exposure with regard to MDC's DC-8 and DC-10 commercial airplanes. (Ex. 38.) Plaintiffs proffered testimony from their retained expert John Templin, who opined that Mr. Vest was exposed to asbestos via "re-entrainment" or "re-suspension" of all asbestos fibers that were released in Hangar 110 between 1972 and 1983, and

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

that all such asbestos fibers were a significant factor in causing Mr. Vest's alleged asbestos related injury. (Doc. 17-14 at 1-24, ¶¶ 14, 21, 23, 24.) According to Templin, any and all maintenance work done on any and all aircraft at any time caused asbestos to be released into Hangar 110 and settle in the hangar (*e.g.*, on the rafters), and at all times after the initial release, this asbestos would be disturbed and be re-introduced into the air where it was inhaled by Mr. Vest, thus causing his mesothelioma. (*See id.*) This was the first time Plaintiffs articulated this contention.

Templin's testimony is the linchpin for triggering MDC's right to removal, particularly when coupled with Plaintiffs' other statements in their MSJ Opposition. Plaintiffs' Opposition also stated that third party witnesses David Miller and Michael Pociecha, whom Plaintiffs had subpoenaed for deposition, would provide testimony, upon which Plaintiffs would rely in opposition to MDC's MSJ, to demonstrate that "MDC's asbestos containing aircraft parts were pervasively used in Hangar 110 from 1973 through 1983." (Doc. 17-13 at 20, lines 12-17.) Miller was deposed on December 29-30, 2010. He testified that World Airways performed "heavy checks, like a C check" in Hangar 110 on KC-10s for the U.S. military during the relevant time period of 1973 to 1983. (Miller Dep. at 273:14-274:4, Ex. 39.) On January 4, 2011, Plaintiffs deposed Pociecha, who testified that he saw maintenance being performed at Hangar 110 on Edward Daly's (ex-owner of World Airways) B-23 military bomber aircraft, including work on brakes and landing gear during the relevant time period of 1973 to 1983. (Pociecha Dep. at 220:1-221:8, 235:6-21, Ex. 40.) It was not until Plaintiffs opposed MDC's MSJ based on this evidence that MDC knew that Plaintiffs were contending that Mr. Vest was exposed to asbestos in B-23 and KC-10 aircraft, and that it had grounds to remove the case.

### C. <u>MDC Built B-23 and KC-10 Military Aircraft Pursuant to Contracts With and Under the Direction and Control of Federal Officers</u>

As detailed in the declarations of MDC's witnesses, MDC built the B-23 bomber and the KC-10 advanced capability aerial refueling tanker/cargo aircraft pursuant to military procurement contracts with the U.S. Air Force ("USAF"), previously the Army Air Corps, and in compliance with reasonably precise design specifications that were reviewed and approved by the USAF. USAF officers were intimately involved in design, development, testing and production of the Aircraft, closely monitored MDC's performance at all times, and required MDC to construct the Aircraft in

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

accordance with USAF-approved specifications and drawings incorporated into the contracts. During all phases of the projects, the USAF had stationed at MDC's facilities a resident contracting officer/representative and a full staff of scientists, engineers, procurement officers, technicians and security personnel. Military personnel had full access to MDC's facilities on a daily basis to oversee design, development and production of the Aircraft to ensure MDC's compliance with design specifications, contractual requirements and all applicable USAF specifications. USAF officers controlled any and all design changes to the Aircraft, and in fact directed many design changes throughout production. Even design modifications proposed by MDC occurred only after a proposed change had been submitted to, and evaluated and approved by, federal officers. All of the Aircraft built pursuant to these contracts were subject to inspection, testing and approval by the USAF. The USAF performed extensive flight tests of the Aircraft prior to commission to ensure complete conformity with design specifications. (Croslin Decl. ¶¶ 5-39; Fogg Decl. ¶¶ 4-42.)

The USAF required MDC to install asbestos-containing GFAE-CI (Government Furnished Aircraft Equipment – Contractor Installed) components in the Aircraft. The USAF procured GFAE-CI components directly from the OEMs, not MDC, and furnished those components to MDC. Federal officers, not MDC, selected and approved the design of, including the use of any asbestos in and warnings relating to, these GFAE-CI components. (*Id.*) MDC was not permitted to add, delete or modify any warnings applicable to this equipment. (Croslin Decl. ¶¶ 23-26, 36-39; Fogg Decl. ¶¶ 25-42.) The B-23 engines and brakes were GFAE-CI. Both contained asbestos. MDC did not design, make or sell the B-23 engines or brakes, or any other GFAE component, but was required by the USAF to install those components on the planes. (Croslin Decl. ¶¶ 23-26; Fogg Decl. ¶¶ 25-39.)

Similarly, the USAF required MDC to install asbestos-containing CFAE (Contractor Furnished Aircraft Equipment) components on the Aircraft. The USAF independently selected CFAE components for inclusion in the Aircraft design, after extensive and formal reviews of the designs with the OEMs, required MDC to procure such components from the OEMs, and required MDC to install the components. (Croslin Decl. ¶ 23-26; Fogg Decl. ¶ 25-28.) The KC-10 engines were CFAE and contained asbestos. (Croslin Decl. ¶ 29-30.)

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

MDC was not allowed to change the design of GFAE/CFAE components, or issue warnings about asbestos. (Croslin Decl. ¶¶ 23-26, 36-39; Fogg Decl. ¶¶ 25-42.) The USAF and OEMs controlled those designs and the extent to which any warnings were issued, including maintenance manuals for such components. (*Id.*)

The USAF also required MDC to comply with numerous military specifications ("MIL specs"). The USAF developed these MIL specs over years of procuring military aircraft so it could control the design of various components. MIL specs mandated the use of asbestos in certain components, such as gaskets. (Croslin Decl. ¶¶ 19-22, 28-35; Fogg Decl. ¶¶ 5-24, 36-39.) For instance, MIL specs MIL-G-7021 and MIL-G-7021A specifically required the use of asbestos material for heat resistant gaskets including, but not limited to, MS9135 and AN763 type gaskets, in B-23 and KC-10 aircraft. (Croslin Decl. ¶¶ 32-35; Fogg Decl. ¶ 36-39.) Air Force-Navy Aeronautical Standards AN4044 and AN763 specifically required the use of MIL-G-7021/7021A material composition, thus requiring the use of asbestos. Likewise, Air Force-Navy Aeronautical Standard AN900 and Military Standard MS 9136, specifically required the use of asbestos material encapsulated in copper sheet. (Croslin Decl. ¶¶ 28-35; Fogg Decl. ¶¶ 36-39.) By requiring MDC to comply with these MIL specs, the USAF compelled MDC to install such asbestos components on the Aircraft.

The USAF controlled all technical manuals, labels and warnings. The contracts specifically required that MDC provide Flight Operating Instruction Handbooks, Maintenance Handbooks, and Parts Catalogs for the USAF's review and approval. (Croslin Decl. ¶¶ 36-39; Fogg Decl. ¶¶ 40-42.) The USAF required all technical manuals for the operation and maintenance of the Aircraft to comply with military specifications that set forth the format of manuals, the subject areas to be treated and the requirements for illustrated materials. (*Id.*) MDC could not expand the subject areas of the manuals. (*Id.*) This included any warning (or lack thereof), which MDC could not expand or place in any publication unless specifically set forth by such technical manual requirements in accordance with USAF approved specifications. In addition, MDC had no power to place any markings, labels or warnings on military aircraft or aircraft components, except as required by USAF specifications. (*Id.*)

The Government knew about the purported hazards of asbestos since the early 1940s. (Col. Alvin F. Meyer, Jr. (Ret.) Aff., Ex. 41.) MDC was not aware of any such alleged hazards until the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

Government issued OSHA regulations regarding asbestos in 1972. (*See* J. Lindsey Chalk Aff. ¶¶ 5-6, Ex. 42.) Even then MDC only knew what the Government published in the OSHA regulations, which did not address the use of asbestos in military aircraft. (*See id.*) The USAF did not consider aircraft mechanics subject to a health hazard from asbestos-containing components, but considered other materials more hazardous. (Col. Meyer Aff., Ex. 41.)

## II. THE TEST FOR "FEDERAL OFFICER" REMOVAL JURISDICTION

**"[T]he right of removal is absolute for conduct performed under color of federal office**...." *Durham*, 445 F.3d at 1252 (emphasis added). The Ninth Circuit stated in *Durham*, that because it is important to protect federal officers, removal rights under Section 1442 are much broader than those under Section 1441 and there is a "clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret Section 1442 broadly in favor of removal." 445 F.3d at 1252.

To establish federal officer removal jurisdiction, the removing party (1) must be a "person" within the meaning of the statute; (2) demonstrate that it acted under direction of a federal officer; (3) demonstrate a causal nexus between plaintiff's claims and the acts defendant performed under color of federal office; and (4) raise a colorable federal defense to plaintiff's claims. *Mesa v. California*, 489 U.S. 121, 124-35 (1989). Plaintiffs do not contest that MDC is a "person" under the statute.[1/] MDC easily satisfies the remaining three requirements even though Plaintiffs challenge only one of them: that MDC has raised a colorable federal defense.

In *Hagen*, the Asbestos MDL Court ("MDL Court") recently held that a defendant is entitled to removal under Section 1442(a)(1) where the defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense. 2010 WL 3745297 at *6. "These facts may be cited in the answer, the notice of removal or in the response to a motion for remand." *Id.* at n. 8. Under this standard, all doubts must be resolved in favor of upholding federal officer jurisdiction.

---

1/ Corporate entities are considered "persons" for purposes of Section 1442(a)(1). *See Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

## III. MDC'S REMOVAL WAS TIMELY

The trigger to start the removal clock is "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable…" 28 U.S.C. § 1446(b). Under the Ninth Circuit's decision in *Durham*, the "federal officer" removal clock is not triggered until plaintiff discloses (in a pleading or other paper) sufficiently detailed facts based on which it is apparent to the removing defendant that it can satisfy all of the aforementioned requirements of the statute. 445 F.3d at 1251-1252. Plaintiff has to provide facts to support each of the above requirements to support federal officer removal. The *Durham* court found that, until plaintiff revealed specific facts as to which aircraft he worked on during his military career, Lockheed could not assert that its actions were taken pursuant to a federal officer's direction, or that it had a colorable federal defense. *Id.* Lockheed could not remove the case until it had enough information to discern whether its allegedly wrongful conduct was protected by federal contractor immunity. *Id.* Had Lockheed removed at an earlier time, it may well have subjected itself to fees and costs, and potentially Rule 11 sanctions for filing a baseless notice of removal. *Id.*

> We no longer require defendants to take this blind leap – we don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove… Our interpretation of section 1446(b) protects the government's right of removal and encourages plaintiffs to disclose the facts underlying their claims early on. We note that an opposite result would encourage gamesmanship and defeat the policies underlying sections 1442 and 1446.

*Id.* MDC promptly removed the action within a week of its first notice that it had valid federal officer removal grounds. Plaintiffs never disclosed their KC-10 or B-23 claims during discovery, and in fact concealed those claims – precisely the sort of gamesmanship against which the removal statute protects. Plaintiffs never provided sufficient information from which MDC could discern that it could assert its actions were taken pursuant to a federal officer's directions and that colorable federal defenses existed until Plaintiffs opposed MDC's MSJ.

Plaintiffs' argument that MDC's removal was untimely is the same argument the *Durham* court rejected. Plaintiffs never stated in their discovery responses that they were asserting claims based upon alleged exposure by Mr. Vest to asbestos from the KC-10 or B-23. Most telling are Plaintiffs'

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

November 2010 amended discovery responses, in which Plaintiffs made no reference whatsoever to the KC-10 or B-23, further concealing those claims from MDC. The only claims Plaintiffs asserted pertained to MDC's commercial aircraft.

*Durham* makes it clear that the clock for federal officer removal is not triggered by a plaintiff's vague or misleading discovery responses. To determine if grounds for "federal officer" removal exist, a defendant like MDC must have sufficient information regarding the particular model aircraft and the specific components thereof that are alleged to be a source of exposure and what work was performed on such components in order to conduct an adequate investigation into whether the subject components contained asbestos and were mandated by the USAF to be installed on the aircraft – *i.e.*, were in fact GFAE, CFAE or MIL spec parts. *See Durham*, 445 F.3d at 1251. Without such information, which must be provided by the plaintiff and must be apparent on its face, MDC could not assert either that its actions were taken pursuant to a federal officer's directions or that it had colorable federal defenses. *See id.*

Plaintiffs' contention that MDC was on notice because Plaintiffs alleged generally that Mr. Vest was exposed to asbestos from Hangar 110, and there was testimony that military planes were serviced at Hangar 110, is misguided, unavailing and belied by Plaintiffs' failure to properly and candidly disclose their KC-10 and B-23 claims in their discovery responses. MDC asked the right questions. Plaintiffs chose to be coy and conceal their military aircraft claims. The only claims Plaintiffs disclosed properly pertained to DC-8 and DC-10 aircraft. Plaintiffs never disclosed in their discovery responses facts sufficient to establish each of the requirements for "federal officer" removal grounds. MDC was not required to take a "blind leap" by guessing which specific components of what particular aircraft is the alleged source of Mr. Vest's purported exposure and then risk the potential adverse consequences of an improvident removal. *Id.* Moreover, MDC had no duty to investigate Plaintiffs' vague, unsupported claims to determine whether "federal officer" grounds actually existed, especially here where Plaintiffs specifically alleged exposure to only commercial airplanes. *Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689 (9th Cir. 2005) (removability is not determined through subjective knowledge or a duty of further inquiry.)

## IV. MDC NEVER WAIVED ITS RIGHT TO REMOVE BECAUSE IT NEVER LITIGATED PLAINTIFFS' MILITARY EXPOSURE CLAIMS IN STATE COURT

Plaintiffs' contention that MDC waived its right to remove has no merit. "A party, generally the defendant, may waive the right to remove to federal court where, **after it is apparent that the case is removable**, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994) (emphasis added); *see also EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 649 (9th Cir. 2003). a waiver of the right to remove must be clear and unequivocal. *Resolution Trust,* 43 F.3d at 1240; *Proctor v. Vishay Intertechnology, Inc.*, 2007 WL 518616, *4 (N.D. Cal. 2007). Here, MDC removed the action within days of learning that the case was removable. MDC did not file any motions or initiate any proceedings in state court after learning that the action was removable and there is not even an indicia of evidence that MDC intended to have the matter adjudicated in state court once removal was triggered, much less the "clear and unequivocal" intent required for a court to find a waiver of the right to removal.

MDC's participation in the state court proceedings prior to ascertaining its right to remove did not constitute a waiver of its removal rights. None of that activity by MDC sought to adjudicate, much less even pertained to, Plaintiffs' newly disclosed military exposure claims. In fact, MDC was unaware that Plaintiffs were making any such claims, as evidenced by the fact that MDC's MSJ does not address any military aircraft.

Plaintiffs' cited cases are inapposite. Plaintiffs do not cite to a single case holding that a defendant waived his right to remove by participating in the state court action **before knowing the case was removable.** Nor can they, because that is not the law. Plaintiffs' waiver argument fails.

## V. FEDERAL OFFICER REMOVAL JURISDICTION IS PROPER

Applying the standard articulated by the MDL Court in *Hagen,* it is clear that MDC has made an adequate showing that federal officer jurisdiction exists here. Indeed, the evidence and pleading materials MDC has proffered here is much more detailed and persuasive than those proffered in *Hagen*, which the MDL Court found "plainly satisfy this standard." 2010 WL 3745297 at *6.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

**A. MDC Acted Under Direction of Federal Officers**

A corporate defendant is "acting under" the direction of a federal officer when that officer had "direct and detailed control" over the defendant. *See Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992). "This control requirement can be satisfied by strong government intervention and the threat that a corporate defendant will be sued in state court 'based upon actions taken pursuant to federal direction." *Id.*

Courts have routinely sustained removal on "federal officer" grounds and, in doing so, found the removing defendant satisfied the "acting under" prong under circumstances similar to, but less compelling than, those presented here. For example, in *Fung*, Navy personnel filed personal injury product liability actions against General Dynamics based on their alleged exposure to asbestos used in submarines General Dynamics built for the Navy pursuant to military procurement contracts. The court held that General Dynamics satisfied the "acting under" prong because: (1) it was "under the direct control of the Secretary of the Navy and authorized to build submarines under federal contract," (2) the Navy "monitored General Dynamics' performance at all times and required the defendant to construct and repair the [submarines] in accordance with the applicable and approved specifications incorporated into the contracts," (3) "all contract supplies were subject to inspection, test, and approval by the government," and (4) "the government also performed extensive dock and sea trial on the submarines prior to commission, to ensure complete conformity with design specifications." *Id.* at 572-73. Similarly, in *Pack v. AC&S*, 838 F. Supp. 1099, 1103 (D. Md. 1993), the court found that Westinghouse, which designed and manufactured turbine generators for the Navy, satisfied the "acting under" requirement by showing that the Navy (1) exercised "extensive control over the construction, design and testing of the turbines," (2) "monitored Westinghouse's performance and on occasion it returned drawings and specifications for revision," (3) specified and approved asbestos-containing components used, and (4) tested the turbines. *Id.* at 1103.

Here, the USAF exercised at least the same level of involvement and control over MDC's production of the Aircraft, as the Navy did with the products in *Fung* and *Pack*. The USAF was directly and closely involved in all phases of the KC-10 and B-23 programs. USAF officers had full access to MDC's manufacturing facilities to ensure that the Aircraft complied with all applicable

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

USAF specifications and requirements. The USAF reviewed and approved all aspects of aircraft design, down to review and approval of design specifications and detailed parts drawings and warnings. MDC could not change the design without prior USAF authorization, and the USAF controlled the design change process, retaining absolute authority to accept, reject or modify any aspect of a proposed design change.

In fact, MDC has shown a greater level of Government intervention than that demonstrated in *Fung* and *Pack* because MDC was required to install asbestos-containing GFAE components, such as B-23 engines and brakes. (Croslin Decl. ¶¶ 3-39; Fogg Decl. ¶ 29-39.) Courts have recognized that inclusion of GFAE permits greater Government control over aircraft design, by allowing the Government to be directly involved in design and development of aircraft subsystems. *In re Aircraft Crash Litigation Frederick, Maryland*, 752 F. Supp. 1326 (S.D. Ohio 1990). The USAF's requirement that MDC install CFAE components, such as KC-10 engines, and MIL spec components, such as boom assembly, fuel system, and vent system, likewise compelled MDC to install asbestos components on the Aircraft. (Croslin Decl. ¶¶ 28-35; Fogg Decl. ¶ 25-39.)

The USAF had authority to reject any aircraft that failed to conform to these specifications. MDC would have been subject to liability and penalties under 31 U.S.C. Section 3729(a) of the False Claims Act ("FCA") had it delivered Aircraft that did not conform with contractual specifications. *U.S. v. Aerodex*, 469 F.2d 1003 (5th Cir. 1972) (aircraft engine component manufacturer liable for failure to comply with specifications).[2/] The FCA, enacted in 1863 (*see* Act of Mar. 2, 1863, ch. 67, 12 Stat. 696), "was originally aimed principally at stopping fraud perpetrated by contractors during the Civil War." *U.S. v. Bornstein*, 423 U.S. 303, 309 (1976).

MDC was "acting under" the direction of federal officers when it built B-23s and KC-10s.

### B. <u>A Causal Nexus Exists Between MDC's Actions Under Color of Federal Office and Plaintiffs' Claims</u>

MDC satisfies the "causal nexus" requirement because Plaintiffs' claims arise directly from MDC's acts under color of federal office, *i.e.*, Mr. Vest's alleged exposure to asbestos in USAF aircraft

[2/] Under the FCA, the Attorney General (or private parties on behalf of the Government) may bring a civil action against a Government contractor. 31 U.S.C. § 3730(a), (b)(1).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

MDC built pursuant to Government procurement contracts and under extensive Government control. Plaintiffs' state court action is based on MDC's conduct, which it was required to perform by federal officers pursuant to its federal duty. *Mesa*, 489 U.S. at 131-132.

In *Fung*, the Court found the requisite causal nexus because plaintiffs' alleged exposure occurred while they worked on submarines that were constructed with asbestos at the Government's direction and approval. *Fung*, 816 F. Supp. at 572-573. "Plainly, when a government contractor builds a product pursuant to Air Force specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied." *Akin v. Big Three Industries*, 851 F. Supp. 819, 823-824 (E.D. Tex. 1994); *see also Dewey v. Asbestos Defendants*, No. C 04-4645, slip op. at 6 (N.D. Cal. Jan. 3, 2005) (MIL specs requiring asbestos satisfied causal nexus) (Ex. 44).

The USAF required MDC to install asbestos-containing components on B-23s and KC-10s. (Croslin Decl. ¶¶ 28-35; Fogg Decl. ¶ 25-39.) MDC had to install those components to comply with its contractual obligations. Had MDC not done so, the Aircraft would not have complied with USAF-approved design specifications, and MDC would have been in breach of contract and subject to penalties under the FCA.

### C. MDC Has Demonstrated a "Colorable Federal Defense"

MDC has raised a colorable federal defense: the "government contractor" defense under *Boyle v. United Technologies, Inc.*, 487 U.S. 500 (1988), and its progeny, including *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019 (S.D. Ill. 1989). Under *Boyle*, civil tort liability for design defects in military equipment cannot be imposed against the manufacturer under state law if (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about dangers in use of equipment that were known to the supplier but not to the United States. *Boyle*, 487 U.S. at 512.

The government contractor defense is based on federal law, was created by federal courts, and by operation preempts state law product liability claims. The Supreme Court explicitly stated in *Boyle* that "civil liabilit[y] arising out of the performance of federal procurement contracts" is a "'uniquely federal' interest." *Id.* at 505-06. "[I]t is plain that the Federal Government's interest in the

procurement of equipment is implicated by [product liability] suits [against the contractor] – even though the dispute is one between private parties." *Id.* at 506. The rationale for the defense is based upon federal law: a military contractor should enjoy the same immunity as a federal officer enjoys under the discretionary function exception to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. Section 2680(a). *Id.* at 511. As the Supreme Court stated:

> We think that the selection of the appropriate design for military equipment to be used by our Armed Forces is assuredly a discretionary function within the meaning of [28 U.S.C. § 2680(a)]. It often involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness. And we are further of the view that permitting 'second-guessing' of these judgments . . . through state tort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption. The financial burdens of judgments against the contractors would ultimately be passed through, substantially if not totally, to the United States itself, since defense contractors will predictably raise their prices to cover, or to insure against, contingent liability for the Government-ordered designs. To put the point differently: It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.

*Id.* at 511-12 (citations omitted).

The question at this stage is not whether MDC's claimed defense is meritorious or even whether MDC will likely prevail on that defense. *Mesa*, 489 U.S. at 128-29; *see also Pack*, 838 F. Supp. at 1103. The appropriate inquiry is whether this Court will be deciding a question of federal law. *Akin*, 851 F. Supp. at 823. MDC's evidence shows that (1) the USAF approved reasonably precise specifications for the Aircraft; (2) the Aircraft conformed to those specifications; and (3) the USAF had superior knowledge about the hazards of asbestos, relieving MDC from any duty to warn.

To meet the first element of *Boyle*, MDC must demonstrate only that the product supplied was a particular product specified by the USAF. *E.g.*, *Koutsoubos v. Boeing Vertol*, 553 F. Supp. 340, 343 (E.D. Pa. 1982), *aff'd*, 755 F.2d 352 (3d Cir.), *cert. denied*, 474 U.S. 821 (1985). MDC easily satisfies this element. The USAF specified the KC-10 and B-23 aircraft in procurement contracts. (Croslin Decl. ¶¶ 3-39; Fogg Decl. ¶ 4-42.) As the *Niemann* court stated, the products at issue are the aircraft themselves, and not any particular component part of those aircraft. 721 F. Supp. at 1027. No piece of military equipment more typifies the situation to which the *Boyle* decision speaks than procurement of military aircraft. The primary purpose for the Aircraft was to satisfy the military's need for aircraft

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

critical to national defense. Courts have regularly granted summary judgment in favor of aircraft defense contractors on the basis of the government contractor defense. *See Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67 (3rd Cir. 1990); *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698 (4th Cir. 1989), *cert. denied*, 110 S. Ct. 2219 (1990); *Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp. 577 (N.D. Cal. 1993); *Niemann*, 721 F. Supp. at 1019 (involving C-54, C-118, C-131 and T-29). The MDL Court also recently granted a summary judgment based on the government contractor defense. *See Faddish v. General Electric Co.*, 2010 WL 4146108 (E.D. Pa. Oct. 20, 2010).

Here, the USAF approved reasonably precise specifications for the Aircraft, just as the military did with regard to the aircraft involved in *Niemann* and other cases. USAF officers were intimately involved in design and development of the Aircraft. The USAF also tested the Aircraft and systems to insure that it satisfied detail specifications. (Croslin Decl. ¶¶ 4-15; Fogg Decl. ¶ 4-24.) This tedious submittal, negotiation, and review process unquestionably satisfies the requirement that the Government approve reasonably precise specifications. *E.g.*, *Koutsoubos*, 755 F.2d at 355; *Maguire v. Hughes Aircraft Corp.*, 725 F. Supp. 821, 823-24 (DNJ 1989). Indeed, that was the very same process involved in *Niemann*.

The USAF specified the use of asbestos by requiring MDC to install GFAE and CFAE components which contained asbestos. The USAF reviewed the design of, and selected, those components for inclusion in the design of the Aircraft. The USAF also required MDC to install numerous MIL spec asbestos components on the Aircraft. The USAF drafted those MIL specs. (Croslin Decl. ¶¶ 28-35; Fogg Decl. ¶ 25-39.)

MDC has made a showing that it can satisfy the second element of the *Boyle* test. Each B-23 and KC-10 complied with their respective design specifications. (Croslin Decl. ¶ 17; Fogg Decl. ¶ 8.) The USAF did not accept delivery of each aircraft unless and until MDC had demonstrated such compliance through a battery of inspections and tests, and certified compliance with the design specifications. (Croslin Decl. ¶¶ 4-17; Fogg Decl. ¶ 4-24.)

MDC also has shown that it can satisfy the final element of the *Boyle* test. In fact, this issue has already been adjudicated. As determined by *Niemann*, MDC had no duty to warn the USAF about the alleged hazards of asbestos, and thus satisfies the third prong of the *Boyle* test, because the USAF

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

already had superior knowledge about those hazards. *Niemann*, 721 F. Supp. at 1027-1028; *see also Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 950-51 (4th Cir. 1989) (holding that because of the Government's demonstrated knowledge of the risk of asbestos, third element of *Boyle* was satisfied regardless of the level of defendant's knowledge of risks). MDC was unaware of hazards associated with asbestos until 1972, when the Government issued OSHA regulations regarding asbestos. The Government knew about asbestos hazards long before it issued the OSHA regulations. MDC has demonstrated the military's superior knowledge about asbestos through testimony by Col. Alvin F. Meyer, Jr. (Ret.) and Col. Walter Melvin, MD (Ret.) (Exs. 41, 43.) Furthermore, Plaintiffs' own expert (Templin) concedes that the Government knew about asbestos hazards before World War II. (Doc. 17-14 at ¶¶ 11-13.) In any event, MDC also could not place any markings, warnings, or labels on MDC aircraft or aircraft components, including GFAE/CFAE components, except as required by USAF specifications. (Croslin Decl. ¶¶ 36-39; Fogg Decl. ¶ 40-42.)

Accordingly, MDC has demonstrated a colorable federal defense to Plaintiffs' claims.

### D. MDC's *Boyle* Defense Applies to Plaintiffs' Failure to Warn Claims

Since *Boyle*, most courts addressing the issue have held that some form of the government contractor defense applies in failure to warn cases. *E.g.*, *Smith v. Xerox Corp.*, 866 F.2d 135 (5th Cir. 1989); *Nicholson v. United Technologies Corp.*, 697 F.Supp. 598, 604 (D.Conn. 1988).[3] In *Nicholson*, plaintiff was injured when the nose landing gear of an Army helicopter exploded supposedly because of a defect in design of a vent valve in the strut. Along with a claim of design defect, plaintiffs' theory rested on defendant's alleged violation of its duty to provide, in the manual, instructions and warnings concerning dangers in repairing and disassembling the strut. *Id.* at 602-03. After considering the policy basis for the government contractor defense articulated in *Boyle*, the court concluded that a contractor should not be held liable for deficiencies in a maintenance manual if its contents are dictated by the government, reasoning:

> Liability for failure to warn as asserted in this case would have the same negative

3/ *See also Bynum v. FMC Corp.*, 770 F.2d 556, 574 n.24 (5th Cir. 1985) ("policies underlying the government contractor defense apply equally well regardless of whether the action is predicated on an allegedly dangerous defect in the design of the product or a failure to warn, the government contractor defense functions as an affirmative defense against both claims of tort liability").

> effects on military procurement as was outlined in *Boyle*. Further, the government's decision on the contents of a maintenance manual involves the same balancing of technical, military and even social considerations protected in *Boyle*.
>
> Because the policy justifications underlying the government contractor defense apply equally well regardless of whether the action is based on an allegedly dangerous design defect or a failure to provide adequate warnings and instructions, the government contractor defense can function as an affirmative defense against both claims.

*Id.* at 604, *citing Bynum*, 770 F.2d at 574 n.24. In *Nicholson*, the contractor's affidavit showed that the government established specifications for development of the manual, that the government was in large part responsible for contents of the manual and revisions to it and that the manual was provided under contract to the government. *Id.*

Plaintiffs' contention that MDC cannot show a colorable defense under *Boyle* with respect to their failure to warn claims has no merit. Plaintiffs claim that MDC must show that (1) the USAF exercised its discretion and approved certain warnings; (2) MDC provided warnings required by the USAF; and (3) MDC warned the USAF about danger in the equipment's use that were known to MDC but unknown to the USAF. Plaintiffs then distill this so-called test into a purported requirement that MDC show that the USAF made a discretionary decision prohibiting MDC from warning about asbestos used in the design of the Aircraft. (*See* Motion to Remand at 16.) Plaintiffs concede that MDC satisfies this test if it can demonstrate any of the following: (a) that the USAF prohibited warnings in general; (b) that the USAF prohibited warnings as to the specific feature in question; (c) that the USAF dictated specific warnings; or (d) that there was some "back and forth" discussions between MDC and the USAF about warnings. (*Id.*) Plaintiffs misstate and misapply the law. In *Faddish, supra*, the MDL Court granted summary judgment based on the government contractor defense against failure to warn claims. 2010 WL 4146108 (E.D. Pa. Oct. 20, 2010). In doing so, the MDL Court rejected plaintiffs' argument that the contractor had to show that the Government forbade it from warning about asbestos. *Id.* at *8-9. The MDL Court held that a contractor is immune from failure to warn claims if (1) the Government provided warning directives, (2) the contractor complied with those directives, and (3) the contractor either warned about the hazards of asbestos, or the Government knew about the hazards of asbestos. *Id.* at *7. MDC satisfies this test (as well as Plaintiffs' "test" even though it does not apply).

The USAF provided directives and exercised its discretion with regard to, and in fact

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

controlled, warnings related to the B-23 and KC-10 in general, and with respect to asbestos components in particular. For instance, the USAF required certain markings on the Aircraft. MDC could not change or add warnings to technical manuals regarding GFAE or CFAE components, or place warnings on those components. All of that was dictated by the USAF in connection with its procurement and/or selection of those components from the OEMs. (Croslin Decl. ¶¶ 36-39; Fogg Decl. ¶ 40-42.) The USAF also dictated the design of MIL spec components and warnings on military aircraft. MDC complied with these directives.

The USAF also already knew about the hazards of asbestos and chose not to issue warnings about such hazards, and prohibited any other warnings. According to USAF Colonel Alvin F. Meyer, Jr. (Ret.):

> All warnings placed on military equipment procured from government contractors, and warnings placed in technical manuals for that equipment, were under the exclusive control and required the approval of the United States government.

(Ex. 41 (Col. Meyer Aff. ¶ 26).) Colonel Meyer declared that even if MDC had wanted to place asbestos warnings on aircraft, the USAF would not have allowed it. (*Id.* at ¶ 27.) The USAF reviewed, approved and mandated content of all manuals and markings associated with subject aircraft, including all warning and changes. (Croslin Decl. ¶¶ 36-39; Fogg Decl. ¶ 40-42.)

*In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992), relied upon by Plaintiffs, did not involve military equipment and thus does not apply here. Unlike MDC's KC-10 and B-23 military aircraft, defendants' insulation involved in *In re Hawaii Federal Asbestos Cases* was designed for commercial use without any Government intervention – the Navy just happened to purchase an insignificant amount of it for installation on ships. *Id.* at 811, 812. That defendants' insulation was not a military product was the "driving force" behind the Ninth Circuit's opinion. Indeed, the court noted that its decision not to extend government contractor immunity under *Boyle* to the insulation manufacturers would not have the "chilling effect" on the military equipment procurement process *Boyle* was intended to avoid.

> The contractors, furthermore, already will have factored the costs of ordinary tort liability into the price of their goods. That they will not enjoy immunity from tort liability with respect to the goods sold to one of their customers, the Government, is unlikely to affect their marketing behavior or their pricing.

*Id.* By contrast, the B-23 and KC-10 were designed for military use and were not commercially available. If MDC and other government contractors cannot enjoy immunity under *Boyle* against state law failure to warn claims such as Plaintiffs assert here, then the government procurement process will be negatively impacted, particularly since MDC would be penalized for having fulfilled its contractual obligations to the USAF when the USAF had superior knowledge about asbestos and did not consider its use on aircraft dangerous.

In any event, the Ninth Circuit acknowledged the applicability of the government contractor defense to Hawaii state law failure to warn claims, and further noted that, were the insulation a military product, defendants could have availed themselves of the defense had they demonstrated that the Government specified the use of asbestos in or controlled warnings about the products. 960 F.2d at 813. Defendants had no such evidence and, in fact, conceded that the Navy did not specify the use of asbestos in, or exert any control over warning about, the insulation products. *Id.* Thus, there was no conflict between the state law duty to warn and federal policy.[4]

Here, MDC's (alleged) California state tort law duty to warn about asbestos presents a significant conflict with federal policy and federal law in several ways. First, a duty to warn conflicts with MDC's obligation to comply with the Aircraft contract specifications that mandated MDC to install asbestos-containing GFAE/CFAE components, such as engines, on the Aircraft. MDC was not permitted to modify the design of or warn about those components, and under *Boyle* and *Niemann*, was not required to issue any warning given the Government's prior, superior knowledge about asbestos hazards. The USAF was vested with, and exercised, pervasive control over the nature and content of warnings on military aircraft and in technical manuals. MDC was prohibited from placing warnings on aircraft, and/or in technical manuals unless authorized by the USAF. Even if MDC had known about asbestos and suggested placing asbestos warnings on the Aircraft, the USAF would not have allowed it. Requiring MDC to warn about asbestos – when the USAF knew about it and MDC did not – would run afoul of *Boyle*, which does not require the contractor to warn about risks known to the Government, or risks of which the contractor is unaware.

---

4 The court in *Oxford v. Fosther Wheeler LLC,* cited by Plaintiffs, distinguished *In re Hawaii Federal Asbestos Cases* on the same grounds. 177 Cal. App. 4th 700, 709-710.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

The USAF's decision not to include asbestos warnings for its aircraft is a paradigm example of government discretion controlling an article of military procurement. Under *Boyle*, that decision cannot be second-guessed in this action by Plaintiffs.

Thus, MDC has a colorable federal defense to Plaintiffs' failure to warn claims.[5]

**VI. PLAINTIFFS' PURPORTED DISCLAIMER CANNOT DEFEAT REMOVAL**

Plaintiffs cannot attempt to morph their claims post-removal, after obtaining an adverse ruling, for the purpose of forum shopping and evading proper federal jurisdiction. The validity of a removal is determined from the pleadings at the time of removal. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). This rule should be strictly applied because the federal officer removal statute, unlike regular removal under sections 1441 and 1446, is itself a jurisdictional statute, the language of which is expressly focused on the posture of the suit in state court and against whom the claims are asserted, and not on the nature of the claims. In addition, as noted above, Section 1442 must be interpreted broadly in favor of removal.

As of the date of removal (and currently), Plaintiffs' Complaint asserts numerous causes of action, including negligence and strict liability, for purported design defects based on the inclusion of asbestos in MDC's aircraft and MDC's purported failure to warn. Plaintiffs have not disclaimed anything! They are still pursuing their military claims against MDC. Plaintiffs have not filed any dismissal of any claims against MDC, and under FRCP 41 cannot do so without MDC's consent and the Court's approval. Plaintiffs seek to remand all of their claims, including their military claims. But, if the Court decides that MDC's removal is proper, Plaintiffs seek to "disclaim" whichever claims the Court finds provide proper federal jurisdiction, and then have the Court revisit the jurisdictional issue, reverse that determination, and remand the case. Such tactics are improper. In fact, Plaintiffs' request to remand all of their claims constitutes a waiver of their proffered disclaimer. In *Redman v. A.W. Chesterton Co.*, this Court denied plaintiffs' motion to remand in an asbestos case even though

---

5 Even if the Court finds that MDC has not demonstrated a colorable government contractor defense to Plaintiffs' failure to warn claims, that finding does not warrant remand. MDC's removal was still proper with respect to Plaintiffs' other claims, including their negligence claims, to which the *Boyle* defense applies. *Oxford, supra,* 177 Cal. App. 4th at 711 (holding *Boyle* applies to negligence claims). Plaintiffs are not entitled to remand unless removal was improper as to all of their claims.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

plaintiffs' state court complaint contained an express disclaimer of any claims giving rise to federal officer jurisdiction because, despite that disclaimer, plaintiffs were still pursuing damages arising from the decedent's alleged exposure to asbestos aboard Navy ships. 2008 WL 4447729 at *3 (N.D. Cal. 2008). The circumstances here are even more compelling because Plaintiffs' state court complaint contains no disclaimer, and like the *Redman* plaintiffs, they are still pursuing their military claims.

But even if Plaintiffs could now disclaim their military claims (which they have not and cannot now do), federal officer removal jurisdiction still exists. Section 1442 makes no distinction between a complaint, cross-complaint, counter-claim or third-party complaint. *See* 28 U.S.C. § 1442. All that is required is that the removing defendant "is sued in an official or individual capacity for any act under color of such office." *Id.* Indeed, the U.S. Supreme Court has held that Section 1442(a)(1) covers "all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan,* 395 U.S. 402, 406-07 (1969) (emphasis added). In *Mortgage Electronic Registration Systems, Inc. v. Rothman*, the district court held that "[r]emoval under § 1442 can be based on claims brought against the United States (or an agency or officer) as a third-party defendant." 2005 U.S. Dist. LEXIS 12270 at *16 (N.D. Ill. 2005). Several defendants have filed cross-complaints against MDC for equitable contribution and indemnity for any and all exposure by Mr. Vest to asbestos in any MDC aircraft, which necessarily includes any military planes such as the B-23 and KC-10. (Ex. 45.) MDC is immune from such claims if it prevails on its government contractor defense. Thus, the cross-complaints give rise to federal officer removal jurisdiction.

Plaintiffs cannot effectuate a disclaimer that would eliminate federal officer jurisdiction because their expert John Templin has posited unretractable testimony that all airborne asbestos released from any and all aircraft maintained in Hangar 110 contributed to Mr. Vest's alleged asbestos disease. According to Plaintiffs, this includes asbestos from the B-23 and KC-10. And Plaintiffs have not even proposed to disclaim all liability from this asbestos, but merely certain claims against MDC.

The record therefore requires that fault be allocated amongst all tortfeasors based upon all asbestos exposures suffered by Mr. Vest, regardless of the source. That allocation is required under California tort law and must be determined regardless of whether Plaintiffs are still pursuing their military claims against MDC. This requires the trier of fact to allocate a percentage of fault regarding

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

Mr. Vest's alleged exposure to B-23 and KC-10 aircraft. MDC's co-defendants are not responsible for that allocated fault; in other words, such allocation has the effect of reducing each of the other defendant's proportionate liability. Thus, MDC's government contractor defense will still be at issue even if Plaintiffs disclaimed all of their military claims against MDC.[6]

The cases cited by Plaintiffs do not apply because none of those courts addressed any of the above issues. Accordingly, Plaintiffs' disclaimer cannot defeat federal officer jurisdiction.[7]

## VII. PLAINTIFFS ARE NOT ENTITLED TO FEES AND COSTS

"Absent unusual circumstances, attorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Durham*, 445 F.3d at 1250 (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)). Plaintiffs are not entitled to any award because MDC had an objectively reasonable basis for removal.

## VIII. CONCLUSION

MDC respectfully requests that the Court deny Plaintiffs' Motion for Remand.

Dated: January 23, 2011

Respectfully submitted,
**BRYAN CAVE LLP**

By: /s/ *Robert E. Boone III*
Robert E. Boone III
Attorneys for Defendant
McDONNELL DOUGLAS CORPORATION

---

6 Plaintiffs cannot argue in reply that *Brewster v. A.W. Chesterton Co.*, 2007 U.S. Dist. LEXIS 29420 (N.D. Cal. 2007), cited in their Opposition to MDC's Motion to Stay, applies here. It does not apply. First, the *Brewster* court incorrectly strictly construed the federal officer removal statute against removal, contrary to controlling law that requires the statute to be construed broadly in favor of removal. In other words, the court applied the wrong test and, in doing so, wrongly decided the remand motion. Second, *Brewster* would have been decided differently had the case, like here, involved a cross-complaint or third-party complaint; there plaintiff had "waived expressly long ago any liability claim based on any exposure to a GE marine turbine," and it was "a stretch to say that GE would be asserting a defense to a 'claim'" because it was asserting the federal-officer defense "solely based on an interrogatory response by a co-defendant." *Id.* at *6-*8.

7 If the Court is inclined to remand this case based on Plaintiffs' disclaimer, the Court should first require all parties to stipulate, or make a binding finding of fact, that any and all asbestos components on any of MDC's military aircraft, including but not limited to KC-10 and B-23 aircraft, were not a source of asbestos exposure to Mr. Vest. Such a stipulation and/or finding of fact is the only way to completely eliminate MDC's government contractor defense as an issue in the case. Otherwise federal officer jurisdiction still exists.

Case3:11-cv-00061-JSW Document57 Filed01/23/11 Page28 of 34

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 120 Broadway, Suite 300, Santa Monica, California 90401-2386.

On January 23, 2011, I served the foregoing document, described as **DEFENDANT MCDONNELL DOUGLAS CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**, on each interested party in this action, as follows:

☒ (VIA ELECTRONIC SERVICE): The document was served via The United States District Court – Northern District of California CM/ECF electronic transfer system, which generates a Notice of Electronic Filing (NEF) upon the parties, the assigned judge, and any registered user in the case. Each transmission was reported as complete and without error.

| | |
|---|---|
| *Attorneys for Plaintiffs*<br>*TIMOTHY VEST AND CAROLINE VEST* | James Lyndon Oberman, Esq.<br>Gloria Chun Amell, Esq.<br>Michael Thomas Stewart, Esq.<br>KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY<br>Jack London Market<br>55 Harrison Street, Suite 400<br>Oakland, California 94607<br>Telephone: (510) 302-1000<br>Facsimile: (510) 835-4913<br>Email: joberman@kazanlaw.com<br>gamell@kazanlaw.com<br>mstewart@kazanlaw.com |
| *Attorneys for Defendant*<br>*WORLD AIRWAYS, INC.* | James Goldberg, Esq.<br>Bryan Cave LLP<br>2 Embarcadero Center, Suite 1410<br>San Francisco, California 94111<br>Telephone: (415) 675-3400<br>Facsimile: (415) 675-3434<br>Email: james.goldberg@bryancave.com |
| *Attorneys for Defendants*<br>*HENKEL CORPORATION fka HENKEL LOCTITE CORPORATION, and sii to certain assets of the former DEXTER CORPORATION* | Mark Intrieri, Esq.<br>CHAPMAN & INTRIERI LLP<br>2236 Mariner Square Drive, Suite 300<br>Alameda, CA 94501-1019<br>Telephone: (510)864-3600<br>Facsimile: (510) 864-3601<br>Email: : mintrieri@chapmanandintrieri.com |

☒ (BY MAIL) I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth below. I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Bryan Cave LLP, Santa Monica, California. I am readily familiar with Bryan Cave LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on the following business day in the ordinary course of business:

**SEE ATTACHED SERVICE LIST.**

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January 23, 2011, at Santa Monica, California.

*/s/ Karen Minutelli*
Karen Minutelli

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386