

NAVAER 1009C

FSC 5330

SECTION A-A

ASBESTOS

.0085 TO .0123 THICKNESS
SHEET COPPER

| DASH NO. | D DIA +1/64 -0 | DASH NO. | D DIA +1/64 -0 | DASH NO. | D DIA +1/64 -0 | DASH NO. | D DIA +1/64 -0 | DASH NO. | D DIA +1/64 -0 |
|---|---|---|---|---|---|---|---|---|---|
| 3 | 3/16 | 16 | 1 | 29 | 1-13/16 | 42 | 2-5/8 | 55 | 3-7/16 |
| 4 | 1/4 | 17 | 1-1/16 | 30 | 1-7/8 | 43 | 2-11/16 | 56 | 3-1/2 |
| 5 | 5/16 | 18 | 1-1/8 | 31 | 1-15/16 | 44 | 2-3/4 | 57 | 3-9/16 |
| 6 | 3/8 | 19 | 1-3/16 | 32 | 2 | 45 | 2-13/16 | 58 | 3-5/8 |
| 7 | 7/16 | 20 | 1-1/4 | 33 | 2-1/16 | 46 | 2-7/8 | 59 | 3-11/16 |
| 8 | 1/2 | 21 | 1-5/16 | 34 | 2-1/8 | 47 | 2-15/16 | 60 | 3-3/4 |
| 9 | 9/16 | 22 | 1-3/8 | 35 | 2-3/16 | 48 | 3 | 61 | 3-13/16 |
| 10 | 5/8 | 23 | 1-7/16 | 36 | 2-1/4 | 49 | 3-1/16 | 62 | 3-7/8 |
| 11 | 11/16 | 24 | 1-1/2 | 37 | 2-5/16 | 50 | 3-1/8 | 63 | 3-15/16 |
| 12 | 3/4 | 25 | 1-9/16 | 38 | 2-3/8 | 51 | 3-3/16 | 64 | 4 |
| 13 | 13/16 | 26 | 1-5/8 | 39 | 2-7/16 | 52 | 3-1/4 | | |
| 14 | 7/8 | 27 | 1-11/16 | 40 | 2-1/2 | 53 | 3-5/16 | | |
| 15 | 15/16 | 28 | 1-3/4 | 41 | 2-9/16 | 54 | 3-3/8 | | |

EXAMPLE OF PART NO: AN900-4 = GASKET, 4/16 INSIDE DIAMETER.

DIMENSIONS IN INCHES. UNLESS OTHERWISE SPECIFIED, TOLERANCES: FRACTIONS ±1/64, DECIMALS ±.005.

② **CANCELED** AFTER 12 JANUARY 1967. **USE MS35769.**

REVISED (1) 18 Aug 45 (2) 12 Jan 67

APPROVED 26 Jan 42

| PROCUREMENT SPECIFICATION | AIR FORCE-NAVY AERONAUTICAL STANDARD | AN900 |
|---|---|---|
| NONE | GASKET - COPPER - ASBESTOS ANNULAR | |

*U.S. GOVERNMENT PRINTING OFFICE: 1967-291-514/4801

SECTION A - Cover Sheet

| STANDARD FORM 26 | J | AWARD/CONTRACT | CCN/83 | PAGE 1 |
|---|---|---|---|---|

| 1. CONTRACT (Proc. Inst. Ident.) NO. | 2. EFFECTIVE DATE | 3. CONTRACT/PURCHASE REQUEST/PROJECT NO. | 4. CERTIFIED FOR NATIONAL DEFENSE UNDER BDSA REG. 2 AND/OR DMS REG. 1 RATING DO A- |
|---|---|---|---|
| F33700-78-C-0001 | 03 Jan 78 | See Section K | |

5. ISSUED BY    CODE
AFLC, AF ACQUISITION LOGISTICS DIVISION
WRIGHT-PATTERSON AIR FORCE BASE, OHIO
BUYER: AFALD/YTPP/C N Newill

6. ADMINISTERED BY (If other than No. 5)    CODE N63287
MPRO, McDONNELL DOUGLAS CORPORATION
Douglas Aircraft Company    SCD:A
Long Beach CA 90846

7. CONTRACTOR    CODE 88277
NAME AND ADDRESS
(Street, city, county, state, and ZIP code)
McDONNELL DOUGLAS CORPORATION
Douglas Aircraft Company
3855 Lakewood Blvd
Long Beach CA 90846

8. FACILITY CODE

9. DISCOUNT FOR PROMPT PAYMENT
None

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO ADDRESS SHOWN IN BLOCK 12

11. SHIP TO/MARK FOR    CODE
See Section H Herein

12. PAYMENT WILL BE MADE BY    CODE F59240
HQ AFCMD
Accounting & Finance Division
PO Box 5850
Albuquerque NM 87115

13. THIS PROCUREMENT WAS ☐ ADVERTISED, ☒ NEGOTIATED, PURSUANT TO:
☒ 10 U S C 2304 (a)(14)
☐ 41 U S C 252 (c) ( )

14. ACCOUNTING AND APPROPRIATION DATA
See Section K

Contract for:

The Advanced Tanker/Cargo Aircraft (ATCA) System

RECEIVED
DEC 21 1977
RECEIVED
C1-240

APPROVED: 19 DEC 1977
[signature]
..... General, USAF
..... & Production
Air Force Logistics Command

MAILING DATE 1977 DEC 19

**DUPLICATE ORIGINAL**

| | TOTAL AMOUNT OF CONTRACT | $28,000,000. |
|---|---|---|

CONTRACTING OFFICER WILL COMPLETE BLOCK 22 OR 23 AS APPLICABLE

22. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return _1_ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein.

23. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ........ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

McDonnell Douglas Corporation
[signature]

[signature]

E. Curtis, Vice President
Contracts and Pricing

10 Nov 77

CURTIS N. NEWILL III, Capt, USAF    19 Dec 77

Ex.: 17; p.: 537

SECTION A (Continued)

Page 2

## TABLE OF CONTENTS

| (X) | | | PAGE | | (X) | | | PAGE |
|-----|---|---|------|---|-----|---|---|------|
| (X) | A | Solicitation/Contract Form | 1 | | (X) | I | Inspection and Acceptance | 12 |
| | B | Contract Form and Representations, Certifications, and | | | (X) | J | Special Provisions | 13 |
| | C | Other Statements of Offeror. Instructions, Conditions, and Notice to Offerors. | | | (X) | K | Contract Administration Data. | 74 |
| | D | Evaluation of Offerors. | | | | | PART III - GENERAL PROVISIONS | |
| (X) | E | Contract Clauses. | 3 | | (X) | L | General Provisions | 75 |
| | G | Requirements/Specifications. | | | | | PART IV - LIST OF DOCUMENTS AND ATTACHMENTS | |
| (X) | | Packaging/Marking | 8 | | (X) | M | List of Documents, Exhibits, and Other Attachments | 94 |
| (X) | | Delivery or Performance. | 9 | | | | | |

Ex.: 17; p.: 538

| STANDARD FORM 36, JULY 1966 GENERAL SERVICES ADMINISTRATION FED PROC REG (41 CFR) 1-16.101 | | | REF. NO. OF DOC BEING CONT'D | | PAGE | OF |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR

**DOUGLAS AIRCRAFT COMPANY**

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | BASIC CONTRACT | | | | |
| 0001 | Perform <u>Initial Preproduction Engineering, Planning and Testing (Nonrecurring)</u> effort in accordance with the Statement of Work (Part I/Basic Contract) dated 30 Sep 77, incorporated herein by reference.<br>ACR: AA | 1 | LO | | 28,000,00 |
| 000101 | Perform initial nonrecurring effort necessary for the delivery and support of the Advanced Tanker/Cargo Aircraft (ATCA) as described in DS 5500 ATCA dated 30 Sep 77, incorporated herein by reference. ($27,203,545) | | | | |
| 000102 | Perform initial nonrecurring effort necessary for the delivery of the increased accommoda-tions kit (Group B) as described in DS 5500 ATCA, Appendix A, Alternate 3, incorporated herein by reference. ($219,159) | | | | |
| 000103 | Perform initial nonrecurring effort necessary for the delivery of the ATCA peculiar support equipment set forth in Exhibit "E" attached hereto. ($322,080) | | | | |
| 000104 | Perform initial nonrecurring effort necessary for the delivery of the aerial refueling opera-tor station (AROS) mock-up. ($255,216) | | | | |
| 0002 | Provide <u>Data</u> in accordance with Contract Data Requirements List (DD Form 1423) designated Exhibit "A", incorporated herein by reference. | 1 | LO | | NSP |
| | OPTION NUMBER ONE (FY-79)<br>(Items 0003, 0004, 0005, 0006, 0007, 0008 and 0010 **are** herein referred to as OPTION NUMBER ONE (FY-79). This option shall be exercised pursuant to Contract Provision J.8, "Options".) | | | | |
| 0003 | Perform <u>Final Engineering, Planning, Testing and Support (Nonrecurring)</u> effort in accordance with the Statement of Work (Part II/Option 1) dated 30 Sep 77, incorporated herein by reference.<br>ACR: (To be assigned) | 1 | LO | | 41,077,30 |

3

Ex.: 17; p.: 539

SECTION E - Supplies/Services & Prices

| STANDARD FORM 36, JULY 1966 GENERAL SERVICES ADMINISTRATION FED PROC REG 141 CFR) 1-16.101 | | REF. NO. OF DOC. BEING CONT'D | PAGE | OF |
|---|---|---|---|---|

**NAME OF OFFEROR OR CONTRACTOR**
DOUGLAS AIRCRAFT COMPANY

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 000301 | Perform final nonrecurring effort necessary for the delivery and support of the Advanced Tanker/Cargo Aircraft (ATCA) as described in DS 5500 ATCA dated 30 Sep 77. ($39,659,471) | | | | |
| 000302 | Perform final nonrecurring effort necessary for the delivery of the increased accommodation kit (Group B) as described in DS 5500 ATCA, Appendix A, Alternate 3. ($864,139) | | | | |
| 000303 | Perform final nonrecurring activity necessary for the delivery of the ATCA peculiar support equipment set forth in Exhibit "E" attached hereto. ($553,697) | | | | |
| 0004 | Provide Support for the Air Force Performed Operational Test and Evaluation (OT&E), to include returning the ATCA to the approved production configuration upon the completion of OT&E, in accordance with those tasks identified in the Statement of Work (Part II/ Option 1). ACR: (To be assigned) | 1 | LO | | 650,64 |
| 0005 | Fabricate, Acceptance Test and Deliver an Advanced Tanker/Cargo Aircraft (ATCA) in accordance with the Statement of Work (Part II/Option 1) and the ATCA Detail Specification DS 5500 ATCA, dated 30 Sep 77. ACR: (To be assigned) | 1 | EA | 46,646,134 | 46,646,13 |
| 0006 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "B", dated 30 Sep 77, incorporated herein by reference. | 1 | LO | | NSP |
| 0007 | Fabricate, Acceptance Test and Deliver ATCA Peculiar Support Equipment in the types and quantities set forth in Exhibit "E" attached hereto. ACR: (To be assigned) | 1 | LO | | 337,64 |
| 0008 | Fabricate, Acceptance Test and Deliver an Increased Accommodations Kit (Group B) in accordance with the Statement of Work (Part II/ Option 1) and the ATCA Detail Specification DS 5500 ATCA, Appendix A, Alternate 3, dated 30 Sep 77. ACR: (To be assigned) | 1 | EA | 763,435 | 763,43 |

4

Ex.: 17; p.: 540

STANDARD FORM 26, JULY 1973
GENERAL SERVICES ADMINISTRATION
FED. PROC. REG. (41 CFR) 1-16.901

| | REF. NO. OF DOC. BEING CONT'D | PAGE | OF |

NAME OF OFFEROR OR CONTRACTOR
DOUGLAS AIRCRAFT COMPANY

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0009 | RESERVED | | | | |
| 0010 | Perform final reengineering effort and provide an Aerial Refueling Operator's Station Mock-up in accordance with the Statement of Work (Part II/Option 1).<br>ACR: (To be assigned) | 1 | EA | 31,878 | 31,878 |
| | OPTION NUMBER TWO (FY-79)<br>(Items 0011 and 0012 are herein referred to as OPTION NUMBER 2 (FY-79). This option shall be exercised pursuant to Contract Provision J.8, "Options".) | | | | |
| 0011 | Fabricate, Test and Deliver Advanced Tanker/Cargo Aircraft (ATCA) and provide all related support in accordance with the Statement of Work (Part III/Options 2-6) dated 30 Sep 77, incorporated herein by reference, and the ATCA Detail Specification, DS 5500 ATCA, dated 30 Sep 77.<br>ACR: (To be assigned) | 3 | EA | 38,706,320 | 116,118,9 |
| 0012 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "C", dated 30 Sep 77, incorporated herein by reference. | 1 | LO | | NSP |
| | OPTION NUMBER THREE (FY-80)<br>(Items C013 and 0014 are herein referred to as OPTION NUMBER 3 (FY-80). This option shall be exercised pursuant to Contract Provision J.8, "Options".) | | | | |
| 0013 | Fabricate, Test and Deliver Advanced Tanker/Cargo Aircraft (ATCA) and provide all related support in accordance with the Statement of Work (Part III/Options 2-6) dated 30 Sep 77, and the ATCA Detail Specification, DS 5500 ATCA, dated 30 Sep 77.<br>ACR: (To be assigned) | 4 | EA | IAW J.8 | IAW J.8 |
| 0014 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "C". | 1 | LO | | NSP |

5

Ex.: 17; p.: 541

SECTION B - Supplies/Services & Prices

STANDARD FORM 36, JULY 1966
GENERAL SERVICES ADMINISTRATION
FED. PROC. REG. (41 CFR) 1-16.12

| REF. NO. OF DOC. BEING CONT'D | | PAGE | OF |

NAME OF OFFEROR OR CONTRACTOR
DOUGLAS AIRCRAFT COMPANY

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | OPTION NUMBER FOUR (FY-81) | | | | |
| | (Items 0015 and 0016 are herein referred to as OPTION NUMBER 4 (FY-81).) This option shall be exercised pursuant to Contract Provision J.8, "Options".) | | | | |
| 0015 | Fabricate, Test and Deliver Advanced Tanker/ Cargo Aircraft (ATCA) and provide all related support in accordance with the Statement of Work (Part III/Options 2-6) dated 30 Sep 77, and the ATCA Detail Specification, DS 5500 ATCA, dated 30 Sep 77. ACR: (To be assigned) | 6 | EA | IAW J.8 | IAW J.8 |
| 0016 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "C". | 1 | LO | | NSP |
| | OPTION NUMBER FIVE (FY-82) | | | | |
| | (Items 0017 and 0018 are herein referred to as OPTION NUMBER 5 (FY-82). This option shall be exercised pursuant to Contract Provision J.8, "Options".) | | | | |
| 0017 | Fabricate, Test and Deliver Advanced Tanker Cargo Aircraft (ATCA) and provide all related support in accordance with the Statement of Work (Part III/Options 2-6) dated 30 Sep 77, and the ATCA Detail Specification, DS 5500 ATCA, dated 30 Sep 77. ACR: (To be assigned) | 6 | EA | IAW J.8 | IAW J.8 |
| 0018 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "C". | 1. | LO | | NSP |
| | OPTION NUMBER SIX (FY-83) | | | | |
| | (Items 0019 and 0020 are herein referred to as OPTION NUMBER 6 (FY-83). This option shall be exercised pursuant to Contract Provision J.8, "Options".) | | | | |
| 0019 | Fabricate, Test and Deliver Advanced Tanker/ Cargo Aircraft (ATCA) and provide all related support in accordance with the Statement of Work (Part III/Options 2-6) dated 30 Sep 77, and the ATCA Detail Specification DS 5500 ATCA, dated 30 Sep 77. ACR: (To be assigned) | | EA | IAW J.8 | IAW J.8 |

6

| STANDARD FORM 36  JULY 1966<br>GENERAL SERVICES ADMINISTRATION<br>FED PROC REG (41 CFR) 1-16.101 | | | REF NO. OF DOC BEING CONT'D | | PAGE | OF |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
DOUGLAS AIRCRAFT COMPANY

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0020 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "C". | 1 | LO | | NSP |
| | RECURRING OPTIONS | | | | |
| 0021 | Fabricate, Test and Deliver Increased Accommodation Kits (Group B) in accordance with Detail Specification DS 5500 ATCA, Appendix A, Alternate 3, dated 30 Sep 77, incorporated herein by reference. (This option shall be exercised pursuant to Contract Provision J.11, "Configuration Alternates Option".)<br>ACR: (To be assigned) | IAW J.11 | EA | IAW J.11 | IAW J.11 |
| 0022 | Fabricate, Test and Deliver ATCA Peculiar Support Equipment in the types and quantities ordered. (This option shall be exercised pursuant to Contract Provision J.9, "ATCA Peculiar Support Equipment" Option.)<br>ACR: (To be assigned) | IAW J.9 | EA | IAW J.9 | IAW J.9 |
| 0023 | Provide Deferred Data, representative examples of which are identified in the Statement of Work, paragraph 1074, and Contract Data Requirements List (DD Form 1423) designated Exhibit "D", incorporated herein by reference. (This option shall be exercised pursuant to Contract Provision J.6, "Special Data Provisions", and General Provision No. 99, "Deferred Ordering of Technical Data and Computer Software".)<br>ACR: (To be assigned) | IAW J.6 | LO | IAW J.6 | IAW J.6 |
| 0024 | Provide Simulator Data. (This option shall be exercised pursuant to Contract Provision J.10, "Simulator Data Option".)<br>ACR: (To be assigned) | IAW J.10 | LO | | 263,88 |
| 0025 | Provide Maintenance and Engineering Services. (This option shall be exercised pursuant to Contract Provision J.22, "Work Requests".)<br>ACR: (To be assigned) | IAW J.22 | LO | IAW J.22 | IAW J.22 |

7

SECTION G — PRESERVATION, PACKAGING, PACKING AND MARKING

1.  Preservation, packaging, packing and marking of the supplies called
for hereunder, the price of which is included in the price of said sup-
plies, shall be in accordance with Contractor's Standard Commercial
Practice.

8

Ex.: 17; p.: 544

## SECTION H - DELIVERIES OR PERFORMANCE

1. Delivery Schedule. The Douglas Aircraft Company shall deliver
to the Government the supplies called for hereunder in accordance
with the following:

| Item | Basic Contract |
|------|---------------|
| 0001 | Complete 30 November 1978 |
| 0002 | In accordance with Exhibit A, CDRL |

### Option Number One (FY-79)

| Item | |
|------|---|
| 0003 | Complete not later than 31 October 1980 |
| 0004 | Complete not later than 30 June 1981 |
| 0005 | Complete not later than 31 October 1980 |
| 0006 | In accordance with Exhibit B, CDRL |
| 0007 | Complete not later than 31 October 1980 |
| 0008 | Complete not later than 31 October 1980 |
| 0009 | RESERVED |
| 0010 | Complete not later than 31 October 1980 |

### Option Number Two (FY-79)

0011    Airplane No. 1 December 1980
        Airplane No. 2 January 1981   Airplane No. 3 February 1981
0012    In accordance with Exhibit C, CDRL

### Option Number Three (FY-80)

0013    Airplane No. 1 July 1981
        Airplane No. 2 August 1981
        Airplane No. 3 September 1981
        Airplane No. 4 October 1981
0014    In accordance with Exhibit C, CDRL

### Option Number Four (FY-81)

0015    Airplane No. 1 May 1982     Airplane No. 5 September 1982
        Airplane No. 2 June 1982    Airplane No. 6 October 1982
        Airplane No. 3 July 1982
        Airplane No. 4 August 1982
0016    In accordance with Exhibit C, CDRL

9

SECTION II – CONTINUED

Item       , Option Number Five (FY-82)

0017       Airplane No. 1 April 1983      Airplane No. 5 August 1983
           Airplane No. 2 May 1983        Airplane No. 6 September 1983
           Airplane No. 3 June 1983
           Airplane No. 4 July 1983
0018       In accordance with Exhibit C, CDRL

                Option Number Six (FY-83)

0019       See paragraph 2 below
0020       See paragraph 2 below

Specific delivery dates for aircraft ordered pursuant to Options two
(2) through five (5) above shall be established prior to option exercise
but shall not exceed the dates established above.

       Item            Recurring Options

0021       In accordance with Special Provision J.11 herein.  Kits
                complete nine (9) months after option exercise.
0022       In accordance with Special Provision J.9 herein.
0023       In accordance with Special Provision J.6 herein.
0024       In accordance with Special Provision J.10 herein.
0025       In accordance with Special Provision J.22 herein.

2.  Douglas Aircraft Company shall deliver to the Government, aircraft
and data ordered pursuant to alternate options under the Unit Price
Matrix (Provision J.8, "Options") in accordance with the following:

0011       First aircraft complete twenty-five (25) months after
                option exercise.  Subsequent aircraft at a rate of
                one per month.
0012       In accordance with Exhibit C, CDRL.
0013       First aircraft complete twenty (20) months after
                option exercise.  If alternate Option 2 is not
                exercised, the delivery of Option 3 aircraft shall
                commence twenty-three (23) months after option
                exercise.  Subsequent aircraft at a rate of one per
                month.
0014       In accordance with Exhibit C, CDRL.
0015       First aircraft complete eighteen (18) months after option
                exercise. Subsequent aircraft at a rate of one per month.

10

F33700-78-C-0001

Case MDL No. 875 - Document 6666-1 Filed 01/28/11 Page 12 of 203
Case 3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 12 of 203

SECTION II - CONTINUED

Item

| | |
|---|---|
| 0016 | In accordance with Exhibit C, CDRL |
| 0017 | First aircraft complete sixteen (16) months after the month of option exercise. Subsequent aircraft at a rate of one per month. |
| 0018 | In accordance with Exhibit C, CDRL |
| 0019 | First aircraft complete sixteen (16) months after the month of option exercise. Subsequent aircraft at a rate of one per month. |
| 0020 | In accordance with Exhibit C, CDRL |

With respect to Line Items 0011, 0013, 0015, 0017 and 0019 above, the contractor shall have the right to reschedule the delivery of any air-craft up to ninety (90) days with the firm schedule to be established at the time of option exercise. A delivery date for Economic Price Adjustment (EPA) purposes shall also be established. In no event, however, shall the EPA delivery date exceed the delivery dates of the schedule set forth above for Items 0011, 0013, 0015, 0017 and 0019.

3. Request for consignment instructions for supplies, other than data, shall be made to: AFALD/YTPP, Wright-Patterson AFB Ohio 45433.

11

Ex.: 17; p.: 547

SECTION H - CONTINUED

Item

0016    In accordance with Exhibit C, CDRL
0017    First aircraft complete sixteen (16) months after the month
        of option exercise. Subsequent aircraft at a rate of one
        per month.
0018    In accordance with Exhibit C, CDRL
0019    First aircraft complete sixteen (16) months after the month
        of option exercise. Subsequent aircraft at a rate of one
        per month.
0020    In accordance with Exhibit C, CDRL

With respect to Line Items 0011, 0013, 0015, 0017 and 0019 above, the
contractor shall have the right to reschedule the delivery of any air-
craft up to ninety (90) days with the firm schedule to be established
at the time of option exercise. A delivery date for Economic Price
Adjustment (EPA) purposes shall also be established. In no event, however,
shall the EPA delivery date exceed the delivery dates of the schedule set
forth above for Items 0011, 0013, 0015, 0017 and 0019.

3. Request for consignment instructions for supplies, other than data,
shall be made to: AFALD/YTPP, Wright-Patterson AFB Ohio 45433.

Ex.: 17; p.: 548

## SECTION I – INSPECTION AND ACCEPTANCE

1. The contractor's Long Beach facility is hereby designated as the point for final inspection and acceptance of the supplies to be furnished hereunder. The aircraft shall be delivered completely set up, serviced, tested and ready for flight. All services shall be finally inspected and accepted at the places where such services are performed.

2. Data shall be inspected and accepted as set forth on the Contract Data Requirements Lists (Exhibits A, B, C, and D referenced).

3. INSPECTION NOTIFICATION: The Government Quality Assurance Representative, in conjunction with the cognizant FAA representative, shall perform inspection of the aircraft, data items, supplies and services called for under this contract.

12

SPECIAL PROVISIONS

PAGE NOS.

| | | |
|---|---|---|
| 1. | DEFINITIONS | 14 |
| 2. | DIRECTION/REDIRECTION OF EFFORT | 15 |
| 3. | AGREEMENT CONCERNING ANY EVENTS OR CIRCUMSTANCES THAT COULD HAVE AN IMPACT ON PRICE, DELIVERY, SCHEDULE, AND/OR OTHER TERMS AND CONDITIONS OF THIS CONTRACT | 15 |
| 4. | DEMONSTRATION MILESTONES | 16 |
| 5. | FEDERAL AVIATION ADMINISTRATION REQUIREMENTS | 18 |
| 6. | SPECIAL DATA PROVISIONS | 19 |
| 7. | AERIAL REFUELING BOOM (ARB) MILESTONE | 21 |
| 8. | OPTIONS | 24 |
| 9. | ATCA PECULIAR SUPPORT EQUIPMENT OPTION | 30 |
| 10. | SIMULATOR DATA OPTION | 31 |
| 11. | CONFIGURATION ALTERNATES OPTION | 34 |
| 12. | SPECIFICATIONS AND STANDARDS | 36 |
| 13. | CONFIGURATION MANAGEMENT | 36 |
| 14. | SPECIAL PROGRESS PAYMENTS | 38 |
| 15. | ECONOMIC PRICE ADJUSTMENT | 41 |
| 16. | ASSOCIATE CONTRACTOR RELATIONSHIP WITH ATCA PROGRAM CONTRACTORS AND PROPOSERS | 49 |
| 17. | MOST FAVORED CUSTOMER WARRANTY | 50 |
| 18. | FOLLOW-ON PRICE WARRANTY | 51 |
| 19. | ORDER OF PRECEDENCE | 51 |
| 20. | NOTIFICATION OF CHANGES | 51 |
| 21. | SPECIAL PROVISION RELATING TO GROUND AND FLIGHT RISK | 54 |
| 22. | WORK REQUESTS | 54 |
| 23. | SERIAL NUMBERS | 55 |
| 24. | FUEL, OIL, LUBRICANTS, AND OXYGEN | 56 |
| 25. | CONTROL OVER EMPLOYEES | 56 |
| 26. | INCORPORATION OF REFERENCED DOCUMENTS | 56 |
| 27. | FREQUENCY ALLOCATION AND AUTHORIZATION | 56 |
| 28. | DELIVERY OF SUPPLIES WITH DEVIATIONS OR SHORTAGES | 57 |
| 29. | RELEASE OF INFORMATION | 57 |
| 30. | PREPRODUCTION START-UP AND NONRECURRING COSTS | 57 |
| 31. | ABSTRACTS OF NEW TECHNOLOGY | 58 |
| 32. | GOVERNMENT FACILITIES | 58 |
| 33. | INDUSTRIAL PREPAREDNESS PLANNING (IPP) | 58 |
| 34. | SPECIAL PROVISION RELATING TO SUBCONTRACTING | 59 |
| 35. | MAINTENANCE/MODIFICATION AND/OR FLIGHT OPERATION REQUIREMENTS | 59 |
| 36. | SPARES ACQUISITION INTEGRATED WITH PRODUCTION | 60 |
| 37. | SUPPLIES TO BE ACCORDED DUTY FREE ENTRY | 60 |
| 38. | WARRANTY AND SERVICE LIFE POLICY | 61 |
| 39. | SCHEDULE IMPLEMENTATION TO THE BASE SUPPORT PROVISION | 73 |
| 40. | LOS ANGELES CITY LICENSE TAXES | 73 |

13

SECTION J – SPECIAL PROVISIONS

1. DEFINITIONS

   The following definitions are in addition to those set forth in Clause 1 of the General Provisions of this contract:

   Basic Aircraft – That aircraft described in the DC-10-30F Detail Specification DS-5500-30H, dated 30 Sep 77, as amended, to include standard commercial changes.

   Aircraft ATCA Peculiar – Synonymous with Air Force and/or ATCA modifications. Those changes required to convert the basic aircraft into an ATCA.

   ATCA Aircraft – That aircraft described in Detail Specification DS-5500 ATCA, dated 30 Sep 77, as amended.

   Basic Aircraft Support Equipment (SE) – All SE required to support the basic aircraft.

   ATCA Peculiar SE – All SE, other than Basic Aircraft SE, required to support the ATCA aircraft. Includes SE to the organizational and intermediate level for equipment/systems already in existence and to the organizational, intermediate, depot level for all newly designed/developed ATCA equipments and/or systems.

   Air Force Common – Those subsystems, support equipments, etc., that are installed on the ATCA, or used in its support, and are in the Air Force inventory for use on other systems.

   Commercial Specifications, Technical Orders (T.O.s) and Manuals – The specifications, T.O.s and manuals that are normally available to commercial customers.

   Logistics Support Contractor – That contractor who will provide logistics and maintenance support to the DC-10 ATCA force after delivery of the first ATCA.

   Contractor Format – That format used in the daily business transactions with commercial customers.

   Commercial Changes – Changes to the basic aircraft offered to commercial customers.

14

SECTION J - CONTINUED

    <u>Data Item Modification</u> - A data item description is defined as modified if some of the requirements have been deleted, if significant formatting requirements have been waived to utilize contractor's format, or if the data item description has been rewritten and is attached.

    <u>Pre-Delivery Test</u> - That testing conducted by a contractor/Air Force test team prior to delivery of the first ATCA to the Air Force.

    <u>Pre-Delivery Support</u> - That support provided by the ATCA contractor prior to Air Force acceptance and execution of a DD Form 250 for the first ATCA. This shall include all maintenance, transportation and supply support for the first ATCA, its systems, and support equipment.

    <u>Air Force Operational Test and Evaluation</u> - That testing to be accomplished within six (6) months after the delivery of the first ATCA to the Air Force.

    <u>Contract Award</u> - Synonymous with contract effective date. That date reflected in Block 2 of the contract cover page.

2.  DIRECTION/REDIRECTION OF EFFORT

    Notwithstanding any of the provisions of this contract, the Procuring Contracting Officer shall be the only individual with authority to act on behalf of the Government to direct/redirect the effort, make determinations relative to approvals and/or successful completion of events required by this contract, or in any way amend any of the terms of the contract.

3.  AGREEMENT CONCERNING ANY EVENTS OR CIRCUMSTANCES THAT COULD HAVE AN IMPACT ON PRICE, DELIVERY SCHEDULE, AND/OR OTHER TERMS AND CONDITIONS OF THIS CONTRACT

    The contractor agrees to furnish, commencing on 1 April 1978 and thereafter at quarterly intervals, a written statement to the Procuring Contracting Officer stating that no circumstances have occurred which would be a basis for claiming a price, delivery schedule or any other adjustment in the terms and conditions of the contract, or stating what circumstances have occurred (regardless of their nature or who was responsible for them) which will cause claims for adjustment in any of the terms and conditions of the contract. This statement shall be executed by the Executive Vice President for ATCA or the Vice President - Contracts and Pricing. This requirement is in addition to any other requirements of the contract.

15

SECTION J – CONTINUED

4.   DEMONSTRATION MILESTONES

a.   In order that the Government can determine whether the contractor is demonstrating satisfactory technical accomplishment of the total Advanced Tanker/Cargo Aircraft System, certain milestone events during the performance of this contract are established.  These events are hereinafter referred to as Demonstration Milestones.  The Demonstration Milestones, the dates by which they shall be accomplished, and the criteria therefore are set forth below:

| Milestone | Success Criteria | Achievement Date |
|---|---|---|
| (1) Preliminary Design Review (PDR) | USAF approval that design concept and preliminary design of the modifications, support equipment and configuration alternate kits, as ordered, and their interface with the basic aircraft, are consistent with specifications and FAA requirements. | 30 September 1978 |
| (2) Critical Design Review (CDR) | USAF approval that detail design of each modification, support equipment, and configuration alternate kits, as ordered, and their interface with the basic aircraft, are consistent with the applicable specifications and FAA requirements. | 1 March 1979 |
| (3) Predelivery Milestone Review (PMR) | USAF approval that the contractually required configuration audits have been successfully completed to verify that the deliverable articles comply with specification and contract requirements and to establish the product baseline to be used for production acceptance purposes. | 15 October 1980 |

16

Ex.: 17; p.: 553

SECTION J – CONTINUED

b.   Prior to the exercise of any option, the Contracting Officer shall determine whether the contractor has satisfactorily accomplished the required Demonstration Milestones.  If the Contracting Officer determines that the contractor has not satisfactorily accomplished the required Demonstration Milestones, the contractor shall be notified of such determination, and the Government may either;

(1) delay the exercise of options until such time as the Contracting Officer determines that such Demonstration Milestones have been satisfactorily accomplished;

(2) exercise the option, in whole or in part, if the interests of the Government so require; or

(3) terminate the contract in accordance with the provisions of the clauses entitled "Default" or "Termination for Convenience of the Government", as appropriate under the circumstances.

c.   If, pursuant to b(1) or b(2), the exercise of any option is delayed but later is accomplished, the contractor, within ten (10) days of such option exercise, may request a revision of the delivery schedule for the affected items and/or the performance date for subsequent affected Demonstration Milestones.  The parties will thereupon negotiate a new Demonstration Milestone performance schedule and a change in the delivery schedules for the option items; provided, however, that no such performance or delivery schedule change shall exceed the number of calendar days between the last scheduled date for exercise of the option and the date of actual exercise of the option.  These changes, to include any price adjustments, shall be accomplished by a modification to the contract, but there shall be no adjustment in the contract price or the option prices except to the extent that the delay in accomplishing a milestone is excusable and an equitable adjustment is otherwise provided for by any other provision of this contract.  For all production aircraft, the aircraft month of delivery for EPA price determination shall continue to be that month each aircraft would have been delivered had no delay been encountered except to the extent that the delay is excusable. No equitable adjustment resulting from such excusable delay shall be made under this paragraph for any delay or interruption to the extent that performance would have been delayed by any other cause including the fault or negligence of the contractor.

17

Ex.: 17; p.: 554

F33700-78-C-0001

## SECTION J - CONTINUED

d.  The Government's action in exercising any of its options under this contract, in whole or in part, shall not be deemed an acceptance of the work performed by the contractor prior to such option exercise. The provisions of this paragraph shall in no way be deemed to limit the rights of the parties under the clauses entitled "Default" or "Termination for Convenience of the Government".

## 5.  FEDERAL AVIATION ADMINISTRATION REQUIREMENTS

a.  The contractor shall provide a quality control system covering all material, fabrication methods and finished parts and assemblies. This system shall comply with Part 21 of the Federal Aviation Regulations, "Certification Procedures for Products and Parts", and Part 37 of the Federal Aviation Regulations, "Technical Standard Order Authorizations".

b.  The contractor shall obtain a Type Certificate, amended Type Certificate or amended Type Certificate Data Sheet, as appropriate, from the FAA for the Model DC-10 ATCA.  The ATCA, during the contact phase as either a tanker or receiver, need not have FAA certification nor FAA operational approval; however, a failure condition of the aerial refueling system during that portion of normal coupled flight shall not preclude the ATCA from continuing a safe flight and landing.  The contact phase for boom refueling is when the receiver aircraft is within the aerial refueling boom mechanical control envelope as defined in Figure 28-52 of the Detail Specification DS 5500 ATCA.  For hose/drogue operations, the contact phase is when the receiver aircraft is in contact with the reception coupling or is anywhere within the drogue envelope, out to the maximum trail position as per paragraph 28-53.11.00 of the Detail Specification DS 5500 ATCA.

c.  The contractor shall obtain a Federal Aviation Administration Conformity Certificate, Form FAA 8130-2, which shall be furnished to the Administrative Contracting Officer (ACO) prior to delivery and acceptance by the Air Force of the aircraft called for herein.  In addition thereto, one (1) copy of the Form FAA 8130-2 and one (1) copy of the DD Form 250 or comparable form will be forwarded to Commander, Air Force Acquisition Logistics Division, Wright-Patterson Air Force Base, Ohio, Attn: AFALD/VIP.  Said Conformity Certificate shall recite that the aircraft has been manufactured in conformity with the Type Design covered by the appropriate Type Certificate.  The first ATCA, however, may be delivered to the Air Force on a Conformity Certificate (FAA Form 8130-2) which may include exceptions from the Type Design which have been verified by the contractor but not yet approved by the FAA at the

18

Ex.: 17; p.: 555

SECTION J – CONTINUED

date of delivery. Following completion of Air Force Operational Test &
Evaluation (OT&E) and necessary aircraft refurbishment by the contractor,
a final Conformity Certificate (FAA Form 8130-2) shall be provided for
this aircraft. All deviations or exceptions listed on any Conformity
Certificate shall be subject to the prior approval of the Procuring
Contracting Officer (PCO).

d. The contractor shall, prior to or at the time of tendering
delivery of an aircraft called for hereunder to the Government for
acceptance, furnish evidence to the ACO that the FAA has issued a
current Production Certificate that includes the Model DC-10 ATCA on
the production limitation record.

e. In the event the use of the above FAA documents is discontinued
during the performance of this contract, any other equivalent documents
subsequently issued by the Federal Aviation Administration or its
successor shall apply. In the event there should not be any such other
documents issued, the contractor shall comply with the performance require-
ments set forth in the Detail Specification.

f. The contractor hereby agrees to make available for review all
data submitted to the FAA for aircraft certification purposes.

6. SPECIAL DATA PROVISIONS

a. Data Rights Agreement. All technical data which is developed
under this contract shall be furnished with unlimited rights. All other
technical data described herein shall be furnished with special rights
as defined in subparagraph b(1) of this clause, except for that data to
which the Government otherwise possesses unlimited rights. No data
shall be provided with limited rights.

b. Rights in Data. The rights obtained by the Government in
technical data are set forth in the Rights in Technical Data and Computer
Software Clause incorporated in the contract, and nothing elsewhere in
this contract or in any document incorporated by reference in this con-
tract shall be construed as in any way altering such rights except as
restricted by the express terms, if any, of this contract as to data
called for and furnished for provisioning purposes.

19

Case 3:11-cv-00075-JSW Document 6666-1 Filed 01/28/11 Page 22 of 203
Case 3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 24 of 203
F33700-78-C-0001

SECTION J - CONTINUED

(1) "Special Rights" means rights to use or duplicate technical data, in whole or in part, within the Government, and rights to disclose or release such technical data to any potential contractors for their use (including rights to duplicate) in meeting all U.S. Government requirements except for the manufacture of spare parts. Use and duplication by the U.S. Government and such contractors shall be limited exclusively to performance of all effort involving DC-10 type aircraft owned by the U.S. Government. Special rights also includes rights for logistics support contractor(s) to, in turn, release and disclose technical data to subcontractors performing effort relating to DC-10 type aircraft.

(2) Data to be furnished with Special Rights shall include the following legend therein:

"This data, furnished under Government Contract No. F33700-78-C-0001 shall be used only for satisfying U.S. Government requirements on U.S. Government owned DC-10 type aircraft, and shall not be used, released or disclosed, in whole or in part, for any other purpose without the express written permission of the aircraft manufacturer. Such data shall not be used for the manufacture of parts. This legend shall have precedence over all other Douglas Aircraft Company data rights legends contained hereon."

c. Deferred Ordering of Technical Data and Computer Software. The data contemplated by the "Deferred Ordering of Technical Data" clause of the General Provisions hereof and the data identified in Exhibit "D" (Contract Data Requirements List) and the Statement of Work, paragraph 1074 (Deferred Data) shall not be delivered in accordance with the requirements set forth until specifically ordered in writing by the Procuring Contracting Officer. The data identified in Exhibit "D" and the Statement of Work is representative of data which may be required by the Air Force. When data or software items are ordered, prices and delivery dates shall be negotiated. Compensation to the contractor shall be based on the data definition outlined in Statement of Work paragraphs 1074BA, 1074BB and 1074BC for those data items listed. It is agreed that any data ordered in accordance with the "Deferred Ordering of Technical Data and Computer Software" Clause of the General Provisions hereof shall be submitted to the Government with either "unlimited" or "special" rights. If the data is to be submitted with "special" rights, the Procuring Contracting Officer shall be notified 30 days prior to submission.

20

Ex.: 17; p.: 557

SECTION J – CONTINUED

(2) Detail Specification Appendix A, Alternate Four, shall be incorporated into the Detail Specification DS-5500 ATCA.

(3) Contract Line Item prices shall be reduced as follows:

| Line Item | Amount ($) |
|-----------|-----------|
| 0001/000101 | 2,898,959 |
| 0003/000201 | 8,129,436 |
| 0005 | 1,547,300 |
| 0011 | 2,121,897 |

(4) ATCA peculiar base prices, net airframe base prices, and total net base prices for aircraft set forth in Tables II and IV of Provision J.8 "Options," shall be reduced as follows:

### ATCA FUSELAGE NUMBER

| Table II | | Table IV | Amount ($) |
|----------|--|----------|-----------|
| | | 2 | 618,875 |
| | | 3 | 508,349 |
| | | 4 | 441,477 |
| 5 | | 5 | 416,066 |
| 6 | Option 3 | 6 | 396,394 |
| 7 | | 7 | 381,406 |
| 8 | | 8 | 368,113 |
| 9 | | 9 | 361,218 |
| 10 | | 10 | 355,160 |
| 11 | | 11 | 350,384 |
| 12 | Option 4 | 12 | 345,483 |
| 13 | | 13 | 340,767 |
| 14 | | 14 | 336,891 |
| 15 | | 15 | 327,020 |
| 16 | | 16 | 318,048 |
| 17 | | 17 | 309,845 |
| 18 | Option 5 | 18 | 302,305 |
| 19 | | 19 | 295,341 |
| 20 | | 20 | 288,883 |

22

Ex.: 17; p.: 558

SECTION J – CONTINUED

d. Modification of Data Requirements

(1) From time to time during the performance of this contract, the Procuring Contracting Officer unilaterally may change the place of delivery and the technical office for any line item of the DD Forms 1423, designated as Exhibits and attachments hereto, at no change in contract price, notwithstanding the provisions of the clause hereof entitled "Changes".

(2) From time to time during the performance of this contract, the Procuring Contracting Officer unilaterally may increase or decrease the number of addresses and/or increase or decrease the number of copies, (regular or reproducible) specified for any addressee of any data item of said Exhibits and attachments hereto, at no change in contract price provided that the increase in the total number of copies (regular and reproducible) for an individual line item of data shall not be greater than one hundred percent (100%) of the total number of copies (regular and reprodicible) initially specified in said Exhibits and attachments nor shall the decrease in the total number of copies (regular and reproducible) for an individual line item of data be greater than fifty percent (50%) of the total number of copies (regular and reproducible) initially specified in said Exhibits and attachments. In the event of an increase greater than such 100% or of a decrease greater than such 50%, the parties will negotiate any equitable adjustments in accordance with the procedures of the "Changes" clause.

(3) Unilateral action pursuant to (1) and (2) above shall be by the issuance of a Change Order to this contract which will reference this Part as its authority. Any action directed by this Part shall be effected by the contractor beginning with the first submission of the particular data item or items after receipt by the contractor of the Change Order directing such action.

7. AERIAL REFUELING BOOM (ARB) MILESTONE

If within six (6) weeks after contract award, the Contractor requests Air Force approval to incorporate a KC-135 boom into the ATCA in lieu of the ARB required by Detail Specification DS-5500 ATCA, and if within 30 days of such request Air Force approval is received by the Contractor, it shall be accomplished in accordance with the following:

(1) Part IV of the Statement of Work shall be incorporated into the Statement of Work.

21

Ex.: 17; p.: 559

SECTION J - CONTINUED

ATCA FUSELAGE NUMBER

| Table II | Table IV | Amount ($) |
|----------|----------|------------|
| | 21 – 25 | 276,732 |
| | 26 – 30 | 262,162 |
| | 31 – 35 | 251,249 |
| | 36 – 40 | 244,972 |
| | 41 – 45 | 237,269 |
| | 46 – 50 | 230,620 |
| | 51 – 60 | 221,722 |

(5)  Provision J.5, "Federal Aviation Administration Requirements,"
Paragraph b, shall be replaced with the following:

"b.  The contractor shall obtain a Type Certificate, amended
Type Certificate or amended Type Certificate Data Sheet, as appropriate,
from the FAA for the Model DC-10 ATCA.  The ATCA, during the contact phase
as either a receiver or a hose/drogue tanker, or as a tanker with the
aerial refueling boom deployed, need not have FAA certification nor FAA
operational approval; however, a failure condition of the aerial refueling
system during that portion of normal coupled flight shall not preclude the
ATCA from continuing a safe flight and landing.  For hose/drogue operations,
the contact phase is when the receiver aircraft is in contact with the
reception coupling or is anywhere within the drogue envelope, out to the
maximum trail position as per paragraph 28-53.11.00 of the Detail Specifi-
cation DS-5500 ATCA.  The contact phase for the receiver mode during
boom refueling is when the receiver aircraft is within the aerial refueling
boom mechanical envelope as defined in Figure 28-52 of Detail Specification
DS-5500 ATCA.

(6)  There shall be no adjustment in contract delivery schedules.

23

Ex.: 17; p.: 560

SECTION J – CONTINUED

8.   OPTIONS

   a.   Basic (Green Line) Options

      (1)   FY 1979 Option – Number 1

            The contractor hereby grants to the Government an option
to procure the items described in Section E, as Contract Items 0003,
0004, 0005, 0006, 0007, 0008 and 0010 for the firm fixed price of
$89,507,040.  The Government may exercise this option in whole only
by giving the contractor written notice at any time on or before
1 December 1978, subject to Provision J.4, "Demonstration Milestones".


      (2)   Option Number 2

            If Option Number 1 is exercised and not terminated, the
contractor hereby grants to the Government an option to procure
ATCA aircraft, and related data (Exhibit C), for the firm fixed price
of $116,113,960.  The Government may exercise this option in whole only
by giving the contractor written notice at any time on or before
1 December 1978, subject to Provision J.4, "Demonstration Milestones".


      (3)   Options Number 3, 4 and 5

            If Options Number 1 and 2 have been exercised and have not
been terminated, the contractor hereby grants to the Government three
(3) additional options to procure aircraft, and related data (Exhibit
C), in the quantities and at the prices stated in Table I below.  The
options must be exercised on a consecutive basis and no option may be
exercised unless the option for the preceding year has been exercised.
Options shall be exercised on or before the date indicated below for
each option, subject to Provision J.4, "Demonstration Milestones".



SECTION J - CONTINUED

## TABLE I

| Option No. | Quantity of Aircraft | Dates for Exercise of Option | Total Option Price in GFY '76 Dollars |
|---|---|---|---|
| 3 (GFY '80) | 4 | 1 December 1979 | 106,226,954 |
| 4 (GFY '81) | 5 | 1 December 1980 | 153,742,848 |
| 5 (GFY '82) | 6 | 1 December 1981 | 151,265,322 |

Table I, above, is a summary of the individual aircraft information contained in Table II. For Options 3, 4 and 5, each aircraft's net airframe base price and engine base price shall be subject to adjustment in accordance with Clause J.15, Economic Price Adjustment.

(4) Option Number 6 (FY 83)

If Option 5 is exercised pursuant to paragraph a(3) above, the contractor grants to the Government the option to procure aircraft in GFY 83 pursuant to paragraph J.8b below, "Alternate Options - Unit Price Matrix (UPM)".

b. Alternate Options - Unit Price Matrix (UPM)

(1) Assuming Option 1 is exercised in accordance with paragraph a(1) above, if any subsequent option is not exercised in accordance with a(2) and (3) above, that basic (green line) option and all subsequent basic (green line) options are no longer effective. In lieu thereof, the contractor grants to the Government up to five (5) alternate UPM options. Each UPM option shall be exercised once to include all aircraft to be procured for that fiscal year. Further, once the initial option has been exercised under this paragraph b, the remaining alternate options must be exercised consecutively and for a minimum of one (1) aircraft for Option 3 and two (2) aircraft for Options 4, 5 and 6. Alternate Option 2 does not have to be exercised for alternate Options 3 through 6 to remain valid. The alternate options must be exercised by giving the contractor written notice specifying the quantity to be procured on or before the dates set forth in Table III below, subject to Provision J.4, "Demonstration Milestones".

25

F33700-78-C-0001

SECTION J - CONTINUED

TABLE III

| Option Number | Dates for Exercise of Option |
|---|---|
| 2 (GFY '79) | 1 December 1978 |
| 3 (GFY '80) | 1 December 1979 |
| 4 (GFY '81) | 1 December 1980 |
| 5 (GFY '82) | 1 December 1981 |
| 6 (GFY '83) | 1 December 1982 |

(2)   Table IV contains the Unit Price Matrix total net base prices for quantities of ATCA aircraft from two (2) through sixty (60) . For the option being exercised, the total net base price for each aircraft shall start with the fuselage number which next follows the cumulative number of ATCA systems heretofore procured and continue through the last cumulative fuselage number being procured.

For example, if a total of ten (10) aircraft have been procured previously and eight (8) are ordered under a current option, the base prices for the current eight (8) aircraft would be those for aircraft eleven (11) through eighteen (18) from Table IV.

(3)   The airframe discount contained in column "d" of Table IV shall be adjusted, depending on the number of ATCA systems being procured for any given option, by the factor shown in Table V.  The resultant net airframe base price after discount adjustment shall be added to the engine base price to determine the revised total net base price.

(4)   Each aircraft's net airframe base price and engine base price shall be subject to adjustment in accordance with Clause J-15, Economic Price Adjustment.

(5)   If under this paragraph b, the Government has procured the same as or greater quantities of ATCA systems than specified for each respective basic (Green line) option, and if the quantity of ATCA systems being presently exercised is the same as or greater than its respective basic (Green line) option, the discounts shall be determined from Table II or Table IV, as adjusted by Table V, depending on which table provides the greater total discount.

26

Ex.: 17; p.: 563

Table II to Provision J.8, "Options"

Aircraft Price Structure (Basic (Green line) Options 3-5)

Government Fiscal Year (GFY) 1976 Dollars

| Opt. | a ATCA Fuselage No. | b Commercial Airframe Base Price + | c ATCA Peculiar Base Price + | d Airframe Discount - | e Net Airframe Base Price = | f Engine Base Price + | g Total Net Base Price = |
|---|---|---|---|---|---|---|---|
| 3 | 5 | 27,436,080 | 3,411,201 | 10,000,000 | 20,847,281 | 6,071,169 | 26,918,450 |
|   | 6 | 27,436,080 | 3,165,000 | 10,000,000 | 20,601,080 | 6,071,169 | 26,672,249 |
|   | 7 | 27,436,080 | 2,925,000 | 10,000,000 | 20,361,080 | 6,071,169 | 26,432,249 |
|   | 8 | 27,436,080 | 2,696,757 | 10,000,000 | 20,132,837 | 6,071,169 | 26,204,006 |
|   |   |   |   |   |   |   | 106,226,9.. |
| 4 | 9 | 27,436,080 | 2,485,000 | 10,000,000 | 19,921,080 | 6,071,169 | 25,992,249 |
|   | 10 | 27,436,080 | 2,285,000 | 10,000,000 | 19,721,080 | 6,071,169 | 25,792,249 |
|   | 11 | 27,436,080 | 2,129,354 | 10,000,000 | 19,565,434 | 6,071,169 | 25,636,603 |
|   | 12 | 27,436,080 | 2,000,000 | 10,000,000 | 19,436,080 | 6,071,169 | 25,507,249 |
|   | 13 | 27,436,080 | 1,935,000 | 10,000,000 | 19,371,030 | 6,071,169 | 25,442,249 |
|   | 14 | 27,436,080 | 1,865,000 | 10,000,000 | 19,301,080 | 6,071,169 | 25,372,249 |
|   |   |   |   |   |   |   | 153,742,848 |
| 5 | 15 | 27,436,080 | 1,811,928 | 10,000,000 | 19,248,008 | 6,071,169 | 25,319,177 |
|   | 16 | 27,436,080 | 1,763,700 | 10,000,000 | 19,199,780 | 6,071,169 | 25,270,949 |
|   | 17 | 27,436,080 | 1,719,500 | 10,000,000 | 19,155,580 | 6,071,169 | 25,226,749 |
|   | 18 | 27,436,080 | 1,678,900 | 10,000,000 | 19,114,980 | 6,071,169 | 25,186,149 |
|   | 19 | 27,436,080 | 1,641,300 | 10,000,000 | 19,077,380 | 6,071,169 | 25,148,549 |
|   | 20 | 27,436,080 | 1,606,500 | 10,000,000 | 19,042,580 | 6,071,169 | 25,113,749 |
|   |   |   |   |   |   |   | 151,265,322 |

27

Ex.: 17; p.: 564

Table IV to Provision J.8, "Options"

Aircraft Price Structure – Alternate Options (UPM)

Government Fiscal Year (GFY) 1976 Dollars

| a ATCA Fuselage No. | b Commercial Airframe Base Price | c ATCA Peculiar Base Price | d Airframe Discount | e Net Airframe Base Price | f Engine Base Price | g Total Net Base Price |
|---|---|---|---|---|---|---|
| 2 | $27,435,030 | $5,240,171 | $ 9,600,000 | $24,076,251 | $6,071,169 | $30,177,420 |
| 3 | 27,436,080 | 4,273,695 | 9,600,000 | 22,109,775 | 6,071,169 | 28,180,944 |
| 4 | 27,436,030 | 3,775,000 | 9,600,000 | 21,611,030 | 6,071,169 | 27,682,209 |
| 5 | 27,436,030 | 3,411,201 | 10,000,000 | 20,847,231 | 6,071,169 | 26,918,400 |
| 6 | 27,436,030 | 3,165,000 | 10,000,000 | 20,601,030 | 6,071,169 | 26,672,209 |
| 7 | 27,436,030 | 2,925,000 | 10,000,000 | 20,331,000 | 6,071,169 | 26,402,169 |
| 8 | 27,436,030 | 2,695,757 | 10,000,000 | 20,132,637 | 6,071,169 | 26,203,806 |
| 9 | 27,436,030 | 2,405,000 | 10,000,000 | 19,921,030 | 6,071,169 | 25,992,209 |
| 10 | 27,436,080 | 2,285,000 | 10,000,000 | 19,721,080 | 6,071,169 | 25,792,249 |
| 11 | 27,436,030 | 2,129,354 | 10,000,000 | 19,565,434 | 6,071,169 | 25,636,603 |
| 12 | 27,436,030 | 2,000,000 | 10,000,000 | 19,436,030 | 6,071,169 | 25,507,249 |
| 13 | 27,436,030 | 1,935,000 | 10,000,000 | 19,371,030 | 6,071,169 | 25,442,249 |
| 14 | 27,436,080 | 1,865,000 | 10,000,000 | 19,301,030 | 6,071,169 | 25,372,249 |
| 15 | 27,436,030 | 1,811,928 | 10,000,000 | 19,248,008 | 6,071,169 | 25,319,177 |
| 16 | 27,436,030 | 1,763,700 | 10,000,000 | 19,199,780 | 6,071,169 | 25,270,949 |
| 17 | 27,436,060 | 1,719,500 | 10,000,000 | 19,155,580 | 6,071,169 | 25,226,749 |
| 18 | 27,436,080 | 1,678,900 | 10,000,000 | 19,114,930 | 6,071,169 | 25,186,149 |
| 19 | 27,436,080 | 1,641,300 | 10,000,000 | 19,077,380 | 6,071,169 | 25,148,549 |
| 20 | 27,436,020 | 1,606,500 | 10,000,000 | 19,042,560 | 6,071,169 | 25,113,749 |
| 21-25 | 27,436,060 | 1,266,100 | 4,000,000 | 24,702,130 | 6,071,169 | 30,773,349 |
| 26-30 | 27,436,060 | 914,000 | 4,000,000 | 24,350,030 | 6,071,169 | 30,421,219 |
| 31-35 | 27,436,080 | 793,200 | 5,000,000 | 23,229,280 | 6,071,169 | 29,300,449 |
| 36-40 | 27,436,030 | 709,700 | 5,000,000 | 23,145,730 | 6,071,169 | 29,216,949 |
| 41-45 | 27,436,080 | 643,900 | 6,000,000 | 22,079,930 | 6,071,169 | 28,151,149 |
| 46-50 | 27,436,080 | 590,500 | 6,000,000 | 22,026,580 | 6,071,169 | 28,097,749 |
| 51-60 | 27,436,030 | 527,500 | 7,000,000 | 20,963,530 | 6,071,169 | 27,034,749 |

Ex.: 17; p.: 565

Table V to Provision J.8, "Options"

UPM Discount Adjustment Factors

1.  Factor = F = $\left[\dfrac{CO}{CGL}\right]^{\frac{1}{2}}$   To be multiplied by the aircraft discount for the second through the twentieth aircraft shown on Table IV.

a.  Where:

CO = The cumulative orders through the current option

CGL = The cumulative Green Line quantity through the current option

EXAMPLE:  CASE (1)

| Option | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Aircraft Ordered | 1 | 2 | 2 | 4 | 9 | 0 |
| Green Line Quantity | 1 | 3 | 4 | 6 | 6 | - |

Factor for Option 2:

CO  = 1 + 2 = 3
CGL = 1 + 3 = 4
F   = $\left[3/4\right]^{\frac{1}{2}}$ = .866

Factor for Option 3:

CO  = 1 + 2 + 2 = 5
CGL = 1 + 3 + 4 = 8
F   = $\left[5/8\right]^{\frac{1}{2}}$ = .791

Factor for Option 4:

CO  = 1 + 2 + 2 + 4 = 9
CGL = 1 + 3 + 4 + 6 = 14
F   = $\left[9/14\right]^{\frac{1}{2}}$ = .802

b.  F can never exceed 1.

c.  In order to minimize the adverse effect of large ATCA production rate changes on MDC, the following limitation to the cumulative order (CO) value is required. If in the option year immediately preceding the current option year, the option quantity actually ordered was less than the Green Line quantity for that year and the quantity ordered in the current year is greater than the Green Line quantity for the current year by three or more aircraft, the CO will be calculated with a limit of two aircraft over the Green Line for the current year.

For example, using Case (1), if the current order is Option 5 and 9 aircraft are to be ordered (3 above the Green Line quantity of 6 for Option 5) and 4 aircraft were ordered in Option 4 (2 less than the Green Line quantity of 6), the CO and CGL would be:

29

CO  =  1 + 2 + 2 + 4 + (6 + 2) = 17

CGL  =  1 + 3 + 4 + 6 + 6        = 20

$F = \left[ 17/20 \right]^{\frac{1}{2}} = .922$

d.  In the event no aircraft are ordered in Option 2, the CO calculated for Options 3, 4, 5 and 6 would each be reduced by 1:

EXAMPLE:  CASE (2)

| Option | 1 | 2 | 4 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Aircraft Orders | 1 | 0 | 2 | 4 | 9 | 0 |
| Green Line Quantity | 1 | 3 | 4 | 6 | 6 | - |

Factor for Option 5:

CO  =  1 + 0 + 2 + 4 + (6 + 2) − 1 = 14

CGL  =  1 + 3 + 4 + 6 + 6        ≐ 20

$F = \left[ 14/20 \right]^{\frac{1}{2}} = .837$

e.  If the cumulative Green Line quantity has not been ordered by Option 6, then the Green Line option quantity to be used for Option 6 will be the same as the Green Line Option 5 quantity, namely, 6 aircraft.

f.  If aircraft ordered in Option 6 causes the cumulative order quantity to exceed the Green Line quantity, the Factor will only apply to those aircraft required to reach the cumulative Green Line quantity.

For example:  If 16 aircraft have been ordered through Option 5 and 7 aircraft are to be ordered in Option 6, only 4 aircraft will be used in Option 6 to calculate the CO.

Ex.: 17; p.: 567

SECTION J – CONTINUED

9. ATCA PECULIAR SUPPORT EQUIPMENT OPTION

a. The Contractor grants to the Government the option to order additional pieces of the peculiar support equipment identified in Contract Attachment 5, ATCA Peculiar Support Equipment List. To determine the firm fixed price for the additional support equipment at the time of order, the Government Fiscal Year (GFY) 1976 recurring prices set forth in Attachment 5 may be adjusted using the factors set forth in Table I below. This option may be exercised from time to time during the course of the contract.

b. Support equipment subsequently identified for purchase which is not set forth in Attachment 5 shall be separately priced prior to being procured. If determined appropriate by the Government, the unit recurring price for each newly identified item of support equipment may be added to Attachment 5 in GFY 1976 dollars and additional pieces may be ordered in accordance with paragraph a above.

c. Delivery requirements shall be determined at the time support equipment is ordered.

d. The Government reserves the right, in all instances, to either separately negotiate peculiar support equipment prices each time additional support equipment is procured, or price the support equipment in accordance with the provision of paragraph a above.

TABLE I

| Order Date | Base Price Adjustment Factor |
|---|---|
| 1 Dec 77 – 30 Nov 78 | 1.2517 |
| 1 Dec 78 – 30 Nov 79 | 1.3518 |
| 1 Dec 79 – 30 Nov 80 | 1.4599 |
| 1 Dec 80 – 30 Nov 81 | 1.5767 |
| 1 Dec 81 – 30 Nov 82 | 1.7029 |
| 1 Dec 82 – 30 Nov 83 | 1.8391 |

Ex.: 17; p.: 568

SECTION J - CONTINUED

10.  SIMULATOR DATA OPTION

a.  The Contractor agrees to provide the Government a McDonnell
Douglas Corporation (MDC) simulator data package representative of the
DC-10 Advanced Tanker Cargo Aircraft (ATCA).  This data package shall
be sufficient to develop a flight simulator capable of initial and
transitional training, including normal and abnormal conditions.  The
simulator data package shall be provided in three phases and shall, as
a minimum, include the following:

Phase I

Preliminary data shall be submitted two months after exercise of
this option and shall consist of:

(1)  An aerodynamic three view of the aircraft and a cockpit
interior layout including window location and field of view.

(2)  A description of the aircraft dynamic characteristics
including critical values and associated flight conditions.  The follow-
ing conditions will be included:

(a)  Short period longitudinal oscillation

(b)  Phugoid

(c)  Dutch roll

(d)  Roll

(e)  Longitudinal trim changes resulting from:

$\underline{1}$  Landing gear position change

$\underline{2}$  Flap, slat, spoiler and speed brake position change

$\underline{3}$  Power setting changes

(3)  Estimated maximum values of the following:

(a)  True airspeed

(b)  Placard and red line speeds for each configuration

(c)  Linear accelerations and velocities along wind or
stability axes of the airplane

31

Ex.: 17; p.: 569

SECTION J – CONTINUED

      (d)  Rate of climb

      (e)  Altitude

      (f)  Mach number

      (g)  Angular accelerations and velocities about the wind, stability or body axes of the airplane

    (4)  A description and schematic of the flight control system

    (5)  A description of the propulsion system including type, designation and performance.

    (6)  A description including a top level functional diagram or schematic of the following system.

      (a)  Electrical system

      (b)  Hydraulic and pneumatic systems

      (c)  Cabin pressurization and oxygen system data

      (d)  Anti-icing system

      (e)  Fire/overheat warning and control system

      (f)  Automatic stabilization and control system

      (g)  Fuel system

      (h)  Oil system

      (i)  Ground operation, brake and steering systems

      (j)  Landing gear system

      (k)  Auxiliary power plant

    (7)  A list of aircraft instruments

    (8)  A description of avionics including information of interface and modes of operation and identification of all onboard processors including description, function and interfaces sufficient to enable simulation approach tradeoff studies.

    (9)  A DC-10 Series 30 Commercial Flight Manual.

32

Ex.: 17; p.: 570

SECTION J - CONTINUED

Phase II

Additional data shall be submitted 60 days after exercise of this option, but no earlier than 60 days after the final critical design review (CDR) and shall consist of:

(1)  Updates of data provided in Phase I as required to reflect the baseline configuration at CDR.

(2)  Available pictures of the cockpit/crew station including any special equipment installed.  (Differences between the pictures submitted and the actual planned layout will be identified.)

Phase III

Flight test and FAA certification data shall be submitted 60 days after exercise of this option but no earlier than 30 days after FAA approval of the flight manual and shall consist of:

(1)  Updates of performance data provided in Phase I or II as required to reflect FAA approved data based on flight test.

(2)  FAA approved Aircraft Flight Manual.

b.  The simulator data shall be provided with rights in accordance with Special Provision J.6, "Special Data Provisions."  In the release of this data to all potential simulator manufacturers, the Government agrees to secure from those manufacturers the following agreement in writing:

"McDonnell Douglas Corporation proprietary rights are included in the data supplied by the Government to (Name of Simulator Manufacturer).  (Name of Simulator Manufacturer) by accepting this proprietary data agrees that neither this data nor the information disclosed therein nor any part thereof shall be reproduced or transferred to other documents or used or disclosed to others for manufacturing or for any purpose except as required for the manufacturer of the Government's ATCA Simulator."

33

Ex.: 17; p.: 571

SECTION J – CONTINUED

    c.  The Contractor shall also provide to the simulator manufacturers designated by the Government a copy of all approved ECPs, Service Bulletins and TCTOs which might impact the design and performance of the ATCA flight simulator.  This service shall continue as long as this contract, F33700-78-C-0001, remains in force.

    d.  The Contractor agrees to consummate a contractual agreement with a flight simulator contractor, to be designated by the USAF, to provide engineering services and any additional data required by the flight simulator manufacturer in the design and fabrication of an ATCA flight simulator.  The ATCA contractor shall not be responsible for the application of data nor for the flight simulator manufacturer's performance relative to the design and manufacture of the simulator.

    e.  This option shall be exercised pursuant to Contract Line Item 0024 and must be exercised on or before 30 January 1980.


11.  CONFIGURATION ALTERNATES OPTION

    The Contractor grants to the Government the option to procure configuration alternate kits from time to time during this contract in accordance with the following:

    a.  Increased Accommodations Kits

       (1)  Increased accommodations kits shall be provided in accordance with Detail Specification DS-5500 ATCA, Appendix A, Alternate 3. They shall be ordered pursuant to Contract Line Item 0021.

       (2)  Individual kit prices are set forth in Table I below.  The first kit shall be delivered as part of Option One pursuant to Contract Line Item 0008.  Prices for additional kits to be procured with Basic Option 2 aircraft are set forth on a fixed price basis.  Prices are also set forth in Government Fiscal Year 76 dollars for kits ordered associated with aircraft whose prices shall be subject to Economic Price Adjustment. Each kit ordered shall be identified to a production aircraft and the kit's price shall be added to that aircraft's fixed price or ATCA peculiar base price for Economic Price Adjustment (if applicable) and progress payment purposes.  Each kit shall be delivered with the production aircraft unless negotiated otherwise.

Ex.: 17; p.: 572

SECTION J – CONTINUED

TABLE I TO PROVISION J.11 CONFIGURATION ALTERNATES OPTION

| Kit No. | Fixed Price | Government Fiscal Year 1976 Dollars |
|---------|-------------|-------------------------------------|
| 2       | 363,087     | 269,492                             |
| 3       | 318,381     | 235,280                             |
| 4       | 288,596     | 212,281                             |
| 5       |             | 201,196                             |
| 6       |             | 192,571                             |
| 7       |             | 185,290                             |
| 8       |             | 179,438                             |
| 9       |             | 175,480                             |
| 10      |             | 172,014                             |
| 11      |             | 168,430                             |
| 12      |             | 165,678                             |
| 13      |             | 163,665                             |
| 14      |             | 161,824                             |
| 15      |             | 159,374                             |
| 16      |             | 157,810                             |
| 17      |             | 156,356                             |
| 18      |             | 154,997                             |
| 19      |             | 153,722                             |
| 20      |             | 152,523                             |
| 21–25   |             | 149,377                             |
| 26–30   |             | 145,392                             |
| 31–35   |             | 142,284                             |
| 36–40   |             | 139,671                             |
| 41–45   |             | 137,421                             |
| 46–50   |             | 135,450                             |
| 51–60   |             | 132,765                             |

Ex.: 17; p.: 573

SECTION J - CONTINUED

## 12. SPECIFICATION AND STANDARDS

The ATCA aircraft shall be designed and produced in accordance with FAA standards and FAA approved contractor standards and processes, and certified by the FAA. However, military specifications and standards shall be used when there are no applicable FAA standards or FAA approved contractor standards and processes or when a military specification or standard is specifically required by the terms and conditions of this contract.

## 13. CONFIGURATION MANAGEMENT

a. General. The Contractor shall perform configuration management under the general concepts outlined in MIL-STD 483 by utilizing his existing commercial practices and procedures in accordance with the Government approved Configuration Management Plan.

b. Engineering Changes. Engineering changes which affect price, delivery schedule, specified weight or performance, specified inter-changeability requirements, the established identification of a pro-visioned spare part or spare assembly, the ATCA maintenance and logistics support concept or ATCA peculiar specification requirements, shall be classified and processed as Class I ECPs.

c. Engineering Change Proposal (ECP) Submittals.

(1) The contracting officer may, at any time, in writing, request the contractor to prepare and submit an Engineering Change Proposal (ECP) as that term is defined by MIL-STD-480 and as modified by b above, within the scope of this contract, as hereafter set forth.

(2) All engineering changes may be submitted in contractor's format provided the information that is normally required in an ECP prepared in accordance with MIL-STD-480 and MIL-STD-483 is included in the change proposal.

(3) All contractor ECPs shall set forth a "not to exceed" price and delivery adjustment or a "not less than" price and delivery adjustment acceptable to the contractor if the Government subsequently orders such ECP. If ordered, the equitable increase shall not exceed, nor shall the equitable decrease be less than, such "not to exceed" or "not less than" amounts. This paragraph does not preclude any revision(s) or correction(s) of an ECP in accordance with paragraphs 4.10 and 4.11 of MIL-STD-480. Concurrently with the submission of any ECP under this contract in which the proposed aggregate cost is $100.000 or greater, the contractor shall

Ex.: 17; p.: 574

SECTION J – CONTINUED

submit to the Contracting Officer a completed DD Form 633-5 or 633-7. At the time of agreement upon the price of the ECP, the contractor shall submit a signed Certificate of Current Cost or Pricing Data.

(4)  The prices set forth for ECPs shall be firm fixed priced in then year dollars.  Prices shall also be provided in FY-76 base year dollars for those aircraft set forth in Tables II and IV of Provision J.8, "Options."

(5)  As part of the information furnished with each ECP the Contractor shall, on a Life Cycle Cost basis, estimate all costs assoc- iated with the change, including the affects on spares, support equip- ment, technical data and maintenance for the expected life of the changed item.  This information shall be used for evaluation of the change proposal.

d.  Standard Commercial Changes.  The Contractor may, without Air Force approval, incorporate standard commercial changes into the basic aircraft as standard Specification Change Notices (SCNs), provided such changes are not Class I changes as defined in b above.  These standard commercial changes shall be processed and incorporated into the undeliv- ered articles as Class II changes.  All Class II changes shall be submitted to the Government Plant Representative Office concurrent with their release from engineering for concurrence in classification.  The Contractor shall furnish the Procuring Contracting Officer (PCO) all Class II changes resulting in SCNs concurrent with their release from engineering.  Docu- mentation shall be prepared and submitted to the Contractor for deletion of any change submitted by SCN that is not desired by the Air Force and the Contractor shall submit a Class I ECP to the Air Force.

e.  ATCA Peculiar Avionics Changes.  The Contractor shall provide to the Joint Program Office (JPO) and logistics support contractor a detailed configuration of the ATCA peculiar avionics/instruments, to the line replaceable unit (LRU) level, sixty (60) days prior to avionics critical design review (CDR).  Any recommended changes to the avionics/ instrumentation defined in the ATCA Detail Specification shall not degrade required avionics performance or increase contract price.  Following Air Force approval at avionics CDR, the equipment, to the LRU level, shall be incorporated into the ATCA Detail Specification and controlled in accord- ance with paragraph b above.

f.  Governmental Required Changes.  If any law or Governmental regulations or interpretation thereof by a Government agency having jurisdiction, the date of promulgation of which is subsequent to the date of this contract, shall require any change, addition or modifi- cation to each aircraft prior to delivery thereof in order to obtain or

37

SECTION J - CONTINUED

maintain certification by the Federal Aviation Administration as provided herein, it is agreed that such change or modification shall be made in each aircraft affected and an equitable adjustment made, if applicable, in aircraft design, weight, balance and time of delivery.

The Contractor shall make such changes, additions, or modifications in each undelivered aircraft at no change in contract price, terms or conditions for all such airworthiness and/or certification requirements which are (i) promulgated prior to eighteen (18) months after the date of this contract, regardless of the requirements effectivity date contained therein; or (ii) unique to the DC-10. The price of complying with all other airworthiness/certification requirements shall be subject to negotiation. In no instance shall the price of complying with any requirement exceed that price paid by the contractor's most favored customer.

14. SPECIAL PROGRESS PAYMENTS

a. Progress payments for all contract Schedule E line items other than ATCA aircraft line items and configuration alternates ordered pursuant to special provision J.11, "Configuration Alternates Option," shall be made in accordance with Clause 54 of the General Provisions entitled "Progress Payments for Other Than Small Business Concerns".

b. Progress payments for Schedule E ATCA aircraft line items (i.e., items 0005, 0011, 0013, 0015, 0017, 0019), to include any recurring configuration alternate items ordered pursuant to Contract Provision J.11, "Configuration Alternates Option", shall also be made in accordance with Clause 54 of the general provisions, with the exception of payment which shall be made in accordance with the payment schedules and conditions set forth below. Payments are based on 80% of the total cumulative costs incurred on each schedule month designated. Total progress payments shall not exceed 80% of each aircraft's estimated cost. For the purpose of this clause only, the cost of each aircraft shall be based on each aircraft's price less 10% for profit.

c. Progress payments for aircraft number one (line item 0005) shall be made in accordance with the following payment schedule:

38

SECTION J – CONTINUED

PAYMENT SCHEDULE

| Months Before Aircraft First Flight | Payment – Cumulative % of Aircraft Cost | Monthly Amount | Cumulative Amount |
|---|---|---|---|
| 22 | 5 | | |
| 21 | 6 | | |
| 20 | 7.5 | | |
| 19 | 9 | | |
| 18 | 10 | | |
| 17 | 12 | | |
| 16 | 15 | | |
| 15 | 17.5 | | |
| 14 | 20 | | |
| 13 | 22.5 | | |
| 12 | 25 | | |
| 11 | 27.5 | | |
| 10 | 32.5 | | |
| 9 | 40 | | |
| 8 | 45 | | |
| 7 | 52.5 | | |
| 6 | 60 | | |
| 5 | 64 | | |
| 4 | 67.5 | | |
| 3 | 70 | | |
| 2 | 72.5 | | |
| 1 | 75 | | |

The above cumulative percentages do not exceed eighty percent (80%) of estimated incurred costs at each month designated.

Upon successful completion of the aircraft's first flight, the Contractor shall be entitled to a cumulative payment of ninety percent (90%) of the price of aircraft number one or $41,981,521. To receive this milestone payment, the Contractor shall not be required to comply with the statement of cost submission requirement stated in ASPR E-529.4(b). The certifications required by ASPR E-529.4(c) and (d), however, shall be provided prior to payment to the effect that the milestone has been completed and that total payments do not exceed the Contractor's total incurred contract costs. The balance of the first aircraft's price, $4,664,613, shall be paid at the time of final delivery to, and acceptance by (DD250), the Government.

39

d. Progress payments for aircraft ordered pursuant to contract Options 2 through 6 (Line Items 0011, 0013, 0015, 0017, 0019) shall be made in accordance with the following payment schedule:

## PAYMENT SCHEDULE

| Months Before Aircraft Delivery | Payment – Cumulative % of Aircraft Cost | Monthly Amount | Cumulative Amount |
|---|---|---|---|
| 22 | 5 | | |
| 21 | 6 | | |
| 20 | 7.5 | | |
| 19 | 9 | | |
| 18 | 10 | | |
| 17 | 12 | | |
| 16 | 15 | | |
| 15 | 17.5 | | |
| 14 | 20 | | |
| 13 | 22.5 | | |
| 12 | 25 | | |
| 11 | 27.5 | | |
| 10 | 32.5 | | |
| 9 | 40 | | |
| 8 | 45 | | |
| 7 | 52.5 | | |
| 6 | 60 | | |
| 5 | 64 | | |
| 4 | 67.5 | | |
| 3 | 70 | | |
| 2 | 72.5 | | |
| 1 | 75 | | |

The above cumulative percentages do not exceed 80% of estimated incurred costs at each month designated.

The firm fixed price for aircraft ordered pursuant to Option Two shall be the basis for determining each aircraft's cost. For all aircraft ordered which shall be subject to Economic Price Adjustment (EPA), the aircraft price from which each aircraft's cost shall be determined shall be the forecast price established pursuant to J.15, Economic Price Adjustment, paragraph f.5. A specific payment schedule for each aircraft shall be established prior to the exercise of each option, and incorporated into the contractual document exercising each option. Upon delivery and acceptance of each aircraft, the Contractor shall be entitled to receive the difference of progress payments received and the aircraft's fixed price (Option Two aircraft) or the final price per aircraft, as established in accordance with J.15, for all aircraft subject to Economic Price Adjustment.

40

Ex.: 17; p.: 578

SECTION J - CONTINUED

e.  The contractor shall be entitled to recover progress payments
set forth in paragraphs c and d above upon verification by the Procuring
Contracting Officer of acceptable progressive physical completion of
each aircraft against each aircraft's established production schedule
as reflected in the DC-10 production status report, and upon execution
of a certificate reading as follows:

## CERTIFICATE

This is to certify that Douglas Aircraft Company has pro-
gressed in the performance of work under Contract F33700-
78-C-0001 for aircraft number          in conformance with
the Aircraft Production Schedule used as the basis for
determining payment under this invoice.  Contractor further
certifies that all costs for vendor and/or subcontractor
items utilized in the work physically completed have been
paid and that total progress payments made are not in excess
of 80% of costs incurred.

FIRM:_____

NAME:_____

TITLE:_____

DATE OF EXECUTION:_____

f.  All payments specified above shall be subject to any with-
holdings specified elsewhere in the contract.

15.  ECONOMIC PRICE ADJUSTMENT

a.  Base Price.  The base prices to be adjusted hereunder are the
net airframe base prices and engine base prices set forth in Clause
J.8 of the Schedule "Options", Tables II and IV.

b.  Price Modifications.  The net base prices shall be increased
or decreased by amendments executed in accordance with the provision
hereof entitled "Configuration Management" and as otherwise provided
in this contract.

41

SECTION J – CONTINUED

c. Engine and Associated Engine Equipment. The engine base prices set forth in Tables II and IV of Provision J.8, "Options" include the amount indicated for the below listed types and quantities of engine and associated engine equipment not manufactured by contractor which will be purchased and incorporated in each ATCA aircraft by contractor.

| Number Required Per Shipset | Type of Equipment | Base Price Per Shipset Manufacturer and Model No. GE CF6-50C1 |
|---|---|---|
| 3 | Engine | $5,079,470 |
| 3 | Fixed Nozzle | 227,072 |
| 3 | Starter | 36,464 |
| 3 | Starter Valve | 7,550 |
| 3 | Core Speed Sensor | 2,457 |
| 3 | Bleed Air Manifold | 13,389 |
| 3 | Tail Side Link Mount | 1,201 |
| 3 | Fuel Drain Eliminator | 6,273 |
| 3 | TMF Bracket (V-M) | 231 |
| 3 | No. 1 Brg Accel (V-M) | 942 |
| 3 | Fan Reverser | 564,390 |
| 3 | Power Door Opener | 13,831 |
| 3 | Precooler Inlet | 15,321 |
| 1 | Tail Eng Adapter | 6,941 |
| 1 | Tail Eng Bumper | 271 |
| 3 | Elec Wiring Harness | 2,519 |
| 3 | Pod Temp Sensor | 6,024 |
| 1 | Tail Eng F/R Items | 28,942 |
| 2 | Wing Eng F/R Items | 57,884 |

Total amount of engine and associated engine equipment per aircraft included in the engine base price totals $6,071,169.

d. Airframe Price Adjustment Methodology. The net airframe base price of each aircraft purchased hereunder as adjusted pursuant to paragraph b of this provision includes no allowance for inflation subsequent to the Government Fiscal Year 1976. Accordingly, such adjusted net base price shall be increased or decreased as hereinafter set forth:

(1) The indexes to be used are:

42

Ex.: 17; p.: 580

SECTION J — CONTINUED

(a)  The "Average Hourly Gross Earnings per Production Worker on Payrolls of Nonagricultural Establishments - Durable Goods Industries, Transportation Equipment – Aircraft", (SIC 3721) National Average as published by the Bureau of Labor Statistics, U.S. Department of Labor, hereinafter referred to as the HE Index.

(b)  The Wholesale Price Index of Industrial Commodities as published with 1967 = 100 by the Bureau of Labor Statistics, U.S. Department of Labor, hereinafter referred to as the IC Index.

(2)  To determine the airframe price at time of scheduled aircraft delivery:

(a)  Obtain the net airframe base price from Table II or Table IV, as applicable, of Provision J.8, "Options".

(b)  Multiply the net airframe base price from (a) above by 0.75 times the fraction whose:

1.  Numerator is the average HE Index for the seven (7) months entered on the ninth (9th) month prior to scheduled aircraft delivery, less the average HE Index for the base period months of July 1975 through June 1976, which is equal to $6.441.

2.  Denominator is the average HE Index for the base period months of July 1975 through June 1976, which is equal to $6.441.

3.  The monthly values of the Index shall be the "final" (as contrasted with "preliminary") values as published at the time of scheduled aircraft delivery (or, in the event any such "final" values are not available at that time, "preliminary" values shall be used until such time as "final" values are subsequently published).

(c)  Multiply the net airframe base price from (a) above by 0.25 times the fraction whole:

1.  Numerator is the average IC Index for the seven ("  months centered on the ninth (9th) month prior to scheduled aircraft delivery, less the average IC Index for the base period months of July 1975 through June 1976, which is equal to 176.6.

2.  Denominator is the average IC Index for the base period months of July 1975 through June 1976, which is equal to 176.6.

43

F33700-73-C-0001

Case MDL No. 875 Document 6666-1 Filed 01/28/11 Page 47 of 403
Case 3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 46 of 203

SECTION J — CONTINUED

   3. The monthly values of the Index shall be the final values (as contrasted with "preliminary" values, if any) published at the time of scheduled aircraft delivery (or, in the event any such "final" values are not available at that time, "preliminary" values shall be used until such time as "final" values are subsequently published).

   (d) Add the results of (b) and (c) above to obtain the inflation adjustment to the net airframe base price at time of scheduled aircraft delivery and add this adjustment to the net airframe base price to determine the airframe delivery price.

   (e) The average Index numbers and ratios in this paragraph shall be computed to the following number of decimal places:

   1. The average HR Index shall be computed to the nearest tenth (10th) of a cent (e.g., $4.567). (Note: $0.0005 rounds to $0.001.)

   2. The average IC Index shall be computed to one (1) decimal place (e.g., 123.4). (Note: 0.05 rounds to 0.1.)

   3. The ratios shall be computed to four (4) decimal places (e.g., 0.0789). (Note: 0.00005 rounds to 0.0001.)

   (3) In the event that any act or cause coming within the scope of paragraph (c) of the General Provision hereof entitled "Default" causes a delay affecting the scheduled aircraft delivery of one (1) or more of the aircraft to be furnished hereunder, then the escalation computation set forth in this paragraph shall be based on the actual delivery month for any aircraft so delayed.

   (4) In the event the Department of Labor revises, either before or within twelve months after aircraft delivery, any previously published Indexes or data by removing or replacing said Indexes or data, or by describing said revision by footnote, appendix or any other method, the revision shall apply to the formula for purposes of price determination. Any post delivery price adjustments required as a result of such revisions shall be processed and paid or credited promptly following publication of the revised data.

   In the event the Department of Labor revised the methodology (in contrast to benchmark adjustments and other corrections of previously published data) or discontinues any of the Indexes referred to in this article, the parties shall select a substitute for the revised or discontinued Index, said substitute Index to lead in application to the same

44

Ex.: 17; p.: 582

SECTION J – CONTINUED

adjustment result, insofar as possible, as would have been achieved by
continuing to use the original Index as it may have fluctuated had it
not been revised or discontinued. Appropriate revision of the formula
shall be made to accomplish this result.

        To implement this paragraph (4), either party may notify
the other that a change in the Index within the meaning of this paragraph
is anticipated or has taken place. The contractor shall then propose
substitute Indexes and formula revision. Within ninety (90) days from
such notification or from receipt of data covering the last month of
publication of the unchanged Index series, whichever is later, the
parties shall agree on substitute Indexes and formula revision. In the
event the parties cannot so agree, the disagreement will be handled by
the procedures of the clause herein entitled "Disputes". Adjustment of
prices under this Provision J.15d and payment of invoices computed from
these adjusted prices, shall continue on the previous schedule following
any change in the Indexes within the meaning of this section and through-
out any period of negotiation or arbitration. The Indexes and formula,
used when the unchanged Indexes are not available, shall be those pro-
posed by contractor, but said payments shall be on a temporary basis and
shall be corrected and any required refunds or additional payments made
within thirty (30) days following agreement between the parties or a
final decision pursuant to the "Disputes" clause.

   e. Engine and Associated Engine Equipment Price Adjustment Methodology

     (1) The engine base prices set forth in Table II and Table IV,
as applicable, of Provision J.8, "Options" shall be adjusted pursuant
to the provisions noted below to compensate for any increase or decrease
in the level of the Composite Price Index (CPI) defined below. Said
adjustment shall be on an aircraft-by-aircraft basis.

For the purpose of this calculation:

     (a) "Engine and Associated Engine Equipment Base Price
shall mean the engine base prices set forth in Table II and Table IV
of Provision J.8, "Options".

     (b) The CPI for a given year shall mean the arithmetic
average of the following three indices prepared by the U.S. Department
of Labor, Bureau of Labor Statistics:

45

SECTION J - CONTINUED

'(i)  The Labor Index for a given calendar year shall mean 100 times the quotient of the average annual "Hourly Earnings of Aircraft Engine and Engine Parts Production Workers" for that year, divided by three dollars and forty-two cents ($3.42) which represents the base year 1967.  Such quotient shall be determined to the nearest three decimal places; the value of the third decimal place shall be raised to the next higher number if the fourth decimal place has a value of five or more.

(ii) The Industrial Commodities Index for a given calendar year shall mean the annual average wholesale price index for "all commodities other than Farm and Foods" for that year with a base period of 1967.

(iii) The Metals and Metal Products Index for a given calendar year shall mean the annual average wholesale price index for "Metals and Metal Products" for that year with a base period of 1967.

(c)  The CPI for a given calendar year, as defined above, shall be computed from the first published final figures of the Bureau of Labor Statistics for the applicable year as soon after the close of each calendar year as the Indices are published by the U.S. Department of Labor Statistics.  Each such CPI shall be determined to the nearest first decimal place; if the second decimal place is five or more, the first decimal place shall be raised to the next higher number.

(d)  Engine delivery shall be deemed to have taken place four (4) months prior to aircraft delivery, i.e., January through April aircraft will receive engines delivered in the prior calendar year. May through December aircraft will receive engines delivered in the current calendar year.

(2)  Adjustments to the engine base price shall be determined as follows:

(a)  The adjustment to be made to the engine base prices set forth in Table II or Table IV, as applicable, of Provision J.8, "Options", to determine its final purchase price is dependent upon the year during which the engine is scheduled for delivery to contractor, and such adjustment shall be determined in accordance with the following formula:

$$PA_n = P_b \times \frac{(CPI_{(n-1)} - CPI_b)}{(CPI_b)}$$

Ex.: 17; p.: 584

SECTION J — CONTINUED

where:

$PA_n$ = Price adjustment for a engine scheduled for delivery during calendar year "n".

$P_b$ = Base price applicable to such engine scheduled for delivery during year "1976".

$CPI_b$ = CPI for the calendar year 1975 (i.e., 177.8).

$CPI_{(n-1)}$ = Composite Price Index for the year immediately preceding the year "n".

n = Delivery year (calendar year).

      (b) If any change in the specification results in a modification of the base prices set forth in paragraph (c), the base year for such change shall be 1976.

      (c) The factor $(CPI_{(n-1)} - CPI_b)/CPI_b$ by which any base price is to be multiplied shall be calculated to the nearest three decimal places; if the fourth decimal place is five or more, the third decimal place shall be raised to the next highest number.

      (d) The engine base price adjustment shall be added to the engine base price to determine the engine delivery price. To determine the total delivery price of an aircraft, the results of this paragraph shall be added to the results of paragraph d2(d).

    f. Forecast Price for Special Progress Payment Purposes

      (1) At the time of ordering any aircraft whose net base price shall be subject to Economic Price Adjustment, an aircraft forecast price shall be established in accordance with this paragraph f for the purposes of determining Progress Payments pursuant to Contract Provision J.14, "Special Progress Payments".

      (2) Forecast Price Methodology. Airframe and engine (and associated engine equipment) price adjustments shall be established by the Price Adjustment Methodology set forth in paragraphs d and e above, except that the values used for each required monthly index, when actuals are unavailable, shall be projections made by determining

47

## SECTION J — CONTINUED

the trend during the most recent twelve month period for which final monthly indices (in contrast to preliminary values) are available, and projecting this trend forward. The projection trend is defined as the least squares exponential trend line fitted to the most recent twelve months of actuals for each index. The formula for the projection trend is as follows:

$$y = ae^{bx}$$

where

$y$ = the forecast monthly index value for month $x$ (for labor indexes, calculate $y$ to the nearest cent (Note: .005 rounds to .01); for material indexes, calculate $y$ to the nearest first decimal place (Note: .05 rounds to .1).

$a$ = the value of $y$ when $x = 0$ (use 10 significant digits).

$x$ = the number of each month beginning with one at the first month of the twelve month period.

$e$ = the base of natural logarithms.

$b$ = a constant (use 10 significant digits).

(3) Forecast Airframe Price Adjustment. The above formula will be used to forecast the seven months required by the airframe price adjustment formula in paragraph d.

(4) Forecast Engine and Associated Engine Equipment Price Adjustment. The formula in paragraph f(2) above will be used to forecast index values for any months required by the Engine and Associated Engine Equipment Price Adjustment Methodology in paragraph e for which actual index values are unavailable.

(5) Aircraft Forecast Price. The Aircraft Forecast Price shall be the sum of the net base prices of paragraph a of this provision plus any Forecast Airframe Price Adjustment of paragraph f(3), plus any Forecast Engine and Associated Engine Equipment Price Adjustment of paragraph f(4).

Ex.: 17; p.: 586

SECTION J – CONTINUED

16.  ASSOCIATE CONTRACTOR RELATIONSHIP WITH ATCA PROGRAM CONTRACTORS
AND PROPOSERS

    a.  It is understood that procurement of aircraft under this con-
tract is the initial procurement in the Advanced Tanker/Cargo Aircraft
Program and that additional procurements will follow which will include
contractor maintenance, logistics support, and modifications to the air-
craft procured under this contract, and production and delivery of
technical data relative to the aircraft as supported or modified.  It is
further understood that technical data relative to the aircraft procured
under this contract, both proprietary and non-proprietary, may be
required by other parties, both  for the purpose of proposing and per-
forming the additional procurements described above.  The Contractor
agrees that it shall make available to proposers for such additional
procurements, current and accurate technical data for proposal purposes
upon reasonable terms and conditions, whether or not such technical
data is proprietary.  The Contractor further agrees that it shall make
available to contractors for such additional procurements, current and
accurate technical data for use in performing the effort required under
their applicable contracts upon reasonable terms and conditions,
whether or not such technical data is proprietary.  The Contractor
further agrees that in making technical data available to performing
contractors under the provisions of this paragraph, it will not restrict
or limit the use, duplication, or disclosure of such technical data in
any way which impairs, limits, or restricts the Government's ability
to acquire technical data, contractually required to be produced and
delivered to the Government under such contracts, with less than "Special
Rights" as defined in Section J, paragraph 6(b).  The Contractor agrees
that it will not assert rights under any of its patents against the
U. S. Government for any use of data delivered pursuant to this contract
or other agreements by Douglas with associated contractors under the
Advanced Tanker/Cargo Aircraft Program.

    b.  Contractor agrees to provide potential proposers and contrac-
tors access to the aircraft, on a non-interference basis, at its facility.
Access contemplated under this paragraph shall be in accordance with
schedules developed and under the control of the Procuring Contracting
Officer.  Prior to visits to the contractor's premises, each potential
proposer or contractor shall be required to execute an agreement holding
Douglas Aircraft Company harmless from any liability from the visit.

    c.  Contractor also agrees to provide to contractors performing such
additional procurements technical assistance, as required, under reason-
able and mutually agreed to terms and conditions.

Ex.: 17; p.: 587

SECTION J – CONTINUED

d.  The Contractor agrees to enter into company to company agreements with (1) any of the proposers on the ATCA Program upon their request, and (2) the contractor selected to perform any effort on the ATCA Program upon his request.  Such agreements, if any, will be furnished to the PCO.

e.  The Contractor agrees that any costs or expenses for logistics support contractor participation in any effort identified in the Statement of Work and Detail Specification are included in the price of this contract and its options.

17.  MOST FAVORED CUSTOMER WARRANTY

a.  The Contractor hereby agrees and certifies that the final price for the DC-10-30F (DS-5300-30H) portion of ATCA delivered to the Air Force shall not exceed the final price of any DC-10-30 freighter type aircraft delivered during the same time period to any other aircraft customer, taking into account quantities, all contract terms, and relative customer requirements, with the exception that completed or near complete but unsold aircraft may be sold at a lesser net price provided the Government is given the right to buy such aircraft on similar terms.  The final price shall be a net price to include, as a minimum, base price, all discounts, and economic price adjustments.

b.  The Contractor further agrees and certifies that the prices charged for changes required in undelivered aircraft to meet FAA certification requirements and/or standard change notices procured by the Government shall not exceed the prices charged the Contractor's most favored customer for such items.  The Contractor agrees that if in a given calendar year the Contractor grants to any customer discounts from its published spare parts catalog prices, the Government or its designated logistics support contractor shall be given the highest discount granted for such spare parts procured to support the ATCA.

c.  In the event the Contractor is a party to a commercial contract, with the exception stipulated in a, wherein the final net price charged to commercial customers is less than that charged the Government for any of those items identified above, the Contractor shall reduce the Air Force price to a level consistent with the commercial price.  The Contractor shall provide a certification as to whether any price reductions are required for each calendar quarter in which there are ATCA deliveries.  The first such certification shall be made with the delivery of the first ATCA.

50

Ex.: 17; p.: 588

SECTION J - CONTINUED

18.  FOLLOW-ON PRICE WARRANTY

The parties hereby agree that contracts for ATCA beyond the instant contract shall be structured as follows: .

(1)  The Government will continue to receive Most Favored Customer status as defined in Clause J.17, "Most Favored Customer Warranty."

(2)  The cost of the ATCA peculiar recurring portion shall be substantiated by cost and pricing data and shall take into consideration the effects of line interruption on the learning curve benefits derived from the instant contract.


19.  ORDER OF PRECEDENCE

In the event of an inconsistency in this contract, unless otherwise provided herein, the inconsistency shall be resolved by giving precedence in the following order:  (1) the Schedule; (2) General Provisions; (3) the Detail Specifications; (4) the Statement of Work; and (5) the other provisions of the contract whether incorporated by reference or otherwise.


20.  NOTIFICATION OF CHANGES

a.  Definitions.  As used in this clause, (i) the term "Contracting Officer" does not include any  representative of the Contracting Officer whether or not such representative is acting within the scope of his authority, and (ii) the term "specifically authorized representative" means any person the Contracting Officer has so designated by written notice which shall refer to this subparagraph and shall be issued to the designated representative prior to his invocation of such authority (and a copy of which shall be provided to the Contractor).

b.  Notice.  The primary purpose of this clause is to obtain prompt reporting of Government conduct which the Contractor considers to constitute a change to this contract.  Except for changes identified as such in writing and signed by the Contracting Office, the Contractor shall notify the Administrative Contracting Officer in writing promptly, and in any event within 20 calendar days from the date that the Contractor identifies any Government conduct (including actions, inactions, and written or oral communications) which the Contractor regards as a change to the contract terms and conditions.  The Notice shall state, on the basis of the most accurate information available to the Contractor:

51

SECTION J – CONTINUED

(i) the date, nature, and circumstances of the conduct regarded as a change;

(ii) the name, function, and activity of each Government individual and contractor official or employee involved in or knowledgeable about such conduct;

(iii) the identification of any documents and the substance of any oral communication involved in such conduct;

(iv) in the instance of alleged acceleration of scheduled performance or delivery, the basis upon which it arose;

(v) the particular elements of contract performance for which the Contractor may seek an equitable adjustment under this clause, including:

(1) what contract line item(s) have been or may be affected by the alleged change;

(2) what labor or materials or both have been or may be added, deleted, or wasted by the alleged change;

(3) to the extent practicable, what delay and disruption in the manner and sequence of performance and effect on continued performance have been or may be caused by the alleged change;

(4) what adjustments to contract price, delivery schedule, and other provisions affected by the alleged change are estimated.

(vi) the Contractor's estimate of the time by which the Government must respond to the Contractor's notice to minimize cost, delay or disruption of performance.

c. Continued Performance. Following submission of the notice required by "b" above, the Contractor shall diligently continue performance of this contract to the maximum extent possible in accordance with its terms and conditions as construed by the Contractor, unless such notice reports a direction of the Contracting Officer or a communication from a specifically authorized representative of the Contracting Officer, in either of which events the Contractor shall continue performance in compliance therewith, provided, however, that if the Contractor regards the direction or communication as a change as described in "b" above, notice shall be given as therein provided. All directions, communications, interpretations, orders and similar actions of such specifically authorized representative shall be reduced to writing promptly and

Ex.: 17; p.: 590

SECTION J - CONTINUED

copies thereof furnished to the Contractor and to the Contracting
Officer. The Contracting Officer shall promptly countermand any action
which exceeds the authority of the specifically authorized representative.

   d. Government response. The Contracting Officer shall promptly,
and in any event within 20 calendar days after receipt of NOTICE, respond
thereto in writing. In such response the Contracting Officer shall either;

      (i) confirm that the conduct of which the Contractor gave notice
constitutes a change and when necessary direct the mode of further per-
formance,

      (ii) countermand any communication regarded as a change,

      (iii) deny that the conduct of which the Contractor gave notice
constitutes a change and when necessary direct the mode of further per-
formance; or

      (iv) in the event the Contractor's notice information is inade-
quate to make a decision under (i), (ii), or (iii) above, advise the
Contractor what additional information is required, and establish the
date by which it should be furnished and the date thereafter by which
the Government will respond.

   e. Equitable Adjustments. If the Contracting Officer confirms
the Government conduct effected a change as alleged by the Contractor,
and such conduct causes an increase or decrease in the Contractor's
cost of, or the time required for, performance of any part of the work
under this contract, whether changed or not changed by such conduct,
an equitable adjustment shall be made:

      (i) in the contract price or delivery schedule or both; and

      (ii) in such other provisions of the contract as may be affected;
and the contract shall be modified in writing accordingly. In the case
of drawings, designs or specifications which are defective and for which
the Government is responsible, the equitable adjustment shall include
the cost and time extension for delay reasonably incurred by the Contrac-
tor in attempting to comply with such defective drawings, designs or
specifications before the Contractor identified, or reasonably should
have identified, such defect. When the cost of property made obsolete
or excess as a result of a change confirmed by the Contracting Officer
pursuant to this clause is included in the equitable adjustment, the
Contracting Officer shall have the right to prescribe the manner of
disposition of such property. The equitable adjustment shall not include

53

Ex.: 17; p.: 591

SECTION J – CONTINUED

increased costs or time extensions for delay resulting from the Contractor's failure to provide notice or to continue performance as provided, respectively, in "b" and "c" above.

21. SPECIAL PROVISION RELATING TO GROUND AND FLIGHT RISK

a. The term "Contractor's Premises," as used in the clause of this contract entitled "Ground and Flight Risk" shall also mean airfields, runways, aprons, ramps, taxiways, and aircraft parking areas and ways adjoining any such premises at the following locations:

> Douglas Aircraft Company
> Headquarters – Long Beach Facility
> 3855 Lakewood Boulevard
> Long Beach, California  90846

> Douglas Aircraft Company
> Yuma Flight Operations
> P. O. Box 3990
> Yuma Arizona  85364

b. The term "in the open" as used in the clause of this contract entitled "Ground and Flight Risk," is hereby modified to include: Hush houses, test hangars, and comparable structures that are not roofed and completely enclosed on all sides with permanent walls and doors and any building not located on premises owned or leased by the Contractor or which the Contractor is entitled to use under any facilities contract with the Government.

22. WORK REQUESTS

a. Ordering Additional Work. The following procedure will be used to order additional work of the type covered by Item 0025 of the contract. Such work will be called for by the issuance of Work Requests. It is agreed that work requests may be issued at the sole option of the Contracting Officer during the term of the contract, and that the Government has no obligation under this paragraph a to issue any such work requests. Prior to issuance of a work request, the Contractor shall quote a price and delivery schedule for the work contemplated but shall not proceed with the work until the work request is approved by the

54

Ex.: 17; p.: 592

SECTION J – CONTINUED

Contracting Officer, provided; however, whenever the Contracting Officer determines that it is in the interest of the Government to not delay performance of the work until a price and schedule are submitted, he may specify in the work request that the Contractor is authorized to proceed forthwith. Within thirty (30) days after receipt of such order, and in every case prior to completion of the work called for therein, the parties shall negotiate a price and delivery schedule for the work ordered, and the work request shall be amended accordingly.

    b. Work requests issued under paragraph a above shall bear the number of this contract, be serially numbered, dated and signed by the Contracting Officer. They shall set forth the work to be performed and shall refer to the contract item pursuant to which the request was issued. They shall include, or be amended to include the price of the work and the delivery schedule therefore. In addition, work requests issued under paragraph a above shall cite the funds allotted for payment of the work requests issued under this clause. Failure to agree upon a reasonable price shall be considered a "dispute concerning a question of fact" within the meaning of the clause of this contract entitled "Disputes."

    c. Amendments to work requests may be issued subject to the same conditions as the original work request. The Contractor's concurrence as to the terms of the work request or amendment will be evidenced by signing the respective document. The term "work" as used herein includes both supplies and services to the extent covered by the referenced contract item.

    d. Work requests issued under paragraph a above shall be definitized on SF 30, Amendment of Solicitation/Modification of Contract. The SF 30 will be signed by both the Contractor and the Contracting Officer.

23.  SERIAL NUMBERS

    The Contractor shall serially number the aircraft called for hereunder with serial numbers provided by the Procuring Contracting Officer.

Ex.: 17; p.: 593

SECTION J – CONTINUED

24. FUEL, OIL, LUBRICANTS, AND OXYGEN

The Contractor shall furnish all ATCA aircraft fuel, oil, lubricants, and oxygen necessary (i) for the predelivery test program; (ii) for engine tests and flight acceptance tests as required; and (iii) for fly-away, in amounts designated by the ferry pilot necessary for flight between the contractor's plant and the Main Operating Base (MOB), with no air refueling missions enroute.

25. CONTROL OVER EMPLOYEES

The Contractor shall select, supervise and exercise control and direction over its employees under this contract. Contractor shall not supervise, direct or control the activities of Air Force personnel. Except as may be otherwise expressly specified herein, the Contractor shall provide all necessary administrative and other support to its employees.

26. INCORPORATION OF REFERENCED DOCUMENTS

All specifications, exhibits, drawings, amendments, or other documents which are referenced in this contract, whether or not attached, are hereby incorporated herein by reference.

27. FREQUENCY ALLOCATION AND AUTHORIZATION

a. Policy and procedures contained in AFM 100-31, as in effect on the date of the contract will be followed to obtain frequency allocation approval of electromagnetic devices and USAF Radio Frequency Authorization (RFA).

b. Frequency allocation proposals (DD Form 1494) and frequency authorization requirements (AF Form 3S) shall be prepared by the Contractor in accordance with Chapters 3 and 4 respectively of AFM 100-31 and an original and four (4) copies of each of the completed forms shall be forwarded to the Procuring Contracting Officer.

56

SECTION J – CONTINUED

28. DELIVERY OF SUPPLIES WITH DEVIATIONS OR SHORTAGES

a. The Procuring Contracting Officer may, at any time on or after the scheduled date of delivery of specific supplies, direct the Contractor to deliver such supplies with known deficiencies, deviations, or shortages. Said deficiencies, deviations or shortages shall be corrected unless otherwise directed in writing by the Procuring Contracting Officer. The Procuring Contracting Officer shall withhold an equitable amount from the payment for each item delivered hereunder pending completion of the required corrective action.

b. It is specifically agreed that the direction by the Procuring Contracting Officer for the Contractor to make delivery of supplies under the provisions of this part shall not be deemed "acceptance" of such supplies for the purpose of any provisions of the contract to the extent of such deficiencies, deviations or shortages.

29. RELEASE OF INFORMATION

It is the Air Force policy to encourage publication of scientific and technological advances and information developed under its contracts. Distribution or publication of classified and/or unclassified data shall be cleared with the Contracting Officer in advance of publication, and handled in accordance with AFR 80-45. Only such data or information can be released which has prior written approval obtained through the Contracting Officer.

30. PREPRODUCTION, START-UP AND NONRECURRING COSTS

The Contractor agrees that all preproduction, start-up and other nonrecurring costs as defined in ASPR 3-813 are included in the prices of Line Items 0001, 0003 and 0010, and that no such costs shall be charged to the Government in any other future procurement or other pricing action.

57

Ex.: 17; p.: 595

SECTION J – CONTINUED

31. ABSTRACTS OF NEW TECHNOLOGY

a. Delayed Delivery of Abstracts of New Technology (1972 JAN)

Whenever the Contractor is authorized under the Patent Rights Clause of this contract to file a United States Patent application claiming a "Subject Invention," and elects to do so within the time provided in such clause, the Contractor may delay delivery of the Abstract of New Technology until such time as the contractor delivers the completed disclosure of a copy of the patent application as required by the Patent Rights clause.

b. Delayed Dissemination of Abstracts of New Technology (1972 JAN)

When the Contractor, if authorized by the Patent Rights clause of this contract, has elected to file a domestic and/or foreign patent application, the Government may, upon request of the contractor, delay dissemination of any Abstract of New Technology for a period not to exceed one year. In exceptional circumstances, additional delay may be authorized upon a showing of good cause. (See Exhibits A-C, Data Item DI-A-3028/A).

32. GOVERNMENT FACILITIES

Except for the "Base Support" clause of the General Provisions, the Contractor shall provide all facilities required in the performance of this contract.

33. INDUSTRIAL PREPAREDNESS PLANNING (IPP)

The Contractor agrees to participate in IPP program when and if the ATCA program is selected for planning. ASPR Section 1, Part 22; AFR 78-13; AFR 78-17; and AFSC DID UA-256 applies.

58

Ex.: 17; p.: 596

SECTION J - CONTINUED

34.  SPECIAL PROVISION RELATING TO SUBCONTRACTING

Except as provided below, the contractor shall not be obligated to include in subcontracts the requirements of any General Provisions clause hereof.  The requirements shall be included in:

(1)  all subcontracts if the requirement is established by U.S. Law or Executive Order or regulation implementing U.S. Law or Executive Order, except that the contractor shall not be obligated to take any such action with respect to subcontracts entered into with subcontractors incorporated and located outside of the United States, its territories and possessions as to General Provision clauses entitled "Contract Work Hours Standards Act - Overtime Compensation", "Walsh-Healey Public Contracts Act", and "Equal Opportunity";

(2)  those subcontracts entered into completely or partially in regard to the ATCA peculiar requirements.

35.  MAINTENANCE/MODIFICATION AND/OR FLIGHT OPERATION REQUIREMENTS

a.  In the performance of this contract the contractor is responsible for the protection of property in his possession for which the Government has assumed the risk of damage, loss or destruction.  To meet this objective the contractor shall exercise his existing commercial practices and procedures to comply with:

(1)  The Maintenance/Modification requirements of AFSC/AFLC Regulation 66-24, dated 3 January 1972.

(2)  The flight operations requirements of AFR 55-22 dated 8 October 1971 and AFSC Sup 1 dated 8 March 1973, incorporated by reference.

(3)  The aircraft and flight line safety practices of Chapter 8 of AFR 127-101 dated 13 June 1975.

b.  The Air Force reserves the right to review the contractor's practices and procedures, for the purpose of verifying compliance with the provisions of this requirement.

59

Ex.: 17; p.: 597

SECTION J – CONTINUED

36.  SPARES ACQUISITION INTEGRATED WITH PRODUCTION

a.  This Spares Acquisition Integrated with Production (SAIP) Clause shall be implemented in accordance with the procedures set forth below.  The objectives of SAIP are to reduce the acquisition price of spare parts and improve logistic support by (1) concurrent ordering of certain selected spare parts with the end item in order to take advantage of quantity and production economies, and (2) securing firm proposal and establishing firm or not-to-exceed prices for spare parts to be supplied to the Government as investment material.

b.  For the purposes of this clause, only new design not common to commercial aircraft application parts shall be SAIP candidates.  SAIP candidates shall include design-stable components with high extended costs and shall comprise (1) 10-15% of peculiar spare parts count and (2) 70-80% of peculiar spare part requirments by cost.  Thirty days after exercise of each option, the Contractor will provide a recommended SAIP candidate list to the logistic support contractor (LSC). The Contractor shall notify the LSC of the leadtime away from the contractor's scheduled date of issuance of a production order for installs (including vendor items) for SAIP candidate items.  This notification shall include firm proposal or not-to-exceed prices.  The contractor shall allow the logistics support contractor to integrate his requirements with the manufacturer's orders at prices commensurate with the installs.

c.  Where the Contractor has knowledge that there are cost savings that can be affected by procurement of shipsets of LRUs as opposed to individual LRU procurement, the Contractor shall provide this information to the logistic support contractor and identify quantities of shipsets which must be procured to effect these economies.  Neither the Contractor nor his subcontractors shall be required to conduct special studies or incur additional costs in complying with this provision.

37.  SUPPLIES TO BE ACCORDED DUTY-FREE ENTRY

In accordance with Paragraph (a) of the clause hereof entitled "Duty-Free Entry for Certain Specified Items," the following supplies are hereby identified as supplies to be accorded duty-free entry:

Ex.: 17; p.: 598

SECTION J – CONTINUED

Tail Cone                                           Japan
Rudder and Stabilizer                               Italy
Fuselage Panels                                     Italy
Main Landing Gear Doors and Fillet                  Spain
Evacuation Slide Container                          Australia
Pressure Ducts                                      Australia
Horizon Indicator and Inverter                      France

38. WARRANTY AND SERVICE LIFE POLICY

Part I – Warranty

a. Subject to the limitations and conditions hereinafter set
forth, Contractor warrants that the aircraft structure, systems,
accessories, equipment, and all parts of the aircraft, whether instal-
led on the aircraft or as spare or replacement parts, delivered here-
under which have been manufactured by Contractor and by other manufac-
turers if made to detailed design and detailed specifications originated
by Contractor shall, at the time of delivery by Contractor, be free from:

(1) Defects in material and workmanship;

(2) Defects caused by installation by Contractor of any
article not manufactured by Contractor in a manner not in accordance
with the reasonable instructions of the manufacturer;

(3) Defects inherent in the design thereof, including defects
arising from selection by Contractor of materials or process of manufac-
ture, in view of the state of the art of the date of such design; and

(4) Defects arising from failure to conform to the Detail
Specification in effect at the time of delivery, except as to portions
thereof stated to be estimated or approximations or stated to be design
objectives.

b. Defects as defined in paragraph a of this Part I must become
apparent to the Government:

(1) As to defects defined only in subparagraphs (1), (2) and
(4) of paragraph a of this Part I, within sixty (60) months or five
thousand (5,000) flying hours, whichever first expires after delivery
of each aircraft or product.

61

Ex.: 17; p.: 599

SECTION J – CONTINUED

(2)  As to defects in subparagraph a(3) of this Part I, whether or not also constituting a defect under subparagraphs (1), (2) or (4) of paragraph a of this Part I, within twenty-four (24) months after delivery of each aircraft or product.

c.  The extent of Contractor's liability under this warranty as to defects in material or workmanship, defects arising from the selection of material or the process of manufacture, defects caused by faulty installation as aforesaid and such defects arising from such failure to conform to the Detail Specification as aforesaid, is limited to the repair of such defects  in the aircraft, aircraft structure or system or, at the Contractor's election where applicable, to the repair or replacement (with a similar item free from the defect in question) of any system accessory, equipment or part which is defective in any of such respects.

d.  The extent of Contractor's liability under this warranty as to defects inherent in the design as aforesaid is limited to the correction at its expense of all such defects in the aircraft, aircraft structure, system, accessory, equipment or part which is defective in design.  In the event such design defects become apparent and the Government gives Contractor due and timely notice thereof within the applicable period set forth in subparagraph f(5) of this Part I and Contractor is obligated hereunder to correct such defect, Contractor shall also make such correction in any aircraft purchased hereunder which shall not have been delivered to the Government, provided that Contractor shall not be responsible  nor deemed to be in default on account of any delays in performance of this contract due to any such corrections and, provided further, rather than accept a delay in delivery of such aircraft, the Government may elect to accept delivery and thereafter file a claim for a warranty correction hereunder as though the defect had become apparent immediately after delivery of such aircraft, and further, provided that nothing in this paragraph shall affect the Government's right to claim the same design defect with respect to any other delivered aircraft.

e.  Contractor, or the Government with the approval of Contractor, shall make the foregoing repairs, replacements and corrections with reasonable care and dispatch in order that the aircraft, system, accessory, equipment or part involved may not be kept out of service longer than necessary.  Contractor shall, within fifteen (15) calendar days following receipt of the Government's notification of a defect (as required in subparagraph f(5) of this Part I) accompanied by the Government's request that it be permitted in such instance to make repair, replacement or correction, notify the Government of approval or disapproval of such request.  Failing such timely notice by Contractor, approval of such request shall be deemed to have been given by

62

Ex.: 17; p.: 600

F33700-78-C-0001

SECTION J – CONTINUED

Contractor. Should the Government be permitted to make any of the fore-
going repairs, replacements and corrections, Contractor will establish
a "standard" for the labor hours to repair such defect and will reimburse
the Government for such "standard" hours or for the Government's or
logistics support Contractor's actual labor hours to repair such defect,
whichever is less, at the Government's or logistics support Contractor's
direct labor rate plus a burden of fifty percent (50%) of said direct
labor rate; provided, however, that in no event shall such amount exceed
the applicable manufacturing direct labor rate of the Douglas Aircraft
Company, plus a burden rate of one hundred percent (100%) of said manu-
facturing rate. Disassembly of the aircraft to correct the defects, removal
of the defective or faulty structure, system, accessory, equipment or
part and installation of the corrected or new structure, system, acces-
sory, equipment or new part and reassembly of the aircraft shall be at
Contractor's expense (except as to inspection, checkout and test effort)
to the extent of and in accordance with the formula set forth above unless
such work is performed by Contractor at its expense at its factory at
Long Beach, California, or by Contractor at its expense at such other
place as may be mutually agreed upon by Contractor and the Government.
(When temporary or interim repairs, replacements and corrections are
accomplished by the Government and not proposed or requested by Contractor,
Contractor's liability to the Government hereunder shall not exceed the
furnishing of a permanent repair, replacement or correction or the mone-
tary equivalent thereof.) All transportation, costs of sending and
returning aircraft and sending defective accessories, equipment or parts
to the Contractor's factory shall be borne by the Government. The trans-
portation costs for return to the Government of the repaired, replaced,
or corrected accessories, equipment or part shall be borne by the Contrac-
tor. No approval by Contractor under this paragraph e shall constitute
a determination that a defect, in fact, exists.

    f.  Contractor shall, as to each defect, be relieved of all obli-
gation and liability under this warranty if:

        (1)  The aircraft is operated with any accessory, equipment
or part not specifically approved by Contractor unless the Government
furnishes reasonable evidence that such accessory, equipment or part
was not a cause of the defect;

        (2)  The aircraft shall not have been operated or maintained
in accordance with Contractor's operating and maintenance instructions
furnished under this Contract's Data Requirements List (CDRL) unless
the Government furnishes reasonable evidence that such operation or
maintenance, as the case may be, was not a cause of the defect;

63

SECTION J - CONTINUED

(3) The aircraft shall not have been operated under normal ATCA mission use unless the Government furnishes reasonable evidence that such operation was not a cause of the defect;

(4) The aircraft shall have been repaired, altered or modified without Contractor's approval or if the aircraft shall have been operated subsequent to involvement in an accident unless the Government furnishes reasonable evidence that the accident or such repair, alteration, modification or operation after the accident was not a cause of the defect; provided, however, that this limitation, insofar as it relates to repairs and accidents, shall not be applicable to routine repairs or replacements, if such repairs or replacements are made with suitable material and according to standard practice and engineering or to operation after minor accidents;

(5) The Government does not (i) report the defect in writing or by telegram to Contractor's Warranty Administrator at its factory in Long Beach, California, within sixty (60) calendar days following such defect becoming apparent to the Government as provided in paragraph b of this Part I, and (ii) return the defective or faulty aircraft, accessory, equipment or part to said factory (or, if return to Contractor's factory is not feasible and Contractor so agrees in advance in writing, to the Government's base repair shop or other appropriate facility in the United States) within sixty (60) calendar days following the end of the applicable period of time specified in paragraph b of this Part I, or within sixty (60) calendar days following such defect becoming apparent, whichever is earlier, and further provided that, if for reasons beyond the Government's control, return of the item to Contractor's factory is not possible within said sixty (60) calendar day period and if the Government so notifies Contractor in writing, the said sixty (60) calendar day period will be waived but the Government must return the item to Contractor's said factory if, as and when such return does become feasible;

(6) The Government does not submit reasonable proof to Contractor within sixty (60) calendar days after the defect becomes apparent (except when such period is waived) that the defect is due to a matter embraced within the Contractor's warranty hereunder. Contractor shall approve or disapprove the Government's substantiation of its warranty claim in writing within sixty (60) calendar days of receipt thereof, and in the event of disapproval, the Contractor shall state its reasons therefor.

64

Case 3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 69 of 203
Case MDL No. 875 Document 6666-1 Filed 01/28/11 Page 69 of 203

F33700-78-C-0001

SECTION J - CONTINUED

With respect to matters made the subject of Contractor's approval under subparagraphs (1) and (4) of this paragraph f, Contractor's approval or disapproval thereof shall be made in writing to the Government within sixty (60) calendar days after the Government's timely written notice to Contractor's Warranty Administrator is received by Contractor at its Long Beach plant requesting approval and referring to this paragraph f.  In the event of disapproval, Contractor shall set forth the reasons therefor in its statement of disapproval.  Contractor's failure to deliver to the Government a written statement of approval or disapproval within such sixty (60) calendar day period shall (without extending or increasing Contractor's obligations hereunder in any way) constitute approval by Contractor of the subject matter of the particular request involved.

g.  Normal wear and tear and the need for regular overhaul shall not constitute a defect or failure under this warranty.

h.  When an aircraft, accessory, or item of equipment, or other deliverable item under this contract, has been corrected, repaired or replaced pursuant to the conditions of this provision, the period of the Contractor's warranty under this Part I with respect to such correction, repair, or replacement, whichever may be the case, shall be the same as those set forth for the original delivered item.

i.  None of the warranties made by Contractor with respect to any aircraft, product or article delivered under this contract shall survive acceptance by the Government, except to the extent and upon the conditions specifically set forth in paragraph a through h of this Part I, inclusive, and the Part IV of this clause entitled "General."

Part II - Service Life Policy

In addition to the warranties set forth in the Part I of this clause entitled "Warranty," Contractor agrees that should DC-10 fleetwide or repetitive failure occur in any of the covered components, then the provisions of this Part II shall apply.

a.  Definitions

For the purposes of this Part II, the following definitiⸯ apply:

(a)  Failure means any  breakage of, or defect ⸯ component (except for corrosion as a result of improper maⸯ cedures and practices) which has occurred and which can reⸯ expected to occur on a repetitive or DC-10 fleetwide baⸯ

Ex.: 17; p.: 603

Case MDL No. 875 - Document 6666-1 Filed 01/28/11 Page 68 of 203
Case 3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 68 of 203

F33700-78-C-0001

SECTION J - CONTINUED

(b) Airframe component means any of the primary structural elements of the wing, fuselage and vertical and horizontal empennage of the aircraft as specified in Exhibit "A" attached hereto.

(c) Landing gear component means any of those primary static structural elements which are part of the landing gear installed in an aircraft at the time of delivery thereof to the Government, specified in Exhibit "B" attached hereto.

(d) Covered component means any airframe component or landing gear component.

(e) Landing means any normal touchdown wherein tires contact the ground including all touch and go's.

b. Service Life Policy

Should a failure occur in any covered component of an aircraft within the following periods (whichever is applicable):

(a) As to any airframe component of an aircraft, within thirty thousand (30,000) flying hours or within ten (10) years after delivery of such aircraft to the Government, whichever shall first expire.

(b) As to any landing gear component of an aircraft, prior to the accumulation by such component of an aggregate of twenty thousand (20,000) aircraft landings or thirty thousand (30,000) flying hours involving the use of such component or within ten (10) years after delivery of such component to the Government, whichever shall first occur.

Contractor will, at the price hereinafter provided and as promptly as practicable, either (i) design and furnish to the Government a correction for such failed covered component and provide any parts required for such correction (exclusive of standard parts) or (ii) furnish to the Government a replacement covered component for such failed component for installation of such correction or component by the Government in such aircraft or the affected landing gear.

c. Price

Any part or covered component which Contractor is required to furnish to the Government under this Policy in connection with correction or replacement of a covered component shall be furnished to the Government at a price determined in accordance with the following formula:

66

SECTION J – CONTINUED

$$P = \frac{CT}{N}$$

P = Price to the Government

C = The Contractor's then current spare parts sales price

As to airframe components:

T = The total flying time in hours during which the airframe component, which is the subject of a failure, has been used, and

N = Thirty thousand (30,000),

As to landing gear components, either:

T = The total number of airplane landings which have been accumulated by the landing gear component, which is the subject of a failure, and

N = Twenty thousand (20,000),

     or

T = The total flying time in hours during which the landing gear component, which is the subject of a failure, has been used, and

N = Thirty thousand (30,000),

whichever yields the higher fraction.

    d. General Conditions and Limitations

     (1) The return to Contractor, if such return is practicable, of any covered component which is the subject of a failure necessary for redesigning studies, shall be at the Government's expense. Any required disassembly and reassembly of the aircraft or landing gear, or parts of either thereof, removal of the covered component which is the subject of a failure and reassembly and installation of the corrected or replacement covered component, shall be at the Government's expense, and if such disassembly, reassembly and installation is accomplished by Contractor at the Government's request, the prices to be charged for any such services shall not exceed the prices charged to other commercial customers of Contractor during substantially the same time period.

Ex.: 17; p.: 605

F33700-78-C-0001

Case MDL No. 875 - Document 6666-1  Filed 01/28/11  Page 71 of 403
Case 3:11-cv-00061-JSW Document 71  Filed 01/24/11  Page 70 of 203

SECTION J - CONTINUED

(2)  Contractor's obligations under this Policy are conditioned upon (i) the submission of reasonable proof to Contractor that the failure is embraced within the scope of this Policy; (ii) with respect to landing gear components, the maintenance by the Government of log books and other historical records available for inspection by Contractor and adequate to enable determination of whether the defect or failure claimed is covered by this Service Life Policy and, if so, the amount of the payment to be made to Contractor hereunder and adequate to enable determination that the servicing, overhaul, maintenance and modification of any such landing gear component or related equipment has been accomplished in accordance with subparagraphs (4) and (5) of this paragraph d and (iii) the Government must have reported the failure, breakage or defect of a covered component in writing or by telegram to Contractor's Warranty Administrator at its factory in Long Beach, California, within sixty (60) calendar days after any failure, breakage or defect in a covered component becomes evident.

(3)  The provisions of paragraph f (except for subparagraphs (5) and (6) thereof) of the Part I of the clause entitled "Warranty," are incorporated herein by this reference and shall condition Contractor's obligations under this Policy with respect to any covered component.

(4)  Contractor's obligations under this Policy shall not apply to any covered component which has not been correctly modified in accordance with Contractor's mandatory or recommended Service Bulletin specifications or instructions furnished by the Contractor to the Government provided, however, that:

(a)  failure to correctly modify is the proximate cause of the failure; and

(b)  the Government received the Service Bulletin in sufficient time to incorporate the modification.

(5)  Contractor's obligations under this Policy shall not apply to any landing gear component with respect to which there has been the failure to either (i) correctly service, maintain and overhaul such landing gear component on the landing gear or the aircraft it is at any time apart of, in accordance with the applicable Contractor's instructions regarding such servicing, maintenance and overhaul, including, without limitation, the Contractor maintenance manuals, overhaul manuals and special instructions applicable to landing gears and their component parts or (ii) periodically service and maintain such landing gear component, landing gear and aircraft on a scheduled basis in accordance with recognized standards for scheduled air passenger carriers, subject to regulations by the Federal Aviation Administration.

Ex.: 17; p.: 606

e.  Nature of Agreement

This Service Life Policy is neither a warranty, performance guarantee nor an agreement to modify the aircraft, airframe components or landing gear components to conform to new developments hereafter occurring in the state of airframe or landing gear design and manufacturing art.  Contractor's obligation herein is to make only those corrections to the airframe components and landing gear components or furnish replacement therefor as provided in this Policy.

f.  Assignment of Rights

The Government's rights under this Part II, except as set forth elsewhere in this provision, shall not be assigned, sold, leased, transferred or otherwise alienated by operation of law or otherwise, without prior Contractor consent thereto given in writing.  Any unauthorized assignment, sale, lease, transfer or other alienation of the Government's rights under this Policy shall immediately void this Policy in its entirety.

Part III - Vendor Warranties and Indemnity Against Patent Infringement

a.  The contractor shall make reasonable efforts to obtain through formal agreements with the manufacturers of accessories and items of equipment installed on the aircraft to the extent not covered by the Contractor's warranty and the Contractor's indemnity against infringement of patents and other proprietary rights, respectively, favorable warranties, indemnities against infringement of patents and other proprietary rights.  The Contractor shall promptly advise the Government and Logistics Support Contractor as to the character and extent of protection afforded the Government by such agreements of indemnity and warranties so obtained and provide them, with all acquired rights, to the Government and Logistics Support Contractor.  The Contractor shall contractually require that all vendor warranties conveyed to the Government can be administered by the Logistics Support Contractor.

b.  The Contractor shall assist the Government in the resolution of any problems associated with all vendor warranties provided.  In the event of a default by any such manufacturer in the performance of any material obligation  under any applicable warranty obtained by the contractor from such manufacturer pursuant to this Provision, or in the event of a disclaimer of responsibility by such manufacturer for any defect constituting a breach of any such warranty and upon notice thereof to the Contractor, the warranties and all other terms and conditions of the Provision hereof entitled "WARRANTY AND SERVICE LIFE POLICY" shall become applicable to any accessories or items of equip involved in the same had been manufactured by the contractor or its detailed design, except that the warranty periods as to such accessories or items of equipment shall be the lesser of (i) the warranty

69

Ex.: 17; p.: 607

SECTION J – CONTINUED

period as set forth in the applicable warranty of such manufacturer or (ii) the applicable warranty period set forth in the Provision hereof entitled "Warranty and Service Life Policy" and the Government agrees to assign to the contractor, and the contractor shall be subrogated to, all of the Government's rights against such manufacturer with respect to and arising by reason of such default or disclaimer, provided that this paragraph c shall not be applicable to engines or their manufacturer.

Part IV – General

a. THE WARRANTY AND SERVICE LIFE POLICY PROVIDED IN THIS CONTRACT, AND THE OBLIGATIONS AND LIABILITIES OF THE CONTRACTOR UNDER SAID WARRANTY AND SERVICE LIFE POLICY, ARE EXCLUSIVE AND IN LIEU OF, AND THE GOVERNMENT WAIVES, ALL OTHER REMEDIES, WARRANTIES, GUARANTEES OR LIABILITIES EXPRESS OR IMPLIED, WITH RESPECT TO EACH AIRCRAFT, PRODUCT AND ARTICLE DELIVERED HEREUNDER, ARISING BY LAW OR OTHERWISE (INCLUDING, WITHOUT LIMITATION, ANY OBLIGATION OR LIABILITY OF THE CONTRACTOR ARISING FROM NEGLIGENCE OR WITH RESPECT TO FITNESS, MERCHANTABILITY, LOSS OF USE, REVENUE OR PROFIT OR CONSEQUENTIAL DAMAGES). THIS WARRANTY OR SERVICE LIFE POLICY SHALL NOT BE EXTENDED, ALTERED OR VARIED, EXCEPT BY A WRITTEN INSTRUMENT SIGNED BY THE CONTRACTOR AND THE GOVERNMENT. THIS PROVISION SHALL NOT LIMIT THE GOVERNMENT'S RIGHTS OR THE CONTRACTOR'S OBLIGATIONS AS SPECI- FIED IN THE CLAUSE ENTITLED "INSPECTION" EXCEPT THAT, WITH REGARD TO AIRCRAFT, THE GOVERNMENT'S RIGHTS BECAUSE OF LATENT DEFECTS ARE LIMITED IN THAT THE CONTRACTOR MUST BE NOTIFIED OF ANY LATENT DEFECT IN SUCH AIRCRAFT WITHIN THE TIME PERIOD SPECIFIED IN PART I PARAGRAPHS b(1) OR (2) AS THE CASE MAY BE.

b. All warranties specified in Part I above shall also apply to Support Equipment and Configuration alternate kits delivered pursuant to this contract.

c. The Government may, without contractor approval, designate the ATCA Logistics Support Contractor to act in its behalf in all instances where "the Government" is referenced above. The Government shall advise the contractor in writing of any such designation.

d. In all instances above where notification must be given to the contractor after a defect or other condition becoming apparent, evident, etc., this shall mean becoming apparent, evident, etc., to the Contrac- ting Officer (CO), or the Logistics Support Contractor, where such delegation has been made.

Ex.: 17; p.: 608

F33700-78-C-0001

SECTION J - CONTINUED

EXHIBIT "A"

TO PROVISION J-38 WARRANTY AND SERVICE LIFE POLICY

The following specific airframe items are subject to the provisions
of Part II of the clause entitled "WARRANTY AND SERVICE LIFE POLICY:"

PYLONS - WING AND CENTER ENGINE

    Pylon engine mount fittings
    Pylon engine mount bulkheads
    Spars
    Side skin and skin stiffeners
    Pylon wing attach angle and center engine support angles
    Pylon wing attach bulkhead and center engine attach bulkhead

WINGS

    Front and rear spars
    Upper and lower stringers and plating between spars
    Landing gear bulkhead and fitting
    Dihedral and sweepback bulkhead
    Flat support ribs in the wing
    Wing to fuselage attach tee

FUSELAGE

    Frames, plating, stringers and pressure bulkheads but excluding
    all doors

    Fuel tank pressure bulkheads and panels
    ARO station sighting, tunnel pressure panel
    ARB support fitting
    UARRSI pressure panel

EMPENNAGE

    Vertical spars and plating between spars
    Aft fuselage vertical stabilizer carry-through structure
    Horizontal stabilizer spars, integral plating between spars

Ex.: 17; p.: 609

SECTION J - CONTINUED

EXHIBIT "B"

TO PROVISION J-33 WARRANTY AND SERVICE LIFE POLICY

The following specific landing gear components are subject to the provisions of Part II of the clause entitled "WARRANTY AND SERVICE LIFE POLICY."

MAIN GEAR AND CENTER LINE GEAR

        Bogie beam and axles
        Shock strut outer cylinder
        Shock strut piston
        Orifice support tube

NOSE GEAR

        Strut piston and axle
        Strut outer cylinder
        Orifice support tube

Ex.: 17; p.: 610

SECTION J - CONTINUED

39.  SCHEDULE IMPLEMENTATION OF THE BASE SUPPORT DIVISION

   With reference to the "Base Support" clause of the General Provisions, the following base support will be utilized:

   (1)  Support required for performance of the Operational Test and Evaluation (OT&E) effort to be determined upon identification of the Main Operating Base (MOB) at which OT&E shall be accomplished.

40.  LOS ANGELES CITY LICENSE TAXES (1974 JUN)

Notwithstanding any other provisions of this contract:

   a.  The contract price includes allocable Los Angeles City License taxes, including those taxes (hereinafter referred to as "additional taxes") resulting from the application of principles expressed by the Los Angeles City Attorney in his opinion dated 2 March 1960.  If, after the contract date, the contractor is not required to pay or bear the burden, or obtains a credit or refund of all or a portion of said taxes from the City of Los Angeles, the contract price shall be decreased by the amount of such relief or refund allocable to this contract, or that amount shall be paid to the Government, as the Contracting Officer directs.  The contract price shall be similarly decreased if the contractor, through his fault or negligence or failure to follow instructions of the Contracting Officer as provided in b below, is required to pay or bear the burden or does not obtain a refund of any such taxes.  Interest paid or credited to the contractor incident to a refund of these taxes shall inure to the benefit of the Government to the extent that such interest was earned after the contractor was paid or reimbursed by the Government for these taxes.

   b.  The contractor shall comply with the instructions of the Contracting Officer in order to obtain a reduction, credit or refund of Los Angeles City License Taxes, and the contract price shall be equitably adjusted to cover the costs of such compliance, including reasonable attorneys' fees arising therefrom.

   c.  The contractor shall maintain accurate records showing the amount of Los Angeles License Taxes and specifically the amount of additional taxes included in the contract price.

73

Ex.: 17; p.: 611

SECTION K – CONTRACT ADMINISTRATION DATA

1.  Accounting and Appropriation Data

    ACRN        Fund Citation
     AA         577 3010 117 6340 10ATCA 103000 000 27222F S503000 F03000

2.  Purchase Request Number

    AFALD-78-00001

3.  Information for Administrative and Paying Office

    a.  Purchasing Office Representative:  Captain Curtis N. Newill III

    b.  Symbol of Purchasing Office:  AFALD/YTPP

    c.  Telephone Number:  (513) 255-4654/4655

74

Ex.: 17; p.: 612

PART III – SECTION L

GENERAL PROVISIONS

FIXED PRICE SUPPLY CONTRACT

1. The provisions of the contract clauses set forth in the following paragraphs of the Armed Services Procurement Regulation (ASPR) 1976 Edition are incorporated into this contract by reference with the same force and effect as though herein set forth in full:

| Clause Number | ASPR Reference | Clause Title | Date of Clause |
|---|---|---|---|
| 1 | 7-103.1 | Definitions | 1962 Feb |
| 2 | *7-103.2 | Changes | 1958 Jan |
| 3 | 7-103.3 | Extras | 1949 Jul |
| 4 | 7-103.4(a) | Variation in Quantity | 1949 Jul |
| 5 | 7-103.5(a) | Inspection | 1958 May |
| 6 | 7-103.6 | Title and Risk of Loss | 1968 Jun |
| 7 | 7-103.7 | Payments | 1958 Jan |
| 8 | 7-103.8 | Assignment of Claims | 1962 Feb |
| 9 | 7-103.9 | Additional Bond Security | 1949 Jul |
| 10 | 7-103.10(a) | Federal, State and Local Taxes | 1971 Nov |
| 11 | 7-103.11 | Default | 1969 Aug |
| 12 | 7-103.12(a) | Disputes | 1958 Jan |
| 13 | 7-103.13(a) | Renegotiation | 1959 Oct |
| 14 | 7-103.14 | Discounts | 1968 Jun |
| 15 | 7-103.16(a) | Contract Work Hours and Safety Standards Act – Overtime Compensation | 1971 Nov |
| 16 | 7-103.17 | Walsh-Healey Public Contracts Act | 1958 Jan |
| 17 | 7-103.18(a) | Equal Opportunity | 1976 Jul |
| 18 | 7-103.19 | Officials Not to Benefit | 1949 Jul |
| 19 | 7-103.20 | Covenant Against Contingent Fees | 1958 Jan |
| 20 | *7-103.21(b) | Termination for Convenience of the Government | 1974 Oct |
| 21 | 7-103.22 | Authorization and Consent | 1964 Mar |
| 22 | 7-103.23 | Notice and Assistance Regarding Patent and Copyright Infringement | 1965 Jan |
| 23 | 7-103.24 | Responsibility for Inspection | 1968 Sep |
| 24 | 7-103.25 | Commercial Bills of Lading Covering F.O.B. Origin Shipments | 1969 Dec |
| 25 | 7-103.26 | Pricing of Adjustments | 1970 Jul |

*See paragraph 2 for implementations, changes and/or deletions

Ex.: 17; p.: 613

SECTION L - CONTINUED

| Clause Number | ASPR Reference | Clause Title | Date of Clause |
|---|---|---|---|
| 26 | 7-103.27, | Listing of Employment Openings | 1975 Jun |
| 27 | 7-104.3 | Buy American Act | 1964 May |
| 28 | 7-104.4 | Notice to the Government of Labor Disputes | 1958 Sep |
| 29 | ***7-104.5 | Patent Indemnity | 1975 Jun |
| 30 | 7-104.6 | Filing of Patent Applications | 1969 Dec |
| 31 (DPC 76-7) | 7-104.9(a) | Rights in Technical Data and Computer Software | 1977 Apr |
| 32 | *7-104.9(h) | Technical Data - Withholding of Payment | 1976 Jul |
| 33 | 7-104.9(1) | Identification of Technical Data | 1975 Mar |
| 34 | 7-104.9(n)(1) | Data Requirements | 1972 Apr |
| 35 | 7-104.9(p) | Restrictive Markings on Technical Data | 1975 Mar |
| 36 | 7-104.12 | Military Security Requirements | 1971 Apr |
| 37 | 7-104.14(a) | Utilization of Small Business Concerns | 1958 Jan |
| 38 | 7-104.14(b) | Small Business Subcontracting Program | 1975 Oct |
| 39 | 7-104.15 | Examination of Records by Comptroller General | 1975 Jun |
| 40 | 7-104.16 | Gratuities | 1952 Mar |
| 41 | 7-104.17 | Convict Labor | 1975 Oct |
| 42 | 7-104.18 | Priorities, Allocations and Allotments | 1975 Oct |
| 43 | 7-104.20(a) | Utilization of Labor Surplus Area Concerns | 1970 Jun |
| 44 | 7-104.20(b) | Labor Surplus Area Subcontracting Program | 1970 Jun |
| 45 | 7-104.21(a) | Limitation on Withholding of Payments | 1958 Sep |
| 46 | 7-104.22 | Equal Opportunity Pre-Award Clearance of Subcontracts | 1971 Oct |
| 47 (DPC 76-7) | 7-104.23(a) | Subcontracts | 1977 Apr |
| 48 | *7-104.24(a) | Government Property (Fixed Price) | 1968 Sep |
| ~~49~~ | ~~**7-104.28~~ | ~~Quality Program~~ | ~~1967 Aug~~ |
| 50 | **7-104.29(a) | Price Reduction for Defective Cost or Pricing Data | 1970 Jan |
| ~~51~~ | ~~*7-104.29(b)~~ | ~~Price Reduction for Defective Cost or Pricing Data - Price Adjustments~~ | ~~1970 Jan~~ |

 *See paragraph 2 for implementations, changes and/or deletions
 **Applicable to ATCA peculiar requirements only
***Applicable to Basic DC-10 aircraft only

Ex.: 17; p.: 614

F33700-78-C-0001

## SECTION L - CONTINUED

| Clause Number | ASPR Reference | Clause Title | Date of Clause |
|---|---|---|---|
| 52 (DPC 76-7) | 7-104.32 | Duty-Free Entry - Canadian Supplies | 1977 Apr |
| 53 | *7-104.33 | Inspection System | 1967 Aug |
| 54 | 7-104.35(a) | Progress Payments for other than Small Business Concerns | 1974 Apr |
| 55 | *7-104.35(b) | Progress Payments for Small Business Concerns | 1973 Sep |
| 56 | 7-104.36(a) | Utilization of Minority Business Enterprises | 1971 Nov |
| 57 | 7-104.36(b) | Minority Business Enterprises Subcontracting Program | 1971 Nov |
| 58 | **7-104.37 | Required Source for Jewel Bearings | 1973 Nov |
| 59 | **7-104.38 | Required Sources for Miniature and Instrument Ball Bearings | 1971 Jul |
| 60 | 7-104.39 | Interest | 1972 May |
| 61 | 7-104.40 | Competition in Subcontracting | 1962 Apr |
| 62 | 7-104.41(a) | Audit by Department of Defense | 1975 Jun |
| 63 | **7-104.42(a) | Subcontractor Cost or Pricing Data | |
| 64 | *7-104.42(b) | Subcontractor Cost or Pricing Data Price Adjustments | 1970 Jan |
| 65 | *7-104.45(a) | Limitation of Liability | 1974 Apr |
| 66 | 7-104.45(b) | Limitation of Liability - Major Items | 1974 Apr |
| 67 | 7-104.48 | New Material | 1965 Jan |
| 68 | 7-104.49 | Government Surplus | 1965 Jan |
| 69 | 7-104.62 | Material Inspection and Receiving Report | 1969 Dec |
| 70 | 7-104.69 | F.O.B. Point for Delivery of Government-Furnished Property | 1968 Jun |
| 71 | 7-104.70 | F.O.B. Origin | 1973 Apr |
| 72 | 7-104.72 | F.O.B. Origin - Minimum Size of Shipments | 1968 Jun |
| 73 | 7-104.85 | F.O.B. Origin - Government Bills of Lading and Mailing Indicia | 1973 Apr |
| 74 | 7-104.73 | Loading, Blocking, and Bracing of Freight Car Shipments | 1975 Oct |
| 75 | 7-104.74 | Shipments to Ports - Clearance and Documentation Requirements | 1974 Apr |
| 76 | *7-104.71 | F.O.B. Destination | 1969 Apr |

*See paragraph 2 for implementations, changes and/or deletions
**Applicable to ATCA peculiar requirements only

Ex.: 17; p.: 615

SECTION L – CONTINUED

| Clause Number | ASPR Reference | Clause Title | Date of Clause |
|---|---|---|---|
| 77 | *7-104.75 | Diversion of Shipment Under F.O.B. Destination Contracts | 1971 Nov |
| 78 | *7-104.76 | F.O.B. Destination – Evidence of Shipment | 1963 Jun |
| 79 | 7-104.77(f) | Government Delay of Work | 1968 Sep |
| 80 | 7-104.79(a) | Safety Precautions for Ammunition and Explosives | 1970 Sep |
| 81 | 7-104.81 | Accident Reporting and Investigation Involving Aircraft, Missiles and Space Launch Vehicles | 1969 Jan |
| 82 | 7-104.82 | Payment of Interest on Contractors' Claims | 1976 Jul |
| 83 | **7-104.83(a) | Cost Accounting Standards | 1975 Feb |
| 84 | 7-104.93(a) | Preference for Domestic Specialty Metals (Major Programs) | 1974 Apr |
| 85 | *7-104.93(b) | Preference for Domestic Specialty Metals | 1972 Nov |
| 86 | *7-105.3(c) | Stop Work Order | 1971 Apr |
| 87 | 7-105.4 | Report of Shipment (Repship) | 1968 Jun |
| 88 | 7-302.23(b) | Patent Rights-Retention by the Contractor (Long Form) | 1975 Aug |
| 89 | **7-104.83(b) | Administration of Cost Accounting Standards | 1975 Mar |
| 90 | 7-103.28 | Employment of the Handicapped | 1975 Oct |
| 91 | 7-103.29 | Clean Air and Water | 1975 Oct |
| 92 | 7-104.10 | Ground and Flight Risk | 1975 Oct |
| 93 | **7-104.44(a)(1) | Value Engineering Incentive DPC 76-5 | 1977 Aug |
| 94 | 7-104.64(a) | Recovery of Nonrecurring Costs on Foreign Commercial Sales | 1969 Nov |
| 95 | 7-104.26 | Special Test Equipment | 1973 Apr |
| 96 | 7-104.61 | Frequency Authorization | 1966 Oct |
| 97 | 7-104.51 | Production Progress Report | 1971 Apr |
| 98 | **7-104.46 | Required Sources for Precision Components for Mechanical Time Devices | 1971 Aug |
| 99 | 7-104.9(m) | Deferred Ordering of Technical Data and Computing Software | 1974 Nov |
| 100 | **7-104.9(k) | Rights in Technical Data – Major Systems and Subsystems Contracts | 1971 Nov |
| 101 | 7-104.63 | Protection of Government Buildings, Equipment and Vegetation | 1968 Feb |
| 102 | 7-104.31(a) | Duty-Free Entry for Certain Specified Items | 1971 Feb |
| 103 | 7-104.11(a) | Excess Profit | 1957 Jun |

*See paragraph 2 for implementations, changes and/or deletions
**Applicable to ATCA peculiar requirements only

Ex.: 17; p.: 616

SECTION L – CONTINUED

2. The following implementations, changes and/or deletions are hereby made to the clauses referenced in 1 above:

a. Clause 48 – Government Property (Fixed Price) – Alternate paragraph (g) as set forth in ASPR 7-104.24(c), is applicable to this contract.

b. Clause 56 – Utilization of Minority Business Enterprises – Not applicable unless this contract is for more than $10,000.00.

c. Clauses 49, 51, 53, 55, 64, 65, 76, 77, 78 and 85 are deleted.

d. Clause 2 – Changes – "30 days" appearing therein is revised to read "45 days".

e. Clauses 20 and 86 – Termination for Convenience of the Government and Stop Work Order, respectively – Add variation "Notwithstanding anything elsewhere in this contract to the contrary, the Government agrees to recognize in any negotiated equitable adjustments disruption costs incurred by the contractor as a result of termination or stop work orders hereunder which impact on the contractor's established production line."

f. Clause 32 – Technical Data - Withholding of Payment – For contract Options 2, 3, 4, 5, and 6 set forth in Schedule Provision J.8, "Options". "Ten percent (10%)" is deleted from Paragraphs (a) and (b) and "one percent (1%)" is added in lieu thereof. "Ninety percent (90%)" is deleted from Paragraph (b) and "ninety-nine percent (99%)" is added in lieu thereof.

3. MILITARY STANDARD TRANSPORTATION AND MOVEMENT PROCEDURES (MILSTAMP)

a. DOD MILSTAMP Implementation (DOD Regulation 4500.32-R) prescribes uniform procedures and documents for the control of shipments moving wholly or in part within the Department of Defense Transportation Syst. (LOGAIR, MAC, MSTS, QUICKTRANS). Minimum requirements consist of the u d and preparation of the following:

(1) The assignment of a Transportation Control Number (TCN).

(2) DD Form 1384, "Transportation Control and Movement Docu A multi-purpose document which is used as a basic movement and contr document, terminal handling document (e.g., Dock Receipt), cargo man or tracing document.

79

SECTION L – CONTINUED

(3) DD Form 1385, "Cargo Manifest" (Air and Surface). A multi-purpose manual or mechanized form for use in listing air or surface manifest data.

(4) DD Form 1387, "Military Shipment Label." The shipping address label to be used for transportation marking in accordance with the edition of MIL-STD-129 in effect on the date of this contract.

(5) DD Form 1387-1, "Military Shipping Tag." The shipping tag used for transportation marking in accordance with the edition of MIL-STD-129 in effect on the date of this contract.

(6) DD Form 1387-2, "Special Handling Data/Certification." A document prepared by the shipper for all shipments to be routed via military air transportation or commercial air augmentation which require special handling and/or certification in accordance with MIL-STD-129, in effect on the date of this contract.

(7) General Purpose Punch Cards. Used for all mechanized MILSTAMP formats where specific formats have not been prescribed herein.

b. The forms and formats prescribed by this clause constitute a family of documents required for movement of cargo into and through the Defense Transportation System (DTS).

c. The contractor shall prepare and distribute such documents in accordance with MILSTAMP criteria. In the event the contractor requires instruction and/or assistance in connection therewith, he may contact Transportation Management personnel of the Contract Administration Office to which contract has been assigned. The contractor shall not ship any cargo directly to a military air or water port terminal without authorization from the designated contract administration office.

4. RESTRICTIONS ON PRINTING (1974 JUN)

Duplication of reports, data or other written material, if required, is authorized provided that the material produced does not exceed 5,000 production units of any page and that items consisting of multiple pages do not exceed 25,000 production units in the aggregate. The aggregate number of production units is to be determined by multiplying pages times copies. For the purposes of this paragraph a production unit is one sheet, size 11 by 17 inches or less (10-3/4 by 14-1/4 inches maximum image), one side only, one color. Duplication of material in excess of the quantities cited above shall not be accomplished without express prior

Ex.: 17; p.: 618

SECTION L - CONTINUED

written authorization from the contracting officer. These restrictions
do not preclude the writing, editing, preparation of manuscript or
reproducible copy of related illustrative materials if required as a
part of this contract. They do not apply to the printing or duplicating
required by contractors for their own use in responding to the terms
of this contract.

5.  AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (May 1976)

    a.  The contractor will not discriminate against any employee or
applicant for employment because of physical or mental handicap in
regard to any position for which the employee or applicant for employ-
ment is qualified. The contractor agrees to take affirmative action
to employ, advance in employment and otherwise treat qualified handi-
capped individuals without discrimination based upon either physical
or mental handicap in all employment practices such as the following:
employment, upgrading, demotion or transfer, recruitment, advertising,
layoff or termination, rates of pay or other forms of compensation and
selection for training, including apprenticeship.

    b.  The contractor agrees to comply with the rules, regulations and
relevant orders of the Secretary of Labor issued pursuant to the Act.

    c.  In the event of the contractor's noncompliance with the require-
ments of this clause, action for noncompliance may be taken in accord-
ance with the rules, regulations and relevant orders of the Secretary
of Labor issued pursuant to the Act.

    d.  The contractor agrees to post in conspicuous places, available
to employees and applicable for employment, notices in a form to be
prescribed by the Director, provided by or through the contracting
officer. Such notice shall state the contractor's obligation under the
law to take affirmative action to employ and advance in employment
qualified handicapped employees and applicants for employment, and
the rights of applicants and employees.

    e.  The contractor will notify each labor union or representative
of workers with which it has a collective bargaining agreement or other
contract understanding, that the contractor is bound by the terms of
Section 503 of the Rehabilitation Act of 1973, and is committed to take
affirmative action to employ and advance in employment physically and
mentally handicapped individuals.

81

Ex.: 17; p.: 619

SECTION L – CONTINUED

f.  The contractor will include the provisions of this clause in
every subcontract or purchase order of $5,500 or more unless exempted
by rules, regulations, or orders of the Secretary issued pursuant to
Section 503 of the Act, so that such provisions will be binding upon
each subcontractor or vendor.  The contractor will take such action
with respect to any subcontract or purchase order as the Director of
the Office of Federal Contract Compliance Programs may direct to enforce
such provisions, including action for noncompliance.


6.  SAFETY AND ACCIDENT PREVENTION (1977 MAR)

In performing work under this contract on a Government installation,
the contractor shall (i) conform to the specific safety requirements
contained in the contract, and (ii) for those related activities not
directly addressed by this contract, conform to the applicable safety
rules prescribed in AFR 127-101 for Air Force bases or prescribed by
the Government installation if other than an Air Force base, and (iii)
take such additional immediate precautions as the contracting officer
may reasonably require for safety and accident prevention purposes. The
contractor agrees to take all reasonable steps and precautions to pre-
vent accidents and preserve the life and health of contractors and
Government personnel performing or in any way coming in contact with the
performance of this contract on such premises.  Any violation of such
rules and requirements, unless promptly corrected as directed by the
contracting officer, shall be grounds for termination of this contract
in accordance with the default provisions hereof.


7.  NOTIFICATION OF GOVERNMENT SECURITY ACTIVITY (1974 JUN)

Thirty (30) days prior to the date of (5) below, the contractor shall
notify the Security Police activity shown in the distribution block of
the DD Form 254, Contract Security Classification, as to:

(1)  The name, address, and telephone number of this contract
company's representative in the U.S. or overseas area, as appropriate;

(2)  The contract number, and military contracting command;

(3)  The highest classification category of defense information
to which the contractor employees will have access;

(4)  The AF installations in the U.S. (in overseas areas identify
only the APO number(s)) where the contract work will be performed;

82

Ex.: 17; p.: 620

SECTION L - CONTINUED

(5) The date contractor operations will begin on-base in the U.S. or in the overseas area;

(6) The estimated completion date of operations on-base in the U.S. or in the overseas area; and

(7) Any changes to information previously provided under this clause.

8.  BASE SUPPORT (1970 APR)

The contractor shall, insofar as possible, avoid incurring direct or indirect costs in duplicating work or support capacity available at or through any Air Force installation involved in the performance of this contract or any major subcontract hereunder. Therefore, the contractor agrees to utilize or cause to be utilized all available Government or Government-controlled working space, equipment, supplies, materials, services, or other support (including communication services) at or available through any Air Force installation where work under this contract is performed. Unless otherwise stipulated in the schedule of this contract, such items will be made available on a no-charge-for-use basis and the value thereof shall be a part of the consideration for this contract. The contractor shall report any inadequacies or nonavailability of items contemplated hereby, together with a recommended plan for obtaining the requested item(s), to the contracting officer, who shall promptly determine the validity and extent of the requirement and the manner in which any approved requirement will be filled (as by purchase, rental, lease, or otherwise). The contractor shall not purchase or otherwise furnish any requirement covered by this clause, or authorize others to do so, without written approval of the contracting officer of the terms of the proposed purchase or other arrangement. Items of a capital nature shall not be purchased under authority of this clause. The amount and character of support, together with other terms and conditions appropriate to the furnishing thereof, shall be determined and set forth in the schedule and the item(s) agreed to be furnished shall be accounted for hereunder by categories and installation(s). The effect of additions or changes in such support shall be fully documented and, if appropriate under the circumstances, equitable adjustment shall be made in the terms and conditions (including price) of the contract, in accordance with the clause entitled "Changes".

Ex.: 17; p.: 621

SECTION L – CONTINUED

9. AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE
VIETNAM ERA (1976 JUL)

(This clause is applicable pursuant to 41 C.F.R. Part 60-250, if
this contract is for $10,000 or more.)

a. The contractor will not discriminate against any employee or
applicant for employment because he or she is a disabled veteran or
veteran of the Vietnam era in regard to any position for which the
employee or applicant for employment is qualified. The contractor
agrees to take affirmative action to employ, advance in employment
and otherwise treat qualified disabled veterans and veterans of the
Vietnam era without discrimination based upon their disability or
veterans status in all employment practices such as the following:
employment upgrading, demotion or transfer, recruitment, advertising,
layoff or termination, rates of pay or other forms of compensation, and
selection for training, including apprenticeship.

b. The contractor agrees that all suitable employment openings of
the contractor which exist at the time of the execution of this contract
and those which occur during the performance of this contract, including
those not generated by this contract and including those occurring at an
establishment of the contractor other than the one wherein the contract
is being performed but excluding those of independently operated
corporate affiliates, shall be listed at an appropriate local office
of the State employment service system wherein the opening occurs. The
contractor further agrees to provide such reports to such local office
regarding employment openings and hires as may be required.

State and local government agencies holding Federal contracts
of $10,000 or more shall also list all their suitable openings with
the appropriate office of the State employment service, but are not
required to provide those reports set forth in paragraphs d and e.

c. Listing of employment openings with the employment service sys-
tem pursuant to this clause shall be made at least concurrently with
the use of any other recruitment source or effort and shall involve
the normal obligations which attach to the placing of a bona fide job
order, including the acceptance of referrals or veterans and nonveterans.
The listing of employment openings does not require the hiring of any
particular job applicant or from any particular group of job applicants,
and nothing herein is intended to relieve the contractor from any
requirements in Executive Orders or regulations regarding non-discrimination
in employment.

34

SECTION L - CONTINUED

d.   The reports required by paragraph b of this clause shall include, but not be limited to, periodic reports which shall be filed at least quarterly with the appropriate local office or, where the contractor has more than one hiring location in a State, with the central office of that State employment service.  Such reports shall indicate for each hiring location (1) the number of individuals hired during the reporting period, (2) the number of nondisabled veterans of the Vietnam era hired, (3) the number of disabled veterans of the Vietnam era hired, and (4) the total number of disabled veterans hired.  The reports should include covered veterans hired for on-the-job training under 38 USC 1787.  The contractor shall submit a report within 30 days after the end of each reporting period wherein any performance is made on this contract identifying data for each hiring location.  The contractor shall maintain at each hiring location copies of the reports submitted until the expiration of one year after final payment under the contract, during which time these reports and related documentation shall be made available, upon request, for examination by any authorized representative of the contracting officer or of the Secretary of Labor.  Documentation would include personnel records respecting job openings, recruitment and placement.

e.   Whenever the contractor becomes contractually bound to the listing provisions of this clause, it shall advise the employment service system in each State where it has establishments of the name and location of each hiring location in the State.  As long as the contractor is contractually bound to these provisions and has so advised the State system, there is no need to advise the State system of subsequent contracts. The contractor may advise the State system when it is no longer bound by this contract clause.

f.   This clause does not apply to the listing of employment openings which occur and are filled outside of the 50 States, the District of Columbia, Puerto Rico, Guam, and the Virgin Islands.

g.   The provisions of paragraphs b, c, d and e of this clause do not apply to openings which the contractor proposes to fill from within his own organization or to fill pursuant to a customary and traditional employer-union hiring arrangement.  This exclusion does not apply to a particular opening once an employer decides to consider applicants outside of his own organization or employer-union arrangement for that opening.

Ex.: 17; p.: 623

SECTION L - CONTINUED

h.  As used in this clause:

(1)  "All suitable employment openings" includes, but is not limited to, openings which occur in the following job categories: production and nonproduction; plant and office; labors and mechanics; supervisory and nonsupervisory; technical; and executive, administrative, and professional openings as are compensated on a salary basis of less than $25,000 per year.  This term includes full-time employment, temporary employment of more than 3 days duration, and part-time employment.  It does not include openings which the contractor proposes to fill from within his own organization or to fill pursuant to a customary and traditional employer-union hiring arrangement nor openings in an educational institution which are restricted to students of that institution.  Under the most compelling circumstances an employment opening may not be suitable for listing, including such situations where the needs of the Government cannot reasonably be otherwise supplied, where listing would be contrary to national security, or where the requirement of listing would otherwise not be for the best interest of the Government.

(2)  "Appropriate office of the State employment services system" means the local office of the Federal-State national system of the public employment offices with assigned responsibility for serving the area where the employment opening is to be filled, including the District of Columbia, Guam, Puerto Rico, and the Virgin Islands.

(3)  "Openings which the contractor proposes to fill from within his own organization" means employment openings for which no consideration will be given to persons outside the contractor's organization (including any affiliates, subsidiaries, and the parent companies) and includes any openings which the contractor proposes to fill from regularly established "recall" lists.

(4)  "Openings which the contractor proposes to fill pursuant to a customary and traditional employer-union hiring arrangement" means employment openings which the contractor proposes to fill from union halls, which is part of the customary and traditional hiring relationship which exists between the contractor and representatives of his employees.

i.  The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Vietnam Veterans Readjustment Act, hereinafter referred to as the "Act" (38 U.S.C. 2012).

j.  In the event of the contractor's noncompliance with the requirements of this clause, actions for noncompliance may be taken in accordance with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

Ex.: 17; p.: 624

SECTION L – CONTINUED

k.  The contractor agrees to post in conspicuous places, available to employees and applicable for employment, notices in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, provided by or through the contracting officer.  Such notice shall state the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified disabled veterans and veterans of the Vietnam era for employment, and the rights of applicants and employees.

l.  The contractor shall notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that the contractor is bound by the terms of the Vietnam Era Veterans Readjustment Assistance Act, and is committed to take affirmative action to employ and advance in employment qualified disabled veterans and veterans of the Vietnam era.

m.  The contractor will include the provisions of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary issued pursuant to the Act, so that such provisions will be binding upon each subcontractor or vendor.  The contractor will take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce such provisions, including action for noncompliance.

10.  APPROVAL OF CONTRACT (1949 JUL)

This contract shall be subject to the written approval of the Secretary or his duly authorized representative and shall not be binding until approved.

Ex.: 17; p.: 625

SECTION L – CONTINUED

11.  GROUND AND FLIGHT RISK (1975 OCT)

(a)  Notwithstanding any other provisions of this contract, except as may be specifically provided in the Schedule as an exception to this clause, the Government, subject to the definitions and limitations of this clause, assumes the risk of damage to, or loss or destruction of, aircraft "in the open," during "operation," and in "flight," as these terms are defined below, and agrees that the Contractor shall not be liable to the Government for any such damage, loss, or destruction, the risk of which is so assumed by the Government.

(b)  For the purposes of this clause:

(i)  Unless otherwise specifically provided in the Schedule, the term "aircraft" means –

(A)  aircraft (including (I) complete aircraft, and (II) aircraft in the course of being manufactured, disassembled, or reassembled; provided, that an engine or a portion of a wing or a wing is attached to a fuselage of such aircraft) to be furnished to the Government under this contract (whether before or after acceptance by the Government); and

(B)  aircraft (regardless of whether in a state of disassembly or reassembly) furnished by the Government to the Contractor under this contract;
including all property installed therein, or in the process of installation , or temporarily removed from such aircraft; provided, however, that such aircraft and property are not covered by a separate bailment agreement.

(ii)  The term "in the open" means located wholly outside of buildings on the Contractor's premises or at such other places as may be described in the Schedule as being in the open for the purposes of this clause, except that aircraft furnished by the Government shall be deemed to be in the open at all times while in Contractor's possession, care, custody, or control.

(iii)  The term "flight" means any flight demonstration, flight test, taxi test, or other flight, made in the performance of this contract, or for the purpose of safeguarding the aircraft, or previously approved in writing by the contracting officer. With respect to land based aircraft "flight" shall commence with the taxi roll from a flight line on the Contractor's premises, and continue until the aircraft has completed the taxi roll in returning to a flight line on the Contractor's premises; with respect to seaplanes, "flight" shall commence with the launching from a ramp on the Contractor's premises and continue until the aircraft has completed its landing run upon return and is beached at a ramp on the Contractor's premises; with respect to helicopters, "flight"

Ex.: 17; p.: 626

SECTION 1 - CONTINUED

shall commence upon engagement of the rotors for the purpose of take-off from the Contractor's premises and continue until the aircraft has returned to the ground on the Contractor's premises and the rotors are disengaged; and with respect to vertical take-off aircraft, "flight" shall commence upon disengagement from any launching platform or device on the Contractor's premises and continue until the aircraft has been re-engaged to any launching platform or device on the Contractor's premises, provided, however, that aircraft off the Contractor's premises shall be deemed to be in flight when on the ground or water only during periods of reasonable duration following emergency landing, other landings made in the performance of this contract, or landings approved by contracting officer in writing.

(iv)  The term "Contractor's premises" means those premises designated as such in the Schedule or in writing by the contracting officer, and any other place to which aircraft are moved for the purpose of safeguarding the Aircraft.

(v)  The term "operation" means operations and tests, other than on any production line, of aircraft, when not in flight, whether or not the aircraft is in the open or in motion during the making of any such operations or tests, and includes operations and tests of equipment, accessories, and power plants, only when installed in aircraft.

(vi)  The term "flight crew members" means the pilot, the co-pilot and unless otherwise specifically provided in the Schedule, the flight engineer, navigator, bombardier-navigator, and defense systems operator, when required, or assigned to their respective crew positions, to conduct any flight on behalf of the Contractor.

(c)(1)  The Government's assumption of risk under this clause, as to aircraft in the open, shall continue in effect unless terminated pursuant to subparagraph (3) below. Where the contracting officer finds that any of such aircraft is in the open under unreasonable conditions, he shall notify the Contractor in writing of the conditions he finds to be unreasonable and require the Contractor to correct such conditions within a reasonable time.

(2)  Upon receipt of such notice, the contractor shall act promptly to correct such conditions, regardless of whether he agrees that such conditions are in fact unreasonable. To the extent that the Contracting Officer may later determine that such conditions were not in fact unreasonable, an equitable adjustment shall be made in the contract price to compensate the Contractor for any additional costs he incurred in correcting such conditions and the contract shall be modified in writing according. Any dispute as to the unreasonableness of such conditions or the equitable adjustment shall be deemed to be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disp...

89

Ex.: 17; p.: 627

(3) If the contracting officer finds that the Contractor failed to act promptly to correct such conditions or has failed to correct such conditions within a reasonable time, he may terminate the Government's assumption of risk under this clause, as to any of the aircraft which is in the open under such conditions, such termination to be effective at 12:01 A.M. on the fifteenth day following the day of receipt by the Contractor of written notice thereof. If the Contracting Officer later determines that the Contractor acted promptly to correct such conditions or that the time taken by the Contractor was not in fact unreasonable, an equitable adjustment shall, notwithstanding paragraph (g) of this clause, be made in the contract price to compensate the Contractor for any additional costs he incurred as a result of termination of the Government's assumption of risk under this clause and the contract shall be modified in writing accordingly. Any dispute as to whether the Contractor failed to act promptly to correct such conditions, or as to the reasonableness of the time for correction of such conditions, or as to such equitable adjustment, shall be deemed to be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes."

(4) In the event the Government's assumption of risk under this clause is terminated in accordance with (3) above, the risk of loss with respect to Government-furnished property shall be determined in accordance with the clause of this contract, if any, entitled "Government Property" until the Government's assumption of risk is reinstated in accordance with (5) below.

(5) When unreasonable conditions have been corrected, the Contractor shall promptly notify the Government thereof. The Government may elect to again assume the risks and relieve the Contractor of liabilities as provided in this clause, or not, and the Contracting Officer shall notify the Contractor of the Government's election. If, after correction of the unreasonable conditions the Government elects to again assume risks and relieve the Contractor of such liabilities, the Contractor shall be entitled to an equitable adjustment in the contract price for costs of insurance, if any, extending from the end of the third working day after the Contractor notifies the Government of such correction until the Government notifies the Contractor of such election. If the Government elects not to again assume such risks, and such conditions have in fact been corrected, the Contractor shall be entitled to an equitable adjustment for costs of insurance, if any, extending after such third working day.

(d) The Government's assumption of risk shall not extend to damage to, or loss or destruction of, such aircraft:

(i) resulting from failure of the Contractor, due to willful misconduct or lack of good faith of any of the Contractor's managerial personnel, to maintain and administer a program for the protection and preservation of aircraft in the open, and during operation, in accordance with sound industrial practice (the term "Contractor's managerial personnel" means the Contractor's directors, officers, and any of his managers, superintendents, or other equivalent representatives, who has supervision or direction of all or substantially all of the Contractor's business, or

Ex.: 17; p.: 628

Case MDL No. 875 Document 6666-1 Filed 01/28/11 Page 94 of 201
Case 3:11-cv-00061-JRW Document 71 Filed 01/24/11 Page 93 of 201

F33700-78-C-0001

SECTION L - CONTINUED

all or substantially all of the Contractor's operations at any one plant
or separate location at which this contract is performed, or a separate
and complete major industrial operation in connection with the performance
of this contract);

(ii) sustained during flight if the flight crew members conducting
such flight have not been approved in writing by the contracting officer;

(iii) while in the course of transportation by rail, or by conveyance
on public streets, highways, or waterways, except for Government-furnished
property;

(iv) to the extent that such damage, loss or destruction is in fact
covered by insurance;

(v) consisting of wear and tear, deterioration (including rust and
corrosion), freezing, or mechanical, structural, or electrical breakdown
or failure, unless such damage is the result of other loss, damage, or
destruction covered by this clause; provided, however, in the case of
Government-furnished property, if such damage consists of reasonable wear
and tear or deterioration, or results from inherent vice in such property,
this exclusion shall not apply; or

(vi) sustained while the aircraft is being worked upon and directly
resulting therefrom, including but not limited to any repairing, adjust-
ing, servicing or maintenance operation, unless such damage, loss, or
destruction, is of a type which would be covered by insurance which would
customarily have been maintained by the Contractor at the time of such
damage, loss, or destruction, but for the Government's assumption of
risk under this clause.

(e) With the exception of damage to, or loss or destruction of
aircraft in "flight," the Government's assumption of risk under this
clause shall not extend to the first $1,000 of loss or damage resulting
from each event separately occurring. The Contractor assumes the risk
of and shall be responsible for the first $1,000 of loss of or damage to
aircraft "in the open" or during "operation" resulting from each event
separately occurring, except for reasonable wear and tear and except to
the extent the loss or damage is caused by negligence of Government
personnel. If the Government elects to require that the aircraft be
replaced or restored by the contractor to the condition in which it was
immediately prior to the damage, the equitable adjustment in the price
authorized by paragraph (i) below shall not include the dollar amount
of the risk assumed by the Contractor under this paragraph. In the event
the Government does not elect repair or replacement, the Contractor
agrees to credit the contract price or pay the Government $1,000 (or the
amount of the loss if smaller) as directed by the Contracting Officer.

(f) A subcontractor shall not be relieved from liability for damage
to, or loss or destruction of, aircraft while in his possession or con-
trol, except to the extent that the subcontract, with the prior written

Ex.: 17; p.: 629

F33700-78-C-0001

SECTION L – CONTINUED

approval of the Contracting Officer, provides for relief of the subcon-
tractor from such liability. In the absence of such approval, the sub-
contract shall contain appropriate provision requiring the return of such
aircraft in as good condition as when received, except for reasonable
wear and tear or for the utilization of the property in accordance with
the provisions of this contract. Where a subcontractor has not been
relieved from liability for any damage, loss, or destruction of aircraft
and any damage, loss, or destruction occurs, the Contractor shall enforce
the liability of the subcontractor for such damage to, or loss or destruc-
tion of, the aircraft for the benefit of the Government.

(g) The Contractor warrants that the contract price does not and
will not include, except as may be otherwise authorized in this clause,
any charge or contingency reserve for insurance (including self-insurance
funds or reserves) covering any damage to, or loss or destruction of,
aircraft while in the open, during operation, or in flight, the risk of
which has been assumed by the Government under the provisions of this
clause, whether or not such assumption may be terminated as to aircraft
in the open.

(h) In the event of damage to, or loss or destruction of, aircraft
in the open, during operation, or in flight, the Contractor shall take
all reasonable steps to protect such aircraft from further damage,
separate damaged and undamaged aircraft, put all aircraft in the best
possible order and further, except in cases covered by (e) above, the
Contractor should furnish to the Contracting Officer a statement of:

(i) the damaged, lost, or destroyed aircraft;

(ii) the time and origin of the damage, loss or destruction;

(iii) all known interests in commingled property of which air-
craft are a part; and

(iv) the insurance, if any, covering any part of the interest
in such commingled property. Except in cases covered by (e) above, an
equitable adjustment shall be made in the amount due under this contract
for expenditures made by the Contractor in performing his obligations
under this paragraph (h) and this contract shall be modified in writing
accordingly.

(i) If prior to delivery and acceptance by the Government any
aircraft is damaged, lost, or destroyed and the Government has under
this clause assumed the risk of such damage, loss or destruction, the
Government shall either (1) require that such aircraft be replaced or
restored by the Contractor to the condition in which it was immediately
prior to such damage, or (2) shall terminate this contract with respect
to such aircraft. In the event that the Government requires that the
aircraft be replaced or restored, an equitable adjustment shall be made
in the amount due under this contract and in the time required for its
performance, and this contract shall be modified in writing accordingly.

92

Ex. 17; p.: 630

F33700-78-C-0001

Case MDL No. 875 · Document 6666-1 · Filed 01/28/11 · Page 96 of 403
Case 3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 96 of 203

SECTION L - CONTINUED

If, in the alternative, this contract is terminated under this paragraph with respect to such aircraft and under this clause the Government has assumed the risk of such damage, loss, or destruction, the Contractor shall be paid the contract price for said aircraft (or, if applicable, any work to be performed on said aircraft) less such amounts as the Contracting Officer determines (1) that it would have cost the Contractor to complete the aircraft (or any work to be performed on said aircraft) together with anticipated profit, if any, on any such uncompleted work, and (2) to be the value, if any, of the damaged aircraft or any remaining portion thereof retained by the Contractor. The Contracting Officer shall have the right to prescribe the manner of disposition of the damaged, lost, or destroyed aircraft, or any remaining parts thereof; and, if any additional costs of such disposition are incurred by the Contractor, a further equitable adjustment will be made in the amount due to the Contractor. Failure of the parties to agree upon an equitable adjustment or upon the amount to be paid in the event of termination of the contract with respect to any aircraft, shall be a dispute concerning a question of fact within the meaning of the "Disputes" clause of this contract.

(j)  In the event the Contractor is at any time reimbursed or compensated by any third person for any damage, loss, or destruction of any aircraft, the risk of which has been assumed by the Government under the provisions of this clause and for which the Contractor has been compensated by the Government, he shall equitably reimburse the Government. The Contractor shall do nothing to prejudice the Government's rights to recover against third parties for any such damage, loss, or destruction and, upon the request of the Contracting Officer, shall at the Government's expense furnish to the Government all reasonable assistance and cooperation (including the prosecution of suit and the execution of instruments of assignment or subrogation in favor of the Government) in obtaining recovery.

Ex.: 17; p.: 631

SECTION M

LIST OF DOCUMENTS AND ATTACHMENTS

| DOCUMENT | TITLE | DATE | PAGES |
|---|---|---|---|
| Attachment 1 | Contract Security Classification Specification (Attached Hereto) | 8 Dec 77 | 2 |
| Attachment 2 | ATCA Statement of Work (Incorporated by Reference) | 30 Sep 77 | 165 |
| Attachment 3 | Detail Specification DS-5500 ATCA, with Appendix A, Alternates to DS-5500 ATCA (Incorporated by Reference) | 30 Sep 77 | 405 |
| Attachment 4 | Detail Specification DS-5500-30H (Incorporated by Reference | 30 Sep 77 | 301 |
| Attachment 5 | ATCA Peculiar Support Equipment List (Attached Hereto) | 30 Sep 77 | 1 |
| Exhibit A | Basic Contract Data Requirements List (CDRL) (Incorporated by Reference) | 30 Sep 77 | 242 (5-52) |
| Exhibit B | Option One CDRL (Incorporated by Reference) | 30 Sep 77 | 242 (53-100) |
| Exhibit C | Options 2-6 (Production) CDRL (Incorporated by Reference) | 30 Sep 77 | 242 (101-1..) |
| Exhibit D | Deferred Ordering Data CDRL (Incorporated by Reference) | 30 Sep 77 | 242 (150-...) |
| Exhibit E | ATCA Peculiar Support Equipment (Attached Hereto) | 30 Sep 77 | 1 |

Ex.: 17; p.: 632

DEPARTMENT OF DEFENSE
**CONTRACT SECURITY CLASSIFICATION SPECIFICATION**
(Complete classified items by inserting term or number)

1. THE PROVISIONS OF THE DOD INDUSTRIAL SECURITY MANUAL APPLY TO PERFORMANCE OF THIS CONTRACT
FACILITY SECURITY CLEARANCE REQUIRED FOR COMMENCE PERFORMANCE OR FOR ACCESS TO CLASSIFIED INFORMATION IS **SECRET**

| 2. THIS SPECIFICATION IS FOR | 3. CONTRACT, GRANT OR OTHER (Prime contracts must be shown for all subcontracts) | DATE TO BE COMPLETED (Estimated) | 4. THIS SPECIFICATION IS: (See note below) | DATED |
|---|---|---|---|---|
| X PRIME CONTRACT | a. PRIME F33700-78-C-0001 | 02 Jan 79 | a. X ORIGINAL | 08 Dec 77 |
| SUBCONTRACT (Use item 8 to identify further subcontracts) | b. FIRST TIER SUBCONTRACT | | b. REVISED (Supersedes all previous specifications) | |
| INVITATION TO BID OR REQUEST FOR PROPOSAL | c. INVITATION FOR BID, REQUEST FOR PROPOSAL, OR REQUEST FOR QUOTE | | c. FINAL | |

5. IF THIS IS A FOLLOW-ON CONTRACT, ENTER PRECEDING CONTRACT NUMBER AND DATE COMPLETED.  ☐ DOES NOT APPLY

| CONTRACT NUMBER | DATE COMPLETED |
|---|---|
| | |

| 6a. NAME AND ADDRESS OF PRIME CONTRACTOR (Include ZIP Code) | b. NAME AND ADDRESS OF COGNIZANT SECURITY OFFICE (Include Zip Code) |
|---|---|
| Douglas Aircraft Company 3855 Lakewood Boulevard Long Beach California 90846 | DCASR Los Angeles 11099 So LaCienega Blvd Los Angeles California 90045 |

| 7a. NAME AND ADDRESS OF FIRST TIER SUBCONTRACTOR (if applicable)(Include ZIP Code) | b. NAME AND ADDRESS OF COGNIZANT SECURITY OFFICE (Include ZIP Code) |
|---|---|
| N/A (Use item 8 to identify further subcontractors) | N/A |

8. SUBCONTRACTING BEYOND FIRST TIER (as appropriate)

N/A

9a. GENERAL IDENTIFICATION OF THE PROCUREMENT FOR WHICH THIS SPECIFICATION APPLIES

ADVANCED TANKER/CARGO AIRCRAFT (ATCA)

b. CONTRACT PRESCRIBES SECURITY REQUIREMENTS WHICH ARE ADDITIONAL TO THOSE PRESCRIBED IN DD FORM 441 AND THE ISM  ☐ YES  ☒ NO

| 10. CONTRACT PERFORMANCE WILL REQUIRE | YES | NO | REMARKS |
|---|---|---|---|
| GRAPHIC ARTS SERVICES | | X | See also, General Provision L.7, "Notification of Government Security Activity (1974 Jun)". |
| ACCESS TO CONTROLLED AREAS OR CLASSIFIED INFORMATION ONLY | X | | |
| MANUFACTURE OF CLASSIFIED HARDWARE | | X | |
| GENERATION, RECEIPT, OR CUSTODY OF CLASSIFIED DOCUMENTS OR OTHER MATERIAL | X | | |
| ACCESS TO RESTRICTED DATA | | X | |
| ACCESS TO CRYPTOGRAPHIC INFORMATION | | X | |
| ACCESS TO COMMUNICATION ANALYSIS INFORMATION | | X | |
| DEFENSE DOCUMENTATION CENTER OR DEFENSE INFORMATION ANALYSIS CENTER SERVICES MAY BE REQUESTED. (If yes, see paragraph 7, item 1, Industrial Security Manual.) | X | | |

11. REFER ALL QUESTIONS PERTAINING TO CONTRACT SECURITY CLASSIFICATION SPECIFICATION TO THE OFFICIAL NAMED BELOW (NORMALLY, thru ACO) (Item 12th, EMERGENCY, direct with written record of in part and response to ACO) (thru prime contractor for subcontracts)

| a. PROGRAM, PROJECT MANAGER OR ACTIVITY (Name, Title, and Organization) | b. ADDRESS, TELEPHONE NUMBER AND OFFICE SYMBOL (Include ZIP Code) |
|---|---|
| Thru ASD/SPI to AFALD/YTP | WPAFB OH 45433 (513) 255-4654 |

NOTE: Original specifications will be authenticated by forwarding letter or as classified as necessary. Revised and Final Specifications will require that all prior authentications to return the restricted classified information. Such actions by contractors shall be taken in accordance with the provisions of the Industrial Security Manual.

**DD** FORM APR 71 **254** REPLACES EDITION OF 1 JUL 67, WHICH MAY BE USED

95  PAGE 1 OF 2 PAGES

12.
INFORMATION PERTAINING TO CLASSIFIED CONTRACTS OR PROJECTS, EVEN THOUGH SUCH INFORMATION IS CONSIDERED UNCLASSIFIED, SHALL NOT BE RELEASED FOR PUBLIC DISSEMINATION EXCEPT AS PROVIDED BY THE INDUSTRIAL SECURITY MANUAL OR UNLESS IT HAS BEEN APPROVED FOR SUCH RELEASE BY APPROPRIATE AUTHORITY (X).

PROPOSED PUBLIC RELEASES SHALL BE SUBMITTED FOR APPROVAL PRIOR TO RELEASE     DIRECT     THROUGH (Specify)

AFALD/OI                           TO:   AFALD/YTP
WPAFB OH 45433

TO THE DIRECTORATE FOR SECURITY REVIEW, OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE (Public Affairs)* FOR REVIEW IN ACCORDANCE WITH PARAGRAPH 5n OF THE INDUSTRIAL SECURITY MANUAL.

*In the case of non-DoD user agencies, see footnote, paragraph 5n, Industrial Security Manual.

13. SECURITY CLASSIFICATION SPECIFICATIONS FOR THIS CONTRACT ARE SET FORTH BELOW (Check all that applicable)

☐ DD FORM 254 ATTACHED (hereby made a part of this specification).

☐ DOCUMENT(S) LISTED BELOW (hereby made part of this specification).

☒ AS STATED BELOW

All contract effort is unclassified; however, the contractor may
require access to classified information through the Secret Level to
install provisions for the MARK XII (Mode 4) and UHF secure communi-
cations.  Any extracts or use of source data will be assigned the same
security classification and group category as the source data.

CONTRACT SECURITY CLASSIFICATION SPECIFICATIONS FOR SUBCONTRACTS ISSUING FROM THIS CONTRACT WILL BE APPROVED BY THE OFFICIAL NAMED IN ITEM 14b BELOW.

| REQUIRED DISTRIBUTION: | 14. THIS CONTRACT SECURITY CLASSIFICATION SPECIFICATION AND ATTACHMENTS REFERENCED HEREIN, APPROVED BY THE USER AGENCY CONTRACTING OFFICER OR HIS REPRESENTATIVE NAMED BELOW: |
|---|---|
| ☒ PRIME CONTRACTOR (Item 6a) | SIGNATURE |
| ☒ COGNIZANT SECURITY OFFICE (Item 6b) | |
| ☒ ADMINISTRATIVE CONTRACTING OFFICE (Item 6b) | |
| ☐ MATERIAL INSPECTOR | TYPED NAME AND TITLE OF APPROVING OFFICIAL  CURTIS N. NEWILL, III |
| ☐ SUBCONTRACTOR (Item 7a) | Captain, USAF, Contracting Officer |
| ☐ COGNIZANT SECURITY OFFICE (Item 7b) | a. APPROVING OFFICIAL'S ACTIVITY AND ADDRESS (include ZIP Code) |
| | AFALD/YTP |
| | Wright-Patterson AFB OH 45433 |
| ADDITIONAL DISTRIBUTION: | b. NAME AND ADDRESS OF ADMINISTRATIVE CONTRACTING OFFICE (include ZIP Code) |
| ☐ | NPRO, Douglas Aircraft Company |
| ☐ | 3855 Lakewood Boulevard |
| | Long Beach California  90846 |

96          PAGE 2 OF  2  PAGES

Ex.: 17; p.: 634

**ATTACHMENT 5**

**ATCA PECULIAR SUPPORT EQUIPMENT LIST**

| ITEM NO. | NOMENCLATURE | PART NUMBER | PRICE (GFY 76) | ESTIMATED LEAD TIME |
|---|---|---|---|---|
| P23-001 | Test Set RF Frequency Power | 43 | $ 381 | |
| P23-003 | Test Set, Radio Peak Power Output | 800000048-1 | 37,430 | |
| P23-005 | Head Set | 91349-801 | 2,086 | |
| P23-007 | Test Set, Radio Peak Power Output | 622-1789-001 | 20,830 | |
| P28-001 | Test Set, Line, ARB | DZZ7610-1 | 20,710 | |
| P28-003 | Test Set, Bench, Boom Control | DZZ7611-1 | 42,733 | |
| | Electronics | | | |
| P28-005 | Adapter, Card Test, Boom Control | DZZ7614-1 | 8,110 | |
| | Electronic Unit | | | |
| P28-007 | Program, Computer, BCU Test Set | TZZ7060-1 | 54 | |
| P28-009 | Test Set, Bench, Control Panel, Aerial | DZZ7612-1 | 12,700 | |
| | Refueling | | | |
| P28-011 | Test Set, Bench, Fuel Pressure | DZZ7613-1 | 12,605 | |
| | Controller | | | |
| P28-021 | Dolly, Boom | DZZ7260-1 | 6,221 | |
| P28-023 | Sling, Boom Handling | DZZ7261-1 | 574 | |
| P28-025 | Sling, Hose Reel | DZZ7262-1 | 96 | |
| P28-027 | Sling, Handling, Fuel Bladder | DZZ7263-1 | 194 | |
| P28-029 | Cable, Support, Boom Maintenance | DZZ7264-1 | 775 | |
| P28-031 | Kit, Tools, Miscellaneous, ARB | DZZ7265-1 | 1,939 | |
| P23-033 | Fixture, Test, Boom Rudder Actuator | DZZ7266-1 | 4,552 | |
| P28-035 | Fixture, Test, Boom Elevator Actuator | DZZ7267-1 | 4,785 | |
| P28-037 | Fixture, Test, Boom Extension Actuator | DZZ7268-1 | 4,785 | |
| P34-007 | Test Set, Radar Beacon | 01-26920H1 | 53,469 | |

97

Ex.: 17; p.: 635

EXHIBIT E

ATCA PECULIAR SUPPORT EQUIPMENT

| ITEM NO. | NOMENCLATURE | PART NUMBER | PRICE NONRECURRING | RECURRING |
|---|---|---|---|---|
| P23-001 | Test Set RF Frequency Power | 43 | | $   495 |
| P23-003 | Test Set, Radio Peak Power Output | 800000048-1 | | 46,714 |
| P23-005 | Head Set | 911349-801 | | 2,605 |
| P23-007 | Test Set, Radio Peak Power Output | 622-1789-001 | | 25,395 |
| P28-001 | Test Set, Line, ARB | DZZ7610-1 | | 32,278 |
| P28-003 | Test Set, Bench, Boom Control | DZZ7611-1 | | 80,174 |
| P28-005 | Adapter, Card Test, Boom Control Electronics Electronic Unit | DZZ7614-1 | | 12,515 |
| P23-007 | Program, Computer, BCU Test Set | TZZ7060-1 | | 67 |
| P23-009 | Test Set, Bench, Control Panel, Aerial Refueling | DZZ7612-1 | | 19,813 |
| P23-011 | Test Set, Bench, Fuel Pressure | DZZ7613-1 | | 19,670 |
| P23-021 | Dolly, Boom | DZZ7260-1 | | 7,864 |
| P23-023 | Sling, Boom Handling | DZZ7261-1 | | 728 |
| P23-025 | Sling, Hose Reed | DZZ7262-1 | | 121 |
| P23-027 | Sling, Handling, Fuel Bladder | DZZ7263-1 | | 243 |
| P23-029 | Cable, Support, Boom Maintenance | DZZ7264-1 | | 967 |
| P23-031 | Kit, Tools, Miscellaneous, ARB | DZZ7265-1 | | 2,419 |
| P23-033 | Fixture, Test, Boom Rudder Actuator | DZZ7266-1 | | 6,049 |
| P23-035 | Fixture, Test, Boom Elevator Actuator | DZZ7267-1 | | 6,049 |
| P23-037 | Fixture, Test, Boom Extension Actuator | DZZ7268-1 | | 6,049 |
| P34-007 | Test Set, Radar Beacon | 01-26920H1 | | 66,729 |
| | | | $875,777 | $337,644 |

98

Ex.: 17; p.: 636

*Optional cost not a gey.*

F33700-78-C-0001

# ADVANCED TANKER / CARGO AIRCRAFT

## STATEMENT OF WORK

## 30 SEPTEMBER 1977

ADVANCED TANKER/CARGO AIRCRAFT
JOINT PROGRAM OFFICE
AIR FORCE ACQUISITION LOGISTICS DIVISION
AIR FORCE LOGISTICS COMMAND
WRIGHT-PATTERSON AIR FORCE BASE, OHIO   45433

Ex.: 17; p.: 637

Case3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 102 of 203

F33700-78-C-0001

## INTRODUCTION

1. The following is the Statement of Work for the DC-10 ATCA Production Contract.  It is divided into the following four parts:

| | |
|---|---|
| PART I | BASIC CONTRACT |
| PART II | OPTION 1 |
| PART III | OPTIONS 2 - 6 |
| PART IV | KC-135 BOOM CONFIGURATION ALTERNATE |

a.  Parts I-III of the SOW are set forth in the attached format.  The major SOW sections are:

| | |
|---|---|
| 1000 | PRODUCTION OF THE ATCA SYSTEM |
| 1010 | AIR VEHICLE |
| 1020 | TRAINING |
| 1030 | INTEGRATED LOGISTIC SUPPORT |
| 1040 | SUPPORT EQUIPMENT |
| 1050 | SYSTEM TEST AND EVALUATION |
| 1060 | SYSTEM ENGINEERING/PROGRAM MANAGEMENT |
| 1070 | DATA MANAGEMENT |
| APPENDIX I | APPLICABLE DOCUMENTS |
| APPENDIX II | MISSION PROFILES (PART I AND PART II) |

In each SOW part, only those sections, and related subsections, which are applicable to that part are included.

3.  Part IV of the SOW includes those paragraphs which shall become applicable if the KC-135 Boom (Alternate 4, Appendix A, DS 5500 ATCA) is incorporated into the ATCA aircraft.

                                1 Atch
                                Statement of Work
                                Format


I.-1

Ex.: 17; p.: 638

Case3:11-cv-00485-JSW Document 71 Filed 01/24/11 Page 104 of 403
Case3:11-cv-00485-JSW Document 71 Filed 01/24/11 Page 103 of 203

F33700-78-C-0001

ATCA STATEMENT OF WORK FORMAT

| PARAGRAPH | SUBJECT |
|---|---|
| 1000 | Production of the ATCA |
| 1010 | Air Vehicle |
| 1010A | General Description |
| 1010B | Reserved |
| 1010C | General Airplane Design Criteria |
| 1011 | Reserved |
| 1012 | Airframe Systems |
| 1012A | Increased Accommodation Kit |
| 1013 | Reserved |
| 1014 | Avionics |
| 1014A | Communications Systems |
| 1015 | Structure |
| 1015A | Reserved |
| 1015B | Reserved |
| 1015C | Reserved |
| 1015D | Materials, Parts and Processes |
| 1015E | Corrosion Prevention/Control Program |
| 1016 | Reserved |
| 1017 | Reserved |
| 1018 | Aircraft General |
| 1018A | Marking |
| 1020 | Training |
| 1021 | Personnel Training |
| 1021A | Aircrew Training |
| 1021B | Maintenance Training |
| 1021C | Logistic Support Contractor Maintenance Training |
| 1022 | Training Equipment |
| 1023 | Training Services |
| 1023A | Training Planning Information |
| 1023B | Training Conference |
| 1030 | INTEGRATED LOGISTICS SUPPORT |
| 1030A | Integrated Support Plan |
| 1030B | Maintenance Data Collection Record |
| 1030C | Reparable Item Processing Tag |
| 1030D | Records |
| 1030E | Spares |
| 1030F | Transition Conference |
| 1030G | Logistics Support Contractor Interface |
| 1040 | SUPPORT EQUIPMENT (SE) |
| 1040A | SE Guidance Conference |
| 1040B | SE Plan |
| 1040C | SE Data |
| 1041 | Peculiar Support Equipment (SE) |

I-2

F33700-78-C-0001

```
        1041A           Provisioning Conference
        1041B           SE Functional Analysis
        1041C           SE Design
        1041D           SE Validation

    1050                SYSTEM TEST AND EVALUATION
        1051            Pre-delivery Test and Evaluation
        1051A             Test Planning
        1051B             Ground Test Phase
        1051C             Flight Test Phase
        1052            Instrumentation and Data Reduction
        1053            Contractor Support
        1054            Deficiency Reporting
        1055            Test Facilities
        1056            Other Testing
        1056A             Human Factors Test and Evaluation
        1056B             Component Qualification Test and Evaluation
        1056C             Peculiar Support Equipment Test and Evaluation
        1056D             Acceptance Testing
        1056E             Reliability Test and Demonstration
        1056F             Maintainability Test and Demonstration

    1060              . SYSTEM ENGINEERING/PROGRAM MANAGEMENT
        1061            System Engineering Management
        1061A             Configuration Management
        1061B             Human Engineering
        1061C             Manufacturing/Production
        1061D             System Safety/Program
        1061E             Electromagnetic Compatibility
        1061F             Facilities
        1061G             Trade Studies
        1061H             Design/Program Reviews
        1061I             Aircraft Structural Integrity Program
        1061J             Mass Properties
        1061K             Analyses
        1061L             Reliability Program
        1061M             Maintainability
        1062            Program Management
        1062A             Photographic Coverage
        1062B             Financial Management
        1062C             Program Schedules
        1062D             Contract Work Breakdown Structure
        1062E             Contract Management
        1062F             Communications
        1062G             Interface Control

    1070                DATA MANAGEMENT
        1071            Technical Orders and Manuals
        1071A             Military Specification Aircraft Technical Orders
        1071B             Commercial Specification Aircraft Technical Orders
        1071C             Component and Support Equipment Manuals
```

-Ex.: 17; p.: 640

F33700-78-C-0001

| | |
|---|---|
| 1071D | Time Compliance Technical Orders |
| 1071E | Validation Record |
| 1071F | Status and Schedules |
| 1071G | Technical Order Publication Plan |
| 1071H | Technical Order Source Data |
| 1072 | Engineering Data |
| 1072A | Engineering Drawings |
| 1072B | Technical Analyses |
| 1074 | Deferred Data |
| 1074A | Data Accession List/Internal Data |
| 1074B | Deferred Ordering |
| 1075 | Commercial Data |

| | |
|---|---|
| Appendix I | Applicable Documents |
| Appendix II | Mission Profiles |

I-4

Ex.: 17; p.: 641

F33700-78-C-0001

# ADVANCED TANKER CARGO AIRCRAFT

## STATEMENT OF WORK

### PART I

### (BASIC CONTRACT)

### 30 SEPTEMBER 1977

Ex.: 17; p.: 642

F33700-78-C-0001

1000   PRODUCTION OF THE ADVANCED TANKER/CARGO AIRCRAFT (ATCA)

The contractor shall initiate nonrecurring effort
necessary to convert the basic DC-10 aircraft into an
ATCA in accordance with the requirements of Detail
Specification DS 5500 ATCA and this Statement of Work.
The contractor shall submit an ATCA and Basic Aircraft
Detail Specification in accordance with DI-E-3102A/M
(A00C).  The ATCA Specification shall be annotated to
indicate those portions which are different from those
contained in the Basic Aircraft Specification.

I-6

F33700-78-C-0001

1010    AIR VEHICLE

The contractor shall initiate the design and engineer-
ing of the modification and the design, engineering
and fabrication of the tooling necessary to convert
the basic DC-10 aircraft into an ATCA Air Vehicle as
defined by Detail Specification DS-5500 ATCA, dated
30 September 1977, and requirements of this Statement
of Work.  This shall include the following effort in
consonance with tasks defined in other sections of
this SOW:

a.  Organize and evaluate the requirements.

b.  Develop alternative technical solutions as appli-
    cable.

c.  Conduct trade studies as applicable.

d.  Select final configuration concepts for PDR for
    all elements.

e.  Complete all layout drawings for PDR.

f.  Perform analyses supporting design.

g.  Prepare detailed engineering drawings for all CDRs.

h.  Prepare procurement specifications.

i.  Prepare preliminary data for FAA certification
    (Note:  Structural certification data covered
    under 1061KA).

j.  Establish production schedules.

k.  Prepare fabrication and assembly planning instruc-
    tions per production schedules.

l.  Perform tool design and fabricate detail part tools
    per production schedules.


1010A    GENERAL DESCRIPTION


I-7

Ex.: 17; p.: 644

1010AI    MODIFICATIONS, DELETIONS, ADDITIONS

The contractor shall initiate the design and engineer-
ing of all modifications, deletions, and additions to
the basic aircraft which are necessary to meet the
requirements of DS 5500-ATCA.

1010C    GENERAL AIRPLANE DESIGN CRITERIA

1010CA    STRUCTURAL DESIGN CRITERIA

A structural design criteria report shall be prepared
which details the strength, fatigue and fracture
structural design  criteria applied to the design of
the ATCA modifications (DI-S-3581/M) (A01U).  The
contractor shall complete the initial report and
submit to USAF and FAA prior to PDR.  A final draft
shall be submitted prior to structure CDR.

1012    AIRFRAME SYSTEMS

The contractor shall initiate the design/engineering
to delete components not required for ATCA and to
accomplish those modifications and additions necessary
to convert the basic aircraft into an ATCA.

1012A    INCREASED ACCOMMODATION KIT

The contractor shall complete the design of the Increased
Accommodation Kit (Alternate 3, Appendix A to DS 5500-ATCA).

1014    AVIONICS

Avionics block diagrams and interface schematics
shall be provided in accordance with Data Item DI-S-
3607/M (A028).  System schematics shall define (i) the
interface between ATCA peculiar avionics and instru-
ments; and (ii) the interface between the peculiar
avionics and instruments and those existing in the
basic aircraft.  A detailed listing of the ATCA
peculiar avionics/instruments, to the Line Replaceable

I-8

Ex.: 17; p.: 645

F33700-78-C-0001

Unit (LRU) level, identified by model and part number shall be submitted in accordance with Data Item DI-S-3607/M (A028).

### 1014A    COMMUNICATION SYSTEMS

### 1014ADA  ANTENNA

The contractor shall conduct radiation patterns and report results as specified by MIL-A-6224D, paragraphs 4.4.2.1 and 4.4.2.1.1 and DI-T-5247 (A02G).

### 1015    STRUCTURE

### 1015D   MATERIALS, PARTS AND PROCESSES

### 1015DA  SELECTION OF MATERIALS, FINISHES, PROCESSES, AND NONDESTRUCTIVE EVALUATIONS (NDE)

The contractor shall perform a complete evaluation of all candidate materials, finishes, processes and NDE to ensure those selected for all aircraft modifications provide the desired properties for the entire system life.  Guidelines for material selection, usage and treatment are contained in Chapter VII, AFSC DH 1-2.  Justification data shall be available for AF review on all selected materials and processes, including the results of development testing accomplished on any new materials and processes.

### 1015DB  MATERIALS AND PROCESS SPECIFICATIONS

Complete materials and process specifications, as well as NDE for both metallic and nonmetallic structure, shall be available for review by the procuring activity.  Provisions shall be made on new drawings involving materials and processes for signature by company materials and process personnel, or Air Force approved contractor personnel, prior to drawing release.

I-9

Ex.: 17; p.: 646

F33700-78-C-0001

1015E    CORROSION PREVENTION/CONTROL PROGRAM

The contractor shall initiate implementation of the
corrosion prevention control program during this
period in accordance with the following subsections.

1015EA   CORROSION PREVENTION AND CONTROL PLAN

The contractor shall submit a Corrosion Prevention
and Control Plan (DI-S-3598A/M) (A024).  The contrac-
tor shall establish a working group, including a NAVPRO
representative, to implement the plan.

1015EB   FINISH DOCUMENT

The contractor shall submit a Finish Document for the
modifications to the basic aircraft (DI-S-3598A/M)
(A025).

1015EC   CORROSION PREVENTION ADVISORY BOARD

The contractor shall provide a member to the Cor-
rosion Prevention Advisory Board to participate in
all board activities.

1018    AIRCRAFT GENERAL

1018A   MARKING

**The contractor shall submit illustration drawings
of the external painting and Air Force marking
scheme (DI-E-7015A/M) (A00S).**

I-10

Case MDL No. 875 Document 6666-1 Filed 01/24/11 Page 112 of 403

F33700-78-C-0001

1020    TRAINING

The contractor shall furnish data and services for
the ATCA system as described in the following para-
graph.


1023    TRAINING SERVICES


1023A   TRAINING PLANNING INFORMATION

The contractor shall submit training planning informa-
tion (DI-H-3265A/M) (A00X) to assist in determining Air
Force training requirements.  Type I training shall be
limited to the minimum necessary to qualify an initial
cadre of personnel.


1023B   TRAINING CONFERENCE

The contractor shall conduct an initial training
conference with the Air Force.

Ex.: 17; p.: 648

F33700-78-C-0001

## 1030    INTEGRATED LOGISTICS SUPPORT (ILS)

### 1030A    INTEGRATED LOGISTIC SUPPORT PLANNING

#### 1030AA    INTEGRATED SUPPORT PLAN (ISP)

The contractor shall submit the Integrated Support
Plan for predelivery support in accordance with
DI-L-6138/M (A010).  The contractor shall develop
the plan to include the initial cadre training for
USAF Flight Line Maintenance personnel.  This plan
shall include the contractor's efforts required to
provide the transition from predelivery to operational
support and his continuing interface with the Logistics
Support Contractor for the ATCA force.

#### 1030AB    ILS GUIDANCE CONFERENCE

The contractor shall conduct a logistic support
guidance conference with the Air Force and Logistics
Support Contractor to discuss support concepts and
provisioning requirements not later than 90 days
after contract award.

#### 1030G    LOGISTICS SUPPORT CONTRACTOR INTERFACE

The contractor shall provide the Logistics Support
Contractor all data, information and services normally
supplied with delivery of the commercial aircraft.
The contractor shall allow logistic support contractor
participation in all joint USAF/contractor activities.

I-12

Ex.: 17; p.: 649

F33700-78-C-0001 P00002

DOUGLAS

CONTRACT DATA REQUIREMENTS LIST

EXHIBIT "A"

Ex.: 17; p.: 650

F33700-73-C-0001

1040    SUPPORT EQUIPMENT (SE)

The contractor shall initiate, supervise and control the
tasks noted in the following paragraphs.  The procedures
of AFAD 71-685 as modified for the ATCA program by Adden-
dum Number 1 shall be used as guidance in the development
and acquisition of all ATCA peculiar SE.  As additional
SE requirements are identified, they shall be procured
following Support Equipment Recommendation  Data (SERD)
processing and approval (including pricing).  AF approval
of the SERD shall be reflected by the issurance of a
contractual document adding the SE to the contract.
Detailed engineering design on SE items identified through
the SERD process shall not begin until authorized in
writing by the Procuring Contracting Officer (PCO).


1040A    SE GUIDANCE CONFERENCE

The contractor shall convene a SE guidance conference
no later than 90 days after contract award for the
purpose of discussing with the USAF and the Logistics
Support Contractor (1) the intent and functional
requirements of the baseline set of Support Equipment ·
Recommendation Data (SERD) Forms submitted with the
proposal and other DC-10 basic support equipment and
(2) requirements and procedures of the support equip-
ment plan.


1040B    SE PLAN

The contractor shall submit a SE plan in accordance
with DI-A-6102/M (A009).  The plan shall document the
analysis of the contractor's maintenance and logistics
support plans/concepts as applied to support equipment.
The plan shall include a brief functional analysis of
events that must occur for each level of maintenance
that requires SE and software and shall indicate the
proposed methods and approaches to resolve all support
functions associated with the analysis.


1040C    SUPPORT EQUIPMENT DATA

The contractor shall submit Support Equipment Recom-
mendation Data (SERDs) for DC-10 basic support equip-
ment other than that coded with DZZ-XXX part numbers

I-13

F33700-78-C-0001

in accordance with DI-S-3596/M (A023). The contractor shall submit and maintain the Consolidated Support Equipment List (CSEL) in accordance with DI-V-6183/M (A02H).

1041    PECULIAR SUPPORT EQUIPMENT

The contractor shall initiate nonrecurring design and engineering effort necessary to deliver that SE identified in Exhibit E to the Contract, "ATCA Peculiar Support Equipment," following approval of the supporting SERD submitted for each SE item.

1041B    FUNCTIONAL ANALYSIS

The contractor shall perform analysis to define the ATCA peculiar SE requirements. Such analysis shall be an output of the contractor's maintenance task analysis and shall be of sufficient depth and scope to be consistent with the ATCA operational, integrated logistics and maintenance concepts. Cost of ownership, base of maintenance, human engineering analysis and useful life shall be considered and evaluated during the identification and development cycle.



The contractor shall submit test requirements documents for the ARB flight control system in accordance with DI-T-3734/M (A02F).

1041C    SE DESIGN

The contractor shall design all new peculiar support equipment in accordance with the requirements of the contractor's approved commercial support equipment

I-14

F33700-78-C-0001

design practices guide which shall meet the intent of
MIL-T-28800B, MIL-S-8512D, and AFSC DH 2-6.  The Air
Force shall determine whether the commercial guide
meets the intent of the above referenced standards.
Contractor's commercial specifications/drawings for
individual items of support equipment shall be made
available for Air Force and Logistics Support Contrac-
tor review.  Flight line support equipment shall be
painted with MIL-C-83286, FED STD 595, color no. 24052,
forest green polyurethane coating.

I-15

F33700-76-C-0201

## 1050   SYSTEM TEST AND EVALUATION

The contractor, in conjunction with the Air Force, shall initiate planning and conduct preliminary DC-10 ATCA system tests.  This testing shall consist of the crack growth sensitivity tests required by SOW Paragraph 1061IAB and initiation of damage tolerance component tests per SOW Paragraph 1061IAC.  In addition, the contractor shall plan for all development, ground, and flight testing to be conducted prior to delivery of the first DC-10 ATCA to the Air Force and submit the required test plans in accordance with DI-T-3702/M (A02B).  Approval of all test plans by the Air Force and/or FAA shall be based on the updated version of the plans.  The plan for Air Force participation during this predelivery phase shall be prepared by the Air Force and integrated into the overall plan early in the acquisition phase.

## 1051   PREDELIVERY TEST AND EVALUATION

Preliminary testing shall be conducted in accordance with approved updated test plans (DI-T-3702/M) (A02B) by the contractor at the contractor's facility.  The completion of this effort is the responsibility of the contractor and is to include participation of FAA personnel and Air Force personnel as determined appropriate by the government.

## 1051A   TEST PLANNING

The contractor shall prepare test plans to conduct tests to ensure a safe and functionally effective aircraft for aerial refueling and cargo transport missions. Testing shall concentrate on those aircraft systems and subsystems which have been changed from the basic FAA certified commercial aircraft.  Basic aircraft operation shall be evaluated against appropriate FAA criteria, intended function and safety.  Applicable ATCA-unique operations, if not certified by the FAA, shall be evaluated against Air Force requirements. All test planning shall provide for collection, storage, and retrieval of predelivery operational and support cost data to the extent practicable.  Only preliminary planning shall be accomplished during this period for the purpose of early design development testing, long-lead instrumentation requirements, and test coordination.

I-16

1051B   GROUND TEST PHASE

Ground tests shall be conducted to validate engineering
design and analysis.  Individual test series shall be
performed in accordance with approved updated test plans
(DI-T-3702/M) (A02B) and results reported in accordance
with (DI-T-3718/M) (A02D).


1051BA   STRUCTURAL TESTS

Structural integrity of the DC-10 ATCA shall be initially
evaluated by conducting tests per SOW paragraphs 1061IAB
and 1061IAC.  Test plans for these tests shall be in
accordance with the guidelines of DI-T-3705 and submitted
as a portion of the DC-10 ATCA Test Plan (DI-T-3702/M)
(A02B).


1051BH   CARGO HANDLING TESTS

Tests shall be initiated on the cargo loading system
mock-up to evaluate control system operation and system
capability to rotate overlength loads and to move
coupled pallets.  Test results shall be reported in
accordance with DI-T-3718/M (A02D).


1056   OTHER TESTING


1056A   HUMAN FACTORS TEST AND EVALUATION (HFT&E)

The HFT&E plan shall be an annex to the ATCA Test
Plan (DI-T-3702/M) (A02B).  The HFT&E plan shall
encompass all items identified in SOW paragraph 1061B
and shall provide for demonstrations to show that
operational equipment can be effectively operated,
maintained, and supported.  The contractor shall
perform tasks in accordance with the updated HFT & E
plan.

Ex.: 17; p.: 655

F33700-78-C-0001

## 1056AA   AIR REFUELING OPERATOR'S STATION MOCKUP

The contractor shall investigate the physical characteristics of the air refueling operator's station by constructing and using a preliminary mockup.  The mockup shall be used to determine the optimum combination of field of view, operator posture, control configuration, display configuration, and such other characteristics as are pertinent to the design of the ATCA.

I-18

Ex.: 17; p.: 656

F33700-78-C-0001

1060    SYSTEM ENGINEERING/PROGRAM MANAGEMENT

1061    SYSTEM ENGINEERING MANAGEMENT

The contractor shall submit a complete System Engineer-
ing Management Plan (SEMP)(DI-S-3618/M) (A029). The
plan shall describe the total effort for planning,
control, and conduct of a fully integrated engineering
effort in accordance with the general requirements of
Section 5 of MIL-STD-499A. It shall include the engi-
neering support of all modifications to the basic air-
craft as well as all engineering efforts required to
cover correction of deficiency actions and/or warranty
coverage.

1061A   CONFIGURATION MANAGEMENT

The contractor shall prepare a Configuration Management
plan (DI-E-3108/M) (A00G) to comply with the criteria
set forth in MIL-STD-483 (USAF). The contractor shall
accomplish configuration management in accordance with
the approved configuration management plan.

1061AA  IDENTIFICATION OF DOCUMENTATION

For the configuration items (basic aircraft modifica-
tions and ATCA peculiar SE) that will be FAA approved,
the contractor shall identify documentation prepared
(specifications and drawings) in accordance with exist-
ing commercial systems and procedures. Modifications
to the basic aircraft and newly developed SE which are
not FAA approved and are to be Air Force approved, will
be documented in accordance with MIL-STD-483 Appendix
IX.

1061AB  SPECIFICATIONS

The contractor shall use a format compatible with the
existing aircraft detail specification to include
specifications for newly developed items or modifica-
tions to the basic aircraft. Support equipment shall be
defined by procurement specifications prepared in accor-
dance with existing commercial practices.

I-19

F33700-78-C-0001

### 1061ABB    COMPUTER PROGRAMS

Each new computer program will be managed as an individual CI in accordance with the appropriate appendices in MIL-STD-483. For each new computer program, a development specification (DI-E-3119A/M) (A00H), a product specification (DI-E-3120A/M) (A00J), and version description document (DI-E-3121/M) (A00K) shall be submitted. The contractor shall prepare and maintain tracking documentation that fulfills the intent of DI-E-3122 and DI-E-3123, and this data shall be available for procuring agency review upon written notification. The computer program specifications shall be updated in accordance with DI-E-3134 (A00R).

### 1061ABC    SPECIFICATION MAINTENANCE

The contractor shall maintain the basic aircraft specification and those specifications for configuration items to be delivered under this contract. Maintenance of specifications pertains to specification change notices, specification change pages, and specification revisions. In addition, for all newly designed configuration items a development record is required. The commercial type specifications shall be maintained in accordance with existing commercial procedures. Military specifications shall be maintained in accordance with the Specification Maintenance Document (DI-E-3106/M) (A00F) as modified by the following: Proposed SCNs affecting specification provisions which are affected by other change proposals not yet formally approved (or disapproved) by the PCO shall contain the notation "This change assumes prior or concurrent incorporation of ECP No.        or SCN No.        or Service Bulletins No.        ." Revisions to the detail specification shall be annotated to clearly depict the ATCA peculiar portions.

### 1061AC    ENGINEERING RELEASE SYSTEM

The contractor shall maintain control over the manufacture and acceptance of all configuration items through an engineering release system which meets the minimum criteria as set forth in MIL-STD-483 (USAF), Appendix X.

I-20

F33700-78-C-0001

**1061AE**   ENGINEERING CHANGE PROPOSALS (ECPs)

Proposed engineering changes which affect ATCA peculiar
specification requirements, price, delivery schedule,
specified weight or performance, specified interchange-
ability requirements, the ATCA maintenance and logistic
support concept, or require reidentification of a pro-
visioned spare part or spare assembly shall be classified
and processed as Class I ECPs (DI-E-3128/M) (A00N). The
Contractor may, without Air Force approval, incorporate
standard commercial changes into the basic aircraft as
standard Specification Change Notices (SCNs) provided
such changes are not Class I changes as defined above.
These standard commercial changes shall be processed
and incorporated into the undelivered articles as Class
II changes. All Class II changes shall be submitted to
the Government Plant Representative Office concurrent
with their release from engineering for concurrence in
classification. The Contractor shall furnish the PCO
all Class II changes resulting from SCNs, concurrent
with their release from engineering. Documentation
shall be prepared and submitted to the Contractor for
deletion of any change submitted by SCN that is not
desired by the Air Force and the contractor shall submit
a Class I ECP to the Air Force.

**1061AEA**   ADVANCED CHANGE/STUDY NOTICE (ACSN)

Before any work or effort is started on the study for
preparation of a Routine Class I ECP, an ACSN initiated
by the contractor must be approved by the Air Force.
ACSN numbers shall be assigned by the contractor and
tracked according to number (DI-E-3127/M) (A00M).

**1061AEB**   AUTHORIZATION FOR SUBMITTAL OF ENGINEERING CHANGE
PROPOSALS (ECPs)

In accordance with paragraph 4.8 MIL-STD-480, the con-
tractor shall not submit an ECP until approved by
Advanced Change/Study Notice (ACSN) unless the ECP can
be justified as Emergency, Urgent, or Compatibility.

I-21

Ex.: 17; p.: 659

F33700-78-C-0001

1061AEC    ENGINEERING CHANGE PROPOSAL (ECP) SUBMITTAL DATA

For all Routine Class I ECPs, the contractor shall
include drawings and other data as appropriate to
allow the Government sufficient insight to evaluate
the proposed change.  Reference MIL-STD-480, para-
graph 4.8.7.

1061AED    ENGINEERING CHANGE PROPOSAL (ECP) SUBMISSION SCHEDULES

The contractor shall submit ECPs and related Specifica-
tion Change Notices in accordance with the following
schedule:

| Type of ECP | Submittal Due No Later Than |
|---|---|
| Emergency | Message - 24 hours after discovery<br>ECP - 30 days after receipt of authorization |
| Urgent | Message - 24 hours after discovery<br>ECP - 30 days after receipt of authorization |
| Compati-<br>bility | ECP - 45 days after discovery |
| Routine | ACSN required<br>ECP - 45 days after receipt of authorization |

1061AF    STATUS ACCOUNTING

The contractor shall maintain a status accounting system
to the Line Replaceable Unit (LRU) level for all approved
changes and data on serialized components installed on
each aircraft during production (DI-E-3133/M) (A00Q).
A separate shortage and variance list shall be maintained
for each aircraft until the discrepancies are cleared.

1061AG    DEVIATIONS AND WAIVERS

The contractor shall submit requests for deviations and
waivers in accordance with MIL-STD-480 and MIL-STD-481
(DI-E-3129/M) (A00P).

I-22

F33700-78-C-0001

1061B    HUMAN ENGINEERING

The contractor shall submit a Human Engineering (HE)
program plan (DI-H-3259/M) (A00V) to implement the
requirements of MIL-H-46855A (Paragraphs 3.2.1, 3.2.2,
3.2.3, and 3.2.4). This effort shall be applied to
selection and design of all new and modified equipment,
handbooks, support equipment, training, and facilities
required to convert the commercial aircraft system to
an Air Force tanker/cargo aircraft system. Design
details shall comply with the human engineering design
standards established by MIL-STD-1472B and AFSC DH 1-3.
The applicable paragraphs of MIL-STD-1472B are 4, 5.1
5.2, 5.3, 5.4, 5.5, 5.6, 5.7.7, 5.8.1, 5.8.2, 5.8.3.1,
5.8.3.2, 5.8.3.3, 5.8.4, 5.9, 5.11.3, 5.12, 5.13, and
5.14. Tasks performed during this period shall be in
accordance with the approved Human Engineering Program
Plan.

1061C    MANUFACTURING/PRODUCTION

The contractor shall establish and maintain a production
management plan that reflects a coordinated interface
between production management for the basic commercial
configuration and the ATCA peculiar configuration. The
contractor shall sponsor a Production Readiness Review
(PRR) in support of the ATCA peculiar items. The PRR
shall be accomplished in accordance with the intent of
MIL-STD-1528. The contractor shall maintain a produc-
tion management system for the ATCA which meets the intent
of MIL-STD-1528.

1061CA    MANUFACTURING/PRODUCTION PLAN

The contractor shall submit a Manufacturing/Production
Plan in accordance with DI-P-3460/M (A01H).

1061CB    PRODUCTION ANALYSIS REPORT

The contractor shall provide a Production Analysis
Report in accordance with DI-P-3455/M (A01G).

I-23

Ex.: 17; p.: 661

F33700-78-C-0001

1061CC    PRODUCTION PROGRESS REPORTS

The contractor shall provide monthly Production Pro-
gress Reports in accordance with DI-P-3475A/M (A01J).


1061CD    QUALITY CONTROL AND INSPECTION SYSTEM

The contractor shall maintain a quality control and
inspection system that meets the requirements of FAA
regulations.  The Air Force reserves the right to
review the contractor's FAA approved quality assurance
system and have access to all quality related records
and data including vendor, supplier and subcontractor
activities.  For those items not certified by the FAA,
the Air Force designated representative will assure
that the items are manufactured in conformance with
the contractor's FAA approved quality assurance system.


1061D     SYSTEM SAFETY PROGRAM


1061DA    SYSTEM SAFETY

The contractor shall provide a System Safety Program
Plan (SSPP) in accordance with DI-R-3531/M (A01M), which
when approved by the procuring activity, shall become
the basis for the ATCA System Safety Program.  The
plan shall include, but not be limited to, the detailed
requirements of MIL-STD-882, paragraph 5.2.  The con-
tractor's main system safety effort shall be in the
following areas as a minimum:

(1)  Peculiar equipment required to meet the ATCA
     mission requirements.

(2)  Interface between the new peculiar equipment and
     the basic aircraft.  Included in this would be
     such areas as structural integrity, stability and
     control, safety of flight, tankage/electrical
     equipment collocation and EMI.

(3)  Hardware added to the basic aircraft to support
     ATCA peculiar equipment and mission personnel.

(4)  Operating and maintaining the ATCA, including
     basic and ATCA peculiar support equipment,
     facilities, and training.

I-24

Ex.: 17; p.: 662

The contractor shall perform the following safety program tasks related to 1061D subsections during this period:

(1) Update and submit System Safety Program Plan

(2) Participate in FAA preliminary type board meeting

(3) Develop and submit preliminary hazard analyses (DI-H-3278/M) (A00Y). A Preliminary Hazards List shall be provided in accordance with CDRL (DI-H-3278/M) (A00Y).

(4) Participate in internal design meetings and reviews and in appropriate safety working groups.

(5) Participate in PDRs

(6) Submit system and subsystem hazard analyses (DI-H-3278/M) (A00Y).

(7) Initiate monitoring of test planning and early tests

## 1061DB  SYSTEM SAFETY ANALYSES

The contractor shall conduct qualitative and quantitative analyses for the purpose of identifying, controlling, or eliminating subsystem and system hazards. The analysis shall be conducted in accordance with the techniques and philosophy as defined in MIL-STD-882, paragraph 5.4, 5.6, 5.8, and 5.9 and using AFSC DH 1-6 as a guide (DI-H-3278/M)(A00Y). The analysis shall consist of the following:

## 1061DBA  PRELIMINARY HAZARD ANALYSES (PHA)

A PHA shall be performed in accordance with MIL-STD-882 paragraph 5.8.2.1 to obtain an initial safety assessment of the system, to identify safety critical areas, to evaluate inherent hazards, and to establish the safety design criteria to be used. Any hazards experienced in commercial operations shall be included; i.e., accidents/incidents in airline use, where the hazard has not yet been eliminated, and applies to the ATCA configuration (DI-H-3278/M) (A00Y).

I-25

Ex.: 17; p.: 663

F33700-76-0-0001

## 1061DBB  SUBSYSTEM HAZARD ANALYSIS (SSHA)

An SSHA shall be submitted in accordance with MIL-STD-882 paragraph 5.8.2.2 to determine, from a safety consideration, the functional relationships of components and equipments comprising each subsystem (DI-H-3278/M) (A00Y). Included shall be fault tree analysis (FTA) performed on those "undesired events in which the results are critical or catastrophic, in order to identify clearly all critical fault-paths. Initially, the FTA shall be qualitative, but shall be quantified as data becomes available. The FTAs shall cover, but not be limited to, the following hazardous events:

(1)  Tanker/Receiver collision.

(2)  Fire/explosion as a result of aerial refueling system.

(3)  Failure to disconect from receiving aircraft.

## 1061 DBC  SYSTEM HAZARD ANALYSIS (SHA)

An SHA shall be submitted which shall be performed in accordance with MIL-STD-882, paragraph 5.8.2.3 and shall include consideration of subcontractor hazard analysis furnished in accordance with paragraph 5.10 to determine the safety problem areas of the total ATCA system (DI-H-3278/M) (A00Y).

## 1061DBD  OPERATING HAZARD ANALYSIS (OHA)

Work shall be initiated on an OHA which shall be performed in accordance with MIL-STD-882, paragraph 5.8.2.4 to identify and evaluate the safety requirements associated with the environments, personnel, procedures and equipment involved throughout the operational phase of the ATCA system.

I-26

Ex.: 17; p.: 664

F33700-78-C-0001

1061E  ELECTROMAGNETIC COMPATIBILITY

The ATCA shall function as an electromagnetically
compatible system both within itself and with its
external environment, which shall include, but not be
limited to, protection from lightning, precipitation
static, and other natural hazards.  The basic commer-
cially designed system shall meet applicable FAA EMC
system requirements.  MIL-E-6051D and MIL-STD-704A
shall apply to the extent that equipment added for
the ATCA and the basic commercially designed system
shall be electromagnetically compatible.  The con-
tractor shall establish an EMC program to ensure ATCA
system compatibility.  The program shall include an
analysis of the ATCA system to identify potential
EMI generation and susceptibility conditions which
could occur within the ATCA and between it and its
operating environment.  A system EMC plan per para-
graph 3.3 of MIL-E-6051D shall be prepared and, in
it, specific measures or approaches for the control of
EMI conditions shall be proposed.  The format and
submission of the plan shall conform to DI-R-3530/M
(A01L).  Tasks performed during this period shall be
in accordance with the approved EMC plan.

1061EA  SUBSYSTEMS/EQUIPMENTS

The contractor shall integrate all ATCA subsystems/
equipments so as to achieve a fully compatible system.
Commercial avionics and other equipments to be supplied
by the contractor shall meet applicable FAA EMI/EMC

I-27

FS3700-76-C-0001

specifications. ATCA peculiar subsystems/equipments shall meet the requirements of MIL-STD-461, Notice 3, as approved by the Air Force in the individual equipment specification. EMI control at the subsystem/equipment level shall be defined in the system EMC plan.

1061F    FACILITIES

The contractor shall participate in a facilities engineering program as stated herein for the purpose of directly supporting the system program.

1061FA    FACILITIES REQUIREMENTS PLAN

The contractor shall provide an updated Facilities Requirements Plan (DI-S-6173A/M) (A02A).

1061G    TRADE STUDIES

1061GA    INDIVIDUAL AIRPLANE TRACKING PROGRAM

Trade studies shall be performed to determine the most cost effective method of tracking the service life (expended and remaining) of each airplane's structure (DI-S-3606/M) (A026). These studies shall include, but not be limited to, examination of the relation to the civil fleet methods of data acquisition (manual, mechanical or electrical), methods of data analysis, and relation to the structural maintenance plan. Use of data from similar data acquisition systems on both ATCA and airline aircraft for a limited flying period shall be studied in regard to gathering service spectra for comparison to airline structural experience. The studies shall consider the practicality of the required use of the Aircraft Structural Integrity Management Information System located at the Oklahoma City Air Logistics Center for data processing and analysis. The trade studies shall include both technical and life cycle cost considerations in providing a recommended procedure for individual airplane tracking. The studies shall also consider a contractor-operated data gathering and analysis system to track the fleet for the first three years.

Ex.: 17; p.: 666

F33700-78-C-0001

1061GB    TURBOFAN ENGINE DIAGNOSTIC MONITORING

The contractor shall perform trade studies to determine
the simplest, most efficient and reliable turbofan
engine diagnostic system that is compatible with the
maintenance concept (DI-S-3606/M) (A027).  The diagnos-
tic system should consider manual monitoring of the
engine performance parameters as well as airborne instru-
mentation data systems in conjunction with other diag-
nostic tools such as a borescope.  Engine performance
parameters or indications to be monitored, as well as
procedures for processing and analyzing the data obtained,
shall be established.

1061H    DESIGN/PROGRAM REVIEWS

The contractor shall plan and conduct design/program
reviews to allow the JPO to assess the degree of
completion of technical efforts in support of modifi-
cations to the basic aircraft and design of ATCA
peculiar support equipment.  The reviews shall cover
all performance requirements  and engineering inte-
gration efforts.  The reviews shall consist of selected
Preliminary Design Review (PDR), Critical Design Review
(CDR), Mockup Inspections, and formal reviews based on
technical milestones.  PDRs and CDRs shall be scheduled
for the structural modifications for aerial refueling,
aerial refueling system, avionics, and furnishings and
equipment and shall include mockup inspections of the
flight deck and ARO station as applicable.  Initial
notification of the proposed agenda for each review shall
be provided by the contractor thirty (30) days prior to
the design review.  The contractor shall formally notify
the NAVPRO and JPO ten (10) days prior to each review of
the item(s) to be discussed.  Data to support each PDR
shall be provided by the contractor and shall include
applicable specifications, drawings, interface require-
ments and trade studies.  Data to support each CDR shall
be provided by the contractor and shall include pre-
liminary specification amendments as applicable, draw-
ings, interface specifications and trade studies.

During this period the contractor shall plan and conduct
Design Reviews as defined in the System Engineering
Management Plan, to include all PDRs, preliminary mockup
reviews of the ARO station and cockpit and CDRs on the
structural modifications and Aerial Refueling Boom (ARB).

I-29

Ex.: 17; p.: 667

All analyses required for Design Reviews shall be
submitted as noted in other sections of this SOW.


1061I    AIRCRAFT STRUCTURAL INTEGRITY PROGRAM (ASIP)

The Aircraft Structural Integrity Program for the
DC-10 ATCA airframe shall be in accordance with the
approved ASIP Master Plan (DI-S-3570/M) (A01S).  The
plan shall be revised, as necessary, to reflect any
changes required as a result of the Damage Tolerance
and Durability Assessment, and FAA requirements.


1061IA    ATCA DAMAGE TOLERANCE AND DURABILITY ASSESSMENT
          PURPOSE

The contractor shall update and submit the Damage
Tolerance and Durability Assessment Plan (DI-S-3581/M)
(A01V).  The contractor shall initiate a durability and
damage tolerance assessment for the ATCA based on the
available commercial experience, past analyses of the
commercial model, and current technology in the area
of loads, stress, fatigue, and fracture mechanics to
determine an economic operational life, and to identify
those structural inspections (and any structural
retrofits) required to preclude safety or major economic
problems.  The contractor shall utilize the analyses
methods and experimental results which have been
developed for the commercial aircraft.  Commercial
fleet experience shall be used to locate potential
fatigue critical areas for the ATCA model.  The
Damage Tolerance and Durability Assessment shall
consist of the following three tasks.


1061IAA    DAMAGE TOLERANCE

**The** contractor shall identify the critical areas of
**the** ATCA model.  The initial identification of critical
**areas** shall be based on commercial aircraft service
**experience**, a review of the predicted stresses of the
ATCA model compared to the commercial aircraft, structural
materials, and design detail concepts.  The classifica-
tion of the critical areas with regard to the form of
damage tolerance (slow crack growth or fail-safe),
including degree of inspectability, shall be as specified
in paragraph 3.2 of MIL-A-83444.  The residual strength

I-30

capability as specified in paragraph 3.1.3 of MIL-A-83444 shall be considered in establishing the classification of an area. The critical areas shall then be screened based on critical flaw size, in-service inspectability, and assessment of the damage susceptibility of the structure (both initial fabrication and in-service damage). During this period, the contractor shall complete this task.

1061IAB    STRESS SPECTRA DEVELOPMENT

The contractor shall develop the stress spectra for each critical area of the airframe identified. The contractor shall develop flight-by-flight sequenced stress spectra based on projected ATCA usage as provided by the Air Force (SOW Appendix II). Variations in stress spectra to account for usage severity, random load sequence, mission mix and truncation (high and low) shall be considered.

Crack growth sensitivity studies (analytical and laboratory tests as required) shall be performed to determine what spectra shall be used in determining economic and safety limits (SOW Paragraph 1061IAC) and shall be subject to Air Force approval.

1061IAC    ECONOMIC AND SAFETY LIMIT DETERMINATION

The contractor shall determine economic and safety limits for those critical areas identified on the ATCA airframe. Analyses shall be conducted to establish any structural retrofit times and inspection requirements for the ATCA structure. The initial flaw size for calculation of the safety limit shall be as specified in paragraph 3.1.1 of MIL-A-83444. The economic repair limit shall be determined using methodology and experimental results developed for commercial aircraft. For comparison at selected critical areas, an independent analysis shall be made where the initial flaw size for calculation of the economic repair limit shall be based on Air Force experience in other programs and any available contractor data. The selected initial flaw size shall be subject to Air Force approval. Crack growth analyses shall account for spectrum load interaction effects. The predicted inspection and modification times shall be verified by coupon and component tests representing selected critical areas, subjected to the stress spectra developed in SOW paragraph 1061IAB. The difference in usage and subsequent difference in life between the ATCA unmodified structure and the commercial aircraft shall be obtained in an expedient manner through

I-31

the use of coupon tests for the two stress spectra.  For the ATCA modified structure and more highly stressed structure, component testing, and additional analyses shall be performed for selected critical areas.

During this period, the contractor shall:

(1)   Select critical areas

(2)   Initiate damage tolerance and durability analyses

(3)   Conduct component tests for selected critical areas

1061J    MASS PROPERTIES

The contractor shall initiate the weight control program on the modifications to the aircraft.  A system shall be defined for: (1) collecting, assembling, and distributing mass properties information; and (2) early detection of unfavorable design trends and identification of solutions to problem areas.  The system shall be as outlined in a Mass Properties Control and Management Program Plan tailored for this program (DI-S-3572/M) (A01T).  The contractor shall update the Mass Properties Plan and implement the program.

1061K    ANALYSES

1061KA    STRUCTURES

The contractor shall conduct structural analyses and tests in accordance with the regulations and requirements of the FAA.  The structural integrity of the aerial refueling boom support structure shall be demonstrated either by component static tests or full-scale proof tests.

During this period, the contractor shall perform the following tasks:

(1)   Participate in preliminary type board meetings with FAA.

(2)   Develop design external loads

I-32

F33700-78-C-0001

> (3) Develop distribution of loads in structure
>
> (4) Determine sizing requirements for ATCA peculiar structure
>
> (5) Perform strength checks of structural design
>
> (6) Initiate strength analyses
>
> (7) Review structural loads and strength status at PDR
>
> (8) Update design criteria and external loads and submit to FAA

1061KB   STRUCTURAL LOADS

For structural loads generated on the ATCA during coupled mode, in either tanker or receiver configuration, the contractor shall perform and submit a structural loads analysis in accordance with DI-S-3581/M (A01Y). A loads analysis shall also be done on those items excluded from the FAA certification process. The structural loads analysis report shall contain those data necessary to establish, in detail, the magnitude and distributions of all applied induced/external loads that the ATCA is required to sustain. Maximum use shall be made of reports previously submitted to the FAA. Irrespective of FAA or Air Force certification, an analysis report shall be prepared on the Aerial Refueling Boom (ARB) in accordance with DI-S-3581/M (A01Y).

1061KC   STRENGTH

For those items which are excluded from the FAA certification process, the contractor shall initiate a stress analysis report in accordance with DI-S-3581/M (A01Y). Maximum use shall be made of reports previously submitted to the FAA. Irrespective of FAA or Air Force certification, an analysis report shall be prepared on the Aerial Refueling Boom (ARB) in accordance with DI-S-3581/M (A01Y).

I-33

Ex.: 17; p.: 671

F33700-76-C-0001

### 1061KD  AERIAL REFUELING SYSTEM

A subsystem design analysis of the total aerial refueling system, which includes the additional tankage, ground accessible refueling system, centerline boom and hose/drogue aerial refueling systems, the refueling receptacle installation (UARRSI) and the reverse refueling system shall be submitted in accordance with DI-S-3581/M (A01X).

The contractor, in conjunction with the Air Force, shall establish stability criteria for abnormal combinations of boom state and control system mode.  In establishing the stability criteria for these cases, the following shall be considered:

a.  The remoteness of the probability of occurrence of the combination.

b.  The ability of the control system to detect a boom state control mode mismatch and take automatic corrective action.

c.  Potential loss of performance in the normal mode due to design compromises required to meet the stability criteria for the abnormal modes/states.

d.  The ability of the ARO to take timely action.

### 1061KE  AIR CONDITIONING SYSTEM

The contractor shall complete and submit a subsystem design analysis of the air conditioning system in accordance with DI-S-3581/M (A02l).  The analysis shall include thermal and performance considerations (including avionics loads) and a system description.

### 1061KF  HYDRAULIC SYSTEM

The contractor shall complete and submit a subsystem design analysis of the hydraulic system in accordance with DI-S-3581/M (A01Z).  The hydraulic system shall be analyzed as to its capability to accommodate the additional aerial refueling system requirements.  The following analyses shall be performed for the aerial refueling mode:

I-34

Ex.: 17; p.: 672

F33700-78-C-0001

(1) Load analysis to verify that adequate power is available.

(2) Temperature analysis to verify that fluid temperatures will not exceed capability of the fluid.

1061KG    INHERENT CARGO TRANSPORT CAPABILITY

Aircraft structural capability, particularly floor strength, required to accommodate the refueling mission and the standard 463L pallets carrying bulk-type cargo shall be analyzed for determination of inherent capability to accommodate the following additional cargo types: (DI-S-3581/M) (A01W).

(1) Non-palletized bulk-type cargo.

(2) Non-palletized cargo that can be loaded/unloaded through the existing design cargo door and induces relatively high unit loading; i.e., wheeled support equipment for an F-4 deployment.

(3) Single-pallet cargo that induces relatively high unit loading; i.e., wheeled and skidded loads.

(4) Cargo that exceeds overall size and/or weight capability of one 463L pallet and must be supported by, and restrained on two or more pallets. Design requirements for unique pallet couplers shall be provided.

(5) Cargo that exceeds 463L pallet size, but incorporates its own 463L-compatible base; i.e., bare base shelters or aerial delivery platforms.

1061KH    BIOMEDICAL/LIFE SUPPORT

The contractor shall analyze the environment of the ATCA and identify any condition that constitutes a hazard to health or performance of personnel (DI-H-3260/M) (A00W). These hazards shall be fully investigated and appropriate measures to render them non-hazardous shall be developed. The analysis shall include the aerial refueling and cargo/support personnel transport mission. The contractor shall develop biomedical support design criteria in accordance with paragraph 3.2.2.3 of MIL-H-46855A.

Ex.: 17; p.: 673

FD3F00-78-G-0001

**1061KI**   ELECTRICAL SYSTEM

The contractor shall complete and submit a subsystem design analysis of the electrical system (DI-S-3581/M) (A020).


**1061L**   RELIABILITY PROGRAM

The reliability program shall be primarily concerned with the difference between the basic aircraft and the ATCA model.  It shall also be concerned with the effect installation of ATCA peculiar equipment and changes in aircraft use have on the reliability characteristics of the basic aircraft.  The contractor shall itemize and describe any effects that ATCA peculiar modifications or equipment, and their use, have on the aircraft.  A Reliability Program Plan (RPP) that considers the total effort to assure a highly reliable system shall be provided (DI-R-3533/M) (A01N).  The plan shall describe an integrated effort of all system disciplines and provide specific information to delineate how the contractor will meet specified quantitative reliability requirements during development and manufacture.  As the program proceeds, the contractor shall update the reliability program plan to provide additional clarifying description and details of how its intended work effort will be accomplished.  The contractor's effort shall extend throughout the design, production and test phases of the system procurement.  Applicable paragraphs of MIL-STD-785A are 4.1, 4.2, 4.3, 4.4, 5.1.2.1(3), 5.1.2.1(6), 5.1.2.1(7), 5.1.3, 5.2.2, 5.2.2.3, 5.2.4, 5.2.5, 5.2.7, 5.3, 5.4.1, 5.4.2, 5.5.1 and 5.6.  Tasks performed during this period shall be in accordance with the approved Reliability Program Plan.  In order to monitor and evaluate the contractor's progress and accomplishments in conducting the reliability program, the contractor shall submit reliability allocation assessments and analysis reports (DI-R-3535/M) (A01P).  R/M Data Reporting Feedback - Failure Summary Reports shall be submitted (DI-R-3537A/M) (A01Q).


**1061LA**   RELIABILITY REQUIREMENTS

The contractor shall establish reliability goals for each mission (see Appendix II) prorated by standard and ATCA peculiar equipment (DI-R-3535/M) (A01P).  Probability of mission success shall be no less than 96 percent from initiation of engine start sequence to landing.  Demonstration of mission success shall be by analysis.

I-36

Ex.: 17; p.: 674

F33700-78-C-0001

1061M    MAINTAINABILITY

The maintainability program shall be concerned with the
installation and removal for maintenance purposes of
equipment which represents the difference between the
basic aircraft and the ATCA and the effect installation
of this equipment has on the maintainability character-
istics of the aircraft. The contractor shall list, for
the above equipment, all of the anticipated on-aircraft
corrective tasks and all preventive maintenance tasks.
For each task he shall provide the estimated task fre-
quency per flight hour and the manhours required to
perform each task once. Tasks not anticipated but
which occur during testing shall be added to the total
population. The contractor shall provide as a proposed
requirement, the total manhours per flight hour required
to do these tasks. A Maintainability Program Plan shall
be submitted (DI-R-3533/M) (A01N). The contractor shall
conduct the maintainability program in accordance with
MIL-STD-470, paragraph 4.1. Maintainability reports
shall be submitted with the reliability reports (DI-R-
3535/M and DI-R-3537A/M) (A01P and A01Q).


1061MA   MAINTAINABILITY REQUIREMENTS

The aerial refueling boom shall have a maintenance
man-hours per flight hour (MMH/FH) goal of 0.5 at the
organizational and intermediate levels. This goal shall
be demonstrated by analysis for the refueling mission
profiles of Appendix II.


1062     PROGRAM MANAGEMENT

The contractor shall operate a program management system
that is responsive to the accomplishment of all tasks
set forth in the contract SOW. The contractor's system
shall utilize existing management systems to the maximum
extent possible. The contractor's management system
shall contain all elements necessary to generate mean-
ingful cost and schedule information and shall include
such critical elements as planning, scheduling, budget-
ing, work authorizations, accounting, performance analysis,
at completion estimates, and reporting.

I-37

Ex.: 17; p.: 675

1062A    PHOTOGRAPHIC COVERAGE

The contractor shall develop and submit a Photographic
Plan (DI-A-3006/M) (A001).  This photographic coverage
shall provide Air Force Management the necessary visual
records to analyze and evaluate overall program progress.


1062AA   STILL PHOTO COVERAGE

The contractor shall furnish still photo coverage
(DI-A-3011/M) (A003) in accordance with the approved
Photographic Plan (DI-A-3006/M) (A001).


1062B    FINANCIAL MANAGEMENT

The contractor shall use in the execution of this con-
tract a system that plans and controls cost, measures
contract performance, analyzes economic conditions and
is the data base for (1) reporting reliable expenditure
and schedule status, and (2) providing budgetary plan-
ning information.  The contractor shall provide requested
budgetary planning information within three working days
after receipt of request or as mutually agreed.  Specifi-
cally, the contractor shall submit a Cost and Performance
Report (DI-F-1208A/M) (A001) which will provide sufficient
information for the Air Force to:


1062BA   Assess the impact of actual progress against planned
progress in relation to the proposed billings against
the planned billing schedule.


1062BB   Accomplish normal Air Force lead time away budgeting
by using the option provision in conjunction with the
Economic Price Adjustment provision contained in Section
J of the contract.

Ex.: 17; p.: 676

F33700-78-C-0001

1062BC    Assess the impact of inflation through the Economic
          Price Adjustment (EPA) clause on the projected contract
          funds requirement.  The contractor shall provide pro-
          jected billing schedules for each aircraft ordered
          against the most recent statement of delivery price.
          This report shall reflect the contractor's latest
          assessment of the economic conditions, labor union
          agreements and statistical evaluation affecting each
          reference index series in the EPA clause.


1062C     PROGRAM SCHEDULE

          The contractor shall develop and maintain the following
          program schedules, down through the equivalent level
          of CWBS Level 3, which depict the major milestones/key
          events necessary to complete the program (DI-A-3007/M)
          and DI-A-3023/M) (A002 and A006):

          (1)   Program Master Schedule (Major Milestones)

          (2)   Engineering Master Milestone Schedule

          (3)   First Article Pre-Production Schedule

          The contractor shall assess and explain in detail the
          degree of risk associated with these schedules.  The
          contractor shall identify pacing items and explain
          their resolution.


1062CA    PROGRESS REPORTS

          In order to maintain a management interface between
          the contractor and the JPO, the contractor shall submit
          monthly program status reports which highlight progress
          against the planned schedules in accordance with DI-A-
          3007/M (A002).  These reports shall also address any
          schedule slippage, forecast get-well date, and identify
          any required Government action.  The contractor shall
          notify Government representatives of any potential or
          anticipated schedule slips at the time they are inter-
          nally identified by the contractor.

Ex.: 17; p.: 677

F33700-78-C-0001

**1062D**    CONTRACT WORK BREAKDOWN STRUCTURE (CWBS)

The contractor shall prepare and submit a CWBS in
accordance with CDRL Item DI-A-3023/M (A006) for use
in reporting schedule performance.  The contractor's
procedures and format shall be acceptable.  Changes/
revisions shall be submitted as required.

**1062E**    CONTRACT MANAGEMENT

The contractor shall prepare   Task Change Proposals
(DI-A-3020/M) (A005) to control and approve changes to
contract line items that are not directly related to
specifications or under the control of Paragraph 1061A
of the SOW.

**1062F**    COMMUNICATIONS

To ensure adequate communications capability exists
between the JPO and the contractor's facility, the
contractor shall provide and maintain at the JPO two
direct telephone circuits with up to ten telephones
and an unclassified fax circuit.

**1062G**    INTERFACE CONTROL

The contractor shall be responsible for interface
requirements specified in the SOW.  The interface
requirements shall follow the procedures outlined
in MIL-STD-483 (USAF), Appendix II.

Ex.: 17; p.: 678

1070    DATA MANAGEMENT

The contractor's data management procedures shall be
capable of administering all data generated or required
as a result of the tasks and effort under this contract.
The contractor's data management system shall assure
that data items will be submitted in a timely manner
and of a quality content which will comply with the
requirements of the Contract Data Requirements List.
It shall track the delivery of data items to determine
that the data is submitted in accordance with the
scheduled requirements and shall include the status of
approval actions.


1071    TECHNICAL ORDERS AND MANUALS


1071C   COMPONENT AND SUPPORT EQUIPMENT (SE) MANUALS

The contractor shall provide Contractor Furnished
Aeronautical Equipment/Contractor Furnished Equipment
(CFAE/CFE) Notices and Production Lists (DI-M-3405A/M)
(A015) to recommend manuals for ATCA-peculiar components
and SE.  The notices shall include recommendations on
the manual requirements (MIL-SPEC or ATA SPEC 101).


1071D   TIME COMPLIANCE TECHNICAL ORDERS (TCTO)


1071DB  SERVICE BULLETINS

The contractor shall provide all commercial service
bulletins applicable to the ATCA (DI-M-3407A/M) (A01A).


1071F   STATUS AND SCHEDULES

The contractor shall provide a Technical Order Status
and Schedules Report (DI-M-3402/M) (A014).


I-41

**1071G**     <u>TECHNICAL ORDER PUBLICATION PLAN (TOPP)</u>

The contractor shall prepare, submit and maintain a
Technical Order Publication Plan (DI-M-3401/M) (A013) to
describe his management procedures for providing the
required manuals to include preparation, review, valida-
tion, verification, control, and maintenance processes.

**1071GA**     <u>VALIDATION AND VERIFICATION</u>

Validation and verification shall only be required for
the new technical manuals and changed sections of
existing technical manuals. The contractor shall
include and implement procedures in the plan which
will take advantage of the pre-delivery flight test
and OT&E phases for validation and verification of
those technical manuals and sections thereof to be
utilized by Air Force personnel for operation and
maintenance of the ATCA. Validation and verification
of those technical manuals and sections thereof to be
used only by the logistics support contractor may be
accomplished in accordance with normal commercial
procedures.

**1071GB**     <u>TECHNICAL MANUAL AVAILABILITY</u>

The contractor shall include and implement procedures
in the plan to assure that at least preliminary
technical manuals are available for the OT&E phase.
If feasible, such manuals are to be available for the
pre-delivery flight test phase and initial training.
One full set of the technical manuals is required
with delivery of the first operational aircraft (Air-
craft No. 2).

**1071GC**     <u>TECHNICAL MANUAL MAINTENANCE</u>

The contractor shall include provisions in the plan
for continued maintenance (changes/revisions) of the
maintenance manuals in conjunction with the support
contractor.

Ex.: 17; p.: 680

F33700-78-C-0001

1072    ENGINEERING DATA

1072A    ENGINEERING DRAWINGS

The contractor shall prepare engineering data and
drawings necessary to describe all ATCA peculiar
items to be produced under this contract.

1072AA    FORMAT

Engineering data shall not be reissued for the purpose
of complying with format requirements of the CDRL.
Existing engineering data which requires change may be
changed/revised in the format in which it exists.  The
drawings system used for the basic aircraft shall be
utilized for ATCA peculiar drawings.

1072AB    MICROFILM

The contractor shall provide microfilm in accordance
with best commercial practices when drawings are ordered
by the AF or the support contractor.  Roll microfilm
or aperture cards are acceptable if minimum identifica-
tion requirements are met (reference MIL-STD-804).

1072B    TECHNICAL ANALYSIS

Technical analyses required for delivery to the Air
Force shall include only that analysis data required
to comply with the Statement of Work and CDRL.  If
additional analyses basic to the commercial aircraft
or to FAA certification are required to fully analyze
and understand the submitted analyses, they shall be
identified by reference in the data submittal.  The
Air Force shall have access to these documents at the
contractor's facility if so desired.

1074    DEFERRED DATA

I-43

Ex.: 17; p.: 681

F33700-78-C-0001

**1074A    DATA ACCESSION LIST/INTERNAL DATA**

The contractor shall prepare, maintain and deliver the
DAL/Internal Data (DI-A-3027) (A007) which shall list
the data produced under this contract but not otherwise
required for delivery by the CDRL.  The contractor shall
provide a maximum of two copies of any data contained on
the DAL upon receipt by the contractor of a properly
completed and signed ASD Form 47, Accession List Report
Order.  Only those formal documents receiving Douglas
report numbers or specification numbers will be listed.
As certain other documentation is recognized as being
necessary for program management and coordination, such
documentation will be added to the DAL.

**1074B    DEFERRED ORDERING**

The contractor shall provide the following data items,
if ordered, subject to contract schedule provision J-5,
the contract General Provisions and the following
conditions:

**1074BA    DATA GENERATED - NOT ORDERED**

The task of data preparation related to the following
data items is considered part of the program.  These
data items are subject to updating as the program evolves;
however, revision service for data once delivered will
not be maintained unless such revision service is
separately negotiated.  The estimated total price (Block
26 of Form 1423) includes handling, reproduction and
delivery.

DI-E-7015A/M    Drawings, Engineering and Associated Lists,
                Level 3 (Production) - Contractor format
                essentially in accordance with MIL-D-1000A
                and MIL-STD-100B.

DI-E-7015A/M    Drawings, Undimensioned, Stable Base Material

DI-H-3258A/M    Training Support Data

DI-L-3333A      Decalcomanias and Other Markings

DI-M-3405A/M    T.O. CFAE/CFE Notices and Related T.O.s
                Existing Commercial T.O.s

I-44

Ex.: 17; p.: 682

F03700-78-C-0001

DI-T-3721/M    Acceptance Test Reports

DI-UA-256      Industrial Preparedness Planning


1074BB   UNDERLINE{DATA PREPARATION PENDING ORDER}

The task related to the preparation of these data items
is not a part of the program.  The estimated total price
(Block 26 of 1423) includes preparation, handling,
reproduction and delivery.

DI-E-3109      Selected Item Configuration Records

DI-E-3110A     Component Operational Data Notice

DI-E-3135      Characteristics and Performance Data

DI-H-6130/M    Task and Skill Analysis (Maintenance)

DI-L-3315A     Master Material Support Record (MMSR) Data

DI-L-3316A/M   Residual Asset Listing, Preoperational

DI-P-3461      Procurement Method Coding Document

DI-P-3471/M    Lubrication Requirements

DI-R-3549/M    Optimum Repair Level Analysis (ORLA)
               Reports

DI-V-6184      Proposed Revision to the GSE Exhibit

DI-V-6185/M    List of Standard/Modified Hand Tools

DI-V-6186/M    Priced Support Equipment List


1074BC   UNDERLINE{UNESTIMATED DATA ITEMS}

**The level of effort related to preparation of these
items requires further definition.  The price and
delivery schedule, therefore, is to be negotiated at
the time the need is established.**

DI-E-7015A/M   Facility Installation Drawings

DI-E-7015A/M   Interchangeability and Replaceability
               Working List


I-45

| DI-P-3472A | Procurement Data Packages and List |
| DI-P-3473 | Procurement Method Information |
| DI-S-6177 | Calibration/Measurement Requirements Summary (CMRS) |
| DI-S-3557 | Facilities Design Criteria |

1075    COMMERCIAL DATA

The contractor shall provide commercial and existing data upon receipt of properly completed and signed ASD Form 47, Accession List Report Order (DI-M-5406/M) (A01E).

Ex.: 17; p.: 684

F33700-78-C-0001

ATCA STATEMENT OF WORK

APPENDIX I

APPLICABLE DOCUMENTS

30 SEPTEMBER 1977

Ex.: 17; p.: 685

F33700-78-C-0001

DC-10 ATCA

BASIC PROGRAM

STATEMENT OF WORK

APPENDIX 1

APPLICABLE DOCUMENTS

The specific issues of military and federal specifications and standards that are applicable to the ATCA SOW are as listed in the SOW. Specific issues of Aeronautical Radio Incorporated (ARINC) documents and ATA specifications shall be the latest version of each document that is compatible with the basic aircraft. Specific issues of other documents called for in the SOW (except FAA) are listed below.

| Designation | Title |
|---|---|
| AFSC DH 1-2, 20 Feb 76 | General Design Factors |
| AFSC DH 1-3, 1 Jan 75 with Revision 6 | Personnel Subsystems |
| AFSC DH 1-6, 20 Dec 75 with Revisions 2 and 3 | System Safety |
| AFAD 71-685, Apr 66, with Addendum One | Aerospace Ground Equipment, Identification/Selection/ Acquisition/Provisioning Document for USAF Contracts |
| AFSC DH 2-6, 10 Feb 76 with Revisions 1 and 2 | Ground Equipment and Facilities |
| AFSCR/AFLCR 66-24, 3 Jan 72 | Maintenance of Aerospace Vehicles and Related Support Equipment |
| AFR 55-22, 8 Oct 71 | Contractor's Flight Operations |
| AFR 127-101, 4 Sep 71 with Change 1, 13 Jun 75 | Ground Accident Prevention Handbook |

I-48

F33700-78-C-0001

ATCA STATEMENT OF WORK

APPENDIX II

MISSION PROFILES

30 SEPTEMBER 1977

I-49

Ex.: 17; p.: 687

F33700-78-C-0001

## APPENDIX II

### MISSION PROFILES

These mission profiles will be used for Life Cycle Cost Determination, Structural Design Criteria and Reliability Analysis.

Calculations shall be based upon the following assumptions and rules:

1. No fuel flow conservation is applied.

2. Ground distance and time are included in the totals.

3. The fuel allowance for initial taxi, takeoff and acceleration to en route climb speed is equivalent to the consumption during 10 minutes at ground idle power plus 5 minutes at maximum sea level static cruise thrust.

4. Fuel consumption for the final taxi/park segment is calculated at ground idle power.

5. The fuel reserve at the beginning of the final approach and landing is 28,000 pounds.

6. Final descent terminates at 1,500-foot altitude.

7. The 15-minute approach/land segment is flown with landing gear extended, flaps at the appropriate approach setting, and at the commensurate approach speed.

8. Takeoff and landing are accomplished at sea level.

9. Standard day conditions with zero winds prevail for performance calculations.

10. Altitude changes are accomplished by long-range climb or descent. Distance gained and elapsed time are included in the adjacent cruise segment.

11. Minus quantities under the FUEL TRANSFER column heading indicate the fuel transferred from the ATCA to a receiver and plus quantities indicate fuel transferred from a tanker to the ATCA.

I-50

Ex.: 17; p.: 688

ATCA MISSION PROFILE

## TAF EMPLOYMENT

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | - - - | :15 | 10 | | 411923 | |
| Climb | 28 | 340-309 | :11 | 76 | | 407283 | |
| Cruise #1 | 28 | 300 | 1:00 | 473 | | 400671 | |
| Orbit | 28 | 230 | 1:00 | 0 | | 383671 | |
| **AR#1 | 28 | 300 | :15 | 0 | -17,000 | 370737 | 4 |
| Orbit #2 | 28 | 217 | 1:00 | 0 | | 349534 | |
| **AR #2 | 28 | 300 | :15 | 0 | -17,000 | 337834 | 4 |
| Orbit #3 | 28 | 208 | 1:00 | 0 | | 316779 | |
| **AR #3 | 28 | 300 | :15 | 0 | -17,000 | 306244 | 4 |
| Cruise #2 | 28 | 238 | 1:43 | 642 | | 285296 | |
| Descent | 1.5 | 250 | :12 | 68 | | 266846 | |
| Approach/Land | 0 | - - - | :15 | 35 | | 266287 | |
| Taxi/Park | 0 | - - - | :20 | 10 | | 263787 | |
| TOTALS | -- | - - - | 7:41 | 1314 | -51,000 | - - - - | 12 |

Empty Wt.: 238,287 lbs.
Fuel Consumed: 98,695 lbs.

No. Touch & Go Landings: 0
No. Full Stop Landings: 1

Percentage Flown: 2

TAF DEPLOYMENT/REDEPLOYMENT

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | | :15 | 10 | | 591,800 | |
| Climb | 28.0 | 340-309 | :21 | 148 | | 587,160 | |
| Cruise #1 | 28.0 | 290 | :17 | 130 | | 574,684 | |
| A/R #1 | 28.0 | 290 | :17 | 130 | - 30,000 | 568,631 | 4 |
| Cruise #2 | 28.0 | 290 | 1:39 | 754 | | 532,687 | |
| A/R #2 | 28.0 | 290 | :23 | 172 | - 40,000 | 500,669 | 4 |
| Cruise #3 | 28.0 | 290 | :45 | 342 | | 453,630 | |
| A/R #3 | 28.0 | 290 | :17 | 130 | - 30,000 | 440,535 | 4 |
| Cruise #4 | 28.0 | 290 | :36 | 274 | | 405,642 | |
| A/R #4 | 28.0 | 290 | :17 | 130 | - 30,000 | 395,803 | 4 |
| Cruise #5 | 28.0 | 290 | :35 | 267 | | 361,178 | |
| A/R #5 | 28.0 | 290 | :12 | 86 | - 20,000 | 352,119 | 4 |
| Cruise #6 | 28.0 | 290 | 1:13 | 556 | | 329,170 | |
| Descent | 1.5 | 270 | :13 | 75 | | 311,054 | |
| Approach/Land | 0 | | :15 | 35 | | 310,445 | |
| Taxi/Park | 0 | | :20 | 10 | | 307,945 | |
| TOTALS | - - - | - - - | 7:55 | 3249 | -150,000 | - - - - | 20 |

No. Touch & Go Landings: 0  Percentage Flown: 10
No. Full Stop Landings: 1  ACL  33,756 lbs.

Empty Wt.: 248690 lbs.
Fuel Consumed: 135,414 lbs.

T-52

Ex.: 17; p.: 690

F33700-78-C-0001

ATCA Mission PROFILE

Cargo Training

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 416571 | |
| Climb Out | 36 | 340-257 | :16 | 114 | | 411931 | |
| Cruise | 36 | 250 | 3:56 | 1000 | | 403298 | |
| Descend | 1.5 | 270 | :17 | 103 | | 348446 | |
| Approach/Land | 0 | 140 | :15 | 38 | | 347716 | |
| Taxi/Park | 0 | 0 | :20 | 10 | | 344892 | |
| TOTALS | | | 5:18 | 2075 | | | |

Payload: 76,000 l

No. Touch and Go Landings: 0
No. Full Stop Landings: 1

Percentage Flown: 1

Empty Weight: 243,710 lbs
Fuel Consumed: 73,311 lbs

Ex.: 17; p.: 691

MAC MISSION PROFILE

MAC Long Haul and/or Training

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 432032 | |
| Climb | 35 | 340-289 | :16 | 115 | | 427392 | |
| Cruise #1 | 35 | 255 | :58 | 442 | | 419522 | |
| Orbit #1 | 20 | 228 | :15 | 0 | | 405308 | |
| A/R #1 | 20 | 255 | :28 | 163 | -95,000 | 401828 | 3 |
| Climb | 42 | 329-222 | :10 | 76 | | 300479 | |
| Cruise #2 | 42 | 217 | :58 | 450 | | 296720 | |
| Cruise #3 | 42 | 217 | :37 | 284 | | 285999 | |
| Descend | 1.5 | 270 | :18 | 112 | | 279425 | |
| Approach/Land | 0 | 140 | :53 | 140 | | 270703 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 264353 | |
| TOTALS | | | 5:27 | 1802 | -95,000 | | 3 |

No. Touch and Go Landings: 5 (After final descent phase)
No. Full Stop Landings: 1

Percentage Flown: 30

Empty Weight:  230,039 lbs
Fuel Consumed:  74,238 lbs

I-54

Ex.: 17; p.: 692

F33700-78-C-0001

## ATCA Mission Profile
### Contingency Cargo

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 523600 | |
| Climb | 33 | 340-204 | :18 | 133 | | 519040 | |
| Cruise #1 | 33 | 274 | 1:54 | 900 | | 508206 | |
| Cruise #2 | 33 | 267 | 1:55 | 900 | | 472650 | |
| Aerial Refuel | 28 | 290 | :17 | 133 | +136,418 | 440261 | |
| Climb | 30 | 260 | :01 | 4 | | 571191 | |
| Cruise #3 | 30 | 293 | 1:53 | 900 | | 570914 | |
| Cruise #4 | 34 | 268 | 4:46 | 2250 | | 530934 | |
| Descend | 1.5 | 270 | :10 | 105 | | 442006 | |
| Approach/Land | 0 | 140 | :15 | 45 | | 442122 | |
| Taxi/Park | 0 | | :20 | 10 | | 430522 | |
| TOTALS | | | 12:13 | 5390 | | | |

Empty Weight: 242,492 lbs
Fuel Consumed: 223,135 lbs
Payload: 171,500#

No. Touch and Go Landings: 0
No. Full Stop Landings: 1

Percentage Flown: 1

F33700-78-C-0001

'CA   SSI   PR   LE

B-52 Training

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 390068 | |
| Climb | 31 | 340-289 | :11 | 80 | | 385428 | |
| Cruise #1 | 31 | 270 | :30 | 225 | | 370733 | |
| Orbit | 30 | 229 | :15 | 0 | | 371510 | |
| A/R #1 | 30 | 240 | :45 | 300 | -25,000 | 360320 | 6 |
| Cruise #2 | 31 | 270 | :45 | 340 | | 333572 | |
| Orbit #2 | 30 | 212 | :15 | 0 | | 323254 | |
| A/R #2 | 30 | 240 | :45 | 312 | -25,000 | 320528 | 6 |
| Cruise #3 | 35 | 232 | 1:07 | 450 | | 286640 | |
| Descent/Land | 0 | 270 | :52 | 187 | | 274591 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 264342 | |
| TOTALS | | | 6:02 | 1914 | -50,000 | | 12 |

Empty Weight: 238,039 lbs
Fuel Consumed: 77,205 lbs

No. Touch and Go Landings: 3 (After final descent phase)
No. Full Stop Landings: 1

Percentage Flown: 6

Ex.: 17; p.: 694

F03700-76-C-0001

TYPICAL MISSION PROFILE

B-52 Contingency

Two B-52s

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 503611 | |
| Climb | 31 | 340-289 | :17 | 123 | | 498971 | |
| Cruise #1 | 31 | 265 | 1:50 | 809 | | 488916 | |
| Orbit | 31 | 250 | :15 | 0 | | 457168 | |
| A/R #1 | 31 | 245 | 1:05 | 442 | -140,000 | 453048 | 2 |
| Climb | 42 | 289-222 | :06 | 49 | | 298012 | |
| Cruise #2 | 42 | 217 | 2:43 | 1260 | | 296015 | |
| Descend | 1.5 | 270 | :18 | 112 | | 267000 | |
| Approach/Land | 0 | 140 | :15 | 35 | | 266287 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 263787 | |
| | | | | | | | |
| TOTALS | | | 7:24 | 2850 | -140,000 | | 2 |

No. Touch and Go Landings: 0
No. Full Stop Landings: 1

Percentage Flown: 1

Empty Weight:   238,287 lbs
Fuel Consumed:  101,383 lbs

Ex.: 17; p.: 695

F33700-78-C-0001

...TCR MISSION PROFILE

FIGHTER TRAINING (LOW ALTITUDE, 160-220)

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | - - - | :15 | 10 | | 431923 | |
| Climb | 31 | 340-289 | :13 | 94 | | 427283 | |
| Cruise #1 | 31 | 270 | :30 | 225 | | 419508 | |
| Orbit | 20 | 235 | :15 | 0 | | 412794 | |
| A/R #1 | 20 | 310 | :45 | 319 | -40,000 | 409248 | 12 |
| Climb | 31 | 329-289 | :04 | 35 | | 355974 | |
| Cruise #2 | 31 | 270 | :45 | 337 | | 353748 | |
| Orbit #2 | 20 | 212 | :15 | 0 | | 344116 | |
| A/R #2 | 20 | 310 | :45 | 318 | -40,000 | 341164 | 12 |
| Climb | 42 | 329-222 | :10 | 76 | | 288689 | |
| Cruise #3 | 42 | 217 | :58 | 450 | | 284982 | |
| Descent/Land | 0 | 270 | :55 | 210 | | 274669 | |
| Taxi/Park | 0 | - - - | :20 | 10 | | 264341 | |
| TOTALS | | | 6:10 | 2084 | -80,000 | - - - - | 24 |

No. Touch and Go Landings: 3  (After final descent phase)
No. Full Stop Landings: 1

Percentage Flown: 1

Empty Weight: 238,839 lbs.
Fuel Consumed: 89,141 lbs.

I-58

FCA mission Profile

Fighter Training (Med Alt 260-310)

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 531218 | |
| Climb | 31 | 340-289 | :19 | 137 | | 526578 | |
| Cruise #1 | 31 | 270 | :30 | 225 | | 515422 | |
| Orbit | 28 | 239 | :15 | 0 | | 506362 | |
| A/R #1 | 28 | 295 | :60 | 465 | -80,000 | 501772 | 24 |
| Climb | 31 | 309-289 | :01 | 11 | | 403402 | |
| Cruise #2 | 31 | 270 | :45 | 337 | | 402764 | |
| Orbit #2 | 28 | 217 | :15 | 0 | | 391690 | |
| A/R #2 | 28 | 295 | :60 | 465 | -80,000 | 388337 | 24 |
| Climb | 42 | 309-322 | :07 | 57 | | 292297 | |
| Cruise #3 | 42 | 217 | :58 | 450 | | 289896 | |
| Descent/Land | 0 | 270 | :71 | 252 | | 279411 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 264339 | |
| TOTALS | | | 6:56 | 2419 | -160,000 | | 48 |

Percentage Flown: 40
No. Touch and Go Landings: 5 (After final descent phase)
No. Full Stop Landings: 1

Empty Weight: 238,839 lbs
Fuel Consumed: 108,438 lbs

T-59

Ex.: 17; p.: 697

Case MDL No. 875 - Document 6666-1 Filed 01/28/11 Page 163 of 403
Case 3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 162 of 203
3700-75-C-0101

ATCA MISSION PROFILE

## Fighter Training (Med Alt 260-310) and ATCA Refueling Training

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 513503 | |
| Climb | 31 | 340-289 | :18 | 128 | | 508943 | |
| Cruise #1 | 31 | 270 | :30 | 225 | | 498509 | |
| Orbit | 28 | 263 | :15 | 0 | | 489797 | |
| A/R #1 | 28 | 295 | :60 | 465 | -80,000 | 485304 | 24 |
| Climb | 31 | 309-289 | :01 | 10 | | 387401 | |
| Cruise #2 | 31 | 270 | :45 | 337 | | 386810 | |
| Orbit #2 | 28 | 228 | :15 | 0 | | 376015 | |
| A/R #2 | 28 | 295 | :60 | 465 | -80,000 | 372808 | 24 |
| Climb | 42 | 309-422 | :07 | 58 | | 277024 | |
| Cruise | 42 | 208 | :45 | 348 | | 274628 | |
| A/R | 28 | 290 | :45 | 343 | +80,000 | 266090 | 6 |
| Climb | 40 | 309-234 | :06 | 47 | | 335927 | |
| Cruise #3 | 40 | 228 | :58 | 450 | | 333732 | |
| Descent/Land | 0 | 270 | 1:11 | 252 | | 321717 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 306621 | |
| TOTALS | | | 8:31 | 3148 | -160,000 Offload<br>+80,000 Onload | | 54 |

No. Touch and Go Landings: 5 (After final descent phase)
No. Full Stop Landings: 1    Percentage Flown: 8

Empty Weight: 230,039 lbs
Fuel Consumed: 120,521 lbs

I-60

Case MDL No. 875 Document 6666-1 Filed 01/28/11 Page 164 of 403
Case 3:11-cv-00061-JSW Document 71 Filed 01/24/11 Page 163 of 201

F33700-78-C-0001

# ATCA STATEMENT OF WORK

# PART II

# (OPTION I)

# 30 SEPTEMBER 1977

Ex.: 17; p.: 699

F33700-76-C-0001

1000      PRODUCTION OF THE ADVANCED TANKER/CARGO AIRCRAFT
(ATCA) SYSTEM

The contractor shall complete all nonrecurring design/
engineering effort. The contractor shall fabricate,
test and evaluate an ATCA in accordance with the
requirements of Detail Specification DS-5500-ATCA,
and the requirements of this Statement of Work.
The contractor shall obtain a Type Certificate,
amended Type Certificate, or Supplemental Type
Certificate, as appropriate, from the FAA for the
Model DC-10 ATCA. The first ATCA may be delivered
for OT&E on a Special Airworthiness Certificate
(FAA Form 8130-7); however, a Conformity Certificate
Military Aircraft (FAA Form 8130-2) shall be provided
for this aircraft following completion of OT&E and
necessary aircraft refurbishment to the production
configuration.

The contractor shall provide ATCA training, integrated
logistics support, support equipment, system test and
evaluation, system engineering/program management,
and data management as defined herein.

A limited number of nonrecurring activities included
as part of Option 1, and identified by an asterisk
(*) in the left hand column of the SOW text, shall
be accomplished during the OT&E program period pur-
suant to contract line item 0004.

II-2

Ex.: 17; p.: 700

F33700-78-C-0001

1010        AIR VEHICLE

            The contractor shall complete the design, engineer-
            ing and fabrication of the modifications and tool-
            ing necessary to convert the basic DC-10 aircraft
            into an ATCA air vehicle in accordance with Detail
            Specification DS-5500 ATCA and the requirements
            of this SOW.

  1010A     GENERAL DESCRIPTION

  1010AI    MODIFICATIONS, DELETIONS, ADDITIONS

            The contractor shall provide all modifications,
            deletions and additions to the basic DC-10 air-
            craft which are necessary to meet the requirements
            of DS-5500 ATCA.

  1012      AIRFRAME SYSTEMS

            The contractor shall delete components not required
            for ATCA and shall accomplish those modifications
            and additions necessary to convert the basic DC-10
            aircraft into an ATCA.

  1012A     INCREASED ACCOMMODATIONS KIT

            The contractor shall fabricate one complete Increased
            Accommodations Kit (Alternate 3, Appendix A to
            DS 5500 ATCA) in time for its utilization in tests
            and demonstrations leading to certification of the
            ATCA for operation with up to 80 personnel aboard.

  1014      AVIONICS

            Avionics block diagrams and interface schematics
            shall be maintained in accordance with Data Item
            DI-S-3607/M (B028). System schematics shall define
            (1) the interface between ATCA peculiar avionics
            and instruments; and (2) the interface between
            the peculiar avionics and instruments and those
            existing in the basic aircraft.

II-3

Ex.: 17; p.: 701

F03700-78 C-0001

1015        STRUCTURE

1015D       MATERIALS, PARTS AND PROCESSES

1015DA      SELECTION OF MATERIALS, FINISHES, PROCESSES AND
            NONDESTRUCTIVE EVALUATIONS (NDE)

            The contractor shall perform a complete evaluation
            of all candidate materials, finishes, processes
            and NDE to ensure that those selected for all air-
            craft modifications provide the desired properties
            for the entire system life.  Guidelines for material
            selection, usage and treatment are contained in
            Chapter VII, AFSC DH 1-2.  Justification data shall
            be available for all selected materials and processes,
            including the results of development testing accom-
            plished on any new materials and processes.

1015DB      MATERIALS AND PROCESS SPECIFICATIONS

            Complete materials and process specifications, as
            well as NDE for both metallic and nonmetallic struc-
            tures, shall be available for review by the procur-
            ing activity.  Provision shall be made on new draw-
            ings involving materials and processes for signature
            by company materials and process personnel or Air
            Force approved contractor personnel prior to drawing
            release.

1015E       CORROSION PREVENTION/CONTROL PROGRAM

            The contractor shall continue implementation of this
            program in accordance with the following subsections.

1015EA      CORROSION PREVENTION AND CONTROL PLAN

            The contractor shall maintain the Corrosion Pre·
            tion and Control Plan provided under the Basic
            tract (DI-S-3598A/M)(B024).
            The contractor shall sustain the working gr·
            established under the Basic Contract to ir
            the plan.

                              II-4

F33700-78-C-0001

**1015EB**     FINISH DOCUMENT

The contractor shall revise and submit revisions to the Finish Document developed under the Basic Contract (DI-S-3598A/M)(B025).

**1015EC**     CORROSION PREVENTION ADVISORY BOARD

The contractor shall provide a member to the Corrosion Prevention Advisory Board and participate in all Board activities.

**1018**     AIRCRAFT GENERAL

**1018A**     MARKING

The contractor shall maintain illustration drawings developed under the Basic Contract for the external painting and "Air Force" marking scheme and submit final drawings (DI-E-7015A/M)(B00S)

Ex.: 17; p.: 703

Case3:11-cv-00061-JSW Document71 Filed 01/28/11 Page 169 of 203

F 3700-73-0-0001

1020    TRAINING

The contractor shall furnish all training, training
equipment, data and services for the ATCA system as
described in the following paragraphs.  Air Training
Command shall contract for all Contractor provided
training (Type I) on a separate contract under the
provisions of AFR 50-9.  All training of initial
cadre maintenance and aircrew personnel as defined
below shall be provided in a no cost ATC contract
with actual costs included in the basic aircraft
price.  Training shall, as a minimum, result in a
level of proficiency equivalent to that attained by
the standard DC-10 training program in existence for
commercial customers.

1021    PERSONNEL TRAINING

1021A    AIRCREW TRAINING

The contractor shall provide aircrew training to qualify
six Air Force crews.  Each ATCA aircrew shall consist
of two pilots, a flight engineer, a loadmaster and
an aerial refueling operator.

Ground training shall be provided for six Air Force
crews.  Each student shall have previous related
experience.  Flight deck crew students shall be jet
transport qualified.

The ground training phase consists of formal class-
room instruction and Cockpit Procedures Trainer (CPT)
demonstrations and student crew sessions.  The ground
training phase shall utilize to the maximum extent
possible material drawn from existing commercial DC-10
programs and supplemented by informally developed
materials covering the ATCA unique training require-
ments.  Upon completion of those courses, students
shall enter the Aircraft Flight Simulator Course con-
sisting of not less than 36 hours per crew.

Ground training and Aircraft Flight Simulator train-
inf for the six crews shall preclude the flight train-
ing phases.

Two crews shall be trained for participation in the
predelivery test program with training of at least
two pilots and a flight engineer completed prior to

II-6

F33700-78-C-0001

first predelivery flight. The flight transition
training for the remaining two pilots and one
flight engineer shall be completed on the DC-10
ATCA no later than two weeks following the start
of the predelivery flight test program.

Post-transition training (not less than 25 hours/
pilot of supervised flight) for the first two
crews, including loadmaster and aerial refueling
operator training, shall be integrated with the
predelivery flight test program. This training,
plus sufficient ATCA operational experience to
qualify as flight instructors, shall be attained
by the completion of the predelivery flight test
program.

The remaining four crews shall be trained to par-
ticipate in the Operational Test and Evaluation
(OT&E) program. The flight transition training
for these crews shall be accomplished on the
DC-10 ATCA prior to DD 250 sign-off and the start
of OT&E.

\* Post-transition training for these four crews,
including loadmaster and aerial refueling operator
training, shall be accomplished during the initial
phase of the OT&E program using contractor flight
instructor personnel.

### 1021AA   AIRCREW TRAINING MATERIALS

The contractor shall provide materials used to conduct
the training of these Air Force flight crews in
accordance with DI-H-3258A (B00U).

### 1021AB   ARO TASK ANALYSIS

The contractor shall provide copies of task analyses
performed to support the design of the ARO station
(DI-H-6130/M )(B00Z).

Ex.: 17; p.: 705

F00700-76-C-0001

1021B    MAINTENANCE TRAINING

The contractor shall, upon receipt of the ATC
contract referenced in paragraph 1020 above,
provide ATCA training to an initial cadre of
Air Force maintenance personnel during pre-
delivery flight test.  The initial cadre shall
consist of 44 personnel made up of organizational
level maintenance personnel, selected specialists,
and ATC instructor personnel.

All maintenance personnel to be trained shall
possess at least an Air Force five-level quali-
fication.

Maintenance training courses shall be:

(1)    Supervisors and Planners Course:  For key
Air Force personnel to acquire the knowledge
necessary for planning responsibilities.

(2)    Airframe and Systems/Power Plant and Related
Systems Course:  For training maintenance
personnel in specific tasks and skills needed
to perform organizational and limited inter-
mediate level maintenance.

(3)    Electrical and Avionics Systems Course:  For
training maintenance personnel in specific
tasks and skills needed to perform organizational
and limited intermediate level maintenance
during Acquisition.

(4)    Door Rigging Specialist Course:  For training
selected maintenance personnel in the specific
tasks and skills needed to be able to perform
limited intermediate level maintenance on the
rigging, adjustments and maintenance procedures
on the aircraft doors.

Maintenance Training Assistance (MTA) shall be provided
for Air Force personnel that have attended the factory
maintenance training courses.  The MTA shall be pro-
vided by up to three Douglas instructors for up to
36 manweeks.

Ex.: 17; p.: 706

F33700-78-C-0001

**1021C**   LOGISTIC SUPPORT CONTRACTOR MAINTENANCE TRAINING

Logistic Support Contractor Maintenance personnel
shall be permitted to participate in all contractor
provided training courses on a space available
basis.

**1022**   TRAINING EQUIPMENT

The contractor shall provide the mockup of the air
refueling operator's station (constructed for test
and evaluation purposes under SOW Paragraph 1056AA)
for Type 1 training of air refueling operators.
The contractor shall identify other required train-
ing equipment in accordance with DI-H-3265A (B00X).

**1023**   TRAINING SERVICES

**1023A**   TRAINING PLANNING INFORMATION

The contractor shall update and submit training
planning information (DI-H-3265A)(B00X) to assist
in determining Air Force training requirements.
Type 1 training shall be limited to the minimum
necessary to qualify an initial cadre of personnel
to participate in the test program.

Ex.: 17; p.: 707

1030    INTEGRATED LOGISTICS SUPPORT (ILS)

The contractor shall provide all maintenance and
logistics support for the pre-delivery phase of
the ATCA program as described herein.  The pre-
delivery phase shall cover that period of time from
preparation for the first flight until delivery of
the first aircraft to the Air Force.  The contractor's
logistics support approach shall take maximum advan-
tage of existing inventories of spare parts and mate-
rials.  The contractor shall require his vendors/
subcontractors to comply with the applicable proce-
dures, terms, conditions, and data items of this
SOW to insure adequate pre-delivery spare/repair
parts support.

1030A    INTEGRATED SUPPORT PLAN (ISP)

The contractor shall maintain the ISP for the pre-
delivery phase in accordance with DI-L-6138/M
(B010).

1030B    MAINTENANCE DATA COLLECTION RECORD

The contractor shall submit AFTO Form 349 (DI-L-7018)
(B011) during the pre-delivery phase for all ATCA
peculiar systems.

1030C    REPARABLE ITEM PROCESSING TAG

The contractor shall submit Reparable Item Processing
Tags which provide  the information normally available
on AFTO Form 350 (DI-L-7019/M) (B012) during the pre-
delivery program phase for all ATCA peculiar systems.

1030D    RECORDS

The contractor shall maintain and submit Aerospace
Vehicle and Equipment Maintenance and Historical
Records in accordance with Data Item DI-M-3418A
(B01D).

Ex.: 17; p.: 708

F33700-78-C-0001

1030E    SPARES

The contractor shall provide all spare parts and
materials required to support the ATCA during the
predelivery period.  The contractor's supply system
shall be integrated into a centralized contractor
inventory management and distribution system which
features centralized storage of the majority of
replacement parts and materials.

1030F    TRANSITION CONFERENCES

The contractor shall convene ILS Transition Confer-
ences to coordinate transition of support to the
Logistics Support Contractor.  These conferences
shall be held no later than twelve (12) months
and three (3) months prior to delivery of the first
aircraft.

1030G    LOGISTICS SUPPORT CONTRACTOR INTERFACE

The contractor shall provide the logistics support
contractor all data, information and services nor-
mally supplied with delivery of the commercial air-
craft.  The contractor shall allow Logistics Support
Contractor participation in all joint USAF/Contractor
activities.  Such participation in the predelivery
test activity shall be limited to observation only.

Ex.: 17; p.: 709

Case3MDL-No-00075 - Document 6666-1 Filed 01/28/11 Page 175 of 403
Case3:11-cv-00061-JSW Document71 Filed 01/24/11 Page 175 of 403

F33700-78-C-0001

1040    SUPPORT EQUIPMENT (SE)

The procedures of AFAD 71-685 as modified for the
ATCA program by Addendum Number 1 shall be used as
guidance in the development and acquisition of all
ATCA peculiar SE.  As additional SE requirements are
identified, they shall be procured following Support
Equipment Recommendation Data (SERD) processing and
approval (including pricing).  AF approval of the
SERD shall be reflected by the issurance of a contrac-
tual document adding the SE to the contract.  Detailed
engineering design on SE items identified through the
SERD process shall not begin until authorized in
writing by the Procuring Contracting Officer (PCO).

1040B   SUPPORT EQUIPMENT PLAN

The contractor shall update the SE Plan in accordance
with DI-A-6102/M (B009).

1040C   SUPPORT EQUIPMENT DATA

The contractor shall submit and maintain a Consoli-
dated Support Equipment List in accordance with
DI-V-6183/M (E02H).  The contractor shall submit
SE Delivery/Delinquent Reports in accordance with
DI-P-6165/M (B01K).

1041    PECULIAR SUPPORT EQUIPMENT

The contractor shall complete the design and engineer-
ing effort necessary to deliver that peculiar SE identi-
fied in Exhibit E of the contract.  The contractor shall
provide ATCA peculiar SE as ordered in accordance with
the provisions of this contract.

1041A   PROVISIONING CONFERENCE

The contractor shall convene a provisioning guidance
conference with the Air Force and Logistics Support
Contractor so that peculiar SE quantities may be
established.

Ex.: 17; p.: 710

F33700-78-C-0001

1041B    SE FUNCTIONAL ANALYSIS

The contractor shall perform analyses, identify,
select and develop SE and software required to
support the ATCA missions.  The contractor
shall perform a continual review of all ATCA
ground support functions for the air vehicle oper-
ating and maintenance cycle to assess the impact
on peculiar SE requirements.

This task shall cover the organizational, inter-
mediate, and depot levels of maintenance for systems/
equipment which are ATCA peculiar by virtue of
being newly designed/developed items and to the
organizational and intermediate levels of mainten-
ance for existing systems/equipment which are
ATCA peculiar because they have been newly iden-
tified for use on the ATCA.

The contractor shall progressively prepare firm
SE Recommendation Data (SERDs) consistent with the
above analysis and in accordance with DI-S-3596/M
(B023) for equipment and software required for
servicing, handling, checkout, and maintenance
functions.

The contractor shall submit test requirements docu-
ments for the  ARB flight control system in accord-
ance with DI-T-3734/M (B02F).

1041C    SE DESIGN

The contractor shall design all new peculiar support
equipment in accordance with the requirements of the
contractor's approved commercial support equipment
design practices guide.  Contractor's commercial spec-
ifications/drawings for individual items of support
equipment shall be made available for Air Force and
Logistics Support Contractor review.  Flight line
support equipment shall be painted with MIL-C-83286,
FED STD 595, color No. 24052, forest green poly-
urethane coating.

II-13

Ex.: 17; p.: 711

F33700-73-C-0001

1041D     SE VALIDATION

          The contractor shall provide, as required, all
          analytic and design effort necessary to assure
          that such equipment performs its intended purpose
          when used by appropriate USAF personnel. Verifica-
          tion and validation shall include demonstration
          by appropriate USAF personnel who are likely to
          use the equipment.  This effort shall continue
          as necessary to ensure that all SE items identi-
          fied in Exhibit E perform the intended purpose.

Ex.: 17; p.: 712

F33700-73-C-0001

1050    SYSTEM TEST AND EVALUATION

The contractor, in conjunction with the Air Force,
shall plan and conduct an ATCA system test and
evaluation program.  This program shall include all
test and evaluation, test and evaluation support,
mockups, and test facilities as described herein.
The contractor shall plan for all development, ground
and flight testing to be conducted prior to delivery
of the first ATCA to the Air Force and submit the
Ground and Flight Test Plan in accordance with
DI-T-3702/M (B02B).  Approval of all test plans
by the Air Force and/or FAA shall be based on the
updated version of the plans.  The plan for Air
Force participation during this pre-delivery phase
shall be prepared by the Air Force and integrated
into the overall plan early in the acquisition phase.
All testing shall be conducted in accordance with
the approved test plan.

1051    PREDELIVERY TEST AND EVALUATION

This testing shall be conducted by a contractor/Air
Force test team prior to delivery of the first ATCA
to the Air Force.  It shall be done at the contractor's
facility, and is to demonstrate and verify that the
ATCA complies with FAA regulations and military speci-
fications as applicable.  The successful completion
of this effort is the responsibility of the contractor
and is to include participation of FAA personnel and
Air Force personnel from the operating, supporting,
and participating commands for individual assessment
of operational performance and suitability, logistics
and supportability considerations, training planning
and development, and employment concepts.  Navy/
Marine personnel shall participate as required to
assure adequate testing of the ATCA hose/drogue
capability.  The active participation of the military
personnel shall not include responsibility for ATCA
maintenance and/or test preparation.  The Air Force
shall provide or assume responsibility for providing
the necessary receiver and tanker aircraft to accom-
plish the aerial refueling tests.  In addition, the
Air Force shall furnish safety chase and photo chase
aircraft.

II-15

Ex.: 17; p.: 713

F33700-78-C-0001

1051A    TEST PLANNING

The first ATCA produced shall be tested prior to
delivery and Air Force acceptance to insure a safe
and functionally effective aircraft for aerial
refueling and cargo transport missions.  Testing
shall concentrate on those aircraft systems and
subsystems which have been changed from the basic
FAA certified commercial aircraft.  Basic aircraft
operation shall be evaluated against appropriate
FAA criteria for intended function and safety.
Applicable ATCA unique operations, if not certified
by the FAA, shall be evaluated against Air Force
requirements.  All test planning shall provide for
collection, storage, and retrieval of pre-delivery
operational and support cost data to the extent
practicable.  This pre-delivery test program is
divided into ground test (paragraph 1051B) and
flight test (paragraph 1051C).


1051B    GROUND TEST PHASE

Ground testing shall be conducted to validate engi-
neering design and analysis and to verify the func-
tional adequacy of the ATCA, with emphasis on changes
from the basic airplane.  Individual test series
shall be performed in accordance with approved up-
dated test plans (DI-T-3702/M)(B02B) and results of
each test series reported separately (DI-T-3718/M)
(B02D).


1051BA   STRUCTURAL TESTS

The structural integrity of the ATCA, including
modifications, shall be verified through structural
analyses and/or tests to ensure safety of flight
and service life of the aircraft.  These analyses
and tests shall be in accordance with FAA require-
ments.  Structural test plans, if required, shall
be in accordance with the guidelines of DI-T-3705
and submitted as a portion of the ATCA test plan
(DI-T-3702/M)(B02B).

II-16

Ex.: 17; p.: 714

F33700-76-C-0001

**1051BB**     FUNCTIONAL AND PRESSURE TESTS

Ground tests of the fuel system shall be performed
to assure safety of flight prior to the first flight.
In addition, the ATCA aerial refueling system (both
receiving and off-load portions) shall be tested to
include component tests, system functional tests,
proof pressure and surge pressure tests.  The Air
Force shall provide a portable test unit developed
by LTV for the U.S. Navy under contract NOW65-0402-C
to be used for the surge pressure tests.  Airframe
modifications and fuel tanks shall be proof pressure
tested per FAA requirements.  Surge pressures shall
not be greater than those produced by the KC-135
boom/fuel system.  The KC-135 surge pressures
shall be provided by the Air Force.  Testing shall
be conducted to ensure compatibility between the
previously certified fuel system and new additions
to it including fuel quantity gaging, fuel transfer,
fuel pressure differentials, etc.

**1051BC**     FUEL VENT SUBSYSTEM TESTS

If the FAA requires fuel vent subsystem tests because
of ATCA peculiar operations or equipment, paragraphs
4.4.4 through 4.4.4.3 of MIL-F-38363B will be used
as the criteria.

**1051BD**     GROUND VIBRATION TESTS

Ground vibrations tests shall be conducted, as required,
prior to first flight to determine the free-free
normal modes of those portions of the air vehicle
affected by the modification and the aerial refueling
boom installation.

**1051BE**     SYSTEM ELECTROMAGNETIC COMPATIBILITY TEST

The contractor shall demonstrate the electromagnetic
compatibility of the ATCA total system by testing in
accordance with paragraph 4.3.1 of MIL-E-6051D.
Plans for this testing shall be in accordance with

Ex.: 17; p.: 715

F33700-78-C-000.

the guidelines in DI-T-3704 and the plan submitted
shall be a portion of the overall integrated ATCA
test plan (DI-T-3702/M)(BO2B). The plan shall be
sufficiently detailed to meet FAA certification
requirements and include a list of all equipment
in the aircraft, the operating conditions, modes
and procedures.

1051BF    SECURE COMMUNICATIONS TEST

The contractor shall provide for an aircraft TEMPEST
test to demonstrate that the ATCA system communications
transmitters and all other system electromagnetic
energy emitters do not emanate compromising signals.
The Air Force Security Service shall conduct the
TEMPEST test.

1051BG    AVIONICS GROUND TEST

Ground tests shall be conducted on the ATCA peculiar
avionics and instruments to verify to the extent
possible that the electrical installation interfaces
are correct and that performance specified in
DS 5500 ATCA for each item has been maintained.
These tests also apply to any interfacing of the
ATCA peculiar avionics and instruments.

1051BH    CARGO HANDLING TESTS

Tests shall be conducted to demonstrate: (1) Com-
patibility with 463L system, specifically to the
extent of modifications; (2) compatibility with
the cargo winch; (3) inherent capability to handle
oversize and non-palletized cargo and equipment;
(4) mixed crew/support personnel/cargo transport
provisions and procedures. The type and quantity
of the Air Force equipment necessary for performance
of these tests shall be identified during the cargo
capabilities study and a list provided by the con-
tractor to the Air Force at least 180 days prior to
this testing. The contractor shall identify the

II-18

F33700-78-C-0001

delivery location for each piece of equipment
90 days prior to it being required.  The U.S.
Government on-site administrative representative
shall retain all responsibility for the equip-
ment provided.


1051C    FLIGHT TEST PHASE

Flight testing shall be conducted to verify the
modified aircraft's operation, performance, flying
qualities, and compatibility in its aerial refueling
role with various receiver aircraft.  All results
under this flight test phase shall be reported in
a single report in accordance with DI-T-3718/M (B02D).


1051CA   AIRWORTHINESS TESTS

Flight tests shall be accomplished to verify compli-
ance with FAR Part 25.  Flutter margins shall be
demonstrated.  This testing shall be conducted (1)
throughout the ATCA required flight envelope with
the aerial refueling boom and drogue stowed; (2)
throughout the boom air refueling speed/altitude
envelope with the aerial refueling boom deployed;
and (3) throughout the drogue air refueling speed/
altitude envelope with the drogue deployed.  Suffi-
cient data (DI-T-3718/M)(B02D) from this testing
shall be supplied to the Air Force and the FAA in
order for the ATCA airworthiness to be FAA certified
and meet Air Force requirements.


1051CB   PERFORMANCE AND FLYING QUALITIES TESTS

ATCA performance and flying qualities tests shall be
accomplished to verify predicted differences due to
(1) aircraft modification; and (2) changes in operating
rules if applicable.  Aerial refueling boom and
drogue tests shall be conducted to verify control
throughout the operational refueling envelopes.
Tests shall include performance and handling qualities
at the extremes of the refueling airspeed/altitude

II-19

Ex.: 17; p.: 717

Case3:11-cv-00061-JSW Document71 Filed 01/24/11 Page 182 of 403

F33700-78-C-0001

envelope to verify tanker capabilities prior to
attempting actual refueling. Other testing shall
include takeoff performance, stall characteristics
evaluation, drag penalties due to modifications,
flying qualities determination in all configurations
for the appropriate ATCA flight envelopes, and
refueling during emergency conditions such as loss
of an engine on the ATCA.

1051CC    AVIONICS

The ATCA peculiar avionics shall be flight tested
to verify performance requirements which could
not be adequately demonstrated during ground tests.
These tests shall be designed to verify that the
avionics subsystems provide the required operational
capability required in DS-5500 ATCA.

1051CD    AERIAL REFUELING TESTS

Actual inflight refueling tests, including fuel
transfer, shall be conducted with a variety of Air
Force and Navy/Marine receiver aircraft to verify
compatibility and predicted performance of the tanker/
receiver combinations. Receivers for this testing
shall include the S-3A, C-5, F-15, F-4, A-10, A-4,
and F-14 aircraft. Testing shall include determining:
(1) rendezvous and formating capabilities; (2) per-
formance and handling qualities of ATCA and receiver
during precontact, contact, and break-away operations;
(3) fuel transfer pressures, transfer rates and
surge pressures during fuel transfer; (4) adequacy
of aerial refueling operator's controls, viewing
provisions, and communications; (5) boom controlla-
bility limits caused by boom/receiver interaction;
(6) ATCA night refueling capabilities including evalu-
ation of all lighting involved with the aerial refuel-
ing task, both as a tanker and as a receiver; (7) ATCA
capabilities to refuel from a KC-135 Tanker; (8) the

II-20

Ex.: 17; p.: 718

F33700-78-C-0001

ATCA capability to perform under emergency con-
ditions, including tension disconnects, emergency
boom latching, and alternate means of effecting
contact/disconnect; and (9) structural loads (stresses)
in the outer wing when the ATCA is a receiver.

1052        INSTRUMENTATION AND DATA REDUCTION

The entire flight test instrumentation package shall
be installed by the contractor and remain on the
ATCA test aircraft for use during the predelivery
tests.  Output of the onboard instrumentation shall
be compatible with USAF Flight Test Center data
reduction capability.

*        The entire instrumentation package shall remain on
the ATCA test aircraft during the follow-on OT&E
phase (a six month period following delivery) to be
conducted by the Air Force.

1053        CONTRACTOR SUPPORT

The contractor shall provide test facilities and
operational and maintenance support for the first
ATCA, including subsystems and support equipment,
during the predelivery testing.

*        The contractor shall provide engineering support
to test operations and all logistics support for
the onboard test instrumentation subsystem during
the 6 month period following delivery of the first
ATCA to the Air Force (OT&E).  Verification of in-
flight refueling requirements specified in DS 5500
ATCA, for ATCA to ATCA refueling, shall be conducted
with contractor participation.  Following OT&E, the
contractor shall remove all test instrumentation,
restore the test aircraft to the current production
configuration and provide a Conformity Certificate
Military Aircraft (FAA Form 8130-7).

II-21

Ex.: 17; p.: 719

F33700-73-C-0001

1054    DEFICIENCY REPORTING

The contractor shall have a deficiency reporting
system which shall identify to the Air Force
deficiencies in ATCA required equipment which
arise during the predelivery test period.  The con-
tractor shall assist the Air Force in preparation
of deficiency reports in accordance with T.O. 00-35D-54,
as required.  The contractor shall submit failure
analysis and corrective action reports (DI-R-5299A)
(B01R) in response to Air Force generated deficiency
reports.

1055    TEST FACILITIES

The contractor shall identify all requirements for
government facilities required to accomplish the test
program in accordance with DI-T-3729 (B02E) and con-
tract schedule special provision J-32, "Government
Facilities."

Ex.: 17; p.: 720

F30700-76-C-0001

## 1056    OTHER TESTING

### 1056A    HUMAN FACTORS TEST AND EVALUATION (HFT&E)

The HFT&E plan shall be an annex to the ATCA test
plan (DI-T-3702/M) (B02B).  The HFT&E plan shall
encompass all items identified in SOW paragraph
1061B and shall provide the demonstrations to show
that operational equipment can be effectively
operated, maintained and supported.  Results of
this test and evaluation program shall be reported
per DI-T-3718/M (B02D).  Tasks performed during
this period shall be in accordance with the
approved HFT&E plan.

### 1056AA    AIR REFUELING OPERATOR'S STATION MOCKUP

The contractor shall continue to investigate the
physical characteristics of the air refueling opera-
tor's station by constructing and using a final
mockup.  This mockup shall be generally constructed
in accordance with the instruction of AFSC DH 2-2,
DN 2A-1, paragraph 6, as applicable.  The mockup shall
be used to determine the optimum combination of field
of view, operator posture, control configuration,
display configuration, and such other characteristics
as are pertinent to the design of the ATCA.  At the
end of the design effort, the mockup shall be retained
as a training aid without further modification or update
and shall be delivered to the Air Force upon completion
of all ARO Type I training (see 1022).

### 1056B    COMPONENT QUALIFICATION TEST AND EVALUATION

ATCA peculiar components not previously tested to
MIL-SPEC or FAA requirements, shall be tested IAW
the approved ATCA test plan (DI-T-3702/M) (B02B).
Results shall be reported in accordance with DI-T-
3718/M (B02D).

Ex.: 17; p.: 721

F33700-78-C-0001

1056C   PECULIAR SUPPORT EQUIPMENT TEST AND EVALUATION

The contractor shall also demonstrate supportabil-
ity and maintainability of ATCA peculiar SE.
Testing shall be conducted in accordance with the
approved ATCA test plan (DI-T-3702/M)(B02B).
Results shall be reported in accordance with
DI-T-3718/M (B02D).

1056D   ACCEPTANCE TESTING

The contractor shall provide an acceptance test
plan for the ATCA to include configuration alter-
nates and related kits, using standard commercial
procedures to the maximum extent practicable (DI-T-3714/M)
(B02C).  These acceptance test procedures shall be
approved by the Air Force.

1056DA   AIRCRAFT ACCEPTANCE TESTING

A joint contractor/Air Force flight crew shall per-
form an acceptance test on the first aircraft prior
to acceptance of that aircraft by the Air Force.
This testing shall be in accordance with standard
commercial procedures as approved by the Air Force.
(DI-T-3714/M)(B02C).

*   After the first aircraft is returned to production
configuration following Air Force conducted OT&E,
a joint contractor/Air Force flight crew shall per-
form an acceptance test in accordance with the
approved test procedures and prior to acceptance
by the Air Force.

1056DB   ATCA PECULIAR SUPPORT EQUIPMENT ACCEPTANCE TESTING

Acceptance testing for ATCA peculiar support equip-
ment shall be in accordance with commercial prac-
tice.  Acceptance test requirements/procedures shall
be documented in the applicable SE specification or
drawing.

II-24

Ex.: 17; p.: 722

F33700-78-C-0001

1056E    RELIABILITY TEST AND DEMONSTRATION

The contractor shall conduct reliability test
and demonstration throughout the test program
to demonstrate the requirements of SOW para-
graph 1061LA (DI-R-3537A/M)(B01Q) in accord-
ance with the approved ATCA test plan. Failure
is a condition where the performance of any sub-
system is outside specification limits. All
failures, including those of elements of redun-
dant combination and peculiar support equipment,
are relevant unless caused by human error in
maintenance or operation as determined by the
contractor and approved by the Air Force.
Failures shall be, as a minimum, categorized as
(a) those affecting flight safety; (b) those
affecting mission success; and (c) those causing
corrective maintenance workload. All failures
affecting flight safety shall be subject to correc-
tive action. During test, if two or more components
of the same functional subsystem of a system affect-
ing mission success have a failure rate which exceeds
that predicted, corrective action shall be required.
No special preparation of hardware items for the
reliability tests shall be permitted unless applied
to all articles offered for Government acceptance.

1056F    MAINTAINABILITY TEST AND DEMONSTRATION

Maintainability demonstrations will be accomplished
as necessary to support the analysis of paragraph
1061MA.

II-25

Ex.: 17; p.: 723

F33700-78-C-0001

1060    SYSTEM ENGINEERING/PROGRAM MANAGEMENT


1061    SYSTEM ENGINEERING MANAGEMENT

The contractor shall maintain and provide revisions
to the System Engineering Management Plan submitted
during the basic contract (DI-S-3618/M)(B029).
The plan shall describe the total effort for plan-
ning, control and conduct of a fully integrated
engineering effort in accordance with the general
requirements of Section 5 of MIL-STD-499A.  It
shall include the engineering support of all modifi-
cations to the basic aircraft as well as engineering
efforts required to cover correction of deficiency
actions and/or warranty coverage.


1061A    CONFIGURATION MANAGEMENT

The contractor shall provide changes/revisions to
the Configuration Management Plan as required
(DI-E-3108/M)(B003).  The contractor shall accom-
plish configuration management in accordance with
the approved Configuration Management Plan.


1061AA    IDENTIFICATION OF DOCUMENTATION

For the configuration items (basic aircraft modi-
fications and ATCA peculiar support equipment) that
are FAA approved, the contractor shall identify
documentation prepared (specifications and drawings)
in accordance with existing commercial systems and
procedures.  Modifications to the basic aircraft and
newly developed support equipment which are not FAA
approved and are to be Air Force approved shall be
documented in accordance with MIL-STD-483, Appendix IX.

Ex.: 17; p.: 724

F3570-73 0-0001

1061AB    SPECIFICATIONS

The contractor shall use a format compatible with
the existing aircraft Detail Specifications to
include newly developed items or modifications.
SE shall be defined by procurement specifications
prepared in accordance with existing commercial
practices.  A specification, as defined in MIL-STD-490
and MIL-STD-483, shall be developed for aerial
refueling interface control to be used for new
receiver aircraft compatibility design criteria
(DI-E-3102A/M)(B00B).

1061ABB   COMPUTER PROGRAMS

Each new computer program will be managed as an
individual CI in accordance with the appropriate
appendices in MIL-STD-483.  For each new computer
program, a development specification (DI-E-3119A/M)
(B00H), a product specification (DI-E-3120A/M)
(B00J), and version description document (DI-E-3121/M)
(B00K) shall be submitted.  The contractor shall
prepare and maintain tracking documentation that
fulfills the intent of DI-E-3122 and DI-E-3123, and
this data shall be available for procuring agency
review upon written notification.  The computer
program specifications shall be updated in accordance
with DI-E-3134 (B00R).

1061ABC   SPECIFICATION MAINTENANCE

The contractor shall maintain the basic aircraft
specification and those specifications for con-
figuration items to be delivered under this con-
tract.  Maintenance of specifications pertains to
specification change notices, specification change
pages, and specification revisions.  In addition,
for all newly designed configuration items a devel-
opment record is required.  The commercial type
specifications shall be maintained in accordance
with existing commercial procedures.  Military

II-27

Ex.: 17; p.: 725

F33700-78-C-0001

specifications shall be maintained in accordance
with the Specification Maintenance Document
(DI-E-3106/M)(BOOF) as modified by the following:
Proposed SCNs affecting specification provisions
which are affected by other change proposals not
yet formally approved (or disapproved) by the PCO
shall contain the notation "This change assumes
prior or concurrent incorporation of ECP # _____
or SCN # _____ or Service Bulletins # _____."
Revisions/Changes to the Detail Specification shall
be annotated to clearly depict the ATCA peculiar
portions.

## 1061AC    ENGINEERING RELEASE SYSTEM

The contractor shall maintain control over the manu-
facture and acceptance of all configuration items
through an engineering release system which meets
the minimum criteria as set forth in MIL-STD-483 (USAF),
Appendix X.

Ex.: 17; p.: 726

## 1061AD    CONFIGURATION AUDITS

The Air Force shall have the right  to exercise the
same surveillance normally allowed to be exercised
by commercial customers.  Formal FCA and PCA of the
basic aircraft shall not be required.  An audit will
be performed to the extent necessary to (1) verify
that the deliverable articles comply with specifi-
cation and contract requirements and (2) to establish
the product baseline to be used for production accept-
ance purposes.  The audit will take full advantage
of the validation of existing systems by commercial
and/or Government agencies and will be a limited
review to assure the following:

        1.  FAA Certification

        2.  Satisfactory completion of predelivery
test requirements.

        3.  Documentation establishing the product
baseline is complete and is suitable for accepting
production items and is appropriate for operational,
maintenance and logistics support purposes.

        4.  Newly developed ATCA peculiar modifications
and support equipment perform as required.

        5.  All modifications and support equipment,
as built, match their approved and released technical
documentation.

## 1061ADA    REVIEW AND AUDIT RESPONSIBILITIES

Configuration audits shall be conducted prior to
acceptance of the first articles, and shall be
chaired by a Government representative.  The con-
tractor shall act as host for the conduct of the
audits and will provide facilities, specifications,
drawings and such other documentation required to
complete the audits.

Ex.: 17; p.: 727

0001

1061AE    ENGINEERING CHANGE PROPOSALS (ECPs)

Proposed engineering changes which affect ATCA
peculiar specification requirements, price, delivery
schedule, specified weight or performance, specified
interchangeability requirements, the ATCA maintenance
and logistic support concept, or require reidentifi-
cation of a provisioned spare part or spare assembly
shall be classified and processed as Class I ECPs
(DI-E-3128/M)(BOON).  The Contractor may, without
Air Force approval, incorporate Standard Commercial
changes into the basic aircraft as standard Specifi-
cation Change Notices (SCNs) provided such changes are
not Class I changes as defined above.  These standard
commercial changes shall be processed and incorporated
into the undelivered articles as Class II changes.
All Class II changes shall be submitted to the Govern-
ment Plant Representative Office concurrent with
their release from engineering for concurrence in
classification.  The Contractor shall furnish the
PCO all Class II changes resulting from SCNs concurrant
with their release from engineering.  Documentation
shall be prepared and submitted to the Contractor
for deletion of any change submitted by SCN that is
not desired by the Air Force and the contractor
shall submit a Class I ECP to the Air Force.


1061AEA   ADVANCED CHANGE/STUDY NOTICE (ACSN)

Before any work or effort is started on the study for
preparation of a Routine Class I ECP, an ACSN initiated
by the contractor must be approved by the Air Force.
ACSN numbers shall be assigned by the contractor and
tracked according to number (DI-E-3127/M)(BOOM).


1061AEB   AUTHORIZATION FOR SUBMITTAL OF ENGINEERING CHANGE
          PROPOSALS (ECP)

In accordance with paragraph 4.8 of MIL-STD-480, the
contractor shall not submit an ECP until approved by
Advanced Change/Study Notice (ACSN) unless the ECP
can be justified as Emergency, Urgent or Compatibility.

Ex.: 17; p.: 728

F33700-78-C-0001

**1061AEC**     <u>ENGINEERING CHANGE PROPOSAL (ECP) SUBMITTAL DATA</u>

For all Routine Class I ECPs the contractor shall include drawings and other data as appropriate to allow the Government sufficient insight to evaluate the proposed change. Reference MIL-STD-480, paragraph 4.8.7.

**1061AED**     <u>ENGINEERING CHANGE PROPOSAL (ECP) SUBMISSION SCHEDULES</u>

The contractor shall submit ECPs and related Specification Change Notices in accordance with the following schedule.

| Type of ECP | Submittal Due No Later Than |
|---|---|
| Emergency | Message - 24 hours after discovery<br>ECP - 30 days after receipt of authorization |
| Urgent | Message - 24 hours after discovery<br>ECP - 30 days after receipt of authorization |
| Compatibility | ECP - 45 days after discovery |
| Routine | ACSN Required<br>ECP - 45 days after receipt of authorization |

**1061AF**     <u>STATUS ACCOUNTING</u>

The contractor shall maintain a status accounting system to the Line Replaceable Unit (LRU) level for all approved changes and data on serialized components installed on each aircraft during production (DI-E-3133/M) (B00Q). A separate shortage and variance list shall be maintained for each aircraft until the discrepancies are cleared.

II-31

F11700-73 G-0001

1061AG    DEVIATIONS AND WAIVERS

The contractor shall submit requests for deviations
and waivers in accordance with MIL-STD-480 and
MIL-STD-481 (DI-E-3129/M)(B00P).


1061B    HUMAN ENGINEERING

The contractor shall maintain the Human Engineering
(HE) Program Plan submitted during the Basic Contract
(DI-H-3259/M)(B00V) to implement the requirements of
MIL-H-46855A (paragraphs 3.2.1, 3.2.2, 3.2.3, and
3.2.4). This effort shall be applied to selection
and design of all new and modified equipment, hand-
books, support equipment, training, and facilities
required to convert the commercial aircraft system
to an Air Force tanker/cargo aircraft system.
Design details shall comply with the human engineering
design standards established by MIL-STD-1472B and
AFSC DH 1-3. The applicable paragraphs of MIL-
STD-1472B are 4, 5.1, 5.2, 5.3, 5.4, 5.5, 5.6,
5.7.7, 5.8.1, 5.8.2, 5.8.3.1, 5.8.3.2, 5.8.3.3,
5.8.4, 5.9, 5.11.3, 5.12, 5.13, and 5.14. Tasks
performed during this period shall be in accordance
with the approved Human Engineering Program Plan.


1061C    MANUFACTURING/PRODUCTION

The contractor  shall maintain a production manage-
ment plan that reflects a coordinated interface
between production management for the basic commer-
cial configuration and the ATCA peculiar configuration.
The contractor shall maintain a production management
system for the ATCA which meets the intent of
MIL-STD-1528.


1061CA    MANUFACTURING/PRODUCTION PLAN

The contractor shall maintain and submit revisions
to the Manufacturing/Production Plan which was
generated under the Basic Contract (DI-P-3460/M)
(B01H).

Ex.: 17; p.: 730

F33700-78-C-0001

### 1061CB    PRODUCTION ANALYSIS REPORT

The contractor shall submit production analyses
reports in accordance with DI-P-3455/M (B01G).

### 1061CC    PRODUCTION PROGRESS REPORTS

The contractor shall provide monthly production
progress reports in accordance with DI-P-3475A/M
(B0IJ).

### 1061CD    QUALITY CONTROL AND INSPECTION SYSTEM

The contractor shall maintain the quality control
and inspection system established under the Basic
Contract. The Air Force reserves the right to
review the contractor's FAA approved quality assur-
ance system and have access to all quality related
records and data including vendor, supplier and sub-
contractor activities. For those items not certi-
fied by the FAA, the Air Force designated represent-
ative will assure that the items are manufactured
in conformance with the contractor's FAA approved
quality assurance system.

Ex.: 17; p.: 731

F33700-79-C-0001

1061D    SYSTEM SAFETY PROGRAM

During this period, the contractor shall perform
the following tasks related to the System Safety
Program requirements delineated in the following
1061D subsections:

(1) Complete and submit the qualitative system
and subsystem hazard analyses and continue
updating as applicable.

(2) Complete and submit fault tree analyses.

(3) Complete and submit the operating hazard
analysis.

(4) Safety engineering monitoring of ground and
flight tests.

(5) Safety engineering participation in flight
and maintenance crew training.

(6) Safety engineering participation in internal
design meetings and reviews, PDRs, CDRs, and
safety working groups.


1061DA   SYSTEM SAFETY

The contractor shall maintain the System Safety Pro-
gram Plan (SSPP) approved during the Basic Contract
in accordance with DI-R-3531/M (B0IM). This SSPP
shall be the basis for the ATCA System Safety Pro-
gram. The contractor's main system safety effort
shall be in the following areas:

(1) Peculiar equipment required to meet the ATCA
mission requirements.

(2) Interface between the ATCA peculiar equip-
ment and the basic aircraft. Included in
this would be such areas as structural
integrity, stability and control, safety
of flight, tankage/electrical equipment
collocation and EMI.

Ex.: 17; p.: 732

F33700-78-C-0001

(3) Hardware added to the basic aircraft to support ATCA peculiar equipment and mission personnel.

(4) Operating and maintaining the ATCA, including, basic and ATCA peculiar support equipment, facilities, and training.

1061DB    SYSTEM SAFETY ANALYSES

The contractor shall conduct qualitative and quantitative analyses for the purpose of identifying, controlling, or eliminating susbsystem and system hazards. The analysis shall be conducted in accordance with the techniques and philosophy as defined in MIL-STD-882, paragraphs 5.4, 5.6, 5.8, and 5.9 and using AFSC DH 1-6 as a guide (DI-H-3278/M) (B00Y). The analysis shall consist of the following:

1061DBD    OPERATING HAZARD ANALYSIS (OHA)

An OHA shall be performed in accordance with MIL-STD-882, paragraph 5.8.2.4, to identify and evaluate the safety requirements associated with the environments, personnel, procedures and equipment involved throughout the operational phase of the ATCA system (DI-H-3278/M) (B00Y).

Ex.: 17; p.: 733

**1061E** <u>ELECTROMAGNETIC COMPATIBILITY (EMC)</u>

The ATCA shall function as an electromagnetically compatible system both within itself and with its external environment, which shall include, but not be limited to, protection from lightning, precipitation static and other natural hazards. The basic commercially designed system shall meet applicable FAA EMC system requirements. MIL-E-6051D and MIL-STD-704A shall apply to the extent that equipment added for the ATCA and the basic commercially designed system shall be electromagnetically compatible. The EMC program resolved in the basic contract shall ensure ATCA system compatibility. The contractor shall continue implementation of the EMC plan during this period.

**1061EA** <u>SUBSYSTEMS/EQUIPMENTS</u>

The contractor shall integrate all ATCA subsystems/equipments so as to achieve a fully compatible system. Commercial avionics and other equipments to be supplied by the contractor shall meet applicable FAA EMI/EMC specifications. ATCA peculiar subsystems/equipments shall meet the requirements of MIL-STD-461A, Notice 3, as approved by the Air Force in the individual equipment specification. EMT control at the subsystem/equipment level shall be defined in the system EMC plan.

**1061F** <u>FACILITIES</u>

The contractor shall participate in a facilities engineering program as stated herein for the purpose of directly supporting the system program. Specific tasks are to be performed by the contractor in accordance with the following paragraph.

**1061FA** <u>FACILITIES REQUIREMENTS PLAN</u>

The contractor shall maintain, and revise as required, the Facilities Requirements Plan which identifies all real property facilities required to support system testing, training and operations (DI-S-6173A/M)(B02A).

II-36

F35700-78-C-0001

1061G    TRADE STUDIES

1061GA    INDIVIDUAL AIRPLANE TRACKING PROGRAM

The draft Trade Study Report (DI-S-3606/M) (B026)
shall be updated to include revisions required by
USAF comments and resubmitted.

1061GB    TURBOFAN ENGINE DIAGNOSTIC MONITORING

The draft Trade Study Report (DI-S-3606/M)(B027)
shall be updated to include revisions required by
USAF comments and resubmitted.

1061H    DESIGN/PROGRAM REVIEWS

The contractor shall plan and conduct design/program
reviews to allow the JPO to assess the degree of
completion of technical efforts in support of modi-
fications to the basic aircraft and the design of
ATCA peculiar support equipment. Initial notification
of the proposed agenda for each review will be pro-
vided by the contractor thirty (30) days prior to
the design review.  The contractor shall formally
notify the NAVPRO and JPO ten (10) days prior to
each review of the item(s) to be discussed.  Data to
support each CDR shall be provided by the contractor
and shall include preliminary specification amendments
as applicable, drawings, interface specifications
and trade studies.

During this period, the contractor shall plan and
conduct Design Reviews as defined in the System
Engineering Management Plan, to include flight deck
and ARO Station mockup reviews and CDRs on:

    (a)  Aerial Refueling Systems
    (b)  Avionics Systems
    (c)  Furnishings and Equipment

All analyses required for Design Reviews shall be
submitted as noted in other sections of this SOW.

II-37

Ex.: 17; p.: 735

1061I     AIRCRAFT STRUCTURAL INTEGRITY PROGRAM (ASIP)

The Aircraft Structural Integrity Program for the
DC-10 ATCA airframe shall be in accordance with
the approved ASIP Master Plan (DI-S-3570/M)(B01S).
The plan shall be revised, as necessary, to reflect
any changes required as a result of the Damage Toler-
ance and Durability Assessment, and FAA requirements.

1061IA    ATCA DAMAGE TOLERANCE AND DURABILITY ASSESSMENT PURPOSE

The contractor shall conduct a durability and damage
tolerance assessment (DI-S-3581/M)(B01V) for the
ATCA based on the available commercial experience,
past analysis of the commercial model, and current
technology in the area of loads, stress, fatigue, and
fracture mechanics to determine an economic operational
life, and to identify those structural inspections
(and any structural retrofits) required to preclude
safety or major economic problems.  The contractor
shall utilize the analyses methods and experimental
results which have been developed for the commercial
aircraft.  Commercial fleet experience shall be used
to locate potential fatigue critical areas for the
ATCA model.  The Damage Tolerance and Durability
Assessment shall consist of the following three tasks.

1061IAC   ECONOMIC AND SAFETY LIMIT DETERMINATION

The contractor shall determine economic and safety
limits of those critical areas identified for the
ATCA airframe.  Analyses shall be conducted to
establish any structural retrofit times and inspec-
tion requirements for the ATCA structure.  The
initial flaw size for calculation of the safety
limit shall be as specified in paragraph 3.1.1 of
MIL-A-83444.  For those areas classified fail-safe,
flaw sizes used subsequent to inspection shall be
those specified in paragraph 3.1.2 of MIL-A-83444.
The economic repair limit shall be determined using
methodology and experimental results developed for
commercial aircraft.  For comparison at selected
critical areas, an independent analysis shall be
made where the initial flaw size for calculation of

II-38

F33700-78-C-0001

the economic repair limit shall be based on Air
Force experience in other programs and any available
contractor data, and shall be subject to Air Force
approval.  Crack growth analyses shall account for
spectrum load interaction effects.

The predicted inspection and modification times shall
be verified by coupon and component tests representing
selected critical areas, subjected to the stress
spectra developed in SOW paragraph 1061IAB.  The
differance  in usage and subsequent difference in
life between the ATCA unmodified structure and the
commercial aircraft shall be obtained in an expedient
manner through the use of coupon tests for the two
stress spectra.  For the ATCA modified structure and
more highly stressed structure, component testing,
and additional analyses shall be performed for
selected critical areas.

During this period, the contractor shall perform the
following tasks:

    (1)   Complete analyses based on approved stress
           spectra and test results

    (2)   Complete definition of economic and safety
           limits

    (3)   Submit results as part of draft report on
           damage tolerance and durability assess-
           ment for USAF approval.

1061IAD    RECOMMENDED INSPECTION/MAINTENANCE PLAN AND COST/
           OPERATIONAL IMPACT STUDY

The contractor shall develop a recommended Airframe
Inspection/Maintenance Plan for the ATCA force opera-
tion, including inspection requirements (procedures
and intervals) and structural retrofits necessary
throughout the fleet economic operational life of
the force.  A budgetary estimate of the airframe
inspection and structural retrofit costs shall be
made based on the results of the recommended inspec-

Ex.: 17; p.: 737

tion/maintenance plan. The contractor shall
estimate the frequency and duration of down-
time associated with the recommended scheduled
inspection/maintenance actions. A teardown
inspection of critical portions of the full-scale
fatigue test article may be required as a result
of analyses in SOW paragraphs 1061IAA, IAB, and
IAC. The contractor shall provide an estimate of
the cost of such a limited inspection after the
analyses are completed and the teardown areas are
identified.

During this period, the contractor shall perform
the total study based on the results of the previous
studies submitted as a part of the draft report on
damage tolerance and durability assessment for
USAF approval.

1061J    MASS PROPERTIES

The contractor shall conduct a weight control pro-
gram on the modifications to the aircraft. A sys-
tem shall be defined for: (1) collecting, assembling,
and distributing mass properties information; (2)
early detection of unfavorable design trends, and
identification of solutions to problem areas; and
(3) weighing of hardware and the air vehicle. The
system shall be as outlined in a Mass Properties
Control and Management Program Plan tailored for
this program (DI-S-3572/M)(B01T). The Actual Weight,
Balance, and Inertia (Mass Properties) Report shall
be provided (DI-S-3584/M)(B022).

1061K    ANALYSES

1061KA    STRUCTURES

The contractor shall conduct structural analysis and
tests in accordance with the regulations and require-
ments of the FAA. The structural integrity of the
aerial refueling boom support structure shall be
demonstrated either by component static tests or
full-scale proof tests.

II-40

T30700-70-C-6001

During this period, the contractor shall perform the following tasks:

(1) Complete the strength check of all structural design.

(2) Complete the strength analysis reports and submit to FAA for verification of compliance to FAR 25.

(Structural tests are performed under 1051B)

1061KC    STRENGTH

For those items which are excluded from the FAA certification process, the contractor shall prepare for Air Force approval, a stress analysis report in accordance with DI-S-3581/M (B01Y). Maximum use shall be made of reports previously submitted to the FAA. Irrespective of FAA or Air Force certification, an analysis report shall be prepared on the Aerial Refueling Boom (ARB) in accordance with DI-S-3581/M (B01Y).

1061KD    AERIAL REFUELING SYSTEM

The contractor shall update and submit this subsystem design analysis as required (DI-S-3581/M)(B01X).

1061KE    AIR CONDITIONING SYSTEM

The contractor shall update and submit this subsystem design analysis as required (DI-S-3581/M)(B021).

1061KF    HYDRAULIC SYSTEM

The contractor shall update and submit this subsystem analysis as required. (DI-S-3581/M)(B01Z).

II-41

1061KG    INHERENT CARGO TRANSPORT CAPABILITY

Aircraft structural capability, particularly floor
strength, required to accommodate the refueling
mission and the standard 463L pallets carrying
bulk-type cargo shall be analyzed for determination
of inherent capability to accommodate the following
additional cargo types (DI-S-3581/M)(301W).

(1)   Nonpalletized bulk-type cargo.

(2)   Nonpalletized cargo that can be loaded/
      unloaded through the existing design
      cargo door and induces relatively high
      unit loading, i.e., wheeled support
      equipment for an F-4 deployment.

(3)   Single pallet cargo that induces relatively
      high unit loading, i.e., wheeled and skidded
      loads.

(4)   Cargo that exceeds overall size and/or weight
      capacity of one 463L pallet and must be
      supported by, and restrained on, two or more
      pallets.  Design requirements for unique
      pallet couplers shall be provided.

(5)   Cargo that exceeds 463L pallet size, but
      incorporates its own 463L compatible base,
      i.e., bare base shelters or aerial delivery
      platforms.

During this period, the contractor shall expand the
analyses submitted prior to PDR and provide a more
comprehensive report for review at CDR.


1061KH    BIOMEDICAL/LIFE SUPPORT

The contractor shall monitor the environment of the
ATCA and identify any condition that constitutes a
hazard to health or performance of personnel.  These
hazards will be monitored and appropriate measures to
render them non-hazardous shall be developed.  The
contractor shall monitor biomedical support design
criteria in accordance with paragraph 3.2.2.3 of
MIL-H-46855A.

II-42

Ex.: 17; p.: 740

1061KI    ELECTRICAL SYSTEM

A subsystem design analysis of the electrical system
shall be submitted in accordance with DI-S-3581/M
(B020).  The contractor shall update this analysis,
as required.


1061L     RELIABILITY PROGRAM

The Reliability Program initiated in the basic
contract period shall continue to be conducted
in accordance with paragraphs 4.1, 4.2, 4.3, 4.4,
5.1.2.1(3), 5.1.2.1(6), 5.1.2.1(7), 5.1.3, 5.2.2,
5.2.2.3, 5.2.4, 5.2.5, 5.2.6, 5.2.7, 5.3, 5.4.1,
5.4.2, 5.5.1 and 5.6 of MIL-STD-785A.  Tasks per-
formed shall be in accordance with the approved
Reliability Program Plan.  The Reliability Program
Plan (DI-R-3533/M) (B01X) shall be updated as required.
The contractor shall submit updated reliability
allocation, assessment and analysis reports
(DI-R-3535/M)(B01P) and R/M Data Reporting Feed-
back - Failure Summary Reports (DI-R-3537A/M)(B01Q).


1061LA    RELIABILITY REQUIREMENTS

The contractor shall establish reliability goals for
each mission (see Appendix II) prorated by standard
and ATCA peculiar equipment (DI-R-3535/M)(B01P).
Probability of mission success shall be no less than
96 percent from initiation of engine start sequence
to landing.  Demonstration of mission success shall
be by analysis.


1061M     MAINTAINABILITY

The maintainability program initiated in the basic
contract shall continue to be conducted in accord-
ance with paragraph 4.1 of MIL-STD 470.  Tasks per-
formed shall be in accordance with the approved Main-
tainability Program Plan.  The Maintainability Pro-

II-43

Ex.: 17; p.: 741

gram Plan shall be updated and submitted as required
(DI-R-3533/M) (B010). Maintainability reports shall
be submitted with the reliability reports (DI-R-3535/M)
(B01P) and (DI-R-3537A/M) (B01Q).

## 1061MA   MAINTAINABILITY REQUIREMENTS

Maintenance requirements for the aerial refueling
boom shall have a maintenance manhours per flight
hour (MMH/FH)  goal of 0.5 at the organizational
and intermediate levels.  This goal shall be demon-
strated by analysis for the refueling mission pro-
files of Appendix II.

## 1061MB   MAINTAINABILITY ASSESSMENT

The contractor shall make available to the Air Force
for on site review and maintainability assessment
any engineering layout or mockups generated for the
design of ATCA peculiar installations.

## 1062   PROGRAM MANAGEMENT

The contractor shall operate a program management
system that is responsive to the accomplishment
of all tasks set forth in the contract SOW.  The
contractor's system shall utilize existing manage-
ment systems to the maximum extent possible.  The
contractor's management system shall contain all
elements necessary to generate meaningful cost and
schedule information and shall include such critical
elements as planning, scheduling, budgeting, work
authorizations, accounting, performance analysis, at
completion estimates, and reporting.

## 1062A   PHOTOGRAPHIC COVERAGE

The contractor shall conduct the photographic program
in accordance with the approved Photographic Plan

Ex.: 17; p.: 742

(DI-A-3006/M)(B001) submitted under the Basic Con-
tract. This photographic coverage shall provide
Air Force Management the necessary visual records
to analyze and evaluate overall program progress.

1062AA    STILL PHOTO COVERAGE

The contractor shall furnish still photo coverage
(DI-A-3011/M)(B003) in accordance with the approved
Photographic Plan (DI-A-3006/M)(B001).

1062AB    MOTION PICTURE COVERAGE

The contractor shall furnish motion picture coverage
(DI-A-3013)(B004) in accordance with the approved
Photographic Plan (DI-A-3006/M)(B001).

1062B     FINANCIAL MANAGEMENT

The contractor shall use in the execution of this
contract a system that plans and controls cost, meas-
ures contract performance, analyzes economic conditions
and is the data base for (1) reporting reliable expend-
iture or billing data as appropriate and schedule
status; and (2) providing budgetary planning infor-
mation. The contractor shall provide requested
budgetary planning information within three working
days after receipt of request or as mutually agreed.
Specifically, the contractor shall submit a Cost and
Performance Report (DI-F-1208A/M)(B00T) which will
provide sufficient information for the Air Force to:

1062BA    Assess the impact of actual progress against the planned
progress in relation to the proposed billings against
the planned billing schedule. This will be accom-
plished through the use of monthly status reports
correlated with actual expenditures and milestone
accomplishments for non-recurring efforts. Schedule

Ex.: 17; p.: 743

accomplishments only will be the basis for assessing
actual progress against planned progress for recurring
activity and production aircraft. The NAVPRO shall be
permitted to verify schedule accomplishments.

1062BB     Accomplish normal Air Force lead time away budgeting
by using the option provision in conjunction with
the Economic Price Adjustment (EPA) provision con-
tained in Section J of the contract.

1062BC     Assess the impact of inflation through the EPA clause
on the projected contract funds requirement. The
contractor shall provide projected billing schedules
for each aircraft ordered against the most recent
statement of delivery price. This report shall reflect
the contractor's latest assessment of the economic
conditions, union agreements, and statistical evalu-
ation affecting each reference index series used
in the EPA clause.

1062C     <u>PROGRAM SCHEDULE</u>

The contractor shall develop and/or maintain the follow-
ing program schedules, down through the equivalent
of CWBS Level 3, which depict the major milestones/
key events necessary to complete the program (DI-A-3007/M
(B002) and (DI-A-3023/M)(B006):

     (1)    Program Master Schedule (Major Milestones)

     (2)    Engineering Master Milestone Schedule

     (3)    First Article Pre-Production Schedule

     (4)    First Article Detail Production Schedule

The contractor shall assess and explain in detail
the degree of risk associated with these schedules.
The contractor shall identify pacing items and explain
their resolution.

Ex.: 17; p.: 744

F33700-73-C-0001

### 1062CA    PROGRESS REPORTS

In order to maintain a management interface between
the contractor and the JPO, the contractor shall
submit monthly program status reports which high-
light progress against the planned schedules in
accordance with DI-A-3007/M (B002).  These reports
shall also address any schedule slippage, forecast
get well date and identify any required Government
action.  The contractor shall notify Government repre-
sentatives of any potential or anticipated schedule
slips at the time they are internally identified
by the contractor.

### 1062D    CONTRACT WORK BREAKDOWN STRUCTURE

The contractor shall prepare and submit a CWBS in
accordance with CDRL Item DI-A-3023/M (B006) for
use in reporting schedule performance.  The contractor's
procedures and format will be acceptable.  Changes/
Revisions shall be submitted as required.

### 1062E    CONTRACT MANAGEMENT

The contractor shall prepare a Task Change Proposal
(DI-A-3020/M) (B005) to control and approve changes
to contract line items that are not directly related
to specifications or under the control of paragraph
1061A of this SOW.

### 1062F    COMMUNICATIONS

To ensure adequate communications capability exists
between the JPO and the contractor's facility, the
contractor shall maintain at the JPO two direct
telephone circuits with up to ten telephones and an
unclassified fax circuit.

### 1062G    INTERFACE CONTROL

The contractor shall be responsible for interface
requirements specified in this SOW.  The interface
requirements shall follow the procedures outlined
in MIL-STD-483 (USAF), Appendix II.

Ex.: 17; p.: 745

F33700-78-C-0001

1070    DATA MANAGEMENT

The contractor's data management procedures shall
be capable of administering all data generated
or required as a result of the tasks and effort
under this contract.  The contractor's data manage-
ment system shall assure that data items will be
submitted in a timely manner and of a quality content
which will comply with the requirements of the Con-
tract Data Requirements List (CDRL).  It shall track
the delivery of data items to determine that the
data is submitted in accordance with the schedule
requirements and shall include the status of approval
actions.

1071    TECHNICAL ORDERS AND MANUALS

Preparation and delivery of technical orders and
manuals shall be in accordance with the approved
technical order publications plan (TOPP) (DI-M-3401/M)
(B013).

1071A   MILITARY SPECIFICATION AIRCRAFT TECHNICAL ORDERS

The contractor shall prepare, to military specifica-
tion, flight manuals, air refueling procedures, flight
crew checklists, cargo loading manuals, basic weight
checklist, and acceptance and functional check flight
procedures manual (DI-M-3407A/M)(B018).  The require-
ments for validation and verification of these tech-
nical orders shall be modified to reflect commercial
procedures to the degree feasible, while attaining
the essential requirements of T.O. 00-5-1 as described
in the Technical Order Publications Plan (TOPP).  The
CDL/MEL List/Procedures Manual shall be a part of
the flight manual series and may be in the contractor's
commercial format.  This manual shall be prepared
by the contractor in conjunction with the Air Force
and LSC.

Ex.: 17; p.: 746

FJ3703-76-C-0001

1071B     <u>COMMERCIAL SPECIFICATION AIRCRAFT TECHNICAL ORDERS</u>

The contractor shall prepare a list of applicable publications, maintenance manuals, illustrated parts catalog, structural repair manual to include corrosion control, a tool and equipment list, non-destructive inspection manual, and associated checklists (DI-M-3407A/M) (B019).

1071BA     <u>INSPECTION REQUIREMENTS AND WORK CARDS</u>

The contractor shall provide commercially formatted manuals functionally equivalent to the work unit code manual, inspection requirements manual, and work cards. These shall be common with the contractor's commercial aircraft manuals to the extent possible and shall be compatible with the support contractor's system (DI-M-3407A/M) (B019). The content of these manuals shall be the product of analysis based on the methodology contained in ATA-Airline/Manufacturer's Maintenance Program Planning Document (MSG-2).

1071C     <u>COMPONENT AND SUPPORT EQUIPMENT (SE) MANUALS</u>

The contractor shall provide Contractor Furnished Aeronautical Equipment (CFAE)/CFE Notices and Production Lists (DI-M-3405A/M) (B015) to recommend manuals for new and modified components and SE. The notices shall include recommendations on the manual requirements (MIL-Spec or ATA Spec 101). The contractor shall provide manuals for new and modified components and SE (DI-M-3405A) (B016) as separately ordered in accordance with the procedures of ASDAD 71-4. Validation and verification of these manuals are required but shall be modified to reflect commercial procedures to the degree feasible, while attaining the essential requirements of T.O. 00-5-1, as described in the TOPP.

Ex.: 17; p.: 747

F33700-78-C-0001

**1071D** TIME COMPLIANCE TECHNICAL ORDERS (TCTO)

**1071DA** MILITARY SPECIFICATION TCTOs

The contractor shall prepare and issue Time Compli-
ance Technical Orders applicable to the ATCA peculiar
configuration (DI-M-3407A) (B017). Preparation of
these TCTOs will require prior approval, normally
through ECP approval channels. Such TCTOs shall be
prepared in accordance with T.O. 00-5-15 to provide
instructions to Air Force activities for accomplish-
ing ATCA peculiar retrofit changes. Validation/
verification and kit trial installation will be
required but shall be modified to reflect commercial
procedures to a feasible degree, while attaining the
essential requirements of T.O. 00-5-15, as described in
the TOPP.

**1071DB** SERVICE BULLETINS

The contractor shall provide service bulletins
(DI-M-3407A/M) (B01A) to provide instructions for
accomplishing inspections/retrofit changes applica-
ble to the basic aircraft. Air Force TCTO numbers,
data codes, and compliance information shall be
provided by the Air Force and applied to these
service bulletins.

**1071E** VALIDATION RECORD

The contractor shall provide a validation record
(DI-M-3408) (B01B) for each technical order vali-
dated.

**1071F** STATUS AND SCHEDULES

The contractor shall provide a Technical Order Status
and Schedules report (DI-M-3402/M) (B014).

II-50

Ex.: 17; p.: 748

1071G     <u>TECHNICAL ORDER PUBLICATION PLAN (TOPP)</u>

The contractor shall prepare, submit and maintain a Technical Order Publication Plan (DI-M-3401/M) (B013) to describe his management procedures for providing the required manuals to include preparation, review, validation, verification, control and maintenance processes.

1071GA     <u>VALIDATION AND VERIFICATION</u>

Validation and verification of new technical manuals and changed sections of existing technical manuals shall be accomplished in accordance with the TOPP.

1071GB     <u>TECHNICAL MANUAL AVAILABILITY</u>

The contractor shall develop, deliver and insure availability of technical manuals in accordance with the TOPP.

1071H     <u>TECHNICAL ORDER SOURCE DATA</u>

1071HA     <u>FIREFIGHTING PROCEDURES</u>

The contractor shall provide the necessary emergency rescue and fire-fighting information to update T.O. 00-105E-9 for the ATCA in accordance with DI-M-3414 (B01C).

1071HB     <u>AERIAL REFUELING PROCEDURES</u>

The contractor shall make available at no additional cost, all data relevant to operational procedures on those aircraft evaluated in the contractor's pre-delivery test program necessary to revise all ATCA receiver aircraft aerial refueling manuals when requested by the Air Force.

Ex.: 17; p.: 749

F33700-78-C-0001

1072    ENGINEERING DATA

1072A    ENGINEERING DRAWINGS

The contractor shall prepare engineering data
and drawings as necessary to describe all ATCA
peculiar items to be produced under this contract.

1072AA    FORMAT

Engineering data shall not be reissued for the pur-
pose of complying with format requirements of the
CDRL.  Existing engineering data which requires
change may be changed/revised in the format in
which it exists.  The drawings system for the basic
aircraft shall be utilized for ATCA peculiar draw-
ings.

1072AB    MICROFILM

The contractor shall provide microfilm in accordance
with best commercial practices when drawings are
ordered by the Air Force or the support contractor.
Roll microfilm or aperture cards are acceptable if
minimum identification requirements are met (refer-
ence MIL-STD-804).

1072B    TECHNICAL ANALYSIS

Technical analysis required for delivery to the Air
Force shall include only that analysis data required
to comply with the statement of work and CDRL.  If
additional analyses basic to the commercial aircraft
or to FAA certification are required to fully
analyze and understand the submitted analyses, they
shall be identified by reference in the data submittal.
The Air Force shall have access to these documents
at the contractor's facility if so desired.

II-52

Ex.: 17; p.: 750

1074        DEFERRED DATA

1074A       DATA ACCESSION LIST/INTERNAL DATA

The contractor shall maintain and deliver a DAL/
Internal Data (DI-A-3027) (B007) which shall list
those data produced under this contract but not
otherwise required for delivery by the CDRL.  The
contractor shall provide a maximum of two copies
of any data contained on the DAL upon receipt by
the contractor of a properly completed and signed
ASD Form 47, Accession List Report Order.  Only
those formal documents receiving Douglas report
numbers or specification numbers shall be listed.
As certain other documentation is recognized as being
necessary for program management and coordination,
such documentation shall be added to the DAL.

1074B       DEFERRED ORDERING

The contractor shall provide the following data
items, if ordered, subject to contract schedule pro-
vision J-5, the contract General Provisions and the
following condition.

1074BA      DATA GENERATED - NOT ORDERED

The task of data preparation related to the following
data items is considered part of the program.  These
data items are subject to updating as the program
evolves; however, revision service for data once
delivered will not be maintained unless such revision
service is separately negotiated.  The estimated
total price (Block 26 of Form 1423) includes handl-
ing, reproduction, and delivery.

DI-E-7015A/M    Drawings, Engineering and Associated
                Lists, Level 3 (Production) - Con-
                tractor format essentially in accord-
                ance with MIL-D-1000A and MIL-STD-100B.

Ex.: 17; p.: 751

F33700-79-C-0001

| DI-E-7015A/M | Drawings, Undimensioned, Stable Base Material |
| DI-H-3258A/M | Training Support Data |
| DI-L-3333A | Decalcomanias and Other Markings |
| DI-M-3405A/M | T.O. CTAE/CFE Notices and Related TOs Existing Commercial TOs |
| DI-T-3721/M | Acceptance Test Reports |
| DI-UA-256 | Industrial Preparedness Planning |

1074BB     DATA PREPARATION PENDING ORDER

The task related to the preparation of these data items is not a part of the basic program. The estimated total price (Block 26 of 1423) includes preparation, handling, reproduction and delivery.

| DI-E-3109 | Selected Item Configuration Records |
| DI-E-3110A | Component Operational Data Notice |
| DI-E-3135 | Characteristics and Performance Data |
| DI-L-3316A/M | Residual Asset Listing, Preoperational |
| DI-P-3461 | Procurement Method Coding Document |
| DI-P-3474/M | Lubrication Requirements |
| DI-R-3549/M | Optimum Repair Level Analysis (ORLA) Reports |
| DI-V-6184 | Proposed Revision to the GSE Exhibit |
| DI-V-6185/M | List of Standard/Modified Hand Tools |
| DI-V-6186/M | Priced Support Equipment List |
| DI-H-6130/M | Task and Skill Analysis (Maintenance) |
| DI-L-3315A | Master Material Support Record (MMSR) Data |

Ex.: 17; p.: 752

F33700-78-C-0001

1074BC    UNESTIMATED DATA ITEMS

The level of effort related to these items requires
further definition.  The price and delivery schedule,
therefore, is to be negotiated at the time the need
is established.

DI-E-7015A/M    Facility Installation Drawings

DI-E-7015A/M    Interchangeability and Replace-
ability Working List

DI-P-3472A    Procurement Data Packages and List

DI-P-3473    Procurement Method Information

DI-S-6177    Calibration/Measurement Requirements
Summary (CMRS)

DI-S-3557    Facilities Design Criteria


1075    COMMERCIAL DATA

The contractor shall provide commercial and existing
data upon receipt of a properly completed and signed
ASD Form 47, Accession List Report Order (DI-M-5406/M)
(B01E).

II-55

FS3700-78-C-0001

ATCA    STATEMENT    OF    WORK

APPENDIX  I

APPLICABLE    DOCUMENTS

Ex.: 17; p.: 754

F33700-78-C-0001

DC-10 ATCA

OPTION 1

STATEMENT OF WORK

APPENDIX 1

APPLICABLE DOCUMENTS

The specific issues of military and federal specifications and
standards that are applicable to the ATCA SOW are as listed in
the SOW. Specific issues of Aeronautical Radio Incorporated
(ARINC) documents and ATA specifications shall be the latest
version of each document that is compatible with the basic
aircraft. Specific issues of other documents called for in the
SOW (except FAA) are listed below.

| Designation | Title |
|---|---|
| AFAD 71-685, Apr 66 with Addendum One | Aerospace Ground Equipment, Identification/Selection/Acquisitio Provisioning Document for USAF Contracts |
| AFR 50-9, 6 Mar 74 | Special Training |
| AFSC DH 1-2, 20 Feb 76 | General Design Factors |
| AFSC DH 1-3, 1 Jan 75 with Revision 6 | Personnel Subsystems |
| AFSC DH 1-6, 20 Dec 75 with Revisions 2 and 3 | System Safety |
| AFSC DH 2-2, 1 May 75 with Revision 6 | Crew Station and Passenger Accommodations |
| AFSC DH 2-6, 10 Feb 76 with Revisions 1 and 2 | Ground Equipment and Facilities |

II-57

Ex.: 17; p.: 755

| | |
|---|---|
| ASD Acquisition Document 71-4, Sep 71 | Technical Order Data for Contractor Furnished Aeronautical Equipment & Contractor-Furnished Equipment |
| T.O. 00-5-1, 15 Nov 73 with Change 1 | AF Technical Order System |
| T.O. 00-5-15, 1 Jun 71 | Air Force Time Compliance Technical Order System |
| T.O. 00-35D-54, 1 Jan 77 with Section V (draft)15 Mar 77 | Air Force Material Deficiency Reporting and Investigating System |
| T.O. 00-105E-9, 1 Jul 72 with Changes 1 through 7 | Aircraft Emergency Rescue Information (Fire Protection) |
| AFAD 71-531(1) Amend 2, Nov 73 | Technical Order Data Requirements for Aircraft |
| AFAD 71-531(18) Amend 1, Aug 73 | Technical Order Data Requirements for Time Compliance Technical Orders and/or Technical Equipment Affected by Engineering Change Proposals (ECPs) |

Ex.: 17; p.: 756

F33700-70-C-0001

ATCA STATEMENT OF WORK

APPENDIX II

MISSION PROFILES

Ex.: 17; p.: 757

F33700-78-C-0001

APPENDIX II

MISSION PROFILES

These mission profiles will be used for Life Cycle Cost Determination, Structural Design Criteria and Reliability Analysis.

Calculations shall be based upon the following assumptions and rules:

1.  No fuel flow conservatism is applied.

2.  Ground distance and time are included in the totals.

3.  The fuel allowance for initial taxi, takeoff and acceleration to en route climb speed is equivalent to the consumption during 10 minutes at ground idle power plus 5 minutes at maximum sea level static cruise thrust.

4.  Fuel consumption for the final taxi/park segment is calculated at ground idle power.

5.  The fuel reserve at the beginning of the final approach and landing is 28,000 pounds.

6.  Final descent terminates at 1,500-foot altitude.

7.  The 15-minute approach/land segment is flown with landing gear extended, flaps at the appropriate approach setting, and at the commensurate approach speed.

8.  Takeoff and landing are accomplished at sea level.

9.  Standard day conditions with zero winds prevail for performance calculations.

10.  Altitude changes are accomplished by long-range climb or descent. Distance gained and elapsed time are included in the adjacent cruise segment.

11.  Minus quantities under the FUEL TRANSFER column heading indicates the fuel transferred from the ATCA to a receiver and plus quantities indicate fuel transferred from a tanker to the ATCA.

Ex.: 17; p.: 758

Case3:11-cv-00061-JSW   Document71-1   Filed01/24/11   Page22 of 101

## ATCH MISSION PROFILE

### TAF EMPLOYMENT

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 411923 | |
| Climb | 28 | 340-309 | :11 | 76 | | 407283 | |
| Cruise #1 | 28 | 300 | 1:00 | 473 | | 400671 | |
| Orbit | 28 | 230 | 1:00 | 0 | | 383671 | |
| **AR#1 | 28 | 300 | :15 | 0 | -17,000 | 370737 | 4 |
| Orbit #2 | 28 | 217 | 1:00 | 0 | | 349534 | |
| **AR #2 | 28 | 300 | :15 | 0 | -17,000 | 337834 | 4 |
| Orbit #3 | 28 | 208 | 1:00 | 0 | | 316779 | |
| **AR #3 | 28 | 300 | :15 | 0 | -17,000 | 306244 | 4 |
| Cruise #2 | 28 | 238 | 1:43 | 642 | | 285296 | |
| Descent | 1.5 | 250 | :12 | 68 | | 266846 | |
| Approach/ Land | 0 | --- | :15 | 35 | | 266287 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 263787 | |
| TOTALS | -- | --- | 7:41 | 1314 | -51,000 | ---- | 12 |

No. Touch & Go Landings: 0
No. Full Stop Landings: 1

Empty Wt.: 238,287 lbs.
Fuel Consumed: 98,695 lbs.

Percentage Flown: 2

ATI-61

Case3:11-cv-00061-JSW   Document71-1   Filed01/24/11   Page23 of 201

TAF DEPLOYMENT/REDEPLOYMENT

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | | :15 | 10 | | 591,800 | |
| Climb | 28.0 | 340-309 | :21 | 148 | | 587,160 | |
| Cruise #1 | 28.0 | 290 | :17 | 130 | | 574,684 | |
| A/R #1 | 28.0 | 290 | :17 | 130 | - 30,000 | 568,631 | 4 |
| Cruise #2 | 28.0 | 290 | 1:39 | 754 | | 532,687 | |
| A/R #2 | 28.0 | 290 | :23 | 172 | - 40,000 | 500,669 | 4 |
| Cruise #3 | 28.0 | 290 | :45 | 342 | | 453,630 | |
| A/R #3 | 28.0 | 290 | :17 | 130 | - 30,000 | 440,535 | 4 |
| Cruise #4 | 28.0 | 290 | :36 | 274 | | 405,642 | |
| A/R #4 | 28.0 | 290 | :17 | 130 | - 30,000 | 395,803 | 4 |
| Cruise #5 | 28.0 | 290 | :35 | 267 | | 361,178 | |
| A/R #5 | 28.0 | 290 | :12 | 86 | - 20,000 | 352,119 | 4 |
| Cruise #6 | 28.0 | 290 | 1:13 | 556 | | 329,170 | |
| Descent | 1.5 | 270 | :13 | 75 | | 311,054 | |
| Approach/Land | 0 | | :15 | 35 | | 310,445 | |
| Taxi/Park | 0 | | :20 | 10 | | 307,945 | |
| TOTALS | - - - | - - - | 7:55 | 3249 | -150,000 | - - - - | 20 |

No. Touch & Go Landings: 0    Percentage Flown: 10    Empty Wt.: 248690 lbs.
No. Full Stop Landings: 1    ACL   33,756  lbs.    Fuel Consumed: 135,414 lbs.

Ex: 17; p.: 760

E33700-78-C-0001

## ATCA MISSION PROFILE

### Cargo Training

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 416571 | |
| Climb Out | 36 | 340-257 | :16 | 114 | | 411931 | |
| Cruise | 36 | 250 | 3:56 | 1000 | | 403298 | |
| Descend | 1.5 | 270 | :37 | 103 | | 348446 | |
| Approach/Land | 0 | 140 | :15 | 38 | | 347716 | |
| Taxi/Park | 0 | | :20 | 10 | | 344892 | |
| TOTALS | | | 5:18 | 2075 | | | |

Payload: 76,000#

No. Touch and Go Landings: 0
No. Full Stop Landings: 1

Empty Weight: 243,710 lbs
Fuel Consumed: 73,311 lbs

Percentage Flown: 1

Ex.: 17; p.: 761

## TYPICAL MISSION PROFILE

### MAC Long Haul and/or Training

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 432032 | |
| Climb | 35 | 340-289 | :16 | 115 | | 427392 | |
| Cruise #1 | 35 | 255 | :58 | 442 | | 418522 | |
| Orbit #1 | 20 | 228 | :15 | 0 | | 405308 | |
| A/R #1 | 20 | 255 | :28 | 163 | -95,000 | 401828 | 3 |
| Climb | 42 | 329-222 | :10 | 76 | | 300479 | |
| Cruise #2 | 42 | 217 | :58 | 450 | | 296720 | |
| Cruise #3 | 42 | 217 | :37 | 284 | | 285999 | |
| Descend | 1.5 | 270 | :18 | 112 | | 279425 | |
| Approach/Land | 0 | 140 | :53 | 140 | | 278703 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 264353 | |
| TOTALS | | | 5:27 | 1802 | -95,000 | | 3 |

No. Touch and Go Landings: 5 (After final descent phase)  
No. Full Stop Landings:  1  

Empty Weight:  238,839 lbs  
Fuel Consumed:  74,230 lbs  

Percentage Flown:  30

## ATCA MISSION PROFILE

### Contingency Cargo

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 523600 | |
| Climb | 33 | 340-204 | :10 | 133 | | 519040 | |
| Cruise #1 | 33 | 274 | 1:54 | 900 | | 508206 | |
| Cruise #2 | 33 | 267 | 1:55 | 900 | | 472650 | |
| Aerial Refuel | 28 | 290 | :17 | 133 | +136,418 | 440261 | |
| Climb | 30 | 260 | :01 | 4 | | 571191 | |
| Cruise #3 | 30 | 293 | 1:53 | 900 | | 570914 | |
| Cruise #4 | 34 | 268 | 4:46 | 2250 | | 530934 | |
| Descend | 1.5 | 270 | :18 | 105 | | 442806 | |
| Approach/Land | 0 | 140 | :15 | 45 | | 442122 | |
| Taxi/Park | 0 | | :20 | 10 | | 438522 | |
| **TOTALS** | | | 12:13 | 5390 | | | |

No. Touch and Go Landings: 0
No. Full Stop Landings: 1

Percentage Flown: 1

Empty Weight: 242,492 lbs
Fuel Consumed: 223,135 lbs
Payload: 171,508#

II-65

Ex.: 17; p.: 763

Case3:11-cv-00061-JSW   Document71-1   Filed01/24/11   Page26 of 201

F3700-78-C-0001

ATM. MISSION PROFILE

## B-52 Training

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 390068 | |
| Climb | 31 | 340-289 | :11 | 80 | | 385428 | |
| Cruise #1 | 31 | 270 | :30 | 225 | | 378733 | |
| Orbit | 30 | 229 | :15 | 0 | | 371510 | |
| A/R #1 | 30 | 240 | :45 | 300 | -25,000 | 368320 | 6 |
| Cruise #2 | 31 | 270 | :45 | 340 | | 333572 | |
| Orbit #2 | 30 | 212 | :15 | 0 | | 323254 | |
| A/R #2 | 30 | 240 | :45 | 312 | -25,000 | 320528 | 6 |
| Cruise #3 | 35 | 232 | 1:07 | 450 | | 286640 | |
| Descent/Land | 0 | 270 | :52 | 187 | | 274591 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 264342 | |
| **TOTALS** | | | 6:02 | 1914 | -50,000 | | 12 |

No. Touch and Go Landings:  3 (After final descent phase)
No. Full Stop Landings:  1

Empty Weight:  238,839 lbs
Fuel Consumed:  77,285 lbs

Percentage Flown:  6

11-56

ATCH MISSION PROFILE

### B-52 Contingency
### Two B-52s

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 503611 | |
| Climb | 31 | 340-289 | :17 | 123 | | 498971 | |
| Cruise #1 | 31 | 265 | 1:50 | 809 | | 488916 | |
| Orbit | 31 | 250 | :15 | 0 | | 457160 | |
| A/R #1 | 31 | 245 | 1:05 | 442 | -140,000 | 453848 | 2 |
| Climb | 42 | 289-222 | :06 | 49 | | 298012 | |
| Cruise #2 | 42 | 217 | 2:43 | 1260 | | 296015 | |
| Descend | 1.5 | 270 | :18 | 112 | | 267000 | |
| Approach/Land | 0 | 140 | :15 | 35 | | 266207 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 263787 | |
| TOTALS | | | 7:24 | 2850 | -140,000 | | 2 |

No. Touch and Go Landings: 0
No. Full Stop Landings: 1

Percentage Flown: 1

Empty Weight: 238,287 lbs
Fuel Consumed: 101,383 lbs

Case3:14-cv-00061-JSW   Document71-1   Filed01/24/11   Page29 of 201

TC.. MISS... PROFILE

## FIGHTER TRAINING (LOW ALTITUDE, 160-220)

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 431923 | |
| Climb | 31 | 340-289 | :13 | 94 | | 427283 | |
| Cruise #1 | 31 | 270 | :30 | 225 | | 419508 | |
| Orbit | 20 | 235 | :15 | 0 | | 412794 | |
| A/R #1 | 20 | 310 | :45 | 319 | -40,000 | 409248 | 12 |
| Climb | 31 | 329-289 | :04 | 35 | | 355974 | |
| Cruise #2 | 31 | 270 | :45 | 337 | | 353748 | |
| Orbit #2 | 20 | 212 | :15 | 0 | | 344116 | |
| A/R #2 | 20 | 310 | :45 | 318 | -40,000 | 341164 | 12 |
| Climb | 42 | 329-222 | :10 | 76 | | 288689 | |
| Cruise #3 | 42 | 217 | :58 | 450 | | 284982 | |
| Descent/Land | 0 | 270 | :55 | 210 | | 274669 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 264341 | |
| **TOTALS** | | | 6:10 | 2084 | -80,000 | ---- | 24 |

No. Touch and Go Landings:  3  (After final descent phase)
No. Full Stop Landings:  1

Percentage Flown:  1

Empty Weight:  238,839 lbs.
Fuel Consumed:  89,141 lbs.

Ex.: 17; p.: 766

F33C9-78-C-0301

## ATCA MISSION PROFILE

### Fighter Training (Med Alt 260-310) and ATCA Refueling Training

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 513583 | |
| Climb | 31 | 340-289 | :18 | 128 | | 508943 | |
| Cruise #1 | 31 | 270 | :30 | 225 | | 498509 | |
| Orbit | 28 | 263 | :15 | 0 | | 489797 | |
| A/R #1 | 28 | 295 | :60 | 465 | -80,000 | 485384 | 24 |
| Climb | 31 | 309-289 | :01 | 10 | | 387401 | |
| Cruise #2 | 31 | 270 | :45 | 337 | | 386810 | |
| Orbit #2 | 28 | 228 | :15 | 0 | | 376015 | |
| A/R #2 | 28 | 295 | :60 | 465 | -80,000 | 372808 | 24 |
| Climb | 42 | 309-422 | :07 | 58 | | 277024 | |
| Cruise | 42 | 208 | :45 | 348 | | 274628 | |
| A/R | 28 | 290 | :45 | 343 | +80,000 | 266898 | 6 |
| Climb | 40 | 309-234 | :06 | 47 | | 335927 | |
| Cruise #3 | 40 | 228 | :58 | 450 | | 333732 | |
| Descent/Land | 0 | 270 | 1:11 | 252 | | 321717 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 306621 | |
| **TOTALS** | | | 8:31 | 3148 | -160,000 Offload +80,000 Onload | | 54 |

No. Touch and Go Landings:  5 (After final descent phase)
No. Full Stop Landings: 1                    Percentage Flown: 0

Empty Weight:  238,839 lbs

Ex: 17; p.: 767

Case3:11-cv-00061-JSW   Document71-1   Filed01/24/11   Page31 of 201

Ex: 17; p.: 768

## Fighter Training (Med Alt 260-310)

| FLIGHT PHASE | ALTITUDE (1000 FT) | AIRSPEED (KEAS) | TIME (HR:MIN) | DISTANCE (Gnd NM) | FUEL TRANSFER (LBS) | BEGIN GROSS WEIGHT (LBS) | NO. OF HOOKUPS |
|---|---|---|---|---|---|---|---|
| Taxi/T.O. | 0 | --- | :15 | 10 | | 531218 | |
| Climb | 31 | 340-289 | :19 | 137 | | 526578 | |
| Cruise #1 | 31 | 270 | :30 | 225 | | 515422 | |
| Orbit | 28 | 239 | :15 | 0 | | 506362 | |
| A/R #1 | 28 | 295 | :60 | 465 | -80,000 | 501772 | 24 |
| Climb | 31 | 309-289 | :01 | 11 | | 403402 | |
| Cruise #2 | 31 | 270 | :45 | 337 | | 402764 | |
| Orbit #2 | 28 | 217 | :15 | 0 | | 391698 | |
| A/R #2 | 28 | 295 | :60 | 465 | -80,000 | 388337 | 24 |
| Climb | 42 | 309-322 | :07 | 57 | | 292297 | |
| Cruise #3 | 42 | 217 | :58 | 450 | | 289895 | |
| Descent/Land | 0 | 270 | :71 | 252 | | 279411 | |
| Taxi/Park | 0 | --- | :20 | 10 | | 264339 | |
| TOTALS | | | 6:56 | 2419 | -160,000 | | 48 |

II-1-70

Percentage Flown:  40
No. Touch and Go Landings: 5 (After final descent phase)
No. Full Stop Landings:  1

Empty Weight:  238,839 lbs
Fuel Consumed:  108,438 lbs

F33700-78-C-0001

# ATCA STATEMENT OF WORK

## PART III

### (OPTIONS 2 - 6)

### 30 SEPTEMBER 1977

FJ3700-71-0001

1000    PRODUCTION OF THE ADVANCED TANKER/CARGO AIRCRAFT
        (ATCA) SYSTEM

        The contractor shall fabricate all ATCA aircraft
        ordered by the Air Force in accordance with Detail
        Specification DS-5500 ATCA and obtain a Conformity
        Certificate Military Aircraft (FAA Form 8130.2) for
        each aircraft.  The contractor shall also provide
        all other support in accordance with the requirements
        of this SOW.

Ex.: 17; p.: 770

N33700-78-C-0001

1010    AIR VEHICLE

The contractor shall fabricate the ATCA air vehicle as defined by Specification  DS 5500-ATCA and the requirement of this SOW.


1015    STRUCTURE


1015EA    CORROSION PREVENTION AND CONTROL PLAN

The contractor shall sustain the working group established under the basic contract to implement the corrosion prevention and control plan.


1015EB    FINISH DOCUMENT

The contractor shall revise and submit revisions to the finish document in accordance with DI-S-3598A/M (C025).


1015EC    CORROSION PREVENTION ADVISORY BOARD

The contractor shall provide a member to the Corrosion Prevention Advisory Board and participate in all Board activities.

III-2

Ex.: 17; p.: 771

F33700-70-0-0001

**1030**     INTEGRATED LOGISTICS SUPPORT (ILS)

**1030A**    INTEGRATED SUPPORT PLAN (ISP)

The contractor shall maintain a sustaining effort to
assure that the ISP is responsive to those elements
extending beyond the predelivery time period.  This
primarily shall assure Customer Service/Field Service
personnel for support of the MOBs, as well as inter-
action with the designated Support Contractor.

**1030D**    RECORDS

The contractor shall maintain and submit Aerospace
Vehicle and Equipment Maintenance and Historical
records (DI-M-3418A)  (C01D).

**1030G**    LOGISTICS SUPPORT CONTRACTOR INTERFACE

The contractor shall provide the Logistics Support
Contractor (LSC) all data, information and services
normally supplied with delivery of the commercial
aircraft.  The contractor shall allow Logistics Sup-
port Contractor participation in all joint USAF/Con-
tractor activities.

Ex.: 17; p.: 772

1040    SUPPORT EQUIPMENT (SE)

The procedures of AFAD 71-685 as modified for the
ATCA program by Addendum Number 1 shall be used
as guidance in the development and acquisition
of all ATCA peculiar SE.  As additional SE require-
ments are identified, they shall be procured following
Support Equipment Recommendation Data (SERD) processing
and approval (including pricing).  AF approval of the
SERD shall be reflected by the issuance of a contrac-
tual document adding the SE to the contract.  Detailed
engineering design on SE items identified through the
SERD process shall not begin until authorized in writing
by the Procuring Contracting Officer (PCO).

1040C   SE DATA

The contractor shall maintain the Consolidated Support
Equipment List (DI-V-6183/M) (C02H) and the Support
Equipment Delivery Schedule/Delinquency Report (DI-P-
6165/M) (C01K) to be reflective of aircraft support
equipment requirements through final delivery of air-
craft.  These reports shall be submitted as required.

1041    PECULIAR SUPPORT EQUIPMENT

The contractor shall provide ATCA peculiar SE, as
ordered in accordance with the provisions of this
contract.  The contractor shall maintain a sustaining
effort to assure adequacy of ATCA support equipment and
be responsive to requirements for development of new
ATCA peculiar SE.  The contractor shall submit Support
Equipment Recommendation Data (DI-S-3596/M) (C023) for
these new ATCA peculiar items.

1041A   PROVISIONING CONFERENCE

The contractor shall conduct provisioning guidance
conferences with the AF and Logistics Support Con-
tractor so that the quantities of peculiar SE
required to be delivered with the production air-
craft options may be established.

III-4

Ex.: 17; p.: 773

1041C     <u>SE DESIGN</u>

The contractor shall design all new peculiar support
equipment in accordance with the requirements of the
contractor's approved commercial support equipment
design practices guide. Contractor's commercial spec-
ifications/drawings for individual items of support
equipment shall be made available for Air Force and
Logistics Support Contractor review. Flight line
support equipment shall be painted with MIL-C-93286
FED STD 595, color no. 24052, forest green polyurethane
coating.


1041D     <u>SE VALIDATION</u>

New ATCA peculiar SE shall be validated by the contractor.

III-5

Ex.: 17; p.: 774

## ATTACHMENT 5

### ATCA PECULIAR SUPPORT EQUIPMENT LIST

| | ITEM NO. | NOMENCLATURE | PART NUMBER | PRICE (CFY 76) | ESTIMATE LEAD TIME |
|---|---|---|---|---|---|
| 1. | P23-001 | Test Set RF Frequency Power | 41 | $   481 | |
| 2. | P23-003 | Test Set, Radio Peak Power Output | 800000048-1 | 37,440 | |
| 3. | P23-005 | Head Set | 911349-801 | 2,086 | |
| 4. | P23-007 | Test Set, Radio Peak Power Output | 622-1789-001 | 20,830 | |
| 5. | P28-001 | Test Set, Line, ARB | DZZ7610-1 | 20,710 | |
| 6. | P28-003 | Test Set, Bench, Boom Control Electronics | DZZ7611-1 | 42,733 | |
| 7. | P28-005 | Adapter, Card Test, Boom Control Electronic Unit | DZZ7614-1 | 8,110 | |
| 8. | P28-007 | Program, Computer, BCU Test Set | TZZ7060-1 | 54 | |
| 9. | P28-009 | Test Set, Bench, Control Panel, Aerial Refueling | DZZ7612-1 | 12,700 | |
| 10. | P28-011 | Test Set, Bench, Fuel Pressure Controller | DZZ7613-1 | 12,605 | |
| 11. | P28-021 | Dolly, Boom | DZZ7260-1 | 6,224 | |
| 12. | P28-023 | Sling, Boom Handling | DZZ7261-1 | 574 | |
| 13. | P28-025 | Sling, Hose Reel | DZZ7262-1 | 96 | |
| 14. | P28-027 | Sling, Handling, Fuel Bladder | DZZ7263-1 | 194 | |
| 15. | P28-029 | Cable, Support, Boom Maintenance | DZZ7264-1 | 775 | |
| 16. | P28-031 | Kit, Tools, Miscellaneous, ARB | DZZ7265-1 | 1,939 | |
| 17. | P28-033 | Fixture, Test, Boom Rudder Actuator | DZZ7266-1 | 4,552 | |
| 18. | P28-035 | Fixture, Test, Boom Elevator Actuator | DZZ7267-1 | 4,785 | |
| 19. | P28-037 | Fixture, Test, Boom Extension Actuator | DZZ7268-1 | 4,785 | |
| 20. | P34-007 | Test Set, Radar Beacon | 01-2692011 | 53,469 | |

1050    SYSTEM TEST AND EVALUATION

1056C    PECULIAR SUPPORT EQUIPMENT

All new ATCA peculiar SE items shall be tested for
compatibility with the ATCA.  Item qualification and
acceptance testing shall be in accordance with commercial
practice.

1056D    ACCEPTANCE TESTING

1056DA    AIRCRAFT ACCEPTANCE TESTING

A joint contractor/Air Force Flight crew shall perform
an acceptance test on each aircraft prior to acceptance
of that aircraft by the Air Force.  This testing shall
be in accordance with standard commercial procedures
as approved by the Air Force (DI-T-3714/M) (C02C).

1056DB    ATCA PECULIAR SUPPORT EQUIPMENT ACCEPTANCE TESTING

Acceptance testing for ATCA peculiar support equipment
shall be in accordance with commercial practice.  Accep-
tance test requirements/procedures shall be documented
in the applicable SE specification or drawing.

Ex.: 17; p.: 776

1060    SYSTEM ENGINEERING/PROGRAM MANAGEMENT


1061    SYSTEM ENGINEERING MANAGEMENT


1061A   CONFIGURATION MANAGEMENT

The contractor shall provide changes/revisions to the
Configuration Management Plan as required (DI-E-3108/M)
(C00G).  The contractor shall accomplish Configuration
Management in accordance with the approved Configuration
Management Plan.


1061AA  IDENTIFICATION OF DOCUMENTATION

For the configuration items (basic aircraft modification
and ATCA peculiar SE) that are FAA approved, the contract-
or shall identify documentation prepared (specifications
and drawings) in accordance with existing commercial system
and procedures.  Modifications to the basic aircraft
and newly developed SE which are not FAA approved and
are to be Air Force approved shall be documented in
accordance with MIL-STD-483, Appendix IX.


1061AB  SPECIFICATIONS

A specification, as defined in MIL-STD-490 and MIL-
STD-483, shall be maintained for aerial refueling
interface control to be used for new receiver aircraft
compatibility design criteria (DI-E-3102A/M) (C00B).
Support equipment shall be defined by procurement
specifications prepared in accordance with existing
commercial practices.


1061AEB COMPUTER PROGRAMS

Each new computer program will be managed as an individual
CI in accordance with the appropriate appendices in MIL-
STD-483.  For each new computer program, a development
specification (DI-E-3119A/M) (C00H), a product specifica-
tion (DI-E-3120A/M) (C00J)and version description document
(DI-E-3121/M) (C00K) shall be submitted.  The contractor
shall prepare and maintain tracking documentation that
fulfills the intent of DI-E-3122 and DI-E-3123, and this
data shall be available to procuring agency upon written

111-7

Ex.: 17; p.: 777

notification. These computer program specifications sh
be updated in accordance with (DI-E-3134) (C00R).

**1061ABC** SPECIFICATION MAINTENANCE

The contractor shall maintain those specifications
for configuration items to be delivered under this
contract. Maintenance of specifications pertains
to specification change notices, specification
change pages, and specification revisions. The
commercial type specifications shall be maintained
in accordance with existing commercial procedures.
Military specifications shall be maintained in
accordance with the Specification Maintenance
Document (DI-E-3105/M) (C00F) and modified by the
following: Proposed SCNs affecting specification
provisions which are affected by other change
proposals not yet formally approved (or disapproved)
by the PCO shall contain the notation "This change
assumes prior or concurrent incorporation of ECP
no. _____ or SCN no. _____ or Service Bulletin
no. _____." Revisions/changes to the detail
specification shall be annotated to clearly depict
the ATCA peculiar portions.

**1061AC** ENGINEERING RELEASE SYSTEM

The contractor shall maintain control over the
manufacture and acceptance of all configuration
items through an engineering release system which
meets the minimum criteria as set forth in MIL-STD-
483 (USAF), Appendix X.

**1061AD** CONFIGURATION AUDITS

The Air Force shall have the right to exercise the
same surveillance normally exercised by commercial
customers.

Ex.: 17; p.: 778

F33700-70-C-0001

**1061AE    ENGINEERING CHANGE PROPOSALS (ECPs)**

Proposed engineering changes which affect ATCA
peculiar specification requirements, price, delivery
schedule, specified weight or performance, specified
interchangeability requirements, the ATCA maintenance
and logistic support concept, or require reidentifi-
cation of a provisioned spare part or spare assembly
shall be classified and processed as Class I ECPs
(DI-E-3128/M) (COOM).  The Contractor may, without
Air Force approval, incorporate Standard Commercial
changes into the basic aircraft as standard
Specification Change Notices (SCN) provided such
changes are not Class I changes as defined above.
These standard commercial changes shall be processed
and incorporated into the undelivered articles as
Class II changes.  All Class II changes shall be sub-
mitted to the Government Plant Representative Office
concurrent with  their release from engineering
for concurrence in classification.  The Contractor
shall furnish the PCO all class II Changes resulting
from SCNs concurrant with their release from engineering
Documentation shall be prepared and submitted to the
Contractor for deletion of any change submitted by
SCN that is not desired by the Air Force and the
contractor shall submit a Class I ECP to the Air
Force.

**1061AEA    ADVANCED CHANGE/STUDY NOTICE (ACSN)**

Before any work or effort is started on the study for
preparation of a Routine Class I ECP, an ACSN initiated
by the contractor must be approved by the Air Force.
ACSN numbers shall be assigned by the contractor and
tracked according to number (DI-S-3127/M) (COOM).

Ex.: 17; p.: 779

F33700-78-C-0001

1061AEB  AUTHORIZATION FOR SUBMITTAL OF ENGINEERING CHANGE
PROPOSALS (ECPs)

In accordance with Paragraph 4.8, MIL-STD-480, the
contractor shall not submit an ECP until approved
by Advanced Change/Study Notice (ACSN) unless the
ECP can be justified as Emergency, Urgent or Compatibil

1061AEC  ENGINEERING CHANGE PROPOSAL (ECP) SUBMITTAL DATA

For all Routine Class I ECPs, the contractor shall
include drawings and other data as appropriate to
allow the Government sufficient insight to evaluate
the proposed change as per MIL-STD-480, paragraph 4.8.7

1061AED  ENGINEERING CHANGE PROPOSAL (ECP) SUBMISSION SCHEDULES

The contractor shall submit ECPs and related Specifi-
cation Change Notices in accordance with the following
schedule:

| Type of ECP | Submittal Due No Later Than |
|---|---|
| Emergency | Message – 24 hours after discovery<br>ECP – 30 days after receipt of<br>authorization |
| Urgent | Message – 24 hours after discovery<br>ECP – 30 days after receipt of<br>authorization |
| Compatibility | ECP – 45 days after discovery |
| Routine | ACSN Required<br>ECP – 45 days after receipt of<br>authorization |

Ex.: 17; p.: 780

**1061AF** STATUS ACCOUNTING

The contractor shall maintain a status accounting
system to the Line Replaceable Unit (LRU) level for
all approved changes and data on serialized components
installed on each aircraft during production (DI-E-
3133/M) (C00Q).  A separate shortage and variance
list shall be maintained for each aircraft until the
discrepancies are cleared.

**1061AG** DEVIATIONS AND WAIVERS

The contractor shall submit requests for deviations
and waivers in accordance with MIL-STD-480 and
MIL-STD-481 (DI-E-3129/M) (C00P).

**1061C** MANUFACTURING/PRODUCTION

The contractor shall maintain a production management
plan that reflects a coordinated interface between
production management for the basic commercial config-
uration and the ATCA peculiar configuration.  The
contractor shall maintain a production management
system for the ATCA which meets the intent of
MIL-STD-1528.

**1061CA** MANUFACTURING/PRODUCTION PLAN

The contractor shall update as required the Manu-
facturing/Production Plan in accordance with
DI-P-3460/M (C01H).

**1061CB** PRODUCTION ANALYSIS REPORT

The contractor shall submit monthly a Production
Analysis Report (DI-P-3455/M) (C01G).  This report
shall contain sufficient information to meet the
intent of DI-P-3475A/M.

Ex.: 17; p.: 781

1061CD    QUALITY CONTROL AND INSPECTION SYSTEM

The contractor shall maintain the quality control
and inspection system established under the basic
contract.  The Air Force reserves the right to review
the contractor's FAA approved quality assurance
system and have access to all quality related records
and data including vendor, supplier and subcontractor
activities.  For those items not certified by the FAA
the Air Force designated representative shall assure
that the items are manufactured in conformance with
the contractor's FAA approved quality assurance system


1061D    SYSTEM SAFETY PROGRAM

The contractor shall maintain a system safety effort
which shall analyze accidents/incidents involving
the ATCA and the commercial DC-10 fleet and recommend
corrective actions as appropriate.  The contractor
shall provide assistance to AF ATCA System Safety
Groups and Accident Investigation Boards on an as
required basis.


1061F    FACILITIES

The contractor shall participate in a facilities
engineering program as stated herein for the purpose
of directly supporting the system program.

Ex.: 17; p.: 782

1061FA    FACILITIES REQUIREMENTS PLAN

The contractor shall maintain, and revise as required,
the Facilities Requirements Plan to identify all real
property facilities required to support system test-
ing, training, and operations (DI-S-6173A/M) (C02A).
The final update shall be that submittal due after
completion of the site activation task at the first
MOB.


1061I    AIRCRAFT STRUCTURAL INTEGRITY PROGRAM (ASIP)

The approved ASIP Master Plan (DI-S-3570/M) (C01S)
shall be continually updated as required during this
phase of the program.  It shall also be reviewed
annually and submitted for Air Force approval as
necessary.  It shall reflect any changes required as
a result of requirements arising from the damage
tolerance and durability assessment, fleet experience
(both commercial and military) and the individual
aircraft tracking program.


1061J    MASS PROPERTIES

The actual weight, balance, and inertia (mass
properties) report shall be provided (DI-S-3584/M)
(C022).


1061L    RELIABILITY PROGRAM

The contractor shall maintain the effort to analyze
failures and recommend corrective actions
(D1-R-3537A/M) (C01Q).


1061M    MAINTAINABILITY

The contractor shall provide sustaining effort to
perform design review and maintenance analysis for
those ECPs and service bulletins which are effective
on the AFCA.

Ex.: 17; p.: 783

1062    PROGRAM MANAGEMENT

The contractor shall operate a program management system that is
responsive to the accomplishment of all tasks set forth in the contract
SOW. The contractor's system shall utilize existing management
systems, shall contain all elements necessary to generate meaningful
cost and schedule information, and shall include such critical elements
as planning, scheduling, budgeting, work authorizations, accounting,
performance analysis, at-completion estimates, and reporting.

1062B   FINANCIAL MANAGEMENT

The contractor shall use in the execution of this contract a system
that plans and controls cost, measures contract performance, analyzes
economic conditions and is the data base for (1) reporting reliable
billing and schedule status, and (2) providing budgetary planning
information. The contractor shall provide requested budgetary
planning information within three working days after receipt of
request or as mutually agreed. Specifically, the contractor shall
submit a Cost and Performance Report (DI-F-1208A/M) (COOT) which
will provide sufficient information for the Air Force to:

1062BA  ACTUAL PROGRESS AGAINST PLANNED PROGRESS

Assess the impact of actual progress against planned progress in
relation to the proposed billings against the planned billing
schedule. The NAVPRO shall be permitted to verify schedule
accomplishments.

1062BB  AIR FORCE LEAD TIME AWAY BUDGETING

Accomplish normal Air Force lead time away budgeting by using the
option provision in conjunction with the Economic Price Adjustment
provision contained in Section J of the contract.

1062BC  IMPACT OF INFLATION

Assess the impact of inflation through the Economic Price Adjustment
(EPA) clause on the projected contract funds requirement. The
contractor shall provide

Ex.: 17; p.: 784

L

F33700-78-C-0001

projected billing schedules for each aircraft ordered
against the most recent statement of delivery price.
This report shall reflect the contractor's latest
assessment of the economic conditions, labor union
agreements and statistical evaluation affecting each
reference index series used in the EPA clause.

1062C    PROGRAM SCHEDULE

The contractor shall develop and/or maintain the
following program schedules which depict the major
milestones/key events necessary to complete the
program (DI-A-3007/M (C002) and DI-A-3023/M (C006)):

(1)   Program Master Schedule (Major Milestones)

(2)   Aircraft 2 through 5 Detail Production Schedule

(3)   Aircraft 6 and Subsequent Major Milestone
      Production Schedule

1062CA   PROGRESS REPORTS

In order to maintain a management interface between
the contractor and the JPO, the contractor shall
submit monthly program status reports which highlight
progress against the planned schedules in accordance
with (DI-A-3007/M) (C002).  These reports shall also
address any schedule slippage, forecast get-well date
and identify any required Government action.  The con-
tractor shall notify Government representatives of any
potential or anticipated schedule slips at the time
they are internally identified by the contractor.

1062D    CONTRACT WORK BREAKDOWN STRUCTURE (CWBS)

The contractor shall prepare and submit a CWBS in accor-
dance with CDRL Item (DI-A-3023/M) (C006) for use in
reporting schedule performance.  The contractor's proce-
dures and format shall be acceptable.  Changes/Revisions
shall be submitted as required.

Ex.: 17; p.: 785

1062E    CONTRACT MANAGEMENT

The contractor shall prepare a Task Change Proposal
(DI-A-3020/M) (C005) to control and approve changes
to contract line items that are not directly related
to specifications or under the control of paragraph
1061A of this SOW.


1062F    COMMUNICATIONS

To ensure adequate communications capability exists
between the JPO and the contractor's facility, the
contractor shall maintain at the JPO two direct
telephone circuits with up to ten telephones and an
unclassified fax circuit.


1062G    INTERFACE CONTROL

The contractor shall be responsible for interface
requirements specified in this SOW.  The interface
requirements shall follow the procedures outlined
in MIL-STD-183 (USAF), Appendix II.

Ex.: 17; p.: 786

F33700-78-C-0001

1070   DATA MANAGEMENT

The contractor's data management procedures shall be
capable of administering all data generated or
required as a result of the tasks and effort under
this contract.  The contractor's data management
system shall assure that data items shall be sub-
mitted in a timely manner and of a quality which
shall comply with the requirements of the Contract
Data Requirements List (CDRL).  It shall track the
delivery of data items to determine that the data
is submitted in accordance with the schedule require-
ments and shall include the status of approval actions.

Ex.: 17; p.: 787

1071    TECHNICAL ORDERS AND MANUALS

The contractor shall provide Class II changes/revisions
to all delivered technical orders and manuals, as nec-
essary, in accordance with the approved Technical Order
Publications Plan (TOPP) (DI-M-3401/M) (C013).


1071A   MILITARY SPECIFICATION AIRCRAFT TECHNICAL ORDERS

The contractor shall maintain these technical orders
and provide Class II changes/revisions in accordance
with AFAD 71-531-1 (1) and the Technical Order Publica-
tions Plan (TOPP) (DI-M-3407A) (C018).


1071B   COMMERCIAL SPECIFICATION AIRCRAFT TECHNICAL ORDERS

The contractor shall maintain and provide changes/
revisions to these technical orders, for as long as
the aircraft remain in service (DI-M-3407A/M) (C019).


1071BA  INSPECTION REQUIREMENTS AND WORK CARDS

The contractor shall maintain and provide Class II
changes/revisions to these documents for as long as
the aircraft remain in service.


1071C   COMPONENT AND SUPPORT EQUIPMENT (SE) MANUALS

The contractor shall provide Contractor Furnished
Aeronautical Equipment/Contractor Furnished Equip-
ment (CFAE/CFE) Notices and Production Lists (DI-M-
3405A/M) (C015) to recommend manuals for new and
modified components and SE.  The contractor shall pro-
vide new manuals and changes to existing manuals as
ordered in accordance with the procedures of ASDAD
71-4 (DI-M-3405A) (C016).  Validation and verification
shall be in accordance with the TOPP.


1071D   TIME COMPLIANCE TECHNICAL ORDERS (TCTO)

Ex.: 17; p.: 788

**1071DA**  **MILITARY SPECIFICATION TCTOs**

The contractor shall provide TCTOs, as required, for
approved change actions (DI-M-3407A) (C017), as
described in the approved TOPP.


**1071DB**  **SERVICE BULLETINS**

Service Bulletins shall be provided as long as the
aircraft remain in service (DI-M-3407A/M) (C01A),
as described in the approved TOPP.


**1071E**  **VALIDATION RECORD**

A validation record shall be provided for each manual
validated (DI-M-3408) (C01L).


**1071F**  **STATUS AND SCHEDULES**

Status and schedules shall be provided monthly until
the last data item is delivered (DI-M-3402/M) (C014).


**1071G**  **TECHNICAL ORDER PUBLICATION PLAN**

The contractor shall maintain the Technical Order
Publication Plan (TOPP) (DI-M-3401/M) (C013).


**1071GA**  **VALIDATION AND VERIFICATION**

Validation and verification of changes shall be
accomplished as required, as described in the
approved TOPP.


**1071H**  **TECHNICAL ORDER SOURCE DATA**

Changes and revisions shall be provided in this
category at no additional charge for as long as
the aircraft remain in service (DI-M-3414) (C01C).

Ex.: 17; p.: 789

1072      <u>ENGINEERING DATA</u>

1072A      <u>ENGINEERING DRAWINGS</u>

1072AA      <u>FORMAT</u>

Engineering data shall not be reissued for the purpose of complying with format requirements of the CDRL. Existing engineering data which requires change may be changed/revised in the format in which it exists. The drawings system used for the basic aircraft shall be utilized for new and modified drawings.

1072AB      <u>MICROFILM</u>

The contractor shall provide microfilm in accordance with best commercial practices when drawings are ordered by the Air Force or the support contractor. Roll microfilm or aperture cards are acceptable if minimum identification requirements are met (reference MIL-STD-804).

1072B      <u>TECHNICAL ANALYSIS</u>

Technical analyses required for delivery to the Air Force shall include only that analysis data required to comply with the Statement of Work and CDRL. If additional analyses basic to the commercial aircraft or to FAA certification are required to fully analyze and understand the submitted analyses, they shall be identified be reference in the data submittal. The Air Force shall have access to these documents at the contractor's facility if so desired.

1074      <u>DEFERRED DATA</u>

1074A      <u>DATA ACCESSION LIST/INTERNAL DATA</u>

The contractor shall maintain and deliver a Data Accession List (DAL) (data item I data (DI-A-3027)(CDT

F30700-78-C-0001

which shall list those data produced under this
contract but not otherwise required for delivery
by the CDRL. The contractor shall provide a max-
imum of two copies of any data contained on the
DAL upon receipt by the contractor of a properly
completed and signed ASD Form 47, Accession List
Report Order. Only those formal documents receiving
Douglas report numbers or specification numbers will
be listed. As certain other documentation is re-
cognized as being necessary for program manage-
ment and coordination. such documentation shall
be added to the DAL.

1074B        DEFERRED ORDERING

The contractor shall provide the following data
items, if ordered, subject to contract schedule
provision J-5, the contract General Provisions,
and the following conditions:

1074BA       DATA GENERATED - NOT ORDERED

The task of data preparation related to the following
data items is considered part of the program. These
data items are subject to updating as the program
evolves; however, revision service for data once
delivered will not be maintained unless such re-
vision service is separately negotiated. The estimated
total price (Block 26 of Form 1423) includes handling,
reproduction, and delivery

DI-E-7015A/M       Drawings, Engineering and Associated
                   Lists Level 3 (Production) - Con-
                   tractor format essentially in accor-
                   dance with MIL-D-1000A and MIL-STD-
                   100B.

DI-E-7015A/M       Drawings, Undimensioned; Stable Base
                   Material

DI-H-3250A/M       Training Support Data

Ex.: 17; p.: 791

F33700-78-C-0001

DI-L-3333A                Decalcomanias and Other Markings

DI-M-3405A/M             T.O. CFAE/CFE Notices and Related
                         TOs Existing Commercial TOs

DI-T-3721/M              Acceptance Test Reports

DI-UA-256               Industrial Preparedness Planning

1074BB    DATA PREPARATION PENDING ORDER

          The task related to the preparation of these data
          items is not a part of the program.  The estimated
          total price (block 26 of 1423) includes preparation,
          handling, reproduction and delivery.

          DI-E-3109               Selected Item Configuration Records

          DI-E-3110A              Component Operational Data Notice

          DI-E-3135               Characteristics and Performance Data

          DI-L-3316A/M            Residual Asset Listing, Preoperational

          DI-P-3461               Procurement Method Coding Document

          DI-P-3474/M             Lubrication Requirements

          DI-R-457..M             Optimum Repair Level Analysis (ORLA)
                                  Reports

                                  J11-22

Ex.: 17; p.: 792

F33700-71-C-0061

| DI-V-6184 | Proposed Revision to the GSE Exhibit |
| DI-V-6185/M | List of Standard/Modified Hand Tools |
| DI-V-6186/M | Priced Support Equipment List |
| DI-H-6130/M | Task and Skill Analysis (Maintenance) |
| DI-L-3315A/M | Master Material Support Record (MMSR) Data |

1074BC   UNESTIMATED DATA ITEMS

The level of effort related to these items required
further definition. The price and delivery schedule,
therefore, is to be negotiated at the time the need
is established.

| DI-E-7015A/M | Facility Installation Drawings |
| DI-E-7015A/M | Interchangeability and Replaceable Working List |
| DI-P-3472A | Procurement Data Packages and List |
| DI-P-3473 | Procurement Method Information |
| DI-S-6177 | Calibration/Measurement Requirements Summary (CMRS) |
| DI-C-3557 | Facilities Design Criteria |

Ex.: 17; p.: 793

F33700-78-C-0001

1075   COMMERCIAL DATA

The contractor shall provide commercial and existing
data upon receipt of a properly completed and signed
ASD Form 47, Accession List Report Order (DI-M-5406/M)
(C01E)

III-24

Ex.: 17; p.: 794

F33700-70 C-0301

DC-10 ATCA

OPTIONS   2-6

STATEMENT OF WORK

APPENDIX   1

APPLICABLE DOCUMENTS

The specific issues of military and federal specifications and standards that are applicable to the ATCA SOW are as listed in the SOW.  Specific issues of Aeronautical Radio Incorporated (ARINC) documents and ATA specifications shall be the latest version of each document that is compatible with the basic aircraft.  Specific issues of other documents called for in the SOW (except FAA) are listed below.

| DESIGNATION | TITLE |
|---|---|
| AFAD 71-685, Apr 66 with Addendum One | Aerospace Ground Equipment, Identification/Selection/Acquisition/Provisioning Document for USAF Contracts |
| AFSC DH 2-6, 10 Feb 76 with Revisions 1 and 2 | Ground Equipment and Facilities |
| ASD Acquisition Document 71-4, Sep 71 | Technical Order Data for Contractor-Furnished Aeronautical Equipment and Contractor-Furnished Equipment |
| T.O. 00-5-1, 15 Nov 73 with Change 1 | AF Technical Order System |
| T.O. 00-5-15, 1 Jun 71 | Air Force Time Compliance Technical Order System |
| T.O. 00-35D-54, 1 Jan 77 with Section V (draft) 15 Mar 77 | Air Force Material Deficiency Reporting and Investigating System |

Ex.: 17; p.: 795

T.O. 00-105E-9, 1 Jul 72         Aircraft Emergency Rescue
with Changes 1 through 7         Information (Fire Protection)

AFAD 71-531(1)                   Technical Order Data Requirements
Amend 2, Nov 73                  for Aircraft

AFAD 71-531(18)                  Technical Order Data Requirements
Amend 1, Aug 73                  for Time Compliance Technical Orders
                                 and/or Technical Equipment Affected
                                 by Engineering Change Proposals (ECPs

Ex.: 17; p.: 796

F33700-78-C-0001

# ADVANCED TANKER CARGO AIRCRAFT

## STATEMENT OF WORK

## PART IV

## 30 SEPTEMBER 1977

Ex.: 17; p.: 797

F33700-78-C-0001

The following are substitute paragraphs which shall become
applicable in lieu of the existing Statement of Work paragraphs
in the event the KC-135 boom is selected for ATCA pursuant to
special provision J-7, "Aerial Refueling Boom Milestone."

## PART I (BASIC CONTRACT)

1041B    FUNCTIONAL ANALYSIS

The contractor shall perform analysis to define the ATCA
peculiar SE requirements.  Such analysis shall be an out-
put of the contractor's maintenance task analysis and
shall be of sufficient depth and scope to be consistent
with the ATCA operational, integrated logistics and main-
tenance concepts.  Cost of ownership, base of maintenance,
human engineering analysis and useful life shall be con-
sidered and evaluated during the identification and develop
ment cycle.

This task shall cover the organizational, intermediate
and depot levels of maintenance for systems/equipment
which are ATCA peculiar by virtue of being a newly
designed/developed item and to the organizational and
intermediate levels of maintenance for existing systems/
equipment which are ATCA peculiar because they have been
newly identified for use on the ATCA.

The contractor shall prepare and submit SERDs consistent
with the above analysis and in accordance with DI-S-3596/M.

1061H    DESIGN/PROGRAM REVIEWS

The contractor shall plan and conduct design/program
reviews to allow the JPO to assess the degree of comple-
tion of technical efforts in support of modifications to
the basic aircraft and design of ATCA peculiar support
equipment.  The reviews shall cover all performance
requirements and engineering integration efforts.  The
reviews shall consist of selected Preliminary Design
Review (PDR), Critical Design Review (CDR), Mockup
Inspections, and formal reviews based on technical mile-
stones.  PDRs and CDRs shall be scheduled for the struc-
tural modifications for aerial refueling, aerial refueling
system, avionics, and furnishings and equipment and shall
include mockup inspections of the flight deck  and ARO
station as applicable.  Initial notification of the pro-
posed agenda for each review shall be provided by the
contractor thirty (30) days prior to the design review.

Ex.: 17; p.: 798

F33700-78-C-0001

The contractor shall formally notify the NAVPRO and JPO
ten (10) days prior to each review of the item(s) to be
discussed. Data to support each PDR shall be provided
by the contractor and shall include applicable specifi-
cations, drawings, interface requirements and trade
studies. Data to support each CDR shall be provided
by the contractor and shall include preliminary specifi-
cation amendments as applicable, drawings, interface
specifications and trade studies.

During this period the contractor shall plan and conduct
Design Reviews as defined in the System Engineering
Management Plan, to include all PDRs, preliminary mockup
inspections of the ARO station and cockpit and CDRs on
the structural modifications.

All analyses required for Design Reviews shall be sub-
mitted as noted in other sections of this SOW.

### 1061KB   STRUCTURAL LOADS

For structural loads generated on the ATCA during coupled
mode, in either tanker or receiver configuration, the
contractor shall initiate a structural loads analysis in
accordance with DI-S-3581N. A loads analysis shall also
be done on those items excluded from the FAA certifi-
cation process. The structural loads analysis report
shall contain those data necessary to establish, in detail,
the magnitude and distributions of all applied induced/
external loads that the ATCA is required to sustain.
Maximum use shall be made of reports previously submitted
to the FAA.

### 1061KC   STRENGTH

For those items which are excluded from the FAA certifica-
tion process, the contractor shall initiate a stress
analysis report in accordance with DI-S-3581/M. Maximum
use shall be made of reports previously submitted to the
FAA.

Ex.: 17; p.: 799

F33700-76-C-0001

## 1061KD    AERIAL REFUELING SYSTEM

A subsystem design analysis of the total aerial refueling
system, which includes the additional tankage, ground
accessible refueling system, centerline boom and hose/
drogue aerial refueling systems, the refueling receptacle
installation (UARRSI) and the reverse refueling system
shall be submitted in accordance with DI-S-3581/M.

## 1061MA    MAINTAINABILITY REQUIREMENTS

Delete

Ex.: 17; p.: 800

PART II

OPTION 1

1041B     SE FUNCTIONAL ANALYSIS

The contractor shall perform analyses, identify, select
and develop SE and software required to support the ATCA
missions.  The contractor shall perform a continual revie
of all ATCA ground support functions for the air vehicle
operating and maintenance cycle to assess the impact on
peculiar SE requirements.

This task shall cover the organizational, intermediate,
and depot levels of maintenance for systems/equipment
which are ATCA-peculiar by virtue of being newly designed/
developed items and to the organizational and intermediate
levels of maintenance for existing systems/equipment
which are ATCA-peculiar because they have been newly
identified for use on the ATCA.

The contractor shall progressively prepare firm SE
Recommendation Data (SERDs) consistent with the above
analysis and in accordance with DI-S-3596/M  for equip-
ment and software required for servicing, handling
checkout, and maintenance functions.

1061KC    STRENGTH

For those items which are excluded from the FAA certifi-
cation process, the contractor shall prepare for Air
Force approval, a stress analysis report in accordance
with DI-S-3581/M.  Maximum use shall be made of reports
previously submitted to the FAA.

1061MA    MAINTAINABILITY REQUIREMENTS

Delete

Ex.: 17; p.: 801

20 Dec 78

From
G. D. STAFFIERI

Contract F33700-78-C-0001
Green Sheet on the
proposal was never
created, due to the
competative secrecy
required on this program.
Clearance was obtained
in a meeting in ST.L. on
10/27/77 attended by
Joseph Curtis Harrington
Malcon DSC – SW. John
Janks McDonell & Betty Miller
Al Smith & John Torry - Hdquarter

November 7, 197⁻

## ATCA ACQUISITION CONTRACT

1. Section H, para. 2, on page 10 still has the same flaw that has t corrected in para. 1 of Section H, namely, that aircraft deliver dates are specified as being complete within a given number of months after option exercise. For example, on Item 0017, a December 1 exercise date would mean that the aircraft had to be delivered before April 1st, a year plus later. Actually, what we meant was that it would be delivered during the month of April. I think we should either change this in the contract or attempt to clarify it in the transmittal letter.

2. In Section H, para. 1, on page 9, the first aircraft is now specified as delivering not later than 31 October 1980. This was a 30 day set-back caused by the government asking for a January 3, 1978 firm date on our proposal. I think we might advise the government in our trans-mittal letter that if source selection is made before December 7, this date can be advanced by 30 days.

E. Curtis

Ex.: 17; p.: 803

DAC 30-1023 (REV. 9-76)

DOUGLAS AIRCRAFT COMPANY
ROUTING & CLEARANCE RECORD

DATE **October 31, 1977**

RETURN TO **G. D. Staffieri**
_32361/31256_

**SUBJECT:** REVIEW OF PROPOSED ATCA ACQUISITION CONTRACT
(F33700-78-C-0001)

CONTRACT DOCUMENT ☒

**REFERENCES:**

CONTRACT PROPOSAL ☐

**BRIEF DESCRIPTION:** See Continuation Page.

LOG NO. _____

VALUE: $ _____

NOTE: ATTACHED DOCUMENT DUE TO CUSTOMER ON OR BEFORE ___ASAP___.

Individuals representing the divisions or functions listed below are required to review subject document in the order listed under "Routing". Each reviewing individual must enter in the boxes below the applicable approval code indicating the scope of his approval, the amount of time he spent in review, his signature, and the date signed. "T" approvals shall include all references, specifications, conditions, delivery dates, and cost quotations pertaining to subject document unless specifically excluded by the signer. Exceptions will be noted under "Remarks" or appended hereto.

| ROUTING | APPROVING OFFICE | CODE | REVIEW TIME (HOURS) | TYPED NAME & APPROVAL SIGNATURE | DATE | REMARKS (IF ADDITIONAL SPACE IS REQUIRED, USE REVERSE SIDE.) |
|---|---|---|---|---|---|---|
| 1 | Prepared by | | | G. D. Staffieri | 10/31/7 | |
| | Checked by | | | | | |
| | Director, Commercial Contracts | | | | | |
| | | | | | | |
| | Director - Government Contracts | | | | | |
| | Director - Pricing | | | | | |
| | Director, Program Planning & Control | | | | | |
| | Chief Counsel | | | | | |
| | | | | | | |
| ★ | Program Manager | | | L. F. Harrington | 11/1/7 | all note/corrections |
| ★ | Vice President, Product Support | | | H. Bayer | 11/2 | |
| | Vice President, Program Management | | | | | |
| ★ | Vice President, Engineering | | | E. F. Dubil | 11/3 | see corrections Pg 16 Pg 71 |
| | President, MDFC | | | | | |
| ★ | Vice President, Material | | | W. R. Worrell | 11-4-77 | |
| ★ | V. P. Government Marketing | | | J. E. Crosthwait | 11/1/77 | |
| | V. P. Commercial Sales | | | | | |
| | Executive V.P. Marketing | | | | | |
| | V. P. Fiscal Management | | | | | |
| ★ | V. P. Contracts & Pricing | | | E. Curtis | | See notes |
| ★ | Executive Vice President | | | C. M. Forsyth | | |
| ★ | President, DAC | | | J. C. Brizendine | | |
| | MDC - Vice President, Contracts & Pricing | | | A. H. Smith | | Telcon - CEW/CHey |
| | MDC - President | | | | | |
| | MDC - Chairman | | | | | |

**APPROVAL CODE:**
D — Approved for Div. or Function responsibilities only
T — Approved in total
NR — Review Approval required (individual making this decision must approve)

DAC 30-1023A (REV. 9-69)

INTERNAL USE ONLY

## CONTINUATION OF ROUTING & CLEARANCE RECORD

SUBJECT: REVIEW OF PROPOSED ATCA ACQUISITION CONTRACT
(F33700-78-C-0001)

DATE: Oct. 31, 1977

The attached contract reflects the negotiation between DAC and the
Government. It will be returned to the Air Force (WPAFB) on
11 November 1977 with our "Best and Final Offer" (schedule dates
and prices filled in).

If you have any comments that should be taken into consideration
prior to execution of this document, please indicate along with
your sign-off.

G. D. Staffieri

YTPP                                                    28 Oct 77

Request for Best and Final Offer, RFP F33657-76-R-0751/Proposed
Contract F33700-78-C-0001

NAVPRO

Douglas Aircraft Company
3855 Lakewood Boulevard
Long Beach California 90846

IN TURN

1.  Your proposal submitted in response to the subject RFP has been
under evaluation by the Air Force and discussions have been conducted
with your company representatives during the time period of 21 Decem-
ber 1976 - 27 October 1977.

2.  Pursuant to our discussions and the requirements of ASPR 3-805,
your company is hereby advised that:

    a.  Discussions with the Air Force concerning your proposal to
subject RFP are considered to have been concluded.

    b.  Your company is being offered the opportunity to submit its
"Best and Final" Offer.

    c.  Your best and final offer, including one completed and signed
contract, shall be delivered to the undersigned not later than 1000
hours, 11 November 1977, in Building 259, Area C, WPAFB, Ohio.  Any
offer received after the hour and date specified shall be treated as
a late proposal and subject to the "Late Offers and Modifications"
provision of subject RFP.  As stated in Modification Request (MR) 21-MD,
contract terms and conditions should not be modified.

3.  An "Advance Copy" of subject contract is provided as Attachment 1,
accompanied by the contract's Statement of Work (SOW) and Contract
Data Requirements List (CDRL).  These documents are as agreed to during
the aforementioned discussions and should be retained by your company.

DOUGLAS AIRCRAFT COMPANY (REP)

4. You are requested to complete the official contract copy (Attachment 2) with your best and final offer in accordance with the following:

    a. All best and final prices and delivery schedules shall be inserted in the contract.

    b. All pages of the contract schedule shall be initialed in the upper right-hand corner of the page.

    c. The contract cover page (Standard Form 26) must have Blocks 21, 23, 24 and 25 completed by your company. The person signing the contract must have authority to bind your company contractually. Evidence of signatory authority must accompany the signed contract.

    d. All names must be typed below the appropriate signatures and the date of signing inserted.

5. In addition to paragraph 4 above, your best and final offer shall be supplemented with the following:

    a. All documentation necessary to substantiate your best and final offer. Per the instructions in MR-17-MD, you are required to update proposal Volume X to include that substantiation which was not provided in your 23 September 1977 submittal. Where your best and final offer differs from the cost substantiation previously submitted, you are required to update this information with proposal change pages. Your update of Volume X should also include any required data item price changes consistent with the CDRL package attached hereto. New DD 633 forms shall be submitted which reflect the current contract line item structure. All required life cycle cost input data and revised price and cost summaries shall also be provided.

    b. An executed Current Cost or Pricing Certificate, in the format provided in Attachment 3.

    c. Revised pages to Detail Specification DS-5300 ATCA and Appendix A, dated 30 September 1977, incorporating the previously agreed to changes as set forth in Attachment 3.

    d. Executive summary volumes as referenced in MR-23-MD.

6. The letter of transmittal forwarding the executed contract (and documentation required above) must include a separate breakout of your best and final offer which sets forth those contract provisions completed in accordance with the instructions of paragraph 4 above. This breakout

2

Ex.: 17; p.: 807

may be provided as an attachment to the transmittal letter. Your letter of transmittal shall also specify that the period for acceptance of your best and final offer shall be through 3 January 1978.

7. Any changes made to your proposal must be fully supported by data sufficient to track and justify the changes to individual proposal elements, delivery dates, prices, etc. Unsupported best and final offers could be subject to penalty in the overall proposal evaluation and an otherwise acceptable proposal could be placed in jeopardy.

8. In addition to the written submission specified above, you may also present a briefing which summarizes your contract and best and final offer. This briefing may be given from 1330-1445 hours on 11 November 1977 in Room 105, Building 259, Area C, WPAFB, Ohio.

*Curtis N. Newell III*

CURTIS N. NEWILL III, Capt, USAF        4 Atchs
Contracting Officer                     1. Advance Contract Copy w/Atchs
Directorate of Proc & Mfg               2. Official Contract Copy
Deputy for ATCA                         3. Current Cost or Pricing
                                        Certificate (2 Cys)
                                        4. Detail Specification Revisions

3

Ex.: 17; p.: 808

ADVANCE CONTRACT COPY

Atch 1

Ex.: 17; p.: 809

| | | | AWARD/CONTRACT | | PAGE | OF |
|---|---|---|---|---|---|---|
| STANDARD FORM 26 | | J | | CCN/33 | 1 | |

| 1 CONTRACT (Proc Inst Idant) No | 2 EFFECTIVE DATE | 3 REQUISITION/PURCHASE REQUEST/PROJECT NO | 4 CERTIFIED FOR NATIONAL DEFENSE UNDER BDSA REG 2 AND/OR DMS REG 1 RATING |
|---|---|---|---|
| F33700-78-C-0001 | 03 Jan 78 | See Section K | DO A-1 |

| 5 ISSUED BY | CODE | 6 ADMINISTERED BY (if other than block 5) | CODE N63287 | 7 DELIVERY FOR FOB DESTINATION UNLESS BLOCK BELOW Section H |
|---|---|---|---|---|
| AFLC, AF ACQUISITION LOGISTICS DIVISION WRIGHT-PATTERSON AIR FORCE BASE, OHIO BUYER: AFALD/YTPP/C N Newill | | NPRO, McDONNELL DOUGLAS CORPORATION Douglas Aircraft Company SCD:A Long Beach CA 90846 | | |

| 8 CONTRACTOR NAME AND ADDRESS | CODE 88277 | FACILITY CODE | 9 DISCOUNT FOR PROMPT PAYMENT |
|---|---|---|---|
| McDONNELL DOUGLAS CORPORATION Douglas Aircraft Company 3855 Lakewood Blvd Long Beach CA 90846 | | | None |

10 Submit invoices (4 copies unless otherwise specified) to address shown in Code 12

| 11 SHIP TO/MARK FOR | CODE | 12 PAYMENT WILL BE MADE BY | CODE F39-140 |
|---|---|---|---|
| See Section H Herein | | HQ AFCMD Accounting & Finance Division PO Box 5850 Albuquerque NM 87115 | |

| 13 THIS PROCUREMENT WAS ☐ ADVERTISED, ☒ NEGOTIATED, PURSUANT TO | ☒ 10 U S C 2304 (a)(14) ☐ 41 U S C 253 (a) 1 |
|---|---|

14 ACCOUNTING AND APPROPRIATION DATA
See Section K

Contract for:

The Advanced Tanker/Cargo Aircraft (ATCA) System

# Advance

# Copy

| 21 | | 15G(H) AMOUNT OF CONTRACT $ |
|---|---|---|

CONTRACTING OFFICER WILL COMPLETE BLOCK 22 OR 23 AS APPLICABLE

| 22 ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return ___1___ copies to issuing office) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.) | 23 ☐ AWARD (Contractor is not required to sign this document) Your offer on Solicitation Number _____ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary. |
|---|---|

| 23A NAME OF CONTRACTOR DOUGLAS AIRCRAFT COMPANY | 24 |
|---|---|
| BY _____ (Signature of person authorized to sign) | _____ (Signature of Contracting Officer) |

| 24 NAME AND TITLE OF SIGNER (Type or print) | 25 DATE SIGNED | 26 NAME OF CONTRACTING OFFICER (Type or print) | 27 |
|---|---|---|---|

SECTION A (Continued)

Page 2

## TABLE OF CONTENTS
## THE FOLLOWING CONTRACT SECTIONS ARE CONTAINED IN THE CONTRACT

| (X) | SEC | | PAGE | | (X) | SEC | | PAGE |
|-----|-----|-----|------|-----|-----|-----|-----|------|
| | | PART I - GENERAL INFORMATION | | | (X) | I | Inspection and Acceptance | 12 |
| (X) | A | Main Body | 1 | | (X) | J | Special Provisions | 13 |
| | B | Contract Form and Representations, Certifications, and Other Statements of Offerors | | | (X) | K | Contract Administration Data | 74 |
| | C | Instructions, Conditions, and Notices to Offerors | | | | | PART III - GENERAL PROVISIONS | |
| | D | Evaluation & Award Factors | | | (X) | L | General Provisions | 75 |
| | | PART II - THE SCHEDULE | | | | | PART IV - LIST OF DOCUMENTS AND ATTACHMENTS | |
| (X) | E | Supplies/Services & prices | 3 | | | | | |
| | F | Purchase/Specification | | | | | | |
| (X) | G | Preservation/Packaging/Packing | 8 | | (X) | M | List of Documents, Exhibits, and Other Attachments | 94 |
| (X) | H | Deliveries or Performance | 9 | | | | | |

Ex.: 17; p.: 811

| | | | | | |
|---|---|---|---|---|---|
| STANDARD FORM 36, JULY 1966 GENERAL SERVICES ADMINISTRATION FED PROC REG (41 CFR) 1-16.101 | | | REF NO. OF DOC BEING CONT'D | PAGE | OF |

NAME OF OFFEROR OR CONTRACTOR
DOUGLAS AIRCRAFT COMPANY

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | BASIC CONTRACT | | | | |
| 0001 | Perform Initial Preproduction Engineering, Planning and Testing (Nonrecurring) effort in accordance with the Statement of Work (Part I/ Basic Contract) dated 30 Sep 77, incorporated herein by reference. ACR: AA | 1 | LO | | |
| 000101 | Perform initial nonrecurring effort necessary for the delivery and support of the Advanced Tanker/Cargo Aircraft (ATCA) as described in DS 5500 ATCA dated 30 Sep 77, incorporated herein by reference. | | | | |
| 000102 | Perform initial nonrecurring effort necessary for the delivery of the increased accommodations kit (Group B) as described in DS 5500 ATCA, Appendix A, Alternate 3, incorporated herein by reference. | | | | |
| 000103 | Perform initial nonrecurring effort necessary for the delivery of the ATCA peculiar support equipment set forth in Exhibit "E" attached hereto. | | | | |
| 000104 | Perform initial nonrecurring effort necessary for the delivery of the aerial refueling operator station (AROS) mock-up. | | | | |
| 0002 | Provide Data in accordance with Contract Data Requirements List (DD Form 1423) designated Exhibit "A", incorporated herein by reference. | 1 | LO | | NSP |
| | OPTION NUMBER ONE (FY-79) (Items 0003, 0004, 0005, 0006, 0007, 0008 and 0010 are herein referred to as OPTION NUMBER ONE (FY-79). This option shall be exercised pursuant to Contract Provision J.8, "Options". | | | | |
| 0003 | Perform Final Engineering, Planning, Testing and Support (Nonrecurring) effort in accordance with the Statement of Work (Part II/Option 1) dated 30 Sep 77, incorporated herein by reference. ACR: (To be assigned) | 1 | LO | | |

3

Case3MDL No0875 JSVE Document3741 Filed0372411 Page278 of 403

STANDARD FORM 36, JULY 1986  
GENERAL SERVICES ADMINISTRATION  
FED PROC REG (41 CFR) 1-16.101

| | | REF NO. OF DOC. BEING CONT'D | PAGE | OF |
|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR  
DOUGLAS AIRCRAFT COMPANY

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 000301 | Perform final nonrecurring effort necessary for the delivery and support of the Advanced Tanker/Cargo Aircraft (ATCA) as described in DS 5500 ATCA dated 30 Sep 77. | | | | |
| 000302 | Perform final nonrecurring effort necessary for the delivery of the increased accommodation kit (Group 3) as described in DS 5500 ATCA, Appendix A, Alternate 3. | | | | |
| 000303 | Perform final nonrecurring activity necessary for the delivery of the ATCA peculiar support equipment set forth in Exhibit "E" attached hereto. | | | | |
| 0004 | Provide Support for the Air Force Performed Operational Test and Evaluation (OT&E), to include returning the ATCA to the approved production configuration upon the completion of OT&E, in accordance with those tasks identified in the Statement of Work (Part II/ Option 1). ACR: (To be assigned) | 1 | LO | | |
| 0005 | Fabricate, Acceptance Test and Deliver an Advanced Tanker/Cargo Aircraft (ATCA) in accordance with the Statement of Work (Part II/Option 1) and the ATCA Detail Specification DS 5500 ATCA, dated 30 Sep 77. ACR: (To be assigned) | 1 | EA | | |
| 0006 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "B", dated 30 Sep 77, incorporated herein by reference. | 1 | LO | | NSP |
| 0007 | Fabricate, Acceptance Test and Deliver ATCA Peculiar Support Equipment in the types and quantities set forth in Exhibit "E" attached hereto. ACR: (To be assigned) | 1 | LO | | |
| 0008 | Fabricate, Acceptance Test and Deliver an Increased Accommodations Kit (Group 3) in accordance with the Statement of Work (Part II/ Option 1) and the ATCA Detail Specification DS 5500 ATCA, Appendix A, Alternate 3, dated 30 Sep 77. ACR: (To be assigned) | 1 | EA | | |

4

| STANDARD FORM 36, JULY 1966<br>GENERAL SERVICES ADMINISTRATION<br>FED PROC REG (41 CFR) 1-16.101 | (1) NO. OF DOC BEING CONT'D | | PAGE | OF |

NAME OF OFFEROR OR CONTRACTOR
DOUGLAS AIRCRAFT COMPANY

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0009 | RESERVED | | | | |
| 0010 | Perform final nonrecurring effort and provide an Aerial Refueling Operator's Station Mock-up in accordance with the Statement of Work (Part II/Option 1).<br>ACR: (To be assigned) | 1 | EA | | |
| | OPTION NUMBER TWO (FY-79)<br>(Items 0011 and 0012 are herein referred to as OPTION NUMBER 2 (FY-79). This option shall be exercised pursuant to Contract Provision J.8, "Options".) | | | | |
| 0011 | Fabricate, Test and Deliver Advanced Tanker/Cargo Aircraft (ATCA) and provide all related support in accordance with the Statement of Work (Part III/Options 2-6) dated 30 Sep 77, incorporated herein by reference, and the ATCA Detail Specification, DS 5500 ATCA, dated 30 Sep 77.<br>ACR: (To be assigned) | | EA | | |
| 0012 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "C", dated 30 Sep 77, incorporated herein by reference. | 1 | LO | | NSP |
| | OPTION NUMBER THREE (FY-80)<br>(Items 0013 and 0014 are herein referred to as OPTION NUMBER 3 (FY-80). This option shall be exercised pursuant to Contract Provision J.8, "Options".) | | | | |
| 0013 | Fabricate, Test and Deliver Advanced Tanker/Cargo Aircraft (ATCA) and provide all related support in accordance with the Statement of Work (Part III/Options 2-6) dated 30 Sep 77, and the ATCA Detail Specification, DS 5500 ATCA, dated 30 Sep 77.<br>ACR: (To be assigned) | | EA | IAW J.8 | IAW J.8 |
| 0014 | Provide Data in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "C". | 1 | LO | | NSP |

5

STANDARD FORM 30
GENERAL SERVICES ADMINISTRATION
FED. PROC. REG. (41 CFR) 1-16.101

PAGE | OF

NAME OF OFFEROR OR CONTRACTOR
DOUGLAS AIRCRAFT COMPANY

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | OPTION NUMBER FOUR (FY-81)<br>(Items 0015 and 0016 are herein referred to as<br>OPTION NUMBER 4 (FY-81). This option shall be<br>exercised pursuant to Contract Provision J.8,<br>"Options".) | | | | |
| 0015 | Fabricate, Test and Deliver Advanced Tanker/<br>Cargo Aircraft (ATCA) and provide all related<br>support in accordance with the Statement of<br>Work (Part III/Options 2-6) dated 30 Sep 77,<br>and the ATCA Detail Specification, DS 5500<br>ATCA, dated 30 Sep 77.<br>ACR: (To be assigned) | | EA | IAW J.8 | IAW J.8 |
| 0016 | Provide Data in accordance with the Contract<br>Data Requirements List (DD Form 1423) desig-<br>nated Exhibit "C". | 1 | LO | | NSP |
| | OPTION NUMBER FIVE (FY-82)<br>(Items 0017 and 0018 are herein referred to as<br>OPTION NUMBER 5 (FY-82). This option shall be<br>exercised pursuant to Contract Provision J.8,<br>"Options".) | | | | |
| 0017 | Fabricate, Test and Deliver Advanced Tanker<br>Cargo Aircraft (ATCA) and provide all related<br>support in accordance with the Statement of<br>Work (Part III/Options 2-6) dated 30 Sep 77,<br>and the ATCA Detail Specification, DS 5500<br>ATCA, dated 30 Sep 77.<br>ACR: (To be assigned) | | EA | IAW J.8 | IAW J.8 |
| 0018 | Provide Data in accordance with the Contract<br>Data Requirements List (DD Form 1423) desig-<br>nated Exhibit "C". | 1 | LO | | NSP |
| | OPTION NUMBER SIX (FY-83)<br>(Items 0019 and 0020 are herein referred to as<br>OPTION NUMBER 6 (FY-83). This option shall be<br>exercised pursuant to Contract Provision J.8,<br>"Options".) | | | | |
| 0019 | Fabricate, Test and Deliver Advanced Tanker/<br>Cargo Aircraft (ATCA) and provide all related<br>support in accordance with the Statement of<br>Work (Part III/Options 2-6) dated 30 Sep 77,<br>and the ATCA Detail Specification DS 5500<br>ATCA, dated 30 Sep 77.<br>ACR: (To be assigned) | | EA | IAW J.8 | IAW J.8 |

6

STANDARD FORM 36 JULY 1966
GENERAL SERVICES ADMINISTRATION
FED. PROC. REG. (41 CFR) 1-16.101

| | | PAGE | OF |

**NAME OF OFFEROR OR CONTRACTOR**
DOUGLAS AIRCRAFT COMPANY

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0020 | Provide <u>Data</u> in accordance with the Contract Data Requirements List (DD Form 1423) designated Exhibit "C". | 1 | LO | | NSP |
| | <u>RECURRING OPTIONS</u> | | | | |
| 0021 | Fabricate, Test and Deliver Increased Accommodation Kits (Group B) in accordance with Detail Specification DS 5500 ATCA, Appendix A, Alternate 3, dated 30 Sep 77, incorporated herein by reference. (This option shall be exercised pursuant to Contract Provision J.11, "Configuration Alternates Option".) ACR: (To be assigned) | IAW J.11 | EA | IAW J.11 | IAW J.11 |
| 0022 | Fabricate, Test and Deliver <u>ATCA Peculiar Support Equipment</u> in the types and quantities ordered. (This option shall be exercised pursuant to Contract Provision J.9, "ATCA Peculiar Support Equipment" Option.) ACR: (To be assigned) | IAW J.9 | EA | IAW J.9 | IAW J.9 |
| 0023 | Provide <u>Deferred Data</u>, representative examples of which are identified in the Statement of Work, paragraph 1074, and Contract Data Requirements List (DD Form 1423) designated Exhibit "D", incorporated herein by reference. (This option shall be exercised pursuant to Contract Provision J.6, "Special Data Provisions", and General Provision No. 99, "Deferred Ordering of Technical Data and Computer Software".) ACR: (To be assigned) | IAW J.6 | LO | IAW J.6 | IAW J.6 |
| 0024 | Provide <u>Simulator Data</u>. (This option shall be exercised pursuant to Contract Provision J.10, "Simulator Data Option".) ACR: (To be assigned) | IAW J.10 | LO | | |
| 0025 | Provide Maintenance and Engineering Services. (This option shall be exercised pursuant to Contract Provision J.22, "Work Requests".) ACR: (To be assigned) | IAW J.22 | LO | IAW J.22 | IAW J.22 |

7

Ex.: 17; p.: 816

SECTION G – PRESERVATION, PACKAGING, PACKING AND MARKING

1. Preservation, packaging, packing and marking of the supplies called
for hereunder, the price of which is included in the price of said sup-
plies, shall be in accordance with Contractor's Standard Commercial
Practice.

8

Ex.: 17; p.: 817

## SECTION H - DELIVERIES OR PERFORMANCE

1. Delivery Schedule. The Douglas Aircraft Company shall deliver
to the Government the supplies called for hereunder in accordance
with the following:

| Item | Basic Contract |
|------|----------------|
| 0001 | Complete 30 November 1978 |
| 0002 | In accordance with Exhibit A, CDRL |

### Option Number One (FY-79)

| Item | |
|------|---|
| 0003 | Complete not later than 31 October 1980 |
| 0004 | Complete not later than |
| 0005 | Complete not later than 31 October 1980 |
| 0006 | In accordance with Exhibit B, CDRL |
| 0007 | Complete not later than 31 October 1980 |
| 0008 | Complete not later than 31 October 1980 |
| 0009 | RESERVED |
| 0010 | Complete not later than 31 October 1980 |

### Option Number Two (FY-79)

| Item | |
|------|---|
| 0011 | Airplane No. 1 |
|      | Airplane No. 2 |
| 0012 | In accordance with Exhibit C, CDRL |

### Option Number Three (FY-80)

| Item | |
|------|---|
| 0013 | Airplane No. 1 |
|      | Airplane No. |
|      | Airplane No. |
|      | Airplane No. |
| 0014 | In accordance with Exhibit C, CDRL |

### Option Number Four (FY-81)

| Item | |
|------|---|
| 0015 | Airplane No. 1 |
|      | Airplane No. |
|      | Airplane No. |
|      | Airplane No. |
| 0016 | In accordance with Exhibit C, CDRL |

9

SECTION H - CONTINUED

Item                     Option Number Five (FY-82)

0017          Airplane No. 1
              Airplane No.
              Airplane No.
              Airplane No.
0018          In accordance with Exhibit C, CDRL

                        Option Number Six (FY-83)

0019          See paragraph 2 below
0020          See paragraph 2 below

Specific delivery dates for aircraft ordered pursuant to Options two
(2) through five (5) above shall be established prior to option exercise
but shall not exceed the dates established above.

Item                     Recurring Options

0021          In accordance with Special Provision J.11 herein.  Kits
                   complete nine (9) months after option exercise.
0022          In accordance with Special Provision J.9 herein.
0023          In accordance with Special Provision J.6 herein.
0024          In accordance with Special Provision J.10 herein.
0025          In accordance with Special Provision J.22 herein.

2.  Douglas Aircraft Company shall deliver to the Government, aircraft
and data ordered pursuant to alternate options under the Unit Price
Matrix (Provision J.8, "Options") in accordance with the following:

0011          First aircraft complete twenty-five (25) months after
                   option exercise.  Subsequent aircraft at a rate of
                   one per month.
0012          In accordance with Exhibit C, CDRL.
0013          First aircraft complete nineteen (19) months after
                   option exercise.  If alternate Option 2 is not
                   exercised, the delivery of Option 3 aircraft shall
                   commence twenty-three (23) months after option
                   exercise.  Subsequent aircraft at a rate of one per
                   month.
0014          In accordance with Exhibit C, CDRL.
0015          First aircraft complete twenty (20) months after option
                   exercise. Subsequent aircraft at a rate of one per month.

10

Ex.: 17; p.: 819

SECTION H - CONTINUED

**Item**

| | |
|---|---|
| 0016 | In accordance with Exhibit C, CDRL |
| 0017 | First aircraft complete sixteen (16) months after option exercise. Subsequent aircraft at a rate of one per month. |
| 0018 | In accordance with Exhibit C, CDRL. |
| 0019 | First aircraft complete sixteen (16) months after option exercise. Subsequent aircraft at a rate of one per month. |
| 0020 | In accordance with Exhibit C, CDRL. |

With respect to Line Items 0011, 0013, 0015, 0017 and 0019 above, the contractor shall have the right to reschedule the delivery of any air-craft up to ninety (90) days with the firm schedule to be established at the time of option exercise. A delivery date for Economic Price Adjustment (EPA) purposes shall also be established. In no event, however, shall the EPA delivery date exceed the delivery dates of the schedule set forth above for Items 0011, 0013, 0015, 0017 and 0019.

3. Request for consignment instructions for supplies, other than data, shall be made to: AFALD/YTPP, Wright-Patterson AFB Ohio 45433.

11

Ex.: 17; p.: 820

## SECTION I - INSPECTION AND ACCEPTANCE

1. The contractor's Long Beach facility is hereby designated as the point for final inspection and acceptance of the supplies to be furnished hereunder. The aircraft shall be delivered completely set up, serviced, tested and ready for flight. All services shall be finally inspected and accepted at the places where such services are performed.

2. Data shall be inspected and accepted as set forth on the Contract Data Requirements Lists (Exhibits A, B, C, and D referenced).

3. INSPECTION NOTIFICATION: The Government Quality Assurance Representative, in conjunction with the cognizant FAA representative, shall perform inspection of the aircraft, data items, supplies and services called for under this contract.

12

SPECIAL PROVISIONS

1. DEFINITIONS
2. DIRECTION/REDIRECTION OF EFFORT
3. AGREEMENT CONCERNING ANY EVENTS OR CIRCUMSTANCES THAT COULD HAVE AN IMPACT ON PRICE, DELIVERY, SCHEDULE, AND/OR OTHER TERMS AND CONDITIONS OF THIS CONTRACT
4. DEMONSTRATION MILESTONES
5. FEDERAL AVIATION ADMINISTRATION REQUIREMENTS
6. SPECIAL DATA PROVISIONS
7. AERIAL REFUELING BOOM (ARB) MILESTONE
8. OPTIONS
9. ATCA PECULIAR SUPPORT EQUIPMENT OPTION
10. SIMULATOR DATA OPTION
11. CONFIGURATION ALTERNATES OPTION
12. SPECIFICATIONS AND STANDARDS
13. CONFIGURATION MANAGEMENT
14. SPECIAL PROGRESS PAYMENTS
15. ECONOMIC PRICE ADJUSTMENT
16. ASSOCIATE CONTRACTOR RELATIONSHIP WITH ATCA PROGRAM CONTRACTORS AND PROPOSERS
17. MOST FAVORED CUSTOMER WARRANTY
18. FOLLOW-ON PRICE WARRANTY
19. ORDER OF PRECEDENCE
20. NOTIFICATION OF CHANGES
21. SPECIAL PROVISION RELATING TO GROUND AND FLIGHT RISK
22. WORK REQUESTS
23. SERIAL NUMBERS
24. FUEL, OIL, LUBRICANTS, AND OXYGEN
25. CONTROL OVER EMPLOYEES
26. INCORPORATION OF REFERENCED DOCUMENTS
27. FREQUENCY ALLOCATION AND AUTHORIZATION
28. DELIVERY OF SUPPLIES WITH DEVIATIONS OR SHORTAGES
29. RELEASE OF INFORMATION
30. PREPRODUCTION START-UP AND NONRECURRING COSTS
31. ABSTRACTS OF NEW TECHNOLOGY
32. GOVERNMENT FACILITIES
33. INDUSTRIAL PREPAREDNESS PLANNING (IPP)
34. SPECIAL PROVISION RELATING TO SUBCONTRACTING
35. MAINTENANCE/MODIFICATION AND/OR FLIGHT OPERATION REQUIREMENTS
36. SPARES ACQUISITION INTEGRATED WITH PRODUCTION
37. SUPPLIES TO BE ACCORDED DUTY FREE ENTRY
38. WARRANTY AND SERVICE LIFE POLICY
39. SCHEDULE IMPLEMENTATION TO THE BASE SUPPORT PROVISION

13

Ex.: 17; p.: 822

SECTION J - SPECIAL PROVISIONS

1. DEFINITIONS

The following definitions are in addition to those set forth in Clause 1 of the General Provisions of this contract:

Basic Aircraft - That aircraft described in the DC-10-30F Detail Specification DS-5500-30H, dated 30 Sep 77, as amended, to include standard commercial changes.

Aircraft ATCA Peculiar - Synonymous with Air Force and/or ATCA modifications. Those changes required to convert the basic aircraft into an ATCA.

ATCA Aircraft - That aircraft described in Detail Specification DS-5500 ATCA, dated 30 Sep 77, as amended.

Basic Aircraft Support Equipment (SE) - All SE required to support the basic aircraft.

ATCA Peculiar SE - All SE, other than Basic Aircraft SE, required to support the ATCA aircraft. Includes SE to the organizational and intermediate level for equipment/systems already in existence and to the organizational, intermediate, depot level for all newly designed/developed ATCA equipments and/or systems.

Air Force Common - Those subsystems, support equipments, etc., that are installed on the ATCA, or used in its support, and are in the Air Force inventory for use on other systems.

Commercial Specifications, Technical Orders (T.O.s) and Manuals - The specifications, T.O.s and manuals that are normally available to commercial customers.

Logistics Support Contractor - That contractor who will provide logistics and maintenance support to the DC-10 ATCA force after delivery of the first ATCA.

Contractor Format - That format used in the daily business transactions with commercial customers.

Commercial Changes - Changes to the basic aircraft offered to commercial customers.

14

SECTION J - CONTINUED

Data Item Modification - A data item description is defined as modified if some of the requirements have been deleted, if significant formatting requirements have been waived to utilize contractor's format, or if the data item description has been rewritten and is attached.

Pre-Delivery Test - That testing conducted by a contractor/Air Force test team prior to delivery of the first ATCA to the Air Force.

Pre-Delivery Support - That support provided by the ATCA contractor prior to Air Force acceptance and execution of a DD Form 250 for the first ATCA. This shall include all maintenance, transportation and supply support for the first ATCA, its systems, and support equipment.

Air Force Operational Test and Evaluation - That testing to be accomplished within six (6) months after the delivery of the first ATCA to the Air Force.

Contract Award - Synonymous with contract effective date. That date reflected in Block 2 of the contract cover page.

2. DIRECTION/REDIRECTION OF EFFORT

Notwithstanding any of the provisions of this contract, the Procuring Contracting Officer shall be the only individual with authority to act on behalf of the Government to direct/redirect the effort, make determinations relative to approvals and/or successful completion of events required by this contract, or in any way amend any of the terms of the contract.

3. AGREEMENT CONCERNING ANY EVENTS OR CIRCUMSTANCES THAT COULD HAVE AN IMPACT ON PRICE, DELIVERY SCHEDULE, AND/OR OTHER TERMS AND CONDITIONS OF THIS CONTRACT

The contractor agrees to furnish, commencing on 1 April 1978 and thereafter at quarterly intervals, a written statement to the Procuring Contracting Officer stating that no circumstances have occurred which would be a basis for claiming a price, delivery schedule or any other adjustment in the terms and conditions of the contract, or stating what circumstances have occurred (regardless of their nature or who was responsible for them) which will cause claims for adjustment in any of the terms and conditions of the contract. This statement shall be executed by the Executive Vice President for ATCA or the Vice President - Contracts and Pricing. This requirement is in addition to any other requirements of the contract.

15

Ex.: 17; p.: 824

F33700-78-C-0001

Case MDL No. 875 - Document 6666-1 - Filed 01/29/14 - Page 290 of 403
Case 3:11-cv-00065-JBV - Document 74 - Filed 03/24/11 - Page 38 of 201

SECTION J - CONTINUED

4. DEMONSTRATION MILESTONES

a. In order that the Government can determine whether the contractor is demonstrating satisfactory technical accomplishment of the total Advanced Tanker/Cargo Aircraft System, certain milestone events during the performance of this contract are established. These events are hereinafter referred to as Demonstration Milestones. The Demonstration Milestones, the dates by which they shall be accomplished, and the criteria therefore are set forth below:

| Milestone | Success Criteria | Achievement Date |
|-----------|------------------|------------------|
| (1) Preliminary Design Review (PDR) | USAF approval that design concept and preliminary design of the modifications, support equipment and configuration alternate kits, as ordered, and their interface with the basic aircraft, are consistent with specifications and FAA requirements. | 1 September 1978 |
| (2) Critical Design Review (CDR) | USAF approval that detail design of each modification, support equipment, and configuration alternate kits, as ordered, and their interface with the basic aircraft, are consistent with the applicable specifications and FAA requirements. | 1 March 1979 |
| (3) Predelivery Milestone Review (PMR) | USAF approval that the contractually required configuration audits have been successfully completed to verify that the deliverable articles comply with specification and contract requirements and to establish the product baseline to be used for production acceptance purposes. | 15 September 1980 |

16

SECTION J – CONTINUED

b. Prior to the exercise of any option, the Contracting Officer shall determine whether the contractor has satisfactorily accomplished the required Demonstration Milestones. If the Contracting Officer determines that the contractor has not satisfactorily accomplished the required Demonstration Milestones, the contractor shall be notified of such determination, and the Government may either:

(1) delay the exercise of options until such time as the Contracting Officer determines that such Demonstration Milestones have been satisfactorily accomplished;

(2) exercise the option, in whole or in part, if the interests of the Government so require; or

(3) terminate the contract in accordance with the provisions of the clauses entitled "Default" or "Termination for Convenience of the Government", as appropriate under the circumstances.

c. If, pursuant to b(1) or b(2), the exercise of any option is delayed but later is accomplished, the contractor, within ten (10) days of such option exercise, may request a revision of the delivery schedule for the affected items and/or the performance date for subsequent affected Demonstration Milestones. The parties will thereupon negotiate a new Demonstration Milestone performance schedule and a change in the delivery schedules for the option items; provided, however, that no such performance or delivery schedule change shall exceed the number of calendar days between the last scheduled date for exercise of the option and the date of actual exercise of the option. These changes, to include any price adjustments, shall be accomplished by a modification to the contract, but there shall be no adjustment in the contract price or the option prices except to the extent that the delay in accomplishing a milestone is excusable and an equitable adjustment is otherwise provided for by any other provision of this contract. For all production aircraft, the aircraft month of delivery for EPA price determination shall continue to be that month each aircraft would have been delivered had no delay been encountered except to the extent that the delay is excusable. No equitable adjustment resulting from such excusable delay shall be made under this paragraph for any delay or interruption to the extent that performance would have been delayed by any other cause including the fault or negligence of the contractor.

17

Ex.: 17; p.: 826

SECTION J -- CONTINUED

d. The Government's action in exercising any of its options under this contract, in whole or in part, shall not be deemed an acceptance of the work performed by the contractor prior to such option exercise. The provisions of this paragraph shall in no way be deemed to limit the rights of the parties under the clauses entitled "Default" or "Termination for Convenience of the Government".

5. FEDERAL AVIATION ADMINISTRATION REQUIREMENTS

a. The contractor shall provide a quality control system covering all material, fabrication methods and finished parts and assemblies. This system shall comply with Part 21 of the Federal Aviation Regulations, "Certification Procedures for Products and Parts", and Part 37 of the Federal Aviation Regulations, "Technical Standard Order Authorizations".

b. The contractor shall obtain a Type Certificate, amended Type Certificate or amended Type Certificate Data Sheet, as appropriate, from the FAA for the Model DC-10 ATCA. The ATCA, during the contact phase as either a tanker or receiver, need not have FAA certification nor FAA operational approval; however, a failure condition of the aerial refueling system during that portion of normal coupled flight shall not preclude the ATCA from continuing a safe flight and landing. The contact phase for boom refueling is when the receiver aircraft is within the aerial refueling boom mechanical control envelope as defined in Figure 28-52 of the Detail Specification DS 5500 ATCA. For hose/drogue operations, the contact phase is when the receiver aircraft is in contact with the reception coupling or is anywhere within the drogue envelope, out to the maximum trail position as per paragraph 28-53.11.00 of the Detail Specification DS 5500 ATCA.

c. The contractor shall obtain a Federal Aviation Administration Conformity Certificate, Form FAA 8130-2, which shall be furnished to the Administrative Contracting Officer (ACO) prior to delivery and acceptance by the Air Force of the aircraft called for herein. In addition thereto, one (1) copy of the Form FAA 8130-2 and one (1) copy of the DD Form 250 or comparable form will be forwarded to Commander, Air Force Acquisition Logistics Division, Wright-Patterson Air Force Base, Ohio, Attn: AFALD/YTP. Said Conformity Certificate shall recite that the aircraft has been manufactured in conformity with the Type Design covered by the appropriate Type Certificate. The first ATCA, however may be delivered to the Air Force on a Conformity Certificate (FAA 8130-2) which may include exceptions from the Type Design which have been verified by the contractor but not yet approved by the FAA

18

SECTION J - CONTINUED

date of delivery.  Following completion of Air Force Operational Test &
Evaluation (OT&E) and necessary aircraft refurbishment by the contractor,
a final Conformity Certificate (FAA Form 8130-2) shall be provided for
this aircraft.  All deviations or exceptions listed on any Conformity
Certificate shall be subject to the prior approval of the Procuring
Contracting Officer (PCO).

    d.  The contractor shall, prior to or at the time of tendering
delivery of an aircraft called for hereunder to the Government for
acceptance, furnish evidence to the ACO that the FAA has issued a
current Production Certificate that includes the Model DC-10 ATCA on
the production limitation record.

    e.  In the event the use of the above FAA documents is discontinued
during the performance of this contract, any other equivalent documents
subsequently issued by the Federal Aviation Administration or its
successor shall apply.  In the event there should not be any such other
documents issued, the contractor shall comply with the performance require-
ments set forth in the Detail Specification.

    f.  The contractor hereby agrees to make available for review all
data submitted to the FAA for aircraft certification purposes.


6.  SPECIAL DATA PROVISIONS

    a.  Data Rights Agreement.  All technical data which is developed
under this contract shall be furnished with unlimited rights.  All other
technical data described herein shall be furnished with special rights
as defined in subparagraph b(1) of this clause, except for that data to
which the Government otherwise possesses unlimited rights.  No data
shall be provided with limited rights.

    b.  Rights in Data.  The rights obtained by the Government in
technical data are set forth in the Rights in Technical Data and Computer
Software Clause incorporated in the contract, and nothing elsewhere in
this contract or in any document incorporated by reference in this con-
tract shall be construed as in any way altering such rights except as
restricted by the express terms, if any, of this contract as to data
called for and furnished for provisioning purposes.

19

Ex.: 17; p.: 828

Case3:MDL-cvN00875-JBW Document 6666074-1 Filed 03/29/14 Page 294 of 403
F33700-78-C-0001
Case3:MDL-cvN00865-JBW Document 74-1 Filed 03/29/14 Page 92 of 201

SECTION J – CONTINUED

(1) "Special Rights" means rights to use or duplicate technical data, in whole or in part, within the Government, and rights to disclose or release such technical data to any potential contractors for their use (including rights to duplicate) in meeting all U.S. Government requirements except for the manufacture of spare parts. Use and duplication by the U.S. Government and such contractors shall be limited exclusively to performance of all effort involving DC-10 type aircraft owned by the U.S. Government. Special rights also includes rights for logistics support contractor(s) to, in turn, release and disclose technical data to subcontractors performing effort relating to DC-10 type aircraft.

(2) Data to be furnished with Special Rights shall include the following legend therein:

"This data, furnished under Government Contract No. F33700-78-C-0001 shall be used only for satisfying U.S. Government requirements on U.S. Government owned DC-10 type aircraft, and shall not be used, released or disclosed, in whole or in part, for any other purpose without the express written permission of the aircraft manufacturer. Such data shall not be used for the manufacture of parts. This legend shall have precedence over all other Douglas Aircraft Company data rights legends contained hereon."

c. Deferred Ordering of Technical Data and Computer Software. The data contemplated by the "Deferred Ordering of Technical Data" clause of the General Provisions hereof and the data identified in Exhibit "D" (Contract Data Requirements List) and the Statement of Work, paragraph 1074 (Deferred Data) shall not be delivered in accordance with the requirements set forth until specifically ordered in writing by the Procuring Contracting Officer. The data identified in Exhibit "D" and the Statement of Work is representative of data which may be required by the Air Force. When data or software items are ordered, prices and delivery dates shall be negotiated. Compensation to the contractor shall be based on the data definition outlined in Statement of Work paragraphs 1074BA, 1074BB and 1074BC for those data items listed. It is agreed that any data ordered in accordance with the "Deferred Ordering of Technical Data and Computer Software" Clause of the General Provisions hereof shall be submitted to the Government with either "unlimited" or "special" rights. If the data is to be submitted with "special" rights, the Procuring Contracting Officer shall be notified 30 days prior to submission.

20

Ex.: 17; p.: 829

Case3:11-cv-00875-JSW Document74-1 Filed03/29/11 Page295 of 403
Case3:11-cv-00875-JSW Document74-1 Filed03/29/11 Page293 of 403
BJ14U-78-C-0001

## SECTION J – CONTINUED

d. Modification of Data Requirements

(1) From time to time during the performance of this contract, the Procuring Contracting Officer unilaterally may change the place of delivery and the technical office for any line item of the DD Forms 1423, designated as Exhibits and attachments hereto, at no change in contract price, notwithstanding the provisions of the clause hereof entitled "Changes".

(2) From time to time during the performance of this contract, the Procuring Contracting Officer unilaterally may increase or decrease the number of addresses and/or increase or decrease the number of copies, (regular or reproducible) specified for any addressee of any data item of said Exhibits and attachments hereto, at no change in contract price provided that the increase in the total number of copies (regular and reproducible) for an individual line item of data shall not be greater than one hundred percent (100%) of the total number of copies (regular and reprodicible) initially specified in said Exhibits and attachments nor shall the decrease in the total number of copies (regular and reproducible) for an individual line item of data be greater than fifty percent (50%) of the total number of copies (regular and reproducible) initially specified in said Exhibits and attachments. In the event of an increase greater than such 100% or of a decrease greater than such 50%, the parties will negotiate any equitable adjustments in accordance with the procedures of the "Changes" clause.

(3) Unilateral action pursuant to (1) and (2) above shall be by the issuance of a Change Order to this contract which will reference this Part as its authority. Any action directed by this Part shall be effected by the contractor beginning with the first submission of the particular data item or items after receipt by the contractor of the Change Order directing such action.

7. AERIAL REFUELING BOOM (ARB) MILESTONE

If within six (6) weeks after contract award, the Contractor requests Air Force approval to incorporate a KC-135 boom into the ATCA in lieu of the ARB required by Detail Specification DS-5500 ATCA, and if within 30 days of such request Air Force approval is received by the Contractor, it shall be accomplished in accordance with the following:

(1) Part IV of the Statement of Work shall be incorporated into the Statement of Work.

21

Ex.: 17; p.: 830

## SECTION J – CONTINUED

(2)  Detail Specification Appendix A, Alternate Four, shall be incorporated into the Detail Specification DS-5500 ATCA.

(3)  Contract Line Item prices shall be reduced as follows:

| Line Item | Amount ($) |
|---|---|
| 0001/000101 | |
| 0003/000301 | |
| 0005 | |
| 0011 | |

(4)  ATCA peculiar base prices, net airframe base prices, and total net base prices for aircraft set forth in Tables II and IV of Provision J.8 "Options," shall be reduced as follows:

### ATCA FUSELAGE NUMBER

| Table II | Table IV | Amount ($) |
|---|---|---|

22

Ex.: 17; p.: 831

SECTION J - CONTINUED

ATCA FUSELAGE NUMBER

Table II                    Table IV                    Amount ($)

 

 

 

 

 

 

        (5)  Provision J.5, "Federal Aviation Administration Requirements,"
Paragraph b, shall be replaced with the following:

        "b.  The contractor shall obtain a Type Certificate, amended
Type Certificate or amended Type Certificate Data Sheet, as appropriate,
from the FAA for the Model DC-10 ATCA.  The ATCA, during the contact phase
as either a receiver or a hose/drogue tanker, or as a tanker with the
aerial refueling boom deployed, need not have FAA certification nor FAA
operational approval; however, a failure condition of the aerial refueling
system during that portion of normal coupled flight shall not preclude the
ATCA from continuing a safe flight and landing.  For hose/drogue operations,
the contact phase is when the receiver aircraft is in contact with the
reception coupling or is anywhere within the drogue envelope, out to the
maximum trail position as per paragraph 28-53.11.00 of the Detail Specifi-
cation DS-5500 ATCA.  The contact  phase for the receiver mode during
boom refueling is when the receiver aircraft is within the aerial refueling
boom mechanical envelope as defined in Figure 23-52 of Detail Specification
DS-5500 ATCA.

        (6)  There shall be no adjustment in contract delivery schedules.

23

Ex.: 17; p.: 832

SECTION J – CONTINUED

8.  OPTIONS

    a.  Basic (Green Line) Options

        (1)  <u>FY 1979 Option – Number 1</u>

            The contractor hereby grants to the Government an option
to procure the items described in Section E, as Contract Items 0003,
0004, 0005, 0006, 0007, 0008 and 0010 for the firm fixed price of
$      .  The Government may exercise this option in whole only
by giving the contractor written notice at any time on or before
1 December 1978, subject to Provision J.4, "Demonstration Milestones".

        (2)  <u>Option Number 2</u>

            If Option Number 1 is exercised and not terminated, the
contractor hereby grants to the Government an option to procure
ATCA aircraft, and related data (Exhibit C), for the firm fixed price
of $      .  The Government may exercise this option in whole only
by giving the contractor written notice at any time on or before
1 December 1978, subject to Provision J.4, "Demonstration Milestones".

        (3)  <u>Options Number 3, 4 and 5</u>

            If Options Number 1 and 2 have been exercised and have not
been terminated, the contractor hereby grants to the Government three
(3) additional options to procure aircraft, and related data (Exhibit
C), in the quantities and at the prices stated in Table I below.  The
options must be exercised on a consecutive basis and no option may be
exercised unless the option for the preceding year has been exercised.
Options shall be exercised on or before the date indicated below for
each option, subject to Provision J.4, "Demonstration Milestones".

24

Ex.: 17; p.: 833

SECTION J – CONTINUED

## TABLE I

| Option No. | Quantity of Aircraft | Dates for Exercise of Option | Total Option Price in GFY '76 Dollars |
|---|---|---|---|
| 3 (GFY '80) | | 1 December 1979 | |
| 4 (GFY '81) | | 1 December 1980 | |
| 5 (GFY '82) | | 1 December 1981 | |

Table I, above, is a summary of the individual aircraft information contained in Table II. For Options 3, 4 and 5, each aircraft's net airframe base price and net engine base price shall be subject to adjustment in accordance with Clause J–15, Economic Price Adjustment.

    (4)  Option Number 6 (FY 83)

        If Option 5 is exercised pursuant to paragraph a(3) above, the Contractor grants to the Government the option to procure aircraft in GFY 83 pursuant to paragraph J.8b below, "Alternate Options – Unit Price Matrix (UPM)."

  b.  Alternate Options – Unit Price Matrix (UPM)

    (1)  Assuming Option 1 is exercised in accordance with paragraph a(1) above, if any subsequent option is not exercised in accordance with a(2) and (3) above, that basic (green line) option and all subsequent basic (green line) options are no longer effective. In lieu thereof, the Contractor grants to the Government up to five (5) alternate UPM options. Each UPM option shall be exercised once to include all aircraft to be procured for that fiscal year. Further, once the initial option has been exercised under this paragraph b, the remaining alternate options must be exercised consecutively and for a minimum of   aircraft for Options 3 through 6. Alternate Option 2 does not have to be exercised for alternate Options 3 through 6 to remain valid. The alternate options must be exercised by giving the Contractor written notice specifying the quantity to be procured on or before the dates set forth in Table III below, subject to Provision J.4, "Demonstration Milestones".

25

Ex.: 17; p.: 834

SECTION J - CONTINUED

## TABLE III

| Option Number | Dates for Exercise of Option |
|---|---|
| 2 (GFY '79) | 1 December 1978 |
| 3 (GFY '80) | 1 December 1979 |
| 4 (GFY '81) | 1 December 1980 |
| 5 (GFY '82) | 1 December 1981 |
| 6 (GFY '83) | 1 December 1982 |

(2) Table IV contains the Unit Price Matrix total net base prices for quantities of ATCA aircraft from two (2) through For the option being exercised, the total net base price for each aircraft shall start with the fuselage number which next follows the cumulative number of ATCA systems heretofore procured and continue through the last cumulative fuselage number being procured.

For example, if a total of ten (10) aircraft have been procured previously and eight (8) are ordered under a current option, the base prices for the current eight (8) aircraft would be those for aircraft eleven (11) through eighteen (18) from Table IV.

(3) The airframe discount contained in column "d" of Table IV shall be adjusted, depending on the number of ATCA systems being procured for any given option, by the factor shown in Table V. The resultant net airframe base price after discount adjustment shall be added to the net engine base price to determine the revised total net base price.

(4) Each aircraft's net airframe base price and net engine base price shall be subject to adjustment in accordance with Clause J-15, Economic Price Adjustment.

(5) If under this paragraph b, the Government has procured the same as or greater quantities of ATCA systems than specified for each respective basic (Green line) option, and if the quantity of ATCA systems being presently exercised is the same as or greater than its respective basic (Green line) option, the discounts shall be determined from Table II or Table IV, as adjusted by Table V, depending on which table provides the greater total discount.

26

F33700-78-C-0001

Table II to Provision J.8, "Options"

Aircraft Price Structure (Basic (Green line) Options 3-5)

Government Fiscal Year (GFY) 1976 Dollars

| | a | b | | c | d | e | | f | g | h | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Option | Fuselage No. | Commercial Airframe Base Price | + | ATCA Peculiar Base Price | − Airframe Discount | = Net Airframe Base Price | + | Engine Base Price | − Engine Discount | = Net Engine Base Price | = Total Base P |

F33700-78-C-0001

## Table IV to Provision J.8, "Options"

### Aircraft Price Structure – Alternate Options (UPM)

### Government Fiscal Year (GFY) 1976 Dollars

| a | b | | c | d | e | | f | g | h | | i |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ATCA Fuselage No. | Commercial Airframe Base Price | + | ATCA Peculiar Base Price | – Airframe Discount | = Net Airframe Base Price | + | Engine Base Price | – Engine Discount | = Net Engine Base Price | = | Total Net Base Price |

Case3:11-cv-00061-JSW   Document71-1   Filed01/24/11   Page100 of 201

Ex.: 17; p.: 837

Table V to Provision J.8, "Options"

UPM Discount Adjustment Factors

Individual Option                    Discount
Order Quantity                   Adjustment Factor

29

Ex.: 17; p.: 838

SECTION J - CONTINUED

9. ATCA PECULIAR SUPPORT EQUIPMENT OPTION

a. The Contractor grants to the Government the option to order additional pieces of that peculiar support equipment identified in Contract Attachment 5, ATCA Peculiar Support Equipment List. To determine the firm fixed price for the additional support equipment at the time of order, the Government Fiscal Year (GFY) 1976 recurring prices set forth in Attachment 5 may be adjusted using the factors set forth in Table I below. This option may be exercised from time to time during the course of the contract.

b. Support equipment subsequently identified for purchase which is not set forth in Attachment 5 shall be separately priced prior to being procured. If determined appropriate by the Government, the unit recurring price for each newly identified item of support equipment may be added to Attachment 5 in GFY 1976 dollars and additional pieces may be ordered in accordance with paragraph a above.

c. Delivery requirements shall be determined at the time support equipment is ordered.

d. The Government reserves the right, in all instances, to either separately negotiate peculiar support equipment prices each time additional support equipment is procured, or price the support equipment in accordance with the provision of paragraph a above.

TABLE I

| Order Date | Base Price Adjustment Factor |
|---|---|
| 1 Dec 77 – 30 Nov 78 | 1.2517 |
| 1 Dec 78 – 30 Nov 79 | 1.3518 |
| 1 Dec 79 – 30 Nov 80 | 1.4599 |
| 1 Dec 80 – 30 Nov 81 | 1.5767 |
| 1 Dec 81 – 30 Nov 82 | 1.7029 |
| 1 Dec 82 – 30 Nov 83 | 1.8391 |

Ex.: 17; p.: 839

Case: MDL No. 875 JSW Document 6666-1 Filed 01/28/11 Page 305 of 403

10.  SIMULATOR DATA OPTION

a.  The Contractor agrees to provide the Government a McDonnell Douglas Corporation (MDC) simulator data package representative of the DC-10 Advanced Tanker Cargo Aircraft (ATCA).  This data package shall be sufficient to develop a flight simulator capable of initial and transitional training, including normal and abnormal conditions.  The simulator data package shall be provided in three phases and shall, as a minimum, include the following:

Phase I

Preliminary data shall be submitted two months after exercise of this option and shall consist of:

(1)  An aerodynamic three view of the aircraft and a cockpit interior layout including window location and field of view.

(2)  A description of the aircraft dynamic characteristics including critical values and associated flight conditions.  The following conditions will be included:

(a)  Short period longitudinal oscillation

(b)  Phugoid

(c)  Dutch roll

(d)  Roll

(e)  Longitudinal trim changes resulting from:

<u>1</u>  Landing gear position change

<u>2</u>  Flap, slat, spoiler and speed brake position change

<u>3</u>  Power setting changes

(3)  Estimated maximum values of the following:

(a)  True airspeed

(b)  Placard and red line speeds for each configuration

(c)  Linear accelerations and velocities along wind or stability axes of the airplane

31

SECTION J - CONTINUED

     (d)  Rate of climb

     (e)  Altitude

     (f)  Mach number

     (g)  Angular accelerations and velocities about the wind, stability or body axes of the airplane

     (4)  A description and schematic of the flight control system

     (5)  A description of the propulsion system including type, designation and performance.

     (6)  A description including a top level functional diagram or schematic of the following system.

     (a)  Electrical system

     (b)  Hydraulic and pneumatic systems

     (c)  Cabin pressurization and oxygen system data

     (d)  Anti-icing system

     (e)  Fire/overheat warning and control system

     (f)  Automatic stabilization and control system

     (g)  Fuel system

     (h)  Oil system

     (i)  Ground operation, brake and steering systems

     (j)  Landing gear system

     (k)  Auxiliary power plant

     (7)  A list of aircraft instruments

     (8)  A description of avionics including information of interface and modes of operation and identification of all onboard processors including description, function and interfaces sufficient to enable simulation approach tradeoff studies.

     (9)  A DC-10 Series 30 Commercial Flight Manual.

32

Ex.: 17; p.: 841

SECTION J - CONTINUED

Phase II

Additional data shall be submitted 60 days after exercise of this
option, but no earlier than 60 days after the final critical design
review (CDR) and shall consist of:

(1) Updates of data provided in Phase I as required to reflect
the baseline configuration at CDR.

(2) Available pictures of the cockpit/crew station including
any special equipment installed. (Differences between the pictures sub-
mitted and the actual planned layout will be identified.)

Phase III

Flight test and FAA certification data shall be submitted 60 days
after exercise of this option but no earlier than 30 days after FAA
approval of the flight manual and shall consist of:

(1) Updates of performance data provided in Phase I or II as
required to reflect FAA approved data based on flight test.

(2) FAA approved Aircraft Flight Manual.

b. The simulator data shall be provided with rights in accordance
with Special Provision J.6, "Special Data Provisions." In the release of
this data to all potential simulator manufacturers, the Government agrees
to secure from those manufacturers the following agreement in writing:

"McDonnell Douglas Corporation proprietary rights are
included in the data supplied by the Government to
(Name of Simulator Manufacturer). (Name of Simulator
Manufacturer) by accepting this proprietary data agrees
that neither this data nor the information disclosed
therein nor any part thereof shall be reproduced or
transferred to other documents or used or disclosed to
others for manufacturing or for any purpose except as
required for the manufacturer of the Government's ATCA
Simulator."

33

Ex.: 17; p.: 842

SECTION J - CONTINUED

c. The Contractor shall also provide to the simulator manufacturers designated by the Government a copy of all approved ECPs, Service Bulletins and TCTOs which might impact the design and performance of the ATCA flight simulator. This service shall continue as long as this contract, F33700-78-C-0001, remains in force.

d. The Contractor agrees to consummate a contractual agreement with a flight simulator contractor, to be designated by the USAF, to provide engineering services and any additional data required by the flight simulator manufacturer in the design and fabrication of an ATCA flight simulator. The ATCA contractor shall not be responsible for the application of data nor for the flight simulator manufacturer's performance relative to the design and manufacture of the simulator.

e. This option shall be exercised pursuant to Contract Line Item 0024 and must be exercised on or before 30 January 1980.


11. CONFIGURATION ALTERNATES OPTION

The Contractor grants to the Government the option to procure configuration alternate kits from time to time during this contract in accordance with the following:

a. Increased Accommodations Kits

(1) Increased accommodations kits shall be provided in accordance with Detail Specification DS-5500 ATCA, Appendix A, Alternate 3. They shall be ordered pursuant to Contract Line Item 0021.

(2) Individual kit prices are set forth in Table I below. The first kit shall be delivered as part of Option One pursuant to Contract Line Item 0008. Prices for additional kits to be procured with Basic Option 2 aircraft are set forth on a fixed price basis. Prices are also set forth in Government Fiscal Year 76 dollars for kits ordered associated with aircraft whose prices shall be subject to Economic Price Adjustment. Each kit ordered shall be identified to a production aircraft and the kit's price shall be added to that aircraft's fixed price or ATCA peculiar base price for Economic Price Adjustment (if applicable) and progress payment purposes. Each kit shall be delivered with the production aircraft unless negotiated otherwise.

Ex.: 17; p.: 843

SECTION J — CONTINUED

TABLE I TO PROVISION J.11 CONFIGURATION ALTERNATES OPTION

| Kit No. | Fixed Price | Government Fiscal Year 1976 Dollars |
|---|---|---|

35

Ex.: 17; p.: 844

SECTION J — CONTINUED

12. SPECIFICATION AND STANDARDS

The ATCA aircraft shall be designed and produced in accordance
with FAA standards and FAA approved contractor standards and processes,
and certified by the FAA. However, military specifications and
standards shall be used when there are no applicable FAA standards
or FAA approved contractor standards and processes or when a military
specification or standard is specifically required by the terms and
conditions of this contract.

13. CONFIGURATION MANAGEMENT

a. General. The Contractor shall perform configuration management
under the general concepts outlined in MIL-STD 483 by utilizing his
existing commercial practices and procedures in accordance with the
Government approved Configuration Management Plan.

b. Engineering Changes. Engineering changes which affect price,
delivery schedule, specified weight or performance, specified inter-
changeability requirements, the established identification of a pro-
visioned spare part or spare assembly, the ATCA maintenance and logistics
support concept or ATCA peculiar specification requirements, shall be
classified and processed as Class I ECPs.

c. Engineering Change Proposal (ECP) Submittals.

(1) The contracting officer may, at any time, in writing,
request the contractor to prepare and submit an Engineering Change
Proposal (ECP) as that term is defined by MIL-STD-480 and as modified
by b above, within the scope of this contract, as hereafter set forth.

(2) All engineering changes may be submitted in contractor's
format provided the information that is normally required in an ECP
prepared in accordance with MIL-STD-480 and MIL-STD-483 is included in
the change proposal.

(3) All contractor ECPs shall set forth a "not to exceed" price
and delivery adjustment or a "not less than" price and delivery adjustment
acceptable to the contractor if the Government subsequently orders such
ECP. If ordered, the equitable increase shall not exceed, nor shall the
equitable decrease be less than, such "not to exceed" or "not less than"
amounts. This paragraph does not preclude any revision(s) or correction(s)
of an ECP in accordance with paragraphs 4.10 and 4.11 of MIL-STD-480.
Concurrently with the submission of any ECP under this contract in which
the proposed aggregate cost is $100,000 or greater, the contractor shall

36

SECTION J - CONTINUED

submit to the Contracting Officer a completed DD Form 633-5 or 633-7. At the time of agreement upon the price of the ECP, the contractor shall submit a signed Certificate of Current Cost or Pricing Data.

(4) The prices set forth for ECPs shall be firm fixed priced in then year dollars. Prices shall also be provided in FY-76 base year dollars for those aircraft set forth in Tables II and IV of Provision J.8, "Options."

(5) As part of the information furnished with each ECP the Contractor shall, on a Life Cycle Cost basis, estimate all costs associated with the change, including the affects on spares, support equipment, technical data and maintenance for the expected life of the changed item. This information shall be used for evaluation of the change proposal.

d. Standard Commercial Changes. The Contractor may, without Air Force approval, incorporate standard commercial changes into the basic aircraft as standard Specification Change Notices (SCNs), provided such changes are not Class I changes as defined in b above. These standard commercial changes shall be processed and incorporated into the undelivered articles as Class II changes. All Class II changes shall be submitted to the Government Plant Representative Office concurrent with their release from engineering for concurrence in classification. The Contractor shall furnish the Procuring Contracting Officer (PCO) all Class II changes resulting in SCNs concurrent with their release from engineering. Documentation shall be prepared and submitted to the Contractor for deletion of any change submitted by SCN that is not desired by the Air Force and the Contractor shall submit a Class I ECP to the Air Force.

e. ATCA Peculiar Avionics Changes. The Contractor shall provide to the Joint Program Office (JPO) and logistics support contractor a detailed configuration of the ATCA peculiar avionics/instruments, to the line replaceable unit (LRU) level, sixty (60) days prior to avionics critical design review (CDR). Any recommended changes to the avionics/instrumentation defined in the ATCA Detail Specification shall not degrade required avionics performance or increase contract price. Following Air Force approval at avionics CDR, the equipment, to the LRU level, shall be incorporated into the ATCA Detail Specification and controlled in accordance with paragraph b above.

f. Governmental Required Changes. If any law or Governmental regulations or interpretation thereof by a Government agency having jurisdiction, the date of promulgation of which is subsequent to the date of this contract, shall require any change, addition or modification to each aircraft prior to delivery thereof in order to obtain or

37

SECTION J - CONTINUED

maintain certification by the Federal Aviation Administration as pro-
vided herein, it is agreed that such change or modification shall be
made in each aircraft affected and an equitable adjustment made, if
applicable, in aircraft design, weight, balance and time of delivery.

The Contractor shall make such changes, additions, or modifications
in each undelivered aircraft at no change in contract price, terms or
conditions for all such airworthiness and/or certification requirements
which are (i) promulgated prior to eighteen (18) months after the date
of this contract, regardless of the requirements effectivity date
contained therein; or (ii) unique to the DC-10. The price of complying
with all other airworthiness/certification requirements shall be
subject to negotiation. In no instance shall the price of complying
with any requirement exceed that price paid by the contractor's most
favored customer.

14. SPECIAL PROGRESS PAYMENTS

a. Progress payments for all contract Schedule E line items other
than ATCA aircraft line items and configuration alternates ordered pur-
suant to special provision J.11, "Configuration Alternates Option,"
shall be made in accordance with Clause 54 of the General Provisions
entitled "Progress Payments for Other Than Small Business Concerns".

b. Progress payments for Schedule E ATCA aircraft line items (i.e.,
items 0005, 0011, 0013, 0015, 0017, 0019), to include any recurring
configuration alternate items ordered pursuant to Contract Provision J.11,
"Configuration Alternates Option", shall also be made in accordance
with Clause 54 of the general provisions, with the exception of payment
which shall be made in accordance with the payment schedules and condi-
tions set forth below. Payments are based on 80% of the total cumulative
costs incurred on each schedule month designated. Total progress pay-
ments shall not exceed 80% of each aircraft's estimated cost. For the
purpose of this clause only, the cost of each aircraft shall be based on
each aircraft's price less 10% for profit.

c. Progress payments for aircraft number one (line item 0005) shall
be made in accordance with the following payment schedule:

38

SECTION J - CONTINUED

PAYMENT SCHEDULE

| Months Before Aircraft First Flight | Payment – Cumulative % of Aircraft Cost | Monthly Amount | Cumulative Amount |
|:---:|:---:|:---:|:---:|
| 22 | 5 | | |
| 21 | 6 | | |
| 20 | 7.5 | | |
| 19 | 9 | | |
| 18 | 10 | | |
| 17 | 12 | | |
| 16 | 15 | | |
| 15 | 17.5 | | |
| 14 | 20 | | |
| 13 | 22.5 | | |
| 12 | 25 | | |
| 11 | 27.5 | | |
| 10 | 32.5 | | |
| 9 | 40 | | |
| 8 | 45 | | |
| 7 | 52.5 | | |
| 6 | 60 | | |
| 5 | 64 | | |
| 4 | 67.5 | | |
| 3 | 70 | | |
| 2 | 72.5 | | |
| 1 | 75 | | |

The above cumulative percentages do not exceed eighty percent (80%) of estimated incurred costs at each month designated.

Upon successful completion of the aircraft's first flight, the Contractor shall be entitled to a cumulative payment of ninety percent (90%) of the price of aircraft number one or $ _____. To receive this milestone payment, the Contractor shall not be required to comply with the statement of cost submission requirement stated in ASPR E-529.4(b). The certifications required by ASPR E-529.4(c) and (d), however, shall be provided prior to payment to the effect that the milestone has been completed and that total payments do not exceed the Contractor's total incurred contract costs. The balance of the first aircraft's price, $ _____, shall be paid at the time of final delivery to, and acceptance by (DD250), the Government.

39

Ex.: 17; p.: 848

d. Progress payments for aircraft ordered pursuant to contract Options 2 through 6 (Line Items 0011, 0013, 0015, 0017, 0019) shall be made in accordance with the following payment schedule:

## PAYMENT SCHEDULE

| Months Before Aircraft Delivery | Payment – Cumulative % of Aircraft Cost | Monthly Amount | Cumulative Amount |
|---|---|---|---|
| 22 | 5 | | |
| 21 | 6 | | |
| 20 | 7.5 | | |
| 19 | 9 | | |
| 18 | 10 | | |
| 17 | 12 | | |
| 16 | 15 | | |
| 15 | 17.5 | | |
| 14 | 20 | | |
| 13 | 22.5 | | |
| 12 | 25 | | |
| 11 | 27.5 | | |
| 10 | 32.5 | | |
| 9 | 40 | | |
| 8 | 45 | | |
| 7 | 52.5 | | |
| 6 | 60 | | |
| 5 | 64 | | |
| 4 | 67.5 | | |
| 3 | 70 | | |
| 2 | 72.5 | | |
| 1 | 75 | | |

The above cumulative percentages do not exceed 80% of estimated incurred costs at each month designated.

The firm fixed price for aircraft ordered pursuant to Option Two shall be the basis for determining each aircraft's cost. For all aircraft ordered which shall be subject to Economic Price Adjustment (EPA), the aircraft price from which each aircraft's cost shall be determined shall be the forecast price established pursuant to J.15, Economic Price Adjustment, paragraph F.5. A specific payment schedule for each aircraft shall be established prior to the exercise of each option, and incorporated into the contractual document exercising each option. Upon delivery and acceptance of each aircraft, the Contractor shall be entitled to receive the difference of progress payments received and the aircraft's fixed price (Option Two aircraft) or the final price per aircraft, as established in accordance with J.15, for all aircraft subject to Economic Price Adjustment.

40

SECTION J – CONTINUED

e. The contractor shall be entitled to recover progress payments
set forth in paragraphs c and d above upon verification by the Procuring
Contracting Officer of acceptable progressive physical completion of
each aircraft against each aircraft's established production schedule
as reflected in the DC-10 production status report, and upon execution
of a certificate reading as follows:

## CERTIFICATE

This is to certify that Douglas Aircraft Company has pro-
gressed in the performance of work under Contract F33700-
78-C-0001 for aircraft number          in conformance with
the Aircraft Production Schedule used as the basis for
determining payment under this invoice. Contractor further
certifies that all costs for vendor and/or subcontractor
items utilized in the work physically completed have been
paid and that total progress payments made are not in excess
of 80% of costs incurred.

FIRM: _____

NAME: _____

TITLE: _____

DATE OF EXECUTION: _____

f. All payments specified above shall be subject to any with-
holdings specified elsewhere in the contract.

15. ECONOMIC PRICE ADJUSTMENT

a. Base Price. The base prices to be adjusted hereunder are the
net airframe base prices and net engine base prices set forth in Clause
J.8 of the Schedule "Options", Tables II and IV.

b. Price Modifications. The net base prices shall be increased
or decreased by amendments executed in accordance with the provision
hereof entitled "Configuration Management" and as otherwise provided
in this contract.

41

Ex.: 17; p.: 850

SECTION J - CONTINUED

c. Engine and Associated Engine Equipment. The engine base prices set forth in Tables II and IV of Provision J.8, "Options" include the amount indicated for the below listed types and quantities of engine and associated engine equipment not manufactured by contractor which will be purchased and incorporated in each ATCA aircraft by contractor.

| Number Required Per Shipset | Type of Equipment | Base Price Per Shipset Manufacturer and Model No. GE CF6-50C1 |
|---|---|---|
| 3 | Engine | |
| 3 | Fixed Nozzle | |
| 3 | Starter | |
| 3 | Starter Valve | |
| 3 | Core Speed Sensor | |
| 3 | Bleed Air Manifold | |
| 3 | Tail Side Link Mount | |
| 3 | Fuel Drain Eliminator | |
| 3 | TMF Bracket (V-M) | |
| 3 | No. 1 Brg Accel (V-M) | |
| 3 | Fan Reverser | |
| 3 | Power Door Opener | |
| 3 | Precooler Inlet | |
| 1 | Tail Eng Adapter | |
| 1 | Tail Eng Bumper | |
| 3 | Elec Wiring Harness | |
| 3 | Pod Temp Sensor | |
| 1 | Tail Eng F/R Items | |
| 2 | Wing Eng F/R Items | |

Total amount of engine and associated engine equipment per aircraft included in the engine base price totals

d. Airframe Price Adjustment Methodology. The net airframe base price of each aircraft purchased hereunder as adjusted pursuant to paragraph b of this provision includes no allowance for inflation subsequent to the Government Fiscal Year 1976. Accordingly, such adjusted net base price shall be increased or decreased as hereinafter set forth:

(1) The indexes to be used are:

42

Ex.: 17; p.: 851

SECTION J — CONTINUED

(a) The "Average Hourly Gross Earnings per Production Worker on Payrolls of Nonagricultural Establishments — Durable Goods Industries, Transportation Equipment — Aircraft", (SIC 3721) National Average as published by the Bureau of Labor Statistics, U.S. Department of Labor, hereinafter referred to as the HE Index.

(b) The Wholesale Price Index of Industrial Commodities as published with 1967 = 100 by the Bureau of Labor Statistics, U.S. Department of Labor, hereinafter referred to as the IC Index.

(2) To determine the airframe price at time of scheduled aircraft delivery:

(a) Obtain the net airframe base price from Table II or Table IV, as applicable, of Provision J.8, "Options".

(b) Multiply the net airframe base price from (a) above by 0.75 times the fraction whose:

1. Numerator is the average HE Index for the seven (7) months entered on the ninth (9th) month prior to scheduled aircraft delivery, less the average HE Index for the base period months of July 1975 through June 1976, which is equal to $6.441.

2. Denominator is the average HE Index for the base period months of July 1975 through June 1976, which is equal to $6.441.

3. The monthly values of the Index shall be the "final" (as contrasted with "preliminary") values as published at the time of scheduled aircraft delivery (or, in the event any such "final" values are not available at that time, "preliminary" values shall be used until such time as "final" values are subsequently published).

(c) Multiply the net airframe base price from (a) above by 0.25 times the fraction whole:

1. Numerator is the average IC Index for the seven (7) months centered on the ninth (9th) month prior to scheduled aircraft delivery, less the average IC Index for the base period months of July 1975 through June 1976, which is equal to 176.6.

2. Denominator is the average IC Index for the base period months of July 1975 through June 1976, which is equal to 176.6.

43

Ex.: 17; p.: 852

SECTION J - CONTINUED

      <u>3</u>. The monthly values of the Index shall be the final values (as contrasted with "preliminary" values, if any) published at the time of scheduled aircraft delivery (or, in the event any such "final" values are not available at that time, "preliminary" values shall be used until such time as "final" values are subsequently published).

      (d) Add the results of (b) and (c) above to obtain the inflation adjustment to the net airframe base price at time of scheduled aircraft delivery and add this adjustment to the net airframe base price to determine the airframe delivery price.

      (e) The average Index numbers and ratios in this paragraph shall be computed to the following number of decimal places:

      <u>1</u>. The average HE Index shall be computed to the nearest tenth (10th) of a cent (e.g., $4.567). (Note: $0.0005 rounds to $0.001.)

      <u>2</u>. The average IC Index shall be computed to one (1) decimal place (e.g., 123.4).(Note: 0.05 rounds to 0.1.)

      <u>3</u>. The ratios shall be computed to four (4) decimal places (e.g., 0.0789). (Note: 0.00005 rounds to 0.0001.)

      (3) In the event that any act or cause coming within the scope of paragraph (c) of the General Provision hereof entitled "Default" causes a delay affecting the scheduled aircraft delivery of one (1) or more of the aircraft to be furnished hereunder, then the escalation computation set forth in this paragraph shall be based on the actual delivery month for any aircraft so delayed.

      (4) In the event the Department of Labor revises, either before or within twelve months after aircraft delivery, any previously published Indexes or data by removing or replacing said Indexes or data, or by describing said revision by footnote, appendix or any other method, the revision shall apply to the formula for purposes of price determination. Any post delivery price adjustments required as a result of such revisions shall be processed and paid or credited promptly following publication of the revised data.

      In the event the Department of Labor revised the methodology (in contrast to benchmark adjustments and other corrections of previously published data) or discontinues any of the Indexes referred to in this article, the parties shall select a substitute for the revised or discontinued Index, said substitute Index to lead in application to the same

44

Ex.: 17; p.: 853

## SECTION J – CONTINUED

adjustment result, insofar as possible, as would have been achieved by
continuing to use the original Index as it may have fluctuated had it
not been revised or discontinued. Appropriate revision of the formula
shall be made to accomplish this result.

To implement this paragraph (4), either party may notify
the other that a change in the Index within the meaning of this paragraph
is anticipated or has taken place. The contractor shall then propose
substitute Indexes and formula revision. Within ninety (90) days from
such notification or from receipt of data covering the last month of
publication of the unchanged Index series, whichever is later, the
parties shall agree on substitute Indexes and formula revision. In the
event the parties cannot so agree, the disagreement will be handled by
the procedures of the clause herein entitled "Disputes". Adjustment of
prices under this Provision J.15d and payment of invoices computed from
these adjusted prices, shall continue on the previous schedule following
any change in the Indexes within the meaning of this section and through-
out any period of negotiation or arbitration. The Indexes and formula,
used when the unchanged Indexes are not available, shall be those pro-
posed by contractor, but said payments shall be on a temporary basis and
shall be corrected and any required refunds or additional payments made
within thirty (30) days following agreement between the parties or a
final decision pursuant to the "Disputes" clause.

e. Engine and Associated Engine Equipment Price Adjustment Methodology

(1) The net engine base prices set forth in Table II and Table
IV, as applicable, of Provision J.8, "Options" shall be adjusted pursuant
to the provisions noted below to compensate for any increase or decrease
in the level of the Composite Price Index (CPI) defined below. Said
adjustment shall be on an aircraft-by-aircraft basis.

For the purpose of this calculation:

(a) "Engine and Associated Engine Equipment Net Base Price"
shall mean the net engine base prices set forth in Table II and Table IV
of Provision J.8, "Options".

(b) The CPI for a given year shall mean the arithmetic
average of the following three indices prepared by the U.S. Department
of Labor, Bureau of Labor Statistics:

45

SECTION J – CONTINUED

(i) The Labor Index for a given calendar year shall mean 100 times the quotient of the average annual "Hourly Earnings of Aircraft Engine and Engine Parts Production Workers" for that year, divided by three dollars and forty-two cents ($3.42) which represents the base year 1967. Such quotient shall be determined to the nearest three decimal places; the value of the third decimal place shall be raised to the next higher number if the fourth decimal place has a value of five or more.

(ii) The Industrial Commodities Index for a given calendar year shall mean the annual average wholesale price index for "all commodities other than Farm and Foods" for that year with a base period of 1967.

(iii) The Metals and Metal Products Index for a given calendar year shall mean the annual average wholesale price index for "Metals and Metal Products" for that year with a base period of 1967.

(c) The CPI for a given calendar year, as defined above, shall be computed from the first published final figures of the Bureau of Labor Statistics for the applicable year as soon after the close of each calendar year as the Indices are published by the U.S. Department of Labor Statistics. Each such CPI shall be determined to the nearest first decimal place; if the second decimal place is five or more, the first decimal place shall be raised to the next higher number.

(d) Engine delivery shall be deemed to have taken place four (4) months prior to aircraft delivery, i.e., January through April aircraft will receive engines delivered in the prior calendar year. May through December aircraft will receive engines delivered in the current calendar year.

(2) Adjustments to the net engine base price shall be determined as follows:

(a) The adjustment to be made to the net engine base prices set forth in Table II or Table IV, as applicable, of Provision J.8, "Options", to determine its final purchase price is dependent upon the year during which the engine is scheduled for delivery to contractor, and such adjustment shall be determined in accordance with the following formula:

$$PA_n = P_b \times \frac{(CPI_{(n-1)} - CPI_b)}{(CPI_b)}$$

46

Ex.: 17; p.: 855

SECTION J – CONTINUED

where:

$PA_n$ = Price adjustment for a engine scheduled for delivery during calendar year "n".

$P_b$ = Base price applicable to such engine scheduled for delivery during year "1976".

$CPI_b$ = CPI for the calendar year 1975 (i.e., 177.8).

$CPI_{(n-1)}$ = Composite Price Index for the year immediately preceding the year "n".

n = Delivery year (calendar year).

  (b) If any change in the specification results in a modification of the base prices set forth in paragraph (c), the base year for such change shall be 1976.

  (c) The factor $(CPI_{(n-1)} - CPI_b)/CPI_b$ by which any net base price is to be multiplied shall be calculated to the nearest three decimal places; if the fourth decimal place is five or more, the third decimal place shall be raised to the next highest number.

  (d) The net engine base price adjustment shall be added to the net engine base price to determine the engine delivery price. To determine the total delivery price of an aircraft, the results of this paragraph shall be added to the results of paragraph d2(d).

 f. Forecast Price for Special Progress Payment Purposes

  (1) At the time of ordering any aircraft whose net base price shall be subject to Economic Price Adjustment, an aircraft forecast price shall be established in accordance with this paragraph f for the purposes of determining Progress Payments pursuant to Contract Provision J.14, "Special Progress Payments".

  (2) Forecast Price Methodology. Airframe and engine (and associated engine equipment) price adjustments shall be established by the Price Adjustment Methodology set forth in paragraphs d and e above, except that the values used for each required monthly index, when actuals are unavailable, shall be projections made by determining

47

SECTION J — CONTINUED

the trend during the most recent twelve month period for which final
monthly indices (in contrast to preliminary values) are available, and
projecting this trend forward. The projection trend is defined as the
least squares exponential trend line fitted to the most recent twelve
months of actuals for each index. The formula for the projection
trend is as follows:

$$y = ae^{bx}$$

where

   y = the forecast monthly index value for month x (for labor
    indexes, calculate y to the nearest cent (Note: .005
    rounds to .01); for material indexes, calculate y to the
    nearest first decimal place (Note: .05 rounds to .1).

   a = the value of y when x = 0 (use 10 significant digits).

   x = the number of each month beginning with one at the first
    month of the twelve month period.

   e = the base of natural logarithms.

   b = a constant (use 10 significant digits).

  (3) Forecast Airframe Price Adjustment. The above formula
will be used to forecast the seven months required by the airframe price
adjustment formula in paragraph d.

  (4) Forecast Engine and Associated Engine Equipment Price
Adjustment. The formula in paragraph f(2) above will be used to forecast
index values for any months required by the Engine and Associated Engine
Equipment Price Adjustment Methodology in paragraph e for which actual
index values are unavailable.

  (5) Aircraft Forecast Price. The Aircraft Forecast Price shall
be the sum of the net base prices of paragraph a of this provision plus
any Forecast Airframe Price Adjustment of paragraph f(3), plus any Forecast
Engine and Associated Engine Equipment Price Adjustment of paragraph f(4).

48

SECTION J - CONTINUED

16. ASSOCIATE CONTRACTOR RELATIONSHIP WITH ATCA PROGRAM CONTRACTORS AND PROPOSERS

a. It is understood that procurement of aircraft under this contract is the initial procurement in the Advanced Tanker/Cargo Aircraft Program and that additional procurements will follow which will include contractor maintenance, logistics support, and modifications to the aircraft procured under this contract, and production and delivery of technical data relative to the aircraft as supported or modified. It is further understood that technical data relative to the aircraft procured under this contract, both proprietary and non-proprietary, may be required by other parties, both for the purpose of proposing and performing the additional procurements described above. The Contractor agrees that it shall make available to proposers for such additional procurements, current and accurate technical data for proposal purposes upon reasonable terms and conditions, whether or not such technical data is proprietary. The Contractor further agrees that it shall make available to contractors for such additional procurements, current and accurate technical data for use in performing the effort required under their applicable contracts upon reasonable terms and conditions, whether or not such technical data is proprietary. The Contractor further agrees that in making technical data available to performing contractors under the provisions of this paragraph, it will not restrict or limit the use, duplication, or disclosure of such technical data in any way which impairs, limits, or restricts the Government's ability to acquire technical data, contractually required to be produced and delivered to the Government under such contracts, with less than "Special Rights" as defined in Section J, paragraph 6(b). The Contractor agrees that it will not assert rights under any of its patents against the U. S. Government for any use of data delivered pursuant to this contract or other agreements by Douglas with associated contractors under the Advanced Tanker/Cargo Aircraft Program.

b. Contractor agrees to provide potential proposers and contractors access to the aircraft, on a non-interference basis, at its facility. Access contemplated under this paragraph shall be in accordance with schedules developed and under the control of the Procuring Contracting Officer. Prior to visits to the contractor's premises, each potential proposer or contractor shall be required to execute an agreement holding Douglas Aircraft Company harmless from any liability from the visit.

c. Contractor also agrees to provide to contractors performing such additional procurements technical assistance, as required, under reasonable and mutually agreed to terms and conditions.

49

Ex.: 17; p.: 858

SECTION J – CONTINUED

d. The Contractor agrees to enter into company to company agreements with (1) any of the proposers on the ATCA Program upon their request, and (2) the contractor selected to perform any effort on the ATCA Program upon his request. Such agreements, if any, will be furnished to the PCO.

e. The Contractor agrees that any costs or expenses for logistics support contractor participation in any effort identified in the Statement of Work and Detail Specification are included in the price of this contract and its options.

17. MOST FAVORED CUSTOMER WARRANTY

a. The Contractor hereby agrees and certifies that the final price for the DC-10-30F (DS-5500-30H) portion of ATCA delivered to the Air Force shall not exceed the final price of any DC-10-30 freighter type aircraft delivered during the same time period to any other aircraft customer, taking into account quantities, all contract terms, and relative customer requirements, with the exception that completed or near complete but unsold aircraft may be sold at a lesser net price provided the Government is given the right to buy such aircraft on similar terms. The final price shall be a net price to include, as a minimum, base price, all discounts, and economic price adjustments.

b. The Contractor further agrees and certifies that the prices charged for changes required in undelivered aircraft to meet FAA certification requirements and/or standard change notices procured by the Government shall not exceed the prices charged the Contractor's most favored customer for such items. The Contractor agrees that if in a given calendar year the Contractor grants to any customer discounts from its published spare parts catalog prices, the Government or its designated logistics support contractor shall be given the highest discount granted for such spare parts procured to support the ATCA.

c. In the event the Contractor is a party to a commercial contract, with the exception stipulated in a, wherein the final net price charged to commercial customers is less than that charged the Government for any of those items identified above, the Contractor shall reduce the Air Force price to a level consistent with the commercial price. The Contractor shall provide a certification as to whether any price reductions are required for each calendar quarter in which there are ATCA deliveries. The first such certification shall be made with the delivery of the first ATCA.

50

Ex.: 17; p.: 859

SECTION J — CONTINUED

18.  FOLLOW-ON PRICE WARRANTY

    The parties hereby agree that contracts for ATCA beyond the instant
contract shall be structured as follows:

        (1)  The Government will continue to receive Most Favored
Customer status as defined in Clause J.17, "Most Favored Customer
Warranty."

        (2)  The cost of the ATCA peculiar recurring portion shall be
substantiated by cost and pricing data and shall take into consideration
the effects of line interruption on the learning curve benefits derived
from the instant contract.

19.  ORDER OF PRECEDENCE

    In the event of an inconsistency in this contract, unless otherwise
provided herein, the inconsistency shall be resolved by giving precedence
in the following order:  (1) the Schedule; (2) General Provisions; (3)
the Detail Specifications; (4) the Statement of Work; and (5) the other
provisions of the contract whether incorporated by reference or other-
wise.

20.  NOTIFICATION OF CHANGES

    a.  Definitions.  As used in this clause, (i) the term "Contrac-
ting Officer" does not include any  representative of the Contracting
Officer whether or not such representative is acting within the scope
of his authority, and (ii) the term "specifically authorized repre-
sentative" means any person the Contracting Officer has so designated
by written notice which shall refer to this subparagraph and shall be
issued to the designated representative prior to his invocation of such
authority (and a copy of which shall be provided to the Contractor).

    b.  Notice.  The primary purpose of this clause is to obtain
prompt reporting of Government conduct which the Contractor considers
to constitute a change to this contract.  Except for changes identified
as such in writing and signed by the Contracting Office, the Contractor
shall notify the Administrative Contracting Officer in writing promptly,
and in any event within 20 calendar days from the date that the Contrac-
tor identifies any Government conduct (including actions, inactions,
and written or oral communications) which the Contractor regards as a
change to the contract terms and conditions.  The Notice shall state,
on the basis of the most accurate information available to the Contractor:

51

SECTION J - CONTINUED

(i)   the date, nature, and circumstances of the conduct regarded as a change;

(ii)   the name, function, and activity of each Government individual and contractor official or employee involved in or know-ledgeable about such conduct;

(iii)   the identification of any documents and the substance of any oral communication involved in such conduct;

(iv)   in the instance of alleged acceleration of scheduled per-formance or delivery, the basis upon which it arose;

(v)   the particular elements of contract performance for which the Contractor may seek an equitable adjustment under this clause, including:

(1)   what contract line item(s) have been or may be affected by the alleged change;

(2)   what labor or materials or both have been or may be added, deleted, or wasted by the alleged change;

(3)   to the extent practicable, what delay and disruption in the manner and sequence of performance and effect on continued per-formance have been or may be caused by the alleged change;

(4)   what adjustments to contract price, delivery schedule, and other provisions affected by the alleged change are estimated.

(vi)   the Contractor's estimate of the time by which the Govern-ment must respond to the Contractor's notice to minimize cost, delay or disruption of performance.

c.   Continued Performance.   Following submission of the notice required by "b" above, the Contractor shall diligently continue perfor-mance of this contract to the maximum extent possible in accordance with its terms and conditions as construed by the Contractor, unless such notice reports a direction of the Contracting Officer or a communication from a specifically authorized representative of the Contracting Officer, in either of which events the Contractor shall continue performance in compliance therewith, provided, however, that if the Contractor regards the direction or communication as a change as described in "b" above, notice shall be given as therein provided.   All directions, communica-tions, interpretations, orders and similar actions of such specifically authorized representative shall be reduced to writing promptly and

52

SECTION J - CONTINUED

copies thereof furnished to the Contractor and to the Contracting
Officer. The Contracting Officer shall promptly countermand any action
which exceeds the authority of the specifically authorized representative.

d. Government Response. The Contracting Officer shall promptly,
and in any event within 20 calendar days after receipt of NOTICE, respond
thereto in writing. In such response the Contracting Officer shall either;

(i) confirm that the conduct of which the Contractor gave notice
constitutes a change and when necessary direct the mode of further per-
formance,

(ii) countermand any communication regarded as a change,

(iii) deny that the conduct of which the Contractor gave notice
constitutes a change and when necessary direct the mode of further per-
formance; or

(iv) in the event the Contractor's notice information is inade-
quate to make a decision under (i), (ii), or (iii) above, advise the
Contractor what additional information is required, and establish the
date by which it should be furnished and the date thereafter by which
the Government will respond.

e. Equitable Adjustments. If the Contracting Officer confirms
the Government conduct effected a change as alleged by the Contractor,
and such conduct causes an increase or decrease in the Contractor's
cost of, or the time required for, performance of any part of the work
under this contract, whether changed or not changed by such conduct,
an equitable adjustment shall be made:

(i) in the contract price or delivery schedule or both; and

(ii) in such other provisions of the contract as may be affected;
and the contract shall be modified in writing accordingly. In the case
of drawings, designs or specifications which are defective and for which
the Government is responsible, the equitable adjustment shall include
the cost and time extension for delay reasonably incurred by the Contrac-
tor in attempting to comply with such defective drawings, designs or
specifications before the Contractor identified, or reasonably should
have identified, such defect. When the cost of property made obsolete
or excess as a result of a change confirmed by the Contracting Officer
pursuant to this clause is included in the equitable adjustment, the
Contracting Officer shall have the right to prescribe the manner of
disposition of such property. The equitable adjustment shall not include

53

SECTION J - CONTINUED

increased costs or time extensions for delay resulting from the Contractor's failure to provide notice or to continue performance as provided, respectively, in "b" and "c" above.

21. SPECIAL PROVISION RELATING TO GROUND AND FLIGHT RISK

a. The term "Contractor's Premises," as used in the clause of this contract entitled "Ground and Flight Risk" shall also mean airfields, runways, aprons, ramps, taxiways, and aircraft parking areas and ways adjoining any such premises at the following locations:

> Douglas Aircraft Company
> Headquarters – Long Beach Facility
> 3855 Lakewood Boulevard
> Long Beach, California  90846

> Douglas Aircraft Company
> Yuma Flight Operations
> P. O. Box 3990
> Yuma Arizona  85364

b. The term "in the open" as used in the clause of this contract entitled "Ground and Flight Risk," is hereby modified to include: Hush houses, test hangars, and comparable structures that are not roofed and completely enclosed on all sides with permanent walls and doors and any building not located on premises owned or leased by the Contractor or which the Contractor is entitled to use under any facilities contract with the Government.

22. WORK REQUESTS

a. Ordering Additional Work. The following procedure will be used to order additional work of the type covered by Item 0025 of the contract. Such work will be called for by the issuance of Work Requests. It is agreed that work requests may be issued at the sole option of the Contracting Officer during the term of the contract, and that the Government has no obligation under this paragraph a to issue any such work requests. Prior to issuance of a work request, the Contractor shall quote a price and delivery schedule for the work contemplated but shall not proceed with the work until the work request is approved by the

54

SECTION J - CONTINUED

Contracting Officer, provided; however, whenever the Contracting Officer determines that it is in the interest of the Government to not delay performance of the work until a price and schedule are submitted, he may specify in the work request that the Contractor is authorized to proceed forthwith. Within thirty (30) days after receipt of such order, and in every case prior to completion of the work called for therein, the parties shall negotiate a price and delivery schedule for the work ordered, and the work request shall be amended accordingly.

b. Work requests issued under paragraph a above shall bear the number of this contract, be serially numbered, dated and signed by the Contracting Officer. They shall set forth the work to be performed and shall refer to the contract item pursuant to which the request was issued. They shall include, or be amended to include the price of the work and the delivery schedule therefore. In addition, work requests issued under paragraph a above shall cite the funds allotted for payment of the work requests issued under this clause. Failure to agree upon a reasonable price shall be considered a "dispute concerning a question of fact" within the meaning of the clause of this contract entitled "Disputes."

c. Amendments to work requests may be issued subject to the same conditions as the original work request. The Contractor's concurrence as to the terms of the work request or amendment will be evidenced by signing the respective document. The term "work" as used herein includes both supplies and services to the extent covered by the referenced contract item.

d. Work requests issued under paragraph a above shall be definitized on SF 30, Amendment of Solicitation/Modification of Contract. The SF 30 will be signed by both the Contractor and the Contracting Officer.

23. SERIAL NUMBERS

The Contractor shall serially number the aircraft called for hereunder with serial numbers provided by the Procuring Contracting Officer.

Ex.: 17; p.: 864

SECTION J – CONTINUED

24. FUEL, OIL, LUBRICANTS, AND OXYGEN

The Contractor shall furnish all ATCA aircraft fuel, oil, lubricants, and oxygen necessary (i) for the predelivery test program; (ii) for engine tests and flight acceptance tests as required; and (iii) for fly-away, in amounts designated by the ferry pilot necessary for flight between the contractor's plant and the Main Operating Base (MOB), with no air refueling missions enroute.

25. CONTROL OVER EMPLOYEES

The Contractor shall select, supervise and exercise control and direction over its employees under this contract. Contractor shall not supervise, direct or control the activities of Air Force personnel. Except as may be otherwise expressly specified herein, the Contractor shall provide all necessary administrative and other support to its employees.

26. INCORPORATION OF REFERENCED DOCUMENTS

All specifications, exhibits, drawings, amendments, or other documents which are referenced in this contract, whether or not attached, are hereby incorporated herein by reference.

27. FREQUENCY ALLOCATION AND AUTHORIZATION

a. Policy and procedures contained in AFM 100-31, as in effect on the date of the contract will be followed to obtain frequency allocation approval of electromagnetic devices and USAF Radio Frequency Authorization (RFA).

b. Frequency allocation proposals (DD Form 1494) and frequency authorization requirements (AF Form 38) shall be prepared by the Contractor in accordance with Chapters 3 and 4 respectively of AFM 100-31 and an original and four (4) copies of each of the completed forms shall be forwarded to the Procuring Contracting Officer.

56

Ex.: 17; p.: 865

SECTION J - CONTINUED

28. DELIVERY OF SUPPLIES WITH DEVIATIONS OR SHORTAGES

a. The Procuring Contracting Officer may, at any time on or after the scheduled date of delivery of specific supplies, direct the Contractor to deliver such supplies with known deficiencies, deviations, or shortages. Said deficiencies, deviations or shortages shall be corrected unless otherwise directed in writing by the Procuring Contracting Officer. The Procuring Contracting Officer shall withhold an equitable amount from the payment for each item delivered hereunder pending completion of the required corrective action.

b. It is specifically agreed that the direction by the Procuring Contracting Officer for the Contractor to make delivery of supplies under the provisions of this part shall not be deemed "acceptance" of such supplies for the purpose of any provisions of the contract to the extent of such deficiencies, deviations or shortages.

29. RELEASE OF INFORMATION

It is the Air Force policy to encourage publication of scientific and technological advances and information developed under its contracts. Distribution or publication of classified and/or unclassified data shall be cleared with the Contracting Officer in advance of publication, and handled in accordance with AFR 80-45. Only such data or information can be released which has prior written approval obtained through the Contracting Officer.

30. PREPRODUCTION, START-UP AND NONRECURRING COSTS

The Contractor agrees that all preproduction, start-up and other nonrecurring costs as defined in ASPR 3-813 are included in the prices of Line Items 0001, 0003 and 0010, and that no such costs shall be charged to the Government in any other future procurement or other pricing action.

57

Ex.: 17; p.: 866

SECTION J - CONTINUED

34. SPECIAL PROVISION RELATING TO SUBCONTRACTING

Except as provided below, the contractor shall not be obligated to include in subcontracts the requirements of any General Provisions clause hereof. The requirements shall be included in:

(1) all subcontracts if the requirement is established by U.S. Law or Executive Order or regulation implementing U.S. Law or Executive Order, except that the contractor shall not be obligated to take any such action with respect to subcontracts entered into with subcontractors incorporated and located outside of the United States, its territories and possessions as to General Provision clauses entitled "Contract Work Hours Standards Act - Overtime Compensation", "Walsh-Healey Public Contracts Act", and "Equal Opportunity";

(2) those subcontracts entered into completely or partially in regard to the ATCA peculiar requirements.

35. MAINTENANCE/MODIFICATION AND/OR FLIGHT OPERATION REQUIREMENTS

a. In the performance of this contract the contractor is responsible for the protection of property in his possession for which the Government has assumed the risk of damage, loss or destruction. To meet this objective the contractor shall exercise his existing commercial practices and procedures to comply with:

(1) The Maintenance/Modification requirements of AFSC/AFLC Regulation 66-24, dated 3 January 1972.

(2) The flight operations requirements of AFR 55-22 dated 8 October 1971 and AFSC Sup 1 dated 8 March 1973, incorporated by reference.

(3) The aircraft and flight line safety practices of Chapter 8 of AFR 127-101 dated 13 June 1975.

b. The Air Force reserves the right to review the contractor's practices and procedures, for the purpose of verifying compliance with the provisions of this requirement.

59

SECTION J - CONTINUED

36.  SPARES ACQUISITION INTEGRATED WITH PRODUCTION

a.  This Spares Acquisition Integrated with Production (SAIP)
Clause shall be implemented in accordance with the procedures set forth
below.  The objectives of SAIP are to reduce the acquisition price of
spare parts and improve logistic support by (1) concurrent ordering of
certain selected spare parts with the end item in order to take advantage
of quantity and production economies, and (2) securing firm proposal
and establishing firm or not-to-exceed prices for spare parts to be
supplied to the Government as investment material.

b.  For the purposes of this clause, only new design not common to
commercial aircraft application parts shall be SAIP candidates.  SAIP
candidates shall include design-stable components with high extended
costs and shall comprise (1) 10-15% of peculiar spare parts count and
(2) 70-80% of peculiar spare part requirements by cost.  Thirty days
after exercise of each option, the Contractor will provide a recommended
SAIP candidate list to the logistic support contractor (LSC).  The Contractor
shall notify the LSC of the leadtime away from the contractor's scheduled
date of issuance of a production order for installs (including vendor
items) for SAIP candidate items.  This notification shall include firm
proposal or not-to-exceed prices.  The contractor shall allow the log-
istics support contractor to integrate his requirements with the manu-
facturer's orders at prices commensurate with the installs.

c.  Where the Contractor has knowledge that there are cost savings
that can be affected by procurement of shipsets of LRUs as opposed to
individual LRU procurement, the Contractor shall provide this information
to the logistic support contractor and identify quantities of shipsets
which must be procured to effect these economies.  Neither the Contractor
nor his subcontractors shall be required to conduct special studies or
incur additional costs in complying with this provision.


37.  SUPPLIES TO BE ACCORDED DUTY-FREE ENTRY

In accordance with Paragraph (a) of the clause hereof entitled
"Duty-Free Entry for Certain Specified Items," the following supplies
are hereby identified as supplies to be accorded duty-free entry:

60

Ex.: 17; p.: 868

SECTION J – CONTINUED

| | |
|---|---|
| Tail Cone | Japan |
| Rudder and Stabilizer | Italy |
| Fuselage Panels | Italy |
| Main Landing Gear Doors and Fillet | Spain |
| Evacuation Slide Container | Australia |
| Pressure Ducts | Australia |
| Horizon Indicator and Inverter | France |

38.  WARRANTY AND SERVICE LIFE POLICY

Part I – Warranty

a.  Subject to the limitations and conditions hereinafter set forth, Contractor warrants that the aircraft structure, systems, accessories, equipment, and all parts of the aircraft, whether installed on the aircraft or as spare or replacement parts, delivered hereunder which have been manufactured by Contractor and by other manufacturers if made to detailed design and detailed specifications originated by Contractor shall, at the time of delivery by Contractor, be free from:

(1)  Defects in material and workmanship;

(2)  Defects caused by installation by Contractor of any article not manufactured by Contractor in a manner not in accordance with the reasonable instructions of the manufacturer;

(3)  Defects inherent in the design thereof, including defects arising from selection by Contractor of materials or process of manufacture, in view of the state of the art of the date of such design; and

(4)  Defects arising from failure to conform to the Detail Specification in effect at the time of delivery, except as to portions thereof stated to be estimated or approximations or stated to be design objectives.

b.  Defects as defined in paragraph a of this Part I must become apparent to the Government:

(1)  As to defects defined only in subparagraphs (1), (2) and (4) of paragraph a of this Part I, within sixty (60) months or five thousand (5,000) flying hours, whichever first expires after delivery of each aircraft or product.

61

Ex.: 17; p.: 869

SECTION J – CONTINUED

(2)  As to defects in subparagraph a(3) of this Part I, whether or not also constituting a defect under subparagraphs (1), (2) or (4) of paragraph a of this Part I, within twenty-four (24) months after delivery of each aircraft or product.

c.  The extent of Contractor's liability under this warranty as to defects in material or workmanship, defects arising from the selection of material or the process of manufacture, defects caused by faulty installation as aforesaid and such defects arising from such failure to conform to the Detail Specification as aforesaid, is limited to the repair of such defects  in the aircraft, aircraft structure or system or, at the Contractor's election where applicable, to the repair or replacement (with a similar item free from the defect in question) of any system accessory, equipment or part which is defective in any of such respects.

d.  The extent of Contractor's liability under this warranty as to defects inherent in the design as aforesaid is limited to the correction at its expense of all such defects in the aircraft, aircraft structure, system, accessory, equipment or part which is defective in design.  In the event such design defects become apparent and the Government gives Contractor due and timely notice thereof within the applicable period set forth in subparagraph f(5) of this Part I and Contractor is obligated hereunder to correct such defect, Contractor shall also make such correction in any aircraft purchased hereunder which shall not have been delivered to the Government, provided that Contractor shall not be responsible  nor deemed to be in default on account of any delays in performance of this contract due to any such corrections and, provided further, rather than accept a delay in delivery of such aircraft, the Government may elect to accept delivery and thereafter file a claim for a warranty correction hereunder as though the defect had become apparent immediately after delivery of such aircraft, and further, provided that nothing in this paragraph shall affect the Government's right to claim the same design defect with respect to any other delivered aircraft.

e.  Contractor, or the Government with the approval of Contractor, shall make the foregoing repairs, replacements and corrections with reasonable care and dispatch in order that the aircraft, system, accessory, equipment or part involved may not be kept out of service longer than necessary.  Contractor shall, within fifteen (15) calendar days following receipt of the Government's notification of a defect (as required in subparagraph f(5) of this Part I) accompanied by the Government's request that it be permitted in such instance to make repair, replacement or correction, notify the Government of approval or disapproval of such request.  Failing such timely notice by Contractor, approval of such request shall be deemed to have been given by

62

SECTION J - CONTINUED

Contractor. Should the Government be permitted to make any of the fore-
going repairs, replacements and corrections, Contractor will establish
a "standard" for the labor hours to repair such defect and will reimburse
the Government for such "standard" hours or for the Government's or
logistics support Contractor's actual labor hours to repair such defect,
whichever is less, at the Government's or logistics support Contractor's
direct labor rate plus a burden of fifty percent (50%) of said direct
labor rate; provided, however, that in no event shall such amount exceed
the applicable manufacturing direct labor rate of the Douglas Aircraft
Company, plus a burden rate of one hundred percent (100%) of said manu-
facturing rate. Dissembly of the aircraft to correct the defects, removal
of the defective or faulty structure, system, accessory, equipment or
part and installation of the corrected or new structure, system, acces-
sory, equipment or new part and reassembly of the aircraft shall be at
Contractor's expense (except as to inspection, checkout and test effort)
to the extent of and in accordance with the formula set forth above unless
such work is performed by Contractor at its expense at its factory at
Long Beach, California, or by Contractor at its expense at such other
place as may be mutually agreed upon by Contractor and the Government.
(When temporary or interim repairs, replacements and corrections are
accomplished by the Government and not proposed or requested by Contractor,
Contractor's liability to the Government hereunder shall not exceed the
furnishing of a permanent repair, replacement or correction or the mone-
tary equivalent thereof.) All transportation, costs of sending and
returning aircraft and sending defective accessories, equipment or parts
to the Contractor's factory shall be borne by the Government. The trans-
portation costs for return to the Government of the repaired, replaced,
or corrected accessories, equipment or part shall be borne by the Contrac-
tor. No approval by Contractor under this paragraph e shall constitute
a determination that a defect, in fact, exists.

    f.  Contractor shall, as to each defect, be relieved of all obli-
gation and liability under this warranty if:

       (1)  The aircraft is operated with any accessory, equipment
or part not specifically approved by Contractor unless the Government
furnishes reasonable evidence that such accessory, equipment or part
was not a cause of the defect;

       (2)  The aircraft shall not have been operated or maintained
in accordance with Contractor's operating and maintenance instructions
furnished under this Contract's Data Requirements List (CDRL) unless
the Government furnishes reasonable evidence that such operation or
maintenance, as the case may be, was not a cause of the defect;

63

Ex.: 17; p.: 871

SECTION J - CONTINUED

(3) The aircraft shall not have been operated under normal ATCA mission use unless the Government furnishes reasonable evidence that such operation was not a cause of the defect;

(4) The aircraft shall have been repaired, altered or modified without Contractor's approval or if the aircraft shall have been operated subsequent to involvement in an accident unless the Government furnishes reasonable evidence that the accident or such repair, alteration, modification or operation after the accident was not a cause of the defect; provided, however, that this limitation, insofar as it relates to repairs and accidents, shall not be applicable to routine repairs or replacements, if such repairs or replacements are made with suitable material and according to standard practice and engineering or to operation after minor accidents;

(5) The Government does not (i) report the defect in writing or by telegram to Contractor's Warranty Administrator at its factory in Long Beach, California, within sixty (60) calendar days following such defect becoming apparent to the Government as provided in paragraph b of this Part I, and (ii) return the defective or faulty aircraft, accessory, equipment or part to said factory (or, if return to Contractor's factory is not feasible and Contractor so agrees in advance in writing, to the Government's base repair shop or other appropriate facility in the United States) within sixty (60) calendar days following the end of the applicable period of time specified in paragraph b of this Part I, or within sixty (60) calendar days following such defect becoming apparent, whichever is earlier, and further provided that, if for reasons beyond the Government's control, return of the item to Contractor's factory is not possible within said sixty (60) calendar day period and if the Government so notifies Contractor in writing, the said sixty (60) calendar day period will be waived but the Government must return the item to Contractor's said factory if, as and when such return does become feasible;

(6) The Government does not submit reasonable proof to Contractor within sixty (60) calendar days after the defect becomes apparent (except when such period is waived) that the defect is due to a matter embraced within the Contractor's warranty hereunder. Contractor shall approve or disapprove the Government's substantiation of its warranty claim in writing within sixty (60) calendar days of receipt thereof, and in the event of disapproval, the Contractor shall state its reasons therefor.

64

Ex.: 17; p.: 872

SECTION J - CONTINUED

With respect to matters made the subject of Contractor's approval under subparagraphs (1) and (4) of this paragraph f, Contractor's approval or disapproval thereof shall be made in writing to the Government within sixty (60) calendar days after the Government's timely written notice to Contractor's Warranty Administrator is received by Contractor at its Long Beach plant requesting approval and referring to this paragraph f. In the event of disapproval, Contractor shall set forth the reasons therefor in its statement of disapproval. Contractor's failure to deliver to the Government a written statement of approval or disapproval within such sixty (60) calendar day period shall (without extending or increasing Contractor's obligations hereunder in any way) constitute approval by Contractor of the subject matter of the particular request involved.

g. Normal wear and tear and the need for regular overhaul shall not constitute a defect or failure under this warranty.

h. When an aircraft, accessory, or item of equipment, or other deliverable item under this contract, has been corrected, repaired or replaced pursuant to the conditions of this provision, the period of the Contractor's warranty under this Part I with respect to such correction, repair, or replacement, whichever may be the case, shall be the same as those set forth for the original delivered item.

i. None of the warranties made by Contractor with respect to any aircraft, product or article delivered under this contract shall survive acceptance by the Government, except to the extent and upon the conditions specifically set forth in paragraph a through h of this Part I, inclusive, and the Part IV of this clause entitled "General."

Part II - Service Life Policy

In addition to the warranties set forth in the Part I of this clause entitled "Warranty," Contractor agrees that should DC-10 fleet-wide or repetitive failure occur in any of the covered components, then the provisions of this Part II shall apply.

a. Definitions

For the purposes of this Part II, the following definitions apply:

(a) Failure means any breakage of, or defect in, a covered component (except for corrosion as a result of improper maintenance procedures and practices)which has occurred and which can reasonably be expected to occur on a repetitive or DC-10 fleetwide basis.

65

Ex.: 17; p.: 873

SECTION J - CONTINUED

(b)  Airframe component means any of the primary structural
elements of the wing, fuselage and vertical and horizontal empennage of
the aircraft as specified in Exhibit "A" attached hereto.

(c)  Landing gear component means any of those primary
static structural elements which are part of the landing gear installed
in an aircraft at the time of delivery thereof to the Government,
specified in Exhibit "B" attached hereto.

(d)  Covered component means any airframe component or
landing gear component.

(e)  Landing means any normal touchdown wherein tires
contact the ground including all touch and go's.

b.  Service Life Policy

Should a failure occur in any covered component of an aircraft
within the following periods (whichever is applicable):

(a)  As to any airframe component of an aircraft, within
thirty thousand (30,000) flying hours or within ten (10) years after
delivery of such aircraft to the Government, whichever shall first expire.

(b)  As to any landing gear component of an aircraft, prior
to the accumulation by such component of an aggregate of twenty thousand
(20,000) aircraft landings or thirty thousand (30,000) flying hours
involving the use of such component or within ten (10) years after
delivery of such component to the Government, whichever shall first
occur.

Contractor will, at the price hereinafter provided
and as promptly as practicable, either (i) design and furnish to the
Government a correction for such failed covered component and provide
any parts required for such correction (exclusive of standard parts) or
(ii) furnish to the Government a replacement covered component for such
failed component for installation of such correction or component by
the Government in such aircraft or the affected landing gear.

c.  Price

Any part or covered component which Contractor is required to
furnish to the Government under this Policy in connection with correction
or replacement of a covered component shall be furnished to the Government
at a price determined in accordance with the following formula:

66

Ex.: 17; p.: 874

SECTION J → CONTINUED

$$P = \frac{CT}{N}$$

P = Price to the Government

C = The Contractor's then current spare parts sales price

As to airframe components:

T = The total flying time in hours during which the
airframe component, which is the subject of a
failure, has been used, and

N = Thirty thousand (30,000),

As to landing gear components, either:

T = The total number of airplane landings which have
been accumulated by the landing gear component,
which is the subject of a failure, and

N = Twenty thousand (20,000),

or

T = The total flying time in hours during which the
landing gear component, which is the subject of a
failure, has been used, and

N = Thirty thousand (30,000),

whichever yields the higher fraction.

d.  General Conditions and Limitations

(1)  The return to Contractor, if such return is practicable,
of any covered component which is the subject of a failure necessary
for redesigning studies, shall be at the Government's expense.  Any
required disassembly and reassembly of the aircraft or landing gear,
or parts of either thereof, removal of the covered component which is
the subject of a failure and reassembly and installation of the cor-
rected or replacement covered component, shall be at the Government's
expense, and if such disassembly, reassembly and installation is
accomplished by Contractor at the Government's request, the prices
to be charged for any such services shall not exceed the prices charged
to other commercial customers of Contractor during sunstantially the
same time period.

67

SECTION J — CONTINUED

(2)  Contractor's obligations under this Policy are conditioned upon (i) the submission of reasonable proof to Contractor that the failure is embraced within the scope of this Policy; (ii) with respect to landing gear components, the maintenance by the Government of log books and other historical records available for inspection by Contractor and adequate to enable determination of whether the defect or failure claimed is covered by this Service Life Policy and, if so, the amount of the payment to be made to Contractor hereunder and adequate to enable determination that the servicing, overhaul, maintenance and modification of any such landing gear component or related equipment has been accomplished in accordance with subparagraphs (4) and (5) of this paragraph d and (iii) the Government must have reported the failure, breakage or defect of a covered component in writing or by telegram to Contractor's Warranty Administrator at its factory in Long Beach, California, within sixty (60) calendar days after any failure, breakage or defect in a covered component becomes evident.

(3)  The provisions of paragraph f (except for subparagraphs (5) and (6) thereof) of the Part I of the clause entitled "Warranty," are incorporated herein by this reference and shall condition Contractor's obligations under this Policy with respect to any covered component.

(4)  Contractor's obligations under this Policy shall not apply to any covered component which has not been correctly modified in accordance with Contractor's mandatory or recommended Service Bulletin specifications or instructions furnished by the Contractor to the Government provided, however, that:

(a)  failure to correctly modify is the proximate cause of the failure; and

(b)  the Government received the Service Bulletin in sufficient time to incorporate the modification.

(5)  Contractor's obligations under this Policy shall not apply to any landing gear component with respect to which there has been the failure to either (i) correctly service, maintain and overhaul such landing gear component or the landing gear or the aircraft it is at any time apart of, in accordance with the applicable Contractor's instructions regarding such servicing, maintenance and overhaul, including, without limitation, the Contractor maintenance manuals, overhaul manuals and special instructions applicable to landing gears and their component parts or (ii) periodically service and maintain such landing gear component, landing gear and aircraft on a scheduled basis in accordance with recognized standards for scheduled air passenger carriers, subject to regulations by the Federal Aviation Administration.

68

e. Nature of Agreement

This Service Life Policy is neither a warranty, performance guarantee nor an agreement to modify the aircraft, airframe components or landing gear components to conform to new developments hereafter occurring in the state of airframe or landing gear design and manufacturing art. Contractor's obligation herein is to make only those corrections to the airframe components and landing gear components or furnish replacement therefor as provided in this Policy.

f. Assignment of Rights

The Government's rights under this Part II, except as set forth elsewhere in this provision, shall not be assigned, sold, leased, transferred or otherwise alienated by operation of law or otherwise, without prior Contractor consent thereto given in writing. Any unauthorized assignment, sale, lease, transfer or other alienation of the Government's rights under this Policy shall immediately void this Policy in its entirety.

Part III - Vendor Warranties and Indemnity Against Patent Infringement

a. The contractor shall make reasonable efforts to obtain through formal agreements with the manufacturers of accessories and items of equipment installed on the aircraft to the extent not covered by the Contractor's warranty and the Contractor's indemnity against infringement of patents and other proprietary rights, respectively, favorable warranties, indemnities against infringement of patents and other proprietary rights. The Contractor shall promptly advise the Government and Logistics Support Contractor as to the character and extent of protection afforded the Government by such agreements of indemnity and warranties so obtained and provide them, with all acquired rights, to the Government and Logistics Support Contractor. The Contractor shall contractually require that all vendor warranties conveyed to the Government can be administered by the Logistics Support Contractor.

b. The Contractor shall assist the Government in the resolution of any problems associated with all vendor warranties provided. In the event of a default by any such manufacturer in the performance of any material obligation under any applicable warranty obtained by the contractor from such manufacturer pursuant to this Provision, or in the event of a disclaimer of responsibility by such manufacturer for any defect constituting a breach of any such warranty and upon notice thereof to the Contractor, the warranties and all other terms and conditions of the Provision hereof entitled "WARRANTY AND SERVICE LIFE POLICY" shall become applicable to any accessories or items of equipment involved as if the same had been manufactured by the contractor or to its detailed design, except that the warranty periods as to such accessories or items of equipment shall be the lesser of (i) the warranty

69

SECTION J - CONTINUED

period as set forth in the applicable warranty of such manufacturer or
(ii) the applicable warranty period set forth in the Provision hereof
entitled "Warranty and Service Life Policy" and the Government agrees
to assign to the contractor, and the contractor shall be subrogated to,
all of the Government's rights against such manufacturer with respect
to and arising by reason of such default or disclaimer, provided that
this paragraph c shall not be applicable to engines or their manufacturer.

Part IV - General

a. THE WARRANTY AND SERVICE LIFE POLICY PROVIDED IN THIS CONTRACT,
AND THE OBLIGATIONS AND LIABILITIES OF THE CONTRACTOR UNDER SAID WARRANTY
AND SERVICE LIFE POLICY, ARE EXCLUSIVE AND IN LIEU OF, AND THE GOVERNMENT
WAIVES, ALL OTHER REMEDIES, WARRANTIES, GUARANTEES OR LIABILITIES EXPRESS
OR IMPLIED, WITH RESPECT TO EACH AIRCRAFT, PRODUCT AND ARTICLE DELIVERED
HEREUNDER, ARISING BY LAW OR OTHERWISE (INCLUDING, WITHOUT LIMITATION,
ANY OBLIGATION OR LIABILITY OF THE CONTRACTOR ARISING FROM NEGLIGENCE
OR WITH RESPECT TO FITNESS, MERCHANTABILITY, LOSS OF USE, REVENUE OR
PROFIT OR CONSEQUENTIAL DAMAGES). THIS WARRANTY OR SERVICE LIFE POLICY
SHALL NOT BE EXTENDED, ALTERED OR VARIED, EXCEPT BY A WRITTEN INSTRUMENT
SIGNED BY THE CONTRACTOR AND THE GOVERNMENT. THIS PROVISION SHALL NOT
LIMIT THE GOVERNMENT'S RIGHTS OR THE CONTRACTOR'S OBLIGATIONS AS SPECI-
FIED IN THE CLAUSE ENTITLED "INSPECTION" EXCEPT THAT, WITH REGARD TO
AIRCRAFT, THE GOVERNMENT'S RIGHTS BECAUSE OF LATENT DEFECTS ARE LIMITED
IN THAT THE CONTRACTOR MUST BE NOTIFIED OF ANY LATENT DEFECT IN SUCH
AIRCRAFT WITHIN THE TIME PERIOD SPECIFIED IN PART I PARAGRAPHS b(1) OR
(2) AS THE CASE MAY BE.

b. All warranties specified in Part I above shall also apply to
Support Equipment and Configuration alternate kits delivered pursuant
to this contract.

c. The Government may, without contractor approval, designate the
ATCA Logistics Support Contractor to act in its behalf in all instances
where "the Government" is referenced above. The Government shall advise
the contractor in writing of any such designation.

d. In all instances above where notification must be given to the
contractor after a defect or other condition becoming apparent, evident,
etc., this shall mean becoming apparent, evident, etc., to the Contrac-
ting Officer (CO), or the Logistics Support Contractor, where such
delegation has been made.

70

Ex.: 17; p.: 878

SECTION J - CONTINUED

EXHIBIT "A"

TO PROVISION J-38 WARRANTY AND SERVICE LIFE POLICY

The following specific airframe items are subject to the provisions
of Part II of the clause entitled "WARRANTY AND SERVICE LIFE POLICY:"

PYLONS - WING AND CENTER ENGINE

    Pylon engine mount fittings
    Pylon engine mount bulkheads
    Spars
    Side skin and skin stiffeners
    Pylon wing attach angle and center engine support angles
    Pylon wing attach bulkhead and center engine attach bulkhead

WINGS

    Front and rear spars
    Upper and lower stringers and plating between spars
    Landing gear bulkhead and fitting
    Dihedral and sweepback bulkhead
    Flat support ribs in the wing
    Wing to fuselage attach tee

FUSELAGE

    Frames, plating, stringers and pressure bulkheads but excluding
    all doors

    Fuel tank pressure bulkheads and panels
    ARO station sighting, tunnel pressure panel
    ARB support fitting
    UARRSI pressure panel

EMPENNAGE

    Vertical spars and plating between spars
    Aft fuselage vertical stabilizer carry-through structure
    Horizontal stabilizer spars, integral plating between spars

71

SECTION J – CONTINUED

EXHIBIT "B"

TO PROVISION J-38 WARRANTY AND SERVICE LIFE POLICY

The following specific landing gear components are subject to the provisions of Part II of the clause  entitled "WARRANTY AND SERVICE LIFE POLICY."

MAIN GEAR AND CENTER LINE GEAR

        Bogie beam and axles
        Shock strut outer cylinder
        Shock strut piston
        Orifice support tube

NOSE GEAR

        Strut piston and axle
        Strut outer cylinder
        Orifice support tube

72

Ex.: 17; p.: 880

SECTION J - CONTINUED

39. SCHEDULE IMPLEMENTATION TO THE BASE SUPPORT PROVISION

With reference to the "Base Support" clause of the General Provisions, the following base support will be utilized:

(1) Support required for performance of the Operational Test and Evaluation (OT&E) effort to be determined upon identification of the Main Operating Base (MOB) at which OT&E shall be accomplished.

73

Ex.: 17; p.: 881

SECTION K – CONTRACT ADMINISTRATION DATA

1. Accounting and Appropriation Data

   ACRN    Fund Citation
    AA     577 3010 117 6340 10ATCA 103000 000 27222F S503000 F03000


2. Purchase Request Number

   AFALD-78-00001


3. Information for Administrative and Paying Office

   a. Purchasing Office Representative:  Captain Curtis N. Newill III

   b. Symbol of Purchasing Office:  AFALD/YTPP

   c. Telephone Number:  (513) 255-4654/4655

74

Ex.: 17; p.: 882

PART III - SECTION L

GENERAL PROVISIONS

FIXED PRICE SUPPLY CONTRACT

1. The provisions of the contract clauses set forth in the following
paragraphs of the Armed Services Procurement Regulation (ASPR) 1976
Edition are incorporated into this contract by reference with the same
force and effect as though herein set forth in full:

| Clause Number | ASPR Reference | Clause Title | Date of Clause |
|---|---|---|---|
| 1 | 7-103.1 | Definitions | 1962 Feb |
| 2 | *7-103.2 | Changes | 1958 Jan |
| 3 | 7-103.3 | Extras | 1949 Jul |
| 4 | 7-103.4(a) | Variation in Quantity | 1949 Jul |
| 5 | 7-103.5(a) | Inspection | 1958 May |
| 6 | 7-103.6 | Title and Risk of Loss | 1968 Jun |
| 7 | 7-103.7 | Payments | 1958 Jan |
| 8 | 7-103.8 | Assignment of Claims | 1962 Feb |
| 9 | 7-103.9 | Additional Bond Security | 1949 Jul |
| 10 | 7-103.10(a) | Federal, State and Local Taxes | 1971 Nov |
| 11 | 7-103.11 | Default | 1969 Aug |
| 12 | 7-103.12(a) | Disputes | 1958 Jan |
| 13 | 7-103.13(a) | Renegotiation | 1959 Oct |
| 14 | 7-103.14 | Discounts | 1968 Jun |
| 15 | 7-103.16(a) | Contract Work Hours and Safety Standards Act - Overtime Compensation | 1971 Nov |
| 16 | 7-103.17 | Walsh-Healey Public Contracts Act | 1958 Jan |
| 17 | 7-103.18(a) | Equal Opportunity | 1976 Jul |
| 18 | 7-103.19 | Officials Not to Benefit | 1949 Jul |
| 19 | 7-103.20 | Covenant Against Contingent Fees | 1958 Jan |
| 20 | *7-103.21(b) | Termination for Convenience of the Government | 1974 Oct |
| 21 | 7-103.22 | Authorization and Consent | 1964 Mar |
| 22 | 7-103.23 | Notice and Assistance Regarding Patent and Copyright Infringement | 1965 Jan |
| 23 | 7-103.24 | Responsibility for Inspection | 1968 Sep |
| 24 | 7-103.25 | Commercial Bills of Lading Covering F.O.B. Origin Shipments | 1969 Dec |
| 25 | 7-103.26 | Pricing of Adjustments | 1970 Jul |

*See paragraph 2 for implementations, changes and/or deletions

75

Ex.: 17; p.: 883

SECTION L - CONTINUED

| Clause Number | ASPR Reference | Clause Title | Date of Clause |
|---|---|---|---|
| 26 | 7-103.27 | Listing of Employment Openings | 1975 Jun |
| 27 | 7-104.3 | Buy American Act | 1964 May |
| 28 | 7-104.4 | Notice to the Government of Labor Disputes | 1958 Sep |
| 29 | ***7-104.5 | Patent Indemnity | 1975 Jun |
| 30 | 7-104.6 | Filing of Patent Applications | 1969 Dec |
| 31 (DPC 76-7) | 7-104.9(a) | Rights in Technical Data and Computer Software | 1977 Apr |
| 32 | *7-104.9(h) | Technical Data - Withholding of Payment | 1976 Jul |
| 33 | 7-104.9(1) | Identification of Technical Data | 1975 Mar |
| 34 | 7-104.9(n)(1) | Data Requirements | 1972 Apr |
| 35 | 7-104.9(p) | Restrictive Markings on Technical Data | 1975 Mar |
| 36 | 7-104.12 | Military Security Requirements | 1971 Apr |
| 37 | 7-104.14(a) | Utilization of Small Business Concerns | 1958 Jan |
| 38 | 7-104.14(b) | Small Business Subcontracting Program | 1975 Oct |
| 39 | 7-104.15 | Examination of Records by Comptroller General | 1975 Jun |
| 40 | 7-104.16 | Gratuities | 1952 Mar |
| 41 | 7-104.17 | Convict Labor | 1975 Oct |
| 42 | 7-104.18 | Priorities, Allocations and Allotments | 1975 Oct |
| 43 | 7-104.20(a) | Utilization of Labor Surplus Area Concerns | 1970 Jun |
| 44 | 7-104.20(b) | Labor Surplus Area Subcontracting Program | 1970 Jun |
| 45 | 7-104.21(a) | Limitation on Withholding of Payments | 1958 Sep |
| 46 | 7-104.22 | Equal Opportunity Pre-Award Clearance of Subcontracts | 1971 Oct |
| 47 (DPC 76-7) | 7-104.23(a) | Subcontracts | 1977 Apr |
| 48 | *7-104.24(a) | Government Property (Fixed Price) | 1968 Sep |
| 49 | *7-104.28 | Quality Program | 1967 Aug |
| 50 | **7-104.29(a) | Price Reduction for Defective Cost or Pricing Data | 1970 Jan |
| 51 | *7-104.29(b) | Price Reduction for Defective Cost or Pricing Data - Price Adjustments | 1970 Jan |

*See paragraph 2 for implementations, changes and/or deletions
**Applicable to ATCA peculiar requirements only
***Applicable to Basic DC-10 aircraft only

76

Ex.: 17; p.: 884

SECTION L - CONTINUED

| Clause Number | ASPR Reference | Clause Title | Date of Clause |
|---|---|---|---|
| 52 (DPC 76-7) | 7-104.32 | Duty-Free Entry - Canadian Supplies | 1977 Apr |
| 53 | *7-104.33 | Inspection System | 1967 Aug |
| 54 | 7-104.35(a) | Progress Payments for other than Small Business Concerns | 1974 Apr |
| 55 | *7-104.35(b) | Progress Payments for Small Business Concerns | 1973 Sep |
| 56 | 7-104.36(a) | Utilization of Minority Business Enterprises | 1971 Nov |
| 57 | 7-104.36(b) | Minority Business Enterprises Subcontracting Program | 1971 Nov |
| 58 | **7-104.37 | Required Source for Jewel Bearings | 1973 Nov |
| 59 | **7-104.38 | Required Sources for Miniature and Instrument Ball Bearings | 1971 Jul |
| 60 | 7-104.39 | Interest | 1972 May |
| 61 | 7-104.40 | Competition in Subcontracting | 1962 Apr |
| 62 | 7-104.41(a) | Audit by Department of Defense | 1975 Jun |
| 63 | **7-104.42(a) | Subcontractor Cost or Pricing Data | |
| 64 | *7-104.42(b) | Subcontractor Cost or Pricing Data Price Adjustments | 1970 Jan |
| 65 | *7-104.45(a) | Limitation of Liability | 1974 Apr |
| 66 | 7-104.45(b) | Limitation of Liability - Major Items | 1974 Apr |
| 67 | 7-104.48 | New Material | 1965 Jan |
| 68 | 7-104.49 | Government Surplus | 1965 Jan |
| 69 | 7-104.62 | Material Inspection and Receiving Report | 1969 Dec |
| 70 | 7-104.69 | F.O.B. Point for Delivery of Government-Furnished Property | 1968 Jun |
| 71 | 7-104.70 | F.).B. Origin | 1973 Apr |
| 72 | 7-104.72 | F.O.B. Origin - Minimum Size of Shipments | 1968 Jun |
| 73 | 7-104.85 | F.O.B. Origin - Government Bills of Lading and Mailing Indicia | 1973 Apr |
| 74 | 7-104.73 | Loading, Blocking, and Bracing of Freight Car Shipments | 1975 Oct |
| 75 | 7-104.74 | Shipments to Ports - Clearance and Documentation Requirements | 1974 Apr |
| 76 | *7-104.71 | F.O.B. Destination | 1969 Apr |

*See paragraph 2 for implementations, changes and/or deletions
**Applicable to ATCA peculiar requirements only

77

Ex.: 17; p.: 885

SECTION L ~ CONTINUED

| Clause Number | ASPR Reference | Clause Title | Date of Clause |
|---|---|---|---|
| 77 | *7-104.75 | Diversion of Shipment Under F.O.B. - Destination Contracts | 1971 Nov |
| 78 | *7-104.76 | F.O.B. Destination — Evidence of Shipment | 1968 Jun |
| 79 | 7-104.77(f) | Government Delay of Work | 1968 Sep |
| 80 | 7-104.79(a) | Safety Precautions for Ammunition and Explosives | 1970 Sep |
| 81 | 7-104.81 | Accident Reporting and Investigation Involving Aircraft, Missiles and Space Launch Vehicles | 1969 Jan |
| 82 | 7-104.82 | Payment of Interest on Contractors' Claims | 1976 Jul |
| 83 | **7-104.83(a) | Cost Accounting Standards | 1975 Feb |
| 84 | 7-104.93(a) | Preference for Domestic Specialty Metals (Major Programs) | 1974 Apr |
| 85 | *7-104.93(b) | Preference for Domestic Specialty Metals | 1972 Nov |
| 86 | *7-105.3(c) | Stop Work Order | 1971 Apr |
| 87 | 7-105.4 | Report of Shipment (Repship) | 1968 Jun |
| 88 | 7-302.23(b) | Patent Rights-Retention by the Contractor (Long Form) | 1975 Aug |
| 89 | **7-104.83(b) | Administration of Cost Accounting Standards | 1975 Mar |
| 90 | 7-103.28 | Employment of the Handicapped | 1975 Oct |
| 91 | 7-103.29 | Clean Air and Water | 1975 Oct |
| 92 | 7-104.10 | Ground and Flight Risk | 1975 Oct |
| 93 | **7-104.44(a)(1) | Value Engineering Incentive DPC 76-5 | 1977 Aug |
| 94 | 7-104.64(a) | Recovery of Nonrecurring Costs on Foreign Commercial Sales | 1969 Nov |
| 95 | 7-104.26 | Special Test Equipment | 1973 Apr |
| 96 | 7-104.61 | Frequency Authorization | 1966 Oct |
| 97 | 7-104.51 | Production Progress Report | 1971 Apr |
| 98 | **7-104.46 | Required Sources for Precision Components for Mechanical Time Devices | 1971 Aug |
| 99 | 7-104.9(m) | Deferred Ordering of Technical Data and Computing Software | 1974 Nov |
| 100 | **7-104.9(k) | Rights in Technical Data - Major Systems and Subsystems Contracts | 1971 Nov |
| 101 | 7-104.63 | Protection of Government Buildings, Equipment and Vegetation | 1968 Feb |
| 102 | 7-104.31(a) | Duty-Free Entry for Certain Specified Items | 1971 Feb |
| 103 | 7-104.11(a) | Excess Profit | 1957 Jun |

*See paragraph 2 for implementations, changes and/or deletions
**Applicable to ATCA peculiar requirements only

Ex.: 17; p.: 886

SECTION L - CONTINUED

2. The following implementations, changes and/or deletions are hereby made to the clauses referenced in 1 above:

a. Clause 48 - <u>Government Property (Fixed Price)</u> - Alternate paragraph (g) as set forth in ASPR 7-104.24(c), is applicable to this contract.

b. Clause 56 - <u>Utilization of Minority Business Enterprises</u> - Not applicable unless this contract is for more than $10,000.00.

c. Clauses 49, 51, 53, 55, 64, 65, 76, 77, 78 and 85 are deleted.

d. Clause 2 - Changes - "30 days" appearing therein is revised to read "45 days".

e. Clauses 20 and 86 - Termination for Convenience of the Government and Stop Work Order, respectively - Add variation "Notwithstanding anything elsewhere in this contract to the contrary, the Government agrees to recognize in any negotiated equitable adjustments disruption costs incurred by the contractor as a result of termination or stop work orders hereunder which impact on the contractor's established production line."

f. Clause 32 - Technical Data - Withholding of Payment - For contract Options 2, 3, 4, 5, and 6 set forth in Schedule Provision J.8, "Options", "Ten percent (10%)" is deleted from Paragraphs (a) and (b) and "one percent (1%)" is added in lieu thereof. "Ninety percent (90%)" is deleted from Paragraph (b) and "ninety-nine percent (99%)" is added in lieu thereof.

3. MILITARY STANDARD TRANSPORTATION AND MOVEMENT PROCEDURES (MILSTAMP)

a. DOD MILSTAMP Implementation (DOD Regulation 4500.32-R) prescribes uniform procedures and documents for the control of shipments moving wholly or in part within the Department of Defense Transportation System (LOGAIR, MAC, MSTS, QUICKTRANS). Minimum requirements consist of the use and preparation of the following:

(1) The assignment of a Transportation Control Number (TCN).

(2) DD Form 1384, "Transportation Control and Movement Document." A multi-purpose document which is used as a basic movement and control document, terminal handling document (e.g., Dock Receipt), cargo manifest, or tracing document.

79

Ex.: 17; p.: 887

(3) DD Form 1385, "Cargo Manifest" (Air and Surface). A multi-purpose manual or mechanized form for use in listing air or surface manifest data.

(4) DD Form 1387, "Military Shipment Label." The shipping address label to be used for transportation marking in accordance with the edition of MIL-STD-129 in effect on the date of this contract.

(5) DD Form 1387-1, "Military Shipping Tag." The shipping tag used for transportation marking in accordance with the edition of MIL-STD-129 in effect on the date of this contract.

(6) DD Form 1387-2, "Special Handling Data/Certification." A document prepared by the shipper for all shipments to be routed via military air transportation or commercial air augmentation which require special handling and/or certification in accordance with MIL-STD-129, in effect on the date of this contract.

(7) General Purpose Punch Cards. Used for all mechanized MILSTAMP formats where specific formats have not been prescribed herein.

b. The forms and formats prescribed by this clause constitute a family of documents required for movement of cargo into and through the Defense Transportation System (DTS).

c. The contractor shall prepare and distribute such documents in accordance with MILSTAMP criteria. In the event the contractor requires instruction and/or assistance in connection therewith, he may contact Transportation Management personnel of the Contract Administration Office to which contract has been assigned. The contractor shall not ship any cargo directly to a military air or water port terminal without authorization from the designated contract administration office.

4. RESTRICTIONS ON PRINTING (1974 JUN)

Duplication of reports, data or other written material, if required, is authorized provided that the material produced does not exceed 5,000 production units of any page and that items consisting of multiple pages do not exceed 25,000 production units in the aggregate. The aggregate number of production units is to be determined by multiplying pages times copies. For the purposes of this paragraph a production unit is one sheet, size 11 by 17 inches or less (10-3/4 by 14-1/4 inches maximum image), one side only, one color. Duplication of material in excess of the quantities cited above shall not be accomplished without express prior

80

SECTION L - CONTINUED.

written authorization from the contracting officer. These restrictions
do not preclude the writing, editing, preparation of manuscript or
reproducible copy of related illustrative materials if required as a
part of this contract. They do not apply to the printing or duplicating
required by contractors for their own use in responding to the terms
of this contract.

5. AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (May 1976)

   a. The contractor will not discriminate against any employee or
applicant for employment because of physical or mental handicap in
regard to any position for which the employee or applicant for employ-
ment is qualified. The contractor agrees to take affirmative action
to employ, advance in employment and otherwise treat qualified handi-
capped individuals without discrimination based upon either physical
or mental handicap in all employment practices such as the following:
employment, upgrading, demotion or transfer, recruitment, advertising,
layoff or termination, rates of pay or other forms of compensation and
selection for training, including apprenticeship.

   b. The contractor agrees to comply with the rules, regulations and
relevant orders of the Secretary of Labor issued pursuant to the Act.

   c. In the event of the contractor's noncompliance with the require-
ments of this clause, action for noncompliance may be taken in accord-
ance with the rules, regulations and relevant orders of the Secretary
of Labor issued pursuant to the Act.

   d. The contractor agrees to post in conspicuous places, available
to employees and applicable for employment, notices in a form to be
prescribed by the Director, provided by or through the contracting
officer. Such notice shall state the contractor's obligation under the
law to take affirmative action to employ and advance in employment
qualified handicapped employees and applicants for employment, and
the rights of applicants and employees.

   e. The contractor will notify each labor union or representative
of workers with which it has a collective bargaining agreement or other
contract understanding, that the contractor is bound by the terms of
Section 503 of the Rehabilitation Act of 1973, and is committed to take
affirmative action to employ and advance in employment physically and
mentally handicapped individuals.

81

SECTION L - CONTINUED

f.  The contractor will include the provisions of this clause in
every subcontract or purchase order of $2,500 or more unless exempted
by rules, regulations, or orders of the Secretary issued pursuant to
Section 503 of the Act, so that such provisions will be binding upon
each subcontractor or vendor.  The contractor will take such action
with respect to any subcontract or purchase order as the Director of
the Office of Federal Contract Compliance Programs may direct to enforce
such provisions, including action for noncompliance.

6.  SAFETY AND ACCIDENT PREVENTION (1977 MAR)

In performing work under this contract on a Government installation,
the contractor shall (i) conform to the specific safety requirements
contained in the contract, and (ii) for those related activities not
directly addressed by this contract, conform to the applicable safety
rules prescribed in AFR 127-101 for Air Force bases or prescribed by
the Government installation if other than an Air Force base, and (iii)
take such additional immediate precautions as the contracting officer
may reasonably require for safety and accident prevention purposes. The
contractor agrees to take all reasonable steps and precautions to pre-
vent accidents and preserve the life and health of contractors and
Government personnel performing or in any way coming in contact with the
performance of this contract on such premises.  Any violation of such
rules and requirements, unless promptly corrected as directed by the
contracting officer, shall be grounds for termination of this contract
in accordance with the default provisions hereof.

7.  NOTIFICATION OF GOVERNMENT SECURITY ACTIVITY (1974 JUN)

Thirty (30) days prior to the date of (5) below, the contractor shall
notify the Security Police activity shown in the distribution block of
the DD Form 254, Contract Security Classification, as to:

(1)  The name, address, and telephone number of this contract
company's representative in the U.S. or overseas area, as appropriate;

(2)  The contract number, and military contracting command;

(3)  The highest classification category of defense information
to which the contractor employees will have access;

(4)  The AF installations in the U.S. (in overseas areas identify
only the APO number(s)) where the contract work will be performed;

Ex.: 17; p.: 890

SECTION L – CONTINUED

(5)  The date contractor operations will begin on-base in the U.S. or in the overseas area;

(6)  The estimated completion date of operations on-base in the U.S. or in the overseas area; and

(7)  Any changes to information previously provided under this clause.


8.  BASE SUPPORT (1970 APR)

The contractor shall, insofar as possible, avoid incurring direct or indirect costs in duplicating work or support capacity available at or through any Air Force installation involved in the performance of this contract or any major subcontract hereunder.  Therefore, the contractor agrees to utilize or cause to be utilized all available Government or Government-controlled working space, equipment, supplies, materials, services, or other support (including communication services) at or available through any Air Force installation where work under this contract is performed.  Unless otherwise stipulated in the schedule of this contract, such items will be made available on a no-charge-for-use basis and the value thereof shall be a part of the consideration for this contract.  The contractor shall report any inadequacies or nonavailability of items contemplated hereby, together with a recommended plan for obtaining the requested item(s), to the contracting officer, who shall promptly determine the validity and extent of the requirement and the manner in which any approved requirement will be filled (as by purchase, rental, lease, or otherwise).  The contractor shall not purchase or otherwise furnish any requirement covered by this clause, or authorize others to do so, without written approval of the contracting officer of the terms of the proposed purchase or other arrangement.  Items of a capital nature shall not be purchased under authority of this clause.  The amount and character of support, together with other terms and conditions appropriate to the furnishing thereof, shall be determined and set forth in the schedule and the item(s) agreed to be furnished shall be accounted for hereunder by categories and installation(s).  The effect of additions or changes in such support shall be fully documented and, if appropriate under the circumstances, equitable adjustment shall be made in the terms and conditions (including price) of the contract, in accordance with the clause entitled "Changes".

83

Ex.: 17; p.: 891

SECTION L - CONTINUED

9. AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (1976 JUL)

(This clause is applicable pursuant to 41 C.F.R. Part 60-250, if this contract is for $10,000 or more.)

a. The contractor will not discriminate against any employee or applicant for employment because he or she is a disabled veteran or veteran of the Vietnam era in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified disabled veterans and veterans of the Vietnam era without discrimination based upon their disability or veterans status in all employment practices such as the following: employment upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

b. The contractor agrees that all suitable employment openings of the contractor which exist at the time of the execution of this contract and those which occur during the performance of this contract, including those not generated by this contract and including those occurring at an establishment of the contractor other than the one wherein the contract is being performed but excluding those of independently operated corporate affiliates, shall be listed at an appropriate local office of the State employment service system wherein the opening occurs. The contractor further agrees to provide such reports to such local office regarding employment openings and hires as may be required.

State and local government agencies holding Federal contracts of $10,000 or more shall also list all their suitable openings with the appropriate office of the State employment service, but are not required to provide those reports set forth in paragraphs d and e.

c. Listing of employment openings with the employment service system pursuant to this clause shall be made at least concurrently with the use of any other recruitment source or effort and shall involve the normal obligations which attach to the placing of a bona fide job order, including the acceptance of referrals of veterans and nonveterans. The listing of employment openings does not require the hiring of any particular job applicant or from any particular group of job applicants, and nothing herein is intended to relieve the contractor from any requirements in Executive Orders or regulations regarding non-discrimination in employment.

Ex.: 17; p.: 892

SECTION L - CONTINUED

d. The reports required by paragraph b of this clause shall include, but not be limited to, periodic reports which shall be filed at least quarterly with the appropriate local office or, where the contractor has more than one hiring location in a State, with the central office of that State employment service. Such reports shall indicate for each hiring location (1) the number of individuals hired during the reporting period, (2) the number of nondisabled veterans of the Vietnam era hired, (3) the number of disabled veterans of the Vietnam era hired, and (4) the total number of disabled veterans hired. The reports should include covered veterans hired for on-the-job training under 38 USC 1787. The contractor shall submit a report within 30 days after the end of each reporting period wherein any performance is made on this contract identifying data for each hiring location. The contractor shall maintain at each hiring location copies of the reports submitted until the expiration of one year after final payment under the contract, during which time these reports and related documentation shall be made available, upon request, for examination by any authorized representative of the contracting officer or of the Secretary of Labor. Documentation would include personnel records respecting job openings, recruitment and placement.

e. Whenever the contractor becomes contractually bound to the listing provisions of this clause, it shall advise the employment service system in each State where it has establishments of the name and location of each hiring location in the State. As long as the contractor is contractually bound to these provisions and has so advised the State system, there is no need to advise the State system of subsequent contracts. The contractor may advise the State system when it is no longer bound by this contract clause.

f. This clause does not apply to the listing of employment openings which occur and are filled outside of the 50 States, the District of Columbia, Puerto Rico, Guam, and the Virgin Islands.

g. The provisions of paragraphs b, c, d and e of this clause do not apply to openings which the contractor proposes to fill from within his own organization or to fill pursuant to a customary and traditional employer-union hiring arrangement. This exclusion does not apply to a particular opening once an employer decides to consider applicants outside of his own organization or employer-union arrangement for that opening.

85

Ex.: 17; p.: 893

SECTION L - CONTINUED.

h.  As used in this clause:

(1)  "All suitable employment openings" includes, but is not
limited to, openings which occur in the following job categories: pro-
duction and nonproduction; plant and office; labors and mechanics;
supervisory and nonsupervisory; technical; and executive, administrative,
and professional openings as are compensated on a salary basis of less
than $25,000 per year.  This term includes full-time employment, temporary
employment of more than 3 days duration, and part-time employment.  It
does not include openings which the contractor proposes to fill from
within his own organization or to fill pursuant to a customary and tradi-
tional employer-union hiring arrangement nor openings in an educational
institution which are restricted to students of that institution.  Under
the most compelling circumstances an employment opening may not be suit-
able for listing, including such situations where the needs of the
Government cannot reasonably be otherwise supplied, where listing would
be contrary to national security, or where the requirement of listing
would otherwise not be for the best interest of the Government.

(2)  "Appropriate office of the State employment services system"
means the local office of the Federal-State national system of the public
employment offices with assigned responsibility for serving the area
where the employment opening is to be filled, including the District of
Columbia, Guam, Puerto Rico, and the Virgin Islands.

(3)  "Openings which the contractor proposes to fill from within
his own organization" means employment openings for which no considera-
tion will be given to persons outside the contractor's organization
(including any affiliates, subsidiaries, and the parent companies) and
includes any openings which the contractor proposes to fill from regularly
established "recall" lists.

(4)  "Openings which the contractor proposes to fill pursuant to
a customary and traditional employer-union hiring arrangement" means
employment openings which the contractor proposes to fill from union halls,
which is part of the customary and traditional hiring relationship which
exists between the contractor and representatives of his employees.

i.  The contractor agrees to comply with the rules, regulations, and
relevant orders of the Secretary of Labor issued pursuant to the Vietnam
Veterans Readjustment Act, hereinafter referred to as the "Act" (38 U.S.
2012).

j.  In the event of the contractor's noncompliance with the req
ments of this clause, actions for noncompliance may be taken in a'
with the rules, regulations, and relevant orders of the Secretar
Labor issued pursuant to the Act.

86

Ex.: 17; p.: 894

SECTION L - CONTINUED

k.  The contractor agrees to post in conspicuous places, available
to employees and applicable for employment, notices in a form to be
prescribed by the Director, Office of Federal Contract Compliance Pro-
grams, provided by or through the contracting officer.  Such notice shall
state the contractor's obligation under the law to take affirmative
action to employ and advance in employment qualified disabled veterans
and veterans of the Vietnam era for employment, and the rights of appli-
cants and employees.

l.  The contractor shall notify each labor union or representative
of workers with which it has a collective bargaining agreement or other
contract understanding, that the contractor is bound by the terms of the
Vietnam Era Veterans Readjustment Assistance Act, and is committed to
take affirmative action to employ and advance in employment qualified
disabled veterans and veterans of the Vietnam era.

m.  The contractor will include the provisions of this clause in
every subcontract or purchase order of $10,000 or more unless exempted
by rules, regulations, or orders of the Secretary issued pursuant to
the Act, so that such provisions will be binding upon each subcontractor
or vendor.  The contractor will take such action with respect to any
subcontract or purchase order as the Director of the Office of Federal
Contract Compliance Programs may direct to enforce such provisions,
including action for noncompliance.


10.  APPROVAL OF CONTRACT (1949 JUL)

This contract shall be subject to the written approval of the
Secretary or his duly authorized representative and shall not be
binding until approved.

87

Ex.: 17; p.: 895

SECTION L - CONTINUED

11. GROUND AND FLIGHT RISK (1975 OCT)

(a) Notwithstanding any other provisions of this contract, except as may be specifically provided in the Schedule as an exception to this clause, the Government, subject to the definitions and limitations of this clause, assumes the risk of damage to, or loss or destruction of, aircraft "in the open," during "operation," and in "flight," as these terms are defined below, and agrees that the Contractor shall not be liable to the Government for any such damage, loss, or destruction, the risk of which is so assumed by the Government.

(b) For the purposes of this clause:

(i) Unless otherwise specifically provided in the Schedule, the term "aircraft" means -

(A) aircraft (including (I) complete aircraft, and (II) aircraft in the course of being manufactured, disassembled, or reassembled; provided, that an engine or a portion of a wing or a wing is attached to a fuselage of such aircraft) to be furnished to the Government under this contract (whether before or after acceptance by the Government); and

(B) aircraft (regardless of whether in a state of disassembly or reassembly) furnished by the Government to the Contractor under this contract;
including all property installed therein, or in the process of installation , or temporarily removed from such aircraft; provided, however, that such aircraft and property are not covered by a separate bailment agreement.

(ii) The term "in the open" means located wholly outside of buildings on the Contractor's premises or at such other places as may be described in the Schedule as being in the open for the purposes of this clause, except that aircraft furnished by the Governmnet shall be deemed to be in the open at all times while in Contractor's possession, care, custody, or control.

(iii) The term "flight" means any flight demonstration, flight test, taxi test, or other flight, made in the performance of this contract, or for the purpose of safeguarding the aircraft, or previously approved in writing by the contracting officer. With respect to land based aircraft "flight" shall commence with the taxi roll from a flight line on the Contractor's premises, and continue until the aircraft has completed the taxi roll in returning to a flight line on the Contractor's premises; with respect to seaplanes, "flight" shall commence with the launching from a ramp on the Contractor's premises and continue until the aircraft has completed its landing run upon return and is beached at a ramp on the Contractor's premises; with respect to helicopters, "flight"

Ex.: 17; p.: 896

SECTION L - CONTINUED

shall commence upon engagement of the rotors for the purpose of take-off from the Contractor's premises and continue until the aircraft has returned to the ground on the Contractor's premises and the rotors are disengaged; and with respect to vertical take-off aircraft, "flight" shall commence upon disengagement from any launching platform or device on the Contractor's premises and continue until the aircraft has been re-engaged to any launching platform or device on the Contractor's premises, provided, however, that aircraft off the Contractor's premises shall be deemed to be in flight when on the ground or water only during periods of reasonable duration following emergency landing, other landings made in the performance of this contract, or landings approved by contracting officer in writing.

(iv)  The term "Contractor's premises" means those premises designated as such in the Schedule or in writing by the contracting officer, and any other place to which aircraft are moved for the purpose of safeguarding the Aircraft.

(v)  The term "operation" means operations and tests, other than on any production line, of aircraft, when not in flight, whether or not the aircraft is in the open or in motion during the making of any such operations or tests, and includes operations and tests of equipment, accessories, and power plants, only when installed in aircraft.

(vi)  The term "flight crew members" means the pilot, the co-pilot and unless otherwise specifically provided in the Schedule, the flight engineer, navigator, bombardier-navigator, and defense systems operator, when required, or assigned to their respective crew positions, to conduct any flight on behalf of the Contractor.

(c)(1)  The Government's assumption of risk under this clause, as to aircraft in the open, shall continue in effect unless terminated pursuant to subparagraph (3) below.  Where the contracting officer finds that any of such aircraft is in the open under unreasonable conditions, he shall notify the Contractor in writing of the conditions he finds to be unreasonable and require the Contractor to correct such conditions within a reasonable time.

(2)  Upon receipt of such notice, the contractor shall act promptly to correct such conditions, regardless of whether he agrees that such conditions are in fact unreasonable.  To the extent that the Contracting Officer may later determine that such conditions were not in fact unreasonable, an equitable adjustment shall be made in the contract price to compensate the Contractor for any additional costs he incurred in correcting such conditions and the contract shall be modified in writing accordingly. Any dispute as to the unreasonableness of such conditions or the equitable adjustment shall be deemed to be a dispute concerning a question of the fact within the meaning of the clause of this contract entitled "Disputes."

Ex.: 17; p.: 897

(3)  If the contracting officer finds that the Contractor failed
to act promptly to correct such conditions or has failed to correct such
conditions within a reasonable time, he may terminate the Government's
assumption of risk under this clause, as to any of the aircraft which is
in the open under such conditions, such termination to be effective at
12:01 A.M. on the fifteenth day following the day of receipt by the Con-
tractor of written notice thereof.  If the Contracting Officer later
determines that the Contractor acted promptly to correct such conditions
or that the time taken by the Contractor was not in fact unreasonable, an
equitable adjustment shall, notwithstanding paragraph (g) of this clause,
be made in the contract price to compensate the Contractor for any addi-
tional costs he incurred as a result of termination of the Government's
assumption of risk under this clause and the contract shall be modified
in writing accordingly.  Any dispute as to whether the Contractor failed
to act promptly to correct such conditions, or as to the reasonableness
of the time for correction of such conditions, or as to such equitable
adjustment, shall be deemed to be a dispute concerning a question of
fact within the meaning of the clause of this contract entitled "Disputes."

(4)  In the event the Government's assumption of risk under this
clause is terminated in accordance with (3) above, the risk of loss with
respect to Government-furnished property shall be determined in accordance
with the clause of this contract, if any, entitled "Government Property"
until the Government's assumption of risk is reinstated in accordance
with (5) below.

(5)  When unreasonable conditions have been corrected, the Con-
tractor shall promptly notify the Government thereof.  The Government may
elect to again assume the risks and relieve the Contractor of liabilities
as provided in this clause, or not, and the Contracting Officer shall
notify the Contractor of the Government's election.  If, after correction
of the unreasonable conditions the Government elects to again assume risks
and relieve the Contractor of such liabilities, the Contractor shall be
entitled to an equitable adjustment in the contract price for costs of
insurance, if any, extending from the end of the third working day after
the Contractor notifies the Government of such correction until the
Government notifies the Contractor of such election.  If the Government
elects not to again assume such risks, and such conditions have in fact
been corrected, the Contractor shall be entitled to an equitable adjust-
ment for costs of insurance, if any, extending after such third working
day.

(d)  The Government's assumption of risk shall not extend to damage
to, or loss or destruction of, such aircraft:

(i)  resulting from failure of the Contractor, due to willful
misconduct or lack of good faith of any of the Contractor's managerial
personnel, to maintain and administer a program for the protection and
preservation of aircraft in the open, and during operation, in accc
with sound industrial practice (the term "Contractor's managerial
nel" means the Contractor's directors, officers, and any of his
superintendents, or other equivalent representatives, who has
or direction of all or substantially all of the Contractor's b

90

all or substantially all of the Contractor's operations at any one plant or separate location at which this contract is performed, or a separate and complete major industrial operation in connection with the performance of this contract);

(ii) sustained during flight if the flight crew members conducting such flight have not been approved in writing by the contracting officer;

(iii) while in the course of transportation by rail, or by conveyance on public streets, highways, or waterways, except for Government-furnished property;

(iv) to the extent that such damage, loss or destruction is in fact covered by insurance;

(v) consisting of wear and tear, deterioration (including rust and corrosion), freezing, or mechanical, structural, or electrical breakdown or failure, unless such damage is the result of other loss, damage, or destruction covered by this clause; provided, however, in the case of Government-furnished property, if such damage consists of reasonable wear and tear or deterioration, or results from inherent vice in such property, this exclusion shall not apply; or

(vi) sustained while the aircraft is being worked upon and directly resulting therefrom, including but not limited to any repairing, adjusting, servicing or maintenance operation, unless such damage, loss, or destruction, is of a type which would be covered by insurance which would customarily have been maintained by the Contractor at the time of such damage, loss, or destruction, but for the Government's assumption of risk under this clause.

(e) With the exception of damage to, or loss or destruction of aircraft in "flight," the Government's assumption of risk under this clause shall not extend to the first $1,000 of loss or damage resulting from each event separately occurring. The Contractor assumes the risk of and shall be responsible for the first $1,000 of loss of or damage to aircraft "in the open" or during "operation" resulting from each event separately occurring, except for reasonable wear and tear and except to the extend the loss or damage is caused by negligence of Government personnel. If the Government elects to require that the aircraft be replaced or restored by the contractor to the condition in which it was immediately prior to the damage, the equitable adjustment in the price authorized by paragraph (i) below shall not include the dollar amount of the risk assumed by the Contractor under this paragraph. In the event the Government does not elect repair or replacement, the Contractor agrees to credit the contract price or pay the Government $1,000 (or the amount of the loss if smaller) as directed by the Contracting Officer.

(f) A subcontractor shall not be relieved from liability for damage to, or loss or destruction of, aircraft while in his possession or control, except to the extent that the subcontract, with the prior written

91

approval of the Contracting Officer, provides for relief of the subcontractor from such liability.  In the absence of such approval, the subcontract shall contain appropriate provision requiring the return of such aircraft in as good condition as when received, except for reasonable wear and tear or for the utilization of the property in accordance with the provisions of this contract.  Where a subcontractor has not been relieved from liability for any damage, loss, or destruction of aircraft and any damage, loss, or destruction occurs, the Contractor shall enforce the liability of the subcontractor for such damage to, or loss or destruction of, the aircraft for the benefit of the Government.

(g)  The Contractor warrants that the contract price does not and will not include, except as may be otherwise authorized in this clause, any charge or contingency reserve for insurance (including self-insurance funds or reserves) covering any damage to, or loss or destruction of, aircraft while in the open, during operation, or in flight, the risk of which has  been assumed by the Government under the provisions of this clause, whether or not such assumption may be terminated as to aircraft in the open.

(h)  In the event of damage to, or loss or destruction of, aircraft in the open, during operation, or in flight, the Contractor shall take all reasonable steps to protect such aircraft from further damage, separate damaged and undamaged aircraft, put all aircraft in the best possible order and further, except in cases covered by (e) above, the Contractor should furnish to the Contracting Officer a statement of:

(i)  the damaged, lost, or destroyed aircraft;

(ii)  the time and origin of the damage, loss or destruction;

(iii)  all known interests in commingled property of which aircraft are a part; and

(iv)  the insurance, if any, covering any part of the interest in such commingled property.  Except in cases covered by (e) above, an equitable adjustment shall be made in the amount  due under this contract for expenditures made by the Contractor in performing his obligations under this paragraph (h) and this contract shall be modified in writing accordingly.

(i)  If prior to delivery and acceptance by the Government any aircraft is damaged, lost, or destroyed and the Government has under this clause assumed the risk of such damage, loss or destruction, the Government shall either (1) require that such aircraft be replaced or restored by the Contractor to the condition in which it was immediately prior to such damage, or (2) shall terminate this contract with respect to such aircraft.  In the event that the Government requires that the aircraft be replaced or restored, an equitable adjustment shall be made in the amount due under this contract and in the time required for its performance, and this contract shall be modified in writing accordingly.

92

Case: MDL No. 875 JSW Document 6666-1-1 Filed 01/28/11 Page 366 F33300-78-C-0001
Case: MDL No. 875 JSW Document 6666-1-1 Filed 01/28/11 Page 64 of 201

SECTION L - CONTINUED

If, in the alternative, this contract is terminated under this paragraph with respect to such aircraft and under this clause the Government has assumed the risk of such damage, loss, or destruction, the Contractor shall be paid the contract price for said aircraft (or, if applicable, any work to be performed on said aircraft) less such amounts as the Contracting Officer determines (1) that it would have cost the Contractor to complete the aircraft (or any work to be performed on said aircraft) together with anticipated profit, if any, on any such uncompleted work, and (2) to be the value, if any, of the damaged aircraft or any remaining portion thereof retained by the Contractor. The Contracting Officer shall have the right to prescribe the manner of disposition of the damaged, lost, or destroyed aircraft, or any remaining parts thereof; and, if any additional costs of such disposition are incurred by the Contractor, a further equitable adjustment will be made in the amount due to the Contractor. Failure of the parties to agree upon an equitable adjustment or upon the amount to be paid in the event of termination of the contract with respect to any aircraft, shall be a dispute concerning a question of fact within the meaning of the "Disputes" clause of this contract.

(j) In the event the Contractor is at any time reimbursed or compensated by any third person for any damage, loss, or destruction of any aircraft, the risk of which has been assumed by the Government under the provisions of this clause and for which the Contractor has been compensated by the Government, he shall equitably reimburse the Government. The Contractor shall do nothing to prejudice the Government's rights to recover against third parties for any such damage, loss, or destruction and, upon the request of the Contracting Officer, shall at the Government's expense furnish to the Government all reasonable assistance and cooperation (including the prosecution of suit and the execution of instruments of assignment or subrogation in favor of the Government) in obtaining recovery.

Ex.: 17; p.: 901

F33700-78-C-0001

SECTION M

LIST OF DOCUMENTS AND ATTACHMENTS

| DOCUMENT | TITLE | DATE | PAGES |
|----------|-------|------|-------|
| Attachment 1 | Contract Security Classification Specification (Attached Hereto) | 8 Dec 77 | 2 |
| Attachment 2 | ATCA Statement of Work (Incorporated by Reference) | 30 Sep 77 | 165 |
| Attachment 3 | Detail Specification DS-5500 ATCA, with Appendix A, Alternates to DS-5500 ATCA (Incorporated by Reference) | 30 Sep 77 | 405 |
| Attachment 4 | Detail Specification DS-5500-30H (Incorporated by Reference | 30 Sep 77 | 301 |
| Attachment 5 | ATCA Peculiar Support Equipment List (Attached Hereto) | 30 Sep 77 | 1 |
| Exhibit A | Basic Contract Data Requirements List (CDRL) (Incorporated by Reference) | 30 Sep 77 | 242 (5-52) |
| Exhibit B | Option One CDRL (Incorporated by Reference) | 30 Sep 77 | 242 (53-100) |
| Exhibit C | Options 2-6 (Production) CDRL (Incorporated by Reference) | 30 Sep 77 | 242 (101-149) |
| Exhibit D | Deferred Ordering Data CDRL (Incorporated by Reference) | 30 Sep 77 | 242 (150-153) |
| Exhibit E | ATCA Peculiar Support Equipment (Attached Hereto) | 30 Sep 77 | 1 |

Ex.: 17; p.: 902

CONTRACT SECURITY CLASSIFICATION SPECIFICATION

(Complete classified items by separate correspondence)

THE REQUIREMENTS OF THE DOD INDUSTRIAL SECURITY MANUAL APPLY TO
ALL SECURITY ASPECTS OF THIS EFFORT.
FACILITY SECURITY CLEARANCE REQUIRED FOR CONTRACTUAL PERFORMANCE
OR FOR ACCESS TO CLASSIFIED INFORMATION IS  SECRET

| 2. THIS SPECIFICATION IS FOR | 3. CONTRACT NUMBER OR OTHER IDENTIFICATION NUMBER (Prime contracts must be shown for all subcontracts) | DATE TO BE COMPLETED (Estimated) | THIS SPECIFICATION IS (See note below) | DATED |
|---|---|---|---|---|
| X a. PRIME CONTRACT | a. PRIME F33700-78-C-0001 | 02 Jan 79 | X a. ORIGINAL | 08 Dec 77 |
| b. SUBCONTRACT (Use Item 8 to identify under subcontracting) | b. FIRST TIER SUBCONTRACT | | b. REVISED (Supersedes all previous specifications) | |
| c. INVITATION TO BID OR REQUEST FOR PROPOSAL | c. INVITATION FOR BID, REQUEST FOR PROPOSAL, OR REQUEST FOR QUOTE | | c. FINAL | |

3. IF THIS IS A FOLLOW-ON CONTRACT, ENTER PRECEDING CONTRACT NUMBER AND DATE COMPLETED   ☒ DOES NOT APPLY

| CONTRACT NUMBER | DATE COMPLETED |
|---|---|

| 6a. NAME AND ADDRESS OF PRIME CONTRACTOR (Include ZIP Code) | b. NAME AND ADDRESS OF COGNIZANT SECURITY OFFICE (Include ZIP Code) |
|---|---|
| Douglas Aircraft Company<br>3855 Lakewood Boulevard<br>Long Beach California 90846 | DCASR Los Angeles<br>11099 So LaCienega Blvd<br>Los Angeles California 90045 |

| 7a. NAME AND ADDRESS OF FIRST TIER SUBCONTRACTOR (If applicable)(Include ZIP Code) | b. NAME AND ADDRESS OF COGNIZANT SECURITY OFFICE (Include ZIP Code) |
|---|---|
| N/A | N/A |

(Use Item 8 to identify further subcontracting)

8. SUBCONTRACTING BEYOND FIRST TIER (as appropriate)

N/A

9a. GENERAL IDENTIFICATION OF THE PROCUREMENT FOR WHICH THIS SPECIFICATION APPLIES

ADVANCED TANKER/CARGO AIRCRAFT (ATCA)

b. CONTRACT PRESCRIBES SECURITY REQUIREMENTS WHICH ARE ADDITIONAL TO THOSE PRESCRIBED IN DD FORM 441 AND THE ISM  ☐ YES  ☒ NO

| 10. CONTRACT PERFORMANCE WILL REQUIRE | YES | NO | REMARKS |
|---|---|---|---|
| a. GRAPHIC ARTS SERVICES | | X | See also, General Provision L.7, "Notification of Government Security Activity (1974 Jun)". |
| b. ACCESS TO CONTROLLED AREAS OR CLASSIFIED INFORMATION ONLY | X | | |
| c. MANUFACTURE OF CLASSIFIED HARDWARE | | X | |
| d. GENERATION, RECEIPT, OR CUSTODY OF CLASSIFIED DOCUMENTS OR OTHER MATERIAL | X | | |
| e. ACCESS TO RESTRICTED DATA | | X | |
| f. ACCESS TO CRYPTOGRAPHIC INFORMATION | | X | |
| g. ACCESS TO COMMUNICATION ANALYSIS INFORMATION | | X | |
| h. DEFENSE DOCUMENTATION CENTER OR DEFENSE INFORMATION ANALYSIS CENTER SERVICES MAY BE REQUESTED (If yes, see paragraph 7, item 1, Industrial Security Manual) | X | | |

11. REFER ALL QUESTIONS PERTAINING TO CONTRACT SECURITY CLASSIFICATION SPECIFICATION TO THE OFFICIAL NAMED BELOW (NOR) (Item 14b). EMERGENCY, direct with written record of inquiry and response to ACO) (thru prime contractor for subcontractors)

| a. PROGRAM PROJECT MANAGER OR ACTIVITY (Name, Title, and Organization) | b. ADDRESS, TELEPHONE NUMBER AND OFFICE SYMBOL (bb) |
|---|---|
| Thru ASD/SPI to AFALD/YTP | WPAFB OH 45433<br>(513) 255-4654 |

NOTE: Original Specification (Item 4a) is authority for classification to information classified information. Revised and Final Specifications (Item 4b) require contractors to remark the regraded classified information. Such actions by contractors shall be taken in accordance with the Manual.

DD FORM 254    REPLACES EDITION OF 1 JUL 67 WHICH MAY BE USED.
1 APR 71

PAGE

12.

INFORMATION PERTAINING TO CLASSIFIED CONTRACTS OR PROJECTS, EVEN THOUGH SUCH INFORMATION IS CONSIDERED UNCLASSIFIED, SHALL NOT BE RELEASED FOR PUBLIC DISSEMINATION EXCEPT AS PROVIDED BY THE INDUSTRIAL SECURITY MANUAL, paragraph 5n and Attachment IX.

PROPOSED PUBLIC RELEASES SHALL BE SUBMITTED FOR APPROVAL PRIOR TO RELEASE ☐ DIRECT ☒ THROUGH (Specify)

AFALD/OI        TO:   AFALD/YTP
WPAFB OH 45433

TO THE DIRECTORATE FOR SECURITY REVIEW, OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE -Public Affairs- FOR REVIEW IN ACCORDANCE WITH PARAGRAPH 5n OF THE INDUSTRIAL SECURITY MANUAL.
For the case of nonofficial registers, see footnote, paragraph 5n, Industrial Security Manual.

13. SECURITY CLASSIFICATION SPECIFICATIONS FOR THIS CONTRACT ARE SET FORTH BELOW (Check which are applicable)

☐ DD FORM 254C ATTACHED (hereby made a part of this specification).
☐ DOCUMENTS LISTED BELOW (hereby made part of this specification).
☒ AS STATED BELOW

All contract effort is unclassified; however, the contractor may require access to classified information through the Secret Level to install provisions for the MARK XII (Mode 4) and UHF secure communications. Any extracts or use of source data will be assigned the same security classification and group category as the source data.

CONTRACT SECURITY CLASSIFICATION SPECIFICATIONS FOR SUBCONTRACTS ISSUING FROM THIS CONTRACT WILL BE APPROVED BY THE OFFICIAL NAMED IN ITEM 14 BELOW

REQUIRED DISTRIBUTION:

☒ PRIME CONTRACTOR (Item 6a)
☒ COGNIZANT SECURITY OFFICE (Item 6b)
☒ ADMINISTRATIVE CONTRACTING OFFICE (Item 7a)
☐ MATERIAL INSPECTOR
☐ SUBCONTRACTOR (Item 7a)
☐ COGNIZANT SECURITY OFFICE (Item 7b)

ADDITIONAL DISTRIBUTION:
☐
☐

14. THIS CONTRACT SECURITY CLASSIFICATION SPECIFICATION AND ATTACHMENT REFERENCED HEREIN, APPROVED BY THE USER AGENCY CONTRACTING OFFICER OR HIS REPRESENTATIVE NAMED BELOW

SIGNATURE

TYPED NAME AND TITLE OF APPROVING OFFICIAL CURTIS N. NEWILL, III
Captain, USAF, Contracting Officer

a. APPROVING OFFICIAL'S ACTIVITY AND ADDRESS (Include ZIP Code)
AFALD/YTP
Wright-Patterson AFB OH 45433

b. NAME AND ADDRESS OF ADMINISTRATIVE CONTRACTING OFFICE (Include ZIP Code)
NPRO, Douglas Aircraft Company
3855 Lakewood Boulevard
Long Beach California 90846

PAGE 2 OF 2

Ex.: 17; p.: 904

F33700-78-C-0001

## ATTACHMENT 5

### ATCA PECULIAR SUPPORT EQUIPMENT LIST

| | ITEM NO. | NOMENCLATURE | PART NUMBER | PRICE (GFY 76) | ESTIMATED LEAD TIME |
|---|---|---|---|---|---|
| 1. | P23-001 | Test Set RF Frequency Power | 43 | | |
| 2. | P23-003 | Test Set, Radio Peak Power Output | 800000048-1 | | |
| 3. | P23-005 | Head Set | 911349-801 | | |
| 4. | P23-007 | Test Set, Radio Peak Power Output | 622-1789-001 | | |
| 5. | P28-001 | Test Set, Line, ARB | DZZ6710-1 | | |
| 6. | P28-003 | Test Set, Bench, Boom Control Electronics | DZZ6711-1 | | |
| 7. | P28-005 | Adapter, Card Test, Boom Control Electronic Unit | DZZ7614-1 | | |
| 8. | P28-007 | Program, Computer, BCU Test Set | TZZ7060-1 | | |
| 9. | P28-009 | Test Set, Bench, Control Panel, Aerial Refueling | DZZ7612-1 | | |
| 10. | P28-011 | Test Set, Bench, Fuel Pressure Controller | DZZ7613-1 | | |
| 11. | P28-021 | Dolly, Boom | DZZ7260-1 | | |
| 12. | P28-023 | Sling, Boom Handling | DZZ7261-1 | | |
| 13. | P28-025 | Sling, Hose Reel | DZZ7262-1 | | |
| 14. | P28-027 | Sling, Handling, Fuel Bladder | DZZ7263-1 | | |
| 15. | P28-029 | Cable, Support, Boom Maintenance | DZZ7264-1 | | |
| 16. | P28-031 | Kit, Tools, Miscellaneous, ARB | DZZ7265-1 | | |
| 17. | P28-033 | Fixture, Test, Boom Rudder Actuator | DZZ7266-1 | | |
| 18. | P28-035 | Fixture, Test, Boom Elevator Actuator | DZZ7267-1 | | |
| 19. | P28-037 | Fixture, Test, Boom Extension Actuator | DZZ7268-1 | | |
| 20. | P34-001 | Test Set, Radio Altimeter | 2037028-5103 | | |

F33700-78-C-0001

## EXHIBIT E

### ATCA PECULIAR SUPPORT EQUIPMENT

| | ITEM NO. | NOMENCLATURE | PART NUMBER | PRICE NONRECURRING | RECURRING |
|---|---|---|---|---|---|
| OE01. | P23-001 | Test Set RF Frequency Power | 43 | | |
| OE02. | P23-003 | Test Set, Radio Peak Power Output | 800000048-1 | | |
| OE03. | P23-005 | Head Set | 911349-801 | | |
| OE04. | P23-007 | Test Set, Radio Peak Power Output | 622-1789-001 | | |
| OE05. | P28-001 | Test Set, Line, ARB | DZZ7610-1 | | |
| OE06. | P28-003 | Test Set, Bench, Boom Control Electronics | DZZ7611-1 | | |
| OE07. | P28-005 | Adapter, Card Test, Boom Control Electronic Unit | DZZ7614-1 | | |
| OE08. | P28-007 | Program, Computer, BCU Test Set | TZZ7060-1 | | |
| OE09. | P28-009 | Test Set, Bench, Control Panel, Aerial Refueling | DZZ7612-1 | | |
| OE0A. | P28-011 | Test Set, Bench, Fuel Pressure | DZZ7613-1 | | |
| OE0B. | P28-021 | Dolly, Boom | DZZ7260-1 | | |
| OE0C. | P28-023 | Sling, Boom Handling | DZZ7261-1 | | |
| OE0D. | P28-025 | Sling, Hose Reel | DZZ7262-1 | | |
| OE0E. | P28-027 | Sling, Handling, Fuel Bladder | DZZ7263-1 | | |
| OE0F. | P28-029 | Cable, Support, Boom Maintenance | DZZ7264-1 | | |
| OE0G. | P28-031 | Kit, Tools, Miscellaneous, ARB | DZZ7265-1 | | |
| OE0H. | P28-033 | Fixture, Test, Boom Rudder Actuator | DZZ7266-1 | | |
| OE0I. | P28-035 | Fixture, Test, Boom Elevator Actuator | DZZ7267-1 | | |
| OE0J. | P28-037 | Fixture, Test, Boom Extension Actuator | DZZ7268-1 | | |
| OE0K. | P34-001 | Test Set, Radio Altimeter | 2037028-5103 | | |

TOTAL

Case3:11-cv-00061-JSW   Document71-1   Filed01/24/11   Page169 of 201

## ROUTING & CLEARANCE RECORD

RETURN TO: G. D. Staffieri
ext. 32361/31256

SUBJECT: ATCA WARRANTY AND SERVICE LIFE POLICY

CONTRACT DOCUMENT ☐

REFERENCES:

CONTRACT PROPOSAL ☐

BRIEF DESCRIPTION: **Management approval requested on the subject document. Reflects the changes to our Standard Commercial Warranty (with additions underlined) as recently negotiated with the Air Force.**

LOG NO. _____

VALUE: $_____

NOTE: ATTACHED DOCUMENT DUE TO CUSTOMER ON OR BEFORE _____

Individuals representing the divisions or functions listed below are required to review subject document in the order listed under "Routing". Each reviewing individual must enter in the boxes below the applicable approval code indicating the scope of his approval, the amount of time he spent in review, his signature, and the date signed. "T" approvals shall include all references, specifications, conditions, delivery dates, and cost quotations pertaining to subject document unless specifically excluded by the signer. Exceptions will be noted under "Remarks" or appended hereto.

| ROUTING | APPROVING OFFICE | CODE | REVIEW TIME (HOURS) | TYPED NAME & APPROVAL SIGNATURE | DATE | REMARKS (IF ADDITIONAL SPACE IS REQUIRED, USE REVERSE SIDE.) |
|---|---|---|---|---|---|---|
| 1 | Prepared by | | | G. D. Staffieri | 10/19 | |
| | Checked by | | | | | |
| | Director, Commercial Contracts | | | | | |
| | Director - Government Contracts | | | | | |
| | Director - Pricing | | | | | |
| | Director, Program Planning & Control | | | | | |
| | Chief Counsel | | | J. Cavin | 14/20 | |
| | Product Support | | | P. S. DeMeyer | 18/19 | |
| | Program Manager | | | F. F. Harrington | 19/19 | See note. Part III NSO |
| | Vice President, Product Support | | | H. Bayer | 10/19 | |
| | Vice President, Program Management | | | | | |
| | President, MDFC | | | | | |
| | V. P. Government Marketing | | | | | |
| | V. P. Commercial Sales | | | | | |
| | Executive V.P. Marketing | | | | | |
| | V. P. Fiscal Management | | | | | |
| | V. P. Contracts & Pricing | | | E. Curtis | 10/20 | |
| | Executive Vice President | | | | | |
| | President, DAC | | | | | |
| | MDC - Vice President, Contracts & Pricing | | | | | |
| | MDC - President | | | | | |
| | MDC - Chairman | | | | | |

*APPROVAL CODES: D — Approved for Div. or Function responsibilities only    T — Approved in total    NR = Review & Approval not required (Individual's initials)

M E M O R A N D U M

21 October 1977

To:        J. H. Cavin, C1-017

From:      G. D. Staffieri, C1-241

Subject:   CHANGES TO ATCA WARRANTY

Copy to:   File; L. F. Harrington, C1-900


Based on discussions with Capt. Newill today, the following is the final position (hopefully) on Paragraph IV, General, of the Warranty and Service Life Policy.

The Air Force has accepted our standard commercial Exculpatory Paragraph with the following addition:

> "This provision shall not limit the Government's rights or the Contractor's obligations as specified in the clause entitled "Inspection", except that with regard to aircraft, the Government's rights because of latent defects are limited in that the Contractor must be notified of any latent defect in such aircraft within the periods specified in Paragraphs B(1) or (2) as the case may be."

Also added to this Part IV as Paragraph B. is the following:

> "All warranties specified in Part I above shall also apply to support equipment and configuration alternate kits delivered pursuant to this contract."


In accordance with our discussions, it is assumed that the foregoing is acceptable.

G. D. Staffieri
Director
ATCA Contracts

pcm

M E M O R A N D U M

DATE:   October 17, 1977
        C-Legal-941

TO:        G. D. Staffieri, C1-241

FROM:      J. H. Cavin, C1-017

SUBJECT:   WARRANTY AND SERVICE LIFE POLICY - ATCA PROGRAM

COPIES TO: J. L. Dewey, H-324


There is provided herewith for your further handling and
greensheet coordination the revised Warranty and Service Life
Policy clause as discussed with the Air Force on Friday,
October 14, 1977.

The clause as attached is the basic clause included in our
proposal of 22 November 1976.  Changes to that clause have
been noted by crossing out material deleted and underscoring
revised or added material.

In connection with the deletion of the old Part IV, it should
be noted for management that this change should be considered
on the basis that Clause No. 48 - Limitation of Liability -
Major Items provides us protection so as to limit our exposure
so that we are not responsible for loss of or damage to Govern-
ment property including the aircraft resulting from defects or
deficiencies in the product.  This change was discussed with
Mr. Dewey and is consistent with our insurance program for
Government products.

                        J. H. Cavin
                        Deputy Chief Counsel
                        Douglas Aircraft Company

JHC:ld

Enclosure

J.38    WARRANTY AND SERVICE LIFE POLICY

Part I - Warranty

A.    Subject to the limitations and conditions hereinafter set
forth, Contractor warrants that the aircraft structure, systems,
accessories, equipment, support equipment, kits and all parts of the
aircraft delivered hereunder which have been manufactured by Contractor
and by other manufacturers if made to detailed design and detailed
specifications originated by Contractor shall, at the time of delivery
by Contractor, be free from:

*WHETHER INSTALLED ON THE AIRCRAFT OR AS SPARE OR REPLACEMENT PARTS AND*

        (1)   Defects in material and workmanship;

        (2)   Defects caused by installation by Contractor of any
article not manufactured by Contractor in a manner not in accordance
with the reasonable instructions of the manufacturer;

        (3)   Defects inherent in the design thereof, including
defects arising from selection by Contractor of materials or process
of manufacture, in view of the state of the art of the date of such
design; and

        (4)   Defects arising from failure to conform to the Detail
Specification *in effect at the time of delivery* ~~of this Purchase Agreement, subject, however, to~~
~~Paragraph B. d. of the article clause hereof entitled "CHANGES,"~~
~~"CONFIGURATION MANAGEMENT,"~~ and except as to portions thereof stated
to be estimates or approximations or stated to be design objectives.

    B.    Defects as defined in Paragraph A. of this Part I must become
apparent to the Government:

        (1)   As to defects defined only in subparagraphs (1), (2)
and (4) of Paragraph A. of this Part I, within ~~twenty-four (24)~~
sixty (60) months or five thousand (5,000) flying hours, whichever
first expires after delivery of each aircraft, *of product* ~~provided, however,~~
~~in case of any defects in material and workmanship in any part,~~
~~accessory or equipment installed in an aircraft at the time of~~

*( SCORE A LONG WARRANTY ON SPARE PARTS )*

delivery-thereof-which-has-not-been-inspected-by-Buyer-under-its-
established-maintenance-program-prior-to-the-expiration-of-such
twenty-four-(24)-month-or-five-thousand-(5,000)-hour-period;-such
defect-must-have-become-apparent-and-Buyer-must-have-notified-Seller
thereof-within-one-(1)-month-after-completion-of-the-first-applicable
inspection-thereafter-or-eight-thousand-(8,000)-flying-hours-or
thirty-six-(36)-months;-whichever-shall-first-expire-after-delivery
of-such-aircraft;

(2)   As to defects in subparagraph A.(3) of this Part I,
whether or not also constituting a defect under subparagraphs (1),
(2) or (4) of Paragraph A. of this Part I, within eighteen-(18)
months twenty-four (24) months after delivery of each aircraft Accaproduct

C.   The extent of Contractor's liability under this warranty as
to defects in material or workmanship, defects arising from the
selection of material or the process of manufacture, defects caused
by faulty installation as aforesaid and such defects arising from
such failure to conform to the Detail Specification as aforesaid, is
limited to the repair of such defects in the aircraft, aircraft
structure or system or, at the Contractor's election where applicable,
to the repair or replacement (with a similar item free from the defect
in question) of any system accessory, equipment or part which is
defective in any of such respects.

D.   The extent of Contractor's liability under this warranty as
to defects inherent in the design as aforesaid is limited to the
correction at its expense of all such defects in the aircraft, air-
craft structure, system, accessory, equipment or part which is defective
in design.   In the event such design defects become apparent and the
Government gives Contractor due and timely notice thereof within the
applicable period set forth in subparagraph F.(5) of this Part I and
Contractor is obligated hereunder to correct such defect, Contractor
shall also make such correction in any aircraft purchased hereunder
which shall not have been delivered to the Government, provided that
Contractor shall not be responsible nor deemed to be in default on

Ex.: 17; p.: 911

account of any delays in performance of this ~~Agreement~~ *Contract* due to any such corrections and, provided further, rather than accept a delay in delivery of such aircraft, the Government may elect to accept delivery and thereafter file a claim for a warranty correction hereunder as though the defect had become apparent immediately after delivery of such aircraft, <u>and further, provided that nothing in this paragraph</u> <u>shall affect the Government's right to claim the same design defect</u> <u>with respect to any other delivered aircraft.</u>

E. Contractor, or the Government with the approval of Contractor, shall make the foregoing repairs, replacements and corrections with reasonable care and dispatch in order that the aircraft, system, accessory, equipment or part involved may not be kept out of service longer than necessary. Contractor shall, within ~~one-half (1/2) month~~ <u>fifteen (15) calendar days</u> following receipt of the Government's notification of a defect (as required in subparagraph F.(5) of this Part I) accompanied by the Government's request that it be permitted in such instance to make repair, replacement or correction, notify the Government of approval or disapproval of such request. Failing such timely notice by Contractor, approval of such request shall be deemed to have been given by Contractor. Should the Government be permitted to make any of the foregoing repairs, replacements and corrections, Contractor will establish a "standard" for the labor hours to repair such defect and will reimburse the Government for such "standard" hours or for the ~~Government's~~ actual labor hours to repair such defect, whichever is less, at the ~~Government's~~ direct labor rate plus a burden of fifty percent (50%) of said direct labor rate; pro-vided, however, that in no event shall such amount exceed the appli-cable manufacturing direct labor rate of the Douglas Aircraft Company, plus a burden rate of one hundred percent (100%) of said manufacturing rate. Disassembly of the aircraft to correct the defects, removal of the defective or faulty structure, system, accessory, equipment or part and installation of the corrected or new structure, system, accessory, equipment or new part and reassembly of the aircraft shall be at Contractor's expense (except as to inspection, checkout and test effort) to the extent of and in accordance with the formula set

Ex.: 17; p.: 912

forth above unless such work is performed by Contractor at its expense at its factory at Long Beach, Califonia, or by Contractor at its expense at such other place as may be mutually agreed upon by Contractor and the Government. (When temporary or interim repairs, replacements and corrections are accomplished by the Government and not proposed or requested by Contractor, Contractor's liability to the Government hereunder shall not exceed the furnishing of a permanent repair, replacement or correction or the monetary equivalent thereof.) All transporation, costs of sending and returning aircraft and sending defective accessories, equipment or parts to the Contractor's factory shall be borne by the Government. The transportation costs for return to the Government of the repaired, replaced or corrected accessories, equipment or part shall be borne by the Contractor. No approval by Contractor under this Paragraph E. shall constitute a determination that a defect, in fact, exists.

F. Contractor shall, as to each defect, be relieved of all obligation and liability under this warranty if:

(1) The aircraft is operated with any accessory, equipment or part not specifically approved by Contractor unless the Government furnishes reasonable evidence that such accessory, equipment or part was not a cause of the defect;

(2) The aircraft shall not have been operated or maintained in accordance with Contractor's instructions furnished hereunder unless the Government furnishes reasonable evidence that such operation or maintenance, as the case may be, was not a cause of the defect;

(3) The aircraft shall not have been operated under normal airline ATCA mission use unless the Government furnishes reasonable evidence that such operation was not a cause of the defect;

(4) The aircraft shall have been repaired, altered or modified without Contractor's approval or if the aircraft shall have been operated subsequent to involvement in an accident unless the Government furnishes reasonable evidence that the accident or such repair,

-4-

Ex.: 17; p.: 913

alteration, modification or operation after the accident was not a
cause of the defect; provided, however, that this limitation, insofar
as it relates to repairs and accidents, shall not be applicable to
routine repairs or replacements, if such repairs or replacements are
made with suitable material and according to standard practice and
engineering or to operation after minor accidents;

(5) The Government does not (i) report the defect in
writing or by telegram to Contractor's Warranty Administrator at its
factory in Long Beach, California, within two-(2)-months sixty (60)
calendar days following such defect becoming apparent to the Govern-
ment as provided in Paragraph B. of this Part I, and (ii) return the
defective or faulty aircraft, accessory, equipment or part to said
factory (or, if return to Contractor's factory is not feasible and
Contractor so agrees in advance in writing, to the Government's
base repair shop or other appropriate facility in the United States)
within two-(2)-months sixty (60) calendar days following the end of
the applicable period of time specified in Paragraph B. of this Part I,
or within two-(2)-months sixty (60) calendar days following such
defect becoming apparent, whichever is earlier, and further provided
that, if for reasons beyond the Government's control, return of the
item to Contractor's factory is not possible within said two-month
sixty (60) calendar day period and if the Government so notifies
Contractor in writing, the said two-month sixty (60) calendar day
period will be waived but the Government must return the item to
Contractor's said factory if, as and when such return does become
feasible;

(6) The Government does not submit reasonable proof to
Contractor within two-(2)-months sixty (60) calendar days after the
defect becomes apparent (except when such period is waived) that the
defect is due to a matter embraced within the Contractor's warranty
hereunder. Contractor shall approve or disapprove the Government's
substantiation of its warranty claim in writing within two-(2)-months
sixty (60) calendar days of receipt thereof, and in the event of
disapproval, the Contractor shall state its reasons therefor.

With respect to matters made the subject of Contractor's
approval under subparagraphs (1) and (4) of this Paragraph F., Con-
tractor's approval or disapproval thereof shall be made in writing to
the Government within two-(2)-months sixty (60) calendar days after

-5-

the Government's timely written notice to Contractor's Warranty Admin-
istrator is received by Contractor at its Long Beach plant requesting
approval and referring to this Paragraph F.  In the event of dis-
approval, Contractor shall set forth the reasons therefor  in its
statement of disapproval.  Contractor's failure to deliver to the
Government a written statement of approval or disapproval within
such ~~two-month~~ sixty (60) calendar day period shall (without extending
or increasing Contractor's obligations hereunder in any way) constitute
approval by Contractor of the subject matter of the particular request
involved.

G.  Normal wear and tear and the need for regular overhaul shall
not constitute a defect or failure under this warranty.  ~~Buyer
acknowledges-that-some-of-the-accessories,-equipment-and-parts
delivered-hereunder,-though-without-defects-when-delivered,-have-a-
neraml-service-expectancy-and-warranty-shorter-than-the-periods-
specified-in-Paragraph-B,-of-this-Part-I-as-set-forth-in-Seller's
instructions-furnished-hereunder.~~

H.  When an aircraft, accessory, or item of equipment, or other
deliverable item under this contract, has been corrected, repaired
or replaced pursuant to the conditions of this provision, the period
of the Contractor's warranty under this Part I with respect to such
correction,.repair, or replacement, whichever may be the case, shall
be the same as those set forth for the original delivered item.

I.  Except to the extent and upon the conditions specifically
set forth in Paragraph A. through H. of this Part I, inclusive, and
the Part ~~III~~ IV of this ~~article~~ clause entitled "General," None of the
warranties made by Contractor ~~hereinabove~~ with respect to any air-
craft, product or article delivered ~~hereunder~~ this Contract shall survive ~~delivery
to-and~~ acceptance ~~thereof~~ by the Government.

Part II - Service Life Policy

In addition to the warranties set forth in the Part I of this
clause entitled "Warranty," Contractor agrees that should DC-10

-6-

fleetwide or repetitive failure occur in any of the covered com-
ponents, then the provisions of this Part II shall apply.

A.  Definitions

(1)  For the purposes of this Part II, the following defi-
nitions apply:

(i)  Failure means any breakage of, or defect in, a
covered component (exclusive-of-intergranular-corrosion) (except
for corrosion as a result of improper maintenance procedures and
practices) which has occurred and which can reasonably be expected
to occur on a repetitive or DC-10 fleetwide basis.

(ii)  Airframe component means any of the primary
structural elements of the wing, fuselage and vertical and horizontal
empennage of the aircraft as specified in Exhibit "A" attached hereto.

(iii) Landing gear component means any of those primary
static structural elements which are part of the landing gear installed
in an aircraft at the time of delivery thereof to the Government,
specified in Exhibit "D" attached hereto.

(iv)  Covered component means any airframe component
or landing gear component.

(v)  Landing means any normal touchdown where tires
contact the ground including touch and goes.

B.  Service Life Policy

Should a failure occur in any covered component of an aircraft
within the following periods (whichever is applicable):

- 7 -

(1)  As to any airframe component of an aircraft, within thirty thousand (30,000) flying hours or within ten (10) years after delivery of such aircraft to the Government, whichever shall first expire.

(2)  As to any landing gear component of an aircraft, prior to the accumulation by such component of an aggregate of twenty thousand (20,000) aircraft landings or thirty thousand (30,000) flying hours involving the use of such component or within ten (10) years after delivery of such component to the Government, whichever shall first occur.

Contractor will, at the price hereinafter provided and as promptly as practicable, either (i) design and furnish to the Government a correction for such failed covered component and provide any parts required for such correction (exclusive of standard parts) or (ii) furnish to the Government a replacement covered component for such failed component for installation of such correction or component by the Government in such aircraft or the affected landing gear.

C.  Price

Any part or covered component which Contractor is required to furnish to the Government under this Policy in connection with correction or replacement of a covered component shall be furnished to the Government at a price determined in accordance with the following formula:

$$P = \frac{CT}{N}$$

P = Price to the Government

C = The Contractor's then current spare parts sales price

As to airframe components:

T = The total flying time in hours during which the airframe component, which is the subject of a failure, has been used, and

- 8 -

$N$ = Thirty thousand (30,000),

As to landing gear components, either:

$T$ = The total number of airplane landings which have been accumulated by the landing gear component, which is the subject of a failure, and

$N$ = Twenty thousand (20,000),

or

$T$ = The total flying time in hours during which the landing gear component, which is the subject of a failure, has been used, and

$N$ = Thirty thousand (30,000),

whichever yields the higher fraction.

D.  General Conditions and Limitations

(1)  The return to Contractor, if such return is practicable, of any covered component which is the subject of a failure necessary for redesigning studies, shall be at the Government's expense. Any required disassembly and reassembly of the aircraft or landing gear, or parts of either thereof, removal of the covered component which is the subject of a failure and reassembly and installation of the corrected or replacement covered component, shall be at the Government's expense, and if such disassembly, reassembly and installation is accomplished by Contractor at the Government's request, the ~~rates~~ prices to be charged for any such services shall not exceed the ~~rates~~ prices charged to other commercial customers of Contractor during substantially the same time period.

(2)  Contractor's obligations under this Policy are conditioned upon (i) the submission of reasonable proof to Contractor that the failure is embraced within the scope of this Policy; (ii) with respect

- 9 -

to landing gear components, the maintenance by the Government of log books and other historical records available for inspection by Contractor and adequate to enable determination of whether the defect or failure claimed is covered by this Service Life Policy and, if so, the amount of the payment to be made to Contractor hereunder and adequate to enable determination that the servicing, overhaul, maintenance and modification of any such landing gear component or related equipment has been accomplished in accordance with subparagraphs (4) and (5) of this Paragraph D. ~~In case of any failure,~~ ~~and (iii)~~ the Government must have reported the failure, breakage or defect of a covered component in writing or by telegram to Contractor's Warranty Administrator at its factory in Long Beach, California, within ~~two (2) months~~ sixty (60) calendar days after any failure, breakage or defect in a covered component becomes evident. ~~whether or not said breakage or defect can reasonably be expected to occur in any other aircraft. Omission by Buyer to give this required notice to Seller shall excuse Seller from all obligations hereunder with respect to such failure.~~

(3)   The provisions of Paragraph F. (except for subparagraphs (5) and (6) thereof) of the Part I of this clause entitled "Warranty," are incorporated herein by this reference and shall condition Contractor's obligations under this Policy with respect to any covered component.  ·

(4)   Contractor's obligations under this Policy shall not apply to any aircraft or landing gear which has not been correctly modified in accordance with Contractor's Service Bulletin specifications or instructions furnished by Contractor to the Government prior to the receipt by Contractor from the Government of any notice of an occurrence which constitutes or which at a later date is shown to constitute, a failure in a covered component.

(5)   Contractor's obligations under this Policy shall not apply to any landing gear component with respect to which there has been the failure to either (i) correctly service, maintain and over

-10-

Ex.: 17; p.: 919

Ex.: 17; p.: 920

A. The contractor shall make reasonable efforts to obtain
through formal agreements with the manufacturers of accessories
and items of equipment installed on the aircraft to the extent
not covered by the contractor's warranty and the contractor's
indemnity against infringement of patents and other proprietary
rights, respectively, favorable warranties, indemnities against
infringement of patents and other proprietary rights. The
contractor shall promptly advise the Government <u>and Logistics
Support Contractor</u> as ·to the character and extent of protection
afforded the Government by such agreements of indemnity and
warranties so obtained, <u>and provide them with all acquired
rights, to the Government and Logistics Support Contractor.
The contractor shall contractually require that all vendor
warranties conveyed to the Government can be administered by
the Logistics Support Contractor.</u>

B. <u>The contractor shall assist the Government in the
resolution of any problems associated with all vendor warranties
provided.</u> In the event of a default by any such manufacturer
in the performance of any material obligation under any applicable
warranty obtained by the contractor from such manufacturer
pursuant to this article, or in the event of a disclaimer of
responsibility by such manufacturer for any defect constituting
a breach of any such warranty and upon notice thereof to the

haul such landing gear component or the landing gear or the aircraft
it is at any time a part of, in accordance with the applicable Con-
tractor's instructions regarding such servicing, maintenance and
overhaul, including, without limitation, the Contractor maintenance
manuals, overhaul manuals and special instructions applicable to
landing gears and their component parts or (ii) periodically service
and maintain such landing gear component, landing gear and aircraft
on a scheduled basis in accordance with recognized standards for
scheduled air passenger carriers, subject to regulations by the
Federal Aviation Administration.

(6) ~~In-the-event-of-any-breakage-or-defect-in-a-covered-~~
~~component,-if-Seller-determines-that-such-breakage-or-defect-may-not~~
~~reasonably-be-expected-to-occur-on-a-fleetwide-or-repetitive-basis,~~
~~this-Policy-shall-not-apply-with-respect-to-such-breakage-or-defect.~~

E. Nature of Agreement

This Service Life Policy is neither a warranty, performance
guaranty nor an agreement to modify the aircraft, airframe components
or landing gear components to conform to new developments hereafter
occurring in the state of airframe or landing gear design and manu-
facturing art. Contractor's obligation herein is to make only those
corrections to the airframe components and landing gear components or
furnish replacement therefor as provided in this Policy.

F. Assignment of Rights

*except as set forth
elsewhere in this provision*

The Government's rights under this Part II shall not be
assigned, sold, leased, transferred or otherwise alienated by operation
of law or otherwise, without prior Contractor consent thereto given
in writing. Any unauthorized assignment, sale, lease, transfer or
other alienation of the Government's rights under this Policy shall
immediately void this Policy in its entirety.

Part III - Vendor Warranties and Indemnity Against Patent
          Infringement

A. Contractor shall make reasonable efforts to obtain through

formal agreements with the manufacturers of accessories and items of
equipment installed on the aircraft to the extent not covered by
Contractor's warranty and Contractor's indemnity against infringement
of patents and other proprietary rights, respectively, favorable
warranties, indemnities against infringement of patents and other
proprietary rights. Contractor shall promptly advise the Government
as to the character and extent of protection afforded the Government
by such agreements of indemnity and warranties so obtained.

B. In the event of a default by any such manufacturer in the
performance of any material obligation under any applicable warranty
obtained by Contractor from such manufacturer pursuant to this Clause
or in the event of a disclaimer of responsibility by such manufacturer
for any defect constituting a breach of any such warranty and upon
notice thereof to Contractor, the warranties and all other terms and
conditions of the clause hereof entitled "WARRANTY AND SERVICE LIFE
POLICY" shall become applicable to any accessories or items of equip-
ment involved as if the same had been manufactured by Contractor or
to its detailed design, except that the warranty periods as to such
accessories or items of equipment shall be the lesser of (i) the
warranty period as set forth in the applicable warranty of such manu-
facturer or (ii) the applicable warranty period set forth in the
clause hereof entitled "WARRANTY AND SERVICE LIFE POLICY" and the
Government agrees to assign to Contractor, and Contractor shall be
subrogated to, all of the Government's rights against such manufacturer
with respect to and arising by reason of such default or disclaimer,
provided that this Paragraph C. shall not be applicable to engines
or their manufacturer.

Part IV - General

A. **Except as provided herein the Government's rights under this contract
because of latent defects, fraud or such gross mistakes as amount to fraud
are not limited by this clause.**

-12-

In the case of aircraft, the Government's rights under this contract because of fraud or such gross mistakes as amount to fraud are not limited by this clause, but the Government's rights because of latent defects are limited in that the Contractor must be notified of any latent defect in such aircraft within the time period specified in Part I Paragraphs B.(1) or (2) as the case may be. In the case of all other items under this contract, the Government's rights because of latent defects, fraud, or such gross mistakes as amount to fraud, are not limited by this clause.

B. The warranties expressed herein are in lieu of any implied warranty of MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

C. The Government may, without Contractor approval, designate the ATCA Logistic Support Contractor to act in its behalf in all instances where "the Government" is referenced above. The Government shall advise the Contractor in writing of any such designation. In the event of any such designation or the transfer of rights hereunder, the Government agrees to obtain for the benefit of the Contractor, written agreement from the Logistic Support Contractor and any other transferee that such party shall be bound by and subject to the clause hereof entitled "Limitation of Liability - Major Items" in the same manner and to the same extent as the Government. Such agreement shall be applicable to any claim the Logistic Support Contractor or other transferee may have relating directly or indirectly to any work, product or services provided or accomplished hereunder and any property of the Logistic Support Contractor or transferee. Copies of such agreement shall be provided to the Contractor.

D. In all instances above where notification must be given to the Contractor after a defect or other condition becoming apparent evident, etc., this shall mean becoming apparent, evident, etc., to the Contracting Officer (CO), or the Logistics Support Contractor, where such delegation has been made.

Ex.: 17; p.: 924

EXHIBIT "A"

TO CLAUSE - WARRANTY AND SERVICE LIFE POLICY

The following specific airframe items are subject to the
provisions of Part II of the clause entitled "WARRANTY AND
SERVICE LIFE POLICY":

PYLONS - WING AND CENTER ENGINE

    Pylon engine mount fittings
    Pylon engine mount bulkheads
    Spars
    Side skin and skin stiffeners
    Pylon wing attach angle and center engine support angles
    Pylon wing attach bulkhead and center engine attach bulkhead

WINGS

    Front and rear spars
    Upper and lower stringers and plating between spars
    Landing gear bulkhead and fitting
    Dihedral and sweepback bulkhead
    Flat support ribs in the wing
    Wing to fuselage attach tee

FUSELAGE

    Frames, plating, stringers and pressure bulkheads but
    excluding all doors

    Fuel tank pressure bulkheads and panels
    ARO station sighting tunnel pressure panel
    ARB support fitting
    UARRSI pressure panel

EMPENNAGE

    Vertical spars and plating between spars
    Aft fuselage vertical stabilizer carry-through structure
    Horizontal stabilizer spars, integral plating between spars

Case: MDL No. 875 JSW Document 6662-1 Filed 04/28/11 Page 391 of 403

Due date:  5-20-81



Action No. B26 - Mangan/Staffieri
**DEPARTMENT OF THE AIR FORCE**
HEADQUARTERS AIR FORCE ACQUISITION LOGISTICS DIVISION  AFLC·
WRIGHT PATTERSON AIR FORCE BASE, OHIO 45433

**1  7 APR 1981**

| | |
|---|---|
| YTP (CCLN 78-1-1429) | **2 4 APR 1981** |

From: AFALO (Staffieri) Douglas, Long Beach 35-79
Subj:  ... ... ...

☑ 1. File
☑ ...

Request for Task Change Proposal

☐ 4. Reply direct to
☐ 5. ...

AFPRO

*signature*
**C. A. KELLAND**
CHIEF, CONTRACT
ADMINISTRATION DIVISION

Douglas Aircraft Company
Attn:  G.D. Staffieri
Mail Station C1-241 (35-80)
3855 Lakewood Blvd.
Long Beach, CA  90846
IN TURN

1.  To provide the capability to acquire KC-10 Aircraft beyond FY83, we request you submit a Task Change Proposal (TCP) to extend the contract's Unit Price Matrix (UPM) through FY87.  Contract prices, terms and conditions should remain unchanged.

2.  Proposal format should be consistent with the current contract's structure and previously submitted TCP's.  Additionally, please provide your assessment of logistics impact.

3.  Your response is requested by 20 May 1981.  Questions should be directed to R. Chalecki, 513-255-2925.

*signature*
**JOSEPH F. THUMSER, Capt, USAF**
**Contracting Officer**

CORRESPONDENCE

RECD APR 27 '81 -9 15 AM

CONTROL

CORRESPONDENCE CONTROL  CL-303

Ex.: 17; p.: 926

**DOUGLAS AIRCRAFT COMPANY**

3855 Lakewood Boulevard, Long Beach, California 90846

C1-24-A-1890
26 May 1981

Subject: Contract F33700-78-C-0001 - Task Change Proposal (TCP)
KC-10-0019 to Extend the Contract For KC-10's Beyond
FY 1983

To: Air Force Acquisition Logistics Division
Deputy for KC-10
Wright Patterson Air Force Base, Ohio  45433

Attention: Mr. R. R. Chalecki

Via: Air Force Plant Representative Office
McDonnell Douglas Corporation
Douglas Aircraft Company
Long Beach, California  90846

Reference: (a) Air Force Letter YTP (CCLN 78-1-1429) dated
17 April 1981

Enclosure: (1) TCP KC-10-0019 - 20 copies

1.        Enclosure (1) hereto is submitted in response to the
referenced Air Force request.

2.        This offer does not leave the subject contract terms and
conditions unchanged as requested by Reference (a), but does set forth
the Contractor's best business arrangement for extending the existing
contract.

3.        The logistics support impact of this extension is not being
addressed at this time.  Contract F33700-78-C-0003 currently covers support
for up to forty-eight (48) aircraft through December 1, 1985.  This will
allow time to secure actual KC-10 service experience which will be bene-
ficial to both the Contractor and the Air Force.  The Contractor recognizes,
however, that a buy of eight (8) KC-10's in FY 1982 will put twenty (20)
aircraft at Barksdale which is outside the coverage of the logistics support
contract and will therefore respond to an Air Force request for a proposal
to increase the total aircraft to be supported at the first MOB from sixteen
(16) to a quantity of twenty (20).

**MCDONNELL DOUGLAS**
CORPORATION

Ex.: 17; p.: 927

C1-24-A-1890
Page Two
26 May 1981

4.        Should additional information be required, please contact the undersigned at telephone (213) 593-2361.

G. D. Staffieri
KC-10 Business Manager

GDS:jh

Ex.: 17; p.: 928

Enclosure (1) to
C1-24-A-1890
TCP KC-10-0019

## TASK CHANGE PROPOSAL

### TO

### EXTEND CONTRACT F33700-78-C-0001

AFALD Letter (78-1-1429) dated 17 April 1981

Ex.: 17; p.: 929

# TABLE OF CONTENTS

I.     INTRODUCTION

II.    PRICE ADJUSTMENTS

III.   SCHEDULE INFORMATION

IV.    ECONOMIC PRICE ADJUSTMENT CLAUSE UPDATE

V.     SPECIAL PROGRESS PAYMENTS

VI.    LONG LEAD REQUIREMENT

      a.  STATEMENT OF WORK

      b.  PAYMENT

      c.  DELIVERY

      d.  TERMINATION

VII.   CONDITIONS UPON WHICH THE OFFER IS BASED

Ex.: 17; p.: 930

I.   INTRODUCTION

This submittal constitutes the Douglas Aircraft Company's response
to Air Force Letter YTP (CCLN 78-1-1429) dated 17 April 1981.

The Contractor proposes to extend the existing contract for one
(1) year covering GFY 1984. This extension will provide the
Government with an additional firm option in sufficient time to
permit firm KC-10 prices to be used for the Government fiscal year
that is in the planning cycle. Additionally, it is the Contractor's
intent that each fiscal year at the time of option exercise an
additional option year will be added so that firm KC-10 fiscal
planning data will be available for future fiscal years.

This approach has the dual benefit of providing the Government
with timely, firm fiscal planning information while at the same
time bounding the Contractor's risks associated with future
uncertainties.

As a consideration for the contract extension the Air Force
must grant long lead funding for Option 6 (GFY 1983) of the
existing contract and subsequent options as they are added to
the contract. The advance authorization must be made at the
time of aircraft option exercise (i.e., when Option 5 is exercised,
the advance authorization for Option 6 must be made). The quantity
of aircraft covered by the option advance authorization establishes
the maximum aircraft quantity exercisable under that option (i.e.,
if advance authorization for eight (8) aircraft is granted for
Option 6 on or before 1 December 1981 then a maximum of eight (8)
aircraft may be ordered under Option 6 on or before 1 December 1982).
All other terms and conditions of the existing contract will remain
unchanged for Option 6..

The Contractor's best business arrangement for the option year
extension includes additional changes to the current contract
terms and conditions. These changes are required to partially
compensate for the significant change in the business environment
(i.e., lead time increases, high rate of inflation, etc.) that has
occurred since the program was initiated in 1978 and they are
set forth in the following pages of this document.

II.   PRICE ADJUSTMENTS

In granting this additional option to the Government, the changes
Douglas Aircraft Company is making in the KC-10 Base Aircraft Price for
the GFY 1984 option are to increase the base airframe price for
a five (5) percent general price increase (GPI) declared 18 June
1974 for deliveries commencing in 1977 (was not included in the
original price derivation) and to include standard Specification
Change Notices (SCN's) added since original price derivation.
The Base Price increase is a total of $1,561,688 in GFY 1976
dollars ($1,541,388 GPI + $20,329 Standard SCN's).

Ex.: 17; p.: 931

II.    PRICE ADJUSTMENTS (Cont'd)

The discount is changed from Base Year dollars to "Then Year" dollars. A discount of nine million dollars will be subtracted from the total price after adjustment for escalation in accordance with Clause J-15, Economic Price Adjustment.

To add the GFY 1984 alternate option to the present contract, a Section c. needs to be added to J-8, "Options."

c.    Alternate Option 7 - GFY 1984 - Unit Price Matrix (UPM)

(1)    Assuming Options 1 through 6 have been exercised and not terminated in accordance with a. and/or b. above, the Contractor grants to the Government one (1) additional option for GFY 1984. To exercise this Option 7, the Government shall specify the maximum quantity of aircraft to be procured for the GFY 1984 buy and provide long lead funds for same on or before 1 December 1982. Secondly, the option shall be wholly exercised on or before 1 December 1983, subject to Provision J-4, "Demonstration Milestones." This option shall be wholly exercised only once to include all aircraft to be procured for this alternate Option 7.

(2)    Table V shows the Base Prices for quantities of KC-10A Aircraft from seventeen (17) through sixty (60). The total Base Price for each aircraft order pursuant to this option shall start with the fuselage number which next follows the cumulative number of KC-10A systems heretofore procured through Option 6 and continue through the last cumulative fuselage number being procured.

(3)    Each aircraft's airframe Base Price and engine Base Price shall be subject to adjustment in accordance with Clause J-15, Economic Price Adjustment. Net Aircraft Price shall be the total as adjusted in accordance with Clause J-15, Economic Price Adjustment less nine million dollars for each KC-10A.

-4-

TABLE V TO PROVISION J.8. "OPTIONS"

AIRCRAFT PRICE STRUCTURE - ALTERNATE OPTION 7 (UPM) - GFY 1984

GOVERNMENT FISCAL YEAR (GFY) 1976 DOLLARS

THROUGH PO0040

| a | b | | c | | d | | e | | f |
|---|---|---|---|---|---|---|---|---|---|
| ATCA Fuselage No. | Commercial Airframe Base Price | + | ATCA Peculiar Base Price | + | Total Airframe Base Price | + | Engine Base Price | = | Total Base Price |
| 17 | 29,011,844 | | 1,736,709 | | 30,748,553 | | 6,071,169 | | 36,819,722 |
| 18 | 29,011,844 | | 1,695,877 | | 30,707,721 | | 6,071,169 | | 36,778,890 |
| 19 | 29,011,844 | | 1,658,127 | | 30,669,971 | | 6,071,169 | | 36,741,140 |
| 20 | 29,011,844 | | 1,623,132 | | 30,634,976 | | 6,071,169 | | 36,706,145 |
| 21-25 | 29,011,844 | | 1,282,462 | | 30,294,306 | | 6,071,169 | | 36,365,475 |
| 26-30 | 29,011,844 | | 929,619 | | 29,941,463 | | 6,071,169 | | 36,012,632 |
| 31-35 | 29,011,844 | | 808,339 | | 29,820,183 | | 6,071,169 | | 35,891,352 |
| 36-40 | 29,011,844 | | 724,519 | | 29,736,363 | | 6,071,169 | | 35,807,532 |
| 41-45 | 29,011,844 | | 658,455 | | 29,670,299 | | 6,071,169 | | 35,741,468 |
| 46-50 | 29,011,844 | | 604,829 | | 29,616,673 | | 6,071,169 | | 35,687,842 |
| 51-60 | 29,011,844 | | 541,566 | | 29,553,410 | | 6,071,169 | | 35,624,579 |

Ex.: 17; p.: 933

III.   <u>SCHEDULE INFORMATION</u>

For Fiscal Year 1984 the date of option exercise shall be no
later than December 1, 1983.  The first aircraft will be
complete twenty months after option exercise but no earlier
than July 1985 with subsequent aircraft at a rate of one per
month.

The minimum order quantity for this option will be six (6)
aircraft.

The maximum order quantity for this Fiscal Year 1984 buy will be
established when long lead for Fiscal Year 1984 is authorized
one year ahead of the option exercise and at the time of
Fiscal Year 1983 authorization.

IV.   <u>ECONOMIC PRICE ADJUSTMENT CLAUSE UPDATE</u>

To bring the KC-10 escalation clause in line with the current
commercial DC-10 escalation clause Special Provision J-15
requires a change that adds a factor of one-half of one percent
per year.  This factor covers the growth of fringe benefits and
other costs which have increased at a much faster rate than direct
labor and have not been compensated for in the BLS indices.

The adjustment is made by adding the following language to J-15
d(2)(a):

"For aircraft purchased in GFY 1984 (deliveries commencing
in calendar year 1985), the net airframe base price derived
from Table  V for the GFY 1984 Buy shall be multiplied by
the factor of $1.005^y$ where "y" is the calendar year of
schedule aircraft delivery minus 1979 (i.e., for a 1985
scheduled aircraft y=6 or $1.005^6 = 1.0304$).  For the 1984
buy, the net airframe base price is deemed to be the value
after adjustment for the $1.005^y$ factor."

V.   <u>SPECIAL PROGRESS PAYMENTS</u>

Increase the payment schedule in accordance with memorandum
from Office of the Under Secretary of Defense dated 30 March 1981.
Subject:  Increase Progress Payment Rates.  Increase the rate to
85% by changing J-14 "Special Progress Payments" as follows:

Paragraph (b) change 80% in line 7 to 85%.  Change
80% in line 9 to 85%.

Ex.: 17; p.: 934

V.    SPECIAL PROGRESS PAYMENTS (Cont'd)

Adjust the billing milestone schedule (paragraph d) to 85% of
the estimated cost incurred as follows:

| MONTHS BEFORE AIRCRAFT DELIVERY | PAYMENT - CUMM. PERCENT. OF AIRCRAFT COST |
|---|---|
| 22 | 5.3 |
| 21 | 6.4 |
| 20 | 8.0 |
| 19 | 9.6 |
| 18 | 10.6 |
| 17 | 12.8 |
| 16 | 15.9 |
| 15 | 18.6 |
| 14 | 21.3 |
| 13 | 23.9 |
| 12 | 26.6 |
| 11 | 29.2 |
| 10 | 34.5 |
| 9 | 42.5 |
| 8 | 47.8 |
| 7 | 55.8 |
| 6 | 63.8 |
| 5 | 68.0 |
| 4 | 71.7 |
| 3 | 74.4 |
| 2 | 77.0 |
| 1 | 79.7 |

Paragraph (d) change 80% in the second paragraph to 85%.

General Provision No. 54 entitled "Progress Payments for Other
Than Small Business Concerns" (7-104.35(a)) will also require
modification to change the 80% to 85%.

VI.    LONG LEAD REQUIREMENT

The following contract provisions will be required when a contract
item is added to the program for long lead effort.

A.    STATEMENT OF WORK

The tasks set forth herein, substantially identify the effort
which the Contractor will accomplish under this contract
related to FY 1984 long lead effort.

1.0   Long Lead Effort - Aircraft

Under Item     the Contractor shall initiate and perform
long lead effort required to assure delivery of _____
KC-10 Aircraft.  Such long lead effort shall include but
not be limited to the effort in paragraphs 1.1 through 1.7
below and such other effort as may be necessary to support

-7-

Ex.: 17; p.: 935

VI.    LONG LEAD REQUIREMENT

A.    STATEMENT OF WORK (Cont'd)

1.0    Long Lead Effort - Aircraft (Cont'd)

a delivery of one (1) aircraft per month beginning in
July 1985.  The effort will be performed by the Contractor
through November 1983.

1.1    Engineering Release

Initiate and release design drawings, specifications,
and any other engineering documents required to support
the delivery schedule for the aircraft.

1.2    Product Support

Initiate and perform those efforts associated with main-
tainability design surveillance, maintenance analysis
and support data services.

1.3    Quality Assurance

Perform Quality Assurance and testing in accordance with
test requirements, plans and work orders as required to
support the configuration and delivery schedule of the
aircraft.

1.4    Subcontract Placement

Perform such procurement of "long lead" supplies and
data from subcontractors and vendors as necessary to
support the delivery schedule of the aircraft.

1.5    Materials

Identify and order materials necessary to protect the
aircraft delivery schedule.  Primarily, this effort
covers the following areas:  bar stock, sheet metal and
other raw material, miscellaneous small purchased parts,
forgings, castings and extrusions, and purchased equip-
ment.

1.6    Planning and Fabrication

Initiate planning and fabrication as required to support
the delivery schedule of the aircraft.

-8-

VI.     <u>LONG LEAD REQUIREMENT</u>

     A.    <u>STATEMENT OF WORK</u> (Cont'd)

         1.7   <u>Technical Baseline for Fiscal Year 1984 KC-10 Aircraft</u>

             The technical configuration baseline of the aircraft
which is the subject of the FY 1984 long lead effort
under Item _____ at the time of the contract award,
is the same as that set forth for the Fiscal Year 1983
under Item 0019 of Contract F33700-78-C-0001.

     B.    <u>PAYMENT</u>

         Progress payments for this Item _____ shall be made in
accordance with Clause 54 of the General Provisions of
Contract F33700-78-C-0001 entitled "Progress Payments for
Other than Small Business Concerns" at 85% of incurred
costs.

         For purposes of the Special Progress Payments Provision (J-14)
this item _____ will, at the time of Government exercise
of Option 7, be incorporated into the paragraph d. Payment
Schedule.

     C.    <u>DELIVERY</u>

         It is not contemplated that deliveries will be made under
this Item _____. In the event the Government elects to
modify this contract to call for the procurement of FY 1984
KC-10 Aircraft, all work performed, costs incurred and payments
made under Item _____ shall be deemed to be work performed,
cost incurred and payments made under the contract line item(s)
calling for FY 1984 KC-10 Aircraft. In the event the Govern-
ment elects not to procure FY 1984 KC-10 Aircraft, title to
all work in-process and other materials acquired, the cost of
which property has been or will be borne by the Government
shall pass to and vest in the Government upon the completion
or termination of Item _____ and shall be delivered or
disposed of in accordance with the directions of the
Contracting Officer. The work in-process and other materials
to which the Government acquired title under this provision shall
be fit for the purpose of ultimately manufacturing FY 1984
KC-10 Aircraft.

Ex.: 17; p.: 937

VI.    LONG LEAD REQUIREMENT

    D.  TERMINATION

        In the event the Government elects not to procure any or all
        of the FY 1984 Production Program the Government shall
        determine whether the Contractor is to hold the inventory,
        complete the inventory or terminate all effort.  If the
        decision is to terminate the Contractor shall prepare a
        detailed report listing all the materials and documents
        generated and/or acquired pursuant to the long lead effort
        expended for FY 1984 together with supporting cost and
        pricing data.  Upon the submission of the aforesaid detailed
        report and supporting cost and pricing data, the parties
        hereto shall negotiate an equitable amount to be paid the
        Contractor which amount shall not in any event exceed the
        firm fixed prices set forth under the Item _____.  Upon
        notification of intent to not procure, submission and
        negotiations shall be handled in accordance with the General
        Provision of the contract entitled "Termination for Convenience
        of the Government."

        If the Government desires the Contractor will use its best
        efforts to utilize the inventory common to the DC-10 Aircraft
        and relieve the Government of the expense associated with
        this inventory.

VII.   CONDITIONS UPON WHICH THE OFFER IS BASED

    A.  This offer will remain valid until 1 December 1981.

    B.  The offer is contingent upon the Air Force furnishing
        long lead funding for GFY 1983 under Contract F33700-78-C-0001.
        The Contractor's proposal for long lead funding is furnished
        under separate cover identified as C1-24-A-1877 dated 20 May
        1981.

Ex.: 17; p.: 938