1   Denise Abrams, Esq. (C.S.B. #124139)
    Andrea Huston, Esq. (C.S.B. #200610)
2   Elina Agnoli, Esq. (C.S.B. #261732)
    KAZAN, McCLAIN, LYONS,
3   GREENWOOD & HARLEY
    A Professional Law Corporation
4   171 Twelfth Street, Third Floor
    Oakland, California 94607
5   Telephone: (510) 302-1000

6   Attorneys for Plaintiffs

7

8               IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    IN AND FOR THE COUNTY OF ALAMEDA

10

11  TIMOTHY VEST and CAROLINE VEST,        No. RG09489518

12              Plaintiffs,               **PLAINTIFFS' AMENDED RESPONSES TO
                                          DEFENDANT McDONNELL DOUGLAS
13  v.                                    CORPORATION'S FIRST SET OF
                                          SPECIAL INTERROGATORIES**
14  ALLIED PACKING AND SUPPLY, et al.,

15              Defendants.

16  PROPOUNDING PARTY:        Defendant McDONNELL DOUGLAS CORPORATION

17  RESPONDING PARTY:         Plaintiffs TIMOTHY VEST and CAROLINE VEST

18  SET NUMBER:               ONE (1)

19  **RESPONSE TO INTERROGATORY NO. 2.**

20       Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

21  §2030.220(c), plaintiffs respond:

22       1) Underline World Airways:

23       a) Underline Aircraft: approximately six McDonnell Douglas DC-8-63CF aircraft with tail

24  numbers N801WA, N802WA, N803WA, N804WA, N805WA and N806WA, and approximately

25  ten McDonnell Douglas DC-10-30CF aircraft with tail numbers N803WA, N804WA, N805WA,

26  N806WA, N807WA, N808WA, N809WA, N810WA, N811WA, N812WA and N813WA.

27  Plaintiffs are aware of additional aircraft tail numbers, but are unable to disclose them in this

28

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

AHUSTON/692307.1

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES                    1

Ex.: 37; p.: 1686

1 || response due to defendant's insistence on a confidentiality agreement concerning same.

2 ||          b) Aircraft components or parts on the DC-8s and DC-10s at World Airways:

3 ||     Dexter Corporation – EA911F, EA934, EA934 and EA9309 epoxies used as adhesives on

4 || the new construction and repair of these aircraft. These products were suitable for bonding to and

5 || bonding together a number of substrates, including aluminum, metal and fiberglass. The products

6 || were used during new construction of the aircraft to bond items as well as to reinforce joined

7 || items, such as being applied to bolts and rivets prior to the bolts and rivets being set. The products

8 || were used during maintenance and repair of the aircraft to bond items as well as to reinforce joined

9 || items, such as being applied to bolts and rivets prior to the bolts and rivets being set. This

10 || included application to build up surfaces for fuel pumps, filling in worn bearing journals, small

11 || repairs, core-splicing, filling in wear areas, filling in holes in honeycomb panels, filling in damages

12 || on engine inlet cowl areas, and filling in dimples and dents on the aircraft exteriors and aircraft

13 || radomes. After application and after the product set and cured, it was machined and sanded

14 || smooth. These products had to be removed by grinding and sanding once they set and cured.

15 ||          EA911F was a two part epoxy that cured at room temperature. Both parts (Part A and Part

16 || B) came in paste form, with Part A being yellow in color and Part B being dark grey in color.

17 || Both Parts A and B contained chrysotile asbestos through at least 1989. The product came in

18 || yellow and black packaging.

19 ||          EA934 was a two part epoxy. Part A was a gray epoxy paste and Part B was an amber

20 || liquid amine curing agent. Part A contained chrysotile asbestos through at least 1989. The

21 || product came in yellow and black packaging.

22 ||          EA9309 was a two part paste epoxy. Part A contained chrysotile asbestos through at least

23 || 1986. The product came in yellow and black packaging.

24 ||          Manufacturer unknown – Heat shields used over hydraulic lines and hot ducts in the

25 || pneumatic systems of the aircraft. The heat shields are comprised of two pieces of metal

26 || "sandwiching" an asbestos-containing component that resembled a thick fibrous material. The

27 || metal pieces did not completely cover the asbestos-containing component in the center; the corners

28 || and edges of the asbestos-containing component were visible and could be touched. The heat

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

AHUSTON/692307.1

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES                    2

1 shields ranged in color from greyish white to grey and were attached with either clamps, bolts,

2 clips or ties. The heat shields ranged in size, and included shields that were 3 to 6' long and

3 approximately 6" wide. Plaintiffs do not know the model number or part numbers for the heat

4 shields, do not know how long they were manufactured with an asbestos-containing component,

5 and do not know the type of asbestos that was in the asbestos-containing component.

6     2) <u>Continental Airlines</u>:

7     a) <u>Aircraft</u>: Plaintiff Timothy Vest recalls a DC-10 with the tail number 046.

8 Plaintiffs do not know the tail numbers for any other of defendant's aircraft at this site.

9     b) <u>Aircraft components or parts on aircraft at Continental</u>:

10     <u>Dexter Corporation</u> – EA911F, EA934, EA934 and EA9309 epoxies used as adhesives on

11 the new construction and repair of these aircraft. These products were suitable for bonding to and

12 bonding together a number of substrates, including aluminum, metal and fiberglass. The products

13 were used during new construction of the aircraft to bond items as well as to reinforce joined

14 items, such as being applied to bolts and rivets prior to the bolts and rivets being set. The products

15 were used during maintenance and repair of the aircraft to bond items as well as to reinforce joined

16 items, such as being applied to bolts and rivets prior to the bolts and rivets being set. This

17 included application to build up surfaces for fuel pumps, filling in worn bearing journals, small

18 repairs, core-splicing, filling in wear areas, filling in holes in honeycomb panels, filling in damages

19 on engine inlet cowl areas, and filling in dimples and dents on the aircraft exteriors and aircraft

20 radomes. After application and after the product set and cured, it was machined and sanded

21 smooth. These products had to be removed by grinding and sanding once they set and cured.

22     EA911F was a two part epoxy that cured at room temperature. Both parts (Part A and Part

23 B) came in paste form, with Part A being yellow in color and Part B being dark grey in color.

24 Both Parts A and B contained chrysotile asbestos through at least 1989. The product came in

25 yellow and black packaging.

26     EA934 was a two part epoxy. Part A was a gray epoxy paste and Part B was an amber

27 liquid amine curing agent. Part A contained chrysotile asbestos through at least 1989. The

28 product came in yellow and black packaging.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

---

**PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES**

3

1    EA9309 was a two part paste epoxy. Part A contained chrysotile asbestos through at least

2    1986. The product came in yellow and black packaging.

3        Manufacturer unknown – Heat shields used over hydraulic lines and hot ducts in the

4    pneumatic systems of the aircraft. The heat shields are comprised of two pieces of metal

5    "sandwiching" an asbestos-containing component that resembled a thick fibrous material. The

6    metal pieces did not completely cover the asbestos-containing component in the center; the corners

7    and edges of the asbestos-containing component were visible and could be touched. The heat

8    shields ranged in color from greyish white to grey and were attached with either clamps, bolts,

9    clips or ties. The heat shields ranged in size, and included shields that were 3 to 6' long and

10   approximately 6" wide. Plaintiffs do not know the model number or part numbers for the heat

11   shields, do not know how long they were manufactured with an asbestos-containing component,

12   and do not know the type of asbestos that was in the asbestos-containing component.

13       3) Emery Worldwide:

14       a) Aircraft: McDonnell Douglas DC-8s – 45801 DC-8-54F, 45812 DC-8-71F,

15   45884 DC-8-54F, 45901 DC-8-63F, 45903 DC-8-63F, 45941 DC-8-71F, 45947 DC-8-71F, 45956

16   DC-8-62F, 45974 DC-8-71F, 45975 DC-8-71F, 45977 DC-8-71F, 45983 DC-8-71F, 45991

17   DC-8-73F, 45995 DC-8-71F, 45996 DC-8-71F, 45997 DC-8-71F, 46000 DC-8-63F, 46003

18   DC-8-73F, 46024 DC-8-62F, 46028 DC-8-62F, 46039 DC-8-71F, 46044 DC-8-73F, 46045

19   DC-8-73F, 46046 DC-8-73F, 46047 DC-8-73F, 46054 DC-8-63F, 46061 DC-8-63F, 46062

20   DC-8-73F, 46063 DC-8-73F, 46068 DC-8-62F, 46086 DC-8-73F, 46087 DC-8-63F, 46088

21   DC-8-63F, 46091 DC-8-73F, 46092 DC-8-63F, 46095 DC-8-73F, 46099 DC-8-71F, 46103

22   DC-8-73F, 46104 DC-8-73F, 46106 DC-8-73F, 46133 DC-8-73F, 46137 DC-8-63F, 46139

23   DC-8-62F, 46143 DC-8-63F, 46145 DC-8-63F, 46149 DC-8-73F, 46154 DC-8-62F, 46162

24   DC-8-62F, 46163 DC-8-63F; McDonnell Douglas DC-10s – 46900 DC-10-10F, 46901

25   DC-10-10F, 46902 DC-10-10F, 46903 DC-10-10F, 46936 DC-10-30F, 46937 DC-10-30F, 47801

26   DC-10-10F, 47816 DC-10-30F. Plaintiffs are aware of additional aircraft tail numbers, but are

27   unable to disclose them in this response due to defendant's insistence on a confidentiality

28   agreement concerning same.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

AHUSTON/692307.1

**PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS**
**CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES**

4

Ex.: 37; p.: 1689

b) <u>Aircraft components or parts on the DC-8s and DC-10s at Emery Worldwide:</u>

<u>Dexter Corporation</u> – EA911F, EA934, EA934 and EA9309 epoxies used as adhesives on the new construction and repair of these aircraft. These products were suitable for bonding to and bonding together a number of substrates, including aluminum, metal and fiberglass. The products were used during new construction of the aircraft to bond items as well as to reinforce joined items, such as being applied to bolts and rivets prior to the bolts and rivets being set. The products were used during maintenance and repair of the aircraft to bond items as well as to reinforce joined items, such as being applied to bolts and rivets prior to the bolts and rivets being set. This included application to build up surfaces for fuel pumps, filling in worn bearing journals, small repairs, core-splicing, filling in wear areas, filling in holes in honeycomb panels, filling in damages on engine inlet cowl areas, and filling in dimples and dents on the aircraft exteriors and aircraft radomes. After application and after the product set and cured, it was machined and sanded smooth. These products had to be removed by grinding and sanding once they set and cured.

EA911F was a two part epoxy that cured at room temperature. Both parts (Part A and Part B) came in paste form, with Part A being yellow in color and Part B being dark grey in color. Both Parts A and B contained chrysotile asbestos through at least 1989. The product came in yellow and black packaging.

EA934 was a two part epoxy. Part A was a gray epoxy paste and Part B was an amber liquid amine curing agent. Part A contained chrysotile asbestos through at least 1989. The product came in yellow and black packaging.

EA9309 was a two part paste epoxy. Part A contained chrysotile asbestos through at least 1986. The product came in yellow and black packaging.

<u>Manufacturer unknown</u> – Heat shields used over hydraulic lines and hot ducts in the pneumatic systems of the aircraft. The heat shields are comprised of two pieces of metal "sandwiching" an asbestos-containing component that resembled a thick fibrous material. The metal pieces did not completely cover the asbestos-containing component in the center; the corners and edges of the asbestos-containing component were visible and could be touched. The heat shields ranged in color from greyish white to grey and were attached with either clamps, bolts,

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES**

5

Ex.: 37; p.: 1690

1 clips or ties. The heat shields ranged in size, and included shields that were 3 to 6' long and

2 approximately 6" wide. Plaintiffs do not know the model number or part numbers for the heat

3 shields, do not know how long they were manufactured with an asbestos-containing component,

4 and do not know the type of asbestos that was in the asbestos-containing component.

5       Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

6 given the pending nature of defendant's responses to plaintiffs' discovery as well as the

7 depositions scheduled of defendant's current and former employees. Discovery and investigation

8 are continuing.

9 **RESPONSE TO INTERROGATORY NO. 3.**

10       Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

11 §2030.220(c), plaintiffs respond: Dexter Corporation EA911F Part A – chrysotile asbestos,

12 percentage unknown; Dexter Corporation EA911F Part B, chrysotile asbestos, 10%; Dexter

13 Corporation EA934 Part A – chrysotile asbestos, 14%; Dexter Corporation EA9309 Part A –

14 chrysotile asbestos, 2%. Heat shields – type of asbestos and percentage of asbestos unknown.

15       Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

16 given the pending nature of defendant's responses to plaintiffs' discovery as well as the

17 depositions scheduled of defendant's current and former employees. Discovery and investigation

18 are continuing.

19 **RESPONSE TO INTERROGATORY NO. 4.**

20       Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

21 §2030.220(c), plaintiffs respond: Dexter Corporation EA911F Part A – chrysotile asbestos;

22 Dexter Corporation EA911F Part B, chrysotile asbestos; Dexter Corporation EA934 Part A –

23 chrysotile asbestos; Dexter Corporation EA9309 Part A – chrysotile asbestos. Heat shields – type

24 of asbestos unknown.

25       Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

26 given the pending nature of defendant's responses to plaintiffs' discovery as well as the

27 depositions scheduled of defendant's current and former employees. Discovery and investigation

28 are continuing.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES

6

AHUSTON/692307.1

Ex.: 37; p.: 1691

1  **RESPONSE TO INTERROGATORY NO. 5.**

2      Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

3  §2030.220(c), plaintiffs respond: Dexter Corporation EA911F, EA934, EA934 and EA9309

4  epoxies were used as adhesives on the new construction and repair of the McDonnell Douglas

5  aircraft. These products were suitable for bonding to and bonding together a number of substrates,

6  including aluminum, metal and fiberglass. These products were used during new construction of

7  the McDonnell Douglas aircraft to bond items as well as to reinforce joined items, such as being

8  applied to bolts and rivets prior to the bolts and rivets being set. These products were used during

9  maintenance and repair of the aircraft to bond items as well as to reinforce joined items, such as

10 being applied to bolts and rivets prior to the bolts and rivets being set. This included application to

11 build up surfaces for fuel pumps, filling in worn bearing journals, small repairs, core-splicing,

12 filling in wear areas, filling in holes in honeycomb panels, filling in damages on engine inlet cowl

13 areas, and filling in dimples and dents on the aircraft exteriors and aircraft radomes. After

14 application and after the product set and cured, it was machined and sanded smooth. These

15 products had to be removed by grinding and sanding once they set and cured. The actions of

16 machining, grinding and sanding of these products released airborne asbestos fibers, which were

17 then free to expose plaintiff Timothy Vest, through their release during these activities as well as

18 through their re-entrainment into the area and his breathing zone through clean up, movement,

19 walking and air currents.

20     Heat shields were used over hydraulic lines and hot ducts in the pneumatic systems of the

21 McDonnell Douglas aircraft. The heat shields were comprised of two pieces of metal

22 "sandwiching" an asbestos-containing component that resembled a thick fibrous material. The

23 metal pieces did not completely cover the asbestos-containing component in the center; the corners

24 and edges of the asbestos-containing component were visible and could be touched and were

25 disturbed every time they were removed. The corners and edges were often frayed and

26 deteriorating. The heat shields were attached with either clamps, bolts, clips or ties. The heat

27 shields were removed to access the pneumatic systems. This required that the bolts be removed

28 with a ratchet and sockets; removal of the bolts created dust all over the bolts as well as dust

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

AHUSTON/692307.1

Ex.: 37; p.: 1692

1  falling from the holes where the bolts entered the asbestos-containing component. A screwdriver

2  was used to pry the clamps away from the asbestos-containing component which also caused dusty

3  conditions from the asbestos-containing component. The metal sheeting on the heat shields often

4  expanded and caused the metal to stick. Hammers were used to jar the heat shields loose, which

5  process also created dusty conditions from the asbestos-containing component. The reinstallation

6  of the heat shields also caused dusty conditions. The actions of removal, unbolting, prying,

7  hammering and reinstallation released airborne asbestos fibers, which were then free to expose

8  plaintiff Timothy Vest, through their release during these activities as well as through their re-

9  entrainment into the area and his breathing zone through clean up, movement, walking and air

10  currents.

11        Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

12  given the pending nature of defendant's responses to plaintiffs' discovery as well as the

13  depositions scheduled of defendant's current and former employees. Discovery and investigation

14  are continuing.

15  **RESPONSE TO INTERROGATORY NO. 6.**

16        Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

17  §2030.220(c), plaintiffs respond: McDonnell Douglas manufactured all DC-8 and DC-10 aircraft

18  according to defendant's website www.boeing.com. McDonnell Douglas also admits in its June

19  14, 2010 responses to plaintiffs' standard interrogatories that it assembled the DC-8 and DC-10

20  aircraft at issue in this case. Plaintiffs do not contend that McDonnell Douglas manufactured

21  Dexter Corporation's EA911F, EA934, EA934 and EA9309 epoxies. Plaintiffs do not know if

22  McDonnell Douglas manufactured the heat shields on the aircraft at issue in this case.

23        Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

24  given the pending nature of defendant's responses to plaintiffs' discovery as well as the

25  depositions scheduled of defendant's current and former employees. Discovery and investigation

26  are continuing.

27  ///

28  ///

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES      8

AHUSTON/692307.1

Ex.: 37; p.: 1693

1 **RESPONSE TO INTERROGATORY NO. 8.**

2  Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

3 §2030.220(c), plaintiffs respond: Regarding McDonnell Douglas' supply of aircraft to World

4 Airways, Warren Vest testified that at least three of the DC-8s came from McDonnell Douglas to

5 World Airways without being operated by another operator, and nine of the DC-10s came directly

6 from McDonnell Douglas. As for the remainder of the McDonnell Douglas aircraft at World

7 Airways, plaintiffs do not know if McDonnell Douglas directly supplied any of them to World or

8 not. Regarding McDonnell Douglas' supply of aircraft to Continental, plaintiffs do not know if

9 McDonnell Douglas directly supplied any of them to Continental or not. Regarding McDonnell

10 Douglas' supply of aircraft to Emery Worldwide, plaintiffs do not know if McDonnell Douglas

11 directly supplied them to Emery or not.

12  Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

13 given the pending nature of defendant's responses to plaintiffs' discovery as well as the

14 depositions scheduled of defendant's current and former employees. Discovery and investigation

15 are continuing.

16 **RESPONSE TO INTERROGATORY NO. 9.**

17  Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

18 §2030.220(c), plaintiffs respond: World Airways, Hangar M-110, Oakland, California from

19 approximately 1973-1983; Continental Airlines, Los Angeles International Airport, Los Angeles,

20 California from approximately 1985-1987; Emery Worldwide Airlines, Dayton, Ohio, John F.

21 Kennedy International, New York, New York, Los Angeles International Airport, TIMCO in

22 Greensboro, North Carolina, Bradley International Airport in Connecticut, Macon Airport in

23 Macon, Georgia, and Smyrna, Tennessee from 1990-1999, which also included flights to Kigali,

24 Rwanda, Dhahran, Kuwait City, Moscow, Kiev, Chernobyl, Guam, Japan, Yokota Air Force Base,

25 Honolulu, the Philippines, Alaska and Asia. Plaintiffs cannot be more specific as to the date and

26 time when each exposure to each aircraft, aircraft component or part or other product

27 manufactured or supplied by defendant occurred.

28  Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES

Ex.: 37; p.: 1694

1  given the pending nature of defendant's responses to plaintiffs' discovery as well as the

2  depositions scheduled of defendant's current and former employees. Discovery and investigation

3  are continuing.

4  **RESPONSE TO INTERROGATORY NO. 10.**

5      Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

6  §2030.220(c), plaintiffs respond: World Airways, Hangar M-110, Oakland, California;

7  Continental Airlines Satellite 6 (now called Terminal 6), flightline and Continental hangar located

8  between runway 25 right and runway 24 left, Los Angeles International Airport, Los Angeles,

9  California; Emery Worldwide Airlines, Dayton, Ohio, John F. Kennedy International, New York,

10  New York, Los Angeles International Airport, TIMCO in Greensboro, North Carolina, Bradley

11  International Airport in Connecticut, Macon Airport in Macon, Georgia, and Smyrna, Tennessee

12  from 1990-1999, which also included flights to Kigali, Rwanda, Dhahran, Kuwait City, Moscow,

13  Kiev, Chernobyl, Guam, Japan, Yokota Air Force Base, Honolulu, the Philippines, Alaska and

14  Asia. Plaintiffs cannot be more specific as to where each exposure to defendant's aircraft, aircraft

15  components or parts or other products manufactured or supplied by McDonnell Douglas.

16      Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

17  given the pending nature of defendant's responses to plaintiffs' discovery as well as the

18  depositions scheduled of defendant's current and former employees. Discovery and investigation

19  are continuing.

20  **RESPONSE TO INTERROGATORY NO. 11.**

21      Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

22  §2030.220(c), plaintiffs respond: Plaintiff Timothy Vest did not himself perform work on

23  defendant's aircraft, aircraft components or parts or other products which plaintiffs currently

24  contend contained asbestos.

25      Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

26  given the pending nature of defendant's responses to plaintiffs' discovery as well as the

27  depositions scheduled of defendant's current and former employees. Discovery and investigation

28  are continuing.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES      10

AHUSTON/692307.1

Ex.: 37; p.: 1695

**RESPONSE TO INTERROGATORY NO. 12.**

Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P. §2030.220(c), plaintiffs respond: Plaintiff Timothy Vest did not himself perform work on defendant's aircraft, aircraft components or parts or other products which plaintiffs currently contend contained asbestos, and thus plaintiffs have no information responsive to this interrogatory.

Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses given the pending nature of defendant's responses to plaintiffs' discovery as well as the depositions scheduled of defendant's current and former employees. Discovery and investigation are continuing.

**RESPONSE TO INTERROGATORY NO. 14.**

Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P. §2030.220(c), plaintiffs respond: Plaintiff Timothy Vest did not himself perform work on defendant's aircraft, aircraft components or parts or other products which plaintiffs currently contend contained asbestos, and thus plaintiffs have no documents responsive to this interrogatory.

Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses given the pending nature of defendant's responses to plaintiffs' discovery as well as the depositions scheduled of defendant's current and former employees. Discovery and investigation are continuing.

**RESPONSE TO INTERROGATORY NO. 15.**

Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P. §2030.220(c), plaintiffs respond: Dexter Corporation EA911F, EA934, EA934 and EA9309 epoxies were used as adhesives on the new construction and repair of the McDonnell Douglas aircraft. These products were suitable for bonding to and bonding together a number of substrates, including aluminum, metal and fiberglass. These products were used during new construction of the McDonnell Douglas aircraft to bond items as well as to reinforce joined items, such as being applied to bolts and rivets prior to the bolts and rivets being set. These products were used during maintenance and repair of the aircraft to bond items as well as to reinforce joined items, such as

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

---

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES

11

AHUSTON/692307.1

Ex.: 37; p.: 1696