1   being applied to bolts and rivets prior to the bolts and rivets being set. This included application to
2   build up surfaces for fuel pumps, filling in worn bearing journals, small repairs, core-splicing,
3   filling in wear areas, filling in holes in honeycomb panels, filling in damages on engine inlet cowl
4   areas, and filling in dimples and dents on the aircraft exteriors and aircraft radomes. After
5   application and after the product set and cured, it was machined and sanded smooth. These
6   products had to be removed by grinding and sanding once they set and cured. The actions of
7   machining, grinding and sanding of these products released airborne asbestos fibers, which were
8   then free to expose plaintiff Timothy Vest, through their release during these activities as well as
9   through their re-entrainment into the area and his breathing zone through clean up, movement,
10  walking and air currents.

11      Heat shields were used over hydraulic lines and hot ducts in the pneumatic systems of the
12  McDonnell Douglas aircraft. The heat shields were comprised of two pieces of metal
13  "sandwiching" an asbestos-containing component that resembled a thick fibrous material. The
14  metal pieces did not completely cover the asbestos-containing component in the center; the corners
15  and edges of the asbestos-containing component were visible and could be touched and were
16  disturbed every time they were removed. The corners and edges were often frayed and
17  deteriorating. The heat shields were attached with either clamps, bolts, clips or ties. The heat
18  shields were removed to access the pneumatic systems. This required that the bolts be removed
19  with a ratchet and sockets; removal of the bolts created dust all over the bolts as well as dust
20  falling from the holes where the bolts entered the asbestos-containing component. A screwdriver
21  was used to pry the clamps away from the asbestos-containing component which also caused dusty
22  conditions from the asbestos-containing component. The metal sheeting on the heat shields often
23  expanded and caused the metal to stick. Hammers were used to jar the heat shields loose, which
24  process also created dusty conditions from the asbestos-containing component. The reinstallation
25  of the heat shields also caused dusty conditions. The actions of removal, unbolting, prying,
26  hammering and reinstallation released airborne asbestos fibers, which were then free to expose
27  plaintiff Timothy Vest, through their release during these activities as well as through their re-
28  entrainment into the area and his breathing zone through clean up, movement, walking and air

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES                    12

Ex.: 37; p.: 1697

Case 3:11-cv-00675-SW Document 669-2 Filed 03/03/11 Page 2 of 22

1  currents.

2    Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses
3  given the pending nature of defendant's responses to plaintiffs' discovery as well as the
4  depositions scheduled of defendant's current and former employees. Discovery and investigation
5  are continuing.

6  **RESPONSE TO INTERROGATORY NO. 16.**

7    Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.
8  §2030.220(c), plaintiffs respond: Dexter Corporation EA911F, EA934, EA934 and EA9309
9  epoxies were used as adhesives on the new construction and repair of the McDonnell Douglas
10  aircraft. These products were suitable for bonding to and bonding together a number of substrates,
11  including aluminum, metal and fiberglass. These products were used during new construction of
12  the McDonnell Douglas aircraft to bond items as well as to reinforce joined items, such as being
13  applied to bolts and rivets prior to the bolts and rivets being set. These products were used during
14  maintenance and repair of the aircraft to bond items as well as to reinforce joined items, such as
15  being applied to bolts and rivets prior to the bolts and rivets being set. This included application to
16  build up surfaces for fuel pumps, filling in worn bearing journals, small repairs, core-splicing,
17  filling in wear areas, filling in holes in honeycomb panels, filling in damages on engine inlet cowl
18  areas, and filling in dimples and dents on the aircraft exteriors and aircraft radomes. After
19  application and after the product set and cured, it was machined and sanded smooth. These
20  products had to be removed by grinding and sanding once they set and cured. The actions of
21  machining, grinding and sanding of these products released airborne asbestos fibers, which were
22  then free to expose plaintiff Timothy Vest, through their release during these activities as well as
23  through their re-entrainment into the area and his breathing zone through clean up, movement,
24  walking and air currents.

25    Heat shields were used over hydraulic lines and hot ducts in the pneumatic systems of the
26  McDonnell Douglas aircraft. The heat shields were comprised of two pieces of metal
27  "sandwiching" an asbestos-containing component that resembled a thick fibrous material. The
28  metal pieces did not completely cover the asbestos-containing component in the center; the corners

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

AHUSTON/692307.1

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES                13

Ex.: 37; p.: 1698

1  and edges of the asbestos-containing component were visible and could be touched and were

2  disturbed every time they were removed. The corners and edges were often frayed and

3  deteriorating. The heat shields were attached with either clamps, bolts, clips or ties. The heat

4  shields were removed to access the pneumatic systems. This required that the bolts be removed

5  with a ratchet and sockets; removal of the bolts created dust all over the bolts as well as dust

6  falling from the holes where the bolts entered the asbestos-containing component. A screwdriver

7  was used to pry the clamps away from the asbestos-containing component which also caused dusty

8  conditions from the asbestos-containing component. The metal sheeting on the heat shields often

9  expanded and caused the metal to stick. Hammers were used to jar the heat shields loose, which

10  process also created dusty conditions from the asbestos-containing component. The reinstallation

11  of the heat shields also caused dusty conditions. The actions of removal, unbolting, prying,

12  hammering and reinstallation released airborne asbestos fibers, which were then free to expose

13  plaintiff Timothy Vest, through their release during these activities as well as through their re-

14  entrainment into the area and his breathing zone through clean up, movement, walking and air

15  currents.

16  Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

17  given the pending nature of defendant's responses to plaintiffs' discovery as well as the

18  depositions scheduled of defendant's current and former employees. Discovery and investigation

19  are continuing.

20  **RESPONSE TO INTERROGATORY NO. 18.**

21  Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

22  §2030.220(c), plaintiffs respond: Plaintiffs identify the following depositions: Timothy Vest

23  taken March 8-10 and October 21, 2010 in *Vest v. Allied Packing & Supply, Inc., et al.*, Alameda

24  County Superior Court Case No. RG09489518, reported respectively by Renee Willis and

25  Kimberly Hendershott, Aiken & Welch (510)451-1580; Warren Vest taken August 19-20, 2010 in

26  *Vest v. Allied Packing & Supply, Inc., et al.*, Alameda County Superior Court Case No.

27  RG09489518, reported by Kimberly Jensen, Aiken & Welch (510)451-1580; Robert Walker taken

28  June 19, 2003 in *Snyder, et al. v. Owens Corning, et al.*, Alameda County Superior Court No.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES                    14

AHUSTON/692307.1

1  793899-9, reported by Maryann H. Valenoti, CSR No. 11266, Legalink (800)826-0277; Dexter

2  employee William Williams taken October 17, 1995 in *Dye v. Abex Corporation, et al.*, San

3  Francisco Superior Court Case No. 966343, reported by Elizabeth K. Robertson, CSR No. 9506,

4  Aiken & Welch (510)451-1580; Dexter employee Stanley Lehmann taken May 21, 2003 in

5  *Gaylord v. Asbestos Defendants (BHC)*, San Francisco Superior Court Case No. 321545, reported

6  by Amanda Blomstrom, CSR No. 12681; Dexter employee Douglas Eisner taken May 15, 1991 in

7  *Gaylord v. Abex Corporation, et al.*, San Francisco Superior Court Case No. 891562, reported by

8  Janet M. McCleary, CSR No. 3003, Aiken & Welch (510)451-1580, July 20, 1992 in *Kraus v.*

9  *Abex Corporation, et al.*, Los Angeles Superior Court Case No. C669221, reported by Joan Marie

10  Columbini, CSR No. 5435, Tooker & Antz (415)392-0650, February 11, 1994 in *Ahrendt v. Abex*

11  *Corporation, et al.*, San Francisco Superior Court Case No. 953895, reported by Sandra

12  Beechinor, CSR No. 3388, Tooker & Antz (415)392-0650, and taken October 5, 1995 in *Dye v.*

13  *Abex Corporation, et al.*, San Francisco Superior Court Case No. 966343, reported by Elizabeth K.

14  Robertson, Aiken & Welch (510)451-1580; and McDonnell Douglas employee John T. Gross

15  taken November 1, 2002 in *Dickerman v. Asbestos Defendants (BHC)*, San Francisco Superior

16  Court Case No. 990350, reported by Vera Novak, CSR No. 5603, Paulson Reporting Service

17  (619)239-4111.

18      Plaintiffs further identify the following documents attached as Exhibits to plaintiffs'

19  Responses to defendant's Requests for Production of Documents, Set One, served herewith:

20  Exhibit A – Henkel Loctite Corporation's Supplemental Responses to Plaintiffs' Interrogatories,

21  Set One in Snyder v. Owens Corning, et al., Alameda County Superior Court Case No. 793899;

22  Exhibit B – Dexter invoices to McDonnell Douglas Corporation; Exhibit C – Dexter invoices to

23  World Airways, Inc.; Exhibit D – January 24, 1977 letter from Dexter Hysol Division to

24  customers; Exhibit E – June 29, 2001 Declaration of Herbert Lee Holland; Exhibit F – Dexter

25  Hysol Division bulletins EA911F; Exhibit G – Dexter Hysol Division sales records of sales of

26  EA911F to McDonnell Douglas; Exhibit H – Material Safety Data Sheets Dexter Hysol Division

27  EA911F Part B; Exhibit I – Material Safety Data Sheets Dexter Hysol Division EA911F Part A;

28  Exhibit J – Dexter Hysol Division bulletins EA934; Exhibit K – Dexter Hysol Division component

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

AHUSTON/692307.1

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES                    15

1 description EA934 Part A; Exhibit L – Material Safety Data Sheets Dexter Hysol Division EA934

2 Part A; Exhibit M – Material Safety Data Sheets Dexter Hysol Division EA9309 Part A; Exhibit N

3 – October 22, 1992 All Operator Letter.

4     Plaintiffs further identify defendant's April 15, 2010 Responses to Plaintiffs' Standard

5 "Dieden" Interrogatories, June 14, 2010 Supplemental Responses to Plaintiffs' Standard "Dieden"

6 Interrogatories, and all responses to plaintiffs' discovery in the instant matter.

7     Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

8 given the pending nature of defendant's responses to plaintiffs' discovery as well as the

9 depositions scheduled of defendant's current and former employees. Discovery and investigation

10 are continuing.

11 **RESPONSE TO INTERROGATORY NO. 19.**

12     Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

13 §2030.220(c), plaintiffs respond: Plaintiff Timothy Vest was exposed to defendant's asbestos-

14 containing products as a child and teenager at the World Airways Hangar M-110, Oakland,

15 California from approximately 1973-1983. Timothy Vest's father, Warren Vest, worked out of

16 offices in Hangar M-110, and Timothy Vest went to the facility with his father on weekends

17 approximately twice a month. Timothy Vest played in the maintenance hanger, where World's

18 aircraft were maintained and repaired, and was in close proximity to and saw mechanics working

19 on the aircraft. These aircraft included approximately six McDonnell Douglas DC-8-63CF aircraft

20 with tail numbers N801WA, N802WA, N803WA, N804WA, N805WA and N806WA, and

21 approximately ten McDonnell Douglas DC-10-30CF aircraft with tail numbers N803WA,

22 N804WA, N805WA, N806WA, N807WA, N808WA, N809WA, N810WA, N811WA, N812WA

23 and N813WA. Plaintiffs are aware of additional aircraft tail numbers, but are unable to disclose

24 them in this response due to defendant's insistence on a confidentiality agreement concerning

25 same. Further, plaintiffs' father Warren Vest spent a lot of time in the maintenance hangar making

26 sure progress was being made on the work on World's aircraft. He was there at least once a day,

27 and some days was in and out of the area many times. The aircraft at World were worked on 7

28 days a week, 24 hours a day, and defendant's asbestos-containing products were removed,

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES     16

AHUSTON/692307.1

1   disturbed and replaced during this work. This work went on whether or not Timothy Vest was

2   present, and the build up and accumulation of asbestos fiber was ongoing. Timothy Vest was thus

3   also exposed to defendant's asbestos fibers brought home on a daily basis on Warren Vest's person

4   and clothing as well as brought into the family car.

5         Plaintiff Timothy Vest was also exposed to defendant's asbestos-containing products while

6   working as a ramp agent for Continental Airlines, Satellite 6 (now called Terminal 6), flightline

7   and Continental hangar located between runway 25 right and runway 24 left, Los Angeles

8   International Airport, Los Angeles, California from 1985-1987. His duties put him adjacent and in

9   close proximity to the work of mechanics performing engine work on defendant's aircraft, which

10   work included the removal of cowling and heat shields. Plaintiff Timothy Vest recalls defendant's

11   DC-10 with the tail number 046 at this site. Plaintiffs do not know the tail numbers for any other

12   of defendant's aircraft at this site.

13         Plaintiff Timothy Vest was also exposed to defendant's asbestos-containing products while

14   working as a pilot for Emery Worldwide Airlines from 1990 to 2001, a cargo airline. Emery

15   operated approximately 40 DC-8s and 10 DC-10s, which included DC-8s – 45801 DC-8-54F,

16   45812 DC-8-71F, 45884 DC-8-54F, 45901 DC-8-63F, 45903 DC-8-63F, 45941 DC-8-71F, 45947

17   DC-8-71F, 45956 DC-8-62F, 45974 DC-8-71F, 45975 DC-8-71F, 45977 DC-8-71F, 45983

18   DC-8-71F, 45991 DC-8-73F, 45995 DC-8-71F, 45996 DC-8-71F, 45997 DC-8-71F, 46000

19   DC-8-63F, 46003 DC-8-73F, 46024 DC-8-62F, 46028 DC-8-62F, 46039 DC-8-71F, 46044

20   DC-8-73F, 46045 DC-8-73F, 46046 DC-8-73F, 46047 DC-8-73F, 46054 DC-8-63F, 46061

21   DC-8-63F, 46062 DC-8-73F, 46063 DC-8-73F, 46068 DC-8-62F, 46086 DC-8-73F, 46087

22   DC-8-63F, 46088 DC-8-63F, 46091 DC-8-73F, 46092 DC-8-63F, 46095 DC-8-73F, 46099

23   DC-8-71F, 46103 DC-8-73F, 46104 DC-8-73F, 46106 DC-8-73F, 46133 DC-8-73F, 46137

24   DC-8-63F, 46139 DC-8-62F, 46143 DC-8-63F, 46145 DC-8-63F, 46149 DC-8-73F, 46154

25   DC-8-62F, 46162 DC-8-62F, 46163 DC-8-63F; and DC-10s – 46900 DC-10-10F, 46901

26   DC-10-10F, 46902 DC-10-10F, 46903 DC-10-10F, 46936 DC-10-30F, 46937 DC-10-30F, 47801

27   DC-10-10F, 47816 DC-10-30F. Plaintiffs are aware of additional aircraft tail numbers, but are

28   unable to disclose them in this response due to defendant's insistence on a confidentiality

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES     17

AHUSTON/692307.1

Ex.: 37; p.: 1702

1    agreement concerning same. Plaintiff Timothy Vest worked out of and flew out of Dayton, Ohio,

2    John F. Kennedy International, New York, New York, Los Angeles International Airport, TIMCO

3    in Greensboro, North Carolina, Bradley International Airport in Connecticut, Macon Airport in

4    Macon, Georgia, and Smyrna, Tennessee, and also had flights to Kigali, Rwanda, Dhahran,

5    Kuwait City, Moscow, Kiev, Chernobyl, Guam, Japan, Yokota Air Force Base, Honolulu, the

6    Philippines, Alaska and Asia. Mr. Vest flew all over the world, including to countries without

7    maintenance facilities. The crew brought fly away kits on these trips, as well as a mechanic in

8    case the aircraft got stuck somewhere without appropriate maintenance facilities. Timothy Vest

9    was present while aircraft mechanics maintained and repaired the McDonnell Douglas aircraft.

10    Timothy Vest observed the repair and patching of radomes with epoxy that was sanded once it set,

11    saw the repair of honeycomb on the radomes, and worked around engine maintenance, repair and

12    changes, which required the removal of the cowling and heat shields, and saw sheet metal repairs

13    on the aircraft exteriors.

14        The McDonnell Douglas aircraft at World, Continental and Emery contained Dexter

15    Corporation EA911F, EA934, EA934 and EA9309 epoxies used as adhesives on the new

16    construction and repair of these aircraft. EA911F was a two part epoxy that cured at room

17    temperature. Both parts (Part A and Part B) came in paste form, with Part A being yellow in color

18    and Part B being dark grey in color. Both Parts A and B contained chrysotile asbestos through at

19    least 1989; the percentage of chrysotile asbestos in Part A is unknown, while Part B contained

20    10% chrysotile asbestos. The product came in yellow and black packaging. EA934 was a two part

21    epoxy. Part A was a gray epoxy paste and Part B was an amber liquid amine curing agent. Part A

22    contained 14% chrysotile asbestos through at least 1989. The product came in yellow and black

23    packaging. EA9309 was a two part paste epoxy. Part A contained 2% chrysotile asbestos through

24    at least 1986. The product came in yellow and black packaging.

25        These products were suitable for bonding to and bonding together a number of substrates,

26    including aluminum, metal and fiberglass. The products were used during new construction of the

27    aircraft to bond items as well as to reinforce joined items, such as being applied to bolts and rivets

28    prior to the bolts and rivets being set. The products were used during maintenance and repair of

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A PROFESSIONAL LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 485-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES      18

Ex.: 37; p.: 1703

1   the aircraft to bond items as well as to reinforce joined items, such as being applied to bolts and

2   rivets prior to the bolts and rivets being set.  This included application to build up surfaces for fuel

3   pumps, filling in worn bearing journals, small repairs, core-splicing, filling in wear areas, filling in

4   holes in honeycomb panels, filling in damages on engine inlet cowl areas, and filling in dimples

5   and dents on the aircraft exteriors and aircraft radomes.  After application and after the product set

6   and cured, it was machined and sanded smooth.  These products had to be removed by grinding

7   and sanding once they set and cured.  The actions of machining, grinding and sanding of these

8   products by the World, Continental and Emery aircraft mechanics released airborne asbestos

9   fibers, which were then free to expose plaintiff Timothy Vest, through their release during these

10  activities as well as through their re-entrainment into the area and his breathing zone through clean

11  up, movement, walking and air currents.

12          The McDonnell Douglas aircraft at World, Continental and Emery contained heat shields

13  used over hydraulic lines and hot ducts in the pneumatic systems of the aircraft.  Plaintiffs do not

14  currently know the manufacturer of these heat shields.  The heat shields are comprised of two

15  pieces of metal "sandwiching" an asbestos-containing component that resembled a thick fibrous

16  material.  The heat shields ranged in color from greyish white to grey and were attached with either

17  clamps, bolts, clips or ties.  The heat shields ranged in size, and included shields that were 3 to 6'

18  long and approximately 6" wide.  Plaintiffs do not know the model number or part numbers for the

19  heat shields, do not know how long they were manufactured with an asbestos-containing

20  component, and do not know the type or percentage of asbestos that was in the asbestos-containing

21  component.

22          The metal pieces on the heat shields did not completely cover the asbestos-containing

23  component in the center; the corners and edges of the asbestos-containing component were visible

24  and could be touched and were disturbed every time they were removed.  The corners and edges

25  were often frayed and deteriorating.  The heat shields were attached with either clamps, bolts, clips

26  or ties.  The heat shields were removed to access the pneumatic systems.  This required that the

27  bolts be removed with a ratchet and sockets; removal of the bolts created dust all over the bolts as

28  well as dust falling from the holes where the bolts entered the asbestos-containing component.  A

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES            19

AHUSTON/692307.1

1  screwdriver was used to pry the clamps away from the asbestos-containing component which also

2  caused dusty conditions from the asbestos-containing component. The metal sheeting on the heat

3  shields often expanded and caused the metal to stick. Hammers were used to jar the heat shields

4  loose, which process also created dusty conditions from the asbestos-containing component. The

5  reinstallation of the heat shields also caused dusty conditions. The aircraft mechanic's at World,

6  Continental and Emery actions of removal, unbolting, prying, hammering and reinstallation

7  released airborne asbestos fibers, which were then free to expose plaintiff Timothy Vest, through

8  their release during these activities as well as through their re-entrainment into the area and his

9  breathing zone through clean up, movement, walking and air currents.

10      Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

11  given the pending nature of defendant's responses to plaintiffs' discovery as well as the

12  depositions scheduled of defendant's current and former employees. Discovery and investigation

13  are continuing.

14  **RESPONSE TO INTERROGATORY NO. 21.**

15      Based upon a reasonable and good faith effort to obtain information pursuant to C.C.P.

16  §2030.220(c), plaintiffs respond: Plaintiffs identify the following depositions: Timothy Vest

17  taken March 8-10 and October 21, 2010 in *Vest v. Allied Packing & Supply, Inc., et al.*, Alameda

18  County Superior Court Case No. RG09489518, reported respectively by Renee Willis and

19  Kimberly Hendershott, Aiken & Welch (510)451-1580; Warren Vest taken August 19-20, 2010 in

20  *Vest v. Allied Packing & Supply, Inc., et al.*, Alameda County Superior Court Case No.

21  RG09489518, reported by Kimberly Jensen, Aiken & Welch (510)451-1580; Robert Walker taken

22  June 19, 2003 in *Snyder, et al. v. Owens Corning, et al.*, Alameda County Superior Court No.

23  793899-9, reported by Maryann H. Valenoti, CSR No. 11266, Legalink (800)826-0277; Dexter

24  employee William Williams taken October 17, 1995 in *Dye v. Abex Corporation, et al.*, San

25  Francisco Superior Court Case No. 966343, reported by Elizabeth K. Robertson, CSR No. 9506,

26  Aiken & Welch (510)451-1580; Dexter employee Stanley Lehmann taken May 21, 2003 in

27  *Gaylord v. Asbestos Defendants (BHC)*, San Francisco Superior Court Case No. 321545, reported

28  by Amanda Blomstrom, CSR No. 12681; Dexter employee Douglas Eisner taken May 15, 1991 in

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES          20

AHUSTON/692307.1

Ex.: 37; p.: 1705

1   *Gaylord v. Abex Corporation, et al.,* San Francisco Superior Court Case No. 891562, reported by

2   Janet M. McCleary, CSR No. 3003, Aiken & Welch (510)451-1580, July 20, 1992 in *Kraus v.*

3   *Abex Corporation, et al.,* Los Angeles Superior Court Case No. C669221, reported by Joan Marie

4   Columbini, CSR No. 5435, Tooker & Antz (415)392-0650, February 11, 1994 in *Ahrendt v. Abex*

5   *Corporation, et al.,* San Francisco Superior Court Case No. 953895, reported by Sandra

6   Beechinor, CSR No. 3388, Tooker & Antz (415)392-0650, and taken October 5, 1995 in *Dye v.*

7   *Abex Corporation, et al.,* San Francisco Superior Court Case No. 966343, reported by Elizabeth K.

8   Robertson, Aiken & Welch (510)451-1580; and McDonnell Douglas employee John T. Gross

9   taken November 1, 2002 in *Dickerman v. Asbestos Defendants (BHC),* San Francisco Superior

10   Court Case No. 990350, reported by Vera Novak, CSR No. 5603, Paulson Reporting Service

11   (619)239-4111.

12       Plaintiffs further identify the following documents attached as Exhibits to plaintiffs'

13   Responses to defendant's Requests for Production of Documents, Set One, served herewith:

14   Exhibit A – Henkel Loctite Corporation's Supplemental Responses to Plaintiffs' Interrogatories,

15   Set One in Snyder v. Owens Corning, et al., Alameda County Superior Court Case No. 793899;

16   Exhibit B – Dexter invoices to McDonnell Douglas Corporation; Exhibit C – Dexter invoices to

17   World Airways, Inc.; Exhibit D – January 24, 1977 letter from Dexter Hysol Division to

18   customers; Exhibit E – June 29, 2001 Declaration of Herbert Lee Holland; Exhibit F – Dexter

19   Hysol Division bulletins EA911F; Exhibit G – Dexter Hysol Division sales records of sales of

20   EA911F to McDonnell Douglas; Exhibit H – Material Safety Data Sheets Dexter Hysol Division

21   EA911F Part B; Exhibit I – Material Safety Data Sheets Dexter Hysol Division EA911F Part A;

22   Exhibit J – Dexter Hysol Division bulletins EA934; Exhibit K – Dexter Hysol Division component

23   description EA934 Part A; Exhibit L – Material Safety Data Sheets Dexter Hysol Division EA934

24   Part A; Exhibit M – Material Safety Data Sheets Dexter Hysol Division EA9309 Part A; Exhibit N

25   – October 22, 1992 All Operator Letter.

26       Plaintiffs further identify defendant's April 15, 2010 Responses to Plaintiffs' Standard

27   "Dieden" Interrogatories, June 14, 2010 Supplemental Responses to Plaintiffs' Standard "Dieden"

28   Interrogatories, and all responses to plaintiffs' discovery in the instant matter.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES      21

AHUSTON/692307.1

Ex.: 37; p.: 1706

1       Plaintiffs reserve their right under C.C.P. § 2030.310 to further supplement these responses

2   given the pending nature of defendant's responses to plaintiffs' discovery as well as the

3   depositions scheduled of defendant's current and former employees. Discovery and investigation

4   are continuing.

5   DATED: November 9, 2010            KAZAN, McCLAIN, LYONS,
                                    GREENWOOD & HARLEY

6                                       A Professional Law Corporation

7

8                               By

9                                   Andrea Huston
                                Attorneys for Plaintiffs

10

11   *Verification to Follow*

12

13

14

15

16

17

18

19

20

21

22

23

24

25
26
27
28

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT McDONNELL DOUGLAS
CORPORATION'S FIRST SET OF SPECIAL INTERROGATORIES     22

AHUSTON/692307.1