Exhibit G, Part 53 - McDonnell Douglas Corporation's Opposition to Plaintiffs' Motion to Remand and Exhibits
Case MDL No. 175 Document 669-23 Filed 01/28/11 Page 19 of 24
Case 3:11-cv-00061-JSW Document 1-3 Filed 01/24/11 Page 19 of 24

1  it uses to maintain its airplanes as required by the Federal Aviation Administration ("FAA"). (*See* 14
2  C.F.R. Part 121, Subpart L, 121.367 and 121.369; Fact 55.) Part 121 of the Federal Aviation
3  Regulations requires each operator to develop a maintenance program, which has to be certified by
4  the FAA. (Fact 56.) Operators may create their own maintenance programs and manuals as they see
5  fit by obtaining FAA approval (when required). (Fact 57.) Operators are not required to, and
6  typically do not, consult MDC regarding alterations of their maintenance program. (Fact 58.) They
7  revise their maintenance programs based upon their own operational experience and then submit
8  those changes to their local FAA Principal Maintenance Inspector ("PMI") for approval. (Fact 59.)
9  When the FAA approves a manufacturer's maintenance program for an airplane, it is the minimum
10 initial program, which primarily establishes the scheduled maintenance tasks and intervals for
11 maintaining the airplane. *See* 14 C.F.R. Appendix H to Part 25. (*Id.*)

12     Although MDC may implement revisions to maintenance manuals on an as needed basis,
13 operators are not required to subscribe to the manual's revision schedule and will not receive revisions
14 unless they subscribe. (Fact 60.) If an operator sells an aircraft to another operator, MDC is not
15 involved in the sale and is not obligated to track the plane or the maintenance manuals for it. It is up
16 to the new owner or operator to purchase the manuals from the old operator, from MDC, or develop
17 one themselves pursuant to FAA approval. (Fact 61.) Many times operators will develop numerous
18 customized maintenance manual procedures that are independent of the MDC documents. (*Id.*)

19     Thus, MDC is not responsible for maintenance programs and manuals that World Airways,
20 Inc., Continental Airlines, Inc., and Emery Worldwide Airlines chose to use, especially regarding
21 airplanes obtained from third parties. (Fact 62.)

22 **III.  STANDARD FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

23     "[S]ummary judgment shall be granted if all the papers submitted show that there is no triable
24 issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.
25 Proc. Code § 437c(c). MDC satisfies its burden on summary judgment by showing that "one or more
26 elements of the [plaintiff's] cause of action cannot be separately established" or that there is an
27 "affirmative defense to the cause of action." *Id.* at § 437c(o)(2). MDC can show that one or more
28 elements of a cause of action cannot be established by pointing out to the court the absence of

essential evidence to support those elements. *Union Bank v. Sup. Ct.* (1995) 31 Cal. App. 4th 573, 586 n.7, 590 ("a moving defendant may rely on factually devoid discovery responses to shift the burden of proof pursuant to section 437c, subdivision (o)(2).").

The burden then shifts to Plaintiff to produce admissible evidence showing a triable issue of material fact exists. Civ. Proc. Code §§ 437c(b), (o)(2); *Hunter v. Pacific Mech. Corp.* (1995) 37 Cal. App. 4th 1282, 1286 (disapproved on other grounds by *Aguilar v. Atlantic Richfield Co.*, (2001) 25 Cal. 4th 826). Claims and theories not supported by admissible evidence do not raise a triable issue. See *Rochlis v. Walt Disney Co.* (1993) 19 Cal. App. 4th 201, 217 (disapproved on other grounds by *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal. 4th 1238. If plaintiff fails to meet this burden, summary judgment "shall be granted." Civ. Proc. Code § 437c(c).

In the event the Court does not grant summary judgment, it can nonetheless substantially streamline this action by granting summary adjudication as to "one or more causes of action within an action ...." Civ. Proc. Code § 437c(f)(1). The Court is not constrained to adjudicate the causes of action as Plaintiff has presented them. Instead, separate wrongful acts each give rise to separate causes of action regardless of how they are pleaded. *Edward Finemann v. Sup. Ct.* (1998) 66 Cal. App. 4th 1110, 1115; *Lilienthal & Fowler v. Sup. Ct.* (1993) 12 Cal. App. 4th 1848, 1854. Thus, the Court may summarily adjudicate claims associated with each of Plaintiff's worksites even though Plaintiff has aggregated those worksites into each of his causes of action.

The decision in *Edward Finemann* is on point. There, the Appellate Court upheld summary adjudication on limitations grounds as to plaintiff's claims against a bank for wrongfully paying 23 of 83 forged payroll checks over a six-year time period. *Edward Finemann*, 66 Cal. App. 4th at 1118. The court rejected plaintiff's contention that summary adjudication may not be granted because it would not dispose of an "entire cause of action" as each of plaintiff's three causes of action was based on the wrongful payment of each of the 83 checks. *Id.* at 1115-16. The court reasoned that "just because [plaintiff] has elected to aggregate its claims does not forestall [defendant] from segregating them out" for the purpose of summary adjudication. *Id.* "[W]e hold that under subdivision (f) of section 437c, a party may present a motion for summary adjudication challenging a separate and distinct wrongful act even though combined with other wrongful acts alleged in the same cause of action." *Id.* at 1118.

1 (citing *Lilienthal*, 12 Cal. App. 4th at 1848). Here, despite Plaintiff's attempt to aggregate his separate claims based on asbestos exposure at different worksites into each of his causes of action, the Court may summarily adjudicate each of them.

## IV. PLAINTIFF CANNOT ESTABLISH MEDICAL CAUSATION BECAUSE HE HAS NEVER SUFFERED FROM ASBESTOS-RELATED MESOTHELIOMA

Causation must be proven within a reasonable medical probability based upon competent scientific testimony. *Jones v. Ortho Pharm.* (1985) 163 Cal. App. 3d 396. I.e., "is there a reasonable medical probability based on competent expert testimony that the defendant's conduct contributed to plaintiff's injury." *Lineaweaver v. Plant Ins.* (1995) 31 Cal. App. 4th 1409, 1416. Mere possibility alone is insufficient to establish a *prima facie* case. *Jones*, 163 Cal. App. 3d at 403. To establish reasonable medical probability, a plaintiff must proffer competent expert testimony that plaintiff's exposure to the alleged toxin probably and not possibly caused plaintiff's injury. *Lineaweaver*, 31 Cal. App. 4th at 1416; *Jones*, 163 Cal. App. 3d at 403.

In *Jones*, the court reiterated that medical causation cannot be proven by a mere possibility and such evidence is insufficient to establish a reasonable causal connection between plaintiff's injury and the alleged cause. 163 Cal. App. at 403. This is often the case with such diseases as cancer, where it is often difficult to determine the nature and cause of the disease. *See id.* The trial court granted a nonsuit on grounds that none of plaintiff's medical experts could establish a reasonable causal link between plaintiff's use of an oral contraceptive and her development of a cancerous condition. Whereas one medical expert testified that there was a "reasonable medical possibility," defined at less than a fifty-fifty chance that the drug contributed to the development of plaintiff's condition, the other expert testified that ingestion of the drug "may have been a contributing factor" for the progression of plaintiff's condition. *Id.* at 401.

In affirming the trial court's grant of a nonsuit for defendants, the Appellate Court noted that the evidence relating to any causal connection between plaintiff's condition and her ingestion of the oral contraceptive was "highly conjectural and ambiguous." *Id.* at 403. The Court noted that causation was especially difficult to determine with regard to cancer—the type of injury suffered by plaintiff. *Id.* at 403. The court explained that "under the present scientific knowledge…it is

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

frequently difficult to determine the nature and cause of a particular cancerous growth." *Id.* Given the nature of plaintiff's injury and the multiple possible reasons for its development, the Court held that plaintiff failed to make out a *prima facie* showing of medical causation.

Similarly, here there is no scientific medical proof linking Plaintiff's cancer to asbestos. For purposes of this Motion, MDC will not dispute that Plaintiff contracted LMM. However, Plaintiff's claims fail as a matter of law because there is no scientific medical evidence that LMM is caused by asbestos exposure. (Fact 6.) Instead, LMM is a separate tumor distinct from DMM associated with exposure to asbestos. (Facts 2, 3, 7-9.) The 2004 World Health Organization classification of tumors of the pleura recognized LMM as distinct from DMM. (Fact 3.) Plaintiff's treating physician diagnosed him with LMM, not DMM. (Fact 1.) As explained in various medical studies, articles, and case reports, LMM is not associated with asbestos exposure and there is no scientific medical evidence that LMM is caused by asbestos. (Fact 6.)

Plain and simple, Plaintiff cannot establish by scientific medical probability that his LMM was caused by asbestos exposure. The scientific medical evidence is, at best, inconclusive (no more than 50%) about whether there is a causal link between asbestos exposure and LMM. (Fact 6.) Such evidence fails to satisfy the preponderance of the evidence threshold (51%) required to prove this element of Plaintiff's case. *See Jones*, 163 Cal. App. 3d at 403; *Lineaweaver*, 31 Cal. App. 4th at 1416. Thus, any claim that Plaintiff's LMM was caused by asbestos is unsupported by scientific medical evidence and fails as a matter of law. MDC's Motion should be granted for this reason alone.

## V. PLAINTIFF CANNOT PROVE EXPOSURE TO ASBESTOS IN ANY MDC PRODUCT

### A. General Testimony Regarding Being Around MDC Aircraft Cannot Establish Causation

Plaintiff cannot prove with a reasonable medical probability that he was exposed to airborne asbestos in any MDC product that was a substantial factor in bringing about his alleged injury. a plaintiff alleging an asbestos-related injury has the burden of proving that "there [is] a reasonable medical probability based upon competent expert testimony that the defendant's conduct contributed to the injury." *Lineaweaver*, 31 Cal. App. 4th at 1416. In assessing the medical probability that asbestos

exposure was a "substantial factor," the "[f]requency of exposure, regularity of exposure, and proximity of the asbestos product to the plaintiff" should be considered. *Id.* "In cases claiming personal injury from exposure to toxic substances, it is essential that the plaintiff demonstrate that [he] was, in fact, exposed to harmful levels of such substances." *Abuan v. General Electric*, 3 F.3d 329, 333 (9th Cir. 1993).

The threshold requirement for any asbestos plaintiff is proof of actual exposure to a specific asbestos-containing product for which defendant is responsible. *See McGonnell v. Kaiser Gypsum* (2002) 98 Cal. App. 4th 1098, 1104; *Barlow v. John Crane-Houdaille*, 477 N.W. 2d 133 (Mich. Ct. App. 1991). It is not enough for a plaintiff to merely show that asbestos was present somewhere at the jobsite because that is insufficient to create a triable issue of fact regarding the causal link between the defendant's asbestos-related activities and plaintiff's injuries. *McGonnell v. Kaiser Gypsum* (2002) 98 Cal. App. 4th 1098, 1104-05 (summary judgment affirmed because "[a]ll that exists in this case is speculation that at some time [plaintiff] might have cut into a wall that might have contained [defendant's] joint compound that might have contained asbestos. The evidence creates only a dwindling stream of probabilities that narrow into conjecture."); *Hunter*, 37 Cal. App. 4th at 1289; *Lineaweaver*, 31 Cal. App. 4th at 1424 (concurring opinion) (citing *Roberts v. Owens-Corning Fiberglas*, 726 F. Supp. 172, 174 (W.D. Mich. 1989)). Instead, to prove the requisite actual exposure to a defendant's asbestos-containing product, plaintiff must show that such product was used at the jobsite with sufficient frequency and regularity and that the plaintiff was in proximity to that product at the times it was being used from which asbestos fibers could have traveled to plaintiff's work area so that it is a reasonable medical probability that the foregoing exposure was a substantial factor in causing plaintiff's injuries. *Hunter*, 37 Cal. App. 4th at 1289; *Lineaweaver*, 31 Cal. App. 4th at 1424 (concurring opinion); *Lindstrom v. AC Products Liability Trust*, 264 F. Supp. 2d 583, 590 (N.D. Ohio 2003). Thus, plaintiff must present direct evidence that he inhaled asbestos fibers shed by defendant's product or prove that he worked in such close proximity to such fibers on such a regular basis that inhalation of those fibers can be inferred. *Roberts*, 726 F. Supp. at 174; *Lindstrom*, 264 F. Supp. 2d at 590.

Here, to withstand summary judgment, Plaintiff must present competent evidence that he worked around aircraft or aircraft components manufactured or supplied by MDC, that he worked in

807853\0307472

12

MDC'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION

Ex.: 38; p.: 1724

close proximity to such components on a regular basis over an extended period of time, that such components contained asbestos, and that he inhaled asbestos fibers shed by those components. Evidence that Plaintiff was visiting Hangar 110 while maintenance was being performed on DC-8 and DC-10 airplanes (or was exposed from his father while his father worked there as a pilot), worked as a ramp agent around DC-8 and DC-10 airplanes at Continental, and observed others performing maintenance on various parts of DC-8 and DC-10 aircraft at Emery, does not prove that Plaintiff was exposed to any asbestos from any component manufactured or supplied by MDC.

For example, in *Eckenrod v. GAF*, 544 A.2d 50, 53 (Pa. Super. Ct. 1988), the court upheld summary judgment in favor of defendants because plaintiff could not present evidence "as to the regularity or nature of Decedent's contact with asbestos." Even though asbestos was undoubtedly present in the steel mill in which Decedent had worked for more than twenty years, "[t]he mere fact that appellees' asbestos products came into the facility does not show that the Decedent ever breathed these specific asbestos products or that he worked where these asbestos products were delivered." *Id.* Similarly, the court in *Lohrmann v. Pittsburgh Corning*, 782 F.2d 1156, 1161-64 (4th Cir. 1986), affirmed the district court's entry of directed verdicts in favor of three defendants where plaintiff, a shipyard pipe fitter, proved only that the defendants' products were present at the shipyard when plaintiff worked there. This was insufficient for plaintiff to reach the jury on the issue of causation, since "[t]o support a reasonable inference of causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where plaintiff actually worked." *Id.*

Plaintiff cannot satisfy this threshold element of his case because he cannot establish that an MDC product was a substantial factor, or any factor at all, in causing his illness. Plaintiff was never a mechanic and never performed maintenance work on any aircraft. (Facts 34 and 43.) Plaintiff alleges that he was exposed to asbestos while being in the same area as others who were performing unspecified aircraft maintenance or that his father was in the area where others were performing such maintenance. (Facts 13, 20, 33, 36, 41, and 49.) Plaintiff generally testified regarding being around others while they worked on various parts of MDC's DC-8 and DC-10 airplanes, including brakes and radomes. However, there is no evidence that any of these components contained asbestos, and

critically, there is no evidence any of these components were original, factory installed components manufactured by MDC, or components later supplied by MDC. (Facts 21, 53 and 54.) In fact, the friction components of the DC-8 and DC-10 brakes and the DC-8 radomes did not contain asbestos. (Facts 22, 50, and 51.)

Plaintiff's generic claims that he was exposed to asbestos by being around mechanics performing maintenance are not proof of specifically what work was actually performed, on which particular component, whether the component contained asbestos and was provided by MDC, or, most importantly, whether the work performed on any such component was done in such a manner so as to create airborne asbestos and at a time when Plaintiff or Warren was physically present. Well settled case law makes it clear that it is not enough for a plaintiff to merely show that asbestos was present somewhere at the jobsite. That is, the mere presence of MDC's DC-8 and DC-10 airplanes is insufficient to establish the causal link between Plaintiff's alleged injuries and those airplanes. Rather, Plaintiff must establish evidentiary proof of actual exposure to airborne fibers from a particular asbestos product of MDC. *See, e.g., McGonnell*, 98 Cal. App. 4th at 1104-05. Therefore, to defeat MDC's Motion, it is Plaintiff's burden to present **evidence** showing that he inhaled asbestos fibers from an aircraft component supplied by MDC. *Roberts*, 726 F. Supp. at 174. Plaintiff cannot sustain that burden and summary judgment should be granted.

### B. MDC Is Not Liable for Maintenance, Repair, and Operation of an Operator's Airplanes

#### 1. Replacement Parts

Plaintiff has no evidence that MDC supplied any asbestos-containing part on which he claims he saw work being performed. (Facts 22, 51, 51, 53 and 54.) "Regardless of the theory which liability is predicated upon . . . it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product." *Garcia v. Joseph Vince* (1978) 84 Cal. App. 3d 868, 874; *see also Soule v. General Motors* (1994) 8 Cal. 4th 548, 560. MDC is not responsible for allegedly defective replacement parts that were designed, manufactured, and distributed by component parts manufacturers, and installed by operators outside MDC's control.

Federal regulations confirm that every manufacturer is responsible for its own parts, and not for the parts manufactured by others. The FAA is charged by Congress with promoting air safety. 40 U.S.C. § 44701(a). a component parts manufacturer or PMA holder is required to obtain the design certification for their PMA parts from the FAA. 14 C.F.R. § 21.303(d). By law, the PMA holder is responsible for the continued safety of its own parts: "Each holder of a Parts Manufacturer Approval shall determine that each completed part conforms to the design data and is safe for the installation on type certificated products." 14 C.F.R. § 21.303(k). There is no regulation, or other law, that makes MDC responsible for parts manufactured by others.

Further, "[s]trict liability has never been, and is not now, absolute liability." *Daly v. General Motors* (1978) 20 Cal. 3d 725, 733. Strict liability is premised on the notion that those involved in the marketing enterprise, who reap profits by placing defective products in the stream of commerce, should bear the costs of injuries caused by that product. *Vandermark v. Ford Motor Pumps* (1964) 61 Cal. 2d 256, 262. Courts have consistently held that manufacturers are not strictly liable for defective products which they did not place into the stream of commerce and over which they exercised no control. Manufacturers also have no continuing liability with regard to replacement parts that the manufacturer did not actually supply. *Pridgen v. Parker Hannifin*, 905 A.2d 422, 428, 429 (Pa. Supreme Ct. 2006). MDC is also under no duty to warn about another manufacturer's product. *Taylor v. Elliot Turbomachinery* (2009) 171 Cal. App. 4th 564, 579-580. The duty to warn falls on the manufacturer of the replacement component part. *Baughman v General Motors*, 780 F.2d 1131 (4th Cir. 1984); *Acoba v. General Tire, Inc.*, 92 Haw. 1, 18 (1999).

Here, Plaintiff has no evidence (and cannot proffer any) that he ever worked around any original, factory installed asbestos-containing product attributable to MDC, let alone that he was exposed to airborne asbestos particles from any such product that could have been a substantial factor in his alleged injury. (Facts 21, 22, 38, 39, 46, 47, 51, 51, 53 and 54.) There is no evidence that any allegedly asbestos-containing replacement parts to which Plaintiff claims he was exposed were designed, manufactured, supplied, or distributed by MDC. (*Id.*) Because Plaintiff cannot establish that he ever worked around any original, factory installed asbestos-containing MDC components on its airplanes or any replacement parts attributable to MDC, summary judgment should be granted.

### 2. Maintenance, Repair, and Operations

MDC is a Product Defendant and did not perform any post-delivery maintenance, repair, or operations relating to any of the DC-8 and DC-10 airplanes delivered to World, Continental, or Emery. (Facs 52 and 62.) Such operations were controlled by these companies as required by the FAA. *See* 14 C.F.R. Part 121, Subpart L, 121.367 and 121.369. The entities that actually performed or controlled such activities under FAA certification are liable for their own negligence, if any, and it cannot be imputed to MDC. *Moyer v. Teledyne Continental Motors*, 979 A.2d 336, 348 (Pa. Super. 2009). MDC cannot be found liable on a product liability theory for another entity's alleged negligent maintenance, repair, or operations. *See Soule*, 8 Cal. 4th at 560; *Garcia*, 84 Cal. App. 3d at 874. Further, a manufacturer that provides service information but does not service or repair an allegedly defective part does not "act[] in any capacity other than as a manufacturer." *Burroughs v. Precision Airmotive* (2000) 78 Cal. App. 4th 681, 690.

Here, MDC is a Product Defendant and did not perform maintenance, repair, or operational services on any of the DC-8 or DC-10 airplanes for which Plaintiff claims he was exposed. (Facts 12, 52, and 53.) MDC likewise had no control over the operator's maintenance, repair, or operations. (Facts 55-62.) Therefore, Plaintiff cannot base any cause of action against MDC on such services.

## VI. PLAINTIFF'S SPOUSE'S LOSS OF CONSORTIUM FAILS WITH HIS CAUSES OF ACTION

Plaintiff's spouse Caroline Vest's loss of consortium cause of action must stand or fall with Plaintiff's causes of action because it is a derivative claim. *Allen v. Toten* (1985) 172 Cal. App. 3d 1079, 1084. Because Plaintiff is unable to state any cause of action against MDC as shown above, Mrs. Vest's loss of consortium claim similarly fails.

## VII. THE COURT SHOULD ALTERNATIVELY GRANT SUMMARY ADJUDICATION

If the Court does not grant summary judgment, it should alternatively grant summary adjudication on one of more of the following causes of action, which will substantially narrow and streamline this case at trial. The Court has the power to summarily adjudicate each of Plaintiff's claims based on his alleged separate "wrongful acts" and is not constrained to adjudicate the causes of

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

action as pleaded. Civ. Proc. Code § 437c(f); *Edward Finemann*, 66 Cal. App. 4th at 1118.

### A. Plaintiff's Fourth Cause of Action for "Fraud/Failure To Warn" Fails

As demonstrated above, Plaintiff has no evidence that he was exposed to any asbestos-containing product attributable to MDC. Plaintiff's fraud cause of action fails on that ground alone. In addition, Plaintiff has no evidence that MDC committed fraud.

Plaintiff must support his fraud cause of action with facts establishing: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and damages. *Lazar v. Sup. Ct.* (1996) 12 Cal. 4th 631, 638. Additionally, to establish a fraudulent concealment, or "failure to warn," a plaintiff must allege (1) concealment or suppression of a material fact; (2) a duty to disclose; (3) intentional concealment with the intent to defraud; (4) justifiable reliance; and (5) resulting damages. *Blickman Turkus v. MF Downtown Sunnyvale* (2008) 162 Cal. App. 4th 858, 868. Plaintiff must prove that MDC was under a duty to disclose to him that which was concealed." *Id*. Failure to disclose "is not actionable fraud unless there is some fiduciary or confidential relationship giving rise to a duty to disclose. *Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal. App. 4th 863, 866.

There is no special relationship between Plaintiff and MDC, and Plaintiff has no evidence to support any required element. Plaintiff never worked for MDC, never entered into any contractual relationship with MDC; and MDC never had any contact with Plaintiff, made any representations to Plaintiff that are material to this case, or concealed anything it had a duty to disclose. (Fact 63.) Since MDC did not have a special relationship with Plaintiff, did not owe Plaintiff a duty to disclose, and there is no evidence that could establish the required elements of fraud, Plaintiff's fraud cause of action fails as a matter of law, and MDC is entitled to summary judgment.

### B. Plaintiff's Fifth Cause of Action for "Conspiracy To Defraud/Failure to Warn" Fails

As demonstrated above, Plaintiff has no evidence that he was exposed to any asbestos-containing product attributable to MDC. Plaintiff's conspiracy cause of action fails on that ground alone. In addition, Plaintiff has no evidence that MDC was engaged in any conspiracy.

First, civil conspiracy is not an independent tort. *Applied Equip. v. Litton Saudi Arabia* (1994) 7 Cal. 4th 503, 510-11; *Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1228 (9th Cir.

Ex.: 38; p.: 1729

1  1997). Second, to allege conspiracy liability, Plaintiff must show (1) a concert of action between the
2  defendants to accomplish the purpose of the conspiracy, (2) that their actions were illegal and in
3  furtherance of a common scheme or design to achieve the unlawful purpose of the conspiracy, and
4  (3) knowledge of the conspiracy and its unlawful purpose. *Beeler v. City Title Ins.* (1962) 201 Cal. App.
5  2d 702, 707. Plaintiff has no evidence for which to prove these elements; in fact, the SAC fails to
6  even allege them. (*See* SAC.) Further, Plaintiff cannot base this claim on MDC's alleged fraud
7  because, as detailed above, Plaintiff's fraud cause of action fails. And, in the absence of any evidence
8  establishing the required elements of the underlying fraud or the alleged conspiracy – *i.e.*, that MDC
9  acted in concert with any co-defendant "in furtherance of any common scheme or design or had any
10 knowledge of any alleged conspiracy" – MDC is entitled to summary adjudication.

   **C.  Plaintiff's World Airways Claims Fail**

   As demonstrated above, Plaintiff has no evidence that he was exposed to any asbestos-containing product attributable to MDC while visiting World Airways Hangar 110 or suffered asbestos exposure through his father while his father worked at World from 1973 to 1983. (Facts 13-32 and 50-63.) Therefore, the Court should dismiss Plaintiff's claims arising from his visits to, or his father's work at, World Airways pursuant to Code of Civil Procedure Section 437c(f).

   **D.  Plaintiff's Continental Airlines Claims Fails**

   As demonstrated above, Plaintiff has no evidence that he was exposed to any asbestos-containing product attributable to MDC while employed as a ramp agent at Continental Airlines from 1985 to 1987. (Facts 33-40, 50-63.) Thus, the Court should dismiss Plaintiff's claims arising from his employment at Continental from 1985 to 1987 pursuant to Code of Civil Procedure Section 437c(f).

   **E.  Plaintiff's Emery Worldwide Airlines Claims Fails**

   As demonstrated above, Plaintiff has no evidence that he was exposed to any asbestos-containing product attributable to MDC while employed as a pilot at Emery Worldwide from 1990 to 2001. (Facts 41-63.) Thus, the Court should dismiss Plaintiff's claims arising from his employment at Emery Worldwide from 1990 to 2001 pursuant to Code of Civil Procedure Section 437c(f).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

807853\0307472                                18
MDC'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
Ex.: 38; p.: 1730

## VIII. CONCLUSION

For the foregoing reasons, MDC respectfully requests that its Motion for Summary Judgment be granted or, in the alternative, the Court should summarily adjudicate one or more of the issues presented to the Court for adjudication.

Dated: October 29, 2010

Respectfully submitted,

**BRYAN CAVE LLP**
Robert E. Boone III
James C. Pettis
Linda C. Hsu

By: _____
James C. Pettis
Attorneys for Defendant
MCDONNELL DOUGLAS CORPORATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

807853\0307472

19

MDC'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION

Ex.: 38; p.: 1731