1

1

2

3

DISTRICT COURT, SOUTHERN DISTRICT OF ILLINOIS,
STATE OF ILLINOIS

4

5    Civil Action No. 85-5528

6

7    _____

8    CLARA NIEMANN, AMDR of the Estate of
     VINCENT M. NIEMANN,

9
     Plaintiff,

10
     vs.

11
     MCDONNELL DOUGLAS CORP., et al.,

12
     Defendant.

13

14    _____

15

16

            DEPOSITION OF WALTER MELVIN, M.D., Sc.D.

17

                      August 22, 1988

18

19

20    Pursuant to Notice taken on behalf of the
      Plaintiff at 2430 W. Prospect, Fort Collins,

21    Colorado 80525, at 1:40 p.m., before Carol M.
      Hicks, Certified Shorthand Reporter and Notary

22    Public within Colorado.

23

24

25

            A. WILLIAM ROBERTS, JR., & ASSOCIATES

1    aware of the ACGIH standards and threshold limit.
2    values, nobody needed to warn the Air Force that
3    asbestos might pose a hazard to the workplace?
4                    MR. HAMILTON: Objection. That's
5    not a fair statement of product liability law as
6    it exists in the state of Illinois. Ignores the
7    concept of strict liability.
8                    MR. ARCHER: Seemed like a fair
9    question to me.
10                   (The last question was read back.)
11          Q.    (BY MR. DILLON) The point of my
12   question is that the Air Force already knew about
13   the threshold limit values and what dangers might
14   be posed by asbestos.
15          A.    Well, yes.
16          Q.    That's all I was looking for.
17                   MR. DILLON: That's all I have.
18                      EXAMINATION
19   BY MR. ARCHER:
20          Q.    I have just a couple of questions,
21   Doctor. When, based on your recollection or your
22   research in connection with this case, did the Air
23   Force first become aware that exposure to
24   asbestos, under any circumstances, some
25   circumstances, could be hazardous to worker
              A. WILLIAM ROBERTS, JR., & ASSOCIATES

1    health, potentially?

2            A.    The first document that I

3    mentioned, the SAC Technical Pamphlet, 160-2,

4    Environmental Data Book, and so on, contained in

5    its references the reference to, again, Air Force

6    Pamphlet 160-6-1, which was dated in September

7    1953 and contained the TLV reproduction of the

8    TLV--the TLVs, probably for the year 1952.  The

9    publication is dated 1953.

10           Q.    When you say it contained the

11   reproduction of the TLVs, is it true, sir, that

12   the Air Force at that time, by that time, had

13   adopted the threshold limit values established by

14   the American Conference of Governmental Industrial

15   Hygienists for asbestos exposure in Air Force work

16   places?

17           A.    Yes.

18           Q.    Did the Air Force thereafter

19   develop or maintain a program to achieve

20   compliance with those standards?

21           A.    Yes.

22           Q.    In connection with your research in

23   this case, have you reviewed any articles of Dr.

24   Ozonoff's, or cited by him, which reference

25   aircraft maintenance work as a potential asbestos

         A. WILLIAM ROBERTS, JR., & ASSOCIATES

United States District Court

For the Northern District of California

1
2
3
4
5
6
7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   LISA DEWEY, individually, as wrongful          No. C-04-4645 MMC
     death heir and as successor-in-interest to
12   Jessee Dewey, deceased; and KATHERINE          ORDER DENYING PLAINTIFFS' MOTION
     BROWN, as legal heir of Jessee Dewey,          TO REMAND; VACATING HEARING
13   deceased,
                                                    (Docket No. 9)
14              Plaintiffs,

15        v.

16   ASBESTOS DEFENDANTS,

17              Defendants.

18   _____/

19

20        Before the Court is the motion filed November 22, 2004 by plaintiffs Lisa Dewey and

21   Katherine Brown to remand the above-titled action to state court.  Defendant Bell Helicopter

22   Textron Inc. ("Bell") has filed opposition, to which plaintiffs have replied.  Having considered

23   the papers filed in support of and in opposition to the motion, the Court finds the matter

24   appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES

25   the January 7, 2005 hearing.  For the reasons set forth below, the motion is DENIED.

26                                 BACKGROUND

27        The instant action asserts various state law claims seeking damages for the

28

     allegedly asbestos-related death of Jessee Dewey ("Dewey"), who died on September 6,

1 | 2003. Dewey was the spouse of plaintiff Lisa Dewey, and the father of plaintiff Katherine
2 | Brown. Plaintiffs allege that Jessee Dewey was exposed to asbestos partly as a result of
3 | his work as a gunner's mate and trainee in the United States Navy from 1956 through
4 | 1960, and as a military aircraft electrician and mechanic from 1964 through 2001. (See
5 | Compl. Ex. A.) The causes of action asserted against Bell are (1) negligence – survival, (2)
6 | products liability – survival, (3) false representation, (4) loss of consortium, (5) negligence –
7 | wrongful death, and (6) products liability – wrongful death. The action was filed September
8 | 2, 2004 in the California Superior Court for the City and County of San Francisco.

9 |     On November 2, 2004, defendant Bell removed the action to federal court, pursuant
10 | to 28 U.S.C. § 1442(a)(1). Bell alleges, in its notice of removal, that plaintiffs provided
11 | discovery responses stating that Dewey had been exposed to asbestos as a result of his
12 | work on Bell UH-1 and UH-1H military helicopters. (See Notice of Removal ¶ 4.) Bell
13 | further alleges therein that all such helicopters were manufactured and delivered by Bell to
14 | the United States, under the control and direction of federal officers, pursuant to contracts
15 | and specifications mandated by the United States and that, accordingly, Bell is entitled to
16 | remove the action under the federal officer removal statute, § 1442(a)(1). (See id. ¶¶ 4-5.)

17 |                         **OBJECTIONS TO EVIDENCE**

18 |     **A. Bell's Objections**

19 |     Bell objects, on grounds of hearsay, to the exhibits to the Declaration of Nancy B.
20 | Thorington ("Thorington"), which consist of printouts of material about Bell helicopters
21 | obtained from various internet sites. The Court agrees that, in general, this material is
22 | inadmissible hearsay, as the printouts are offered for the truth of the matters asserted
23 | therein concerning the history of the Bell UH-1 and UH-1H helicopters. An exception is the
24 | last page attached to the Thorington declaration, Exhibit G, which is a description of the
25 | Bell 210 helicopter as obtained from Bell's own website. The Court considers any such
26 | statements therein to be admissible as admissions of a party opponent.

27 |     With respect to the remainder of the material in question, Thorington does not
28 | purport to have any personal knowledge as to the creation of the various websites from

2

EX  74  PG  2441

Ex.: 44; p.: 1767

1  which the information was obtained, and, thus has not demonstrated that the statements

2  contained therein are admissions of a party opponent or that they are admissible under the

3  business records exception to the hearsay rule or under any other hearsay exception. See,

4  e.g., United States v. Jackson, 208 F.3d 633, 637 (7th Cir. 2000) (finding internet postings

5  to be inadmissible hearsay).

6      Further, the history of Bell helicopters is not the sort of information of which the

7  Court can take judicial notice, as that history is neither generally known within the

8  jurisdiction of this district nor is it "capable of accurate and ready determination by resort to

9  sources whose accuracy cannot reasonably be questioned." See Fed. R. Ev. 201.[1]

10     Accordingly, Bell's objections to Exhibits A through F to the Thorington Declaration

11 are hereby SUSTAINED, and its objection to Exhibit G is OVERRULED.[2]

12     **B. Plaintiffs' Objections**

13     Plaintiffs object to the portions of the Declaration of Stephen K. Brunk that refer to

14 Baker v. Asbestos Defendants, C-04-2066 SBA, and Crowe v. Asbestos Defendants, C-04-

15 3929 TEH. The Court has not found it necessary to rely on any such statements and,

16 accordingly, does not rule herein on their admissibility.

17 //

18 //

19                        **DISCUSSION**

20     **A. Federal Officer Removal**

21

22     [1] Moreover, the Court notes that Bell's witnesses take issue with the accuracy of numerous statements contained within the printouts submitted by plaintiffs. (See Kaiser
23 Decl. ¶ 7; Wilson Decl. ¶¶ 30-31.)

24     [2] The above-referenced material concerns the question of whether the UH-1 and UH1-H helicopters were based on commercial helicopters previously made by Bell. Even if
25 the Court admitted all of the disputed evidentiary material, the Court's ruling on the merits of the motion would remain the same. As discussed below, whether or not Bell based the
26 design of the UH-1 and UH-1H military helicopters on prior commercial helicopter models, plaintiffs have submitted no evidence that the government did not require the use of
27 asbestos in Bell's military helicopters, and the disputed material submitted by plaintiffs contains no statements about the use of asbestos, or lack thereof, in Bell's prior
28 commercial helicopters.

                               3

EX __76__  PG __2442__

Ex.: 44; p.: 1768

1    Section 1442(a)(1) provides, in relevant part:

2    (a) A civil action . . . commenced in a State court against any of the following
     may be removed by them to the district court of the United States for the
3    district and division embracing the place wherein it is pending:

4        (1) The United States or any agency thereof or any officer (or any
         person acting under that officer) or the United States or of any agency
5        thereof, sued in an official or individual capacity for any act under color of
         such office . . . .
6

7    28 U.S.C. § 1442(a)(1). To establish federal officer removal jurisdiction, the removing party

8    must (1) demonstrate that it acted under the direction of a federal officer, (2) demonstrate a

9    causal nexus between the plaintiff's claims and the acts the defendant performed under

10   color of federal office, and (3) raise a colorable federal defense to the plaintiffs' claims. See

11   Mesa v. California, 489 U.S. 121, 124-25, 134-35 (1989). Corporate entities are "persons"

12   for purposes of § 1442(a)(1). See Winters v. Diamond Shamrock Chemical Co., 149 F.3d

13   387, 398 (5th Cir. 1998).

14              **1. Under Direction of a Federal Officer**

15       A party acts under the direction of a federal officer if the federal officer has "direct

16   and detailed control'" over that party. See Fung v. Abex Corp., 816 F. Supp. 569, 572

17   (N.D. Cal. 1992) (quoting Ryan v. Dow Chemical Co., 781 F. Supp. 934, 946 (E.D.N.Y.

18   1992)). "This control requirement can be satisfied by strong government intervention and

19   the threat that a defendant will be sued in state court 'based upon actions taken pursuant to

20   federal direction.'" Id. (quoting Gulati v. Zuckerman, 723 F. supp. 353 (E.D. Pa. 1989.)) On

21   the other hand, if the removing party establishes only that "'the relevant acts occurred

22   under the general auspices of a federal officer, such as being a participant in a regulated

23   industry, [it] is not entitled to a § 1442(a)(1) removal." See id.

24       In their opening brief, plaintiffs argue that Bell is entitled to removal only if it

25   demonstrates that it was under the "direct and detailed control" of a specific federal officer,

26   rather than under the direct control of the United States or a federal agency. Plaintiffs rely

27   primarily on Good v. Armstrong World Industries, Inc., 914 F. Supp. 1125 (E.D. Pa. 1996).

28   At the time that case was decided, however, the Supreme Court had held that removal

4

EX __76__   PG __ 2443

1   under the federal officer removal statute was not available to the United States or to federal

2   agencies.  See International Primate Protection League v. Administrators of Tulane

3   Educational Fund, 500 U.S. 72, 76 (1991).  In 1996, Congress enacted the Federal Courts

4   Improvement Act of 1996, which amended § 1442 to permit removal by the United States

5   and by federal agencies, thereby effectively abrogating the International Primate decision.

6   See Pub. L. 104-317 (1996); see also State of Nebraska ex rel. Department of Social

7   Services v. Bentson, 146 F.3d 676, 678 (9th Cir. 1998) (recognizing change in law).

8   Consequently, there is no longer any reason to preclude removal under § 1442 by parties

9   acting under the direct control of the United States or a federal agency.[3]

10      Bell submits evidence that the United States government had direct control over the

11  design and production of the UH-1 helicopter and its later variants, including the UH-1H.

12  William T. Wilson ("Wilson"), Bell's former Director of Helicopter Contracts, attests:

13      [I]n accordance with Government contract requirements, the Government was
        directly and intimately involved with development and controlled the design of
14      every aspect of the UH-1 helicopter, including without limitation the types of
        materials used in the helicopters.  Government representatives closely
15      monitored Bell's work at every step in the design process, and Government
        evaluation and approval had to occur at every step.  Bell had little or no
16      leeway in determining the required design of the UH-1 helicopters, including
        the required materials for the component parts.
17

18  (See Wilson Decl. ¶ 18.)  Wilson further attests that hundreds of government personnel

19  were present at Bell's plant during the Vietnam war to ensure that Bell's military helicopters

20  were built according to their specifications, and that since the end of the Vietnam war, "the

21  Government has maintained scores of personnel at Bell's plant to ensure that each military

22  helicopter produced by Bell was built according to specifications and designs reviewed and

23  approved by the Government each and every year."  (See id. at 19.)  Wilson also attests

24  that "[i]f Bell failed to manufacture military UH-1 helicopters in strict compliance with

25  Government specifications, Bell was subject to a variety of penalties under United States

26  law, including civil and criminal sanctions" and that "Bell was not permitted to change

27

28      [3] Plaintiffs did not address the issue in their reply.

5

1  specifications in any way without the express authorization of the government." (See id.

2  ¶ 20.) According to Wilson:

3    The Government accepted all UH-1 helicopters from Bell pursuant to a form
     DD-250 "Materials Inspection and Receiving Report." The Government's
4    authorized signature on the form indicated that each helicopter "conformed to
     the contract except as noted [t]herein on supporting documents." This final
5    inspection and acceptance of each aircraft was the last step in the exhaustive
     inspection process that the Government implemented throughout the design,
6    manufacture, assembly, and packaging process.

7  (See id. ¶ 24.) Wilson expressly attests that the UH-1H was "subject to the same

8  Government design approval requirements as were the predecessor HU-1 and UH-1

9  models." (See id. ¶ 8.)

10       The Court finds that Bell has adequately demonstrated that it acted under the

11 direction of a federal officer in manufacturing the UH-1 and UH-1H helicopter. See, e.g.,

12 Fung, 816 F. Supp. at 572-73 (finding government contractor acted under direction of a

13 federal officer where government monitored contractor's performance at all times and

14 required contractor to construct vessels in accordance with approved specifications

15 incorporated into contracts).

16            **2. Causal Nexus**

17       In order to demonstrate a causal nexus between plaintiffs' claims and the acts Bell

18 performed under color of federal office, Bell must show that the state court action "has

19 arisen out of the acts done by [it] under color of federal authority and in enforcement of

20 federal law, and [it] must by direct averment exclude the possibility that it was based on

21 acts or conduct of his not justified by his federal duty." See Mesa, 489 U.S. at 131-32

22 (quoting Maryland v. Soper (No. 1), 270 U.S. 9, 33 (1926)). This Court and other courts in

23 this district have held that the "causal nexus" requirement is met is an asbestos case when

24 the defendant's use of asbestos in the particular product at issue was compelled by the

25 government rather than being an independent choice of the defendant. See, e.g.,

26 Groombridge v. Asbestos Defendants, C-00-1654 MMC, slip op. at 3-4 (N.D. Cal. June 23,

27 2000); Pippins v. Asbestos Defendants, C-00-1356 WHA, slip op. at 3-4 (N.D. Cal. June 20,

28 2000); Pippins v. Atlas Turner, Inc., C-03-3006 WHA, slip op. at 2-4.

6

EX 76  PG 2445

1    Wilson attests that in the specifications for the XH-40 helicopter, a predecessor to

2  the UH-1 and UH-1H, the United States Air Force required "the use of asbestos in certain

3  seals and gaskets on the stainless steel enclosure that the Government mandated for the

4  engine compartment" in order to prevent any fire in the engine compartment from

5  spreading to the passenger compartment. (See Wilson Decl. ¶ 4.) According to Wilson,

6  the "Detail Specifications"[4] provided by the government for the UH-1 helicopter

7  incorporated a multi-page list of military specifications, known as "mil specs," which

8  "described the characteristics for helicopter parts containing asbestos as required by the

9  Detail Specifications." (See id. ¶ 10.) Wilson further attests:

10    [T]he Government mandated the use of asbestos by Bell in the manufacture
    of UH-1 helicopters to which plaintiffs' decedent in this case was allegedly
11    exposed.  Bell had no discretion in its use of asbestos in those helicopters.
    Had Bell refused to follow Government mandated use of asbestos in those
12    helicopters, it would have been subject to numerous civil and criminal
    penalties.
13

14  (See id. ¶ 29.)

15    Plaintiffs argue that Wilson lacks personal knowledge about the development of the

16  UH-1 helicopter. Plaintiffs point out in their reply that Wilson's statement that he worked for

17  Bell for "more than 32 years before retiring in 2001," (see Wilson Decl. ¶ 1), suggests that

18  he began working for Bell in approximately 1969, long after the UH-1 helicopter was

19  developed. According to Wilson, the HU-1B helicopter was redesignated as the UH-1B in

20  the early 1960s. (See Wilson Decl. ¶ 7.) Plaintiffs argue that Wilson thus lacks personal

21  knowledge of the development of the UH-1 helicopter. Wilson attests, however, that prior

22  to working for Bell, he served as Contracting Officer for the Aeronautical Systems Division

23  of the United States Air Force ("USAF"). (See id. ¶ 1.) Wilson attests that he is "thoroughly

24  familiar with the details of contracting for and developing the UH-1" as a result of his

25  experience at the USAF and Bell. (See id.) Wilson also attests that he participated in

26  _____

27    [4] According to Wilson, the Detail Specifications set forth, among other things, "the
    requirements for the aircraft's speed, structural maneuver characteristics, crash load
28    factors, landing characteristics, and other performance and operations criteria." (See
    Wilson Decl. ¶ 9.)

7

EX $\frac{76}{}$   PG   2446

Ex.: 44; p.: 1772

1  numerous conferences between Bell and United States military representatives dedicated
2  to reviewing design specifications and details of the UH-1 series military helicopters. (See
3  id.) Plaintiffs submit no evidence to the contrary. The Court finds that Wilson has
4  adequately demonstrated his personal knowledge of the events about which he testifies in
5  his declaration.

6     Plaintiffs also note that Bell has submitted no documentation supporting its claim
7  that the United States government required the use of asbestos in the UH-1 and UH1-H
8  helicopters. Although such documentation would add evidentiary weight to Bell's
9  contention that the government required Bell to use asbestos in the manufacture of UH-1
10  helicopters, the Wilson declaration alone is sufficient, in the absence of any evidence to the
11  contrary, to establish that the government required Bell to use asbestos in the manufacture
12  of the UH-1 helicopter. (See Wilson Decl. ¶ 29.)

13     Finally, plaintiffs argue that if the UH-1 and UH1-H helicopters were based on prior
14  commercial helicopter models made by Bell, and Bell used asbestos in such commercial
15  models, Bell would not be able to show that the government required the use of asbestos in
16  the military helicopters Bell manufactured. As discussed above, however, Bell has
17  submitted evidence that the government required Bell to use asbestos in the UH-1 and
18  UH1-H helicopter, (see Wilson Decl. ¶ 29), and Bell's witnesses attest that the UH-1
19  helicopter was not based on Bell's prior commercial helicopter models, but rather "was an
20  original and completely new design built to specifications of the USAF" that had "no
21  predecessor civilian counterparts." (See Kaiser Decl. ¶ 7; see also Wilson Decl. ¶¶ 30-31.)
22  Even if the Court assumes that the UH-1 and UH1-H helicopters were based on Bell's prior
23  commercial helicopter models, plaintiffs have submitted no evidence that those models
24  used any asbestos parts, much less that they used the same asbestos parts as did the
25  UH-1 and UH1-H helicopters.

26     Accordingly, the Court finds that Bell has adequately demonstrated that its use of
27  asbestos in the UH-1 and UH-1H helicopters was mandated by the government and, thus,
28  Bell has satisfied the "causal nexus" requirement for removal under § 1442(a)(1).

8

EX 76    PG 2447

### 3. Colorable Federal Defense

The final requirement necessary for removal under § 1442(a)(1) is the assertion of a colorable federal defense. The removing party need not demonstrate that its federal defense is meritorious in order to establish federal officer jurisdiction; it need only raise a colorable federal defense. See Fung, 816 F. Supp. at 572 (citing Mesa, 489 U.S. at 128).

Bell asserts the "military contractor defense," pursuant to Boyle v. United Technologies Corp., 487 U.S. 500 (1988). The military contractor defense is a federal defense that can provide a basis for removal under § 1442(a)(1). See Winters, 149 F.3d at 400-01.

In Boyle, the Supreme Court held that "[l]iability for design defects in military equipment cannot be imposed [on military contractors], pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." See id. at 512. Under the first prong, "the design feature in question" must have been considered "by a Government officer, and not merely by the contractor itself." See id. "Where the goods ordered by the military are those readily available, in substantially the same form, to commercial users, the military contractor defense does not apply." See In re Hawaii Asbestos Cases, 960 F.2d 806, 811 (9th Cir. 1992). "[S]tripped to its essentials," the Ninth Circuit has noted, "the military contractor's defense under Boyle is to claim, 'The Government made me do it.'" See id. at 813.

As set forth above, Bell has submitted evidence that the United States government set forth detailed specifications for the helicopters Bell built, mandated the use of asbestos in those helicopters, and granted Bell no discretion in its use of asbestos in those helicopters. (See Wilson Decl. ¶¶ 9-10, 29.) Bell has submitted evidence that its UH-1 and UH-1H helicopters were created exclusively for military use and were not based on preexisting civilian helicopter models. (See id. ¶¶ 30-31.) Bell has submitted evidence that government personnel were stationed at Bell's manufacturing plant to ensure that Bell's

9

EX __76__    PG __2448__

1 | military helicopters were built according to specifications and designs approved by the
2 | government, and approved each helicopter, in writing, as it was delivered to the
3 | government. (See id. ¶¶ 18-19, 23-24.) In addition, Bell has submitted evidence that "Bell
4 | was not a manufacturer of asbestos, and Bell possessed no knowledge of the dangers, if
5 | any, concerning the design, materials, painting, and markings for those helicopters and
6 | their component parts which the Government was not already aware of." (See id. ¶ 28.)

7 |     Accordingly, the Court finds that Bell has adequately asserted a colorable federal
8 | defense.

9 |                    **4. All Defendants Need Not Join in Removal**

10 |    Plaintiffs assert that even if Bell has established all of the elements for federal officer
11 | removal, the case nonetheless must be remanded because the other defendants have not
12 | joined in Bell's notice of removal. The Ninth Circuit has held, however, that § 1442
13 | "represents an exception to the general rule (under §§ 1441 and 1446) that all defendants
14 | must join in the removal petition." See Ely Valley Mines, Inc. v. Hartford Accident and
15 | Indemnity Co., 644 F.2d 1310, 1315 (9th Cir. 1981). "Since the federal officer is the only
16 | one entitled to remove under § 1442, he alone can remove without other defendants joining
17 | in the petition, and the entire case is removed to the federal court." Id.

18 |                    **5. Summary**

19 |    In sum, the Court finds that Bell has adequately set forth each of the elements for
20 | federal officer removal, pursuant to 28 U.S.C. § 1442(a)(1).

21 |                    **B. Bell's Request for Sanctions**

22 |    In its opposition, Bell argues that Rule 11 sanctions should be imposed against
23 | plaintiffs, on the ground they knowingly misrepresented the history of the UH-1 helicopter in
24 | connection with their motion to remand. The Civil Local Rules of this district require any
25 | motion for sanctions, regardless of the source of authority invoked, to be filed as a separate
26 | motion. See Civil L.R. 7-8(a). Rule 11 similarly requires a motion for sanctions under that
27 | rule to be "made separately from other motions or requests." See Fed. R. Civ. P. 11(c)(1).
28 |    Accordingly, Bell's request for imposition of Rule 11 sanctions will be denied.

EX $\overline{7\mathcal{6}}$   PG __2449__

Ex.: 44; p.: 1775

1                                **CONCLUSION**

2     For the reasons set forth above,

3     1. Plaintiffs' motion to remand is hereby DENIED.

4     2. Bell's request for imposition of Rule 11 sanctions is DENIED.

5     3. Plaintiffs shall serve a copy of this order on all defendants other than Bell.

6     This order terminates Docket No. 9.

7     **IT IS SO ORDERED.**

                                         /s/ Maxine M. Chesney

8     Dated: January 3, 2005                         MAXINE M. CHESNEY

9                                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EX 76  PG 2450

1  Mark G. Intrieri (SBN 116627)
2  Jessica A. Fakhimi (SBN 184115)
   CHAPMAN & INTRIERI, L.L.P.
3  2236 Mariner Square Drive
   Third Floor, Suite 300
4  Alameda, California 94501-1090
5  Telephone: (510) 864-3600
   Facsimile: (510) 864-3601
6  mintrieri@chapmanandintrieri.com
7  jfakhimi@chapmanandintrieri.com

8  Attorneys for Defendant and Cross-Claimant
   HENKEL CORPORATION, formerly known as
9  HENKEL LOCTITE CORPORATION, and
10 successor-in-interest to certain assets of the former
   DEXTER CORPORATION
11

12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14

15 TIMOTHY VEST and CAROLINE             Case No. 3:11-cv-00061 JSW
   VEST,
16
                                         **CROSS-CLAIM OF HENKEL**
17          Plaintiff,                    **CORPORATION FOR INDEMNITY,**
                                          **APPORTIONMENT, AND**
18 vs.                                    **CONTRIBUTION AND DEMAND**
                                          **FOR JURY TRIAL**
19
   ALLIED PACKING AND SUPPLY, et al.
20                                        Courtroom: Hon. Jeffrey S. White
21          Defendants.                             Courtroom 11, Oakland
   _____/              District Ct.
22                                        Action Removed: January 6, 2011

23
   HENKEL CORPORATION,
24

25
            Cross-Claimant,
26
   vs.
27

28 ALLIED PACKING AND SUPPLY, INC.;

   ─────────────────────────────────────────────────────────────────
   CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY, APPORTIONMENT, AND
   CONTRIBUTION AND DEMAND FOR JURY TRIAL - 3:11-CV-00061 JSW

Ex.: 45; p.: 1777

1  ALTA BUILDING MATERIAL CO.;
   CYPRUS AMAX MINERALS
2  COMPANY, individually, and as successor
   in interest, parent, alter ego and equitable
3  trustee of CYPRUS MINES
   CORPORATION, SIERRA TALC &
4  CHEMICAL COMPANY, UNITED
   SIERRA DIVISION CYPRUS MINES
5  CORPORATION and PAUL W. WOOD
   COMPANY; DEAN'S MATERIALS, INC.
6  dba CONSTRUCTION MATERIAL
   SUPPLIER; DOWMAN PRODUCTS,
7  INC.; F.P. LATHROP CONSTRUCTION
   COMPANY; GARLOCK SEALING
8  TECHNOLOGIES, LLC; GEORGE E.
   MASKER, INC.; GEORGIA-PACIFIC
9  f/k/a GEORGIA-PACIFIC
   CORPORATION; HAMILTON
10 MATERIALS, INC.; HEXCEL
   CORPORATION; HONEYWELL
11 INTERNATIONAL, INC. f/k/a
   ALLIEDSIGNAL, INC., successor-in-
12 interest to THE BENDIX
   CORPORATION; KAISER GYPSUM
13 COMPANY, INC.; KELLY-MOORE
   PAINT COMPANY, INC.; KENTILE
14 FLOORS, INC.; MCDERMOTT/SEALY,
   INC.; MCDONNELL DOUGLAS
15 CORPORATION; PARKER HANNIFIN
   CORPORATION, individually, and as
16 successor in interest, parent, alter ego and
   equitable trustee of CLEVELAND
17 WHEELS & BRAKES; THE PORT OF
   OAKLAND; RAYMOND INTERIOR
18 SYSTEMS-NORTH, individually and
   successor in interest, parent, alter ego and
19 equitable trustee to JAMES L.
   WHITTAKER, INC.; WORLD
20 AIRWAYS, INC., and ROES 1 through
   100, inclusive,
21
22              Cross-Defendants.
23 _____/
24
25
26
27
28

1    HENKEL CORPORATION ("Henkel"), by and for its Cross-Claim against Cross-

2   Defendants ALLIED PACKING AND SUPPLY, INC.; ALTA BUILDING MATERIAL

3   CO.; CYPRUS AMAX MINERALS COMPANY, individually, and as successor in interest,

4   parent, alter ego and equitable trustee of CYPRUS MINES CORPORATION, SIERRA

5   TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION CYPRUS MINES

6   CORPORATION and PAUL W. WOOD COMPANY; DEAN'S MATERIALS, INC. dba

7   CONSTRUCTION MATERIAL SUPPLIER; DOWMAN PRODUCTS, INC.; F.P.

8   LATHROP CONSTRUCTION COMPANY; GARLOCK SEALING TECHNOLOGIES,

9   LLC; GEORGE E. MASKER, INC.; GEORGIA-PACIFIC f/k/a GEORGIA-PACIFIC

10  CORPORATION; HAMILTON MATERIALS, INC.; HEXCEL CORPORATION;

11  HONEYWELL NTERNATIONAL, INC. f/k/a ALLIEDSIGNAL, INC., successor-in-

12  interest to THE BENDIX CORPORATION; KAISER GYPSUM COMPANY, INC.;

13  KELLY-MOORE PAINT COMPANY, INC.; KENTILE FLOORS, INC.;

14  MCDERMOTT/SEALY, INC.; MCDONNELL DOUGLAS CORPORATION; PARKER

15  HANNIFIN CORPORATION, individually, and as successor in interest, parent, alter ego

16  and equitable trustee of CLEVELAND WHEELS & BRAKES; THE PORT OF

17  OAKLAND; RAYMOND INTERIOR SYSTEMS-NORTH, individually and successor in

18  interest, parent, alter ego and equitable trustee to JAMES L. WHITTAKER, INC.; WORLD

19  AIRWAYS, INC., and ROES 1 through 100, inclusive, (hereinafter collectively referred to

20  as "Cross-Defendants") alleges as follows:

21                                    **PARTIES**

22      1.    Henkel is a corporation organized and existing under the laws of the State of

23  Delaware and has a principal place of business at One Henkel Way, Rocky Hill, CT 06067.

24  Henkel is successor-in-interest to certain assets of the former Dexter Corporation

25  ("Dexter").

26      2.    Upon information and belief, Cross-Defendants, and each of them, were at all

27  times herein and still are corporations authorized to and doing business in the State of

28  California.

                                        1

1 **NATURE OF THE CASE**

2     3.   This is a cross-claim for equitable indemnification, apportionment and

3 contribution under California Civil Code § 875, Civil Code § 1431.2 and equitable

4 provisions of the common law.

5 **JURISDICTION AND VENUE**

6     4.   Paragraphs 1 through 4 are hereby incorporated by reference.

7     5.   This Court has subject matter jurisdiction over this matter pursuant to

8 McDonnell Douglas Corporation's Notice of Removal, attached hereto as Exhibit A and

9 incorporated by reference, and pursuant to 28 U.S.C. § 1442(a)(1).

10     6.   Venue is proper under 28 U.S.C. § 1441(a).

11 **FACTUAL BACKGROUND**

12     **A.**   **Procedural Posture of the Underlying Action**

13     7.   On or about December 17, 2009, Plaintiffs Timothy Vest and Caroline Vest

14 ("Plaintiffs") filed a civil action captioned *Timothy Vest and Caroline Vest v. Allied Packing*

15 *and Supply, et al.*, C.A. No. RG09489518, in the Superior Court of the State of California in

16 and for the County of Alameda (the "Underlying Action").

17     8.   Plaintiffs filed a First Amended Complaint for Personal Injuries on May 3,

18 2010.

19     9.   Plaintiffs filed a Second Amended Complaint for Personal Injuries, which is

20 the current operative complaint, on May 22, 2010.

21     10.   The Second Amended Complaint for Personal Injuries alleges causes of action

22 for negligence, breach of implied warranty, strict liability, fraud/failure to warn, conspiracy,

23 market share/enterprise liability, market share-concert of action liability, and loss of

24 consortium. Plaintiffs are also making a claim for punitive damages.

25     11.   On or about January 6, 2011, McDonnell Douglas Corporation removed the

26 Underlying Action to the United States District Court for the Northern District of

27 California.

28     12.   On or about January 10, 2011, McDonnell Douglas Corporation moved to

2

CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY, APPORTIONMENT, AND
CONTRIBUTION AND DEMAND FOR JURY TRIAL - 3:11-CV-00061 JSW
Ex.: 45; p.: 1780

1    stay the Underlying Action pending transfer of the Underlying Action to the Eastern District
2    of Pennsylvania, where all federal court asbestos actions have been centralized in the matter
3    of *In re Asbestos Products Liability Litigation (Multi District Litigation Docket No. 875)*.

4    13.    Plaintiffs filed a Motion to Remand the Underlying Action on or about
5    January 10, 2011. By order dated January 11, 2011, this Court set forth a briefing schedule
6    on Plaintiffs' Motion to Remand and scheduled a hearing on the motion for February 4,
7    2011.

8    **B.    Plaintiffs' Allegations**

9    14.    Plaintiffs allege that Mr. Vest suffers from malignant mesothelioma,
10   purportedly caused by exposure to asbestos-containing products manufactured, sold, or
11   supplied by numerous defendants, including Cross-Claimant's predecessor the former
12   Dexter Corporation.

13   15.    Dexter manufactured and sold aerospace adhesives after October 1969.

14   16.    Plaintiffs claim that, among several sources of asbestos exposure, Mr. Vest
15   was exposed to asbestos brought home on his father Warren Vest's clothes, shoes, and
16   person from his work at the World Airways facility, located on property owned by the Port
17   of Oakland in Oakland, California from 1965 to 1983. Plaintiffs further allege that Mr. Vest
18   was directly exposed to asbestos from occasional visits to his father's workplace at the
19   World Airways Facility from ages 8 to 17 (1973-1983).

20   17.    Plaintiffs claim that World Airways employees applied and removed Dexter
21   adhesives at World Airways' Oakland Facility during the course of their work on certain
22   commercial and military aircraft manufactured by Defendant and Cross-Defendant
23   McDonnell Douglas Corporation. Plaintiffs also claim that Dexter products were used in
24   the original construction of McDonnell Douglas Corporation's commercial and military
25   aircraft, which were present at the World Airways facility in Oakland at relevant times
26   herein.

27   18.    Plaintiffs further claim that, in addition to asbestos exposure from aircraft
28   maintenance, employees of, and visitors to, the World Airways Facility in Oakland were

3

CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY, APPORTIONMENT, AND
CONTRIBUTION AND DEMAND FOR JURY TRIAL - 3:11-CV-00061 JSW
Ex.: 45; p.: 1781

1   exposed to airborne asbestos fibers released due to both original construction and periodic
2   remodeling and construction of the facility. Plaintiffs allege, amongst other things, that
3   World Airways' facility was coated in asbestos-containing fireproofing and that the walls of
4   the facility consisted of asbestos-containing drywall and joint compound.

5       19.   Plaintiffs also contend that World Airways workers performed maintenance
6   on several asbestos-containing commercial and military aircraft parts, including, but not
7   limited to, McDonnell Douglas Corporation DC-8, DC-10 and KC-10 aircraft parts, which
8   were manufactured by various defendants in the Underlying Action. These parts include,
9   but are not limited to, heat shields, insulation blankets, brake parts, clamps, gaskets, and
10   tape.

11                         **FIRST CLAIM FOR RELIEF**
12                            (Indemnification)

13       20.   Paragraphs 1 through 19 are hereby incorporated by reference.

14       21.   Based on Plaintiffs' allegations against Henkel and its Co-Defendants in the
15   Underlying Action, any liability adjudicated against Henkel and in favor of Plaintiffs will
16   necessarily have been premised in whole or in part on the actions of the other Cross-
17   Defendants, and each of them, named herein.

18       22.   The actions of Cross-Defendants, and each of them, are intervening and
19   superseding causes of any harm which Plaintiffs allegedly attribute to Dexter adhesive
20   products.

21       23.   Cross-Defendants, and each of them, are alleged to have exposed Mr. Vest to
22   asbestos from their respective products and/or activities in ways unrelated to Dexter
23   adhesive products.

24
25
26
27
28

CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY, APPORTIONMENT, AND
CONTRIBUTION AND DEMAND FOR JURY TRIAL - 3:11-CV-00061 JSW
Ex.: 45; p.: 1782

1    24.    If it is determined that Plaintiffs are entitled to damages from Cross-Claimant
2  herein, Cross-Claimant herein alleges that Plaintiffs' alleged injuries and damages, if any,
3  were caused by the actions of other Cross-Defendants named herein, including exposure to
4  said Cross-Defendant's products, and that, in such instance, Cross-Claimant is entitled to
5  equitable indemnity from said Cross-Defendants, and each of them, in proportion to their
6  allocated percentage of fault.

7    WHEREFORE, Henkel demands that Cross-Defendants be declared liable for all
8  sums that may be adjudicated against Henkel in favor of Plaintiffs and that Cross-
9  Defendants be ordered to indemnify Henkel for such sums and for the costs and expenses
10  that Henkel has incurred in defending the underlying action.

11                    **SECOND CLAIM FOR RELIEF**

12                    (Apportionment and Contribution)

13    25.    Paragraphs 1 through 24 are hereby incorporated by reference.

14    26.    In the alternative, if Henkel is adjudged liable to Plaintiffs for any amount
15  sought in the underlying action, Henkel is entitled, under California Code of Civil
16  Procedure § 875 et. seq. and Civil Code § 1431.2, to contribution from Cross-Defendants
17  for any amount that Henkel must pay in excess of its *pro rata* share of liability.

18    WHEREFORE, Henkel demands that Cross-Defendants be adjudged liable for all
19  sums that may be adjudicated against Henkel in favor of Plaintiffs on the basis of both
20  statutory and common-law principles of apportionment and contribution.

21                    **PRAYER FOR RELIEF**

22    WHEREFORE, Henkel prays for judgment on its Cross-Claim as follows:

23    1.    For judgment in favor of Henkel, including an order that Plaintiffs take
24  nothing from Henkel by way of damages or other relief; that Cross-Defendants, and each of
25  them, be declared liable for all sums that may be adjudicated against Henkel in favor of
26  Plaintiffs; and that Cross-Defendants be ordered to indemnify Henkel for such sums and for
27  costs and expenses that Henkel has and will incur in defending the Underlying Action.

28  / / /

1    2.    In the alternative, for a judgment in favor of Henkel, including an award of

2  apportionment and contribution from Cross-Defendants in the amount of any sums that may

3  be adjudicated against Henkel in favor of Plaintiffs in the Underlying Action in excess of

4  Henkel's *pro rata* share of liability and in accordance with each Cross-Defendant's

5  adjudicated percentage of fault.

6    3.    For an award of such other and further relief as the Court shall deem just and

7  proper.

8                              **JURY DEMAND**

9        Cross-Claimant Henkel hereby demands trial by jury on all claims.

10  ///

11  DATED: January 21, 2011                    CHAPMAN & INTRIERI, L.L.P.

12

13

14                                  By: ___/s / Mark G. Intrieri_

15                                      Mark G. Intrieri
                                        Jessica A. Fakhimi
16                                      HENKEL CORPORATION, formerly known
                                        as HENKEL LOCTITE CORPORATION,
17                                      and successor-in-interest to certain assets
                                        of the former DEXTER CORPORATION
18

19

20

21

22

23

24

25

26

27

28

                                      6
        CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY, APPORTIONMENT, AND
           CONTRIBUTION AND DEMAND FOR JURY TRIAL - 3:11-CV-00061 JSW
                                                      Ex.: 45; p.: 1784

1

2          *Timothy Vest, et al. v. Allied Packing and Supply, et al.*
           Northern District of California, Case No. 3:11-cv-00061-JSW
3                       Our Client: Henkel Corporation
                        Our File No. 650.89
4

5                            **Proof of Service**

6          I am employed in the County of Alameda, State of California. I am over the age of
7   18 years and not a party to the within action. I am employed by Chapman & Intrieri, L.L.P.,
    and my business address is 2236 Mariner Square Drive, Third Floor, Suite 300, Alameda,
8   California 94501-1090.

9          On **January 21, 2011,** I served the within:

10

11  **CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY,
    APPORTIONMENT, AND CONTRIBUTION AND DEMAND FOR JURY TRIAL**

12  **XX**     **(BY ELECTRONIC MAIL SERVICE)** I caused to be delivered by electronic
13          mail service this date of the above documents, for which our office will maintain
            the email sent receipt, to the following:
14

15      Justin Bosl, Esq.                              Tel:  (510) 302-1000
        James Lyndon Oberman, Esq.                     Fax:  (510) 835-4913
16      Gloria Chun Amell, Esq.                        Attorneys for Plaintiffs
        Michael Thomas Stewart, Esq.                   Email:
17      Kazan, McClain, Lyons, Greenwood & Harley      jbosl@kazanlaw.com
        A Professional Law Corporation                 Joberman@kazanlaw.com
18      55 Harrison St., Suite 400                     Gamell@kazanlaw.com
        Oakland, CA  95607                             mstewart@kazanlaw.com
19

20
    **XX**     **(BY MAIL)** I caused each of the above document(s) to be placed in a sealed
21          envelope, with postage thereon fully prepaid, to be deposited this date with the
            United States Postal Office at Alameda, California, addressed as follows:
22

23                       **SEE ATTACHED SERVICE LIST**

24         I declare that I am employed in the office of a member of the bar of this Court at
25  showe direction the service was made.

26         I declare under penalty of perjury under the laws of the United States of America  and
27  the State of California that the foregoing is true and correct. Executed on **January 21,**
    **2011,** at Alameda, California.

28                                                      */s/ Pamela Thompson*

                                         7
    CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY, APPORTIONMENT, AND
    CONTRIBUTION AND DEMAND FOR JURY TRIAL - 3:11-CV-00061 JSW
                                                      Ex.: 45; p.: 1785

Pamela Thompson
*Timothy Vest, et al. v. Allied Packing and Supply, et al.*
Northern District of California, Case No. 3:11-cv-00061-JSW
Our Client: Henkel Corporation
Our File # 650.89

## SERVICE LIST

| | |
|---|---|
| Calendar Dept.<br>BERRY & BERRY<br>PO Box 16070<br>Oakland, CA 94610<br>Telephone: (510) 835-8330<br>Facsimile: (510) 835-5117<br>Email: calendardept@berryandberry.com | Alan J. Zapala<br>Herr & Zapala<br>152 North 3rd Street, Suite 500<br>San Jose, CA 95112<br>Tel: (408) 287-7788<br>Fax: (408) 927-0408<br>Attorneys for Allied Packing and Supply, Inc.<br>zjz@mylawfirm.com |
| Richard D. Dumont, Esq.<br>Timothy F. Barteau, Esq.<br>Selman Breitman LLP<br>33 New Montgomery Street, Sixth Floor<br>San Francisco, CA 94105<br>Tel: (415) 979-0400<br>Fax: (415) 979-2099<br>rdumont@selmanbreitman.com<br>tbarteau@selmanbreitman.com<br>Attorneys for Defendant Alta Building Materials Co. | Mary K. Hillyard, Esq.<br>Jennifer M. Ways, Esq.<br>Prindle, Amaro, Goetz, et al.<br>One California Street, Suite 1910<br>San Francisco, CA 041-4<br>Tel: (415) 788-8354<br>Fax: (415) 788-3625<br>mhillyard@prindlelaw.com<br>jways@prindlelaw.com<br>Attorneys for Dean's Materials, Inc. dba Construction Material Supplier |
| Michael T. McCall, Esq.<br>Katherine M. Watts<br>Walsworth, Franklin, Bevins & McCall, LLP<br>601 Montgomery Street, 9th Floor<br>San Francisco, CA 94111-2612<br>Tel: (415) 781-7072<br>Fax: (415) 391-6258<br>mmccall@wfbm.com<br>kwatts@wfbm.com<br>Attorneys for Defendant Dowman Products, Inc., Hamilton Materials, Inc. | David M. Glaspy, Esq.<br>McGivney, Kluger & Glaspy<br>100 Pringle Avenue, Suite 750<br>Walnut Creek, CA 94596<br>Tel: (925) 947-1300<br>Fax: (925) 947-1594<br>dglaspy@glaspy.com<br>bomalley@glaspy.com<br>Attorneys for Garlock Sealing and Technologies, Inc. |
| Thomas F. Vandenburg, Esq.<br>Rafael Contreras Sweet, Esq.<br>Dongell Lawrence Finny, LLP<br>707 Wilshire Blvd., 45th Floor<br>Los Angeles, CA 90017-3609<br>Tel: (213) 943-6100<br>Fax: (213) 943-6101 | Michael L. Mau, Esq.<br>The Mau Law Firm<br>950 Harrison Street, Suite 213<br>San Francisco, CA 94107<br>Tel: (415) 495-8082<br>Fax: (415) 495-8084<br>maulawsf@hotmail.com |

8

CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY, APPORTIONMENT, AND
CONTRIBUTION AND DEMAND FOR JURY TRIAL - 3:11-CV-00061 JSW

| tvandenburg@dlflawyers.com<br>rsweet@dlflawyers.com<br>Attorneys for George E. Masker, Inc. | Attorneys for George E. Masker, Inc. |
|---|---|
| Jennifer Judin, Esq.<br>Annie Wu, Esq.<br>DeHay & Elliston LLP<br>1300 Clay Street, Suite 840<br>Oakland, CA 94612<br>Tel: (510) 285-0750<br>Fax: (510) 285-0740<br>jjudin@dehay.com<br>awu@dehay.com<br>Attorneys for Defendant Kaiser Gypsum Company, Inc. | David M. Glaspy, Esq.<br>McGivney, Kluger & Glaspy<br>100 Pringle Avenue, Suite 750<br>Walnut Creek, CA 94596<br>Tel: (925) 947-1300<br>Fax: (925) 947-1594<br>Attorneys Kentile Floors |
| Diane T. Gorczyca, Esq.<br>Brien F. McMahon, Esq.<br>Perkins Coie LLP<br>Four Embarcadero Center, Suite 2400<br>San Francisco, CA 94111<br>Tel: (415) 344-7000<br>Fax: (415) 344-7288<br>dgorczyca@perkinscoie.com<br>bmcmahon@perkinscoie.com<br>Attorneys for Georgia Pacific LLC fka<br>Georgia Pacific Corporation | Mark Geraghty, Esq.<br>Paul Bird, Esq.<br>McKenna, Long & Aldridge LLP<br>101 California Street, 41st Floor<br>San Francisco, CA 94111<br>Tel: (415) 267-4000<br>Fax (415) 267-4198<br>mgeraghty@mckennalong.com<br>Attorneys for Hexcel Corporation<br><br>Paul Bird, Esq.<br>McKENNA, LONG & ALDRIDGE<br>101 California Street, 41st Floor<br>San Francisco, CA 94111<br>Telephone: (415) 267-4000<br>Facsimile: (415) 267-4198<br>pbird@mckennalong.com |
| Michael Bolechowski, Esq.<br>Mary Ellen Gambino, Esq.<br>Wilson, Elser, Moskowitz, et al.<br>525 Market Street, 17th Floor<br>San Francisco, CA 94105<br>Tel: (415) 433-0990<br>Fax: (415) 434-1370<br>michael.bolechowski@wilsonelser.com<br>mary.gambino@wilsonelser.com<br>Attorneys for Lathrop Construction Associates, Inc., F.P. Lathrop Corporation | Ruth D. Kahn, Esq.<br>Steptoe & Johnson LLP<br>633 West Fifth Street, Suite 700<br>Los Angeles, CA 90071<br>Tel: (213) 439-9400<br>Fax: (213) 439-9599<br>rkahn@steptoe.com<br>Attorneys for Metropolitan Life Insurance Company |
| | |

Ex.: 45; p.: 1787

1
2
3 | Robert E. Boone III, Esq,
James C. Pettis, Esq. | Merton A. Howard, Esq
Hanson Bridgett LLP
4 | Linda C. Hsu, Esq. | 425 Market Street, 26th Floor
239880Bryan Cave LLP | San Francisco, CA 94105
5 | 120 Broadway, Suite 300 | Tel: (415) 995-5030
Santa Monica, CA 90401 | Fax: (415) 995-3582
6 | Tel: (310) 576-2182 | mhoward@hansonbridgett.com
7 | Fax: (410) 576-2200 | Attorneys for the Port of Oakland
reboone@bryancave.com
8 | james.pettis@bryancave.com | Michele Heffes, Esq.
linda.hsu@bryancave.com | PORT OF OAKLAND LEGAL
9 | Attorneys for Defendant McDonnell | DEPARTMENT
Douglas Corporation | 530 Water Street, 4th Floor
10 | | P.O. Box 2064
11 | Jim Goldberg, Esq. | Oakland, CA 94607
Stephanie A. Blazewicz, Esq. | Telephone: (510) 627-1348
12 | BRYAN CAVE LLP | Facsimile: (510) 444-2093
Two Embarcadero Center | Email: mheffes@portoakland.com
13 | Suite 1410
14 | San Francisco, CA 94111-3907
Telephone: (415) 675-3400
15 | Facsimile: (415) 675-3434
Email: jim.goldberg@bryancave.com
16 | stephanie.blazewicz@bryancave.com

17
18
19
20
21
22
23
24
25
26
27
28

10

CROSS-CLAIM OF HENKEL CORPORATION FOR INDEMNITY, APPORTIONMENT, AND
CONTRIBUTION AND DEMAND FOR JURY TRIAL - 3:11-CV-00061 JSW

Ex.: 45; p.: 1788