1  Francis E. Fernandez, Esq. (C.S.B. #65775)
   James L. Oberman, Esq. (C.S.B. #120938)
2  Leigh A. Kirmssé, Esq. (C.S.B. #161929)
   Ian A. Rivamonte, Esq. (C.S.B. #232663)
3  Aaron Myers, Esq. (C.S.B. #200145)
   KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
4  A Professional Law Corporation
   Jack London Market
5  55 Harrison Street, Suite 400
   Oakland, California 94607
6  Telephone: (510) 302-1000

7  Attorneys for Plaintiffs

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 | TIMOTHY VEST and CAROLINE VEST, | Case No.: 3:11-cv-00061 (JSW)
11 |                    Plaintiffs, | **PLAINTIFFS' REPLY MEMORANDUM OF**
                                      **POINTS AND AUTHORITIES IN SUPPORT**
12 |           vs.                   | **OF EMERGENCY MOTION TO**
                                      **IMMEDIATELY REMAND ASBESTOS-**
13 | ALLIED PACKING & SUPPLY, INC., et | **CANCER CASE TO CALIFORNIA**
   | al.,                            | **SUPERIOR COURT [28 U.S.C. § 1447(c)]**
14 |
15 |                    Defendants.  | Date:       February 4, 2011
   |                                 | Time:       9:00 a.m.
16 |                                 | Judge:      Hon. Jeffrey S. White
   |                                 | Courtroom:  11, 19th Floor

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

1

# TABLE OF CONTENTS

2
**Page**

3 SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

4     Defendant's Removal Was Untimely: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

5     MDC Waived Its Right to Remove: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

6     MDC's Evidence is Inadmissible: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

7     No Federal-Officer Jurisdiction Exists: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

8     Plaintiffs May Waive Their Military-Related Claims Against MDC: . . . . . . . . . . . . . . . v

9 I.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

10     A.     MDC Misrepresents the Applicable Legal Standard . . . . . . . . . . . . . . . . . . . . . . 1

11     B.     MDC's Removal Was Untimely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

12     C.     MDC's Waived its Right to Remove Because of its Actions in State Court . . . . . . 6

13     D.     MDC Cannot Rely on Inadmissible Evidence to Support its Opposition . . . . . . . . 6

14         1.     The Fogg Declaration and Documents Referenced Therein . . . . . . . . . . . 6

15         2.     The Croslin Declaration and Documents Referenced Therein . . . . . . . . . 8

16         3.     The 1995 Affidavits of Alvin F. Meyer, Jr. and J. Lindsay Chalk . . . . . . . 9

17         4.     The Former Testimony of Walter Melvin, M.D. . . . . . . . . . . . . . . . . 10

18     E.     MDC Shows No Colorable Defense to Plaintiffs' Design-Defect Claim . . . . . . 11

19         1.     MDC's Burden Regarding Plaintiffs' Design-Defect Claims . . . . . . . . . 11

20         2.     MDC's Evidence Fails to Show that the Air Force Directed MDC
                to Use Asbestos in MDC's B-23 and KC-10 Aircraft . . . . . . . . . . . . . . 12

21

    F.     MDC Has No Colorable Defense to Plaintiffs' Failure-to-Warn Claims . . . . . . 15

22
    G.     Alternatively, Plaintiffs Would Waive Their Claims of Exposure to Asbestos
23         from MDC's Military Aircraft . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

24     H.     Plaintiffs' Attorneys' Fees Are Warranted . . . . . . . . . . . . . . . . . . . . . . . . 19

25 II.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
Fax (510) 835-4913

26

27

28

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)
i

# TABLE OF AUTHORITIES

**Cases**                  **Page(s)**

*Boyle v. United Technologies Corp.,*
    487 U.S. 500, 512 (1988) ................................................. 11-13, 15

*Brewster v. A.W. Chesterton Co.,*
    2007 WL 1056774 (N.D. Cal. Apr. 6, 2007) ........................ 18, 19

*Butler v. Ingalls Shipbuilding, Inc.,*
    89 F.3d 583, 584 (9th Cir. 1996) ........................................... 12

*Carter-Wallace, Inc. v. Otte,*
    474 F.2d 529, 536-537 (2nd Cir. 1972) .................................. 10

*Chamberlin v. Principi,*
    2006 WL 647785, **1-2 (S.D. N.Y. 2006) ............................. 9

*Durham v. Lockheed Martin Corp.,*
    445 F.3d 1247 (9th Cir. 2006) ..................................... 1, 2, 4, 12

*Fairview Park Excavating Co., Inc. v. Al Monzo Const. Co., Inc.,*
    560 F.2d 1122, 1125 (3d Cir. 1977) ...................................... 18

*Gaus v. Miles, Inc.,*
    980 F.2d 564 (9th Cir. 1992) ................................................. 1

*Gorman v. Abbott Laboratories,*
    629 F.Supp. 1196 (D. R.I. 1986) .......................................... 5

*Hagen v. Benjamin Foster Co.,*
    2010 WL 3745297, at *6 (E.D. Pa. Oct. 20, 2010) .............. 1, 12

*Hilbert v. McDonnell Douglas Corp.,*
    529 F.Supp.2d 187 (D. Mass. 2008) ........................... 1, 8, 15, 16

*Holdren v. Buffalo Pumps, Inc.,*
    614 F.Supp.2d 129, 141 (D. Mass. 2009) .............................. 12

*In re Hawaii Fed. Asbestos Cases,*
    960 F.2d 806, 813 (9th Cir. 1992) ................................ 11, 12, 15

*Lindenmayer v. Allied Packing & Supply, Inc.,*
    2010 WL 234906, *7 (N.D. Cal. January 14, 2010) .............. 17

*Lovern v. General Motors Corp.,*
    121 F3d 160 (4th Cir. 1997) ................................................ 4

*Madden v. A.H. Voss Co.,*
    2009 WL 3415377, **2-3 (N.D. Cal. Oct. 21, 2009) ............. 17

*Mesa v. Cal.,*
    489 U.S. 121, 124-125 (1989) ............................................. 11

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

ii

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Nguyen v. Allied Signal, Inc.*,
   1998 WL 690854 (N.D. Cal. Sept. 29, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*Niemann v. McDonnell Douglas Corp.*,
   721 F.Supp. 1019 (S.D. Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oliver v. Oshkosh Truck Corp.*,
   96 F.3d 992, 1003-1004 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Oxford v. Foster Wheeler LLC*,
   177 Cal.App.4th 700 (Cal.App.1st 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Redman v. A.W. Chesterton Co.*,
   2008 WL 4447729 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tate v. Boeing Helicopters*,
   55 F.3d 1150, 1156-1157 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Westbrook v. Asbestos Defendants*,
   2001 WL 902642, **2-3 (N.D. Cal. July 31, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Zbranek v. Hofheinz*,
   727 F.Supp. 324, 325 (E.D. Tex. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Statutes**

28 U.S.C. Section 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. Section 1442(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. Section 1447(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. Section 1442(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. Section 1446(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

California Code of Civil Procedure Section 428.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Rules**

Federal Rules of Civil Procedure, Rule 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Rules of Civil Procedure, Rule 32(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Rules of Civil Procedure, Rule 32(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Rules of Civil Procedure, Rule 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Evidence, Rule 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Federal Rules of Evidence, Rule 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)                                                     iii

IRIVAMONTE/729147.2

# TABLE OF AUTHORITIES

**Rules**                                                        **Page(s)**

Federal Rules of Evidence, Rule 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 11, 14

Federal Rules of Evidence, Rule 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 11

Federal Rules of Evidence, Rule 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Evidence, Rule 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-11, 14

Federal Rules of Evidence, Rule 803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Federal Rules of Evidence, Rule 803(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rules of Evidence, Rule 805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 11, 14

Federal Rules of Evidence, Rule 901(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

iv

# SUMMARY OF ARGUMENT

**Defendant's Removal Was Untimely:** At least six months prior to McDonnell Douglas Corporation ("MDC") removing this case, the complaints, plaintiffs' discovery responses and the deposition testimony of percipient witness provided MDC with sufficient facts for federal-officer removal based on plaintiffs' allegations that Timothy Vest was exposed to asbestos when MDC's military aircraft were serviced at World Airways' Hangar 110 ("Hangar 110").

**MDC Waived Its Right to Remove:** MDC waived its right to remove this case when it effectively submitted to the state court's jurisdiction, after it was apparent that this case was removable, by taking substantial offensive action in state court.

**MDC's Evidence is Inadmissible:** The Court should strike the declarations of Thomas Croslin, Larry Fogg, Alvin Meyer, Jr. and J. Lindsay Chalk, and the testimony of Walter Melvin because their assertions are inadmissible hearsay, lack foundation, and are irrelevant and speculative. Also, the Court should strike the documents MDC submits with its opposition papers because they were not properly authenticated and are inadmissible hearsay.

**No Federal-Officer Jurisdiction Exists:** MDC fails to meet its burden to show, through competent and admissible evidence, that MDC has a colorable military-contractor defense against plaintiffs' design-defect and failure-to-warn claims. MDC's evidence does not show that the Air Force specifically directed MDC to use asbestos in its equipment and that the Air Force exercised its discretion and approved or disapproved warnings about asbestos-related health hazards.

**Plaintiffs May Waive Their Military-Related Claims Against MDC:** If this Court finds that MDC has a colorable federal defense as to any of plaintiffs' claims, plaintiffs will agree to limit their claims against MDC to Timothy Vest's exposures to asbestos in non-military aircraft. Plaintiffs' waiver is itself sufficient to eviscerate MDC's grounds for removal. Plaintiffs' waiver also eliminates Henkel's cross-claim because MDC will never have to pay for any injury caused by MDC's military aircraft. California's Proposition 51 establishes a system of comparative fault and does not give rise to a cross-claim against which a co-defendant defends. Because plaintiffs will waive their claims arising from Mr. Vest's asbestos exposure from MDC's military aircraft, MDC cannot invoke the military-contractor defense as an affirmative defense to plaintiffs' claims.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

## I.    ARGUMENT

### A.    MDC Misrepresents the Applicable Legal Standard

"[T]he defendant always has the burden of establishing that removal is proper." [*Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).] Where defendant attempts to remove an action from state court pursuant to 28 U.S.C. § 1446(b) and plaintiff contends defendant's removal is untimely, the burden is on defendant to demonstrate compliance with the procedural bar of section 1446(b). [*Hilbert v. McDonnell Douglas Corp.*, 529 F.Supp.2d 187, 194 (D. Mass. 2008).]

MDC's legally unsupported assertion that "all doubts must be resolved in favor of upholding federal officer jurisdiction" misrepresents the law. [MDC's Opp. at 7:24-25.] It is *always* the removing party's burden to satisfy the requirements of the federal-officer removal statute, as set forth in 28 U.S.C. § 1442(a)(1), by establishing timely and proper removal through the submission of competent and admissible evidence. The only qualification is that while generally "there is a strong presumption against removal jurisdiction," courts broadly construe the federal-officer removal statute, and consequently, *where the defendant timely removes and submits competent and admissible evidence* identifying "facts which, viewed in the light most favorable to defendants, entitle him or her to a complete [federal-officer] defense," defendant is entitled to removal. [*Gaus*, 980 F.2d at 566; *Hagen v. Benjamin Foster Co.*, 2010 WL 3745297, at *6 (E.D. Pa. Oct. 20, 2010).] This does not mean, as MDC appears to contend, that doubts as to *timeliness* or *admissibility* must be resolved in its favor. To the contrary, the burden always remains on MDC to present admissible evidence, and *only when such facts are properly before the Court* are they "viewed in the light most favorable to defendant[]." [*See id.*]

### B.    MDC's Removal Was Untimely

MDC also misrepresents the case law on which it relies to contend it lacked sufficient facts to place it on notice of its federal-officer defense until late December 30, 2010. MDC asserts that *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006), required plaintiffs to provide "sufficiently detailed facts" such as identifying the "specific components" in MDC's aircraft that exposed Timothy Vest to asbestos. *Durham* contains no such requirement.

In *Durham*, the plaintiff filed his complaint against Lockheed Martin and other defendants

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

1

1    in California Superior Court. While plaintiff's complaint listed the Air Force facilities where he

2    worked, it did not identify nor assert that *any* Lockheed aircraft or other products exposed plaintiff

3    to asbestos. [*Id.* at 1249.] Ten days after serving the complaint, plaintiff served Lockheed with

4    interrogatory responses which first disclosed that plaintiff "was exposed to asbestos while working

5    on the SR-71 Blackbird and the C-141 Starlifter aircraft on military bases where Lockheed was a

6    contractor." [*Id.*] After defendant removed, the District Court granted plaintiff's motion to

7    remand. On appeal of the award of costs, the Ninth Circuit held that, unlike the complaint,

8    plaintiff's discovery response disclosed "sufficient facts" to place Lockheed on notice of grounds

9    for federal officer removal. [*Id.* at 1253.]

10       Contrary to MDC's erroneous contentions, nothing in *Durham* requires plaintiffs to

11    provide "sufficiently detailed facts" such as the "specific components" in MDC's aircraft. Instead,

12    *Durham* provides that the identification of the type of military aircraft alone was sufficient to

13    apprise MDC of its grounds for removal. [*Id.*] Here, MDC was well aware more than six months

14    before it filed its Notice of Removal that plaintiffs allege that Timothy Vest was exposed to

15    asbestos from components in MDC's military aircraft serviced at Hangar 110 – namely the B-23

16    and KC-10, which is the military version of MDC's DC-10 aircraft. The following table sets forth

17    the information MDC had in its possession regarding Mr. Vest's claims months before its removal:

| Date | Document | Summary |
|------|----------|---------|
| Jan. 28, 2010<br><br>May 3, 2010<br>May 28, 2010 | Complaint Served on MDC<br>1st Amended Complaint<br>2nd Amended Complaint | Complaints allege that Timothy Vest was exposed to asbestos for which MDC was responsible while he was present at Hangar 110 and when Warren Vest brought home toxic asbestos fibers on his clothes, person and personal effects after his daily work at Hangar 110. [Exhibits 1-4 to 1/10/11 Rivamonte Decl.] |
| Feb. 16, 2010 | Plaintiffs' Responses to Joint Defense Interrogatories | Asked to identify Timothy Vest's exposures to asbestos "outside of [his] work environment," plaintiffs stated, in part, that:<br><br>(1)   From 1973 to 1983, Timothy Vest was exposed to asbestos brought home on the person, clothes, shoes and belongings of his father Warren Vest from Warren Vest's employment at Hangar 110;<br>(2)   **Aircraft maintenance and conversion was done at Hangar 110 where Warren Vest had his office;**<br>(3)   **Mechanics performed maintenance tasks on aircraft at Hangar 110 all day, everyday, and such work generated asbestos-containing dust which contaminated Hangar 110** |

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
Fax (510) 835-4913

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)
2

IRIVAMONTE/729147.2

| Date | Document | Summary |
|------|----------|---------|
| | | and Warren Vest's person, clothing, shoes and belongings;<br>(4)    Timothy Vest visited all areas of Hangar 110; and<br>(5)    **The continuous maintenance activities at Hangar 110 exposed Timothy Vest to asbestos dust.**<br><br>[Exhibits to Reply Rivamonte Decl.: Standard Interrogatories (Ex. 4) at 24:12-19 and Plaintiffs' Responses to Standard Interrogatories (Ex. 5) at 14:25-16:2.] |
| May 12, 2010 | Plaintiffs' Responses to MDC's Special Interrogatories (Set One) | Plaintiffs stated, in detail, how Timothy Vest was exposed to asbestos when MDC's DC-8s, DC-10s **"and other aircraft"** were maintained in his and his father's presence at Hangar 110. [Plaintiffs' Responses to MDC's Interrogatories, Ex. 7 to 1/10/11 Rivamonte Decl. at 2:27-3:16.] Plaintiffs also identified MDC's **KC-10** as one of several MDC planes that utilized asbestos-containing components. [*Id.* at 2:4-3:16.] |
| June 3, 2010 | James Hales Deposition | Testified that **MDC's KC-10s were serviced at Hangar 110 and there "were specific [World Airways] mechanics and crews who were approved to work on the KC-10."** [Hales Depo., Ex. 12 to 1/10/11 Rivamonte Decl. at 80:17-81:15, 82:17-83:2.] |
| June 4, 2010 | Malcolm Benge Deposition | Testified that the Air Force **contracted World Airways to do maintenance work on MDC's KC-10 tankers and that such maintenance was performed at Hangar 110.** [Benge Depo., Ex. 13 to 1/10/11 Rivamonte Decl at 29:25-30:17.] |
| July 8, 2010 | Claude Fross Deposition | Testified that **aircraft maintenance work was being done in Hangar 110 all day, everyday, and** acknowledged that **Hangar 110 had a "military sales area."** [Fross Depo., Ex. 14 to 1/10/11 Rivamonte Decl. at 51:5-53:2, 88:22-89:2, 92:22-93:10.] |
| Aug. 19, 2010 | Warren Vest Deposition | Testified that:<br>(1)    World Airway's founder, Edward Daly, owned **B-23s** and that this aircraft was **maintained in Hangar 110;**<br>(2)    World Airways mechanics serviced **KC-10 military airplanes at Hangar 110;**<br>(3)    **Everyday, from 1976 to 1985, he visited Hangar 110's maintenance area;** and<br>(4)    **He observed dust in the maintenance floor of Hangar 110.**<br><br>[Warren Vest Depo., Ex. 15 to 1/10/11 Rivamonte Decl. at 122:2-8, 125:9-25, 146:24-147:7, 151:15-152:12, 271:24-272:22.] |
| Oct. 26, 2010 | Plaintiffs' Responses to World Airways' Interrogatories (Set Two) | Plaintiffs state that Timothy Vest observed engines, wheels, brakes, inspection panels, cowlings, paint, and various other component parts being serviced at Hangar 110. Also, plaintiffs **referred defendants to the deposition testimony of Warren Vest for further information regarding the maintenance work done in their presence at Hangar 110.** [Exhibits to Reply Rivamonte Decl.: World Airways' Interrogatories (Ex. 2) at 1:11-16 and Plaintiffs' Responses to World Airways' Interrogatories (Ex. 3) at 3:14-4:6.] |
| Nov. 3, 2010 | Plaintiffs' Responses to Lathrop's Document Requests | Plaintiffs produced a September 1973 article stating that World Airways **"won a competition to complete the interiors of two military DC-9s"** at Hangar 110. [Plaintiffs' Responses to Lathrop's Document Requests, Ex. 11 to 1/10/11 Rivamonte Decl.] |

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

3

1    Thus, the documents MDC received, including plaintiffs' complaints and discovery

2    responses, and transcripts of the depositions of James Hales, Malcolm Benge, Claude Fross and

3    Warren Vest, more than sufficiently disclosed facts that apprised MDC of a basis for federal-

4    officer removal, long before December 7, 2010 (30 days before MDC removed this case on

5    January 6, 2011).  [*Durham*, 445 F.3d at 1253; *Lovern v. General Motors Corp.*, 121 F3d 160, 161

6    (4th Cir. 1997).]  MDC was on notice that plaintiffs allege that Timothy Vest was exposed to

7    asbestos, either directly or through asbestos fibers brought home on the clothes, person and

8    personal effects of Warren Vest, when maintenance work was done on aircraft at Hangar 110.

9    MDC was on notice that military aircraft, including MDC's B-23 and KC-10, were maintained and

10   repaired at Hangar 110, and that plaintiffs' claims were based in part on exposure to asbestos dust

11   caused by those activities.  MDC's assertion that it was not aware of these facts until December

12   30, 2010 is simply false and contradicted by the record.

13       In fact, MDC repeatedly asserted in its responses to plaintiffs' discovery on April 15, June

14   4 and July 12, 2010, that "the design of any aircraft that may be at issue was approved [by] the

15   United States Government and sold to its customers (*e.g.,* Government, airlines, couriers), who

16   may have performed maintenance and modifications" that may have included the "installation of

17   parts and systems containing some quantity of asbestos."  [*See* Exhibits 8-10 to 1/10/11 Rivamonte

18   Decl.]  MDC in its opposition claims it meant "Government" to refer only to the Federal Aviation

19   Administration ("FAA"), but nothing in MDC's response limits "Government" to "FAA."  Also,

20   MDC specifically referenced that the "Government" purchased MDC's aircraft in MDC's verified

21   responses to plaintiffs' discovery.  Indeed, MDC had every opportunity to narrowly define

22   "Government" to only include the FAA when it served its initial, supplemental and amended

23   discovery responses, but did not do so.  [*Id.*]  Moreover, the FAA does not purchase aircraft and

24   thus when MDC said it sold aircraft to "customers" including the "Government" it could only

25   mean what it said: Government purchasers, i.e., the military.

26       Nonetheless, MDC contends that it was first made aware that this case was removable to

27   federal court only upon analyzing: (1) the Templin Declaration which provides that Timothy Vest

28   was exposed to asbestos from aircraft maintained in Hangar 110; (2) the December 29, 2010

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)                                                    4

1   deposition transcript of David Miller who testified that KC-10s were maintained at Hangar 110;

2   and (3) the January 4, 2011 deposition transcript of Michael Pociecha who testified that B-23s

3   were maintained at Hangar 110. [MDC's Opp. at 4:7-20.] These contentions lack merit. Mr.

4   Templin's attestations and the testimony of Messrs. Miller and Pociecha do not provide any

5   information regarding plaintiffs' claims arising from Timothy Vest's exposure to asbestos from

6   MDC's military aircraft that was not already revealed in the complaints, plaintiffs' discovery

7   responses and the deposition transcripts of Warren Vest and Messrs. Benge, Fross and Hales.

8       MDC's contention that the "linchpin" for triggering MDC's right to removal was its receipt

9   of the Templin Declaration fails because MDC had sufficient information based on its discovery

10   responses, plaintiffs' discovery responses and the deposition testimony of numerous percipient

11   witnesses to determine that this case was removable six months ago. Indeed, the portions of Mr.

12   Templin's declaration on which MDC relies were all derived from his review of, among other

13   documents, the transcripts of the deposition testimony of Warren Vest, Messrs. Fross and Hales,

14   and contain no information materially different from that already revealed in those transcripts

15   months earlier. [Templin Decl., Ex. 29 to 1/10/11 Rivamonte Decl. at 8:26-21:13.]

16       The 30-day limit for MDC to remove this case to federal court, as required pursuant to 28

17   U.S.C. § 1446(b), has a dual purpose: (1) to foreclose "a defendant from adopting a 'wait and see'

18   approach in the state court; specifically, it prevents a second bite at the jurisdictional apple if a

19   defendant (belatedly) perceives that the case is proceeding other than to his liking;" and (2) to

20   minimize the "delay and waste of resources involved in starting a case over in federal court after

21   substantial proceedings have taken place in the state court." [*Gorman v. Abbott Laboratories*, 629

22   F.Supp. 1196, 1198-1199 (D. R.I. 1986).] Both purposes are implicated here. MDC waited

23   several months to file its Notice of Removal after it was first put on notice, at least by the time

24   Warren Vest was deposed in August 2010, that this case was removable under federal-officer

25   grounds. Also, this case was filed one year ago and substantial proceedings have already taken

26   place. [Exhibits 17-28 to 1/10/11 Rivamonte Decl.] In fact, MDC filed its Notice of Removal on

27   the same day it was tentatively ordered to produce, within two days, documents it had long resisted

28   producing (forcing plaintiffs to bring two motions to compel) and little more than a month before

KAZAN, MCCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

5

1   the scheduled start of a February 14, 2011 trial. [Exhibits 21, 33 to 1/10/11 Rivamonte Decl.]

2   MDC's true purpose for removal is transparent: to avoid the court's order compelling production

3   of documents MDC wants to keep secret and to seriously jeopardize Mr. Vest's ability to have his

4   case tried while his condition is such that he can meaningfully participate in this trial.

5       **C.    MDC's Waived its Right to Remove Because of its Actions in State Court**

6       As previously addressed in plaintiffs' Motion to Remand, an additional reason why this

7   case must immediately be remanded is that MDC waived its right to remove by taking some

8   substantial action in the state court action indicating a willingness to litigate in that tribunal before

9   filing a notice of removal with the federal court. [*Zbranek v. Hofheinz*, 727 F.Supp. 324, 325

10   (E.D. Tex. 1989).] MDC asserts that none of plaintiffs' cited cases held that "a defendant waived

11   his right to remove by participating in the state court action before knowing the case was

12   removable." [MDC's Opp. at 10:20-22 (emphasis omitted).] To the contrary, in *Zbranek,* 727

13   F.Supp. at 325, as here, defendants filed a summary-judgment motion based on plaintiffs' state-

14   law-tort claims and participated in extensive proceedings in the state-court action. [Plaintiffs'

15   Motion to Remand at pp. 11-12.] Defendants claimed that despite their actions in litigating

16   plaintiffs' state-law-tort claims, they were not aware of the federal civil-rights action when the

17   plaintiff filed the complaint. [*Id.*] Although the district court agreed, it nevertheless granted

18   remand based on the stage of the proceedings and the defendants' affirmative acts in state court.

19   [*Id.*] Moreover, here, plaintiffs also have identified offensive action by MDC in state court well

20   after MDC was on notice of the military-contractor defense, including the filing of a motion for

21   summary judgment and to bifurcate the trial. [Exhibits 25, 27 to 1/10/11 Rivamonte Decl..]

22       **D.    MDC Cannot Rely on Inadmissible Evidence to Support its Opposition**

23       MDC relies upon the testimony of Thomas Croslin, Larry Fogg, J. Lindsay Chalk, Alvin F.

24   Meyer and Walter Melvin in support of MDC's Opposition to plaintiffs' remand motion. MDC

25   also relies upon numerous documents attached as exhibits to MDC's Index of Evidence ("Index").

26   Plaintiffs object to each of MDC's purported pieces of "evidence," none of which is admissible.

27       **1.    The Fogg Declaration and Documents Referenced Therein**

28       MDC submits the declaration of Larry Fogg for the proposition that the Air Force

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

1   controlled all aspects of the creation of the B-23, including that aircraft's design and placement of

2   warnings. In support of his opinions, Mr. Fogg relies upon documents attached as Exhibits 1

3   through 15 to MDC's Index. [Fogg Decl. at ¶¶ 6-8, 10, 12-18, 21-22, 24, 29-34, 36-38.]

4           Plaintiffs object to the admissibility of Exhibits 1 through 15 to MDC's Index because

5   MDC fails to proffer sufficient evidence demonstrating the authenticity and admissibility of these

6   documents under an exception to the hearsay rule. [Fed. R. Evid. 802, 803, 805, 901(a).] Mr.

7   Fogg admits in his declaration that his assertions are based on his review of MDC documents and

8   documents that he consulted from the "Smithsonian Air and Space Museum, the Wright-Patterson

9   Air Force Base Office of History; the Air Force Museum; Wright-Patterson Air Force Base; the

10  Naval Air Museum, Pensacola, Florida; and the National Archives in Washington, D.C." [Fogg

11  Decl. at ¶ 3.] But Mr. Fogg fails to indicate which of the documents he "consulted" or relied upon

12  originated from MDC or from some other source. Thus, Mr. Fogg fails to demonstrate that he is a

13  competent witness to authenticate non-MDC documents or to testify as to whether these non-MDC

14  documents were, in fact, the business records of the non-MDC entities.

15          Even if all of the documents are from MDC, the only "evidence" MDC proffers to

16  authenticate these documents is Mr. Fogg's conclusory statement that he is "familiar with the . . .

17  manner in which [MDC] creates and maintains its business records of those contracts and

18  designs." [Fogg Decl. at ¶ 2.] While Mr. Fogg worked at MDC since 1965 and purportedly had

19  numerous positions at MDC from 1965 to 1999, he does not describe how his duties in any of

20  those positions render him competent to authenticate Exhibits 1 through 15. Further, Mr. Fogg

21  cannot base his assertions on the contents of those hearsay-laden documents. [Fed. R. Evid. 802,

22  805; Fogg Decl. at ¶¶ 6-8, 10, 12-18, 21-22, 24, 29-34, 36-38.] MDC makes no showing that these

23  documents are admissible under any exception to the hearsay rule. [Fed. R. Evid. 803(6).] Mr.

24  Fogg's conclusory assertions that the documents are purportedly MDC's "business records" that

25  "were kept in, and maintained by, MDC in the ordinary course of business" are insufficient to

26  satisfy all the elements of the business-records exception to the hearsay rule. [Id.]

27          Also, a majority of Mr. Fogg's assertions are inadmissible because they are irrelevant,

28  hearsay, speculative, conclusory and lack foundation. [Fed. R. Evid. 401, 402, 602, 702, 802 and

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)                                                                7

1   805; Fogg Decl. at ¶¶ 1, 3-42; Exhibits 1-15 to MDC's Index.]  For example, Mr. Fogg asserts

2   "based on [his] research, knowledge and belief" that "Bendix brake assemblies and other aircraft

3   brake assemblies manufactured during the late 1930s and 1940s . . . installed on B-18A and B-23

4   aircraft during this time period had asbestos content."  [Fogg Decl. at ¶ 35.]  But he lacks personal

5   knowledge as to this assertion because he first worked at MDC in 1965 and he makes plain in his

6   declaration that he never personally encountered Bendix brakes on B-23 aircraft.  [*Id.* at ¶¶ 2, 35.]

7   Nor is it surprising that he provides no documentary support for this assertion because, in fact,

8   there is no mention of "asbestos" in the Bendix handbooks.  [Exhibits 11, 14 to MDC's Index.]

9   Mr. Fogg's assertions in paragraphs 40 through 42 of his declaration are equally suspect because

10  he provides no evidentiary support for his statements regarding the Air Force's purported control

11  of labels and warnings on B-23 aircraft.  [*See Hilbert*, 529 F.Supp.2d at 200 (conclusory

12  declaration of MDC's witness deemed speculative and inadmissible to show that MDC has a

13  colorable military-contractor defense to plaintiffs' failure-to-warn claims).]  Finally, Mr. Fogg's

14  assertions and the documents he relies upon regarding the B-18 are irrelevant because MDC's

15  basis for removing this action to federal court is plaintiffs' alleged exposure to asbestos from

16  MDC's B-23 and KC-10.  [Fogg Decl. at ¶¶ 3-7, 9, 11-14, 28-30; Exhibits 1-8 to MDC's Index.]

17         **2.**    **The Croslin Declaration and Documents Referenced Therein**

18        MDC submits the declaration of its current employee, Thomas Croslin, for the proposition

19  that the Air Force controlled all aspects of the creation of the KC-10, including the design and

20  placement of warnings.  But Mr. Croslin's assertions are inadmissible because they are irrelevant,

21  based on hearsay, speculative, conclusory and lack foundation.  [Fed. R. Evid. 401, 402, 602, 702,

22  802, and 805; Croslin Decl. at ¶¶ 1-42.]  First, he admits that the "information" in his declaration

23  is based on his review of unattached documents, "information provided by other employees" and

24  discussion "with employees under [his] supervision."  [Croslin Decl. at ¶¶ 1, 3.]  Because Mr.

25  Croslin fails to specify which paragraphs of his declaration are based on his review of unattached

26  documents or conversations with "other employees" his declaration should be stricken in its

27  entirety because it is based on inadmissible hearsay.  [Fed. R. Evid. 802, 805; Croslin Decl. at ¶¶

28  3-42.]  Also, paragraphs 5, 7, 8, 11, 15, 20-27, 32-42 of the Croslin Declaration are mere

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

8

1  conclusory statements lacking any evidentiary support. For example, Mr. Croslin in paragraphs

2  37-42 of his declaration provides no evidentiary support for his statements regarding the Air

3  Force's purported control of labels and warnings on the KC-10. Indeed, he refers to Section 3.2.5

4  of MIL-H-5473 but nowhere in that specification does it even mention the word "asbestos."

5       MDC also makes no showing that any of the documents on which Mr. Croslin relies in

6  forming his opinions are authentic and admissible under an exception to the hearsay rule. [*Id.* and

7  Exhibits 17-36 to MDC's Index; Fed. R. Evid. 803, 901.] MDC fails to proffer sufficient evidence

8  demonstrating each document's authenticity and admissibility under an exception to the hearsay

9  rule. [Fed. R. Evid. 802, 805, 901(a).] All Mr. Croslin says about these documents is that these

10  "records were kept in, and maintained by, MDC in the regular course of business." [Croslin Decl.

11  at ¶¶ 2-3.] Mr. Croslin first worked at MDC in 1982, and purportedly has had numerous positions

12  since then, yet he does not describe how his duties in any of those positions render him competent

13  to authenticate and confirm that each of the documents attached as Exhibits 17 through 36 to

14  MDC's Index are MDC's business records. [*Id.*] MDC was obligated to provide evidence other

15  than Mr. Croslin's conclusory statements to show that the documents are authentic and admissible

16  under an exception to the hearsay rule. [Fed. R. Evid. 802, 805.] MDC failed to do so.

17       **3.**     **The 1995 Affidavits of Alvin F. Meyer, Jr. and J. Lindsay Chalk**

18       The January 17, 1995 affidavits of Alvin F. Meyer, Jr. and MDC employee J. Lindsay

19  Chalk are inadmissible hearsay, not subject to any exception. [Fed. R. Evid. 801, 802; Exhibits 41

20  and 43 to MDC's Index.] The court in *Chamberlin v. Principi*, 2006 WL 647785, **1-2 (S.D.

21  N.Y. 2006) excluded the same type of outdated affidavit because it was hearsay, even if the

22  affidavit referenced some potentially non-hearsay statements. The 16 year old affidavits of

23  Messrs. Chalk and Meyer are indistinguishable from the outdated affidavit that the *Chamberlin*

24  court held to be inadmissible hearsay. Additionally, the Chalk and Meyer Affidavits were not

25  prepared for this case, so these affiants cannot attest that they are prepared to testify at this trial

26  consistently with the contents of their respective affidavits. [Fed. R. Civ. P. 56(e) ("[A]ffidavits

27  shall . . . show affirmatively that the <u>affiant is competent to testify</u> to the matters stated therein").]

28       Moreover, the Meyer Affidavit is full of conclusory statements, none of which are based on

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET,
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

9

1   personal knowledge of the Air Force contracts in question. [Fed. R. Evid. 602 and 702.] He offers

2   no evidence to support his generalized assertions. [Meyer Affidavit, Ex. 41 to MDC's Index at ¶¶

3   24-29.] Indeed, this is not the first time that MDC has relied upon a Meyer Affidavit in support of

4   its opposition to a motion to remand. In *Hilbert,* 529 F.Supp.2d at 200, the district court granted

5   plaintiffs' motion to remand because, among other deficiencies, the court found that Mr. Meyer's

6   statements that the Air Force "would not have approved any warnings," and that "during [his]

7   tenure, even if a government contractor . . . had suggested to the Air Force that asbestos warnings

8   should be placed on the aircraft or in manuals, those suggestions would have been futile," were

9   inadmissible because they amounted to mere "speculation." [*Id.*] Similarly, *Nguyen v. Allied*

10  *Signal, Inc.*, 1998 WL 690854 (N.D. Cal. Sept. 29, 1998), Judge Susan Illston found the Meyer

11  Affidavit insufficient to support defendants' claim of a colorable federal defense as to plaintiffs'

12  failure-to-warn claims because the affidavit "indicates only that the government approved all

13  warnings placed in technical manuals for the United States Air Force aircraft. [Defendants] offer

14  no evidence that they attempted to include such warnings, or that the government specifications

15  and contractual provisions explicitly directed them not to place warnings on their products." [*Id.*]

16  The evidence before this Court (and lack thereof) dictates the same conclusion.

17              **4.    The Former Testimony of Walter Melvin, M.D.**

18          The transcript of the former testimony of retired colonel Walter Melvin, M.D. is

19  inadmissible hearsay. [Fed R. Evid. 802; Ex. 43 to MDC's Index.] MDC fails to show that Dr.

20  Melvin's former testimony is admissible as non-hearsay or under a hearsay exception, including

21  Rule 32 of the Federal Rules of Civil Procedure. [*See* MDC's Opposition at 1:1-22:28.] MDC

22  cannot satisfy Rule 32 because plaintiffs were neither present nor represented at the taking of the

23  deposition of Dr. Melvin. [Fed. R. Civ. P. 32(a)(1).] Nor does MDC demonstrate that Dr. Melvin

24  is "unavailable." [Fed. R. Civ. P. 32(a)(4).] Indeed, MDC cannot merely contend that Dr. Melvin

25  lives more than 100 miles away from this Court because MDC is utilizing his expert opinion about

26  the Air Force's purported knowledge of asbestos-related health hazards. [*Carter-Wallace, Inc. v.*

27  *Otte*, 474 F.2d 529, 536-537 (2nd Cir. 1972).]

28          Beyond that, Dr. Walter Melvin's testimony recites two levels of inadmissible hearsay: (1)

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

10

the contents of unattached Air Force records that Dr. Melvin reviewed; and (2) Dr. Melvin's

testimony about the contents of those documents. [Fed. R. Evid. 802, 805.] Finally, Dr. Melvin's

former testimony is inadmissible because it is speculative, conclusory and lacks foundation to

support his expert opinion. [Fed. R. Evid. 602 and 702.] Indeed, MDC fails to attach any excerpts

of Dr. Melvin's former testimony demonstrating his qualifications and competence to testify about

the Air Force's purported knowledge of asbestos-related health hazards.

### E. MDC Shows No Colorable Defense to Plaintiffs' Design-Defect Claim

To satisfy the requirements of federal-officer removal pursuant to 28 U.S.C. § 1442(a),

MDC must: (1) be a "person" within the meaning of the statute; (2) demonstrate that it acted under

the direction of a federal officer; (3) raise a colorable federal defense to plaintiffs' claims; and (4)

establish a causal nexus between plaintiffs' claims and acts MDC performed under color of federal

office. [*Mesa v. Cal.*, 489 U.S. 121, 124-125 (1989).] MDC submits no competent – let alone

admissible – evidence with its removal notice or remand opposition to demonstrate that MDC is

able to even raise a "colorable" military-contractor defense to plaintiffs' design-defect claims.

[*Id.*; *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).] This is because MDC makes

no showing, through competent and admissible evidence that: (1) the Air Force **specifically**

**directed** MDC to use asbestos in its equipment; (2) MDC placed asbestos or asbestos-containing

materials in its equipment in conformity with the Air Force's directions, and at the Air Force's

specific behest; and (3) MDC warned the Air Force about the dangers in the use of asbestos in

MDC's aircraft that, although known to MDC about its own product, were not known to the Air

Force. [*See In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 813 (9th Cir. 1992) (to establish a

colorable military-contractor defense, removing party must show "that the government's

specifications required asbestos in their products").] MDC likewise fails to show that there is a

causal nexus between MDC's acts under color of federal office and plaintiffs' claims. [*Id.*]

#### 1. MDC's Burden Regarding Plaintiffs' Design-Defect Claims

MDC invokes the military-contractor defense as its basis for removal. To raise a

"colorable" military-contractor defense, it is MDC's burden to put forward competent and

admissible evidence showing that: (1) the United States approved reasonably precise

KAZAN, MCCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

IRIVAMONTE/729147.2

11

1    specifications; (2) MDC's aircraft conformed to those specifications; and (3) MDC warned the

2    United States about the dangers in the use of MDC's aircraft that were known to MDC but not to

3    the United States.[1]  [*Boyle,* 487 U.S. at 512.]  This third element of the *Boyle* test requires the

4    contractor to have "fully conveyed all information necessary to allow the government to make a

5    fully informed decision."  [*Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 583, 584 (9th Cir. 1996).]

6    "[S]tripped to its essentials, the military contractor defense under *Boyle* is to claim, 'The

7    Government made me do it.'"  [*In re Hawaii Fed. Asbestos Cases*, 960 F.2d at 813.]

8         MDC in its opposition erroneously asserts that, pursuant to *Hagen v. Benjamin Foster Co.*,

9    2010 WL 3745297 (E.D. Pa. Sept. 24, 2010), this Court "must construe the federal officer statute

10   expansively and view all facts identified by MDC, including those in its removal notice and this

11   opposition, in the light most favorable to MDC."  [[MDC's Opp. at pp. iv, 7, 10.]  But the holding

12   in *Hagen* is not binding on this court and neither the Ninth Circuit Court of Appeals nor any

13   federal district court in the Ninth Circuit has ever applied such a standard.  [*See Durham,* 445 F.3d

14   at 1252.]  In any event, it is still the removing party's burden to demonstrate removal under the

15   federal-officer statute.  Thus, while MDC need only show that its asserted defense is colorable, it

16   still must put forward sufficient evidence to enable this Court to:

17        [S]atisfy itself that the defense has enough substance to trigger the right to a federal forum.
         Relaxing this standard too far, particularly in the context of a private contractor, could well
18        err in the opposite direction – by providing a federal forum to a party whose acts were
         outside its federal directives.  A colorable federal defense, as *Mesa* itself makes plain, is
19        not a requirement that may be reduced to the point of vanishing altogether.

20   [*Holdren v. Buffalo Pumps, Inc.*, 614 F.Supp.2d 129, 141 (D. Mass. 2009).]

21              **2.    MDC's Evidence Fails to Show that the Air Force Directed MDC to Use
                        Asbestos in MDC's B-23 and KC-10 Aircraft**
22

23         The first and second elements of *Boyle* require MDC to demonstrate that the Air Force

24   "approved reasonably precise specifications" regarding the use of asbestos-containing components

---

[1]  The fact that in other contexts, the Air Force may or may not have known that asbestos posed a
hazard to human health in no sense put the Air Force on notice that the asbestos associated with
ordinary uses of **MDC's** product presented the risk of personal injury to users and bystanders.  It is
the maker of the product – MDC – and **not** the Air Force that would be expected to have the best
information about the potential health risks arising from foreseeable uses of the manufacturer's
(MDC's) product.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)                                                                    12

1   in the B-23 and KC-10, and that such aircraft conformed to those specifications. [*Boyle,* 487 U.S.

2   at 512.] In support of these elements, MDC cites solely to paragraphs 28 to 35 of the Croslin

3   Declaration and paragraphs 25 to 39 of the Fogg Declaration. [MDC's Opp. at 14:21-15:20.] As

4   detailed in this reply, MDC cannot raise a colorable military-contractor defense as to plaintiffs'

5   design-defect claims based solely on inadmissible evidence. But even setting aside the numerous

6   defects of MDC's evidence, which this Court should not do, a closer reading of the voluminous

7   amount of paper MDC submits with its opposition reveals that MDC presents **no** evidence that the

8   Air Force directed MDC to use asbestos in the B-23 or KC-10.

9       For the KC-10, Thomas Croslin asserts that the Air Force, not MDC, selected and required

10  the installation of certain General Electric ("GE") engines that purportedly were equipped with

11  asbestos-containing components. [Croslin Decl. at ¶¶ 28-29 and Exhibits 20-22 to MDC's Index.]

12  But these paragraphs of the Croslin Declaration merely demonstrate that the Air Force selected and

13  required the use of GE engines to power the KC-10. [*Id.*] Nowhere in the Air Force's

14  specification did it require GE or MDC to equip such engines with asbestos-containing

15  components. [*Id.*] Mr. Croslin also cites to the Asbestos Parts List attached to MDC's October

16  22, 1992 All Operator Letter ("AOL") to demonstrate that certain asbestos-containing components

17  were found in MDC's military aircraft. [Croslin Decl. at ¶ 30 and AOL, Ex. 22 to MDC's Index at

18  pp. 1358-1363.] However, MDC ignores that the Asbestos Parts List attached to the AOL **only**

19  pertains to MDC's **commercial**, not military, aircraft:

20  **ASBESTOS REDUCTION:**
    Recently, a foreign customer requested information regarding the identity of parts and
21  products containing **asbestos for the DC-9 and DC-10 aircraft** in order to comply with its
    government's reporting requirements. Douglas Aircraft provided the customer with
22  listings for the **DC-9/MD-80 and the DC-10/MD-11** aircraft that, to the best of the
    company's present knowledge, identified specific information for each product containing
23  asbestos. The information compiled for the twin-jet and trijet aircraft, identifying parts and
    products containing asbestos, provides the following breakdown for each part number and
24  identifies revisions: . . . [¶] A copy of the latest listings for the **DC-8, DC-9/MD-80 and
    the DC-10/MD-11** are enclosed for your information and retention. [*Id.*]

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

25  [AOL, Ex. 22 to MDC's Index at pp. 1355-1356 (emphasis added).] So contrary to the assertions

27  in the Croslin Declaration and MDC's opposition, MDC presents **no** competent evidence showing

28  that the Air Force required that the KC-10's engines include asbestos-containing parts.

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

13

1   Thomas Croslin also asserts that the Air Force required the KC-10 to be equipped with

2   asbestos-containing gaskets as set forth in certain military standard equipment specifications.

3   [Croslin Decl. at ¶¶ 32-36 and Exhibits 17, 23-31 to MDC's Index.]  But these military

4   specifications pre-date the KC-10 design drawings by several years.  For example, Mr. Croslin

5   claims that the May 19, 1983 and November 1978 design drawings for the KC-10's fueling system

6   required the use of MS9136 asbestos-containing gaskets.  [Croslin Decl. at ¶ 34 and Exhibits 27-

7   29 to MDC's Index.]  But the military initially approved MS9136 in 1965 – over a decade before

8   MDC issued its drawings for the KC-10's fueling system – and MDC fails to show that MS9136

9   was modified or superseded prior to the date of those KC-10 design drawings.  [Id.]  Mr. Croslin

10  also claims that the KC-10's venting system required the use of asbestos-containing gaskets

11  specified in military specification MIL-**G**-7021A.  [Croslin Decl. at ¶¶ 35-36 and Exhibits 30 and

12  31 to MDC's Index (emphasis added).]  However, MDC submits copies of MIL-**A**-7021A, MIL-

13  **A**-7021B and MIL-**A**-7021C with its opposition papers.  [Exhibits 32-34 to MDC's Index

14  (emphasis added).]  Nowhere in the Croslin Declaration, or anywhere else in MDC's opposition

15  papers, does it demonstrate that MIL-**G**-7021A and MIL-**A**-7021A, MIL-**A**-7021B and MIL-**A**-

16  7021C are one and the same.

17   As to the B-23, Larry Fogg asserts that such aircraft was equipped with asbestos-containing

18  Bendix brake linings.  [Fogg Decl. at ¶¶ 28-35 and Exhibits 11-14 to MDC's Index.]  But nowhere

19  in the Bendix manuals or documents on which Mr. Fogg relies indicate that asbestos was a

20  component ingredient in Bendix's brake linings.  [Id.]  Indeed, Mr. Fogg merely attests based on

21  his "research, knowledge and belief" that aircraft brake assemblies from the 1930s and 1940s

22  (Bendix or otherwise) "had asbestos content."  [Id.]  Mr. Fogg's assertion is a mere conclusory

23  statement lacking any evidentiary support and is based on hearsay sources and therefore

24  inadmissible.  [Fed. R. Evid. 602, 802, 805.]

25   Finally, Mr. Fogg asserts that the Air Force required B-23s to be equipped with "Wright

26  Cyclone GR2600-A71 and were designated as R-2600-3 Engines by the [U.S. Army Air Corps]."

27  [Fogg Decl. at ¶ 32 and attached Ex. 12 to MDC's Index.]  Further, Mr. Fogg declares that such

28  engines required the use of Air Force-Navy Aeronautical Standard AN900 asbestos-containing

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
55 HARRISON STREET,
JACK LONDON MARKET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

1 gaskets. [Fogg Decl. at ¶ 37 and attached Ex. 16 to MDC's Index.] However, AN900 was

2 canceled after January 12, 1967, six years before Timothy Vest ever set foot at Hangar 110.

3 [AN900, Ex. 15 to MDC's Index.] Also, the parts catalogs included in MDC's opposition papers

4 are for engine models R-2600-19 and R-2600-23, **not** the R-2600-3 engines that the military

5 purportedly required on KC-10s. [*Id.* and Ex. 12 to MDC's Index; Fogg Decl. at ¶¶ 32, 37-38.]

6 　　　　The last element of *Boyle* requires MDC to show that MDC warned the Air Force of

7 asbestos-related health hazards that were known to MDC but not to the Air Force. [*Boyle*, 487

8 U.S. at 512.] As previously detailed, MDC cannot rely on the conclusory, speculative and

9 inadmissible testimony of Thomas Croslin, Larry Fogg, retired colonels Alvin Meyer, Jr. and

10 Walter Melvin, and J. Lindsay Chalk to demonstrate that the Air Force somehow had superior

11 knowledge of asbestos hazards compared to MDC and that the Air Force prevented MDC from

12 warning it about asbestos-related health hazards. [*See Hilbert*, 529 F.Supp.2d at 200 and *Nguyen*,

13 1998 WL 690854, *3.] Nor does the district court's finding of fact in *Niemann v. McDonnell*

14 *Douglas Corp.*, 721 F.Supp. 1019 (S.D. Ill. 1989) in any way binding on this Court or on plaintiffs.

15 　　　　As the Ninth Circuit emphasized in *In re Hawaii,* 960 F.2d at 813, the *Boyle* military-

16 contractor defense is, at its core, a claim that the "Government made me do it." Here, MDC's

17 evidence fails to show that the Air Force ever issued any design specification or other command

18 compelling MDC to use asbestos or asbestos-containing parts in MDC's B-23 or KC-10. Thus,

19 MDC fails to establish that federal-officer jurisdiction exists as to plaintiffs' design-defect claims.

20 　　**F.　　MDC Has No Colorable Defense to Plaintiffs' Failure-to-Warn Claims**

21 　　　　MDC is wrong when it asserts in its opposition that if it has met its heavy burden to

22 produce admissible evidence showing it has a timely and "colorable" military-contractor defense

23 to plaintiffs' design-defect claims, it therefore inevitably also possesses a "colorable" military-

24 contractor defense to plaintiffs' failure-to-warn claims. [*See Oxford v. Foster Wheeler LLC*, 177

25 Cal.App.4th 700, 711-712 (Cal.App.1st 2009).] Rather, MDC must separately establish a

26 colorable military-contractor defense to plaintiffs' failure-to-warn claims by showing that: "(1) the

27 government exercised its discretion and approved certain warnings; (2) the contractor provided

28 warnings required by the government; and (3) the contractor warned the government about the

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

15

1   dangers in the equipment's use that were known to the contractor but not to the government."

2   [*Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-1004 (7th Cir. 1996).] MDC failed to do so.

3       MDC in its opposition fails to demonstrate that the Air Force ever, in any sense, exercised

4   any discretion to either approve or disapprove an asbestos-related warning pertaining to MDC's B-

5   23 and KC-10 aircraft. To satisfy this element, MDC was required to submit evidence showing

6   that the government exercised some form of control over the publication of warnings pertaining to

7   the B-23 and KC-10. [*Tate v. Boeing Helicopters*, 55 F.3d 1150,1156-1157 (6th Cir. 1995).] But

8   here, MDC at most offers the inadmissible, speculative and vague assertions of Messrs. Croslin,

9   Fogg, Meyer, Melvin and Chalk that the Air Force allegedly **would have** rejected MDC's efforts

10   to provide asbestos warnings **if** MDC had ever tried to do so. These claims are pure conjecture,

11   which cannot provide competent evidentiary support sufficient to establish that MDC, in fact,

12   possesses a "colorable" military-contractor defense. [*See Hilbert,* 529 F.Supp.2d at 200 (MDC's

13   Meyer Affidavit "amounts to speculation").]

14       And while MDC claims that the Air Force possessed final authority over the design and

15   labeling of the KC-10 and B-23, these statements in no way demonstrate that the Air Force ever

16   actually exercised that authority as to any asbestos-related warning that MDC or anyone else

17   proposed to be published concerning the KC-10 and B-23. The testimony of Messrs. Croslin,

18   Fogg, Meyer, Melvin and Chalk contain no claims that the military specifications MDC followed

19   specified which hazards manufacturers were required to warn about and which they were not.

20       In fact, the assertions of Messrs. Croslin, Fogg, Meyer, Melvin and Chalk are directly

21   contradicted by Military Standard 129E. [Military Standard 129E, Ex. 1 to Reply Rivamonte

22   Decl.] That standard "provides the requirements for the uniform marking of military supplies and

23   equipment for shipment and storage." [*Id.* at p. 1.] Paragraph 5.5.15.1 states that special

24   "handling instructions, markings, and warnings shall be shown as required by [federal regulations]

25   and by statute, regardless of destination of shipment." [*Id.* at p. 35.]

26       Despite the mountain of paper MDC submits with its opposition, MDC did not sustain its

27   burden of demonstrating a colorable military-contractor defense to plaintiffs' failure-to-warn

28   claims. It then follows that MDC did not sustain its burden of demonstrating a causal nexus

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

16

1   between plaintiffs' state law claims and MDC's contractual obligation to the Air Force.

2   Accordingly, plaintiffs' motion to remand should be granted because MDC fails to show that

3   federal-officer jurisdiction exists as to plaintiffs' failure-to-warn claims.

### G. Alternatively, Plaintiffs Would Waive Their Claims of Exposure to Asbestos from MDC's Military Aircraft

6   If the Court finds that MDC has a timely and colorable federal defense as to any of

7   plaintiffs' asserted claims against MDC stemming from Timothy Vest's exposures to asbestos in

8   military aircraft, plaintiffs will waive claims regarding exposure to asbestos from military aircraft

9   as to all defendants. Thus, plaintiffs will agree to limit their claims against MDC to claims

10  stemming from Mr. Vest's exposures to asbestos in non-military, civilian aircraft. Such a waiver

11  is valid and conclusively eliminates the military-contractor defense from this case. [*See Westbrook*

12  *v. Asbestos Defendants*, 2001 WL 902642, **2-3 (N.D. Cal. July 31, 2001); *Madden v. A.H. Voss*

13  *Co.,* 2009 WL 3415377, **2-3 (N.D. Cal. Oct. 21, 2009); *Lindenmayer v. Allied Packing &*

14  *Supply, Inc.*, 2010 WL 234906, *7 (N.D. Cal. January 14, 2010).] *Redman v. A.W. Chesterton*

15  *Co.*, 2008 WL 4447729 (N.D. Cal. 2008) is inapposite because the plaintiff in that case did not

16  waive all claims related to his asbestos exposure from military equipment.

17  Nonetheless, MDC asserts that federal-officer jurisdiction still exists because "several

18  defendants have filed cross-complaints against MDC for equitable contribution and indemnity."

19  [MDC's Opp. at 21:15-19.] MDC's statement is false because, to date, only one defendant,

20  Henkel Corporation ("Henkel"), has filed a cross-claim against MDC.[2] Also, while this case was

21  in state court, no defendant filed a cross-complaint against MDC or any other co-defendant. It is

22  unclear why Henkel suddenly decided to file a cross-claim in federal court when it had every

23  opportunity to file a cross-complaint in state court at any time in the 12 months this case has been

24  pending. [Cal. Code Civ. P. 428.50.][3] In any event, MDC ignores that because cross-claims relate

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

---

[2]  MDC's statement suggests it knows that other defendants will follow suit, reinforcing the conclusion that MDC is coordinating its actions with certain co-defendants in an attempt to manipulate federal jurisdiction.

[3]  Indeed, counsel for defendant Dean's Materials, Inc. ("Dean's") expressed in her January 27,

(continued...)

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

17

1   to the same transaction that is the subject matter of the main action, cross-claims are considered

2   "ancillary" to the main claim. [28 U.S.C. § 1367.] If a federal court dismisses the main claim for

3   lack of subject matter jurisdiction, any cross-claims dependent upon ancillary jurisdiction must

4   necessarily fall as well. [*Fairview Park Excavating Co., Inc. v. Al Monzo Const. Co., Inc.*, 560

5   F.2d 1122, 1125 (3d Cir. 1977).] "Deviation from this rule would work an impermissible

6   expansion of federal subject matter jurisdiction." [*Id.*] Thus, if plaintiffs waive all of their claims

7   against MDC as to Timothy Vest's exposure to asbestos from MDC's military aircraft, then

8   Henkel's cross-claim falls as well.

9         Contrary to MDC's assertion, the district court's reasoning in *Brewster v. A.W. Chesterton*

10   *Co.*, 2007 WL 1056774 (N.D. Cal. Apr. 6, 2007), is directly on point. In *Brewster*, GE made the

11   same arguments that MDC makes in its opposition to plaintiffs' remand motion. First, GE argued

12   that it could assert the federal-officer defense because it must "defend" against a co-defendant's

13   claim that GE's equipment was the cause of the plaintiff's injury. [*Id.* at *2.] But the district court

14   saw the flaw in this argument because the plaintiffs in *Brewster* were "not seeking any damages

15   for injury caused by the turbines for which GE seeks to invoke the federal-officer defense." [*Id.* at

16   *3.] Because plaintiffs here are willing to waive their claims regarding Timothy Vest's exposure

17   to asbestos from MDC's military aircraft, plaintiffs' express waiver of those claims means that

18   MDC has no liability from any injury flowing from any products manufactured by MDC and

19   supplied to the Air Force. MDC will never have to pay for any injury caused by those exempt

20   products, including Henkel's cross-claim. Finally, as no defendant has identified any exposure to

21   asbestos from miliary aircraft, this is a red herring. Nevertheless, if it becomes an issue, plaintiffs

22   will waive any exposure from military aircraft as to *all* defendants, making it irrelevant.

23         Like GE in *Brewster*, MDC also contends that its military-contractor defense "will still be

24   at issue even if plaintiffs disclaimed all of their military claims against MDC" because "California

25   tort law," i.e. Proposition 51 (Cal. Civ. Code § 1431.2), requires that "fault be allocated amongst

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

26
27
28

---

[3](...continued)
2011 letter to counsel for Henkel that Henkel's motive in filing a cross-claim against Dean's and
other defendants at this late stage of the litigation is "completely frivolous if not fraudulent."
[Dean's January 27, 2011 Letter to Henkel, Ex. 6 to Reply Rivamonte Decl.]

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

IRIVAMONTE/729147.2

18

1 | all tortfeasors." [MDC's Opp. at 21:20-22:4.] To paraphrase Judge William Alsup:

2 | > In this case, it is a stretch to say that [MDC] would be asserting a defense to a "claim" –
3 | > even one raised by a co-defendant. Proposition 51 merely established a system of
> comparative fault in tort actions brought in California. Under Proposition 51, "[e]ach
> defendant shall be liable only for the amount of non-economic damages allocated to that
4 | > defendant in direct proportion to that defendant's percentage of fault, and a separate
> judgment shall be rendered against that defendant for that amount."
5 |
> [MDC's argument] establishes nothing more than the fact that Proposition 51 puts a burden
6 | > on party-defendants to establish that the actions of other parties were the legal causes of a
> plaintiff's injuries. Nothing cited by [MDC] establishes that co-defendants – seeking to
7 | > allocate liability to each other rather than themselves – are, under Proposition 51,
> automatically aligned as cross-claimants and cross-defendants. The mere fact that a party
8 | > bears a burden does not necessarily mean that such burden is a "claim" against which a
> co-defendant "defends." It remains plaintiffs' burden to show that any injury flowed as a
9 | > result of the non-exempt property. There is no "claim" by any other party.

10 | [*Brewster*, 2007 WL 1056774 at *3.] In other words, while it is true that, upon remand, the

11 | defendants in this case will have the opportunity to prove that some (or all) of plaintiff's injuries

12 | arise from exposure to military aircraft, and therefore, under Proposition 51, defendants' liability

13 | may be reduced by an amount they prove is allocable to such claims, no military-contractor

14 | defense remains because no one will every pay any amounts that were allocated to plaintiff's

15 | asbestos exposure from military aircraft. Rather, such an allocation simply reduces defendants'

16 | total liability.

17 | **H.  Plaintiffs' Attorneys' Fees Are Warranted**

18 | As previously explained in plaintiffs' motion to remand, MDC's removal of this case to

19 | federal court was improper. Pursuant to 28 U.S.C. § 1447(c), plaintiffs should be awarded their

20 | reasonable attorneys' fees related to moving for remand here in the amount of $16,350.

21 | **II.  CONCLUSION**

22 | For the foregoing reasons and for such additional reasons as counsel may advance at

23 | hearing, the Court should grant plaintiffs' motion to remand, so that this case can be immediately

24 | remanded to the Alameda County Superior Court where it rightfully belongs.

25 | DATED:  January 28, 2011

KAZAN, McCLAIN, LYONS,
GREENWOOD & HARLEY
A Professional Law Corporation

26 |

27 | By _____
Ian A. Rivamonte

28 | Attorneys for Plaintiffs

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729147.2

Plaintiffs' Reply Memorandum of Points & Authorities in Support of Emergency Motion to Remand
Case No.: 3:11-cv-00061 (JSW)

19

1  Francis E. Fernandez, Esq. (C.S.B. #65775)
2  James L. Oberman, Esq. (C.S.B. #120938)
   Leigh A. Kirmssé, Esq. (C.S.B. #161929)
3  Ian A. Rivamonte, Esq. (C.S.B. #232663)
   Aaron Myers, Esq. (C.S.B. #200145)
4  KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
   A Professional Law Corporation
5  Jack London Market
   55 Harrison Street, Suite 400
6  Oakland, California  94607
   Telephone:  (510) 302-1000

7  Attorneys for Plaintiffs

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  TIMOTHY VEST and CAROLINE VEST,          Case No.: 3:11-cv-00061 (JSW)

12              Plaintiffs,                   **DECLARATION OF IAN A. RIVAMONTE IN
                                              SUPPORT OF PLAINTIFFS' REPLY TO**
13        vs.                                 **McDONNELL DOUGLAS CORPORATION'S
                                              OPPOSITION TO PLAINTIFFS'**
14  ALLIED PACKING & SUPPLY, INC., et         **EMERGENCY MOTION TO
    al.,                                      IMMEDIATELY REMAND ASBESTOS-**
15                                            **CANCER CASE TO CALIFORNIA**
                Defendants.                   **SUPERIOR COURT [28 U.S.C. § 1447(c)]**
16
                                              Date:        February 4, 2011
17                                            Time:        9:00 a.m.
                                              Judge:       Hon. Jeffrey S. White
18                                            Courtroom:   11, 19th Floor

19        I, Ian A. Rivamonte, declare:

20        1.      I am an attorney licensed to practice in all courts of the State of California and in

21  this Court, and I am an associate of Kazan, McClain, Lyons, Greenwood & Harley, a Professional

22  Law Corporation, attorneys of record for the plaintiffs herein.  I have personal knowledge of the

23  facts expressed in this declaration and, if asked, could and would testify competently to the truth of

24  those facts.

25        2.      Attached as Exhibit 1 hereto, and incorporated fully herein by reference, is a true

26  copy of the April 20, 1970 Military Standard Marking for Shipment and Storage, MIL-STD-129E.

27        3.      Attached as Exhibit 2 hereto, and incorporated fully herein by reference, is a true

28  copy of World Airways, Inc.'s September 23, 2010 Second Set of Special Interrogatories to

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729679.1

Rivamonte Declaration in Support of Plaintiffs' Reply to MDC's Opp. to Plaintiffs Motion to Remand
Case No.: 3:11-cv-00061 (JSW)                                                              1

Plaintiff Timothy Vest.

4.  Attached as Exhibit 3 hereto, and incorporated fully herein by reference, is a true copy of plaintiff Timothy Vest's October 25, 2010 Responses to World Airways, Inc.'s Second Set of Special Interrogatories.  Plaintiff served his responses to World Airways, Inc.'s discovery by mail to McDonnell Douglas Corporation and all other defendants on October 25, 2010.

5.  Attached as Exhibit 4 hereto, and incorporated fully herein by reference, is a true copy of Alameda County Superior Court Defendants' Standard Interrogatories to Plaintiff (Personal Injury).

6.  Attached as Exhibit 5 hereto, and incorporated fully herein by reference, is a true copy of plaintiffs' February 16, 2010 Responses to Alameda County Superior Court Defendants' Standard Interrogatories to Plaintiff (Personal Injury).

7.  Attached as Exhibit 6 hereto, and incorporated fully herein by reference, is a true copy of the January 27, 2011 letter from Jennifer M. Ways, counsel for defendant Dean's Materials, Inc., d.b.a. Contract Material Suppliers ("Dean's Materials"), to Mark G. Intrieri, counsel for defendant Henkel Corporation.  Dean's Materials served this letter on all parties in this case on January 27, 2011.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that I executed this declaration on January 27, 2011 at Oakland, California.

Ian A. Rivamonte

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

IRIVAMONTE/729679.1

MIL-STD-129E NOTICE 8 ■ 9999911 0388510 552 ■

MIL-STD-129E

<u>20 APRIL 1970</u>
SUPERSEDING
MIL-STD-129D
28 December 1964

# MILITARY STANDARD

# MARKING FOR SHIPMENT AND STORAGE



FSC PACK

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/5/1 17 56:10 GMT

Exhibit re: Reply 1-1

Case MDL No 875 - Document 6670-15 - Filed 01/08/11 Page 29 of 128
Case MDL-cv-00061-JSW Documents5-2 Filed 08/23/11 Page 2 of 10

MIL-STD-129E NOTICE 8 ■■ 9999911 0388524 047 ■

## CONTENTS

|  |  | Page |
|---|---|---|
| | List of figures | iv–v |
| | Index | vi–xv |
| 1. | Scope | 1 |
| 2. | Reference documents | 1 |
| 3. | Definitions | 5 |
| 4. | General requirements | 10 |
| 4.1 | Abbreviations | 10 |
| 4.2 | Marking and marking material | 12 |
| 5. | Detailed requirements | 13 |
| 5.1 | Method of marking and size of markings | 13 |
| 5.2 | Interior package marking (including unpackaged items) | 16 |
| 5.3 | Standard exterior markings for shipment or storage (shipping containers, palletized unit loads and unpacked items) | 20 |
| 5.4 | Marking of international logistics and disaster relief shipments | 29 |
| 5.5 | Special marking on containers or unboxed supplies and equipment | 31 |
| 5.6 | Standard exterior marking procedures for boxes and crates | 41 |
| 5.7 | Standard marking procedures for bales | 43 |
| 5.8 | Standard marking procedures for cloth covered bundles | 44 |
| 5.9 | Standard marking procedures for shipping sacks and bags | 45 |
| 5.10 | Standard marking procedures for barrels, drums, and cylindrical containers | 47 |
| 5.11 | Standard marking procedures for miscellaneous packs (loose or unpacked items, small containers, rods, coils, reels, etc.) | 48 |
| 5.12 | Standard marking procedures for unpacked vehicles (with or without engine or motor, including carts, trailers, and similar items) | 49 |
| 5.13 | Standard marking procedures for palletized unit loads | 51 |
| 5.14 | Container marking for petroleum, unfabricated steel products and household goods | 51 |
| 5.15 | Standard marking procedures for subsistence items | 51 |
| | Appendix A--Commodity Category Marking Requirements | 61 |
| | Appendix B--FSC Commodity Identification | 64 |
| | Appendix C--Additional FSN and Item Description Marking | 70a |

iii

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/1 17:56:10 GMT

Exhibit re: Reply 1-2

Case MDL No. 875 Document 6670-15 Filed 01/28/11 Page 30 of 128
Case 3:11-cv-00061-JSW Document 65-2 Filed 08/23/11 Page 3 of 10

MIL-STD-129E NOTICE 8 ■■ 9999911 0388525 T83 ■■

MIL-STD-129E
4 September 1970

LIST OF FIGURES

Figure

1. Marking for unit and intermediate packages.
2. Precautionary label (method II).
3. Typical markings - (handling and special).
4. International logistics label.
5. Basic markings for box under 10 cubic feet.
6. Basic markings for box 10 cubic feet and over.
7. Oversea address marking.
7A. Alternate oversea address marking.
8. Domestic shipment address marking.
9. Domestic shipment address marking (first destination).
10. Intra CONUS parcel post marking.
11. APO and FPO parcel post marking.
12. Foreign military sales oversea address marking.
13. Basic marking for unsheathed crates under 10 cubic feet.
14. Basic marking for unsheathed crates 10 cubic feet and over.
15. Alternate method of marking unsheathed crates utilizing marking boards.
16. Basic marking for bales.
17. Basic markings for cloth covered bundles.
18. Basic markings for shipping sacks and bags.
19. Basic markings for drums, metal or fiber.
20. Basic markings for wooden barrels and kegs other than subsistence.
21. Basic markings for miscellaneous packs.
22. Method A markings for palletized unit loads.
23. Method B markings for palletized unit loads.
24. Method C markings for palletized unit loads.
25. Method D markings for palletized unit loads.
26. Fragile label.
27. Subsistence marking for paper shipping sacks - export.
28. Marking for shipping bags (textile and laminated textile) subsistence.
29. Crescent symbol for subsistence items.
30. Marking of shipping container for nonperishable subsistence for issue.
31. Marking of shipping container for nonperishable subsistence for resale.
32. Marking of shipping container for perishable subsistence for resale or issue.
33. Caution label for magnetic equipment suitable for air shipment.
34. Caution label for magnetic equipment not suitable for air shipment.
35. Marking panel for unpacked vehicles.
36. Military shipment label - DD Form 1387.
37. Military shipping tag - DD Form 1387-1.
38. Special handling data/certification - DD Form 1387-2.
39. Frozen medical material shipment form.
40. Chilled medical material shipment form.

iv

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/1 17:56:10 GMT

Case MDL No. 875 Document 6670-15 Filed 01/08/11 Page 31 of 128
Case 3:11-cv-00061-JSW Document 35-2 Filed 03/23/11 Page 4 of 10

MIL-STD-129E NOTICE 8 ▮▮ 9999911 0388526 91T ▮▮

### LIST OF FIGURES--Continued

Figure

41. Limited unrefrigerated medical material shipment form.
42. Priority shipment label and tag.
43. Expedited handling shipment label (code 999).
44. Serviceable label and tag.
45. Unserviceable label and tag.
46. Unserviceable condemned label and tag.
47. Suspended label and tag.
48. Test/modification label and tag.
49. Packing list - DD Form 1750.
50. Additional identification markings.
51. Symbol labels background colors.
52. Color marking rectangular shipping containers.
53. Color marking cylindrical containers.
54. Color marking irregularly shaped containers (bags, bales).
55. Color marking loose unpacked items.
56. Color marking palletized load, single commodity.
57. Color marking consolidated containers of mixed commodities.

v

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/1 17:56:10 GMT

MIL-STD-129E NOTICE 8 ■■ 9999911 0388537 7T5 ■■

MIL-STD-129E
21 May 1971

## 1. SCOPE

1.1 **Scope.** This standard provides the requirements for the uniform marking of military supplies and equipment for shipment and storage. It accommodates the requirements for coded and in the clear data and forms required by Military Standard Requisitioning and Issue Procedures (MILSTRIP) and Military Standard Transportation and Movement Procedures (MILSTAMP) for movement processing.

1.2 **Application.**

1.2.1 Marking for shipment and storage of petroleum products shall be as specified in paragraph 5.14.1 herein.

1.2.2 Marking for shipment and storage of unfabricated steel mill products shall be as specified in paragraph 5.14.2 herein.

1.2.3 Marking for household goods shall be as specified in paragraph 5.14.3 herein.

1.2.4 Marking for shipment and storage of subsistence items shall be as specified in paragraph 5.15 herein.

1.2.5 Marking of radioactive material shall be as specified in paragraphs 5.2.2.4 and 5.5.15.9 herein.

1.2.6 Marking of ammunition, explosives, and explosive components shall be as specified in paragraphs 5.5.15.12 and 5.13.5 herein.

1.2.7 Marking of magnetic equipment for shipment via military aircraft shall be as specified in paragraphs 5.2.2.11 and 5.5.15.8 herein.

## 2. REFERENCE DOCUMENTS

2.1 The issues of the following documents in effect on the date of invitation for bids or request for proposal form a part of this standard to the extent specified herein.

SPECIFICATIONS

Federal

L-T-90 – Tape, Pressure-Sensitive, Adhesive (Cellophane and Cellulose Acetate)

NN-P-530 – Plywood, Flat Panel

TT-E-489 – Enamel, Alkyd, Gloss (For Exterior and Interior Surfaces)

TT-E-515 – Enamel, Alkyd, Lusterless, Quick Drying

1

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/1 17:56:10 GMT

MIL-STD-129E
21 May 1971

    TT-I-558 – Ink, Marking, Stencil, Opaque, for Nonporous
               Surfaces (Metal, Glass, etc.).

    TT-I-559 – Ink, Marking, Stencil, Opaque, for Porous Surfaces
               (Wood Boxes, Fiber Cartons, etc.).

    TT-L-20 – Lacquer, Camouflage.

    TT-L-40 – Lacquer, Lusterless, Obliterating.

    TT-V-121 – Varnish, Spar, Water-Resisting.

    UU-T-81 – Tags, Shipping and Stock.

    UU-T-106 – Tape, Pressure-Sensitive, Adhesive, Masking, Paper.

    MMM-A-105 – Adhesive and Sealing Compounds, Cellulose Nitrate
               Base, Solvent Type.

    MMM-A-178 – Adhesive, Paper Label, Water-Resistant.

    MMM-A-179 – Adhesive: Paper Label, Water-Resistant, Water
               Emulsion Type.

    PPP-B-26 – Bag, Plastic, Polyethylene.

    PPP-E-540 – Envelope: Water-Resistant, for Packing Lists and
               Shipping Documents.

    PPP-F-320 – Fiberboard; Corrugated and Solid, Sheet Stock
               (Container Grade), and Cut Shapes.

    PPP-P-700 – Protector, Packing List.

    PPP-T-60 – Tape, Pressure-Sensitive, Adhesive, Waterproof, for
               Packaging.

Military

    MIL-P-116 – Preservation, Methods of.

    MIL-S-4473 – Shielding of Magnetron Tubes and Magnets for
               Air Shipment.

2

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/1 17:56:10 GMT

MIL-STD-129
21 May 1971

MIL-P-13983 – Paint, Temporary, Lusterless, Gasoline
                  Removable.

MIL-C-17504 – Coating Compound, Acrylic, Clear.

MIL-M-19590 – Marking of Commodities and Containers to Indicate
                  Radioactive Material.

MIL-P-52108 – Paint, Water Emulsion Type (for Stenciling and
                  Obliterating).

2a

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/1 17:56:10 GMT

Exhibit re: Reply 1-7

Case MDL No. 875 Document 6670-15 Filed 01/08/11 Page 35 of 128
Case 3:11-cv-00001-JSW Document 5-2 Filed 04/23/11 Page 88 of 10

MIL-STD-129E
21 May 1971

STANDARDS

Federal

Federal Standard No. 75 - Glossary of Packaging Terms.

Federal Standard No. 595 - Color.

Military

MIL-STD-163 - Steel Mill Products Preparation for Shipment and Storage.

MIL-STD-212 - Preparation of Household Goods for Shipment and Storage and Related Services.

MIL-STD-290 - Packaging, Packing and Marking of Petroleum and Related Products.

MIL-STD-444 - Nomenclature and Definitions in the Ammunition Area.

MIL-STD-709 - Ammunition Color Coding.

MIL-STD-1341 - Symbols For Packages and Containers For Hazardous Industrial Chemicals and Materials.

(Copies of specifications, standards, drawings, and publications required by contractors in connection with specific procurement functions should be obtained from the procuring agency or as directed by the contracting officer.)

2.2 Other publications. The following documents from a part of this standard to the extent specified herein. Unless otherwise indicated, the issues in effect on date of invitation for bids or request for proposal shall apply.

GOVERNMENTAL

Civil Aeronautics Board Publications.
Department of Transportation Regulations.
Federal Aviation Agency Regulations.
Federal Hazardous Substances Act, Public Law 86-613.
Maritime Administration Regulations.

U.S. Postal Manual. (Chapter 1, Section 137)

(Application for copies should be addressed to the Superintendent of Documents, Government Printing Office, Washington, D.C. 20402.)

3

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/1 17:56:10 GMT

MIL-STD-129E
20 April 1970

JOINT MILITARY

Packaging and Handling of Dangerous Materials for Transportation
by Military Aircraft (DSAM 4145.3, AFM 71-4, TM 38-250,
NAVAIR 15-03-500, and MCO P4030.19).

Military Standard Requisitioning and Issue Procedure (DOD
4140-17M).

(Application for copies should be addressed to the Superintendent of
Documents, Government Printing Office, Washington, D.C. 20402).

Military Standard Transportation and Movement Procedures
(DOD 4500.32-R).

(Distribution is handled exclusively through Service/Agency distribution
points.)

U.S. COAST GUARD REGULATIONS

Code of Federal Regulations, Shipping, Title 46 (Part 146 and
147).

Transportation Title 49 (Part 71 through 79).

(Application for copies should be addressed to the Superintendent of
Documents, Washington, D.C. 20402).

INTERSTATE COMMERCE COMMISSION REGULATIONS

(Application for copies should be addressed to the Superintendent of
Documents, Government Printing Office, Washington, D.C. 20402).

NONGOVERNMENTAL

Manufacturing Chemists Association

Manual L-1, Guide to Precautionary Labeling of Hazardous
Chemicals.

(Application for copies should be addressed to the Manufacturing Chemists
Association, 1825 Connecticut Avenue, N.W. Washington, D.C. 20000.)

National Fire Protection Association International
Fire Protection Guide on Hazardous Materials.

4

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/1 17:56:10 GMT

MIL-STD-129E NOTICE 8 ■■ 9999911 0388574 672 ■■

MIL-STD-129E
21 May 1971

The applicable icing and time data are to be inserted on the labels at
time of shipment. In addition, "ARROW" and "FRAGILE" markings shall be
applied to containers of frozen medical items. A completed DD Form
1387-2, Special Handling Data Certification Form, is required and shall be
applied to the address side of the container when shipment is via
military air transportation (see 5.5.15.1.1).

  5.5.13  Chilled Medical Material Shipments (DD Form 1502-1).  Containers
packed with perishable medical refrigerated items (constant temperatures
must be maintained between 35° and 46°F.) shall have completed PERISHABLE -
KEEP CHILLED labels (DD Form 1502-1) applied to the address side and the
opposite side of each container (fig 40).  The applicable icing and time
data are to be inserted on the labels at time of shipment.  In addition,
"ARROW" and "FRAGILE" markings shall be applied to containers of chilled
medical items.  A completed DD Form 1387-2 is required and shall be
applied to the address side of the container when shipment is via military
air transportation (see 5.5.15.1.1).

  5.5.14  Limited Unrefrigerated Medical Material Shipments (DD Form 1502-2).
Containers packed with perishable medical items out of refrigeration (when
receipt of shipment by consignee is assured within a specified number of
days) shall have completed PERISHABLE labels (DD Form 1502-2) applied to
the address side and the opposite side of each container (fig 41).  The
data applicable to time of removal from refrigeration are to be inserted
on the label at time of shipment.  In addition, "ARROW AND "FRAGILE"
markings shall be applied to containers of perishable medical items.  A
completed DD Form 1387-2 is required and shall be applied to the address
side of the container when shipment is via military air transportation
(see 5.5.15.1.1).

  5.5.15  Handling markings.

  5.5.15.1  Precautionary regulations and statute markings.  Special hand-
ling instructions, marking, and warnings shall be shown as required by the
Hazardous Materials Regulations of the Department of Transportation; Mari-
time Administration Regulations; U.S. Coast Guard Regulations; Federal
Aviation Agency and Civil Aeronautics Board Regulations; Federal, Food,
Drug, and Cosmetic Act and General Regulations for Its Enforcements;
Joint Military Publication, Packaging and Handling of Dangerous Materials
for Transportation by Military Aircraft, and by statute, regardless of
destination of shipment.

  5.5.15.1.1  DD Form 1387-2.  All shipments scheduled for transportation
by military aircraft (including LOGAIR and QUICKTRANS) containing dan-
gerous and hazardous material, biologicals, classified materiel, materiel
moving in bond and any other materiel requiring special handling shall be
labeled with a DD Form 1387-2 (fig 38).  The DD Form 1387-2 shall be used
to comply with Rule 7, Official Air Transport Restricted Articles Tariff
6 CAB #82 for shipment via commercial airlines.  Detailed instructions
for the required copies and preparation of DD Form 1387-2 labels are given

35

Provided by IHS
No reproduction or networking permitted without license from IHS

Sold to:PAPER TRAILS HISTORICAL, 01625976
Not for Resale,2007/3/11 17:56:10 GMT

Exhibit re:  Reply 1-10

1    **BRYAN CAVE LLP**
2    James Goldberg, California Bar No. 107990
     Sussanah Mitchell, California Bar No. 199950
3    Two Embarcadero Center, Suite 1410
     San Francisco, California 94111
4    Telephone:    (415) 675-3400
     Facsimile:    (415) 675-3434
5
6    Attorneys For Defendant
     WORLD AIRWAYS, INC.
7
8
9
10                **SUPERIOR COURT OF CALIFORNIA**
11                    **COUNTY OF ALAMEDA**
12
13   TIMOTHY VEST and CAROLINE VEST,        Case No. RG09489518
14              Plaintiffs,                  Assigned for all pre-trial purposes to the Hon.
                                             Kenneth Mark Burr
15              vs.
                                             **WORLD AIRWAYS, INC.'S SECOND SET**
16   ALLIED PACKING AND SUPPLY, et al.,     **OF SPECIAL INTERROGATORIES TO**
                                             **PLAINTIFF TIMOTHY VEST**
17              Defendants.
18
19
20
21   PROPOUNDING PARTY:        WORLD AIRWAYS, INC.
22   RESPONDING PARTIES:       TIMOTHY VEST
23   SET NO.:                  TWO (2)
24
25
26
27
28

SF01DOCS\21328.2

WORLD AIRWAYS' SECOND SET OF SPECIAL INTERROGATORIES TO PLAINTIFFS

*[received stamp]* RECEIVED*
H 119
SEP 2 3 2010
DAK/GDG/JXB/TKC
KAZAN, McCLAIN, LYONS
GREENWOOD & HARLEY

*[left margin, vertical]* BRYAN CAVE LLP
Two Embarcadero Center, Suite 1410
San Francisco, California 94111

Defendant World Airways, Inc. ("World") requests, pursuant to California Code of Civil Procedure sections 2030.010 et seq., that plaintiff Timothy Vest ("YOU") respond under oath to the following Special Interrogatories within the time specified by the Code.

## SPECIAL INTERROGATORIES

**INTERROGATORY NO. 52:**

Please identify the dates between January 1, 1973 and December 31, 1983 when Warren Vest was out of the United States.

**INTERROGATORY NO. 53:**

Please identify the specific location, by core and floor, where YOU (Timothy Vest) were exposed to dust from sheet rock work at Hanger 110.

**INTERROGATORY NO. 54:**

Please identify the specific airplane parts that YOU (Timothy Vest) observed being serviced at Hanger 110.

**INTERROGATORY NO. 55**

Please identify the specific asbestos containing airplane parts that Warren Vest observed being serviced at Hanger 110.

**INTERROGATORY NO. 56**

Please identify the specific pieces of information World Airways possessed prior to 1984 that put World Airways on notice that the specific airplane parts YOU observed being serviced contained asbestos.

**INTERROGATORY NO. 57**

Please identify the specific pieces of information World Airways possessed prior to 1984 that put World Airways on notice that the specific airplane parts Warren Vest observed being serviced contained asbestos.

**INTERROGATORY NO. 58**

Please identify the specific asbestos-containing product that World Airways manufactured prior to 1984.

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94111

Exhibit re: Reply 2-12

**INTERROGATORY NO. 59**

Please identify the specific pieces of information World Airways possessed prior to 1984 that put World Airways on notice that a particular product it used in remodeling Hanger 110 contained asbestos.

**INTERROGATORY NO. 60**

Please identify the specific pieces of information World Airways possessed prior to 1984 that put it on notice that asbestos-containing products could cause cancer.

**INTERROGATORY NO. 61**

Please identify the specific pieces of information World Airways possessed prior to 1984 that put it on notice there is no safe level of exposure to asbestos.

**INTERROGATORY NO. 62**

Please identify the specific pieces of information World Airways possessed prior to 1984 that put it on notice exposure to just one fiber of asbestos can cause mesothelioma.

Dated: September 23, 2010

Respectfully submitted,

**BRYAN CAVE LLP**
James Goldberg

By: _____
James Goldberg
Attorneys for Defendant
WORLD AIRWAYS, INC.

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94111

WORLD AIRWAYS' SECOND SET OF SPECIAL INTERROGATORIES TO PLAINTIFFS

Exhibit re: Reply 2-13

1  **BRYAN CAVE LLP**
   James Goldberg, California Bar No. 107990
2  Sussanah Mitchell, California Bar No. 199950
   Two Embarcadero Center, Suite 1410
3  San Francisco, California 94111
   Telephone:    (415) 675-3400
4  Facsimile:    (415) 675-3434
5
   Attorneys For Defendant
6  WORLD AIRWAYS, INC.
7
8
9
10                  **SUPERIOR COURT OF CALIFORNIA**
11                      **COUNTY OF ALAMEDA**
12
   TIMOTHY VEST and CAROLINE VEST,          | Case No. RG09489518
13
             Plaintiffs,                     | Assigned for all pre-trial purposes to the
14                                           | Hon. Kenneth Mark Burr
             vs.                             |
15                                           | **DECLARATION OF JAMES GOLDBERG**
   ALLIED PACKING AND SUPPLY, et al.,        | **FOR ADDITIONAL INTERROGATORIES**
16
             Defendants.
17
18
19
20        I, James Goldberg, declare:

21        1.    I am an attorney licensed to practice law in the State of California. I am counsel at

22  the law firm BRYAN CAVE LLP, Two Embarcadero Center, Suite 1410, San Francisco,

23  California 94111, and I am an attorney of record for Defendant World Airways, Inc. herein.

24        2.    I am propounding to Plaintiff Timothy Vest the attached second set of

25  interrogatories.

26        3.    This set of interrogatories will cause the total number of interrogatories propounded

27  to the party to whom they are directed to exceed the number of specially prepared interrogatories

28  permitted by Section 2030.030 of the Code of Civil Procedure.

SF01DOCS\21328.2

                        DECLARATION OF JAMES GOLDBERG

4.      I am familiar with the issues and previous discovery conducted by all parties in this case.

5.      This set of interrogatories contains a total of 11 specially prepared questions.

6.      I have personally examined each of the questions in this set of interrogatories.

7.      This number of questions is warranted section 2030.040 of the Code of Civil Procedure because of the complexity and the quantity of existing and potential issues in this case.

8.      None of the questions in this set of interrogatories is being propounded for any improper purpose, such as to harass the party, or the attorney for the party, to whom it is directed, or to cause unnecessary delay or needless increase in the cost of litigation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 23rd day of September 2010, in San Francisco, California

James Goldberg

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94111

Exhibit re: Reply 2-15

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is Two Embarcadero Center, Suite 1410, San Francisco, CA 94111.

On **September 23, 2010**, I served the foregoing document, described as

**WORLD AIRWAYS, INC.'S FIRST SET OF SPECIAL INTERROGATORIES TO PLAINTIFF TIMOTHY VEST**

on Plaintiffs in this action, as follows:

**Denise Abrams, Esq.**
**Justin A. Bosl, Esq.**
**KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY**
**A Professional Law Corporation**
**Jack London Market**
**55 Harrison Street, Suite 400**
**Oakland, CA 94607**

☒ (BY PERSONAL DELIVERY) - I hand delivered the documents via Western Messenger to party by close of business day today.

☐ (BY FEDEX) I deposited in a box or other facility maintained by FedEx, an express carrier service, or delivered to a courier or driver authorized by said express carrier service to receive documents, a true copy of the foregoing document, in an envelope designated by said express service carrier, with delivery fees paid or provided for.

☐ (BY MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **September 23, 2010**, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Kedra Chan_

Kedra Chan

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94111

SF01DOCS\21328.2

1 | Denise Abrams, Esq. (C.S.B. #124139)
Justin A. Bosl, Esq. (C.S.B. #241117)
2 | KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY
A Professional Law Corporation
3 | 55 Harrison Street, Suite 400
Oakland, California 94607
4 | Telephone: (510) 465-7728

5 | Attorneys for Plaintiffs

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF ALAMEDA

10 | TIMOTHY VEST and CAROLINE VEST,     No. RG09489518

11 |          Plaintiffs,

12 |                                      **PLAINTIFF'S RESPONSES TO DEFENDANT**
   |    v.                                **WORLD AIRWAYS, INC.'S SECOND SET**
13 |                                      **OF SPECIAL INTERROGATORIES TO**
   | ALLIED PACKING AND SUPPLY, et al.,   **PLAINTIFF TIMOTHY VEST**
14 |
   |          Defendants.
15 |                                      Action Filed: December 17, 2009

16 | PROPOUNDING PARTY:     Defendant, WORLD AIRWAYS, INC.

17 | RESPONDING PARTY:      Plaintiff, TIMOTHY VEST

18 | SET NO.:               SET TWO (2)

19 |                        **INTRODUCTION**

20 |        The wording of these responses includes that of plaintiff's attorneys. As a result, some or

21 | all of these responses may contain wording that plaintiff might not use. The responses that follow

22 | are based on information possessed by plaintiff's attorneys, unless otherwise privileged, as well as

23 | information known to plaintiff. Plaintiff may not have any information concerning any particular

24 | response. Verification by plaintiff is not an indication that plaintiff has any knowledge, personal

25 | or otherwise, concerning any particular response.

26 | ///

27 | ///

28

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

RBERGHOFF/684321.1

1

**RESPONSE TO SPECIAL INTERROGATORY NO. 52.:**

Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, and overly broad. Plaintiff further objects to the extent that this interrogatory seeks information already in defendant's possession that is not relevant to the subject matter of this lawsuit and is neither admissible evidence nor reasonably calculated to lead to the discovery of admissible evidence. Based on a reasonable and good faith effort to obtain responsive information under C.C.P. § 2030.220(c), and without waiving any objection, plaintiff responds: Warren Vest was out of the United States from January 1, 1973 - August 1, 1973 except for the period he returned home for the grand opening of Hangar M-110 at the Oakland International Airport. Further, Warren Vest's employment records indicate he was also out of the county from August 21, 1982 - September 14, 1982. As a check pilot, per Warren Vest's testimony, he was on assignments 18-20 days up to a month and some of these assignments were overseas. Plaintiff refers defendant to Warren Vest's Social Security records, employment records, deposition testimony taken on August 19 and 20, 2010, and copies of his passport attached as Exhibit A. Discovery and investigation are continuing.

**RESPONSE TO SPECIAL INTERROGATORY NO. 53.:**

Plaintiff objects that this interrogatory is oppressive and burdensome as defendant is in a better position than plaintiff concerning the core and floors within Hangar M-110 where sheet rock work was being performed. Based on a reasonable and good faith effort to obtain responsive information under C.C.P. § 2030.220(c), and without waiving any objection, plaintiff responds: Plaintiff identifies all locations throughout Hangar M-110 where sheet rock was installed, maintained and replaced, including, but not limited to the area around Warren Vest's office, and CORE A - Mezzanine, 3rd Floor, 2nd Floor, Bottom floor, and Cafeteria; CORE B - Mezzanine, 3rd Floor, 2nd Floor, Bottom floor; and CORE C - Mezzanine, 3rd Floor, 2nd Floor, Bottom floor.

For further information, plaintiff refers to Timothy Vest's Responses to Joint Defense Interrogatories and deposition testimony; Warren Vest's employment records and deposition testimony taken August 19 and 20, 2010 in the present case; the deposition of Claude Fross taken

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

RBERGHOFF/684321.1

2

1   July 8, 2010 in the present case; the deposition of James Hales, taken June 3, 2010, in the present

2   case; plaintiff's responses to co-defendants F.P. Lathrop's, George E. Masker's, and World

3   Airway's discovery served in this case, and defendant's and co-defendants F.P. Lathrop's, George

4   E. Masker's, and World Airways' responses to plaintiff's discovery served in this case; and the

5   documents contained in "http://www.portofoakland.com/pdf/ admi_ shee _090224.pdf" (page 25 -

6   Project # 7: Demolition of Oakland Maintenance Center Hangar (2009)); the video clip of photos

7   of the construction and finished World Airways hangar found at

8   http://www.lathropconstruction.com/; the documents produced by RGA Environmental, United

9   Airlines, ERM, ACC Environmental, and Winzler Kelly in response to plaintiffs' subpoenas made

10   available to all defendants on March 4, 2010; and the documents produced by the defendant in

11   response to plaintiffs' February 4, 2010 deposition subpoena for production of business records

12   served on all defendants on March 24, 2010 and June 3, 2010. Discovery and investigation are

13   continuing.

14   **RESPONSE TO SPECIAL INTERROGATORY NO. 54.:**

15       Plaintiff objects that this interrogatory is overly broad, oppressive and burdensome. Based

16   on a reasonable and good faith effort to obtain responsive information under C.C.P. § 2030.220(c),

17   and without waiving any objection, plaintiff responds: Plaintiff observed engines, wheels, brakes,

18   inspection panels, cowlings, paint, and various other component parts being serviced at Hangar M-

19   110. Plaintiff further identifies airplane parts on all the aircraft serviced, maintained, and repaired

20   by defendant in Hangar M-110, including, but not limited to, the DC-8s, DC-10s, Boeing 707s,

21   727s, 737s, 747s, Lockhead L100s, L188s and L1011s, MD11s and 22s, and YS 11s. For further

22   information regarding what plaintiff observed in Hangar M-110 , plaintiff refers to his Responses

23   to Joint Defense Interrogatories and deposition testimony; plaintiff's responses to co-defendants

24   discovery served in this case, and defendant's and co-defendants responses to plaintiff's discovery

25   served in this case. Discovery and investigation are continuing.

26   **RESPONSE TO SPECIAL INTERROGATORY NO. 55.:**

27       Plaintiff objects that this interrogatory is overly broad, oppressive and burdensome as

28   defendant is in a better position than plaintiff concerning airplane parts in Hangar M-110 where

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

RBERGHOFF/684321.1

3

1   plaintiff visited.   Based on a reasonable and good faith effort to obtain responsive information

2   under C.C.P. § 2030.220(c), and without waiving any objection, plaintiff responds:  Warren Vest

3   testified that he knew that engines and various miscellaneous parts were serviced in the machine

4   shop in Hangar M-110.   For further information regarding what Warren Vest observed, plaintiff

5   refers Warren Vest's Social Security records, employment records, and deposition testimony taken

6   August 19 and 20, 2010 in this action.  Discovery and investigation are continuing.

7   **RESPONSE TO SPECIAL INTERROGATORY NO. 56.:**

8          Plaintiff objects that this interrogatory is overly broad, compound, vague and ambiguous as

9   defendant is in a better position than plaintiff regarding information defendant possessed prior to

10  1984.  Based on a reasonable and good faith effort to obtain responsive information under C.C.P. §

11  2030.220(c), and without waiving any objection, plaintiff responds:   Defendant knew or should

12  have known no later than its founding in 1948 that exposure to asbestos was harmful and caused

13  cancer.  By the 1930's it was well established in medical and scientific literature, and in California

14  Safety Orders, that breathing asbestos dust was very dangerous.  Defendant had a duty to follow

15  safety orders and regulations concerning dusts and air quality promulgated by the California

16  Department of Industrial Relations, U.S. and California Occupational Safety and Health

17  Administrations and the Environmental Protection Agency.  Effective on and after 1936, the

18  California Department of Industrial Relations required entities, like defendant, to ensure that

19  workers' exposure to asbestos, on premises where asbestos is used, remain at a minimum as stated

20  in *"Dusts, Fumes, Vapors and Gases Safety Orders."* Since the 1930s the State of California has

21  listed asbestos as a hazardous substance and required employers to take special precautions to

22  educate workers and minimize worker exposure.  Defendant was also subject to these regulations.

23  In 1947, the popular lay periodical Scientific American published an article titled "Cancer and

24  Environment."  This article listed asbestos as a known carcinogen.  Throughout the 1940's, 1950's,

25  and 1960's, other popular publications, including *Business Week*, *Newsweek*, and *The New York*

26  *Times* carried articles about the deadly effects of asbestos.  For further information regarding what

27  plaintiff observed in Hangar M-110, plaintiff refers to his Responses to Joint Defense

28  Interrogatories and deposition testimony.  Discovery and investigation are continuing.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**RESPONSE TO SPECIAL INTERROGATORY NO. 57.:**

Plaintiff incorporates his objections and responses to Interrogatory Nos. 55 and 56.

**RESPONSE TO SPECIAL INTERROGATORY NO. 58.:**

Plaintiff objects that this interrogatory is overly broad, oppressive and burdensome as defendant is in a better position than plaintiff regarding asbestos-containing products it manufactured prior to 1984. Based on a reasonable and good faith effort to obtain responsive information under C.C.P. § 2030.220(c), and without waiving any objection, plaintiff responds: Unknown. Plaintiff refers to defendant's ledgers, corporate records, correspondence, contracts, accounting ledgers, sales invoices, purchase orders, sales and promotional literature, account ledgers, contracts, bids, and other business records regarding products it manufactured. Discovery and investigation are continuing.

**RESPONSE TO SPECIAL INTERROGATORY NO. 59.:**

Plaintiff objects that this interrogatory is overly broad, compound, vague and ambiguous as defendant is in a better position than plaintiff regarding information defendant possessed prior to 1984. Based on a reasonable and good faith effort to obtain responsive information under C.C.P. § 2030.220(c), and without waiving any objection, plaintiff responds: Defendant is a multi-national corporation founded in 1948. For many years, defendant's headquarters was located in Hangar M-110 at the Oakland International Airport in Oakland, California. Defendant was involved in the original the construction and subsequent remodels in Hangar M-110 which were supervised, directed and approved by defendant, including, but not limited to, the installation, removal and repair of asbestos-containing spray-on fireproofing (Monokote), fireproofing insulation, gypsum wall board, vinyl asbestos floor tile, ceiling tiles, joint compound, drywall compound, pipe insulation and insulation. Defendant knew or should have known no later than its founding that exposure to asbestos was harmful and caused cancer. By the 1930's it was well established in medical and scientific literature, and in California Safety Orders, that breathing asbestos dust was very dangerous. Defendant had a duty to follow safety orders and regulations concerning dusts and air quality promulgated by the California Department of Industrial Relations, U.S. and California Occupational Safety and Health Administrations and the Environmental Protection

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

1   Agency. Effective on and after 1936, the California Department of Industrial Relations required

2   entities, like defendant, to ensure that workers' exposure to asbestos, on premises where asbestos

3   is used, remain at a minimum as stated in "*Dusts, Fumes, Vapors and Gases Safety Orders*." Since

4   the 1930s the State of California has listed asbestos as a hazardous substance and required

5   employers to take special precautions to educate workers and minimize worker exposure.

6   Defendant was also subject to these regulations. In 1947, the popular lay periodical Scientific

7   American published an article titled "Cancer and Environment." This article listed asbestos as a

8   known carcinogen. Throughout the 1940's, 1950's, and 1960's, other popular publications,

9   including *Business Week*, *Newsweek*, and *The New York Times* carried articles about the deadly

10  effects of asbestos.

11          Plaintiff refers to the following documents for further information about asbestos-

12  containing products used prior to 1984 in Hangar M-110: Plaintiff's responses to defendant's and

13  co-defendants F.P. Lathrop's, George E. Masker's, and The Port of Oakland 's discovery served in

14  this case; defendant World Airways' and co-defendants F.P. Lathrop's, George E. Masker's, and

15  The Port of Oakland's responses to plaintiff's discovery served in this case; and the documents

16  contained in "http://www.portofoakland.com/pdf/admi_ shee _090224.pdf" (page 25 - Project # 7:

17  Demolition of Oakland Maintenance Center Hangar (2009)); the video clip of photos of the

18  construction and finished World Airways hangar found at  http://www.lathropconstruction.com/;

19  the documents produced by RGA Environmental, United Airlines, ERM, ACC Environmental, and

20  Winzler Kelly in response to plaintiffs' subpoenas made available to all defendants on March 4,

21  2010; and the documents produced by the defendant in response to plaintiffs' February 4, 2010

22  deposition subpoena for production of business records served on all defendants on March 24,

23  2010, June 3, 2010 and October 18, 2010. Discovery and investigation are continuing.

24  **RESPONSE TO SPECIAL INTERROGATORY NO. 60.:**

25          Plaintiff objects that this interrogatory is overly broad, compound, vague and ambiguous as

26  defendant is in a better position than plaintiff regarding information defendant possessed prior to

27  1984. Plaintiff further objects to this interrogatory to the extent that it seeks disclosure of trial

28  witnesses (other than experts) and thus violates the attorney work-product doctrine. *City of Long*

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

*Beach v. Sup. Ct.* (1976) 64 Cal.App 3d 65. Based on a reasonable and good faith effort to obtain responsive information under C.C.P. § 2030.220(c), and without waiving any objection, plaintiff responds: Defendant is a multi-national corporation founded in 1948. Defendant knew or should have known no later than its founding that exposure to asbestos was harmful and caused cancer. By the 1930's it was well established in medical and scientific literature, and in California Safety Orders, that breathing asbestos dust was very dangerous. Defendant had a duty to follow safety orders and regulations concerning dusts and air quality promulgated by the California Department of Industrial Relations, U.S. and California Occupational Safety and Health Administrations and the Environmental Protection Agency. Effective on and after 1936, the California Department of Industrial Relations required entities, like defendant, to ensure that workers' exposure to asbestos, on premises where asbestos is used, remain at a minimum as stated in "*Dusts, Fumes, Vapors and Gases Safety Orders.*" Since the 1930s the State of California has listed asbestos as a hazardous substance and required employers to take special precautions to educate workers and minimize worker exposure. Defendant was also subject to these regulations. In 1947, the popular lay periodical Scientific American published an article titled "Cancer and Environment." This article listed asbestos as a known carcinogen. Throughout the 1940's, 1950's, and 1960's, other popular publications, including *Business Week*, *Newsweek*, and *The New York Times* carried articles about the deadly effects of asbestos.

The facts and supporting documentation that propounding defendant was liable in the distribution, supply, marketing, installation, application, removal and specification of asbestos-containing products, that these products were defective, that the dangers and defects were known and were consciously and deceptively disregarded, concealed, suppressed and that this defendant conspired with others to do so, and that no warning of the hidden dangers was given by propounding defendant as well as other members of the asbestos industry is equally available to propounding defendant as it is to plaintiff. Any summary or selective compilation or list of said documents is privileged work product of plaintiff's attorney. Plaintiff further refers propounding defendant to the following documents for facts and information sought here:

(1)     Any and all of the relevant medical and scientific literature which links asbestos

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

exposure to health hazards;

(2) The documents, publications, journals and textbooks of, and personal and professional knowledge of all industrial hygienists, doctors, nurses and other health workers employed by propounding defendant;

(3) The minutes and documents of the Asbestos Textile Institute, the National Insulation Manufacturers Association, the Thermal Insulation Manufacturers Association, the Industrial Hygiene Foundation, the Asbestos Information Association, the National Safety Counsel, and the depositions of the organizations' corporate officers and members;

(4) Barry I. Castleman's Asbestos: Medical and Legal Aspects (5th Edition);

(5) Any and all of propounding defendant's and those entities' (identified in Response to Interrogatory No. 59), if any, Responses to Plaintiff's Standard Interrogatories (General Order Nos. 29 and 129) In Re: Complex Asbestos Litigation, Superior Court, County of San Francisco, to Alameda County Superior Court Dieden Interrogatories, and all of propounding defendant's previous discovery responses and documents produced in asbestos litigation throughout the United States;

(6) All depositions and testimony, past and present, of propounding defendant's employees, contractors, and/or officers including consultants, doctors, nurses and industrial hygienists that contain any information that asbestos or asbestos-containing dust is or can be harmful;

(7) All minutes of the trade and industrial organizations to which propounding defendant belonged and to the depositions and/or testimony of the officials of these organizations, including but not limited to the American Petroleum Institute and its Medical Advisory Committee;

(8) All trade, medical, scientific and legal journals and magazines to which propounding defendant subscribed prior to 1980;

(9) All California and federal laws, safety orders, ordinances and regulations promulgated by the state of California Department of Labor, Industrial Safety Division, dating as far back as the 1930's that regulated the use of asbestos and asbestos-containing products in the

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

RBERGHOFF/684321.1

8

1   State of California;

2       (10)    All notices and warnings received by propounding defendant from miners,

3   manufacturers and/or suppliers of asbestos-containing products;

4       (11)    All orders, ordinances and statutes referred to in all OSHA and EPA citations

5   issued against propounding defendant;

6       (12)    All photographs contained within the Owens Corning Picture books;

7       (13)    Documents produced and/or possessed by plaintiff's father's employer, World

8   Airways;

9       These documents are equally available to and/or in defendant's possession.  Discovery and

10  investigation are continuing.

11  **RESPONSE TO SPECIAL INTERROGATORY NO. 61.:**

12      Plaintiff incorporates his objections and response to Interrogatory No. 60.

13  **RESPONSE TO SPECIAL INTERROGATORY NO. 62.:**

14      Plaintiff incorporates his objections and response to Interrogatory No. 60.

15  DATED: October 25, 2010.         KAZAN, McCLAIN, LYONS,
16                                    GREENWOOD & HARLEY
                                      A Professional Law Corporation

17

18                                    By: _____
19                                        Justin Bosl

                                      Attorneys for Plaintiffs
20

21

22

23

24

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913
25

26

27

28

Exhibit re:  Reply 3-25

1

## PROOF OF SERVICE

2

Re: *Timothy and Caroline Vest v. Allied Packing, et al.* ACSC RG09-489518

3

4      I declare that, I am employed in the County of Alameda, State of California. I am over the age of 18 years and not a party to the within action. My business address is 55 Harrison Street, Suite 400, Oakland, California 94607. On October 25, 2010 I served the following document(s):

5

6      **PLAINTIFF'S RESPONSE TO DEFENDANT WORLD AIRWAYS, INC.'S SECOND SET OF SPECIAL INTERROGATORIES TO PLAINTIFF**

7

8      by transmitting a true copy:

9      **BRYAN CAVE LLP**
**2 Embarcadero Center, Suite 1410**

10     **San Francisco, CA 94111**

11

12     via the following method:

13     _____  (By Facsimile Machine [FAX]) By personally transmitting a true copy thereof via an electronic facsimile machine

14

15     __xx___  (By Mail) I am readily familiar with this office's business practice for collection and processing of correspondence for mailing with the United States Postal Service. This document, which is in an envelope addressed as stated above, will be sealed

16     with postage fully prepaid and will be deposited with the United States Postal Service this date in the ordinary course of business.

17

18     _____  (By Overnight Delivery) By delivering to an authorized courier authorized by the express service to receive documents or depositing in a box or other facility regularly maintained by the express carrier a true copy thereof, on this date, and in

19     an envelope or package designated by the express service carrier.

20     _____  (By Personal Service) By causing to be personally delivered a true copy of the document as listed above.

21

22     _____  (By Electronic Mail) By causing to be personally delivered via email.

23     I declare under penalty of perjury that the foregoing is true and correct. Executed on October 15, 2010 at Oakland, California.

24

25     _____

Ryan Berghoff

26

27

28

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

RBERGHOFF/686086.1

1

**PROOF OF SERVICE**

Re:   *Timothy and Caroline Vest v. Allied Packing, et al.* ACSC RG09-489518

    I declare that, I am employed in the County of Alameda, State of California. I am over the age of 18 years and not a party to the within action. My business address is 55 Harrison Street, Suite 400, Oakland, California 94607. On October 26, 2010 I served the following document(s):

**PLAINTIFF'S RESPONSES TO DEFENDANT WORLD AIRWAYS, INC.'S SECOND SET OF SPECIAL INTERROGATORIES TO PLAINTIFF TIMOTHY VEST**

by transmitting a true copy:

ALL COUNSEL [SEE ATTACHED LIST]

via the following method:

_____    (By Facsimile Machine [FAX]) By personally transmitting a true copy thereof via an electronic facsimile machine

__xx___    (By Mail) I am readily familiar with this office's business practice for collection and processing of correspondence for mailing with the United States Postal Service. This envelope, which is in an envelope addressed as stated above, will be sealed with postage fully prepaid and will be deposited with the United States Postal Service this date in the ordinary course of business.

_____    (By Overnight Delivery) By delivering to an authorized courier authorized by the express service to receive documents or depositing in a box or other facility regularly maintained by the express carrier a true copy thereof, on this date, and in an envelope or package designated by the express service carrier.

_____    (By Personal Service) By causing to be personally delivered a true copy of the document as listed above.

_____    (By Electronic Mail) By causing to be personally delivered via email.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on October 26, 2010 at Oakland, California.

Ryan Berghoff

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY, PLC
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

RBERGHOFF/686081.1

1

SERVICE LIST    CASE: Vest, Timothy & Caroline [NE 1430]    ACTION #: RG09489518    October 26, 2010 3:39 PM

**BECHERER, KANNETT & SCHWEITZER**
1255 Powell Street, , Emeryville, CA 94608-2604
FOR: CYPRUS AMAX MINERALS CO/sii/pac/alt/eqt/CYPRUS MINES CORP; CYPRUS AMAX MINERALS
CO/sii/pac/alt/eqt/SIERRA TALC & CHEMICAL COMPANY; CYPRUS AMAX MINERALS
CO/sii/pac/alt/eqt/UNITED SIERRA DIVISION; CYPRUS AMAX MINERALS CO/sii/pac/et of PAUL W. WOOD
COMPANY; CYPRUS AMAX MINERALS COMPANY
PH: (510) 658-3600
FAX: (510) 658-1151

**BERRY & BERRY**
P.O. Box 16070, Oakland, CA 94610
FOR: DESIGNATED DEFENSE COUNSEL
PH: (510) 835-8330
FAX: (510) 835-5117

**BRYAN CAVE LLP**
2 Embarcadero Center, Suite 1410, San Francisco, CA 94111
FOR: WORLD AIRWAYS, INC.; WORLD AIRWAYS, INC.
PH: 415-675-3400
FAX: 415-675-3434

**BRYAN CAVE, LLP**
120 Broadway, Suite 300, Santa Monica, CA 90401-2305
FOR: MCDONNELL DOUGLAS CORPORATION; MCDONNELL DOUGLAS CORPORATION
PH: (310) 576-2100
FAX: (310) 576-2200

**CHAPMAN & INTRIERI**
2236 Mariner Square Drive, Suite 300, Alameda, CA 94501-1019
FOR: DEXTER CORPORATION; HENKEL CORPORATIO sii/pac/et to HENKEL LOCTITE CORPORATION;
HENKEL CORPORATION; HENKEL LOCTITE CORPORATION ; HENKEL LOCTITE CORPORATION
sii/pac/et to THE DEXTER CORPORATION; LIFE TECH CORP by merger to INVITROGEN CORP sii/pac/et THE
DEXTER CORP; LIFE TECHNOLOGIES CORPORATION suc by merger to INVITROGEN CORPORATION
PH: (510) 864-3600
FAX: (510) 864-3601

**COUNSEL UNKNOWN**
FOR: MCDERMOTT/SEALY, INC.

**DeHAY & ELLISTON, LLP**
1300 CLAY STREET, SUITE 840, Oakland, CA 94612
FOR: KAISER GYPSUM COMPANY, INC.
PH: 510-285-0750
FAX: 510-285-0740

**DONGELL LAWRENCE FINNEY LLP**
707 Wilshire Boulevard, 45th Floor, Los Angeles, CA 90017-3609
FOR: GEORGE E. MASKER, INC.
PH: 213-943-6100
FAX: 213-943-6101

**FOLEY & MANSFIELD, PLLP**
300 Lakeside Drive, Suite 1900, Oakland, CA 94612
FOR: KELLY-MOORE PAINT COMPANY; RAYMOND INTERIOR SYSTEMS - NORTH; RAYMOND
INTERIOR SYSTEMS - NORTH sii/pac/eqt to JAMES L. WHITTAKER
PH: 510-590-9500
FAX: 510-590-9595

**HANSON BRIDGETT LLP**
425 Market Street, 26th Floor, San Francisco, CA 94105-2173
FOR: THE PORT OF OAKLAND
PH: (415) 777-3200
FAX: (415) 541-9366

**HERR & ZAPALA**
152 North 3rd Street, Suite 500, San Jose, CA 95112
FOR: ALLIED PACKING AND SUPPLY
PH: (408) 287-7788
FAX: (408) 927-0408

**MCGIVNEY, KLUGER & GLASPY**
One Walnut Creek Center, 100 Pringle Ave., Ste 750, Walnut Creek, CA 94596
FOR: KENTILE FLOORS, INC.
PH: (925) 947-1300
FAX: (925) 947-1594

**McKENNA, LONG & ALDRIDGE**
101 California Street, 41st Floor, San Francisco, CA 94111
FOR: HEXCEL CORPORATION
PH: (415) 267-4000
FAX: (415) 267-4198

**McKENNA, LONG & ALDRIDGE LLP**
300 S. Grand Avenue, 14th Floor, Los Angeles, CA 90071
FOR: HEXCEL CORPORATION
PH: 213-688-1000
FAX: 213-243-6330

SERVICE LIST   CASE: Vest, Timothy & Caroline  [NE 1430]   ACTION #:  RG09489518   October 26, 2010  3:39 PM
Page Two

PERKINS COIE LLP
   Four Embarcadero Center, Suite 2400, San Francisco, CA  94111     PH:  (415) 344-7000
   FOR:  GEORGIA-PACIFIC LLC fka GEORGIA PACIFIC CORPORATION;   HONEYWELL INTERNATIONAL     FAX: (415) 344-7288
   INC. fka ALLIED SIGNAL, INC./sii/BENDIX CORP

PORT OF OAKLAND LEGAL  DEPARTMENT
   530 Water Street, 4th Floor, P.O. Box 2064, Oakland, CA  94607  United States     PH:  (510) 627-1348
   FOR:  THE PORT OF OAKLAND     FAX: (510) 444 2093

PRINDLE, AMARO, GOETZ, HILLYARD, BARNES & REINHOLTZ LLP
   One California Street, Suite 1910, San Francisco, CA  94104     PH:  (415) 788-8354
   FOR:  DEAN'S MATERIALS, INC. dba CONSTRUCTION MATERIAL SUPPLIER     FAX: (415) 788-3625

SEDGWICK, DETERT, MORAN & ARNOLD
   One Market Plaza, Steuart Tower, 8th Floor, San Francisco, CA  94105     PH:  (415) 781-7900
   FOR:  PARKER HANNIFIN;   PARKER HANNIFIN sii/pae/et of CLEVELAND WHEELS AND BRAKES     FAX: (415) 781-2635

SELMAN & BREITMAN
   33 New Montgomery Street, Sixth Floor, San Francisco, CA  94105     PH:  (415) 979-0400
   FOR:  ALTA BUILDING MATERIALS CO.;   KENTILE FLOORS, INC.     FAX: (415) 979-2099

STEPTOE & JOHNSON
   633 West Fifth Street, Suite 700, Los Angeles, CA  90071     PH:  (213) 439-9400
   FOR:  METROPOLITAN LIFE INSURANCE COMPANY     FAX: (213) 439-9599

THE MAU LAW FIRM
   950 Harrison Street, Suite 213, San Francisco, CA  94107     PH:  415-495-8082
   FOR:  GEORGE E. MASKER, INC.     FAX: 415-495-8084

WALSWORTH, FRANKLIN, BEVINS & McCALL
   601 Montgomery Street, 9th Floor, San Francisco, CA  94111     PH:  (415) 781-7072
   FOR:  HAMILTON MATERIALS, INC.     FAX: (415) 391-6258

WALSWORTH, FRANKLIN, BEVINS & McCALL - DOWMAN
   601 Montgomery Street, 9th Floor, San Francisco, CA  94111     PH:  (415) 781-7072
   FOR:  DOWMAN PRODUCTS, INC.     FAX: (415) 391-6258

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER
   525 Market Street, 17th Floor, San Francisco, CA  94105-2722     PH:  (415) 433-0990
   FOR:  F.P. LATHROP CORPORATION;   LATHROP CONSTRUCTION ASSOCIATES, INC.;   LATHROP     FAX: (415) 434-1370
   CONSTRUCTION ASSOC, INC. sii/pae/et  F.P. LATHROP CONSTRUCTION

End of Service List

DOUGLAS G. WAH, ESQ.
A LAW OFFICES OF
FISHER 8 HURST
ONE EMBARCADERO CENTER
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE (415) 984-8000

RECEIVED
NOV 10 1988
BERRY & BERRY

ATTORNEYS FOR

Specially Appearing
for Served Defendants

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| Plaintiff, | NO: |
| vs. | DEFENDANTS' STANDARD INTERROGATORIES TO PLAINTIFF |
| FIREBOARD CORPORATION, et al., | (Personal Injury) |
| Defendant. | |

PROPOUNDED:                    ON BEHALF OF DEFENDANTS

COORDINATING DEFENDANT:        Please contact _____
                               with any questions concerning these
                               interrogatories, including exten-
                               sions of time, etc.

RESPONDING PARTY:              Plaintiff,

SET NUMBER:                    PERSONAL INJURY I (PI I)

Mailed: _____            Plaintiff's Atty: _____

Due Date: _____

-1-

## INTRODUCTION

These written questions are "interrogatories" submitted to YOU under the provisions of Section 2030 of the Code of Civil Procedure of California. YOU are required to respond separately and fully to each of these questions. YOUR answer must be responsive to the question which is asked.

YOU are required to serve YOUR responses to these questions on <u>each</u> party not later than thirty (30) days after the date on which these questions were served on YOUR attorneys.

If any defendant is not satisfied with the responses to these interrogatories, any one defendant, after consultation with the coordinating defendant, may move to compel appropriate responses under the applicable California Code of Civil Procedure sections and after complying with Local Rules of court.

In answering these questions, YOU are required to furnish all information which is available to YOU, even if YOU do not have personal knowledge of the answer. This means that YOU must furnish all information on the subject covered by the questions which YOUR attorneys, assistants, advisors or investigators may have, even if they had not told YOU about it up to the time YOU answered these questions.

If YOU cannot answer one of these questions fully, YOU still have to furnish all of the information which YOU do have and then YOU must explain why YOU cannot answer any further.

LAW OFFICES
BERRY & BERRY

## DEFINITIONS

1. "DOCUMENT(S)" or "WRITING(S)" shall include all writings as defined by the California Evidence Code.

2. A request to "IDENTIFY" a writing or document means a request to either attach such as an exhibit to YOUR answers to these interrogatories, or to describe such with sufficient specificity that it may be made the subject of a request for production of documents. YOUR description should include, without limitation, an indication of: (a) the author; (b) addressee(s); (c) its date; (d) the nature of the writing or document (e.g., letter, telephone memorandum, audio tape recording, photograph, etc.); (e) a summary or description of the contents; and (f) the present location and custodian thereof.

3. A request to "IDENTIFY" an oral communication shall mean a request to describe these communication with particularity, and shall include, without limitation, the following information; (a) the identity of all parties to the communication; (b) the identity of the person whom YOU contend initiated the communication; (c) the identity of all persons present at the time of the communication; and (d) the time, date and place of the communication.

4. A request to "IDENTIFY" a person or individual means to state his or her name, place of employment, present business or home address and present business or home telephone number.

5. A request to "IDENTIFY" a product, material or compound means a request to describe the product, material or

LAW OFFICES
RY & BERRY
... STREET ...
D. CALIFORNIA 94612

compound by the following means: (a) by the nickname or slang name used in YOUR occupation; (b) by the name under which it is sold in the marketplace (trade name); and (c) by its generic name.

6. A request to "IDENTIFY" an employer or business entity means to state said entity's address and telephone number.

7. As used in these questions, "YOU" and "YOUR" refer to the person who is named above as the responding party. If more than one responding party is named, "YOU" and "YOUR" refer to each responding party separately, not jointly. A separate copy of these questions has been provided for each responding party.

LAW OFFICES
RRY & BERRY
_____
_____
ND, CALIFORNIA 94612

## INTERROGATORIES

INTERROGATORY NO. 1:

    (a)  Name:

First _____ Middle _____ Last _____

    (b)  Date of Birth: _____

    (c)  Place of Birth: _____

    (d)  Address: _____

    (e)  Height: _____

    (f)  Social Security Number: _____

    (g)  Kaiser Number: _____

    (h)  Government Serial Number: _____

    (i)  Military Serial Number: _____

    (j)  Driver's License Number & State: _____

    (k)  All of the names by which YOU have been known:

_____

    (l)  Highest grade level completed: _____

    (m)  Current Spouse's Name: _____

    (n)  Spouse's Date of Birth: _____

    (o)  Date of Current Marriage: _____

    (p)  Spouse's Current Address: _____

    (q)  Spouse's Occupation/Employer: _____

    (r)  Name of any Former Spouse: _____

    (s)  Date of any Former Marriage: _____

    (t)  Place, date and circumstances under which any marriage(s) was (were) dissolved or terminated:

_____

///

///

LAW OFFICES
RRY & BERRY

INTERROGATORY NO. 2:

For each child of any marriage (either natural or adopted), state: (Attach additional sheets, if necessary.)

| Name | Date of Birth | Address | Occupation |
|------|---------------|---------|------------|
|      |               |         |            |
|      |               |         |            |
|      |               |         |            |
|      |               |         |            |

INTERROGATORY NO. 3:

Are either of YOUR natural parents alive? If YOUR answers is "yes", please state for each parent:

(a) Current age(s)

(b) Any history of cancer or respiratory disease.

ANSWER:

INTERROGATORY NO. 4:

If either of YOUR natural parents are deceased, please state for each parent:

(a) Name of deceased parent(s)

(b) Age at death;

(c) Date of death;

(d) Place where the deceased parent(s)'s death certificate is filed.

ANSWER:

Y & BERRY
CALIFORNIA 9461

Exhibit re: Reply 4-35

INTERROGATORY NO. 5:

Have any of YOUR blood relatives (parents, grandparents, siblings, aunts, uncles or cousins) had cancer of any type? If so, please state:

(a) The name and exact relationship of each such person;

(b) The present residence address for each such living person; and

(c) The type of primary site of cancer.

ANSWER:


INTERROGATORY NO. 6:

If any person identified in YOUR answer to Interrogatory No. 5 is deceased, please state for each such person:

(a) His/Her complete name;

(b) Date of death;

(c) Place of death;

(d) Place where his/her death certificate would be on file; and

(e) Cause of death.

ANSWER:


INTERROGATORY NO. 7:

State the complete address of each of YOUR residences from January first of the year in which YOU contend that YOU were first exposed to asbestos to the present, and the inclusive dates of each period of such residence.

ANSWER:

LAW OFFICES
RY & BERRY
STREET
CALIFORNIA

INTERROGATORY NO. 8:

Please state YOUR educational background and IDENTIFY all institutions attended, including any apprenticeship courses, formal on-the-job training and safety classes YOU have taken, the date graduated from each institution, YOUR major course of study and any special scholastic honors or degrees received.

ANSWER:

INTERROGATORY NO. 9:

Have YOU ever been convicted of a felony? If so, please state fully and in detail the date, place and nature of each such felony conviction.

ANSWER:

INTERROGATORY NO. 10:

Have YOU ever been a member of the Armed Forces? If YOU have, please state: each branch of service in which YOU served; the inclusive dates of YOUR service; the date of YOUR discharge from active duty; YOUR service number; each place (e.g., fort, base, station, etc.) at which YOU served; and, YOUR duties at each place. If YOU have not ever been a member of the Armed Forces for health reasons, please state those reasons.

ANSWER:

Y & BERRY
W SPACE TWELFTH FLOOR
CALIFORNIA 94612

**INTERROGATORY NO. 11:**

For every doctor who has ever treated or examined YOU during the last ten (10) years for any condition, and beyond ten (10) years for conditions related to the lungs, respiratory system, internal organs, circulatory system and/or musculo-skeletal system of the trunk, and any additional complaints or conditions state in Response to Interrogatory No. 17, please complete the following: (If more space is needed, please attach additional sheets containing the requested information.)

Doctor's Name and Address                    Dates of Treatment

_____          _____

_____          _____

_____          _____

Reason(s) for Treatment

_____

_____

_____

_____

Doctor's Name and Address                    Dates of Treatment

_____          _____

_____          _____

_____          _____

Reason(s) for Treatment

_____

_____

_____

Exhibit re: Reply 4-38

Doctor's Name and Address                    Dates of Treatment

Reason(s) for Treatment

INTERROGATORY NO. 12:

     For every hospital in which YOU have ever been treated, tested, or examined, whether as an "in-patient" or as an "out-patient" during the last ten (10) years for any condition, and beyond ten (10) years for conditions related to the lungs, respiratory system, internal organs, circulatory system, and/or musculo-skeletal system of the trunk, and any additional complaints or conditions stated in Response to Interrogatory No. 11, please complete the following: (If more space is needed, please attach additional sheets containing the requested information.)

Name and Address
of Hospital

Dates of Test, Treatment,
Exam or Hospitalization

Exhibit re: Reply 4-39

1    Reason(s) for Hospital Visit

2

3

4

5

6    Name and Address
    of Hospital

7                          Dates of Test, Treatment,
                           Exam or Hospitalization

8

9

10

11

12   Reason(s) for Hospital Visit

13

14

15

16

17   Name and Address
    of Hospital

18                         Dates of Test, Treatment,
                         Exam or Hospitalization

19

20

21

22   Reason(s) for Hospital Visit

23

24

25

26

27  ///

28  ///

LAW OFFICES
RRY & BERRY
...
D CALIFORNIA

INTERROGATORY no. 13:

For every X-ray of the "trunk" that has ever been taken of YOU, please complete the following: (If more space is needed, please attach additional sheets containing the requested information.)

| Name and Address<br>Where X-Ray was Taken | Date(s) of X-Ray &<br>No. of X-Rays Taken | Part(s) of<br>Body X-Rayed |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Results, Conclusions, and/or Diagnosis from each X-Ray

_____

_____

_____

_____

INTERROGATORY NO. 14:

For every pulmonary function test that YOU have undergone, please complete the following: (If more space is needed, please attach additional sheets containing the requested information.)

Name and Address Where Test Was Performed:

_____

_____

_____

Date(s) of Tests

_____

Name of Doctor Administering and/or Interpreting Test

_____

_____

INTERROGATORY NO. 15:

Describe the name and quantity of each type of drug, tranquilizer, sedative or other medication taken or used by YOU during the last ten (10) years, specifying the purpose of use.

ANSWER:


INTERROGATORY NO. 16:

Do YOU or YOUR attorney have any medical reports from any persons, hospitals, doctors, medical practitioners or institutions that have ever treated or examined YOU at any time? If so, please attach copies of YOUR reports to these interrogatories. If YOU will not voluntarily attach copies of reports to the answers of these interrogatories, then please state fully and in detail:

(a) The identity of the report, or reports, by date, subject matter, name, address, job title or capacity of the persons to whom it is addressed or directed and the job title or capacity of the persons or persons who prepared the same;

(b) The name, address and present whereabouts of the person who has present custody or control thereof and the purpose of said preparation.

ANSWER:

LAW OFFICES
RY & BERRY
·IN STREET IN(IT) RID
D CALIFORNIA 9461.

INTERROGATORY NO. 17:

For each and every complaint, symptom, adverse reaction or other injury which YOU contend is directly or indirectly related to YOUR alleged exposure to asbestos or asbestos-containing products, please state:

(a)  The date on which YOU first began exhibiting signs of the complaint, symptom, adverse reaction or injury;

(b)  The date each such complaint, symptom, adverse reaction or injury ceased to affect YOU;

(c)  Any physical change in YOUR appearance occasioned by such complaint, symptom, adverse reaction or injury;

(d)  Each part of YOUR body which YOU contend has been affected;

(e)  State the date upon which each complaint, symptom, adverse reaction or injury was reported to a doctor or physician;

(f)  State the name, address and telephone number of each such physician to whom said complaint, symptom, adverse reaction or injury was reported;

(g)  Whether YOU have lost any time from work as a result of YOUR asbestos-related injury or medical condition; and

(h)  If such injury has resulted in lost time from work, please state the date on which YOU first lost work and the amount of time lost from work.

ANSWER:

L   FFICES
RY & BERRY

INTERROGATORY NO. 18:

Please state when YOU were first advised that YOU were suffering from an asbestos-related disease. Please include in YOUR answer:

(a) The date and time YOU were so advised;

(b) The name, address and telephone number of the physician and/or other person who so advised YOU;

(c) The name, address and telephone number of the physician who made the evaluation;

(d) The method and information upon which such determination was based;

(e) The name, address and telephone number of any hospital, medical institution, laboratory, physician, nurse, laboratory, technician, etc., involved in any part of such determination;

(f) The name, address and telephone number of every person, including YOUR relatives, employer or anyone acting in YOUR behalf, who was so advised. Please include the date when such persons were so advised;

(g) The name, address and telephone number of YOUR employer(s) at the time YOU were so advised;

(h) The specific course(s) of treatment or therapy, including any medicine prescribed, as a result of such a determination and the name, phone number and telephone number of each prescribing physician;

(i) State whether YOU have followed the medication or therapy regime prescribed by each of the said physicians for

LAW OFFICES
:RY & BERRY
ATH STREET TWELFTH FLOOR
:D. CALIFORNIA 94612

the treatment of said complaint, symptom, adverse reaction or injury; and

(j) Please state the name and addresses of any other physicians or practitioners subsequently affirming or making the same determination.

ANSWER:


INTERROGATORY NO. 19:

Have any of the said treating physicians informed YOU at any time that YOUR complaints, symptoms, adverse reactions or injuries may have been caused factors other than exposure to asbestos or asbestos-containing products? If so, please state:

(a) The other factors or reasons involved;

(b) The names, addresses and telephone numbers of the physicians believing or suspecting such other factors or reasons to be involved;

(c) The dates that said physicians told YOU that they believed or suspected that other factors or reasons might be involved; and

(d) The reason that said factors or reasons were excluded as possible sources of causes of the symptoms.

ANSWER:

INTERROGATORY NO. 20:

Please list all respiratory complaints and/or symptoms which YOU have suffered during YOUR lifetime, and list the inclusive dates for each such complaint.

ANSWER:


INTERROGATORY NO. 21:

Have YOU ever had any biopsies or tissue samples taken? If YOUR answer is in the affirmative, please state for each such procedure:

    (a)  The name of the doctor performing such procedure;

    (b)  The address where such procedure was performed;

    (c)  The date which such procedure was performed; and

    (d)  The results, conclusions and/or diagnosis from such procedure.

ANSWER:


INTERROGATORY NO. 22:

Do YOU know of any pathology slides that were made from any of YOUR tissue samples at any time? If YOUR answer is in the affirmative, for each set of slides made please state: (If more than one, please attach list.)

    (a)  The name of the hospital;

    (b)  The name of the doctor;

    (c)  The current location; and

    (d)  The date said slides were made.

ANSWER:

LAW OFFICES
RY & BERRY
STH STREET, SUITE 1200
D CALIFORNIA 9461
PHONE (415) 871-1111

Exhibit re: Reply 4-46

INTERROGATORY NO. 23:

Please IDENTIFY:

(a) Each doctor who has treated or examined YOU, except consultants, for asbestos-related disease or who has reviewed any of YOUR medical records, films, tissue samples or anything else concerning YOUR medical condition for the purpose of forming any medical opinion;

(b) YOUR medical records, film, tissue samples, documents and other materials relating to YOUR medical condition; and

(c) Each diagnosis of asbestos-related disease.

ANSWER:


INTERROGATORY NO. 24:

Have YOU sustained any injury, separate and apart from YOUR injuries or condition giving rise to this lawsuit, since the date YOUR complaint was filed? If "yes" please state:

(a) The nature of every such injury;

(b) The time, place and location of any such injury;

(c) The name and address of any physician treating YOU for any such injury; and

(d) Whether YOU contend that YOUR injury or condition giving rise to this lawsuit was aggravated by any such subsequent injury, and if so, the facts upon which YOU base this contention.

ANSWER:

L    ICES
RY & BERRY
      STREET
      D. CALIFORNIA 94612

INTERROGATORY NO. 25:

Have YOU every smoked tobacco products of any type?

ANSWER:

INTERROGATORY NO. 26:

If YOUR response to the above interrogatory is "yes," please state fully and in detail:

(a) The dates and time periods during which YOU have smoked;

(b) The type of tobacco products YOU smoke, or have smoked. Please state whether YOU inhaled the smoke or not;

(c) The daily frequency with which YOU smoke or have smoked;

(d) For any time period during which YOU ceased smoking tobacco products, please state YOUR reasons for stopping;

(e) For any time period that YOU commenced smoking tobacco products after a period of having stopped smoking, please state YOUR reasons for beginning again;

(f) If YOU have ever smoked cigarettes, please state the average number of packs per day YOU smoked; and

(g) Please state the commercial brand name(s) of any tobacco products that YOU have used.

ANSWER:

INTERROGATORY NO. 27:

Have YOU ever been advised by a physician to stop smok-ing? If so, give the date and the name and address of each

LAW OFFICES
RY & BERRY
STN STREET, TWELFTH FLOOR
D CALIFORNIA 90012

physician who gave any such advice. Please state whether YOU followed such advice; if so, for how long did YOU follow such advice? If YOU did not follow such advice, state why YOU did not do so.

ANSWER:

INTERROGATORY NO. 28:

Describe the extent to which YOU drank alcoholic beverages during YOUR lifetime, specifying the particular kind of alcoholic beverages and the quantity consumed per week.

ANSWER:

INTERROGATORY NO. 29:

For every type of employment that YOU have ever had, whether self employed or employed by others, please complete the following: (If more space is needed, please attach additional sheets containing the requested information.)

Employers' Name and Address

_____

_____

Job Title(s)

_____

_____

Date Started/Date Ended (Month, Date and Year)

_____

_____

Description of Job Duties:

_____

Do YOU claim exposure to asbestos at this employment?

Yes _____          No _____

Employers' Name and Address

_____

_____

Job Title(s)

_____

_____

Date Started/Date Ended (Month, Date and Year)

_____

_____

Description of Job Duties:

_____

_____

_____

Do YOU claim exposure to asbestos at this employment?

Yes _____          No _____

Employers' Name and Address

_____

_____

Job Title(s)

_____

_____

Date Started/Date Ended (Month, Date and Year)

_____

_____

Description of Job Duties:

_____

_____

_____

_____

Do YOU claim exposure to asbestos at this employment?

Yes _____          No _____

Employers' Name and Address

_____

_____

Job Title(s)

_____

_____

Date Started/Date Ended (Month, Date and Year)

_____

_____

Description of Job Duties:

_____

_____

_____

_____

Do YOU claim exposure to asbestos at this employment?

Yes _____          No _____

///

///

Y & BERRY
N STREET TWELFTH FLOOR
CALIFORNIA 94612

INTERROGATORY NO. 30:

For each employment in which YOU claim YOU were exposed to asbestos, please list:

(a) The date of YOUR claimed exposure to asbestos;

(b) The manner and duration of exposure;

(c) Whether YOUR duties included the installation of asbestos-containing materials;

(d) Whether YOUR duties included the tearing out or removal of asbestos-containing materials;

(e) The type of asbestos-containing materials to which YOU were exposed;

(f) The location of each job site, including the name of each plant, state and city where located, along with the beginning and ending date of each job;

(g) If YOU have at any time worked in a shipyard, please IDENTIFY the names of all ships upon which YOU worked;

(h) For each such job identified in response to subparts (f) and/or (g), please state the name and last known address of YOUR immediate supervisor or job superintendent on such job;

(i) For each such job identified in response to subparts (f) and/or (g), please state:

(1) The names and last known addresses of all persons with whom YOU worked regularly on such job;

(2) The job site where YOU worked with each person;

(3) The inclusive dates during which YOU worked with each person.

LAW OFFICES
RY & BERRY
SAN DIEGO, CALIFORNIA 9461

Exhibit re: Reply 4-52

(j) Any other persons YOU are aware of that have any information regarding the supply, use or distribution of products containing asbestos to which YOU may have been exposed. For each such person, please state:

    (1) The person's name;

    (2) The person's place of employment;

    (3) The inclusive dates of said employment; and

    (4) The current address and phone number of the person.

ANSWER:

INTERROGATORY NO. 31:

Were YOU ever exposed to asbestos products outside of YOUR work environment? If so, please state:

(a) Date and place of such exposure;

(b) The circumstances surrounding each exposure; and

(c) The manner and duration of exposure.

ANSWER:

INTERROGATORY NO. 32:

For each type of asbestos material and/or asbestos-containing product for which YOU claim exposure, please state:

(a) The employer, job site and dates where contact with each such asbestos material or product occurred;

(b) The name of the manufacturer of that asbestos material or product;

(c) The trade name of that material or product;

LAW OFFICES
RRY & BERRY

(d)  Any name used by yourself or other workers in referring to that material or product, such as nickname or slang term of that material or product;

(e)  A description of the box or container or wrapping that contained that product, including size, color and all writing on that box, including size and color or writing; and

(f)  A description of any labels, tags or warnings on the box, container or wrapping advising of possible health hazards or advising of methods of use or precautions to be taken.

ANSWER:


INTERROGATORY NO. 33:

At any location where YOU claim exposure to asbestos, were any cartons, containers or wrappings bearing the name, the trade name or any other identification of any of the defendants in this lawsuit?  If so, please state separately for each defendant:

(a)  Each location, the inclusive dates and the frequency that these cartons, containers or wrappings were present;

(b)  The identity of each person who can testify that such cartons, containers or wrappings were present;

(c)  The identity of each document that indicates that such cartons, containers or wrappings were present;

(d)  All evidence known to YOU that these cartons, containers or wrappings contained asbestos material and/or asbestos-containing products; and

LAW OFFICES
RY & BERRY
TWERTIES PROFESSIONAL
), CALIFORNIA 90012

(e)  The type of asbestos material and/or asbestos-containing products which were contained in each carton, container or wrapping.

ANSWER:

INTERROGATORY NO. 34:

If YOU have ever been exposed to asbestos products manufactured by companies not named as defendants in this lawsuit, please state:

(a)  The identity of the manufacturer of said product;

(b)  The date and place of each such exposure;

(c)  The circumstances surrounding each such exposure (i.e., whether YOU were working with the product or merely near an area where it was being used);

(d)  The nature of the product; and

(e)  As to any such exposure in a work situation, the identity of YOUR employer, as well as the address of the particular job site at which YOU were so exposed.

ANSWER:

INTERROGATORY NO. 35:

To the best of the plaintiff's own knowledge or recollection, what percentage of YOUR total alleged contact or exposure to asbestos or materials containing asbestos do YOU attribute to each individual or entity which YOU claim was a manufacturer or supplier of asbestos or materials containing asbestos?

(a)  Please indicate the manner and factors relied upon in making each such percentage calculation;

(b)  Please state the identity, capacities and job titles of all individuals assisting YOU or otherwise involved in calculating the above percentages;

(c)  Please IDENTIFY all DOCUMENTS, WRITINGS or other records, if any relied upon in calculating the percentages referred to above and further, state the present location and the identity of the present custodian of each such document or writing;

(d)  If YOU are unable to attribute such percentages, please state all efforts YOU have made to ascertain such percentages.

ANSWER:


INTERROGATORY NO. 36:

For each person that YOU worked with during any time in which YOU claim exposure to asbestos, please state:

(a)  That person's name;

(b)  That person's place of employment where said asbestos exposure occurred;

(c)  The inclusive dates during which YOU worked with that person;

(d)  The current address of that person; and

(e)  The current telephone number of that person.

ANSWER:

LAW OFFICES
RY & BERRY
...
CALIFORNIA

INTERROGATORY NO. 37:

Please IDENTIFY those individuals who worked at any location where YOU may have been exposed to asbestos, whether or not their employment coincided with yours, and list:

(a)  The person's place of employment where the asbestos exposure allegedly occurred;

(b)  The inclusive dates of that person's employment;

(c)  The current address of that person; and

(d)  The current telephone number of that person.

ANSWER:


INTERROGATORY NO. 38:

For any person that YOU are aware of that has any information whatsoever regarding the supply, use or distribution of products containing asbestos to which YOU may have been exposed, please state:

(a)  That person's name;

(b)  That person's place of employment;

(c)  The dates of said employment;

(d)  The address of said person; and

(e)  The telephone number.

ANSWER:


INTERROGATORY NO. 39:

Please IDENTIFY by date, purchaser, seller and product each and every invoice, bill or statement in YOUR possession,

custody or control, including any in YOUR attorneys' posses-
sion or control, which YOU contend demonstrate the sale of
asbestos-containing products to any location at which YOU were
employed.

ANSWER:

INTERROGATORY NO. 40:

Did YOU at any time receive, have knowledge or possess
any advice, publication, warning, order, directive, require-
ment or recommendation, whether oral or written, which pur-
ported to advise or warn YOU of the possible harmful affects
of exposure to, or inhalation of, asbestos or asbestos-
containing products? If so, please state:

(a)  The nature and exact wording of such advice, warn-
ing, recommendation, etc.;

(b)  The complete identity of each source of such advice,
warning, recommendation, etc.;

(c)  The date, time, place, manner and circumstances when
each such advice, warning, recommendation, etc., was given;
and

(d)  The name, address, telephone number and job title of
each and every witness to the reception of such advice, warn-
ing, recommendation, etc.

ANSWER:

INTERROGATORY NO. 41

Did anyone ever suggest or recommend that YOU should use any device to reduce YOUR possible exposure to, or inhalation of, asbestos dust or fibers? If YOUR answer is in the affirmative, please state for each and every such person:

(a) The name, address and telephone number of such person;

(b) The date, time and place when such suggestion or recommendation was made;

(c) The name, address and telephone number of each person present when such suggestion or recommendation was made to or received by YOU;

(d) The exact wording and content of such suggestion or recommendation;

(e) Whether such suggestion or recommendation was written or oral; and

(1) If written, please IDENTIFY in detail each such writing; and

(2) If oral, please set forth all persons involved and the details as to the manner in which such suggestion or recommendation was presented.

(f) The type, make and model of each device referred to in each suggestion or recommendation;

(g) The nature of any action, if any taken by YOU in response to such suggestion or recommendation; and

(h) Describe in detail YOUR reasons for any response to such suggestion or recommendation, short of complete conformance thereto.

Exhibit re: Reply 4-59

ANSWER:

INTERROGATORY NO. 42:

Have YOU ever seen any warning labels on packages or containers of asbestos products? If so, please state: The type of product; the name of the manufacturer; where YOU saw the labels; on what occasions; and the nature of the warnings.

ANSWER:

INTERROGATORY NO. 43:

Please state whether any of YOUR employers have either required or make available physical examinations for their employees. If such physical examinations have either been required or made available to YOU, please state:

(a) The nature and extent of examinations;

(b) The frequency of examinations;

(c) Whether they were required or optional;

(d) Whether X-ray examination was included;

(e) The frequency, including specific dates and times with which YOU submitted to such examinations;

(f) Whether YOU received the results of any such examinations; the dates that they were given to YOU, and the nature of the results;

(g) The name, address and telephone number of the examining physician, nurse or technician; and

LAW OFFICES
LY & BERRY
... STREET SUITE ...
... CALIFORNIA 9461...

(h) YOUR detailed reasons for failing to submit to such examination when required or made available, if YOU did so fail to submit.

ANSWER:

INTERROGATORY NO. 44:

Are YOU or have YOU been a member of any labor union, including, but not limited, the Heat, Frost, Insulation and Asbestos Workers Union? If YOUR answer is "yes," please state for each such union membership:

(a) The name, address and telephone number of each such international union and its number, along with the local number of each such union;

(b) The date and time periods during which YOU maintained membership in such union; and

(c) The offices YOU have held or committees on which YOU have served, including places and dates when such offices were held and such committees served; and

(d) Any health or safety work-related factors that influenced YOUR decision to withdraw from any union.

ANSWER:

INTERROGATORY NO. 45:

Did YOU ever receive any issue of "The Asbestos Worker"? If so, please IDENTIFY:

(a) The manner of receipt, i.e., subscription, provided by union or employer, purchased, etc.;

LAW OFFICES
Y & BERRY
...
CALIFORNIA...

(b)  Frequency of receipt, i.e., regularly, occasionally, rarely, etc.;

(c)  Every person or entity which provided this publication to YOU;

(d)  The pertinent time periods during which YOU received said publication;

(e)  The publication date, issue and volume number of each issue received by YOU in any fashion; and

(f)  Whether YOU read the publication.

ANSWER:


INTERROGATORY NO. 46:

Other than "The Asbestos Worker", did YOU ever receive any newspapers, newsletters, or other publications from any labor union of which YOU were a member? If so, please state:

(a)  The name and type of publication received;

(b)  The frequency with which YOU received such publication;

(c)  Whether YOU read such publication; and

(d)  If such publications ever discussed asbestos, the nature of said discussion, and the date or dates thereof.

ANSWER:

LAW OFFICES
RY & BERRY
———————————
[illegible]
, CALIFORNIA [illegible]

INTERROGATORY NO. 47:

Have YOU ever attended any international or local union meetings, seminars, conferences, or conventions which discussed (in whole or in part) occupational exposure to asbestos? If so, please IDENTIFY:

(a) The date and place;

(b) YOUR reason and/or official capacity for attending;

(c) The information presented concerning asbestos;

(d) Each speaker on the said topic; and

(e) Any other persons with whom YOU discussed the information presented.

ANSWER:


INTERROGATORY NO. 48:

Are YOU presently employed? If so, please state:

(a) The name and address of YOUR present employer;

(b) The name and address of YOUR immediate superior, boss, or foreman;

(c) YOUR job title;

(d) The nature of work YOU do;

(e) The date YOUR employment began;

(f) YOUR starting position if different from YOUR current position; and

(g) YOUR present rate of pay.

ANSWER:

LAW OFFICES
Y & BERRY
CALIFORNIA 94022

INTERROGATORY NO. 49:

If YOUR answer to Interrogatory No. 48 is "no," please state the last date worked and the reason that YOU are not currently employed. Are YOU receiving any form of disability pension? If so, please state:

(a) From whom;

(b) The amounts received each month; and

(c) The anticipated duration of the disability pension.

ANSWER:


INTERROGATORY NO. 50:

State fully and in detail YOUR annual earnings for the past ten (10) years:

ANSWER:

19___: $_____        19___: $_____

19___: $_____        19___: $_____

19___: $_____        19___: $_____

19___: $_____        19___: $_____

19___: $_____        19___: $_____

INTERROGATORY NO. 51:

State the total hospital expenses, if any, that YOU have incurred to date as a result of the injuries, complaints, etc., which YOU attribute to YOUR alleged exposure to asbestos. Please itemize each charge, if more than one hospital is involved.

ANSWER:

LAW OFFICES
RY & BERRY

INTERROGATORY NO. 52:

State the total medical expense (other than hospitalization) which YOU have incurred, or which has been incurred on YOUR behalf, to date as a result of the injuries, complaints, etc., which YOU attribute to YOUR alleged exposure to asbestos, itemizing each such charge.

ANSWER:

INTERROGATORY NO. 53:

Has any insurance company, union or any other person, firm or corporation paid for or reimbursed YOU for, or become obligated to pay for, any medical or hospital expenses incurred by the alleged exposure to asbestos? If so, please list such expenses, itemizing the dates incurred, the nature of such expenses and the name and address of the insurance company, union, person, firm or corporation who or which has paid, or is obligated to pay for, the payment of, or reimbursement for, said expenses.

ANSWER:

INTERROGATORY NO. 54:

As a result of YOUR alleged exposure to asbestos, have YOU lost, or do YOU claim of, any wages or earnings? If so, please state:

(a) How much time was lost from work or employment, listing the dates involved and the name and address of the employer;

LAW OFFICES
RY & BERRY
.... ........ ....
.... .........
9. CALIFORNIA 960..
.... .... ....... ...

        (b)  The gross amount of salary or earnings which YOU
received each payday, stating the intervals of such paydays
(e.g., weekly, bi-monthly, monthly);

        (c)  State the gross amount of salary or earnings actual-
ly lost due to the exposure;

        (d)  Of the total sum stated in response to subpart (c)
of this interrogatory, state YOUR net take-home pay after de-
duction of taxes and all other authorized deductions;

        (e)  If self-employed, state the total time lost from
business, listing the dates involved and the gross financial
loss to YOU, stating the nature of such loss and how incurred;
and

        (f)  Of the sum stated in YOUR response to subpart 9(e)
of this interrogatory, state YOUR net loss after deduction of
taxes.

        ANSWER:


INTERROGATORY NO. 55:

        Have YOU incurred any expense or financial loss, includ-
ing property damage, other than as listed above, which YOU
attribute in any degree to YOUR asbestos products?  If so,
please state such financial losses, expenses and property
damage, giving the dates incurred and the amounts involved and
the nature of each such expense or loss.

        ANSWER:

INTERROGATORY NO. 56:

Has any insurance company, union or other person, firm or corporation paid for, or reimbursed YOU for, or become obligated to pay for, or reimburse, YOU or anyone on YOUR behalf for any sums of money (excluding medical or hospital expenses) to provide any of the following:  disability or other benefits, loss of earnings, property damage or any other item resulting from the alleged exposure to asbestos?

ANSWER:


INTERROGATORY NO. 57:

If YOUR answer to the preceeding interrogatory is "yes", please state:

(a)  The sum or sums of money expended, itemizing the dates incurred;

(b)  The nature of the obligation giving rise to the payment or reimbursement; and

(c)  The name and address of the insurance company, union or other person, firm or corporation who or which has paid for, or is obligated for, payment of or reimbursement for such sums of money.

Please attach copies of the documentation of this information to these interrogatories.

ANSWER:

INTERROGATORY NO. 58:

Have YOU at any time made a claim for, or received, an health or accident insurance benefits, Workers Compensation payments, disability benefits, pension, accident compensation payments or veterans disability compensation. (This interrogatory is limited to any asbestos-related claim, or any non-asbestos-related claim in which the claims made or monies received for such claims is or was in excess of $500.00 and/or disability/accident claims involving more than four (4) weeks off work). If so, please state: (If more than one, please attach a list.)

(a) The illness, injury or injuries for which YOU made the claim;

(b) The date when such injury or injuries were sustained, the place of occurrence and the nature of the accident or incident causing such injury;

(c) The names and addresses of YOUR employer(s) at the time of each injury or illness;

(d) The names and addresses of the examining doctors for each injury or illness;

(e) The name of the board, tribunal or superior officer before which or to whom the claim or claims were made or filed;

(f) The date the claim was made or filed;

(g) The claim, file or other number by which YOUR claim was identified;

(h) The present status of such claims (pending settlement, dismissal, etc.);

(i)  The amounts of the benefits, awards or payments;

(j)  The dates covering the times during which YOU received the benefits, awards or payments; and

(k)  The identity of the agencies or insurance companies from whom YOU received the awards, benefits or payments.

ANSWER:


INTERROGATORY NO. 59:

If YOU ever had an application for life, health, accident, medical, hospital or liability insurance rejected, please state:

(a)  The date of application(s);

(b)  The date of rejection(s);

(c)  The type of insurance for which YOU applied;

(d)  The identity of the insurance company with which each application was filed; and

(e)  The reason for the rejection(s).

ANSWER:


INTERROGATORY NO. 60

If YOU have ever been a party to an action for damages for any personal injury YOU suffered, please state:

(a)  The identity of all parties to the action(s) and their attorneys;

(b)  The court and place where each such action was filed and the date(s) of the filing;

(c)  The nature and extent of the injuries claimed whether any permanent disability remains; and

(d)  The present status of each action, and if concluded, the final result thereof, <u>including the amount of any settle-ment or judgment.</u>

<u>ANSWER:</u>

<u>INTERROGATORY NO. 61:</u>

Have YOU ever made claim for personal injury other than against this defendant, or other defendants named in this law-suit, for the same injuries which YOU now claim are related to YOUR alleged exposure to asbestos?  If so, please state:

(a)  The nature of such injury or injuries;

(b)  The date when such injury or injuries were sustained in each instance, the place of occurrence and the nature of the incident or accident causing this injury;

(c)  The names and addresses of all persons and companies to whom said claims were made; and

(d)  The present status of such claims (pending settle-ment, dismissal, etc.)

<u>ANSWER:</u>

<u>INTERROGATORY NO. 62:</u>

Have YOU received any payments or reimbursements, or have any payments been made on YOUR behalf, from any source as a

result of YOUR alleged exposure to asbestos, including settle-
ments with either a party or potential defendant? If so, for
each payment, please state:

(a)  The name of the party making such payment;

(b)  The total amount of said payment;

(c)  The year of payment.

ANSWER:


INTERROGATORY NO. 63:

Please IDENTIFY, by name, address and phone number each
person known to YOU, or YOUR attorneys, who can IDENTIFY the
manufacturer or distributor of any of the asbestos-containing
products YOU allege as having been in YOUR general vicinity
during any period in which YOU allege exposure to asbestos-
containing products.

ANSWER:


INTERROGATORY NO. 64:

Please IDENTIFY each and every tangible item (not already
identified above) including photographs, diagrams, correspon-
dence or objects, which YOU contend evidences YOUR exposure to
asbestos-containing products.

ANSWER:


INTERROGATORY NO. 65:

Please IDENTIFY any work diaries, photographs, calendars,
company brochures, medical bills, invoices, business cards and

physical objects (e.g., asbestos pipe), which are in YOUR personal care, custody and control, relevant to the subject matter of this lawsuit.

ANSWER:


INTERROGATORY NO. 66:

Have YOU or anyone on YOUR behalf requested from the Social Security office a listing of all past employers and dates of employment? If so, please either attach a copy or give the employer's name, address, date and quarterly Social Security credit for each employer listed.

ANSWER:


INTERROGATORY NO. 67:

Please state the name, address and telephone number of every person who assisted YOU in any way in answering these interrogatories.

ANSWER:

1  Denise Abrams, Esq. (C.S.B. #124139)
   Justin A. Bosl, Esq. (C.S.B. #241117)
2  KAZAN, McCLAIN, LYONS,
   GREENWOOD & HARLEY
3  A Professional Law Corporation
   171 Twelfth Street, Third Floor
4  Oakland, California 94607
   Telephone: (510) 302-1000
5
   Attorneys for Plaintiff
6

7

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF ALAMEDA

10

11  TIMOTHY VEST and CAROLINE VEST,        No. RG09489518

12          Plaintiffs,                    RESPONSE TO JOINT DEFENSE
                                           INTERROGATORIES
13          vs.

14  ALLIED PACKING AND SUPPLY, et al.,

15          Defendants.                    Complaint Filed: December 17, 2009

16

17  PROPOUNDING PARTY: Designated Defense Counsel BERRY & BERRY

18  SET NUMBER:        One

19  RESPONDING PARTY:  Plaintiff TIMOTHY VEST

20      Plaintiff Timothy Vest hereby responds to interrogatories propounded by

21  Designated Defense Counsel.

22                      **INTRODUCTION**

23      The wording in these responses includes that of plaintiff's attorneys. As a result,

24  some or all of these responses may not contain wording that plaintiff might use. The

25  responses that follow are based on information possessed by plaintiff's attorney, unless

26  otherwise privileged, as well as information known to plaintiff. Plaintiff may not have any

27  information concerning a particular response. Verification by plaintiff is not an indication

28  that plaintiff has any knowledge concerning any particular response.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES                          1

## RESPONSE TO INTERROGATORY NO. 1:

 (a) Timothy Erich Vest;

 (b) February 19, 1965;

 (c) Limerick, Ireland;

 (d) 680 Stony Creek Court, Livermore, California 94550;

 (e) Six feet, 2 inches, 220 pounds;

 (f) XXX-XX-XXXX;

 (g) None;

 (h) None;

 (i) None;

 (j) C1558772 California;

 (k) Tim Vest;

 (l) 14;

 (m) Caroline Virginia Vest;

 (n) February 24, 1966

 (o) June 12, 1993

 (p) 680 Stony Creek Court, Livermore, California 94550;

 (q) Group sales, Valley Care Health System;

 (r) None;

 (s) None; and

 (t) Not applicable.

## RESPONSE TO INTERROGATORY NO. 2:

| Name and Address | Date of Birth | Occupation |
| --- | --- | --- |
| Gentry Vest | May 20, 1995 | Student |
| Garrett Vest | February 9, 1998 | Student |
| Kinnon Vest | December 12, 2000 | Student |

/ /

/ /

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

Exhibit re: Reply 5-74

1  RESPONSE TO INTERROGATORY NO. 3:

2      Yes; both parent are living.

3      (a)    Father is 74 years old; Mother is 70 years old;  and

4      (b)    Father had prostate cancer.

5  RESPONSE TO INTERROGATORY NO. 4:

6      See response to Interrogatory No. 3, above.

7  RESPONSE TO INTERROGATORY NO. 5:

8      Plaintiff objects to this interrogatory on the grounds that it is burdensome,

9  oppressive, vague and ambiguous as to what constitutes "blood relatives," and is not

10 likely to lead to admissible evidence.  Without waiving these objections, plaintiff

11 responds:  Yes.

12     (a)    Warren Vest, father;

13     (b)    11490 Cresta Lane, Dublin, California 94568; and

14     (c)    Prostate cancer.

15 RESPONSE TO INTERROGATORY NO. 6:

16     Plaintiff objects to this interrogatory on the grounds that it is burdensome,

17 oppressive, vague and ambiguous as to what constitutes "blood relatives," and is not

18 likely to lead to admissible evidence.  Without waiving said objections, plaintiff responds:

19 None.

20 RESPONSE TO INTERROGATORY NO. 7:

21     Plaintiff objects to this interrogatory on the grounds that it is overly broad,

22 irrelevant to the subject matter of the instant action, not likely to lead to admissible

23 evidence and is an invasion of the plaintiff's right to privacy.  Furthermore, *Smith v.*

24 *Superior Court* (1961) 189 Cal.App.2d 6, is a case on point concerning this subject.

25 Without waiving this objections, plaintiff responds:  680 Stony Creek Court, Livermore,

26 California 94550.

27 //

28 //

KAZAN, MCCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES

3

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this interrogatory on the grounds that it is overly broad and vague as to the meaning of "formal on-the-job training" and "safety classes." Without waiving said objections, plaintiff responds:

De La Salle High School, Concord, California: High School Diploma in 1983;

California Aviation, Livermore, California: Private pilot's license 1981-1983;

Gunnell Aviation, Santa Monica Airport, Santa Monica, California: Instrument Rating and further pilot training 1983-1986;

University of California, Los Angeles, California: Courses in aerospace engineering 1983-1986;

Ahart Aviation, Livermore, California: Commercial and multi-engine license, and certification as Certified Flight Instructor, Certified Flight Instructor Instrument, and Certified Flight Instructor – Multi Engine, 1987-1990.

**RESPONSE TO INTERROGATORY NO. 9:**

No.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to the final part of this interrogatory, "If you have not ever been a member of the Armed Forces . . . ," on the grounds that it is overly broad and an invasion of plaintiff's right to privacy. Without waiving said objections, plaintiff responds: No.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff objects to this interrogatory on the grounds that it is overly broad, burdensome, and an invasion of plaintiff's right to privacy. Further, defendants have these medical records or plaintiff's attorney will make these medical records available to Designated Defense Counsel. Without waiving said objections, plaintiff responds:

| Doctor's Name/Address | Date(s) of Treatment |
|---|---|
| Michael Alper, M.D. 87 Fenton Street Livermore, California 94550 | August 2009 to present |

Reason for Treatment: Mesothelioma, general medical care

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY A PROFESSIONAL LAW CORPORATION 171 TWELFTH STREET THIRD FLOOR OAKLAND, CA 94607 (510) 302-1000 (510) 465-7728 FAX (510) 835-4913

CSONGSTAD/470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES

4

Doctor's Name/Address

Heather Wakelee, M.D.
875 Blake Wilbur Drive
Stanford, California 94305

Date(s) of Treatment

October 2009 to present

Reason for Treatment: Mesothelioma

Doctor's Name/Address

Stuart Bussey, M.D.
1181 Boulevard Way
Walnut Creek, California 94595

Date(s) of Treatment

April 2005 to present

Reason for Treatment: General medical care; FAA physicals; mesothelioma

Doctor's Name/Address

Joseph Shrager, M.D.
Falk Building, Second Floor
300 Pasteur Drive
Stanford, California 94305

Date(s) of Treatment

October 2009 to present

Reason for Treatment: Mesothelioma

Doctor's Name/Address

John Yee, M.D.
5575 West Las Positas Blvd., #130
Pleasanton, California 94588

Date(s) of Treatment

September 2009

Reason for Treatment: Pulmonary issues

Doctor's Name/Address

Joseph Szumowski, M.D.
5725 W. Las Positas Blvd., Suite 100
Pleasanton, California 94588

Date(s) of Treatment

September 2009 to present

Reason for Treatment: Chemotherapy

## RESPONSE TO INTERROGATORY NO. 12:

Plaintiff objects to this interrogatory on the grounds that it is overly broad, burdensome, and an invasion of plaintiff's right to privacy. Plaintiff also objects because this interrogatory seeks expert medical opinion; plaintiff is not an expert and is not qualified to give medical opinions. Further, defendants have these medical records or

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

1  plaintiff's attorney will make these medical records available to Designated Defense

2  Counsel.  Without waiving said objections, plaintiff responds:

3  <u>Name/Address of Hospital</u>            <u>Date(s) of Treatment</u>

4  ValleyCare Medical Center               August 2009 to November 2009
   5555 West Las Positas Boulevard
5  Pleasanton, California 94588

6  <u>Reason for Hospital Visit</u>:  Lung biopsy, laboratory tests, radiology procedures, and
   chemotherapy.
7

8  <u>Name/Address of Hospital</u>            <u>Date(s) of Treatment</u>

9  Stanford University Medical Center      October and November 2009
   300 Pasteur Drive
10 Stanford, California 94305

11 <u>Reason for Hospital Visit</u>: Bronchoscopy, thoracotomy and resection.

12      Discovery and investigation are continuing.

13 <u>**RESPONSE TO INTERROGATORY NO. 13**</u>:

14 <u>Name/Address Where X-ray(s) Taken</u>   <u>Date(s) X-rays Taken</u>

15 ValleyCare Medical Center               August 2009 to present
   5555 West Las Positas Boulevard
16 Pleasanton, California 94588

17 <u>Part of Body X-rayed</u>:  MRI, Bone Scan, Chest x-rays and CT Scan.

18 <u>Name/Address Where X-ray(s) Taken</u>   <u>Date(s) X-rays Taken</u>

19 Stanford Hospital                       October and November 2009
   300 Pasteur Drive
20 Stanford, California 94305

21 <u>Part of Body X-rayed</u>:  Chest x-rays, PET Scan.

22      Re:  Results and conclusions:  Plaintiff objects to this part of the interrogatory on

23 the grounds that it calls for a medical conclusion which plaintiff is not qualified to give.

24 Further, defendants have these medical records or plaintiff's attorney will make these

25 medical records available to Designated Defense Counsel.  Discovery and investigation

26 are continuing.

27 //

28 //

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
Fax (510) 835-4913

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff objects to this interrogatory because it is overly broad, burdensome and that the information sought is equally available to defendants through plaintiff's medical records. Defendants have plaintiff's medical records and/or plaintiff's attorneys will make his medical records available to designated defense counsel, Berry & Berry. Without waiving these objections, plaintiff responds and refers defendants to plaintiff's medical records. Discovery and investigation are continuing.

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff objects to this interrogatory on the grounds that it is overly broad, burdensome and that the information sought is equally available to defendants through plaintiff's medical records. Defendants have plaintiff's medical records and/or plaintiff's attorney will make these medical records available to Designated Defense Counsel. Without waiving these objections, plaintiff refers defendants to plaintiff's medical records. Discovery and investigation are continuing.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff objects to this interrogatory on the grounds that it is overly broad, burdensome, an invasion of plaintiff's right to privacy, irrelevant to the subject matter of this lawsuit, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, plaintiff responds: Defendants have plaintiff's medical records and/or plaintiff's attorney will make these medical records available to Designated Defense Counsel. Without waiving these objections, plaintiff refers defendants to plaintiff's medical records. Discovery and investigation are continuing.

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiff objects to this interrogatory on the grounds that it calls for a medical opinion which plaintiff is not qualified to give. Without waiving said objection, plaintiff responds:

(a)     On or before August 2009;

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES

7

1   (b)  Not applicable; plaintiff has malignant mesothelioma;

2   (c)  Plaintiff has experienced weight loss, fatigue, cough, shortness of breath,

3 loss of strength, endurance and pain;

4   (d)  Entire body, but especially plaintiff's chest, back and respiratory system;

5   (e) See Response to Interrogatory No. 11 above;

6   (f)  See Response to Interrogatory No. 11 above;

7   (g)  Plaintiff defines "lost any time from work" to mean loss of time from work as

8 a result of exposure to asbestos which precludes the performance of the employee's

9 regular occupation.  Plaintiff responds as follows:  Yes; and

10   (h)  September 20, 2009 to present.

11   Discovery and investigation are continuing.

12 **RESPONSE TO INTERROGATORY NO. 18:**

13   (a)  On or about October 16, 2009;

14   (b)  Joseph Shrager, M.D., Falk Building, Second Floor, 300 Pasteur Drive

15 Stanford, California 94305

16   (c)  Reetesh Pai, M.D., pathologist, Stanford Laboratory of Surgical Pathology,

17 300 Pastuer Drive, Stanford, California ; and

18   (d)  Plaintiff objects to this subpart because calls for speculation and a medical

19 conclusion which plaintiff is not qualified to give.  Without waiving these objections,

20 plaintiff responds that he does not know the method upon which the doctor made such a

21 determination, nor upon what information the interpretation was based.  Plaintiff refers

22 defendants to his medical records, which are equally available to defendants;

23   (e)  See Response to Interrogatory Nos. 11, 12 and 18(b) and (c) above and to

24 plaintiff's medical records which are equally available to defendants.  Plaintiff also refers

25 defendants to the ValleyCare Health System's Surgical Pathology Report and Cytology

26 Report of September 17, 2009, attached as **Exhibit A**; report of Stanford's Laboratory of

27 Surgical Pathology report of September 29, 2009, attached as **Exhibit B**; Stanford's

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

28

Exhibit re: Reply 5-80

1  Laboratory of Surgical Pathology report of October 7, 2009, attached as **Exhibit C**; and

2  report of William Salyer, M.D., attached as **Exhibit D**;

3      (f)    Plaintiff;

4      (g)    Jet Blue Airways, Forest Hills, New York;

5      (h)    Chemotherapy and pain control.  Plaintiff refers defendants to his

6  Response to Interrogatory No. 15 above;

7      (i)    Yes; and

8      (j)    Plaintiff objects to this interrogatory to the extent that it asks for information

9  protected by the attorney work product doctrine. As to information not protected by this

10 privilege, plaintiff responds:  All those doctors listed in plaintiff's Response to

11 Interrogatory No. 11 above.

12      Discovery and investigation are continuing.

13 RESPONSE TO INTERROGATORY NO. 19:

14      Plaintiff construes this interrogatory to relate only to complaints, symptoms and

15 adverse reactions that were caused by asbestos or asbestos-containing products.

16 Therefore, plaintiff answers as follows:  No.

17 RESPONSE TO INTERROGATORY NO. 20:

18      Plaintiff objects to this interrogatory on the ground that it calls for a medical

19 conclusion which plaintiff is not qualified to give.  Without waiving said objection, plaintiff

20 responds:  Mild childhood asthma; no symptoms since.

21 RESPONSE TO INTERROGATORY NO. 21:

22      Yes.

23      (a-1)  Daniel Lucas, M.D.;

24      (b-1)  ValleyCare Medical Center, 5555 West Las Positas Boulevard, Pleasanton,

25 California 94588;

26      (c-1)  September 17, 2009; and

27      (d-1)  Plaintiff objects to this subpart of the interrogatory on the grounds that it

28 calls for a medical conclusion which plaintiff is not qualified to give.  Without waiving this

KAZAN, MCCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

RESPONSE TO JOINT DEFENSE INTERROGATORIES

1  objection, plaintiff responds: See ValleyCare Health System's Surgical Pathology Report

2  and Cytology Report dated September 17, 2009, attached as **Exhibit A**, and report of

3  Stanford's Laboratory of Surgical Pathology of September 29, 2009, attached as **Exhibit**

4  **B.**

5      (a-2)  Joseph Schrager, M.D.;

6      (b-2)  Stanford University Medical Center, 300 Pasteur Drive, Stanford, California;

7      (c-2)  October 7, 2009; and

8      (d-2)  Plaintiff objects to this subpart of the interrogatory on the grounds that it

9  calls for a medical conclusion which plaintiff is not qualified to give.  Without waiving this

10  objection, plaintiff responds:  Plaintiff has mesothelioma.

11  RESPONSE TO INTERROGATORY NO. 22:

12      Yes.

13      (a-1)  ValleyCare Medical Center;

14      (b-1)  Kenneth K. Wachi, M.D. and Thomas Yu, M.D.;

15      (c-1)  With plaintiff's consultant; and

16      (d-1)  On or about September 17, 2009.

17      Yes.

18      (a-2)  Stanford University Medical Center;

19      (b-2)  Reetesh Pai, M.D.;

20      (c-1)  With plaintiff's consultant; and

21      (d-1)  On or about October 7, 2009.

22  RESPONSE TO INTERROGATORY NO. 23:

23      Plaintiff objects to this interrogatory on the grounds that it violates the attorney

24  work product doctrine.  Plaintiff will disclose the names of its experts pursuant to

25  California Code of Civil Procedure §2034 prior to trial.

26  RESPONSE TO INTERROGATORY NO. 24:

27      No.

28  //

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

1  RESPONSE TO INTERROGATORY NO. 25:

2         Plaintiff objects that this interrogatory seeks information that is not relevant and

3  not reasonable calculated to lead to the discovery of admissible evidence. Without

4  waiving this objection, plaintiff responds: Yes.

5  RESPONSE TO INTERROGATORY NO. 26:

6         (a)     Approximately one cigar per year over the last 25 years;

7         (b)     Cigars; plaintiff does not inhale the cigar smoke;

8         (c)     Approximately one cigar per year;

9         (d)     Plaintiff stopped smoking cigars 2 years ago because he no longer enjoyed

10  smoking them;

11         (e)     Not applicable; see response to sub-part (d), above;

12         (f)     Not applicable; and

13         (g)     Various brands.

14  RESPONSE TO INTERROGATORY NO. 27:

15         No.

16  RESPONSE TO INTERROGATORY NO. 28:

17         Plaintiff objects to this interrogatory on the grounds that it is an invasion of privacy,

18  vague, ambiguous, overly broad, irrelevant and not reasonably calculated to lead to the

19  discovery of admissible evidence. Without waiving these objections, plaintiff responds:

20  Plaintiff occasionally drinks alcoholic beverages.

21  RESPONSE TO INTERROGATORY NO. 29:

22         Plaintiff recalls the following information about his employments:

23  Employer's Name and Address                          Dates of Employment

24  Mrs. Fields Cookie, Inc.                             1983-1984
    Westwood, California

25

26         Job Title/Duties:  Store manager

27  //

28  //

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES

11

1   Employer's Name and Address                    Dates of Employment

2   Continental Airlines, Inc.                      1985-1987
    Los Angeles International Airport
3   Los Angeles, California

4       Job Title/Duties:  Ramp supervisor.  Managed a crew of 8-10 people who off-
    loaded baggage.
5

6   Employer's Name and Address                    Dates of Employment
    Sandys Ski Rentals-Westwood Inc.               1985-1986
7   Santa Monica, California

8       Job Title/Duties:  Certified ski technician.  Plaintiff's duties included tuning,
    adjusting and mounting bindings, and drilling and scraping skis.
9

10  Employer's Name and Address                    Dates of Employment

11  Dealin Down/Nelsen James W. Ttee               1986
    17561 Vierra Cyn Road
12  Salinas, California

13      Job Title/Duties:  Plaintiff does not recall this employment

14  Employer's Name and Address                    Dates of Employment

15  Ahart Aviation, Inc.                           1988-1990
    186 Airway Boulevard
16  Livermore, California

17      Job Title/Duties:  Flight instructor.  Plaintiff conducted pre-flight inspections.

18  Employer's Name and Address                    Dates of Employment

19  De La Salle Institute                          1989-1990
    Concord, California
20

21      Job Title/Duties:  Soccer coach for De La Salle High School.

22  Employer's Name and Address                    Dates of Employment

23  C.N. Fletcher Company                          1989
    1576 Catalina Court
24  Livermore, California

25      Job Title/Duties:  Certified ski technician and tuned, adjusted and mounted
    bindings.
26  //

27  //

28  //

KAZAN, MCCLAIN,
LYONS,
GREENWOOD &
HARLEY
- A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD\470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES

12

1 Employer's Name and Address

2 Emery Worldwide Airlines, Inc.  Dates of Employment

  (aka Leland Service Corp. & Con-Way Enterprise Services) 1990-2001

3 Portland, Oregon

4  Job Title/Duties: Piloted cargo aircraft around the world. Conducted pre-flight

inspections. At times, plaintiff oversaw maintenance and repair and changed tires and

5 brakes. He worked as an accident investigator in 2000.

6 Employer's Name and Address

7 JetBlue Airways Corporation  Dates of Employment

19 Old Kings Highway   2001 to present

8 Darien, Connecticut

9

 Job Title/Duties: Commercial pilot.

10 **RESPONSE TO INTERROGATORY NO. 30:**

11  (a) See Response to Interrogatory Nos. 29 and 31. Discovery and

12 investigation are continuing;

13  (b) Plaintiff refers defendants to his response to Interrogatory Nos. 29 and 31

14 for the information sought here. Discovery is continuing;

15  (c) See Response to Interrogatory Nos. 29 and 31;

16  (d) See Response to Interrogatory Nos. 29 and 31;

17  (e) For employment and second-hand exposure, all types of asbestos-

18 containing products used in aircraft and construction, including but not limited to the

19 following: block, pipecovering, pipe insulation, cement, adhesive, packing, gaskets, mud,

20 tape, cord, rope, blankets, sheets, cloth, lagging, fireproof spray, gloves, sheet linoleum,

21 vinyl asbestos floor tile, roofing paper, texture, stucco, joint compound, drywall

22 compound, wall board, sheet rock, acoustical tile, duct insulation, mastic, shingles,

23 aircraft parts, refractory materials, and skis. Plaintiff and his co-workers were regularly

24 exposed to a dusty work environment which was created by the use of asbestos-

25 containing materials;

26  Discovery and investigation are continuing.

27  (f) Plaintiff refers defendants to his response to Interrogatory Nos. 29 and 31

28 for the information sought here;

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD\470857.1

**RESPONSE TO JOINT DEFENSE INTERROGATORIES**

13

1    (g)    Not applicable;

2    (h)    See subpart (I), below;

3    (i)    Plaintiff objects to this subpart of this interrogatory on the grounds that it is

4    overly broad and burdensome. Short of having to subpoena the employment records

5    from plaintiff's employers, plaintiff is unable to answer this question. Without waiving

6    these objections, plaintiff responds: As to plaintiff's own recollection of co-workers,

7    plaintiff recalls: Co-workers at C.N. Fletcher Company: Mike Perry, telephone 925-447-

8    2776, and Sam Totten, telephone 707-295-7123.

9    (j)    Plaintiff believes that the employees from the various employers and

10   location at which he was exposed, as well as their contractors and subcontractors, have

11   such information. At this time, plaintiff has not ascertained the name of all these

12   individuals, but believes that the personnel records of these employers are equally

13   available to defendants.

14   Further, plaintiff believes the following former employees of World Airways have

15   information regarding the supply, use or distribution of asbestos-containing products to

16   which plaintiff may have been exposed: George Wagenseller, telephone 360-424-7771;

17   Richard Kalman, 510-537-8962; Claude Fross, former World Airways employee, 760-

18   251-2730; Mick Wurth, telephone 650-961-8468; Milt Ogden, telephone 559-229-1415;

19   Joseph D'Antonio, telephone 916-791-3254; Warren Vest, c/o plaintiffs' counsel.

20   Additionally plaintiff believes that employees of the entities that supplied and

21   manufactured asbestos containing products to his work sites, his father's work sites

22   and/or to contractors at his and his father's work sites have such information, including

23   John Savage, former employee of McDermott Sealy Plastering, telephone 925-462-0175.

24   Discovery and investigation are continuing.

## RESPONSE TO INTERROGATORY NO. 31:

26   Yes. From 1973-1983, plaintiff was exposed to asbestos brought home on the

27   person, clothes, shoes and belongings of his father Warren Vest from his employment

28   with and work at World Airway's maintenance and headquarters hanger (Hanger 110) at

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 9460
(510) 302-1000
(510) 465-7728
Fax (510) 835-491

CSONGSTAD/470857.1.

RESPONSE TO JOINT DEFENSE INTERROGATORIES

14

1  the Oakland Airport.  Warren Vest oversaw the hanger facility, was director of flight

2  operations and chief pilot.  Aircraft maintenance and conversion was done in this hanger

3  where Warren Vest had his office.  Continuous construction and remodeling was done

4  throughout the hanger during Warren Vest's employment, including initial construction

5  and moving walls and offices, by various contractors and trades.  The removal,

6  installation and manipulation of asbestos-containing drywall, ceiling, flooring and other

7  materials during these activities, coupled with the 24-hour a day maintenance work of

8  aircraft mechanics generated asbestos-containing dust which contaminated the work site

9  and Warren Vest's person, clothing, shoes and belongings.  Timothy Vest's  father

10  inadvertently carried the asbestos dust to his vehicle and home.  His vehicle and home

11  became contaminated with asbestos dust which exposed plaintiff to asbestos.  Plaintiff

12  was exposed to asbestos when he came into contact with his father during the regular

13  course of living in the family home, including greeting him when he arrived home each

14  night, sitting and talking each night with his father while he was still in the clothing he

15  wore to work, as well as through asbestos dust released from his work clothes and

16  person into the family home, automobiles and asbestos from same that contaminated the

17  family's clothing.

18      From 1973 until approximately 1981, Timothy Vest accompanied his father to the

19  hanger on weekends at least twice a month while Warren Vest worked.  Timothy Vest

20  visited all areas of the hangar.  The asbestos-containing building materials present in the

21  hangar and the continuous maintenance activities exposed Timothy Vest to asbestos

22  dust.

23      On occasion, Timothy Vest's mother would take him and his brother to visit their

24  father at the hanger, or Warren Vest would bring his sons to the hanger to borrow a

25  plane to take flying.

26      Plaintiff refers defendants to Warren Vest's Social Security records, attached as

27  Exhibit E.  Plaintiff will supplement this response with his deposition testimony.

28

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

RESPONSE TO JOINT DEFENSE INTERROGATORIES

Exhibit re:  Reply 5-87

1   Plaintiff also performed brake jobs on his personal vehicles and airplanes.

2   Discovery and investigation are continuing.

3   **RESPONSE TO INTERROGATORY NO. 32:**

4   (a)   Plaintiff refers defendants to his Response to Interrogatory Nos. 29, 30 and

5   31 above;

6   (b)   Plaintiff's counsel herein is informed and believes that based on plaintiff's

7   exposures and the years of exposure that the manufacturers included all defendants

8   named herein.  These materials include all those products itemized in Response to

9   Interrogatory No. 30(e) above and referenced in response to Interrogatory No. 29 and

10   31.  Plaintiff will supplement this response with his deposition testimony;

11   (c)   Unknown at this time; discovery and investigation are continuing;

12   (d)   Plaintiff was unaware that the products he used contained asbestos;

13   (e)   Plaintiff refers defendants to Owens-Corning Fiberglas picture books for the

14   information sought here; discovery is continuing;

15   (f)   Plaintiff did not receive any health hazard warning.

16   Discovery is continuing.

17   **RESPONSE TO INTERROGATORY NO. 33:**

18   (a)   See response to Interrogatory No. 32.  Discovery and investigation are

19   continuing;

20   (b)   Plaintiff objects to this subpart of the interrogatory on the grounds that it

21   calls for speculation;

22   (c)   Plaintiff refers defendants to documents in the possession of defendants,

23   suppliers and distributors of products, contractors and subcontractors and those entities

24   at the sites identified in Response to Interrogatory Nos. 29 and 31;

25   (d)   Plaintiff objects to this subpart of the interrogatory on the grounds that it is

26   vague and ambiguous; and

27   (e)   Plaintiff refers defendant to Response to Interrogatory No. 32 above.

28   Discovery is continuing.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES

16

<u>RESPONSE TO INTERROGATORY NO. 34:</u>

Plaintiff objects to this interrogatory to the extent that it calls for privileged information that is the work product of plaintiff's attorneys or otherwise requires such disclosure of information that would constitute a violation of various section 362(a) stay orders of the Federal Bankruptcy Courts. Without waiving said objections, plaintiff responds: At the present time, plaintiff's counsel has no reason to believe that plaintiff was exposed to asbestos products manufactured or sold by companies who could have been but were not named as defendants in this action. Discovery is continuing.

<u>RESPONSE TO INTERROGATORY NO. 35:</u>

Plaintiff objects to this interrogatory on the grounds that it calls for expert opinions which he is not qualified to give. Plaintiff further objects that the interrogatory is not relevant in that it seeks information not calculated to lead to the discovery of admissible evidence as mathematical rationing is unrelated to scientific disease causation. Without waiving these objections, plaintiff responds that he does not know at this time the exact percentage of exposure to the different asbestos-containing materials. Discovery and investigation are continuing.

<u>RESPONSE TO INTERROGATORY NO. 36:</u>

Plaintiff objects to this interrogatory on the grounds that it is burdensome and harassing as there is no way for plaintiff to know this information because of the passage of time. Without waiving this objection, plaintiff refers defendants to his Response to Interrogatory Nos. 29, 30, 31 and 37. Discovery and investigation are continuing.

<u>RESPONSE TO INTERROGATORY NO. 37:</u>

Plaintiff objects to this interrogatory on the grounds that it is burdensome and harassing, as there is no way for plaintiff to know this information because of the passage of time. Without waiving any objections, plaintiff refers defendants to his Response to Interrogatory Nos. 29, 30 and 31, and to the following former World Airways employees: George Wagenseller, Richard Kalman, Claude Fross, Mick Worth, Joseph D'Antonio, Milt Ogden and Warren Vest.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/470857.1

1      Plaintiff has not determined which individuals listed in these Responses, if any,

2  have given previous deposition and/or trial testimony in asbestos litigation.  This

3  information is equally available to propounding defendants.  At this time, however,

4  plaintiff believes these individuals may have information regarding the use of

5  asbestos-containing materials, such as those manufactured, sold, distributed, specified,

6  installed and/or otherwise supplied by propounding defendants, at location(s) where

7  plaintiff claims exposure to asbestos.  Plaintiff will supplement this response with his

8  deposition testimony.  Discovery and investigation are continuing.

9  **RESPONSE TO INTERROGATORY NO. 38:**

10      Plaintiff incorporates his Response to Interrogatory Nos. 29, 30, 31 and 37.

11  **RESPONSE TO INTERROGATORY NO. 39:**

12      Plaintiff objects to this interrogatory on the grounds that, to the extent that

13  plaintiff's counsel might possess such documents, they were obtained from defendants

14  and are therefore equally available to defendants.  Without waiving this objection, plaintiff

15  responds:  Plaintiff does not possess invoices, bills or statements of any type

16  demonstrating the sale of asbestos-containing products to his work sites.  Discovery and

17  investigation are continuing.

18  **RESPONSE TO INTERROGATORY NO. 40:**

19      No.

20  **RESPONSE TO INTERROGATORY NO. 41:**

21      No.

22  **RESPONSE TO INTERROGATORY NO. 42:**

23      No.

24  **RESPONSE TO INTERROGATORY NO. 43:**

25      Yes.

26  (a)    Federal Aviation Administration physical;

27  (b)    Every six months;

28  (c)    Required;

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

**RESPONSE TO JOINT DEFENSE INTERROGATORIES**

Exhibit re:  Reply 5-90

1  (d)  No;

2  (e)  Every March and September for the last 10 years;

3  (f)  Plaintiff received verbal results and passed every physical until September

4 2009;

5  (g)  Stuart Bussey, M.D., 1181 Boulevard Way, Walnut Creek, California

6 94595; and

7  (h)  Pulmonary issues. Plaintiff was subsequently diagnosed with

8 mesothelioma.

9 **RESPONSE TO INTERROGATORY NO. 44:**

10  Plaintiff was a member of Air Line Pilots Association.

11  (a)  Air Line Pilots Association;

12  (b)  1998-2001;

13  (c)  None; and

14  (d)  None.

15 **RESPONSE TO INTERROGATORY NO. 45:**

16  No.

17 **RESPONSE TO INTERROGATORY NO. 46:**

18  Plaintiff received a magazine from the Air Line Pilots Association/

19  (a)  Air Line Pilot Magazine;

20  (b)  Monthly;

21  (c)  Yes; and

22  (d)  Plaintiff does not recall.

23 **RESPONSE TO INTERROGATORY NO. 47:**

24  No.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

25 **RESPONSE TO INTERROGATORY NO. 48:**

26  Yes.

27  (a)  JetBlue Airways, Forest Hills, New York.;

28  (b)  James Dawlton;

CSONGSTAD/470857.1

**RESPONSE TO JOINT DEFENSE INTERROGATORIES**

19

1    (c)    A-320 captain;

2    (d)    Airline pilot;

3    (e)    December 5, 2001;

4    (f)    A-320 first officer; and

5    (g)    $151 to 225 per hour.

6  **RESPONSE TO INTERROGATORY NO. 49:**

7    Plaintiff objects to this interrogatory on the grounds that it is vague and ambiguous

8  as to the term "disability pension" and as such is not relevant to the subject matter of this

9  lawsuit and not likely to lead to the discovery of admissible evidence. Without waiving

10 this objections, plaintiff responds:

11   (a)- (c)  Plaintiff has mesothelioma and is currently on disability from his

12 employment.

13 **RESPONSE TO INTERROGATORY NO. 50:**

14   Plaintiff objects to this interrogatory on the grounds that it is overly broad,

15 burdensome, and irrelevant beyond the last five years, and not likely to lead to

16 admissible evidence. For the last five years, plaintiff responds:

17   Copies of plaintiff's W-2s for the years 2004 to 2008 are attached hereto as

18 Exhibit F.

19 **RESPONSE TO INTERROGATORY NO. 51:**

20   At this time, plaintiff is compiling the information necessary to answer this

21 interrogatory. Discovery and investigation are continuing.

22 **RESPONSE TO INTERROGATORY NO. 52:**

23   At this time, plaintiff is compiling the information necessary to answer this

24 interrogatory. Discovery and investigation are continuing.

25 **RESPONSE TO INTERROGATORY NO. 53:**

26   Plaintiff objects to this interrogatory on the grounds that it violates plaintiff's right to

27 privacy, violates the collateral source rule, and is irrelevant to the subject matter of this

28 lawsuit and reasonably calculated to lead to the discovery of admissible evidence.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

1  **RESPONSE TO INTERROGATORY NO. 54:**

2  Plaintiff objects to the extent this interrogatory violates the attorney work product

3  doctrine and prematurely seeks the opinions and conclusions of plaintiff's experts.

4  Plaintiff's forensic economist will calculate wage and economic loss. Without waiving

5  these objections, plaintiff responds: Plaintiff has mesothelioma and as a result has lost

6  time from his employment as a commercial pilot since September 2009. Plaintiff

7  incorporates his response to Interrogatory No. 48, above. Discovery and investigation

8  are continuing.

9  **RESPONSE TO INTERROGATORY NO. 55:**

10  At this time, plaintiff is compiling the information necessary to answer this

11  interrogatory. Discovery and investigation are continuing.

12  **RESPONSE TO INTERROGATORY NO. 56:**

13  Plaintiff objects to this interrogatory on the grounds that it violates the collateral

14  source rule, is not relevant to the subject matter of this lawsuit and not reasonably

15  calculated to lead to the discovery of admissible evidence.

16  **RESPONSE TO INTERROGATORY NO. 57:**

17  Plaintiff objects to this interrogatory on the grounds that it violates the collateral

18  source rule, and is not relevant to the subject matter of this lawsuit and not reasonably

19  calculated to lead to the discovery of admissible evidence. Further, plaintiff objects to

20  the final part of this interrogatory as to the attaching of documents on the ground that it is

21  beyond the scope of discovery permitted by interrogatories.

22  **RESPONSE TO INTERROGATORY NO. 58:**

23  Plaintiff objects to this interrogatory on the grounds that it violates the collateral

24  source rule, and is not relevant to the subject matter of this lawsuit and not reasonably

25  calculated to lead to the discovery of admissible evidence. Without waiving these

26  objections, plaintiff responds as to Workers' Compensation: No.

27  //

28  //

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

1 RESPONSE TO INTERROGATORY NO. 59:

2     Plaintiff objects to this interrogatory on the grounds that it violates plaintiff's right to

3 privacy and is not relevant to the subject matter of this lawsuit and not reasonably

4 calculated to lead to the discovery of admissible evidence.

5 RESPONSE TO INTERROGATORY NO. 60:

6     Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous,

7 overly broad, and is not relevant to the subject matter of this lawsuit and not reasonably

8 calculated to lead to the discovery of admissible evidence.

9 RESPONSE TO INTERROGATORY NO. 61:

10     No.

11 RESPONSE TO INTERROGATORY NO. 62:

12     Plaintiff objects to the extent that this interrogatory seeks information that is not

13 relevant to the subject matter of this lawsuit and is neither admissible evidence nor

14 reasonably calculated to lead to the discovery of admissible evidence.  It is therefore not

15 discoverable under C.C.P. § 2017 and Evidence Code §1152.  Settlements are

16 discoverable only after verdict for purposes of set off, or from settling defendants in a

17 C.C.P. § 877.5 good faith determination hearing.  Any such disclosure will violate

18 plaintiffs' and settling defendants' privacy rights.  Plaintiff's confidential settlements with

19 companies unrelated to defendant are protected from disclosure by the settling

20 companies' and plaintiff's "inalienable" and constitutional right of privacy. *Hinshaw,*

21 *Winkler, et al. v. Sup. Ct.* (1996) 51 Cal.App.4th 233, 241, and authorities cited therein.

22 A "confidential" or "private settlement agreement is entitled to at least as much privacy

23 protection as a bank account or tax information," which are also encompassed within the

24 constitutional right of privacy.  [Id. at 241, 239.] See, *Greathouse v. Amcord* (1995) 35

25 Cal.App.4th 831; *Helfend v. Southern Cal. Rapid Transit District* (1970) 2 Cal.3d 1.

26 Plaintiff further objects that this interrogatory seeks documents which would require

27 plaintiff to breach confidentiality with settling defendants.  See, *Hinshaw v. Superior*

28 *Court* (Santa Clara) (1996) 51 Cal.App.4th 233, 242.

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES

22

1  RESPONSE TO INTERROGATORY NO. 63:

2      Plaintiff objects to this interrogatory on the grounds that it violates the attorney

3  work-product doctrine.  Without waiving said objection, plaintiff responds as follows:

4  Plaintiff refers defendants to Responses to Interrogatory Nos. 30, 31 and 37 for this

5  information.  Discovery and investigation are continuing.

6  RESPONSE TO INTERROGATORY NO. 64:

7      Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous

8  and unintelligible so as to make a response impossible without speculation as to the

9  meaning of the question.  Without waiving said objections and interpreting this question

10 to mean those tangible items which specifically evidenced plaintiff's exposure to

11 asbestos-containing products directly, plaintiff responds as follows:  Plaintiff refers

12 defendants to the above answers to interrogatories and to the Owens-Corning Fiberglas

13 picture books.  Plaintiff further refers defendants to defendants' responses to discovery

14 propounded under the Shipyard and Applicator Consolidated for Discovery Case

15 Caption, and to all discovery in Alameda County pertaining to plaintiff's jobsites.

16 Discovery is continuing.

17 RESPONSE TO INTERROGATORY NO. 65:

18     Plaintiff objects to this interrogatory on the grounds that it is vague and

19 ambiguous, overly broad and is a violation of the attorney work-product doctrine.

20 RESPONSE TO INTERROGATORY NO. 66:

21     Yes.  Plaintiff's Social Security record is attached as **Exhibit G**.

22 //

23 //

24 //

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

25 //

26 //

27 //

28 //

CSONGSTAD/470857.1

RESPONSE TO JOINT DEFENSE INTERROGATORIES

23

**RESPONSE TO INTERROGATORY NO. 67:**

KAZAN, McCLAIN, LYONS, GREENWOOD & HARLEY, A Professional Law Corporation, 171 Twelfth Street, Third Floor, Oakland, California 94607, telephone: (510) 302-1000.

DATED: February 16, 2010

                              KAZAN, McCLAIN, LYONS,
                              GREENWOOD & HARLEY
                              A Professional Law Corporation


                         By: _____
                              Justin Bosl
                              Attorneys for Plaintiff

KAZAN, McCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/470857.1

**RESPONSE TO JOINT DEFENSE INTERROGATORIES**

24

## PROOF OF SERVICE

Re: **TIMOTHY VEST and CAROLINE VEST v. ALLIED PACKING & SUPPLY, et al.**
Alameda County Superior Court No. RG09489518

I declare that:

I am employed in the County of Alameda, State of California. I am over the age of 18 years and not a party to the within action. My business address is 171 Twelfth Street, Third Floor, Oakland, California 94607. On **February 16, 2010**, I served the following document(s):

**Response to Joint Defense Interrogatories**

by transmitting a true copy via the following methods:

_____ (By Facsimile) By personally transmitting a true copy thereof via facsimile to

_____ (By PERSONAL SERVICE) By causing to be hand delivered via Modern Express Courier, tracking number _____, a true copy thereof to

_____ (By OVERNIGHT DELIVERY) By delivering to an authorized courier authorized by the express service to receive documents or depositing in a box or other facility regularly maintained by the express carrier a true copy thereof, on this date, and addressed to

__XX__ (By U.S. MAIL) I am readily familiar with this office's business practice for collection and processing of correspondence for mailing with the United States Postal Service. This document will be sealed with postage fully prepaid and will be deposited with the United States Postal Service this date in the ordinary course of business, in envelopes addressed to **See attached service list**

I declare under penalty of perjury that the foregoing is true and correct. Executed on **February 16, 2010** at Oakland, California.

_Chehie Songstad_
Chehie Songstad

KAZAN, MCCLAIN,
LYONS,
GREENWOOD &
HARLEY
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 302-1000
(510) 465-7728
FAX (510) 835-4913

CSONGSTAD/471606.1

1

SERVICE LIST     CASE: Vest, Timothy [NE 1430]

ACTION #: RG09489518

February 16, 2010  2:03 PM

**BECHERER, KANNETT & SCHWEITZER**
1255 Powell Street, , Emeryville, CA  94608-2604
FOR: CYPRUS AMAX MINERALS CO/sii/pae/alt/eqt/CYPRUS MINES CORP;  CYPRUS AMAX MINERALS
CO/sii/pae/alt/eqt/SIERRA TALC & CHEMICAL COMPANY;  CYPRUS AMAX MINERALS
CO/sii/pae/alt/eqt/UNITED SIERRA DIVISION;  CYPRUS AMAX MINERALS CO/sii/pae/et of PAUL W. WOOD
COMPANY;  CYPRUS AMAX MINERALS COMPANY

PH:  (510) 658-3600
FAX: (510) 658-1151

**BERRY & BERRY**
P.O. Box 16070, Oakland, CA  94610
FOR: DESIGNATED DEFENSE COUNSEL

PH:  (510) 835-8330
FAX: (510) 835-5117

**BRYAN CAVE LLP**
2 Embarcadero Center, Suite 1410, San Francisco, CA  94111
FOR: MCDONNELL DOUGLAS CORPORATION;  WORLD AIRWAYS, INC.

PH:  415-675-3400
FAX: 215-675-3434

**BRYAN CAVE, LLP**
120 Broadway, Suite 300, Santa Monica, CA  90401-2305
FOR: MCDONNELL DOUGLAS CORPORATION;  WORLD AIRWAYS, INC.

PH:  (310) 576-2100
FAX: (310) 576-2200

**CHAPMAN & INTRIERI**
2236 Mariner Square Drive, Suite 300, Alameda, CA  94501-1019
FOR: DEXTER CORPORATION;  HENKEL CORPORATIO sii/pae/et to HENKEL LOCTITE CORPORATION;
HENKEL CORPORATION;  HENKEL LOCTITE CORPORATION ;  HENKEL LOCTITE CORPORATION
sii/pae/et to THE DEXTER CORPORATION

PH:  (510) 864-3600
FAX: (510) 864-3601

**COUNSEL UNKNOWN**
FOR: F.P. LATHROP CORPORATION;  GEORGE E. MASKER, INC.;  LIFE TECH CORP by merger to
INVITROGEN CORP sii/pae/et THE DEXTER CORP;  LIFE TECHNOLOGIES CORPORATION suc by merger to
INVITROGEN CORPORATION;  PLANT INSULATION BANKRUPTCY

**FOLEY & MANSFIELD**
1111 Broadway, 10th Floor, Oakland, CA  94607
FOR: KELLY-MOORE PAINT COMPANY, INC.;  LATHROP CONSTRUCTION ASSOCIATES, INC.;
LATHROP ONSTRUCTION ASSOC, INC. sii/pae/et F.P. LATHROP CONSTRUCTION;  RAYMOND INTERIOR
SYSTEMS - NORTH;  RAYMOND INTERIOR SYSTEMS - NORTH sii/pae/eqt to JAMES L. WHITTAKER

PH:  510-590-9500
FAX: 510-590-9595

**GLASPY & GLASPY**
One Walnut Creek Center, 100 Pringle Ave Ste 750, Walnut Creek, CA  94596
FOR: GARLOCK SEALING TECHNOLOGIES LLC

PH:  (925) 947-1300
FAX: (925) 947-1594

**HASSARD BONNINGTON**
2 Embarcadero Center, Suite 1800, San Francisco, CA  94111
FOR: KAISER GYPSUM COMPANY, INC.

PH:  (415) 288-9800
FAX: (415) 288-9802

**HERR & ZAPALA**
152 North 3rd Street, Suite 500, San Jose, CA  95112
FOR: ALLIED PACKING AND SUPPLY

PH:  (408) 287-7788
FAX: (408) 927-0408

**McKENNA, LONG & ALDRIDGE**
101 California Street, 41st Floor, San Francisco, CA  94111
FOR: HEXCEL CORPORATION

PH:  (415) 267-4000
FAX: (415) 267-4198

**McKENNA, LONG & ALDRIDGE LLP**
300 S. Grand Avenue, 14th Floor, Los Angeles, CA  90071
FOR: HEXCEL CORPORATION

PH:  213-688-1000
FAX: 213-243-6330

**PERKINS COIE**
1620 26th Street, 6th Floor, Santa Monica, CA  90404
FOR: MCDONNELL DOUGLAS CORPORATION

PH:  (310) 788-9900
FAX: (310) 843-1284

**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400, San Francisco, CA  94111
FOR: GEORGIA PACIFIC LLC fka GEORGIA PACIFIC CORPORATION

PH:  (415) 344-7000
FAX: (415) 344-7288

SERVICE LIST    CASE: Vest, Timothy [NE 1430]        ACTION #: RG09489518        February 16, 2010  2:03 PM
Page Two

**SELMAN & BREITMAN**
   33 New Montgomery Street, Sixth Floor, San Francisco, CA  94105        PH:  (415) 979-0400
   FOR:  KENTILE FLOORS, INC.        FAX: (415) 979-2099

**STEPTOE & JOHNSON**
   633 West Fifth Street, Suite 700, Los Angeles, CA  90071        PH:  (213) 439-9400
   FOR:  METROPOLITAN LIFE INSURANCE COMPANY        FAX: (213) 439-9599

**WALSWORTH, FRANKLIN, BEVINS & McCALL**
   601 Montgomery Street, 9th Floor, San Francisco, CA  94111        PH:  (415) 781-7072
   FOR:  HAMILTON MATERIALS, INC.        FAX: (415) 391-6258

**WALSWORTH, FRANKLIN, BEVINS & McCALL - DOWMAN**
   601 Montgomery Street, 9th Floor, San Francisco, CA  94111        PH:  (415) 781-7072
   FOR:  DOWMAN PRODUCTS, INC.        FAX: (415) 391-6258

End of Service List

KENNETH B. PRINDLE*
MICHAEL L. AMARO
ANDY J. GOETZ
MARY KIRK HILLYARD
TAHEREH K. BARNES
JACK R. REINHOLTZ
JACK C. NICK
JAMES G. MURRAY
THOMAS A. STEIG
R. DEREK CLASSEN
GRACE C. MORI
JEREMY D. MILBRODT
DOUGLAS S. DE HERAS
SUSETTE S. YI
CARLA LYNN CROCHET‡
JENNIFER M. WAYS

KRISTIE KAWAKAMI WONG†
MATTHEW S. COLE
CATHY MULLER DIEHL

HEATHER IJAMS†
MICHAEL H. SCHUCK
TREVOR KNOPF
NICHOLAS PAULOS
J. ANDREW BRANAM
RAMIE C. NIEDERKORN
GOPAL S. PATEL
TONY HSU
CHARLES S. YESNICK
LAYNE M. BUKOVSKIS
GRACE V. KOSMAN**
RUDIE D. BALDWIN
SANDRA L. ADAMS
SHEHNIE S. DIVEGLIA
STEVEN H. CHIN*
ARPI GALFAYAN
BRUCE L. DAVIS
CYNTHIA A. PALIN
ROBERT R. WILLIS
DANIELLE P. OCHI
MICHELLE C. GOLDEN
JEFFREY C. WALKER

## LAW OFFICES OF

## PRINDLE, AMARO, GOETZ, HILLYARD, BARNES & REINHOLTZ LLP

ONE CALIFORNIA STREET, SUITE 1910
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: 415.788.8354
FAX: 415.788.3625
PRINDLELAW.COM

OF COUNSEL
STEPHEN C. KLAUSEN
ROBERT H. BARONIAN
MATTHEW J. ESCHENBURG
ALFRED G. LUCKY, JR.
MARK B. PEPYS
DAVID M. HILLINGS
MICHAEL D. VALENTINE
GARY H. ANDERSON
CELESTE M. SCOTT
JENNIFER D. HOLT
JANE S. BLUMBERG
E. JANE WELLS
KIMBERLY A. ALLEN
CORY M. MARTIN

† ALSO ADMITTED IN HAWAII
‡ ALSO ADMITTED IN HAWAII AND WASHINGTON
* ALSO ADMITTED IN COLORADO
** ALSO ADMITTED IN MASSACHUSETTS

GARY E. YARDUMIAN (1961-2007)
J. LAWRENCE JUDY (1945-2006)

January 27, 2011

JENNIFER M. WAYS
JWAYS@PRINDLELAW.COM

**VIA E-MAIL ONLY**

Mark G. Intrieri, Esq.
CHAPMAN & INTRIERI LLP
2236 Mariner Square Drive
Third Floor, Suite 300
Alameda, CA 94501-1090

Re: *Timothy Vest, et al. v. Allied Packing, et al.*
U.S. District Court Case No. 3:11-cv-00061 JSW
Re: Cross-Claim of Henkel Corporation for Indemnity, Apportionment, and Contribution and Demand for Jury Trial

Dear Mr. Intrieri:

I write concerning the Cross Claim of Henkel Corporation against our client Dean's Materials, Inc. d.b.a. Contract Material Suppliers (Dean's Materials) that was filed by your office on January 21, 2011 in U.S. District Court for the Northern District of California. I hereby request that you immediately dismiss this action, as it is untimely and more importantly is a completely frivolous if not fraudulent claim which you know or certainly should know is not supported by any facts adduced in the underlying action.

The Second Amended Complaint naming Dean's Materials was filed on May 28, 2010. Dean's Materials answered on July 8, 2010. We served discovery on behalf of Dean's Materials on September 9, 2010 and plaintiffs' counsel served responses to our Special Interrogatories, Form Interrogatories, Request for Production of Documents and Requests for Admission on October 18, 2011. Those discovery responses were served on all counsel. As of that date at the latest, you were aware of the extent of plaintiff's claims against our client. If you had had any potential basis for filing a cross claim, it existed as of that date. Thereafter the facts reveal that that the basis of any cross claim against our client dwindles to zero as of the date your cross claim was filed.

As you perhaps know, the claim against Dean's Materials is that they may have supplied fireproofing material used in the construction of hanger M 110 at the Oakland International

LONG BEACH
562.436.3946

PASADENA
626.568.0834

HONOLULU
808.735.5933

Exhibit re: Reply 6-100

LAW OFFICES OF
**PRINDLE, AMARO, GOETZ,**
**HILLYARD, BARNES & REINHOLTZ LLP**

Re: <u>Timothy Vest, et al. v. Allied Packing, et al.</u>
January 27, 2011
Page 2

Airport operated by World Airways. As you well know, discovery in this case has been exhaustive. Thousands of documents have been produced by the Port of Oakland and other defendants. As you should know, had you performed any investigation before filing your cross claim, not one single document produced during the entire history of this case identifies or in any way relates to Dean's Materials. Further, there have been over a dozen depositions taken, most of which are related to hanger M 110 or activities within the hanger such as airplane repair or facility repair and remodel. Again, as you should know had you made any effort to evaluate whether a cross claim was warranted, not a single deponent has even heard of Dean's Materials or Construction Material Suppliers. To the extent there was any testimony related to the potential supplier of fireproofing to the hanger, it was to an entity other than Dean's Materials.

Inexplicably, you did not file a cross claim when our answer was filed and instead waited as the evidence was developed which clearly established that there was no basis for such a cross claim. Then, only near the very end of discovery, after discovery revealed that there was no evidence against our client, after our summary judgment motion was filed and even after I had advised you there was no basis for a cross claim against Dean's Materials and after the case had been removed to federal court did you suddenly , with no factual basis whatsoever file this claim in federal court on the eve of the hearing on plaintiff's motion for remand.

I am certain you were not motivated by any evidence that created a good faith belief that Dean's Materials had in some way acted in a manner that entitled you to indemnification, contribution or apportionment. Nor had you any good faith basis to file in federal court at this time when a remand motion is pending and no independent basis exists for obtaining federal jurisdiction as to any claim against Dean's Materials.

Had you not filed your cross claim and had this case been remanded we had every reasonable expectation of resolving this matter voluntarily or by a favorable ruling on our motion for summary judgment. This ill conceived and unfounded cross claim has the potential to create substantial, unnecessary cost to our client. I therefore request that you dismiss your cross claim against Dean's Materials by the close of business on Tuesday February 1, 2011. Otherwise we will seek whatever remedies are available to us including cost and sanctions.

Very truly yours,
PRINDLE, AMARO, GOETZ
HILLYARD, BARNES & REINHOLTZ LLP

BY: JENNIFER M. WAYS

JMW:fb

Exhibit re: Reply 6-101