ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-00481-MEJ

Carpenter v. General Electric Company et al
Assigned to: Magistrate Judge Maria-Elena James
Cause: 28:1332 Diversity-Product Liability

Date Filed: 02/01/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**Harry Carpenter**

represented by **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Bath Iron Works Corporation**

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**Northrop Grumman Shipbuilding,
Inc.**

**Defendant**

## Todd Shipyards Corporation

| Date Filed | # | Docket Text |
|---|---|---|
| 02/02/2011 | 6 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (bjtS, COURT STAFF) (Filed on 2/2/2011) (Entered: 02/02/2011) |
| 02/01/2011 | | CASE DESIGNATED for Electronic Filing. (ga, COURT STAFF) (Filed on 2/1/2011) (Entered: 02/02/2011) |
| 02/01/2011 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 5/5/2011. Case Management Conference set for 5/12/2011 10:00 AM in Courtroom B, 15th Floor, San Francisco.. Signed by Judge Maria-Elena James on 2/1/11. (Attachments: # 1 Standing Order)(ga, COURT STAFF) (Filed on 2/1/2011) (Entered: 02/02/2011) |
| 02/01/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Harry Carpenter. (ga, COURT STAFF) (Filed on 2/1/2011) (Entered: 02/02/2011) |
| 02/01/2011 | 3 | NOTICE OF TAG-ALONG ACTION by Harry Carpenter (ga, COURT STAFF) (Filed on 2/1/2011) (Entered: 02/02/2011) |
| 02/01/2011 | 2 | Certificate of Interested Entities by Harry Carpenter re 1 Complaint, (ga, COURT STAFF) (Filed on 2/1/2011) (Entered: 02/02/2011) |
| 02/01/2011 | 1 | COMPLAINT / issued summons against Bath Iron Works Corporation, Foster Wheeler LLC, General Electric Company, Northrop Grumman Shipbuilding, Inc., Todd Shipyards Corporation ( Filing fee $ 350, receipt number 34611055716.). Filed byHarry Carpenter. (ga, COURT STAFF) (Filed on 2/1/2011) (Entered: 02/02/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/03/2011 08:42:26 | | |
| **PACER Login:** bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** 3:11-cv-00481-MEJ |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HARRY CARPENTER,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY, BATH IRON WORKS CORPORATION, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), NORTHROP GRUMMAN SHIPBUILDING, INC., TODD SHIPYARDS CORPORATION,<br><br>Defendants. | No. CV 11 0481<br><br>COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL |

## I.

## PARTIES

1.    Plaintiff in this action, HARRY CARPENTER, has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

2.    Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3.    The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1    EXHIBIT A

2    Plaintiff: HARRY CARPENTER

3

4    Plaintiff's injuries:  Plaintiff's exposure to asbestos and asbestos-containing products caused

5    severe and permanent injury to the plaintiff, including, but not limited to breathing difficulties

6    and/or other lung damage.  Plaintiff was diagnosed with lung cancer on or about April 2006.

7

8    Retirement Status:  The injured party retired from his last place of employment at regular

9    retirement age.  He has therefore suffered no disability from his asbestos-related disease as

10   "disability" is defined in California Code of Civil Procedure § 340.2.

11

12   Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may

13   have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by

14   Defendants.  Plaintiff's exposure to asbestos occurred at the following times and places, and

15   involved exposure to dust created by the contractors and the products of the entities listed below.

16   The exposure includes, but is not limited, to the following presently known contractors and the

17   manufacturers and distributors of asbestos-containing products:

18

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Training Center, Great Lakes, IL | Trainee | 7/1960 - 10/1960 |
|  | Naval Air Station, Green Cove Springs, FL | Seaman | 1961 |

23   Job Duties:  After completing basic training at Great Lakes, Illinois, plaintiff worked on a crew
     maintaining the reserve fleet at Green Cove Springs, Florida.  Plaintiff maintained the alarms
24   designed to signal the entrance of water into any part of a ship.  The process involved traveling
     through all parts of the ships, including areas where old insulation was crumbing from equipment
25   exteriors and overhead pipes.  Plaintiff does not currently recall the names of any supervisors or
     coworkers.  Plaintiff currently contends he was exposed to asbestos during this employment.

26

27   ///

28   ///

K:\Injured\114953\FED\PLD\cmp fed (pi).wpd                    14
                 COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | CHEBOYGAN COUNTY (LST-533), Naval Air Station, Cecil Field, Jacksonville/ Yukon, FL | Ship Cleaner | 1961 |
| | Rawls Brothers Shipyard, Jacksonville, FL | | |

Job Duties: Plaintiff worked as part of a crew towing the CHEBOYGAN COUNTY from the reserve fleet storage area at the Naval Air Station, Green Cove Springs, Florida to the Naval Air Station, Cecil Field, Jacksonville/ Yukon, Florida for recommissioning. Plaintiff was on board the ship while Navy crews and civilian shipyard workers tore out and replaced insulation on pipes and equipment, and removed and replaced valve and pump packing, engine gaskets and boiler equipment and refractory material. Plaintiff recalls a CLEAVER-BROOKS, INC. boiler supplied galley heating and steam heating aboard ship. Plaintiff performed maintenance on this boiler, including opening up the boiler and performing patch work on the castable fire clay brickwork inside the boiler, cleaning the boiler, and maintaining the fuel oil, water and air systems. Plaintiff used a broom and shovel to clean up and bag old insulation, packing, gaskets, and refractory materials, along with related dust and debris. Plaintiff recalls his supervisor, Jerry White, Norfolk or Portsmouth, Virginia. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | GRAHAM COUNTY (LST-1176), | Boilermaker | Fall 1962 - 7/1964 |
| | Norfolk Shipbuilding and Drydock, (Norshipco), Norfolk, VA | | |
| | Little Creek Naval Amphibious Base, Norfolk, VA | | |
| | Atlantic Cruise; Norfolk Naval Shipyard, Portsmouth, VA | | |

Job Duties: Plaintiff boarded the GRAHAM COUNTY when it was at Norfolk Shipbuilding and Drydock (Norshipco). Plaintiff recalls that four German-built Norburg engines were removed and replaced with Fairbanks Morse Engines. The ship was home ported at Little Creek Naval Amphibious Base, Norfolk, Virginia, where maintenance and repair were performed. Plaintiff performed repair and maintenance work in the engine and boiler rooms both at sea and in port. Plaintiff removed and replaced refractory material on boilers. Plaintiff insulated the feedwater tank for the boiler. Plaintiff used pneumatic tools to chip out insulating block, mortar, insulating cement and firebrick. Plaintiff replaced this refractory material, mixing new mortar and insulating cement and cutting and installing insulating block. Plaintiff removed and replaced insulation on the exteriors of boiler feedwater tanks. Plaintiff used KAYLO (OWENS CORNING FIBERGLAS) block insulation. Plaintiff helped with engine repair, removing and replacing gaskets. Plaintiff removed and replaced gaskets on equipment, including evaporators.

Plaintiff installed new GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets. Plaintiff changed gaskets and packing on pumps and valves, including salt water and fresh water pumps. Plaintiff installed rope-style GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) and JOHN CRANE, INC. packing, cutting it from a spool. Plaintiff replaced leaking valves and related gaskets on the main steam lines, removing insulation to reach the bolts and replacing the insulation when work was complete. Plaintiff removed and replaced broken pipe insulation, cutting block insulation and mixing and applying insulating cement. Plaintiff recalls supervisor Mr. Corley, address unknown; and coworker Terrance "Terry" Winchester, Cincinnati, Ohio. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | HAWKINS (DD-873) Atlantic Cruise; Naval Station, Newport, RI | Boilermaker | 10/1964- 1/1966 |

Job Duties:   Plaintiff performed repair and maintenance work in the engine and boiler rooms both at sea and in port. Plaintiff recalls working on the BABCOCK & WILCOX COMPANY boilers, including repairing many steam leaks, and all associated machinery. Plaintiff maintained the FOSTER WHEELER (FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION)) economizer. Plaintiff worked in proximity to Navy coworkers and civilian crews from the Naval Station in Newport, Rhode Island, who were performing the same work. Plaintiff removed and replaced refractory material on boilers. Plaintiff used pneumatic tools to chip out insulating block, mortar, insulating cement and firebrick. Plaintiff replaced this refractory material, mixing new mortar and insulating cement and cutting and installing insulating block. Plaintiff removed and replaced insulation on the exteriors of boiler feedwater tanks. Plaintiff used KAYLO (OWENS CORNING FIBERGLAS) block insulation. Plaintiff helped with engine repair, removing and replacing gaskets. Plaintiff removed and replaced gaskets on equipment, including evaporators. Plaintiff installed new GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets. Plaintiff changed gaskets and packing on pumps and valves, including salt water and fresh water pumps. Plaintiff installed rope-style GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) and JOHN CRANE, INC. packing, cutting it from a spool. Plaintiff replaced leaking valves and related gaskets on the main steam lines, removing insulation to reach the bolts and replacing the insulation when work was complete. Plaintiff removed and replaced broken pipe insulation, cutting block insulation and mixing and applying insulating cement. Plaintiff recalls the insulation on steam lines was thicker on the HAWKINS than on other ships because the steam generated greater pressure. Plaintiff removed and replaced insulation on blowers and air compressors associated with the steam lines. Plaintiff does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | RICHARD E KRAUS (DD-849), Naval Station, Newport, RI; Vietnam | Boilermaker | 1/1966 - 1968; 1968 - 12/2/1969 |
| | Naval Station (32nd Street) San Diego, CA | | 1966 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy (cont'd) | RICHARD E KRAUS (DD-849), Naval Station, Newport, RI; Vietnam | Boilermaker | 1/1966 - 1968; 1968 - 12/2/1969 |
| | Pearl Harbor Naval Shipyard, Honolulu, Hawaii | | (one week) |
| | Naval Repair Facility, Subic Bay, Philippines | | 1966-1967 (off and on) |
| | US Navy, Vietnam | | 1966-1967 |
| | Boston Naval Shipyard, Boston, MA | | 1968 (Approx. 2 months) |

Job Duties: Plaintiff performed repair and maintenance work in the engine and boiler rooms both at sea and in port. Plaintiff received the rank of engineering officer and stood watch in the main engine room. Plaintiff recalls a BABCOCK & WILCOX COMPANY boiler. During regular ship maintenance and repair work at the Naval Station, Newport, Rhode Island and off the coast of Vietnam, plaintiff removed and replaced gaskets on equipment, including evaporators. Plaintiff installed new CONSACO (GARLOCK SEALING TECHNOLOGIES, LLC) and other GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets. Plaintiff changed gaskets and packing on pumps and valves, including salt water and fresh water pumps. Plaintiff installed rope-style GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) and JOHN CRANE, INC. packing, cutting it from a spool. Plaintiff replaced leaking valves and related gaskets on the main steam lines, removing insulation to reach the bolts and replacing the insulation when work was complete. Plaintiff removed and replaced broken pipe insulation, cutting block insulation and mixing and applying insulating cement. While standing watch in the engine room, plaintiff was in close proximity to mechanics who were performing engine repairs, removing and replacing gaskets.

At the shipyard in San Diego in 1966, plaintiff was part of a crew hooking up air conditioning units in the ship's living compartments. Plaintiff recalls the installation of the units was below the asbestos-covered steam piping above and that the piping flaked off and the air was dusty with asbestos particles.

Plaintiff recalled that the ship entered the Naval Repair Facility at Subic Bay, Philippines, a number of times for repair work, maintenance, and repair while the ship was in Vietnam.

For at least two months in 1968, plaintiff was present during a major overhaul at the Boston Naval Shipyard, Boston, Massachusetts. During the overhaul, plaintiff used pneumatic tools to remove all the refractory material from a boiler, including all insulating block, mortar, insulating cement and firebrick. Plaintiff replaced this refractory material, mixing new mortar and insulating cement and cutting and installing insulating block. Plaintiff used KAYLO (OWENS CORNING FIBERGLAS) block insulation. Plaintiff worked in proximity to civilian crews from the Boston Naval Shipyard, Boston, Massachusetts who were performing the same work on two other boilers.

Plaintiff recalls supervisors Melvin Ainsworth, Louisiana or Virginia; and Mr. Ashman, address unknown; and shipmates Doug Newton, Denver, Colorado; Thomas Cabe, Gautier, Mississippi; and Gilbert Lee Minsonberger, Louisville, Kentucky. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Station, Boston, MA | Military Policeman | 2/ 1970- 1972 |

Job Duties: Plaintiff enforced the Navy's rules for enlisted men. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | CONYNGHAM (DDG-17) | Boilermaker | July 1972-1973 |
| | Norfolk Naval Shipyard, Portsmouth, VA Base Destroyer Piers; | | |
| | Middle East cruise; Boston Naval Shipyard, Boston, MA | | |

Job Duties: Plaintiff was in charge of overhauling equipment in the fireroom, including Worthington (HALLIBURTON ENERGY SERVICES) feedwater pumps and turbines, when he boarded the CONYNGHAM (DDG-17), which was docked at the Norfolk Naval Shipyard Base Destroyer Piers. Plaintiff performed repair and maintenance work in the engine and boiler rooms both at sea and at the Boston Naval Shipyard. Plaintiff removed and replaced refractory material on boilers. Plaintiff used pneumatic tools to chip out insulating block, mortar, insulating cement and firebrick. Plaintiff replaced this refractory material, mixing new mortar and insulating cement and cutting and installing insulating block. Plaintiff removed and replaced insulation on the exteriors of boiler feedwater tanks. Plaintiff used KAYLO (OWENS CORNING FIBERGLAS) block insulation. Plaintiff helped with engine repair, removing and replacing gaskets. Plaintiff removed and replaced gaskets on equipment, including evaporators. Plaintiff installed new CONSACO (GARLOCK SEALING TECHNOLOGIES, LLC) and other GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets. Plaintiff changed gaskets and packing on pumps and valves, including salt water, fresh water, feed and feed booster pumps. Plaintiff installed rope-style GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) and JOHN CRANE, INC. packing, cutting it from a spool. Plaintiff worked on blowers and aerating feed tanks, removing exterior insulation to gain access. Plaintiff replaced leaking valves and related gaskets on the main steam lines, removing insulation to reach the bolts and replacing the insulation when work was complete. Plaintiff removed and replaced broken pipe insulation, cutting block insulation and mixing and applying insulating cement. Plaintiff recalls Chief Don Radshaw, deceased or Chesapeake, Virginia; and coworkers Billy G. Jones, Virginia; and Mr. Byrd, address unknown. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy Reserves | Norfolk Naval Shipyard, Portsmouth, VA | Boilermaker | 1974-1980 |

Job Duties: Plaintiff repaired and maintained boilers and related pipes and equipment in the shipyard's power plant. Plaintiff removed and replaced refractory materials in boilers, including mortar and insulating cement. Plaintiff removed and replaced packing on valves and pumps,

including fuel oil, fresh water, salt water and boiler feedwater pumps. Plaintiff installed new packing, including JOHN CRANE packing. Plaintiff tore off pipe insulation to gain access to flange gaskets and valves. Plaintiff recalls supervisor Stanley Moore, Virginia or New England; and coworkers Charlie West Portsmouth, Virginia; and Mr. Miller, Suffolk, Virginia, area. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy Reserves | HAROLD J. ELLISON (DD-864), Local cruise, Norfolk Naval Shipyard, Portsmouth, VA | Millwright (Supervisor) | 1973-1974 (Weekends) |

Job Duties: Plaintiff lived and worked on the HAROLD J. ELLISON on weekends both while it was at sea and while it was at the Norfolk Naval Shipyard, Portsmouth, Virginia. Plaintiff supervised repair work on valves and pumps, working in proximity to machinists who were removing and replacing packing, installing new JOHN CRANE packing. Plaintiff disturbed piles of insulation that had been torn off pipes and left on deck. Plaintiff does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | FRANCIS MARION (LPA-249) | Boilermaker | 1974 - 1980 (Weekends) |

Job Duties: Plaintiff supervised crews maintaining and repairing boilers, pumps, valves and other equipment. Plaintiff removed and replaced refractory materials in a BABCOCK & WILCOX COMPANY boiler, using pneumatic tools to tear out all old refractory materials, including firebrick, mortar, insulating cement and insulating block. Plaintiff performed maintenance, removing and replacing gaskets on equipment and gaskets and packing on pumps and valves, installing new JOHN CRANE packing. Plaintiff does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | LASALLE (AGF-3), Middle East cruise, including, Bahrain Island, Bahrain; | Boilermaker (Supervisor) | 4 or 5/1980-12/1980 |
| | Philadelphia Naval Shipyard, Philadelphia, PA | | 1/1981-5/1982 |

Job Duties: Plaintiff supervised the maintenance and repair of boilers, pumps, valves, heat exchangers and other equipment while the LASALLE was on a cruise of the Middle East. Plaintiff also supervised repair of the same equipment during a major overhaul at Philadelphia Naval Shipyard. During the overhaul, which took place from January, 1981 through May, 1982, plaintiff supervised crews removing all refractory materials from the BABCOCK & WILCOX COMPANY boilers using pneumatic tools, including firebrick, mortar, insulating block and insulating cement. Plaintiff supervised crews tearing out and replacing packing and gaskets in

pumps and valves, removing insulation on pipes and equipment exteriors to gain access. Plaintiff worked in proximity to shipyard crews performing the same work. Plaintiff worked in close proximity to shipyard crews who tore out and replaced the original manufacturer's packing on rebuilt DELAVAL (IMO INDUSTRIES, INC.) fuel oil pumps. The pumps had been rebuilt by the manufacturer, DeLaval Corporation in Monroe, North Carolina, and returned to the ship with inadequate packing. Plaintiff remained in close proximity when crews installed new JOHN CRANE, INC. packing. Plaintiff does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | HAROLD J. ELLISON (DD-864), Philadelphia Naval Shipyard, Philadelphia, PA | Boilermaker (Supervisor) | 4 or 5/1982- 10/1/1983 |

Job Duties: Plaintiff supervised crews recommissioning this ship for sale to Pakistan. Plaintiff, working alongside members of his crew, overhauled the Number 4 FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) boiler, using pneumatic tools to tear out all old refractory materials, including firebrick, mortar, insulating cement and insulating block. Plaintiff performed maintenance, removing and replacing gaskets on equipment and gaskets and packing on pumps and valves, installing new JOHN CRANE packing. Plaintiff does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Various ships, Charleston Naval Shipyard, Charleston, SC, including, | Boilermaker (Supervisor) | 12/2/1983 - 11/1986 (2 weeks to one month per ship) |
| | HALYBURTON (FFG-40) | | |
| | TRIPPE (FF-1075) | | |
| | SEMMES (DDG-18) | | |
| | SANTA BARBARA (AE-28) | | |
| | FRANK CABLE (AS-40) | | |
| | MAHAN (DDG-42) | | |
| | CAPODONNO (DE-1093) | | |

Job Duties: Plaintiff worked as a supervisor in the Shore Intermediate Maintenance Activity program at the shipyard. Plaintiff supervised repair and maintenance work on boilers, including FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) boilers on the SANTA BARBARA and FRANK CABLE, and heat exchangers and condensers on up to four ships at a time. Plaintiff supervised and worked in proximity to crews who were tearing out and replacing brickwork, mortar, insulating block and refractory cement on boilers and repairing condensers and heat exchangers, including removing and replacing gaskets. Plaintiff does not

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1   currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was
2   exposed to asbestos during this employment.

3   During plaintiff's career in the US Navy and while working in various capacities, including as
    boilermaker and boilermaker supervisor, plaintiff regularly maintained and removed original or
4   factory gasket and packing materials from pumps.

5   Additionally, plaintiff regularly maintained and removed original or factory gasket and packing
    materials from valves manufactured by the following: CRANE CO., JOHNSON CONTROLS,
6   INC., HONEYWELL INTERNATIONAL, INC., WORTHINGTON (HALLIBURTON
    ENERGY SERVICES, INC.) THE WALWORTH COMPANY, WILLIAM POWELL
7   COMPANY, STOCKHAM VALVES & FITTINGS, INC. (SVI CORPORATION), CROSBY
    VALVE & GAUGE COMPANY (CROSBY VALVE INC.), LESLIE CONTROLS, INC.,
8   NORDSTROM VALVES, INC. (FLOWSERVE US INC.), and MANNING MAXWELL &
    MOORE (HALLIBURTON ENERGY SERVICES, INC.).

9   Plaintiff performed numerous repair jobs on economizers on steam-driven ships. Plaintiff recalls
    that FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) was the
10  manufacturer of the economizers on BABCOCK & WILCOX COMPANY boilers.
    Additionally, plaintiff overhauled and replaced original packing and bonnet gaskets on
11  YARWAY CORPORATION and thermodynamics steamtraps. Plaintiff recalls that there were
    four thermodynamics high-pressure steam traps per boiler coming off the super heated header on
12  the three destroyers, the HAWKINS (DD-873), HAROLD J. ELLISON (DD-864), and the
    RICHARD E KRAUS (DD-849, that he served on.
13

14  Plaintiff fabricated gaskets out of the following sheet gasket sheeting material: GARLOCK
    SEALING TECHNOLOGIES, LLC and Goodyearite sheets gaskets (THE GOODYEAR TIRE &
15  RUBBER COMPANY). Plaintiff recalled using FLEXITALLIC, INC. gaskets.

16  Additionally, plaintiff removed and replaced with asbestos refractory material on boilers,
    including but not limited to the following: GENERAL REFRACTORIES COMPANY,
17  KAISER REFRACTORIES (KAISER ALUMINUM & CHEMICAL CORPORATION), and
    NORTH AMERICAN REFRACTORIES COMPANY.

18  From approximately 1960 until the early 1970s, plaintiff used EAGLE PICHER SUPER 66
    insulation cement and the following asbestos-containing pipe insulation: JOHNS MANVILLE,
19  UNIBESTOS, and OWENS CORNING FIBERGLAS.

20  NON-OCCUPATIONAL EXPOSURE:

21  AUTOMOBILE REPAIR:

22  Plaintiff performed approximately 10 brake jobs, including removing the original, factory
    installed brakes, on his various personal vehicles from the 1960s to the present. Plaintiff sanded
23  the glaze off BENDIX CORPORATION (HONEYWELL INTERNATIONAL, INC.) and
    Raybestos (RAYMARK INDUSTRIES, INC.) replacement brakes. Plaintiff purchased the
24  brakes and clutches from ADVANCE AUTO PARTS, INC., in Charleston, South Carolina.

25  Plaintiff removed the original clutch from a GENERAL MOTORS CORPORATION vehicle
    and from a 1982 DATSUN 200SX (NISSAN NORTH AMERICA, INC.) sports car that he
26  purchased new. Plaintiff removed BORG-WARNER CORPORATION BY ITS SUCCESSOR
    IN INTEREST, BORGWARNER MORSE TEC INC. clutches a few times. Plaintiff also
27  performed one brake job on the Datsun automobile.

28  Plaintiff currently contends he was exposed to asbestos during this automobile repair work.

1    4.    All of Plaintiff's claims arise out of repeated exposure to asbestos-containing

2  products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or

3  maintained by defendants at Plaintiff's worksites, over a period of years, caused from release of

4  toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative,

5  progressive, incurable lung diseases.

6    5.    Plaintiff claims damages for an asbestos-related disease arising from a series of

7  occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing

8  products, when handled in the manner in which they were intended, released harmful asbestos

9  fibers which when inhaled by Plaintiff, caused serious lung disease.

10    6.    As used herein, Plaintiff shall mean the above-captioned asbestos-injured

11  Plaintiff.

12    7.    Plaintiff is informed and believes, and thereon alleges that at all times herein

13  mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole

14  proprietorships and/or other business entities organized and existing under and by virtue of the

15  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

16  said defendants, and each of them, were and are authorized to do and are doing business in the

17  State of California, and that said defendants have regularly conducted business in the County of

18  San Francisco, State of California.

19                                              **II.**

20              **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

21    8.    Jurisdiction: Plaintiff HARRY CARPENTER is a citizen of the State of North

22  Carolina.

23    Defendants are each corporations incorporated under the laws of and having its principal

24  places of business in the following States:

25
| DEFENDANT | STATE |
| --- | --- |
| GENERAL ELECTRIC COMPANY | Connecticut |
| BATH IRON WORKS CORPORATION | Maine |

28

| DEFENDANT | STATE |
|---|---|
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | New Jersey |
| NORTHROP GRUMMAN SHIPBUILDING, INC. | Virginia |
| TODD SHIPYARDS CORPORATION | Washington |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9. <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF HARRY CARPENTER COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, BATH IRON WORKS CORPORATION, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), NORTHROP GRUMMAN SHIPBUILDING, INC., TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10. At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

1  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

2  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

3  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

4  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

5  asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

6  called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

7  conduct of each successor, successor in business, successor in product line or a portion thereof,

8  assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

9  venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

10  entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

11  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

12  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

13  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

14  products containing asbestos. The following defendants, and each of them, are liable for the acts

15  of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

16  destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

17  of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

18  ENTITY; defendants, and each of them, caused the destruction of plaintiff's remedy against each

19  such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

20  role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

21  originally attached to each such ALTERNATE ENTITY:

22 | DEFENDANT | ALTERNATE ENTITY |
|---|---|
23 | GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
24 | | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY |
25 | | G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES |
26 | | PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |
27 | FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
28 | TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION<br>SEATTLE-TACOMA SHIPBUILDING CORP. |

| DEFENDANT | ALTERNATE ENTITY (cont'd) |
|---|---|
| NORTHROP GRUMMAN SHIPBUILDING, INC. | AVONDALE INDUSTRIES, INC. |
| | AVONDALE SHIPYARDS, INC. |
| | CONTINENTAL MARITIME INDUSTRIES, INC. |
| | EASTERN IDAHO CONSTRUCTION COMPANY |
| | INGALLS SHIPBUILDING, INC. |
| | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
| | NORTH CAROLINA SHIPBUILDING |
| | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
| | SERVICE ENGINEERING INDUSTRIES, INC. |

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

///

1    13.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
2  exercise due care in the pursuance of the activities mentioned above and defendants, and each of
3  them, breached said duty of due care.

4    14.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
5  have known, and intended that the aforementioned asbestos and products containing asbestos and
6  related products and equipment, would be transported by truck, rail, ship, and other common
7  carriers, that in the shipping process the products would break, crumble, or be otherwise
8  damaged; and/or that such products would be used for insulation, construction, plastering,
9  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
10  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
11  breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the
12  release of airborne asbestos fibers, and that through such foreseeable use and/or handling
13  "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to
14  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
15  persons working in proximity to said products, directly or through reentrainment.

16    15.    Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-
17  containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's
18  exposure to asbestos and asbestos-containing products is on current information as set forth at
19  various locations and circumstances in **Exhibit A**, attached to plaintiff's complaint and
20  incorporated by reference herein.

21    16.    As a direct and proximate result of the acts, omissions, and conduct of the
22  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure
23  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,
24  or harm to the plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and
25  incorporated by reference herein.

26    17.    Plaintiff is informed and believes, and thereon alleges, that progressive lung
27  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
28  ///

1  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

2  asbestos and asbestos-containing products over a period of time.

3        18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

4  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

5  containing products presented risk of injury and/or disease.

6        19.    As a direct and proximate result of the aforesaid conduct of defendants, their

7  ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,

8  permanent injuries and/or future increased risk of injuries to their persons, body and health,

9  including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and

10  emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to

11  Plaintiff's general damage.

12        20.    As a direct and proximate result of the aforesaid conduct of the defendants, their

13  "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur

14  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

15  and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this

16  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost

17  thereof is ascertained.

18        21.    As a further direct and proximate result of the said conduct of the defendants,

19  their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature

20  and extent of which are not yet known to Plaintiff; and leave is requested to amend this

21  complaint to conform to proof at the time of trial.

22        22.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

23  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

24  had full knowledge of, or should have known of, each of the acts set forth herein.

25        23.    Defendants, their "alternate entities," and each of them, are liable for the

26  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

27  and each defendant's officers, directors and managing agents participated in, authorized,

28  ///

1  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
2  each of their ALTERNATE ENTITIES as set forth herein.

3      24.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
4  and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious
5  disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of
6  example and by way of punishing said defendants, seeks punitive damages according to proof.

7      WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and
8  each of them, as hereinafter set forth.

9  SECOND CAUSE OF ACTION<br>(Products Liability)
10

11      AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
12  ACTION FOR PRODUCTS LIABILITY, PLAINTIFF HARRY CARPENTER COMPLAINS
13  OF DEFENDANTS GENERAL ELECTRIC COMPANY, BATH IRON WORKS
14  CORPORATION, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION),
15  NORTHROP GRUMMAN SHIPBUILDING, INC., TODD SHIPYARDS CORPORATION,
16  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

17      25.    Plaintiff incorporates herein by reference, as though fully set forth herein, the
18  allegations contained in each paragraph of the First Cause of Action herein.

19      26.    Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended
20  that the above-referenced asbestos and asbestos-containing products would be used by the
21  purchaser or user without inspection for defects therein or in any of their component parts and
22  without knowledge of the hazards involved in such use.

23      27.    Said asbestos and asbestos-containing products were defective and unsafe for their
24  intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The
25  defect existed in the said products at the time they left the possession of defendants, their
26  "alternate entities," and each of them. Said products did, in fact, cause personal injuries,
27  including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff
28  ///

1  herein, while being used in a reasonably foreseeable manner, thereby rendering the same
2  defective, unsafe and dangerous for use.

3      28.    "Exposed persons" did not know of the substantial danger of using said products.
4  Said dangers were not readily recognizable by "exposed persons". Said defendants, their
5  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
6  which Plaintiff and others similarly situated were exposed.

7      29.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
8  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
9  sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,
10 marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
11 and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
12 did so with conscious disregard for the safety of "exposed persons" who came in contact with
13 said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
14 ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
15 death resulting from exposure to asbestos or asbestos-containing products, including, but not
16 limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part,
17 from scientific studies performed by, at the request of, or with the assistance of, said defendants,
18 their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
19 defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

20     30.    On or before 1930, and thereafter, said defendants, their ALTERNATE
21 ENTITIES and each of them, were aware that members of the general public and other "exposed
22 persons", who would come in contact with their asbestos and asbestos-containing products, had
23 no knowledge or information indicating that asbestos or asbestos-containing products could
24 cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
25 members of the general public and other "exposed persons", who came in contact with asbestos
26 and asbestos-containing products, would assume, and in fact did assume, that exposure to
27 asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
28 hazardous to health and human life.

31.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff.

33.     Plaintiff alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

1  products to be safe for their intended use but that their asbestos and asbestos-containing products,
2  created an unreasonable risk of bodily harm to exposed persons.

3    34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
4  and various asbestos-containing products manufactured, fabricated, inadequately researched,
5  designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
6  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
7  marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
8  aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
9  cannot identify precisely which asbestos or asbestos-containing products caused the injuries
10  complained of herein.

11    35.    Plaintiff relied upon defendants', their "alternate entities'", and each of their
12  representations, lack of warnings, and implied warranties of fitness of asbestos and their
13  asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has
14  been injured permanently as alleged herein.

15    36.    As a direct and proximate result of the actions and conduct outlined herein,
16  Plaintiff has suffered the injuries and damages previously alleged.

17    WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
18  ENTITIES, and each of them, as hereinafter set forth.

19                                    **IV.**
20                                    **PRAYER**

21    WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
22  ENTITIES, and each of them in an amount to be proved at trial, as follows:

23    (a)    For Plaintiff's general damages according to proof;
24    (b)    For Plaintiff's loss of income, wages and earning potential according to proof;
25    (c)    For Plaintiff's medical and related expenses according to proof;
26    (d)    For Plaintiff's cost of suit herein;
27    (e)    For exemplary or punitive damages according to proof;
28    (f)    For damages for fraud according to proof; and

1   (g) For such other and further relief as the Court may deem just and proper, including

2     costs and prejudgment interest.

3

4 Dated: _____    BRAYTON❖PURCELL LLP

5

6             By: _____

7               David R. Donadio
               Attorneys for Plaintiff

8

9

10           JURY DEMAND

11   Plaintiff hereby demands trial by jury of all issues of this cause.

12

13 Dated: _____    BRAYTON❖PURCELL LLP

14

15             By: _____

16               David R. Donadio
               Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\114953\FED\PLD\cmp fed (pi).wpd     12
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

EXHIBIT A

Plaintiff: HARRY CARPENTER

Plaintiff's injuries:  Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, including, but not limited to breathing difficulties and/or other lung damage.  Plaintiff was diagnosed with lung cancer on or about April 2006.

Retirement Status:  The injured party retired from his last place of employment at regular retirement age.  He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.  Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|---------------------|-----------|----------------|
| US Navy | Naval Training Center, Great Lakes, IL | Trainee | 7/1960 - 10/1960 |
|  | Naval Air Station, Green Cove Springs, FL | Seaman | 1961 |

Job Duties:  After completing basic training at Great Lakes, Illinois, plaintiff worked on a crew maintaining the reserve fleet at Green Cove Springs, Florida.  Plaintiff maintained the alarms designed to signal the entrance of water into any part of a ship.  The process involved traveling through all parts of the ships, including areas where old insulation was crumbing from equipment exteriors and overhead pipes.  Plaintiff does not currently recall the names of any supervisors or coworkers.  Plaintiff currently contends he was exposed to asbestos during this employment.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | CHEBOYGAN COUNTY (LST-533), Naval Air Station, Cecil Field, Jacksonville/ Yukon, FL<br><br>Rawls Brothers Shipyard, Jacksonville, FL | Ship Cleaner | 1961 |

Job Duties:  Plaintiff worked as part of a crew towing the CHEBOYGAN COUNTY from the reserve fleet storage area at the Naval Air Station, Green Cove Springs, Florida to the Naval Air Station, Cecil Field, Jacksonville/ Yukon, Florida for recommissioning.  Plaintiff was on board the ship while Navy crews and civilian shipyard workers tore out and replaced insulation on pipes and equipment, and removed and replaced valve and pump packing, engine gaskets and boiler equipment and refractory material.  Plaintiff recalls a CLEAVER-BROOKS, INC. boiler supplied galley heating and steam heating aboard ship.  Plaintiff performed maintenance on this boiler, including opening up the boiler and performing patch work on the castable fire clay brickwork inside the boiler, cleaning the boiler, and maintaining the fuel oil, water and air systems.  Plaintiff used a broom and shovel to clean up and bag old insulation, packing, gaskets, and refractory materials, along with related dust and debris.  Plaintiff recalls his supervisor, Jerry White, Norfolk or Portsmouth, Virginia.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | GRAHAM COUNTY (LST-1176),<br><br>Norfolk Shipbuilding and Drydock, (Norshipco), Norfolk, VA<br><br>Little Creek Naval Amphibious Base, Norfolk, VA<br><br>Atlantic Cruise; Norfolk Naval Shipyard, Portsmouth, VA | Boilermaker | Fall 1962 - 7/1964 |

Job Duties:  Plaintiff boarded the GRAHAM COUNTY when it was at Norfolk Shipbuilding and Drydock (Norshipco).  Plaintiff recalls that four German-built Norburg engines were removed and replaced with Fairbanks Morse Engines.  The ship was home ported at Little Creek Naval Amphibious Base, Norfolk, Virginia, where maintenance and repair were performed.  Plaintiff performed repair and maintenance work in the engine and boiler rooms both at sea and in port. Plaintiff removed and replaced refractory material on boilers.  Plaintiff insulated the feedwater tank for the boiler.  Plaintiff used pneumatic tools to chip out insulating block, mortar, insulating cement and firebrick.  Plaintiff replaced this refractory material, mixing new mortar and insulating cement and cutting and installing insulating block.  Plaintiff removed and replaced insulation on the exteriors of boiler feedwater tanks.  Plaintiff used KAYLO (OWENS CORNING FIBERGLAS) block insulation.  Plaintiff helped with engine repair, removing and replacing gaskets.  Plaintiff removed and replaced gaskets on equipment, including evaporators.

Plaintiff installed new GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets.
Plaintiff changed gaskets and packing on pumps and valves, including salt water and fresh water
pumps. Plaintiff installed rope-style GARLOCK (GARLOCK SEALING TECHNOLOGIES,
LLC) and JOHN CRANE, INC. packing, cutting it from a spool. Plaintiff replaced leaking
valves and related gaskets on the main steam lines, removing insulation to reach the bolts and
replacing the insulation when work was complete. Plaintiff removed and replaced broken pipe
insulation, cutting block insulation and mixing and applying insulating cement. Plaintiff recalls
supervisor Mr. Corley, address unknown; and coworker Terrance "Terry" Winchester,
Cincinnati, Ohio. Plaintiff currently contends he was exposed to asbestos during this
employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | HAWKINS (DD-873) Atlantic Cruise; Naval Station, Newport, RI | Boilermaker | 10/1964- 1/1966 |

Job Duties:   Plaintiff performed repair and maintenance work in the engine and boiler rooms
both at sea and in port. Plaintiff recalls working on the BABCOCK & WILCOX COMPANY
boilers, including repairing many steam leaks, and all associated machinery. Plaintiff maintained
the FOSTER WHEELER (FOSTER WHEELER LLC (FKA FOSTER WHEELER
CORPORATION)) economizer. Plaintiff worked in proximity to Navy coworkers and civilian
crews from the Naval Station in Newport, Rhode Island, who were performing the same work.
Plaintiff removed and replaced refractory material on boilers. Plaintiff used pneumatic tools to
chip out insulating block, mortar, insulating cement and firebrick. Plaintiff replaced this
refractory material, mixing new mortar and insulating cement and cutting and installing
insulating block. Plaintiff removed and replaced insulation on the exteriors of boiler feedwater
tanks. Plaintiff used KAYLO (OWENS CORNING FIBERGLAS) block insulation. Plaintiff
helped with engine repair, removing and replacing gaskets. Plaintiff removed and replaced
gaskets on equipment, including evaporators. Plaintiff installed new GARLOCK (GARLOCK
SEALING TECHNOLOGIES, LLC) gaskets. Plaintiff changed gaskets and packing on pumps
and valves, including salt water and fresh water pumps. Plaintiff installed rope-style GARLOCK
(GARLOCK SEALING TECHNOLOGIES, LLC) and JOHN CRANE, INC. packing, cutting it
from a spool. Plaintiff replaced leaking valves and related gaskets on the main steam lines,
removing insulation to reach the bolts and replacing the insulation when work was complete.
Plaintiff removed and replaced broken pipe insulation, cutting block insulation and mixing and
applying insulating cement. Plaintiff recalls the insulation on steam lines was thicker on the
HAWKINS than on other ships because the steam generated greater pressure. Plaintiff removed
and replaced insulation on blowers and air compressors associated with the steam lines. Plaintiff
does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends
he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | RICHARD E KRAUS (DD-849), Naval Station, Newport, RI; Vietnam | Boilermaker | 1/1966 - 1968; 1968 - 12/2/1969 |
|  | Naval Station (32nd Street) San Diego, CA |  | 1966 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy (cont'd) | RICHARD E KRAUS (DD-849), Naval Station, Newport, RI; Vietnam | Boilermaker | 1/1966 - 1968; 1968 - 12/2/1969 |
| | Pearl Harbor Naval Shipyard, Honolulu, Hawaii | | (one week) |
| | Naval Repair Facility, Subic Bay, Philippines | | 1966-1967 (off and on) |
| | US Navy, Vietnam | | 1966-1967 |
| | Boston Naval Shipyard, Boston, MA | | 1968 (Approx. 2 months) |

Job Duties: Plaintiff performed repair and maintenance work in the engine and boiler rooms both at sea and in port. Plaintiff received the rank of engineering officer and stood watch in the main engine room. Plaintiff recalls a BABCOCK & WILCOX COMPANY boiler. During regular ship maintenance and repair work at the Naval Station, Newport, Rhode Island and off the coast of Vietnam, plaintiff removed and replaced gaskets on equipment, including evaporators. Plaintiff installed new CONSACO (GARLOCK SEALING TECHNOLOGIES, LLC) and other GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets. Plaintiff changed gaskets and packing on pumps and valves, including salt water and fresh water pumps. Plaintiff installed rope-style GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) and JOHN CRANE, INC. packing, cutting it from a spool. Plaintiff replaced leaking valves and related gaskets on the main steam lines, removing insulation to reach the bolts and replacing the insulation when work was complete. Plaintiff removed and replaced broken pipe insulation, cutting block insulation and mixing and applying insulating cement. While standing watch in the engine room, plaintiff was in close proximity to mechanics who were performing engine repairs, removing and replacing gaskets.

At the shipyard in San Diego in 1966, plaintiff was part of a crew hooking up air conditioning units in the ship's living compartments. Plaintiff recalls the installation of the units was below the asbestos-covered steam piping above and that the piping flaked off and the air was dusty with asbestos particles.

Plaintiff recalled that the ship entered the Naval Repair Facility at Subic Bay, Philippines, a number of times for repair work, maintenance, and repair while the ship was in Vietnam.

For at least two months in 1968, plaintiff was present during a major overhaul at the Boston Naval Shipyard, Boston, Massachusetts. During the overhaul, plaintiff used pneumatic tools to remove all the refractory material from a boiler, including all insulating block, mortar, insulating cement and firebrick. Plaintiff replaced this refractory material, mixing new mortar and insulating cement and cutting and installing insulating block. Plaintiff used KAYLO (OWENS CORNING FIBERGLAS) block insulation. Plaintiff worked in proximity to civilian crews from the Boston Naval Shipyard, Boston, Massachusetts who were performing the same work on two other boilers.

Plaintiff recalls supervisors Melvin Ainsworth, Louisiana or Virginia; and Mr. Ashman, address unknown; and shipmates Doug Newton, Denver, Colorado, Thomas Cabe, Gautier, Mississippi; and Gilbert Lee Minsonberger, Louisville, Kentucky. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Station, Boston, MA | Military Policeman | 2/ 1970- 1972 |

Job Duties: Plaintiff enforced the Navy's rules for enlisted men. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | CONYNGHAM (DDG-17) | Boilermaker | July 1972-1973 |
| | Norfolk Naval Shipyard, Portsmouth, VA Base Destroyer Piers; | | |
| | Middle East cruise; Boston Naval Shipyard, Boston, MA | | |

Job Duties: Plaintiff was in charge of overhauling equipment in the fireroom, including Worthington (HALLIBURTON ENERGY SERVICES) feedwater pumps and turbines, when he boarded the CONYNGHAM (DDG-17), which was docked at the Norfolk Naval Shipyard Base Destroyer Piers. Plaintiff performed repair and maintenance work in the engine and boiler rooms both at sea and at the Boston Naval Shipyard. Plaintiff removed and replaced refractory material on boilers. Plaintiff used pneumatic tools to chip out insulating block, mortar, insulating cement and firebrick. Plaintiff replaced this refractory material, mixing new mortar and insulating cement and cutting and installing insulating block. Plaintiff removed and replaced insulation on the exteriors of boiler feedwater tanks. Plaintiff used KAYLO (OWENS CORNING FIBERGLAS) block insulation. Plaintiff helped with engine repair, removing and replacing gaskets. Plaintiff removed and replaced gaskets on equipment, including evaporators. Plaintiff installed new CONSACO (GARLOCK SEALING TECHNOLOGIES, LLC) and other GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets. Plaintiff changed gaskets and packing on pumps and valves, including salt water, fresh water, feed and feed booster pumps. Plaintiff installed rope-style GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) and JOHN CRANE, INC. packing, cutting it from a spool. Plaintiff worked on blowers and aerating feed tanks, removing exterior insulation to gain access. Plaintiff replaced leaking valves and related gaskets on the main steam lines, removing insulation to reach the bolts and replacing the insulation when work was complete. Plaintiff removed and replaced broken pipe insulation, cutting block insulation and mixing and applying insulating cement. Plaintiff recalls Chief Don Radshaw, deceased or Chesapeake, Virginia; and coworkers Billy G. Jones, Virginia; and Mr. Byrd, address unknown. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy Reserves | Norfolk Naval Shipyard, Portsmouth, VA | Boilermaker | 1974-1980 |

Job Duties: Plaintiff repaired and maintained boilers and related pipes and equipment in the shipyard's power plant. Plaintiff removed and replaced refractory materials in boilers, including mortar and insulating cement. Plaintiff removed and replaced packing on valves and pumps,

including fuel oil, fresh water, salt water and boiler feedwater pumps. Plaintiff installed new packing, including JOHN CRANE packing. Plaintiff tore off pipe insulation to gain access to flange gaskets and valves. Plaintiff recalls supervisor Stanley Moore, Virginia or New England; and coworkers Charlie West Portsmouth, Virginia; and Mr. Miller, Suffolk, Virginia, area. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy Reserves | HAROLD J. ELLISON (DD-864), Local cruise, Norfolk Naval Shipyard, Portsmouth, VA | Millwright (Supervisor) | 1973-1974 (Weekends) |

Job Duties: Plaintiff lived and worked on the HAROLD J. ELLISON on weekends both while it was at sea and while it was at the Norfolk Naval Shipyard, Portsmouth, Virginia. Plaintiff supervised repair work on valves and pumps, working in proximity to machinists who were removing and replacing packing, installing new JOHN CRANE packing. Plaintiff disturbed piles of insulation that had been torn off pipes and left on deck. Plaintiff does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | FRANCIS MARION (LPA-249) | Boilermaker | 1974 - 1980 (Weekends) |

Job Duties: Plaintiff supervised crews maintaining and repairing boilers, pumps, valves and other equipment. Plaintiff removed and replaced refractory materials in a BABCOCK & WILCOX COMPANY boiler, using pneumatic tools to tear out all old refractory materials, including firebrick, mortar, insulating cement and insulating block. Plaintiff performed maintenance, removing and replacing gaskets on equipment and gaskets and packing on pumps and valves, installing new JOHN CRANE packing. Plaintiff does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | LASALLE (AGF-3), Middle East cruise, including, Bahrain Island, Bahrain; | Boilermaker (Supervisor) | 4 or 5/1980-12/1980 |
| | Philadelphia Naval Shipyard, Philadelphia, PA | | 1/1981-5/1982 |

Job Duties: Plaintiff supervised the maintenance and repair of boilers, pumps, valves, heat exchangers and other equipment while the LASALLE was on a cruise of the Middle East. Plaintiff also supervised repair of the same equipment during a major overhaul at Philadelphia Naval Shipyard. During the overhaul, which took place from January, 1981 through May, 1982, plaintiff supervised crews removing all refractory materials from the BABCOCK & WILCOX COMPANY boilers using pneumatic tools, including firebrick, mortar, insulating block and insulating cement. Plaintiff supervised crews tearing out and replacing packing and gaskets in

1  pumps and valves, removing insulation on pipes and equipment exteriors to gain access.
   Plaintiff worked in proximity to shipyard crews performing the same work. Plaintiff worked in
2  close proximity to shipyard crews who tore out and replaced the original manufacturer's packing
   on rebuilt DELAVAL (IMO INDUSTRIES, INC.) fuel oil pumps. The pumps had been rebuilt by
3  the manufacturer, DeLaval Corporation in Monroe, North Carolina, and returned to the ship with
   inadequate packing. Plaintiff remained in close proximity when crews installed new JOHN
4  CRANE, INC. packing. Plaintiff does not currently recall the names of any supervisors or
   coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.
5

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | HAROLD J. ELLISON (DD-864), Philadelphia Naval Shipyard, Philadelphia, PA | Boilermaker (Supervisor) | 4 or 5/1982-10/1/1983 |

Job Duties: Plaintiff supervised crews recommissioning this ship for sale to Pakistan. Plaintiff, working alongside members of his crew, overhauled the Number 4 FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) boiler, using pneumatic tools to tear out all old refractory materials, including firebrick, mortar, insulating cement and insulating block. Plaintiff performed maintenance, removing and replacing gaskets on equipment and gaskets and packing on pumps and valves, installing new JOHN CRANE packing. Plaintiff does not currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Various ships, Charleston Naval Shipyard, Charleston, SC, including, | Boilermaker (Supervisor) | 12/2/1983 - 11/1986 (2 weeks to one month per ship) |
| | HALYBURTON (FFG-40) | | |
| | TRIPPE (FF-1075) | | |
| | SEMMES (DDG-18) | | |
| | SANTA BARBARA (AE-28) | | |
| | FRANK CABLE (AS-40) | | |
| | MAHAN (DDG-42) | | |
| | CAPODONNO (DE-1093) | | |

Job Duties: Plaintiff worked as a supervisor in the Shore Intermediate Maintenance Activity program at the shipyard. Plaintiff supervised repair and maintenance work on boilers, including FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) boilers on the SANTA BARBARA and FRANK CABLE, and heat exchangers and condensers on up to four ships at a time. Plaintiff supervised and worked in proximity to crews who were tearing out and replacing brickwork, mortar, insulating block and refractory cement on boilers and repairing condensers and heat exchangers, including removing and replacing gaskets. Plaintiff does not

1   currently recall the names of any supervisors or coworkers. Plaintiff currently contends he was exposed to asbestos during this employment.

2

3   During plaintiff's career in the US Navy and while working in various capacities, including as boilermaker and boilermaker supervisor, plaintiff regularly maintained and removed original or factory gasket and packing materials from pumps.

4

5   Additionally, plaintiff regularly maintained and removed original or factory gasket and packing materials from valves manufactured by the following: CRANE CO., JOHNSON CONTROLS, INC., HONEYWELL INTERNATIONAL, INC., WORTHINGTON (HALLIBURTON

6   ENERGY SERVICES, INC.) THE WALWORTH COMPANY, WILLIAM POWELL COMPANY, STOCKHAM VALVES & FITTINGS, INC. (SVI CORPORATION), CROSBY

7   VALVE & GAUGE COMPANY (CROSBY VALVE INC.), LESLIE CONTROLS, INC., NORDSTROM VALVES, INC. (FLOWSERVE US INC.), and MANNING MAXWELL &

8   MOORE (HALLIBURTON ENERGY SERVICES, INC.).

9   Plaintiff performed numerous repair jobs on economizers on steam-driven ships. Plaintiff recalls that FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) was the

10  manufacturer of the economizers on BABCOCK & WILCOX COMPANY boilers. Additionally, plaintiff overhauled and replaced original packing and bonnet gaskets on

11  YARWAY CORPORATION and thermodynamics steamtraps. Plaintiff recalls that there were four thermodynamics high-pressure steam traps per boiler coming off the super heated header on

12  the three destroyers, the HAWKINS (DD-873), HAROLD J. ELLISON (DD-864), and the RICHARD E KRAUS (DD-849, that he served on.

13

14  Plaintiff fabricated gaskets out of the following sheet gasket sheeting material: GARLOCK SEALING TECHNOLOGIES, LLC and Goodyearite sheets gaskets (THE GOODYEAR TIRE & RUBBER COMPANY). Plaintiff recalled using FLEXITALLIC, INC. gaskets.

15

16  Additionally, plaintiff removed and replaced with asbestos refractory material on boilers, including but not limited to the following: GENERAL REFRACTORIES COMPANY, KAISER REFRACTORIES (KAISER ALUMINUM & CHEMICAL CORPORATION), and

17  NORTH AMERICAN REFRACTORIES COMPANY.

18  From approximately 1960 until the early 1970s, plaintiff used EAGLE PICHER SUPER 66 insulation cement and the following asbestos-containing pipe insulation: JOHNS MANVILLE,

19  UNIBESTOS, and OWENS CORNING FIBERGLAS.

20  NON-OCCUPATIONAL EXPOSURE:

21  AUTOMOBILE REPAIR:

22  Plaintiff performed approximately 10 brake jobs, including removing the original, factory installed brakes, on his various personal vehicles from the 1960s to the present. Plaintiff sanded

23  the glaze off BENDIX CORPORATION (HONEYWELL INTERNATIONAL, INC.) and Raybestos (RAYMARK INDUSTRIES, INC.) replacement brakes. Plaintiff purchased the

24  brakes and clutches from ADVANCE AUTO PARTS, INC., in Charleston, South Carolina.

25  Plaintiff removed the original clutch from a GENERAL MOTORS CORPORATION vehicle and from a 1982 DATSUN 200SX (NISSAN NORTH AMERICA, INC.) sports car that he

26  purchased new. Plaintiff removed BORG-WARNER CORPORATION BY ITS SUCCESSOR IN INTEREST, BORGWARNER MORSE TEC INC. clutches a few times. Plaintiff also

27  performed one brake job on the Datsun automobile.

28  Plaintiff currently contends he was exposed to asbestos during this automobile repair work.