ADRMOP, E-Filing

## U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-00577-JCS

Vassale v. Crown Cork & Seal Company, Inc. et al
Assigned to: Magistrate Judge Joseph C. Spero
Case in other court: San Francisco County Superior Court,
    CGC 11-275752
Cause: 28:1441 Petition for Removal- Product Liability

Date Filed: 02/08/2011
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Nicholas Vassale**
          represented by   **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Crown Cork & Seal Company, Inc.**

**Defendant**

**Goodrich Corporation**

**Defendant**

**General Electric Company**

**Defendant**

**Metropolitan Life Insurance
Company**

**Defendant**

**Owens-Illinois, Inc.**

**Defendant**

**Quintec Industries, Inc.**

**Defendant**

**Boeing Company, The**

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

<u>**Defendant**</u>

**Northrop Grumman Shipbuilding, Inc.**

<u>**Defendant**</u>

**Todd Shipyards Corporation**

<u>**Defendant**</u>

**Lockheed Martin Corporation**

<u>**Defendant**</u>

**United Technologies Corporation**

<u>**Defendant**</u>

**Northrop Grumman Corporation**

<u>**Defendant**</u>

**Curtiss-Wright Corporation**

<u>**Defendant**</u>

**McDonnell Douglas Corporation**

<u>**Defendant**</u>

**Goodyear Tire & Rubber Company, The**

<u>**Defendant**</u>

**Hopeman Brothers, Inc.**

<u>**Defendant**</u>

**Astra Flooring Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/08/2011 | 1 | NOTICE OF REMOVAL of Action; No Process from San Francisco County Superior Court. Their case number is CGC 11-275752. (Filing fee $350.00 receipt number 34611056037). Filed by Todd Shipyards Corporation. (Attachments: # 1 Civil Cover Sheet) (gba, COURT STAFF) (Filed on 2/8/2011) (Entered: 02/08/2011) |
| 02/08/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 5/13/2011. Case Management Conference set for 5/20/2011 01:30 PM in Courtroom A, 15th Floor, San Francisco. (gba, COURT STAFF) (Filed on 2/8/2011) (Entered: |

|  |  | 02/08/2011) |
|---|---|---|
| 02/08/2011 |  | CASE DESIGNATED for Electronic Filing. (gba, COURT STAFF) (Filed on 2/8/2011) (Entered: 02/08/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/11/2011 11:20:17 | | |
| **PACER Login:** | te0445 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-00577-JCS |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ENDORSED
F I L E D
San Francisco County Superior Court

JAN 1 1 2011

CLERK OF THE COURT
BY   DEBORAH STEPPE
Deputy Clerk

1   DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON✥PURCELL LLP
2   Attorneys at Law
   222 Rush Landing Road
3   P.O. Box 6169
   Novato, California 94948-6169
4   (415) 898-1555

5   Attorneys for Plaintiff

ASBESTOS
CASE MANAGEMENT CONFERENCE

6                                                    DEC 1 5 2011   1:30 PM

7                                                    DEPARTMENT   220

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF SAN FRANCISCO

10

11   NICHOLAS VASSALE,                    )   ASBESTOS
                                          )   No.   CGC 11 -275752
12            Plaintiff,                   )
                                          )
13   vs.                                   )   COMPLAINT FOR PERSONAL INJURY -
                                          )   ASBESTOS
14   CROWN CORK & SEAL COMPANY,            )
   INC.; Defendants as Reflected on Exhibit 1 )
15   attached to the Summary Complaint     )
   herein; and DOES 1-8500.                )
16

17        1.      Plaintiff NICHOLAS VASSALE was born October 26, 1928.

18        2.      The ©Brayton✥Purcell Master Complaint for Personal Injury [and Loss of

19   Consortium]- Asbestos (hereinafter "Master Complaint") was filed January 2, 2003, in San

20   Francisco Superior Court. A copy of the Master Complaint and General Order No. 55 may be

21   obtained upon request from Brayton✥Purcell, and designated portions of the Master Complaint

22   are incorporated by reference herein pursuant to the authority conferred by General Order No. 55.

23   Plaintiff's claims are as set forth in said Master Complaint against defendants herein as follows:

24   ///

25   ///

26   ///

27

28

K:\Injured\114571\PLD\cmp-pipblet.wpd
                                          1
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

BRAYTON✥PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158

| Cause of Action | DEFENDANTS* ON EXHIBITS: | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | B | B-1 | C | D | E | F | G | H | I | J | K | L | M | N |
| First (Negligence) | ⊠ | ⊠ | | □ | | □ | □ | | | | □ | □ | □ | |
| Second (Strict Liability) | ⊠ | ⊠ | | □ | | □ | □ | | | | □ | □ | □ | |
| Third (False Representation) As to Defendant OWENS-ILLINOIS, INC. only. | ⊠ | ⊠ | | | | | | | | | | | | |
| Fourth (Loss of Consortium) | | | | □ | | | | | | | | | | |
| Fifth (Premises Owner/Contractor Liability) | | ⊠ | ⊠ | □ | | | | | | | | | | |
| Sixth, Seventh, Eighth (Unseaworthiness, Negligence [Jones Act],Maintenance and Cure) | | | ⊠ | | | | | | | | | | | |
| Ninth (Longshore and Harbor Workers Compensation Act [LHWCA]) | | | | | □ | | | | | | | | | |
| Tenth, Eleventh (F.E.L.A.) | | | | | | □ | | | | | | | | |
| Twelfth, Thirteenth (Respiratory Safety Devices) | | | | | | | □ | | | | | | | |
| Fourteenth, Fifteenth Brake Shoe Grinding) | | | | | | | □ | ⊠ | | | | | | |
| Sixteenth (Concert of Action) | | | | | | | □ | | ⊠ | | | | | |
| Seventeenth, Eighteenth (Fraud, Deceit/Negligent Misrepresentation/Concealment) | | | | | | | | | | ⊠ | | | | |
| Nineteenth (Fraud/Deceit/ Intentional Misrepresentation) | | | | | | | | | | | □ | | | |
| Twentieth (Fraud/Deceit - Kent) | | | | | | | | | | | | □ | | |
| Twenty-First (Aiding/Abetting Battery - Met Life) | | | | | | | | | | | | | | ⊠ |

* and their alternate entities as set forth in the Master Complaint or on any Exhibit.

1    3.    Plaintiff's asbestos-related injury, date of diagnosis, employment status, and

2    history of exposure to asbestos are as stated on Exhibit A.

3    4.    Paragraph 8 of the Master Complaint is amended to add the following sentence:

4    In part, and without limitation as to other defendants, defendants NORTHROP GRUMMAN

5    SHIPBUILDING, INC., and TODD SHIPYARDS CORPORATION, manufactured, modified,

6    serviced and/or repaired asbestos-containing ships and vessels.

7    5.    Plaintiff's claims against defendant CBS CORPORATION (F/K/A VIACOM

8    INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) exclude plaintiff's asbestos

9    exposure at military and federal government jobsites and aboard U.S. Navy vessels.

10    6.    Plaintiff hereby amends the Master Complaint on file herein, to incorporate a

11    new Twenty-First Cause of Action, set forth below, specially plead against the defendant listed

12    on Exhibit N, namely METROPOLITAN LIFE INSURANCE COMPANY.  (Plaintiffs are in

13    the process of amending the Master Complaint herein and will include this new Cause of Action

14    in said amendment.)

15                    "TWENTY-FIRST CAUSE OF ACTION
                        Aiding and Abetting Battery
16                [Against Metropolitan Life Insurance Company
                        and Does 7501-7900, Inclusive]
17

18    AS AND FOR A FURTHER, TWENTY-FIRST, SEPARATE AND DISTINCT

19    CAUSE OF ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF

20    COMPLAINS OF DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY,

21    DEFENDANTS ON EXHIBIT N, DOES 7501-7900, THEIR ALTERNATE ENTITIES AND

22    EACH OF THEM, AND ALLEGES AS FOLLOWS:

23    225.    Plaintiff incorporates herein by reference, as though fully set forth hereat, each

24    and every allegation of the First through Third and Sixteenth, Seventeenth, Eighteenth and

25    Nineteenth Causes of Action as though fully set forth herein.  (As used throughout this cause of

26    action, 'plaintiff' refers to all named plaintiffs and/or all named decedents from whom the

27    named plaintiff's injuries may derive.)

28    ///

K:\Injuract\114371\PLD\comp-pipkin.wpd
COMPLAINT FOR PERSONAL INJURY - ASBESTOS                    3

226. This cause of action is for the aiding and abetting of battery by METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

227. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned defendant MET LIFE was and is a corporation organized and existing under and by virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is doing business in the State of California, and regularly conducted or conducts business in the County of San Francisco, State of California. At times relevant to this cause of action, MET LIFE was an insurer of J-M.

228. Plaintiff, was exposed to asbestos-containing dust created by the use of the asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease and injuries.

229. Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-related disease in Canadian mines and mills, including those of J-M. Those studies revealed that miners and mill workers were contracting asbestosis at relatively low levels of dust. McGill University, which conducted the studies, sought permission from MET LIFE to publish the results but they were never published. MET LIFE prepared its own report of these studies.

230. Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S. plants manufacturing asbestos-containing products, including a J-M plant. Those studies showed that workers in substantial numbers were contracting asbestosis, at levels less than what became the Threshold Limit Value ("TLV") of 5mppcf. The MET LIFE report was never published or disseminated except to plant owners, including J-M.

231. In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville, New Jersey. Results were consistent with those of the Canadian and previous U.S. plant studies. They were never published.

1      232. In 1934, J-M and others whose plants MET LIFE had studied agreed with MET

2   LIFE that it should issue a report of its studies.

3      233. MET LIFE submitted a draft of its report to J-M. J-M requested, for legal and

4   business reasons, that certain critical parts of the draft be changed. MET LIFE's official in

5   charge was Lanza. MET LIFE through Lanza did make changes that J-M requested, including:

6      (a)      Deletion of MET LIFE's conclusion that the permissible dust level for asbestos

7               should be less than that for silica;

8      (b)      Addition of the phrase that asbestosis clinically appeared to be milder than

9               silicosis.

10   The report, thus altered, was published in 1935. It was misleading, and intentionally so,

11   because it conveyed the incorrect propositions that asbestosis was a less serious disease process

12   than silicosis and that higher levels of asbestos dust could be tolerated without contracting

13   diseases than was the case for silica dust.

14      234. MET-LIFE had a close relationship with J-M. It invested money in J-M. It

15   provided group health and life insurance to J-M. MET LIFE IN 1934 agreed to supply

16   industrial hygiene services to J-M, including dust counts, training employees to monitor dust

17   levels, examining employees, and recommending protective equipment. MET LIFE and Lanza

18   were viewed as experts on industrial dusts.

19      235. In 1933, MET LIFE through Lanza issued the following advices to J-M:

20      (a)      Disagreeing with the recommendation of a J-M plant physician, MET LIFE

21               advised against warning workers of the fact that asbestos dust is hazardous to

22               their health, basing its advice in view of the extraordinary legal situation;

23      (b)      When the plant physician judged the best disposition of an employee with

24               asbestosis was to remove him from the dust, MET LIFE advised instead that

25               disposition should depend on his age, nature of work and other factors and to

26               leave him alone if he is old and showing no disability, for, MET LIFE stated,

27               economic and production factors must be balanced against medical factors.

28   ///

1   236. J-M followed the MET LIFE advices and did not warn its workers, including

2   plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying

3   workers of their disease.

4   237. In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation

5   ("AHF"). One of the AHF purposes was to develop standards for dust levels that would serve

6   as a defense in lawsuits and workers' compensation claims.

7   238. MET LIFE funded partially another study that tentatively recommended in 1938 a

8   TLV for asbestos dust of 5mpccf, the same as for silica dust. MET LIFE was aware of data

9   from its own, unpublished reports that showed that level was too high for asbestos dust. MET

10   LIFE nonetheless promoted that TLV as proper.

11   239. In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the

12   AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.

13   That report showed that workers exposed to less than the recommended maximum levels of

14   dust were developing disease. MET LIFE was a member of the IHF and Lanza was on its

15   medical committee. The Hemeon report, which was supplied to J-M and other owners, never

16   was published.

17   240. In 1936, J-M and other asbestos companies agreed with a leading medical research

18   facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the

19   others retained control over publication of the results. In 1943 Saranac's Dr. Leroy Gardner, in

20   charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long

21   fiber asbestos contracted cancer.

22   241. Dr. Gardner died in 1946. J-M and other companies wanted parts of the Saranac

23   results published and enlisted the assistance of MET LIFE's Lanza. J-M and other companies

24   decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as

25   Saranac's critique of existing dust standards. Lanza directed Saranac to delete the offending

26   materials. Saranac did so, and the altered report was published in 1951 by Saranac's Dr.

27   Vorwald, in the *AMA Archives of Industrial Hygiene*.

28   ///

242. Lanza left MET LIFE at the end of 1948, and took a position at New York University, funded by MET LIFE. He continued to misrepresent that asbestos does not cause cancer into the 1950s.

243. The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE official was on its medical committee, through Drs. Braun and Truan conducted a study of Canadian miners. The original report, in 1957, found an increased incidence of lung cancer in persons exposed to asbestos. The sponsors, including J-M, caused those findings to be stricken, and the report published in 1958 contained the false conclusion that asbestos exposure alone did not increase the risk of lung cancer.

244. The false and misleading reports that a link between asbestos exposure and cancer was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low or zero.

245. J-M not later than 1933 was inflicting asbestos dust on its workers in its plants knowing that the dust was hazardous and was causing workers to contract disease that could and would disable and kill them. As MET LIFE advised, J-M did not warn its workers of the hazard. J-M committed battery on workers in its plants, including plaintiff, by that conduct.

246. MET LIFE knew that J-M's conduct constituted a breach of its duties to its workers. MET LIFE gave substantial assistance to J-M in committing batteries on its workers, including plaintiff, through MET LIFE's conduct described above, including by:

    (a)    Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in view of the extraordinary legal situation, such that J-M did not warn its workers, including plaintiff;

    (b)    Deleting the findings of its own draft report that the allowable limits for asbestos dust should be less than those for silica dust, and promoting a false and unsafe TLV which specified maximum levels of silica dust, and promoting a false and unsafe TLV which specified maximum levels of dust for workers, including plaintiff, which MET LIFE knew was wrong through its own studies;

///

1      (c)    Advising J-M to keep certain workers continuing to work at dusty areas in the

2      plant even after J-M was aware that their lungs showed asbestos-induced

3      changes, lest other workers including plaintiff be alerted to the dangers of

4      working in the dust.

5      WHEREFORE, plaintiff prays judgment as is hereinafter set forth."

6      7.    Plaintiff does not make a claim for either false representative or punitive

7  damages against any named defendant herein, except as against defendant OWENS-ILLINOIS,

8  INC.

9  Dated: \|8\|11

                         BRAYTON❖PURCELL LLP

10

11                           By:

12                           David R. Donadio
                         Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1

## EXHIBIT 1 - LIST OF DEFENDANTS

2

3    CROWN CORK & SEAL COMPANY, INC.
     GOODRICH CORPORATION
4    GENERAL ELECTRIC COMPANY
     METROPOLITAN LIFE INSURANCE COMPANY
5    OWENS-ILLINOIS, INC.
     QUINTEC INDUSTRIES, INC.
6    THE BOEING COMPANY
     CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)
7    NORTHROP GRUMMAN SHIPBUILDING, INC.
     TODD SHIPYARDS CORPORATION
8    LOCKHEED MARTIN CORPORATION
     UNITED TECHNOLOGIES CORPORATION
9    NORTHROP GRUMMAN CORPORATION
     CURTISS-WRIGHT CORPORATION
10   MCDONNELL DOUGLAS CORPORATION
     THE GOODYEAR TIRE & RUBBER COMPANY
11   HOPEMAN BROTHERS, INC.
     ASTRA FLOORING COMPANY
12   and DOES 1-8500,

13

14       Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\shared\11457\PLD\emp-plsMst.wpd                    10
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT A

## EXHIBIT A

Plaintiff's exposure to asbestos and asbestos-containing products occurred at various

locations both inside and outside the State of California, including but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | SICILY (CVE-118), Atlantic Cruise; Norfolk Naval Shipyard, Portsmouth, VA | Aircraft Mechanic (Assistant) | 1946-1947 |
| US Navy | SAIPAN (CVL-48) Atlantic Cruise; Norfolk Naval Shipyard, Portsmouth, VA | Aircraft Mechanic | 1947-1948 |
| US Navy | MIDWAY (CVB-41) | Aircraft Mechanic | 1948-10/1949 |
| US Navy Reserves | Brooklyn Naval Shipyard, Brooklyn, NY; Various aircraft carriers | Firefighter | 1954-1958 |
| US Navy | SARATOGA (CVA-60), Various ports, including, | Mechanic (Supervisor) | 1960-1961 |
| | Brooklyn Navy Shipyard, Brooklyn, NY | | 1960-1961 (Approx. 9 weeks) |
| US Navy | Naval Air Station Whiting Field, Milton, FL | Aircraft Mechanic | 1961-1964 |
| US Navy | Naval Air Station Oceana, Virginia Beach, VA | Aircraft Mechanic | 1964-1967 |
| | CONSTELLATION (CV-64) | | (On and off, approx. 1 ½ years) |
| US Navy | Naval Air Station Whidbey Island, Oak Harbor, WA | Aircraft Mechanic (Supervisor) | 1968-1971 |

Plaintiff's exposure to asbestos and asbestos-containing products caused severe and

permanent injury to the plaintiff, including, but not limited to breathing difficulties and/or other

lung damage.  Plaintiff was diagnosed with lung cancer on or about April 2010.

///

///

EXHIBIT A

K:\bizmech\114571\PLI\cmp-plpMa.wpd

**12**

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

1

2    <u>EXHIBIT A (cont'd.)</u>

3        Plaintiff retired from his last place of employment at regular retirement age.  He has

4    therefore suffered no disability from his asbestos-related disease as "disability" is defined in

5    California Code of Civil Procedure § 340.2.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                                                    EXHIBIT A

# EXHIBIT B

1                              EXHIBIT B

2   DEFENDANTS

3   CROWN CORK & SEAL COMPANY, INC.        NORTHROP GRUMMAN SHIPBUILDING, INC.
    GOODRICH CORPORATION                   TODD SHIPYARDS CORPORATION
4   GENERAL ELECTRIC COMPANY               LOCKHEED MARTIN CORPORATION
    METROPOLITAN LIFE INSURANCE            UNITED TECHNOLOGIES CORPORATION
5     COMPANY                              NORTHROP GRUMMAN CORPORATION
    OWENS-ILLINOIS, INC.                   CURTISS-WRIGHT CORPORATION
6   QUINTEC INDUSTRIES, INC.               MCDONNELL DOUGLAS CORPORATION
    THE BOEING COMPANY                     THE GOODYEAR TIRE & RUBBER COMPANY
7   CBS CORPORATION (FKA VIACOM INC., FKA  DOES 1-800
      WESTINGHOUSE ELECTRIC CORPORATION)

8

9                              ALTERNATE ENTITY

10  CROWN CORK & SEAL COMPANY,    MUNDET CORK COMPANY
      INC.

11
    GENERAL ELECTRIC COMPANY      MATTERN X-RAY
12                                HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED
                                  TRUMBULL ELECTRIC MANUFACTURING COMPANY
13                                G E INDUSTRIAL SYSTEMS
                                  CURTIS TURBINES
14                                PARSONS TURBINES
                                  GENERAL ELECTRIC JET ENGINES
15
    THE BOEING COMPANY            BOEING NORTH AMERICAN, INC.
16                                BOECON CORPORATION
                                  McDONNELL DOUGLAS CORPORATION
17                                DOUGLAS AIRCRAFT CO.
                                  COLLINS RADIO COMPANY
18                                ROCKWELL INTERNATIONAL CORPORATION
                                  ROCKWELL INTERNATIONAL CORPORATION,
19                                  MEASUREMENT  AND FLOW CONTROL DIVISION
                                  AUTONETICS, INC.
20                                ROCKETDYNE
                                  ROCKWELL MANUFACTURING COMPANY
21                                ROCKWELL-STANDARD, INC.
                                  ROCKWELL SPRING & AXLE CO.
22                                ROCKWELL SPRING & AXLE CO.,
                                    TIMKEN-DETROIT AXEL DIVISION
23                                NORTH AMERICAN ROCKWELL
                                  NORTH AMERICAN AVIATION, INC.
24                                NAVION
                                  VERTOL CORPORATION
25                                BOEING VERTOL COMPANY
                                  BOEING AIRPLANE COMPANY
26                                STEARMAN AIRCRAFT COMPANY

27  ///

28  ///                                                        EXHIBIT B

K:\Injuran\11457\PLD\cmp-plnMet.wpd           15
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

| | |
|---|---|
| 1 | EXHIBIT B (cont'd.) |
| 2 | ALTERNATE ENTITY |
| 3 | GOODRICH CORPORATION | B.F. GOODRICH CORPORATION |

EXHIBIT B (cont'd.)

ALTERNATE ENTITY

GOODRICH CORPORATION
B.F. GOODRICH CORPORATION
GARLOCK SEALING TECHNOLOGIES, LLC
COLTEC INDUSTRIES, INC.
COLT INDUSTRIES

CBS CORPORATION (F/K/A VIACOM
INC., F/K/A WESTINGHOUSE
ELECTRIC CORPORATION)
VIACOM, INC.
CBS CORPORATION
WESTINGHOUSE ELECTRIC CORPORATION
WESTINGHOUSE ELECTRIC AND
 MANUFACTURING COMPANY
B.F. STURTEVANT
KPIX TELEVISION STATION
PARAMOUNT COMMUNICATIONS, INC
GULF & WESTERN INDUSTRIES, INC.
NORTH & JUDD MANUFACTURING COMPANY

LOCKHEED MARTIN CORPORATION
LOCKHEED CORPORATION
LOCKHEED MISSILES & SPACE CO., INC.
LOCKHEED AIRCRAFT CORPORATION
LOCKHEED PROPULSION COMPANY
GLENN L. MARTIN AIRCRAFT COMPANY
LOCKHEED MARTIN TACTICAL SYSTEMS, INC.
LORAL CORPORATION

NORTHROP GRUMMAN
 CORPORATION
NORTHROP CORPORATION
CALIFORNIA SHIPBUILDING CORPORATION
GRUMMAN AEROSPACE CORPORATION
LITTON INDUSTRIES, INC.
LITTON APPLIED TECHNOLOGY

NORTHROP GRUMMAN
 SHIPBUILDING, INC.
AVONDALE INDUSTRIES, INC.
AVONDALE SHIPYARDS, INC.
CONTINENTAL MARITIME INDUSTRIES, INC.
EASTERN IDAHO CONSTRUCTION COMPANY
INGALLS SHIPBUILDING, INC.
NEWPORT NEWS SHIPBUILDING AND DRY DOCK
 COMPANY
NORTH CAROLINA SHIPBUILDING
NORTHROP GRUMMAN SHIP SYSTEMS, INC.
SERVICE ENGINEERING INDUSTRIES, INC.

UNITED TECHNOLOGIES
 CORPORATION
UNITED AIRCRAFT CORPORATION
UNITED AIRCRAFT & TRANSPORT CORPORATION
PRATT & WHITNEY
HAMILTON STANDARD CO.
SIKORSKY AIRCRAFT CORP.

///

///

///                                                            EXHIBIT B

1

EXHIBIT B (cont'd.)

2

ALTERNATE ENTITY

3   CURTISS-WRIGHT CORPORATION      WRIGHT AERONAUTICAL

4                                   WRIGHT AERO
                                    CURTIS AIRCRAFT
                                    CURTISS-WRIGHT FLOW CONTROL CORPORATION

5                                   FARRIS ENGINEERING COMPANY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                          EXHIBIT B

K:\Injured\114571\PLD\cmp-plpMst.wpd                17
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT B-1

1

**EXHIBIT B-1**

2   <u>DEFENDANTS</u>

3   HOPEMAN BROTHERS, INC.
    ASTRA FLOORING COMPANY

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B-1**

K:\labarch\11457\PLD\comp-riphtd1.wpd

19

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT C

1

EXHIBIT C

2 DEFENDANTS

3 HOPEMAN BROTHERS, INC.
  DOES 1001-2000
4

5 CONTRACTOR
  DEFENDANTS                    LOCATION              TIME PERIOD
6
  HOPEMAN BROTHERS, INC.        Various               Various
7
  ASTRA FLOORING COMPANY        CONSTELLATION (CV-64) 1964-1967
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT H

1

**EXHIBIT H**

2

**DEFENDANTS**

3

METROPOLITAN LIFE INSURANCE COMPANY
OWENS-ILLINOIS, INC.

4

DOES 5000-8000

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT H

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT I

EXHIBIT I

<u>DEFENDANTS</u>

METROPOLITAN LIFE INSURANCE COMPANY
OWENS-ILLINOIS, INC.
DOES 5000-7500

EXHIBIT I

K:\Injured\11457\VLJ\comp-piph1st.wpd
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT J

EXHIBIT J

1

2  <u>DEFENDANTS</u>

3  METROPOLITAN LIFE INSURANCE COMPANY
   DOES 7400-7500

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      EXHIBIT J

K:\Injuret\11457\PLD\temp-cip34st.wpd
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT N

1

EXHIBIT N

2 | <u>DEFENDANTS</u>

3 | METROPOLITAN LIFE INSURANCE COMPANY
  | DOES 7501-7900

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT N

COMPLAINT FOR PERSONAL INJURY - ASBESTOS