## U. S. District Court for the District of North Dakota (Southwestern)
## CIVIL DOCKET FOR CASE #: 1:11-cv-00018-CSM
## Internal Use Only

Comeau-Brusegaard v. A.H. Bennett Company et al
Assigned to: Magistrate Judge Charles S. Miller, Jr
Demand: $75,000
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 02/08/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

### Plaintiff

**Beverly Comeau-Brusegaard**
*estate of*
Maurice Comeau

represented by **David C. Thompson**
321 KITTSON AVENUE
PO BOX 5235
GRAND FORKS, ND 58201
701-775-7012
Email: dct@rrv.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**A.H. Bennett Company**
*a Minnesota corporation*

### Defendant

**Asbestos Corporation, Ltd.**
*a Canadian corporation*

### Defendant

**Bell Asbestos Mines, Ltd.**
*a Canadian corporation*

### Defendant

**Boeing Company, The**
*a Delaware corporation*

### Defendant

**CBS Corporation**
*a Delaware corporation*
*formerly known as*
Viacom Inc
*formerly known as*
Westinghouse Electric Corporation

### Defendant

*CERTIFIED COPY*
I hereby certify that this instrument is a true and correct copy of the electronically filed original.
ATTEST:
**ROBERT ANSLEY, CLERK**
United States District Court
District of North Dakota
By_____
Deputy Clerk

**CertainTeed Products Corporation**
*a Maryland corporation*

**Defendant**

**Kaiser Aluminum & Chemical Corporation**
*a Delaware corporation*

**Defendant**

**Metropolitan Life Insurance Company**
*a foreign corporation*

**Defendant**

**Owens Illinois Inc**
*an Ohio corporation*

**Defendant**

**Owl Constructors Company**
*a California corporation*
*formerly known as*
H.C. Smith Construction Corporation

**Defendant**

**Royal Electric, Inc.**
*a Delaware corporation*

**Defendant**

**Union Carbide Corporation**
*a New York corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/08/2011 | 1 | COMPLAINT against all defendants (Filing fee $350, receipt number FA002328) filed by Beverly Comeau-Brusegaard. (Attachments: # 1 Civil Cover Sheet) (lf) (Entered: 02/09/2011) |
| 02/09/2011 | 2 | Summons Issued as to A.H. Bennett Company, Asbestos Corporation, Ltd., Bell Asbestos Mines, Ltd., Boeing Company, The, CBS Corporation, CertainTeed Products Corporation, Kaiser Aluminum & Chemical Corporation, Metropolitan Life Insurance Company, Owens Illinois Inc, Owl Constructors Company, Royal Electric, Inc., Union Carbide Corporation. (lf) (Entered: 02/09/2011) |
| 02/09/2011 | 3 | NOTICE of Direct Assignment as to Beverly Comeau-Brusegaard. Consent/Reassignment Form due by 2/23/2011. (lf) (Entered: 02/09/2011) |

IN UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Beverly Comeau-Brusegaard, individually and on behalf of the Estate of Maurice Comeau, | ) <br> ) <br> ) **COMPLAINT** <br> ) <br> ) Trial by Jury <br> ) Is Hereby Demanded <br> ) <br> ) Civil No.: 1:11-cv-18- |
| Plaintiff, | |
| v. | |
| A.H. Bennett Company, a Minnesota corporation; | |
| Asbestos Corporation, Ltd., a Canadian corporation; | |
| Bell Asbestos Mines, Ltd., a Canadian corporation; | |
| The Boeing Company, a Delaware corporation; | |
| CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation, | |
| CertainTeed Products Corporation, a Maryland corporation; | |
| Kaiser Aluminum and Chemical Corporation, a Delaware corporation; | |
| Metropolitan Life Insurance Company, a foreign corporation; | |
| Owens Illinois, Inc., an Ohio corporation; | |
| Owl Constructors Company, a California corporation, (formerly known as H.C. Smith Construction Corporation formerly known as H.C. Smith Construction Corporation; | |
| Royal Electric, Inc., a Delaware corporation; | |
| Union Carbide Corporation, a New York corporation; | |
| Defendants. | |

Plaintiff, for her Complaint herein, states and alleges as follows:

1

**CERTIFIED COPY**
I hereby certify that this instrument is a true and correct copy of the electronically filed original.
ATTEST:
ROBERT ANSLEY, CLERK
United States District Court
District of North Dakota
By _____
Deputy Clerk

I.

## JURISDICTIONAL STATEMENT

The plaintiff's decedent was a resident of the State of North Dakota, during his illness and at the time of his death. Plaintiff Beverly Comeau-Brusegaard is a resident of the State of North Dakota. There exists complete diversity of citizenship as between the plaintiff and all parties defendant, above-named, and the amount in controversy in this action is a sum in excess of $75,000.00, excluding interest and costs, thereby causing this court to have jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff Beverly Comeau-Brusegaard on behalf of the estate of Maurice Comeau and as the surviving spouse of Maurice Comeau, deceased, brings this action, as a survival action for personal injury damages proximately caused by Maurice Comeau's occupational exposure to asbestos fiber.

As is evidenced by the caption of the instant complaint, which is specifically incorporated herein, the defendants are foreign corporations which are amenable to jurisdiction in the courts of North Dakota by virtue of the quality of their respective direct or indirect contacts with the State of North Dakota and/or their conduct of substantial and/or systematic business in North Dakota all of which factors subject said defendants to the jurisdiction of a North Dakota court pursuant to Rule 4(b) of the North Dakota Rules of Civil Procedure. Each of the defendant foreign corporations either mined, manufactured, processed, imported, converted, compounded, wholesaled and/or retailed substantial amounts of asbestos and asbestos-containing materials which are or have been sold, distributed and used in North Dakota.

Plaintiff's decedent was exposed to various asbestos-containing products while working as a plant worker at more than one location in North Dakota. Asbestos-related diseases are progressive, latent and insidious, and on information and belief, such exposure in North Dakota was a proximate cause of the plaintiff's decedents's asbestos-related diseases.

Alternatively, the above-captioned defendants are tortfeasors which could not be

2

joined by the plaintiff in a single civil action in any other forum given the subject matter of the plaintiff's claim arising from the decedent's asbestos-cause personal injury and death. Therefore, the above captioned court may and should exercise jurisdiction over the named defendants pursuant to the doctrine of jurisdiction of necessity.

## II.

## FIRST CAUSE OF ACTION

1. At all times relevant to this action, defendants and predecessors of defendants for whose actions defendants are legally responsible (herein collectively referred to as "defendants") were engaged in the manufacture and/or sale and/or distribution of asbestos-containing products and/or raw materials.

2. The defendants, acting through their agents, servants and/or employees caused certain asbestos and asbestos-related materials to be placed in the stream of interstate commerce with the result that said asbestos and asbestos-related materials came into use by the plaintiff's decedent.

3. Plaintiff's decedent for a period of time worked with, and was exposed to, the asbestos and asbestos-related materials mined, manufactured, processed, imported, converted, compounded, distributed and/or sold by the defendants.

4. During the course and scope of his employments, plaintiff's decedent was exposed to defendants' asbestos and asbestos-related materials, which exposure directly and proximately caused plaintiff's decedent to develop asbestos-related diseases and to have need for regular future medical monitoring.

5. The illnesses and disabilities of the plaintiff's decedent are the direct and proximate result of the negligence and/or recklessness and/or willfulness of the defendants, jointly and severally, in that said defendants produced, sold and otherwise put into the stream of interstate commerce, asbestos and asbestos-related materials which the defendants, and each of them, knew, or in the exercise of ordinary care, should have known, was deleterious, poisonous and highly harmful to plaintiff's bodies, lungs, respiratory systems, skin and health.

6. The illnesses and disabilities of the plaintiff's decedent were the direct and proximate result of the negligence, recklessness and willfulness of the defendants, jointly and severally, in that, even though the defendants knew, or, in the exercise of ordinary care, should have known, that the asbestos and asbestos-related materials were deleterious, poisonous and greatly harmful to plaintiff's body, lungs, respiratory system, skin and health, the defendants nonetheless:

(a) Failed to advise the plaintiff's decedent of the dangerous characteristics of their asbestos and asbestos-related products;

(b) Failed or omitted to provide the plaintiff's decedent with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliance, if, in truth, plaintiff's decedent were in any respect able to protect plaintiff's decedent from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-related materials;

(c) Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials to warn the handlers thereof of the dangers to health in coming in contact with said asbestos and asbestos-containing materials;

(d) Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing said asbestos and asbestos-containing materials;

(e) Inadequately warned, if, in fact, they warned at all, persons such as the plaintiff's decedent of the dangers to his health in coming in contact with and breathing said asbestos and asbestos-containing materials;

(f) Did not recommend methods to improve the work environment;

(g) Did not test their products or develop alternative products;

(h) Continued to use the known cancer causing product of asbestos.

7. At all times relevant, it was feasible for defendants to have warned the plaintiff's decedent, tested their products and/or substituted asbestos-free products.

4

As a direct and proximate result of the negligence and/or recklessness and/or willfulness of the defendants, the plaintiff's decedent was severely damaged as is set forth below.

### III.

### SECOND CAUSE OF ACTION

Plaintiff realleges Paragraphs 1 through 7 and the First Cause of Action and incorporates the same herein.

8. The defendants, and each of them, impliedly warranted that said asbestos and asbestos-containing products were of good and merchantable quality and fit for their intended use.

9. The implied warranty made by the defendants, and each of them, that the asbestos and asbestos-containing products were of a good and merchantable quality and fit for the particular intended use was breached, and harmful asbestos fiber was released from those products into the atmosphere as the plaintiff's decedent carried out his duties, working with asbestos and asbestos-containing materials.

10. As a direct and proximate result of the defendants' breach of the implied warranty of good and merchantable quality, and fitness for the particular intended use, the plaintiff's decedent developed asbestos-related diseases, which illnesses caused the resulting damages to plaintiff's decedent as hereinafter described.

### IV.

### THIRD CAUSE OF ACTION

Plaintiff realleges Paragraphs 1 through 10 and the First and Second Causes of Action and incorporates the same herein.

11. Plaintiff's decedent, and others in similar positions, worked in close proximity to the asbestos and asbestos-containing materials of the defendants, and each of them, and plaintiff's decedent's presence, as well as that of others in his position, was known, or, in the exercise of reasonable care, should have been known to, and by the defendants, and each of them.

12. The defendants, and each of them, have for many years been aware of medical and scientific data which clearly indicated that asbestos and asbestos-related products were hazardous to the health and safety of the plaintiff's decedent and others in his position, yet prompted by pecuniary motives, the defendants, and each of them, individually and collectively, ignored and failed to act upon said medical and scientific data, conspired to deprive the public, and particularly the users of asbestos products of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos and asbestos-containing products of said defendants. As a result, the plaintiff's decedent was severely damaged as set forth below.

V.

**FOURTH CAUSE OF ACTION**

Plaintiff realleges Paragraphs 1 through 12 and the First, Second and Third Causes of Action and incorporates the same herein.

13. That at various times in the past, defendants had actual knowledge of the dangers to the plaintiff's decedent of asbestos exposure, but defendants nevertheless deliberately, intentionally and purposefully withheld such information from the plaintiff's decedent, and others in his position, thus preventing them from having the knowledge with which to take important precautionary measures, such as periodic x-rays and medical examinations, and avoiding further dust exposure, the specifics of defendants intentional acts being as follows:

(a) Failing to warn prior users of the need for monitoring due to prior asbestos exposure;

(b) Failing to issue recall type letters or notices to prior users;

(c) Frustrating the publication of articles on the health hazards of asbestos in literature;

(d) Rejecting the advice of other corporate officials to warn of the hazards of their asbestos products; such actions by top management officials having been motivated by the possibility of adverse effects on profits;

   (e) Intentional inadequacy and delay of use of warnings on asbestos products;

   (f) Failing to advise users of asbestos and asbestos-containing products, such as the plaintiff's decedent, of medical findings known to defendants concerning the dangers of asbestos exposure;

   (g) Suppressing the dissemination of information concerning the hazards of asbestos exposure to users of asbestos-containing products, such as the plaintiff's decedent.

  14. The foregoing deliberate, intentional and purposeful acts of the defendants were a direct and proximate cause of the plaintiff's decedent's illnesses and of the damages sustained by the plaintiff's decedent as hereinafter described.

## VI.

## FIFTH CAUSE OF ACTION

  Plaintiff realleges Paragraphs 1 through 14 and the First, Second, Third and Fourth Causes of Action, and incorporates the same herein.

  15. That during, before and after plaintiff's decedent's exposure to asbestos products manufactured, mined, distributed or sold by defendants, the defendants falsely represented facts, including the dangers of asbestos exposure to the plaintiff's decedent, in the particulars alleged in the paragraphs above, while defendants each had actual knowledge of said dangers of asbestos exposure to persons such as the plaintiff's decedent. Defendants each knew of the falsity of their representations, and/or made such representations in reckless disregard of their truth or falsity.

  16. The foregoing representations were material conditions precedent to plaintiff's decedent's continued exposures to asbestos-containing products, and the defendants each intended that the plaintiff's decedent act upon the representations, by continuing plaintiff's decedent's exposures to the asbestos products. Plaintiff's decedent was without knowledge of the falsity of defendants' representations, and rightfully relied,

1 albeit to plaintiff's decedent's ultimate detriment, upon those representations.

2     17.    As a direct and proximate result of plaintiff's decedent's reliance upon defendants' false representations, plaintiff's decedent suffered injuries and damages as hereinafter described.

## VII.

## SIXTH CAUSE OF ACTION

Plaintiff realleges Paragraphs 1 through 17 and the First, Second, Third, Fourth and Fifth Causes of Action where relevant, and incorporates the same herein by reference.

    18.    Plaintiff further alleges that at the time the defendants, and each of them, sold and/or delivered the aforesaid asbestos and asbestos-related products and at the time said products were used by plaintiff's decedent, or by others in his jobsite vicinities, in the manner and environment intended, such products were in a defective condition, and were unreasonably dangerous and unfit for their intended uses, in that they were deleterious, poisonous and highly harmful to the plaintiff's decedent's bodies.

    19.    The above was the proximate cause of the severe damages sustained by plaintiff's decedent as hereinafter set forth.

## VII.

## SEVENTH CAUSE OF ACTION

Plaintiff realleges Paragraphs 1 through 19 and the First, Second, Third, Fourth, Fifth, and Sixth Causes of action, and incorporates the same herein.

    20.    Defendant Metropolitan Life Insurance Company conspired with its insureds and other asbestos product manufacturers and distributors, to whose products the plaintiff's decedent was exposed, including: Johns-Manville Corporation; Raybestos-Manhattan; H. K. Porter, Incorporated; Carey Canada; and the Celotex Corporation, GAF Corporation; Armstrong World Industries; T & N plc; United States Gypsum Company; and A. P. Green Industries, and/or these companies' predecessors, to suppress and distort information provided to workers, physicians, and the scientific community, about the hazards of asbestos in the following manner:

(a) In 1926, Metropolitan Life Insurance Company founded an industrial health clinic at McGill University, through which, in 1930, studies of asbestos miners were conducted at Metropolitan Life policyholder companies. Although the McGill group found asbestosis in significant numbers of the group studied, Metropolitan through its agent, Dr. Anthony Lanza, suppressed the publication of these findings, and Dr. Lanza repeatedly wrote in open scientific literature that asbestos mine and mill workers did not get asbestosis.

(b) In 1932, Metropolitan Life Insurance Company, through its agents Dr. Anthony Lanza and Dr. Fellows, assisted the Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issue of asbestos disease. Further collaboration between the conspiring asbestos producers and Metropolitan Life Insurance Company officials continued this trend of international cover-up.

(c) Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney J. C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Anthony Lanza, Associate Director of conspirator, Metropolitan Life Insurance Company (insurers of Manville and Raybestos) that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent a material fact about asbestos exposure; that is the seriousness of the disease process asbestosis. This was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal: and through other selective editing that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was known to be then. As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935. The conspirators were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville and Raybestos.

(d) Metropolitan Life Insurance, through its agent, Dr. Anthony Lanza, was a central figure in the formation of the Industrial Hygiene Foundation in 1935. This foundation performed confidential industrial hygiene and medical surveys for the Asbestos Textile Institute (ATI) in 1947, and for other industrial organizations, including the Quebec Asbestos Mining Association (QAMA), failing to disclose, and/or deleting from reports material data on the effects of asbestos exposure in the prevalence of lung cancer and asbestos exposed persons.

(e) In 1936, defendant Metropolitan Life Insurance Company was involved with conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H. K. Porter

9

Company), Union Asbestos and Rubber Company and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these conspirators acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

(f) On November 11, 1948, these conspirators and their representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall) Raybestos-Manhattan, Inc., Thermoid Company (whose assets and liabilities were later purchased by H. K. Porter Company, Union Asbestos and Rubber Company and United States Gypsum Company U. S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

(g) At this November 11, 1948 meeting, these conspirators and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical view of the then-existing standards of dust exposure for asbestos and asbestos products.

(h) At this meeting, these conspirators intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published same in the medical literature as edited by Dr. Vorwald. These defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and the class of persons exposed to asbestos, including the plaintiffs.

(i) As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that the conspirators wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extend of the risks. The conspirators affirmatively and deliberately disseminated this misleading Vorwald publication to university libraries, government officials, agencies and others.

(j) Such action constituted a material affirmative misrepresentation of

      the total contest of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

   (k)  All conspirators identified above approved and ratified and furthered the previous conspiratorial acts of conspirators Metropolitan Life Insurance, Johns-Manville and Raybestos Manhattan, and all alleged coconspirators during the dates and circumstances alleged above acted as agents and conspirators for the other conspirators.

22. The acts of defendant conspirator Metropolitan Life Insurance Company, as described above, constituted fraudulent misrepresentation which proximately caused injury to the plaintiff's decedent in the following manner.

   (a)  The material published or caused to be published by the conspirators was false and incomplete in that the conspirators knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

   (b)  Conspirators individually, as members of a conspiracy, and as agents of other co-conspirators, intended that the publication of false and misleading reports and/or the nondisclosure of documented reports of the health hazards of asbestos:

      (1)  maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

      (2)  assist in the continued pecuniary gain of the conspirators through the sale of their products;

      (3)  influence in the conspirators' favor proposed legislation to regulate and foster asbestos exposure; and,

      (4)  to provide a defense in lawsuits brought for injuries resulting from asbestos disease.

   (c)  Plaintiff's decedent reasonably relied upon the published medical and scientific date documenting the purported safety of asbestos and asbestos-related products, and the absence of published medical and scientific reports on the hazards of asbestos and asbestos-related products to continue his exposure to asbestos because he thus believed asbestos to be safe.

   (d)  Defendant Metropolitan Life Insurance Company, individually, as a member of a conspiracy, and as an agent of other co-conspirators, intended that plaintiff's decedent rely upon the published reports regarding the safety of asbestos and asbestos-related products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue his exposure to those products.

   (e)  Conspirators individually, as members of a conspiracy, and as agents

of other co-conspirators are in a position of superior knowledge regarding the health hazards of asbestos and therefore plaintiff's decedent had a right to rely on the published reports commissioned by the conspirators regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

23. Plaintiff's decedent suffered damages as herein after set forth, as a direct and proximate cause of the acts alleged herein.

## VIII.

### EIGHTH CAUSE OF ACTION

Plaintiff realleges Paragraphs 1 through 19 and the First, Second, Third, Fourth, Fifth and Sixth Causes of Action and incorporates the same herein by reference.

24. Plaintiff further alleges, alternatively, that she may not be able to identify some or all of the specific manufacturers of the various products containing asbestos to which plaintiff's decedent was exposed, for the reason that there were a number of producers of the asbestos-containing products from which plaintiff's decedent ingested asbestos fibers during his employments.

25. There being a substantial period of time between the point of initial exposure, and the point of manifestation, of the asbestos-related diseases suffered by the plaintiff's decedent, it is now a difficult or impossible task to determine which particular exposures to asbestos dust are responsible for causing plaintiff's decedent's diseases, as such diseases sustained by the plaintiff's decedent was caused by his exposures to the fungible product of asbestos mined, distributed, manufactured, wholesaled, processed, imported, converted, compounded and/or retailed by the named defendants.

26. Further, the named defendants are sufficient in number so as to represent a substantial share of the market, such that it is probable that the culpable party or parties which produced the asbestos-containing products to which the plaintiff's decedent was exposed, and which exposure proximately caused his asbestos-related illnesses, are included among the above-named defendants.

27. The above named defendants, acting together and in concert, created,

12

promoted and adhered-to an industry-wide standard of safety in the manufacture, design, selection, assembly, marketing, distribution, sale, delivery and promotion of asbestos-containing products including, but not limited to, raw and processed asbestos fiber, with such industry-wide safety standards being utterly ineffective and inadequate.

28. The plaintiff's decedent's injuries and damages complained-of herein were directly and proximately caused by the plaintiff's decedent's exposures to asbestos-containing products produced and promoted by the defendants under, and in adherence to, said ineffective and inadequate industry-wide standards.

29. In light of the foregoing, the defendants are jointly and severally liable to the plaintiff herein.

(a) In the alternative, defendants herein represent a substantial share of the asbestos-containing product market in the areas within which the plaintiff's decedent was hired, employed and in the areas within which plaintiff's decedent was exposed to asbestos products.

(b) Defendants manufactured, designed, selected, assembled, marketed, distributed, sold, supplied, delivered and promoted asbestos-containing products of the kind and nature to which the plaintiff's decedent was exposed during the period of his employments as described herein.

30. Therefore, defendants are liable jointly and severally for the injuries and damages sustained by the plaintiff's decedent, which injuries were directly and proximately caused by plaintiff's decedent's exposures to asbestos-containing products produced and promoted by the defendants, under, and in adherence to, said insufficient and inadequate industry-wide standards based on the several defendants respective pro-rated market shares within the market described herein.

31. The plaintiff further alleges that the defendants, and each of them, should be found jointly and severally liable for plaintiff's decedent's damages by reason of these defendants' actions and inactions, including actions and inactions resulting from conspiratorial and concertive conduct on the part of said defendants, as alleged herein. The

defendants, by virtue of their collective nondisclosure of essential information regarding the dangers of asbestos, effectively prevented the plaintiff's decedent from appreciating the asbestos health dangers involved, and in the plaintiff's being able to personally identify those specific miners, manufacturers, sellers and/or distributors of the particular products which caused the asbestos-related diseases from which the plaintiff's decedent suffered.

32. The plaintiff, as stated herein, specifically alleges joint and several liability on the part of the named defendants on the basis of the so-called "market share" and/or "enterprise" theories of liability, as these theories have been adopted and applied in reported decisional law; and, alternatively and consequently, that said defendants are also liable for the plaintiff's decedent's injuries and damages on the basis of the theory of alternative liability.

## DAMAGES AND COMPENSATORY RELIEF SOUGHT

33. As a result of his development of asbestosis, asbestos-caused mesothelioma cancer, and other asbestos-related diseases, the plaintiff's decedent suffered and sustained serious injuries.

34. The plaintiff's decedent further suffered prior to his death, great pain, debilitation, anxiety and mental anguish, as a direct result of the aforesaid injuries.

35. The plaintiff's decedent's injuries and illnesses were permanent in nature, and that plaintiff's decedent suffered same from the time of the onset of these injuries and diseases for his the remainder of his life, that his enjoyment of life was greatly impaired and, further, that this expected life span was greatly shortened.

36. Plaintiff's decedent also was forced to incur substantial medical expenses attendant to his serious asbestos illnesses.

WHEREFORE, plaintiff hereby demands judgment, joint and several, against the defendants for damages in an amount greater than Seventy Five Thousand Dollars ($75,000.00), excluding interests and costs, along with an award of costs attendant to the bringing of this action.

Dated this 8th day of February, 2011.

DAVID C. THOMPSON, P.C.

*[signature]*

David C. Thompson (ND Id No.: 03921)
321 Kittson Avenue
P.O. Box 5235
Grand Forks, ND 58206-5235
(701) 775-7012
(701) 775-2520 (Facsimile)

**Counsel for Plaintiff**