# Enclosure

1   ALAN R. BRAYTON, ESQ., S.B. #73685
2   DAVID R. DONADIO, ESQ., S.B. #154436
    BRAYTON❖PURCELL LLP
3   Attorneys at Law
    222 Rush Landing Road
4   P.O. Box 6169
    Novato, California 94948-6169
5   (415) 898-1555
    (415) 898-1247 (Fax No.)

6   Attorneys for Plaintiffs

E-filing

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11   SHIRLEY ADAMSON, as Wrongful          )   No. _____
     Death Heir, and as Successor-in-Interest to  )
12   MILES ADAMSON, Deceased, and          )
     STEVEN ADAMSON and MARK              )
13   ADAMSON, as Legal Heirs of MILES     )   COMPLAINT FOR SURVIVAL,
     ADAMSON, Deceased,                   )   WRONGFUL DEATH - ASBESTOS;
14                                         )   DEMAND FOR JURY TRIAL
                  Plaintiffs,             )
15                                         )
     vs.                                   )
16                                         )
     GENERAL ELECTRIC COMPANY,            )
17                                         )
                  Defendant.              )
18   _____)

19

20                               I.

21                            PARTIES

22          1.     Plaintiffs in this action are the above-captioned successor-in-interest to, or the

23   personal representative of the estate of Decedent; and the personal representatives on behalf of

24   the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

25   "Plaintiffs."

26          2.     The person who sustained asbestos-related lung injuries and death as a result of

27   their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

28   hereinafter "Decedent" is, with the date of death: MILES ADAMSON died January 29, 2010.

K:\Injured\114422\FED\PLD\cmp fed (wd).wpd                    1

1 SHIRLEY ADAMSON is the spouse of MILES ADAMSON and is hereinafter referred to as
2 "surviving spouse."

3     3.     Decedent sustained an asbestos-related lung disease and death by precisely the
4 following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-
5 containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related
6 diseases is explained on **Exhibit A**, attached to plaintiffs' complaint and incorporated by
7 reference herein.

8     4.     All of plaintiffs' claims arise out of a similar series of occurrences: repeated
9 exposure to asbestos-containing products manufactured, distributed, and/or sold by defendant
10 and supplied to, installed and/or maintained by defendant at Decedent's worksites, over a period
11 of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,
12 resulting in cumulative, progressive, incurable lung diseases.

13     5.     Each plaintiff claims damages for an asbestos-related disease arising from an
14 identical series of occurrences not dependent on Decedent's worksite but on the fact that
15 asbestos-containing products, when handled in the manner in which they were intended, released
16 harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The
17 allegations of plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature
18 of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are
19 all identical.

20     6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein
21 mentioned, defendant was and is corporation, partnership, unincorporated association, sole
22 proprietorship and/or other business entity organized and existing under and by virtue of the laws
23 of the State of California, or the laws of some other state or foreign jurisdiction, and that said
24 defendant, was and is authorized to do and are doing business in the State of California, and that
25 said defendant has regularly conducted business in the State of California.

26 ///
27 ///
28 ///

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.   <u>Jurisdiction</u>:  Plaintiff SHIRLEY ADAMSON is a citizen of the State of Arizona. Plaintiff(s) STEVEN ADAMSON and MARK ADAMSON are citizens of the following states, respectively: California and California.

Defendant is each corporation incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | Connecticut |

This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.   <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred within the County of San Francisco, California, and Defendant is subject to personal jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF SHIRLEY ADAMSON COMPLAINS OF DEFENDANT GENERAL ELECTRIC COMPANY, ITS "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.   At all times herein mentioned, the named defendant was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate,

1  venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of

2  or member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

3  labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

4  inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing,

5  endorsing servicing, installing, contracting for installation, repairing, marketing, warranting,

6  rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

7  directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or

8  other products containing asbestos.  Said entities shall hereinafter collectively be called

9  ALTERNATE ENTITIES.  The herein named defendant is liable for the tortious conduct of each

10  successor, successor in business, successor in product line or a portion thereof, assign,

11  predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-

12  venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it

13  was a member of, or funded, that researched, studied, manufactured, fabricated, designed,

14  modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

15  inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

16  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

17  products containing asbestos.  The following defendant, is liable for the acts of each and every

18  ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of

19  plaintiffs' remedy against each such ALTERNATE ENTITY; defendant, has acquired the assets,

20  product line, or a portion thereof, of each such ALTERNATE ENTITY; defendant, caused the

21  destruction of plaintiffs' remedy against each such ALTERNATE ENTITY; each such defendant

22  has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that

23  each such defendant enjoys the goodwill originally attached to each such ALTERNATE

24  ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |

K:\Injured\114422\FED\PLD\cmp fed (wd).wpd                    4

10.     At all times herein mentioned, defendant, its ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.     At all times herein mentioned, defendant, its ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

12.     Defendant, its ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendant, and each of them, breached said duty of due care.

13.     Defendant, its ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

1  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

2  breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

3  release of airborne asbestos fibers, and that through such foreseeable use and/or handling

4  "exposed persons," including Decedent herein, would use or be in proximity to and exposed to

5  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

6  persons working in proximity to said products, directly or through reentrainment.

7        14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-

8  containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's

9  exposure to asbestos and asbestos-containing products is on current information as set forth at

10  various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference

11  herein.

12        15.    As a direct and proximate result of the acts, omissions, and conduct of the

13  defendant, its ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to

14  asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or

15  harm to the Decedent as set forth in **Exhibit A**, attached to plaintiffs' complaint and incorporated

16  by reference herein.

17        16.    Plaintiffs are informed and believe, and thereon alleges, that progressive lung

18  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

19  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

20  asbestos and asbestos-containing products over a period of time.

21        17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-

22  containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-

23  containing products presented any risk of injury and/or disease.

24        18.    As a direct and proximate result of the aforesaid conduct of the defendant, its

25  "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,

26  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

27  amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this

28  complaint accordingly when the true and exact cost thereof is ascertained.

19.   As a direct and proximate result of the aforesaid conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20.   As a direct and proximate result of the aforesaid conduct of defendant, its ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21.   As a further direct and proximate result of the said conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

22.   As a further direct and proximate result of the said conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23.   Defendant, its ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24.   Defendant, its ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of its ALTERNATE ENTITIES, and each of them, and defendant's officers, directors, and managing agents participated in, authorized, expressly

///

1  and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of its
2  ALTERNATE ENTITIES as set forth herein.

3      25.    The herein-described conduct of said defendant, its ALTERNATE ENTITIES,
4  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in
5  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed
6  persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive
7  damages against said defendant.

8      WHEREFORE, plaintiffs pray judgment against defendant, its "alternate entities," and
9  each of them, as hereinafter set forth.

10  SECOND CAUSE OF ACTION<br>(Products Liability - Survival)

11

12      PLAINTIFF SHIRLEY ADAMSON AS SUCCESSOR-IN-INTEREST TO THE
13  DECEDENT MILES ADAMSON COMPLAINS OF DEFENDANT GENERAL ELECTRIC
14  COMPANY, ITS "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A
15  SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS
16  LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

17      26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each
18  paragraph of the First Cause of Action  herein.

19      27.    Defendant, its "alternate entities," and each of them, knew and intended that the
20  above-referenced asbestos and asbestos-containing products would be used by the purchaser or
21  user without inspection for defects therein or in any of their component parts and without
22  knowledge of the hazards involved in such use.

23      28.    Said asbestos and asbestos-containing products were defective and unsafe for their
24  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
25  and/or death.  The defect existed in the said products at the time they left the possession of
26  defendant, its ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause
27  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
28  ///

1   persons," including Decedent herein, while being used in a reasonably foreseeable manner,

2   thereby rendering the same defective, unsafe, and dangerous for use.

3       29.    "Exposed persons" did not know of the substantial danger of using said products.

4   Said dangers were not readily recognizable by "exposed persons." Said defendant, its

5   ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

6   which Decedent and others similarly situated were exposed.

7       30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

8   to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

9   sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

10   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

11   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

12   and asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them, did

13   so with conscious disregard for the safety of "exposed persons" who came in contact with said

14   asbestos and asbestos-containing products, in that said defendant, its ALTERNATE ENTITIES,

15   and each of them, had prior knowledge that there was a substantial risk of injury or death

16   resulting from exposure to asbestos or asbestos-containing products, including, but not limited to,

17   asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from

18   scientific studies performed by, at the request of, or with the assistance of, said defendant, its

19   ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

20   defendant, its ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

21       31.    On or before 1930, and thereafter, said defendant, its ALTERNATE ENTITIES

22   and each of them, were aware that members of the general public and other "exposed persons,"

23   who would come in contact with their asbestos and asbestos-containing products, had no

24   knowledge or information indicating that asbestos or asbestos-containing products could cause

25   injury, and said defendant, its ALTERNATE ENTITIES, and each of them, knew that members

26   of the general public and other "exposed persons," who came in contact with asbestos and

27   asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos

28   ///

1 | and asbestos-containing products was safe, when in fact said exposure was extremely hazardous

2 | to health and human life.

3 | 32.    With said knowledge, said defendant, its ALTERNATE ENTITIES, and each of

4 | them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease,

5 | buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

6 | warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-

7 | containing products without attempting to protect "exposed persons" from, or warn "exposed

8 | persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

9 | containing products. Rather than attempting to protect "exposed persons" from, or warn

10 | "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

11 | asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them,

12 | intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

13 | and suppressed said knowledge from "exposed persons" and members of the general public, thus

14 | impliedly representing to "exposed persons" and members of the general public that asbestos and

15 | asbestos-containing products were safe for all reasonably foreseeable uses. Defendant, its

16 | ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

17 | representations with the knowledge of the falsity of said implied representations.

18 | 33.    The above-referenced conduct of said defendant, its ALTERNATE ENTITIES,

19 | and each of them, was motivated by the financial interest of said defendant, its ALTERNATE

20 | ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

21 | manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

22 | sale, inspection, installation, contracting for installation, repair, marketing, warranting,

23 | rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

24 | directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

25 | products. In pursuance of said financial motivation, said defendant, its ALTERNATE

26 | ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

27 | were consciously willing and intended to permit asbestos and asbestos-containing products to

28 | ///

1   cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

2   including Decedent.

3        34.    Plaintiffs allege that the aforementioned defendant, its ALTERNATE ENTITIES,

4   and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe

5   for their intended use, but that their asbestos and asbestos-containing products, created an

6   unreasonable risk of bodily harm to exposed persons.

7        35.    Plaintiffs relied upon defendant, its ALTERNATE ENTITIES, and each of their

8   representations, lack of warnings, and implied warranties of fitness of asbestos and their

9   asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

10  suffered permanent injury and death as alleged herein.

11       36.    As a direct and proximate result of the actions and conduct outlined herein,

12  Decedent have suffered the injuries and damages herein alleged.

13       WHEREFORE, plaintiffs pray judgment against defendant, its "alternate entities", and

14  each of them, as hereinafter set forth.

15                          THIRD CAUSE OF ACTION
                            (Negligence - Wrongful Death)
16

17       PLAINTIFF SHIRLEY ADAMSON, AS WRONGFUL DEATH HEIR, AND AS

18  SUCCESSOR-IN-INTEREST TO MILES ADAMSON DECEASED, AND PLAINTIFF(S)

19  STEVEN ADAMSON and MARK ADAMSON AS LEGAL HEIRS OF DECEDENT,

20  COMPLAIN OF DEFENDANT GENERAL ELECTRIC COMPANY, ITS "ALTERNATE

21  ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND

22  DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN

23  AS FOLLOWS:

24       37.    Plaintiffs incorporate by reference each paragraph contained within the First

25  Cause of Action as though fully set forth herein.

26       38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth

27  above.

28  ///

K:\Injured\114422\FED\PLD\cmp fed (wd).wpd                11
                     COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

39.    The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

40.    As a direct and proximate result of the conduct of the defendant, its ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the surviving spouse.

42.    As a direct and proximate result of the conduct of defendant, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

43.    As a further direct and proximate result of the conduct of defendant, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, plaintiffs pray judgment against defendant, as hereinafter set forth.

<u>FOURTH CAUSE OF ACTION</u>
(Products Liability - Wrongful Death)

PLAINTIFF SHIRLEY ADAMSON, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO MILES ADAMSON DECEASED, AND PLAINTIFF(S) STEVEN ADAMSON and MARK ADAMSON AS LEGAL HEIRS OF DECEDENT, COMPLAIN OF DEFENDANT GENERAL ELECTRIC COMPANY, ITS "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First, Second and Third Causes of Action herein.

45.    As a direct and proximate result of the conduct of defendant, Decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, plaintiffs pray judgment against defendant, its "alternate entities," and each of them, as hereinafter set forth.

**IV.**

**DAMAGES AND PRAYER**

WHEREFORE, plaintiffs pray judgment against defendant, its "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

(a)    For plaintiffs' general damages according to proof;

(b)    For plaintiffs' loss of income, wages and earning potential according to proof;

(c)    For plaintiffs' medical and related expenses according to proof;

(d)    For plaintiffs' cost of suit herein;

(e)    For exemplary or punitive damages according to proof;

(f)    For damages for fraud according to proof; and

(g)    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated:  1/28/11                              BRAYTON✧PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated:  1/28/11                              BRAYTON✧PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

K:\Injured\114422\FED\PLD\cmp fed (wd).wpd

13

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

Decedent: MILES ADAMSON, Deceased.

Decedent's injuries: Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the decedent, including, but not limited to breathing difficulties and/or other lung damage. Decedent was diagnosed with lung cancer on or about December 2009.

Decedent died on January 29, 2010.

Retirement Status: The injured party retired from his last place of employment at regular retirement age. He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendant: Plaintiffs contend that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendant. Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | U.S. Marines Corps, Twentynine Palms, CA | Trainee | Early 1952 (Approx. 6 weeks) |
| | Naval Training Center, Great Lakes, IL | Machinists Mate (Trainee) | 1952 (Approx. 6 weeks) |
| | ELDORADO (AGC-11), | Machinists Mate | 1952-8/12/1955 |

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy (cont'd) | U.S. Marines Corps, Twentynine Palms, CA | Trainee | Early 1952 (Approx. 6 weeks) |
| | Mare Island Naval Shipyard, Vallejo, CA: | | 1952-10/1952; Fall 1953 - 2/15/1955 |
| | WESTPAC cruise including, Pearl Harbor Naval Shipyard, HI; US Navy, Sasebo, Japan; off-shore Korea | | 10/1952- Fall 1953; 2/15/1955- 8/12/1955 |

Job Duties:  Decedent worked in the boiler room maintaining and repairing machinery, including pumps, valves and BABCOCK & WILCOX COMPANY boilers. At Mare Island Naval Shipyard, Vallejo, California, plaintiff was present during overhauls. Plaintiff recalls decedent's coworker Jerry Falls, Walnut Creek, California, area. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Studebaker dealership, Long Beach, CA | Studebaker dealership, Long Beach, CA | Auto Parts Manager | 9/1955- 1/1956 |

Job Duties:  Decedent worked in a parts storage area located within the repair shop. Decedent worked in proximity to mechanics who were removing and replacing the original manufacturer's brake shoes, clutches and engine gaskets in Studebaker (COOPER INDUSTRIES, LLC ( FKA COOPER INDUSTRIES, INC.)) vehicles that were still under a warranty extending two years from the date of purchase. Replacement brake shoes, clutches and engine gaskets were all supplied by Studebaker (COOPER INDUSTRIES, LLC ( FKA COOPER INDUSTRIES, INC.)). Plaintiff does not currently recall THE names of decedent's supervisors and coworkers. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Hinkle Texaco Gas Station, Ximeno Ave., Long Beach, CA | Hinkle Texaco Gas Station, Ximeno Ave., Long Beach, CA | Mechanic | 1/1956- 4 or 5/1957 |

Job Duties: Decedent repaired cars and trucks, removing and replacing brake shoes, clutches and engine gaskets. Plaintiff recalls station owner Mason Hinkle, deceased. Plaintiff does not currently recall the names of decedent's supervisors and coworkers. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Rancho AMC, Long Beach, CA | Rancho AMC, Long Beach, CA | Auto Parts Manager | 1957-1959 |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1  Job Duties:  Decedent worked in a parts storage area located within the dealership's repair shop.
   Decedent worked in proximity to mechanics who were removing and replacing the original
2  manufacturer's brake shoes, clutches and engine gaskets in AMC (CHRYSLER LLC) vehicles
   that were still under warranty. Replacement brake shoes, clutches and engine gaskets were all
3  supplied by AMC (CHRYSLER LLC). Plaintiff does not currently recall the names of decedent's
   supervisors and coworkers. Plaintiff currently contends decedent was exposed to asbestos during
4  this employment.

5
| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
6
7  | Severin Motors, Long Beach, CA | Severin Motors, Long Beach, CA | Auto Parts Manager | 1959-1964 |

8  Job Duties:  Decedent worked in a parts storage area located within this AMC dealership's repair
   shop. Decedent worked in proximity to mechanics who were removing and replacing the original
9  manufacturer's brake shoes, clutches and engine gaskets in AMC (CHRYSLER LLC) vehicles
   that were still under warranty. Replacement brake shoes, clutches and engine gaskets were all
10 supplied by AMC (CHRYSLER LLC). Plaintiff does not currently recall the names of decedent's
   supervisors and coworkers. Plaintiff currently contends decedent was exposed to asbestos during
11 this employment.

12
| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
13
14 | Whittier AMC, Whittier, CA | Whittier AMC, Whittier, CA | Auto Parts Manager | 1964-Early 1970s |

15 Job Duties:  Decedent worked in a parts storage area located within the dealership's repair shop.
   Decedent worked in proximity to mechanics who were removing and replacing the original
16 manufacturer's brake shoes, clutches and engine gaskets in AMC (CHRYSLER LLC) vehicles
   that were still under warranty. Replacement brake shoes, clutches and engine gaskets were all
17 supplied by AMC (CHRYSLER LLC). Decedent built and maintained AMC drag racing
   vehicles, installing new brake shoes, clutches, and engine gaskets supplied by AMC
18 (CHRYSLER LLC). Plaintiff does not currently recall the names of decedent's supervisors and
   coworkers. Plaintiff currently contends decedent was exposed to asbestos during this
19 employment.

20
| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
21
22 | Coast Cadillac, Long Beach, CA | Coast Cadillac, Long Beach, CA | Auto Parts Manager | 1971- 1990 |

23 Job Duties:  Decedent worked in a parts storage area located within the dealership's repair shop.
   Decedent worked in proximity to mechanics who were removing and replacing the original
24 manufacturer's brake shoes, clutches and engine gaskets in CADILLAC (GENERAL MOTORS
   CORPORATION) vehicles that were still under warranty. Replacement brake shoes, clutches
25 and engine gaskets were all supplied by CADILLAC (GENERAL MOTORS CORPORATION).
   Plaintiff recalls decedent's coworker Mike Mooney, Long Beach, California. Plaintiff currently
26 contends decedent was exposed to asbestos during this employment.

27 ///

28 ///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| DeLillo Chevrolet, Huntington Beach, CA | DeLillo Chevrolet, Huntington Beach, CA | Dispatcher | 1991-1996 |

Job Duties:  Decedent ordered and delivered auto parts. Plaintiff recalls decedent's supervisor and company owner, Mr. DeLillo, Huntington Beach, California. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.


NON-OCCUPATIONAL EXPOSURE:

Friction:

Decedent repaired his personal vehicles and converted some of them into race cars. Decedent removed and replaced brake shoes, clutches and engine gaskets. Decedent removed and replaced engine gaskets at least 13 times and clutches at least twice prior to 1990. When removing and replacing brake shoes, decedent used an air hose to clean the brake drums. Decedent purchased replacement brake shoes, clutches and gaskets from the dealerships.

In the early 1970s, decedent removed and replaced the brake shoes and the original manufacturer's clutch and related gaskets in a 1969 TOYOTA (TOYOTA MOTOR SALES U.S.A., INC.) Land Cruiser. Decedent installed original manufacturer's replacement brake shoes from the TOYOTA (TOYOTA MOTOR SALES U.S.A., INC.) dealership in Long Beach, California. Decedent removed the original manufacturer's engine and related gaskets. Decedent replaced the engine with a new CHEVROLET (GENERAL MOTORS CORPORATION) engine that he opened and altered for racing purposes, removing and replacing the original manufacturer's engine gaskets. Decedent removed and replaced the brake shoes at least two more times, installing original manufacturer's replacement brake shoes from the TOYOTA (TOYOTA MOTOR SALES U.S.A., INC.) dealership in Long Beach, California, each time.

In the early 1960s, decedent removed and replaced the original manufacturer's clutch and brake shoes in a 1957 CHEVROLET (GENERAL MOTORS CORPORATION) car that he  purchased new in 1957. Decedent installed replacement GMC (GENERAL MOTORS CORPORATION) Delco brake shoes and a replacement clutch that he purchased from the CHEVROLET (GENERAL MOTORS CORPORATION) dealership, Long Beach, California.

In the early 1960s, decedent removed and replaced the original manufacturer's brake shoes in a 1960 or 1961 FORD (FORD MOTOR COMPANY) pick-up truck that he purchased new. Decedent removed and replaced the brake shoes at least five more times. Decedent installed original manufacturer's replacement brake shoes and a replacement clutch that he purchased from the FORD (FORD MOTOR COMPANY) dealership in Long Beach, California.

In the late 1970s, decedent removed and replaced the original manufacturer's brake shoes in a 1975 FORD (FORD MOTOR COMPANY) pick-up truck that he purchased new in 1975. Decedent removed and replaced the brake shoes at least two more times. Decedent installed original manufacturer's replacement brake shoes and a replacement clutch that he purchased from the FORD (FORD MOTOR COMPANY) dealership in Long Beach, California.

Plaintiff currently contends decedent was exposed to asbestos during this vehicle repair work.

ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-00424-SI

Adamson et al v. General Electric Company
Assigned to: Hon. Susan Illston
Demand: $0
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 01/28/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

### Plaintiff

**Shirley Adamson**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Miles*
*Adamson, Deceased*

represented by **David R. Donadio**
Brayton Purcell LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
(415) 898-1555
Fax: (415) 898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
(415) 898-1555
Fax: (415) 898-1247
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Steven Adamson**
*as Legal Heir of Miles Adamson,*
*Deceased*

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Mark Adamson**
*as Legal Heir of Miles Adamson,*
*Deceased*

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/28/2011 | 1 | COMPLAINT for Survival, Wrongful Death - Asbestos & Demand for Jury Trial - [Summons Issued] against General Electric Company, [Filing Fee: $350.00, Receipt Number 34611055577] Filed by Steven Adamson, Shirley Adamson & Mark Adamson. (tn, COURT STAFF) (Filed on 1/28/2011) (Additional attachment(s) added on 2/14/2011: # 1 Civil Cover Sheet) (ys, COURT STAFF). (Entered: 01/31/2011) |
| 01/28/2011 | 2 | SUMMONS Issued as to Defendant General Electric Company. (tn, COURT STAFF) (Filed on 1/28/2011) (ys, COURT STAFF). (Entered: 01/31/2011) |
| 01/28/2011 | 3 | ADR SCHEDULING ORDER: Joint Case Management Statement due 5/3/2011 & InitialCase Management Conference set for 5/10/2011 at 10:00 AM.. (tn, COURT STAFF) (Filed on 1/28/2011) (Entered: 01/31/2011) |
| 01/28/2011 | 4 | Certification of Interested Entities or Persons filed by Mark Adamson, Shirley Adamson & Steven Adamson. (tn, COURT STAFF) (Filed on 1/28/2011) (ys, COURT STAFF). (Entered: 01/31/2011) |
| 01/28/2011 | 5 | NOTICE of Tag-Along Action filed by Mark Adamson, Shirley Adamson & Steven Adamson. (tn, COURT STAFF) (Filed on 1/28/2011) (ys, COURT STAFF). (Entered: 01/31/2011) |
| 01/28/2011 | 6 | Declination to Proceed Before a United States Magistrate Judge & Request for Assignment to a United States District Court filed by Mark Adamson, Shirley Adamson & Steven Adamson. (tn, COURT STAFF) (Filed on 1/28/2011) (ys, COURT STAFF). (Entered: 01/31/2011) |
| 01/28/2011 | | CASE DESIGNATED for Electronic Filing. (tn, COURT STAFF) (Entered: 01/31/2011) |
| 02/01/2011 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (lmh, COURT STAFF) (Filed on 2/1/2011) (Entered: 02/01/2011) |
| 02/01/2011 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Susan Illston for all further proceedings. Judge Magistrate Judge Elizabeth D. Laporte no longer assigned to the case.. Signed by Executive Committee on 2/1/11. (as, COURT STAFF) (Filed on 2/1/2011) (Entered: 02/01/2011) |
| 02/09/2011 | 9 | CLERKS NOTICE Initial Case Management Conference set for 5/13/2011 |

02:30 PM. (Attachments: # 1 Standing Order) (tf, COURT STAFF) (Filed on 2/9/2011) (Entered: 02/09/2011)

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 03/07/2011 07:00:18 | | |
| **PACER Login:** se6190 | **Client Code:** | 05045 |
| **Description:** | Docket Report **Search Criteria:** | 3:11-cv-00424-SI |
| **Billable Pages:** 2 | **Cost:** | 0.16 |