ADRMOP, E-Filing

## U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-01073-EDL

Smith v. 3M Company et al
Assigned to: Magistrate Judge Elizabeth D. Laporte
Case in other court: Alameda County Superior Court,
            RG10544220
Cause: 28:1446pl Petition for Removal - Product Liability

Date Filed: 03/08/2011
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

### Plaintiff

**William Andrew Smith**             represented by   **Benjamin David Goldstein**
                                                       Paul & Hanley LLP
                                                       1608 Fourth Street
                                                       Suite 300
                                                       Berkeley, CA 94710
                                                       510-559-9980
                                                       Fax: 510-559-9970
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                     **Dean Allan Hanley**
                                                       Paul & Hanley LLP
                                                       1608 Fourth Street
                                                      Suite 300
                                                      Berkeley, CA 94710
                                                      510-559-9980
                                                       Fax: 510-559-970
                                                        Email: drosenthal@paulandhanley.com
                                                       *ATTORNEY TO BE NOTICED*

                                                     **Rohit Kodical**
                                                        Paul Hanley & Harley
                                                       1608 4th St #300
                                                       Berkeley, CA 94710
                                                      *ATTORNEY TO BE NOTICED*

V.

### Defendant

**3M Company**
*formerly known as*
Minnesota Mining And Manufacturing
Company

### Defendant

**Allied Packing & Supply, Inc.**

Defendant

**Asbestos Corporation, Ltd.**

Defendant

**Atlantic Richfield Company**

Defendant

**Chevron U.S.A. Inc.**

Defendant

**Crown Cork & Seal Company, Inc.**
*individually*
*Successor*
Mundet Cork Company

Defendant

**General Electric Company**

Defendant

**Los Angeles Rubber Company**

Defendant

**Metalclad Insulation Corporation**

Defendant

**National Steel and Shipbuilding Company**                  represented by **Thomas J. Moses**
Brydon Hugo & Parker
135 Main Street, 20th Floor
San Francisco, CA 94105
(415) 808-0300
Fax: (415) 808-0333
Email: tmoses@bhplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward R. Hugo**
Brydon Hugo & Parker
135 Main Street, 20th Floor
San Francisco, CA 94105
(415) 808-0300
Fax: (415) 808-0333
Email: ehugo@bhplaw.com
*ATTORNEY TO BE NOTICED*

**Paul M. Bessette**
Brydon Hugo & Parker
135 Main Street

20th Floor
San Francisco, CA 94105
415-808-0300
Fax: 415-808-0333
*ATTORNEY TO BE NOTICED*

**Defendant**

**Owens-Illinois, Inc.**

**Defendant**

**Parker-Hannifin Corporation**
*Successor*
Sacomo Sierra

**Defendant**

**Quintec Industries, Inc.**

**Defendant**

**Rapid-American Corporation**

**Defendant**

**Ric-Wil, Incorporated**

**Defendant**

**Santa Fe Braun, Inc.**
*Successor*
C.F. Braun & Co.

**Defendant**

**Sequoia Ventures, Inc.**

**Defendant**

**Southern California Edison Company**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 03/08/2011 | 1 | NOTICE OF REMOVAL from Alameda County Superior Court. Their case number is RG10544220. (Filing fee $350 receipt number 34611057226). Filed by National Steel and Shipbuilding Company. (mjj2, COURT STAFF) (Filed on 3/8/2011) (Entered: 03/08/2011) |
| 03/08/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 6/7/2011. Case Management Conference set for 6/14/2011 03:00 PM in Courtroom E, 15th Floor, San Francisco. (Attachments: # 1 Standing Order, # 2 Standing Order re Case Management Conference, # 3 Standing Order for all Judges) (mjj2, COURT STAFF) (Filed on 3/8/2011) (Entered: 03/08/2011) |
| 03/08/2011 | 3 | NOTICE of Potential Tag-Along Action by National Steel and Shipbuilding |

|  |  | Company (mjj2, COURT STAFF) (Filed on 3/8/2011) (Entered: 03/08/2011) |
|---|---|---|
| 03/08/2011 | 4 | Disclosure Statement and Certificate of Interested Entities by National Steel and Shipbuilding Company identifying Corporate Parent NAASCO Holdings Incorporated, Corporate Parent General Dynamics Corporation for National Steel and Shipbuilding Company. (mjj2, COURT STAFF) (Filed on 3/8/2011) (Entered: 03/08/2011) |
| 03/08/2011 |  | CASE DESIGNATED for Electronic Filing. (mjj2, COURT STAFF) (Filed on 3/8/2011) (Entered: 03/08/2011) |
| 03/09/2011 | 5 | Declination to Proceed Before a U.S. Magistrate Judge by National Steel and Shipbuilding Company. (Attachments: # 1 Affidavit Certificate of Service) (Moses, Thomas) (Filed on 3/9/2011) (Entered: 03/09/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/09/2011 11:08:37 | | |
| **PACER Login:** bh1524 | **Client Code:** | 4385-0277 |
| **Description:** Docket Report | **Search Criteria:** | 3:11-cv-01073-EDL |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:** 3M COMPANY fka MINNESOTA MINING
*(AVISO AL DEMANDADO):* AND MANUFACTURING COMPANY,
ALLIED PACKING & SUPPLY, INC.,
ASBESTOS CORPORATION, LTD.,
ATLANTIC RICHFIELD COMPANY,
CHEVRON U.S.A. INC.,

(See ADDITIONAL PARTIES ATTACHMENT)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
WILLIAM ANDREW SMITH

| FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|
| **FILED**<br>**ALAMEDA COUNTY**<br>OCT 2 9 2010<br>CLERK OF THE SUPERIOR COURT<br>BY YASMIN SINGH, Deputy |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of the State of California<br>County of Alameda<br>1225 Fallon Street<br>Oakland, CA 94612-4280 | CASE NUMBER:<br>*(Número del Caso):*<br>RG10544220 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dean A. Hanley, Esq. (SBN 169507)          (510) 559-9980   (510) 559-9970
Benjamin D. Goldstein, Esq. (SBN 231699)
Paul & Hanley LLP
Berkeley, CA 94710

DATE:  10/29/10      PAT S. SWEETEN      Clerk, by _____ , Deputy
*(Fecha)*                                *(Secretario)*                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* National Steel and Shipbuilding Company

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |

**SUM-200(A)**

| SHORT TITLE:  WILLIAM ANDREW SMITH v. 3M COMPANY, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➤ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➤ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached.".

List additional parties (*Check only one box. Use a separate page for each type of party.*):

☐ Plaintiff  ☒ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

CROWN CORK & SEAL COMPANY, INC. individually and as successor-in-interest to
     MUNDET CORK COMPANY,
GENERAL ELECTRIC COMPANY,
LOS ANGELES RUBBER COMPANY,
METALCLAD INSULATION CORPORATION,
NATIONAL STEEL AND SHIPBUILDING COMPANY,
OWENS-ILLINOIS, INC.,
PARKER-HANNIFIN CORPORATION, As Successor-In-Interest to Sacomo Sierra,
QUINTEC INDUSTRIES, INC.,
RAPID-AMERICAN CORPORATION,
RIC-WIL, INCORPORATED,
SANTA FE BRAUN, INC. as successor-in-interest to C.F. BRAUN & CO.,
SEQUOIA VENTURES, INC.,
SOUTHERN CALIFORNIA EDISON COMPANY,

and DOES 1 - 800.

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Legal
Solutions
ⓡ Plus

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Dean A. Hanley, Esq. (SBN 169507)x<br>Benjamin D. Goldstein, Esq. (SBN 231699)<br>Paul & Hanley LLP<br>1608 Fourth Street, Suite 300<br>Berkeley, CA 94710<br>TELEPHONE NO.: (510) 559-9980   FAX NO.: (510) 559-9970<br>ATTORNEY FOR (Name): Plaintiff | ENDORSED<br>—FILED<br>ALAMEDA COUNTY<br>OCT 2 9 2010<br>CLERK OF THE SUPERIOR COURT<br>BY YASMIN SINGH, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612-4280
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME: WILLIAM ANDREW SMITH v. 3M COMPANY, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER RG10544220 |
|---|---|---|
| [X] Unlimited  [ ] Limited<br>(Amount         (Amount<br>demanded      demanded is<br>exceeds $25,000) $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

Items 1-6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[X] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
 a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
 b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
 c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action (specify):

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: October 28, 2010

Dean A. Hanley, Esq. (SBN 169507)x
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Legal Solutions

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

1 | Dean A. Hanley, Esq. (State Bar No. 169507)
Benjamin D. Goldstein, Esq. (State Bar No.231699) **ENDORSED**
2 | Rohit S. Kodical, Esq. (State Bar No.215497) **FILED**
**ALAMEDA COUNTY**
3 | PAUL & HANLEY LLP
1608 Fourth Street, Suite 300          OCT 2 9 2010
4 | Berkeley, California 94710
Telephone:    (510) 559-9980       **CLERK OF THE SUPERIOR COURT**
5 | Facsimile:    (510) 559-9970       **BY YASMIN SINGH, Deputy**

6 | Attorneys for Plaintiffs

7 |

8 |

9 |

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | COUNTY OF ALAMEDA - COURT OF UNLIMITED JURISDICTION

12 |

WILLIAM ANDREW SMITH,                          Case No. RG10544200

Plaintiff,                                      **COMPLAINT
FOR PERSONAL
INJURY - ASBESTOS**

vs.

3M COMPANY fka MINNESOTA MINING AND
MANUFACTURING COMPANY,
ALLIED PACKING & SUPPLY, INC.,
ASBESTOS CORPORATION, LTD.,
ATLANTIC RICHFIELD COMPANY,
CHEVRON U.S.A. INC.,
CROWN CORK & SEAL COMPANY, INC.
individually and as successor-in-interest to
MUNDET CORK COMPANY,
GENERAL ELECTRIC COMPANY,
LOS ANGELES RUBBER COMPANY,
METALCLAD INSULATION CORPORATION,
NATIONAL STEEL AND SHIPBUILDING
COMPANY,
OWENS-ILLINOIS, INC.,
PARKER-HANNIFIN CORPORATION, As
Successor-In-Interest to Sacomo Sierra,
QUINTEC INDUSTRIES, INC.,
RAPID-AMERICAN CORPORATION,
RIC-WIL, INCORPORATED,
SANTA FE BRAUN, INC. as successor-in-interest
to C.F. BRAUN & CO.,
SEQUOIA VENTURES, INC.,
SOUTHERN CALIFORNIA EDISON
COMPANY,

1  and DOES 1 – 800,                                              )
                                                                  )
2        Defendants.                                              )
                                                                  )
3  _____ )

4                          **GENERAL ALLEGATIONS**

5       COMES NOW plaintiff WILLIAM ANDREW SMITH and complain and allege as

6  follows:

7       1.      Plaintiff WILLIAM ANDREW SMITH has been diagnosed with mesothelioma.

8       2.      Prior to his diagnosis, plaintiff WILLIAM ANDREW SMITH used, handled

9  and/or was otherwise exposed to asbestos as alleged hereinafter.

10      3.      Plaintiff WILLIAM ANDREW SMITH'S cumulative exposure to asbestos as a

11 result of acts and omissions of defendants and the defective products as hereinafter alleged,

12 individually and together, was a substantial factor in increasing plaintiff's risk of mesothelioma

13 and other related injuries and therefore a legal cause of plaintiff's injuries and damages.

14      4.   Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing

15 products presented any risk of injury and/or disease.  Plaintiff took a regular retirement from his

16 regular occupation in approximately August 11, 1991.

17      5.      Each of the herein named defendants is liable for its own tortuous conduct and/or

18 the tortuous conduct of an "alternate entity" as hereinafter defined. Defendants, and each of

19 them, including but not limited to the following defendants, are liable for the acts of their

20 "alternate entity," and each of them, in that there has been a corporate name change, defendant is

21 the successor by merger or successor by other acquisition resulting a  virtual destruction of

22 plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have

23 acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such

24 "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy

25 against each such "alternate entity"; each such defendant has the ability to assume the risk-

spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| 3M COMPANY | MINNESOTA MINING AND MANUFACTURING COMPANY |
| CROWN CORK & SEAL COMPANY, INC. | MUNDET CORK COMPANY |
| PARKER-HANNIFIN CORPORATION | Sacomo Sierra |
| SANTA FE BRAUN, INC. | C.F. BRAUN & CO. |

6.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 800, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiffs will amend their complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages thereby to the plaintiffs, as hereinafter alleged.

7.    At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venturer of their co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

8.    Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, defendants on Exhibits B-C and DOES 1 through 800, inclusive, were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them,

1  were and are authorized to do and are doing business in the State of California, and that said

2  defendants have regularly conducted business in the County of Alameda, State of California.

3        9.    Plaintiff WILLIAM ANDREW SMITH is informed and believes, and thereon

4  alleges, that progressive lung disease, cancer and other serious diseases are caused by inhalation

5  of asbestos fibers without perceptible trauma and that said disease results from exposure to

6
7  asbestos and asbestos-containing products over a period of time.

8        10.    As a direct and proximate result of the conduct as hereinafter alleged, plaintiff

9  WILLIAM ANDREW SMITH suffered permanent injuries, including, but not limited to, cancer

10  and other lung damage, and the mental and emotional distress attendant thereto, from the effect

11  of exposure to asbestos fibers, all to his general damage in the sum in excess of the jurisdictional

12  limits of the Court of Limited Jurisdiction.

13        11.    As a direct and proximate result of the conduct as hereinafter alleged, plaintiff

14  WILLIAM ANDREW SMITH has incurred and will continue in the future to incur liability for

15  physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical

16
17  treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiff

18  prays leave to amend this complaint accordingly when the true and exact cost thereof is

19  ascertained.

20        12.    As a further direct and proximate result of the conduct as hereinafter alleged,

21  plaintiff WILLIAM ANDREW SMITH has incurred, and will incur, loss of income, wages,

22  profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full

23  nature and extent of which are not yet known to plaintiff; and leave is requested to amend their

24  complaint to conform to proof at the time of trial.

25
26        13.    As a result of the conduct as hereinafter alleged, plaintiff WILLIAM ANDREW

27  SMITH has been caused great pain and suffering.

28  ///

14.     As to defendants GENERAL ELECTRIC COMPANY only, plaintiffs exclude claims arising from exposure to turbines supplied under contract with the United States government at military and/or other government jobsites.

## FIRST CAUSE OF ACTION
### (Negligence)

**PLAINTIFF WILLIAM ANDREW SMITH COMPLAINS OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-300 AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:**

15.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

16.     At all times herein mentioned, each of the named defendants and DOES 1 through 300 was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos.

17.     At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users,

consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons."

18.     Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

19.     Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

20.     Defendants, their "alternate entities" and each of them, were aware of their asbestos and asbestos-containing products' defect prior to placing their products in the stream of commerce, but failed to warn and/or failed to adequately warn plaintiff, plaintiff's employers, and others of the known hazards associated with their products.

21.     Defendants, their "alternate entities" and each of them, became aware of their asbestos and asbestos-containing products' defect after their asbestos product was placed in the stream of commerce, but unreasonably failed to recall or retrofit their products, nor to warn and/or failed to adequately warn plaintiff, plaintiff's employers, and others of the known hazards associated with their products.

///

22. Plaintiff used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit A, attached hereto and incorporated by reference herein and/or by the work of others at said locations.

23. With regard to asbestos-containing friction brake products, which products were defective as alleged herein, plaintiff further alleges defendants produced a substantial share of the market during the time in question. Brake products produced by each of said defendants were fungible, in that they were interchangeable with brake products produced by the other said defendants. Plaintiff's primary exposure to asbestos fibers from brake products came during inspection and replacement of worn brake products, and the producers of the brake products that caused plaintiff's injuries cannot be identified, through no fault of plaintiff.

24. The aforementioned asbestos-containing brake products were toxic and carcinogenic and were used in conjunction with one another, all resulting in cumulative injury and harm to the plaintiff herein. Plaintiff therefore alleges it is the burden of the defendants, their "alternate entities," and each of them, to prove the asbestos and asbestos-containing products manufactured, sold, supplied, applied or distributed by them were not the cause of plaintiff's injury in accordance with the holdings of Sindell v. Abbott Laboratories (1980) 26 Cal.3d 588; Wheeler v. Raybestos-Manhattan (1992) 8 Cal.App. 4th 1152 and Pereira v. Dow Chemical Company, Inc. (1982) 129 Cal.App.3d 865.

25. Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

///

///

26.   Defendants' conduct and defective products as described in this cause of action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

27.   Furthermore, the conduct of defendants, their "alternate entities" and each of them in continuing to market and sell products which they knew were dangerous to plaintiff and the public without adequate warnings or proper use instructions was done in a conscious disregard and indifference to the safety and health of plaintiff and others similarly situated.

28.   In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, failing to recall or retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their "alternate entities," and each of them, and which knowledge was obtained by said defendants, their "alternate entities," and each of them on or before 1930, and thereafter.

29.   On or before 1930, and thereafter, said defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their "alternate entities," and each of them, knew that members of the general

public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

30. The above-referenced conduct of said defendants, their "alternate entities," and each of them, was motivated by the financial interest of said defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

31. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

32. The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

///

1    WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

2  each of them, as hereinafter set forth.

3

4                        ## SECOND CAUSE OF ACTION
                             ### (Strict Liability)

5      AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

6  ACTION FOR STRICT LIABILITY, PLAINTIFF WILLIAM ANDREW SMITH
   COMPLAINS OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-300 AND EACH OF

7  THEM, AND ALLEGES AS FOLLOWS:

8      33.    Plaintiff incorporates herein by reference, as though fully set forth herein, each

9  and every paragraph of the General Allegations above.

10     34.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

11 containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

12 containing products presented any risk of injury and/or disease.

13
       35.    Defendants' conduct and defective products as described in this cause of action

14
   were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by

15
   plaintiff.

16
       36.    Furthermore, the conduct of defendants, their "alternate entities" and each of them

17

18 in continuing to market and sell products which they knew were dangerous to plaintiff and the

19 public without adequate warnings or proper use instructions was done in a conscious disregard

20 and indifference to the safety and health of plaintiff and others similarly situated.

21
       37.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

22
   to test, warning or failing to warn, failing to recall or retrofit, labeling, assembling, distributing,

23
   leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting

24
   for installation, repairing, marketing, warranting, rebranding, manufacturing for others,

25
26 packaging and advertising asbestos and asbestos-containing products, defendants, their "alternate

27 entities," and each of them, did so with conscious disregard for the safety of "exposed persons"

28

1  who came in contact with said asbestos and asbestos-containing products, in that said defendants,

2  their "alternate entities," and each of them, had prior knowledge that there was a substantial risk

3  of injury or death resulting from exposure to asbestos or asbestos-containing products, including,

4  but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in

5  part, from scientific studies performed by, at the request of, or with the assistance of, said

6  defendants, their "alternate entities," and each of them, and which knowledge was obtained by

7  said defendants, their "alternate entities," and each of them on or before 1930, and thereafter.

8

9      38.     On or before 1930, and thereafter, said defendants, their "alternate entities" and

10  each of them, were aware that members of the general public and other "exposed persons," who

11  would come in contact with their asbestos and asbestos-containing products, had no knowledge

12  or information indicating that asbestos or asbestos-containing products could cause injury, and

13  said defendants, their "alternate entities," and each of them, knew that members of the general

14  public and other "exposed persons," who came in contact with asbestos and asbestos-containing

15  products, would assume, and in fact did assume, that exposure to asbestos and asbestos-

16  containing products was safe, when in fact said exposure was extremely hazardous to health and

17  human life.

18

19      39.     The above-referenced conduct of said defendants, their "alternate entities," and

20  each of them, was motivated by the financial interest of said defendants, their "alternate entities,"

21  and each of them, in the continuing, uninterrupted research, design, modification, manufacture,

22  fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale,

23  inspection, installation, contracting for installation, repair, marketing, warranting, rebranding,

24  manufacturing for others, packaging and advertising of asbestos and asbestos-containing

25  products. In pursuance of said financial motivation, said defendants, their "alternate entities,"

26  and each of them, consciously disregarded the safety of "exposed persons" and in fact were

27  consciously willing and intended to permit asbestos and asbestos-containing products to cause

28

injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

40.  Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

41.  The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

42.  At all times herein mentioned, each of the named defendants and DOES 1 through 300 was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos.

43.  Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft

and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

44. Plaintiff used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit A, attached hereto and incorporated by reference herein and/or by the work of others at said locations.

45. With regard to asbestos-containing friction brake products, which products were defective as alleged herein, plaintiff further alleges Defendants produced a substantial share of the market during the time in question. Brake products produced by each of said defendants were fungible, in that they were interchangeable with brake products produced by the other said defendants. Plaintiff's primary exposure to asbestos fibers from brake products came during inspection and replacement of worn brake products, and the producers of the brake products that caused plaintiff's injuries cannot be identified, through no fault of plaintiff.

46. The aforementioned asbestos-containing brake products were toxic and carcinogenic and were used in conjunction with one another, all resulting in cumulative injury and harm to the plaintiff herein. Plaintiff therefore alleges it is the burden of the defendants, their "alternate entities," and each of them, to prove the asbestos and asbestos-containing products manufactured, sold, supplied, applied or distributed by them were not the cause of plaintiff's injury in accordance with the holdings of Sindell v. Abbott Laboratories (1980) 26 Cal.3d 588; Wheeler v. Raybestos-Manhattan (1992) 8 Cal.App. 4th 1152 and Pereira v. Dow Chemical Company, Inc. (1982) 129 Cal.App.3d 865.

///

47.    Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

48.    Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that said products did not perform as safely as expected by an ordinary consumer when used in an intended or reasonably known manner as said products did, in fact, release asbestos fibers and asbestos dust causing serious disease and/or death through inhalation of said asbestos. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products were intended to reach the ultimate consumer in the same condition as it left defendants. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons," including plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

49.    "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which plaintiff and others similarly situated were exposed.

50.    The gravity of the potential harm resulting from the use of Defendants' defective products as described in this cause of action, and the likelihood such harm would occur, outweighed the cost of feasible alternative designs, including providing adequate warning of such potential harm.

51.    Defendants' defective products as described in this cause of action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

///

1  WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

2  each of them, as hereinafter set forth.

3

### THIRD CAUSE OF ACTION
4  (False Representation Under Restatement of Torts Section 402-B)

5  AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF
6  ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS
   SECTION 402-B, PLAINTIFF WILLIAM ANDREW SMITH COMPLAINS OF
7  DEFENDANTS ON EXHIBIT "B", AND DOES 1-300 AND EACH OF THEM, AND
   ALLEGES AS FOLLOWS:

8
   52.    Plaintiff hereby incorporates by reference, as though fully set forth herein, each
9
10  and every allegation contained in the General Allegations and the First (Negligence) and Second

11  (Strict Liability) Causes of Action.

12      53.    At the aforementioned time when defendants, their "alternate entities," and each

13  of them, researched, manufactured, fabricated, designed, modified, tested or failed to test,

14  inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered

15  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

16  marketed, warranted, rebranded, manufactured for others, packaged and advertised the said

17  asbestos and asbestos-containing products, as herein above set forth, the defendants, their

18
19  "alternate entities," and each of them, expressly and impliedly represented to members of the

20  general public, including the purchasers and users of said product, and other "exposed persons,"

21  including the plaintiff herein and plaintiff's employers, that asbestos and asbestos-containing

22  products, were of merchantable quality, and safe for the use for which they were intended.

23      54.    The purchasers and users of said asbestos and asbestos-containing products, and

24  other "exposed persons," including the plaintiff and plaintiff's employers, relied upon said

25  representations of defendants, their "alternate entities," and each of them, in the selection,

26  purchase and use of asbestos and asbestos-containing products.

27  ///

28

55.     Said representations by defendants, their "alternate entities," and each of them, were false and untrue, and defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products, were not safe for their intended use, nor were they of merchantable quality as represented by defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including plaintiff herein.

56.     As a direct and proximate result of said false representations by defendants, their "alternate entities," and each of them, plaintiff sustained the injuries and damages herein above set forth.

57.     The herein-described conduct of said defendants was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons" including plaintiff.  Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

///

///

# FOURTH CAUSE OF ACTION
### (Intentional Tort)

**AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFF WILLIAM ANDREW SMITH COMPLAINS OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-300 AND EACH OF THEM, AND ALLEGES:**

58.   Plaintiff, by this reference, hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the General Allegations and the First (Negligence) and Third (False Representation) Causes of Action herein excepting therefrom allegations pertaining to negligence.

59.   At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed plaintiff a duty, as provided for in Section 1708 through 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) and, more specifically, included suggestions of fact which were not true and which defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned Civil Code sections.

///

///

///

60.   Since on or before 1930, the defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiff's First Cause of Action were and are hazardous to the health and safety of plaintiff, and others in plaintiff's position working in close proximity with such materials. The defendants, their "alternate entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time. With intent to deceive plaintiff, and others in plaintiff's position, and with intent that plaintiff and such others should be and remain ignorant of such facts with intent to induce plaintiff and such others to alter their positions to their injury and/or risk and in order to gain advantages, the following acts occurred:

a)   Defendants, their "alternate entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of plaintiff and others in plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein when the knowledge of such hazards was existing and known to defendants, their "alternate entities," and each of them, since 1924. By not labeling such materials as to their said hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to plaintiff that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true and defendants, their "alternate entities," and each of them, did not believe it to be true;

b)   Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such

information to be disseminated in a manner which would given general notice to the public and knowledge of the hazardous nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose such information;

c) Defendants, their "alternate entities," and each of them, sold the aforementioned products and materials to plaintiff's employer and others without advising plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their "alternate entities," and each of them, caused to be positively asserted to plaintiff that which was not true and that which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, to wit, that it was safe for plaintiff to work in close proximity to such materials;

d) Defendants, their "alternate entities," and each of them, suppressed from plaintiff medical and scientific data and knowledge of the results of studies including, but not limited to, the information and knowledge of the contents of the Lanza report. Although bound to disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change her report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

e) Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the

aforementioned products and materials, thereby misleading plaintiff by the suggestions and deceptions set forth above in their cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in their committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to plaintiff at this time;

f)      Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities," and each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to defendant herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead plaintiff. Such facts did mislead plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving plaintiff the true facts concerning such knowledge of danger, which defendants, their "alternate entities," and each of them, were bound to disclose;

///

g)      Defendants, their "alternate entities," and each of them, failed to warn plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

h)      Defendants, their "alternate entities," and each of them, failed to provide plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the plaintiff and others applying and installing such material;

i)      Defendants, their "alternate entities," and each of them, when under a duty to so disclose, concealed from plaintiff the true nature of the industrial exposure of plaintiff and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "alternate entities," and each of them, also concealed from plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

j)      Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by plaintiff and plaintiff's employers so that said physicians could examine, diagnose and treat plaintiff and others who were

exposed to asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

k) Defendants, their "alternate entities," and each of them, failed to provide adequate information to physicians and surgeons retained by plaintiff's employers and their predecessor companies, for purposes of making physical examinations of plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

61. Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file First Report of Occupational Injury of Illness regarding plaintiff's injuries, as required by law, and did willfully fail and omit to file report of injury and occupational disease with the State of California. Plaintiff was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

62. Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duty to inform plaintiff about the true facts, and knowing the plaintiff did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause plaintiff to remain unaware of the true facts and to induce plaintiff to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

///

///

///

### FIFTH CAUSE OF ACTION
(Premise Owner/Contractor Liability)

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF WILLIAM ANDREW SMITH COMPLAINS OF DEFENDANTS ON EXHIBIT "C", AND DOES 301-500, (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

63.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

64.     Plaintiff used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit A, attached hereto and incorporated by reference herein.

65.     At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants was an entity and/or successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity, hereinafter collectively be called "alternate entities," causing certain asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them.

66.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed on Exhibit A where Plaintiff was present. The information provided on Exhibit A is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, plaintiff might have been present at these or other Premises Owner/Contractor

1  Liability Defendants' or their "alternate entities'" premises at other locations and on other

2  occasions.

3      67.    Prior to and at said times and places, said Premises Owner/Contractor Liability

4  Defendants, their "alternate entities" and each of them, respectively, caused certain asbestos-

5  containing insulation, other building materials, products and toxic substances to be constructed,

6  installed, maintained, used, supplied, replaced, repaired, disturbed and/or removed on each of the

7  aforesaid respective premises, by their own workers and/or by various contractors and/or

8  subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other

9  toxic substances into the ambient air and thereby created a hazardous and unsafe condition to

10  plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at

11  said premises.

12

13      68.    At all times mentioned herein, said Premises Owner/Contractor Liability

14  Defendants, their "alternate entities" and each of them, knew or in the exercise of ordinary and

15  reasonable care should have known, that the foregoing conditions and activities created a

16  dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to

17  plaintiff and other workers or persons so exposed present on each of the aforesaid respective

18  premises.

19

20      69.    At all times relevant herein, plaintiff entered said premises and used or occupied

21  each of said respective premises as intended and for the benefit and advantage of each of the

22  respective Premises Owner/Contractor Liability Defendants or their "alternate entities" and at

23  each of their request and invitation. In so doing, plaintiff was exposed to dangerous quantities of

24  asbestos fibers and other toxic substances released into the ambient air by the aforesaid

25  hazardous conditions and activities managed, maintained, initiated, and/or otherwise created,

26  controlled or caused by said Premises Owner/Contractor Liability Defendants, their "alternate

27  entities" and each of them.

28

70.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

71.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, remained in control of the premises where plaintiff worked.

72.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them,  owed to plaintiff  and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

73.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

74.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

75.     Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired, disturbed and/or removed on each of

1  their aforesaid respective premises, by their own workers and/or by employing various

2  contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other

3  toxic substances into the ambient air and thereby injured plaintiff.

4       76.   At all times mentioned herein, said Premises Owner/Contractor Liability

5  Defendants, their "alternate entities" and each of them, should have recognized that the work of

6  said contractors would create during the progress of the work, dangerous, hazardous, and unsafe

7  conditions which could or would harm plaintiff and others unless special precautions were taken.

8  The Premises Owner/Contractor Defendants knew or should have known that the work required

9  special procedures to be done safely.  The Premises Owner/Contractor Defendants were aware or

10  should have been aware that such special procedures were not taken.

11       77.   In part, plaintiff was exposed to dangerous quantities of asbestos fibers and other

12  toxic substances by reason of such contractors' failure to take the necessary precautions.

13       78.   The work of contractors on premises controlled by the Premises Owner/Contractor

14  Defendants, their "alternate entities" and each of them, created an unsafe premise and an unsafe

15  work place by reason of the release of dangerous quantities of toxic substances including but not

16  limited to asbestos.

17       79.   The unsafe premise or work place was created, in part, by the negligent conduct of

18  the contractors employed by the Premises Owner/Contractor Defendants, their "alternate

19  entities" and each of them. Said negligent conduct includes but is not limited to:

20            a)   Failure to warn of asbestos and other toxic dusts;

21            b)   Failure to suppress the asbestos-containing or toxic dusts;

22            c)   Failure to remove the asbestos-containing and toxic dusts through use of

23  ventilation or appropriate means;

24            d)   Failure to provide adequate breathing protection, i.e., approved respirators or

25  masks;

1        e)   Failure to inspect and/or test the air;

2        f)   Failure to provide medical monitoring.

3      80.    The Premises Owner/Contractor Defendants' and their "alternate entities" duty to

4 maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions

5 are non-delegable; said duties arise out of common law, Civil Code §1714, and Labor Code

6 §6400, et seq., or Health and Safety Code §40.200, et seq., and regulations promulgated

7 thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach

8 of said duties whether by themselves or others.

9

10      81.    Prior to and at said times and places, said Premises Owner/Contractor Liability

11 Defendants, their "alternate entities" and each of them, were subject to certain ordinances,

12 statutes, and other government regulations promulgated by the United States Government, the

13 State of California, and others, including but not limited to the General Industry Safety Orders

14 promulgated pursuant to California Labor Code §6400 and the California Administrative Code

15 under the Division of Industrial Safety, Department of Industrial Relations, including but not

16 limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106,

17 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic

18 substances under Appendix A, Table 1 of said Safety Orders. Additionally, said Premises

19 Owner/Contractor Liability Defendants, their "alternate entities" and each of them, were required

20 to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust

21 and other toxic fumes or substances as prescribed by Title 40 Code of Federal Regulations,

22 Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants and

23 under the regulations promulgated by California regional Air Quality Management Districts as

24 empowered by California Health and Safety Code §40.200, et seq., , including but not limited to

25 South Coast Air Quality Management District Regulation XIV, Rules 1403 and 1414; Bay Area

26 Air Quality Management District Regulation 11, Rules 2 and 14; Mojave Desert Air Quality

1  Management District, Regulation IX, Regulation X, Rule 1000 and Notification (ATCMs)

2  thereto as revised 11/27/00); Imperial Air Quality Management District, Regulation X, Rules

3  1001 and 1002; San Diego Air Quality Management District, Regulation IV, Rules 50, 50.1, 54,

4  54.1, Regulation X, Subpart A, Regulation XI, Subparts A and M; Antelope Valley Air Quality

5  Management District, Regulation X, Rule 1000, Regulation XIV, Rule 1414; Ventura County

6  Air Pollution Control District, Regulation IV, Rule 62.7, Rule 73; Santa Barbara County Air

7  Pollution Control District, Regulation X, 1001; San Luis Obispo County Air Pollution Control

8  District, Regulation IV, Rule 412, Regulation VII, Rule 701; Kern Air County Quality

9  Management District, Regulation IV, Rules 402 and 423; Great Basin Unified Air Pollution

10  Control District, Regulation IV, Rule 430, Regulation X, Rule 1002; San Joaquin Valley Unified

11  Air Pollution Control District, Regulation IV, Rule 4002, Regulation VII, Rule 7050; Monterey

12  Bay Unified Air Pollution Control District, Regulation V, Rule 436, Regulation X, Rule 1008;

13  Mariposa County Air Pollution Control District, Regulation IX, Rule 904, Regulation X, Rule

14  1001; Tuolumne County Air Pollution Control District, Regulation V, Rule 500, et seq,

15  Regulation IX, Rule 904; Calaveras County Air Pollution Control District, Regulation IX, Rule

16  906, Regulation X, Rule 1001; Amador County Air Pollution Control District, Regulation V,

17  Rule 500 et seq.; Sacramento Metropolitan Air Quality Management District, Regulation IX,

18  Rules 901, 902, 904; El Dorado County Air Quality Management District, Regulation II, Rule

19  223, 223-1, and 223-2; Yolo-Solano air Quality Management District, Regulation III, Rules 3-8,

20  Regulation IX, Rules 9-8 and 9-9; Feather River Air Quality Management District, Regulation X,

21  Rule 10, et seq, Regulation XI, Rule 11-2; Placer County Air Pollution Control District,

22  Regulation II, Rule 224, Regulation V, Rule 507, Rule IX, Rule 905; Northern Sierra Air Quality

23  Management District, Regulation IX, Rule 904; Northern Sonoma County Air Pollution District,

24  Chapter IV, Rule 1-4-492; Colusa County Air Pollution Control District, Regulation II, 2-43,

25  Regulation III, Rules 3-17 and 3-18, and Appendix D; Lake County Air Quality Management

26

27

28

District, Chapter II, Sections 450 and 4671; Mendocino County Air Quality Management District, Chapter IV, Rules 1-430, 1-492; Glenn County Air Pollution Control District, Articles III and IV; Butte County Air Quality Management District, Rules 1000, 1101, 430; Tehama County Air Pollution Control District, Regulations IV and VI; Lassen County Air Pollution Control District, Regulation IV, Rule 421 and Appendix C;  Shasta County Air Quality Management District, Rules 2-1, 3-22, and 5, North Coast Unified Air Quality Management District Regulation 1, Rules 430 and 492, and Regulation 3, Rules 3-100 et seq.; Siskiyou County Air Pollution Control District, Regulation IV, Rule 4-13, Regulation VIII, Rule 8-7; Modoc County Air Pollution Control District, Regulation IV, Rule 4-13, Regulation VIII, Rule 8-7;

    a)    Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

    b)    Failing to segregate work involving the release of asbestos or other toxic dusts;

    c)    Failing to suppress dust using prescribed ventilation techniques;

    d)    Failing to suppress dust using prescribed "wet down" techniques;

    e)    Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

    f)    Failing to provide approved respiratory protection devices;

    g)    Failing to ensure "approved" respiratory protection devices were used properly;

    h)    Failing to provide for an on-going health screening program for those exposed to asbestos on the premises;

    i)    Failing to provide adequate housekeeping and clean-up of the work place;

j)      Failing to properly warn of the hazards associated with asbestos as required by these statutes;

k)      Failing to properly report renovation and disturbance of asbestos-containing materials, including but not limited to BAAQMD Regulation 11-2-401 and/or SCQAMD Rule 1403 D(1);

l)      Failing to have an asbestos removal supervisor as required by regulation;

m)      Failing to get approval for renovation as required by statutes; and

n)      Failing to maintain records as required by statute.

82.    Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, were the "statutory employer" of Plaintiff as defined by the California Labor Code and California case law.

83.    Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the violation of said regulations, ordinances or statutes by said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them.

84.    At all times mentioned herein, plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

85.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

///

86.     As a legal consequence of the foregoing, plaintiff developed an asbestos-related illness, which caused great injury, disability as previously set forth, and plaintiff has suffered damages as herein alleged.

WHEREFORE, plaintiff prays judgment against said Premises Owner/Contractor Liability Defendants, their "alternate entities," and each of them, as hereinafter set forth.

### SIXTH CAUSE OF ACTION
### (General Negligence – Premise Owner/Contractor)

**AS AND FOR A SIXTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR GENERAL NEGLIGENCE, PLAINTIFF WILLIAM ANDREW SMITH COMPLAINS OF DEFENDANTS ON EXHIBIT "C", AND DOES 301-500 AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

87.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

88.     Prior to and during all relevant times defendants' employed workers in areas where defendants owned, maintained, controlled, managed and/or conducted business activities where plaintiff WILLIAM ANDREW SMITH worked and/or spent time.

89.     At all times herein mentioned, defendants' selected, supplied, and distributed asbestos containing materials to their employees for use during their regular work activities and said employees disturbed asbestos containing materials.

90.     Defendants were negligent in selecting, supplying, distributing and disturbing the asbestos containing products in that said products were unsafe in that they released asbestos fibers and dust into air when used which would be inhaled by plaintiff and settled onto plaintiff's clothes, shoes, hands, face, hair, skin, and other body parts thus creating a situation whereby workers and by-standers including plaintiff would be exposed to dangerous asbestos dust.

///.

///

91. The asbestos and asbestos-containing materials described herein were unsafe in that handling and disturbing products which contain asbestos causes the release of asbestos fibers into the air, and the inhalation of asbestos fibers causes serious disease and death. Here, the handling of the above-described asbestos containing materials by defendants' employees, as required by their employment and occurring during the course and scope of their employment, did, in fact, cause personal injuries, including mesothelioma and other lung damage, to exposed persons, including plaintiff.

92. At all times herein mentioned, defendants knew or should have known that its employees and bystanders thereto, including plaintiff, frequently encountered asbestos-containing products and materials during the course and scope of their work activities.

93. At all times herein mentioned, defendants knew or should have known that the asbestos-containing materials encountered by its employees and bystanders thereto including plaintiff, were unsafe in that harmful asbestos fibers were released during the use, handling, breaking, or other manipulation of asbestos-containing products and materials, and that once released, asbestos fibers can be inhaled, and can alight on the clothes, shoes, skin, hair, and body parts of those exposed, where further activity causes the fibers to once again be released into the air where they can be inhaled, all of which causes serious disease and/or death.

94. At all times herein mentioned, defendants, and each of them knew, or in the exercise of reasonable diligence should have known, that absent adequate training and supervision, their employees and bystanders thereto including plaintiff were neither qualified nor able to identify asbestos-containing products nor to identify the hazardous nature of their work activities involving asbestos-containing products.

95. At all times herein mentioned, plaintiff was unaware of the dangerous condition and unreasonable risk of personal injury created by the aforesaid presence and use of asbestos-containing products and materials.

96.     At all time herein mentioned, defendants, and each of them knew, or in the exercise of reasonable diligence should have known, that workers and bystanders thereto, including plaintiff would bring dangerous dust home from the workplace and contaminate their homes, potentially causing injury to others off the premises.

97.     At all times herein mentioned, defendants had a duty to use due care in the selection, supply, distribution and disturbance of asbestos containing products and materials to its employees, to adequately instruct, train, and supervise their employees and to implement adequate safety policies and procedures to protect workers and persons encountering those workers, including plaintiff, from suffering injury or death as a result of the asbestos hazards encountered and created by the work of defendants' employees.

98.     Defendants' duties as alleged herein exist and existed independently of defendants' duties to maintain their premises in reasonably safe condition, free from concealed hazards.

99.     Defendants negligently selected, supplied, and distributed the asbestos containing materials and failed to adequately train or supervise their employees to identify asbestos-containing products and materials; to ensure the safe handling of asbestos-containing products and materials encountered during the course of their work activities; and to guard against inhalation of asbestos fibers and against the inhalation of asbestos fibers by those who would come into close contact with them after they had used, disturbed, or handled, said asbestos-containing products and materials during the course and scope of their employment by defendants.

100.    Defendants failed to warn its employees and bystanders thereto including plaintiff, of the known hazards associated with asbestos and the asbestos materials they were using and/or disturbing.

///

101.    As a direct and proximate result of the conduct of defendants in selecting,

supplying, distributing and disturbing asbestos-containing materials and failing to adequately

train and supervise their employees and failing to adopt and implement adequate safety policies

and procedures as alleged herein, plaintiff became exposed to and inhaled asbestos fibers, which

was a substantial factor causing decedent to develop asbestos-related conditions and diseases

from which decedent died.

WHEREFORE, plaintiff prays judgment against defendants, and each of them, as

hereinafter set forth.

### SEVENTH CAUSE OF ACTION
**(Respiratory Safety Devices - Negligence)**

**AS AND FOR A FURTHER, SEVENTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE, PLAINTIFF WILLIAM ANDREW SMITH COMPLAINS OF DEFENDANT 3M COMPANY fka MINNESOTA MINING AND MANUFACTURING COMPANY AND DOES 621-650, (HEREINAFTER RESPIRATORY SAFETY DEVICE DEFENDANTS)AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:**

102.    Plaintiff, by this reference, hereby incorporates by reference, as though fully set

forth herein, each and every allegation contained in the General Allegations.

103.    At all times herein mentioned, each of the RESPIRATORY SAFETY DEVICE

DEFENDANTS, was an entity and/or the successor, successor in business, successor in product

line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line

or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial

owner of or member in an entity, hereinafter collectively be called "alternate entities," engaged

in the business of researching, studying, manufacturing, fabricating, designing, modifying,

labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-

1  branding, manufacturing for others, packaging and advertising certain respiratory safety devices,

2  including but not limited to respirators, masks, and filters.

3      104. At all times herein mentioned, the RESPIRATORY SAFETY DEVICE

4  DEFENDANTS, their "alternate entities" and each of them, singularly and jointly, negligently

5  and carelessly researched, manufactured, fabricated, designed, tested or failed to test, failed to

6  recall or retrofit, warned or failed to warn, labeled, assembled, distributed, leased, bought,

7  offered for sale, sold, inspected, serviced, repaired, marketed, warranted, rebranded,

8  manufactured for others, packaged and advertised, certain respiratory safety devices, including

9  but not limited to masks, respirators and filters, in that said respiratory safety devices, while

10  being used in a manner that was reasonably foreseeable, failed to protect users including the

11  plaintiff herein, consumers, workers and others who were in proximity to and exposed to said

12  asbestos fibers (hereinafter collectively called "exposed persons"), from inhalation of asbestos

13  fibers, thereby rendering said devices unsafe and dangerous for use by "exposed persons".

14      105. The RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate

15  entities" and each of them, had a duty to exercise due care in the pursuance of the activities

16  mentioned above and defendants, and each of them, breached said duty of due care.

17      106. The RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate

18  entities" and each of them knew, or should have known, and intended, that the aforesaid

19  respiratory safety devices would be used by consumers, workers, bystanders and others,

20  including the plaintiff herein, to protect them from inhalation of asbestos fibers. Said devices,

21  while being used in a manner that was reasonably foreseeable, failed to protect plaintiff from

22  exposure to asbestos fibers, resulting in severe and permanent injury to plaintiff.

23  ///

24  ///

25  ///

107. The negligence and defective products as described in this cause of action of said RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate entities" and each of them were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

108. Furthermore, the conduct of defendants, their "alternate entities" and each of them in continuing to market and sell products which they knew were dangerous to plaintiff and the public without adequate warnings or proper use instructions, and in failing to recall or retrofit their dangerous products was done in a conscious disregard and indifference to the safety and health of plaintiff and others similarly situated.

109. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, failing to recall or retrofit, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising said respiratory safety devices, defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer and that their products did not protect against such injuries. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their "alternate entities," and each of them, and which knowledge was obtained by said defendants, their "alternate entities," and each of them on or before 1930, and thereafter.

///

///

110.   The above-referenced conduct of said defendants, their "alternate entities," and each of them, was motivated by the financial interest of said defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of respiratory safety devices. In pursuance of said financial motivation, said defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit their products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

111.   Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

112.   The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

///

///

## EIGHTH CAUSE OF ACTION
### (Respiratory Safety Devices - Strict Liability)

AS AND FOR A FURTHER, EIGHTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE, PLAINTIFF WILLIAM ANDREW SMITH COMPLAINS OF DEFENDANT 3M COMPANY fka MINNESOTA MINING AND MANUFACTURING COMPANY AND DOES 621-650, (HEREINAFTER RESPIRATORY SAFETY DEVICE DEFENDANTS) AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR PRODUCTS LIABILITY ALLEGES:

113.   Plaintiff, by this reference, hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the General Allegations.

114.   At all times herein mentioned, each of the RESPIRATORY SAFETY DEVICE DEFENDANTS, was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity, hereinafter collectively be called "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising  certain respiratory safety devices, including but not limited to respirators, masks, and filters.

115.   At all times herein mentioned, the RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, tested or failed to test, failed to recall or retrofit, warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, certain respiratory safety devices, including but not limited to masks, respirators and filters, in that said respiratory safety devices, while being used in a manner that was reasonably foreseeable, failed to protect users including the

plaintiff herein, consumers, workers and others who were in proximity to and exposed to said asbestos fibers (hereinafter collectively called "exposed persons"), from inhalation of asbestos fibers, thereby rendering said devices unsafe and dangerous for use by "exposed persons".

116.    The RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate entities" and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

117.    The RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate entities" and each of them knew, or should have known, and intended, that the aforesaid respiratory safety devices would be used by consumers, workers, bystanders and others, including the plaintiff herein, to protect them from inhalation of asbestos fibers. Said devices, while being used in a manner that was reasonably foreseeable, failed to protect plaintiff from exposure to asbestos fibers, resulting in severe and permanent injury to plaintiff.

118.    The negligence and defective products as described in this cause of action of said RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate entities" and each of them were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

119.    At all times herein mentioned, each of the RESPIRATORY SAFETY DEVICE DEFENDANTS, was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity, hereinafter collectively be called "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-

1  branding, manufacturing for others, packaging and advertising certain respiratory safety devices,

2  including but not limited to respirators, masks, and filters.

3      120.    Said respiratory safety devices were defective and unsafe for their intended

4  purpose in that said products did not perform as safely as expected by an ordinary consumer

5  when used in an intended or reasonably known manner as said products did not prevent the

6  inhalation of asbestos fibers by plaintiff. The defect existed in said devices at the time they left

7  the possession of the RESPIRATORY SAFETY DEVICE DEFENDANTS and/or their alternate

8  entities. Said devices did, in fact, allow inhalation of asbestos fibers, which causes serious

9  disease and/or death. The defect in said devices did, in fact, cause personal injuries, including

10  asbestosis, other lung damage, and cancer to "exposed persons," including plaintiff herein, while

11  being used in a reasonably foreseeable manner thereby rendering the same defective, unsafe and

12  dangerous for use by "exposed persons".

13

14      121.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

15  containing products. Plaintiff was not aware at the time of use said respiratory safety devices

16  products presented any risk of injury.

17

18      122.    RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate entities,"

19  and each of them, knew and intended that the above-referenced products would be used by the

20  purchaser or user without inspection for defects therein or in any of their component parts and

21  without knowledge of the hazards involved in such use.

22      123.    Plaintiff and other "exposed persons" did not know of the substantial danger of

23  using said products. Said dangers were not readily recognizable by plaintiff and other "exposed

24  persons". Said defendants, their "alternate entities," and each of them, further failed to

25  adequately warn of the risks to which plaintiff and others similarly situated were exposed.

26

27  ///

28  ///

124.   The gravity of the potential harm resulting from the use of said defective products as described in this cause of action, and the likelihood such harm would occur, outweighed the cost of feasible alternative designs, including providing adequate warning of such potential harm.

125.   The defective products as described in this cause of action of said RESPIRATORY SAFETY DEVICE DEFENDANTS, their "alternate entities" and each of them were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them in an amount to be proved at trial, as follows:

1.   For plaintiffs' general damages according to proof;

2.   For medical and related expenses according to proof;

3.   For loss of earnings according to proof;

4.   For loss of care, comfort and society;

5.   For exemplary or punitive damages according to proof;

6.   For plaintiffs' cost of suit herein;

7.   For damages for fraud according to proof; and

8.   For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032 and related provisions of law.

DATED: October 28, 2010                    PAUL & HANLEY LLP

By: _____
        Benjamin D. Goldstein
        Attorney for Plaintiffs

1

## EXHIBIT A

2

    Plaintiff WILLIAM ANDREW SMITH'S exposure stems from his occupational
exposures to asbestos and asbestos-containing products while working as an insulator. Plaintiff
3   was exposed to asbestos and asbestos-containing thermal insulation materials from his job sites,
which include but are not limited to the sites listed below.
4
    Plaintiff WILLIAM ANDREW SMITH suffers from asbestos-related disease, including
5.  mesothelioma which was diagnosed in September 2010. Plaintiff took a regular retirement on
August 11, 1991.

6

| Jobsite | Employer | BD | ED |
|---|---|---|---|
| SCE - Southern California Edison Power Plant, Huntington Beach, CA | Unknown | 1/1/1955 | 12/1/1959 |
| Union Oil, Wilmington, CA | Manville Sales Corp. | 1/1/1957 | 7/1/1957 |
| SCE - Southern California Edison Power Plant, El Segundo, CA | Unknown | 1/1/1959 | 1/1/1962 |
| Arco Oil Refinery (Atlantic Richfield), Carson CA | Owens Corning Fiberglass | 1/1/1960 | 12/31/1979 |
| Haynes Power Plant, Long Beach CA | Metalclad | 1/1/1960 | 12/31/1979 |
| South Bay Power Plant, Chula Vista, CA | Unknown | 1/1/1970 | 12/31/1979 |
| Standard Oil Refinery, El Segundo CA | Unknown | 1/1/1970 | 12/31/1979 |
| National Steel & Shipbuilding Co. (NASSCO), San Diego, CA | Owens Corning Fiberglass | 1/1/1970 | 1/1/1980 |
| San Onofre Nuclear Generating Station, San Onofre, CA | Brand Insulation Co. | 1/1/1977 | 12/31/1979 |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "B"

2   3M COMPANY fka MINNESOTA MINING AND MANUFACTURING COMPANY,
    ALLIED PACKING & SUPPLY, INC.,
3   ASBESTOS CORPORATION, LTD.,
    CROWN CORK & SEAL COMPANY, INC. individually and as successor-in-interest to
4        MUNDET CORK COMPANY,
    GENERAL ELECTRIC COMPANY,
5   LOS ANGELES RUBBER COMPANY,
    METALCLAD INSULATION CORPORATION,
6   OWENS-ILLINOIS, INC.,
    PARKER-HANNIFIN CORPORATION, As Successor-In-Interest to Sacomo Sierra,
7   QUINTEC INDUSTRIES, INC.,
    RAPID-AMERICAN CORPORATION,
8   RIC-WIL, INCORPORATED,
    SANTA FE BRAUN, INC. as successor-in-interest to C.F. BRAUN & CO.,

9
    and DOES 1-300.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "C"

2

ATLANTIC RICHFIELD COMPANY,
CHEVRON U.S.A. INC.,
3   GENERAL ELECTRIC COMPANY,
METALCLAD INSULATION CORPORATION,
4   NATIONAL STEEL AND SHIPBUILDING COMPANY,
SANTA FE BRAUN, INC. as successor-in-interest to C.F. BRAUN & CO.,
5   SEQUOIA VENTURES, INC.,
SOUTHERN CALIFORNIA EDISON COMPANY,
6

and DOES 301 - 500.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**KAISER PERMANENTE**

### San Diego Medical Center
4647 Zion Avenue
San Diego, CA 92120
Tel: 619-528-5393     Fax: 619-528-6729
Michael Bonin, MD Laboratory Director

## SURGICAL PATHOLOGY REPORT
### * Converted Case * This report may not match the original report format

| | | | |
|---|---|---|---|
| Patient Name: | **SMITH, WILLIAM A** | Med. Rec. #: | **000005365228** |
| Accession #: | **SDXD98-9873** | Patient Type: | |
| DOB/Age: | 5/31/1933 (Age: 64)  Sex: M | Obtained: | 3/18/1998 |
| Facility: | Kaiser Southern Cal | Received: | 3/19/1998 |
| Location: | | Reported: | 3/23/1998 00:00 |
| Provider(s): | | | |

---

### FINAL PATHOLOGIC DIAGNOSIS
Skin, left upper eyelid - SEBORRHEIC KERATOSIS, POLYPOID

Report Electronically Signed by
NAOMI ROSE BUCKWALTER M.D.
Date Signed Out: 3/23/1998

---

### Clinical Information
SKIN TAG

### Gross Description
0.6 cm polypoid keratotic skin shave, bisected, texl.

### Specimen(s) Submitted As:
Converted Part - SKIN, LT UPPER LID

### Other Related Clinical Data
Providers:  FARHAD SHARANDEH, MD
cc:         203 LA MESA DERMATOLOGY

Location:   VISTA CLINIC
Service:    DERMATOLOGY

San Diego Staff Pathologists:
A. Bedoya, MD, F. Walker, Jr., MD, N. Buckwalter, MD, D. Felix, MD, M. Ghassemi, MD, S. Holland, MD,
K. Lasser, MD, A. Mhoyan, MD, J. Phillipson, MD, T. Russo, MD, D. Wallace, MD

Page 1 of 1



**San Diego Medical Center**
4647 Zion Avenue
San Diego, CA 92120
Tel: 619-528-5393      Fax: 619-528-6729
Michael Bonin, MD Laboratory Director

**KAISER PERMANENTE**

## SURGICAL PATHOLOGY REPORT
### * Converted Case * This report may not match the original report format

| | | | |
|---|---|---|---|
| Patient Name: | **SMITH, WILLIAM A** | Med. Rec. #: | **000005365228** |
| Accession #: | **SDXD98-28297** | Patient Type: | |
| DOB/Age: | 5/31/1933 (Age: 65)  Sex: M | Obtained: | 8/3/1998 |
| Facility: | Kaiser Southern Cal | Received: | 8/4/1998 |
| Location: | | Reported: | 8/6/1998 09:00 |
| Provider(s): | | | |

**FINAL PATHOLOGIC DIAGNOSIS**
Skin, left nose — ULCERATED AND CRUSTED ACTINIC KERATOSIS

Report Electronically Signed by
FREDERICK DOUGLAS WALKER M.D.
Date Signed Out: 8/6/1998

**Clinical Information**
R/O BCC

**Gross Description**
9 mm crusted skin shaving. TEx1

**Specimen(s) Submitted As:**
Converted Part  - SKIN, LT NOSE

**Other Related Clinical Data**
Provider:   MICHAEL MURPHY, M.D.
on:         247 SAN MARCOS DERM

Location:  VISTA CLINIC
Service:   DERMATOLOGY

San Diego Staff Pathologists:
A. Bedoya, MD, F. Walker, Jr., MD, N. Buckwalter, MD, D. Felix, MD, M. Ghassemi, MD, S. Holland, MD,
K. Lasser, MD, A. Mheyan, MD, J. Philipson, MD, T. Russo, MD, D. Wallace, MD

Page 1 of 1



**San Diego Medical Center**
4647 Zion Avenue
San Diego, CA 92120

**KAISER PERMANENTE**   Tel: 619-528-5393   Fax: 619-528-6729
Michael Bonin, MD Laboratory Director

# SURGICAL PATHOLOGY REPORT
## * Converted Case * This report may not match the original report format

| | | | |
|---|---|---|---|
| Patient Name: | **SMITH, WILLIAM A** | Med. Rec. #: | 000005365228 |
| Accession #: | **SDXD03-31259** | Patient Type: | |
| DOB/Age: | 5/31/1933 (Age: 70)  Sex: M | Obtained: | 7/30/2003 |
| Facility: | Kaiser Southern Cal | Received: | 7/31/2003 |
| Location: | | Reported: | 8/5/2003 00:00 |
| Provider(s): | | | |

## FINAL PATHOLOGIC DIAGNOSIS
Skin, left thigh, excision
- PILOMATRIXOMA

Report Electronically Signed by
SWEND HOLLAND M.D.
Date Signed Out: 8/5/2003

## Microscopic Description
Microscopic performed.

## Clinical Information
EIC

## Gross Description
Received are three irregular gray-tan tissue fragments that range
in size from 1.0 to 1.3 cm. Text/m. G. Taylor/fh

## Specimen(s) Submitted As:
Converted Part - SKIN, LT THIGH

## Other Related Clinical Data
Provider:  BILL NEAL, P.A.
cc:        208 ESCONDIDO PRIMARY CARE

Location:  ESCONDIDO CLINIC
Service:   PRIMARY CARE



**KAISER PERMANENTE**

San Diego Medical Center
4647 Zion Avenue
San Diego, CA 92120
Tel: 619-528-5393     Fax: 619-528-6729
Michael Bonin, MD Laboratory Director

## SURGICAL PATHOLOGY REPORT
### * Converted Case * This report may not match the original report format

| | | | |
|---|---|---|---|
| Patient Name: | SMITH, WILLIAM A | Med. Rec. #: | 000005365228 |
| Accession #: | SDXD06-4828 | Patient Type: | |
| DOB/Age: | 5/31/1933 (Age 72) Sex: M | Obtained: | 2/2/2006 |
| Facility: | Kaiser Southern Cal | Received: | 2/3/2006 |
| Location: | | Reported: | 2/7/2005 00:00 |
| Provider(s): | | | |

---

### FINAL PATHOLOGIC DIAGNOSIS
Skin, right dorsal hand
- INVASIVE, WELL-DIFFERENTIATED SQUAMOUS CELL CARCINOMA
  (TRANSECTED)

Report Electronically Signed by
TERRI ANNE RUSSO M.D.
Date Signed Out: 2/7/2006

---

### Microscopic Description
Microscopic performed.

### Clinical Information
KA VS. SCC, S/P CD AND E X3

### Gross Description
Received is a 1.8 cm skin shave.   TExl,M     G. Taylor/jc

### Specimen(s) Submitted As:
Converted Part - SKIN, RT DORSAL HAND

### Other Related Clinical Data
Provider:  JOHN T. SHEN, MD
cc:        1268
Location:  SAN MARCOS
Service:   DERMATOLOGY

San Diego Staff Pathologists:
A. Bedoya, MD, F. Walker, Jr., MD, N. Buchwalter, MD, D. Felix, MD, M. Ghassemi, MD, S. Holland, MD,
K. Lasser, MD, A. Mhoyan, MD, J. Phillipson, MD, T. Russo, MD, D. Wallace, MD

Page 1 of 1



**San Diego Medical Center**
4647 Zion Avenue
San Diego, CA 92120
Tel: 619-528-5393     Fax: 619-528-6729

**KAISER PERMANENTE**

Frederick D. Walker, Jr. M.D., Chief of Pathology/Laboratory Director

# SURGICAL PATHOLOGY REPORT

| | | | |
|---|---|---|---|
| Patient Name: | **SMITH, WILLIAM A** | Med. Rec. #: | **000005365228** |
| Accession #: | **SDX509-37117** | Patient Type: | Outpatient |
| DOB/Age: | 5/31/1933 (Age: 76)  Sex: **M** | Obtained: | 9/4/2009 |
| Facility: | SAN MARCOS OUTPATIENT MED CTR | Received: | 9/8/2009 |
| Location: | DERMATOLOGY | Reported: | 9/9/2009 16:11 |
| Provider(s): | SUSAN BOIKO M.D. | | |

---

**FINAL PATHOLOGIC DIAGNOSIS**
A. Skin, right upper eyelid, shave biopsy
- ACROCHORDON
B. Skin, mid nose, shave biopsy
- SEBACEOUS HYPERPLASIA


jlc/9/9/2009

Report Electronically Signed by
MAJID GHASSEMI M.D.
Date Signed Out: 9/9/2009

---

**Microscopic Description**
A,B.  Microscopic performed.

**Clinical Information**
A 5 mm tag-like papule right upper eye irritated by blinking; B mid nose adjacent to divot like scar 4 mm pink papule- sebaceous hyperplasia vs recurrent skin cancer, initial type unknown to me.

**Gross Description**
Case verification performed.

A. Received is a 0.4 cm skin tag.   TEx1

B. Received is a 0.5 cm skin shave.    TEx1     GT

jlc/9/8/2009
**Specimen(s) Submitted As:**
A: SKIN, SHAVE BIOPSY - RT UPPER EYE
B: SKIN, SHAVE BIOPSY - MID NOSE

San Diego Staff Pathologists:
A. Bedoya, MD, F. Walker, Jr., MD, N. Buckwalter, MD, D. Felix, MD, M. Ghassemi, MD, S. Holland, MD,
K. Lasser, MD, A. Mhoyan, MD, J. Phillipson, MD, T. Russo, MD, D. Wallace, MD

Page 1 of 1



**San Diego Medical Center**
4647 Zion Avenue
San Diego, CA 92120

**KAISER PERMANENTE**   Tel: 619-528-5393      Fax: 619-528-6729

Frederick D. Walker, Jr. M.D., Chief of Pathology/Laboratory Director

## SURGICAL PATHOLOGY REPORT

| | | | |
|---|---|---|---|
| Patient Name: | **SMITH, WILLIAM A** | Med. Rec. #: | **000005365228** |
| Accession #: | **SDXS10-40929** | Patient Type: | Outpatient |
| DOB/Age: | 5/31/1933 (Age: 77)  Sex: M | Obtained: | 9/14/2010 |
| Facility: | San Diego Medical Center | Received: | 9/14/2010 |
| Location: | POST-08 | Reported: | 9/15/2010 10:29 |
| Provider(s): | DIANE DAHLSTROM BRICCO M.D. | | |
| CC: | MICHAEL LEE DITMARS M.D. | | |
| | MICHAEL LEE DITMARS M.D. | | |
| | CHITRA MINOCHA M.D. | | |

### IMMUNOHISTOCHEMISTRY

**Date Ordered:**    9/17/2010

**Interpretation**
Omental cake, biopsy
- MALIGNANT MESOTHELIOMA

**Results-Comments**
Multiple immunohistochemical* stains are performed with appropriate controls.  The neoplastic cells are strongly positive for pancytokeratin and calretinin.  The neoplastic cells are negative for mCEA, CD 15, and BRST-3.   QCR

The immunohistochemistry and/or in situ hybridization tests were developed and their performance characteristics determined by the SCPMG Regional Reference Laboratory. Unless otherwise indicated, these tests have not been approved by the USFDA, although such approval is not required for analyte specific reagents of this type. This testing was performed at:
SCPMG Regional Reference Laboratories
11668 Sherman Way, N. Hollywood, CA 91605
Gary A. Gochman, M.D., Laboratory Director

Report Electronically Signed by
JULIA PHILLIPSON M.D.
Date Signed Out: 9/17/2010

### FINAL PATHOLOGIC DIAGNOSIS
Omentum, core biopsy
- MALIGNANT NEOPLASM
- FINAL DIAGNOSIS PENDING IMMUNOHISTOCHEMICAL STAINS, ADDENDUM TO FOLLOW

rja/9/15/2010

Report Electronically Signed by
JULIA PHILLIPSON M.D.
Date Signed Out: 9/15/2010

### Microscopic Description
Sections show pleomorphic cells in nests.  The smears show neoplastic cells with similar cytologic characteristics.  Immunohistochemical stains are pending.

San Diego Staff Pathologists:
A. Badoya, MD, F. Walker, Jr., MD, N. Buckwalter, MD, D. Felix, MD, M. Ghassemi, MD, S. Holland, MD,
K. Lasser, MD, A. Mhoyan, MD, J. Phillipson, MD, T. Russo, MD, D. Wallace, MD

SMITH, WILLIAM A  000005365228          SURGICAL PATHOLOGY REPORT                    SDXS10-40929

**Clinical Information**
77 yo male with history of asbestos exposure, now with omental caking.  No prior history of malignancy.  + for 20 lb. unintentional weight loss.

**Gross Description**
Case verification is performed.  Received are multiple, yellow cores of tissue aggregating to 0.2 x 0.2 x 0.1 cm.  TEx1.  DM

gnl/9/14/2010
**Specimen(s) Submitted As:**
NEEDLE (CORE) BIOPSY - CT Guided biopsy abdomen

San Diego Staff Pathologists:
A. Bedoya, MD, F. Walker, Jr., MD, N. Buckwalter, MD, D. Felix, MD, M. Ghassemi, MD, S. Holland, MD,
K. Lasser, MD, A. Mhoyan, MD, J. Phillipson, MD, T. Russo, MD, D. Wallace, MD

Page 2 of 2

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN 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      * * RECEIVED
```

JUN 03 1987

ROSE, KLEIN & MARIAS
LOS ANGELES

```
FROM:  SOCIAL SECURITY ADMINISTRATION
       OFFICE OF CENTRAL RECORDS OPERATIONS
       BALTIMORE, MARYLAND  21235-0000
```

NUMBER HOLDER NAME:
WILLIAM ANDREW SMITH

87 L B 164 197

```
       -0000
PERIODS REQUESTED  JANUARY 1957  THRU  DECEMBER 1986
```

| YEAR | JAN – MARCH | APRIL – JUNE | JULY – SEPT | OCT – DEC | TOTAL |
|------|-------------|--------------|-------------|----------|-------|

```
EMPLOYER NUMBER:  13-0889690
*MANVILLE SALES CORP                  A/C
 PO BOX 17086          Travelers
 DENVER, CO  80217
```

| 1957 — | 744.00 | | | | $ | 744.00 — |
|--------|--------|--|--|--|---|----------|

```
EMPLOYER NUMBER:  95-0684440
WALT DISNEY COMPANY
CONSOLIDATED SUBSIDIARIES
500 S BUENA VISTA ST        NA
BURBANK, CA  91505
```

| 1957 | 2.31 | | | | $ | 2.31 |
|------|------|--|--|--|---|------|

```
EMPLOYER NUMBER:  95-1559386
*THORPE INSULATION COMPANY A CORP
 2741 S YATES AVE                    A/C
 2741 S YATES AVE
 LOS ANGELES, CA  90040
```

| 1957 — | 304.00 | 1,014.50 | | | $ | 1,318.50 — |
|--------|--------|----------|--|--|---|------------|
| 1960 — | – | – | – | – | $ | 25,306.12 — |
| 1981 — | – | – | – | – | $ | 29,700.00 — |
| 1982 / | – | – | – | – | $ | 32,400.00 — |

PAGE 001

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *    FOR SSN 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      * * *
```

| YEAR | JAN – MARCH | APRIL –JUNE | JULY – SEPT | OCT – DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

EMPLOYER NUMBER:  22-1132983
MUNDET CORK CORP
9300 ASHTON ROAD
PHILADELPHIA, PA  19114

*A/C*

| YEAR | JAN – MARCH | APRIL –JUNE | JULY – SEPT | OCT – DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1957 — Aetna Cas. | | | 404.80 | 1,309.00 $ | 1,713.80 — |
| 1958 — " | 1,254.50 | 1,404.80 | 1,540.70 | $ | 4,200.00 — |
| 1959 — " | 1,722.59 | 1,860.50 | 1,216.81 | $ | 4,800.00 — |
| 1960 — " | 2,175.00 | 2,386.38 | 238.62 | $ | 4,800.00 — |
| 1961 — " | 1,337.60 | 2,818.26 | 2,377.13 | $ | 6,532.99 — |

EMPLOYER NUMBER:  95-1295950
A. T. Thorpe Inc.
948 E. 2nd Street
Los Angeles, Ca. 12

*A/C*

| YEAR | JAN – MARCH | APRIL –JUNE | JULY – SEPT | OCT – DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1957 — Amer. Motor. | | | 454.75 | $ | 454.75 — |

EMPLOYER NUMBER:  34-4323452
OWENS CORNING FIBERGLAS CORP
FIBERGLAS TOWER
TOLEDO, OH  43604

*A/C*

| YEAR | JAN – MARCH | APRIL –JUNE | JULY – SEPT | OCT – DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1960 | | | | 758.08 $ | 758.08 — |
| 1961 | 598.40 | | | $ | 598.40 — |
| 1962 | 374.40 | 2,208.96 | 2,216.64 | $ | 4,800.00 — |
| 1963 | 2,850.05 | 1,949.95 | | $ | 4,800.00 — |
| 1964 | 2,322.59 | 2,477.41 | | $ | 4,800.00 — |
| 1967 | 1,600.00 | 3,401.60 | 1,598.40 | $ | 6,600.00 — |
| 1968 | 3,443.80 | 3,513.80 | 842.40 | $ | 7,800.00 — |
| 1969 | 3,436.70 | 3,575.00 | 788.30 | $ | 7,800.00 — |
| 1970 | | 3,786.16 | | $ | 3,786.16 — |
| 1971 | 4,277.92 | 3,522.08 | | $ | 7,800.00 — |
| 1976 | | | 2,410.40 | 6,143.90 $ | 8,554.30 — |
| 1977 | 6,523.80 | 6,870.60 | 3,105.60 | $ | 16,500.00 — |
| 1979 | — | — | — | — $ | 15,721.60 — |
| 1980 | — | — | — | — $ | 955.74 — |
| 1982 | — | — | — | — $ | 14,565.65 — |
| 1983 | — | — | — | — $ | 2,320.61 — |

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN 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        * * *


   YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC      TOTAL


   EMPLOYER NUMBER:  95-2128807
  *FERGUSON & SMITH                        A/c
  /FERGUSON SMITH
   BOX 1701
   VANDENBERG AFB, CA  93437

   1962    1,640.82                                    $   1,640.82 -

   EMPLOYER NUMBER:  22-1346265
  *BASF WYANDOTTE CORP SUCCESSOR           A/c
   100 CHERRY HILL RD
   PARSIPPANY, NJ  07054

   1963   #25              136.78                      $     136.78

   EMPLOYER NUMBER:  21-0722087
  *GALE CORP                               A/c
  *PO BOX 183
   NORTH BRUNSWICK, NJ  08902

   1964  #25                                  643.80 $    643.80 -
   1966              2,854.80   3,050.40      694.80 $  6,600.00 -
   1967       300.00                                 $    300.00 -

   EMPLOYER NUMBER:  95-1416659
  * KEMPER CONSULTANTS INC                  A/c
   1306 LARRABEE ST
   LOS ANGELES, CA  90069

   1965 #25 1,933.20       666.00                      $   2,599.20 -

   EMPLOYER NUMBER:  95-2150951
  *SMITHCO INSULATIONS CO                  A/c
  * O BOX 627
   DOWNEY, CA  90240

   1965 #26   368.10                                   $     368.10 -

      (25s retd.)                   PAGE 003
```

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN 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        * * *
```

```
YEAR   JAN - MARCH  APRIL -JUNE   JULY - SEPT    OCT - DEC       TOTAL
```

EMPLOYER NUMBER:  95-2282668
*CAL-STATE INSULATION CO INC                      A/C
/% JOSEPH S POTTS TRE 417 S HILL ST
LOS ANGELES, CA  90013

| | | | | | |
|---|---|---|---|---|---|
| -1965 | | 2,136.40 | 2,663.60 | | $ 4,800.00 |
| -1966 | WC5RB 2,953.22 | | | | $ 2,953.22 |
| -1968 | | | 86.40 | | $ 86.40 |

EMPLOYER NUMBER:  95-2423475
*E SMITH INSULATION CO INC                        A/C
/5614 BORWICK AVE
SOUTH GATE, CA  90280

| | | | | | |
|---|---|---|---|---|---|
| -1967 | 200.00 | | | | $ 200.00 |
| -1974 25 | | | | 270.00 | $ 270.00 |
| -1975 | 5,395.05 | 4,879.20 | 3,825.75 | | $ 14,100.00 |
| -1976 | 6,209.20 | 2,470.00 | | | $ 8,679.20 |

EMPLOYER NUMBER:  95-2460955
CARL F SROUFE
*UNITED INSULATION                                A/C
/20102 STATE RD
CERRITOS, CA  90701

| | | | | | |
|---|---|---|---|---|---|
| -1967 25 | 200.00 | | | | $ 200.00 |

EMPLOYER NUMBER:  95-2475248
*A-1 INSULATION INC                               A/C
/3006 ARTESIA ST
SANTA ANA, CA  92704

| | | | | | |
|---|---|---|---|---|---|
| -1967 | 350.00 | | | | $ 350.00 |

EMPLOYER NUMBER:  95-2306048
CHRISTIAN & LETNER ROOFING CO                     N/A
1490 N GLASSELL AVE
ORANGE, CA  92667

| | | | | | |
|---|---|---|---|---|---|
| 1969 | | | 35.68 | | $ 35.68 |

PAGE 004

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN 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      * * *


YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC      TOTAL


   EMPLOYER NUMBER:  95-2507804
   LOUIS LIPPMAN ROBERT LIPPMAN STEVEN
     LIPPMAN
   SAVINGS OIL-L A                                      A/c
   301 E WASHINGTON BLVD
   LOS ANGELES, CA 90015

   1970    4,013.84   #25                          $   4,013.84 -

   EMPLOYER NUMBER:  95-2460606
   AMERICAN-CAPITAL INSULATION CO
     OF SOUTHERN CALIFORNIA
   19413 DERBY                                          A/c
   DETROIT, MI  48203
   1971 - U.S. Firesns. Co.                   2,449.92 $   2,449.92 -
   1972 - #25  3,052.83                               $   3,052.83 -

   EMPLOYER NUMBER:  95-2742943
   HIRST-CHICK CORP
   2400 E 68TH ST                                       A/c
   LONG BEACH, CA  90805

   1972 #25          1,789.86   1,089.48             $   2,879.34 -

   EMPLOYER NUMBER:  95-2511192
   BAUR ENTERPRISES INC
   6162 NAPA CIRCLE                                     A/c
   HUNTINGTON BEACH, CA  92647

   1972 Unk.                                  4,328.03 $   4,328.03 -
   1973    4,033.68    4,825.48   1,940.84            $  10,800.00
   1974    4,459.36    5,753.78   2,986.86            $  13,200.00

   EMPLOYER NUMBER:  95-2250174
   OIL FIELD CONSTRUCTION CO INC
   4042 PATTON WAY                                      A/c
   BAKERSFIELD, CA  93308

   1974 - SCIF                                529.28 $    529.28

                          PAGE 005
```

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN 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      * * *


  YEAR   JAN - MARCH  APRIL -JUNE  JULY - SEPT    OCT - DEC      TOTAL


   EMPLOYER NUMBER:  94-1648344
  *RAY O COOK MECHANICAL CONTRACTOR           A/C
   PO BOX 660430
   SACRAMENTO, CA  95866

  _1976  #25            3,556.80     1,580.80          $     5,137.60 _

   EMPLOYER NUMBER:  95-2125788
  *NEVINS & CO INC                            A/C
   10603 NORWALK BLVD #25
   10603 NORWALK BLVD
   SANTA FE SPRINGS, CA  90670

   -1976                             510.00           $       510.00 _

   EMPLOYER NUMBER:  95-2646513
  *RALPH W EVANS COMPANY INC                  A/C
   12631 IMPERIAL HWY F-110
   SANTA FE SPRINGS, CA  90670

   _1976     #25            1,065.60                  $     1,065.60 _

   EMPLOYER NUMBER:  95-2597183
  *METALCLAD INSULATION CORPORATION           A/C
   OF CALIFORNIA
   2911 E HARCOURT ST
   COMPTON, CA  90221

   -1977                                      1,774.50 $     1,774.50 _
   1978      -          -          -          -        $    17,700.00 _
   -1983     -          -          -          -        $    10,633.65 _

   EMPLOYER NUMBER:  23-1517682
   *C AND S INC                               A/C
   120 N LIME ST PO BOX 1548
   LANCASTER, PA  17602

   1978      -          -          -          -        $       924.80 _
   -1980     -          -          -          -        $       374.80 _

                          PAGE 006
```

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN 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      * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

EMPLOYER NUMBER: 95-2703495
*ALRITE INSULATION CO INC
570 W LAMBERT STE G
BREA, CA 92621          #25

| | | | | | |
|------|---|---|---|---|---|
| 1978 | - | - | - | - | $ 1,649.60 |
| 1979 | - | - | - | - | $ 462.40 |

A/c

EMPLOYER NUMBER: 36-2540963
*BRAND INDUSTRIAL SERVICES INC
1420 RENAISSANCE
PARK RIDGE, IL 60068

| | | | | | |
|------|---|---|---|---|---|
| 1979 — #25 | - | - | - | $ 6,303.60 |
| 1980 — Comm. Union | - | - | - | $ 7,650.00 |

A/c

EMPLOYER NUMBER: 95-2680593
*TRI-COUNTY INSULATION CO INC
164 MILLAR AVE
EL CAJON, CA 92020

| | | | | | |
|------|---|---|---|---|---|
| 1979 #25 | - | - | - | - | $ 3,696.10 |

A/c

EMPLOYER NUMBER: 94-2173840
*BECHTEL POWER CORP
50 BEALE ST
SAN FRANCISCO, CA 94105    Ind. Ind + Pac. Ind.

| | | | | | |
|------|---|---|---|---|---|
| 1983 — Ind. Ind + Mission | - | - | - | $ 31,052.59 |
| 1984 — Ind. Ind + Mission | - | - | - | $ 3,263.31 |

A/c

EMPLOYER NUMBER: 94-2239710
*BECHTEL CONSTRUCTION INC
50 BEALE ST
SAN FRANCISCO, CA 94105

| | | | | | |
|------|---|---|---|---|---|
| 1985 — Pac. Ind. | - | - | - | $ 15,614.11 |

A/C

PAGE 007

```
SSA-1826                  ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *     FOR SSN 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        * * *


YEAR   JAN - MARCH   APRIL -JUNE   JULY - SEPT    OCT - DEC.     TOTAL
```

OUR RECORDS MAY NOT SHOW ALL THE EARNINGS REPORTED FOR THE PERIODS
ENDING AFTER DECEMBER 1985 BECAUSE OF THE TIME REQUIRED TO
RECEIVE AND PROCESS REPORTS.

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD REQUESTED.

                                   PAGE 008 END