ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-00986-RS

Whelan et al v. General Electric Company et al
Assigned to: Hon. Richard Seeborg
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 03/03/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

### Plaintiff

**Shirley Whelan**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Robert Whelan*

represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Robert Whelan**
*Deceased*

represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**General Electric Company**

### Defendant

**Foster Wheeler LLC**

*formerly known as*
Foster Wheeler Corporation

**Defendant**

**General Dynamics Corporation**

**Defendant**

**Northrop Grumman Shipbuilding, Inc.**

**Defendant**

**Bath Iron Works Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/09/2011 | 9 | ORDER OF RECUSAL. Signed by Judge Richard Seeborg on 3/9/11. (cl, COURT STAFF) (Filed on 3/9/2011) (Entered: 03/09/2011) |
| 03/09/2011 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Richard Seeborg for all further proceedings. Magistrate Judge Laurel Beeler no longer assigned to the case. Signed by the Executive Committee on March 9, 2011. (cjl, COURT STAFF) (Filed on 3/9/2011) (Entered: 03/09/2011) |
| 03/08/2011 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (ls, COURT STAFF) (Filed on 3/8/2011) (Entered: 03/08/2011) |
| 03/03/2011 | | CASE DESIGNATED for Electronic Filing. (jlm, COURT STAFF) (Filed on 3/3/2011) (Entered: 03/07/2011) |
| 03/03/2011 | 6 | Declination to Proceed Before a U.S. Magistrate Judge, filed by Robert Whelan, Shirley Whelan. (jlm, COURT STAFF) (Filed on 3/3/2011) (Entered: 03/07/2011) |
| 03/03/2011 | 5 | Certificate of Interested Entities, filed by Robert Whelan, Shirley Whelan (jlm, COURT STAFF) (Filed on 3/3/2011) (Entered: 03/07/2011) |
| 03/03/2011 | 4 | NOTICE of Tag-Along Action, filed by Robert Whelan, Shirley Whelan (jlm, COURT STAFF) (Filed on 3/3/2011) (Entered: 03/07/2011) |
| 03/03/2011 | 3 | Summons Issued as to Bath Iron Works Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Northrop Grumman Shipbuilding, Inc.. (jlm, COURT STAFF) (Filed on 3/3/2011) (Entered: 03/07/2011) |
| 03/03/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 6/16/2011. Case Management Conference set for 6/23/2011 10:30 AM. (Attachments: # 1 Standing Order - LB)(jlm, COURT STAFF) (Filed on 3/3/2011) (Entered: 03/07/2011) |
| 03/03/2011 | 1 | COMPLAINT with Jury Demand, against Bath Iron Works Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Northrop Grumman Shipbuilding, Inc. ( Filing fee $ 350, receipt number |

34611057023.). Filed by Shirley Whelan, Robert Whelan. (Attachments: # 1 Civil Cover Sheet)(jlm, COURT STAFF) (Filed on 3/3/2011) (Entered: 03/07/2011)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/09/2011 14:15:00 | | |
| **PACER Login:** bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-00986-RS |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff



7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                **SAN FRANCISCO DIVISION**

11  SHIRLEY WHELAN, as Wrongful Death    )   No. CV11 0986
    Heir, and as Successor-in-Interest to )
12  ROBERT WHELAN, Deceased,              )
                                          )   COMPLAINT FOR SURVIVAL,
13          Plaintiff,                    )   WRONGFUL DEATH - ASBESTOS;
                                          )   DEMAND FOR JURY TRIAL
14  vs.                                   )
                                          )
15  GENERAL ELECTRIC COMPANY,             )
    FOSTER WHEELER LLC (FKA FOSTER        )
16  WHEELER CORPORATION),                 )
    GENERAL DYNAMICS                      )
17  CORPORATION, NORTHROP                 )
    GRUMMAN SHIPBUILDING, INC.,           )
18  BATH IRON WORKS CORPORATION,          )
                                          )
19          Defendants.                   )
                                          )

20

21                        **I.**

22                     **PARTIES**

23      1.    Plaintiff in this action is the above-captioned successor-in-interest to, or the

24  personal representative of the estate of Decedent, and is hereinafter referred to as "Plaintiff."

25      2.    The person who sustained asbestos-related lung injuries and death as a result of

26  their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

27  hereinafter "Decedent" is, with the date of death: ROBERT WHELAN died October 2, 2010.

28  ///

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1  SHIRLEY WHELAN is the spouse of ROBERT WHELAN and is hereinafter referred to as
2  "surviving spouse."

3      3.      Decedent sustained an asbestos-related lung disease and death by precisely the
4  following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-
5  containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related
6  diseases is explained on **Exhibit A**, attached to plaintiff's complaint and incorporated by
7  reference herein.

8      4.      All of plaintiff's claims arise out of a similar series of occurrences: repeated
9  exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants
10  and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period
11  of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,
12  resulting in cumulative, progressive, incurable lung diseases.

13      5.      Plaintiff claims damages for an asbestos-related disease arising from an identical
14  series of occurrences not dependent on Decedent's worksite but on the fact that asbestos-
15  containing products, when handled in the manner in which they were intended, released harmful
16  asbestos fibers which when inhaled by Decedent, caused serious lung disease. The allegations of
17  plaintiff regarding the nature of Decedent's asbestos-related diseases, the nature of asbestos; the
18  propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical.

19      6.      Plaintiff is informed and believes, and thereon allege, that at all times herein
20  mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole
21  proprietorships and/or other business entities organized and existing under and by virtue of the
22  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that
23  said defendants, and each of them, were and are authorized to do and are doing business in the
24  State of California, and that said defendants have regularly conducted business in the State of
25  California.

26  ///
27  ///
28  ///

1

**II.**

2

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

3

7. Jurisdiction: Plaintiff SHIRLEY WHELAN is a citizen of the State of South

4

Carolina.

5

Defendants are each corporations incorporated under the laws of and having its principal

6

places of business in the following States:

7

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | Connecticut |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | New Jersey |
| GENERAL DYNAMICS CORPORATION | Virginia |
| NORTHROP GRUMMAN SHIPBUILDING, INC. | Virginia |
| BATH IRON WORKS CORPORATION | Maine |

8

9

10

11

12

13

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

14

between citizens of different states in which the matter in controversy exceeds, exclusive of costs

15

and interest, seventy-five thousand dollars.

16

8. Venue / Intradistrict Assignment. Venue is proper in the Northern District of

17

California and assignment to the San Francisco Division of said district is proper as a substantial

18

part of the events or omissions which give rise to the claims asserted by plaintiff herein occurred

19

within the County of San Francisco, California, and Defendants are subject to personal

20

jurisdiction in this district at the time the action is commenced.

21

**III.**

22

**CAUSES OF ACTION**

23

FIRST CAUSE OF ACTION
(Negligence)

24

25

PLAINTIFF SHIRLEY WHELAN COMPLAINS OF DEFENDANTS GENERAL

26

ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER

27

CORPORATION), GENERAL DYNAMICS CORPORATION, NORTHROP GRUMMAN

28

SHIPBUILDING, INC., BATH IRON WORKS CORPORATION, THEIR "ALTERNATE

1 ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE
2 ALLEGES:

3      9.      At all times herein mentioned, each of the named defendants was the successor,
4 successor in business, successor in product line or a portion thereof, assign, predecessor,
5 predecessor in business, predecessor in product line or a portion thereof, parent, holding
6 company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole
7 or partial owner of or member in an entity researching, studying, manufacturing, fabricating,
8 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,
9 supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,
10 representing, endorsing servicing, installing, contracting for installation, repairing, marketing,
11 warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or
12 otherwise directing and/or facilitating the use of, or advertising a certain product, namely
13 asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be
14 called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious
15 conduct of each successor, successor in business, successor in product line or a portion thereof,
16 assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,
17 venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or
18 entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,
19 designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,
20 sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,
21 rebranded, manufactured for others and advertised a certain product, namely asbestos, and other
22 products containing asbestos. The following defendants, and each of them, are liable for the acts
23 of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual
24 destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each
25 of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE
26 ENTITY; defendants, and each of them, caused the destruction of plaintiff's remedy against each
27 such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading
28 ///

1 role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

2 originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| GENERAL DYNAMICS CORPORATION | CONVAIR<br>VULTEE AIRCRAFT INC.<br>CONSOLIDATED VULTEE AIRCRAFT CORPORATION<br>ASBESTOS CORPORATION LIMITED |
| NORTHROP GRUMMAN<br>SHIPBUILDING, INC. | AVONDALE INDUSTRIES, INC.<br>AVONDALE SHIPYARDS, INC.<br>CONTINENTAL MARITIME INDUSTRIES, INC.<br>EASTERN IDAHO CONSTRUCTION COMPANY<br>INGALLS SHIPBUILDING, INC.<br>NEWPORT NEWS SHIPBUILDING AND DRY DOCK<br>COMPANY<br>NORTH CAROLINA SHIPBUILDING<br>NORTHROP GRUMMAN SHIP SYSTEMS, INC.<br>SERVICE ENGINEERING INDUSTRIES, INC. |

17      10.      At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

18 each of them, were and are engaged in the business of researching, manufacturing, fabricating,

19 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

20 supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

21 promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

22 warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

23 otherwise directing and/or facilitating the use of, or advertising a certain product, namely

24 asbestos and other products containing asbestos.

25      11.      At all times herein mentioned, defendants, their ALTERNATE ENTITIES and

26 each of them, singularly and jointly, negligently, and carelessly researched, manufactured,

27 fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed

28 to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,

1 supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,
2 installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
3 rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,
4 and other products containing asbestos, in that said products caused personal injuries to users,
5 consumers, workers, bystanders and others, including the Decedent herein, (hereinafter
6 collectively called "exposed persons"), while being used in a manner that was reasonably
7 foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by
8 "exposed persons."

9     12.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
10 exercise due care in the pursuance of the activities mentioned above and defendants, and each of
11 them, breached said duty of due care.

12     13.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
13 have known, and intended that the aforementioned asbestos and products containing asbestos and
14 related products and equipment, would be transported by truck, rail, ship, and other common
15 carriers, that in the shipping process the products would break, crumble, or be otherwise
16 damaged; and/or that such products would be used for insulation, construction, plastering,
17 fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
18 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
19 breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the
20 release of airborne asbestos fibers, and that through such foreseeable use and/or handling
21 "exposed persons," including Decedent herein, would use or be in proximity to and exposed to
22 said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
23 persons working in proximity to said products, directly or through reentrainment.

24     14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
25 containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
26 exposure to asbestos and asbestos-containing products is on current information as set forth at
27 various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
28 herein.

15.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

16.     Plaintiff is informed and believes, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17.     Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

18.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19.     As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,

///

1   from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven
2   at trial.

3       21.     As a further direct and proximate result of the said conduct of the defendants,
4   their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,
5   entitlements, wages, profits, and commissions, a diminishment of earning potential, and other
6   pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is
7   requested to amend this complaint to conform to proof at the time of trial.

8       22.     As a further direct and proximate result of the said conduct of the defendants,
9   their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-
10  containing products caused severe and permanent injury to Decedent, and ultimately Decedent
11  died on the date previously stated herein.

12      23.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
13  directors and managing agents participated in, authorized, expressly and impliedly ratified, and
14  had full knowledge of, or should have known of, each of the acts set forth herein.

15      24.     Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the
16  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
17  and each defendant's officers, directors, and managing agents participated in, authorized,      '
18  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
19  each of their ALTERNATE ENTITIES as set forth herein.

20      25.     The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
21  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in
22  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed
23  persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive
24  damages against said defendants.

25      WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and
26  each of them, as hereinafter set forth.

27  ///
28  ///

1
2

## SECOND CAUSE OF ACTION
(Products Liability - Survival)

3      PLAINTIFF SHIRLEY WHELAN AS SUCCESSOR-IN-INTEREST TO THE
4  DECEDENT ROBERT WHELAN COMPLAINS OF DEFENDANTS GENERAL ELECTRIC
5  COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION),
6  GENERAL DYNAMICS CORPORATION, NORTHROP GRUMMAN SHIPBUILDING, INC.,
7  BATH IRON WORKS CORPORATION, THEIR "ALTERNATE ENTITIES,"AND EACH OF
8  THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
9  ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAINS AS FOLLOWS:

10     26.    Plaintiff incorporates herein by reference, as though fully set forth herein, each
11  paragraph of the First Cause of Action herein.

12     27.    Defendants, their "alternate entities," and each of them, knew and intended that
13  the above-referenced asbestos and asbestos-containing products would be used by the purchaser
14  or user without inspection for defects therein or in any of their component parts and without
15  knowledge of the hazards involved in such use.

16     28.    Said asbestos and asbestos-containing products were defective and unsafe for their
17  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
18  and/or death.  The defect existed in the said products at the time they left the possession of
19  defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause
20  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
21  persons," including Decedent herein, while being used in a reasonably foreseeable manner,
22  thereby rendering the same defective, unsafe, and dangerous for use.

23     29.    "Exposed persons" did not know of the substantial danger of using said products.
24  Said dangers were not readily recognizable by "exposed persons."  Said defendants, their
25  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
26  which Decedent and others similarly situated were exposed.

27     30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
28  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

K:\Injured\13427\FED\PLD\cmp fed (wd).wpd                    9
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1 │ sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,
2 │ promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
3 │ marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
4 │ and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
5 │ did so with conscious disregard for the safety of "exposed persons" who came in contact with
6 │ said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
7 │ ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
8 │ death resulting from exposure to asbestos or asbestos-containing products, including, but not
9 │ limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part,
10 │ from scientific studies performed by, at the request of, or with the assistance of, said defendants,
11 │ their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
12 │ defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

13 │     31.    On or before 1930, and thereafter, said defendants, their ALTERNATE
14 │ ENTITIES and each of them, were aware that members of the general public and other "exposed
15 │ persons," who would come in contact with their asbestos and asbestos-containing products, had
16 │ no knowledge or information indicating that asbestos or asbestos-containing products could
17 │ cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
18 │ members of the general public and other "exposed persons," who came in contact with asbestos
19 │ and asbestos-containing products, would assume, and in fact did assume, that exposure to
20 │ asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
21 │ hazardous to health and human life.

22 │     32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
23 │ of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
24 │ lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
25 │ market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
26 │ asbestos-containing products without attempting to protect "exposed persons" from, or warn
27 │ "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
28 │ asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn

1  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
2  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
3  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
4  and suppressed said knowledge from "exposed persons" and members of the general public, thus
5  impliedly representing to "exposed persons" and members of the general public that asbestos and
6  asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their
7  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
8  representations with the knowledge of the falsity of said implied representations.

9  33.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,
10 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE
11 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
12 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
13 sale, inspection, installation, contracting for installation, repair, marketing, warranting,
14 rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise
15 directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing
16 products. In pursuance of said financial motivation, said defendants, their ALTERNATE
17 ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact
18 were consciously willing and intended to permit asbestos and asbestos-containing products to
19 cause injury to "exposed persons" and induced persons to work with and be exposed thereto,
20 including Decedent.

21 34.     Plaintiff alleges that the aforementioned defendants, their ALTERNATE
22 ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
23 products, to be safe for their intended use, but that their asbestos and asbestos-containing
24 products, created an unreasonable risk of bodily harm to exposed persons.

25 35.     Plaintiff relied upon defendants', their ALTERNATE ENTITIES, and each of their
26 representations, lack of warnings, and implied warranties of fitness of asbestos and their
27 asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent
28 suffered permanent injury and death as alleged herein.

36.     As a direct and proximate result of the actions and conduct outlined herein,

Decedent have suffered the injuries and damages herein alleged.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities", and

each of them, as hereinafter set forth.

THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

PLAINTIFF SHIRLEY WHELAN, AS WRONGFUL DEATH HEIR, AND AS

SUCCESSOR-IN-INTEREST TO ROBERT WHELAN DECEASED, COMPLAINS OF

DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA

FOSTER WHEELER CORPORATION), GENERAL DYNAMICS CORPORATION,

NORTHROP GRUMMAN SHIPBUILDING, INC., BATH IRON WORKS CORPORATION,

THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD,

SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE

(WRONGFUL DEATH), COMPLAINS AS FOLLOWS:

37.     Plaintiff incorporates by reference each paragraph contained within the First

Cause of Action as though fully set forth herein.

38.     The heir at law of the Decedent and the relationship to the Decedent is set forth

above.

39.     The individuals set forth as heir constitute all of the surviving heirs of the

Decedent.

40.     As a direct and proximate result of the conduct of the defendants, their

ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

containing products caused Decedent to develop diseases from which condition Decedent died.

Plaintiff was unaware that the death caused by asbestos-related disease until within one year of

filing the complaint.

41.     At all times prior to his death, Decedent was a faithful and dutiful spouse to the

surviving spouse.

///

1    42.    As a direct and proximate result of the conduct of defendants, and each of them,

2    and the death of Decedent, Decedent's heir has sustained pecuniary loss resulting from the loss of

3    care, society, comfort, attention, services, and support of Decedent all to the damage of

4    Decedent's heir.

5    43.    As a further direct and proximate result of the conduct of defendants, and each of

6    them, and the death of Decedent, Decedent's heir has incurred funeral expenses in an amount

7    currently not ascertained.

8    WHEREFORE, plaintiff prays judgment against defendants, and each of them, as

9    hereinafter set forth.

10    FOURTH  CAUSE OF ACTION<br>(Products Liability - Wrongful Death)

11

12    PLAINTIFF SHIRLEY WHELAN, AS WRONGFUL DEATH HEIR, AND AS

13    SUCCESSOR-IN-INTEREST TO ROBERT WHELAN DECEASED, COMPLAINS OF

14    DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA

15    FOSTER WHEELER CORPORATION), GENERAL DYNAMICS CORPORATION,

16    NORTHROP GRUMMAN SHIPBUILDING, INC., BATH IRON WORKS CORPORATION,

17    THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH,

18    SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

19    LIABILITY (WRONGFUL DEATH), COMPLAINS AS FOLLOWS:

20    44.    Plaintiff incorporates herein by reference, as though fully set forth herein, each

21    paragraph of the First, Second and Third Causes of Action herein.

22    45.    As a direct and proximate result of the conduct of defendants, and each of them,

23    Decedent's heir has sustained the injuries and damages previously alleged.

24    WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

25    each of them, as hereinafter set forth.

26    ///

27    ///

28    ///

## IV.

## DAMAGES AND PRAYER

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

    (a)    For plaintiff's general damages according to proof;

    (b)    For plaintiff's loss of income, wages and earning potential according to proof;

    (c)    For plaintiff's medical and related expenses according to proof;

    (d)    For plaintiff's cost of suit herein;

    (e)    For exemplary or punitive damages according to proof;

    (f)    For damages for fraud according to proof; and

    (g)    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: ___2/27/11___          BRAYTON❖PURCELL LLP

By: _____
        David R. Donadio
        Attorneys for Plaintiff


### JURY DEMAND

Plaintiff hereby demands trial by jury of all issues of this cause.

Dated: ___2/27/11___          BRAYTON❖PURCELL LLP

By: _____
        David R. Donadio
        Attorneys for Plaintiff

K:\Injured\113427\FED\PLD\cmp fed (wd).wpd

14

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1                                    EXHIBIT A

2   <u>Decedent</u>: ROBERT WHELAN, Deceased.

3

4   <u>Decedent's injuries</u>: Decedent's exposure to asbestos and asbestos-containing products caused

5   severe and permanent injury to the decedent, including, but not limited to breathing difficulties

6   and/or other lung damage. Decedent was diagnosed with lung cancer on or about March 2005,

7   Asbestosis on or about December 2010 and asbestos-related pleural disease on or about June

8   2010.

9

10   Decedent died on October 2, 2010.

11

12   <u>Retirement Status</u>: Decedent stopped working on March 31, 2005, due to his illness.

13

14   <u>Defendants</u>: Plaintiff contends that the asbestos-containing products to which Decedent was or

15   may have been exposed to were manufactured, supplied, distributed, installed and/or contracted

16   for by defendants and each of them.

17       Decedent's exposure to asbestos occurred at the following times and places, and involved

18   exposure to dust created by the contractors and the products of the entities listed below. The

19   exposure includes, <u>but is not limited,</u> to the following presently known contractors and the

20   manufacturers and distributors of asbestos-containing products:

21

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Florida Baptist Women's Auxiliary, Bradford, FL | Christian Youth Camp, Bradford, FL | Gardner | 06/1961-09/1961; 06/1962-09/1962; 06/1963-09/1963 |

Job Duties: Decedent performed yard work. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Training Center, San Diego, CA | Trainee | 1963 (3 months) |

K:\Injured\113427\FED\PLD\cmp fed (wd).wpd                16

1  Job Duties: Decedent underwent basic training. Plaintiff is currently unaware if decedent was
   exposed to asbestos during this military service.

2

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Air Station, Point Mugu, CA | Shipfitter | 12/20/1963- 09/1967 |
| | Naval Construction Battalion Center, Port Hueneme, CA | | |

Job Duties:  When decedent first arrived at Point Mugu, decedent was a fireman apprentice for 6
months and then became a fireman for 1 year. Decedent then made shipfitter metal smith, 3rd
class.  As a fireman apprentice and fireman, decedent was responsible for removing insulation,
overhauling valves, repacking valves and welding on YFU's (Yard Freight and Utilities), AVR's
and weather patrol boats, World War II converted PT boats mostly in the engine room.
Decedent used either a pocket knife or a hacksaw to remove the insulation which created dust
and fine fibers. Decedent sometimes re-used the insulation and wrapped it with cloth and
insulation mud and re-applied it on pipes.  When repairing water and steam valves and pumps,
decedent used asbestos-containing GARLOCK sheet gaskets, GARLOCK packing and
GOODYEAR gaskets and that sometimes had an inserted white cloth in them.  Decedent worked
as a shipfitter aboard various unknown surface craft vessels.  Decedent performed repair work in
the engine rooms, bulkheads and on piping systems.  Decedent cut and removed existing
asbestos-containing pipe insulation and removed and disturbed existing asbestos-containing
bulkhead insulation.  Decedent repaired existing asbestos-containing insulation.  Decedent cut
and installed asbestos cloth and recalled sealing the asbestos cloth with asbestos-containing
insulating cement.  Decedent cut and installed GARLOCK (GARLOCK SEALING
TECHNOLOGIES, LLC) asbestos-containing gaskets and installed GARLOCK (GARLOCK
SEALING TECHNOLOGIES, LLC) asbestos-containing packing materials.  Decedent
overhauled valves, including removing and replacing asbestos-containing valve packing
materials.  Decedent performed welding work and used asbestos blankets supplied by the navy.
Decedent recalled the following co-workers:  Winston Churchill Peterson, Ventura, California;
Lenny Buchta, Colville, Washington; George Ferguson, Oxnard or Port Hueneme, California;
Mr. Clucksdale, address unknown; William Standridge, address unknown.  Plaintiff currently
contends decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Seminis Vegetable Seeds, Inc. St Louis, MO | Unknown | Unknown | 1966 |

Job Duties: Plaintiff does not recall the specifics of decedent's employment. Plaintiff is currently
unaware if decedent was exposed to asbestos during this employment.

///

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | HOLLAND (AS-32) Charleston Naval Shipyard, Charleston, SC; La Roda, Spain | Shipfitter | 09/1967- 11/22/69 (approximately 2 years total) |

Job Duties: Decedent worked as a shipfitter and performed repair work throughout the vessel. Decedent removed, repaired and replaced pipelines and performed welding work. Decedent worked in proximity to insulators cutting and installing new asbestos-containing insulation. Plaintiff currently contends decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | SIMON LAKE (AS-33) Charleston Naval Shipyard, Charleston, SC; New London, CT; Bremerton, WA | Pipefitter | 9/2/70-1/1/71; 4/9/71-2/20/74 (approximately 2 years) |
| | NAUTILUS (SSN-571) Naval Submarine Base, New London, Groton, CT | | (approximately 30 days) |
| | JAMES K. POLK (SSBN-645) | | (approximately 30 days) |
| | GEORGE WASHINGTON (SSBN-598) Charleston Naval Shipyard, Charleston, SC | | (approximately 30 days) |
| | ROBERT E. LEE (SSBN-601) Charleston Naval Shipyard, Charleston, SC | | (approximately 30 days) |
| | THOMAS JEFFERSON (SSBN-618) | | |
| | BANCROFT (DD-598) | | |
| | ANDREW JACKSON (SSBN-619) Charleston Naval Shipyard, Charleston, SC | | |

Job Duties:  Decedent was stationed in the pipefitter shop 38 aboard the SIMON LAKE, a repair ship.  Decedent attended insulation school at Bremerton at the shipyard and learned how to use

1   different pipe fittings and used KAYLO (OWENS CORNING FIBERGLAS) insulation.
    Decedent recalled naval vessels, including submarines, docking alongside the SIMON LAKE,
2   and decedent performed overhaul work while it was in Bremerton, Washington. Decedent
    performed welding and piping repair, service and maintenance work. Decedent cut and removed
3   existing asbestos-containing pipe insulation and recalled repairing and reinstalling asbestos-
    containing pipecovering and asbestos cloth. Decedent sometimes mixed insulation cement to
4   apply to pipes. Decedent removed and replaced valves and insulation on high pressure steam
    lines. Decedent worked on WORTHINGTON pumps, CORNELL pumps and LESLIE (LESLIE
5   CONTROLS, INC.) valves. Decedent cut and installed asbestos-containing GARLOCK sheet
    gaskets, installed asbestos-containing FLEXITALLIC pre-cut gaskets, GARLOCK packing and
6   GOODYEAR (THE GOODYEAR TIRE & RUBBER COMPANY) gaskets. Decedent saw
    outside contractors work on boilers, repairing and re-bricking them.
7
    On the NAUTILUS, decedent served aboard this ship for 6 weeks and performed insulation
8   work. Decedent mixed insulation cement and applied it to pipes. Decedent recalled co-worker,
    John Locklear.
9
    On the ROBERT E. LEE, JAMES K. POLK, ANDREW JACKSON, THOMAS JEFFERSON
10  and GEORGE WASHINGTON vessels, decedent's duties included welding and piping repair.
    Decedent cut and removed existing asbestos-containing pipe insulation and recalled repairing and
11  reinstalling asbestos-containing pipecovering and asbestos cloth. Decedent recalled working in
    the reactor spaces and removing and replacing valves, including scraping and removing existing
12  asbestos-containing insulation.

13      Decedent worked in proximity to insulators removing and replacing asbestos-containing
    insulation. Decedent recalled the following co-workers: John Locklear, Charleston, South
14  Carolina; Charlie Cane, New York and David Graham, Mayport, Florida. Plaintiff currently
    contends decedent was exposed to asbestos during this military service.
15

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| US Navy | Naval Air Station Cecil Field, Mayport, FL | Shipfitter | 1973 (approximately 1 year) |
| | YOSEMITE (AD-19) | | 1974-1975 |
| | Charleston Naval Shipyard, Charleston, SC | | 1974-1975 (approximately 1 year) |

Job Duties: Decedent performed welding repair work aboard various ships, including destroyers.
Decedent cut and removed existing asbestos-containing insulation including bulkhead insulation.
Decedent repaired LESLIE valves. Decedent saw work being performed on boilers manufactured
by BABCOCK & WILCOX and FOSTER WHEELER. Decedent cut and installed asbestos-
containing GARLOCK sheet gaskets and installed asbestos-containing FLEXITALLIC gaskets.
    Decedent worked in proximity to boilermakers chipping and removing existing asbestos-
containing refractory cement from within boilers. Plaintiff currently contends decedent was
exposed to asbestos during this military service.

27  ///

28  ///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | WAINWRIGHT (DLG-28) Charleston Naval Shipyard, Charleston, SC | Chief Hull Technician | 1975-1980 (approximately 5 years) |

Job Duties: Decedent performed repair work throughout the vessel, including the boiler room, engine room, and on the bulkheads. Decedent performed welding work and recalled cutting and removing existing asbestos-containing pipe and block insulation. Decedent removed and disturbed existing asbestos-containing bulkhead insulation. Decedent worked with valves and installed asbestos-containing GARLOCK sheet gaskets. Decedent saw the boilers in the engine rooms being re-bricked and re-tubed.

Decedent performed piping repair work in the boiler room during a major overhaul at Charleston Naval Shipyard, Charleston, South Carolina. Decedent worked in proximity to pipefitters and machinists scraping, removing and replacing asbestos-containing gaskets and packing materials.

Decedent recalled the following co-workers: Freddy Helton, West Virginia; Walt Vasik, address currently unknown; Ron Moffett, address currently unknown; Jerry "Bingo" Long, address currently unknown, Larry Zauka, address unknown, Jerry Bell, address unknown, and Richard Shanken, address currently unknown. Plaintiff currently contends decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Charleston Naval Shipyard, Charleston, SC | Hull Technician | 1980-1981 |
| | Unknown ships | | |
| | Fleet Training Center, Charleston, SC | Instructor | 1981-1983 |

Job Duties: As an instructor, decedent performed ship inspections. Decedent inspected and evaluated ships to ensure equipment and piping systems were repaired and properly hooked up and installed. Plaintiff currently contends decedent was exposed to asbestos during this military service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Braswell Services Group, Inc. Charleston, SC | Braswell Shipyard, Charleston, SC | Machinist | 1980-1981; 1984-1986 |
| Swygert Shipyards, Inc., Johns Island, SC | Swygert Shipyard, Johns Island SC | Shipfitter | 1986 |
| Swygert Shipyards of Johns Island, Inc., Johns Island, SC | Swygert Shipyard, Johns Island, SC | Shipfitter | 1987 |
| D.M.I. Shipyards, Charleston, SC | D.M.I. Shipyards, Charleston, SC | Shipfitter | 1988 |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

Job Duties: Decedent performed piping and mechanical repair work on various unknown ships. Decedent overhauled valves, pumps, and compressors, including scraping and removing existing asbestos-containing gaskets and packing materials. Decedent installed asbestos-containing GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets. Decedent cut and punched gaskets from sheets of gasket materials for pumps manufactured by WESTINGHOUSE, WORTHINGTON (HALLIBURTON ENERGY SERVICES, INC.) and CORNELL. Decedent recalled scraping and removing existing asbestos-containing insulation from valves. While employed by Braswell Services, Inc., decedent was a lead man in the hull department and worked onboard ships at its shipyard in Charleston, South Carolina. While employed by Swygert Shipyards, Inc. and Swygert Shipyards of Johns Island, Inc., decedent worked as a shipfitter, laying out plates, cutting them and fitting them on ships. Decedent recalled the following co-workers while employed by Braswell Services, Inc., Swygert Shipyards, Inc., Swygert Shipyards of Johns Island, Inc.: George Crizwell, Al Limehouse, David Coats, and Bob Connells. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Metal Trades, Inc. Hollywood, SC | Metal Trades, Inc., 4194 Highway 165, Yonges Island, SC | Machinist | 1980 -1981; 1986; 1989-1993 |
| | | Safety Instructor | 1994-1997 |

Job Duties: Decedent worked as a foreman in the hull department and as an oil technician. Decedent removed and replaced asbestos-containing gaskets and packing materials. Decedent overhauled valves, including scraping, removing, and replacing asbestos-containing packing materials. Decedent recalled using GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) asbestos-containing gaskets and packing (until approximately the mid-1980's). Decedent worked in proximity to various other trades, including insulators scraping and removing existing asbestos-containing insulation. Decedent later became a safety instructor and recalled boarding ships to inspect and evaluate work spaces. During his work as safety inspector, decedent worked in proximity to workers performing plate work, pipe work, and boiler work on a daily basis. Decedent recalled the following co-workers: Paul Pierce, Bubba Johnson. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Detyens Shipyards, Inc., Mt. Pleasant, SC | Detyens Shipyard, North Charleston, SC | Pipefitter | 1981 (off & on) |

Job Duties:  Decedent worked as a pipefitter performing repair work aboard various unknown vessels. Decedent cut and installed asbestos-containing GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets and installed asbestos-containing packing materials. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | GARCIA (DE-1040) | Hull Technician | 1983-1984 (approximately 1 year) |

Job Duties:  Decedent worked as a hull technician and recalled performing piping and welding work. Plaintiff currently contends decedent was exposed to asbestos during this military service.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Kelley & Associates Inc.<br>1195 Lee Blvd<br>Orangeburg SC | Unknown | Unknown | 1987 |

Job Duties: Plaintiff does not recall the specifics of decedent's employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Hyral Industries, Inc.<br>Columbia, SC | Unknown | Unknown | 1988 |

Job Duties: Plaintiff does not recall the specifics of decedent's employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Cooper River Machine LLC<br>1010 Poindexter St<br>Chesapeake, FL | Unknown | Unknown | 1997 |

Job Duties: Plaintiff does not recall the specifics of decedent's employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Charleston Shipbuilders Inc.<br>1300 Citizens Blvd #300<br>Leesburg, FL | Unknown | Unknown | 1997 |

Job Duties: Plaintiff does not recall the specifics of decedent's employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| RIC Construction<br>Charleston, SC | Various commercial and industrial job sites around South Carolina | Safety Officer | 1998 - 2005 |
| | Including: | | |
| | Westvaco Corporation,<br>Charleston, SC | | (approximately 4 months) |
| | Reagent Chemical Plant,<br>Charleston, SC | | (approximately 4 months) |
| | Georgia-Pacific,<br>Russellville, SC | | (approximately 4 months) |

K:\Injured\113427\FED\PLD\cmp fed (wd).wpd

22

1   Job Duties: Decedent worked as a safety officer and inspector during new construction,
    additions, and remodels at existing chemical plants and paper mills. Decedent worked alongside
2   contractors repairing and moving paper machines, vessels, and tanks. Decedent monitored
    confined spaces and entries. Plaintiff is currently unaware if decedent was exposed to asbestos
3   during this employment.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28