SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** A.W. CHESTERTON COMPANY; AIR & LIQUID
*(AVISO AL DEMANDADO):* SYSTEMS CORPORATION, as successor by merger
to BUFFALO PUMPS, INC.; Additional Parties Attachment Page is attached

**YOU ARE BEING SUED BY PLAINTIFF:** EDWARD GUY BUCK and MARYLN
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* BUCK

[(c) COPY]

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* |

Superior Court of California, County of San Francisco
400 McAllister Street
San Francisco, California  94102

CGC - 10 - 275694

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Paula A. Rasmussen, Esq.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BRENT COON & ASSOCIATES
44 Montgomery St., Suite 800, San Francisco, CA 94104

415-489-7420

DATE:                                          Clerk, by                              , Deputy
*(Fecha)* NOV - 4 2010   CLERK OF THE COURT   *(Secretario)*  P. NAFF   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
[SEAL]
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)

[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
[CCPDOC]

SUM-200(A)

| SHORT TITLE: Edward Guy Buck, et al. vs. A.W. Chesterton Company, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

ALFA LAVAL, INC., individually and as successor interest to SHARPLES, INC., ALFA LAVAL SEPARATION, INC. and DELAVAL SEPARATOR COMPANY; BAYER CROPSCIENCE, INC., formerly known as AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY; BW/IP, INC., and its wholly-owned subsidiaries; CRANE CO.; CROWN CORK & SEAL COMPANY, INC., individually and as successor to MUNDET CORK COMPANY; EATON CORPORATION, individually and as successor in interest to EATON ELECTRICAL, INC., formerly known as CUTLER-HAMMER, INC.; ELLIOTT COMPANY, also known as ELLIOTT TURBOMACHINERY COMPANY, INC.; ERICSSON INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EUS INC., individually and as successor in interest to ANACONDA CABLE & WIRE COMPANY and CONTINENTAL WIRE & CABLE COMPANY; GENERAL ELECTRIC COMPANY; GOULDS PUMPS, INCORPORATED; GRAYBAR ELECTRIC COMPANY, INC.; HILL BROTHERS CHEMICAL COMPANY; IMO INDUSTRIES, INC., individually and as successor in interest to DELAVAL STEAM TURBINE CO.; INGERSOLL-RAND COMPANY, individually and as successor in interest to TERRY STEAM TURBINE COMPANY; J.T. THORPE & SON, INC.; JOHN CRANE, INC., as successor to CRANE PACKING COMPANY and JOHN CRANE-HOUDAILLE, INC.; METALCLAD INSULATION CORPORATION, individually and as successor in interest to NORTHERN CALIFORNIA INSULATION; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN CORPORATION, individually and as successor in interest to SACOMO-SIERRA; QUINTEC INDUSTRIES, INC.; RAPID-AMERICAN CORPORATION; ROCKWELL AUTOMATION, INC., individually and as the successor in interest to ALLEN-BRADLEY COMPANY, LLC.; SB DECKING, INC., formerly known as SELBY, BATTERSBY & COMPANY; SCHNEIDER ELECTRIC USA, INC. formerly known as SQUARE D CO.; SEPCO CORPORATION; SULZER PUMPS (US) INC.; THE WM. POWELL COMPANY; UNION CARBIDE CORPORATION; UNIROYAL HOLDING, INC.; VIAD CORPORATION, individually and as successor in interest to GRISCOM-RUSSELL and DIAL CORPORATION; WARREN PUMPS, LLC; and DOES 1-500, inclusive.

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

ProDoc®

COPY

1  Richard A. Brody, Esq. (SBN 100379)
   Paula A. Rasmussen, Esq. (SBN 258352)
2  BRENT COON & ASSOCIATES
   44 Montgomery Street, Suite 800
3  San Francisco, CA 94104
   Telephone:  415.489.7420
4  Facsimile:  415.489.7426

5  J. Dennis Weitzel, Esquire (seeking Pro Hoc Admission)
   Texas State Bar No. 21118200
6  Morgan & Morgan, PA
   20 N. Orange Avenue
7  Suite 1600
   Orlando, FL 32802
8  Telephone: 407.420.1414
   Facsimile: 407.422.8925
9
   Attorneys for Plaintiffs
10

11

ENDORSED
FILED
San Francisco County Superior Court

NOV – 4 2010

CLERK OF THE COURT
BY: _____ PARAM NATT
                    Deputy Clerk

ASBESTOS
CASE MANAGEMENT CONFERENCE

OCT 2 0 2011 1:30 PM

DEPARTMENT   220

12            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                 IN AND FOR THE COUNTY OF SAN FRANCISCO

14

15  EDWARD GUY BUCK and MARYLN BUCK,          Case No.  CGC-10-275694

16       Plaintiffs,                          COMPLAINT FOR DAMAGES
                                              (PERSONAL INJURY--ASBESTOS)
17  v.
                                              1.  Negligence
18  A.W. CHESTERTON COMPANY; AIR &            2.  Strict Products Liability
    LIQUID SYSTEMS CORPORATION, as            3.  Failure to Warn
19  successor by merger to BUFFALO PUMPS,     4.  Breach of Warranties
    INC.; ALFA LAVAL, INC., individually and as 5.  Fraud and Conspiracy
20  successor interest to SHARPLES, INC., ALFA 6.  False Representation Under
    LAVAL SEPARATION, INC. and DELAVAL           Restatement Torts Section 402-B
21  SEPARATOR COMPANY; BAYER               7.  Loss of Consortium
22  CROPSCIENCE, INC.; formerly known as
    AMCHEM PRODUCTS, INC. and BENJAMIN         Punitive Damages
23  FOSTER COMPANY; BW/IP, INC., and its
24  wholly-owned subsidiaries; CRANE CO.;
25  CROWN CORK & SEAL COMPANY, INC.,       THIS CASE IS SUBJECT TO
    individually and as successor to MUNDET   MANDATORY ELECTRONIC FILING
26  CORK COMPANY; EATON CORPORATION,    PURSUANT TO AMENDED G.O. 158
27  individually and as successor in interest to
    EATON ELECTRICAL, INC., formerly known
28  as CUTLER-HAMMER, INC.; ELLIOTT

                                      1

COMPANY, also known as ELLIOTT TURBOMACHINERY COMPANY, INC.; ERICSSON INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EUS INC., individually and as successor in interest to ANACONDA CABLE & WIRE COMPANY and CONTINENTAL WIRE & CABLE COMPANY; GENERAL ELECTRIC COMPANY; GOULDS PUMPS, INCORPORATED; GRAYBAR ELECTRIC COMPANY, INC.; HILL BROTHERS CHEMICAL COMPANY;  IMO INDUSTRIES, INC., individually and as successor in interest to DELAVAL STEAM TURBINE CO.; INGERSOLL-RAND COMPANY, individually and as successor in interest to TERRY STEAM TURBINE COMPANY; J.T. THORPE & SON, INC.; JOHN CRANE, INC., as successor to CRANE PACKING COMPANY and JOHN CRANE-HOUDAILLE, INC.; METALCLAD INSULATION CORPORATION, individually and as successor in interest to NORTHERN CALIFORNIA INSULATION; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN CORPORATION, individually and as successor in interest to SACOMO-SIERRA; QUINTEC INDUSTRIES, INC.; RAPID-AMERICAN CORPORATION; ROCKWELL AUTOMATION, INC., individually and as the successor in interest to ALLEN-BRADLEY COMPANY, LLC.; SB DECKING, INC., formerly known as SELBY, BATTERSBY & COMPANY; SCHNEIDER ELECTRIC USA, INC. formerly known as SQUARE D CO.; SEPCO CORPORATION; SULZER PUMPS (US) INC.; THE WM. POWELL COMPANY; UNION CARBIDE CORPORATION; UNIROYAL HOLDING, INC.; VIAD CORPORATION, individually and as successor in interest to GRISCOM-RUSSELL and DIAL CORPORATION; WARREN PUMPS, LLC; and DOES 1-500, inclusive,

     Defendants.

/ / /

2

1        Plaintiffs EDWARD GUY BUCK and MARYLN BUCK (hereinafter "plaintiffs")

2 complain of all defendants, and each of them, and allege:

3                       GENERAL ALLEGATIONS

4        1.       Plaintiffs bring this action on their own behalf and are hereinafter referred to as

5 "plaintiffs."  Plaintiffs know of no other parties who should be named as a plaintiff herein.

6        2.       Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

7 DOES 1 through 500, inclusive, and therefore sue these defendants by such fictitious names.

8 Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

9 Plaintiffs are informed and believe and thereon allege that each of said fictitiously named

10 defendants are, through their negligence, intentional torts, and/or conduct giving rise to strict

11 liability, responsible or liable in some manner for the occurrences herein alleged, and that the

12 injuries herein alleged were the direct and legal result of said negligence, intentional torts, and/or

13 conduct giving rise to strict liability.

14        3.       At all times mentioned in this complaint, each of the defendants was the agent and

15 employee of each of the remaining defendants, and by their actions as alleged in this complaint

16 each defendant was acting within the course and scope of this agency and employment, and each

17 defendant has ratified and approved the acts of the remaining defendants.  The Federal Courts lack

18 subject matter jurisdiction over this action as there is no federal question and incomplete diversity

19 of citizenship exists due to the presence of one or more California defendants.  Removal is

20 improper.  Every claim arising under the constitution, treaties, or laws of the United States is

21 expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or

22 of any officer of the U.S. or any agency or person acting under him occurring under color of such

23 office).  No claim of admiralty or maritime law is raised.  Plaintiff sues no foreign state or agency.

24 Venue is proper in San Francisco County, California.

25        4.       Defendants A.W. CHESTERTON COMPANY; AIR & LIQUID SYSTEMS

26 CORPORATION, as successor by merger to BUFFALO PUMPS, INC.; ALFA LAVAL, INC.,

27 individually and as successor interest to SHARPLES, INC., ALFA LAVAL SEPARATION, INC.

28 and DELAVAL SEPARATOR COMPANY; BAYER CROPSCIENCE, INC.; formerly known as

3

---

           COMPLAINT FOR DAMAGES (PERSONAL
                                                     INJURY--ASBESTOS)

1   AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY; BW/IP, INC., and its

2   wholly-owned subsidiaries; CRANE CO.; CROWN CORK & SEAL COMPANY, INC.,

3   individually and as successor to MUNDET CORK COMPANY; EATON CORPORATION,

4   individually and as successor in interest to EATON ELECTRICAL, INC., formerly known as

5   CUTLER-HAMMER, INC.; ELLIOTT COMPANY, also known as ELLIOTT

6   TURBOMACHINERY COMPANY, INC.; ERICSSON INC. WHICH WILL DO BUSINESS IN

7   CALIFORNIA AS EUS INC., individually and as successor in interest to ANACONDA CABLE &

8   WIRE COMPANY and CONTINENTAL WIRE & CABLE COMPANY; GENERAL ELECTRIC

9   COMPANY; GOULDS PUMPS, INCORPORATED; GRAYBAR ELECTRIC COMPANY, INC.;

10   HILL BROTHERS CHEMICAL COMPANY;  IMO INDUSTRIES, INC., individually and as

11   successor in interest to DELAVAL STEAM TURBINE CO.; INGERSOLL-RAND COMPANY,

12   individually and as successor in interest to TERRY STEAM TURBINE COMPANY; J.T.

13   THORPE & SON, INC.; JOHN CRANE, INC., as successor to CRANE PACKING COMPANY

14   and JOHN CRANE-HOUDAILLE, INC.; METALCLAD INSULATION CORPORATION,

15   individually and as successor in interest to NORTHERN CALIFORNIA INSULATION; OWENS-

16   ILLINOIS, INC.; PARKER-HANNIFIN CORPORATION, individually and as successor in

17   interest to SACOMO-SIERRA; QUINTEC INDUSTRIES, INC.; RAPID-AMERICAN

18   CORPORATION; ROCKWELL AUTOMATION, INC., individually and as the successor in

19   interest to ALLEN-BRADLEY COMPANY, LLC.; SB DECKING, INC., formerly known as

20   SELBY, BATTERSBY & COMPANY; SCHNEIDER ELECTRIC USA, INC. formerly known as

21   SQUARE D CO.; SEPCO CORPORATION; SULZER PUMPS (US) INC.; THE WM. POWELL

22   COMPANY; UNION CARBIDE CORPORATION; UNIROYAL HOLDING, INC.; VIAD

23   CORPORATION, individually and as successor in interest to GRISCOM-RUSSELL and DIAL

24   CORPORATION; WARREN PUMPS, LLC; and DOES 1 through 500, inclusive, are at all times

25   herein mentioned, and were corporations or other business entities organized and existing under the

26   laws of the state of California and/or qualified to do business in this state.

27   ///

28   ///

4

1    A.    MANUFACTURING/DISTRIBUTING DEFENDANTS.  The following

2  defendants designated as "manufacturing/distributing defendants" are named in their capacities as

3  manufacturers, distributors, suppliers and installers of asbestos-containing products:  A.W.

4  CHESTERTON COMPANY; AIR & LIQUID SYSTEMS CORPORATION, as successor by

5  merger to BUFFALO PUMPS, INC.; ALFA LAVAL, INC., individually and as successor interest

6  to SHARPLES, INC., ALFA LAVAL SEPARATION, INC. and DELAVAL SEPARATOR

7  COMPANY; BAYER CROPSCIENCE, INC.; formerly known as AMCHEM PRODUCTS, INC.

8  and BENJAMIN FOSTER COMPANY; BW/IP, INC., and its wholly-owned subsidiaries; CRANE

9  CO.; CROWN CORK & SEAL COMPANY, INC., individually and as successor to MUNDET

10  CORK COMPANY; EATON CORPORATION, individually and as successor in interest to

11  EATON ELECTRICAL, INC., formerly known as CUTLER-HAMMER, INC.; ELLIOTT

12  COMPANY, also known as ELLIOTT TURBOMACHINERY COMPANY, INC.; ERICSSON

13  INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EUS INC., individually and as

14  successor in interest to ANACONDA CABLE & WIRE COMPANY and CONTINENTAL WIRE

15  & CABLE COMPANY; GENERAL ELECTRIC COMPANY; GOULDS PUMPS,

16  INCORPORATED; GRAYBAR ELECTRIC COMPANY, INC.; HILL BROTHERS CHEMICAL

17  COMPANY;  IMO INDUSTRIES, INC., individually and as successor in interest to DELAVAL

18  STEAM TURBINE CO.; INGERSOLL-RAND COMPANY, individually and as successor in

19  interest to TERRY STEAM TURBINE COMPANY; J.T. THORPE & SON, INC.; JOHN CRANE,

20  INC., as successor to CRANE PACKING COMPANY and JOHN CRANE-HOUDAILLE, INC.;

21  METALCLAD INSULATION CORPORATION, individually and as successor in interest to

22  NORTHERN CALIFORNIA INSULATION; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN

23  CORPORATION, individually and as successor in interest to SACOMO-SIERRA; QUINTEC

24  INDUSTRIES, INC.; RAPID-AMERICAN CORPORATION; ROCKWELL AUTOMATION,

25  INC., individually and as the successor in interest to ALLEN-BRADLEY COMPANY, LLC.; SB

26  DECKING, INC., formerly known as SELBY, BATTERSBY & COMPANY; SCHNEIDER

27  ELECTRIC USA, INC. formerly known as SQUARE D CO.; SEPCO CORPORATION; SULZER

28  PUMPS (US) INC.; THE WM. POWELL COMPANY; UNION CARBIDE CORPORATION;

5

1  UNIROYAL HOLDING, INC.; VIAD CORPORATION, individually and as successor in interest

2  to GRISCOM-RUSSELL and DIAL CORPORATION; and WARREN PUMPS, LLC.

3          B.    INSULATION DEFENDANTS.  The following defendants designated as

4  "insulation defendants" are named in their capacities as companies that manufactured, sold or

5  distributed asbestos-containing thermal insulation products, including but not limited to pipe

6  covering, block insulation, cements, sealants, adhesives, and cloth: CROWN CORK & SEAL

7  COMPANY, INC.; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN CORPORATION;

8  QUINTEC INDUSTRIES; RAPID-AMERICAN CORPORATION; SEPCO CORPORATION;

9  SYD CARPENTER MARINE CONTRACTOR, INC.; and UNIROYAL HOLDING, INC.

10          C.    GASKET AND PACKING DEFENDANTS.  The following defendants

11  designated as "gasket and packing defendants" are named in their capacities as manufacturers and

12  distributors of asbestos-containing products including but not limited to gasket and packing

13  products: A.W. CHESTERTON COMPANY; AIR & LIQUID SYSTEMS CORPORATION;

14  ALLIED PACKING & SUPPLY, INC.; BW/IP, INC.; CRANE CO.; FOSTER WHEELER USA

15  CORPORATION; JOHN CRANE, INC.; PARKER-HANNIFIN CORPORATION; SEPCO

16  CORPORATION; SULZER PUMPS (US) INC.; WARREN PUMPS, LLC; and THE WM.

17  POWELL COMPANY.

18          D.    MECHANICAL EQUIPMENT DEFENDANTS.  The following defendants

19  designated as "mechanical equipment defendants" are named in their capacities as manufacturers,

20  sellers, distributors and rebranders of asbestos-containing mechanical equipment including but not

21  limited to pumps, valves, turbines, motors, condensors, separators, steam traps, strainers, engines,

22  HVAC systems, steam generators, boilers, cooling tower accessories, cooling exchangers,

23  evaporative coolers, condensing units, flexible duct connectors, forced draft blowers, controller and

24  regulator equipment, refrigeration equipment, heating equipment, heat exchangers, furnaces, and

25  liquid level indicators: AIR & LIQUID SYSTEMS CORPORATION; ALFA LAVAL, INC.;

26  BW/IP, INC.; CBS CORPORATION; CRANE CO.; ELLIOTT COMPANY; FOSTER

27  WHEELER USA CORPORATION; GENERAL ELECTRIC COMPANY; GOULDS PUMPS,

28  ///

*Buck v. A.W. Chesterton Company, et al.*               COMPLAINT FOR DAMAGES (PERSONAL
                                                                                 INJURY--ASBESTOS)

1   INCORPORATED; IMO INDUSTRIES, INC.; INGERSOLL-RAND COMPANY; JOHN

2   CRANE, INC.; SULZER PUMPS (US) INC.; VIAD CORPORATION; WARREN PUMPS, LLC;

3   and THE WM. POWELL COMPANY.

4           E.     BOILER DEFENDANTS. The following defendants designated as "boiler

5   defendants" are named in their capacities as manufacturer of boilers and furnaces that contained

6   asbestos-containing insulation, gaskets, packing and refractory products: FOSTER WHEELER

7   USA CORPORATION; J.T. THORPE & SON, INC.;

8           F.     CABLE WIRE ELECTRICAL DEFENDANTS. The following defendants

9   designated as "cable wire electrical defendants" are named in their capacities as companies that

10   manufactured, sold, distributed, installed or removed asbestos-containing electrical equipment and

11   components, including but not limited to cable, wire, circuit breakers, transformers, and switch

12   boxes: EATON CORPORATION; ERICSSON, INC.; GRAYBAR ELECTRIC COMPANY,

13   INC.; ROCKWELL AUTOMATION, INC.; SCHNEIDER ELECTRIC USA, INC.; and UNION

14   CARBIDE CORPORATION.

15           G.     CONSTRUCTION DEFENDANTS. The following defendants designated

16   as "construction defendants" are named in their capacities as companies that manufactured, sold,

17   distributed, installed or removed asbestos-containing construction products including but not

18   limited to drywall, drywall accessory products (including taping and joint compounds), stucco,

19   cements, plastic cement, gun plastic cement, drywall adhesive, putty, mastic, and fireproofing:

20   AIR & LIQUID SYSTEMS CORPORATION; CERTAINTEED CORPORATION; HANSON

21   PERMANENTE CEMENT, INC.; and KAISER GYPSUM COMPANY, INC.

22           H.     ASBESTOS FIBER DEFENDANTS. The following defendants designated

23   as "asbestos fiber defendants" are named in their capacities as miners, millers, manufacturers,

24   distributors, and rebranders of asbestos fiber: HILL BROTHERS CHEMICAL COMPANY; and

25   UNION CARBIDE CORPORATION.

26   / / /

27   / / /

28   / / /

7

1       I.    CONTRACTOR DEFENDANTS.  The following defendants designated as

2   "contractor defendants" are named in their capacities as companies that manufactured, sold,

3   installed, removed, replaced, supplied, disturbed, manipulated and/or maintained asbestos-

4   containing materials:  J.T. THORPE & SON, INC.; METALCLAD INSULATION

5   CORPORATION; SB DECKING, INC.; SYD CARPENTER MARINE CONTRACTOR, INC.;

6       5.    At all times mentioned herein, defendants, and each of them, were engaged in the

7   business of mining, milling, manufacturing, testing, developing, processing, importing, converting,

8   compounding, assembling, fabricating, modifying, designing, specifying, approving, supplying,

9   distributing, delivering, packaging, labeling, advertising, marketing, warranting, applying,

10   installing, and inspecting asbestos, and products produced therefrom, for sale to and use by

11   members of the general public, as well as for sale to and use by other parties to manufacture,

12   assemble, supply, distribute, label, apply and install products made therefrom, or both.

13       6.    The defendants, and each of them, acting through their agents, servants and/or

14   employees, cause, and have caused in the past, certain asbestos-containing products and asbestos-

15   related materials, including but not limited to insulation, refractory materials, fireproofing, boilers

16   and boiler covers, pumps, valves, gaskets, packing, engines, motors, turbines, turbine covers,

17   bakelite, coatings, electrical, switching, transformers, compressors, cables, wires, controls, circuit

18   breakers, molding compounds, adhesives, coatings, piping, plumbing, HVAC, blowers, rope, cloth,

19   fabric, felt, fibers, tiles, flooring, decking, building materials, paint, drywall compounds, roofing,

20   welding, construction equipment office equipment, as well as various automotive components

21   including gaskets, brakes, clutch and other materials to be placed on the market and in the stream

22   of interstate commerce with the result that said products and materials came into use by plaintiff

23   and those working in close proximity to plaintiff at relevant times herein.

24       7.    Plaintiff EDWARD GUY BUCK was exposed to asbestos during the course of his

25   life in the manner and during the time periods set forth below:

26       Plaintiff was employed at the following locations where he alleges possible exposure to

27   asbestos:  Plaintiff was exposed while serving in the United States Navy as an Operations Officer

28   on various ships during the years of 1947 through 1974. After graduating from the United States

8

*Buck v. A.W. Chesterton Company, et al.*            COMPLAINT FOR DAMAGES (PERSONAL
                                                        INJURY--ASBESTOS)

1  Naval Academy in June 1947, Plaintiff served as an Operations and Engineering Officer for the

2  decommissioning and retrofitting of several ships at the United States Naval facilities in the Bay

3  Area. In 1947, at Hunters Point Naval Shipyard, Plaintiff supervised crews emptying all

4  compartments below decks of all materials for the decommissioning of the USS Shangri La (CV-

5  38). Thereafter, he served on the USS Princeton and was present in Long Beach Naval Shipyard

6  and Brimerton Naval Shipyard for work on the ships. In 1952, he was assigned to reopening and

7  reconditioning of the US Naval Air Station in Brunswick, Maine, which required demolition and

8  reconstruction of various hangers and support buildings. In 1952, Plaintiff began Aeronautical

9  Engineering training and Special Weapons training which continued to be his career in the United

10  States Navy until his retirement as a Captain in 1974.

11      Decedent sustained no exposure to asbestos subsequent to December 5, 1980.

12      8.    During the course and scope of his employment, plaintiff continually worked with

13  and in close proximity to others who were working with asbestos and asbestos-containing products.

14  He routinely and regularly worked in close proximity to asbestos and asbestos-containing products

15  and was continually exposed to asbestos fibers which were released from asbestos and asbestos-

16  containing products which were mined, milled, manufactured, processed, imported, converted,

17  compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and

18  sold by defendants, and each of them.

19      9.    Plaintiff's exposure to asbestos was the direct and legal cause of his development of

20  an asbestos-related disease known and designated as mesothelioma and other illnesses and

21  disabilities whose relationship to asbestos is as yet unknown to plaintiff herein.

22                    FIRST CAUSE OF ACTION

23                           (Negligence)

24      10.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

25  fully set forth herein, each and every allegation contained in the General Allegations.

26      11.    At all times relevant herein, defendants and each of them, owed a duty of due care

27  which required them to exercise ordinary care to protect against an unreasonable risk of harm. This

28  duty was owed to plaintiff.

*Buck v. A.W. Chesterton Company, et al.*            COMPLAINT FOR DAMAGES (PERSONAL
                                                  INJURY--ASBESTOS)

1    12.    Plaintiff's development of mesothelioma and related conditions is the direct and

2  legal result of the conduct of the defendants, and each of them, in that they negligently and

3  carelessly researched, tested or failed to test, manufactured, designed, specified, developed,

4  labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed,

5  distributed and supplied asbestos and asbestos-containing products.  Defendants, and each of them,

6  without any adequate warning to the consumer or user, produced, sold, and otherwise put into the

7  stream of interstate commerce the foregoing materials which said defendants, and each of them

8  knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and

9  highly harmful to plaintiff's body, lungs, respiratory system, skin and health.  Further, defendants,

10  and each of them, knew, or through the exercise of ordinary care should have known, that exposure

11  to asbestos is, and at all times relevant herein has been, associated with terminal and incurable

12  diseases which have caused and continue to cause death.

13    13.    During the time period when plaintiff was exposed to asbestos in the manner

14  described above, he had no knowledge that said exposure placed him at risk for developing the

15  diseases described herein and therefore had no opportunity, nor can he be charged with a duty or

16  breach of duty, to protect himself against said harmful asbestos exposure.  Plaintiff had no

17  knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them,

18  were actionable at law when they were committed and cannot be charged with knowledge or

19  inquiry thereof.

20    14.    The mesothelioma, asbestosis, pleural plaques, and related conditions that afflict

21  plaintiff developed at a microscopic and undetectable level over an extended period of time,

22  without noticeable trauma, and was therefore unknown and unknowable to plaintiff until his

23  physicians diagnosed him with mesothelioma, asbestosis, pleural plaques and related conditions

24  within the pertinent statute of limitations.  Prior to his diagnosis, plaintiff did not know, nor

25  through the exercise of reasonable diligence could he have known, that his disease and related

26  conditions were caused by his exposure to the defendants' asbestos and asbestos-containing

27  products.

28  ///

10

*Buck v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                            INJURY--ASBESTOS)

15.     As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed a disease known and designated as mesothelioma, asbestosis, pleural plaques and related conditions.

16.     As a further direct and legal result of the conduct of defendants, and each of them, it has been and continues to be necessary for plaintiff to retain the services of physicians, hospitals, hospice, and other health care professionals to diagnose, treat, and provide palliative care for plaintiff from now until he approaches the end of his life. As a further direct and legal result of the conduct of the defendants, and each of them, it will be necessary for plaintiff to retain the services of health care professionals in the future for an indeterminable period of time. Plaintiff does not yet know the full extent of treatment that will be required nor the reasonable value of medical services rendered or to be rendered to plaintiff herein and therefore requests leave to amend this complaint when that sum is determined.

17.     As a direct and legal result of the conduct of the defendants, and each of them, and of plaintiff's diagnosis of mesothelioma, asbestosis, pleural plaques and related conditions, plaintiff has been unable to follow his normal or any gainful occupation for certain periods preceding and following his diagnosis, and plaintiff will remain disabled for an indeterminable time. Plaintiff has incurred, and will incur, loss of income, wages, pensions, earning potential, profits and commissions, and other pecuniary losses. Plaintiff does not know the amount of said past and future losses and therefore requests leave to amend this complaint when that sum is determined.

18.     As a further direct and legal result of the negligence of defendants, and each of them, and plaintiff's diagnosis of mesothelioma, asbestosis, pleural plaques and related conditions, plaintiff has been damaged in his health, strength, and activity, and endured and continues to endure unrelenting physical and emotional pain and suffering, emotional distress, mental distress, mental anguish, fear, nervousness, grief, anxiety, worry, humiliation and indignity, the full nature and extent of which are presently unknown to plaintiff and for which plaintiff has incurred general damages in excess of $50,000.00.

/ / /

/ / /

11

_Buck v. A.W. Chesterton Company, et al._                    COMPLAINT FOR DAMAGES (PERSONAL
                                                             INJURY--ASBESTOS)

19.     Since 1924, the defendants, and each of them, knew or should have known of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the plaintiff and others in plaintiff's position working in close proximity with such materials.  The defendants, and each of them, knew or should have known of the dangerous propensities of the aforementioned materials and products since before that time.

20.     Although defendants knew or should have known of the aforementioned information, defendants, and each of them, negligently, carelessly, and recklessly failed to label any of the aforementioned asbestos-containing materials and products, including those with which and around which plaintiff worked such as thermal insulation materials specified for or on/in boilers, regarding the hazards of such materials and products to the health and safety of plaintiff and others in plaintiff's position working in close proximity with such materials until 1964.

21.     Commencing in 1964, many of such asbestos-containing materials were not labeled as hazardous by all of the defendants herein, despite the fact that the knowledge of such hazards existed and that defendants, and each of them, knew or should have known of such hazards since 1924. At all times herein mentioned, defendants, and each of them, negligently, carelessly, and recklessly:

      A.     failed to provide information relating to the danger of the use of the aforementioned materials to plaintiff and others in plaintiff's position and the general public concerning the dangerous nature of the aforementioned materials to workers;

      B.     failed to disseminate such information in a manner which would give general notice to the public and knowledge of the hazardous nature thereof, when defendants were bound to disclose such information;

      C.     sold the aforementioned products and materials to plaintiff's employer(s) and others without advising such employers and others of dangers of the use of such materials to persons working in close proximity thereto, when defendants knew or should have known of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers;

/ / /

12

1          D.      negligently, carelessly and recklessly misrepresented to plaintiff, others in

2    plaintiff's position, and plaintiff's employer that it was safe for plaintiff to work in close proximity

3    to such materials, when they knew that this was not the case; and

4          E.      negligently, carelessly and recklessly failed to disclose to plaintiff, others in

5    plaintiff's position, plaintiff's employer, and members of the general public, medical and scientific

6    data and knowledge of the results of studies including, but not limited to, the information and

7    knowledge of the contents of the Lanza report.

8        22.   A.    Defendants, and each of them, knew or should have known of the

9    connection between inhalation of asbestos fibers and lung cancer, asbestosis, pleural plaques, and

10   related conditions which information was disseminated through the Asbestos Textile Institute and

11   other industry organizations to all other defendants, and each of them, herein.

12         B.     At all times mentioned herein, defendants, and each of them, knew or should

13   have known of the connection between inhalation of asbestos fibers and cancer, which information

14   was disseminated through the Asbestos Textile Institute and other industry organizations to all

15   other defendants herein.

16       23.   Defendants, and each of them, negligently, carelessly and recklessly failed to

17   provide the above described medical and scientific data to plaintiff, others in plaintiff's position,

18   plaintiff's employer(s), and members of the general public concerning such knowledge of danger,

19   when defendants were bound to disclose it.

20       24.   Defendants, and each of them, knew or should have known that said asbestos-

21   containing materials were dangerous when breathed and caused pathological effects without

22   noticeable trauma, and that such material was dangerous and a threat to the health of persons

23   coming into contact therewith.  Defendants, and each of them, negligently, carelessly and

24   recklessly did not warn plaintiff, others in plaintiff's position, plaintiff's employer(s) and the

25   general public of their information.

26       25.   Defendants, and each of them, knew or should have known that adequate protective

27   masks and devices should be used by workers such as plaintiff when applying and installing the

28   asbestos-containing products of the defendants.  Defendants, and each of them, knew or should

13

1  have known that not wearing an adequate protective mask and/or device would result in injury to

2  the plaintiff and others applying and installing such materials. Defendants, and each of them,

3  negligently, carelessly and recklessly do not inform workers such as plaintiff, and others applying

4  and installing such materials of the aforementioned information.

5      26.    Defendants, and each of them, knew or should have known that plaintiff and anyone

6  similarly situated in an industrial and construction setting would be exposed to defendants'

7  asbestos-containing products, and that, upon inhalation of asbestos such persons would, in time,

8  develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or

9  all. Defendants, and each of them, negligently, carelessly and recklessly failed to provide

10  information to the public at large and buyers, users, and physicians employed by plaintiff and

11  plaintiff's employer for the purpose of conducting physical examinations of plaintiff and others

12  working with or near asbestos that exposure to these materials would cause pathological effects

13  without noticeable trauma.

14      27.    The foregoing acts of the defendants, and each of them, and the negligent, careless

15  and reckless conduct of the defendants, and each of them, as described hereinabove, were done

16  recklessly, wantonly, willfully, oppressively, and in conscious disregard of the safety of plaintiff

17  herein, in that

18      A.    the defendants, and each of them, prior to and at the time of sale, distribution

19  or supply of the aforementioned products to Plaintiff's employer or to others who in turn sold to

20  Plaintiff's employers, and to other persons relevant herein, knew or should have known that the

21  foregoing asbestos fibers released from said products during the foreseeable operations of applying

22  and removing same, were dangerous when inhaled;

23      B.    defendants, and each of them, knew or should have known of the hazards

24  and dangers of working with or around asbestos products produced or supplied by defendants, and

25  each of them. The defendants, and each of them, knew or should have known that said products

26  would be used by Plaintiff and others who had no knowledge of the dangerous and hazardous

27  nature thereof; and

28  ///

14

*Buck v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                             INJURY--ASBESTOS)

1    C.    defendants, and each of them, either did not warn or insufficiently warned

2  regarding the dangerous nature of said products.  Defendants, and each of them, did not place a

3  sufficient warning on the said product or package thereof regarding said dangerous nature.

4  Accordingly, plaintiff is entitled to an award of punitive damages.

5    WHEREFORE, plaintiffs EDWARD GUY BUCK and MARYLN BUCK pray judgment as

6  hereinafter set forth.

7                              SECOND CAUSE OF ACTION

8                                (Strict Products Liability)

9    28.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

10  fully set forth herein, each and every allegation contained in the General Allegations and the First

11  Cause of Action herein, except Paragraphs 11, 12 and 13.

12    29.    At all times mentioned herein, defendants, and each of them, during the ordinary

13  course of business, mined, milled, manufactured, imported, supplied, distributed, delivered,

14  packaged, labeled, advertised, sold, marketed, installed, applied and otherwise introduced into the

15  stream of commerce asbestos and asbestos-containing products which were defective due to their

16  design, manufacture, sufficiency of or lack of warning, and/or failure to meet ordinary use or

17  consumer expectations of safety when used in an intended or reasonably foreseeable manner.

18    30.    The asbestos and asbestos-containing products were defective when the defendants,

19  and each of them, marketed and introduced them into the stream of commerce.  Defendants, and

20  each of them, knew that the aforementioned products would be used without inspection for defects

21  by the user thereof.

22    31.    At all times herein mentioned, plaintiff, plaintiff's employer, and other persons

23  relevant herein, purchased from defendants, and each of them, asbestos and asbestos-containing

24  products.

25    32.    *Defective Design*: The products were defectively designed in that:

26    A.    The products failed to perform as safely as an ordinary consumer would

27  expect in their intended or reasonably foreseeable use or manner of operation, or;

28  / / /

15

1        B.     The products had inherent risks of danger that outweighed their benefits;

2   alternate and safer substitute products existed and the state-of-the-art required their use given the

3   seriousness of the potential danger, likelihood of its occurrence, feasibility, cost, and adverse

4   consequences to the product and to the consumer of a safer alternative design.

5        C.     *Failure to Warn*: Defendants knew or reasonably should have known of the

6   dangerous propensities of their products but nonetheless distributed and marketed their products

7   with inadequate warning of its dangers.

8        D.     Each of defendants' products reached plaintiff without substantial change in

9   its condition.

10        E.     The aforementioned products were used by plaintiff and those in close

11   proximity to plaintiff in a foreseeable manner and in the manner for which they were intended.

12   Defendants' products were used in a manner reasonably foreseeable by defendants, which

13   defendants intended or knew they would be used, or for which they marketed them or knew they

14   were marketed to be used.

15        F.     At all times mentioned herein, plaintiff was unaware of the dangerous nature

16   of the aforementioned products.

17      33.     The defective design of defendants' products and failure to warn were the proximate

18   causes of plaintiff's injuries.

19      34.     As a direct and legal result of the conduct of the defendants, and each of them,

20   plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis,

21   pleural plaques, and related conditions and disabilities as previously set forth and has incurred

22   damages in excess of $50,000.00 in addition to the special damages alleged herein.

23      35.     The aforementioned products were used by plaintiff and those in close proximity to

24   plaintiff in a foreseeable manner and in the manner for which they were intended.

25      36.   A.     Defendants, and each of them, knew that defendants' asbestos-containing

26   products would be used by plaintiff and anyone similarly situated in an industrial and construction

27   setting without inspection for defects.

28   ///

*Buck v. A.W. Chesterton Company, et al.*                   COMPLAINT FOR DAMAGES (PERSONAL
                                                     INJURY--ASBESTOS)

1       B.     Defendants, and each of them, knew that such persons would be exposed to

2 defendants' asbestos-containing products.

3       C.     Defendants, and each of them, knew that, upon inhalation of asbestos from

4 defendant's asbestos-containing products, such persons would, in time, develop irreversible

5 conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all.

6       D.     At the time defendants, and each of them, placed such asbestos-containing

7 products in to the stream of commerce, defendants, and each of them, knew or should have known

8 of the risks and hazards associated with the use and/or exposure of its products.

9       E.     At the time defendants, and each of them, placed such asbestos-containing

10 products in to the stream of commerce, and subsequent thereto, defendants, and each of them,

11 failed to warn or provided inadequate warnings to persons who used or would be exposed to its

12 defective asbestos-containing products, including plaintiff, of the dangers and hazards associated

13 with its products.

14       F.     At the time defendants, and each of them, placed such asbestos-containing

15 products in to the stream of commerce, and subsequent thereto, defendants, and each of them failed

16 to provide instructions or provided inadequate instructions to persons who used its defective

17 asbestos-containing products, or who would be exposed to said products, including plaintiff, of the

18 dangers and hazards associated with its products.

19       G.     Defendants, and each of them, prior to and at the time of placing the

20 aforementioned products in to the stream of commerce, including but not limited to supplying said

21 products to plaintiff's employer or to others who in turn sold to plaintiff's employers, and to other

22 persons relevant herein, knew that the asbestos which plaintiff and others around him were exposed

23 to was dangerous.  The defendants, and each of them, either did not warn or insufficiently warned

24 regarding the dangerous nature of said products, and failed to place a sufficient warning on the said

25 product or package thereof regarding said dangerous nature, despite knowing that said products

26 would be used by plaintiff and others around him who had no knowledge of the dangerous and

27 hazardous nature thereof.

28 ///

17

*Buck v. A.W. Chesterton Company, et al.*            COMPLAINT FOR DAMAGES (PERSONAL
INJURY--ASBESTOS)

1    37.    The conduct of the defendants, and each of them, was motivated by their financial

2  interests. In this financial pursuit, defendants consciously disregarded the safety of users and

3  persons exposed to their products and were consciously willing to permit their products and

4  premises to injure workers and others, including plaintiff, in order to maximize profits. They

5  consciously disregarded the well-publicized risks of asbestos exposure because to have kept

6  consumers and end users like plaintiff safe would have required said defendants to make less

7  money or limit distribution of their products. The defendants, and each of them, either did not

8  warn or insufficiently warned regarding the dangerous nature of said products, nor placed a

9  sufficient warning on the said product or package thereof regarding said dangerous nature, despite

10  knowing that said products would be used by plaintiff and others around him who had no

11  knowledge of the dangerous and hazardous nature thereof. Defendants' conduct as described

12  herein was and is willful, malicious, outrageous, and in conscious disregard and indifferent to the

13  safety and health of workers and others exposed to asbestos, including plaintiff, and therefore

14  plaintiff is entitled to an award of punitive damages.

15    WHEREFORE, plaintiffs EDWARD GUY BUCK and MARYLN BUCK pray judgment as

16  hereinafter set forth.

17                    THIRD CAUSE OF ACTION

18                       (Failure to Warn)

19    38.    Plaintiffs, by this reference, hereby incorporate and makes a part hereof, as though

20  fully set forth herein, each and every allegation contained in the General Allegations, the First

21  Cause of Action herein, except Paragraphs 11, 12 and 13, and each and every allegation contained

22  in the Second Cause of Action, except those allegations pertaining to design and manufacturing

23  defect.

24    39.    At all relevant times, the asbestos and asbestos-containing products which were

25  mined, milled, manufactured, tested, developed, processed, imported, converted, compounded

26  assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed,

27  delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by

28  defendants, and each of them, were defective as a result of defendants' failure to warn or give

18

1   adequate warning that the particular risk of developing an asbestos-related disease and risk of death

2   from an asbestos-related disease resulting from exposure to asbestos rendered the product unsafe

3   for its intended or reasonably foreseeable use.

4       40.    At all relevant times, the defendants, and each of them, had specific knowledge of

5   these risks or could have known of these risks by the application of scientific knowledge available

6   at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying,

7   approving, inspecting, applying and installing the asbestos and asbestos-containing products.

8       41.    As a direct and legal result of the conduct of the defendants, and each of them,

9   plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis,

10   pleural plaques, and related conditions and disabilities as previously set forth, and has incurred

11   damages in excess of $50,000.00 in addition to the special damages alleged herein.

12       WHEREFORE, plaintiffs EDWARD GUY BUCK and MARYLN BUCK pray judgment as

13   hereinafter set forth.

### FOURTH CAUSE OF ACTION

### (Breach of Warranties)

16       42.    AS AND FOR A FOURTH CAUSE OF ACTION, plaintiffs complain of

17   defendants, and each of them, and allege:

18       43.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

19   fully set forth herein, each and every allegation contained in the General Allegations, and the First

20   Cause of Action herein, except Paragraphs 11, 12 and 13.

21       44.    The defendants, and each of them, sold, supplied, delivered or otherwise distributed

22   to plaintiff, or to another purchaser or user who subsequently sold, supplied, delivered or otherwise

23   distributed to plaintiff, or to others working in close proximity to plaintiff, the above-described

24   asbestos and asbestos-containing products to which plaintiff was exposed.

25       45.    The defendants, and each of them, knew the intended purpose of the asbestos and

26   asbestos-containing products prior to marketing said products and knew or should have known that

27   dangerous levels of asbestos fiber would be released during the process of applying, installing and

28   removing these products.

19

46. The defendants, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose.

47. Defendants, and each of them, impliedly warranted that their products were of merchantable quality and safe, fit and proper for the uses which defendants knew or intended were to be made of them at the time of selling them.

48. Plaintiff reasonably relied on the skill, knowledge and judgment of defendants, and each of them, in plaintiff's use of the products as a basis of the bargain under which such products were bought and used.

49. The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by defendants, and each of them, in that said products had dangerous propensities when put to the use for which each of these defendants knew or intended they were marketed or sold and would cause severe injury to users or bystanders, such as plaintiff.

50. The defendants, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, advising plaintiff and others working in close proximity to plaintiff that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing said products.

51. As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiffs EDWARD GUY BUCK and MARYLN BUCK pray judgment as is hereinafter set forth.

/ / /

/ / /

/ / /

20

Buck v. A.W. Chesterton Company, et al.                COMPLAINT FOR DAMAGES (PERSONAL INJURY—ASBESTOS)

## FIFTH CAUSE OF ACTION

### (Fraud and Conspiracy)

52.    AS AND FOR A FIFTH CAUSE OF ACTION, plaintiffs complain of the defendants, and each of them, and allege:

53.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except allegations pertaining to negligence.

54.    Pursuant to Section 1708 of the Civil Code of California, the defendants, and each of them, owed a duty to plaintiff at all times relevant herein to abstain from injuring the plaintiff or infringing upon any of his rights.

55.    The defendants, and each of them, breached the duty they owed to plaintiff pursuant to Section 1708 of the Civil Code of California by willfully deceiving plaintiff with the intent to induce plaintiff to alter plaintiff's position to plaintiff's injury or risk. The defendants, and each of them, deceived the plaintiff and committed actionable fraud pursuant to Section 1709 and Section 1710 of the Civil Code of California.

56.    The defendants, and each of them, as more fully set forth below, suggested as fact that which was not true and that which defendants, and each of them, did not believe was true.

57.    The defendants, and each of them, as more fully set forth below, asserted as fact that which was not true and that which defendants, and each of them, had no reasonable grounds for believing was true.

58.    The defendants, and each of them, as more fully set forth below, suppressed facts which they were obligated to disclose and gave information of other facts which were likely to mislead for want of communication of the undisclosed facts.

59.    The defendants, and each of them, made promises without any intention of keeping those promises.

/ / /

/ / /

/ / /

21

1    60.    Since 1924, the defendants, and each of them, have known and have possessed the

2   true facts of medical and scientific data and other knowledge which clearly indicated that the

3   materials and products referred to herein were and are hazardous to the health and safety of the

4   plaintiff and others in plaintiff's position working in close proximity with such materials.  The

5   defendants, and each of them, have known of the dangerous propensities of the aforementioned

6   materials and products since before that time, and with intent to deceive plaintiff and others in his

7   position, and with intent that he and such others should be and remain ignorant of such facts, and

8   with intent to induce plaintiff and such others to alter his and their positions to his and their injury

9   and/or risk and in order to gain advantages did do the following acts:

10          A.    Defendants, and each of them, did not label any of the aforementioned

11   asbestos-containing materials and products regarding the hazards of such materials and products to

12   the health and safety of plaintiff and others in plaintiff's position working in close proximity with

13   such materials until 1964, when certain of such materials were labeled by some, but not all, of the

14   defendants herein, despite the fact that the knowledge of such hazards existed and was known to

15   defendants, and each of them, since 1924.  By not labeling such materials as to their said hazards,

16   defendants, and each of them, caused to be suggested as a fact to plaintiff and plaintiff's employer

17   that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true

18   and defendants did not believe it to be true.

19          B.    Defendants, and each of them, suppressed information relating to the danger

20   of the use of the aforementioned materials by requesting the suppression of information to the

21   plaintiff and the general public concerning the dangerous nature of the aforementioned materials to

22   workers and by not allowing such information to be disseminated in a manner which would give

23   general notice to the public and knowledge of the hazardous nature thereof, when defendants were

24   bound to disclose such information.

25          C.    Defendants, and each of them, sold the aforementioned products and

26   materials to plaintiff's employer and others without advising such employers and others of dangers

27   of the use of such materials to persons working in close proximity thereto, when defendants knew

28   of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers.

22

*Buck v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                             INJURY--ASBESTOS)

1    Thereby, defendants caused to be positively asserted to plaintiff's employer that which was not true

2    and which defendants had no reasonable ground for believing to be true and in a manner not

3    warranted by the information possessed by said defendants, and each of them, to wit, that it was

4    safe for plaintiff to work in close proximity to such materials.

5              D.        Defendants, and each of them, suppressed and continue to suppress from

6    everyone, including plaintiff and plaintiff's employer, medical and scientific data and knowledge of

7    the results of studies including, but not limited to, the information and knowledge of the contents of

8    the Lanza report. Although bound to disclose it, defendants, and each of them, influenced

9    A. J. Lanza to change his report, the altered version of which was published in Public Health

10   Volume at page I in 1935, thereby causing plaintiff to be and remain ignorant thereof. Defendants,

11   and each of them, caused *Asbestos Magazine*, a widely disseminated trade journal, to omit mention

12   of danger, thereby lessening the probability of notice of danger to the users thereof.

13             E.        Defendants, and each of them, belonged to, participated in, and financially

14   supported the Asbestos Textile Institute and other industry organizations which, and on behalf of

15   defendants, and each of them, actively promoted the suppression of information of danger to users

16   of the aforementioned products and materials, thereby misleading plaintiff and plaintiff's employer

17   by the suggestions and deceptions set forth above in this cause of action. The Dust Control

18   Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile

19   Institute, was specifically enjoined to study the subject of dust control. Discussions in this

20   committee were held many times regarding the dangers inherent in asbestos and the dangers which

21   arise from the lack of control of dust and the suppression of such information from 1946 to a date

22   unknown to plaintiff at this time.

23             F.        Commencing in 1930 with the study of mine and mill workers at Asbestos

24   and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos- Manhattan plants

25   in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific

26   information of the connection between inhalation of asbestos fibers and mesothelioma, asbestosis,

27   pleural plaques, and related conditions, which information was disseminated through the Asbestos

28   Textile Institute and other industry organizations to all other defendants, and each of them, herein.

23

1   Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific

2   information of the connection between inhalation of asbestos fibers and cancer, which information

3   was disseminated through the Asbestos Textile Institute and other industry organizations to all

4   other defendants herein.  Thereby, defendants suggested as a fact that which is not true and

5   disseminated other facts likely to mislead plaintiff and plaintiff's employer and which did mislead

6   them by withholding afore-described medical and scientific data and by not giving plaintiff or

7   plaintiff's employer the true facts concerning such knowledge of danger when defendants were

8   bound to disclose it.

9         G.     Defendants, and each of them, failed to warn plaintiff and plaintiff's

10   employer that said materials were dangerous when breathed and caused pathological effects

11   without noticeable trauma, despite the fact that defendants possessed knowledge and were under a

12   duty to disclose that such material was dangerous and a threat to the health of persons coming into

13   contact therewith.

14         H.     Defendants, and each of them, failed to provide plaintiff with information

15   concerning adequate protective masks and devices to be used when applying and installing the

16   products of the defendants, and each of them, despite the knowledge of defendants and a duty to

17   disclose that such protective measures were necessary and would result in injury to the plaintiff and

18   others applying and installing such materials if not so advised.

19         I.     Defendants, and each of them, concealed from plaintiff the true nature of the

20   industrial and construction exposure of plaintiff and knew that plaintiff and anyone similarly

21   situated, upon inhalation of asbestos, would in time develop irreversible conditions of either

22   pneumoconiosis, asbestosis or cancer, or all, and that the materials to which he was exposed would

23   cause pathological effects without noticeable trauma despite the fact that defendants were under a

24   duty to and bound to disclose it; and

25         J.     Defendants, and each of them, failed to provide information to the public at

26   large and buyers, users, and physicians employed by plaintiff and plaintiff's employer for the

27   purpose of conducting physical examinations of plaintiff and others working with or near asbestos

28   of the true nature of the hazards of asbestos and that exposure to these materials would cause

24

1  pathological effects without noticeable trauma to the public, including buyers, users, and

2  physicians employed by plaintiff and plaintiff's employer so that said physicians could examine,

3  diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that

4  defendants, and each of them, were under a duty to so inform and said failure was misleading.

5        61.    Defendants, and each of them, having the aforementioned knowledge of facts and

6  knowing that the plaintiff did not possess such knowledge, acted falsely and fraudulently and with

7  full intent to cause plaintiff to remain unaware of those facts and to induce plaintiff to work with

8  and around unsafe products in a dangerous environment, all in violation of Section 1710 of the

9  Civil Code of the State of California.

10       62.    At all times mentioned, the defendants, and each of them, knowingly and willfully

11  conspired and agreed among themselves to perpetrate upon plaintiff the unlawful acts complained

12  of in Paragraphs 19 through 27 of the First Cause of Action and Paragraphs 54 through 61 of the

13  Fifth Cause of Action herein.

14       63.    The defendants, and each of them, and at least one of them, did the acts herein

15  alleged in Paragraph 60 through 62 of this Fifth Cause of Action in furtherance of the conspiracy

16  and agreement as herein alleged and also acted in furtherance of a conspiracy and agreement

17  between and among the defendants, and each of them, to violate State and Federal laws and

18  regulations, the exact nature and extent of which are unknown at this time but known full well to

19  defendants, and each of them. These actions were done maliciously, wantonly, and in reckless

20  disregard for the health and safety of others, including plaintiff herein.

21       64.    Plaintiff reasonably relied upon the misrepresentations of the defendants, and each

22  of them, and in reliance on same continued to work with and around asbestos and asbestos-

23  containing products. Plaintiff would have taken steps to protect his health and life had he known

24  the facts, which were known to the defendants, and each of them, about exposure to asbestos and

25  asbestos-containing products. Plaintiff would not have knowingly continued to work in an unsafe

26  environment. He had no knowledge of the foregoing facts and actions of the defendants, and each

27  of them, at the time when they were committed and cannot be charged with knowledge or inquiry

28  thereof.

25

1      65.    As a direct and legal result of the conduct of the defendants, and each of them,

2  plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis,

3  pleural plaques, and related conditions and disabilities as previously set forth and has incurred

4  damages in excess of $50,000.00 in addition to the special damages alleged.

5      WHEREFORE, plaintiffs EDWARD GUY BUCK and MARYLN BUCK pray judgment as

6  is hereinafter set forth.

7                            SIXTH CAUSE OF ACTION

8              (False Representation Under Restatement Torts Section 402-B)

9      66.    AS AND FOR A SIXTH CAUSE OF ACTION, plaintiffs complain of the

10  defendants, and each of them, and allege:

11      67.    Plaintiffs incorporate by reference as though fully set forth herein, each and every

12  allegation of the General Allegations, and First, Second, Third, Fourth and Fifth Causes of Actions

13  herein.

14      68.    At the aforementioned time when defendants, and each of them, researched,

15  manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed,

16  advertised, marketed, warranted, inspected, repaired, offered for sale and sold the said asbestos and

17  asbestos-containing products as hereinabove set forth, the defendants, and each of them, expressly

18  and impliedly represented to members of the general public, including the purchasers and users of

19  said product, and including plaintiff herein and his employers, that asbestos and asbestos-

20  containing products were of merchantable quality and safe for the use for which they were

21  intended.

22      69.    The purchasers and users of said asbestos and asbestos-containing products,

23  including plaintiff and his employers, relied upon said representations of defendants, and each of

24  them, in the selection, purchase and use of asbestos and asbestos-containing products.

25      70.    Said representations by defendants, and each of them, were false and untrue in that

26  the asbestos and asbestos-containing products were not safe for their intended use, nor were they of

27  merchantable quality as represented by defendants, and each of them, in that asbestos and asbestos

28  containing products have very dangerous properties and defects whereby said products cause lung

26

1  cancer, mesothelioma, asbestosis, pleural plaques, and other diseases and have other defects that

2  cause injury and damage to the users of said products, including the plaintiff herein, thereby

3  threatening the health and life of plaintiff.

4      71.    As a direct and legal result of the conduct of the defendants, and each them plaintiff

5  developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural

6  plaques, and related conditions and disabilities as previously set forth, and has incurred damages in

7  excess of $50,000.00 in addition to the special damages alleged herein.

8      WHEREFORE, plaintiffs EDWARD GUY BUCK and MARYLN BUCK pray judgment as

9  hereinafter set forth.

10                  SEVENTH CAUSE OF ACTION

11                     (Loss of Consortium)

12      72.    AS AND FOR AN SEVENTH CAUSE of action, plaintiff MARYLN BUCK

13  complains of defendants, and each of them, as follows:

14      73.    Plaintiff, by this reference, hereby incorporates and makes a part thereof, as though

15  fully set forth herein, each and every allegation contained in the General Allegations and each of

16  the foregoing Causes of Action herein.

17      74.    At the time that plaintiff sustained injury as more fully alleged in the First through

18  Sixth Causes of Action, and at all times thereafter, plaintiff MARYLN BUCK was the spouse of

19  plaintiff EDWARD GUY BUCK.

20      75.    Prior to said injuries, plaintiff was able to and did perform his duties as the spouse

21  of MARYLN BUCK.  Plaintiff is informed and believes and thereon alleges that subsequent to said

22  injuries and as a proximate result thereof, plaintiff has been, and at some time in the future will be,

23  incapacitated and unable to perform the necessary duties as spouse of plaintiff and the work and

24  service usually performed in the care, maintenance, and management of the family home.

25      76.    As a proximate result of said injuries, plaintiff has been and will be deprived of

26  consortium with plaintiff EDWARD GUY BUCK, including the performance of his spouse's

27  duties, and plaintiff MARYLN BUCK has and will be required to perform the duties previously

28  performed by his spouse MARYLN BUCK, all to plaintiff's damage in a sum which cannot be

*Buck v. A.W. Chesterton Company, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                             INJURY--ASBESTOS)

1  ascertained at this time.  Plaintiff requests the right to amend this complaint to allege the amount of

2  said damages when they are ascertained.

3        WHEREFORE, plaintiff EDWARD GUY BUCK and MARYLN BUCK pray judgment as

4  follows:

5  <u>First, Second, and Fifth Causes of Action</u>

6       1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

7       2.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

8  accordance with proof;

9       3.    Punitive and exemplary damages in an amount found appropriate by the trier of fact

10  in accordance with proof;

11       4.    Special damages in accordance with the proof;

12       5.    Prejudgment interest and post-judgment interest in accordance with law;

13       6.    Costs of suit; and,

14       7.    Such and other and further relief as the Court deems just and proper.

15  <u>Third, Fourth, and Sixth Causes of Action</u>

16       1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

17       2.    Special damages in accordance with the proof;

18       3.    Prejudgment interest and post-judgment interest in accordance with law;

19       4.    Costs of suit; and,

20       5.    Such and other and further relief as the Court deems just and proper.

21        WHEREFORE, plaintiff MARYLN BUCK prays judgment as follows:

22  <u>Seventh Cause of Action</u>

23       1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

24       2.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

25           accordance with proof;

26       3.    Punitive and exemplary damages in an amount found appropriate by the trier of fact

27           in accordance with proof;

28       4.    Special damages in accordance with the proof;

28

5.    Prejudgment interest and post-judgment interest in accordance with law;

6.    Costs of suit; and,

7.    Such and other and further relief as the Court deems just and proper.


DATED:  November 4, 2010                    BRENT COON & ASSOCIATES


                                        By:
                                            RICHARD A. BRODY, ESQ.
                                            PAULA A. RASMUSSEN, ESQ.
                                            Attorneys for Plaintiffs

*Buck v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                             INJURY--ASBESTOS)