1  Stephen M. Fishback (State Bar No. 191646)
   Daniel L. Keller (State Bar No. 191738)
2  J. Bruce Jackson (State Bar No. 173215)
   **KELLER, FISHBACK & JACKSON LLP**
3  18425 Burbank Blvd., Suite 610
   Tarzana, California 91356
4  Telephone: 818.342.7442
   Facsimile:  818.342.7616
5
6  Attorneys for Plaintiff
7

ENDORSED
F I L E D
San Francisco County Superior Court

OCT - 5 2010

CLERK OF THE COURT
BY: _____ ELIAS BUTT _____
                    Deputy Clerk

ASBESTOS
CASE MANAGEMENT CONFERENCE

OCT 2 0 2011 1:30 PM

DEPARTMENT   220

8
9        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
         **FOR THE CITY AND COUNTY OF SAN FRANCISCO**
10
11
12  ALBERT PIERCE;

13              Plaintiff,

14        vs.

15  CBS CORPORATION, a DELAWARE
    CORPORATION, individually, successor-in-
16  interest to and formerly known as VIACOM,
    INC. and  WESTINGHOUSE ELECTRIC
17  CORPORATION; FOSTER WHEELER LLC;
    GENERAL ELECTRIC COMPANY;
18  WARREN PUMPS, LLC; ALFA LAVAL,
    INC.
19
20
21  DOES 1-500;
22              Defendants.
23
24  **THIS CASE IS SUBJECT TO**
    **MANDATORY ELECTRONIC FILING**
25  **PURSUANT TO AMENDED G.O. 158**
26
27
28

Case No.  **CGC-10-275681**

**COMPLAINT FOR  PERSONAL INJURY**
**- ASBESTOS**

**(ACTION IS SUBJECT TO GENERAL**
**ORDERS IN FILE NO. 828684)**

Negligence
Strict Liability
False Representation Under Restatement
Section 402-B
Intentional Tort
Premises Owner/Contractor Liability

1   PLAINTIFF, ALBERT PIERCE (hereinafter Plaintiff), COMPLAINS AND ALLEGES AS

2   FOLLOWS as against the above-named defendants:

3        1.    The true names and capacities, whether individual, corporate, associate,

4   governmental or otherwise, of defendants DOES 1 through 500 are unknown to plaintiff at this

5   time, who therefore sues said defendants by such fictitious names.  When the true names and

6   capacities of said defendants have been ascertained, plaintiff will amend this complaint

7   accordingly.  Plaintiff is informed and believes, and thereon alleges, that each defendant

8   designated herein as a DOE is responsible, negligently or in some other actionable manner, for the

9   events and happenings hereinafter referred to, and caused injuries and damages thereby to the

10   plaintiff, as hereinafter alleged.

11        2.    At all times herein mentioned, each of the defendants was the agent, servant,

12   employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each

13   defendant was acting in the full course and scope of said agency, service, employment and/or joint

14   venture.

15        3.    Plaintiff is informed and believes, and thereon alleges that at all times herein

16   mentioned, defendants on Exhibits "B", "C", "D" and DOES 1 through 500, inclusive, were and

17   are corporations, partnerships, unincorporated associations, sole proprietorships and/or other

18   business entities organized and existing under and by virtue of the laws of the State of California,

19   or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them,

20   were and are authorized to do and are doing business in the State of California, and that said

21   defendants, or some of them, have regularly conducted business in the City and County of  San

22   Francisco, State of California.

23   **FIRST CAUSE OF ACTION**

24   **(Negligence)**

25   **PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-**

26   **300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE**
   **OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:**

27

28

4.    At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

5.    At all times herein mentioned, defendants, their "alternate entities," and each of them, were and/or are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain

product, namely asbestos and other products containing asbestos. Said asbestos and other products containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-containing products") specifically include, but are not limited to: thermal insulation and insulation materials; turbines; engines; heaters; chillers; pumps; compressors; valves; gaskets; packing; generators; boilers; refractory materials; pipes; paper; purifiers; asbestos fiber product; and other asbestos-containing products and other materials containing asbestos currently unknown or unspecified by plaintiff. and other asbestos-containing products and other materials containing asbestos currently unknown or unspecified by plaintiff.

6.     At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

7.     Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

8.     Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos

1   fibers, and that through such foreseeable use and/or handling "exposed persons," including

2   plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

3        9.     Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-

4   containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

5   exposure to asbestos and asbestos-containing products occurred at various locations as set forth in

6   Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

7        10.    As a direct and proximate result of the conduct of the defendants, their "alternate

8   entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

9   products caused severe and permanent injury to the plaintiff, the nature of which, along with the

10  date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiff's complaint and

    incorporated by reference herein.

11       11.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

12  disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

13  perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing

14  products over a period of time.

15       12.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

16  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

17  containing products presented any risk of injury and/or disease.

18       13.    As a direct and proximate result of the aforesaid conduct of defendants, their

19  "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent

20  injuries and/or future increased risk of injuries to his person, body and health, including, but not

21  limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress

22  attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the

23  sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

24       14.    As a direct and proximate result of the aforesaid conduct of the defendants, their

25  "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur

26  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

27  and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this

28

time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

15.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

16.     Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

17.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

18.     The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

19.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in Paragraphs 4-5 and 8-18 of the First Cause of Action herein.

20.    Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

21.    Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons," including plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

22.    "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which plaintiff and others similarly situated were exposed.

23.    In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, mesothelioma, lung cancer, and asbestosis.  Said knowledge was obtained, in part, from scientific studies, government data, and medical data to which defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of, said defendants, their "alternate entities," and each of them, and which knowledge was obtained by said defendants, their "alternate entities," and each of them on or before 1930, and thereafter.

24.     On or before 1930, and thereafter, said defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their "alternate entities," and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

25.     With said knowledge, said defendants, their "alternate entities," and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

26.     The above-referenced conduct of said defendants, their "alternate entities," and each of them, was motivated by the financial interest of said defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products.

In pursuance of said financial motivation, said defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

27. Plaintiff alleges that the aforementioned defendants, their "alternate entities," and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

28. Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned defendants, their "alternate entities," and each of them and that plaintiff cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

29. Plaintiff relied upon defendants', their "alternate entities'," and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, plaintiff has been injured permanently as alleged herein.

30. As the above referenced conduct of said defendants was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons", including plaintiff who has suffered the injuries and damages previously alleged, plaintiff, for the sake of example, and by way of punishing said defendants, seek damages according to proof.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION

#### (False Representation Under Restatement of Torts Section 402-B)

AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

31.     Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

32.     At all times herein mentioned, each of the named defendants and DOES 1  through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities."  Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

33.    At all times herein mentioned, defendants, their "alternate entities," and each of them, were and/or are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos. Said asbestos and other products containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-containing products") specifically include, but are not limited to: adhesives/tape/mastic; thermal insulation/insulating materials; insulating cement; pipecovering/block insulation; caulking/putties; cement pipe; boilers; heaters; ductwork; cloth; flooring materials; blankets; cloth; gaskets; packing; pumps; compressors; pipes; valves; engines; turbines; motors; generators; gloves/aprons; thermal paper; asbestos fiber; refractory materials; panels; boards; tubes.

34.    At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

35.    Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

36.    Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used

1  for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or

2  other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding,

3  breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos

4  fibers, and that through such foreseeable use and/or handling "exposed persons," including

5  plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

6        37.    Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-

7  containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

8  exposure to asbestos and asbestos-containing products occurred at various locations as set forth in

9  Exhibit "A," attached to plaintiff's complaint and incorporated by reference herein.

10       38.    As a direct and proximate result of the conduct of the defendants, their "alternate

11  entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

12  products caused severe and permanent injury to the plaintiff, the nature of which, along with the

13  date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiff's complaint and

14  incorporated by reference herein.

15       39.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

16  disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

17  perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing

18  products over a period of time.

19       40.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

20  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

21  containing products presented any risk of injury and/or disease.

22       41.    As a direct and proximate result of the aforesaid conduct of defendants, their

23  "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent

24  injuries and/or future increased risk of injuries to his person, body and health, including, but not

25  limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress

26  attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the

27  sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

28       42.    As a direct and proximate result of the aforesaid conduct of the defendants, their
"alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur

in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

43.   As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff, and leave is requested to amend this complaint to conform to proof at the time of trial.

44.   Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have knowledge of each of the acts set forth herein. The specific names, job titles, positions, or other identifying offices of said individuals are necessarily in possession of defendants and full information concerning the facts relevant to this controversy and defendants, and each of them, have more knowledge or the identities of said persons than plaintiff, herein.

45.   At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the defendants, their "alternate entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the plaintiff herein and potentially some or all of his employers, that asbestos and asbestos-containing products, were of merchantable quality, free of defects, and safe for the use for which they were intended. Said misrepresentations of such material facts impacting the safety, reliability, and quality of defendants' asbestos-containing products specifically included the failure to disclose known or suspected hazards of working with and around said asbestos-containing products to the plaintiff and others. Defendants' misrepresentations went far beyond the bounds of mere promises

because defendants affirmatively stated through those means more fully described herein that defendants' asbestos and/or asbestos-containing products were safe and safe to use for their intended uses, but they were not safe. Defendants knew or should have known at the time of their misrepresentations that such representations were false; defendants knew or should have known at the time of their misrepresentations that their asbestos and/or asbestos-containing products were not safe or safe for their intended uses. Despite knowing of the dangers to plaintiff of working with and around defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers and in fact concealed the same from plaintiff. Defendants' misrepresentations and concealment of the dangers attendant to working with and around defendants' asbestos and/or asbestos-containing products occurred during such periods as defendants researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised asbestos and other products containing asbestos, and more specifically as it relates to plaintiff, during those periods of employment when plaintiff worked with defendants' asbestos and/or asbestos-containing products as detailed in Exhibit A. The facts misrepresented regarding the safety, reliability, and quality of defendants' asbestos-containing products are necessarily in possession of defendants who have full information concerning the facts relevant to this controversy and defendants, and each of them, have more knowledge or the facts of said misrepresentations than plaintiff, herein.

46.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the plaintiff and potentially some or all of his employers, relied upon said representations of defendants, their "alternate entities," and each of them, *as defendants, their "alternate entities," and each of them so intended,* in the selection, purchase and use of asbestos and asbestos-containing products.

47.     Said representations by defendants, their "alternate entities," and each of them, were false and untrue, and defendants knew or should have known at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were

1   they of merchantable quality as represented by defendants, their "alternate entities," and each of

2   them, in that asbestos and asbestos-containing products have very dangerous properties and

3   defects whereby said products cause asbestosis, other lung damages and cancer, and have other

4   defects that cause injury and damage to the users of said products and other "exposed persons,"

5   thereby threatening the health and life of said persons including plaintiff herein.

6       48.     Defendants, their "alternate entities," and each of them, based on the state of

7   scientific and medical literature, as well as their own studies and research conducted regarding the

8   health hazards associated with working with and/or around asbestos-containing product had no

9   reasonable basis for believing the untrue representations made to plaintiff, plaintiff's employers,

10  and other groups and organizations with which plaintiff was affiliated, such as unions, through

    which plaintiff would reasonably be expected to learn of such misrepresentations.

11      49.     Plaintiff and others, lacking the sophistication and knowledgeable regarding the

12  health hazards of working with and around defendants', their alternate entities, and each of them,

13  asbestos-containing products and relied upon the said misrepresentations and were, in fact,

14  deceived into believing that said asbestos-containing products were safe and free of defects and

15  would not cause severe risk of injury and death.  Had plaintiff known that defendants' asbestos

16  and/or asbestos-containing products were unsafe for their intended uses, plaintiff would not have

17  used and/or worked around the same or taken other steps to properly safeguard his health or the

18  health of others when working with or around defendants' and others' asbestos-containing

19  products.

20      50.     The facts intentionally omitted or misstated regarding the safety, reliability, and

21  quality of defendants' asbestos and/or asbestos-containing products were/are necessarily in

22  possession of defendants who had/have full information concerning the facts relevant to this

23  controversy and defendants, and each of them, had/have more knowledge of the facts of said

24  concealments and nondisclosures than plaintiff, herein.

25      51.     As a direct and proximate result of said false representations by defendants, their

26  "alternate entities," and each of them, the plaintiff sustained the injuries and damages herein above

27  set forth.

28

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Intentional Tort)

AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND ALLEGES AS FOLLOWS:

52.     Plaintiff, by this reference, hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

53.     At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed plaintiff a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of fact which were not true and which defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned Civil Code sections.

54.     Since on or before 1930, the defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiff's First Cause of Action were and are hazardous to the health and safety of plaintiff, and others in plaintiff's position working in close proximity with such materials. The defendants, their "alternate entities," and each of them, have known of the dangerous propensities of other of the

1   aforementioned materials and products since before that time. Defendants' misrepresentations

2   went far beyond the bounds of mere promises because defendants affirmatively stated through

3   those means more fully described herein that defendants' asbestos and/or asbestos-containing

4   products were safe and safe to use for their intended uses, but they were not safe.  Defendants

5   knew at the time of their misrepresentations that such representations were false; defendants knew

6   at the time of their misrepresentations that their asbestos and/or asbestos-containing products were

7   not safe or safe for their intended uses.  Despite knowing of the dangers to plaintiff of working

8   with and around defendants' asbestos and/or asbestos-containing, defendants failed to disclose

9   such dangers and in fact concealed the same from plaintiff.  Defendants' misrepresentations and

10   concealment of the dangers attendant to working with and around defendants' asbestos and/or

11   asbestos-containing products occurred during such periods as defendants researched,

12   manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate,

13   warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought,

14   offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

15   marketed, warranted, re-branded, manufactured for others, packaged and advertised asbestos and

16   other products containing asbestos, and more specifically as it relates to plaintiff, during those

17   periods of employment when plaintiff worked with defendants' asbestos and/or asbestos-

18   containing products as detailed in exhibit A.  The mere fact that defendant made its asbestos-

19   containing products available for purchase, use, sale, or otherwise to plaintiff and others was an

20   intentional and affirmative fraudulent act.  With intent to deceive, falsely represent facts regarding

21   the true hazards of working with and around asbestos-containing products, conceal the health risks

22   associated with working in an asbestos-contaminated environment, and purposefully failing to

23   disclosure such material facts to plaintiff, and others in plaintiff's position, and with the intent that

24   plaintiff and such others should be and remain ignorant of such facts with intent to induce plaintiff

25   and such others to alter his and their positions to his detriment, injury and/or risk and in order to

26   gain economic advantages within the market, the following acts occurred:

            a.      Defendants, their "alternate entities," and each of them, did not label any of

27   the aforementioned asbestos-containing materials and products regarding the hazards of such

28   materials and products to the health and safety of plaintiff and others in plaintiff's position

1   working in close proximity with such materials until 1964 when certain of such materials were

2   labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein

3   when the knowledge of such hazards was existing and known to defendants, their "alternate

4   entities," and each of them, since on or before 1930. By not labeling such materials as to their said

5   hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to

6   plaintiff that it was safe for plaintiff to work in close proximity to such materials when in fact it

7   was not true and defendants, their "alternate entities," and each of them, did not believe it to be

8   true;

9          b.    Defendants, their "alternate entities," and each of them, suppressed

    information relating to the danger of use of the aforementioned materials by requesting the

10  suppression of information to the plaintiff and the general public concerning the dangerous nature

11  of the aforementioned materials to workers, by not allowing such information to be disseminated

12  in a manner which would given general notice to the public and knowledge of the hazardous

13  nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose

14  such information;

15         c.    Defendants, their "alternate entities," and each of them, sold the

16  aforementioned products and materials to plaintiff's employers and others without advising

17  plaintiff and others of the dangers of use of such materials to persons working in close proximity

18  thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and

19  had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their

20  "alternate entities," and each of them, caused to be positively asserted to plaintiff that which was

21  not true and that which defendants, their "alternate entities," and each of them, had no reasonable

22  ground for believing to be true, to wit, that it was safe for plaintiff to work in close proximity to

23  such materials;

24         d.    Defendants, their "alternate entities," and each of them, suppressed from

25  plaintiff medical and scientific data and knowledge of the results of studies including, but not

26  limited to, the information and knowledge of the contents of the Lanza report. Although bound to

27  disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to

28  change his report, the altered version of which was published in Public Health Reports, Volume 50

at page 1 in 1935, thereby causing plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

      e.     Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to plaintiff at this time;

      f.     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities," and each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to defendant herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead plaintiff. Such facts did mislead plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not

1    giving plaintiff the true facts concerning such knowledge of danger, which defendants, their

2    "alternate entities," and each of them, were bound to disclose;

3              g.      Defendants, their "alternate entities," and each of them, failed to warn

4    plaintiff and others of the nature of said materials which were dangerous when breathed and which

5    could cause pathological effects without noticeable trauma, despite the fact that defendants, their

6    "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that

7    said materials were dangerous and a threat to the health of persons coming into contact therewith;

8              h.      Defendants, their "alternate entities," and each of them, failed to provide

9    plaintiff with information concerning adequate protective masks and other equipment devised to

10   be used when applying and installing the products of the defendants, and each of them, despite

11   knowing that such protective measures were necessary, and that they were under a duty to disclose

12   that such materials were dangerous and would result in injury to the plaintiff and others applying

     and installing such material;

13             i.      Defendants, their "alternate entities," and each of them, when under a duty

14   to so disclose, concealed from plaintiff the true nature of the industrial exposure of plaintiff and

15   knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time,

16   develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their

17   "alternate entities," and each of them, also concealed from plaintiff and others that harmful

18   materials to which they were exposed would cause pathological effects without noticeable trauma;

19             j.      Defendants, their "alternate entities," and each of them, failed to provide

20   information of the true nature of the hazards of asbestos materials and that exposure to these

21   materials would cause pathological effects without noticeable trauma to the public, including

22   buyers, users, and physicians employed by plaintiff and potentially plaintiff's employers so that

23   said physicians could examine, diagnose and treat plaintiff and others who were exposed to

24   asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a

25   duty to so inform and said failure was misleading; and

26             k.      Defendants, their "alternate entities," and each of them, failed to provide

27   adequate information to physicians and surgeons retained by plaintiff's employers and their

28   predecessor companies, for purposes of making physical examinations of plaintiff and other

1  employees as to the true nature of the risk of such materials and exposure thereto when they in fact

2  possessed such information and had a duty to disclose it.

3      55.   Defendants, their "alternate entities," and each of them, based on the state of

4  scientific and medical literature, as well as their own studies and research conducted regarding the

5  health hazards associated with working with and/or around asbestos-containing product, knew

6  that the representations made to plaintiff, plaintiff's employers, and other groups and organizations

7  with which plaintiff was affiliated, such as unions, through which plaintiff would reasonably be

8  expected to learn of such representations were false.

9      56.   Defendants, their "alternate entities," and each of them, willfully failed and omitted

10  to complete and file First Report of Occupational Injury of Illness regarding plaintiff's injuries, as

11  required by law, and did willfully fail and omit to file report of injury and occupational disease

12  with the State of California. Defendants similarly intentionally failed to state and disclose on their

13  asbestos-containing products and/or packaging the asbestos-related health risk, including risk of

14  asbestosis and cancer, which resulted from plaintiff and others working with and around

    defendants' asbestos-containing products.

15      57.   Plaintiff was in the class of persons with respect to whom a duty was owed to file

16  such reports and who would have been protected thereby if the fact of danger from products

17  complained of had become known and plaintiff was in the class of persons to whom a duty was

18  owed as a consumer and user of defendants' asbestos-containing products to be informed

19  truthfully about the risks of using such asbestos-containing products. Plaintiff and others, neither

20  sophisticated nor knowledgeable regarding asbestos health hazards and the intentions to deceive

21  by defendants, justifiably relied on defendants' claims and representations regarding their

22  asbestos-containing products. Had plaintiff known that defendants' asbestos and/or asbestos-

23  containing products were unsafe for their intended uses, plaintiff would not have used and/or

24  worked around the same.

25      58.   Defendants, their "alternate entities," and each of them, having such

26  aforementioned knowledge, and the duty to inform plaintiff about the true facts, and knowing the

27  plaintiff did not possess such knowledge and would work with and around and ultimately breathe

28  such material innocently, acted falsely and fraudulently and with full intent to cause plaintiff to

1   remain unaware of the true facts and to induce plaintiff to work in a dangerous environment by

2   failing to disclose known information regarding asbestos health hazards, all in violation of

3   Sections 1708, 1709, 1710, and 1711 of the Civil Code of the State of California in an expectation

4   of further sales and proceeds from the supply of defendants' asbestos-containing products.

5   ///

6   ///

7   ///

8   ///

9   ///

## FIFTH CAUSE OF ACTION

### (Premises Owner/Contractor Liability)

     AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF COMPLAINS OF DEFENDANTS ON EXHIBIT "C," DOES 301-450, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

     59.    Plaintiff, by this reference, incorporates the allegations contained in paragraphs 9-16 of the First Cause of Action.

     60.    At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances. The defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such alternate entity; defendants, and each of them, have acquired the assets,

or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiff's remedy against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such alternate entity, and that each such defendant enjoys the goodwill originally attached to each such alternate entity.

61.   At all times mentioned herein, the above-listed Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed on Exhibit "A" and others where plaintiff was present. The information provided on Exhibit "A" is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, plaintiff might have been present at those or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

62.   Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, disturbed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

63.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

64.   At all times relevant herein, plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the

1  ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated,

2  and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability

3  Defendants, and each of them.

4  65.   Plaintiff at all times was unaware of the hazardous condition or the risk of personal

5  injury created by the aforesaid presence and use of asbestos products and materials and other toxic

6  substances on said premises.

7  66.   The hazardous condition or risk of personal injury created by the aforesaid

8  presence and use of asbestos products and materials and other toxic substances on said premises

9  was not a known condition that plaintiff's employer was hired to correct or repair.

10  67.   At all times mentioned herein, said Premises Owner/Contractor Liability
Defendants and each of them, remained in control of the premises where plaintiff was performing

11  his work.

12  68.   At all times mentioned herein, the Premises Owner/Contractor Liability Defendants

13  owed to plaintiff and others similarly situated a duty to exercise ordinary care in the management

14  of such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of

15  harm and to avoid causing injury to said person.

16  69.   At all times mentioned herein, said Premises Owner/Contractor Liability

17  Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should

18  have known, that the premises that were in their control would be used without knowledge of, or

19  inspection for, defects or dangerous conditions and that the persons present and using said

20  premises would not be aware of the aforesaid hazardous conditions to which they were exposed on

21  the premises.

22  70.   At all times mentioned herein, said Premises Owner/Contractor Liability

23  Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control

24  said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid

25  dangerous conditions and hazards on said premises.

26  71.   At all times herein mentioned, said Premises Owner/Contractor Liability

27  Defendants, and each of them, negligently provided unsafe equipment, for the performance of the

28  work that caused or contributed to plaintiff's injuries.

72.   Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

73.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken. The said Premises Owner/Contractor Liability Defendants, and each of them, knew or should have known that the work required special procedures and instruction so as to be accomplished in a safe manner and avoid injury to plaintiff and others. The Premises Owner/Contractor Liability Defendants were aware or should have been aware that such special procedures and instructions were not taken nor provided.

74.   In part, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such premises owners and/or contractors' failure to take the necessary precautions.

75.   The work, actions and/or inactions of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

76.   The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

        a.   Failure to advise and warn of asbestos and other toxic dusts;

        b.   Failure to suppress the asbestos-containing or toxic dusts;

c.      Failure to remove the asbestos-containing and toxic dusts through use of ventilation or other approved appropriate means;

d.      Failure to provide adequate breathing protection, i.e., approved respirators or masks;

e.      Failure to inspect and/or test the air;

f.      Failure to provide proper medical monitoring, medical check-ups, and reviews, and provide reports and findings on any such check-ups or monitoring that did occur.

77.      The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises, a safe place to work, free of any dangerous conditions, and to warn of dangerous conditions are non-delegable and mandatory; said duties arise out of common law, Government Code §§830, 835, et seq, Government Code §§815.2-815.6, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

78.      Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, local and regional governments and agencies, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code §40200, et seq., which empowers the Bay Area Air Quality Management District and South Coast Air Quality Management District to promulgate regulations including but not limited to BAAQMD, Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq., and related SCAQMD regulations, The National Emission Standards for Hazardous Air Pollutants, which required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other

1  toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to

2  provide the required safeguards and precautions, or contractors employed by the Premises

3  Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions.

4  Defendants' violations of said codes include but are not limited to:

5        a.       Failing to comply with statutes and allowing ambient levels of airborne

6  asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

7  statutes;

8        b.       Failing to segregate work involving the release of asbestos or other toxic

9  dusts;

10       c.       Failing to suppress dust using prescribed ventilation techniques;

11       d.       Failing to suppress dust using prescribed "wet down" techniques;

12       e.       Failing to warn or educate plaintiff or others regarding asbestos or other

13  toxic substances on the premises;

14       f.       Failing to provide approved respiratory protection devices;

15       g.       Failing to ensure "approved" respiratory protection devices were used

16  properly;

17       h.       Failing to provide for an on-going health screening program for those

18  exposed to asbestos on the premises which included disclosure and/or discussion of ongoing

19  health consequences of asbestos exposure with plaintiff;

20       i.       Failing to provide adequate housekeeping and clean-up of the work place;

21       j.       Failing to properly warn of the hazards associated with asbestos as required

22  by these statutes;

23       k.       Failing to properly report renovation and disturbance of asbestos-containing

24  materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401 and S.C.A.Q.M.D

25  regulations;

26       l.       Failing to have an asbestos removal supervisor as required by regulation;

27       m.       Failing to get approval for renovation as required by statutes;

28       n.       Failing to maintain records as required by statute; and

         o.       Failing to provide plaintiff with alternative, safe, asbestos-free work areas

1    and/or failure to remove plaintiff from an asbestos-laden environment where ongoing exposures to

2    asbestos increased the risk of plaintiff contracting an asbestos-related disease.

3              p.       Failing to apprise plaintiff of the results of any such medical monitoring of

4    physical check-ups that occurred and the risks of contracting asbestos-related diseases.

5              q.

6        79.   Plaintiff at all times was unaware of the hazardous condition or the risk of personal

7    injury created by defendants' violation of said regulations, ordinances or statutes.

8        80.   At all times mentioned herein, plaintiff was a member of the class of persons whose

9    safety was intended to be protected by the regulations, statutes or ordinances described in the

10   foregoing paragraphs.

11       81.   In such circumstances where plaintiff was the employee or "statutory employee" of

12   said Premises Owner/Contractor Liability Defendants as defined by the California Labor Code and

13   related California case law interpretations, such Premises Owner/Contractor Liability Defendants

14   owed a duty of care to prevent injury, harm, damage, or loss to plaintiff. Instead, well outside the

15   normal risk of plaintiff's employment, said Premises Owner/Contractor Liability Defendants

16   caused plaintiff to be exposed to asbestos-containing products and other airborne toxic asbestos,

17   fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos

18   and toxic products contamination, as well as the known and recognized injurious health

19   consequences of repeated and reoccurring exposures by plaintiff to asbestos-containing products,

20   materials, and other toxic asbestos substances, and plaintiff's exposure to asbestos-containing

21   products and the concurrent injury to his person was aggravated by the employer's fraudulent

22   concealment of the existence of hazardous asbestos-containing products exposure and concurrent

23   injury and its connection with plaintiff's employment and job duties. Moreover, plaintiff's said

24   Premises Owner/Contractor Liability Defendants employers illegally failed to obtain and maintain

25   proper and sufficient workers' compensation insurance or failed to obtain workers' compensation

26   insurance which covered plaintiff's injuries, damages, losses, or harms, such that the California

27   Labor Code sections 3600, 3700, *et seq.*, permit recovery in Superior Court.

28       82.   At all times mentioned herein, said Premises Owner/Contractor Liability
     Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should

---

COMPLAINT FOR PERSONAL INJURIES                                                    PAGE 28

1  have known, that the premises that were in their control would be used without knowledge of, or

2  inspection for, defects or dangerous conditions, that the persons present and using said premises

3  would not be aware of the aforesaid hazardous conditions to which they were exposed on the

4  premises, and that such persons were unaware of the aforesaid violations of codes, regulations and

5  statutes.

6       83.    Said Premises Owner/Contractor Liability Defendants knew of the harmful

7  exposures to asbestos sustained by plaintiff at, by and/or through the actions and/or inactions of

8  their own employees or others under the direct and immediate instruction, control and/or

9  supervision of said Premises Owner/Contractor Liability and said Premises Owner/Contractor

10  Liability Defendants concealed and/or failed to disclose to plaintiff the harmful effects and bodily

11  injuries suffered by plaintiff as a result of such exposures to asbestos.

     84.    As a legal consequence of the foregoing, plaintiff developed an asbestos-related

12  illness, which has caused great injury and disability as previously set forth, and plaintiff has

13  suffered damages as herein alleged.

14       WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

15  each of them, as hereinafter set forth.

16           **DAMAGES**

17       Plaintiff prays judgment against defendants and each of them as follows:

18       For special damages according to proof;

19       For general damages according to proof;

20       For medical expenses according to proof;

21       For loss of income according to proof;

22       For punitive damages according to proof;

23       For plaintiff's costs of suit herein; and,

24       For such other further relief as this Court and the law deems just and proper.

25  Dated: October 1, 2010         KELLER, FISHBACK & JACKSON LLP

26

27           By

28           Stephen M. Fishback
         Attorneys for Plaintiff

### EXHIBIT "A"

Plaintiff, ALBERT D. PIERCE, suffers from asbestos-related diseases including, but not limited to, asbestosis and lung cancer.

Plaintiff, ALBERT D. PIERCE, performed and worked around others who performed many and various repair, maintenance, inspection and installation tasks with asbestos-containing products, which may have included, but are not limited to asbestos-containing: thermal insulation and insulation materials; turbines; engines; heaters; chillers; pumps; compressors; valves; gaskets; packing; generators; boilers; refractory materials; pipes; paper; and other asbestos-containing products and materials currently unknown or unspecified by plaintiff.

Plaintiff, ALBERT D. PIERCE, was also exposed to asbestos dust that was carried into his work areas on the person and clothing of co-workers. While performing his regular job duties, his person and clothing were contaminated with such asbestos dust.

Plaintiff alleges and believes that ALBERT D. PIERCE's exposures to asbestos may have occurred at job sites including, but not limited to, those listed below.

| | |
|---|---|
| EMPLOYER: | United States Navy |
| DATE: | 1954-1957 |
| DURATION: | Approximately 3 years |
| JOB TITLE: | Fireman Apprentice |
| SITE: | USS LAZON; Long Beach Naval Shipyard; USS BON HOMME RICHARD; Hunter's Point Naval Shipyard, S.F.; Hawaii; Japan; Philippines |
| | |
| EMPLOYER: | Flintkote Box Factory |
| DATE: | 1957 – 1959 |
| DURATION: | Approximately 2 years |
| JOB TITLE: | Die Cutting Machine Operator |
| SITE: | San Leandro, CA |
| | |
| EMPLOYER: | United States Navy |
| DATE: | 1959-1976 |
| DURATION: | Approximately 18 years |
| JOB TITLE: | Marine Machinist |
| SITE: | USS FRANKIE EVANS; Long Beach Naval Shipyard; USS MANSFIELD; USS KEARSARGE; USS HANCOCK; U.S. Navy Base, Pensicola, FL.; USS ENTERPRISE; Newport News, VA; Alameda Naval Air Station; Hunter's Point Naval Shipyard.; USS RANGER; Oak Knoll Navy Hospital, Oakland, CA. |
| | |
| EMPLOYER: | Manner Bowl |
| DATE: | 1976-1977 |
| DURATION: | Approximately 1 year |
| JOB TITLE: | Night Manager |
| SITE: | San Leandro, CA |
| EMPLOYER: | Dublin Bowl |

DATE:            1977-1978
DURATION:        Approximately 1.5 years
JOB TITLE:       Night Manager/Pro Shop Manager
SITE:            Dublin, CA

EMPLOYER:        Moffett Field Lanes
DATE:            1979-1980
DURATION:        Approximately 1.5 years
JOB TITLE:       Manager
SITE:            Moffett Field, CA

EMPLOYER:        Mission Mini Storage
DATE:            1980-1991
DURATION:        Approximately 11 years
JOB TITLE:       Self Storage Unit Manager
SITE:            Various Storage Unit locations in the San Francisco Bay Area, CA

EMPLOYER:        Hunter's Properties
DATE:            1991-2003
DURATION:        Approximately 12 years
JOB TITLE:       Self Storage Unit Manager
SITE:            Various Storage Unit locations in the San Francisco Bay Area, CA
                 (including Monterrey, Concord, Pleasanton)

EMPLOYER:        Alameda Self Storage
DATE:            2003-2005
DURATION:        Approximately 2 years
JOB TITLE:       Self Storage Unit Manager
SITE:            Alameda, CA

Plaintiff's investigation and discovery are continuing.

1

## EXHIBIT "B"

2

3  CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-in-interest to
   and formerly known as VIACOM, INC. and WESTINGHOUSE ELECTRIC CORPORATION;

4  FOSTER WHEELER LLC;

5  GENERAL ELECTRIC COMPANY;

6
7  WARREN PUMPS, LLC;

8  ALFA LAVAL, INC.;

9  DOES 1-300

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "C"

2

3   CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-in-interest to
    and formerly known as VIACOM, INC. and WESTINGHOUSE ELECTRIC CORPORATION;

4

5   FOSTER WHEELER LLC;

6   GENERAL ELECTRIC COMPANY;

7   DOES 301-450

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADRMOP, E-Filing

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:10-cv-05841-PJH

Pierce v. CBS Corporation et al
Assigned to: Hon. Phyllis J. Hamilton
Case in other court: San Francisco County Superior Court, CGC
                10-275681
Cause: 28:1442 Petition for Removal

Date Filed: 12/22/2010
Jury Demand: Defendant
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Albert Pierce**

represented by **Stephen Michael Fishback**
Keller, Fishback & Jackson LLP
18425 Burbank Boulevard
Suite 610
Tarzana, CA 91356
(818) 342-7442
Fax: (818) 342-7616
Email: sfishback@kfjlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Lee Keller**
Keller, Fishback & Jackson LLP
18425 Burbank Boulevard
Suite 610
Tarzana, CA 91356
818-342-7442
Fax: 818-342-7616
Email: dkeller@kfjlegal.com
*ATTORNEY TO BE NOTICED*

**John Bruce Jackson**
Keller, Fishback & Jackson LLP
18425 Burbank Boulevard
Suite 610
Tarzana, CA 91356
(818) 342-7442
Fax: (818) 342-7616
Email: bjackson@kfjlegal.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CBS Corporation**

represented by **Kevin Douglas Jamison**

Pond North LLP
350 South Grand Avenue, Suite 2850
Los Angeles, CA 90071
(213) 617-6170
Fax: (213) 623-3594
Email: kjamison@pondnorth.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Francis Dennis Pond**
Pond North LLP
350 South Grand Avenue
Suite 2850
Los Angeles, CA 90017
213-617-6170
Fax: 213-623-3594
Email: fpond@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Mary Katherine Back**
Pond North LLP
350 South Grand Avenue
Suite 3300
Los Angeles, CA 90071
213-617-6170
Fax: 213-623-3594
Email: mback@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Foster Wheeler LLC**

**Defendant**

**General Electric Company**                    represented by **Katherine Paige Gardiner**
Sedgwick, Detert, Moran & Arnold
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105
415-781-7900
Email: katherine.gardiner@sdma.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Todd Sheldon**
Sedgwick Detert Moran & Arnold LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105
(415) 781-7900
Fax: (415) 781-2635

Email: charles.sheldon@sdma.com
*ATTORNEY TO BE NOTICED*

**Derek S. Johnson**
Sedgwick Detert Moran & Arnold LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105
415-781-7900 x1569
Fax: 415-781-2635
Email: derek.johnson@sdma.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Warren Pumps, LLC**
*TERMINATED: 02/02/2011*

represented by **James P. Cunningham**
Liner Grode Stein et al
199 Fremont Street
20th Floor
San Francisco, CA 94105
415-489-7700
Fax: 415-489-7701
Email: jcunningham@cbmlaw.com
*ATTORNEY TO BE NOTICED*

**Susanne Gheseri Arani**
Liner Grode Stein et al
199 Fremont Street
20th Floor
San Francisco, CA 94105
415-489-7700
Fax: 415-489-7701
Email: sarani@linerlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alfa Laval, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/22/2010 | 1 | NOTICE OF REMOVAL /no process from San Francisco County Superior Court. Their case number is CGC 10-275681. (Filing fee $350 receipt number 34611054202). Filed by Warren Pumps, LLC. (ga, COURT STAFF) (Filed on 12/22/2010) (ga, COURT STAFF). (Entered: 12/22/2010) |
| 12/22/2010 | 2 | Disclosure Statement by Warren Pumps, LLC. (ga, COURT STAFF) (Filed on 12/22/2010) (Entered: 12/22/2010) |
| 12/22/2010 | 3 | ADR SCHEDULING ORDER: Case Management Statement due by 3/24/2011. Case Management Conference set for 3/31/2011 10:00 AM in Courtroom B, 15th Floor, San Francisco.. Signed by Judge Maria-Elena James on 12/22/10. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Standing Order)(ga, COURT STAFF) (Filed on 12/22/2010) (Entered: 12/22/2010) |
| 12/22/2010 | | CASE DESIGNATED for Electronic Filing. (ga, COURT STAFF) (Filed on 12/22/2010) (Entered: 12/22/2010) |
| 12/22/2010 | | ANSWER to Complaint with jury demand byGeneral Electric Company. (kc, COURT STAFF) (Filed on 12/22/2010) (Entered: 01/07/2011) |
| 12/22/2010 | | ANSWER to Complaint, jury trial demanded byWarren Pumps, LLC. (kc, COURT STAFF) (Filed on 12/22/2010) (Entered: 01/07/2011) |
| 12/23/2010 | 4 | CERTIFICATE OF SERVICE by Warren Pumps, LLC *as service of notice of removal on plaintiff* (Arani, Susanne) (Filed on 12/23/2010) (Entered: 12/23/2010) |
| 12/23/2010 | 5 | CERTIFICATE OF SERVICE by Warren Pumps, LLC *as to Notice of Removal to Defendants* (Arani, Susanne) (Filed on 12/23/2010) (Entered: 12/23/2010) |
| 12/28/2010 | 6 | Joinder re 1 Notice of Removal by General Electric Company. (Attachments: # 1 Exhibit 1, # 2 Proof of Service)(Gardiner, Katherine) (Filed on 12/28/2010) (Entered: 12/28/2010) |
| 12/28/2010 | 7 | NOTICE by General Electric Company *of Interested Parties (L.R. 7.1-1)* (Gardiner, Katherine) (Filed on 12/28/2010) (Entered: 12/28/2010) |
| 12/28/2010 | 8 | Declination to Proceed Before a U.S. Magistrate Judge by General Electric Company. (Gardiner, Katherine) (Filed on 12/28/2010) (Entered: 12/28/2010) |
| 01/04/2011 | 9 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (bjtS, COURT STAFF) (Filed on 1/4/2011) (Entered: 01/04/2011) |
| 01/04/2011 | 10 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Phyllis J. Hamilton for all further proceedings. Magistrate Judge Maria-Elena James no longer assigned to the case. Signed by Executive Committee on 1/4/11. (mab, COURT STAFF) (Filed on 1/4/2011) (Entered: 01/04/2011) |
| 01/06/2011 | 11 | NOTICE by CBS Corporation *of Filing State Court Answer to Complaint and Jury Demand* (Attachments: # 1 Exhibit Answer to Complaint, # 2 Exhibit Demand for Jury Trial)(Jamison, Kevin) (Filed on 1/6/2011) (Entered: 01/06/2011) |
| 01/06/2011 | 12 | Certificate of Interested Entities by CBS Corporation identifying Other Affiliate National Amusements, Inc. for CBS Corporation. (Jamison, Kevin) (Filed on 1/6/2011) Modified on 1/7/2011 (kc, COURT STAFF). (Entered: 01/06/2011) |
| 01/06/2011 | 13 | NOTICE by CBS Corporation of Related Cases (Jamison, Kevin) (Filed on 1/6/2011) Modified on 1/7/2011 (kc, COURT STAFF). (Entered: 01/06/2011) |
| 01/12/2011 | 14 | ORDER SETTING CASE MANAGEMENT CONFERENCE. Joint Case Management Statement due by 3/24/2011. Initial Case Management Conference set for 3/31/2011 02:00 PM. Signed by Judge Phyllis J. Hamilton on 1/12/11. (nah, COURT STAFF) (Filed on 1/12/2011) (Entered: 01/12/2011) |
| 01/13/2011 | 15 | AMENDED ORDER SETTING CASE MANAGEMENT CONFERENCE. Joint Case Management Statement due by 3/24/2011. Initial Case Management Conference set for 3/31/2011 02:00 PM.. Signed by Judge Phyllis J. Hamilton on 1/13/11. (nah, COURT STAFF) (Filed on 1/13/2011) (Entered: 01/13/2011) |
| | | |

| 01/31/2011 | 16 | Stipulation and Proposed Order to Dismiss Action Against Warren Pumps, LLC Without Prejudice filed by Warren Pumps, LLC, Albert Pierce. (Arani, Susanne) (Filed on 1/31/2011) Modified on 2/1/2011 (kc, COURT STAFF). (Entered: 01/31/2011) |
| 02/02/2011 | 17 | STIPULATION AND ORDER TO DISMISS DEFENDANT WARREN PUMPS LLC WITHOUT PREJUDICE re 16 Notice (Other) filed by Albert Pierce, Warren Pumps, LLC. Signed by Judge Phyllis J. Hamilton on 2/2/11. (nah, COURT STAFF) (Filed on 2/2/2011) (Entered: 02/02/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/14/2011 16:26:14 | | |
| **PACER Login:** | sd0076 | **Client Code:** | 00045-136711 |
| **Description:** | Docket Report | **Search Criteria:** | 4:10-cv-05841-PJH |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |