12:10 PM
11-30-10

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY<br/>(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:** A.W. CHESTERTON COMPANY; AIR & LIQUID
*(AVISO AL DEMANDADO):* SYSTEMS CORPORATION, as successor by merger
to BUFFALO PUMPS, INC.; See Additional Parties Attachment Page

**YOU ARE BEING SUED BY PLAINTIFF:** LUTHER EUGENE CARTER and
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* SONJA C. CARTER

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br/>*(El nombre y dirección de la corte es):*<br/>Superior Court of California, County of San Francisco<br/>400 McAllister Street<br/>San Francisco, California 94102 | CASE NUMBER:<br/>*(Número del Caso):*<br/>**CGC-10-275695** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Paula A. Rasmussen, Esq.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BRENT COON & ASSOCIATES
44 Montgomery St., Suite 800, San Francisco, CA 94104                                          415-489-7420

| DATE:<br/>*(Fecha)* **NOV - 4 2010** | **CLERK OF THE COURT** Clerk, by<br/>*(Secretario)* | P. NATT | , Deputy<br/>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Union Carbide Corp

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br/>Judicial Council of California<br/>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br/>www.courtinfo.ca.gov<br/>PRODOC® |

SUM-200(A)

| SHORT TITLE: Luther Eugene Carter, et al. vs. A.W. Chesterton Company, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[ ] Plaintiff    [X] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

ALFA LAVAL, INC., individually and as successor interest to SHARPLES, INC., ALFA LAVAL SEPARATION, INC. and DELAVAL SEPARATOR COMPANY; BAYER CROPSCIENCE, INC.; formerly known as AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY; BW/IP, INC., and its wholly-owned subsidiaries; CRANE CO.; CROWN CORK & SEAL COMPANY, INC., individually and as successor to MUNDET CORK COMPANY; EATON CORPORATION, individually and as successor in interest to EATON ELECTRICAL, INC., formerly known as CUTLER-HAMMER, INC.; ELLIOTT COMPANY, also known as ELLIOTT TURBOMACHINERY COMPANY, INC.; ERICSSON INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EUS INC., individually and as successor in interest to ANACONDA CABLE & WIRE COMPANY and CONTINENTAL WIRE & CABLE COMPANY; GENERAL ELECTRIC COMPANY; GOULDS PUMPS, INCORPORATED; GRAYBAR ELECTRIC COMPANY, INC.; HILL BROTHERS CHEMICAL COMPANY; IMO INDUSTRIES, INC., individually and as successor in interest to DELAVAL STEAM TURBINE CO.; INGERSOLL-RAND COMPANY, individually and as successor in interest to TERRY STEAM TURBINE COMPANY; J.T. THORPE & SON, INC.; JOHN CRANE, INC., as successor to CRANE PACKING COMPANY and JOHN CRANE-HOUDAILLE, INC.; METALCLAD INSULATION CORPORATION, individually and as successor in interest to NORTHERN CALIFORNIA INSULATION; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN CORPORATION, individually and as successor in interest to SACOMO-SIERRA; QUINTEC INDUSTRIES, INC.; RAPID-AMERICAN CORPORATION; ROCKWELL AUTOMATION, INC., individually and as the successor in interest to ALLEN-BRADLEY COMPANY, LLC.; SB DECKING, INC., formerly known as SELBY, BATTERSBY & COMPANY; SCHNEIDER ELECTRIC USA, INC. formerly known as SQUARE D CO.; SULZER PUMPS (US) INC.; THE WM. POWELL COMPANY; UNION CARBIDE CORPORATION; UNIROYAL HOLDING, INC.; VIAD CORPORATION, individually and as successor in interest to GRISCOM-RUSSELL and DIAL CORPORATION; WARREN PUMPS, LLC; and DOES 1-500, inclusive.

Page ___1___ of ___1___

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

ProDoc©

©COPY

1  Richard A. Brody, Esq. (SBN 100379)
   Paula A. Rasmussen, Esq. (SBN 258352)
2  BRENT COON & ASSOCIATES
   44 Montgomery Street, Suite 800
3  San Francisco, CA 94104
   Telephone: 415.489.7420
4  Facsimile:  415.489.7426

5  J. Dennis Weitzel, Esquire (seeking Pro Hoc Admission)
6  Texas State Bar No. 21118200
   Morgan & Morgan, PA
7  20 N. Orange Avenue
   Suite 1600
8  Orlando, FL 32802
   Telephone: 407.420.1414
9  Facsimile: 407.422.8925

10 Attorneys for Plaintiffs

**ENDORSED**
**FILED**
San Francisco County Superior Court

NOV - 4 2010

CLERK OF THE COURT
BY:  PARAM NATT
                    Deputy Clerk

ASBESTOS
CASE MANAGEMENT CONFERENCE

OCT 2 0 2011 1:30 PM

DEPARTMENT   220

11

12          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

13               IN AND FOR THE COUNTY OF SAN FRANCISCO

14

15 LUTHER EUGENE CARTER and      Case No. CGC - 1 0 - 2 7 5 6 9 5
   SONJA C. CARTER,
16                               **COMPLAINT FOR DAMAGES
17        Plaintiffs,            (PERSONAL INJURY--ASBESTOS)**

18 v.                           1. Negligence
                                2. Strict Products Liability
19 A.W. CHESTERTON COMPANY; AIR & 3. Failure to Warn
   LIQUID SYSTEMS CORPORATION, as 4. Breach of Warranties
20 successor by merger to BUFFALO PUMPS, 5. Fraud and Conspiracy
   INC.; ALFA LAVAL, INC., individually and as 6. False Representation Under
21 successor interest to SHARPLES, INC., ALFA    Restatement Torts Section 402-B
   LAVAL SEPARATION, INC. and DELAVAL 7. Loss of Consortium
22 SEPARATOR COMPANY; BAYER
   CROPSCIENCE, INC.; formerly known as   **Punitive Damages**
23 AMCHEM PRODUCTS, INC. and BENJAMIN
24 FOSTER COMPANY; BW/IP, INC., and its
   wholly-owned subsidiaries; CRANE CO.;
25 CROWN CORK & SEAL COMPANY, INC.,   THIS CASE IS SUBJECT TO
26 individually and as successor to MUNDET   MANDATORY ELECTRONIC FILING
   CORK COMPANY; EATON CORPORATION,   PURSUANT TO AMENDED G.O. 158
27 individually and as successor in interest to
28 EATON ELECTRICAL, INC.; formerly known

                                    1

*Carter v. A.W. Chesterton Company, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                                          INJURY--ASBESTOS)

1  as CUTLER-HAMMER, INC.; ELLIOTT
2  COMPANY, also known as ELLIOTT
   TURBOMACHINERY COMPANY, INC.;
3  ERICSSON INC. WHICH WILL DO
   BUSINESS IN CALIFORNIA AS EUS INC.,
4  individually and as successor in interest to
   ANACONDA CABLE & WIRE COMPANY and
5  CONTINENTAL WIRE & CABLE COMPANY;
6  GENERAL ELECTRIC COMPANY; GOULDS
   PUMPS, INCORPORATED; GRAYBAR
7  ELECTRIC COMPANY, INC.; HILL
8  BROTHERS CHEMICAL COMPANY; IMO
   INDUSTRIES, INC., individually and as
9  successor in interest to DELAVAL STEAM
   TURBINE CO.; INGERSOLL-RAND
10 COMPANY, individually and as successor in
   interest to TERRY STEAM TURBINE
11 COMPANY; J.T. THORPE & SON, INC.; JOHN
12 CRANE, INC., as successor to CRANE
   PACKING COMPANY and JOHN CRANE-
13 HOUDAILLE, INC.; METALCLAD
14 INSULATION CORPORATION, individually
   and as successor in interest to NORTHERN
15 CALIFORNIA INSULATION; OWENS-
   ILLINOIS, INC.; PARKER-HANNIFIN
16 CORPORATION, individually and as successor
17 in interest to SACOMO-SIERRA; QUINTEC
   INDUSTRIES, INC.; RAPID-AMERICAN
18 CORPORATION; ROCKWELL
   AUTOMATION, INC., individually and as the
19 successor in interest to ALLEN-BRADLEY
20 COMPANY, LLC.; SB DECKING, INC.,
   formerly known as SELBY, BATTERSBY &
21 COMPANY; SCHNEIDER ELECTRIC USA,
   INC. formerly known as SQUARE D CO.;
22 SULZER PUMPS (US) INC.; THE WM.
23 POWELL COMPANY; UNION CARBIDE
   CORPORATION; UNIROYAL HOLDING,
24 INC.; VIAD CORPORATION, individually and
   as successor in interest to GRISCOM-RUSSELL
25 and DIAL CORPORATION; WARREN PUMPS,
26 LLC; and DOES 1-500, inclusive,

27          Defendants.

28 ///

2

1    Plaintiffs LUTHER EUGENE CARTER and SONJA C. CARTER (hereinafter "plaintiffs")

2    complain of all defendants, and each of them, and allege:

3                                    GENERAL ALLEGATIONS

4        1.      Plaintiffs bring this action on their own behalf and are hereinafter referred to as

5    "plaintiffs."  Plaintiffs know of no other parties who should be named as a plaintiff herein.

6        2.      Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

7    DOES 1 through 500, inclusive, and therefore sue these defendants by such fictitious names.

8    Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

9    Plaintiffs are informed and believe and thereon allege that each of said fictitiously named

10   defendants are, through their negligence, intentional torts, and/or conduct giving rise to strict

11   liability, responsible or liable in some manner for the occurrences herein alleged, and that the

12   injuries herein alleged were the direct and legal result of said negligence, intentional torts, and/or

13   conduct giving rise to strict liability.

14       3.      At all times mentioned in this complaint, each of the defendants was the agent and

15   employee of each of the remaining defendants, and by their actions as alleged in this complaint

16   each defendant was acting within the course and scope of this agency and employment, and each

17   defendant has ratified and approved the acts of the remaining defendants.  The Federal Courts lack

18   subject matter jurisdiction over this action as there is no federal question and incomplete diversity

19   of citizenship exists due to the presence of one or more California defendants.  Removal is

20   improper.  Every claim arising under the constitution, treaties, or laws of the United States is

21   expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or

22   of any officer of the U.S. or any agency or person acting under him occurring under color of such

23   office).  No claim of admiralty or maritime law is raised.  Plaintiff sues no foreign state or agency:

24   Venue is proper in San Francisco County, California.

25   / / /

26   / / /

27   / / /

28   / / /

*Carter v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                               INJURY--ASBESTOS)

1      4.    Defendants A.W. CHESTERTON COMPANY; AIR & LIQUID SYSTEMS

2    CORPORATION, as successor by merger to BUFFALO PUMPS, INC.; ALFA LAVAL, INC.,

3    individually and as successor interest to SHARPLES, INC., ALFA LAVAL SEPARATION, INC.

4    and DELAVAL SEPARATOR COMPANY; BAYER CROPSCIENCE, INC.; formerly known as

5    AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY; BW/IP, INC., and its

6    wholly-owned subsidiaries; CRANE CO.; CROWN CORK & SEAL COMPANY, INC.,

7    individually and as successor to MUNDET CORK COMPANY; EATON CORPORATION,

8    individually and as successor in interest to EATON ELECTRICAL, INC., formerly known as

9    CUTLER-HAMMER, INC.; ELLIOTT COMPANY, also known as ELLIOTT

10    TURBOMACHINERY COMPANY, INC.; ERICSSON INC. WHICH WILL DO BUSINESS IN

11    CALIFORNIA AS EUS INC., individually and as successor in interest to ANACONDA CABLE &

12    WIRE COMPANY and CONTINENTAL WIRE & CABLE COMPANY; GENERAL ELECTRIC

13    COMPANY; GOULDS PUMPS, INCORPORATED; GRAYBAR ELECTRIC COMPANY, INC.;

14    HILL BROTHERS CHEMICAL COMPANY; IMO INDUSTRIES, INC., individually and as

15    successor in interest to DELAVAL STEAM TURBINE CO.; INGERSOLL-RAND COMPANY,

16    individually and as successor in interest to TERRY STEAM TURBINE COMPANY; J.T.

17    THORPE & SON, INC.; JOHN CRANE, INC., as successor to CRANE PACKING COMPANY

18    and JOHN CRANE-HOUDAILLE, INC.; METALCLAD INSULATION CORPORATION,

19    individually and as successor in interest to NORTHERN CALIFORNIA INSULATION; OWENS-

20    ILLINOIS, INC.; PARKER-HANNIFIN CORPORATION, individually and as successor in

21    interest to SACOMO-SIERRA; QUINTEC INDUSTRIES, INC.; RAPID-AMERICAN

22    CORPORATION; ROCKWELL AUTOMATION, INC.; individually and as the successor in

23    interest to ALLEN-BRADLEY COMPANY, LLC.; SB DECKING, INC., formerly known as

24    SELBY, BATTERSBY & COMPANY; SCHNEIDER ELECTRIC USA, INC. formerly known as

25    SQUARE D CO.; SULZER PUMPS (US) INC.; THE WM. POWELL COMPANY; UNION

26    CARBIDE CORPORATION; UNIROYAL HOLDING, INC.; VIAD CORPORATION,

27    individually and as successor in interest to GRISCOM-RUSSELL and DIAL CORPORATION;

28    WARREN PUMPS, LLC; and DOES 1 through 500, inclusive, are at all times herein mentioned,

4

1   and were corporations or other business entities organized and existing under the laws of the state
2   of California and/or qualified to do business in this state.
3            A.      MANUFACTURING/DISTRIBUTING DEFENDANTS.  The following
4   defendants designated as "manufacturing/distributing defendants" are named in their capacities as
5   manufacturers, distributors, suppliers and installers of asbestos-containing products:  A.W.
6   CHESTERTON COMPANY; AIR & LIQUID SYSTEMS CORPORATION, as successor by
7   merger to BUFFALO PUMPS, INC.; ALFA LAVAL, INC., individually and as successor interest
8   to SHARPLES, INC., ALFA LAVAL SEPARATION, INC. and DELAVAL SEPARATOR
9   COMPANY; BAYER CROPSCIENCE, INC.; formerly known as AMCHEM PRODUCTS, INC.
10  and BENJAMIN FOSTER COMPANY; BW/IP, INC., and its wholly-owned subsidiaries; CRANE
11  CO.; CROWN CORK & SEAL COMPANY, INC., individually and as successor to MUNDET
12  CORK COMPANY; EATON CORPORATION, individually and as successor in interest to
13  EATON ELECTRICAL, INC., formerly known as CUTLER-HAMMER, INC.; ELLIOTT
14  COMPANY, also known as ELLIOTT TURBOMACHINERY COMPANY, INC.; ERICSSON
15  INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EUS INC., individually and as
16  successor in interest to ANACONDA CABLE & WIRE COMPANY and CONTINENTAL WIRE
17  & CABLE COMPANY; GENERAL ELECTRIC COMPANY; GOULDS PUMPS,
18  INCORPORATED; GRAYBAR ELECTRIC COMPANY, INC.; HILL BROTHERS CHEMICAL
19  COMPANY; IMO INDUSTRIES, INC., individually and as successor in interest to DELAVAL
20  STEAM TURBINE CO.; INGERSOLL-RAND COMPANY, individually and as successor in
21  interest to TERRY STEAM TURBINE COMPANY; J.T. THORPE & SON, INC.; JOHN CRANE,
22  INC., as successor to CRANE PACKING COMPANY and JOHN CRANE-HOUDAILLE, INC.;
23  METALCLAD INSULATION CORPORATION, individually and as successor in interest to
24  NORTHERN CALIFORNIA INSULATION; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN
25  CORPORATION, individually and as successor in interest to SACOMO-SIERRA; QUINTEC
26  INDUSTRIES, INC.; RAPID-AMERICAN CORPORATION; ROCKWELL AUTOMATION,
27  INC., individually and as the successor in interest to ALLEN-BRADLEY COMPANY, LLC.; SB
28  DECKING, INC., formerly known as SELBY, BATTERSBY & COMPANY; SCHNEIDER

5

*Carter v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                               INJURY--ASBESTOS)

1  ELECTRIC USA, INC. formerly known as SQUARE D CO.; SULZER PUMPS (US) INC.; THE

2  WM. POWELL COMPANY; UNION CARBIDE CORPORATION; UNIROYAL HOLDING,

3  INC.; VIAD CORPORATION, individually and as successor in interest to GRISCOM-RUSSELL

4  and DIAL CORPORATION; and WARREN PUMPS, LLC.

5        B.    INSULATION DEFENDANTS.  The following defendants designated as

6  "insulation defendants" are named in their capacities as companies that manufactured, sold or

7  distributed asbestos-containing thermal insulation products, including but not limited to pipe

8  covering, block insulation, cements, sealants, adhesives, and cloth:  CROWN CORK & SEAL

9  COMPANY, INC.; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.;

10  PARKER-HANNIFIN CORPORATION; QUINTEC INDUSTRIES, INC.; RAPID-AMERICAN

11  CORPORATION; and UNIROYAL HOLDING, INC.

12        C.    GASKET AND PACKING DEFENDANTS.  The following defendants

13  designated as "gasket and packing defendants" are named in their capacities as manufacturers and

14  distributors of asbestos-containing products including but not limited to gasket and packing

15  products: A.W. CHESTERTON COMPANY; AIR & LIQUID SYSTEMS CORPORATION;

16  BW/IP, INC.; CRANE, CO.; GOULDS PUMPS, INCORPORATED; JOHN CRANE, INC.;

17  PARKER-HANNIFIN CORPORATION; SULZER PUMPS (US) INC.; THE WM. POWELL

18  COMPANY; and WARREN PUMPS, LLC.

19        D.    MECHANICAL EQUIPMENT DEFENDANTS.  The following defendants

20  designated as "mechanical equipment defendants" are named in their capacities as manufacturers,

21  sellers, distributors and rebranders of asbestos-containing mechanical equipment including but not

22  limited to pumps, valves, turbines, motors, condensors, separators, steam traps, strainers, engines,

23  HVAC systems, steam generators, boilers, cooling tower accessories, cooling exchangers,

24  evaporative coolers, condensing units, flexible duct connectors, forced draft blowers, controller and

25  regulator equipment, refrigeration equipment, heating equipment, heat exchangers, furnaces, and

26  liquid level indicators: AIR & LIQUID SYSTEMS CORPORATION; ALFA LAVAL, INC.;

27  BW/IP, INC.; CRANE CO.; ELLIOTT COMPANY; GENERAL ELECTRIC COMPANY;

28  GOULDS PUMPS, INCORPORATED; IMO INDUSTRIES, INC.; INGERSOLL-RAND

6

1 | COMPANY; JOHN CRANE, INC.; SULZER PUMPS (US), INC.; THE WM. POWELL
2 | COMPANY; VIAD CORPORATION; and WARREN PUMPS, LLC.
3 |         E.      BOILER DEFENDANTS.  The following defendants designated as "boiler
4 | defendants" are named in their capacities as manufacturer of boilers and furnaces that contained
5 | asbestos-containing insulation, gaskets, packing and refractory products: J.T. THORPE & SON,
6 | INC.
7 |         F.      CABLE WIRE ELECTRICAL DEFENDANTS.  The following defendants
8 | designated as "cable wire electrical defendants" are named in their capacities as companies that
9 | manufactured, sold, distributed, installed or removed asbestos-containing electrical equipment and
10 | components, including but not limited to cable, wire, circuit breakers, transformers, and switch
11 | boxes: EATON CORPORATION; ERICSSON INC.; GRAYBAR ELECTRIC COMPANY, INC.;
12 | ROCKWELL AUTOMATION, INC.; SCHNEIDER ELECTRIC USA, INC.; and UNION
13 | CARBIDE CORPORATION.
14 |         G      CONTRACTOR DEFENDANTS.  The following defendants designated as
15 | "contractor defendants" are named in their capacities as companies that manufactured, sold,
16 | installed, removed, replaced, supplied, disturbed, manipulated and/or maintained asbestos-
17 | containing materials: J.T. THORPE & SON, INC.; METALCLAD INSULATION
18 | CORPORATION; and SB DECKING, INC.
19 |      5.     At all times mentioned herein, defendants, and each of them, were engaged in the
20 | business of mining, milling, manufacturing, testing, developing, processing, importing, converting,
21 | compounding, assembling, fabricating, modifying, designing, specifying, approving, supplying,
22 | distributing, delivering, packaging, labeling, advertising, marketing, warranting, applying,
23 | installing, and inspecting asbestos, and products produced therefrom, for sale to and use by
24 | members of the general public, as well as for sale to and use by other parties to manufacture,
25 | assemble, supply, distribute, label, apply and install products made therefrom, or both.
26 |      6.     The defendants, and each of them, acting through their agents, servants and/or
27 | employees, cause, and have caused in the past, certain asbestos-containing products and asbestos-
28 | related materials, including but not limited to insulation, refractory materials, fireproofing, boilers

7

*Carter v. A.W. Chesterton Company, et al.*           COMPLAINT FOR DAMAGES (PERSONAL
                                              INJURY—ASBESTOS)

1   and boiler covers, pumps, valves, gaskets, packing, engines, motors, turbines, turbine covers,

2   bakelite, coatings, electrical, switching, transformers, compressors, cables, wires, controls, circuit

3   breakers, molding compounds, adhesives, coatings, piping, plumbing, HVAC, blowers, rope, cloth,

4   fabric, felt, fibers, tiles, flooring, decking, building materials, paint, drywall compounds, roofing,

5   welding, construction equipment office equipment, as well as various automotive components

6   including gaskets, brakes, clutch and other materials to be placed on the market and in the stream

7   of interstate commerce with the result that said products and materials came into use by plaintiff

8   and those working in close proximity to plaintiff at relevant times herein.

9       7.   Plaintiff LUTHER EUGENE CARTER was exposed to asbestos during the course

10  of his life in the manner and during the time periods set forth below:

11      Plaintiff was employed at the following locations where he alleges possible exposure to

12  asbestos:  Plaintiff was a junior officer on board the U.S.S. Begor when it was being retrofitted at

13  Mare Island Naval Base in 1952.  Plaintiff's living quarters were below decks adjacent to the

14  extensive retrofit where numerous asbestos products were used.  During the several months of the

15  retrofit, Plaintiff was heavily exposed to the free floating asbestos which covered the living area

16  "like a snowstorm."  Plaintiff entered and exited the area where asbestos containing products were

17  used around pipes, boilers and other spaces in close proximity to where he slept and stood watch

18  pursuant to his duties as a junior grade officer.

19      Decedent sustained no exposure to asbestos subsequent to December 5, 1980.

20      8.   During the course and scope of his employment, plaintiff continually worked with

21  and in close proximity to others who were working with asbestos and asbestos-containing products.

22  He routinely and regularly worked in close proximity to asbestos and asbestos-containing products

23  and was continually exposed to asbestos fibers which were released from asbestos and asbestos-

24  containing products which were mined, milled, manufactured, processed, imported, converted,

25  compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and

26  sold by defendants, and each of them.

27      Decedent sustained no exposure to asbestos subsequent to December 5, 1980.

28  ///

8

1      9.     Plaintiff's exposure to asbestos was the direct and legal cause of his development of

2  an asbestos-related disease known and designated as mesothelioma and other illnesses and

3  disabilities whose relationship to asbestos is as yet unknown to plaintiff herein.

4                          **FIRST CAUSE OF ACTION**

5                             (Negligence)

6      10.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

7  fully set forth herein, each and every allegation contained in the General Allegations.

8      11.    At all times relevant herein, defendants and each of them, owed a duty of due care

9  which required them to exercise ordinary care to protect against an unreasonable risk of harm.  This

10  duty was owed to plaintiff.

11      12.    Plaintiff's development of mesothelioma and related conditions is the direct and

12  legal result of the conduct of the defendants, and each of them, in that they negligently and

13  carelessly researched, tested or failed to test, manufactured, designed, specified, developed,

14  labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed,

15  distributed and supplied asbestos and asbestos-containing products.  Defendants, and each of them,

16  without any adequate warning to the consumer or user, produced, sold, and otherwise put into the

17  stream of interstate commerce the foregoing materials which said defendants, and each of them

18  knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and

19  highly harmful to plaintiff's body, lungs, respiratory system, skin and health.  Further, defendants,

20  and each of them, knew, or through the exercise of ordinary care should have known, that exposure

21  to asbestos is, and at all times relevant herein has been, associated with terminal and incurable

22  diseases which have caused and continue to cause death.

23      13.    During the time period when plaintiff was exposed to asbestos in the manner

24  described above, he had no knowledge that said exposure placed him at risk for developing the

25  diseases described herein and therefore had no opportunity, nor can he be charged with a duty or

26  / / /

27  / / /

28  / / /

9

1   breach of duty, to protect himself against said harmful asbestos exposure.  Plaintiff had no
2   knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them,
3   were actionable at law when they were committed and cannot be charged with knowledge or
4   inquiry thereof.

5          14.    The mesothelioma, asbestosis, pleural plaques, and related conditions that afflict
6   plaintiff developed at a microscopic and undetectable level over an extended period of time,
7   without noticeable trauma, and was therefore unknown and unknowable to plaintiff until his
8   physicians diagnosed him with mesothelioma, asbestosis, pleural plaques and related conditions
9   within the pertinent statute of limitations.  Prior to his diagnosis, plaintiff did not know, nor
10  through the exercise of reasonable diligence could he have known, that his disease and related
11  conditions were caused by his exposure to the defendants' asbestos and asbestos-containing
12  products.

13         15.    As a direct and legal result of the conduct of the defendants, and each of them,
14  plaintiff developed a disease known and designated as mesothelioma, asbestosis, pleural plaques
15  and related conditions.

16         16.    As a further direct and legal result of the conduct of defendants, and each of them, it
17  has been and continues to be necessary for plaintiff to retain the services of physicians, hospitals,
18  hospice, and other health care professionals to diagnose, treat, and provide palliative care for
19  plaintiff from now until he approaches the end of his life.  As a further direct and legal result of the
20  conduct of the defendants, and each of them, it will be necessary for plaintiff to retain the services
21  of health care professionals in the future for an indeterminable period of time.  Plaintiff does not
22  yet know the full extent of treatment that will be required nor the reasonable value of medical
23  services rendered or to be rendered to plaintiff herein and therefore requests leave to amend this
24  complaint when that sum is determined.

25         17.    As a direct and legal result of the conduct of the defendants, and each of them, and
26  of plaintiff's diagnosis of mesothelioma, asbestosis, pleural plaques and related conditions, plaintiff
27  has been unable to follow his normal or any gainful occupation for certain periods preceding and
28  following his diagnosis, and plaintiff will remain disabled for an indeterminable time.  Plaintiff has

10

1   incurred, and will incur, loss of income, wages, pensions, earning potential, profits and

2   commissions, and other pecuniary losses.  Plaintiff does not know the amount of said past and

3   future losses and therefore requests leave to amend this complaint when that sum is determined.

4        18.    As a further direct and legal result of the negligence of defendants, and each of

5   them, and plaintiff's diagnosis of mesothelioma, asbestosis, pleural plaques and related conditions,

6   plaintiff has been damaged in his health, strength, and activity, and endured and continues to

7   endure unrelenting physical and emotional pain and suffering, emotional distress, mental distress,

8   mental anguish, fear, nervousness, grief, anxiety, worry, humiliation and indignity, the full nature

9   and extent of which are presently unknown to plaintiff and for which plaintiff has incurred general

10  damages in excess of $50,000.00.

11       19.    Since 1924, the defendants, and each of them, knew or should have known of

12  medical and scientific data and other knowledge which clearly indicated that the materials and

13  products referred to herein were and are hazardous to the health and safety of the plaintiff and

14  others in plaintiff's position working in close proximity with such materials.  The defendants, and

15  each of them, knew or should have known of the dangerous propensities of the aforementioned

16  materials and products since before that time.

17       20.    Although defendants knew or should have known of the aforementioned

18  information, defendants, and each of them, negligently, carelessly, and recklessly failed to label

19  any of the aforementioned asbestos-containing materials and products, including those with which

20  and around which plaintiff worked such as thermal insulation materials specified for or on/in

21  boilers, regarding the hazards of such materials and products to the health and safety of plaintiff

22  and others in plaintiff's position working in close proximity with such materials until 1964.

23       21.    Commencing in 1964, many of such asbestos-containing materials were not labeled

24  as hazardous by all of the defendants herein, despite the fact that the knowledge of such hazards

25  existed and that defendants, and each of them, knew or should have known of such hazards since

26  1924. At all times herein mentioned, defendants, and each of them, negligently, carelessly, and

27  recklessly:

28  / / /

11

*Carter v. A.W. Chesterton Company, et al.*                 COMPLAINT FOR DAMAGES (PERSONAL
                                                  INJURY—ASBESTOS)

1    A.  failed to provide information relating to the danger of the use of the

2 aforementioned materials to plaintiff and others in plaintiff's position and the general public

3 concerning the dangerous nature of the aforementioned materials to workers;

4    B.  failed to disseminate such information in a manner which would give general

5 notice to the public and knowledge of the hazardous nature thereof, when defendants were bound to

6 disclose such information;

7    C.  sold the aforementioned products and materials to plaintiff's employer(s)

8 and others without advising such employers and others of dangers of the use of such materials to

9 persons working in close proximity thereto, when defendants knew or should have known of such

10 dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers;

11    D.  negligently, carelessly and recklessly misrepresented to plaintiff, others in

12 plaintiff's position, and plaintiff's employer that it was safe for plaintiff to work in close proximity

13 to such materials, when they knew that this was not the case; and

14    E.  negligently, carelessly and recklessly failed to disclose to plaintiff, others in

15 plaintiff's position, plaintiff's employer, and members of the general public, medical and scientific

16 data and knowledge of the results of studies including, but not limited to, the information and

17 knowledge of the contents of the Lanza report.

18  22.  A.  Defendants, and each of them, knew or should have known of the

19 connection between inhalation of asbestos fibers and lung cancer, asbestosis, pleural plaques, and

20 related conditions which information was disseminated through the Asbestos Textile Institute and

21 other industry organizations to all other defendants, and each of them, herein.

22    B.  At all times mentioned herein, defendants, and each of them, knew or should

23 have known of the connection between inhalation of asbestos fibers and cancer, which information

24 was disseminated through the Asbestos Textile Institute and other industry organizations to all

25 other defendants herein.

26 ///

27 ///

28 ///

12

*Carter v. A.W. Chesterton Company, et al.*      COMPLAINT FOR DAMAGES (PERSONAL
                       INJURY--ASBESTOS)

23.   Defendants, and each of them, negligently, carelessly and recklessly failed to provide the above described medical and scientific data to plaintiff, others in plaintiff's position, plaintiff's employer(s), and members of the general public concerning such knowledge of danger, when defendants were bound to disclose it.

24.   Defendants, and each of them, knew or should have known that said asbestos-containing materials were dangerous when breathed and caused pathological effects without noticeable trauma, and that such material was dangerous and a threat to the health of persons coming into contact therewith. Defendants, and each of them, negligently, carelessly and recklessly did not warn plaintiff, others in plaintiff's position, plaintiff's employer(s) and the general public of their information.

25.   Defendants, and each of them, knew or should have known that adequate protective masks and devices should be used by workers such as plaintiff when applying and installing the asbestos-containing products of the defendants. Defendants, and each of them, knew or should have known that not wearing an adequate protective mask and/or device would result in injury to the plaintiff and others applying and installing such materials. Defendants, and each of them, negligently, carelessly and recklessly do not inform workers such as plaintiff, and others applying and installing such materials of the aforementioned information.

26.   Defendants, and each of them, knew or should have known that plaintiff and anyone similarly situated in an industrial and construction setting would be exposed to defendants' asbestos-containing products, and that, upon inhalation of asbestos such persons would, in time, develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all. Defendants, and each of them, negligently, carelessly and recklessly failed to provide information to the public at large and buyers, users, and physicians employed by plaintiff and plaintiff's employer for the purpose of conducting physical examinations of plaintiff and others working with or near asbestos that exposure to these materials would cause pathological effects without noticeable trauma.

///

///

*Carter v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                               INJURY--ASBESTOS)

27.     The foregoing acts of the defendants, and each of them, and the negligent, careless and reckless conduct of the defendants, and each of them, as described hereinabove, were done recklessly, wantonly, willfully, oppressively, and in conscious disregard of the safety of plaintiff herein, in that

A.      The defendants, and each of them, prior to and at the time of sale, distribution or supply of the aforementioned products to Plaintiff's employer or to others who in turn sold to Plaintiff's employers, and to other persons relevant herein, knew or should have known that the foregoing asbestos fibers released from said products during the foreseeable operations of applying and removing same, were dangerous when inhaled;

B.      Defendants, and each of them, knew or should have known of the hazards and dangers of working with or around asbestos products produced or supplied by defendants, and each of them. The defendants, and each of them, knew or should have known that said products would be used by Plaintiff and others who had no knowledge of the dangerous and hazardous nature thereof; and

C.      Defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said products. Defendants, and each of them, did not place a sufficient warning on the said product or package thereof regarding said dangerous nature. Accordingly, plaintiff is entitled to an award of punitive damages.

WHEREFORE, plaintiffs LUTHER EUEGENE CARTER and SONJA C. CARTER pray judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Strict Products Liability)

28.     Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except Paragraphs 11, 12 and 13.

29.     At all times mentioned herein, defendants, and each of them, during the ordinary course of business, mined, milled, manufactured, imported, supplied, distributed, delivered, packaged, labeled, advertised, sold, marketed, installed, applied and otherwise introduced into the

14

*Carter v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL INJURY—ASBESTOS)

1 stream of commerce asbestos and asbestos-containing products which were defective due to their

2 design, manufacture, sufficiency of or lack of warning, and/or failure to meet ordinary use or

3 consumer expectations of safety when used in an intended or reasonably foreseeable manner.

4      30.    The asbestos and asbestos-containing products were defective when the defendants,

5 and each of them, marketed and introduced them into the stream of commerce. Defendants, and

6 each of them, knew that the aforementioned products would be used without inspection for defects

7 by the user thereof.

8      31.    At all times herein mentioned, plaintiff, plaintiff's employer, and other persons

9 relevant herein, purchased from defendants, and each of them, asbestos and asbestos-containing

10 products.

11      32.    *Defective Design*: The products were defectively designed in that:

12          A.    The products failed to perform as safely as an ordinary consumer would

13 expect in their intended or reasonably foreseeable use or manner of operation, or;

14          B.    The products had inherent risks of danger that outweighed their benefits;

15 alternate and safer substitute products existed and the state-of-the-art required their use given the

16 seriousness of the potential danger, likelihood of its occurrence, feasibility, cost, and adverse

17 consequences to the product and to the consumer of a safer alternative design.

18          C.    *Failure to Warn*: Defendants knew or reasonably should have known of the

19 dangerous propensities of their products but nonetheless distributed and marketed their products

20 with inadequate warning of its dangers.

21          D.    Each of defendants' products reached plaintiff without substantial change in

22 its condition.

23          E.    The aforementioned products were used by plaintiff and those in close

24 proximity to plaintiff in a foreseeable manner and in the manner for which they were intended.

25 Defendants' products were used in a manner reasonably foreseeable by defendants, which

26 defendants intended or knew they would be used, or for which they marketed them or knew they

27 were marketed to be used.

28 ///

15

  F. At all times mentioned herein, plaintiff was unaware of the dangerous nature of the aforementioned products.

  33. The defective design of defendants' products and failure to warn were the proximate causes of plaintiff's injuries.

  34. As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

  35. The aforementioned products were used by plaintiff and those in close proximity to plaintiff in a foreseeable manner and in the manner for which they were intended.

  36. A. Defendants, and each of them, knew that defendants' asbestos-containing products would be used by plaintiff and anyone similarly situated in an industrial and construction setting without inspection for defects.

  B. Defendants, and each of them, knew that such persons would be exposed to defendants' asbestos-containing products.

  C. Defendants, and each of them, knew that, upon inhalation of asbestos from defendant's asbestos-containing products, such persons would, in time, develop irreversible conditions of either mesothelioma, pneumoconiosis, asbestosis or cancer, or all.

  D. At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, defendants, and each of them, knew or should have known of the risks and hazards associated with the use and/or exposure of its products.

  E. At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them, failed to warn or provided inadequate warnings to persons who used or would be exposed to its defective asbestos-containing products, including plaintiff, of the dangers and hazards associated with its products.

/ / /

/ / /

*Carter v. A.W. Chesterton Company, et al.*    COMPLAINT FOR DAMAGES (PERSONAL
                       INJURY--ASBESTOS)

1        F.    At the time defendants, and each of them, placed such asbestos-containing

2   products in to the stream of commerce, and subsequent thereto, defendants, and each of them failed

3   to provide instructions or provided inadequate instructions to persons who used its defective

4   asbestos-containing products, or who would be exposed to said products, including plaintiff, of the

5   dangers and hazards associated with its products.

6        G.    Defendants, and each of them, prior to and at the time of placing the

7   aforementioned products in to the stream of commerce, including but not limited to supplying said

8   products to plaintiff's employer or to others who in turn sold to plaintiff's employers, and to other

9   persons relevant herein, knew that the asbestos which plaintiff and others around him were exposed

10  to was dangerous. The defendants, and each of them, either did not warn or insufficiently warned

11  regarding the dangerous nature of said products, and failed to place a sufficient warning on the said

12  product or package thereof regarding said dangerous nature, despite knowing that said products

13  would be used by plaintiff and others around him who had no knowledge of the dangerous and

14  hazardous nature thereof.

15      37.    The conduct of the defendants, and each of them, was motivated by their financial

16  interests. In this financial pursuit, defendants consciously disregarded the safety of users and

17  persons exposed to their products and were consciously willing to permit their products and

18  premises to injure workers and others, including plaintiff, in order to maximize profits. They

19  consciously disregarded the well-publicized risks of asbestos exposure because to have kept

20  consumers and end users like plaintiff safe would have required said defendants to make less

21  money or limit distribution of their products. The defendants, and each of them, either did not

22  warn or insufficiently warned regarding the dangerous nature of said products, nor placed a

23  sufficient warning on the said product or package thereof regarding said dangerous nature, despite

24  knowing that said products would be used by plaintiff and others around him who had no

25  knowledge of the dangerous and hazardous nature thereof. Defendants' conduct as described

26  herein was and is willful, malicious, outrageous, and in conscious disregard and indifferent to the

27  safety and health of workers and others exposed to asbestos, including plaintiff, and therefore

28  plaintiff is entitled to an award of punitive damages.

17

*Carter v. A.W. Chesterton Company, et al.*          COMPLAINT FOR DAMAGES (PERSONAL
                                                   INJURY--ASBESTOS)

1       WHEREFORE, plaintiffs LUTHER EUGENE CARTER and SONJA C. CARTER pray

2   judgment as hereinafter set forth.

3                   **THIRD CAUSE OF ACTION**

4                   **(Failure to Warn)**

5       38.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

6   fully set forth herein, each and every allegation contained in the General Allegations, the First

7   Cause of Action herein, except Paragraphs 11, 12 and 13, and each and every allegation contained

8   in the Second Cause of Action, except those allegations pertaining to design and manufacturing

9   defect.

10       39.    At all relevant times, the asbestos and asbestos-containing products which were

11   mined, milled, manufactured, tested, developed, processed, imported, converted, compounded

12   assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed,

13   delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by

14   defendants, and each of them, were defective as a result of defendants' failure to warn or give

15   adequate warning that the particular risk of developing an asbestos-related disease and risk of death

16   from an asbestos-related disease resulting from exposure to asbestos rendered the product unsafe

17   for its intended or reasonably foreseeable use.

18       40.    At all relevant times, the defendants, and each of them, had specific knowledge of

19   these risks or could have known of these risks by the application of scientific knowledge available

20   at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying,

21   approving, inspecting, applying and installing the asbestos and asbestos-containing products.

22       41.    As a direct and legal result of the conduct of the defendants, and each of them,

23   plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis,

24   pleural plaques, and related conditions and disabilities as previously set forth, and has incurred

25   damages in excess of $50,000.00 in addition to the special damages alleged herein.

26       WHEREFORE, plaintiffs LUTHER EUGENE CARTER and SONJA C. CARTER pray

27   judgment as hereinafter set forth.

28   / / /

*Carter v. A.W. Chesterton Company, et al.*                    COMPLAINT FOR DAMAGES (PERSONAL
                                                               INJURY--ASBESTOS)

## FOURTH CAUSE OF ACTION

### (Breach of Warranties)

42.     AS AND FOR A FOURTH CAUSE OF ACTION, plaintiffs complain of defendants, and each of them, and allege:

43.     Plaintiffs, by this reference, hereby incorporate and makes a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations, and the First Cause of Action herein, except Paragraphs 11, 12 and 13.

44.     The defendants, and each of them, sold, supplied, delivered or otherwise distributed to plaintiff, or to another purchaser or user who subsequently sold, supplied, delivered or otherwise distributed to plaintiff, or to others working in close proximity to plaintiff, the above-described asbestos and asbestos-containing products to which plaintiff was exposed.

45.     The defendants, and each of them, knew the intended purpose of the asbestos and asbestos-containing products prior to marketing said products and knew or should have known that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing these products.

46.     The defendants, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose.

47.     Defendants, and each of them, impliedly warranted that their products were of merchantable quality and safe, fit and proper for the uses which defendants knew or intended were to be made of them at the time of selling them.

48.     Plaintiff reasonably relied on the skill, knowledge and judgment of defendants, and each of them, in plaintiff's use of the products as a basis of the bargain under which such products were bought and used.

///

///

///

19

1      49.    The products were neither safe for their intended use nor of merchantable quality or

2 fit for use as warranted by defendants, and each of them, in that said products had dangerous

3 propensities when put to the use for which each of these defendants knew or intended they were

4 marketed or sold and would cause severe injury to users or bystanders, such as plaintiff.

5      50.    The defendants, and each of them, breached the implied warranties of

6 merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing

7 products without a warning, or with an inadequate warning, advising plaintiff and others working

8 in close proximity to plaintiff that dangerous levels of asbestos fiber would be released during the

9 process of applying, installing and removing said products.

10      51.    As a direct and legal result of the conduct of the defendants, and each of them,

11 plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis,

12 pleural plaques, and related conditions and disabilities as previously set forth, and has incurred

13 damages in excess of $50,000.00 in addition to the special damages alleged herein.

14      WHEREFORE, plaintiffs LUTHER EUGENE CARTER and SONJA C. CARTER pray

15 judgment as is hereinafter set forth.

16                    **FIFTH CAUSE OF ACTION**

17                    **(Fraud and Conspiracy)**

18      52.    AS AND FOR A FIFTH CAUSE OF ACTION, plaintiffs complain of the

19 defendants, and each of them, and allege:

20      53.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

21 fully set forth herein, each and every allegation contained in the General Allegations and the First

22 Cause of Action herein, except allegations pertaining to negligence.

23      54.    Pursuant to Section 1708 of the Civil Code of California, the defendants, and each

24 of them, owed a duty to plaintiff at all times relevant herein to abstain from injuring the plaintiff or

25 infringing upon any of his rights.

26      55.    The defendants, and each of them, breached the duty they owed to plaintiff pursuant

27 to Section 1708 of the Civil Code of California by willfully deceiving plaintiff with the intent to

28 induce plaintiff to alter plaintiff's position to plaintiff's injury or risk. The defendants, and each of

*Carter v. A.W. Chesterton Company, et al.*               COMPLAINT FOR DAMAGES (PERSONAL
                                                           INJURY—ASBESTOS)

1  | them, deceived the plaintiff and committed actionable fraud pursuant to Section 1709 and

2  | Section 1710 of the Civil Code of California.

3  |     56.   The defendants, and each of them, as more fully set forth below, suggested as fact

4  | that which was not true and that which defendants, and each of them, did not believe was true.

5  |     57.   The defendants, and each of them, as more fully set forth below, asserted as fact that

6  | which was not true and that which defendants, and each of them, had no reasonable grounds for

7  | believing was true.

8  |     58.   The defendants, and each of them, as more fully set forth below, suppressed facts

9  | which they were obligated to disclose and gave information of other facts which were likely to

10 | mislead for want of communication of the undisclosed facts.

11 |     59.   The defendants, and each of them, made promises without any intention of keeping

12 | those promises.

13 |     60.   Since 1924, the defendants, and each of them, have known and have possessed the

14 | true facts of medical and scientific data and other knowledge which clearly indicated that the

15 | materials and products referred to herein were and are hazardous to the health and safety of the

16 | plaintiff and others in plaintiff's position working in close proximity with such materials.  The

17 | defendants, and each of them, have known of the dangerous propensities of the aforementioned

18 | materials and products since before that time, and with intent to deceive plaintiff and others in his

19 | position, and with intent that he and such others should be and remain ignorant of such facts, and

20 | with intent to induce plaintiff and such others to alter his and their positions to his and their injury

21 | and/or risk and in order to gain advantages did do the following acts:

22 |     A.   Defendants, and each of them, did not label any of the aforementioned

23 | asbestos-containing materials and products regarding the hazards of such materials and products to

24 | the health and safety of plaintiff and others in plaintiff's position working in close proximity with

25 | such materials until 1964, when certain of such materials were labeled by some, but not all, of the

26 | defendants herein, despite the fact that the knowledge of such hazards existed and was known to

27 | defendants, and each of them, since 1924. By not labeling such materials as to their said hazards,

28 | defendants, and each of them, caused to be suggested as a fact to plaintiff and plaintiff's employer

*Carter v. A.W. Chesterton Company, et al.*                  COMPLAINT FOR DAMAGES (PERSONAL
                                                              INJURY--ASBESTOS)

1   that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true

2   and defendants did not believe it to be true.

3      B. Defendants, and each of them, suppressed information relating to the danger

4   of the use of the aforementioned materials by requesting the suppression of information to the

5   plaintiff and the general public concerning the dangerous nature of the aforementioned materials to

6   workers and by not allowing such information to be disseminated in a manner which would give

7   general notice to the public and knowledge of the hazardous nature thereof, when defendants were

8   bound to disclose such information.

9      C. Defendants, and each of them, sold the aforementioned products and

10   materials to plaintiff's employer and others without advising such employers and others of dangers

11   of the use of such materials to persons working in close proximity thereto, when defendants knew

12   of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers.

13   Thereby, defendants caused to be positively asserted to plaintiff's employer that which was not true

14   and which defendants had no reasonable ground for believing to be true and in a manner not

15   warranted by the information possessed by said defendants, and each of them, to wit, that it was

16   safe for plaintiff to work in close proximity to such materials.

17      D. Defendants, and each of them, suppressed and continue to suppress from

18   everyone, including plaintiff and plaintiff's employer, medical and scientific data and knowledge of

19   the results of studies including, but not limited to, the information and knowledge of the contents of

20   the Lanza report. Although bound to disclose it, defendants, and each of them, influenced

21   A. J. Lanza to change his report, the altered version of which was published in Public Health

22   Volume at page I in 1935, thereby causing plaintiff to be and remain ignorant thereof. Defendants,

23   and each of them, caused *Asbestos Magazine*, a widely disseminated trade journal, to omit mention

24   of danger, thereby lessening the probability of notice of danger to the users thereof.

25      E. Defendants, and each of them, belonged to, participated in, and financially

26   supported the Asbestos Textile Institute and other industry organizations which, and on behalf of

27   defendants, and each of them, actively promoted the suppression of information of danger to users

28   of the aforementioned products and materials, thereby misleading plaintiff and plaintiff's employer

22

1   by the suggestions and deceptions set forth above in this cause of action. The Dust Control

2   Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile

3   Institute, was specifically enjoined to study the subject of dust control. Discussions in this

4   committee were held many times regarding the dangers inherent in asbestos and the dangers which

5   arise from the lack of control of dust and the suppression of such information from 1946 to a date

6   unknown to plaintiff at this time.

7          F.      Commencing in 1930 with the study of mine and mill workers at Asbestos

8   and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos- Manhattan plants

9   in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific

10  information of the connection between inhalation of asbestos fibers and mesothelioma, asbestosis,

11  pleural plaques, and related conditions, which information was disseminated through the Asbestos

12  Textile Institute and other industry organizations to all other defendants, and each of them, herein.

13  Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific

14  information of the connection between inhalation of asbestos fibers and cancer, which information

15  was disseminated through the Asbestos Textile Institute and other industry organizations to all

16  other defendants herein. Thereby, defendants suggested as a fact that which is not true and

17  disseminated other facts likely to mislead plaintiff and plaintiff's employer and which did mislead

18  them by withholding afore-described medical and scientific data and by not giving plaintiff or

19  plaintiff's employer the true facts concerning such knowledge of danger when defendants were

20  bound to disclose it.

21          G.      Defendants, and each of them, failed to warn plaintiff and plaintiff's

22  employer that said materials were dangerous when breathed and caused pathological effects

23  without noticeable trauma, despite the fact that defendants possessed knowledge and were under a

24  duty to disclose that such material was dangerous and a threat to the health of persons coming into

25  contact therewith.

26          H.      Defendants, and each of them, failed to provide plaintiff with information

27  concerning adequate protective masks and devices to be used when applying and installing the

28  products of the defendants, and each of them, despite the knowledge of defendants and a duty to

23

1  disclose that such protective measures were necessary and would result in injury to the plaintiff and

2  others applying and installing such materials if not so advised.

3         I.  Defendants, and each of them, concealed from plaintiff the true nature of the

4  industrial and construction exposure of plaintiff and knew that plaintiff and anyone similarly

5  situated, upon inhalation of asbestos, would in time develop irreversible conditions of either

6  pneumoconiosis, asbestosis or cancer, or all, and that the materials to which he was exposed would

7  cause pathological effects without noticeable trauma despite the fact that defendants were under a

8  duty to and bound to disclose it; and

9         J.  Defendants, and each of them, failed to provide information to the public at

10  large and buyers, users, and physicians employed by plaintiff and plaintiff's employer for the

11  purpose of conducting physical examinations of plaintiff and others working with or near asbestos

12  of the true nature of the hazards of asbestos and that exposure to these materials would cause

13  pathological effects without noticeable trauma to the public, including buyers, users, and

14  physicians employed by plaintiff and plaintiff's employer so that said physicians could examine,

15  diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that

16  defendants, and each of them, were under a duty to so inform and said failure was misleading.

17      61.  Defendants, and each of them, having the aforementioned knowledge of facts and

18  knowing that the plaintiff did not possess such knowledge, acted falsely and fraudulently and with

19  full intent to cause plaintiff to remain unaware of those facts and to induce plaintiff to work with

20  and around unsafe products in a dangerous environment, all in violation of Section 1710 of the

21  Civil Code of the State of California.

22      62.  At all times mentioned, the defendants, and each of them, knowingly and willfully

23  conspired and agreed among themselves to perpetrate upon plaintiff the unlawful acts complained

24  of in Paragraphs 19 through 27 of the First Cause of Action and Paragraphs 54 through 61 of the

25  Fifth Cause of Action herein.

26      63.  The defendants, and each of them, and at least one of them, did the acts herein

27  alleged in Paragraph 60 through 62 of this Fifth Cause of Action in furtherance of the conspiracy

28  and agreement as herein alleged and also acted in furtherance of a conspiracy and agreement

*Carter v. A.W. Chesterton Company, et al.*        COMPLAINT FOR DAMAGES (PERSONAL INJURY—ASBESTOS)

1  between and among the defendants, and each of them, to violate State and Federal laws and

2  regulations, the exact nature and extent of which are unknown at this time but known full well to

3  defendants, and each of them. These actions were done maliciously, wantonly, and in reckless

4  disregard for the health and safety of others, including plaintiff herein.

5        64.    Plaintiff reasonably relied upon the misrepresentations of the defendants, and each

6  of them, and in reliance on same continued to work with and around asbestos and asbestos-

7  containing products. Plaintiff would have taken steps to protect his health and life had he known

8  the facts, which were known to the defendants, and each of them, about exposure to asbestos and

9  asbestos-containing products. Plaintiff would not have knowingly continued to work in an unsafe

10  environment. He had no knowledge of the foregoing facts and actions of the defendants, and each

11  of them, at the time when they were committed and cannot be charged with knowledge or inquiry

12  thereof.

13        65.    As a direct and legal result of the conduct of the defendants, and each of them,

14  plaintiff developed an asbestos-related disease known and designated as mesothelioma, asbestosis,

15  pleural plaques, and related conditions and disabilities as previously set forth and has incurred

16  damages in excess of $50,000.00 in addition to the special damages alleged.

17        WHEREFORE, plaintiffs LUTHER EUGENE CARTER and SONJA C. CARTER pray

18  judgment as is hereinafter set forth.

19                               **SIXTH CAUSE OF ACTION**

20                **(False Representation Under Restatement Torts Section 402-B)**

21        66.    AS AND FOR A SIXTH CAUSE OF ACTION, plaintiffs complain of the

22  defendants, and each of them, and allege:

23        67.    Plaintiffs incorporate by reference as though fully set forth herein, each and every

24  allegation of the General Allegations, and First, Second, Third, Fourth and Fifth Causes of Actions

25  herein.

26        68.    At the aforementioned time when defendants, and each of them, researched,

27  manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed,

28  advertised, marketed, warranted, inspected, repaired, offered for sale and sold the said asbestos and

*Carter v. A.W. Chesterton Company, et al.*                               *COMPLAINT FOR DAMAGES (PERSONAL
INJURY--ASBESTOS)

asbestos-containing products as hereinabove set forth, the defendants, and each of them, expressly

and impliedly represented to members of the general public, including the purchasers and users of

said product, and including plaintiff herein and his employers, that asbestos and asbestos-

containing products were of merchantable quality and safe for the use for which they were

intended.

69.    The purchasers and users of said asbestos and asbestos-containing products,

including plaintiff and his employers, relied upon said representations of defendants, and each of

them, in the selection, purchase and use of asbestos and asbestos-containing products.

70.    Said representations by defendants, and each of them, were false and untrue in that

the asbestos and asbestos-containing products were not safe for their intended use, nor were they of

merchantable quality as represented by defendants, and each of them, in that asbestos and asbestos

containing products have very dangerous properties and defects whereby said products cause lung

cancer, mesothelioma, asbestosis, pleural plaques, and other diseases and have other defects that

cause injury and damage to the users of said products, including the plaintiff herein, thereby

threatening the health and life of plaintiff.

71.    As a direct and legal result of the conduct of the defendants, and each them plaintiff

developed an asbestos-related disease known and designated as mesothelioma, asbestosis, pleural

plaques, and related conditions and disabilities as previously set forth, and has incurred damages in

excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiffs LUTHER EUGENE CARTER and SONJA C. CARTER pray

judgment as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

#### (Loss of Consortium)

72.    AS AND FOR AN SEVENTH CAUSE of action, plaintiff, SONJA C. CARTER

complains of defendants, and each of them, as follows:

73.    Plaintiff, by this reference, hereby incorporates and makes a part thereof, as though

fully set forth herein, each and every allegation contained in the General Allegations and each of

the foregoing Causes of Action herein.

26

74.   At the time that plaintiff sustained injury as more fully alleged in the First through Sixth Causes of Action, and at all times thereafter, plaintiff SONJA C. CARTER was the spouse of plaintiff LUTHER EUGENE CARTER.

75.   Prior to said injuries, plaintiff was able to and did perform his duties as the spouse of SONJA C. CARTER. Plaintiff is informed and believes and thereon alleges that subsequent to said injuries and as a proximate result thereof, plaintiff has been, and at some time in the future will be, incapacitated and unable to perform the necessary duties as spouse of plaintiff and the work and service usually performed in the care, maintenance, and management of the family home.

76.   As a proximate result of said injuries, plaintiff has been and will be deprived of consortium with plaintiff LUTHER EUGENE CARTER, including the performance of his spouse's duties, and plaintiff SONJA C. CARTER has and will be required to perform the duties previously performed by his spouse SONJA C. CARTER, all to plaintiff's damage in a sum which cannot be ascertained at this time. Plaintiff requests the right to amend this complaint to allege the amount of said damages when they are ascertained.

WHEREFORE, plaintiffs LUTHER EUGENE CARTER and SONJA C. CARTER pray judgment as follows:

**First, Second, and Fifth Causes of Action**

1.   General damages in an amount in excess of $50,000.00 in accordance with proof;

2.   Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3.   Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with proof;

4.   Special damages in accordance with the proof;

5.   Prejudgment interest and post-judgment interest in accordance with law;

6.   Costs of suit; and,

7.   Such and other and further relief as the Court deems just and proper.

///

///

27

1    **Third, Fourth, and Sixth Causes of Action**

2        1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

3        2.    Special damages in accordance with the proof;

4        3.    Prejudgment interest and post-judgment interest in accordance with law;

5        4.    Costs of suit; and,

6        5.    Such and other and further relief as the Court deems just and proper.

7    WHEREFORE, plaintiff SONJA C. CARTER prays judgment as follows:

8    **Seventh Cause of Action**

9        1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

10       2.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

11             accordance with proof;

12       3.    Punitive and exemplary damages in an amount found appropriate by the trier of fact

13             in accordance with proof;

14       4.    Special damages in accordance with the proof;

15       5.    Prejudgment interest and post-judgment interest in accordance with law;

16       6.    Costs of suit; and,

17       7.    Such and other and further relief as the Court deems just and proper.

18

19   DATED: November 4, 2010                    BRENT COON & ASSOCIATES

20

21

22                                             By:

23                                             RICHARD A. BRODY, ESQ.
                                               PAULA A. RASMUSSEN, ESQ.
24                                             Attorneys for Plaintiffs

25

26

27

28

                                          28

*Carter v. A.W. Chesterton Company, et al.*              COMPLAINT FOR DAMAGES (PERSONAL
                                                              INJURY—ASBESTOS)

COPY

1 | Richard A. Brody, Esq. (SBN 100379)
Paula A. Rasmussen, Esq. (SBN 258352)
2 | BRENT COON & ASSOCIATES
44 Montgomery Street, Suite 800
3 | San Francisco, CA 94104
Telephone: 415.489.7420
4 | Facsimile:  415.489.7426

5 | J. Dennis Weitzel, Esquire (seeking Pro Hoc Admission)
Texas State Bar No. 21118200
6 | Morgan & Morgan, PA
20 N. Orange Avenue
7 | Suite 1600
Orlando, FL 32802
8 | Telephone: 407.420.1414
Facsimile: 407.422.8925
9 |

10 | Attorneys for Plaintiffs

11 |

**ENDORSED**
**FILED**
San Francisco County Superior Court

NOV − 4 2010

CLERK OF THE COURT
BY: _____PARAM NATT_____
Deputy Clerk

12 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

13 | IN AND FOR THE COUNTY OF SAN FRANCISCO

14 |

15 | LUTHER EUGENE CARTER and
SONJA C. CARTER,
16 |
17 |          Plaintiffs,
18 | v.
19 | A.W. CHESTERTON COMPANY, et al.,
20 |          Defendants.
21 |

Case No. C G C - 1 0 - 2 7 5 6 9 5

**PRELIMINARY FACT SHEET**
**NEW FILING**
**ASBESTOS LITIGATION**
(General Order No. 129)

22 |                              **NOTICE**

23 |

24 |     **TO NEW DEFENDANTS SERVED IN THE ABOVE-CAPTIONED CASE SUBJECT
TO THE GENERAL ORDERS OF COMPLEX ASBESTOS LITIGATION IN THE
25 | ABOVE-CAPTIONED COURT:**

26 |     You have been served with process in an action which has been designated by the Court as

27 | complex litigation pursuant to Standard 19 of the Standards of Judicial Administration. This

28 | litigation bears the caption "In Re: Complex Asbestos Litigation" and the Court No. 828684.

---

1

*Carter v. A.W. Chesterton Company, et al.*                           PRELIMINARY FACT SHEET

This litigation is governed by various general orders, some of which affect the judicial management and/or discovery obligations, including your responsibility to answer interrogatories deemed propounded in this case.  You may download this Court's General Orders from the internet, or contact the Court or Designated Defense Counsel, Berry & Berry, Post Office Box 16070, Oakland, CA 94612; telephone (510) 250-0200; Facsimile (510) 835-5117, for further information and/or for copies of these orders, at your expense.

I.      State the complete name and address of each person whose claimed exposure to asbestos is the basis of this lawsuit ("exposed person"):   Luther Eugene Carter, 4788 Pond Apple Drive N., Naples, Florida  34119

II.     Does plaintiff anticipate filing a motion for preferential trial date within the next four months?   _X_ Yes              _____ No

III.    Date of birth of each exposed person in item one and, if applicable, date of death:
        Date of Birth:  6/8/1929 Date of f Death: N/A

        Social Security Number of each exposed person:
        XXX-XX-4740

IV.     Specify the nature of type of asbestos-related disease alleged by each exposed person:
        _____ Asbestosis                              _X_ Mesothelioma

        _____ Pleural Thickening/Plaques              _____ Other Cancer: Specify:

        _____ Lung Cancer Other Than Mesothelioma     _____ Other: Specify

V.      For purposes of identifying the nature of exposure allegations involved in this action, please check one or more:

        _X_ Shipyard       _____ Construction         _____ Friction/Automotive

        _____ *Premises*   _____ *Aerospace*          _X_ Military

        _____ Other: Specify all that apply:

        If applicable, indicate which exposure allegations apply to which exposed person.

2

*Carter v. A.W. Chesterton Company, et al.*                          PRELIMINARY FACT SHEET

1
2
3
4
5
6

**VI.**     Identify each location alleged to be a source of an asbestos exposure, and to the extent known, provide the beginning and ending year(s) of each such exposure. Also specify each exposed person's employer and job title or job description during each period of exposure. (For example, "San Francisco Naval Shipyard Pipefitter 1939-1948"). Examples of locations of exposure might be a specific shipyard, a specific railroad maintenance yard, or perhaps more generalized descriptions such as "merchant marine" or "construction". If an exposed person's claims exposure during only a portion of a year, the answer should indicate that year as the beginning and ending year (e.g., 1947-1947).

7
8
9

Decedent was exposed to asbestos as listed below:

| Trade | Employer | Site | Years |
|-------|----------|------|-------|
| Naval Officer | US Navy | Mare Island Naval Base Vallejo, CA | 1952 |

10
11
12
13
14     DATED:  November 4, 2010              BRENT COON & ASSOCIATES
15
16
17                                          By:
18                                              RICHARD A. BRODY, ESQ.
                                                PAULA A. RASMUSSEN
19                                              Attorneys for Plaintiffs
20
21
22
23
24
25
26
27
28

*Carter v. A.W. Chesterton Company, et al.*                    PRELIMINARY FACT SHEET