# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## MDL No. 875 – In re Asbestos Products Liability Litigation (No. VI)

| | | |
|---|---|---|
| WILLIAM ANDREW SMITH., | ) | Previous Civil Action No.: |
| | ) | 3:11-01073 |
| | ) | |
| Plaintiff, | ) | Current Civil Action No.: |
| | ) | 4:11-cv-01073-CW |
| | ) | |
| | ) | in the U. S. District Court, |
| v. | ) | Northern District of California |
| | ) | |
| 3M COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER

### I.   INTRODUCTION

Plaintiff William Andrew Smith, by and through his undersigned counsel, hereby moves this Judicial Panel on Multidistrict Litigation to vacate the Conditional Transfer Order (CTO-373) entered in the above-captioned action.

Transfer of this action to the consolidated federal asbestos multidistrict litigation proceedings in the Eastern District of Pennsylvania known as MDL-875—whether prior to, or after, a ruling on plaintiff's remand motion that is now pending in the local California District Court—would be inappropriate and improper. This action does not belong in federal court at all, much less federal multidistrict proceedings. And, in any event, none of the policy objectives of 28 U.S.C. § 1407 would be advanced by the transfer of this action. Quite to the contrary, such transfer would serve only to frustrate

the objectives Section 1407 was intended to promote and secure and, furthermore, deprive plaintiff of his right to due process.

## II.   PROCEDURAL BACKGROUND [1]

A.        **State Court Proceedings**

On October 29, 2010, plaintiff William Andrew Smith filed an asbestos-related personal injury action pursuing remedies under California state tort law against numerous defendants in Alameda County Superior Court.  (*William Andrew Smith v. 3M Company, et al.*, Alameda County Superior Court, Case No. RG10544220.)  Plaintiff, in said action, alleges each defendant is liable for injuries and damages arising out of his exposure to asbestos as a result of the defendants' conduct or products.

Mr. Smith, 77 years old, filed this action just over a month after being diagnosed with malignant mesothelioma, an incurable and terminal form of cancer caused by asbestos inhalation which is now killing him.

Based upon Mr. Smith's poor prognosis and failing health, plaintiff's counsel moved for trial preference shortly after filing the Complaint; the Superior Court subsequently granted that motion, setting a trial date of May 9, 2011.

In the four months prior to when this action was removed to federal court, the parties completed a significant amount of written discovery, one co-worker deposition,

---

[1]  Pursuant to FED. R. EVID. 201, plaintiff respectfully requests that this Panel take judicial notice of the substantive content and filing dates of the pleadings, motions and Orders referenced in this section of plaintiff's Brief, the entirety of which are currently on file and in the records of the United States District Court for the Northern District of California, Oakland Division, and as such, are facts not subject to reasonable dispute in that they are capable of accurate and ready determination by resort to a source whose accuracy cannot reasonably be questioned.  Plaintiff will provide this Panel with copies of those documents upon request.

and the deposition of Mr. Smith—a tedious and lengthy process which proved

particularly arduous on Mr. Smith whose physical health had by then greatly

deteriorated—for which he ultimately provided some 40 hours of testimony over a two-

week span of time.

**B.      U.S. District Court Proceedings and the J.P.M.D.L.**

On March 8, 2011, just two months before was set to commence, and without

giving plaintiff's counsel the courtesy of any forewarning, defendant National Steel and

Shipbuilding Company ("NASSCO") filed a Notice of Removal and removed this action

to the United States District Court for the Northern District of California,[2] ostensibly

pursuant to 28 U.S.C. § 1442(a)(1).  In its removal petition, NASSCO contends that the

federal courts have original subject matter jurisdiction over this action because NASSCO,

in undertaking the acts allegedly giving rise to plaintiff's injuries, and thus, giving rise to

its alleged liability, was acting under the direction of a federal officer.  NASSCO argues

that it can therefore assert a government contractor defense to plaintiff's claims.

The next day, on March 9th, NASSCO notified this Panel of the *Smith* case as a

potential "tag-along" action involving common questions of fact with asbestos-related

actions previously transferred to MDL-875 for consolidated pretrial proceedings.

Twenty-four hours later, on March 10th, this Panel entered CTO-373, an Order

conditionally transferring *Smith* to MDL-875.  Plaintiff filed a Notice of Opposition to

CTO-373 with this Panel on March 15th.

On March 16th, plaintiff filed and served a Motion to Remand this action to

California Superior Court, contending that NASSCO did not, and in fact could not, meet

---

[2] Hereinafter referred to as the "the local District Court."

its burden of establishing the propriety of removal under the federal officer statute, that

NASSCO had no "federal colorable defense" to plaintiff's claims, that federal subject

matter jurisdiction over this action therefore did *not* exist, and that *immediate* remand of

this action to state court was not only warranted, but was in fact imperative if plaintiff's

case was to be spared the substantial prejudice which, given Mr. Smith's deteriorating

health and poor prognosis, even a short delay in the litigation would likely cause.

Plaintiff, on that same date, also filed a motion asking that the District Court set

plaintiff's remand motion on shortened time on account of Mr. Smith's worsening

health.[3]  Shortly thereafter, on March 21st, the Honorable Claudia Wilken, District Court

Judge, granted plaintiff's request in part, ordering the following expedited schedule:

a.      NASSCO's opposition to plaintiff's Motion to Remand, if any, must be
        filed and served, by hand or electronically, by 3:00 p.m. on March 31,
        2011;

b.      Plaintiff's reply, if any, must be filed and served, by hand or
        electronically, by 5:00 p.m. on April 4, 2011; and

c.      The motion will be decided on the papers.

Said expedited schedule means that the District Court will be fully briefed on

plaintiff's remand motion by April 4, 2011 and that a ruling thereon, in all likelihood,

issued soon thereafter.

### III.   ARGUMENT

---

[3]  Plaintiff here notes that on March 17th, defendant General Electric Company ("GE")
filed a Motion to Stay the proceedings of this action pending a decision by this Panel.
Defendants NASSCO and Atlantic Richfield Company subsequently joined in GE's
motion, which is set to be heard on April 21, 2011.  While plaintiff anticipates that GE's
motion will be rendered moot by the District Court's impending ruling on his remand
motion, plaintiff, in the interim, intends to timely file an opposition to GE's motion,
which is without merit and should be denied on multiple grounds.

For the reasons and on the grounds set forth hereafter, plaintiff submits that an Order vacating CTO-373 is warranted from this Panel.

### A.      Transfer of *Smith* Would Be Contrary to the Policy Objectives of 28 U.S.C. § 1407

Civil actions pending in different districts and involving one or more common questions of fact *may* be transferred by the Judicial Panel on Multidistrict Litigation to any district court for coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407(a). The federal multidistrict litigation statute, more specifically, provides that such actions may be transferred by the Panel "upon its determination that transfers for such proceedings will be for the **convenience of parties and witnesses and will promote the just and efficient conduct of such actions**." 28 U.S.C. § 1407(a)(emphasis added).

The **underlying objective of Section 1407** is "to secure, in multi-district civil litigation as in all other civil litigation, the '**just, speedy and inexpensive determination of every action**.'" *In re Nat'l Student Mktg. Litig.,* 368 F.Supp. 1311, 1316 (J.P.M.L. 1973)(citing to FED. R. CIV. P. 1)(emphasis added). Accordingly, "[t]he Panel's statutory mandate is to weigh the interests of all parties … in light of the purposes of Section 1407." *In re Stirling Homex Corp. Sec. Litig.,* 442 F. Supp. 547, 550 (J.P.M.L. 1977). While the Panel has broad discretion to carry out its functions, it abuses its discretion if it acts in a manner that *frustrates* the objectives of Section 1407.

*The transfer of Smith to MDL-875 would thwart rather than serve the policy objectives and statutory goals of Section 1407.* Instead of promoting the just, speedy, efficient, and inexpensive determination of this action, the delay, potentially excessive delay, attendant with said transfer—to the severe prejudice of plaintiff's case—would do

just the opposite: secure the unjust, prolonged, unnecessarily costly and inefficient determination of this action.

Mr. Smith is not expected to live beyond June of this year. (See, Exhibit "A" to the accompanying Declaration of Mark A. Swanson.) If transferred to MDL-875, *Smith* is sure to encounter well-documented delays that are both significant and unpredictable. Such delays, in turn, will cause severe prejudice to plaintiff's case, i.e., Mr. Smith, to the nearest of certainties, will die long before his case is transferred back to the local California District Court for trial. And, when Mr. Smith dies, so will his right to recover noneconomic damages. Succinctly put, if transferred to MDL-875, this case will not get to trial before Mr. Smith dies—a common and predictable consequence that defendants in asbestos litigation often exploit. Thus, transfer to MDL-875 would secure, if not ensure, the unjust determination of this action.

Although even a short delay in the proceedings of this litigation could significantly reduce Mr. Smith's chances of living long enough to see his case go to trial, a *short* delay, in any event, is hardly what can be expected if this Panel transfers this action. Thus, in addition to ensuring an unjust determination of this action, transfer to MDL-875 would promote neither the speedy nor efficient conduct of this action. Transfer would in fact serve to very much frustrate those particular objectives of Section 1407—if transferred, this action would proceed at a far slower pace, thereby prolonging its determination by many months if not years, than if it were to proceed in the California courts. For that reason, and because transfer would compel plaintiff to spend additional money, time, and resources in order to participate in distant and unfamiliar court

procedures, transfer would also promote the inefficient, rather than the efficient, and the costly, rather than inexpensive, determination of this action.

Specifically as to the delay transfer will cause this litigation, plaintiff's counsel estimates that if transferred, this case would not be returned to the local District Court until at least 14 months from now.  To be sure, Mr. Smith does not have 14 months to spare.  Mr. Smith has maybe 3 months to live.  The estimated 14-month return time is by no means exaggerated and is in all likelihood quite conservative.  First, this Panel would be unlikely to transfer this action prior to its July 28th hearing session—*four months* from now.[4]  And second, upon transfer, unnecessary delays would be sure to ensue.  MDL-875 currently handles a docket of over 15,000 cases (consisting of far more claims) related to personal injuries allegedly caused by asbestos products, all of which are handled by a single judge.  (See, Exhibit "B" to the Swanson Decl..)  It is this backlog of cases, along with its governing procedural rules, that are to blame for the delays attendant with transfer to MDL-875 as well as its notoriously slow pace.

By way of example – standard procedure upon official transfer to MDL-875 is actually for absolutely nothing to occur for *four months*, other than the filing of administrative submissions, at which point the Court sets an initial pretrial conference usually one month out.  During those four months, the transferred action simply sits idle, somewhat at the Court's mercy, without any mechanism through which to expedite matters.  And, while the Court's scheduling order typically requires discovery to be

---

[4] In light of the briefing schedule set for the instant motion, this Panel's bi-monthly hearing session schedule (i.e., one hearing session held every other month), and the applicable notice requirements pertaining thereto, the earliest this Panel could realistically order the transfer of this action would be at its July 28, 2011 hearing session.

completed within 90 days, that deadline is often modified due to delays caused by the backlog of its docket.

Pretrial motions (excepting summary judgment) are also likely to result in unpredictably lengthy delays. There exists neither a schedule nor any provision in the rules governing MDL-875 that allow a party to obtain specific date to have its motion heard and ruled upon by the court. Thus, delay in the resolution of issues submitted to the MDL court for its determination and resolution via pretrial motion, whether pertaining to discovery matters or otherwise, is unavoidable and protracted. Hearing dates are set by Court Order only, which means that while pretrial motions may be ruled upon at any time, that "time" more often than that proves to be at some distant point in the future. Particularly frustrating is that litigants have no means through which to obtain an expedited ruling or even a ruling by a date certain or within a reasonable, predictable amount of time. This procedural practice has caused countless extensive delays in transferred actions—**in fact, just last year, Judge Robreno, the presiding Judge of MDL-875, issued a ruling denying a party's motion to remand an action that had been awaiting determination for 15 years.** (See, Exhibit "C" to the Swanson Decl.)

Federal courts have noted that "if these [asbestos-related] claims return to state court, they will proceed to resolution. If they remain in federal court, they will encounter significant delay upon their transfer through the Panel on Multidistrict Litigation to the Eastern District of Pennsylvania. … This delay [in MDL-875] is of economic benefit to the defendants and imposes costs on the plaintiffs." *Alexander v. A.P. Green Indus., Inc. (In re Maine Asbestos Cases),* 44 F. Supp. 2d 368, 374 n.2 (D.Me. 1999); *see also Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 190 (D. Mass. 2008)(noting that if

removal was upheld and the case was transferred to MDL-875, "the matter will likely be substantially delayed").

If this action is spared transfer, and instead allowed to proceed in the local District Court, plaintiff would have at least the possibility of seeking an expedited discovery schedule and early trial date based on Mr. Smith's poor prognosis.   Even without such an expedited schedule, discovery would resume far sooner than it would under the inflexible rules and slow-paced proceedings of MDL-875.[5]  In addition, rulings on pretrial motions would be timely issued.  Plaintiff would certainly be able to obtain an earlier trial date than he would if this case is transferred, hopefully one soon enough so that Mr. Smith has a fighting chance to survive until. If transferred, Mr. Smith would have no such chance.

In light of the above, plaintiff submits that transfer of *Smith* would frustrate rather than advance the policy objectives of 28 U.S.C. § 1407.  The statutory mandate of this Panel—**to weigh the interests of all parties "in light of the purposes of Section 1407"**—clearly warrants an Order vacating CTO-373.   See, *Stirling Homex Corp. Sec. Litig.*, supra, 442 F. Supp. at 550. Given that the transfer of this action would deny Mr. Smith the opportunity to take his claims to trial, deny Mr. Smith of his right to recover noneconomic rights, delay and slow the proceedings of this litigation to a near halt—all to the severe prejudice of plaintiff's case—and cause plaintiff additional expense and inconvenience, transfer would ensure the unjust determination of this action as well as

---

[5]  If transferred, discovery is unlikely to resume for at least eight months (four months will likely transpire before the official transfer of this action and then an additional four months will likely transpire before an initial scheduling conference that includes this action is held in MDL-875).  If spared transfer, the procedural rules of the local District Rules will allow for discovery to resume far sooner, i.e., within four months time.

promote and secure the prolonged, inefficient, and unnecessarily expensive conduct of the same.

Plaintiff's counsel cannot surmise one worthwhile reason for this Panel to transfer *Smith*, much less a reason significant enough to override the fact that such transfer would be in direct contravention of the policy objectives of Section 1407.

**B.        Transfer of *Smith* Would Violate Plaintiff's Right to Due Process**

Instigating the removal of a state court action, regardless of whether federal subject matter jurisdiction exists, and then seeking transfer to federal multidistrict litigation proceedings known to proceed at a pace akin to gridlock—in an attempt to delay or deny a plaintiff's right to a trial on the merits of his state law claims—is a strategy commonly used by defendants in asbestos-related personal injury actions. Plaintiffs in such cases are often are dying of an incurable cancer, such as mesothelioma, which typically kills its victims within a relatively short time after diagnosis (and with them, their right to recover noneconomic damages).  Mr. Smith would appear to be such a plaintiff.

"[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," before one is deprived of life, liberty, or property.  *Kahn v. United States,* 753 F.2d 1208, 128 (3d Cir. 1985) (citing to *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).  The concept is a "flexible" one, "calling for procedural protection as dictated by the particular circumstance."  *Id.*  Whether or not procedural protections are due "depends on the extent to which an individual will be 'condemned to suffer grievous loss' ... within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."  *Morrissey,* 408 U.S. at 481.

If transferred to MDL-875, it could easily take over a year for *Smith* to wind its way through the tedious, slow-paced, backlogged, consolidated discovery process and unpredictable but almost always delayed motion practice of those proceedings before it is returned to the local District Court for trial.  Mr. Smith does not have such time to spare. ***To be clear*, Mr. Smith will be dead by then.**

Because the delays attendant with transferring this action mean that Mr. Smith will die before he has the chance to pursue his claims against the defendants at trial, transfer would deprive Mr. Smith of his due process rights—i.e., his right to meaningfully seek redress for the wrongs he alleges were done to him.  Thus, for this reason as well, this Panel should immediately vacate CTO-373.

**C.        This Panel Should Not Further Consider nor Order the Transfer of *Smith* Prior to the Local District Court's Ruling on Plaintiff's Remand Motion**

At minimum, this Panel should not transfer *Smith* to MDL-875 prior to the local District Court's ruling on plaintiff's remand motion.  Indeed, because that ruling will resolve the issue of whether federal jurisdiction over this action is had—a threshold matter that must be established at the outset of an action—it would improper for this litigation to proceed prior to its issuance.  Moreover, transfer prior to a ruling on plaintiff's remand motion would be judicially inefficient as well as cause plaintiff unnecessary additional expense and inconvenience.

**1.        Jurisdiction as a threshold matter**

Federal courts are courts of limited jurisdiction; because federal courts presumptively have no jurisdiction over civil actions, the burden of establishing to the contrary appropriately rests upon the party asserting jurisdiction.  *Kokkonen v. Guardian*

*Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  The failure by

a Court to determine at the outset of an action whether jurisdiction exists "carries [it]

beyond the bounds of authorized judicial action and thus offends fundamental principles

of separation of powers." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.

Ct. 1003, 1012 (1998).

There are no exceptions to this rule:  "The requirement that jurisdiction be

established as a threshold matter 'springs from the nature and limits of the judicial power

of the United States' and is 'inflexible and without exception.'" *Steel Co., supra,* 523

U.S. at 94-95, 118 S. Ct. at 1012 (citing to *Mansfield, C. & L. M. R. Co. v. Swan,* 111

U.S. 379, 382, 4 S. Ct. 510 (1884).)

In the instant action, the threshold determination of federal jurisdiction has yet to

be resolved.  That issue, submitted to the local District Court in the form of plaintiff's

remand motion filed some two weeks ago, can and should be determined before this

Panel gives further consideration to the propriety of transferring *Smith* to MDL-875.  To

transfer *Smith* before the jurisdictional issue is resolved, to proceedings where remand

motions have been known to sit idle for years before being ruled upon, ignores the strict

rule that jurisdiction be established at the outset.  Indeed, perpetuating the length of time

this action remains in federal court, given that there is a material dispute as to whether

federal jurisdiction exists, threatens plaintiff's constitutional rights to due process and a

speedy trial by jury.[6]

---

[6] Principles of comity lend additional support for plaintiff's position that this Panel
should not further consider transferring *Smith* to MDL-875 while plaintiff's remand
motion is pending before the local District Court. See, *In re L. E. Lay & Co. Antitrust
Litig.,* 391 F.Supp. 1054, 1056 (J.P.M.L. 1975); see also, *In re Multidistrict Private Civ.
Treble Damages Litig.,* 298 F. Supp. 484, 496 (J.P.M.L. 1968)("On principles of comity,

**2.      Judicial inefficiencies, inconvenience, and unnecessary expense**

Transfer of this action prior to the local District Court ruling on plaintiff's remand motion would impede the just and efficient administration of this action.

If, as plaintiff contends, no valid basis for federal jurisdiction exists, this case does not belong in the local District Court much less MDL-875.  However, if this action is transferred prior to the local District Court's ruling on plaintiff's remand motion, plaintiff will be forced to file his remand motion anew in the Eastern District of Pennsylvania.  Due to its backlog of cases, and lack of procedural rules that would ensure a prompt ruling, plaintiff submits that it would take far longer for a MDL Judge to reach that conclusion than it will the presiding Judge of the local District Court in California.

Thus, while the jurisdictional issued raised in plaintiff's pending remand motion could be resolved by the presiding Judge of MDL-875, that route will cause significant and needless delay to the final resolution of this case. That route will also require plaintiff to spend additional time and money to modify and re-file his remand motion and will also result in the burdensome duplication of labor, time, and expense by the MDL court in its review and consideration of that motion.  To require the MDL court to spend time, money and resources to repeat something that the local District Court in California will have by then already done amounts to judicially inefficiency at its finest.  (By April 5th, plaintiff's remand motion will have been fully briefed by the parties and taken under submission in the local District Court.)

---

where appropriate, the Panel has in the past timed its actions and constructed its orders in a manner which will permit the transferor courts ... to reach timely decisions on particular issues without abrupt, disconcerting, untimely or inappropriate orders of transfer by the Panel. This policy of comity has been followed in the past and will be followed in the future by the Panel.")

Furthermore, transfer prior to a ruling on plaintiff's remand motion would effectively force aside the question of federal jurisdiction while it is still unresolved.  If the MDL court fails to promptly rule on plaintiff's remand motion, plaintiff will be forced to choose between litigating his case in the proceedings of a court that potentially has no jurisdiction, and not litigating his case at all, and instead simply waiting in legal limbo for an indeterminate length of time, because until the jurisdictional issue is determined, his case cannot be decided on its merits. Neither option would serve the interests of justice nor further the goals of the federal multidistrict litigation statute. Both options, in addition, run afoul of the separation of powers and due process doctrines.

The inefficiencies and pitfalls here referenced can be prevented if this Panel simply allows plaintiff's remand motion to run its course in the local District Court.  This option would conserve significant judicial resources as well as the resources of the parties and would also foster the expeditious administration of justice. It is also the only avenue of relief that adequately safeguards plaintiff's right to have the issue of federal jurisdiction resolved in a prompt manner.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, plaintiff requests that this Panel vacate CTO-373 and allow this case to proceed before the U.S. District Court for the Northern District of

\\

\\

\\

\\

California.  In light of the specific circumstances of this action, its transfer to MDL-875

would frustrate rather than advance any of the policy objectives of 28 U.S.C. 1407.


Dated:  March 29, 2011                    Respectfully submitted,


                                          Mark A. Swanson,
                                          PAUL & HANLEY LLP
                                          1608 Fourth Street, Suite 300
                                          Berkeley, California 94710
                                          Telephone:    (510) 559-9980
                                          Facsimile:    (510) 559-9970
                                          mswanson@paulandhanley.com
                                          Attorneys for Plaintiff William A. Smith