# U.S. District Court
## Middle District of Louisiana (Baton Rouge)
## CIVIL DOCKET FOR CASE #: 3:11-cv-00199-BAJ -SCR
## Internal Use Only

| | |
|---|---|
| Lewis v. Atlas Refinery, Inc. et al | Date Filed: 03/28/2011 |
| Assigned to: Judge Brian A. Jackson | Jury Demand: None |
| Referred to: Magistrate Judge Stephen C. Riedlinger | Nature of Suit: 368 P.I. : Asbestos |
| Case in other court: 19th Jud. Dist. Court, East Baton Rouge Parish, 583178 | Jurisdiction: Federal Question |
| Cause: 28:1442 Notice of Removal | |

**Plaintiff**

**Alton Lewis**        represented by   **Cameron Ray Waddell**
Waddell Anderman, LLC
8708 Jefferson Hwy
Suite A
Baton Rouge, LA 70809
225-636-5639
Fax: 225-636-5209
Email: cwaddell@waddellanderman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jody E. Anderman**
Waddell Anderman, LLC
8708 Jefferson Hwy
Suite A
Baton Rouge, LA 70809
225-636-5639
Fax: 225-636-5209
Email: janderman@waddellanderman.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Air & Liquid Systems Corporation**       represented by   **Susan Durham McNamara**
*formerly known as*
Buffalo Pumps, Inc.
Wells, Moore, Simmons & Hubbard, PLLC
4450 Old Canton Road, Suite 200
Jackson, MS 39211
(601) 354-5400
Email: smcnamara@wellsmoore.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stacey Leigh Strain**

Wells, Moore, Simmons & Hubbard, PLLC
Post Office Box 1970
4450 Old Canton Road, Suite 200
Jackson, MS 39215
601-354-5400
Fax: 601-355-5850
Email: strain@wellsmoore.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Atlas Refinery, Inc.**

**Defendant**

**Anco Insulations, Inc.**

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom, Inc.
*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**Commercial Union Insurance Company**
*As Insurer for Eagle, Inc.*
*formerly known as*
Eagle Asbestos & Packing Co., Inc. and its
executive officers, Fred Schuber, Jr. and
Fred Schuber, III
*formerly known as*
The McCarty Corporation, and its
executive officer, Marvin McCarty,
deceased

**Defendant**

**Crane Co.**
*Individually and as Successor-in-Interest
to*
*also known as*
Chapman Valve Co.

**Defendant**

**CSR, Limited**

**Defendant**

**The Fidelity and Casualty Company of
New York**
*As Insurer of The J. Graves Insulation
Company, Inc.*
*on behalf of*

The J. Graves Insulation Company

**Defendant**

**Foster Wheeler Energy Corporation**

**Defendant**

**Foster Wheeler LLC**

**Defendant**

**General Electric Company**

**Defendant**

**Georgia-Pacific LLC**
*Individually and as Successor-in-Interest to*
*formerly known as*
Bestwall Gypsum Company

**Defendant**

**International Paper Company**
*Individually and as Successor-in-Interest to*
*also known as*
Champion Paper Corporation

**Defendant**

**The J. Graves Insulation Company**
*formerly known as*
Graves-Aber Insulation Company, Inc.

**Defendant**

**Kaiser Gypsum Company, Inc.**

**Defendant**

**Libby, Inc.**

**Defendant**

**The McCarty Corp.**
*formerly known as*
McCarty-Branton, Inc.

**Defendant**

**Penzoil-Quaker State Company**
*formerly known as*
Pennzoil Products Company
*formerly known as*
Atlas Refinery, Inc.

**Defendant**

**Union Carbide Corporation**

**Defendant**

**United States Fidelity and Guaranty**
*as insurer*
*on behalf of*
The J. Graves Insulation Company

**Defendant**

**Weyerhauser Company**
*individually and*
*on behalf of*
Williamette Industries, Inc.

**Defendant**

**Zurich American Insurance Company**
*as insurer*
*also known as*
Zurich Insurance Company
*on behalf of*
The J. Graves Insulation Company

**Defendant**

**Leslie Controls, Inc.**

**Defendant**

**Warren Pumps, LLC**

**Defendant**

**Eagle, Inc.**
*formerly known as*
Eagle Asbestos & Packing Co., Inc.

**Defendant**

**Hamm Enterprises, Inc.**
*formerly known as*
Berg Mechanical, Inc.

**Defendant**

**IMO Industries, Inc.**
*Individually and as Successor-in-Interest*
*to*
*also known as*
DeLaval Steam Turbine Company

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2011 | 2 | AMENDED NOTICE OF REMOVAL against Atlas Refinery, Inc., filed by Air & Liquid Systems Corporation (as successor by merger to Buffalo Pumps, Inc.). (McNamara, Susan) (Entered: 03/29/2011) |

| 03/29/2011 | | (Court only) ***Parties added. (McNamara, Susan) Modified on 3/30/2011 to consolidate text (BP). (Entered: 03/29/2011) |
| 03/29/2011 | | (Court only) ***Attorney Stacey Leigh Strain for Buffalo Pumps, Inc.,Cameron Ray Waddell,Jody E. Anderman for Alton Lewis added. (BP) (Entered: 03/29/2011) |
| 03/28/2011 | 1 | NOTICE OF REMOVAL from 19th Judicial District, East Baton Rouge Parish, Case Number 583178. (Filing fee $ 350 receipt number 053N-663971), filed by Air & Liquid Systems Corporation. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Attachment Civil Cover Sheet) (McNamara, Susan) (Attachment 3 replaced on 3/29/2011) (BP). (Attachment 11 replaced on 3/29/2011) (BP). (Attachment 13 replaced on 3/29/2011) (BP). (Entered: 03/28/2011) |

**Case #: 3:11-cv-00199-BAJ -SCR**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA


ALTON LEWIS                                              PLAINTIFF


V.                              CIVIL ACTION NO. 3:11-cv-00199-BAJ-SCR


ATLAS REFINERY, INC., AIR & LIQUID SYSTEMS
CORPORATION (as successor by merger to Buffalo Pumps, Inc.),
WARREN PUMPS LLC, ANCO INSULATIONS, INC., CBS
CORPORATION (f/k/a Viacom, Inc., successor by merger
with CBS Corporation f/k/a Westinghouse Electric Corporation),
COMMERCIAL UNION INSURANCE COMPANY (as insurer
for Eagle, Inc., f/k/a Eagle Asbestos & Packing Co., Inc., and its
executive officers, Fred Schuber, Jr. and Fred Schuber, III and
The McCarty Corporation, and its executive officer, Marvin
McCarty, deceased), CRANE CO. (individually and as
successor-in-interest to Chapman Valve Co.), CSR LIMITED,
EAGLE, INC. (f/k/a Eagle Asbestos & Packing Co., Inc.) THE
FIDELITY AND CASUALTY COMPANY OF NEW YORK
(as insurer of The J. Graves Insulation Company, Inc.), FOSTER
WHEELER ENERGY CORPORATION, FOSTER WHEELER LLC,
GENERAL ELECTRIC COMPANY, GEORGIA-PACIFIC LLC
(individually and as successor-in-interest to Bestwall Gypsum Company),
HAMM ENTERPRISES, INC. (f/k/a Berg Mechanical, Inc.), IMO
INDUSTRIES, INC. (individually and as successor-in-interest to
DeLaval Steam Turbine Company), INTERNATIONAL PAPER
COMPANY (individually and as successor-in-interest to Champion
Paper Corporation), THE J. GRAVES INSULATION COMPANY (f/k/a
Graves-Aber Insulation Company, Inc.), KAISER GYPSUM COMPANY,
INC., LIBBY, INC., THE MCCARTY CORP. (f/k/a McCarty-Branton,
Inc.), PENZOIL-QUAKER STATE COMPANY (as successor by merger
to Pennzoil Products Company, successor to Atlas Refinery, Inc.), UNION
CARBIDE CORPORATION, UNITED STATES FIDELITY AND
GUARANTY (as insurer of The J. Graves Insulation, Inc.), WEYERHAUSER
COMPANY (individually and as successor-in-interest to Williamette
Industries, Inc.), ZURICH AMERICAN INSURANCE COMPANY (a/k/a
and/or f/k/a Zurich Insurance Company, as insurer of The J. Graves
Insulation Company, Inc.)                                DEFENDANTS

### DEFENDANT AIR & LIQUID SYSTEMS CORPORATION'S
### AMENDED NOTICE OF REMOVAL OF
### CIVIL ACTION FROM STATE COURT

Defendant, Air & Liquid Systems Corporation, successor-by-merger to Buffalo Pumps, Inc. ("Buffalo Pumps") hereby notices the removal of this civil action to the United States District Court for the Middle District of Louisiana, from the 19th Judicial District Court for the Parish of East Baton Rouge. Removal is pursuant to 28 U.S.C. §§ 1442 and 1446, whereby this Court has subject matter jurisdiction to adjudicate claims with respect to persons acting under an officer or agency of the United States. The grounds for removal are more particularly stated as follows:

1.      Plaintiff originally filed his Petition (Civil Action No. 583178), which named Buffalo Pumps as a defendant, on or about October 5, 2009. *See* **Exhibit 1**. Buffalo Pumps was subsequently dismissed from the action, without prejudice, before its Answer was due. *See* **Exhibit 2**.

2.      On January 6, 2011, Plaintiff filed his Fourth Amended Petition which named Buffalo Pumps as a Defendant. *See* **Exhibit 3**. This Fourth Amended Petition was served on Buffalo Pumps on February 25, 2011. This Notice of Removal is timely because it has been filed within thirty (30) days after receipt by Buffalo Pumps of a copy of the initial pleading setting forth the claim for relief upon which such action is based. *See* 28 U.S.C. § 1446(b); ***Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,*** 526 U.S. 344 (1999).

3.      In his Fourth Amended Petition, Plaintiff alleges that he was exposed to asbestos-containing products manufactured by Buffalo Pumps. *See* **Exhibit 3**, ¶ 2. Plaintiff specifically identifies using Buffalo Pumps' products "onboard the USS Henderson, which Alton Lewis served on from approximately 1956-1958." *See* **Exhibit 3**, ¶ 2. Plaintiff alleges that he is suing

2

Buffalo Pumps for "negligence and failure to warn for the sale and supply of asbestos and asbestos-containing products to the USS Henderson. . . ." *See* **Exhibit 3**, ¶3. Plaintiff's Motion for Leave to File Fourth Amended Petition for Damages states that " [r]ecent depositions given by the co-workers of Alton Lewis ("Lewis") confirmed that Lewis worked on and around asbestos-laden pumps while onboard the USS Henderson, and the ship's records reveal that some of those pumps were made by Buffalo Pumps ... ." *See* **Exhibit 4**.

    4.    It appears from the allegations in both the Motion and Fourth Amended Petition that Plaintiff seeks to hold Buffalo Pumps liable in connection with products it allegedly manufactured and sold to the United States Navy. Based on Plaintiff's allegations, Buffalo Pumps is entitled to remove this action because (a) Buffalo Pumps is a person having a colorable federal defense; (b) Buffalo Pumps acted under the authority or direction of an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1); and (c) there is a causal nexus between Plaintiff's claims and the conduct performed by Buffalo Pumps under the color of federal office. *Mesa v. California,* 489 U.S. 121 (1989); *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow interpretation of 28 U.S.C. § 1442(a)(1). *Willingham v. Morgan,* 395 U.S. 402, 405 (1960); *Fink v. Todd Shipyards, Inc.,* 2004 WL 856734, at *3. (E.D. La. April 20, 2004).

    5.    Buffalo Pumps is a "person" within the meaning of 28 U.S.C. § 1442(a). See *Green v. A.W. Chesterton Co.,* 366 F. Supp. 2d 149, 153 n.3 (D. Me. 2005); *see also Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 398 (5th Cir. 1998) (corporate entities qualify as "persons" under § 1442(a)(1)); **Fung v. Abex Corp.,** 816 F. Supp. 569, 572 (N.D. Cal. 1992).

6.     Buffalo Pumps does not need to prove the merits of its defense in order to remove this case, but rather it merely needs to present a colorable claim such that the validity of the defense should be tried in federal court rather than state court. *See Mesa*, 489 U.S. at 129; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998); *Kluka v. Anco Insulations, Inc.*, 2008 WL 2444517 at *1 (M.D. La. April 28,2008); *Furiegh v. Sewerage and Water Bd. of New Orleans*, 2004 WL 1794524 at *2 (ED. La. Aug. 10, 2004). *See also Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 99,102-104 (D. Conn. 2007); *Nesbiet v. General Electric Co.*, 399 F. Supp. 2d 205,210-11 (S.D.N.Y. 2005); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695,701 (S.D. Tx. 2002); *Pack v. AC and S, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993). To make a colorable showing of this defense Buffalo Pumps must simply show that the defense is "plausible" and not "completely frivolous." *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

7.     Buffalo Pumps manufactured and supplied pumps for Navy ships pursuant to vessel-specific contracts with the United States Navy. *See* Affidavit of Martin K. Kraft ("Kraft Affidavit"), attached as **Exhibit 5**; *see* Affidavit of Rear Admiral Roger B. Home, Jr. ("Horne Affidavit"), attached as **Exhibit 6**.

8.     The "government contractor" defense was established in *Boyle, supra*. The Supreme Court held that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512. The government contractor defense also applies in cases where the alleged tortious act is a failure to warn of hazards associated with equipment supplied to the

4

United States government. *See, e.g., **Tate V. Boeing Helicopters***, 55 F.3d 1150, 1157 (6th Cir. 1995). The Eastern District of Pennsylvania has held that the government contractor defense is colorable in a Navy equipment case. *See **Hagen v. Benjamin Foster Co.***, 2010 WL 3745297, *10 (Sept. 24, 2010)(stating that "if the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf .")(citations omitted). Further, the Eastern District of Pennsylvania has granted summary judgment in favor of a Defendant on the government contractor defense. ***Faddish v. General Elec. Co.***, 2010 WL 4146108 (Oct. 20, 2010).  It stands to reason that if the Court can grant summary judgment on the defense, it is certainly a "colorable" defense for purposes of removal.

9.      In a case premised on a failure to warn of dangers allegedly associated with products supplied to the government, a defendant is entitled to the protections of the military contractor defense where any alleged state law duty to warn conflicts with the government's interest in procuring military equipment. Whether a conflict exists is determined by a three-part test set forth by the Sixth Circuit in ***Tate v. Boeing Helicopters***, 55 F.3d 1150 (6th Cir. 1995). A conflict between federal policy and state law exists where: (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not. ***Id.*** at 1157. "[T]he deliberate trade-off between military mission requirements and safety concerns is at the heart of the [military] contractor defense." ***Oliver v. Oshkosh Truck Corp.***, 96 F.3d 992, 999 (7th Cir. 1996).

5

10.     It is difficult to imagine any area in which the Navy had either a greater discretionary interest or more detailed knowledge and expertise than that of asbestos during World War II and the decades that followed. During that time, the Navy embarked on a program of shipbuilding unparalleled in history before or since. The Navy and its contractor shipyards constructed thousands of vessels of unprecedented size and complexity. The vessels were designed and constructed under to strict Navy direction and control, exercised by the most diverse and advanced engineering workforce in the nation. Even the smallest of these vessels required thousands of component parts, supplied by hundreds of different manufacturers. No level of detail was too small to be encompassed by Navy specifications and requirements. A key element of the Navy's shipbuilding program was the use of virtually unimaginable quantities of asbestos.

11.     As evidenced by Mr. Kraft's affidavit, the Navy issued specifications and other technical documentation identified in applicable contract documents that controlled the pumps' design and construction and specified the materials to be used, including asbestos gaskets. The Navy retained ultimate decision-making authority with respect to the design and final approval of all Buffalo Pump's pumps constructed for Navy vessels. All pumps supplied by Buffalo Pumps to the Navy were manufactured under reasonably precise specifications and other technical documentation dictated by the United States Government and identified in applicable contract documents. *See* **Exhibit 5,** Kraft Affidavit, and **Exhibit 6**, Home Affidavit. *See also* **Nesbiet***,* 399 F. Supp. 2d 205 (denying remand motion filed by Plaintiffs in response to naval equipment manufacturer's removal to federal court on grounds of the government contractor defense); ***Miller v. Diamond Shamrock Co.,*** 275 F.3d 414, 419 (5th Cir. 2001).

6

12.     The United States Navy was aware of the potential hazards of asbestos as early as 1922, and by the 1940s, the Navy's knowledge regarding the potential hazards of asbestos was quite complete when compared to the available knowledge at the time. *See Nesbiet,* 399 F. Supp 2d at 212 (finding that evidence "establishes that the Navy's knowledge of the dangers of asbestos on board its ships was state-of-the-art"); *Miller,* 275 F.3d at 422-23 (holding that "[k]nowledge of the military is knowledge of the government for purposes of the military contractor defense"); *Niemann v. McDonnell Douglas Corp.,* 721 F. Supp. 1019 (S.D. Ill. 1989)(finding government contractor defense applicable to bar recovery in part because "the government was aware of the risks of the use of asbestos and chose to continue to use asbestos in spite of this knowledge"); *see also* Affidavit of Samuel Forman, M.D., attached hereto as **Exhibit 7**; Horne Affidavit (**Exhibit 6**).

13.     The Navy's specifications also covered the nature of any communication affixed to pumps or equipment supplied to the Navy. As such, Buffalo Pumps was required to submit for approval and acceptance by the federal government drafts of any manuals, drawings or other written materials required to be provided with regard to pumps it manufactured for the Navy. *See* Kraft Affidavit (**Exhibit 5**), and Horne Affidavit (**Exhibit 6**).

14.     In accordance with its policies and practices pertaining to the construction of its ship, and in the further exercise of its discretion, the Navy required Buffalo Pumps to conform to detailed, uniform specifications regarding the exact wording of any written communications. The Navy would not have permitted Buffalo Pumps to alter these specifications to include asbestos warnings. *See* Horne Affidavit. (**Exhibit 6**).

15.     Therefore, Buffalo Pumps was, at all times, acting under the direct and detailed authority and control of an officer of the government, specifically the United States Navy, in

7

carrying out its contracts for the manufacture of pumps. *See Miller,* 275 F.3d at 419; *Fink,* 2004 WL 856734 at *2-3; *Delancey v. General Electric,* 2004 WL 3247173, at *2 (E.D. La. Mar. 31, 2004); *Crocker v. Borden, Inc.,* 852 F. Supp. 1322,1325-26 (E.D. La. 1994).  *See also Nesbiet,* 399 F. Supp. 2d at 212. Therefore, under *Boyle v. United States, supra,* and *Tate v. Boeing Helicopters, supra,* Buffalo Pumps has a colorable federal defense to plaintiff's claims.

16.     There is a causal nexus between Buffalo Pumps' actions undertaken at the government's direction and the harm that plaintiff alleges, namely, asbestos-related disease. Simply put, every action that Buffalo Pumps undertook was at the direction of the Navy. Manufacturers were directed to follow the Navy's specifications, period. *See Furiegh,* 2004 WL 1794524 at *3 ("the nexus requirement for § 1442(a)(1) is satisfied when defendant contractor has performed in compliance with government specifications"); *Kluka,* 2008 WL 2444517, at *3. *See also Reaser v. Allis Chambers Corp.,* CV 08-1296-SVW (SSx), 7-8 (C.D.Cal. June 23, 2008) (attached as **Exhibit 8**).

17.     Numerous courts have upheld the assertion of the government contractor defense in cases alleging exposure from such equipment. *See e.g, Reaser,* CV 08-1296-SVW (SSx) (**Exhibit 8**); *O'Connell v. Foster Wheeler Energy Corp., et al.,* 544 F. Supp. 2d 51 (D. Mass. 2008); *Contois v. Able Industries, Inc.,* 523 F. Supp 2d 155, 161 (D. Conn. Nov. 13, 2007); *Machnik,* 506 F. Supp. 2d at 104; *Ferguson v. Lorillard Tobacco Co.,* 475 F. Supp. 2d 725, 730 (N.D. Ohio 2007); *Nesbiet,* 399 F. Supp. 2d 205 (S.D.N.Y. 2005); *Mitchell v. AC&S, Inc.,* 2004 WL 3831228, at *2-3 (E.D. Va. Dec. 15, 2004).

18.     In summary, Buffalo Pumps has a colorable federal defense. Based upon the above cited cases and the attached Affidavits, Buffalo Pumps clearly acted under the authority or direction of an officer or agency of the United States. Finally, there is a clear causal nexus between Plaintiff's

8

claims and the conduct performed by Buffalo Pumps under the color of federal office. Simply put, every action that Buffalo Pumps undertook was at the direction of the Navy.

19.    Buffalo Pumps is not required to notify or obtain the consent or approval of any other defendant in this action in order to remove Plaintiff's action as a whole pursuant to 28 U.S.C. § 1442(a)(1). *Furiegh*, 2004 WL 1794524 at *1; *Ely Valley Mines, Inc. v. Hartford Accident Indemnity Co.,* 644 F.2d 1310, 1315 (9th Cir. 1981); *Fowler v. Southern Bell Telephone & Telegraph Co.,* 343 F.2d 150, 152 (5th Cir. 1965).

20.    Attached as **Exhibit 9** is a copy of the Original Petition and all amended Petitions filed by Plaintiff.

21.    Buffalo Pumps hereby requests a full and fair opportunity to brief, respond to, and argue against any Motion for Remand filed by Plaintiff.

WHEREFORE, Air & Liquid Systems Corporation hereby notices the removal of this action to this Court.

DATED: this the 28th day of March, 2011.

Respectfully submitted,

AIR & LIQUID SYSTEMS CORPORATION

By: WELLS, MOORE, SIMMONS & HUBBARD, PLLC

By:    s/ Susan D. McNamara
          SUSAN D. McNAMARA (LBN 26872)
          STACEY L. STRAIN (LBN 29682)

9

Of Counsel:

Susan D. McNamara (LBN 26872)
Stacey L. Strain (LBN 29682)
WELLS, MOORE, SIMMONS & HUBBARD, PLLC
4450 Old Canton Road, Suite 200
Post Office Box 1970
Jackson, Mississippi 39215-1970
Telephone: (601) 354-5400
Facsimile: (601) 355-5850

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2011, a copy of the foregoing Amended Notice of Removal was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing has been sent via postage prepaid United States Mail to:

Susannah B. Chester, Esquire
Waters & Kraus, LLP
3219 McKinney Avenue
Dallas, TX 75204

Cameron R. Waddell, Esquire
Waddell Law Firm
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809

Doug Welborn, Clerk of Court
P. O. Box 1991
Baton Rouge, LA 70821

and to all known counsel of record via email.

        ___s/ Susan D. McNamara_____
        SUSAN D. McNAMARA (LBN 26872)
        WELLS, MOORE, SIMMONS & HUBBARD, PLLC
        4450 Old Canton Road, Suite 200
        Post Office Box 1970
        Jackson, Mississippi 39215-1970
        Telephone: (601) 354-5400
        Facsimile: (601) 355-5850

10

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ALTON LEWIS**                                                    **PLAINTIFF**

**V.**                               **CIVIL ACTION NO. _____**

**ATLAS REFINERY, INC., ET AL**                                   **DEFENDANTS**

### DEFENDANT AIR & LIQUID SYSTEMS CORPORATION'S
### NOTICE OF REMOVAL OF
### <u>CIVIL ACTION FROM STATE COURT</u>

Defendant, Air & Liquid Systems Corporation, successor-by-merger to Buffalo Pumps, Inc. ("Buffalo Pumps") hereby notices the removal of this civil action to the United States District Court for the Middle District of Louisiana, from the 19th Judicial District Court for the Parish of East Baton Rouge.  Removal is pursuant to 28 U.S.C. §§ 1442 and 1446, whereby this Court has subject matter jurisdiction to adjudicate claims with respect to persons acting under an officer or agency of the United States.  The grounds for removal are more particularly stated as follows:

1.     Plaintiff originally filed his Petition (Civil Action No. 583178), which named Buffalo Pumps as a defendant, on or about October 5, 2009.  *See* **Exhibit 1.**  Buffalo Pumps was subsequently dismissed from the action, without prejudice, before its Answer was due. *See* **Exhibit 2.**

2.     On January 6, 2011, Plaintiff filed his Fourth Amended Petition which named Buffalo Pumps as a Defendant. *See* **Exhibit 3.** This Fourth Amended Petition was served on

1

Buffalo Pumps on February 25, 2011. This Notice of Removal is timely because it has been filed within thirty (30) days after receipt by Buffalo Pumps of a copy of the initial pleading setting forth the claim for relief upon which such action is based. *See* 28 U.S.C. § 1446(b); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344 (1999).

3.      In his Fourth Amended Petition, Plaintiff alleges that he was exposed to asbestos-containing products manufactured by Buffalo Pumps. *See* **Exhibit 3,** ¶ 2. Plaintiff specifically identifies using Buffalo Pumps' products "onboard the USS Henderson, which Alton Lewis served on from approximately 1956-1958." *See* **Exhibit 3,** ¶ 2. Plaintiff alleges that he is suing Buffalo Pumps for "negligence and failure to warn for the sale and supply of asbestos and asbestos-containing products to the USS Henderson. . . ." *See* **Exhibit 3,** ¶3. Plaintiff's Motion for Leave to File Fourth Amended Petition for Damages states that "[r]ecent depositions given by the co-workers of Alton Lewis ("Lewis") confirmed that Lewis worked on and around asbestos-laden pumps while onboard the USS Henderson, and the ship's records reveal that some of those pumps were made by Buffalo Pumps . . . ." *See* **Exhibit 4.**

4.      It appears from the allegations in both the Motion and Fourth Amended Petition that Plaintiff seeks to hold Buffalo Pumps liable in connection with products it allegedly manufactured and sold to the United States Navy.  Based on Plaintiff's allegations, Buffalo Pumps is entitled to remove this action because (a) Buffalo Pumps is a person having a colorable federal defense; (b) Buffalo Pumps acted under the authority or direction of an officer or agency of the United States within the meaning of 28 U.S.C. §

2

1442(a)(1); and (c) there is a causal nexus between Plaintiff's claims and the conduct performed by Buffalo Pumps under the color of federal office. *Mesa v. California*, 489 U.S. 121 (1989); *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow interpretation of 28 U.S.C. § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 405 (1960); *Fink v. Todd Shipyards, Inc.*, 2004 WL 856734, at *3. (E.D. La. April 20, 2004).

5.     Buffalo Pumps is a "person" within the meaning of 28 U.S.C. § 1442(a).  *See Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149, 153 n.3 (D. Me. 2005); *see also Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (corporate entities qualify as "persons" under § 1442(a)(1)); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

6.     Buffalo Pumps does not need to prove the merits of its defense in order to remove this case, but rather it merely needs to present a colorable claim such that the validity of the defense should be tried in federal court rather than state court.  *See Mesa*, 489 U.S. at 129; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998); *Kluka v. Anco Insulations, Inc.*, 2008 WL 2444517 at *1 (M.D. La. April 28, 2008); *Furiegh v. Sewerage and Water Bd. of New Orleans*, 2004 WL 1794524 at *2 (E.D. La. Aug. 10, 2004). *See also Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 102-104 (D. Conn. 2007); *Nesbiet v. General Electric Co.*, 399 F. Supp. 2d 205, 210-11 (S.D.N.Y. 2005); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 701 (S.D. Tx. 2002); *Pack v. AC and S, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993).  To make a colorable showing of this defense Buffalo Pumps must simply show that the defense is "plausible" and not "completely frivolous." *Magnin v. Teledyne*

3

*Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

7.      Buffalo Pumps manufactured and supplied pumps for Navy ships pursuant to vessel- specific contracts with the United States Navy. *See* Affidavit of Martin K. Kraft ("Kraft Affidavit"), attached as **Exhibit 5**; *see* Affidavit of Rear Admiral Roger B. Horne, Jr. ("Horne Affidavit"), attached as **Exhibit 6**.

8.      The "government contractor" defense was established in *Boyle*, supra. The Supreme Court held that "[l]liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512. The government contractor defense also applies in cases where the alleged tortious act is a failure to warn of hazards associated with equipment supplied to the United States government. *See, e.g., Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). The Eastern District of Pennsylvania has held that the government contractor defense is colorable in a Navy equipment case. *See Hagen v. Benjamin Foster Co.*, 2010 WL 3745297, *10 (Sept. 24, 2010)(stating that "if the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf.")(citations omitted). Further, the Eastern District of Pennsylvania has granted summary judgment in favor of a Defendant on the government contractor defense. *Faddish v. General Elec. Co.*, 2010 WL 4146108 (Oct. 20, 2010). It stands to reason that if the Court can grant summary

4

judgment on the defense, it is certainly a "colorable" defense for purposes of removal.

9.      In a case premised on a failure to warn of dangers allegedly associated with products supplied to the government, a defendant is entitled to the protections of the military contractor defense where any alleged state law duty to warn conflicts with the government's interest in procuring military equipment.  Whether a conflict exists is determined by a three-part test set forth by the Sixth Circuit in *Tate v. Boeing Helicopters*, 55 F.3d 1150 (6th Cir. 1995).  A conflict between federal policy and state law exists where: (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.  *Id.* at 1157.  "[T]he deliberate trade-off between military mission requirements and safety concerns is at the heart of the [military] contractor defense."  *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 999 (7th Cir. 1996).

10.      It is difficult to imagine any area in which the Navy had either a greater discretionary interest or more detailed knowledge and expertise than that of asbestos during World War II and the decades that followed.  During that time, the Navy embarked on a program of shipbuilding unparalleled in history before or since.  The Navy and its contractor shipyards constructed thousands of vessels of unprecedented size and complexity.  The vessels were designed and constructed under to strict Navy direction and control, exercised by the most diverse and advanced engineering workforce in the nation. Even the smallest of these vessels required thousands of component parts, supplied by

5

hundreds of different manufacturers. No level of detail was too small to be encompassed by Navy specifications and requirements. A key element of the Navy's shipbuilding program was the use of virtually unimaginable quantities of asbestos.

11.     As evidenced by Mr. Kraft's affidavit, the Navy issued specifications and other technical documentation identified in applicable contract documents that controlled the pumps' design and construction and specified the materials to be used, including asbestos gaskets. The Navy retained ultimate decision-making authority with respect to the design and final approval of all Buffalo Pump's pumps constructed for Navy vessels. All pumps supplied by Buffalo Pumps to the Navy were manufactured under reasonably precise specifications and other technical documentation dictated by the United States Government and identified in applicable contract documents. See **Exhibit 5**, Kraft Affidavit, and **Exhibit 6**, Horne Affidavit. *See also Nesbiet*, 399 F. Supp. 2d 205 (denying remand motion filed by Plaintiffs in response to naval equipment manufacturer's removal to federal court on grounds of the government contractor defense); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001).

12.     The United States Navy was aware of the potential hazards of asbestos as early as 1922, and by the 1940s, the Navy's knowledge regarding the potential hazards of asbestos was quite complete when compared to the available knowledge at the time. *See Nesbiet*, 399 F. Supp 2d at 212 (finding that evidence "establishes that the Navy's knowledge of the dangers of asbestos on board its ships was state-of-the-art"); *Miller*, 275 F.3d at 422-23 (holding that "[k]nowledge of the military is knowledge of the government

6

for purposes of the military contractor defense"); *Niemann v. McDonnell Douglas Corp.,* 721 F. Supp. 1019 (S.D. Ill. 1989)(finding government contractor defense applicable to bar recovery in part because "the government was aware of the risks of the use of asbestos and chose to continue to use asbestos in spite of this knowledge"); *see also* Affidavit of Samuel Forman, M.D., attached hereto as **Exhibit 7;** Horne Affidavit **(Exhibit 6).**

13.    The Navy's specifications also covered the nature of any communication affixed to pumps or equipment supplied to the Navy.  As such, Buffalo Pumps was required to submit for approval and acceptance by the federal government drafts of any manuals, drawings or other written materials required to be provided with regard to pumps it manufactured for the Navy. *See* Kraft Affidavit **(Exhibit 5),** and Horne Affidavit **(Exhibit 6).**

14.    In accordance with its policies and practices pertaining to the construction of its ship, and in the further exercise of its discretion, the Navy required Buffalo Pumps to conform to detailed, uniform specifications regarding the exact wording of any written communications. The Navy would not have permitted Buffalo Pumps to alter these specifications to include asbestos warnings. *See* Horne Affidavit. **(Exhibit 6)**.

15.    Therefore, Buffalo Pumps was, at all times, acting under the direct and detailed authority and control of an officer of the government, specifically the United States Navy, in carrying out its contracts for the manufacture of pumps. *See Miller*, 275 F.3d at 419; *Fink,* 2004 WL 856734 at *2-3; *Delancey v. General Electric,* 2004 WL 3247173, at *2 (E.D. La. Mar. 31, 2004); *Crocker v. Borden, Inc.,* 852 F. Supp. 1322, 1325-26 (E.D. La. 1994).

7

*See also Nesbiet*, 399 F. Supp. 2d at 212.  Therefore, under *Boyle v. United States, supra,* and *Tate v. Boeing Helicopters, supra,* Buffalo Pumps has a colorable federal defense to plaintiff's claims.

16.     There is a causal nexus between Buffalo Pumps' actions undertaken at the government's direction and the harm that plaintiff alleges, namely, asbestos-related disease.  Simply put, every action that Buffalo Pumps undertook was at the direction of the Navy.  Manufacturers were directed to follow the Navy's specifications, period.  *See Furiegh,* 2004 WL 1794524 at *3 ("the nexus requirement for § 1442(a)(1) is satisfied when defendant contractor has performed in compliance with government specifications"); *Kluka,* 2008 WL 2444517, at *3.  *See also Reaser v. Allis Chambers Corp.,* CV 08-1296-SVW (SSx), 7-8 (C.D.Cal. June 23, 2008) (attached as **Exhibit 8**).

17.     Numerous courts have upheld the assertion of the government contractor defense in  cases alleging exposure from such equipment. *See e.g., Reaser,* CV 08-1296-SVW (SSx) **(Exhibit 8)**; *O'Connell v. Foster Wheeler Energy Corp., et al.,* 544 F. Supp. 2d 51 (D. Mass. 2008); *Contois v. Able Industries, Inc.,* 523 F. Supp 2d 155, 161 (D. Conn. Nov. 13, 2007); *Machnik,* 506 F. Supp. 2d at 104; *Ferguson v. Lorillard Tobacco Co.,* 475 F. Supp. 2d 725, 730 (N.D. Ohio 2007); *Nesbiet,* 399 F. Supp. 2d 205 (S.D.N.Y. 2005); *Mitchell v. AC&S, Inc.,* 2004 WL 3831228, at *2-3 (E.D. Va. Dec. 15, 2004).

18.     In summary, Buffalo Pumps has a colorable federal defense. Based upon the above cited cases and the attached Affidavits, Buffalo Pumps clearly acted under the authority or direction of an officer or agency of the United States.  Finally, there is a clear

8

causal nexus between Plaintiff's claims and the conduct performed by Buffalo Pumps under the color of federal office. Simply put, every action that Buffalo Pumps undertook was at the direction of the Navy.

19.    Buffalo Pumps is not required to notify or obtain the consent or approval of any other defendant in this action in order to remove Plaintiff's action as a whole pursuant to 28 U.S.C. § 1442(a)(1). *Furiegh,* 2004 WL 1794524 at *1; *Ely Valley Mines, Inc. v. Hartford Accident Indemnity Co.,* 644 F.2d 1310, 1315 (9th Cir. 1981); *Fowler v. Southern Bell Telephone & Telegraph Co.,* 343 F.2d 150, 152 (5th Cir. 1965).

20.    Attached as **Exhibit 9** is a copy of the Original Petition and all amended Petitions filed by Plaintiff.

21.    Buffalo Pumps hereby requests a full and fair opportunity to brief, respond to, and argue against any Motion for Remand filed by Plaintiff.

WHEREFORE, Air & Liquid Systems Corporation hereby notices the removal of this action to this Court.

DATED: this the 28th day of March, 2011.

Respectfully submitted,

AIR & LIQUID SYSTEMS CORPORATION

By: WELLS, MOORE, SIMMONS & HUBBARD, PLLC

By:   s/Susan D. McNamara_____
        SUSAN D. McNAMARA (LBN 26872)
        STACEY L. STRAIN (LBN 29682)

9

Of Counsel:

Susan D. McNamara (LBN 26872)
Stacey L. Strain (LBN 29682)
WELLS, MOORE, SIMMONS & HUBBARD, PLLC
4450 Old Canton Road, Suite 200
Post Office Box 1970
Jackson, Mississippi 39215-1970
Telephone:  (601) 354-5400
Facsimile:  (601) 355-5850

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2011, a copy of the foregoing Notice of Removal was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Cameron R. Waddell, Esquire, and Susannah B. Chester, Esquire, by operation of the court's electronic filing system.  I also certify that I have sent a copy of this filing to all known counsel of record via email.

s/ Susan D. McNamara
SUSAN D. McNAMARA (LBN 26872)
WELLS, MOORE, SIMMONS & HUBBARD, PLLC
4450 Old Canton Road, Suite 200
Post Office Box 1970
Jackson, Mississippi  39215-1970
Telephone:  (601) 354-5400
Facsimile:  (601) 355-5850

10

910121814000

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO.: 583178          SECTION          DIVISION " " SEC. 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL          COST OK Amt 3310 –
                                      1016
                                      OCT 05 2009

FILED: _____          BY _____
                                  DEPUTY CLERK CLERK OF COURT

**PETITION FOR DAMAGES**

    Now into Court, through undersigned counsel, comes the petitioner, Alton Lewis, (hereinafter referred to as the Plaintiff), is an adult citizen of the State of Louisiana, who files his Petition for Damages:

    1.    The Plaintiff had substantial exposure to asbestos and asbestos-containing products sold, distributed, supplied, applied, removed, used, manipulated and/or maintained on defendants' premise in this Parish.

    2.    The Defendants, identified in Exhibit "A," are all either:  (a) foreign corporations licensed to do and doing business in the state of Louisiana, (b) domestic corporations licensed to do business and doing business in the state of Louisiana, (c) individuals who are domiciled in this state, (d) individuals who are not domiciled in this state, or (e) foreign or alien insurers, that are liable to the Plaintiff for the claims asserted herein.

    3.    Each Defendant corporation and/or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, installation, removal, maintenance, sale and/or distribution of asbestos asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as "asbestos-containing products"), or held themselves out as manufacturers of such products or were professional vendors of such products.

    4.    Plaintiff worked with and/or was exposed to asbestos-containing products while working at defendants' premises in the state of Louisiana.  Plaintiff

**EXHIBIT**

1

work sites, trades and years of exposure to asbestos include, but are not limited to those identified below.  Plaintiff has been exposed, on numerous occasions, to asbestos and/or asbestos-containing products produced, manufactured, installed, removed, maintained, sold, and/or distributed by Defendants and, in so doing, has inhaled significant quantities of asbestos fibers, and as a result has suffered injuries proximately caused by such exposure.

5.    Plaintiff was exposed to asbestos or asbestos-containing products from his employment as a machinist mate, plumber and security guard at multiple locations, including but not limited to, the following: Atlas Refinery (in/around Shreveport, Louisiana); International Paper Company (Springhill, Louisiana); Libby, Inc. (in/around Shreveport, Louisiana); Willamette Paper Mill, and commercial sites in and around Houston, Texas and Shreveport, Louisiana. The conduct of each Defendant was a substantial contributing factor in causing Plaintiff's injuries, such that all Defendants are liable jointly, severally, and in solido for all of the damages complained of herein.

<u>VENUE</u>

6.    The defendants, Anco Insulations, Inc. and The McCarty Corporation, are domestic corporations with principal places of business located in this Parish. Plaintiff was exposed to products, distributed and installed by the above-referenced defendants at the work sites listed herein. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

7.    Each of the defendants listed in Exhibits "A," contributed with Anco Insulations, Inc. and The McCarty Corporation, to Plaintiff's exposure to asbestos at his work sites, including but not limited to, the exposure sites listed herein. Each of these defendants is liable in solido, with Anco Insulations, Inc. and The McCarty Corporation to the Plaintiff.  Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

8.    Further, the insurance defendants, Commercial Union Insurance Company, The Fidelity and Casualty Company of New York, First State Insurance

2

Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company issued policies of comprehensive general liability insurance to defendants, Eagle, Inc., The McCarty Corporation and/or The J. Graves Insulation Company, Inc. Eagle, Inc., The McCarty Corporation and The J. Graves Insulation Company, Inc. contributed to Plaintiff's exposure at his work sites, including but not limited to, the exposure sites listed herein. As such, the insurance defendants are liable for the damages alleged against Eagle, Inc., The McCarty Corporation and/or The J. Graves Insulation Company, Inc., individually, jointly and *in solido*. In addition, pursuant to the Louisiana Direct Action Statute, L.R.S. 22:1269, venue is proper for these defendants.

## BACKGROUND

9.    During Plaintiff's occupational exposure period, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products set forth below and identified herein:

| Defendant | Asbestos-Containing Products |
|---|---|
| Anco Insulations, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Buffalo Pumps, Inc., successor-in-interest to Buffalo Forge Company | Pumps, gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| CBS Corporation, f/k/a Viacom, Inc., successor by merger with CBS Corporation, f/k/a Westinghouse Electric Corporation | Equipment manufacturer of turbines and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Commercial Union Insurance Company, as insurer of Eagle, Inc. and The McCarty Corporation | *See* Eagle, Inc. and The McCarty Corporation |
| Crane Co., individually and as successor-in-interest to | Equipment manufacturer of industrial and engineered pumps, control valves, quarter turn |

3

910121814003

| | |
|---|---|
| Chapman Valve Co. | valves, mechanical seals and sealing systems |
| Eagle, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Foster Wheeler Energy Corporation | Equipment manufacturer of boilers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Foster Wheeler, LLC | Equipment manufacturer of boilers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Garlock, Inc. | Gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Garlock Sealing Technologies, LLC, individually and as successor-in-interest to Garlock, Inc. | Gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| General Electric Company | Equipment manufacturer of turbines, drives, disconnects, circuit interrupters, brakes, solenoids, busway, circuit breakers, motors, power assemblies, switches, load centers, power breakers, motor control assemblies, metering, panel boards, power outlet panels, relays, starters, controllers, generators, wire, switchboards, switchgear, terminal blocks, transfer switches, transformers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Georgia-Pacific, LLC | Lite acoustical plaster, patching plaster, drywall adhesive, Triple Duty joint compound, Geo Pac joint compound, Speed Set joint compound, Bedding compound, Dry Mixed joint compound, Texture, Central Mix, Spackling compound, Laminating compound Topping compound, All Purpose joint compound and Kalite. |
| The Fidelity and Casualty Company of New York, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company, as insurer of the J. Graves Insulation Company, Inc. | See The J. Graves Insulation Company, Inc. |
| IMO Industries, Inc., | Equipment manufacturer of turbines and such |

4

| | |
|---|---|
| individually and as successor-in-interest to Delaval Steam Turbine Company | other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| The J. Graves Insulation Company, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| The McCarty Corporation | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Union Carbide Corporation | Asbestos fiber and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |

Each of the foregoing asbestos containing products was used at Plaintiff's jobsites listed herein where Plaintiff was exposed to such asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

10.    When inhaled or otherwise ingested, asbestos, shortly after inhalation or ingestion, causes irreparable and progressive damage that can manifest itself as asbestos-related pleural diseases, asbestosis, lung cancer and mesothelioma, and other diseases and injuries.

11.    Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling. Instead of warning the Plaintiff and the general public about these dangers, the defendants ignored or concealed such information, or condoned such concealment. Those defendants who have engaged in concealing the dangers of asbestos are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence and strict liability, identifies other forms of misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

910121614006

12.     In connection with his work at Plaintiff's jobsites listed herein during the exposure period, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos having neither knowledge, nor reason to believe that these materials were dangerous.

13.     As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos while working at the exposure sites listed herein, Plaintiff has received injuries, both physically and mentally, including, without limitation, malignant mesothelioma.

14.     Because of the latency period of the above injuries and other injuries caused by asbestos and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff has only recently, within one year, discovered his injuries.

## COUNT ONE

### NEGLIGENCE
("Defendants" in this count means Anco Insulations, Inc., Buffalo Pumps, Inc., CBS Corporation, Crane Co.,  Eagle, Inc., The J. Graves Insulation Company, Foster Wheeler Energy Corporation, Foster Wheeler, LLC, Garlock, Inc., Garlock Sealing Technologies, LLC, General Electric Company, Georgia-Pacific, LLC, IMO Industries, Inc., Kaiser Gypsum Company, Inc., Leslie Controls, Inc. and Union Carbide Corporation)

15.     The illnesses and disabilities of Plaintiff are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold and/or otherwise put into the stream of commerce asbestos or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some or all of the following respects, among others, same being the proximate cause of Plaintiff's illnesses and disabilities:

(a)     failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos and/or asbestos-containing products;

(b)     failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective

6

equipment and appliances, if any, to protect Plaintiff from being harmed and disabled by exposure to asbestos and/or asbestos-containing products;

(c)     failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, to warn of the dangers to health of coming into contact with said asbestos or asbestos-containing products and/or machinery;

(d)     failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling, installing, and/or using or removing asbestos and/or asbestos-containing products;

(e)     failing to develop and/or use a substitute material to eliminate asbestos fibers in the asbestos-containing products;

(f)     failing to properly design and manufacture asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)     failing to properly test asbestos-containing products before they were released for consumer use; and

(h)     failing to recall and/or remove from the stream of commerce said asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products.

## COUNT TWO

### STRICT LIABILITY
("Defendants" in this count means Anco Insulations, Inc., Buffalo Pumps, Inc., CBS Corporation, Crane Co., Eagle, Inc., The J. Graves Insulation Company, Foster Wheeler Energy Corporation, Foster Wheeler, LLC, Garlock, Inc., Garlock Sealing Technologies, LLC, General Electric Company, Georgia-Pacific, LLC, IMO Industries, Inc., Kaiser Gypsum Company, Inc., Leslie Controls, Inc. and Union Carbide Corporation)

16.     All of the allegations contained in the previous paragraphs are realleged herein.

17.     Plaintiff was exposed to asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest

7

for use as construction materials and/or machinery in industrial operations. The defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products were in this defective condition at the time they left the hands of Defendants. Further, said products were unreasonably dangerous per se, unreasonably dangerous due to Defendants' failure to warn, and unreasonably dangerous due to a design defect.

18.     The Defendants are engaged in the business of selling asbestos-containing products, and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of Plaintiff.

19.     Defendants knew that these asbestos-containing products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation, installation, operation, maintenance and/or repair of the asbestos-containing products.

20.     Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for purposes of manipulation and/or installation.

21.     During the periods that Plaintiff was exposed to the Defendants' asbestos-containing products, these asbestos-containing products were being used in a manner which was intended and/or reasonably foreseeable by Defendants.

## COUNT THREE

### NEGLIGENCE AGAINST MANUFACTURER AND/OR EQUIPMENT DEFENDANTS
("Defendants" in this count means Buffalo Pumps, Inc., CBS Corporation, Crane Co., Foster Wheeler Energy Corporation, Foster Wheeler, LLC, General Electric Company, IMO Industries, Inc. and Leslie Controls, Inc.)

22.     Petitioner alleges that he was exposed to asbestos fibers emanating from asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products. Each Defendant corporation or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, sale, and distribution of asbestos or asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products.

8

Petitioner would show that he has been exposed, on numerous occasions, to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products produced and sold by Defendants and, in so doing, has inhaled great quantities of asbestos fibers. Further, Petitioner alleges, as more specifically set out below, that Petitioner has suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants. In that each exposure to such products caused or contributed to Petitioner's injuries, Petitioner says that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

23. Petitioner was exposed to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products that were manufactured, designed and distributed by the Defendants and their predecessors-in-interest for use as construction materials or machinery in industrial operations. Petitioner would show that the defective design and condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products and machinery were in this defective condition at the time they were designed by or left the hands of Defendants. Petitioner would show that Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products. Petitioner would show that this market defect rendered such products and machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Defendants. Petitioner would show that Defendants are liable in product liability including, but not limited to, strict product liability for the above-described defects.

24. The Defendants are or were engaged in the business of selling, manufacturing, producing, designing, and otherwise putting into the stream of commerce asbestos-containing products and machinery requiring or calling for asbestos

9

or asbestos-containing products, and these asbestos-containing products and machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed and otherwise put into the stream of commerce were a proximate and producing cause of the injuries of Petitioner.

25.     Defendants knew that these asbestos-containing products and machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation or installation of the asbestos-containing products or operation, maintenance and repair of the machinery requiring or calling for the use of asbestos and asbestos-containing products.

26.     Petitioner was unaware of the hazards and defects in the asbestos-containing products of the Defendants, which made them unsafe for purposes of manipulation or installation.  Similarly, Petitioner was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and asbestos-containing materials.

27.     During the periods that Petitioner was exposed to the asbestos-containing products and machinery of the Defendants, these asbestos-containing products and machinery were being utilized in a manner, which was intended by Defendants.

28.     The illness and disabilities of Petitioner are a direct and proximate result of the negligence of each Defendant and its predecessor-in-interest in that said entities produced, designed, sold, and otherwise put into the stream of commerce, asbestos, asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Petitioner's health and well-being.  Defendants created hazardous and deadly conditions to which Petitioner was exposed and which caused Petitioner to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some, or all of the following respects, among others, same being the proximate cause of Petitioner's illness and disabilities:

a.     in failing to timely and adequately warn Petitioner of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products;

b.     in failing to provide Petitioner with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Petitioner from being harmed and disabled by exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products;

c.     in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, or machinery requiring or calling for the use of asbestos and asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and machinery;

d.     in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and safe method of handling and installing asbestos and asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and asbestos-containing products in a safe manner;

e.     in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products, or the machinery requiring or calling for the use of asbestos and asbestos-containing products;

f.     in failing to properly design and manufacture asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

g.   in failing to properly test said asbestos-containing products and machinery before they were released for consumer use; and

h.   in failing to recall or remove from the stream of commerce said asbestos-containing products and machinery or machinery requiring or calling for the use of asbestos and asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products and machinery.

29.   Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave.   Petitioner also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a Defendant committed at the direction of an officer of the United States Government.   Petitioner's allegations against equipment defendants are expressly limited to causes of action or recovery for injuries caused by exposure to asbestos from land-based equipment only.

<u>COUNT FOUR</u>

### NEGLIGENCE AND STRICT LIABILITY
### AGAINST THE CONTRACTOR DEFENDANTS
("Defendants" in this count means Anco Insulations, Inc., Commercial Union Insurance Company, as insurer for Eagle, Inc. and The McCarty Corporation, Eagle, Inc., Fitzgerald Contractors, LLC, f/k/a Fitzgerald Plumbing and Heating Company, Inc., Hamm Enterprises, Inc., f/k/a Berg Mechanical, Inc., The J. Graves Company and its insurers, The Fidelity and Casualty Company, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation,  Scottsdale Insurance Company, United States Fidelity and Guaranty, and Zurich American Insurance Company, a/k/a Zurich Insurance Company, and The McCarty Corporation )

30.   The Defendants contracted at the jobsites identified herein to perform certain activities at those jobsites prior to and/or during each Plaintiff's exposure period at each such jobsites.

31.   The activities conducted by the Defendants and/or their subcontractors, included, but were not limited to, the application, demolition, displacement, disturbance, fabrication, installation, purchase, removal, repair, replacement, tearing out, and use of asbestos-containing products at, on and/or for the jobsites identified herein.

32.     The foregoing activities resulted in the release of substantial quantities of asbestos dust into the work environment.

33.     Plaintiff was exposed to and inhaled substantial quantities of asbestos dust as a direct and proximate result of the activities of the Contractor Defendants and their subcontractors.

34.     The Contractor Defendants negligently performed and/or permitted their subcontractors to negligently perform the foregoing activities in the following non-exclusive particulars:

(a)     By creating a work environment laden with asbestos dust and an unhealthy and unsafe place for Plaintiff to work;

(b)     By failing to provide warnings, or adequate warnings, to Plaintiff of the dangers and risks posed by the asbestos in the atmosphere in which Plaintiff worked; of the need for correct, adequate, and/or appropriate safety equipment; of critical medical and safety information regarding asbestos hazards in general and of hazards at the jobsites in particular; and of the hazards created by Defendants' activities;

(c)     By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly asbestos;

(d)     By failing to apprise Plaintiff of the need for periodic medical examinations as a result of Plaintiff's exposure to asbestos created by Defendants' activities;

(e)     By failing to ventilate and/or properly ventilate the areas in which Plaintiff performed activities, or otherwise provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

(f)     By failing to clean up and/or properly clean up the asbestos dust created by Plaintiff's activities;

(g)     By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as

13

Plaintiff, who came into contact with asbestos dust as a result of Plaintiff's activities;

(h)   By recklessly concealing from Plaintiff and negligently failing to provide critical medical and safety information to Plaintiff regarding the safety and health risks associated with the asbestos and asbestos-containing products;

(i)   By failing to adopt and/or failing to enforce safety rules after such rules were actually adopted;

(j)   By failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, occupational exposure to asbestos;

(k)   By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

(l)   By failing to supervise their operations and the operations of their subcontractors;

(m)   By commencing and continuing operations, which were under their control and supervision when they knew or should have known that such operations would cause Plaintiff and co-employees to be exposed to asbestos, without protection, on a daily basis;

(n)   By failing to timely, adequately and safely remove asbestos hazards from the workplace;

(o)   By failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited to, those regulations promulgated by the U. S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety and Health Act);

(p)   By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Defendants knew, or in the exercise of reasonable diligence should have known, were

14

unreasonably dangerous, or unreasonably dangerous per se;

(q)    By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with the their activities;

(r)    By failing to test or adequately test the materials with which they were working to determine the presence of asbestos;

(s)    By failing to purchase products and materials that did not contain asbestos;

(t)    By purchasing, using, applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that contained asbestos;

(u)    By failing to properly label products that they purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and tore out as containing asbestos; and

(v)    By conducting their activities through such other negligent acts or omissions, as may be revealed in discovery and/or proven at trial.

35.    The negligent acts outlined above were a substantial contributing factor in Plaintiff's exposure to dangerous and hazardous levels of asbestos, and resultant damages.

36.    The foregoing negligent acts of the Contractor Defendants were a cause-in-fact and proximate cause of the Plaintiff's injuries and damages.

37.    Additionally, the Contractor Defendants are liable for the acts of their subcontractors under the doctrine of *respondeat superior* and Louisiana Civil Code article 2320.

38.    Additionally and alternatively, the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants were in the care, custody and control of the Contractor Defendants, jointly with the premise defendants, were unreasonably dangerous due to the presence of asbestos, and were a proximate cause and cause-in-fact of the Plaintiff's injuries.  Therefore, the Contractor

15

Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

39.     Additionally, when such contractors did not employ Plaintiff, Plaintiff was exposed to the asbestos containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants that were in the care, custody and control of the Contractor Defendants and were unreasonably dangerous due to the presence of asbestos.

## COUNT FIVE

### NEGLIGENCE AND STRICT LIABILITY
### OF PLAINTIFF'S EMPLOYERS
("Defendants" in this count means Fitzgerald Contractors, LLC, f/k/a Fitzgerald Plumbing and Heating Company, Inc., and Hamm Enterprises, Inc., f/k/a Berg Mechanical, Inc.)

40.     Plaintiff alleges negligent conduct and misconduct on behalf of Plaintiff's employers in failing to provide and/or ensure a safe workplace for their employees, free of hazardous concentrations of asbestos and asbestos-containing dust.

41.     At various times, Plaintiff was employed by the Employer Defendants and during such time was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by Defendants.

42.     The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest undertook and assumed the duties and responsibilities owed individually for providing Plaintiff with a safe place to work and Defendants negligently failed to provide Plaintiff a safe place to work.

43.     Each of the Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently hiring, delegating, training, administering, supervising and performing duties owed individually and/or delegated to them,  or failing to hire, delegate, train, administer, supervise or perform their duties owed individually and/or delegated to them directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Plaintiff.  The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one,

16

(o)     in failing to properly implement control measures to reduce or eliminate

harmful agents in the work place, including asbestos; and

(p)     in failing to properly train, educate and/or warn the plaintiff of the

dangers of asbestos.

44.     The negligence of Plaintiff's employers was a substantial factor and

contributed in causing Plaintiff, Alton Lewis, to contract malignant mesothelioma.

45.     Additionally and alternatively, the asbestos-containing products that were

purchased, used, applied, demolished, displaced, disturbed, fabricated, installed,

removed, repaired, replaced, and torn out by the Employer Defendants were in the care,

custody and control of the Employer Defendants, jointly with the premise defendants,

were unreasonably dangerous due to the presence of asbestos, and were a proximate

cause and cause-in-fact of the Plaintiff's injuries.   Therefore, the Employer Defendants

are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

46.     Plaintiff disclaim any cause of action or recovery for any injuries caused

by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also

disclaim any cause of action or recovery for any injuries resulting from any exposure to

asbestos dust caused by any acts or omissions of a party committed at the direction of

an officer of the United States Government.

<u>COUNT SIX</u>

NEGLIGENCE AND STRICT PREMISE LIABILITY
(" Defendants" in this case means Atlas Refinery, Inc., International Paper Company,
individually and as successor-in-interest to Champion Paper Corporation, Libby, Inc,
Penzoil-Quaker State Company, as successor by merger to Penzoil Products
Company, successor to Atlas Refinery, Inc., and Weyerhauser Company, individually
and as successor-in-interest to Willamette Industries, Inc.)

47.     Plaintiff was exposed to asbestos and asbestos-containing materials while

working at the jobsites identified herein. The premise defendants at all times relevant to

this complaint, have been either the operator and/or the manager and/or the owner

and occupier of its respective facilities and in custody of the facilities during the

relevant time period.   The facilities were defective in that the asbestos and asbestos-

containing materials in the facilities created an unreasonable risk of harm to the Plaintiff

and other persons on the premises.   Plaintiff was exposed to asbestos and asbestos-

some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

(a)     in failing to provide adequate safety equipment;

(b)     in failing to protect Plaintiff from any asbestos exposure;

(c)     in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

(d)     in failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products;

(e)     in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff 's exposure to asbestos dust;

(f)     in failing to properly perform safety inspections of the Plaintiff's work place;

(g)     in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of asbestos at Plaintiff's work sites;

(h)     in failing to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

(i)     in failing to properly perform or direct the removal and abatement of asbestos in place at Plaintiff's work sites; and

(j)     in negligently failing to disclose, warn or reveal medical and safety information to Plaintiff regarding the hazards of asbestos.

(k)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(l)     in failing to evaluate the work place;

(m)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(n)     in failing to properly evaluate the work place;

17

containing materials while he was an invitee at the premise defendants' facilities. The defective condition of the facilities was a proximate cause of the Plaintiff contracting malignant mesothelioma. Therefore, the Premise Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

48.    Each of the Premise Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently hiring, delegating, training, administering, supervising and performing duties owed individually and/or delegated to them, or failing to hire, delegate, train, administer, supervise or perform their duties owed individually and/or delegated to them directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Plaintiff. The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

(a)    in failing to provide adequate safety equipment;

(b)    in failing to protect Plaintiff from any asbestos exposure;

(c)    in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

(d)    in failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products;

(e)    in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff 's exposure to asbestos dust;

(f)    in failing to properly perform safety inspections of the Plaintiff's work place;

(g)    in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of asbestos at Plaintiff's work sites;

19

(h)     in failing to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

(i)     in failing to properly perform or direct the removal and abatement of asbestos in place at Plaintiff's work sites; and

(j)     in negligently failing to disclose, warn or reveal medical and safety information to Plaintiff regarding the hazards of asbestos.

(k)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(l)     in failing to evaluate the work place;

(m)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(n)     in failing to properly evaluate the work place;

(o)     in failing to properly implement control measures to reduce or eliminate harmful agents in the work place, including asbestos; and

(p)     in failing to properly train, educate and/or warn the plaintiff of the dangers of asbestos.

49.     The Premise Defendants are liable to Plaintiff for its failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with exposure to asbestos.  The Premise Defendants, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees.  The Premise Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm.  The Premise Defendants' failure to protect Plaintiff, from known and/or foreseeable dangers constitutes negligence.  Said negligence was a proximate cause of Plaintiff, Alton Lewis, contracting malignant mesothelioma.

50.     Plaintiffs disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from any exposure to

20

asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

COUNT SEVEN

**INSURANCE ALLEGATIONS**

51.     Plaintiff avers that Commercial Union Insurance Company issued policies of comprehensive general liability insurance to Eagle, Inc. and The McCarty Corporation that provided coverage for the causes of action asserted by plaintiff against Eagle, Inc. and The McCarty Corporation. As such, Commercial Union Insurance Company is liable for the damages alleged against Eagle, Inc. and The McCarty Corporation, individually, jointly and *in solido.*

52.     Plaintiff avers that The Fidelity and Casualty Company of New York, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation,  Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc. that provided coverage for the causes of action asserted by plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York, First State Insurance company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company are liable for the damages alleged against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

COUNT EIGHT

**JOINT AND SOLIDARY LIABILITY**

53.     All of the allegations contained in the previous paragraphs are realleged herein.

21

54.     Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

55.     The actions of each of the Defendants are a proximate cause of Plaintiff's injuries.   As a result, all Defendants are jointly and solidarily liable for the damage caused by their combined actions.

## DAMAGES

56.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease and other related physical conditions of Plaintiff.  Plaintiff has been damaged in the following non-exclusive particulars:

(a)     Plaintiff has suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout his lifetime;

(b)     Plaintiff has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the progressively disabling character of asbestos-related lung disease and other related physical conditions from which he now suffers and will continue to suffer in the future;

(c)     Plaintiff suffers a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of asbestos-related lung disease and other related physical conditions;

(d)     Plaintiff suffers a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of asbestos-related lung disease and other related physical conditions;

(e)     Plaintiff is subject to increased progression of his cancer all due to his exposure to asbestos by the named Defendants;

(f)     Plaintiff requires or will require domestic help and nursing care due to his disabilities and has been or will be required to pay for such domestic help and nursing services;

22

(g)     Prior to the onset of his symptoms, Plaintiff was extremely active and
        participated in numerous hobbies and activities, and as a result of his
        illness, Plaintiff has been and will be prevented from engaging in some of
        said activities which were normal to him prior to developing symptoms
        from asbestos-related lung disease.  Plaintiff has been and will otherwise
        be prevented from participating in and enjoying the benefits of a full and
        complete life; and

57.     Plaintiff filed suit within one (1) year of the date of discovering Plaintiff's
asbestos-related conditions or the existence of any asbestos-related causes of action.

        WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against
the Defendants, and each of them, jointly and severally, for general damages, special
damages, for their costs expended herein, for prejudgment interest from the date of
Plaintiff's filing of the lawsuit and post judgment interest on the judgment at the rate
allowed by law, and for such other and further relief, both at law and in equity, to
which Plaintiff may show themselves justly entitled.

                                Respectfully submitted,

                                WADDELL LAW FIRM, LLC

                        By: _____
                                Cameron R. Waddell (Bar No. 24245)
                                8708 Jefferson Hwy., Suite A
                                Baton Rouge, LA  70809
                                Telephone: (225) 636-5639
                                Facsimile: (225) 636-5209

                                and

                                ANDERMAN LAW FIRM, LLC
                                Jody E. Anderman (Bar No. 18764)
                                8708 Jefferson Hwy., Ste. A
                                Baton Rouge, LA  70809
                                Telephone: (225) 612-8450

                                Counsel for plaintiff

CERTIFIED TRUE COPY

930130

DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT COURT
EAST BATON ROUGE PARISH, LA
FILED

2009 OCT -5  AM 9: 12

DOUG WELBORN
CLERK OF COURT E R R PARISH

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

CIVIL

| | |
|---|---|
| ☐ 01-DAMAGES | ☐ 11-COMM. PROP. PARTITIONS |
| ☐ 02-CONTRACT | ☐ 12-PUBLIC SERV. COMM. |
| ☐ 03-PRISONER SUIT | ☐ 13-OTHER PARTITIONS |
| ☐ 04-EXECUTORY PROCESS | ☐ 14-OTHER |
| ☐ 05-SUIT ON NOTES | ☐ 15-D.E.Q. |
| ☐ 06-EVICTION | ☐ 16- |
| ☐ 07-WORKMENS COMPENSATION | ☐ 17- |
| ☐ 08-JUDICIAL REVIEW | ☐ 18 |
| ☐ 09-PROPERTY RIGHTS | ☐ |
| ☐ 10-INJUNCTION | ☐ |

23

910121615000

## EXHIBIT "A"

1.  **ATLAS REFINERY, INC.**
    May be served through its registered agent for service of process, CT
    Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

2.  **ANCO INSULATION, INC,**
    A domestic corporation duly organized, created and existing under and by virtue
    of the laws of the state of Louisiana, with its principal place of business in Baton
    Rouge, Louisiana and with an agent for service, to-wit: Thomas E. Balhoff, 8440
    Jefferson Highway, Suite 301, Baton Rouge, LA 70809

3.  **BUFFALO PUMPS, INC.**
    **(individually and as successor-in-interest to BUFFALO FORGE COMPANY)**
    A New York corporation with its principal place of business in the state of New
    York, may be served **through the Louisiana Long Arm Statute pursuant Article
    1261(3) to-wit:** 874 Oliver Street, North Tonawanda, NY 14120-3298.

4.  **CBS CORPORATION**
    **(f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a
    WESTINGHOUSE ELECTRIC CORPORATION)**
    May be served through its registered agent for service of process, CT
    Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

5.  **COMMERCIAL UNION INSURANCE COMPANY**
    **(as insurer for Eagle, Inc., f/k/a Eagle Asbestos & Packing Co., Inc. and The
    McCarty Corporation)**
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    A company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

6.  **CRANE CO.**
    (individually and as successor-in-interest to CHAPMAN VALVE CO.)
    May be served through its registered agent for service of process, CT
    Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

7.  **EAGLE, INC.**
    (Formerly Eagle Asbestos & Packing Co., Inc.)
    a corporation duly organized, created and existing under and by virtue of the
    laws of the state of Louisiana, with its principal place of business in New
    Orleans, Louisiana and with an agent for service in the state of Louisiana, to-wit:
    Susan B. Kohn, 1100 Poydras Street, 30th Floor, New Orleans, LA 70163

8.  **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**
    (as insurer of The J. Graves Insulation Company, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    A company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

9.  **FIRST STATE INSURANCE COMPANY**
    (as insurer of The J. Graves Insulation Company, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    A company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

10. **FITZGERALD CONTRACTORS, L.L.C.**
    (f/k/a FITZGERALD PLUMBING AND HEATING COMPANY, INC.)
    May be served through its registered agent for service of process, William C.
    Kalmach, 333 Texas Street, Suite 1700, Shreveport, LA 71101.

11.  **FOSTER WHEELER ENERGY CORPORATION**
     May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

12.  **FOSTER WHEELER, LLC**
     May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

13.  **GARLOCK, INC.**
     May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

14.  **GARLOCK SEALING TECHNOLOGIES, LLC**
     (individually and as successor-in-interest to GARLOCK, INC.)
     May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

15.  **GENERAL ELECTRIC COMPANY**
     May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

16.  **GEORGIA-PACIFIC, LLC**
     (individually and successor-in-interest to BESTWALL GYPSUM COMPANY)
     May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

17.  **HAMM ENTERPRISES, INC.**
     (f/k/a BERG MECHANICAL, INC.)
     May be served through its registered agent for service of process, Robert B. Hamm, 531 West 61st Street, Shreveport, LA 71108.

18.  **HIGHLANDS INSURANCE COMPANIES**
     (as insurer for The J. Graves Insulation Company, Inc.)
     (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
     A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

19.  **IMO INDUSTRIES, INC.**
     (individually and as successor-in-interest to DELAVAL STEAM TURBINE COMMPANY)
     May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129.

20.  **INTERNATIONAL PAPER COMPANY**
     (individually and as successor-in-interest to CHAMPION PAPER CORPORATION)
     May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

21.  **THE J. GRAVES INSULATION COMPANY**
     (f/k/a GRAVES-ABER INSULATION COMPANY, INC.)
     May be served through its registered agent for service of process, Eddie T. Scott, 3592 Sligo Road, Haughton, LA 71037.

22.  **KAISER GYPSUM COMPANY, INC.**
     May be served through its registered agent for service of process, Corporation Service Company, 6500 Harbour Heights Pkwy, Mukiteo, WA 98275. This

23.  **LESLIE CONTROLS, INC.**
A Florida corporation with its principal place of business in the state of Florida, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 12501 Telecom Drive, Tampa, FL 33637.

24.  **LIBBY, INC.**
An Ohio corporation with its principal place of business in the state of Ohio, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 300 Madison Avenue, Toledo, OH 43604.

25.  **THE MCCARTY CORPORATION**
**(f/k/a MCCARTY-BRANTON, INC.)**
May be served through its registered agent for service of process, Paul H. Spaht, 445 North Blvd., Suite 300, Baton Rouge, LA 70802.

26.  **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

27.  **NUTMEG INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

28.  **PENZOIL-QUAKER STATE COMPANY**
(as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to ATLAS REFINERY, INC.)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

29.  **SAFETY MUTUAL CASUALTY CORPORATION n/k/a SAFETY NATIONAL CASUALTY CORPORATION**
(as insurer of The Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

30.  **SCOTTSDALE INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

31.  **UNION CARBIDE CORPORATION**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

32.  **UNITED STATES FIDELITY AND GUARANTY**
(as insurer of The J. Graves Insulation, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

26

910121615003

33. **WEYERHAUSER COMPANY**
(individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
A Washington corporation with its principal place of business in the state of
Washington, and may be served **through the Louisiana Long Arm Statute
pursuant Article 1261(3) to-wit:** 33663 Weyerhauser Way South, Federal Way,
WA 98063-9777.

34. **ZURICH AMERICAN INSURANCE COMPANY a/k/a and/or f/k/a ZURICH
INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and
who may be served through the Louisiana Secretary of State.

PLEASE SERVE THE FOLLOWING DEFENDANTS
WITH A COPY PLAINTIFF'S PETITION FOR
DAMAGES & MOTION FOR LEAVE TO PERPETUATE
TRIAL TESTIMONY:

1.   **ATLAS REFINERY, INC.**
     Through its agent for service of process:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808.

2.   **ANCO INSULATION, INC.**
     Through its agent for service of process:
     Thomas E. Balhoff
     8440 Jefferson Highway
     Suite 301
     Baton Rouge, LA 70809.

3.   **BUFFALO PUMPS, INC.**
     **(individually and as successor-in-interest to BUFFALO FORGE    COMPANY)**
     (may be served **through the Louisiana Long Arm Statute pursuant Article
     1261(3)**)
     874 Oliver Street
     North Tonawanda, NY 14120-3298.

4.   **CBS CORPORATION**
     **(f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a
     WESTINGHOUSE ELECTRIC CORPORATION)**
     Through its agent for service of process:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808.

5.   **COMMERCIAL UNION INSURANCE COMPANY**
     (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS & PACKING and THE
     MCCARTY CORPORATION)
     (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
     Through the Louisiana Secretary of State
     8549 United Plaza Boulevard
     Baton Rouge, LA 70809.

6.   **CRANE CO.**
     (individually and as successor-in-interest to CHAPMAN VALVE CO.)
     Through its agent for service of process:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808.

7.   **EAGLE, INC.**
     (Formerly Eagle Asbestos & Packing Co., Inc.)
     Through its agent for service of process:
     Susan B. Kohn
     1100 Poydras Street, 30th Floor
     New Orleans, LA 70163.

8.   **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**
     (as insurer of The J. Graves Insulation Company, Inc.)
     (For Service of Process via the Direct Action Statute L.R.S. 22:1269)

28

Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

9. **FIRST STATE INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

10. **FITZGERALD CONTRACTORS, L.L.C.**
(f/k/a FITZGERALD PLUMBING AND HEATING COMPANY, INC.)
Through its agent for service of process:
William C. Kalmach
333 Texas Street, Suite 1700
Shreveport, LA 71101.

11. **FOSTER WHEELER ENERGY CORPORATION**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

12. **FOSTER WHEELER, LLC**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

13. **GARLOCK, INC.**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

14. **GARLOCK SEALING TECHNOLOGIES, LLC**
(individually and as successor-in-interest to GARLOCK, INC.)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

15. **GENERAL ELECTRIC COMPANY**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

16. **GEORGIA-PACIFIC, LLC**
(individually and successor-in-interest to BESTWALL GYPSUM COMPANY)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

17. **HAMM ENTERPRISES, INC.**
(f/k/a BERG MECHANICAL, INC.)
Through its agent for service of process:
Robert B. Hamm
531 West 61st Street
Shreveport, LA 71108.

18. **HIGHLANDS INSURANCE COMPANIES**
(as insurer for The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

19. **IMO INDUSTRIES, INC.**
(individually and as successor-in-interest to DELAVAL STEAM TURBINE
COMMPANY)
Through its agent for service of process:
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802.

20. **INTERNATIONAL PAPER COMPANY**
(individually and as successor-in-interest to CHAMPION PAPER
CORPORATION)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

21. **THE J. GRAVES INSULATION COMPANY**
(f/k/a GRAVES-ABER INSULATION COMPANY, INC.)
Through its agent for service of process:
Eddie T. Scott
3592 Sligo Road
Haughton, LA 71037.

22. **KAISER GYPSUM COMPANY, INC.**
(may be served **through the Louisiana Long Arm Statute** pursuant **Article
1261(3)**)
Corporation Service Company
6500 Harbour Heights Pkwy
Mukiteo, WA 98275.

23. **LESLIE CONTROLS, INC.**
(may be served **through the Louisiana Long Arm Statute** pursuant **Article
1261(3)**)
12501 Telecom Drive
Tampa, FL 33637.

24. **LIBBY, INC.**
(may be served **through the Louisiana Long Arm Statute** pursuant **Article
1261(3)**)
300 Madison Avenue
Toledo, OH 43604.

25. **THE MCCARTY CORPORATION**
Through its agent for service of process:
Paul H. Spaht
445 North Boulevard, Ste. 300
Baton Rouge, LA  70802.

26. **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

27. **NUTMEG INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

28. **PENZOIL-QUAKER STATE COMPANY**
(as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to
ATLAS REFINERY, INC.)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

29. **SAFETY MUTUAL CASUALTY CORPORATION n/k/a SAFETY NATIONAL
CASUALTY CORPORATION**
(as insurer of The Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

30. **SCOTTSDALE INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

31. UNION CARBIDE CORPORATION
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA  70808.

32. **UNITED STATES FIDELITY AND GUARANTY**
(as insurer of The J. Graves Insulation, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

33.    **WEYERHAUSER COMPANY**
       (individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
       (may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3)**)
       33663 Weyerhauser Way South
       Federal Way, WA  98063-9777.

34.    **ZURICH AMERICAN INSURANCE COMPANY a/k/a and/or f/k/a ZURICH INSURANCE COMPANY**
       (as insurer of The J. Graves Insulation Company, Inc.)
       (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
       Through the Louisiana Secretary of State
       8549 United Plaza Boulevard
       Baton Rouge, LA 70809.

**waters**kraus

PLEASE RESPOND TO THE DALLAS OFFICE

November 18, 2009

VIA FASCIMILE #225-389-3392
Doug Welborn – Clerk of Court
Suit Accounting Department
Governmental Building
P.O. Box 1991
Baton Rouge, LA 70802

Re:   Alton Lewis vs. Atlas Refinery, Inc., et al; Cause No. 583178; 19th
      Judicial District Court for the Parish of East Baton Rouge; State of
      Louisiana
      **Client Matter #09-0443**

Dear Mr. Welborn:

   Attached hereto please find Plaintiffs' Motion to Dismiss Without Prejudice
to **fax-file** in the aforementioned matter. Please file this facsimile. Plaintiffs will
over-night a hard copy original as well as the appropriate fees.

   By copy of this letter, a copy of Plaintiffs' Motion to Dismiss Without
Prejudice is being sent to all counsel of record via fascimile.

   Thank you for your assistance in this matter. Should you have any questions
or need additional information, please do not hesitate to call.

Sincerely,

Susannah B. Chester

SBC/kd
Attachment

cc/attachment:   Stacy Strain (Buffalo Pumps) Via Facsimile #601-355-5850
                 All Counsel of Record (attached)
                 Cameron Waddell

**PARTNERS**

C. Andrew Waters (CA, PA, MO, TX)
Peter A. Kraus (TX, NY)
Charles S. Siegel (TX)
Tracey G. Wolf (NY, TX)
Michael L. Armitage (CA, LA)
D. Scott Kidd (TX)
Leslie C. MacLean (TX)
Charles E. Valles (TX, TX)
Paul C. Cook (TX)
Gary M. Paul (CA)
Michelle Wilkinson (TX)
Kyla Gail Cole (TX)
John S. Janofsky (CA, PA)
Michael B. Gurien (CA)
Scott L. Frost (CA, PA, NJ, NY, TX)

**ASSOCIATES**

Greg W. Litorsky (TX)
Loren Jacobson (NY, TX)
Jay Spelling (TX)
Kevin M. Loew (CA)
Julie L. Odom (TX)
Gladly N. Ricketts (CA)
Benno Ashrafi (CA)
Matt Ganas (CA)
Demetrica T. Zachoropoulos (CA)
Jacqueline G. Badders (NY)
Savannah B. Chester (TX)
Jilisa M. Rice (CA)
Cindy Young (CA)
Brett Zadorozny (TX)
Melanie J. Glover (CA, MO, NY, TX)
Githa C. Henderson (TX)
Tae Kim (CA)
Carla B. Waters (CA)
Laurel Halbany (CA)
Sandeep Palid (CA)
Robert S. Brown (TX)
Katherine Harvey-Lee (CA)
Mark Linder (TX)
Ari Friedman (CA)
Katheline H. Williams (CA, TX)
Jason Marks (CA)

**OF COUNSEL**

Kevin L. Oliver (TX)
William Galerston (IL, TX)
Randall L. Iola (CA, NY, TX)
George G. Tankard III (DC, VA, MD, PA, TX)
Ingrid Evans (CA, NV, NM)

WATERS & KRAUS, LLP ATTORNEYS AND COUNSELORS
DALLAS: 3219 McKINNEY AVENUE DALLAS, TEXAS 75204  TEL 214 357 6244  FAX 214 357 7252
BALTIMORE: 315 NORTH CHARLES STREET BALTIMORE, MARYLAND 21201  TEL 410 528 1153  FAX 410 528 1006
SAN FRANCISCO: 601 VAN NESS AVENUE SUITE 2280 SAN FRANCISCO, CALIFORNIA 94102  TEL 800 226 9880  FAX 214 777 0470
LOS ANGELES: 222 NORTH SEPULVEDA BOULEVARD SUITE 1900 EL SEGUNDO, CALIFORNIA 90245  TEL 310 414 8146  FAX 310 414 8156

**EXHIBIT**
**2**

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178          SECTION 24          DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____

_____
DEPUTY CLERK

## MOTION TO DISMISS WITHOUT PREJUDICE

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Alton Lewis, who moves this Court for an order dismissing any and all claims of Alton Lewis, including derivative claims, against Buffalo Pumps, Inc. (sued individually and as successor-in-interest to Buffalo Forge Company), without prejudice, with each party bearing its own costs, specifically reserving to Plaintiff all rights to prosecute claims and/or actions against all solidary obligors, as well as all parties and/or persons and/or entities not otherwise dismissed herein. Plaintiff's claims against all other Defendants remain in full force and effect, pursuant to this Court's orders and judgments.

Respectfully submitted,
WATERS & KRAUS, LLP

_____
SUSANNAH B. CHESTER
TX Bar No. 24056878
*Pro Hac Admission Pending Approval*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

WADDELL LAW FIRM
CAMERON R. WADDELL
Louisiana Bar No. 24245
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: 225-636-5639
Facsimile: 225-636-5209

COUNSEL FOR PLAINTIFF

Motion to Dismiss Without Prejudice—Page 1
Q:\Asbestos\Out-of-State Cases\Louisiana\Lewis, Alton\Motions & Responses\Motion to Dismiss - Buffalo Pumps.docx

CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the Motion to Dismiss Without Prejudice has been served on all counsel of record via facsimile on this the 18th day of November, 2009.

_Susannah B. Chester_
SUSANNAH B. CHESTER

Motion to Dismiss Without Prejudice – Page 2
Q:\Asbestos\Out-of-State Cases\Louisiana\Lewis, Alton\Motions & Response\Motion to Dismiss - Buffalo Pumps.docx

Fax Server          11/18/2009 9:09:28 AM   PAGE 5/014   Fax Server

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                 SECTION 24              DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                            DEPUTY CLERK

**ORDER**

CONSIDERING the foregoing Motion to Dismiss Without Prejudice;

IT IS ORDERED that any and all claims asserted by plaintiff, Alton Lewis, including derivative claims, against Buffalo Pumps, Inc. (sued individually and as successor-in-interest to Buffalo Forge Company), in the above-captioned and entitled cause, be and they are hereby dismissed without prejudice, with each party to bear its own costs. Plaintiff's claims against all other Defendants remain in full force and effect pursuant to this Court's orders and judgments.

BATON ROUGE, LOUISIANA this _____ day of _____, 2009.

                                   _____
                                        DISTRICT COURT JUDGE

Motion to Dismiss Without Prejudice - Page 3
Q:\Asbestos\Out-of-State Cases\Louisiana\Lewis, Alton\Motions & Responses\Motion to Dismiss - Buffalo Pumps.docx

19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24 **POSTED**          DIVISION 24

ALTON LEWIS   DEC 03 2010

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____

                                          **DEPUTY CLERK**

### MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT

**NOW INTO COURT,** through undersigned counsel, come Plaintiffs who respectfully move this Honorable Court for leave to file the attached Fourth Amended Petition for Damages, which adds Air & Liquid Systems Corporation, as Successor by Merger to Buffalo Pumps, Inc. (hereinafter, ("Buffalo Pumps"); and Warren Pumps LLC (hereinafter, "Warren") as defendants to the above-referenced matter.   Recent depositions given by the co-workers of Alton Lewis ("Lewis") confirmed that Lewis worked on and around asbestos-laden pumps while onboard the USS Henderson, and the ship's records reveal that some of those pumps were made by Buffalo Pumps and Warren.  Accordingly, Plaintiffs seek to add those parties to the lawsuit.

**WHEREFORE,** Plaintiffs respectfully request that the Court grant them leave to amend their petition and file their Fourth Amended Petition for Damages, attached hereto as Exhibit "A."

Respectfully submitted,

**WATERS & KRAUS, LLP**

*Susannah Chester*

**SUSANNAH B. CHESTER**
TX Bar No. 24056878
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

CERTIFIED TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

REC'D C.P.
DEC 06 2010

REC'D C.P.
DEC 21 2010

REC'D C.P.
DEC 06 2010

PLAINTIFF'S MOTION FOR LEAVE ___ AMENDED PETITION FOR DAMAGES AND INCORPORATED ME___  Page 1

**EXHIBIT**
**3 - Pet 1**

**WADDELL LAW FIRM**
**CAMERON R. WADDELL**
Louisiana Bar No. 24245
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: 225-636-5639
Facsimile: 225-636-5209

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via e-mail on this the 30 day of November, 2010.

**SUSANNAH B. CHESTER**

**PLAINTIFF'S MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT – Page 2**

## O R D E R

Let the above and foregoing FOURTH SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES be filed as prayed for.

IT IS SO ORDERED.

BATON ROUGE, LOUISIANA, this _17_ day of December, 2010.

_____
JUDGE – 19TH JUDICIAL DISTRICT COURT
AD Hoc

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

FILED

DEC 01 2010

DEPUTY CLERK OF COURT

**ALTON LEWIS**

**VERSUS**

**ATLAS REFINERY, INC., ET AL**

FILED: _____

_____
**DEPUTY CLERK**

### FOURTH SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Petitioners, who file this their Fourth Supplemental and Amended Petition for Damages, solely in the following particulars:

1. For the purpose of adding the following Defendants:

   a) **Air & Liquid Systems Corporation**, as Successor by Merger to Buffalo Pumps, Inc. (hereinafter, ("Buffalo Pumps"); and

   b) **Warren Pumps LLC** (hereinafter, "Warren").

2. As to Buffalo Pumps and Warren, Plaintiffs assert causes of action in strict liability for the manufacture and sale of unreasonably dangerous asbestos-containing product(s), which were used onboard the USS Henderson, which Alton Lewis served on from approximately 1956 to 1958.

3. As to Buffalo Pumps and Warren, Plaintiffs assert causes of action in negligence and failure to warn for the sale and supply of asbestos and asbestos-containing products to the USS Henderson, thereby substantially contributing to Alton Lewis's asbestos exposure and resultant development of malignant mesothelioma.

4. Buffalo Pumps and Warren were manufacturers, sellers, users, distributors and/or suppliers of asbestos products and were engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products, or



PLAINTIFF'S
EXHIBIT
A

EBR532132

representing themselves as manufacturers of asbestos products, or were professional vendors of asbestos or asbestos-containing products, which were expected to and did reach Alton Lewis's work sites and to which he was exposed.

5.    The products manufactured, sold, distributed, supplied and/or used by the Defendants Buffalo Pumps and Warren were defective, unreasonably dangerous, and unreasonably dangerous per se to Alton Lewis, an intended and foreseeable user of these products. These defects include, without limitation, the following:

a.    manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

b.    manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to Alton Lewis;

c.    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

d.    lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

e.    failure of defendant to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f.    failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

g.    failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

h.    failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i.    defects in the composition and construction of these products;

j.    failure to recall these products manufactured, sold, distributed and/or supplied;

k.    failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

l.    overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants; and

m.   are liable to Petitioner in negligence, strict liability and/or strict products liability for its things that have caused harm to Petitioner.

6.   The defective conditions of Defendants' products and fault, as noted above, were a proximate cause of Alton Lewis's death and Plaintiffs' injuries complained of herein.

7.   Plaintiffs further allege that the foregoing Defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiffs' injuries.

8.   Plaintiffs reiterate all other matters contained in the Original Petition for Damages and any supplements and amendments, including the prayer of the Original Petition, as though set forth at length herein.

**WHEREFORE**, Petitioners pray that the original Petition for Damages be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment against Defendants as originally prayed for herein.

Respectfully submitted,

**WADDELL LAW FIRM, LLC**

SUSANNAH B. CHESTER
TX Bar No. 24056878
*Admitted Pro Hac Vice*
**WATERS & KRAUS, LLP**
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone:  (225) 636-5639
Facsimile:  (225) 636-5209

Counsel for Plaintiffs

**EXHIBIT "D"**

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS' ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES, SECOND SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES and THIRD SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES:**

1. **AIR & LIQUID SYSTEMS CORPORATION, As Successor By Merger To Buffalo Pumps, Inc**
   A Pennsylvania corporation with its principal place of business in the state of New York, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3)** through its registered agent for service of process CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101. This defendant is being sued as an Equipment Defendant.

2. **WARREN PUMPS LLC**
   A Delaware corporation with its principal place of business in the state of Massachusetts, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to wit: 82 Bridges Avenue, Warren, Massachusetts 01083.** This defendant is being sued as an Equipment Defendant.


**SERVICE OF THE FOLLOWING DEFENDANTS WILL BE EFFECTED VIA LA CCP ART. 1313:**

**ANCO INSULATION, INC.**
through its attorney of record,
Jamie Baglio / Margaret M. Joffe / A. Wendall Stout, III
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130

**ATLAS REFINERY, INC.**
through its attorney of record,
Allison N Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office, Marvin McCarty, deceased)
through its attorney of record,
Samuel M. Rosamond, III / Adam D. deMahy

Crawford Lewis, PLLC
400 Poydras Street, Suite 2100
New Orleans, LA 70130

**CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE
CO.)
through its attorney of record,
W. Charles McVea / Matthew S. Lott
Dogan & Wilkinson, PLLC
734 Delmas Avenue
P.O. Box 1618
Pascagoula, MS 39568-1618

**CSR, LIMITED**
through its attorney of record,
Frank Accardo, Esq.,
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, LLC
3200 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3200

**EAGLE, INC.** f/k/a Eagle Asbestos & Packing Co., Inc.
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**, as insurer of The
J. Graves Insulation Company, Inc.
through its attorney of record,
Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170

**FOSTER WHEELER ENERGY CORPORATION**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**FOSTER WHEELER LLC**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**GENERAL ELECTRIC COMPANY**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**GEORGIA-PACIFIC LLC** (sued individually and as successor-in-interest to Bestwall
Gypsum Company)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**HAMM ENTERPRISES, INC.** (f/k/a Berg Mechanical, Inc.)
through its attorney of record,
Layne A. Clark, Jr.
Wiener, Weiss & Madison
333 Texas Street, Suite 2350
P.O. Box 21990
Shreveport, LA 71120-1990

**IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DeLaval
Steam Turbine Company)
through its attorney of record,
Tara L. Mason / Joseph M. Messina
Lobman, Carnahan, Batt, Angelle & Nader
The Texaco Center
400 Poydras Street, Suite 2300
New Orleans, LA 70130

**INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-
interest to Champion Paper Corporation)
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**THE J. GRAVES INSULATION COMPANY** (f/k/a Graves-Aber Insulation
Company, Inc.)
through its attorney of record,
Lawrence Pugh, III / H. Philip Radecker, Jr.
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, L.L.C.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163-1132

**KAISER GYPSUM COMPANY, INC.**
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**LIBBY, INC.**
through its attorney of record,
M. James Dempsey
Cosmich, Simmons & Brown
120 N. Congress Street
Plaza Building, Suite 400
Jackson, MS 39201

**THE MCCARTY CORP. f/k/a MCCARTY-BRANTON, INC.**
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**PENZOIL-QUAKER STATE COMPANY** (as successor by merger to Pennzoil
Products Company, succesor to Atlas Refinery, Inc.)
through its attorneys of record,
W. James Hill, III
The Smitherman Law Firm, L.C.
8570 Business Park Drive, Suite 100
Shreveport, LA 71105
and
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**UNION CARBIDE CORPORATION**
through its attorney of record,
Deborah D. Kuchler / Michael H. Abraham
Kuchler, Polk, Schell, Weiner, & Richeson
1615 Poydras Street, Suite 1300
New Orleans, LA 70112

**UNITED STATES FIDELITY AND GUARANTY**, as insurer of The J. Graves
Insulation, Inc.
through its attorney of record,
Elia Diaz-Yaeger / Katherine Osborne
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

**WEYERHAUSER COMPANY** (sued individually and as successor-in-interest to
WILLAMETTE INDUSTRIES, INC.)
through its attorney of record,
Lydia M. Rhodes
610 Marshall Street, Suite 314
Shreveport, LA 71101

**ZURICH AMERICAN INSURANCE COMPANY** a/k/a and/or f/k/a ZURICH
INSURANCE COMPANY, as insurer of The J. Graves Insulation Company, Inc.
through its attorney of record,
Glen E. Mercer
Salley, Hite & Mercer, LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130

.19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24                    DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                            DEPUTY CLERK

<u>ORDER</u>

Considering the foregoing Motion for Leave to File Plaintiffs' Fourth Amended Petition

for Damages;

**IT IS ORDERED, ADJUDGED AND DECREED** that the attached Fourth Amended

Petition for Damages be and is hereby deemed filed in the above-numbered and captioned

matter.

**SO ORDERED** this the _____ day of _____, 2010.

_____
                    JUDGE

ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED
PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT – Solo Page

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH**

**OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

NO. 583178              **SECTION 24**              **DIVISION 24**

~~POSTED~~

**ALTON LEWIS**

NOV 04 2010

**VERSUS**

**ATLAS REFINERY, INC., ET AL.**

FILED: _____        _____
                                          **DEPUTY CLERK**

**MOTION FOR LEAVE TO FILE PLAINTIFFS'**
**THIRD AMENDED PETITION FOR DAMAGES AND INCORPORATED**
**MEMORANDUM IN SUPPORT**

**NOW INTO COURT,** through undersigned counsel, come Plaintiffs who respectfully

move this Honorable Court for leave to file the attached Third Amended Petition for Damages,

which amends paragraph 5 of Petitioner's Original Petition for Damages and withdraws

paragraphs 29, 46 and 50 of same, in the above-referenced matter.  The trial in this matter is

currently set for March 22, 2011, almost five months from the current date.  As such, this filing

will not unfairly prejudice Defendants; nor will this filing cause a delay in the proceedings.

**WHEREFORE,** Plaintiffs respectfully request that the Court grant them leave to amend

their petition and file their Third Amended Petition for Damages, attached hereto as Exhibit "A."

Respectfully submitted,

**WATERS & KRAUS, LLP**

*Susannah Chester*

**SUSANNAH B. CHESTER**
**TX Bar No. 24056878**
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

**WADDELL LAW FIRM**
**CAMERON R. WADDELL**
Louisiana Bar No. 24245
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: 225-636-5639
Facsimile: 225-636-5209

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

**COUNSEL FOR PLAINTIFFS**

REC'D C.P.



REC'D C.P.                    NOV 4  2010

NOV 15 2010


EBR340574

### CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document has been

served on all counsel of record via facsimile on this the _1_ day of November, 2010.



SUSANNAH B. CHESTER

19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24                    DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

**POSTED**
NOV 04 2010

FILED: _____                    _____

### THIRD AMENDED PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who file this their Third Amended Petition for Damages, such that the Petition for Damages shall read in its entirety as follows:

1.  Plaintiffs, Christopher Dean Lewis and Marcus Wayne Lewis, amend paragraph 5 of the Original Petition for Damages, which was filed on October 5, 2009, to read as follows:

Alton Lewis was exposed to asbestos or asbestos-containing products from his employment as a machinist mate, plumber and security guard at multiple locations, including but not limited to, the following: Atlas Refinery (in/around Shreveport, Louisiana); International Paper Company (Springhill, Louisiana); Libby, Inc. (in/around Shreveport, Louisiana); Willamette Paper Mill; the USS Henderson; and commercial sites in and around Shreveport, Louisiana. The conduct of each Defendant was a substantial contributing factor in causing Alton Lewis's injuries; such that all Defendants are liable jointly, severally, and in solido for all of the damages complained of herein.

2.  Additionally, Plaintiffs hereby withdraw paragraphs 29, 46 and 50 of the Original Petition for Damages.

3.  Plaintiffs reiterate all other matters contained in the Original Petition for Damages and any supplements and amendments as though set forth at length herein.

**WHEREFORE**, Plaintiffs pray that their original Petition for Damages be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment herein in their favor, and against Defendants as originally prayed for herein.





EBR340573

Respectfully submitted,

**WATERS & KRAUS, LLP**

_____

**SUSANNAH B. CHESTER**
**TX Bar No. 24056878**
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

**WADDELL LAW FIRM**
**CAMERON R. WADDELL**
Louisiana Bar No. 24245
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: 225-636-5639
Facsimile: 225-636-5209

**COUNSEL FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

    I do hereby certify that a true and correct copy of the foregoing document has been

served on all counsel of record via facsimile on this the ___ day of November, 2010.


_____

**SUSANNAH B. CHESTER**

**EXHIBIT "B"**

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS' ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES, SECOND SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES AND THIRD AMENDED PETITION FOR DAMAGES:**

1.  **NUTMEG INSURANCE COMPANY**, as insurer of The J. Graves Insulation Company, Inc.
    May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street Baton Rouge, LA 70802-6129.   Nutmeg Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

2.  **FIRST STATE INSURANCE COMPANY** (as insurer of The J. Insulation Company, Inc.).
    May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street Baton Rouge, LA 70802-6129.   First State Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.


**SERVICE OF THE FOLLOWING DEFENDANTS WILL BE EFFECTED VIA LA CCP ART. 1313:**

**ANCO INSULATION, INC.**
through its attorney of record,
Jamie Baglio / Margaret M. Joffe / A. Wendall Stout, III
Deutsch, Kerrigan & Stiles
755·Magazine Street
New Orleans, LA 70130

**ATLAS REFINERY, INC.**
through its attorney of record,
Allison N Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office, Marvin McCarty, deceased)
through its attorney of record,
Samuel M. Rosamond, III / Adam D. deMahy
Crawford Lewis, PLLC
400 Poydras Street, Suite 2100
New Orleans, LA 70130

CRANE CO. (sued individually and as successor-in-interest to CHAPMAN VALVE CO.)
through its attorney of record,
W. Charles McVea
Dogan & Wilkinson, PLLC
734 Delmas Avenue
P.O. Box 1618
Pascagoula, MS 39568-1618

CSR, LIMITED
through its attorney of record,
Frank Accardo, Esq.,
Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP
3200 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3200

and

Michael Futterman, Esq.,
Futterman & Dupree, LLP
160 Sansome Street, 17th Floor
San Francisco, CA 94104

EAGLE, INC. f/k/a Eagle Asbestos & Packing Co., Inc.
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, as insurer of The J.
Graves Insulation Company, Inc.
through its attorney of record,
Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170

FOSTER WHEELER ENERGY CORPORATION
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

FOSTER WHEELER LLC
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

GARLOCK SEALING TECHNOLOGIES, LLC (sued individually and as successor-in-
interest to Garlock, Inc.)
through its attorney of record,
Kay B. Baxter / Christopher O. Massenburg / Glenn L.M. Swetman /
Brandie M. Thibodeaux
Swetman Baxter Massenburg, LLC
650 Poydras, Suite 2400
New Orleans, LA 70130

**GARLOCK INC.**
through its attorney of record,
Kay B. Baxter / Christopher O. Massenburg / Glenn L.M. Swetman /
Brandie M. Thibodeaux
Swetman Baxter Massenburg, LLC
650 Poydras, Suite 2400
New Orleans, LA 70130

**GENERAL ELECTRIC COMPANY**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**GEORGIA-PACIFIC LLC** (sued individually and as successor-in-interest to Bestwall
Gypsum Company)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**HAMM ENTERPRISES, INC.** (f/k/a Berg Mechanical, Inc.)
through its attorney of record,
Layne A. Clark, Jr.
Wiener, Weiss & Madison
333 Texas Street, Suite 2350
Shreveport, LA 71101

**IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DeLaval Steam
Turbine Company)
through its attorney of record,
Tara L. Mason / Joseph M. Messina
Lobman, Carnahan, Batt, Angelle & Nader
The Texaco Center
400 Poydras Street, Suite 2300
New Orleans, LA 70130

**INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-interest to
Champion Paper Corporation)
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**THE J. GRAVES INSULATION COMPANY** (f/k/a Graves-Aber Insulation Company, Inc.)
through its attorney of record,
Lawrence Pugh, III / H. Philip Radecker, Jr.
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, L.L.C.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163

**KAISER GYPSUM COMPANY, INC.**
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**LIBBY, INC.**
through its attorney of record,
M. James Dempsey
Cosmich, Simmons & Brown
34 Milbranch Road, Suite 70
Hattiesburg, MS 39402

**THE MCCARTY CORP. f/k/a MCCARTY-BRANTON, INC.**
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**PENZOIL-QUAKER STATE COMPANY (as successor by merger to Pennzoil Products
Company, succesor to Atlas Refinery, Inc.)**
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**SCOTTSDALE INSURANCE COMPANY (as insurer of The J. Graves Insulation Company,
Inc.)**
through its attorney of record,
Matthew J. Ungarino
Ungarino & Eckert, L.L.C.
3850 North Causeway Boulevard, Suite 1280
Metairie, LA 70002

**UNION CARBIDE CORPORATION**
through its attorney of record,
Michael H. Abraham
Kuchler, Polk, Schell, Weiner, & Richeson
1615 Poydras Street, Suite 1300
New Orleans, LA 70112

**UNITED STATES FIDELITY AND GUARANTY, as insurer of The J. Graves Insulation, Inc.**
through its attorney of record,
Elia Diaz-Yaeger / Katherine Osborne
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

**WEYERHAUSER COMPANY** (sued individually and as successor-in-interest to
WILLAMETTE INDUSTRIES, INC.)
through its attorney of record,
Lydia M. Rhodes
610 Marshall Street, Suite 314
Shreveport, LA 71101

**ZURICH AMERICAN INSURANCE COMPANY a/k/a and/or f/k/a ZURICH INSURANCE
COMPANY, as insurer of The J. Graves Insulation Company, Inc.**
through its attorney of record,
Glen E. Mercer
Salley, Hite & Mercer, LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130

19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24                    DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                    DEPUTY CLERK

## ORDER

Considering the foregoing Motion for Leave to File Plaintiffs' Third Amended Petition for Damages;

IT IS ORDERED, ADJUDGED AND DECREED that the attached Third Amended Petition for Damages be and is hereby deemed filed in the above-numbered and captioned matter.

SO ORDERED this the 9 day of November, 2010.

_____
JUDGE ADHoc

CERTIFIED
TRUE COPY

JAN 06 2011

_____
DEPUTY CLERK OF COURT

East Baton Rouge Clerk of Court

**waterskraus**   • PLEASE RESPOND TO THE TEXAS OFFICE   •

Page 8 of 9

PARTNERS

C. Andrew Waters (CA, DE, NV, TX)
Peter A. Kraus (TX, CA)
Charles S. Siegel (TX)
Trayce G. Wolf (NY, TX)
Michael L. Armitage (CA, LA)
B. Scott Kruka (TX)
Leslie C. MacLean (TX)
Charles E. Valles (CA, TX)
Paul C. Cook (CA)
Gary M. Paul (CA)
Michele Whitman (TX)
Kyla Gail Cole (TX)
John S. Janofsky (CA, DE)
Michael B. Gurien (CA)
Scott L. Frost (CA, AL, AP, CO, TX)
Greg W. Lisemby (TX)

ASSOCIATES

Loren Jacobson
Joy Sparling (LA)
Kevin M. Loew (TX)
Julie L. Colvin (TX)
Daniel H. Nichols (CA)
Benno Ashrafi (CA)
Mark Bratt (CA)
Demetrios T. Zacharopoulos (CA)
Jacqueline O. Badders (CA)
Susannah B. Chester (TX)
Jillian Rice-Loew (CA)
Cindy Young (CA)
Brent Zadorozny (CA)
Melanie J. Garner (DE, MD, PA, TX)
Gibbs D. Henderson (TX)
Mark Linder (CA, TX)
Tae Kim (CA)
Carrie B. Waters (TX)
Laurel Halbany (CA)
Joanna A. Hopkins (TX, PA)
Ari Friedman (CA)
Katharine H. Williams (CA)
Jason Marks (CA)
Benafsheh Saifabadi (CA)
Jennifer L. McIntosh (TX)

OF COUNSEL

Kevin E. Oliver (TX)
William Gaterson (CA, TX)
Randall L. Iola (IL, OH, TX)
George D. Tarkhel III (DE, MA, MD, PA, TX)
Ingrid Evans (CA, DC, NY)
Jonathan A. George (CA)
Wm. Paul Lawrence II (CA, FL, PA)
David Bricker (CA)

November 1, 2010

Doug Welborn – Clerk of Court          *Via Federal Express #796400784384*
Suit Accounting Department
Governmental Building
222 St. Louis Street, Room 152
Baton Rouge, LA 70802

Re:   Alton Lewis vs. Atlas Refinery, Inc., et al; Cause No. 583178; 19th
      Judicial District Court for the Parish of East Baton Rouge; State of
      Louisiana
      **Client Matter #09-0443**

Dear Mr. Welborn:

Enclosed please find the original and copy of *Plaintiff's Motion for Leave to
File Plaintiffs' Third Amended Petition to Damages* and Order for same in
regard to the above-referenced matter.  I respectfully request that the original
be filed with the Court and the enclosed page be file-marked and returned to
me in the envelope provided for your convenience.  Also, enclosed you will
find a check in the amount of $37 to cover the filing fees.  Should additional
fees be required, please notify Plaintiffs' counsel at the number listed below.

Thank you for your assistance in this matter.  Should you have any questions
or need additional information, please do not hesitate to contact me.

Sincerely,

*[signature]*
Cindy Lopez

/cl
Enclosures.

cc:   All Counsel of Record – Via E-mail

REC'D C.P.
NOV 4 2010

REC'D C.P.
NOV 1 9 2010

WATERS & KRAUS, LLP ATTORNEYS AND COUNSELORS
DALLAS:  3219 McKINNEY AVENUE  DALLAS, TEXAS 75204  TEL 214 357 6244  FAX 214 357 7252
BALTIMORE:  315 NORTH CHARLES STREET  BALTIMORE, MARYLAND 21201  TEL 410 528 1153  FAX 410 528 1006
SAN FRANCISCO:  711 VAN NESS AVENUE  SUITE 220  SAN FRANCISCO, CALIFORNIA 94102  TEL 800 226 9880  FAX 214 777 0470
LOS ANGELES:  222 NORTH SEPULVEDA BOULEVARD  SUITE 1900  EL SEGUNDO, CALIFORNIA 90245  TEL 310 414 8146  FAX 310 414 8156

COST OK $ ✓

JUN 07 2010

**19ᵀᴴ JUDICIAL DISTRICT COURT FOR THE PARISH**
**OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

NO. 583178                    **SECTION 24**                    **DIVISION 24**

**ALTON LEWIS**

**VERSUS**

POSTED

**ATLAS REFINERY, INC., ET AL**   JUN 07 2010

FILED: _____

DEPUTY CLERK

---

### SECOND SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Petitioner, who files this his Second Supplemental and Amended Petition for Damages, such that Petitioners's Petition for Damages shall read in its entirety as follows:

1.    Alton Lewis' death on November 18, 2009 was due to or a consequence of his exposure to dust and fibers from asbestos and/or asbestos-containing materials, as a direct and proximate result of his exposure to asbestos products that were unreasonably dangerous per se, defective in composition or construction, defective in design, lacking suitable warnings or instructions concerning the hazards presented, as a result of negligent, willful, and/or reckless misconduct, and as a result of intentional misconduct of certain of the Defendants as previously alleged with more specificity in the Original Petition. As a direct and proximate result of the delictual conduct of the Defendants, the Petitioners Christopher Dean Lewis and Marcus Wayne Lewis have lost the love, affection, society, support, services and future earnings of the decedent and all other damages due and, pursuant to Louisiana Civil Code Article 2315.2, assert this wrongful death action against the Defendants. Copies of Petitioners' birth certificates are attached hereto as Exhibit A.

2.    Petitioner, Christopher Dean Lewis, is the statutory survivor of the referenced decedent, and hereby substitutes himself in the decedent's stead and asserts this survival action pursuant to Louisiana Civil Code Article 2315.1. A copy of Decedent

REC'D C.P.                    REC'D C.P.

JUN 1 0 2010                    JUN 1 0 2010

Alton Lewis' Last Will and Testament is attached hereto as Exhibit B.

3.    Petitioner, Marcus Wayne Lewis, is the statutory survivor of the referenced decedent, and hereby substitutes himself in the decedent's stead and asserts this survival action pursuant to Louisiana Civil Code Article 2315.1. A copy of Decedent Alton Lewis' Last Will and Testament is attached hereto as Exhibit B. Additionally, a copy of the Letters naming Marcus Wayne Lewis as independent administrator of Decedent Alton Lewis' estate are attached hereto as Exhibit C.

4.    The Petitioners reiterate all other matters contained in the Original Petition for Damages and any supplements including the prayer of his Original Petition as though set forth at length herein.

WHEREFORE, Petitioners pray that their original Petition for Damages be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment herein in their favor, and against defendants as originally prayed for herein.

Respectfully submitted,

**WATERS & KRAUS, LLP**

*Susannah B. Chester*
**SUSANNAH B. CHESTER**
**TX Bar No. 24056878**
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

WADDELL LAW FIRM, LLC

Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: (225) 636-5639
Facsimile: (225) 636-5209

Counsel for Plaintiffs

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

**O R D E R**

Let the above and foregoing SECOND SUPPLEMENTAL AND AMENDED

PETITION FOR DAMAGES be filed as prayed for.

IT IS SO ORDERED.

BATON ROUGE, LOUISIANA, this 9 day of June , 2010.

_____
JUDGE - 19ᵀᴴ JUDICIAL DISTRICT COURT

066870

19TH JUDICIAL
EAST BATON ROUGE PARISH
FILED

2010 JUN -7 PM 4:55

DEPUTY CLERK & RECORDER

DOUG WELBORN
CLERK OF COURT E.B.R. PARISH

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

# LETTERS

th

SUCCESSION

OF

ALTON LEROY LEWIS

NO. 537110-B
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

WHEREAS MARCUS WAYNE LEWIS

has been appointed INDEPENDENT ADMINISTRATOR OF THE SUCCESSION OF

ALTON LEROY LEWIS

and taken the oath as prescribed by law WITHOUT bond.

NOW, THEREFORE HE                          IS hereby authorized and

fully empowered to discharge and perform all and singular the duties

appertaining to said appointment according to law, including, but not

limited to, all the rights, powers, authorities, privileges and duties

of a succession representative as are otherwise provided by law, but

without the necessity of publication of notice, delay for objection,

application to or any action in or by the Court.

IN TESTIMONY WHEREOF, I have hereunto signed my name and affixed my

seal of office on this date January 07, 2010.

GARY LOFTIN, CLERK OF COURT

By: _____
           Deputy Clerk

A T T E S T
A TRUE COPY

_____
CADDO PARISH DEPUTY CL

$ _____

EXHIBIT
C



## EXHIBIT "D"

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS'
ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND
AMENDED ORIGINAL PETITION FOR DAMAGES and SECOND
SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES:**

1.   **NUTMEG INSURANCE COMPANY,** as insurer of The J. Graves Insulation Company, Inc.
     May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street Baton Rouge, LA 70802-6129.   Nutmeg Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

2.   **FIRST STATE INSURANCE COMPANY** (as insurer of The J. Insulation Company, Inc.).
     May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street Baton Rouge, LA 70802-6129.   First State Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

**SERVICE OF THE FOLLOWING DEFENDANTS WILL BE EFFECTED VIA LA
CCP ART. 1313:**

**ANCO INSULATION, INC.**
through its attorney of record,
Jamie Baglio / Margaret M. Joffe / A. Wendall Stout, III
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130

**ATLAS REFINERY, INC.**
through its attorney of record,
Allison N Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office,

Marvin McCarty, deceased)
through its attorney of record,
Samuel M. Rosamond, III / Adam D. deMahy
Crawford Lewis, PLLC
400 Poydras Street, Suite 2100
New Orleans, LA 70130

**CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE CO.)
through its attorney of record,
W. Charles McVea
Dogan & Wilkinson, PLLC
734 Delmas Avenue
P.O. Box 1618
Pascagoula, MS 39568-1618

**CSR, LIMITED**
through its attorney of record,
Frank Accardo, Esq.,
Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP
3200 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3200
and
Michael Futterman, Esq.,
Futterman & Dupree, LLP
160 Sansome Street, 17th Floor
San Francisco, CA 94104

**EAGLE, INC.** f/k/a Eagle Asbestos & Packing Co., Inc.
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, as** insurer of The
J. Graves Insulation Company, Inc.
through its attorney of record,
Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170

**FOSTER WHEELER ENERGY CORPORATION**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**FOSTER WHEELER LLC**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

12

**GARLOCK SEALING TECHNOLOGIES, LLC** (sued individually and as successor-in-interest to Garlock, Inc.)
through its attorney of record,
Kay B. Baxter / Christopher O. Massenburg / Glenn L.M. Swetman /
Brandie M. Thibodeaux
Swetman Baxter Massenburg, LLC
650 Poydras, Suite 2400
New Orleans, LA 70130

**GARLOCK INC.**
through its attorney of record,
Kay B. Baxter / Christopher O. Massenburg / Glenn L.M. Swetman /
Brandie M. Thibodeaux
Swetman Baxter Massenburg, LLC
650 Poydras, Suite 2400
New Orleans, LA 70130

**GENERAL ELECTRIC COMPANY**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**GEORGIA-PACIFIC LLC** (sued individually and as successor-in-interest to Bestwall Gypsum Company)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**HAMM ENTERPRISES, INC.** (f/k/a Berg Mechanical, Inc.)
through its attorney of record,
Layne A. Clark, Jr.
Wiener, Weiss & Madison
333 Texas Street, Suite 2350
Shreveport, LA 71101

**IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DeLaval Steam Turbine Company)
through its attorney of record,
Tara L. Mason / Joseph M. Messina
Lobman, Carnahan, Batt, Angelle & Nader
The Texaco Center
400 Poydras Street, Suite 2300
New Orleans, LA 70130

**INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-interest to Champion Paper Corporation)
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**THE J. GRAVES INSULATION COMPANY** (f/k/a Graves-Aber Insulation
Company, Inc.)
through its attorney of record,
Lawrence Pugh, III / H. Philip Radecker, Jr.
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, L.L.C.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163

**KAISER GYPSUM COMPANY, INC.**
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**LIBBY, INC.**
through its attorney of record,
M. James Dempsey
Cosmich, Simmons & Brown
34 Milbranch Road, Suite 70
Hattiesburg, MS 39402

**THE MCCARTY CORP. f/k/a MCCARTY-BRANTON, INC.**
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**PENZOIL-QUAKER STATE COMPANY** (as successor by merger to Pennzoil
Products Company, succesor to Atlas Refinery, Inc.)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**SCOTTSDALE INSURANCE COMPANY** (as insurer of The J. Graves Insulation
Company, Inc.)
through its attorney of record,
Matthew J. Ungarino
Ungarino & Eckert, L.L.C.
3850 North Causeway Boulevard, Suite 1280
Metairie, LA 70002

**UNION CARBIDE CORPORATION**
through its attorney of record,
Michael H. Abraham
Kuchler, Polk, Schell, Weiner, & Richeson
1615 Poydras Street, Suite 1300
New Orleans, LA 70112

**UNITED STATES FIDELITY AND GUARANTY,** as insurer of The J. Graves
Insulation, Inc.
through its attorney of record,
Elia Diaz-Yaeger / Katherine Osborne

Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

**WEYERHAUSER COMPANY** (sued individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
through its attorney of record,
Lydia M. Rhodes
610 Marshall Street, Suite 314
Shreveport, LA 71101

**ZURICH AMERICAN INSURANCE COMPANY** a/k/a and/or f/k/a ZURICH INSURANCE COMPANY, as insurer of The J. Graves Insulation Company, Inc.
through its attorney of record,
Glen E. Mercer
Salley, Hite & Mercer, LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130

15

STATE OF LOUISIANA
# CERTIFICATE OF LIVE BIRTH
Birth No. **117**

IMPORTANT:
Use Ink or Typewriter
Information Mandatory By
Law.

| | | |
|---|---|---|
| **CHILD** (Use or print names, do not use numerals for date of birth.) | 1A. CHILD'S LAST NAME **LEWIS** | 1B. FIRST NAME **CHRISTOPHER** | 1C. SECOND NAME **DEAN** | 2A. DATE OF BIRTH MONTH DAY YEAR **December 11, 196** |

3. SEX—GIRL OR BOY? **Boy**   4. THIS BIRTH Single ☒ Twin ☐ Triplet ☐   5. IF TWIN OR TRIPLET, WAS CHILD BORN 1st ☐ 2d ☐ 3d ☐   2B. HOUR OF BIRTH **12:45 p.m.**

**PLACE OF BIRTH**
6A. PLACE OF BIRTH (CITY, TOWN, OR LOCATION) **Shreveport**   6B. PARISH OF BIRTH **Caddo**
6C. NAME OF HOSPITAL OR INSTITUTION—(IF NOT IN HOSPITAL OR INSTITUTION GIVE STREET ADDRESS OR LOCATION)   6D. IS PLACE OF BIRTH INSIDE CITY LIMITS? Yes ☐ No ☐

**USUAL RESIDENCE OF MOTHER**
7A. USUAL RESIDENCE OF MOTHER (CITY, TOWN OR LOCATION) **Shreveport**   7B. PARISH **Caddo**   7C. STATE **Louisiana**
7D. STREET ADDRESS—(IF RURAL INDICATE LOCATION) **10136 Lariat Lane**   7E. IS RESIDENCE INSIDE CITY LIMITS? Yes ☐ No ☒

**FATHER OF CHILD**
8A. FULL NAME OF FATHER **Alton Leroy Lewis**   8B. STATE AND CITY OF BIRTH (IF NOT IN U.S.A.) NAME COUNTRY **Shelby County, Texas**   8C. AGE (AT TIME OF THIS BIRTH) **31**   8D. COLOR OR RACE OF FATHER **White**
9A. FULL MAIDEN NAME OF MOTHER **Carroline Lea Callens**   9B. STATE AND CITY OF BIRTH (IF NOT IN U.S.A.) NAME COUNTRY **Orange, Texas**   9C. AGE (AT TIME OF THIS BIRTH) **26**   9D. COLOR OR RACE OF MOTHER **White**

INFORMANT'S CERTIFICATION
I certify that the above stated information is true and correct to the best of my knowledge.
10. SIGNATURE OF PARENT OR OTHER INFORMANT ► *Alton Leroy Lewis* Parent ☐ Other ☐   11. DATE OF SIGNATURE *October 13, 1970*
INFORMANT'S MAILING ADDRESS **10136 Lariat Lane; Shreveport, Louisiana**

ATTENDANT'S CERTIFICATION
12. I certify that I attended this birth and that the child was born alive on the date stated above.
13. SIGNATURE OF ATTENDANT M.D. ☐ Midwife ☐ Other ☐   14. DATE OF SIGNATURE

REGISTRAR'S CERTIFICATION
15. DATE ACCEPTED BY LOCAL REGISTRAR *Oct. 26, 1970*   16. SIGNATURE OF LOCAL REGISTRAR ► *Anthony Ciaccio* M.   17. DATE FILED BY STATE REGISTRAR *Oct. 26, 1970*

CONFIDENTIAL INFORMATION FOR MEDICAL AND HEALTH USE ONLY

I CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF A CERTIFICATE DULY REGISTERED WITH THE LOUISIANA STATE DEPARTMENT OF HEALTH, BUREAU OF VITAL STATISTICS.

*Andrew Hedmeg M.D.*
ACTING STATE HEALTH OFFICER

*Anthony Ciaccio*
STATE REGISTRAR

OCT. 26. 1970

58 31/28

EBR156727



5

## STATE OF LOUISIANA
## CERTIFICATE OF LIVE BIRTH

Birth No. **117**   72 023 927

| 1a. CHILD'S LAST NAME | 1b. FIRST NAME | 1c. SECOND NAME | 2A. DATE OF BIRTH MONTH DAY YEAR |
|---|---|---|---|
| Lewis | Marcus | Wayne | June 21, 1972 |

| 3. IS THIS A GIRL OR BOY? | 4. THIS BIRTH | 5. IF TWIN OR TRIPLET, WAS CHILD BORN | 2B. HOUR OF BIRTH |
|---|---|---|---|
| Boy | Single XX  Twin ☐  Triplet ☐ | 1st ☐  2d ☐  3d ☐ | 9:31 a.m. |

| 6. PLACE OF BIRTH (CITY, TOWN OR LOCATION) | | 6b. PARISH OF BIRTH |
|---|---|---|
| Shreveport | | Caddo |

6A. NAME OF HOSPITAL OR INSTITUTION — IF NOT IN HOSPITAL OR INSTITUTION GIVE STREET ADDRESS OR LOCATION
6c. IS PLACE OF BIRTH INSIDE CITY LIMITS? Yes XX   No ☐

| 7. USUAL RESIDENCE OF MOTHER CITY TOWN OR LOCATION | 7b. PARISH | 7c. STATE |
|---|---|---|
| Shreveport | Caddo | Louisiana |

| 7a. STREET ADDRESS—IF RURAL INDICATE LOCATION | 7d. IS RESIDENCE INSIDE CITY LIMITS? Yes ☐  No ☒ |
|---|---|
| 10136 Lariat Lane | |

| 8. FULL NAME OF FATHER | 8b. CITY AND STATE OF BIRTH (IF NOT IN U.S. NAME COUNTRY) | 8c. AGE (AT TIME OF THIS BIRTH) 34 | 8d. COLOR OR RACE OF FATHER White |
|---|---|---|---|
| Alton Leroy Lewis | Shelby County, Texas | | |

| 9. FULL MAIDEN NAME OF MOTHER | 9b. CITY AND STATE OF BIRTH (IF NOT IN U.S. NAME COUNTRY) | 9c. AGE (AT TIME OF THIS BIRTH) 28 | 9d. COLOR OR RACE OF MOTHER White |
|---|---|---|---|
| Carroline Lea Callens | Orange, Texas | | |

I certify that the above stated information is true and correct to the best of my knowledge.
10. SIGNATURE OF PARENT OR OTHER INFORMANT ► *Alton Leroy Lewis*   Parent ☐  Other ☐
11. DATE OF SIGNATURE ***********

12. MOTHER'S MAILING ADDRESS
10136 Lariat Lane, Shreveport, Louisiana  71106

I certify that I attended this birth and that the child was born alive on the date stated above.
13. SIGNATURE OF ATTENDANT ► W. C. Kalmbach   14. DATE OF SIGNATURE 6/29/72

| 15. DATE ACCEPTED BY LOCAL REGISTRAR | 16. SIGNATURE OF LOCAL REGISTRAR | 17. DATE FILED BY STATE REGISTRAR |
|---|---|---|
| 7/7/72 | ► | 7/17/72 |

### CONFIDENTIAL INFORMATION FOR MEDICAL AND HEALTH USE ONLY
(This Section MUST Be Filled Out For Each Birth)

I CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF A CERTIFICATE DULY REGISTERED WITH THE L.H.S.R.S.A., DIVISION OF HEALTH MAINTENANCE AND AMBULATORY PATIENT SERVICES, BUREAU OF VITAL STATISTICS.

MAY 1980

STATE HEALTH OFFICER          STATE REGISTRAR

# 𝕷𝖆𝖘𝖙 𝖂𝖎𝖑𝖑 𝖆𝖓𝖉 𝕿𝖊𝖘𝖙𝖆𝖒𝖊𝖓𝖙

OF

## ALTON LEROY LEWIS

STATE OF LOUISIANA

PARISH OF CADDO

I, ALTON LEROY LEWIS, presently a resident of Caddo Parish, being of sound mind and aware of the uncertainties of life, do hereby declare this to be my Last Will and Testament. I revoke any and all prior wills and codicils or any indication of bequests that I may have made previously, particularly those wills executed March 25, 2003, September 4, 2009, and October 14, 2009.

### I.  FAMILY

1.1     I have been married twice, but I am divorced.

1.2     I have had no children born to me during the course of those two marriages, but during the course of my last marriage to Carolyn Lee Callens Lewis, two sons were adopted, those being Christopher Dean Lewis and Marcus Wayne Lewis.

1.3     No children have been born to me nor have I adopted any other children.

### II.  BEQUESTS

2.1     I direct my executor to pay all debts as necessary, including any taxes, and to be paid first out of my estate.

November 6, 2009

_Alton L Lewis_
Alton Leroy Lewis

Page 1 of 4



EXHIBIT
B

2.2   To my son, Marcus, I hereby leave the following property:

My home and the property where it is located, which is currently located at 439 Pueblo Lane, Shreveport

My John Deere lawn mower

My new garden tiller

My passenger vehicle which is currently a Z71 Silverado

A dinette set consisting of six blue chairs, one large table, one china cabinet, that has a 12 piece place setting of Sives china, one large buffet, and one large pine cone design mirror

Various boxes that are specifically marked with the name of Mark, which would include any guns that he is to have, silverware, and loose pieces of silver

The green duck pirogue boat

My National Geographic book collection

2.3   To Christopher Dean Lewis, I leave the following specific property:

The Cannon gun safe along with all guns that are in and the other items that may be in it.

My Mother's end tables

All of my gun and reloading equipment and supplies which are in the desk

A gray cotton mouth Pirogue boat

Maytag washer and dryer set

Metal boxes that are marked Chris which include a set of Havelin china

November _6_, 2009

Alton Leroy Lewis

Page 2 of 4

My Harley Davidson Motorcycle

A sixteen foot tandem trailer

My four wheeler and the trailer for this

2.4     To both of my sons, I leave the following property to share and share alike:

The 6.5 acres located in DeSoto Parish including mineral rights

Any cash money

Any interest in the law suit to which I am being joined as a party as a result of my current medical condition

My stamp collection

Any other property not included in this will

2.5     There is to be no collation between my sons in regard to anything previously given to them by me.

2.6     If property and items listed in this will are not in my possession at the time of my death, that bequest is deemed to have lapsed and is of no effect.


## III. ADMINISTRATION

3.1     I hereby appoint both of my sons, Christopher Dean Lewis and Marcus Wayne Lewis to serve as executors of my estate, to be able to serve either singularly or jointly, to be my Executors and to serve with full seizen and without bond.

3.2     It is represented that the Executor, or Executors, may act as an Independent Administrator and is authorized to conduct succession proceedings in accordance with the provisions of the Code of Civil Procedure, State of Louisiana, currently being articles beginning with Article 2296 and styled as *Independent Administration of Estates.*


November 6th, 2009

Alton L Lewis
Alton Leroy Lewis

Page 3 of 4

∞

THUS DONE AND SIGNED on each page in the City of Shreveport, Parish of Caddo, State of Louisiana, on the ___6___ day of November, 2009.

_Alton Leroy Lewis_
Alton Leroy Lewis

The Testator, Alton Leroy Lewis, has signed this will at the end and on each separate page and declared and signified in our presence that it is his Last Will and Testament, and in the presence of the Testator and each other, we have here unto subscribed our names on this ___ day of November, 2009.

WITNESSES:

_Bobbie Morgan_
Printed Name:  Bobbie Morgan

_Alton Leroy Lewis_
Alton Leroy Lewis

_Jimmy S. Canada_   Jimmy G. CANADA
Printer Name:

_Walter O. Hunter jr._
NOTARY PUBLIC

WALTER ORIE HUNTER, JR., NOTARY PUBLIC
Caddo Parish, Louisiana
My Commission Is For Life
Bar Roll No. 7098
Notary ID # 56832

November _6_, 2009

_Alton Lewis Lewis_
Alton Leroy Lewis

Page 4 of 4

COST OK Amt. 2885 —

OCT 2 7 2009

BY _____
DY CLERK OF COURT

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178              SECTION 24              DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                        DEPUTY CLERK

## PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO AMEND PLAINTIFF'S ORIGINAL PETITION TO ADD DEFENDANT CSR, LIMITED

COMES NOW Plaintiff and files this Motion for Leave to Amend Plaintiff's Original Petition to Add Defendant CSR, Limited.  In support of his motion, Plaintiff would respectfully show as follows:

**I.**

Plaintiff respectfully requests leave to amend his Original Petition to add Defendant CSR, Inc. pursuant to Article 1151 of the Louisiana Code of Civil Procedure.  La. Code Civ. Proc. art. 1151 (2009).  Plaintiff worked with Johns-Manville transite sewer pipe during his apprenticeship as a plumber from approximately 1959 through 1962.  Upon information and belief, CSR, Inc. sold the asbestos, which was contained in Johns-Manville's asbestos containing transite sewer pipe and which Plaintiff inhaled during the course of his plumbing work with this pipe.  As a result of this exposure, Plaintiff breathed asbestos containing dust, which contributed to his development of malignant mesothelioma.

**II.**

Plaintiff has attached a First Supplemental and Amended Petition for Damages for this Court's review and respectfully requests that this Court permit Plaintiff to add Defendant CSR, Inc. to this suit for damages sustained in tort, as outlined in Plaintiff's proposed petition.  *See* Plaintiff's First Supplemental and Amended Petition for Damages, attached hereto as **Exhibit A.**

Respectfully submitted,
**WADDELL LAW FIRM, LLC**

_____
Cameron R. Waddell (Bar No. 31113)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone:  (225) 636-5639
Facsimile:  (225) 636-5209

CERTIFIED
TRUE COPY

JAN 06 2011

_____
DEPUTY CLERK OF COURT

REC'D C.P.
NOV 02 2009

Plaintiff's *Ex Parte* Motion for Leave to Amend Plaintiff's Original Petition to add Defendant, CSR, Ltd. – Page 1
Q:\Asbestos\Out-of-State Cases\Louisiana\Lewis, Alton\Motions & Responses\Ex Parte Motion for Leave to Amend Plaintiff's Petition to Add CSR.docx

and

**ANDERMAN LAW FIRM, LLC**
Jody E Anderman (Bar No. 18764)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: (225) 612-8450

Counsel for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the above and foregoing was sent via one of the methods checked below, to all counsel of record on the _____ day of October, 2009.

[ ]   Regular Mail
[ ]   Certified Mail, Return Receipt Requested
[ ]   Federal Express
[ ]   Hand Delivery
[ ]   Facsimile
[ ]   Email

CAMERON R. WADDELL

CERTIFIED TRUE COPY

DEPUTY CLERK OF COURT

DOUG WELBORN
CLERK OF COURT E B R PARISH

19TH JUDICIAL DISTRICT COURT
EAST BATON ROUGE PARISH, LA
FILED

2009 OCT 27  PM 1:36

Plaintiff's *Ex Parte* Motion for Leave to Amend Plaintiff's Original Petition to add Defendant, CSR, Ltd. – Page 2
Q:\Asbestos\Out-of-State Cases\Louisiana\Lewis, Alton\Motions & Responses\Ex Parte Motion for Leave to Amend Plaintiff's Petition to Add CSR.docx

Case 3:11-cv-00199-BAJ -SCR   Document 1-3   03/28/11   Page 38 of 47

**ORDER**

Let the above and foregoing First Supplemental and Amended Petition to the

Original Petition for Damages be filed as prayed for.

SO ORDERED, this the 27 day of October , 2009, ~~New Orleans~~, Baton Rouge

Louisiana.

_____
JUDGE

CERTIFIED TRUE COPY

≈31130

DEPUTY CLERK OF COURT

EAST BATON ROUGE PARISH, LA.
FILED

2009 OCT 27 PM 1:36

DOUG WELBORN
CLERK OF COURT E.R.R. PARISH

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT COURT FOR THE PARISH
OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24              DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                          DEPUTY CLERK

**FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES**

COMES NOW Petitioner, by and through undersigned counsel, who respectfully supplements and amends his Petition for Damages solely in the following particulars:

1.    For the purpose of adding the following defendant:

a.    **CSR, Limited** (*sued individually and as successor-in-interest and as alter ego to* AUSTRALIAN BLUE ASBESTOS PROPRIETARY, LIMITED).

2.    As to CSR, Limited, Plaintiff asserts causes of action in strict liability for the manufacture and sale of unreasonably dangerous asbestos-containing product(s), which were used at the facilities Petitioner worked with as a plumber's apprentice in Shreveport, Louisiana from approximately 1959 through 1960.

3.    As to CSR, Limited, Plaintiff asserts causes of action in negligence and failure to warn for the sale and supply of asbestos and asbestos-containing products, namely Johns Manville transite sewer pipe, at the facilities in and around Shreveport, Louisiana where Mr. Lewis worked as a plumber's apprentice thereby substantially contributing to Petitioner's asbestos exposure and resultant development of malignant mesothelioma.

4.    CSR, Limited, was a manufacturer, seller, user, distributor and/or supplier of asbestos products and was engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products, or representing itself as a

manufacturer of asbestos products, or was a professional vendor of asbestos or asbestos-containing products, which were expected to and did reach Petitioner's work sites and to which Petitioner was exposed.

5.      The products manufactured, sold, distributed, supplied and/or used by the defendant CSR, Limited, were defective, unreasonably dangerous, and unreasonably dangerous per se to Petitioner, an intended and foreseeable user of these products.  These defects include, without limitation, the following:

   a.    manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

   b.    manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the Petitioner who would be foreseeably exposed to them because of her husband's trade;

   c.    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

   d.    lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

   e.    failure of defendant to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

   f.    failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

   g.    failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

   h.    failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

   i.    defects in the composition and construction of these products;

   j.    failure to recall these products manufactured, sold, distributed and/or supplied;

   k.    failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

   l.    overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants;

m.   are liable to Petitioner in negligence, strict liability and/or strict products liability for its things that have caused harm to Petitioner.

6.   The defective conditions of defendant's products and fault, as noted above, are a proximate cause of Petitioner's injuries complained of herein.

7.   Petitioner further alleges that the foregoing defendant was also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Petitioner's injuries.

8.   The Plaintiff reiterates all other matters contained in the Original Petition for Damages including the prayer of his original and first supplemental petitions as though set forth at length herein.

WHEREFORE, the Petitioner prays that his original petition be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment herein in favor of Plaintiff and against all defendants as originally prayed for herein.

Respectfully submitted,

WADDELL LAW FIRM, LLC

By: _____
Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone:  (225) 636-5639
Facsimile:  (225) 636-5209

and

ANDERMAN LAW FIRM, LLC
Jody E Anderman (Bar No. 18764)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone:  (225) 612-8450

Counsel for Plaintiff

CERTIFIED TRUE COPY

~31130

DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT COURT
EAST BATON ROUGE PARISH, LA
FILED

2009 OCT 27 PM 1:37

DEPUTY CLERK OF COURT, E.B.R. PARISH
DOUG WELBORN
CLERK OF COURT E.B.R. PARISH

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

911060497003

## SERVICE INFORMATION

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS' ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES:**

1. **CSR, LIMITED**, a foreign corporation with its principal place of business in Australia, and with an agent for service in the State of Louisiana, may be served, to-wit: Frank Accardo, Esq., Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP, 3200 Energy Centre, 1100 Poydras Street, New Orleans, Louisiana 70163-3200. This Defendant is being sued as a Supplier Defendant.

2. **CSR, LIMITED**, a foreign corporation with its principal place of business in Australia, and its executive officers may be served *via certified mail return receipt requested,* to-wit: 9 Help Street, Chatswood, New South Whales, Australia 2067. This Defendant is being sued as a Supplier Defendant.

3. **CSR, LIMITED**, a foreign corporation with its principal place of business in Australia, may be served through its attorneys, to-wit: Michael Futterman, Esq., Futterman & Dupree, LLP, 160 Sansome Street, 17th Floor, San Francisco, CA 94104. This Defendant is being sued as a Supplier Defendant.

4. **ATLAS REFINERY, INC.**
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This Defendant is being sued as a Premise Defendant.

5. **BUFFALO PUMPS, INC.** (sued individually and as successor-in-interest to BUFFALO FORGE COMPANY)
   A New York corporation with its principal place of business in the state of New York, may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 874 Oliver Street, North Tonawanda, NY 14120-3298. This defendant is being sued as an Equipment Defendant.

6. **CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This defendant is being sued as an Equipment Defendant.

7. **COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office, Marvin McCarty, deceased)
   May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 601 Carlson Parkway, Minnetonka, MN 55305. Commercial Union Insurance Company issued policies of comprehensive general liability insurance to Eagle, Inc. that provided coverage for the causes of action asserted by Plaintiff against Eagle, Inc. As such, Commercial Union Insurance Company is liable for the damages alleged herein against Eagle, Inc., individually, jointly and *in solido.*

8. **CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE CO.)
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This defendant is being sued as an Equipment Defendant.

9.    **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**, as insurer
      of The J. Graves Insulation Company, Inc.
      May be served **through the Louisiana Long Arm Statute pursuant Article
      1261(3) to-wit:** 333 S. Wasbash, Chicago, IL 60604.  The Fidelity and Casualty
      Company of New York issued policies of comprehensive general liability
      insurance to The J. Graves Insulation Company, Inc., that provided coverage for
      the causes of action asserted by Plaintiff against The J. Graves Insulation
      Company, Inc.  As such, The Fidelity and Casualty Company of New York is
      liable for the damages alleged herein against The J. Graves Insulation Company,
      Inc., individually, jointly and *in solido*.

10.   **FIRST STATE INSURANCE COMPANY**, as insurer of The J. Graves
      Insulation Company, Inc.
      May be served **through the Louisiana Long Arm Statute pursuant Article
      1261(3) to-wit:** One Harford Plaza, Harford, CT 06155.  First State Insurance
      Company issued policies of comprehensive general liability insurance to The J.
      Graves Insulation Company, Inc., that provided coverage for the causes of action
      asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such,
      The Fidelity and Casualty Company of New York is liable for the damages
      alleged herein against The J. Graves Insulation Company, Inc., individually,
      jointly and *in solido*.

11.   **FITZGERALD CONTRACTORS, L.L.C.** f/k/a FITZGERALD PLUMBING
      AND HEATING COMPANY, INC.
      May be served through its registered agent for service of process, William C.
      Kalmach, 333 Texas Street, Suite 1700, Shreveport, LA 71101.  This defendant is
      being sued as an Employer Defendant.

12.   **FOSTER WHEELER ENERGY CORPORATION**
      May be served through its registered agent for service of process, CT Corporation
      System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This
      defendant is being sued as an Equipment Defendant.

13.   **FOSTER WHEELER, LLC**
      May be served through its registered agent for service of process, CT Corporation
      System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This
      defendant is being sued as an Equipment Defendant.

14.   **GARLOCK, INC.**
      May be served through its registered agent for service of process, CT Corporation
      System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This
      defendant is being sued as a Manufacturer Defendant.

15.   **GARLOCK SEALING TECHNOLOGIES, LLC** (sued individually and as
      successor-in-interest to GARLOCK, INC.)
      May be served through its registered agent for service of process, CT Corporation
      System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This
      defendant is being sued as a Manufacturer Defendant.

16.   **GENERAL ELECTRIC COMPANY**
      May be served through its registered agent for service of process, CT Corporation
      System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This
      defendant is being sued as an Equipment Defendant.

17.   **GEORGIA-PACIFIC, LLC** (sued individually and successor-in-interest to
      BESTWALL GYPSUM COMPANY)
      May be served through its registered agent for service of process, CT Corporation

System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This defendant is being sued as a Manufacturer Defendant.

18.     **HAMM ENTERPRISES, INC.** f/k/a BERG MECHANICAL, INC.
May be served through its registered agent for service of process, Robert B. Hamm, 531 West 61st Street, Shreveport, LA 71108.  This defendant is being sued as an Employer Defendant.

19.     **HIGHLANDS INSURANCE COMPANIES**, as insurer for The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** One Harford Plaza, Harford, CT 06155.  Highlands Insurance Companies issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

20.     **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL STEAM TURBINE COMMPANY)
May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129.  This defendant is being sued as an Equipment Defendant.

21.     **INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-interest to CHAMPION PAPER CORPORATION)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This defendant is being sued as a Premise Defendant.

22.     **THE J. GRAVES INSULATION COMPANY** f/k/a GRAVES-ABER INSULATION COMPANY, INC.
May be served through its registered agent for service of process, Eddie T. Scott, 3592 Sligo Road, Haughton, LA 71037.  This defendant is being sued as a Contractor and Distributor Defendant.

23.     **KAISER GYPSUM COMPANY, INC.**
May be served through its registered agent for service of process, Corporation Service Company, 6500 Harbour Heights Pkwy, Mukiteo, WA 98275.  This defendant is being sued as a Manufacturer Defendant.

24.     **LESLIE CONTROLS, INC.**
A Florida corporation with its principal place of business in the state of Florida, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 12501 Telecom Drive, Tampa, FL 33637.  This defendant 'is being sued as an Equipment Defendant.

25.     **LIBBY, INC.**
An Ohio corporation with its principal place of business in the state of Ohio, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 300 Madison Avenue, Toledo, OH 43604.  This defendant is being sued as a Premise Defendant.

26.     **THE MCCARTY CORP.** f/k/a MCCARTY-BRANTON, INC.
May be served through its registered agent for service of process, Paul H. Spaht, 445 North Blvd., Suite 300, Baton Rouge, LA 70802.  This defendant is being

sued as a Contractor and Distributor Defendant.

27. **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,** as insurer of The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 70 Pine Street, New York, NY 10270.  National Union Fire Insurance Company of Pittsburgh, PA issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

28. **NUTMEG INSURANCE COMPANY,** as insurer of The J. Graves Insulation Company, Inc.
May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129.  Nutmeg Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

29. **PENZOIL-QUAKER STATE COMPANY** (as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to ATLAS REFINERY, INC.)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This defendant is being sued as a Premise Defendant.

30. **SAFETY MUTUAL CASUALTY CORPORATION** n/k/a SAFETY NATIONAL CASUALTY CORPORATION, as insurer of The Graves Insulation Company, Inc.
May be served through its registered agent for service of process, Terrence T. Schoeninger, 1832 Schuetz Road, Saint Louis, MO 63146.  Safety Mutual Casualty Corporation n/k/a Safety National Casualty Corporation issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

31. **SCOTTSDALE INSURANCE COMPANY,** as insurer of The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** One Nationwide Plaza, Columbus, OH 43215-2220.  Scottsdale Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

32. **UNION CARBIDE CORPORATION**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This

defendant is being sued as a Supplier Defendant.

33.   **UNITED STATES FIDELITY AND GUARANTY,** as insurer of The J. Graves Insulation, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** One Tower Square, Hartford, CT 06183.  United States Fidelity and Guaranty issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

34.   **WEYERHAUSER COMPANY** (sued individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
A Washington corporation with its principal place of business in the state of Washington, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 33663 Weyerhauser Way South, Federal Way, WA 98063-9777.  This defendant is being sued as a Premise Defendant.

35.   **ZURICH AMERICAN INSURANCE COMPANY** a/k/a and/or f/k/a ZURICH INSURANCE COMPANY, as insurer of The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 1400 American Lane, Schaumburg, IL 60196.  Zurich American Insurance Company a/k/a and/or f/k/a Zurich Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO.: 583178

SECTION

**SEC. 24**

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

COST OK Amt 3310 -
10606
OCT 05 2009

FILED: _____

BY _____
DEPUTY CLERK OF COURT

### PETITION FOR DAMAGES

    Now into Court, through undersigned counsel, comes the petitioner, Alton Lewis, (hereinafter referred to as the Plaintiff), is an adult citizen of the State of Louisiana, who files his Petition for Damages:

    1.    The Plaintiff had substantial exposure to asbestos and asbestos-containing products sold, distributed, supplied, applied, removed, used, manipulated and/or maintained on defendants' premise in this Parish.

    2.    The Defendants, identified in Exhibit "A," are all either:  (a) foreign corporations licensed to do and doing business in the state of Louisiana, (b) domestic corporations licensed to do business and doing business in the state of Louisiana, (c) individuals who are domiciled in this state, (d) individuals who are not domiciled in this state, or (e) foreign or alien insurers, that are liable to the Plaintiff for the claims asserted herein.

    3.    Each Defendant corporation and/or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, installation, removal, maintenance, sale and/or distribution of asbestos asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as "asbestos-containing products"), or held themselves out as manufacturers of such products or were professional vendors of such products.

    4.    Plaintiff worked with and/or was exposed to asbestos-containing products while working at defendants' premises in the state of Louisiana.  Plaintiff



EXHIBIT
3 Part 2

work sites, trades and years of exposure to asbestos include, but are not limited to those identified below. Plaintiff has been exposed, on numerous occasions, to asbestos and/or asbestos-containing products produced, manufactured, installed, removed, maintained, sold, and/or distributed by Defendants and, in so doing, has inhaled significant quantities of asbestos fibers, and as a result has suffered injuries proximately caused by such exposure.

5.     Plaintiff was exposed to asbestos or asbestos-containing products from his employment as a machinist mate, plumber and security guard at multiple locations, including but not limited to, the following: Atlas Refinery (in/around Shreveport, Louisiana); International Paper Company (Springhill, Louisiana); Libby, Inc. (in/around Shreveport, Louisiana); Willamette Paper Mill, and commercial sites in and around Houston, Texas and Shreveport, Louisiana. The conduct of each Defendant was a substantial contributing factor in causing Plaintiff's injuries, such that all Defendants are liable jointly, severally, and in solido for all of the damages complained of herein.

<u>VENUE</u>

6.     The defendants, Anco Insulations, Inc. and The McCarty Corporation, are domestic corporations with principal places of business located in this Parish. Plaintiff was exposed to products, distributed and installed by the above-referenced defendants at the work sites listed herein. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

7.     Each of the defendants listed in Exhibits "A," contributed with Anco Insulations, Inc. and The McCarty Corporation, to Plaintiff's exposure to asbestos at his work sites, including but not limited to, the exposure sites listed herein. Each of these defendants is liable in solido, with Anco Insulations, Inc. and The McCarty Corporation to the Plaintiff. Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

8.     Further, the insurance defendants, Commercial Union Insurance Company, The Fidelity and Casualty Company of New York, First State Insurance

2

Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company issued policies of comprehensive general liability insurance to defendants, Eagle, Inc., The McCarty Corporation and/or The J. Graves Insulation Company, Inc. Eagle, Inc., The McCarty Corporation and The J. Graves Insulation Company, Inc. contributed to Plaintiff's exposure at his work sites, including but not limited to, the exposure sites listed herein. As such, the insurance defendants are liable for the damages alleged against Eagle, Inc., The McCarty Corporation and/or The J. Graves Insulation Company, Inc., individually, jointly and *in solido*. In addition, pursuant to the Louisiana Direct Action Statute, L.R.S. 22:1269, venue is proper for these defendants.

## BACKGROUND

9.      During Plaintiff's occupational exposure period, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products set forth below and identified herein:

| Defendant | Asbestos-Containing Products |
|---|---|
| Anco Insulations, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Buffalo Pumps, Inc., successor-in-interest to Buffalo Forge Company | Pumps, gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| CBS Corporation, f/k/a Viacom, Inc., successor by merger with CBS Corporation, f/k/a Westinghouse Electric Corporation | Equipment manufacturer of turbines and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Commercial Union Insurance Company, as insurer of Eagle, Inc. and The McCarty Corporation | *See* Eagle, Inc. and The McCarty Corporation |
| Crane Co., individually and as successor-in-interest to | Equipment manufacturer of industrial and engineered pumps, control valves, quarter turn |

3

| Chapman Valve Co. | valves, mechanical seals and sealing systems |
|---|---|
| Eagle, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Foster Wheeler Energy Corporation | Equipment manufacturer of boilers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Foster Wheeler, LLC | Equipment manufacturer of boilers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Garlock, Inc. | Gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Garlock Sealing Technologies, LLC, individually and as successor-in-interest to Garlock, Inc. | Gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| General Electric Company | Equipment manufacturer of turbines, drives, disconnects, circuit interrupters, brakes, solenoids, busway, circuit breakers, motors, power assemblies, switches, load centers, power breakers, motor control assemblies, metering, panel boards, power outlet panels, relays, starters, controllers, generators, wire, switchboards, switchgear, terminal blocks, transfer switches, transformers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Georgia-Pacific, LLC | Lite acoustical plaster, patching plaster, drywall adhesive, Triple Duty joint compound, Geo Pac joint compound, Speed Set joint compound, Bedding compound, Dry Mixed joint compound, Texture, Central Mix, Spackling compound, Laminating compound Topping compound, All Purpose joint compound and Kalite. |
| The Fidelity and Casualty Company of New York, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company, as insurer of the J. Graves Insulation Company, Inc. | *See* The J. Graves Insulation Company, Inc. |
| IMO Industries, Inc., | Equipment manufacturer of turbines and such |

4

| | |
|---|---|
| individually and as successor-in-interest to Delaval Steam Turbine Company | other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| The J. Graves Insulation Company, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| The McCarty Corporation | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Union Carbide Corporation | Asbestos fiber and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |

Each of the foregoing asbestos containing products was used at Plaintiff's jobsites listed herein where Plaintiff was exposed to such asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

10.     When inhaled or otherwise ingested, asbestos, shortly after inhalation or ingestion, causes irreparable and progressive damage that can manifest itself as asbestos-related pleural diseases, asbestosis, lung cancer and mesothelioma, and other diseases and injuries.

11.     Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling. Instead of warning the Plaintiff and the general public about these dangers, the defendants ignored or concealed such information, or condoned such concealment. Those defendants who have engaged in concealing the dangers of asbestos are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence and strict liability, identifies other forms of misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

5

12.    In connection with his work at Plaintiff's jobsites listed herein during the exposure period, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos having neither knowledge, nor reason to believe that these materials were dangerous.

13.    As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos while working at the exposure sites listed herein, Plaintiff has received injuries, both physically and mentally, including, without limitation, malignant mesothelioma.

14.    Because of the latency period of the above injuries and other injuries caused by asbestos and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff has only recently, within one year, discovered his injuries.

## COUNT ONE

### NEGLIGENCE

**("Defendants" in this count means Anco Insulations, Inc., Buffalo Pumps, Inc., CBS Corporation, Crane Co., Eagle, Inc., The J. Graves Insulation Company, Foster Wheeler Energy Corporation, Foster Wheeler, LLC, Garlock, Inc., Garlock Sealing Technologies, LLC, General Electric Company, Georgia-Pacific, LLC, IMO Industries, Inc., Kaiser Gypsum Company, Inc., Leslie Controls, Inc. and Union Carbide Corporation)**

15.    The illnesses and disabilities of Plaintiff are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold and/or otherwise put into the stream of commerce asbestos or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some or all of the following respects, among others, same being the proximate cause of Plaintiff's illnesses and disabilities:

(a)    failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos and/or asbestos-containing products;

(b)    failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective

6

equipment and appliances, if any, to protect Plaintiff from being harmed and disabled by exposure to asbestos and/or asbestos-containing products;

(c)   failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, to warn of the dangers to health of coming into contact with said asbestos or asbestos-containing products and/or machinery;

(d)   failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling, installing, and/or using or removing asbestos and/or asbestos-containing products;

(e)   failing to develop and/or use a substitute material to eliminate asbestos fibers in the asbestos-containing products;

(f)   failing to properly design and manufacture asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)   failing to properly test asbestos-containing products before they were released for consumer use; and

(h)   failing to recall and/or remove from the stream of commerce said asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products.

## COUNT TWO

### STRICT LIABILITY
("Defendants" in this count means Anco Insulations, Inc., Buffalo Pumps, Inc., CBS Corporation, Crane Co., Eagle, Inc., The J. Graves Insulation Company, Foster Wheeler Energy Corporation, Foster Wheeler, LLC, Garlock, Inc., Garlock Sealing Technologies, LLC, General Electric Company, Georgia-Pacific, LLC, IMO Industries, Inc., Kaiser Gypsum Company, Inc., Leslie Controls, Inc. and Union Carbide Corporation)

16.   All of the allegations contained in the previous paragraphs are realleged herein.

17.   Plaintiff was exposed to asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest

7

for use as construction materials and/or machinery in industrial operations. The defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products were in this defective condition at the time they left the hands of Defendants. Further, said products were unreasonably dangerous per se, unreasonably dangerous due to Defendants' failure to warn, and unreasonably dangerous due to a design defect.

18.     The Defendants are engaged in the business of selling asbestos-containing products, and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of Plaintiff.

19.     Defendants knew that these asbestos-containing products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation, installation, operation, maintenance and/or repair of the asbestos-containing products.

20.     Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for purposes of manipulation and/or installation.

21.     During the periods that Plaintiff was exposed to the Defendants' asbestos-containing products, these asbestos-containing products were being used in a manner which was intended and/or reasonably foreseeable by Defendants.

## COUNT THREE

### NEGLIGENCE AGAINST MANUFACTURER AND/OR EQUIPMENT DEFENDANTS

**("Defendants" in this count means Buffalo Pumps, Inc., CBS Corporation, Crane Co., Foster Wheeler Energy Corporation, Foster Wheeler, LLC, General Electric Company, IMO Industries, Inc. and Leslie Controls, Inc.)**

22.     Petitioner alleges that he was exposed to asbestos fibers emanating from asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products. Each Defendant corporation or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, sale, and distribution of asbestos or asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products.

8

Petitioner would show that he has been exposed, on numerous occasions, to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products produced and sold by Defendants and, in so doing, has inhaled great quantities of asbestos fibers. Further, Petitioner alleges, as more specifically set out below, that Petitioner has suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants. In that each exposure to such products caused or contributed to Petitioner's injuries, Petitioner says that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

23.     Petitioner was exposed to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products that were manufactured, designed and distributed by the Defendants and their predecessors-in-interest for use as construction materials or machinery in industrial operations. Petitioner would show that the defective design and condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products and machinery were in this defective condition at the time they were designed by or left the hands of Defendants. Petitioner would show that Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products. Petitioner would show that this market defect rendered such products and machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Defendants. Petitioner would show that Defendants are liable in product liability including, but not limited to, strict product liability for the above-described defects.

24.     The Defendants are or were engaged in the business of selling, manufacturing, producing, designing, and otherwise putting into the stream of commerce asbestos-containing products and machinery requiring or calling for asbestos

9

or asbestos-containing products, and these asbestos-containing products and machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed and otherwise put into the stream of commerce were a proximate and producing cause of the injuries of Petitioner.

25.   Defendants knew that these asbestos-containing products and machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation or installation of the asbestos-containing products or operation, maintenance and repair of the machinery requiring or calling for the use of asbestos and asbestos-containing products.

26.   Petitioner was unaware of the hazards and defects in the asbestos-containing products of the Defendants, which made them unsafe for purposes of manipulation or installation.  Similarly, Petitioner was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and asbestos-containing materials.

27.   During the periods that Petitioner was exposed to the asbestos-containing products and machinery of the Defendants, these asbestos-containing products and machinery were being utilized in a manner, which was intended by Defendants.

28.   The illness and disabilities of Petitioner are a direct and proximate result of the negligence of each Defendant and its predecessor-in-interest in that said entities produced, designed, sold, and otherwise put into the stream of commerce, asbestos, asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Petitioner's health and well-being.  Defendants created hazardous and deadly conditions to which Petitioner was exposed and which caused Petitioner to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some, or all of the following respects, among others, same being the proximate cause of Petitioner's illness and disabilities:

a.  in failing to timely and adequately warn Petitioner of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products;

b.  in failing to provide Petitioner with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Petitioner from being harmed and disabled by exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products;

c.  in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, or machinery requiring or calling for the use of asbestos and asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and machinery;

d.  in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and safe method of handling and installing asbestos and asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and asbestos-containing products in a safe manner;

e.  in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products, or the machinery requiring or calling for the use of asbestos and asbestos-containing products;

f.  in failing to properly design and manufacture asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

11

g.    in failing to properly test said asbestos-containing products and machinery before they were released for consumer use; and

h.    in failing to recall or remove from the stream of commerce said asbestos-containing products and machinery or machinery requiring or calling for the use of asbestos and asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products and machinery.

29.    Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave.  Petitioner also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a Defendant committed at the direction of an officer of the United States Government.  Petitioner's allegations against equipment defendants are expressly limited to causes of action or recovery for injuries caused by exposure to asbestos from land-based equipment only.

<u>**COUNT FOUR**</u>

**NEGLIGENCE AND STRICT LIABILITY**
**AGAINST THE CONTRACTOR DEFENDANTS**
("Defendants" in this count means Anco Insulations, Inc., Commercial Union Insurance Company, as insurer for Eagle, Inc. and The McCarty Corporation, Eagle, Inc., Fitzgerald Contractors, LLC, f/k/a Fitzgerald Plumbing and Heating Company, Inc., Hamm Enterprises, Inc., f/k/a Berg Mechanical, Inc., The J. Graves Company and its insurers, The Fidelity and Casualty Company, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty, and Zurich American Insurance Company, a/k/a Zurich Insurance Company, and The McCarty Corporation )

30.    The Defendants contracted at the jobsites identified herein to perform certain activities at those jobsites prior to and/or during each Plaintiff's exposure period at each such jobsites.

31.    The activities conducted by the Defendants and/or their subcontractors, included, but were not limited to, the application, demolition, displacement, disturbance, fabrication, installation, purchase, removal, repair, replacement, tearing out, and use of asbestos-containing products at, on and/or for the jobsites identified herein.

12

32.     The foregoing activities resulted in the release of substantial quantities of asbestos dust into the work environment.

33.     Plaintiff was exposed to and inhaled substantial quantities of asbestos dust as a direct and proximate result of the activities of the Contractor Defendants and their subcontractors.

34.     The Contractor Defendants negligently performed and/or permitted their subcontractors to negligently perform the foregoing activities in the following non-exclusive particulars:

(a)     By creating a work environment laden with asbestos dust and an unhealthy and unsafe place for Plaintiff to work;

(b)     By failing to provide warnings, or adequate warnings, to Plaintiff of the dangers and risks posed by the asbestos in the atmosphere in which Plaintiff worked; of the need for correct, adequate, and/or appropriate safety equipment; of critical medical and safety information regarding asbestos hazards in general and of hazards at the jobsites in particular; and of the hazards created by Defendants' activities;

(c)     By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly asbestos;

(d)     By failing to apprise Plaintiff of the need for periodic medical examinations as a result of Plaintiff's exposure to asbestos created by Defendants' activities;

(e)     By failing to ventilate and/or properly ventilate the areas in which Plaintiff performed activities, or otherwise provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

(f)     By failing to clean up and/or properly clean up the asbestos dust created by Plaintiff's activities;

(g)     By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as

13

Plaintiff, who came into contact with asbestos dust as a result of Plaintiff's activities;

(h)   By recklessly concealing from Plaintiff and negligently failing to provide critical medical and safety information to Plaintiff regarding the safety and health risks associated with the asbestos and asbestos-containing products;

(i)   By failing to adopt and/or failing to enforce safety rules after such rules were actually adopted;

(j)   By failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, occupational exposure to asbestos;

(k)   By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

(l)   By failing to supervise their operations and the operations of their subcontractors;

(m)   By commencing and continuing operations, which were under their control and supervision when they knew or should have known that such operations would cause Plaintiff and co-employees to be exposed to asbestos, without protection, on a daily basis;

(n)   By failing to timely, adequately and safely remove asbestos hazards from the workplace;

(o)   By failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited to, those regulations promulgated by the U. S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety and Health Act);

(p)   By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Defendants knew, or in the exercise of reasonable diligence should have known, were

14

unreasonably dangerous, or unreasonably dangerous per se;

(q)   By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with the their activities;

(r)   By failing to test or adequately test the materials with which they were working to determine the presence of asbestos;

(s)   By failing to purchase products and materials that did not contain asbestos;

(t)   By purchasing, using, applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that contained asbestos;

(u)   By failing to properly label products that they purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and tore out as containing asbestos; and

(v)   By conducting their activities through such other negligent acts or omissions, as may be revealed in discovery and/or proven at trial.   •

35.   The negligent acts outlined above were a substantial contributing factor in Plaintiff's exposure to dangerous and hazardous levels of asbestos, and resultant damages.

36.   The foregoing negligent acts of the Contractor Defendants were a cause-in-fact and proximate cause of the Plaintiff's injuries and damages.

37.   Additionally, the Contractor Defendants are liable for the acts of their subcontractors under the doctrine of *respondeat superior* and Louisiana Civil Code article 2320.

38.   Additionally and alternatively, the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants were in the care, custody and control of the Contractor Defendants, jointly with the premise defendants, were unreasonably dangerous due to the presence of asbestos, and were a proximate cause and cause-in-fact of the Plaintiff's injuries.  Therefore, the Contractor

Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

39. Additionally, when such contractors did not employ Plaintiff, Plaintiff was exposed to the asbestos containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants that were in the care, custody and control of the Contractor Defendants and were unreasonably dangerous due to the presence of asbestos.

## COUNT FIVE

### NEGLIGENCE AND STRICT LIABILITY
### OF PLAINTIFF'S EMPLOYERS
("Defendants" in this count means Fitzgerald Contractors, LLC, f/k/a Fitzgerald Plumbing and Heating Company, Inc., and Hamm Enterprises, Inc., f/k/a Berg Mechanical, Inc.)

40. Plaintiff alleges negligent conduct and misconduct on behalf of Plaintiff's employers in failing to provide and/or ensure a safe workplace for their employees, free of hazardous concentrations of asbestos and asbestos-containing dust.

41. At various times, Plaintiff was employed by the Employer Defendants and during such time was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by Defendants.

42. The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest undertook and assumed the duties and responsibilities owed individually for providing Plaintiff with a safe place to work and Defendants negligently failed to provide Plaintiff a safe place to work.

43. Each of the Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently hiring, delegating, training, administering, supervising and performing duties owed individually and/or delegated to them, or failing to hire, delegate, train, administer, supervise or perform their duties owed individually and/or delegated to them directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Plaintiff. The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one,

16

(o)   in failing to properly implement control measures to reduce or eliminate harmful agents in the work place, including asbestos; and

(p)   in failing to properly train, educate and/or warn the plaintiff of the dangers of asbestos.

44.   The negligence of Plaintiff's employers was a substantial factor and contributed in causing Plaintiff, Alton Lewis, to contract malignant mesothelioma.

45.   Additionally and alternatively, the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Employer Defendants were in the care, custody and control of the Employer Defendants, jointly with the premise defendants, were unreasonably dangerous due to the presence of asbestos, and were a proximate cause and cause-in-fact of the Plaintiff's injuries.  Therefore, the Employer Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

46.   Plaintiff disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

<u>COUNT SIX</u>

NEGLIGENCE AND STRICT PREMISE LIABILITY
(" Defendants" in this case means Atlas Refinery, Inc., International Paper Company, individually and as successor-in-interest to Champion Paper Corporation, Libby, Inc, Penzoil-Quaker State Company, as successor by merger to Penzoil Products Company, successor to Atlas Refinery, Inc., and Weyerhauser Company, individually and as successor-in-interest to Willamette Industries, Inc.)

47.   Plaintiff was exposed to asbestos and asbestos-containing materials while working at the jobsites identified herein. The premise defendants at all times relevant to this complaint, have been either the operator and/or the manager and/or the owner and occupier of its respective facilities and in custody of the facilities during the relevant time period.  The facilities were defective in that the asbestos and asbestos-containing materials in the facilities created an unreasonable risk of harm to the Plaintiff and other persons on the premises.  Plaintiff was exposed to asbestos and asbestos-

some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

(a)     in failing to provide adequate safety equipment;

(b)     in failing to protect Plaintiff from any asbestos exposure;

(c)     in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

(d)     in failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products;

(e)     in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff 's exposure to asbestos dust;

(f)     in failing to properly perform safety inspections of the Plaintiff's work place;

(g)     in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of asbestos at Plaintiff's work sites;

(h)     in failing to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

(i)     in failing to properly perform or direct the removal and abatement of asbestos in place at Plaintiff's work sites; and

(j)     in negligently failing to disclose, warn or reveal medical and safety information to Plaintiff regarding the hazards of asbestos.

(k)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(l)     in failing to evaluate the work place;

(m)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(n)     in failing to properly evaluate the work place;

17

910121614018

containing materials while he was an invitee at the premise defendants' facilities. The defective condition of the facilities was a proximate cause of the Plaintiff contracting malignant mesothelioma. Therefore, the Premise Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

48.     Each of the Premise Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently hiring, delegating, training, administering, supervising and performing duties owed individually and/or delegated to them, or failing to hire, delegate, train, administer, supervise or perform their duties owed individually and/or delegated to them directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Plaintiff. The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

   (a)     in failing to provide adequate safety equipment;

   (b)     in failing to protect Plaintiff from any asbestos exposure;

   (c)     in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

   (d)     in failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products;

   (e)     in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff 's exposure to asbestos dust;

   (f)     in failing to properly perform safety inspections of the Plaintiff's work place;

   (g)     in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of asbestos at Plaintiff's work sites;

19

(h)     in failing to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

(i)     in failing to properly perform or direct the removal and abatement of asbestos in place at Plaintiff's work sites; and

(j)     in negligently failing to disclose, warn or reveal medical and safety information to Plaintiff regarding the hazards of asbestos.

(k)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(l)     in failing to evaluate the work place;

(m)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(n)     in failing to properly evaluate the work place;

(o)     in failing to properly implement control measures to reduce or eliminate harmful agents in the work place, including asbestos; and

(p)     in failing to properly train, educate and/or warn the plaintiff of the dangers of asbestos.

49.     The Premise Defendants are liable to Plaintiff for its failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with exposure to asbestos. The Premise Defendants, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees. The Premise Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm. The Premise Defendants' failure to protect Plaintiff, from known and/or foreseeable dangers constitutes negligence. Said negligence was a proximate cause of Plaintiff, Alton Lewis, contracting malignant mesothelioma.

50.     Plaintiffs disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from any exposure to

asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

**COUNT SEVEN**

**INSURANCE ALLEGATIONS**

51.     Plaintiff avers that Commercial Union Insurance Company issued policies of comprehensive general liability insurance to Eagle, Inc. and The McCarty Corporation that provided coverage for the causes of action asserted by plaintiff against Eagle, Inc. and The McCarty Corporation. As such, Commercial Union Insurance Company is liable for the damages alleged against Eagle, Inc. and The McCarty Corporation, individually, jointly and *in solido*.

52.     Plaintiff avers that The Fidelity and Casualty Company of New York, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc. that provided coverage for the causes of action asserted by plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York, First State Insurance company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company are liable for the damages alleged against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

**COUNT EIGHT**

**JOINT AND SOLIDARY LIABILITY**

53.     All of the allegations contained in the previous paragraphs are realleged herein.

21

54.     Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

55.     The actions of each of the Defendants are a proximate cause of Plaintiff's injuries.  As a result, all Defendants are jointly and solidarily liable for the damage caused by their combined actions.

## DAMAGES

56.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease and other related physical conditions of Plaintiff.  Plaintiff has been damaged in the following non-exclusive particulars:

(a)     Plaintiff has suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout his lifetime;

(b)     Plaintiff has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the progressively disabling character of asbestos-related lung disease and other related physical conditions from which he now suffers and will continue to suffer in the future;

(c)     Plaintiff suffers a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of asbestos-related lung disease and other related physical conditions;

(d)     Plaintiff suffers a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of asbestos-related lung disease and other related physical conditions;

(e)     Plaintiff is subject to increased progression of his cancer all due to his exposure to asbestos by the named Defendants;

(f)     Plaintiff requires or will require domestic help and nursing care due to his disabilities and has been or will be required to pay for such domestic help and nursing services;

22

(g)   Prior to the onset of his symptoms, Plaintiff was extremely active and participated in numerous hobbies and activities, and as a result of his illness, Plaintiff has been and will be prevented from engaging in some of said activities which were normal to him prior to developing symptoms from asbestos-related lung disease.  Plaintiff has been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life; and

57.   Plaintiff filed suit within one (1) year of the date of discovering Plaintiff's asbestos-related conditions or the existence of any asbestos-related causes of action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for general damages, special damages, for their costs expended herein, for prejudgment interest from the date of Plaintiff's filing of the lawsuit and post judgment interest on the judgment at the rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiff may show themselves justly entitled.

Respectfully submitted,

WADDELL LAW FIRM, LLC

By: _____
Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Hwy., Suite A
Baton Rouge, LA  70809
Telephone: (225) 636-5639
Facsimile: (225) 636-5209

and

ANDERMAN LAW FIRM, LLC
Jody E. Anderman (Bar No. 18764)
8708 Jefferson Hwy., Ste. A
Baton Rouge, LA  70809
Telephone: (225) 612-8450

Counsel for plaintiff

CERTIFIED TRUE COPY
930130
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT COURT
EAST BATON ROUGE PARISH, LA
FILED
2009 OCT -5  AM 9: 12
DOUG WELBORN
CLERK OF COURT E.B.R. PARISH

CERTIFIED
TRUE COPY
JAN 06 2011
DEPUTY CLERK OF COURT

CIVIL
- ☑ 01-DAMAGES
- ☐ 02-CONTRACT
- ☐ 03-PRISONER SUIT
- ☐ 04-EXECUTORY PROCESS
- ☐ 05-SUIT ON NOTES
- ☐ 06-EVICTION
- ☐ 07-WORKMENS COMPENSATION
- ☐ 08-JUDICIAL REVIEW
- ☐ 09-PROPERTY RIGHTS
- ☐ 10-INJUNCTION MANDAMUS
- ☐ 11-COMM. PROP. PARTITIONS
- ☐ 12-PUBLIC SERV. COMM.
- ☐ 13-OTHER PARTITIONS
- ☐ 14-OTHER
- ☐ 15-D.E.Q.
- ☐ 16-
- ☐ 17-
- ☐ 18
- ☐
- ☐

23

## EXHIBIT "A"

1.  **ATLAS REFINERY, INC.**
    May be served through its registered agent for service of process, CT
    Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

2.  **ANCO INSULATION, INC.**
    A domestic corporation duly organized, created and existing under and by virtue
    of the laws of the state of Louisiana, with its principal place of business in Baton
    Rouge, Louisiana and with an agent for service, to-wit: Thomas E. Balhoff, 8440
    Jefferson Highway, Suite 301, Baton Rouge, LA 70809

3.  **BUFFALO PUMPS, INC.**
    **(individually and as successor-in-interest to BUFFALO FORGE COMPANY)**
    A New York corporation with its principal place of business in the state of New
    York, may be served **through the Louisiana Long Arm Statute pursuant Article
    1261(3) to-wit:** 874 Oliver Street, North Tonawanda, NY 14120-3298.

4.  **CBS CORPORATION**
    **(f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a
    WESTINGHOUSE ELECTRIC CORPORATION)**
    May be served through its registered agent for service of process, CT
    Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

5.  **COMMERCIAL UNION INSURANCE COMPANY**
    (as insurer for Eagle, Inc., f/k/a Eagle Asbestos & Packing Co., Inc. and The
    McCarty Corporation)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    A company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

6.  **CRANE CO.**
    (individually and as successor-in-interest to CHAPMAN VALVE CO.)
    May be served through its registered agent for service of process, CT
    Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

7.  **EAGLE, INC.**
    (Formerly Eagle Asbestos & Packing Co., Inc.)
    a corporation duly organized, created and existing under and by virtue of the
    laws of the state of Louisiana, with its principal place of business in New
    Orleans, Louisiana and with an agent for service in the state of Louisiana, to-wit:
    Susan B. Kohn, 1100 Poydras Street, 30th Floor, New Orleans, LA 70163

8.  **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**
    (as insurer of The J. Graves Insulation Company, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    A company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

9.  **FIRST STATE INSURANCE COMPANY**
    (as insurer of The J. Graves Insulation Company, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    A company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

10. **FITZGERALD CONTRACTORS, L.L.C.**
    (f/k/a FITZGERALD PLUMBING AND HEATING COMPANY, INC.)
    May be served through its registered agent for service of process, William C.
    Kalmach, 333 Texas Street, Suite 1700, Shreveport, LA 71101.

24

11.  **FOSTER WHEELER ENERGY CORPORATION**
     May be served through its registered agent for service of process, CT
     Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

12.  **FOSTER WHEELER, LLC**
     May be served through its registered agent for service of process, CT
     Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

13.  **GARLOCK, INC.**
     May be served through its registered agent for service of process, CT
     Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

14.  **GARLOCK SEALING TECHNOLOGIES, LLC**
     (individually and as successor-in-interest to GARLOCK, INC.)
     May be served through its registered agent for service of process, CT
     Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

15.  **GENERAL ELECTRIC COMPANY**
     May be served through its registered agent for service of process, CT
     Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

16.  **GEORGIA-PACIFIC, LLC**
     (individually and successor-in-interest to BESTWALL GYPSUM COMPANY)
     May be served through its registered agent for service of process, CT
     Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

17.  **HAMM ENTERPRISES, INC.**
     (f/k/a BERG MECHANICAL, INC.)
     May be served through its registered agent for service of process, Robert B.
     Hamm, 531 West 61st Street, Shreveport, LA 71108.

18.  **HIGHLANDS INSURANCE COMPANIES**
     (as insurer for The J. Graves Insulation Company, Inc.)
     (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
     A company authorized to do and doing business in the State of Louisiana, and
     who may be served through the Louisiana Secretary of State

19.  **IMO INDUSTRIES, INC.**
     (individually and as successor-in-interest to DELAVAL STEAM TURBINE
     COMMPANY)
     May be served through its registered agent for service of process, Corporation
     Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129.

20.  **INTERNATIONAL PAPER COMPANY**
     (individually and as successor-in-interest to CHAMPION PAPER
     CORPORATION)
     May be served through its registered agent for service of process, CT
     Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

21.  **THE J. GRAVES INSULATION COMPANY**
     (f/k/a GRAVES-ABER INSULATION COMPANY, INC.)
     May be served through its registered agent for service of process, Eddie T. Scott,
     3592 Sligo Road, Haughton, LA 71037.

22.  **KAISER GYPSUM COMPANY, INC.**
     May be served through its registered agent for service of process, Corporation
     Service Company, 6500 Harbour Heights Pkwy, Mukiteo, WA 98275. This

23. **LESLIE CONTROLS, INC.**
A Florida corporation with its principal place of business in the state of Florida, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 12501 Telecom Drive, Tampa, FL 33637.

24. **LIBBY, INC.**
An Ohio corporation with its principal place of business in the state of Ohio, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 300 Madison Avenue, Toledo, OH 43604.

25. **THE MCCARTY CORPORATION**
**(f/k/a MCCARTY-BRANTON, INC.)**
May be served through its registered agent for service of process, Paul H. Spaht, 445 North Blvd., Suite 300, Baton Rouge, LA 70802.

26. **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

27. **NUTMEG INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

28. **PENZOIL-QUAKER STATE COMPANY**
(as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to ATLAS REFINERY, INC.)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

29. **SAFETY MUTUAL CASUALTY CORPORATION n/k/a SAFETY NATIONAL CASUALTY CORPORATION**
(as insurer of The Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

30. **SCOTTSDALE INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

31. **UNION CARBIDE CORPORATION**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

32. **UNITED STATES FIDELITY AND GUARANTY**
(as insurer of The J. Graves Insulation, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

33.  **WEYERHAUSER COMPANY**
(individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
A Washington corporation with its principal place of business in the state of Washington, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 33663 Weyerhauser Way South, Federal Way, WA  98063-9777.

34.  **ZURICH AMERICAN INSURANCE COMPANY a/k/a and/or f/k/a ZURICH INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

PLEASE SERVE THE FOLLOWING DEFENDANTS
**WITH A COPY PLAINTIFF'S PETITION FOR**
**DAMAGES & MOTION FOR LEAVE TO PERPETUATE**
**TRIAL TESTIMONY:**

1.   **ATLAS REFINERY, INC.**
     Through its agent for service of process:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808.

2.   **ANCO INSULATION, INC.**
     Through its agent for service of process:
     Thomas E. Balhoff
     8440 Jefferson Highway
     Suite 301
     Baton Rouge, LA 70809.

3.   **BUFFALO PUMPS, INC.**
     **(individually and as successor-in-interest to BUFFALO FORGE   COMPANY)**
     (may be served **through the Louisiana Long Arm Statute pursuant Article**
     **1261(3))**
     874 Oliver Street
     North Tonawanda, NY 14120-3298.

4.   **CBS CORPORATION**
     **(f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a**
     **WESTINGHOUSE ELECTRIC CORPORATION)**
     Through its agent for service of process:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808.

5.   **COMMERCIAL UNION INSURANCE COMPANY**
     (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS & PACKING and THE
     MCCARTY CORPORATION)
     (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
     Through the Louisiana Secretary of State
     8549 United Plaza Boulevard
     Baton Rouge, LA 70809.

6.   **CRANE CO.**
     (individually and as successor-in-interest to CHAPMAN VALVE CO.)
     Through its agent for service of process:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808.

7.   **EAGLE, INC.**
     (Formerly Eagle Asbestos & Packing Co., Inc.)
     Through its agent for service of process:
     Susan B. Kohn
     1100 Poydras Street, 30th Floor
     New Orleans, LA 70163.

8.   **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**
     (as insurer of The J. Graves Insulation Company, Inc.)
     (For Service of Process via the Direct Action Statute L.R.S. 22:1269)

Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

9. **FIRST STATE INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

10. **FITZGERALD CONTRACTORS, L.L.C.**
(f/k/a FITZGERALD PLUMBING AND HEATING COMPANY, INC.)
Through its agent for service of process:
William C. Kalmach
333 Texas Street, Suite 1700
Shreveport, LA 71101.

11. **FOSTER WHEELER ENERGY CORPORATION**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

12. **FOSTER WHEELER, LLC**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

13. **GARLOCK, INC.**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

14. **GARLOCK SEALING TECHNOLOGIES, LLC**
(individually and as successor-in-interest to GARLOCK, INC.)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

15. **GENERAL ELECTRIC COMPANY**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

16. **GEORGIA-PACIFIC, LLC**
(individually and successor-in-interest to BESTWALL GYPSUM COMPANY)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

29

17. **HAMM ENTERPRISES, INC.**
(f/k/a BERG MECHANICAL, INC.)
Through its agent for service of process:
Robert B. Hamm
531 West 61st Street
Shreveport, LA 71108.

18. **HIGHLANDS INSURANCE COMPANIES**
(as insurer for The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

19. **IMO INDUSTRIES, INC.**
(individually and as successor-in-interest to DELAVAL STEAM TURBINE
COMMPANY)
Through its agent for service of process:
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802.

20. **INTERNATIONAL PAPER COMPANY**
(individually and as successor-in-interest to CHAMPION PAPER
CORPORATION)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

21. **THE J. GRAVES INSULATION COMPANY**
(f/k/a GRAVES-ABER INSULATION COMPANY, INC.)
Through its agent for service of process:
Eddie T. Scott
3592 Sligo Road
Haughton, LA 71037.

22. **KAISER GYPSUM COMPANY, INC.**
(may be served **through the Louisiana Long Arm Statute pursuant Article
1261(3)**)
Corporation Service Company
6500 Harbour Heights Pkwy
Mukiteo, WA 98275.

23. **LESLIE CONTROLS, INC.**
(may be served **through the Louisiana Long Arm Statute pursuant Article
1261(3)**)
12501 Telecom Drive
Tampa, FL 33637.

24. **LIBBY, INC.**
(may be served **through the Louisiana Long Arm Statute pursuant Article
1261(3)**)
300 Madison Avenue
Toledo, OH 43604.

25. **THE MCCARTY CORPORATION**
    Through its agent for service of process:
    Paul H. Spaht
    445 North Boulevard, Ste. 300
    Baton Rouge, LA 70802.

26. **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
    (as insurer of The J. Graves Insulation Company, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    Through the Louisiana Secretary of State
    8549 United Plaza Boulevard
    Baton Rouge, LA 70809.

27. **NUTMEG INSURANCE COMPANY**
    (as insurer of The J. Graves Insulation Company, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    Through the Louisiana Secretary of State
    8549 United Plaza Boulevard
    Baton Rouge, LA 70809.

28. **PENZOIL-QUAKER STATE COMPANY**
    (as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to
    ATLAS REFINERY, INC.)
    Through its agent for service of process:
    CT Corporation System
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA 70808.

29. **SAFETY MUTUAL CASUALTY CORPORATION n/k/a SAFETY NATIONAL**
    **CASUALTY CORPORATION**
    (as insurer of The Graves Insulation Company, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    Through the Louisiana Secretary of State
    8549 United Plaza Boulevard
    Baton Rouge, LA 70809.

30. **SCOTTSDALE INSURANCE COMPANY**
    (as insurer of The J. Graves Insulation Company, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    Through the Louisiana Secretary of State
    8549 United Plaza Boulevard
    Baton Rouge, LA 70809.

31. UNION CARBIDE CORPORATION
    Through its agent for service of process:
    CT Corporation System
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA 70808.

32. **UNITED STATES FIDELITY AND GUARANTY**
    (as insurer of The J. Graves Insulation, Inc.)
    (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
    Through the Louisiana Secretary of State
    8549 United Plaza Boulevard
    Baton Rouge, LA 70809.

33. **WEYERHAUSER COMPANY**
(individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
(may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3)**)
33663 Weyerhauser Way South
Federal Way, WA  98063-9777.

34. **ZURICH AMERICAN INSURANCE COMPANY a/k/a and/or f/k/a ZURICH INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24                    DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____

                                            DEPUTY CLERK

### MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs who respectfully move this Honorable Court for leave to file the attached Fourth Amended Petition for Damages, which adds Air & Liquid Systems Corporation, as Successor by Merger to Buffalo Pumps, Inc. (hereinafter, ("Buffalo Pumps"); and Warren Pumps LLC (hereinafter, "Warren") as defendants to the above-referenced matter. Recent depositions given by the co-workers of Alton Lewis ("Lewis") confirmed that Lewis worked on and around asbestos-laden pumps while onboard the USS Henderson, and the ship's records reveal that some of those pumps were made by Buffalo Pumps and Warren. Accordingly, Plaintiffs seek to add those parties to the lawsuit.

**WHEREFORE**, Plaintiffs respectfully request that the Court grant them leave to amend their petition and file their Fourth Amended Petition for Damages, attached hereto as Exhibit "A."

Respectfully submitted,

**WATERS & KRAUS, LLP**

*Susannah Chester* (signature)

**SUSANNAH B. CHESTER**
TX Bar No. 24056878
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

PLAINTIFF'S MOTION FOR LEA[VE ... FOU]RTH AMENDED PETITION FOR
DAMAGES AND INCORPORATED [...] Page 1

**EXHIBIT**

**4**

**WADDELL LAW FIRM**
**CAMERON R. WADDELL**
Louisiana Bar No. 24245
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: 225-636-5639
Facsimile: 225-636-5209

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the foregoing document has been

served on all counsel of record via e-mail on this the 30 day of November, 2010.

*Susannah Chester*

**SUSANNAH B. CHESTER**

PLAINTIFF'S MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED PETITION FOR
DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT – Page 2

Case 3:11-cv-00199-BAJ -SCR   Document 1-5    03/28/11   Page 2 of 13

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____

DEPUTY CLERK

## FOURTH SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Petitioners, who file this their Fourth Supplemental and Amended Petition for Damages, solely in the following particulars:

1. For the purpose of adding the following Defendants:

   a) **Air & Liquid Systems Corporation**, as Successor by Merger to Buffalo Pumps, Inc. (hereinafter, ("Buffalo Pumps"); and

   b) **Warren Pumps LLC** (hereinafter, "Warren").

2. As to Buffalo Pumps and Warren, Plaintiffs assert causes of action in strict liability for the manufacture and sale of unreasonably dangerous asbestos-containing product(s), which were used onboard the USS Henderson, which Alton Lewis served on from approximately 1956 to 1958.

3. As to Buffalo Pumps and Warren, Plaintiffs assert causes of action in negligence and failure to warn for the sale and supply of asbestos and asbestos-containing products to the USS Henderson, thereby substantially contributing to Alton Lewis's asbestos exposure and resultant development of malignant mesothelioma.

4. Buffalo Pumps and Warren were manufacturers, sellers, users, distributors and/or suppliers of asbestos products and were engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products, or



PLAINTIFF'S
EXHIBIT
A

representing themselves as manufacturers of asbestos products, or were professional vendors of asbestos or asbestos-containing products, which were expected to and did reach Alton Lewis's work sites and to which he was exposed.

5.    The products manufactured, sold, distributed, supplied and/or used by the Defendants Buffalo Pumps and Warren were defective, unreasonably dangerous, and unreasonably dangerous per se to Alton Lewis, an intended and foreseeable user of these products. These defects include, without limitation, the following:

a.    manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

b.    manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to Alton Lewis;

c.    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

d.    lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

e.    failure of defendant to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f.    failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

g.    failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

h.    failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i.    defects in the composition and construction of these products;

j.    failure to recall these products manufactured, sold, distributed and/or supplied;

k.    failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

l.    overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants; and

m.     are liable to Petitioner in negligence, strict liability and/or strict products liability for its things that have caused harm to Petitioner.

6.     The defective conditions of Defendants' products and fault, as noted above, were a proximate cause of Alton Lewis's death and Plaintiffs' injuries complained of herein.

7.     Plaintiffs further allege that the foregoing Defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiffs' injuries.

8.     Plaintiffs reiterate all other matters contained in the Original Petition for Damages and any supplements and amendments, including the prayer of the Original Petition, as though set forth at length herein.

WHEREFORE, Petitioners pray that the original Petition for Damages be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment against Defendants as originally prayed for herein.

Respectfully submitted,

**WADDELL LAW FIRM, LLC**

SUSANNAH B. CHESTER
TX Bar No. 24056878
*Admitted Pro Hac Vice*
**WATERS & KRAUS, LLP**
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone:  (225) 636-5639
Facsimile:  (225) 636-5209

Counsel for Plaintiffs

**O R D E R**

Let the above and foregoing FOURTH SUPPLEMENTAL AND AMENDED

PETITION FOR DAMAGES be filed as prayed for.

IT IS SO ORDERED.

BATON ROUGE, LOUISIANA, this ____ day of _____, 2010.

_____

JUDGE – 19TH JUDICIAL DISTRICT COURT

## EXHIBIT "D"

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS' ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES, SECOND SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES and THIRD SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES:**

1. **AIR & LIQUID SYSTEMS CORPORATION, As Successor By Merger To Buffalo Pumps, Inc**
   A Pennsylvania corporation with its principal place of business in the state of New York, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3)** through its registered agent for service of process CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101. This defendant is being sued as an Equipment Defendant.

2. **WARREN PUMPS LLC**
   A Delaware corporation with its principal place of business in the state of Massachusetts, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to wit: 82 Bridges Avenue, Warren, Massachusetts 01083**. This defendant is being sued as an Equipment Defendant.


**SERVICE OF THE FOLLOWING DEFENDANTS WILL BE EFFECTED VIA LA CCP ART. 1313:**

**ANCO INSULATION, INC.**
through its attorney of record,
Jamie Baglio / Margaret M. Joffe / A. Wendall Stout, III
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130

**ATLAS REFINERY, INC.**
through its attorney of record,
Allison N Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office, Marvin McCarty, deceased)
through its attorney of record,
Samuel M. Rosamond, III / Adam D. deMahy

Crawford Lewis, PLLC
400 Poydras Street, Suite 2100
New Orleans, LA 70130

**CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE
CO.)
through its attorney of record,
W. Charles McVea / Matthew S. Lott
Dogan & Wilkinson, PLLC
734 Delmas Avenue
P.O. Box 1618
Pascagoula, MS 39568-1618

**CSR, LIMITED**
through its attorney of record,
Frank Accardo, Esq.,
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, LLC
3200 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3200

**EAGLE, INC.** f/k/a Eagle Asbestos & Packing Co., Inc.
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**, as insurer of The
J. Graves Insulation Company, Inc.
through its attorney of record,
Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170

**FOSTER WHEELER ENERGY CORPORATION**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**FOSTER WHEELER LLC**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**GENERAL ELECTRIC COMPANY**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**GEORGIA-PACIFIC LLC** (sued individually and as successor-in-interest to Bestwall
Gypsum Company)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**HAMM ENTERPRISES, INC.** (f/k/a Berg Mechanical, Inc.)
through its attorney of record,
Layne A. Clark, Jr.
Wiener, Weiss & Madison
333 Texas Street, Suite 2350
P.O. Box 21990
Shreveport, LA 71120-1990

**IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DeLaval
Steam Turbine Company)
through its attorney of record,
Tara L. Mason / Joseph M. Messina
Lobman, Carnahan, Batt, Angelle & Nader
The Texaco Center
400 Poydras Street, Suite 2300
New Orleans, LA 70130

**INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-
interest to Champion Paper Corporation)
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**THE J. GRAVES INSULATION COMPANY** (f/k/a Graves-Aber Insulation
Company, Inc.)
through its attorney of record,
Lawrence Pugh, III / H. Philip Radecker, Jr.
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, L.L.C.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163-1132

**KAISER GYPSUM COMPANY, INC.**
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**LIBBY, INC.**
through its attorney of record,
M. James Dempsey
Cosmich, Simmons & Brown
120 N. Congress Street
Plaza Building, Suite 400
Jackson, MS 39201

**THE MCCARTY CORP. f/k/a MCCARTY-BRANTON, INC.**
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**PENZOIL-QUAKER STATE COMPANY** (as successor by merger to Pennzoil
Products Company, succesor to Atlas Refinery, Inc.)
through its attorneys of record,
W. James Hill, III
The Smitherman Law Firm, L.C.
8570 Business Park Drive, Suite 100
Shreveport, LA 71105
and
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**UNION CARBIDE CORPORATION**
through its attorney of record,
Deborah D. Kuchler / Michael H. Abraham
Kuchler, Polk, Schell, Weiner, & Richeson
1615 Poydras Street, Suite 1300
New Orleans, LA 70112

**UNITED STATES FIDELITY AND GUARANTY**, as insurer of The J. Graves
Insulation, Inc.
through its attorney of record,
Elia Diaz-Yaeger / Katherine Osborne
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

**WEYERHAUSER COMPANY** (sued individually and as successor-in-interest to
WILLAMETTE INDUSTRIES, INC.)
through its attorney of record,
Lydia M. Rhodes
610 Marshall Street, Suite 314
Shreveport, LA 71101

**ZURICH AMERICAN INSURANCE COMPANY** a/k/a and/or f/k/a ZURICH
INSURANCE COMPANY, as insurer of The J. Graves Insulation Company, Inc.
through its attorney of record,
Glen E. Mercer
Salley, Hite & Mercer, LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130

19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                       SECTION 24                       DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                          DEPUTY CLERK

### ORDER

Considering the foregoing Motion for Leave to File Plaintiffs' Fourth Amended Petition

for Damages;

**IT IS ORDERED, ADJUDGED AND DECREED** that the attached Fourth Amended

Petition for Damages be and is hereby deemed filed in the above-numbered and captioned

matter.

**SO ORDERED** this the _____ day of _____, 2010.


                                _____
                                          JUDGE


ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED
PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT – Solo Page

# waterskraus

PLEASE RESPOND TO THE TEXAS OFFICE

**PARTNERS**

C. Andrew Waters (CA, DC, NE, TX)
Peter A. Kraus (TX, VA)
Charles S. Siegel (TX)
Troyce G. Wolf (TX, TX)
Michael L. Armitage (CA, LA)
B. Scott Kruka (TX)
Leslie C. MacLean (TX)
Charles E. Valles (TX)
Paul C. Cook (TX)
Gary M. Paul (CA)
Michelle Whitman (TX)
Kyla Gail Cole (TX)
John S. Janofsky (CA)
Michael B. Gurien (CA)
Scott L. Frost (CA, CA, NV, TX)
Greg W. Lisemby (TX)

**ASSOCIATES**

Loren Jacobson
Joy Sparling (IL)
Kevin M. Loew (CA)
Julie L. Celum (TX)
Dimitri N. Nichols (CA)
Benno Ashrafi (CA)
Mark Bratt (CA)
Demetrios T. Zacharopoulos (CA)
Jacqueline G. Badders (MO)
Susannah B. Chester (TX)
Jillian Rice-Loew (CA)
Cindy Young (CA)
Brent Zadorozny (CA)
Melanie J. Garner (DC, MD, NJ, NY)
Gibbs C. Henderson (TX)
Mark Linder (CA, TX)
Tae Kim (CA)
Carie B. Waters (TX)
Laurel Halbany (CA)
Joanna A. Holdus (FL, TX)
Ari Friedman (CA)
Katherine N. Williams (CA, TX)
Jason Marks (CA)
Banafsheh Salifolahi (MD)
Jennifer L McIntosh (CA)

**OF COUNSEL**

Kevin E. Oliver (TX)
William Galerston (IL, TX)
Randall L. Iola (IL, OK, TX)
George G. Tankard III (DC, MD, NO, PA, TX)
Ingrid Evans (CA, DC, MN)
Jonathan A. George (CA, TX, VA)
Wm. Paul Lawrence II (LA, TX, WV)
David Bricker (CA)

November 30, 2010

Doug Welborn – Clerk of Court   *Via Federal Express #794165181683*
Suit Accounting Department
Governmental Building
222 St. Louis Street, Room 152
Baton Rouge, LA 70802

Re:   Alton Lewis vs. Atlas Refinery, Inc., et al; Cause No. 583178; 19th
      Judicial District Court for the Parish of East Baton Rouge; State of
      Louisiana
      **Client Matter #09-0443**

Dear Mr. Welborn:

Enclosed please find the original and copy of *Plaintiff's Motion for Leave to File Plaintiffs' Fourth Amended Petition for Damages and Incorporated Memorandum in Support* and Order for filing in regard to the above-referenced matter. I respectfully request that a file-marked copy of the Motion and conformed copy of the Order be returned to me in the envelope provided for your convenience. A check in the amount of $43 is also enclosed for costs involving the filing fees and requested conformed copy. Should additional fees be required, please notify Plaintiffs' counsel at the number listed below.

Thank you for your assistance with this matter. Should you have any questions or need additional information, please do not hesitate to contact me.

Sincerely,

Cindy Lopez

/cl
Enclosures.

cc:   All Counsel of Record – Via E-mail

WATERS & KRAUS, LLP ATTORNEYS AND COUNSELORS

DALLAS:  3219 McKINNEY AVENUE  DALLAS, TEXAS 75204  TEL 214 357 6244  FAX 214 357 7252

BALTIMORE:  315 NORTH CHARLES STREET  BALTIMORE, MARYLAND 21201  TEL 410 528 1153  FAX 410 528 1006

SAN FRANCISCO:  711 VAN NESS AVENUE  SUITE 220  SAN FRANCISCO, CALIFORNIA 94102  TEL 800 226 9880  FAX 214 777 0470

LOS ANGELES:  222 NORTH SEPULVEDA BOULEVARD  SUITE 1900  EL SEGUNDO, CALIFORNIA 90245  TEL 310 414 8146  FAX 310 414 8156



Alton Lewis vs. Atlas Refinery, Inc., et al; Cause No. 583178; 19th District
Court, Parish of East Baton Rouge; State of Louisiana

Cindy Lopez  to:  jbaglio, mjoffe, astout, Allison.Benoit, abowlin,
jhainkel, ptafaro, ademahy, srosamond, abarnes,
mlachaussee, mlott, cmcvea, rwilkinson, fpa,

11/30/2010 04:53 PM

Cc:  Gibbs Henderson

Dear Counsel,

Please see attached copies of correspondence and Plaintiff's Motion for Leave to File Plaintiffs' Fourth
Amended Petition for Damages and Incorporated Memorandum in Support, which was forwarded to the
Court today for filing in regard to the above-referenced matter.

Thank you.

## waterskraus

**Cindy Lopez | Paralegal**
3219 McKinney Avenue | Dallas, TX 75204
Toll Free 800-226-9880 | Phone 214-357-6244 | Fax 214-357-7252
www.waterskraus.com



2271_09-0443_mx-m620n_20101130_175221.pdf     2271_09-0443_mx-m620n_20101130_175239.pdf



2271_09-0443_mx-m620n_20101130_175302.pdf

This electronic message contains information from WATERS & KRAUS, LLP that may be privileged and
confidential attorney work product or attorney/client communication. The information is intended to be for
the use of the addressee only. If you are not the addressee, note that any disclosure, copying, distribution
or use of the contents of this message is prohibited. If you received this message in error, please notify
the sender immediately.

*Alton Lewis v. Atlas Refinery, Inc. et al.*, No. C583178 Sect. 24,
19th Judicial District Court, Parish of East Baton Rouge, Louisiana

## AFFIDAVIT OF MARTIN K. KRAFT

| | | |
|---|---|---|
| **STATE OF NEW YORK** | ) | |
| | ) | **SS.** |
| **COUNTY OF NIAGARA** | ) | |

I, Martin K. Kraft, being under penalty of perjury under the laws of the State of
California, declare and say:

1.      I currently am the Production Manager for the Buffalo Pumps Division of Air &
Liquids Systems Corporation.  I began my career with the Buffalo Pumps Division of Buffalo
Forge Company in 1980.  I have held various positions with the Buffalo Pumps Division of
Buffalo Forge Company, Buffalo Pumps, Inc., and the Buffalo Pumps Division of the Air &
Liquids Systems Corporation (collectively "Buffalo Pumps").

2.      I am knowledgeable regarding the United States Navy ("Navy")'s involvement in
and control over the design and manufacture of pumps it purchased from Buffalo Pumps because
I have participated in the design, manufacture, and testing of these pumps.  I also have conducted
a review of available documents and information regarding similar matters prior to my
employment with Buffalo Pumps.

3.      Buffalo Pumps has for years made and supplied pumps for Navy ships under
contracts between Buffalo Pumps and shipyards and/or the United States of America,
specifically the Navy Department.

4.      At all relevant times, inspectors from the Navy and/or the Department of Defense
were assigned to be present at Buffalo Pumps' manufacturing facility in North Tonawanda, New
York.  The inspectors were responsible for conducting process surveillance to assure compliance
of work being done pursuant to Navy contracts.  The inspectors examined pumps at various
phases of construction and at "hold points" specified in the contract to determine whether
Buffalo Pumps' work complied with the contract and applicable specifications.  The inspectors

**EXHIBIT**

**5**

had the authority to reject production of a particular pump at any point if its construction deviated from specified design, material and performance requirements. Additionally, the inspectors observed testing of pumps and provided final acceptance of pumps for shipment to the Navy when specified. The inspectors have office space within the Buffalo Pumps facility itself.

5.      The manufacture of pumps for use on Navy vessels is governed by an extensive set of general and specific federal standards and specifications, chiefly military specifications known as "MilSpecs." The MilSpecs governed all aspects of a pump's design and construction and specified the materials to be used, including materials such as gaskets and packing used in pumps. Among the most commonly-applicable MilSpecs for Navy pumps manufactured by Buffalo Pumps have been Mil-P-17639 ("Pumps, Centrifugal, Miscellaneous Service, for Use on Naval Ships") (attached as Exhibit A) and Mil-P-17840 ("Pumps, Centrifugal, Close-Coupled, Navy Standard") (attached as Exhibit B), and their predecessors and successors.

6.      MilSpecs governed numerous aspects of the pump design and manufacture, including the designation of materials to be used in construction. Among numerous other requirements, the specifications state that "[pump casing joints shall be made up using compressed asbestos sheet gaskets." (Exhibit A, at 3.4.1.5; Exhibit B, at 3.26).

7.      The initial conceptual design for pumps on all classes of Navy vessel was developed under the direction of BUSHIPS, and later NAVSEA. When Buffalo Pumps became involved in the design phase for a new pump, it did so pursuant to Navy technical and performance requirements dictating the weight, size, power output, speed, and other relevant design parameters of the pump. The Navy also imposed various material, testing and other requirements with respect to pumps.

8.      In the design phase of the pump project, as in all other phases, the Navy retained ultimate decision authority over the design of the pumps. If engineering disagreements arose between the Navy and an outside design consultant, the Navy controlled the design adopted. All pumps supplied by Buffalo Pumps to the Navy were built in accordance with the Navy specifications or other technical documentation identified in applicable contract documents.

9.      Not only did pumps manufactured and supplied by Buffalo Pumps for Navy vessels have to meet detailed and precise Navy specifications, but each pump's configuration was controlled by the Navy's specified performance requirements for the vessel or class of vessels in question.  In other words, the pumps for a vessel or class of vessels were engineered for a specific application and were custom-built.

10.      Equipment designed and supplied for the Navy usually was not "off the shelf" product.  Pumps built for use on Navy ships were subject to different and much stricter design, manufacturing and performance standards than pumps that Buffalo Pumps manufactured and marketed for commercial, non-military customers.  Through its specifications, the Navy imposed requirements that made the pumps it procured different in fundamental ways from pumps supplied for commercial applications.

11.      Most significantly, pumps supplied to the Navy were required to and were designed to be resistant to combat conditions and damage.  Navy specifications imposed strict standards for "shockproofness" - i.e., resistance to combat damage to the vessel and/or the spaces where the pumps were located.  (Exhibit A at 3.1; 3.3.15; 4.3.10-17; Exhibit B at 3.1; 3.10; 4.2.8-15).  Compliance with these shockproofness requirements necessitated unique design and engineering to ensure the necessary strength and durability for battle conditions.  The Navy's shockproofness testing subjected pumps to impacts designed to simulate the effect of torpedoes, bombs or other explosives striking a vessel.

12.      The Navy also dictated other characteristics unique to Navy pump applications that differed from pumps sold to commercial customers.  These included, for example: stringent endurance requirements, and the testing to document them, that differed from standard commercial standards and expectations (Exhibit A at 4.1.2; Exhibit B at 4.4.2); use of different metals - gun metal, nickel-copper alloys, specialized bronzes, and other materials - not frequently used by Buffalo Pumps in non-military applications (Exhibit A at 3.4.1.7; Exhibit B. at 3.2.1-2); "standard" Navy sizes for input and output piping and, therefore, for the associated flanges on the pumps, that differed from those in commercial industry (Exhibit A at 3.3.16.8; Exhibit B at

3

Fig. 1-6.); special hardware and fittings that differed from those in standard use in commercial applications (Exhibit A at 3.3.22); and specialized welding procedures different from standard welding used on commercial pumps (Exhibit A at 3.3.2.4).

13.     In addition, Navy specifications or other technical documents identified in applicable contract documents required Buffalo Pumps to submit for approval and acceptance by the federal government drafts of any manuals, drawings or other written materials required to be provided with regard to pumps it manufactured for the Navy. These requirements were far more detailed and stringent than those imposed by commercial customers.  (Exhibit A at 3.5; 3.6; Exhibit B at 3.27; 3.28).

14.     This approval and acceptance process was not merely a process of submission by Buffalo Pumps of drawings and manuals.  The Navy's review encompassed all aspects of the technical manuals and other written materials submitted to it for approval in the pump design and manufacture process.  Based on my experience and my review of historical materials, I am aware that the Navy required specific changes to the content and wording of manuals submitted by Buffalo Pumps and other naval equipment manufacturers.  These changes included specific edits to cautionary and instructional language, and including warnings and cautions.  Examples of correspondence of this type are attached as Exhibit C.

15.     Once those manuals, drawings or other written materials were approved and accepted by the Navy, they were assigned Navy identification numbers, essentially becoming Navy documents.

_Martin K. Kraft_

Sworn to and subscribed
before me this _14_ day of
March, 2011.

_Beverly G. Witkop_
NOTARY PUBLIC

BEVERLY G. WITKOP
Notary Public, State of New York
Qualified In Niagara County
My Commission Expires _5/9/13_

_Alton Lewis v. Atlas Refinery, Inc. et al._, No. C583178 Sect. 24,
19th Judicial District Court, Parish of East Baton Rouge, Louisiana

4

*Alton Lewis v. Atlas Refinery, Inc. et al.*, No. C583178 Sect. 24,
19th Judicial District Court, Parish of East Baton Rouge, Louisiana

## AFFIDAVIT OF ROGER B. HORNE, JR.

STATE OF WASHINGTON     )
                                    )    **SS.**
COUNTY OF KITSAP           )

     I, Roger B. Horne, Jr., being under penalty of perjury, declare and say:

     1.  I am a retired Rear Admiral of the United States Navy, in which I served between 1956 and 1991.  A copy of my curriculum vitae is attached as Exhibit A and my relevant work history and experience are discussed below.

     2.  I began my Navy career in 1956, immediately after receiving a Bachelor of Science degree in Naval Engineering from the United States Naval Academy at Annapolis, Maryland.  I have also received extensive post-graduate education in naval engineering, including a Master of Science Degree in Mechanical Engineering from the U.S. Naval Postgraduate School, and have taught Naval Engineering as a Visiting Professor at the University of Michigan.  Throughout my Navy career, I concentrated in areas of ship design, engineering, construction, overhaul and inspection.  Ultimately, I achieved the rank of Chief Engineer and Deputy Commander, Naval Sea Systems Command ("NAVSEA") for Ship Design and Engineering.  Prior to that, I served as Deputy Commander, NAVSEA for Facilities and Industrial Management; Commander, Puget Sound Naval Shipyard; Commander, Engineering Duty Officer School; Production and Repair Officer, Mare Island Naval Shipyard; Nuclear Engineering Manager, Puget Sound Naval Shipyard; Nuclear Submarine Inspection Officer, Supervisor of Shipbuilding Office, Ingalls Shipyard and Chief Engineer on the *USS Ozbourn* (DD846).

**EXHIBIT**

6

3.  During my time in the Navy, I was also responsible for maintaining naval ship military specifications and for monitoring compliance with the specifications by all vendors and contractors of naval equipment.  Military specifications ("MilSpecs") were applicable to equipment manufacturers, including pump manufacturers like Buffalo Pumps, Inc. ("Buffalo Pumps").  Equipment manufacturers, Naval Machinery Inspectors and others relied on these MilSpecs to ensure strict compliance with NAVSEA demands and requirements for combat-ready vessels.

4.  In addition to my training and experience in Navy ship construction, as outlined above, I have been recognized for achievements in the field of marine machinery and engineering, and have received three Navy Legion of Merit Awards and three Meritorious Service Awards for Engineering and Industrial Achievement and an award from the Marine Machinery Association.

5.  Based on my experience, I can attest to the level of supervision, direction and control exercised by the Navy over the design and manufacture of equipment, including centrifugal pumps and related equipment, intended for installation on Navy vessels.  In addition, I have personal knowledge of the comprehensive plans, specifications and requirements which governed suppliers like Buffalo Pumps of equipment for use aboard Navy ships such as *USS Henderson* (DD-785).  More particularly, I can attest that any and all work performed on pumps built and supplied for these ships by vendors such as Buffalo Pumps was performed to the requirements specified by the Navy, and that the work was reviewed and inspected by Navy personnel in the vendor's plant and in the shipbuilding yards.  In many instances during my career I personally inspected equipment, including pumps, to verify conformance with the requirements specified, although more immediate supervision typically was exercised by officers

2

and other Navy personnel under my command or the command of NAVSEA or its predecessor, the Bureau of Ships ("BUSHIPS").

6.   The Navy chain of command concerning ship construction involves several layers of authority related to technical and contractual control over Navy shipbuilding.  The Secretary of the Navy has ultimate authority over the Navy and Navy shipbuilding; immediately below the Secretary, as has been the case since the creation of NAVSEA, is the Chief of Naval Operations ("CNO"), to whom NAVSEA reports.  Prior to the establishment of NAVSEA, BUSHIPS controlled all combat ship design and construction and reported to the CNO as well as a civilian Assistant Secretary.  Since the creation of NAVSEA, NAVSEA reports to the CNO for all military ship design and construction.

7.   Under the command of NAVSEA, as was the case with BUSHIPS, the Navy's shipbuilding structure was comprised of several divisions and levels of authority concerning ship design, construction, repair and inspection.  Technical and contractual control over shipboard equipment and material was directed by the Commander of Naval Sea Systems and the Commander of Naval Supply.  Each of these two organizations had oversight responsibility concerning, among other things, pumps built for Navy vessels.  Compliance with the standards and specifications required for pumps built for Navy use was directly monitored by Naval Machinery Inspectors under both of these divisions:  the Machinery Inspectors under Naval Supply worked on-site at the vendor's (in this case Buffalo Pumps') manufacturing facility, and the Machinery Inspectors under Naval Sea Systems Commands carried out their responsibilities at the shipbuilding yards.  Moreover, it was common in my experience for Directors of the Machinery and Propulsion Equipment Groups, who worked for me at times during my career, to inspect the manufacturing process at vendors' plants.

3

8. The Machinery Inspectors exercised primary, front-line control over the work performed for the Navy by vendors such as Buffalo Pumps in the production of pumps and other equipment. The Naval Machinery Inspectors were responsible for assuring that contractors such as Buffalo Pumps followed the required contract specifications as they relate to naval machinery. Further, the Naval Machinery Inspectors would report to their superiors any violations or failures to comply with specifications.

9. Specifications for Naval ships and their equipment require special characteristics necessary to satisfy reliability in combat situations and during long intervals at sea. Naval ships and equipment are maintained with parts from a naval supply system that provides spare parts and proven consumables aboard ship and at stock points in remote geographic locations. The problem of maintenance support is made more complex by the fact there are hundreds of naval ships. For these reasons the Navy cannot tolerate variations in its equipment or the parts and consumables associated with them. Any deviation from equipment military specifications requires specific written approval from the Navy. The Navy must know that the design and material that goes into its ships and equipment are in strict adherence to specifications – without this assurance we would not have a reliable and serviceable Navy.

10. Pumps built for Navy vessels, including Buffalo Pumps' pumps, were manufactured according to detailed specifications prepared, written and issued exclusively by, and plans approved by, the Navy, specifically NAVSEA or BUSHIPS. In my role as Chief Engineer and Deputy Commander for NAVSEA's Ship Design and Engineering Division, I was personally responsible to the Commander of NAVSEA for developing ship designs and for overall technical support to the operating fleet, maintenance of ships, and ships under construction. I was also

4

responsible for maintaining naval ship military specifications and for monitoring compliance with the specifications by all vendors and contractors of naval equipment.

11.   MilSpecs for pumps and other equipment intended for use aboard Navy vessels were drafted, approved and maintained by the Navy, specifically NAVSEA, to address all aspects of shipboard equipment and materials requirements, including the materials to be used.  Any changes to these specifications were made by the Navy.  NAVSEA maintained and controlled the MilSpecs largely because it had superior knowledge of the demands and requirements of combat-ready vessels.  NAVSEA or BUSHIPS also prepared contract specifications which incorporated the MilSpecs.  These specifications reflected the state of the art and the special needs of combat vessels destined for combat with our sailors.  They were communciated to pump vendors such as Buffalo Pumps when the Navy issued Requests for Proposal for shipboard equipment.  The specifications covered the nature of any communication affixed to pumps or other equipment supplied to the Navy.

12.   The Navy retained the final say over the design of any piece of equipment, and made the ultimate decision regarding how to resolve an engineering disagreement between the Navy and an outside supplier.  Without prior discussion, approval and acceptance by the Navy, a warning related to asbestos hazards would not have been permitted.

13.   In addition to specifications regarding design and manufacturing of the equipment itself, the Navy also had detailed specifications that governed the form and content of written materials to be delivered with equipment, including pumps, supplied to the Navy.  These written materials typically consisted of technical or instruction manuals that were designed to assist the Navy engineering staff in servicing and maintaining the equipment.  Navy personnel participated

5

in and approved the preparation of this kind of information.  The Navy specifications for these manuals contained detailed direction as to the kinds of information to be included.

14.  I am familiar with the MilSpecs and other specifications governing the preparation of technical manuals for machinery and equipment supplied to the Navy.  Exemplars of these specifications – 35B2(SHIPS) (15 Feb. 1949); MIL-T-15071B (16 Aug. 1954); and MIL-M-15071D(SHIPS) (6 June 1961) – are attached as Exhibits B, C and D.   These specifications did not require manufacturers of Naval equipment, such as pumps, to include warnings pertaining to potential asbestos hazards.  Indeed, for the reasons already discussed above, a manufacturer such as Buffalo Pumps would not have been permitted to include a warning regarding asbestos in an equipment manual or on a product label.  The Navy's detailed specifications did not leave room for individual manufacturers to make determinations about the inclusion of a warning.

15.  As a consequence of the foregoing, all equipment, including pumps supplied by Buffalo Pumps for use aboard Navy vessels were manufactured pursuant to Navy specifications under close supervision by personnel employed by the Navy, and approved for installation aboard these vessels exclusively by the Navy and its designated officers.  Any warning purportedly required by state law would not have found its way into a ship as a permanent label on a pump or as a warning in accompanying written materials unless it had been required specifically in the specifications for the product that were issued by the Navy.

16.  The Navy had state of the art knowledge regarding the potential risks associated with exposure to asbestos and asbestos-containing products.  Acting with this knowledge about asbestos-related hazards, the Navy affirmatively addressed the issue of asbestos-related safety precautions.  As noted above, the Navy established its MilSpecs to account for the safety precautions it deemed appropriate.

6

17.  The Navy maintained a Medical Department, which had the mission of "promotion of physical fitness; prevention and control of diseases and injuries; and treatment and care of the sick and injured." As explained in *The Human Machine:  Biological Science for the Armed Services*, a 1955 Naval Institute textbook that was incorporated into the curriculum during my time at the United States Naval Academy, "in order to fulfill [its] responsibility[,] the Medical Department is actively concerned with all phases of life in the Navy and advises all components of the Navy on matters which may affect the health and well-being of naval personnel." (Exhibit E, p. 275.)

18.  The Navy Medical Department maintained a central administrative organization known as the Bureau of Medicine and Surgery ("BUMED").  Among BUMED's many functions was a responsibility to conduct research to "assist in the development of new equipment, new and better methods of care and treatment of various diseases and injuries; help in the problem of adjustment of naval personnel to all of the new and strange environmental situations in which they are placed; and, in general, provide the knowledge necessary for the more efficient operation of the Navy.  BUMED's research was "extremely broad and parallels the total activity of the Navy." (Exhibit E, p. 277.)

19.  In dealing with asbestos, the Navy also conducted its own training, adopted its own precautionary measures and procedures and provided its own warnings where such warnings were deemed appropriate.  For example, a 1950 General Safety Rules Manual issued by the Puget Sound Naval Shipyard instructed workers to "[w]ear dust type or air-fed respirators for . . . handling amosite [asbestos] insulating materials. . . ." (Exhibit F, p. 31.)  A 1961 Marine Pipe Covering and Insulating Manual for Puget Sound similarly set forth "General Safety and Health Practices," including instructions to "[h]andle amosite . . . materials carefully to avoid [its]

7

dust[]," "sprinkle amosite with water whenever possible to keep dust down," and "[s]ee that your chest is X-rayed at least once a year to detect the possibility of . . . asbestosis." (Exhibit G, pp. 25-26.)  Notably, the basic Naval Academy textbook *The Human Machine* referenced above discussed the fact that "[t]here are *dusts* and *vapors* which cause injury and occasionally death. For example, dust causes such diseases as silicosis, anthracosis, and other diseases due to the inhalation of such materials as asbestos dust, iron dust, tobacco dust, etc." (Exhibit E, pp. 85-86).

20.  In November 1970, the Hygiene Division of the Medical Department at Puget Sound issued a manual pertaining specifically to "Asbestos Exposure and Control" (Exhibit H), which presented "Clinical & Environmental Findings" of a study done in connection with the shipyard's occupational health program, comparing the incidence of lung abnormalities across various occupation groups in the shipyard, and assessing the effectiveness of control measures used by the Navy.  The manual also recommended control methods designed to reduce asbestos-related health hazards, including use of respirators and protective clothing, ventilation controls, substitution of asbestos-containing materials, changes in work practices (such as wetting of asbestos-containing materials during installation and removal), and implementation of education programs designed to reduce the incidence of asbestos-related illnesses.

21.  In February 1971, NAVSHIPS issued Instruction 5100.26 (Exhibit I), providing a clear example of the Navy's having taken affirmative steps to implement a detailed and comprehensive plan for controlling asbestos hazards.  This document set forth dozens of steps to be taken to reduce or eliminate exposure to asbestos from materials in use aboard Navy vessels and in other Navy facilities.  Additional instructions were issued thereafter by various Navy

8

departments as the Navy continued to refine its procedures for handling of asbestos-containing materials and preventing asbestos exposures.

22. In my experience, and as evidenced by the documents described above, the Navy relied on training and procedures to protect its personnel against safety hazards such as asbestos. The Navy believed that excessive warnings for common shipboard hazards led to apathy and resulting disregard of hazard by Navy personnel. Thus, the Navy would not have permitted (either under the specifications or, as a matter of Navy practice) a vendor such as Buffalo Pumps to attach any type of warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos. Any attempt by a manufacturer to affix a cautionary statement concerning asbestos to pumps would have been futile, and would have been contrary to Navy protocols for instruction and training relating to use of asbestos materials.

23. The Navy's view that issues such as asbestos exposure were inappropriate subjects of warnings on pumps or in documentation relating to them is exemplified by the manner in which the Navy chose to handle the hazards of asbestos. Rather than placing warning labels on, for example, thousands of feet of piping hundreds of pieces of equipment, the Navy instituted procedures and training designed to educate its personnel in what the Navy determined to be appropriate work practices. Even in the case of insulation, the Navy did not place warnings on "packages."



ROGER B. HORNE, JR.

Sworn to and subscribed
before me this 8th day
of March, 2011.

_Martin S. Land_
NOTARY PUBLIC
comm. exp 03/01/2013

MARTIN S. LAND
NOTARY PUBLIC
MY COMMISSION NUMBER 361712
COMMONWEALTH OF VIRGINIA

9

*Alton Lewis v. Atlas Refinery, Inc. et al.*, No. C583178 Sect. 24, 19th Judicial District
Court, Parish of East Baton Rouge, Louisiana

## AFFIDAVIT OF SAMUEL A. FORMAN, M.D.

### I. BACKGROUND

1.  I am a medical doctor specializing in preventive medicine and occupational
medicine.  I received a B.A. degree from the University of Pennsylvania majoring in
history and biology, graduating *magna cum laude* in 1973.  I attended Cornell Medical
School, graduating with an M.D. degree in 1977.  I also received a degree in public health
in 1977 as a result of a joint program with the Harvard School of Public Health.
Thereafter, I became board certified in occupational medicine after attending a residency
at the Harvard School of Public Health.

2.  From 1973 to 1977, I participated in Ensign 1975, a Navy program that
permitted me to engage in active duty service and obtain hands-on training during the
summers between medical school sessions.  My participation in this program gave me
background and experience different from that of many other prospective medical
officers at that time, because very few medical officers engage in operational and
administrative rotations as part of their service and training.  In the summer of 1974, I
engaged in a midshipmen cruise aboard the *USS Shreveport* (LPD-12) for the purpose of
obtaining a general understanding of ship operations outside the medical department.  I
attended training classes and observed activities in all parts of the ship including the
engineering department, command information center, commissary department, supply
and repair divisions, and aviation division. In the summer of 1975, I did a rotation at the

EXHIBIT

7

Navy Bureau of Medicine and Surgery ("BUMED"), known at times as the Naval Medical Command. While there, I participated in medical administration in the office overseeing all medical training for the Navy and worked directly with a number of high-ranking officers in BUMED, including William M. McDermott, who at that time held the rank of Captain but who later became Deputy Commander of the Naval Medical Command. During this rotation, I had an extended assignment to analyze Navy expenditures for medical education at civilian universities to ensure the Navy's needs were being met. In the summer of 1976, I did a clinical rotation on the general and internal medicine wards at San Diego Naval Hospital, the largest military hospital in the world. By the time I graduated medical school, I had already accumulated approximately six months of active duty service from my summer internships. These internships gave me a fundamental understanding of the needs of sailors at sea, a general understanding of ship operations, including ship propulsion systems, and insight into the leadership and administrative side of the Navy.

3. In 1977, I graduated from medical school and went on full-time active duty in the Navy. I performed my internship at the Bethesda Naval Medical Center in Bethesda, Maryland during 1977 and 1978. I remained on active duty in the Navy until 1983. Thereafter, I continued to work for the Navy as a civilian employee until 1986. My qualifications and credentials are more fully described in my curriculum vitae (Exhibit A).

4. Over the course of my active duty service in the Navy, I served aboard Navy ships whose primary purpose was to fulfill national defense missions of the United States. Assignments aboard ship, involving duty at sea, included, in addition to the *Shreveport* in

2

the North Atlantic, *USS Duluth* (LPD-6) in the Eastern Pacific, and *USS St. Louis* (LKA-116) in the Western Pacific. At all times, these ships were performing missions and activities aimed at preparing for or deterring combat. In the military setting, a major goal of training is combat readiness. This training is intended to simulate combat and combat conditions. For example, the Navy hands out "battle efficiency" ribbons to ships that perform well in war exercises. Even combat support ships are required to remain ready to assist ships and sailors on the front line and, at times, these support ships must themselves go into harm's way. To achieve its mission, the Navy had to be willing to put life and limb at risk not just on the front line but also in support operations.

5. One of the highest profile operations in which I was involved occurred aboard the *St. Louis*, which was an amphibious attack transport ship deployed at the time to the Western Pacific for the purpose of carrying Marines, cargo (including heavily armored Marine Corps vehicles used in amphibious assault), equipment and supplies to Navy shore-based facilities. In March 1979, President Carter ordered the Navy to rescue a wave of Vietnamese and Southeast Asian refugees who were escaping communist Vietnam and local pirates into the South China Sea. The *St. Louis* was the first ship of the Seventh Fleet to arrive on the scene. Fortunately the *St. Louis* was able to perform this mission without exchanging hostile fire; however, in order to perform this humanitarian rescue operation, the *St. Louis* had to travel just outside the twelve mile international limit and sail directly into an area threatened by actively hostile Communist interests. This situation represented an intense Cold War scenario, one of but many types of hazardous scenarios and missions for which the Navy must be prepared.

3

6.  In the course of my active duty service, I also worked in Navy shore facilities, including shipyards such as the Long Beach Naval Shipyard.  These facilities contributed to the defense of the country by engaging in industrial efforts to construct, repair and overhaul the Navy's combat and combat support vessels.  My role was to ensure that the Navy personnel and civilians involved in these efforts performed their duties as safely as possible.

7.  From 1980 to 1982, I ran an occupational health clinic at the Naval Weapons Station at Seal Beach, California, and assisted in the medical programs at the Long Beach Naval Shipyard.  Among other responsibilities, I assisted in the asbestos medical surveillance program for over 2,000 federal Civil Service employees and uniformed sailors.  At any one time, I was following 200 cases of asbestos disease.

8.  In 1982, I was assigned to the Naval Environmental Health Center at Norfolk, Virginia.  While stationed there, I designed occupational medicine programs with regard to Navy-specific occupational diseases, performed health hazard evaluations, inspected the occupational health programs of government facilities as part of the Navy Occupational Safety and Health, or "NAVOSH," program, carried out epidemiologic studies, and trained Navy doctors and nurses in occupational medicine.

9.  In 1983, a JAG officer for the Naval Medical Command requested that I become part of a team to locate, digest and organize government documents for production in asbestos litigation.  Over the next year and a half, I investigated the Navy's historical handling and knowledge of various industrial hygiene issues, including asbestos disease.

4

10.  In 1985, pursuant to Navy orders, I completed my review of Navy knowledge and practice in industrial hygiene, including its awareness of and response to health hazards of asbestos, as a formal assignment.  My search for documents took me to the National Archives, other warehouses and storage facilities for records of the Navy's Bureau of Medicine and Surgery.  I was given full security clearances for and unimpeded access to these facilities.  I also conducted research at private facilities such as Harvard University's Countway Library of Medicine's section for rare books and manuscripts.

11.  From my review of countless Navy documents and my studies while employed by the Navy, I acquired extensive knowledge as to the state of Navy knowledge and awareness regarding the hazards of asbestos.

12.  Following my research, and with the approval of the U.S. Navy's Bureau of Medicine and Surgery, I published an article entitled "U.S. Navy Shipyard Occupational Medicine Through World War II" in the *Journal of Occupational Medicine*, Vol. 30, No. 1 (Jan. 1988) (Reference 1).

13.  Though I no longer hold any formal position with the Navy, since I left I have been asked on a number of occasions to speak to Navy medical and safety personnel on issues relating to the history of occupational medicine and industrial hygiene in the Navy.

14.  I also am currently a Visiting Scientist in the Department of Environmental Health at the Harvard University School of Public Health.

## II. DISCUSSION AND OPINIONS

### A. Navy Knowledge of Asbestos-Related Health Issues

15.  The Navy has always taken responsibility for the health and safety of its uniformed and civilian personnel.  It has consistently exercised its discretion regarding hazard recognition and appropriate controls in Navy workplaces.  As Navy Captain Ernest W. Brown, M.D., recognized as the architect of the Navy's formal occupational health program prior to World War II, wrote in 1940:  "One of the most important concerns of the Medical Department of the United States Navy today is industrial hygiene, especially in navy yard practice."  (Reference 2).

16.  This commitment was reflected in numerous other Navy statements and documents.  In 1943, Secretary of the Navy, Frank Knox, in a statement co-signed by the Chairman of the U.S. Maritime Commission, E. S. Lamb accompanying "Minimum Requirements for Safety and Industrial Health in Contract Shipyards," stressed the Navy's commitment in this regard:

> The necessity for conserving manpower and promoting the physical welfare, health, and safety of what shortly will amount to one million workers in shipyards required that careful observance of standards for the prevention of accidents and protection of health be accorded.  Aside from the weight which must be given humanitarian consideration, it is simply good common sense that as much care and attention be given to protecting the human factors in the war production program as is given machines.

(Reference 3).  Similarly, in a 1955 Naval Institute publication called *The Human Machine*, Captain Charles W. Shilling of the Navy Medical Corps described the "paramount importance" of Navy health:  "[T]he medical component of the Navy has a

6

heavy responsibility" with a mission to promote physical fitness, prevent and control diseases and injuries and treat and care for the sick and injured. (Reference 4).

17. The most senior Medical Corps officer in the Navy is the Navy Surgeon General, who is also the Chief of BUMED and who reports to the Chief of Naval Operations ("CNO"). The Navy Surgeon General has responsibility to spell out health programs, including prevention and injury care, for sailors and civilian workers (as appropriate). Medical Corps, allied health professions and enlisted hospital corpsmen are responsible for advising operational line commands to carry out preventive practices and to provide specialized industrial hygiene services. It is the responsibility of the Navy line authorities (the operational chain of command) to carry out these recommendations. The Navy Surgeon General's objective is that all personnel receive the highest level of services that the Navy can deliver and that these services are appropriate to the environments in which the personnel work. The Navy Surgeon General achieves this objective through the development of standardized programs for medical care. As a General Medical Officer, I was not permitted to deviate from the programs developed by the Navy Surgeon General without approval from a more senior Navy officer except in extraordinary circumstances, such as if a ship was isolated or out of contact with more senior, knowledgeable and experienced officers.

18. All Navy personnel including medical officers must follow their chain of command to maintain good order and discipline. Enlisted personnel are indoctrinated during boot camp and training with the understanding that they must conduct all activities "the Navy way," meaning that Navy orders and instructions supersede any information or directions received from any source outside the Navy. Sailors must follow orders trusting

7

that their chain of command will have the mission of the Navy in mind and will address safety as best as possible. Unlike in the civilian community, all military personnel who refuse to perform an order could be subject to various penalties pursuant to the Uniform Code of Military Justice ("UCMJ"). Absent extraordinary circumstances, the Navy demands and enforces rigid adherence to the chain of command. It does so because it is the military's method for institutionalizing strategic considerations, highly specialized expertise, and prior experience and then transforming this information in an effective and predictable way into programs and orders for all personnel to follow.

19. Collective and uniform communication and implementation of Navy programs and orders are key to the Navy's operational flexibility. The Navy has numerous sailors with specialized capabilities. The Navy also maintains many ships and multiple shipyards with specialized capabilities. The Navy strives to ensure that each sailor is consistently trained, and that each ship in its fleet is predictably constructed so that it can rely on both the sailors and the ships to perform critical operations without endangering sailors any more than is necessary to achieve mission success.

20. Consistent with the Navy's interpretation of the importance of industrial hygiene and occupational health, the Navy's programs in these areas have paralleled, and at times led, the development of occupational medicine and industrial hygiene in general, and asbestos-related issues in particular. The Navy's knowledge in the areas of asbestos and associated health conditions has been quite complete when compared to available knowledge over time, and at least by the early 1940s, the Navy had become a leader in the field of occupational medicine relating to, among other things, asbestos dust inhalation exposure.

8

21.  As early as 1922, the Navy recognized, as exemplified by its instructions to officers published in the *Navy Medical Bulletin*, the health hazards associated with airborne asbestos dust and the appropriate protective measures to prevent asbestos exposure.  These included the use of water to dampen dust, exhaust systems to remove dust, enclosed chambers to prevent escape of dust and respirators.  (Reference 5).  The Navy's knowledge of potential asbestos-related health problems, and of the means to control against them, continued to expand throughout the following decades, as senior Navy officers actively assessed, evaluated, controlled, and made recommendations concerning Navy policy regarding disease and injury prevention, including asbestos related occupational health hazards.

22.  The Navy's health and safety apparatus on the eve of World War II was described in the 1939 Handbook of the Navy Hospital Corps published by the Bureau of Medicine and Surgery under the direction of the Secretary of the Navy:

> The United State Navy is one of the largest of the industries maintained by this Government.  An organization has been set up in the Navy to protect its personnel, both civilian and naval.  A safety engineer is provided, who acts directly under the Assistant Secretary of the Navy.  He has supervision of the safety precautions taken to protect the civilian employees in the navy yards, ammunition depots, torpedo stations and the like.  He is also a consultant in all matters pertaining to safety aboard ships, at training stations and other Navy Department activities.  A naval medical officer is assigned to his office for the purpose of consultation in all matters pertaining to health and safety and to cooperate in devising means by which health may be protected and accidents prevented.  Aside from this particular medical officer, all medical officers, dental officers, members of the Hospital Corps and nurses form the balance of the medical staff of this organization.  It is essential that each one of these members know and understand the hazards to be encountered in the Navy, the steps to be taken to protect against injury and disease, the treatment of diseases and injuries arising therefrom and the organization of the medical personnel for such purposes. Naval medical personnel are required to perform duties ashore, at sea, in foreign countries, in the air and under the sea.  In each of these places a variety of health hazards exist.  It is therefore necessary that this [sic] personnel have a thorough

9

knowledge of the industry to which they are attached, the hazards presented, the methods of prevention and the treatment of all injuries occurring.

(Reference 6).

23. The Handbook of the Navy Hospital Corps also explained that all Navy yards have a commandant who "is responsible to the Navy Department for the protection of employees, as well as Navy personnel, under his command. He is familiar with . . . the health and accident hazards presented." Thus, the Commandant was "responsible for the appointment of the safety engineers [who will] make inspections and recommend proper protective measures." The Handbook further called for the Navy medical officer to "advise the safety engineer and instruct the employees in safety measures and encourage them to cooperate in protective measures." These safety measures included required "masks for asbestos workers."

24. Also in 1939, the Annual Report of the Surgeon General of the Navy addressed the "Hazard of Asbestos," and described asbestosis as "an industrial disease of the lungs incident to inhalation of asbestos dust for prolonged periods." The Report noted the risk from "continued exposure to present occupational conditions" at Navy facilities, and directed appropriate methods for preventing such exposures, recommending the use of local exhaust ventilation to control asbestos dust exposure for insulators in the fabrication shop. (Reference 7).

25. At about the same time, Navy Captain E.W. Brown undertook an assessment of asbestos exposure, and its prevention, in Navy yards. In an article entitled "Industrial Hygiene and the Navy in National Defense" published in 1941, Captain Brown prescribed appropriate measures for the prevention of asbestos exposure. These included

10

use of respirators, local exhaust ventilation, and wetting of asbestos containing materials. (Reference 2).

26.   The Navy has historically directed all aspects of policy and procedure addressing the health and safety of Navy personnel.  This direction has encompassed policies, practices and procedures to protect workers from dangers posed by exposure to asbestos.  Indeed, the Navy has on several occasions over time rejected offers of assistance from other leaders in the field.

27.   For example, in 1941, the U.S. Labor Department's Bureau of Labor Standards offered to conduct inspections of health and safety conditions in Navy shipyards.  Navy leaders rejected this offer.  In a memorandum to Navy Surgeon General McIntire, Commander Charles S. Stephenson, head of the Division of Preventive Medicine within the Navy's Bureau of Medicine and Surgery, offered "[n]otes for consideration when you call on Assistant Secretary [of the Navy Ralph A.] Bard." Commander Stephenson advised Admiral McIntire that Assistant Secretary Bard

> asks specifically what the policy is concerning invitation of…the Bureau of Labor Standards, Labor Department into the Navy Yards to make a survey of the welding and other hazards. I told him that we had never done that sort of work and recommended against it, as I know who [the Bureau of Labor Standards] intends to send if it should be done.

Navy leaders recognized that other government departments had a high level of expertise, while rejecting the offers of assistance:

> I gave Mr. Bard and the two officers present a complete story of the beginning of this controversy from the Federal Administrator's letter:  that is, that the United States Public Health Service had four teams of traveling scientists alleged to be able to make surveys of all of the Navy Yards and make recommendations for the correction of such hazards as were discovered.

He then emphasized:

11

> I told Mr. Bard that this was not considered the best policy, due to the fact that we had medical officers in the Yards and that in practically all instances recommendations of sound character had been made by medical officers. We saw no need of inviting the United States Public Health Service on its own invitation to do this job.

28. The Navy's reluctance to accept these offers of assistance was based on concerns regarding possible upset of labor relations, and also for security at Navy facilities. Stephenson's memorandum makes clear that these concerns originated at the highest levels of Government:

> Likewise, I told him that I had spoken to you and that you had indicated that President Roosevelt thought that this might not be the best policy, due to the fact that they might cause disturbance in the labor element.

(President Roosevelt was familiar with the structure and operation of the Navy's shipyards and other facilities – and in particular with the functioning of the Navy during wartime – from his tenure as Assistant Secretary of the Navy from 1913 until 1920. Admiral McIntire was President Roosevelt's personal physician in addition to being the Surgeon General of the Navy.)

29. Stephenson's positions were taken even in light of knowledge that not all industrial hazards were adequately controlled at Navy facilities: "I doubt if any of our foundries would be tolerated if the State industrial health people were to make surveys of them." Asbestos, too, was discussed as an issue: "I am certain that we are not protecting the men as we should."

30. Health and safety issues, including those relating to asbestos exposure, continued to be a major focus of the Navy and the United States Maritime Commission throughout World War II. In 1943, the Navy, along with the Maritime Commission declared its responsibility for the safety and health of their workers and took charge of

12

implementing and staffing safety and health programs for those workers.  Following

extensive discussion with various constituencies, the Navy and the Maritime Commission

jointly issued "Minimum Requirements for Safety and Industrial Health in Contract

Shipyards" ("Minimum Requirements").  (Reference 3).  The specific requirements

imposed by the document enunciated for private and contract shipyards expectations that

were already in effect and implemented at the Navy's own facilities.

 31.  The Minimum Requirements identified asbestos-related disease as a potential

hazard of shipyard work, explaining that exposure could result from handling, sawing,

cutting, molding and welding rod salvage around asbestos or asbestos mixtures.  The

document advised that such jobs "can be done safely with:

  1.  Segregation of dusty work and,

  2.  (a)  Special ventilation:  Hoods enclosing the working process and having
   linear air velocities at all openings of 100 feet per minute, or

   (b)  Wearing of special respirators.

  3.  Periodic medical examination."

The Minimum Requirements also warn that jobs involving exposure to asbestos require

"respiratory protective equipment," in particular a "dust respirator."  A ventilation

supervisor (the safety engineer) was required to be trained to handle the entire ventilation

program in the yard, which was to include classes, demonstrations and short talks on

proper procedures.

 32.  The Minimum Requirements further called for employee safety training:  "the

time for the safety training of an employee to start is at the inception of his employment."

"Employees shall have in their possession, and be instructed in the proper use of, all

necessary personal protective equipment before being started on any job."  Safety bulletin

13

boards were to be located at each hull and shop, with "[s]afety posters and other material on the bulletin boards" changed at least semi-monthly.  The type of safety posters used in these worker educational campaigns included materials reinforcing the use of masks for protection against disease-causing dusts.  One such poster stated, "His mask keeps him on the job."  (Reference 9).

33.  This commitment by the Navy to address the asbestos-related health concerns of Navy workers, as set forth in the 1939 Handbook of the Hospital Corps and the Minimum Requirements document, is further evidenced by dozens of other documents generated by the Navy and consultants it retained during the war years.

34.  Later in the war, following extensive study of asbestos-related health issues, Dr. Philip Drinker, a Harvard professor and Chief Health Consultant to the Division of Shipyard Labor Relations and consultant to the Navy Surgeon General since 1941, wrote on January 31, 1945 to Captain Thomas J. Carter at the Navy's Bureau of Medicine and Surgery.  In his letter, he reported on analyses of airborne dust collected at Bath Iron Works, a leading contractor for construction of Navy vessels.  Dr. Drinker summarized the results of the analysis:  "This evidence is enough to indicate a fairly serious dust risk at Bath and to make it very probable that the same sort of thing will be found in other plants and yards where the same type of [asbestos] pipe covering materials are used." (Reference 10).

35.  In addition to asbestos health concerns revealed at Bath Iron Works, experience in some of the contract shipyards also came to the attention of Dr. Drinker and Navy authorities.  For example, union and worker complaints regarding asbestos-containing insulation at New York Shipbuilding led Dr. Drinker to meet with

14

manufacturers of asbestos pipe insulating materials used by the Navy.  Dr. Drinker

recorded that "they would be glad to get out a brief statement of precautions which

should be taken in the light of their own experience."  However, Dr. Drinker wrote that

he "underst[oo]d that neither Navy nor Maritime [Commission] wants any change in the

specifications as the performance with the present materials is entirely satisfactory."

    36.  These sentiments reflect the Navy's commitment to maintaining complete

control over existing military specifications, policies and procedures with respect to

asbestos-containing materials and worker practices with those materials.  The Navy

maintained a fierce autonomy over hazard recognition and control, because the Navy

considered itself the ultimate authority on naval systems and military workplaces.

Regardless of the source of other information, the Navy viewed its unique knowledge as

a strategic advantage in addressing hazard identification and control in its workplaces.

    37.  In the effort to achieve its mission, the Navy made trade-offs between the use

of asbestos and the potential health impact on personnel.  In the Navy's judgment, the

beneficial aspects of asbestos from an engineering standpoint (technical performance,

cost, weight, etc.) made it the best thermal insulation available and a critical war material.

As knowledge of asbestos health risks evolved, the Navy made sensitive military

mission-related decisions about deriving the benefits of asbestos while controlling its

risks.  Moreover, when the hazards of asbestos became more fully known to the Navy

and the scientific community in the late 1960s, the Navy determined not to do an

immediate fleet-wide elimination of asbestos.  At the time, Navy leaders were concerned

that a large scale, immediate asbestos removal program would pose at least three

15

problems: excessive cost; mission impairment; and increased health hazards to removal

crews from disturbing fixed, in-place asbestos.

38.   In my research, I have not located a single instance in which the Navy, at any

time during the 1930s through the 1960s, instructed or permitted a supplier of

engineering equipment to a vessel or facility to affix or provide any asbestos-related

warning with its equipment.  The Navy has not depended on equipment warnings in its

workplaces concerning long-term occupational health issues.  Rather than depending on

equipment signage or labeling, the Navy put its efforts into work practice training,

specifications for materials being used in its unique workplaces, and the hierarchy of

industrial hygiene controls.

39.   The Navy asserted for itself the role as final arbiter of what was best with

respect to industrial hygiene in its unique workplaces to carry out its national defense

mission.  The Navy's reasons for this approach include: harmonizing industrial hygiene

with its overall operations; maintaining security of its facilities; and unifying

communications to its workers.

40.   The Navy rejected participation from manufacturers in its efforts to alert its

personnel to potential asbestos hazards in Navy operations.  The Navy pursued the issue

in its own way.  Professor Drinker recorded:

> I met with the manufacturers of the materials used at Bath and they stated they
> would be glad to get out a brief statement of precautions which should be taken in
> the light of their own experience and that they would inform their competitors that
> I had asked them to do so.  I understand that neither Navy nor Maritime wants any
> change in the specifications as the performance with the present materials is
> entirely satisfactory.  From a health standpoint we do not believe any
> specification changes are needed.
>
> I suggested to Admiral Mills that it would be very desirable for Navy to examine
> men handling the preparation of [asbestos] pipe coverings and their installation in

16

at least two Navy Yards and two Navy contract yards as this is much more a Navy than a Maritime problem because the materials are used especially on Navy vessels with high pressure steam power plants. Admiral Mills agreed that such studies would be wise before Navy or Maritime accepted this asbestos risk as being significant in our general ship construction program.

(Reference 10).

41. Dr. Drinker and his Navy colleagues published the results of the study he had suggested in W.E. Fleischer, et al., "A Health Survey of Pipe Covering Operations in Constructing Naval Vessels," 28 *Journal of Industrial Hygiene & Toxicology* 9-16 (Jan. 1946). (Reference 11). The study reaffirmed the Navy's position regarding acceptable occupational dust exposure levels and dust control strategies. They offered the conclusion that "[asbestos] pipe covering is not a dangerous trade."

42. The conclusions of this study were carried into practice in Navy workplaces following World War II. The January 1947 issue of the Navy's *Safety Review* publication noted that "[e]xposure to asbestos dust is a health hazard which cannot be overlooked in maintaining an effective industrial hygiene program." (Reference 12).

43. Also during the second half of the 1940s, the American Conference of Governmental Industrial Hygienists ("ACGIH") evaluated the issue of asbestos exposures. This entity, comprised entirely of industrial hygienists with links to the government and academia, published threshold limit values for acceptable exposures to asbestos dust in the workplace. These standards were periodically updated over the years. Representatives of the Navy, trained as industrial hygienists, participated in the ACGIH. In recognition of the potential hazards associated with exposure to asbestos dust, a 1955 Navy Bureau of Medicine instruction adopted the ACGIH's threshold limit value for exposure to asbestos dust among Navy personnel. (Reference 13). The 1955

17

threshold limit value as promulgated in the Navy instruction was the same level to which the Navy had sought to control exposures during World War II.

44.   During the 1950s, the Navy continued to prescribe safe work practices to address potential shipyard hazards associated with exposure to asbestos dust.  For example, a 1950 General Safety Rules Manual issued by the Puget Sound Naval Shipyard instructed workers to "[w]ear dust type or air-fed respirators for . . . handling amosite [asbestos] insulating materials. . . ."  (Reference 14).

45.   In 1957, the Navy convened at the Boston Naval Shipyard a "Pipe and Copper Shop Master Mechanics' Conference" to address issues of concerns to those in the pipefitters' trade.  At the conference were personnel from all twelve Navy shipyards and the Navy's Bureau of Ships in Washington, D.C.

46.   The prepared remarks of a Long Beach Naval Shipyard official, included in the Minutes of the Conference reflect the Navy's stated policy that pipe insulators and laggers who handle asbestos products should wear respirators:

> Asbestos, when handled dry, produces vast amounts of silica dust. . . .  [T]he material can be dampened to reduce the amount of dust liberated.  However, the specified type of amosite [asbestos] for use on cold water piping is water repellent.  Also material which must be removed from an existing installation is dry and powdery, being an excellent dust producer. . . .
>
> [D]uring 1956 eleven deaths from asbestosis were reported on the Pacific Coast alone. . . .
>
> I know that two of my insulators are now afflicted with this condition. How many more will become afflicted is something which I hesitate to predict.
>
> Again the solution is obvious. Remove the cause by substituting other products. . .
>
> In the meantime, the answer is the wearing of respirators by all who handle asbestos products.

(Reference 15).

18

47.  A New York Naval Shipyard official added that if those working with asbestos insulation have not been "told . . . to put on masks, you are more or less the cause of their trouble."  That same official added:

> I think everyone, who has people doing this type work, should warn their people regarding the handling of this material.  With the proper handling of it on the job, and it has always posed a very big problem, because the men don't want to wear the masks, or get this dread disease.  It is difficult to protect them.  After a couple of years of mandatory wearing masks, I think they should realize the danger.  I think everyone ought to enforce the wearing of masks.  Don't forget this is something that injures people's health.  We should do something about it – and fast, and I am convinced that what we are doing is not enough.  We should not have people handle this material withou[t] protection.

48.  On January 7, 1958, the Department of the Navy issued a "Safety Handbook for Pipefitters," which explicitly addressed the asbestos hazard and again set forth Navy policy for controlling this hazard.  (Reference 16).  This handbook – one of many safety handbooks issued by the Navy – stressed that "[a]sbestos dust is injurious if inhaled," and warned those working with asbestos insulation materials to "[w]ear an approved dust respirator for protection against this hazard."

49.  The early 1960s brought still further development of the Navy's policies and practices to protect workers from asbestos-related health concerns.  For example,Captain H.M. Robbins, a Navy physician, and W.T. Marr, a Navy industrial hygienist from the Long Beach Naval Shipyard, published the article entitled "Asbestosis" in the October 1962 issue of the Navy's internal *Safety Review* publication.  The article addressed the potential for exposure to asbestos aboard ships:

> Aboard ship, a great variety of insulation is performed.  Insulation blocks are shaped with a saw, pads are supplied to fittings, insulation cement is applied to blocks and covered with asbestos cloth.  These and other operations take place in nearly all compartments; however, most work is done in the machinery spaces.  By far the greatest potential exposure to asbestos fibers occurs during ripout of old insulation for ship overhaul or reconversions.

19

The article concluded that "[t]he worker's best protection is to avoid careless creation of dusty conditions, use damp material when possible, and wear respiratory protection constantly."  (Reference 17).

50.  In 1968, the Navy came under scrutiny for its handling of asbestos-related health issues.  On July 30, 1968, Murray C. Brown, Medical Director of the Public Health Service, wrote to Vice-Admiral R.B. Brown, the Chief of the Navy's Bureau of Medicine and Surgery, stating that "[o]ne of our grantees, Dr. Irving Selikoff of New York University, has recently completed a study of non-insulation shipyard workers' exposure to asbestos," and that "Dr. Selikoff reports he has some interesting data and has requested that we arrange an information meeting with your Department and the U.S. Department of Labor to discuss his findings."  On December 5 of that same year, Admiral Brown reported to others in the Navy health establishment that "Doctor I.J. Selikoff of Mount Sinai Hospital, through the news media, stated that he has warned the Navy and other Federal departments of his findings relating to the unusual incidence of asbestosis among shipyard asbestos workers.  The newspaper articles stated that the Federal agencies including the Navy have not publicized the hazards." (Reference 18).

51.  In a "Hazard Analysis" commissioned in response to this external criticism of the Navy's safety practices, Commander Rosenwinkel of the Navy's Bureau of Medicine assured that:

> [T]he Navy's shipyards have for many years been aware of the hazards of asbestos and have initiated appropriate safety precautions.  Insofar as possible, all fabrication work [with insulation] is performed in the shops where adequate safety precautions can be observed.  These precautions include controlled ventilation, use of respirators, and wetting down of the material.  During "rip out" operations, respirators are worn and ventilation is controlled as far as possible.

20

Similar language was prepared "for inclusion in a statement to be issued by Rear Admiral

J.J. Stilwell, Shipyard Management Directorate":

> The United States Navy is well aware of the hazards of asbestos to its employees engaged in ship construction and ship repair at naval shipyards. Hazard control measures implemented by the shipyard medical departments and practices are in accordance with accepted standards of industrial hygiene practices in the United States. Stringent efforts are directed at keeping the concentration of air borne asbestos dust below the level recommended by the American Conference of Governmental Industrial Hygienists. An energetic periodic physical examination program insures the health of personnel exposed to this hazard.
>
> For more than two years, the Naval Ship Systems Command and the Commander of Boston Naval Shipyard have been cooperating with a prominent investigator in a study whose ultimate goal is to define safe working conditions with respect to air borne asbestos. Upon the development of further objective, well founded recommendations for the control of this hazard, the Naval Ship Systems Command, in cooperation with the Bureau of Medicine and Surgery, will take the necessary steps to implement them at the naval shipyards and all naval activities.

(Reference 19). The message was clear, and consistent: the Navy would handle asbestos

issues in its own way and through its own channels.

52. The development of the Navy's policy towards asbestos-related health issues,

and of its program for addressing asbestos exposure to Navy personnel, continued into

the 1970s. On February 9, 1971, the Commander of the Navy's Ship Systems Command

issued to numerous Navy bureaus and commands its Instruction 5100.26. That document

began by recognizing that:

> [t]he most critical use of asbestos in the Navy from a safety viewpoint is in the fabrication, installation, repair or removal of pipe and boiler insulation materials. Some workers sustain accidental contacts either while employed in various capacities where asbestos products are processed or when working in plant areas in which an environmental pollution of the air exists due to asbestos.

In light of these concerns, the purpose of the document was "to prescribe appropriate

safety precautions during the use of asbestos," and it decreed that:

21

> [t]he following safety precautions will be observed by all supervisors and workers engaged in the fabrication, installation and/or removal (ripout) of asbestos-containing insulation material.  The provisions of this instruction will be effective as of this date.  The provisions in this instruction are considered as minimum health and safety requirements.  More stringent restrictions may be applied by local commanders.

The document then listed nearly fifty specific work practices to be employed to protect workers from asbestos exposure in handling or working in the vicinity of asbestos-containing products.  (Reference 20).

## B.  Gaskets and Packing

53.  With specific reference to potential hazards associated with the handling of asbestos-containing gaskets and packing, I am aware from my research and from my personal experience in the Navy that these materials were regarded as negligible sources of asbestos exposure.  For example, a December 9, 1968 U.S. Department of the Navy Memorandum regarding  "Hazards of Asbestos" stated that

> [a]ll of the asbestos in [gasket and packing materials] is fabricated as cloth, rope or compressed sheet with binders, so that the items are not friable when they are cut.  Thus, these items do not cause dust in shipboard applications.  In addition, in many instances, they are received already incorporated in the finished assembly such as a valve, and do not require fabrication by the shipyard.  For these reasons, packings and gaskets containing asbestos are not considered to be a significant health hazard.

(Reference 19).

54.  This conclusion was reaffirmed in the published literature by P.G. Harries, who made extensive study of asbestos exposure in shipyards in the United Kingdom.  In "Asbestos Dust Concentrations in Ship Repairing:  A Practical Approach to Improving Asbestos Hygiene in Naval Dockyards," *Ann Occup Hyg 14*:  241-254 (1971), Harries concluded that asbestos-containing gaskets, which he referred to as "high temperature

22

jointing and packing materials," presented "[n]o health hazard in forms used in shipyard applications."  He also noted that "[n]o substitute heat-resistant material is available" for asbestos in these applications.  (Reference 21).

55.  A 1973 publication of the International Agency for Research on Cancer – *Biological Effects of Asbestos* , p. 325 – stated that "[t]here is no conceivable health risk in the use of asbestos-based gasket materials."  (Reference 22).  Well-known asbestos researcher and health advocate Dr. Irving Selikoff wrote, in his 1978 book *Asbestos and Disease (*p. 467) that "[h]igh temperature jointing and packing materials" containing "[a]sbestos fiber" and "[c]ompressed asbestos fiber" present "[n]o health hazard in forms used in shipyard applications."  (Reference 23).

56.  The lack of concern for asbestos exposure from asbestos-containing gaskets and packing expressed in Navy documents and the writings of researchers such as Harries and Selikoff is entirely consistent with my experience as a uniformed and civilian Navy occupational medicine physician during the late 1970s and early and mid-1980s.

57.  In addition to the documents referenced and discussed above, the development of the Navy's knowledge of asbestos-related health issues and of appropriate workplace practices and controls to prevent exposure to elevated levels of airborne asbestos also is reflected, among others, in the documents listed on Exhibit B, which comprise part of the bases for my opinions on these topics.

### III.  CONCLUSIONS

58.  The Navy made its decisions with respect to the use of asbestos in accordance with Navy operating requirements and in furtherance of Navy missions, and in light of

the Navy's knowledge of associated health hazards at the time and of its perception of the requirements of federal law.  The Navy's extensive and evolving knowledge of the hazards of exposure to asbestos and the means to control those hazards were weighed by the Navy against the benefits provided by its use. These benefits included meeting national defense needs in a standardized, efficient and low-cost manner that would not delay or hinder ship availability, especially during times of war.  The Navy was informed in this decision-making by close contacts and liaison with relevant academic communities, professional organizations and other government agencies.

59.  Similarly, the Navy's handling of and programs regarding workplace safety and hazard communication, as they related to asbestos and other issues, reflected the Navy's balance of various considerations, including combat readiness, maintenance of the necessary command structure, the needs of discipline and the hierarchy of risks presented by life and work aboard a combat vessel.  In general, the Navy chose to address long-term workplace health issues in the course of training for various trades and jobs, rather than using labeling or other written materials to accompany products into the workplace.

60.  The Navy's occupational health program in no way depended upon, required or sought advice from equipment manufacturers regarding long-term occupational health issues, including those posed by exposure to asbestos dust.  I have not uncovered – nor would I have expected to based on my research and experience and the extent of the Navy's knowledge in these areas – situations in which the Navy solicited from suppliers of shipboard equipment any information or guidance regarding the appropriate methods for the prevention of exposure to asbestos.   Given the Navy's state-of-the-art knowledge

concerning asbestos related hazards and its robust safety and health program, it would be unreasonable to assume that the Navy would have accepted any advice pertaining to asbestos related safety precautions from a manufacturer of equipment.

61. My opinions set forth herein are held to a reasonable degree of scientific certainty.

_____
Samuel A. Forman, M.D.

Subscribed and sworn to before me

this 11ᵀᴴ day of _____March_____, 2011.

Notary Public

JENNIFER ANN PAUL
Notary Public, Commonwealth of Massachusetts
My Commission Expires April 21, 2017

REFERENCES:

1   S. Forman, "U.S. Navy Shipyard Occupational Medicine Through World War II," *Journal of Occupational Medicine*, Vol. 30, No. 1, Jan. 1988

2   E. Brown, "Industrial Hygiene and the Navy in National Defense," *War Medicine*, Vol. I, 1941

3   Navy Department & Maritime Commission, "Minimum Requirements for Safety and Industrial Health in Contract Shipyards," Jan. 20, 1943

4   C. Shilling, *The Human Machine*, Naval Institute 1955

5   L. Dublin et al., "Instruction to Medical Officers, *Naval Medical Bulletin*, 1922

6   *Handbook of the Hospital Corps*, Navy Bureau of Medicine & Surgery, 1939

7   *Annual Report of the Surgeon General of the Navy*, 1939

8   Memorandum for Admiral McIntire from C.S. Stephenson, Mar. 11, 1941

9       Navy Poster, "His mask keeps him on the job"

10     Letter to Navy Bureau of Medicine & Surgery from P. Drinker, Jan. 31, 1945

11     W. Fleischer et al., "A Health Survey of Pipe Covering Operations in Constructing Naval Vessels," 28 *Journal of Industrial Hygiene & Toxicology*, Jan. 1946

12     "Asbestos Dust," Safety Review, Navy, Jan. 1947

13.    BUMED Instruction re Threshold Limit Values for Toxic Materials, Nov. 7, 1955

14     General Safety Rules, Puget Sound Naval Shipyard, 1950

15     Minutes of Pipe and Copper Shop Master Mechanics Conference, Boston Naval Shipyard, May 8-10, 1957

16     Safety Handbook for Pipefitters, NAVORD Instruction 5100.21, Jan. 7, 1958

17     W. Marr, "Asbestos," *Safety Review*, Oct. 1962

18     Letter to R. Brown, Navy Bureau of Medicine & Surgery, from M. Brown, U.S. Public Health Service, July 30, 1968

19     Department of Navy Memorandum re Hazards of Asbestos, Dec. 9, 1968 (with enclosures)

20     "Asbestos Exposure Hazards," NAVSHIPS Instruction 5100.26,;Feb. 9, 1971

21     P. Harries, "Asbestos Dust Concentrations in Ship Repairing: A Practical Approach to Improving Asbestos Hygiene in Naval Dockyards," *Annals of Occupational Hygiene*, 1971

22     IARC, *Biological Effects of Asbestos*, 1973

23     I. Selikoff et al., *Asbestos and Disease*, 1978

1
2
3
4
5                        UNITED STATES DISTRICT COURT

6                       CENTRAL DISTRICT OF CALIFORNIA

7

8   ROBERT REASER, et al.          )      CV 08-1296-SVW (SSx)
                                    )
9                 Plaintiffs,       )      ORDER DENYING PLAINTIFFS'
                                    )      MOTION FOR REMAND [18]
10          v.                      )
                                    )
11  ALLIS CHAMBERS CORPORATION, et  )
    al.                             )
12                Defendants.       )
    ─────────────────────────────   )
13                                  )
                                    )
14                                  )

15  **I.   Statement of Facts**

16       Plaintiffs Robert and Christine Reaser brought this action

17  against General Electric Company ("GE"), Viad Corporation ("Viad")[1],

18  and other Defendants in Los Angeles Superior Court on January 25,

19  2008.  (Motion for Remand, at 1 ("Motion").)  Plaintiffs allege that

20  Robert Reaser ("Reaser") developed malignant mesothelioma as a result

21  of exposure from Defendants' asbestos or asbestos-containing products

22  aboard United States naval ships.  (Complaint, at ¶ 3 ("Complaint").)

23  Reaser served in the U.S. Navy from 1951 to 1964, during which he was

24  allegedly exposed to asbestos while working on the *U.S.S Shea*, *U.S.S.*

25  *Boston*, *U.S.S. Providence*, and the *U.S.S. Wilkinson*.  (Defendant Viad

26  Notice of Removal, at 3.)  Plaintiffs allege that Defendants violated

27  their state law duties to warn Reaser about the dangers of asbestos

28

────────────────────────────────────

[1]  Defendants Viad and GE were the only defendants who removed the
case and filed oppositions to the Motion for Remand.



EXHIBIT

8

1  exposure from equipment found on naval vessels.  (Motion, at 1.)

2  Viad, later joined by GE, removed the case to federal court based on

3  the federal officer removal statute, which provides federal

4  jurisdiction over claims against "any officer (or any person acting

5  under that officer) of the United States or of any agency    thereof

6  . . . for any act under color of such office . . ."  28 U.S.C.  §

7  1442(a)(1).  This statute does not require all Defendants to consent

8  to removal.  See Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253

9  (9th Cir. 2006) ("Whereas all defendants must consent to removal

10  under section 1441 . . . a federal office or agency defendant can

11  unilaterally remove a case under section 1442.")

12       Plaintiffs, clearly anticipating that one or more Defendants

13  would attempt to remove the case to federal court, included a

14  disclaimer in the Complaint which attempts to waive any cause of

15  action arising from exposure to asbestos dust that occurred in a

16  federal enclave, expressly excluding from the disclaimer U.S. Navy

17  vessels.  Plaintiffs also disclaim any cause of action resulting from

18  exposure to asbestos dust caused by any acts or omissions of

19  Defendants committed at the direction of a U.S. officer.  (Complaint,

20  at ¶ 4.)  On April 14, 2008, Plaintiffs filed a motion for remand to

21  state court on the ground that this Court lacks subject matter

22  jurisdiction.  (Motion, at 2.)

23  ///

24  ///

25

26  **II.  Analysis**

27

28

2

1      Three main issues must be addressed in examining Plaintiffs'

2 Motion.  The first is whether the standard of review includes a

3 requirement that Defendants meet a "special burden" in showing that

4 federal officer jurisdiction is proper.  The second is whether

5 Defendants meet the elements of federal officer jurisdiction.  The

6 third is whether Plaintiffs' disclaimer should be determinative as to

7 the question of remand.

8

9      **A.   Standard of Review**

10     A party seeking removal under § 1442(a)(1) must demonstrate that

11 (a) it is a person within the meaning of the statute; (b) it can

12 assert a "colorable federal defense"; and (c) there is a causal nexus

13 between its actions, taken pursuant to a federal officer's

14 directions, and the plaintiff's claims.  <u>Durham</u>, 445 F.3d at 1251.

15 Defendants Viad and GE assert that they must prove only by a

16 preponderance of the evidence that removal to federal court is

17 proper, as typically required. (<u>See</u> Defendant Viad Opposition Motion,

18 at 3.)

19     Plaintiffs argue, however, that Defendants have a "special

20 burden" in showing that federal officer jurisdiction is proper.

21 (Motion, at 3.)  Plaintiffs assert that the special burden requires

22 Defendants to present concrete, verifiable evidence regarding

23 satisfaction of federal officer jurisdiction, particularly with

24 respect to satisfying the existence of a colorable federal defense.

25 This burden would create a higher standard for Defendants at this

26 stage of the litigation process.  Citing to <u>Williams v. General</u>

27 <u>Electric Co.</u>, Plaintiffs allege that because § 1442(a)(1) is

28

3

1   "predicated on the protection of federal activity and an

2   anachronistic mistrust of state courts' ability to protect and

3   enforce federal interests and immunities from suit, private actors

4   seeking to benefit from its provisions bear a special burden in

5   establishing the official nature of their activities."  (Motion, at

6   3) (quoting <u>Williams v. General Electric Co.</u>, 418 F. Supp. 2d 610,

7   614 (M.D. PA. 2005)).  Furthermore, Plaintiffs rely on <u>Hilbert v.</u>

8   <u>McDonnell Douglas Corp.</u> in arguing for a heightened burden in

9   satisfying the three prongs of § 1442(a)(1).  529 F. Supp. 2d 187 (D.

10  Mass. 2008).  In <u>Hilbert</u>, the defendants claimed that the military,

11  through its contracts, exercised its discretion in such a way as to

12  prevent them from warning the plaintiff about the dangers of

13  asbestos, similar to the present assertions by Viad and GE.  <u>Id.</u> at

14  199.  The court required that the defendants submit actual citations

15  to regulations or contracts evidencing the government's alleged

16  control over asbestos warnings.  Because the defendants did not

17  produce such evidence, the court held that this "sort of speculation

18  is not remotely adequate" to satisfy federal officer jurisdiction and

19  remanded the case.  <u>Id.</u> at 202-203.

20      The Ninth Circuit, however, has rejected the notion that

21  defendants must meet a special burden in order to satisfy the three

22  prongs of federal officer jurisdiction.  In <u>Durham</u>, the Ninth Circuit

23  noted that, while removal under § 1441 is to be strictly construed,

24  the federal officer removal statute is to receive a generous

25  interpretation.  According to the Ninth Circuit, "the Supreme Court

26  has held that the right of removal is absolute for conduct performed

27  under color of federal office, and has insisted that the policy

28

4

1  favoring removal should not be frustrated by a narrow, grudging

2  interpretation of § 1442(a)(1)." Durham, 445 F.3d at 1252 (citing

3  Arizona v. Manypenny, 451 U.S. 232, 242 (1981)).  Therefore, when

4  federal officers and their agents are seeking a federal forum, the

5  Court is to interpret § 1442 broadly in favor of removal.  Id.  In

6  following the Supreme Court's broad interpretation of § 1442 and

7  rejecting the need for a special burden, the Ninth Circuit has

8  maintained that Defendants must simply make an adequate showing that

9  the requirements of federal office jurisdiction are met to support

10  removal to federal court.  Id. at 1252-1253.  Therefore, to qualify

11  for removal, Defendants must be a person under the statute, raise a

12  colorable federal defense, and present a basis for a causal

13  connection between the charged conduct and the asserted government

14  authority.  Willingham v. Morgan, 395 U.S. 402, 409 (1969) (citing

15  Maryland v. Soper (No. 1), 270 U.S. 9, 33 (1926)).  Defendants need

16  not prove their federal defense or a causal nexus to justify removal.

17

18      **B.   Three Prongs of Removal under § 1442(a)(1)**

19          **1.   Person**

20      As corporations, Defendants Viad and GE meet the preliminary

21  requirement that the party seeking removal is a person within the

22  meaning of § 1442(a)(1).  See Fung v. Abex Corp., 816 F. Supp. 569,

23  572 (N.D. Cal. 1992).  There is no dispute between the parties as to

24  this prong.

25

26          **2.   Colorable Federal Defense**

27

28

Case 3:11-cv-00199-BAJ -SCR   Document 1-9   03/28/11   Page 5 of 16

1   Defendants seek removal under the government or military

2   contractor defense, which protects a government contractor from

3   liability for acts done by him while complying with government

4   specifications during execution of performance under a contract with

5   the United States.  McKay v. Rockwell Intern. Corp., 704 F.2d 444,

6   448 (9th Cir. 1983).  The Supreme Court recognized the contractor

7   defense in Boyle v. United Technologies Corp., where it held that

8   liability for design defects in military equipment could not be

9   imposed on a private government contractor under state law where: (1)

10  the United States approved reasonably precise specifications; (2) the

11  equipment conformed to those specifications; and (3) the supplier

12  warned the United States about the dangers in the use of the

13  equipment that were known to the supplier, but not to the United

14  States.  Boyle v. United Technologies Corp., 487 U.S. 500, 512

15  (1988).  This defense has been extended to failure to warn cases;

16  however, it is inapplicable in the absence of evidence that the

17  defendants' decision to not provide a warning was "in compliance with

18  reasonably precise specifications imposed on it by the United

19  States." Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th

20  Cir. 1996).  Where there is no conflict between requirements imposed

21  under a federal contract and a state law duty to warn, the Court

22  should defer to state law.  Id.

23  ///

24  ///

25

26          a.    Reasonably Precise Specifications

27

28

6

1    To illustrate that reasonably precise specifications set forth

2    by the Navy exist and that these specifications conflict with the

3    state law duty to warn, Defendants rely on the declarations of Dr.

4    Cushing and Admiral Lehman.  Dr. Cushing, President of C.R. Cushing &

5    Co., Inc., Naval Architects, Marine Engineers and Transportation

6    Consultants, notes that the U.S. government was intimately involved

7    in the manufacture of any contractors' equipment used in U.S.

8    vessels, "as the equipment manufactured for those vessels was

9    designed and built to meet precise and exacting specifications of the

10   U.S. Navy." (Cushing Dec., at 4.)  Furthermore, Dr. Cushing asserts

11   that "[w]hether certain equipment used aboard U.S. Naval vessels

12   should have warnings, and the content and format of any such warning,

13   was determined solely by the U.S. Navy." (Id. at 5.)  Admiral

14   Lehman, a retired Rear Admiral of the U.S. Navy, states that

15   "equipment suppliers were prohibited from providing any warnings on

16   or to accompany equipment supplied to the Navy without the consent

17   and approval of the Navy." (Lehman Dec., at 5.)  Moreover, Admiral

18   Lehman claims that certain types of warnings were simply not approved

19   by the Navy, such as any warnings associated with hazards from

20   asbestos.  (Id.)  Plaintiffs argue that these declarations do not

21   refer to actual contracts or any personal knowledge of contractual

22   obligations owed by Defendants, but rather are mere speculations

23   about what the Navy would have permitted.  (Plaintiffs' Reply, at 6.)

24   Essentially, Plaintiffs assert that Defendants have not adequately

25   shown that the Navy set forth reasonably precise specifications, such

26   that Defendants fail to raise a colorable federal defense.[2]

27   _____

28   [2]  Plaintiffs further argue that Admiral Lehman and Dr. Cushing lack
     personal knowledge and that their declarations lack foundation and

7

1   Plaintiffs' argument relates to their assertion that Defendants

2   must prove their case in order to satisfy the three prongs for

3   removal under § 1442.  (Motion, at 3.)  Because the Supreme Court and

4   the Ninth Circuit has declined to require that any such burden be

5   placed on defendants in federal officer removal cases, the argument

6   that actual contracts are required to illustrate reasonably precise

7   specifications at this stage of the litigation process necessarily

8   fails.  See Willingham, 395 U.S. at 407 (noting that to be colorable,

9   the defense does not need to be clearly sustainable, as the purpose

10  of § 1442 is to secure that the validity of the defense will be tried

11  in federal court).  Defendants need not establish the validity of

12  their federal defense in order to justify removal.  Rather, they must

13  only raise a colorable federal defense.  The declarations made by

14  Admiral Lehman and Dr. Cushing describe general naval policies and

15  shipbuilding practices, and illustrate the lack of discretion given

16  to government contractors in supplying equipment to naval vessels.

17  As Plaintiffs point out, the declarations do not reference any

18  specific contractual provisions that prohibit Defendants from placing

19  warnings on naval equipment about the dangers of asbestos exposure.

20

21  are speculative.  These arguments lack merit because Admiral Lehman
    and Dr. Cushing's declarations are based on years of experience and
22  training in regard to the design and operation of U.S. Navy vessels.
    Both declarants state that they are personally familiar with the
23  degree of supervision and control of the Navy over the actions of its
    contractors.  The declarations describe typical Navy specifications
24  and offer explanations as to why warnings about asbestos would not
    have been permitted.  (See Lehman Dec., at 2-3; Cushing Dec., at 2,
25  5.)  Additionally, Plaintiffs claim the declarations are inadmissible
    per the "best evidence rule."  Fed. R. Evid. 1002.  This argument
26  also lacks merit because Admiral Lehman and Dr. Cushing are not
    trying to "prove the content of a writing," but rather they are
27  relying on their independent knowledge and familiarity regarding Navy
    specifications in making their assertions.  Id.
28

8

1  The absence of specific prohibitions, however, does not render these

2  declarations useless; rather, the declarations provide Defendants

3  with a basis for asserting a colorable federal defense, which is all

4  that is needed at the removal stage.  A central district court

5  similarly determined that Admiral Lehman's declaration created an

6  inference that military contractors did not provide a warning

7  concerning the dangers of asbestos because the Navy did not permit

8  any such warning.  Oberstar v. CBS Corp., No. CV 08-118 PA, at 5

9  (C.D. Cal. Feb. 11, 2008) (citing Nesbiet v. General Electric Co.,

10  399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005)).  Once again, the court

11  noted that defendants must only show a colorable federal defense at

12  this stage of the litigation process, not one that will ultimately

13  prevail.  Id.  Additionally, a Northern District of California court

14  has specifically rejected the argument that a defendant must produce

15  actual contractual documentation in order to demonstrate that it

16  worked under reasonably precise specifications.  See Ballenger v.

17  Agco Corp., 2007 WL 1813821, at *3 (N.D. Cal. June 22, 2007) (stating

18  that to require past contracts would frustrate the purpose of §

19  1442).  In this action, based on the declarations of Admiral Lehman

20  and Dr. Cushing, it is possible to find that the Navy set forth

21  reasonably precise specifications regarding the use of warnings, such

22  that Defendants have a basis for asserting a colorable federal

23  defense.

24

25          b.    Conformity to Reasonably Precise Specifications

26      As to the second element of the government contractor defense,

27  Defendants must show that the products supplied to the U.S. Navy

28

9

1   conformed to the reasonably precise specifications set forth by the

2   Navy.  Essentially, Defendants must show that the Navy received what

3   it sought.  Based on the declarations by Admiral Lehman and Dr.

4   Cushing, it can be inferred that any deviation from the Navy's

5   specifications would have resulted in rejection of the equipment.

6   (See Cushing Dec., at 4-5; Lehman Dec., at 4.)  Thus, if Plaintiff

7   Reaser had been exposed to asbestos on naval vessels where Defendants

8   had supplied asbestos-containing equipment, it is likely that this

9   equipment conformed to the detailed specifications set forth by the

10   Navy.  Had this equipment not complied with the Navy's specifications

11   regarding design, installation, and warnings, it is a fair inference

12   that the equipment would not have been placed on the ships.  (Lehman

13   Dec., at 4-5.)

14

15            **c.   Warnings by Defendants**

16     Finally, the third element of the military contractor defense

17   requires that Defendants did not fail to warn the Navy of any dangers

18   associated with asbestos that were known by Defendants but not the

19   government.  As the Supreme Court in Boyle noted, "[t]he third

20   condition is necessary because, in its absence, the displacement of

21   state tort law would create some incentive for the manufacturer to

22   withhold knowledge of risks, since conveying that knowledge might

23   disrupt the contract but withholding it would produce no liability."

24   Boyle, 487 U.S. at 512.  Dr. Lawrence Betts, a retired Navy captain,

25   states in his declaration that the Navy's knowledge regarding the

26   dangers of asbestos and its health effects represented the state of

27   the art.  (Betts Dec., at 18.)  Furthermore, he notes that "[d]uring

28

10

1    Defendants seek removal under the government or military

2    contractor defense, which protects a government contractor from

3    liability for acts done by him while complying with government

4    specifications during execution of performance under a contract with

5    the United States.  McKay v. Rockwell Intern. Corp., 704 F.2d 444,

6    448 (9th Cir. 1983).  The Supreme Court recognized the contractor

7    defense in Boyle v. United Technologies Corp., where it held that

8    liability for design defects in military equipment could not be

9    imposed on a private government contractor under state law where: (1)

10    the United States approved reasonably precise specifications; (2) the

11    equipment conformed to those specifications; and (3) the supplier

12    warned the United States about the dangers in the use of the

13    equipment that were known to the supplier, but not to the United

14    States.  Boyle v. United Technologies Corp., 487 U.S. 500, 512

15    (1988).  This defense has been extended to failure to warn cases;

16    however, it is inapplicable in the absence of evidence that the

17    defendants' decision to not provide a warning was "in compliance with

18    reasonably precise specifications imposed on it by the United

19    States."  Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th

20    Cir. 1996).  Where there is no conflict between requirements imposed

21    under a federal contract and a state law duty to warn, the Court

22    should defer to state law.  Id.

23    ///

24    ///

25

26          a.    Reasonably Precise Specifications

27

28

1    To illustrate that reasonably precise specifications set forth

2    by the Navy exist and that these specifications conflict with the

3    state law duty to warn, Defendants rely on the declarations of Dr.

4    Cushing and Admiral Lehman.  Dr. Cushing, President of C.R. Cushing &

5    co., Inc., Naval Architects, Marine Engineers and Transportation

6    Consultants, notes that the U.S. government was intimately involved

7    in the manufacture of any contractors' equipment used in U.S.

8    vessels, "as the equipment manufactured for those vessels was

9    designed and built to meet precise and exacting specifications of the

10   U.S. Navy." (Cushing Dec., at 4.)  Furthermore, Dr. Cushing asserts

11   that "[w]hether certain equipment used aboard U.S. Naval vessels

12   should have warnings, and the content and format of any such warning,

13   was determined solely by the U.S. Navy." (Id. at 5.)  Admiral

14   Lehman, a retired Rear Admiral of the U.S. Navy, states that

15   "equipment suppliers were prohibited from providing any warnings on

16   or to accompany equipment supplied to the Navy without the consent

17   and approval of the Navy." (Lehman Dec., at 5.)  Moreover, Admiral

18   Lehman claims that certain types of warnings were simply not approved

19   by the Navy, such as any warnings associated with hazards from

20   asbestos.  (Id.)  Plaintiffs argue that these declarations do not

21   refer to actual contracts or any personal knowledge of contractual

22   obligations owed by Defendants, but rather are mere speculations

23   about what the Navy would have permitted. (Plaintiffs' Reply, at 6.)

24   Essentially, Plaintiffs assert that Defendants have not adequately

25   shown that the Navy set forth reasonably precise specifications, such

26   that Defendants fail to raise a colorable federal defense.[2]

27   _____

28   [2]   Plaintiffs further argue that Admiral Lehman and Dr. Cushing lack
     personal knowledge and that their declarations lack foundation and

7

1   the period from the early 1920s to the late 1960s, there was nothing

2   about the hazards associated with the use of asbestos-containing

3   products . . . on United States Navy ships known by a manufacturer .

4   . . that was not known by the United States and the United States

5   Navy." (Id.)  Based on this evidence, it seems possible to find that

6   the information possessed by the Navy exceeded any information that

7   could have been provided by Defendants, such that the third element

8   is sufficiently satisfied for raising a defense.  Therefore, it

9   appears that Defendants have raised a colorable federal defense.

10

11          3.  Causal Nexus

12      The final prong necessary to satisfy federal officer removal

13   requires Defendants to demonstrate that the Navy controlled the

14   warnings Defendants could place on its equipment and that this

15   control prevented Defendants from fulfilling its alleged state law

16   duty to warn of the dangers associated with asbestos exposure.

17   Essentially, there must be a causal nexus between the claims against

18   Defendants and the acts they performed under color of federal office.

19   Ballenger, 2007 WL 1813821at *3-4.  Similar to the second prong,

20   Defendants must simply show the existence of a likely causal

21   connection, not prove such a connection.  See Jefferson County v.

22   Acker, 527 U.S. 423, 432 (1999) ("Just as requiring a clearly

23   sustainable defense rather than a colorable defense would defeat the

24   purpose of the removal statute . . . so would demanding an airtight

25   case on the merits in order to show the required causal connection.")

26   Again, as shown above by the declarations of Lehman, Cushing, and

27   Betts, the Navy had direct control over all aspects of the equipment

28

11

1  supplied to its ships.  It can therefore be inferred that the reason

2  why Defendants did not place warnings on their equipment was because

3  such warnings were precluded by the Navy's detailed specifications.

4  (See Lehman Dec., at 4.)  Plaintiffs allege that Defendants failed to

5  warn of asbestos dangers, yet this alleged failure to warn,

6  Defendants assert, resulted from the Navy's prohibitions and/or

7  control over any such warning.  Therefore, Defendants adequately show

8  a causal nexus between Plaintiffs' claims and Defendants' actions.

9      Because Defendants have adequately asserted a colorable federal

10  defense and a causal nexus between Plaintiffs' claims and Defendants'

11  acts performed under the direction of the Navy, it appears that

12  Defendants satisfy the three prongs of § 1442(a)(1).

13

14      C.   Disclaimer

15      Plaintiffs additionally argue that removal is improper because

16  of disclaimers appearing in the Complaint. Plaintiffs include two

17  disclaimers in the Complaint. The first disclaimer does not operate

18  to disclaim any cause of action subject to federal officer removal.

19  (Complaint, at ¶ 4.) The second disclaimer, however, specifically

20  disclaims "any cause of action or recovery for any injuries resulting

21  from exposure to asbestos dust caused by any acts or omissions of a

22  party Defendant committed at the direction of an officer of the

23  United States Government." (Id.) However, because removal pursuant to

24  the federal officer removal statute is premised on the existence of a

25  colorable federal defense, rather than the manner in which a

26  plaintiff's complaint is constructed, courts have found that neither

27  a plaintiff's disclaimer nor its characterization of his claims is

28

12

1   determinative.  See Oberstar, No. CV 08-118 PA at 3.  See also Durham,

2   445 F.3d at 1253 ("[R]emovals under section 1441 are subject to the

3   well-pleaded complaint rule, while those under section 1442 are

4   not."); Ballenger, 2007 WL 1813821 at *2 ("Under the federal office

5   removal statute, suits against federal officers may be removed

6   despite the nonfederal cast of the complaint.")  The Court takes a

7   similar view.  Plaintiffs' second disclaimer effectively mirrors

8   Defendants' federal contractor defense and so in no way prevents

9   litigation of the applicability of that defense in state court, which

10  is precisely what the federal officer removal statute seeks to avoid.

11  To grant a plaintiff's motion for remand based on such a disclaimer

12  would, therefore, render the federal officer removal statute

13  completely ineffectual in the face of an "artfully constructed"

14  complaint.  Oberstar, No. CV 08-118 at 3.  The Court cannot allow

15  Plaintiffs to evade federal officer removal in such a fashion.

16      Plaintiffs rely on Westbrook v. Asbestos Defendants, where the

17  court, when faced with similar facts and evidence, found the

18  plaintiffs' disclaimer to be determinative and remanded the case back

19  to state court. 2001 WL 902642 at *3 (N.D. Cal. July 31, 2001).

20  However, Westbrook is distinguishable from the present case in that

21  the plaintiffs in Westbrook disclaimed "any claims arising out of

22  work done on United States Navy ships."  Id. at *2.  In other words,

23  the plaintiffs in Westbrook specifically waived any causes of action

24  stemming from asbestos exposure on naval vessels; instead premising

25  their claims on injuries arising from work done on private ships.

26  Id. As a result, unlike in the present case, the parties in

27  Westbrook had no need to litigate any issue resembling the federal

28

13

contractor defense in order to determine the applicability of the plaintiffs' disclaimer.  Therefore, remand in that case did not undermine the purposes of § 1442(a)(1), as remand here would, and so was appropriate.

**III. Conclusion**

Based on the foregoing reasons, Plaintiffs Robert and Christine Reaser's Motion for Remand is DENIED.

IT SO ORDERED.

DATED: _____June 23, 2008_____

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

14

 **CT Corporation**

**Service of Process Transmittal**
02/25/2011
CT Log Number 518096387

TO:   Rose Hoover, Vice Pres. Admin. and Corporate Sec.
      Ampco-Pittsburgh Corporation
      600 Grant Street, Suite 4600
      Pittsburgh, PA 15219

RE:   **Process Served in Pennsylvania**

FOR:  Air & Liquid Systems Corporation (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Alton Lewis, Pltf. vs. Atlas Refinery, Inc., et al. including Air & Liquid Systems Corporation, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Letters, Amended Citation, Motions, Certificates of Service, Order, Exhibits |
| **COURT/AGENCY:** | 19th Judicial District Court, Parish of East Baton Rouge, LA
Case # C583178 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Harrisburg, PA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 02/25/2011 postmarked on 02/22/2011 |
| **JURISDICTION SERVED :** | Pennsylvania |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | Susannah B. Chester
Waters & Kraus, LLP
3219 McKinney Avenue
Dallas, TX 75204
214-357-6244 |
| **REMARKS:** | Documents were served on the Secretary of State on 01/25/2011. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/25/2011, Expected Purge Date: 03/02/2011
Image SOP
Email Notification, Rose Hoover RHOOVER@AMPCOPGH.COM
Email Notification, Jess Nock jnock@ampcopgh.com
Email Notification, Jen Sauers jsauers@ampcopgh.com
Email Notification, Nicole Sayles nsayles@ampcopgh.com
Email Notification, Insurance Department insurance@ampcopgh.com |
| **SIGNED:** | CT Corporation System |
| **PER:** | Sabra Dudding |
| **ADDRESS:** | 116 Pine Street
3rd Floor, Suite 320
Harrisburg, PA 17101 |
| **TELEPHONE:** | 717-234-6004 |

Page 1 of  1 / KJ

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT**

9- Part 1

# State of Louisiana
# Secretary of State

02/21/2011

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

AIR & LIQUID SYSTEM, INC.
C/O C T CORPORATION SYSTEM
116 PINE STREET, STE. 320
HARRISBURG, PA  17101

Suit No.: 583178
19TH JUDICIAL DISTRICT COURT
EAST BATON ROUGE PARISH

ALTON LEWIS
vs
ATLAS REFINERY, INC., ET AL

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding.  Please call the attorney that filed this document if you have any questions regarding this proceeding.  If you received this document in error, please return it to the above address with a letter of explanation.

Yours very truly,

TOM SCHEDLER
Secretary of State

Served on:  TOM SCHEDLER
Served by:  E CUMMINS

Date: 01/25/2011
Title:  DEPUTY SHERIFF

SCOPE; SEE TRS 833086/JN

No: 835131

JN



# waterskraus

PARTNERS

C. Andrew Waters (CA, DC, NC, TX)

Peter A. Kraus (TX, VA)

Charles S. Siegel (TX)

Troyce G. Wolf (NY, TX)

Michael L. Armitage (CA, LA)

B. Scott Kruka (TX)

Leslie C. MacLean (TX)

Charles E. Valles (TN, TX)

Paul C. Cook (CA)

Gary M. Paul (CA)

Michelle Whitman (TX)

Kyla Gail Cole (TX)

John S. Janofsky (CA, DC)

Michael B. Gurien (CA)

Scott L. Frost (CA, GA, IN, TX)

Greg W. Lisemby (TX)

Loren Jacobson (NY, TX)

ASSOCIATES

Joy Sparling (IL)

Kevin M. Loew (CA)

Julie L. Celum (TX)

Dimitri N. Nichols (CA)

Benno Ashrafi (CA)

Mark Bratt (CA)

Demetrios T. Zacharopoulos (MD)

Susannah B. Chester (TX)

Jillian Rice-Loew (CA)

Cindy Young (CA)

Brent Zadorozny (CA)

Melanie J. Garner (DC, MD, NJ, NY)

Gibbs C. Henderson (TX)

Tae Kim (CA)

Carrie B. Miske (TX)

Laurel Halbany (CA)

Katherine N. Williams (CA, TX)

Mark Linder (CA, TX)

Ari Friedman (CA)

Jason Marks (CA)

Banafsheh Sal.fotahi (CA)

Joanna A. Hojdus (FL, TX)

Jennifer L McIntosh (CA)

Andrew Seitz (CA)

Elizabeth A. Davis (CA)

Peter Klausner (CA)

OF COUNSEL

Kevin E. Oliver (TX)

William Galerston (IL, TX)

Randall L. Iola (IL, OK, TX)

George G. Tankard III (DC, MA, MD, PA, TX)

Jonathan A. George (CA, TX, VA)

Wm. Paul Lawrence II (LA, TX, WA)

David Bricker (CA)

PLEASE RESPOND TO THE DALLAS OFFICE

February 15, 2011

**VIA HAND DELIVERY**

Louisiana Secretary of State
ATTN: TG, Legal Services Section
8585 Archives Avenue
Baton Rouge, Louisiana 70809

> Re:   Case No. C583178; 19th Judicial District Court Parish of East Baton
> Rouge Section "24"
> *Alton Lewis, et al vs. Atlas Refinery, Inc., et al;*

Dear Tammy:

Enclosed you will find a Citation; Motion for Leave to file Plaintiff's Fourth Amended Petition for Damages and Incorporated Memorandum in Support; Plaintiffs' Fourth Supplemental and Amended Petition for Damages; Motion for Leave to file Plaintiff's Third Amended Petition for Damages and Incorporated Memorandum in Support; Plaintiffs' Third Supplemental and Amended Petition for Damages; Plaintiffs' Second Supplemental and Amended Petition for Damages to Original Petition for Damages; Plaintiffs' Ex Parte Motion for Leave to Amend Plaintiff's Original Petition to Add Defendant CSR, Limited; Plaintiffs' First Supplemental and Amended Petition for Damages; and Plaintiff's Original Petition for Damages to be served via personal service on the Louisiana Secretary of State on behalf of the following Defendant through the Louisiana Long Arm Statute:

1. **AIR & LIQUID SYSTEMS CORPORATION, As Successor By Merger To Buffalo Pumps, Inc.**
A Pennsylvania corporation with its principal place of business in the state of New York at PPB: 874 Oliver Street, North Tonawanda, New York, 14120-3298, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3)** through its registered agent for service of process CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101.

This request was served on the Louisiana Secretary of State on January 25, 2011 by the East Baton Rouge Sheriff's office. However, your office forwarded the citation to the wrong company, Air & Liquid Systems, **Inc.**, on January 28, 2011. Please note that Air & Liquid Systems, **Inc.** and Air & Liquid Systems, **Corporation** are not affiliated with one another. The appropriate party is Air & Liquid Systems, Corporation.

WATERS & KRAUS, LLP ATTORNEYS AND COUNSELORS

DALLAS:  3219 McKINNEY AVENUE   DALLAS, TEXAS 75204   TEL 214 357 6244   FAX 214 357 7252

BALTIMORE:  315 NORTH CHARLES STREET   BALTIMORE, MARYLAND 21201   TEL 410 528 1153   FAX 410 528 1006

SAN FRANCISCO:  711 VAN NESS AVENUE   SUITE 220   SAN FRANCISCO, CALIFORNIA 94102   TEL 800 226 9880   FAX 214 777 0470

LOS ANGELES:  222 NORTH SEPULVEDA BOULEVARD   SUITE 1900   EL SEGUNDO, CALIFORNIA 90245   TEL 310 414 8146   FAX 310 414 8156

Please forward the above referenced pleadings to **AIR & LIQUID SYSTEMS CORPORATION, CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101**.

If you have any questions, please do not hesitate to contact me at 214-871-7218 ext 2278 or drodriguez@waterskraus.com.

Sincerely,

Diana Rodriguez
Intake Paralegal

Enclosures

## ORIGINAL AND SUPPLEMENTAL AND AMENDED CITATION
### Long Arm Service

**ALTON LEWIS**
(Plaintiff)

**vs.**

**ATLAS REFINERY, INC., ET AL**
(Defendant)

SERVED ON
**TOM SCHEDLER**

**JAN 25 2011**

SECRETARY OF STATE
COMMERCIAL DIVISION

**NUMBER  C583178 SECTION 24**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

****\*\*Served in Accordance with LSA R.S. 13:3201 et seq. \*\*\*\*\***
TO:   AIR & LIQUID SYSTEMS CORPORATION, AS SUCCESSOR BY MERGER
TO BUFFALO PUMPS, INC. *Thru Secretary of State*

Attached to this citation are certified copies of the Original and Supplemental and Amended Petitions\*.  The petitions tell you what you are being sued for.

You must EITHER do what the petition asks in accordance with LSA R.S. 13:3201 et seq. OR, you must file an answer or other legal pleading in the office of the Clerk of Court at 300 North Boulevard, Baton Rouge, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within Thirty (30) days, a judgment may be entered against you without further notice.

This citation was issued by the Clerk of Court for the East Baton Rouge Parish, on 06-JAN-2011.

*Donnell Bourgoyne, Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

Requesting Attorney: SUSANNAH B CHESTER
\*Also attached are the following documents:
MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED PETITION FOR DAMAGES AND
INCORPORATED MEMORANDUM IN SUPPORT, FOURTH SUPPLEMENTAL AND AMENDED PETITION FOR
DAMAGES, MOTION FOR LEAVE TO FILE PLAINTIFFS' THIRD AMENDED PETITION FOR DAMAGES, THIRD
SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, MOTION FOR LEAVE TO FILE PLAINTIFFS'
SECOND AMENDED PETITION FOR DAMAGES, SECOND SUPPLEMENTAL AND AMENDED PETITION AND
ORIGINAL PETITION FOR DAMAGES

RECEIVED

JAN 2 4 2011

E.B.R. SHERIFF'S OFFICE

ORIGINAL AND SUPPLEMENTAL AND AMENDED CITATION –Long Arm -2337

EBR560388

19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24 **POSTED**         DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                        DEPUTY CLERK

### MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT

**NOW INTO COURT,** through undersigned counsel, come Plaintiffs who respectfully

move this Honorable Court for leave to file the attached Fourth Amended Petition for Damages,

which adds Air & Liquid Systems Corporation, as Successor by Merger to Buffalo Pumps, Inc.

(hereinafter, ("Buffalo Pumps"); and Warren Pumps LLC (hereinafter, "Warren") as defendants

to the above-referenced matter.  Recent depositions given by the co-workers of Alton Lewis

("Lewis") confirmed that Lewis worked on and around asbestos-laden pumps while onboard the

USS Henderson, and the ship's records reveal that some of those pumps were made by Buffalo

Pumps and Warren.  Accordingly, Plaintiffs seek to add those parties to the lawsuit.

**WHEREFORE,** Plaintiffs respectfully request that the Court grant them leave to amend

their petition and file their Fourth Amended Petition for Damages, attached hereto as Exhibit

"A."

Respectfully submitted,

**WATERS & KRAUS, LLP**

**SUSANNAH B. CHESTER**
**TX Bar No. 24056878**
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

**PLAINTIFF'S MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT – Page 1**

**WADDELL LAW FIRM**
**CAMERON R. WADDELL**
Louisiana Bar No. 24245
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: 225-636-5639
Facsimile: 225-636-5209

**COUNSEL FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

    I do hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via e-mail on this the ___30___ day of November, 2010.

**SUSANNAH B. CHESTER**

PLAINTIFF'S MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT – Page 2

Case 3:11-cv-00199-BAJ -SCR   Document 1-10   03/28/11   Page 7 of 26

## O R D E R

Let the above and foregoing FOURTH SUPPLEMENTAL AND AMENDED

PETITION FOR DAMAGES be filed as prayed for.

IT IS SO ORDERED.

BATON ROUGE, LOUISIANA, this _17_ day of December, 2010.

_____
JUDGE – 19TH JUDICIAL DISTRICT COURT
AD Hoc

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

FILED

DEC 01 2010

DEPUTY CLERK OF COURT

**ALTON LEWIS**

**VERSUS**

**ATLAS REFINERY, INC., ET AL**

FILED: _____

_____
**DEPUTY CLERK**

### FOURTH SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Petitioners, who file this their Fourth Supplemental and Amended Petition for Damages, solely in the following particulars:

1. For the purpose of adding the following Defendants:

    a) **Air & Liquid Systems Corporation**, as Successor by Merger to Buffalo Pumps, Inc. (hereinafter, ("Buffalo Pumps"); and

    b) **Warren Pumps LLC** (hereinafter, "Warren").

2. As to Buffalo Pumps and Warren, Plaintiffs assert causes of action in strict liability for the manufacture and sale of unreasonably dangerous asbestos-containing product(s), which were used onboard the USS Henderson, which Alton Lewis served on from approximately 1956 to 1958.

3. As to Buffalo Pumps and Warren, Plaintiffs assert causes of action in negligence and failure to warn for the sale and supply of asbestos and asbestos-containing products to the USS Henderson, thereby substantially contributing to Alton Lewis's asbestos exposure and resultant development of malignant mesothelioma.

4. Buffalo Pumps and Warren were manufacturers, sellers, users, distributors and/or suppliers of asbestos products and were engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products, or

PLAINTIFF'S
EXHIBIT
A

representing themselves as manufacturers of asbestos products, or were professional vendors of asbestos or asbestos-containing products, which were expected to and did reach Alton Lewis's work sites and to which he was exposed.

5.      The products manufactured, sold, distributed, supplied and/or used by the Defendants Buffalo Pumps and Warren were defective, unreasonably dangerous, and unreasonably dangerous per se to Alton Lewis, an intended and foreseeable user of these products.  These defects include, without limitation, the following:

    a.      manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

    b.      manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to Alton Lewis;

    c.      lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

    d.      lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

    e.      failure of defendant to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

    f.      failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

    g.      failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

    h.      failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

    i.      defects in the composition and construction of these products;

    j.      failure to recall these products manufactured, sold, distributed and/or supplied;

    k.      failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

    l.      overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants; and

 m. are liable to Petitioner in negligence, strict liability and/or strict products liability for its things that have caused harm to Petitioner.

6. The defective conditions of Defendants' products and fault, as noted above, were a proximate cause of Alton Lewis's death and Plaintiffs' injuries complained of herein.

7. Plaintiffs further allege that the foregoing Defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiffs' injuries.

8. Plaintiffs reiterate all other matters contained in the Original Petition for Damages and any supplements and amendments, including the prayer of the Original Petition, as though set forth at length herein.

**WHEREFORE**, Petitioners pray that the original Petition for Damages be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment against Defendants as originally prayed for herein.

Respectfully submitted,

**WADDELL LAW FIRM, LLC**

SUSANNAH B. CHESTER
TX Bar No. 24056878
*Admitted Pro Hac Vice*
**WATERS & KRAUS, LLP**
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone:  (225) 636-5639
Facsimile:  (225) 636-5209

Counsel for Plaintiffs

## EXHIBIT "D"

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS'
ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND
AMENDED ORIGINAL PETITION FOR DAMAGES, SECOND
SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES
and THIRD SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR
DAMAGES:**

1. **AIR & LIQUID SYSTEMS CORPORATION, As Successor By Merger To
   Buffalo Pumps, Inc**
   A Pennsylvania corporation with its principal place of business in the state of
   New York, and may be served **through the Louisiana Long Arm Statute
   pursuant Article 1261(3)** through its registered agent for service of process CT
   Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101.
   This defendant is being sued as an Equipment Defendant.

2. **WARREN PUMPS LLC**
   A Delaware corporation with its principal place of business in the state of
   Massachusetts, and may be served **through the Louisiana Long Arm Statute
   pursuant Article 1261(3) to wit: 82 Bridges Avenue, Warren, Massachusetts
   01083.** This defendant is being sued as an Equipment Defendant.

**SERVICE OF THE FOLLOWING DEFENDANTS WILL BE EFFECTED VIA LA
CCP ART. 1313:**

**ANCO INSULATION, INC.**
through its attorney of record,
Jamie Baglio / Margaret M. Joffe / A. Wendall Stout, III
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130

**ATLAS REFINERY, INC.**
through its attorney of record,
Allison N Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS
CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC.,
f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred
Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office,
Marvin McCarty, deceased)
through its attorney of record,
Samuel M. Rosamond, III / Adam D. deMahy

Crawford Lewis, PLLC
400 Poydras Street, Suite 2100
New Orleans, LA 70130

**CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE
CO.)
through its attorney of record,
W. Charles McVea / Matthew S. Lott
Dogan & Wilkinson, PLLC
734 Delmas Avenue
P.O. Box 1618
Pascagoula, MS 39568-1618

**CSR, LIMITED**
through its attorney of record,
Frank Accardo, Esq.,
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, LLC
3200 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3200

**EAGLE, INC.** f/k/a Eagle Asbestos & Packing Co., Inc.
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**, as insurer of The
J. Graves Insulation Company, Inc.
through its attorney of record,
Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170

**FOSTER WHEELER ENERGY CORPORATION**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**FOSTER WHEELER LLC**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**GENERAL ELECTRIC COMPANY**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA 70631

**GEORGIA-PACIFIC LLC** (sued individually and as successor-in-interest to Bestwall Gypsum Company)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**HAMM ENTERPRISES, INC.** (f/k/a Berg Mechanical, Inc.)
through its attorney of record,
Layne A. Clark, Jr.
Wiener, Weiss & Madison
333 Texas Street, Suite 2350
P.O. Box 21990
Shreveport, LA 71120-1990

**IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DeLaval Steam Turbine Company)
through its attorney of record,
Tara L. Mason / Joseph M. Messina
Lobman, Carnahan, Batt, Angelle & Nader
The Texaco Center
400 Poydras Street, Suite 2300
New Orleans, LA 70130

**INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-interest to Champion Paper Corporation)
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**THE J. GRAVES INSULATION COMPANY** (f/k/a Graves-Aber Insulation Company, Inc.)
through its attorney of record,
Lawrence Pugh, III / H. Philip Radecker, Jr.
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, L.L.C.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163-1132

**KAISER GYPSUM COMPANY, INC.**
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**LIBBY, INC.**
through its attorney of record,
M. James Dempsey
Cosmich, Simmons & Brown
120 N. Congress Street
Plaza Building, Suite 400
Jackson, MS 39201

**THE MCCARTY CORP. f/k/a MCCARTY-BRANTON, INC.**
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**PENZOIL-QUAKER STATE COMPANY** (as successor by merger to Pennzoil
Products Company, succesor to Atlas Refinery, Inc.)
through its attorneys of record,
W. James Hill, III
The Smitherman Law Firm, L.C.
8570 Business Park Drive, Suite 100
Shreveport, LA 71105
and
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 18th Floor
P.O. Box 3513
Baton Rouge, LA 70821

**UNION CARBIDE CORPORATION**
through its attorney of record,
Deborah D. Kuchler / Michael H. Abraham
Kuchler, Polk, Schell, Weiner, & Richeson
1615 Poydras Street, Suite 1300
New Orleans, LA 70112

**UNITED STATES FIDELITY AND GUARANTY**, as insurer of The J. Graves
Insulation, Inc.
through its attorney of record,
Elia Diaz-Yaeger / Katherine Osborne
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

**WEYERHAUSER COMPANY** (sued individually and as successor-in-interest to
WILLAMETTE INDUSTRIES, INC.)
through its attorney of record,
Lydia M. Rhodes
610 Marshall Street, Suite 314
Shreveport, LA 71101

**ZURICH AMERICAN INSURANCE COMPANY** a/k/a and/or f/k/a ZURICH
INSURANCE COMPANY, as insurer of The J. Graves Insulation Company, Inc.
through its attorney of record,
Glen E. Mercer
Salley, Hite & Mercer, LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130

.19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                      SECTION 24                      DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____                  _____
                                                              **DEPUTY CLERK**

<u>**ORDER**</u>

Considering the foregoing Motion for Leave to File Plaintiffs' Fourth Amended Petition

for Damages;

**IT IS ORDERED, ADJUDGED AND DECREED** that the attached Fourth Amended

Petition for Damages be and is hereby deemed filed in the above-numbered and captioned

matter.

**SO ORDERED** this the _____ day of _____, 2010.

_____
                          **JUDGE**

**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE PLAINTIFFS' FOURTH AMENDED
PETITION FOR DAMAGES AND INCORPORATED MEMORANDUM IN SUPPORT – Solo Page**

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH**

**OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

NO. 583178                 SECTION 24                 DIVISION 24

ALTON LEWIS          **POSTED**

VERSUS                   NOV 04 2010

ATLAS REFINERY, INC., ET AL.

FILED: _____          _____

                                        **DEPUTY CLERK**

**MOTION FOR LEAVE TO FILE PLAINTIFFS'**
**THIRD AMENDED PETITION FOR DAMAGES AND INCORPORATED**
**MEMORANDUM IN SUPPORT**

    **NOW INTO COURT**, through undersigned counsel, come Plaintiffs who respectfully move this Honorable Court for leave to file the attached Third Amended Petition for Damages, which amends paragraph 5 of Petitioner's Original Petition for Damages and withdraws paragraphs 29, 46 and 50 of same, in the above-referenced matter. The trial in this matter is currently set for March 22, 2011, almost five months from the current date. As such, this filing will not unfairly prejudice Defendants; nor will this filing cause a delay in the proceedings.

    **WHEREFORE**, Plaintiffs respectfully request that the Court grant them leave to amend their petition and file their Third Amended Petition for Damages, attached hereto as Exhibit "A."

Respectfully submitted,

**WATERS & KRAUS, LLP**

**SUSANNAH B. CHESTER**
**TX Bar No. 24056878**
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

**WADDELL LAW FIRM**
**CAMERON R. WADDELL**
Louisiana Bar No. 24245
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: 225-636-5639
Facsimile: 225-636-5209

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

**COUNSEL FOR PLAINTIFFS**



REC'D C.P.

NOV 4  2010

REC'D C.P.

NOV 15 2010



EBR340574

## CERTIFICATE OF SERVICE

.I do hereby certify that a true and correct copy of the foregoing document has been

served on all counsel of record via facsimile on this the _1_ day of November, 2010.

SUSANNAH B. CHESTER



### 19TH JUDICIAL DISTRICT COURT FOR THE PARISH

### OF EAST BATON ROUGE

### STATE OF LOUISIANA

NO. 583178               SECTION 24               DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

POSTED
NOV 04 2010

FILED: _____        _____

### THIRD AMENDED PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who file this their Third Amended Petition for Damages, such that the Petition for Damages shall read in its entirety as follows:

 1. Plaintiffs, Christopher Dean Lewis and Marcus Wayne Lewis, amend paragraph 5 of the Original Petition for Damages, which was filed on October 5, 2009, to read as follows:

Alton Lewis was exposed to asbestos or asbestos-containing products from his employment as a machinist mate, plumber and security guard at multiple locations, including but not limited to, the following: Atlas Refinery (in/around Shreveport, Louisiana); International Paper Company (Springhill, Louisiana); Libby, Inc. (in/around Shreveport, Louisiana); Willamette Paper Mill; the USS Henderson; and commercial sites in and around Shreveport, Louisiana. The conduct of each Defendant was a substantial contributing factor in causing Alton Lewis's injuries; such that all Defendants are liable jointly, severally, and in solido for all of the damages complained of herein.

 2. Additionally, Plaintiffs hereby withdraw paragraphs 29, 46 and 50 of the Original Petition for Damages.

 3. Plaintiffs reiterate all other matters contained in the Original Petition for Damages and any supplements and amendments as though set forth at length herein.

**WHEREFORE**, Plaintiffs pray that their original Petition for Damages be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment herein in their favor, and against Defendants as originally prayed for herein.





EBR340573

Respectfully submitted,

**WATERS & KRAUS, LLP**

_____

**SUSANNAH B. CHESTER**
**TX Bar No. 24056878**
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

**WADDELL LAW FIRM**
**CAMERON R. WADDELL**
Louisiana Bar No. 24245
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: 225-636-5639
Facsimile: 225-636-5209

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    I do hereby certify that a true and correct copy of the foregoing document has been

served on all counsel of record via facsimile on this the __ day of November, 2010.

_____

**SUSANNAH B. CHESTER**

## EXHIBIT "B"

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS' ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES, SECOND SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES AND THIRD AMENDED PETITION FOR DAMAGES:**

1. **NUTMEG INSURANCE COMPANY**, as insurer of The J. Graves Insulation Company, Inc.
   May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street Baton Rouge, LA 70802-6129. Nutmeg Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

2. **FIRST STATE INSURANCE COMPANY** (as insurer of The J. Insulation Company, Inc.).
   May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street Baton Rouge, LA 70802-6129. First State Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

**SERVICE OF THE FOLLOWING DEFENDANTS WILL BE EFFECTED VIA LA CCP ART. 1313:**

**ANCO INSULATION, INC.**
through its attorney of record,
Jamie Baglio / Margaret M. Joffe / A. Wendall Stout, III
Deutsch, Kerrigan & Stiles
755·Magazine Street
New Orleans, LA 70130

**ATLAS REFINERY, INC.**
through its attorney of record,
Allison N Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office, Marvin McCarty, deceased)
through its attorney of record,
Samuel M. Rosamond, III / Adam D. deMahy
Crawford Lewis, PLLC
400 Poydras Street, Suite 2100
New Orleans, LA 70130

CRANE CO. (sued individually and as successor-in-interest to CHAPMAN VALVE CO.)
through its attorney of record,
W. Charles McVea
Dogan & Wilkinson, PLLC
734 Delmas Avenue
P.O. Box 1618
Pascagoula, MS 39568-1618

CSR, LIMITED
through its attorney of record,
Frank Accardo, Esq.,
Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP
3200 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3200

and

Michael Futterman, Esq.,
Futterman & Dupree, LLP
160 Sansome Street, 17th Floor
San Francisco, CA 94104

EAGLE, INC. f/k/a Eagle Asbestos & Packing Co., Inc.
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, as insurer of The J.
Graves Insulation Company, Inc.
through its attorney of record,
Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170

FOSTER WHEELER ENERGY CORPORATION
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

FOSTER WHEELER LLC
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

GARLOCK SEALING TECHNOLOGIES, LLC (sued individually and as successor-in-
interest to Garlock, Inc.)
through its attorney of record,
Kay B. Baxter / Christopher O. Massenburg / Glenn L.M. Swetman /
Brandie M. Thibodeaux
Swetman Baxter Massenburg, LLC
650 Poydras, Suite 2400
New Orleans, LA 70130

**GARLOCK INC.**
through its attorney of record,
Kay B. Baxter / Christopher O. Massenburg / Glenn L.M. Swetman /
Brandie M. Thibodeaux
Swetman Baxter Massenburg, LLC
650 Poydras, Suite 2400
New Orleans, LA 70130

**GENERAL ELECTRIC COMPANY**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**GEORGIA-PACIFIC LLC** (sued individually and as successor-in-interest to Bestwall
Gypsum Company)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**HAMM ENTERPRISES, INC.** (f/k/a Berg Mechanical, Inc.)
through its attorney of record,
Layne A. Clark, Jr.
Wiener, Weiss & Madison
333 Texas Street, Suite 2350
Shreveport, LA 71101

**IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DeLaval Steam
Turbine Company)
through its attorney of record,
Tara L. Mason / Joseph M. Messina
Lobman, Carnahan, Batt, Angelle & Nader
The Texaco Center
400 Poydras Street, Suite 2300
New Orleans, LA 70130

**INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-interest to
Champion Paper Corporation)
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**THE J. GRAVES INSULATION COMPANY** (f/k/a Graves-Aber Insulation Company, Inc.)
through its attorney of record,
Lawrence Pugh, III / H. Philip Radecker, Jr.
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, L.L.C.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163

**KAISER GYPSUM COMPANY, INC.**
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**LIBBY, INC.**
through its attorney of record,
M. James Dempsey
Cosmich, Simmons & Brown
34 Milbranch Road, Suite 70
Hattiesburg, MS 39402

**THE MCCARTY CORP. f/k/a MCCARTY-BRANTON, INC.**
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**PENZOIL-QUAKER STATE COMPANY** (as successor by merger to Pennzoil Products
Company, succesor to Atlas Refinery, Inc.)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**SCOTTSDALE INSURANCE COMPANY** (as insurer of The J. Graves Insulation Company,
Inc.)
through its attorney of record,
Matthew J. Ungarino
Ungarino & Eckert, L.L.C.
3850 North Causeway Boulevard, Suite 1280
Metairie, LA 70002

**UNION CARBIDE CORPORATION**
through its attorney of record,
Michael H. Abraham
Kuchler, Polk, Schell, Weiner, & Richeson
1615 Poydras Street, Suite 1300
New Orleans, LA 70112

**UNITED STATES FIDELITY AND GUARANTY**, as insurer of The J. Graves Insulation, Inc.
through its attorney of record,
Elia Diaz-Yaeger / Katherine Osborne
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

**WEYERHAUSER COMPANY** (sued individually and as successor-in-interest to
WILLAMETTE INDUSTRIES, INC.)
through its attorney of record,
Lydia M. Rhodes
610 Marshall Street, Suite 314
Shreveport, LA 71101

**ZURICH AMERICAN INSURANCE COMPANY** a/k/a and/or f/k/a ZURICH INSURANCE
COMPANY, as insurer of The J. Graves Insulation Company, Inc.
through its attorney of record,
Glen E. Mercer
Salley, Hite & Mercer, LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130

19TH JUDICIAL DISTRICT COURT FOR THE PARISH

OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24                    DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____        _____
                                    DEPUTY CLERK

### ORDER

Considering the foregoing Motion for Leave to File Plaintiffs' Third Amended Petition

for Damages;

**IT IS ORDERED, ADJUDGED AND DECREED** that the attached Third Amended

Petition for Damages be and is hereby deemed filed in the above-numbered and captioned

matter.

SO ORDERED this the 9 day of November, 2010.

_____
JUDGE  ADHOC

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

East Baton Rouge Clerk of Court

**waterskraus**   ● PLEASE RESPOND TO THE TEXAS OFFICE   ●   Page 8 of 9

PARTNERS

C. Andrew Waters (CA, DK, SC, TX)
Peter A. Kraus (TX, TX)
Charles S. Siegel (TX)
Tryce G. Wolf (TX)
Michael L. Armitage (CA, LA)
B. Scott Moke (TX)
Leslie C. MacLean (TX)
Charles E. Valles (TX)
Paul C. Cook (CA)
Gary M. Paul (CA)
Michele Whitman (TX)
Kyla Gail Cole (TX)
John S. Janofsky (CA, DC)
Michael B. Gurien (CA)
Scott L. Frost (CA, LA, NY, OR)
Greg M. Ulsenby (TX)

ASSOCIATES

Loren Jacobson
Joy Spalding (LA)
Kevin M. Loew (TX)
Julie L. Celum (TX)
Dimitri N. Nichols (CA)
Benno Ashrafi (CA)
Mark Bratt (TX)
Demetrios T. Zacharopoulos (MD)
Jacqueline G. Badders (MD)
Susannah B. Chester (TX)
Jillian Rice Loew (DC)
Cindy Young (CA)
Brent Zadorozny (CA)
Melanie J. Garner (DC, MD, PA, TX)
Gibbe C. Henderson (TX)
Mark Linder (CA, TX)
Tae Kim (CA)
Carrie B. Waters (TX)
Laurel Halbany (CA)
Joanna A. Hejllca (TX, TX)
Ari Friedman (CA)
Katherine H. Williams (CA, TX)
Jason Marks (CA)
Benafsheh Salehzehi (MD)
Jennifer L McIntosh (MD)

OF COUNSEL

Kevin E. Oliver (TX)
William Gelerstein (CA, TX)
Randall L. Iola (CA, DK, TX)
George O. Tankard III (DC, MD, MD, PA, TX)
Ingrid Evans (CA, DK, TX)
Jonathan A. George (CA, TX, TX)
Wm. Paul Lawrence II (LA, TX, WV)
David Bricker (CA)

November 1, 2010

Doug Welborn – Clerk of Court       *Via Federal Express #796400784384*
Suit Accounting Department
Governmental Building
222 St. Louis Street, Room 152
Baton Rouge, LA 70802

Re:   Alton Lewis vs. Atlas Refinery, Inc., et al; Cause No. 583178; 19th
      Judicial District Court for the Parish of East Baton Rouge; State of
      Louisiana
      **Client Matter #09-0443**

Dear Mr. Welborn:

Enclosed please find the original and copy of *Plaintiff's Motion for Leave to
File Plaintiffs' Third Amended Petition to Damages* and Order for same in
regard to the above-referenced matter.  I respectfully request that the original
be filed with the Court and the enclosed page be file-marked and returned to
me in the envelope provided for your convenience.  Also, enclosed you will
find a check in the amount of $37 to cover the filing fees.  Should additional
fees be required, please notify Plaintiffs' counsel at the number listed below.

Thank you for your assistance in this matter.  Should you have any questions
or need additional information, please do not hesitate to contact me.

Sincerely,

*Cindy Lopez*
Cindy Lopez

/cl
Enclosures.

cc:      All Counsel of Record – Via E-mail

REC'D C.P.
NOV 4  2010

REC'D C.P.
NOV 1 5 2010

WATERS & KRAUS, LLP ATTORNEYS AND COUNSELORS

DALLAS: 3219 McKINNEY AVENUE   DALLAS, TEXAS 75204   TEL 214 357 6244   FAX 214 357 7252
BALTIMORE: 315 NORTH CHARLES STREET   BALTIMORE, MARYLAND 21201   TEL 410 528 1153   FAX 410 528 1006
SAN FRANCISCO: 711 VAN NESS AVENUE   SUITE 220   SAN FRANCISCO, CALIFORNIA 94102   TEL 800 226 9880   FAX 214 777 0470
LOS ANGELES: 222 NORTH SEPULVEDA BOULEVARD   SUITE 1900   EL SEGUNDO, CALIFORNIA 90245   TEL 310 414 8146   FAX 310 414 8156

COST OK $ _____

JUN 07 2010

**19ᵀᴴ JUDICIAL DISTRICT COURT FOR THE PARISH**
**OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

NO. 583178                    **SECTION 24**                    **DIVISION 24**

**ALTON LEWIS**

**VERSUS**

**ATLAS REFINERY, INC., ET AL**     POSTED   JUN 07 2010

FILED: _____                    _____
                                            **DEPUTY CLERK**

### SECOND SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Petitioner, who files this his Second Supplemental and Amended Petition for Damages, such that Petitioners's Petition for Damages shall read in its entirety as follows:

1.    Alton Lewis' death on November 18, 2009 was due to or a consequence of his exposure to dust and fibers from asbestos and/or asbestos-containing materials, as a direct and proximate result of his exposure to asbestos products that were unreasonably dangerous per se, defective in composition or construction, defective in design, lacking suitable warnings or instructions concerning the hazards presented, as a result of negligent, willful, and/or reckless misconduct, and as a result of intentional misconduct of certain of the Defendants as previously alleged with more specificity in the Original Petition. As a direct and proximate result of the delictual conduct of the Defendants, the Petitioners Christopher Dean Lewis and Marcus Wayne Lewis have lost the love, affection, society, support, services and future earnings of the decedent and all other damages due and, pursuant to Louisiana Civil Code Article 2315.2, assert this wrongful death action against the Defendants. Copies of Petitioners' birth certificates are attached hereto as Exhibit A.

2.    Petitioner, Christopher Dean Lewis, is the statutory survivor of the referenced decedent, and hereby substitutes himself in the decedent's stead and asserts this survival action pursuant to Louisiana Civil Code Article 2315.1. A copy of Decedent

**REC'D C.P.**                                **REC'D C.P.**

EXHIBIT                                        JUN 1 0 2010
9 Part 2

Alton Lewis' Last Will and Testament is attached hereto as Exhibit B.

3.      Petitioner, Marcus Wayne Lewis, is the statutory survivor of the referenced decedent, and hereby substitutes himself in the decedent's stead and asserts this survival action pursuant to Louisiana Civil Code Article 2315.1. A copy of Decedent Alton Lewis' Last Will and Testament is attached hereto as Exhibit B. Additionally, a copy of the Letters naming Marcus Wayne Lewis as independent administrator of Decedent Alton Lewis' estate are attached hereto as Exhibit C.

4.      The Petitioners reiterate all other matters contained in the Original Petition for Damages and any supplements including the prayer of his Original Petition as though set forth at length herein.

WHEREFORE, Petitioners pray that their original Petition for Damages be supplemented and amended in the above particulars and that, after due proceedings had, there be judgment herein in their favor, and against defendants as originally prayed for herein.

Respectfully submitted,

WATERS & KRAUS, LLP

SUSANNAH B. CHESTER
TX Bar No. 24056878
*Admitted Pro Hac Vice*
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252

and

WADDELL LAW FIRM, LLC

Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: (225) 636-5639
Facsimile: (225) 636-5209

Counsel for Plaintiffs

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

## O R D E R

Let the above and foregoing SECOND SUPPLEMENTAL AND AMENDED

PETITION FOR DAMAGES be filed as prayed for.

IT IS SO ORDERED.

BATON ROUGE, LOUISIANA, this 9 day of June, 2010.

_____
JUDGE – 19ᵀᴴ JUDICIAL DISTRICT COURT   AD hoc

066870

19TH JUDICIAL
EAST BATON ROUGE PARISH
FILED

2010 JUN -7 PM 4:55

DEPUTY CLERK & RECORDER

DOUG WELBORN
CLERK OF COURT E.B.R PARISH

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

# LETTERS

th

SUCCESSION

OF

ALTON LEROY LEWIS

NO. 537110-B
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

WHEREAS MARCUS WAYNE LEWIS

has been appointed INDEPENDENT ADMINISTRATOR OF THE SUCCESSION OF
ALTON LEROY LEWIS

and taken the oath as prescribed by law WITHOUT bond.

NOW, THEREFORE HE                            IS hereby authorized and
fully empowered to discharge and perform all and singular the duties
appertaining to said appointment according to law, including, but not
limited to, all the rights, powers, authorities, privileges and duties
of a succession representative as are otherwise provided by law, but
without the necessity of publication of notice, delay for objection,
application to or any action in or by the Court.

IN TESTIMONY WHEREOF, I have hereunto signed my name and affixed my
seal of office on this date January 07, 2010.

GARY LOFTIN, CLERK OF COURT

By: _____
                Deputy Clerk

ATTEST
A TRUE COPY

CADDO PARISH DEPUTY CI

$ _____

EXHIBIT
C



## EXHIBIT "D"

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS'
ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND
AMENDED ORIGINAL PETITION FOR DAMAGES and SECOND
SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES:**

1.   **NUTMEG INSURANCE COMPANY,** as insurer of The J. Graves Insulation
Company, Inc.
May be served through its registered agent for service of process, Corporation
Service Company, 320 Somerulos Street Baton Rouge, LA 70802-6129.   Nutmeg
Insurance Company issued policies of comprehensive general liability insurance
to The J. Graves Insulation Company, Inc., that provided coverage for the causes
of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.   As
such, The Fidelity and Casualty Company of New York is liable for the damages
alleged herein against The J. Graves Insulation Company, Inc., individually,
jointly and *in solido.*

2.   **FIRST STATE INSURANCE COMPANY** (as insurer of The J. Insulation
Company, Inc.).
May be served through its registered agent for service of process, Corporation
Service Company, 320 Somerulos Street Baton Rouge, LA 70802-6129.   First State
Insurance Company issued policies of comprehensive general liability insurance
to The J. Graves Insulation Company, Inc., that provided coverage for the causes
of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.   As
such, The Fidelity and Casualty Company of New York is liable for the damages
alleged herein against The J. Graves Insulation Company, Inc., individually,
jointly and *in solido.*

**SERVICE OF THE FOLLOWING DEFENDANTS WILL BE EFFECTED VIA LA
CCP ART. 1313:**

**ANCO INSULATION, INC.**
through its attorney of record,
Jamie Baglio / Margaret M. Joffe / A. Wendall Stout, III
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130

**ATLAS REFINERY, INC.**
through its attorney of record,
Allison N Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS
CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC.,
f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred
Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office,

Marvin McCarty, deceased)
through its attorney of record,
Samuel M. Rosamond, III / Adam D. deMahy
Crawford Lewis, PLLC
400 Poydras Street, Suite 2100
New Orleans, LA 70130

**CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE
CO.)
through its attorney of record,
W. Charles McVea
Dogan & Wilkinson, PLLC
734 Delmas Avenue
P.O. Box 1618
Pascagoula, MS 39568-1618

**CSR, LIMITED**
through its attorney of record,
Frank Accardo, Esq.,
Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP
3200 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3200
and
Michael Futterman, Esq.,
Futterman & Dupree, LLP
160 Sansome Street, 17th Floor
San Francisco, CA 94104

**EAGLE, INC.** f/k/a Eagle Asbestos & Packing Co., Inc.
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**, as insurer of The
J. Graves Insulation Company, Inc.
through its attorney of record,
Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170

**FOSTER WHEELER ENERGY CORPORATION**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**FOSTER WHEELER LLC**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**GARLOCK SEALING TECHNOLOGIES, LLC** (sued individually and as
successor-in-interest to Garlock, Inc.)
through its attorney of record,
Kay B. Baxter / Christopher O. Massenburg / Glenn L.M. Swetman /
Brandie M. Thibodeaux
Swetman Baxter Massenburg, LLC
650 Poydras, Suite 2400
New Orleans, LA 70130

**GARLOCK INC.**
through its attorney of record,
Kay B. Baxter / Christopher O. Massenburg / Glenn L.M. Swetman /
Brandie M. Thibodeaux
Swetman Baxter Massenburg, LLC
650 Poydras, Suite 2400
New Orleans, LA 70130

**GENERAL ELECTRIC COMPANY**
through its attorney of record,
Angela M. Bowlin / John J. Hainkel, III / Peter R. Tafaro
Frilot L.L.C
1100 Poydras Street, Suite 3600
New Orleans, LA 70631

**GEORGIA-PACIFIC LLC** (sued individually and as successor-in-interest to Bestwall
Gypsum Company)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**HAMM ENTERPRISES, INC.** (f/k/a Berg Mechanical, Inc.)
through its attorney of record,
Layne A. Clark, Jr.
Wiener, Weiss & Madison
333 Texas Street, Suite 2350
Shreveport, LA 71101

**IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DeLaval
Steam Turbine Company)
through its attorney of record,
Tara L. Mason / Joseph M. Messina
Lobman, Carnahan, Batt, Angelle & Nader
The Texaco Center
400 Poydras Street, Suite 2300
New Orleans, LA 70130

**INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-
interest to Champion Paper Corporation)
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**THE J. GRAVES INSULATION COMPANY** (f/k/a Graves-Aber Insulation
Company, Inc.)
through its attorney of record,
Lawrence Pugh, III / H. Philip Radecker, Jr.
Pugh, Accardo, Haas, Radecker, Carrey, Loeb & Hymel, L.L.C.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163

**KAISER GYPSUM COMPANY, INC.**
through its attorney of record,
Dean Church / Ann S. Russell
Forman Perry Watkins Krutz & Tardy LLP
1515 Poydras Street, Suite 1300
New Orleans, LA 70112

**LIBBY, INC.**
through its attorney of record,
M. James Dempsey
Cosmich, Simmons & Brown
34 Milbranch Road, Suite 70
Hattiesburg, MS 39402

**THE MCCARTY CORP. f/k/a MCCARTY-BRANTON, INC.**
through its attorney of record,
Susan B. Kohn
Simon, Peragine, Smith, Redfearn, LLP
1100 Poydras Street
30th Floor, Energy Center
New Orleans, LA 70163-3000

**PENZOIL-QUAKER STATE COMPANY** (as successor by merger to Pennzoil
Products Company, succesor to Atlas Refinery, Inc.)
through its attorney of record,
Allison N. Benoit / Gary A. Bezet / Robert E. Dille
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
Twenty-Second Floor, One American Place
Baton Rouge, LA 70825

**SCOTTSDALE INSURANCE COMPANY** (as insurer of The J. Graves Insulation
Company, Inc.)
through its attorney of record,
Matthew J. Ungarino
Ungarino & Eckert, L.L.C.
3850 North Causeway Boulevard, Suite 1280
Metairie, LA 70002

**UNION CARBIDE CORPORATION**
through its attorney of record,
Michael H. Abraham
Kuchler, Polk, Schell, Weiner, & Richeson
1615 Poydras Street, Suite 1300
New Orleans, LA 70112

**UNITED STATES FIDELITY AND GUARANTY,** as insurer of The J. Graves
Insulation, Inc.
through its attorney of record,
Elia Diaz-Yaeger / Katherine Osborne

Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

**WEYERHAUSER COMPANY** (sued individually and as successor-in-interest to
WILLAMETTE INDUSTRIES, INC.)
through its attorney of record,
Lydia M. Rhodes
610 Marshall Street, Suite 314
Shreveport, LA 71101

**ZURICH AMERICAN INSURANCE COMPANY** a/k/a and/or f/k/a ZURICH
INSURANCE COMPANY, as insurer of The J. Graves Insulation Company, Inc.
through its attorney of record,
Glen E. Mercer
Salley, Hite & Mercer, LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130

STATE OF LOUISIANA
# CERTIFICATE OF LIVE BIRTH

Birth No. **117**

**IMPORTANT:**
Use Ink or Typewriter
Section Mandatory By Law.

| | | | |
|---|---|---|---|
| **CHILD** (Do not abbreviate or print names, do not use numerals for date of birth.) | 1A. CHILD'S LAST NAME LEWIS | 1B. FIRST NAME CHRISTOPHER | 1C. SECOND NAME DEAN | 2A. DATE OF BIRTH MONTH DAY YEAR December 11, 196 |

3. SEX—GIRL OR BOY? Boy   4. THIS BIRTH Single ☒  Twin ☐  Triplet ☐   5. IF TWIN OR TRIPLET, WAS CHILD BORN 1st ☐  2d ☐  3d ☐   2B. HOUR OF BIRTH 12:45 p.m.

**PLACE OF BIRTH**
6A. PLACE OF BIRTH (CITY, TOWN, OR LOCATION) Shreveport   6B. PARISH OF BIRTH Caddo
6C. NAME OF HOSPITAL OR INSTITUTION—(IF NOT IN HOSPITAL OR INSTITUTION GIVE STREET ADDRESS OR LOCATION)
6D. IS PLACE OF BIRTH INSIDE CITY LIMITS? Yes ☐  No ☐

**USUAL RESIDENCE OF MOTHER**
7A. USUAL RESIDENCE OF MOTHER (CITY, TOWN OR LOCATION) Shreveport   7B. PARISH Caddo   7C. STATE Louisiana
7D. STREET ADDRESS—(IF RURAL INDICATE LOCATION) 10136 Lariat Lane   7E. IS RESIDENCE INSIDE CITY LIMITS? Yes ☐  No ☒

**FATHER OF CHILD**
8A. FULL NAME OF FATHER Alton Leroy Lewis   8B. STATE AND CITY OF BIRTH (IF NOT IN U.S.A., NAME COUNTRY) Shelby County, Texas   8C. AGE (AT TIME OF THIS BIRTH) 31   8D. COLOR OR RACE OF FATHER White
9A. FULL MAIDEN NAME OF MOTHER Caroline Lea Callens   9B. STATE AND CITY OF BIRTH (IF NOT IN U.S.A., NAME COUNTRY) Orange, Texas   9C. AGE (AT TIME OF THIS BIRTH) 26   9D. COLOR OR RACE OF MOTHER White

**INFORMANT CERTIFICATION**
10. SIGNATURE OF PARENT OR OTHER INFORMANT ▶ *Alton Leroy Lewis*   Parent ☐  Other ☐   11. DATE OF SIGNATURE october 13, 1970
INFORMANT'S MAILING ADDRESS 10136 Lariat Lane; Shreveport, Louisiana

**ATTENDANT CERTIFICATION**
12. I certify that I attended this birth and that the child was born alive on the date stated above.   13. SIGNATURE OF ATTENDANT   M.D. ☐  Midwife ☐  Other ☐   14. DATE OF SIGNATURE

**REGISTRAR'S CERTIFICATION**
15. DATE ACCEPTED BY LOCAL REGISTRAR Oct. 26, 1970   16. SIGNATURE OF LOCAL REGISTRAR ▶ *Anthony Ciaccio*   17. DATE FILED BY STATE REGISTRAR Oct. 26, 1970

CONFIDENTIAL INFORMATION FOR MEDICAL AND HEALTH USE ONLY

I CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF A CERTIFICATE DULY REGISTERED WITH THE LOUISIANA STATE DEPARTMENT OF HEALTH, BUREAU OF VITAL STATISTICS.

*Andrew Hedmeg M.D.*
ACTING STATE HEALTH OFFICER

*Anthony Ciaccio*
STATE REGISTRAR

OCT. 26. 1970

EBR156727



5

## STATE OF LOUISIANA
## CERTIFICATE OF LIVE BIRTH

Birth No. 117   72 023 927

| | | | | |
|---|---|---|---|---|
| 1A CHILD'S LAST NAME Lewis, | 1B FIRST NAME Marcus | 1C SECOND NAME Wayne | 2A DATE OF BIRTH June 21, 1972 | |
| 3 SEX GIRL OR BOY Boy | 4 THIS BIRTH Single XX  Twin ☐  Triplet ☐ | 5 IF TWIN OR TRIPLET, WAS CHILD BORN 1st ☐  2d ☐  3d ☐ | 2B HOUR OF BIRTH 9:31 a.m. | |
| 6 PLACE OF BIRTH (CITY, TOWN OR LOCATION) Shreveport | | | 6B PARISH OF BIRTH Caddo | |
| 6C NAME OF HOSPITAL OR INSTITUTION - IF NOT IN HOSPITAL OR INSTITUTION GIVE STREET ADDRESS OR LOCATION | | | 6D IS PLACE OF BIRTH INSIDE CITY LIMITS? Yes XX  No ☐ | |
| 7A USUAL RESIDENCE OF MOTHER CITY TOWN OR LOCATION Shreveport | | 7B PARISH Caddo | 7C STATE Louisiana | |
| 7D STREET ADDRESS - IF RURAL INDICATE LOCATION 10136 Lariat Lane | | | 7E IS RESIDENCE INSIDE CITY LIMITS? Yes ☐  No XX | |
| 8A FULL NAME OF FATHER Alton Leroy Lewis | 8B CITY AND STATE OF BIRTH IF NOT IN U.S. NAME COUNTRY Shelby County, Texas | | 8C AGE (AT TIME OF THIS BIRTH) 34 | 8D COLOR OR RACE OF FATHER White |
| 9A FULL MAIDEN NAME OF MOTHER Carroline Lea Callens | 9B CITY AND STATE OF BIRTH IF NOT IN U.S. NAME COUNTRY Orange, Texas | | 9C AGE (AT TIME OF THIS BIRTH) 28 | 9D COLOR OR RACE OF MOTHER White |
| I certify that the above stated information is true and correct to the best of my knowledge. | 10 SIGNATURE OF PARENT OR OTHER INFORMANT ▸ Alton Leroy Lewis   Parent ☐  Other ☐ | | 11 DATE OF SIGNATURE ********** | |
| 12 MOTHER'S MAILING ADDRESS 10136 Lariat Lane, Shreveport, Louisiana   71106 | | | | |
| I certify that I attended this birth and that the child was born alive on the date stated above. | 13 SIGNATURE OF ATTENDANT ▸ W. C. Kalmbach   MD ☐  Other ☐ | | 14 DATE OF SIGNATURE 6/29/72 | |
| 15 DATE ACCEPTED BY LOCAL REGISTRAR 7/7/72 | 16 SIGNATURE OF LOCAL REGISTRAR ▸ | | 17 DATE FILED BY STATE REGISTRAR 7/17/72 | |

**CONFIDENTIAL INFORMATION FOR MEDICAL AND HEALTH USE ONLY**
(This Section MUST Be Filled Out For Each Birth)

I CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF A CERTIFICATE DULY REGISTERED WITH THE L.H.S.R.S.A., DIVISION OF HEALTH MAINTENANCE AND AMBULATORY PATIENT SERVICES, BUREAU OF VITAL STATISTICS.

MAY 1990

STATE HEALTH OFFICER                    STATE REGISTRAR

# Last Will and Testament

OF

## ALTON LEROY LEWIS

STATE OF LOUISIANA

PARISH OF CADDO

I, ALTON LEROY LEWIS, presently a resident of Caddo Parish, being of sound mind and aware of the uncertainties of life, do hereby declare this to be my Last Will and Testament. I revoke any and all prior wills and codicils or any indication of bequests that I may have made previously, particularly those wills executed March 25, 2003, September 4, 2009, and October 14, 2009.

## I.  FAMILY

1.1    I have been married twice, but I am divorced.

1.2    I have had no children born to me during the course of those two marriages, but during the course of my last marriage to Carolyn Lee Callens Lewis, two sons were adopted, those being Christopher Dean Lewis and Marcus Wayne Lewis.

1.3    No children have been born to me nor have I adopted any other children.

## II.  BEQUESTS

2.1    I direct my executor to pay all debts as necessary, including any taxes, and to be paid first out of my estate.

November 6, 2009

Page 1 of 4

*Alton L. Lewis*
Alton Leroy Lewis



2.2     To my son, Marcus, I hereby leave the following property:

My home and the property where it is located, which is currently located at 439 Pueblo Lane, Shreveport

My John Deere lawn mower

My new garden tiller

My passenger vehicle which is currently a Z71 Silverado

A dinette set consisting of six blue chairs, one large table, one china cabinet, that has a 12 piece place setting of Sives china, one large buffet, and one large pine cone design mirror

Various boxes that are specifically marked with the name of Mark, which would include any guns that he is to have, silverware, and loose pieces of silver

The green duck pirogue boat

My National Geographic book collection

2.3     To Christopher Dean Lewis, I leave the following specific property:

The Cannon gun safe along with all guns that are in and the other items that may be in it.

My Mother's end tables

All of my gun and reloading equipment and supplies which are in the desk

A gray cotton mouth Pirogue boat

Maytag washer and dryer set

Metal boxes that are marked Chris which include a set of Havelin china

November _6_, 2009

_Alton Leroy Lewis_
Alton Leroy Lewis

Page 2 of 4

My Harley Davidson Motorcycle

A sixteen foot tandem trailer

My four wheeler and the trailer for this

2.4     To both of my sons, I leave the following property to share and share alike:

The 6.5 acres located in DeSoto Parish including mineral rights

Any cash money

Any interest in the law suit to which I am being joined as a party as a result of my current medical condition

My stamp collection

Any other property not included in this will

2.5     There is to be no collation between my sons in regard to anything previously given to them by me.

2.6     If property and items listed in this will are not in my possession at the time of my death, that bequest is deemed to have lapsed and is of no effect.


## III. ADMINISTRATION

3.1     I hereby appoint both of my sons, Christopher Dean Lewis and Marcus Wayne Lewis to serve as executors of my estate, to be able to serve either singularly or jointly, to be my Executors and to serve with full seizen and without bond.

3.2     It is represented that the Executor, or Executors, may act as an Independent Administrator and is authorized to conduct succession proceedings in accordance with the provisions of the Code of Civil Procedure, State of Louisiana, currently being articles beginning with Article 2296 and styled as *Independent Administration of Estates*.


November 6th, 2009                                   *Alton L Lewis*
                                                    Alton Leroy Lewis

Page 3 of 4

THUS DONE AND SIGNED on each page in the City of Shreveport, Parish of Caddo, State of Louisiana, on the ___6___ day of November, 2009.

_Alton Leroy Lewis_
Alton Leroy Lewis

The Testator, Alton Leroy Lewis, has signed this will at the end and on each separate page and declared and signified in our presence that it is his Last Will and Testament, and in the presence of the Testator and each other, we have here unto subscribed our names on this _6_ day of November, 2009.

WITNESSES:

_Bobbie Morgan_
Printed Name: Bobbie Morgan

_Alton Leroy Lewis_
Alton Leroy Lewis

_Jimmy G. Canada_   JIMMY G. CANADA
Printer Name:

_Walter O. Hunter_
NOTARY PUBLIC

WALTER ORIE HUNTER, JR., NOTARY PUBLIC
Caddo Parish, Louisiana
My Commission Is For Life
Bar Roll No. 7098
Notary ID # 56832

November _6_, 2009

_Alton Leroy Lewis_
Alton Leroy Lewis

Page 4 of 4

COST OK Amt. 2885—

OCT 27 2009

BY _____
DY CLERK OF COURT

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                    SECTION 24                    DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____                    _____
                                                    DEPUTY CLERK

## PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO AMEND PLAINTIFF'S ORIGINAL PETITION TO ADD DEFENDANT CSR, LIMITED

COMES NOW Plaintiff and files this Motion for Leave to Amend Plaintiff's Original Petition to Add Defendant CSR, Limited.  In support of his motion, Plaintiff would respectfully show as follows:

**I.**

Plaintiff respectfully requests leave to amend his Original Petition to add Defendant CSR, Inc. pursuant to Article 1151 of the Louisiana Code of Civil Procedure.  La. Code Civ. Proc. art. 1151 (2009). Plaintiff worked with Johns-Manville transite sewer pipe during his apprenticeship as a plumber from approximately 1959 through 1962.  Upon information and belief, CSR, Inc. sold the asbestos, which was contained in Johns-Manville's asbestos containing transite sewer pipe and which Plaintiff inhaled during the course of his plumbing work with this pipe.  As a result of this exposure, Plaintiff breathed asbestos containing dust, which contributed to his development of malignant mesothelioma.

**II.**

Plaintiff has attached a First Supplemental and Amended Petition for Damages for this Court's review and respectfully requests that this Court permit Plaintiff to add Defendant CSR, Inc. to this suit for damages sustained in tort, as outlined in Plaintiff's proposed petition.  *See* Plaintiff's First Supplemental and Amended Petition for Damages, attached hereto as **Exhibit A.**

Respectfully submitted,                    CERTIFIED TRUE COPY
**WADDELL LAW FIRM, LLC**

                                                    JAN 06 2011

Cameron R. Waddell (Bar No. 31813)
8708 Jefferson Highway, Suite A          DEPUTY CLERK OF COURT
Baton Rouge, LA 70809
Telephone:  (225) 636-5639
Facsimile:  (225) 636-5209

REC'D C.P.
NOV 02 2009

911060498001

and

**ANDERMAN LAW FIRM, LLC**
Jody E Anderman (Bar No. 18764)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: (225) 612-8450

Counsel for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was sent via one of the methods checked below, to all counsel of record on the _____ day of October, 2009.

[  ]   Regular Mail
[  ]   Certified Mail, Return Receipt Requested
[  ]   Federal Express
[  ]   Hand Delivery
[  ]   Facsimile
[  ]   Email

CAMERON R. WADDELL

CERTIFIED TRUE COPY

231130

DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED

2009 OCT 27  PM 1:36

DOUG WELBORN
CLERK OF COURT E B R PARISH

Plaintiff's *Ex Parte* Motion for Leave to Amend Plaintiff's Original Petition to add Defendant, CSR, Ltd. – Page 2
Q:\Asbestos\Out-of-State Cases\Louisiana\Lewis, Alton\Motions & Responses\Ex Parte Motion for Leave to Amend Plaintiff's Petition to Add CSR.docx

Case 3:11-cv-00199-BAJ -SCR   Document 1-11    03/28/11   Page 17 of 26

911060498002

## <u>ORDER</u>

Let the above and foregoing First Supplemental and Amended Petition to the

Original Petition for Damages be filed as prayed for.

SO ORDERED, this the 27 day of October , 2009, ~~New Orleans~~, Baton Rouge

Louisiana.

_____
J U D G E

CERTIFIED TRUE COPY

731130

DEPUTY CLERK OF COURT

EAST BATON ROUGE PARISH LA.
FILED

2009 OCT 27 PM 1:36

DOUG WELBORN
CLERK OF COURT E.B.R. PARISH

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT COURT FOR THE PARISH
OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 583178                   SECTION 24                   DIVISION 24

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                 DEPUTY CLERK

### FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES

**COMES NOW** Petitioner, by and through undersigned counsel, who respectfully supplements and amends his Petition for Damages solely in the following particulars:

1.    For the purpose of adding the following defendant:

   a.    **CSR, Limited** (*sued individually and as successor-in-interest and as alter ego to* AUSTRALIAN BLUE ASBESTOS PROPRIETARY, LIMITED).

2.    As to CSR, Limited, Plaintiff asserts causes of action in strict liability for the manufacture and sale of unreasonably dangerous asbestos-containing product(s), which were used at the facilities Petitioner worked with as a plumber's apprentice in Shreveport, Louisiana from approximately 1959 through 1960.

3.    As to CSR, Limited, Plaintiff asserts causes of action in negligence and failure to warn for the sale and supply of asbestos and asbestos-containing products, namely Johns Manville transite sewer pipe, at the facilities in and around Shreveport, Louisiana where Mr. Lewis worked as a plumber's apprentice thereby substantially contributing to Petitioner's asbestos exposure and resultant development of malignant mesothelioma.

4.    CSR, Limited, was a manufacturer, seller, user, distributor and/or supplier of asbestos products and was engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products, or representing itself as a

manufacturer of asbestos products, or was a professional vendor of asbestos or asbestos-containing products, which were expected to and did reach Petitioner's work sites and to which Petitioner was exposed.

5.      The products manufactured, sold, distributed, supplied and/or used by the defendant CSR, Limited, were defective, unreasonably dangerous, and unreasonably dangerous per se to Petitioner, an intended and foreseeable user of these products.  These defects include, without limitation, the following:

a.      manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

b.      manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the Petitioner who would be foreseeably exposed to them because of her husband's trade;

c.      lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

d.      lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

e.      failure of defendant to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f.      failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

g.      failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

h.      failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i.      defects in the composition and construction of these products;

j.      failure to recall these products manufactured, sold, distributed and/or supplied;

k.      failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

l.      overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants;

m.   are liable to Petitioner in negligence, strict liability and/or strict
products liability for its things that have caused harm to Petitioner.

6.   The defective conditions of defendant's products and fault, as noted
above, are a proximate cause of Petitioner's injuries complained of herein.

7.   Petitioner further alleges that the foregoing defendant was also negligent
in engaging in the substandard conduct enumerated above and that this negligence
was also a proximate cause of Petitioner's injuries.

8.   The Plaintiff reiterates all other matters contained in the Original Petition
for Damages including the prayer of his original and first supplemental petitions
as though set forth at length herein.

WHEREFORE, the Petitioner prays that his original petition be supplemented and
amended in the above particulars and that, after due proceedings had, there be judgment
herein in favor of Plaintiff and against all defendants as originally prayed for herein.

Respectfully submitted,

WADDELL LAW FIRM, LLC

By: _____
Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: (225) 636-5639
Facsimile: (225) 636-5209

and

ANDERMAN LAW FIRM, LLC
Jody E Anderman (Bar No. 18764)
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Telephone: (225) 612-8450

Counsel for Plaintiff

CERTIFIED TRUE COPY

~31130

DEPUTY CLERK OF COURT

EAST BATON ROUGE PARISH LA
FILED
2009 OCT 27 PM 1:37

DOUG WELBORN
DEPUTY CLERK OF COURT E B.R. PARISH
CLERK OF COURT E B.R. PARISH

CERTIFIED
TRUE COPY

JAN 06 2011

DEPUTY CLERK OF COURT

## SERVICE INFORMATION

**PLEASE SERVE THE FOLLOWING DEFENDANT WITH PETITIONERS' ORIGINAL PETITION FOR DAMAGES, FIRST SUPPLEMENTAL AND AMENDED ORIGINAL PETITION FOR DAMAGES:**

1. **CSR, LIMITED,** a foreign corporation with its principal place of business in Australia, and with an agent for service in the State of Louisiana, may be served, to-wit: Frank Accardo, Esq., Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP, 3200 Energy Centre, 1100 Poydras Street, New Orleans, Louisiana 70163-3200.  This Defendant is being sued as a Supplier Defendant.

2. **CSR, LIMITED,** a foreign corporation with its principal place of business in Australia, and its executive officers may be served *via certified mail return receipt requested,* to-wit: 9 Help Street, Chatswood, New South Whales, Australia 2067. This Defendant is being sued as a Supplier Defendant.

3. **CSR, LIMITED,** a foreign corporation with its principal place of business in Australia, may be served through its attorneys, to-wit: Michael Futterman, Esq., Futterman & Dupree, LLP, 160 Sansome Street, 17th Floor, San Francisco, CA 94104.  This Defendant is being sued as a Supplier Defendant.

4. **ATLAS REFINERY, INC.**
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.   This Defendant is being sued as a Premise Defendant.

5. **BUFFALO PUMPS, INC.** (sued individually and as successor-in-interest to BUFFALO FORGE COMPANY)
   A New York corporation with its principal place of business in the state of New York, may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 874 Oliver Street, North Tonawanda, NY 14120-3298. This defendant is being sued as an Equipment Defendant.

6. **CBS CORPORATION** (f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.   This defendant is being sued as an Equipment Defendant.

7. **COMMERCIAL UNION INSURANCE COMPANY** (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS &PACING CO., INC., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III and The McCarty Corporation, and its executive office, Marvin McCarty, deceased)
   May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 601 Carlson Parkway, Minnetonka, MN 55305.   Commercial Union Insurance Company issued policies of comprehensive general liability insurance to Eagle, Inc. that provided coverage for the causes of action asserted by Plaintiff against Eagle, Inc.  As such, Commercial Union Insurance Company is liable for the damages alleged herein against Eagle, Inc., individually, jointly and *in solido.*

8. **CRANE CO.** (sued individually and as successor-in-interest to CHAPMAN VALVE CO.)
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.   This defendant is being sued as an Equipment Defendant.

9.   **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**, as insurer of The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 333 S. Wasbash, Chicago, IL 60604. The Fidelity and Casualty Company of New York issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

10.   **FIRST STATE INSURANCE COMPANY**, as insurer of The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** One Harford Plaza, Harford, CT 06155. First State Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

11.   **FITZGERALD CONTRACTORS, L.L.C.** f/k/a FITZGERALD PLUMBING AND HEATING COMPANY, INC.
May be served through its registered agent for service of process, William C. Kalmach, 333 Texas Street, Suite 1700, Shreveport, LA 71101. This defendant is being sued as an Employer Defendant.

12.   **FOSTER WHEELER ENERGY CORPORATION**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This defendant is being sued as an Equipment Defendant.

13.   **FOSTER WHEELER, LLC**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This defendant is being sued as an Equipment Defendant.

14.   **GARLOCK, INC.**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This defendant is being sued as a Manufacturer Defendant.

15.   **GARLOCK SEALING TECHNOLOGIES, LLC** (sued individually and as successor-in-interest to GARLOCK, INC.)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This defendant is being sued as a Manufacturer Defendant.

16.   **GENERAL ELECTRIC COMPANY**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This defendant is being sued as an Equipment Defendant.

17.   **GEORGIA-PACIFIC, LLC** (sued individually and successor-in-interest to BESTWALL GYPSUM COMPANY)
May be served through its registered agent for service of process, CT Corporation

System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This defendant is being sued as a Manufacturer Defendant.

18.  **HAMM ENTERPRISES, INC.** f/k/a BERG MECHANICAL, INC.
May be served through its registered agent for service of process, Robert B. Hamm, 531 West 61st Street, Shreveport, LA 71108.  This defendant is being sued as an Employer Defendant.

19.  **HIGHLANDS INSURANCE COMPANIES**, as insurer for The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** One Harford Plaza, Harford, CT 06155.  Highlands Insurance Companies issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

20.  **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL STEAM TURBINE COMMPANY)
May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129.  This defendant is being sued as an Equipment Defendant.

21.  **INTERNATIONAL PAPER COMPANY** (sued individually and as successor-in-interest to CHAMPION PAPER CORPORATION)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This defendant is being sued as a Premise Defendant.

22.  **THE J. GRAVES INSULATION COMPANY** f/k/a GRAVES-ABER INSULATION COMPANY, INC.
May be served through its registered agent for service of process, Eddie T. Scott, 3592 Sligo Road, Haughton, LA 71037.  This defendant is being sued as a Contractor and Distributor Defendant.

23.  **KAISER GYPSUM COMPANY, INC.**
May be served through its registered agent for service of process, Corporation Service Company, 6500 Harbour Heights Pkwy, Mukiteo, WA 98275.  This defendant is being sued as a Manufacturer Defendant.

24.  **LESLIE CONTROLS, INC.**
A Florida corporation with its principal place of business in the state of Florida, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 12501 Telecom Drive, Tampa, FL 33637.  This defendant 'is being sued as an Equipment Defendant.

25.  **LIBBY, INC.**
An Ohio corporation with its principal place of business in the state of Ohio, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 300 Madison Avenue, Toledo, OH 43604.  This defendant is being sued as a Premise Defendant.

26.  **THE MCCARTY CORP.** f/k/a MCCARTY-BRANTON, INC.
May be served through its registered agent for service of process, Paul H. Spaht, 445 North Blvd., Suite 300, Baton Rouge, LA 70802.  This defendant is being

sued as a Contractor and Distributor Defendant.

27. **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**, as insurer of The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 70 Pine Street, New York, NY 10270. National Union Fire Insurance Company of Pittsburgh, PA issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

28. **NUTMEG INSURANCE COMPANY**, as insurer of The J. Graves Insulation Company, Inc.
May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129. Nutmeg Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

29. **PENZOIL-QUAKER STATE COMPANY** (as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to ATLAS REFINERY, INC.)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This defendant is being sued as a Premise Defendant.

30. **SAFETY MUTUAL CASUALTY CORPORATION** n/k/a SAFETY NATIONAL CASUALTY CORPORATION, as insurer of The Graves Insulation Company, Inc.
May be served through its registered agent for service of process, Terrence T. Schoeninger, 1832 Schuetz Road, Saint Louis, MO 63146. Safety Mutual Casualty Corporation n/k/a Safety National Casualty Corporation issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

31. **SCOTTSDALE INSURANCE COMPANY**, as insurer of The J. Graves Insulation Company, Inc.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** One Nationwide Plaza, Columbus, OH 43215-2220. Scottsdale Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc., that provided coverage for the causes of action asserted by Plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York is liable for the damages alleged herein against The J. Graves Insulation Company, Inc., individually, jointly and *in solido.*

32. **UNION CARBIDE CORPORATION**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808. This

defendant is being sued as a Supplier Defendant.

33.   **UNITED STATES FIDELITY AND GUARANTY,** as insurer of The J. Graves
       Insulation, Inc.
       May be served **through the Louisiana Long Arm Statute pursuant Article
       1261(3) to-wit:** One Tower Square, Hartford, CT 06183.  United States Fidelity
       and Guaranty issued policies of comprehensive general liability insurance to The
       J. Graves Insulation Company, Inc., that provided coverage for the causes of
       action asserted by Plaintiff against The J. Graves Insulation Company, Inc.  As
       such, The Fidelity and Casualty Company of New York is liable for the damages
       alleged herein against The J. Graves Insulation Company, Inc., individually,
       jointly and *in solido.*

34.   **WEYERHAUSER COMPANY** (sued individually and as successor-in-interest
       to WILLAMETTE INDUSTRIES, INC.)
       A Washington corporation with its principal place of business in the state of
       Washington, and may be served **through the Louisiana Long Arm Statute
       pursuant Article 1261(3) to-wit:** 33663 Weyerhauser Way South, Federal Way,
       WA 98063-9777.  This defendant is being sued as a Premise Defendant.

35.   **ZURICH AMERICAN INSURANCE COMPANY** a/k/a and/or f/k/a ZURICH
       INSURANCE COMPANY, as insurer of The J. Graves Insulation Company, Inc.
       May be served **through the Louisiana Long Arm Statute pursuant Article
       1261(3) to-wit:** 1400 American Lane, Schaumburg, IL 60196.  Zurich American
       Insurance Company a/k/a and/or f/k/a Zurich Insurance Company issued policies
       of comprehensive general liability insurance to The J. Graves Insulation
       Company, Inc., that provided coverage for the causes of action asserted by
       Plaintiff against The J. Graves Insulation Company, Inc.  As such, The Fidelity
       and Casualty Company of New York is liable for the damages alleged herein
       against The J. Graves Insulation Company, Inc., individually, jointly and *in
       solido.*

9101218140000

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO.: 583178

SECTION

**SEC. 24**

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

COST OK Amt 3300 —

OCT 05 2009

FILED: _____

BY _____
DEPUTY CLERK CLERK OF COURT

## PETITION FOR DAMAGES

Now into Court, through undersigned counsel, comes the petitioner, Alton Lewis, (hereinafter referred to as the Plaintiff), is an adult citizen of the State of Louisiana, who files his Petition for Damages:

1.    The Plaintiff had substantial exposure to asbestos and asbestos-containing products sold, distributed, supplied, applied, removed, used, manipulated and/or maintained on defendants' premise in this Parish.

2.    The Defendants, identified in Exhibit "A," are all either:  (a) foreign corporations licensed to do and doing business in the state of Louisiana, (b) domestic corporations licensed to do business and doing business in the state of Louisiana, (c) individuals who are domiciled in this state, (d) individuals who are not domiciled in this state, or (e) foreign or alien insurers, that are liable to the Plaintiff for the claims asserted herein.

3.    Each Defendant corporation and/or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, installation, removal, maintenance, sale and/or distribution of asbestos asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as "asbestos-containing products"), or held themselves out as manufacturers of such products or were professional vendors of such products.

4.    Plaintiff worked with and/or was exposed to asbestos-containing products while working at defendants' premises in the state of Louisiana.  Plaintiff

EXHIBIT
9 Part 3

work sites, trades and years of exposure to asbestos include, but are not limited to those identified below. Plaintiff has been exposed, on numerous occasions, to asbestos and/or asbestos-containing products produced, manufactured, installed, removed, maintained, sold, and/or distributed by Defendants and, in so doing, has inhaled significant quantities of asbestos fibers, and as a result has suffered injuries proximately caused by such exposure.

5.     Plaintiff was exposed to asbestos or asbestos-containing products from his employment as a machinist mate, plumber and security guard at multiple locations, including but not limited to, the following: Atlas Refinery (in/around Shreveport, Louisiana); International Paper Company (Springhill, Louisiana); Libby, Inc. (in/around Shreveport, Louisiana); Willamette Paper Mill, and commercial sites in and around Houston, Texas and Shreveport, Louisiana. The conduct of each Defendant was a substantial contributing factor in causing Plaintiff's injuries, such that all Defendants are liable jointly, severally, and in solido for all of the damages complained of herein.

<u>VENUE</u>

6.     The defendants, Anco Insulations, Inc. and The McCarty Corporation, are domestic corporations with principal places of business located in this Parish. Plaintiff was exposed to products, distributed and installed by the above-referenced defendants at the work sites listed herein. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

7.     Each of the defendants listed in Exhibits "A," contributed with Anco Insulations, Inc. and The McCarty Corporation, to Plaintiff's exposure to asbestos at his work sites, including but not limited to, the exposure sites listed herein. Each of these defendants is liable in solido, with Anco Insulations, Inc. and The McCarty Corporation to the Plaintiff. Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

8.     Further, the insurance defendants, Commercial Union Insurance Company, The Fidelity and Casualty Company of New York, First State Insurance

2

Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company issued policies of comprehensive general liability insurance to defendants, Eagle, Inc., The McCarty Corporation and/or The J. Graves Insulation Company, Inc. Eagle, Inc., The McCarty Corporation and The J. Graves Insulation Company, Inc. contributed to Plaintiff's exposure at his work sites, including but not limited to, the exposure sites listed herein. As such, the insurance defendants are liable for the damages alleged against Eagle, Inc., The McCarty Corporation and/or The J. Graves Insulation Company, Inc., individually, jointly and *in solido*. In addition, pursuant to the Louisiana Direct Action Statute, L.R.S. 22:1269, venue is proper for these defendants.

## BACKGROUND

9.     During Plaintiff's occupational exposure period, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products set forth below and identified herein:

| Defendant | Asbestos-Containing Products |
|---|---|
| Anco Insulations, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Buffalo Pumps, Inc., successor-in-interest to Buffalo Forge Company | Pumps, gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| CBS Corporation, f/k/a Viacom, Inc., successor by merger with CBS Corporation, f/k/a Westinghouse Electric Corporation | Equipment manufacturer of turbines and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Commercial Union Insurance Company, as insurer of Eagle, Inc. and The McCarty Corporation | *See* Eagle, Inc. and The McCarty Corporation |
| Crane Co., individually and as successor-in-interest to | Equipment manufacturer of industrial and engineered pumps, control valves, quarter turn |

3

910121814003

| | |
|---|---|
| Chapman Valve Co. | valves, mechanical seals and sealing systems |
| Eagle, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Foster Wheeler Energy Corporation | Equipment manufacturer of boilers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Foster Wheeler, LLC | Equipment manufacturer of boilers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Garlock, Inc. | Gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Garlock Sealing Technologies, LLC, individually and as successor-in-interest to Garlock, Inc. | Gaskets, packing, hoses and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| General Electric Company | Equipment manufacturer of turbines, drives, disconnects, circuit interrupters, brakes, solenoids, busway, circuit breakers, motors, power assemblies, switches, load centers, power breakers, motor control assemblies, metering, panel boards, power outlet panels, relays, starters, controllers, generators, wire, switchboards, switchgear, terminal blocks, transfer switches, transformers and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Georgia-Pacific, LLC | Lite acoustical plaster, patching plaster, drywall adhesive, Triple Duty joint compound, Geo Pac joint compound, Speed Set joint compound, Bedding compound, Dry Mixed joint compound, Texture, Central Mix, Spackling compound, Laminating compound Topping compound, All Purpose joint compound and Kalite. |
| The Fidelity and Casualty Company of New York, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company, as insurer of the J. Graves Insulation Company, Inc. | *See* The J. Graves Insulation Company, Inc. |
| IMO Industries, Inc., | Equipment manufacturer of turbines and such |

4

| | |
|---|---|
| individually and as successor-in-interest to Delaval Steam Turbine Company | other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| The J. Graves Insulation Company, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| The McCarty Corporation | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Union Carbide Corporation | Asbestos fiber and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |

Each of the foregoing asbestos containing products was used at Plaintiff's jobsites listed herein where Plaintiff was exposed to such asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

10.    When inhaled or otherwise ingested, asbestos, shortly after inhalation or ingestion, causes irreparable and progressive damage that can manifest itself as asbestos-related pleural diseases, asbestosis, lung cancer and mesothelioma, and other diseases and injuries.

11.    Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling.  Instead of warning the Plaintiff and the general public about these dangers, the defendants ignored or concealed such information, or condoned such concealment.  Those defendants who have engaged in concealing the dangers of asbestos are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence and strict liability, identifies other forms of misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

12.    In connection with his work at Plaintiff's jobsites listed herein during the exposure period, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos having neither knowledge, nor reason to believe that these materials were dangerous.

13.    As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos while working at the exposure sites listed herein, Plaintiff has received injuries, both physically and mentally, including, without limitation, malignant mesothelioma.

14.    Because of the latency period of the above injuries and other injuries caused by asbestos and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff has only recently, within one year, discovered his injuries.

## COUNT ONE

### NEGLIGENCE

("Defendants" in this count means Anco Insulations, Inc., Buffalo Pumps, Inc., CBS Corporation, Crane Co., Eagle, Inc., The J. Graves Insulation Company, Foster Wheeler Energy Corporation, Foster Wheeler, LLC, Garlock, Inc., Garlock Sealing Technologies, LLC, General Electric Company, Georgia-Pacific, LLC, IMO Industries, Inc., Kaiser Gypsum Company, Inc., Leslie Controls, Inc. and Union Carbide Corporation)

15.    The illnesses and disabilities of Plaintiff are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold and/or otherwise put into the stream of commerce asbestos or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some or all of the following respects, among others, same being the proximate cause of Plaintiff's illnesses and disabilities:

(a)    failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos and/or asbestos-containing products;

(b)    failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective

6

equipment and appliances, if any, to protect Plaintiff from being harmed and disabled by exposure to asbestos and/or asbestos-containing products;

(c)    failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, to warn of the dangers to health of coming into contact with said asbestos or asbestos-containing products and/or machinery;

(d)    failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling, installing, and/or using or removing asbestos and/or asbestos-containing products;

(e)    failing to develop and/or use a substitute material to eliminate asbestos fibers in the asbestos-containing products;

(f)    failing to properly design and manufacture asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)    failing to properly test asbestos-containing products before they were released for consumer use; and

(h)    failing to recall and/or remove from the stream of commerce said asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products.

### COUNT TWO

**STRICT LIABILITY**

**("Defendants" in this count means Anco Insulations, Inc., Buffalo Pumps, Inc., CBS Corporation, Crane Co., Eagle, Inc., The J. Graves Insulation Company, Foster Wheeler Energy Corporation, Foster Wheeler, LLC, Garlock, Inc., Garlock Sealing Technologies, LLC, General Electric Company, Georgia-Pacific, LLC, IMO Industries, Inc., Kaiser Gypsum Company, Inc., Leslie Controls, Inc. and Union Carbide Corporation)**

16.    All of the allegations contained in the previous paragraphs are realleged herein.

17.    Plaintiff was exposed to asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest

7

for use as construction materials and/or machinery in industrial operations. The defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products were in this defective condition at the time they left the hands of Defendants. Further, said products were unreasonably dangerous per se, unreasonably dangerous due to Defendants' failure to warn, and unreasonably dangerous due to a design defect.

18.    The Defendants are engaged in the business of selling asbestos-containing products, and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of Plaintiff.

19.    Defendants knew that these asbestos-containing products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation, installation, operation, maintenance and/or repair of the asbestos-containing products.

20.    Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for purposes of manipulation and/or installation.

21.    During the periods that Plaintiff was exposed to the Defendants' asbestos-containing products, these asbestos-containing products were being used in a manner which was intended and/or reasonably foreseeable by Defendants.

## COUNT THREE

### NEGLIGENCE AGAINST MANUFACTURER AND/OR EQUIPMENT DEFENDANTS
("Defendants" in this count means Buffalo Pumps, Inc., CBS Corporation, Crane Co., Foster Wheeler Energy Corporation, Foster Wheeler, LLC, General Electric Company, IMO Industries, Inc. and Leslie Controls, Inc.)

22.    Petitioner alleges that he was exposed to asbestos fibers emanating from asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products. Each Defendant corporation or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, sale, and distribution of asbestos or asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products.

8

Petitioner would show that he has been exposed, on numerous occasions, to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products produced and sold by Defendants and, in so doing, has inhaled great quantities of asbestos fibers. Further, Petitioner alleges, as more specifically set out below, that Petitioner has suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants. In that each exposure to such products caused or contributed to Petitioner's injuries, Petitioner says that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

23. Petitioner was exposed to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products that were manufactured, designed and distributed by the Defendants and their predecessors-in-interest for use as construction materials or machinery in industrial operations. Petitioner would show that the defective design and condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products and machinery were in this defective condition at the time they were designed by or left the hands of Defendants. Petitioner would show that Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products. Petitioner would show that this market defect rendered such products and machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Defendants. Petitioner would show that Defendants are liable in product liability including, but not limited to, strict product liability for the above-described defects.

24. The Defendants are or were engaged in the business of selling, manufacturing, producing, designing, and otherwise putting into the stream of commerce asbestos-containing products and machinery requiring or calling for asbestos

9

or asbestos-containing products, and these asbestos-containing products and machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed and otherwise put into the stream of commerce were a proximate and producing cause of the injuries of Petitioner.

25.    Defendants knew that these asbestos-containing products and machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation or installation of the asbestos-containing products or operation, maintenance and repair of the machinery requiring or calling for the use of asbestos and asbestos-containing products.

26.    Petitioner was unaware of the hazards and defects in the asbestos-containing products of the Defendants, which made them unsafe for purposes of manipulation or installation. Similarly, Petitioner was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and asbestos-containing materials.

27.    During the periods that Petitioner was exposed to the asbestos-containing products and machinery of the Defendants, these asbestos-containing products and machinery were being utilized in a manner, which was intended by Defendants.

28.    The illness and disabilities of Petitioner are a direct and proximate result of the negligence of each Defendant and its predecessor-in-interest in that said entities produced, designed, sold, and otherwise put into the stream of commerce, asbestos, asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Petitioner's health and well-being. Defendants created hazardous and deadly conditions to which Petitioner was exposed and which caused Petitioner to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some, or all of the following respects, among others, same being the proximate cause of Petitioner's illness and disabilities:

10

a.    in failing to timely and adequately warn Petitioner of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products;

b.    in failing to provide Petitioner with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Petitioner from being harmed and disabled by exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products;

c.    in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, or machinery requiring or calling for the use of asbestos and asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and machinery;

d.    in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and safe method of handling and installing asbestos and asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and asbestos-containing products in a safe manner;

e.    in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products, or the machinery requiring or calling for the use of asbestos and asbestos-containing products;

f.    in failing to properly design and manufacture asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

11

g.  in failing to properly test said asbestos-containing products and machinery before they were released for consumer use; and

h.  in failing to recall or remove from the stream of commerce said asbestos-containing products and machinery or machinery requiring or calling for the use of asbestos and asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products and machinery.

29.  Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave.  Petitioner also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a Defendant committed at the direction of an officer of the United States Government.  Petitioner's allegations against equipment defendants are expressly limited to causes of action or recovery for injuries caused by exposure to asbestos from land-based equipment only.

<u>COUNT FOUR</u>

**NEGLIGENCE AND STRICT LIABILITY**
**AGAINST THE CONTRACTOR DEFENDANTS**
("Defendants" in this count means Anco Insulations, Inc., Commercial Union Insurance Company, as insurer for Eagle, Inc. and The McCarty Corporation, Eagle, Inc., Fitzgerald Contractors, LLC, f/k/a Fitzgerald Plumbing and Heating Company, Inc., Hamm Enterprises, Inc., f/k/a Berg Mechanical, Inc., The J. Graves Company and its insurers, The Fidelity and Casualty Company, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty, and Zurich American Insurance Company, a/k/a Zurich Insurance Company, and The McCarty Corporation )

30.  The Defendants contracted at the jobsites identified herein to perform certain activities at those jobsites prior to and/or during each Plaintiff's exposure period at each such jobsites.

31.  The activities conducted by the Defendants and/or their subcontractors, included, but were not limited to, the application, demolition, displacement, disturbance, fabrication, installation, purchase, removal, repair, replacement, tearing out, and use of asbestos-containing products at, on and/or for the jobsites identified herein.

12

32.    The foregoing activities resulted in the release of substantial quantities of asbestos dust into the work environment.

33.    Plaintiff was exposed to and inhaled substantial quantities of asbestos dust as a direct and proximate result of the activities of the Contractor Defendants and their subcontractors.

34.    The Contractor Defendants negligently performed and/or permitted their subcontractors to negligently perform the foregoing activities in the following non-exclusive particulars:

(a)    By creating a work environment laden with asbestos dust and an unhealthy and unsafe place for Plaintiff to work;

(b)    By failing to provide warnings, or adequate warnings, to Plaintiff of the dangers and risks posed by the asbestos in the atmosphere in which Plaintiff worked; of the need for correct, adequate, and/or appropriate safety equipment; of critical medical and safety information regarding asbestos hazards in general and of hazards at the jobsites in particular; and of the hazards created by Defendants' activities;

(c)    By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly asbestos;

(d)    By failing to apprise Plaintiff of the need for periodic medical examinations as a result of Plaintiff's exposure to asbestos created by Defendants' activities;

(e)    By failing to ventilate and/or properly ventilate the areas in which Plaintiff performed activities, or otherwise provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

(f)    By failing to clean up and/or properly clean up the asbestos dust created by Plaintiff's activities;

(g)    By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as

13

Plaintiff, who came into contact with asbestos dust as a result of Plaintiff's activities;

(h)   By recklessly concealing from Plaintiff and negligently failing to provide critical medical and safety information to Plaintiff regarding the safety and health risks associated with the asbestos and asbestos-containing products;

(i)   By failing to adopt and/or failing to enforce safety rules after such rules were actually adopted;

(j)   By failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, occupational exposure to asbestos;

(k)   By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

(l)   By failing to supervise their operations and the operations of their subcontractors;

(m)   By commencing and continuing operations, which were under their control and supervision when they knew or should have known that such operations would cause Plaintiff and co-employees to be exposed to asbestos, without protection, on a daily basis;

(n)   By failing to timely, adequately and safely remove asbestos hazards from the workplace;

(o)   By failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited to, those regulations promulgated by the U. S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety and Health Act);

(p)   By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Defendants knew, or in the exercise of reasonable diligence should have known, were

14

unreasonably dangerous, or unreasonably dangerous per se;

(q)   By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with the their activities;

(r)   By failing to test or adequately test the materials with which they were working to determine the presence of asbestos;

(s)   By failing to purchase products and materials that did not contain asbestos;

(t)   By purchasing, using, applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that contained asbestos;

(u)   By failing to properly label products that they purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and tore out as containing asbestos; and

(v)   By conducting their activities through such other negligent acts or omissions, as may be revealed in discovery and/or proven at trial.

35.   The negligent acts outlined above were a substantial contributing factor in Plaintiff's exposure to dangerous and hazardous levels of asbestos, and resultant damages.

36.   The foregoing negligent acts of the Contractor Defendants were a cause-in-fact and proximate cause of the Plaintiff's injuries and damages.

37.   Additionally, the Contractor Defendants are liable for the acts of their subcontractors under the doctrine of *respondeat superior* and Louisiana Civil Code article 2320.

38.   Additionally and alternatively, the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants were in the care, custody and control of the Contractor Defendants, jointly with the premise defendants, were unreasonably dangerous due to the presence of asbestos, and were a proximate cause and cause-in-fact of the Plaintiff's injuries.  Therefore, the Contractor

15

Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

39.     Additionally, when such contractors did not employ Plaintiff, Plaintiff was exposed to the asbestos containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants that were in the care, custody and control of the Contractor Defendants and were unreasonably dangerous due to the presence of asbestos.

**COUNT FIVE**

**NEGLIGENCE AND STRICT LIABILITY
OF PLAINTIFF'S EMPLOYERS**
("Defendants" in this count means Fitzgerald Contractors, LLC, f/k/a Fitzgerald
Plumbing and Heating Company, Inc., and Hamm Enterprises, Inc., f/k/a Berg
Mechanical, Inc.)

40.     Plaintiff alleges negligent conduct and misconduct on behalf of Plaintiff's employers in failing to provide and/or ensure a safe workplace for their employees, free of hazardous concentrations of asbestos and asbestos-containing dust.

41.     At various times, Plaintiff was employed by the Employer Defendants and during such time was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by Defendants.

42.     The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest undertook and assumed the duties and responsibilities owed individually for providing Plaintiff with a safe place to work and Defendants negligently failed to provide Plaintiff a safe place to work.

43.     Each of the Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently hiring, delegating, training, administering, supervising and performing duties owed individually and/or delegated to them,  or failing to hire, delegate, train, administer, supervise or perform their duties owed individually and/or delegated to them directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Plaintiff.  The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one,

16

(o)     in failing to properly implement control measures to reduce or eliminate

harmful agents in the work place, including asbestos; and

(p)     in failing to properly train, educate and/or warn the plaintiff of the

dangers of asbestos.

44.     The negligence of Plaintiff's employers was a substantial factor and
contributed in causing Plaintiff, Alton Lewis, to contract malignant mesothelioma.

45.     Additionally and alternatively, the asbestos-containing products that were
purchased, used, applied, demolished, displaced, disturbed, fabricated, installed,
removed, repaired, replaced, and torn out by the Employer Defendants were in the care,
custody and control of the Employer Defendants, jointly with the premise defendants,
were unreasonably dangerous due to the presence of asbestos, and were a proximate
cause and cause-in-fact of the Plaintiff's injuries.  Therefore, the Employer Defendants
are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

46.     Plaintiff disclaim any cause of action or recovery for any injuries caused
by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also
disclaim any cause of action or recovery for any injuries resulting from any exposure to
asbestos dust caused by any acts or omissions of a party committed at the direction of
an officer of the United States Government.

<u>COUNT SIX</u>

NEGLIGENCE AND STRICT PREMISE LIABILITY
(" Defendants" in this case means Atlas Refinery, Inc., International Paper Company,
individually and as successor-in-interest to Champion Paper Corporation, Libby, Inc,
Penzoil-Quaker State Company, as successor by merger to Penzoil Products
Company, successor to Atlas Refinery, Inc., and Weyerhauser Company, individually
and as successor-in-interest to Willamette Industries, Inc.)

47.     Plaintiff was exposed to asbestos and asbestos-containing materials while
working at the jobsites identified herein. The premise defendants at all times relevant to
this complaint, have been either the operator and/or the manager and/or the owner
and occupier of its respective facilities and in custody of the facilities during the
relevant time period.  The facilities were defective in that the asbestos and asbestos-
containing materials in the facilities created an unreasonable risk of harm to the Plaintiff
and other persons on the premises.  Plaintiff was exposed to asbestos and asbestos-

some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

(a)     in failing to provide adequate safety equipment;

(b)     in failing to protect Plaintiff from any asbestos exposure;

(c)     in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

(d)     in failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products;

(e)     in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff 's exposure to asbestos dust;

(f)     in failing to properly perform safety inspections of the Plaintiff's work place;

(g)     in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of asbestos at Plaintiff's work sites;

(h)     in failing to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

(i)     in failing to properly perform or direct the removal and abatement of asbestos in place at Plaintiff's work sites; and

(j)     in negligently failing to disclose, warn or reveal medical and safety information to Plaintiff regarding the hazards of asbestos.

(k)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(l)     in failing to evaluate the work place;

(m)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(n)     in failing to properly evaluate the work place;

17

containing materials while he was an invitee at the premise defendants' facilities. The defective condition of the facilities was a proximate cause of the Plaintiff contracting malignant mesothelioma. Therefore, the Premise Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

48.    Each of the Premise Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently hiring, delegating, training, administering, supervising and performing duties owed individually and/or delegated to them, or failing to hire, delegate, train, administer, supervise or perform their duties owed individually and/or delegated to them directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Plaintiff. The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

(a)    in failing to provide adequate safety equipment;

(b)    in failing to protect Plaintiff from any asbestos exposure;

(c)    in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

(d)    in failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products;

(e)    in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff 's exposure to asbestos dust;

(f)    in failing to properly perform safety inspections of the Plaintiff's work place;

(g)    in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of asbestos at Plaintiff's work sites;

19

(h)     in failing to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

(i)     in failing to properly perform or direct the removal and abatement of asbestos in place at Plaintiff's work sites; and

(j)     in negligently failing to disclose, warn or reveal medical and safety information to Plaintiff regarding the hazards of asbestos.

(k)     in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(l)     in failing to evaluate the work place;

(m)    in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

(n)     in failing to properly evaluate the work place;

(o)     in failing to properly implement control measures to reduce or eliminate harmful agents in the work place, including asbestos; and

(p)     in failing to properly train, educate and/or warn the plaintiff of the dangers of asbestos.

49.     The Premise Defendants are liable to Plaintiff for its failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with exposure to asbestos.  The Premise Defendants, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees.  The Premise Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm.  The Premise Defendants' failure to protect Plaintiff, from known and/or foreseeable dangers constitutes negligence.  Said negligence was a proximate cause of Plaintiff, Alton Lewis, contracting malignant mesothelioma.

50.     Plaintiffs disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from any exposure to

asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

**COUNT SEVEN**

**INSURANCE ALLEGATIONS**

51.     Plaintiff avers that Commercial Union Insurance Company issued policies of comprehensive general liability insurance to Eagle, Inc. and The McCarty Corporation that provided coverage for the causes of action asserted by plaintiff against Eagle, Inc. and The McCarty Corporation. As such, Commercial Union Insurance Company is liable for the damages alleged against Eagle, Inc. and The McCarty Corporation, individually, jointly and *in solido*.

52.     Plaintiff avers that The Fidelity and Casualty Company of New York, First State Insurance Company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation,  Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company issued policies of comprehensive general liability insurance to The J. Graves Insulation Company, Inc. that provided coverage for the causes of action asserted by plaintiff against The J. Graves Insulation Company, Inc. As such, The Fidelity and Casualty Company of New York, First State Insurance company, Highlands Insurance Companies, National Union Fire Insurance Company of Pittsburgh, PA, Nutmeg Insurance Company, Safety Mutual Casualty Corporation, n/k/a Safety National Casualty Corporation, Scottsdale Insurance Company, United States Fidelity and Guaranty and Zurich American Insurance Company, a/k/a Zurich Insurance Company are liable for the damages alleged against The J. Graves Insulation Company, Inc., individually, jointly and *in solido*.

**COUNT EIGHT**

**JOINT AND SOLIDARY LIABILITY**

53.     All of the allegations contained in the previous paragraphs are realleged herein.

21

54.    Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

55.    The actions of each of the Defendants are a proximate cause of Plaintiff's injuries.  As a result, all Defendants are jointly and solidarily liable for the damage caused by their combined actions.

<u>**DAMAGES**</u>

56.    The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease and other related physical conditions of Plaintiff.  Plaintiff has been damaged in the following non-exclusive particulars:

(a)    Plaintiff has suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout his lifetime;

(b)    Plaintiff has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the progressively disabling character of asbestos-related lung disease and other related physical conditions from which he now suffers and will continue to suffer in the future;

(c)    Plaintiff suffers a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of asbestos-related lung disease and other related physical conditions;

(d)    Plaintiff suffers a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of asbestos-related lung disease and other related physical conditions;

(e)    Plaintiff is subject to increased progression of his cancer all due to his exposure to asbestos by the named Defendants;

(f)    Plaintiff requires or will require domestic help and nursing care due to his disabilities and has been or will be required to pay for such domestic help and nursing services;

22

(g)    Prior to the onset of his symptoms, Plaintiff was extremely active and participated in numerous hobbies and activities, and as a result of his illness, Plaintiff has been and will be prevented from engaging in some of said activities which were normal to him prior to developing symptoms from asbestos-related lung disease.  Plaintiff has been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life; and

57.    Plaintiff filed suit within one (1) year of the date of discovering Plaintiff's asbestos-related conditions or the existence of any asbestos-related causes of action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for general damages, special damages, for their costs expended herein, for prejudgment interest from the date of Plaintiff's filing of the lawsuit and post judgment interest on the judgment at the rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiff may show themselves justly entitled.

Respectfully submitted,

WADDELL LAW FIRM, LLC

By: _____

Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Hwy., Suite A
Baton Rouge, LA  70809
Telephone: (225) 636-5639
Facsimile: (225) 636-5209

and

ANDERMAN LAW FIRM, LLC
Jody E. Anderman (Bar No. 16764)
8708 Jefferson Hwy., Ste. A
Baton Rouge, LA  70809
Telephone: (225) 612-8450

**Counsel for plaintiff**

CERTIFIED TRUE COPY
930130
DEPUTY CLERK OF COURT

2009 OCT -5 AM 9: 12
FILED
EAST BATON ROUGE PARISH
DOUG WELBORN
CLERK OF COURT E B R PARISH

CERTIFIED
TRUE COPY
JAN 06 2011
DEPUTY CLERK OF COURT

CIVIL

| | |
|---|---|
| ☐ 01-DAMAGES | ☐ 11-COMM. PROP. PARTITIONS |
| ☐ 02-CONTRACT | ☐ 12-PUBLIC SERV. COMM. |
| ☐ 03-PRISONER SUIT | ☐ 13-OTHER PARTITIONS |
| ☐ 04-EXECUTORY PROCESS | ☐ 14-OTHER |
| ☐ 05-SUIT ON NOTES | ☐ 15-D.E.Q. |
| ☐ 06-EVICTION | ☐ 16- |
| ☐ 07-WORKMENS COMPENSATION | ☐ 17- |
| ☐ 08-JUDICIAL REVIEW | ☐ 18 |
| ☐ 09-PROPERTY RIGHTS | ☐ |
| ☐ 10-INJUNCTION MANDAMUS | ☐ |

23

## EXHIBIT "A"

1. **ATLAS REFINERY, INC.**
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

2. **ANCO INSULATION, INC.**
   A domestic corporation duly organized, created and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in Baton Rouge, Louisiana and with an agent for service, to-wit: Thomas E. Balhoff, 8440 Jefferson Highway, Suite 301, Baton Rouge, LA 70809

3. **BUFFALO PUMPS, INC.**
   **(individually and as successor-in-interest to BUFFALO FORGE COMPANY)**
   A New York corporation with its principal place of business in the state of New York, may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 874 Oliver Street, North Tonawanda, NY 14120-3298.

4. **CBS CORPORATION**
   **(f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)**
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

5. **COMMERCIAL UNION INSURANCE COMPANY**
   (as insurer for Eagle, Inc., f/k/a Eagle Asbestos & Packing Co., Inc. and The McCarty Corporation)
   (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
   A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

6. **CRANE CO.**
   (individually and as successor-in-interest to CHAPMAN VALVE CO.)
   May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

7. **EAGLE, INC.**
   (Formerly Eagle Asbestos & Packing Co., Inc.)
   a corporation duly organized, created and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in New Orleans, Louisiana and with an agent for service in the state of Louisiana, to-wit: Susan B. Kohn, 1100 Poydras Street, 30th Floor, New Orleans, LA 70163

8. **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**
   (as insurer of The J. Graves Insulation Company, Inc.)
   (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
   A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

9. **FIRST STATE INSURANCE COMPANY**
   (as insurer of The J. Graves Insulation Company, Inc.)
   (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
   A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

10. **FITZGERALD CONTRACTORS, L.L.C.**
    (f/k/a FITZGERALD PLUMBING AND HEATING COMPANY, INC.)
    May be served through its registered agent for service of process, William C. Kalmach, 333 Texas Street, Suite 1700, Shreveport, LA 71101.

**EXHIBIT**
9 Part 4

910121615001

11. **FOSTER WHEELER ENERGY CORPORATION**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

12. **FOSTER WHEELER, LLC**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

13. **GARLOCK, INC.**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

14. **GARLOCK SEALING TECHNOLOGIES, LLC**
(individually and as successor-in-interest to GARLOCK, INC.)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

15. **GENERAL ELECTRIC COMPANY**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

16. **GEORGIA-PACIFIC, LLC**
(individually and successor-in-interest to BESTWALL GYPSUM COMPANY)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

17. **HAMM ENTERPRISES, INC.**
(f/k/a BERG MECHANICAL, INC.)
May be served through its registered agent for service of process, Robert B. Hamm, 531 West 61st Street, Shreveport, LA 71108.

18. **HIGHLANDS INSURANCE COMPANIES**
(as insurer for The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

19. **IMO INDUSTRIES, INC.**
(individually and as successor-in-interest to DELAVAL STEAM TURBINE COMMPANY)
May be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129.

20. **INTERNATIONAL PAPER COMPANY**
(individually and as successor-in-interest to CHAMPION PAPER CORPORATION)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

21. **THE J. GRAVES INSULATION COMPANY**
(f/k/a GRAVES-ABER INSULATION COMPANY, INC.)
May be served through its registered agent for service of process, Eddie T. Scott, 3592 Sligo Road, Haughton, LA 71037.

22. **KAISER GYPSUM COMPANY, INC.**
May be served through its registered agent for service of process, Corporation Service Company, 6500 Harbour Heights Pkwy, Mukiteo, WA 98275. This

25

23. **LESLIE CONTROLS, INC.**
A Florida corporation with its principal place of business in the state of Florida, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 12501 Telecom Drive, Tampa, FL 33637.

24. **LIBBY, INC.**
An Ohio corporation with its principal place of business in the state of Ohio, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 300 Madison Avenue, Toledo, OH 43604.

25. **THE MCCARTY CORPORATION**
**(f/k/a MCCARTY-BRANTON, INC.)**
May be served through its registered agent for service of process, Paul H. Spaht, 445 North Blvd., Suite 300, Baton Rouge, LA 70802.

26. **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

27. **NUTMEG INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

28. **PENZOIL-QUAKER STATE COMPANY**
(as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to ATLAS REFINERY, INC.)
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

29. **SAFETY MUTUAL CASUALTY CORPORATION n/k/a SAFETY NATIONAL CASUALTY CORPORATION**
(as insurer of The Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
A company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

30. **SCOTTSDALE INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

31. **UNION CARBIDE CORPORATION**
May be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

32. **UNITED STATES FIDELITY AND GUARANTY**
(as insurer of The J. Graves Insulation, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

910121615003

33.   **WEYERHAUSER COMPANY**
(individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
A Washington corporation with its principal place of business in the state of Washington, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 33663 Weyerhauser Way South, Federal Way, WA  98063-9777.

34.   **ZURICH AMERICAN INSURANCE COMPANY a/k/a and/or f/k/a ZURICH INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

PLEASE SERVE THE FOLLOWING DEFENDANTS
**WITH A COPY PLAINTIFF'S PETITION FOR
DAMAGES & MOTION FOR LEAVE TO PERPETUATE
TRIAL TESTIMONY:**

1.    **ATLAS REFINERY, INC.**
      Through its agent for service of process:
      CT Corporation System
      5615 Corporate Blvd., Ste. 400B
      Baton Rouge, LA 70808.

2.    **ANCO INSULATION, INC.**
      Through its agent for service of process:
      Thomas E. Balhoff
      8440 Jefferson Highway
      Suite 301
      Baton Rouge, LA 70809.

3.    **BUFFALO PUMPS, INC.**
      **(individually and as successor-in-interest to BUFFALO FORGE    COMPANY)**
      (may be served **through the Louisiana Long Arm Statute pursuant Article
      1261(3)**)
      874 Oliver Street
      North Tonawanda, NY 14120-3298.

4.    **CBS CORPORATION**
      **(f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a
      WESTINGHOUSE ELECTRIC CORPORATION)**
      Through its agent for service of process:
      CT Corporation System
      5615 Corporate Blvd., Ste. 400B
      Baton Rouge, LA 70808.

5.    **COMMERCIAL UNION INSURANCE COMPANY**
      (as insurer for EAGLE, INC., f/k/a EAGLE ASBESTOS & PACKING and THE
      MCCARTY CORPORATION)
      (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
      Through the Louisiana Secretary of State
      8549 United Plaza Boulevard
      Baton Rouge, LA 70809.

6.    **CRANE CO.**
      (individually and as successor-in-interest to CHAPMAN VALVE CO.)
      Through its agent for service of process:
      CT Corporation System
      5615 Corporate Blvd., Ste. 400B
      Baton Rouge, LA 70808.

7.    **EAGLE, INC.**
      (Formerly Eagle Asbestos & Packing Co., Inc.)
      Through its agent for service of process:
      Susan B. Kohn
      1100 Poydras Street, 30th Floor
      New Orleans, LA 70163.

8.    **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**
      (as insurer of The J. Graves Insulation Company, Inc.)
      (For Service of Process via the Direct Action Statute L.R.S. 22:1269)

28

Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

9.    **FIRST STATE INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

10.   **FITZGERALD CONTRACTORS, L.L.C.**
(f/k/a FITZGERALD PLUMBING AND HEATING COMPANY, INC.)
Through its agent for service of process:
William C. Kalmach
333 Texas Street, Suite 1700
Shreveport, LA 71101.

11.   **FOSTER WHEELER ENERGY CORPORATION**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

12.   **FOSTER WHEELER, LLC**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

13.   **GARLOCK, INC.**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

14.   **GARLOCK SEALING TECHNOLOGIES, LLC**
(individually and as successor-in-interest to GARLOCK, INC.)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

15.   **GENERAL ELECTRIC COMPANY**
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

16.   **GEORGIA-PACIFIC, LLC**
(individually and successor-in-interest to BESTWALL GYPSUM COMPANY)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808.

17.   **HAMM ENTERPRISES, INC.**
      (f/k/a BERG MECHANICAL, INC.)
      Through its agent for service of process:
      Robert B. Hamm
      531 West 61st Street
      Shreveport, LA 71108.

18.   **HIGHLANDS INSURANCE COMPANIES**
      (as insurer for The J. Graves Insulation Company, Inc.)
      (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
      Through the Louisiana Secretary of State
      8549 United Plaza Boulevard
      Baton Rouge, LA 70809.

19.   **IMO INDUSTRIES, INC.**
      (individually and as successor-in-interest to DELAVAL STEAM TURBINE
      COMMPANY)
      Through its agent for service of process:
      Corporation Service Company
      320 Somerulos Street
      Baton Rouge, LA 70802.

20.   **INTERNATIONAL PAPER COMPANY**
      (individually and as successor-in-interest to CHAMPION PAPER
      CORPORATION)
      Through its agent for service of process:
      CT Corporation System
      5615 Corporate Blvd., Ste. 400B
      Baton Rouge, LA 70808.

21.   **THE J. GRAVES INSULATION COMPANY**
      (f/k/a GRAVES-ABER INSULATION COMPANY, INC.)
      Through its agent for service of process:
      Eddie T. Scott
      3592 Sligo Road
      Haughton, LA 71037.

22.   **KAISER GYPSUM COMPANY, INC.**
      (may be served **through the Louisiana Long Arm Statute pursuant Article
      1261(3)**)
      Corporation Service Company
      6500 Harbour Heights Pkwy
      Mukiteo, WA 98275.

23.   **LESLIE CONTROLS, INC.**
      (may be served **through the Louisiana Long Arm Statute pursuant Article
      1261(3)**)
      12501 Telecom Drive
      Tampa, FL 33637.

24.   **LIBBY, INC.**
      (may be served **through the Louisiana Long Arm Statute pursuant Article
      1261(3)**)
      300 Madison Avenue
      Toledo, OH 43604.

25.    **THE MCCARTY CORPORATION**
       Through its agent for service of process:
       Paul H. Spaht
       445 North Boulevard, Ste. 300
       Baton Rouge, LA 70802.

26.    **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
       (as insurer of The J. Graves Insulation Company, Inc.)
       (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
       Through the Louisiana Secretary of State
       8549 United Plaza Boulevard
       Baton Rouge, LA 70809.

27.    **NUTMEG INSURANCE COMPANY**
       (as insurer of The J. Graves Insulation Company, Inc.)
       (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
       Through the Louisiana Secretary of State
       8549 United Plaza Boulevard
       Baton Rouge, LA 70809.

28.    **PENZOIL-QUAKER STATE COMPANY**
       (as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to
       ATLAS REFINERY, INC.)
       Through its agent for service of process:
       CT Corporation System
       5615 Corporate Blvd., Ste. 400B
       Baton Rouge, LA 70808.

29.    **SAFETY MUTUAL CASUALTY CORPORATION n/k/a SAFETY NATIONAL
       CASUALTY CORPORATION**
       (as insurer of The Graves Insulation Company, Inc.)
       (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
       Through the Louisiana Secretary of State
       8549 United Plaza Boulevard
       Baton Rouge, LA 70809.

30.    **SCOTTSDALE INSURANCE COMPANY**
       (as insurer of The J. Graves Insulation Company, Inc.)
       (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
       Through the Louisiana Secretary of State
       8549 United Plaza Boulevard
       Baton Rouge, LA 70809.

31.    UNION CARBIDE CORPORATION
       Through its agent for service of process:
       CT Corporation System
       5615 Corporate Blvd., Ste. 400B
       Baton Rouge, LA 70808.

32.    **UNITED STATES FIDELITY AND GUARANTY**
       (as insurer of The J. Graves Insulation, Inc.)
       (For Service of Process via the Direct Action Statute L.R.S. 22:1269)
       Through the Louisiana Secretary of State
       8549 United Plaza Boulevard
       Baton Rouge, LA 70809.

31

33. **WEYERHAUSER COMPANY**
(individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
(may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3)**)
33663 Weyerhauser Way South
Federal Way, WA  98063-9777.

34. **ZURICH AMERICAN INSURANCE COMPANY a/k/a and/or f/k/a ZURICH INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:1269)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809.

32

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO.: 583178          SECTION                    DIVISION "___"
                                                            24

                     ALTON LEWIS

                        VERSUS

             ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                          DEPUTY CLERK

### MOTION FOR LEAVE TO TAKE VIDEO-TAPED DEPOSITION
### TO PERPETUATE TESTIMONY PRIOR TO TRIAL

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Alton Lewis, a person of the full age of majority who resides in Parish of Caddo, State of Louisiana, who respectfully represents the following:

1.

Plaintiff is a party in an action cognizable in this Court and all Defendants named in the action are Defendants in the Plaintiff's occupationally induced mesothelioma case filed in this matter. (See Exhibit "A" attached hereto.)

2.

Plaintiff, Alton Lewis, was diagnosed with malignant mesothelioma on or about July 7, 2009 by Dr. Tania S. Rowland. (See Exhibit "B" attached hereto.)

3.

Since the time the Plaintiff has been diagnosed with malignant mesothelioma, he has been informed that his condition is deteriorating rapidly and that he is not expected to live much longer. While it is not known how much longer petitioner has to live, it is not expected that he will not live in excess of six (6) months. Therefore, Plaintiff reasonably believes that there is a substantial possibility that the Plaintiff will pass away or be too incapacitated to testify before a contradictory hearing on this petition could be held.

4.

Due to the Plaintiff's severe and progressive life threatening disease, the interest

32

of justice requires that his testimony be immediately perpetuated.

5.

Plaintiff would anticipate that the subject matter of the testimony, expected to be perpetuated, would involve Plaintiff's exposure to products containing asbestos while employed at various sites, including, but not limited to, Atlas Refinery (in/around Shreveport, Louisiana); International Paper Company (Springhill, Louisiana); Libby, Inc. (in/around Shreveport, Louisiana); Willamette Paper Mill and commercial sites in and around Houston, Texas and Shreveport, Louisiana. Additionally, Plaintiff's testimony will include damage testimony concerning pain and suffering that he has experienced as a result of contracting his occupationally related mesothelioma together with testimony concerning the financial hardship, which this disease has caused him, including medical expenses incurred.

6.

Because of Plaintiff's failing health, it is imperative that his perpetuation deposition be scheduled at the earliest possible convenience.

7.

Unless, pursuant to Louisiana Code of Civil Procedure articles 1429, *et seq.*, this Court grants the Plaintiff leave to have his deposition recorded on videotape, Plaintiff and/or his family will suffer irreparable harm Alton Lewis in that the trier of fact will be unable to consider the Plaintiff's demeanor in order to give proper weight to his testimony.

8.

The Plaintiff has filed a lawsuit for injuries and damages; however, because of his rapidly failing health, Plaintiff feels as though he may pass away or become so incapacitated so as to loose all cognitive ability to testify concerning his exposure and damages before he could have all Defendants served properly.

2

9.

WHEREFORE, Plaintiff respectfully prays that the interest of justice requires that

he be permitted to immediately perpetuate his testimony and that this Honorable Court

enter an *ex parte* order allowing Plaintiff, Alton Lewis, to give his videotaped

perpetuation deposition at the time and place set forth in the attached Notice of

Deposition.

Respectfully submitted,

WADDELL LAW FIRM, LLC

By: _____

Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Hwy., Suite A
Baton Rouge, LA  70809
Telephone: (225) 636-5639
Facsimile: (225) 636-5209

and

ANDERMAN LAW FIRM, LLC
Jody E. Anderman (Bar No. 18764)
8708 Jefferson Hwy., Ste. A
Baton Rouge, LA  70809
Telephone: (225) 612-8450

**Counsel for plaintiff**

CERTIFIED TRUE COPY
930130
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH LA
FILED
2009 OCT -5  AM 9:18
DEPUTY CLERK OF COURT
DOUG WELBORN
CLERK OF COURT E.B.R PARISH

3

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO.:                         SECTION                    DIVISION " "

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                                           DEPUTY CLERK

### EX-PARTE ORDER TO TAKE VIDEO-TAPED DEPOSITION
### TO PERPETUATE TESTIMONY PRIOR TO TRIAL

CONSIDERING THE FOREGOING it is ordered that Plaintiff's Motion for Leave

to Take the Video-taped Deposition to Perpetuate Testimony prior to trial be and

hereby is granted.

_____, Louisiana this the 6 day of _____, 2009.

_____
JUDGE

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO.:                          SECTION                    DIVISION " "

ALTON LEWIS

VERSUS

ATLAS REFINERY, INC., ET AL

FILED: _____          _____
                                                          DEPUTY CLERK

## NOTICE OF VIDEO-TAPED DEPOSITION
## TO PERPETUATE TESTIMONY PRIOR TO TRIAL

PLEASE TAKE NOTICE that the undersigned will take the perpetuation deposition of the deponent named below by video recording and stenographic transcription pursuant to the Louisiana Code of Civil Procedure commencing on the date and at the time and place designated below and thereafter from day to day until completed, and at which time and place you are notified to appear and take part as you may deem advisable.

Deponent:          Alton Lewis

Date and Time:    October 21 and 22, 2009 at 1:00 p.m.

Place:               439 Pueblo Lane
                         Shreveport, LA 71106

Respectfully submitted,

WADDELL LAW FIRM, LLC

By: _____
Cameron R. Waddell (Bar No. 24245)
8708 Jefferson Hwy., Suite A
Baton Rouge, LA 70809
Telephone: (225) 636-5639
Facsimile: (225) 636-5209

CERTIFIED TRUE COPY
930130
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT COURT
EAST BATON ROUGE PARISH, LA
FILED
2009 OCT -5 AM 9: 13
DEPUTY CLERK OF COURT E.B.R. PARISH
DOUG WELBORN
CLERK OF COURT E. B. PARISH

5

## EXHIBIT "A"

1. **ATLAS REFINERY, INC.**
   may be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

2. **ANCO INSULATION, INC.**
   a domestic corporation duly organized, created and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in Baton Rouge, Louisiana and with an agent for service, to-wit: Thomas E. Balhoff, 8440 Jefferson Highway, Suite 301, Baton Rouge, LA 70809

3. **BUFFALO PUMPS, INC.**
   **(individually and as successor-in-interest to BUFFALO FORGE COMPANY)**
   a New York corporation with its principal place of business in the state of New York, may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 874 Oliver Street, North Tonawanda, NY 14120-3298.

4. **CBS CORPORATION**
   **(f/k/a VIACOM, INC., successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)**
   may be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

5. **COMMERCIAL UNION INSURANCE COMPANY**
   (as insurer for Eagle, Inc., f/k/a Eagle Asbestos & Packing Co., Inc. and The McCarty Corporation)
   (For Service of Process via the Direct Action Statute L.R.S. 22:655)
   a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

6. **CRANE CO.**
   (sued individually and as successor-in-interest to CHAPMAN VALVE CO.)
   may be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

7. **EAGLE, INC.**
   (Formerly Eagle Asbestos & Packing Co., Inc.)
   a corporation duly organized, created and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in New Orleans, Louisiana and with an agent for service in the state of Louisiana, to-wit: Susan B. Kohn, 1100 Poydras Street, 30th Floor, New Orleans, LA 70163

8. **THE FIDELITY AND CASUALTY COMPANY OF NEW YORK**
   (as insurer of The J. Graves Insulation Company, Inc.)
   (For Service of Process via the Direct Action Statute L.R.S. 22:655)
   a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

9. **FIRST STATE INSURANCE COMPANY**
   (as insurer of The J. Graves Insulation Company, Inc.)
   (For Service of Process via the Direct Action Statute L.R.S. 22:655)
   a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

6

10.   **FITZGERALD CONTRACTORS, L.L.C.**
(f/k/a FITZGERALD PLUMBING AND HEATING COMPANY, INC.)
may be served through its registered agent for service of process, William C.
Kalmach, 333 Texas Street, Suite 1700, Shreveport, LA 71101.

11.   **FOSTER WHEELER ENERGY CORPORATION**
may be served through its registered agent for service of process, CT Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.  This defendant
is being sued as an Equipment Defendant.

12.   **FOSTER WHEELER, LLC**
may be served through its registered agent for service of process, CT Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

13.   **GARLOCK, INC.**
may be served through its registered agent for service of process, CT Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

14.   **GARLOCK SEALING TECHNOLOGIES, LLC**
(individually and as successor-in-interest to GARLOCK, INC.)
may be served through its registered agent for service of process, CT Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

15.   **GENERAL ELECTRIC COMPANY**
may be served through its registered agent for service of process, CT Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

16.   **GEORGIA-PACIFIC, LLC**
(individually and successor-in-interest to BESTWALL GYPSUM COMPANY)
may be served through its registered agent for service of process, CT Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

17.   **HAMM ENTERPRISES, INC.**
(f/k/a BERG MECHANICAL, INC.)
may be served through its registered agent for service of process, Robert B.
Hamm, 531 West 61st Street, Shreveport, LA 71108.

18.   **HIGHLANDS INSURANCE COMPANIES**
(as insurer for The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and
who may be served through the Louisiana Secretary of State

19.   **IMO INDUSTRIES, INC.**
(individually and as successor-in-interest to DELAVAL STEAM TURBINE
COMMPANY)
may be served through its registered agent for service of process, Corporation
Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129.

20.   **INTERNATIONAL PAPER COMPANY**
(individually   and   as   successor-in-interest   to   CHAMPION   PAPER
CORPORATION)
may be served through its registered agent for service of process, CT Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

7

21. **THE J. GRAVES INSULATION COMPANY**
(f/k/a GRAVES-ABER INSULATION COMPANY, INC.)
may be served through its registered agent for service of process, Eddie T. Scott,
3592 Sligo Road, Haughton, LA 71037.

22. **KAISER GYPSUM COMPANY, INC.**
may be served through its registered agent for service of process, Corporation
Service Company, 6500 Harbour Heights Pkwy, Mukiteo, WA 98275.  This

23. **LESLIE CONTROLS, INC.**
a Florida corporation with its principal place of business in the state of Florida,
and may be served **through the Louisiana Long Arm Statute pursuant Article
1261(3) to-wit:** 12501 Telecom Drive, Tampa, FL 33637.

24. **LIBBY, INC.**
an Ohio corporation with its principal place of business in the state of Ohio, and
may be served **through the Louisiana Long Arm Statute pursuant Article
1261(3) to-wit:** 300 Madison Avenue, Toledo, OH 43604.

25. **THE MCCARTY CORPORATION**
(f/k/a MCCARTY-BRANTON, INC.)
may be served through its registered agent for service of process, Paul H. Spaht,
445 North Blvd., Suite 300, Baton Rouge, LA 70802.

26. **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and
who may be served through the Louisiana Secretary of State.

27. **NUTMEG INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and
who may be served through the Louisiana Secretary of State.

28. **PENZOIL-QUAKER STATE COMPANY**
(as successor by merger to PENNZOIL PRODUCTS COMPANY, successor to
ATLAS REFINERY, INC.)
may be served through its registered agent for service of process, CT Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

29. **SAFETY MUTUAL CASUALTY CORPORATION n/k/a SAFETY NATIONAL
CASUALTY CORPORATION**
(as insurer of The Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and
who may be served through the Louisiana Secretary of State.

30. **SCOTTSDALE INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and
who may be served through the Louisiana Secretary of State.

8

31. **UNION CARBIDE CORPORATION**
may be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA, 70808.

32. **UNITED STATES FIDELITY AND GUARANTY**
(as insurer of The J. Graves Insulation, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

33. **WEYERHAUSER COMPANY**
(individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC.)
a Washington corporation with its principal place of business in the state of Washington, and may be served through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit: 33663 Weyerhauser Way South, Federal Way, WA 98063-9777.

34. **ZURICH AMERICAN INSURANCE COMPANY a/k/a and/or f/k/a ZURICH INSURANCE COMPANY**
(as insurer of The J. Graves Insulation Company, Inc.)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State.

9

09/17/2009 10:00 FAX 99053.                O BROOKS VA MED CENTER                    @002

LEWIS,ALTON L        '    . . .            SSN: 439525066
Date Spec taken: Jul 01, 2009              Pathologist:TANIA S ROWLAND MD
Date Spec rec'd: Jul 02, 2009 09:28        Tech: JESSICA E BAGBY
Date  completed: Jul 07, 2009              Accession #: CY 09 748
Submitted by: CHEST PRO CL                 Practitioner:ASKIN UYSAL MD
---------------------------------------------------------------------------
Specimen:
   RIGHT PLEURAL
Brief Clinical History:
   LEWIS, ALTON L is a 71 year old MALE with a clinical history of asbestos
   exposure presents with right pleural effusion


Preoperative Diagnosis:
   right pleural effusion

Operative Findings:
   right pleural effusion

Postoperative Diagnosis:
   right pleural effusion

Description:
   SOURCE OF SPECIMEN: RIGHT PLEURAL

   Received is 1000 mls of cloudy reddish to yellowish fluid.

   1 ThinPrep slide and 1 cell block.

Diagnosis: (Date Spec taken: Jul 01, 2009)
   PLEURAL FLUID, RIGHT, THORACENTESIS, CYTOLOGY (ThinPrep) and
   cell block:
          POSITIVE FOR MALIGNANT CELLS.
          Pending immunohistochemistry to define origin of malignant
          cells.
          T-2Y601, T-Y2150, M-80013

   NOTE: The ThinPrep contains scattered small, three dimensional
         clusters of hyperchromatic, poorly visualized cells.

         The cell block contains numerous three dimensional balls
         of tumor cells, some of which form gland lumens.

         Immunohistochemistry will be performed on the cell block (LMW
         cytokeratin, CEA, TTF-1 and calretinin) at Jackson VAMC and a
         supplementary report will be issued.

   Special stains (Performed on cell block):
          Mucicarmine: Negative

          Controls stained appropriately.

   Q.C. Pathologist: Todd Meredith, MD

   Dr. A. Uysal was notified of the diagnosis on 7/7/09.

   CPT code: 88112
             88305

   TC code:  1

Supplementary Report:
   Date: Jul 17, 2009
          *+* SUPPLEMENTARY REPORT HAS BEEN ADDED/MODIFIED *+*



41

09/17/2009 10:00 FAX 99053.                    0 BROOKS VA MED CENTER                         ☑003

(Added/Last modified: Jul 17, 2009 11:40 signed by ROWLAND,TANIA S)
    IMMUNOHISTOCHEMISTRY (performed at Jackson VAMC on cell block):
            LMW cytokeratin: Strongly positive in tumor
            Calretinin: Positive in tumor
            CEA: Negative
            TTF-1: Negative


    Controls Stained Appropriately.

    Interpretation: The immunostains confirm the mesothelial nature of
                    the tumor.

    Note: The features favor a mesothelioma. Pleural biopsy is
          recommended to confirm whether or not the tumor is invasive.

    Dr. A. Uysal was notified of the results of the immunostains
    on 7/17/09.

 **CT Corporation**

5615 Corporate Blvd.
Suite 400 B
Baton Rouge, LA 70808

225 922 4490 tel
www.ctlegalsolutions.com

October 13, 2009

**RECEIVED**

OCT. 16 2009

SUIT ACCNTG.
19TH JUDICIAL COURT

POSTED

OCT 1 6 2009

Cameron R. Waddell
Waddell Law Firm, LLC
8708 Jefferson Hwy., Suite A,
Baton Rouge, LA 70809

Re: Alton Lewis, Petitioner/Pltf. vs. Atlas Refinery, Inc., et al. including Foster Wheeler, LLC, Dfts.

Case No. 583178  —24

Dear Sir/Madam:

We are herewith returning the Citation, Petition, Exhibits, Motion, Order, Notice which we received regarding the above captioned matter.

Foster Wheeler, LLC is not listed on our records or on the records of the State of LA.

Very truly yours,

Lisa Uttech
Fulfillment Specialist

Log# 515562613

FedEx Tracking# 791243469738

cc:  19th Judicial District Court, Parish of East Baton Rouge
     Clerk of Court,
     P.O. Box 1991,
     Baton Rouge, LA  70821-1991



43

 **CT Corporation**

5615 Corporate Blvd.
Suite 400 B
Baton Rouge, LA 70808

225 922 4490 tel
www.ctlegalsolutions.com

**RECEIVED**

October 13, 2009

OCT 16 2009 **POSTED**

SUIT ACCNTG.
19TH JUDICIAL COURT   OCT 16 2009

Cameron R. Waddell
Waddell Law Firm, LLC
8708 Jefferson Hwy., Suite A,
Baton Rouge, LA 70809

Re: Alton Lewis, Petitioner/Pltf. vs. Atlas Refinery, Inc., et al. including Atlas Refinery, Inc., Dfts.

Case No. 583178 — 24

Dear Sir/Madam:

We are herewith returning the Citation, Petition, Exhibits, Motion, Order, Notice which we received regarding the above captioned matter.

Atlas Refinery, Inc is not listed on our records or on the records of the State of LA.

Very truly yours,

Lisa Uttech
Fulfillment Specialist

Log# 515562619

FedEx Tracking# 791243469738

cc: 19th Judicial District Court, Parish of East Baton Rouge
    Clerk of Court,
    P.O. Box 1991,
    Baton Rouge, LA 70821-1991



44

 **CT Corporation**

5615 Corporate Blvd.
Suite 400 B
Baton Rouge, LA 70808

225 922 4490 tel
www.ctlegalsolutions.com

**RECEIVED**

October 13, 2009

OCT 16 2009

SUIT ACCNTG.
19TH JUDICIAL COURT

**POSTED**

OCT 19 2009

Cameron R. Waddell
Waddell Law Firm, LLC
8708 Jefferson Hwy., Suite A,
Baton Rouge, LA 70809

Re:  Alton Lewis, Petitioner/Pltf. vs. Atlas Refinery, Inc., et al. including CBS Corporation, etc., Dfts.

Case No.  583178   -24

Dear Sir/Madam:

Process in the above referenced case was attempted upon C T Corporation System as the purported agent for service of process for CBS Corporation

CBS Corporation is inactive on the records of the State LA. Our services for this entity have also been discontinued for more than five (5) years and, as such, we no longer maintain an active record of this entity. Since we have no address to which to forward this process, we are returning it to you for further disposition.

Very truly yours,

Lisa Uttech
Fulfillment Specialist

Log# 515562600

FedEx Tracking# 791243469738

cc:  19th Judicial District Court, Parish of East Baton Rouge
     Clerk of Court,
     P.O. Box 1991,
     Baton Rouge, LA  70821-1991

POSTED

OCT 19 2009



SECRETARY OF STATE
P.O. BOX 94125
BATON ROUGE, LA  70804-9125



7010 0290 0003 5260 7138



UNITED STATES POSTAGE
PITNEY BOWES

Priority Mail
ComBasPrice

02 1M
0004283360      FEB 22 201
MAILED FROM ZIP CODE 7080

$ 10.63



AIR & LIQUID SYSTEM, INC.
C/O C T CORPORATIO SYSTEM
116 PINE STREET, STE. 320
HARRISBURG, PA 17101

✎JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Alton Lewis

**DEFENDANTS**
Atlas Refinery, Inc., et al

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Waddell Law Firm, LLC,8708 Jefferson Highway,Suite A,Baton Rouge, LA 70809; Water & Kraus, LLP,3219 McKinney Avenue,Dallas, TX 75204

Attorneys (If Known)
Wells, Moore, Simmons & Hubbard, PLLC (Atty for Buffalo Pumps, Inc.), 4450 Old Canton Road, Suite 200, Jackson, MS  392150-1970

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff
☒ 3   Federal Question (U.S. Government Not a Party)
☐ 2   U.S. Government Defendant
☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USCA Section 1442
Brief description of cause:
Federal Officer

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
03/28/2011
SIGNATURE OF ATTORNEY OF RECORD
s/ Susan D. McNamara   *Susan D McN*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____