ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:11-cv-01506-SI

Pique et al., v. General Electric Company, et al.,              Date Filed: 03/29/2011
Assigned to: Hon. Susan Illston                                Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Asbestos Litigation                   Nature of Suit: 368 P.I. : Asbestos
                                                               Jurisdiction: Diversity

## Plaintiff

**Rosita Pique**                              represented by **Alan R. Brayton**
*as Wrongful Death Heir, and as*                              Brayton Purcell LLP
*Successor-in-Interest to Godofredo*                          222 Rush Landing Road
*Pique deceased*                                              P.O. Box 6169
                                                             Novato, CA 94948-6169
                                                             415-898-1555
                                                             Fax: 415-898-1247
                                                             *ATTORNEY TO BE NOTICED*

                                                             **David R. Donadio**
                                                             Brayton Purcell LLP
                                                             222 Rush Landing Road
                                                             Novato, CA 94948-6169
                                                             (415) 898-1555
                                                             Fax: 415-898-1247
                                                             Email: DDonadio@braytonlaw.com
                                                             *ATTORNEY TO BE NOTICED*

## Plaintiff

**Marlene Sanchez**                           represented by **Alan R. Brayton**
*as Legal Heirs of Godofredo Pique,*                         (See above for address)
*deceased,*                                                  *ATTORNEY TO BE NOTICED*

                                                             **David R. Donadio**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

## Plaintiff

**Frederick Sanchez**                         represented by **Alan R. Brayton**
*as Legal Heir of Godofredo Pique,*                          (See above for address)
*deceased,*                                                  *ATTORNEY TO BE NOTICED*

                                                             **David R. Donadio**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**United States Steel Corporation
(FKA USX Corporation)**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2011 | | CASE DESIGNATED for Electronic Filing. (ys, COURT STAFF) (Filed on 3/29/2011) (Entered: 03/30/2011) |
| 03/29/2011 | 6 | Summons Issued as to General Electric Company, United States Steel Corporation (FKA USX Corporation). (ys, COURT STAFF) (Filed on 3/29/2011) (Entered: 03/30/2011) |
| 03/29/2011 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 7/1/2011. Case Management Conference set for 7/8/2011 02:30 PM. (Attachments: # 1 standing orders and cmc order)(ys, COURT STAFF) (Filed on 3/29/2011) (Entered: 03/30/2011) |
| 03/29/2011 | 4 | NOTICE of Tag-Along Action by Rosita Pique, Frederick Sanchez, Marlene Sanchez (ys, COURT STAFF) (Filed on 3/29/2011) (Entered: 03/30/2011) |
| 03/29/2011 | 3 | Certificate of Interested Entities or Persons by Rosita Pique, Frederick Sanchez, Marlene Sanchez (ys, COURT STAFF) (Filed on 3/29/2011) (Entered: 03/30/2011) |
| 03/29/2011 | 2 | Declination to Proceed Before a U.S. Magistrate Judge by Rosita Pique, Frederick Sanchez, Marlene Sanchez. (ys, COURT STAFF) (Filed on 3/29/2011) (Entered: 03/30/2011) |
| 03/29/2011 | 1 | COMPLAINT (summons issued); against General Electric Company, United States Steel Corporation (FKA USX Corporation) ( Filing fee $ 350, receipt number 34611058032.). Filed byMarlene Sanchez, Rosita Pique, Frederick Sanchez. (ys, COURT STAFF) (Filed on 3/29/2011) (Additional attachment(s) added on 3/30/2011: # 1 Civil Cover Sheet) (ys, COURT STAFF). (Additional attachment(s) added on 3/30/2011: # 2 ERRONEOUS ATTACHMENT (ys, COURT STAFF). (Entered: 03/30/2011) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 03/31/2011 12:51:16 | | |
| PACER Login: bp0355 | Client Code: | |
| Description: Docket Report | Search Criteria: | 3:11-cv-01506-SI |
| Billable Pages: 2 | Cost: | 0.16 |



1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10             **SAN FRANCISCO DIVISION**

11  ROSITA PIQUE, as Wrongful Death Heir,  )
    and as Successor-in-Interest to        )
12  GODOFREDO PIQUE, Deceased, and         )
    MARLENE SANCHEZ, GREGORY              )    COMPLAINT FOR SURVIVAL,
13  PIQUE, FREDERICK PIQUE, as Legal       )    WRONGFUL DEATH - ASBESTOS;
    Heirs of GODOFREDO PIQUE, Deceased,   )    DEMAND FOR JURY TRIAL
14                                          )
                                           )
15             Plaintiffs,                 )
                                           )
16  vs.                                    )
                                           )
17  GENERAL ELECTRIC COMPANY,              )
    UNITED STATES STEEL                    )
18  CORPORATION (FKA USX                   )
    CORPORATION),                          )
19             Defendants.                 )

20

21                              **I.**

22                           **PARTIES**

23      1.      Plaintiffs in this action are the above-captioned successor-in-interest to, or the

24  personal representative of the estate of Decedent; and the personal representatives on behalf of

25  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

26  "Plaintiffs."

27      2.      The person who sustained asbestos-related lung injuries and death as a result of

28  their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

*(left margin, vertical text)* BRAYTON❖PURCELL LLP  ATTORNEYS AT LAW  222 RUSH LANDING ROAD  P O BOX 6169  NOVATO, CALIFORNIA 94948-6169  (415) 898-1555

1   hereinafter "Decedent" is, with the date of death: GODOFREDO PIQUE died March 30, 2010.

2   ROSITA PIQUE is the spouse of GODOFREDO PIQUE and is hereinafter referred to as

3   "surviving spouse."

4       3.     Decedent sustained an asbestos-related lung disease and death by precisely the

5   following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

6   containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related

7   diseases is explained on **Exhibit A**, attached to plaintiffs' complaint and incorporated by

8   reference herein.

9       4.     All of plaintiffs' claims arise out of a similar series of occurrences: repeated

10   exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

11   and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period

12   of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,

13   resulting in cumulative, progressive, incurable lung diseases.

14       5.     Each plaintiff claims damages for an asbestos-related disease arising from an

15   identical series of occurrences not dependent on Decedent's worksite but on the fact that

16   asbestos-containing products, when handled in the manner in which they were intended, released

17   harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The

18   allegations of plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature

19   of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are

20   all identical.

21       6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein

22   mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

23   proprietorships and/or other business entities organized and existing under and by virtue of the

24   laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

25   said defendants, and each of them, were and are authorized to do and are doing business in the

26   State of California, and that said defendants have regularly conducted business in the State of

27   California.

28   ///

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.    Jurisdiction: Plaintiff ROSITA PIQUE is a citizen of the State of California.
Plaintiff(s) MARLENE SANCHEZ, GREGORY PIQUE, FREDERICK PIQUE are citizens of
the following states, respectively: California.

Defendants are each corporations incorporated under the laws of and having its principal
places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | Connecticut |
| UNITED STATES STEEL CORPORATION (FKA USX CORPORATION) | Pennsylvania |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action
between citizens of different states in which the matter in controversy exceeds, exclusive of costs
and interest, seventy-five thousand dollars.

8.    Venue / Intradistrict Assignment.  Venue is proper in the Northern District of
California and assignment to the San Francisco Division of said district is proper as a substantial
part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred
within the County of San Francisco, California, and Defendants are subject to personal
jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF ROSITA PIQUE COMPLAINS OF DEFENDANTS GENERAL
ELECTRIC COMPANY, UNITED STATES STEEL CORPORATION (FKA USX
CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A
CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

///

1        9.     At all times herein mentioned, each of the named defendants was the successor,

2 successor in business, successor in product line or a portion thereof, assign, predecessor,

3 predecessor in business, predecessor in product line or a portion thereof, parent, holding

4 company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

5 or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

6 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

7 supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

8 representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

9 warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

10 otherwise directing and/or facilitating the use of, or advertising a certain product, namely

11 asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

12 called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

13 conduct of each successor, successor in business, successor in product line or a portion thereof,

14 assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

15 venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

16 entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

17 designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

18 sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

19 rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

20 products containing asbestos. The following defendants, and each of them, are liable for the acts

21 of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

22 destruction of plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each

23 of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

24 ENTITY; defendants, and each of them, caused the destruction of plaintiffs' remedy against each

25 such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

26 role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

27 originally attached to each such ALTERNATE ENTITY:

28 ///

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| UNITED STATES STEEL CORPORATION (FKA USX CORPORATION) | USX CORPORATION |
| | CONSOLIDATED WESTERN PIPE & STEEL |
| | CONSOLIDATED WESTERN STEEL CORPORATION |
| | CONSOLIDATED STEEL SHIPYARD |
| | WESTERN PIPE & STEEL |
| | CONSOLIDATED SHIPBUILDING CORP. |
| | UNITED STATES STEEL, LLC |
| | U.S. STEEL SUPPLY |
| | U.S. STEEL COMPANY |
| | COLUMBIA STEEL COMPANY |
| | AMERICAN BRIDGE & IRON |
| | CARNEGIE-ILLINOIS STEEL CORPORATION |
| | FEDERAL SHIPBUILDING |
| | AMERICAN TRISTAR |
| | OIL WELL SERVICING COMPANIES |
| | OIL WELL SUPPLY COMPANY |
| | MARATHON OIL CORPORATION |
| | COLUMBIA-GENEVA STEEL DIVISION |

10. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,

1   installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
2   rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,
3   and other products containing asbestos, in that said products caused personal injuries to users,
4   consumers, workers, bystanders and others, including the Decedent herein, (hereinafter
5   collectively called "exposed persons"), while being used in a manner that was reasonably
6   foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by
7   "exposed persons."

8        12.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
9   exercise due care in the pursuance of the activities mentioned above and defendants, and each of
10  them, breached said duty of due care.

11       13.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
12  have known, and intended that the aforementioned asbestos and products containing asbestos and
13  related products and equipment, would be transported by truck, rail, ship, and other common
14  carriers, that in the shipping process the products would break, crumble, or be otherwise
15  damaged; and/or that such products would be used for insulation, construction, plastering,
16  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
17  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
18  breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the
19  release of airborne asbestos fibers, and that through such foreseeable use and/or handling
20  "exposed persons," including Decedent herein, would use or be in proximity to and exposed to
21  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
22  persons working in proximity to said products, directly or through reentrainment.

23       14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
24  containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
25  exposure to asbestos and asbestos-containing products is on current information as set forth at
26  various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
27  herein.

28  ///

1       15.    As a direct and proximate result of the acts, omissions, and conduct of the

2 defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure

3 to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

4 or harm to the Decedent as set forth in **Exhibit A**, attached to plaintiffs' complaint and

5 incorporated by reference herein.

6       16.    Plaintiffs are informed and believe, and thereon allege, that progressive lung

7 disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

8 without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

9 asbestos and asbestos-containing products over a period of time.

10       17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-

11 containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-

12 containing products presented any risk of injury and/or disease.

13       18.    As a direct and proximate result of the aforesaid conduct of the defendants, their

14 "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,

15 nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

16 amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this

17 complaint accordingly when the true and exact cost thereof is ascertained.

18       19.    As a direct and proximate result of the aforesaid conduct of the defendants, their

19 ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value

20 of medial care provided by Decedent's family members measured by, inter alia, the costs

21 associated with the hiring a registered nurse, home hospice, or other service provider, the true

22 and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to

23 amend this complaint accordingly when the true and exact costs are known or at time of trial.

24       20.    As a direct and proximate result of the aforesaid conduct of defendants, their

25 ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person,

26 body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and

27 related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,

28 ///

1 from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven
2 at trial.

3    21.    As a further direct and proximate result of the said conduct of the defendants,
4 their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,
5 entitlements, wages, profits, and commissions, a diminishment of earning potential, and other
6 pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is
7 requested to amend this complaint to conform to proof at the time of trial.

8    22.    As a further direct and proximate result of the said conduct of the defendants,
9 their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-
10 containing products caused severe and permanent injury to Decedent, and ultimately Decedent
11 died on the date previously stated herein.

12    23.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
13 directors and managing agents participated in, authorized, expressly and impliedly ratified, and
14 had full knowledge of, or should have known of, each of the acts set forth herein.

15    24.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the
16 fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
17 and each defendant's officers, directors, and managing agents participated in, authorized,
18 expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
19 each of their ALTERNATE ENTITIES as set forth herein.

20    25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
21 and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in
22 conscious or reckless disregard and indifference to the safety, health, and rights of "exposed
23 persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive
24 damages against said defendants.

25    WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and
26 each of them, as hereinafter set forth.

27 ///

28 ///

1

2

### SECOND CAUSE OF ACTION
(Products Liability - Survival)

3      PLAINTIFF ROSITA PIQUE AS SUCCESSOR-IN-INTEREST TO THE DECEDENT

4 GODOFREDO PIQUE COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,

5 UNITED STATES STEEL CORPORATION (FKA USX CORPORATION), THEIR

6 "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE,

7 FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY

8 (SURVIVAL), COMPLAIN AS FOLLOWS:

9     26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

10 paragraph of the First Cause of Action herein.

11     27.    Defendants, their "alternate entities," and each of them, knew and intended that

12 the above-referenced asbestos and asbestos-containing products would be used by the purchaser

13 or user without inspection for defects therein or in any of their component parts and without

14 knowledge of the hazards involved in such use.

15     28.    Said asbestos and asbestos-containing products were defective and unsafe for their

16 intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

17 and/or death. The defect existed in the said products at the time they left the possession of

18 defendants, their ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause

19 personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

20 persons," including Decedent herein, while being used in a reasonably foreseeable manner,

21 thereby rendering the same defective, unsafe, and dangerous for use.

22     29.    "Exposed persons" did not know of the substantial danger of using said products.

23 Said dangers were not readily recognizable by "exposed persons." Said defendants, their

24 ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

25 which Decedent and others similarly situated were exposed.

26     30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

27 to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

28 sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

1  promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
2  marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
3  and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
4  did so with conscious disregard for the safety of "exposed persons" who came in contact with
5  said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
6  ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
7  death resulting from exposure to asbestos or asbestos-containing products, including, but not
8  limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part,
9  from scientific studies performed by, at the request of, or with the assistance of, said defendants,
10  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
11  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

12      31.     On or before 1930, and thereafter, said defendants, their ALTERNATE
13  ENTITIES and each of them, were aware that members of the general public and other "exposed
14  persons," who would come in contact with their asbestos and asbestos-containing products, had
15  no knowledge or information indicating that asbestos or asbestos-containing products could
16  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
17  members of the general public and other "exposed persons," who came in contact with asbestos
18  and asbestos-containing products, would assume, and in fact did assume, that exposure to
19  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
20  hazardous to health and human life.

21      32.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
22  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
23  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
24  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
25  asbestos-containing products without attempting to protect "exposed persons" from, or warn
26  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
27  asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn
28  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

1  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

2  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

3  and suppressed said knowledge from "exposed persons" and members of the general public, thus

4  impliedly representing to "exposed persons" and members of the general public that asbestos and

5  asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their

6  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

7  representations with the knowledge of the falsity of said implied representations.

8       33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

9  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

10  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

11  manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

12  sale, inspection, installation, contracting for installation, repair, marketing, warranting,

13  rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

14  directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

15  products. In pursuance of said financial motivation, said defendants, their ALTERNATE

16  ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

17  were consciously willing and intended to permit asbestos and asbestos-containing products to

18  cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

19  including Decedent.

20       34.    Plaintiffs allege that the aforementioned defendants, their ALTERNATE

21  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

22  products, to be safe for their intended use, but that their asbestos and asbestos-containing

23  products, created an unreasonable risk of bodily harm to exposed persons.

24       35.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

25  their representations, lack of warnings, and implied warranties of fitness of asbestos and their

26  asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent

27  suffered permanent injury and death as alleged herein.

28  ///

1    36.    As a direct and proximate result of the actions and conduct outlined herein,

2    Decedent have suffered the injuries and damages herein alleged.

3    WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and

4    each of them, as hereinafter set forth.

5    <center>THIRD CAUSE OF ACTION<br>(Negligence - Wrongful Death)</center>

6

7    PLAINTIFF ROSITA PIQUE, AS WRONGFUL DEATH HEIR, AND AS

8    SUCCESSOR-IN-INTEREST TO GODOFREDO PIQUE DECEASED, AND PLAINTIFF(S)

9    MARLENE SANCHEZ, GREGORY PIQUE, FREDERICK PIQUE AS LEGAL HEIR(S) OF

10   DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, UNITED

11   STATES STEEL CORPORATION (FKA USX CORPORATION), THEIR "ALTERNATE

12   ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND

13   DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN

14   AS FOLLOWS:

15   37.    Plaintiffs incorporate by reference each paragraph contained within the First

16   Cause of Action as though fully set forth herein.

17   38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth

18   above.

19   39.    The individuals set forth as heirs constitute all of the surviving heirs of the

20   Decedent.

21   40.    As a direct and proximate result of the conduct of the defendants, their

22   ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

23   containing products caused Decedent to develop diseases from which condition Decedent died.

24   Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

25   filing the complaint.

26   41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the

27   surviving spouse.

28   ///

1       42.    As a direct and proximate result of the conduct of defendants, and each of them,

2  and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

3  of care, society, comfort, attention, services, and support of Decedent all to the damage of

4  Decedent's heirs.

5       43.    As a further direct and proximate result of the conduct of defendants, and each of

6  them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount

7  currently not ascertained.

8       WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as

9  hereinafter set forth.

10
### FOURTH  CAUSE OF ACTION
(Products Liability - Wrongful Death)

11

12       PLAINTIFF ROSITA PIQUE, AS WRONGFUL DEATH HEIR, AND AS

13  SUCCESSOR-IN-INTEREST TO GODOFREDO PIQUE DECEASED, AND PLAINTIFF(S)

14  MARLENE SANCHEZ, GREGORY PIQUE, FREDERICK PIQUE AS LEGAL HEIR(S) OF

15  DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, UNITED

16  STATES STEEL CORPORATION (FKA USX CORPORATION), THEIR "ALTERNATE

17  ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND

18  DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH),

19  COMPLAIN AS FOLLOWS:

20       44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

21  paragraph of the First, Second and Third Causes of Action herein.

22       45.    As a direct and proximate result of the conduct of defendants, and each of them,

23  Decedent's heirs have sustained the injuries and damages previously alleged.

24       WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

25  each of them, as hereinafter set forth.

26  ///

27  ///

28  ///

## IV.

## DAMAGES AND PRAYER

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

(a)    For plaintiffs' general damages according to proof;

(b)    For plaintiffs' loss of income, wages and earning potential according to proof;

(c)    For plaintiffs' medical and related expenses according to proof;

(d)    For plaintiffs' cost of suit herein;

(e)    For exemplary or punitive damages according to proof;

(f)    For damages for fraud according to proof; and

(g)    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: 3/27/11                    BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated: 3/27/11                    BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

K:\Injured\109505\FED\PLD\cmp fed (wd).wpd           14
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1        EXHIBIT A

2 Decedent: GODOFREDO PIQUE, Deceased.

3

4 Decedent's injuries: Plaintiff was diagnosed with lung cancer on or about February 2008.

5

6 Decedent died on March 30, 2010.

7

8 Retirement Status: The injured party stopped working on or about February 2008 due his

9 asbestos-related disease.

10

11 Defendants: Plaintiffs contend that the asbestos-containing products to which Decedent was or

12 may have been exposed to were manufactured, supplied, distributed, installed and/or contracted

13 for by defendants and each of them. Decedent's exposure to asbestos occurred at the following

14 times and places, and involved exposure to dust created by the contractors and the products of the

15 entities listed below. The exposure includes, but is not limited, to the following presently known

16 contractors and the manufacturers and distributors of asbestos-containing products:

17

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Manila Technical School, Manila, Philippines | Manila Technical School, Manila, Philippines | Mechanic (Trainee) | 9/1962-6/1963 |

20 Job Duties: Decedent completed training in repair of vehicles. Plaintiff is currently unaware if decedent was exposed to asbestos during this training.

21

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Inter-Island Construction Corporation 127 Ayala Avenue Makati, Rizal, Philippines | Inter-Island Construction Corporation 127 Ayala Avenue Makati, Rizal, Philippines Shop | Heavy Equipment Mechanic | 6/14/62-3/30/64 |

26 Job Duties: Decedent worked as a heavy equipment mechanic. Decedent performed repair and

27 maintenance work on bulldozers, cranes, loaders, backhoes, mixer trucks, dump trucks and small engines.

        When working on cranes, decedent removed and installed engine gaskets and brake bands

28 up to three feet long. Decedent repaired four or five bulldozers, removing and replacing cable-

1   winch brakes. Decedent was present when other mechanics removed and replaced bulldozer
    clutches.
2            When repairing dump trucks, decedent removed and replaced brakes and was present
    when other mechanics did the same. Decedent used compressed air to clean out the brake
3   compartments. Decedent arced the replacement brakes. Decedent re-lined the brake shoes with
    BENDIX (HONEYWELL INTERNATIONAL) brake linings, which he identified by the name
4   on the part. Decedent filed the BENDIX (HONEYWELL INTERNATIONAL) replacement
    brake linings. Decedent removed gaskets from the axle shaft, water pumps and thermostat
5   housing of the trucks. On various vehicles, decedent removed and replaced BORG-WARNER
    (BORGWARNER MORSE TEC, INC.) clutch assemblies, which he identified by the name
6   stamped on the clutch plate. When installing the replacement clutches, decedent used sand paper
    to remove glaze from the clutch surfaces. Decedent assisted and worked in close proximity to
7   other mechanics performing the same work.
             Decedent removed and installed gaskets in up to 20 portable engines.
8            Decedent was present when other mechanics removed and replaced brakes, clutches and
    engine gaskets on mixer trucks. Decedent was present when other mechanics removed and
9   replaced gaskets on loaders.
             Decedent recalled that Francisco Cacho, address presently unknown, owned Inter-Island
10  Construction Corporation. Decedent recalled foreman John Magat, address unknown; and the
    following co-workers: his father, Norberto Pique, deceased; Francisco Gallardo, address
11  unknown; Arsenio Melendes, address presently unknown; Rolando Melendes, address presently
    unknown; and Mr. Mendoza, address presently unknown. Plaintiff currently contends decedent
12  was exposed to asbestos during this employment.

13
| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
14
15 | E. E. Black, Ltd. Honolulu, HI | The Dole Project General Santos City Cotabato Province, Philippines | Heavy Equipment Mechanic | 3/17/64-9/5/65 |
16

17  Job Duties:  Decedent worked as a heavy equipment mechanic.  Decedent performed repair and
    maintenance work on, loaders/backhoes, mixer trucks, dump trucks and small engines.
18           Decedent removed and replaced clutches on loader/backhoes and mixer trucks and was in
    proximity to mechanics performing the same work. Decedent and other mechanics sanded the
19  replacement clutches to remove the glaze and used compressed air to clean the clutch assembly.
    Decedent was in close proximity to mechanics who were removing and replacing  clutch work on
20  bulldozers and dump trucks, installing BORG-WARNER (BORGWARNER MORSE TEC,
    INC.) replacement clutches on dump trucks.
21           Decedent removed BORG-WARNER (BORGWARNER MORSE TEC, INC.) clutch
    assemblies, identifying them by the lettering on the clutch plate. Decedent used compressed air to
22  clean out the clutch areas.  Decedent sanded and roughed up the BORG-WARNER
    (BORGWARNER MORSE TEC, INC.) replacement clutches prior to installation.
23           Decedent removed and replaced brake shoes on dump trucks using an air hose to clean
    out the brake assembly. Decedent re-lined brake shoes on dump trucks with BENDIX
24  (HONEYWELL INTERNATIONAL, INC.) brake linings.  Decedent filed and sanded the
    BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brake linings.
25           Decedent removed and installed CUMMINS (CUMMINS, INC.) engine gaskets on dump
    trucks and worked in proximity to mechanics who were performing the same work. Decedent
26  removed and replaced gaskets on small, portable engines that were used to power equipment and
    was in proximity to mechanics performing the same work. Decedent worked in proximity to
27  mechanics who were removing and replacing gaskets on loader/backhoes and mixer trucks.
             Decedent was present when others removed and replaced clutches and brakes onmixer
28  trucks.

1   Decedent recalled supervisor Caesar Mediaoch, address unknown; and the following co-
workers: his father, Norberto Pique, deceased; Mr. Mendoza, Philippines; Francisco Gallardo,
2   address unknown. Plaintiff currently contends decedent was exposed to asbestos during this
employment.

3

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Kurt Siebert<br>Arguello Shell<br>3900 California Street<br>San Francisco, CA | Arguello Shell<br>3900 California Street<br>San Francisco, CA | Gas Station Attendant | 10/1967-6/1968 |

Job Duties: Decedent worked as a gas station attendant. Decedent changed oil and pumped gas.
Decedent performed brake checks. Decedent helped mechanics remove wheels. Decedent worked
in close proximity to mechanics who were removing old brake shoes and cleaning the brake
drums with compressed air. Decedent was in close proximity when mechanics sanded and filed
BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brake linings. Decedent
helped mechanics install replacement brake parts. Decedent cleaned up brake dust and debris.
Decedent recalled the following co-worker: John Savory, San Francisco, California. Plaintiff
currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Training Center<br>San Diego, CA | Trainee | 5/6/1968-<br>7/18/1968 |
| | BRISTER (DER-327),<br>Pearl Harbor Naval<br>Shipyard, Honolulu, HI | Cook | 8/12/1968-<br>9/12/1968 |
| | VANCE (DER-387),<br>Pearl Harbor Naval<br>Shipyard, Honolulu, HI | Boiler Tender<br>(Trainee) | 9/12/68- 10/10/69 |
| | VANCE (DER-387),<br>Naval Repair Facility<br>Sasebo, Japan;<br>Vietnam | | |
| | VANCE (DER-387),<br>Mare Island Naval<br>Shipyard, Vallejo, CA | | |
| | SAINT PAUL (CA-73)<br>Naval Repair Facility<br>North Island,<br>San Diego, CA | Boiler Tender | 11/11/1969 -<br>2/2/1970 |

Job Duties: On various ships, decedent repaired and maintainted boilers, pumps, valves, steam
traps and forced draft blowers in the fire and boiler rooms.
    On the BRISTER, decedent worked in the galley preparing food. Decedent visited the fire
room to prepare for fireman's duties on his next ship. Decedent was in proximity to machinists
who were repairing the main propulsion diesel engines. Decedent recalled working under
Commanding officer Seiler and Lieutenant Fulton, addresses unknown.

1    While the VANCE was in dry dock in Sasebo, Japan, and at various ports, decedent
     worked in the main control department of the fire room, inspecting and cleaning tubes in two
2    boilers that were part of the ship's drinking water system. Decedent removed and replaced
     exterior block insulation to gain access. Decedent removed boiler gaskets, using a scraper, and
3    installed new ones, including VICTOR (DANA COMPANIES, LLC (FKA DANA
     CORPORATION)) gaskets approximately three feet in diameter. Decedent worked in close
4    proximity to other boiler tenders who were performing the same work, including his supervisor
     First Class Petty Officer Koonz. Decedent worked in proximity to pipefitters, including Officer
5    Koonz, who were removing and replacing pipe insulation. Decedent recalled First Class Petty
     Officers Olynger and Keller, addresses unknown. In the main power compartment of the fire
6    room, decedent worked in proximity to machinists who were repairing the main propulsion diesel
     engines. Decedent worked in proximity to machinists in the aft engine room who were repairing
7    two valves at least a foot wide, removing and replacing gaskets. Decedent was in proximity to
     machinists who were removing, cutting and installing packing in various valves.
8        While the VANCE was at Mare Island Naval Shipyard, decedent took part in
     decommissioning the ship. Decedent removed pipe insulation and exterior insulation from
9    boilers and other equipment and worked in proximity to others performing the same work.
         On the SAINT PAUL, decedent participated in the decommissioning of the ship.
10   Decedent worked in the fire room removing insulation from pipes and the exterior of boilers and
     other equipment. Decedent removed burners from the front of the boilers. Decedent worked in
11   proximity to others performing the same work.
         Plaintiff currently contends decedent was exposed to asbestos during this employment.
12

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Clifford F. Andrews Cliff Andrews Shell 318 S. Livermore Livermore, CA | Cliff Andrews Shell San Francisco, CA | Gas Station Attendant | 10/1969-3/1970 |

16

17   Job Duties: Decedent changed oil, pumped gas and checked brakes, removing wheels. Decedent
     helped mechanics, including Danillo Salonga, San Francisco, California, who were removing and
     replacing brake parts. Decedent was present when mechanics sanded, filed and installed
18   BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brake parts. Decedent
     cleaned and swept up brake dust and debris. Decedent recalled co-worker John Savory, San
19   Francisco, California. Plaintiff currently contends decedent was exposed to asbestos during this
     employment.
20

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Don & John Batbie Lube-Rite, 36 Gorham Street, San Francisco, CA, later known as: | Sunset Scavenger Co. San Francisco, CA Shop | Lube Man | 7/1970-6/1972 |
| Lube-Rite Inc. 216 Baden Avenue So. San Francisco, CA | | | 1/1972-9/1973 |

26

27   Job Duties: Decedent inspected all the moving parts of Sunset Scavenger's garbage trucks,
     checked oil and changed oil filters. Decedent was present when mechanics from Sunset
     Scavenger Company performed brake work, removing and replacing brake assemblies and using
28   an air hose to clean the brake compartments. Decedent saw boxes of BENDIX (HONEYWELL
     INTERNATIONAL, INC.) replacement brakes. Decedent was present when mechanics from

K:\In\ured\109505\FED\PLD\cmp fed (wd).wpd            19

1  Sunset Scavenger Company performed engine exhaust and muffler work, removing and replacing gaskets.

2  Decedent was a member of the Teamsters Union, Local 665, San Francisco, California. Decedent recalled supervisor and company co-owner John Batbie, San Francisco, California;

3  company co-owner Leonardo Steffanelli, address currently unknown; and co-worker Mr. Bautista, address currently unknown. Plaintiff currently contends decedent was exposed to

4  asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Burlingame Country Club<br>80 New Place Road<br>Hillsborough, CA | Burlingame Country Club,<br>80 New Place Road<br>Hillsborough, CA | Waiter | 7/1970-9/1970;<br>7/1971-12/1971;<br>4/1973-6/1973<br>(Summers) |

9  Job Duties: Decedent served food and drinks to customers. Plaintiff is currently unaware if
10  decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| California Hyatt Corp.<br>200 W. Madison<br>Chicago, IL | Hyatt Regency,<br>Market Street and<br>The Embarcadero,<br>San Francisco, CA | Handyman | 4/1973-6/1973<br>(Approx. 1 week) |

14  Job Duties: Decedent performed such minor maintenance as changing light bulbs. Plaintiff is
15  currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Alltrans Express USA, Inc.<br>10407 Centurion Pkwy N.<br>Jacksonville, FL | Alltrans Express USA, Inc.,<br>San Francisco, CA | Tire Changer | 7/1973-9/1974 |

19  Job Duties: Decedent washed and refueled vehicles and changed flat tires. Decedent was present
20  when mechanics removed and replaced brakes and clutches on tractor trucks and truck trailers. Decedent was present when mechanics installed BENDIX (HONEYWELL INTERNATIONAL,
21  INC.) replacement brakes, sanding them prior to installation. Decedent was present when mechanics repaired engines on trailer trucks and furniture trucks, removing and replacing
22  gaskets, including head cylinder gaskets. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| F J Burns Draying<br>640 Cesar Chavez<br>San Francisco, CA | F J Burns Draying<br>640 Cesar Chavez<br>San Francisco, CA | Tire Changer | 7/1973-9/1973 |

27  Job Duties: Decedent washed and refueled vehicles and changed flat tires. Decedent was present
28  when mechanics removed and replaced the brakes on at least one tractor truck. Decedent did not recall the names of any supervisors or coworkers. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Thompson Container Corp. Thompson Aerospace 232 S. Orange Avenue Brea, CA | San Francisco International Airport, San Francisco, CA, Thompson Aerospace building | Laborer | 7/1974-9/1974 (Approx. 1 week) |

Job Duties: Decedent inspected aircraft tires. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Sea-Land Services, Inc, Oakland, CA | Sea-Land Services, Inc, Port of Oakland, Oakland, CA, Shop | Heavy Equipment Operator | 10/1974-1979 |

Job Duties: Decedent worked in the container repair and power shops using a forklift to transport containers. Decedent changed tires on truck tractors and trailers, using compressed air to clean the tire compartments.
    In both the power and container repair shops, decedent worked in proximity to mechanics, including Mitchell Cuomo, Richmond, California, and Patrick Martin, Richmond or Antioch, California, who were removing and replacing brakes, clutches and engine gaskets on trailers.
    In the power shop, decedent worked in proximity to mechanics who were removing and replacing clutches and overhauling engines, removing CUMMINS (CUMMINS, INC.) engine gaskets and installing new ones.
    Decedent cleaned up BENDIX (HONEYWELL INTERNATIONAL) brake shoe assemblies that had been removed and thrown into a pile by other mechanics.
    Decedent worked out of Teamsters Local 78, Oakland, California. Decedent recalled the following co-workers: Sonny Willkom, San Leandro, California; Johnny Moore, Oakland, California; Joe Lewis, Oakland, California; and Joe Horne, address currently unknown. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| San Mateo Information Service Center U.S. Postal Service Washington, D.C. | San Mateo Information Service Center, San Mateo, CA | Clerk | 1978-79 |

Job Duties: Decedent checked undeliverable mail for one season. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| United Parcel Service, Inc. 55 Glenlake Pkwy NE Atlanta, GA | United Parcel Service 8400 Pardee Drive Oakland, CA Shop | Mechanic | 1978-1988 |

1  Job Duties:  Decedent maintained and repaired a fleet of 36 delivery trucks for the Hayward
   Center, as well as a few tractor trailers. Decedent inspected, removed and replaced brakes,
2  clutches and engine gaskets. Decedent worked in close proximity to and sometimes assisted other
   mechanics, including Adolf Mello, Concord, California, who were performing the same work.
3  Decedent maintained and reviewed vehicle maintenance records which identified the brands of
   brakes, clutches and engine gaskets removed and replaced.
4          Decedent inspected, removed and replaced brake assemblies on a daily basis, performing
   more than 100 brake jobs during this employment. Brakes on the UPS delivery trucks were
5  scheduled to be changed every 3,000 miles. Decedent and his co-workers removed BENDIX
   (HONEYWELL INTERNATIONAL, INC.) brake shoes and BENDIX (HONEYWELL
6  INTERNATIONAL, INC.) brake linings on delivery trucks. Decedent saw boxes of BENDIX
   (HONEYWELL INTERNATIONAL, INC.) replacement brake parts in the UPS supply room and
7  the name BENDIX on brake shoes being removed. Decedent used compressed air to clean out the
   brake compartments before installing the replacement brake assemblies.  Decedent installed, filed
8  and sanded BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brake linings.
   Decedent removed and replaced BENDIX (HONEYWELL INTERNATIONAL, INC.) brake
9  drum assemblies on trailers.
           Decedent removed and installed BORG-WARNER (BORG-WARNER CORPORATION
10 BY ITS SUCCESSOR IN INTEREST, BORGWARNER MORSE TEC INC.) clutch assemblies
   on delivery trucks.  Decedent used compressed air to clean out the clutch assembly area before
11 installing the replacement clutch assembly. Decedent saw the name BORG-WARNER (BORG-
   WARNER CORPORATION) on boxes containing the replacement clutch parts. Decedent
12 sanded the replacement clutches to remove the glaze.
           Decedent removed and replaced gaskets, including VICTOR (DANA COMPANIES,
13 LLC (FKA DANA CORPORATION) and FEL-PRO (FEDERAL-MOGUL ASBESTOS
   PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-PRODUCTS MANUFACTURING
14 CO.) gaskets. Decedent recalled that the vast majority of replacement gaskets used were FEL-
   PRO (FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO
15 FELT-PRODUCTS MANUFACTURING CO.).  Decedent also recalled using VICTOR (DANA
   COMPANIES, LLC (FKA DANA CORPORATION)) gaskets when FEL-PRO gaskets were not
16 available. Decedent and his co-workers removed and replaced original DANA COMPANIES,
   LLC (FKA DANA CORPORATION) gaskets from  axles and differentials on various vehicles.
17         In the late 1970s and early 1980s, decedent removed the original manufacturers' brakes,
   clutches and engine gaskets from FORD (FORD MOTOR COMPANY) and GENERAL
18 MOTORS CORPORATION trucks. Decedent installed replacement brakes, clutches and engine
   gaskets from the same manufacturers. Decedent worked in close proximity to other mechanics
19 performing the same work.
           At various times while working for this employer, decedent attended classes held by
20 General Motors and Ford on vehicle repair. Decedent recalled instructor Paul Schaefer, address
   unknown, at the General Motors classes.
21         While working for this employer, decedent was a member of the Machinists Union, Local
   1546. Decedent recalled the following supervisors: Bob Le Pointe, San Lorenzo, California or
22 San Leandro, California; Art Hayes, Les Gravoni.  Decedent recalled the following co-workers:
   Paul Lau, Oakland, California; Paul Willis, Dublin, California; Ed Decoite, Sonora, California;
23 Miguel Dumlao, Fairfield, California; Mike Burais, address unknown; Steve Elborg, address
   unknown; Steve Jackson. address unknown; and Mr. Birdsee address unknown, who ordered
24 parts. Plaintiff currently contends decedent was exposed to asbestos during this employment.

25 

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Pacific Maritime Association, Crescent Stevedoring Company | Port of Oakland Oakland, CA | Repairman | 1979 |

28

Job Duties: Decedent worked as a container repairman/mechanic. Decedent checked and repaired land trailers and ship containers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Federal Express Corporation 3630 Hacks Cross Road Memphis, TN | Federal Express Oakland International Airport, Oakland, CA Shop | Mechanic | 1988-1990 |

Job Duties: Decedent maintained and repaired a cargo transport fleet of approximately 50 tractor trucks and truck trailers, as well as mobile vehicles, a wheeled lift for unloading aircraft, and a tug vehicle used to move airplanes. Decedent inspected, removed and replaced brakes and clutches. Decedent maintained and reviewed vehicle maintenance records which identified the brands of brakes, clutches and engine gaskets removed and replaced.
   Decedent removed and replaced BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes. Decedent installed BORG-WARNER (BORGWARNER MORSE TEC, INC.) replacement clutches. Decedent sanded these replacement parts. Decedent used compressed air to clean out the brake and clutch assemblies. Decedent identified the replacement parts by the boxes in which they arrived. Decedent ordered replacement brakes from California Brakes, Hayward, California.
   Decedent recalled co-workers: Les Burdzy, address currently unknown; Bill Josmeyer, address currently unknown; Ed Decoite, Sonora, California; and Manny Cruz, San Leandro, California. Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| East Bay Regional Park District, 2950 Peralta Oaks Court, Oakland, CA | East Bay Regional Park District, Lake Chabot Road, Castro Valley, CA, Shop | Mechanic | 1990 - 2/2008 |

Job Duties: Decedent maintained and repaired various vehicles, including but not limited to police cars, mowers, off road tractors excavators, fire trucks, sanitation trucks and tractor loaders.
   Decedent removed and replaced brakes on all vehicles at least once, sanding them before installation and cleaning the brake compartments with compressed air. Decedent installed BENDIX (HONEYWELL INTERNATIONAL, INC.) and RAYBESTOS (RAYMARK INDUSTRIES, INC.) replacement brakes on heavy duty trucks and pickup trucks. Decedent removed the original manufacturers' brakes from FORD (FORD MOTOR COMPANY) Crown Victoria police cars; and from pickup trucks manufactured by FORD (FORD MOTOR COMPANY), GENERAL MOTORS CORPORATION, and DODGE.
   Decedent removed and replaced clutches on various vehicles, including tractors and sanitation trucks. Decedent installed BORG-WARNER (BORGWARNER MORSE TEC, INC.) replacement clutch parts, sanding them before installation and cleaning the clutch assemblies with compressed air. Decedent removed and replaced the original manufacturer's clutch on at least one CASE (CNH AMERICA, LLC.) tractor.   Decedent obtained replacement parts for the police cars and FORD sanitation trucks from FORD dealerships, including EAST BAY FORD TRUCK, Market and Seventh Streets, Oakland, California. Decedent installed replacement brakes that were supplied by California Brakes, Hayward, California. Decedent installed replacement brake and clutch parts, including BORG-WARNER clutches, that were supplied by the FREIGHTLINER dealership, Golden Gate Truck Center and CENTRAL AUTO PARTS,

1  Oakland, California. Decedent installed RAYBESTOS (RAYMARK INDUSTRIES, INC.)
   replacement brakes and BORG-WARNER (BORGWARNER MORSE TEC, INC.) clutches that
2  were supplied by VIC HUBBARD SPEED AND MARINE CORPORATION.
          Decedent recalled supervisor Paul Golling, San Leandro, California; and coworkers
3  Robert Heron, Castro Valley, California, area; Francisco Mejia, Castro Valley, California, area;
   Raphael Ramos, Castro Valley, California; Jim Pettit Castro Valley, California, area.
4  Plaintiff currently contends decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| CSK Auto, Inc.<br>645 E. Missouri Avenue<br>Phoenix, AZ | Kragen Auto<br>Davis Street<br>San Leandro, CA | Parts Man | 1991-1994 |

Job Duties:  Decedent worked part time as a parts man. Plaintiff is currently unaware if decedent
was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Hertz Transporting, Inc.<br>225 Brae Blvd.<br>Park Ridge, NJ | Hertz Transporting, Inc.<br>Doolittle Drive<br>San Leandro, CA | Driver | 2001-2002 |

Job Duties:  Decedent drove cars for Hertz. Plaintiff is currently unaware if decedent was
exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Pep Boys Manny Moe & Jack of California,<br>3111 W. Allegheny Avenue<br>Philadelphia, PA | Pep Boys Manny Moe & Jack of California<br>Union City, CA | Parts Man | 2001 |

Job Duties:  Decedent worked part time as a parts man for Pep Boys. Plaintiff is currently
unaware if decedent was exposed to asbestos during this employment.

At various jobsites during the 1970s and up to approximately 1988, decedent removed and
replaced the original manufacturer's DANA COMPANIES, LLC (FKA DANA
CORPORATION) gaskets on the axles and differentials of various vehicles. Decedent
maintained and reviewed maintenance records for those vehicles. Plaintiff currently contends
decedent was exposed to asbestos during this employment.

NON-OCCUPATIONAL EXPOSURE:
Friction:
          Decedent removed and replaced brakes, clutches and gaskets on personal vehicles.
          In the early 1980s, decedent removed and replaced the original manufacturer's front disc
and rear drum brakes on the 1978 CHEVROLET (GENERAL MOTORS) Malibu station wagon
he purchased new from ELLIS BROOKS AUTO CENTER, San Francisco, California. Decedent
cleaned the brake drum by banging it on the ground and using  a dry brush to clean out the dust
that had accumulated. Decedent sanded the replacement brakes to remove the glaze. Decedent
purchased BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brakes from
KRAGEN AUTO (CSK AUTO, INC.) Tampa Avenue, Hayward, California.

1       In the 1970s, decedent removed and replaced the clutch and brakes on at least one other vehicle, installing BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brakes and
2 a BORG-WARNER (BORG-WARNER CORPORATION BY ITS SUCCESSOR IN INTEREST, BORGWARNER MORSE TEC INC.) clutch that he sanded prior to installation.
3 Decedent removed a water pump, installing a STANT (Stant Manufacturing, Inc.) water pump and the gaskets that came with the part.
4       Plaintiff currently contends decedent was exposed to asbestos during these automobile repairs.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL