# U.S. District Court
## Western District of Pennsylvania (Pittsburgh)
### CIVIL DOCKET FOR CASE #: 2:11-cv-00467-RCM

GRABENSTEIN v. A.O. SMITH CORPORATION et al
Assigned to: Robert C. Mitchell
Case in other court: Allegheny County, GD 10-05656
Cause: 28:1442 Notice of Removal

Date Filed: 04/06/2011
Jury Demand: Both
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**GERI GRABENSTEIN**
*Executrix of the Estate of CHARLES A.
MALLOY, Deceased*

represented by **Peter T. Paladino , Jr.**
Goldberg, Persky & White
1030 Fifth Avenue
Pittsburgh, PA 15219
(412) 471-3980
Email: ppaladino@gpwlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**A.O. SMITH CORPORATION**

**Defendant**

**ANCHOR PACKING COMPANY**

**Defendant**

**BUFFALO PUMPS, INC.**

**Defendant**

**CASHCO, INC**

**Defendant**

**CBS CORPORATION**
*successor by merger to Westinghouse
Electric Corporation, CBS Corporation
and Viacom Inc.*

**Defendant**

**CRANE COMPANY**

**Defendant**

**DERBYSHIRE MACHINE & TOOL
CO**

**Defendant**

**DEZURIK, INC.**

**Defendant**

**ELLIOTT COMPANY**
*formerly known as*
ELLIOTT TURBOMACHINERY
COMPANY

**Defendant**

**FLOWSERVE CORPORATION**
*successor-in-interest to Durametallic
Corporation*

**Defendant**

**FOSTER-WHEELER, LLC**

**Defendant**

**GARLOCK SEALING
TECHNOLOGIES, LLC**
*formerly known as*
GARLOCK, INC

**Defendant**

**GENERAL ELECTRIC COMPANY**          represented by **Bryan S. Neft**
Pietragallo Gordon Alfano Bosick &
Raspanti, LLP
One Oxford Centre
38th Floor
Pittsburgh, PA 15219
(412) 263-2000
Fax: (412) 263-2001
Email: bsn1@pietragallo.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**HONEYWELL, INC**

**Defendant**

**IMO INDUSTRIES, INC**
*formerly known as*
IMO DELAVAL, INC.
*formerly known as*
TRANSAMERICA DELAVAL, INC.
*formerly known as*
DELAVAL TURBINE, INC.,
DEVALCO CORPORATION

**Defendant**

**INGERSOLL-RAND
CORPORATION**

**Defendant**

**ITT INDUSTRIES, INC.**

**Defendant**

**MCNALLY INDUSTRIES, LLC**
*and its Northern Pump Division*

**Defendant**

**METROPOLITAN LIFE
INSURANCE COMPANY**
*formerly known as*
METROPOLITAN INSURANCE
COMPANY

**Defendant**

**NAGLE PUMPS, INC.**

**Defendant**

**OWENS-ILLINOIS, INC**

**Defendant**

**PACIFIC MARINE SUPPLY, INC**
*TERMINATED: 04/06/2011*

**Defendant**

**THRUSH COMPANY, INC**

**Defendant**

**WARREN PUMPS, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/06/2011 | 1 | NOTICE OF REMOVAL from Allegheny County, case number GD 10-5656 Copies attached: State Court Record and Docket (Filing fee $350, receipt number 0315-1925217), filed by GENERAL ELECTRIC COMPANY. (Attachments: # 1 Civil Cover Sheet) (ksa) (Entered: 04/07/2011) |
| 04/06/2011 | 2 | EXHIBITS in Support of 1 Notice of Removal by GENERAL ELECTRIC COMPANY. (Attachments: # 1 Exhibit A.1 State Court Docket and Pleadings, Part 1, # 2 Exhibit A.2 State Court Docket and Pleadings, Part 2, # 3 Exhibit A.3 State Court Docket and Pleadings, Part 3) (ksa) (Entered: 04/08/2011) |
| 04/08/2011 | 3 | NOTICE *of Tag-along Action* by GENERAL ELECTRIC COMPANY (Neft, Bryan) (Entered: 04/08/2011) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |

| 04/08/2011 13:38:14 | | | |
|---|---|---|---|
| **PACER Login:** | ps0050 | **Client Code:** | elmut-80000 |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-cv-00467-RCM |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CIVIL DIVISION - ASBESTOS

GERI GRABENSTEIN, Executrix of the
Estate of CHARLES A. MALLOY,
Deceased,

GD No.

Code: 012

Plaintiff,

JURY TRIAL DEMANDED

vs.

**COMPLAINT IN CIVIL ACTION**

A.O. SMITH CORPORATION,
ANCHOR PACKING COMPANY,
BUFFALO PUMPS, INC.,
CASHCO, INC.,
CBS CORPORATION, successor by merger
to Westinghouse Electric Corporation,
CBS Corporation and Viacom Inc.,
CRANE COMPANY,
DERBYSHIRE MACHINE & TOOL CO.,
DEZURIK, INC.,
ELLIOTT COMPANY, f/k/a Elliott
Turbomachinery Company,
FLOWSERVE CORPORATION, successor-in-
interest to Durametallic Corporation,
FOSTER-WHEELER, LLC,
GARLOCK SEALING TECHNOLOGIES, LLC,
f/k/a Garlock, Inc.,
GENERAL ELECTRIC COMPANY,
HONEYWELL, INC.
IMO INDUSTRIES, INC., f/k/a IMO Delaval,
Inc., f/k/a Transamerica DeLaval, Inc., f/k/a
DeLaval Turbine, Inc., DeValco Corporation,
INGERSOLL-RAND CORPORATION,
ITT INDUSTRIES, INC.,
MCNALLY INDUSTRIES, LLC,
and its Northern Pump Division,
METROPOLITAN LIFE INSURANCE COMPANY,
f/k/a Metropolitan Insurance Company,

Filed on behalf of Plaintiff

Counsel of Record for this Party:

Firm #744

Peter T. Paladino, Jr., Esquire
PA ID No. 36596

David P. Chervenick, Esquire
PA ID No. 41236

GOLDBERG, PERSKY & WHITE,
Pittsburgh, PA  15219

1030 Fifth Avenue
Pittsburgh, PA 15219

(412) 471-3980

NAGLE PUMPS, INC.,
OWENS-ILLINOIS, INC.,
PACIFIC MARINE SUPPLY, INC.,
THRUSH COMPANY, INC.,
WARREN PUMPS, LLC,

        Defendants.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION - ASBESTOS

GERI GRABENSTEIN, Executrix of the
Estate of CHARLES A. MALLOY,
Deceased,

GD No.

Code: 012

        Plaintiff,

JURY TRIAL DEMANDED

v.

A.O. SMITH CORPORATION, et al,

        Defendants.

## NOTICE

    You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
THE ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH AVENUE
PITTSBURGH, PA 15219
(412) 261-0518

3

COMPLAINT IN CIVIL ACTION

COUNT I
WRONGFUL DEATH

1.     The plaintiff, Geri Grabenstein, Executrix of the Estate of Charles A. Malloy, Deceased, is an individual residing at 903 Highland Avenue, Pittsburgh, PA, 15215, and was appointed Executrix of the Estate of Charles A. Malloy, Deceased, by the Register of Wills of Venango County on November 12, 2008.

2.     The defendant, A.O. SMITH CORPORATION, in its own right and as successor-in-interest to the Clark Controller Company and A.O. Smith Corporation, is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in Columbus, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

3.     The defendant, ANCHOR PACKING COMPANY, is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business located in Greensboro, North Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

4.     The defendant, BUFFALO PUMPS, INC., is a corporation having its principal place of business located in N. Tonawonda, New York, and is qualified to do business in the Commonwealth of Pennsylvania.

5.     The defendant, CASHCO, INC., is a corporation having its principal place of business located in Ellsworth, Kansas, and is qualified to do business in the Commonwealth of Pennsylvania.

4

6.     The defendant, CBS CORPORATION, successor by merger to Westinghouse Electric Corporation, CBS Corporation and Viacom Inc., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in New York, New York, and is qualified to do business in the Commonwealth of Pennsylvania.

7.     The defendant, CRANE COMPANY, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Stamford, Connecticut, and is qualified to do business in the Commonwealth of Pennsylvania.

8.     The defendant, DERBYSHIRE MACHINE & TOOL COMPANY, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Philadelphia, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

9.     The defendant, DEZURIK, INC., is a corporation incorporated under the laws of the State of Kansas, having its principal place of business located in Ellsworth, Kansas, and is qualified to do business in the Commonwealth of Pennsylvania.

10.     The defendant, ELLIOTT COMPANY, f/k/a Elliott Turbomachinery Company, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Jeannette, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

11.     The defendant, FLOWSERVE CORPORATION, successor-in-interest to Durametallic Corporation, is a corporation incorporated under the laws of the State of Michigan, having its principal place of business in Kalamazoo, Michigan, and is qualified to do business in the Commonwealth of Pennsylvania.

12.     The defendant, FOSTER-WHEELER, LLC, is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business in Livingston, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

13.     The defendant, GARLOCK SEALING TECHNOLOGIES, LLC, f/k/a Garlock, Inc., is a corporation incorporated under the laws of the State of Ohio, having its principal place of business in Palmyra, New York, and is qualified to do business in the Commonwealth of Pennsylvania.

14.     The defendant, GENERAL ELECTRIC COMPANY, is a corporation incorporated under the laws of the State of New York, having its principal place of business in Fairfield, Connecticut, and is qualified to do business in the Commonwealth of Pennsylvania.

15.     The defendant, HONEYWELL, INC., is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business located in Morristown, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

16.     The defendant, IMO INDUSTRIES, INC., f/k/a IMO Delaval, Inc., f/k/a Transamerica DeLaval, Inc., f/k/a DeLaval Turbine, Inc., DeValco Corporation is a corporation incorporated under the laws of the state of New York, having its principal place of business located in New York, and is qualified to do business in the Commonwealth of Pennsylvania.

17.     The defendant, INGERSOLL-RAND CORPORATION, is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business located in Cleveland, Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

18.     The defendant, ITT INDUSTRIES, INC., is a corporation incorporated under the laws of the State of Mississippi having its principal place of business located in Upper Saddle River, New Jersey and is qualified to do business in the Commonwealth of Pennsylvania.

6

19.     The defendant, MCNALLY INDUSTRIES, LLC, and its Northern Pump Division, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Grantsburg, Wisconsin, and is qualified to do business in the Commonwealth of Pennsylvania.

20.     The defendant, METROPOLITAN LIFE INSURANCE COMPANY, f/k/a Metropolitan Insurance Company, is a corporation incorporated under the laws of the State of New York, having its principal place of business located in New York, and is qualified to do business in the Commonwealth of Pennsylvania.

21.     The defendant, NAGLE PUMPS, INC., is a corporation incorporated under the laws of the state of Illinois, having its principal place of business located in Chicago Heights, Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

22.     The defendant, OWENS-ILLINOIS, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Toledo, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

23.     The defendant, PACIFIC MARINE SUPPLY, INC., is a corporation incorporated under the laws of the State of California, having its principal place of business located in San Diego, California, and is qualified to do business in the Commonwealth of Pennsylvania.

24.     The defendant, THRUSH COMPANY, INC., is a corporation incorporated under the laws of the State of Indiana, having its principal place of business located in Peru, Indiana, and is qualified to do business in the Commonwealth of Pennsylvania.

25.     The defendant, WARREN PUMPS, LLC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Hamilton, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

26.     The plaintiff decedent worked at various jobsites as a welder and valve salesman from 1947 through 1989. Additionally, plaintiff served in the Navy from November 1945 through December 1951.

27.     Plaintiff, while employed as set forth above, was exposed to and did inhale asbestos dust and asbestos fibers, which caused the conditions as hereinafter set forth, resulting in plaintiff's impairment.

28.     Plaintiff decedent Charles A. Malloy was diagnosed with mesothelioma on April 9, 2008 and ultimately caused his death on October 25, 2008. Plaintiff was unaware of and could not discover the nature and cause of said mesothelioma before April 9, 2008.

29.     Defendants engaged in the distribution, supply, sale, contracting, installation, removal and/or specification of asbestos-containing products to which Plaintiff was exposed.

30.     The defendant companies (hereinafter defendant "sellers" and "contractors") or their predecessors in interest, at all times relevant, engaged in one or more of the following activities involving asbestos and other ingredients in their materials, including, but not limited to, the mining, milling, manufacturing, distributing, supplying, selling and/or using and/or recommending, and/or installing and/or removing asbestos materials and other dangerous ingredients and products.

31.     At all times pertinent hereto, the defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of said defendants.

32.     As a direct and proximate result of the inhalation of the fibers and dusts contained in the products of defendants, and/or their predecessors-in-interest, plaintiff contracted the diseases set forth herein. The condition of plaintiff is a direct and proximate result of the defendants' manufacture, and/or production, and/or distribution, and/or supply and/or sale of

8

products containing asbestos and other dangerous ingredients which were inherently, excessively, and ultra-hazardously dangerous to plaintiff and/or lacked elements necessary to make them safe for their intended uses, including but not limited to a warning.

33.     Plaintiff decedent's disease as set forth herein with associated complications was directly and proximately caused by the acts of the defendants acting through their agents, servants and employees and the defendants are liable therefore, jointly and severally, to the plaintiff for their breach of duty imposed by Section 402A of the <u>Restatement (Second) of Torts.</u>

34.     As a direct and proximate result of the actions of the defendants as aforesaid, and inhalation of asbestos fibers from defendant's products, the plaintiff has suffered severe and serious injuries.  He suffered from mesothelioma, an asbestos-related disease, severe pain, and discomfort.

35.     As a direct and proximate result of the inhalation of the fibers and dusts contained in the products of defendants, and/or their predecessors-in-interest, plaintiff's decedent had contracted mesothelioma, and its associated complications, which resulted in his disability and ultimately caused his death on October 25, 2008.

36.     This action is brought pursuant to the Wrongful Death Act for the wrongful death of the decedent, on behalf of all persons entitled to recover damages.

37.     Decedent filed no valid action during his lifetime to recover damages which caused his death, and no other action for the death of the decedent has been commenced against the defendants.

38.     The following persons are entitled to proceed under the Wrongful Death Statute:

> Miles Malloy (son)
> Charles Malloy (son)
> Daniel Malloy (son)
> Linda Buhling (daughter)

39.    As a direct and proximate result of the actions of the defendants, as aforesaid, the plaintiff has been damaged and claims damages of the defendants in excess of Fifty Thousand ($50,000.00) Dollars:

   a.    For hospital and medical expenses incidental to decedent's last illness;

   b.    For loss of earnings and future earning power;

   c.    For the loss of pecuniary contributions to the plaintiff's children;

   d.    For future loss of aid, companionship and services to plaintiff's children;

   e.    For exemplary and punitive damages for Defendants' willful and wanton disregard for the health and safety of users and consumers of their products; and

   f.    For all other damages recoverable under said Act.

WHEREFORE, Geri Grabenstein, Executrix of the Estate of Charles A. Malloy, Deceased, has been damaged and claims damages of the defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, which is in excess of the arbitration jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania.

COUNT II
SURVIVAL ACTION

40.    Plaintiff incorporates the aforementioned paragraphs by reference as though fully set forth herein.

41.    Plaintiff brings this action on behalf of the estate of Charles A. Malloy, under and by virtue of the Survival Action Statute.

10

42.     Plaintiff claims on behalf of the said Estate the damages suffered by the said Estate by reason of the death of the decedent, as well as the pain and suffering the decedent underwent prior to his death, for the medical expenses, for the funeral expenses and for the loss of earning power during the balance of the natural life of the decedent, and such other items of recovery as may be due by virtue of the above-mentioned Act.

WHEREFORE, plaintiff, Geri Grabenstein, Executrix of the Estate of Charles A. Malloy, Deceased, has been damaged and claims damages of the defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, which is in excess of the arbitration jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania.

<u>COUNT III</u>
<u>AGAINST METROPOLITAN LIFE</u>

43.     Plaintiff incorporates the aforementioned paragraphs by reference hereto as fully set forth herein.

44.     In or about the year 1930, and at various times prior and subsequent thereto, up to and including the present time, defendant Metropolitan Life Insurance Company undertook and assumed a duty to provide the asbestos industry, the scientific community and company users of asbestos with information, inspections, instructions, supervision, recommendations, assistance, notices, reports, methods, findings, cautions, warnings, advice, designs, equipment, safeguards, guidance and services to properly, adequately and reasonably provide safe working conditions, all allegedly to preserve and protect the life, health and safety of employees exposed to asbestos, including plaintiffs and their co-workers, and particularly to protect them from the dangerous and defective properties of asbestos, asbestos products and compounds and/or other dangerous substances at or about the workplace.

11

45.    Plaintiff avers that various employers and their employees, including plaintiffs and scientists and others similarly situated, were dependent upon the undertakings of Metropolitan to preserve and protect the life, health and safety of individuals, including plaintiffs, by not assisting the said companies in selling dangerous products.

46.    Metropolitan, by its active and passive negligence, failed to exercise the standard of care and skill it was obliged to exercise by reason of its aforesaid undertakings and assumption of duty, thereby causing, creating or permitting dangerous conditions and exposure to dangerous and defective substances; and thereby failing to properly safeguard plaintiffs and all others similarly situated.

47.    As a result of the aforesaid negligence of the defendant Metropolitan, plaintiff was injured.

WHEREFORE, plaintiff has been damaged and claims damages of the defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, which is in excess of the arbitration jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania.

COUNT IV
AGAINST METROPOLITAN LIFE

48.    Plaintiff incorporates the aforementioned paragraphs by reference hereto as fully set forth herein.

49.    For a number of years, Metropolitan provided insurance coverage for various manufacturers of asbestos-containing products.

50.    For a number of years, Dr. A.J. Lanza served as assistant medical director of Metropolitan

12

51.   At all times relevant, the activities of Dr. Lanza hereinafter described were undertaken as a servant, agent or employee of Metropolitan.

(a)   Beginning in approximately 1934, Metropolitan Life Insurance Company and certain asbestos producers and manufacturers including Johns-Manville Corporation and Raybestos Manhattan, through their agents, Vandiver Brown, attorney J.C. Hobart, Sumner Simpson and J. Rohrbach, suggested to Dr. Anthony Lanza, as agent of Metropolitan Life Insurance Company, that Lanza publish a study on asbestos in which Lanza would affirmatively misrepresent material facts about asbestos exposure and concerning the seriousness of the disease processes, asbestosis and related diseases.  This was accomplished through intentional deletion of Lanza's feeling of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestos as causing diseases less serious than they really were known to be. As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935. This fraudulent misrepresentation and fraudulent nondisclosure was motivated in part  by a desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in disputes involving Metropolitan as insurer.

(b)   In 1936, American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, and United Gypsum Company, entered into an agreement with the Saranac Laboratories.  Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and could also control in what form such publications were to occur.  This agreement gave these companies power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study.  On numerous occasions thereafter, these companies together with Metropolitan, exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

13

(c)   On November 11, 1948, representatives of the following companies met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Inc., Thermoid Company, Union Asbestos and Rubber Company, United States Gypsum Company and Metropolitan. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

(d)   At this November 11, 1948 meeting, these companies and Metropolitan decided to exert their influence to materially alter and misrepresent material facts about the substance of research previously started by Dr. Leroy Gardner at the Saranac Laboratories. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then existing standards of dust exposure for asbestos and asbestos products.

(e)   At this meeting, these companies and Metropolitan and subsequently their agent, Dr. Vorwald, intentionally and affirmatively determined that Dr. Gardner's work should be edited to delete material facts about the cancer causing propensity of asbestos and the health effects of asbestos on humans and to delete the critique of the dust standards. This was published, as altered, in the scientific literature. These companies and Metropolitan thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, scientists, and persons exposed to asbestos such as the plaintiffs.

(f)   As a direct result of the actions as described above, Dr. Gardner's edited work was published in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that Metropolitan wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the

14

extent of risks.  Metropolitan and the companies it joined with affirmatively and deliberately disseminated this misleading publication.

(g)  Such action constituted a material affirmative misrepresentation of material facts involving Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

(h)  In 1955, Johns-Manville, for itself and on behalf of Metropolitan, through their agent Kenneth Smith, caused to be published in the <u>AMA Archives of Industrial Health</u>, an article entitled "Pulmonary Disability In Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material representation about the extent of the risk associated with asbestos inhalation.

(i)  In 1955, the National Cancer Institute held a meeting at which Johns-Manville, individually and as an agent for Metropolitan, and A. Vorwald, as their agent, affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, Metropolitan was in secret possession of several studies which demonstrated that positive evidence did exist.

(j)  Metropolitan approved and ratified and furthered the previous acts of Johns-Manville, Raybestos Manhattan, and A.J. Lanza.

52.    The acts of Metropolitan as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation which proximately caused injury to the plaintiffs in the following manner:

(a)  Metropolitan intended the publication of false and misleading reports and/or the nondisclosure of documented reports of health hazards of asbestos, in order to:

(i)     Maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

(ii)    Assist in the continued pecuniary gain through the control and reduction of claims;

(iii)   Influence proposed legislation to regulate asbestos exposure;

(iv)    Provide a defense in law suits brought for injury resulting from asbestos disease.

(b)     Metropolitan intended reliance upon the published reports regarding the safety of asbestos and asbestos-related products.

(c)     Plaintiffs suffered injury as a direct and proximate result of the acts alleged herein.

53.     Metropolitan has, as previously stated, altered, influenced, and created significant portions of medical literature which are false and misleading statements concerning the dangers of asbestos exposure and disease.  In so doing, Metropolitan, and its aforesaid agents, provided a body of medical literature which, when relied upon by persons investigating such literature, would have lead to a false impression of the dangers of asbestos exposure.

Additionally, the publication of such literature acted to inhibit the development of the literature and effectively delayed the dissemination of accurate knowledge of the dangers. Metropolitan owed a duty to the plaintiffs, and the public as a whole, when contributing to the medical literature to do so in good faith and with the reasonable care expected of any professional contributing to such literature; Metropolitan's failure to do so is willful and wanton negligence and a separate intentional tort creating a duty to compensate the plaintiffs for injuries sustained as a proximate contributing result of the actions of Metropolitan Life Insurance Company.

54.   As a direct and proximately result of the fraudulent concealment and/or fraudulent representation by Metropolitan and its agents, the plaintiffs suffered the diseases, injuries and damages set forth in the foregoing paragraphs.

WHEREFORE, plaintiff has been damaged and claims damages of the defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, which is in excess of the arbitration jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania.

<u>COUNT V</u>
<u>AIDING AND ABETTING AGAINST METROPOLITAN LIFE</u>

55.   Plaintiff incorporates the aforementioned paragraphs by reference hereto as fully set forth herein.

56.   Defendant, Metropolitan Life Insurance Company, individually and in concert with American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, United Gypsum Company, Thermoid Company and others knowingly agreed and conspired among themselves to engage in a course of conduct that was reasonably likely to result in injury to plaintiff.

57.   Defendant, Metropolitan Life Insurance Company, knew or should have known that the perversion of the scientific and medical literature as aforesaid would cause the harmful effects of asbestos exposure and would cause plaintiff injury.

58.   Defendant, Metropolitan Life Insurance Company, gave substantial assistance and/or encouragement to the conspirators and this aided and abetted their sale of asbestos products in a defective and dangerous condition and their reduction and control of claims against them.

17

59.     The actions of Metropolitan Life Insurance Company make it liable to plaintiffs pursuant to Section 876 of the Restatement of Torts (Second) since Metropolitan Life Insurance Company has acted in concert with others to cause harm to the plaintiffs.

60.     As a direct and proximate result of the actions of defendant, Metropolitan Life Insurance Company, plaintiff suffered and will continue to suffer serious bodily injury; endured and will continue to endure great pain and suffering and mental anguish; incurred and will continue to incur medical expenses; lost earnings and earning capacity; and was otherwise damaged.

WHEREFORE, plaintiff has been damaged and claims damages of the defendants, jointly and severally, in an amount in excess of Fifty Thousand  ($50,000.00) Dollars, which is in excess of the arbitration jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania.


<u>COUNT VI</u>
<u>MISREPRESENTATION AGAINST METROPOLITAN LIFE INSURANCE COMPANY</u>

61.     Plaintiff incorporates the aforementioned paragraphs by reference hereto as fully set forth herein.

62.     The actions of defendant Metropolitan Life Insurance Company as described above constituted conscious misrepresentation involving risk of physical harm and/or negligent misrepresentation involving risk of physical harm.

63.     Metropolitan Life Insurance Company is liable to plaintiffs for their injury pursuant to Section 310 and 311 of the Restatement of Torts (Second).

18

64.     As a direct and proximate result of the actions of defendant, Metropolitan Life Insurance Company, plaintiff suffered and will continue to suffer serious bodily injury; endured and will continue to endure great pain and suffering and mental anguish; incurred and will continue to incur medical expenses; lost earnings and earning capacity; and was otherwise damaged.

WHEREFORE, plaintiff has been damaged and claims damages of the defendants, jointly and severally, in an amount in excess of Fifty Thousand  ($50,000.00) Dollars, which is in excess of the arbitration jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania.

JURY TRIAL DEMANDED AS TO ALL COUNTS.

GOLDBERG, PERSKY  & WHITE, P.C.

By
Peter T. Paladino, Jr., Esquire
Attorney for Plaintiff

19

<u>VERIFICATION</u>

I, GERI GRABENSTEIN, Executrix of the Estate of Charles A. Malloy, Deceased, hereby certify that the statements set forth in the foregoing COMPLAINT IN CIVIL ACTION are true and correct to the best of my knowledge, information and belief. The factual matters set forth therein are based upon information which has been furnished to counsel or which has been gathered by counsel as it pertains to this lawsuit; that the language contained in the foregoing is that of counsel and not the undersigned; and, that to the extent that the contents of same is that of counsel the undersigned has relied upon counsel in making this verification.

I understand that this Verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn fabrication to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.


Date: 3 - 17 - 10                                        _Geri Grabenstein-Extr_
                                                         Geri Grabenstein