E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-01754-MEJ

| | |
|---|---|
| Fernandez et al v. Rolls-Royce, PLC et al | Date Filed: 04/08/2011 |
| Assigned to: Magistrate Judge Maria-Elena James | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Personal Injury | Nature of Suit: 368 P.I. : Asbestos |
| | Jurisdiction: Diversity |

**Plaintiff**

**Diantha Fernandez**
*as Wrongful Death Heir, and as*
*Successor-in Interest to Joseph*
*Christopher Fernandez, Deceased*

represented by **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gabriel Salome**
*as Legal Heir of Joseph Christopher*
*Fernandez, deceased*

represented by **Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kristina Salome**
*as Legal Heir of Joseph Christopher*
*Fernandez, deceased*

represented by **Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Diana Reyes**                                      represented by   **Alan R. Brayton**
*as Legal Heir of Joseph Christopher*                                 (See above for address)
*Fernandez, deceased*                                                 *ATTORNEY TO BE NOTICED*

                                                                      **David R. Donadio**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Rolls-Royce, PLC**

**Defendant**

**Trimas Corporation**
*doing business as*
NI Industries Inc.

| Date Filed | # | Docket Text |
|---|---|---|
| 04/13/2011 | 6 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (bjtS, COURT STAFF) (Filed on 4/13/2011) (Entered: 04/13/2011) |
| 04/08/2011 |   | CASE DESIGNATED for Electronic Filing. (ga, COURT STAFF) (Filed on 4/8/2011) (Entered: 04/11/2011) |
| 04/08/2011 | 5 | ADR SCHEDULE ORDER (Entered: 04/11/2011) |
| 04/08/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Diantha Fernandez, Diana Reyes, Gabriel Salome, Kristina Salome. (ga, COURT STAFF) (Filed on 4/8/2011) (Entered: 04/11/2011) |
| 04/08/2011 | 3 | NOTICE OF TAG-ALONG ACTION by Diantha Fernandez, Diana Reyes, Gabriel Salome, Kristina Salome re 1 Complaint (ga, COURT STAFF) (Filed on 4/8/2011) (Entered: 04/11/2011) |
| 04/08/2011 | 2 | Certificate of Interested Entities by Diantha Fernandez, Diana Reyes, Gabriel Salome, Kristina Salome re 1 Complaint (ga, COURT STAFF) (Filed on 4/8/2011) (Entered: 04/11/2011) |
| 04/08/2011 | 1 | COMPLAINT /issued summons against Rolls-Royce, PLC, Trimas Corporation ( Filing fee $ 350, receipt number 34611058489.). Filed byGabriel Salome, Diantha Fernandez, Kristina Salome, Diana Reyes. (ga, COURT STAFF) (Filed on 4/8/2011) (Additional attachment(s) added on 4/13/2011: # 1 Complaint, # 2 Exhibit) (ga, COURT STAFF). (Entered: 04/11/2011) |

| PACER Service Center |
|---|
| Transaction Receipt |
|  |

| 04/13/2011 16:54:31 | | | |
|---|---|---|---|
| PACER Login: | bp0355 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:11-cv-01754-MEJ |
| Billable Pages: | 2 | Cost: | 0.16 |

1 | ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
2 | BRAYTON❖PURCELL LLP
Attorneys at Law
3 | 222 Rush Landing Road
P.O. Box 6169
4 | Novato, California 94948-6169
(415) 898-1555
5 | (415) 898-1247 (Fax No.)

6 | Attorneys for Plaintiffs

7

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN FRANCISCO DIVISION**

11 | DIANTHA FERNANDEZ, as Wrongful ) No.
Death Heir, and as Successor-in-Interest to )
12 | JOSEPH CHRISTOPHER FERNANDEZ, )
Deceased, and GABRIEL SALOME, ) COMPLAINT FOR SURVIVAL,
13 | KRISTINA SALOME, DIANA REYES, as ) WRONGFUL DEATH - ASBESTOS;
Legal Heirs of JOSEPH CHRISTOPHER ) DEMAND FOR JURY TRIAL
14 | FERNANDEZ, Deceased, )
)
15 | Plaintiffs, )
)
16 | vs. )
)
17 | ROLLS-ROYCE, PLC, TRIMAS )
CORPORATION WHICH WILL DO )
18 | BUSINESS IN CALIFORNIA AS NI )
INDUSTRIES, INC., )
19 | )
Defendants. )
20 |

21 | **I.**

22 | **PARTIES**

23 | 1. Plaintiffs in this action are the above-captioned successor-in-interest to, or the

24 | personal representative of the estate of Decedent Joseph Christopher Fernandez; and the personal

25 | representatives on behalf of the legal heirs, or the heirs-at-law, of the Decedent, and are all

26 | hereinafter referred to as "Plaintiffs."

27 | 2. The person who sustained asbestos-related lung injuries and death as a result of

28 | their inhalation of asbestos fibers, through and a direct result of the occupational exposure to

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1  asbestos of his father Ernesto Fernandez, is: JOSEPH CHRISTOPHER FERNANDEZ who died

2  April 9, 2010. DIANTHA FERNANDEZ is the spouse of JOSEPH CHRISTOPHER

3  FERNANDEZ and is hereinafter referred to as "surviving spouse."

4      3.      Decedent sustained an asbestos-related lung disease and death by precisely the

5  following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

6  containing products at jobsites where Ernesto Fernandez was employed and worked which were

7  then transported, transmitted and otherwise introduced into Decedent's breathing environment

8  and inhaled by Decedent. The pathogenesis of Decedent's asbestos-related diseases is explained

9  on **Exhibit A**, attached to plaintiffs' complaint and incorporated by reference herein.

10     4.      All of plaintiffs' claims arise out of a similar series of occurrences: repeated

11 exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

12 and supplied to, installed and/or maintained by defendants at worksites where Ernesto Fernandez

13 was employed and worked which were then transported, transmitted and otherwise introduced

14 into Decedent's breathing environment and inhaled by Decedent, over a period of years, and

15 which resulted in or caused a release of toxic asbestos fibers and which were subsequent

16 inhalation by the Decedent, resulting in cumulative, progressive, incurable lung diseases which

17 caused Decedent's death.

18     5.      Each plaintiff claims damages for an asbestos-related disease arising from an

19 identical series of occurrences not dependent on a specific worksite where Ernesto Fernandez

20 was employed and worked which were then transported, transmitted and otherwise introduced

21 into Decedent's breathing environment and inhaled by Decedent but on the fact that asbestos-

22 containing products, when handled in the manner in which they were intended, released harmful

23 asbestos fibers which when thereafter inhaled by Decedent, caused serious lung disease. The

24 allegations of plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature

25 of asbestos, the propensity of asbestos to cause disease, the criteria for diagnosis of disease,

26 where Ernesto Fernandez was employed and worked which were then transported, transmitted

27 and otherwise introduced into Decedent's breathing environment and inhaled by Decedent, the

28 asbestos encountered at such different sites, and how Decedent eventually encountered and

1  inhaled the same are all identical.

2  6.  Plaintiffs are informed and believe, and thereon allege, that at all times herein

3  mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

4  proprietorships and/or other business entities organized and existing under and by virtue of the

5  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

6  said defendants, and each of them, were and are authorized to do and are doing business in the

7  State of California, and that said defendants have regularly conducted business in the State of

8  California.

9

10  **II.**

11  **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

12  7.  Jurisdiction:  Plaintiff DIANTHA FERNANDEZ is a citizen of the State of

13  California. Plaintiff(s) GABRIEL SALOME, KRISTINA SALOME, DIANA REYES are

14  citizens of the following states, respectively: California; California; California.

15  Defendants are each corporations incorporated under the laws of and having its principal

16  places of business in the following States:

17

| DEFENDANT | STATE |
|---|---|
| ROLLS-ROYCE, PLC | Foreign Entity |
| TRIMAS CORPORATION WHICH WILL DO BUSINESS IN CALIFORNIA AS NI INDUSTRIES, INC. | Delaware |

21

22  This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

23  between citizens of different states in which the matter in controversy exceeds, exclusive of costs

24  and interest, seventy-five thousand dollars.

25  8.  Venue / Intradistrict Assignment.  Venue is proper in the Northern District of

26  California and assignment to the San Francisco Division of said district is proper as a substantial

27  part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred

28  within the County of San Francisco, California, and Defendants are subject to personal

1 | jurisdiction in this district at the time the action is commenced.

2 | ### III.

3 | ### CAUSES OF ACTION

4 | #### FIRST CAUSE OF ACTION
(Negligence)

5 |

6 | PLAINTIFF DIANTHA FERNANDEZ COMPLAINS OF DEFENDANTS ROLLS-

7 | ROYCE, PLC, TRIMAS CORPORATION WHICH WILL DO BUSINESS IN CALIFORNIA

8 | AS NI INDUSTRIES, INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND

9 | FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10 | 9.     At all times herein mentioned, each of the named defendants was the successor,

11 | successor in business, successor in product line or a portion thereof, assign, predecessor,

12 | predecessor in business, predecessor in product line or a portion thereof, parent, holding

13 | company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

14 | or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

15 | designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

16 | supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

17 | representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

18 | warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

19 | otherwise directing and/or facilitating the use of, or advertising a certain product, namely

20 | asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

21 | called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

22 | conduct of each successor, successor in business, successor in product line or a portion thereof,

23 | assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

24 | venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

25 | entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

26 | designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

27 | sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

28 | rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd                         4
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1    products containing asbestos. The following defendants, and each of them, are liable for the acts
2    of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual
3    destruction of plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each
4    of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE
5    ENTITY; defendants, and each of them, caused the destruction of plaintiffs' remedy against each
6    such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading
7    role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill
8    originally attached to each such ALTERNATE ENTITY:

9    ///

10   DEFENDANT                                      ALTERNATE ENTITY

11   ROLLS-ROYCE, PLC                               ALLISON ENGINE COMPANY, INC.

12   TRIMAS CORPORATION WHICH WILL                  NI WEST, INC.
     DO BUSINESS IN CALIFORNIA AS
13   NI INDUSTRIES, INC.

14          10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and
15   each of them, were and are engaged in the business of researching, manufacturing, fabricating,
16   designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,
17   supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,
18   promoting, representing, servicing, installing, contracting for installation, repairing, marketing,
19   warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or
20   otherwise directing and/or facilitating the use of, or advertising a certain product, namely
21   asbestos and other products containing asbestos.

22          11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and
23   each of them, singularly and jointly, negligently, and carelessly researched, manufactured,
24   fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed
25   to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,
26   supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,
27   installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
28   rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

1 and other products containing asbestos, in that said products caused personal injuries to users,

2 consumers, workers, bystanders and others, including the Decedent herein, (hereinafter

3 collectively called "exposed persons"), while being used in a manner that was reasonably

4 foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by

5 "exposed persons."

6       12.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

7 exercise due care in the pursuance of the activities mentioned above and defendants, and each of

8 them, breached said duty of due care, by failing to protect, isolate or prevent the release of

9 asbestos fibers from products for which they were responsible, by failing to correct such release,

10 and by failing to warn of the dangers of such release, all in flagrant disregard for the health and

11 safety of others, such as and including, Decedent herein.

12

13      13.    Further Defendants, their ALTERNATE ENTITIES and each of them, knew, or

14 should have known, and intended that the aforementioned asbestos and products containing

15 asbestos and related products and equipment, would be transported by truck, rail, ship, and other

16 common carriers, that in the shipping process the products would break, crumble, or be otherwise

17 damaged; and/or that such products would be used for insulation, construction, plastering,

18 fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

19 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

20 breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

21 release of airborne asbestos fibers, and that through such foreseeable use and/or handling

22 "exposed persons," including the father of Decedent, Ernesto Fernandez, and those persons with

23 whom he may have come into the physical proximity of, including but not limited to, persons in

24 his family such as Decedent herein, would be exposed to asbestos because of the products or

25 equipment they would use themselves or be in proximity to use of, and thus, exposed to said

26 asbestos fibers, which also contaminated the packaging, products, environment, and clothing of

27 persons working in proximity to said products, directly or through reentrainment and thereafter

28 also exposed others with whom they might come into contact or physical proximity, such as

1  Decedent.

2      14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
3  containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
4  exposure to asbestos and asbestos-containing products is on current information as set forth at
5  various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
6  herein which also incorporates and reflects, to the extent now known, exposures sustained by
7  Ernesto Fernandez, which thereafter exposed Decedent.

8      15.    As a direct and proximate result of the acts, omissions, and conduct of the
9  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure
10  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,
11  or harm to the Decedent as set forth in **Exhibit A**, attached to plaintiffs' complaint and
12  incorporated by reference herein.

13      16.    Plaintiffs are informed and believe, and thereon allege, that progressive lung
14  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
15  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
16  asbestos and asbestos-containing products over a period of time.

17  ///

18  ///

19      17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-
20  containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-
21  containing products presented any risk of injury and/or disease.

22      18.    As a direct and proximate result of the aforesaid conduct of the defendants, their
23  "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,
24  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact
25  amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this
26  complaint accordingly when the true and exact cost thereof is ascertained.

27      19.    As a direct and proximate result of the aforesaid conduct of the defendants, their
28  ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value

1    of medial care provided by Decedent's family members measured by, inter alia, the costs
2    associated with the hiring a registered nurse, home hospice, or other service provider, the true
3    and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to
4    amend this complaint accordingly when the true and exact costs are known or at time of trial.

5    20.    As a direct and proximate result of the aforesaid conduct of defendants, their
6    ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person,
7    body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and
8    related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,
9    from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven
10   at trial.

11   21.    As a further direct and proximate result of the said conduct of the defendants,
12   their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,
13   entitlements, wages, profits, and commissions, a diminishment of earning potential, and other
14   pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is
15   requested to amend this complaint to conform to proof at the time of trial.

16   22.    As a further direct and proximate result of the said conduct of the defendants,
17   their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-
18   ///

19   containing products caused severe and permanent injury to Decedent, and ultimately Decedent
20   died on the date previously stated herein.

21   23.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
22   directors and managing agents participated in, authorized, expressly and impliedly ratified, and
23   had full knowledge of, or should have known of, each of the acts set forth herein.

24   24.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the
25   fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
26   and each defendant's officers, directors, and managing agents participated in, authorized,
27   expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
28   each of their ALTERNATE ENTITIES as set forth herein.

1        25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
2   and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in
3   conscious or reckless disregard and indifference to the safety, health, and rights of "exposed
4   persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive
5   damages against said defendants.

6        WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and
7   each of them, as hereinafter set forth.

8                            SECOND CAUSE OF ACTION
                              (Products Liability - Survival)
9

10       PLAINTIFF DIANTHA FERNANDEZ AS SUCCESSOR-IN-INTEREST TO THE
11  DECEDENT JOSEPH CHRISTOPHER FERNANDEZ COMPLAINS OF DEFENDANTS
12  ROLLS-ROYCE, PLC, TRIMAS CORPORATION WHICH WILL DO BUSINESS IN
13  CALIFORNIA AS NI INDUSTRIES, INC., THEIR "ALTERNATE ENTITIES,"AND EACH
14  OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
15  ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

16       26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each
17  paragraph of the First Cause of Action herein.

18  ///

19       27.    Defendants, their "alternate entities," and each of them, knew and intended that
20  the above-referenced asbestos and asbestos-containing products would be used by the purchaser
21  or user without inspection for defects therein or in any of their component parts and without
22  knowledge of the hazards involved in such use.

23       28.    Said asbestos and asbestos-containing products were defective and unsafe for their
24  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
25  and/or death. The defect existed in the said products at the time they left the possession of
26  defendants, their ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause
27  personal injuries, including asbestosis, other lung damage, cancer, and death to family members
28  of Ernesto Fernandez, the "exposed persons," including Decedent herein, who was exposed to

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd                    9
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1    asbestos from his father, whose exposure to products was while they were being used in a
2    reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for
3    use.

4        29.    "Exposed persons" did not know of the substantial danger of using said products.
5    Said dangers were not readily recognizable by "exposed persons." Said defendants, their
6    ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
7    which Decedent and others similarly situated were exposed.

8        30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
9    to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
10   sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,
11   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
12   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
13   and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
14   did so with conscious disregard for the safety of "exposed persons" who came in contact with
15   said asbestos and asbestos-containing products or those they might have thereafter exposed like
16   Decedent, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior
17   knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos
18   or asbestos-containing products, including, but not limited to, asbestosis, other lung damages,
19   and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the
20   request of, or with the assistance of, said defendants,

21   ///

22   their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
23   defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

24       31.    On or before 1930, and thereafter, said defendants, their ALTERNATE
25   ENTITIES and each of them, were aware that members of the general public and other "exposed
26   persons," who would come in contact with their asbestos and asbestos-containing products, had
27   no knowledge or information indicating that asbestos or asbestos-containing products could
28   cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

1  members of the general public and other "exposed persons," who came in contact with asbestos
2  and asbestos-containing products, would assume, and in fact did assume, that exposure to
3  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
4  hazardous to health and human life.

5      32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
6  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
7  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
8  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
9  asbestos-containing products without attempting to protect "exposed persons" from, or warn
10 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
11 asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn
12 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
13 asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
14 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
15 and suppressed said knowledge from "exposed persons" and members of the general public, thus
16 impliedly representing to "exposed persons" and members of the general public that asbestos and
17 asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their
18 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
19 representations with the knowledge of the falsity of said implied representations.

20     33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,
21 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE
22 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
23 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
24 sale, inspection, installation, contracting for installation, repair, marketing, warranting,
25 rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise
26 directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing
27 products. In pursuance of said financial motivation, said defendants, their ALTERNATE
28 ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

1  were consciously willing and intended to permit asbestos and asbestos-containing products to
2  cause injury to "exposed persons" and induced persons to work with and be exposed thereto,
3  including Decedent.

4       34.    Plaintiffs allege that the aforementioned defendants, their ALTERNATE
5  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
6  products, to be safe for their intended use, but that their asbestos and asbestos-containing
7  products, created an unreasonable risk of bodily harm to exposed persons and those with whom
8  they may have later come into contact.

9       35.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of
10  their representations, lack of warnings, and implied warranties of fitness of asbestos and their
11  asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent
12  suffered permanent injury and death as alleged herein.

13      36.    As a direct and proximate result of the actions and conduct outlined herein,
14  Decedent have suffered the injuries and damages herein alleged.

15      WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and
16  each of them, as hereinafter set forth.

17                              THIRD CAUSE OF ACTION
                         (Premises Owner/Contractor Liability)
18

19      AS AND FOR A FURTHER AND THIRD SEPARATE AND DISTINCT CAUSE OF
20  ACTION, PLAINTIFF COMPLAINS OF DEFENDANT TRIMAS CORPORATION WHICH
21  WILL DO BUSINESS IN CALIFORNIA AS NI INDUSTRIES, INC., AND
22  THEIR ALTERNATE ENTITIES (hereinafter PREMISES
23  OWNER/CONTRACTOR LIABILITY DEFENDANTS), AND ALLEGES AS FOLLOWS:

24      37.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each
25  paragraphs 14-22 of the First Cause of Action herein.

26      38.    At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR
27  LIABILITY DEFENDANTS was a successor, successor-in-business, assign, predecessor,
28  predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, wholly or

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd                    12

1 partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing
2 insulation, other building materials, products, and toxic substances to be constructed, installed,
3 maintained, used, replaced, repaired and/or removed on the respective premises owned, leased,
4 maintained, managed, and/or controlled by them. Said entities shall hereinafter collectively be
5 called ALTERNATE ENTITIES. Each of the herein-named defendants is liable for the tortious
6 conduct of each successor, successor-in-business, assign, predecessor-in-business, parent,
7 holding company, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially
8 owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and
9 other toxic substances. The following defendants, and each of them, are liable for the acts of
10 each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual
11 destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each
12 of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants,
13 and each of them, have caused the destruction of plaintiff's remedy against each such alternate
14 entity; each such defendant has the ability to assume the risk-spreading role of each such
15 ALTERNATE ENTITY, and that each such defendant enjoys the goodwill originally attached to
16 each such ALTERNATE ENTITY.

17       DEFENDANT                      ALTERNATE ENTITY

18 TRIMAS CORPORATION WHICH WILL    NI WEST, INC.
    DO BUSINESS IN CALIFORNIA AS
19     NI INDUSTRIES, INC.

20      39.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR
21 LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained,
22 managed, and/or controlled the premises listed on Exhibit C. The information provided on
23 Exhibit C is preliminary, based on recall over events covering many years and further
24 investigation and discovery may produce more reliable information. Additionally, the father of
25 Decedent, Ernesto Fernandez, might have been present at these or other PREMISES
26 OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other
27 occasions.

28      40.    Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

1  LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing
2  insulation, other building materials, products, and toxic substances to be constructed, installed,
3  maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid
4  respective premises, by their own workers and/or by various unqualified or unskilled contractors,
5  and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances
6  into the ambient air and thereby created a hazardous and unsafe condition for the father of
7  Decedent, Ernesto Fernandez, and other persons exposed to said asbestos fibers and toxic
8  substances while present at said premises.

9  41.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
10 LIABILITY DEFENDANTS, and each of them, knew or in the exercise of ordinary and
11 reasonable care should have known, that the foregoing conditions and activities created a
12 dangerous, hazardous, and unsafe condition, and unreasonable risk of harm and personal injury to
13 plaintiff and other workers or persons so exposed present on each of the aforesaid respective
14 premises.

15 42.  At all times relevant herein, the father of Decedent, Ernesto Fernandez, entered
16 said premises and used or occupied each of said respective premises as intended and for each of
17 the respective PREMISES OWNER/ CONTRACTOR LIABILITY DEFENDANTS' benefit and
18 advantage and at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY
19 DEFENDANTS' request and invitation. In so doing, the father of Decedent, Ernesto Fernandez,
20 was exposed to dangerous quantities of asbestos fibers and other toxic substances released into
21 the ambient air by the aforesaid hazardous conditions and activities managed, maintained,
22 initiated, and/or otherwise created, controlled, or caused by said PREMISES
23 OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.
24 ///

25 43.  Plaintiff at all times was unaware of the hazardous condition or the risk of
26 personal injury created by the aforesaid presence and use of asbestos products and materials and
27 other toxic substances on said premises.

28 44.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd                      14

1  LIABILITY DEFENDANTS, and each of them, remained in control of the premises where the
2  father of Decedent, Ernesto Fernandez, was performing his work.

3      45.     Said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS
4  retained control over safety and other related conditions and circumstances at the father of
5  Decedent's, Ernesto Fernandez, job site(s) and affirmatively contributed to and exercised, or
6  failed to exercise, that control in a manner that caused Decedent's injuries from asbestos-
7  containing products.

8      46.     At all times mentioned herein, the PREMISES OWNER/CONTRACTOR
9  LIABILITY DEFENDANTS owed to the father of Decedent, Ernesto Fernandez, Decedent and
10  others similarly situated a duty to exercise ordinary care in the management of such premises so
11  as to avoid exposing workers such as the father of Decedent, Ernesto Fernandez, to an
12  unreasonable risk of harm and to avoid causing injury to said person.

13      47.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
14  LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and
15  reasonable care should have known, that the premises that were in their control would be used
16  without knowledge of, or inspection for, defects or dangerous conditions and that the persons
17  present and using said premises would not be aware of the aforesaid hazardous conditions to
18  which they were exposed on the premises.

19      48.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
20  LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect,
21  survey, or control said premises, or to abate, or correct, or to warn plaintiff of, the existence of
22  the aforesaid dangerous conditions and hazards on or about said premises.

23      49.     Prior to and at the times and places aforesaid, said PREMISES
24  OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused
25  certain asbestos-containing insulation, other building materials, products, and toxic substances to
26  be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their
27  aforesaid respective premises, by their own workers and/or by employing various contractors,
28  and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances

1 | into the ambient air and thereby injured Decedent.

2 |     50.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
3 | LIABILITY DEFENDANTS, and each of them:

4 |     a. Should have recognized that the work of said contractors would create during
5 | the progress of the work, dangerous, hazardous, and unsafe conditions, which could or would
6 | harm the father of Decedent, Ernesto Fernandez, Decedent and others unless special precautions
7 | were taken;

8 |     b. Knew or had reason to know, that the contractors it had selected and hired to
9 | install, remove, abate, or otherwise handle asbestos-containing materials were unfit, unskilled,
10 | unlicenced, or otherwise unqualified to do so;

11 |     c. Failed to use reasonable care to discover whether the contractors it selected and
12 | hired to install, remove, abate, or otherwise handle asbestos-containing materials were
13 | competent, or qualified to do so.

14 |     51.    In part, the father of Decedent, Ernesto Fernandez, and thereafter Decedent were
15 | exposed to dangerous asbestos fibers and other toxic substances by reason of such contractors'
16 | failure to take the necessary precautions.

17 |     52.    The work of contractors on premises controlled by the PREMISES
18 | OWNER/CONTRACTOR LIABILITY DEFENDANTS created an unsafe premise and an unsafe
19 | work place by reason of the release of dangerous quantities of toxic substances, including but not
20 | limited to asbestos.

21 |     53.    The unsafe premise or work place was created, in part, by the negligent conduct of
22 | the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY
23 | DEFENDANTS. Said negligent conduct includes, but is not limited to:

24 |     a.    Failure to warn of asbestos and other toxic dusts;

25 |     b.    Failure to suppress the asbestos-containing or toxic dusts;

26 |     c.    Failure to remove the asbestos-containing and toxic dusts through
27 | use of ventilation or appropriate means;

28 | ///

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd      16
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1          d.      Failure to provide adequate breathing protection, i.e., approved
2   respirators or masks;

3          e.      Failure to inspect and/or test the air;

4          f.      Failure to provide medical monitoring.

5          g.      Failure to select and hire a careful and competent contractor or
6   subcontractor.

7       54.     The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duties
8   to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions
9   are non-delegable; said duties arise out of, inter alia, common law, California Civil Code § 1714,
10  and California Labor Code § 6400, et seq., or California Health and Safety Code § 40.200, et
11  seq., and regulations promulgated thereunder. Accordingly, the PREMISES
12  OWNER/CONTRACTOR LIABILITY DEFENDANTS are responsible for any breach of said
13  duties whether by themselves or others.

14      55.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR
15  LIABILITY DEFENDANTS were subject to certain ordinances, standards, statutes, and other
16  government regulations promulgated by the United States Government, the State of California,
17  and others, including but not limited to the General Industry Safety Orders promulgated pursuant
18  to California Labor Code § 6400 and the California Administrative Code under the Division of
19  Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII,
20  Group 9 (Control of Hazardous Substances), Article 81, § 4150, § 4106, § 4107, and § 4108,
21  and Threshold Limit Values as documented for asbestos and other toxic substances under
22  Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code
23  § 40.200, et seq., which empowers the Bay Area Air Quality Management District (B.A.A.Q.D.)
24  to promulgate regulations including, but not limited to B.A.A.Q.D. Regulation 11, Rules 2 and
25  14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission
26  Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/
27  CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to
28  prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said

1    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the

2    required safeguards and precautions, or contractors employed by the PREMISES

3    OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards

4    and precautions. Defendants' violations of said codes include, but are not limited to:

5            (a)     Failing to comply with statutes and allowing ambient levels of airborne

6    asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

7    statutes;

8            (b)     Failing to segregate work involving the release of asbestos or other toxic

9    dusts;

10           (c)     Failing to suppress dust using prescribed ventilation techniques;

11           (d)     Failing to suppress dust using prescribed "wet down" techniques;

12           (e)     Failing to warn or educate plaintiff or others regarding asbestos or other

13    toxic substances on the premises;

14           (f)     Failing to provide approved respiratory protection devices;

15           (g)     Failing to ensure "approved" respiratory protection devices were used

16    adequately;

17           (h)     Failing to provide for an on-going health screening program for those

18    exposed to asbestos on the premises;

19           (i)     Failing to provide adequate housekeeping and clean-up of the work place;

20           (j)     Failing to adequately warn of the hazards associated with asbestos as

21    required by these statutes;

22           (k)     Failing to adequately report renovation and disturbance of asbestos-

23    containing materials, including but not limited to B.A.A.Q.M.D. Regulation 11, Rules 2 and 14;

24           (l)     Failing to have an asbestos removal supervisor as required by regulation;

25          (m)     Failing to get approval for renovation as required by statutes; and

26           (n)     Failing to maintain records as required by statute.

27    ///

28    ///

1      56.    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of
2  them, were the "statutory employer" of the father of Decedent, Ernesto Fernandez, as defined by
3  the California Labor Code and California case law.

4      57.    The father of Decedent, Ernesto Fernandez, and Decedent at all times were
5  unaware of the hazardous condition or the risk of personal injury created by defendants' violation
6  of said regulations, ordinances, or statutes.

7      58.    At all times mentioned herein, the father of Decedent, Ernesto Fernandez, and
8  Decedent were members of the class of persons whose safety was intended to be protected by the
9  regulations, standards, statutes, or ordinances described in the foregoing paragraphs.

10      59.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
11  LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and
12  reasonable care should have known, that the premises that were in their control would be used
13  without knowledge of, or inspection for, defects or dangerous conditions, that the persons present
14  and using said premises would not be aware of the aforesaid hazardous conditions to which they
15  were exposed on the premises, and that such persons were unaware of the aforesaid violations of
16  codes, regulations, and statutes.

17      60.    As a proximate result of the foregoing, Decedent developed asbestos-related
18  illness, which has caused great injury and disability as previously set forth, and plaintiff, has
19  suffered damages as herein alleged.

20      WHEREFORE, plaintiffs, pray judgment against defendants, their ALTERNATE
21  ENTITIES, and each of them, as hereinafter set forth.

22

### FOURTH  CAUSE OF ACTION
(Negligence - Wrongful Death)

23

24      PLAINTIFF DIANTHA FERNANDEZ, AS WRONGFUL DEATH HEIR, AND AS
25  SUCCESSOR-IN-INTEREST TO JOSEPH CHRISTOPHER FERNANDEZ DECEASED, AND
26  PLAINTIFF(S) GABRIEL SALOME, KRISTINA SALOME, DIANA REYES AS LEGAL
27  HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS ROLLS-ROYCE, PLC, TRIMAS
28  CORPORATION WHICH WILL DO BUSINESS IN CALIFORNIA AS NI INDUSTRIES,

INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

61.    Plaintiffs incorporate by reference each paragraph contained within the First Cause of Action as though fully set forth herein.

62.    The heirs at law of the Decedent and their relationship to the Decedent is set forth above.

63.    The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

64.    As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

65.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the surviving spouse.

66.    As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

67.    As a further direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

### FIFTH  CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF DIANTHA FERNANDEZ, AS WRONGFUL DEATH HEIR, AND AS

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd                              20
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1 | SUCCESSOR-IN-INTEREST TO JOSEPH CHRISTOPHER FERNANDEZ DECEASED, AND
2 | PLAINTIFF(S) GABRIEL SALOME, KRISTINA SALOME, DIANA REYES AS LEGAL
3 | HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS ROLLS-ROYCE, PLC, TRIMAS
4 | CORPORATION WHICH WILL DO BUSINESS IN CALIFORNIA AS NI INDUSTRIES,
5 | INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FIFTH,
6 | SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS
7 | LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

8      68.      Plaintiffs incorporate herein by reference, as though fully set forth herein, each
9 | paragraph of the First, Second and Third Causes of Action herein.

10     69.      As a direct and proximate result of the conduct of defendants, and each of them,
11 | Decedent's heirs have sustained the injuries and damages previously alleged.

12     WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and
13 | each of them, as hereinafter set forth.

14                                         **IV.**

15                              **DAMAGES AND PRAYER**

16     WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and
17 | each of them in an amount to be proved at trial in each individual case, as follows:

18     (a)     For plaintiffs' general damages according to proof;
19     (b)     For plaintiffs' loss of income, wages and earning potential according to proof;
20     (c)     For plaintiffs' medical and related expenses according to proof;
21     (d)     For plaintiffs' cost of suit herein;
22     (e)     For exemplary or punitive damages according to proof;
23     (f)     For damages for fraud according to proof; and
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

1 ||   ///

2 ||          (g)      For such other and further relief as the Court may deem just and proper, including

3 || costs and prejudgment interest.

4 || Dated: __4/8/11__                          BRAYTON❖PURCELL LLP

5

6 ||                                            By: _____

7 ||                                               David R. Donadio
                                                   Attorneys for Plaintiffs

8

9

10 ||                                  JURY DEMAND

11 ||       Plaintiffs hereby demand trial by jury of all issues of this cause.

12

13 || Dated: __4/8/11__                          BRAYTON❖PURCELL LLP

14

15 ||                                            By: _____

16 ||                                               David R. Donadio
                                                   Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd                22
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd                                   23
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1  EXHIBIT A

2  <u>Decedent</u>:  JOSEPH CHRISTOPHER FERNANDEZ, Deceased.

3

4  <u>Decedent's injuries</u>: Decedent was diagnosed with mesothelioma on or about October 2009.

5

6  Decedent died on April 9, 2010.

7

8  <u>Retirement Status</u>:  Decedent stopped working on November 2009, due to his asbestos-related

9  disease.

10

11  <u>Defendants:</u>  Plaintiffs contend that the asbestos-containing products to which Decedent was or

12  may have been exposed to were manufactured, supplied, distributed, installed and/or contracted

13  for by defendants and each of them.  Decedent's exposure to asbestos occurred at the following

14  times and places, and involved exposure to dust created by the contractors and the products of the

15  entities listed below.  The exposure includes, <u>but is not limited,</u> to the following presently known

16  contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Various unknown contractors, Modesto, CA | Various unknown contractors, Modesto, CA | Laborer | 1987-1988 |
| Scenic General Hospital, (aka Stanislaus County Medical Center) County of Stanislaus PO Box 770 Modesto, CA | Scenic General Hospital, Modesto, CA | Housekeeper | 1990-1994 |

24  <u>NON-OCCUPATIONAL EXPOSURE</u>:

25  Home Construction

26  Between 1977-1979 decedent lived with his family in Rayville Raytheon Village, a community
27  designed, constructed, operated and owned by Raytheon in Jeddah, Saudi Arabia. Raytheon and
   its contractors handled and disturbed asbestos-containing building materials during the
   construction of the Rayville Raytheon Village. Decedent and his family were residents of the
28  Rayville Raytheon Village during its construction. Decedent was exposed to asbestos thermal

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd  24
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1  insulation, asbestos-containing cement, spray-on fireproofing, cinder block, plaster, stucco, wall
2  finishing compounds, roofing materials and asbestos-cement pipe. As a child decedent and his
   friends played with "Hot Wheels" miniature toy cars and trucks. Decedent and his friends
3  created landscapes from the construction debris upon which they raced their toy cars. Among the
   materials decedent played with and around when he was a child were JOHNS MANVILLE
4  (MANVILLE TRUST) Roofing felts as well as JOHNS MANVILLE (MANVILLE TRUST)
   TRANSITE-brand asbestos cement pipe shards and miscellaneous pieces. Among the
5  construction debris with which decedent played were 5-gallon plastic buckets with the KAISER
   GYPSUM label on them. The buckets contained the dried contents which had spilled out.
6  Decedent also recalled UNITED STATES GYPSUM COMPANY, FLINTKOTE COMPANY,
   THE, and CELOTEX names and logos among the debris. Besides new residential construction
7  materials, decedent also played in construction debris piles during the new construction of the
   Rayville pool recreation center. In addition, decedent and his friends occasionally played in the
8  construction debris piles beyond the outer boundary walls of Rayville.

9  Between July 1980 - 1982 decedent lived with his family in Saudia City, Jeddah, Saudi Arabia, a
   community compound which provided housing for ex-patriots who were working for employers
10 in the Kingdom of Saudi Arabia. Housing units inside the compound were being constructed
   during the time decedent and his family resided in Saudia City. Decedent was exposed to
11 asbestos thermal insulation, asbestos-containing cement, spray-on fireproofing, cinder block,
   plaster, stucco, wall finishing compounds, roofing materials and asbestos cement pipe. Decedent
12 used construction debris to create obstacle courses and jumps for bicycle racing with his friends.

13 Automotive Repair

14 Decedent performed automotive repair on the following vehicles:

15 1988 MAZDA 626 - Decedent was given this vehicle used by his former girlfriend Wendy
   Collins. Decedent purchased "Lifetime Warranty" replacement brakes from KRAGEN AUTO
16 SUPPLY (CSK AUTO, INC.). Decedent also performed a second brake job on this vehicle in
   the mid 1990s and purchased replacement brake parts from KRAGEN AUTO SUPPLY.

17 1995 MAZDA Protégé - This car was purchased new by plaintiff's wife Diantha Fernandez
   around 1996. Decedent performed the first brake job on this vehicle, removing the original
18 brakes. Both Diantha Fernandez and decedent's son Gabriel Salome recall decedent performing a
   brake job on this vehicle in 1998. Replacement brakes were purchased from KRAGEN AUTO
19 SUPPLY (CSK AUTO, INC.) on Hatch Road, Ceres, California. Decedent performed a second
   brake job in approximately 2001with replacement pads he purchased from KRAGEN AUTO
20 SUPPLY.

21 1983 CHEVROLET Silverado 4X4 pickup - This truck was owned by decedent 's wife, Diantha
   Fernandez, which she purchased used in the mid-1990s. Decedent changed the brakes on this
22 vehicle. Decedent recalled the replacement brakes came in a blue box. Diantha Fernandez and
   Gabriel Salome recall replacement brakes were purchased from KRAGEN AUTO SUPPLY in
23 Ceres, California (CSK AUTO, INC.).

24 1974 CHEVROLET Cheyenne - Decedent and his wife purchased this vehicle used in the late
   1990s. Decedent replaced the brake pads on this vehicle. Gabriel Salome recalls the
25 replacement brakes were purchased from KRAGEN AUTO SUPPLY in Ceres, California (CSK
   AUTO, INC.).
26
   Decedent performed repair work with his father, Ernesto Fernandez, on the following vehicles:
27
   Ford Ranger Pickup - Decedent performed two brake repair jobs at different times on this Ford
28 Ranger, alongside his father.

1  Ford Granada - Decedent performed a brake job alongside his father.
   Plaintiff currently contends decedent was exposed to asbestos during this automobile repair
2  work.

3

4  PARA-OCCUPATIONAL EXPOSURE:

5  Decedent lived with his father, Ernesto Fernandez, South Padre Island, Texas, at various
   locations, from his birth in 1969 until 1987. Decedent recalled his father returning home from
6  work in dust-laden clothes. Decedent recalled being in close proximity to his mother as she
   shook his father's dust-laden work clothes before laundering them. Decedent's father's work
7  history is as follows:

8  | Employer | Location of Exposure | Job Title | Exposure Dates |
   |---|---|---|---|
9  | Saudia Arabian Airlines, Jeddah, Saudia Arabia | Saudia Arabian Airlines, Jeddah, Saudia Arabia | Aircraft Mechanic | 1980-1982 |
10 | Norris Industries, River Bank, CA | Norris Industries, Army Ordnance Depot, Riverbank, CA | Quality Control Inspector | 1986-1987 |
11

12

13 Automotive Repair work by plaintiff's father, Ernesto Fernandez:

14 1965 VOLKSWAGEN Beetle - Decedent's father owned this car in Germany while employed by
   Raytheon and performed this work at the Raytheon facility. Decedent's father removed and
15 installed drum brake shoes on two wheels in approximately 1969 or 1970. Decedent's father
   first purchased BOSCH brand replacement brake shoes. Decedent's father also removed and
16 installed carburetor gaskets. Decedent's father installed BOSCH brand carburetor gaskets. After
   performing this work, decedent's father returned to the family home and picked up and greeted
17 his newborn son, plaintiff.

18 VOLKSWAGEN Variant Station Wagon - Upon returning from Germany, decedent's father
   owned a VOLKSWAGEN Variant for family use in El Paso, Texas. Decedent's father recalls
19 this vehicle had less than 50,000 miles when it was purchased from military personnel stationed
   at Fort Bliss, Texas. Decedent's father changed the brakes on this vehicle in the early to mid-
20 1970s. Decedent's father purchased BOSCH brand replacement brake shoes which he roughed
   up during the course of installation. Decedent's father utilized compressed air during the course
21 of this work. Decedent was present during this work.

22 1965 or 1966 VOLKSWAGEN Beetle - During the time period decedent's family lived in El
   Paso, Texas, his father owned this vehicle. Decedent's father, Ernesto Fernandez, overhauled the
23 engine in the early to mid 1970s, rebuilding it inside the family garage. During the course of this
   work, Ernesto Fernandez replaced the clutch with a clutch purchased from a VOLKSWAGEN
24 dealership.

25 DODGE "Ram" Sedan - Decedent's father owned this V-8 driven sedan Ram, which he
   purchased used in El Paso, Texas. Decedent's father changed out the carburetor system,
26 removing and reinstalling gaskets in the course of that work. Decedent's father replaced the
   muffler system with Smitty's brand mufflers.

27

28 FORD Granada - Decedent's father, Ernesto Fernandez, owned a Ford Granada in El Paso,
   Texas, in the 1980s, during which time he performed one brake job. Decedent's father

1  purchased the replacement F-O-M-O-C-O brake shoes from a FORD dealership located on
2  Montana Street in El Paso, Texas. Decedent was taught by his father to rough up brake shoes
   during this occasion, wherein decedent's father taught plaintiff to perform brake work.

3  FORD Ranger - During decedent's time with his father in El Paso, Texas, in the 1980s, decedent
4  helped his father perform brake work on this Ford Ranger. Decedent's father recalls performing
   work on all four wheels and purchasing replacement brakes from a FORD dealership.
   Decedent's father recalls purchasing F-O-M-O-C-O-brand brake shoes. Decedent helped his
5  father, including roughing up the new shoes in the process of installation.

6  Plaintiff currently contends decedent was exposed to asbestos as a result of his father's
   automobile repair work.
7

## PARA-OCCUPATIONAL EXPOSURE:
8

   Decedent lived with his mother, Ester Fernandez, South Padre Island, Texas, from his birth in
9  1969, until 1987. Decedent recalled his mother returning home from work with dust-laden
   clothes. Decedent's mother's work history is as follows:
10

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Terk Distributing Co., Inc.<br>5709 Burning Tree Dr.<br>El Paso, TX 79912<br>(Hugos International Liquors<br>Pan American Exports<br>5709 Burning Tree Dr.<br>El Paso, TX 79912) | Terk Distributing,<br>El Paso, Texas | Secretary | 1970-09/1973 |
| R.D. Sherman Mfg. Inc.<br>304 Euclid<br>El Paso, TX 79905 | R. D. Sherman<br>Manufacturing, Inc.,<br>El Paso, TX | Secretary | 09/1973-03/1974 |
| Foster-Schwartz<br>Development Corp.<br>6080 Surety Dr.<br>El Paso, TX 79905 | Foster Schwartz,<br>El Paso, TX | Secretary | 4/1974-11/1976 |
| Corp of Engineers<br>Department of the Army Corp<br>of Engineers<br>PO Box 7040<br>Bellevue, NE 68005 | Jeddah,<br>Saudi Arabia | Administrative<br>Clerk | 1978<br>(a few months) |
| EZ Tight, Inc.<br>2115 E. Missouri<br>El Paso, ,TX 79903 | EZ Tight Gorman<br>Insulation,<br>El Paso, TX | Secretary | 1983-1984 |

K:\Injured\112810\FED\PLD\cmp fed (wd).wpd

27

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL