# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ALLIED PACKING & SUPPLY, INC.,
CAMPBELL INDUSTRIES,
NATIONAL STEEL AND SHIPBUILDING COMPANY,

and DOES 1 - 800.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
AIDA SAVELESKY

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

AUG - 6 2010

CLERK OF THE SUPERIOR COURT
By Barbara LaMotte
Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER:
*(Número del Caso):* RG 10 529660

Superior Court of the State of California
County of Alameda
1225 Fallon Street
Oakland, CA 94612-4280

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dean A. Hanley, Esq. (SBN 169507)          (510)559-9980   (510)559-9970
Paul & Hanley LLP
1608 Fourth Street, Suite 300
Berkeley, CA 94710

DATE:    AUG - 6 2010    PAT S. SWEETEN    Clerk, by    Barbara LaMotte    , Deputy
*(Fecha)*                                  *(Secretario)*                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ▢ as an individual defendant.

2. ▢ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* NATIONAL STEEL AND SHIPBUILDING COMPANY

under:   ☒ CCP 416.10 (corporation)          ▢ CCP 416.60 (minor)
         ▢ CCP 416.20 (defunct corporation)   ▢ CCP 416.70 (conservatee)
         ▢ CCP 416.40 (association or partnership)   ▢ CCP 416.90 (authorized person)
         ▢ other *(specify):*

4. ▢ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California

SUMMONS

Legal
Solutions

Code of Civil Procedure §§ 412.20, 465

Dean A. Hanley, Esq. (State Bar No. 169507)
Benjamin D. Goldstein, Esq. (State Bar No.231699)
Rohit S. Kodical, Esq. (State Bar No.215497)
PAUL & HANLEY LLP
1608 Fourth Street, Suite 300
Berkeley, California 94710
Telephone:     (510) 559-9980
Facsimile:     (510) 559-9970

Attorneys for Plaintiff

ENDORSED
FILED
ALAMEDA COUNTY

AUG - 6 2010

CLERK OF THE SUPERIOR COURT
By ___ Barbara LaMotte
                                    Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA - COURT OF UNLIMITED JURISDICTION

AIDA SAVELESKY,

      Plaintiff,

vs.

ALLIED PACKING & SUPPLY, INC.,
CAMPBELL INDUSTRIES,
NATIONAL STEEL AND SHIPBUILDING
     COMPANY,

and DOES 1 – 800,

      Defendants.

Case No. RG 10529660

COMPLAINT FOR
PERSONAL INJURY
ASBESTOS

## GENERAL ALLEGATIONS

COMES NOW plaintiff AIDA SAVELESKY and complains and alleges as follows:

1.     Plaintiff AIDA SAVELESKY has been diagnosed with mesothelioma.

2.     Prior to her diagnosis, plaintiff AIDA SAVELESKY was exposed to asbestos as alleged hereinafter.

///

///

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM - ASBESTOS                    Page 1

3.     Plaintiff AIDA SAVELESKY'S cumulative exposure to asbestos as a result of acts and omissions of defendants and the defective products as hereinafter alleged, individually and together, was a substantial factor in increasing plaintiff's risk of mesothelioma and other related injuries and therefore a legal cause of plaintiff's injuries and damages.

4.     Each of the herein named defendants is liable for its own tortious conduct and/or the tortious conduct of an "alternate entity" as hereinafter defined. Defendants, and each of them, including but not limited to the following defendants, are liable for the acts of their "alternate entity," and each of them, in that there has been a corporate name change, defendant is the successor by merger or successor by other acquisition resulting a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

5.     The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 800, are unknown to plaintiff at this time, who therefore sues said defendants by such fictitious names.  When the true names and capacities of said defendants have been ascertained, plaintiff will amend the complaint accordingly.  Plaintiff is informed and believes, and thereon alleges, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages thereby to the plaintiff, as hereinafter alleged.

///

///

6.     At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venturer of their co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

7.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendants ALLIED PACKING & SUPPLY, INC., CAMPBELL INDUSTRIES, NATIONAL STEEL AND SHIPBUILDING COMPANY, and DOES 1 through 800, inclusive, were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Alameda, State of California.

8.     Plaintiff AIDA SAVELESKY is informed and believes, and thereon alleges, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

9.     As a direct and proximate result of the conduct as hereinafter alleged, plaintiff AIDA SAVELESKY suffered permanent injuries, including, but not limited to, cancer and other lung damage, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to her general damage in the sum in excess of the jurisdictional limits of the Court of Limited Jurisdiction.

///

///

///

10.     As a direct and proximate result of the conduct as hereinafter alleged, plaintiff AIDA SAVELESKY has incurred and will continue in the future to incur liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

11.     As a further direct and proximate result of the conduct as hereinafter alleged, plaintiff AIDA SAVELESKY has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend their complaint to conform to proof at the time of trial.

12.     As a result of the conduct as hereinafter alleged, plaintiff AIDA SAVELESKY has been caused great pain and suffering.

### FIRST CAUSE OF ACTION
#### (Negligence)

**PLAINTIFF AIDA SAVELESKY COMPLAINS OF ALLIED PACKING & SUPPLY, INC., AND DOES 1-300 AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE, ALLEGES AS FOLLOWS:**

13.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

14.     At all times herein mentioned, each of the named defendants and DOES 1 through 300 was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos.

15.     At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons."

16.     Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

17.     Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

///

18.     Defendants, their "alternate entities" and each of them, were aware of their asbestos and asbestos-containing products' defect prior to placing their products in the stream of commerce, but failed to warn and/or failed to adequately warn plaintiff, plaintiff's employers, and others of the known hazards associated with their products.

19.     Defendants, their "alternate entities" and each of them, became aware of their asbestos and asbestos-containing products' defect after their asbestos product was placed in the stream of commerce, but unreasonably failed to recall or retrofit their products, nor to warn and/or failed to adequately warn plaintiff, plaintiff's employers, and others of the known hazards associated with their products.

20.     Plaintiff used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit A, attached hereto and incorporated by reference herein and/or by the work of others at said locations.

21.     With regard to asbestos-containing friction brake products, which products were defective as alleged herein, plaintiff further alleges defendants produced a substantial share of the market during the time in question. Brake products produced by each of said defendants were fungible, in that they were interchangeable with brake products produced by the other said defendants. Plaintiff's primary exposure to asbestos fibers from brake products came during inspection and replacement of worn brake products, and the producers of the brake products that caused plaintiff's injuries cannot be identified, through no fault of plaintiff.

22.     The aforementioned asbestos-containing brake products were toxic and carcinogenic and were used in conjunction with one another, all resulting in cumulative injury and harm to the plaintiff herein. Plaintiff therefore alleges it is the burden of the defendants, their "alternate entities," and each of them, to prove the asbestos and asbestos-containing products

manufactured, sold, supplied, applied or distributed by them were not the cause of plaintiff's

injury in accordance with the holdings of Sindell v. Abbott Laboratories (1980) 26 Cal.3d 588;

Wheeler v. Raybestos-Manhattan (1992) 8 Cal.App. 4th 1152 and Pereira v. Dow Chemical

Company, Inc. (1982) 129 Cal.App.3d 865.

23.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

containing products presented any risk of injury and/or disease.

24.     Defendants' conduct and defective products as described in this cause of action

were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by

plaintiff.

25.     Furthermore, the conduct of defendants, their "alternate entities" and each of them

in continuing to market and sell products which they knew were dangerous to plaintiff and the

public without adequate warnings or proper use instructions was done in a conscious disregard

and indifference to the safety and health of plaintiff and others similarly situated.

26.     In researching, manufacturing, fabricating, designing, modifying, testing or failing

to test, warning or failing to warn, failing to recall or retrofit, labeling, assembling, distributing,

leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting

for installation, repairing, marketing, warranting, rebranding, manufacturing for others,

packaging and advertising asbestos and asbestos-containing products, defendants, their "alternate

entities," and each of them, did so with conscious disregard for the safety of "exposed persons"

who came in contact with said asbestos and asbestos-containing products, in that said defendants,

their "alternate entities," and each of them, had prior knowledge that there was a substantial risk

of injury or death resulting from exposure to asbestos or asbestos-containing products, including,

but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in

part, from scientific studies performed by, at the request of, or with the assistance of, said

defendants, their "alternate entities," and each of them, and which knowledge was obtained by said defendants, their "alternate entities," and each of them on or before 1930, and thereafter.

27.     On or before 1930, and thereafter, said defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their "alternate entities," and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

28.     The above-referenced conduct of said defendants, their "alternate entities," and each of them, was motivated by the financial interest of said defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

///

///

///

29.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

30.     The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
#### (Strict Liability)

**AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF AIDA SAVELESKY COMPLAINS OF ALLIED PACKING & SUPPLY, INC., AND DOES 1-300 AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

31.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

32.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

33.     Defendants' conduct and defective products as described in this cause of action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

///

34. Furthermore, the conduct of defendants, their "alternate entities" and each of them in continuing to market and sell products which they knew were dangerous to plaintiff and the public without adequate warnings or proper use instructions was done in a conscious disregard and indifference to the safety and health of plaintiff and others similarly situated.

35. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, failing to recall or retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their "alternate entities," and each of them, and which knowledge was obtained by said defendants, their "alternate entities," and each of them on or before 1930, and thereafter.

36. On or before 1930, and thereafter, said defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their "alternate entities," and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-

containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

37.   The above-referenced conduct of said defendants, their "alternate entities," and each of them, was motivated by the financial interest of said defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

38.   Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

39.   The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

///

///

///

40.     At all times herein mentioned, each of the named defendants and DOES 1 through 300 was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos.

41.     Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

42.     Plaintiff used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit A, attached hereto and incorporated by reference herein and/or by the work of others at said locations.

///

///

43.     With regard to asbestos-containing friction brake products, which products were defective as alleged herein, plaintiff further alleges Defendants produced a substantial share of the market during the time in question. Brake products produced by each of said defendants were fungible, in that they were interchangeable with brake products produced by the other said defendants. Plaintiff's primary exposure to asbestos fibers from brake products came during inspection and replacement of worn brake products, and the producers of the brake products that caused plaintiff's injuries cannot be identified, through no fault of plaintiff.

44.     The aforementioned asbestos-containing brake products were toxic and carcinogenic and were used in conjunction with one another, all resulting in cumulative injury and harm to the plaintiff herein. Plaintiff therefore alleges it is the burden of the defendants, their "alternate entities," and each of them, to prove the asbestos and asbestos-containing products manufactured, sold, supplied, applied or distributed by them were not the cause of plaintiff's injury in accordance with the holdings of Sindell v. Abbott Laboratories (1980) 26 Cal.3d 588; Wheeler v. Raybestos-Manhattan (1992) 8 Cal.App. 4th 1152 and Pereira v. Dow Chemical Company, Inc. (1982) 129 Cal.App.3d 865.

45.     Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

46.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that said products did not perform as safely as expected by an ordinary consumer when used in an intended or reasonably known manner as said products did, in fact, release asbestos fibers and asbestos dust causing serious disease and/or death through inhalation of said asbestos. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products were intended to reach the

ultimate consumer in the same condition as it left defendants. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons," including plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

47.    "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which plaintiff and others similarly situated were exposed.

48.    The gravity of the potential harm resulting from the use of Defendants' defective products as described in this cause of action, and the likelihood such harm would occur, outweighed the cost of feasible alternative designs, including providing adequate warning of such potential harm.

49.    Defendants' defective products as described in this cause of action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
#### (False Representation Under Restatement of Torts Section 402-B)

**AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFF AIDA SAVELESKY COMPLAINS OF ALLIED PACKING & SUPPLY, INC., AND DOES 1-300 AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

50.    Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the General Allegations and the First (Negligence) and Second (Strict Liability) Causes of Action.

///

51.     At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the defendants, their "alternate entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the plaintiff herein and plaintiff's employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

52.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the plaintiff and plaintiff's employers, relied upon said representations of defendants, their "alternate entities," and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

53.     Said representations by defendants, their "alternate entities," and each of them, were false and untrue, and defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products, were not safe for their intended use, nor were they of merchantable quality as represented by defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including plaintiff herein.

54.     As a direct and proximate result of said false representations by defendants, their "alternate entities," and each of them, plaintiff sustained the injuries and damages herein above set forth.

55.     The herein-described conduct of said defendants was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons" including plaintiff. Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### (Intentional Tort)

**AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFF AIDA SAVELESKY COMPLAINS OF ALLIED PACKING & SUPPLY, INC., AND DOES 1-300 AND EACH OF THEM, AND ALLEGES:**

56.     Plaintiff, by this reference, hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the General Allegations and the First (Negligence) and Third (False Representation) Causes of Action herein excepting therefrom allegations pertaining to negligence.

57.     At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed plaintiff a duty, as provided for in Section 1708 through 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) and, more specifically, included suggestions of fact which were not true and which defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true,

and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned Civil Code sections.

58.    Since on or before 1930, the defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiff's First Cause of Action were and are hazardous to the health and safety of plaintiff, and others in plaintiff's position working in close proximity with such materials. The defendants, their "alternate entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time. With intent to deceive plaintiff, and others in plaintiff's position, and with intent that plaintiff and such others should be and remain ignorant of such facts with intent to induce plaintiff and such others to alter their positions to their injury and/or risk and in order to gain advantages, the following acts occurred:

a)    Defendants, their "alternate entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of plaintiff and others in plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein when the knowledge of such hazards was existing and known to defendants, their "alternate entities," and each of them, since 1924. By not labeling such materials as to their said hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to plaintiff that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true and defendants, their "alternate entities," and each of them, did not believe it to be true;

///

b)      Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would given general notice to the public and knowledge of the hazardous nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose such information;

c)      Defendants, their "alternate entities," and each of them, sold the aforementioned products and materials to plaintiff's employer and others without advising plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their "alternate entities," and each of them, caused to be positively asserted to plaintiff that which was not true and that which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, to wit, that it was safe for plaintiff to work in close proximity to such materials;

d)      Defendants, their "alternate entities," and each of them, suppressed from plaintiff medical and scientific data and knowledge of the results of studies including, but not limited to, the information and knowledge of the contents of the Lanza report. Although bound to disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change her report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

e)      Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading plaintiff by the suggestions and deceptions set forth above in their cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in their committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to plaintiff at this time;

f)      Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities," and each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to defendant herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead plaintiff. Such facts did mislead plaintiff and others by

withholding the afore-described medical and scientific data and other knowledge and by not giving plaintiff the true facts concerning such knowledge of danger, which defendants, their "alternate entities," and each of them, were bound to disclose;

g)      Defendants, their "alternate entities," and each of them, failed to warn plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

h)      Defendants, their "alternate entities," and each of them, failed to provide plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the plaintiff and others applying and installing such material;

i)      Defendants, their "alternate entities," and each of them, when under a duty to so disclose, concealed from plaintiff the true nature of the industrial exposure of plaintiff and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "alternate entities," and each of them, also concealed from plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

///

///

///

j)      Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by plaintiff and plaintiff's employers so that said physicians could examine, diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

k)   Defendants, their "alternate entities," and each of them, failed to provide adequate information to physicians and surgeons retained by plaintiff's employers and their predecessor companies, for purposes of making physical examinations of plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

59.      Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file First Report of Occupational Injury of Illness regarding plaintiff's injuries, as required by law, and did willfully fail and omit to file report of injury and occupational disease with the State of California. Plaintiff was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

60.      Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duty to inform plaintiff about the true facts, and knowing the plaintiff did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause plaintiff to remain unaware of the true facts and to induce plaintiff to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (Premise Owner/Contractor Liability)

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF AIDA SAVELESKY COMPLAINS OF CAMPBELL INDUSTRIES, NATIONAL STEEL AND SHIPBUILDING COMPANY, DOES 301-500, (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

61.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

62.     At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants was an entity and/or successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity, hereinafter collectively be called "alternate entities," causing certain asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them.

63.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed on Exhibit A, where plaintiff's husband was present.  The information provided on Exhibit A is preliminary, based on recall over events covering many years and further investigation and discovery may produce more accurate information. Additionally, plaintiff and/or her husband might have been present at these or other Premises Owner/Contractor Liability Defendants' or their "alternate entities'" premises at other locations and on other occasions.

///

///

///

64.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, disturbed and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to plaintiff and other persons exposed to said asbestos fibers and toxic substances on and off the premises.

65.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

66.     At all times relevant herein, plaintiff's husband entered said premises and used or occupied each of said respective premises as intended and for the pecuniary benefit and advantage of each of the respective Premises Owner/Contractor Liability Defendants or their "alternate entities" and at each of their request and invitation.  In so doing, plaintiff's husband was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled or caused by said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them; these asbestos fibers contaminated his skin, hair, clothes, and shoes.

///

67.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.  Plaintiff's husband at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

68.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, remained in control of the premises where plaintiff's husband worked and on which dangerous conditions existed.

69.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, owed to plaintiff and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers and others to an unreasonable risk of harm and to avoid causing injury to said persons.

70.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions on the premises including the hazard those conditions posed to members of their households.

71.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff and/or her husband of, the existence of the aforesaid dangerous conditions and hazards on said premises.

///

///

72.     Plaintiff's husband used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos occurred as a result of her husband's exposure to asbestos on defendants' premises, and plaintiff's exposure as a member of her husband's household also was reasonably foreseeable to defendants.

73.     Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, respectively, caused certain asbestos-containing thermal insulation, other asbestos-containing building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired, disturbed and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

74.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, knew or should have recognized that the work of said contractors created, during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken. The Premises Owner/Contractor Defendants knew or should have known that the work required special procedures to be done safely. The Premises Owner/Contractor Defendants were aware or should have been aware that such special procedures were not taken.

75.     In part, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of said Premises Owner/Contractor Defendants' failure to take the necessary precautions.

///

///

///

76.     The work of contractors on premises controlled by the Premises Owner/Contractor Defendants, their "alternate entities" and each of them, created unsafe premises and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

77.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants, their "alternate entities" and each of them. Said negligent conduct includes but is not limited to:

a)   Failure to warn of asbestos and other toxic dusts;

b)   Failure to suppress the asbestos-containing or toxic dusts;

c)   Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

d)   Failure to segregate and isolate work activities generating asbestos-containing and toxic dusts;

e)   Failure to provide adequate breathing protection, i.e., approved respirators or masks;

f)   Failure to inspect and/or test the air;

g)   Failure to prevent contamination of the clothing and bodies of workers on the premises;

h)   Failure to provide and require methods of de-contamination, such as showering and laundering of work clothing;

i)   Failure to prevent asbestos-containing and other toxic dusts from being transported by workers on the premises to their homes and households;

j)   Failure to provide medical monitoring.

///

///

78.     The Premises Owner/Contractor Defendants' and their "alternate entities" duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1714, and Labor Code §6400, et seq., or Health and Safety Code §40.200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

79.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders. Additionally, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, were required to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances as prescribed by Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants and under the regulations promulgated by California regional Air Quality Management Districts as empowered by California Health and Safety Code §40.200, et seq., , including but not limited to South Coast Air Quality Management District Regulation XIV, Rules 1403 and 1414; Bay Area Air Quality Management District Regulation 11, Rules 2 and 14; Mojave Desert Air Quality Management District, Regulation IX, Regulation X, Rule 1000 and Notification (ATCMs) thereto as revised 11/27/00); Imperial Air Quality Management District, Regulation X, Rules

1001 and 1002;  San Diego Air Quality Management District, Regulation IV, Rules 50, 50.1, 54, 54.1,  Regulation X, Subpart A, Regulation XI, Subparts A and M; Antelope Valley Air Quality Management District, Regulation X, Rule 1000, Regulation XIV, Rule 1414;  Ventura County Air Pollution Control District, Regulation IV, Rule 62.7, Rule 73;  Santa Barbara County Air Pollution Control District, Regulation X, 1001; San Luis Obispo County Air Pollution Control District, Regulation IV, Rule 412, Regulation VII, Rule 701; Kern Air County Quality Management District, Regulation IV, Rules 402 and 423;  Great Basin Unified Air Pollution Control District, Regulation IV, Rule 430, Regulation X, Rule 1002; San Joaquin Valley Unified Air Pollution Control District, Regulation IV, Rule 4002, Regulation VII, Rule 7050; Monterey Bay Unified Air Pollution Control District, Regulation V, Rule 436, Regulation X, Rule 1008; Mariposa County Air Pollution Control District, Regulation IX, Rule 904, Regulation X, Rule 1001; Tuolumne County Air Pollution Control District, Regulation V, Rule 500, et seq, Regulation IX, Rule 904;  Calaveras County Air Pollution Control District, Regulation IX, Rule 906, Regulation X, Rule 1001; Amador County Air Pollution Control District, Regulation V, Rule 500 et seq.;  Sacramento Metropolitan Air Quality Management District, Regulation IX, Rules 901, 902, 904; El Dorado County Air Quality Management District, Regulation II, Rule 223, 223-1, and 223-2; Yolo-Solano air Quality Management District, Regulation III, Rules 3-8, Regulation IX, Rules 9-8 and 9-9; Feather River Air Quality Management District, Regulation X, Rule 10, et seq, Regulation XI, Rule 11-2; Placer County Air Pollution Control District, Regulation II, Rule 224, Regulation V, Rule 507, Rule IX, Rule 905; Northern Sierra Air Quality Management District, Regulation IX, Rule 904; Northern Sonoma County Air Pollution District, Chapter IV, Rule 1-4-492; Colusa County Air Pollution Control District, Regulation II, 2-43, Regulation III, Rules 3-17 and 3-18, and Appendix D; Lake County Air Quality Management District, Chapter II, Sections 450 and 467l; Mendocino County Air Quality Management District, Chapter IV, Rules 1-430, 1-492; Glenn County Air Pollution Control District, Articles

III and IV; Butte County Air Quality Management District, Rules 1000, 1101, 430; Tehama County Air Pollution Control District, Regulations IV and VI; Lassen County Air Pollution Control District, Regulation IV, Rule 421 and Appendix C; Shasta County Air Quality Management District, Rules 2-1, 3-22, and 5, North Coast Unified Air Quality Management District Regulation 1, Rules 430 and 492, and Regulation 3, Rules 3-100 et seq.; Siskiyou County Air Pollution Control District, Regulation IV, Rule 4-13, Regulation VIII, Rule 8-7; Modoc County Air Pollution Control District, Regulation IV, Rule 4-13, Regulation VIII, Rule 8-7. Said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them:

a) Failed to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

b) Failed to segregate work involving the release of asbestos or other toxic dusts;

c) Failed to suppress dust using prescribed ventilation techniques;

d) Failed to suppress dust using prescribed "wet down" techniques;

e) Failed to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

f) Failed to provide approved respiratory protection devices;

g) Failed to ensure "approved" respiratory protection devices were used properly;

h) Failed to provide for an on-going health screening program for those exposed to asbestos on the premises;

i) Failed to provide adequate housekeeping and clean-up of the work place;

///

j)      Failed to properly warn of the hazards associated with asbestos as required by these statutes;

k)      Failed to properly report renovation and disturbance of asbestos-containing materials, including but not limited to BAAQMD Regulation 11-2-401 and/or SCQAMD Rule 1403 D(1);

l)      Failed to have an asbestos removal supervisor as required by regulation;

m)      Failed to get approval for renovation as required by statutes; and

n)      Failed to maintain records as required by statute.

80.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the violation of said regulations, ordinances or statutes by said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them.

81.     At all times mentioned herein, plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

82.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "alternate entities" and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

83.     Plaintiff's husband used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable to defendants. Plaintiff's exposure to asbestos occurred as a result of her husband's foreseeable

exposure to asbestos on defendants' premises, and plaintiff's exposure as a member of her husband's household also was reasonably foreseeable to defendants.

84. As a legal consequence of the foregoing, plaintiff developed an asbestos-related illness, which caused great injury and disability as previously set forth, and plaintiff has suffered damages as herein alleged.

85. In performing the acts and omissions described in Paragraphs 71, 73, 76, 77 and 79 above, defendants intentionally undertook acts and omissions so unreasonable and dangerous that they knew that plaintiff or others similarly situated would probably receive serious injury and/or they acted with a wanton and reckless disregard of the possible results of their conduct.

86. Defendants' officers, directors, and/or managing agents possessed the advance knowledge and conscious disregard described above; and/or authorized or ratified the acts and omission that were so unreasonable and dangerous that serious harm would probably result.

WHEREFORE, plaintiff prays judgment against said Premises Owner/Contractor Liability Defendants, their "alternate entities," and each of them, as hereinafter set forth.

### SIXTH CAUSE OF ACTION
(General Negligence – Premise Owner/Contractor)

AS AND FOR A SIXTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR GENERAL NEGLIGENCE, PLAINTIFF AIDA SAVELESKY COMPLAINS OF CAMPBELL INDUSTRIES, NATIONAL STEEL AND SHIPBUILDING COMPANY, DOES 301-500 AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

87. Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

88. Prior to and during all relevant times defendants employed workers in areas where defendants owned, maintained, controlled, managed and/or conducted business activities where plaintiff's husband ALLEN R. SAVELESKY worked and/or spent time.

///

89.     At all times herein mentioned, defendants selected, supplied, and distributed asbestos containing materials to their employees for use during their regular work activities and said employees disturbed asbestos containing materials.

90.     Defendants were negligent in selecting, supplying, distributing and disturbing the asbestos containing products in that said products were unsafe in that, when handled, they released asbestos fibers and dust into the air which settled onto plaintiff's husband's clothes, shoes, hands, face, hair, skin, and other body parts thus creating a situation whereby workers and by-standers including plaintiff would be exposed to dangerous asbestos dust.

91.     The asbestos and asbestos-containing materials described herein were unsafe in that handling and disturbing products which contain asbestos causes the release of asbestos fibers into the air, and the inhalation of asbestos fibers causes serious disease and death. Here, the handling of the above-described asbestos containing materials by defendants' employees, as required by their employment and occurring during the course and scope of their employment, did, in fact, cause personal injuries, including mesothelioma and other lung damage, to exposed persons, including plaintiff.

92.     At all times herein mentioned, defendants knew or should have known that its employees and bystanders thereto, including plaintiff, frequently encountered asbestos-containing products and materials during the course and scope of their work activities.

93.     At all times herein mentioned, defendants knew or should have known that the asbestos-containing materials encountered by its employees and bystanders thereto including plaintiff, were unsafe in that harmful asbestos fibers were released during the use, handling, breaking, or other manipulation of asbestos-containing products and materials, and that once released, asbestos fibers can be inhaled, and can alight on the clothes, shoes, skin, hair, and body parts of those exposed, where further activity causes the fibers to once again be released into the air where they can be inhaled, all of which causes serious disease and/or death.

94.     At all times herein mentioned, defendants, and each of them knew, or in the exercise of reasonable diligence should have known, that absent adequate training and supervision, their employees and bystanders thereto including plaintiff were neither qualified nor able to identify asbestos-containing products nor to identify the hazardous nature of their work activities involving asbestos-containing products.

95.     At all times herein mentioned, plaintiff was unaware of the dangerous condition and unreasonable risk of personal injury created by the aforesaid presence and use of asbestos-containing products and materials.

96.     At all time herein mentioned, defendants, and each of them knew, or in the exercise of reasonable diligence should have known, that workers and bystanders thereto, including plaintiff would bring dangerous dust home from the workplace and contaminate their homes, potentially causing injury to others off the premises.

97.     At all times herein mentioned, defendants had a duty to use due care in the selection, supply, distribution and disturbance of asbestos containing products and materials to its employees, to adequately instruct, train, and supervise their employees and to implement adequate safety policies and procedures to protect workers and persons encountering those workers, including plaintiff,  from suffering injury or death as a result of the asbestos hazards encountered and created by the work of defendants' employees.

98.     Defendants' duties as alleged herein exist and existed independently of defendants' duties to maintain their premises in reasonably safe condition, free from concealed hazards.

99.     Defendants negligently selected, supplied, and distributed the asbestos containing materials and failed to adequately train or supervise their employees to identify asbestos-containing products and materials; to ensure the safe handling of asbestos-containing products and materials encountered during the course of their work activities; and to guard against

inhalation of asbestos fibers and against the inhalation of asbestos fibers by those who would come into close contact with them after they had used, disturbed, or handled, said asbestos-containing products and materials during the course and scope of their employment by defendants.

100.    Defendants failed to warn its employees and bystanders thereto including plaintiff, of the known hazards associated with asbestos and the asbestos materials they were using and/or disturbing.

101.    As a direct and proximate result of the conduct of defendants in selecting, supplying, distributing and disturbing asbestos-containing materials and failing to adequately train and supervise their employees and failing to adopt and implement adequate safety policies and procedures as alleged herein, plaintiff became exposed to and inhaled asbestos fibers, which was a substantial factor causing her to develop asbestos-related conditions and diseases from which decedent died.

102.    In performing the acts and omissions described in Paragraphs 88-91 and 99-101 above, defendants intentionally undertook acts and omissions so unreasonable and dangerous that they knew that plaintiff or others similarly situated would probably receive serious injury and/or they acted with a wanton and reckless disregard of the possible results of their conduct.

103.    Defendants' officers, directors, and/or managing agents possessed the advance knowledge and conscious disregard described above; and/or authorized or ratified the acts and omission that were so unreasonable and dangerous that serious harm would probably result.

///

///

///

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them in an amount to be proved at trial, as follows:

1.  For plaintiff's general damages according to proof;

2.  For medical and related expenses according to proof;

3.  For loss of earnings according to proof;

4.  For exemplary or punitive damages according to proof;

5.  For plaintiff's cost of suit herein;

6.  For damages for fraud according to proof; and

7.  For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032 and related provisions of law.

DATED:  August 6, 2010                    PAUL & HANLEY LLP

                                          By:
                                          Benjamin D. Goldstein, Esq.
                                          Rohit S. Kodical, Esq.
                                          Attorneys for Plaintiff

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS                Page 35

## EXHIBIT A

Plaintiff AIDA SAVELESKY'S exposure stemmed from her late husband ALLEN R. SAVELESKY'S occupational exposure to asbestos and asbestos-containing products while working as an insulator. These jobsites include but are not necessarily limited to the jobsites listed below. The years listed below represent the approximate timeframe during which ALLEN R. SAVELESKY worked at the listed sites.

Plaintiff AIDA SAVELESKY regularly retired from her occupation in 1994. She suffers from asbestos-related disease, including mesothelioma which was diagnosed on March 4, 2009.

| Jobsite/Defendant | Employer | BD | ED |
|---|---|---|---|
| Campbell Industries Shipyard, San Diego CA | Owens Corning Fiberglass | 1/1/1959 | 12/31/1988 |
| Campbell Industries Shipyard, San Diego CA | Thorpe Insulation Company | 1/1/1959 | 12/31/1988 |
| National Steel & Shipbuilding Co. (NASSCO), San Diego, CA | Owens Corning Fiberglass | 1/1/1959 | 12/31/1988 |
| National Steel & Shipbuilding Co. (NASSCO), San Diego, CA | Thorpe Insulation Company | 1/1/1959 | 12/31/1988 |