## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| MICHAEL HARVEY | : | NO.: |
|---|---|---|
| v. | : | |
| ELECTRIC BOAT CORP. | : | MARCH 8, 2010 |

### NOTICE OF REMOVAL

To the United States District Court for the District of Connecticut.

Pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, the Defendant, Electric Boat Corporation (hereinafter "Electric Boat"), by its attorneys Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, hereby gives notice that it has removed this action from the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport. In support of this Removal, Defendant Electric Boat states:

### Procedural History

1.    Plaintiff, John Harvey, commenced the instant action in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport on or about February 5, 2010 by the filing of the Summons and Complaint. Defendant Electric Boat was served on or about February 8, 2010. The return date for said Summons and Complaint is March 2, 2010.[1]  Annexed hereto as Exhibit "A" are copies of the Summons and Complaint served within this action.

2.    Undersigned counsel filed an appearance in this action on behalf of Electric Boat on March 4, 2010 in the Superior Court for the Judicial District of

---

[1] The return date indicated on the Summons is March 2, 2010, but the return date indicated on the Complaint is March 9, 2010.

Fairfield at Bridgeport. A copy of said appearance is annexed hereto as Exhibit "B."

3.      No further proceedings have been had in this action, as Electric Boat is not required to answer or otherwise plead in response to Plaintiff's Complaint until at least April 2, 2010,[2] pursuant to Section 10-8 of the Connecticut Practice Book, which provides that "pleadings, including motions and requests addressed to the pleadings, shall first advance within thirty days from the return date." Electric Boat has neither waived nor prejudiced its right to remove this action to a District Court of the United States.

4.      Plaintiff brings this action against Electric Boat to recover damages allegedly caused by his exposure to asbestos as a result of asbestos being brought home from Electric Boat's shipyard by his father, an Electric Boat employee. According to the plaintiff, his father worked at Electric Boat as a lagger, which exposed the elder Mr. Harvey to asbestos fibers and materials, causing his clothes and body to become contaminated with asbestos-containing materials. The plaintiff was exposed to said asbestos as a result of the asbestos dust, fibers, and particles which were allegedly brought home on his father's clothes and his person.

5.      Plaintiff's complaint sets forth purported claims against Electric Boat under the Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m,

---

[2] Or, arguably April 9, 2010, given the conflicting return dates provided by plaintiff's counsel on the Summons and the Complaint.

et seq., ("CPLA") and under theories of negligence and premises liability. Plaintiff also asserts a claim for punitive damages.[3]

## The Instant Notice of Removal is Timely

6.    A notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. See 28 U.S.C. § 1446(b); Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 205-206 (2d Cir. 2001).

7.    Electric Boat was served with a copy of the complaint on or about February 8, 2010.

8.    Electric Boat is the only defendant named in this action.

## Background

9.    Based on information and belief, the plaintiff resides at 42 Bowling Lane in Bradford, Rhode Island.[4]

10.    Electric Boat is a corporation with its principal place of business located in Groton, Connecticut.

11.    Electric Boat used asbestos-containing products in the construction and overhaul of submarines for the United States Navy.    The asbestos-containing products that Electric Boat used were required by precise specifications that were approved by the United States Navy.    The submarines that Electric Boat constructed and overhauled conformed to those specifications.

---

[3] Electric Boat disputes the applicability of the CPLA and the cause of action for punitive damages, and reserves all rights relative to such claims.

[4] Plaintiff's address was mistakenly not indicated on the Summons.  A call to plaintiff's counsel to confirm plaintiff's residence has not been answered.  As such, Electric Boat has determined the plaintiff's above listed address based on its own investigation.

3

The United States Navy monitored Electric Boat's construction and overhaul of submarines through frequent inspection and testing to ensure that Electric Boat's work, including its use of asbestos-containing products, was in accordance with contract specifications.

12. As set in more detail below, federal officers (the United States Navy) selected the component parts of these submarines and approved and specified their design, including the use of asbestos, if any, and required Electric Boat to install them on the military watercrafts. In other words, Electric Boat had no choice but to install the component parts, including any asbestos-containing components therein, if any, on the military watercrafts.

13. Here, plaintiff has sued Electric Boat for asbestos allegedly associated with the construction and/or overhaul of these submarines. Electric Boat therefore removes this action to this Court on "federal officer" grounds pursuant to 28 U.S.C. § 1442(a)(1).

## Federal Officer Removal is Appropriate Under 28 U.S.C. § 1442(a)(1)

14. Removal is proper under 28 U.S.C. § 1442(a)(1) when the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, is sued in an official capacity for any act under color of such office. See 28 U.S.C. § 1442(a)(1).

15. This statute overcomes the well-pleaded complaint rule by providing a method to remove a case brought in state court against a federal officer, or any other person acting under a federal officer, despite the absence of a federal cause of action. See Jefferson County v. Acker, 527 U.S. 423, 241

(1999); Machnik v. Buffalo Pumps, Inc., 506 F. Supp. 2d 99 (D. Conn. 2007). The Supreme Court has noted that one of the purposes of the federal officer removal statute is to ensure that a federal court will adjudicate the validity of a defendant's official immunity defenses. Arizona v. Manypenny, 451 U.S. 232, 242 (1981).

16.     Courts have defined "person" within 28 U.S.C. § 1442(a)(1) to include corporations. See Isaacson v. Dow Chemical Co., 517 F.3d 129, 135-136 (1989); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007). As such, Electric Boat is a "person" within the meaning of the 28 U.S.C. § 1442(a)(1).

17.     To remove a state court action under the statute, a private party must establish that (1) it has a colorable federal defense; (2) it acted under the direction of a federal agency or officer; and (3) there is a causal nexus between the claims and the conduct performed under the color of federal office. See Mesa v. California, 489 U.S. 121, 124-125 (1989); Isaacson, 517 F.3d at 135.   The federal officer removal statute is to be construed broadly and should not be frustrated by a narrow, grudging interpretation. Arizona, 451 U.S. at 242 quoted by Carroll v. Buffalo Pumps, Inc., 2008 U.S. Dist. LEXIS 86715 (D. Conn. 2008). A defendant need not show that it will prevail in federal court, but only that 28 U.S.C. § 1442(a)(1) is applicable to the instant matter. Willingham v. Morgan, 395 U.S. 402, 407 (1969).   Defendant Electric Boat satisfies each of these three (3) requirements.

18.     Electric Boat satisfies the first requirement for removal under 28 U.S.C. § 1442(a)(1) insofar as it asserts a colorful federal defense, namely the government contractor defense. See Boyle v. United Technologies Corp., 487 U.S. 500 (1988). Boyle establishes that a government contractor is not liable for injuries caused by design defects in equipment when the contractor built such equipment according to reasonably precise government-approved design specification.

19.     To satisfy the government contractor defense, a defendant must show that (a) the United States approved reasonably precise specifications for the military equipment supplied by the contractor; (b) the equipment conformed to those specifications; and (c) the military contractor warned the United States about the dangers in the use of the equipment that were known to the contractor but not the United States. Machnik, 506 F. Supp. 2d at 102-103. Electric Boat meets these three (3) elements.

20.     Electric Boat constructed and/or overhauled military watercrafts pursuant to military procurement contracts with the Government and, in compliance with reasonably precise design specifications, as well as detailed design drawings, which were reviewed and approved by the United States Navy. The Government was intimately involved in the design, development and testing of these military watercrafts and their components and systems, and monitored Electric Boat's performance under the contract at all times and required Electric Boat to construct and/or overhaul the submarines in accordance with the applicable and approved specifications and drawings incorporated into the

6

contracts. All military watercrafts built pursuant to these contracts were subject to inspection and approval by the United States Government. In addition, the Government performed extensive testing of the watercrafts and their components and systems to ensure complete conformity with the design specifications. Any part of those military watercrafts was explicitly and directly required by the Government under the direction of the United States Navy.

21.     Furthermore, and perhaps more importantly, the United States Government required Electric Boat to install each and every system and component part, including any alleged asbestos-containing components. Insofar as to any components which may have contained asbestos, the procurement contracts and federal officers required Electric Boat to install them aboard the military watercrafts.

22.     Given the above, it is clear that the government contractor defense is satisfied here because the design specifications for the military submarines were government approved, the watercrafts conformed to the specifications, and to the extent that asbestos was known at the time to be a hazardous material, the Government's knowledge of such hazards was superior to the knowledge of Electric Boat.

23.     Electric Boat also satisfies the second requirement for removal under 28 U.S.C. § 1442(a)(1) insofar as it demonstrates it acted under the direction of a federal agency or officer. As discussed in detail above, Electric Boat's construction and/or overhaul of the submarines was done in accordance with military contracts that set forth specific and exacting directions as to how the

watercrafts were to be built, the materials to be used, and were subject to rigorous and detailed inspections. Electric Boat itself had no independent control over the project as the Government dictated each step of the process, including the right of final approval. As such, it is clear that Electric Boat acted only in response to directions of the United States Navy.

24.     In Fung v. Abex Corp., 816 F. Supp. 569 (N.D. Cal. 1992), the court addressed this very issue, and even addressed it in the context of Electric Boat. In Fung, the court recognized the control the government had over Electric Boat (then a division of General Dynamics) and held that the materials and methods used by Electric Boat in the construction and repair of submarines were strictly governed by detailed and specific federal regulations:

> [The government] monitored General Dynamics' performance at all times and required [it] to construct and repair the vessels in accordance with the applicable and approved specifications incorporated into the contracts.  In addition, all contract supplies were subject to inspection, test and approval by the government. The government also performed extensive dock and sea trials on the submarines prior to commission, to ensure complete conformity with design specifications.

Fung, 816 F. Supp. at 572-573.  Based on this evidence, the court held that the "acting under" requirement of § 1442(a)(1) has been satisfied because General Dynamics had "established that the government, under the direction of the Secretary of the Navy, exercised 'direct and detailed' control over the construction of the vessels." Id. at 573; see also Teague v. Bell Helicopter Services, Inc., 2003 U.S. Dist. LEXIS 2088 (N.D. TX 2003) at *4-9 (in which the court found that the "acting under" requirement was satisfied as the defendant built helicopters to government-approved specifications set forth in contracts and

8

was supervised by the military to ensure strict compliance with same); <u>Blackman v. Asbestos Defendants</u>, 1997 U.S. Dist. LEXIS 17821 (N.D. CA 1997) at *5-7 (in which the court held that the "acting under" requirement was satisfied in light of government involvement in the construction of solid rocket motors).

25.     Finally, Electric Boat satisfies the third requirement for removal under 28 U.S.C. § 1442(a)(1) insofar as it demonstrates a causal nexus between the plaintiffs' claims and the conduct performed under the color of federal office. Since federal officers directed and required Electric Boat to use and install the parts and components, including asbestos, on the military watercrafts, there is an unequivocal "causal nexus" between the direction Electric Boat received from the Navy, which it followed, and plaintiff's alleged injury.  When a government contractor builds a product pursuant to military specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied. See <u>DeMatties v. ACMAT Corp.</u>, 2008 U.S. Dist. LEXIS 86717 (D. Conn. 2008).

26.     To the extent that plaintiff claims that the presence of asbestos at Electric Boat was a defect in its premises, Electric Boat was unable to remedy the defect because the government specifications specifically required asbestos to be used in the construction and repair of submarines.

27.     The same is true for any warnings plaintiff claims were absent from either the military watercrafts or the maintenance manuals.  The United States Navy exercised a substantial degree of direct and detailed control over Electric Boat's provisions of warnings and the United States Navy's control over warnings

directly interfered with Electric Boat's ability to fulfill its state law obligation to warn about the dangers of asbestos. Machnik, 506 F. Supp. 2d at 102-103; see also In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 839 (2d Cir. 1992).

28.     In addition, Electric Boat is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in Yearsley v. WA Ross Construction Co., 309 U.S. 18 (1940). Yearsley established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract. The Yearsley doctrine is satisfied here because the acts complained of were performed at the direction of government officers, namely the United States Navy, acting pursuant to government authorization, and if the government had performed these acts directly, it would be immune from suit.

29.     Accordingly, this action may be removed to this Court pursuant to 28 U.S.C. § 1442(a)(1).

## The Connecticut District Court has Jurisdiction Based Diversity and Amount in Controversy pursuant to 28 U.S.C. §§ 1332, 1441, and 1446

30.     As discussed above, based on information and belief, the plaintiff is a Rhode Island resident.

31.     Electric Boat is a corporation with its principal place of business located in Connecticut.

32.     According to 28 U.S.C. §§ 1332 and 1441, complete diversity of citizenship exists between plaintiff and defendant.

33.     The amount in controversy is also satisfied.

34.     The burden is on the party invoking federal jurisdiction to "show by a *'reasonable probability'* that the amount in controversy requirement is satisfied." Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006) (*emphasis added*). To determine the amount actually at issue, courts look to the allegations in the complaint, which are presumed (absent evidence to the contrary) to contain a "good-faith representation of the actual amount in controversy." Id.

35.     "Only where it 'appear[s] to a legal certainty that the claim is really less than the jurisdictional amount' can the court dismiss an action for lack of subject matter jurisdiction." Royal Ins. Co. v. Jones, 76 F. Supp. 2d 202, 204 (D.Conn. 1999) *quoting* Saint Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938).

36.     In the case at hand, the plaintiff alleges exposure to asbestos dust, fibers and particles, which resulted in his diagnosis with multiple bilateral pleural plaques and small cell lung cancer. Furthermore, according to the complaint, the plaintiff has been treating and continues to treat for these diseases.

37.     Based on the injuries and treatment necessary for same as alleged in the plaintiff's complaint, the plaintiff claims injuries which have value in excess of $75,000.

38.     Furthermore, punitive damages are included in the amount in controversy, "unless it is apparent to a legal certainty that such cannot be recovered." Hayes v. Equitable Energy Res. Co., 266 F. 3d 560, 572 (6th Cir.

2001) *quoting* Holley Equip. Corp. v. Credit Alliance Corp., 821 F. 2d 1531, 1535 (11th Cir. 1987).

39.    In the case at hand, plaintiff seeks punitive damages pursuant to the CPLA.    Punitive damages are available under the Connecticut Product Liability Act.    Pursuant to Conn. Gen. Stat. § 52-240b, if the trier of fact determines that punitive damages should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff.

40.    As the plaintiff has alleged that Electric Boat acted recklessly and with wanton disregard for the consequences of its actions, the plaintiff has presented a claim for punitive damages which can be awarded pursuant to Conn. Gen. Stat. § 52-240b.

41.    Taking into account the significance of the plaintiff's alleged injuries (i.e., lung cancer) and thus the potential value to such a claim, an award for punitive damages that could be twice the amount of this underlying claim could provide for a sizeable figure.

42.    In light of same, Electric Boat argues that the medical conditions alleged by plaintiff coupled with his punitive damages claim provide sufficient evidence that the amount in controversy exceeds the $75,000 requirement for removal under 28 U.S.C. §§ 1332(a) and 1441.

43.    While Electric Boat believes that the plaintiff's complaint and its removal documents provide sufficient support for satisfaction of the amount in controversy, should this Court believe that additional information is needed, it

12

should permit Electric Boat to supplement its Notice of Removal and/or engage in initial discovery. Steele v. Underwriter's Adjusting Company, Inc., 649 F. Supp. 1414 (1986).

**DEFENDANT,**
**ELECTRIC BOAT CORPORATION**

BY:_____

Shannon N. Philipp, Esq.
Wilson Elser Moskowitz
Edelman & Dicker LLP
1010 Washington Blvd., 8th Fl.
Stamford, CT 06901
Juris No.: ct27639
Our File No.: 07411.00050

13

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed, postage prepaid, this 8th day of March, 2010, to all counsel/parties of record as follows:

John Geida, Esq.
Embry & Neusner
118 Poquonnock Road
Groton, CT 06340

_____
Shannon N. Philipp

14

**Exhibit A**

1140

**SUMMONS - CIVIL**
JD-CV-1 Rev. 10-09
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

See page 2 for instructions

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 1061 Main Street, Bridgeport, CT | ( 203 ) 579-6527 | March 2, 2010 |

| ☒ Judicial District ☐ Housing Session | ☐ G.A. Number: | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) Bridgeport | Case type code (See list on page 2) Major: T    Minor: 3/20 |
|---|---|---|---|

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only): |
|---|---|
| Embry & Neusner, 118 Poquonnock Road, Groton, CT 06340 | 102932 |

| Telephone number (with area code) ( 860 ) 449-0341 | Signature of Plaintiff (if self-represented) |
|---|---|

| Number of Plaintiffs: / | Number of Defendants: / | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: Michael Harvey  Address: | P-01 |
| Additional Plaintiff | Name:  Address: | P-02 |
| First Defendant | Name: Electric Boat CORP.  Address: 75 Eastern Point Road, Groton, CT 06340 | D-50 |
| Additional Defendant | Name:  Address: | D-51 |
| Additional Defendant | Name:  Address: | D-52 |
| Additional Defendant | Name:  Address: | D-53 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed (Sign and "X" proper box) | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left John F. Geida | Date signed 2/5/10 |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. | |
| c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. | |
| d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | |

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date |
|---|---|---|
| Name and address of person recognized to prosecute in the amount of $250 | | |

| Signed (Official taking recognizance, "X" proper box) | ☐ Commissioner of the Superior Court ☐ Assistant Clerk | Date | Docket Number |
|---|---|---|---|

ATTEST
A TRUE COPY
JOSEPH L. ANTINERELLA
CT. STATE MARSHAL

(Page 1 of 2)

RETURN DATE: March 9, 2010

MICHAEL HARVEY,            :        SUPERIOR COURT
     Plaintiff,                     :

                              :        J.D. OF FAIRFILED
     V                         :        AT BRIDGEPORT
                              :

ELECTRIC BOAT CORP.,       :
     Defendant.

## CLAIM ON BEHALF OF MICHAEL HARVEY

### FIRST COUNT BASED ON
### NEGLIGENCE AND PRODUCTS AND PREMISES LIABILITY

1. The plaintiff, MICHAEL HARVEY, (DOB 8/24/62) is the son Gordon Harvey, (DOB 11/1/28), who was employed by General Dynamics / Electric Boat Corp., Groton, CT ("Electric Boat") from on or about 5/29/1958 to 1996, as a lagger.

2. The duties of a lagger included working in areas where he and others were handling and working with asbestos products or products containing, involving or requiring the use of asbestos and were exposed to asbestos fibers and materials. The elder Mr. Harvey is an asbestos-related injury victim.

3. The elder Mr. Harvey was exposed to asbestos causing his clothes and body to become contaminated with asbestos-containing materials. The Plaintiff was exposed to said asbestos as a result of the asbestos dust, fibers and particles which were brought home on his father's clothes and his person.

4. The plaintiff, MICHAEL HARVEY, has been diagnosed with multiple bilateral calcified pleural plaques consistent with significant asbestos exposure.

5. Additionally, plaintiff, MICHAEL HARVEY was recently diagnosed with small cell lung cancer.

6. Electric Boat Corp., successor-in-interest to General Dynamics Corp. / Electric Boat Division, is a corporation with its principal place of business at 75 Eastern Point Road, Groton, CT 06340. Its agent for service is: CT

1

 

Corporation System, One Corporate Center, Floor 11, Hartford, CT 06103-3220.

7. Electric Boat Corp., successor-in-interest to General Dynamics Corp. / Electric Boat Division, constructed, designed, assembled, installed, tested and / or sold various asbestos products, and/or products that contained asbestos. During the relevant periods of time, the defendant corporation was doing business in the State of Connecticut.

8. While the elder Mr. Harvey worked at General Dynamics, he was exposed to asbestos containing products and came in contact with asbestos fibers and dust coming from said asbestos containing products. As a result, the elder Mr. Harvey brought home asbestos fibers and dust on his person and his clothing, whereby the PLAINTIFF MICHAEL HARVEY was exposed to and inhaled the asbestos, causing his injuries.

9. As a result of the acts of the defendant and the elder Mr. Harvey's exposure to asbestos and asbestos-containing products manufactured and/or sold by defendant, the PLAINTIFF, MICHAEL HARVEY, was diagnosed as having an asbestos-related disease consisting of calcified pleural plaques and lung cancer. PLAINTIFF MICHAEL HARVEY has been treating for this disease.

10. The illness of the PLAINTIFF, MICHAEL HARVEY, is the proximate result of the negligence, recklessness and willfulness of the defendant in that it manufactured, assembled, installed and otherwise put into the stream of interstate commerce, asbestos and asbestos related insulation materials and other asbestos-containing products which the defendant knew, or in the exercise of ordinary care, should have known were deleterious, poisonous and highly harmful to the PLAINTIFF'S body, lungs, respiratory system, skin and health. At all times said asbestos and asbestos-related products were so intrinsically dangerous so as to necessarily expose users of the materials and the users' families to probable injury and were ultra hazardous.

11. The illness of the PLAINTIFF MICHAEL HARVEY is the direct and proximate result of the negligence, recklessness and willfulness of the defendant in that, even though the defendant knew, or, in the exercise of ordinary care, should have known, that asbestos and asbestos-containing products were deleterious, poisonous and highly harmful to the decedent's body, lungs, respiratory system, skin and health, the defendant nonetheless:

a. Failed to advise the elder Mr. Harvey of the dangerous characteristics of its asbestos, asbestos related insulation products and other asbestos-containing products;

2

b.   Failed or omitted to provide the elder Mr. Harvey, or the PLAINTIFF, with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances if, in truth, it was, in any way, able to protect him from poisoning and disabling the PLAINTIFF, as he was by exposure to such deleterious and harmful asbestos related insulation materials and other asbestos-containing products;

c.   Failed and omitted to place any warnings or sufficient warnings on its asbestos, asbestos insulation materials and asbestos-containing products to warn the handlers thereof of the dangers to health in coming in contact with said asbestos, asbestos insulation materials and other asbestos-containing products and failed to warn the elder Mr. Harvey, or the PLAINTIFF, of the risks and damages he was exposed to as a result of asbestos on the clothes, body, and person of the elder Mr. Harvey;

d.   Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing said asbestos, asbestos insulation materials and other asbestos-containing products;

e.   Inadequately warned, if, in fact, it warned at all, persons such as the elder Mr. Harvey, or the PLAINTIFF, of the dangers to their health from coming in contact with asbestos, asbestos insulation, and asbestos-containing products, and breathing said asbestos, including the special dangers of asbestos exposure to cigarette smokers;

f.   Did not undertake methods to improve the work environment and to prevent exposure to asbestos;

g.   Failed to properly test and investigate the safety of the asbestos the defendant was manufacturing, assembling and installing or to develop alternative products;

h.   Failed to provide adequate safety instruction for persons who would reasonably and foreseeably come into contact with its products so the products could be used with safety and to advise them of ways to avoid exposing their families to the risks and dangers of asbestos;

i.   Failed to properly investigate and comply with reasonable standards and regulations relating to the health of those using or being exposed to asbestos products;

3

j.          Failed to eliminate or reduce the amount of asbestos contained in its products;

k.          Continued to use a known cancer-causing product, to-wit: asbestos.

12.    The defendant intentionally misrepresented that its asbestos products were reasonably safe for their intended use and fraudulently concealed information about them which fraudulent concealment caused decedent injuries as stated herein.

13.    The defendant, as part of its business, manufactured, sold and delivered its asbestos-containing products into the stream of commerce in a defective, unsafe and inherently dangerous condition as described above, and the asbestos products were expected to and did reach such persons, as the PLAINTIFF, without substantial change in the condition in which they were sold.

14.    At all relevant times, the insulating and / or asbestos products were used and employed for the purpose for which they were manufactured, sold and intended to be used in a manner foreseeable to the defendant.

15.    The defendant expressly or impliedly warranted that said asbestos was of merchantable quality, fit and safe for the purpose for which it was manufactured, assembled, installed, sold or used.

16.    The defendant breached the said warranties in that its asbestos and asbestos-containing products were not fit nor safe for the purposes for which they were manufactured, sold and used so that they could not be used without extreme danger to those who breathed the dust coming from their products, or those that were exposed to the dust coming from such products.

17.    The defendant became aware of the dangers of breathing asbestos before the PLAINTIFF and the elder Mr. Harvey was exposed to defendant's asbestos products, but it intentionally and fraudulently concealed the danger from the elder Mr. Harvey, the PLAINTIFF, and the public, or conspired to do the same and intentionally misrepresented the information it caused to be published concerning the dangers of asbestos.

18.    The defendant was aware or should have been aware of medical and scientific data, studies and reports since approximately 1929, which information clearly indicated that asbestos and asbestos containing

4

products were hazardous to the health and safety of the elder Mr. Harvey, the PLAINTIFF, and other human beings.

19.    The defendant, at all relevant times, consistently failed to acknowledge, publish, or in any way advise of the studies and reports known throughout the industry since the 1920's.

20.    It was the continuing duty of the defendant to advise and warn purchasers and users, prior purchasers and prior users, and their family members of all dangers, characteristics and defects discovered subsequent to its initial marketing or sale of its asbestos and asbestos-containing products, which duty the defendant breached.

## SECOND COUNT FOR EXEMPLARY OR PUNITIVE DAMAGES ON BEHALF OF MICHAEL HARVEY

21.    Paragraphs 1 through 20 are hereby repeated and realleged as if fully set forth.

22.    The injuries and damages were caused by the defendant in that its actions constituted wanton, willful and malicious misconduct and demonstrated a reckless disregard for the consequences the defendant knew or should have known would result.

23.    The defendant, after it learned or should have learned of the dangers of asbestos exposure, failed or refused to notify the elder Mr. Harvey or the PLAINTIFF, of the dangers of their prior exposure and of the need for continuing medical surveillance and conspired to keep such knowledge from the public.

24.    The defendant, after it learned of some of the dangers of asbestos exposure after others became ill, failed to promptly act to protect the PLAINTIFF, the elder Mr. Harvey, and the family from the known dangers of asbestos.

Dated: 2/5/10
Groton, CT

By: _____
John F. Geida, Esq.
Embry & Neusner
118 Poquonnock Road
P.O. Box 1409
Groton, CT  06340
860-449-0341
jgeida@embryneusner.com

ATTEST:
A TRUE COPY

JOSEPH L. ANTINERELLA
CT. STATE MARSHAL

5

EMBRY AND NEUSNER

P.O. BOX 1409   118 POQUONNOCK RD.   GROTON, CT 06340-1409   (860) 449-0341   JURIS NUMBER 102932

Wherefore the plaintiffs claim against the defendant:

1. Money damages.

2. The amount in demand is greater than $15,000.00.

3. Punitive and exemplary damages.

4. Trial by Jury

5. Such other relief as the court may deem just and proper.

Dated at Groton this 5th day of February, 2010.

By: _____

John F. Geida, Esq.
Embry & Neusner
108 Poquonnock Road
P.O. Box 1409
Groton, CT 06340
860-449-0341
jgeida@embryneusner.com

ATTEST:
A TRUE COPY
JOSEPH L. ANTINERELLA
CT. STATE MARSHAL

6

**Exhibit B**



# APPEARANCE

JD-CL-12 Rev. 12/09
P.B. §§ 3-1 thru 3-6, 3-8, 10-13

STATE OF CONNECTICUT
## SUPERIOR COURT
*www.jud.ct.gov*

**NOTICE TO SELF-REPRESENTED PARTIES (PRO SE)**
*A self-represented party is a person who represents himself or herself. You must let the Clerk's Office know if you change your address by filling out this form.*

| ☒ | ☐ | ☐ | ☐ |
|---|---|---|---|
| Judicial District | Housing Session | Geographic Area | Small Claims |

Address of Court
*(Number, street, town and zip code)*

**1061 MAIN STREET**
**Bridgeport, CT 06604**

Docket number
**CV-10-6006725-S**

Return date
**Mar 02 2010**

Scheduled court date
*(Criminal/Motor Vehicle Matters)*

Note: If you are a self-represented party and you filed an appearance before and you are filing this only to let the court know that you have changed your address, check the box below:
☐ I am filing this appearance only to let the court know that I have changed my address. My new address is below.

**INSTRUCTIONS**

1. Type or print.
2. **For Criminal and Motor Vehicle cases:** Mail or deliver a copy of the appearance to the prosecutor, fill out the Certification at bottom and file the original with the clerk. (Practice Book (P.B.) Sections 3-4, 3-5)
3. **For cases in Judicial District Courts, except criminal cases:** File only the original with the clerk. For criminal cases, see instruction #2.
4. **For cases in Geographical Area Courts, except criminal cases:** File the original and enough copies for each other party with the clerk. For criminal cases, see instruction #2.
5. **For Eviction (Summary Process) cases:** Follow the instruction for #3 or #4 above, and mail a copy to the attorney for the plaintiff, or if the plaintiff does not have an attorney, mail a copy to the plaintiff. Fill out the Certification at bottom. (P.B. Sec. 3-5(a))
6. **For Small Claims cases:** File the original with the Small Claims area or Housing Session address. Mail or deliver a copy to the attorney or self-represented party and fill out the Certification at the bottom.
7. **For Appearances in place of (in-lieu-of) another attorney, law firm, or self-represented party:** Fill out the Certification at the bottom. (P.B. Sec. 3-8)
8. If a party who has been defaulted for failure to appear files an appearance before the entry of judgment after default, the default will automatically be set aside by the clerk. (P.B. Sec. 17-20)
9. **For Juvenile cases:** Do not use this form. Use form JD-JM-13 Appearance, Juvenile Matters.

## Name of case *(Plaintiff vs. Defendant)* HARVEY, MICHAEL  v.  ELECTRIC BOAT CORPOR

## Please Enter the Appearance Of

| Juris number of attorney or firm | Name of self-represented party (See "Notice to Self-Represented Parties" at top), or name of official, firm, professional corporation, or individual attorney |
|---|---|
| **412712** | **WILSON ELSER MOSKOWITZ EDELMAN & DICKER** |

Mailing Address *(Number, street) (Notice to attorneys and law firms - The address to which papers will be mailed from the court is the one registered or affiliated with your juris number. That address cannot be changed in this form.)*   |  Post office box  |  Telephone number *(Area code first)*

**1010 WASHINGTON BLVD 8TH FLOOR**   |   |  **203-388-9100**

| City/town | State | Zip code | Fax number *(Area code first)* | E-mail address |
|---|---|---|---|---|
| **STAMFORD** | **CT** | **06901** | **203-388-9101** | **shannon.philipp@wilsonelser.com** |

In the case named above for: *("x" one of the following parties)*

☐ The Plaintiff *(includes the person suing another person)*.
☐ All Plaintiffs.
☐ The following Plaintiff(s) only:
☒ The Defendant *(includes the person being sued or charged with a crime)*.
☐ The Defendant for the purpose of the bail hearing only *(in criminal and motor vehicle cases only)*.
☐ All Defendants.
☐ The following Defendant(s) only:
☐ Other *(Specify)* _____

Note: If other counsel or a self-represented party have already filed an appearance for the party or parties "x'd" above, put an "x" in 1 of these 2 boxes:

☐ This appearance is in place of the appearance of the attorney or firm or self-represented party on file (P.B. Sec. 3-8) OR
☐ This appearance is in addition to an appearance already on file.     *(Name and Juris Number)*

and, I agree to accept papers (service) electronically in this case under Practice Book Section 10-13   ☒ Yes   ☐ No

| Signed *(Individual attorney or self-represented party)* ► **425160** | Name of person signing at left *(Print or type)* **SHANNON PHILIPP** | Date signed **Mar 04 2010** |

## Certification

*This certification has to be filled out only in eviction cases; for "in place of" appearances; in criminal cases; and in small claims matters.*

For Court use only

### I certify that I mailed or delivered a copy of this Appearance form to:

☐ All counsel and self-represented parties of record as listed below and on any additional sheet(s). *(For evictions (P.B. Sec. 3-5(a)), criminal actions (P.B. Sec. 3-5(c)) and small claims matters)*
☐ Counsel or the party whose appearance is to be replaced as listed below and on additional sheet(s). *(For appearances in place of another attorney or firm (P.B. Sec. 3-8))*

| Signed *(Individual attorney or self-represented party)* ► | Date copies mailed or delivered |
|---|---|

| Name of each party copy was mailed or delivered to * | Address at which copy was mailed or delivered |
|---|---|

* If necessary, attach an additional sheet or sheets with the name of each party and the address at which the copy was mailed or delivered to.     **APPEARANCE**

You have successfully e-filed

Page 1 of 1



**State of Connecticut**
# Judicial Branch

## You have successfully e-filed!

**Instructions:** Additional information about this transaction is provided below. Please select the "Print" button to print a copy of this Confirmation. Then, select the "Back to E-Filing Menu" button if you wish to do additional e-filing or "Logout" if you are done e-filing.

| Print | | Back to E-Filing Menu | | Logout |

### Confirmation of E-Filing

**Docket Number:** FBT-CV-10-6006725-S
**Case Name:** HARVEY, MICHAEL v. ELECTRIC BOAT CORPOR
**Type of Transaction:** Appearance
**Date Filed:** Mar 04 2010

**Appearance by:** 412712 WILSON ELSER MOSKOWITZ EDELMAN & DICKER

**Appearance for this Party(ies)**

| Party # | Party Name |
|---------|------------|
| 50 | ELECTRIC BOAT CORPORATION |

**Document Filed:** JD-CL-12 Appearance
**Date and Time of Transaction:** Mar 04 2010 10:01:07 AM