UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FRANK MUMFREY | * | CIVIL ACTION |
| | * | |
| vs. | * | NO.  2:11-CV-00711 |
| | * | |
| ANCO INSULATIONS, INC., ET AL. | * | JUDGE  STANWOOD R. DUVAL, JR. |
| | * | |
| | * | MAG. JUDGE ALMA L. CHASEZ |

*************************************************************************

**MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION TO REMAND**

Plaintiff Frank Mumfrey files this Memorandum in Support of Plaintiff's Motion to Remand, and would respectfully show the Court that this case should be summarily remanded for the following reasons:

**I.        INTRODUCTION**

Plaintiff Frank Mumfrey suffers from malignant mesothelioma caused by his occupational exposure to asbestos.  He has brought negligence and product liability claims against the manufacturers, suppliers, and installers of the asbestos products to which he was exposed, including removing defendant, The Sherwin-Williams Company ("Sherwin-Williams"). Among other asbestos products, he was exposed to dust created from the mixing, sanding, and clean-up of asbestos-containing joint compound used during the renovation of restaurants and bars in the New Orleans area for International Property Management in the 1970s.

Mesothelioma is an incurable and fatal cancer of the lining of the lung caused by asbestos exposure, and Louisiana law affords a plaintiff in Mr. Mumfrey's condition preferential scheduling of his claim.  La. Code Civ. Pro. Art. 1573.  Pursuant to Article 1573, Plaintiff filed a motion in state court to have his case set for trial on an expedited basis.  The trial court granted

1

that motion and set this case for trial on September 12, 2011.  Now, in a move clearly designed solely to deny Mr. Mumfrey his right to a trial during his lifetime, defendant Sherwin-Williams has removed this case to federal court on the basis of its specious argument that four non-diverse defendants in this case—Anco Insulations, Inc. ("Anco"), Carruth Brothers Lumber Company, Inc. ("Carruth"), Taylor-Seidenbach ("Taylor"), and Reilly-Benton Company, Inc. ("Reilly-Benton") (collectively, "Louisiana Defendants")—were improperly joined.

It is respectfully requested that this Court determine *sua sponte* that it does not have subject matter jurisdiction and summarily remand this case back to state court.  A review of Plaintiff's Petition, attached as Exhibit A, as well as the Notice of Removal reveals that there is no federal jurisdiction in this matter because there is not complete diversity. In the instant case, a timely ruling upon Plaintiff's motion to remand is essential. If this motion is not ruled upon in very short order, the case will be automatically transferred to the Multidistrict Litigation Docket No. 875 in Philadelphia, PA, causing even further delay.

Remand is required because Sherwin-Williams has completely failed to obtain the formal consent of all properly joined and served defendants within the 30-day deadline for removal. No defendant in this case has joined or formally consented to removal, and Sherwin-Williams's mere allegation of their consent is insufficient without an indication that they have authorized Sherwin-Williams to convey their formal notice of consent to this Court. This procedural defect in Sherwin-Williams's Notice of Removal cannot be cured now that the deadline for removal has passed.

Moreover, as shown herein, Sherwin-Williams has failed to meet its heavy burden of showing improper joinder because: (1) Plaintiff's petition adequately states strict liability and negligence claims under Louisiana law against the Louisiana Defendants, (2) Sherwin-Williams

2

cannot meet its burden of showing improper joinder by merely stating that Plaintiff lacks evidence against the Louisiana Defendants when discovery is still ongoing, and (3) if the Court chooses to review the evidence developed so far in this case, it will clearly see that Plaintiff already has evidence of exposure to asbestos-containing joint compound products supplied by non-diverse Defendant Carruth.

Finally, Plaintiff seeks costs and attorneys fees associated with the bringing of this motion. Not only does Sherwin-Williams lack an objectively reasonable basis for removing this case, but Sherwin-Williams has misused the removal procedure for the purposes of forcing dismissal or settlement and/or to delay the ultimate resolution of this case. Such bad-faith removal warrants costs, attorneys' fees, and any other sanctions this Court deems appropriate.

## II.   THE NOTICE OF REMOVAL IS PROCEDURALLY DEFECTIVE BECAUSE SHERWIN-WILLIAMS HAS FAILED TO SHOW THAT ALL SERVED DEFENDANTS HAVE FORMALLY CONSENTED TO FEDERAL COURT JURISDICTION.

In cases involving multiple defendants, 28 USC 1446(a) has been interpreted to require that all served defendants join, or formally consent to, removal. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n.11 (5th Cir. 1988). The removing party's statement that the other defendants have consented is *not* sufficient to provide formal notice of consent. *Id.*; *Johnston v. Bilal*, No. 08-5235, 2009 WL 981696, at *2 (E.D. La. Apr. 13, 2009). Each defendant must independently act to either join or consent to removal:

> [W]hile it may be true that consent to removal is all that is required under section 1446, a defendant must do so itself. This does not mean that each defendant must sign the original petition for removal, but **there must be some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action.** Otherwise, there would be nothing on the record to "bind" the allegedly consenting defendant.

*Getty Oil*, 841 F.2d at 1262 n.11 (emphasis added). Under this "rule of unanimity," each served defendant must either join in the notice of removal or timely file written consent to removal into the record. *Jacob v. Greyhound Lines, Inc.*, No. 02-2199, 2002 WL 31375612, at *6 (E.D. La. Oct. 21, 2002).

If a defendant wants to allow the removing party to convey its consent, the removing party must allege that the defendant has *authorized the removing party* to formally represent to the court on its behalf that it has consented to the removal. *Getty Oil*, 841 F.2d at 1262 n. 11; *Marshall v. Liquide-Big Three, Inc.*, No. 05-3726, 2006 WL 286011, at *3 (E.D. La. Feb. 7, 2006); *see also Aucoin v. Gulf S. Pipeline Co., L.P.*, No. Civ.A. 04-824, Civ.A. 04-879, 2004 WL 1196980, at *2 (E.D. La. May 26, 2004) (holding notices of removal defective when they merely indicated the consent of all defendants without any recitation of authority to make that consent). Emails between counsel are not sufficient to meet the requirement of formal written joinder or consent. *See Marshall*, 2006 WL 286011, at *3; *Taco Tico of New Orleans, Inc. v. Argonaut Great Central Ins. Co.*, No. 09-3502, 2009 WL 2160436, at *2 (E.D. La. July 16, 2009); *see also Johnston*, 2009 WL 981696, at *2 (holding that phone calls between counsel are likewise inadequate to provide notice of consent).

The required joinder or consent must be within the 30-day time period for removal under 28 USC § 1446. *See Getty Oil*, 841 F.2d at 1262-63, 1263 n.12. The 30-day time limit is mandatory and a district court does not have authority to extend it. *See Marshall*, 2006 WL 286011, at *2 (citing *Walker v. Gunn*, 511 F.2d 1024, 1026 (9th Cir. 1975)). Failure to obtain timely unanimous consent or joinder renders the notice of removal defective. *Getty Oil*, 841 F.2d at 1262; *see also Harris v. Edward Hyman Co.*, 664 F.2d 943, 944 n.3 (5th Cir. 1981). Because the removal statute is strictly construed against removal and in favor of remand, any notice of

consent filed after the 30-day deadline for removal will not be considered and cannot cure the defect in the notice of removal. *See Getty Oil*, 841 F.2d at 1262; *Johnston*, 2009 WL 981696, at *3. A notice of consent filed even one day late will not cure the defect and the case must be remanded. *See Marshall*, 2006 WL 286011, at *4; *Aucoin*, 2004 WL 1196980, at *2.

Here, Sherwin-Williams failed to meet the unanimous consent requirement of section 1446(a). Its statement in its notice that "[a]ll served defendants consent to the removal of this action," Notice of Removal at 5, is completely inadequate to meet the written joinder or consent requirement because there is no indication that any defendant has authorized Sherwin-Williams to convey its formal consent to the Court and to Plaintiff. *Getty Oil*, 841 F.2d at 1262 n.11; *Johnston,* 2009 WL 981696, at *2; *Marshall*, 2006 WL 286011, at *3; *Aucoin,* 2004 WL 1196980, at *2. Indeed, the emails from defense counsel attached as Exhibit 4 to its Notice do not even purport to give Sherwin-Williams that authority. Those emails in and of themselves are insufficient to convey formal notice of consent because they are private communications between defense counsel. *Marshall*, 2006 WL 286011, at *3; *Taco Tico*, 2009 WL 2160436, at *2; *Johnston*, 2009 WL 981696, at *2.

Plaintiff notes that some of the emails from defense counsel clearly suggest that formal consent is not being given through the email and would have to be obtained through a separate signed paper. *See* Email from Sheila Powers, March 31, 2011 ("Please send whatever form is needed to Montello's local counsel David Gibbons for signature [ ].") In addition, some of the emails do not convey consent from the actual parties in this case, but only from defense counsel personally. For example, the email from counsel for Defendant Chevron Phillips Chemical Company LP's, Kathleen Drew, states that, "I am on board with removal." *See* Exhibit 4 to Notice of Removal. Her statement that she is on board is not sufficient to show that her *client* has

consented and is certainly not the formal notice of consent required by section 1446(a) and *Getty Oil*.[1]

According to Sherwin-Williams, this case became removable at the time Plaintiff Frank Mumfrey's deposition was completed on March 2, 2011. *See* Notice of Removal at 4-5. Because Sherwin-Williams waited until the 30th day to file its Notice of Removal on April 1, 2011, its failure to obtain formal written consent from the other defendants in this case, or authorization to consent on their behalf, cannot now be cured. *Getty Oil*, 841 F.2d at 1262-63, 1263 n.12; *Marshall*, 2006 WL 286011, at *2; *Johnston*, 2009 WL 981696, at *3. Therefore, this case should be remanded because Sherwin-Williams failed to adequately demonstrate the unanimous consent of all served defendants in accordance with the 30-day deadline imposed by the removal statute. This serious and incurable procedural defect mandates immediate remand of this case to state court.

## III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THERE IS NOT COMPLETE DIVERSITY.

### A.   Sherwin-Williams Has Not Met Its Heavy Burden of Demonstrating that Plaintiff Has No Possibility of Recovery Against the Louisiana Defendants.

It is axiomatic that federal courts have limited jurisdiction, having power only over those cases authorized by the United States Constitution and federal statutes. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994); *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). In remand proceedings, the removing defendants bear the initial burden of establishing original

---

[1] Beyond the fact that Sherwin-Williams's statement of other parties' consent is completely inadequate for failure to include the authority to convey such consent, Sherwin-Williams failed to even attempt to obtain the consent of the Louisiana Defendants that were served in this case: Anco, Taylor, and Reilly-Benton. Under *Getty Oil*, all served defendants must either join in the removal petition or consent to removal. 841 F.2d at 1261 n.9. The Fifth Circuit has even suggested that unserved local defendants must also join or consent, which would include Louisiana Defendant Carruth. *Id.* ("Defendants (at least those not citizens of the forum state) who are unserved when the removal petition is filed need not join in it."). Sherwin-Williams' failure to obtain the formal consent of the Louisiana Defendants, and the authority to convey that consent to the Court, is a further defect in the Notice of Removal.

federal subject matter jurisdiction. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 540 (1938); *Allen v. R. & H. Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). The removal statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941). Therefore, in deciding whether Sherwin-Williams has satisfied its burden, this Court must resolve any doubts in favor of remand. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Defendants that remove on the basis of diversity of citizenship must demonstrate that complete diversity exists. *See Getty Oil*, 841 F.2d at 1259. In other words, they must demonstrate that "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). The removing party further bears the burden of showing that any in-state defendants were not properly joined. *See Getty Oil*, 841 F.2d at 1259.

The burden of proving improper joinder is a "heavy one." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). A claim of fraudulent joinder must be stated with particularity, supported by clear and convincing evidence, and proven with "certainty." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). If there is *any* doubt as to whether a plaintiff states a claim against the non-diverse defendant, the joinder is not fraudulent. *See Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir. 1962).

There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Here, Sherwin-Williams does not dispute that four Defendants in this case are citizens of Louisiana, just like Mr. Mumfrey: Anco, Carruth, Taylor, and Reilly-Benton. Therefore, since there is no allegation

that Plaintiff's jurisdictional facts were fraudulently pled, the second test for improper joinder is the only one at issue. *See id.* at 647.

The Fifth Circuit has held that "the test for fraudulent joinder is whether the defendant has demonstrated that there is **no possibility of recovery** by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis*, 326 F.3d at 648) (emphasis added). To determine whether there is any reasonable possibility of recovery against the in-state defendants, district courts may conduct a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim against the in-state defendants under state law. *See id.*; *see also Travis*, 326 F.3d at 648 (noting that the test for improper joinder is adopted from the Rule 12(b)(6) standard). "**Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder**." *Smallwood*, 385 F.3d at 573 (emphasis added); *see also Bopp v. Westchester Surplus Lines Ins. Co.*, No. 09-6448, 2009 WL 3763921 (E.D. La. Nov. 9, 2009) (holding that the defendant failed to show improper joinder when the allegations in the plaintiff's complaint were sufficient to state a claim for relief against the non-diverse defendant).

Here, the detailed allegations in Plaintiff's complaint would easily defeat a Rule 12(b)(6) motion to dismiss, and therefore are sufficient to show that the Louisiana Defendants are properly joined in this case. Plaintiff's Petition for Damages states both strict liability and negligence claims against all Defendants as manufacturers, suppliers, distributors, users, and/or professional vendors of the asbestos-containing construction materials and insulation used at the work locations where Mr. Mumfrey was exposed to those asbestos-containing materials. *See* Petition for Damages, Dec. 2, 2010, attached as Exhibit A, at ¶¶ 5, 10-13; *see also* First

Supplemental and Amending Petition, March 4, 2011, attached as Exhibit B (adding Reilly-Benton as a defendant). Plaintiff alleged that each of the Defendants knew or should have known through industry and medical studies, that there were health hazards inherent in the asbestos-containing products they were selling and/or using. *Id.* at ¶ 7. As alleged, Defendants are strictly liable for Plaintiff's asbestos-related injuries because the asbestos-containing products that they manufactured, sold, supplied, and/or used were unreasonable dangerous per se, unreasonable dangerous as designed, and unreasonably dangerous for failure to include a warning about the dangers of asbestos exposure. *See id.* at ¶¶ 11-12. Plaintiff also alleged negligence claims based on a series of substandard conduct, including failing to warn, failing to inspect or test the products, failing to use suitable substitutes, etc. *See id.* at ¶¶ 11, 13.

Plaintiff's Petition also singled out Carruth as a supplier defendant and alleged that it "sold, distributed, and supplied asbestos-containing product(s), which Petitioner Frank Mumfrey came in contact with, utilized, inhaled, causing his injuries, illnesses, and disabilities." *Id.* at ¶ 30. Plaintiff alleged that Carruth was a professional vendor of asbestos-containing products, and that due to its size, volume of business, and merchandising practices, knew or should have known of the defects of the asbestos products it sold. *Id.* at ¶ 31. Plaintiff alleged that Carruth is strictly liable and negligent for failing to warn the users of potential health hazards, as well as for selling an unreasonably dangerous product defectively designed. *Id.* at ¶¶ 31-33.

There can be no serious question that Plaintiff has adequately alleged Louisiana strict liability and negligence claims against the Louisiana Defendants as suppliers and/or professional vendors of asbestos-containing products. *See, e.g., Chappuis v. Sears Roebuck & Co.*, 358 So.2d 926, 930 (La. 1978); *Halphen v. Johns-Manville Sales Corp.,* 484 So.2d 110, 113-115 (La. 1986); *Adams v. Owens-Corning Fiberglas Corp.*, 2004-1589 (La. App. 1 Cir. 9/23/05); 923

So.2d 118, 123-125; *Abadie v. Metro. Life Ins. Co.*, 00 344 (La. App. 5 Cir. 3/28/01); 784 So.2d 46. The factual allegations in Plaintiff's complaint must be taken in the light most favorable to Plaintiff. *Travis*, 326 F.3d at 649.

Sherwin-Williams practically concedes that Plaintiff has adequately pled claims against the Louisiana Defendants in his Petition for Damages, making no allegation that the Petition fails to state a claim against them. Moreover, no defendant, including Sherwin-Williams, has chosen to challenge Plaintiff's virtually identical allegations against them through a peremptory exception of no cause of action, suggesting that Plaintiff has adequately stated claims for negligence and strict liability against all the manufacturers and suppliers of the asbestos-containing materials to which he was exposed. Therefore, this Court need not go beyond Plaintiff's complaint to determine that his claims against Anco, Carruth, Taylor, and Reilly-Benton have a sound factual and legal basis and that these defendants were properly joined.

**B.      Sherwin-Williams Cannot Show Improper Joinder By Merely Alleging That Plaintiff Lacks Evidence at this Early Stage of the Litigation.**

Given that proper joinder is evident from the face of Plaintiff's complaint, Sherwin-Williams has resorted to arguing improper joinder on the basis of an absence of evidence. This strategy fails under the law of this Circuit. In rare cases, even if the plaintiff has adequately stated a claim for relief, the court may "pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573. However, such a procedure should only be utilized if the plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* Therefore, the Fifth Circuit has cautioned that "**a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.**" *Id.* at 573-74 (emphasis added).[2] In other words, the

---

[2] "Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was

removing party must point to evidence that would "**negate the [in-state defendant's] fault as alleged in the complaint**." *Travis*, 326 F.3d at 650 (emphasis added). Examples of such facts would include that "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Smallwood,* 385 So. 2d at 574, n.12.

Simply alleging an absence of evidence against the in-state defendant will not be sufficient to carry the removing party's burden. *See Travis*, 326 F.3d at 650. In the *Travis* case, the Fifth Circuit rejected an allegation of fraudulent joinder based on the plaintiff's discovery responses stating that she did not yet possess facts to support her allegations against the in-state defendant. *Id.* at 649.  The court noted that such responses must be considered in the context of her additional discovery responses that provided lists of eyewitnesses that she expected to use to establish her claims, as well as the fact that discovery was ongoing. *Id.* at 649-50. Under those facts, the plaintiff's absence of evidence against the in-state defendant was not sufficient to establish fraudulent joinder:

> In this circumstance, in which the defendant has the burden of establishing fraudulent joinder and the plaintiff can clearly state a claim upon which relief can be granted as to the non-diverse defendant, the lack of substantive evidence as to the non-diverse defendant does not support a conclusion that he was fraudulently joined. In order to establish that [the in-state defendant] was fraudulently joined, the defendant must put forward evidence that would negate a possibility of liability on the part of [the in-state defendant]. As the defendants cannot do so, **simply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient to show that there is no possibility for [the plaintiff] to establish [the in-state defendant's] liability at trial.**

*Id.* at 650-51 (emphasis added).

---

properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573. The Court must therefore take care not to move beyond the jurisdictional question and into a resolution of the merits. *Id.* at 574.

Rather than meet its burden of pointing to evidence that would negate Plaintiff's claims against the Louisiana Defendants, Sherwin-Williams has taken the exact approach rejected in this Circuit—it merely contends that Plaintiff lacks evidence against these Defendants. Sherwin-Williams takes the position that Mr. Mumfrey's deposition testimony shows he cannot recover against any of the Louisiana Defendants because he either could not recall the defendant present at his work site or he could not absolutely confirm that the defendant sold products that contained asbestos. *See* Notice at 3-4. While the factual inaccuracy of this allegation will be discussed below, Plaintiff must point out that there are still four months of discovery left in this case. The parties' agreed scheduling order in this case sets the discovery deadline on August 1, 2011. *See* Agreed Scheduling Order, March 18, 2011, attached as Exhibit C. Sherwin-Williams cannot meet its burden of showing improper joinder by merely alleging a lack of evidence when Plaintiff is still developing the evidence against the Louisiana Defendants. *See Travis*, 326 F.3d at 650.

The Middle District of Louisiana recently remanded an asbestos case removed almost under identical circumstances. *See Bradford v. McCarty Corp.*, No. 08-746-JVP-SCR, 2009 WL 667175 (M.D. La. Mar. 12, 2009). As here, in *Bradford* the plaintiff brought asbestos exposure claims against the companies that manufactured, installed, sold, and/or distributed the asbestos-containing products to which he was exposed. *See id.* at *1. The case was removed based on the allegation that the plaintiff improperly joined two non-diverse defendants in an effort to defeat diversity. *See id.* The removing party argued that the plaintiff did not have a reasonable basis of recovery against the in-state defendants because the plaintiff "stated in his deposition that he could not identify any insulation contractors or insulation companies that may have done work at

the sites where he alleges exposure to asbestos." *Id.* The court found that such an allegation failed to establish improper joinder:

> [The removing party] removed this action one month after it was filed and has set forth no evidence to carry its heavy burden of establishing fraudulent joinder. Instead, [it] relies, instead, on the fact that the plaintiffs have set forth no substantive evidence regarding the non-diverse defendants. Simply pointing to the plaintiffs' lack of evidence at this early stage of the case is insufficient to show that there is no possibility that the plaintiffs will be able to establish the liability of the non-diverse defendants at trial.

*Id.* at *2. Therefore, because the removing defendant had failed to carry its burden of showing improper joinder, the case was remanded back to state court. *Id.* at *2-*3.

Similarly, in *Richoux v. CSR Ltd.*, No. 08-931, 2008 WL 576242 (E.D. La. Feb. 29, 2008), this Court remanded an asbestos case that had been removed solely on the basis of the plaintiff's deposition testimony that he did not have personal knowledge that the non-diverse defendants had supplied or installed the asbestos-containing products present at his work site. *See id.* at *1, *4. Because discovery had barely begun, the court concluded that, "[t]his is far from the only type of evidence, after discovery, that the plaintiff might be able to produce at trial." *Id.* at *4. The defendant's failure to establish improper joinder meant that there were diverse defendants in the case and the court had no subject matter jurisdiction over the matter. *Id.* at *5.

The instant case is almost identical to *Bradford* and *Richoux* and should have the same result. Sherwin-Williams has not offered any evidence that would negate the possibility of the in-state defendants' liability. The fact that Mr. Mumfrey could not testify conclusively that he was exposed to asbestos-containing products supplied or installed by each Louisiana Defendant is not sufficient to show that he has no possibility of recovery against those defendants. Plaintiff still has ample opportunity to develop his claims against the Louisiana Defendants through the

testimony of co-workers and other evidence.[3] As long as the plaintiff and other parties have a reasonable opportunity to conduct additional discovery, any determination on the ultimate viability of Plaintiff's claims is premature. Sherwin-Williams has therefore failed to meet its heavy burden of showing improper joinder and this case must be remanded to state court.

### C.  Plaintiff's Evidence Against Non-Diverse Defendant Carruth Demonstrates the Existence of Material Issues of Fact for the Jury's Consideration at Trial.

Not only has Sherwin-Williams taken an approach that fails under the established law of this Circuit, it also fails on the facts of this case. If the Court decides to go beyond the pleadings and consider summary judgment-type evidence, it "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. Any evidence should be considered in the context of the entire record, including the status of discovery. *Id.* Any disputed issues of fact and ambiguities in state law must be resolved in favor of the non-removing party. *Id.*; *see also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) (holding that the district court must "evaluate all of the factual allegations in the light most favorable to the plaintiff, resolve all contested issues of substantive fact in favor of the plaintiff, and resolve any uncertainties in the current state of controlling substantive law in favor of the plaintiff.").

To the extent the Court determines a need to examine the evidence developed thus far in discovery, both the deposition given by Plaintiff Frank Mumfrey and his answers to written discovery provide clear evidence of exposure to asbestos-containing products supplied by Carruth. Mr. Mumfrey testified that Carruth supplied some of the asbestos-containing joint

---

[3] At his depositions Mr. Mumfrey identified a number of fact witnesses that are likely to have information relevant to his claims. *See, e.g.*, Frank Mumfrey Discovery Depo., Vol. 1, Feb. 23, 2011, excerpts attached as Exhibit D, at 34:18-37:7; Frank Mumfrey Discovery Depo., Vol. 2, March 2, 2011, excerpts attached as Exhibit E, at 171:7-13, 200:5-14, 287:9-289:3, 321:14-22, 327:1-328:22. Moreover, Plaintiff intends to conduct discovery of each defendant in this case, including taking depositions of corporate representatives where appropriate.

compounds used during the renovation of restaurants and bars that Mr. Mumfrey oversaw for

International Property Management in the 1970s:

> Q. And from the time or during the time you worked for International
> Property Management, can you quantify how many bags of UGL asbestos-
> containing joint compound Arthur and his crew would have used?

> A. Over the years we renovated[,] probably 50 bars or more, some all the
> way, some of them was stripping everything out to the studs, some of
> them were just patches and everything in between . . . .We had to use
> hundreds of bags of these products and buckets . . . .

> Q. . . . . **Who were the suppliers that you recall using that supplied these
> asbestos-containing joint compounds?**

> A. Like lumber yards. There was no Home Depot . . . .

> Q. Do you recall the lumber yards in which you would have worked with
> during that time?

> A. I remember some of them. **Carruth Brothers**, I still buy from them. I
> know those fellows . . . .

Video Perpetuation Deposition of Frank Mumfrey, Feb. 23, 2011, ("Mumfrey Video Depo."),

excerpts attached as Exhibit F, at 64:8-65:10 (emphasis added). Mr. Mumfrey also testified that

he was in the same room when the asbestos-containing joint compound (obtained in part from

Carruth) was sanded by his crew and that he was responsible for cleaning up the dust. *See id.* at

63:1-64:7.

　　　　In both volumes of Mr. Mumfrey's discovery deposition, he confirmed that he purchased

sheetrock mud (also known as joint compound) from Carruth. *See* Mumfrey Discovery Depo.,

Vol. 1, at 46:13-24; Mumfrey Discovery Depo., Vol. 2, Mar. 2, 2011, at 346:1-7, 361:14-24. Mr.

Mumfrey's interrogatory responses similarly state that he purchased asbestos products from

Carruth Brothers Lumber on Olympia Street in New Orleans. *See* Plaintiffs' Answers to Master

Discovery Requests to All Defendants, Jan. 24, 2011, excerpts attached as Exhibit G, at 19.

Despite all of the above, Sherwin-Williams contends that Plaintiff has "no possibility of recovery" against Carruth and the other Louisiana Defendants. In order to make this case Sherwin-Williams grossly misstates Mr. Mumfrey's testimony regarding Carruth, claiming that he only purchased lumber and sheetrock there and conveniently omitting that he repeatedly testified that he purchased sheetrock mud or joint compound from Carruth. Notice at 3. Sherwin-Williams further misstates Mr. Mumfrey's deposition testimony by claiming that he "had no reason to believe that anything he purchased from Carruth contained asbestos," when in fact he testified that he purchased asbestos-containing UGL joint compound from Carruth, *see* Mumfrey Video Depo. at 65:2-9, as well as other brands of sheetrock mud, including Wel-cote, *see* Discovery Depo., Vol. 2, at 346:1-7, 361:14-24, which Plaintiffs will show at trial contained asbestos during the years Mr. Mumfrey was exposed. Although Mr. Mumfrey could not confirm 40 years after the fact that these products in fact contained asbestos, that is not required. Plaintiff will easily be able to demonstrate the asbestos content of these products with other evidence at trial.

Sherwin-Williams also notes that Carruth has not been served in this case, as if that is relevant to the improper joinder issue. Plaintiff in fact obtained a citation of service against Carruth in a timely manner, and attempted service in late December 2010. *See* Case Summary Service Detail, Orleans Parish Sheriff's Office website printout, attached as Exhibit H. Apparently the service address was incorrect, but Plaintiff will of course effect proper service on Carruth in this case. In any event, whether or not Carruth has been served has no bearing on the determination of diversity jurisdiction in this case. The Fifth Circuit has held that a defendant's non-diverse citizenship cannot be ignored in determining whether diversity jurisdiction exists simply because he was unserved. *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir.

1998). The court explained that "[a] non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant." *Id.* This is because "the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *Id.* (collecting cases). Thus, Plaintiff's good-faith claims against Carruth, evidenced not only by his Petition but also by Mr. Mumfrey's depositions and written discovery responses, must be considered in the diversity equation. As Mr. Mumfrey and Carruth are both Louisiana citizens, diversity does not exist in this case and it must be remanded to state court.

## IV.   PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES BECAUSE SHERWIN-WILLIAMS HAS REMOVED THIS CASE IN BAD FAITH.

As is evident from the foregoing, Sherwin-Williams has removed this case without any legitimate argument that diversity exists and without properly following the removal procedures regarding obtaining the timely formal consent of all parties. The removal statute provides for sanctions against parties that remove without an objectively reasonable basis for doing so. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140-41 (2005) ("The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.") Specifically, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 USC 1447(c).

This Court has recently held that an award of attorneys fees and costs was appropriate in a mesothelioma case in which the defendant removed merely on the basis of the plaintiff's deposition testimony that he did not have personal knowledge regarding whether the non-diverse

defendants supplied asbestos products to which he was exposed. *See Richoux*, 2008 WL 576242, at *1, *6. Such removal is without an objectively reasonable basis. *Id.* at *6. Attorneys fees are warranted here for the same reason.

However, this case may warrant even stronger sanctions because the circumstances surrounding this removal have unfortunately led Plaintiff to conclude that Sherwin-Williams has in fact removed this case in bad faith for the improper purpose of avoiding (or at least delaying) its ultimate resolution on the merits. On March 29, 2011, counsel for Sherwin-Williams, Dwight C. Paulsen, sent Plaintiff's counsel Darren McDowell a letter in which he stated his view that Plaintiff's claims *against Sherwin-Williams* lack merit based on a factual dispute regarding the asbestos content of the Sherwin-Williams products that Mr. Mumfrey identified in his deposition. *See* Affidavit of Jeffrey B. Simon ("Simon Aff."), April 4, 2011, attached as Exhibit I, at ¶ 3, and Paulsen letter attached as Exhibit 1 thereto. Mr. Paulsen's letter stated that if Plaintiff would not agree to voluntarily dismiss his claims against Sherwin-Williams, Defendant would remove this case to federal court. *See id.* Plaintiff was given two days, until March 31, 2011, in which to notify Sherwin-Williams whether he would agree to voluntarily dismiss this case. *See id.*

Plaintiff's counsel Jeffrey Simon responded to Mr. Paulsen's letter via email on March 31, 2011. *See* Simon Affidavit at ¶ 4, and email attached thereto as Exhibit 2. The email explained that dismissal would be premature at this time because Plaintiff is still conducting discovery in this case and has not yet deposed Sherwin-Williams's corporate representative or other fact witnesses. *See id.* It was further explained that if Sherwin-Williams is entitled to judgment in its favor after all the facts have been developed, then it has an adequate and speedier remedy in state court given that there is a scheduling order already in place that provides a date

certain for dispositive motions. *See id.* In Plaintiff's view, removal only delays resolution on the merits and serves to punish Mr. Mumfrey, who is dying from an asbestos-related disease. *See id.* It was disturbing to Plaintiff that Sherwin-Williams proposed non-removal as a *quid pro quo* for Plaintiff's agreement to dismiss this case. *See id.*

In response to Mr. Simon's email, national counsel for Sherwin-Williams, Jack Sibley, called Mr. Simon on April 1, 2011, to reiterate that unless Plaintiff dismissed Sherwin-Williams, the case would be removed to federal court. *See* Simon Aff. at ¶ 5. Mr. Simon expressed Plaintiff's view that removing the case was a bad faith legal strategy because Mr. Mumfrey is a living mesothelioma victim and sending his case to federal court only serves to increase the likelihood that he will die during pendency of the case. *See id.* Mr. Simon further explained that Plaintiff believes Sherwin-Williams has contrived an argument for federal diversity jurisdiction simply because the parties do not agree on the merits of the underlying claim. *See id.* Mr. Simon urged Sherwin-Williams not to remove the case, but to follow the scheduling order already in place to seek relief on the merits through Louisiana's summary judgment procedure. *See id.*

National counsel for Sherwin-Williams responded that he was not going to wait "to see (us) prove his client was liable," and that removing the case ultimately to the federal asbestos multi-district litigation (MDL) court in Philadelphia was his client's "best defense." *See* Simon Affidavit at ¶ 6. Mr. Sibley further informed Plaintiff's counsel that he could not forego his "best defense" (of removal) and that he was going to remove the case inside of two hours unless Plaintiff non-suited Sherwin-Williams. *See id.* A call to Mr. Sibley's law partner, Al Parnell, did not resolve the matter. *See id.* at ¶ 7.

Mr. Sibley was under the impression that his deadline for removal on the basis of diversity was April 1, 2011. *See* Simon Aff. at ¶ 6. Only two hours before the close of business

on that date, Mr. Sibley called Mr. Simon back and stated that in lieu of removal, Plaintiff had two options: (1) accept a settlement offer of $20,000 in a separate mesothelioma case filed in Minnesota for another client, Robert Casci, or (2) accept a settlement of $20,000 for Mr. Casci's claim and $5,000 for Mr. Mumfrey's claim. *See id.* at ¶ 8. Mr. Sibley informed Plaintiff's counsel that Plaintiff had less than two hours to pick option 1 or 2 or he would remove this case. *See id.* Plaintiff's counsel of course could not agree to compromise another client's case in an effort to avoid improvident removal of this matter. *See id.* at ¶ 9.

It is clear from this sordid chain of events that defense counsel has used removal to this Court as a tactic to force a voluntary dismissal of a valid claim against it in this case, to force a settlement of an entirely different case in Minnesota, and to ultimately delay a resolution on the merits. Such improper and dilatory tactics are particularly egregious given that Mr. Mumfrey suffers from a terminal cancer and any delay could result in his inability to attend his own trial. Plaintiffs therefore request attorneys fees, as well as additional appropriate sanctions for Sherwin-Williams's bad-faith removal.

## V.   CONCLUSION

Remand is required because Sherwin-Williams's Notice of Removal is procedurally defective in that it does not reflect that Sherwin-Williams has the authority to convey any defendant's formal consent to removal. Moreover, this Court does not have subject matter jurisdiction in this case because there is not complete diversity among the parties. Plaintiff Frank Mumfrey, as well as four defendants in this case, are Louisiana citizens. Plaintiff therefore requests that this case be summarily remanded to state court and that costs, attorneys' fees, and sanctions be awarded against Sherwin-Williams for removing this case without an objectively reasonable basis and in bad faith.

Respectfully submitted,

LANDRY, SWARR & CANNELLA, L.L.C.

*/s/ Frank J. Swarr*
FRANK J. SWARR, Bar No. 23322 (T.A.)
MICKEY P. LANDRY, Bar No. 22817
DAVID R. CANNELLA, Bar No. 26231
PHILIP C. HOFFMAN, Bar No 32277
1010 Common Street, Suite 2050
New Orleans, Louisiana 70112
Telephone:  (504) 299-1214
Facsimile:   (504) 299-1215
E-mail:  lslaw@landryswarr.com

SIMON, EDDINS & GREENSTONE, LLP
LISA WHITE SHIRLEY, Bar No. 26511
3232 McKinney Avenue, Suite 610
Dallas, Texas 75204
214-276-7680
214-276-7699 Fax
E-mail:  lshirley@seglaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April, 2011, a copy of the foregoing has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management.  All Counsel of record are being served this filing by the court's electronic filing system.

*/s/ Frank J. Swarr*

21