# U. S. District Court
## Eastern District of Louisiana (New Orleans)
## CIVIL DOCKET FOR CASE #: 2:11-cv-01013-MLCF-JCW
## Internal Use Only

Davidson v. Advocate Mines, Ltd et al
Assigned to: Judge Martin L.C. Feldman
Referred to: Magistrate Judge Joseph C. Wilkinson, Jr
Case in other court: Civil District Court, Orleans Parish,
                   10-05127 "B"
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 04/29/2011
Jury Demand: Defendant
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**William Cleve Davidson**      represented by    **Mickey P. Landry**
Landry & Swarr, LLC
1010 Common St.
Suite 2050
New Orleans, LA 70112
504-299-1214
Email: mlandry@landryswarr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Ryan Cannella**
Landry & Swarr, LLC
1010 Common St.
Suite 2050
New Orleans, LA 70112
504-299-1214
Fax: 504-299-1215
Email: dcannella@landryswarr.com
*ATTORNEY TO BE NOTICED*

**Frank J. Swarr**
Landry & Swarr, LLC
1010 Common St.
Suite 2050
New Orleans, LA 70112
504-299-1214
Email: fswarr@landryswarr.com
*ATTORNEY TO BE NOTICED*

**Philip C Hoffman**
Landry & Swarr, LLC
1010 Common St.

Suite 2050
New Orleans, LA 70112
(504) 299-1214
Fax: (504) 299-1215
Email: phoffman@landryswarr.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **HSBC Holdings plc**<br>*(sued individually and as sucessor-in-interest to Antony Gibbs and Co.)* | represented by | **Monique M. Lafontaine**<br>Locke Lord Bissell & Liddell, LLP (New Orleans)<br>601 Poydras St.<br>Suite 2660<br>New Orleans, LA 70130<br>504-558-5133<br>Email: mlafontaine@lockelord.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Omer Frederick Kuebel , III**<br>Locke Lord Bissell & Liddell, LLP (New Orleans)<br>601 Poydras St.<br>Suite 2660<br>New Orleans, LA 70130<br>(504) 558-5100<br>Email: nobankecf@lockeliddell.com<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Beazer East Inc**<br>*formerly known as*<br>Koppers Company, Inc. | represented by | **Douglas R. Elliott**<br>Deutsch, Kerrigan & Stiles, LLP (New Orleans)<br>755 Magazine St.<br>New Orleans, LA 70130<br>504-581-5141<br>Email: delliott@dkslaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Arthur Wendel Stout , III**<br>Deutsch, Kerrigan & Stiles, LLP (New Orleans)<br>755 Magazine St.<br>New Orleans, LA 70130 |

504-566-1201
Email: wstout@dkslaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bird, Incorporated**                 represented by   **Douglas R. Elliott**
*formerly known as*                                     (See above for address)
Bird & Son, Inc.                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Arthur Wendel Stout , III**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Certainteed Corporation**            represented by   **Douglas R. Elliott**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Arthur Wendel Stout , III**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Georgia-Pacific LLC**
*(sue individually and as successor-
in-interest to Bestwall Gypsum Company)*

**Defendant**

**Union Carbide Corporation**

**Defendant**

**Advocate Mines, Ltd**
*TERMINATED: 04/29/2011*

**Defendant**

**Alcoa Inc**                          represented by   **Andrew Lane Plauche , Jr.**
*(incorrectly identified as successor in*               Plauche, Maselli, Parkerson, LLP
*interest to Reynolds Metals Company)*                  One Shell Square
*TERMINATED: 04/29/2011*                                701 Poydras St.
                                                        Suite 3800
                                                        New Orleans, LA 70139
                                                        (504) 582-1142
                                                        Email: aplauche@pmpllp.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

Scott H. Mason
Plauche, Maselli, Parkerson, LLP
One Shell Square
701 Poydras St.
Suite 3800
New Orleans, LA 70139
504-582-1142
Email: smason@pmpllp.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Amalgamated Metal Corporation
Limited**
*TERMINATED: 04/29/2011*

represented by **Gary A. Bezet**
Kean Miller (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700
Baton Rouge, LA 70802
225-387-0999
Email: gary.bezet@keanmiller.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allison N. Benoit**
Kean Miller (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700
Baton Rouge, LA 70802
225-387-0999
Email: allison.benoit@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Anthony M. Williams**
Kean Miller (New Orleans)
First Bank & Trust Tower
909 Poydras Street
Suite 1400
New Orleans, LA 70112
504-585-3050
Email: anthony.williams@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Carol L. Galloway**
Kean Miller (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700

Baton Rouge, LA 70802
225-387-0999
Email: carol.galloway@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Gayla M. Moncla**
Kean Miller (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700
Baton Rouge, LA 70802
225-387-0999
Email: gayla.moncla@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Gregory M. Anding**
Kean Miller (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700
Baton Rouge, LA 70802
225-387-0999
Email: greg.anding@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Janice M. Culotta**
Kean Miller (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700
Baton Rouge, LA 70802
225-387-0999
*ATTORNEY TO BE NOTICED*

**Robert E. Dille**
Kean Miller (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700
Baton Rouge, LA 70802
225-387-0999
Email: robert.dille@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Vionne M. Douglas**
Kean Miller (Baton Rouge)
II City Plaza
400 Convention St.

Suite 700
Baton Rouge, LA 70802
225-387-0999
Email: vdouglas@carletonloraso.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bondex International, Inc.**
*TERMINATED: 04/29/2011*

**Defendant**

**Carrier Corporation**
*TERMINATED: 04/29/2011*

**Defendant**

**CSR Limited**
*(sued individually and as successor-
in-interest and as alter ego to Australlian
Blue Asbestos Proprietary, Limited)*
*TERMINATED: 04/29/2011*

**Defendant**

**Eagle Inc**                          represented by   **Susan Beth Kohn**
*TERMINATED: 04/29/2011*                                 Simon, Peragine, Smith & Redfearn, LLP
*formerly known as*                                      Energy Centre
Eagle Asbestos and Packing                               1100 Poydras St.
                                                         30th Floor
                                                         New Orleans, LA 70163-3000
                                                         (504) 569-2030
                                                         Email: suek@spsr-law.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Douglas Kinler**
                                                         Simon, Peragine, Smith & Redfearn, LLP
                                                         Energy Centre
                                                         1100 Poydras St.
                                                         30th Floor
                                                         New Orleans, LA 70163-3000
                                                         (504) 569-2030
                                                         Email: dkinler@spsr-law.com
                                                         *ATTORNEY TO BE NOTICED*

                                                         **James R. Guidry**
                                                         Simon, Peragine, Smith & Redfearn, LLP
                                                         Energy Centre
                                                         1100 Poydras St.
                                                         30th Floor

New Orleans, LA 70163-3000
(504) 569-2030
Email: jguidry@spsr-law.com
*ATTORNEY TO BE NOTICED*

**Michael David Harold**
Simon, Peragine, Smith & Redfearn, LLP
Energy Centre
1100 Poydras St.
30th Floor
New Orleans, LA 70163-3000
(504) 569-2030
Email: michaelh@spsr-law.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lennox Industries, Inc.**                  represented by   **Kaye N. Courington**
*TERMINATED: 04/29/2011*                                      Duncan, Courington & Rydberg, LLC
                                                             400 Poydras St.
                                                             Suite 1200
                                                             New Orleans, LA 70130
                                                             504-524-5566
                                                             Email: kcourington@duncour.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Ney Jan Gehman**
                                                             Cotten, Schmidt & Abbott, LLP
                                                             650 Poydras Street
                                                             Suite 2810
                                                             New Orleans, LA 70130
                                                             504-524-5566
                                                             Fax: 504-524-7887
                                                             Email: ngehman@duncour.com
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Rheem Manufacturing Company**             represented by   **Richard P. Sulzer**
*TERMINATED: 04/29/2011*                                      Sulzer & Williams, LLC
                                                             201 Holiday Blvd.
                                                             Suite 335
                                                             Covington, LA 70433
                                                             985-898-0608
                                                             Email: rsulzer@sulzerandwilliams.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Christina L. Falco**

Sulzer & Williams, LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433
985-898-0608
*ATTORNEY TO BE NOTICED*

**Lori P. Moser**
Sulzer & Williams, LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433
985-898-0608
*ATTORNEY TO BE NOTICED*

**Robert Edward Williams , IV**
Sulzer & Williams, LLC
201 Holiday Blvd.
Suite 335
Covington, LA 70433
985-898-0608
Email: rwilliams@sulzerandwilliams.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**RPM Inc**
*(sued individually and as successor-
in-interest to Bondex International, Inc.)*
*TERMINATED: 04/29/2011*

**Defendant**

**RPM International Inc.**
*(sued individually and as successor-
in-interest to RPM, Inc.)*
*TERMINATED: 04/29/2011*

**Defendant**

**Trane US, Inc.**
*(sued individually and as successor-
in-interest to Trane Company)*
*TERMINATED: 04/29/2011*

**Defendant**

**Welco Manufacturing Company**
*TERMINATED: 04/29/2011*

**Defendant**

**York International Corporation**
*TERMINATED: 04/29/2011*

represented by **Sarika J. Angulo**
Aultman, Tyner, Ruffin & Swetman, Ltd.
(New Orleans)
The Texaco Center
400 Poydras St.
Suite 1900
New Orleans, LA 70130
504-528-9616
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hongkong and Shanghai Banking Corporation Limited**
*also known as*
Hongkong Shanghai Banking Corporation Limited

represented by **Monique M. Lafontaine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omer Frederick Kuebel , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/29/2011 | 1 | NOTICE OF REMOVAL from Civil District Court for the Parish of Orleans, case number 20105127 (Filing fee $ 350 receipt number 053L-2993502) filed by The Hongkong and Shanghai Banking Corporation Limited, HSBC Holdings plc. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Civil Cover Sheet) (Lafontaine, Monique) (Entered: 04/29/2011) |
| 04/29/2011 | 2 | Notice of Compliance by HSBC Holdings plc, The Hongkong and Shanghai Banking Corporation Limited re 1 Notice of Removal,. (Attachments: # 1 Exhibit)(Lafontaine, Monique) (Entered: 04/29/2011) |
| 04/29/2011 | 3 | Initial Case Assignment to Judge Martin L.C. Feldman and Magistrate Judge Joseph C. Wilkinson, Jr. (cl, ) (Entered: 04/29/2011) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILLIAM CLEVE DAVIDSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.: _____ |
| | § | |
| ADVOCATE MINES, LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### NOTICE OF REMOVAL

Notice is hereby given that, pursuant to 28 U.S.C. §§ 1441, 1446, 1367, and 1332, Defendants, HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited, hereby remove this action from the Civil District Court for the Parish of Orleans, State of Louisiana to the United States District Court for the Eastern District of Louisiana:

### I.
### THE STATE COURT ACTION

1.      On May 20, 2010, Plaintiff, William Cleve Davidson ("Plaintiff" or "Davidson"), filed an *Original Petition for Damages* ("Original Petition") in the Civil District Court for the Parish of Orleans, State of Louisiana, Division "B" styled *William Cleve Davidson versus Advocate Mines, Ltd., et al.*, No. 2010-5127 (the "State Court Action").

2.      In the State Court Action, the Plaintiff alleges that he contracted mesothelioma as result of exposure to asbestos supplied by the Defendants.  (*See* **Exhibit A**.)  Plaintiff further alleges that he is domiciled in the Parish of Bossier, State of Louisiana (*Id.* at ¶1).

3.      The Original Petition named twenty-one (21) Defendants, only one of which (Eagle, Inc.) was non-diverse from the Plaintiff.  Today, only seven Defendants remain as parties in the State Court Action.  The chart below lists the original twenty-one (21) Defendants and their current status in the State Court Action:

1

| Defendant | Status |
|---|---|
| Advocate Mines, Ltd. | Voluntarily Dismissed on 04/21/2011 |
| Alcoa Inc. | Voluntarily Dismissed on 10/13/2010 |
| Amalgamated Metal Corporation Limited | Voluntarily Dismissed on 01/27/2011 |
| Beazer East, f/k/a Koppers Company, Inc. | *Still a Party* |
| Bird, Incorporated f/k/a Bird & Son, Inc. | *Still a Party* |
| Bondex International, Inc. | Voluntarily Dismissed on 06/21/2010 |
| Carrier Corporation | Voluntarily Dismissed via Judgment on 04/19/2011 |
| Certainteed Corporation | *Still a Party* |
| CSR, Limited | Voluntarily Dismissed on 04/21/2011 |
| Eagle, Inc. f/k/a Eagle Asbestos & Packing Co. Inc. | Voluntarily Dismissed via Judgment on 04/25/2011 |
| Georgia-Pacific LLC | *Still a Party* |
| HSBC Holdings plc | *Still a Party* |
| The Hongkong Shanghai Banking Corporation Limited | *Still a Party* |
| Lennox Industries Inc. | Voluntarily Dismissed via Judgment on 04/29/2011 |
| Rheem Manufacturing Company | Voluntarily Dismissed via Judgment on 04/27/2011 |
| RPM, Inc. | Voluntarily Dismissed on 07/09/2010 |
| R.P.M. International, Inc | Voluntarily Dismissed on 07/09/2010 |
| Trane U.S., Inc. | Voluntarily Dismissed via Judgment on 04/27/2011 |
| Union Carbide Corporation | *Still a Party* |
| Welco Manufacturing Company | Voluntarily Dismissed on 07/09/2010 |
| York International Corporation | Voluntarily Dismissed via Judgment on 04/27/2011 |

4.      Accordingly, only seven Defendants remain in this lawsuit: (1) Beazer East, f/k/a Koppers Company, Inc., (2) Bird, Incorporated f/k/a Bird & Son, Inc., (3) Certainteed Corporation, (4) Georgia-Pacific LLC, (5) HSBC Holdings plc, (6) The Hongkong Shanghai Banking Corporation Limited, and (7) Union Carbide Corporation.  As set forth *infra*, none of the remaining Defendants are citizens of Louisiana, and therefore, complete diversity of

citizenship exists among the parties.

## II.
## PROCEDURAL REQUIREMENTS

5.      Civil actions over which the district courts have original jurisdiction may be removed to the district court of the United States for the district and division embracing the place where the action is pending in state court.  28 U.S.C. § 1441(a).  The State Court Action is properly removed to this Court, as the State Court Action is pending within this district and division.  *See* 28 U.S.C. § 1441.

6.      This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed within one year of the commencement of the State Court Action[1] and within thirty (30) days of the state court's ruling in open court granting Defendant Eagle's (the only non-diverse Defendant) unopposed Motion for Summary Judgment[2] and dismissing Defendant Eagle from the State Court Action.  This ruling in open court was subsequently reduced to writing in a Judgment dated April 25, 2011.  (*See* Exhibit "I").  *See also* 28 U.S.C. § 1446(b) ("If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .").

---

[1] The State Court Action was filed on May 20, 2010.

[2] The state court granted Defendant Eagle's Motion for Summary Judgment in open court on April 19, 2010.  A copy of the transcript from that hearing accompanies this Notice of Removal as Exhibit "J."

3

7.      All properly joined and served defendants who remain in this action have consented to this Removal.[3] (*See* **Exhibit B**.)

8.      Simultaneously with the filing of this Notice of Removal, Defendants HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited are serving Plaintiff with a copy of the Notice of Removal and filing a copy of the Notice of Removal in the Civil District Court for the Parish of Orleans, State of Louisiana, Division "B" pursuant to 28 U.S.C. §1446(d).

9.      Pursuant to 28 U.S.C. § 1446(a) and Local Civil Rule 3.2 of the Eastern District of Louisiana, the following items are being provided along with this Notice of Removal and/or will be provided within fourteen (14) days: (a) a list of all parties remaining in the action (*See* **Exhibit E**); (b) copies of all pleadings, including answers, filed in state court (*See* **Exhibits A, F**); (c) copies of all Orders served upon Defendants HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited (*See* **Exhibit G**), and (d) copies of the return of service of process filed in state court on the remaining parties (*See* **Exhibit H**).

### III.
### THIS COURT HAS DIVERSITY JURISDICTION

10.      Federal district courts have original jurisdiction of all civil actions where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

11.      This Court has original jurisdiction over this action because there is complete

---

[3] In seeking removal, a defendant must only obtain consent from "properly joined and served defendants." *Augustine v. Employers Mut. Cas. Co.*, No. 2:08-cv-1102, 2010 WL 4930317, at *6 (W.D. La. Nov. 30, 2010) (citing *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262-63 (5th Cir. 1988)). Thus, consent of an unserved defendant is not required. *See Getty Oil Corp.*, 841 F.2d at 1262 n.9. Further, there are three exceptions to the unanimity of consent requirement. Consent is not required (1) from a defendant whom the removing party contends is fraudulently or improperly joined; (2) from a nominal defendant; or (3) where it is alleged that there has been collusion between the plaintiff and the non-consenting defendant. *See Augustine*, 2010 WL 4930317, at *6; *Farias v. Bextar County Bd. of Tr. For Mental Health Retardation Servs.*, 925 F.2d 866, 871-72 (5th Cir. 1991).

diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). This Court also has supplemental jurisdiction under 28 U.S.C. § 1367.

12.     Therefore, removal of this action is proper under 28 U.S.C. §§ 1441 and 1332.

## A.     THERE IS COMPLETE DIVERSITY OF CITIZENSHIP AMONG THE PARTIES

13.     A defendant may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). There is complete diversity when "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996).

14.     In his Original Petition, Plaintiff alleged that he is domiciled in the Parish of Bossier, State of Louisiana. (*See* **Exhibit A** at ¶ 1.) Therefore, Plaintiff is a citizen of Louisiana. *See Coury v. Prot*, 85 F.3d 244, 248-49 (5th Cir. 1996).

15.     Twenty of the twenty-one (21) Defendants are corporations. For diversity purposes, each of these Defendants is a citizen of the state where it was incorporated and the state where it maintains its principal place of business. 28 U.S.C. §1332(c)(1); *Lincoln Prop. Co.* 546 U.S. at 88-89; *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988). One of the twenty-one Defendants is a limited liability company. For diversity purposes, it is a citizen of the state where it was incorporated and the states where its members are domiciled. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008).

16.     The chart below, which is based on Plaintiff's pleadings and/or information, lists the state(s) in which each of the Defendants are citizens for diversity purposes. The Defendants whose names and citizenships are in bold and italics are the only ones remaining as parties in the State Court Action.

| **Defendant Corporations** | **State of Incorporation** | **Principal Place of Business** |
|---|---|---|
| Advocate Mines, Ltd. | Canada | Canada |
| Alcoa Inc. | Pennsylvania | New York |
| Amalgamated Metal Corporation Limited | England | England |
| ***Beazer East, f/k/a Koppers Company, Inc.*** | ***Delaware*** | ***Pennsylvania*** |
| ***Bird, Incorporated f/k/a Bird & Son, Inc.*** | ***Massachusetts*** | ***Pennsylvania*** |
| Bondex International, Inc. | Ohio | Missouri |
| Carrier Corporation | Delaware | Connecticut |
| ***Certainteed Corporation*** | ***Delaware*** | ***Pennsylvania*** |
| CSR, Limited | New York | New York |
| Eagle, Inc. f/k/a Eagle Asbestos & Packing Co. Inc. | Louisiana | Louisiana |
| ***HSBC Holdings plc*** | ***England*** | ***England*** |
| ***The Hongkong Shanghai Banking Corporation Limited*** | ***Hong Kong, SAR China*** | ***Hong Kong, SAR China*** |
| Lennox Industries Inc. | Iowa | Texas |
| Rheem Manufacturing Company | Delaware | Georgia |
| RPM, Inc. | New York | New York |
| R.P.M. International, Inc | New York | New York |
| Trane U.S. Inc. | Delaware | New Jersey |
| ***Union Carbide Corporation*** | ***New York*** | ***Texas*** |
| Welco Manufacturing Company | Missouri | Missouri |
| York International Corporation | Delaware | Wisconsin |

| **Defendant – LLC** | **State of Incorporation** | **Domicile of Members** |
|---|---|---|
| ***Georgia-Pacific LLC*** | ***Delaware*** | ***Georgia[4]*** |

17.    As set forth above, Defendant Eagle, Inc. ("Eagle") was the only Defendant who was a citizen of Louisiana that prevented complete diversity at the time this lawsuit was filed. However, Defendant Eagle was recently dismissed from the State Court Action pursuant to

---

[4] Defendant Georgia-Pacific LLC is a Delaware limited liability company with its principal place of business in Georgia. Georgia-Pacific LLC, a Delaware LLC, is wholly owned by Georgia-Pacific Holdings, LLC, a Delaware LLC. Georgia-Pacific Holdings, LLC is wholly owned by Georgia-Pacific Equity Holdings, LLC, a Delaware LLC. Georgia-Pacific Equity Holdings, LLC is wholly owned by Koch Renewable Resources, Inc., a Delaware corporation with its principal place of business in Kansas.

Plaintiff's voluntary consent, thereby establishing complete diversity of citizenship among all remaining parties to the lawsuit.[5]

18.     Therefore, at the time of removal, none of the remaining Defendants are citizens of Louisiana and complete diversity of citizenship exists among the Plaintiff and each of the remaining Defendants.

## B.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

19.     Where there is complete diversity among the parties, and where the amount in controversy exceeds $75,000, an action may be removed to federal court. 28 U.S.C. §1332(a).

20.     Although Plaintiff's Original Petition does not allege an amount in controversy, the amount at issue more likely than not exceeds $75,000 exclusive of interest and costs.  Where a defendant can show, by a preponderance of the evidence, that the amount in controversy is greater than the jurisdictional amount, removal is proper.  *See White v. FCI U.S.A., Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (affirming district court's conclusion that it was "more probable than

---

[5] Defendant Eagle filed a Motion for Summary Judgment.  The day before the hearing, the Plaintiff's counsel advised the state court in writing via letter addressed to the state court judge that Plaintiff did not oppose Defendant Eagle's Motion for Summary Judgment. (Attached hereto and incorporated by reference as **Exhibit C** is a copy of Plaintiff's letter to the state court.)  At the hearing on April 19, 2011, the Plaintiff's counsel advised the state court in open court that the Plaintiff did not oppose Defendant Eagle's Motion for Summary Judgment. (*See* Exhibit "J")  Accordingly, on April 19, 2011, the state court entered an order in open court granting Defendant Eagle's unopposed motion for summary judgment, dismissing Defendant Eagle from the State Court Action.  This ruling in open court was subsequently reduced to writing in a Judgment dated April 25, 2011.  (*See* Exhibit "I")

Plaintiff's consent to the dismissal of Defendant Eagle, without argument, is the functional equivalent of a voluntary dismissal.  *Harvey Lee Montgomery v. Long-Lewis, Inc.*, Case No. 2:10-cv-21-RDP (N.D. Alab. filed March 25, 2009) ("Memorandum Opinion") (holding that removal was proper where Plaintiff informed the court that it did not oppose the motion for summary judgment filed by the only remaining non-diverse defendant, noting that such action demonstrated that the plaintiff had voluntarily relinquished its claims against such non-diverse defendant, which was akin to a voluntary dismissal) (citing various cases, including *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir. 1967) ("if the resident defendant [is] dismissed from the case by the voluntary act of the plaintiff, the case [becomes] removable. . . .")); *see also Jenkins v. Nat'l Union Fire Ins. Co. of Pennsylvania*, 650 F. Supp. 609 (N.D. Ga. 1986); *Billiot v. Canal Indemnity Co.*, No. 2010-1183, 2010 WL 4975622 at *2 (W.D. La. 2010); *Rodenroth v. Firestone*, No. 87-0725, 1987 U.S. Dist. LEXIS 15770 at *6 (E.D. Mich. 1987); *Erdey v. Am. Honda Co.*, 96 F.R.D. 597, 599 (M.D. La. 1983) (the technicality of how Plaintiff's intention is expressed is of no moment – it is the expression of the intent by the plaintiff which makes the case removable).  Accordingly, there is complete diversity among the parties.  *See Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567, 572 (2004) (stating that if diversity is lacking at the time suit was filed because of the presence of a non-diverse dispensable party who was later dismissed, diversity can be determined by the facts on the date the party was dismissed).

not" that damages were over $75,000 where the total amount of relief was not stated in the petition); *see also St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 n.13 (5th Cir. 1998) ("[t]he test is whether it is more likely than not that the amount of the claim will exceed [the jurisdictional minimum]."). The defendant can meet its burden if it is "facially apparent" from the face of the petition that the claims probably exceed $75,000, or if the defendant introduces other evidence to show that the amount in controversy more likely than not exceeds $75,000. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

21.     In the State Court Action, Plaintiff seeks recovery of the following types of damages: (a) conscious physical pain and suffering and mental anguish; (b) physical impairment; (c) disfigurement; (d) reasonable and necessary medical expenses; (e) future medical expenses; (f) mental anguish caused by the extraordinarily increased likelihood of developing asbestos-related cancer of the lungs, mesothelioma, and other cancers; and (g) present and future lost wages and loss of earning capacity. (*See* **Exhibit A** at ¶ 61.)

22.     Additionally, Plaintiff's counsel provided undersigned counsel with a "Quantum Study," which demonstrates the amount in controversy in this lawsuit. (A copy of the Quantum Study is attached hereto and incorporated by reference as **Exhibit D**.) The Quantum Study contained a list of recent Louisiana cases that also involved claims arising out of asbestos exposure (such as mesothelioma and asbestosis/lung cancer) and all of them involved damage awards in the millions of dollars—far exceeding the jurisdictional threshold. *See id.* (citing *Gauthe v. Asbestos Corp.*, 791 So. 2d 126 (La. App. 5 Cir. 2001); *Clark v. McCarty*, 804 So. 2d 11 (La. App. 5 Cir. 2001); *Hennegan v. Cooper T. Smith Stevedoring Co.*, 837 So. 2d 96 (La. App. 4 Cir. 2002); *Faulkner v. McCarty*, 853 So. 2d 24 (La. App. 4 Cir. 2003); *Roberts v. Owens-Corning Fiberglass Corp.*, 878 So. 2d 631 (La. App. 1 Cir. 2004); *Torrejon v. Mobil*

*Oil Co.,* 876 So. 2d 877 (La. App. 4 Cir. 2004); *Zimko v. American Cyanamid,* 905 So. 2d 465

(La. App. 4 Cir. 2005); *Chaisson v. Avondale Indus.,* 947 So.2d 171 (La. App. 4 Cir. 2006);

*Terrence v. Dow Chemical,* 971 So. 2d 1058 (La. App. 1 Cir. 2007); *Graves v. Riverwood Int'l*

*Corp.,* 949 So. 2d 576 (La. App. 2 Cir. 2007); *Rando v. Anco Insulations,* 2008 WL 2068080

(La. App. 1 Cir 2008); *Emery v. Owens-Corp.,* 813 So. 2d 441 (La. App. 1 Cir. 2001); *Hoerner*

*v. Anco Insulations,* 812 So. 2d 45 (La. App. 4 Cir 2002); *Thomas v. AP Green,* 933 So. 2d 843

(La. App. 4 Cir. 2006)).

23.     Therefore, the amount in controversy more likely than not exceeds $75,000.00.

*See White,* 319 F.3d at 675; *see also Greenberg,* 134 F.3d at 1253 n.13; *see also Manguno,* 276

F.3d at 723.

24.     Accordingly, because there is complete diversity among the parties, and the

amount in controversy requirement is satisfied, this Court has jurisdiction pursuant to 28 U.S.C.

§ 1332(a) and supplemental jurisdiction under 28 U.S.C. § 1367.   Therefore, removal of this

action is proper.

## IV.
## CONCLUSION

WHEREFORE, Defendants, HSBC Holdings plc and The Hongkong and Shanghai

Banking Corporation Limited, remove this action from the Civil District Court for the Parish of

Orleans, State of Louisiana to the United States District Court for the Eastern District of

Louisiana, so that this Court may assume jurisdiction over the cause as provided by law.

Respectfully Submitted,

**LOCKE LORD BISSELL & LIDDELL, LLP**


  /s/ Monique Lafontaine
MONIQUE M. LAFONTAINE (T.A.) (24557)
OMER F. KUEBEL, III (21682)

9

601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130
504-558-5133 Telephone
504-681-5223 Facsimile
mlafontaine@lockelord.com

**ATTORNEYS FOR DEFENDANTS, HSBC HOLDINGS PLC AND THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing document was served upon counsel for Petitioner and Defendants via email this 29th day of April, 2011.

    /s/ Monique Lafontaine
Monique Lafontaine

DAL:0041171/00096:2007907v6

CIVIL DISTRICT COURT FOR THE PARISH OF NEW ORLEANS

STATE OF LOUISIANA

NO. 10-5127

SECTION

DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____        _____
                                           DEPUTY CLERK

## ORIGINAL PETITION FOR DAMAGES

**COMES NOW** Petitioner by and through undersigned counsel, who respectfully represents as follows:

1.      Petitioner WILLIAM CLEVE DAVIDSON is an adult domiciled in the Parish of Bossier, State of Louisiana.

2.      Defendants, identified on pages 20-22 of the Petition and incorporated by reference as if copied in full, are either foreign corporations licensed to do and/or doing business in the State of Louisiana or domestic corporations licensed to do and doing business in the State of Louisiana that are liable unto Petitioner for the claims asserted herein.

3.      Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 42(2) because Defendant Eagle, Inc. is a domestic corporation licensed to do business in this State and has designated as its primary business office and/or primary place of business in Louisiana as Orleans Parish (2431 Clio Street, New Orleans, Louisiana 70113).

4.      Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 73, because each of the defendants listed on pages 20-22, which is incorporated by reference, contributed to WILLIAM CLEVE DAVIDSON's exposure to asbestos and subsequent contraction of mesothelioma and therefore each is solidarily liable to Plaintiff with each of its co-defendants, and defendant Eagle, Inc. has designated its primary business office or primary place of business in Orleans Parish.

1


EXHIBIT
A

## BACKGROUND

5.    Upon information and belief Petitioner William Cleve Davidson was occupationally exposed to asbestos and asbestos containing products from approximately 1958 through 1972. As a child and adolescent, Petitioner was exposed to asbestos containing roofing products while working as a helper on various jobs performed by his maternal grandfather's business, Atlas Sheetmetal Works out of Bossier City, Louisiana.  Petitioner was further exposed to asbestos and asbestos containing products while working for Universal Heating and Air out of Shreveport, Louisiana as a roofer and sheetmetal worker. Petitioner performed roofing and sheetmetal work, as well as work on HVAC units and duct systems, throughout the State of Louisiana.  Petitioner recalls working at a variety of industrial and commercial facilities including but not limited to the following sites: Atlas Refinery; Louisiana Tech; Highland Hospital; Libby Glass; multiple South Central Bell remote facilities; Dow Chemical; First National Bank Building (Orleans Parish); American Bank Building (Orleans Parish); Hibernia Bank Building (Orleans Parish); and Mobil (formerly Tenneco) Chalmette.

6.    Before and during Petitioner's exposure period, each of the Defendants mined, designed, tested, contracted, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products for use at the facilities named in Paragraph 5, whereby Petitioner was exposed to asbestos fibers and asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

7.    When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

8.    Each of the Defendants knew or should have known through industry and medical studies, the existence of which were unknown to Petitioner, of the health hazards inherent in the asbestos-containing products they were selling and/or using.  Instead of warning Petitioner and the general public about these dangers, the Defendants ignored or actively concealed such information, or condoned such concealment, in order to sell/use asbestos or asbestos-containing products and to avoid litigation by those who were injured from asbestos inhalation.

9.     As a direct and proximate result of having inhaled, ingested or otherwise been exposed to asbestos as described in Paragraph 5, Petitioner contracted pleural mesothelioma. Because of the latency period between exposure to asbestos and the onset of mesothelioma, and because of the active concealment by some Defendants of the causes and effects of exposure to asbestos, Petitioner has only recently discovered his injuries, and not more than one year preceding the filing of this Petition for Damages.

<u>COUNT ONE</u>
<u>ALLEGATIONS AGAINST MANUFACTURING AND EQUIPMENT DEFENDANTS</u>

10.     Petitioner alleges that he was exposed to asbestos fibers emanating from asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products. Each Defendant corporation or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, sale, and distribution of asbestos or asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products. Petitioner would show that he had been exposed, on numerous occasions, to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products produced and sold by Defendants and, in so doing, had inhaled great quantities of asbestos fibers. Further, Petitioner alleges, as more specifically set out below, that Petitioner has suffered injuries proximately caused by his exposure to asbestos-containing products designed, manufactured, and sold by Defendants. In that each exposure to such products caused or contributed to Petitioner's injuries, Petitioner says that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

11.     Petitioner was exposed to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products that were manufactured, designed and distributed by the Defendants and their predecessors-in-interest for use as construction materials or machinery in commercial and industrial operations. Petitioner would show that the defective design and condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products and machinery were in this defective condition at the time they were designed by or left the hands of Defendants. Petitioner would show that Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products were further defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products.

3

Petitioner would show that this market defect rendered such products and machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Defendants. Petitioner would show that Defendants are liable in product liability including, but not limited to, strict product liability for the above-described defects.

12.     The Defendants are or were engaged in the business of selling, manufacturing, producing, designing, and otherwise putting into the stream of commerce asbestos-containing products and machinery requiring or calling for asbestos or asbestos-containing products, and these asbestos-containing products and machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed and otherwise put into the stream of commerce were a proximate and producing cause of the injuries of Petitioner.

13.     Defendants knew that these asbestos-containing products and machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation or installation of the asbestos-containing products or operation, maintenance and repair of the machinery requiring or calling for the use of asbestos and asbestos-containing products.

14.     Petitioner was unaware of the hazards and defects in the asbestos-containing products of the Defendants, which made them unsafe for purposes of manipulation or installation. Similarly, Petitioner was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and asbestos-containing materials.

15.     During the periods that Petitioner was exposed to the asbestos-containing products and machinery of the Defendants, these asbestos-containing products and machinery were being utilized in a manner, which was intended by Defendants.

16.     The illness and disabilities of Petitioner are a direct and proximate result of the negligence of each Defendant and its predecessor-in-interest in that said entities produced, designed, sold, and otherwise put into the stream of commerce, asbestos, asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Petitioner's health and well-being. Defendants created hazardous and deadly conditions to which Petitioner was exposed and which caused Petitioner to be exposed to a large amount of asbestos fibers. The Defendants were negligent and grossly negligent, in one, some, or all of the

4

following respects, among others, same being the proximate cause of Petitioner's illness and disabilities:

    (a)    in failing to timely and adequately warn Petitioner of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products;

    (b)    in failing to provide Petitioner with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Petitioner from being harmed and disabled by exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products;

    (c)    in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, or machinery requiring or calling for the use of asbestos and asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and machinery;

    (d)    in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and safe method of handling and installing asbestos and asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and asbestos-containing products in a safe manner;

    (e)    in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products, or the machinery requiring or calling for the use of asbestos and asbestos-containing products;

    (f)    in failing to properly design and manufacture asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos and asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

    (g)    in failing to properly test said asbestos-containing products and machinery before they were released for consumer use; and

    (h)    in failing to recall or remove from the stream of commerce said asbestos-containing products and machinery or machinery requiring or calling for the use of asbestos and

asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products and machinery.

COUNT TWO
ALLEGATIONS AGAINST EMPLOYER DEFENDANTS

17.    All of the allegations contained in the previous paragraphs are realleged.

18.    The Employer Defendants were at all times relevant the employers of WILLIAM CLEVE DAVIDSON.

19.    Petitioner would show that the Employer Defendants were negligent, grossly negligent, and intentionally committed certain acts and omissions which created conditions at the workplace which were a proximate cause of his mesothelioma resulting from exposure to asbestos.

20.    In particular, Petitioner would show that the Employer Defendants demonstrated such an entire want of care as to establish that its acts and omissions were the result of actual conscious indifference to his rights, safety and welfare and that such specific acts of negligence, gross negligence and intentional acts or omissions committed by the Employer Defendants that proximately caused lung cancer include:

(a)    failure to provide safe equipment for Petitioner to use;

(b)    failure to provide adequate safety measures and protection against deadly and life threatening asbestos dust, all despite Defendant's knowledge of the extreme risk of harm inherent to asbestos exposure;

(c)    failure to adequately warn Petitioner of the inherent dangers of asbestos contamination;

(d)    failure to provide Petitioner a safe place to work by failing to maintain the ambient and environmental conditions of the plant in proper and safe conditions; and

(e)    failure to follow and adhere to various states and U.S. governmental statutes, regulations, and guidelines pertaining to asbestos and the exposure to asbestos of employees and others.  Such failure constituted negligence *per se* at a minimum. Petitioner is not making claims under federal law.

COUNT THREE
ALTER EGO / SINGLE BUSINESS ENTERPRISE
ALLEGATIONS AGAINST RPM, INC. AND BONDEX INTERNATIONAL, INC.

21.    All of the allegations contained in the previous paragraphs are re-alleged.

22.     Petitioner will show that the corporate fiction between Defendants RPM, Inc. and its alleged subsidiary, Bondex International, Inc., should be disregarded.  Petitioners allege that RPM, Inc. used the corporate form as part of a basically unfair device to achieve an inequitable result with respect to the Petitioner herein.  Petitioner will show that RPM, Inc. used the corporate fiction as a means of evading its legal obligation to Petitioner and that Bondex International, Inc. was in fact the alter ego of RPM, Inc.  Petitioner will further demonstrate that RPM, Inc., as the sole shareholder of Bondex International, Inc. disregarded any purported separation of the corporate enterprise, utilizing Bondex International, Inc. as a mere conduit through which it attempted to circumvent its legal obligation to Petitioner herein.  Defendants continue to use the corporate fiction as a means of perpetuating fraud upon the Petitioner.  In addition, or alternatively, Petitioner would also show that Defendant RPM, Inc. was not operated as a separate entity, but rather integrated its resources with those of Defendant Bondex International, Inc. and the Reardon Company to achieve a common business purpose, and as such, comprised a single business enterprise for which each Defendant is liable for the debts of the other.

## COUNT FOUR
### ALLEGATIONS AGAINST PREMISES DEFENDANTS

23.     While present at premises owned by the Premises Defendants, Petitioner was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by the Premises Defendants, who had the responsibility for such.

24.     Petitioner would further show Petitioner's injuries and diseases were the result of intentional acts and/or omissions and/or negligence and/or gross negligence in the use of asbestos at Premises Defendants. The Premises Defendants failed to properly remove and/or abate said asbestos at these facilities during the time Petitioner was working there.

25.     Petitioner would show that the Premises Defendants were negligent, grossly negligent, and/or committed certain intentional acts, all of which were the proximate cause of the disease and injuries resulting in mesothelioma from exposure to asbestos.

26.     In particular, Petitioner would show that the Premises Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of the Petitioner, and that such intentional acts and omissions proximately caused Petitioner's disease and injuries.

27.    Specific intentional acts and acts constituting negligence and gross negligence committed by the Premises Defendants that proximately caused Petitioner's injuries, and disease include:

    (a)    Failure to provide safe equipment for Petitioner to use;

    (b)    Failure to provide adequate safety measures and protection against deadly and life-threatening asbestos dust, all despite the Premises Defendants knowledge of the extreme risk of harm inherent to asbestos exposure;

    (c)    Failure to adequately warn Petitioner of the inherent dangers of asbestos contamination;

    (d)    Failure to maintain the ambient and environmental conditions of the premises in proper and safe condition;

    (e)    Failure to follow and adhere to various states and U.S. Government statutes, regulations and guidelines pertaining to asbestos and the exposure to asbestos of individuals.  Such failure constituted negligence *per se* at a minimum. Petitioner is not making claims for damages under federal law.

28.    Additionally, specific actions or omissions on the part of the Premises Defendants that proximately caused Petitioner's injuries and illness were:

    (a)    Attempting to remove asbestos dust in the workplace without taking adequate precautions for the protection of workers in the vicinity and/or in the premises generally;

    (b)    Failing to provide proper protective gear for individuals exposed to asbestos;

    (c)    Failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos;

    (d)    Failing to provide a proper and safe method for the use of asbestos and asbestos fibers;

    (e)    Failing to adhere to industry safety standards and other established measures to protect workers from harm;

    (f)    Failing to adequately warn of the extreme risk of danger inherent to asbestos exposure.

29.    The Premises Defendants demonstrated such an entire want of care as to establish that their acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of Petitioner.

### COUNT FIVE
### ALLEGATIONS AGAINST SUPPLIER DEFENDANTS

30.    All of the allegations contained in the previous paragraphs are re-alleged.

31.    The injuries of Petitioner are a direct and proximate result of the negligence of Defendants, Advocate Mines, LTD., CSR, Limited, HSBC Holdings, plc, Hongkong Shanghai Banking Corporation Limited, and Union Carbide Corporation or their predecessors-in-interest in that said entities mined, produced, designed, sold or otherwise put into the stream of commerce, asbestos, asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Petitioner's health and well-being. These Defendants created hazardous and deadly conditions to which Petitioner was exposed and which caused Petitioner to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some or all of the following respects, among others, same being the proximate cause of Petitioner's injuries:

a)    in failing to timely and adequately warn Petitioner, and/or those through whom he was exposed, of the dangerous characteristics and serious health hazards associated with exposure to asbestos or asbestos-containing products;

b)    in failing to provide Petitioner, and/or those through whom he was exposed, with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Petitioner from being harmed and disabled by exposure to asbestos or asbestos-containing products;

c)    in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, to warn of the dangers to health of coming into contact with said asbestos-containing products;

d)    in failing to take reasonable precautions or exercise reasonable care to

9

publish, adopt and enforce a safety plan or safe method of handling and installing asbestos and asbestos-containing products;

e)   in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products;

f)   in failing to properly design and manufacture asbestos, asbestos-containing products for safe use under conditions of use that were reasonably anticipated; and

g)   in failing to properly test said asbestos-containing products before they were released for consumer use; and in failing to recall or remove from the stream of commerce said asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

COUNT SIX
ALLEGATIONS AGAINST CONTRACTOR DEFENDANTS

32.   All of the allegations contained in the previous paragraphs are re-alleged herein.

33.   The injuries of Petitioner is a direct and proximate result of the negligence of each Supplier Defendant or its predecessor-in-interest in that said entities produced, designed, sold, installed or otherwise put into the stream of commerce, asbestos, asbestos-containing products or machinery requiring or calling for the use of asbestos or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Petitioner's health and well-being.  The Contractor Defendants created hazardous and deadly conditions to which Petitioner was exposed and which caused him to be exposed to a large amount of asbestos fibers.  The Contractor Defendants were negligent in one, some or all of the following respects, among others, same being the proximate cause of Petitioner's injuries:

(a)   in failing to timely and adequately warn Petitioner of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products or machinery requiring or calling for the use of asbestos and asbestos-containing products;

(b)   in failing to provide Petitioner with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Petitioner from being harmed and disabled by exposure to asbestos, asbestos-containing products, or machinery requiring or calling

10

for the use of asbestos or asbestos-containing products;

(c)    in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, and machinery requiring or calling for the use of asbestos or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and machinery;

(d)    in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan or safe method of handling and installing asbestos and asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos or asbestos-containing products in a safe manner;

(e)    in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products, and the machinery requiring or calling for the use of asbestos or asbestos-containing products;

(f)    in failing to properly design and manufacture asbestos, asbestos-containing products, and machinery requiring or calling for the use of asbestos or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)    in failing to properly test said asbestos-containing products and machinery before they were released for consumer use; and

(h)    in failing to recall or remove from the stream of commerce said asbestos-containing products or machinery or machinery requiring or calling for the use of asbestos or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

## COUNT SEVEN
## CONSPIRACY ALLEGATIONS AGAINST ALL DEFENDANTS

34.    All of the allegations contained in the previous paragraphs are re-alleged herein.

35.    Petitioner further alleges that Defendants or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities to cause Petitioner's injuries by exposing him to harmful and dangerous asbestos-containing products and machinery requiring or calling for asbestos-containing products. Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Petitioner of the opportunity of informed free choice as to whether to use said asbestos-containing products and

machinery or to expose himself to said dangers. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products.

In furtherance of said conspiracies, Defendants performed the following overt acts:

a)    for many decades, Defendants, individually, jointly, and in conspiracy with each other and other entities, have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and machinery calling for the use of asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b)    despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other and other entities, fraudulently, willfully, and maliciously:

    I.    withheld, concealed, and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Petitioner who was using and being exposed to Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products;

    II.    caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading; and

    III.    distorted the results of medical examinations conducted upon Petitioner and workers such as Petitioner who were using asbestos-containing products and machinery requiring or calling for the use of

asbestos and being exposed to the inhalation of asbestos dust and fibers by falsely stating or concealing the nature and extent of the harm to which Petitioner and workers such as Petitioner have suffered.

c) Other conspirators participating in the conspiracy, or in ongoing or subsequent conspiracies were (hereinafter called the "conspirators") member companies in the Quebec Asbestos Mining Association, the Asbestos Textile Institute, or the Industrial Hygiene Foundation. Acting in concert, the conspirators fraudulently misrepresented to the public and public officials, *inter alia*, that asbestos did not cause cancer and that the disease asbestosis had no association with pleural and pulmonary cancer and affirmatively suppressed information concerning the carcinogenic and other adverse effects of asbestos exposure on the human respiratory and digestive systems.

d) In addition, Defendants contrived, combined, confederated and conspired through a series of industry trade meetings and the creation of organizations such as the Air Hygiene Foundation (later the Industrial Hygiene Foundation) to establish authoritative standards for the control of industrial dusts which would act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect workers such as Petitioner from contracting asbestos disease or cancer.

e) In furtherance of said conspiracies, Defendants and their co-conspirators contributed to cause the establishment of a Threshold Limit Value for asbestos exposure, and contributed to the maintenance of such Threshold Limit Value despite evidence that this supposed "safe" level of exposure to asbestos would not protect the health of workers such as Petitioner even if complied with.

f) As the direct and proximate result of the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce the Petitioner to rely upon said false and fraudulent representations, omissions, and concealments, to continue to expose himself to the dangers inherent in the use

13

of and exposure to Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos or and products which caused the release of respirable asbestos fibers.

36.     Petitioner reasonably and in good faith relied upon the false and fraudulent representations, omissions, and concealments made by the Defendants regarding the nature of their asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products.

37.     As a direct and proximate result of Petitioner's reliance on Defendants' false and fraudulent representations, omissions, and concealments, Petitioner sustained damages including injuries, illnesses, and disabilities and has been deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products.

## COUNT EIGHT
### AIDING AND ABETTING ALLEGATIONS AGAINST ALL DEFENDANTS

38.     All of the allegations contained in the previous paragraphs are realleged herein.

39.     The actions of all Defendants aided, abetted, encouraged, induced or directed the negligent or intentional acts of each and every other Defendant.

40.     Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Petitioner.

41.     The actions of each of the Defendants are a proximate cause of Petitioner's injuries.

## COUNT NINE
### ALLEGATIONS AGAINST ASBESTOS FIBER SUPPLIERS

42.     All of the allegations contained in the previous paragraphs are re-alleged.

43.     THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED and HSBC HOLDINGS PLC are being sued in their capacity as the acquirers of, or otherwise the successors in interest to, the liabilities of Antony Gibbs & Co.

44.     AMALGAMATED METAL CORPORATION PLC is being sued as a defendant in its capacity as the acquirer of, the product of a merger including, or otherwise the successors in interest to, the liabilities of THE BRITISH METAL CORPORATION LIMITED.

45.     THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, a foreign bank or corporation based in, and/or organized under the laws of, Hong Kong, is a wholly owned subsidiary and the founding member of HSBC Holdings plc. It is the largest bank in Hong

Kong. As the acquirer of, or successor in interest to, Antony Gibbs & Co. it did business in the Parish of Orleans, State of Louisiana and is subject to the jurisdiction of this Honorable Court. On information and belief, at all times pertinent herein the bank is the acquirer of, or the successor in interest to, or otherwise responsible for the liabilities of Antony Gibbs & Co., which supplied and/or shipped raw asbestos fiber to Johns-Manville.

46.    HSBC HOLDINGS PLC, is a foreign corporation/business entity organized as a public limited company incorporated in England, headquartered in London, and is the world's 6th largest company (according to *Forbes* magazine). HSBC is the parent company of and/or alter ego of THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, conducts or otherwise holds itself out as doing business in the Parish of Orleans, State of Louisiana and is subject to the jurisdiction of this Honorable Court. On information and belief, at all times pertinent herein, HSBC HOLDINGS PLC is the alter ego of and/or a single business enterprise with THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED and/or is the successor in interest or otherwise responsible for the liabilities of Antony Gibbs & Co.

47.    AMALGAMATED METAL CORPORATION LIMITED, is a foreign corporation/business entity organized as a public limited company incorporated in England, headquartered in London, and is the acquirer of, or successor in interest to, The British Metal Corporation Limited, which did business in the Parish of Orleans, State of Louisiana and is subject to the jurisdiction of this Honorable Court. On information and belief, at all times pertinent herein Amalgamated Metal Corporation Limited is the acquirer of, or the successor in interest to, or otherwise responsible for the liabilities of The British Metal Corporation Limited, which supplied and/or shipped raw asbestos fiber to Johns-Manville.

48.    During the course of the Plaintiff's life he was exposed to asbestos or asbestos containing products as a result of negligence and/or strict liability of defendants or caused by the defective design, manufacture, distribution, marketing, sale, or supply of asbestos by the Defendants, including but not limited to the following: Antony Gibbs & Co., which was an international banking, trading firm of long standing, selling asbestos to JM on its own account as its product for use in the JM Marrero Asbestos Cement Pipe and Roofing Shingle operations. It would purchase asbestos from South Africa, and other places, from various mining operations and ship it to the Port of New Orleans to be used at the Marrero Plant. Antony Gibbs arranged to sell and ship the fiber as its product, which was submitted to Johns-Manville as an Antony Gibbs product to meet the Johns-

Manville asbestos-containing pipe spec(s) and was approved as such. Antony Gibbs & Co. is now known as, or otherwise acquired by, THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED based on evidence of a series of acquisitions in 1973, 1974 and 1980, which resulted in THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED acquiring full control of Antony Gibbs. THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED acquired Antony Gibbs Holdings Limited, including Antony Gibbs & Co., which sold, supplied, shipped and delivered raw asbestos fiber to Johns-Manville.

49.     On information and belief, HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited constitute(-ed) a "single business enterprise," as defined by Louisiana law and expressed in *Green v. Champion Ins. Co.*, 577 So. 2d 249 (La. App. 1st Cir., 1991). The Hongkong Shanghai Banking Corporation Ltd., is the Charter Member of HSBC Holdings, which was a step that The Hongkong Shanghai Banking Corporation Limited undertook when it restructured under a new name "HSBC." The new entity, HSBC Holdings, then moved to consolidate parts of other banks acquired in China into a new subsidiary called HSBC Asia, which appears to be composed of old parts of Hongkong Shanghai Banking Operations with three other Chinese Banks acquired.

50.     Despite the internal compartmentalization of ownership and operation by means of separate incorporation, HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited are a single business enterprise. The legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation. In this regard, on information and belief, Plaintiff respectfully alleges the following:

A.     HSBC Holdings plc has total control over The Hongkong and Shanghai Banking Corporation Limited and The Hongkong and Shanghai Banking Corporation Limited is wholly under the control of HSBC Holdings plc, such that HSBC Holdings, plc is not relieved from liability of The Hongkong and Shanghai Banking Corporation Limited, which is the acquirer of, or otherwise the successor in interest to, Antony Gibbs & Co.

B.     HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited are a single business enterprise that has been fragmented into branches that are separately incorporated, but are managed by a dominant or parent entity, and/or have interlocking directorates, such that, pursuant to Louisiana law, HSBC Holdings as the dominant or parent corporation is liable

for the obligations of its branches including but not limited to The Hongkong and Shanghai Banking Corporation Limited as the acquirer of Antony Gibbs & Co.

C.    HSBC Holdings plc is an entity with identity or substantial identity of ownership, that is, ownership of sufficient stock to give it actual working control of The Hongkong and Shanghai Banking Corporation Limited.

D.    HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited have common directors or officers.

E.    HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited share some unified administrative control, whose business functions are similar or supplementary.

F.    The directors and officers of HSBC Holdings plc act independently in the interest of that corporation;  The directors and officers of The Hongkong and Shanghai Banking Corporation Limited act independently in the interest of that corporation.

G.    The relationship between HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited is such that one corporation may contribute finances the other corporation.

H.    HSBC Holdings plc causes the incorporation of other affiliated corporation(s).

I.    HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited have common employees or services, which are rendered by the employees of one corporation and/or are performed on behalf of another corporation.

J.    HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited share common offices, accounting, advertising and websites.

K.    There is unclear allocation of profits and losses between HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited.

L.    HSBC Holdings plc is an umbrella-type corporation containing excessive fragmentation of a single enterprise into separate corporations.

To the extent necessary, Plaintiffs plead that HSBC Holdings plc is a parent corporation and is liable *in solido* for the debts of its wholly owned subsidiary, The Hongkong and Shanghai Banking Corporation Limited, which acquired the liabilities of Antony Gibbs & Co.

57.    In addition, or in the alternative, HSBC Holdings PLC, is a foreign corporation/business entity organized as a public limited company incorporated in England, headquartered in London and through a series of re-namings, amendments, mergers, dissolutions

and/or acquisitions is the successor-in-interest of, or the acquirer of, Antony Gibbs & Co., which did business in the Parish of Orleans, State of Louisiana and is subject to the jurisdiction of this Honorable Court. On information and belief, at all times pertinent herein HSBC Holdings PLC is the acquirer of, or the successor in interest to, or otherwise responsible for the liabilities of Antony Gibbs & Co., which supplied and/or shipped raw asbestos fiber through the Port of New Orleans and used at the Johns-Manville Marrero facililty.

58.    AMALGAMATED METAL CORPORATION PLC is being sued as a defendant in its capacity as the acquirer of, the product of a merger including, or otherwise the successors in interest to, the liabilities of THE BRITISH METAL CORPORATION LIMITED and to add claims against said defendant in said capacity as follows.

59.    The British Metal Corporation Limited was a private limited company incorporated in the United Kingdom in 1918. In 1929, Defendant Amalgamated Metal Corporation plc was created as a result of a merger between The British Metal Corporation Limited and Henry Gardner & Co. Ltd. Defendant Amalgamated Metal Corporation plc is the successor in interest of The British Metal Corporation Limited.

60.    During the course of the Plaintiff life he was exposed to asbestos or asbestos containing products as a result of negligence and/or strict liability of defendants, including Defendant Amalgamated Metal Corporation plc as the successor in interest to The British Metal Corporation Limited, or caused by the defective design, manufacture, distribution, marketing, sale, or supply of asbestos by the Defendants, including but not limited to the following: The British Metal Corporation Limited, which was a firm created in 1918, which sold, shipped or supplied asbestos to Johns-Manville on its own account as its product for use in the JM Marrero Asbestos Cement Pipe and Roofing Shingle operations. The British Metal Corporation shipped asbestos to the Port of New Orleans to be used at the Marrero Plant. The British Metal Corporation Limited arranged to sell and ship the fiber as its product, which was submitted to Johns-Manville as a British Metal product to meet the Johns-Manville asbestos-containing pipe spec(s) and was approved as such. In 1929, The British Metal Corporation merged with another firm to create Defendant Amalgamated Metal Corporation plc.

<u>COUNT TEN</u>
<u>DAMAGES</u>

61.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related lung disease of Petitioner, and of the following general and special damages including:

(a)     The conscious physical pain and suffering and mental anguish sustained by Petitioner;

(b)     The physical impairment suffered by Petitioner;

(c)     The disfigurement suffered by Petitioner;

(d)     Reasonable and necessary medical expenses incurred by Petitioner;

(e)     Future medical expenses incurred by Petitioner;

(f)     Petitioner's mental anguish caused by the extraordinarily increased likelihood of developing (or the progression and recurrence of) asbestos-related cancer of the lungs, mesothelioma, and other cancers due to said exposure to products manufactured, sold, and distributed by the named Defendants; and

(g)     Present and future lost wages and loss of earning capacity;

62.     By their acts and omissions described herein, Defendants intentionally, knowingly, and recklessly caused serious bodily injury to Petitioner.

63.     Plaintiff filed suit within one (1) year of the date of discovering Petitioner's asbestos-related conditions or the existence of any asbestos-related causes of action.

64.     Petitioner discovered his injury and its cause less then one years prior to the filing of this petition.

WHEREFORE, Petitioner demands judgment against the Defendants, and each of them, jointly and severally, for general damages, for their costs expended herein, for interest on said judgment from the date this action accrued until paid, at the legal rate, and for such other and further relief, both at law and in equity, to which Petitioner may show himself justly entitled.

Respectfully submitted,

LANDRY & SWARR, LLC

MICKEY P. LANDRY, Bar No. 22817
FRANK J. SWARR, Bar No. 23322
DAVID R. CANNELLA, Bar No. 26231
PHILIP C. HOFFMAN, Bar No. 32277

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

19

1010 Common Street, Suite 2050
New Orleans, Louisiana 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215
AND
WATERS & KRAUS, LLP
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214.357.6244
Facsimile: 214.357.7252

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH PETITIONER'S ORIGINAL PETITION FOR DAMAGES:**

1.   ADVOCATE MINES, LTD.
May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** Winn A. Oughtred, Borden Ladner & Gervais, LLP, 40 King Street West, Suite 1400, Toronto, Canada MSG 3E9. This defendant has been sued as a Supplier Defendant.

2.   ALCOA, INC. (sued individually and as successor-in-interest to REYNOLDS METAL COMPANY)
May be served through its registered agent for service of process: CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA, 70808. This defendant has been sued as a Manufacturer Defendant.

3.   AMALGAMATED METAL CORPORATION LIMITED
Through the Louisiana Long Arm Statute via certified and registered mail to
H. Stodieck, Chairman
55 Bishopsgate
London EC2N 3AH
[In addition, Plaintiffs shall request service pursuant to the Hague Convention]
This Defendant is being sued as a Supplier Defendant.

4.   BEAZER EAST, INC. f/k/a KOPPERS COMPANY, INC.
A Delaware corporation with its principal place of business in the state of New Jersey, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 1333 Campus Parkway, Neptune, New Jersey 07753. This Defendant is being sued as a Manufacturer Defendant.

5.   BIRD INCORPORATED f/k/a BIRD & SON, INC.
A Massachusetts corporation with its principal place of business in the state of Pennsylvania, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 750 E Swedesford Road, Valley Forge, Pennsylvania 19482. This Defendant is being sued as a Manufacturer Defendant.

6.   BONDEX INTERNATIONAL, INC.
An Ohio corporation with its principal place of business in the state of Missouri, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 100 Chesterfield Business Parkway, Suite 200, Chesterfield, Missouri 63005. This Defendant is being sued as a Manufacturer Defendant.

7.   CARRIER CORPORATION
May be served through its registered agent for service of process: CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA, 70808. This Defendant is being sued as a Equipment Defendant.

8.   CERTAINTEED CORPORATION
May be served through its registered agent for service of process: CT Corporation System,

5615 Corporate Blvd., Suite 400B, Baton Rouge, LA, 70808. This defendant has been sued as a Manufacturer Defendant.

9.    CSR, LIMITED (sued individually and as successor-in-interest and as alter ego to AUSTRALIAN BLUE ASBESTOS PROPRIETARY, LIMITED)
      May be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** Trinity 3, 39 Delhi Road, North Ryde NSW 2113 Australia. This defendant has been sued as a Supplier Defendant.

10.   EAGLE, INC. f/k/a EAGLE ASBESTOS AND PACKING
      May be served through its registered agent for service of process: Susan B. Kohn, 1100 Poydras Street, 30th Floor, New Orleans, Louisiana 70163. This defendant has been sued as a Contractor Defendant.

11.   GEORGIA-PACIFIC LLC (sued individually and as successor-in-interest to BESTWALL GYPSUM COMPANY)
      May be served through its registered agent for service of process: CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA, 70808. This defendant has been sued as a Manufacturer Defendant.

12.   HSBC HOLDINGS, PLC (sued individually and as successor-in-interest to ANTONY GIBBS AND CO.)
      Through the Louisiana Long Arm Statute via certified and registered mail to
      Stephen K. Green, Executive Director
      HSBC Holdings plc
      8 Canada Square
      London E14 5HQ
      [In addition, Plaintiffs shall request service pursuant to the Hague Convention]
      This Defendant is being sued as a Supplier Defendant.

13.   HONGKONG SHANGHAI BANKING CORPORATION LIMITED (individually and as successor-in-interest to ANTONY GIBBS AND CO.)
      Through the Louisiana Long Arm Statute and La. Rev. Stat. 6:285 via certified and registered mail to
      V.H.C. Cheng
      Chairman of The Hongkong and Shanghai Banking Corporation Limited
      GPO Box 64,
      Hong Kong,
      1 Queen's Road Central,
      Hong Kong SAR, China
      Telex:73201 HKBG HX
      Website: www.hsbc.com.hk
      [In addition, Plaintiffs shall request service pursuant to the Hague Convention]
      This Defendant is being sued as a Supplier Defendant.

14.   LENNOX INDUSTRIES, INC.
      May be served through its registered agent for service of process: Corporation Services Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129. This Defendant is being sued as a Premises Defendant.

15.   RHEEM MANUFACTURING COMPANY
      A Delaware corporation with its principal place of business in the state of Georgia, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 1100 Abernathy Road, Suite 1400, Atlanta, Georgia 30328. This Defendant is being sued as an Equipment Defendant.

16.   RPM, INC. (sued individually and as successor-in-interest to BONDEX INTERNATIONAL, INC.)
      May be served through its registered agent for service of process: CSC-Lawyers Incorporating Service (Corporation Service Company), 50 West Broad Street, Suite 1800,

Columbus, Ohio 43215. This Defendant is being sued as a Manufacturer Defendant.

17. RPM INTERNATIONAL INC. (sued individually and as successor-in-interest to RPM, INC.)
May be served through its registered agent for service of process: CSC-Lawyers Incorporating Service (Corporation Service Company), 50 West Broad Street, Suite 1800, Columbus, Ohio 43215. This Defendant is being sued as a Manufacturer Defendant.

18. TRANE US, INC. (sued individually and as successor-in-interest to THE TRANE COMPANY)
May be served through its registered agent for service of process: CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA, 70808. This Defendant is being sued as an Equipment Defendant.

19. UNION CARBIDE CORPORATION
May be served through its registered agent for service of process: CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA, 70808. This Defendant is being sued as a Supplier Defendant.

20. WELCO MANUFACTURING COMPANY
A Missouri corporation with its principal place of business in the state of Missouri, and may be served **through the Louisiana Long Arm Statute pursuant Article 1261(3) to-wit:** 1225 Ozark Street, North Kansas City, Missouri 64116. This Defendant is being sued as an Equipment Defendant.

21. YORK INTERNATIONAL CORPORATION.
May be served through its registered agent for service of process: CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA, 70808. This Defendant is being sued as an Equipment Defendant.

WILLIAM CLEVE DAVIDSON

VS.

ADVOCATE MINES, LTD. ET AL

AFFIDAVIT OF CONSENT TO REMOVAL
BY BEAZER EAST, INC.

STATE OF LOUISIANA

PARISH OF ORLEANS

AFFIDAVIT OF DOUGLAS R. ELLIOTT

DOUGLAS R. ELLIOTT, being duly sworn, states and affirms as follows:

1. I am a United States citizen over the age of eighteen (18) years, and I am competent and authorized to give this Affidavit on behalf of Beazer East, Inc.

2. I am a member of the law firm of Deutsch, Kerrigan & Stiles, LLP and am counsel for Beazer East, Inc.

3. I have been authorized by Beazer East, Inc. to provide this Consent to Removal.

4. Defendant, Beazer East, Inc. is a Delaware Corporation with its principal place of business in Pennsylvania. Beazer East, Inc. was served with this matter on June 14, 2010.

5. Beazer East, Inc. hereby consents to the removal of the above-captioned action by defendant, HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited, from the Civil District Court for the Parish of Orleans, State of Louisiana, Civil Action Number 10-5127, Division "B," to the United States District Court for the Eastern District of Louisiana.

_____
DOUGLAS R. ELLIOTT

Subscribed and sworn to before me
This 26th day of April, 2011.

_____
NOTARY PUBLIC

My commission expires _Death_

JOHN B. ESNARD III
Notary Public
Louisiana Bar No. 25664
State of Louisiana
My Commission is for Life.

EXHIBIT
B

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

**AFFIDAVIT OF CONSENT TO REMOVAL BY CERTAINTEED
CORPORATION**

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

**AFFIDAVIT OF JENNIFER E. ADAMS**

JENNIFER E. ADAMS, being duly sworn, states and affirms as follows:

1.  I am a United States citizen over the age of eighteen (18) years, and I
    am competent and authorized to give this Affidavit on behalf of
    CertainTeed Corporation ("CertainTeed").

2.  I am a member of the law firm of Deutsch, Kerrigan & Stiles, LLP
    and am counsel for CertainTeed, a defendant in the above captioned
    lawsuit.

3.  I have been authorized by CertainTeed to provide this Consent to
    Removal.

4.  Defendant CertainTeed, a foreign corporation with its principal place
    of business in Pennsylvania.  CertainTeed was served with this matter
    on May 27, 2010.

5.      CertainTeed  hereby consents to the removal of the above-captioned
        action by defendant,  HSBC Holdings plc and The Hongkong and
        Shanghai Banking Corporation Limited, HSBC,  from the Civil
        District Court for the Parish of Orleans, State of Louisiana, Civil
        Action Number No. 10-5127, Division "B," to the United States
        District Court for the Eastern District of Louisiana.

_____
JENNIFER E. ADAMS

Subscribed and sworn to before me
this  26  day of April , 2011.

_____  WC HARRISON
          Notary Public
My commission expires life
          LSBA # 6616

2002963

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL

### AFFIDAVIT OF CONSENT TO REMOVAL
### AND JOINDER IN REMOVAL BY
### UNION CARBIDE CORPORATION

STATE OF LOUISIANA

PARISH OF ORLEANS

### AFFIDAVIT OF MICHAEL H. ABRAHAM

**MICHAEL H. ABRAHAM**, being duly sworn, states and affirms as follows:

1.  I am a United States citizen over the age of eighteen (18) years, and I am competent and authorized to give this Affidavit on behalf of Union Carbide Corporation.

2.  I am a member of the law firm of Kuchler Polk Schell Weiner and Richeson, LLC and am counsel for Union Carbide Corporation, a defendant in the above captioned lawsuit.

3.  I have been authorized by Union Carbide Corporation to provide this Consent to Removal and Joinder in Removal.

4.  Defendant Union Carbide Corporation is a New York company with its principal place of business in Texas. Union Carbide Corporation was served with this matter on May 27, 2010.

5.  Union Carbide Corporation hereby consents to and joins in the removal of the above-captioned action by defendant, HSBC Holdings PLC and The Hongkong and Shanghai Banking Corporation Limited, from the Civil District Court for the Parish of Orleans, State of Louisiana, Civil Action Number No. 10-5127, Division "B," to the United States District Court for the Eastern District of Louisiana.

_____
MICHAEL H. ABRAHAM

Subscribed and sworn to before me
this 27th day of April , 2011.

_____
Notary Public
MICHELE DESHAZO

My commission expires at death



WILLIAM CLEVE DAVIDSON

VS.

ADVOCATE MINES, LTD. ET AL.

**AFFIDAVIT OF CONSENT TO REMOVAL BY BIRD INCORPORATED, F/K/A BIRD & SON, INC.**

STATE OF <u>LOUISIANA</u>

PARISH OF <u>ORLEANS</u>

<u>**AFFIDAVIT OF KAY BARNES BAXTER**</u>

**KAY BARNES BAXTER,** being duly sworn, states and affirms as follows:

1.  I am a United States citizen over the age of eighteen (18) years, and I am competent and authorized to give this Affidavit on behalf of Bird Incorporated, f/k/a Bird & Son, Inc. ("Bird").

2.  I am a member of the law firm of Swetman Baxter Massenburg, LLC and am counsel for Bird, a defendant in the above captioned lawsuit.

3.  I have been authorized by Bird to provide this Consent to Removal.

4.  Defendant, Bird, a foreign corporation, is a Massachusetts business corporation with its principal place of business in Pennsylvania.  Bird was served with this matter on June 1, 2010.

5.  Bird hereby consents to the removal of the above captioned action by defendants, HSBC Holdings PLC and The Hongkong and Shanghai Banking Corporation Limited, HSBC, from the Civil District Court for the Parish of Orleans, State of Louisiana, Civil Action Number 2010-5127, Division "B", Section 15, to the United States District Court for the Eastern District of Louisiana.

*Kay Barnes Baxter*
KAY BARNES BAXTER

Subscribed and sworn to before me

This 27th day of April , 2011.

Brandie Mendoza (Notary Public)

My commission expires *upon death*

Brandie L. Mendoza
Bar #29344

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

### AFFIDAVIT OF CONSENT TO REMOVAL
### AND JOINDER IN REMOVAL
### BY GEORGIA-PACIFIC LLC

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

### AFFIDAVIT OF GAYLA M. MONCLA

**GAYLA M. MONCLA**, being duly sworn, states and affirms as follows:

1. I am a United States citizen over the age of eighteen (18) years, and I am competent and authorized to give this Affidavit on behalf of Georgia-Pacific LLC.

2. I am a member of the law firm of Kean Miller LLP and am counsel for Georgia-Pacific LLC, a defendant in the above captioned lawsuit.

3. I have been authorized by Georgia-Pacific LLC to provide this Consent to Removal and Joinder in Removal.

4. Defendant Georgia-Pacific LLC is a Delaware limited liability company with its principal place of business in Georgia. Georgia-Pacific LLC, a Delaware LLC, is wholly owned by Georgia-Pacific Holdings, LLC, a Delaware LLC. Georgia-Pacific Holdings, LLC is wholly owned by Georgia-Pacific Equity Holdings, LLC, a Delaware LLC. Georgia-Pacific Equity Holdings, LLC is wholly owned by Koch Renewable Resources, Inc., a Delaware corporation with its principal place of business in Kansas. Georgia-Pacific LLC was served with this matter on May 27, 2010.

5. Georgia-Pacific LLC hereby consents to and joins in the removal of the above-captioned action by defendant, HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited, from the Civil District Court for the Parish of Orleans, State of Louisiana, Civil Action Number No. 10-5127, Division "B," to the United States District Court for the Eastern District of Louisiana.

_____
GAYLA M. MONCLA

Subscribed and sworn to before me
this 26th day of April , 2011.

_____
Notary Public
My commission expires at Death

Melanie M. Hartmann
Notary Public
State of Louisiana
La. Bar Roll No. 14358
My Commission is for Life

2340345_1.DOC

**waterskraus**

| | |
|---|---|
| DATE: | April 18, 2011 |
| TO: | Hon. Rosemary Ledet & Adrienne Yates – 504-522-3522<br>All Counsel of Record – Attached |
| FAX NUMBER: | |
| FROM: | Susannah B. Chester |
| NUMBER OF PAGES: | 4 |
| RE: | William Davidson case |

PLEASE RESPOND TO THE DALLAS OFFICE

This message is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. IF ANY PART OF THIS TRANSMISSION WAS INCOMPLETE OR IF YOU HAVE ANY QUESTIONS, PLEASE CALL 214-357-6244. THANK YOU.

WATERS & KRAUS, LLP ATTORNEYS AND COUNSELORS

DALLAS: 3219 McKinney Avenue  Dallas, Texas 75204  TEL 214 357 6244  FAX 214 357 7252
LOS ANGELES: 222 North Sepulveda Boulevard  Suite 1900  El Segundo, California 90245  TEL 310 414 8146  FAX 310 414 8156
SAN FRANCISCO 711 Van Ness Avenue Suite 220  San Francisco, California 94102  TEL 800 226 9880  FAX 214 777 9470
BALTIMORE: 315 North Charles Street  Baltimore, Maryland 21201  TEL 410 528 1153  FAX 410 528 1006



EXHIBIT
C



PARTNERS

C. Andrew Waters (CA, MD, MS, TX)
Peter A. Kraus (CA, TX)
Charles S. Siegel (TX)
Troyce G. Wolf (PA, TX)
Michael L. Armitage (CA, LA)
G. Scott Keuns (CA)
Leslie C. MacLean (PA)
Charles E. Valles (FL, LA)
Paul C. Cook (CA)
Gary M. Paul (CA)
Michelle Whitman (CA)
Kyla Gail Cole (CA)
John S. Janofsky (CA, MD)
Michael B. Gurien (CA)
Scott L. Frost (CA, GA, AK, NY, TX)
Greg W. Liberatly (CA)
Loren Jacobson (MT, TX)

ASSOCIATES

Joy Sponsky (CA)
Kevin M. Loew (CA)
Julie L. Cohen (CA)
Dimitri N. Nichols (CA)
Mark Bratt (CA)
Demetrios T. Zacharopoulos (MD)
Susannah B. Chester (TX)
Jillian Nise-Loew (CA)
Cindy Young (CA)
Melanie J. Garner (CA, MD, MS, MT)
Gibbs C. Henderson (TX)
Teo Kim (CA)
Casie B. Waters (TX)
Laurel Halbany (CA)
Katharine N. Williams (PA, TX)
Joanna A. Hojdus (PA, LA)
Mark Linder (CA, TX)
Renafsheh Saifollahi (MD)
Jennifer I. McIntosh (CA)
Andrew Seitz (CA)
Elizabeth A. Davis (CA)
Peter Klausner (CA)

OF COUNSEL

Kevin E. Oliver (TX)
William Gelaston (IL, IN)
Randall L. Iola (IL, CA, LA)
George D. Tankard III (DC, MA, MD, TX, VA)
Jonathan A. George (CA, TX, VA)
Wm. Paul Lawrence II (CA, TX, WV)
David Brickel (CA)

PLEASE RESPOND TO THE DALLAS OFFICE

April 18, 2011

**VIA FACSIMILE #504-522-3522**
Hon. Rosemary Ledet
Adrienne M. Yates
Civil District Court
421 Loyola Avenue, Room 308
New Orleans, LA 70112

Re:     William Cleve Davidson vs. Advocate Mines, Ltd., et al; Cause No.
        10-5127; Civil District Court for the Parish of Orleans; **Trial date:**
        **May 3, 2011**
        **Client Matter #10-0341**

Dear Judge Ledet & Ms. Yates:

        Please be advised that Plaintiff in the aforementioned matter has no
opposition to the motions for summary judgment filed by the following Defendants:

Rheem Manufacturing Company
Trane U.S., Inc.
Carrier Corporation
Lennox Industries, Inc.
York International Corporation
Eagle, Inc.

Should you have any questions, please do not hesitate to call.

                                    Sincerely,

                                    Susannah B. Chester

SBC/kd

cc:     All Counsel of Record - attached

WATERS & KRAUS, LLP ATTORNEYS AND COUNSELORS

DALLAS:  3219 McKINNEY AVENUE  DALLAS, TEXAS 75204  TEL 214 357 6244  FAX 214 357 7252

BALTIMORE:  315 NORTH CHARLES STREET  BALTIMORE, MARYLAND 21201  TEL 410 528 1153  FAX 410 528 1006

SAN FRANCISCO:  711 VAN NESS AVENUE  SUITE 220  SAN FRANCISCO, CALIFORNIA 94102  TEL 800 226 9880  FAX 214 777 0470

LOS ANGELES:  222 NORTH SEPULVEDA BOULEVARD  SUITE 1900  EL SEGUNDO, CALIFORNIA 90245  TEL 310 414 8146  FAX 310 414 8156

| ALL ANTICIPATED COUNSEL OF RECORD | | FAX | PHONE |
|---|---|---|---|
| CSR, Limited (individ & sli to & alter ego to Australian Blue Asbestos Proprietary, Limited) | Accardo, Frank | 504-799-4520 | 504-799-4500 |

| ALL KNOWN COUNSEL OF RECORD | | FAX | PHONE |
|---|---|---|---|
| Amalgamated Metal Corporation Limited | Bezet, Gary A. | 225-388-9133 | 225-387-0999 |
| Amalgamated Metal Corporation Limited | Moncla, Gayla M. | 225-388-9133 | 225-387-0999 |
| Beazer East, Inc. fka Koppers Company, Inc. | Elliott, Douglas | 504-566-1201 | 504-581-5141 |
| Bird Incorporated f/k/a Bird & Son, Inc. | Baxter, Kay Barnes | 504-799-0501 | 504-799-0500 |
| Bird Incorporated f/k/a Bird & Son, Inc. | Casey, Margaret Adams | 504-799-0501 | 504-799-0500 |
| Bird Incorporated f/k/a Bird & Son, Inc. | Hays, B. Adam | 504-799-0501 | 504-799-0500 |
| Bird Incorporated f/k/a Bird & Son, Inc. | Massenburg, Christopher O. | 504-799-0501 | 504-799-0500 |
| Bird Incorporated f/k/a Bird & Son, Inc. | Swetman, Glenn L.M. | 504-799-0501 | 504-799-0500 |
| Bird Incorporated f/k/a Bird & Son, Inc. | Thibodeaux, Brandie Mendoza | 504-799-0501 | 504-799-0500 |
| Carrier Corporation | Guillot, Joseph M. | 504-561-5743 | 504-561-5700 |
| CertainTeed Corporation | Adams, Jennifer E. | 504-566-1201 | 504-581-5141 |
| CertainTeed Corporation | Stout, III, A. Wendel | 504-566-1201 | 504-581-5141 |
| Eagle, Inc. f/k/a Eagle Asbestos and Packing | Harold, Michael | 504-569-2999 | 504-569-2030 |
| Eagle, Inc. f/k/a Eagle Asbestos and Packing | Kohn, Susan B. | 504-569-2999 | 504-569-2030 |
| Georgia-Pacific, LLC (sii to Bestwall Gypsum Company) | Bezet, Gary A. | 225-388-9133 | 225-387-0999 |
| Georgia-Pacific, LLC (sii to Bestwall Gypsum Company) | Moncla, Gayla M. | 225-388-9133 | 225-387-0999 |
| Hongkong Shanghai Banking Corporation Limited (ind & sii Antony Gibbs and Co.) | Lafontaine, Monique M. | 504-558-5200 | 504-558-5100 |
| HSBC Holdings, PLC (ind & sii Anthony Gibbs and Co.) | Lafontaine, Monique M. | 504-681-5223 | 504-558-5100 |
| Lennox Industries, Inc. | Courington, Kaye N. | 504-524-7887 | 504-524-5566 |
| Lennox Industries, Inc. | Gehman, Ney | 504-524-7887 | 504-524-5566 |
| Rheem Manufacturing Company | Falco, Christina L. | 985-898-0871 | 985-898-0608 |
| Rheem Manufacturing Company | Williams, IV, Robert E. | 985-898-0871 | 985-898-0608 |
| Trane US, Inc. (ind & sii to The Trane Company) | Morton, III, Joseph B. | 504-799-4384 | 504-799-4383 |
| Union Carbide Corporation | Abraham, Michael H. | 504-592-0697 | 504-592-0691 |
| Union Carbide Corporation | Guidry, Robert E. | 504-592-0697 | 504-592-0691 |
| York International Corporation | Angulo, Sarika | 504-528-9640 | 504-528-9616 |
| York International Corporation | Eaton, Rocky W. | 601-583-2677 | 601-583-2671 |

| York International Corporation | Lancaster, Daphne | 601-583-2677 | 601-583-2671 |
| York International Corporation | Tyner, Thomas | 504-528-9640 | 504-528-9616 |

| **ALL REGISTERED AGENTS OF RECORD** | | **FAX** | **PHONE** |
| --- | --- | --- | --- |
| Advocate Mines Ltd. | Oughtred, Winn A. | 416-367-6749 | 416-367-6000 |

| **CC:** | | **FAX** | **PHONE** |
| --- | --- | --- | --- |
| Landry & Swarr, LLC | | 504-299-1215 | 504-299-1214 |

# QUANTUM STUDY

## MESOTHELIOMA CASES

**1.**  *Gauthe v. Asbestos Corp., Ltd.,* **791 So.2d 126 (La. App. 5 Cir. 5/8/01)**

In 2001, the Fifth Circuit Court of Appeal upheld a verdict of $2,355,000 in a mesothelioma case. In *Gauthe v. Asbestos Corp., Ltd.,* 791 So.2d 126 (La. App. 5 Cir. 5/8/01), Earlven Gauthe sued Avondale, his former employer, for exposure to asbestos, which resulted in his contraction of mesothelioma. In 1996, A Jefferson Parish jury awarded $2,355,000 to Mr. Gauthe, despite the fact that he was seventy-four years old at the time of trial and had mesothelioma for ten months.

| | |
|---|---|
| **Survival Action Award:** | **$2,355,000.00** |
| **w/ Inflation:** | **$3,284,316.92** |

**2.**  *Clark v. McCarty,* **804 So.2d 11 (La. App. 5 Cir. 4/11/01)**

At the same time as *Gauthe,* the Fifth Circuit Court of Appeal upheld another multi-million dollar verdict in a mesothelioma case. In *Clark v. McCarty,* 804 So.2d 11 (La. App. 5 Cir. 4/11/01), 52 year-old Patrick Clark, filed suit against Avondale's Executive Officers and various manufacturers of asbestos-containing products for Mr. Clark's exposure to asbestos and subsequent contraction of mesothelioma. Mr. Clark was diagnosed with a lung malignancy in April of 1994, and died on June 15, 1995, of malignant mesothelioma. In 1996, a Jefferson Parish jury awarded general damages of $2,641,330. Mr. Clark's survival action award was $2,484,014. Mr. Clark's medical expenses were $126,609.30. As for the wrongful death claims, Mrs. Clark was awarded $488,780, and the decedent's daughter and son were awarded $289,000 and $259,000, respectively.

| | |
|---|---|
| **Total Damage Award:** | **$3,678,110.00** |
| **w/ Inflation:** | **$5,129,545.19** |
| **Survival Action Award:** | **$2,484,014.00** |
| **w/ Inflation:** | **$3,464,241.70** |

**3.**  *Hennegan v. Cooper T. Smith Stevedoring Co.,* **837 So.2d 96 (La. App. 4 Cir.   12/30/02)**

In 2002, the Fourth Circuit Court of Appeal upheld a $2.5 million verdict in a mesothelioma case against one defendant. In *Hennegan v. Cooper T. Smith Stevedoring Co.,* 837 So.2d 96 (La. App. 4 Cir. 12/30/02), a 54 year old seaman brought suit against the barge owner and manufacturers of asbestos containing products for his exposure to asbestos and contraction of malignant mesothelioma. He died three years later, and his wife brought supplemental claims for wrongful death and survival damages. In 2001, Judge Robin Giarrusso, in Civil District Court, awarded general damages in the amount of $2,500,000 and special damages in the amount of $596,770.

**Inflation Rates Determined by the Inflation Calculator at:**
**http://data.bls.gov/cgi-bin/cpicalc.pl**


EXHIBIT
D

## QUANTUM STUDY

| | |
|---|---|
| **Total Damage Award:** | **$3,096,769.60** |
| **w/ Inflation:** | **$3,826,197,85** |
| **Survival Action Award:** | **$2,500,000.00** |
| **w/ Inflation:** | **$3,088,862.22** |

### 4. *Faulkner v. McCarty*, 853 So.2d 24 (La. App. 4 Cir. 6/11/03)

In 2003, the Fourth Circuit Court of Appeal upheld a $2.3 million verdict in a mesothelioma case. In *Faulkner v. McCarty*, 853 So.2d 24 (La. App. 4 Cir. 6/11/03), Mr. Faulkner, a longshoremen, filed suit against asbestos manufacturers, the Board of Commissioners for the Port of New Orleans and others. Mr. Faulkner died on August 21, 1998, of malignant mesothelioma as a result of asbestos exposure. Mr. Faulkner's son was substituted in the survival action and asserted a wrongful death claim as well. In 2001, the total damage award after a bench trial was $2,331,639.61. The trail court awarded $2,200,000 for the survival action.

| | |
|---|---|
| **Total Damage Award:** | **$2,331,639.61** |
| **w/ Inflation:** | **$2,880,845.41** |
| **Survival Action Award:** | **$2,200,000.00** |
| **w/ Inflation:** | **$2,718,198.78** |

### 5. *Roberts v. Owens-Corning Fiberglass Corp.*, 878 So.2d 631 (La. App. 1 Cir. 4/2/04)

In 2004, the First Circuit Court of Appeal upheld a verdict totaling over $5 million in a mesothelioma case. In *Roberts v. Owens-Corning Fiberglass Corp.*, 878 So.2d 631 (La. App. 1 Cir. 4/2/04), a pipefitter sued multiple asbestos manufactures for exposure to asbestos containing-products, which resulted in his contraction of mesothelioma. Following the pipefitters death, the lawsuit was amended to add premises owners and add wrongful death claims for his children. In 2002, the jury awarded $3,000,000 on the survival action, $500,000 for past medical expenses, and on the wrongful death action, his wife was awarded $1,000,000, and his three children received $250,000 each.

| | |
|---|---|
| **Total Damage Award:** | **$5,250,000.00** |
| **w/ Inflation:** | **$6,385,651.75** |
| **Survival Action Award:** | **$3,000,000.00** |
| **w/ Inflation:** | **$3,648,943.86** |

### 6. *Torrejon v. Mobil Oil Co.*, 876 So.2d 877 (La. App. 4 Cir. 6/2/04)

In 2004, the Fourth Circuit Court of Appeal upheld a jury verdict of $1,800,000 in general damages for pain and suffering. In *Torrejon v. Mobil Oil Co.*, 876 So.2d 877 (La. App. 4 Cir. 6/2/04), a merchant mariner's widow, individually and as a personal representative of his estate, brought a wrongful death action against a vessel owner and asbestos manufacturers after

**Inflation Rates Determined by the Inflation Calculator at:**
**http://data.bls.gov/cgi-bin/cpicalc.pl**

# QUANTUM STUDY

the decedent, a career merchant mariner, died from asbestos-related mesothelioma caused by exposure to asbestos.

| | |
|---|---:|
| **General Damages Award:** | **$1,800,000.00** |
| **w/ Inflation:** | **$2,140,581.52** |

### 7.   *Zimko v. American Cyanamid,* 905 So.2d 465 (La. App. 4 Cir. 6/8/05)

In 2005, the Fourth Circuit Court of Appeal upheld a $3,500,000 verdict in a mesothelioma case. Mr. Zimko filed a petition for damages against his father's employer, his own employer and a contractor of his employer, alleging negligence, strict premises liability, fraud and intentional acts leading to his household, bystander and/or occupational exposure to asbestos. In 2003, the trial court entered judgment awarding $2,500,000 for the survival action and $1,00,000 for the wrongful death action. All parties filed for a new trial and the trial court amended its judgment and awarded $1,000,000 on the survival action and $2,500,000 on the wrongful death claim.

| | |
|---|---:|
| **Total Damage Award:** | **$3,500,000.00** |
| **w/ Inflation:** | **$4,162,241.85** |
| **Survival Action Award:** | **$1,000,000.00** |
| **w/ Inflation:** | **$1,189,211.85** |
| **Wrongful Death Award:** | **$2,500,000.00** |
| **w/ Inflation:** | **$2,973,029.89** |

### 8.   *Chaisson v. Avondale Industries, Inc.,* 947 So.2d 171 (La. App. 4 Cir. 12/20/2006)

In 2006, the Fourth Circuit Court of Appeal upheld a total verdict slightly more than worth over $3.7 million in a mesothelioma case. In *Chaisson v. Avondale Industries, Inc.,* 947 So.2d 171 (La. App. 4 Cir. 12/20/2006), pipefitter and his daughters sued the pipefitter's former employer, seeking damages based on the pipefitter's wife's contraction of mesothelioma as a result of household exposure to asbestos from repeatedly washing the pipefitter's asbestos dust-coated work clothes. In 2005, Judge Carolyn Gill-Jefferson entered judgment on the answers to the second jury interrogatories for $1,416,580.54 in survival damages. (There were inconsistencies on the first set of jury interrogatories and the Judge made them "re-do" the questions. The original award was for $3,192,579.54.) Judge Jefferson also awarded wrongful death damages of $1,370,000 to the pipefitter and $562,000 to each daughter prior to reductions based on fault percentages.

| | |
|---|---:|
| **Total Damage Award:** | **$3,910,580.50** |
| **w/ Inflation:** | **$4,381,432.01** |
| **Survival Action Award:** | **$1,416,580.54** |
| **w/ Inflation:** | **$1,587,143.22** |
| **Wrongful Death Award:** | **$1,370,000.00** |
| **w/ Inflation:** | **$1,534,954.17** |

**Inflation Rates Determined by the Inflation Calculator at:**
**http://data.bls.gov/cgi-bin/cpicalc.pl**

# QUANTUM STUDY

**9.** *Terrence v. Dow Chemical*, **971 So.2d 1058 (La. App. 1 Cir. 9/14/07)**

In 2007, the First Circuit Court of Appeal upheld a $5 million verdict in a mesothelioma case. In *Terrence v. Dow Chemical*, 971 So.2d 1058 (La. App. 1 Cir. 9/14/07) a widow brought a survival action against an oil refining company for her husband's occupational exposure to asbestos which resulted in his contraction of mesothelioma and subsequent death. In 2006, an East Baton Rouge Parish jury awarded $5,000,000 on the survival claim despite Mr. Terrance dying only four months after his diagnosis of mesothelioma.

| | |
|---|---:|
| **Survival Action Award:** | **$5,000,000.00** |
| **w/ Inflation:** | **$5,426,959.33** |

**10.** *Graves v. Riverwood International Corp.*, **949 So.2d 576 (La. App. 2 Cir. 1/31/07)**

On January 31, 2007, the Second Circuit Court of Appeal affirmed a $3,000,000 verdict for general damages. In *Graves v. Riverwood International Corp.*, 949 So.2d 576 (La. App. 2 Cir. 1/31/07), the Second Circuit decided there was ample evidence to support the general damages awarded by the trial court. Mr. Graves' survivors sought damages from the decedent's former employer for his exposure to asbestos and contraction of mesothelioma. In 2005, the jury awarded $4,500,000 in general damages. However, in response to the defendant's motion for remittitur, the trial court reduced the general damages to $3,000,000 in 2006.

| | |
|---|---:|
| **Damage Award:** | **$3,000,000.00** |
| **w/ Inflation from Date of Remittitur:** | **$3,256,175.60** |

**11.** *Rando v. Anco Insulations*, **2008 WL 2068080 (La. App. 1 Cir 5/2/2008)**

On May 2, 2008, the First Circuit Court of Appeal upheld a general damage award for $2,800,000 and $400,250 in special damages. In *Rando v. Anco Insulations*, 2008 WL 2068080 (La. App. 1 Cir 5/2/2008), a judge trial resulted in a judgment awarding $2,800,000 to Mr. Rando for pain and suffering, mental anguish and loss of enjoyment of life. Mr. Rando contracted mesothelioma from asbestos exposure.

| | |
|---|---:|
| **General Damage Award:** | **$2,800,000.00** |

## ASBESTOSIS/ LUNG CANCER CASES

**12.** *Emery v. Owens-Corporations*, **813 So.2d 441 (La. App. 1 Cir. 11/9/01)**

In 2001, the First Circuit Court of Appeal upheld a total verdict worth over $700,000 in an asbestosis case. In *Emery v. Owens-Corporations*, 813 So.2d 441 (La. App. 1 Cir. 11/9/01), a man who worked as an insulator at a refinery, was exposed to asbestos-containing materials over

**Inflation Rates Determined by the Inflation Calculator at:**
**http://data.bls.gov/cgi-bin/cpicalc.pl**

# QUANTUM STUDY

a five year period during his employment and was later diagnosed with asbestosis. In 2000, a jury awarded the plaintiff $200,000 for his past, present and future mental anguish which includes fear of cancer, $280,000 for future pain and suffering, $200,000 for future medical expenses and $75,000 for loss of consortium for his wife.

**Total Damage Award:**                     **$755,000.00**
      **w/ Inflation:**                         **$959,380.52**

## 13.  *Hoerner v. Anco Insulations,* 812 So.2d 45 (La. App. 4 Cir 1/23/02)

In 2002, the Fourth Circuit Court of Appeal upheld a total verdict worth over $450,000 in an asbestosis case. In *Hoerner v. Anco Insulations,* 812 So.2d 45 (La. App. 4 Cir 1/23/02), plaintiff was exposed to asbestos-containing products for period of approximately twenty-five years, while working as an insulator for various insulating companies. Plaintiff had to stop work after he was diagnosed with asbestosis at the age of fifty-six. In 2000, a jury awarded the plaintiff $450,000 in general damages including fear of cancer, $20,000 for future medicals and $5,000 for his wife's loss of consortium.

**Total Damage Award:**                     **$475,000.00**
      **w/ Inflation:**                         **$603,583.77**

## 14.  *Thomas v. AP Green,* 933 So.2d 843 (La. App. 4 Cir. 5/31/06)

In 2006, the Fourth Circuit Court of Appeals upheld a $2,000,000 survival action and reduced a wrongful death verdict to $1,000,000. In *Thomas,* the heirs of a deceased construction worker brought an asbestos exposure premises liability action against the owner of a power plant. Judge Pro Tempore Paula A. Brown entered judgment on a jury verdict for $2,000,000 on the survival action, $2,750,000 on the wrongful death action of construction workers wife, $200,000 to one of his children and $250,000 to his four other children. The Fourth Circuit Court of Appeals reduced the $2,750,000 wrongful death damage award to $1,000,000.

**Total Damage Award:**                     **$4,200,000.00**
      **w/ Inflation:**                       **$4,705,698.92**
**Survival Action:**                          **$2,000,000.00**
      **w/ Inflation:**                       **$2,240,809.01**
**Wrongful Death Award:**                     **$1,000,000.00**
      **w/ Inflation:**                       **$1,120,404.51**

## RECENT NON-ASBESTOS RELATED CASES

## 15.  *Frances Craft, et al v. Intracoastal Tubular Services,* CDC, No. 97-10199

Oilfield worker filed suit against Oil Company, alleging that he suffered lung injury from exposure to radioactive materials, and his wife brought claim for lack of consortium. In another

**Inflation Rates Determined by the Inflation Calculator at:**
**http://data.bls.gov/cgi-bin/cpicalc.pl**

## QUANTUM STUDY

action, another worker's widow filed action on behalf of herself and her children, alleging that worker died from lung cancer caused by exposure to radioactive materials. On April 27, 2005, an Orleans Parish jury awarded $15,263,244 in total damages. In *Frances Craft, et al v. Intracoastal Tubular Services*, No. 97-10199, Section "N-8", Civil District Court for the Parish of Orleans, the jury awarded $15,000,000 to Frances Craft for loss of society, $236,244 to Lee Craft, Sr. for lost wages and $27,000 to Lee Craft, Sr. for pain and suffering. However, Lee Dell Craft was 25% liable for contributory negligence

| Damages Award: | $11,447,433.00 |
|---|---|
| w/ Inflation: | $12,825,756.00 |

### 16. *Kenneth "Mike" Gibbs v. Sea Support Ventures, L.L.C.*, (E.D.La), No. 05-0572

On June 23, 2006, a jury at the United Stated Eastern District Court of Appeal awarded total damages of $1,986,914. In *Kenneth "Mike" Gibbs v. Sea Support Ventures, L.L.C.*, No. 05-0572, Section "N" Eastern District of Louisiana, the jury determined that the Plaintiff's contributory negligence amounted to 33%. Therefore, the verdict was reduced accordingly.

| Damage Award: | $1,331,233.00 |
|---|---|
| w/ Inflation: | $1,444,909.47 |

### 17. *Lawrence Ritter, et al v. Exxon Mobil*, et al, 34th No. 103-411

On May 1, 2008, a St. Bernard Parish jury awarded $11,244,949 in total damages. In *Lawrence Ritter, et al v. Exxon Mobil*, et al, No. 103-411, Division "C", 34th Judicial District Court for the Parish of St. Bernard, the jury determined that the Lawrence Ritter's contributory negligence amounted to 20% of the liability. Therefore, the verdict was reduced accordingly.

| Damage Award: | $8,995,960.00 |
|---|---|

### 18. *Glenn Logan v. Brink's Inc., et al*, CDC, No. 05-9381

On June 6, 2008, Judge Kern Reese signed a jury verdict for $1,441,500. In *Glenn Logan v. Brink's Inc., et al*, No. 05-9381, Section "L-6", Civil District Court for the Parish of Orleans. The Orleans Parish Jury determined that Glenn Logan's contributory negligence amounted to 15% of the liability. Therefore, the verdict was reduced accordingly.

| Damage Award: | $1,225,275.00 |
|---|---|

### 19. *Thornton v. Diamond Offshore Drilling, Inc.*, 2008 WL 2622998, (E.D.La. 6/30/2008)

Inflation Rates Determined by the Inflation Calculator at:
http://data.bls.gov/cgi-bin/cpicalc.pl

# QUANTUM STUDY

On June 30, 2008, the Eastern District of Louisiana, upheld a jury verdict of $2,500,000 in general damages for an on-the-job injury. In *Thornton v. Diamond Offshore Drilling, Inc.*, 2008 WL 2622998, (E.D.La. 6/30/2008), plaintiff crushed his left forearm and hand in a hydraulic wrench. Plaintiff suffered severe and permanently disabling injuries. The jury awarded Thornton a general damage award of $2,500,000 and a future wage loss award of $563,343.

**Total Damage Award:**                                    **$3,063,343.00**

**20.**   *August Guillot, et al v. Chrysler, LLC.*, 34th **Judicial District Court, No. 94-840**

On April 10, 2008, Judge Kirk A. Vaughn signed a judgment in the 34th Judicial District Court for the Parish of St. Bernard for $5,080,000 for a car accident case. The jury assigned 99% fault to Chrysler and assigned 1% contributory negligence to the plaintiffs. The case involved a car accident which resulted in a fatality of a child. The total judgment with the reduction for contributory negligence amounted to $5,029,150.

**Total Damage Award:**                                    **$5,029,150.00**

**Inflation Rates Determined by the Inflation Calculator at:**
**http://data.bls.gov/cgi-bin/cpicalc.pl**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

WILLIAM CLEVE DAVIDSON,       §
                              §
    Plaintiff,              §
                              §
vs.                           §         CAUSE NO.: _____
                              §
ADVOCATE MINES, LTD., *et al.*, §
                              §         (Orleans Parish No. 2010-05127)
    Defendants.             §

## LIST OF ALL PARTIES REMAINING IN THE ACTION

Pursuant to Eastern District of Louisiana Local Rule 3.2, Defendants, HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited, hereby attach this List of All Parties Remaining in the Action to their Notice of Removal:

1.      Plaintiff William Cleve Davidson;

2.      Defendant Beazer East, f/k/a Koppers Company, Inc.;

3.      Defendant Bird, Incorporated f/k/a Bird & Son, Inc.;

4.      Defendant Certainteed Corporation;

5.      Defendant Georgia-Pacific LLC;

6.      Defendant HSBC Holdings plc;

7.      Defendant The Hongkong Shanghai Banking Corporation Limited;

8.      Defendant Union Carbide Corporation.



CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2010-5127                                                    DIVISION "B"

WILLIAM C. DAVIDSON

VS.

ADVOCATE MINES LTD., ET AL

FILED:_____         _____

                                        DEPUTY CLERK

## ANSWER, EXCEPTIONS, AND AFFIRMATIVE DEFENSES
## TO PLAINTIFFS' PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Alcoa, Inc. (Incorrectly identified as successor in interest to Reynolds Metals Company), and generally denies each and every allegation of Plaintiff's Petition for Damages ("Petition"), unless specifically admitted herein, and in further response to the Petition submits the following answer and affirmative defenses.

### EXCEPTIONS

### 1. Declinatory Exception of Lis Pendens

Alcoa excepts to plaintiff's petition for damages in order to preserve this exception based upon information, as yet undiscovered, that would reveal that the plaintiff has other suits pending against Alcoa arising from the same alleged injury.

### 2. Declinatory Exception of Improper Venue

Alcoa asserts and pleads the declinatory exception of improper venue.

### 3. Dilatory Exception of Vagueness or Ambiguity of the Petition

Alcoa asserts the exception of vagueness. Alcoa states that the allegations in the Petition of Damages are too vague to allow Alcoa to safely plead, and Plaintiff should be ordered to amend the vague and open-ended allegations, failing which all vague and open-ended allegations should be ordered stricken from the pleadings.

1

### 4. Dilatory Exception of Improper Cumulation, and Improper Joinder of Parties

Alcoa asserts and pleads the exceptions of improper cumulation, and improper joinder of parties.

### 5. Peremptory Exception of Failure to Join Parties Needed for Just Adjudication

Alcoa asserts and pleads the exception of failure to join parties needed for just adjudication.

### Reservation of Other Exceptions

Alcoa reserves its right to urge other exceptions unknown to it at this time and to adopt the exceptions pled by any and all other parties.

## AFFIRMATIVE DEFENSES

### First Defense - Failure to State a Cause or Right of Action

Plaintiff states no cause and/or right of action against Alcoa

### Second Defense - Prescription

Plaintiff's demands are barred by the passage of time and/or laches and/or prescription/peremption.

### Third Defense - Failure to Mitigate Damages

Plaintiff's demands are barred or alternatively reduced due to the failure of Plaintiff to mitigate, minimize or abate any damages allegedly sustained.

### Fourth Defense - Contributory and/or Comparative Negligence

Plaintiff's demands are barred and/or alternatively reduced by the contributory and/or comparative negligence of the Plaintiff, in the following, but not exclusive, respects:

1.  In failing to wear proper protective gear, safety devices, apparel and other equipment to protect against the inhalation of the substances alleged to be harmful;

2.  In failing to properly care for the above mentioned protective equipment;

3.  In failing to request the use of such protective and safety equipment from his employer;

4.  In failing to follow instructions pertaining to protection against the substances alleged to be harmful;

5.   In failing to take proper precautions against the inhalation of the substances alleged in be harmful;

6.   In generally failing to exercise due care under the circumstances;

7.   In failing to request his employer to furnish blowers or other equipment to remove dust-laden air from his work areas;

8.   In failing to cease working in an environment of dust-laden air knowing that he was working with asbestos insulation products and that he was inhaling asbestos dust;

9.   In knowingly and willingly exposing himself to inhalation of particulate matter, when he knew or should have known that such inhalation was dangerous to his health;

10.   In continuing to expose himself to asbestos, silica and/or other related dust and/or chemicals despite the knowledge that he was suffering from respiratory ailments;

11.   In committing any and all other negligent or wrongful acts or omissions which may be discovered or proven at the trial of this matter.

### Fifth Defense - Voluntary Assumption of Known Risk

Plaintiff's demands are barred by the voluntary assumption of a known risk by the Plaintiff.

### Sixth Defense - Consent

To the extent the allegations of the Petition are construed to state a claim against Alcoa for committing an intentional tort, recovery by Plaintiff is barred because Plaintiff consented to the acts alleged herein.

### Seventh Defense - Exclusive Remedies of Compensation Laws

Plaintiff's demands are barred by the exclusive remedy provision of the Louisiana Workers' Compensation Act, La. R.S. §23:1032.

### Eighth Defense - Set Off

Plaintiff's demands are subject to a set off for any and all amounts received by Plaintiff pursuant to federal and/or state compensation laws.

### Ninth Defense - Third Parties Liable

Alcoa avers that the injuries and damages alleged, if any, were caused by the negligence, strict liability or fault of third parties for whom Alcoa is not responsible.

### Tenth Defense - Offset/Credit for Settled Parties

Alcoa avers that it is entitled to an offset and/or credit for the liability of any and all

291239.1.wpd

individuals, companies, parties and/or defendants with whom the Plaintiff has settled, regardless of whether those persons or entities are parties to this litigation.

### Eleventh Defense - No Breach of Duty

Alcoa avers that the Plaintiff has sustained no damages or injuries for which he is entitled to recover any amounts whatsoever as a result of any breach of contractual or legal duty owed to him by Alcoa.

### Twelfth Defense - Reduction Proper

Alcoa contends that it is entitled to a reduction in the amount for which it may ultimately be held liable in judgment to the Plaintiff or any co-defendants, if any, to the full extent that any and all of those parties are released herein commensurate with the said parties' responsibility under the laws of indemnity, comparative negligence and/or contribution. In the further alternative, and only in the event the Plaintiff should affect recovery herein against Alcoa, Plaintiff's claim against Alcoa should be reduced in proportion to the degree or percentage of negligence or fault attributable to Plaintiff and/or third parties.

### Thirteenth Defense - Normal Risk

Alcoa affirmatively avers that Plaintiff's injuries, if any, were caused by the ordinary and normal risk incident to his occupation for which Alcoa is not responsible.

### Fourteenth Defense - Injuries Caused by Other Substance(s)

Further, alternatively, Alcoa avers that the Plaintiff's injuries, including, but not limited to, the Plaintiff's alleged lung injuries, in any, were caused by substances other than asbestos.

### Fifteenth Defense - Idiopathic Nature of Disease, Unrelated to Occupational Exposures

The physical condition plaintiff alleges was not caused by occupational exposure, but was the result of genetic and/or other conditions or circumstances for which Alcoa bears no legal responsibility.

### Sixteenth Defense - Alcoa did not Manufacture Asbestos Containing Products

Alco specifically and affirmatively avers that it did not mine, process, manufacture, sell or distribute any asbestos containing products at any time.

## ANSWER TO ENUMERATED PARAGRAPHS OF PETITION FOR DAMAGES

I.

For Alcoa to safely respond to the vague and overly broad allegations in the Petition, it must qualify its Answer and Affirmative Defenses to identify the allegations applicable to Alcoa and remits its response to those allegations accordingly.

II.

The allegations made by Plaintiff against defendants other than Alcoa require no response from Alcoa.  To the extent any response is deemed necessary, each such allegation is denied.

III.

The allegations of Paragraphs 1 and 3 of the Original Petition for Damages are denied for lack of sufficient information to justify a belief as to the truth of the allegations.

IV.

To the extent they pertain to Alcoa, the allegations of Paragraph 2 of the Original Petition for Damages are denied except to admit that Alcoa is a foreign corporation licensed to do business in the State of Louisiana.

V.

The allegations of Paragraphs 4, 7, 9, 63 and 64 of the Original Petition for Damages are denied.

VI..

The allegations of Paragraphs 5, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 31, 33, 43, 44, 45, 46, 47, 49, 50, 57, 58 and 59 of the Original Petition for Damages do not pertain to and do not require a response from Alcoa.  To the extent a response is required, the allegations are denied.

VII.

To the extent they pertain to Alcoa, the allegations of Paragraphs 6, 8, 10, 11, 12, 13, 14, 15, 16, 35, 36, 37, 39, 40, 41, 48, 60, 61 and 62 of the Original Petition for Damages are denied.

VIII.

Regarding the allegations of Paragraphs 17, 21, 30, 32, 34, 38 and 42 of the Original Petition for Damages, to the extent the realleged allegations pertain to Alcoa, Alcoa reavers and realleges all answers, responses and defenses as if copied herein *in extenso*.

291239 1.wpd                                    5

IX.

Alcoa prays for trial by jury.

WHEREFORE, premises considered, Alcoa, Inc. (Incorrectly identified as successor in interest to Reynolds Metals Company) prays that its Exceptions be upheld and that its Answers and Affirmative Defenses be deemed good and sufficient and that after due proceedings had there be judgment herein and in its favor dismissing all claims of plaintiff against Alcoa, Inc. at his costs.

Respectfully submitted,

PLAUCHÉ MASELLI PARKERSON LLP

ANDREW L. PLAUCHÉ, JR. (Bar. No. 11023)
SCOTT H. MASON (Bar No. 29329)
701 Poydras Street, Suite 3800
New Orleans, Louisiana 70139-3800
Office: (504)582-1142
Fax: (504)582-1172

ALEXANDRA B. CUNNINGHAM
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Office: (804)788-8639
Fax: (804)788-8218

ATTORNEYS FOR DEFENDANT,
ALCOA, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing Answer, Exceptions and Affirmative Defenses to Plaintiff's Petition for Damages has been forwarded to all counsel of record by depositing same in the United States mail, properly addressed and postage prepaid and/or via facsimile and/or via email from New Orleans, Louisiana, on this 9th day of July, 2010.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                    DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____

DEPUTY CLERK

FILED
JUN 29 2010
DEPUTY CLERK
CIVIL DISTRICT COURT

ENTERED RULE DOCKET

## EXCEPTIONS, AFFIRMATIVE DEFENSES, AND ANSWER OF AMALGAMATED METAL CORPORATION LIMITED TO PLAINTIFF'S PETITION FOR DAMAGES AND REQUEST FOR JURY

NOW INTO COURT, through undersigned counsel, comes Defendant, AMALGAMATED METAL CORPORATION LIMITED, (hereinafter "AMC", or "Defendant"), who excepts to and answers Plaintiff's Original Petition for Damages ("Petition") as follows:

## DECLINATORY EXCEPTION OF LACK OF PERSONAL JURISDICTION

AMC urges the declinatory exception of lack of personal jurisdiction on grounds that, based on information presently available, minimum contacts sufficient to subject AMC to the jurisdiction of a Louisiana court do not exist.

## DECLINATORY EXCEPTION OF IMPROPER VENUE

Defendant pleads the Declinatory Exception of Improper Venue pursuant to Louisiana Code of Civil Procedure Article 925(A)(4). Plaintiff alleges that venue is proper in Orleans Parish because defendant Eagle, Inc. has its primary business office and/or primary place of business in Orleans Parish. Plaintiff alleges that all other defendants are solidarily liable with Eagle and thus venue is proper as to all defendants. Little discovery has been conducted in this case and there is insufficient information at this time to determine whether Eagle has liability herein and thus, whether there is any merit to the allegations of solidary liability.

## PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION

Pursuant to La. C.C.P. art. 927, Defendant excepts to Plaintiff's allegations that AMC is a successor in interest to British Metal Corporation.

1933607_1.DOC                              - 1 -

## DILATORY EXCEPTION OF VAGUENESS AND/OR NON-CONFORMITY OF THE PETITION TO LA. C.C.P. ARTS. 856 & 891

Defendant excepts to all allegations of fraud and conspiracy which Plaintiff has alleged in the Petition on grounds that these allegations have not been plead with particularity. Plaintiff has asserted general fraud and conspiracy allegations against Defendant without alleging the precise fraudulent and/or conspiratorial acts allegedly committed by Defendant. Thus, Defendant is unable to prepare a defense as it does not have knowledge of the facts that provide the basis for these allegations.

## DECLINATORY EXCEPTION OF LIS PENDENS

Defendant pleads the Declinatory Exception of Lis Pendens pursuant to Louisiana Code of Civil Procedure 925(A)(3) as a precautionary matter. Defendant is not specifically aware at this point of any earlier filed lawsuits, but pleads the Exception of Lis Pendens in the event that discovery in this case reveals any earlier filed lawsuits seeking compensation for Plaintiff's claimed asbestos-related injuries.

## PREEMPTORY EXCEPTION OF PRESCRIPTION

Defendant pleads the Preemptory Exception of Prescription pursuant to Louisiana Code of Civil Procedure Article 927(A)(1).

**AND NOW**, Defendant avers the following affirmative defenses:

## AFFIRMATIVE DEFENSE NO. 1

Plaintiff has failed to state a cause of action against AMC upon which relief may be granted.

## AFFIRMATIVE DEFENSE NO. 2

Plaintiff's alleged injuries or illness, if any, are not the result of exposure to asbestos. In particular, any injuries or illness are not the result of exposure to any product manufactured by AMC.

## AFFIRMATIVE DEFENSE NO. 3

Plaintiff's injuries, if any, were caused by the sole fault and/or strict liability of a person or persons other than AMC. Such fault and/or strict liability bars, or in the alternative, reduces any recovery to which Plaintiff might otherwise be entitled.

## AFFIRMATIVE DEFENSE NO.4

Plaintiff's claims are barred by prescription and applicable statutes of limitation.

## AFFIRMATIVE DEFENSE NO. 5

Plaintiff failed to take reasonable steps to mitigate his damages.

## AFFIRMATIVE DEFENSE NO. 6

To the extent Plaintiff alleges a cause of action under Louisiana Civil Code article 2315.3 for exemplary damages, the petition fails to state a cause of action because Plaintiff's alleged exposures ended prior to the effective date of article 2315.3, and said provision is not retroactive.

## AFFIRMATIVE DEFENSE NO. 7

In the event that AMC is found responsible in any way to Plaintiff, which is at all times denied, AMC is entitled to have the fault of Plaintiff and/or other persons, entities, and or parties, allocated, including but not limited to defendant and non-defendant premises owners, suppliers, manufacturers, contractors and bankrupt entities, and any amounts found owing to Plaintiff must be reduced to the extent of the apportionment of such fault to Plaintiff and/or other persons, entities and/or parties.

## AFFIRMATIVE DEFENSE NO. 8

While denying exposure to any product which AMC may have manufactured caused any injury or illness to Plaintiff, Defendant avers that if such relationship should be proven, Plaintiff voluntarily assumed the risk of incurring whatever illness he may have contracted by unnecessarily exposing himself to the materials alleged with the knowledge that they could be hazardous if he was exposed to them in the manner that he was allegedly exposed. This assumption of the risk, contributory or comparative negligence bars or, in the alternative, reduces any recovery to which Plaintiff might otherwise be entitled.

## AFFIRMATIVE DEFENSE NO. 9

In the further alternative, because Plaintiff was warned or otherwise made aware of the alleged dangers of the materials to which he was exposed, Plaintiff is estopped from any recovery of the claims asserted.

### AFFIRMATIVE DEFENSE NO. 10

It is denied that Plaintiff was exposed to any substance which required warning of the relationship of such substance to the illness or injury allegedly sustained by him, and the relationship of such substances to such injury or illness is denied. Alternatively, such warnings as were furnished to Plaintiff or to any of his employers were adequate and fulfilled any duty Defendant had to provide such warnings.

### AFFIRMATIVE DEFENSE NO. 11

If Plaintiff was exposed to asbestos or asbestos-containing products which were allegedly manufactured by AMC, which is at all times denied, and such exposure is found to have been the cause of any illness suffered by him, which is denied, such properties were neither known nor reasonably discoverable on the basis of the research and scientific information then available as to the existing "state of the art." Furthermore, AMC acted reasonably and prudently at all times and AMC's conduct with respect to such products was in conformity with all applicable state and federal regulations.

### AFFIRMATIVE DEFENSE NO. 12

Further, in the alternative, should Plaintiff be entitled to any award, which is specifically denied, and if Plaintiff, at any time prior to or during the trial, settles with entities or persons who are found to be actively or primarily at fault, then AMC affirmatively pleads that any and all debt it may owe to plaintiff has been extinguished by such settlements on the basis that Defendants' alleged liability is secondary or derivative to the settling entity's or person's active or primary fault.

### AFFIRMATIVE DEFENSE NO. 13

Should plaintiff be entitled in any award, which is denied, and if plaintiff, at any time prior to or during the trial, settles with any solidary obligor, without a reservation of rights, then AMC affirmatively pleads that any and all debt it may owe to plaintiff has been extinguished by such settlement on the basis that plaintiff's settlement with one solidary obligor, without a reservation of rights against the remaining solidary obligors, discharges the debt as to the remaining solidary obligors.

## AFFIRMATIVE DEFENSE NO. 14

Plaintiff's claims are barred by the doctrine of res judicata and/or collateral estoppel.

## AFFIRMATIVE DEFENSE NO. 15

Defendant states that plaintiff's employers were independent contractors over whose employees, including plaintiff, Defendant did not exercise a degree of supervision and control sufficient to subject Defendant to liability herein. Defendant affirmatively pleads the independent contractor defense.

## AFFIRMATIVE DEFENSE NO. 16

Plaintiff's allegations of strict liability are in no way legally supportable and if Plaintiff was, in fact, injured by exposure to asbestos, which is denied, such exposure was not, and could not, legally or factually, have been in the custody or control of AMC.

## AFFIRMATIVE DEFENSE NO. 17

Alternatively, any illness from which Plaintiff suffered, and Plaintiff's damages, if any, resulted from the intervening, independent or superseding acts of God or others for whom AMC cannot be held responsible. Such intervening, independent or superseding cause or causes bar, or in the alternative, reduce any recovery to which Plaintiff might otherwise be entitled.

## AFFIRMATIVE DEFENSE NO. 18

Further, in the alternative, AMC denies that the doctrine of strict liability applies in this case. However, if the Court determines that the doctrine applies and this Defendant is found strictly liable, which is denied, then this Defendant is absolved from all liability on the basis of all defenses to the doctrine of strict liability including but not limited to the active fault of the manufacturers. This defense is intended to include all manufacturers, including those manufacturers who are present at trial, have settled and/or have filed for bankruptcy.

## AFFIRMATIVE DEFENSE NO. 19

Further, in the alternative, should Plaintiff be entitled to any award, which is specifically denied, then any such award should be reduced to the extent of any settlement and/or release of any persons, companies or entities, whether a party or not

1933607_1.DOC                    - 5 -

(and whether the settled entity is bankrupt or not), and whether said settlement and/or release occurs prior to or subsequent to the filing of the original or any supplemental petition herein.

### AFFIRMATIVE DEFENSE NO. 20

Plaintiff was not exposed to any asbestos materials through any act or omission of AMC, or if such exposure occurred, which is denied, such exposure was of such insufficient quantities, at such infrequent intervals, for such short periods of time, or under such conditions as to amount to no proximate cause of Plaintiff's damages, if any, as a matter of law.

### AFFIRMATIVE DEFENSE NO. 21

To the extent that Plaintiff has received payment from any alleged joint tortfeasor in full satisfaction of any of the alleged injuries and/or claims against Defendant and/or other alleged joint tortfeasors, each and every count and cause of action alleged in Plaintiff's Petition are barred by the defenses of payment and accord and satisfaction.

### AFFIRMATIVE DEFENSE NO. 22

Defendant avers that as a result of the provisions of certain statutes, including 11 U.S.C. Section 362(a), Plaintiff is prohibited from proceeding against certain parties liable for damages and injuries complained of and defendant reserves its right to so proceed.

### AFFIRMATIVE DEFENSE NO. 23

Plaintiff's injuries, if any, were caused by the sole, or in the alternative, comparative negligence and/or fault of the plaintiff.

### AFFIRMATIVE DEFENSE NO. 24

AMC denies that plaintiff ever used or was in proximity to asbestos containing products for which AMC supplied any component parts, including asbestos.

### AFFIRMATIVE DEFENSE NO. 25

Alternatively, in the event that AMC is found responsible in any way to plaintiff, AMC is entitled to have the fault of plaintiff, all named defendants, including those who have settled with plaintiffs prior to judgment, and any other persons, entities and parties found to be at fault, apportioned and any amounts found owing to plaintiff reduced to the

extent of the apportionment of such fault to plaintiff and/or other persons, entities and/or parties.

## AFFIRMATIVE DEFENSE NO. 26

AMC avers that it did not mine, manufacture, or market asbestos or asbestos-containing materials during any of the times alleged in plaintiffs' Petition and AMC denies that any product or action or inaction on its part caused any alleged damages to plaintiff. Alternatively, AMC asserts that the state of the medical and scientific knowledge and all materials relating thereto at all times material herein were such that AMC neither knew nor could have known that asbestos and/or asbestos-containing products presented a significant risk of harm to Plaintiff. AMC specifically pleads the "state of the art" defense to each and every allegation of the Petition.

## AFFIRMATIVE DEFENSE NO. 27

To the extent that plaintiff has received payment from any alleged joint tortfeasor in full satisfaction of any of the alleged injuries and/or claims against AMC and/or other alleged joint tortfeasors, each and every count and cause of action alleged in plaintiff's Petition is barred by the defenses of payment and accord and satisfaction.

## AFFIRMATIVE DEFENSE NO. 28

AMC avers that it did not mine, manufacture, or market asbestos or asbestos-containing materials during any of the times alleged in plaintiffs' Petition and AMC denies that any product or action or inaction on its part caused any alleged damages to plaintiff. Alternatively, AMC avers that, at the time the product left its control, it did not know and could not have known of the existence of an alternative design from the then-existing reasonably available scientific and technological knowledge.

## AFFIRMATIVE DEFENSE NO. 29

AMC avers that plaintiff's alleged injuries and illnesses were caused solely by his negligence, fault, misuse, failure to follow instructions, and breach of implied and express warnings and/or by the negligence, fault, misuse, failure to follow instructions and/or breach of implied and express warnings of third persons for whose actions AMC is not responsible.

### AFFIRMATIVE DEFENSE NO. 30

AMC avers that it did not mine, manufacture, or market asbestos or asbestos-containing materials during any of the times alleged in plaintiffs' Petition and AMC denies that any product or action or inaction on its part caused any alleged damages to plaintiff.   Alternatively, Plaintiff's employers were responsible for plaintiff's safety. Plaintiff's employers were knowledgeable and sophisticated users and/or purchasers of asbestos-containing products.  A manufacturer or distributor of a product has no duty to warn a sophisticated user and/or purchaser of a danger in its product of which the user/purchaser knows or should have known.

### AFFIRMATIVE DEFENSE NO. 31

AMC avers that it did not mine, manufacture, or market asbestos or asbestos-containing materials during any of the times alleged in plaintiffs' Petition and AMC denies that any product or action or inaction on its part caused any alleged damages to plaintiff.  Alternatively, the manufacturers of the products which Plaintiff worked with or around were knowledgeable and sophisticated users and/or purchasers of asbestos and/or asbestos-containing products.  A manufacturer or distributor of a product has no duty to warn a sophisticated user and/or purchaser of a danger in its product of which the user/purchaser knows or should have known.

### AFFIRMATIVE DEFENSE NO. 32

In the further alternative, plaintiff having been warned or otherwise made aware of the alleged dangers of the materials to which he was exposed, plaintiff is estopped from any recovery of the claims asserted.

### AFFIRMATIVE DEFENSE NO. 33

It is denied that plaintiff was exposed to any substance which required warning of the relationship of such substance to the illness or injury allegedly sustained by plaintiff, and the relationship of such substances to such injury or illness is denied.  Alternatively, such warnings as were furnished were adequate and fulfilled any obligation Defendant had to provide such warnings.

## AFFIRMATIVE DEFENSE NO. 34

Further, in the alternative, should plaintiff be entitled to any award, which is specifically denied, then any such award should be reduced to the extent of any settlement and/or releases of any persons, companies or entities, whether a party or not, and whether said settlement and/or release occurs prior to or subsequent to the filing of the original or any supplemental petition herein.

## AFFIRMATIVE DEFENSE NO. 35

Should plaintiff be entitled in any award, which is denied, and if plaintiff, at any time prior to or during the trial, settles with any solidary obligor, without a reservation of rights, then Defendant affirmatively pleads that any and all debt it may owe to plaintiff has been extinguished by such settlement on the basis that plaintiff's settlement with one solidary obligor, without a reservation of rights against the remaining solidary obligors, discharges the debt as to the remaining solidary obligors.

## AFFIRMATIVE DEFENSE NO. 36

Further, in the alternative, should plaintiff be entitled to any award, which is specifically denied, and if plaintiff, at any time prior to or during the trial, settles with manufacturers who are found to be primarily at fault, then Defendant affirmatively pleads that any and all debt that it may owe to plaintiff has been extinguished by such settlements on the basis that this Defendant's alleged liability is secondary or derivative to the manufacturers' liability.

## AFFIRMATIVE DEFENSE NO. 37

Further, in the alternative, Defendant denies that the doctrine of strict liability applies in this case. However, if the court determines that the doctrine applies and Defendant is found strictly liable, which is denied, then Defendant is absolved from all liability on the basis of all defenses to the doctrine of strict liability including but not limited to the active fault of the manufacturers. This defense is intended to include all manufacturers, including those manufacturers who are present at trial, have settled and/or have filed for bankruptcy.  Defendant pleads extinguishment of any debt owed to plaintiffs.

## AFFIRMATIVE DEFENSE NO. 38

AMC affirmatively avers each of the affirmative defenses of the Louisiana Products Liability Act and other laws that may be deemed applicable under the facts and law at issue in this matter.

## AFFIRMATIVE DEFENSE NO. 39

Defendant adopts by reference, as if set forth fully herein, any and all affirmative defenses asserted by other defendants in this matter.

## ANSWER TO ORIGINAL PETITION FOR DAMAGES

**AND NOW**, Defendant responds to the particular allegations of the Original Petition for Damages ("Petition") by denying each and every allegation unless specifically admitted to below. This Defendant answers the particular allegations of the Petition as follows:

1.

The allegations contained in Paragraph 1 of the Petition are denied for lack of sufficient information to justify a belief therein.

2.- 4.

The allegations contained in Paragraphs 2, 3, and 4 of Plaintiff's Petition are denied.

## BACKGROUND

5.

The allegations contained in Paragraph 5 of Plaintiff's Petition are denied.

6.- 9.

The allegations contained in Paragraphs 6, 7, 8, and 9 of Plaintiff's Petition are denied.

## COUNT ONE

## ALLEGATIONS AGAINST MANUFACTURING AND EQUIPMENT DEFENDANTS

10. – 15.

The allegations contained in Paragraphs 10, 11, 12, 13, 14, and 15, including all subparts, of Plaintiff's Petition are denied.

16.

The allegations contained in Paragraph 16, including all subparts, of Plaintiff's Petition are denied insofar as they may pertain to Defendant answering herein and are denied for lack of sufficient information to justify a belief therein insofar as these allegations pertain to other defendants.

## COUNT TWO

## ALLEGATIONS AGAINST EMPLOYER DEFENDANTS

17. - 20.

The allegations contained in Paragraphs 17, 18, 19, and 20, including all subparts, of Plaintiff's Petition do not pertain to Defendant answering herein and no answer is required. But if an answer is deemed to be required, the allegations are denied for lack of sufficient information to justify a belief therein.

## COUNT THREE
## ALTER EGO/SINGLE BUSINESS ENTERPRISE ALLEGATIONS
## AGAINST RPM, INC. AND BONDEX INTERNATIONAL, INC.

21. - 22.

The allegations contained in Paragraphs 21 and 22, of Plaintiff's Petition do not pertain to Defendant answering herein and no answer is required. But if an answer is deemed to be required, the allegations are denied for lack of sufficient information to justify a belief therein.

## COUNT FOUR
## ALLEGATIONS AGAINST PREMISE DEFENDANTS

23. - 29.

The allegations contained in Paragraphs 23, 24, 25, 26, 27, 28, and 29, including all subparts, of Plaintiff's Petition do not pertain to Defendant answering herein and no answer is required. If an answer is deemed to be required, the allegations are denied for lack of sufficient information to justify a belief therein.

## COUNT FIVE
## ALLEGATIONS AGAINST SUPPLIER DEFENDANTS

30. - 31.

The allegations contained in Paragraphs 30 and 31 of Plaintiff's Petition, including

all subparts, do not pertain to Defendant answering herein and no answer is required. If an answer is deemed to be required, the allegations are denied for lack of sufficient information to justify a belief therein.

## COUNT SIX
## ALLEGATIONS AGAINST CONTRACTOR DEFENDANTS

### 32. - 33.

The allegations contained in Paragraphs 32 and 33, including all subparts, of Plaintiff's Petition do not pertain to Defendant answering herein and no answer is required. If an answer is deemed to be required, the allegations are denied for lack of sufficient information to justify a belief therein.

## COUNT SEVEN
## CONSPIRACY ALLEGATIONS AGAINST ALL DEFENDANTS

### 34. - 37.

The allegations contained in Paragraphs 34, 35, 36, and 37, including all subparts, of Plaintiff's Petition are denied.

## COUNT EIGHT
## AIDING AND ABETTING ALLEGATIONS AGAINST ALL DEFENDANTS

### 38. - 41.

The allegations contained in Paragraphs 38, 39, 40, and 41 of Plaintiff's Petition are denied.

## COUNT NINE
## ALLEGATIONS AGAINST ASBESTOS FIBER SUPPLIERS

### 42.

The allegations contained in Paragraph 42 of Plaintiff's Petition are denied.

### 43.

The allegations contained in Paragraph 43 of Plaintiff's Petition do not pertain to Defendant answering herein and no answer is required. If an answer is deemed to be required, the allegations are denied for lack of sufficient information to justify a belief therein.

### 44.

The allegations contained in Paragraph 44 of Plaintiff's Petition are denied.

**45. - 46.**

The allegations contained in Paragraphs 45 and 46 of Plaintiff's Petition do not pertain to Defendant answering herein and no answer is required.  If an answer is deemed to be required, the allegations are denied for lack of sufficient information to justify a belief therein.

**47.**

The allegations contained in Paragraph 47 of Plaintiff's Petition are denied.

**48. – 50., A. through L., and  57.**

The allegations contained in Paragraphs 48, 49, 50, A, B, C, D, E, F, G, H, I, J, K, and L, and Paragraph 57 of Plaintiff's Petition do not pertain to Defendant answering herein and no answer is required.  If an answer is deemed to be required, the allegations are denied for lack of sufficient information to justify a belief therein.

**58. - 60.**

The allegations contained in Paragraphs 58, 59, and 60 of Plaintiff's Petition are denied.

## COUNT TEN
## DAMAGES

**61. - 62.**

The allegations contained in Paragraphs 61 and 62 of Plaintiff's Petition are denied.

**63. - 64.**

The allegations contained in Paragraphs 63 and 64 of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein.

**65.**

AMC denies all allegations of any and all cross-complaints, cross-actions and third party complaints filed against it by other defendants in this case, or which may be filed by such other defendants or additional parties in the future and states that they are not liable to any other party in this case.

**66.**

AMC requests a trial by jury on all issues.

WHEREFORE, Defendant, **Amalgamated Metal Corporation, Limited** prays that, after due proceedings be had, this Honorable Court sustain its exceptions and dismiss all of plaintiff's claims with prejudice and at plaintiff's costs. Alternatively, and in the event that Defendant is assessed any liability for any of plaintiff's claims, Defendant requests that its liability be reduced by the portion of fault attributable to plaintiff or the fault of any other entity, whether or not that entity was ever a party to this litigation. Finally, Defendant prays for trial by jury on all issues.

Respectfully submitted:

Gary A. Bezet, Trial Attorney (#3036)
Gayla M. Moncla (#19713)
Barrye Panepinto Miyagi (#21974)
Robert E. Dille (#23037)
Gregory M. Anding (#23622)
Anthony Williams (#26750)
Janice M. Culotta (#23460)
Carol L. Galloway (#16930)
Allison N. Benoit (#29087)
Vionne M. Douglas (#31447)
KEAN MILLER HAWTHORNE D'ARMOND
McCOWAN & JARMAN LLP
Post Office Box 3513
One American Place, 22nd Floor
Baton Rouge, LA 70821
Telephone: (225) 387-0999

*Attorneys for Amalgamated Metal*
*Corporation, Limited*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Exceptions, Answer and Affirmative Defenses, Rule to Show Cause, Memorandum in Support of Exceptions , and Request for Notice has been forwarded, via facsimile, and/or by U. S. Mail, postage prepaid, to plaintiff's counsel and via electronic mail to all known counsel of record.

Baton Rouge, Louisiana this 29 day of June, 2010.

Gayla M. Moncla

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO: 10-5127                                          DIVISION "B"

WILLIAM CLEVE DAVIDSON

VS.

ADVOCATE MINES, LTD. ET AL

FILED: _____

DEPUTY CLERK

**FILED**
JUL 13 2010
DEPUTY CLERK
CIVIL DISTRICT COURT

ENTERED RULE DOCKET

## ANSWER AND EXCEPTIONS OF DEFENDANT BEAZER EAST, INC.

Defendant Beazer East, Inc., answers and files the following exceptions to

plaintiff's original petition.

### EXCEPTION OF IMPROPER VENUE

Defendant pleads the exception of Improper Venue in accordance with Louisiana

Code of Civil Procedure Article 925(A)(4).

### EXCEPTION OF NON CONFORMITY

Defendant excepts to all allegations of fraud and conspiracy which plaintiff has

alleged in the Petition on the grounds that these allegations must be plead with

particularity. Plaintiff has only asserted general fraud and conspiracy allegations against

defendant without alleging the precise fraudulent and/or conspiratorial acts allegedly

committed by defendant. Thus defendant is unable to prepare a defense since it does not

have knowledge of the facts that provide the basis for these allegations.

### EXCEPTION OF *LIS PENDENS*

Defendant pleads *lis pendens* pursuant to Louisiana Code of Civil Procedure

Article 925(A)(3). Defendant is not specifically aware at this point of any earlier filed

lawsuits, but pleads this exception in the event that discovery in this case reveals any

earlier filed lawsuits seeking compensation for Plaintiff's claimed asbestos-related

injuries.

### *FORUM NON CONVIENIENS*

Defendant pleads the exception of *Forum Non Convieniens* in accordance with

Louisiana Code of Civil Procedure Article 123. Defendant asserts that the convenience

of the parties, the witnesses and in the interests of justice, transfer of this case to Bossier

JUL 2 6 2010

Parish is warranted given that plaintiff is a resident of said parish and it is expected that the bulk of the witnesses in this case will be from the areas of Bossier City and Shreveport.

## ADOPTION OF EXCEPTIONS OF CO-DEFENDANTS

Defendant adopts all exceptions filed by any defendant in this matter as if filed herein.

## ANSWER TO PLAINTIFF'S ORIGINAL PETITION

Defendant answers plaintiff's original petition as follows:

I.      Defendant has insufficient information to admit or deny paragraphs 1, 3, 4, 5, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 33, 43, 44, 45, 46, 47, 48, 49, 50, 57, 58, 59, 60, 63, and 64, and therefore denies the same.

II.     Defendant denies paragraphs 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 35, 36, 37, 39, 40, 41, 61, and 62.

III.    Defendant denies paragraph 2, although it admits its corporate status.

IV.     Defendant re-asserts all previous answers and defenses in response to paragraphs 17, 21, 30, 32, 34, 38, and 42.

In further answer defendant asserts the following defenses:

### 1.

If plaintiffs sustained physical injury or disability as alleged, it is the result of their own negligence, said acts of negligence consisting of, but not limited to the follows:  (1) failing to wear or use protective equipments; (2) failing to properly maintain their protective equipment; (3) failing to adhere to warning labels contained on product; (4) failing to take obvious precautions dictated by reason and common sense for the circumstances; (5) failing to use the products in the manner intended; (6) other acts of negligence to be established at the time of trial.

### 2.

If this Honorable Court should find negligence on the part of this defendant, which is specifically and categorically denied, then plaintiffs' recovery should be completely and entirely barred by plaintiffs' full and complete acts of negligence which is solely responsible for his/her damages.

**3.**

Defendant specifically and categorically deny that plaintiffs ever used products manufactured by this defendant company, and further deny that plaintiffs were ever in the proximity to products manufactured by this defendant company.

**4.**

Defendant manufactured these products with the highest degree of skill and care and in conformity and with the knowledge and skills available to the industry at all times in questions and adheres to all appropriate government and industry standards.

**5.**

If plaintiffs did sustain injury or damages, which is specifically and categorically denied, they are the result of negligence or fault on the part of others whom the defendant had no responsibility or control.

**6.**

If plaintiffs sustained any injury as alleged in the petition, which is specifically denied, said injuries were directly or proximately caused by the negligence of his or her employer, or other parties in failing to convey to them proper instructions and/or precautions for the safe and proper use of insulation materials and said negligence constitutes an intervening, superseding proximate cause of any injury sustained by plaintiffs.

**7.**

Defendant contends that they are entitled to a reduction in the amount for which they may ultimately be held liable in judgment to the plaintiffs or to any co-defendants, if any, to the full extent of any of those parties released herein, commensurate with the responsibility under the laws of indemnity, comparative negligence and/or contribution.

**8.**

In the further alternative, and only in the event plaintiffs should affect recovery herein against these defendant companies, plaintiffs' claims against them should be reduced in proportion to the degree or percentage of negligence or fault attributable to plaintiffs and any third person.

9.

Further, alternatively, any claim based on any theory of strict liability without fault, is unconstitutional, in that it seeks to impair the right of redress of grievances and tends to deprive this defendant of property without due process of law. This defendant company further avers that they are not legally responsible to the plaintiffs under any theory of strict liability for any injury, loss or damages as a result of plaintiffs' contact with, or exposure to, or use of any asbestos insulation product prior to June 28, 1971, when the Louisiana Supreme Court decided *Weber v. Fidelity and Casualty Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971).

10.

In the further alternative, should Louisiana Products Liability law be applicable, defendant specifically aver that this matter is governed by La. R.S. 9:2800.51-2800.59, the "Louisiana Products Liability Act."

11.

Alternatively, should Louisiana Products Liability law be applicable, defendant avers that at the time the product left the defendants' control, the existence of an alternative design was not known or knowable to this defendant from the then-existing, reasonably available scientific and technological knowledge.

12.

In the further alternative, should Louisiana Products Liability law be applicable, defendant avers that an alternative design was not feasible from the reasonably available scientific and technological knowledge which existed at the time the product left the defendants' control.

13.

In the further alternative, should Louisiana Products Liability law be applicable, defendant avers that at the time the product left the defendants' control, the existence of the design characteristics that allegedly caused plaintiffs' damages was not known to these defendants, and was not knowable from the existing reasonably available scientific and technological knowledge.

14.

This defendant company avers that plaintiff's employer(s) was(were) a sophisticated purchaser(s)/user(s) of asbestos-containing products, that the supervisory employees of that company(s) knew or should have known of the precautions to be taken in providing plaintiffs a safe place to work, and that the supervisory employees' negligence or fault in failing to provide plaintiffs a safe place to work was a sole, proximate cause of injury, if any, to plaintiffs.

15.

An award of punitive damages against any of these defendants in this case is prescribed under Louisiana law.  An award of punitive damages would be unconstitutional and in violation of the due process and equal protection clauses of the 14th Amendment of the Constitution of the United States and would violate the Excess Fines Clause of the 8th Amendment of the Constitution of the United States.  Also, plaintiffs claims for punitive damages are barred by the "Double Jeopardy" Clause of the 5th Amendment to the United States Constitution, as applied to the states through the 14th Amendment.

16.

Defendant avers that as a result of the provisions of certain statutes, including 11 USC §362(a), plaintiffs are prohibited from proceeding to get certain parties liable for the damages and injuries complained of and defendant preserve their rights to so proceed.

17.

Further answering, defendant avers that plaintiffs did not inhale asbestos fibers emitted by the normal use of said products, proximately causing the results and/or related abnormalities or alternatively, any other asbestos-related injury.

18.

Further, alternatively, defendant avers that plaintiffs' lung injuries, if any, were caused by substances other than asbestos.

19.

Plaintiffs failed to mitigate their damages, if any.

20.

The plaintiffs' petition is barred by prescription or the passage of time.

**21.**

The plaintiffs' petition fails to state a cause of action against this defendant.

**22.**

The plaintiffs' petition fails to state a right of action against this defendant.

**23.**

This defendant further adopts all affirmative defenses, if any, not specifically set out in this answer but asserted by any other defendants in this case.

**24.**

Defendant asserts the debt, and all liability asserted in plaintiffs' petition and any and all supplemental petitions, has been extinguished, discharged, and/or released.

**25.**

Defendant denies the existence or breach of any warranties, express or implied.

**WHEREFORE,** defendant, Beazer East, Inc., prays that after due proceedings are had, there be judgment in its favor and against plaintiffs, dismissing plaintiffs' action at their cost; and for all other relief as justice and the law may allow.

Respectfully submitted,

**DEUTSCH, KERRIGAN & STILES, L.L.P.**

DOUGLAS R. ELLIOTT                #24402
A. WENDEL STOUT, III              #12511
755 Magazine Street
New Orleans, Louisiana  70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
ATTORNEYS FOR Beazer East, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on counsel for plaintiffs by placing the same in the United States mail, properly addressed and postage prepaid, and on all other counsel of record by electronic transmission, this 13th day of July, 2010.

Douglas R. Elliott

6

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO: 10-5127 DIVISION "B"

WILLIAM CLEVE DAVIDSON

VS.

ADVOCATE MINES, LTD. ET AL

ENTERED RULE DOCKET
FILED:_____

**FILED**
JUL. 1 3 2010
DEPUTY CLERK
CIVIL DISTRICT COURT

DEPUTY CLERK

ANSWER AND EXCEPTIONS OF DEFENDANT
BIRD, INC.

Defendant Bird, Inc., answers and files the following exceptions to plaintiff's

original petition.

**EXCEPTION OF IMPROPER VENUE**

Defendant pleads the exception of Improper Venue in accordance with Louisiana

Code of Civil Procedure Article 925(A)(4).

**EXCEPTION OF NON CONFORMITY**

Defendant excepts to all allegations of fraud and conspiracy which plaintiff has

alleged in the Petition on the grounds that these allegations must be plead with

particularity. Plaintiff has only asserted general fraud and conspiracy allegations against

defendant without alleging the precise fraudulent and/or conspiratorial acts allegedly

committed by defendant. Thus defendant is unable to prepare a defense since it does not

have knowledge of the facts that provide the basis for these allegations.

**EXCEPTION OF *LIS PENDENS***

Defendant pleads *lis pendens* pursuant to Louisiana Code of Civil Procedure

Article 925(A)(3). Defendant is not specifically aware at this point of any earlier filed

lawsuits, but pleads this exception in the event that discovery in this case reveals any

earlier filed lawsuits seeking compensation for Plaintiff's claimed asbestos-related

injuries.

***FORUM NON CONVIENIENS***

Defendant pleads the exception of *Forum Non Convieniens* in accordance with

Louisiana Code of Civil Procedure Article 123. Defendant asserts that the convenience

of the parties, the witnesses and in the interests of justice, transfer of this case to another

JUL 2 6 2010

Parish is warranted given that plaintiff is a resident of said parish and it is expected that the bulk of the witnesses in this case will be from the areas of Bossier City and Shreveport.

## ADOPTION OF EXCEPTIONS OF CO-DEFENDANTS

Defendant adopts all exceptions filed by any defendant in this matter as if filed herein.

## ANSWER TO PLAINTIFF'S ORIGINAL PETITION

Defendant answers plaintiff's original petition as follows:

I.   Defendant has insufficient information to admit or deny paragraphs 1, 3, 4, 5, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 33, 43, 44, 45, 46, 47, 48, 49, 50, 57, 58, 59, 60, 63, and 64, and therefore denies the same.

II.   Defendant denies paragraphs 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 35, 36, 37, 39, 40, 41, 61, and 62.

III.   Defendant denies paragraph 2, although it admits its corporate status.

IV.   Defendant re-asserts all previous answers and defenses in response to paragraphs 17, 21, 30, 32, 34, 38, and 42.

In further answer defendant asserts the following defenses:

### 1.

If plaintiffs sustained physical injury or disability as alleged, it is the result of their own negligence, said acts of negligence consisting of, but not limited to the follows: (1) failing to wear or use protective equipments; (2) failing to properly maintain their protective equipment; (3) failing to adhere to warning labels contained on product; (4) failing to take obvious precautions dictated by reason and common sense for the circumstances; (5) failing to use the products in the manner intended; (6) other acts of negligence to be established at the time of trial.

### 2.

If this Honorable Court should find negligence on the part of this defendant, which is specifically and categorically denied, then plaintiffs' recovery should be completely and entirely barred by plaintiffs' full and complete acts of negligence which is solely responsible for his/her damages.

### 3.

Defendant specifically and categorically deny that plaintiffs ever used products manufactured by this defendant company, and further deny that plaintiffs were ever in the proximity to products manufactured by this defendant company.

### 4.

Defendant manufactured these products with the highest degree of skill and care and in conformity and with the knowledge and skills available to the industry at all times in questions and adheres to all appropriate government and industry standards.

### 5.

If plaintiffs did sustain injury or damages, which is specifically and categorically denied, they are the result of negligence or fault on the part of others whom the defendant had no responsibility or control.

### 6.

If plaintiffs sustained any injury as alleged in the petition, which is specifically denied, said injuries were directly or proximately caused by the negligence of his or her employer, or other parties in failing to convey to them proper instructions and/or precautions for the safe and proper use of insulation materials and said negligence constitutes an intervening, superseding proximate cause of any injury sustained by plaintiffs.

### 7.

Defendant contends that they are entitled to a reduction in the amount for which they may ultimately be held liable in judgment to the plaintiffs or to any co-defendants, if any, to the full extent of any of those parties released herein, commensurate with the responsibility under the laws of indemnity, comparative negligence and/or contribution.

### 8.

In the further alternative, and only in the event plaintiffs should affect recovery herein against these defendant companies, plaintiffs' claims against them should be reduced in proportion to the degree or percentage of negligence or fault attributable to plaintiffs and any third person.

9.

Further, alternatively, any claim based on any theory of strict liability without fault, is unconstitutional, in that it seeks to impair the right of redress of grievances and tends to deprive this defendant of property without due process of law.  This defendant company further avers that they are not legally responsible to the plaintiffs under any theory of strict liability for any injury, loss or damages as a result of plaintiffs' contact with, or exposure to, or use of any asbestos insulation product prior to June 28, 1971, when the Louisiana Supreme Court decided *Weber v. Fidelity and Casualty Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971).

10.

In the further alternative, should Louisiana Products Liability law be applicable, defendant specifically aver that this matter is governed by La. R.S. 9:2800.51-2800.59, the "Louisiana Products Liability Act."

11.

Alternatively, should Louisiana Products Liability law be applicable, defendant avers that at the time the product left the defendants' control, the existence of an alternative design was not known or knowable to this defendant from the then-existing, reasonably available scientific and technological knowledge.

12.

In the further alternative, should Louisiana Products Liability law be applicable, defendant avers that an alternative design was not feasible from the reasonably available scientific and technological knowledge which existed at the time the product left the defendants' control.

13.

In the further alternative, should Louisiana Products Liability law be applicable, defendant avers that at the time the product left the defendants' control, the existence of the design characteristics that allegedly caused plaintiffs' damages was not known to these defendants, and was not knowable from the existing reasonably available scientific and technological knowledge.

**14.**

This defendant company avers that plaintiff's employer(s) was(were) a sophisticated purchaser(s)/user(s) of asbestos-containing products, that the supervisory employees of that company(s) knew or should have known of the precautions to be taken in providing plaintiffs a safe place to work, and that the supervisory employees' negligence or fault in failing to provide plaintiffs a safe place to work was a sole, proximate cause of injury, if any, to plaintiffs.

**15.**

An award of punitive damages against any of these defendants in this case is prescribed under Louisiana law.  An award of punitive damages would be unconstitutional and in violation of the due process and equal protection clauses of the 14th Amendment of the Constitution of the United States and would violate the Excess Fines Clause of the 8th Amendment of the Constitution of the United States.  Also, plaintiffs claims for punitive damages are barred by the "Double Jeopardy" Clause of the 5th Amendment to the United States Constitution, as applied to the states through the 14th Amendment.

**16.**

Defendant avers that as a result of the provisions of certain statutes, including 11 USC §362(a), plaintiffs are prohibited from proceeding to get certain parties liable for the damages and injuries complained of and defendant preserve their rights to so proceed.

**17.**

Further answering, defendant avers that plaintiffs did not inhale asbestos fibers emitted by the normal use of said products, proximately causing the results and/or related abnormalities or alternatively, any other asbestos-related injury.

**18.**

Further, alternatively, defendant avers that plaintiffs' lung injuries, if any, were caused by substances other than asbestos.

**19.**

Plaintiffs failed to mitigate their damages, if any.

**20.**

The plaintiffs' petition is barred by prescription or the passage of time.

**21.**

The plaintiffs' petition fails to state a cause of action against this defendant.

**22.**

The plaintiffs' petition fails to state a right of action against this defendant.

**23.**

This defendant further adopts all affirmative defenses, if any, not specifically set out in this answer but asserted by any other defendants in this case.

**24.**

Defendant asserts the debt, and all liability asserted in plaintiffs' petition and any and all supplemental petitions, has been extinguished, discharged, and/or released.

**25.**

Defendant denies the existence or breach of any warranties, express or implied.

**WHEREFORE,** defendant, Beazer East, Inc., prays that after due proceedings are had, there be judgment in its favor and against plaintiffs, dismissing plaintiffs' action at their cost; and for all other relief as justice and the law may allow.

Respectfully submitted,

**DEUTSCH, KERRIGAN & STILES, L.L.P.**

DOUGLAS R. ELLIOTT            #24402
A. WENDEL STOUT, III          #12511
755 Magazine Street
New Orleans, Louisianan  70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
ATTORNEYS FOR Bird, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on counsel for plaintiffs by placing the same in the United States mail, properly addressed and postage prepaid, and on all other counsel of record by electronic transmission, this 17th day of July, 2010.

Douglas R. Elliott

6

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO: 10-5127                                                  DIVISION "B"

WILLIAM CLEVE DAVIDSON

VS.

ADVOCATE MINES, LTD, ET AL

FILED: _____         _____
                                        DEPUTY CLERK

## ANSWER AND EXCEPTIONS OF DEFENDANT
## CERTAINTEED CORPORATION

Defendant CertainTeed Corporation answers and files the following exceptions to
plaintiff's original petition.

### EXCEPTION OF IMPROPER VENUE

Defendant pleads the exception of Improper Venue in accordance with Louisiana
Code of Civil Procedure Article 925(A)(4).

### EXCEPTION OF NON CONFORMITY

Defendant excepts to all allegations of fraud and conspiracy which plaintiff has
alleged in the Petition on the grounds that these allegations must be plead with
particularity. Plaintiff has only asserted general fraud and conspiracy allegations against
defendant without alleging the precise fraudulent and/or conspiratorial acts allegedly
committed by defendant. Thus defendant is unable to prepare a defense since it does not
have knowledge of the facts that provide the basis for these allegations.

### EXCEPTION OF *LIS PENDENS*

Defendant pleads *lis pendens* pursuant to Louisiana Code of Civil Procedure
Article 925(A)(3). Defendant is not specifically aware at this point of any earlier filed
lawsuits, but pleads this exception in the event that discovery in this case reveals any
earlier filed lawsuits seeking compensation for Plaintiff's claimed asbestos-related
injuries.

### *FORUM NON CONVIENIENS*

Defendant pleads the exception of *Forum Non Convieniens* in accordance with
Louisiana Code of Civil Procedure Article 123. Defendant asserts that the convenience
of the parties, the witnesses and in the interests of justice, transfer of this case to Bossier

Parish is warranted given that plaintiff is a resident of said parish and it is expected that the bulk of the witnesses in this case will be from the areas of Bossier City and Shreveport.

## ADOPTION OF EXCEPTIONS OF CO-DEFENDANTS

Defendant adopts all exceptions filed by any defendant in this matter as if filed herein.

## ANSWER TO PLAINTIFF'S ORIGINAL PETITION

Defendant answers plaintiff's original petition as follows:

I.     Defendant has insufficient information to admit or deny paragraphs 1, 3, 4, 5, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 33, 43, 44, 45, 46, 47, 48, 49, 50, 57, 58, 59, 60, 63, and 64, and therefore denies the same.

II.    Defendant denies paragraphs 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 35, 36, 37, 39, 40, 41, 61, and 62.

III.   Defendant denies paragraph 2, although it admits its corporate status.

IV.    Defendant re-asserts all previous answers and defenses in response to paragraphs 17, 21, 30, 32, 34, 38, and 42.

In further answer defendant asserts the following defenses:

### 1.

If plaintiffs sustained physical injury or disability as alleged, it is the result of their own negligence, said acts of negligence consisting of, but not limited to the follows: (1) failing to wear or use protective equipments; (2) failing to properly maintain their protective equipment; (3) failing to adhere to warning labels contained on product; (4) failing to take obvious precautions dictated by reason and common sense for the circumstances; (5) failing to use the products in the manner intended; (6) other acts of negligence to be established at the time of trial.

### 2.

If this Honorable Court should find negligence on the part of this defendant, which is specifically and categorically denied, then plaintiffs' recovery should be completely and entirely barred by plaintiffs' full and complete acts of negligence which is solely responsible for his/her damages.

2

**3.**

Defendant specifically and categorically deny that plaintiffs ever used products manufactured by this defendant company, and further deny that plaintiffs were ever in the proximity to products manufactured by this defendant company.

**4.**

Defendant manufactured these products with the highest degree of skill and care and in conformity and with the knowledge and skills available to the industry at all times in questions and adheres to all appropriate government and industry standards.

**5.**

If plaintiffs did sustain injury or damages, which is specifically and categorically denied, they are the result of negligence or fault on the part of others whom the defendant had no responsibility or control.

**6.**

If plaintiffs sustained any injury as alleged in the petition, which is specifically denied, said injuries were directly or proximately caused by the negligence of his or her employer, or other parties in failing to convey to them proper instructions and/or precautions for the safe and proper use of insulation materials and said negligence constitutes an intervening, superseding proximate cause of any injury sustained by plaintiffs.

**7.**

Defendant contends that they are entitled to a reduction in the amount for which they may ultimately be held liable in judgment to the plaintiffs or to any co-defendants, if any, to the full extent of any of those parties released herein, commensurate with the responsibility under the laws of indemnity, comparative negligence and/or contribution.

**8.**

In the further alternative, and only in the event plaintiffs should affect recovery herein against these defendant companies, plaintiffs' claims against them should be reduced in proportion to the degree or percentage of negligence or fault attributable to plaintiffs and any third person.

**9.**

Further, alternatively, any claim based on any theory of strict liability without fault, is unconstitutional, in that it seeks to impair the right of redress of grievances and tends to deprive this defendant of property without due process of law.  This defendant company further avers that they are not legally responsible to the plaintiffs under any theory of strict liability for any injury, loss or damages as a result of plaintiffs' contact with, or exposure to, or use of any asbestos insulation product prior to June 28, 1971, when the Louisiana Supreme Court decided *Weber v. Fidelity and Casualty Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971).

**10.**

In the further alternative, should Louisiana Products Liability law be applicable, defendant specifically aver that this matter is governed by La. R.S. 9:2800.51-2800.59, the "Louisiana Products Liability Act."

**11.**

Alternatively, should Louisiana Products Liability law be applicable, defendant avers that at the time the product left the defendants' control, the existence of an alternative design was not known or knowable to this defendant from the then-existing, reasonably available scientific and technological knowledge.

**12.**

In the further alternative, should Louisiana Products Liability law be applicable, defendant avers that an alternative design was not feasible from the reasonably available scientific and technological knowledge which existed at the time the product left the defendants' control.

**13.**

In the further alternative, should Louisiana Products Liability law be applicable, defendant avers that at the time the product left the defendants' control, the existence of the design characteristics that allegedly caused plaintiffs' damages was not known to these defendants, and was not knowable from the existing reasonably available scientific and technological knowledge.

**14.**

This defendant company avers that plaintiff's employer(s) was(were) a sophisticated purchaser(s)/user(s) of asbestos-containing products, that the supervisory employees of that company(s) knew or should have known of the precautions to be taken in providing plaintiffs a safe place to work, and that the supervisory employees' negligence or fault in failing to provide plaintiffs a safe place to work was a sole, proximate cause of injury, if any, to plaintiffs.

**15.**

An award of punitive damages against any of these defendants in this case is prescribed under Louisiana law. An award of punitive damages would be unconstitutional and in violation of the due process and equal protection clauses of the 14th Amendment of the Constitution of the United States and would violate the Excess Fines Clause of the 8th Amendment of the Constitution of the United States. Also, plaintiff's claims for punitive damages are barred by the "Double Jeopardy" Clause of the 5th Amendment to the United States Constitution, as applied to the states through the 14th Amendment.

**16.**

Defendant avers that as a result of the provisions of certain statutes, including 11 USC §362(a), plaintiffs are prohibited from proceeding to get certain parties liable for the damages and injuries complained of and defendant preserve their rights to so proceed.

**17.**

Further answering, defendant avers that plaintiffs did not inhale asbestos fibers emitted by the normal use of said products, proximately causing the results and/or related abnormalities or alternatively, any other asbestos-related injury.

**18.**

Further, alternatively, defendant avers that plaintiffs' lung injuries, if any, were caused by substances other than asbestos.

**19.**

Plaintiffs failed to mitigate their damages, if any.

**20.**

The plaintiffs' petition is barred by prescription or the passage of time.

**21.**

The plaintiffs' petition fails to state a cause of action against this defendant.

**22.**

The plaintiffs' petition fails to state a right of action against this defendant.

**23.**

This defendant further adopts all affirmative defenses, if any, not specifically set out in this answer but asserted by any other defendants in this case.

**24.**

Defendant asserts the debt, and all liability asserted in plaintiffs' petition and any and all supplemental petitions, has been extinguished, discharged, and/or released.

**25.**

Defendant denies the existence or breach of any warranties, express or implied.

WHEREFORE, defendant, Beazer East, Inc., prays that after due proceedings are had, there be judgment in its favor and against plaintiffs, dismissing plaintiffs' action at their cost; and for all other relief as justice and the law may allow.

Respectfully submitted,

**DEUTSCH, KERRIGAN & STILES, L.L.P.**

DOUGLAS R. ELLIOTT                    #24402
A. WENDEL STOUT, III                   #12511
755 Magazine Street
New Orleans, Louisianan  70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
ATTORNEYS FOR CertainTeed Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on counsel for plaintiffs by placing the same in the United States mail, properly addressed and postage prepaid, and on all other counsel of record by electronic transmission, this _13th_ day of _July_, 2010.

Douglas R. Elliott

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.  2010-05127                                          SECTION "15-B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL

FILED: _____

                                    DEPUTY CLERK _____

EXCEPTIONS AND ANSWER

Eagle, Inc., responds to plaintiff's petition for damages in the captioned matter as follows:

EXCEPTION OF VAGUENESS

Eagle pleads the dilatory exception of vagueness pursuant to the Louisiana Code of Civil Procedure Article 926 on the basis that plaintiff has failed to make specific allegations as to Eagle and has accordingly failed to identify the theories of liability being pursued against Eagle as well as the alleged products to which plaintiff was allegedly exposed which plaintiff contends were sold and/or manufactured by Eagle.

EXCEPTION OF NON-CONFORMITY

Eagle pleads the dilatory exception of non-conformity pursuant to Article 926(4) of the Louisiana Code of Civil Procedure, on the basis that to the extent plaintiff intends to allege fraud and/or a conspiracy, he has failed to state with particularity the circumstances which support such claims as required by Article 856 of the Louisiana Code of Civil Procedure.

EXCEPTION OF IMPROPER VENUE

Out of an abundance of caution, Eagle pleads the declinatory exception of improper venue.

EXCEPTION OF NO CAUSE OR RIGHT OF ACTION

Plaintiff has failed to allege a cause or right of action against Eagle.

## EXCEPTION OF LIS PENDENS

FILED

Out of an abundance of caution, Eagle pleads the declinatory exception of lis pendens pursuant to the Louisiana Code of Civil Procedure Article 925(3).

NOW, Eagle pleads the following affirmative defenses:

1.

If plaintiff sustained physical injury or disability as alleged, it is the result of his own negligence, said acts of negligence consisting of, but not limited to the following: (1) failing to wear or use protective equipment; (2) failing to properly maintain his protective equipment; (3) failing to adhere to warning labels contained on product; (4) failing to take obvious precautions dictated by reason and common sense under the circumstances; (5) failing to use the products in the manner intended; (6) other acts of negligence to be established at the time of the trial.

2.

If this Court should find negligence on the part of this defendant, which is specifically denied, then plaintiff's recovery should be completely and entirely barred by plaintiff's full and complete acts of negligence which are solely responsible for his damages.

3.

Defendant specifically denies that plaintiff ever used products supplied or manufactured by it and further denies that plaintiff was in proximity to products supplied or manufactured by this defendant.

4.

If plaintiff did sustain injuries or damages, which is specifically denied, they are the result of negligence or fault on the part of others for whom this defendant had no responsibility or control.

2

FILED

5.

Defendant contends that it is entitled to a reduction in the amount for which it may ultimately be held liable in judgment to the plaintiff or to any co-defendants, which liability is denied, to the full extent of any and all of those parties released herein, commensurate with the responsibility under the laws of indemnity, comparative negligence and/or contribution.

6.

In the further alternative, and only in the event plaintiff should effect recovery herein against this defendant, plaintiff's claims against it should be barred, or in the alternative, reduced in proportion to the degree or percentage of negligence of fault attributable to plaintiff and any third person.

7.

In the further alternative, should Louisiana Products Liability law be applicable, defendant specifically avers that this matter is governed by La. R.S. 9:2800.51 - 2800.59, the "Louisiana Products Liability Act."

8.

Defendant asserts the debt, and all liability asserted in plaintiff's petition and any and all supplemental petitions, has been extinguished, discharged and/or released.

9.

In the further alternative, plaintiff failed to mitigate his damages, if any.

10.

Plaintiff's claims are prescribed or perempted.

11.

This defendant further adopts all affirmative defenses, if any, not specifically forth in this answer but asserted by any other defendant in this case.

3



12.

Defendant denies the existence or breach of any warranties, express or implied.

13.

Alternatively, if any injuries or illnesses were sustained by the plaintiff, which are denied, or illnesses resulted from conditions, hazards, or dangers that were not known to this defendant, and which should not have or could not have been known by this defendant at the time of the plaintiff's exposure to those products which are alleged to have caused the plaintiff's injuries or illnesses.

14.

In the alternative, the defendant avers that if the Louisiana Products Liability Act is applicable, then the defendant urges that at the time this defendant actually allegedly distributed, sold, manufactured, and/or installed any asbestos-containing product, the existence of an alterative design for that product was not known or knowable to this defendant, based on the then-existing and reasonably available scientific and/or technical knowledge.

15.

In the alternative, the defendant avers that if the Louisiana Products Liability Act is applicable, the defendant urges that at the time the products it allegedly distributed, sold, manufactured, and/or installed left the defendant's control, the existence of the specific design characteristic that allegedly caused the plaintiff's damage was not known to this defendant, and was not knowable to this defendant, based on the then-existing and reasonably available scientific and/or technical knowledge.

16.

In the alternative, the defendant specifically invokes the "state of the art" defense.

NOW, Eagle in answer to the allegations of plaintiff's petition, with respect represents:

4

FILED

1.

The allegations of paragraph 1 are denied for lack of sufficient information to justify a belief therein.

2.

The allegations of paragraph 2 are denied except to admit that Eagle is a Louisiana corporation.

3.

The allegations of paragraph 3 are denied except to admit the status of Eagle.

4.

The allegations of paragraph 4 are denied except to admit the status of Eagle.

5.

The allegations of paragraphs 5, 6, 7, 8 and 9 are denied.

6.

The allegations of paragraphs 10, 11, 12, 13, 14, 15 and 16 to the extent directed to Eagle are denied.  The remaining allegations are denied for lack of sufficient information to justify a belief therein.

7.

The allegations of paragraphs 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 and 29 are denied for lack of sufficient information to justify a belief therein.

8.

The allegations of paragraphs 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40 and 41 to the extent directed to Eagle are denied.  The remaining allegations are denied for lack of sufficient information to justify a belief therein.

9.

The allegations of paragraphs 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59 and 60 are denied for lack of sufficient information to justify a belief therein.

FILED

10.

The allegations of paragraphs 61, 62, 63 and 264 are denied.

WHEREFORE, defendant, Eagle, Inc., prays for judgment herein in its favor and against plaintiff, dismissing plaintiff's demands, with prejudice, at plaintiff's costs.

Respectfully submitted,

*Susan B Kohn*

Susan B. Kohn (#14501)
Douglas R. Kinler (#24143)
Michael D. Harold (#20563)
James R. Guidry (#26311)
SIMON, PERAGINE, SMITH & REDFEARN
30th Floor - Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-3000
(504) 569-2030

Attorneys for Eagle, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record by depositing a copy of same in the United States mail, properly addressed and postage prepaid and/or via e-mail, to each of them at their respective offices on this _25_ day of _June_, 2010.

*Susan B Kohn*

N:\DATA\P\EAGLE\142722825\Pleadings\answer.wpd

6

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO. **10-5127**                                    DIVISION **"B"**

**WILLIAM CLEVE DAVIDSON**

VERSUS

**ADVOCATE MINES, LTD, ET AL**

FILED:_____

```
┌─────────────────────────────┐
│  F I L E D                   │
│  JUN 1 8 2010                │
│     DEPUTY CLERK             │
│  CIVIL DISTRICT COURT        │
└─────────────────────────────┘
```

DEPUTY CLERK

### EXCEPTIONS, ANSWER, AND AFFIRMATIVE DEFENSES OF LENNOX INDUSTRIES, INC., TO PLAINTIFF'S ORIGINAL PETITION FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes defendant, Lennox Industries, Inc. (hereinafter **"Lennox"**), who asserts the following Exceptions, Affirmative Defenses, and Answers to Plaintiff's Original Petition for Damages and respectfully avers as follows:

**I.**

### EXCEPTION OF NO CAUSE OF ACTION

Plaintiff's Petition for Damages fails to state a right of cause of action against this Defendant for which relief can be granted. More particularly, Plaintiff's exclusive remedy is under the Louisiana Workers' Compensation Act.

**II.**

### EXCEPTION OF VAGUENESS

Plaintiff's Petition for Damages is too vague to allow Defendant to safely plead and Plaintiff should, therefore, be required to amend his vague allegations. All open-ended allegations must be amended or ordered stricken from the pleadings.

## III.

## EXCEPTION OF LIS PENDENS

Defendant raises this Exception of Lis Pendens to Plaintiffs' Petition for Damages in order to preserve the exception, based upon the information, as yet undiscovered, that would reveal that Plaintiff has another suit or suits pending against this Defendant arising from this same alleged injury.

## IV.

## EXCEPTION OF PRESCRIPTION

Plaintiff's claims are time barred by prescription, preemption and/or laches.

## V.

## EXCEPTION OF FAILURE TO JOIN INDISPENSABLE PARTIES

Defendant excepts to Plaintiffs' Petition of Damages on the basis that Plaintiff has failed to join indispensable parties.

## VI.

## EXCEPTION OF NON-CONFORMITY

Defendant pleads the dilatory exception of non-conformity pursuant to Article 891 of the Louisiana Code of Civil Procedure due to Plaintiff's failure to adequately assert the grounds for fraud against Defendant as required by Article 856 of the Louisiana Code of Civil Procedure.

## VII.

## EXCEPTION OF IMPROPER CUMULATION

Defendant submits this Exception for the reasons more fully set forth in Lennox's Memorandum in Support of the Exceptions filed herewith.

**WHEREFORE**, defendant, Lennox Industries, Inc., prays that its exceptions herein be maintained, dismissing Plaintiffs' claims with prejudice and at Plaintiffs' costs, and for such further relief which equity under law to which this Defendant may be entitled.

Exceptions, Answer, et al
f/o/b of Lennox

* * * * *

## ANSWER TO ORIGINAL PETITION FOR DAMAGES

And now for Answer to the Plaintiff's Petition for Damages, comes Defendant Lennox whom, without waiving the aforementioned Exceptions, respectfully avers as follows:

### 1.

The allegations contained in Paragraph 1 of Plaintiff's Petition for Damages are denied for lack of sufficient present information to justify a belief therein.

### 2.

The allegations contained in Paragraph 2 of Plaintiff's Petition for Damages are denied, except to admit to the status of Lennox, a foreign corporation, authorized to do business in the State of Louisiana.

### 3.

The allegations contained in Paragraph 3 of Plaintiff's Petition for Damages are denied.

### 4.

The allegations contained in Paragraph 4 of Plaintiff's Petition for Damages are denied.  In further answering, Defendant demands strict proof of each and every allegation contained therein..

## BACKGROUND

### 5.

The allegations contained in Paragraph 5 of Plaintiff's Petition for Damages are denied.  In further answering, Defendant demands strict proof of each and every allegation contained therein.

### 6.

The allegations contained in Paragraph 6 of Plaintiffs' Petition for Damages are denied for lack of sufficient present information to justify a belief

Exceptions, Answer, et al
f/o/b of Lennox
                                        Page 3 of 31

therein.  In further answering, Defendant demands strict proof of each and every allegation contained therein.

### 7.

The allegations contained in Paragraph 7 of Plaintiffs' Petition for Damages are denied.  In further answering, Defendant demands strict proof of each and every allegation contained therein.

### 8.

The allegations contained in Paragraph 8 of Plaintiffs' Petition for Damages are denied.  In further answering, Defendant demands strict proof of each and every allegation contained therein.

### 9.

The allegations contained in Paragraph 9 of Plaintiff's Petition for Damages are denied.  In further answering, Defendant demands strict proof of each and every allegation contained therein.

## <u>COUNT ONE</u>

### 10.

To the extent the allegations contained in Paragraph 10 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied.  To the extent the allegations contained in Paragraph 10 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.  Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

### 11.

To the extent the allegations contained in Paragraph 11 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied.  To the extent the allegations contained in Paragraph 11 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is

required. Insofar as a response may be required, the truth of those allegations
is denied for lack of sufficient information to justify a belief therein.

12.

To the extent the allegations contained in Paragraph 12 of Plaintiff's
Petition for Damages may be construed to pertain to Lennox, those allegations
are denied. To the extent the allegations contained in Paragraph 12 of Plaintiff's
Petition for Damages pertain to defendants other than Lennox, no response is
required. Insofar as a response may be required, the truth of those allegations
is denied for lack of sufficient information to justify a belief therein.

13.

To the extent the allegations contained in Paragraph 13 of Plaintiff's
Petition for Damages may be construed to pertain to Lennox, those allegations
are denied. To the extent the allegations contained in Paragraph 13 of Plaintiff's
Petition for Damages pertain to defendants other than Lennox, no response is
required. Insofar as a response may be required, the truth of those allegations
is denied for lack of sufficient information to justify a belief therein.

14.

To the extent the allegations contained in Paragraph 14 of Plaintiff's
Petition for Damages may be construed to pertain to Lennox, those allegations
are denied. To the extent the allegations contained in Paragraph 14 of Plaintiff's
Petition for Damages pertain to defendants other than Lennox, no response is
required. Insofar as a response may be required, the truth of those allegations
is denied for lack of sufficient information to justify a belief therein.

15.

To the extent the allegations contained in Paragraph 15 of Plaintiff's
Petition for Damages may be construed to pertain to Lennox, those allegations
are denied. To the extent the allegations contained in Paragraph 15 of Plaintiff's
Petition for Damages pertain to defendants other than Lennox, no response is

Exceptions, Answer, et al
f/o/b of Lennox
Page 5 of 31

required. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

### 16.

To the extent the allegations contained in Paragraph 16 of Plaintiff's Petition for Damages, including but not limited to, subparts (a) through (h), may be construed to pertain to Lennox, those allegations are denied. To the extent the allegations contained in Paragraph 16 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required. Insofar as a response may be required, the truth of those allegations is denied.

### COUNT TWO

### 17.

The allegations contained in Paragraph 17 of Plaintiff's Petition for Damages incorporate by reference prior allegations in this Petition, and no response is required. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

### 18.

The allegations contained in Paragraph 18 of Plaintiff's Petition for Damages pertain to claims against defendants other than Lennox and therefore require no response. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

### 19.

The allegations contained in Paragraph 19 of Plaintiff's Petition for Damages pertain to claims against defendants other than Lennox and therefore require no response. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

### 20.

The allegations contained in Paragraph 20 of Plaintiff's Petition for Damages, including but not limited to, subparts (a) through (e), pertain to claims

against defendants other than Lennox and therefore require no response. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

## COUNT THREE

### 21.

The allegations contained in Paragraph 21 of Plaintiff's Petition for Damages pertain to claims against defendants other than Lennox and therefore require no response. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

### 22.

The allegations contained in Paragraph 22 of Plaintiff's Petition for Damages pertain to claims against defendants other than Lennox and therefore require no response. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

## COUNT FOUR

### 23.

To the extent the allegations contained in Paragraph 23 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in Paragraph 23 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

### 24.

To the extent the allegations contained in Paragraph 24 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in

Paragraph 24 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

### 25.

To the extent the allegations contained in Paragraph 25 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied.  In further answering, Lennox demands strict proof of each and every allegation contained therein.  To the extent the allegations contained in Paragraph 25 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

### 26.

To the extent the allegations contained in Paragraph 26 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied.  In further answering, Lennox demands strict proof of each and every allegation contained therein.  To the extent the allegations contained in Paragraph 26 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

### 27.

To the extent the allegations contained in Paragraph 27 of Plaintiff's Petition for Damages, including, but not limited to, subparts (a) through (e) may be construed to pertain to Lennox, those allegations are denied.  In further answering, Lennox demands strict proof of each and every allegation contained therein.  To the extent the allegations contained in Paragraph 27 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

### 28.

To the extent the allegations contained in Paragraph 28 of Plaintiff's Petition for Damages, including, but not limited to, subparts (a) through (f) may be construed to pertain to Lennox, those allegations are denied.  In further

answering, Lennox demands strict proof of each and every allegation contained therein.  To the extent the allegations contained in Paragraph 27 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

29.

To the extent the allegations contained in Paragraph 29 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied.  In further answering, Lennox demands strict proof of each and every allegation contained therein.  To the extent the allegations contained in Paragraph 29 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

**COUNT FIVE**

30.

The allegations contained in Paragraph 30 of Plaintiff's Petition for Damages incorporate by reference prior allegations in this Petition, and no response is required.  Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

31.

The allegations contained in Paragraph 31 of Plaintiff's Petition for Damages, including, bi lack of sufficient information to justify a belief therein.

**COUNT SIX**

32.

The allegations contained in Paragraph 32 of Plaintiff's Petition for Damages incorporate by reference prior allegations in this Petition, and no response is required.  Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

33.

The allegations contained in Paragraph 33 of Plaintiff's Petition for Damages, including, but not limited to, subparts (a) through (h), pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

## COUNT SEVEN

34.

The allegations contained in Paragraph 34 of Plaintiff's Petition for Damages incorporate by reference prior allegations in this Petition, and no response is required. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

35.

To the extent the allegations contained in Paragraph 35 of Plaintiff's Petition for Damages, including, but not limited to, all subparts contained therein, may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in Paragraph 35 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

36.

To the extent the allegations contained in Paragraph 36 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in Paragraph 36 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

37.

To the extent the allegations contained in Paragraph 37 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in Paragraph 37 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

## COUNT EIGHT

38.

The allegations contained in Paragraph 38 of Plaintiff's Petition for Damages incorporate by reference prior allegations in this Petition, and no response is required. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

39.

To the extent the allegations contained in Paragraph 39 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in Paragraph 39 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

40.

To the extent the allegations contained in Paragraph 40 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in Paragraph 40 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

41.

To the extent the allegations contained in Paragraph 41 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in Paragraph 41 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

## COUNT NINE

42.

The allegations contained in Paragraph 42 of Plaintiff's Petition for Damages incorporate by reference prior allegations in this Petition, and no response is required. Insofar as a response may be required, the truth of those allegations is denied for lack of sufficient information to justify a belief therein.

43.

The allegations contained in Paragraph 43 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

44.

The allegations contained in Paragraph 44 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

45.

The allegations contained in Paragraph 45 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

Exceptions, Answer, et al
f/o/b of Lennox
Page 12 of 31

46.

The allegations contained in Paragraph 46 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

47.

The allegations contained in Paragraph 47 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

48.

The allegations contained in Paragraph 48 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

49.

The allegations contained in Paragraph 49 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

50.

The allegations contained in Paragraph 50 of Plaintiff's Petition for Damages, including, but not limited to, subparts A through L, pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

51.

The allegations contained in misnumbered Paragraph 57 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

52.

The allegations contained in misnumbered Paragraph 58 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

53.

The allegations contained in misnumbered Paragraph 59 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

54.

The allegations contained in misnumbered Paragraph 60 of Plaintiff's Petition for Damages pertain to defendants other than Lennox and therefore require no response. Insofar as a response may be required, those allegations are denied for lack of sufficient information to justify a belief therein.

**COUNT TEN**

55.

To the extent the allegations contained in misnumbered Paragraph 61 of Plaintiff's Petition for Damages, including, but not limited to, subparts (a) through (g), may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in

Exceptions, Answer, et al
f/o/b of Lennox

Paragraph 61 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

### 56.

To the extent the allegations contained in misnumbered Paragraph 62 of Plaintiff's Petition for Damages may be construed to pertain to Lennox, those allegations are denied. In further answering, Lennox demands strict proof of each and every allegation contained therein. To the extent the allegations contained in Paragraph 62 of Plaintiff's Petition for Damages pertain to defendants other than Lennox, no response is required.

### 57.

The allegations contained in misnumbered Paragraph 63 of Plaintiff's Petition for Damages are denied for lack of sufficient information to justify a belief therein.

### 58.

The allegations contained in misnumbered Paragraph 64 of Plaintiff's Petition for Damages are denied for lack of sufficient information to justify a belief therein.

### 59.

Plaintiff's prayer for relief does not require a response of Lennox. Insofar as a response may be deemed required, the allegations are denied.

### 60.

Any allegations of fact contained in any unnumbered paragraphs of the Original Petition for Damages are denied.

* * * * *

**IN FURTHER ANSWERING**, defendant Lennox Industries, Inc. (hereinafter "**Lennox**"), respectfully asserts the following affirmative defenses as follows:

**A.**

The Plaintiff's Petition for Damages fails to state a claim and/or cause and/or right of action upon which relief can be granted.

**B.**

The claims asserted herein, in whole or part, are prescribed and/or perempted and/or are barred by the applicable statute of limitations, by prescription, and by the *Doctrine of Laches.*

**C.**

This Defendant affirmatively denies the claimant was ever exposed to and/or was in proximity to any asbestos-containing products manufactured or distributed by Lennox.

**D.**

Further, in the alternative, Lennox avers that any such exposure was *de minimis* and was not sufficient to constitute a cause-in-fact of any harm to claimant, *i.e.,* any such exposure was not a substantial factor in bringing about the claims, injuries and/or damages, the existence of which has been and continues to be denied.

**E.**

Lennox affirmatively denies that the alleged injuries and/or alleged damages were caused by any conduct of Lennox, whether by omission, commission, or on the basis of strict liability, negligence, vicarious liability, assault, or otherwise.

**F.**

It is affirmatively averred that any and all products sold and/or distributed and/or used and/or installed by Lennox were at all times reasonably fit and/or suitable for the purposes for which they were sold and/or distributed and/or used and/or installed.

**G.**

Lennox affirmatively avers that any injuries and/or illnesses and/or damages allegedly suffered as alleged herein, the existence of which has been and continues to be denied, were the result of disease processes unrelated to any products allegedly supplied by Lennox and/or were the results of exposure to substances *other* than products allegedly distributed and/or used and/or installed by Lennox.

**H.**

It is further averred that in the event it is found that the injury and/or damages claimed herein are or were the result of (whether in whole and/or in part), pre-existing/unrelated disabilities and/or injuries and/or illnesses or any aggravation thereof, for which Lennox is and was not responsible, then, in that event, Lennox avers that it is entitled to a reduction of damages by reason of such pre-existing illnesses and/or injuries and/or disabilities.

**I.**

Alternatively, Lennox affirmatively pleads the "state of art" defense and denies the existence of any defects in products sold/or distributed and/or used and/or installed by it. Further, Lennox affirmatively avers that at all pertinent times and any and all products sold and/or distributed and/or used and/or installed by it were reasonable fit and suited for the purposes for which they were sold and/or distributed and/or used and/or installed by this Lennox and were sold and/or distributed and/or used and/or installed with such advices as were consistent with the state of the existing medical and industrial arts.

**J.**

Lennox avers that the Plaintiff misused, abused, abnormally or improperly used some or all of the products referred to in the Petition, and used them in a manner other than that for which they were intended. Such use, abuse, misuse, or abnormal or improper use proximately caused or contributed to, in whole or in

part, the injuries or damages sustained by Plaintiff.  Plaintiff failed to observe and to use ordinary care and caution for his own safety, knowing that the products he used could cause damage if misused and the sole legal cause of his injuries or damages, if any, were at his own negligence, fault or want of care which is imputable to Plaintiff.

K.

Lennox affirmatively denies the damages and injuries as is alleged.  In the event such damages and injuries complained of are determined to have occurred, then Lennox alternatively avers that such injuries or damages were not caused and/or proximately caused by any negligence, fault, breach of duty or other conduct or liability on the part of Lennox, or anyone for whom it may be responsible, but was caused solely through negligence and/or comparative negligence and/or assumption of the risk, including but not limited to, the acts listed below and others to be shown at the time of trial:

1) Failing to exercise reasonable care under the circumstances;

2) Failing to take proper precautions to avoid the alleged injuries and damages.

3) Failing to act as reasonable and prudent persons would under the same circumstances.

4) Failure to use safety devices such as masks and respirators designed and/or provided for breathing in the presence of dust-laden air; alternatively, failure to properly use and maintain such safety devices;

5) Failure to request the use of such masks and respirators or that same be provided.

6) Failure to request blowers or other equipment to remove dust-laden air from the work area.

7) Failure to cease working in an environment of dust-laden air, knowing of the alleged exposure to asbestos insulation products and the danger of inhaling asbestos dust;

8) Knowingly and willingly allowing and/or acquiescing in the exposure to inhalation of particular matter, knowing and/or having reason to know that such inhalation was dangerous to the health and well-being of persons.

9)   Failure to observe warnings and instructions provided for safety and protection;

10)  Continuing and/or allowing the exposure of asbestos, silica and/or other related dust to continue, despite the knowledge of the existence and/or the presence of respiratory ailments;

11)  Misusing and/or misapplying and/or mistreating and/or abusing any products or subjecting products to other than normal usage; and,

12)  Any and all other acts of negligence by omission and/or commission or fault and/or liability which may be shown at the time of trial of this matter.

As a consequence of the foregoing, any recovery herein is either totally barred or, in the further alternative, must be proportionately diminished.

L.

Further answering in the alternative, and only in the event that negligence, fault and/or liability on the part of this Lennox is established, which is expressly denied, then Lennox alternatively avers the existence of contributory and/or comparative negligence, and that such contributory and/or comparative negligence was a contributing proximate cause of the injuries and damages herein sued upon, and that recovery of damages herein is barred and/or mitigated by such contributory and/or comparative negligence.

M.

Lennox specifically avers the failure to mitigate damages, as a consequence of which any recovery herein is either totally barred and/or, in the alternative, must be reduced.  In the further alternative, Lennox avers that the claims for damages herein have not accrued, are purely speculative, uncertain and contingent.

N.

If Plaintiff sustained any injuries or damages as alleged, which is specifically denied, such injuries or damages resulted solely from Plaintiff's use of tobacco products over an extended period of time, and such negligence on the part of Plaintiff, in failing to care for his own health, is the sole legal cause of the

alleged injuries or damages, if any, and acts as a bar to or mitigation of any recovery herein.

## O.

If Plaintiff sustained any injury or damage, which is expressly denied, then such injury or damage was proximately caused or contributed to by exposure to or inhalation of noxious and deleterious fumes and residues from industrial products and by-products prevalent on Plaintiff's job sites and substances not legally connected to Lennox, and by cumulative exposure to all types of environmental and industrial pollutants of air and water.

## P.

Plaintiff failed to observe warnings and instructions that were provided for his safety and protection, and failed to use protective and safety equipment provided to him and available for his use.

## Q.

Further answering, Lennox specifically pleads that the conditions alleged herein were caused by the negligent, wanton, careless or unreasonable conduct of third parties for whom this Lennox is and was not responsible.

## R.

Further, in the alternative, Lennox avers that its liability, if any, which is specifically denied, is purely passive and/or technical, while the liability of others herein is actual and active, thus entitling Lennox to full indemnification from those parties who are actively negligent or at fault.

## S.

In the event any injuries were sustained and/or any illnesses were contracted as a result of any exposure to any product sold and/or distributed and/or used and/or installed by Lennox, all of which has been and continues to be denied, then Lennox affirmatively avers, in the alternative, that such products were sold and/or distributed and/or used and/or installed by Lennox to and/or on

behalf of "sophisticated purchasers and/or users", as a consequence of which any obligation to inform or warn of any potential health hazards associated with any such products was owed by such "sophisticated purchasers and/or users" and or Plaintiff's alleged employers, and not by Lennox and, accordingly, all claims sought to be asserted herein against Lennox are totally barred and/or in the future alternative, are mitigated and/or must be reduced.

**T.**

Lennox specifically avers that it is entitled to a credit/set-off and/or reduction for the fault or liability of any and all defendants who may settle prior to the trial of this matter, for such settling parties' portion of fault and liability and/or pro-rata virile share.

**U.**

Lennox specifically avers that it is entitled to a credit, set-off and/or reduction on the basis of the portion of fault attributable to defendants or entities presently in bankruptcy who may not be joined in this matter and/or that of other persons and/or entities not made a party to this proceeding whose negligence, fault and/or products may be shown to have caused and/or contributed to the injuries, illnesses and/or damages complained of herein.

**V.**

Lennox further avers that to the extent that damages for loss of consortium are claimed, such damages, if any, arose and/or accrued prior to the effective date of amendments to the Louisiana Civil Code which created a cause of action for loss of consortium. Accordingly, such damages are not recoverable as a matter of law and any such claim should be dismissed.

**W.**

Lennox specifically pleads herein any and all defenses available to it under the Louisiana Civil Code, and/or the Louisiana Code of Civil Procedure and further

specifically, Including without limitation, the Louisiana Products Liability Act, La. R.S. 9:2800.51, *et. seq.*, as if same were restated and copied herein.

### X.

Further answering, Lennox denies the existence of or breach of any actual or implied warranties. As to all causes of action pleaded that are based upon express or implied warranties and/or representations, such causes of action are legally insufficient as against Lennox by reason of failure to allege privity of contract between the Plaintiff and Lennox. In any event, no such privity is or was present and no such warranties were made, received and/or relied upon.

### Y.

All necessary and indispensable parties, namely all of the manufacturers, distributors, suppliers, contractors, subcontractors, and other persons, firms, corporations, associations, and groups which allegedly provided asbestos, asbestos-related products, or harmful toxins, or such products in the vicinity, thereby causing or substantially contributing to the alleged damages have not been joined in this litigation. The failure to join such third parties demonstrates that complete relief cannot be accorded among those who are now parties to this suit. The failure to join other necessary and indispensable parties subjects Lennox to the substantial risk of incurring double, multiple, and otherwise inconsistent obligations for the damages claimed by Plaintiffs.

### AA.

There was no negligence, gross negligence, willful, wanton, or malicious misconduct, reckless indifference or reckless disregard of rights, or malice (actual, legal or otherwise) on the part of Lennox. Further, Lennox never assumed the negligence, gross negligence, willful, wanton or malicious misconduct, reckless indifference or reckless disregard of rights, or malice (actual, legal or otherwise) by contract or otherwise.

BB.

If judgment against Lenox, by operation of law or otherwise, is entered and/or recovered, Lennox will be entitled to a judgment for contribution and/or indemnity over and against its co-defendants, their agents, servants and/or employees, by reason of their carelessness, recklessness and/or negligence, (including without limitation, misuse, abuse, mistreatment, misapplication of products) for the amount of any such recovery, or a portion thereof, in accordance with principles of law regarding apportionment of fault and damages, along with costs, disbursements and reasonable expenses of the investigation and defense of this action, including reasonable attorney's fees.

CC.

If it is proven at the time of trial that Lennox is liable for damages, if any, all of which has been and continues to be specifically denied, said liability is not sole but rather proportionate or alternatively joint and several between or among Lennox and one or more of the other defendants and/or person(s) or entity(ies) not a party hereto, and consequently, Lennox is entitled to have its liability, if any, limited to its virile share, or, alternatively, is entitled to contribution and/or indemnity from such other defendant(s), person(s) and/or entity(ies) based on comparative fault and/or vicarious liability.

DD.

Further answering, in the alternative, any claim based on any theory of strict liability or liability without fault, is unconstitutional in that it seeks to impair the redress of grievances and attempts to deprive Lennox of property without due process of law. Lennox further avers that it is not legally responsible under any theory of strict liability for any such injury, loss of damages, as a result of the alleged contact with, or exposure to, or use of any asbestos-containing product prior to June 28, 1971, when the Louisiana Supreme Court decided the

case of *Weber v. Fidelity and Casualty Co. of New York*, 250 So. 2d 754 (La. 1971).

### EE.

If any products sold or installed by Lennox which give rise to the claims asserted herein were sold or installed pursuant to or in accordance with standards and/or specifications mandated by the United States Government or its agencies, the knowledge of the United States Government and its agencies of any possible health hazards from use of any such products was equal or superior to that of Lennox by reason thereof, Lennox is entitled to assume any immunity from liability which exists in favor of the United States Government and/or its agencies. Further, if the standards and specifications of the United States Government and its agencies created a dangerous condition, the United States Government and/or its agencies knew and/or should have known and should have, but did not, educate and/or warn of such dangerous condition(s). Said failure to do so was the overriding, superseding, intervening and proximate cause of the alleged injuries and/or damages, if any, as claimed herein.

### FF.

In the further alternative, Lennox avers the materials and products furnished were in conformance with specifications provided to it and/or mandated by the plant site owners, and to the extent that the materials and products provided by it were accepted more than ten years before judicial demand, any claim arising out of those materials and/or products is barred by the peremption in accordance with Louisiana Revised Statutes Section 9:2772.

### GG.

Lennox specifically and affirmatively avers that any all products sold and/or installed by it were at all times reasonably fit and suitable for the purposes for which they were sold and intended and Lennox denies that any such products released any asbestos fibers so as to cause asbestos-related

disease, or that such products were in any way defective for the use for which they were sold or installed.

HH.

As a result of warning labels, industry pamphlets, and other information disseminated by, plant site owners, manufacturers, unions and others, the various properties of asbestos products and the proper care and handling of same were known and/or should have been known by claimant. The use and application of such products by plaintiff in the face of such warnings constituted comparative negligence thereby relieving Lennox from any liability whatsoever.

II.

At the time of the injuries alleged herein, plaintiff was employed and may have been entitled to receive workers' compensation benefits from his employers. If the conditions as alleged are found to have existed, which as to Lennox is denied, the employers of plaintiff were negligent and careless in and about the matters referred to, and said negligence on the part these employers proximately caused or contributed to the injuries and damages, if any, complained of herein and further, these employers assumed the risk of the injury to the plaintiff, if any, in that at the time and place of the incident such conditions, if any, were open and apparent and were fully known to the plaintiff's employers and by reason thereof, Lennox is entitled to set off any compensation benefits received or to be received by the claimants against any judgment which may be rendered herein.

JJ.

Lennox maintains the plaintiff was not present at a premises owned or operated by Lennox as alleged within the Original Petition for Damages.

KK.

If any alleged asbestos-containing products used on a premises allegedly owned and/or operated by Lennox was involved in any manner alleged in any of

the causes of action alleged in the Petition, Lennox asserts that it was or became so involved only because the product was abused, misused, or otherwise substantially altered or changed in its condition by others for whom Lennox is not responsible. Lennox cannot be held liable for any injury or disease caused by any such abuse, misused, or alternation.

LL.

Plaintiff never came in contact with and was not otherwise ever exposed to asbestos located on Lennox's premises. Even if plaintiff came in contact with asbestos located on Lennox's premises, which is expressly and specifically denied, any such exposure was within acceptable standards as promulgated by federal and state regulatory authorities.

MM.

Plaintiff has failed to join all necessary parties to this action.

NN.

All of plaintiff's alleged injuries, if any, were caused by the fault, negligence and/or strict liability of persons, companies and/or entities other than Lennox, or by persons and/or entities for whom Lennox cannot be held responsible. The aforementioned fault and/or strict liability precludes and/or decreases any damages due plaintiff.

OO.

Lennox maintain plaintiff's claims are precluded in whole or in part by release, compromise, accord and/or satisfaction.

PP.

In the event it is judicially determined Lennox possessed a legal obligation or duty to provide warnings to plaintiff, which is specifically denied, then such warnings were adequate and fulfilled any obligation or duty charged to Lennox.

QQ.

In the event it is judicially determined the doctrine of strict liability is applicable in this case, which is specifically denied, then Lennox is absolved of liability pursuant to the defenses of the active fault of co-defendants or persons, companies or entities not parties to this litigation.

RR.

In the event it is judicially determined Lennox manufactured, owned, supplied, stored, shipped, handled or transported asbestos-containing products, which is specifically denied, Lennox at all times relevant operated in strict adherence to any and all applicable local, state, or federal health, safety, governmental, and industry standards and/or regulations. Further, Lennox at all times operated in accordance with the state of the medical and scientific knowledge and published materials outlining same.

SS.

Lennox maintains all damages and injuries allegedly sustained by plaintiff, if any, were the result of an intervening and/or superseding cause(s) that was the sole and/or proximate cause of plaintiff's alleged damages and injuries.

TT.

Lennox maintains plaintiff's claims are precluded, in whole or in part, in the event such claims resulted from unforeseeable acts or conditions.

UU.

Lenox maintains plaintiff's claims are precluded, in whole or in part, if such claims resulted from acts or condition that were compliant with applicable state, local or federal regulations and/or provisions of law.

VV.

Lennox specifically denies it is in anyway responsible to plaintiff. In the event Lennox is found responsible, it is entitled to have the fault or liability of all defendants, including but not limited to those who have settled with plaintiff

Exceptions, Answer, et al
f/o/b of Lennox
Page 27 of 31

prior to or subsequent of judgment, and all other persons or entities allocated with fault or liability, including but not limited to, persons and/or entities, including bankrupt entities, reduced to the extent the aforementioned are apportioned such fault or liability.

### WW.

The Original Petition for Damages is vague to the extent the pleading fails to describe the claims against Lennox with sufficient particularity to enable it to determine what defenses it has in this matter. Lennox therefore reserves its right to raise all defenses which may be pertinent once the precise nature of the claims are ascertained through discovery or through amendments to pleadings.

### XX.

Lennox maintains plaintiff's Original Petition for Damages does not allege with specificity claims of misrepresentation, fraud, and/or fraudulent concealment and therefore has not alleged requisite facts to pursue its claims against Lennox.

### YY.

Lennox maintain that any injuries and/or damages alleged were unavoidable and occurred without any negligence on the part of Lennox. The occurrence in question was the result of events and conditions for which Lennox was not responsible.

### AAA.

Lennox reserves its right to amend its answer to maintain any additional affirmative defenses that may become available during discovery or subsequently leading up to trial.

### BBB.

In the event any of Lennox's affirmative defenses are in some way inconsistent, contradictory, or mutually exclusive, then Lennox pleads such

inconsistent, contradictory, or mutually exclusive affirmative defenses in the alternative.

## CCC.

Lennox reserves the right to file additional Answers, Third-Party Complaints, Counter-Claims or Cross-Claims, such as the facts may later disclose and require.

## DDD.

Defendant, Lennox, re-alleges and re-affirms all of the defenses and affirmative defenses filed by any co-defendant in this litigation, as if copied herein *in extenso*. Lennox further re-alleges and re-affirms all exceptions and affirmative defenses which have been filed by other parties as if copied herein *in extenso* and re-urges and reserves the right to argue those exceptions and affirmative defenses at the appellate level.  Further, Lennox respectfully pleads any and all other defenses and/or affirmative defenses available to it under applicable law and respectfully reserves the right to supplement and/or amend its answer as may hereinafter be appropriate.

**WHEREFORE**, premises considered, defendant Lennox Industries, Inc., prays that this Court maintain its Exceptions or, in the alternative for trial by jury, and that this, its Answer to Plaintiff's Petition for Damages, be deemed good and sufficient, and that after all due proceedings had, there be judgment in its favor and against plaintiff.  Lennox also prays that all costs of this proceeding be cast upon plaintiff, and for all general and equitable relief allowed by law.

Respectfully submitted,

DUNCAN, COURINGTON & RYDBERG, L.L.C.

KAYE N. COURINGTON (Bar #18582)
NEY J. GEHMAN (Bar #26490)
400 Poydras Street, Suite 1200
New Orleans, LA 70130
Telephone: (504) 524-5566
*Attorneys for Lennox Industries, Inc.*

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that I have on this \_\_18th\_\_ day of June, 2010, placed a copy of the foregoing pleading in the United States Mail, properly addressed and first class postage prepaid to all known counsel of record.

**PLEASE SERVE:**

**Plaintiff**
Through his counsel of record,
Mickey P. Landry, Esq.
Frank J. Swarr, Esq.
David R. Cannella, Esq.
Philip C. Hoffman, Esq.
Landry & Swarr, LLC
1010 Common St., Ste. 2050
New Orleans, LA 70112
T: (504) 299-1214/F: (504) 299-1215
And
Waters & Kraus, LLP
3219 McKinney Ave.
Dallas, TX 75204
T: (214) 357-6244/F: (214) 357-7252

Exceptions, Answer, et al
f/o/b of Lennox                          Page 30 of 31

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

CASE NO. 2010-5127                                        DIVISION "B"

WILLIAM CLEVE DAVIDSON

**VERSUS**

ADVOCATE MINES, LTD., ET AL

FILED: _____        _____
                                                **DEPUTY CLERK**

## RHEEM MANUFACTURING COMPANY'S EXCEPTIONS, ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes defendant, Rheem Manufacturing Company (hereinafter "Rheem"), which in response to Plaintiffs' Original Petition for Damages asserts the following Exceptions, Answer and Affirmative Defenses:

### EXCEPTIONS

#### 1. Lis Pendens

Rheem has not had the opportunity to research any prior claims which may have been filed by plaintiff asserting the same or similar causes of action as set forth in plaintiffs' Petition for Damages. Therefore, out of an abundance of caution, and to preserve the exception, Defendant asserts the exception of Lis Pendens.

#### 2. Non-Conformity

Rheem asserts the exception of Non-Conformity. Specifically, Defendant asserts that Plaintiff's petition fails to provide a concise statement of material facts which are the subject of this litigation pursuant to the requirements of LSA-C.C.P. Art. 891. To the extent that plaintiff's pleadings may be construed as to constitute allegations of fraud against this defendant, Rheem asserts the exception of Non-Conformity in conjunction with LSA-C.C.P. Art. 926(4), 856 and 891.

#### 3. Vagueness and Ambiguity

Rheem asserts that Plaintiff's Petition for Damages is impermissibly vague and ambiguous. Specifically, Plaintiff's petition fails to identify a particular product or products allegedly manufactured or distributed by Rheem which allegedly contributed to plaintiff's purported injuries.

#### 4. Venue

Rheem excepts as to Venue.

## ANSWER TO PLAINTIFF'S
## ORIGINAL PETITION FOR DAMAGES

**1.**

The allegations contained in Paragraph 1 are denied for lack of sufficient information to justify a belief therein.

**2 - 4.**

The allegations contained in Paragraphs 2 through 4 are denied, except to admit that Rheem is authorized to do business in the State of Louisiana.

## BACKGROUND

**5.**

The allegations contained in Paragraph 5 are denied for lack of sufficient information to justify a belief therein.

**6.**

The allegations contained in Paragraph 6 are denied as to this Defendant.  These allegations are denied for lack of sufficient information to justify a belief therein as to any other defendants.

**7.**

The allegations contained in Paragraph 7 are denied.

**8 - 9.**

The allegations contained in Paragraphs 8 and 9 are denied as to this Defendant.  These allegations are denied for lack of sufficient information to justify a belief as to any other defendants.

## COUNT ONE
## ALLEGATIONS AGAINST MANUFACTURING
## AND EQUIPMENT DEFENDANTS

**10 - 16.**

The allegations contained in Paragraphs 10 through 16 are denied as to this Defendant.  These allegations are denied for lack of sufficient information to justify a belief therein as to any other defendants.

## COUNT TWO
## ALLEGATIONS AGAINST EMPLOYER DEFENDANTS

**17 - 20.**

The allegations contained in Paragraphs 17 through 20 do not appear to apply to this Defendant.  However, out of an abundance of caution, these allegations are denied.

## COUNT THREE
## ALTER EGO / SINGLE BUSINESS ENTERPRISE
## ALLEGATIONS AGAINST RPM, INC. AND BONDEX INTERNATIONAL, INC.

**21 - 22.**

The allegations contained in Paragraphs 21 and 22 do not appear to apply to this Defendant. However, out of an abundance of caution, these allegations are denied.

## COUNT FOUR
## ALLEGATIONS AGAINST PREMISES DEFENDANTS

**23 - 29.**

The allegations contained in Paragraphs 23 though 29 do not appear to apply to this Defendant.  However, out of an abundance of caution, these allegations are denied.

## COUNT FIVE
## ALLEGATIONS AGAINST SUPPLIER DEFENDANTS

**30 - 31.**

The allegations contained in Paragraphs 30 and 31 do not appear to apply to this Defendant. However, out of an abundance of caution, these allegations are denied.

## COUNT SIX
## ALLEGATIONS AGAINST CONTRACTOR DEFENDANTS

**32 - 33.**

The allegations contained in Paragraphs 32 and 33 do not appear to apply to this Defendant. However, out of an abundant of caution, these allegations are denied.

## COUNT SEVEN
## CONSPIRACY ALLEGATIONS AGAINST ALL DEFENDANTS

**34 - 37.**

The allegations contained in Paragraphs 34 through 37 are denied as to this Defendant.  The allegations are denied for lack of sufficient information to justify a belief therein as to any other defendants.

## COUNT EIGHT
## AIDING AND ABETTING ALLEGATIONS
## AGAINST ALL DEFENDANTS

**38 - 41.**

The allegations contained in Paragraphs 30 though 41 are denied as to this Defendant.  The allegations are denied for lack of sufficient information to justify a belief therein as to any other defendants.

## COUNT NINE
## ALLEGATIONS AGAINST ASBESTOS FIBER SUPPLIERS

**42 - 50.**

The allegations contained in Paragraphs 42 through 50 do not apply to this Defendant. However, out of an abundance of caution, these allegations are denied.

**57 *(sic.)***

The allegations contained in Paragraph 57 *(sic.)* do not apply to this Defendant. However, out of an abundance of caution, these allegations are denied.

**58 - 60.**

The allegations contained in Paragraphs 50 though 60 do not apply to this Defendant. However, out of an abundance of caution, these allegations are denied.

## COUNT TEN
## DAMAGES

**61.**

The allegations contained in Paragraph 61 are denied.

**62.**

The allegations contained in Paragraph 62 are denied as to this Defendant. These allegations are denied for lack of sufficient information to justify a belief therein as to any other defendants.

**63 - 64.**

The allegations contained in Paragraphs 63 and 64 are denied for lack of sufficient information to justify a belief therein.

The allegations contained in the "Wherefore..." Paragraph on page 19 of the Original Petition for Damages are denied.

**AND NOW,** further answering Plaintiff's Original Petition for Damages, Defendant, Rheem Manufacturing Company asserts the following Affirmative Defenses:

## AFFIRMATIVE DEFENSES

**1.**

Rheem avers that plaintiff's claims are barred by his own contributory and/or comparative negligence and assumption of risk, consisting, without limitation, of the following non-exclusive particulars:

    (1)    Failure to properly protect himself against hazards about which he knew or should have known;

(2)     Failure to wear proper protective equipment;

(3)     Failure to follow instructions of his superiors; and

(4)     Any and all other negligent acts or omissions which may be discovered or proved at the trial of this matter.

## 2.

Rheem avers that the injuries and damages alleged in the Petition, which injuries are expressly denied, were caused by the negligence, strict liability or fault of third-parties for whom Rheem may not be liable.

## 3.

Rheem avers that all claims alleged herein against this Defendant, are barred, in whole or in part, by prescription and/or peremption.

## 4.

Rheem avers that the plaintiff did not use any products manufactured, distributed or sold by this Defendant, or, if in fact such products were used, then such products did not cause any damage whatsoever to the plaintiff, or that such use, and any resulting damages are *de minimis*.

## 5.

Rheem avers that plaintiff has failed to mitigate any damages sustained.

## 6.

Rheem avers that its products were safe for normal use, were not defective, and were not unreasonably dangerous.

## 7.

Rheem avers that plaintiff's alleged injuries did not occur as a result of exposure to asbestos, but were proximately caused by other medical conditions, including, but not limited to, health conditions related to tobacco use.

## 8.

Rheem avers that, if plaintiff was exposed to any product manufactured, distributed or sold by Rheem, which is specifically denied, then any alleged injuries resulted solely and proximately from the misuse and/or alteration of such products by the plaintiff and/or others.

## 9.

Rheem avers that it is entitled to a credit for the virile portion of fault attributable to any and all settling defendants and/or non-defendant entities.

10.

Rheem avers that any claim for punitive damages herein is unconstitutional, and is further proscribed under Louisiana law.

11.

Rheem specifically avers that its products were manufactured with the highest degree of skill and care and in conformity with the knowledge and skills available to the industry at all times in question and adhere to all appropriate government and industry standards.

12.

Rheem avers that any claim based on any theory of strict liability or liability without fault is unconstitutional in that it seeks to impair the redress of grievances and intends to deprive Rheem of property without due process of law. Rheem further avers that it is not legally responsible to plaintiff under any theory of strict liability for any injury, loss or damage, as a result of plaintiff's contact with, or exposure to, or use of any asbestos-containing product prior to June 28, 1971, when the Louisiana Supreme Court decided the case of *Weber v. Fidelity & Casualty Company of New York*, 250 So. 2d 754 (La. 1971).

13.

In the alternative, should the court hold that any theory of product liability is applicable in this case, then Rheem specifically avers that this matter is governed by LSA-R.S. 9:2800.51-2800.59, the Louisiana Products Liability Act.

14.

Rheem avers that at the time the product left Rheem's control, the existence of an alternative design was not known or knowable to Rheem or any reasonable manufacturer of similar products from the then-existing reasonably-available scientific and technological knowledge.

15.

Rheem avers that an alternative design satisfying the same demands was not feasible from the reasonably-available scientific and technological knowledge which existed at the time the product was manufactured and left Rheem's control.

16.

Further answering, Rheem avers that any injury or damage suffered by plaintiff in connection with a product manufactured by Rheem, which injuries or damages are specifically denied, did not

-6-

result from the normal or reasonably-anticipated use of any product manufactured, distributed or supplied by Rheem.

**17.**

Rheem avers that plaintiff's employers and/or statutory employers were sophisticated purchasers and/or sophisticated users of the products and, therefore, Rheem had no duty to warn plaintiff or his employers and/or statutory employers of the allegedly dangerous nature of the product.

**18.**

Rheem avers that plaintiff is not entitled under law or contract to an award of attorneys' fees.

**19.**

Rheem did not mine, test, design, evaluate, manufacture or package any products that contained asbestos.  Rheem did not materially assist others in the mining, designing, testing, evaluation, manufacturing, and/or packaging of any such products.

**20.**

Rheem did not suppress, conceal, obscure, discourage, retard, and/or misrepresent information about medical studies or other information concerning an alleged relationship between asbestos exposure and disease.

**21.**

Rheem did not command, direct, advise, encourage, aid, and/or abet others to ignore or actively and/or fraudulently conceal medical studies or other information concerning an alleged relationship between asbestos exposure and disease.

**22.**

Rheem was not engaged in any conspiracy of silence and made no misrepresentations which caused the plaintiff's alleged damages.

**23.**

The plaintiff did not rely on any representations or warranties allegedly made by Rheem.

**24.**

Any products which may have been sold by Rheem which plaintiff alleges caused his damages were altered, improperly used and/or abused.  Such alterations, improper use and/or abuse of products caused plaintiff's damages, if any.

**25.**

The allegations of the petition concerning fraud, fraudulent concealment, concert of action, conspiracy and/or punitive and/or exemplary damages are not stated with the particularity required by Louisiana law.

**26.**

Any award or punitive damages against Rheem in this case would violate the provisions of Louisiana law and the United States Constitution.

**27.**

Rheem reserves the right to supplement and amend its answers and defenses.

**WHEREFORE**, considering the foregoing, Defendant, Rheem Manufacturing Company, prays that its exceptions be maintained, and that this matter be dismissed as to Rheem Manufacturing Company, or, in the alternative, that after due proceedings are had, this matter be dismissed, with prejudice, and at plaintiff's cost.

Respectfully submitted,

**SULZER & WILLIAMS, L.L.C.**

*Lori P. Moser*

RICHARD P. SULZER, #21150
ROBERT E. WILLIAMS, IV, #19217
CHRISTY C. HENDRIX, #29902
CHRISTINA L. FALCO, #31150
LORI P. MOSER, #25463
201 Holiday Boulevard, Suite 335
Covington, Louisiana   70433
Telephone: (985) 898-0608
Facsimile:  (985) 898-0871
Attorneys for Rheem Manufacturing Company

**CERTIFICATE OF SERVICE**

By my signature hereinabove, I hereby certify that a true and correct copy of the above and foregoing pleading has been sent by fax and U.S. Mail, postage pre-paid and properly addressed to counsel for plaintiff this _6th_ day of _August_, 2010, and will be made available to all known defense counsel via electronic mail.

*Lori P. Moser*

-8-

CIVIL DISTRICT COURT FOR THE PARISH OF NEW ORLEANS
STATE OF LOUISIANA

NO. 10-5127                  SECTION                  DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED:_____

_____
DEPUTY CLERK

ORDER

Considering the above and foregoing:

IT IS ORDERED, THAT Michelle B. Whitman be and is hereby admitted *pro hac vice* to

appear and participate as co-counsel for Plaintiff, William Cleve Davidson, in the above captioned

matter.

New Orleans, Louisiana, this ____ day of _____, 2010.

_____
JUDGE, PRESIDING

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF NEW ORLEANS
STATE OF LOUISIANA


EXHIBIT
G

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 10-5127                    SECTION 15                    DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____

_____
DEPUTY CLERK

<u>RULE TO SHOW CAUSE</u>

CONSIDERING the foregoing motion filed on behalf of Plaintiff:

IT IS HEREBY ORDERED that all parties ~~show~~ *appear* ~~cause~~ on the *13th* day of *July*,

2010 at *11:00* o'clock *a.m.* / p.m. ~~why this motion should not be granted.~~ *for a pre-trial conference*

*to select a trial date.* New Orleans, Louisiana, this *24th* day of *June*, 2010.

(Sgd.) Rosemary Ledet
_____
HONORABLE JUDGE ROSEMARY LEDET

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
OF ORLEANS

Plaintiff's Motion Expedited Hearing on Plaintiff's Motion for Preferential Trial Setting– Page 3

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                          DIVISION: "B"

CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

```
FILED
JUN 2 9 2010
DEPUTY CLERK
CIVIL DISTRICT COURT
```

FILED: _____          _____
                                      **DEPUTY CLERK**

**ORDER**

CONSIDERING THE FOREGOING EXCEPTIONS,

IT IS HEREBY ORDERED that Plaintiff appear on the *20th* day of *August*, 2010 at *9* o'clock *A*.m. and show cause why Defendant, AMALGAMATED METAL CORPORATION LIMITED's Exceptions to Plaintiff's Original Petition for Damages should not be granted.

NEW ORLEANS, LOUISIANA, this *7th* day of *July*, 2010.

_____
JUDGE, CIVIL DISTRICT COURT
Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

ENTERED ON MINUTES

JUL 1 4 2010

A TRUE COPY

**PLEASE SERVE:**

**WILLIAM CLEVE DAVIDSON
through his Attorney of Record
David R. Cannella, Bar # 26231
Mickey P. Landry, Bar #22817
Frank J. Swarr, Bar # 23322
Philip C. Hoffman, Bar # 32277
Landry & Swarr, LLC
1010 Common St., Suite 2050
New Orleans, LA 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215**

No copies; date card sent

1933607_1.DOC

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                                           DIVISION: "B"

CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____

                                  DEPUTY CLERK

## ORDER

CONSIDERING THE FOREGOING,

IT IS HEREBY ORDERED that Plaintiff appear on the _20th_ day of _August_, 2010 at _9:00_ o'clock _A_.m. and show cause why Defendant, Georgia-Pacific LLC's Exceptions to Plaintiff's Original Petition for Damages should not be granted.

NEW ORLEANS, LOUISIANA, this _7th_ day of _July_, 2010.

_____
JUDGE, CIVIL DISTRICT COURT
Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

**PLEASE SERVE:**

WILLIAM CLEVE DAVIDSON
through his Attorney of Record
David R. Cannella, Bar # 26231
Mickey P. Landry, Bar #22817
Frank J. Swarr, Bar # 23322
Philip C. Hoffman, Bar # 32277
Landry & Swarr, LLC
1010 Common St., Suite 2050
New Orleans, LA 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215

A TRUE COPY
_____
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

1933710_1.DOC

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2010-5127       DIVISION " B "       SECTION: 15

*Davidson, William*

VERSUS

FILED: _____ *Advocate Mines*

_____

DEPUTY CLERK

## JURY DEPOSIT ORDER PURSUANT TO LA. C.C.P. art. 1734.1

Demand for trial by jury having been made herein and this matter now being set for trial,

IT IS ORDERED that the party requesting trial by jury deposit with the Clerk of Court cash in the amount of $2,000.00 for the first day of trial and $400.00 for each additional day the trial is expected to last, which sum shall be deposited no later than thirty (30) days prior to trial. Trial is set for the 3rd day of *May*, 2011

In the event the case is resolved without the necessity of proceeding to trial by jury, the party depositing the funds shall receive a refund of this deposit as follows:

1.    All of the funds on deposit shall be refunded if the Court is notified by written motion filed with the Clerk of Court, more than 30 days in advance of the trial, indicating that the case is compromised or will proceed to a trial by judge;

2.    All but $600 shall be refunded if the Court is notified by written motion filed with the Clerk of Court more than 72 hours in advance of trial indicating that the case is compromised or will proceed to trial by judge;

3.    Thereafter, in the event the case does not proceed to trial by jury, the Court shall cast an additional $240.00 as costs for the calling of a venire.

4.    If the case proceeds to trial, the remaining funds on deposit shall be used to pay all costs associated with the jury trial including parking, daily compensation, juror meals and miscellaneous expenses. The court may require an additional deposit for costs as needed.

This Order supersedes any prior Jury Order issued in the matter. The Court certifies that a copy of this Order has been served upon all counsel of record and/or parties by hand delivery or by mail.

New Orleans, Louisiana, this 13th day of *July*, 2010

JUDGE

ENTERED ON MINUTES

OCT 26 2010

Received 10-25-10      20___
$ 2,000.00
Butler & Hosch
to be deposited in Registry of Court.
Receipt No. 40761
D. Campbell
Clerk

ENTERED ON MINUTES

OCT 0 5 2010

**VERIFIED**
Kenyata E. Hartford
Deputy Clerk

Adopted: Nov. 10, 2009

*4C marked*

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2010-5127          DIVISION B          SECTION 15

*Davidson, William*

versus

*Advocate Mines*

## PRE-TRIAL ORDER

IT IS ORDERED by this court that all parties and all attorneys comply with the following:

1. All parties (potential and actual) have been served and answered as of the date of the pre-trial conference. (Yes)

2. No other cases are to be consolidated.

3. This is a Judge/Jury Trial

4. The length of the trial shall not exceed ___*2 weeks*___ ~~days~~

5. All supplemental and amending pleadings and incidental demands have been filed and served. After the pre-trial conference, supplemental and amending pleadings and incidental demands may be filed only after contradictory hearing.

6. Plaintiff(s) shall employ all experts and disclose in writing the names and addresses of all witnesses including experts and impeachment witnesses as well as exhibit lists on or before ___*January 4, 2011*___. Failure to disclose such witnesses will preclude their testimony except for good cause shown.

7. Defendant(s) shall employ all experts and disclose in writing the names and addresses of all witnesses including experts and impeachment witnesses as well as exhibit lists on or before ___*January 18, 2011*___. Failure to disclose such witnesses will preclude their testimony except for good cause shown.

*Final Will Call Witness list by February 17, 2011*

8. Plaintiff(s) and Defendant(s) shall complete all discovery by ___*February 3, 2011*___

*All preliminary motions and exceptions including motions in limine shall be filed with the Court on or before ___*March 3, 2011*___ by 4:00pm, and shall be set for hearing no later than 30 → *April 1, 2011* days prior to trial. However, motions in limine shall only be heard on the morning of trial. Motions not heard are deemed abandoned. Note that the Court cannot and does not guarantee the filer of a motion that the motion will be able to be scheduled for hearing because of docket backlog. Accordingly, a mover should file motions substantially early so that a hearing might be timely set.

9. Trial on the merits is scheduled for ___*May 3, 2011*___, at 9:00am.

10. A subsequent settlement conference is scheduled for ___*April 7, 2011*___ at *2:00p*

11. Motions to continue shall be filed within five (5) days of the date of the pre-trial order. Motions to continue after the five (5) days must be set for a contradictory hearing.

12. It may be appropriate to fix deadlines for all of the above at a conference. This order may be updated from time to time because extensions of intermediate deadlines may impact the trial date; extension shall be applied for by contradictory motion. The intent of this order is to lend the assistance of the Court in preparing the case for trial so that it may be resolved with reasonable dispatch.

New Orleans, Louisiana, this ___*13th*___ day of ___*July*___, 20 *10*

_____
Judge Rosemary Ledet

VERIFIED

ENTERED ON MINUTES

SEP 2 __

Dennis E. Hartford
Deputy Clerk

*10.11.10*

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2010-5127          DIVISION "B"          SECTION 15

*Davidson, William*

versus

*Advocate Mines*

## TRIAL ORDER

**IT IS ORDERED THAT:**

1.  The case is fixed for trial on its merits on **May 3, 2011** at **9:00** (am/pm). Attorneys must be present no later than 10 minutes prior to start time and must check in with the Minute Clerk or Court Crier.

2.  The trial date is based on the assertions by counsel in the Motion to Set for Trial on the merits and/or after conference with counsel. The trial will be conducted based on the formation produced from the Pre-Trial Order, that is, the witnesses listed, the discovery, and the exhibits and physical evidence exchanged and marked prior to trial.

3.  All subpoenas shall be ordered with proper instructions and addresses, on or before 30 days prior→ **April 1, 2011** to the above trial date. A witness not properly subpoenaed may testify if the witness voluntarily appears, however, the Court will not compel the attendance or grant any relief for non-attendance. A witness properly subpoenaed who cannot appear at trial shall be deposed and the transcript of that deposition filed of record before the date of the trial. Failure to comply with these requirements may result in a continuance of this case and/or sanctions for failure to follow an order of the Court.

4.  It shall be mandatory for all counsel to confer, not more than 10 days, **April 22, 2011** nor less than 48 hours prior **April 29, 2011** to trial in order to confect stipulations, discuss stipulations, and discuss settlement of the case. If an attorney refuses to meet, or makes himself or herself unavailable, then this matter shall be reported to the Court forthwith.

5.  It shall be mandatory for all counsel to exchange and mark all physical evidence and exhibits prior to the beginning of the trial. Failure to comply with the requirement to exchange and mark exhibits may result in the refusal of the Court to permit their use.

6.  In jury cases, counsel shall submit requested interrogatories **April 26, 2011** and law charges not later than 5 working days prior to trial. All documents should be delivered directly to the judge's chambers, through the judge's law clerk. Receipt is recommended.

7.  In jury cases, The jury fee shall be paid to the Clerk of Court's office prior to the beginning of trial.

8.  In jury cases, each party shall submit to the Court on the morning of trial a list of witnesses to be read to the jury. Any witnesses not listed shall be prohibited from testifying.

9.  Any and all matters which would cause delay of the trial shall be called to the Court's attention immediately. Failure to comply with any part of this Trial Order may result in the loss of a trial by jury. This Trial Order applies to all witnesses except witnesses who may be used only for impeachment. This Trial Order applies to any and all matters and its application shall apply immediately upon knowledge becoming available. Continuances will not be granted if this Trial Order is not strictly complied with.

New Orleans, Louisiana, this **13th** day of **July, 2010**          ENTERED ON MINUTES

OCT 0 8 2010

_____
Judge Rosemary Ledet

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No.:   2010-5127                                           DIV/SEC: "B-8"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL

FILED:_____          _____
                                                         DEPUTY CLERK

### CONSENT JUDGMENT

This matter was set for hearing on Friday, July 23, 2010, pursuant to an Exception of Non-Conformity filed by Defendant, Trane U.S., Inc., formerly known as The Trane Company, in the above-captioned matter. Plaintiff and Defendant, each being represented by their respective counsel of record, have reached an agreement regarding the disposition of said Exception and submit the following Consent Judgment reflecting this agreement.

The Dilatory Exception of Non-Conformity is hereby dismissed as moot. Plaintiff agrees and stipulates that he is not asserting any claims against Trane U. S., Inc., based upon allegations of fraud.

New Orleans, Louisiana, this ____ day _____, of 2010.

_____
                JUDGE

Respectfully submitted,

LANDRY & SWARR, LLC

_____
DAVID R. CANELLA (#26231)
FRANK J. SWARR (#23322)
1010 Common St., Suite 2050
New Orleans, LA 70112
Telephone:   504-299-1214
Facsimile:    504-299-1215

*Attorney for Plaintiff, William Cleve Davidson*

FORMAN PERRY WATKINS KRUTZ & TARDY, LLP

_____
RICHARD D. CRUMP (#30460)
JOSEPH B. MORTON, III (#19072)
BARBARA BOURGEOIS ORMSBY (#27388)
1515 Poydras St., Suite 1300
New Orleans, LA  70112
Telephone:   504-799-4383
Facsimile:    504-799-4384

*Attorneys for Trane U.S., Inc. f/k/a The Trane Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all known counsel of parties to this proceeding by mailing a copy of same to each via hand, facsimile, electronic mail, FedEx or by First Class U.S. mail, properly addressed and postage prepaid on this _20th_ day of July, 2010.

_____
JOSEPH B. MORTON, III

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

CASE NO. 2010-5127

DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL

FILED: _____

**FILED**

AUG - 6 2010

DEPUTY CLERK
CIVIL DISTRICT COURT

_____
DEPUTY CLERK

## ORDER

Considering the foregoing Exceptions filed by Defendant, Rheem Manufacturing Company,

in response to plaintiff's Original Petition for Damages;

IT IS ORDERED, ADJUDGED AND DECREED, that plaintiffs appear and show cause on

the 1st day of October , 2010 at 9 am/pm, why the said Exceptions, filed

on behalf of Rheem Manufacturing Company should not be granted.

New Orleans, Louisiana this 10th day of August , 2010.

_____
JUDGE

Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

**PLEASE DO NOT SERVE:**

A courtesy copy for the foregoing pleading has been sent to counsel for plaintiff(s), listed below
and will be served by this office, pursuant to La. C.C.P. Art. 1313(c) after we have received our
conformed copies back from the court.

David R. Cannella
**LANDRY & SWARR, LLC**
1010 Common Street, Suite 2050
New Orleans, LA 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                    DIVISION: "B"

CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____    _____
                                     DEPUTY CLERK

### CONSENT JUDGMENT

Defendant, Georgia-Pacific LLC, (hereinafter "GP" or "Defendant"), has filed various exceptions to plaintiff's Original Petition for Damages.  Plaintiff and Defendant have agreed to resolve Defendant's exceptions as set forth herein.  Accordingly,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant's exceptions of *Lis Pendens* is deferred.  GP reserves the right to reurge its exception in the event it is learned that another lawsuit has been filed;

**IT IS ORDERED, ADJUDGED AND DECREED** that the exception of improper venue is deferred due to insufficient information to determine the propriety of venue.  Accordingly, the exception of venue is deferred.  In the event that discovery reveals a basis to pursue the exception of venue, then GP will file a supplemental memorandum in support and will request a hearing on the issue but the parties agree that any such request for hearing must be made within 30 days of the date of the signing of this consent judgment;

**IT IS ORDERED, ADJUDGED AND DECREED** that the exception of non-conformity is moot based upon plaintiffs' stipulation that they do not intend to assert claims of fraud and/or conspiracy against GP.  In the event that discovery reveals facts which support a fraud/conspiracy allegation against GP, Plaintiff will file a supplemental and amending petition containing allegations in conformity with La. C. Civ Proc. Arts. 856 and 891;

IT IS ORDERED, ADJUDGED AND DECREED that the exception of prescription is deferred due to insufficient information to determine whether plaintiff's lawsuit has prescribed. AMC will reurge this exception in the event that discovery reveals facts which support this exception.

IT IS ORDERED, ADJUDGED AND DECREED that the exceptions of lack of personal jurisdiction and no cause of action are deferred pending an effort to substitute the proper entity. Substitution of the proper entity will render these exceptions moot.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant's exceptions may be re-urged at any time.

NEW ORLEANS, Louisiana this _30th_ day of _August_, 2010.

_____
JUDGE, CIVIL DISTRICT COURT

Submitted by:

_DAVID R. CANNELLA_
_APPEARED ON THE_
_RECORD._ _8/30/10_
LANDRY & SWARR, LLC

Gary A. Bezet, Trial Attorney (#3036)
Gayla M. Moncla (#19713)
Barrye Panepinto Miyagi (#21794)
Robert E. Dille (#23037)
Gregory M. Anding (#23622)
Janice M. Culotta (#23460)
Carol L. Galloway (#16930)
Allison N. Benoit (#29087)
Vionne M. Douglas (#31447)
KEAN, MILLER, HAWTHORNE,
D'ARMOND, McCOWAN & JARMAN,
L.L.P.
One American Place, 18th Floor
P. O. Box 3513
Baton Rouge, LA 70821
Telephone: (225) 387-0999

*Attorneys for Amalgamated Metal
Corporation, Limited*

Mickey P. Landry, Bar No. 22817
Frank J. Swarr, Bar No. 23322
David R. Cannella, Bar No. 26231
Phillip C. Hoffman, Bar No. 32277
1010 Common Street, Suite 2050
New Orleans, Louisiana 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215

WATERS & KRAUS, LLP
3219 McKinney Avenue
Dallas, Texas 75204
Telephone: (214) 357-6244
Facsimile: (214) 357-7252

*Attorneys for Plaintiff*

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                                      DIVISION: "B"

CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____        _____
                                                          DEPUTY CLERK

### CONSENT JUDGMENT

Defendant, Amalgamated Metal Corporation Limited, (hereinafter "AMC" or "Defendant"), has filed various exceptions to plaintiff's Original Petition for Damages. Plaintiff and Defendant have agreed to resolve Defendant's exceptions as set forth herein. Accordingly,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant's exceptions of *Lis Pendens* is deferred. AMC reserves the right to reurge its exception in the event it is learned that another lawsuit has been filed;

**IT IS ORDERED, ADJUDGED AND DECREED** that the exception of improper venue is deferred due to insufficient information to determine the propriety of venue. Accordingly, the exception of venue is deferred. In the event that discovery reveals a basis to pursue the exception of venue, then AMC will file a supplemental memorandum in support and will request a hearing on the issue but the parties agree that any such request for hearing must be made within 90 days of the date of the signing of this consent judgment;

**IT IS ORDERED, ADJUDGED AND DECREED** that the exception of non-conformity is moot based upon plaintiffs' stipulation that they do not intend to assert claims of fraud and/or conspiracy against AMC. In the event that discovery reveals facts which support a fraud/conspiracy allegation against AMC, Plaintiff will file a supplemental and amending petition containing allegations in conformity with La. C. Civ Proc. Arts. 856 and 891;

IT IS ORDERED, ADJUDGED AND DECREED that the exception of prescription is deferred due to insufficient information to determine whether plaintiff's lawsuit has prescribed. GP will reurge this exception in the event that discovery reveals facts which support this exception.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant's exceptions may be re-urged at any time.

NEW ORLEANS, Louisiana this 20th day of August, 2010.

_____
JUDGE, CIVIL DISTRICT COURT

Submitted by:

| | |
|---|---|
| | LANDRY & SWARR, LLC |
| Gary A. Bezet, Trial Attorney (#3036) | Mickey P. Landry, Bar No. 22817 |
| Gayla M. Moncla (#19713) | Frank J. Swarr, Bar No. 23322 |
| Barrye Panepinto Miyagi (#21794) | David R. Cannella, Bar No. 26231 |
| Robert E. Dille (#23037) | Phillip C. Hoffman, Bar No. 32277 |
| Gregory M. Anding (#23622) | 1010 Common Street, Suite 2050 |
| Janice M. Culotta (#23460) | New Orleans, Louisiana 70112 |
| Carol L. Galloway (#16930) | Telephone: (504) 299-1214 |
| Allison N. Benoit (#29087) | Facsimile: (504) 299-1215 |
| Vionne M. Douglas (#31447) | |
| KEAN, MILLER, HAWTHORNE, | WATERS & KRAUS, LLP |
| D'ARMOND, McCOWAN & JARMAN, | 3219 McKinney Avenue |
| L.L.P. | Dallas, Texas 75204 |
| One American Place, 18th Floor | Telephone: (214) 357-6244 |
| P. O. Box 3513 | Facsimile: (214) 357-7252 |
| Baton Rouge, LA 70821 | |
| Telephone: (225) 387-0999 | *Attorneys for Plaintiff* |

*Attorneys for Amalgamated Metal*
*Corporation, Limited*

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127

DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

## MOTION AND ORDER TO DISMISS WITHOUT PREJUDICE

Plaintiff, William Cleve Davidson, and defendant, Amalgamated Metal Corporation Limited, respectfully move the Court to dismiss all claims against Amalgamated Metal Corporation Limited, without prejudice, with each party to bear its own costs. It is recognized that plaintiff specifically reserves his rights against *all* named or pka solidary obligors, as well as all persons and/or entities not named herein.

Considering the above and foregoing, it is hereby

**ORDERED, ADJUDGED AND DECREED,** that all claims of plaintiff, William Cleve Davidson, against Amalgamated Metal Corporation Limited, in the above-captioned matter be, and hereby are, dismissed without prejudice, with each party to bear their own costs, and specifically reserving to plaintiff all rights to prosecute claims and/or actions against any parties and/or persons and/or entities not otherwise dismissed herein.

New Orleans, Louisiana, this _____ day of ___JAN 2 7 2011___, 2011.

(Sgd.) Christopher J. Bruno

JUDGE, CIVIL DISTRICT COURT

Respectfully Submitted,

LANDRY & SWARR,
Mickey P. Landry, LA Bar No, 22817
Frank 7. Swarr, LA Bar No. 23322
David R. Cannella, LA Bar No. 26231
1010 Common Street, Suite 2050
New Orleans, LA 70112
Telephone: 504-299-1214
Facsimile: 504-299-1215

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS

WATERS & KRAUS, LLP
Michelle B. Whitman, TX Bar No. 24032914
Kevin F Oliver, TX Btu No. 1520650
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Facsimile: 214-357-7252
*ATTORNEYS FOR PLAINTIFF*

2214396_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion and Order for Dismissal Without Prejudice has been forwarded via fax and U.S. Mail, postage prepaid, to Plaintiff's attorneys and via electronic mail to all known counsel of record.

Baton Rouge, Louisiana this 27th day of January, 2011.

Gayla M. Moncla

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 10-5127                  SECTION                  DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____          _____
                                                DEPUTY CLERK

### *EX PARTE* ORDER

In consideration of the Motion to Compel the Release of Pathology and Incorporated

Memorandum in Support, filed by Plaintiff and Defendants,

IT IS ORDERED that the Motion is hereby GRANTED. Delta Pathology Group shall release the

all pathology in its possession within three (3) business days of receipt of this order.

New Orleans, Louisiana, this _____ day of _____, 2011.

_____
JUDGE ~~PRESIDING~~

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA
Page -

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 10-5127                    SECTION                    DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____          _____
                                          DEPUTY CLERK

_EX PARTE_ ORDER

In consideration of the Motion to Extend Pre-trial Deadlines and Incorporated Memorandum in

Support, filed by Plaintiff and Defendants,

IT IS ORDERED that the Motion is hereby GRANTED.

New Orleans, Louisiana, this 21st day of January, 2011.

                                          _____
                                          JUDGE PRESIDING

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 10-5127                                                    SECTION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL

FILED: _____

_____
DEPUTY CLERK

## ORDER

It is ordered that Thomas W. Tyner, of the law firm of Aultman, Tyner & Ruffin, Ltd., is hereby recognized as counsel of record for defendant York International Corporation, to act in association with and through Sarika J. Angulo and Rocky W. Eaton of Aultman, Tyner & Ruffin, Ltd..

New Orleans, Louisiana, this 14th day of March, 2011.

(Sgd.) Rosemary Ledet
_____
HONORABLE ROSEMARY LEDET, JUDGE

3

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 10-5127                                             DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES LTD., ET AL

FILED:_____          _____
                                                 DEPUTY CLERK

## JUDGMENT

This matter came for hearing on March 18, 2011, regarding Defendants, HSBC Holdings plc's and The Hongkong and Shanghai Banking Corporation Limited's, Declinatory Exceptions of Lack of Jurisdiction Over the Person. The following attorneys were present:

| | |
|---|---|
| Monique Lafontaine (La. Bar No. 24557) | For Defendants HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited |
| David Cannella (La. Bar No. 26231) | For Petitioner |

After consideration of the memoranda, pleadings, evidence, and arguments of counsel;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that HSBC Holdings plc's and The Hongkong and Shanghai Banking Corporation Limited's Declinatory Exceptions of Lack of Jurisdiction Over the Person are OVERRULED.

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that the case is stayed as to Defendants HSBC Holdings plc and The Hongkong and Shanghai Banking Corporation Limited only pending resolution of their writ applications to the Fourth Circuit Court of Appeal on the conditions that the Defendants (1) file their writ application with the Fourth Circuit Court of Appeal within fifteen (15) days of the date of the Court's ruling, which is on or before Monday, April 4, 2011, and (2) move the Fourth Circuit Court of Appeal for expedited consideration of their writ application.

JUDGMENT RENDERED IN OPEN COURT the 18th day of March 2011, in New Orleans, Louisiana.

JUDGMENT SIGNED this ____ day of March, 2011, in New Orleans, Louisiana.

_____
JUDGE ROSEMARY LEDET

NO:0041171/00096:146967v4

Respectfully Submitted,

**LOCKE LORD BISSELL & LIDDELL, LLP**


*Monique Lafontaine*
MONIQUE M. LAFONTAINE, ESQ. (24557)
OMER F. KUEBEL, III, ESQ. (21682)
601 Poydras Street, Suite 2660
New Orleans, Louisiana  70130
504-558-5133 Telephone
504-681-5223 Facsimile
mlafontaine@lockelord.com

**Attorneys for Defendants, HSBC Holdings plc and
The Hongkong and Shanghai Banking Corporation Limited**

NO:0041171/00096:146967v4

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                    DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____          _____
                                                        DEPUTY CLERK


## SHOW CAUSE ORDER

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the 19th day of April, 2011 at 9 o'clock a.m. why CertainTeed Corporation's Motion *In Limine* to Exclude Evidence Relating to the Alleged Health Effects from Ingestion of Asbestos and the Hazards Faced by Workers in asbestos Mine and Factories should not be granted.

New Orleans, Louisiana, on this, the 4th day of April, 2011.

_____
Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT


ENTERED ON MINUTES

APR 0 6 2011

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 10-5127                   SECTION                   DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____    _____
                                         DEPUTY CLERK

CONSENT JUDGMENT

This matter came for hearing on March 25, 2011, regarding Defendants' Motion for

Leave to File Third-Party Demand. The following attorneys were present:

| | |
|---|---|
| Brandie M. Thibodeaux (La. Bar No. 29344) | For Defendant, Bird Incorporated |
| McGready L. Richeson (La. Bar No. 29398) | For Defendant, Union Carbide Corporation |
| David Cannella (La. Bar No. 26231) | For Plaintiffs |

After consideration of the memoranda, pleadings, evidence, arguments of counsel, and

agreement of the parties:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that Defendants' Motion

for Leave to File Third-Party Demand is GRANTED.

IT IS FURTHER ORDERED that this Consent Judgment does not waive any rights

Plaintiff or Defendants may have with regard to post-judgment arguments regarding the effect

that a finding of fault against Johns-Manville may have with regard to virile shares or solidary

obligations.

JUDGMENT RENDERED IN OPEN COURT the 25th day of March, in New Orleans,

Louisiana.

JUDGMENT SIGNED this _4th_ day of April, 2011, in New Orleans, Louisiana.

_____
JUDGE ROSEMARY LEDET

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

1

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO. 10-5127                                  DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VS.

ADVOCATE MINES, LTD., ET AL

FILED: _____

_____
DEPUTY CLERK

ORDER

Considering the above and foregoing:

IT IS HEREBY ORDERED that R. Scott Masterson, Esq. of the law firm of Lewis Brisbois Bisgaard & Smith, be enrolled as co-counsel of record for Union Carbide Corporation ("Union Carbide") in the above-numbered and entitled action and the Clerk of Court shall so indicate same on the pertinent court records.

_____
(Sgd.) Rosemary Ledet
J U D G E                    4/4/11

**Please serve:**
Plaintiff
Through his counsel of record
David Cannella, Esq.
LANDRY & SWARR
1010 Common St.
New Orleans, Louisiana

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

4

FILED

201 APR -11 P 5: 03

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                    DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____          _____
                                                DEPUTY CLERK

### SHOW CAUSE ORDER

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the ___ day of

April, 2011 at ___ o'clock ___.m. why CertainTeed Corporation's Motion *In Limine* to Exclude

Evidence and Questioning Regarding Expert Witness Peter C. English,'s Testimony on Behalf of

Tobacco Companies should not be granted.

New Orleans, Louisiana, on this, the ___ day of _____, 2011.

_____
Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

ENTERED ON MINUTES

APR 0 7 2011

#1963190v1<DK2> -.MIL to Exclude Exp. Wit. P. English

A TRUE COPY

CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

FILED

2011 APR -1  P 5: 02

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS, CIVIL DISTRICT COURT

STATE OF LOUISIANA

NO.: 10-5127                                        DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____    _____
                                                  DEPUTY CLERK


### SHOW CAUSE ORDER


IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the 3rd day of May, 2011 at 1:30 o'clock p.m. why CertainTeed Corporation's Motion In Limine to Exclude Irrelevant Evidence after Plaintiff's Last Possible Exposure to a Product Manufactured by CertainTeed should not be granted.

New Orleans, Louisiana, on this, 12th day of April, 2011.

_____
Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

FILED

2011 APR -11 P 5:04

DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                        DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____        _____
                                                        DEPUTY CLERK

## SHOW CAUSE ORDER

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the 3rd day of _____ 2011 at 1:30 o'clock p .m. why CertainTeed Corporation's Motion *In Limine* to Exclude Evidence and Questioning Regarding Expert Witness Peter J. Barrett Civil Contempt Citation should not be granted.

New Orleans, Louisiana, on this, the 12th day of April, 2011.

ENTERED ON MINUTES

APR 1 4 2011

Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

FILED

2011 APR -1 P 5:04

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                    DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____        _____
                                              DEPUTY CLERK

### SHOW CAUSE ORDER

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the 3rd day of May 2011 at 1:30 o'clock p.m. why CertainTeed Corporation's Motion *In Limine* to Exclude Questioning of Certainteed Witnesses Regarding Testimony in Other Asbestos-Related Cases Against Certainteed should not be granted.

New Orleans, Louisiana, on this, the 12th day of April, 2011.

_____
JUDGE

Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

ENTERED ON MINUTES

APR 1 4 2011

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

5

FILED

2011 APR -11 P 5: 02

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

CIVIL DISTRICT COURT

STATE OF LOUISIANA

NO.: 10-5127                                    DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____        _____
                                                    DEPUTY CLERK


## SHOW CAUSE ORDER

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the _3rd_ day of ___May___, 2011 at _9:30_ o'clock _a._m. why CertainTeed Corporation's Motion _In Limine_ to Exclude Testimony or Other Evidence (Including Videotapes) Concerning the Longo/Hatfield CertainTeed A/C Pipe Study.

New Orleans, Louisiana, on this, the _12th_ day of _April_ 2011.

_____
JUDGE

ENTERED ON MINUTES

APR 1 4 2011

Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

16

FILED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

2011 APR -1  P 5: 02

STATE OF LOUISIANA

CIVIL
DISTRICT COURT

NO.: 10-5127                                        DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____          _____
                                                                      DEPUTY CLERK


## SHOW CAUSE ORDER

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the 3rd day of May, 2011 at 1:30 o'clock p .m. why CertainTeed Corporation's Motion *In Limine* to Exclude Evidence or Reference to Plaintiff's Alleged Exposure to Certainteed Siding Shingles should not be granted.

New Orleans, Louisiana, on this, the 12th day of April, 2011.

_____

Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

ENTERED ON MINUTES

APR 1 4 2011

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

7

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127

FILED

2011 APR -11 P 5:01

DIVISION: "B"

CIVIL
DISTRICT COURT

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____

_____
DEPUTY CLERK

## SHOW CAUSE ORDER

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the ___ day of _____ 2011 at ___ o'clock ___.m. why CertainTeed Corporation's Motion *In Limine* to Exclude Hearsay Product Identification should not be granted.

New Orleans, Louisiana, on this, the ___ day of _April_, 2011.

_____
JUDGE
Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

ENTERED ON MINUTES

APR 13 2011

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

FILED

NO.: 10-5127                                    DIVISION: "B"        2011 APR 14  P 5: 06

WILLIAM CLEVE DAVIDSON                          CIVIL
                                          DISTRICT COURT
VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____

                                    _____

                                    DEPUTY CLERK

**SHOW CAUSE ORDER**

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the 3rd day of May, 2011 at 1:30 o'clock p .m. why CertainTeed Corporation's Motion *In Limine* to Exclude Hearsay Product Identification should not be granted.

New Orleans, Louisiana, on this, the 12th day of April, 2011.

_____
JUDGE
Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

ENTERED ON MINUTES

APR 1 3 2011

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

FILED

2011 APR -1  P 5: 02

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS, CIVIL
DISTRICT COURT

STATE OF LOUISIANA

NO.: 10-5127                                    DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____

                        DEPUTY CLERK

**SHOW CAUSE ORDER**

IT IS HEREBY ORDERED that plaintiffs, appear and show cause, on the 3rd day of _____ 2011 at 1:30 o'clock p.m. why CertainTeed Corporation's Motion *In Limine* Regarding Evidence Relating to Turner & Newall, PLC should not be granted.

New Orleans, Louisiana, on this, the 12th day of April, 2011.

_____
Adrienne Yates, Minute Clerk
Division "B"
BY ORDER OF THE COURT

ENTERED ON MINUTES

APR 1 3 2011

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

NO. 2011-C-0442

COURT OF APPEAL, FOURTH CIRCUIT

STATE OF LOUISIANA

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

IN RE:            HSBC HOLDINGS PLC, ET AL.

APPLYING FOR: SUPERVISORY WRIT

DIRECTED TO:   HONORABLE ROSEMARY LEDET
               CIVIL DISTRICT COURT, ORLEANS PARISH
               DIVISION "B", 2010-5127

**WRIT DENIED.**

The relator, Hongkong & Shanghai Banking Corporation, seeks review of the trial court's denial of its exception of lack of personal jurisdiction. At issue is personal jurisdiction that may have resulted from the succession-in-interest doctrine. The plaintiffs contend that Hongkong & Shanghai Banking is the successor-in-interest to Antony Gibbs & Co., a merchant bank and asbestos fiber supplier. Antony Gibbs & Co. supplied raw amosite and crocidolite asbestos to Johns-Manville in Louisiana. Defendant, Hongkong & Shanghai maintains that it never acquired Antony Gibbs & Co., but rather, acquired Antony Gibbs Holdings Limited (f/k/a Antony Gibbs & Sons Limited).

Numerous documents provided by both parties evidence a convoluted trail of subsidiary companies and name changes. However, the evidence did establish that when Hongkong & Shanghai began its acquisition of the company, it had acquired 20% of Antony Gibbs & Sons Limited, which owned the whole of

1

Antony Gibbs & Sons Co.. Prior to the acquisition of the remaining 80% the company name was changed to Antony Gibbs Holdings Limited.

After hearing arguments and reviewing the evidence presented, the trial court found that there was "sufficient factual information and documentary evidence" to prove that Hongkong & Shanghai acquired Antony Gibbs & Sons Co. and therefore became the successor-in-interest. Additionally, there was no evidence presented to suggest that Antony Gibbs & Sons Co. did not have the minimum contacts necessary to invoke personal jurisdiction. Therefore, the exception of lack of personal jurisdiction filed by Hongkong & Shanghai Banking Corporation Limited was denied.

The review sought by this writ application is based solely on the trial court's factual finding that Hongkong & Shanghai acquired Antony Gibbs & Sons Co. A trial court's findings of fact should not be set aside in the absence of manifest error or unless it is clearly wrong. *Ardoin v. Firestone Polymers*, 10-245 (La.1/19/11), — — So.3d ——. If there are two permissible views of the evidence, the trial court's determination cannot be manifestly erroneous. *Id.*

In conclusion, we do not find that the trial court was erroneous in its assessment of the evidence. Accordingly, the writ is denied.

New Orleans, Louisiana this 15th day of April, 2011.

_____
JUDGE ROLAND L. BELSOME

_____
JUDGE TERRI F. LOVE

_____
JUDGE PAUL A. BONIN

A TRUE COPY
NEW ORLEANS

APR 1 5 2011

_____ CLERK
COURT OF APPEAL FOURTH CIRCUIT

2

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 10-5127                                                   DIVISION: "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATEMINES, LTD., ET AL

FILED: _____   _____

                                                          DEPUTY CLERK

## ORDER

Considering the foregoing Ex Parte Motion for Expedited Hearing on Beazer

East's Motion to Strike Affidavits of Ewing and Schwartz filed by defendant Beazer East,

Inc:

IT IS HEREBY ORDERED that defendant's motion is GRANTED and Plaintiffs

show cause on the ____ of _____, 2011, at ____:00 ___.m. why the Motion to Strike

Affidavits of Ewing and Schwartz filed by Beazer East, Inc. should not be granted.

New Orleans, Louisiana, this ____ day of _____, 2011.

_____
JUDGE, CIVIL DISTRICT COURT

Hearing held
4/19/11.

Service Will Be Performed Pursuant to
Art. 1313 of the Louisiana Code of Civil
Procedure on:

Plaintiff William Cleve Davidson,
Via His Counsel of Record:

David Canella
Landry and Swarrr, LLC
1010 Common St., Suite 2050
New Orleans, LA 70112

and

Michelle Whitman
Waters & Kraus, LLP
3219 McKinley Ave.
Dallas, TX 75204

A TRUE COPY

WILLIAM CLEVE DAVIDSON

Plaintiff(s),

VS.

ADVOCATE MINES, LTD., ET AL

Defendant(s).

§
§
§
§
§
§
§
§

DOCKET NUMBER: 2010-05127 SECTION 24

FILED

JUDICIAL DISTRICT COURT

PARISH OF PARISH OF ORLEANS

CIVIL
DISTRICT COURT

STATE OF LOUISIANA

## AFFIDAVIT OF SERVICE

Came to hand on **Thursday, May 27, 2010 at 3:35 PM,**
Executed at: **1 QUEENS ROAD CENTRAL, GPO BOX 64, HONG KONG, CHINA**
on **Tuesday, June 15, 2010,** by delivering to the within named:

### HONGKONG SHANGHAI BANKING CORPORATION LIMITED

By delivering to its' **PRINCIPAL PLACE OF BUSINESS**
By **Federal Express, tracking number 798742881271,**
which was signed for by **R. TSUI, An Authorized Agent** of the Defendant
a true copy of this

### CITATION and ORIGINAL PETITION FOR DAMAGES

A copy of the proof of delivery from the Federal Express website is attached to this form.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Charity N. Coleman** who after being duly sworn on oath states: "My name is **Charity N. Coleman.** I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

**Charity N. Coleman**

Of:   **Dallas County**

By:   *Charity N Coleman*
Authorized Person - SCH2761

Subscribed and Sworn to by Charity N. Coleman, Before Me, the undersigned authority, on this _7th_ day of July, 2010.

*Dwight Mullen*

**Notary Public in and for The State of Texas**

DWIGHT MULLEN
Notary Public, State of Texas
My Commission Exp. 08-20-2013


EXHIBIT
H
tabbies



**FedEx**
Express

FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

FILED

July 7, 2010

2010 JUL -8  P 1: 03

Dear Customer:

The following is the proof-of-delivery for tracking number **798742881271**.

CIVIL
DISTRICT COURT

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Mailroom |
| Signed for by: | R.TSUI | Delivery location: | HONG KONG |
| Service type: | Intl Economy Envelope | Delivery date: | Jun 15, 2010 10:22 |

Signature images are not available for display for shipments to this country.

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 798742881271 | Ship date: | Jun 9, 2010 |
| | | Weight: | 1.0 lbs/0.5 kg |

Recipient:
HONG KONG CN

Shipper:
TASHA COLEMAN
SPECIAL DELIVERY SERVICE, INC.
5470 LYNDON B JOHNSON FRWY, STE 10
DALLAS, TX 75240 US

Additional recipient and address information is not available for display for shipments to this country.

Reference                1470551

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

Tasha Coleman

From:       TrackingUpdates@fedex.com
Sent:       Monday, June 14, 2010 9:27 PM
To:         Tasha Coleman
Subject:    FedEx Shipment 798742881271 Delivered

FILED

2010 JUL -8  P 1:03

CIVIL
DISTRICT COURT

This tracking update has been requested by:

Company Name:          Special Delivery Service, Inc.
Name:                  Tasha Coleman
E-mail:                tasha.coleman@specialdelivery.com

Our records indicate that the following shipment has been delivered:

Reference:             1470551
Ship (P/U) date:       Jun 9, 2010
Delivery date:         Jun 15, 2010 10:22 AM
Sign for by:           R.TSUI
Delivered to:          Mailroom
Service type:          FedEx International Economy
Packaging type:        FedEx Envelope
Number of pieces:      1
Weight:                1.00 lb.
Special handling/Services:   Deliver Weekday

Tracking number:       798742881271

Shipper Information              Recipient Information
TASHA COLEMAN                    V.H.C. CHENG
SPECIAL DELIVERY SERVICE, INC.   HONGKONG SHANGHAI BANKING CORP
5470 LYNDON B JOHNSON FRWY, STE 10   1 QUEENS ROAD CENTRAL
DALLAS                           GPO BOX 64
TX                               HONG KONG
US                               CN
75240                            999999

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 9:27 PM CDT
on 06/14/2010.

Learn more about new ways to track with FedEx.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above,
or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the
Requestor noted above. FedEx does not validate the authenticity of the
requestor and does not validate, guarantee or warrant the authenticity of the
request, the requestor's message, or the accuracy of this tracking update. For
tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

7/7/2010

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 10-5127                                        DIVISION "B"

WILLIAM CLEVE DAVIDSON

VERSUS

ADVOCATE MINES, LTD., ET AL.

FILED: _____     _____
                                        DEPUTY CLERK

## JUDGMENT

The Motion for Summary Judgment of Eagle, Inc., came on for hearing on Tuesday, April 19, 2011.

        Present:  Kevin E. Oliver, Esq.
                  Frank J. Swarr, Esq.
                  Counsel for Plaintiffs

                  Susan B. Kohn, Esq.
                  Counsel for Eagle, Inc.

Considering the motion, the memorandum of Eagle, Inc., and the law;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment of Eagle, Inc., is granted, dismissing plaintiffs' claims against Eagle, Inc., with prejudice, each party to bear its own costs, reserving to plaintiffs all claims and rights against any other person, entity, or corporation, whether named or unnamed in this case.

New Orleans, Louisiana, this _____ day of _April_ _____, 2011.

_____
                JUDGE

A TRUE COPY

_____
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

N:\DATA\P\EAGLE\142722825\Pleadings\judgment.wpd

**EXHIBIT**
**I**

1    CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

2               STATE OF LOUISIANA

3             WILLIAM CLEVE DAVIDSON

4                    VERSUS

5          ADVOCATE MINES, LTD., ET AL.

6  CASE NUMBER: 2010-5127              DIVISION B

7  _____

8  ***************************************************

9  _____

10        Transcript of the colloquy taken during the

11 Rule Hearing held in the above-captioned matter on

12 Tuesday, April 19, 2011, before the Honorable Rosemary

13 Ledet, Judge Presiding.

14

15

16 APPEARANCES:

17    KEVIN OLIVER, ESQ.

18    FRANK J. SWARR, ESQ.

19    BILLY GALERSTON, ESQ.

20        Representing the Plaintiffs

21    MONIQUE M. LAFONTAINE, ESQ.

22        Representing the Defendants, HSBC Entities

23    SUSAN KOHN, ESQ.

24        Representing the Defendants, Eagle, Inc.

25    JENNIFER E. ADAMS, ESQ.

26        Representing the Defendants, Certainteed

27        Corporation

28    JOSEPH M. GUILLOT, ESQ.

29        Representing the Defendants, Carrier

30        Corporation

31

32

EXHIBIT
J

1   <u>APPEARANCES</u>:   (continued)

2       NEY J. GEHMAN, ESQ.

3           Representing the Defendants, Lennox

4           Industries

5       ROCKY EATON, ESQ.

6           Representing the Defendants, York

7           International Corporation

8       MICHAEL H. ABRAHAM, ESQ.

9           Representing the Defendants, Union Carbide

10          Corporation

11      GAYLA M. MONCLA, ESQ

12          Representing the Defendants, Georgia-Pacific,

13          LLC

14      ROBERT E. WILLIAMS, IV, ESQ.

15          Representing the Defendants, Rheem

16          Manufacturing Corporation

17      DOUGLAS R. ELLIOT, ESQ.

18          Representing the Defendants, Beazer East,

19          Inc.

20      KAY BAXTER, ESQ.

21          Representing the Defendants, Bird, Inc.

22      BARBARA B. ORMSBY, ESQ.

23          Representing the Defendants, Trane, US, Inc.

24

25

26  <u>REPORTED BY</u>:

27              Eve S. Kazik, RMR

28

29

30

31

32

```
 1              P R O C E E D I N G S
 2              Tuesday, April 19, 2011
 3   THE COURT:
 4              For the record, this is 2010-5127,
 5         William Cleve Davidson v. Advocate Mines
 6         Limited, et al.
 7              And we have several motions for summary
 8         judgment.  I'm not sure if there are any
 9         other motions that are set.  I know we agreed
10         to defer motions in limine; is that correct?
11   MR. OLIVER:
12              That's true as to motions in limine.
13         There are some other motions that the defense
14         has brought in additional to the summary
15         judgment motions.
16   THE COURT:
17              Would everyone make your appearances for
18         the record, please?
19   MR. SWARR:
20              Yes, your Honor.  Frank Swarr on behalf
21         of the plaintiff, Mr. Davidson.
22   MR. OLIVER:
23              Kevin Oliver also on behalf of the
24         plaintiff and Billy Galerston from our office
25         is with me.  He won't be speaking today.
26         He's here just to assist.
27   MS. ADAMS:
28              Jennifer Adams on behalf of Certainteed
29         Corporation, your Honor.  Good morning.
30   MR. ELLIOT:
31              Douglas Elliot on behalf of Beazer East,
32         Inc.
```

3

```
 1  MS. MONCLA:

 2            Gayla Moncla for Georgia Pacific, your

 3       Honor.  Good morning.

 4  MS. KOHN:

 5            Sue Kohn on behalf of the defendant,

 6       Eagle, Inc.

 7  MS. BAXTER:

 8            Kay Baxter on behalf of Bird, Inc. and

 9       Brandie Thibodeaux.

10  MS. LAFONTAINE:

11            Monique Lafontaine on behalf of the HSBC

12       defendants.

13  MR. ABRAHAM:

14            Michael Abraham on behalf of Union

15       Carbide Corporation.

16  MR. GUILLOT:

17            Joseph Guillot on behalf of Carrier

18       Corporation.

19  MR. WILLIAMS:

20            Good morning, your Honor.  Robert

21       Williams on behalf of Rheem Manufacturing

22       Company.

23  MR. EATON:

24            Rocky Eaton on behalf of the York

25       International Corporation.

26  MR. GEHMAN:

27            Ney Gehman on behalf of Lennox

28       Industries.

29  THE COURT:

30            Just to clarify the record, I received

31       correspondence that there were several

32       motions that the plaintiffs did not oppose,
```

4

```
 1          motions for summary judgment?
 2   MR. OLIVER:
 3               That's true, your Honor.  There are
 4          several that are not opposed by the
 5          plaintiff, but I believe some of the
 6          defendants have filed oppositions to some of
 7          those co-defendants' motion.
 8   MS. ADAMS:
 9               Your Honor, Jennifer Adams.  We heard
10          Certainteed and Beazer filed oppositions as
11          to certain HVAC defendant's motions for
12          summary judgment.  That would be Rheem,
13          Trane, and York International.
14   MS. BAXTER:
15               Your Honor, Kay Baxter for Bird.  We had
16          a motion for summary judgment on fraud and
17          conspiracy that was also unopposed.  I
18          noticed it didn't make it on the record.
19   THE COURT:
20               Okay.  And the only opposition to that
21          was by the plaintiffs?
22   MR. OLIVER:
23               As to the fraud and conspiracy motion,
24          there was no opposition by anyone, I don't
25          believe.
26   MS. BAXTER:
27               Right.
28   THE COURT:
29               That's granted.
30   MS. BAXTER:
31               Thank you, your Honor.
32   MS. KOHN:
```

Eve Kazik, RMR
Civil District Court, Parish of Orleans

```
 1              Sue Kohn on behalf of Eagle.  I don't
 2       think anyone opposed Eagle's motion for
 3       summary judgment.
 4  MR. OLIVER:
 5              This is true.
 6  MS. KOHN:
 7              None of the defendants did.
 8  MS. ADAMS:
 9              No.
10  THE COURT:
11              That motion is granted, Ms. Kohn.
12  MS. KOHN:
13              Judge, we will submit a judgment.
14  THE COURT:
15              Thank you.
16  MR. GUILLOT:
17              Joseph Guillot on behalf of Carrier
18       Corporation.  Plaintiffs didn't oppose our
19       motion, and the defendant's motion did not
20       include an opposition to Carrier.
21  THE COURT:
22              Is that correct?
23  MS. ADAMS:
24              True.
25  THE COURT:
26              That motion is granted.
27  MR. GUILLOT:
28              I have a judgment.  And I have it with
29       Mr. Oliver.
30  MR. GEHMAN:
31              Ney Gehman.  I'm here on behalf of
32       Lennox Industries.  There has been no
```

```
 1          opposition to our MSJ as well by either of
 2          the plaintiffs or any of the co-defendants.
 3   THE COURT:
 4               That motion is granted.
 5   MR. GEHMAN:
 6               I'll eventually submit a judgment.
 7   THE COURT:
 8               Thank you.
 9   MS. BAXTER:
10               Your Honor, I was recently hired to
11          represent Bird in this case, and I was
12          getting familiar with the case.  I noticed
13          that we have some -- I'll call them loose
14          ends.
15               There are at least two defendants in the
16          case I don't know the status of.  CSR was
17          served, but they haven't answered.  And then
18          Advocate Mines, I don't think they were
19          served.  I don't know.
20   MR. OLIVER:
21               I don't have that answer right in front
22          of me, your Honor.  I will ascertain the
23          answer to both of those questions and advise
24          counsel.  I just don't know as we sit here
25          today.
26   MS. BAXTER:
27               That's the loose end issues haven't been
28          joined, your Honor, until we know what is
29          going on with those.
30   THE COURT:
31               Right.  Has there been any pleadings
32          filed by CSR?  Motions for extension of
```

7

```
 1          time?
 2  MS. BAXTER:
 3              No, your Honor.  No answer.  Nothing in
 4          the record on them.  But we do know they were
 5          served.  We saw that there was request for
 6          service, but I haven't seen where there has
 7          been any affidavit that they were served.
 8  MR. SWARR:
 9              We will check.
10  MS. BAXTER:
11              Do we have some idea when we will know
12          about those defendants?
13  MR. OLIVER:
14              I'll find out an answer today and fax
15          you today.
16  MS. BAXTER:
17              Thank you.  Your Honor, also, we have
18          the writ issue of the HSBC entities.
19  THE COURT:
20              The writ was denied.
21  MS. BAXTER:
22              Okay.
23  MS. LAFONTAINE:
24              Monique Lafontaine for the HSBC
25          defendants.  Certainly, you received a copy
26          in the mail yesterday afternoon on the writ
27          denial.  We will note that on Page 4 they
28          refer four times to Antony Gibbs & Sons
29          Company, an entity that does not even exist.
30          We, of course, are going to the Louisiana
31          Supreme Court for that reason and a couple of
32          other issues.  We file that writ this week.
```

 1          But since the trial date is ten days
 2      away, we, of course, have no other option but
 3      to ask the Court either to continue the stay
 4      against the HSBC defendants only or to
 5      continue the trial date.
 6          As you know, we have not yet had an
 7      opportunity to participate in any written or
 8      oral discovery, experts, etcetera, etcetera.
 9      And we will need more time to do that should
10      we ultimately be subject to the jurisdiction
11      of the Court.  I don't know if you would like
12      to take that up now, today, after the other
13      defendants argue their motions or to have me
14      file something formally in court around take
15      that up later this week or next week.
16  THE COURT:
17          I recognize the issue, and I was going
18      to bring it up to find out how we were going
19      to proceed from here with regard to your
20      client.
21  MS. LAFONTAINE:
22          Right.
23  THE COURT:
24          We probably can take it up if you don't
25      mind waiting.
26  MS. LAFONTAINE:
27          No, I don't mind waiting.  Thank you.
28  THE COURT:
29          Okay.  We can proceed in any order.
30  MR. ELLIOT:
31          Your Honor, Douglas Elliot for Beazer
32      East.  I think there is one other issue which

Eve Kazik, RMR
Civil District Court, Parish of Orleans

1    I think affects how we move forward on the
2    summary judgments.  And I think that pretty
3    much every defendant at least alluded to it
4    in their reply briefs.
5        And that is in the oppositions the
6    plaintiffs filed toward summary judgments
7    they attach three additional affidavits.  One
8    each from their primary experts Mr. Ewing as
9    well as Dr. Schwartz.  And one from
10   Mr. Davidson, himself, which had additional
11   factual allegations particularly against my
12   client.
13       I think that -- I know that Beazer East
14   filed a motion to strike those affidavits and
15   also asked for relief as far as reopening
16   discovery.  I think that the affidavits
17   include additional opinions and factual
18   allegations that have not been disclosed to
19   date.  And I think that until we determine
20   how we are going to move forward with that
21   issue, I think that's sort of -- is a piece
22   of information that we need to know going
23   forward on summary judgments.
24   THE COURT:
25       Could you be more specific as to what
26   factual allegations have not been disclosed
27   until now?
28   MR. ELLIOT:
29       Specifically, as to Mr. Davidson, at
30   least to my client, that Mr. Davidson had
31   reviewed some installation manuals that we
32   had provided in the course of discovery and

10

1        identified two roofing specifications that he

2        now recognized that had some specifications

3        for asbestos-containing material in them and

4        identified those to us.

5   THE COURT:

6        Okay.

7   MR. ELLIOT:

8        That's the factual allegations.  As far

9        as the opinions, I think that it's -- we

10       outlined it in our reply memoranda as well as

11       a motion to strike, that certainly throughout

12       the course of the deposition as well as the

13       report of Mr. Ewing to begin with, yes, he

14       indicated to us that he had no opinion as to

15       exposures Mr. Davidson might have had in

16       quantifying those exposures as to any given

17       defendant.

18       In his new affidavit that was just

19       submitted to us he, in fact, makes those

20       calculations.  And I think that we challenged

21       it, one, to the extent that it's inconsistent

22       with his prior deposition testimony.  And

23       two, on the basis of Daubert.

24       And part of the problem we have is we

25       obviously don't have the ability at this

26       point without discovery being reopened to

27       figure out exactly what his opinions are on

28       these issues and to be able to fully flesh

29       out where we are going to go forward.

30       As far as Dr. Schwartz goes, he issued a

31       23-page report that was fashioned into an

32       affidavit which contained numerous additional

11

1    opinions that he certainly hadn't expressed

2    in his two-page report or two-and-a-half page

3    report that he had previously filed.

4         And certainly all of those issues are --

5    not all of them, but a good portion of those

6    issues are new issues and new opinions he has

7    expressed for the first time.

8         I think if you look at Dr. Schwartz'

9    report, that it is substantially reworded

10    what his beliefs are as far as causation in

11    this case and substantially giving new

12    opinions as to certain areas of inquiry that

13    he feels confident going into that he said he

14    wasn't before, including evaluating risk.  I

15    think that essentially with these affidavits

16    and with these oppositions, the plaintiffs

17    have sort of turned discovery on its head and

18    made the depositions and everything that we

19    have done to date certainly not useful for

20    trial.

21  THE COURT:

22         Okay.  So, the issue is whether or not

23    these new opinions and factual developments

24    have to be explored prior to trial.  But as

25    far as the motions for summary judgment, are

26    you saying you need to do additional

27    discovery in an effort to prevail on your

28    summary judgment as a result of this?

29  MR. ELLIOT:

30         I can tell you that certainly at the

31    time my summary judgment was filed it was on

32    a very narrow issue of specific causation,

12

1          and that is whether the plaintiffs had
2          produced enough evidence to meet their burden
3          to show specific causation under *Rando*.
4          Certainly, with these new affidavits --
5     THE COURT:
6          Causation as to injury or causation as
7          to liability?
8     MR. ELLIOT:
9          Essentially, it would be both in a sense
10         that if it's a factual cause of injury, I
11         think that that would foreclose liability.
12         If it's not, we move forward.
13         You know, as far as that goes, certainly
14         that was our position when we filed it.
15         These new affidavits certainly seem to
16         indicate that, in fact, Dr. Schwartz has
17         changed his opinion somewhat from what his
18         deposition was and is now willing to talk
19         about specific causation as to defendants
20         that he wasn't willing to do before, as is
21         Mr. Ewing.  I think that certainly exploring
22         those is necessary prior to going forward
23         with these motions.
24    THE COURT:
25         Specific causation as to the levels of
26         exposure and the duration of exposure?
27    MR. ELLIOT:
28         I think what the situation is, is that,
29         yes.  I mean, that what Mr. Ewing originally
30         said in his deposition as well as his report
31         is he had insufficient information to
32         quantify the exposures as any given thing.

13

1              He has now come back with an affidavit
2         in opposition to our motion for summary
3         judgment in which he does exactly that.  He
4         puts a numerical value, which I'm not sure
5         where that value comes from, and says that,
6         this is what the exposure to my client's
7         products would have been, and it would be 50
8         times background.  That's what he says.  He
9         certainly didn't express that opinion
10        before.  In fact, he denied the ability to do
11        that.
12   MR. OLIVER:
13             Let me address each of these in turn.
14        First, as to the affidavit from Mr. Davidson
15        that applies only to Bird and Son.
16   MS. BAXTER:
17             Excuse me, your Honor.  It's not Bird
18        and Son.
19   MR. OLIVER:
20             Pardon me.  Beazer.  I apologize.  My
21        mistake.  Applies only to Beazer.  At the
22        time of Mr. Davidson's deposition, he
23        identified the copperas product made by
24        Beazer.  He identified having worked with it
25        on numerous occasions.  He identified his
26        basis for believing that the products he
27        worked with were asbestos-containing, all of
28        which is in the record that's before you.
29             After his deposition, in fact, just
30        earlier this spring immediately, you know, in
31        February or March of this year, Beazer
32        produced some additional documents to us that

14

1    had not been produced before which were
2    specifications or sort of instruction lists
3    about how to use their roofing products on
4    roofs.
5        Two of those specifications included
6    asbestos-containing roofing felts.  We did
7    not have those documents before.  They were
8    not available at the time of Mr. Davidson's
9    deposition.  So, we showed those documents to
10   Mr. Davidson and asked him, "Did you work
11   with these specifications and these products
12   that are specified?"
13       In response to the summary judgment, we
14   provided that very narrow half-page affidavit
15   from him that says, "I worked with those
16   products."
17       It's a very narrow issue.  It is
18   certainly something that was not within
19   Mr. Davidson's ability to be that specific
20   because he didn't have those specifications
21   at the time of his deposition.  If there
22   is -- I can't imagine more than a handful of
23   questions that would be related to that
24   issue.
25       On follow-up, if they say they need that
26   in order to prepare for trial, then we can
27   arrange to have Mr. Davidson available by
28   telephone or whatever for that, for them to
29   ask him those questions about that
30   affidavit.  If that's what they need, we can
31   accommodate that.  That's something we can
32   make happen if the Court believes that's

15

1   necessary.

2       As to the experts, there is a little bit

3   of an issue of semantics going on here.

4   Because even today, even with the new

5   affidavit that was prepared in response to

6   the summary judgments on behalf of Mr. Ewing,

7   the industrial hygienist, he still is not

8   making specific calculations as to specific

9   doses from specific products.  As he said in

10  his deposition, there is not enough

11  information available to do that.

12      It's our view that he's not required to

13  do that under the jurisprudence of

14  Louisiana.  It's not part of our burden.

15  It's not something that he has undertaken to

16  do.

17      What he has, however, provided are

18  ranges of exposures based on his review of

19  the literature of where he believes certain

20  working conditions described by the plaintiff

21  would have placed him with regard to, say,

22  joint compound products.

23      In which kind of exposure ranges he

24  would find himself.  That is what the new

25  information from Mr. Ewing has provided.  It

26  is consistent with what he has said in his

27  deposition.  It is more detailed than what he

28  said in his deposition.  It is more detailed

29  than what he said in his original report.

30      We made it clear and Mr. Ewing made it

31  clear that the way testimony on these kinds

32  of subjects is presented at trial is

16

1    sometimes by hypothetical.  This relates more
2    to Dr. Schwartz, the pathologist, than
3    Mr. Ewing.
4         Really, all that Mr. Ewing has done has
5    made a more point, more direct, response to
6    specific inquiries in response to these
7    motions.  It's still the same subject
8    matter.
9         I mean, the big surprising testimony
10   that the defense is complaining about is the
11   fact that our experts believe that their
12   products were a cause of my client's injury.
13   I would submit that that's not something new
14   and novel and surprising.  That has been the
15   gist of their testimony from their initial
16   disclosure, from their initial reports.
17        All that has happened is what happens in
18   every case.  As additional documents and
19   additional facts come in, the factual basis
20   gets a finer point put on it.  And it's --
21   there maybe specific details that get added
22   as it develops all the way up until the time
23   the questions are asked at trial.  That's no
24   different than any other case.  That's all
25   that's happened here as to Mr. Ewing.
26   THE COURT:
27        So, the opinion is really based on the
28   factual testimony, based on the industry in
29   which the plaintiff worked and the type of
30   work he did and the products he testified or
31   others testified they were exposed to.  These
32   are the levels of exposure to asbestos that

17

1    would have been created as a result of --
2  MR. OLIVER:
3         Ranges that come from the industrial
4         hygiene literature.  He still has not, and I
5         will represent to the Court will not, by the
6         time of trial, be able to do a dose
7         calculation that says, this is the
8         numerically-precise dose from a Georgia
9         Pacific joint compound product.  He can't do
10        that.
11        What he can do is say, these are the
12        ranges.  In my opinion, those ranges are
13        substantially in excess of background, which
14        is what he has been saying all along.  There
15        is nothing that is really new there.  It's
16        more detailed.  It's more pointed.  There is
17        a sharper point on it, but it's still the
18        same thing that he has been in the case to
19        testify from the beginning.
20        As to Dr. Schwartz, candidly there is --
21  THE COURT:
22        Let me just interrupt you.  But I think
23        the -- isn't the plaintiff's motion based on
24        the fact that there is no testimony as to
25        what the ranges are to establish that the
26        plaintiff could have been exposed to enough
27        levels to cause his injury?
28        The whole causation argument is, where
29        is the evidence that there was asbestos, you
30        know, dissemination above these threshold
31        levels to cause injury?
32  MS. MONCLA:

1         I'm sorry, Kevin.  Since he mentioned

2    Georgia Pacific, may I jump in?  I think your

3    Honor has just pointed out the gaping hole in

4    this case.  And that is that plaintiff

5    himself did not testify as to any specific

6    exposure to -- in my case to Georgia Pacific

7    joint compound.  From which Mr. Ewing could

8    then go back and say, look, he worked in this

9    room.  It was 50 feet long and 30 feet wide

10   and it was "X".  And he was there for three

11   hours.  He was fifty feet away or ten feet

12   away from gentlemen who were actually mixing

13   the product and sanding the product.  Those

14   facts do not exist in this case.

15        So, your Honor is precisely right.  To

16   say that Mr. Ewing has a range you must also,

17   in all fairness, Kevin, add that that range

18   is not specific to Georgia Pacific.  It is

19   specific to Georgia Pacific, Bondex, U.S.

20   Gypsum and another joint compound grout.

21        So, that is the very foundational

22   problem that plaintiffs have in this house of

23   cards that they are trying to build.

24 THE COURT:

25        Mr. Davidson was a roofer.  He testified

26   he worked near dry wall installers maybe?

27 MR. OLIVER:

28        In addition to his work as a roofer for

29   a period of time he was helper for a sheet

30   metal company that installed air conditioning

31   vents, ventilation, and other components of

32   ventilation systems.

1              Primarily doing that, in addition to
2      some work on a family home he was exposed to
3      dust from joint compound work of the kind the
4      Court has seen in other cases:  mixing,
5      sanding, things of this nature.
6              The deposition testimony where he
7      specifically identified Georgia Pacific as
8      one of the most common brands that he saw
9      there.
10             Can we say that on a certain day he
11     worked with a joint -- worked around a
12     Georgia Pacific product for "X" number of
13     minutes and "X" number of hours in a room of
14     "X" size?  No.  We can't say that.
15             But it's our position under the law of
16     Louisiana we don't have to say that.  We
17     don't have to prove the dose with that kind
18     of numerical precision they are asking for.
19 THE COURT:
20             Okay.
21 MR. ELLIOT:
22             Your Honor, I --
23 THE COURT:
24             But I think, doesn't -- Georgia Pacific,
25     well, not to get into the merits.  But don't
26     they allege that they made joint compound
27     that did not contain any asbestos material?
28 MS. MONCLA:
29             Your Honor, I will tell you that I don't
30     know what years Kevin wants to talk about.
31     But that is not a part of our basic argument
32     with regard to the '66 to '71 year period.

20

1    In that period of time, the only
2    exposures that are alleged are bystander.  In
3    other words, he wasn't working with the
4    product.  He was -- he claims that he was
5    putting in duct work for air conditioning
6    systems some feet away when the gentlemen
7    downstairs were working with the joint
8    compound products.
9    He says he worked in Shreveport.  He
10   worked in Alex.  He worked in Baton Rouge.
11   He worked in New Orleans.  He could not name
12   which product he worked around.  Your Honor,
13   to say that plaintiffs are not required to
14   identify a product manufacturer is -- almost
15   takes my breath away.
16   Because, your Honor, at its very
17   foundation in a products case the first thing
18   you have to prove is that your plaintiff was
19   exposed to this manufacturer's product.  And
20   our argument is that the testimony as it
21   stands from plaintiff that they cannot do
22   that.
23   There was one building that plaintiff
24   says he worked around Georgia Pacific
25   products, and it was the American Towers
26   building.  Which, of course, we showed in our
27   summary judgment it couldn't have been
28   because that building was not built until
29   1977, seven years after he quit working.
30   So the causation problem, we believe,
31   your Honor, is huge for plaintiffs in this
32   case.  It is not -- please don't let these

21

1      skilled lawyers convince you that this is
2      not -- and they are skilled -- that this is
3      the usual case.  It is not.
4    THE COURT:
5          Mr. Davidson has not identified anyone
6      who worked with him, Georgia Pacific products
7      at the time he --
8    MR. OLIVER:
9          Of course, he has, your Honor.  It's in
10      his deposition testimony.  Of course, he has
11      identified Georgia Pacific products as
12      products that were being used by the
13      tradesmen that he was around while they were
14      doing the work.  Of course, he has.
15          I do not mean to suggest that we don't
16      have to prove that he was around Georgia
17      Pacific.  We do.  We have.
18    THE COURT:
19          Okay.
20    MS. MONCLA:
21          When?  Where?  How long?  How much?
22    MR. OLIVER:
23          That may be my burden in other
24      jurisdictions; it's not my burden here, your
25      Honor.
26    MS. MONCLA:
27          Your Honor, it certainly is the burden
28      under Louisiana Supreme Court *Rando* case that
29      just came out the year before last.  I don't
30      know of any change in the law since *Rando*.
31    MR. OLIVER:
32          Your Honor, as we read *Rando,* it does

1       not require us to quantify the dose with the

2       level of precision that she's insisting.

3       It's more than just he might have worked with

4       a product, which is what *Rando* said is not

5       enough.

6  THE COURT:

7       Right.

8  MR. OLIVER:

9       We have said he was present when Georgia

10      Pacific joint compounds were being used in

11      ways that created visible dust.  That is

12      enough initially to raise that fact issue and

13      let us develop that issue.  And so, you know

14      we are getting in the merits there.

15  MR. SWARR:

16      Judge, can we stick with what we were

17      arguing?  I think we got highjacked by

18      Ms. Moncla.

19  MS. MONCLA:

20      The judge raised a question that we

21      wanted to address, but we can certainly go

22      back.

23  THE COURT:

24      I raised the question.

25  MR. OLIVER:

26      With regard to Dr. Schwartz, the

27      pathologist, Dr. Schwartz has testified in

28      his deposition that he was not able to

29      conduct a product-by-product risk assessment

30      analysis because that's not his discipline.

31      That's not what he does.

32      He is a pathologist.  He's a medical

1    doctor.  He talks about the effects of
2    various toxins on the human body and what
3    they cause and what they don't cause.
4         Since this time of his deposition, he
5    has reviewed his additional evidence and
6    testimony from the industrial hygienist and
7    said, okay, based on that information, the
8    exposures that are discussed in the
9    deposition -- that are discussed in the
10   industrial hygienist's materials that he has
11   now reviewed -- those constitute exposures
12   above background, which in his opinion, are
13   part of that overall cumulative dose that
14   causes this disease.  And thus, those
15   exposures above background are exposures
16   which he believes are substantial,
17   contributing factors to the disease.
18        He still has not and cannot and will not
19   conduct an individual defendant-by-defendant
20   exposure analysis and assessment of the risk
21   associated with that.  But again, that's not
22   our burden.
23        He does have evidence that each of these
24   exposures above background contributed to
25   this dose that was ultimately causing the
26   disease.  And he believes those exposures
27   above background were, in fact, substantial
28   contributing factors to the development of
29   this disease.  That's what he said in his
30   deposition.
31        There was an issue in the deposition, as
32   the Court can follow from the two days of his

24

1    deposition, where on the first day he said he
2    had no opinion about Georgia Pacific.  That
3    was corrected on the second day, and he said
4    he did have an opinion about Georgia
5    Pacific.  So that's -- we have addressed
6    that.
7           Again, what Dr. Schwartz has done is
8    reviewed additional material from the
9    industrial hygienist and placed a finer and
10   more specific point on his opinions.  He's
11   responding, in essence, to the hypothetical
12   that we would ask him at trial about assuming
13   these facts to be true.  Is this a
14   substantial contributing factor?
15          That's what we have presented.  So, we
16   don't see that there is anything that is new
17   and surprising here.  We believe the Court
18   should go ahead and hear the merits of the
19   motions based on the proof.
20 THE COURT:
21          I didn't read all of the depositions,
22   and I don't know what specific questions were
23   asked.  I think the plaintiffs are certainly
24   entitled to elicit affidavits from their
25   experts necessary to defeat summary judgment
26   which is what they attempted to do.
27          If those opinions go beyond what was the
28   subject of depositions, we have to deal with
29   that.  And maybe, you know, we can reopen
30   those depositions for the limited purpose of
31   exploring the additional opinions rendered by
32   these experts and the factual testimony given

```
 1              by Mr. Davidson.  But I don't see any reason
 2              not to go forward on the motions for summary
 3              judgment.
 4    MR. OLIVER:
 5              Your Honor, we can provide dates today
 6              for depositions for both Mr. Ewing and Mr. --
 7              Dr. Schwartz.
 8    THE COURT.
 9              The bulk of the argument is that they
10              can't prove causation, and there wasn't
11              substantial exposure.  And the plaintiffs did
12              what they thought was necessary to defeat
13              those arguments.
14    MR. ELLIOT:
15              Your Honor, I'll talk about Mr. Ewing.
16              And Mr. Abraham, I believe, is going to
17              address Dr. Schwartz.  I think the point here
18              is that Mr. Ewing, during his deposition,
19              very clearly said that he was not going to
20              quantify any exposures, period.  And that's
21              exactly what he does in his affidavit.
22              Whether it's as to a quantification as to
23              some general exposure standard or a
24              quantification as to an actual dose
25              reconstruction.
26              And when asked how you would have to
27              quantify those exposures, he says, "Well, I
28              would need more information.
29              "Well, what kind of information would
30              you need?
31              "Well, I need duration, and I need
32              frequency."  And he doesn't do that.
```

26

```
 1   THE COURT:
 2            Well, it sounds like because those
 3       questions were directed to the dose exposure
 4       that Mr. Davidson was subjected to at the
 5       time that he conducted his job in his prior
 6       employment, which I guess he's saying, I
 7       can't recreate.  I'm not a
 8       reconstructionist.
 9            What he did is looked at the literature
10       in the industry based on the facts that were
11       elicited and made some opinions.
12   MR. ELLIOT:
13            Well, and I --
14   THE COURT:
15            You know, extrapolated from that and
16       rendered some opinions.  Whether or not the
17       jury believes it is a matter for trial.
18   MS. MONCLA:
19            Yes.  Your Honor, I know we are going to
20       get to this in a minute, and that is the
21       issue of fundamental unfairness and
22       substantial prejudice to plaintiffs.  But I
23       just want to, while we are here, address the
24       issue of the characterization of the new
25       reports.
26            And I think if you will bear with me, I
27       can give you a very clear picture of what we
28       had in January when we got the first report,
29       what we have in March as a result of the
30       deposition testimony, and what we got last
31       week, last Monday.
32            We started out with a three-page report,
```

1    and now I'm talking about Dr. Schwartz.  And

2    in that report was this conclusion.  The

3    conclusion of his December 23rd report was,

4    "Conclusion:  to a reasonable degree of

5    medical certainly I have concluded that

6    Mr. Davidson has a pleural-based mesothelioma

7    that was caused by previous childhood

8    occupational exposure to asbestos.  The

9    exposure to asbestos took place during his

10    childhood and while working as a roofer and

11    as a plumber --

12    Now, obviously, there was nothing about

13    joint compound in this conclusion.  So, I was

14    very interested to take an active part in

15    Dr. Schwartz' deposition.  That deposition

16    went forward, the first segment of it, on

17    March 10th, the evening of March 10th.

18    Now, this is what I asked him.  And

19    Mr. Oliver says that it's a semantics issue.

20    This was my question.  "Dr. Schwartz, do you

21    have any opinion relating to Mr. Davidson's

22    work with or around joint compound products?"

23    3/10 deposition of Dr. Schwartz,

24    Page 11.  In response to this question

25    Dr. Schwartz answered:  "My opinions are

26    stated in the report--" He was referring to

27    this report in the conclusion that I just

28    read you, "of what I found Mr. Davidson to be

29    exposed to after reviewing the records that

30    are outlined in the report."

31    And that, of course, prompted this

32    question:  "Well, then, Dr. Schwartz, I have

28

1    read your report through, and I may have
2    missed it.  I see no reference to joint
3    compound products in your report.  Does that
4    mean that you don't have an opinion with
5    regard to work -- any alleged work -- with or
6    around joint compound products?"
7        To which he answered:  "No.  Not
8    currently.  No."
9        And then he said it again, your Honor,
10   after his lawyer -- lawyer for the plaintiffs
11   objected.  He said, "Not currently, no."
12       Then I asked him, "Do you intend to
13   change your opinion before trial?"
14       Then he said, "I don't have any
15   intention of doing that at present."  So your
16   Honor, this is where the evidence stood as of
17   the March deposition.  Clear summary
18   judgment, right?  No evidence of causation.
19   They don't have an expert who can say -- who
20   has any opinion about causation as to Georgia
21   Pacific joint compound products.
22       Now, the second session of his
23   deposition started off very interestingly
24   because I was told we have got to make a
25   clarification because there was a
26   misunderstanding in Ms. Moncla's questions.
27       First of all, this questioning could not
28   have been any more clear.  I don't think that
29   there is anything -- I wasn't trying to trick
30   him, obviously.  I'm just trying to find out
31   if he has any causation opinions, which he
32   clearly didn't.

29

```
 1            In the second deposition he -- the only
 2     thing he says is that he has now had -- and
 3     this is a very important point, your Honor --
 4     he has now had a chance to review
 5     Mr. Ewing's, the industrial hygienist's
 6     report and his deposition.  He says that.
 7     And then he goes on to say that he believes
 8     he was exposed to Georgia Pacific joint
 9     compound products, but he has no other
10     opinions and no opinion as to specific
11     causation.  So, where does that leave us?
12            Last Monday, attached to plaintiff's
13     opposition to our summary judgment, which as
14     of the filing of our summary judgment on
15     April 1, there was no evidence of specific
16     causation as to Georgia Pacific.
17            Code of Civil Procedure, Article 966, is
18     designed for that very purpose, to take out
19     of the case the people who shouldn't be in
20     the case.
21            So, what happens last Monday?  Tuesday,
22     actually.  I received this 24-page report
23     from plaintiffs.
24            At the top it is labeled, "Expert report
25     of David Schwartz."  And it is some 24
26     pages.  Of course, it is now replete with the
27     Rando window dressing of causation.  And to
28     say that the opinions set forth in this
29     24-page were originally somewhere previously
30     provided is simply not true -- not the case,
31     at least with regard to Georgia Pacific
32     products, your Honor.
```

30

1   Now, what about the admissibility since
2   we are talking about a motion to strike an
3   expert report that was first given to us last
4   week?  Your Honor, the Fourth Circuit case
5   law could not be more clear.  There is a case
6   directly on point.
7   After an expert has given a report, has
8   given deposition testimony about that report,
9   he cannot then come provide another report in
10   the context of a summary judgment hearing.
11   That case is the *Bell* case, which we
12   cited in our brief.  And the purpose -- when
13   the purpose is to contradict prior deposition
14   testimony and come up with wholly new
15   opinions, that has to be stricken under
16   Fourth Circuit law.
17   That this was a new opinion cannot be
18   questioned.  Plaintiffs admit it in their
19   opposition brief that this is a new report.
20   There is no question that it's a new report:
21   24 pages versus 3 pages.
22   So, your Honor, we believe that for
23   purposes of the summary judgment, it is
24   simply not right to allow plaintiffs to now
25   come up with wholly new opinions that were
26   denied on the record by their expert.  To now
27   come in at the summary judgment stage and
28   say, oh, yeah, we do have opinions with
29   regard to Georgia Pacific.  It's not fair.
30   And it's right.  And it's called a
31   manipulation and a thwarting of a summary
32   judgment procedure in the *Bell* case.  And

31

```
1              that's exactly what is happening here.
2    THE COURT:
3                  I think striking the report, the
4              affidavit, is Draconian.  I think you should
5              be allowed to conduct additional discovery on
6              these new opinions.
7    MS. MONCLA:
8                  Your Honor, if that's your position, we
9              totally respect it.  But it cannot happen in
10             two weeks.  What they want is for us now to
11             drop our trial preparation, go depose
12             Dr. Schwartz in Colorado.
13   THE COURT:
14                 I tend to agree.
15   MS. MONCLA:
16                 It can't happen.  That's not right.
17   MR. SWARR:
18                 Judge, we keep calling it a new
19             opinion.  I don't know why she put this crud
20             up here.  But she just said he changed -- he
21             gave -- he didn't change.  He gave it based
22             on information that was provided by an
23             industrial hygienist.
24                 This guy is a doctor.  He doesn't know
25             anything about actual exposure.
26             They all base their opinion on what
27             industrial hygienists say.
28   THE COURT:
29                 Right there, he said, "Not currently,
30             no."  He doesn't have an opinion about joint
31             compound.  This is in March of this year.
32   MS. MONCLA:
```

Eve Kazik, RMR
Civil District Court, Parish of Orleans

1              March 10th.

2    MR. SWARR:

3              And the day after he said, I do.  Yes.

4    THE COURT:

5              I'm hearing they got this eight days

6         ago.

7    MR. SWARR:

8              The day after.  She doesn't put that up.

9    MR. OLIVER:

10             Your Honor, may I clear this up?  I have

11        the citation.  First of all --

12   THE COURT:

13             When was the most recent report given to

14        the defendant?

15   MS. MONCLA:

16             Last Monday.

17   MR. OLIVER:

18             That's true.  That's correct.

19   MS. MONCLA:

20             A 24-page report.

21   MR. OLIVER:

22             There is a couple of things directly

23        responsive to what Mr. Moncla already said.

24        She he has some blow-ups there.  As a skilled

25        advocate, I would understand why she wouldn't

26        blow up this one.  But this is from the first

27        report.

28             "Mr. Davidson was promoted to a roofer.

29        He operated his own business for a year and

30        continued to work in roofing until 1971.

31             "While working as a roofer, he was

32        exposed to all types of roofing material and

33

```
 1          worked around other tradesmen including
 2          insulators, dry wall workers, sheet metal
 3          workers, and HVAC workers.
 4                So, the knowledge of exposure --
 5          secondary exposure to dry wall workers has
 6          been in the report from the very beginning.
 7   MS. MONCLA:
 8                Your Honor, Kevin will tell you --
 9   MR. OLIVER:
10                Let me finish.  I didn't interrupt you.
11   MR. SWARR:
12                Can he finish?
13   MS. MONCLA:
14                It was under the history, not under the
15          opinions.
16   MR. SWARR:
17                Judge, can we have an uninterrupted
18          argument?
19   MS. MONCLA:
20                I'm sorry, your Honor.  I apologize.
21   MR. OLIVER:
22                On the second day of Dr. Schwartz's
23          deposition my partner who was covering the
24          deposition for me says this:  "My
25          understanding is that he does have opinions
26          about joint compound products and
27          Mr. Davidson's work with it.  And we would
28          expect to ask him questions about those
29          opinions at the time of trial.  That's the
30          end of the preparatory matters I wanted to
31          address.  I'm not sure if counsel for G.P.
32          wants to resume her questioning.  My notes
```

1    indicate that she had just finished at the
2    time we last concluded."
3         That is on March 24th, the beginning of
4    Day 2 of his deposition.  They were told that
5    before when he was asked the questions, they
6    asked him a bunch of questions about risk
7    assessment and what industrial hygienists
8    do.
9         And then say, "You don't have any
10   opinions about Georgia Pacific?"  And he
11   says, "No."  He meant risk assessment
12   opinions.  He said in his affidavit that's
13   what he meant, was risk assessment opinions.
14        He does have medical opinions.  He
15   believes that those exposures were
16   causative.  So, I understand.  I don't
17   think -- it's not something that the wheel
18   has to be reinvented here.
19        I believe it's something that with, you
20   know, the earliest -- Mr. Galerston reminded
21   me that we did make contact with
22   Dr. Schwartz.  The first day Dr. Schwartz
23   could give us for the deposition is the 29th,
24   which is the Friday before we are supposed to
25   begin trial.  I understand where that puts
26   us.
27        But I don't think it's something that we
28   have to continue the case off into infinity.
29   I think it's something with a very brief
30   delay on that issue we could begin trial just
31   on a very briefly delayed basis, if that's
32   what the Court believes is appropriate.

35

1         I can present him for deposition on the
2    29th, and I believe we also have -- I think
3    that's a date that Mr. Ewing has also given
4    us, the first date he had.  I wish I could
5    give earlier dates, but I have been advised
6    that I can't.  That's where we are.  I can
7    present them for deposition.
8         I don't think there is any need to
9    continue this case off far into the future.
10   I think a very brief delay is what is needed
11   to address these issues.  It's not a change
12   of opinion.  We believe it's just a
13   refinement.  It's something that is not new
14   information for a defendant to hear that the
15   plaintiff's expert has an opinion that their
16   product caused any injury.  That's the
17   point.  That's why we are here.  I know
18   that's what the case has been about in the
19   beginning.
20  MS. MONCLA:
21        Your Honor, we understand that the
22   lawyers believe that there is a case against
23   the defendants.  But it's quite another
24   thing, your Honor, for the plaintiff to
25   actually give the testimony and then for the
26   experts to opine on that testimony.
27        In all fairness to Kevin, he was not
28   there at the second deposition of
29   Dr. Schwartz.  Mr. Armitage was, I believe.
30   But the portion that he read from that second
31   deposition was Mr. Armitage.  It wasn't
32   Dr. Schwartz.

```
 1          Dr. Schwartz did not give a causation
 2     opinion in that testimony.  He said, "I
 3     believe he was exposed to Georgia Pacific,"
 4     but he did not give a causation opinion.
 5          So, your Honor, if your Honor is
 6     inclined to open up discovery, I can speak
 7     for Georgia Pacific.  If we -- if we have to
 8     go that route, we will.  But we cannot take a
 9     plaintiff's expert's deposition three days
10     before trial, give it to our expert, have him
11     digest and revise his opinions, if
12     necessary.
13          Because up until last Monday, your
14     Honor, we have summary judgment clear on the
15     record and on the basis of this testimony.
16     So, it is a new case.  And we are not saying
17     it has to be continued into infinity either.
18     But we certainly have to be -- fundamental
19     fairness mandates some time to flesh out
20     these new opinions and how they were reached.
21 THE COURT:
22          Well, you have his report.  I don't
23     understand why your expert can't digest that
24     report now.
25 MS. MONCLA:
26          Your Honor --
27 THE COURT:
28          I mean --
29 MS. MONCLA:
30          You have to let us depose..
31 THE COURT:
32          I don't think Dr. Schwartz is going to
```

1          change his deposition testimony from that
2          opinion.
3   MR. OLIVER:
4              Your Honor, the defense experts in these
5          joint compound cases, they always say the
6          same thing anyway, is that no amount of joint
7          compound exposure ever -- is ever going to
8          cause someone's disease, ever.  That's true,
9          and I'm not joking.  They say that, never
10         ever.
11  MR. SWARR:
12             It has a particular fiber type in it of
13         a particular length that you could literally
14         throw it on your head all day every day, and
15         it simply doesn't cause this disease.  That's
16         their opinion.
17             So, it doesn't matter what Dr. Schwartz
18         says, what our plaintiff says, what our
19         industrial hygienist says.  It doesn't
20         matter.  This is all a big, elaborate game,
21         Judge.
22             The plaintiff I.D.d her product.  She
23         knows this is not the first deposition this
24         doctor has given.  This is not the first
25         deposition this industrial hygienist has
26         given.  Everybody knows exactly what
27         everybody is going to say on the stand.  This
28         is absolutely just a last ditch attempt to
29         postpone a living mesothelioma victim's
30         trial.  That's all it is, period.
31  MR. ABRAHAM:
32             Your Honor, I have been waiting.

38

1  Michael Abraham for Union Carbide
2  Corporation.  Dr. Schwartz's new report also
3  affects the Daubert challenge.  I filed that
4  motion based on his first report because of
5  an opinion stated in his conclusion that
6  Ms. Moncla had up where he said each exposure
7  contributed to the cause.  Based on that I
8  filed a challenge before his deposition.  I
9  filed it March 1st or 2nd.  Before his
10  deposition.
11      During his deposition he retracted that
12  statement.  He withdrew.  He changed his
13  opinion.  I quoted it in my motion.  When
14  he's -- the first time he is asked, every --
15  "Dr. Schwartz, is it your opinion that every
16  single exposure to asbestos above background
17  is a substantial contributing factor to the
18  cause of the mesothelioma?  Or is it just it
19  increases the risk of contracting the meso?
20      "It contributes to the cause of meso, in
21  my opinion."
22      Counsel moves on:  "Is it your
23  opinion --
24      "DR. SCHWARTZ:  Excuse me.  I don't
25  want -- I want to take that answer back.  You
26  can't say any specific exposure causes
27  mesothelioma.  What you can say is each
28  exposure enhances the risk."  He took back
29  his causation.  He took back.
30      Day 2, March --
31  THE COURT:
32      He clarified his answer.


39

1  MR. ABRAHAM:

2         He changed it to a risk.  And he says he

3         understands the difference between risk and

4         causation.  He said, is it a substantial

5         factor in causing it.  He first says, yes.

6         Then he goes, "I want to take that back,

7         though."

8         Then he's quoted his report.  "You say

9         in your report each and every exposure to

10        asbestos contributed to the development of

11        Mr. Davidson's mesothelioma," closed quote.

12        "What articles can you cite to support

13        this conclusion?

14        "Well, first I meant each and every

15        exposure above background contributes to the

16        risk."  He's quoted his report, and he says,

17        what I meant was, he changed it to risk.

18        Now, we get a 24-page report to fix

19        that.  I mean, that's a different opinion.

20        That's clearly different.  He changed twice.

21        He changed it from, he says it caused it.  He

22        change it to, wait, let me change that.  It

23        enhances the risk.

24        The last question asked in his

25        deposition was, "Do you understand and

26        appreciate from the medical perspective there

27        is a difference between cause and risk when

28        it comes to asbestos disease?

29        "Yes."

30        As they said, he's an expert.  He

31        knows.  He knows what he's supposed to say.

32        He didn't say it.  Every answer he gave was

1    only about risk.  He never made the
2    connection to causation, which is why, like
3    Ms. Moncla I think and myself and the others
4    had sections in the summary judgment saying
5    their expert had not established causation.
6        Based -- the purpose of the deposition
7    is to find out his opinions.  We did.  We
8    asked them.  He changed them.  Five days
9    later, Day 6, this is an affidavit that's
10   titled, "Expert report."  A brand new report
11   where he is addressing any exposure, all of
12   that.  And it's filed in opposition to the
13   summary judgment.  It's not filed in
14   opposition to the Daubert challenge.  So,
15   this is going to come in.
16       Based on this testimony of risk, there
17   was no need to address any exposure above
18   background causing it because he didn't say
19   it.  It wasn't his opinion when we deposed
20   him.  Now it is.  We do need to go depose him
21   to address everything in this report.  It's
22   not just about the specific causation.  It
23   goes to the Daubert challenge as well.
24   MR. OLIVER:
25       May I address that just very briefly?
26   When they are asking him questions about
27   hypothetical exposure and in general and big
28   picture things, you have to talk about risk
29   because you're not talking about a particular
30   patient.  You can't say it causes the disease
31   if you don't even know the patient has it or
32   is going to go get it.

1        So, when you're talking about patients

2     as a whole, it is risk.  When you're talking

3     about Mr. Davidson, his risk became a hundred

4     percent because he got the disease.  In a

5     patient that has the disease, you talk about

6     cause.  In looking at a demographic cohort or

7     a population exposed you talk about risk.

8     It's different terminology because it's a

9     different patient.  I mean, it's a specific

10    patient with regard to Mr. Davidson.  That's

11    why the terminology changes a little bit.

12    But Mr. Davidson was at risk for the disease

13    until he was diagnosed with the disease.

14    Those things that were previously risk became

15    cause in his case.

16        So, it's a very skilled defense counsel

17    tactic to talk in terms of these theoretical

18    hypothetical people and get sound bytes that

19    they can use -- maybe effectively, maybe

20    not -- in cross examination, pardon me, cross

21    examination at trial.  But that's what it

22    is.  It goes to the weight.  It's cross

23    examination.  It has nothing to do with

24    striking the opinion and denying Mr. Davidson

25    his day in court.  If they need additional

26    discovery --

27 THE COURT:

28        His opinion is that the cumulative

29    exposure increases the risk of injury.

30 MR. ABRAHAM:

31        Risk is not our standard.

32 MR. SWARR:

1         Your Honor, risk is the standard.   Read
2         the Fourth Circuit.   And also --
3   MR. ABRAHAM:
4         Read *Rando*.
5   MR. SWARR:
6         This is an interesting argument for
7         Mr. Abraham to make because there's a
8         surprise witness that I am going to trial
9         with down the hall with in two weeks.
10        Dr. Jones, at Tulane, only talks about risk.
11        Because you cannot say which one was the
12        cause.
13        You can only say which ones increased
14        his risk.   So, I would love for you to grant
15        a Daubert motion that no doctor can ever say
16        anything about risk because I would be done
17        with about 90 percent of all of their
18        experts.
19        But that's not the law in the Fourth
20        Circuit.   If you read the cases, they all
21        talk about risk.   That's all you can talk
22        about.
23  MR. ABRAHAM:
24        Your Honor, let me just point out,
25        Mr. Oliver was trying to say a hypothetical.
26        He's quoted regarding Mr. Davidson's cause.
27        Quote, "Each and every exposure to asbestos
28        contributed to the development of
29        Mr. Davidson's mesothelioma," closed quote.
30        "What articles can you cite to support
31        that?"
32        What I first meant each and every --

43

1   THE COURT:

2          Because at that point Mr. Davidson was

3          diagnosed with mesothelioma.  So every

4          exposure, we no longer have to say increases

5          the risk because he already has the disease.

6          Every exposure, every exposure is -- and

7          there is case law to support that -- is a

8          substantial contributing factor given the

9          nature of the disease.

10  MS. MONCLA:

11         Your Honor, that is not what their

12         expert says.  Their expert says every

13         exposure above background at some point.  If

14         we are talking about this case --

15  THE COURT:

16         Okay.

17  MS. MONCLA:

18         May I just interject here?  And excuse

19         me, Mike.  I don't want to get caught up in

20         this risk versus causation for my client.

21  THE COURT:

22         That's an argument for the jury to hear.

23  MS. MONCLA:

24         Not for my client, your Honor.  Because

25         the testimony regarding my client could not

26         be anymore clear.  "Do you have any opinions

27         regarding joint compound?

28         "No, I don't."

29         And in the deposition that took place

30         two weeks later -- not the next night or the

31         next day -- two weeks later, he tells me that

32         he has received Dr. Ewing's report.  He has

44

```
1            read it, and it's not like he just got it
2            last week.  That is what is so unfair about
3            this, your Honor.
4   THE COURT:
5            I tend to agree.  Counsel isn't arguing
6            that Mr. Davidson never said he worked around
7            joint compound.  I mean --
8   MR. SWARR:
9            She did say that.
10  THE COURT:
11           Clearly, he testified he worked around
12           insulators given his job as a roofer in the
13           air conditioning industry where he did HVAC
14           work.
15           She knew that that factual evidence was
16           there.  So, then she goes and does her
17           discovery to explore, how is it that he's
18           exposed to my client's product?
19  MS. MONCLA:
20           That's exactly right, your Honor.
21  THE COURT:
22           Okay.  Then he talks about joint
23           compound and seeing the insulators mix it or
24           whatever.  Fine.
25           The expert doesn't connect the dots for
26           her.  And it really is unfair now for her to
27           be ambushed.  This is a classic ambush, I
28           have to say, as to Georgia Pacific.
29  MS. MONCLA:
30           Thank you, your Honor.
31  THE COURT:
32           You get a report when?
```

45

Eve Kazik, RMR
Civil District Court, Parish of Orleans

1   MS. MONCLA:

2            Last Monday.  I got it Tuesday.

3   THE COURT:

4            That now specifically talks about

5        Georgia Pacific and causation as to the

6        exposure.

7   MS. MONCLA:

8            That's our position, your Honor.

9   MR. ABRAHAM:

10           I'm tied Ms. Moncla.

11  MS. MONCLA:

12           If you want to grant a continuance --

13  THE COURT:

14           But I also agree that you can redepose

15       Dr. Schwartz when?  April 29th?

16  MR. SWARR:

17           Judge, so I'm clear so we are all on the

18       same page.  Are you under the understanding

19       that the plaintiff, himself, did not identify

20       her product as being on his job sites?

21  THE COURT:

22           No.  I think he did.

23  MR. SWARR:

24           So, what's the surprise?

25  THE COURT:

26           That --

27  MS. MONCLA:

28           That Dr. Schwartz has opinion as to

29       causation, Frank.

30  MR. SWARR:

31           Which he then said at the next -- it's

32       actually not the second.  It's the

46

Eve Kazik, RMR
Civil District Court, Parish of Orleans

```
 1          continuation of the one --
 2   MS. MONCLA:
 3          Two weeks later.
 4   MR. SWARR:
 5          So what?  Two months later.  It's the
 6          same deposition.  And they say he does have
 7          opinions because he didn't have it.  He's a
 8          doctor.  He has never seen a job site.  He
 9          doesn't care.  He's given hypotheticals.
10   THE COURT:
11          Okay.  He doesn't say he has opinions,
12          right?
13   MS. MONCLA:
14          He didn't give any opinions, your Honor.
15   MR. SWARR:
16          Did you ask him?
17   MS. MONCLA:
18          I did.  Maybe we need to recess.
19   THE COURT:
20          Is that statement on the record that
21          says he does have opinions?
22   MR. SWARR:
23          Right.
24   MS. MONCLA:
25          The person who said that is the lawyer,
26          not Dr. Schwartz.
27   THE COURT:
28          Were there any follow-up questions at
29          that point?
30   MS. MONCLA:
31          Yes, your Honor.  There was follow-up.
32          And Frank wasn't there nor was Kevin there
```

47

```
 1              nor was Billy there.  There was Mr. Armitage.
 2   MR. OLIVER:
 3              Page 101.  "Well, I would just add that
 4         he was also exposed to asbestos while
 5         repairing and renovating a cabin where he was
 6         exposed to joint compound while working
 7         around dry wall workers while working as a
 8         construction worker."
 9   THE COURT:
10              Who says this?
11   MR. OLIVER:
12              Dr. Schwartz.
13   MS. MONCLA:
14              He said he was exposed.  He said nothing
15         about causation.  I went on --
16   THE COURT:
17              Was he asked, though?
18   MS. MONCLA:
19              I asked him.
20   MR. SWARR:
21              Look.  Every exposure was a cause.
22         Where is the surprise, Judge.  This is
23         crazy.
24   MS. MONCLA:
25              This isn't right.
26   MR. SWARR:
27              I couldn't believe this that the guy
28         didn't identify her product and we are now
29         saying, Oh, we have got some purchase orders.
30         This is crazy.
31   MS. MONCLA:
32              Your Honor, do you mean to tell me, if
```

Eve Kazik, RMR
Civil District Court, Parish of Orleans

1              it was always there, if it was always there
2              why did we need to have a 24-page report?
3    MR. SWARR:
4              Because we have got 450 pages of summary
5              judgments.  Seriously.
6    MS. MONCLA:
7              A 24-page report, if it was always
8              there.  Your Honor, this is disingenuous.
9    MR. SWARR:
10              I agree with that.  It is.
11   MS. MONCLA:
12              This isn't right.  Now, if you want to
13              give us an opportunity, a real opportunity --
14   THE COURT:
15              When is Dr. Schwartz available to be
16              redeposed?
17   MS. MONCLA:
18              Not until the 29th, your Honor, which is
19              the Friday before trial starts.
20   MR. SWARR:
21              Let me just say -- and I know you know
22              this: -- we are constantly doing experts
23              during trials.  So, I understand where you're
24              coming from, and it's not -- but I can't
25              count how many times I have done experts, my
26              experts, their experts, everybody's experts.
27   MS. MONCLA:
28              I haven't.
29   MR. SWARR:
30              Well, then, you're new.  Because this is
31              constant.  These guys are flying all over the
32              country.  It's impossible to get them.

1   MS. MONCLA:

2           Your Honor, if our summary judgment is

3       not decided today, we have to have at least a

4       ten-day continuance because we have no

5       ability then to get a judgment ten days

6       before trial starts.

7           Now, your Honor --

8   THE COURT:

9           Why can't we go forward with the summary

10      judgments?

11  MR. SWARR:

12          We can.

13  THE COURT:

14          We are talking -- you want to depose

15      Dr. Schwartz on these new opinions.  That's

16      one thing.  There is nothing to prevent them

17      from attaching it.  That's what they are

18      supposed to do.  How else can they defeat

19      summary judgment?

20  MS. MONCLA:

21          That's not what the Fourth Circuit said,

22      not when the report -- do you have a case?

23  THE COURT:

24          I don't remember the *Bell* case.  but

25      wasn't that something that was sprung at the

26      hearing?

27  MR. SWARR:

28          Exactly.  As opposed to a guy who I.D.'d

29      him.  We told them he's got opinions about

30      them.

31  MS. MONCLA:

32          No.  No.  In the *Bell* case, the expert

```
 1              was deposed.  It was a products case.  He did
 2              not have an opinion as to whether the product
 3              was defective in design.  And he said that.
 4              He did not have an opinion.
 5                   Then summary judgment was filed, your
 6              Honor.  And then he comes up with an expert
 7              report and attached it to the opposition to
 8              their summary judgment, which is exactly the
 9              same thing that has happened here.
10                   Prior to that report there was no
11              causation testimony as to Georgia Pacific in
12              the record.  Plaintiff's attorney had the
13              opportunity.  He went on the record, and he
14              said --
15    MR. SWARR:
16                   May we get in a word edgewise?  I think
17              he's going to read it to you.
18    MS. MONCLA:
19                   It was the 24th.
20    THE COURT:
21                   No.  The Bell case, I mean, I just find
22              it hard to believe that the Fourth Circuit
23              would strike --
24    MS. MONCLA:
25                   They struck it.
26    THE COURT:
27                   -- an affidavit at the hearing when it
28              was produced prior and attached to an
29              opposition memo.
30    MS. MONCLA:
31                   You know what they said?  They said it
32              was a calculated maneuver to thwart summary
```

51

```
1            judgment procedure.  That's how strongly they
2            felt about it, your Honor.
3    MR. SWARR:
4            Under those facts.
5    THE COURT:
6            I would have to read the Bell case.
7    MR. OLIVER:
8            Let me -- Page 102, Dr. Schwartz says,
9            "Well, I have had the opportunity since
10           issuing my report to review the report of
11           Dr. Ewing from February 22."
12   THE COURT:
13           What date is this?
14   MR. OLIVER:
15           This is on March 24th.
16   THE COURT:
17           Okay.
18   MR. OLIVER:
19           And that report makes it very clear
20           that, "Mr. Davidson installed dry wall and
21           worked with joint compound on a family cabin
22           that was constructed between 1971 and 1975.
23               "During that time he mixed dry joint
24           compound, applied wet compound, and sanded
25           and dried compound with a sanding block.
26           During that time he didn't wear a mask, and
27           he was exposed on multiple occasions to dust
28           that contained concentrations of asbestos.
29   THE COURT:
30           This is Dr. Schwartz?
31   MR. OLIVER:
32           This is Dr. Schwartz.  You know, he goes
```

52

1        on to say -- if you look, he was questioned,

2        "Well, this wasn't in your first report."

3           And then he says, Well, if you look at

4        Occupational History, you see on Page 2, I

5        say, while he worked as a roofer he was

6        exposed to roofing material and worked around

7        other tradesmen including insulators, dry

8        wall workers, sheet metal workers, and HVAC

9        workers.

10  THE COURT:

11        The motion to strike is denied.

12  MS. MONCLA:

13        Your Honor, we have to ask for a

14        continuance of the trial because not only do

15        we have to depose Dr. Schwartz; we have to

16        then get the transcript.  We have to go to

17        our experts.  We have to redepose Dr. Ewing.

18        Koppers may have to redepose

19        Mr. Davidson.  I'm not interested in

20        redeposing Mr. Davidson.  But we need 60

21        days, your Honor.  It's going to be

22        fundamentally unfair if we are not at least

23        allowed 60 days to go discover this new

24        information.

25        It is new information, your Honor.  Just

26        on the face of it.  You can't go from a

27        three-page report to a 24-page report and not

28        say -- and gloss over the fact that this is

29        not new.

30        I think fundamental fairness requires

31        specifically in the case of Georgia Pacific,

32        your Honor, that we be given an opportunity,

1          even if it's just a 60-day continuance.

2   MR. SWARR:

3          Can I ask, Judge, as officers of the

4          court I would ask Ms. Moncla to tell this

5          Court that the expert doctor she's going to

6          call to testify at this trial opinion is

7          going to change in any way as to the ultimate

8          issue of whether or not exposure to her

9          product could have been a cause in this man's

10         disease under any scenario, no matter what

11         Dr. Schwartz says, no what the plaintiff

12         says, no matter what the industrial hygienist

13         say.  If it will change one bit, everything

14         she said is true.

15  MS. MONCLA:

16         Your Honor, that is so --

17  MR. SWARR:

18         Tell them it won't change.

19  MS. MONCLA:

20         Your Honor, this is so bizarre.

21  MR. SWARR:

22         That sounds like a dodge.  It is not.

23  MS. MONCLA:

24         Here am in the lion's den trying to

25         defend my client as best and as honestly as I

26         can.  And we are not even going to be given

27         an opportunity to depose not only

28         Dr. Schwartz but Dr. Ewing, their I. H. and

29         take it back to our I. H.?

30         They have come up with my industrial

31         hygiene calculations, your Honor.

32  MR. SWARR:

54

1              They are not calculations, Judge.  They
2          are reports of what's in the literature
3          that's been available to their guy for
4          years.  There is reports out there.
5    THE COURT:
6              You have the reports?
7    MS. MONCLA:
8              Yes, your Honor.
9    THE COURT:
10             You can give them to your experts.  I'll
11         look and see maybe if we can continue the
12         trial for a couple of weeks.
13   MS. LAFONTAINE:
14             Your Honor, although I'm not involved in
15         this particular dog fight, as I mentioned
16         earlier, on behalf of the HSBC defendants, we
17         would be asking for a continuance not only
18         because we haven't yet been allowed to
19         participate in written and oral discovery and
20         all the subsequent steps that follow, but
21         also because we intend to move the court for
22         leave to file a third-party demand against
23         Balfour Maclaine International Limited, who
24         we have proven based on certified records
25         from the New York Department of State
26         actually acquired the entity made the basis
27         of the petition.
28             By the way, Balfour Maclaine is a
29         commodities trading business that currently
30         does business in New York at the very same
31         location as the --
32   THE COURT:

55

1        Ms. Lafontaine did advise the Court when

2    I denied her exception of lack of personal

3    jurisdiction that ultimately she would want

4    to, in the event she was unsuccessful in

5    appeal, bring in Balfour.

6    MS. LAFONTAINE:

7        Therefore, your Honor, if you would

8    grant a continuance of a few weeks or even 60

9    days --

10   THE COURT:

11       How are we going to deal with this

12   situation?

13   MR. SWARR:

14       Judge, obviously, I understand where

15   you're sitting is a little different from

16   where I'm sitting.  She keeps saying, I

17   haven't been allowed to.  No, they chose not

18   to.

19   THE COURT:

20       Well, they would be subjected to the

21   jurisdiction of the Court had they engaged in

22   discovery.

23   MS. LAFONTAINE:

24       We were here, your Honor, as you recall

25   in February.

26   THE COURT:

27       Or filed their pleadings in this

28   matter.  I think they would have waived their

29   exception of personal jurisdiction had they

30   done that.

31   MR. SWARR:

32       If it comes down to it, Judge, we are

56

```
 1         going to be put in -- I heard somebody call
 2         it a Hobson's choice one time.  I don't even
 3         know what that means but a difficult decision
 4         where we are probably going to have to
 5         dismiss them without prejudice to afford
 6         Mr. Davidson his day in court.  It's going to
 7         probably put us in that situation.
 8              But the fact of the matter is we are not
 9         at that point yet.  It's not -- you know, you
10         have heard enough of this to know this is
11         unlike Ms. Moncla and these other people,
12         this is not one of these convoluted cases
13         where we are going to be arguing about
14         experts.  This is the case, and the defense
15         of that case could fit in this little folder
16         right here.
17    MS. LAFONTAINE:
18              I'm sorry?  the defense of my case?
19    MR. SWARR:
20              Yes.
21    MS. LAFONTAINE:
22              Actually, that is not true.  We haven't
23         had a chance to develop my case, your Honor.
24    MR. SWARR:
25              May I please finish?
26    MS. BAXTER:
27              Your Honor, may I just interject?  As
28         officers of the Court, your Honor, we should
29         be respecting each other and not talking over
30         each.  It makes the court reporter's job much
31         harder.  But this is disrespectful for
32         everyone for everyone to be jumping in.
```

1        Everyone should be allowed their chance to
2        speak the opportunity without the
3        interruption.
4  MR. SWARR:
5              Thank you.
6  MS. BAXTER:
7              I would appreciate that.
8  MR. SWARR:
9              I appreciate it.  Very simple, Judge.
10       There is no -- the battle is not going to be
11       about the ultimate liability of this import
12       over fibers.
13             The only issue with respect to them is
14       whether or not they had it -- they are a
15       successor in interest to that.  That's it.
16             So, there is no defense.  The only
17       defense is -- and they have already told us
18       repeatedly, We don't own anything.  Here is
19       all the documents.  So, we have all got the
20       documents.
21             It is a simple case.  We say there is no
22       sale.  There is no dissolution.  There is no
23       other document that would cut off the chain.
24             They say, Here's the document showing it
25       was bought by this company.  So, my point is
26       in truth and in fact they could try this case
27       starting Monday, and they know they could if
28       they had to.
29             I understand where you're coming from,
30       Judge.  If we get to that point, we will
31       probably just dismiss them without prejudice
32       because I think it's more important than the

58

1      big picture that Mr. Davidson get his day in

2      court than it is for us to prove this one

3      defendant's liability.  We will fight that

4      fight another day.

5  MS. LAFONTAINE:

6          With respect the to the successor in

7      interest, I point out to the Court that I

8      have documents from the New York Department

9      of State that show that the entity made the

10     basis of the petition was merged into Balfour

11     Maclaine International Limited, which is not

12     an HSBC entity in 1976.

13         And Balfour Maclaine International

14     Limited should be invited to this party to

15     answer for the liability of the entity made

16     the basis of the position.  Because we didn't

17     acquire it.  That's why we don't have any

18     records in our corporate records about the

19     entity.

20  THE COURT:

21         Mr. Cannella did a very good job of

22     convincing me and the Fourth Circuit

23     otherwise.  So, you're at third base with

24     this with the Supreme Court.

25  MS. LAFONTAINE:

26         Well, maybe so.

27  MR. SWARR:

28         Judge, I would ask that --

29  MS. LAFONTAINE:

30         We never owned any shares in the

31     entity.  They don't have proof we owned any

32     shares of the entity.

Eve Kazik, RMR
Civil District Court, Parish of Orleans

```
 1              The best they can show is that we
 2         acquired what might have been the parent of
 3         the entity.  This one -- the entity made the
 4         basis of the petition was a separate company
 5         incorporated in New York.  And it doesn't get
 6         any better than certified records from the
 7         New York Department of State to show it
 8         merged into Balfour Maclaine International
 9         Limited, which is not an HSBC entity.
10    MR. SWARR:
11              I would ask, your Honor, that Ms. --
12         HSBC be ordered to -- if she's going to take
13         a writ to do so ASAP.  Change the caption on
14         the Fourth Circuit writ and put "emergency
15         consideration requested" because the trial is
16         set in two weeks.  I don't think that's too
17         much to ask that she do it now instead of
18         waiting.
19    THE COURT:
20              Ms. Lafontaine has always been sensitive
21         to the scheduling of the Court, and she asked
22         for emergency review by the Fourth Circuit.
23         And I'm sure she will do it.
24    MS. LAFONTAINE:
25              As I mentioned --
26    THE COURT:
27              Even if the Supreme Court agrees with me
28         and the Fourth Circuit, I can't force her
29         client to trial on April 29th.  She hasn't
30         even filed an answer.  So, we either have to
31         sever the case as to them --
32    MR. SWARR:
```

60

Eve Kazik, RMR
Civil District Court, Parish of Orleans

1          We will probably dismiss them, Judge,

2     without prejudice.

3   MS. LAFONTAINE:

4          Which I guess would moot my third-party

5     demand.

6   THE COURT:

7          Does that affect the whole virile

8     share?

9   MS. MONCLA:

10          Of course it does, your Honor.

11   MR. SWARR:

12          Not at all, Judge.  They have a year to

13     file a contribution claim.

14   THE COURT:

15          They do?

16   MR. SWARR:

17          Yes.  Do it all the time.

18   MS. LAFONTAINE:

19          We don't have contractual indemnity.

20   THE COURT:

21          Under virile share any defendant can

22     be --

23   MS. MONCLA:

24          It's tort liability.

25   THE COURT:

26          -- held responsible for the whole and go

27     against other alleged responsible parties.

28   MR. SWARR:

29          The only way --

30   THE COURT:

31          They can file suit against you.  And

32     they have how long to do that?

1  MR. SWARR:

2           A year to file.

3  THE COURT:

4           From the time that the original

5           defendant is cast in judgment?

6  MR. SWARR:

7           Exactly.

8  MS. MONCLA:

9           Then the whole case has to be tried

10          again, your Honor.

11  THE COURT:

12          I won't be here.

13  MR. SWARR:

14          That's not true.

15  MS. MONCLA:

16          Your Honor, we don't get a credit for

17          the virile share.  It's hugely important in a

18          case like this when there is not many virile

19          shares.

20  THE COURT:

21          Well, you don't get credit.

22  MR. SWARR:

23          They will get credit when they file the

24          contribution claim.  The only reason you

25          would get a credit is if we settled.

26  THE COURT:

27          Wait.  I get nervous when I talk about

28          virile share.  Anyway, only if you settle

29          would they get credit for it.

30  MR. SWARR:

31          If we settled with them, they have a

32          potential share.  Put them -- just like we

```
 1           are going to talk about a minute.  They could
 2           put on a case and prove it.  But I don't
 3           think they are going to pay us any money any
 4           time soon so we are not worried about that.
 5   MS. LAFONTAINE:
 6                We are not.
 7   THE COURT:
 8                You have a right to, if you would like,
 9           if you're cast in judgment, to seek
10           contribution.
11   MS. MONCLA:
12                Your Honor realizes what we are talking
13           about here.  We are talking about spending
14           gazillions more dollars to then do another
15           whole trial.  Whereas, if they were at this
16           trial and the plaintiff proceeds against
17           them.  The evidence we put on against them
18           like they do our claim and then go on the
19           verdict form.  So, it's a huge impact again
20           on how we prepare our defense for trial.
21   THE COURT:
22                On the verdict form when there is a
23           virile share apportionment, everyone goes on
24           the verdict form or just the defendants who
25           are at trial?  Is it like comparative fault
26           where you can put non parties on?
27   MR. SWARR:
28                You can only put non parties on who have
29           been settled.
30   THE COURT:
31                So, they won't go on the verdict form?
32   MS. MONCLA:
```

Eve Kazik, RMR
Civil District Court, Parish of Orleans

1           Correct.

2   MR. SWARR:

3           By saying settled, I'm short handing for

4       anybody we have made a claim, like a

5       bankruptcy that we have made a claim would go

6       on there.

7   THE COURT:

8           So, if you're cast in judgment, you can

9       go against them for --

10  MS. MONCLA:

11          But the practicality is, Judge, it's so

12      inefficient to do so it really puts us in a

13      bind.

14  MS. ADAMS:

15          May I say something?

16  MR. SWARR:

17          You've got two people in a bind.

18  THE COURT:

19          How does it put you in a bind when under

20      virile share any one defendant can be held

21      responsible for the whole anyway.   Right?

22  MS. MONCLA:

23          You're right.

24  THE COURT:

25          Then you can seek contribution even as

26      to defendants who go to trial with you.

27  MR. SWARR:

28          Right.

29  THE COURT:

30          It's a collection mechanism.   It has

31      nothing to do with liability.

32  MS. LAFONTAINE:

1          We will file the application with the
2     Supreme Court by Friday.  With leave, we will
3     file the third-party demand by Monday against
4     the Balfour Maclaine International Limited,
5     again, which is a commodities trading firm.
6     It operates at the same location.
7   THE COURT:
8          How can you file your third-party
9     demand?  Have you filed an answer?
10  MR. SWARR:
11         You have got to wait until the Supreme
12    Court rules.
13  MS. LAFONTAINE:
14         You just accused me of delaying filing
15    the third-party demand.
16  THE COURT:
17         Well, you asked for a stay.
18  MS. LAFONTAINE:
19         Yes, your Honor.
20  THE COURT:
21         That stay is still in place.  So, until
22    the stay is lifted you won't be filing any
23    third-party demands in this suit.
24  MS. BAXTER:
25         Your Honor, then we have four defendants
26    hanging out there with the issues not
27    joined.  They can come in with a cross
28    claim.  They can come in -- she's coming in
29    with a third party.  That affects our case,
30    your Honor.
31         And to dismiss them without prejudice
32    just means they are going to sue them later.

65

1    Mr. Cannella, as I'm sure you remember -- and
2    I have the transcript here -- stood here,
3    your Honor, and told you that these people
4    had to be in the case because they supplied
5    the deadly blue fiber to J.M. that
6    Mr. Davidson was exposed to through the pipe
7    and the shingle.  He stood right there and
8    said it, your Honor.  "They have to be in
9    this case.  They are the guilty party."  He
10   said it.
11          We want to put on a case against them,
12   your Honor.  We want them here.  We don't
13   want to try this twice.  That's not judicial
14   economy.  It's not fair.  And this -- a lot
15   of things have been said here today.  But the
16   fact of the matter is, is that Mr. Cannella,
17   plaintiff's counsel, stood there and told
18   you, They are the guilty party; they have to
19   be here."  We want them here, your Honor.
20          We have CSR.  No answer.  They can come
21   in with an answer, a cross claim.  They could
22   third party somebody.  And they are also a
23   fiber supplier.  They are either in or they
24   are out.  That's all I'm asking.  We need to
25   get this cleared up, who is in this case, who
26   is out.  To say we will dismiss them without
27   prejudice, I want to opportunity to bring
28   them back in based on plaintiff's
29   statements.
30          Judicial admission.  I want them at
31   trial when I come to trial.  I want the jury
32   to hear why they are guilty.

66

```
 1  MR. SWARR:
 2          Well, then --
 3  MS. MONCLA:
 4          Your Honor, can we try this case in
 5      July?
 6  THE COURT:
 7          No.  I just reset something in July.
 8  MR. SWARR:
 9          We are talking about a living
10      mesothelioma victim.  If the defendant in
11      this case wanted another defendant in the
12      case, they could have third-partied them
13      months ago.
14          If you've got any evidence of anybody,
15      nobody was stopping her from adding anybody.
16          Even failing all of that, if at the end
17      of this trial we go to verdict and the Court
18      comes back and against the whole weight of
19      the evidence, as you heard them say their
20      clients are found liable, they have got 12
21      months to file whatever contribution claims
22      they have, if they feel like they have got
23      the evidence.
24          So, this is done all the time.  I could
25      dismiss anybody who hasn't answered right now
26      without prejudice, without leave of court, as
27      is our right.  We are going to go back and
28      find out what the deal is with CSR and
29      Advocate.  I think you have made your
30      intentions clear with regard to HSBC.
31  MS. BAXTER:
32          We asked to third party J.M.  They
```

67

1        opposed it.  For him to stand here and say --
2    MR. SWARR:
3            You can't third party --
4    MS. BAXTER:
5            I'm sorry.  Am I speaking?
6    THE COURT:
7            How are you going to third-party --
8    MS. BAXTER:
9            Your Honor, you can third party J.M.
10       They accept service.  We did it.
11   MS. MONCLA:
12           They are in the case.
13   MS. BAXTER:
14           After their opposition.
15   THE COURT:
16           They are in the case, aren't they?
17   MS. BAXTER:
18           They are now.  Because we third partied
19       them over their opposition.
20   MR. SWARR:
21           Really?  Judge, they are not in the
22       case.  They are going on the verdict form as
23       a bankrupt company that we made a claim for.
24       That's their only remedy anyway.
25           This is a best case scenario for them
26       because they get to shoot at J.M. and they
27       are not going to be here.  I don't know what
28       they are complaining about with J.M.  You
29       don't third party a bankrupt trust.  That's a
30       trick they do in cases where we haven't made
31       a claim yet.  In this case we made a claim.
32       That's over.  J.M. is on the verdict form.

68

1   MS. BAXTER:

2            Your Honor, I must state that I very

3            much resent all of these snide comments by

4            Mr. Swarr.  I am simply trying to refresh

5            your memory, your Honor, about what

6            happened.

7            We asked to third party J.M.  He stood

8            here and told you they can third party

9            anybody at any time.  They opposed it when we

10           tried to do it.

11           We had to come in and say -- to go on

12           the verdict form, your Honor, they have to be

13           sued.  We are merely protecting our client's

14           interest by suing them, bringing them in.

15   MR. SWARR:

16           That's not true.  They don't have to be

17           sued.  We have to have compromised their

18           contribution rights, which we did by making a

19           claim.  We settle with people we don't sue

20           all the time, and they go on the verdict

21           form.

22   THE COURT:

23           The compromise --

24   MR. SWARR:

25           We have taken away their contribution

26           rights against J.M.

27   THE COURT:

28           So they go on the verdict form.

29   MR. SWARR:

30           Yes, and they get a freebie, a shot at

31           them for not being here, which is fair.

32   THE COURT:

Eve Kazik, RMR
Civil District Court, Parish of Orleans

```
 1              Okay.  That problem is solved.
 2   MS. MONCLA:
 3              Your Honor, we need a continuance, if
 4         only a brief one, only 30 days, 60 days.  We
 5         have got to have a continuance to depose
 6         these experts.
 7   MR. SWARR:
 8              Judge, I would just point out, I hear
 9         you because of the date of the availability.
10         But if you want to let them have another shot
11         at Dr. Schwartz, that's fine.  But 30 to 60
12         days.  And nobody took my offer of telling
13         the Court that anything anybody is going to
14         say in those depositions is going to affect
15         their own experts' opinions at all because
16         they know they wouldn't.  They don't need 30
17         days.  They don't need five days.
18   MS. MONCLA:
19              We need 60 days.
20   MR. SWARR:
21              That's so absurd.
22   MR. ELLIOT:
23              Your Honor, I think that certain of
24         Mr. Ewing's opinions at this point are going
25         to affect what my industrial hygienist -- at
26         least he will have an additional opinion
27         about the propriety of what Mr. Ewing is
28         trying to do.
29              You know, I anticipate that there is
30         going to be a potential Daubert challenge on
31         that issue.  That is taking broad exposure
32         numbers and comparing them against broader
```

```
 1            background exposure is not being in accord
 2            with industrial hygiene practices.  It's
 3            something that he hasn't done.
 4   THE COURT:
 5                 How long is the trial?  Two weeks?
 6   MR. SWARR:
 7                 I think that's what is allotted.
 8            Depending on how many people are left, it
 9            might be shorter than that.
10   THE COURT:
11                 I have June 13th.
12   MR. SWARR:
13                 Obviously, we would object to the
14            continuance, but given that it's six weeks.
15            And obviously, it's the Court's inclination
16            to grant them additional time for discovery.
17            I mean, noting our objection, that's an open
18            date for us.
19   MS. MONCLA:
20                 Do you have date later in June, your
21            Honor?  I'm not trying to be difficult, but I
22            have -- I'm taking my 83-year-old father on a
23            trip the first week in June.
24   MR. OLIVER:
25                 I'm sensitive of that, your Honor.  If
26            there is a brief change, I respect that.
27   THE COURT:
28                 What about June 20th?
29   MS. MONCLA:
30                 I can make that work, your Honor.  We
31            are getting back June 8th.
32   THE COURT:
```

71

1           June 20th.

2  MS. LAFONTAINE:

3           My apologies for the need to do so.  But

4      I just want to clarify that your Honor did

5      grant a continuance of the stay against my

6      client?

7  THE COURT:

8           Yes.

9  MS. LAFONTAINE:

10          Thank you.

11  THE COURT:

12          What are we doing with the motions

13      today?  Continuing them?

14  MR. OLIVER:

15          Your Honor, I believe as to the HVAC

16      defendants, those motions should probably be

17      heard today.  I will defer to the others if

18      they want to hear theirs or not.

19  MR. ELLIOT:

20          Your Honor, I think certainly in light

21      of potentially redeposing Mr. Ewing, I'm not

22      sure what he's going to have to say about

23      that.

24          You know, if the standard this Court is

25      going to allow to go forward is that every

26      exposure above background can be causative, I

27      think that, you know, that certainly affects

28      what the argument on the summary judgment

29      is.  That's the only issue.

30  MS. ADAMS:

31          It is premature at this point.  Jennifer

32      Adams, your Honor.  We think it's premature

72

1        if you're -- if that's the standard the Court

2        is going to apply, if we are in, then they

3        should be in, too.

4            And so, I think to grant their summary

5        judgments right now would be premature

6  MR. WILLIAMS:

7            Your Honor, Robert Williams for Rheem

8        Manufacturing Company.  That's not the case

9        with my client because there has been no

10       evidence that asbestos was in any of the

11       types of products that Rheem manufactured

12       that Mr. Davidson said he worked around.

13           We introduced an affidavit.  It's not

14       been rebutted in any of the exhibits filed by

15       the defendant.  The plaintiffs recognized it

16       when we provided the affidavit for them.  And

17       they did not oppose our motion.

18           And the same thing with the other HVAC

19       defendants who have been opposed by Bird,

20       Certainteed, Beazer East, and UCC.  And I

21       think the Court -- I think the time is now to

22       grant our motion because it doesn't depend on

23       what Mr. Ewing says about the standard

24       necessary to cause meso because in our case

25       there is no evidence of exposure.

26  MR. ELLIOT:

27            I could tell you that the reason those

28       motions were filed was because in each of

29       these cases the discovery responses by these

30       defendants indicated that at some portion of

31       the products they manufactured included an

32       asbestos component, specifically gaskets.

```
 1              Mr. Davidson claims that he went into
 2         HVAC units and scraped gaskets off the heads
 3         of HVAC units during his time.  I think that
 4         that's -- and Mr. Ewing puts a -- quantifies
 5         it in his report a general exposure of .5 to
 6         .05 for that.  So, that's the basis of that.
 7              If we are going to have a feather weight
 8         standard across the board, we want the -- our
 9         position is that we don't think that's the
10         standard.  We don't think that should be
11         applied.  Certainly, if that's what the Court
12         is inclined to do, then that's where we are.
13    THE COURT:
14              Just to clarify from my position I
15         understand there is a threshold level for
16         exposure to be causative.  Anything above
17         that threshold my general rulings are that
18         every exposure is substantial.  Because it's
19         a cumulative exposure that causes the
20         injury.  I'm not saying that every single
21         exposure no matter what the threshold is
22         causative.  If you're telling me you need to
23         do the experts' deposition to establish --
24    MR. ELLIOT:
25              What that threshold is.
26    THE COURT:
27              What that threshold is, then --
28    MR. ELLIOT:
29              And what he's going to say.
30    THE COURT:
31              Are there some -- wasn't there some
32         evidence that there was -- the gaskets in
```

1    some of these products have no asbestos-

2    containing material?

3 MR. WILLIAMS:

4     Correct.  My expert, Richard Firmin, who

5    has worked at Rheem since 1966 and is

6    intimately familiar with the condensers and

7    the combination units Mr. Davidson said he

8    worked around during those few summers he was

9    around the HVAC workers, said that the

10    gaskets in those units did not contain

11    asbestos, and the insulation in those units

12    were made out of materials that were also non

13    asbestos.

14     In our general responses to discovery

15    Rheem admitted that, yes, we made some

16    products that some time contained some

17    asbestos components.  Otherwise Rheem

18    wouldn't be sued in asbestos cases like they

19    have been.

20     But Rheem also made furnaces and

21    boilers, not the HVAC units that we are

22    dealing with here.  And the only evidence in

23    the record before your Honor is that those

24    units manufactured by Rheem did not contain

25    any asbestos.

26 THE COURT:

27     I'm grant Rheem's motion for summary

28    judgment.

29 MR. EATON:

30     Your Honor, I represent York

31    International.  Our arguments are almost

32    identical.  We filed a motion for summary

1    judgment based on product identification and
2    causation.
3        I understand their motion only to deal
4    with causation.  There is no evidence in the
5    record that there was product
6    identification.  And, in fact, he attached to
7    their discovery responses, but our discovery
8    responses say, "York has no information or
9    documents to indicate that any rooftop air
10   conditioning units manufactured prior to '71
11   containing asbestos-containing components."
12       He also mentioned attacking plaintiff's
13   expert report.  But I mean, that expert talks
14   about gaskets.  But clearly he was confused
15   because he talks about Mr. Davidson
16   occasionally replaced gaskets on pipe flanges
17   and equipment, not even gaskets with air
18   conditioning units.
19       So, any information that they have put
20   in the record, these other defendants,
21   plaintiffs put nothing in the record.  It
22   doesn't even apply to us.
23       So, we likewise contend that we are also
24   entitled to summary judgment.
25   MR. ELLIOT:
26       Your Honor, all I can say is that
27   certainly in York's discovery responses, York
28   manufactured and sold residential commercial
29   cooling and air handling equipment and
30   commercial refrigeration equipment, some
31   commercial refrigeration and air cooling
32   systems sold by York, systems including

76

1      encapsulating asbestos-containing gaskets.

2  MR. EATON:

3          Just like with Rheem, we made boilers

4      and heat furnaces.  Here, we are talking

5      about air conditions units that this

6      plaintiff worked on.

7          Beneath all of that that he read, at

8      this time York has no information or

9      documents indicating that any rooftop air

10     conditioning units it manufactured prior to

11     '71 contained asbestos-containing components.

12     That's what plaintiff testified to working

13     to.  That's the issue that we have dealt

14     with.

15 THE COURT:

16         I'm granting York's summary judgment.

17 MS. ORMSBY:

18         Good morning.  Barbara Bourgeois Ormsby.

19     I am here -- Joe Morton was supposed to

20     here.  In fact, he's on his way.

21         I am here on behalf of Trane U.S., Inc.

22     we piggy-back on similar arguments where HVAC

23     defendants, and basically in the suit

24     Mr. Davidson must prove that he was exposed

25     to asbestos-containing products.

26         There is no evidence in this regard.

27     Neither Mr. Davidson nor his expert certified

28     industrial hygienist, William Ewing,

29     identified specific models he allegedly

30     worked on.

31 THE COURT:

32         I'm granting Trane's motion for summary

77

1          judgment.
2    MR. ELLIOT:
3          May I simply state their discovery
4          responses indicate to some of their
5          commercial heating and cooling equipment with
6          asbestos-containing gaskets.
7    THE COURT:
8          But I don't think the plaintiff ever
9          identified a Trane product when he worked on
10         those HVAC.
11   MR. ELLIOT:
12         All he can say is -- he says that he
13         worked with all three of these defendants'
14         equipment and included within that work of
15         scraping gaskets.
16   THE COURT:
17         Does your affidavit address the time
18         period that Mr. Davidson said he worked on
19         HVAC systems?  Because wasn't it a limited
20         time period that he did air conditioning
21         work?
22   MR. WILLIAMS:
23         It was a limited time, your Honor.  I
24         believe it was '66 to '71.
25   THE COURT:
26         Did Trane's affidavit address that time
27         period?
28   MS. ORMSBY:
29         I am just brought into this case.  So, I
30         honestly -- is it attached to our motion for
31         summary judgment?  I don't know?
32         We have evidence that that was not

78

1      asbestos, the insulation that they have

2      alleged in their opposition.

3  MR. ELLIOT:

4         Insulation or gaskets?

5  MR. EATON:

6         He only put in evidence of insulation.

7      When you look at the deposition that he

8      attached, the plaintiffs said, "Well, I was

9      on the interior."

10        And all of these defendants were put

11      into evidence that that insulation -- just

12      like this gentleman said -- didn't contain

13      asbestos.

14        And the plaintiff said -- we asked the

15      plaintiff:  Do you know whether that

16      contained asbestos?

17        I don't know.  We are all in the same

18      boat.

19  THE COURT:

20        I'm granting Trane's motion for summary

21      judgment.

22  MS. ORMSBY:

23        Thank you, your Honor.

24  MR. WILLIAMS:

25        I'll prepare a judgment as to Rheem.

26  MR. EATON:

27        I'll prepare one as to York.

28  THE COURT:

29        Would you prepare a judgment as to

30      Trane?

31  MS. ORMSBY:

32        Yes.

```
 1   MR. ABRAHAM:

 2              Can we get another hearing date to come

 3        back?

 4   THE COURT:

 5              Yes.  We need to do the summary

 6        judgments and motions in limine, the Daubert

 7        motions.

 8   MR. ABRAHAM:

 9              Motions in limine can move to the

10        morning of trial.  Daubert challenges and the

11        summary judgment, we can get a new hearing

12        gate.

13   MR. SWARR:

14              As long as everybody agrees to waive the

15        60/30 thing.

16   THE COURT:

17              Yes, I apologize.  I think I struck

18        someone's because of that, the plaintiffs I

19        think.  But I didn't realize I signed.  I

20        didn't realize you can -- not summary

21        judgments, though.  Just the Daubert

22        hearings.

23   MR. ABRAHAM:

24              If all parties agree, you can work

25        within the time limit.

26   THE COURT:

27              Yes.  If you want to reurge it, you

28        can.  That will be a special setting,

29        June 10, for Daubert motions.  Would someone

30        prepare an order for me continuing the

31        trial?

32   MS. BAXTER:
```

Eve Kazik, RMR
Civil District Court, Parish of Orleans

```
 1              One of us will take care of it.
 2   MR. ELLIOT:
 3              just to put it on the record,
 4        considering this is for a two-week trial, I
 5        am going to be out of the country from the
 6        9th to the 16th.
 7   THE COURT:
 8              Of July?  We will be done.
 9   MS. BAXTER:
10              Your Honor, again, I would like the
11        information on the two defendants, CSR and
12        Advocate Mines, by this afternoon.
13   THE COURT:
14              Right.
15   MR. OLIVER:
16              We will let you know what is going on
17        with that today.
18   THE COURT:
19              What date did I give you for trial?
20   MR. OLIVER:
21        June 20th.
22   MS. MONCLA:
23              And the 10th for the hearing.
24                   *   *   *   *   *
25
26
27
28
29
30
31
32
```

81

1    CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

2                  STATE OF LOUISIANA

3

4                  REPORTER'S CERTIFICATE

5

6         I, Eve S. Kazik, RMR, do hereby

7    certify that:

8         I am an official Court Reporter of

9    the Civil District Court of the State of

10   Louisiana, in and for the Parish of Orleans,

11   Louisiana, and that as such I reported in

12   stenotype the proceedings had in the

13   within-entitled matter at the time and place

14   therein set forth, and that the same is a

15   full, true, and correct transcription of said

16   stenotype notes as taken by me in said matter

17   to the best of my ability.

18

19

20   _____

21            Eve S. Kazik, RMR
              Official Court Reporter
22            License No. 87028

23            April 26, 2011

24

25

26

27

28

29

30

31

32

82

Eve Kazik, RMR
Civil District Court, Parish of Orleans

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

William Cleve Davidson

**(b)** County of Residence of First Listed Plaintiff      Louisiana
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David Cannella, 1010 Common St., Ste 2050, New Orleans, LA 70112
504-299-1214

## DEFENDANTS

HSBC Holdings plc and
The Hongkong and Shanghai Banking Corporation Limited

County of Residence of First Listed Defendant      England
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

Monique Lafontaine, 601 Poydras St., Ste 2660, New Orleans, LA
504-558-5133

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
Personal injury action arising from alleged exposure to asbestos

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE                     DOCKET NUMBER

DATE
04.29.2011

SIGNATURE OF ATTORNEY OF RECORD
Moniquedpontane

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE