# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## MDL No. 875 – In re Asbestos Products Liability Litigation (No. VI)

|  |  |  |
|---|---|---|
| AIDA SAVELESKY., | ) | |
| | ) | Civil Action No.: |
| | ) | 3:11-cv-01778 |
| Plaintiff, | ) | |
| | ) | |
| | ) | in the U. S. District Court, |
| v. | ) | Northern District of California |
| | ) | |
| ALLIED PACKING & SUPPLY, INC., | ) | |
| et al. | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-389)

## I.   INTRODUCTION

Plaintiff Aida Savelesky, by and through her undersigned counsel, hereby moves this Judicial Panel on Multidistrict Litigation to vacate the Conditional Transfer Order (CTO-389) entered in the above-captioned action.

Transfer of this action to the consolidated federal asbestos multidistrict litigation proceedings in the Eastern District of Pennsylvania known as MDL-875—whether before, or after, a ruling on plaintiff's Motion to Remand which will by next week be pending in the local California District Court[1]—would be both imprudent and incongruous.

This action does not belong in federal court at all, much less federal multidistrict proceedings. Indeed, its recent removal to federal court was achieved via the filing of a

---

[1] Plaintiff's Motion to Remand will be timely filed in the local California District Court on or before May 12, 2011. *See*, 28 U.S.C. § 1447(c).

blatantly tardy removal petition which, in addition to being procedurally defective, lacks

substantive merit. *See*, 28 U.S.C. §§ 1442(a)(1), 1446(b), 1447(c).  Moreover, transfer of

this action to MDL-875 would not advance the all-important policy objectives of 28

U.S.C. § 1407.  Such transfer, if anything, would serve only to frustrate the objectives

Section 1407 was intended to promote and secure.  In short, transfer would be neither

judicially efficient nor economical and would instead be inconvenient and unnecessarily

costly for plaintiff.  If transfer is ordered prior to the local District Court ruling on

plaintiff's impending remand motion, the time and resources of the courts and parties will

be needlessly wasted.

## II.    PROCEDURAL BACKGROUND [2]

### A.    State Court Proceedings

On August 6, 2010, plaintiff Aida Savelesky filed an asbestos-related personal

injury action pursuing remedies under California state tort law against three defendants in

Alameda County Superior Court.  (*See, Aida Savelesky v. Allied Packing & Supply, Inc.,

et al., Alameda County Superior Court, Case No. RG10529660.*)  Ms. Savelesky, a 72-

year-old widow, is terminally ill with malignant mesothelioma, an incurable form of

cancer caused by asbestos inhalation.

---

[2] Pursuant to FED. R. EVID. 201, plaintiff respectfully requests that this Panel take judicial notice of the substantive content and filing dates of the pleadings, motions and Orders referenced in this section of plaintiff's Brief, the entirety of which are currently on file and in the records of the United States District Court for the Northern District of California, San Francisco Division, and/or the Alameda County Superior Court, and as such, are facts not subject to reasonable dispute in that they are capable of accurate and ready determination by resort to a source whose accuracy cannot reasonably be questioned.  Plaintiff will provide this Panel with copies of those documents upon request.

Plaintiff, in said action, alleges that each defendant is liable for injuries and damages arising from her exposure to asbestos fibers—carried home on her now-deceased husband Allen Savelesky's person and clothing throughout the 20-plus years he worked as an insulator—as a result of the defendants' conduct or products. Plaintiff named as defendants in said action the following entities: Allied Packing & Supply, Inc., Campbell Industries ("Campbell"), and National Steel and Shipbuilding Company ("NASSCO").

On October 7, 2010, defendant Campbell removed this action to the United States District Court for the Northern District of California pursuant to the federal officer removal statute codified as 28 U.S.C. § 1442(a)(1). Within twenty-four hours, however, the parties entered into a stipulation whereby Campbell agreed to withdraw its removal notice, and just five days later, the local District Court ordered this action remanded to state court. Upon entry of that Order on October 13, 2010, the litigation proceedings of this action resumed in Alameda County Superior Court.

Shortly thereafter, counsel for defendant NASSCO advised plaintiff's counsel, via letter dated September 17, 2010, that it had in its "possession" certain "discovery items" and "materials" from the 2003 wrongful death action Ms. Savelesky filed for the asbestos-related death of her husband[3] which indicated this action was subject to Section 1442(a)(1) federal officer removal by NASSCO. (*See*, Exhibit "A" to the accompanying Declaration of Anya Fuchs.) Defense counsel, more specifically, identified the 2003 deposition testimony of percipient witness Ronald Earp as the "material" providing

---

[3] See, *Aida E. Savelesky, et al. v. Thorpe Insulation Company, et al., Los Angeles Superior Court, Case No. BC288773.*

NASSCO with notice of the Section 1442(a)(1) removability of this action—to wit, Earp testified that during the relevant 1960 to 1970 time period, he and Allen Savelesky performed insulation work together at NASSCO's shipyard, including on the *USS Kitty Hawk*.[4]  (Id.)  Defense counsel further advised that NASSCO intended to file a Notice of Removal pursuant to Section 1442(a)(1) by September 24th.  (Id.)

In response to NASSCO's stated intentions to remove this case to federal court, plaintiff's counsel advised defense counsel, also via letter dated September 17th, that because plaintiff did not allege against NASSCO any product design defect claims for the manufacture or supply of asbestos-containing products, the federal contractor defense NASSCO intended to assert upon removal simply would not apply.  (*See*, Exhibit "B" to the Fuchs Declaration.)  Plaintiff's counsel reasoned that since NASSCO could not show a "colorable" federal defense to plaintiff's claims against it, NASSCO would not be able to properly effect removal of this action pursuant to Section 1442(a)(1).  (Id.)

While no further communication between counsel was had regarding NASSCO's Section 1442(a)(1) removal intentions at that time, quite significantly, September 24th came and went without NASSCO filing any Notice of Removal.

In mid-December 2010, the Superior Court set a trial date of June 20, 2011.  That trial date was subsequently continued, on the court's own motion, to July 15, 2011.

**B.        U.S. District Court Proceedings and the J.P.M.L.**

**U.S. District Court for the Northern District of California**

On April 12, 2011, just three months before trial was set to commence, and without giving plaintiff's counsel the courtesy of any forewarning, NASSCO filed a

---

[4] That NASSCO was a named defendant in Ms. Savelesky's 2003 wrongful death action, and was present at Earp's deposition, is undisputed.

Notice of Removal and removed this action to the United States District Court for the Northern District of California, ostensibly pursuant to the Section 1442(a)(1) federal office removal statute.

In its removal notice, NASSCO contends that the federal courts have original subject matter jurisdiction over this action because NASSCO, in undertaking the acts allegedly giving rise to plaintiff's injuries (and thus its alleged liability), was acting under the direction of a federal officer; NASSCO argues that it can therefore assert a federal government contractor defense to plaintiff's claims.

NASSCO, in its removal notice, identifies as the "other paper" from which it first "ascertained this action was removable" the 2011 deposition testimony of percipient witness Manville Petteys who testified (in the instant action) that during the relevant 1960 to 1970 time period, he and Allen Savelesky performed insulation work together at NASSCO's shipyard, including on the *USS Duluth*.

By letter dated April 20, 2011, plaintiff's counsel advised defense counsel that NASSCO's removal notice was untimely under 28 U.S.C. § 1446(b) and, as such, was procedurally defective; plaintiff's counsel requested that NASSCO withdraw its fatally defective removal notice and stipulate to have the action immediately remanded to state court.  (*See*, Exhibit "C" to the Fuchs Declaration.)  Plaintiff's counsel pointed out that in addition to defense counsel's September 2010 letter wherein it was all but announced that NASSCO was on notice of the Section 1442(a)(1) removability of this action, NASSCO had, after that time, received multiple different "papers" which again disclosed a reasonable basis for believing this action removable on that ground and, most importantly, each of the thirty-day removal periods stemming from NASSCO's receipt of

those "papers" had expired long before NASSCO got around to filing its removal notice on April 12th. [5]  (Id.)

NASSCO refused to withdraw its removal notice.  (*See*, Exhibit "D" to the Fuchs Declaration.)  Via letter dated April 22, 2011, NASSCO counsel stated that following the above-referenced September 2010 correspondence between counsel, research efforts undertaken by its office revealed that the *USS Kitty Hawk* was not at NASSCO during the relevant time period, that the Earp testimony therefore did not provide a good faith basis upon which removal could be made, and that Petteys' 2011 deposition "*confirmed* grounds existed for removal."  (Id.)  NASSCO counsel offered no additional information, much less a declaration or other documentary proof, establishing the research efforts that were supposedly undertaken on this matter, nor the purported findings thereof.

Plaintiff has every intention of challenging the improper removal of this action by way of remand motion, the filing deadline for which is within approximately one week's time, i.e., on or before May 12, 2011.  Plaintiff, in said motion, will challenge the propriety of NASSCO's removal notice as procedurally defective in that it was untimely filed; plaintiff will also dispute that the federal courts have original subject matter jurisdiction of this action pursuant to Section 1442(a)(1). *See*, 28 U.S.C. §§ 1442(a)(1); 1446(b), 1447(c).  (With respect to that latter challenge, plaintiff will, in part, contend that NASSCO's notice of removal fails to sufficiently show a "colorable" federal defense to plaintiff's claims.)

---

[5] Plaintiff's counsel, in that same April 20th letter, further advised NASSCO counsel that the 2011 Petteys deposition testimony (which NASSCO counsel would subsequently admit merely "confirmed" that grounds existed for Section 1442(a)(1) removal) **did not** somehow re-trigger the thirty-day period NASSCO had to effect removal nor did it somehow render this action *more* removable or *again* removable. (*See*, Exhibits "C" and "D" to the Fuchs Declaration.)

Pursuant to Civil Local Rules 7-2 and 7-3 of the U.S. District Court for the Northern District of California, and the calendaring practices and hearing schedule maintained by District Court Judge Susan Illston to whom this action is currently assigned, plaintiff's Motion to Remand will likely be set for hearing on June 17, 2011.

As of today's writing, only two defendants remain in this action:  Allied Packing & Supply, Inc. and NASSCO.  (Plaintiff dismissed Campbell from the state court action on October 13, 2010.)

**Judicial Panel on Multidistrict Litigation**

On April 14th, two days after filing its removal petition, NASSCO notified this Panel of the *Savelesky* case as a potential "tag-along" action involving common questions of fact with asbestos-related actions previously transferred to MDL-875 for consolidated pretrial proceedings.  Twenty-four hours later, this Panel entered CTO-389, conditionally transferring *Savelesky* to MDL-875.

Plaintiff timely filed a Notice of Opposition to CTO-389 with this Panel on April 21st.  In light of the briefing schedule this Panel set for the instant Motion to Vacate, plaintiff's counsel anticipates that a final decision on the transfer of this action to MDL-875 will not be rendered prior to this Panel's July 28, 2011 hearing session.

## III.   LEGAL DISCUSSION

The local District Court will likely remand this action well before this Panel is able to reach a final decision on transfer. However, should plaintiff's counsel expectation in that regard prove incorrect, plaintiff submits that for the reasons and on the grounds set forth hereafter, a Panel Order vacating CTO-389 is warranted.

A.        **This Panel Should Not Further Consider nor Order the Transfer of**
          ***Savelesky*** **Prior to a Ruling on Plaintiff's Motion to Remand by the**
          **Local California District Court**

Federal courts are courts of limited jurisdiction; because federal courts

presumptively have no jurisdiction over civil actions, the burden of establishing to the

contrary appropriately rests upon the party asserting jurisdiction. *Kokkonen v. Guardian*

*Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). The failure by

a Court to determine at the outset of an action whether jurisdiction exists "carries [it]

beyond the bounds of authorized judicial action and thus offends fundamental principles

of separation of powers." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.

Ct. 1003, 1012 (1998).

There are no exceptions to this rule: "The requirement that jurisdiction be

established as a threshold matter 'springs from the nature and limits of the judicial power

of the United States' and is 'inflexible and without exception.'" *Steel Co., supra,* 523

U.S. at 94-95, 118 S. Ct. at 1012 (citing to *Mansfield, C. & L. M. R. Co. v. Swan,* 111

U.S. 379, 382, 4 S. Ct. 510 (1884).)

Transfer of this case while a remand motion is pending in the local District Court

would inconvenience the parties and impede the just and efficient administration of this

action. If no valid basis for federal jurisdiction exists, or if the removal notice is

procedurally defective and remand is therefore mandatory, this case does not belong in

MDL-875. But, with its backlog of cases and less frequent sessions, it will take much

longer for the MDL court to make that determination that it will take the local District

Court. The result would be a substantial and needless delay to the ultimate resolution of

this case. It would conserve judicial resources and foster expeditious administration of

justice to allow the remand motion process to fully run its course in the local District Court before burdening the MDL with yet another asbestos case.

Furthermore, while the jurisdictional issue could be resolved in the MDL, transfer at this time would force aside the question of federal jurisdiction while it is still unresolved, requiring the parties to resubmit all their briefing and await the Panel's availability to adjudicate the matter at one of its bimonthly sessions.  Meanwhile, plaintiff will be forced to litigate her case in a court that potentially has no jurisdiction or simply wait in legal limbo for an indeterminate length of time because until the jurisdictional issue is determined, the case cannot be decided on its merits.  Neither option serves the interests of justice nor furthers the goals of Section 1407.

In the instant action, the threshold determination of federal jurisdiction has yet to be resolved.  That issue, which will be submitted to the local California District Court in the form of a remand motion plaintiff will timely file at the end of next week, can and should be determined before this Panel gives further consideration to the propriety of transferring *Savelesky* to MDL-875.  If the District Court is not allowed the opportunity to rule on the remand motion prior to transfer, the consequence will be judicial inefficiency and unnecessary costs and inconvenience both to the courts and the parties.

The procedural defects of NASSCO's removal notice should make the local District Court's determination as to the propriety of removal an easy one.  Plaintiff, in the instant brief, conveys just some of the many facts demonstrating NASSCO's removal notice to be untimely; presented with even more facts pertaining to NASSCO's notice of the Section 1442(a)(1) removability of this action and the expiration of every thirty-day removal period that could have possibly been triggered along the way, the District Court

is likely to order this action remanded based on defect in removal procedure alone. To transfer *Savelesky* to MDL-875 when the timeliness of NASSCO's removal petition is clearly suspect would be unwise.

**B.      Transfer of *Savelesky* Would Be Contrary to the Policy Objectives of 28 U.S.C. § 1407**

Civil actions pending in different districts and involving one or more common questions of fact *may* be transferred by the Judicial Panel on Multidistrict Litigation to any district court for coordinated or consolidated pretrial proceedings.  28 U.S.C. § 1407(a).  More specifically, the federal multidistrict litigation statute provides that such actions *may* be transferred by the Panel "upon its determination that transfers for such proceedings will be for the **convenience of parties and witnesses and will promote the just and efficient conduct of such actions**."  Id. (emphasis added).

**The underlying objective of Section 1407 is "to secure**, in multi-district civil litigation as in all other civil litigation, **the 'just, speedy and inexpensive determination of every action**.'"  *In re Nat'l Student Mktg. Litig.,* 368 F.Supp. 1311, 1316 (J.P.M.L. 1973)(citing to FED. R. CIV. P. 1)(emphasis added).  Accordingly, "[t]he Panel's statutory mandate is to weigh the interests of all parties … in light of the purposes of Section 1407." *In re Stirling Homex Corp. Sec. Litig.,* 442 F. Supp. 547, 550 (J.P.M.L. 1977). While the Panel has broad discretion to carry out its functions, it abuses its discretion if it acts in a manner that *frustrates* the objectives of Section 1407.

The transfer of *Savelesky* to MDL-875 would not serve or in any way advance the policy objectives and statutory goals of Section 1407**.**  Instead of promoting the speedy, efficient, and inexpensive determination of this action, the delay, potentially excessive

delay, attendant with said transfer—potentially to the severe prejudice of plaintiff's case—would do just the opposite.

### Delay / Inefficiency / Unnecessary Expense / Potential of Severe Prejudice to Case

Upon transfer to MDL-875, *Savelesky* would be sure to encounter well-documented delays that are significant, unpredictable, and unnecessary. MDL-875 currently handles a docket of over 14,365 cases (consisting of far more claims) related to personal injuries allegedly caused by asbestos products, all of which are handled by a single judge. (See, Exhibit "E" to the Fuchs Declaration.) It is this backlog of cases, along with the governing procedural rules that leave counsel with little to no power to obtain expedited schedules or prompt rulings on issues critical to the success of their client's action, that are to blame for the well-known delays attendant with transfer.

By way of example – standard procedure upon official transfer is for absolutely nothing to occur, other than the filing of administrative submissions, for *four months*, at which point the Court sets an initial pretrial conference usually one month out. During those four months, the transferred action simply sits idle, somewhat at the Court's mercy, without any mechanism through which to expedite matters. And, while the Court's scheduling order typically requires discovery to be completed within 90 days, that deadline is often modified due to delays caused by the backlog of its docket.

Pre-trial motions (excepting summary judgment) are also likely to result in unpredictably lengthy delays. There exists neither a schedule nor any provision in the rules governing MDL-875 that allow a party to obtain a specific date to have its motion heard and ruled upon by the Court. Thus, delay in the resolution of issues submitted to the MDL court for its determination and resolution via pre-trial motion, whether

pertaining to discovery matters or otherwise, is unavoidable and protracted.  Hearing dates are set by Court Order only, which means that while pre-trial motions may be ruled upon at any time, that "time" more often than not proves to be at some distant point in the future. Particularly frustrating is that litigants have no means through which to obtain an expedited ruling or even a ruling by a date certain or within a reasonable, predictable amount of time.  This procedural practice has caused countless extensive delays in transferred actions—**in fact, just last year, Judge Robreno, the presiding Judge of MDL-875, issued a ruling denying a party's motion to remand an action that had been awaiting determination for 15 years.**  (*See*, Exhibit "E" to the Fuchs Declaration.)

Federal courts have noted that "if these [asbestos-related] claims return to state court, they will proceed to resolution. If they remain in federal court, they will encounter significant delay upon their transfer through the Panel on Multidistrict Litigation to the Eastern District of Pennsylvania. … This delay [in MDL-875] is of economic benefit to the defendants and imposes costs on the plaintiffs." *Alexander v. A.P. Green Indus., Inc. (In re Maine Asbestos Cases),* 44 F. Supp. 2d 368, 374 n.2 (D.Me. 1999); *see also Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 190 (D. Mass. 2008)(noting that if removal was upheld and the case was transferred to MDL-875, "the matter will likely be substantially delayed").

Such delays, in turn, have great potential for causing severe prejudice to plaintiff's case.  Ms. Savelesky is after all fighting a terminal illness. Should the additional delay plaintiff's case is sure to encounter if transferred results in Ms. Savelesky dying prior to whenever it is her case ends up going to trial—a very real possibility given the

circumstances—then transfer will have quite obviously prejudiced her case. When Ms. Saveleksy dies, so does her right to recover noneconomic damages. This is a common and predictable consequence of transfer to MDL-875 that defendants often exploit.

If this action is spared transfer, and is instead allowed to proceed in the local District Court (if it is not, for some reason unbeknownst to plaintiff's counsel, remanded to state court) plaintiff will at least have the possibility of seeking an expedited discovery schedule and early trial date based on her terminal illness. Even without such an expedited schedule, discovery would resume far sooner than it would under the inflexible and generalized rules governing the ever so slow proceedings of MDL-875. [6]  In addition, rulings on pre-trial motions would be timely issued. Plaintiff would certainly be able to obtain an earlier trial date than she would if this case is transferred. That Ms. Savelesky could die before her case gets to trial as a result of the delays her action will encounter if transferred is a very real possibility. Transfer would not, therefore, advance the policy objective of ensuring a just and speedy determination of this action.

In addition to causing this action delay, transfer of this action would also compel plaintiff to spend additional money, time, and resources in order to participate in distant and unfamiliar court procedures. Thus, transfer would promote the inefficient, rather than the efficient, and the costly, rather than inexpensive, determination of this action.

---

[6]  If transferred, discovery is unlikely to resume for at least eight months (four months will likely transpire before the official transfer of this action and then an additional four months will likely transpire before an initial scheduling conference that includes this action is held in MDL-875). If spared transfer, the procedural rules of the local District Rules will allow for discovery to resume far sooner, i.e., within four months time.

The statutory mandate of this Panel—**to weigh the interests of all parties "in light of the purposes of Section 1407"**—clearly warrants an Order vacating CTO-389. See, *Stirling Homex Corp. Sec. Litig.*, supra, 442 F. Supp. at 550. Given that the transfer of this action would delay the proceedings of this litigation to a near halt for at least three or four months—potentially to the severe prejudice of plaintiff's case—and would cause plaintiff additional expense and inconvenience, transfer of this action would not be consistent with the policy objectives of Section 1407.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs request that this Panel vacate CTO-389 and allow this case to run its course in the U.S. District Court for the Northern District of California.


Dated:  May 5, 2011                    Respectfully submitted,


                                       _____
                                       Anya Fuchs
                                       PAUL & HANLEY LLP
                                       1608 Fourth Street, Suite 300
                                       Berkeley, California 94710
                                       Telephone:     (510) 559-9980
                                       Facsimile:     (510) 559-9970
                                       afuchs@paulandhanley.com
                                       Attorneys for Plaintiff Aida Savelesky