ENDORSED
F I L E D
San Francisco County Superior Court

OCT 1 4 2010

CLERK OF THE COURT
ELIAS BUTT
BY: _____ Deputy Clerk

1  Stephen M. Fishback, Esq. (State Bar No. 191646)
2  Daniel L. Keller, Esq. (State Bar No. 191738)
   **KELLER, FISHBACK & JACKSON LLP**
3  18425 Burbank Blvd., Ste. 610
   Tarzana, California 91356
4  Telephone: 818.342.7442
   Facsimile: 818.342.7616

5  Attorneys for Plaintiffs

**ASBESTOS
CASE MANAGEMENT CONFERENCE**

6                                    OCT 2 0 2011  1:30 PM

7                              · DEPARTMENT  220

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA
9              FOR THE CITY AND COUNTY OF SAN FRANCISCO

10

11  LINDA LEAVY, individually and successor in    Case No.  **CGC-10-275684**
    interest to HENRY LEAVY, deceased;
12  DIANNE BOSCHEE; PATRICIA CLARK;               **COMPLAINT FOR DAMAGES**
    RALPH LEAVY;                                  (WRONGFUL DEATH)
13                                                (ASBESTOS)
14            Plaintiffs,
                                                  (ACTION IS SUBJECT TO GENERAL
15      vs.                                       ORDERS IN FILE NO. 828684)

16  A.W. CHESTERTON COMPANY, INC.;
17  ASBESTOS CORPORATION LTD.;                    Negligence
    CBS CORPORATION, a DELAWARE                   Strict Liability
18     CORPORATION, individually, successor-      False Representation Under Restatement
       in-interest to and formerly known as          Section 402-B
19     VIACOM, INC. and WESTINGHOUSE              Intentional Tort
       ELECTRIC CORPORATION;                      Premises Owner/Contractor Liability
20  CRANE CO.;                                    Survival Action
21  CROWN CORK & SEAL COMPANY, INC.,
       individually and as successor-in-interest to
22     MUNDET CORK COMPANY;
23  CUTLER-HAMMER, INC.;                          **THIS CASE IS SUBJECT TO
    DOUGLASS INSULATION COMPANY,                  MANDATORY ELECTRONIC FILING**
24     INC.;                                      **PURSUANT TO AMENDED G.O. 158**
25  ERICSSON, INC, individually and as
       successor-in-interest to ANACONDA
26     WIRE AND CABLE COMPANY,
       MARCONI CORPORATION PLC;
27  FMC CORPORATION;
    GENERAL CABLE CORPORATION;
28  GENERAL ELECTRIC COMPANY;
    GRAYBAR ELECTRIC COMPANY;

COMPLAINT FOR WRONGFUL DEATH                                              PAGE 1

1  GRINNELL CORPORATION;
2  IMO INDUSTRIES, INC. individually and as
      successor-in-interest to DELALVAL
3     PUMPS;
   INGERSOLL-RAND COMPANY;
4  ITT INDUSTRIES, INC. individually and as
      successor-in-interest to BELL &
5     GOSSETT;
   J.T. THORPE & SON, INC.;
6  JOHN K. BICE COMPANY, INC.;
7  KAISER GYPSUM COMPANY;
   METALCLAD INSULATION
8     CORPORATION, individually and as
      successor-in-interest to NOR-CAL
9     INSULATION;
   OSRAM SYLVANIA, INC.;
10 OWENS-ILLINOIS, INC.;
11 PHILIPS ELECTRONICS NORTH
      AMERICA CORPORATION, individually
12    and as successor-in-interest to PHILIPS
      NORTH AMERICA, NORELCO,
13    MAGNAVOX;
   QUINTEC INDUSTRIES, INC.;
14 RAPID AMERICAN CORP., individually and
15    as successor-in-interest to PHILIP CAREY
      CORPORATION;
16 ROCKWELL AUTOMATION, INC.; •
17 SCHNEIDER ELECTRIC USA, INC.;
   STERLING FLUID SYSTEMS (USA) LLC,
18    dba and individually and successor-in-
      interest to PEERLESS PUMP COMPANY,
19    INDIAN HEAD, INC.;
   SUMITOMO BAKELITE NORTH
20    AMERICA, individually and as successor-
      in-interest to DUREZ CORPORATION;
21 TYCO INTERNATIONAL (US) INC.;
22 UNION CARBIDE CORPORATION;
   DOES 1-500;
23
24             Defendants.
25
26
27
28

COMPLAINT FOR WRONGFUL DEATH                                PAGE 2

Plaintiffs,  LINDA LEAVY, individually and successor-in-interest to HENRY LEAVY,
deceased; DIANNE BOSCHEE; PATRICIA CLARK;  RALPH LEAVY ; hereinafter "Plaintiffs"
COMPLAIN AND ALLEGE AS FOLLOWS:

1.  The true names and capacities, whether individual, corporate, associate, governmental
or otherwise, of defendant DOES 1 through 500, are unknown to plaintiffs at this time, who
therefore sue said defendants by such fictitious names.  When the true names and capacities of said
defendants have been ascertained, plaintiffs will amend this complaint accordingly. Plaintiffs are
informed and believe, and thereon allege, that each defendant designated herein anonymously as
DOES 1-500 is responsible, negligently or in some other actionable manner, for the events and
happenings hereinafter referred to, and caused injuries and damages thereby to the plaintiffs, as
hereinafter alleged.

2.  At all times herein mentioned, each of the defendants was the agent, servant, employee
and/or joint venturer of his co-defendants, and each of them, and at all said times, each defendant
was acting in the full course and scope of said agency, service, employment and/or joint venture.
This action is subject to the San Francisco Superior Court's General Orders.

3.  Plaintiffs are informed and believe, and thereon allege that at all times herein
mentioned, defendants on Exhibits "B" – "C" and DOES 1 through 500, inclusive, were and are
corporations, partnerships, unincorporated associations, sole proprietorships and/or other business
entities organized and existing under and by virtue of the laws of the State of California, or the
laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were
and are authorized to do and are doing business in the State of California, and that said defendants
have regularly conducted business in the County of San Francisco, State of California.

/ / /

/ / /

COMPLAINT FOR WRONGFUL DEATH                                                    PAGE 3

### FIRST CAUSE OF ACTION
#### (Negligence)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:**

4.   At all times herein mentioned, each of the named defendants and DOES 1 through 300 were the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedies against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiffs' remedies against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

1   originally attached to each such "alternate entity."

2       5.   At all times herein mentioned, defendants, their "alternate entities," and each of them,

3   were and/or are engaged in the business of researching, manufacturing, fabricating, designing,

4   modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

5   inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-

6   branding, manufacturing for others, packaging and advertising a certain product, namely asbestos

7   and other products containing asbestos.  Said land-based asbestos and other products containing

8   asbestos (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-

9   containing products") specifically include, but are not limited to asbestos-containing:

10  insulation/insulating materials; various building materials such as wallboard, joint/taping

11  compound, acoustical products, fireproofing; adhesives; electrical components; phenolic resins;

12  conduit pipe; motors; panel boxes, relays; heaters; ducts; coolers/chillers; wire/cable; arcs/chutes;

13  scanners; scopes; electronics; cloth; paper; board; switches; panels; tubes; valves; compressors;

14  condensers, gaskets/packing; and other materials containing asbestos currently unknown or

15  unspecified by plaintiffs but likely to be ascertained during the course and scope of discovery and

16  investigation.

17      6.   At all times herein mentioned, defendants, their "alternate entities" and each of them,

18  singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed,

19  modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health

20  hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected,

21  serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

22  manufactured for others, packaged and advertised, a certain product, namely asbestos, and other

23  products containing asbestos, in that said products caused personal injuries to users, consumers,

24  workers, bystanders and others, including the Decedent herein, (hereinafter collectively called

25  "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby

26  rendering said products unsafe and dangerous for use by "exposed persons".

27      7.   Defendants, their "alternate entities," and each of them, had a duty to exercise due care

28  in the pursuance of the activities mentioned above and defendants, and each of them, breached said

1    duty of due care.

2        8.  Defendants, their "alternate entities" and each of them, knew, or should have known,

3    and intended that the aforementioned asbestos and products containing asbestos would be

4    transported by truck, rail, ship and other common carriers, that in the shipping process the products

5    would break, crumble or be otherwise damaged; and/or that such products would be used for

6    insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other

7    applications, including, but not limited to sawing, chipping, hammering, scraping, sanding,

8    breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos

9    fibers, and that through such foreseeable use and/or handling "exposed persons," including

10   Decedent herein, would use or be in proximity to and exposed to said asbestos fibers.

11       9.  Decedent has used, handled or been otherwise exposed to asbestos and asbestos-

12   containing products referred to herein in a manner that was reasonably foreseeable. Decedent's

13   exposure to asbestos and asbestos-containing products occurred at various locations as set forth in

14   Exhibit "A," among others, attached to plaintiffs' Complaint and incorporated by reference herein.

15       9a.  Defendants, their "alternate entities," and each of them breached their legal duties

16   by, among other acts and inactions:

17       (a) failing to warn Decedent of the dangers, characteristics, and potentialities of their

18   asbestos-containing products when they knew or should have known that exposure to their

19   asbestos-containing products would cause disease and injury;

20       (b) failing to warn Decedent of the dangers to which he was exposed when they knew or

21   should have known of the dangers;

22       (c) failing to exercise reasonable care to warn Decedent of what would be safe, sufficient,

23   and proper protective clothing, equipment, and appliances when working with or near or being

24   exposed to their asbestos and asbestos-containing products;

25       (d) failing to provide safe, sufficient and proper protective clothing, equipment and

26   appliances with their asbestos and asbestos-containing products;

27       (e) failing to test its asbestos and asbestos-containing products in order to ascertain the

28   extent of danger involved upon exposure thereto;

1     (f) failing to conduct such research as should have been conducted in the exercise of

2 reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and

3 asbestos-containing products;

4     (g) failing to remove the product or products from the market when the defendants'

5 corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-

6 containing products;

7     (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to

8 asbestos to adequately warn and apprise Decedent of said dangers, hazards, and potentialities

9 discovered;

10     (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos

11 to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards,

12 and potentialities;

13     (j) failing to advise Decedent and others that the risks inherent in their asbestos-containing

14 product greatly outweighed the benefits, if any, afforded by such products; and

15     (k) generally using unreasonable, careless, and negligent conduct in the manufacture,

16 fabrication, supply, distribution, sale, installation, and/or use of their asbestos and asbestos-

17 containing products, among other actions/inactions.

18     9b.   Plaintiffs disclaim any cause of action or recovery for any injuries and damages

19 resulting from exposure to asbestos caused by the acts or omissions of defendants committed at the

20 specific and proven direction of an officer of the United States Government acting within in his

21 official capacity. To the extent that any of the Decedent's relevant asbestos exposures occurred on

22 board active vessels or aircraft of the United States military or the construction and/or repair of

23 such vessels or aircraft occurred on proven federal enclaves, plaintiffs' negligence and strict

24 liability claims against manufacturers, sellers and suppliers of pumps, valves, boilers, turbines,

25 separators, steam traps, engines and other mechanical or similar equipment installed in such

26 vessels and aircraft are not based on the theory of defective design, but rather on the theory of

27 failure to warn of the health risks and hazards associated with working with and/or around

28 asbestos and asbestos-containing products only and renders such defendants liable in both

negligence and in strict products liability for such marketing defect. No asbestos-containing product to which Decedent was allegedly exposed on board active vessels or aircraft of the United States military or in the construction and/or repair of such vessels or aircraft which occurred on proven federal enclaves was designed or manufactured specific to or for military application, but instead was simply a military version of a common and commercially and publicly available product otherwise and already designed, manufactured, and specified by Defendants.

10. As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused Decedent, HENRY LEAVY, to contract asbestosis, asbestos pleural diseases, and other asbestos-related diseases, from which he died on or about November 20, 2009.

11. Plaintiffs did not learn of the causal relationship between Decedent's exposure to asbestos and his death until less than one year before the date on which this complaint is filed.

12. Plaintiffs are the heirs of HENRY LEAVY, deceased, as follows:

    A.    LINDA LEAVY, wife and successor-in-interest to HENRY LEAVY;

    B.    RALPH LEAVY, son;

    C.    DIANNE BOSCHEE, daughter;

    D.    PATRICIA CLARK, daughter

13. Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

14. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

15. As a result of the conduct of defendants, and each of them, plaintiffs' sustained pecuniary loss resulting from the loss of love, comfort, society, attention, services and support of Decedent in a sum invoking the unlimited jurisdiction limits of this Court.

1    16.  The herein-described conduct of said defendants, their "alternate entities," and each of

2    them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and

3    indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and

4    by way of punishing said defendants, seek punitive damages according to proof.

5        WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

6    each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Strict Liability)

9    AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF
DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE
ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

12    17.  Plaintiffs incorporate herein by reference, as though fully set forth herein, the

13    allegations contained in Paragraphs 4-5 and 8-16 of the First Cause of Action herein.

14    18.  Defendants, their "alternate entities," and each of them, knew and intended that the

15    above-referenced asbestos and asbestos-containing products would be used by the purchaser or

16    user without inspection for defects therein or in any of their component parts and without

17    knowledge of the hazards involved in such use.

18    19.  Said asbestos and asbestos-containing products were defective and unsafe for their

19    intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The

20    defect existed in the said products at the time they left the possession of defendants, their

21    "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including

22    asbestosis, other lung damage, and cancer to "exposed persons," including Decedent herein, while

23    being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and

24    dangerous for use.

25    20.  "Exposed persons" did not know of the substantial danger of using said products. Said

26    dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate

27    entities," and each of them, further failed to adequately warn of the risks to which Decedent and

28    others similarly situated were exposed.

1     21.  In researching, manufacturing, fabricating, designing, modifying, testing or failing to

2  test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

3  sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

4  marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos

5  and asbestos-containing products, defendants, their "alternate entities," and each of them, did so

6  with conscious disregard for the safety of "exposed persons" who came in contact with said

7  asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and

8  each of them, had prior knowledge that there was a substantial risk of injury or death resulting

9  from exposure to asbestos or asbestos-containing products, including, but not limited to,

10  mesothelioma, lung cancer, and asbestosis.  Said knowledge was obtained, in part, from scientific

11  studies, government data, and medical data to which defendants had access, as well as scientific

12  studies performed by, at the request of, or with the assistance of, said defendants, their "alternate

13  entities," and each of them, and which knowledge was obtained by said defendants, their "alternate

14  entities," and each of them on or before 1930, and thereafter.

15     22.  On or before 1930, and thereafter, said defendants, their "alternate entities" and each

16  of them, were aware that members of the general public and other "exposed persons," who would

17  come in contact with their asbestos and asbestos-containing products, had no knowledge or

18  information indicating that asbestos or asbestos-containing products could cause injury, and said

19  defendants, their "alternate entities," and each of them, knew that members of the general public

20  and other "exposed persons," who came in contact with asbestos and asbestos-containing products,

21  would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products

22  was safe, when in fact said exposure was extremely hazardous to health and human life.

23     23.  With said knowledge, said defendants, their "alternate entities," and each of them,

24  opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

25  offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant,

26  re-brand, manufacture for others, package and advertise said asbestos and asbestos-containing

27  products without attempting to protect "exposed persons" from or warn "exposed persons" of, the

28  high risk of injury or death resulting from exposure to asbestos and asbestos-containing products.

---

1   Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high

2   risk of injury or death resulting from exposure to asbestos and asbestos-containing products,

3   defendants, their "alternate entities," and each of them, intentionally failed to reveal their

4   knowledge of said risk, and consciously and actively concealed and suppressed said knowledge

5   from "exposed persons" and members of the general public, thus impliedly representing to

6   "exposed persons" and members of the general public that asbestos and asbestos-containing

7   products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and

8   each of them, engaged in this conduct and made these implied representations with the knowledge

9   of the falsity of said implied representations.

10      24.   The above-referenced conduct of said defendants, their "alternate entities," and each

11   of them, was motivated by the financial interest of said defendants, their "alternate entities," and

12   each of them, in the continuing, uninterrupted research, design, modification, manufacture,

13   fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection,

14   installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing

15   for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance

16   of said financial motivation, said defendants, their "alternate entities," and each of them,

17   consciously disregarded the safety of "exposed persons" and in fact were consciously willing and

18   intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons"

19   and induced persons to work with and be exposed thereto, including Decedent.

20      25.   Plaintiffs allege that the aforementioned defendants, their "alternate entities," and

21   each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for

22   their intended use but that their asbestos and asbestos-containing products, created an

23   unreasonable risk of bodily harm to exposed persons.

24      26.   Plaintiffs further allege Decedent's injuries are a result of cumulative exposure to

25   asbestos and various asbestos-containing products manufactured, fabricated, inadequately

26   researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased,

27   bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

28   repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by

1   the aforementioned defendants, their "alternate entities," and each of them and that plaintiffs

2   cannot identify precisely which asbestos or asbestos-containing products caused the injuries

3   complained of herein.

4       27.   Decedent relied upon defendants, their "alternate entities'," and each of their

5   representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-

6   containing products.  As a direct and proximate result of the conduct of the defendants, their

7   "alternate entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-

8   containing products caused Decedent  to contract asbestosis and other asbestos-related diseases

9   from which he died on November 20, 2009.

10      WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

11  each of them, as hereinafter set forth.

12                      **THIRD CAUSE OF ACTION**

13  **(False Representation Under Restatement of Torts Section 402-B)**

14  **AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B,"**

15  **DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

16

17      28.   Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and

18  every allegation contained in the First and Second Causes of Action.

19      29.   At the aforementioned time when defendants, their "alternate entities," and each of

20  them, researched, manufactured, fabricated, designed, modified, tested or failed to test,

21  inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for

22  sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

23  warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and

24  asbestos-containing products, as herein above set forth, the defendants, their "alternate entities,"

25  and each of them, expressly and impliedly represented to members of the general public, including

26  the purchasers and users of said product, and other "exposed persons," including the Decedent

27  herein and his employers, that asbestos and asbestos-containing products, were of merchantable

28  quality, and safe for the use for which they were intended.

---

30.   The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the Decedent and his employers, relied upon said representations of defendants, their "alternate entities," and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

31.   Said representations by defendants, their "alternate entities," and each of them, were false and untrue, and defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons, including Decedent herein.

32.   As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused plaintiffs' Decedent to contract asbestosis and other asbestos-related diseases from which he died on November 20, 2009.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
#### (Intentional Tort)

AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND ALLEGE AS FOLLOWS:

33.   Plaintiffs, by this reference, hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Third Causes of Action herein excepting therefrom allegations pertaining to negligence.

34.   At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed Decedent a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of

---

1   the State of California, to abstain from injuring the person, property or rights of the Decedent.

2   When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and

3   each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the

4   Decedent as is more fully set forth herein. Such acts and omissions consisted of acts falling within

5   Section 1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of

6   fact which were not true and which defendants, their "alternate entities," and each of them, did not

7   believe to be true; assertions of fact which were not true and which defendants, their "alternate

8   entities," and each of them, had no reasonable ground for believing to be true, and the suppression

9   of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any

10   one such duty gave rise to a cause of action for violation of the rights of the Decedent as provided

11   for in the aforementioned Civil Code sections.

12        35.   Since on or before 1930, the defendants, their "alternate entities," and each of them,

13   have known and have possessed the true facts of medical and scientific data and other knowledge

14   which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiffs'

15   First Cause of Action were and are hazardous to the health and safety of Decedent, and others in

16   Decedent's position working in close proximity with such materials. The defendants, their

17   "alternate entities," and each of them, have known of the dangerous propensities of other of the

18   aforementioned materials and products since before that time. With intent to deceive Decedent,

19   and others in Decedent's position, and with intent that he and such others should be and remain

20   ignorant of such facts with intent to induce Decedent and such others to alter his and their

21   positions to his and their injury and/or risk and in order to gain advantages, the following acts

22   occurred:

23        a.   Defendants, their "alternate entities," and each of them, did not label any

24   of the aforementioned asbestos-containing materials and products regarding the hazards of such

25   materials and products to the health and safety of Decedent, and others in Decedent's position

26   working in close proximity with such materials, until 1964 when certain of such materials were

27   labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein

28   when the knowledge of such hazards was existing and known to defendants, their "alternate

COMPLAINT FOR WRONGFUL DEATH                                                          PAGE 14

1   entities," and each of them, since on or before 1930. By not labeling such materials as to their said

2   hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to

3   Decedent that it was safe for Decedent to work in close proximity to such materials, when in fact it

4   was not true, and defendants, their "alternate entities," and each of them, did not believe it to be

5   true;

6          b.      Defendants, their "alternate entities," and each of them, suppressed

7   information relating to the danger of use of the aforementioned materials by requesting the

8   suppression of information to the Decedent and the general public concerning the dangerous nature

9   of the aforementioned materials to workers, by not allowing such information to be disseminated

10  in a manner which would given general notice to the public and knowledge of the hazardous

11  nature thereof when defendants, their "alternate entities," and each of them, were bound to disclose

12  such information;

13         c.      Defendants, their "alternate entities," and each of them, sold the

14  aforementioned products and materials to Decedent's employer and others without advising

15  Decedent and others of the dangers of use of such materials to persons working in close proximity

16  thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and

17  had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their

18  "alternate entities," and each of them, caused to be positively asserted to Decedent that which was

19  not true and that which defendants, their "alternate entities," and each of them, had no reasonable

20  ground for believing to be true, to wit, that it was safe for Decedent to work in close proximity to

21  such materials;

22         d.      Defendants, their "alternate entities," and each of them, suppressed from

23  Decedent medical and scientific data and knowledge of the results of studies including, but not

24  limited to, the information and knowledge of the contents of the Lanza report. Although bound to

25  disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change

26  his report, the altered version of which was published in Public Health Reports, Volume 50 at page

27  1 in 1935, thereby causing Decedent and others to be and remain ignorant thereof. Defendants,

28  their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated

COMPLAINT FOR WRONGFUL DEATH                                                    PAGE 15

1   trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to

2   the users thereof;

3           e.        Defendants, their "alternate entities," and each of them, belonged to,

4   participated in, and financially supported the Asbestos Textile Institute and other industry

5   organizations which, for and on behalf of defendants, their "alternate entities," and each of them,

6   actively promoted the suppression of information of danger to users of the aforementioned

7   products and materials, thereby misleading Decedent by the suggestions and deceptions set forth

8   above in this cause of action. The Dust Control Committee, which changed its name to the Air

9   Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject

10   of dust control. Discussions in this committee were held many times regarding the dangers

11   inherent in asbestos and the dangers which arise from the lack of control of dust, and such

12   information was suppressed from public dissemination from 1946 to a date unknown to Decedent

13   at this time;

14           f.        Commencing in 1930 with the study of mine and mill workers at

15   Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-

16   Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate

17   entities," and each of them, knew and possessed medical and scientific information of the

18   connection between inhalation of asbestos fibers and asbestosis, which information was

19   disseminated through the Asbestos Textile Institute and other industry organizations to all other

20   defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the

21   defendants, their "alternate entities," and each of them, acquired medical and scientific information

22   of the connection between inhalation of asbestos fibers and cancer, which information was

23   disseminated through the Asbestos Textile Institute and other industry organizations to defendants

24   herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as

25   a fact that which is not true and disseminated other facts likely to mislead Decedent. Such facts did

26   mislead Decedent and others by withholding the afore-described medical and scientific data and

27   other knowledge and by not giving Decedent the true facts concerning such knowledge of danger,

28   which defendants, their "alternate entities," and each of them, were bound to disclose;.

1            g.      Defendants, their "alternate entities," and each of them, failed to warn

2 Decedent and others of the nature of said materials which were dangerous when breathed and

3 which could cause pathological effects without noticeable trauma, despite the fact that defendants,

4 their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose

5 that said materials were dangerous and a threat to the health of persons coming into contact

6 therewith;

7            h.      Defendants, their "alternate entities," and each of them, failed to provide

8 Decedent with information concerning adequate protective masks and other equipment devised to

9 be used when applying and installing the products of the defendants, and each of them, despite

10 knowing that such protective measures were necessary, and that they were under a duty to disclose

11 that such materials were dangerous and would result in injury to the Decedent and others applying

12 and installing such material;

13            i.      Defendants, their "alternate entities," and each of them, when under a

14 duty to so disclose, concealed from Decedent the true nature of the industrial exposure of

15 Decedent and knew that Decedent and anyone similarly situated, upon inhalation of asbestos

16 would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.

17 Defendants, their "alternate entities," and each of them, also concealed from Decedent and others

18 that harmful materials to which they were exposed would cause pathological effects without

19 noticeable trauma;

20            j.      Defendants, their "alternate entities," and each of them, failed to provide

21 information of the true nature of the hazards of asbestos materials and that exposure to these

22 materials would cause pathological effects without noticeable trauma to the public, including

23 buyers, users, and physicians employed by Decedent and Decedent's employers so that said

24 physicians could examine, diagnose and treat Decedent and others who were exposed to asbestos,

25 despite the fact that defendants, their "alternate entities," and each of them, were under a duty to so

26 inform and said failure was misleading; and

27            k.      Defendants, their "alternate entities," and each of them, failed to provide

28 adequate information to physicians and surgeons retained by Decedent's employers and their

**COMPLAINT FOR WRONGFUL DEATH**                              PAGE 17

1 predecessor companies, for purposes of making physical examinations of Decedent and other

2 employees as to the true nature of the risk of such materials and exposure thereto when they in fact

3 possessed such information and had a duty to disclose it.

4      36.   Defendants, their "alternate entities," and each of them, willfully failed and omitted

5 to complete and file First Report of Occupational Injury of Illness regarding Decedent's injuries, as

6 required by law, and did willfully fail and omit to file report of injury and occupational disease

7 with the State of California. Decedent was in the class of persons with respect to whom a duty was

8 owed to file such reports and who would have been protected thereby if the fact of danger from

9 products complained of had become known.

10      37.   Defendants, their "alternate entities," and each of them, having such aforementioned

11 knowledge, and the duty to inform Decedent about the true facts, and knowing the Decedent did

12 not possess such knowledge and would breathe such material innocently, acted falsely and

13 fraudulently and with full intent to cause Decedent to remain unaware of the true facts and to

14 induce Decedent to work in a dangerous environment, all in violation of Sections 1708, 1709,

15 1710, and 1711 of the Civil Code of the State of California.

16      WHEREFORE, plaintiffs pray judgment as is hereinafter set forth.

17
### FIFTH CAUSE OF ACTION
18 (Premises Owner/Contractor Liability)

19 **AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF
ACTION, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C," DOES**
20 **301-399, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES
OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM,**
21 **AND ALLEGE AS FOLLOWS:**

22      38.   Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 9-16

23 of the First Cause of Action.

24      39.   At all times herein mentioned, each of the Premises Owner/Contractor Liability

25 Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor,

26 predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial

27 owner of an entity causing certain asbestos-containing insulation, other building materials,

28 products and toxic substances to be constructed, installed, maintained, used, replaced, repaired

---

1    and/or removed on the respective premises owned, leased, maintained, managed and/or controlled

2    by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the

3    herein-named defendants is liable for the tortious conduct of each successor, successor-in-

4    business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or

5    partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation

6    and other toxic substances. The defendants, and each of them, are liable for the acts of each and

7    every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs'

8    remedies against each such alternate entity; defendants, and each of them, have acquired the assets,

9    or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the

10    destruction of plaintiffs' remedies against each such alternate entity; each such defendant has the

11    ability to assume the risk-spreading role of each such alternate entity, and that each such defendant

12    enjoys the goodwill originally attached to each such alternate entity.

13        40.    At all times mentioned herein, the above-listed Premises Owner/Contractor Liability

14    Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or

15    controlled the premises listed on Exhibit "A" and others where Decedent was present. The

16    information provided on Exhibit "A" is preliminary, based on recall over events covering many

17    years and further investigation and discovery may produce more reliable information.

18    Additionally, Decedent might have been present at those or other Premises Owner/Contractor

19    Liability Defendants' premises at other locations and on other occasions.

20        41.    Prior to and at said times and places, said Premises Owner/Contractor Liability

21    Defendants, and each of them, respectively, caused certain asbestos-containing materials,  other

22    building materials, products and toxic substances to be constructed, installed, disturbed,

23    maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective

24    premises, by their own workers and/or by various contractors and/or subcontractors, and caused

25    the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the

26    ambient air and thereby created a hazardous and unsafe condition to Decedent and other persons

27    exposed to said asbestos fibers and toxic substances while present at said premises.

28        42.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

1   and each of them, knew or in the exercise of ordinary and reasonable care should have known, that

2   the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and

3   unreasonable risk of harm and personal injury to Decedent and other workers or persons so

4   exposed present on each of the aforesaid respective premises.

5      43.   At all times relevant herein, Decedent entered said premises and used or occupied

6   each of said respective premises as intended and for each of the respective Premises

7   Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective

8   Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, Decedent

9   was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the

10   ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated,

11   and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability

12   Defendants, and each of them.

13      44.   Decedent at all times was unaware of the hazardous condition or the risk of personal

14   injury created by the aforesaid presence and use of asbestos products and materials and other toxic

15   substances on said premises.

16      45.   The hazardous condition or risk of personal injury created by the aforesaid presence

17   and use of asbestos products and materials and other toxic substances on said premises was not a

18   known condition that Decedent's employer was hired to correct or repair.

19      46.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants

20   and each of them, remained in control of the premises where Decedent was performing his work.

21      47.   At all times mentioned herein, the Premises Owner/Contractor Liability Defendants

22   owed to Decedent, and others similarly situated, a duty to exercise ordinary care in the

23   management of such premises in order to avoid exposing workers such as Decedent to an

24   unreasonable risk of harm and to avoid causing injury to said person.

25      48.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

26   and each of them, knew, or in the exercise of ordinary and reasonable care should have known,

27   that the premises that were in their control would be used without knowledge of, or inspection for,

28   defects or dangerous conditions, and that the persons present and using said premises would not be

1   aware of the aforesaid hazardous conditions to which they were exposed on the premises.

2       49.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

3   and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises

4   or to abate or correct, or to warn Decedent of, the existence of the aforesaid dangerous conditions

5   and hazards on said premises.

6       50.   At all times herein mentioned, said Premises Owner/Contractor Liability Defendants

7   and each of them, negligently provided unsafe equipment for the performance of the work that

8   caused or contributed to Decedent's injuries.

9       51.   Prior to and at the times and places aforesaid, said Premises Owner/Contractor

10   Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials,

11   other building materials, products and toxic substances to be constructed, installed, maintained,

12   used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their

13   own workers and/or by employing various contractors, and caused the release of dangerous

14   quantities of toxic asbestos fibers and other toxic substances into the ambient air, and thereby

15   injured Decedent.

16       52.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

17   and each of them, should have recognized that the work of said contractors would create during the

18   progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm

19   Decedent and others unless special precautions were taken.  The said Premises Owner/Contractor

20   Liability Defendants, and each of them, knew or should have known that the work required special

21   procedures and instruction so as to be accomplished in a safe manner and avoid injury to Decedent

22   and others. The Premises Owner/Contractor Liability Defendants were aware or should have been

23   aware that such special procedures and instructions were not taken nor provided.

24       53.   In part, Decedent was exposed to dangerous quantities of asbestos fibers and other

25   toxic substances by reason of such premises owners and/or contractors' failure to take the

26   necessary precautions.

27       54.   The work, actions and/or inactions of contractors on premises controlled by the

28   Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by

1  reason of the release of dangerous quantities of toxic substances including but not limited to

2  asbestos.

3      55.   The unsafe premise or work place was created, in part, by the negligent conduct of

4  the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct

5  includes but is not limited to:

6         a.   Failure to advise and warn of asbestos and other toxic dusts;

7         b.   Failure to suppress the asbestos-containing or toxic dusts;

8         c.   Failure to remove the asbestos-containing and toxic dusts through use of

9             ventilation or other approved appropriate means;

10         d.   Failure to provide adequate breathing protection, i.e., approved respirators or

11             masks;

12         e.   Failure to inspect and/or test the air;

13         f.   Failure to provide proper medical monitoring, medical check-ups, and

14  reviews.

15      56.   The Premises Owner/Contractor Defendants' duty to maintain and provide safe

16  premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties

17  arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety

18  Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises

19  Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves

20  or others.

21      57.   Prior to and at said times and places, said Premises Owner/Contractor Liability

22  Defendants were subject to certain ordinances, statutes, and other government regulations

23  promulgated by the United States Government, the State of California, and others, including but

24  not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code

25  §6400 and the California Administrative Code under the Division of Industrial Safety, Department

26  of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous

27  Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as

28  documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety

1   Orders; additionally, California Health and Safety Code §40200, et seq., which empowers the Bay

2   Area Air Quality Management District to promulgate regulations including but not limited to

3   BAAQMD. Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part

4   61, et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said

5   Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to

6   prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said

7   Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and

8   precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants

9   failed to provide the required safeguards and precautions. Defendants' violations of said codes

10  include but are not limited to:

11          a.   Failing to comply with statutes and allowing ambient levels of airborne

12  asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

13  statutes;

14          b.   Failing to segregate work involving the release of asbestos or other toxic dusts;

15          c.   Failing to suppress dust using prescribed ventilation techniques;

16          d.   Failing to suppress dust using prescribed "wet down" techniques;

17          e.   Failing to warn or educate Decedent or others regarding asbestos or other toxic

18  substances on the premises;

19          f.   Failing to provide approved respiratory protection devices;

20          g.   Failing to ensure "approved" respiratory protection devices were used

21  properly;

22          h.   Failing to provide for an on-going health screening program for those exposed

23  to asbestos on the premises which included disclosure and/or discussion of ongoing health

24  consequences of asbestos exposure with Decedent;

25          i.   Failing to provide adequate housekeeping and clean-up of the work place;

26          j.   Failing to properly warn of the hazards associated with asbestos as required by

27  these statutes;

28          k.   Failing to properly report renovation and disturbance of asbestos-containing

---

**COMPLAINT FOR WRONGFUL DEATH**                                                    PAGE 23

1    materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401 and S.C.A.Q.M.D

2    regulations;

3              l.    Failing to get approval for renovation as required by statutes;

4              m.   Failing to maintain records as required by statute;

5              n.    Failing to conform to and comply with statutes, rules, and regulations regarding

6    worker and workplace safety; including but not limited to those mandated by OSHA, EPA, and

7    California legislature;

8              o.    Failing to provide Decedent with alternative, safe, asbestos-free work areas

9    and/or failure to remove Decedent from an asbestos-laden environment where ongoing exposures

10   to asbestos increased the risk of Decedent contracting an asbestos-related disease.

11             p.    Failing to have an asbestos removal supervisor as required by regulation;

12        58.   Decedent at all times was unaware of the hazardous condition or the risk of personal

13   injury created by defendants' violation of said regulations, ordinances or statutes.

14        59.   At all times mentioned herein, Decedent was a member of the class of persons whose

15   safety was intended to be protected by the regulations, statutes or ordinances described in the

16   foregoing paragraphs.

17        60.   In such circumstances where Decedent was the employee or "statutory employee" as

18   defined by the California Labor Code and California case law of said Premises Owner/Contractor

19   Liability Defendants, such Premises Owner/Contractor Liability Defendants owed a duty of care to

20   prevent injury, harm, damage, or loss to Decedent. Instead, well outside the normal risk of

21   Decedent's employment, said Premises Owner/Contractor Liability Defendants caused Decedent

22   to be exposed to asbestos-containing materials, products, and other toxic substances, and

23   fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos

24   and toxic products contamination, as well as the known and recognized injurious health

25   consequences of repeated and reoccurring exposures by Decedent to asbestos-containing materials,

26   products, and other toxic substances.

27        61.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants,

28   and each of them, knew, or in the exercise of ordinary and reasonable care should have known,

1   that the premises that were in their control would be used without knowledge of, or inspection for,

2   defects or dangerous conditions, that the persons present and using said premises would not be

3   aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that

4   such persons were unaware of the aforesaid violations of codes, regulations and statutes.

5       62.   Said Premises Owner/Contractor Liability Defendants knew of the harmful exposures

6   to asbestos sustained by Decedent at, by and/or through the actions and/or inactions of their own

7   employees or others under the direct and immediate instruction, control and/or supervision of said

8   Premises Owner/Contractor Liability and said Premises Owner/Contractor Liability Defendants

9   concealed and/or failed to disclose to Decedent the harmful effects and bodily injuries suffered by

10   Decedent as a result of such exposures to asbestos.

11       63.   As a legal consequence of the foregoing, Decedent's exposure to asbestos and

12   asbestos-containing products caused Decedent to contract asbestosis and other asbestos-related

13   diseases from which he died on November 20, 2009.

14       WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

15   each of them, as hereinafter set forth.

16

17                      **SIXTH CAUSE OF ACTION**
                            (Survival Action)

18

19   **AS AND FOR A FURTHER, EIGHTH, SEPARATE, FURTHER AND DISTINCT
CAUSE OF ACTION FOR SURVIVAL DAMAGES, PLAINTIFFS COMPLAIN OF**

20   **ALL DEFENDANTS, INCLUSIVE, AND EACH OF THEM, AND ALLEGE AS
FOLLOWS:**

21

22       64.   Plaintiffs incorporate by reference herein each and every paragraph of the First

23   through Fifth Causes of Action of this complaint, and makes them a part of this, the Sixth Cause of

24   Action, as though fully set forth herein.

25       65.   On November 20, 2009, Decedent, HENRY LEAVY who would have been a

26   plaintiff in this action if he had lived, died.

27       66.   As a proximate result of the conduct of the defendants and each of them, Decedent

28   was required to, and did, employ physicians and surgeons to examine, treat and care for him, and

1   did incur medical and incidental expenses in a sum to be subsequently determined.

2       67.   As a further, direct and proximate cause of the conduct of defendants, and each of

3   them, Decedent was prevented from attending to his usual occupation for a period of time, could

4   not maintain or exceed his income capacity, and thereby incurred damages for loss of earnings in a

5   sum to be subsequently determined.

6       WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as is

7   hereinafter set forth.

8

9                    **DAMAGES**

10   Plaintiffs pray judgment against defendants and each of them as follows:

11   For general damages according to proof;

12   For special damages according to proof;

13   For medical expenses according to proof;

14   For loss of income according to proof;

15   For punitive damages according to proof;

16   For burial and funeral expenses according to proof;

17   For plaintiffs' costs of suit herein; and,

18   For such other further relief as this Court and the law deems just and proper.

19

20   Dated: October 8, 2010           **KELLER, FISHBACK & JACKSON LLP**

21

22                     By _____

23                        Stephen M. Fishback
                        Attorneys for Plaintiffs

24

25

26

27

28

# EXHIBIT "A"

Decedent, HENRY LEAVY, suffered from asbestos-caused diseases, including but not limited to, asbestosis.

Decedent HENRY LEAVY was exposed to asbestos of varied types and sources during his land-based employment, which may have included, but is not limited to, asbestos containing: wallboard; joint/taping compound; acoustical products; fireproofing; adhesives; electrical components; phenolic resins; wire/cable; arcs/chutes; scanners; gaskets/packing; scopes; electronics; cloth; paper; board; switches; gears; panels; tubes; insulation materials; brakes; clutches; gaskets; engines; motors; pumps; valves; packing; automobiles; trucks; other automotive component parts; boilers; coolers/chillers; cement pipe; steam traps; refractory materials; engines; turbines; compressors; condensers, and other materials containing asbestos currently unknown or unspecified by plaintiffs. Plaintiffs allege and believe that HENRY LEAVY's exposures to asbestos may have occurred at job sites including, but not limited to, those listed below.

Decedent, HENRY LEAVY, was also exposed to asbestos dust that was carried into his work areas on the person and clothing of co-workers. While performing his regular job duties, his person and clothing were contaminated with such asbestos dust from the work of others in proximity to him.

Decedent HENRY LEAVY was also exposed to asbestos containing materials while performing multiple home repairs and renovations in California during the 1950s through the 1970s. HENRY LEAVY used drywall, taping and joint/taping compound, insulation, wallboard, flooring materials, stucco, plaster, and other asbestos containing materials to perform this work causing him to be exposed to respirable asbestos, which he breathed.

Decedent HENRY LEAVY and others in his immediate vicinity also performed automotive repair and maintenance to a variety of make and models of vehicles between the 1940s and 1990s. Such repair and maintenance may have included but was not limited to: inspect, remove and install asbestos-containing products on asbestos containing automobiles and trucks, such as brakes and clutches, and related component parts; inspect, remove and install asbestos-containing automotive gaskets and gasketing materials; cleanup using compressed air, push brooms, dry cloths and other tools after performing such tasks; and other vehicle repair and maintenance tasks. Such repair and maintenance caused decedent to be exposed to harmful respirable asbestos which he breathed.

Plaintiffs allege and believe that HENRY LEAVY's exposures to asbestos may have occurred at job sites including, but not limited to, those listed below.

Employer:       Warner Bros.
Date:           1951-1955
Duration:       Approximately 4 years
Site:   Warner Bros. Studios, Los Angeles, CA
Job Title:      Electrician

Employer:       Los Angeles Department of Water and Power
Date:           1955-1985

| | |
|---|---|
| Duration | Approximately 30 years |
| Site | Various power plants, switching stations, and other facilities owned, operated and controlled by Los Angeles Department of Water and Power, Los Angeles County, CA |
| Job Title: | Electrician |

Plaintiffs' investigation and discovery are continuing.

## EXHIBIT "B"

A.W. CHESTERTON COMPANY, INC.;

ASBESTOS CORPORATION LTD.;

CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-in-interest to and formerly known as VIACOM, INC. and WESTINGHOUSE ELECTRIC CORPORATION;

CRANE CO.;

CROWN CORK & SEAL COMPANY, INC., individually and as successor-in-interest to MUNDET CORK COMPANY;

CUTLER-HAMMER, INC.;
DOUGLASS INSULATION COMPANY, INC.;

ERICSSON, INC, individually and as successor-in-interest to ANACONDA WIRE AND CABLE COMPANY, MARCONI CORPORATION PLC;

FMC CORPORATION;

GENERAL CABLE CORPORATION;

GENERAL ELECTRIC COMPANY;

GRAYBAR ELECTRIC COMPANY;

GRINNELL CORPORATION;

IMO INDUSTRIES, INC. individually and as successor-in-interest to DELALVAL PUMPS;

INGERSOLL-RAND COMPANY;

ITT INDUSTRIES, INC. individually and as successor-in-interest to BELL & GOSSETT;

J.T. THORPE & SON, INC.;

JOHN K. BICE COMPANY, INC.;

KAISER GYPSUM COMPANY;

METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to NOR-CAL INSULATION;

OSRAM SYLVANIA, INC.;

OWENS-ILLINOIS, INC.;

PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, individually and as successor-in-interest to PHILIPS NORTH AMERICA, NORELCO, MAGNAVOX;

QUINTEC INDUSTRIES, INC.;

RAPID AMERICAN CORP., individually and as successor-in-interest to PHILIP CAREY CORPORATION;

ROCKWELL AUTOMATION, INC.;

SCHNEIDER ELECTRIC USA, INC.;

STERLING FLUID SYSTEMS (USA) LLC, dba and individually and successor-in-interest to PEERLESS PUMP COMPANY, INDIAN HEAD, INC.;

SUMITOMO BAKELITE NORTH AMERICA, individually and as successor-in-interest to DUREZ CORPORATION;

TYCO INTERNATIONAL (US) INC.;

UNION CARBIDE CORPORATION;

DOES 1-300.

1

## EXHIBIT "C"

2  CBS CORPORATION, a DELAWARE CORPORATION, individually, successor- in-interest to

3  and formerly known as  VIACOM, INC. and  WESTINGHOUSE

4  ELECTRIC CORPORATION;

5  GENERAL ELECTRIC COMPANY;

6  GRINNELL CORPORATION;

7  METALCLAD INSULATION CORPORATION;

8  DOES 301-399.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-01796-EDL

Leavy et al v. A.W. Chesterton Company, Inc. et al
Assigned to: Magistrate Judge Elizabeth D. Laporte
Demand: $0
Cause: 28:1441 Petition for Removal- Asbestos Litigation

Date Filed: 04/13/2011
Jury Demand: Defendant
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

### Plaintiff

**Linda Leavy**
*individually and successor in interest to*
*Henry Leavy, deceased*

represented by **Stephen Michael Fishback**
Keller Fishback & Jackson LLP
18425 Burbank Boulevard, Suite 610
Tarzana, CA 91356
(818) 342-7442
Fax: (818) 342-7616
Email: sfishback@kfjlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Lee Keller**
Keller Fishback & Jackson LLP
18425 Burbank Boulevard, Suite 610
Tarzana, CA 91356
(818) 342-7442
Fax: (818) 342-7616
Email: dkeller@kfjlegal.com
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Dianne Boschee**

represented by **Stephen Michael Fishback**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Lee Keller**
(See above for address)
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Patricia Clark**

represented by **Stephen Michael Fishback**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Lee Keller**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ralph Leavy**                                   represented by   **Stephen Michael Fishback**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Lee Keller**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**A.W. Chesterton Company, Inc.**

**Defendant**

**Asbestos Corporation Ltd.**

**Defendant**

**CBS Corporation**                               represented by   **Kevin Douglas Jamison**
*a Delaware Corporation, individually,*                            Pond North LLP
*successor-in-interest to and formerly*                            350 South Grand Avenue, Suite 3300
*known as*                                                         Los Angeles, CA 90071
*formerly known as*                                               (213) 617-6170
Viacom, Inc.                                                      Fax: (213) 623-3594
*formerly known as*                                              Email: kjamison@pondnorth.com
Westinghouse Electric Corporation                                *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frank D. Pond**
Pond North LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071
(213) 617-6170
Fax: (213) 623-3594
*ATTORNEY TO BE NOTICED*

**Mary Katherine Back**
Pond North LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071
(213) 617-6170
Fax: (213) 623-3594
Email: mback@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Defendant**

Crane Co.

**Defendant**

**Crown Cork & Seal Company, Inc.**
*individually and as successor-in-interest to Mundet Cork Company*

**Defendant**

**Cutler-Hammer, Inc.**

**Defendant**

**Douglass Insulation Company, Inc.**

**Defendant**

**Ericsson, Inc.**
*individually and as successor-in-interest to Anaconda Wire & Cable Company, Marconi Corporation PLC*

**Defendant**

**FMC Corporation**

**Defendant**

**General Cable Corporation**

**Defendant**

**General Electric Company**                                        represented by    **Katherine Paige Gardiner**
Sedgwick, Detert, Moran & Arnold
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105
415-781-7900
Email: katherine.gardiner@sdma.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Graybar Electric Company**

**Defendant**

**Grinnell Corporation**

**Defendant**

**IMO Industries, Inc.**
*individually and as successor-in-interest to Delalval Pumps*

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**ITT Industries, Inc.**
*individually and as successor-in-interest to Bell & Gossett*

**Defendant**

**J.T. Thorpe & Son, Inc.**

**Defendant**

**John K. Bice Company, Inc.**

**Defendant**

**Kaiser Gypsum Company**

**Defendant**

**Metalclad Insulation Corporation**
*individually and as successor-in-interest to Nor-Cal Insulation*

represented by **Lisa Lurline Oberg**
McKenna Long & Aldridge LLP
101 California Street, 41st Floor
San Francisco, CA 94111
(415) 267-4000
Fax: (415) 267-4198
Email: loberg@mckennalong.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arlene C. Barton**
McKenna Long & Aldridge LLP
101 California Street, 41st Floor
San Francisco, CA 94111
(415) 267-4000
Fax: (415) 267-4198
*ATTORNEY TO BE NOTICED*

**Kathy Mai Huynh**
McKenna Long Aldridge LLP
101 California Street, 41st Floor
San Francisco, CA 94111
(415) 267-4122
Fax: (415) 267-4198
Email: khuynh@mckennalong.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**OSRAM Sylvania, Inc.**

**Defendant**

**Owens-Illinois, Inc.**

**Defendant**

**Philips Electronics North America Corporation**
*individually and as successor-in-interest to Philips North America, Norelco, Magnavox*

**Defendant**

**Quintec Industries, Inc.**

**Defendant**

**Rapid American Corp.**
*individually and as successor-in-interest to Philip Carey Corporation*

represented by **Edward Kong Low**
SNR Denton US LLP
525 Market Street, 26th Floor
San Francisco, CA 94105
415-882-5018
Fax: 415-882-0300
Email: edward.low@snrdenton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ivor E. Samson**
SNR Denton US LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
415 882-5000
Fax: 415 882-0300
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rockwell Automation, Inc.**

represented by **Nicole Elisabet Gage**
Tucker Ellis & West LLP
135 Main Street, Suite 700
San Francisco, CA 94105
(415) 617-2400
Fax: (415) 617-2409
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Evan Craig Nelson**
Tucker Ellis & West LLP
135 Main Street, suite 700
San Francisco, CA 94104
(415) 17-2400
Fax: (415) 617-2409
Email: evan.nelson@tuckerellis.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Schneider Electric USA, Inc.**

**Defendant**

**Sterling Fluid Systems (USA) LLC**
*and individually and successor-in-*
*interest to Peerless Pump Company,*
*Indian Head, Inc.*
*doing business as*
Peerless Pump Company
*doing business as*
Indian Head, Inc.

**Defendant**

**Sumitomo Bakelite North America**
*individually and as successor-in-*
*interest to Durez Corporation*

**Defendant**

**Tyco International (US) Inc.**

**Defendant**

**Union Carbide Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/13/2011 | 1 | NOTICE OF REMOVAL - [No Process] from San Francisco County Superior Court-Their Case Number is CGC-10-275684. [Filing Fee: $350.00, Receipt Number 34611058632] Filed by Defendant Rockwell Automation, Inc.. (tn, COURT STAFF) (Filed on 4/13/2011) (tn, COURT STAFF). (Additional attachment(s) added on 4/14/2011: # 1 Notice of Removal - [Part 1]) (tn, COURT STAFF). (Additional attachment(s) added on 4/14/2011: # 2 Notice of Removal - [Part 2]) (tn, COURT STAFF). (Entered: 04/14/2011) |
| 04/13/2011 | 2 | ADR SCHEDULING ORDER: Joint Case Management Statement due 7/19/2011 & InitialCase Management Conference set for 7/26/2011 at 10:00 AM.. (tn, COURT STAFF) (Filed on 4/13/2011) (tn, COURT STAFF). (Entered: 04/14/2011) |
| 04/13/2011 | 3 | Disclosure Statement & Certification of Interested Entities or Persons filedby Defendant Rockwell Automation, Inc. identifying Other Affiliate Nationwide Insurance for Rockwell Automation, Inc.. (tn, COURT STAFF) (Filed on 4/13/2011) (tn, COURT STAFF). (Entered: 04/14/2011) |
| 04/13/2011 | 4 | NOTICE of Pendency of Other Action filed by Defendant Rockwell Automation, Inc.. (tn, COURT STAFF) (Filed on 4/13/2011) (tn, COURT STAFF). (Entered: 04/14/2011) |
| 04/13/2011 | 5 | NOTICE of Tag-Along Action filed by Defendant Rockwell Automation, Inc.. (tn, COURT STAFF) (Filed on 4/13/2011) (tn, COURT STAFF). (Entered: 04/14/2011) |
| 04/13/2011 | | CASE DESIGNATED for Electronic Filing. (tn, COURT STAFF) (Entered: |

| | | 04/14/2011 |
|---|---|---|
| 04/13/2011 | | Answer to Plaintiffs' Complaint for Damages (Wrongful Death)(Asbestos) Submitted by Defendant Rockwell Automation, Inc.. (tn, COURT STAFF) (Entered: 04/14/2011) |
| 04/15/2011 | 6 | NOTICE filed by General Electric Company of *Refiling State Court Answer to Complaint for Damages and Notice of Interested Parties* (Attachments: #(1) Notice of Interested Parties)(Gardiner, Katherine) (Filed on 4/15/2011) (Entered: 04/15/2011) |
| 04/19/2011 | 7 | NOTICE filed by CBS Corporation of *Filing State Court Answer to Complaint and Demand for Jury Trial* (Attachments: #(1) Exhibit 1 - Answer to Complaint, # 2 Exhibit 2 - Demand for Jury Trial)(Jamison, Kevin) (Filed on 4/19/2011) (Entered: 04/19/2011) |
| 04/19/2011 | 8 | NOTICE filed by CBS Corporation of *Related Cases to the Multidistrict Litigation No. 875*. (Jamison, Kevin) (Filed on 4/19/2011) (Entered: 04/19/2011) |
| 04/19/2011 | 9 | Disclosure Statement Pursuant to Federal Rules of Civil Procedure Rule 7.1 and Local Rule 3-16 filed by CBS Corporation. (Jamison, Kevin) (Filed on 4/19/2011) (Entered: 04/19/2011) |
| 04/20/2011 | 10 | NOTICE of Appearance by Edward Kong Low *on behalf of Defendant Rapid-American Corporation* (Low, Edward) (Filed on 4/20/2011) (Entered: 04/20/2011) |
| 04/20/2011 | 11 | NOTICE filed by Rapid American Corp. of *Re-Filing State Court Answer to Complaint* (Attachments: #(1) Exhibit Exhibit A: Answer to State Court Complaint)(Low, Edward) (Filed on 4/20/2011) (Entered: 04/20/2011) |
| 04/20/2011 | 12 | NOTICE filed by Rapid American Corp. of *Related Cases Pursuant to Local Rule 3-12 (Multidistrict Litigation 875)*. (Low, Edward) (Filed on 4/20/2011) (Entered: 04/20/2011) |
| 04/20/2011 | 13 | Certificate of Interested Parties filed by Rapid American Corp. (Low, Edward) (Filed on 4/20/2011) (Entered: 04/20/2011) |
| 04/25/2011 | 14 | NOTICE of Appearance by Lisa Lurline Oberg *Notice of Appearance Of Counsel By Defendant Metalclad Insulation Corporation* (Oberg, Lisa) (Filed on 4/25/2011) (Entered: 04/25/2011) |
| 05/12/2011 | 15 | MOTION to Remand *NOTICE OF MOTION TO REMAND CASE TO CALIFORNIA SUPERIOR COURT* filed by Dianne Boschee, Patricia Clark, Linda Leavy, Ralph Leavy. Motion Hearing set for 6/21/2011 09:00 AM in Courtroom F, 15th Floor, San Francisco before Magistrate Judge Elizabeth D. Laporte. (Attachments: # 1 Supplement MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION TO REMAND CASE TO CALIFORNIA SUPERIOR COURT, # 2 Affidavit DECLARATION OF DOUGLAS V. DUKELOW IN SUPPORT OF PLAINTIFFS MOTION TO REMAND CASE TO CALIFORNIA SUPERIOR COURT, # 3 Proposed Order [PROPOSED] ORDER GRANTING PLAINTIFFS MOTION TO REMAND CASE TO CALIFORNIA SUPERIOR |

COURT)(Keller, Daniel) (Filed on 5/12/2011) (Entered: 05/12/2011)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/12/2011 15:28:14 | | |
| **PACER Login:** | te0445 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-01796-EDL |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |