ADRMOP, E-Filing

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:11-cv-02308-CW

Muse v. General Electric Company                    Date Filed: 05/10/2011
Assigned to: Hon. Claudia Wilken                    Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Product Liability          Nature of Suit: 368 P.I. : Asbestos
                                                    Jurisdiction: Diversity

**Plaintiff**

**Christopher Muse**                 represented by   **Alan R. Brayton**
*as Wrongful Death Heir, and as*                      Brayton Purcell LLP
*Successor-in-Interest to Patricia Neal,*             222 Rush Landing Road
*Deceased*                                            P.O. Box 6169
                                                      Novato, CA 94948-6169
                                                      415-898-1555
                                                      Fax: 415-898-1247
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      Brayton Purcell LLP
                                                      222 Rush Landing Road
                                                      Novato, CA 94948-6169
                                                      (415) 898-1555
                                                      Fax: 415-898-1247
                                                      Email: DDonadio@braytonlaw.com
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/10/2011 | 1 | COMPLAINT /issued summons against General Electric Company ( Filing fee $ 350, receipt number 34611059729.). Filed byChristopher Muse. (ga, COURT STAFF) (Filed on 5/10/2011) (Entered: 05/12/2011) |
| 05/10/2011 | 2 | Declination to Proceed Before a U.S. Magistrate Judge by Christopher Muse. (ga, COURT STAFF) (Filed on 5/10/2011) (Additional attachment(s) added on 5/16/2011: # 1 Decline) (ga, COURT STAFF). (Entered: 05/12/2011) |
| 05/10/2011 | 3 | Certificate of Interested Entities by Christopher Muse re 1 Complaint (ga, COURT STAFF) (Filed on 5/10/2011) (Entered: 05/12/2011) |

| 05/10/2011 | 4 | NOTICE by Christopher Muse re 1 Complaint (ga, COURT STAFF) (Filed on 5/10/2011) (Entered: 05/12/2011) |
| 05/10/2011 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 8/11/2011. Case Management Conference set for 8/18/2011 10:00 AM in Courtroom B, 15th Floor, San Francisco.. Signed by Judge Maria-Elena James on 5/10/11. (Attachments: # 1 Standing Order)(ga, COURT STAFF) (Filed on 5/10/2011) (Entered: 05/12/2011) |
| 05/10/2011 | | CASE DESIGNATED for Electronic Filing. (ga, COURT STAFF) (Filed on 5/10/2011) (Entered: 05/12/2011) |
| 05/16/2011 | 6 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (bjtS, COURT STAFF) (Filed on 5/16/2011) (Entered: 05/16/2011) |
| 05/17/2011 | 7 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Claudia Wilken for all further proceedings. Judge Magistrate Judge Maria-Elena James no longer assigned to the case.. Signed by Executive Committee on 5/17/11. (as, COURT STAFF) (Filed on 5/17/2011) (Entered: 05/17/2011) |
| 05/17/2011 | 8 | CASE MANAGEMENT SCHEDULING ORDER FOR REASSIGNED CIVIL CASE: Case Management Statement due by 8/16/2011. Case Management Conference set for 8/23/2011 02:00 PM.Signed by Judge Claudia Wilken on 5/17/2011. (ndr, COURT STAFF) (Filed on 5/17/2011) (Entered: 05/17/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/18/2011 12:27:49 | | |
| **PACER Login:** | jp0001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:11-cv-02308-CW |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California  94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiff

ORIGINAL E-filing
FILED

2011 MAY 10  P 12: 38

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

MEJ

CHRISTOPHER MUSE, as Wrongful
Death Heir, and as Successor-in-Interest to
PATRICIA NEAL, Deceased,

CV 11 2308

No.

Plaintiff,

vs.

GENERAL ELECTRIC COMPANY,

Defendant.

COMPLAINT FOR SURVIVAL,
WRONGFUL DEATH - ASBESTOS;
DEMAND FOR JURY TRIAL

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

**I.**

**PARTIES**

1.      Plaintiff in this action is the above-captioned successor-in-interest to, or the

personal representative of the estate of Decedent; and the personal representatives on behalf of

the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

"Plaintiff."

2.      The person who sustained asbestos-related lung injuries and death as a result of

their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

hereinafter "Decedent" is, with the date of death: PATRICIA NEAL died May 16, 2010.

CHRISTOPHER MUSE is the son of PATRICIA NEAL and is hereinafter referred to as

"Successor-in-Interest."

1       3.      Decedent sustained an asbestos-related lung disease and death by precisely the

2 following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

3 containing products at the jobsites of Decedent PATRICIA NEAL, Decedent's husband, Clifford

4 Neal, and Decedent's father. The pathogenesis of Decedent's asbestos-related diseases is

5 explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

6       4.      All of Plaintiff's claims arise out of a similar series of occurrences: repeated

7 exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

8 and supplied to, installed and/or maintained by defendants at the worksites of Decedent,

9 Decedent's husband, Clifford Neal, and Decedent's father, over a period of years, caused from

10 release of toxic asbestos fibers and subsequent inhalation by the Decedent, resulting in

11 cumulative, progressive, incurable lung diseases.

12      5.      Each Plaintiff claims damages for an asbestos-related disease arising from an

13 identical series of occurrences not dependent on the worksite of Decedent, Decedent's husband,

14 and Decedent's father, but on the fact that asbestos-containing products, when handled in the

15 manner in which they were intended, released harmful asbestos fibers which when inhaled by

16 Decedent, caused serious lung disease. The allegations of Plaintiff regarding the nature of

17 Decedent's asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause

18 disease, the criteria for diagnosis of disease, are all identical.

19      6.      Plaintiff is informed and believes, and thereon alleges, that at all times herein

20 mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

21 proprietorships and/or other business entities organized and existing under and by virtue of the

22 laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

23 said defendants, and each of them, were and are authorized to do and are doing business in the

24 State of California, and that said defendants have regularly conducted business in the State of

25 California.

26 ///

27 ///

28 ///

1

**II.**

2

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

3        7.        Jurisdiction: Plaintiff CHRISTOPHER MUSE is a citizen of the State of

4    California. Plaintiff(s) are citizens of the following states, respectively: .

5        Defendants are each corporations incorporated under the laws of and having its principal

6    places of business in the following States:

7

| DEFENDANT | STATE |
|-----------|-------|
8| GENERAL ELECTRIC COMPANY | Connecticut |

9

10        This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

11    between citizens of different states in which the matter in controversy exceeds, exclusive of costs

12    and interest, seventy-five thousand dollars.

13        8.        Venue / Intradistrict Assignment. Venue is proper in the Northern District of

14    California and assignment to the San Francisco Division of said district is proper as a substantial

15    part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred

16    within the County of San Francisco, California, and Defendants are subject to personal

17    jurisdiction in this district at the time the action is commenced.

18

**III.**

19

**CAUSES OF ACTION**

20

FIRST CAUSE OF ACTION
(Negligence)

21

22        PLAINTIFF CHRISTOPHER MUSE COMPLAINS OF DEFENDANTS GENERAL

23    ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND

24    FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

25        9.        At all times herein mentioned, each of the named defendants was the successor,

26    successor in business, successor in product line or a portion thereof, assign, predecessor,

27    predecessor in business, predecessor in product line or a portion thereof, parent, holding

28    company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

K:\ln\ured\110180\FED\PLD\cmp fed (wd).wpd                         3

1  or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

2  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

3  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

4  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

5  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

6  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

7  asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

8  called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

9  conduct of each successor, successor in business, successor in product line or a portion thereof,

10  assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

11  venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

12  entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

13  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

14  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

15  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

16  products containing asbestos. The following defendants, and each of them, are liable for the acts

17  of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

18  destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

19  of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

20  ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each

21  such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

22  role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

23  originally attached to each such ALTERNATE ENTITY:

24  **DEFENDANT**                          **ALTERNATE ENTITY**

25  GENERAL ELECTRIC COMPANY          MATTERN X-RAY
                                       HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED
26                                      TRUMBULL ELECTRIC MANUFACTURING COMPANY
                                       G E INDUSTRIAL SYSTEMS
27                                      CURTIS TURBINES
                                       PARSONS TURBINES
28                                      GENERAL ELECTRIC JET ENGINES

10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

12.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

13.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering,

1   fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
2   limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
3   breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the
4   release of airborne asbestos fibers, and that through such foreseeable use and/or handling
5   "exposed persons," including Decedent herein, Decedent's husband, Clifford Neal, and
6   Decedent's father, would use or be in proximity to and exposed to said asbestos fibers, which
7   contaminated the packaging, products, environment, and clothing of persons working in
8   proximity to said products, directly or through reentrainment.

9       14.      Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
10  containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
11  exposure to asbestos and asbestos-containing products is on current information as set forth at
12  various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
13  herein.

14      15.      As a direct and proximate result of the acts, omissions, and conduct of the
15  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure
16  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,
17  or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiff's complaint and
18  incorporated by reference herein.

19      16.      Plaintiff is informed and believes, and thereon alleges, that progressive lung
20  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
21  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
22  asbestos and asbestos-containing products over a period of time.

23      17.      Decedent suffered from a condition related to exposure to asbestos and asbestos-
24  containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-
25  containing products presented any risk of injury and/or disease.

26      18.      As a direct and proximate result of the aforesaid conduct of the defendants, their
27  "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,
28  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

K:\Injured\110180\FED\PLD\cmp fed (wd).wpd                6

1  amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this

2  complaint accordingly when the true and exact cost thereof is ascertained.

3      19.    As a direct and proximate result of the aforesaid conduct of the defendants, their

4  ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value

5  of medial care provided by Decedent's family members measured by, inter alia, the costs

6  associated with the hiring a registered nurse, home hospice, or other service provider, the true

7  and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to

8  amend this complaint accordingly when the true and exact costs are known or at time of trial.

9      20.    As a direct and proximate result of the aforesaid conduct of defendants, their

10  ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to her person,

11  body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and

12  related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,

13  from the effect of exposure to asbestos fibers, all to her general damage in the sums to be proven

14  at trial.

15      21.    As a further direct and proximate result of the said conduct of the defendants,

16  their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,

17  entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

18  pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is

19  requested to amend this complaint to conform to proof at the time of trial.

20      22.    As a further direct and proximate result of the said conduct of the defendants,

21  their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-

22  containing products caused severe and permanent injury to Decedent, and ultimately Decedent

23  died on the date previously stated herein.

24      23.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

25  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

26  had full knowledge of, or should have known of, each of the acts set forth herein.

27      24.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the

28  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

1   and each defendant's officers, directors, and managing agents participated in, authorized,

2   expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

3   each of their ALTERNATE ENTITIES as set forth herein.

4        25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

5   and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in

6   conscious or reckless disregard and indifference to the safety, health, and rights of "exposed

7   persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive

8   damages against said defendants.

9        WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

10   each of them, as hereinafter set forth.

11                          SECOND CAUSE OF ACTION
                              (Products Liability - Survival)
12

13      PLAINTIFF CHRISTOPHER MUSE AS SUCCESSOR-IN-INTEREST TO THE

14   DECEDENT PATRICIA NEAL COMPLAINS OF DEFENDANTS GENERAL ELECTRIC

15   COMPANY, THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A

16   SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

17   LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

18       26.    Plaintiff incorporates herein by reference, as though fully set forth herein, each

19   paragraph of the First Cause of Action  herein.

20       27.    Defendants, their "alternate entities," and each of them, knew and intended that

21   the above-referenced asbestos and asbestos-containing products would be used by the purchaser

22   or user without inspection for defects therein or in any of their component parts and without

23   knowledge of the hazards involved in such use.

24       28.    Said asbestos and asbestos-containing products were defective and unsafe for their

25   intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

26   and/or death.  The defect existed in the said products at the time they left the possession of

27   defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

28   personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

1 persons," including Decedent herein, Decedent's husband, Clifford Neal, and Decedent's father,
2 while being used in a reasonably foreseeable manner, thereby rendering the same defective,
3 unsafe, and dangerous for use.

4      29.     "Exposed persons" did not know of the substantial danger of using said products.
5 Said dangers were not readily recognizable by "exposed persons." Said defendants, their
6 ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
7 which Decedent and others similarly situated were exposed.

8      30.     In researching, manufacturing, fabricating, designing, modifying, testing or failing
9 to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
10 sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,
11 promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
12 marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
13 and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
14 did so with conscious disregard for the safety of "exposed persons" who came in contact with
15 said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
16 ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
17 death resulting from exposure to asbestos or asbestos-containing products, including, but not
18 limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part,
19 from scientific studies performed by, at the request of, or with the assistance of, said defendants,
20 their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
21 defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

22      31.     On or before 1930, and thereafter, said defendants, their ALTERNATE
23 ENTITIES and each of them, were aware that members of the general public and other "exposed
24 persons," who would come in contact with their asbestos and asbestos-containing products, had
25 no knowledge or information indicating that asbestos or asbestos-containing products could
26 cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
27 members of the general public and other "exposed persons," who came in contact with asbestos
28 and asbestos-containing products, would assume, and in fact did assume, that exposure to

1   asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
2   hazardous to health and human life.

3        32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
4   of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
5   lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
6   market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
7   asbestos-containing products without attempting to protect "exposed persons" from, or warn
8   "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
9   asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn
10  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
11  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
12  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
13  and suppressed said knowledge from "exposed persons" and members of the general public, thus
14  impliedly representing to "exposed persons" and members of the general public that asbestos and
15  asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their
16  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
17  representations with the knowledge of the falsity of said implied representations.

18       33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,
19  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE
20  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
21  manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
22  sale, inspection, installation, contracting for installation, repair, marketing, warranting,
23  rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise
24  directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing
25  products.  In pursuance of said financial motivation, said defendants, their ALTERNATE
26  ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact
27  were consciously willing and intended to permit asbestos and asbestos-containing products to
28  ///

1  cause injury to "exposed persons" and induced persons to work with and be exposed thereto,
2  including Decedent.

3      34.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE
4  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
5  products, to be safe for their intended use, but that their asbestos and asbestos-containing
6  products, created an unreasonable risk of bodily harm to exposed persons.

7      35.    Plaintiff relied upon defendants', their ALTERNATE ENTITIES, and each of their
8  representations, lack of warnings, and implied warranties of fitness of asbestos and their
9  asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent
10  suffered permanent injury and death as alleged herein.

11     36.    As a direct and proximate result of the actions and conduct outlined herein,
12  Decedent have suffered the injuries and damages herein alleged.

13         WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities", and
14  each of them, as hereinafter set forth.

15                    THIRD CAUSE OF ACTION
                      (Negligence - Wrongful Death)
16

17         PLAINTIFF CHRISTOPHER MUSE, AS WRONGFUL DEATH HEIR, AND AS
18  SUCCESSOR-IN-INTEREST TO PATRICIA NEAL DECEASED, AND PLAINTIFF(S) AS
19  LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC
20  COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A
21  THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE
22  (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

23     37.    Plaintiff incorporates by reference each paragraph contained within the First
24  Cause of Action as though fully set forth herein.

25     38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth
26  above.

27     39.    The individuals set forth as heirs constitute all of the surviving heirs of the
28  Decedent.

K:\Injured\110180\FED\PLD\cmp fed (wd).wpd                11
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

40.     As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiff was unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41.     At all times prior to her death, Decedent was a parent to Plaintiff children.

42.     As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

43.     As a further direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, Plaintiff prays judgment against defendants, and each of them, as hereinafter set forth.

### FOURTH  CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF CHRISTOPHER MUSE, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO PATRICIA NEAL DECEASED, AND PLAINTIFF(S) AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

44.     Plaintiff incorporates herein by reference, as though fully set forth herein, each paragraph of the First, Second and Third Causes of Action herein.

45.     As a direct and proximate result of the conduct of defendants, and each of them, Decedent's heirs have sustained the injuries and damages previously alleged.

///

1    WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

2  each of them, as hereinafter set forth.

3                                        **IV.**

4                            **DAMAGES AND PRAYER**

5    WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

6  each of them in an amount to be proved at trial in each individual case, as follows:

7    (a)    For Plaintiff's general damages according to proof;

8    (b)    For Plaintiff's loss of income, wages and earning potential according to proof;

9    (c)    For Plaintiff's medical and related expenses according to proof;

10   (d)    For Plaintiff's cost of suit herein;

11   (e)    For exemplary or punitive damages according to proof;

12   (f)    For damages for fraud according to proof; and

13   (g)    For such other and further relief as the Court may deem just and proper, including

14  costs and prejudgment interest.

15  Dated: 5/9/11                          BRAYTON❖PURCELL LLP

16

17                                        By: _____

18                                        David R. Donadio
                                          Attorneys for Plaintiff

19

20

21                            **JURY DEMAND**

22   Plaintiff hereby demands trial by jury of all issues of this cause.

23

24  Dated: 5/9/11                          BRAYTON❖PURCELL LLP

25

26                                        By: _____

27                                        David R. Donadio
                                          Attorneys for Plaintiff

28

K:\Injured\110180\FED\PLD\cmp fed (wd).wpd                13

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

<u>Decedent</u>:  PATRICIA NEAL, Deceased.

<u>Decedent's injuries</u>:  Decedent was diagnosed with lung cancer on or about June 2008.

Decedent died on May 16, 2010.

<u>Retirement Status</u>:  Decedent stopped working in August 2008, due to her asbestos-related disease.

<u>Defendants:</u>  Plaintiff contends that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.   Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Northrop Grumman Guidance and Electronics Company, Inc., 1 Northrop Grumman Ave., El Segundo, CA | Ingalls Shipbuilding Pascagoula, MS | Pipefitter | 10/1975-12/1977 |
| Todd Pacific Shipyards Corporation, Seattle, WA | Todd Shipyard San Pedro, CA: onboard various ships, including but not limited to: | Pipefitter | 1978-1990 |
|  | DUNCAN (FFG-10) |  | 1978-1980 (off & on) |
|  | EXXON SAN FRANCISCO (1969) |  |  |
|  | EXXON VALDEZ (1986) |  |  |
|  | OGDEN PATRIOT (1976) |  |  |
|  | OKINAWA (LPH-3) |  |  |

K:\Injured\110180\FED\PLD\cmp fed (wd).wpd

15

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Todd Pacific Shipyards Corporation, Seattle, WA (cont'd.) | Todd Shipyard San Pedro, CA: onboard various ships, including but not limited to: | Pipefitter | 1978-1990 |
| | PACIFIC PRINCESS (1970) | | 1980's |
| | SAN BERNARDINO (LST-1189) | | |
| | VINCENNES (CG-49) | | 1980's |
| | WADSWORTH (FFG-9) | | |
| | WALWORTH COUNTY (LST-1164) | | |

PARA-OCCUPATIONAL EXPOSURE:

Decedent shared a household with her husband, Clifford Neal (deceased), from 1979 until 2002. Decedent and her husband commuted to work together while both were employed at Todd Shipyard. Decedent washed her own laundry and that of Clifford Neal. Decedent's husband's work history is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Todd Shipyard San Pedro, CA | Todd Shipyard San Pedro, CA: onboard various unknown ships | Welder | 1979-1989 |
| National Gypsum Co. Mobile, AL | National Gypsum Co. Mobile, AL | Laborer | 1954-1973 |