BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | § § | MDL DOCKET NO. 875 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERRY CARDARO AND JO ANN CARDARO<br><br>Plaintiffs,<br><br>v.<br><br>AEROJET GENERAL CORPORATION, et al.<br><br>Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO. 2:11-CV-00876 |

## RESPONSE IN OPPOSITION TO MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER (CTO-390)

MAY IT PLEASE THE COURT:

### I. Introduction

On May 17, 2005, plaintiffs, Terry and Jo Ann Cardaro (hereinafter collectively "Plaintiffs"), filed a Petition for Damages, styled as *"Terry Cardaro and Jo Ann Cardaro versus Aerojet General Corporation, et al"*, Docket No. 2005-6700, Division L, in the Civil District Court for the Parish of Orleans. *See* Petition for Damages, attached hereto as Exhibit A. Foster Wheeler Energy Corporation ("Foster Wheeler") was not named as a defendant in this action.

On March 16, 2011, the plaintiffs filed a Second Supplemental and Amended Petition and for the first time named Foster Wheeler as a defendant. *See* Second Supplemental and

Amended Petition, service of process confirmation and Citation to Foster Wheeler Energy Corporation, attached *in globo* as Exhibit B hereto.

Plaintiffs allege that Terry Cardaro contracted mesothelioma as a result of exposure to asbestos-containing products while serving in the United States Navy between 1969 and 1977, while employed by Louisiana Power & Light Company ("LP&L") between 1977 and 1982, and while employed by Equitable Equipment Company in 1969. *See* Petition for Damages, attached hereto as Exhibit A and First Supplemental and Amended Petition, attached hereto as Exhibit C. Plaintiffs further allege that the defendants are liable under the following theories: strict liability, negligence, strict products liability and breach of implied and express warranties. *See* Exhibit A, at ¶¶ 7, 10 – 18, and 21 – 29. In their Second Supplemental and Amended Petition, the plaintiffs added Foster Wheeler as a defendant, reiterating all of their allegations previously pled in the preceding petitions. *See* Exhibit B.

Terry Cardaro testified in a prior action that he was exposed to asbestos associated with Foster Wheeler boilers while stationed at Norfolk Naval Shipyard in Norfolk, VA where he worked on two submarine tenders, one of which was the U.S.S. L.Y. Spear. *See* Cardaro deposition at pp. 17, 21-24, 31-32, attached as Exhibit D hereto.

On or around Sept. 21, 1969, Terry Cardaro was stationed on the U.S.S L.Y. Spear, which was "permanently assigned" to Norfolk, Virginia, and remained stationed there until he was transferred to Groton, Connecticut in June, 1975. *See* Cardaro Military Records, attached as Exhibit E hereto. The U.S.S. L.Y. Spear was a "tender" ship for submarines, which means that it was used to repair submarines, mostly from its dock at Norfolk. *See* Exhibit D at pp. 21-24. Cardaro's repair duties required him to remove pipes and valves and bring them to repair shops

on shore. *See* Exhibit D at p. 22. Cardaro lived onshore while he was assigned to the U.S.S. L.Y. Spear. *See* Exhibit D at p. 32.

Plaintiffs' federal claim against Foster Wheeler is focused exclusively on two episodes of repair work on the boilers of the U.S.S. L.Y. Spear, which were allegedly manufactured by Foster Wheeler. *See* Exhibit D at p. 17. Cardaro testified that he worked on or around one of the two boilers on two occasions. On the first occasion, he worked on the Spear for approximately 20 hours when the boiler broke while the Spear was at sea. On the second occasion, he worked off and on for approximately one month while the Spear was being repaired at the Norfolk Naval Station by Cardaro and a land-based repair crew called "sand crabs." *See* Exhibit D at p. 56, 59.

Foster Wheeler furnished and fabricated marine propulsion boilers and auxiliary systems for the U.S. Navy in accordance with precise, detailed specifications provided by the U.S. Navy. The Navy exercised intense direction and control over all written documentation to be delivered with its Naval boilers, such as engineering drawings, test reports and other technical data that could be used as needed by shipboard engineering officers during the life of the equipment. Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to equipment supplied by Foster Wheeler to the Navy. Foster Wheeler would not have been permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy Vessel, beyond those required by the Navy. Foster Wheeler by Contract No. 3-47-107-8 furnished and fabricated two (2) "D" type Oil-Fired Marine Steam Generators in accordance with MIL-B 18381 for installation on the U.S.S. L.Y. Spear for an authorized agency of the United States Navy Department pursuant to Military Ship Specifications the plans for which

were subject to Naval review and approval and the construction of which required Navy inspector review and approval. *See*, generally, Affidavit of J. Thomas Schroppe, attached as Exhibit F hereto and Contract.

As more fully set forth below, this case should be transferred to the multi-district litigation *In Re: Asbestos Products Liability* pursuant to 28 U.S.C. § 1407 because it involves "common questions of fact" as other actions pending in *In Re: Asbestos Products Liability*, will provide "convenience for the parties and witnesses," and "will promote the just and efficient conduct of [this] action[s]."

## II. Plaintiffs' Motion to Vacate the Conditional Transfer Order Should Be Denied Because They Have Failed to Allege Any Reason Why This Matter Does Not Meet the Criteria for Transfer under 28 U.S.C. § 1407.

Plaintiffs' Brief in Support of Motion to Vacate Conditional Transfer Order (CTO-390) (hereinafter "Motion to Vacate") cites only one reason why this Court should grant its request to vacate the Conditional Transfer Order ("CTO") – the motion to remand plaintiffs intend to "soon" file in the EDLA.[1] Regardless, a pending motion to remand in the transferor court is not a basis to vacate the CTO.

The Judicial Panel on Multidistrict Litigation ("MDL Panel") has authority to determine whether a case is properly transferred pursuant to 28 U.S.C. § 1407, even if a plaintiff has filed a motion to remand in the transferor court. *See In Re Ivy*, 901 F.2d 7 (2nd Cir. 1990). Moreover, the value of transferring a case pursuant to 28 U.S.C. § 1407 should be assessed by evaluating the case in terms of "the purposes of the multidistrict statutory scheme, whether or not there is a pending jurisdictional objection." *See generally Id. See also In Re Koratron Patent Litigation*, 314 F. Supp. 60 (J.P.M.L. 1970) (finding that the issue with regards to a motion to vacate a

---

[1] At the time plaintiff filed the Motion to Vacate, plaintiffs had not filed a motion to remand in the EDLA, and on May 17, 2011, plaintiffs filed a motion to remand in EDLA. However, the filing of plaintiffs' motion to remand does not change the inadequacy of plaintiffs' Motion to Vacate.

conditional transfer order is not whether an "action should be stayed [pending resolution of an underlying issue] but whether it should be transferred").

A party's objection to jurisdiction in federal court should not "short-circuit[ed] the otherwise advisable transfer" of a case to a multidistrict litigation. *Medical Society of the State of New York v. Connecticut General Corp.*, 187 F. Supp.2d 89, (S. D. N.Y. 2001), *citing In Re Ivy*, 901 F.2d 7 (2nd Cir. 1990). Further, if a case is transferred pursuant to 28 U.S.C. § 1407 while there is a pending motion to remand, "the jurisdictional objections can be heard and resolved by a single court [the MDL court] and reviewed at the appellate level in due course." *In Re Ivy*, 901 F.2d at 9. *See also Connecticut General Corp.*, 189 F. Supp.2d at 92 (holding that because the MDL court had "previously addressed on numerous occasions" the specific jurisdictional issue in question, the MDL court was better suited to answer the jurisdictional objection).

Here, plaintiffs argue that this Court should vacate its CTO simply because plaintiffs may file a motion to remand at some later date. Plaintiffs cite no authority to suggest that this Court should vacate a CTO based upon a motion to remand and certainly no authority to suggest this Court should do so when plaintiffs had not yet filed the motion to remand at the time of a motion to vacate. As plaintiff's Motion to Vacate admits, the plaintiffs' cited authority simply holds that the transferor court has jurisdiction to decide a pending motion to remand "until further order of the MDL Panel." *Bartley v. Borden, Inc.*, 1996 WL 68482 (E. D. La. 1996). So, this authority only addresses the jurisdiction of the transferor court (here EDLA) to hear a pending motion to remand after a CTO has been entered. The authority cited by plaintiffs does not hold that the MDL Panel should vacate a CTO based solely upon a pending motion to remand, and it at least

implies that the MDL Panel does have authority to continue to evaluate transfer under the appropriate standard, rather than simply vacating a CTO.

Setting this aside, plaintiffs' argument entirely misses the issue with regards to the CTO. The issue is not whether plaintiffs are seeking to have the case remanded to state court; the issue is whether or not transfer to *In Re Asbestos Products Liability* is warranted under the statutory scheme found in 28 U.S.C. § 1407. If a case meets the criteria for transfer set forth in 28 U.S.C. § 1407, then the case should be transferred to the multidistrict litigation court, and the transferee court can decide any pending motion to remand. Moreover, as in *Connecticut General Corp.*, the multidistrict litigation court ("MDL Court") in *In Re Asbestos Products Liability* has decided objections to jurisdiction when the basis for jurisdiction is federal officer removal and government contractor defense, making the MDL Court experienced in ruling on this issue in these cases.

Plaintiffs fail entirely to address any of the factors that this Court evaluates when determining whether transfer pursuant to 28 U.S.C. § 1407 is warranted, and plaintiffs' argument regarding a motion to remand is not a sufficient basis to vacate the CTO. For this reason, plaintiffs' motion to vacate should be denied.

## II.     This Case Meets the Statutory Criteria for Transfer Pursuant to 28 U.S.C. § 1407.

This case involves Terry Cardaro's alleged exposure to asbestos while he worked on and around pipes and boilers, including work on a U.S. Navy ship. Questions of law and fact in common with other asbestos cases in *In Re Asbestos Products Liability* are at issue, and these other asbestos cases are pending in numerous different jurisdictions across the country. If transferred, the court in *In Re Asbestos Products Liability* will be able to rely upon its extensive

experience addressing the issues in question here, promoting a just and efficient resolution of this matter and a convenient forum for the parties and witnesses.

28 U.S.C. § 1407 provides the applicable criteria this Court should utilize to evaluate transfer of an action to an MDL Court. *See* 28 U.S.C. § 1407. As elaborated upon in *Ivy*, the MDL Panel must assess cases using the following criteria pursuant to Section 1407:

> [F]irst, they must involve one or more common questions of fact; second, they must be pending in more than one district, and third, pretrial consolidation must promote the 'just and efficient conduct' of such actions and be for 'the convenience of parties and witnesses.' It is expected that such transfer is to be ordered only where significant economy and efficiency in judicial administration may be obtained. The types of cases in which massive filings of multidistrict litigation are reasonably certain to occur include . . . products liability actions . . .

*In Re Ivy*, 901 F.2d at 9. When there are common questions of law or fact, **such as whether the case involves a federal question**, transfer to an MDL Court is advisable because otherwise "there would be a risk of having similarly situated parties face different outcomes on the exact same question." *Johnson v. Micron Technology, Inc.*, 354 F. Supp.2d 736, 740 (E. D. Mich. 2005) *(emphasis added)*. *See also Connecticut General Corp.*, 187 F. Supp.2d at 92 (finding that having a single court decide a "jurisdictional question which has arisen and presumably will continue to arise in cases around the nation" promotes "significant economies" and "will minimize the duplication of judicial resources and promote in those decisions uniformity and consistency"); *In Re Multidistrict Commodity Credit Corp. Litigation Involving Grain Shipments*, 332 F. Supp. 588 (J.P.M.L. 1971) (holding that because a case involves "complex and important questions of fact, common to this case and to many of the cases previously transferred" transfer will be "convenien[t] for the parties and witnesses and will promote just and efficient conduct"); *In Re Seroquel Products Liability Litigation*, 447 F. Supp.2d 1376 (J.P.M.L. 2006) (deciding that transfer of multiple cases to one MDL court was appropriate because

common questions of fact existed, which would also promote efficiency and "convenience of the parties and witnesses"); and *In Re Mosaid Technologies, Inc., Patent Litigation*, 283 F. Supp.2d 1359 (holding that common questions of fact existed between cases and transfer to an MDL court would promote efficiency and "convenience of the parties and witnesses").

Here, the jurisdictional question involves federal officer removal and the government contractor defense. Plaintiff alleges exposure to asbestos from Foster Wheeler boilers on a U.S. Navy ship moored at a federal enclave, a U.S. Navy shipyard. Foster Wheeler sold its boilers to the U.S. Navy for use on U.S. Navy ships pursuant to specific specifications and instructions from the U.S. government. Any jurisdictional objection raised by plaintiffs in a motion to remand will necessarily ask the court to decide whether the federal questions of federal officer removal and government contractor defense exist in this case.

Because of the federal questions of federal officer removal and government contractor defense, this is precisely the kind of case that should be transferred to the MDL Court. There are many other cases in *In Re Asbestos Products Liability* that also include the issues of federal officers and government contractors, including some where the alleged exposure occurred on a U.S. Navy Ship or shipyard or as a result of products or equipment provided to the U.S. government under U.S. government specifications. *See Faddish v. General Electric Co.*, 2010 WL 4146108 (E. D. Pa. 2010) (holding that summary judgment for General Electric was proper based upon the government contractor defense because GE supplied the equipment in question to the U.S. Navy under specific government specifications). The allegations in this case are factually similar to those cases, including *Faddish*, which is a Southern District of Florida case in *In Re Asbestos Products Liability*.

Similar to *Micron Technology*, the common questions of law and fact related to federal officer removal support transfer to the MDL Court for the sake of consistency because the MDL Court has decided this very issue in the past. *See Id.* If after transfer the MDL Court rules on the federal officer defense in this case, there will be a consistent and uniform application of the law, and as a result, all asbestos defendants will better understand their position in these lawsuits with regards to this defense.

Further, the MDL Court decides discovery issues common to asbestos litigation on a daily basis, so it is well-prepared to address any discovery issues that arise in this case. The discovery issues that do arise will be decided in a manner consistent with other asbestos cases. Transfer of this case to *In Re Asbestos Products Liability* will thus prevent duplication of judicial resources and promote the just and efficient conduct of the case.

Finally, Foster Wheeler is and has been a defendant in other In *Re Asbestos Products Liability* cases, as have other defendants in this case. The plaintiffs in this case are also similarly situated to other plaintiffs in *In Re Asbestos Products Liability* because of the nature of the allegations. If transferred, Foster Wheeler and the other defendants will avoid unnecessary duplicative discovery. Transfer of this case to the MDL Court would therefore promote the convenience of the parties and witnesses.

Accordingly, there are common questions of law and fact between this case and other asbestos cases, and transfer will promote the just and efficient conduct of the case and convenience of the parties and witnesses. As a result, this case should be transferred to the multidistrict litigation *In Re Asbestos Product Liability*.

### III. Conclusion

Plaintiffs' opposition to the transfer of this case to *In Re Asbestos Products Liability Litigation* fails to allege any reason why this case does not meet the criteria for transfer pursuant to 28 U.S.C. § 1407, and plaintiffs' argument regarding a motion to remand is not convincing. This case meets the criteria required for transfer, so plaintiff's Motion to Vacate should be denied. Transfer should be ordered in this case.

Dated: May 19, 2011

Respectfully submitted,

**FRILOT L.L.C.**

/s/ John J. Hainkel, III
JOHN J. HAINKEL, III - 18246
3700 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3700
T: (504) 599-8000; F: (504) 599-8100

**Attorneys for Defendant,
Foster Wheeler Energy Corporation**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record by electronic transmission and/or by depositing same in the United States Postal Service, properly addressed and postage prepaid, on this 19th day of May, 2011.

/s/ John J. Hainkel, III