FILED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2005- 6700          SECTION                      DIVISION " "

TERRY CARDARO and JO ANN CARDARO

VERSUS

AEROJET GENERAL CORPORATION(sued individually and as successor-in-interest to
JOHNSTON PUMP COMPANY), ET AL.

FILED: _____          _____
                                         DEPUTY CLERK

### PETITION FOR DAMAGES

COME NOW Petitioners by and through undersigned counsel, who respectfully represent as
follows:

1.  Petitioners Terry Cardaro and Jo Ann Cadaro are adult resident citizens and
domiciliaries of Saint Tammany Parish, State of Louisiana.

2.  Defendants, identified in Exhibit "A" annexed hereto, are either foreign corporations
licensed to do and doing business in the State of Louisiana or domestic corporations licensed to do
and doing business in the State of Louisiana that are liable unto Petitioners for the claims asserted
herein.

3.  Orleans Parish is a proper venue for this action pursuant to Louisiana Code of Civil
Procedure Article 73, because each of the defendants listed in Exhibit "A" contributed to Terry
Cardaro's exposure to asbestos and subsequent contraction of mesothelioma and therefore each is
solidarily liable to Petitioners with each of its co-defendants, and defendants Eagle, Inc, and Taylor-
Seidenbach are domiciled in Orleans Parish.

### BACKGROUND

4.  In connection with Terry Cardaro's work as a mechanic/welder at various facilities
owned and operated by Louisiana Power & Light Company (n/k/a Entergy Louisiana, Inc.) in or
about 1977 through 1982, and as a Welder Tacker for Equitable Equipment Company in 1969,
Petitioner suffered exposure to asbestos and asbestos-containing products designed, manufactured,
sold and/or supplied and/or maintained by the defendants.

1



5.     Before and during Petitioner's exposure period, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities listed in Paragraph 4, where Petitioners were exposed to asbestos fibers and asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

6.     When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

7.     Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to Petitioners, of the health hazards inherent in the asbestos-containing products they were selling and/or using.  Instead of warning Petitioner and the general public about these dangers, the defendants ignored or actively concealed such information, or condoned such concealment, in order to sell asbestos or asbestos-containing products and to avoid litigation by those who were injured from asbestos inhalation.  Those defendants who have engaged in intentional misconduct, fraud or concealment or conspiracy to defraud or conceal the dangers of asbestos-containing products are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence or strict liability, identifies other forms of specified misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

8.     As a direct and proximate result of having inhaled, ingested or otherwise been exposed to asbestos as described in Paragraph 4, Petitioner contracted lung cancer.

9.     Because of the latency period between exposure to asbestos and the onset of lung cancer, and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, Petitioner has only recently discovered his injuries and not more than one year preceding this filing of this Petition for Damages.

2

## STRICT LIABILITY OF ASBESTOS
## MINERS/MANUFACTURERS/SELLERS/SUPPLIERS/DISTRIBUTORS

10.    The Defendants were all miners, manufacturers, sellers, users, distributors and/or suppliers of asbestos products and were engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products, or representing themselves as manufacturers of asbestos products, or were professional vendors of asbestos or asbestos-containing products, which were expected to and did reach, including but not limited to, each of the facilities listed in Paragraph 4, from which Petitioner was exposed to them.

11.    The products mined, manufactured, sold, distributed, supplied and/or used by these defendants was defective, unreasonably dangerous, and unreasonably dangerous per se, to Petitioners who were intended and foreseeable users and bystanders who were exposed to these products. These defects include, without limitation, the following:

a)    mining, manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

b)    mining, manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the Petitioner who would be foreseeably exposed to them in his respective trade;

c)    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

d)    lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

e)    failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f)    failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

g)    failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

h)   failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i)   defects in the composition and construction of these products;

j)   failure to recall these products mined, manufactured, sold, distributed and/or supplied;

k)   failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

l)   overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants;

m)   are liable to Petitioner in strict liability for things in their garde, possession, custody or control, pursuant to article 2317 of the Louisiana Code of Civil Procedure that have caused harm to Petitioner; and

n)   other defects or fault as may be revealed in discovery or at trial.

12.   The defective conditions of defendants' products and fault, as noted above, are a proximate cause of Petitioner's injuries complained of herein.

13.   Petitioner further alleges that each and every one of the foregoing defendants was also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Petitioner's injuries.

## LIABILITY OF MANUFACTURERS AND DISTRIBUTORS

14.   All of the allegations contained in the previous paragraphs are realleged.

15.   During the above-described period of employment, Petitioner was regularly exposed to asbestos and asbestos-containing products designed, manufactured, fabricated, assembled, installed, supplied, sold, marketed, distributed, warranted and/or advertised by the Manufacturer defendants, AGCO Corporation, Aqua-Chem, Inc., Babcock Borsig Power, Inc., Beach-Russ Company, Beaird Industries, Inc., Dana Corporation, Eagle, Inc., Eaton Corporation, Furmanite America, Inc. Garlock, Inc., Garlock Sealing Technologies, Inc., Graham Manufacturing Co.,The McCarty Corporation, Reilly Benton Company, Riley Power, Inc., Sepco Corporation, Taylor-Seidenbach, Inc.,and Uniroyal Holding, Inc., (hereinafter the "Manufacturer Defendants") which were used by Petitioner Terry Cardaro during construction work.

4

16.    Petitioner was exposed to the products of this defendant either by actually handling, using, sawing, cutting, employing, utilizing, or manipulating these products or was in the vicinity in which these products were being used, handled, sawed, cut, employed, utilized or manipulated, thereby forcing the petitioner to inhale asbestos fibers from these asbestos- containing products as he performed his work duties.

17.    The Manufacturer Defendants are strictly liable.  The asbestos-containing products manufactured, distributed and/or sold by these defendants were unreasonably dangerous per se, defective in construction and/or composition, defective in design, and defective because of inadequate warnings.

18.    The Manufacturer Defendants were negligent and at fault, without limitation, of the following:

a)    The hazards associated with the products manufactured and/or distributed by the defendant outweigh the utility of the products;

b)    The products manufactured and/or distributed by the defendant were unreasonably dangerous in construction or composition at the time they left the control of these defendants;

c)    The defendant failed to adequately warn about the dangers relating to the use of their products;

d)    Alternative products were available to serve the same needs or desires, with less risk of harm;

e)    The defendant failed to design the product with less harmful consequences, which were usable at the time of the manufacture of the products;

f)    The defendant failed to disseminate knowledge of the hazards of its own products;

g)    The defendant was negligent and/or fraudulent for the reasons set forth in the Petition for Damages; and

h)    Any and all other acts of negligence which may be proven at the trial of this matter.

## ALLEGATIONS AGAINST NAVAL EQUIPMENT MANUFACTURERS

19.    All of the allegations contained in the previous paragraphs are realleged.

20.    Defendants Aerojet General Corporation, Alfa Laval, Inc., Badger Meter, Inc., Buffalo Pumps, Inc., Carver Pump Company, Cooper Industries, Crane Co., Durabla Manufacturing Company, Elliott Company., Enpro Industries, Inc., Fiatallis North America, Flowserve Corporation, FMC Corporation, Gardner Denver, Inc., General Electric Company, General Motors Corporation, The Goodyear Tire And Rubber Company, The Gorman-Rupp Company, Goulds Pumps, Incorporated, Hardie-Tynes, Inc., Henry Technololgies, Inc., Henry Vogt Machine Co., IMO

Industries, Inc., Joy Global, Inc., Leslie Controls, Inc., Metallo Gasket Company, Inc., The Nash Engineering Company, Pentair Pump Group, Smithco Engineering, Inc., Tuthill Corporation, Tyco International, Inc., Viacom, Inc., Viad Corp, Viking Pump, Inc. Warren Pumps, Inc., Yarway Corporation, Yuba Heat Transfer Company, and Zurn Industries, Inc., are hereinafter referred to as the Naval Equipment Manufacturers. The Naval Equipment Manufacturers are sued only for their failure to warn of the hazards of asbestos exposure, and are not being sued on any other theory. This failure to warn renders the Naval Equipment Manufacturers liable in both in negligence, and in strict products liability for a marketing defect. Any and all theories alleged against any and all Defendants other than the above-named Naval Equipment Manufacturers are expressly not alleged against the Naval Equipment Manufacturers.

21.   In particular, the Naval Equipment Manufacturers were negligent in one or both of the following ways, these being proximate causes of Petitioner's illnesses and disabilities:

a)   in failing to timely and adequately warn Petitioner of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

b)   in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

22.   Petitioners would also show that the Naval Equipment Manufacturers' asbestos-containing products and/or machinery requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products. Petitioners would show that this marketing defect rendered such products and/or machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Naval Equipment Manufacturers. Petitioners would show that Defendants are liable in strict product liability for this marketing defect.

23.   The Naval Equipment Manufacturers are or were engaged in the business of selling, manufacturing, producing, designing and/or otherwise putting into the stream of commerce asbestos-

containing products and/or machinery requiring or calling for asbestos or asbestos-containing products, and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed and/or otherwise put into the stream of commerce were a proximate and/or producing cause of the injuries of Petitioner.

24.    The Naval Equipment Manufacturers knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

25.    Petitioner was unaware of the hazards and defects in the asbestos-containing products of the Naval Equipment Manufacturers, which made them unsafe for purposes of manipulation and/or installation. Similarly, Petitioner was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

26.    During the periods that Petitioner was exposed to the asbestos-containing products and/or machinery of the Naval Equipment Manufacturers, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by the Naval Equipment Manufacturers.

27.    Further, these defendants expressly and impliedly warranted to users and/or consumers such as Petitioner that their products were reasonably fit for their intended use without endangering human life, and that their products were of merchantable quality.

28.    These Defendants breached the expressed and implied warranty in that their product was defective, which defects in their product permitted and/or caused the injuries to Petitioner using and/or being exposed to their products in a manner that was reasonably foreseeable.

29.    As a direct and proximate result of the described breaches of warranty by defendants, each of them, Petitioner sustained injuries.

30.    As a direct and proximate result of the above described acts of defendants, each of them, Petitioner sustained injuries. Petitioner, Terry Cardaro was diagnosed with mesothelioma in July 2004.

31.    These defendants are individually, jointly, and in solido liable to the Petitioner because the asbestos-containing products designed, manufactured, assembled, fabricated, supplied,

sold, marketed, warranted, advertised and/or distributed by defendants were defective and unreasonably dangerous per se, and were the producing cause of injury to the petitioner. Additionally, the dust masks designed, manufactured, assembled, fabricated, supplied, sold, marketed, warranted, advertised and/or distributed by Minnesota Mining and Manufacturing Company were defective in design, composition, and/or defective because of a failure to warn, and were the producing cause of injury to Petitioner.

32.    These defendants are also liable, individually, jointly and severally, and in solido, to Petitioner for and are guilty of the following:

a)    Manufacturing a productive defective in design;

b)    Failing to properly test their products;

c)    Failing to properly warn against the dangers inherent in the use of their products;

d)    Failing to provide proper instructions in the use of its product;

e)    Failing to furnish proper wearing apparel, masks, respirators, or other devices that might reduce the dangers of the use of their products;

f)    Failing to instruct or warn of the proper safety devices so as to reduce the dangers of their products; and,

g)    Any and other acts of negligence to be shown at the trial of this matter.

### ALLEGATIONS AGAINST METROPOLITAN LIFE

33.    All of the allegations contained in the previous paragraphs are realleged herein.

34.    Defendant **METROPOLITAN LIFE INSURANCE COMPANY** rendered substantial aid and assistance to the manufacturers of asbestos containing products to which Petitioner was exposed, and such assistance by Metropolitan Life aided and abetted the negligence and the marketing of unreasonably dangerous asbestos containing products by such manufacturers which proximately caused Petitioner's illness and disability.

35.    Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to the Petitioner by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation, the duty:

(1)    to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

(2)    to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

8

In undertaking these duties, METROPOLITAN LIFE knew or should have known that it was providing testing services for the ultimate protection of third persons, including the Petitioner.

36.     In both conducting said tests and in publishing their alleged results, METROPOLITAN LIFE failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

37.     The Petitioner unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

38.     As a direct and proximate contributing result of METROPOLITAN LIFE's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to the Petitioner from asbestos exposure was increased, and (ii) the Petitioner suffered the injuries described below.

39.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, METROPOLITAN LIFE acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Petitioner.

### ENTERGY LOUISIANA, INC.
### (formerly LOUISIANA POWER & LIGHT COMPANY

40.    Defendant, Entergy Louisiana, Inc. (formerly Louisiana Power & Light Company) (hereinafter "Entergy"), is a Louisiana corporation licensed to do and doing business in the Parish of Jefferson, State of Louisiana.

41.    Entergy deliberately failed to enlighten, educate, and share its knowledge with those on its premises, or make its premises safe for those working thereon, including Terry Cardaro, regarding the dangers of asbestos and exposure to asbestos containing products. Although Terry Cardaro went to work, he was unaware of the true danger of his exposure to asbestos and asbestos containing products. Thus, although he voluntarily went to work, he did not voluntarily subject himself to the dangers and ill health problems associated with exposure to asbestos and asbestos containing products, including asbestos related malignancies, such as mesothelioma.

42.    Entergy, was aware or should have been aware of the dangerous condition presented by exposure to asbestos and that Mr. Terry Cardaro would suffer from an asbestos related disease and other ill health effects as a result of this exposure, but they failed and/or willfully withheld from Mr. Terry Cardaro knowledge of the dangers to his health from exposure to asbestos fibers.

43.    Entergy, had the responsibility of providing Terry Cardaro with a safe place to work and proper safety equipment with which to conduct his work, however, they negligently failed to carry out these duties and failed to protect Terry Cardaro from the dangers of toxic fiber and dust exposure.

44.    In addition to the foregoing acts of negligence, Entergy, was and are guilty of the following acts:

    a)    Failing to reveal to, and knowingly concealing critical medical information Terry Cardaro;

    b)    Failing to reveal information regarding the inherent dangers involved in the use of asbestos;

    c)    Failing to provide necessary protection to Terry Cardaro;

    d)    Failing to train properly Entergy employees regarding health hazards associated with exposure to asbestos and the necessary safety measures applicable to handling asbestos;

    e)    Failing to provide clean, respirable air and proper ventilation;

    f)    Other acts which may be revealed at the trial of this matter.

10

## STRICT LIABILITY AND NEGLIGENCE
## OF DEFENDANT ENTERGY LOUISIANA, INC.

45.     Petitioner further alleges strict premise liability of defendant Entergy Louisiana, Inc. (f/k/a Louisiana Power & Light Company) (hereinafter "Entergy") in failing to provide Petitioner a safe place in which to work free from the hazards of asbestos, which failure was a direct and proximate cause of Petitioner's exposure to asbestos as described in Paragraph 4.

46.     The premises in which Petitioner's exposure to asbestos occurred or originated, as set forth in Paragraph 4, was owned by and in the custody of defendant Entergy and was unreasonably dangerous due to the presence and use of asbestos and asbestos-containing products with little or no precautions taken to minimize the risk of exposure and absolutely no warning of that risk.  This unreasonably dangerous condition was a direct and proximate cause of Petitioner's injuries set forth herein.

47.     Entergy negligently, recklessly, willfully and/or because of gross and wanton negligence, fault, or strict liability, failed to properly discharge their duties to Petitioner in the following particulars:

a)      failure to provide Petitioner with a safe place to work;

b)      failure to provide Petitioner with adequate engineering or industrial hygiene measures to control the level of exposure to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air, medical monitoring, air monitoring, and

c)      failure to inform or warn Petitioner of the hazards of asbestos exposure.

These specific acts of fault were a substantial contributing factor of Petitioner's injuries.

48.     During the course of Petitioner's work at the Entergy facilities, the asbestos or asbestos-containing products to which contributed to Petitioner's exposure were all within the care, custody, and control of Entergy.  Entergy is therefore strictly liable for Petitioner's injuries pursuant to Louisiana Civil Code Articles 660, *et seq.*, 2315, and 2317.

## INTENTIONAL ACTS AND FRAUD OF
## ENTERGY LOUISIANA, INC.

49.     During the course of Petitioner's employment at Entergy, Entergy and its predecessors in interest knew that it was substantially certain to follow from its actions and inactions,

outlined above, that Petitioner would be exposed to injurious levels of asbestos, and thereby acted intentionally under Louisiana law in exposing Petitioner to asbestos and causing him to contract lung cancer.

50.     At all times throughout Petitioner's exposure to asbestos present and used within Entergy, Entergy and its predecessors in interest knew that asbestos posed substantial health risks to those exposed to it, knew that there were specific engineering and industrial hygiene procedures which should have been employed to reduce exposures, knew that those exposed to asbestos on the job could bring home asbestos on their clothes and thereby injuriously expose those in the household, yet Entergy and its predecessors in interest consciously and intentionally chose not to inform Petitioner of this information or implement any meaningful safety precautions, all of which was a substantial contributing cause of Petitioner's injuries.

51.     As Petitioner's employer, Entergy and its predecessors in interest had a duty to fully and properly disclose to Petitioner the dangers associated with asbestos, yet failed to discharge that duty by misrepresenting or suppressing the truth, through its silence and inaction, about asbestos with the intention to obtain an unjust advantage for itself and to cause loss to Petitioner.  Due to this fraud of Entergy and its predecessors in interest, Petitioner agreed to and went to work for the agreed upon wages under the misconception that he was not being exposed to a highly toxic substance while there.

52.     The foregoing fraud and misrepresentation was a substantial contributing cause of Petitioner's damages.

### EQUITABLE EQUIPMENT COMPANY.
### (formerly EQUITABLE SHIPYARDS, LLC.)

53.     Defendant, Equitable Equipment Company (formerly Equitable Shipyards, LLC) (hereinafter "Equitable"), is a Louisiana corporation licensed to do and doing business in the State of Louisiana.

54.     Defendant, Employers Insurance Company of Wausau (hereinafter "Employers"), is an insurance company authorized to do and/or doing business in the Parish of Orleans, State of Louisiana, and subject to the jurisdiction of this Honorable Court, which, on information and belief, at all times pertinent herein was the liability insurer of Defendant Equitable Shipyards, LLC, and as such, is directly sued herein pursuant to the provisions of Title 22, Section 655 of the Louisiana Revised Statutes.

12

55.     Defendant, Travelers Casualty and Surety Company (hereinafter "Travelers"), is an insurance company authorized to do and/or doing business in the Parish of Orleans, State of Louisiana, and subject to the jurisdiction of this Honorable Court, which, on information and belief, at all times pertinent herein was the liability insurer of Defendant Equitable Shipyards, LLC, and as such, is directly sued herein pursuant to the provisions of Title 22, Section 655 of the Louisiana Revised Statutes.

56.     Defendant, **EMPLOYERS INSURANCE COMPANY OF WAUSAU**, on information and belief, had in full force and effect a policy or policies of liability insurance insuring Defendant Equitable Shipyards, LLC against the causes of action asserted herein and covering the premises, matters, persons, things, actions, inactions, and damages that are the subject of this petition, and, as such, defendant **EMPLOYERS INSURANCE COMPANY OF WAUSAU**, is directly liable to petitioner under the provisions of the Louisiana Revised Statutes, Title 22, Section 655.

57.     Defendant, **TRAVELERS CASUALTY AND SURETY COMPANY**, on information and belief, had in full force and effect a policy or policies of liability insurance insuring Defendant Equitable Shipyards, LLC against the causes of action asserted herein and covering the premises, matters, persons, things, actions, inactions, and damages that are the subject of this petition, and, as such, defendant **TRAVELERS CASUALTY AND SURETY COMPANY**, is directly liable to petitioner under the provisions of the Louisiana Revised Statutes, Title 22, Section 655.

## STRICT LIABILITY AND NEGLIGENCE
## OF DEFENDANT EQUITABLE EQUIPMENT COMPANY.

58.     Petitioner further alleges strict premises liability of Equitable in failing to provide Petitioner a safe place in which to work free from the hazards of asbestos, which failure was a direct and proximate cause of Petitioner's exposure to asbestos as described in Paragraph 4.

59.     The premises in which Petitioner's exposure to asbestos occurred or originated, as set forth in Paragraph 4, was owned by and in the custody of defendant Entergy and was unreasonably dangerous due to the presence and use of asbestos and asbestos-containing products with little or no precautions taken to minimize the risk of exposure and absolutely no warning of that risk. This unreasonably dangerous condition was a direct and proximate cause of Petitioner's injuries set forth herein.

60.     Equitable negligently, recklessly, willfully and/or because of gross and wanton negligence, fault, or strict liability, failed to properly discharge their duties to Petitioner in the following particulars:

    a)     failure to provide Petitioner with a safe place to work;

    b)     failure to provide Petitioner with adequate engineering or industrial hygiene measures to control the level of exposure to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air, medical monitoring, air monitoring, and

    c)     failure to inform or warn Petitioner of the hazards of asbestos exposure.

These specific acts of fault were a substantial contributing factor of Petitioner's injuries.

61.     During the course of Petitioner's work at the Equitable facilities, the asbestos or asbestos-containing products to which contributed to Petitioner's exposure were all within the care, custody, and control of Equitable. Equitable is therefore strictly liable for Petitioner's injuries pursuant to Louisiana Civil Code Articles 660, *et seq.*, 2315, and 2317.

### INTENTIONAL ACTS AND FRAUD OF EQUITABLE EQUIPMENT COMPANY.

62.     During the course of Petitioner's employment at Equitable, Equitable and its predecessors in interest knew that it was substantially certain to follow from its actions and inactions, outlined above, that Petitioner would be exposed to injurious levels of asbestos, and thereby acted intentionally under Louisiana law in exposing Petitioner to asbestos and causing him to contract lung cancer.

63.     At all times throughout Petitioner's exposure to asbestos present and used within Equitable, Equitable and its predecessors in interest knew that asbestos posed substantial health risks to those exposed to it, knew that there were specific engineering and industrial hygiene procedures which should have been employed to reduce exposures, knew that those exposed to asbestos on the job could bring home asbestos on their clothes and thereby injuriously expose those in the household, yet Equitable and its predecessors in interest consciously and intentionally chose not to inform Petitioner of this information or implement any meaningful safety precautions, all of which was a substantial contributing cause of Petitioner's injuries.

64.     As Petitioner's employer, Equitable and its predecessors in interest had a duty to fully and properly disclose to Petitioner the dangers associated with asbestos, yet failed to discharge that

duty by misrepresenting or suppressing the truth, through its silence and inaction, about asbestos with the intention to obtain an unjust advantage for itself and to cause loss to Petitioner. Due to this fraud of Equitable and its predecessors in interest, Petitioner agreed to and went to work for the agreed upon wages under the misconception that he was not being exposed to a highly toxic substance while there.

65.     The foregoing fraud and misrepresentation was a substantial contributing cause of Petitioner's damages.

WHEREFORE, on the basis of all of the foregoing premises set out in paragraphs 1 through 65, Petitioner requests that defendants be served with this Petition and that there be judgment against these defendants jointly, severally and in solido in a sum sufficient to compensate Petitioners for the following:

a)     all past, present and future medical costs or expenses related thereto;

b)     all past, present and future lost earnings;

c)     all past, present and future mental suffering, anguish, and pain;

d)     all past, present and future physical pain and suffering;

e)     loss of consortium, love, affection, services and society;

f)     loss of quality of life;

g)     reasonable attorneys fees; and

h)     all other forms of relief provided by law or equity together with interest from the date of judicial demand until paid, and costs of these proceedings.

WHEREFORE Petitioner prays that after due proceedings had, there be judgment herein in favor of Petitioner and against the defendants as prayed for.

Respectfully submitted,

LANDRY & SWARR, LLC

MICKEY P. LANDRY, Bar No. 22817
FRANK J. SWARR, Bar No. 23322
DAVID R. CANNELLA, Bar No. 26231
1010 Common Street, Suite 2050
New Orleans, Louisiana 70112
Telephone:  (504) 299-1214
Facsimile:   (504) 299-1215

WATERS & KRAUS, LLP
BRYAN C. MISSHORE, Bar No. 17328
3219 McKinney Avenue
Dallas, TX 75204
Telephone (214) 357-6244
Facsimile (214) 357-7252

*PLEASE SERVE ALL CORRESPONDANCE AND PLEADINGS ON WATERS & KRAUS, LLP*

16

EXHIBIT "A"

PLEASE SERVE THE FOLLOWING DEFENDANTS WITH PLAINTIFFS' ORIGINAL
PETITION FOR DAMAGES, AND MOTION FOR ISSUANCE OF SCHEDULING ORDER
AND TRIAL DATE:

1.   **AEROJET GENERAL CORPORATION** *(sued individually and as successor-in-interest to JOHNSTON PUMP COMPANY)*
An Ohio corporation authorized to do and doing business in Louisiana, with its principal place of business in California, and may be served pursuant to the Louisiana Long Arm Statute to wit: P. O. Box 13222, Sacramento, CA 95813-6000

2.   **AGCO CORPORATION** *(sued individually and as successor in interest to ALLIS-CHALMERS CORPORATION)*
A corporation duly organized, created and existing under the laws of the state of New Jersey, with its principal place of business in the state of Virginia, and with an agent for service in the State of Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809

3.   **ALFA LAVAL, INC.,** *(sued individually and as successor-in-interest to SHARPLES, INC., ALFA LAVAL SEPARATION, INC. and DE LAVAL SEPARATOR COMPANY)*
A corporation duly organized, created and existing under the laws of the state of New Jersey, with its principal place of business in the state of Virginia, and with an agent for service in the State of Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809

4.   **AQUA-CHEM, INC.,** *(d/b/a CLEAVER-BROOKS COMPANY)*
A Delaware corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Wisconsin, and may be served pursuant to the Louisiana Long Arm Statute to wit:  11950 W. Lake Park Drive, Milwaukee, WI 53224-3019

5.   **BABCOCK BORSIG POWER, INC.,** *(f/k/a D.B. Riley, Inc., f/k/a RILEY STOKER CORPORATION)*
A Massachusetts corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Pennsylvania and may be served pursuant to the Louisiana Long Arm Statute to wit: 5 Neponset Street. Worcester, PA 1606-7140

6.   **BADGER METER, INC.**
A corporation duly organized, created and existing under the laws of the state of Wisconsin, with its principal place of business in the state of Wisconsin, and with an agent for service in the State of Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809

7.   **BEACH-RUSS COMPANY**
A New York corporation authorized to do and doing business in Louisiana, with its principal place of business in the State of New York, and may be served pursuant to the Louisiana Long Arm Statute to wit:  544 Union Avenue, Brooklyn, NY 11211

8.   **BEAIRD INDUSTRIES, INC.** *(sued individually and as successor in interest to MAXIM SILENCER PRODUCTS)*
A corporation duly organized, created and existing under the laws of the state of Delaware, and with its principal place of business in Shreveport, Louisiana, and with an an agent for service in the State of Louisiana, to-wit: C. T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809

9.   **BUFFALO PUMPS, INC.** *(sued individually and as successor-in-interest to BUFFALO FORGE COMPANY)*
A Delaware corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of New York, and may be served pursuant to the Louisiana Long Arm Statute to wit: **874 Oliver Street, North Tonawanda, NY 14120-3298**

10.  **CARVER PUMP COMPANY**
A Delaware corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Iowa, and may be served pursuant to the Louisiana Long Arm Statute to wit: **2415 Park Avenue, Muscatine, Iowa 52761**

11.  **COOPER INDUSTRIES, LLC** *(sued individually and as successor-in-interest to GARDNER-DENVER, INC.)*
An Ohio corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Texas, and may be served pursuant to the Louisiana Long Arm Statute to wit: **600 Travis, Suite 5800, Houston, TX 77002.**

12.  **CRANE CO.**
A corporation duly organized, created and existing under the laws of the state of Delaware, with its principal place of business in the state of Connecticut, and with an agent for service in the State of Louisiana, to-wit: **C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809**

13.  **DANA CORPORATION**
A Virginia corporation authorized to do and doing business in Louisiana,, with its principal place of business in the state of Ohio, and may be served pursuant to the Louisiana Long Arm Statute to wit:  **4500 Dorr Street, Toledo, OH 43615**

14.  **DURABLA MANUFACTURING**
An Ohio corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Texas, and may be served pursuant to the Louisiana Long Arm Statute to wit: **Steven L. Storm, 4530 E. 51st Street, Odessa, TX 79762.**

15.  **EAGLE, INC.,** *(f/k/a Eagle Asbestos & Packing Co., Inc.)*
A corporation duly organized, crated and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in New Orleans, Louisiana, and with an agent for service in the State of Louisiana, to wit:  **Lawrence G. Pugh III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP, 3200 Energy Centre, 1100 Poydras Street, New Orleans, LA  70163-3200.**

16.  **EATON CORPORATION** *(sued individually and as successor-in-interest to WATERBURY TOOL CO.)*
A corporation duly organized, created and existing under the laws of the state of Ohio, with its principal place of business in Ohio, and with an agent for service in the State of Louisiana, to-wit: **C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809**

17.  **ELLIOTT COMPANY** *(a/k/a ELLIOTT TURBOMACHINERY COMPANY)*
A corporation duly organized, created and existing under the laws of the state of Delaware, with its principal place of business in Pennsylvania, and with an agent for service in the State of Louisiana, to-wit: **C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809**

18.  **ENPRO INDUSTRIES** *(sued individually and as successor-in-interest to FAIRBANKS MORSE ENGINE)*
A Pennsylvania corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of North Carolina, and may be served pursuant to the Louisiana Long Arm Statute to wit: **5605 Carnegie Blvd, Suite 500, Charlotte, NC  28209**

19.  **EMPLOYERS INSURANCE COMPANY OF WAUSAU**

as the insurer of Equitable Shipyards, LLC via the Direct Action Statute through:
Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, Louisiana 70809

20:   **TRAVELERS CASUALTY AND SURETY COMPANY**
as the insurer of Equitable Shipyards, LLC via the Direct Action Statute through:
Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, Louisiana 70809

21.   **ENTERGY LOUISIANA, INC.** *(f/k/a Louisiana Power & Light Company)*
A corporation duly organized, created and existing under and by virtue of the laws of the
state of Louisiana, with its principal place of business in Jefferson, Louisiana, and with an
agent for service in the State of Louisiana, to wit:  Renee W. Masinter, 639 Loyola
Avenue, New Orleans, LA  70113.

22.   **FIATALLIS NORTH AMERICA** *(sued individually and as successor-in-interest to
BUDA CORPORATION and ALLIS-CHALMERS CORPORATION)*
A Delaware corporation authorized to do and doing business in Louisiana with its
principal place of business in the state of Wisconsin, and may be served pursuant to the
Louisiana Long Arm Statute to wit: 700 State Street, Racine, WI  53404

23.   **FLOWSERVE CORPORATION** *(sued individually and as successor-in-interest to
PACIFIC PUMPS AND DURCO PUMPS)*
A Delaware corporation authorized to do and doing business in Louisiana, with its
principal place of business in the state of Texas, and may be served pursuant to the
Louisiana Long Arm Statute to wit: 222 Las Colinas Blvd , Suite 1500, Irving, TX
75039

24.   **FMC CORPORATION** *(sued individually and as successor-in-interest to NORTHERN
PUMP COMPANY)*
A corporation duly organized, created and existing under the laws of the state of
Delaware, with its principal place of business in the state of Pennsylvania, and with an
agent for service in the State of Louisiana, to-wit: C.T. Corporation System, 8550
United Plaza Blvd., Baton Rouge, LA 70809

25.   **FURMANITE AMERICA, INC.**
A corporation duly organized, created and existing under the laws of the state of Virginia,
with its principal place of business in the state of Texas, and with an agent for service in
the State of Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza Blvd.,
Baton Rouge, LA 70809

26.   **GARDNER DENVER, INC.**
A Delaware corporation authorized to do and doing business in Louisiana, with its
principal place of business in the state of Illinois, and may be served pursuant to the
Louisiana Long Arm Statute to wit: 1800 Gardner Expressway, Quincy, IL 62301

27.   **GARLOCK SEALING TECHNOLOGIES, LLC** *(sued individually and as successor-
in interest to GARLOCK, INC.)*
A corporation duly organized and existing under the laws of the state of Delaware, with
its principal place of business in the state of New York, and with an agent for service in
the State of Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza Blvd.,
Baton Rouge, LA 70809

28.   **GENERAL ELECTRIC COMPANY**
A corporation duly organized, created and existing under the laws of the state of New
York, with its principal place of business in the state of New York, and with an agent for
service in the State of Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza
Blvd., Baton Rouge, LA 70809

29.   **GENERAL MOTORS CORPORATION**
A corporation duly organized, created and existing under the laws of the state of
Delaware, with its principal place of business in Michigan, and with an agent for service
in the State of Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza Blvd.,
Baton Rouge, LA 70809

30.   **THE GOODYEAR TIRE & RUBBER COMPANY** *(sued individually and as
successor-in-interest to Durabla Manufacturing Co)*
A corporation duly organized, created and existing under the laws of the state of Ohio,
with its principal place of business in Ohio, and with an agent for service in the State of
Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge,
LA 70809

31.   **GORMAN-RUPP COMPANY** *(sued individually and as successor-in-interest to
PATTERSON PUMP COMPANY and C.H. WHEELER)*
A Delaware corporation authorized to do and doing business in Louisiana, with its
principal place of business in the state of Wisconsin, and may be served pursuant to the
Louisiana Long Arm Statute to wit: 305 Bowman Street, Mansfield, OH 44903

32.   **GOULDS PUMP, INCORPORATED**
A corporation duly organized, created and existing under the laws of the state of
Delaware, with its principal place of business in the state of New York, and with an agent
for service in the State of Louisiana, to-wit: C.T. Corporation System, 8550 United
Plaza Blvd., Baton Rouge, LA 70809

33.   **GRAHAM MANUFACTURING CORPORATION**
A Delaware corporation authorized to do and doing business in Louisiana, with its
principal place of business in the state of New York, and may be served pursuant to the
Louisiana Long Arm Statute to wit: 20 Florence Avenue

34.   **HARDIE-TYNES, INC.** *(sued individually and as successor-in-interest to HARDIE-
TYNES MANUFACTURING COMPANY)*
A corporation duly organized, created and existing under the laws of the state of
Alabama, with its principal place of business in the state of Alabama, and with an agent
for service in the State of Louisiana, to-wit: R.C. Overall, Jr., 5842 Perkins Road,
Baton Rouge, LA 70808

35.   **HENRY TECHNOLOGIES, INC.** *(f/k/a HENRY VALVE CO.)*
An Illinois corporation authorized to do and doing business in Louisiana, with its
principal place of business in the state of Illinois, and may be served pursuant to the
Louisiana Long Arm Statute to wit: 1060 Lake Avenue, Woodstock, IL 60098

36.   **HENRY VOGT MACHINE CO.**
A Kentucky corporation authorized to do and doing business in Louisiana, with its
principal place of business in the state of Kentucky, and may be served pursuant to the
Louisiana Long Arm Statute to wit: 1000 W. Ormsby Avenue, Louisville, KY 40210-
1885

37.   **IMO INDUSTIRES, INC.**
A corporation duly organized, created and existing under the laws of the state of Delaware, with its principal place of business in New Jersey, and with an agent for service in the State of Louisiana, to-wit: Corporation Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129

38.   **JOY GLOBAL, INC.** *(f/k/a ECOLAIRE HEAT TRANSFER and as successor-in-interest to GRISCOM-RUSSELL*
A Delaware corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Wisconsin, and may be served pursuant to the **Louisiana Long Arm Statute** to wit:  100 E. Wisconsin Avenue, Suite 2780, Milwaukee, WI  53202

39.   **LESLIE CONTROLS, INC.**
A New Jersey corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Florida, and may be served pursuant to the **Louisiana Long Arm Statute** to wit: 12501 Telecom Drive. Tampa, FL  33637

40.   **THE MCCARTY CORPORATION** *(f/k/a MCCARTY BRANTON, INC.)*
A corporation duly organized, crated and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in Baton Rouge, Louisiana, and with an agent for service in the State of Louisiana, to wit:  Paul H. Spaht, 445 North **Blvd, Suite 300, Baton Rouge, Louisiana  70802**

41.   **METALLO GASKET COMPANY, INC.** *(sued individually and as successor-in-interest to GOETZE GASKET & PACKAGING)*
A New Jersey corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of New Jersey, and may be served pursuant to **the Louisiana Long Arm Statute** to wit: 16 Bethany Street, New Brunswick,  NJ 08903

42.   **METROPOLITAN LIFE INSURANCE COMPANY,**
A corporation organized, created and existing under and by virtue of the laws of the State of New York with its principal place of business in New York, New York, and which, at all material times relevant hereto, was licensed to do and doing business in the State of Louisiana, and who can be served through the Secretary of State, 3851 Essen Lane, Baton Rouge, LA 70809

43.   **THE NASH ENGINEERING COMPANY**
A Connecticut corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Connecticut, and may be served pursuant to **the Louisiana Long Arm Statute** to wit: 9 Trefoil Drive, Trumbull, CT  06611

44.   **PENTAIR PUMP  GROUP** *(individually and as successor-in-interest to AURORA PUMP)*
A Minnesota corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Minnesota, and **may be served pursuant to the Louisiana Long Arm Statute** to wit: 5500 Wayzata Boulevard, Suite 800, Golden Valley, MN 55416-1259

45.   **REILLY BENTON COMPANY**
A corporation duly organized, crated and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in Jefferson, Louisiana, and with an agent for service in the State of Louisiana, to wit:  Bernard, Cassisa, Elliott & Davis, **1615 Metairie Road, Metairie, Louisiana  70005**

46.   **RILEY POWER, INC.,** *(F/K/A RILEY STOKER COPORATION)*
A corporation duly organized, created and existing under the laws of the state of Massachusetts, and with an agent for service in the State of Louisiana, to-wit: **C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809**

47.  SEPCO CORPORATION, a Pennsylvania corporation
     A Pennsylvania corporation authorized to do and doing business in Louisiana, with its
     principal place of business in the state of Pennsylvania, and may be served pursuant to
     the Louisiana Long Arm Statute to wit: 750 E. Swedesford Road, Valley Forge, PA
     19482

48.  SMITHCO ENGINEERING, INC., *(sued individually and as successor-in-interest to
     ALCO)*
     An Oklahoma corporation authorized to do and doing business in Louisiana, with its
     principal place of business in the state of Oklahoma, and may be served pursuant to the
     Louisiana Long Arm Statute to wit: 6312 South. 39th West Ave, Tulsa, OK 74132

49.  TAYLOR-SEIDENBACH, INC.
     A corporation duly organized, crated and existing under and by virtue of the laws of the
     state of Louisiana, with its principal place of business in New Orleans, Louisiana, and
     with an agent for service in the State of Louisiana, to wit: Ralph I. Shepard, 731 South
     Scott Street, New Orleans, Louisiana 70119

50.  TUTHILL CORPORATION, *(sued individually and as successor-in-interest to
     KINNEY VACUUM COMPANY)*
     A corporation duly organized, created and existing under the laws of the state of
     Delaware, and with an agent for service in the State of Louisiana, to-wit: C.T.
     Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809

51.  TYCO INTERNATIONAL, INC., *(sued individually and as successor-in-interest to
     YARWAY CORPORATION)*
     A Massachusetts corporation authorized to do and doing business in Louisiana, with its
     principal place of business in the state of New Hampshire, and may be served pursuant
     to the Louisiana Long Arm Statute to wit: One Tyco Park, Exeter, NH 03833

52.  UNIROYAL HOLDING, INC.
     A New Jersey corporation authorized to do and doing business in Louisiana, with its
     principal place of business in the state of Connecticut, and may be served pursuant to
     the Louisiana Long Arm Statute to wit: 70 Great Hill Road, Naugatuck, CT 06770

53.  VIACOM, INC., *(sued individually and as successor by merger to CBS
     CORPORATION, f/k/a WESTERINGHOUSE ELECTRIC CORPORATION) (and as
     successor-in-interest to B.F. STUREVANT)*
     A corporation duly organized, created and existing under the laws of the state of
     Delaware, and with an agent for service in the State of Louisiana, to-wit:  Corporation
     Service Company, 320 Somerulos Street, Baton Rouge, LA 70802-6129

54.  VIAD CORP. *(sued individually and as successor-in-interest to GRISCOM-RUSELL
     COMPANY)*
     A corporation duly organized, created and existing under the laws of the state of
     Delaware, and with an agent for service in the State of Louisiana, to-wit: C.T.
     Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809

55.  VIKING PUMP
     A Delaware corporation authorized to do and doing business in Louisiana, with its
     principal place of business in the state of Illinois, and may be served pursuant to the
     Louisiana Long Arm Statute to wit: 630 Dundee Road, Suite 400, Northbrook, IL
     60065.

56.  WARREN PUMPS, LLC
     A Delaware corporation authorized to do and doing business in Louisiana, with its
     principal place of business in the state of Massachusetts, and may be served pursuant to
     the Louisiana Long Arm Statute to wit: 82 Bridges Ave., Warren, MA 01083

57.  YARWAY CORPORATION

22

A Pennsylvania authorized to do and doing business in Louisiana, with its principal place of business in the state of Pennsylvania, and may be served pursuant to the Louisiana Long Arm Statute to wit:  CT Corporation System, 1515 Market Street, Philadelphia, PA 19102

58.   YUBA HEAT TRANSFER COMPANY
An Oklahoma corporation authorized to do and doing business in Louisiana, with its principal place of business in the state of Oklahoma, and may be served pursuant to the Louisiana Long Arm Statute to wit: 2121 North 161st East Avenue, Tulsa OK 74116

59.   ZURN INDUSTRIES, INC.
A corporation duly organized, created and existing under the laws of the state of Pennsylvania, and with an agent for service in the State of Louisiana, to-wit: C.T. Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809