IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUTH FADDISH, Individually and as executrix of the estate of JOHN FADDISH, deceased, | : : : : : | CONSOLIDATED UNDER MDL 875 |
| Plaintiff, | : : | CIVIL ACTION NO. 09-70626 |
| v. | : : : | Transferred from the Southern District of Florida |
| GENERAL ELECTRIC CO. ET AL., | : : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    OCTOBER 20, 2010


Before the Court is Defendant General Electric's Motion for Summary Judgment, and Objections to the Magistrate Judges' Report and Recommendation that summary judgment in favor of General Electric be denied.


I. BACKGROUND

This case is part of MDL-875, the consolidated asbestos products liability multidistrict litigation pending in the Eastern District of Pennsylvania. The instant claims are based on failure to warn causes of action under Florida law. (Compl. ¶5.; Pl.'s Resp. to Def.'s Mot. Summ. J., doc. no. 129, at 8.) Plaintiff's husband and the injured party in the instant case, John Faddish ("Mr. Faddish"), was a serviceman in the U.S. Navy.

1

Mr. Faddish served aboard the U.S.S. Essex from 1958-1961.
(Suppl. Compl. ¶¶ 3-5.)  Plaintiff alleges that Mr. Faddish's
death from mesothelioma was related to asbestos-containing
General Electric ("GE") products used aboard the U.S.S. Essex.
(Id.)  It is undisputed that GE manufactured four Ship Service
Turbo Generators ("SSTG") that were installed on the U.S.S. Essex
(Def.'s Mot. Summ. J., doc. no. 105-1, at 3.)[1]

GE moved for summary judgment, asserting that Plaintiff has
failed to raise a genuine issue of material fact as to whether GE
products were the cause of Mr. Faddish's asbestos-related
injuries.  Pursuant to this Court's referral order, the Panel
issued an R&R denying GE'S Motion for Summary Judgment on the
issue of product identification only, finding that the
combination of Mr. Faddish's testimony and Plaintiff's expert
witness could lead a reasonable jury to find that asbestos-
insulated GE products were a substantial contributing cause to
Mr. Faddish's injuries.  (R&R, doc. no. 161, at 6.)

GE raises numerous objections to the Panel's R&R, including
a general objection to the ultimate conclusion that summary
judgment in favor of GE should be denied.  (Def.'s Objects., doc.
no. 189 at 2).  GE asserts that Mr. Faddish's deposition

---

[1] Plaintiff has also offered the reports of two medical
experts, Douglas A. Pohl, M.D., Ph.D. and Steven H. Dikman, M.D.,
who opined, with a reasonable degree of medical certainty, that
Mr. Faddish's occupational asbestos exposure was the cause of his
malignant mesothelioma.  (doc. no. 129, Exhibits H, I.)

2

testimony and Plaintiff's expert report are insufficient to raise a genuine issue of fact.  (<u>Id.</u>)

Additionally, GE moves for summary judgment on two grounds that are outside the scope of this Court's referral order to the Panel.  First, GE argues that the asbestos-containing gaskets, packing and insulation "as delivered by GE for use on the Essex in 1942 would have been removed and replaced by other parties before Faddish's arrival on that ship" and that they cannot be held liable for replacement parts that they did not manufacture or supply.  (Def.'s Mot. Summ. J., doc. no. 105-1, at 20.)  Second, General Electric argues that it is entitled to summary judgment as a matter of law based on the government contractor defense.  (<u>Id.</u> at 30.)


II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  <u>Id.</u>

When evaluating a motion for summary judgment, Federal Rule of Civil Procedure 56 provides that the Court must grant judgment in favor of the moving party when "the pleadings, the discovery

and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact . . . ."  Fed.
R. Civ. P. 56(c)(2).   A fact is "material" if its existence or
non-existence would affect the outcome of the suit under
governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986).  An issue of fact is "genuine" when there is
sufficient evidence from which a reasonable jury could find in
favor of the non-moving party regarding the existence of that
fact.  <u>Id.</u> at 248-49.  "In considering the evidence, the court
should draw all reasonable inferences against the moving party."
<u>El v. SEPTA</u>, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment
movant to show the absence of a genuine issue of material fact,
'the burden on the moving party may be discharged by showing-that
is, pointing out to the district court-that there is an absence
of evidence to support the nonmoving party's case' when the
nonmoving party bears the ultimate burden of proof."  <u>Conoshenti
v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 140 (3d Cir. 2004)
(quoting <u>Singletary v. Pa. Dep't of Corr.</u>, 266 F.3d 186, 192 n.2
(3d Cir. 2001)).  Once the moving party has thus discharged its
burden, the nonmoving party "may not rely merely on allegations
or denials in its own pleading; rather, its response must--by
affidavits or as otherwise provided in [Rule 56]--set out
specific facts showing a genuine issue for trial."  Fed. Civ.

P. 56(e)(2).


III. DISCUSSION

    A.  GE's Objections to the Panel's R&R

    GE has raised seven objections to the Panel's R&R, in
addition to generally objecting to the ultimate determination
that there remains a genuine issue of material fact as to whether
GE products were a substantial contributing cause of Mr.
Faddish's asbestos-related injuries.  For the reasons set forth
below, each of Defendant GE's objections are overruled, and the
Court adopts the Panel's findings.

> 1.  The Panel Erred in its Choice of Law Analysis by
> Failing to Recognize that Florida does not have a
> "Significant Relationship" with this Litigation

    Notably, GE objects to the Panel's choice of law approach,
but not to the Panel's ultimate determination that Florida law is
applicable to this case.  A multi-district litigation transferee
court is bound by the transferor court's substantive law,
including choice of law rules.  <u>Menowitz v. Brown</u>, 991 F.2d 36,
40 (2d Cir. 1993). Therefore, Florida choice of law rules must be
applied.

    The Panel found that Florida courts apply the "significant
relationship" test to determine what law applies and concluded
that, "in accordance with this standard, the court will apply
Florida law in deciding the substantive issues in the case at

bar."  (R&R at 2 n.1 (citing <u>Connell v. Riggins</u>, 994 So. 2d 1174,
1176-77 (Fla. Dist. App. Ct. 2006))).

Under Florida law, the first step in conducting the
"significant relationship" test is to determine which sovereigns
have an interest in applying its laws, and whether there is a
"true conflict" or merely a "false conflict" between the laws of
the different sovereigns.  <u>Pycsa Panama, S.A. v. Tensar Earth
Tech, Inc.</u>, 625 F. Supp. 2d 1198, 1218 (S.D. Fl. 2008).  A "false
conflict" exists "when the laws of the interested jurisdictions
are the same."  <u>Id.</u>

In determining the merits of an asbestos claim, Florida law
and maritime law employ the same test for proximate causation.
<u>Compare</u> <u>Singleton Stone v. Amquip Corp.</u>, 98-cv-4691, 2000 WL
1448817 at *3 (E.D. Pa. Sep. 29, 2000) (applying "substantial
contributing factor" test in products liability case under
maritime law) <u>with</u> <u>Reaves v. Armstrong World Industries, Inc.</u>,
569 So. 2d 1307, 1309 (Fl. Dist. App. Ct. 1990) (applying a
"substantial contributing factor" test in an asbestos case).  As
no "true conflict" exists between Florida and maritime law,
Florida law is applicable to the instant case.  (<u>See</u> doc. no.
161, at 4 n.2.)[2]

---

[2] The Panel's discussion of the "false conflict" was set
forth in the Report and Recommendation denying Defendant Warren
Pumps LLC's Motion for Summary Judgment in this case, but is
equally applicable to Defendant GE's Motion for Summary Judgment.

GE does not object to the conclusion that there is no "true conflict" between Florida law and maritime law causation standards. GE states that "it is [our] position here that the substantive law of the State of Florida on asbestos causation is coincidental with, and not different from, the recognized national standards set forth by [] maritime asbestos cases . . . [a]ccordingly, the error of the Report with regard to the jurisdiction and choice of substantive law to be applied, which is rightfully maritime in nature, may well be meaningless and a moot point." (Def.'s Objects., doc. no. 189, at 6.)

Under these circumstances, this Court will not disturb the Panel's finding that Florida law is applicable to this case.

   2.  The Panel Erred in Its Application of the Summary
       Judgment Standard

GE objects to the Panel's statement that "an issue is 'genuine' if a reasonable jury possibly could hold in the nonmovant's favor on that issue." (R&R at 3 (citing Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998))). GE avers that a mere possibility of a jury verdict in favor of plaintiff is not enough to survive summary judgment, but that, in accordance with Anderson v. Liberty Lobby, Inc., plaintiff must produce "sufficient evidence" to support a jury verdict in his or her favor. 477 U.S. 242 (1986); (Def.'s

Objects. at 7.)

First, it should be noted that the Panel's statement that summary judgment is inappropriate if a jury could "possibly" find in favor of a non-moving party is a **direct quote** from the Third Circuit Court of Appeals decision in Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386. GE may disagree with the Third Circuit's articulation of what gives rise to a genuine issue of material fact, but that is not grounds for objecting to the Panel's correct recitation of the standard.

Second, both the Boyle court and the Panel went on to say that the non-moving party has the burden of presenting "more than a scintilla" of evidence showing that there is a genuine issue for trial. (R&R at 4 (quoting Anderson, 477 U.S. at 251)). In finding that there is a "genuine issue" remaining in the instant case, the Panel determined that Plaintiff has produced evidence to support "a reasonable basis to infer that defendant's asbestos-containing product was a substantial contributing factor to Mr. Faddish's injury." (R&R at 9.) The Panel correctly determined that, under Fed. R. Civ. P. 56(c), Plaintiff had alleged facts to support a favorable jury verdict, and thus a genuine issue of material fact remained.

Accordingly, Defendant's objection on this ground is overruled.

3. The Panel Failed to Apply the "Frequency,

Regularity, Proximity" Standard.

GE avers that the Panel "erred by failing to utilize and explicitly apply" the frequency, regularity, and proximity standard applicable to asbestos claims, set forth in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162 (4th Cir. 1986), and applied by "numerous courts." (Def.'s Objects. at 9-10). GE further argues that the Panel failed to address its argument that manufacturers cannot be held liable for products which it did not manufacture or supply. (Id. at 10.) Finally, GE asserts that the Panel failed to find that GE's failure to warn Mr. Faddish of the harms of asbestos caused his injuries. (Id.)

It is beyond argument that Florida courts have not adopted the Lohrmann standard. Indeed, GE does not cite to a single Florida case adopting the Lohrmann standard. Rather, under Florida law, a plaintiff must simply show that a defendant's product was a "substantial contributing factor" to the injury that occurred to bring a claim in Florida courts. (Asbestos and Silica Compensation Fairness Act, FLA. STAT. § 774.205). If defendant's products are identified in a given case, "traditional" methods of finding causation apply. Celotex Corp. v. Copeland, 471 So. 2d 533, 536 (Fla. 1985).

The traditional method of establishing causation in negligence cases requires the plaintiff to "introduce evidence which affords a reasonable basis for the conclusion that it is

more likely than not that the conduct of the defendant was a
substantial factor in bringing about the result."  <u>Gooding v.
University Hospital Bldg, Inc.</u>, 445 So. 2d 1015 (Fl.
1984)(quoting Prosser, LAW OF TORTS § 41 (4th Ed. 1971)).
Therefore, the Panel was correct in its restatement of Florida
law on causation.  (<u>See</u> R&R at 5 (setting forth the "substantial
contributing factor" test)).

Additionally, the Panel did not consider GE's "bare metal"
defense because it is outside of this Court's Referral Order to
Magistrate Judges, as it entails a different analysis than
product identification.  Finally, there is no dispute that no
warnings were placed on GE products containing asbestos, and no
dispute that asbestos was known to be hazardous at the time of
Mr. Faddish's exposure.[3]  Implicit in the Panel's determination
that there remains a genuine issue of material fact is the
finding that there is sufficient evidence to show that GE's
failure to warn Mr. Faddish of the harms of asbestos were a
substantial contributing cause of Mr. Faddish's injuries.

Accordingly, GE's objection on this ground is overruled.

    4.  The Panel Failed to take into Account Unrebutted
    Evidence Submitted by GE

---

[3] Indeed, these two facts are the heart of GE's government
contractor defense, discussed below.

10

GE avers that Mr. Faddish's own testimony indicates that the asbestos dust he cleaned off of a GE SSTG had fallen from insulation on overhead piping. (Def.'s Objects. at 12.) Defendant asserts that its expert, David Hobson, provided uncontroverted evidence that GE was not involved in the design, manufacture, or installation of the pipes to which Mr. Faddish referred. (Id.)

However, Mr. Faddish's testimony is not limited to cleaning. Rather, Mr. Faddish also testified to "assisting" in the performance of maintenance on both the service generators and turbines connected to service generators in the engine rooms on the U.S.S. Essex. (Faddish Video Dep., doc. no. 129-3, at 32:14.) Mr. Faddish testified that he worked on "all" of the turbines and steam generators aboard the U.S.S. Essex, "at one point or another standing watch, or in the case of breakdown or something." (Id. at 31:19-23, 32:4-8.) When asked about a "breakdown," Mr. Faddish responded, "If you drop a load, it's an old ship, you are talking of old pieces of equipment and they basically wear and tear like anything else." (Id. at 32:9-11.)

When taken as a whole and viewed in a light most favorable to Mr. Faddish, this evidence is sufficient to show that he performed general maintenance on the GE turbo generators aboard the U.S.S. Essex. Given the undisputed evidence on record that, at the time of Mr. Faddish's maintenance work, these GE turbines

11

were insulated with asbestos and incorporated asbestos-containing

gaskets and packing, this raises a genuine issue of fact as to

whether GE's failure to warn Mr. Faddish of the hazards inherent

in the type of work he was performing was a substantial

contributing factor to his injuries.  The Panel properly took the

testimony regarding Mr. Faddish's maintenance work into account.

(See R&R at 7,9.)

Accordingly, GE's objection on this ground is overruled.

> 5.  The Panel Erred in Finding that the Record Could
> Support a Jury Verdict in Favor of Plaintiff and
> Against GE

GE asserts that Mr. Faddish's deposition testimony relied on

by the Panel is too vague to be relied upon.  (Def.'s Objects.,

doc. no. 13.)  The Panel noted in its R&R that there seem to be

some inconsistencies in Mr. Faddish's testimony.  (R&R at 8.)  To

the extent that GE wishes to highlight these inconsistencies to

undermine Mr. Faddish's credibility, it is free to do so at

trial.  Additionally, GE incorrectly asserts that there is no

testimony indicated that Mr. Faddish ever performed maintenance

of any kind on a GE SSTG.  (Def.'s Objects. at 18.)  However, the

testimony excerpted in Section 4, supra, is to the contrary.

There is no requirement under Florida law that a Plaintiff

perform "hands on" maintenance in order to show that a

Defendant's asbestos-containing products were a cause of

Plaintiff's injuries.  GE makes much of the fact that Mr.
Faddish's involvement with the GE SSTG was observational.
However, this Court finds that observing the maintenance or
overhaul of an asbestos-containing and asbestos-insulated piece
of equipment can certainly give rise to a genuine issue of
material fact as to whether exposure resulted.

Accordingly, GE's objection on this ground is overruled.


        6.  The Panel's Reliance on Plaintiff's Expert's
            Unsworn Report and Deposition Testimony is in Error

GE asserts that Arnold Moore's expert report cannot be
relied upon to defeat a motion for summary judgment, and that Mr.
Moore's deposition testimony supercedes his expert report.
(Def.'s Objects., doc. no. 189 at 21.)  GE is correct in its
assertion that the letter from Arnold Moore to Plaintiff's
counsel is not a sworn statement.  (See doc. no. 131-7.)
Therefore, it cannot be relied on to defeat a motion for summary
judgment.  Wolosyzyn v. County of Lawrence, 396 F.3d 314, 323 (3d
Cir. 2005); see also Coleman v. Blockbuster, Inc., 2008 U.S.
LEXIS 49957 *40 n.13 (E.D. Pa 2008)(Robreno, J.) aff'd by Coleman
v. Blockbuster, Inc., 352 Fed. Appx. 676 (3d Cir. 2009).

However, the Panel also relied on Mr. Moore's sworn
deposition testimony.  Mr. Moore stated that he would testify at
trial that the work Mr. Faddish described regarding gaskets and

packing on the GE SSTG involved asbestos.  (Moore Dep., doc. no.
129-7 at 38:9-21).  He stated that "[t]he basis for that opinion
is the General Electric drawing I have seen that show[s] the
locations of the gaskets and packing aboard – a GE generator
onboard the destroyer."  (Id.)  GE attacks Mr. Moore's deposition
testimony as speculative, and argues that Mr. Moore is attempting
to supply facts about Mr. Faddish's maintenance work, which he
lacks personal knowledge about.  (Def.'s Objects. at 22).

Mr. Moore was asked about the type of maintenance Mr.
Faddish performed, and gave his opinion based on his reading of
Mr. Faddish's testimony.  Mr. Moore then stated the basis for his
opinion that Mr. Faddish would have been exposed to asbestos-
containing packing and gaskets from a GE SSTG during his tenure
on the U.S.S. Essex.

When taken as a whole and viewed in a light most favorable
to Plaintiff, the Panel was correct in determining that a genuine
issue of material fact exists as to whether GE's failure to warn
Mr. Faddish of the hazards of asbestos was a substantial
contributing cause to his asbestos-related injuries.

Accordingly, GE's objection on this ground is overruled.
The Panel's R&R denying summary judgment in favor of GE on the
issue of product identification is adopted.


B.  The Government Contractor Defense

14

In GE's Motion for Summary Judgment, GE asserted the government contractor defense, averring that it's state law duty to warn about the harms associated with its product was superceded by the United States Government's directives. This argument was outside of this Court's referral order to the Panel, and is considered here for the first time.

As set forth by the Supreme Court in Boyle v. United Technologies Corporation, independent contractors are immune from state law tort claims when (1) the United States Government approved reasonably precise specifications for the product at issue (2) the equipment conformed to those specifications and (3) the contractor warned the United States about dangers in the use of the equipment that were known to it, but not known to the United States. 487 U.S. 500, 512 (1988).

It is now well established that the government contractor defense is not limited to design defect causes of action, but also applies to failure to warn claims. Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003 (7th Cir. 1996), cert. denied, 520 U.S. 1116 (1997); see also In re Joint Eastern & Southern District New York Asbestos Litigation, 897 F.2d 626 (2d Cir. 1990); Chicano v. GE, 2004 U.S. Dist. LEXIS 20330 at *38 (E.D. Pa. 2004).

To satisfy the first prong of the test in a failure to warn claim, a defendant must produce evidence that the United States Government "'dictated' the content of the warnings" by producing

15

military specifications "discuss[ing] product warnings" and
"placing limit[s] upon any additional information a manufacturer
may have wished to convey to those using the product."  In re
Joint Eastern & Southern District New York Asbestos Litigation,
897 F.2d at 629-30; see also Oliver, 96 F.3d 992 (contractor's
state law duty to warn is displaced if the government "exercised
its discretion" in approving warnings or the government "chooses
its own warnings").  But see Dorse v. Eagle-Pitcher Industries,
Inc., 898 F.2d 1487, (11th Cir. 1990)(requiring a showing of an
express "prohibition against health warnings on the product").

Once a defendant establishes that the United States
Government exercised its discretion regarding the warnings (or
lack of warnings) to be given, and that a defendant complied with
the directive, the defendant still must show that it warned the
government of hazards in the products, or that the United States
Government "knew as much or more than the defendant contractor
about the hazards" of the product.  Beaver Valley Power Co. v.
National Engineering & Contracting Co., 883 F.2d 1210, 1216 (3d
Cir. 1989); see also Chicano v. GE, 2004 U.S. Dist. LEXIS 20330
at *38 (E.D. Pa. 2004)("Defendant can also satisfy [the third
prong] by showing that the government knew as much or more than
defendant contractor about the hazards of the equipment.").

Therefore, in the instant case, GE must show that (1) the
government provided warning directives (2) GE complied with those

16

directives and (3) GE either warned the U.S. Government about the
hazards of asbestos, or the U.S. Government knew about the
hazards of asbestos.

As to the first and second prongs, GE has produced the
following pieces of evidence regarding the government's warning
directives.[4]

- **Declaration of Ben J. Lehman, retired Rear Admiral of
  the United States Navy** (doc. no. 105-10 at ¶ 7). Mr.
  Lehman states that, "Drawings for nameplates, texts of
  instruction manuals, and every other document relating
  to the construction, maintenance, and operation of the
  vessel were approved by the Navy." This control
  included the decision of what warnings should or should
  not be included.

- **Declaration of David Hobson, Manager of Navy Customer
  Service for GE's Navy and Small Steam Turbine
  Department** (doc. no. 105-8). Mr. Hobson states that
  "[U]nless expressly directed to do so by the Navy, GE
  was not permitted, under the specifications, associated
  regulations and procedures, and the actual practice as
  it existed in the field, to affix any type of warning
  to a Navy turbine that addressed alleged hazards of
  products . . ." (Id. at ¶ 21.)[5]

---

[4] GE has produced extensive evidence regarding the
government's involvement in the design and manufacture of GE
turbines. However, as Plaintiff's claim is limited to a failure
to warn cause of action, the Court's analysis focuses on the
evidence relating to the government's warning directives.

[5] Plaintiff filed a motion to strike GE's incorporation of
Mr. Hobson's testimony in its Motion for Summary Judgment, which
was denied by the Court on March 25, 2010. (doc. no. 141).
Plaintiff was given thirty (30) days to take the depositions of
said experts and fourteen (14) days thereafter to supplement the
record. In Plaintiff's Notice Supplementing the Summary Judgment
Record, Plaintiff argues that Mr. Hobson's testimony "once again
solidifies the fact that Defendant GE was **not** prohibited by the
U.S. Navy from providing an asbestos-related warning with or on

17

- **MIL-I-15024** (SHIPS) (Interim Military Specification Identification Plates, Information Plates and Marking Information for Identification of Electric, Electronic and Mechanical Equipment)(1952). This specification provides that "Marking information to appear on identification plates shall be in accordance with the following subparagraphs outlines . . .". Figure 4A exhibits the plate for a generator. (doc. no. 105-18 at 16). There is no space designated for a warning on this plate.

- **MIL-B-15071**(SHIPS)(1950): Specifications for technical manuals that manufacturers could provide. The manuals had to be approved by the Navy and safety warnings could be included for some types of equipment. Specific examples were provided by the Navy.

- **Letter from Philip Drinker, Chief Health Consultant to the U.S. Maritime Commission, to Captain Thomas Carter of the U.S. Navy Department's Bureau of Medicine and Surgery** (doc. no. 105-9). The letter states that manufacturers who provided asbestos insulation to Bath Iron Works were willing to disseminate "a brief statement of precautions which should be taken" but that it was Dr. Drinker's understanding that "neither the Navy nor Maritime wants any change in the specifications as the performance with the present materials is entirely satisfactory."

In response, Plaintiff incorporated and adopted the arguments set for in her Motion to Remand to State Court (doc. no. 92) wherein Plaintiff asserts that the removing defendants "could have complied with both their contractual obligations and their state law duty to warn" and they have produced no evidence

---

its equipment it knew required the use of thermal asbestos-containing insulation." (doc. no. 158, at 20)(emphasis in original). As discussed below, this Court declines to follow the <u>Dorse</u> standard requiring a prohibition of warnings, and this argument against Mr. Hobson's testimony is therefore unavailing.

that the United States Government "forbade" warnings, or that
Defendants tried to incorporate warnings and were prevented from
doing so.  (<u>Id.</u> at 9.)  Additionally, in Plaintiff's Response to
Defendant GE's Motion for Summary Judgment, Plaintiff points the
Court to <u>Dorse v. Eagle-Pitcher Industries, Inc.</u>, 898 F.2d 1487,
to support the proposition that GE has not presented affirmative
evidence that there was a government directive specifically
prohibiting a warning from being placed.  (Pl.'s Resp., doc. no.
129, at 16.)  Plaintiff asserts that "[t]he record in this case
is completely devoid of any such specification upon which the
government exercised the requisite discretion as to warnings."
(<u>Id.</u> at 13.)

However, GE has produced a record establishing that the
United States Navy was intimately involved with both the labeling
of equipment on its ships and the manufacturer-produced
information that was allowed to accompany any product.  GE has
produced military specifications (MIL-I-15024) referring to
turbines in particular, and the parameters of a label that could
be placed on that equipment.  Plaintiff is correct in asserting
that Defendants must show something more than "reasonably precise
specifications" in a failure-to-warn-case.  In the instant case,
GE has made such a showing.

It is true that Defendant has not produced evidence that the
Navy expressly forbade any warnings from being placed on GE

turbines.  However, this standard, articulated by the Eleventh

Circuit in <u>Dorse</u>, has been rejected by every Circuit court to

consider the issue, as well as district courts in this circuit.[6]

    The prevailing view is that an independent contractor does

---

[6] Plaintiff asserts that <u>Dorse</u>, as "Florida law . . . must
be applied by this Court as the transferee Court from the
Southern District of Florida."  (Pl.'s Mot. Supp. Summ. J. Rec.,
doc. no. 158 at 2, n.1).  This is incorrect.

    First, the question of whether the government contractor
defense applies in a given case is a question of federal law, not
state law.  <u>See</u> <u>Carley v. Wheeled Coach</u>, 991 F.2d 1117, 1128 (3d
Cir. 1993)(holding that the government contractor defense is a
matter of "federal common law" and therefore it need not be
considered whether the transferee state recognizes the defense).
Federal court interpretations of the government contractor
defense, rather than Florida state substantive law, provide the
rule of decision regarding GE's government contractor defense.

    Second, it is well established that, in interpreting federal
law, the transferee circuit in multi-district litigation cases is
not bound by the transferor forum's approach to federal
questions.  <u>In Re Asbestos Prods. Liab. Litig. (Oil Field Cases)</u>,
673 F.Supp. 2d 358, 362 (E.D. Pa. 2009)("[I]n cases where
jurisdictions is based on federal question, this Court, as the
transferee court, will apply federal law as interpreted by the
Third Circuit.");  <u>see also</u> <u>In Re Korean Air Lines Disaster</u>, 829
F.2d 1171, 1174 (D.C. Cir. 1987) (Ginsburg, J.) (finding that
"the transferee court should be free to decide a federal claim in
the manner it views as correct without deferring to the
interpretations of the transferor circuit.")(internal citation
omitted);  <u>see</u> <u>also</u> <u>Menowitz v. Brown</u>, 991 F.2d 36, 40 (2d Cir.
1993) (holding that a transferee court should apply its own
"construction of relevant federal law," not the transferor's
court's construction).

    Therefore, this Court is not bound by the Eleventh Circuit's
decision in <u>Dorse</u>, and may arrive at its own interpretation of
federal law, within the bounds articulated by Third Circuit
precedent.

not have to show an express government prohibition on all
warnings, but rather, must establish that the government
"exercised its discretion" regarding warnings to be placed on
defendant's product.  Oliver, 96 F.3d 992 (7th Cir. 1996); In re
Joint Eastern & Southern District New York Asbestos Litigation,
897 F.2d 626, 630 (2d Cir. 1990); Kerstetter v. Pacific
Scientific Co., 210 F.3d 431, 437 (5th Cir. 2000); Tate v. Boeing
Helicopters, 140 F.3d 654, 660 (6th Cir. 1998); Butler v. Ingalls
Shipping, Inc., 89 F.3d 582, 586 (9th Cir. 1996); Crespo v.
Unisys Corp., 1996 WL 875565 *15 (D.N.J. 1996)(adopting the 6th
Circuit's standard requiring a showing that the United States
"exercised its discretion and approved warnings").

In the instant case, GE has established that the United
States Navy "exercised its discretion" regarding the type and
content of warnings that could be placed on GE turbines, and that
GE complied with the applicable military specifications.

Finally, GE argues that, as to the third prong of the test,
the United States Navy possessed superior knowledge regarding the
hazards of asbestos and that GE therefore had no duty to warn the
Navy about the hazards of asbestos insulation to be applied to
its turbines.  (Def.'s Mot. Summ. J., doc. no. 105-1, at 55-61.)
GE has produced extensive evidence to this effect.  (See
Declaration of Lawrence Stilwell Betts, retired United Stats Navy
Captain, MD, PhD, CIH, FACOEM, doc. no. 105-9.)  Plaintiff has

allowed this evidence to go un-controverted on the record.

Therefore, there remains no genuine issue of material fact as to whether the United States Navy possessed state-of-the-art knowledge of the hazards of asbestos, thereby absolving GE of its duty to warn the Navy.  As GE has satisfied all three prongs of the Boyle test (as modified for failure to warn cases) summary judgment on this ground is appropriate.


C.  The Bare Metal Defense

Based on this Court's finding that GE is entitled to the government contractor defense, it is not necessary to address GE's argument that it is not liable for external asbestos insulation or replacement gaskets and packing applied to its turbines aboard the U.S.S. Essex.


IV.  CONCLUSION

This Court adopts the Panel's finding that Plaintiff has raised a genuine issue of material fact as to whether GE's failure to warn Mr. Faddish about the hazards of asbestos-containing components of its products were a substantial contributing factor to Mr. Faddish's injuries.

However, Plaintiff has failed to raise a genuine issue of material fact as to whether GE retained its state law duty to warn in light of the discretion exercised by the U.S. Navy in the

22

warnings to be placed on products installed on the U.S.S. Essex.
Plaintiff in the instant case incorrectly relied on the minority
view in Dorse, insisting that GE has failed to produce evidence
that the United States Navy expressly prohibited warnings from
being placed on turbines, such as those manufactured by GE.  In
response, GE has produced numerous pieces of evidence showing
that the Navy exercised its discretion in every aspect of the
warnings to be given on ship equipment, from the labels to be
placed on machinery, to the information that could accompany it.
The Navy reserved the right to reject any equipment or
information that did not comply with its specifications.
Specifically, regarding the hazards of asbestos, the Navy was
intimately involved with the warnings to be given and the
procedures to follow, and GE produced significant evidence
showing that the Navy possessed state-of-the-art knowledge
regarding the hazards of asbestos.  Under these circumstances,
GE's state law duty to warn was displaced by the Navy's
directives.  As GE had no duty to warn Mr. Faddish of the hazards
of asbestos, this Court need not reach the issue of whether GE
can be held liable for asbestos-containing to external insulation
or replacement parts incorporated into its products.

 An appropriate order follows.

Case MDL No. 875 Document 7212-2 Filed 06/03/11 Page 24 of 24