ADRMOP, E-Filing

## U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:11-cv-02814-LB

Miller et al v. Air and Liquid Systems Corp. et al

Assigned to: Magistrate Judge Laurel Beeler

Case in other court: San Francisco Superior Court, CGC-11-275825

Cause: 28:1441 Petition for Removal- Asbestos Litigation

Date Filed: 06/09/2011

Jury Demand: None

Nature of Suit: 368 P.I. : Asbestos

Jurisdiction: Federal Question

**Plaintiff**

**Richard Miller**                    represented by  **Stephen Michael Fishback**
Keller, Fishback & Jackson LLP
18425 Burbank Blvd., Suite 610
Tarzana, CA 91356
818-342-7442
Fax: 818-342-7616
Email: sfishback@kfjlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Lee Keller**
Keller, Fishback & Jackson LLP
18425 Burbank Blvd., Suite 610
Tarzana, CA 91356
818-342-7442
Fax: 818-342-7616
Email: dkeller@kfjlegal.com
*ATTORNEY TO BE NOTICED*

**John Bruce Jackson**
Keller, Fishback & Jackson LLP
18425 Burbank Blvd. Suite 610
Tarzana, CA 91356
818-342-7442
Fax: 818-342-7616
Email: bjackson@kfjlegal.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lillian Miller**                    represented by  **Stephen Michael Fishback**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Lee Keller**

(See above for address)
*ATTORNEY TO BE NOTICED*

**John Bruce Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**Air and Liquid Systems Corp.**
*successor by merger to Buffalo Pumps
Inc.*

<u>**Defendant**</u>

**Carrier Corporation**

<u>**Defendant**</u>

**CBS Corporation**
*a Delaware Corporation, individually
and successor-in-interest
formerly known as*
Viacom, Inc.
*formerly known as*
Westinghouse Electric Corporation

<u>**Defendant**</u>

**Foster Wheeler LLC**                    represented by    **Edward R. Hugo**
                                                            Brydon Hugo & Parker
                                                            135 Main Street, 20th Floor
                                                            San Francisco, CA 94105
                                                            (415) 808-0300
                                                            Fax: (415) 808-0333
                                                            Email: ehugo@bhplaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Charles S. Park**
                                                            Brydon Hugo & Parker
                                                            135 Main Street, 20th Floor
                                                            San Francisco, CA 94105
                                                            415-808-0300
                                                            Fax: 415-808-0333
                                                            Email: cpark@bhplaw.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Thomas J. Moses**
                                                            Brydon Hugo & Parker
                                                            135 Main Street, 20th Floor

San Francisco, CA 94105
(415) 808-0300
Fax: (415) 808-0333
Email: tmoses@bhplaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**General Electric Company**

**Defendant**

**Goulds Pump, Inc.**

**Defendant**

**Warren Pumps, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/09/2011 | 1 | NOTICE OF REMOVAL (no process) from San Francisco Superior Court. Their case number is CGC-11-275825. (Filing fee $350 receipt number 34611060831). Filed byFoster Wheeler LLC. (cjl, COURT STAFF) (Filed on 6/9/2011) (Entered: 06/13/2011) |
| 06/09/2011 | 2 | Certificate of Interested Entities by Foster Wheeler LLC identifying Corporate Parent Foster Wheeler USA Corporation for Foster Wheeler LLC. (cjl, COURT STAFF) (Filed on 6/9/2011) (Entered: 06/13/2011) |
| 06/09/2011 | 3 | NOTICE of Tag-Along Action by Foster Wheeler LLC. (cjl, COURT STAFF) (Filed on 6/9/2011) (Entered: 06/13/2011) |
| 06/09/2011 | 4 | ADR SCHEDULING ORDER: Case Management Statement due by 11/24/2011. Case Management Conference set for 12/1/2011 10:30 AM in Courtroom 4, 3rd Floor, Oakland. (Attachments: # 1 Standing Order)(cjl, COURT STAFF) (Filed on 6/9/2011) (Entered: 06/13/2011) |
| 06/09/2011 | | CASE DESIGNATED for Electronic Filing. (cjl, COURT STAFF) (Filed on 6/9/2011) (Entered: 06/13/2011) |
| 06/13/2011 | 5 | Declination to Proceed Before a U.S. Magistrate Judge by Foster Wheeler LLC *with Certificate of Service.* (Moses, Thomas) (Filed on 6/13/2011) (Entered: 06/13/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/13/2011 15:05:59 | | |
| **PACER Login:** | bh1524 | **Client Code:** | 4801-2536 |
| **Description:** | Docket Report | **Search Criteria:** | 4:11-cv-02814-LB |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

5/12/11   3:00 pm

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AIR AND LIQUID SYSTEMS CORP. ,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RICHARD MILLER AND LILLIAN MILLER

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):*  CGC 11-275825 |
|---|---|

San Francisco Superior Court
400 McAllister Street, San Francisco, California 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

J. Bruce Jackson, Esq., Keller, Fishback & Jackson LLP, 18425 Burbank Blvd., Ste 610, Tarzana, CA 91356

| DATE: MAY - 2 2011<br>*(Fecha)* | CLERK OF THE COURT | Clerk, by<br>*(Secretario)*  P. NATT | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: Foster Wheeler USA Corporation

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov*<br><br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Richard Miller, et al. v. Air and Liquid Systems Corp., et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

AIR AND LIQUID SYSTEMS CORP. successor by merger to BUFFALO PUMPS INC.;
CARRIER CORPORATION;
CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-in-interest to and
formerly known as VIACOM, INC. and WESTINGHOUSE ELECTRIC CORPORATION;
FOSTER WHEELER LLC;
GENERAL ELECTRIC COMPANY;
GOULDS PUMP, INC.;
WARREN PUMPS, LLC;
DOES 1-500;

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

<table>
<tbody>
<tr><td>1</td><td>Stephen M. Fishback, Esq.  (State Bar No. 191646)</td></tr>
<tr><td>2</td><td>Daniel L. Keller, Esq. (State Bar No. 191738)<br>J. Bruce Jackson, Esq. (State Bar No. 173215)</td></tr>
<tr><td>3</td><td>KELLER, FISHBACK & JACKSON LLP<br>18425 Burbank Blvd., Suite 610</td></tr>
<tr><td>4</td><td>Tarzana, California 91356<br>Telephone   (818) 342.7442</td></tr>
<tr><td>5</td><td>Facsimile   (818) 342.7616</td></tr>
<tr><td>6</td><td>Attorneys for Plaintiffs</td></tr>
</tbody>
</table>

ENDORSED
FILED
San Francisco County Superior Court

MAY – 2 2011

CLERK OF THE COURT
BY:  PARAM NATT
Deputy Clerk

7

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

            **FOR THE COUNTY OF SAN FRANCISCO**

9                 **(UNLIMITED JURISDICTION)**

10

|  |  |
|---|---|
| 11   RICHARD MILLER AND LILLIAN<br>12   MILLER; | ) ) Case No: **CGC-11-275825** |
| 13       Plaintiffs, | ) ) **PRELIMINARY FACT SHEET/NEW**<br>) **FILING/ASBESTOS LITIGATION** |
| 14   vs. | ) (See General Order No. 129, In Re: Complex |
| 15   AIR AND LIQUID SYSTEMS CORP., et al., | ) Asbestos Litigation) |
| 16 | ) |
| 17       Defendants. | ) |
| 18 | ) |
| 19 | ) |

20

21                     **NOTICE**

22 **TO NEW DEFENDANTS SERVED IN COMPLEX ASBESTOS LITIGATION IN THE**

23 **SUPERIOR COURT IN AND FOR THE STATE OF CALIFORNIA, CITY AND**

24 **COUNTY OF SAN FRANCISCO**

25       You have been served with process in an action, which has been designated by the Court

26 as complex litigation pursuant to Standard 19 of the Standards of Judicial Administration.  The

27 litigation bears the caption "In Re: Complex Asbestos Litigation," [San Francisco Superior Court

28 No. 828684].

---

PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION                Page 1

1    This litigation is governed by various general orders, some of which affect the judicial

2    management and/or discovery obligations, including the responsibility to answer interrogatories

3    deemed propounded in the case.  You may contact the Court of Designated Defense Counsel,

4    Berry & Berry, P.O. Box 16070 (2930 Lakeshore Avenue), Oakland, CA 94610; Telephone:

5    (510) 250-0200; FAX: (510) 835-9859, for further information and/or copies of these orders, at

6    your expense.

7    1.    State the complete name and address of each person whose claimed exposure to asbestos

8    is the basis of this lawsuit ("exposed person"): Richard Miller

9    2.    Does plaintiff anticipate filing a motion for a preferential trial date within the next four

10   months?    ___Yes                          __XX__No

11   [If yes, the action will be governed by General Order No. 140; if no, the action will be governed

12   by General Order No. 129.]

13   3.    Date of birth of each exposed person in item one and, if applicable, date of death:

14        **DOB:**  October 26, 1938

15        **DOD:**  N/A

16        Social Security Number of each exposed person:

17        **SS #:**  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

18   4.    Specify the nature or type of asbestos-related disease alleged by each exposed person.

19        _____ Asbestosis                          _____ Mesothelioma

20        _____ Pleural Thickening/Plaques          _____ Other Cancer: Specify:

21        __XX_ Lung Cancer Other Than Mesothelioma  _____ Other: Specify:

22   5.    For purposes of identifying the nature of exposure allegations involved in this action,

23   please check one or more:

24        _XX__ Shipyard          __XX_ Construction      _XX__ Friction-Automotive

25        _____ Premises         _____ Aerospace        _XX__ Military

26        __XX__ Other: Specify all that apply:  Home Remodel

27   If applicable, indicate which exposure allegation apply to which exposed person.

28   6.    Identify each location alleged to be a source of an asbestos exposure, and to the extent

1   known, provide the beginning and ending year(s) of each such exposure. Also specify each

2   exposed person's employer and job title or job description during each period of exposure. (For

3   example: "San Francisco Naval Shipyard - Pipefitter - 1939-1948"). Examples of locations of

4   exposure might be a specific shipyard, a specific railroad maintenance yard, or perhaps more

5   generalized descriptions such as "merchant marine" or "construction". If an exposed person

6   claims exposure during only a portion of a year, the answer should indicate that year as the

7   beginning and ending year (e.g., 1947-1947).

8       **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

9   7.     For each exposed person who:

10       a.     worked in the United States or for a U.S. agency outside the territorial United

11   States, attached to the copy of this fact sheet provided to Designated Defense Counsel a fully

12   executed Social Security Earnings authorization (Exhibit N-4 to General Order No. 129);

13       b.     may have had a Social Security disability award or is no longer employed and

14   whose last employment was not with a United States government agency, attach to the copy of

15   the fact sheet provided to Designated Defense Counsel a fully executed Social Security

16   Disability authorization (Exhibit N-5 to General Order No. 129);

17       c.     served at any time in the United States military, attach to the copy of this fact

18   sheet provided to Designated Defense Counsel two fully executed originals of the stipulation

19   (Exhibit N-3 to General Order No. 129);

20       d.     was employed by the United States government in a civilian capacity, attach to

21   the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals

22   of the stipulation (Exhibit N-3 to General Order No. 129).

23   8.     If there is a wrongful death claim, attach to the copy of this fact sheet provided to

24   Designated Defense Counsel a copy of the death certificate, if available. If an autopsy report

25   was done, also attach a copy of it to the copy of this fact sheet provided to Designated Defense

26   Counsel.

27   / / /

28   / / /

---

1  9.      State the date of the filing of the initial complaint in this matter: <u>May 2, 2011.</u>

2

3  Dated: May 2, 2011                                    **KELLER, FISHBACK & JACKSON LLP**

4

5                                                        By:

6                                                             J. Bruce Jackson, Esq.
                                                             Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**EXHIBIT "A"**

2

Plaintiff, RICHARD MILLER, suffered from asbestos-caused diseases, including but not

3
limited to, lung cancer and asbestosis.

4
Plaintiff, RICHARD MILLER, was exposed to asbestos of varied types and sources during
his employment, which may have included, but is not limited to: boilers; insulation/insulating
5
materials; gun plastic cement; sheetrock and joint/taping compound; acoustical materials;
asbestos fiber product; cloth; cement pipe; valves; pumps; generators; compressors; gaskets;
6
packing; wire/cable; turbines; evaporators; distillers; engines; motors; and other materials
7
containing asbestos currently unknown or unspecified by plaintiff.

8
Plaintiff, RICHARD MILLER, and others in his immediate vicinity also performed
automotive repair and maintenance to a variety of make and models of vehicles between 1954
9
and 1996 both personally and professionally. Such repair and maintenance may have included,
10
but was not limited to: inspect, remove and install asbestos-containing friction products on
asbestos containing automobiles and trucks, such as brakes and clutches, and related component
11
parts, engines; inspect, remove and install asbestos-containing automotive gaskets and gasketing
materials; cleanup using compressed air, push brooms, dry cloths and other tools after performing
12
such tasks; and other vehicle repair and maintenance tasks.

13
Plaintiff, RICHARD MILLER, was also exposed to asbestos containing materials while
14
performing and in close-proximity to multiple home repairs and renovations from 1952 to 1997.
Plaintiff, RICHARD MILLER, was exposed to following asbestos products including, but not
15
limited to: taping and joint/taping compound, insulation, asbestos-cement, wallboard, drywall
materials and other asbestos containing materials to perform this work causing him to be exposed
16
to respirable asbestos, which he breathed.

17
Plaintiff, RICHARD MILLER, was also exposed to asbestos dust that was carried into his
18
work areas on the person and clothing of co-workers and others. While performing his regular job
duties his person and clothing were contaminated with asbestos dust. Plaintiffs allege and believe
19
that RICHARD MILLER's exposure to asbestos occurred at job sites including, but not limited to,
the following:

20

21
| | |
|---|---|
| EMPLOYER: | United States Navy |
| DATE: | 10/1957 to 1978 |
| JOB TITLE: | Machinist Mate (Senior Chief); Naval Advisor |
| SITE: | Various locations including, but not limited to: Harry E. Hubbard (DD-748); A.A. Cunningham (DD-752); Chemung (AO-30); USS Duncan (DDR-874); U.S.S. Arlington (AGM-R2); Vietnam; Monterey, CA; San Bernardino, CA; Long Beach, CA, San Francisco Bay Area, CA |

22

23

24

25

26
| | |
|---|---|
| EMPLOYER: | United States Navy Reserve |
| DATE: | 1978 to 1987 |
| JOB TITLE: | Machinist Mate; Naval Advisor |
| SITE: | Various locations |

27

28

EMPLOYER:        Earl Erne Electrician

1

DATE:            1978 to 1979
JOB TITLE:       Junior Electrician

2

SITE:            Various locations in Riverside and San Bernardino County

3

EMPLOYER:        US Air Force

4

DATE:            1978; 1983 and 1986
DURATION:        1 to 3 years

5

JOB TITLE:       Boiler Maintenance Mechanic
SITE:            March Air Base, Riverside, CA

6

7

EMPLOYER:        Riverside Cement Company
DATE:            1978 to 1992

8

JOB TITLE:       Pipefitter and Watertender
SITE:            Riverside, CA

9

10

Plaintiffs' investigation and discovery are continuing.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stephen M. Fishback (State Bar No. 191646)
Daniel L. Keller (State Bar No. 191738)
J. Bruce Jackson (State Bar No. 173215)
**KELLER, FISHBACK & JACKSON LLP**
18425 Burbank Blvd., Suite 610
Tarzana, California 91356
Telephone:  818.342.7442
Facsimile:  818.342.7616

Attorneys for Plaintiffs

**ENDORSED
FILED**
San Francisco County Superior Court

MAY – 2 2011

CLERK OF THE COURT
PARAM NATT
Deputy Clerk

ASBESTOS
CASE MANAGEMENT CONFERENCE

APR 1 9 2012 1³⁰ PM

DEPARTMENT  220

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE CITY AND COUNTY OF SAN FRANCISCO

RICHARD MILLER AND LILLIAN MILLER,

    Plaintiffs,

    vs.

AIR AND LIQUID SYSTEMS CORP.
successor by merger to BUFFALO PUMPS
INC.;
CARRIER CORPORATION;
CBS CORPORATION, a DELAWARE
CORPORATION, individually, successor-in-
interest to and formerly known as VIACOM,
INC. and  WESTINGHOUSE ELECTRIC
CORPORATION;
FOSTER WHEELER LLC;
GENERAL ELECTRIC COMPANY;
GOULDS PUMP, INC.;
WARREN PUMPS, LLC;

DOES 1-500;

    Defendants.

Case No.

**CGC – 11 – 275825**

**COMPLAINT FOR PERSONAL INJURY
- ASBESTOS**

**(ACTION IS SUBJECT TO GENERAL
ORDERS IN FILE NO. 828684)**

Negligence
**Strict Liability
False Representation Under Restatement
Section 402-B
Intentional Tort
Premises Owner/Contractor Liability**

**THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158**

PLAINTIFFS RICHARD MILLER AND LILLIAN MILLER (hereinafter Plaintiff(s),
COMPLAIN AND ALLEGE AS FOLLOWS as against the above-named defendants:

1.     The true names and capacities, whether individual, corporate, associate,
governmental or otherwise, of defendants DOES 1 through 500 are unknown to plaintiffs at this
time, who therefore sues said defendants by such fictitious names.  When the true names and
capacities of said defendants have been ascertained, plaintiffs will amend this complaint
accordingly.  Plaintiffs are informed and believe, and thereon allege, that each defendant
designated herein as a DOE is responsible, negligently or in some other actionable manner, for the
events and happenings hereinafter referred to, and caused injuries and damages thereby to the
plaintiff, as hereinafter alleged.

2.     At all times herein mentioned, each of the defendants was the agent, servant,
employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each
defendant was acting in the full course and scope of said agency, service, employment and/or joint
venture.

3.     Plaintiffs are informed and believe, and thereon allege that at all times herein
mentioned, defendants on Exhibits "B", "C", "D" and DOES 1 through 500, inclusive, were and
are corporations, partnerships, unincorporated associations, sole proprietorships and/or other
business entities organized and existing under and by virtue of the laws of the State of California,
or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them,
were and are authorized to do and are doing business in the State of California, and that said
defendants, or some of them, have regularly conducted business in the City and County of  San
Francisco, State of California.

## FIRST CAUSE OF ACTION

### (Negligence)

PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-
300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE
OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:

4.     At all times herein mentioned, each of the named defendants and DOES 1  through
300 was the successor, successor in business, successor in product line or a portion thereof, assign,

predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

5.     At all times herein mentioned, defendants, their "alternate entities," and each of them, were and/or are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos.  Said asbestos and other products containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or

"asbestos-containing products") specifically include, but are not limited to: thermal insulation and insulation materials; turbines; engines; heaters; chillers; pumps; compressors; valves; gaskets; packing; generators; boilers; refractory materials; pipe; paper; purifiers; asbestos fiber product; and other asbestos-containing products and other materials containing asbestos currently unknown or unspecified by plaintiffs. and other asbestos-containing products and other materials containing asbestos currently unknown or unspecified by plaintiffs.

6.      At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

7.      Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

8.      Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

9.    Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A," attached to plaintiffs' complaint and incorporated by reference herein.

10.    As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, the nature of which, along with the date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiffs' complaint and incorporated by reference herein.

11.    Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

12.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

13.    As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

14.    As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

15.    As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

16.    Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

17.    Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

18.    The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

19.    Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations contained in Paragraphs 4-5 and 8-18 of the First Cause of Action herein.

20.    Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or

1   user without inspection for defects therein or in any of their component parts and without

2   knowledge of the hazards involved in such use.

3        21.    Said asbestos and asbestos-containing products were defective and unsafe for their

4   intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The

5   defect existed in the said products at the time they left the possession of defendants, their

6   "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including

7   asbestosis, other lung damage, and cancer to "exposed persons," including plaintiff herein, while

8   being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and

9   dangerous for use.

10        22.    "Exposed persons" did not know of the substantial danger of using said products.

11   Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate

12   entities," and each of them, further failed to adequately warn of the risks to which plaintiff and

13   others similarly situated were exposed.

14        23.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

15   to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

16   sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

17   marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos

18   and asbestos-containing products, defendants, their "alternate entities," and each of them, did so

19   with conscious disregard for the safety of "exposed persons" who came in contact with said

20   asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and

21   each of them, had prior knowledge that there was a substantial risk of injury or death resulting

22   from exposure to asbestos or asbestos-containing products, including, but not limited to,

23   mesothelioma, lung cancer, and asbestosis.  Said knowledge was obtained, in part, from scientific

24   studies, government data, and medical data to which defendants had access, as well as scientific

25   studies performed by, at the request of, or with the assistance of, said defendants, their "alternate

26   entities," and each of them, and which knowledge was obtained by said defendants, their

27   "alternate entities," and each of them on or before 1930, and thereafter.

28        24.    On or before 1930, and thereafter, said defendants, their "alternate entities" and

    each of them, were aware that members of the general public and other "exposed persons," who

1   would come in contact with their asbestos and asbestos-containing products, had no knowledge or

2   information indicating that asbestos or asbestos-containing products could cause injury, and said

3   defendants, their "alternate entities," and each of them, knew that members of the general public

4   and other "exposed persons," who came in contact with asbestos and asbestos-containing

5   products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing

6   products was safe, when in fact said exposure was extremely hazardous to health and human life.

7        25.    With said knowledge, said defendants, their "alternate entities," and each of them,

8   opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

9   offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant,

10   re-brand, manufacture for others, package and advertise said asbestos and asbestos-containing

11   products without attempting to protect "exposed persons" from or warn "exposed persons" of, the

12   high risk of injury or death resulting from exposure to asbestos and asbestos-containing products.

13   Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high

14   risk of injury or death resulting from exposure to asbestos and asbestos-containing products,

15   defendants, their "alternate entities," and each of them, intentionally failed to reveal their

16   knowledge of said risk, and consciously and actively concealed and suppressed said knowledge

17   from "exposed persons" and members of the general public, thus impliedly representing to

18   "exposed persons" and members of the general public that asbestos and asbestos-containing

19   products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and

20   each of them, engaged in this conduct and made these implied representations with the knowledge

    of the falsity of said implied representations.

21        26.    The above-referenced conduct of said defendants, their "alternate entities," and

22   each of them, was motivated by the financial interest of said defendants, their "alternate entities,"

23   and each of them, in the continuing, uninterrupted research, design, modification, manufacture,

24   fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale,

25   inspection, installation, contracting for installation, repair, marketing, warranting, re-branding,

26   manufacturing for others, packaging and advertising of asbestos and asbestos-containing products.

27   In pursuance of said financial motivation, said defendants, their "alternate entities," and each of

28   them, consciously disregarded the safety of "exposed persons" and in fact were consciously

willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff.

27.     Plaintiffs allege that the aforementioned defendants, their "alternate entities," and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

28.     Plaintiffs further allege plaintiff's injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned defendants, their "alternate entities," and each of them and that plaintiffs cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

29.     Plaintiffs relied upon defendants', their "alternate entities'," and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, plaintiff has been injured permanently as alleged herein.

30.     As the above referenced conduct of said defendants was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons", including plaintiff who has suffered the injuries and damages previously alleged, plaintiff, for the sake of example, and by way of punishing said defendants, seek damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

///

///

## THIRD CAUSE OF ACTION

### (False Representation Under Restatement of Torts Section 402-B)

AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

31.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

32.     At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiffs' remedy

against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

33.    At all times herein mentioned, defendants, their "alternate entities," and each of them, were and/or are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos.  Said asbestos and other products containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-containing products") specifically include, but are not limited to: adhesives/tape/mastic; thermal insulation/insulating materials; insulating cement; pipecovering/block insulation; caulking/putties; cement pipe; boilers; heaters; ductwork; cloth; flooring materials; blankets; cloth; gaskets; packing; pumps; compressors; pipes; valves; engines; turbines; motors; generators; gloves/aprons; thermal paper; asbestos fiber; refractory materials; panels; boards; tubes.

34.    At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

35.    Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

36.     Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

37.     Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A," attached to plaintiffs' complaint and incorporated by reference herein.

38.     As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, the nature of which, along with the date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiffs' complaint and incorporated by reference herein.

39.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

40.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

41.     As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress

attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

42.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

43.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

44.     Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have knowledge of each of the acts set forth herein.  The specific names, job titles, positions, or other identifying offices of said individuals are necessarily in possession of defendants and full information concerning the facts relevant to this controversy and defendants, and each of them, have more knowledge or the identities of said persons than plaintiffs, herein.

45.     At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the defendants, their "alternate entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the plaintiff herein and potentially some or all of his employers, that asbestos and asbestos-containing products, were of merchantable quality, free of defects, and safe for the use for which they were

1   intended. Said misrepresentations of such material facts impacting the safety, reliability, and

2   quality of defendants' asbestos-containing products specifically included the failure to disclose

3   known or suspected hazards of working with and around said asbestos-containing products to the

4   plaintiff and others. Defendants' misrepresentations went far beyond the bounds of mere promises

5   because defendants affirmatively stated through those means more fully described herein that

6   defendants' asbestos and/or asbestos-containing products were safe and safe to use for their

7   intended uses, but they were not safe. Defendants knew or should have known at the time of their

8   misrepresentations that such representations were false; defendants knew or should have known at

9   the time of their misrepresentations that their asbestos and/or asbestos-containing products were

10  not safe or safe for their intended uses. Despite knowing of the dangers to plaintiff of working

11  with and around defendants' asbestos and/or asbestos-containing, defendants failed to disclose

12  such dangers and in fact concealed the same from plaintiff. Defendants' misrepresentations and

13  concealment of the dangers attendant to working with and around defendants' asbestos and/or

14  asbestos-containing products occurred during such periods as defendants researched,

15  manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate,

16  warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought,

17  offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

18  marketed, warranted, re-branded, manufactured for others, packaged and advertised asbestos and

19  other products containing asbestos, and more specifically as it relates to plaintiff, during those

20  periods of employment when plaintiff worked with defendants' asbestos and/or asbestos-

21  containing products as detailed in Exhibit A. The facts misrepresented regarding the safety,

22  reliability, and quality of defendants' asbestos-containing products are necessarily in possession of

23  defendants who have full information concerning the facts relevant to this controversy and

24  defendants, and each of them, have more knowledge or the facts of said misrepresentations than

25  plaintiffs, herein.

26      46.    The purchasers and users of said asbestos and asbestos-containing products, and

27  other "exposed persons," including the plaintiff and potentially some or all of his employers,

28  relied upon said representations of defendants, their "alternate entities," and each of them, *as*

*defendants, their "alternate entities," and each of them so intended,* in the selection, purchase and use of asbestos and asbestos-containing products.

47.    Said representations by defendants, their "alternate entities," and each of them, were false and untrue, and defendants knew or should have known at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including plaintiff herein.

48.    Defendants, their "alternate entities," and each of them, based on the state of scientific and medical literature, as well as their own studies and research conducted regarding the health hazards associated with working with and/or around asbestos-containing product had no reasonable basis for believing the untrue representations made to plaintiff, plaintiff's employers, and other groups and organizations with which plaintiff was affiliated, such as unions, through which plaintiff would reasonably be expected to learn of such misrepresentations.

49.    Plaintiff and others, lacking the sophistication and knowledgeable regarding the health hazards of working with and around defendants', their alternate entities, and each of them, asbestos-containing products and relied upon the said misrepresentations and were, in fact, deceived into believing that said asbestos-containing products were safe and free of defects and would not cause severe risk of injury and death.  Had plaintiff known that defendants' asbestos and/or asbestos-containing products were unsafe for their intended uses, plaintiff would not have used and/or worked around the same or taken other steps to properly safeguard his health or the health of others when working with or around defendants' and others' asbestos-containing products.

50.    The facts intentionally omitted or misstated regarding the safety, reliability, and quality of defendants' asbestos and/or asbestos-containing products were/are necessarily in possession of defendants who had/have full information concerning the facts relevant to this controversy and defendants, and each of them, had/have more knowledge of the facts of said

concealments and nondisclosures than plaintiffs, herein.

51.    As a direct and proximate result of said false representations by defendants, their "alternate entities," and each of them, the plaintiff sustained the injuries and damages herein above set forth.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Intentional Tort)

AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND ALLEGES AS FOLLOWS:

52.    Plaintiffs, by this reference, hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

53.    At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed plaintiff a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of fact which were not true and which defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned Civil Code sections.

54. Since on or before 1930, the defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiffs' First Cause of Action were and are hazardous to the health and safety of plaintiff, and others in plaintiff's position working in close proximity with such materials. The defendants, their "alternate entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time. Defendants' misrepresentations went far beyond the bounds of mere promises because defendants affirmatively stated through those means more fully described herein that defendants' asbestos and/or asbestos-containing products were safe and safe to use for their intended uses, but they were not safe. Defendants knew at the time of their misrepresentations that such representations were false; defendants knew at the time of their misrepresentations that their asbestos and/or asbestos-containing products were not safe or safe for their intended uses. Despite knowing of the dangers to plaintiff of working with and around defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers and in fact concealed the same from plaintiff. Defendants' misrepresentations and concealment of the dangers attendant to working with and around defendants' asbestos and/or asbestos-containing products occurred during such periods as defendants researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised asbestos and other products containing asbestos, and more specifically as it relates to plaintiff, during those periods of employment when plaintiff worked with defendants' asbestos and/or asbestos-containing products as detailed in exhibit A.  The mere fact that defendant made its asbestos-containing products available for purchase, use, sale, or otherwise to plaintiff and others was an intentional and affirmative fraudulent act.  With intent to deceive, falsely represent facts regarding the true hazards of working with and around asbestos-containing products, conceal the health risks associated with working in an asbestos-contaminated environment, and purposefully failing to disclosure such material facts to plaintiff, and others in plaintiff's position, and with the intent that

plaintiff and such others should be and remain ignorant of such facts with intent to induce plaintiff and such others to alter his and their positions to his detriment, injury and/or risk and in order to gain economic advantages within the market, the following acts occurred:

      a.    Defendants, their "alternate entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of plaintiff and others in plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein when the knowledge of such hazards was existing and known to defendants, their "alternate entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to plaintiff that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true and defendants, their "alternate entities," and each of them, did not believe it to be true;

      b.    Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would given general notice to the public and knowledge of the hazardous nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose such information;

      c.    Defendants, their "alternate entities," and each of them, sold the aforementioned products and materials to plaintiff's employers and others without advising plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their "alternate entities," and each of them, caused to be positively asserted to plaintiff that which was not true and that which defendants, their "alternate entities," and each of them, had no reasonable

ground for believing to be true, to wit, that it was safe for plaintiff to work in close proximity to such materials;

d.   Defendants, their "alternate entities," and each of them, suppressed from plaintiff medical and scientific data and knowledge of the results of studies including, but not limited to, the information and knowledge of the contents of the Lanza report. Although bound to disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

e.   Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to plaintiff at this time;

f.   Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities," and

each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to defendant herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead plaintiff. Such facts did mislead plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving plaintiff the true facts concerning such knowledge of danger, which defendants, their "alternate entities," and each of them, were bound to disclose;

g.   Defendants, their "alternate entities," and each of them, failed to warn plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

h.   Defendants, their "alternate entities," and each of them, failed to provide plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the plaintiff and others applying and installing such material;

i.   Defendants, their "alternate entities," and each of them, when under a duty to so disclose, concealed from plaintiff the true nature of the industrial exposure of plaintiff and knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "alternate entities," and each of them, also concealed from plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

j.   Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by plaintiff and potentially plaintiff's employers so that

said physicians could examine, diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

k.      Defendants, their "alternate entities," and each of them, failed to provide adequate information to physicians and surgeons retained by plaintiff's employers and their predecessor companies, for purposes of making physical examinations of plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

55.      Defendants, their "alternate entities," and each of them, based on the state of scientific and medical literature, as well as their own studies and research conducted regarding the health hazards associated with working with and/or around asbestos-containing product, knew that the representations made to plaintiff, plaintiff's employers, and other groups and organizations with which plaintiff was affiliated, such as unions, through which plaintiff would reasonably be expected to learn of such representations were false.

56.      Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file First Report of Occupational Injury of Illness regarding plaintiff's injuries, as required by law, and did willfully fail and omit to file report of injury and occupational disease with the State of California.  Defendants similarly intentionally failed to state and disclose on their asbestos-containing products and/or packaging the asbestos-related health risk, including risk of asbestosis and cancer, which resulted from plaintiff and others working with and around defendants' asbestos-containing products.

57.      Plaintiff was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known and plaintiff was in the class of persons to whom a duty was owed as a consumer and user of defendants' asbestos-containing products to be informed truthfully about the risks of using such asbestos-containing products.  Plaintiff and others, neither sophisticated nor knowledgeable regarding asbestos health hazards and the intentions to deceive by defendants, justifiably relied on defendants' claims and representations regarding their asbestos-containing products.  Had plaintiff known that defendants' asbestos and/or asbestos-

containing products were unsafe for their intended uses, plaintiff would not have used and/or worked around the same.

58.    Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duty to inform plaintiff about the true facts, and knowing the plaintiff did not possess such knowledge and would work with and around and ultimately breathe such material innocently, acted falsely and fraudulently and with full intent to cause plaintiff to remain unaware of the true facts and to induce plaintiff to work in a dangerous environment by failing to disclose known information regarding asbestos health hazards, all in violation of Sections 1708, 1709, 1710, and 1711 of the Civil Code of the State of California in an expectation of further sales and proceeds from the supply of defendants' asbestos-containing products.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Premises Owner/Contractor Liability)

AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C," DOES 301-450, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

59.    Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 9-16 of the First Cause of Action.

60.    At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-

business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances. The defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such alternate entity; defendants, and each of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiffs' remedy against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such alternate entity, and that each such defendant enjoys the goodwill originally attached to each such alternate entity.

61.     At all times mentioned herein, the above-listed Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed on Exhibit "A" and others where plaintiff was present. The information provided on Exhibit "A" is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, plaintiff might have been present at those or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

62.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials,  other building materials, products and toxic substances to be constructed, installed, disturbed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

63.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

64.     At all times relevant herein, plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

65.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

66.     The hazardous condition or risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises was not a known condition that plaintiff's employer was hired to correct or repair.

67.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants and each of them, remained in control of the premises where plaintiff was performing his work.

68.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants owed to plaintiff and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

69.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

70.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control

said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

71.     At all times herein mentioned, said Premises Owner/Contractor Liability Defendants, and each of them, negligently provided unsafe equipment, for the performance of the work that caused or contributed to plaintiff's injuries.

72.     Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

73.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken.  The said Premises Owner/Contractor Liability Defendants, and each of them, knew or should have known that the work required special procedures and instruction so as to be accomplished in a safe manner and avoid injury to plaintiff and others. The Premises Owner/Contractor Liability Defendants were aware or should have been aware that such special procedures and instructions were not taken nor provided.

74.     In part, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such premises owners and/or contractors' failure to take the necessary precautions.

75.     The work, actions and/or inactions of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

76.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

       a.     Failure to advise and warn of asbestos and other toxic dusts;

       b.     Failure to suppress the asbestos-containing or toxic dusts;

       c.     Failure to remove the asbestos-containing and toxic dusts through use of ventilation or other approved appropriate means;

       d.     Failure to provide adequate breathing protection, i.e., approved respirators or masks;

       e.     Failure to inspect and/or test the air;

       f.     Failure to provide proper medical monitoring, medical check-ups, and reviews, and provide reports and findings on any such check-ups or monitoring that did occur.

77.     The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises, a safe place to work, free of any dangerous conditions, and to warn of dangerous conditions are non-delegable and mandatory; said duties arise out of common law, Government Code §§830, 835, et seq, Government Code §§815.2-815.6, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

78.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, local and regional governments and agencies, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code §40200, et seq., which empowers the Bay Area Air Quality Management District and South Coast

Air Quality Management District to promulgate regulations including but not limited to BAAQMD, Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq., and related SCAQMD regulations, The National Emission Standards for Hazardous Air Pollutants, which required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

        a.     Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

        b.     Failing to segregate work involving the release of asbestos or other toxic dusts;

        c.     Failing to suppress dust using prescribed ventilation techniques;

        d.     Failing to suppress dust using prescribed "wet down" techniques;

        e.     Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

        f.     Failing to provide approved respiratory protection devices;

        g.     Failing to ensure "approved" respiratory protection devices were used properly;

        h.     Failing to provide for an on-going health screening program for those exposed to asbestos on the premises which included disclosure and/or discussion of ongoing health consequences of asbestos exposure with plaintiff;

        i.     Failing to provide adequate housekeeping and clean-up of the work place;

        j.     Failing to properly warn of the hazards associated with asbestos as required by these statutes;

k.    Failing to properly report renovation and disturbance of asbestos-containing materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401 and S.C.A.Q.M.D regulations;

l.    Failing to have an asbestos removal supervisor as required by regulation;

m.    Failing to get approval for renovation as required by statutes;

n.    Failing to maintain records as required by statute; and

o.    Failing to provide plaintiff with alternative, safe, asbestos-free work areas and/or failure to remove plaintiff from an asbestos-laden environment where ongoing exposures to asbestos increased the risk of plaintiff contracting an asbestos-related disease.

p.    Failing to apprise plaintiff of the results of any such medical monitoring of physical check-ups that occurred and the risks of contracting asbestos-related diseases.

q.

79.    Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances or statutes.

80.    At all times mentioned herein, plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

81.    In such circumstances where plaintiff was the employee or "statutory employee" of said Premises Owner/Contractor Liability Defendants as defined by the California Labor Code and related California case law interpretations, such Premises Owner/Contractor Liability Defendants owed a duty of care to prevent injury, harm, damage, or loss to plaintiff. Instead, well outside the normal risk of plaintiff's employment, said Premises Owner/Contractor Liability Defendants caused plaintiff to be exposed to asbestos-containing products and other airborne toxic asbestos, fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos and toxic products contamination, as well as the known and recognized injurious health consequences of repeated and reoccurring exposures by plaintiff to asbestos-containing products, materials, and other toxic asbestos substances, and plaintiff's exposure to asbestos-containing products and the concurrent injury to his person was aggravated by the employer's fraudulent concealment of the existence of hazardous asbestos-containing products exposure and concurrent

1  injury and its connection with plaintiff's employment and job duties. Moreover, plaintiff's said

2  Premises Owner/Contractor Liability Defendants employers illegally failed to obtain and maintain

3  proper and sufficient workers' compensation insurance or failed to obtain workers' compensation

4  insurance which covered plaintiff's injuries, damages, losses, or harms, such that the California

5  Labor Code sections 3600, 3700, *et seq.*, permit recovery in Superior Court.

6      82.    At all times mentioned herein, said Premises Owner/Contractor Liability

7  Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should

8  have known, that the premises that were in their control would be used without knowledge of, or

9  inspection for, defects or dangerous conditions, that the persons present and using said premises

10 would not be aware of the aforesaid hazardous conditions to which they were exposed on the

11 premises, and that such persons were unaware of the aforesaid violations of codes, regulations and

12 statutes.

13     83.    Said Premises Owner/Contractor Liability Defendants knew of the harmful

14 exposures to asbestos sustained by plaintiff at, by and/or through the actions and/or inactions of

15 their own employees or others under the direct and immediate instruction, control and/or

16 supervision of said Premises Owner/Contractor Liability and said Premises Owner/Contractor

17 Liability Defendants concealed and/or failed to disclose to plaintiff the harmful effects and bodily

   injuries suffered by plaintiff as a result of such exposures to asbestos.

18     84.    As a legal consequence of the foregoing, plaintiff developed an asbestos-related

19 illness, which has caused great injury and disability as previously set forth, and plaintiff has

20 suffered damages as herein alleged.

21     WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

22 each of them, as hereinafter set forth.

23 **DAMAGES**

24 Plaintiffs pray judgment against defendants and each of them as follows:

25 For special damages according to proof;

26 For general damages according to proof;

27 For medical expenses according to proof;

28 For loss of income according to proof;

1     For punitive damages according to proof;

2     For plaintiffs' costs of suit herein; and,

3     For such other further relief as this Court and the law deems just and proper.

4

5  Dated:  May 2, 2011             KELLER, FISHBACK & JACKSON LLP

6

7               By

8                    J. Bruce Jackson, Esq.
                      Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "A"

2

Plaintiff, RICHARD MILLER, suffered from asbestos-caused diseases, including but not limited to, lung cancer and asbestosis.

3

4

Plaintiff, RICHARD MILLER, was exposed to asbestos of varied types and sources during his employment, which may have included, but is not limited to: boilers; insulation/insulating

5
materials; gun plastic cement; sheetrock and joint/taping compound; acoustical materials; asbestos fiber product; cloth; cement pipe; valves; pumps; generators; compressors; gaskets;

6
packing; wire/cable; turbines; evaporators; distillers; engines; motors; and other materials containing asbestos currently unknown or unspecified by plaintiff.

7

8

Plaintiff, RICHARD MILLER, and others in his immediate vicinity also performed automotive repair and maintenance to a variety of make and models of vehicles between 1954

9
and 1996 both personally and professionally. Such repair and maintenance may have included, but was not limited to: inspect, remove and install asbestos-containing friction products on

10
asbestos containing automobiles and trucks, such as brakes and clutches, and related component parts, engines; inspect, remove and install asbestos-containing automotive gaskets and gasketing

11
materials; cleanup using compressed air, push brooms, dry cloths and other tools after performing such tasks; and other vehicle repair and maintenance tasks.

12

13

Plaintiff, RICHARD MILLER, was also exposed to asbestos containing materials while performing and in close-proximity to multiple home repairs and renovations from 1952 to 1997.

14
Plaintiff, RICHARD MILLER, was exposed to following asbestos products including, but not

15
limited to: taping and joint/taping compound, insulation, asbestos-cement, wallboard, drywall materials and other asbestos containing materials to perform this work causing him to be exposed

16
to respirable asbestos, which he breathed.

17

Plaintiff, RICHARD MILLER, was also exposed to asbestos dust that was carried into his work areas on the person and clothing of co-workers and others. While performing his regular job

18
duties his person and clothing were contaminated with asbestos dust. Plaintiffs allege and believe

19
that RICHARD MILLER's exposure to asbestos occurred at job sites including, but not limited to, the following:

20

| | |
|---|---|
| EMPLOYER: | United States Navy |
| DATE: | 10/1957 to 1978 |
| JOB TITLE: | Machinist Mate (Senior Chief); Naval Advisor |
| SITE: | Various locations including, but not limited to: Harry E. Hubbard (DD-748); A.A. Cunningham (DD-752); Chemung (AO-30); USS Duncan (DDR-874); U.S.S. Arlington (AGM-R2); Vietnam; Monterey, CA; San Bernardino, CA, Long Beach, CA, San Francisco Bay Area, CA |

21

22

23

24

25

| | |
|---|---|
| EMPLOYER: | United States Navy Reserve |
| DATE: | 1978 to 1987 |
| JOB TITLE: | Machinist Mate; Naval Advisor |
| SITE: | Various locations |

26

27

28

1
2     EMPLOYER:        Earl Erne Electrician
      DATE:            1978 to 1979
3     JOB TITLE:       Junior Electrician
      SITE:            Various locations in Riverside and San Bernardino County
4
5     EMPLOYER:        US Air Force
      DATE:            1978; 1983 and 1986
6     DURATION:        1 to 3 years
      JOB TITLE:       Boiler Maintenance Mechanic
7     SITE:            March Air Base, Riverside, CA
8     EMPLOYER:        Riverside Cement Company
      DATE:            1978 to 1992
9     JOB TITLE:       Pipefitter and Watertender
      SITE:            Riverside, CA
10
11    Plaintiffs' investigation and discovery are continuing.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## EXHIBIT "B"

2

3   AIR AND LIQUID SYSTEMS CORP. successor by merger to BUFFALO PUMPS INC.;

4   CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-in-interest to
    and formerly known as VIACOM, INC. and WESTINGHOUSE ELECTRIC CORPORATION;

5

6   CARRIER CORPORATION;

7   FOSTER WHEELER LLC;

8   GENERAL ELECTRIC COMPANY;

9   GOULDS PUMP, INC.;

10  WARREN PUMPS, LLC;

11  DOES 1-300

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "C"

2

3   CBS CORPORATION, a DELAWARE CORPORATION, individually, successor-in-interest to
4   and formerly known as VIACOM, INC. and WESTINGHOUSE ELECTRIC CORPORATION;

5   FOSTER WHEELER LLC;

6   GENERAL ELECTRIC COMPANY;

7   DOES 301-450

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28