# Exhibit K

1

THE HONORABLE EDUARDO ROBRENO

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF PENNSYLVANIA
9

10   IN RE: ASBESTOS PRODUCTS LIABILITY      )   MDL DOCKET NO. 875
     LITIGATION (NO. VI)                      )
11   _____)   PAED NO. 2:11-cv-66270

12                  This document relates to:

13              UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF WASHINGTON
14                      AT SEATTLE

15   LOLA and MICHAEL BOUCHARD, wife and    )
     husband,                               )
16                                          )   NO. 2:11-cv-00458 RAJ
                     Plaintiffs,            )
17                                          )   DEFENDANT LOCKHEED SHIPBUILDING
                                            )   COMPANY'S OPPOSITION TO
18          v.                              )   PLAINTIFFS' MOTION FOR REMAND
                                            )
19   CBS CORPORATION, et al.,               )
                                            )
20                   Defendants.            )

21                  I.    **INTRODUCTION**

22          Plaintiffs have filed a Motion for Remand and Motion to Expedite Remand.  (Dkt. #4.)

23   Defendant Lockheed Shipbuilding Company ("Lockheed Shipbuilding") has already responded

     to the motion for expedited action.  (Opposition to Plaintiffs' Motion to Expedite Remand, Dkt.
24
     #5.)  Plaintiffs also purported to incorporate by reference a motion for remand, which they filed
25
     in the Western District of Washington and attached as a declaration exhibit herein.  (Dkt. #4 at
26

7:8-9.)  Lockheed Shipbuilding questions whether this incorporation by reference constitutes a proper filing, especially where Plaintiffs do not appear to have complied with this Courts Local Rule 5.1.2, and therefore objects to the same.  In the event the Court decides to consider Plaintiffs' filing, however, Lockheed Shipbuilding offers this response.

Congress and the U.S. Supreme Court long ago acknowledged that persons sued for actions taken while performing the federal government's business are entitled to have the claim heard in a federal forum.  To this end, Congress implemented "federal officer removal," and the Supreme Court recognized the doctrine of "derivative sovereign immunity" and the "government contractor defense."    Plaintiffs proffer two grounds for purporting to deprive defendant Lockheed Shipbuilding of these protections.  Neither has any merit.

First, Plaintiffs contend that Lockheed Shipbuilding's removal was untimely.  According to Plaintiffs, Lockheed Shipbuilding should have removed this case within 30 days after receiving Plaintiffs' interrogatory response stating that Plaintiff Lola Bouchard's former husband worked on unspecified "ships" while employed by Lockheed Shipbuilding.  Such generic information, however, does not give rise to federal officer removal jurisdiction since Lockheed Shipbuilding repaired and constructed ships for both the federal government and non-federal entities.  (Balch Decl.,[1] ¶3.) Rather, Lockheed Shipbuilding properly and timely removed this case to federal court within 30 days of learning that Plaintiffs' allegations relate to the construction and repair of *Military* ships.  A defendant must obtain this quantum of knowledge before it can remove on the grounds of federal officer jurisdiction.

Second, Plaintiffs argue that federal officer removal jurisdiction does not exist because Lockheed Shipbuilding "fails to establish a 'causal nexus' between plaintiffs' claims and the acts performed under color of federal office."  Plaintiffs, however, do not and cannot dispute that

---

[1] Plaintiffs have filed the Declaration of Peter D. Balch ("Balch Decl.") at p. 270 of Exhibit B to the Declaration of Janet L. Rice in Support of Plaintiffs' Motion for Remand and Motion to Expedite Remand ("Rice Declaration").

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 2

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1  Lockheed Shipbuilding constructed and repaired Military ships under the direction of the federal

2  government. In so doing, Lockheed Shipbuilding acted both *as* the government in performing a

3  government function and *for* the government in complying strictly with the government's

4  detailed specifications. It is precisely this conduct for which Plaintiffs have sued Lockheed

5  Shipbuilding, thereby warranting federal jurisdiction.

6  **II.   STATEMENT OF RELEVANT FACTS**

7  **A.   LOCKHEED SHIPBUILDING REMOVED THIS CASE WITHIN THIRTY DAYS
8  AFTER DISCOVERING THAT MILITARY SHIPS WERE AT ISSUE**

9  Plaintiffs allege that plaintiff Lola Bouchard's first husband, Ron Berger, worked with

10  asbestos-containing products at Lockheed Shipbuilding in the 1970s. (André Removal Decl.[2] at

11  ¶ 2(B).) Plaintiffs' Complaint, however, does not identify the types of ships on which Mr.

12  Berger worked and, more to the point, does not state whether such ships were built for the

13  federal government or some other entity. (*See id.*) Plaintiffs' answers to Lockheed

14  Shipbuilding's interrogatories similarly are devoid of any information regarding the types of

15  ships at issue, stating only that Mr. Berger "was exposed to asbestos at Lockheed while ships

16  were repaired or newly constructed by Lockheed." (Rutzick Decl.,[3] Exh. 2 at 4:17-18.)

17  Accordingly, it is undisputed that neither Plaintiffs' Complaint nor their interrogatory responses

18  provide any basis for federal officer removal jurisdiction.

19  It is further undisputed that Lockheed Shipbuilding first received notice that Mr. Berger

20  worked on Lockheed Shipbuilding-manufactured *Military* vessels on February 22, 2011, when

21  witness David Ludden testified at deposition that Mr. Berger worked on two such Military ships

22  – the USS Frank Cable and the USCGC Polar Star. (André Removal Decl., Exh. 6 at 13:21-

23  14:23.) At that point, the case became removable.

24
25  [2] For the Court's reference, the Declaration of Robert G. André in Suppport of Removal of Action ("André Removal Decl."), previously filed in the Western District of Washington, is filed herewith.

26  [3] Plaintiffs have filed the Declaration of William Rutzick ("Rutzick Decl.") at p. 16 of Exhibit B to the Rice Declaration.

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 3

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

**B.    PLAINTIFFS RAISE MULTIPLE THEORIES OF LIABILITY**

Despite Plaintiffs' assertion to the contrary, their Complaint asserts multiple liability theories against Lockheed Shipbuilding, encompassing virtually all aspects of its operations. According to Plaintiffs, Lockheed Shipbuilding:

- "negligently failed to provide a safe place to work;"
- "negligently failed to take corrective action to eliminate a dangerous condition;" and
- "negligently failed to provide sufficient and adequately trained personnel throughout its Shipyards and negligently failed to warn Ronald Berger or plaintiff of the hazards of asbestos."

(*Id.*, Ex. 1 at ¶¶ 12-14.)

Beyond their negligence allegations, Plaintiffs also assert strict and negligent products liability claims against Lockheed Shipbuilding:

> Plaintiffs' claims against each defendant are based inter alia on ***strict product liability . . . including both design defect and failure to provide warnings*** and also based on negligence.

(*Id.* at ¶ 17 (emphasis added).)

Plaintiffs similarly allege a general strict liability theory against Lockheed Shipbuilding:

> [B]ecause of the nature of the ***material, substances and/or operations*** involved at its Shipyards, during relevant periods of time, working there was an ***abnormally dangerous activity***, with a high degree of risk for substantial harm . . . . Because the activities at its Shipyards were abnormally dangerous, defendant is ***strictly liable*** for the injuries to plaintiff.

(*Id.* at ¶ 15 (emphasis added).)

Further, Plaintiffs' responses to Lockheed Shipbuilding's interrogatories reiterate their products liability claim:

> Ms. Bouchard was exposed during 1976 to 1979 [sic] to asbestos from equipment or ***products that were designed, manufactured, sold or distributed by Lockheed*** . . . .

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 4

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   (Rutzick Decl., Ex. 2 at 4:13-15 (emphasis added).)  In short, despite Plaintiffs' assertions to the

2   contrary, their claims against Lockheed Shipbuilding far exceed a mere allegation of negligent

3   failure to warn.

**C.**   **LOCKHEED SHIPBUILDING PERFORMED A GOVERNMENT FUNCTION IN STRICT COMPLIANCE WITH GOVERNMENT-APPROVED SPECIFICATIONS**

From 1976 to 1979, the years Mr. Berger allegedly worked at Lockheed Shipbuilding, Lockheed Shipbuilding constructed and repaired several Military vessels.  Lockheed Shipbuilding performed this work, a uniquely government function, pursuant to validly conferred authority from the Government.  (André Removal Decl., Ex. 8[4] at ¶ 7; Balch Decl., at ¶¶ 3-6, Exhs. A, B, C.; Horne Remand Dec.[5])  Lockheed Shipbuilding constructed and repaired these ships not only pursuant to government contracts but also in strict compliance with detailed specifications prepared and approved by the Government.  (See, e.g., Horne Remand Dec. at ¶¶ 4, 5, 8, 11, 12, 17; Balch Decl., ¶¶ 3-6, Exhs. A-E.)

These government specifications controlled the types of materials, including insulation, that were used in building the vessels.  (See, e.g., Balch Decl., ¶¶ 3-5, Exhs. A-C; André Removal Decl., Ex. 8 at ¶¶ 6, 8, 11, 12.)  The specifications also covered the nature of any communication affixed to materials and equipment.  The Navy retained control over warnings on equipment and accompanying written materials.  (André Removal Decl., Ex. 8 at ¶¶ 13-16.)

### III.   ARGUMENT

**A.**   **Federal Officer Removal Jurisdiction Is Broadly Construed**

The Ninth Circuit instructs that there is a "clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to

---

[4] Exhibit 8 is the Declaration of Ret. Admiral Roger B. Horne in Support of Notice of Removal of Action.

[5] Plaintiffs have filed the Declaration of Ret. Admiral Roger B. Horne in Support of Defendant Lockheed Shipuibiling Company's Opposition to Plaintiffs' Motion for Remand ("Horne Remand Decl.") at p. 263 of Exhibit B to the Rice Declaration.

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 5

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

interpret § 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). The *Durham* Court's holding is consistent with prior mandates that § 1442 not be given a "narrow" or "grudging" interpretation. *See id.* at 1252 (*quoting Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). "The right of removal is absolute for conduct performed under color of federal office." *Durham*, 445 F.3d at 1252. "If the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 782 (E.D. Penn. 2010) (citing *Durham*, 445 F.3d at 1253).

This Court recently explained the broad mandate in favor of federal officer removal jurisdiction as follows: "[A] defendant is entitled to removal under Section 1442(a)(1) where the defendant identifies facts which, *viewed in the light most favorable to the defendant*, entitle him to a complete defense." *Hagen*, 739 F.Supp.2d at 778 (emphasis added). "These facts may be cited in the answer, the notice of removal or in the response to a motion for remand." *Id.* at n.8. When analyzing federal officer removal jurisdiction, the court "is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated." *Id.* at 782.[6]

**B.   Lockheed Shipbuilding Timely Removed This Case To Federal Court**

    1.    The 30-day removal clock started running when Lockheed Shipbuilding learned that Ron Berger allegedly worked on Military ships at Lockheed Shipbuilding

When a case as stated in the initial complaint is not removable on its face, a defendant may remove it to federal court within thirty days after receipt "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . ." 28 U.S.C. § 1446(b). "Notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through

---

[6] Citing *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992), Plaintiffs complain that Lockheed Shipbuilding did not submit *evidence* with its Removal. Setting aside the fact that *Gaus* addressed diversity – not federal officer – removal jurisdiction, the *Gaus* decision imposes no requirement that a removing party submit evidence with its Removal. Rather, *Gaus*, like *Hagen*, requires only that a removing party "set forth" facts in its Removal supporting its assertion of removal jurisdiction. *Id.*

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 6

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1  subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life and Cas. Co.*,

2  425 F. 3d 689, 694 (9th Cir. 2005); *accord. Foster v. Mutual Fire Marine & Inland Ins. Co.*, 986

3  F.2d 48, 53 (3rd Cir. 1993), *rev'd on other grounds by Murphy Bros., Inc. v. Michetti Pipe*

4  *Stringing, Inc.*, 526 U.S. 344 (1999). The proper inquiry "is *not what the defendant knew, but*

5  *what the relevant document said*…. [The] statute focuses on *what the document 'set [ ] forth'*

6  *rather than on what a defendant actually learned from its receipt.*" *Foster*, 986 F.2d at 53

7  (quoting *Rowe v. Marder*, 750 F. Supp. 718, 721 (W.D. Penn. 1990)) (emphasis added; alteration

8  in original). Here, contrary to Plaintiffs' argument, nothing within the "four corners" of their

9  interrogatory answers gave notice that Plaintiffs sought liability against Lockheed Shipbuilding

10  for actions taken pursuant to a federal officer's directions.

11      Without such information, the case was not removable. The 30-day removal clock does

12  not start running until a defendant receives facts to support each jurisdictional element. *See*

13  *Durham*, 445 F.3d at 1251. Lockheed Shipbuilding must therefore have sufficient information to

14  show: (a) that it acted under the direction of a federal officer; (b) that it can raise "a colorable

15  federal defense"; and (c) that there is a causal nexus "between the charged conduct and asserted

16  official authority." *Jefferson County v. Acker*, 527 US 423, 431 (1999); *see also* 28 U.S.C. §

17  1442(a)(1); *Durham*, 445 F.3d at 1251.

18      In *Durham*, the Ninth Circuit established the operative piece of information a defense

19  contractor must possess to satisfy the latter two elements of federal officer removal jurisdiction

20  in a case alleging asbestos personal injury: *identification of Military products*. *See Durham*,

21  445 F.3d at 1251. In *Durham*, the Ninth Circuit held that Lockheed Martin Corporation timely

22  removed a case within thirty days after receiving interrogatory responses identifying a Military

23  aircraft model for the first time.

24            Until [the plaintiff] revealed *which aircraft* he had worked on during his

25            [military] career, Lockheed couldn't assert either that its actions were
          taken pursuant to a federal officer's directions, or that it had a colorable

26            federal defense. Lockheed, like other federal military contractors,

1    performs some activities on military bases that are protected by federal
2    contractor immunity, and others that are not.

3    *Id.* (emphasis added).

4        Similarly, this Court recently ruled that an asbestos defendant's time for Federal Officer

5    removal does not begin running until the defendant learns that a federal officer is involved. *See*

6    *In re Asbestos Products Liability Litigation (No. VI) ("Barnes")*, 2011 WL 921647, at *1-*2

7    (E.D. Penn.). The plaintiff's complaint identified three potential exposure sites, including the

8    Long Beach Naval Shipyard. at *2. And it identified various types of asbestos-containing

9    products to which the decedent was allegedly exposed, including insulation and electronic

10   equipment, "which could arguably implicate Defendant's turbines." *Id.* But this Court ruled that

11   the removal clock did not begin ticking until the defendant received the plaintiff's discovery

12   responses, which specifically stated that the decedent was exposed to asbestos in turbines while

13   in the U.S. Navy. *Id.*

14       Likewise, here, deposition testimony revealing that Ron Berger worked on Military ships

15   at Lockheed Shipbuilding marked the first moment Lockheed Shipbuilding possessed the

16   necessary information to seek removal. The prior information Plaintiffs had supplied "lacked the

17   'substantial degree of specificity' needed to establish the existence of a federal defense." *Id.*

18   (quoting *Foster*, 986 F.2d at 53).

19       2.   <u>Lockheed Shipbuilding's anticipatory assertion of a federal defense did
              not render the case removable in the absence of a factual basis for removal</u>

20       Plaintiffs' timeliness argument relies on the false premise that a defendant can assert

21   federal officer removal jurisdiction before the plaintiff provides any indication that the case

22   involves a federal officer. Plaintiffs point to the fact that Lockheed Shipbuilding asserted a

23   "Government Contractor Defense" in its answer to their complaint and extrapolate that Lockheed

24   Shipbuilding must have known that federal jurisdiction was proper at that time. The Honorable

25   Richard A. Jones, of the Western District of Washington, agreed with this argument, and

26   Plaintiffs have asked this Court to follow the reasoning set forth in Judge Jones's moot and

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 8

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   invalid order. The Court should decline to follow the faulty reasoning in that order for several

2   reasons.

3       At the outset, as Lockheed Shipbuilding has already explained, Judge Jones's remand

4   order was void for lack of jurisdiction when it was entered. (*See* Dkt. #5.) The Judicial Panel on

5   Multidistrict Litigation's Transfer Order was filed in this Court on May 23, 2011 and therefore it

6   was effective <u>one day before</u> Judge Jones's order was filed. *See* 28 USC § 1407(c)(ii); Panel

7   Rules 2.1(d), 7.1(h); *In re Baycol Products Liability Litigation*, 269 F.Supp.2d 1376, 1377

8   (JPML 2003). Plaintiffs have recently submitted this Court's May 24, 2011 order, which

9   according to Plaintiffs suggested that the transfer became effective that same day, and have

10  claimed that this somehow shows that Judge Jones still had jurisdiction when he entered his

11  order. (*See* Dkt. #7.) There is no basis in law or fact for this argument. Plaintiffs have not

12  explained how this Court's order could trump the court rule and the federal statute which both

13  say that a Transfer Order becomes effective when it is *filed* in the transferee court. *See* 28 USC §

14  1407(c)(ii); Panel Rule 2.1(d). Nor have they offered any evidence that Judge Jones's order was

15  filed before this Court's May 24 order, when Judge Jones's order was entered on the same day

16  but at 2:34pm Pacific Time, 34 minutes after this Court closed for the day. (*See* Dkt. #5 at p.

17  30.) Consequently, the Court should disregard Plaintiffs' frivolous argument.

18      Further, with all due respect to Judge Jones, his timeliness analysis was simply wrong. In

19  responding to Plaintiffs' original motion, Lockheed Shipbuilding explained that, in addition to its

20  work on federal ships, it performed work for non-federal governmental entities to which a

21  government contractor defense might apply but federal officer jurisdiction would not. (*See*

22  Balch Decl., ¶3.) Thus, the fact that Lockheed Shipbuilding asserted the government contractor

23  defense in its answer did not indicate federal jurisdiction. Judge Jones rejected this argument

24  and, in so doing, rewrote the plain language of Lockheed Shipbuilding's answer and

25

26

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 9

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

superimposed the word "federal" into an affirmative defense that said nothing about federal jurisdiction. Judge Jones relied on two flawed arguments to arrive at this conclusion.

First, Judge Jones decided that Lockheed Shipbuilding's answer could not have meant what it said – i.e. a general expression of the government contractor defense, not limited to federal contracts – because he was not personally aware of any authority for a government contractor defense that applied to contracts with any entity other than the United States. This was procedurally inappropriate, given that nothing in Plaintiffs' remand motion put the burden on Lockheed Shipbuilding to justify the merits of its non-federal affirmative defenses. For the record, however, the debate over whether a government contractor defense can apply to contracts with non-federal governmental entities has been ongoing for decades. *See, e.g., Jackson v. Alert Fire and Safety Equipment, Inc.*, 567 N.E.2d 1027 (Ohio 1991); *Hunt v. Blasius*, 74 Ill.2d 203, 23 Ill.Dec. 574 (1978); *Beaver Valley Power Co. v. National Engineering & Contracting Co.*, 883 F.2d 1210 (3rd Cir. 1989); *McDermott v. TENDUN Constructors*, 211 N.J. Super. 196, 511 A.2d 690 (App. Div. 1986); *Smith v. Louis Berkman Co.*, 894 F. Supp. 1084 (W.D. Ky 1995); *Price v. Tempo, Inc.*, 603 F. Supp. 1359 (E.D. Penn. 1985). If Plaintiffs believe the defense is inapplicable here, they are welcome to move for partial summary judgment. But it is clearly improper for a judge to second-guess a defendant's assertion of an affirmative defense – without any briefing or compliance with the mandatory due-process protections that govern dispositive motions – merely on the ground that he has never heard of it.

Second, Judge Jones claimed that Lockheed Shipbuilding defined the government contractor defense as a federal defense in its Notice of Removal. This was irrelevant. No one disputes that the government contractor defense can be asserted as a federal defense. That Lockheed Shipbuilding referred to it as such when invoking federal jurisdiction is unremarkable.

Moreover, the remand order wrongly assumed that the assertion of a federal defense in a party's answer could somehow render the case removable. Judge Jones wrote that Lockheed

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 10

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

Shipbuilding "could not have legitimately asserted a government contractor defense in September 2010 without some belief that the liability at issue in this case related to work conducted pursuant to federal contract." Even if this were true (it is not), it would still miss the point. The question is not what Lockheed Shipbuilding knew, but what Plaintiffs' complaint said. *See Harris*, 425 F. 3d at 694; *Foster*, 986 F.2d at 53.

Judge Jones ignored the "four corners" rule, which both the Ninth and the Third Circuits have adopted, and cited instead to *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773 (9th Cir. 1994). But *Eyak* is easily distinguished on its facts. In *Eyak*, the Ninth Circuit held that a defendant's removal was untimely because the defendant had received an "other paper" rendering the case removable more than thirty days before removing the case to federal court. *See id.* at 782. The assertion of a federal defense in defendant's answer merely was "further evidence" that the defendant had notice of the federal nature of plaintiff's claims, but was not alone the basis for finding removal untimely. *Id.* at 783.

Plaintiffs read *Eyak* too broadly. To the extent it can be read as supporting the broad-sweeping proposition for which Judge Jones cited it (that the removal clock starts ticking as soon as a defendant asserts an affirmative defense indicating "some belief" that a federal contract might be at issue), it was overruled by *Harris*, in which the Ninth Circuit adopted the "four corners" rule: *"[W]e will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when." Harris*, 425 F. 3d at 695 (quoting *Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)) (emphasis added; alteration in original). It also conflicts with this Court's recent statement "that the analysis for determining whether the four corners of the pleading is sufficient is an objective one: *'the issue is not what the defendant knew, but what the relevant document said.'" Barnes, supra* at *1 (emphasis added).

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 11

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1    By focusing on what Lockheed Shipbuilding's affirmative defense might indicate about

2 its subjective knowledge, Plaintiffs purport to hold a mini-trial about who knew what and when.

3 But Lockheed Shipbuilding could not have known that Plaintiffs were claiming an asbestos

4 exposure linked to a federal officer, until they presented deposition testimony indicating that Mr.

5 Berger worked on Military vessels at Lockheed Shipbuilding.  Under the objective test, that was

6 when the case became removable, and Lockheed Shipbuilding removed it within thirty days.

7 Plaintiffs' timeliness argument has no merit.

8 **C.    Lockheed Shipbuilding Has Met All Elements of Federal Officer Removal**

9    Lockheed Shipbuilding has satisfied all three elements for federal officer removal as

10 established in *Mesa*.  With respect to Plaintiffs' claims, Lockheed Shipbuilding was acting under

11 the direction of a federal officer or agency, it asserts two colorable federal defenses, and a causal

12 nexus exists between the alleged conduct and Plaintiffs' claims.  *See Fung v. Abex Corp.*, 816 F.

13 Supp. 569, 571-72 (N.D. Cal. 1992) (citing *Mesa,* 489 U.S. at 134-35).    Federal officer

14 jurisdiction therefore exists.

15    1.    Lockheed Shipbuilding was acting under the direction of a federal officer

16    The "acting under" element of federal officer removal is satisfied where a government

17 contractor manufactures products under the authority of a federal officer or agency that wields

18 direct control over the product's manufacture.  *Fung v. Abex Corp.,* 816 F.Supp. 569, 572 (N.D.

19 Cal. 1992).  Here, Lockheed Shipbuilding was acting under the direction of a federal officer or

20 agency, as evidenced by the detailed contracts signed by federal officers, the ongoing

21 communications with the federal government during the shipbuilding process, and the level of

22 control the government maintained over materials that would be incorporated into each ship's

23 construction.  (*See, e.g.*, Balch Decl. at Exhs. A-C; André Removal Decl., Ex. 8 at ¶¶ 4-17.)

24 Indeed, not only did the Military exert direct control over the design and manufacture of the

25 subject vessels, the Military supplied to Lockheed Shipbuilding a substantial quantity of

26

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 12

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   equipment that the Military itself required in the vessels. (*See, e.g.,* Balch Decl., Exh. B.)

2   "Government contractors fall within the terms of the federal officer removal statute, at least

3   when the relationship between the contractor and the government is an unusually close one

4   involving detailed regulation, monitoring and supervision." *Watson v. Philip Morris Cos., Inc.,*

5   551 U.S. 142, 153 (2007). The relationship between Lockheed Shipbuilding and the

6   Government with respect to Military shipbuilding and ship-repair activities is precisely the type

7   of "close" relationship contemplated by the Supreme Court in *Watson.*

8         2.   <u>Lockheed Shipbuilding Raises Colorable Federal Defenses</u>

9         Lockheed Shipbuilding asserts two separate and independent federal defenses to

10   Plaintiffs' claims: (1) derivative sovereign immunity and (2) the government contractor defense.

11

12         *a.*     *To Establish a Colorable Defense, Lockheed Shipbuilding Must Demonstrate Only That Its Federal Defense Is Plausible and Not Frivolous*

13

14         Despite Plaintiffs' assertions to the contrary, Lockheed Shipbuilding need only identify

15   facts showing that the asserted defense is *plausible.* The law does not require a party removing

16   based on federal officer jurisdiction virtually to "win his case before he can have it removed."

17   *Jefferson County v. Acker,* 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan,* 395 U.S.

18   402, 409 (1969)). Explaining why courts must reject a "narrow, grudging interpretation" of the

19   colorable federal defense standard, the United States Supreme Court stated that "*one of the most*

20   *important reasons for removal is to have the validity of the defense of official immunity tried*

21   *in federal court.*" *Jefferson,* 527 U.S. at 431 (emphasis added). Thus, "[t]he question is not

22   whether defendants' claimed defense is meritorious, but only whether a colorable claim to such a

23   defense has been made." *Fung,* 816 F.Supp. at 573.

24         As this Court recently explained:

25             While the Court must require that the facts identified by the defendant support the federal defense, ***the Court is not called upon at this***

26             ***preliminary stage to pierce the pleadings*** or dissect the facts stated. Nor

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 13

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1
2
3

> is it the Court's function at this stage to determine credibility, weigh the quantum of evidence, or discredit the source of the defense . . . . It is the sufficiency of the facts stated – not the weight of the proof presented – that matters.

4   *Hagen*, 739 F.Supp.2d at 782-83 (emphasis added).

5
6
7
8
9
10
11
12
13

Indeed, the Court has rejected other court decisions granting remand based on "insufficiency of the evidence" arguments such as those posed by Plaintiffs in the instant motion. "Upon review of the many thoughtful opinions and applying the Supreme Court's clear teaching that a colorable defense need not be proven at this stage of the litigation due to the broad removal right the statute creates, the Court declines to follow those courts that have seemingly required a heightened showing of a colorable federal defense." *Id.* at 781. Thus, "a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Id.* at 783.

14
15

> b.  *Lockheed Shipbuilding asserts a colorable derivative sovereign immunity defense*

16
17
18

It is "well-settled law that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).

19
20
21

> Sovereign immunity exists because it is in the public interest to protect the exercise of certain governmental functions. This public interest remains intact when the government delegates that function down the chain of command. As a result, courts define the scope of sovereign immunity by the nature of the function being performed.

22
23
24
25
26

*Id.* Designing, manufacturing and maintaining the means by which the Government provides its national defense is the exact type of Government function that is entitled to protection. National security is entitled to protection when that function has been delegated to a private company such as Lockheed Shipbuilding. *See, e.g., UNC Lear Services, Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 217 (4th Cir. 2009) ("maintaining an air defense system is a . . . sovereign act.").

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

In *Yearsley*, a private construction company built dikes that eroded the plaintiff's land. The United States Supreme Court, finding that the construction company was entitled to derivative sovereign immunity, held that because the construction company had acted within the scope of its valid contract with the Government, the construction company's acts were "the act[s] of the government." *Yearsley*, 309 U.S. at 21-22 (internal quotation omitted). Courts continue to recognize this protection:

> [P]ursuant to sovereign immunity, a private company which contracts with the federal government to perform the duties of the government will not be held liable for its actions on behalf of the government.

*City of Worcester v. HCA Mgmt. Co., Inc.*, 753 F. Supp. 31, 37-38 (D. Mass. 1990) *citing Yearsley*.

There are three defined elements to the defense of derivative sovereign immunity: 1) a party acting with validly conferred authority, 2) who has not taken actions beyond that authority, and 3) who has not independently caused harm by tortious conduct. Once these elements are satisfied, the government contractor is entitled to the same immunity that would be afforded the Government. *See id.* at 38; *see also Yearsley*, 309 U.S. at 20-21. *Yearsley* remains good law and has never been eliminated as an independent defense. *See, e.g., Boyle*, 487 U.S. at 506; *United States v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1146 (9th Cir. 2004); *Butters*, 225 F.3d at 466; *Carley v. Wheeled Coach*, 991 F.2d 1117, 1123 (3rd Cir. 1993).

In manufacturing Military vessels for the national defense, Lockheed Shipbuilding acted solely pursuant to authority delegated to it by the United States Government. Put another way, all aspects of design, manufacture, and use of Military vessels are Government functions, which in part were delegated to Lockheed Shipbuilding. Throughout the Cold War, the Military contracted with Lockheed Shipbuilding for the manufacture and purchase of such vessels, including the vessels at issue in this case, and the Military mandated that production of such equipment conform to its specifications. (*See* Balch Decl. at ¶¶ 3-7; André Removal Decl., Ex.

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 15

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

8 at ¶¶ 5-17.)   The Military not only instructed Lockheed Shipbuilding on the design and manufacture of the subject vessels, it supplied Lockheed Shipbuilding with a substantial quantity of equipment for installation on such vessels.  (*See* Balch Decl. at ¶ 4, Exh. B.)   It cannot be maintained that the provision of war-time material – especially Military warships – is anything other than a high governmental function in which there exists the strongest of public interests.  Thus, Lockheed Shipbuilding unquestionably was "performing governmental functions pursuant to contractually delegated authority." *Butters*, 225 F.3d at 466.

Moreover, the authority to manufacture and repair naval vessels was validly conferred pursuant to the contracts entered into by Lockheed Shipbuilding and the Government. *See id*; *Yearsley*, 309 U.S. at 21-22; Balch Decl. at ¶¶ 3-6, Exhs. A-C.  Lockheed Shipbuilding took no actions in the construction or repair of the naval vessels that went "beyond the authority delegated to it" by the Military; nor did it commit any tortious act in executing the Government's will. *City of Worcester*, 753 F. Supp. at 38; Balch Decl. at ¶¶ 3-7.  Lockheed Shipbuilding is thus deemed to have stepped into the Government's shoes when it constructed and repaired Military ships, indisputably a government function, and is entitled to derivative sovereign immunity.

Plaintiffs' only argument regarding derivative sovereign immunity, stated in a footnote, is that such immunity does not protect a contractor from its own negligence.  This argument is irrelevant, however, because Plaintiffs' liability theories far exceed simple negligence.  As noted above, in addition to generic negligence allegations, Plaintiffs specifically allege products liability claims against Lockheed Shipbuilding.  (André Removal Decl. at ¶ 17 ("Plaintiffs' claims against each defendant are based *inter alia* on strict product liability . . . including both design defect and failure to provide warning and also are based on negligence."))  Plaintiffs' discovery responses likewise allege products liability. (Rutzick Decl., Exh. 2 at 4:13-16.)

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1
2
3
4
5
6
7

Plaintiffs seek to evade the consequences of these broad allegations by now claiming, after removal, that their claims against Lockheed Shipbuilding are limited to "negligence and premises liability." (Motion, See Dkt. #9 at p. 1, n. 1.) As a threshold matter, Plaintiffs have neither amended their Complaint nor withdrawn any allegations asserted against Lockheed Shipbuilding. Nonetheless, even assuming Plaintiffs could retroactively limit their allegations to "negligence and premises liability," Plaintiffs' tactical maneuver fails to divest this Court of jurisdiction, for two reasons.

8
9
10
11
12
13
14

First, Plaintiffs fail to explain what they mean by "premises liability." In fact, premises liability can give rise to a claim for strict liability for abnormally dangerous activities, as unambiguously alleged in Plaintiffs' Complaint. (André Removal Decl., Exh. 1 at ¶ 15 ("Because the activities at its Shipyards were abnormally dangerous, defendant is strictly liable for the injuries to plaintiff.")). *Cf.* REST. (2D) TORTS § 520C ("A possessor of land is subject to strict liability for harm resulting from an abnormally dangerous activity that he carries on upon the land...").[7]

15
16
17
18
19

Second, even if Plaintiffs had perfected a post-removal, strategic amendment to their Complaint (they have not), such gamesmanship would not divest this Court of jurisdiction. When a case is properly removed based on federal officer jurisdiction, later destruction of the applicable federal defense does not eliminate subject matter jurisdiction. *See Jones v. Pineda*, 22 F.3d 391, 396 (1st Cir. 1994) *citing Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994)).

20
21

That the federal court ultimately rejects the federal defense that supported removal under § 1442(a)(1) does *not* mean that it thereby loses subject

22
23
24
25
26

[7] Plaintiffs' only response to this argument was another footnote, with another out-of-context quote, this time claiming that derivative sovereign immunity does not protect "tortious conduct." This word game does not help Plaintiffs because they raise a strict liability claim, which by definition can occur without wrongdoing. *See* REST. (2D) TORTS § 519 cmt. d ("The defendant is held liable although he has exercised the utmost care to prevent the harm..."). Derivative sovereign immunity has been applied to bar strict liability claims. *See, e.g., Pumphrey v. J. A. Jones Const. Co.*, 250 Iowa 559, 94 N.W.2d 737, 743 (1959) (applying *Yearsley* rule to a government contractor using a dangerous instrumentality under government supervision); *see also* REST. (2D) TORTS § 521 ("The rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee...").

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   matter jurisdiction over the removed action; *"the jurisdiction of the*
2   *federal courts over a properly removed action will not be defeated by*
    *later developments in the suit."*
3   *Jamison*, 14 F.3d at 239 *quoting* WRIGHT ET AL, 14A FEDERAL PRACTICE & PROCEDURE:
4   JURISDICTION 2D § 3739, at 582 (1985) (emphasis added).
5       When Lockheed Shipbuilding removed the action on March 16, 2011, it was (and still is)
6   entitled to raise derivative sovereign immunity as a colorable defense to Plaintiffs' allegations of
7   negligence and strict products liability and "abnormally dangerous activity" strict liability. Even
8   if Plaintiffs subsequently limit their claims to general negligence, this Court would retain
9   jurisdiction over the properly-removed action.
10      c.      *Lockheed Shipbuilding asserts a colorable government contractor*
11              *defense*
12      Lockheed Shipbuilding also asserts a colorable government contractor defense, as set
13  forth in *Boyle. See Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329 (11th Cir. 2003). "[T]he
14  government contractor defense applies not only to claims challenging the physical design of a
15  military product, but also to the process by which such equipment is produced." *In re Hanford*
16  *Nuclear Reservation Litigation*, 534 F.3d 986, 1000 (9th Cir. 2008). *See also In re World Trade*
17  *Center Disaster Site Litigation*, 456 F. Supp. 2d 520, 562-63 (S.D.N.Y. 2006) (applying *Boyle*
18  factors to claims beyond those arising from product liability); *Hudgens v. Bell*
19  *Helicopters/Textron*, 328 F.3d 1329, 1334 (11th 2003) ("The formulation of design
20  specifications and the articulation of maintenance protocols involve the exercise of the very same
21  discretion to decide how a military fleet of airworthy craft will be readied.").
22      Lockheed Shipbuilding's construction and repair of naval ships satisfies all three *Boyle*
23  factors, which are distinct from the elements of derivative sovereign immunity. *See Boyle*, 487
24  U.S. at 512.   Whereas the latter arises when a party acts *as* the Government in performing a
25  government function, the government contractor defense is triggered when a party acts *for* the
26

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 18

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1 Government under certain circumstances.   Lockheed Shipbuilding constructed and repaired

2 naval vessels *for* the Government under just those circumstances.

3     The Government not only approved, but **actually issued** the "reasonably precise

4 specifications" dictating materials to be used for every component of each ship. *Boyle*, 487 U.S.

5 at 512. (*See also* Balch Decl., at ¶¶ 3-7, Exhs. A-C; Dkt. #2 at ¶ 4.)   These specifications and

6 associated documents left virtually no room for Lockheed Shipbuilding to come up with its own

7 design or own materials for the ships. (*See* Balch Decl. at ¶ 3; *see also* André Removal Decl.,

8 Ex. 8 at ¶¶ 10-11.)   The finished equipment conformed to those specifications, as was verified by

9 ongoing inspections throughout construction or repair, several rounds of trials, and the

10 Government's acceptance of each ship. (*See, e.g.*, Balch Decl. at ¶¶ 3-7, Exhs. A, C-E; *cf. In re*

11 *Air Disaster at Ramstein Air Base*, 81 F.3d 570, 575 (5th Cir. 1996) (holding that second element

12 of the *Boyle* test can be met with evidence that the government was involved in the design and

13 development of the product and accepted it).)

14     The government contractor defense also applies to claims based on alleged failure to

15 warn. *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995); *Harris v. Rapid American*

16 *Corp.*, 532 F.Supp.2d 1001, 1005-06 (N.D. Ill. 2007).   The defense is applicable to such a claim

17 where there exists "evidence that in making its decision whether to provide a warning . . . [the

18 defendant] was 'acting in compliance with 'reasonably precise specifications' imposed on [it] by

19 the United States.'" *Butler v. Ingalls Shipbuilding Inc.*, 89 F.3d 582, 586 (9th Cir. 1996); *see also*

20 *Niemann*, 721 F. Supp. at 1024.   As the court explained in one of the cases relied on by

21 Plaintiffs, after analyzing the parties' arguments regarding failure to warn:

22         The court finds that defendants have satisfied their burden of
23         raising a colorable federal defense for purposes of 28 U.S.C.
        1442(a)(1).   Although defendants have not shown that the
24         government expressly prohibited Kaiser from warning shipyard
        employees about the hazards of asbestos exposure, their argument
25         that the government may have played some role in restricting such
        warnings raises at least a *colorable* federal defense.
26

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 19

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   *Ireton v. Kaiser Ventures*, Rutzick Decl., Ex. 6 (W.D. Wash. 2003).   Here, because the

2   Government dictated how and whether any markings could be placed on the vessels, Lockheed

3   Shipbuilding's actions with respect to product warnings were under the Government's direction.

4   (André Removal Decl., Ex. 8 at ¶¶ 13-16.)   Therefore, Lockheed Shipbuilding has established a

5   colorable government contractor defense as to Plaintiffs' failure to warn claims as well.

6           Further, the government contractor defense most assuredly applies to Plaintiffs' premises

7   liability claims.   A recent district court decision, reviewing a similar case, rejected the plaintiff's

8   request for remand of a shipbuilding defendant's removal on federal officer grounds.   *See Kluka*

9   *v. Anco Insulations, Inc.*, 2008 WL 2444517, at *4 (M.D. La. 2008).   "The presence of the

10  asbestos, which the plaintiff alleged created the defective condition of the facilities/premises in

11  the control of [the defendant], is directly connected to the federal law, regulations and

12  inspections that required the asbestos to be on the site."   *Id.* at *3.   In short, the shipbuilding

13  contractor could not comply with a potential state tort duty to keep its workplace free from

14  asbestos and still fulfill its contractual obligations to the Government to keep asbestos on the

15  premises to construct naval vessels.   *See id.*   The government contractor defense exists to

16  displace any potentially applicable state law when a conflict such as this arises.   *See Boyle*, 487

17  U.S. at 512.   Application of the government contractor defense to any claims sounding in

18  premises liability is particularly appropriate here, where the Government remained actively

19  involved in all aspects of shipbuilding procedures.   (André Removal Decl., Ex. 8 at ¶¶ 8-9.)

20          Plaintiffs offer a specious counterargument based on Admiral Horne's statements that the

21  Navy required asbestos "in the 1960s and early 1970s" and that the Navy largely prohibited

22  asbestos in shipyard contracts after about 1975.   Plaintiffs then claim that Lockheed Shipbuilding

23  cannot invoke government specifications in this case because Mr. Berger supposedly worked at

24  Lockheed Shipbuilding in 1976 and 1977.   But Plaintiffs have *not* disclaimed any cause of action

25  arising from asbestos installed before 1976.

26

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 20

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1    For example, it is conceivable that Plaintiffs might produce evidence that a ship built
2    before the 1970s was repaired at Lockheed Shipbuilding in 1976 or that Mr. Berger worked on a
3    new ship whose construction began a few years earlier.  If such evidence existed, Plaintiffs
4    would undoubtedly highlight it as indicating that Mr. Berger worked around asbestos at
5    Lockheed Shipbuilding, even though they have no evidence that asbestos was installed on
6    vessels at Lockheed Shipbuilding while Mr. Berger was there.   In that situation, Lockheed
7    Shipbuilding would be entitled to the government contractor defense because the prior
8    installation would have occurred per government specifications.  As Admiral Horne made clear,
9    during the "1970s," the Navy required that ship equipment and materials "comply with the
10   detailed specifications issued by the government."  (André Removal Decl., Ex. 8 at ¶ 11.)

11   Finally, Lockheed Shipbuilding had no duty to warn the Government about dangers that
12   were known to the Government.  *See Boyle*, 487 U.S. at 512.  Indeed, the Government had
13   superior knowledge about potential asbestos hazards.  (André Removal Decl. Exh. 1 at ¶¶ 3-5.)
14   The final element under *Boyle* is therefore satisfied.  *See Boyle*, 487 U.S. at 512.

15       3.    There is a causal nexus between the federal officer's direction and
16             Plaintiffs' claims

17   The final element of federal officer jurisdiction requires a causal nexus between the
18   direction provided by federal officers and plaintiffs' alleged injury.  In personal injury cases
19   involving Military products, the requisite "causal nexus" exists where the defendant can
20   demonstrate the Government's "direct and detailed control" over the design of the product at
21   issue.  *Boyle*, 487 U.S. at 512; *see also Akin v. Big Three Indus.*, 851 F.Supp. 819, 823-24 (E.D.
22   Tex. 1994) ("[W]hen a government contractor builds a product pursuant to Air Force
23   specifications and is later sued because compliance with those specifications allegedly causes
24   personal injuries, the nexus requirement is satisfied."); *Pack*, 838 F. Supp. at 1103 (defendant
25   satisfied the causal nexus requirement because "the government here contracted with [defendant]
26   to build turbine generators under government specifications during the World War II period.");

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 21

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

*Fung*, 816 F.Supp. at 572 (causal nexus is satisfied upon showing of "strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.'").[8]

As discussed above, the United States exercised extensive supervision and control over the design and manufacture of all Military vessels that Lockheed Shipbuilding built exclusively for the United States Military. Accordingly, a causal nexus exists between Plaintiff's claims and Lockheed Shipbuilding's actions taken under color of federal office, thereby satisfying the final element of federal officer removal jurisdiction.

Here, although the "causal nexus" prong appears to be the only element challenged by Plaintiffs, none of their cited cases support their position. Indeed, of the six cases cited by Plaintiffs, four are easily distinguishable because the courts analyzed them as if the claims were limited to negligent failure to warn. *See Feidt v. Owens-Corning Fiberglas*, 153 F.3d 124, 126 (3d Cir. 1998); *Luce v. A.W. Chesterton*, 2010 WL 2991671, at *2 (N.D. Cal.); *Ireton v. Kaiser Ventures*, *supra* (also applying the incorrect standard of proof); *Westbrook v. Asbestos Defendants*, 2001 WL 902642, at *3 (N.D. Cal. 2001). Here, Plaintiffs' claims are not so limited. Not only do Plaintiffs allege negligent and strict products liability (including design defect theories), Plaintiffs' general negligence allegations include the failure: "to provide a safe place to work"; "to take corrective action to eliminate a dangerous condition"; and "to provide sufficient and adequately trained personnel." (André Removal Decl., Exh. 1 at ¶¶ 12-14.) They also assert a strict premises liability claim for abnormally dangerous activities. (*Id.* at pp. 10-11.)

---

[8] Contrary to Plaintiffs' assertion, Lockheed Shipbuilding is not required to show that the Military mandated the use of asbestos to demonstrate the requisite causal nexus for federal officer jurisdiction. "A requirement that a federal officer directly ordered the use of asbestos by a defendant in order to demonstrate a causal nexus is not consistent with the purposes of the federal officer removal statute." *Seigfried v. Allegheny Ludlum Corp.*, 2009 WL 1035001, *10 (W.D. Penn. 2009). *See also Hagen*, 739 F.Supp.2d at 781; *Contois v. Able Industries Inc.*, 523 F.Supp.2d 155, 164-65 (D. Conn. 2007) (declaration that Military retained final say over the design of equipment was sufficient); *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992). Rather, the requisite causal nexus is established when the alleged asbestos exposure occurred while working on equipment constructed according to reasonably precise Government specifications.

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The remaining two cases cited by Plaintiffs have no bearing whatsoever because the courts in those cases applied far more stringent standards of proof than those applicable to the analysis of federal officer removal jurisdiction. *See In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992); *Zink v. Rapid-American*, Rutzick Decl., Exh. 16 at p. 2 (W.D. Wash. 1999). *In re Hawaii* did *not* concern a remand motion, but rather a post-trial motion applying a heightened standard of proof. *Compare Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("The officer need not win his case before he can have it removed.") It contains no mention of the deferential standard applied to a federal officer jurisdictional analysis, following the "clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret § 1442 *broadly in favor of removal.*" *Durham*, 445 F.3d at 1252 (emphasis added); *accord. Hagen*, 739 F.Supp.2d at 778.

The *Zink* decision (an unpublished trial court order issued seven years before *Durham*) likewise did not apply the appropriate deferential standard. Instead, the *Zink* court wrote, incorrectly, that "courts must 'construe the removal statute against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.'" *Zink*, supra at p. 2 (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). In the context of a federal officer removal, the out-dated standard applied by *Zink* is inapplicable to the instant lawsuit. *See Durham*, 445 F.3d at 1252; *Hagen*, 739 F.Supp.2d at 778.

Plaintiffs thus cannot cite a single case in which a court, applying the appropriate standard for federal officer removal, granted remand of a case involving claims other than failure to warn. In contrast, this Court may refer to numerous cases denying remand based on allegations similar to those asserted in Plaintiffs' Complaint – even when the claims were limited to failure to warn. *See Kluka*, supra at *3-4 (denying motion to remand a strict premises liability asbestos case removed by shipyard on federal officer grounds); *Harris*, 532 F.Supp.2d at 1005-06 (denying motion to remand a failure-to-warn, products liability, asbestos case); *Ballenger v.*

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 23

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   *AGCO Corp.*, 2007 WL 1813821, at \*3-\*4 (N.D. Cal.) (denying motion to remand an asbestos

2   negligence case removed on federal officer grounds by shipyard and relying on a declaration by

3   Admiral Horne).  Given Plaintiffs' complete lack of any relevant countervailing authority, their

4   motion should be denied.

5                                   **IV.   <u>CONCLUSION</u>**

6        For all of the foregoing reasons, Lockheed Shipbuilding respectfully requests that this

7   Court deny Plaintiffs' Motion to Remand.

8        DATED this 6th day of June, 2011.

9                                             OGDEN MURPHY WALLACE, P.L.L.C.

10

11                               By    s/ Robert G. André
                                       Robert G. André, WSBA #13072
12                                     Aaron P. Riensche, WSBA #37202
                                       Attorneys for Defendant
13                                     Lockheed Shipbuilding Company

14

15

16

17

18

19

20

21

22

23

24

25

26

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CERTIFICATE OF SERVICE

I certify under the laws of the United States of America that on the 6th day of June, 2011, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF System and served counsel below by the method indicated:

| | |
|---|---|
| Janet L. Rice<br>Schroeter Goldmark & Bender<br>810 Third Avenue<br>Suite 500<br>Seattle, Washington  98104<br>**Attorney for Plaintiffs** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |
| Gene Barton<br>Karr Tuttle Campbell<br>1201 Third Avenue<br>Suite 2900<br>Seattle, Washington  98101<br>gbarton@karrtuttle.com<br>**Attorneys for Todd Shipyards Corp.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |
| Dirk Bernhardt<br>Murray Dunham Murray<br>P.O. Box 9844<br>200 West Thomas<br>Suite 350<br>Seattle, Washington  98109-0844<br>dirk@murraydunham.com<br>**Attorneys for Foster Wheeler Energy Corporation,<br>Hopeman Brothers, Inc.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |
| Richard Gawlowski<br>Wilson Smith Cochran & Dickerson<br>1215 Fourth Avenue<br>Suite 1700<br>Seattle, Washington  98161-1007<br>gawlowski@wscd.com<br>**Attorneys for Metropolitan Life Insurance Co.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 25

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

| | | |
|---|---|---|
| Jan Brucker<br>Greg Thoming<br>Rebecca Thorn<br>Rick Rosser<br>Allan D. Gutsche<br>Jackson Jenkins Renstrom<br>701 Fifth Avenue<br>42nd Floor<br>Seattle, Washington  98104<br>jbrucker@jjr-law.com<br>gthorming@jjr-law.com<br>rthorn@jjr-law.com<br>agutsche@jjr-law.com<br>**Attorneys for E&E Lumber, Inc.** | [  ]<br>[  ]<br>[  ]<br>[ X ] | U.S. Mail<br>Messenger<br>Email<br>CM/ECF |
| Diane Kero<br>Gordon Thomas<br>600 University Street<br>Suite 2100<br>Seattle, Washington  98101<br>dkero@gth-law.com<br>**Attorneys for Saint Gobain Containers, Inc.** | [  ]<br>[  . ]<br>[  ]<br>[ X ] | U.S. Mail<br>Messenger<br>Email<br>CM/ECF |
| Stephen Leatham<br>Heurlin & Potter<br>211 East McLoughlin Boulevard<br>Suite 100<br>Vancouver, Washington  98666-0611<br>sgl@hpl-law.com<br>**Attorneys for CSK Auto** | [  ]<br>[  ]<br>[  ]<br>[ X ] | U.S. Mail<br>Messenger<br>Email<br>CM/ECF |
| Barry Mesher<br>Brian Zeringer<br>Lane Powell<br>1420 Fifth Avenue<br>Suite 4100<br>Seattle, Washington  98101-2338<br>mesherb@lanepowell.com<br>zeringerb@lanepowell.com<br>lowesheedyl@lanepowell.com<br>asbestos@lanepowell.com<br>**Attorneys for Georgia Pacific** | [  ]<br>[  ]<br>[  ]<br>[ X ] | U.S. Mail<br>Messenger<br>Email<br>CM/ECF |

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

| | |
|---|---|
| Katherine Steele<br>Katrina Mulligan<br>Stafford Frey<br>601 Union Street<br>Suite 3100<br>Seattle, Washington  98101<br>ksteele@staffordfrey.com<br>kmulligan@staffordfrey.com<br>**Attorneys for Metalclad Insulation Corp.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |
| Timothy Thorson<br>Carney Badley Smith & Spellman<br>701 Fifth Avenue<br>Suite 3600<br>Seattle, Washington  98104-7010<br>thorson@carneylaw.com<br>berman@carneylaw.com<br>**Attorneys for Saberhagen Holdings, Inc.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |
| Matthew Turetsky<br>Schwabe Williamson & Wyatt<br>1420 Fifth Avenue<br>Suite 3010<br>Seattle, Washington  98101<br>mturetsky@schwabe.com<br>**Attorneys for General Refractories Co.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[  ]   Email<br>[ X ]   CM/ECF |

DATED this 6th day of June, 2011.

s/Robert G. André, WSBA#13072
Robert G. André

APR886427.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND - 27

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                 AT SEATTLE

10  LOLA and MICHAEL BOUCHARD, wife and      )
    husband,                                  )   NO.
11                                            )
                              Plaintiffs,     )   DECLARATION OF ROBERT G.
12                                            )   ANDRÉ IN SUPPORT OF REMOVAL
          v.                                  )   OF ACTION UNDER 28 U.S.C. §
13                                            )   1442(A)(1)
    CBS CORPORATION, et al.,                  )
14                                            )
                              Defendants.     )   King County Superior Court
15                                            )   Cause No. 10-2-32586-7 SEA
    LOLA and MICHAEL BOUCHARD, wife and      )
16  husband,                                  )
                                              )   King County Superior Court
17                            Plaintiffs,     )   Cause No. 10-2-32587-5 SEA
                                              )
18        v.                                  )
                                              )
19  CSK AUTO, INC., et al,                    )
                                              )
20                            Defendants.     )
                                              )
21

22        I, ROBERT G. ANDRÉ, declare under penalty of perjury under the laws of the state of

23  Washington as follows:

24        1.     I am over the age of eighteen (18) and am competent to testify to the matters

25  herein based on my personal knowledge.

26        2.     I am one of the attorneys representing defendant Lockheed Shipbuilding

1   Company in the above-referenced case and I make this declaration in that capacity.

2        3.     Attached hereto and incorporated by reference are true and correct copies of the

3   following documents:

4        Exhibit 1     Supplemental Complaint for Personal Injury, filed in *Bouchard v. CBS*

5                      *Corporation, et al*, King County Superior Court Cause No. 10-2-32586-7

6                      SEA, on or about September 13, 2010;

7        Exhibit 2     Supplemental Complaint for Personal Injury, filed in *Bouchard v. CSK Auto,*

8                      *et al*, King County Superior Court Cause No. 10-2-32587-5 SEA, on or

9                      about September 13, 2010;

10      Exhibit 3     General Electric Company's Notice of Removal from State Court, filed in

11                   this Court in *Bouchard v. CBS Corporation, et al.*, on or about November 5,

12                   2010;

13      Exhibit 4     Letter from this Court to King County Superior Court, remanding *Bouchard*

14                   *v. CBS Corporation, et al.* on or about February 1, 2011;

15      Exhibit 5     Order Granting Plaintiffs' Motion for Consolidation, entered in *Bouchard v.*

16                   *CBS Corporation, et al.* and *Bouchard v. CSK Auto, et al.*, on February 28,

17                   2011;

18      Exhibit 6     Excerpts from the Deposition upon Oral Examination of David Ludden,

19                   taken February 22, 2011;

20      Exhibit 7     Excerpts from Deposition upon Oral Examination of Shannon Ludden,

21                   taken February 24, 2011;

22      Exhibit 8     Declaration of Ret. Admiral Roger B. Horne in Support of Lockheed

23                   Shipbuilding Company's Removal Action in this case;

24      Exhibit 9     Defendant Lockheed Shipbuilding Company's Corporate Disclosure

25                   Statement;

        Exhibit 10   Defendant Lockheed Shipbuilding Company's Notice of Removal to

26                  Federal Court, which will be filed in King County Superior Court on or

                     about the date of filing of this notice of removal herein; and

APR866577.DOC;1\12060.000025\
DECLARATION OF ROBERT G. ANDRÉ IN SUPPORT OF
REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(a)(1) - 2

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1

Exhibit 11   Defendant Lockheed Shipbuilding Company's Notice of Tag-Along Action,
which will be filed with the Judicial Panel on Multidistrict Litigation on or
about the date of filing of this removal action.

2

3      EXECUTED this 16th day of March, 2011 at Seattle, Washington.

4

5                                            s/Robert G. André
                                        Robert G. André

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF ROBERT G. ANDRÉ IN SUPPORT OF
REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(a)(1) - 3

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 32 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 31 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 4 of 72

## CERTIFICATE OF SERVICE

I certify under the laws of the United States of America that on the 16th day of March 2011 I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF System and served counsel below by the method indicated:

| | |
|---|---|
| Janet L. Rice<br>Schroeter Goldmark & Bender<br>810 Third Avenue<br>Suite 500<br>Seattle, Washington  98104<br>**Attorney for Plaintiffs** | [   ]   U.S. Mail<br>[ X ]   Messenger<br>[   ]   Email<br>[   ]   CM/ECF |
| Gene Barton<br>Karr Tuttle Campbell<br>1201 Third Avenue<br>Suite 2900<br>Seattle, Washington  98101<br>gbarton@karrtuttle.com<br>**Attorneys for Todd Shipyards Corp.** | [   ]   U.S. Mail<br>[   ]   Messenger<br>[ X ]   Email<br>[   ]   CM/ECF |
| Dirk Bernhardt<br>Murray Dunham Murray<br>P.O. Box 9844<br>200 West Thomas<br>Suite 350<br>Seattle, Washington  98109-0844<br>dirk@murraydunham.com<br>**Attorneys for Foster Wheeler Energy Corporation,<br>Hopeman Brothers, Inc.** | [   ]   U.S. Mail<br>[   ]   Messenger<br>[ X ]   Email<br>[   ]   CM/ECF |
| Jan Brucker<br>Greg Thoming<br>Rebecca Thorn<br>Rick Rosser<br>Jackson Jenkins Renstrom<br>701 Fifth Avenue<br>42nd Floor<br>Seattle, Washington  98104<br>jbrucker@jjr-law.com<br>gthorming@jjr-law.com<br>rthorn@jjr-law.com<br>**Attorneys for E&E Lumber, Inc.** | [   ]   U.S. Mail<br>[   ]   Messenger<br>[ X ]   Email<br>[   ]   CM/ECF |

APR866577.DOC;1\12060.000025\
DECLARATION OF ROBERT G. ANDRÉ IN SUPPORT OF
REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(a)(1) - 4

| | | |
|---|---|---|
| 1 | Richard Gawlowski<br>Wilson Smith Cochran & Dickerson | [ ]   U.S. Mail<br>[ ]   Messenger |
| 2 | 1215 Fourth Avenue | [ X ]  Email |
| 3 | Suite 1700<br>Seattle, Washington  98161-1007 | [ ]   CM/ECF |
| 4 | gawlowski@wscd.com | |
| 5 | **Attorneys for Metropolitan Life Insurance Co.** | |
| 6 | Diane Kero<br>Gordon Thomas | [ ]   U.S. Mail<br>[ ]   Messenger |
| 7 | 600 University Street | [ X ]  Email |
| 8 | Suite 2100<br>Seattle, Washington  98101 | [ ]   CM/ECF |
| 9 | dkero@gth-law.com<br>**Attorneys for Saint Gobain Containers, Inc.** | |
| 10 | Stephen Leatham<br>Heurlin & Potter | [ ]   U.S. Mail<br>[ ]   Messenger |
| 11 | 211 East McLoughlin Boulevard | [ X ]  Email |
| 12 | Suite 100<br>Vancouver, Washington  98666-0611 | [ ]   CM/ECF |
| 13 | sgl@hpl-law.com | |
| 14 | **Attorneys for CSK Auto** | |
| 15 | Barry Mesher<br>Brian Zeringer | [ ]   U.S. Mail<br>[ ]   Messenger |
| 16 | Lane Powell | [ X ]  Email |
| 17 | 1420 Fifth Avenue<br>Suite 4100 | [ ]   CM/ECF |
| 18 | Seattle, Washington  98101-2338<br>mesherb@lanepowell.com | |
| 19 | zeringerb@lanepowell.com | |
| 20 | lowesheedyl@lanepowell.com<br>asbestos@lanepowell.com | |
| 21 | **Attorneys for Georgia Pacific** | |
| 22 | Steven V. Rizzo<br>Rizzo Mattingly Bosworth | [ ]   U.S. Mail<br>[ ]   Messenger |
| 23 | 411 Southwest 2nd Avenue | [ X ]  Email |
| 24 | Suite 200<br>Portland, Oregon  97204 | [ ]   CM/ECF |
| 25 | srizzo@rizzopc.com | |
| 26 | recordsmanagement@rizzopc.com<br>**Attorneys for International Paper Company** | |

DECLARATION OF ROBERT G. ANDRÉ IN SUPPORT OF
REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(a)(1) - 5

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

| | |
|---|---|
| 1  Katherine Steele<br>   Katrina Mulligan<br>2  Stafford Frey<br>   601 Union Street<br>3  Suite 3100<br>4  Seattle, Washington  98101<br>   ksteele@staffordfrey.com<br>5  kmulligan@staffordfrey.com<br>6  **Attorneys for J.T. Thorpe & Son, Inc., Metalclad<br>   Insulation Corp.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[ X ]   Email<br>[  ]   CM/ECF |
| 7  Timothy Thorson<br>8  Carney Badley Smith & Spellman<br>   701 Fifth Avenue<br>9  Suite 3600<br>10 Seattle, Washington  98104-7010<br>   thorson@carneylaw.com<br>11 berman@carneylaw.com<br>   **Attorneys for Saberhagen Holdings, Inc.**<br>12 | [  ]   U.S. Mail<br>[  ]   Messenger<br>[ X ]   Email<br>[  ]   CM/ECF |
| 13 Matthew Turetsky<br>   Schwabe Williamson & Wyatt<br>   1420 Fifth Avenue<br>14 Suite 3010<br>15 Seattle, Washington  98101<br>   mturetsky@schwabe.com<br>16 **Attorneys for General Refractories Co.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[ X ]   Email<br>[  ]   CM/ECF |

17

18   DATED this 16th day of March 2011.

19                                    s/Robert G. André, WSBA#13072
20                                    Robert G. André

21

22

23

24

25

26

APR866577.DOC;1\12060.000025\
DECLARATION OF ROBERT G. ANDRÉ IN SUPPORT OF
REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(a)(1) - 6

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

# EXHIBIT 1

APR789616.DOC;1\99925.002222\

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 36 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 35 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 8 of 72

1
2
3
4
5
6          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                    IN AND FOR THE COUNTY OF KING
7
8    LOLA and MICHAEL BOUCHARD, wife         No.
     and husband
9                              Plaintiffs,   SUPPLEMENTAL COMPLAINT FOR
                                             PERSONAL INJURY
10          v.
11   CBS CORPORATION f/k/a
     WESTINGHOUSE ELECTRIC
12   CORPORATION;
     FOSS MARITIME COMPANY, a
13   Washington corporation;
     FOSTER WHEELER USA
14   CORPORATION;
     FRYER-KNOWLES, INC., A
15   WASHINGTON CORPORATION;
     GENERAL ELECTRIC COMPANY, a
16   Delaware corporation;
     HOPEMAN BROTHERS INC.;
17   INTERNATIONAL PAPER;
     LAKE UNION DRYDOCK COMPANY,
18   a Washington corporation;
     LOCKHEED SHIPBUILDING CO.; and
19   TODD SHIPYARDS CORP.,
20
21                             Defendants.
22                    FACTUAL BACKGROUND:
23          1.    Plaintiffs are Lola and Michael Bouchard, wife and husband.  Plaintiffs reside in

24   Everett, Washington.
25          2.    For Plaintiff Lola Bouchard:
26          A.    Date of Birth: November 7, 1959.

SUPPLEMENTAL COMPLAINT FOR PERSONAL          SCHROETER GOLDMARK & BENDER
INJURY – 1                                   500 Central Building · 810 Third Avenue · Seattle, WA 98104
N:\ASBESTOS\Bouchard 18387\CBS et al\Complaint - shipyard.docx          Phone (206) 622-8000 · Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 37 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 36 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 9 of 72

1    B.    Plaintiff Lola Bouchard was exposed to asbestos from asbestos dust and

2    fibers brought home on her ex-husband Ronald Berger's work clothing when they were married

3    from 1975 to 1979.  During 1975, Mr. Berger worked as a floorboy at Northwestern Glass

4    Company in Seattle, WA.  From approximately 1976 to 1979, Mr. Berger was a shipscaler

5    working out of the Shipscalers Union, Local 541 at local shipyards including Todd Shipyard,

6
7    Lockheed Shipyard, Foss Shipyard and Lake Union Shipyard.  Throughout Mrs. Bouchard's

8    marriage to Mr. Berger, Mr. Berger also performed brake work on cars, both his own and

9    those of friends and family.  Mr. Berger purchased all of his brake materials at CSK Auto.

10   During his employment and home brake work, he was exposed to asbestos and asbestos-

11   containing products manufactured, sold, supplied, and/or installed by the defendants.

12         C.    Plaintiff Lola Bouchard was also exposed to asbestos from asbestos dust

13
14   and fibers brought home on her father, Fred Carl Gerlach's clothes.  Mr. Gerlach began building

15   his family home in 1969.  Plaintiff Lola Bouchard resided in this home during its construction,

16   which included drywall and joint compound work.  Additionally, during Plaintiff Lola

17   Bouchard's childhood from 1960 until 1975, Mr. Gerlach worked at Northwestern Glass

18   Company in Seattle, WA.  Mr. Gerlach's work at Northwestern Glass Company included

19   facility maintenance as a floorboy, machinery maintenance and operation as an oiler, operator,

20   and working foreman.  During his employment and home construction work, he was exposed to

21
22   asbestos and asbestos-containing products manufactured, sold, supplied, and/or installed by

23   defendants.

24         D.    Based on information and belief Plaintiff Lola Bouchard has been

25   exposed to the asbestos-containing products of every named defendant in this lawsuit.

26

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 2
N:\ASBESTOS\Bouchard 18387\CBS et al\P\Complaint - shipyard.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

E.    As a result of the exposure, Plaintiff Lola Bouchard has developed an asbestos-related disease, mesothelioma.    The defendants' products and/or negligence proximately caused the development of the mesothelioma. Plaintiff Lola Bouchard first learned in approximately April, 2010 that she had mesothelioma, caused by asbestos exposure.  Plaintiff has been treated for mesothelioma by Dr. James Congdon.

3.    Defendant CBS Corporation, successor by merger to Viacom, Inc., f/k/a Westinghouse Electric Corporation, is a Delaware corporation licensed to do business in the state of Washington.    Westinghouse Electric Corporation and/or its predecessor(s) was engaged in the manufacture, sale, distribution and/or supply of products that contained asbestos.

4.    Defendant Foss Maritime Company, is a Washington state corporation.  Foss Maritime Company was formerly known as Foss Launch & Tug Co. and is the owner of several vessels commonly known as tug boats.

5.    Defendant Fryer-Knowles, Inc., a Washington Corporation, used vinyl asbestos tile in marine decking installation throughout much of the Pacific Northwest.

6.    Defendant General Electric Company is a Delaware corporation, licensed to do business in the state of Washington.  General Electric was a manufacturer of engines that contained asbestos.

7.    Defendant Hopeman Brothers Inc. is a Virginia corporation licensed to do business in the state of Washington.  Hopeman Brothers Inc. and/or its predecessor(s) manufactured, distributed and installed asbestos-containing products.

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 39 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 38 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 11 of 72

8.    Defendant International Paper is a New York corporation licensed to do business in the state of Washington. International Paper and/or its predecessor(s) manufactured and distributed asbestos-containing products.

9.    Defendant Lake Union Drydock Company is a Washington corporation.

10.    Defendant Lockheed Shipbuilding is a Nevada corporation licensed to do business in the State of Washington.

11.    Defendant Todd Shipyards Corporation is a Delaware corporation licensed to do business in the state of Washington.

## LIABILITY AS TO CERTAIN DEFENDANTS

12.    Defendants Foss Maritime Company, Lake Union Drydock Company, Lockheed Shipbuilding, and Todd Shipyards Corporation, during the relevant periods of time, negligently failed to provide a safe place to work and were negligent towards plaintiff.

13.    Defendants Foss Maritime Company, Lake Union Drydock Company, Lockheed Shipbuilding and Todd Shipyards Corporation, during relevant periods of time, negligently failed to take corrective action to eliminate a dangerous condition that the defendant knew or in the exercise of reasonable care should have known existed.

14.    Defendants Foss Maritime Company, Lake Union Drydock Company, Lockheed Shipbuilding and Todd Shipyards Corporation, during relevant periods of time, negligently failed to provide sufficient and adequately trained personnel throughout its Shipyards and negligently failed to warn Ronald Berger or plaintiff of the hazards of asbestos.

15.    In addition, because of the nature of the material, substances and/or operations involved at its Shipyards, during relevant periods of time, working there was an abnormally dangerous activity, with a high degree of risk for substantial harm. Plaintiff 's injuries were

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 4
N:\ASBESTOS\Bouchard 18347\CBS et al\Pl.Complaint - shipyard.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 40 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 39 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 12 of 72

1   proximately caused by the abnormally dangerous nature of the work activities performed by

2   Ronald Berger at these shipyards.  Because the activities at its Shipyards were abnormally

3   dangerous, defendant is strictly liable for the injuries to plaintiff.

### THEORIES OF LIABILITY

16.   Plaintiffs' claims are as set forth in Schroeter, Goldmark & Bender First
Amended Style Complaint For Personal Injury and Wrongful Death No. 81-2-08703-5 filed
November 10, 1994, in King County Superior Court.

17.   Plaintiffs' claims against each defendant are based *inter alia* on strict product
liability pursuant to Restatement Second of Torts, Section 402A including both design defect
and failure to provide warnings and also based on negligence.

### DAMAGES

18.   Plaintiffs have suffered the following damages:

A.   Past and future medical expenses;

B.   Loss of wage-earning capacity;

C.   Past and future disability; pain and suffering, both physical and
emotional; greatly increased risk of further disease; anxiety and fear of further disease and
shortening of life expectancy; and interference with normal life, all resulting in general
damages;

D.   Interest from the date of injury;

E.   Plaintiff Michael Bouchard has suffered and will suffer damages for
loss of companionship, services and consortium;

F.   Mrs. Bouchard's children have also suffered and will suffer damages
for loss of love, care, and companionship; and

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 5
H:\ASBESTOS\Bouchard 18387\CbS et al\PlComplaint - shipyard.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 41 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 40 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 13 of 72

1    G.  The aforementioned damages sought from each of the above-named

2 defendants are in an amount to be proved at trial.

3

4    DATED this *13ᵗ* day of September, 2010.

5             SCHROETER, GOLDMARK & BENDER

6

7             JANET L. RICE, WSBA #9386

8             Counsel for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 6
N:\ASBESTOS\Bouchard 183870CBS et al\\Complaint - shippard.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

# EXHIBIT 2

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 43 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 42 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 15 of 72

1

2

3

4

5

6            IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                    IN AND FOR THE COUNTY OF KING
7

8   LOLA and MICHAEL BOUCHARD, wife        No. 10-2-32587-5 SEA
    and husband
9                          Plaintiffs,      SUPPLEMENTAL COMPLAINT FOR
                                            PERSONAL INJURY
        v.
10

11  CSK AUTO, INC.;
    E&E LUMBER, INC., a Washington
12  corporation;
    GENERAL REFRACTORIES
13  COMPANY;
    GEORGIA-PACIFIC CORPORATION;
14  HONEYWELL INTERNATIONAL
    INC., as successor-in-interest to BENDIX;
15  J.T. THORPE & SON, INC.;
    LONGVIEW FIBRE COMPANY, a
16  Washington corporation;
    METALCLAD;
17  METROPOLITAN LIFE INSURANCE
    COMPANY;
18  QUINTEC INDUSTRIES, INC.;
    RAPID-AMERICAN CORPORATION;
19  SABERHAGEN HOLDINGS, INC.;
    SAINT GOBAIN CONTAINERS INC.,
20  individually and as successor-in-interest to,
    SAINT GOBAIN CONTAINER, INC.,
21  BALL GLASS CONTAINER
    CORPORATION, BALL CORPORATION,
22  INDIAN HEAD and NORTHWESTERN
    GLASS COMPANY;
23  SOCO WEST, INC., f/k/a BRENNTAG
    WEST; and
24  UNION CARBIDE CORPORATION

25
                           Defendants.
26

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 1
N:\ASBESTOS\Standard\1\J.T.\CSK Auto et al\Complaint - scomblyyard.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 44 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 43 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 16 of 72

## FACTUAL BACKGROUND:

1. Plaintiffs are Lola and Michael Bouchard, wife and husband. Plaintiffs reside in Everett, Washington.

2. For Plaintiff Lola Bouchard:

   A. Date of Birth: November 7, 1959.

   B. Plaintiff Lola Bouchard was exposed to asbestos from asbestos dust and fibers brought home on her ex-husband Ronald Berger's work clothing when they were married from 1975 to 1979. During 1975, Mr. Berger worked as a floorboy at Northwestern Glass Company in Seattle, WA. From approximately 1976 to 1979, Mr. Berger was a shipscaler working out of the Shipscalers Union, Local 541 at local shipyards including Todd Shipyard, Lockheed Shipyard, Foss Shipyard and Lake Union Shipyard. Throughout Mrs. Bouchard's marriage to Mr. Berger, Mr. Berger also performed brake work on cars, both his own and those of friends and family. Mr. Berger purchased all of his brake materials at CSK Auto. During his employment and home brake work, he was exposed to asbestos and asbestos-containing products manufactured, sold, supplied, and/or installed by the defendants.

   C. Plaintiff Lola Bouchard was also exposed to asbestos from asbestos dust and fibers brought home on her father, Fred Carl Gerlach's clothes. Mr. Gerlach began building his family home in 1969. Plaintiff Lola Bouchard resided in this home during its construction, which included drywall and joint compound work. Additionally, during Plaintiff Lola Bouchard's childhood from 1960 until 1975, Mr. Gerlach worked at Northwestern Glass Company in Seattle, WA. Mr. Gerlach's work at Northwestern Glass Company included facility maintenance as a floorboy, machinery maintenance and operation as an oiler, operator, and working foreman. During his employment and home construction work, he was exposed to

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 2
N:\ASBESTOS\Bouchard 11037\CSK Auto et al\Complaint - noeshipyard.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 45 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 44 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 17 of 72

1   asbestos and asbestos-containing products manufactured, sold, supplied, and/or installed by

2   defendants.

3           D.      Based on information and belief Plaintiff Lola Bouchard has been

4   exposed to the asbestos-containing products of every named defendant in this lawsuit, except

5   Metropolitan Life Insurance Company.

6           E.      As a result of the exposure, Plaintiff Lola Bouchard has developed an

7

8   asbestos-related disease, mesothelioma. The defendants' products and/or their negligence

9   proximately caused the development of the mesothelioma. Plaintiff Lola Bouchard first learned

10  in approximately April, 2010 that she had mesothelioma, caused by asbestos exposure. Plaintiff

11  has been treated for mesothelioma by Dr. James Congdon.

12          3.      Defendant CSK Auto, Inc., is an Arizona corporation licensed to do business

13

14  in the state of Washington. CSK Auto, Inc., and/or its predecessor(s) was an auto parts

15  retailer engaged in the manufacture, sale, distribution and/or supply of products that

16  contained asbestos.

17          4.      Defendant E&E Lumber, Inc. is a Washington state corporation. E&E

18  Lumber, Inc., and/or its predecessor(s) sold and distributed asbestos-containing materials to

19  individuals, contractors and sub-contractors.

20          5.      Defendant General Refractories Company is a Pennsylvania corporation.

21  General Refractories Company and/or its predecessor(s) was engaged in the manufacture,

22  sale, distribution and/or supply of products that contained asbestos.

23

24          6.      Defendant Georgia-Pacific Corp. is a Georgia corporation licensed to do

25  business in the state of Washington.  Georgia-Pacific Corp. manufactured asbestos-

26

SUPPLEMENTAL COMPLAINT FOR PERSONAL                    SCHROETER GOLDMARK & BENDER
INJURY – 3                                             500 Central Building • 810 Third Avenue • Seattle, WA 98104
N:\ASBESTOS\Bouchard 11337\CSK Auto et al\PACmplaint - scomtklpysrd.docx         Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 46 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 45 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 18 of 72

1    containing materials and distributed these products to numerous contractors and sub-

2    contractors in Washington.

3         7.     Defendant Honeywell International Inc., as successor-in-interest to Bendix is

4    a Delaware corporation. Honeywell International Inc. and/or its predecessor(s) manufactured

5    and/or distributed asbestos-containing automotive brake and clutch products.

6

7         8.     Defendant J.T. Thorpe & Son, Inc. is a California corporation licensed to do

8    business in the state of Washington. J.T. Thorpe & Son, Inc. and/or its predecessor(s)

9    supplied and installed refractory materials, which contained asbestos, at Northwestern Glass

10    Company in Seattle, WA.

11         9.     Defendant Longview Fibre Company is a Washington State corporation.

12    Longview Fibre Company was engaged in the manufacture, sale, distribution and/or supply

13    of products that contained asbestos.

14

15         10.     Defendant Metalclad is a California corporation, licensed to do business in the

16    state of Washington. Metalclad and/or its predecessor(s) supplied and installed insulation

17    materials, which contained asbestos.

18         11.     Defendant Metropolitan Life Insurance Company was involved in actions to

19    prevent the dissemination of accurate information to the public concerning the hazards of

20    asbestos dust and to cause false or misleading information about the health effects of asbestos to

21    be published. Metropolitan Life Insurance Company acted in concert with and aided and

22    abetted the defendants and other manufacturers of asbestos-containing products in wrongful

23

24    conduct which was a cause of harm to Plaintiff.

25

26

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 4
N:\ASBESTOS\Bernhard 18347\CSK Aum et al\\Complaint - scmshipyard.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1     12.    Defendant Quintec Industries, Inc. is a California corporation. Quintec

2  Industries, Inc. and/or its predecessor(s) supplied and installed insulation materials, which

3  contained asbestos.

4     13.    Defendant Rapid-American Corporation is a Delaware corporation. Rapid-

5  American Corporation and/or its predecessor(s) supplied and installed insulation materials,

6  which contained asbestos.

7

8     14.    Defendant Saint Gobain Containers Inc., individually and as successor-in-

9  interest to, Saint Gobain Container, Inc., Ball Glass Container Corporation, Ball Corporation,

10  Indian Head and Northwestern Glass Company is a Delaware corporation licensed to do

11  business in the state of Washington. Saint Gobain Containers Inc., and/or its predecessor(s),

12  during the relevant periods of time, negligently failed to provide a safe place to work and were

13  negligent towards plaintiff.

14     15.    Defendant Soco West, Inc., f/k/a Brenntag West is a Delaware corporation.

15  Soco West, Inc., f/k/a Brenntag West and/or its predecessor(s) was engaged in the

16

17  manufacture, sale, distribution and/or supply of asbestos-containing products.

18     16.    Defendant Union Carbide Corporation is a New York corporation licensed to do

19  business in the state of Washington. Union Carbide was engaged in the sale, distribution, and

20  manufacture of raw asbestos fiber used in the manufacture of various hazardous asbestos-

21  containing products as well as the manufacture, supply, and distribution of hazardous asbestos-

22  containing products.

23

24              **THEORIES OF LIABILITY**

25

26

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 5
M:\ASBESTOS\Bouchard 19397\CSK Auto of AF\Complaint - meszh\cqurd.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 48 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 47 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 20 of 72

1    17.   Plaintiffs' claims are as set forth in Schroeter, Goldmark & Bender First

2   Amended Style Complaint For Personal Injury and Wrongful Death No. 81-2-08703-5 filed

3   November 10, 1994, in King County Superior Court.

4    18.   Plaintiffs' claims against each defendant are based *inter alia* on strict product

5   liability pursuant to Restatement Second of Torts, Section 402A including both design defect

6   and failure to provide warnings and also based on negligence.

7

8                              DAMAGES

9    19.   Plaintiffs have suffered the following damages:

10          A.   Past and future medical expenses;

11          B.   Loss of wage-earning capacity;

12          C.   Past and future disability; pain and suffering, both physical and

13   emotional; greatly increased risk of further disease; anxiety and fear of further disease and

14   shortening of life expectancy; and interference with normal life, all resulting in general

15   damages;

16

17          D.   Interest from the date of injury;

18          E.   Plaintiff Michael Bouchard has suffered and will suffer damages for

19   loss of companionship, services and consortium;

20          F.   Mrs. Bouchard's children have also suffered and will suffer damages

21   for loss of love, care, and companionship; and

22          G.   The aforementioned damages sought from each of the above-named

23

24   defendants are in an amount to be proved at trial.

25

26

SUPPLEMENTAL COMPLAINT FOR PERSONAL
INJURY – 6
H:\ASBESTOS\Bouchard 14387\CSK Auto et al\PI\Complaint - msuchippyard.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 49 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 48 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 21 of 72

1  DATED this _13th_ day of September, 2010.

2                                    SCHROETER, GOLDMARK & BENDER

3

4                                    JANET L. RICE, WSBA #9386
                                     Counsel for Plaintiffs
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUPPLEMENTAL COMPLAINT FOR PERSONAL          SCHROETER GOLDMARK & BENDER
INJURY – 7                                   500 Central Building • 810 Third Avenue • Seattle, WA 98104
N:\ASBESTOS\Bouchard 18387\CSX Auto et al\Complaint - noashipyard.docx          Phone (206) 622-8000 • Fax (206) 682-2305

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 50 of 100

Case 2:11-cv-66270-ER   Document 10    Filed 06/06/11   Page 49 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 22 of 72

# EXHIBIT 3

APR789616.DOC;1\99925.002222\

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8    LOLA and MICHAEL BOUCHARD, wife and       NO. _____
     husband,
9                                              GENERAL ELECTRIC COMPANY'S
                    Plaintiffs,                NOTICE OF REMOVAL FROM
10                                             STATE COURT
            v.
11                                             King County Cause No. 10-2-32586-7
     CBS CORPORATION f/k/a WESTINGHOUSE        SEA
12   ELECTRIC CORPORATION; et al.,
13                  Defendants.

14

15          PLEASE TAKE NOTICE that defendant General Electric Company (hereinafter

16   "GE"), hereby removes this civil action to the United States District Court for the Western

17   District of Washington from the Superior Court of the State of Washington in and for the

18   County of King pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, whereby this Court has subject

19   matter jurisdiction to adjudicate claims with respect to persons acting under an officer or

20   agency of the United States.  The grounds for removal are more particularly stated as follows:

21          1.      On or around September 13, 2010, plaintiffs filed this action in the Superior

22   Court of the State of Washington for the County of King, Cause No. 10-2-32586-7 SEA.  GE

23   received a copy of the Supplemental Complaint for Personal Injury on September 17, 2010.

24          2.      Plaintiffs Lola Bouchard and Michael Bouchard allege causes of action for

25   personal injuries allegedly arising from exposure to asbestos-containing products.  Copies of

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL           Williams, Kastner & Gibbs PLLC
FROM STATE COURT - 1                                   601 Union Street, Suite 4100
                                                       Seattle, Washington 98101-2380
                                                       (206) 628-6600

2972279.1

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 52 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 51 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 24 of 72
Case 2:10-cv-01810-RAJ   Document 1   Filed 11/05/10   Page 2 of 9

1   the Pleadings filed in this case are attached to the Affidavit of Christopher S. Marks as

2   Exhibit A.

3        3.   This Notice of Removal is being filed within thirty days after the Defendants

4   received Plaintiffs' Responses to Defendants First Set of Interrogatories and Requests for

5   Production, from which the Defendants first ascertained that the case is one which may be

6   removed to Federal Court. 28 U.S.C. §1446(b).

7        4.   In the Complaint, plaintiffs allege that Lola Bouchard was exposed to asbestos-

8   containing products used at Puget Sound Naval Shipyard from 1960 to 1979 through clothing

9   worn home by her father and her ex-husband.  See Marks Affidavit, Exhibit A (Supplemental

10   Complaint, ¶¶ 2 and 6).

11        5.   On October 8, 2010, counsel for General Electric received a copy of the

12   Attachment C to the Plaintiffs' Responses to Defendants First Set of Interrogatories and

13   Requests for Production.  Marks Affidavit, Exhibit B.  This was the first "paper," within the

14   meaning of 28 U.S.C. § 1446(b), from which the Defendants were able to ascertain that the

15   case is removable.  Specifically, the Supplement Complaint identifies that Mrs. Bouchard

16   alleged exposure to asbestos may have occurred from asbestos used in conjunction with

17   "engines."  See Marks Affidavit (Supplemental Complaint, ¶¶ 2 and 6).  Attachment C to

18   Plaintiffs' Response to Defendants First Set of Interrogatories and Requests for Production lists

19   the USS Bremerton (CA-130).  Upon information and belief, General Electric manufactured

20   the main propulsion and the steam turbine generators aboard the USS Bremerton.  GE

21   manufactured marine steam turbines for use on Navy ships pursuant to contracts and

22   specifications executed by the U.S. Navy.  The basis for removal is that, in the manufacture

23   and sale of turbines and other equipment for the U.S. Navy, GE was acting under an officer or

24   agency of the United States within the mean of 28 U.S.C. § 1442(a)(1).

25

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL       Williams, Kastner & Gibbs PLLC
FROM STATE COURT - 2                               601 Union Street, Suite 4100
                                                   Seattle, Washington 98101-2380
                                                   (206) 628-6600

2972279.1

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 53 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 52 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 25 of 72
Case 2:10-cv-01810-RAJ   Document 1   Filed 11/05/10   Page 3 of 9

1    6.    GE is not required to notify and obtain the consent of any other defendant in this

2  action in order to remove Plaintiffs' action under § 1442(a)(1), the federal officer removal

3  provision. Ely Valley Mines, Inc. v. Hartford Accident Indemnity Co., 644 F.2d 1310, 1315

4  (9th Cir. 1981); National Audubon Society v. Department of Water & Power of the City of Los

5  Angeles, 496 F. Supp. 499, 509 (E.D. Cal. 1980).

6    7.    Should Plaintiffs file a motion to remand this case, GE respectfully requests an

7  opportunity to respond more fully in writing, but offers the following authorities at this time:

8    8.    As recognized in Boyle v. United Technologies Corp., 487 U.S. 500, 504

9  (1988), GE has a federal defense to this action, i.e., government contractor immunity from

10  liability for injuries arising from any exposure to asbestos related to turbines on board U.S.

11  Navy vessels, insofar as they were constructed or repaired by GE.  Removal pursuant to 28

12  U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted

13  under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs'

14  claims, and (3) demonstrate a causal nexus between plaintiffs claims and acts it performed

15  under color of federal office.  Mesa v. California, 489 U.S. 121,124-25,129-31,134-35 (1989).

16    9.    In Isaacson v. Dow Chemical Company, 304 F.Supp.2d 442 (E.D.N.Y. 2004),

17  plaintiff originally sued the manufacturer of Agent Orange in New Jersey State Court.

18  Defendants removed to federal court asserting, among other things, federal jurisdiction under

19  the All Writs Act. Id. at 445.  The New Jersey District Court found removal appropriate under

20  the All Writs Act.  Id.  The case was then transferred to the Eastern District of New York by

21  the Multidistrict Panel.  Id.  The Court of Appeals for the Second Circuit affirmed the district

22  court's denial of remand finding jurisdiction appropriate under the All Writs Act.  Stephenson

23  v. Dow Chemical Company, 273 F.3d 19 (2d Cir. 2003).  On review, the United States

24  Supreme Court remanded the case finding that the All Writs Act alone would not support

25  removal.  Dow Chemical Company v. Stephenson, 539 U.S. 111 (2003).  On remand from the

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL
FROM STATE COURT - 3

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2972279.1

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 54 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 53 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 26 of 72
Case 2:10-cv-01810-RAJ   Document 1   Filed 11/05/10   Page 4 of 9

1  Supreme Court, the Second Circuit determined that jurisdiction could not be grounded in the

2  All Writs Act and remanded the case back to the Eastern District of New York to determine if

3  there was an alternative ground supporting federal jurisdiction. Stephenson v. Dow Chemical

4  Company, 346 F.3d 19 (2d Cir. 2003). It is with that extensive procedural history that the

5  district court examined the federal officer removal statute and found it sufficient to deny

6  plaintiff's motion to remand. Isaacson, 304 F.Supp. at 445.

7       10.    In reaching its conclusion, the Isaacson court discussed in detail the three

8  elements necessary for removal under this statute. First, a defendant must demonstrate that it is

9  a "person" within the meaning of the statute. Id. at 446. The definition of a "person" includes

10  a corporation. Id. Second, the defendant must establish that the suit is "for any act under color

11  of federal office," i.e., there is a causal connection between the charged conduct and asserted

12  official authority. Id. (citations omitted). Causation exists if the predicate acts of the state

13  court suit were undertaken while the person was acting as or under a federal officer, and the

14  acts were under color of the relevant federal office. Id. Third, defendants must raise a

15  colorable claim to a federal law defense. Id. As previously stated, a colorable claim to a

16  federal defense can be predicated upon the federal government contractor defense. Id. at 449.

17       11.    The second element requires a causal nexus between the defendant's actions

18  under the federal officer and plaintiff's state court claims. Id. at 447. A substantial degree of

19  direct and detailed federal control over defendant's work is required. Id. What constitutes

20  sufficient federal control is often central to a court's decision to uphold removal or remand a

21  case. Several courts have upheld removal because defendants were sued as a result of building

22  products pursuant to military specifications. See Crocker v. Borden, 852 F.Supp. 1322

23  (E.D.La. 1994) (holding that removal was proper for Westinghouse because its marine turbines

24  were manufactured pursuant to Navy specifications); see also, Pack v. AC and S, Inc., 838

25  F.Supp. 1099 (D.Md. 1993) (holding that removal was proper for Westinghouse because the

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL
FROM STATE COURT - 4

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2972279.1

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 55 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 54 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 27 of 72
Case 2:10-cv-01810-RAJ   Document 1   Filed 11/05/10   Page 5 of 9

1  government had extensive control over the manufacture of turbines, even specifying the type of

2  asbestos cloth).

3      12.   This case is removable under the authority cited above.  In constructing its

4  marine steam turbines for the Navy, GE acted under the direction of a federal officer.  GE

5  manufactured and designed the marine steam turbines at issue according to precise, detailed

6  specifications promulgated by Navy Sea Systems Command.  Additionally, an Inspector of

7  Naval Machinery, who had offices on the premises of GE's plants, personally oversaw the

8  manufacturing process and enforced compliance with the Navy design specifications.  Further,

9  the turbines were subject to various tests and trials supervised by the Navy before they were

10  approved for use on military vessels.  Moreover, the U.S. Navy, as one of the world's leaders

11  in industrial hygiene state-of-the-art at the time, would have possessed information superior to

12  its equipment suppliers such as GE.  In sum, virtually no aspect of the design and manufacture

13  of the marine steam turbines at issue escaped the close control of the U.S. Navy and its

14  officers.  Consequently, removal is appropriate.

15      13.   A properly removed case cannot be remanded for discretionary or policy

16  reasons such as allegedly related State court cases or a contention that judicial economy

17  compels remand. 28 U.S.C. § 1447(c); ThermItron Products, Inc. v. Hermansdorfer, 423 U.S.

18  336 (1976).  The federal officer removal statute is not narrow or limited, and it should not be

19  frustrated by a narrow or grudging interpretation of § 1442(a)(l).  Willingham v. Morgan, 395

20  U.S. 402, 405 (1960).

21      14.   GE is not required to notify and obtain the consent of any other defendant in this

22  action in order to remove Plaintiff's action as a whole under § 1442(a)(1).  See Torres v. CBS

23  News, 854 F.Supp. 245 (S.D.N.Y. 1994).

24

25

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL          Williams, Kastner & Gibbs PLLC
FROM STATE COURT - 5                                   601 Union Street, Suite 4100
                                                       Seattle, Washington 98101-2380
                                                       (206) 628-6600

2972279.1

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 56 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 55 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 28 of 72
Case 2:10-cv-01810-RAJ   Document 1   Filed 11/05/10   Page 6 of 9

1      15.     As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and

2   correct copies of the process and pleadings served upon GE are being filed with this Notice of

3   Removal.

4      16.     This action arose in King County, Washington, and is therefore properly

5   assigned to the United States District Court for the Western District of Washington, at Seattle,

6   pursuant to Local Rules W.D. Wash. 5(e)(1).

7      17.     Plaintiffs' Action against the Defendants alleges damages to be proven at the

8   time of trial.  See Marks Affidavit (Supplemental Complaint, Damages.)  Because plaintiffs

9   have sued four defendants, on information and belief, the matter in controversy exceeds the

10   sum or value of $75,000, exclusive of interest and costs.

11      18.     This Notice of Removal is timely filed under the 30-day provision of 28 U.S.C.

12   § 1446(b) because it was filed within thirty days of October 8, 2010, the date of service of

13   Plaintiffs' answers to Defendants' Interrogatories and Requests for Production.

14      19.     Immediately upon filing of this Notice of Removal, the GE will file a copy of

15   the Notice of Removal with the Clerk of the Court of the Superior Court of the State of

16   Washington in and for the County of King, and will provide written notice to counsel for

17   plaintiffs, all in accordance with 28 U.S.C. § 1446(d).  A true copy of that notice is attached to

18   the Affidavit of Christopher S. Marks.

19      20.     By seeking removal, GE does not waive any defenses, including, but not limited

20   to, lack of personal jurisdiction, insufficiency of process, or service of process.

21      21.     This matter is subject to transfer to the Easter District of Pennsylvania pursuant

22   to the July 29, 1991 order entered by the Judicial Panel on Multidistrict Litigation.

23      **WHEREFORE,** GE respectfully requests that this action now pending in the Superior

24   Court of the State of Washington in and for the County of King be removed to this Court and

25   that further proceedings be conducted in this Court as provided by law.

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL
FROM STATE COURT - 6

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2972279.1

1

RESPECTFULLY SUBMITTED this 5th day of November, 2010.

2
                                        s/ Christopher S. Marks, WSBA #28634
3                                       Eliot M. Harris, WSBA #36590
                                        Attorneys for Defendant General Electric
4                                       Company
                                        WILLIAMS, KASTNER & GIBBS PLLC
5                                       601 Union Street, Suite 4100
                                        Seattle, WA 98101-2380
6                                       Telephone: (206) 628-6600
                                        Fax: (206) 628-6611
7                                       Email: cmarks@williamskastner.com
                                               eharris@williamskastner.com
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL
FROM STATE COURT - 7

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2972279.1

CERTIFICATE OF SERVICE

1.      I, Alexandra Sandiforth, certify as follows:

2.      I am employed with the firm of Williams, Kastner & Gibbs PLLC, Two Union Square, 601 Union Street, Suite 4100, Seattle WA, 98101.

3.      I hereby certify that on November 5, 2010, I electronically filed the foregoing with the Clerk of the Court who will upload them to the ECF system which will send notification of such filing to the following:  N/A

4.      I also herby certify that on November 5, 2010, I served via Legal Messenger the forgoing documents;  Civil Cover Sheet; General Electric Company's Notice of Removal From State Court; Affidavit of Christopher S. Marks; and Corporate Disclosure Statement to the following parties:

Janet L. Rice
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, WA 98104
*Attorneys for Plaintiff*

David R. West
GARVEY SCHUBERT BARER
1191 Second Avenue, 18th Floor
Seattle, WA 98101
*Attorneys for Foss Maritime Company*

Dirk Bernhardt
MURRAY, DUNHAM & MURRAY
200 West Thomas, Suite 350
Seattle, WA 98109-0844
*Attorneys for Foster Wheeler Energy Corporation; Hopeman Brothers Inc.*

T. Arlen Rumsey
GORDON & POLSCER LLC
1000 Second Avenue, Suite 1500
Seattle, WA  98104
*Attorneys for Fryer-Knowles, Inc.*

Walter Barton
KARR, TUTTLE, CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, WA  98101-3028
*Attorneys for Todd Shipyards Corp.*

Robert G. Andre
OGDEN MURPHY WALLACE PLLC
1601 Fifth Avenue, Suite 2100
Seattle, WA 98101
*Attorneys for Lockheed Shipbuilding Company*

Melissa K Roeder
FORSBERG & UMLAUF, PS
901 Fifth Avenue, Suite 1400
Seattle, WA 98164
*Attorneys for Lake Union Drydock Company*

J. Michael Mattingly
RIZZO MATTINGLY BOSWORTH PC
411 SW Second Avenue, Suite 200
Portland, OR 97204
*Attorneys for International Paper Company*

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL
FROM STATE COURT - 8

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2972279.1

1

The foregoing statement is made under penalty of perjury under the laws of the United
States of America and the State of Washington and is true and correct.

2

s/ L. Alexandra Sandiforth

3

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100

4

Seattle, WA 98101
Telephone: (206) 233-2957

5

Facsimile: (206) 628-6611

6

E-mail: mkjeldtoft@wkg.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL
FROM STATE COURT - 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2972279.1

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 60 of 100

Case 2:11-cv-66270-ER   Document 10    Filed 06/06/11   Page 59 of 99
Case 2:11-cv-00458   Document 3    Filed 03/16/11   Page 32 of 72

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**OFFICE OF THE CLERK**

BRUCE RIFKIN
CLERK

700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 370-8400

FILED
LODGED
RECEIVED

**MAIL**

January 28, 2011

FEB 01 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

King County Superior Court, WA.
516 - 3rd. Ave., E-609
Seattle, WA. 98104

**RECEIVED**

FEB 1 2011

DEPARTMENT OF
JUDICIAL ADMINISTRATION

RE:    Our case #: CV10-1810-RAJ
       Lola Bouchard, et al v. CBS Corporation , et al
       Your file #: 10-2-32586-7

Dear Clerk:

Enclosed is the above-referenced case file, on cd-rom, along with a certified copy of Richard A. Jones's Order remanding this case to state court. Also included is a certified copy of the docket sheet.

Please return the copy of this cover letter with the following information:

Superior Court Case No:      *10-2-32586-7 SEA*

Assigned to Judge:           *Hon. Douglass A. North   Dept. 30*

Completed by Deputy Clerk:   *[signature]*

                             Sincerely,

                             s/C. Ledesma,  Deputy Clerk

Enclosures

cc:  Court file, counsel

10-CV-01810-IFP

# EXHIBIT 5

Honorable Douglass North
Hearing Date: Wednesday, February 23, 2011
Without Oral Argument

1
2
3
4
5
6
      IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
7
            IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| 8  LOLA and MICHAEL BOUCHARD, wife and husband | No. 10-2-32586-7SEA |
| 9                 Plaintiffs, | [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CONSOLIDATION |
| 10     v. | |
| 11  CBS CORPORATION, et al.,<br>                  Defendants. | |
| 12  LOLA and MICHAEL BOUCHARD, wife and husband | No. 10-2-32587-5 SEA |
| 13                 Plaintiffs, | |
| 14     v. | |
| 15  CSK AUTO, INC., et al.,<br>                 Defendants. | |

16
      This matter came before the Court on Plaintiffs' Motion for Consolidation.   The
17
Court having considered the motion and the responses:
18
19
      It is hereby ORDERED that Plaintiffs' Motion for Consolidation is hereby
20
GRANTED.   Cause Nos. 10-2-32586-7 and 10-2-32587-5 shall hereby be consolidated into
21
one cause of action Cause No. 10-2-32586-7 before Judge Douglass North. The parties
22
have 30 days to ~~either~~ set a hearing before Judge NORTH for
the purpose of setting a new trial date and case schedule. TRIAL
23
DATE of 4/19/11 is stricken.
      DONE IN OPEN COURT this 28th day of FEBRUARY, 2011.
24
25
26
                       _Richard F. McDermott_

**ORIGINAL**             HONORABLE ~~DOUGLASS NORTH~~
                           RICHARD F. McDERMOTT

[PROPOSED] ORDER GRANTING PLAINTIFFS'
MOTION FOR CONSOLIDATION – 1
N:\ASBESTOS\Bouchard 18287\P\Mot ConsolEstate - Order.docx

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1   Presented by:

2   PAUL & HANLEY

3

4   _Janet L. Ri_

5   JON NEUMANN, WSBA # 36057

6

7   SCHROETER, GOLDMARK & BENDER

8

9   _Janet L. Ri_

    JANET RICE, WSBA #9386
10  Counsel for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] ORDER GRANTING PLAINTIFFS'         SCHROETER GOLDMARK & BENDER
MOTION FOR CONSOLIDATION – 2                  500 Central Building • 810 Third Avenue • Seattle, WA 98104
N:\ASBESTOS\Bouchard 18387P\Mot Consolidate - Order.docx       Phone (206) 622-8000 • Fax (206) 682-2305

# EXHIBIT 6

Page 1

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

LOLA and MICHAEL BOUCHARD, wife and ) No. 10-2-32586-7
husband,                              ) SEA
                                      )
                    Plaintiffs,       )
                                      )
v.                                    )
                                      )
CBS CORPORATION, et al,               )
                                      )
                    Defendants.       )
                                      )

DEPOSITION UPON ORAL
EXAMINATION OF:
DAVID LUDDEN
10:00 A.M.
FEBRUARY 22, 2011
SEATTLE, WA 98101-1686

Reported by:   Judith A. Robinson, CCR No. 2171

Roger G. Flygare & Associates, Inc.
Professional Court Reporters,
Videographers & Legal Transcriptionists
1715 South 324th Place, Suite 250
Federal Way, Washington 98003
(800) 574-0414 – main
www.flygare.com – scheduling
RGFlygare@aol.com – email

Page 10

1    A. That doesn't ring a bell.
2    Q. Did you know a person named James Hull, H-U-L-L?
3    A. That doesn't ring a bell.
4    Q. Did you know a person called Michael Harris?
5    A. That rings a bell.
6    Q. How do you remember Harris?
7    A. I just remember the name. I don't truly remember
8  Harris, but the name rings a bell.
9    Q. You don't know what his title or position was in
10  the union?
11       MS. RICE: He mentioned the name
12  Robert Harris. He's discussing about Michael Harris.
13  BY MR. ANDRE:
14    Q. Do you know Michael Harris?
15    A. I don't believe so.
16    Q. Now, the union that you and Ron Berger were
17  members of, do you have a number?
18    A. It was local 541.
19    Q. When did you first join the union?
20    A. It was around 1976. I don't remember exactly.
21    Q. Did Ron Berger join the union before or after
22  you?
23    A. It was very close.
24    Q. Sometime in 1976?
25    A. I believe so.

Page 11

1    Q. And so you continue to be a union member for how
2  long?
3    A. Off and on through 1980.
4    Q. And how long did Ron Berger continue to be a
5  member of that union?
6    A. I'm not certain.
7    Q. When you and Ron Berger were socializing at their
8  home, did you ever see Lola Bouchard wash Ron Berger's
9  clothes?
10    A. I'm sure I did.
11    Q. Did Lola Bouchard --
12       MR. THORSON: Move to strike the
13  nonresponsive portion of the answer. This is just for
14  the record, sir.
15  BY MR. ANDRE:
16    Q. When you say you're sure you did, was it a house
17  or apartment?
18    A. Apartment.
19    Q. Where was the apartment located?
20    A. In Rainier Vista.
21    Q. Was there a washing machine and a dryer in the
22  apartment?
23    A. Yes.
24    Q. Was it a one-bedroom, or was it a two-bedroom
25  apartment?

Page 12

1    A. One.
2    Q. Did Lola Bouchard ever wash your work clothes?
3    A. I don't remember.
4    Q. Since you were a ship scaler when you joined the
5  union, what did a ship scaler do?
6    A. Basically, a ship scaler was a shipyard janitor.
7    Q. Who trained you to be a ship scaler?
8    A. No one.
9    Q. What were the duties that you held yourself out
10  as being able to do as a ship scaler when you were hired
11  by an employer?
12    A. We did cleaning before and after other crafts.
13  We did a duty called fire watch. And we also cleaned up
14  after sandblasting, and occasionally we actually had to
15  ship scale.
16    Q. Other than Todd and Lockheed, are there any other
17  shipyards that you and Ron Berger worked at in the late
18  1970s?
19    A. Well, I'm not sure which ones Ron might have
20  worked at.
21    Q. Where did you work?
22    A. I also worked at Duwamish Shipyard and Foss Tug
23  & Barge.
24    Q. Do you have a recollection as you sit here today
25  whether you and Ron Berger as union members and

Page 13

1  ship scalers would go to Lockheed Shipyard on Harbor
2  Island to work?
3    A. Yes, sir.
4    Q. During what time period was that?
5    A. That -- it was around '76 and '77.
6    Q. Can you tell the difference between Todd Shipyard
7  and Lockheed Shipyard on Harbor Island?
8    A. Rick.
9    Q. How could you tell the difference?
10    A. Lockheed faces north and Todd faces east. And
11  Lockheed is straight down the road from where you turn
12  off Spokane Street where the Blue Moon Tavern used to
13  be, and you had to take a right and go around and get to
14  Todd's.
15    Q. Do you have a specific recollection when you were
16  at Lockheed with Ron Berger of working on any military
17  ships at Lockheed?
18    A. I did, sir, yes.
19    Q. Okay. Which military ship did you work on?
20    A. The one I recall is the Atomic Subtender.
21    Q. I'm going to see if I can refresh your
22  recollection, sir, since I represent Lockheed
23  Ship Building Company. At the time period in the late
24  1970s, apparently there were three submarine tenders.
25  One was called the Emery USS Emery S. Land.

Page 14

1    Did you ever work on that ship?
2    A. I'm not sure.
3    Q. Another subtender was call the Frank Cable.
4    Did you ever work on that ship?
5    A. I believe so.
6    Q. And the USS McKee, did you ever work on that
7    ship? That was another submarine tender.
8    A. I think so.
9    Q. And there was a Coast Guard Cutter called the
10   Polar Star.
11   A. Yes.
12   Q. It was an icebreaker.
13   Did you work on that ship?
14   A. Yes, sir.
15   Q. So of the four ships I mentioned, three of them
16   you have a specific recollection working on: The McKee,
17   the Frank Cable, and the Polar Star; is that right?
18   A. Yes, sir.
19   Q. Now, can you tell me whether Ron Berger worked on
20   any of those three ships?
21   A. I believe he worked on the -- the Cable.
22   Q. Okay.
23   A. And he worked on the Polar Star.
24   Q. Were you and Ron Berger working on the same crew?
25   A. Occasionally.

Page 15

1    Q. Did the union try to keep the ship scalers
2    together?
3    A. No, sir.
4    Q. But you say "occasionally."
5    On more than one occasion, do you have a
6    recollection today that you worked with Ron Berger on
7    one of those two ships, or both of those two ships;
8    correct?
9    A. Yes, sir.
10   Q. And did Ron Berger do the same job that you
11   describe as a ship scaler, basically a janitorial job
12   and doing all of the different things you testified
13   about?
14   A. Yes, sir.
15   Q. And did you actually see Ron Berger do those
16   different things?
17   A. Yes, sir.
18   Q. Did it happen more than once that you saw him do
19   the same job that you did?
20   A. Yes, sir.
21   Q. When you joined the union, were you told that you
22   would be working with asbestos-containing materials?
23   A. No, sir.
24   Q. When did you first find out that you would be
25   working with asbestos-containing materials?

Page 16

1    MR. BARTON: Object to the form of the
2    question.
3    MS. RICE: You can answer.
4    A. I don't really know.
5    MR. ANDRE: I'm going to show you a
6    photograph. Well, let's mark this as Exhibit Number 2.
7    (The document referred to was marked as
8    Exhibit No. 2 for identification and has been retained
9    by the reporter.)
10   BY MR. ANDRE:
11   Q. Exhibit 2 apparently was the USS Coast Guard
12   Cutter Polar Star Icebreaker.
13   Do you recognize that?
14   A. Yes, sir.
15   Q. What part of the ship did you and Ron Berger work
16   on as ship scalers?
17   A. There was really no one place on a ship we worked
18   as a general rule. We would go from area to area.
19   Q. So you could have conceivably worked on all parts
20   of the Polar Star?
21   A. Probably.
22   Q. Would Ron Berger work on all parts of the Polar
23   Star also, to the best of your recollection?
24   A. Yes, sir.
25   Q. When you were working on the Polar Star, were

Page 17

1    there any Coast Guard personnel or officers that
2    supervised the construction work that was being done on
3    the Polar Star?
4    MS. RICE: As opposed to Lockheed?
5    MR. ANDRE: Yeah.
6    BY MR. ANDRE:
7    Q. That's why I said US Coast Guard personnel.
8    A. Not in the areas I was in.
9    Q. Did you ever see the US Coast Guard personnel
10   on the Polar Star even though they weren't in
11   your area?
12   A. I believe so.
13   Q. When you were working on the Polar Star who was
14   your employer?
15   A. Lockheed.
16   Q. So you got a check from Lockheed?
17   A. I did.
18   Q. Did Lockheed go to the union hall and ask to hire
19   you directly?
20   A. Yes.
21   Q. Do you believe Ron Berger went to the union hall
22   and got a check from Lockheed?
23   A. Yes, sir.
24   Q. Do you know how long, you, yourself, worked at
25   Lockheed in the 1976 time frame? In other words, would

Page 18

1 it be a week? Would it be a month? Would it be a year?
2    A. There were times that were a day or three, and
3 there were times that were a week or three, and there
4 was one point when I worked for them for about six
5 months on, I believe it was the Cable.
6    Q. And we looked at Ron Berger's Social Security
7 records, Mr. Ludden. With respect to Lockheed, it looks
8 like he may have worked at Lockheed sometime between
9 October and December of 1976.
10    Would you have been working at Lockheed during
11 that same time period?
12    A. Yes, sir.
13    Q. Ron Berger's Social Security records also
14 indicate that he may have been working at Lockheed
15 sometime between January and March 1977.
16    Would you have been working at Lockheed during
17 that same time period?
18    A. Yes, sir.
19    Q. And the other, I think you also said that you
20 believe that Ron Berger worked with you on the
21 Frank Cable.
22    MR. ANDRE: We're going to mark this as
23 Exhibit 3.
24    (The document referred to was marked as
25 Exhibit No. 3 for identification and has been retained

Page 19

1 by the reporter.)
2 BY MR. ANDRE:
3    Q. Mr. Ludden, Exhibit 3 is a photograph of S40,
4 which is the USS Frank Cable.
5    Do you recognize that ship as being a ship you
6 worked on?
7    A. Yes, sir. But I think I had the names wrong
8 because the one I worked on the longest was a 39.
9    Q. A 39. Okay.
10    MR. ANDRE: I'll get another photograph.
11 Let's mark this photograph here.
12    (The document referred to was marked as
13 Exhibit No. 4 for identification and has been retained
14 by the reporter.)
15 BY MR. ANDRE:
16    Q. You're looking at Exhibit 4, which seems to be
17 the Emery S. Land, which has 39 stenciled on it.
18    Is that the one you worked on too?
19    A. That is, sir.
20    Q. Would Ron Berger have worked on it too?
21    A. Very shortly.
22    Q. When you say "very shortly," how long would
23 Ron Berger have worked on it with you?
24    A. Several days.
25    Q. Where would you be working on that ship?

Page 20

1    A. Stem to stern.
2    Q. Where would Ron Berger have been working on the
3 ship?
4    A. I'm not sure. We weren't on the same crew.
5    Q. Was he a ship scaler at that time?
6    A. Yes, sir.
7    Q. Would he have been doing the same job that you
8 were doing as a ship scaler?
9    A. Yes, sir.
10    Q. You just didn't physically observe him working on
11 the same ship, although, you knew he was on a different
12 crew on that same ship?
13    A. Correct.
14    (The document referred to was marked as
15 Exhibit No. 5 for identification and has been retained
16 by the reporter.)
17 BY MR. ANDRE:
18    Q. This particular ship, I don't seem to have a
19 particular hull number on it, but it is the USS McKee.
20    Do you remember working on that ship?
21    A. No, sir.
22    Q. When you were on a crew working at the union on
23 one or more ships that we were just talking to you
24 about, who did you take your direction from? In other
25 words, who was the foreman of your crew?

Page 21

1    A. Most of the time it was David Hilderbrandt.
2    Q. Who did he work for?
3    A. Various supervisors. There was Herschel Goodwin
4 who was the painter. I don't recall the names of
5 others.
6    Q. Was he a union man also?
7    MS. RICE: Who? Herschel Goodwin?
8    MR. ANDRE: No. Hilderbrandt.
9    A. I don't know.
10 BY MR. ANDRE:
11    Q. Herschel Goodwin, was he a union man?
12    A. I don't think so.
13    Q. Did either of those people work as an employee
14 for Lockheed?
15    A. Yes, sir.
16    Q. Did you ever take direction at Lockheed from a
17 person who worked for the US Navy?
18    A. Never.
19    Q. Did you ever take direction from a person who
20 worked for the US Coast Guard?
21    A. Never.
22    Q. Did you see Navy personnel walking around any of
23 these ships you worked on at Lockheed?
24    A. Yes, sir.
25    Q. What were they doing?

Page 90

```
 1      A. No, sir.
 2          MR. ANDRE:  That's all the questions I have.
 3          MR. BARTON:  It was your note, Bob.  If you
 4   want to call it, looks like it's time to call it.
 5          MR. ANDRE:  If nobody has any questions,
 6   we're going to end the deposition.
 7          (The deposition of David Ludden was
 8   concluded at 1:50 p.m.)
 9          (Signature was reserved.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 92

```
 1   I further certify that I am sealing the deposition in an
     envelope with the title of the above-referenced cause
 2   thereon and marked "Deposition" with the name of each
     witness and promptly delivering the same to the
 3   appropriate party or parties.
 4
 5   IN WITNESS WHEREOF, I have hereunto set my hand
     and affixed my Washington State CCR Seal this _____ day
 6   of _____, 2011.
 7
 8
 9          _____
10
            Washington State Certified Court Reporter
11          WA CCR No. 2171
            License effective until: 11/4/12.
12          Residing at Federal Way, Washington
13
14
15
16
17
18
19
20
21
22
23
24
25                              Official Transcript
```

Page 91

```
 1      C E R T I F I C A T E
 2
 3   STATE OF WASHINGTON )
     COUNTY OF KING    )
 4
 5   I, the undersigned Washington Certified Court Reporter,
     pursuant to RCW 5.28.010 authorized to administer oaths
 6   and affirmations in and for the State of Washington, do
     hereby certify:
 7
     That the annexed and foregoing deposition containing
 8   Page 1 through 90 of each witness named herein was taken
     stenographically before me and reduced to typewriting
 9   under my direction.
10   I further certify that each said witness examined, read
     and signed his/her deposition after the same was
11   transcribed unless indicated in the record that the
     parties and each witness waived the signing.
12
     I further certify that all objections made at the time
13   of said examination to my qualifications or the manner
     of taking each deposition, or to the conduct of any
14   party have been noted by me upon each deposition.
     I further certify that I am not a relative or an
15   employee or attorney or Counsel of any of the parties to
     said action, or a relative or employee of any such
16   attorney or Counsel, and
     that I am not financially interested in the said action
17   or the outcome thereof.
18   I further certify that each witness before examination
     was by me duly sworn to testify the truth, the whole
19   truth and nothing but the truth..
20   I further certify that the deposition, as transcribed is
     a full, true and correct transcript of the testimony,
21   including questions and answers, and all objections,
     motions and exceptions of Counsel made and taken at the
22   time of the foregoing examination and was prepared
     pursuant to Washington Administrative Code 308-14-135,
23   the transcript preparation format guideline.
24
25
```

24  (Pages 90 to 92)

# EXHIBIT 7

Page 1

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| LOLA AND MICHAEL BOUCHARD, wife and husband,  )<br><br>Plaintiffs,  )<br><br>Vs.  )<br><br>CBS CORPORATION, et al.,  )<br><br>Defendants.  ) | No. 10-2-32586-7 SEA |
| LOLA AND MICHAEL BOUCHARD,  )<br><br>Plaintiffs,  )<br><br>Vs.  )<br><br>CSK AUTO, INC., et al.,  )<br><br>Defendants.  ) | No. 10-2-32587-5 SEA |

DEPOSITION UPON ORAL EXAMINATION

OF SHANNON LUDDEN

ON THURSDAY, FEBRUARY 24, 2011

VANCOUVER, WASHINGTON

Reported by:

MARK E. KING, RPR, CCR

CCR #2182

Page 14

1  originated from work that her then husband Ron Berger
2  performed in the shipyards. And the question I want to
3  ask you is if you recall at any time during your work in
4  the shipyards whether you worked with Ron Berger or not?
5      A. On occasion. I can remember a couple times.
6      Q. Okay, you remember a couple times. Tell us
7  about the first one that's in your mind that you worked
8  with Ron Berger.
9      A. The first one was I believe sandblasting the
10  hull. Ron was my pot man.
11     Q. Your pot man?
12     A. Yeah.
13     Q. Tell us what the pot man does in the
14  sandblasting operation.
15     A. Keeps the sand in the pot, basically, and keeps
16  the pressure up and laughs at the sandblaster.
17     Q. And what were you sandblasting at the time?
18     A. The hull, the barnacles off the hull.
19     Q. And do you know what kind of a ship this was?
20     A. Not for certain.
21     Q. You couldn't say whether it was a commercial
22  vessel or a fishing vessel or a military vessel?
23     A. I couldn't for certain.
24     Q. Okay. And where do you recall this work taking
25  place?

Page 15

1          MS. RICE: What shipyard?
2      Q. (By Mr. Barton) Yes.
3      A. I believe that was at Todd's, I'm pretty sure.
4      Q. Let me ask you this question, because it was
5  asked of your brother David. Where to your recollection
6  is Todd Shipyard located, the one that you worked at?
7      A. On the water.
8          MS. RICE: You don't remember?
9          THE WITNESS: I don't, I'm sorry.
10     Q. (By Mr. Barton) What about the Lockheed Shipyard
11  where you worked at, can you recall where that yard was
12  located?
13         MS. RICE: If you don't recall, just
14  say you don't recall.
15         THE WITNESS: I'm sorry, I don't know.
16     Q. (By Mr. Barton) Do you recall the Lockheed and
17  Todd yards being located near each other?
18     A. Not real near.
19     Q. How in your memory would you distinguish the
20  Todd Shipyard from the Lockheed Shipyard that you worked
21  at?
22     A. I believe it was smaller.
23     Q. You believe the Todd yard was smaller?
24     A. Yeah.
25     Q. All right. Is there any other distinction that

Page 16

1  you can make between the two of them?
2      A. Not really, not at this stage of the game.
3      Q. And with respect to this work that you were just
4  describing, the sandblasting work that you recall being at
5  Todd Shipyard, how long did that work last?
6      A. Again, I just have glimpses of different jobs,
7  you know. Putting them in chronological order would --
8          MS. RICE: You can say I don't
9  remember.
10         THE WITNESS: Okay, I don't remember.
11         MR. BARTON: Yeah, that's fine.
12         MS. RICE: That's a fine answer.
13     Q. (By Mr. Barton) And was there any other work
14  that you recall doing with Ron Berger at that time other
15  than the sandblasting work that you have described?
16     A. Yeah, cleaning the interior of a Navy ship, I
17  think it was Navy. I can't remember if that was at Todd's
18  or Lockheed's, either.
19     Q. Okay. Was that the same time you were working
20  with him on the sandblasting job or is this the second
21  time that you remember working with him?
22     A. This is the second time.
23     Q. All right. So the second time you remember
24  working with Mr. Berger you recall that you were cleaning
25  the interior of what you believe was a Navy ship and

Page 17

1  you're not certain whether that work was at Todd or
2  Lockheed; is that correct?
3      A. That's correct.
4      Q. Can you describe the work that you recall doing
5  in cleaning the interior of this ship?
6      A. Yeah, we just bagged, bagged up the debris that
7  was caused from, well, from the whole peeling the
8  insulation off of pipes, peeling paneling off of walls,
9  and that was about it, but it was a lot of work and a lot
10  of bags.
11     Q. And how long did this work last?
12     A. I don't know, it had to last over a week,
13  probably two.
14     Q. And you were performing this type of cleanup
15  work the entire time?
16     A. Pretty much, when we weren't hiding.
17     Q. What makes you think that this might be a Navy
18  ship that you were on?
19     A. Just my memory, just trying to -- it was just,
20  it seemed -- you know, the coloring, you know, that I can
21  remember, it reminded me of the Navy.
22     Q. Do you recall there being any guns, mounted guns
23  on the ship?
24     A. On that particular ship I couldn't tell you
25  because we just boarded and went below.

Page 98

1    A.  Yes, but the pipe insulation, per se, was done
2  on numerous occasions.
3    Q.  I understand.
4    A.  So, you know, I threw that into typical, yeah.
5    Q.  All right.  Do you have any recollection of how
6  many times you did that type of work at Todd's Shipyards?
7    A.  No, just -- you know, I'm sorry, but the numbers
8  of them, no, I really don't.
9    Q.  But as far as doing that type of work with Ron
10  Berger, you only recall the one occasion?
11    A.  Yes.
12        MR. BARTON:  Thank you.
13        THE WITNESS:  You know, that's not to
14  say that I didn't on other occasions, you know, but it's
15  just that that occasion came to mind because of whatever,
16  I don't know why.
17        MR. BARTON:  Thank you, sir.
18        MR. BERNHARDT:  Anyone on the phone
19  with any follow-up?
20        THE WITNESS:  Anyone on the phone at
21  all?
22        MR. BARTON:  I think we're done.
23        MS. RICE:  Thank you.
24        THE REPORTER:  You have the right to
25  read this if it's transcribed or you can waive your right.

Page 99

1  Which would you like to do?
2        MS. RICE:  We'll reserve signature.
3        - - - - -
4        (The deposition concluded at 2:03 p.m.)
5        (No exhibits were marked.)
6        (Signature was not waived.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 100

C E R T I F I C A T E

STATE OF WASHINGTON   )
                      ) ss.
COUNTY OF KING        )

    I, the undersigned Washington Certified Court
Reporter, pursuant to RCW 5.28.010 authorized to
administer oaths and affirmations in and for the State of
Washington, do hereby certify that the annexed and
foregoing deposition consisting of Page 1 through 101 of
the testimony of each witness named herein was taken
stenographically before me and reduced to a typed format
under my direction;
    I further certify that according to CR 30(e) the
witness was given the opportunity to examine, read and
sign the deposition after the same was transcribed, unless
indicated in the record that the review was waived;
    I further certify that all objections made at
the time of said examination to my qualifications or the
manner of taking the deposition or to the conduct of any
party have been noted by me upon each said deposition;
    I further certify that I am not a relative or
employee of any such attorney or counsel, and that I am
not financially interested in the said action or the
outcome thereof;
    I further certify that each witness before

Page 101

examination was by me duly sworn to testify the truth, the
whole truth and nothing but the truth;
    I further certify that the deposition, as
transcribed, is a full, true and correct transcript of the
testimony, including questions and answers, and all
objections, motions and exceptions of counsel made and
taken at the time of the foregoing examination and was
prepared pursuant to Washington Administrative Code
308-14-135, the transcript preparation format guideline;
    I further certify that I am sealing the
deposition in an envelope with the title of the above
cause and the name of the witness visible, and I am
delivering the same to the appropriate authority;
    I further advise you that as a matter of firm
policy, the Stenographic notes of this transcript will be
destroyed three years from the date appearing on this
Certificate unless notice is received otherwise from any
party or counsel hereto on or before said date;
    IN WITNESS WHEREOF, I have hereunto set my hand
and affixed my Washington State CCR Seal this 26th day of
February, 2011.


Certified Court Reporter No. 2182
in and for the State of
Washington, residing at Issaquah.
My certification expires 9/21/11.

# EXHIBIT 8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| LOLA and MICHAEL BOUCHARD, wife and husband, | ) | NO. |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF RET. ADMIRAL ROGER B. HORNE IN SUPPORT OF NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(a)(1) |
| v. | ) | |
| CBS CORPORATION, *et al.*, | ) | |
| | ) | King County Superior Court |
| Defendants. | ) | Cause No. 10-2-32586-7 SEA |
| LOLA and MICHAEL BOUCHARD, wife and husband, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| CSK AUTO, INC., et al. | ) | King County Superior Court |
| | ) | Cause No. 10-2-32587-5 SEA |
| Defendants. | ) | |

I, Roger B. Horne, Jr., being under penalty of perjury, declare and say:

1.   I am a retired Rear Admiral of the United Stated Navy, in which I served between 1956 and 1991.

{AFR366025.DOC;IN2060;000025\}
DECLARATION OF RET. ADM. ROGER B. HORNE
IN SUPPORT OF NOTICE OF REMOVAL OF ACTION - 1

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

540-372-7861   p.3

Mar 10 11 08:27p      Microsoft

1        2.    I began my Navy career in 1956, immediately after receiving a Bachelor of
2    Science degree in Naval Engineering from the United States Naval Academy at Annapolis,
3    Maryland.  I have also received extensive post-graduate education in naval engineering,
4    including a Master of Science Degree in Mechanical Engineering from the U.S. Naval
5    Postgraduate School, and have taught Naval Engineering as a Visiting Professor at the University
6    of Michigan.  Throughout my Navy career, I concentrated in areas of ship design, engineering,
7    construction, overhaul and inspection.  Ultimately, I achieved the rank of Chief Engineer and
8    Deputy Commander, Naval Sea Systems Command ("NAVSEA") for Ship Design and
9    Engineering.  Prior to that, I served as Deputy Commander, NAVSEA for Facilities and
10   Industrial Management; Commander, Puget Sound Naval Shipyard; Commander, Engineering
11   Duty Officer School; Production and Repair Officer, Mare Island Naval Shipyard; Nuclear
12   Engineering Manager, Puget Sound Naval Shipyard; Nuclear Submarine Inspector Officer,
13   Supervisor of Shipbuilding Office, Ingalls Shipyard and Chief Engineer in the USS Ozbourn
14   (DD 846).
15       3.    In addition to my training and experience in Navy ship construction, as outlined
16   above, I have been recognized for achievements in the field of marine machinery and
17   engineering, and have received three Navy Legion of Merit Awards and three Meritorious
18   Service Awards for Engineering and Industrial Achievement and an award from the Marine
19   Machinery Association.
20       4.    I submit this Declaration in support of defendant Lockheed Shipbuilding
21   Company's ("Lockheed") Notice of Removal to attest to the level of supervision, direction and
22   control exercised by the U.S. Government over the design, manufacture, maintenance and repairs
23   of military vessels.  In addition, I have personal knowledge of the comprehensive plans,
24   specifications and requirements which governed contract shipyards like Lockheed.  More
25   particularly, I can attest that any and all work performed on Navy and Coast Guard ships at
26   contract shipyards such as Lockheed was reviewed and inspected by U.S. Government personnel

{APR66625.DOC:IV2060.000025.1}
DECLARATION OF RET. ADM. ROGER B. HORNE
IN SUPPORT OF NOTICE OF REMOVAL OF ACTION - 2

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

540-372-7861                    p.4

Mar 10 11 08:27p        Microsoft

1    in the vendor's site.  In many instances during my career I personally inspected work to verify

2    conformance with the requirements specified, although more immediate supervision typically

3    was exercised by officers and other Navy personnel under my command or the command of

4    NAVSEA or its predecessor, the Bureau of Ships ("BUSHIPS").

5         5.    Ships built for the Navy, including those built at contract shipyards like

6    Lockheed, were built according to detailed specifications prepared, written, approved and issued

7    exclusively by the Navy, specifically NAVSEA or BUSHIPS.  In my role as Chief Engineer and

8    Deputy Commander for NAVSEA's Ship Design and Engineering Division, I was personally

9    responsible to the Commander of NAVSEA for developing ship designs and providing overall

10   technical support to the operating fleet, including technical support for the maintenance of Navy

11   ships, and Navy ships under construction.  I was also responsible for maintaining naval ship

12   military specifications and for monitoring compliance with the specifications by all vendors and

13   contractors of naval equipment.

14        6.    In my opinion, and to a reasonable degree of engineering certainty, military

15   specifications mandated the use of asbestos-containing materials in the construction,

16   maintenance and repair of Navy ships.  BUSHIPS issued, maintained and controlled these

17   specifications largely because it had superior knowledge to private shipyards of the demands and

18   requirements of combat-ready Navy vessels.  The Navy had great concern for the safety of its

19   crews and effective operation of ships undergoing needed repairs for combat situations.  These

20   specifications reflected the state of the art at the time and the special needs of combat vessels.

21   Ownership and custody of these military vessels, as well as the materials used to build the

22   vessels, vested in the U.S. Navy.

23        7.    The Navy chain of command concerning ship construction involves several layers

24   of authority related to technical and contractual control over Navy shipbuilding.  The Secretary

25   of the Navy [subject to the President and Congress] has ultimate authority over the Navy and

26   Navy shipbuilding; immediately below the Secretary, as has been the case since the creation of

{APR566625.DOC;1\12000.660025:.}
DECLARATION OF RET. ADM. ROGER B. HORNE
IN SUPPORT OF NOTICE OF REMOVAL OF ACTION - 3

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   NAVSEA, is the Chief of Naval Operations ("CNO"), to whom NAVSEA reports. Prior to the

2   establishment of NAVSEA, BUSHIPS controlled all combat ship design and construction and

3   reported to the CNO as well as a civilian Assistant Secretary. Since the creation of NAVSEA,

4   NAVSEA reports to the CNO for all military ship design and construction. (See Exhibits A and

5   B).

6        8.      Under the command of NAVSEA, as was the case with BUSHIPS, the Navy's

7   shipbuilding structure was comprised of several divisions and levels of authority concerning ship

8   design, construction, repair and inspection. Technical and contractual control over shipboard

9   equipment and material was directed by the Commander of Naval Sea Systems and the

10  Commander of Naval Supply. Each of these two organizations had oversight responsibility

11  concerning all aspects of ship construction, including the requirement that asbestos be used in the

12  insulation of vessels built and/or repaired for the Navy in the 1960s and early 1970s.

13  Compliance with the standards and specifications required for naval ships was directly monitored

14  by Naval inspectors under both of these divisions:  the inspectors under Naval Supply worked

15  on-site at the vendor's (in this case Lockheed's) manufacturing facility, and the inspectors under

16  Naval Sea Systems Commands carried out their responsibilities at the contract shipbuilding

17  yards, such as the Lockheed shipyard in Seattle. Moreover, it was common in my experience for

18  Directors of the Naval Inspections, who worked for me at times during my career, to inspect the

19  shipbuilding process at the vendors' sites and to make certain that the work was being done

20  properly and that the materials used met the required specifications.

21       9.      In my experience, it was the Naval Inspectors who exercised primary, frontline

22  control over the work performed for the Navy at both government shipyards and contract

23  shipyards such as Lockheed in the construction, maintenance and repair of Navy ships. The

24  Naval Inspectors were responsible for assuring that civilian contractors such as Lockheed

25  followed the required contract specifications as they relate to naval shipbuilding. Further, the

26

[AP#366655.DOC;J12060;000225}
DECLARATION OF RET. ADM. ROGER B. HORNE
IN SUPPORT OF NOTICE OF REMOVAL OF ACTION - 4

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

540-372-7861                    p.6

Mar 10 11 08:28p        Microsoft

1    Naval Inspectors would report to their superiors any violations or failures to comply with the

2    specifications.

3         10.    The Navy retained the "final say" over the design of every ship, and made the

4    ultimate decision regarding how to resolve an engineering disagreement between the Navy and

5    an outside supplier.

6         11.    Equipment and materials used during the 1940s, 1950s, 1960s and 1970s to the

7    United States Navy for use on U.S. Navy ships was always required to comply with the detailed

8    specifications issued by the government.    These specifications dictated the materials that

9    Lockheed was required to use in every component part of shipbuilding.    These specifications

10   were made part of the contract, and strict compliance therewith was mandatory.

11        12.    In addition, I can attest that the military specifications for all materials and

12   equipment intended for use aboard Navy vessels were drafted, approved and maintained by the

13   Navy, specifically NAVSEA, to address all aspects of shipboard equipment and materials

14   requirements, including the materials to be used, and any changes to these specifications were

15   made by the Navy.   NAVSEA maintained and controlled the MilSpecs largely because it had

16   superior knowledge of the demands and requirements of combat-ready vessels.   NAVSEA or

17   BUSHIPS also prepared contract specifications which incorporated the MilSpecs.    These

18   specifications reflected the state of the art and the special needs of combat vessels destined for

19   combat with our sailors.

20        13.    The Navy specifications also covered the nature of any communication affixed to

21   materials and equipment supplied to the Navy.   The Navy could not, and did not, permit its

22   contractors to implement any changes because every aspect of every item of materials and

23   equipment had to be: (1) functionally compatible with every material and equipment and with

24   available materials from the Navy Supply System; (2) compatible with shipyard practices,

25   training, tools and capabilities; and (3) consistent with the ability of the crew to maintain the ship

26   during its service when shipyard help was unavailable using materials carried onboard.

[APX066625.DOC;1]12060.000025.1]
DECLARATION OF RET. ADM. ROGER B. HORNE
IN SUPPORT OF NOTICE OF REMOVAL OF ACTION - 5

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

540-372-7861                                                                                      p.7

Mar 10 11 08:28p       Microsoft

14.    The Navy would not, and could not, permit a shipbuilder to interfere with the Navy's mission by placing warnings on any material or equipment (or in any instructions or manuals which accompanied the equipment) on any U.S. Navy ships or in any shipyards in which U.S. Navy ships were built or repaired that might cause sailors or workers to deviate from their mission or require the U.S. Navy to devote scarce resources to programs it deemed non-essential, in its unilateral view.

15.    The Navy had complete control over every aspect of each piece of material and equipment used on Navy ships.  Military specifications governed every characteristic of the material and equipment used on Navy ships, including the instructions and warnings.  Drawings for nameplates, texts of instruction manuals, and every other document relating to construction, maintenance, repair and operation of the vessel were approved by the Navy.  This control included the decision of what warnings should or should not be included.  Thus, the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment.

16.    In addition to specifications regarding design and manufacturing of the ship itself, the Navy also had detailed specifications that governed the form and content of written materials to be delivered with material and equipment supplied to the Navy.  The Navy was intimately involved with and had final approval of all technical and engineering drawings, operating manuals, safety or hazard information and any other written information that accompanied a piece of equipment.  The Navy determined the nature of hazards to be subject to any precautionary labeling and the content of any such labeling.  In short, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors.

17.    In conclusion, in each and every instance where a contract shipyard like Lockheed contracted with the U.S. Navy, the U.S. Navy exercised direction and control over the design, manufacture, inspection and testing of all such ships.  Pursuant to the terms of all contracts that

[APR866925.DOC;1\12060.000029.]
DECLARATION OF RET. ADM. ROGER B. HORNE
IN SUPPORT OF NOTICE OF REMOVAL OF ACTION - 6

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

540-372-7861                    p.8

Mar 10 11 08:28p        Microsoft

1   Lockheed entered into with the U.S. Navy, the Navy retained ultimate authority to direct and

2   control the performance of the work and the materials used under the terms of the contracts.

3         18.    In this case, I have reviewed the social security records of Ron Berger and

4   Lockheed's history of the ships built at Lockheed when Berger may have worked there,

5   specifically the *USCGC Polar Star*, the *USCGC Polar Sea*, the *USS Emory S. Land*, the *USS*

6   *Frank Cable*, and the *USS McKee.* From my experience, I believe it is more likely than not that

7   the U.S. Coast Guard would have had inspection personnel present during the construction of the

8   *Polar Star* and the *Polar Sea*, which are both Coast Guard icebreakers.  The *Emory Land*, the

9   *Frank Cable*, and the *McKee* were all U.S. Navy submarine tenders, on which U.S. Navy

10  inspectors would have been present during construction.  Any health and safety matter during

11  construction of these vessels would have been addressed by the U.S. Coast Guard and the U.S.

12  Navy.

13

14  March 10, 2011  Fredericksburg, Virginia          *Roger B Horne*
    Date and Place                                    Roger B. Horne, Jr.
15

16

17

18

19

20

21

22

23

24

25

26

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

## CERTIFICATE OF SERVICE

I certify under the laws of the United States of America that on the 16th day of March 2011 I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF System and served counsel below by the method indicated:

| | |
|---|---|
| Janet L. Rice<br>Schroeter Goldmark & Bender<br>810 Third Avenue<br>Suite 500<br>Seattle, Washington 98104<br>**Attorney for Plaintiffs** | [ ]  U.S. Mail<br>[ X ]  Messenger<br>[ ]  Email<br>[ ]  CM/ECF |
| Gene Barton<br>Karr Tuttle Campbell<br>1201 Third Avenue<br>Suite 2900<br>Seattle, Washington 98101<br>gbarton@karrtuttle.com<br>**Attorneys for Todd Shipyards Corp.** | [ ]  U.S. Mail<br>[ ]  Messenger<br>[ X ]  Email<br>[ ]  CM/ECF |
| Dirk Bernhardt<br>Murray Dunham Murray<br>P.O. Box 9844<br>200 West Thomas<br>Suite 350<br>Seattle, Washington 98109-0844<br>dirk@murraydunham.com<br>**Attorneys for Foster Wheeler Energy Corporation,**<br>**Hopeman Brothers, Inc.** | [ ]  U.S. Mail<br>[ ]  Messenger<br>[ X ]  Email<br>[ ]  CM/ECF |
| Jan Brucker<br>Greg Thoming<br>Rebecca Thorn<br>Rick Rosser<br>Jackson Jenkins Renstrom<br>701 Fifth Avenue<br>42nd Floor<br>Seattle, Washington 98104<br>jbrucker@jjr-law.com<br>gthorming@jjr-law.com<br>rthorn@jjr-law.com<br>**Attorneys for E&E Lumber, Inc.** | [ ]  U.S. Mail<br>[ ]  Messenger<br>[ X ]  Email<br>[ ]  CM/ECF |

| | |
|---|---|
| Richard Gawlowski<br>Wilson Smith Cochran & Dickerson<br>1215 Fourth Avenue<br>Suite 1700<br>Seattle, Washington 98161-1007<br>gawlowski@wscd.com<br>**Attorneys for Metropolitan Life Insurance Co.** | [ ] U.S. Mail<br>[ ] Messenger<br>[ X ] Email<br>[ ] CM/ECF |
| Diane Kero<br>Gordon Thomas<br>600 University Street<br>Suite 2100<br>Seattle, Washington 98101<br>dkero@gth-law.com<br>**Attorneys for Saint Gobain Containers, Inc.** | [ ] U.S. Mail<br>[ ] Messenger<br>[ X ] Email<br>[ ] CM/ECF |
| Stephen Leatham<br>Heurlin & Potter<br>211 East McLoughlin Boulevard<br>Suite 100<br>Vancouver, Washington 98666-0611<br>sgl@hpl-law.com<br>**Attorneys for CSK Auto** | [ ] U.S. Mail<br>[ ] Messenger<br>[ X ] Email<br>[ ] CM/ECF |
| Barry Mesher<br>Brian Zeringer<br>Lane Powell<br>1420 Fifth Avenue<br>Suite 4100<br>Seattle, Washington 98101-2338<br>mesherb@lanepowell.com<br>zeringerb@lanepowell.com<br>lowesheedyl@lanepowell.com<br>asbestos@lanepowell.com<br>**Attorneys for Georgia Pacific** | [ ] U.S. Mail<br>[ ] Messenger<br>[ X ] Email<br>[ ] CM/ECF |
| Steven V. Rizzo<br>Rizzo Mattingly Bosworth<br>411 Southwest 2nd Avenue<br>Suite 200<br>Portland, Oregon 97204<br>srizzo@rizzopc.com<br>recordsmanagement@rizzopc.com<br>**Attorneys for International Paper Company** | [ ] U.S. Mail<br>[ ] Messenger<br>[ X ] Email<br>[ ] CM/ECF |

| | |
|---|---|
| Katherine Steele<br>Katrina Mulligan<br>Stafford Frey<br>601 Union Street<br>Suite 3100<br>Seattle, Washington  98101<br>ksteele@staffordfrey.com<br>kmulligan@staffordfrey.com<br>**Attorneys for J.T. Thorpe & Son, Inc., Metalclad Insulation Corp.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[ X ]   Email<br>[  ]   CM/ECF |
| Timothy Thorson<br>Carney Badley Smith & Spellman<br>701 Fifth Avenue<br>Suite 3600<br>Seattle, Washington  98104-7010<br>thorson@carneylaw.com<br>berman@carneylaw.com<br>**Attorneys for Saberhagen Holdings, Inc.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[ X ]   Email<br>[  ]   CM/ECF |
| Matthew Turetsky<br>Schwabe Williamson & Wyatt<br>1420 Fifth Avenue<br>Suite 3010<br>Seattle, Washington  98101<br>mturetsky@schwabe.com<br>**Attorneys for General Refractories Co.** | [  ]   U.S. Mail<br>[  ]   Messenger<br>[ X ]   Email<br>[  ]   CM/ECF |

DATED this 16th day of Marcy 2011.

s/Robert G. André, WSBA#13072
Robert G. André

# EXHIBIT 9

1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
                    AT SEATTLE
10

11   LOLA and MICHAEL BOUCHARD, wife and      )   NO.
     husband,                                 )
12                                            )   DEFENDANT LOCKHEED SHIPBUILDING
                        Plaintiffs,           )   COMPANY'S CORPORATE DISCLOSURE
13                                            )   STATEMENT
            v.                                )
14                                            )
     CBS CORPORATION, *et al.*,               )   King County Superior Court
15                                            )   Cause No. 10-2-32586-7 SEA
                        Defendants.           )
16                                            )
     LOLA and MICHAEL BOUCHARD, wife and      )
17   husband,                                 )   King County Superior Court
                                              )   Cause No. 10-2-32587-5 SEA
18                      Plaintiffs,           )
                                              )
19          v.                                )
                                              )
20   CSK AUTO, INC., et al,                   )
                                              )
21                      Defendants.           )
                                              )
22

23       TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

24   WESTERN DISTRICT OF WASHINGTON:

25       Pursuant to Fed. R. Civ. P. 7.1, defendant Lockheed Shipbuilding Company makes the

26   following disclosures related to its corporate identity:

APR866636.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S                    OGDEN MURPHY WALLACE, P.L.L.C.
CORPORATE DISCLOSURE STATEMENT - 1                              1601 Fifth Avenue, Suite 2100
                                                              Seattle, Washington 98101-1686
                                                            Tel: 206.447.7000/Fax: 206.447.0215

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

     Lockheed Shipbuilding Company's parent company is Lockheed Martin.  Lockheed Shipbuilding Company is a wholly owned subsidiary of Lockheed Martin Corporation. Lockheed Martin Corporation discloses that it has no parent corporation and no publicly held corporation owning 10% or more of its stock.

    DATED this 16th day of March, 2011.

               OGDEN MURPHY WALLACE, P.L.L.C.

             By    s/Robert G. André
                 Robert G. André, WSBA #13072
                 1601 Fifth Avenue, Suite 2100
                 Seattle, Washington 98101-1686
                 Tel: 206.447.7000/Fax: 206.447.0215
                 Attorneys for Defendant
                 Lockheed Shipbuilding Company

APR866636.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
CORPORATE DISCLOSURE STATEMENT - 2

1

## CERTIFICATE OF SERVICE

2   I certify under the laws of the United States of America that on the 16th day of March 2011 I
3   electronically filed a true and correct copy of the foregoing document with the Clerk of the Court
    using the CM/ECF System and served counsel below by the method indicated:

4

| | |
|---|---|
| Janet L. Rice<br>Schroeter Goldmark & Bender<br>810 Third Avenue<br>Suite 500<br>Seattle, Washington 98104<br>**Attorney for Plaintiffs** | [ ]   U.S. Mail<br>[ X ]   Messenger<br>[ ]   Email<br>[ ]   CM/ECF |
| Gene Barton<br>Karr Tuttle Campbell<br>1201 Third Avenue<br>Suite 2900<br>Seattle, Washington 98101<br>gbarton@karrtuttle.com<br>**Attorneys for Todd Shipyards Corp.** | [ ]   U.S. Mail<br>[ ]   Messenger<br>[ X ]   Email<br>[ ]   CM/ECF |
| Dirk Bernhardt<br>Murray Dunham Murray<br>P.O. Box 9844<br>200 West Thomas<br>Suite 350<br>Seattle, Washington 98109-0844<br>dirk@murraydunham.com<br>**Attorneys for Foster Wheeler Energy Corporation,<br>Hopeman Brothers, Inc.** | [ ]   U.S. Mail<br>[ ]   Messenger<br>[ X ]   Email<br>[ ]   CM/ECF |
| Jan Brucker<br>Greg Thoming<br>Rebecca Thorn<br>Rick Rosser<br>Jackson Jenkins Renstrom<br>701 Fifth Avenue<br>42nd Floor<br>Seattle, Washington 98104<br>jbrucker@jjr-law.com<br>gthorming@jjr-law.com<br>rthorn@jjr-law.com<br>**Attorneys for E&E Lumber, Inc.** | [ ]   U.S. Mail<br>[ ]   Messenger<br>[ X ]   Email<br>[ ]   CM/ECF |

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

APR866636.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
CORPORATE DISCLOSURE STATEMENT - 3

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 90 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 89 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 62 of 72

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | Richard Gawlowski<br>Wilson Smith Cochran & Dickerson<br>1215 Fourth Avenue<br>Suite 1700<br>Seattle, Washington 98161-1007<br>gawlowski@wscd.com<br>**Attorneys for Metropolitan Life Insurance Co.** | [ ]  U.S. Mail<br>[ ]  Messenger<br>[ X ]  Email<br>[ ]  CM/ECF |
| 5<br>6<br>7<br>8<br>9 | Diane Kero<br>Gordon Thomas<br>600 University Street<br>Suite 2100<br>Seattle, Washington 98101<br>dkero@gth-law.com<br>**Attorneys for Saint Gobain Containers, Inc.** | [ ]  U.S. Mail<br>[ ]  Messenger<br>[ X ]  Email<br>[ ]  CM/ECF |
| 10<br>11<br>12<br>13<br>14 | Stephen Leatham<br>Heurlin & Potter<br>211 East McLoughlin Boulevard<br>Suite 100<br>Vancouver, Washington 98666-0611<br>sgl@hpl-law.com<br>**Attorneys for CSK Auto** | [ ]  U.S. Mail<br>[ ]  Messenger<br>[ X ]  Email<br>[ ]  CM/ECF |
| 15<br>16<br>17<br>18<br>19<br>20<br>21 | Barry Mesher<br>Brian Zeringer<br>Lane Powell<br>1420 Fifth Avenue<br>Suite 4100<br>Seattle, Washington 98101-2338<br>mesherb@lanepowell.com<br>zeringerb@lanepowell.com<br>lowesheedyl@lanepowell.com<br>asbestos@lanepowell.com<br>**Attorneys for Georgia Pacific** | [ ]  U.S. Mail<br>[ ]  Messenger<br>[ X ]  Email<br>[ ]  CM/ECF |
| 22<br>23<br>24<br>25<br>26 | Steven V. Rizzo<br>Rizzo Mattingly Bosworth<br>411 Southwest 2nd Avenue<br>Suite 200<br>Portland, Oregon 97204<br>srizzo@rizzopc.com<br>recordsmanagement@rizzopc.com<br>**Attorneys for International Paper Company** | [ ]  U.S. Mail<br>[ ]  Messenger<br>[ X ]  Email<br>[ ]  CM/ECF |

DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
CORPORATE DISCLOSURE STATEMENT - 4

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

| | |
|---|---|
| Katherine Steele<br>Katrina Mulligan<br>Stafford Frey<br>601 Union Street<br>Suite 3100<br>Seattle, Washington 98101<br>ksteele@staffordfrey.com<br>kmulligan@staffordfrey.com<br>**Attorneys for J.T. Thorpe & Son, Inc., Metalclad Insulation Corp.** | [   ]   U.S. Mail<br>[   ]   Messenger<br>[ X ]   Email<br>[   ]   CM/ECF |
| Timothy Thorson<br>Carney Badley Smith & Spellman<br>701 Fifth Avenue<br>Suite 3600<br>Seattle, Washington 98104-7010<br>thorson@carneylaw.com<br>berman@carneylaw.com<br>**Attorneys for Saberhagen Holdings, Inc.** | [   ]   U.S. Mail<br>[   ]   Messenger<br>[ X ]   Email<br>[   ]   CM/ECF |
| Matthew Turetsky<br>Schwabe Williamson & Wyatt<br>1420 Fifth Avenue<br>Suite 3010<br>Seattle, Washington 98101<br>mturetsky@schwabe.com<br>**Attorneys for General Refractories Co.** | [   ]   U.S. Mail<br>[   ]   Messenger<br>[ X ]   Email<br>[   ]   CM/ECF |

DATED this 16th day of March 2011.

s/Robert G. André, WSBA#13072
Robert G. André

DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
CORPORATE DISCLOSURE STATEMENT - 5

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 92 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 91 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 64 of 72

# EXHIBIT 10

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 93 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 92 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 65 of 72

The Honorable Douglass North
Room W-764

1

2

3

4

5

6

7

8            IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
             IN AND FOR KING COUNTY

9    LOLA and MICHAEL BOUCHARD, wife and          )   NO. 10-2-32586-7 SEA
10   husband,                                     )
                                                  )   DEFENDANT LOCKHEED SHIPBUILDING
11                        Plaintiffs,             )   COMPANY'S NOTICE OF REMOVAL TO
                                                  )   FEDERAL COURT
12        v.                                      )
                                                  )
13   CBS CORPORATION, et al.,                     )
                                                  )
14                        Defendants.             )
                                                  )
15   LOLA and MICHAEL BOUCHARD, wife and          )   NO. 10-2-32587-5 SEA
16   husband,                                     )
                                                  )
17                        Plaintiffs,             )
                                                  )
18        v.                                      )
                                                  )
19   CSK AUTO, INC., et al.,                      )
                                                  )
20                        Defendants.             )
                                                  )

21   TO:         Clerk of the Court

22   AND TO:     Plaintiffs, Lola Bouchard and Michael Bouchard, and their attorney, Janet Rice

23               NOTICE IS HEREBY GIVEN, pursuant to 28 U.S.C. § 1446(d), that on March 16, 2011,

24   defendant Lockheed Shipbuilding Company filed a Notice of Removal of Action Under 28

25   U.S.C. §§ 1442(a)(1), a copy of which is attached to this notice, for removal of the above entitled

26

APR.866227.DOC;1\12060.000029\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
NOTICE OF REMOVAL TO FEDERAL COURT - 1

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   consolidated actions to the United States District Court for the Western District of Washington at

2   Seattle.

3          The filing of this copy of the Notice of Removal effects the removal of this case, and,

4   pursuant to 28 U.S.C. § 1446(d), the State court shall proceed no further unless and until the case

5   is remanded.

6          DATED this 16th day of March, 2011.

7                                            OGDEN MURPHY WALLACE, P.L.L.C.

8

9                               By

10                                          Robert G. André, WSBA #13072
                                            Attorneys for Defendant
11                                          Lockheed Shipbuilding Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

APR866227.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
NOTICE OF REMOVAL TO FEDERAL COURT - 2

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

## DECLARATION OF SERVICE

Carole Henry hereby makes the following declaration pursuant to CR 5(b)(B) and RCW 9A.72.085:

    1.    I am now and was at all times material hereto over the age of 18 years. I am not a party to the above-entitled action and am competent to be a witness herein.

    2.    I certify that I served via messenger a copy of the foregoing Defendant Lockheed Shipbuilding Company's Notice of Removal to Federal Court to Janet Rice, plaintiffs' attorney, at Schroeter Goldmark & Bender, 810 Third Avenue, Suite 500, Seattle, Washington, 98104, and e-mailed to defendants' attorneys at:

Gene Barton
Karr Tuttle Campbell
1201 Third Avenue
Suite 2900
Seattle, Washington 98101
gbarton@karrtuttle.com
**Attorneys for Todd Shipyards Corp.**

Dirk Bernhardt
Murray Dunham Murray
P.O. Box 9844
200 West Thomas
Suite 350
Seattle, Washington 98109-0844
dirk@murraydunham.com
**Attorneys for Foster Wheeler Energy Corporation, Hopeman Brothers, Inc.**

Jan Brucker
Greg Thoming
Rebecca Thorn
Rick Rosser
Jackson Jenkins Renstrom
701 Fifth Avenue
42nd Floor
Seattle, Washington 98104
jbrucker@jjr-law.com
gthoming@jjr-law.com
rthorn@jjr-law.com
**Attorneys for E&E Lumber, Inc.**

Richard Gawlowski
Wilson Smith Cochran & Dickerson
1215 Fourth Avenue
Suite 1700
Seattle, Washington 98161-1007
gawlowski@wscd.com
**Attorneys for Metropolitan Life Insurance Co.**

DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
NOTICE OF REMOVAL TO FEDERAL COURT - 3

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 96 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 95 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 68 of 72

1    Diane Kero                                 Stephen Leatham
     Gordon Thomas                              Heurlin & Potter
2    600 University Street                      211 East McLoughlin Boulevard
     Suite 2100                                 Suite 100
3    Seattle, Washington  98101                 Vancouver, Washington  98666-0611
     dkero@gth-law.com                          sgl@hpl-law.com
4    **Attorneys for Saint Gobain Containers, Inc.**   **Attorneys for CSK Auto**
5
     Barry Mesher                               Steven V. Rizzo
6    Brian Zeringer                             Rizzo Mattingly Bosworth
     Lane Powell                                411 Southwest 2nd Avenue
7    1420 Fifth Avenue                          Suite 200
8    Suite 4100                                 Portland, Oregon  97204
     Seattle, Washington  98101-2338            srizzo@rizzopc.com
9    mesherb@lanepowell.com                     recordsmanagement@rizzopc.com
     zeringerb@lanepowell.com                   **Attorneys for International Paper Company**
10   lowesheedyl@lanepowell.com
     asbestos@lanepowell.com
11   **Attorneys for Georgia Pacific**
12
     Katherine Steele                           Timothy Thorson
13   Katrina Mulligan                           Carney Badley Smith & Spellman
     Stafford Frey                              701 Fifth Avenue
14   601 Union Street                           Suite 3600
     Suite 3100                                 Seattle, Washington  98104-7010
15   Seattle, Washington  98101                 thorson@carneylaw.com
     ksteele@staffordfrey.com                   berman@carneylaw.com
16   kmulligan@staffordfrey.com                 **Attorneys for Saberhagen Holdings, Inc.**
17   **Attorneys for J.T. Thorpe & Son, Inc.,**
     **Metalclad Insulation Corp.**
18
19   Matthew Turetsky
     Schwabe Williamson & Wyatt
20   1420 Fifth Avenue
     Suite 3010
21   Seattle, Washington  98101
     mturetsky@schwabe.com
22   **Attorneys for General Refractories Co.**
23   on the 16th day of March 2011.
24
25
26

APR866227.DOC;1\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
NOTICE OF REMOVAL TO FEDERAL COURT - 4

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 97 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 96 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 69 of 72

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I declare under penalty of perjury under the laws of the State of Washington that the

foregoing is true and correct.

_Marv6/11  Seattle Wa_  
Date and Place

_Carole Henry_  
Carole Henry

APR866227.DOC;J\12060.000025\
DEFENDANT LOCKHEED SHIPBUILDING COMPANY'S
NOTICE OF REMOVAL TO FEDERAL COURT - 5

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 98 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 97 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 70 of 72

# EXHIBIT 11

Case MDL No. 875   Document 7361-12   Filed 06/14/11   Page 99 of 100

Case 2:11-cv-66270-ER   Document 10   Filed 06/06/11   Page 98 of 99
Case 2:11-cv-00458   Document 3   Filed 03/16/11   Page 71 of 72

1
2
3
4
5
6
7

8              BEFORE THE JUDICIAL PANEL
                         ON
9              MULTIDISTRICT LITIGATION

10  LOLA and MICHAEL BOUCHARD, wife and    )    MDL DOCKET NO. 875
11  husband,                               )
                                           )    DEFENDANT LOCKHEED SHIPBUILDING
12                     Plaintiffs,         )    COMPANY'S NOTICE OF TAG-ALONG
                                           )    ACTION
13           v.                            )
                                           )    W.D. WASH. NO.
14  CBS CORPORATION, et al.,               )
                                           )
15                     Defendants.         )
                                           )
16  LOLA and MICHAEL BOUCHARD, wife and    )
17  husband,                               )
                                           )
18                     Plaintiffs,         )
                                           )
19           v.                            )
                                           )
20  CSK AUTO, INC., et al,                 )
                                           )
                       Defendants.         )
21                                         )
22

23  TO:    Clerk of the Panel, Judicial Panel on Multidistrict Litigation:

24         PLEASE TAKE NOTICE that on July 29, 1991, the Judicial Panel on Multidistrict

25  Litigation entered an order transferring all asbestos cases pending in federal court to the United

26  States District Court, Eastern District of Pennsylvania, for coordinated or consolidated pretrial

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1  proceedings pursuant to 28 U.S.C. § 1407 ("MDL Transfer Order"). That order also applies to

2  "tag-along actions," or actions involving common questions of fact filed after the January 17,

3  1991 filing of the Panel's Order to Show Cause. Panel Rules 1.1 and 7.4(a) provide:

4            Any party or counsel in action previously transferred under section
             1407 or under consideration by the Panel for transfer under section
5            1407 shall notify the Clerk of the Panel of any potential "tag-along
             actions" in which that party is also named or in which that counsel
6            appears.

7        The undersigned hereby notifies the Court that this case, currently pending in United

8  States District Court of Western District of Washington at Seattle (No. _____), is a

9  potential "tag-along action" which may be subject to transfer to the Eastern District of

10  Pennsylvania. The Clerk of the Panel may either (1) enter a conditional transfer order pursuant

11  to MDL Rule 7.4 or (2) file an order to show cause why the action should not be transferred,

12  pursuant to MDL Rule 7.3.

13        DATED this _____ day of March, 2011.

14                                    OGDEN MURPHY WALLACE, P.L.L.C.

15
                                      By    s/Robert G. André
16                                         Robert G. André, WSBA #13072
                                           1601 Fifth Avenue, Suite 2100
17                                         Seattle, Washington 98101-1686
                                           Tel: 206.447.7000/Fax: 206.447.0215
18                                         Attorneys for Defendant
                                           Lockheed Shipbuilding Company
19

20

21

22

23

24

25

26

APR866638.DOC;1\12060.000025\
NOTICE OF TAG-ALONG ACTION - 2