ASBST, FKB, JURY, NO_CMC, REMOVAL

# U.S. District Court
## Southern District of Mississippi (Jackson)
## CIVIL DOCKET FOR CASE #: 3:11-cv-00348-DPJ -FKB
## Internal Use Only

Tate v. Layne & Bowler, Inc. et al
Assigned to: District Judge Daniel P. Jordan, III
Referred to: Magistrate Judge F. Keith Ball
Case in other court: The Circuit Court of Hinds County,
Mississippi, 251-11-00452-CIV
Cause: 28:1441 Notice of Removal-Personal Injury

Date Filed: 06/10/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

### Plaintiff

**Elizabeth Tate**
*Individually and on behalf of the*
*wrongful death beneficiaries of Donnie*
*Allen Tate, Deceased*

represented by **John T. Givens**
Porter & Malouf, P.A.
P.O. Box 12768
Jackson, MS 39236
601/957-1173
Fax: 601/957-7366
Email: johnny@portermalouf.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Cash Malouf**
PORTER & MALOUF, PA
P. O. Box 12768
Jackson, MS 39236
601/957-1173
Fax: 601/957-7366
Email: patrick@portermalouf.com
*ATTORNEY TO BE NOTICED*

**Timothy W. Porter**
PORTER & MALOUF
P. O. Box 12768
Jackson, MS 39236
601/957-1173
Fax: 601/957-7366
Email: tim@portermalouf.com
*ATTORNEY TO BE NOTICED*

A TRUE COPY, I HEREBY CERTIFY.
J. T. NOBLIN, CLERK
BY:
DEPUTY CLERK

V.

### Defendant

**Layne & Bowler, Inc.**

represented by **Sarah Beth Windham**
AULTMAN, TYNER, RUFFIN, BELL

& SWETMAN LTD.
P. O. Box 750
Hattiesburg, MS 39403-0750
601/583-2677
Fax: 601/583-2671
Email:
bethwindham@aultmantyner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daphne M. Lancaster**
AULTMAN, TYNER & RUFFIN,
LTD.
P. O. Drawer 750
Hattiesburg, MS 39403-0750
(601) 583-2671
Email: msanford@aultmantyner.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Layne & Bowler Pump Co.**                     represented by **Samuel D. Habeeb**
FORMAN, PERRY, WATKINS,
KRUTZ & TARDY
P.O. Box 22608
Jackson, MS 39225-2608
(601) 960-8600
Email: habeebs@fpwk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Minnesota Mining & Manufacturig Company**

**Defendant**

**John Doe Defendants 1-500**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/10/2011 | 1 | NOTICE OF REMOVAL by Layne & Bowler, Inc. from The Circuit Court of Hinds County, Mississippi, case number 251-11-452-CIV. JURY DEMADN ( Filing fee $ 350.00 receipt number 34643010236) <br><br> Pursuant to Rule L.U.Civ.R. 5(b): within 14 days removing party must electronically file the entire state court record as a single filing; and all parties shall, within fourteen days after the Case Management Conference, file as **separate docket items** any unresolved motions that were filed in state court which they wish to advance. (Attachments: # 1 Civil Cover Sheet, # 2 Lower Court's Complaint, # 3 Lower Court's Documents)(SEC) (Entered: |

|  |  | 06/10/2011) |
|---|---|---|
| 06/10/2011 |  | (Court only) ***Set Magistrate Judge Ball, NO CMC Flags (SEC) (Entered: 06/10/2011) |
| 06/14/2011 | 2 | NOTICE *of Tag-Along Action* by Layne & Bowler, Inc. (Windham, Sarah) (Entered: 06/14/2011) |
| 06/15/2011 | 3 | Joinder in Document by Layne & Bowler Pump Co. to 1 Notice of Removal,, filed by Layne & Bowler, Inc. (Habeeb, Samuel) (Entered: 06/15/2011) |
| 06/16/2011 | 4 | *Affirmative Defenses and* ANSWER to Complaint (Notice of Removal) by Layne & Bowler, Inc. (Windham, Sarah) (Entered: 06/16/2011) |

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**ELIZABETH TATE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES
OF DONNIE ALLEN TATE, DECEASED**                    **PLAINTIFF**

**VERSUS**                    CIVIL ACTION NO. 3:11cv 348-DPJ-FKB

**LAYNE & BOWLER, INC.
LAYNE & BOWLER, PUMP CO.
MINNESOTA MINIG & MANUFACTURING COMPANY
JOHN DOE DEFENDANTS 1-500**                    **DEFENDANTS**

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §1441, *et seq.*, Defendant,

Layne & Bowler, Inc, (hereinafter "Layne & Bowler") has removed this action from the

Circuit Court of Hinds County, Mississippi, First Judicial District, and in support thereof

would show as follows:

1. The Complaint as styled above was filed in the Circuit Court of Hinds County,
   Mississippi, First Judicial District where it was assigned Civil Action No.
   251-11-452CIV, on May 24, 2011, and is now pending before that court.  It
   seeks actual, compensatory and punitive damages against Defendants as a
   result of Plaintiff's alleged exposure to asbestos containing products.  A copy
   of the Complaint is attached hereto as Exhibit "A," and incorporated herein by
   reference.

2. Plaintiff is an adult resident citizen of the State of Mississippi.

3. Defendants named in the Complaint are:

    a. Layne & Bowler, Inc., a foreign corporation;

    b. Layne & Bowler Pump Co., a foreign corporation; and

1

    c.    Minnesota, Mining & Manufacturing Company, a Delaware corporation.

4.  The action is removed to the district court for the district in which the state action was pending.  28 U.S.C. §1446 (a).

5.  This Court has original jurisdiction of this matter by reason of diversity of citizenship of the parties, pursuant to 28 U.S.C. §1332.

6.  The amount in controversy in the action, exclusive of interest and costs, exceeds the jurisdictional minimum.

7.  This Notice of Removal is filed within thirty (30) days of service on the first defendant and is therefore timely under 28 U.S.C. §1446(b).

8.  Pursuant to 28 U.S.C. §1446 (a) a copy of all other process, pleadings and orders served upon Layne & Bowler in the state court action are attached as Exhibit "B" to this Notice of Removal.

9.  A copy of this Notice of Removal will be sent to all counsel of record and will be filed with the Circuit Court of Hinds County, Mississippi, First Judicial District.

WHEREFORE, Layne & Bowler, Inc., serves this Notice of Removal and removes this civil action to the United States District Court for the Southern District of Mississippi, Jackson Division.

Respectfully submitted this the _____day of June, 2011.

LAYNE & BOWLER, INC.
Defendant
BY: _____
S. BETH WINDHAM
Its Counsel

2

## CERTIFICATE OF SERVICE

I, S. Beth Windham, do hereby certify that I have this day mailed by United States Mail, postage pre-paid, a true and correct copy of the above and foregoing to the following:

Timothy W. Porter, Esq.
Patrick Malouf, Esq.
Johnny Givens, Esq.
Porter & Malouf, P.A.
825 Ridgewood Rd.
Ridgeland, MS 39175
Attorneys for Plaintiff

Samuel D. Habeeb, Esq.
Forman, Perry, Watkins, Krutz and Tardy, LLP
200 South Lamar Street
Suite 100
Jackson, Mississippi 39201-4099
Attorney for Layne & Bowler Pump Co.

Barbara Dunn, Clerk
Hinds County Circuit Court
First Judicial District
P.O. Drawer 327
Jackson, MS 39205

THIS the _____ day of June, 2011.

S. BETH WINDHAM

JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Elizabeth Tate Individually and on behalf of the Wrongful Death Beneficiaries of Donnie Allen Tate

**DEFENDANTS**
Layne & Bowler, Inc.
Layne & Bowler Pump Co.
Minnesota Mining & Mfg.

(b) County of Residence of First Listed Plaintiff    **Monroe County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

SOUTHERN DISTRICT OF MISSISSIPPI

JUN 10 2011

J. T. NOBLIN, CLERK
BY_____ DEPUTY

(c) Attorney's (Firm Name, Address, and Telephone Number)
John T. Givens, Esq. Porter & Malouf, P.A. P.O. Box 12768 Jackson, MS 39206 PH. 601-975-1173

Attorneys (If Known)
see attached Exhibit "A."

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☒ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                       and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☒ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☐ 1 Original
     Proceeding

☒ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1441

Brief description of cause:
asbestos litigation

## VII. REQUESTED IN
## COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
## IF ANY

(See instructions):
JUDGE _____

DOCKET NUMBER _____

DATE
6/9/11

SIGNATURE OF ATTORNEY OF RECORD
S. Beth Windl

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

Exhibit "A."

Samuel D. Habeeb, Esq.
Forman, Perry, Watkins, Krutz and Tardy, LLP
200 South Lamar Street
Suite 100
Jackson, Mississippi 39201-4099
Attorney for Layne & Bowler Pump Co.


Daphne Lancaster, Esq.
S. Beth Windham, Esq.
AULTMAN, TYNER & RUFFIN LTD
P.O. DRAWER 750
HATTIESBURG, MS   39403-0750
(601) 583-2671 phone
(601) 583-2677 fax
Attorneys for Layne & Bowler, Inc.

# FILED

IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

MAY 24 2011

BARBARA DUNN, CIRCUIT CLERK

BY_____D.C.

ELIZABETH A. TATE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES
OF DONNIE ALLEN TATE, DECEASED

**PLAINTIFFS**

**VERSUS**

CIVIL ACTION NO. _25L11-452CW_

LAYNE & BOWLER, INC.
LAYNE & BOWLER PUMP CO.
MINNESOTA MINING & MANUFACTURING COMPANY
JOHN DOE DEFENDANTS 1-500

**DEFENDANTS**

## COMPLAINT
### JURY TRIAL REQUESTED

1.   Plaintiff hereby complains as follows:

2.   Plaintiff, Elizabeth A. Tate is an adult resident citizen of Monroe County whose
address is 52187 Highway 25 South, Amory, Mississippi 38821.  Elizabeth Tate is
the widow of Donnie A. Tate.

3.   The Deceased, Donnie A. Tate died on May 30, 2008 from lung cancer and resided
at 52187 Highway 25 South, Amory, Mississippi 38821 at the time of his death.

4.   The Defendant, Layne & Bowler, Inc., is a foreign corporation who may be served
with process in care of SPX Corporation, John B. Blystone, 13515 Ballentyne
Corporate Place, Charlotte, North Carolina 28277.

5.   The Defendant, Layne & Bowler Pump Co., is a foreign corporation who may be
served with process in care of SPX Corporation, John B. Blystone, 13515 Ballentyne
Corporate Place, Charlotte, North Carolina 28277.



EXHIBIT

A

other products, that each contained fibrous, incombustible, chemical-resistant, mineral substances commonly called "asbestos," or other substances such as diatomaceous earth more fully set forth below:

A.    Layne & Bowler, Inc and Layne & Bowler Pump Co. manufactured pumps with asbestos packing, gaskets and insulation. Plaintiff was exposed while employed with Amory Garment Company and True Temper Sports.

B.    3M manufactured paper dust masks which plaintiff used at many sites while working around asbestos.

11.    During all or part of the "exposure period," the Deceased worked at Amory Garment Company in Amory, Mississippi from 1962-1978 in maintenance and at True Temper Sports in Amory, Mississippi from 1978 to 2006 doing maintenance. Throughout said period of exposure and at all employments, the plaintiffs worked with the products identified in the previous paragraph.

12.    When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself in lung disease, asbestosis, mesothelioma, pulmonary and broncho genic carcinoma, and cardiac disease, among other diseases and injuries.

13.    Each of the Defendants knew or should have known through industry and medical studies, the existence of which was unknown to Plaintiff of the health hazards to Plaintiff inherent in the asbestos-containing products prepared, supplied, and sold for use in the State of Mississippi. Instead of warning the Plaintiff, other intended

Page 3 of 20

users, and the general public about these dangers, the Defendants ignored or actively and fraudulently concealed such information, or condoned such concealment, and commanded, directed, advised, encouraged, aided, abetted, or conspired with others or each other in so doing in order to sell asbestos and avoid litigation by those who were injured from asbestos inhalation. Said actions or inactions constitute gross negligence and show a callous disregard for the rights and safety of the Plaintiff and others giving rise to the imposition of punitive damages against the Defendants herein.

14.     In connection with their work during the exposure period, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of such asbestos, having neither knowledge nor reason to believe that asbestos was dangerous.

15.     As a direct and proximate contributing result of having inhaled, ingested or otherwise being exposed to asbestos during the exposure period, the Plaintiff has received injuries, both physically and mentally including, without limitation, the following conditions:

    A.      Asbestosis;

    A.      Impaired Pulmonary Capacity;

    C.      Reduced Lung Volume;

    D.      Interstitial Lung Fibrosis;

    E.      Injury to lung tissue and/or pleura;

    F.      Lung Cancer; and

Page 4 of  20

G.      Death

16.     Plaintiff further charges that as a direct and proximate result of having inhaled, ingested or otherwise being exposed to asbestos, he has received permanent and painful injuries. Plaintiff would further show that he has suffered physical and mental pain and anguish, medical expenses, loss of wages, loss of wage earning capacity and will continue to sustain damages of the above type in the future including, but not limited to, physical and mental pain and anguish, disability, future medical expenses and loss of the enjoyment of life.

17.     Because of the latency period of the above asbestos injuries and because of the active concealment by the Defendants of the causes and effects of exposure to asbestos, the Plaintiff has only recently discovered his injuries.

**COUNT ONE**

**Strict Liability**

18.     Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint.

19.     The Defendants and/or their predecessor entities were engaged in, or materially participated in, or aided and abetted in the business of selling asbestos and materials containing asbestos, which were expected to and did reach Mississippi and equipment in and around Mississippi, as well as other work sites where plaintiff was employed, without substantial change in the condition in which they were sold, where said products released asbestos fibers which were inhaled and ingested by the Plaintiff in connection with his work.

20.     The asbestos was in a defective condition unreasonably dangerous to the Plaintiff

who was the intended and foreseeable user or bystander of the asbestos. These

defects included, without limitation, the following:

a.   Inherent and known properties common to the asbestos sold by the
Defendants that created unreasonably high potential for causing respiratory
diseases, cancer and other health problems to workers or members of such
workers' households who would be exposed to asbestos.

b.   Lack of warnings or lack of sufficient warnings by the Defendants of the
inherently dangerous properties of asbestos when used for the purpose for
which it was manufactured and sold.

c.   Lack of instructions or lack of sufficient instructions by the Defendants for
eliminating or minimizing the health risks inherent in the use of asbestos.

d.   Lack of reasonable inspections by the Defendants of their asbestos
products to ensure that such asbestos products contained sufficient
warnings of the dangerous properties of asbestos.

e.   Lack of reasonable inspections by the Defendants of their asbestos
products to ensure that such asbestos products contained sufficient
instructions for eliminating or minimizing the health risks inherent in the
use of asbestos.

f.   Lack of tests or lack of sufficient tests by the Defendants to determine the
harmful effects of asbestos on intended users and bystanders.

g.   Defective designs by the Defendants calling for the inclusion of asbestos
in products that did not require asbestos, and where alternate, equally
suitable substances were available.

h.   Lack of warnings or lack of sufficient warnings by the Defendants upon
their discovering the full extent of the dangers presented by asbestos-
containing materials and products.

21.   Each of the Defendants knew or should have known that the Plaintiff would be

exposed to their asbestos products without inspection of the medical literature by

the Plaintiff on the adverse health effects of asbestos. By marketing the asbestos-

containing products without warning of the dangerous characteristics of the

products, the Defendants represented to the Plaintiff and the public, who

justifiably relied thereon, that asbestos was not dangerous.

22.    The defective conditions of the Defendants' asbestos products proximately caused

or contributed to the Plaintiff's injuries and damages as described in this

Complaint.

23.    Defendants' actions were performed intentionally or with disregard for the health

and safety of Plaintiff.

24.    WHEREFORE, the Plaintiff demands both compensatory and punitive damages

against the Defendants in an amount to be determined by a jury at trial.


## COUNT TWO

### Negligence

25.    Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint.

26.    Each of the Defendants had, but breached, a duty to the Plaintiff to exercise the

highest standard of care in designing, testing, manufacturing, marketing, and

selling asbestos which is an extraordinarily and inherently dangerous substance.

The breached duties included, without limitation, the duty:

a.    To select the types of asbestos or alternate materials that would reduce or
eliminate health hazards to those who would work with, and in the vicinity
of asbestos.

b.    To warn adequately of the extraordinary health hazards known by the
Defendants to be associated with asbestos use.

c.    To instruct adequately in methods of using asbestos that would reduce the
danger of inhalation or ingestion of asbestos dust.

    d.     To test adequately the asbestos products to determine the dangers concomitant with their use.

    e.     To remove the asbestos products from the stream of commerce upon discovering their dangerous properties.

    f.     To inspect the asbestos products for adequate warnings and instructions.

27.    As a direct and proximate result of the Defendants' aforesaid breaches of their duties to the Plaintiff, the Plaintiff has sustained the injuries and damages described herein.

28.    In breaching or materially assisting others in breaching their duties to the Plaintiff, as described above, the Defendants acted intentionally, with gross negligence, recklessly, maliciously and wantonly in that the Defendants and each of them knew or should have known through data available exclusively to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended and foreseen by the Defendants, and that each of their aforesaid breaches of duty would result in the injuries suffered by Plaintiff.

29.    WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount to be determined by a jury at trial.

### COUNT THREE

### Breach of Warranties

30.    Plaintiff incorporates the foregoing allegations of this Complaint.

31.    The Plaintiff reasonably relied upon the Defendants who were manufacturers, sellers, or distributors of asbestos-containing products to exercise their skills and judgment to select and furnish goods of a suitable and reasonably safe nature and

to furnish products fit for the particular purposes intended and to be supplied in a merchantable condition.

32.     Defendants breached their legal duties in that their products were not sold and furnished in a merchantable and reasonably safe condition and were not fit for the particular purpose intended in accordance with the laws of the State of Mississippi.

33.     As a direct and proximate result of the Defendants' aforesaid breaches and breaches of their legal duties owed to the Plaintiff, the Plaintiff has sustained injuries and damages as described herein.

34.     WHEREFORE, the Plaintiffs demand judgment of, from, and against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

**COUNT FOUR**

**Fraudulent Concealment/Misrepresentation/**

**Alteration of Medical Studies/Conspiracy**

35.     Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint.

36.     Defendants named herein, individually and as agents of one another and a co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed and conspired among themselves and with other asbestos manufacturers and distributors to injure Plaintiff.

37.     Defendants named herein knew that the others' conduct constituted a breach of

duty and gave substantial assistance or encouragement to the others to conduct

itself likewise.

38.   The Defendants acted in the following fashion:

a.   Metropolitan Life Insurance Company ("Met Life") required a tangible *quid pro quo* from MaGill University in the 1920s in exchange for their providing funding for a study of asbestos disease in Canadian miners. The study revealed asbestos miners suffered from asbestosis. The study was never published and agents of Met Life materially misrepresented in the published literature this known fact.

b.   In 1932, Met Life, through its agents, Dr. Anthony Lanza, Dr. Fellos, and others, assisted the Johns-Manville corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey. The report of his study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and, therefore, was unavailable to scientist studying the issue of the asbestos disease. Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

c.   Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney, J. C. Hobart, and conspirator, Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrback, suggested to Dr. Lanza, Associate Medical Director of Met Life (insurers of Manville, Raybestos, and others) that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure, i.e., the seriousness of the disease process, asbestosis. This was accomplished through intentional deletion of Dr. Lanza' description of asbestosis as "fatal" and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was then known to be. As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935. The Defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the insurer.

d.   In 1936, conspirators, American Brake Block Corporation, Asbestos

Manufacturing Company, Gate Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H. K. Porter Company), Union Asbestos and Rubber Company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientist from disclosing material scientific data resulting in numerous misstatements of fact being made at scientific meetings.

e.    On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gate Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Inc., Thermoid Company (whose assets and liabilities were later purchased by H. K. Porter Company), Union Asbestos and Rubber Company, and U. S. Gypsum Company. U. S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

f.    At this November 11, 1948, meeting, these Defendants and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos-containing products.

g.    At this meeting, the Defendants intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald. The acts of these Defendants were carried out by co-conspirator Defendant Met Life's agent, Dr. Lanza. These Defendants thereby fraudulently

misrepresented the risks of asbestos exposure to the public, in general, and the class of persons exposed to asbestos, including Plaintiffs.

h.    As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January, 1951, in the *Archives of Industrial Hygiene and Occupational Medicine* (Vol. 3, No. 1), a journal of the American Medical Association. The published version stressed those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLVs). Furthermore, that article made a false claim that the published report was the "complete survey" of Dr. Gardner's work. The Defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries, government officials, medical doctors, agencies, the public, and others.

i.    Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

j.    The following conspirators and others were members of the trade association 'known as Quebec Asbestos Mining Association (Q.A.M.A.): Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), the Celotex Corporation (successor to Quebec Asbestos Corporation), National Gypsum Company (n/k/a Asbestos Claims Management Corporation), and Turner & Newall (individually and successor to Bell Asbestos). The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the AMA Archives '*of Industrial Health* in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators indicating close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A.'s members.

k.    Defendants who were members of Q.A.M.A. began on or about 1950 to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory controls of asbestos with the specific intent of misrepresenting the existing

scientific information and suppressing contrary scientific data in their possession and control.

l. This plan of misrepresentation and influence over the medical literature began on or about 1950 when the Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, the Q.A.M.A. members refused to further fund the study and it was terminated and never publicly discussed.

m. As a result of the termination of this study, these Defendants Fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators' agents Kenneth W. Smith, M.D., Paul Cartier, M.D., Arthur J. Vorwald, M.D., Anthony J. Lanza, M.D., Vandiver Brown, and Ivan Sabourin, said misrepresentations being direct to, *inter alia,* U.S. Government officials, Canadian government officials. U.S. National Cancer Institute, other medical organizations, and the general public, including Plaintiffs.

n. Subsequently, the Q.A.M.A. Defendant conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) And Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Dr. Braun and Truan reported to the Q.A.M.A. asbestosis did increase a worker's chances of incurring lung cancer.

o. The Q.A.M.A. Defendants thereafter caused in 1958 a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in persons asbestosis was edited out by agents of the Q.A.M.A. The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the Defendant conspirators to be patently false.

p. By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting a document finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. Defendants affirmatively misrepresented to the public and concealed from the public the extent of risks associated with inhalation of asbestos fibers.

q. In approximately 1958, the Q.A.M.A. Defendants publicized the edited

works of Dr. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

r.   The fraudulent misrepresentations beginning in 1946, as elaborated above and continuing with the publication of the 1958 Braun/Truan study, influenced the standards set for TLVs and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

s.   In 1967, the Q.A.M.A. Defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risks involved in inhalation of asbestos products.

t.   In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories.  The following conspirators ere in attendance: Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of theirs agents, Cartier, Sabourin, and Lechance.

u.   At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos was also discussed.  In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these Defendants conspired to prevent publication of the record in this 1952 Saranac Symposium and it was not published.  In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess tumors in animals , thereby fraudulently misrepresenting existing data, albeit secret, that should not be publicized because of the secrecy provisions contained in the 1936 Saranac Agreement required by the asbestos industry members.

v.   The following conspirators were members of the Magnesia Insulation Manufacturers Association (MIMA): Philip-Carey Corporation (predecessor to Celotex), Johns-Manville and others.

w.   In 1955, these conspirators caused to be published the MIMA 85% Magnesia Insulation Manual.  This manual falsely and fraudulently misrepresented that asbestos containing products offered no hazard to workers who used these products.

x.   The following conspirators were members of the trade organizations known as the Asbestos Textile Institute (ATI): Raybestos-Manhattan,

Johns-Manville, H. K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newall), National Gypsum (n/k/a Asbestos Claims Management Corporation), and others.

y.   In 1947, the members of the ATI received a report from W.C. L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure. These Defendants caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing TLV was acceptable. Thereafter, these Defendant conspirators withheld additional material information on the dust standards from the American Conference of Governmental Industrial Hygienist (ACGIH), thereby further influencing evaluations for asbestos exposure.

z.   In 1953, conspirator National Gypsum (n/k/a Asbestos Claims Management Corporation), through its agents, in response to an injury from the Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed from such applicators the need for respirators.

aa.   In 1955, Johns-Manville, through its agent, Kenneth W. Smith, M.D., caused to be published in the AMA *Archives of Industrial Health*, an article entitled "Pulmonary Disability in Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

bb.   In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as agent for other alleged co-conspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer when, in fact, the conspirators were in secret possession of several studies that demonstrated that positive evidence did exist.

cc.   In 1957, the members of the ATI jointly rejected a proposed research study on cancer and asbestos, and this resulted in fraudulent concealment from

the public of material facts regarding asbestos exposure and also
constituted an affirmative misrepresentation of the then-existing
knowledge about asbestos exposure and lung cancer.

dd.  In 1964, the members of the ATI met to formulate a plan for rebutting the
association between lung cancer and asbestos exposure that had been
recently discussed by Dr. Irving J. Selikoff.  Thereafter, these members of
the ATI embarked upon a campaign to further misrepresent the association
between asbestos exposure and lung cancer.

ee.  In 1970, through their agents, Defendants, the Celotex Corporation and
Carey-Canada, affirmatively misrepresented that it had been in the
asbestos business since 1918 and found no reported conditions of
asbestosis or lung disease.  This constituted a fraudulent misrepresentation
about the material facts known to these Defendants.

ff.  All conspirators approved and ratified and furthered the previous
conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan,
and Anthony J. Lanza, M.D., acting on behalf of Met Life, and all alleged
co-conspirators during the relevant time period and circumstances alleged
above, acted as agents and co-conspirators for the other conspirators.

39.  As a direct and proximate result of the Defendants' intentional publication of

deceptive and misleading medical data and information, as described in the

preceding paragraphs, and upon which data the Plaintiff and/or those charged with

warning them reasonably relied, the Plaintiff inhaled or otherwise was exposed

and ingested hazardous asbestos dust, resulting in the injuries described above.

40.  Additionally, and alternatively, as a direct and proximate result of the Defendant's

actions and omissions as described above, the Plaintiffs were caused to remain

ignorant concerning the danger of human exposure to asbestos, resulting in

damage to the Plaintiff by depriving the Plaintiff, his employers, and the general

public of opportunities to be aware of the hazards of asbestos exposure, and thus

the opportunity to take proper safety precautions and/or avoid this exposure.

Page 16 of 20

Because of this ignorance and intentional failure to warn, the Plaintiff inhaled, was exposed to or otherwise ingested hazardous asbestos dusts, resulting in the injuries described above.

41.   The Defendants fraudulently concealed from the Plaintiff the alteration of its published test results, the actions and omissions and concerted design and conspiracy, all as described in the paragraphs above, until the Plaintiff discovered said conduct following these diagnoses of asbestos related injuries.

42.   WHEREFORE, the Plaintiff demands both compensatory and punitive damages from Defendants in sums to be determined at trial.

### COUNT FIVE

### (Conspiracy of Silence)

43.   Plaintiff incorporates the foregoing allegations of this Complaint.

44.   Additionally, all defendants herein were members of various asbestos trade organizations like Asbestos Textile Institute, the Magnesia Insulation Manufacturers and National Insulation Manufacturers Association and sponsors of medical and scientific research organizations like the Industrial Hygiene Foundation.

45.   These trade organizations were created and did promote the use of asbestos and asbestos containing products and participated in supporting and sponsoring research into the health dangers of asbestos at laboratories. This research showed a link between asbestos inhalations and lung cancer. However, this research was never made public. In fact, this research was deliberately withheld in order to

minimize public awareness of the dangers of working with their asbestos
containing products and to maximize the profits of defendants.

46.     The defendants, individually and as members of these various trade organization,
conspired within its own organization and with each other and others, to
materially alter scientific research, to withhold information from the public about
the dangers of asbestos, to falsely advertise their products as safe and non-toxic,
and to misrepresent the dangers and hazards of asbestos to the public, consumers
and governmental agencies.

47.     As a result of this conspiracy of silence, Plaintiff suffered injuries.

## COUNT SIX

### Damages

48.      As a direct and proximate result of Defendants' breach of its duties to the
Plaintiff as delineated in all counts above, the Plaintiff has sustained the asbestos
related injuries, diseases, illnesses and/or conditions set forth above along with
pain and suffering, the undergoing and continuing undergoing of medical
treatment, medical expenses, along with past, present and future disability,
impairment of wage earning capacity, lost wages, and a diminution in quality and
enjoyment of life, which includes mental anguish, fear, and severe emotional
distress associated with knowing that there is no cure for these diseases and
illnesses.

49.      In breaching their duties to the Plaintiff as described above, the Defendants have
acted intentionally, with gross negligence, recklessly, maliciously or wantonly in

Page 18 of 20

that the Defendants knew or should have known through data available to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended or foreseen by the Defendants, and that their aforesaid breaches of duty would result in the complained of injuries and damages to the Plaintiff, thus entitling the Plaintiff to recover punitive or exemplary damages for the Defendant outrageous conduct as set forth herein.

50.   Plaintiff in this action does not assert any claims for, does not seek damages for, and disclaims recovery for any injuries, if any arising out of exposure to asbestos containing products designed, manufactured, distributed, sold, or marketed by or any actions or inactions of Asbestos Corp. Ltd., Atlas Turner, Inc., Lac D'Aminate du Quebec, Les Mines D'Amiante Bell, Ltd., and/or Societe Miniere Mazarin, Inc. To the extent plaintiff has been exposed to such asbestos containing products, if at all, plaintiff hereby waives his right to recover damages for such injuries.

51.   Should any verdict in this case assign responsibility in whole or in part for any or all plaintiff's injuries to damages to the entities Asbestos Corp. Ltd, Atlas Turner, Inc., Lac D'Amiante du Quebec, Les Mines D'Amiante Bell, Ltd., and/or Societe Miniere Mazarin, Inc., and if such verdict should be upheld upon proper post judgment motion, plaintiff hereby waives, and will remit and release, that portion of his damages.  Plaintiff seeks and will seek the entry of a final judgment in this action against defendants that rewards them only that portion of their damages assigned by the jury and court to the named defendants.

52.     Due to the passage of time since the Plaintiff was exposed to asbestos, the

        Plaintiff has been unable to ascertain the identities of all manufacturers, suppliers,

        distributors, and installers of asbestos-containing products to which he was

        exposed and hereby re-assert each of the foregoing allegations against John Doe

        Defendants #1-500.

53.     WHEREFORE, the Plaintiff demands judgment against all Defendants, jointly,

        severally, and collectively for compensatory and punitive damages in an amount

        to be determined by a jury, for prejudgment interest from the date of the filing of

        this Complaint, costs and such other and further relief as may be deemed

        appropriate.

THIS the 23rd day of May, 2011.

                        RESPECTFULLY SUBMITTED:

                        ELIZABETH A. TATE, INDIVIDUALLY AND
                        ON BEHALF OF THE WRONGFUL DEATH
                        BENEFICIARIES OF DONNIE ALLEN TATE,
                        DECEASED, PLAINTIFFS


                        _____
                        John T. Givens, *Attorney for Plaintiffs*

Of Counsel:

Timothy W. Porter, MSB No. 9687
Patrick C. Malouf, MSB No. 9702
John T. Givens, MSB No. 101561
PORTER & MALOUF, P.A.
Post Office Box 12768
Jackson, Mississippi 39236-2768
Telephone:   (601) 957-1173
Facsimile:   (601) 957-7366


                        Page 20 of 20

6.     Defendant Minnesota Mining & Manufacturing Company is a Delaware corporation and may be served with process and summons by serving its agent at C.T. Corporation System, 631 Lakeland East Drive, Flowood, Mississippi.

7.     John Doe Defendants 1-500 are defendants whose identities are unknown at this time. It is believed that these other corporations and/or individuals supplied, manufactured, and or distributed asbestos containing products to the plaintiffs' work sites and the plaintiffs were exposed to said asbestos-containing products or that these corporations and/or individuals manufactured, supplied, distributed, products which caused asbestos containing products to become airborne and the plaintiffs were exposed to said asbestos and/or these corporations and/or individuals caused asbestos to become. Airborne and the plaintiffs were exposed to said asbestos.  When their identities are known, this complaint will be amended to properly name same.

8.     All of the above Defendant corporations are citizens of Mississippi or have either obtained certificates of authority to transact business in Mississippi pursuant to §79-1-211 et seq., Mississippi Code of 1972, or have transacted business in Mississippi without a certificate of authority, but within the contemplation of § 13-3-57 of said Code.

9.     Venue is proper in the First Judicial District of Hinds County, Mississippi, pursuant to M.C.A. §11-11-3.

## BACKGROUND

10.    Each of the Defendants mined, designed, evaluated, manufactured, packaged, furnished, supplied and/or sold adhesives, construction materials, insulation, fiber or

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT
## OF HINDS COUNTY, MISSISSIPPI

**ELIZABETH A. TATE, INDIVIDUALLY**
**AND ON BEHALF OF THE WRONGFUL**
**DEATH BENEFICIARIES OF**
**DONNIE ALLEN TATE, DECEASED**

MAY 3 1 2011

SPX LEGAL DEPT
PLAINTIFFS

**vs.**

CIVIL ACTION NO. _251-11-452CIV_

**LAYNE & BOWLER, INC.,**
**LAYNE & BOWLER PUMP CO.,**
**MINNESOTA MINING & MANUFACTURING COMPANY,**
**JOHN DOE DEFENDANTS 1 - 500**

**DEFENDANTS**

### SUMMONS

**STATE OF MISSISSIPPI**

RECEIVED

MAY 3 1 2011

SPX LEGAL DEPT

**TO:   LAYNE & BOWLER, INC.**
c/o SPX Corporation
John B. Blystone
13515 Ballentyne Corporate Place
Charlotte, North Carolina 28277

### NOTICE TO DEFENDANT

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand deliver a copy of a written response to this Complaint to John T. Givens, the attorney for the Plaintiff, whose post office address is Post Office Box 12768, Jackson, Mississippi, 39236, and whose street address is 825 Ridgewood Road, Ridgeland, Mississippi 39157. Your response must be mailed or delivered within thirty (30) days from the date of delivery of the Summons and Complaint or a judgment by default will be entered against for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

ISSUED UNDER MY HAND AND SEAL of said Court, this the _24_ day of _May_, 2011.

BARBARA DUNN, HINDS COUNTY CIRCUIT
COURT CLERK

L+B
TO: Daphne Lancaster

By: _____, D.C.

**EXHIBIT**
**B**



**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**ELIZABETH TATE, INDIVIDUALLY AND**
**ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES**
**OF DONNIE ALLEN TATE, DECEASED**                 **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO.** 3:11cv348 DPJ-FKB

**LAYNE & BOWLER, INC.**
**LAYNE & BOWLER, PUMP CO.**
**MINNESOTA MINIG & MANUFACTURING COMPANY**
**JOHN DOE DEFENDANTS 1-500**                **DEFENDANTS**

### CERTIFICATE OF FILING AND
### DELIVERY OF REMOVAL PROCEEDINGS

I, S. Beth Windham, of the law firm of Aultman, Tyner& Ruffin, Ltd., Post Office

Drawer 750, Hattiesburg, Mississippi 39403-0750, attorney for the Defendant, Layne &

Bowler, Inc. do hereby certify that I have this day forwarded by United States Mail, postage

prepaid, the original of all removal proceedings, being a Notice of Removal, with copies of

all process, pleadings and orders attached, and this Certificate to J. T., Noblin, Clerk of the

United States District Court of the Southern District of Mississippi, Jackson Division, at 245

E. Capitol St., Rm. 316, Jackson, Mississippi, 39201 and that I have this day forwarded by

United States Mail, postage prepaid, an original Notice of Filing of Notice of Removal, with

true and correct copies of all removal proceedings to Barbara Dunn, Circuit Court Clerk of

Hinds County, First Judicial District,  Mississippi, P.O. Drawer 327, Jackson MS  39205, and

that I have forwarded a true and correct copy of all of the above referenced pleadings via

United States Mail, postage prepaid, to the following:

1

Timothy W. Porter, Esq.
Patrick Malouf, Esq.
Johnny Givens, Esq.
Porter & Malouf, P.A.
825 Ridgewood Rd.
Ridgeland, MS 39175
Attorneys for Plaintiff

Samuel D. Habeeb, Esq.
Forman, Perry, Watkins, Krutz and Tardy, LLP
200 South Lamar Street
Suite 100
Jackson, Mississippi 39201-4099
Attorney for Layne & Bowler Pump Co.

WHEREFORE, this cause stands removed to the United States District Court.

THIS the 9ᵗʰ day of June, 2011.

S. Beth Windham

THOMAS W. TYNER
Miss. Bar No. 8170
DAPHNE LANCASTER
Miss. Bar No. 10336
S. BETH WINDHAM
Miss. Bar No. 100981
AULTMAN, TYNER & RUFFIN LTD
P.O. DRAWER 750
HATTIESBURG, MS  39403-0750
(601) 583-2671 phone
(601) 583-2677 fax

2

## CERTIFICATE OF SERVICE

I, S. Beth Windham, do hereby certify that I have this day mailed by United States

Mail, postage pre-paid, a true and correct copy of the above and foregoing to the following:

Timothy W. Porter, Esq.
Patrick Malouf, Esq.
Johnny Givens, Esq.
Porter & Malouf, P.A.
825 Ridgewood Rd.
Ridgeland, MS 39175
Attorneys for Plaintiff

Samuel D. Habeeb, Esq.
Forman, Perry, Watkins, Krutz and Tardy, LLP
200 South Lamar Street
Suite 100
Jackson, Mississippi 39201-4099
Attorney for Layne & Bowler Pump Co.

THIS the _____ day of June, 2011.

S. BETH WINDHAM

3