ADRMOP, E–Filing

## U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:11-cv-03008-DMR

Gayle et al v. Asbestos Companies et al
Assigned to: Magistrate Judge Donna M. Ryu
Case in other court:  San Francisco Superior Court,
                  CGC–11–275830
Cause: 28:1441 Petition for Removal

Date Filed: 06/17/2011
Jury Demand: None
Nature of Suit: 340 Marine
Jurisdiction: Federal Question

**Plaintiff**

**Carl B. Gayle**

represented by **Denyse Clancy**
Baron &Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
(214) 521–3605
Fax: (214) 520–1181
*ATTORNEY TO BE NOTICED*

**Eric Policastro**
Baron &Budd, P.C.
3102 Oak Law Avenue, Suite 1100
Dallas, TX 72519
(214) 521–3605
Fax: (214) 520–1181
*ATTORNEY TO BE NOTICED*

**John Langdoc**
Baron &Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 72519
(214) 521–3605
Fax: (214) 520–1181
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Claudette Gayle**

represented by **Denyse Clancy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Policastro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Langdoc**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Asbestos Companies**

**Defendant**

**Crown Cork &Seal Company, Inc.**
*individually and as successor–in–interest
to Mundet Cork Company*

**Defendant**

Douglass Insulation Company, Inc.

**Defendant**

**Matson Navigation Company, Inc.**

represented by **Andrew Ira Port**
Emard Danoff Port Tamulski &Paetzold
LLP
49 Stevenson Street, Suite 400
San Francisco, CA 94105
(415) 227−9455
Email: aport@edptlaw.com
*ATTORNEY TO BE NOTICED*

**Cheryl Ann Morris**
Emard Danoff Port Tamulski &Paetzold
LLP
49 Stevenson Street, Suite 400
San Francisco, CA 94105
(415) 227−9455
Email: cmorris@edptlaw.com
*ATTORNEY TO BE NOTICED*

**David Robert Boyajian**
Emard Danoff Port Tamulski &Paetzold
49 Stevenson Street
Suite 400
San Francisco, CA 94105
415−227−9455
Fax: 415−227−4255
Email: dboyajian@edptlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Owens−Illinois, Inc.**
*individually and as successor−in−interest
to Owens−Illinois Glass Company
doing business as*
O−I

**Defendant**

**Triple A Machine Shop, Inc.**
*also known as*
Triple A Shipyard

**Defendant**

**Union Carbide Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2011 | 1 | NOTICE OF REMOVAL from San Francisco Superior Court. Their case number is CGC−11−275830. (Filing fee $350 receipt number 34611061168). Filed byMatson Navigation Company, Inc.. (vlk, COURT STAFF) (Filed on 6/17/2011) (Entered: 06/21/2011) |
| 06/17/2011 | | CASE DESIGNATED for Electronic Filing. (vlk, COURT STAFF) (Filed on 6/17/2011) (Entered: 06/21/2011) |
| 06/17/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 9/21/2011. Case Management Conference set for 9/28/2011 01:30 PM. (Attachments: # 1 Standing Order)(vlk, COURT STAFF) (Filed on 6/17/2011) Modified on 6/21/2011 (vlk, COURT STAFF). (Entered: 06/21/2011) |

| 06/17/2011 | 4 | Certificate of Interested Entities by Matson Navigation Company, Inc. identifying Other Affiliate United States of America, Other Affiliate United States Maritime Commission for Matson Navigation Company, Inc.. (vlk, COURT STAFF) (Filed on 6/17/2011) (Entered: 06/21/2011) |
|---|---|---|
| 06/21/2011 | 2 | NOTICE by Matson Navigation Company, Inc. *of Tag−Along Action* (Morris, Cheryl) (Filed on 6/21/2011) (Entered: 06/21/2011) |
| 06/22/2011 | 5 | CERTIFICATE OF SERVICE by Matson Navigation Company, Inc. *of Removal Documents* (Morris, Cheryl) (Filed on 6/22/2011) (Entered: 06/22/2011) |

1   EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP
    Andrew I. Port (State Bar # 120977)
2   Cheryl A. Morris (State Bar # 184541)
    David R. Boyajian (State Bar # 257825)
3   49 Stevenson Street, Suite 400
    San Francisco, California 94105
4   T: (415) 227-9455
    F: (415) 227-4255
5   aport@edptlaw.com
    cmorris@edptlaw.com
6   dboyajian@edptlaw.com
7   Attorneys for Defendant
    MATSON NAVIGATION COMPANY, INC.
8

E-filing

9                    UNITED STATES DISTRICT COURT
10                 NORTHERN DISTRICT OF CALIFORNIA
11

**CV 11 3008**

12  CARL B. GAYLE and CLAUDETTE        Case No.:
    GAYLE,
13                                     **NOTICE OF REMOVAL OF ACTION
              Plaintiffs,              UNDER 28 U.S.C. §1441**
14
         vs.                          **PUBLIC VESSELS ACT, SUITS IN
15                                     ADMIRALTY ACT and FEDERAL
    ASBESTOS COMPANIES, et al.         OFFICER REMOVAL STATUTE**
16
              Defendants.
17

18          PLEASE TAKE NOTICE that defendant MATSON NAVIGATION COMPANY, INC.

19  ("Matson") removes to this Court the state court action described below.

20          1.  **Jurisdiction.**  This is a civil action of which this Court has original jurisdiction under

21  28 U.S.C. §§1331 and 1333, and is one that may be removed to this Court by Matson pursuant to

22  the provisions of 28 U.S.C. §§1441 and 1442 in that it is an action arising under the laws of the

23  United States and alleged against an agent of the United States.

24          2.  On May 24, 2011, plaintiffs Carl B. Gayle and Claudette Gayle ("Plaintiffs")

25  commenced in the Superior Court of the State of California, County of San Francisco, an action

26  entitled Carl B. Gayle and Claudette Gayle v. Asbestos Companies, et al., Case Number CGC-11-

27  275830.  A true and correct copy of the Complaint for Personal Injuries and Damages

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 1 -

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441
Case No.:
G:\ANDYGRP\ANDYGRP1\Gayle, Carl\Pleadings\GAYLE Notice of Removal (Fed Court).doc

1  ("Complaint") is attached as Exhibit A.  A true and correct copy of the Summons is attached as

2  Exhibit B.

3      3.  Plaintiffs served Matson by personal delivery on May 25, 2011.

4      4.  No defendant has been substituted into the Complaint or has been served as a Doe.

5      5.  Plaintiffs' Complaint alleges that Mr. Gayle was exposed to asbestos and asbestos-

6  containing cargo aboard vessels operated by Matson between 1940 and 1944.  Alternatively,

7  Plaintiffs' unverified Responses to Standard Interrogatories allege that Mr. Gayle was employed

8  aboard Matson vessels from 1942 through 1946.  Plaintiffs' counsel provided Mr. Gayle's Social

9  Security Records to Matson by email on the morning of June 17, 2011; those Records show Mr.

10  Gayle's employment with Matson occurred between the second quarter of 1942 through 1945.

11      6.  With the Declaration of World War II on December 8, 1941, all of Matson vessels were

12  brought under the control of the United States Maritime Commission with Matson designated as

13  managing agent and ship manager by the War Shipping Administration.

14      7.  Because the vessels on which Plaintiffs allege that Mr. Gayle was injured were under

15  the control of the United States Maritime Commission with Matson designated as managing agent

16  and ship manager by the War Shipping Administration, Plaintiffs' claim is governed by the Public

17  Vessels Act ("PVA"), 46 U.S.C. §§31101-31113, and the Suits in Admiralty Act ("SIAA"), 46

18  U.S.C. §§30901-30913.  The PVA (§31103) incorporates the SIAA.  These Acts permit an action

19  for personal injury on a vessel owned by or operating on behalf of the United States to be filed

20  only against the United States and not against the vessel's managers, operators, or agents.  SIAA

21  §30904.  Thus the United States is the only proper defendant for any claim arising aboard vessels

22  under the control of the United States Maritime Commission with Matson designated as managing

23  agent and ship manager by the War Shipping Administration, and the federal court has exclusive

24  jurisdiction over such claims.

25      8.  Because the vessels on which Plaintiffs allege that Mr. Gayle was injured were under

26  the control of the United States Maritime Commission with Matson designated as managing agent

27  and ship manager by the War Shipping Administration, the Federal Officer Removal Statute, 28

28  U.S.C §1442, applies to Plaintiffs' claim.  The Federal Officer Removal Statute provides that "a

EMARD DANOFF PORT FAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105
NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441
Case No.:
G:\ANDYGRP\ANDYGRP1\Gayle, Carl\Pleadings\GAYLE Notice of Removal (Fed Court).doc

1    civil action … commenced in a State court against the United States or any agency thereof or any

2    officer (or any person acting under that officer) of the United States or of any agency thereof may

3    be removed by them to the district court of the United States for the district and division

4    embracing the place wherein it is pending." 28 U.S.C §1442.  "Agent" is construed broadly in this

5    context to include "a General Agent, Berth Agent and Ship Manager designated … to manage and

6    conduct the business of vessels of which the United States is owner, owner *pro hac vice* or time

7    charterer."  46 C.F.R. Part 315.3.  During the period of Mr. Gayle's alleged exposure to asbestos

8    and asbestos-containing products aboard vessels allegedly operated by Matson, all of Matson's

9    vessels were under the control of the United States Maritime Commission with Matson designated

10   as managing agent and ship manager by the War Shipping Administration.  Thus Matson, as an

11   agent of the United States, may remove this case to the federal court.

12          9.    While claims under the Jones Act, 46 USC §30104, generally are not removable, a

13   "fraudulently pleaded" Jones Act claim may be removed.  *Fields v Pool Offshore, Inc.* (5th Cir.

14   1999) 182 F.3d 353; *Burchett v Cargill* (5th Cir. 1995) 48 F.3d 173.  Plaintiffs' Jones Act claim

15   was "fraudulently pleaded" in the sense that it named Matson as the defendant, but Matson is not a

16   proper defendant.  The United States is the only proper defendant because the vessels on which

17   Plaintiffs allege that Mr. Gayle was injured were under the control of the United States Maritime

18   Commission with Matson designated as managing agent and ship manager by the War Shipping

19   Administration.  The United States cannot be sued in state court.  46 U.S.C. §30904.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

EMARD DANOFF PORT
FAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 3 -

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441
Case No.:

G:\ANDYGRP\ANDYGRP1\Gayle, Carl\Pleadings\GAYLE Notice of Removal (Fed Court).doc

1    10. The claim asserted against Matson arises under federal law and is separate and

2  independent from the claims asserted against the other defendants. 28 U.S.C §1441(c).  This

3  notwithstanding, Plaintiffs' Jones Act claim is also asserted against Douglass Insulation Company,

4  Inc. and Triple A Machine Shop, Inc.  Neither is a proper Jones Act Defendant.  Nonetheless,

5  Matson, through the undersigned counsel, contacted counsel for both Douglass Insulation

6  Company, Inc. and Triple A Machine Shop, Inc.; neither objects to removal.

7

8  Dated:  June 17, 2011                    EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP
                                            Andrew I. Port
9                                           David R. Boyajian

10
                                           By
11                                            Andrew I. Port
                                            Attorneys for Defendant
12                                          Matson Navigation Company, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441
Case No.:
G:\ANDYGRP\ANDYGRP1\Gayle, Carl\Pleadings\GAYLE Notice of Removal (Fed Court).doc

`

# EXHIBIT A

EXHIBIT A

THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158

1  John Langdoc, Esq. (SBN 235509)
   Denyse Clancy, Esq. (SBN 255276)
2  Eric Policastro, Esq. (SBN 264605)
   **BARON & BUDD, P.C.**
3  3102 Oak Lawn Ave., Suite 1100
   Dallas, TX 72519
4  Telephone: 214/521-3605
            800/222-2766
5  Facsimile: 214/520-1181
6
7  Attorneys for Plaintiffs
8
9
10

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2011 MAY 24  AM 1: 08

CL___ ____ ___ COURT
BY:_____
                DEPUTY CLERK

_ASBESTOS
CASE MANAGEMENT CONFERENCE

APR 1 9 2012 1³⁰ PM

DEPARTMENT   220

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| 11  CARL B. GAYLE and CLAUDETTE GAYLE | )  CASE NO.  **CGC-11-275830** |
| 12  | ) |
|     Plaintiffs, | )  **COMPLAINT FOR PERSONAL INJURIES AND DAMAGES** |
| 13  | ) |
| 14  vs. | )  (Personal Injury) |
|     | ) |
| 15  ASBESTOS COMPANIES, | )  Negligence |
|     CROWN CORK & SEAL COMPANY, | )  Strict Liability |
| 16  INC. (individually and as | )  Jones Act Liability Under 46 U.S.C. § 688 |
|     successor-in-interest to Mundet Cork | )  Loss of Consortium |
| 17  Company); DOUGLASS INSULATION | )  Punitive Damages |
| 18  COMPANY, INC.; MATSON | )  Premises Liability |
|     NAVIGATION COMPANY, INC.; | ) |
| 19  OWENS-ILLINOIS, INC. individually and | ) |
|     as successor-in-interest to Owens-Illinois | )  (Asbestos) |
| 20  Glass Company and d/b/a O-I; TRIPLE A | ) |
|     MACHINE SHOP, INC. (a/k/a Triple A | )  Unlimited Jurisdiction |
| 21  Shipyard); UNION CARBIDE | ) |
| 22  CORPORATION and DOES 1-300 | ) |
|     | ) |
| 23  Defendants. | ) |

BY FAX

-1-

COMPLAINT FOR PERSONAL INJURIES

COME NOW, Plaintiffs CARL B. GAYLE and CLAUDETTE GAYLE and for causes of action against Defendants, and each of them, complain and allege as follows:

## I.
### GENERAL ALLEGATIONS

1.     The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants FIRST DOES 1 through 300, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this Complaint accordingly. Plaintiffs is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiff, as hereinafter alleged.

2.     Plaintiffs are informed and believe, and thereon allege that at all times mentioned herein, Defendants and each of them, were the agents, servants, employees and/or joint venturers of their co-Defendants and were, as such, acting within the scope, course, and authority of said agency, employment and/or joint venture, in that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring or each and every other Defendant as the agent, servant, employee and/or joint venturer.

3.     Plaintiff CARL B. GAYLE was a California resident during a substantial period of his asbestos exposure upon which Plaintiffs' claims are based.

4.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants CROWN CORK & SEAL COMPANY, INC. (individually and as successor-in-interest to Mundet Cork Company); DOUGLASS INSULATION COMPANY, INC.; MATSON NAVIGATION COMPANY, INC.; OWENS-ILLINOIS, INC. individually and as successor-in-interest to Owens-Illinois Glass Company; TRIPLE A MACHINE SHOP,

-2-

INC.; UNION CARBIDE CORPORATION; and DOES 1 through 300, inclusive, are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state of the United States of America, or some foreign jurisdiction, and that said Defendants were authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the State of California.

5.     For the purposes of the claims alleged herein, the Federal Court lacks subject matter jurisdiction over this Action, as there is no federal question and incomplete diversity of citizenship due to the presence of one or more California Defendants. Removal is improper. Every claim arising under the Constitution, treaties, or law of the United States is expressly disclaimed, including any claim arising from an act or omission by a federal officer on a federal enclave, or of any Officer of the U.S. or any agency or person acting under him occurring under color of such office. No claim of admiralty or maritime law is raised. Plaintiff sues no foreign state or agency. By this allegation, Plaintiff is not disclaiming State law claims arising under State, statutory, decisional or common law, nor is Plaintiff disclaiming claims which stem from exposures on Federal enclaves. Plaintiff is only disclaiming claims which would be directed at the Federal government and/or Federal officers. Venue is proper in the City and County of San Francisco. Plaintiff shall seek sanctions, attorneys' fees, and other appropriate relief in the event any Defendant moves to transfer and/or remove this Action to another court without reasonable period of meet and confer discussion relating to same prior to notice of removal and/or transfer of this Action.

6.     At all times mentioned above, Defendants, and each of them, were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and advertising a

-3-

1  certain substance, the generic name of which is asbestos, and other products containing

2  asbestos.

3      7.    Plaintiff CARL B. GAYLE was exposed to Defendants' asbestos and asbestos

4  containing products contributing to and causing the development of mesothelioma. As a result

5  of exposure to Defendants' asbestos and asbestos containing products, asbestos fibers entered

6  his body. Plaintiff suffers from mesothelioma and each of Defendants asbestos and asbestos-

7  containing products that entered his body was a substantial factor in bringing about, prolonging,

8

9  or aggravating Plaintiff's mesothelioma.   The asbestos and asbestos containing products

10  Plaintiff was exposed to were manufactured or supplied by a named defendant. Plaintiff was

11  exposed to asbestos from asbestos-containing thermal insulation materials and lagging

12  adhesives by Defendants including, but not limited to, CROWN CORK & SEAL COMPANY,

13  INC., DOUGLASS INSULATION COMPANY, INC.; TRIPLE A MACHINE SHOP, INC.;

14  UNION CARBIDE CORPORATION, and OWENS-ILLINOIS CORPORATION, and Plaintiff

15  was further exposed to asbestos by work performed on, in, and around ships owned by

16

17  MATSON NAVIGATION COMPANY, INC.

18                                    II.

19                   FIRST CAUSE OF ACTION: NEGLIGENCE

20                       (AGAINST ALL DEFENDANTS)

21      8.    Plaintiffs hereby incorporates by reference, as though fully set forth herein, each

22  and every allegation contained in the General Allegations above.

23      9.    At all times herein mentioned, each of the named Defendants and DOES 1

24  through 300 was the successor, successor in business, successor in product line or a portion

25  thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion

26

27  thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or

28                                    -4-

member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising as certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "Alternate Entities."  Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following Defendants, and each of them, are liable for the acts of each and every "Alternate Entity," and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "Alternate Entity;" such "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiff's remedy against each such "Alternate Entity;" each such Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;" and that each such Defendant enjoys the goodwill originally attached to each such "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CROWN CORK & SEAL COMPANY, INC. | (individually and as successor-in-interest to Mundet Cork Company) |
| DOUGLASS INSULATION COMPANY, INC. | |
| MATSON NAVIGATION COMPANY, | |

-5-

COMPLAINT FOR PERSONAL INJURIES

| INC. | |
|---|---|
| OWENS-ILLINOIS, INC. · | (individually and as successor-in-interest to Owens-Illinois Glass Company and d/b/a O-l |
| TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A Shipyard) | |
| UNION CARBIDE CORPORATION | |

10.    Defendants had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystanders that their products were dangerous and unsafe. At all times mentioned herein, Defendants, and each of them, negligently and carelessly researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance, in that said substance was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Plaintiff CARL B. GAYLE.

11.    Plaintiff CARL B. GAYLE is a worker who, for a substantial length of time, has used, handled, and been otherwise exposed to the asbestos and asbestos products referred to in Paragraphs 6 and 7 above, in a manner that was reasonably foreseeable, while he was working, *inter alia*, as a machinist for Matson Navigation from 1940 through 1944.

12.    On or about November 22, 2010, Plaintiff CARL B. GAYLE was advised that he has the asbestos-related disease, mesothelioma. Prior to that date, Plaintiff did not know, nor did he have reason to know, that he had contracted this disease related to his exposure to asbestos. Prior to said date, Plaintiff was not aware that exposure to asbestos presented any risk of injury and/or disease to him, and had not been advised or informed by anyone that he could

-6-

COMPLAINT FOR PERSONAL INJURIES

contract, nor indeed did contract, any disease, sickness or injury as a result of working in the vicinity of asbestos.

13.   Plaintiff is informed and believes, and thereupon alleges, that mesothelioma is a vicious, painful and invariably fatal malignancy of the lining of the lung, stomach, or heart and that said disease results from exposure to asbestos and asbestos products over a period of time. There is no known cure for any form of malignant mesothelioma.

14.   As a direct and proximate result of the aforesaid conduct of the Defendants, and each of them, Plaintiff has suffered, and continues to suffer, severe and permanent injuries to his person, body and health, including, but not limited to, the disease mesothelioma, all to his general damage in a sum within the jurisdictional limits of this court.

15.   As a direct and proximate result of the aforesaid conduct of the Defendants, and each of them, Plaintiff was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat him, and did incur medical, hospital and professional incidental expenses, and Plaintiff is informed and believes and thereupon alleges that by reason of said Plaintiff's injuries, he will necessarily incur additional like expenses for an indefinite period of time in the future, and when said amounts are ascertained, he will allege said amounts.

16.   In researching, testing, manufacturing, distributing, labeling, and marketing asbestos and asbestos products, Plaintiff is informed and believes that Defendants in this Cause of Action named, and each of them, did so with conscious disregard for the safety of the users of said asbestos and asbestos products, in that Defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including but not limited to, mesothelioma. Said knowledge was obtained, in part, from scientific studies, government data, and medical data to which Defendants had access, as well

-7-

COMPLAINT FOR PERSONAL INJURIES

as scientific studies performed by, at the request of, or with the assistance of, said Defendants, and which knowledge was obtained by said Defendants on or before 1930, and thereafter.

17.    On or before 1930, and thereafter, said Defendants were aware that users of asbestos and asbestos products, as well as members of the general public who would be exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and said Defendants knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe, when in fact said exposure was extremely hazardous to human life.

18.    With said knowledge, said Defendants opted to manufacture, distribute and/or use said asbestos and asbestos products without attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, Defendants intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations.  The above-referenced conduct of said Defendants was motivated by the financial interest of said Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos products. In pursuance of said financial motivation, said Defendants consciously disregarded the safety of the users of, and persons exposed to, asbestos and asbestos products, and were in fact, consciously willing to permit asbestos and asbestos products to cause injury to workers and users thereof, and personally exposed thereto, including Plaintiff.

-8-

COMPLAINT FOR PERSONAL INJURIES

19.     Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff CARL GAYLE to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)     Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

COMPLAINT FOR PERSONAL INJURIES

(b)     Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c)     Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Plaintiff's employer and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Plaintiff that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Plaintiff to work in close proximity to such materials;

(d)     Defendants, their "Alternate Entities," and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

-10-

COMPLAINT FOR PERSONAL INJURIES

(e)     Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true

-11-

facts concerning such knowledge of danger, which Defendants, their "Alternate Entities," and each of them, were bound to disclose;

(g)    Defendants, their "Alternate Entities," and each of them, failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)    Defendants, their "Alternate Entities," and each of them, failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)    Defendants, their "Alternate Entities," and each of them, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants, their "Alternate Entities," and each of them, also concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)    Defendants, their "Alternate Entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public,

COMPLAINT FOR PERSONAL INJURIES

including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were under a duty to so inform and said failure was misleading; and

(k)    Defendants, their "Alternate Entities," and each of them, failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

### III.

#### SECOND CAUSE OF ACTION: STRICT LIABILITY

#### (AGAINST ALL DEFENDANTS)

20.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 19.

21.    At all times mentioned herein, Defendants, and each of them, researched, manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to the users, consumers, and bystanders while being used in a reasonably foreseeable manner, thereby rendering same unsafe and dangerous for use by the consumers, users, and bystanders.

-13-

22.    As a direct and proximate result of the above described conduct by Defendants and each of them, Plaintiff CARL B. GAYLE suffered severe and permanent injuries to his person, as alleged hereinabove.

23.    At all times mentioned herein, the asbestos and products containing said substance discussed above failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the risk of danger inherent in this substance and products outweighs the benefits of said substance and products.

24.    At all times mentioned herein, the foreseeable use of the asbestos and products containing said substance discussed above involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

25.    As a direct and proximate result of the above described conduct by Defendants and each of them, Plaintiff suffered severe and permanent injuries to his person, as alleged hereinabove.

26.    The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore,

-14-

for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

### III.

### THIRD CAUSE OF ACTION: JONES ACT LIABILITY UNDER 46 U.S.C. § 688

### (AGAINST MATSON NAVIGATION COMPANY, INC.; DOUGLASS INSULATION COMPANY, INC.; AND TRIPLE A MACHINE SHOP, INC.)

27.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 26.

28.     The Defendants in this cause of action domestic corporations that, upon information and belief, at all pertinent times, owned, operated, chartered and/or managed vessels that transported asbestos cargo into the State of California and/or that contained asbestos-containing component parts and equipment while in the State of California, conducted business in California, are liable unto the Plaintiffs for the claims asserted herein, and are subject to this Court's jurisdiction.   This action is filed pursuant to the Jones Act in state court pursuant to   28 U.S.C.A. § 1445(a), which is applicable to Jones Act actions through incorporation by reference, 46 U.S.C.A. § 30104, and which provides that a civil action in state court may not be removed to any District Court of the United States.

29.     During periods of time identified in paragraph 11, Plaintiff CARL GAYLE suffered substantial tortious occupational exposure to asbestos and asbestos-containing cargo while employed as a Jones Act seaman aboard vessels owned, operated, chartered and/or managed on navigable waters of the United States by Jones Act Defendants.

30.     Plaintiff suffered substantial tortious occupational exposure to asbestos-containing materials found in the component parts of the vessels owned, operated, chartered

-15-

COMPLAINT FOR PERSONAL INJURIES

1  and/or managed on navigable waters of the United States by Jones Act Defendants, while

2  Plaintiff was employed as a Jones Act seaman aboard those vessels.

3      31.    During Plaintiff's occupational exposure period, the Jones Act defendants and

4  other named defendants designed, tested, evaluated, manufactured, packaged, furnished, stored,

5  handled, transported, installed, supplied and/or sold asbestos-containing products for use at,

6  including but not limited to, vessels then operating on navigable waters of the United States,

7  including but not limited to, the State of California.  Plaintiffs was exposed to asbestos,

8  construction materials, insulation, and products that contained fibrous, incombustible, chemical-

9  resistant mineral substances commonly called asbestos.

10

11     32.    An employer of a Jones Act seaman is under a duty to provide a safe place to

12 work and to supply the seaman with proper tools and equipment.

13     33.    The Jones Act Defendants knew or should have known through, among other

14 things, industry and medical studies, the existence of which were unknown to the Plaintiff, of

15 the health hazards inherent in the asbestos-containing products they were selling, transporting,

16 supplying, installing, and using.  Instead of warning Plaintiff and the general public about these

17 dangers, certain defendants ignored or actively concealed such information, or condoned such

18 concealment, in order to sell asbestos or asbestos-containing products and to avoid litigation by

19 those who were injured from asbestos inhalation.

20

21     34.    Under 46 U.S.C. § 688, the Jones Act, the Jones Act Defendants are liable unto

22 Plaintiffs for all damages allowed by applicable law, past present and future, in an amount that

23 is just and reasonable in the premises, above the jurisdictional requirement for trial by jury, with

24 interest thereon as allowed by law, for the following, to-wit:

25

26

27

28

-16-

35.     The injuries complained of above were caused by the negligence of the Jones Act Defendants individually and acting through their agents, servants, employees, vessels and crew, in the following non-exclusive particulars:

a)     Failure to provide Plaintiff with a reasonably safe place to work;

b)     Breach of a legally imposed duty of reasonable care;

c)     Failing to warn Plaintiff of the health consequences associated with occupational exposure to asbestos;

d)     Failing to provide Plaintiffs with a properly ventilated work area;

e)     Failing to provide Plaintiff with appropriate breathing protection;

f)     Creation and allowance of an unseaworthy condition aboard its vessels;

g)     Utilizing asbestos-containing products aboard its vessels, when it knew or should have known that such use caused adverse health consequences;

h)     Other acts of negligence to be proven at the trial of this cause;

## IV.

### FOURTH CAUSE OF ACTION: PREMISES OWNER/CONTRACTOR LIABILITY

### (AGAINST ALL DEFENDANTS)

36.     Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 1 through 35.

37.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises where Plaintiff was present.  Additionally, Plaintiff might have been present at these or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

-17-

COMPLAINT FOR PERSONAL INJURIES

38.    Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

39.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

40.    At all times relevant herein, Plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' request and invitation.  In so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

41.    Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

-18-

COMPLAINT FOR PERSONAL INJURIES

42.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, remained in control of the premises where Plaintiff was performing his work.

43.    At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, owed to Plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

44.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

45.    Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Plaintiff.

46.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff and others unless special precautions were taken.

47.    In part, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take necessary precautions.

-19-

48.   The work of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

49.   The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants.   Said negligent conduct includes but is not limited to:

    a.   Failure to warn of asbestos and other toxic dusts;

    b.   Failure to suppress the asbestos-containing or toxic dusts;

    c.   Failure to remove the asbestos-containing and toxic dusts through the use of ventilation or appropriate means;

    d.   Failure to provide adequate breathing protection, i.e., approved respirators or masks;

    e.   Failure to inspect and/or test the air;

    f.   Failure to provide medical monitoring.

50.   The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder.   Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

51.   Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor

-20-

COMPLAINT FOR PERSONAL INJURIES

Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants. Such state and federal standards required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

    a.  Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

    b.  Failing to segregate work involving the release of asbestos or other toxic dusts;

    c.  Failing to suppress dust using prescribed ventilation techniques;

    d.  Failing to suppress dust using prescribed "wet down" techniques;

    e.  Failing to warn or educate Plaintiff or others regarding asbestos or other toxic substances on the premises;

    f.  Failing to provide approved respiratory protection devices;

    g.  Failing to ensure "approved" respiratory protection devices were used properly;

    h.  Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

    i.  Failing to provide adequate housekeeping and clean-up of the work place;

-21-

COMPLAINT FOR PERSONAL INJURIES

j.  Failing to properly warn of the hazards associated with asbestos as required by statute;

k.  Failing to properly report renovation and disturbance of asbestos-containing materials;

l.  Failing to have an asbestos removal supervisor as required by regulation;

m.  Failing to get approval for renovation as required by statutes; and

n.  Failing to maintain records as required by statute.

52.     Premises Owner/Contractor Liability Defendants, and each of them, were the "statutory employer" of Plaintiff as defined by the California Labor Code and California case law.

53.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances or statutes.

54.     At all times mentioned herein, Plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

55.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

-22-

COMPLAINT FOR PERSONAL INJURIES

56.    As a legal consequence of the foregoing, Plaintiff developed an asbestos-related illness - mesothelioma, which has caused great injury and disability as previously set forth, and Plaintiff has suffered damages as herein alleged.

57.    The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff.  Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others.  Defendant subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury.  Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

## V.

### FIFTH CAUSE OF ACTION: LOSS OF CONSORTIUM

### (AGAINST ALL DEFENDANTS)

58.    Plaintiff's spouse incorporates by reference by paragraphs 1 through 57.

59.    Plaintiffs were married at all times relevant to this action were, and are now, husband and wife.

60.    Prior to Plaintiff CARL B. GAYLE's injuries as alleged, Plaintiff CARL B. GAYLE was able and did perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, Plaintiff has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the

-23-

COMPLAINT FOR PERSONAL INJURIES

family home, and Plaintiff will be unable to perform such work, service and duties in the future. As a proximate result thereof, Plaintiff's spouse CLAUDETTE GAYLE has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiffs but which will be proved at the time of trial.

61.    Further, as a direct and proximate result of the acts of Defendants, and each of them, and the severe injuries caused thereby to Plaintiff as set forth in this complaint, Plaintiff's spouse CLAUDETTE GAYLE has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as general nervousness as a result thereof.

62.    Discovery of the cause of Plaintiff's spouse CLAUDETTE GAYLE's loss of consortium, as herein alleged , first occurred within one year of the date this complaint was filed.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them in and amount to be proved at trial in each individual case, as follows:

1.    General damages according to proof;

2.    Damages for medical and related expenses, according to proof;

3.    Damages for loss of earning capacity, according to proof;

4.    Damages for loss of earnings, according to proof;

5.    Damages for Plaintiff's other economic losses, according to proof;

6.    Exemplary or punitive damages according to proof;

7.    Plaintiff's spouse's damages for loss of consortium according to proof;

8.    Prejudgment interest, according to proof;

-24-

COMPLAINT FOR PERSONAL INJURIES

9.     Costs of suit incurred herein; and

10.    Such other and further relief as this Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related provisions of law.

**Dated**: May 24, 2011             **BARON & BUDD, P.C.**

By: _____

Eric Policastro, Esq.
ATTORNEYS FOR PLAINTIFFS

-25-

COMPLAINT FOR PERSONAL INJURIES

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| John Langdoc, Esq. (SBN 235509)<br>Eric Policastro, Esq. (SBN 264605)<br>Baron & Budd, P.C.<br>3102 Oak Lawn Avenue, Suite 1100, Dallas, TX 75219 | ENDORSED<br>FILED<br>SAN FRANCISCO COUNTY<br>SUPERIOR COURT<br><br>2011 MAY 24 AM 1: 00<br><br>CLERK OF THE COURT<br>BY: _____<br>DEPUTY CLERK |

TELEPHONE NO.: 800-222-2766   FAX NO.: 214-520-1181
ATTORNEY FOR *(Name)*: Plaintiffs, Carl B. Gayle and Claudette Gayle
SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: same
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center

CASE NAME:
Carl B. Gayle and Claudette Gayle v. Asbestos Companies, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER:<br>CGC-11-275830 |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [✓] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify)*: 5
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 24, 2011
Eric Policastro
_____
(TYPE OR PRINT NAME)                                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

1  John Langdoc, Esq. (SBN 235509)
   Denyse Clancy, Esq. (SBN 255276)
2  Eric Policastro, Esq. (SBN 264605)
   **BARON & BUDD, P.C.**
3  3102 Oak Lawn Ave., Suite 1100
   Dallas, TX 72519
4  Telephone: 214/521-3605
5             800/222-2766
   Facsimile: 214/520-1181
6
7  ATTORNEYS FOR PLAINTIFFS

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10

11  CARL B. GAYLE and CLAUDETTE          )  CASE NO. **CGC-11-275**030
    GAYLE                                )
12                                       )  **PRELIMINARY FACT SHEET/NEW**
                                         )  **FILING/ASBESTOS LITIGATION**
13          Plaintiffs,                  )
                                         )
14  vs.                                  )  (See General Order No. 129, In Re:
                                         )  Complex Asbestos Litigation
15  ASBESTOS COMPANIES,                  )
    CROWN CORK & SEAL COMPANY,           )
16  INC. (individually and as            )
    successor-in-interest to Mundet Cork )
17  Company); DOUGLASS INSULATION        )
    COMPANY, INC.; MATSON                )
18  NAVIGATION COMPANY, INC.;            )
    OWENS-ILLINOIS, INC. individually and)  **BY FAX**
19  as successor-in-interest to Owens-Illinois)
    Glass Company and d/b/a O-I; TRIPLE A)
20  MACHINE SHOP, INC. (a/k/a Triple A   )
    Shipyard); UNION CARBIDE             )
21  CORPORATION and DOES 1-300           )
                                         )
22                                       )
            Defendants.                  )
23  _____  )

24

25

26

27

28

---

PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION                      - 1 -

## N O T I C E

**TO NEW DEFENDANTS SERVED IN COMPLEX ASBESTOS LITIGATION IN THE SUPERIOR COURT IN AND FOR THE STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO**

You have been served with process in an action which has been designated by the Court as complex litigation pursuant to Standard 19 of the Standards of Judicial Administration. This litigation bears the caption "In Re: Complex Asbestos Litigation", [San Francisco Superior Court No. 828684].

This litigation is governed by various general orders, some of which affect the judicial management and/or discovery obligations, including the responsibility to answer interrogatories deemed propounded in the case. You may contact the Court or Designated Defense Counsel, Berry & Berry, Station D, Post Office Box 70250 (1300 Clay Street, Ninth Floor), Oakland, CA 946120250; Telephone: (510) 8358330; FAX: (510) 8355117, for further information and/or copies of these orders, at your expense.

1.   State the complete name and address of each person whose claimed exposure to asbestos is the basis of this lawsuit ("exposed person"):

        **Exposed Person:** Carl B. Gayle
        **Address:**       490 Rock Creek Road, Bokchito, OK 74726

2.   Does plaintiff anticipate filing a motion for a preferential trial date within the next four months?

     __X__ Yes         _____ No

[If yes, the action will be governed by General Order No. 140; if no, the action will be governed by General Order No. 129.]

3.   Date of birth of each exposed person in item one and, if applicable, date of death:

**Date of Birth:** 3/5/1919 _____     _____

_____     _____

Social Security Number of each exposed person:

_____ XXX-XX-7580 _____     _____

_____     _____

---

PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION     - 2 -

4.   Specify the nature or type of asbestos-related disease alleged by each exposed person.

_____ Asbestosis                     __X__ Mesothelioma

_____ Pleural Thickening/Plaques     _____ Other Cancer: Specify: _____

_____ Lung Cancer Other Than         Other: Specify: _____
        Mesothelioma

5.   For purposes of identifying the nature of exposure allegations involved in this action, please check one or more:

X_____ Shipyard        _____ Construction     _____ Friction Automotive
X_____ Premises        _____ Aerospace        _____ Military

6.   Identify each location alleged to be a source of an asbestos exposure, and to the extent known, provide the beginning and ending year(s) of each such exposure. Also specify each exposed person's employer and job title or job description during each period of exposure. (For example: "San Francisco Naval Shipyard Pipefitter 19391948"). Examples of locations of exposure might be a specific shipyard, a specific railroad maintenance yard, or perhaps more generalized descriptions such as "merchant marine" or "construction". If an exposed person claims exposure during only a portion of a year, the answer should indicate that year as the beginning and ending year (e.g., 19471947).

| Location Of Exposure | Employer | Job Title at Time of Exposure | Years of Exposure Beginning    Ending |
|---|---|---|---|
| San Francisco, CA | Matson Navigation | Seaman | 1940 through 1944 |

7.   For each exposed person who:

   a.   worked in the United States or for a U.S. agency outside the territorial United States, attach to the copy of this fact sheet provided to Designated Defense Counsel a fully executed Social Security Earnings authorization (Exhibit N4 to General Order No. 129);

   b.   may have had a Social Security disability award or is no longer employed and whose last employment was not with a United States government agency, attach to the copy of this fact sheet provided to Designated Defense Counsel a fully executed Social Security Disability authorization (Exhibit N5 to General Order No. 129);

   c.   served at any time in the United States military, attach to the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals of the stipulation (Exhibit N3 to General Order No. 129);

   d.   was employed by the United States government in a civilian capacity, attach to the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals of the stipulation (Exhibit N3 to General Order No. 129).

8. If there is a wrongful death claim, attach to the copy of this fact sheet provided to Designated Defense Counsel a copy of the death certificate, if available. If an autopsy report was done, also attach a copy of it to the copy of this fact sheet provided to Designated Defense Counsel.

Dated: May 24, 2011

**BARON & BUDD, P.C**

By: _____

Eric Policastro, Esq.

ATTORNEYS FOR PLAINTIFFS

PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION

- 4 -

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 3.221(c))



**Superior Court of California
County of San Francisco**

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

# Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy.  Attorneys are encouraged to share this guide with clients.  By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony.  The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.  When the Court orders a case to arbitration it is called judicial arbitration.  The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.  Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration.  Here, the parties

voluntarily consent to arbitration.  If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision.  In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration.  A case is ordered to arbitration after the Case Management Conference.  An arbitrator is chosen from the Court's Arbitration Panel.  Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference.  Arbitrations are generally held between 7 and 9 months after a complaint has been filed.  Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision.  Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

# MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations.  The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case.  The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution.  Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

*Operation*

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at **www.sfsuperiorcourt.org**. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

*Private Mediation*

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

## *Mediation Services of the Bar Association of San Francisco*

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by BASF pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $250 per party administration fee, parties select a specific mediator from the list of approved mediation providers or BASF will help them select an appropriate mediator for the matter. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org/mediation or you may call the BASF at 415-982-1600.

## *Judicial Mediation*

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court's Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

ADR-1  12/10 (rw)                           Page 7

*Cost*

Generally, the cost of Private Mediation ranges from $100 per hour to $800 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $250 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

*Description*

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

*Operation*

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the Case Management Statement (CM-110).

If the Court assigns a matter to the ESP, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

*Cost*

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

Or, visit the Superior Court Website at **www.sfsuperiorcourt.org**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff <br><br> v. <br><br> Defendant | Case No. _____ <br><br> **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** <br><br> DEPARTMENT   212 |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation     ☐ **Mediation Services of BASF**     ☐ **Judicial Mediation**
☐ Binding arbitration                                          Judge _____
☐ Non-binding judicial arbitration                     Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

---

Name of Party Stipulating     Name of Party or Attorney Executing Stipulation     Signature of Party or Attorney

☐ Plaintiff    ☐ Defendant    ☐ Cross-defendant         Dated: _____

---

Name of Party Stipulating     Name of Party or Attorney Executing Stipulation     Signature of Party or Attorney

☐ Plaintiff    ☐ Defendant    ☐ Cross-defendant         Dated: _____

---

Name of Party Stipulating     Name of Party or Attorney Executing Stipulation     Signature of Party or Attorney

☐ Plaintiff    ☐ Defendant    ☐ Cross-defendant         Dated: _____

☐ *Additional signature(s) attached*

---

ADR-2  05/10         STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT**<br>*(Check one):*  [ ] **UNLIMITED CASE**        [ ] **LIMITED CASE**<br>(Amount demanded        (Amount demanded is $25,000<br>exceeds $25,000)        or less) | CASE NUMBER: |
|---|---|

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:                    Dept.:                    Div.:                    Room:

Address of court *(if different from the address above)*:

[ ]  Notice of Intent to Appear by Telephone,  by *(name)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1.  **Party or parties** *(answer one)*:
    a.  [ ]  This statement is submitted by party *(name)*:
    b.  [ ]  This statement is submitted jointly by parties *(names)*:

2.  **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
    a.  The complaint was filed on *(date)*:
    b.  [ ]  The cross-complaint, if any, was filed on *(date)*:

3.  **Service** *(to be answered by plaintiffs and cross-complainants only)*
    a.  [ ]  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
    b.  [ ]  The following parties named in the complaint or cross-complaint
        (1)  [ ]  have not been served *(specify names and explain why not)*:

        (2)  [ ]  have been served but have not appeared and have not been dismissed *(specify names)*:

        (3)  [ ]  have had a default entered against them *(specify names)*:

    c.  [ ]  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4.  **Description of case**
    a.  Type of case in  [ ]  complaint  [ ]  cross-complaint        *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply)*:

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify)*:

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

## 11. Settlement conference

☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

## 12. Insurance

a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

## 13. Jurisdiction

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:
Status:

## 14. Related cases, consolidation, and coordination

a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

    ☐ Additional cases are described in Attachment 14a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

## 15. Bifurcation

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

## 16. Other motions

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply):*
    (1) ☐ Mediation
    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) ☐ Binding judicial arbitration
    (5) ☐ Binding private arbitration
    (6) ☐ Neutral case evaluation
    (7) ☐ Other *(specify):*

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

11. **Settlement conference**
    ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

12. **Insurance**
    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
    b. Reservation of rights: ☐ Yes ☐ No
    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

13. **Jurisdiction**
    Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    ☐ Bankruptcy ☐ Other *(specify):*
    Status:

14. **Related cases, consolidation, and coordination**
    a. ☐ There are companion, underlying, or related cases.
        (1) Name of case:
        (2) Name of court:
        (3) Case number:
        (4) Status:
        ☐ Additional cases are described in Attachment 14a.
    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

15. **Bifurcation**
    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

16. **Other motions**
    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

      <u>Party</u>                        <u>Description</u>                      <u>Date</u>

   c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____      ▶  _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY)

_____      ▶  _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY)

                        ☐ Additional signatures are attached.



# Superior Court of California
## County of San Francisco



HON. KATHERINE FEINSTEIN
PRESIDING JUDGE

### Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Linda Colfax
The Honorable Michael Begert
The Honorable Gail Dekreon
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Curtis Karnow
The Honorable Charlene P. Kiesselbach
The Honorable Patrick J. Mahoney

The Honorable Tomar Mason
The Honorable James J. McBride
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Monica F. Wiley
The Honorable Mary E. Wiss
The Honorable Charlotte W. Woolard

Parties interested in Judicial Mediation should file the Stipulation to Alternative Dispute Resolution form indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 610. A preference for a specific judge may be indicated on the form but assignment to a particular judge is not guaranteed. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

03/2011 (ja)



# MEDIATION SERVICES

## What users are saying . . .

"We had an excellent experience and, after 8 ½ hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

Robert Charles Friese, Esq.
Shartsis Friese LLP

"The BASF Mediation Services is the best deal in town and the mediator was the best I have ever experienced."

Vernon Bradley, Esq.
Bradley Law Offices

"Much thanks to the mediator and The Bar Association of San Francisco. The mediator was extraordinary; he went above and beyond the call of duty, and his knowledge of real property issues greatly assisted the parties."

Robert P. Travis, Esq.
Travis and Pon

"BASF staff was very helpful – stayed on the task and kept after a hard to reach party. The mediator was great!"

Mark Abelson, Esq.
Compagnoli, Abelson & Compagnoli

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

Denise A. Leadbetter, Esq.
Zacks, Utrecht & Leadbetter

www.sfbar.org/mediation
PROCEDURES, SOLICITATION FORM,
MEDIATOR BIOGRAPHIES AND
PHOTOGRAPHS
or call Barbara Monty at 415.982.1600

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Family-Certified Specialists
Fee Disputes
Financial
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
LGBT Issues
Malpractice-Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## WHAT IS BASF'S MEDIATION SERVICE?

Mediation Services was established in 2005 by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. Our mediation service can assist with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our rigorous training and experience requirements. By going through BASF, you receive the services of these highly qualified mediators at a great value.

## HOW MUCH DOES THE SERVICE COST?

A $250 per party administrative fee is paid to BASF. This fee covers the first hour of mediator preparation time and the first two hours of session time, but your mediation is not limited to three hours. Time beyond these three hours is paid at the mediator's normal hourly rate. To qualify for the pro-bono hours from our professional mediators, parties must file the Consent to Mediate form with BASF.

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF to assist with the selection.

## WHY DO THE MEDIATORS GIVE FREE HOURS; IS THE SERVICE ONLY FOR "SMALL" MATTERS?

The mediators are professionals who have agreed to provide the free time as a service to BASF, allowing us to offer a unique mediation panel of high quality and value. Our mediators are available for any size case; we've handled everything from simple property disputes to complex business matters.

## WHY SHOULD I GO THROUGH BASF, CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

The BASF mediators are available privately but have also agreed to serve on our panel and provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the pro bono hours. Once you have filed with us, you will work directly with the mediator.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. The mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

The BASF mediators can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during court action.

## OUR CASE IS FILED IN COURT; HOW DO WE USE BASF'S MEDIATION SERVICE?

When you file the San Francisco court's stipulation to ADR, simply check the box indicating your choice as Mediation Services of BASF. Then complete BASF's Consent to Mediate form found on our website and file it with us, or call us for the form. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed the BASF Consent to Mediate form and paid the administrative fees, BASF can normally have you in touch with the mediator within a day or two. If you have a deadline, staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in dozens of areas of disputes. If you don't see the area you need in our 30+ panels found on our website and this brochure, just contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Our website provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law. For personal assistance, please call 415-982-1600.

WWW.SFBAR.ORG/MEDIATION ° ADR@SFBAR.ORG ° 415.982.1600

# EXHIBIT B

EXHIBIT B

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Asbestos Companies, et al. (see additional parties attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Carl B. Gayle and Claudette Gayle

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Civic Center Courthouse

400 McAllister Street
San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*
**CGC-11-275830**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eric Policastro, Esq., Baron & Budd, P.C. 3102 Oak Lawn Avenue, Suite 1100, Dallas, TX 75219

DATE: May 24, 2011        **MAY 2 4 2011**        Clerk, by _____, Deputy
*(Fecha)*                                        *(Secretario)*                  *(Adjunto)*

CLERK OF THE COURT

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* MATSON NAVIGATION Company, Inc.

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 5/25/11

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Page 1 of 1

SUM-200(A)

| SHORT TITLE: Carl B. Gayle and Claudette Gayle v. Asbestos Companies, et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

CROWN CORK & SEAL COMPANY, INC. (individually and as successor in interest to Mundet Cork Company);
DOUGLASS INSULATION COMPANY, INC.;
MATSON NAVIGATION COMPANY, INC.;
OWENS ILLINOIS, INC. individually and as successor in interest to Owens Illinois Glass Company and d/b/a O I;
TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A Shipyard);
UNION CARBIDE CORPORATION and DOES 1-300

Page __1__ of ☐☐☐
Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**