IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDA SAVELESKY, | No. C 11-01778 SI |
| Plaintiff, | **ORDER GRANTING MOTION TO REMAND & ADMINISTRATIVE MOTION** |
| v. | |
| ALLIED PACKING AND SUPPLY INC., *et al.* | |
| Defendants. | |

Plaintiff Aida Savelesky's motion to remand is currently scheduled for hearing on July 8, 2011. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiff's motion.[1]

**BACKGROUND**

Plaintiff Aida Savelesky filed this lawsuit in California Superior Court on August 6, 2010. *See* Notice of Removal (Doc. 1), Ex. A ("Complaint"). Plaintiff alleges that her husband, Allen Savelesky, worked with asbestos and asbestos-containing products, and that her husband then exposed her to that asbestos. *Id.* ¶ 83. She has now been diagnosed with mesothelioma. *Id.* ¶ 1.

National Steel and Shipbuilding Company (NASSCO) is one of three named defendants in the case. Plaintiff brings two claims against defendant NASSCO, one for "Premise Owner/Contractor Liability" and one for "General Negligence - Premise Owner/Contractor". *Id.* ¶¶ 61–103. She alleges

---

[1] Also pending before the Court is plaintiff's administrative motion requesting that this Court rule on her motion to remand by July 8, 2011. That motion is GRANTED.

that her husband was "exposed to dangerous quantities of asbestos fibers and other toxic substances" while on NASSCO premises, that "these asbestos fibers contaminated his skin, hair, clothes, and shoes," and that her "exposure to asbestos occurred as a result." *Id.* ¶ 66, 72. In her first claim against defendant NASSCO, plaintiff alleges that defendant NASSCO

> caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, disturbed and/or removed on [its] premises, by [its] own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to plaintiff.

*Id.* ¶ 64. In her second claim against defendant NASSCO, she alleges that defendant NASSCO "negligently selected, supplied, and distributed the asbestos containing materials." *Id.* ¶ 99. "As a direct and proximate result of the conduct of defendants in selecting, supplying, distributing and disturbing asbestos-containing materials . . . plaintiff became exposed to and inhaled asbestos fibers, which was a substantial factor causing her to develop asbestos-related conditions and diseased." *Id.* ¶ 101.

On February 24, 2011, plaintiff served defendant NASSCO with answers to defendant NASSCO's second set of interrogatories, by fax and U.S. mail. *See* Proof of Services, Decl. of Anya Fuchs in Supp. of Pl. Mot. to Remand ("Fuchs Decl.") (Doc. 13), Ex. C. In Special Interrogatory No. 54, defendant NASSCO asked plaintiff "If YOU contend that DECEDENT ALLEN SAVELESKY was exposed to ASBESTOS-CONTAINING PRODUCT(S) attributable to NASSCO while aboard any SHIP, IDENTIFY each SHIP upon which YOU contend such exposure occurred." Fuchs Decl, Ex. B, at 2. In response, plaintiff wrote that "Mr. Savelesky's clothing became contaminated with asbestos on NASSCO's premises primarily as a result of work performed aboard numerous merchant-marine and other private, commercial, seagoing vessels *as well as military vessels*." Fuchs Decl, Ex. C, at 2 (emphasis added).

Several weeks later, on March 15, 2011, defendant NASSCO deposed Manville Laddie Petteys. *See* Petteys Depo., Notice of Removal, Ex. B. Mr. Petteys testified that Mr. Savelesky was his direct supervisor when he worked at NASSCO, starting in 1971 or 1972, and continuing for five or six years. *Id.* TR 12:25–13:18. He testified that he and Mr. Savelesky "worked on a lot of different Navy ships." *Id.* TR 14:6–14:9. Mr. Savelesky would "come aboard and show us what type of work he wanted done,

2

where he wanted it done. Piping through compartments, down passageways, boiler rooms, blow lines in the stack, covering the stack. Anything pertaining to insulation we did, and he showed us what he wanted done." *Id.* TR 15:3–15:10. He and Mr. Savelesky worked on one "new construction" Navy supply ship, the name of which Mr. Petteys could not remember, for "[a]bout six months." *Id.* TR 77:2–78:10. Mr. Petteys also testified that he had worked aboard a Navy vessel called the *Duluth*, either doing new construction or a repair. *Id.* TR 125:16–127:23. He testified that Mr. Savelsky did not "work[]" with him on the *Duluth*, but that Mr. Savelesky did "c[o]me aboard" the ship some number of times. *Id.* TR 134:12–135:13.*Id.* TR 134:12–135:13.

On April 12, 2011, defendant NASSCO removed this case to federal court, citing 28 U.S.C. § 1442(a)(1) as grounds for removal. Defendant NASSCO submitted that it could make a "colorable federal defense": that it was immune as "a government contractor . . . from liability for injuries arising from any exposure to asbestos on board Navy vessels, insofar as they were constructed or repaired by NASSCO." Notice of Removal ¶ 10 (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988)). Attached to its Notice of Removal were two declarations, one from Admiral Roger B. Horne, Jr. and one from Admiral Ben J. Lehman, each discussing the Navy's supervision and control over work done on naval ships. Notice of Removal (Doc. 1), Exs. H & I.[2]

Admiral Horne submitted his declaration to "attest to the level of supervision, direction and control exercised by the U.S. Navy over the design, construction and repair of naval vessels, and over any written communications relating to those vessels (whether build directly for the Navy or through the United States Maritime Commission)." Horne Decl. ¶ 4(a). He also "attest[s] that *any and all work* performed . . . during the construction and repair of U.S. Navy vessels was performed to the requirements specified by the Navy, and that the work was reviewed and inspected by Navy personnel in the constructor's shipbuildings yards and training facilities." *Id.* ¶ 4(b) (emphasis added). His declaration is based in part on his experience of being "responsible for maintaining naval ship military specifications and for monitoring compliance with the specifications by *all vendors and contractors of*

---

[2] An additional declaration submitted in support of its opposition to plaintiff's motion to remand, from John E. Graham, a consultant retained by defendant NASSCO, addresses a different topic. *See* Decl. of John E. Graham, Decl. of Thomas J. Moses in Supp. of Def. Oppo. to Pl. Mot. to Remand (Doc. 17), Ex. G.

*naval equipment.*" *Id.* at ¶ 2(a) (emphasis added). "The facts that [he] attest[s] to . . . apply to vessels built and repaired with naval contracts and governed by naval specifications," and are based on "personal knowledge" acquired generally and without reference to NASSCO or the *Duluth*. *Id.* at ¶ 6. He makes the same assertions regarding Naval supervision about the *Duluth* as he does about the "unnamed U.S. Navy repair ship or supply ship at NASSCO" about which Mr. Petteys testified. *Id.* at ¶ 5(d).

Admiral Lehman's affidavit is dated October 2004 and makes no reference to NASSCO or the *Duluth*. The affidavit attests generally to "the level of supervision and control by the United States Navy and its officers over every aspect of the design and manufacture of equipment intended for installation on Navy vessels." Lehman Decl. ¶ 2.

## LEGAL STANDARD

A motion to remand is the proper procedure for challenging an opposing party's removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand sua sponte or upon the motion of a party. A defendant who invokes the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

In addition to the more common federal question and diversity grounds for removal, pursuant to 28 U.S.C. § 1442(a), "[f]ederal officers, and their agents, may remove cases based on acts performed under color of their federal office if they assert a colorable federal defense." *Durham*, 445 F.3d at 1251 (citing 28 U.S.C. § 1442(a); *Mesa v. California*, 489 U.S. 121, 129 (1989)). "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims, and (c) it can assert a 'colorable federal defense.'" *Id.* (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)).

Unlike the general removal statutes, which "are to be strictly construed, and any doubts as to the right of removal must be resolved in favor of remanding to state court," *id.* at 1252 (citation omitted),

"the Supreme Court has mandated a generous interpretation of the federal officer removal statute," *id.* (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). There is, according to the Ninth Circuit, "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.* Also unlike the general removal statues, under section 1442, not all defendants need concede to removal. *See Eli Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("Thus, § 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants must join in the removal petition."). One defendant in a multi-defendant case can unilaterally remove the entire case to federal court if it meets the requirements of section 1442. *See id.*

"After a defendant learns that an action is removable, he [or she] has thirty days to remove the case to federal court" under 28 U.S.C. Section 1446. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2005) (citing 28 U.S.C. § 1446(b)). Unless the initial "'pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction," *id.* (quoting case), "the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable," *id.* (quoting 28 U.S.C. § 1446(b)). "[W]here the timeliness of a federal officer's removal is at issue," courts are to "extend section 1442's liberal interpretation to section 1446." *Id.* at 1253.

**DISCUSSION**

Plaintiff moves to remand this case, arguing that the Court does not have federal jurisdiction under 28 U.S.C. Section 1442(a)(1) or otherwise, or that, in the alternative, removal was late and therefore prohibited by 28 U.S.C. Section 1446.

The Court addresses plaintiff's second argument. Plaintiff argues that its answer to defendant NASSCO's Specific Interrogatory No. 54, constituted a "'paper' from which it [could] determine that the case [wa]s removable," *Durham*, 445 F.3d at 1250, and therefore defendant NASSCO's thirty day time period to remove this case to federal Court was triggered several weeks before Mr. Petteys's deposition. The Court agrees. "To start the thirty-day clock," plaintiff "had to provide" defendant NASSCO "with facts to support" each of the requirements of removal. *See Durham*, 445 F.3d at 1251.

5

In her interrogatory answer, plaintiff informed defendant that her claims relate to work her husband "performed aboard . . . military vessels" at NASSCO shipyards. Defendant NASSCO does not explain how an admission by plaintiff that her claims relate to work her husband "performed aboard . . . military vessels" at NASSCO shipyards differs from deposition testimony that her husband worked on an unnamed naval ship or came aboard the *Duluth* while it was under construction or being repaired at NASSCO shipyards. The declarations that defendant NASSCO uses as the factual support for Section 1442 removal do not distinguish between work "performed aboard . . . military vessels," work performed on an unnamed naval ship, and work performed aboard the *Duluth*. Admiral Horne bases his statements about the unnamed vessel and the *Duluth* on his general knowledge of and experience with repairs and construction of naval vessels generally. Admiral Lehman's declaration does not even mention NASSCO or the *Duluth*, and it dates from 2004.

Defendant NASSCO argues that the deposition "definitively placed Mr. Savelesky on [board] . . . a ship repaired at the NASSCO shipyard pursuant to the direction and control of 'federal officers.'" But the interrogatory answer—and clear and unequivocal admission by plaintiff, binding on her in this litigation—did the same.

The interrogatory answer provided defendant NASSCO with the facts it uses to support removal of this case. The answer was served on February 24, 2011. Defendant NASSCO's Notice of Removal was filed April 12, 2011. This was after the thirty-day period permitted by 28 U.S.C. Section 1446.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court GRANTS plaintiff's administrative motion and GRANTS plaintiff's motion to remand this case to the Superior Court for the County of Alameda. (Docs. 12, 21.)

**IT IS SO ORDERED.**

Dated: July 1, 2011

SUSAN ILLSTON
United States District Judge

6