

JUDGE SULLIVAN

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

LUIS ENRIQUE LUCIANO, SR.,

Plaintiff,

v.

ALCOA, INC., Individually, and as Successor in
Interest to Tilo Roofing Co., et al.;
AIR & LIQUID SYSTEMS CORPORATION, as
Successor by Merger to Buffalo Pumps, Inc.;
BURNHAM CORPORATION;
CBS CORPORATION f/k/a Viacom Inc. as Successor
In Interest to Westinghouse Electric Corp.;
CERTAIN-TEED CORPORATION;
CYTEC ENGINEERED MATERIALS, INC. f/k/a
Fiberite Corporation and a/k/a ICI Composites, Inc.;
CYTEC INDUSTRIES INC., Individually, and as
Successor to American Cyanamid Company;
DETECTO INDUSTRIAL SCALES OF NEW YORK,
INC.;
HOLLINGSWORTH & VOSE COMPANY;
HOMASOTE COMPANY, INC.;
KENTILE FLOORS, INC. a/k/a Kentile Operating
Company;
LOEWS CORPORATION;
LORILLARD TOBACCO COMPANY, Individually
and as Successor to P. Lorillard Company and as
Successor to Lorillard Inc.;
METROPOLITAN LIFE INSURANCE COMPANY;
OCCIDENTAL CHEMICAL CORPORATION,
Individually and as Successor to Durez;
OWEN ILLINOIS, INC.;
PLASTICS ENGINEERING COMPANY, Individually
and as Successor to Plenco;
RAPID-AMERICAN CORPORATION, as Successor-
by-Merger to Glen Alden Corporation, Briggs
Manufacturing Co., Philip Carey Corporation and
Philip Carey Manufacturing Company;
REICHHOLD CHEMICALS INC., a/k/a Reichhold, Inc.;
ROGERS CORPORATION;
TYCO FLOW CONTROL, INC., Individually and as
Successor to Keystone, Yarway Corporation and
Grinnell Corporation;

## 11 CIV 4566

Civ. No.: _____

**NOTICE OF REMOVAL**

Removed from the Supreme Court
of the State of New York, County
of New York, Index No.
190060/2011



COPY

TYCO INTERNATIONAL (US) INC., Individually
and as Successor to Hancock Valves, Keystone, Lonergan
Valves and Yarway Corporation and Grinnell Corporation;
UNION CARBIDE CORPORATION;
YARWAY CORPORATION.

                              Defendants.

---

      **PLEASE TAKE NOTICE** that defendants Lorillard Tobacco Company ("Lorillard") and Hollingsworth & Vose Company ("H&V") hereby remove the above-entitled action, with full reservation of all defenses, from the Supreme Court of the State of New York, County of New York, to the United States District Court, Southern District of New York, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

      In support of removal to this Court, Defendants respectfully allege:

**Plaintiff's Complaint and Nature of the Action**

      1.      On or about February 18, 2011, Plaintiff Luis Enrique Luciano, Sr., filed a Verified Complaint (the "Complaint") in the Supreme Court of the State of New York, County of New York, Index No. 190060/2011, naming as defendants Lorillard and H&V. In addition, the Complaint names numerous other defendants, most of which are allegedly engaged, or previously were engaged, in the manufacture, sale or distribution of asbestos-containing products. A copy of Plaintiff's Complaint is attached hereto as Exhibit A.

      2.      On or about June 3, 3011, Plaintiff filed a First Amended Verified Complaint (the "Amended Complaint") naming an additional defendant, Detecto Industrial Scales of New York, Inc. A copy of Plaintiff's Amended Complaint is attached hereto as Exhibit B.

3.        In his Complaint, as well as his Amended Complaint, Plaintiff alleges a single injury – mesothelioma – which, he claims, is caused by a single substance – asbestos. *See* Complaint, ¶ 2; Amended Complaint, ¶ 2.

**Diversity Jurisdiction is Proper Because All Defendants Other Than
Lorillard, H&V, and Homasote Were Fraudulently Joined.**

4.        Plaintiff was deposed on June 10, 2011. At his deposition, Plaintiff testified that his asbestos exposure stemmed from two sources: (1) occupational exposure to Homasote board, manufactured by defendant Homasote Company, Inc. ("Homasote"), and (2) smoking Kent brand cigarettes, manufactured by Lorillard.

5.        With respect to his occupational exposure, Plaintiff testified that he was exposed to Homasote's "sote board" during the course of his employment with Do-All Assemblers, where he worked from 1955 until his retirement in 1988. Dep. of Luis E. Luciano, Sr., 72:21-73:5; 73:25-74:3; 78:24-79:10 (excerpts attached hereto as Exhibit C). Do-All is not a named defendant in this action.

6.        With respect to Kent cigarettes, Mr. Luciano testified that he started smoking Kent in 1954, and continued to smoke Kent until he quit smoking in 1980. *Id.* at 182:2-8; 185:8-17. The original Kent cigarette was manufactured by Lorillard from March 1952 to May 1956, and included an asbestos-containing filter. H&V manufactured the material used to make the cigarette's asbestos-containing filter during that period. After May 1956, Kent was manufactured with non-asbestos filter material.

7.        Plaintiff testified that he was not exposed to any other asbestos-containing product manufactured or supplied by any other defendant. *Id.* at 94:20-95:9.

3

8.     All defendants other than Lorillard, H&V, and Homasote have been fraudulently joined in this action because Plaintiff offers no basis to seek relief against those parties.

9.     The improper joinder of nondiverse defendants does not defeat a diverse defendant's statutory right to remove an action that originally could have been brought in federal court. *See Stewart v. Raymond Corporation et al.*, 587 F. Supp. 2d 572, 575 (E.D.N.Y. 2008) ("A plaintiff...may not defeat diversity jurisdiction by the joinder of non-diverse defendants with no real connection to the litigation." *(citing Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). "Fraudulent joinder is demonstrated by showing either (1) fraud in the plaintiff's pleadings or (2) 'that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.'" *Id., citing Pampillonia*, 138 F.3d at 461.

10.     The existing fact record, including Plaintiff's sworn testimony that Lorillard, H&V, and Homasote are the only sources of his exposure to asbestos-containing products, demonstrates that Plaintiff cannot state a cause of action against the remaining defendants. Accordingly, those defendants have been fraudulently joined, and their citizenship may be disregarded for purposes of removal.

**Complete Diversity Exists Among Properly Joined Parties.**

11.     Plaintiff is a citizen of the State of Pennsylvania, where he has resided since 1992. (*See* Plaintiffs Response to Defendants' Fourth Amended Interrogatories and Request of Production of Documents, Nos. 1 and 4, attached hereto as Exhibit D).

4

12.     In circumstances such as these, where defendants are large corporations with operations spread across numerous states, courts in the Second Circuit have adopted the "nerve center" test to determine the corporation's principal place of business:

> Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective.

*Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959); *accord Felipe v. Target Corp.*, 572 F. Supp. 2d 455, 460-61 (S.D.N.Y. 2008) (same).

13.     Under this test, Lorillard is a Delaware corporation with its principal place of business in North Carolina, H&V is a Massachusetts corporation with its principal place of business in Massachusetts, and Homasote is a New Jersey corporation with its principal place of business in New Jersey.  All are diverse to Plaintiff.

14.     Therefore, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

**The Amount in Controversy Requirement is Satisfied.**

15.     Moreover, Plaintiff seeks recovery for an amount in excess of $75,000, exclusive of interest and costs.  Plaintiff alleges that he has suffered "a number of asbestos-related injuries, including: mesothelioma, chest pain, respiratory pain, shortness of breath upon exertion, extreme fatigue and weakness, emotional and psychological distress, depression, anxiety, and loss of interest and ability to partake in daily and recreational activities.  (*See* Plaintiff's Response to Defendants' Fourth Amended Interrogatories and Request of Production of Documents, No. 7 (Exhibit D), *see also* Amended Complaint at ¶ 2 (Exhibit B)).

16.      Given the damages alleged, prior New York verdicts in mesothelioma cases demonstrate that this action meets the amount in controversy requirement. *See, e.g., In re New York City Asbestos Litig.*, 16 Misc. 3d 945, 842 N.Y.S.2d 333 (Sup. Ct. N.Y. County 2007) (upholding $25,000,000 verdict in a mesothelioma case where verdict included, *inter alia*, damages for past pain and suffering and future pain and suffering); *Lustenring v. AC&S, Inc.*, 13 A.D. 3d 69, 786 N.Y.S.2d 20 (1st Dep't 2004) (affirming jury verdicts of $4,395,058 and $3,277,864.65 in two mesothelioma cases).

**Removal is Timely.**

17.      Section 1446(b) provides that, "[i]f the case stated by the initial pleading is not removable, a Notice of Removal shall be filed within thirty (30) days after receipt by the defendant, by service or otherwise, of the initial pleading or of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

18.      This Court has held that a deposition qualifies as "other paper" within the meaning of 28 U.S.C. § 1446(b). *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 399 F. Supp. 2d 340, 348 n. 47 (S.D.N.Y. 2005) (noting that the types of documents constituting other paper "can be anything from a deposition, to an amended pleading, to a letter between the parties").

19.      Defendants first clearly ascertained that defendants other than Lorillard, H&V, and Homasote were fraudulently joined in this action at Plaintiff's June 10, 2011 deposition, where he testified that he was not exposed to asbestos from any source other than Kent cigarettes and Homasote board. (*See* Exhibit C, 78:24-79:10; 94:20-95:9; 182:2-8; 185:8-17).

20.     New York courts have explained that "[w]hether a case is removable depends on whether the complaint enables a defendant to intelligently ascertain removability." *Soto v. Apple Towing*, 111 F. Supp. 2d 222, 226 (E.D.N.Y. 2000). In the context of 28 U.S.C. § 1446(b), a defendant can ascertain removability only where the paper is not "ambiguous or one which requires an extensive investigation to determine the truth." *Soto*, 111 F. Supp. 2d at 226.

21.     Here, Lorillard and H&V were unable to ascertain removability from the face of the Complaint, which purports to assert a cause of action against potentially non-diverse defendants, and had no duty to investigate further. Plaintiff's deposition, therefore, is the first "removable paper," and this petition has been filed within 30 days of Defendants' receipt thereof.

### All Defendants That Were Not Fraudulently Joined Consent to Removal.

22.     All properly joined defendants, including Lorillard, H&V, and Homasote, consent to this removal. The consent of fraudulently joined defendants is excused. *See, e.g., Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 384 (S.D.N.Y. 2006); *Gurney's Inn Resort v. Benjamin*, Civil No. 10-CV-3993, 2010 U.S. Dist. LEXIS 109029, at *7-8 (E.D.N.Y. Oct. 13, 2010).

### Notice

23.     Pursuant to 28 U.S.C. § 1446, a copy of this Notice of Removal will be filed promptly with the Supreme Court of the State of New York, County of New York.

### Venue is Proper.

24.     The United States District Court for the Southern District of New York includes New York County, where the state court action is pending. Thus, pursuant to 28 U.S.C. § 124(b)(2), venue is proper.

7

**Reservation of Defenses and Rights**

25.     As of the date of the filing of this Notice of Removal, no further proceedings have been had in the Supreme Court of the State of New York, County of New York.

26.     Defendants reserve all defenses, including, without limitation, the defense of lack of personal jurisdiction.

27.     Defendants reserve the right to amend or supplement this Notice of Removal.

28.     Defendants request trial by jury of all issues.

WHEREFORE, Defendants remove the action now pending in the Supreme Court of the State of New York, County of New York, to this Court.

Dated: New York, New York
       July 5, 2011                          Respectfully submitted,

                                             GREENBERG TRAURIG, LLP

                                             By
                                                  Robert J. Kirshenberg

                                             MetLife Building
                                             200 Park Avenue
                                             New York, New York 10166
                                             Phone:  (212) 801-9200
                                             Fax:    (212) 801-6400
                                             Email:  KirshenbergR@gtlaw.com

                                             Attorneys for Defendant
                                             Lorillard Tobacco Company

                                                      and

WESTERMAN BALL EDERER MILLER
& SHARFSTEIN, LLP

By *William Vita*

William E. Vita

1201 RXR Plaza
Uniondale, NY  11556
Phone: (516) 622-9200
Fax:    (516) 622-9212
Email: wvita@westermanllp.com

Attorneys for Defendant
Hollingsworth & Vose Company

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a true copy of **Lorillard Tobacco Company's and Hollingsworth & Vose Company's Notice of Removal** by placing same in the United States mail, postage prepaid, this 5th day of July, 2011, addressed to:

| | |
|---|---|
| Jordan C. Fox, Esq.<br>**BELLUCK & FOX, LLP**<br>546 Fifth Avenue, 4th Floor<br>New York, New York 10036<br><br>*Attorneys for Plaintiff* | Christopher Cotton, Esq.<br>**SHOOK, HARDY & BACON**<br>2555 Grand Blvd.<br>Kansas City, Missouri 64108<br><br>*Attorneys for Defendant*<br>*Lorillard Tobacco Company* |
| William E. Vita, Esq.<br>**WESTERMAN BALL EDERER**<br>**MILLER & SHARFSTEIN, LLP**<br>1201 RXR Plaza<br>Uniondale, New York 11556<br><br>*Attorneys for Defendant Hollingsworth*<br>*& Vose Company* | Andrew McElaney, Esq.<br>**NUTTER, MCCLENNEN & FISH, LLP**<br>World Trade Center West<br>155 Seaport Boulevard<br>Boston, Massachusetts 02110-2604<br><br>*Attorneys for Defendant Hollingsworth &*<br>*Vose Company* |
| Mary Chicorelli, Esq.<br>**WILBRAHAM LAWLER & BUBA**<br>1818 Market St., Suite 3100<br>Philadelphia, PA 19103-3631<br><br>*Attorneys for Air & Liquid Systems*<br>*Corporation* | William Bradley, Esq.<br>Syed K. Rizvi, Esq.<br>**MALABY & BRADLEY, LLC**<br>150 Broadway, 6th Floor<br>New York, NY 10038<br><br>*Attorneys for Alcoa Inc.*<br>*& CBS Corporation* |
| Ian Williamson, Esq.<br>**CULLEN & DYKMAN**<br>177 Montague Street<br>Brooklyn, New York 11201<br><br>*Attorneys for Burnham Corporation* | Judith Yavitz, Esq.<br>Daniel J. McKenna<br>**REED SMITH LLP**<br>599 Lexington Avenue<br>New York, New York 10022<br><br>*Attorneys for Certain-Teed Corporation*<br>*and Union Carbide* |

| | |
|---|---|
| Eric Naegely, Esq.<br>**DAMON & MOREY LLP**<br>The Avant Building, Suite 1200<br>200 Delaware Avenue<br>Buffalo, New York  14202-2150<br><br>*Attorneys for Cytec Engineered*<br>*Materials & Cytec Industries Inc.* | Arthur G. Lash Esq.<br>**O'TOOLE FERNANDEZ, WEINER**<br>    **VAN LIEU**<br>60 Pompton Avenue<br>Verona, New Jersey 07044<br><br>*Attorneys for Detecto Industrial Scales of*<br>*New York, Inc.* |
| Robert E. Henlon, JR., CPA, PA<br>**DETECTO INDUSTRIAL SCALES**<br>    **OF NEW YORK, INC.**<br>31 South Street<br>Morristown, New Jersey 07961 | Matthew Sampar, Esq.<br>**McGIVNEY & KLUGER. PC**<br>80 Broad Street, 23rd Floor<br>New York, NY 10004<br><br>*Attorneys for Homasote Company* |
| Bernard E. Jude Quinn, Esq.<br>**McGIVNEY & KLUGER, PC**<br>1600 Arch Street, Suite 1800<br>Philadelphia, PA 19103<br><br>*Attorneys for Kentile Floors* | Justin Perri, Esq.<br>**STEPTOE & JOHNSON LLP**<br>750 Seventh Avenue, Suite 1900<br>New York, New York  10019<br><br>*Attorneys for Metropolitan Life Insurance*<br>*Company* |
| Bruce Gilpatrick, Esq.<br>**HEIDELL, PITTONI, MURPHY &**<br>    **BACH, LLP**<br>99 Park Avenue<br>New York, New York  10016<br><br>*Attorneys for Occidental Chemical*<br>*Corporation* | Paul Scrudato, Esq.<br>**SCHIFF HARDIN LLP**<br>900 Third Avenue, 23rd Floor<br>New York, New York  10022<br><br><br>*Attorneys for Owens Illinois, Inc. & Tyco*<br>*Flow Control & Tyco International (US) &*<br>*Yarway Corp.* |
| Robert Schaeffer, Esq.<br>**HARRIS BEACH, PLLC**<br>100 Wall Street, 23rd Floor<br>New York, New York  10005<br><br>*Attorneys for Plastics Engineering*<br>*Company* | Amiel Gross, Esq.<br>**SNT DENTON US LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020<br><br>*Attorneys for Rapid-American Corporation* |

| Stephanie Spardone, Esq.<br>**HAWKINS, PARNELL,**<br>**THACKSTON & YOUNG, LLP**<br>Highland Park Place<br>4514 Cole Avenue, Suite 500<br>Dallas, Texas 75205<br><br>*Attorneys for Reichhold, Inc.* | Ted Eder, Esq.<br>Andre Harlfinger, Esq.<br>**SEGAL, McCAMBRIDGE, SINGER &**<br>**MAHONEY**<br>850 Third Avenue, Suite 1100<br>New York, New York 10022<br><br>*Attorneys for Rogers Corporation* |
| --- | --- |
| Brady Edwards, Esq.<br>Daphne Taylor Evans<br>**MORGAN LEWIS & BOCKIUS,**<br>**LLP**<br>1000 Louisiana Street, Suite 4200<br>Houston, Texas 77002<br><br>*Attorneys for Tyco Flow Control &*<br>*Tyco International (US) & Yarway Corp.* | |

Robert J. Kirshenberg

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LUIS ENRIQUE LUCIANO, SR.,

                                        Plaintiffs,

v.

ALCOA INC., Individually and as successor in
    interest to Tilo Roofing Co., et al.

                                        Defendants.

See Attached Rider - FULL CAPTION

Index No. : *190060/2011*

Date Filed: *2/18/2011*

Plaintiff designates
**NEW YORK**
County as the place of trial

The basis of the venue is
**DEFENDANTS' PLACE OF
BUSINESS**

**SUMMONS**

**TO THE ABOVE NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve
a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice
of Appearance, on the Plaintiff's Attorney within 20 days after the service of this Summons,
exclusive of the day of service (or within 30 days after the service is complete if this Summons is
not personally delivered to you within the State of New York). In the case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: New York, New York
      February 15, 2011

Yours etc.,

**BELLUCK & FOX, LLP**
*Attorneys for Plaintiff*
546 Fifth Avenue, 4th Floor
New York, New York 10036
(212) 681-1575

By: _____
    Joseph W. Belluck, Esq.

NEW YORK
COUNTY CLERKS OFFICE

FEB 18 2011

NOT COMPARED
WITH COPY FILE

**Defendants' addresses:**

**SEE ATTACHED DEFENDANT SERVICE LIST**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LUIS ENRIQUE LUCIANO, SR.,

Index No. :

Plaintiffs,

**FULL CAPTION RIDER**

- against -

ALCOA INC., Individually and as successor in interest
    to Tilo Roofing Co.;
AIR & LIQUID SYSTEMS CORPORATION, as
    Successor by Merger to Buffalo Pumps, Inc.;
BURNHAM CORPORATION;
CBS CORPORATION f/k/a Viacom Inc as Successor
    in Interest to Westinghouse Electric Corp.;
CERTAIN-TEED CORPORATION;
CYTEC ENGINEERED MATERIALS, INC. f/k/a
    Fiberite Corporation and a/k/a ICI Composites,
    Inc.;
CYTEC INDUSTRIES INC., Individually and as
    successor to American Cyanamid Company;
HOLLINGSWORTH & VOSE COMPANY;
HOMASOTE COMPANY, INC.;
KENTILE FLOORS, INC. a/k/a Kentile Operating
    Company;
LOEWS CORPORATION;
LORILLARD TOBACCO COMPANY, Individually
    and as Successor to P. Lorillard Company and
    as Successor to Lorillard, Inc.;
METROPOLITAN LIFE INSURANCE COMPANY;
OCCIDENTAL CHEMICAL CORPORATION,
    Individually and as Successor to Durez;
OWENS ILLINOIS, INC.;
PLASTICS ENGINEERING COMPANY, Individually
    and as Successor to Plenco;
RAPID-AMERICAN CORPORATION,  as successor-
    by-merger to Glen Alden Corporation, Briggs
    Manufacturing Co., Philip Carey Corporation
    and Philip Carey Manufacturing Company;
REICHHOLD CHEMICALS, INC. a/k/a Reichhold,
    Inc.;
ROGERS CORPORATION;
TYCO FLOW CONTROL, INC., Individually and as
    Successor to Keystone, Yarway Corporation
    and Grinnell Corporation;

- 2 -

TYCO INTERNATIONAL (US) INC., Individually
and as Successor to Hancock Valves, Keystone,
Lonergan Valves and Yarway Corporation and
Grinnell Corporation;
UNION CARBIDE CORPORATION;
YARWAY CORPORATION.

                                    Defendants.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LUIS ENRIQUE LUCIANO, SR.,

Plaintiffs,

- against -

ALCOA INC., Individually and as successor in interest
    to Tilo Roofing Co.;
AIR & LIQUID SYSTEMS CORPORATION, as
    Successor by Merger to Buffalo Pumps, Inc.;
BURNHAM CORPORATION;
CBS CORPORATION f/k/a Viacom Inc as Successor
    in Interest to Westinghouse Electric Corp.;
CERTAIN-TEED CORPORATION;
CYTEC ENGINEERED MATERIALS, INC. f/k/a
    Fiberite Corporation and a/k/a ICI Composites,
    Inc.;
CYTEC INDUSTRIES INC., Individually and as
    successor to American Cyanamid Company;
HOLLINGSWORTH & VOSE COMPANY;
HOMASOTE COMPANY, INC.;
KENTILE FLOORS, INC. a/k/a Kentile Operating
    Company;
LOEWS CORPORATION;
LORILLARD TOBACCO COMPANY, Individually
    and as Successor to P. Lorillard Company and
    as Successor to Lorillard, Inc.;
METROPOLITAN LIFE INSURANCE COMPANY;
OCCIDENTAL CHEMICAL CORPORATION,
    Individually and as Successor to Durez;
OWENS ILLINOIS, INC.;
PLASTICS ENGINEERING COMPANY, Individually
    and as Successor to Plenco;
RAPID-AMERICAN CORPORATION, as successor-
    by-merger to Glen Alden Corporation, Briggs
    Manufacturing Co., Philip Carey Corporation
    and Philip Carey Manufacturing Company;
REICHHOLD CHEMICALS, INC. a/k/a Reichhold,
    Inc.;
ROGERS CORPORATION;
TYCO FLOW CONTROL, INC., Individually and as
    Successor to Keystone, Yarway Corporation
    and Grinnell Corporation;

Index No.:

**VERIFIED COMPLAINT**

NEW YORK
COUNTY CLERKS OFFICE

FEB 0 9 2011

NOT COMPARED
WITH COPY FILE

- 4 -

TYCO INTERNATIONAL (US) INC., Individually
    and as Successor to Hancock Valves, Keystone,
    Lonergan Valves and Yarway Corporation and
    Grinnell Corporation;
UNION CARBIDE CORPORATION;
YARWAY CORPORATION.

Defendants.

Plaintiff by his attorneys, BELLUCK & FOX LLP, upon information and belief, at all times hereinafter mentioned allege as follows:

**THE PARTIES**

1.      Plaintiff is a resident of the State of Pennsylvania unless otherwise specified in individual complaints.

2.      Plaintiff alleges that plaintiff Luis Enrique Luciano, Sr. has been diagnosed with Mesothelioma.

3.      The term "Defendants" shall apply to all corporate and business entities, and/or their predecessors and/or successors in interest as more fully described and enumerated in the captions of individual complaints subsequently filed in the "short form" in accordance with the applicable case management order of this Court.

4.      The Defendants have done business in this State, have conducted or transacted business in this State, have committed one or more tortious acts within this state, or have otherwise performed acts within and/or without this State giving rise to injuries and losses within this State, which acts subject each Defendant to the jurisdiction of the Courts of this State.

5.      Defendant **ALCOA INC., Individually and as successor in interest to Tilo Roofing Co.** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences

- 5 -

within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

6.      Defendant **AIR & LIQUID SYSTEMS CORPORATION, as Successor by Merger to Buffalo Pumps, Inc.** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

7.      Defendant **BURNHAM CORPORATION** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

8.      Defendant **CBS CORPORATION f/k/a Viacom Inc as Successor in Interest to Westinghouse Electric Corp.** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

9.      Defendant **CERTAIN-TEED CORPORATION** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

10.    Defendant **CYTEC ENGINEERED MATERIALS, INC. f/k/a Fiberite Corporation and a/k/a ICI Composites, Inc.** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York.  At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

11.    Defendant **CYTEC INDUSTRIES INC., Individually and as successor to American Cyanamid Company** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York.  At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

12.    Defendant **HOLLINGSWORTH & VOSE COMPANY** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

13.    Defendant **HOMASOTE COMPANY, INC.** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York.  At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

14.    Defendant **KENTILE FLOORS, INC. a/k/a Kentile Operating Company** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of

New York.  At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

15.     Defendant **LOEWS CORPORATION** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York.  At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

16.     Defendant **LORILLARD TOBACCO COMPANY, Individually and as Successor to P. Lorillard Company and as Successor to Lorillard, Inc.** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

17.     Defendant **METROPOLITAN LIFE INSURANCE COMPANY** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

18.     Defendant **OCCIDENTAL CHEMICAL CORPORATION, Individually and as Successor to Durez** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

19.     Defendant **OWENS ILLINOIS, INC.** is a duly organized foreign corporation doing business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

20.     Defendant **PLASTICS ENGINEERING COMPANY, Individually and as Successor to Plenco** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

21.     Defendant **RAPID-AMERICAN CORPORATION, Successor-by-merger to Glen Alden Corporation, Briggs Manufacturing Co., Philip Carey Corporation and Philip Carey Manufacturing Company** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

22.     Defendant **REICHHOLD CHEMICALS, INC. a/k/a Reichhold, Inc.** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

23.     Defendant **ROGERS CORPORATION** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant,

it has engaged in the sale and distribution of materials and products containing the substance
asbestos.

24.     Defendant **TYCO FLOW CONTROL, INC., Individually and as Successor to
Yarway Corporation, Keystone and Grinnell Corporation** was and is a duly organized
foreign corporation doing business and/or transacting business in the State of New York and/or
should have expected its acts to have consequences within the State of New York. At all times
relevant, it has engaged in the sale and distribution of materials and products containing the
substance asbestos.

25.     Defendant **TYCO INTERNATIONAL (US) INC., Individually and as
Successor to Hancock Valves and Lonergan Valves, Keystone, and Yarway Corporation
and Grinnell Corporation** was and is a duly organized foreign corporation doing business
and/or transacting business in the State of New York and/or should have expected its acts to have
consequences within the State of New York. At all times relevant, it has engaged in the sale and
distribution of materials and products containing the substance asbestos.

26.     Defendant **UNION CARBIDE CORPORATION** was and is a duly organized
foreign corporation doing business and/or transacting business in the State of New York and/or
should have expected its acts to have consequences within the State of New York. At all times
relevant, it has engaged in the sale and distribution of materials and products containing the
substance asbestos.

27.     Defendant **YARWAY CORPORATION** was and is a duly organized foreign
doing business and/or transacting business in the State of New York and/or should have expected
its acts to have consequences within the State of New York. At all times relevant, it has engaged
in the sale and distribution of materials and products containing the substance asbestos.

- 10 -

28.     Defendant "JOHN DOE" #1 is a contractor, supplier, distributor and/or manufacturer of asbestos products and machinery and equipment including the installation and/or use of asbestos-containing products each of whom maintained a presence at the work sites and/or other facilities, structures and/or edifices where the Plaintiff was exposed to or used several asbestos products, materials, and equipment and machinery.

29.     The Defendants have done business in this State, have conducted or transacted business in this State, have committed one or more tortious acts within this state, or have otherwise performed acts within and/or without this State giving rise to injuries and losses within this State, which acts subject each Defendant to the jurisdiction of the Courts of this State.

30.     The actions and conduct of the Defendants as more fully described below were carried out through their respective offices, by authorized agents, servants and employees, who were acting in the course and scope of their employment and authority, and in furtherance of the business and profit of the Defendants.

31.     Each Defendant, with the exception of the **METROPOLITAN LIFE INSURANCE COMPANY** has been engaged in the mining, production, processing, design, manufacture, marketing, supply, delivery, distribution, installation, use, purchase, removal and/or sale of raw asbestos fibers of various kinds and grades, asbestos-containing products, and/or machinery and equipment requiring or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as Asbestos products).

32.     Plaintiff, for a period of many years, worked with, came in contact with, or was exposed to, asbestos products while working in various shipyards, steel mills, refineries, paper mills, chemical plants, industrial sites and facilities, construction sites and other facilities or was exposed to the defendants' products through the normal use of these products.

- 11 -

33.   During the course of his/her employment, the Plaintiff was exposed on numerous occasions to asbestos products which were mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, installed, used, purchased, removed or sold by the Defendants.

34.   During the course, and in furtherance of, his/her employment and life, the Plaintiff was unavoidably exposed to, inhaled and ingested asbestos fibers and dust contained within and emanating from the Defendants' asbestos products.

35.   As a direct and proximate result of his/her unavoidable exposure to, and resultant inhalation and ingestion of, asbestos fibers and dust as contained within and emanating from the Defendants' asbestos products, Plaintiff has/did develop(ed) a progressive, debilitating asbestos-related illness/disease and/or risk of death.

36.   Plaintiff alleges that each and every exposure to Defendants' asbestos products caused or contributed to his/her injuries, such that the Defendants are jointly and severally liable to the Plaintiff for the resultant asbestos-related illness/disease and/or risk of death alleged herein.

## AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN NEGLIGENCE

37.   Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

38.   Defendants knew, or with reasonable diligence should have known and/or ascertained, that their asbestos products were inherently dangerous and hazardous to the health and well-being of those using, exposed to or coming in contact with Defendants' asbestos products.

- 12 -

39.    Defendants knew, or with reasonable diligence should have known and/or ascertained, that the reasonable and anticipated use of, exposure to or contact with their asbestos products would cause the release of asbestos fibers and dust into the ambient air, creating danger and unreasonable risk of injury and harm to those breathing the air contaminated with such asbestos fibers and dust.

40.    Defendants knew, or with reasonable diligence should have known and/or ascertained, that the Plaintiff would use or come into contact with Defendants' asbestos products and in so doing, would become exposed to and inhale and ingest the asbestos fibers and dust in the ambient air as they were discharged and released from the Defendants' products in the course of ordinary and foreseeable contact, application and use of those products.

41.    Defendants knew, or with reasonable diligence should have known and/or ascertained that the Plaintiff used, came into contact with, and was exposed to Defendants' asbestos products and the fibers and dust emanating from and released by those products without any knowledge of the dangers and potential risk of harm to which he/she was being exposed.

42.    Despite knowledge of the unsafe and dangerous nature and properties of their respective asbestos products, the Defendants willfully, recklessly and negligently:

(a)    failed to warn the public at large, and more particularly this Plaintiff, of the dangers and hazards associated with or caused by the use of, exposure to or contact with Defendants' asbestos products resulting from the ordinary, anticipated and foreseeable use of Defendants' asbestos products;

(b)    failed to study, investigate and/or properly test their asbestos products for both potential and actual hazards associated with the use of, exposure to and contact with

- 13 -

Defendants' asbestos products, when such products were used in a reasonably foreseeable and anticipated manner;

(c)     failed to communicate or convey their suspicions and knowledge with respect to potential or actual dangers and health hazards associated with the use of, exposure to or contact with Defendants' asbestos products resulting in inhalation and ingestion of asbestos fibers and dust to the users and consumers of the Defendants' asbestos products;

(d)     failed to design or redesign Defendants' asbestos products to prevent, impede or minimize the release of airborne inhalable and ingestible asbestos fibers and dust;

(e)     failed to properly design and manufacture Defendants' asbestos products to insure safe use and handling by users and consumers under conditions that were reasonably anticipated and foreseeable;

(f)     failed to advise the public at large, and more particularly this Plaintiff, of the necessity for protective garments, safety equipment and appliances to protect the user/consumer from harm caused by inhalation and ingestion of asbestos fibers and dust released by, and associated with, the ordinary and foreseeable use of, and contact with, Defendants' asbestos products;

(g)     failed to institute, adopt or enforce appropriate safety protocols for handling and use of asbestos products to individuals working with, utilizing, handling or otherwise coming into contact with Defendants' asbestos products;

(h)     failed to adequately package their respective asbestos products in a manner which would insure safe handling and use by those individuals, including this Plaintiff, who the Defendants' knew or should have reasonably anticipated would be exposed to asbestos

fibers and dust released by and associated with the ordinary and foreseeable use of Defendants'
asbestos products;

(i)      failed to remove their asbestos products from the stream of commerce
despite knowledge of the unsafe and dangerous nature of those products;

(j)      continued to mine, produce, process, design, manufacture, market, supply,
deliver, distribute, install, use, purchase, remove and sell asbestos products for general
application and purposes without any alteration or change, despite the potential and known
health hazards and dangers posed to the foreseeable and anticipated user and consumer of those
products;

(k)      failed to timely develop and utilize substitute materials for asbestos in
their asbestos products;

(l)      failed to design or redesign asbestos-containing products to prevent,
impede or minimize the release of airborne inhalable and ingestible asbestos fibers and dust;
and,

(m)     failed to recall and/or issue a post-sale warning for their asbestos products.

43.     The continued mining, production, processing, design, manufacture, marketing,
distribution, supply, use, purchase, installation, removal, delivery, and sale by the Defendants' of
their respective asbestos products under the circumstances and conditions enumerated above,
demonstrates the callous, reckless, willful, depraved and wanton indifference to and disregard of
the health, safety and welfare of the public at large, and more particularly, this Plaintiff.

44.     As a result of the Defendants' negligence and recklessness, the Plaintiff
unwittingly and unavoidably inhaled and ingested asbestos fibers and dust, resulting in the
development of his/her asbestos related disease and illness; Plaintiff has been caused to endure

- 15 -

severe physical pain and suffering and mental anguish; has been placed at increased risk for developing other serious bodily injuries; has expended sums of money for medical care, treatment and monitoring related to his/her asbestos exposure, inhalation and ingestion; will be required to expend additional monies for medical care, treatment and monitoring in the future; has been prevented from pursuing his/her normal activities and employment; has been deprived of his/her ordinary pursuits and enjoyment of life; has suffered pecuniary losses; and has otherwise been damaged.

45.    The illnesses and disabilities of the Plaintiff are a direct and proximate result of the negligence and carelessness of the Defendants, and their demonstrated wanton and reckless disregard for his/her safety and well-being.

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN BREACH OF WARRANTY

46.    Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

47.    The Defendants expressly and impliedly warranted that their asbestos products were of good and merchantable quality and fit for their intended uses and purposes.

48.    The express and implied warranties made by these Defendants were false, misleading and consequently breached since these products were unreasonably dangerous, defective, hazardous and harmful when used, applied or installed in the manner, and for the purposes, intended.

49.    As a direct and proximate result of Defendants' breached warranties the Plaintiff used, came into contact with and was exposed to Defendants' asbestos products, causing him to unknowingly and unwittingly inhale and ingest asbestos fibers and dust resulting from the ordinary and foreseeable use of those products.

- 16 -

50.    By virtue of the breach of the express and implied warranties of good and merchantable quality and fitness for particular use, the Plaintiff developed an asbestos-related disease, has suffered great pain and suffering and mental anguish, and has been otherwise damaged.

### AS AND FOR A THIRD CAUSE OF ACTION SOUNDING IN STRICT LIABILITY

51.    Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

52.    The Defendants sold or otherwise placed their asbestos products into the stream of commerce in a defective, unsafe and unreasonably dangerous condition.

53.    The Defendants knew or otherwise expected that their asbestos products would reach the ultimate user/consumer of their asbestos products, including this Plaintiff, without substantial change from, or alteration of, the condition in which these products were originally manufactured and sold.

54.    The Defendants knew, or in the exercise of reasonable diligence, should have ascertained that the Plaintiffs and others similarly situated, would be the ultimate users/consumers of Defendants' asbestos products or would be exposed to their asbestos products.

55.    Defendants knew that their asbestos products would be used without inspection for defects and, by placing them in the marketplace, represented to the public at large and more particularly this Plaintiff that these products could be utilized safely, in the manner, and for the purpose for which they were intended.

56.    Defendants knew that their asbestos products were defective and were incapable of being made safe for their ordinary and intended uses and purposes and that these defects were

not discoverable by the Plaintiff, or others similarly situated, in the exercise of reasonable care nor were the dangers and hazards of these products perceivable to the Plaintiff and others similarly situated such that he/she might otherwise have averted his/her injury by the exercise of reasonable care.

57.    In light of the above, the ordinary and foreseeable use of Defendants' asbestos products constituted a dangerous and hazardous activity and placed the ultimate user/consumer, and this Plaintiff more particularly, at an unreasonable risk of harm and injury by contaminating the atmosphere in which the Plaintiff carried out his/her work related duties.

58.    The risks and dangers created by the use of Defendants' products outweighed the utility of these products.

59.    As a consequence of the defects of Defendants' products and the Plaintiff's resultant inhalation and/or ingestion of asbestos fibers and dust resulting from the ordinary and foreseeable use of those asbestos products, Plaintiff has sustained serious and permanent injuries as more fully described herein.

60.    The Defendants, by virtue of the foregoing, are strictly liable to the Plaintiff for injuries and illnesses resulting from the defects and dangerous propensities of their asbestos products alleged herein.

### AS AND FOR A FOURTH CAUSE OF ACTION LABOR LAW VIOLATIONS

61.    Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

62.    Defendants, their subsidiaries, agents and/or servants were/are owners, possessors, lessors, lessees' operator, controllers, managers, supervisors, general contractors, subcontractors, architects, engineers or were otherwise responsible for the maintenance, control

and/or safety at the premises on which plaintiff was lawfully frequenting and exposed to asbestos.

63.     Defendants, their subsidiaries, agents and/or servants had a legal duty to maintain and keep those premises in a safe and proper condition.

64.     At all times relevant hereto, plaintiff was lawfully frequenting the premises on which plaintiff was exposed to asbestos.

65.     At all times relevant hereto, plaintiff's presence on the premises on which plaintiff was exposed to asbestos was known or knowable to the defendants.

66.     Defendants, their subsidiaries, agents, and/or servants negligently created, caused and/or permitted to exist, an unsafe, hazardous and/or dangerous condition to exit by specifying, using and/or permitted the presence of asbestos and/or asbestos containing products, equipment and/or fixtures at the premises on which plaintiff was exposed to asbestos.

67.     Defendants, their subsidiaries, agents, and/or servants negligently permitted a defective, hazardous and/or dangerous condition to remain uncorrected and/or unchanged at the premises on which the plaintiff was present and exposed to asbestos.

68.     Defendants, their subsidiaries, agents, and/or servants knew, or should have known, of the existence of the unsafe, hazardous and/ or dangerous condition and failed to correct this dangerous condition.

69.     Defendants, their subsidiaries, agents, and/or servants knew, or should have known of the existence of unsafe, hazardous and/or dangerous condition and failed to warn the plaintiff of the existence of the dangerous condition and/or provide the plaintiff the means to protect himself from the dangerous condition

70.     Defendants, their subsidiaries, agents, and/or servants were negligent in that they violated the common law duty to maintain a safe work place for individuals, such as plaintiff, who were working in, lawfully frequenting and exposed to asbestos on premises owned, maintained and/or controlled by them.

71.     Defendants, their subsidiaries, agents, and/or servants violated New York Labor law section 200 et seq: including, but not limited to, section 200 and 241(6) and the New York Industrial Code 12NYCR section 12 and 23 by their failure to provide a safe workplace, including, but not limited to, failure to make reasonable inspection to detect dangerous conditions and hidden defects and to warn of dangers of which they knew or should have known, and by their failure to provide reasonable and adequate protection for individuals, such as plaintiff, who was lawfully at a construction site owned, maintained and/or controlled by them. Inter alia:

      (a)    Defendants, their subsidiaries, agents, and/or servants violated the New York State Industrial Code Section 12, and 14, which states that:

            i)    All operators or processes which produce air contaminants shall be so conducted that the generation, release or dissemination of such contaminants is kept at the lowest practicable level in compliance with this Part (rule). Using proper control of protective procedure and equipment.

            ii)    (1) Every employer shall effect compliance with the provision of this Part (rule) relating to the prevention and removal of air contaminants, the storage and use of flammable liquids and the

provision, installation, operation and maintenance of control or protective equipment.

(2) Every employer shall instruct his employees as to the hazards of their work, the use of the protective equipment and their responsibility for complying with Provision of this Part (rule).

(3) No employee shall suffer or permit an employee to work in a room in which there exist dangerous air contaminants in a work atmosphere.

(4) No employee shall suffer or permit dangerous air contaminants to accumulate remain in any place or area subject to the provision of this Part (rule) (b).

(b)   Defendants, their subsidiaries, agents, and/or servants violated New York State Industrial Code Section 12, and 15, which states that:

   i)   Personal respiratory equipment shall not be used in lieu of other control methods, except for protection of employees' emergencies and in the repair, maintenance or adjustment or equipment or processes, or upon specific approval by the board.

(c)   Defendants, their subsidiaries, agents, and/or servants violated New York States Industrial Code Section 12, subsection 1.9 (formerly section 12.9) which states that:

   i)   One or more of the following methods shall be used to prevent, remove or control dangerous air contaminants:

- 21 -

(1)    Substitution of a material of a method which does not produce dangerous air contaminants.

(2)    Local exhaust ventilation conforming on the requirements of Industrial Code Part (Rule No.) 18.

(3)    Dilution Ventilation.

(4)    Application of water or other wetting agent.

(5)    Other methods approved by the board.

(d)    As evidence of defendants' their subsidiaries', agents' and/or servants violation of the abovementioned section of the New York Stated Industrial Code, defendants, their subsidiaries, agents, and/or servants permitted asbestos dust concentrations above the 5mppcf threshold limit value specified in section 12, subsection 3.1, without providing the requires reasonable and adequate protective measures, thereby rendering the premises unsafe.

(e)    Defendants, their subsidiaries, agents, and/or servants violated section 23 3(d) of the New York Industrial Code which state that:

(f)    Provision shall be made at every demolition site control the amount of airborne dust resulting from demolition by wetting the debris and other materials with the appropriate spraying agents or other means.

72.    Defendants, their subsidiaries, agents, and/or servants negligently designed and/or specified the use of asbestos containing products, equipment and/ or fixtures at the premises on which plaintiff was lawfully frequenting and exposed to asbestos.

73.    Defendants, their subsidiaries, agents, and/or servants negligently breached their contractual duty to the plaintiff, third party beneficiary, to provide for the health, welfare and/or safety of those, such as plaintiff, lawfully frequenting the premises on which plaintiff was exposed to asbestos.

74.    Defendants, their subsidiaries, agents, and/or servants, breached their warranty to provide for the health, welfare, and/or safety of those such as plaintiff, lawfully frequenting the premises on which plaintiff was exposed to asbestos.

75.    Defendants, their subsidiaries, agents, and/or servants breached the duty imposed on possessors of land, contractors and subcontractors and codified in the restatement of the law, Second, Torts, including, but not limited to, section 342, 410, 411, 412, 413, 414, 414A, 416, 422 and 427.

76.    These acts and/ or omissions of the defendants constitute willful misconduct and conscience disregard of the health of the public, including the plaintiff.

77.    As a direct and proximate result of the defendant's conduct plaintiff was exposed to asbestos and asbestos containing products and sustained serious injuries and described above.

78.    Plaintiff was seriously injured.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY

79.    Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

80.    Defendant **METROPOLITAN LIFE INSURANCE COMPANY** through its Policyholders Service Bureau undertook duties owed by the Defendants to the Plaintiff by testing asbestos workers and conducting scientific studies related to asbestos exposure.

- 23 -

81.    In undertaking these duties, the Defendant **METROPOLITAN LIFE INSURANCE COMPANY** knew, or in the exercise of reasonable diligence should have known, that it was providing testing service for the ultimate protection of third parties, including the Plaintiff.

82.    In both conducting said tests and in publishing the alleged results thereof the Defendant **METROPOLITAN LIFE INSURANCE COMPANY** failed to exercise reasonable care to conduct or publish timely complete, adequate and accurate tests concerning health effects of asbestos exposure.

83.    The Defendant **METROPOLITAN LIFE INSURANCE COMPANY** also caused to be published intentionally false, misleading, inaccurate and deceptive information about the adverse health effects of asbestos exposure.

84.    The Plaintiff unwittingly but justifiably relied upon the purported thoroughness of the tests and information disseminated by the Defendant **METROPOLITAN LIFE INSURANCE COMPANY**, which published these test results and information in a leading medical journal.

85.    As a direct and proximate result of the failures on the part of this Defendant in conducting tests and publishing results thereof which were false, misleading, inaccurate, deceptive and untruthful, the Defendant **METROPOLITAN LIFE INSURANCE COMPANY** caused, encouraged and promoted the Plaintiff's asbestos exposure and caused and/or contributed to the injuries sustained by the Plaintiff as more fully described herein.

86.    By reason of the foregoing, the Defendant **METROPOLITAN LIFE INSURANCE COMPANY** acted with reckless and wanton disregard for the welfare of the general public, including this Plaintiff.

- 24 -

## AS AND FOR A SIXTH CAUSE OF ACTION SOUNDING IN CONSPIRACY AND COLLECTIVE LIABILITY/CONCERT OF ACTION

87.     Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

88.     The Defendants since the early 1900's have been possessed of medical and scientific data which raised questions concerning the safety of asbestos in the workplace and which demonstrated the existence of health hazards to those exposed to, or coming in contact with, asbestos products.

89.     Defendants collectively and through explicit agreement and consciously parallel behavior, controlled industry standards regarding the testing, manufacture, sale, distribution and use of asbestos products and controlled the level of knowledge on the part of the public regarding the hazards of exposure to fibers and dust emanating from and released by Defendants' asbestos products.

90.     The Defendants through agreement and consciously parallel behavior intentionally failed to warn potential users, and the Plaintiff in particular, of the serious bodily harm which may result from the inhalation of, and exposure to, asbestos fibers and dust emanating from and released by asbestos products.

91.     The Defendants conspired and/or acted in concert to withhold, conceal and suppress medical and scientific data and literature regarding the risks of exposure to asbestos and asbestos products, and the association of this exposure to the development of asbestosis, cancer, mesothelioma and other illnesses and diseases from the Plaintiff and others similarly situated, who were using, being exposed to, or coming into contact with Defendants' asbestos products and airborne fibers and dust emanating from and released by those products.

- 25 -

92.    The Defendants through agreement and consciously parallel behavior released, published and disseminated invalid, inaccurate, outdated and misleading medical and scientific data, literature and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases which Defendants knew were invalid, inaccurate, outdated and misleading.

93.    Defendants distorted the results of medical examinations conducted upon Plaintiff and/or workers similarly situated who were using asbestos products and being exposed to the inhalation of asbestos fibers and dust by falsely stating and/or concealing the nature and extent of the harm to which Plaintiff and workers such as Plaintiff had suffered.

94.    The Defendants while cognizant of this data deliberately chose to ignore the health and safety issues raised therein, and embarked upon a plan of deception intended to deprive the public at large of alarming medical and scientific findings which remained in their exclusive possession and under their exclusive control.

95.    Defendants conspired and/or acted in concert with each other and with other members of the asbestos industry through agreement and consciously parallel behavior:

       i)    to withhold from users of their products, and from persons who Defendants knew or should have known would be exposed to their products, information regarding the health risks of inhaling or ingesting asbestos fibers and dust;

      ii)    to eliminate or prevent investigation into the health hazards of exposure to asbestos fibers and dust;

     iii)    to assure that asbestos products became widely used in industries such as construction, shipbuilding, machine fabrication and similar

- 26 -

such industries, irrespective of the potential and actual risk of harm

to the user/consumer.

96.     Plaintiff reasonably and in good faith relied upon the false and fraudulent

representations, omissions and concealments made by the Defendants regarding the nature of

their asbestos products and was deprived of an opportunity to make an informed decision

concerning his/her use of, exposure to and contact with, Defendants' products.

97.     Plaintiff consequently in no respect can be blamed should he/she be unable to

establish which of the asbestos products caused his/her injuries.

98.     Defendants, whether acting individually or in concert with others, violated their

common law duty of care owed to the Plaintiff or otherwise engaged in culpable activity against

the Plaintiff.

99.     The actions and inactions of Defendants independently and/or collectively

constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage

and injury to the Plaintiff.

100.    By reason of the above, Defendants are jointly and severally liable to the

Plaintiff(s) for the injuries and damages sustained by virtue of industry-wide or enterprise

liability.

101.    Alternatively, Defendants are liable to the Plaintiff(s) for the injuries and damages

sustained by virtue of their substantial share of the asbestos products market within the area in

which Plaintiff was employed.

102.    As a direct and  proximate result of his/her wrongful exposure to asbestos at the

hands of Defendants, Plaintiff contracted an asbestos-related illness with sequela and was caused

to suffer severe physical pain, mental anguish, pecuniary losses and loss of enjoyment of life.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## AGAINST DEFENDANT CONTRACTORS

103.    Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

104.    The term "contractor(s)" refers to any business entity, concern, individual or other engaged, employed or otherwise contracted to perform in whole or any part thereof construction work, renovation, excavation, demolition, installation of equipment and/or such other activities commensurate with the term "contractor" as used in the ordinary course of business.

105.    These Defendant contractor(s) individually and by and/or through their subcontractors, agents, servants, assigns and employees developed, authored, devised and/or implemented specifications and plans relating to the construction, renovation, excavation, and/or demolition of buildings and other structures at which the Plaintiff was present and which Defendant contractor(s) knew, or should have reasonably ascertained in the exercise of due care, involved the use, application, installation, and/or removal of asbestos, asbestos-containing materials and/or equipment calling for the use and/or installation of asbestos-containing materials.

106. .   These Defendant contractor(s),  knew, or in the exercise of reasonable diligence should have known, that the above specifications and/or plans were dangerous and/or unsafe and presented a potential and/or actual health hazard to those individuals present at such sites where construction, renovation, excavation and/or demolition as above described was being carried out, including this Plaintiff.

107. ·  These Defendant contractor(s) hired, employed, contracted with or otherwise engaged subcontractors and others to carry out the work required by and in accordance with the above-described specifications and plans.

- 28 -

108.   These Defendant contractor(s) supervised, oversaw and directed the activities, conduct and work of the both their own employees as well as the employees, agents and assigns of its subcontractors in  the performance and carrying out of the above described specifications and plans at various locations including the Plaintiffs' work site(s).

109.   Additionally, Defendant contractor(s) purchased and/or delivered and/or caused to be delivered to Plaintiff's work site(s), and other locations and subsequently inventoried and/or warehoused at Plaintiff's work site(s) various asbestos-containing materials and/or machinery and equipment calling for the use of and/or installation of asbestos-containing materials.

110.   Defendant contractor(s) exercised control over the work sites at which their employees, subcontractors, agents and assigns were engaged in carrying out the specifications and plans of construction, renovation, excavation and/or demolition as described above, retained unlimited access to these work sites and directed all related construction, remodeling, excavating and demolition activities concerned therewith.

111.   Plaintiff was exposed to asbestos-containing products at various work sites and other locations within the State of New York where construction, renovation, excavation and demolition of buildings and/or other structures was being performed, while Plaintiff was engaged in his/her occupational duties and responsibilities or while Plaintiff was otherwise lawfully upon at such work sites and locations.

112.   Plaintiff sustained asbestos-related personal injuries as a consequence of his/her exposure to asbestos, asbestos-containing products and machinery at such locations described above.

113.   Plaintiff's injuries resulted from Defendant contractor(s)' breach of common law and statutory obligations including, inter alia, violations of The New York State Labor Law

Sections 200, 240 and 241 as a consequence of Plaintiff's exposure to and inhalation of dust from asbestos and asbestos-containing products delivered to, installed, used or employed at those work sites owned, operated, directed and controlled by the Defendant contractor(s).

114.   The above-described exposures were caused solely and wholly by the acts and /or omissions of the Defendant contractor(s), their agents, servants, employees and assigns as a consequence of their negligent, careless and reckless ownership, management, direction and control of the various premises and work sites where construction, renovation, demolition and excavation activities, as above described, occurred.

115.   Defendant contractor(s) were negligent, careless and reckless in inter alia: (1) permitting Plaintiff to work under dangerous and unsafe conditions; (2) requiring the Plaintiff to work in areas in which he/she was exposed to asbestos products; (3) in permitting and allowing the dangerous conditions to remain in working areas and other locations; (4) in failing to warn the Plaintiff and other members of the work force of the dangerous conditions; (5) in failing to provide a safe place to work; (5) in failing to follow or implement the usual workplace safety customs and procedures; (6) in failing to abide by, inter alia, Sections 200, 240 and 241 of the Labor Law; and (7) in otherwise acting without due regard for, and in reckless disregard of, the safety, well being and health of the Plaintiff and the work force in general.

116.   Defendant contractor(s) are strictly liable for the injuries sustained by the Plaintiff.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## FOR PREMISES LIABILITY AGAINST CERTAIN DEFENDANTS

117.   Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

118.   Plaintiff, was exposed to asbestos-containing products, materials and machines and equipment calling for the use of and/or installation of asbestos-containing products while working at certain facilities owned by certain named Defendants (hereinafter "Premises Owners").

119.   Each Premises Owner, at all times relevant to this Complaint, has been either the operator and/or the manager and/or the owner and occupier of various facilities within the State of New York as more fully specified in individual pleadings.

120.   Plaintiff was exposed to asbestos and asbestos-containing materials while he/she was an invitee at such Defendant Premises Owners' New York State facility or facilities during all relevant time periods. Said facilities were defective in that the asbestos and asbestos-containing materials in Defendants' facilities created an unreasonable risk of harm to the Plaintiff and other persons thereupon. The defective conditions of the facilities were a proximate cause of the Plaintiff's asbestos-related injuries and damages.

121.   Said Premises Owners are liable to Plaintiff for their respective failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with exposure to asbestos.

122.   Defendants Premises Owners as the premises operators and/or managers and/or owners and occupiers and/or custodians of their respective premises, had a non-delegable duty to keep the premises safe for invitees and others such as the Plaintiff herein.

- 31 -

123.   Said Defendant Premises Owners knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm.

124.   Defendant Premises Owners' failure to protect Plaintiff from known and/or foreseeable dangers constitutes negligence which such negligence is/was a proximate cause of Plaintiff's asbestos-related injuries and damages.

125.   By reason of the foregoing Plaintiff has sustained grievous personal and physical injuries, physical and emotional pain and suffering, all as more fully described herein and has been damaged as against each Defendant.

126.   Plaintiff was employed by or served as a seaman and member of a crew on numerous occasions upon various vessels owned, operated, controlled, navigated or chartered by Shipping Defendants.

127.   During all of the times herein mentioned, Shipping Defendants employed Plaintiff or owned, managed, operated, chartered, navigated or controlled said vessels used said vessels in the transportation of freight or passengers upon navigable waters of the United States in interstate and foreign commerce.

128.   Plaintiff would show that for a period of many years, and on numerous occasions, Plaintiff worked with or was exposed to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos or asbestos-containing products while working in or on various vessels. Plaintiff would show that Plaintiff was exposed on numerous occasions during the course and scope of his employment to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos or asbestos-containing products while employed by or working on vessels owned, managed, operated, chartered, navigated or

controlled by Shipping Defendants and, in doing so, had inhaled great quantities of asbestos fibers from various asbestos products that were used, stored, manipulated, installed or removed aboard said vessels or appurtenances thereto.  Further, Plaintiff alleges, as more specifically set out below, that Plaintiff's injuries were proximately caused by his exposure to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos or asbestos-containing products

129.    Each Manufacturer Defendant corporation or its predecessor-in-interest, is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos or asbestos-containing products, or machinery requiring or calling for the use of asbestos or asbestos-containing products.

130.    Plaintiff would show that or a period of many years, they worked with and/or were exposed to asbestos-containing products and or machinery requiring or calling for the use of asbestos or asbestos-containing products while working in various shipyards, steel mills, refineries, paper mills, chemical plants and/or other facilities in the United States.  Plaintiff will show that they have been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos or asbestos-containing products and/or sold by Manufacturer Defendants and, in so doing, have inhaled great quantities of asbestos fibers.  Further Plaintiff alleges, as more specifically set out below, that they have suffered injuries proximately caused by their exposure to asbestos-containing products designed, manufactured and sold by Manufacturer Defendants.

131.    Plaintiff alleges that Plaintiff was exposed to asbestos, asbestos-containing products, or machinery requiring or calling for the use of asbestos or asbestos-containing products in his occupation. In that each exposure to such products caused or contributed to

- 33 -

Plaintiff's injuries, Plaintiff invokes the doctrine of joint and several liability and states that it should be applied to each Defendant herein.

132.    This cause of action is governed by Substantive Law of Admiralty and is, therefore, nonremovable.

WHEREFORE, Plaintiff prays for relief against defendants, together with interest, costs and disbursements in this action.

Dated: New York, New York
          February 15, 2011

Yours etc.,

BELLUCK & FOX, LLP
*Attorneys for Plaintiff*
546 Fifth Avenue, 4th Floor
New York, New York 10036
(212) 681-1575

By:_____
    Joseph W. Belluck, Esq.

STATE OF NEW YORK      )
                                           ss.:
COUNTY OF NEW YORK  )

The undersigned, an attorney admitted to practice in the Courts of New York State,

shows:

Deponent is a member of the firm BELLUCK & FOX LLP, counsel for the plaintiffs in

the within action; deponent has read the foregoing Summons and Verified Complaint and knows

the contents thereof; the same is true to deponent's own knowledge, except as to the matters

therein stated to be alleged on information and belief, and that as to those matters deponent

believes same to be true.  This verification is made by deponent and not by plaintiffs because

plaintiffs reside outside of the County of New York where the deponent maintains his office.

Dated: New York, New York
           February 15, 2011

_____
Joseph W. Belluck, Esq.

- 35 -

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LUIS ENRIQUE LUCIANO, SR.,

                                        Plaintiff,

v.

ALCOA INC., Individually and as successor in
interest to Tilo Roofing Co., et al.

                                        Defendants.

See Attached Rider - FULL CAPTION

Index No. : 190060/2011

Date Filed: February 18, 2011

Plaintiff designates
**NEW YORK**
County as the place of trial

The basis of the venue is
**DEFENDANTS' PLACE OF
BUSINESS**

**FIRST AMENDED SUMMONS**

**TO THE ABOVE NAMED DEFENDANTS:**

        **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve
a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice
of Appearance, on the Plaintiff's Attorney within 20 days after the service of this Summons,
exclusive of the day of service (or within 30 days after the service is complete if this Summons is
not personally delivered to you within the State of New York). In the case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: New York, New York
        June 3, 2011

Yours etc.,

**BELLUCK & FOX, LLP**
*Attorneys for Plaintiff*
546 Fifth Avenue, 4th Floor
New York, New York 10036
(212) 681-1575

By: _____
        Jordan C. Fox, Esq.

NEW YORK
COUNTY CLERK'S OFFICE

JUN 06 2011

NOT COMPARED
WITH COPY FILE

Defendants' addresses:

**SEE ATTACHED DEFENDANT SERVICE LIST**

JUN 21 2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
_____

LUIS ENRIQUE LUCIANO, SR.,                    Index No. : 190060/2011

                                Plaintiff,    **FULL CAPTION RIDER**

- against -

ALCOA INC., Individually and as successor in interest
    to Tilo Roofing Co.;
AIR & LIQUID SYSTEMS CORPORATION, as
    Successor by Merger to Buffalo Pumps, Inc.;
BURNHAM CORPORATION;
CBS CORPORATION f/k/a Viacom Inc as Successor
    in Interest to Westinghouse Electric Corp.;
CERTAIN-TEED CORPORATION;
CYTEC ENGINEERED MATERIALS, INC. f/k/a
    Fiberite Corporation and a/k/a ICI Composites,
    Inc.;
CYTEC INDUSTRIES INC., Individually and as
    successor to American Cyanamid Company;
**DETECTO INDUSTRIAL SCALES OF NEW
    YORK, INC.;**
HOLLINGSWORTH & VOSE COMPANY;
HOMASOTE COMPANY, INC.;
KENTILE FLOORS, INC. a/k/a Kentile Operating
    Company;
LOEWS CORPORATION;
LORILLARD TOBACCO COMPANY; Individually
    and as Successor to P. Lorillard Company and
    as Successor to Lorillard, Inc.;
METROPOLITAN LIFE INSURANCE COMPANY;
OCCIDENTAL CHEMICAL CORPORATION,
    Individually and as Successor to Durez;
OWENS ILLINOIS, INC.;
PLASTICS ENGINEERING COMPANY, Individually
    and as Successor to Plenco;
RAPID-AMERICAN CORPORATION,  as successor-
    by-merger to Glen Alden Corporation, Briggs
    Manufacturing Co., Philip Carey Corporation
    and Philip Carey Manufacturing Company;
REICHHOLD CHEMICALS, INC. a/k/a Reichhold,
    Inc.;
ROGERS CORPORATION;

- 2 -

TYCO FLOW CONTROL, INC., Individually and as
    Successor to Keystone, Yarway Corporation
    and Grinnell Corporation;
TYCO INTERNATIONAL (US) INC., Individually
    and as Successor to Hancock Valves, Keystone,
    Lonergan Valves and Yarway Corporation and
    Grinnell Corporation;
UNION CARBIDE CORPORATION;
YARWAY CORPORATION.

                         Defendants.

- 3 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LUIS ENRIQUE LUCIANO, SR.,

                                         Plaintiff,

- against -

ALCOA INC., Individually and as successor in interest
    to Tilo Roofing Co.;
AIR & LIQUID SYSTEMS CORPORATION, as
    Successor by Merger to Buffalo Pumps, Inc.;
BURNHAM CORPORATION;
CBS CORPORATION f/k/a Viacom Inc as Successor
    in Interest to Westinghouse Electric Corp.;
CERTAIN-TEED CORPORATION;
CYTEC ENGINEERED MATERIALS, INC. f/k/a
    Fiberite Corporation and a/k/a ICI Composites,
    Inc.;
CYTEC INDUSTRIES INC., Individually and as
    successor to American Cyanamid Company;
DETECTO INDUSTRIAL SCALES OF NEW
    YORK, INC.;
HOLLINGSWORTH & VOSE COMPANY;
HOMASOTE COMPANY, INC.;
KENTILE FLOORS, INC. a/k/a Kentile Operating
    Company;
LOEWS CORPORATION;
LORILLARD TOBACCO COMPANY, Individually
    and as Successor to P. Lorillard Company and
    as Successor to Lorillard, Inc.;
METROPOLITAN LIFE INSURANCE COMPANY;
OCCIDENTAL CHEMICAL CORPORATION,
    Individually and as Successor to Durez;
OWENS ILLINOIS, INC.;
PLASTICS ENGINEERING COMPANY, Individually
    and as Successor to Plenco;
RAPID-AMERICAN CORPORATION, as successor-
    by-merger to Glen Alden Corporation, Briggs
    Manufacturing Co., Philip Carey Corporation
    and Philip Carey Manufacturing Company;
REICHHOLD CHEMICALS, INC. a/k/a Reichhold,
    Inc.;
ROGERS CORPORATION;

Index No: : 190060/2011

**FIRST AMENDED**
**VERIFIED COMPLAINT**

- 4 -

TYCO FLOW CONTROL, INC., Individually and as
    Successor to Keystone, Yarway Corporation
    and Grinnell Corporation;
TYCO INTERNATIONAL (US) INC., Individually
    and as Successor to Hancock Valves, Keystone,
    Lonergan Valves and Yarway Corporation and
    Grinnell Corporation;
UNION CARBIDE CORPORATION;
YARWAY CORPORATION.

Defendants.

Plaintiff, by his attorneys, BELLUCK & FOX LLP., for his First Amended Summons and Verified Complaint respectfully allege:

Plaintiff repeats and alleges Initial Complaint dated February 15, 2011 as if fully incorporated herein.

Plaintiff supplements his Complaint to add **DETECTO INDUSTRIAL SCALES OF NEW YORK, INC.** as an additional defendant in this action.

THE PARTIES

1.      Plaintiff is a resident of the State of Pennsylvania unless otherwise specified in individual complaints.

2.      Plaintiff alleges that plaintiff Luis Enrique Luciano, Sr. has been diagnosed with Mesothelioma.

3.      The term "Defendants" shall apply to all corporate and business entities, and/or their predecessors and/or successors in interest as more fully described and enumerated in the captions of individual complaints subsequently filed in the "short form" in accordance with the applicable case management order of this Court.

4.      The Defendants have done business in this State, have conducted or transacted business in this State, have committed one or more tortious acts within this state, or have

- 5 -

otherwise performed acts within and/or without this State giving rise to injuries and losses within this State, which acts subject each Defendant to the jurisdiction of the Courts of this State.

5.    Defendant **DETECTO INDUSTRIAL SCALES OF NEW YORK, INC.** was and is a duly organized foreign corporation doing business and/or transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York. At all times relevant, it has engaged in the sale and distribution of materials and products containing the substance asbestos.

**WHEREFORE,** Plaintiff prays for relief against defendants, together with interest, costs and disbursements in this action.

Dated: New York, New York
            June 3, 2011

Yours etc.,

**BELLUCK & FOX, LLP**
*Attorneys for Plaintiff*
546 Fifth Avenue, 4th Floor
New York, New York 10036
(212) 681-1575

By: _____
        Jordan G. Fox, Esq.

- 6 -

STATE OF NEW YORK        )
                                          ss.:
COUNTY OF NEW YORK  )

The undersigned, an attorney admitted to practice in the Courts of New York State, shows:

Deponent is a member of the firm BELLUCK & FOX LLP, counsel for the plaintiffs in the within action; deponent has read the foregoing First Amended Summons and Verified Complaint and knows the contents thereof; the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes same to be true.  This verification is made by deponent and not by plaintiffs because plaintiffs reside outside of the County of New York where the deponent maintains his office.

Dated: New York, New York
          June 3, 2011

_____
Jordan C. Fox, Esq.

- 7 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
_____

LUIS ENRIQUE LUCIANO, SR.,                       Index No. : 190060/2011

                                    Plaintiffs,      **CERTIFICATION**

- against -

ALCOA INC., Individually and as successor in
    interest to Tile Roofing Co., et al.

                                    Defendants.
_____

      Jordan C. Fox, Esq., an attorney duly admitted to practice before the Courts of the State

of New York, hereby certifies in accordance with 22 NYCRR Part 130-1.1-a of the Rules of the

Chief Administrator that to the best of my knowledge, information and belief, which was formed

after a reasonable inquiry under the circumstances, the presentation of the foregoing First

Amended Summons and Verified Complaint and its contents are not frivolous, as the term is

defined in Part 130.

Dated: New York, New York          Yours etc.,
      June 3, 2011

                                    **BELLUCK & FOX, LLP**
                                    *Attorneys for Plaintiff*
                                    546 Fifth Avenue, 4th Floor
                                    New York, New York 10036
                                    (212) 681-1575

                                    By: _____
                                        Jordan C. Fox, Esq.

- 8 -

# EXHIBIT C

Page 1

1

2    SUPREME COURT:   ALL COUNTIES

3    WITHIN THE STATE OF NEW YORK

4

5    IN RE:   NEW YORK STATE

6              ASBESTOS LITIGATION

7

8                    DEPOSITION UNDER

9                    ORAL EXAMINATION

10                        OF

11              LUIS E. LUCIANO, SR.

12

13

14   This Document Applies To:

15   LUIS E. LUCIANO, SR.

16

17

18

19

20

21

22

23

24

25

Page 2

1

2

3

4          Transcript of the deposition of the witness,

5   called for Oral Examination in the above-captioned

6   matter, said deposition being taken pursuant to Federal

7   Rules of Civil Procedure by and before ELEANOR SEKULIC,

8   a Notary Public and Shorthand Reporter, at MOUNT AIRY

9   RESORT, 44 Woodland Road, Mount Pocono, Pennsylvania, on

10  Friday, June 10, 2011, commencing at 10:27 a.m.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 72

Luis E. Luciano, Sr. - Direct

1      and come back and talk about your work history, okay?

3                MR. RYAN:   Let's take a five-minute break.

4                (Whereupon, there is a recess in the

5      proceedings from 12:19 p.m. to 12:32 p.m.)

6      Q.   Mr. Luciano, we're going to continue with your

7      deposition after a short break.  And I'd like to talk to

8      you about the places you worked during the course of

9      your lifetime, okay?

10     A.   Yes, sir.

11     Q.   From 1926 up until you joined the Army in Puerto

12     Rico, did you ever have any employment while you were

13     living in Puerto Rico?

14     A.   No, sir.

15     Q.   What month in 1955 did you arrive in New York?

16     A.   I don't recall, sir.

17     Q.   Did you spend any time living in Puerto Rico

18     after you were discharged from the Army before you came

19     to New York?

20     A.   Like a month.

21     Q.   Okay.  When you arrived in New York in 1955, did

22     you obtain work?

23     A.   I arrived in New York Saturday, and, Monday, I

24     was working already.

25     Q.   Where did you go to work when you first got here?

Page 73

1                    Luis E. Luciano, Sr. - Direct

2      A.   Do-All Assemblers.

3      Q.   Did you work anywhere before you went to work

4   with Do-All Assemblers?

5      A.   No, sir.

6      Q.   What is Do-All Assemblers?

7      A.   I was coating elastic.

8              MS. SPARDONE:   Objection to the

9          non-responsive portion.

10     Q.   What type of factory or what type of businesses

11   is Do-All Assemblers?

12     A.   Do-All Assemblers used to make parts to the

13   Detecto Scale.  They made the parts, you know, Detecto

14   Scale.  My boss, we make the part, you know, and we send

15   it to them.  Nobody is allowed to go to that place.

16     Q.   When you first got there, was Do-All Assemblers

17   in one building or more than one building?

18     A.   One building.

19     Q.   Do you recall where that building was located in

20   Brooklyn?

21     A.   That building is located close to the Seagate.  I

22   believe the road is West 37, West 37th to Seagate.  I

23   don't know if the building is still down there, because

24   it's too many years.

25     Q.   And you worked at Do-All Assemblers up until you

Case 1:11-cv-04566-RJS   Document 1-3   Filed 07/05/11   Page 6 of 13

Page 74

                    Luis E. Luciano, Sr. - Direct

1

2    retired in 1988?

3        A.  That's right.  Almost 35 years.

4        Q.  Those 35 years, were you working the whole time

5    at that same building?

6        A.  No, sir.  Because from, from the original

7    building, we move to Ditmas Avenue.  It's in Brooklyn

8    too.

9              MR. SAMPAR:  Can I get a read back, please?

10             (Whereupon, requested testimony is read back

11   by the Court Reporter.)

12       Q.  That's D-I-T-M-A-S?

13       A.  That's it, D-I-T-M-A-S, Ditmas Avenue.

14       Q.  Do you recall what year it was that you moved

15   from the original building to the building at Ditmas?

16       A.  I don't recall.  I don't remember.

17       Q.  Do you recall how many years you worked at the

18   original building before you moved?

19       A.  Oh my God.  I believe more than, more than 25

20   years, I believe.  I don't recall.  I don't remember.

21   It's too many years.

22       Q.  Did you spend most of your career with Do-All

23   Assemblers working at the original building?

24       A.  Yes, sir.

25       Q.  Okay.  Let's talk about the original building

Page 78

1            Luis E. Luciano, Sr. - Direct

2   Assemblers got the material from?

3       A.   No, sir.  I don't have idea.  I don't recall.

4       Q.   During the 35 years that you worked for them, did

5   you ever have responsibility for ordering the materials?

6       A.   I don't order material.

7       Q.   This roll plastic material that came, did it have

8   any sort of name?

9       A.   I don't recall, sir.  I never check it myself.

10  That's a good question.  No, I don't remember.

11      Q.   Other than the material that came on a roll, did

12  you ever have to cut any other type of plastics?

13      A.   No.  Everything was plastic, because that was

14  plastic, that's all.

15            MS. SPARDONE:  Object to the non-responsive

16        portion.

17      Q.   I'm going to ask again, just because I don't know

18  if you understood.  Other than the plastic material that

19  came on the roll?

20      A.   Uh-huh.

21      Q.   Did you ever have to work with any other type of

22  plastic material?

23      A.   No.  No, sir.  Everything the same material.

24      Q.   With respect to the work that you did cutting

25  this plastic material, do you believe that work would

Page 79

Luis E. Luciano, Sr. - Direct

1

2   have caused you to be exposed to asbestos?

3       A.   Possible.

4       Q.   How do you believe --

5              MS. SPARDONE:   Objection.   No foundation.

6       Q.   How do you believe it's possible?

7       A.   Because they used to Homasote sote down there.

8   It's in one corner.   They the machine where they cut all

9   the Homasote sote, and dust all over.   It's a factory.

10  A factory always dust.

11             MS. SPARDONE:   Could I get the answer read

12         back, please?

13             (Whereupon, requested testimony is read back

14  by the Court Reporter.)

15      Q.   Are you okay, sir?

16      A.   I was checking something.   Go ahead.

17      Q.   No problem.   I think you might have misunderstood

18  my question.

19      A.   All right, sir.

20      Q.   I'm going to talk to you in a minute about the

21  work that the other people in the factory were doing.

22      A.   Uh-huh.

23      Q.   I just want to know about the work that you were

24  doing right now, okay?

25      A.   At the beginning, I told you that I was in charge

Page 94

1            Luis E. Luciano, Sr. - Direct
2  them.
3      Q.  Just so I understand you correctly.  Some of the
4  people who worked on the machine wore masks, but they
5  didn't get it from the company?  They brought their own?
6      A.  No.  People, sometimes they complain they have
7  asthma or something like that, they wear something.  But
8  not because the boss give it to them.
9      Q.  You retired from Do-All Assemblers in 1988?
10     A.  Yes, sir.
11     Q.  Do you recall what month that was?
12     A.  I don't recall.
13     Q.  After you retired in 1988 from Do-All Assemblers,
14  did you ever hold any other job again?
15     A.  I never, I never had another job.  When I
16  retired, that was the end.  I hate all kind of jobs.
17     Q.  And why did you retire in 1988?
18     A.  Because I was 62.  So I can enjoy my life working
19  so hard.
20     Q.  With respect to your work history, have you now
21  told me all of the ways that you believe you may have
22  been exposed to asbestos while you were working for
23  Do-All Assemblers?
24     A.  I guess so.  Because, because when they cut the
25  material, you have dust all over, you know?  And nobody

Page 95

1              Luis E. Luciano, Sr. – Direct

2    was wearing masks.  So everybody was breathing that

3    dust.

4              MS. SPARDONE:  Object to the non-responsive

5         portion.

6    Q.  And have you also told me all of the names of

7    products that you remember that you believe may have

8    caused you to be exposed to asbestos?

9    A.  Yes, sir.

10   Q.  During the course of your lifetime, sir, have you

11   ever done any work on automobiles?

12   A.  Never.  No, sir.

13   Q.  During the time that you worked at Do-All

14   Assemblers, were you ever a member of a union?

15   A.  They have a union, but I don't remember the, the

16   union name.  They have union, but I don't remember.  I

17   know we have to pay every month.  But we never pay

18   attention to that.  A big mistake.

19   Q.  Was the union a company union or a larger

20   International union?

21   A.  It's a big company, it's a big union in New York

22   City.

23   Q.  Did you ever attend union meetings?

24   A.  I never went down there.

25   Q.  Did you ever receive any newsletters or papers

Page 182

1           Luis E. Luciano, Sr. - Cross

2     Q.   Why did you decide to smoke that first cigarette?

3     A.   Because I want to try it.

4     Q.   Why did you want to try it?

5     A.   To find out what was the reaction.

6     Q.   What was your reaction to that first cigarette?

7     A.   In those days, for me, it was good.  And then in

8   1953, 1954 I switch to Kent.

9     Q.   We'll get back to that.  Staying with that first

10  cigarette.

11    A.   I used to smoke, the first one my friend give it

12  to me.  It was like a Lucky Strike.

13    Q.   Is that Lucky Strike unfiltered?

14    A.   Yeah, unfiltered.  They don't have no filter.

15    Q.   And you said that first cigarette, you liked it.

16  What did you like about it?

17    A.   I don't know.  See, when you do something good

18  from the beginning, you like it.  Then, after that, I

19  don't like the taste because it was too strong, hard.

20  And then that's when I started smoking Kent.

21    Q.   What did you like about that first cigarette?

22    A.   It was good.  But then...

23    Q.   When you say "good," do you mean the taste?

24    A.   Yeah, you like the taste.  Because it was the

25  first time I started smoking, you know, the first time.

Page 185

1                    Luis E. Luciano, Sr. - Cross

2    convenience store.

3        Q.   Did you buy them from a person?

4        A.   Right, from inside.

5        Q.   Was it out of a vending machine?

6        A.   No.  I never used, never the vending machine.  I

7    used to talk to the guy and the guy would sell it to me.

8        Q.   How long did you smoke Kent cigarettes?

9        A.   I started in 1954 and I went until I retired in

10   the eighties.  Only one brand.  That was my cigarette.

11   I loved Kent.

12       Q.   So from the time you got home from the Army ---

13       A.   Yeah.

14       Q.   --- until you quit smoking --

15       A.   Until I retired, I quit smoking in the eighties.

16       Q.   --- in 1980?

17       A.   '80.

18       Q.   Let me finish my question.  So from the time that

19   you were living in New York after you had gotten out of

20   the military until you quit smoking in 1980, you smoked

21   only Kent cigarettes?

22       A.   Kent cigarettes.  Because it was good.

23       Q.   What do you mean "It was good"?

24       A.   Good because the taste.  It was with the filter,

25   you know, micronite filter, you know?  Everybody liked

Page 246

1                          C E R T I F I C A T E

2

3

4    STATE OF NEW YORK      )

5    COUNTY OF NEW YORK     )

6

7         I, ELEANOR SEKULIC, a Notary Public of the State

8    of New York, do hereby certify that the foregoing

9    deposition of LUIS E. LUCIANO, SR., was taken before me

10   on June 10, 2011.

11        The said witness was duly sworn before the

12   commencement of his testimony, the said

13   testimony was taken stenographically by myself and then

14   transcribed. The within transcript is a true record of

15   the said deposition.

16        I am not connected by blood or marriage with any

17   of the said parties, nor interested directly or

18   indirectly in the matter in controversy, nor am I in the

19   employ of any of the Counsel.

20

21                        Dated:_____

22

23                        _____

24                        ELEANOR SEKULIC

25

# EXHIBIT D

BELLUCK & FOX          Fax:212+681+1574          Jun 6 2011 01:33pm P004/033

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x
LUIS ENRIQUE LUCIANO, SR.,                          Index No. 190060/2011

                              Plaintiff,

                                                    PLAINTIFF'S RESPONSE TO
            -against-                               DEFENDANTS' FOURTH
                                                    AMENDED INTERROGATORIES
                                                    AND REQUEST FOR
                                                    PRODUCTION OF DOCUMENTS

ALCOA INC., et al.,


                              Defendants.
-------------------------------------------------------------x

    Plaintiff, in response to the Fourth Amended Standard Set of Interrogatories and

Request for Production of Documents propounded by the defendants, pursuant to C.P.L.R.

ARTICLE 31 and the Order of the Honorable Helen Freedman, alleges, upon information and

belief as follows:

1

BELLUCK & FOX        Fax:212+681+1574        Jun  6 2011 01:33pm  P005/033

## INTERROGATORIES

1.    State the following:
(a) your full name, and all other names by which you have been known;
(b) age, and date and place of birth;
(c) whether you were an adopted child;
(d) present marital status, date of current marriage, spouse's maiden name, dates of any
       prior marriages and the names of any prior spouses, if applicable;
(e) present home address; and
(f) social security number.

ANSWER:
    (a)    Name: Luis E. Luciano, Sr.
    (b)    Age:   84 years old.
           Date of birth:  August 10, 1926.
           Place of birth:  Puerto Rico.
    (c)    Adopted/natural child:  Natural child.
    (d)    Present marital status:  Widower, Margarita E. Castinovietia, 1952.
    (e)    Present home address:  704 Graham Lane, Tobyhanna, PA 18466.
    (f)    Social Security Number:  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.

2.    State the following with regard to your father and mother:
(a) names;
(b) current address (if deceased, state last known address);
(c) the current condition of each one's health, including any specific medical problems.
     If either of your parents are deceased, please state for each deceased parent:
     i. specific physical problems;
     ii. date and place of death;
     iii. age and cause of death for each parent.

ANSWER:
    Mother:
        (a) Name:  Juanita Morales-Luciano.
        (b) Current address:  Deceased; Puerto Rico.
        (c) Current health condition/specific physical problems: Deceased.
                (i)      Specific physical problems: None.
                (ii)     Date of Death: 1986.; Place of Death: Puerto Rico.
                (iii)    Age at Death: Unknown.
                      Cause of Death: Natural causes.

    Father:
        (a) Name:  Juan Martin Luciano.
        (b) Current address:  Deceased; Puerto Rico.
        (c) Current health condition/specific physical problems: Deceased.
                (i)      Specific physical problems: None.
                (ii)     Date of Death: Unknown; Place of Death: Puerto Rico.

2

BELLUCK & FOX        Fax:212+681+1574        Jun  6 2011 01:34pm  P007/033

iv.     (a) Full name:  Louise Peoples.
        (b) Date of birth:  12/14/58.
        (c) Sex:  Female.
        (d) Current address:  P.O. Box 637, Blakeslee, PA 18610.
        (e) Social Security Number:  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.
        (f) Adopted/Natural:  Natural.
        (g) Current state of one's health:  Louise is in good health.

v.      (a) Full name:  Luisa Margarita Luciano.
        (b) Date of birth:  Plaintiff cannot recall at this time.
        (c) Sex:  Female.
        (d) Current address:  Deceased.
        (e) Social Security Number:  None.
        (f) Adopted/Natural:  Natural.
        (g) Current state of one's health:  Deceased.
            i. specific physical problems: To be provided.
            ii. date and place of death: 4/15/57; Brooklyn, NY.
            iii. age and cause of death: To be provided; To ne provided.


4.  State the complete address of all places you have resided since birth giving the inclusive dates
    of residence for each place named and as to each state:
        (a) fuel used for heating and cooking;
        (b) significant home improvements (e.g., additions, reinsulation, re-wiring, etc.);
        (c) number of family units co-occupying said structure.

    ANSWER:     Plaintiff has lived in the following residences:

        i.    Address:     704 Graham Lane, Tobyhanna, PA 18466
              Dates:       Approximately 1992 to the present time.
                           (a) Fuel used for heating/cooking: Electric for both heating and
                           cooking.
                           (b) Significant home improvements: None.
                           (c) Number of family units: Single family home.

        ii.   Address:     15 Stone Avenue, Brooklyn, NY.
              Dates:       Approximately 1967-1992.
                           (a) Fuel used for heating/cooking: Oil for heating; Gas for cooking.
                           (b) Significant home improvements: None.
                           (c) Number of family units: Large apartment complex.

        iii.  Address:     411 Howard Avenue, Brooklyn, NY.
              Dates:       Approximately 1957 to 1967.
                           (a) Fuel used for heating/cooking: Coal/Oil for heating; Gas for
                           cooking.
                           (b) Significant home improvements: None.

4

BELLUCK & FOX          Fax:212+681+1574          Jun  6 2011 01:34pm  P008/033

          (c) Number of family units:  Apartment building - approximate 20 apartments.

iv.     Address:     429 Howard Avenue, Brooklyn, NY.
          Dates:       Approximately 1955 to 1957.
                (a) Fuel used for heating/cooking: Coal for heating; Gas for cooking.
                (b) Significant home improvements: None.
                (c) Number of family units:  Apartment building - approximately 20 apartments.

5.     For every physician or other health care provider whoever tested, treated, consulted with or examined you up to and including the present date, for any reason whatsoever, please state the following separately as to each:
(a) name and address of physician or health care provider and, if ongoing, the approximate frequency of said treatment and services; (b) date(s) of test, examination and/or treatment; (c) symptoms complained of at the time, if any;
(d) any diagnosis made;
(e) treatment or examination given and reason for treatment or examination; and (f) any drugs or medications prescribed.

<u>ANSWER:</u> At the present time, Plaintiff is aware of the following doctors and treatment rendered:

Physicians:

i.     (a) Name:     Dr. Ira Nierenberg, Primary Care; Gastroenterologist.
                 WILKES-BARRE VAMC
                 111 East End Boulevard, Wilkes-Barre, PA 18711
          Frequency of treatment: Approx. 2010 to present.
          (b) Date(s) of test, examination and/or treatment: Approx. 2010 to present.
          (c) Symptoms: See medical records.
          (d) Diagnosis:  See medical records.
          (e) Treatment of examination given/reason for treatment or examination: See medical records; Authorization has been provided to RecordTrak.
          (f) Medications prescribed: See medical records; Authorization has been provided to RecordTrak.

ii.     (a) Name:     Dr. Aamir Zaman, Oncologist
                 WILKES-BARRE VAMC
                 111 East End Boulevard, Wilkes-Barre, PA 18711
          Frequency of treatment:  2010 to present.
          (b) Date(s) of test, examination and/or treatment:  2010 to present.
          (c) Symptoms: See medical records.
          (d) Diagnosis:  Mesothelioma.

BELLUCK & FOX          Fax:212+681+1574          Jun  6 2011 01:35pm  P010/033

7.    State each of your asbestos-related injuries and/or diseases, describe the nature of those symptoms that you contend are related to your asbestos-related condition(s), and state the date when you first experienced each such symptom and the date of diagnosis and the name of any diagnosing physician and, if different, indicate the date you first became aware of the diagnosis.

ANSWER:  Plaintiff has sustained a number of asbestos-related injuries, including:
- Mesothelioma;
- Chest pain;
- Respiratory pain;
- Shortness of breath upon exertion;
- Extreme fatigue and weakness;
- Emotional and psychological distress;
- Depression;
- Anxiety;
- Loss of interest and ability to partake in daily and recreational activities.

8.    Describe any pain, incapacity, inability to lead a normal life, inability to work, or disability (including retirement) alleged to have resulted from your medical conditions), including the date and basis therefor.

ANSWER:  Beginning in early 2010 Plaintiff began to experience a severe discomfort in his right lung and on his right side.  Since that time Plaintiff's symptoms include shortness of breath upon exertion, chest pain, respiratory pain, extreme fatigue and weakness, loss of interest and ability to partake in daily and recreational activities, depression, anxiety, and emotional and psychological distress.  He is limited in his ability to spend time with friends and family. He cannot walk or play with his dog, walk to get his mail or go shopping at the mall. Plaintiff was diagnosed with mesothelioma on September 13, 2010.

9.    Have you ever had any biopsies or tissue samples taken? If so, please state for each such procedure:
(a) the name of the physician performing such procedure;
(b) the address where such procedure was performed;
(c) the date when such procedure was performed; and
(d) the results, conclusions, and/or diagnosis arising from such procedure.

ANSWER:    Plaintiff had biopsies taken:

(a) Name of physician: Dr. Ira Nierenberg; Dr. Howard Robert Nash.
(b) Address where procedure was performed:
   Wilkes-Barre VAMC, 111 East End Boulevard, Wilkes-Barre, PA 18711.
(c) Date of procedure:  August 6, 2010.
(d) Results:  Mesothemioma diagnosed; See report attached hereto; See medical records; Authorization has been provided to RecordTrak.

7

Case MDL No. 875   Document 7485-3   Filed 07/07/11   Page 77 of 77

Case 1:11-cv-04566-RJS   Document 1-4   Filed 07/05/11   Page 7 of 7

BELLUCK & FOX          Fax:212+681+1574          Jun  6 2011 01:39pm  P023/033

22:     Any accident or incident reports which relate to the facts, circumstances or incidents
which form the basis of plaintiff's complaint.

ANSWER:   Plaintiff is not in possession of any accident or incident reports.


Dated:   New York, New York
         June 6, 2011


                                        Respectfully submitted,

                                        BELLUCK & FOX, LLP
                                        *Attorneys for Plaintiffs*
                                        546 Fifth Avenue, 4th floor
                                        New York, New York 10036
                                        (212) 681-1575

                                        By: _____
                                             Jordan C. Fox, Esq.