1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON✜PURCELL LLP
3  Attorneys at Law
   222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11 MARJORIE DODGE, as Wrongful Death     )  No.  CV 11  2775
   Heir, and as Successor-in-Interest to )
12 PAUL DODGE, Deceased, and as Legal    )
   Heir of PAUL DODGE, Deceased,         )
13                                        )  COMPLAINT FOR SURVIVAL,
              Plaintiff,                  )  WRONGFUL DEATH - ASBESTOS;
14                                        )  DEMAND FOR JURY TRIAL
   vs.                                    )
15                                        )
   GENERAL ELECTRIC COMPANY,             )
16                                        )
              Defendant.                  )
17                                        )

18                         I.

19                      PARTIES

20      1.      Plaintiff in this action is the above-captioned successor-in-interest to, or the

21 personal representative of the estate of Decedent; and the personal representatives on behalf of

22 the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

23 "Plaintiff."

24      2.      The person who sustained asbestos-related lung injuries and death as a result of

25 their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

26 hereinafter "Decedent" is, with the date of death:  PAUL DODGE died June 11, 2010.

27 MARJORIE DODGE is the spouse of PAUL DODGE and is hereinafter referred to as "surviving

28 spouse."

K:\Injured\110194\Fed\PLD\cmp fed (wd).wpd

                            1
   COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

BRAYTON✜PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

ORIGINAL
FILED

JUN 07 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DMR

E-filing

3.    Decedent sustained an asbestos-related lung disease and death by precisely the following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

4.    All of Plaintiff's claims arise out of a similar series of occurrences: repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendant and supplied to, installed and/or maintained by defendant at Decedent's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent, resulting in cumulative, progressive, incurable lung diseases.

5.    Each Plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on Decedent's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The allegations of Plaintiff regarding the nature of Decedent's asbestos-related diseases, the nature of asbestos, the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical.

6.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendant was and is corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendant, and each of them, was and is authorized to do and are doing business in the State of California, and that said defendant has regularly conducted business in the State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.    <u>Jurisdiction</u>: Plaintiff MARJORIE DODGE is a citizen of Canada.

Defendant is each corporation incorporated under the laws of and having its principal places of business in the following States:

K:\Injured\110194\Fed\PLD\cmp.fed.(wd).wpd

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | Connecticut and New York |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between a citizen of Canada and citizen(s) of the United States in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.   <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendant are subject to personal jurisdiction in this district at the time the action is commenced.

### III.

### CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF MARJORIE DODGE COMPLAINS OF DEFENDANT GENERAL ELECTRIC COMPANY, ITS "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.   At all times herein mentioned, each of the named defendant was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely

1  asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively be

2  called ALTERNATE ENTITIES.  Each of the herein named defendant is liable for the tortious

3  conduct of each successor, successor in business, successor in product line or a portion thereof,

4  assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

5  venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

6  entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

7  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

8  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

9  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

10  products containing asbestos.  The following defendant, is liable for the acts of each and every

11  ALTERNATE ENTITY, in that there has been a virtual destruction of Plaintiff's remedy against

12  each such ALTERNATE ENTITY; defendant, has acquired the assets, product line, or a portion

13  thereof, of each such ALTERNATE ENTITY; defendant, caused the destruction of Plaintiff's

14  remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume

15  the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant

16  enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

17  DEFENDANT                                    ALTERNATE ENTITY

18  GENERAL ELECTRIC COMPANY          MATTERN X-RAY
                                                                HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED
19                                                              TRUMBULL ELECTRIC MANUFACTURING COMPANY
                                                                G E INDUSTRIAL SYSTEMS
20                                                              CURTIS TURBINES
                                                                PARSONS TURBINES
21                                                              GENERAL ELECTRIC JET ENGINES

22        10.    At all times herein mentioned, defendant, its ALTERNATE ENTITIES, and each

23  of them, were and are engaged in the business of researching, manufacturing, fabricating,

24  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

25  supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

26  promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

27  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

28  ///

1  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

2  asbestos and other products containing asbestos.

3     11.  At all times herein mentioned, defendant, its ALTERNATE ENTITIES and each

4  of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated,

5  designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

6  the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

7  sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed,

8  represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded,

9  manufactured for others, packaged and advertised, a certain product, namely asbestos, and other

10  products containing asbestos, in that said products caused personal injuries to users, consumers,

11  workers, bystanders and others, including the Decedent herein, (hereinafter collectively called

12  "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby

13  rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

14     12.  Defendant, its ALTERNATE ENTITIES, and each of them, had a duty to exercise

15  due care in the pursuance of the activities mentioned above and defendant, breached said duty of

16  due care.

17     13.  Defendant, its ALTERNATE ENTITIES and each of them, knew, or should have

18  known, and intended that the aforementioned asbestos and products containing asbestos and

19  related products and equipment, would be transported by truck, rail, ship, and other common

20  carriers, that in the shipping process the products would break, crumble, or be otherwise

21  damaged; and/or that such products would be used for insulation, construction, plastering,

22  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

23  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

24  breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

25  release of airborne asbestos fibers, and that through such foreseeable use and/or handling

26  "exposed persons," including Decedent herein, would use or be in proximity to and exposed to

27  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

28  persons working in proximity to said products, directly or through reentrainment.

14.     Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

15.     As a direct and proximate result of the acts, omissions, and conduct of the defendant, its ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

16.     Plaintiff is informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17.     Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

18.     As a direct and proximate result of the aforesaid conduct of the defendant, its "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19.     As a direct and proximate result of the aforesaid conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20.     As a direct and proximate result of the aforesaid conduct of defendant, its ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21.     As a further direct and proximate result of the said conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

22.     As a further direct and proximate result of the said conduct of the defendant, its ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23.     Defendant, its ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24.     Defendant, its ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of its ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of its ALTERNATE ENTITIES as set forth herein.

25.     The herein-described conduct of said defendant, its ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive damages against said defendant.

1    WHEREFORE, Plaintiff prays judgment against defendant, its "alternate entities," and

2  each of them, as hereinafter set forth.

3                              SECOND CAUSE OF ACTION
                                (Products Liability - Survival)
4

5    PLAINTIFF MARJORIE DODGE AS SUCCESSOR-IN-INTEREST TO THE

6  DECEDENT PAUL DODGE COMPLAINS OF DEFENDANT GENERAL ELECTRIC

7  COMPANY, ITS "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A

8  SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

9  LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

10    26.    Plaintiff incorporates herein by reference, as though fully set forth herein, each

11  paragraph of the First Cause of Action herein.

12    27.    Defendant, its "alternate entities," and each of them, knew and intended that the

13  above-referenced asbestos and asbestos-containing products would be used by the purchaser or

14  user without inspection for defects therein or in any of their component parts and without

15  knowledge of the hazards involved in such use.

16    28.    Said asbestos and asbestos-containing products were defective and unsafe for their

17  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

18  and/or death.  The defect existed in the said products at the time they left the possession of

19  defendant, its ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

20  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

21  persons," including Decedent herein, while being used in a reasonably foreseeable manner,

22  thereby rendering the same defective, unsafe, and dangerous for use.

23    29.    "Exposed persons" did not know of the substantial danger of using said products.

24  Said dangers were not readily recognizable by "exposed persons."  Said defendant, its

25  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

26  which Decedent and others similarly situated were exposed.

27    30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

28  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

K:\Injured\110194\Fed\PLD\cmp fed (wd).wpd                    8
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1   sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

2   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

3   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

4   and asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them, did

5   so with conscious disregard for the safety of "exposed persons" who came in contact with said

6   asbestos and asbestos-containing products, in that said defendant, its ALTERNATE ENTITIES,

7   and each of them, had prior knowledge that there was a substantial risk of injury or death

8   resulting from exposure to asbestos or asbestos-containing products, including, but not limited to,

9   asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part, from

10  scientific studies performed by, at the request of, or with the assistance of, said defendant, its

11  ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

12  defendant, its ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

13         31.    On or before 1930, and thereafter, said defendant, its ALTERNATE ENTITIES

14  and each of them, were aware that members of the general public and other "exposed persons,"

15  who would come in contact with their asbestos and asbestos-containing products, had no

16  knowledge or information indicating that asbestos or asbestos-containing products could cause

17  injury, and said defendant, its ALTERNATE ENTITIES, and each of them, knew that members

18  of the general public and other "exposed persons," who came in contact with asbestos and

19  asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos

20  and asbestos-containing products was safe, when in fact said exposure was extremely hazardous

21  to health and human life.

22         32.    With said knowledge, said defendant, its ALTERNATE ENTITIES, and each of

23  them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease,

24  buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

25  warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-

26  containing products without attempting to protect "exposed persons" from, or warn "exposed

27  persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

28  containing products.  Rather than attempting to protect "exposed persons" from, or warn

1   "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

2   asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them,

3   intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

4   and suppressed said knowledge from "exposed persons" and members of the general public, thus

5   impliedly representing to "exposed persons" and members of the general public that asbestos and

6   asbestos-containing products were safe for all reasonably foreseeable uses.  Defendant, its

7   ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

8   representations with the knowledge of the falsity of said implied representations.

9       33.    The above-referenced conduct of said defendant, its ALTERNATE ENTITIES,

10   and each of them, was motivated by the financial interest of said defendant, its ALTERNATE

11   ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

12   manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

13   sale, inspection, installation, contracting for installation, repair, marketing, warranting,

14   rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

15   directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

16   products.  In pursuance of said financial motivation, said defendant, its ALTERNATE

17   ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

18   were consciously willing and intended to permit asbestos and asbestos-containing products to

19   cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

20   including Decedent.

21       34.    Plaintiff alleges that the aforementioned defendant, its ALTERNATE ENTITIES,

22   and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe

23   for their intended use, but that their asbestos and asbestos-containing products, created an

24   unreasonable risk of bodily harm to exposed persons.

25       35.    Plaintiff relied upon defendant, its ALTERNATE ENTITIES, and each of their

26   representations, lack of warnings, and implied warranties of fitness of asbestos and their

27   asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

28   suffered permanent injury and death as alleged herein.

36.     As a direct and proximate result of the actions and conduct outlined herein, Decedent have suffered the injuries and damages herein alleged.

WHEREFORE, Plaintiff prays judgment against defendant, its "alternate entities", and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

PLAINTIFF MARJORIE DODGE, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO PAUL DODGE DECEASED, AS LEGAL HEIR OF DECEDENT, COMPLAIN OF DEFENDANT GENERAL ELECTRIC COMPANY, ITS "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

37.     Plaintiff incorporates by reference each paragraph contained within the First Cause of Action as though fully set forth herein.

38.     The heir at law of the Decedent and her relationship to the Decedent is set forth above.

39.     The individual set forth as heir constitutes all of the surviving heirs of the Decedent.

40.     As a direct and proximate result of the conduct of the defendant, its ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiff was unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41.     At all times prior to his death, Decedent was a faithful and dutiful spouse to the surviving spouse.

42.     As a direct and proximate result of the conduct of defendant, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

43.   As a further direct and proximate result of the conduct of defendant, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, Plaintiff prays judgment against defendant, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF MARJORIE DODGE, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO PAUL DODGE DECEASED, AS LEGAL HEIR OF DECEDENT, COMPLAIN OF DEFENDANT GENERAL ELECTRIC COMPANY, ITS "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

44.   Plaintiff incorporates herein by reference, as though fully set forth herein, each paragraph of the First, Second and Third Causes of Action herein.

45.   As a direct and proximate result of the conduct of defendant, Decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, Plaintiff prays judgment against defendant, its "alternate entities," and each of them, as hereinafter set forth.

### IV.

### DAMAGES AND PRAYER

WHEREFORE, Plaintiff prays judgment against defendant, its "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

(a)   For Plaintiff's general damages according to proof;

(b)   For Plaintiff's loss of income, wages and earning potential according to proof;

(c)   For Plaintiff's medical and related expenses according to proof;

(d)   For Plaintiff's cost of suit herein;

(e)   For exemplary or punitive damages according to proof;

(f)   For damages for fraud according to proof; and

1       (g)    For such other and further relief as the Court may deem just and proper, including

2    costs and prejudgment interest.

3    Dated: 6/6/11                                   BRAYTON❖PURCELL LLP

4

5                                                    By:

6                                                    David R. Donadio
                                                     Attorneys for Plaintiff

7

8

9                                    JURY DEMAND

10      Plaintiff hereby demands trial by jury of all issues of this cause.

11

12   Dated: G/6/11                                   BRAYTON❖PURCELL LLP

13

14                                                   By:

15                                                   David R. Donadio
                                                     Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\110194\Fed\PLD\cmp fed (wd).wpd              13
                COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

EXHIBIT A

<u>Decedent</u>:  PAUL DODGE, Deceased.

<u>Decedent's injuries</u>:  Decedent was diagnosed with lung cancer on or about February 2010, and Asbestos and asbestos related pleural disease on or about August 2008.

Decedent died on June 11, 2010.

<u>Retirement Status</u>:  Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the decedent, including, but not limited to breathing difficulties and/or other lung damage.

Decedent retired from his last place of employment at regular retirement age.  He had therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure §340.2.

<u>Defendant</u>:  Plaintiff contends that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendant.

Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| <u>Employer</u> | Location of <u>Exposure</u> | Job Title | Exposure <u>Dates</u> |
|---|---|---|---|
| US Navy | Naval Training Center, San Diego, CA | Trainee | 2/21/51-5/24/51 |
| Naval Supply Center, Oakland, CA | Engineman | 5/25/51-11/3/52 | |
| 2 unknown Tug Boats Oakland, CA | | | |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | BOXER (CVA-21) | Engineman | 2/25/53-2/17/55 |
| | Naval Repair Facility, Yokosuka, Japan | Tool Man | 2.5 months |
| | Hunters Point Naval Shipyard, San Francisco, CA | Tool Man | 3.5 months |
| | Pearl Harbor Naval Shipyard Honolulu, HI | Engineman | (9 weeks) |
| Paul Dodge Farm Yakima, WA | Paul Dodge Farm Yakima, WA | Farm Hand | 1955-1958 (Summers) |
| International Truck Co. Vancouver, BC | International Truck Co. Vancouver, BC | Welder (Helper) | 9/1955-6/1956 |
| Southern Counties Gas Company of California, Los Angeles, CA | Various large water districts, and industrial, commercial and agricultural plants from Fresno, CA to the Mexican border | Engineer (Energy Systems) | 1/1968-4/1978 |
| Southern California Gas Co., San Diego, CA | | | |
| Pacific Lighting Gas Supply Co., Los Angeles, CA | | | |
| DonMar's Small Engine Repair, Salmon Arm, British Columbia, Canada | DonMar's Small Engine Repair, Salmon Arm, British Columbia, Canada | Mechanic | 5/1978-2/1980 |

K:\Injured\110194\Fed\PLD\cmp fed (wd).wpd

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-02775-EMC

Dodge v. General Electric Company
Assigned to: Hon. Edward M. Chen
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 06/07/2011
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**Marjorie Dodge**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Paul Dodge,*
*and as Legal Heir of Paul Dodge,*
*Deceased*

represented by **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/07/2011 | 1 | COMPLAINT against General Electric Company ( Filing fee $ 350, receipt number 34611060748.) filed by Marjorie Dodge. (vlk, COURT STAFF) (Filed on 6/7/2011) (Additional attachment(s) added on 6/16/2011: # 1 Civil Cover Sheet) (vlk, COURT STAFF). (Entered: 06/10/2011) |
| 06/07/2011 | | CASE DESIGNATED for Electronic Filing. (vlk, COURT STAFF) (Filed on 6/7/2011) (Entered: 06/10/2011) |
| 06/07/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 9/14/2011. Case Management Conference set for 9/21/2011 01:30 PM. (Attachments: # 1 Standing Order)(vlk, COURT STAFF) (Filed on 6/7/2011) (Entered: |

| | | 06/10/2011) |
|---|---|---|
| 06/07/2011 | 3 | Summons Issued as to General Electric Company. (vlk, COURT STAFF) (Filed on 6/7/2011) (vlk, COURT STAFF). (Entered: 06/10/2011) |
| 06/07/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Marjorie Dodge. (vlk, COURT STAFF) (Filed on 6/7/2011) (vlk, COURT STAFF). (Entered: 06/10/2011) |
| 06/07/2011 | 5 | Certificate of Interested Entities by Marjorie Dodge (vlk, COURT STAFF) (Filed on 6/7/2011) (vlk, COURT STAFF). (Entered: 06/10/2011) |
| 06/07/2011 | 6 | NOTICE of Tag Along Action by Marjorie Dodge (vlk, COURT STAFF) (Filed on 6/7/2011) (vlk, COURT STAFF). (Entered: 06/10/2011) |
| 06/13/2011 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (ig, COURT STAFF) (Filed on 6/13/2011) (Entered: 06/13/2011) |
| 06/14/2011 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Edward M. Chen for all further proceedings. Magistrate Judge Donna M. Ryu no longer assigned to the case. Signed by the Executive Committee on June 14, 2011. (cjl, COURT STAFF) (Filed on 6/14/2011) (Entered: 06/14/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/06/2011 13:43:06 | | |
| PACER Login: | sd0076 | Client Code: | 05045-079666 |
| Description: | Docket Report | Search Criteria: | 3:11-cv-02775-EMC |
| Billable Pages: | 1 | Cost: | 0.08 |