(VBKx), DISCOVERY, MANADR, RELATED-G

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-05457-R -VBK

Stephen Conroy et al v. A.W. Chesterton Company et al

Assigned to: Judge Manuel L. Real

Referred to: Magistrate Judge Victor B. Kenton

Related Case: 2:07-cv-02241-R-JTL

Case in other court: Superior Court State of CA County of Los Angeles, BC455789

Cause: 28:1441 Notice of Removal - Asbestos Litigation

Date Filed: 06/30/2011

Jury Demand: Both

Nature of Suit: 368 P.I. : Asbestos

Jurisdiction: Federal Question

**Plaintiff**

**Stephen Conroy**

represented by **Jason D Cohn**
Cohn & Swartzon PC
1851 East First Street Suite 1250
Santa Ana, CA 92705
714-547-5100
Fax: 714-547-5424
Email: jason@cands-law.com
*ATTORNEY TO BE NOTICED*

**Saar Swartzon**
Cohn & Swartzon PC
1851 East First Street Suite 1250
Santa Ana, CA 92705
714-547-5100
Fax: 714-547-5424
Email: saar@cands-law.com
*ATTORNEY TO BE NOTICED*

**Sharon J Zinns**
Levy Phillips & Konigsberg LLP
800 Third Avenue 13th Floor
New York, NY 10022
212-605-6200
Fax: 212-605-6290
Email: szinns@lpklaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Linda Conroy**

represented by **Jason D Cohn**
(See above for address)
*ATTORNEY TO BE NOTICED*

Saar Swartzon
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon J Zinns**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**A.W. Chesterton Company**

<u>Defendant</u>

**Air and Liquid Systems Corporation**
*successor by merger to Buffalo Pumps*
*Inc*

<u>Defendant</u>

**American Refractories Company**

<u>Defendant</u>

**Aurora Pump Company**

<u>Defendant</u>

**Borg-Warner Corporation**
*by its*
*Successor*
Borgwarner Morse Tec Inc

<u>Defendant</u>

**Carrier Corporation**
*also known as*
Byrant Manufacturing

<u>Defendant</u>

**CBS Corporation**                    represented by **David G Larmore**
*a Delaware corporation, fka Viacom*          Pond North LLP
*Inc., successor by merger to CBS*            350 South Grand Avenue Suite 3300
*Corporation, fka Westinghouse Electric*      Los Angeles, CA 90071
*Corporation*                                 213-617-6170
                                              Fax: 213-623-3594
                                              Email: dlarmore@pondnorth.com
                                              *ATTORNEY TO BE NOTICED*

                                              **Francis D Pond**
                                              Pond North LLP
                                              350 South Grand Avenue Suite 3300
                                              Los Angeles, CA 90071

213-617-6170
Fax: 213-623-3594
*ATTORNEY TO BE NOTICED*

**Kevin D Jamison**
Pond North LLP
350 South Grand Avenue Suite 3300
Los Angeles, CA 90071
213-617-6170
Fax: 213-623-3594
Email: kjamison@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Previn A Wick**
Pond North LLP
350 South Grand Avenue Suite 3300
Los Angeles, CA 90071
213-617-6170
Fax: 213-623-3594
Email: pwick@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Crane Company**
*Individually and as successor to Pacific
Steel Boiler, National US Radiator, and
Pacific Valves*

**Defendant**

**Crane Pumps and Systems Inc**
*also known as*
Deming Pumps Division of Crane Co

**Defendant**

**Dezurik Inc**
*individually and as successor-in-
interest to Copes-Vulcan*

**Defendant**

**Elliot Turbomachinery Co**

**Defendant**

**Flowserve US Inc**
*individually and as successor-in-
interest to Rockwell Manufacturing and
as successor-in-interest to Bryon
Jackson Pumps*

**Defendant**

**FMC Corporation**

*individually and on behalf of its former*
*Peerless Pumps and on behalf of its*
*former Northern Pumps*

**Defendant**

**Foster Wheeler Energy Corporation**

**Defendant**

**Gardner Denver Inc**

**Defendant**

**General Electric Company**

**Defendant**

**Georgia-Pacific LLC**
*fka Georgia-Pacific Corporation*
*individually and as successor to*
*Bestwall Gypsum Company*

**Defendant**

**Goodrich Corporation**
*a New York Corporation*
*formerly known as*
BF Goodrich Company

**Defendant**

**Gorman-Rupp Company**

**Defendant**

**Goulds Pumps Incorporated**

**Defendant**

**Grinnell LLC**
*formerly known as*
Grinnell Corporation

**Defendant**

**Honeywell International Inc**
*fka Alliedsignal Inc as successor-in-*
*interest to The Bendix Corporation*

**Defendant**

**Howden Buffalo Inc**

**Defendant**

**IMO Industries Inc**
*individually and as successor to and fka*
*Delaval Turbine, Transamerica Delaval*
*and IMO Delaval*

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**ITT Industries Inc**
*individually and as successor ot The*
*Grinnel Corp, Kennedy Valve*
*Manufacturer Co. and McDonnell and*
*Miller*

**Defendant**

**J.T. Thorpe and Son Inc.**

**Defendant**

**Nash Engineering Company**

**Defendant**

**Patterson Pump Co**

**Defendant**

**Peerless Industries Inc**
*formerly doing business as*
Peerless Heater Co

**Defendant**

**Peerless Pump Company**
*aka Northern Pump Company a wholly*
*owned subsidiary of Grundfos CBS Inc*

**Defendant**

**Philadelphia Gear Corporation**

**Defendant**

**Quaker Chemical Corporation**

**Defendant**

**Rapid American Corporation**                     represented by **Edward Kong Low**
SNR Denton US LLP
525 Market Street 26th Floor
San Francisco, CA 94105
415-882-5000
Fax: 415-882-0300
Email: edward.low@snrdenton.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rockwell International Corporation**

**Defendant**

**Selby Battersby and Company**

**Defendant**

**SPX Corporation**
*individually and*
*Successor*
Copes-Vulcan

**Defendant**

**Sterling Fluid Systems (USA) LLC**
*formerly known as*
Peerless Pump Company

**Defendant**

**Taco Inc**

**Defendant**

**Thomas Dee Engineering Co Inc**

**Defendant**

**Trane Company**
*fka American Standard Inc. individually*
*and on behalf of its division The Trane*
*Co.*

**Defendant**

**Triple A Machine Shop Inc**

**Defendant**

**Tuthill Corporation**

**Defendant**

**Tyco International (US) Inc**
*individually and as successor-in-*
*interest to Yarway Corporation*

**Defendant**

**Union Carbide Corporation**

**Defendant**

**Union Pump Company**

**Defendant**

**Velan Valve Corporation**

**Defendant**

**Warren Pumps Inc**

**Defendant**

**Yarway Corporation**

<u>Defendant</u>

**York Industries Inc**

<u>Defendant</u>

**York International**

<u>Defendant</u>

**York Process System-Frick**

<u>Defendant</u>

**Does**
*1-350*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/30/2011 | <u>1</u> | NOTICE OF REMOVAL from Superior Court State of CA County of Los Angeles, case number BC455789 with Conoremd copy of summons and complaint. Case assigned to Judge John F. Walter, Discovery to Magistrate Judge Jacqueline Chooljian. (Filing fee $ 350 PAID), filed by Defendant CBS Corporation. Conformed copy of Answer filed in State Court on 4/15/11 attached Exhibit 2 to Notice of Removal](car) (Additional attachment(s) added on 7/1/2011: # <u>1</u> Exhibit Part 1, # <u>2</u> Exhibit Part 2) (ds). (Entered: 07/01/2011) |
| 06/30/2011 | | CONFORMED COPY OF ANSWER to Notice of Removal, <u>1</u> filed in State Court on 4/15/11 by Defendant CBS Corporation submitted attached exhibit 2 to Notice of Removal(car) (Entered: 07/01/2011) |
| 06/30/2011 | <u>2</u> | NOTICE of Related Case(s) filed by defendant CBS Corporation. Related Case (s): MDL No 875 (car) Modified on 7/1/2011 (car). (ds). (Entered: 07/01/2011) |
| 06/30/2011 | <u>3</u> | NOTICE TO PARTIES OF ADR PROGRAM filed.(car) (Entered: 07/01/2011) |
| 06/30/2011 | <u>4</u> | STANDING ORDER by Judge John F. Walter: READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES; Memoranda of Points and Authorities in support of or in opposition to motions shall not exceed 25 pages; replies shall not exceed 12 pages. Counsel are ORDERED to deliver 2 courtesy copies of all documents filed electronically in this action to Chambers. For each document filed electronically, one courtesy copy shall be marked CHAMBERS COPY and the other shall be marked COURTESY COPY. The courtesy copies shall be delivered to Chambers no later than 10:00 a.m. on the next business day after the document was electronically filed (see document for further details). (jp) (Entered: 07/01/2011) |
| 06/30/2011 | <u>5</u> | DISCLOSURE STATEMENT filed by Defendant CBS Corporation (car) (ds). (Entered: 07/01/2011) |
| 06/30/2011 | <u>6</u> | NOTICE of Tag-Along Action filed by Defendant CBS Corporation. (car) (ds). |

|  |  | (Entered: 07/01/2011) |
|---|---|---|
| 06/30/2011 | 7 | SUGGESTION of Death Pursuant to Federal Rules of Civil Procedure Rule 25 (a)(1) filed by Defendant CBS Corporation. (car) (ds). (Entered: 07/01/2011) |
| 07/05/2011 | 8 | NOTICE Service of Notice of Assignment of Magistrate filed by Defendant CBS Corporation. *and Notice of Service of ADR* (Jamison, Kevin) (Entered: 07/05/2011) |
| 07/06/2011 | 9 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 08-05 - Related Case- filed. Related Case No: CV 07-02241 R (JTLx). Case transferred from Magistrate Judge Jacqueline Chooljian and Judge John F. Walter to Judge Manuel L. Real and Magistrate Judge Victor B. Kenton for all further proceedings. The case number will now reflect the initials of the transferee Judge CV 11-05457 R (VBKx).Signed by Judge Manuel L. Real (rn) (Entered: 07/06/2011) |
| 07/08/2011 | 10 | NOTICE of Appearance filed by attorney Edward Kong Low on behalf of Defendant Rapid American Corporation (Low, Edward) (Entered: 07/08/2011) |
| 07/08/2011 | 11 | NOTICE OF RE-FILING STATE COURT ANSWER filed by Defendant Rapid American Corporation. (Attachments: # 1 Exhibit A: Answer of Defendant Rapid-American Corporation to Unverified Complaint for Damages (Asbestos))(Low, Edward) (Entered: 07/08/2011) |
| 07/08/2011 | 12 | CERTIFICATE of Interested Parties filed by Defendant Rapid American Corporation, (Low, Edward) (Entered: 07/08/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/12/2011 08:50:11 | | |
| **PACER Login:** | pn0321 | **Client Code:** | 4520.3218 |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-cv-05457-R -VBK End date: 7/12/2011 |
| **Billable Pages:** | 6 | **Cost:** | 0.48 |

Jason D. Cohn, CA Bar No. 192618
Saar Swartzon, CA Bar No. 198732
COHN & SWARTZON, P.C.
The Xerox Centre
1851 East First Street, Suite 1250
Santa Ana, California 92705
Telephone: (714) 547-5100
Facsimile: (714) 547-5424

Sharon J. Zinns, CA Bar No. 241476
LEVY, PHILLIPS & KONGISBERG, LLP
800 Third Ave, 11th Floor
New York, NY 10022
Telephone: (212) 605-6200
Facsimile: (212) 605-6290

Attorneys for Plaintiff

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

FEB 23 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
RIGENA LOPEZ

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

BC455789

STEPHEN CONROY and
LINDA CONROY

Plaintiffs,

vs.

A.W. CHESTERTON COMPANY; AIR &
LIQUID SYSTEMS CORPORATION
(successor by merger to Buffalo Pumps,
Inc.); AMERICAN REFRACTORIES
COMPANY; AURORA PUMP
COMPANY; BORG-WARNER
CORPORATION by its successor-in-
interest BORGWARNER MORSE TEC
INC.; CARRIER CORPORATION (a/k/a
Bryant Manufacturing Corporation); CBS
CORPORATION (f/k/a Viacom Inc.,
successor by merger to CBS Corporation,
f/k/a Westinghouse Electric Corporation);
CRANE CO. (Individually and as a
successor to Pacific Steel Boiler, National US
Radiator, and Pacific Valves); CRANE
PUMPS & SYSTEMS, INC. (a/k/a Deming
Pumps Division of Crane Co.); DEZURIK
INC. (individually and as successor-in-
interest to Copes-Vulcan); ELLIOT

Case No.

THIS ACTION CONSTITUTES COMPLEX
ASBESTOS LITIGATION – SUBJECT TO
THE GENERAL ORDERS CONTAINED IN
FILE

COMPLAINT FOR PERSONAL INJURY
– ASBESTOS (NEGLIGENCE; STRICT
LIABILITY; FALSE
REPRESENTATION; INTENTIONAL
TORT/INTENTIONAL FAILURE TO
WARN)

- 1 -

TURBOMACHINERY CO.;
FLOWSERVE US INC. (individually and
as successor-in-interest to Rockwell
Manufacturing and as successor-in-interest to
Byron Jackson Pumps); FMC
CORPORATION (individually and on
behalf of its former Peerless Pumps and on
behalf of its former Northern Pumps);
FOSTER WHEELER ENERGY
CORPORATION; GARDNER DENVER,
INC.; GENERAL ELECTRIC
COMPANY; GEORGIA-PACIFIC LLC
(f/k/a Georgia-Pacific Corporation,
individually and as successor to Bestwall
Gypsum Company); GOODRICH
CORPORATION, A NEW YORK
CORPORATION (f/k/a B.F. Goodrich
Company);THE GORMAN-RUPP
COMPANY; GOULDS PUMPS,
INCORPORATED; GRINNELL LLC
(f/k/a Grinnell Corporation); HONEYWELL
INTERNATIONAL INC. (f/k/a
Alliedsignal, Inc., as successor-in-interest to
The Bendix Corporation); HOWDEN
BUFFALO, INC.; IMO INDUSTRIES,
INC. (individually and as successor to and
f/k/a Delaval Turbine, Transamerica Delaval
and IMO Delaval); INGERSOLL-RAND
COMPANY; ITT INDUSTRIES, INC.
(individually and as successor to The
Grinnell Corp., Kennedy Valve Manufacturer
Co. and McDonnell & Miller); J.T.
THORPE & SON, INC.; NASH
ENGINEERING COMPANY;
PATTERSON PUMP CO.; PEERLESS
INDUSTRIES, INC. (f/d/b/a Peerless Heater
Co.); PEERLESS PUMP COMPANY
(a/k/a Northern Pump Company, a wholly
owned subsidiary of Grundfos CBS, Inc.);
PHILADELPHIA GEAR
CORPORATION; QUAKER
CHEMICAL CORPORATION; RAPID
AMERICAN CORPORATION;
ROCKWELL INTERNATIONAL
CORPORATION; SELBY, BATTERSBY
& COMPANY; SPX CORPORATION
(individually and as successor-in-interest to
Copes-Vulcan); STERLING FLUID
SYSTEMS (USA) LLC (f/k/a Peerless Pump

- 2 -

Company); **TACO, INC.; THOMAS DEE ENGINEERING CO., INC.; TRANE COMPANY** (f/k/a American Standard, Inc. individually and on behalf of its division The Trane Co.); **TRIPLE A MACHINE SHOP, INC.; TUTHILL CORPORATION; TYCO INTERNATIONAL (US) INC.** (individually and as successor-in-interest to Yarway Corporation); **TYCO VALVES & CONTROLS LP** (individually and as successor-in-interest to Yarway Corporation); **UNION CARBIDE CORPORATION; UNION PUMP COMPANY; VELAN VALVE CORPORATION; WARREN PUMPS, INC.; YARWAY CORPORATION; YORK INDUSTRIES, INC.; YORK INTERNATIONAL; YORK PROCESS SYSTEM-FRICK and DOES 1- 350,**

                                        Defendants.

```
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
```

## GENERAL ALLEGATIONS

COME NOW Plaintiffs, STEPHEN CONROY and LINDA CONROY, who bring the action as specified in Section 377.20, 377.30 and 377.31 of the *California Code of Civil Procedure* (hereinafter "Plaintiffs"), who bring the action as specified in Section 377.60 of the *California Code of Civil Procedure*, and complain and allege as follows:

1.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 350, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2.    At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of his co-Defendants, and each of them, and at all said times each

- 3 -

Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

3. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants, A.W. CHESTERTON COMPANY; AIR & LIQUID SYSTEMS CORPORATION (successor by merger to Buffalo Pumps, Inc.); AMERICAN REFRACTORIES COMPANY; AURORA PUMP COMPANY; BORG-WARNER CORPORATION by its successor-in-interest BORGWARNER MORSE TEC INC.; CARRIER CORPORATION (a/k/a Bryant Manufacturing Corporation); CBS CORPORATION (f/k/a Viacom Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation); CRANE CO. (individually and as a successor to Pacific Steel Boiler, National US Radiator, and Pacific Valves); CRANE PUMPS & SYSTEMS, INC. (a/k/a Deming Pumps Division of Crane Co.); DEZURIK INC. (individually and as successor-in-interest to Copes-Vulcan); ELLIOT TURBOMACHINERY CO.; FLOWSERVE US INC. (individually and as successor-in-interest to Rockwell Manufacturing and as successor-in-interest to Byron Jackson Pumps); FMC CORPORATION (individually and on behalf of its former Peerless Pumps and on behalf of its former Northern Pumps); FOSTER WHEELER ENERGY CORPORATION; GARDNER DENVER, INC.; GENERAL ELECTRIC COMPANY; GEORGIA-PACIFIC LLC (f/k/a Georgia-Pacific Corporation, individually and as successor to Bestwall Gypsum Company); GOODRICH CORPORATION, A NEW YORK CORPORATION (f/k/a B.F. Goodrich Company);THE GORMAN-RUPP COMPANY; GOULDS PUMPS, INCORPORATED; GRINNELL LLC (f/k/a Grinnell Corporation); HONEYWELL INTERNATIONAL INC. (f/k/a Alliedsignal, Inc., as successor-in-interest to The Bendix Corporation); HOWDEN BUFFALO, INC.; IMO INDUSTRIES, INC. (individually and as successor to and f/k/a Delaval Turbine, Transamerica Delaval and IMO Delaval); INGERSOLL-RAND COMPANY; ITT INDUSTRIES, INC. (individually and as successor to The Grinnell Corp., Kennedy Valve Manufacturer Co. and McDonnell & Miller); J.T. THORPE & SON, INC.; NASH ENGINEERING

- 4 -

COMPANY; PATTERSON PUMP CO.; PEERLESS INDUSTRIES, INC. (f/d/b/a Peerless Heater Co.); PEERLESS PUMP COMPANY (a/k/a Northern Pump Company, a wholly owned subsidiary of Grundfos CBS, Inc.); PHILADELPHIA GEAR CORPORATION; QUAKER CHEMICAL CORPORATION; RAPID AMERICAN CORPORATION; ROCKWELL INTERNATIONAL CORPORATION; SELBY, BATTERSBY & COMPANY; SPX CORPORATION (individually and as successor-in-interest to Copes-Vulcan); STERLING FLUID SYSTEMS (USA) LLC (f/k/a Peerless Pump Company); TACO, INC.; THOMAS DEE ENGINEERING CO., INC.; TRANE COMPANY (f/k/a American Standard, Inc. individually and on behalf of its division The Trane Co.); TRIPLE A MACHINE SHOP, INC.; TUTHILL CORPORATION; TYCO INTERNATIONAL (US) INC. (individually and as successor-in-interest to Yarway Corporation); TYCO VALVES & CONTROLS LP (individually and as successor-in-interest to Yarway Corporation); UNION CARBIDE CORPORATION; UNION PUMP COMPANY; VELAN VALVE CORPORATION; WARREN PUMPS, INC.; YARWAY CORPORATION; YORK INDUSTRIES, INC.; YORK INTERNATIONAL; YORK PROCESS SYSTEM-FRICK and DOES 1-350, were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of Los Angeles, State of California.

///

///

///

///

///

- 5 -

## FIRST CAUSE OF ACTION
### (Negligence)

PLAINTIFFS COMPLAIN OF DEFENDANTS and DOES 1-350 INCLUSIVE, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, FOR A CAUSE OF ACTION FOR NEGLIGENCE AND ALLEGE AS FOLLOWS:

4.    At all times herein mentioned, each of the named Defendants and DOES 1 through 350 was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance[1].    Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing said asbestos.    The following Defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such

---

[1] Throughout this Complaint, Plaintiffs' references to "asbestos containing products" includes asbestos, asbestos-containing products, products designed to be used with asbestos-containing products, and/or products that it was foreseeable would be used with asbestos-containing products.

– 6 –

Defendant enjoys the goodwill originally attached to each such "alternate entity".

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| A.W. CHESTERTON COMPANY | |
| AIR & LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| AMERICAN REFRACTORIES COMPANY | |
| AURORA PUMP COMPANY | |
| BORG-WARNER MORSE TEC INC. | BORG WARNER CORPORATION |
| | BYRON JACKSON PUMPS |
| CARRIER CORPORATION | BRYANT MANUFACTURING CORPORATION |
| | BRYANT HEATING & AIR CONDITIONING |
| | UNITED TECHNOLOGIES CORPORATION |
| CBS CORPORATION | VIACOM, INC. |
| | CBS CORPORATION |
| | WESTINGHOUSE ELECTRIC CORPORATION |
| | BF STURTEVANT |
| CRANE CO. | PACIFIC STEEL BOILER |
| | NATIONAL US RADIATOR |
| | PACIFIC VALVES |
| | JENKINS VALVES |
| | DEMING PUMPS |
| | COCHRANE FEED TANKS |
| | COCHRANE DIVISION |
| CRANE PUMPS & SYSTEMS, INC. | DEMING PUMPS division of CRANE CO. |
| DEZURIK INC. | COPES-VULCAN |
| ELLIOT TURBOMACHINERY CO. | ELLIOTT COMPANY |
| FLOWSERVE US INC. | ROCKWELL MANUFACTURING |
| | BYRON JACKSON PUMPS |
| | NORDSTROM VALVE, INC. |
| FMC CORPORATION | PEERLESS PUMPS |
| | NORTHERN PUMPS |

- 7 -

| | |
|---|---|
| FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORP.<br>FOSTER WHEELER CORPORATION |
| GARDNER DENVER, INC. | GARDNER GOVERNOR CORPORATION |
| GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY, INC.<br>GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY |
| GEORGIA-PACIFIC LLC | GEORGIA-PACIFIC CORPORATION<br>BESTWELL GYPSUM COMPANY |
| GOODRICH CORPORATION | B.F. GOODRICH COMPANY |
| THE GORMAN-RUPP COMPANY | C.H. WHEELER |
| GOULDS PUMPS, INCORPORATED | |
| GRINNELL LLC | GRINELL CORPORATION |
| HONEYWELL INTERNATIONAL, INC. | ALLIEDSIGNAL, INC.<br>BENDIX CORPORATION |
| HOWDEN BUFFALO, INC. | HOWDEN FAN COMPANY |
| IMO INDUSTRIES, INC. | DELAVAL TURBINE, INC.<br>WARREN PUMPS, INC.<br>TRANSAMERICA DELAVAL<br>IMO DELAVAL |
| INGERSOLL-RAND COMPANY | DRESSER-RAND<br>TERRY STEAM TURBINE COMPANY |
| ITT INDUSTRIES, INC. | THE GRINNELL CORP.<br>KENNEDY VALVE MANUFACTURER CO.<br>MCDONNELL & MILLER<br>BELL & GOSSETT |
| J.T. THORPE & SON, INC. | |
| NASH ENGINEERING COMPANY | |
| PATTERSON PUMP CO. | |
| PEERLESS INDUSTRIES, INC. | PEERLESS HEATER CO. |

- 8 -

| | | |
|---|---|---|
| 1 | PEERLESS PUMP COMPANY | NORTHERN PUMP COMPANY |
| | | GRUNDFOS CBS, INC. |
| 2 | PHILADELPHIA GEAR CORPORATION | |
| 3 | QUAKER CHEMICAL CORPORATION | |
| 4 | RAPID AMERICAN CORPORATION | PHILLIP CAREY MFG. COMPANY |
| 5 | | |
| 6 | ROCKWELL INTERNATIONAL CORPORATION | |
| 7 | SELBY, BATTERSBY & COMPANY | |
| 8 | SPX CORPORATION | COPES-VULCAN |
| | | THE VULCAN SOOT BLOWER COMPANY |
| 9 | | |
| 10 | STERLING FLUID SYSTEMS (USA) LLC | PEERLESS PUMP COMPANY |
| 11 | TACO, INC. | |
| 12 | THOMAS DEE ENGINEERING CO., INC. | |
| 13 | TRIPLE A MACHINE SHOP, INC. | |
| 14 | TRANE COMPANY | AMERICAN STANDARD, INC. |
| 15 | | THE TRANE CO. |
| 16 | TUTHILL CORPORATION | |
| 17 | TYCO INTERNATIONAL (US) INC. | YARWAY CORPORATION |
| 18 | TYCO VALVES & CONTROLS LP | YARWAY CORPORATION |
| 19 | UNION CARBIDE CORPORATION | THE DOW CHEMICAL COMPANY |
| 20 | | UNION CARBIDE CHEMICALS AND |
| | | PLASTICS COMPANY, INC. |
| 21 | | UNION CARBIDE AND CARBON |
| | | CORPORATION |
| 22 | | LINDE AIR PRODUCTS COMPANY |
| 23 | | NATIONAL CARBON CO., INC. |
| | | PREST-O-LITE CO., INC. |
| 24 | | UNION CARBIDE COMPANY |
| | | CARBIDE AND CARBON CHEMICALS |
| 25 | | CORPORATION |
| 26 | | BAKELITE COROPORATION |
| | | UNION CARBIDE CONSUMER PRODUCTS |
| 27 | | CO. |
| | | UNION CARBIDE MINING AND METALS |
| 28 | | DIVISION |

- 9 -

|    |    |
|----|----|
| 1 | UNION CARBIDE ELECTRONICS DIVISION<br>UNION CARBIDE HYDROCARBONS |
| 2 | DIVISION<br>UNION CARBIDE FERROALLOYS DIVISION |
| 3 | JENNAT CORPORATION<br>AMERCHOL CORPORATION |
| 4 | UOP<br>UCAR CARBON COMPANY |
| 5 | UNION CARBIDE INDUSTRIAL GASES INC.<br>PRAXAIR, INC. |
| 6 | POLIMERI EUROPA S.r.l.<br>ASIAN ACETYLS COMPANY, LTD. |
| 7 | EQUATE PETROCHEMICAL COMPANY |
| 8 | |
| 9 | UNION PUMP COMPANY |
| 10 | VELAN VALVE CORPORATION |
| 11 | WARREN PUMPS, INC.          WARREN PUMPS, LLC<br>QUIMBY PUMP CO. |
| 12 | |
| 13 | YARWAY CORPORATION          TYCO INTERNATIONAL (US) INC.<br>TYCO VALVES & CONTROLS LP |
| 14 | YORK INDUSTRIES, INC. |
| 15 | YORK INTERNATIONAL |
| 16 | |
| 17 | YORK PROCESS SYSTEM-FRICK          FRICK COMPANY |

5.       At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising a certain substance, the generic name of which is asbestos and other products containing said substance.

6.       Defendants, their "alternate entities," and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and each Defendants breached said duty of reasonable care in that Defendants, and each of them, failed to safely and adequately design, manufacture and/or sell Defendants' products; failed to test said products; failed to investigate the hazards of said products; failed to warn "exposed person", including Plaintiff STEPHEN CONROY, of

– 10 –

the health hazards of using Defendants' products; failed to disclose the known or knowable dangers of using Defendants' products; failed to warn of the harmful exposures caused by use of said products to cut, saw or otherwise manipulate asbestos containing products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein. Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty of due care.

7.    Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff herein, would use or be in proximity of and exposed to said asbestos fibers.

8.    Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products would be used or handled as specified in Exhibit "A", which is attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff herein, would be in proximity to and exposed to said asbestos fibers.

9.    Plaintiff STEPHEN CONROY, used, handled, or had been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable, in both occupational and non-occupational settings.   Plaintiff exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

10.    As a direct and proximate result of the conduct of the Defendants, their "alternate entities", and each of them, as aforesaid, Plaintiff STEPHEN CONROY's exposure to asbestos and

- 11 -

asbestos-containing products caused severe and permanent injury to Plaintiff STEPHEN CONROY, the nature of which, along with the date of Plaintiff STEPHEN CONROY's diagnosis and the date he learned such injuries were attributable to exposure to asbestos and/or asbestos-containing products is set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

11.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

12.     Plaintiff STEPHEN CONROY suffers from a malignant pleural mesothelioma, caused by an exposure to asbestos and asbestos-containing products. Plaintiff STEPHEN CONROY was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

13.     As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities", and each of them, Plaintiff suffered permanent injuries to his person, body and health, including, but not limited to, mesothelioma, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff general damage in a sum in excess of the jurisdictional limit of a limited civil case.

14.     As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities", and each of them, Plaintiff has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

15.     Plaintiffs further allege that defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts:

(a)     Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiff STEPHEN CONROY, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although defendants, and each of them, knew of the substantial risks associated with

– 12 –

exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person", including Plaintiff STEPHEN CONROY.

(b)     Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiff STEPHEN CONROY as to the safety of their products. Through their participation and association with such industry organizations, defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff STEPHEN CONROY at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff STEPHEN CONROY and others of the nature of said materials which were dangerous when breathed

- 13 -

and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff STEPHEN CONROY with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, installing and sanding the products of the defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff STEPHEN CONROY and others applying and installing such material;

(f)     Defendants, their "alternate entities", and each of them, knew and failed to disclose that Plaintiff STEPHEN CONROY and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff STEPHEN CONROY so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading.

16.     Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

///

- 14 -

17. The herein-described conduct of said defendants, their "alternate entities", and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff STEPHEN CONROY, in that defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to *Civil Code* section 3294. Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

18. Defendants and each of them engaged in conduct which was intended by defendants and each of them to cause injury to the plaintiffs, and despicable conduct which was carried on by the defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff STEPHEN CONROY.

19. Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff STEPHEN CONROY, to cruel and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

20. As a direct and proximate result of such intentional conduct by defendants, their "alternate entities" and each of them, Plaintiff STEPHEN CONROY sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

///
///
///
///

- 15 -

## SECOND CAUSE OF ACTION
(Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, AGAINST DEFENDANTS and DOES 1-350 INCLUSIVE, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

21. Plaintiff incorporates herein by reference, as though fully set forth therein, the allegations contained in the First Cause of Action herein.

22. Defendants, their "alternate entities", and each of them, sold the aforementioned Defendants' Products and failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of the products, including Plaintiff, STEPHEN CONROY, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff STEPHEN CONROY, and others in Plaintiff's position working with and in close proximity to such products.

23. Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, removed with compressed air, arched, swept, broken, "ripped out," cut, sawed, installed, and/or used as intended, or used to cut, saw or manipulate products containing asbestos or otherwise disturbed, said products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiff STEPHEN CONROY, The defect existed in all of said products when they left the possession of the Defendants, their "alternate entities," and each of them. At the time Defendants' Products were used by Plaintiff, and others in Plaintiff's position working with and in close proximity to such products, the products were substantially the same as when they left the possession of the Defendants, their "alternate entities," and each of them and/or any changes made to the products after they left the possession of Defendants, their "alternate entities", and each of them were reasonably foreseeable to Defendants, their "alternate entities", and each of them. Defendants' asbestos and asbestos products were used by Plaintiff STEPHEN CONROY, and others in Plaintiff's position working with and in close proximity to such products, in a way that was reasonably foreseeable to Defendants, and each of them. The defect in

– 16 –

1   said products was a substantial factor in causing harm and personal injuries to Plaintiff STEPHEN
2   CONROY, including malignant mesothelioma, while being used in a reasonably foreseeable manner,
3   thereby rendering said products defective, unsafe, and unreasonably dangerous for their ordinary and
4   intended use.
5          24.     As a direct and proximate result of the actions and conduct outlined herein,
6   Defendants' Products failed to perform as safely as an ordinary consumer would have expected in that
7   Defendants' products, and each of them, caused respirable asbestos fibers to be released from asbestos
8   products during their ordinary and intended use, and such hazardous exposures lacked any perceptible
9   qualities to the human body, yet they cause severe and fatal diseases, including asbestosis, lung cancer,
10  mesothelioma and other cancers in humans. Plaintiffs further allege that "exposed person", including
11  Plaintiff STEPHEN CONROY, were unaware of the harmful effects of asbestos and further unaware of
12  the harmful exposures to Defendants' Products when such exposures occurred, and thus the failure of
13  Defendants' products to perform as safely as Plaintiff STEPHEN CONROY, had reason to expect was a
14  substantial factor in causing his injuries.
15         25.     As a direct and proximate result of the actions and conduct outlined herein,
16  Plaintiff STEPHEN CONROY, has suffered the injuries and damages alleged herein.
17         26.     Plaintiffs further allege that Defendants, their "alternate entities", and each of
18  them, also engaged in the following wrongful acts:
19         (a)     Defendants, their "alternate entities", and each of them, suppressed from all
20  consumers, including Plaintiff STEPHEN CONROY, medical and scientific information concerning the
21  health hazards associated with inhalation of asbestos, including the substantial risk of injury or death
22  therefrom. Although Defendants, and each of them, knew of the substantial risks associated with
23  exposure to asbestos, they willfully and knowingly concealed such information from the users of their
24  asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of
25  "exposed person", including Plaintiff STEPHEN CONROY,
26         (b)     Defendants, their "alternate entities", and each of them, belonged to, participated
27  in, and financially supported industry organizations, including but not limited to the Gypsum
28  Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for

- 17 -

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiff STEPHEN CONROY, as to the safety of their products. Through their participation and association with such industry organizations, Defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff STEPHEN CONROY, at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff STEPHEN CONROY, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff STEPHEN CONROY, with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding the products of the

- 18 -

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiff STEPHEN CONROY, as to the safety of their products. Through their participation and association with such industry organizations, Defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff STEPHEN CONROY, at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff STEPHEN CONROY, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff STEPHEN CONROY, with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding the products of the

– 18 –

1   Defendants, their "alternate entities", and each of them, despite knowing that such protective measures

2   were necessary, and that they were under a duty to disclose that such materials were dangerous and

3   would result in injury to Plaintiff STEPHEN CONROY, and others applying and installing such

4   material;

5        (f)    Defendants, their "alternate entities", and each of them, knew and failed to

6   disclose that Plaintiff STEPHEN CONROY, and anyone similarly situated, upon inhalation of asbestos

7   would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis,

8   asbestosis, mesothelioma and/or cancer;

9        (g)    Defendants, their "alternate entities", and each of them, failed to provide

10  information of the true nature of the hazards of asbestos materials and that exposure to these material

11  would cause pathological effects without noticeable trauma to the public, including buyers, users, and

12  physicians employed by Plaintiff STEPHEN CONROY, so that said physicians could not examine,

13  diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants,

14  their "alternate entities", and each of them, were under a duty to so inform and said failure was

15  misleading; and

16       27.    Defendants, their "alternate entities", and each of them, and their officers,

17  directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full

18  knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate

19  entities", and each of them, are liable for the oppressive and malicious acts of their "alternate entities",

20  and each of them, and each Defendant's officers, directors, and managing agents participated in,

21  authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the

22  acts of each of their "alternate entities" as set forth herein.

23       28.    The herein-described conduct of said Defendants, their "alternate entities", and

24  each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and

25  indifference to the safety and health of "exposed person," including Plaintiff STEPHEN CONROY, in

26  that Defendants, and each of them, continued to manufacture, market and/or sell dangerous products

27  known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial

28  hazards posed by use of their products, in order to continue to profit financially therefrom. Defendants,

- 19 -

their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

29.     Defendants and each of them engaged in conduct which was intended by Defendants and each of them to cause injury to the Plaintiffs, and despicable conduct which was carried on by the Defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff STEPHEN CONROY,

30.     Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff STEPHEN CONROY, to cruel and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

31.     As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiff STEPHEN CONROY, sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, and their "alternate entities", and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
(False Representation Under Restatement of Torts Section 402-B)

AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFF COMPLAINS OF DEFENDANTS and DOES 1-350 INCLUSIVE, "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

32.     Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

33.     At the aforementioned time when Defendants, their "alternate entities", and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

- 20 -

manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities", and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons", including, without limitation, Plaintiff STEPHEN CONROY, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

34. The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons", including, without limitation, Plaintiff STEPHEN CONROY, relied upon said representations of Defendants, their "alternate entities", and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

35. Said representation by Defendants, their "alternate entities", and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities", and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons", thereby threatening the health and life of said persons, including Plaintiff STEPHEN CONROY herein.

36. As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiff sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
(Intentional Tort/Intentional Failure to Warn)

AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFF COMPLAINS OF DEFENDANTS, and DOES 1-350 INCLUSIVE, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE:

37. Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First and Third Causes of Action herein.

- 21 -

38.     At all times pertinent hereto, the Defendants, their "alternate entities", and each of them, owed Plaintiff a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property, or rights of the Plaintiff. When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities", and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to Plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically, included suggestions of fact which were not true and which Defendants, their "alternate entities", and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "alternate entities", and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of Plaintiff as provided for in the aforementioned Civil Code sections.

39.     Since on or before 1930, the Defendants, their "alternate entities", and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in Plaintiff First Cause of Action were and are hazardous to the health and safety of Plaintiff, and others in Plaintiff position working in close proximity with such materials. The Defendants, their "alternate entities", and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Plaintiff STEPHEN CONROY and others in Plaintiff's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)     Defendants, their "alternate entities", and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "alternate entities", and each of them, since on or before 1930. By not labeling such

- 22 -

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

materials as to their said hazards, Defendants, their "alternate entities", and each of them, caused to be suggested as a fact to Plaintiff that it was safe for him to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities", and each of them, did not believe it to be true;

(b)    Defendants, their "alternate entities", and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendant, their "alternate entities", and each of them, were bound to disclose such information;

(c)    Defendants, their "alternate entities", and each of them, sold the aforementioned products and materials to Plaintiff, his employers and others without advising Plaintiff, his employers, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities", and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "alternate entities", and each of them, caused to be positively asserted to Plaintiff STEPHEN CONROY that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff STEPHEN CONROY to work in close proximity to such materials;

(d)    Defendants, their "alternate entities", and each of them, suppressed from Plaintiff's medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their "alternate entities", and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities", and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)    Defendants, their "alternate entities", and each of them, belonged to, participated

– 23 –

1  in, and financially supported the Asbestos Textile Institute and other industry organizations which, for

2  and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the

3  suppression of information of danger to users of the aforementioned products and materials, thereby

4  misleading Plaintiff STEPHEN CONROY by the suggestions and deceptions set forth above in this

5  cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee,

6  of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control.

7  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the

8  dangers, which arise from the lack of control of dust, and such information was suppressed from public

9  dissemination from 1946 to a date unknown to Plaintiff STEPHEN CONROY at this time;

10          (f)       Commencing in 1930 with the study of mine and mill workers at Asbestos and

11  Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in

12  Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew

13  and possessed medical and scientific information of the connection between the inhalation of asbestos

14  fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and

15  other industry organizations to all other Defendants, their "alternate entities", and each of them, herein.

16  Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, suggested to the

17  public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts

18  did mislead Plaintiff and others by withholding the afore-described medical and scientific data and

19  other knowledge and by not giving Plaintiff STEPHEN CONROY the true facts concerning such

20  knowledge of danger, which Defendants, their "alternate entities", and each of them, were bound to

21  disclose;

22          (g)       Defendants, their "alternate entities", and each of them, failed to warn Plaintiff

23  STEPHEN CONROY and others of the nature of said materials which were dangerous when breathed

24  and which could cause pathological effects without noticeable trauma, despite the fact that Defendants,

25  their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that

26  said materials were dangerous and a threat to the health of persons coming into contact therewith;

27          (h)       Defendants, their "alternate entities", and each of them, failed to provide Plaintiff

28  STEPHEN CONROY with information concerning adequate protective masks and other equipment

– 24 –

devised to be used when applying and installing the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff STEPHEN CONROY and others applying and installing such material;

(i)     Defendants, their "alternate entities", and each of them, when under a duty to so disclose, concealed from Plaintiff STEPHEN CONROY the true nature of the industrial exposure of Plaintiff STEPHEN CONROY and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate entities", and each of them, also concealed from Plaintiff STEPHEN CONROY and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff STEPHEN CONROY so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

(k)     Defendants, their "alternate entities", and each of them, failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff STEPHEN CONROY and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

40.     Defendants, their "alternate entities", and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiff's injuries and death, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiff STEPHEN CONROY was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the

fact of danger from products complained of had become known.

41. Defendants, their "alternate entities", and each of them, having such aforementioned knowledge, and the duty to inform Plaintiff STEPHEN CONROY about the true facts, and knowing the Plaintiff STEPHEN CONROY did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Plaintiff STEPHEN CONROY to remain unaware of the true facts and to induce Plaintiff to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

42. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiff STEPHEN CONROY sustained the injuries and damages alleged herein. The herein-described conduct of said Defendants, their "alternate entities", and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as hereinafter set forth.

## FIFTH CAUSE OF ACTION
(Loss of Consortium)

AS AND FOR A FURTHER FOURTH SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF LINDA CONROY COMPLAINS OF DEFENDANTS, DOES 1-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

44. Plaintiff LINDA CONROY incorporates by reference, each and every allegation contained in the general allegations and in the First, Second, Third and Fourth Causes of Action herein.

45. Plaintiffs STEPHEN CONROY and LINDA CONROY were married on November 17, 1979, and at all times relevant to this action were, and are now, husband and wife.

46. Prior to Plaintiff STEPHEN CONROY's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, plaintiff STEPHEN CONROY has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will

- 26 -

be unable to perform such work, service and duties in the future. As a proximate result thereof, LINDA CONROY has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

47. Plaintiff LINDA CONROY's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

48. As a direct and proximate result of the acts of defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to Plaintiff STEPHEN CONROY as set forth in this complaint, Plaintiff LINDA CONROY has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

**Plaintiff STEPHEN CONROY:**

1. For Plaintiff general damages according to proof;

2. For Plaintiff pecuniary and economic losses, including loss of income, wages, support, and earning potential according to proof;

3. For Plaintiff's medical and related expenses according to proof;

**Plaintiff LINDA CONROY:**

4. For Plaintiff's damages for loss of consortium and/or society according to proof;

**Plaintiffs STEPHEN CONROY and LINDA CONROY**

5. For exemplary or punitive damages according to proof;

6. For damages for fraud according to proof;

7. For Plaintiff cost of suit herein; and

8. For such other and further relief as the Court may deem just and proper, including costs

- 27 -

and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions

of law.

DATED: February 23, 2011

By: _____

Jason Cohn, CA Bar No. 192618
Saar Swartzon, CA Bar No. 198732
COHN & SWARTZON, P.C.
The Xerox Centre
1851 East First Street, Suite 1250
Santa Ana, California 92705
Telephone: (714) 547-5100
Facsimile: (714) 547-5424

And

Sharon J. Zinns, CA Bar No. 241476
LEVY, PHILLIPS & KONGISBERG, LLP
800 Third Ave, 11th Floor
New York, NY 10022
Telephone: (212) 605-6200
Facsimile: (212) 605-6290

- 28 -

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED: February 23, 2011

By: _____
Jason Cohn, CA Bar No. 192618
Saar Swartzon, CA Bar No. 198732
COHN & SWARTZON, P.C.
The Xerox Centre
1851 East First Street, Suite 1250
Santa Ana, California 92705
Telephone: (714) 547-5100
Facsimile: (714) 547-5424

And

Sharon J. Zinns, CA Bar No. 241476
LEVY, PHILLIPS & KONGISBERG, LLP
800 Third Ave, 11th Floor
New York, NY 10022
Telephone: (212) 605-6200
Facsimile: (212) 605-6290

- 29 -

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

EXHIBIT "A"

Plaintiff STEPHEN CONROY's exposure to asbestos and asbestos-containing products occurred at various locations within the state of California, including, but not limited to:

Occupational Exposure

| Employer | Location of Exposure | Job Title & Duties | Exposure Dates |
|---|---|---|---|
| United States Navy | U.S.S. Coral Sea; Enterprise; San Diego, CA; Vietnam | Engineer and boiler room mechanic | Approximately 1962- 1967 |
| Rubber reclamation plant | Los Angeles, CA | Boiler room mechanic | Approximately 1967 |
| Carpenter Technology | Los Angeles, CA | Warehouse Worker | Approximately 1968- 1980 |
| Maas Hansen | Southern California | Unloaded trucks in the receiving department | Approximately 1980- 1988 |

Non-Occupational Exposure

| Location of Exposure | Exposure Activities | Exposure Dates |
|---|---|---|
| Various, CA | Removed and installed brakes | Various dates from approximately 1980- 1985 |

- 30 -

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

## EXHIBIT "B"

1

2

3　　　　Plaintiff STEPHEN CONROY's exposure to asbestos and asbestos-containing products caused

4　severe and permanent injury to the Plaintiff including, but not limited to, breathing difficulties,

5　asbestosis, mesothelioma, lung and/or other cancer, and/or other lung damage. Plaintiff STEPHEN

6　CONROY was diagnosed with malignant mesothelioma in approximately June of 2010.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 31 -