(MANx), DISCOVERY, MANADR, RELATED-P

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-05845-VBF -MAN

Sunsoon Doucet v. Asbestos Corporation Ltd et al
Assigned to: Judge Valerie Baker Fairbank
Referred to: Magistrate Judge Margaret A. Nagle
Case in other court: Superior Court of CA for the
        County of Los Angeles, BC460885
Cause: 28:1441 Notice of Removal - Asbestos
Litigation

Date Filed: 07/15/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Sunsoon Doucet**
*individually and as successor to The
Estate of Richard Doucet*

represented by **Marc Ian Willick**
Marc I Willick Law Offices
2361 Rosecrans Avenue Suite 450
El Segundo, CA 90245
310-536-1040
Fax: 310-496-0256
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Asbestos Corporation Ltd**

**Defendant**

**Buffalo Pumps Inc**
*(sued individually and as successor-
in-interest to Adel Clamps)*

**Defendant**

**Crown Cork and Seal Company
Inc**
*(sued individually and as successor-
in-interest to Mundet Cork
Corporation)*

**Defendant**

**Curtis Wright Corporation**

**Defendant**

**Dexter-Hysol Aerospace Inc**

**Defendant**

**Dexter-Hysol Aerospace LLC**

**Defendant**

**Elliott Company**
*also known as*
Elliott Turbo Machinery Company

**Defendant**

**General Electric Company**

**Defendant**

**Goodyear Tire and Rubber
Company**
*The*

**Defendant**

**Honeywell International Inc**
*(sued individually and as successor
to Allied Signal Inc successor to
Bendix Corporation)*

**Defendant**

**Howden Buffalo Inc**
*(sued individually and as successor-
in-interest to B F Sturtevant)*

**Defendant**

**IMO Industries Inc**
*(sued individually and as successor-
in-interest to De Lval Steam Turbine
Inc)*

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**J T Thorpe and Son Inc**

**Defendant**

**M Slayen & Associates Inc**

**Defendant**

**Metalclad Insulation Corporation**

**Defendant**

**Owens-Illinois Inc**

**Defendant**

**Quintec Industries Inc**
*(sued individually and as successor-in-interest and by merger to Western Fibrous Glass Products Company)*
*formerly known as*
Western Fiberglas Company

**Defendant**

**Syd Carpenter Marine Contractor Inc**

**Defendant**

**Flamemaster Corporation**
*The*

**Defendant**

**Thomas Dee Engineering Co Inc**

**Defendant**

**Trane U S Inc**
*formerly known as*
American Standard Inc

**Defendant**

**United Technologies Corporation**
*(sued individually and as successor-in-interest to Pratt and Whitney)*

**Defendant**

**Velan Valve Corporation**

**Defendant**

**Viacom Inc**

*(sued individually and as successor
by merger to CBS Corporation)
formerly known as*
Westinghouse Electric Corporation
*formerly known as*
B F Sturtevant

### Defendant

**Viad Corp**                                    represented by    **Peter B Langbord**
*(sued individually and as successor-*                             Foley & Mansfield PLLP
*in-interest to Griscom-Russell and*                               300 South Grand Avenue Suite 2800
*The Dial Corporation)*
                                                                   Los Angeles, CA 90071
                                                                   213-283-2100
                                                                   Fax: 213-283-2101
                                                                   Email:
                                                                   plangbord@foleymansfield.com
                                                                   *ATTORNEY TO BE NOTICED*

### Defendant

**Warren Pumps LLC**
*(sued individually and as successor-*
*in-interest to Quimby Pump*
*Company)*

### Defendant

**Yarway Corporation**

### Defendant

**Does**
*1-350 Inclusive*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/15/2011 | 1 | NOTICE OF REMOVAL from Superior Court for the CA for the County of Los Angeles, case number BC460885 with conformed filed copy of summons and complaint. Case assigned to Judge Valerie Baker Fairbank, Discovery to Magistrate Judge Margaret A. Nagle. (Filing fee $ 350 Paid. ), filed by Defendant Viad Corp.(et) (ds). (Entered: 07/18/2011) |
| 07/15/2011 |   | CONFORMED FILED ANSWER to Complaint 1 filed by Defendant Viad Corp. [Filed in State Court on 7/7/2011 Submitted attached to notice of removal.] (et) (Entered: 07/18/2011) |

| 07/15/2011 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Defendant Viad Corp. (et) (ds). (Entered: 07/18/2011) |
| 07/15/2011 | 3 | NOTICE of Related Case(s) filed by Defendant Viad Corp. Related Case (s): CV 07-8338 VBF (RCx); CV 08-0118 R (JTLx) see more documents for more details. (et) (ds). (Entered: 07/18/2011) |
| 07/15/2011 | 4 | Defendant Viad Corps NOTICE of Re-Filing State Court Answer to Complaint filed by Defendant Viad Corp. (et) (ds). (Entered: 07/18/2011) |
| 07/15/2011 | 5 | NOTICE of Tag-Along Action filed by Defendant Viad Corp. (et) (ds). (Entered: 07/18/2011) |
| 07/15/2011 | 6 | CERTIFICATE OF SERVICE filed by Defendant Viad Corp, re Notice of Removal, 1 , Defendant Viad Corp Notice of Re-Filing State Court Answer to Complaint 4 , Certificate/Notice of Interested Parties 2 , Notice of Tag-Along Action 5 , Notice of Related Case(s ) 3 and civil cover sheet served on 7/15/2011. (et) (ds). (Entered: 07/18/2011) |
| 07/15/2011 | 7 | NOTICE TO PARTIES OF ADR PROGRAM filed. (et) (Entered: 07/18/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/20/2011 09:07:46 | | | |
| **PACER Login:** | fm1158 | **Client Code:** | 8027-0054 |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-cv-05845-VBF -MAN End date: 7/20/2011 |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

1   Marc I. Willick (State Bar No. 175379)
    Attorney at Law
2   2361 Rosecrans Ave., Suite 450
    El Segundo, California 90245
3   Telephone:     (310) 536-1040
    Facsimile:     (310) 496-0256
4

5   Attorneys for Plaintiff

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 04 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DOROTHY SWAIN

6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          FOR THE COUNTY OF LOS ANGELES

10                                                          BC460885

11  SUNSOON DOUCET, individually and as      ) Case No.
    successor in interest to THE ESTATE OF   )
12  RICHARD DOUCET,                          )
                                             )
13                          Plaintiffs,      ) ASBESTOS LITIGATION – SUBJECT TO THE
                                             ) GENERAL ORDERS CONTAINED IN FILE NO.
14             vs.                           ) C 700000 – DEPT. 59
                                             )
15                                           )
    ASBESTOS  CORPORATION, LTD.;             )
16  BUFFALO PUMPS, INC.;                     ) **COMPLAINT FOR WRONGFUL DEATH AND**
    CRANE CO. (*sued individually and as*    ) **SURVIVAL ACTION – ASBESTOS**
17        *successor-in-interest to ADEL*    ) **(NEGLIGENCE; STRICT LIABILITY; FALSE**
          *CLAMPS);*                         ) **REPRESENTATION; INTENTIONAL**
18  CROWN CORK & SEAL COMPANY,               ) **TORT/INTENTIONAL FAILURE TO WARN;**
          INC. (*sued individually and as*   ) **LOSS OF CONSORTIUM;**
19        *successor-in-interest to* MUNDET  ) **PREMISES/CONTRACTOR LIABILITY)**
20        CORK CORPORATION);                 )
    **CURTIS WRIGHT CORPORATION;**           )
21  **DEXTER-HYSOL AEROSPACE, INC.;**        )
    **DEXTER-HYSOL AEROSPACE, LLC.;**        )
22  **ELLIOTT COMPANY** (*a/k/a* ELLIOTT     )
          TURBO MACHINERY                    )
23        COMPANY);                          )
    **GENERAL ELECTRIC COMPANY;**            )
24  **THE GOODYEAR TIRE & RUBBER**           )
          **COMPANY;**                       )
25  **HONEYWELL INTERNATIONAL,**             )
          **INC**. (*sued individually and as* )
26        *successor to* ALLIED SIGNAL, INC. )
          *successor to* BENDIX              )
27        *CORPORATION);*                    )
    **HOWDEN BUFFALO, INC.** (*sued          )
28

                                       1

*individually and as successor-in-interest to* B.F. STURTEVANT); )

**IMO INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* DE LAVAL STEAM TURBINE, INC.);

**INGERSOLL-RAND COMPANY;**

**J. T. THORPE & SON, INC.;**

**M. SLAYEN & ASSOCIATES, INC.;**

**METALCLAD INSULATION CORPORATION;**

**OWENS-ILLINOIS, INC.;**

**QUINTEC INDUSTRIES, INC.** (*individually and as successor-in-interest and by merger to WESTERN FIBROUS GLASS PRODUCTS COMPANY f/k/a Western Fiberglas Company);*

**SYD CARPENTER MARINE CONTRACTOR, INC.;**

**THE FLAMEMASTER CORPORATION;**

**THOMAS DEE ENGINEERING CO., INC.;**

**TRANE U.S. INC.** *(f/k/a American Standard, Inc.);*

**UNITED TECHNOLOGIES CORPORATION** (*individually and as successor-in-interest to PRATT & WHITNEY);*

**VELAN VALVE CORPORATION;**

**VIACOM, INC.** (*sued individually and as successor by merger to CBS CORPORATION (f/k/a WESTINGHOUSE ELECTRIC CORPORATION and B.F. STURTEVANT);*

**VIAD CORP.** (*individually and as successor-in-interest to GRISCOM-RUSSELL and THE DIAL CORPORATION);*

**WARREN PUMPS, LLC** *(sued individually and as successor-in-interest to QUIMBY PUMP COMPANY);*

**YARWAY CORPORATION;** and

**DOES 1-350 INCLUSIVE,**

                    Defendants. )

2

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

## GENERAL ALLEGATIONS

COME NOW Plaintiffs SUNSOON DOUCET, individually and as successor in interest to RICHARD DOUCET, Deceased who bring the action as specified in Section 377.20, 377.30 and 377.31 of the California Code of Civil Procedure, as well as individually (hereinafter "Plaintiffs"), who bring the action as specified in Section 377.60 of the California Code of Civil Procedure, and complain and allege as follows:

1.      The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 350, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names.   When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2.      At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of his co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

3.      Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants, **ASBESTOS CORPORATION, LTD.; BUFFALO PUMPS, INC.; CRANE CO.** (*sued individually and as successor-in-interest to ADEL CLAMPS*);   **CROWN CORK & SEAL COMPANY,   INC.** (*sued individually and as   successor-in-interest to* MUNDET   CORK CORPORATION); **CURTIS WRIGHT CORPORATION; DEXTER-HYSOL AEROSPACE, INC.; DEXTER-HYSOL AEROSPACE, LLC.; ELLIOTT COMPANY** (*a/k/a* ELLIOTT   TURBO MACHINERY   COMPANY); **GENERAL ELECTRIC COMPANY; THE GOODYEAR TIRE & RUBBER   COMPANY; HONEYWELL INTERNATIONAL,   INC.** *(sued individually and as successor to ALLIED SIGNAL, INC.   successor to BENDIX   CORPORATION);* **HOWDEN BUFFALO, INC.** (*sued   individually and as successor-in- interest to* B.F. STURTEVANT); **IMO INDUSTRIES, INC.** (*sued   individually and as successor-in- interest to* DE LAVAL STEAM

3

TURBINE, INC.); **INGERSOLL-RAND COMPANY; J. T. THORPE & SON, INC.; M. SLAYEN & ASSOCIATES, INC.; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.; QUINTEC INDUSTRIES, INC.** (*individually and as successor-in- interest and by merger to WESTERN FIBROUS GLASS PRODUCTS COMPANY f/k/a Western Fiberglas Company);* **SYD CARPENTER MARINE CONTRACTOR, INC.; THE FLAMEMASTER CORPORATION; THOMAS DEE ENGINEERING CO., INC.; TRANE U.S. INC.** (*f/k/a American Standard, Inc.);* **UNITED TECHNOLOGIES CORPORATION** (*individually and as successor-in-interest to PRATT & WHITNEY);* **VELAN VALVE CORPORATION;** VIACOM, INC. **(sued individually and as successor by merger to CBS CORPORATION (f/k/a WESTINGHOUSE ELECTRIC CORPORATION and B.F. STURTEVANT);** VIAD CORP. (*individually and as successor-in-interest to GRISCOM- RUSSELL and THE DIAL CORPORATION);* **WARREN PUMPS, LLC** (*sued individually and as successor-in- interest to* QUIMBY PUMP COMPANY); **YARWAY CORPORATION;** and **DOES 1-350 INCLUSIVE,** were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of Los Angeles, State of California.

4.      Plaintiffs disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party defendant committed at the direction of an officer of the United States Government. Plaintiffs do not seek to recover against themselves or either of themselves, as a defendant or otherwise, for any asbestos related injuries.

4

## FIRST CAUSE OF ACTION

### (Negligence)

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

5.   At all times herein mentioned, each of the named Defendants and DOES 1 through 350 was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing said asbestos. The following Defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity".

/ / /

/ / /

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CRANE CO. | ADEL CLAMPS<br>CRANE ENVIRONMENTAL<br>CRANE PUMPS AND SYSTEMS<br>VALVE SERVICES<br>CRANE VALVE GROUP<br>CRANE SUPPLY<br>CHAPMAN VALVE CO.<br>DEMING PUMPS<br>JENKINS VALVES<br>COCHRANE FEED TANKS |
| CROWN, CORK & SEAL COMPANY, INC. | CROWN, CORK & SEAL USA, INC.<br>CROWN HOLDINGS, INC.<br>MUNDET CORK CORPORATION |
| ELLIOT COMPANY | ELLIOTT TURBO MACHINERY COMPANY |
| GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING<br>COMPANY, INC.<br>GENERAL ELECTRIC CAPITAL<br>ASSURANCE COMPANY<br>GENERAL ELECTRIC PROFESSIONAL<br>SERVICES COMPANY<br>GENERAL ELECTRIC TRADING COMPANY |
| THE GOODYEAR TIRE & RUBBER CO. | GOODYEAR AVIATION PRODUCTS<br>DUNLOP<br>KELLY TIRES<br>$AVA<br>FULDA |
| HONEYWELL INTERNATIONAL INC. | ALLIED SIGNAL, INC.<br>BENDIX CORPORATION<br>BENDIX AVIATION CORP.<br>THE SIGNAL COMPANIES, INC.<br>SIGNAL OIL & GAS COMPANY |
| HOWDEN BUFFALO, INC. | B.F. STUREVANT<br>HOWDEN FAN<br>HOWDEN FAN COMPANY<br>THE HOWDEN FAN COMPANY<br>NOVENCO FANS, INC.<br>AMERICAN DAVIDSON INC.<br>HOWDEN SIROCCO INC.<br>HOWDEN BUBBALO FANS<br>HOWDEN BUFFALO FORGE CO.<br>HOWDEN |

6

| | |
|---|---|
| IMO INDUSTRIES, INC. | DE LAVAL TURBINE INC.<br>WARREN PUMPS, INC.<br>COLFAX CORPORATION<br>IMO PUMP<br>IMO AB<br>ALLWEILER HOUTTUIN<br>SIEMENS AG (as successor-in-interest to<br>  DEMAG<br>DELAVAL TURBOMACHINERY CORP.<br>COLFAX PUMP GROUP<br>COLFAX CORPORATION<br>DE LAVAL STEAM TURBINE COMPANY |
| INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG<br>DRESSER-RAND<br>POWERWORKS<br>THERMOKING<br>TERRY STEAM TURBINE COMPANY |
| J.T. THORPE & SON, INC. | THE THORPE COMPANY<br>THORPE PRODUCTS COMPANY<br>J.T. THORPE NORTHWEST |
| METALCLAD INSULATION CORPORATION | METALCLAD CORPORATION<br>NORTHERN CALIFORNIA INSULATION,<br>  INC. |
| OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS<br>CORPORATION<br>FENCO<br>MARINE ENGINEERING<br>FESCO<br>FIBERGLAS ENGINEERING AND SUPPLY<br>COMPANY<br>WILLIAM LANE COMPANY<br>SILICARE INSULATION<br>ASBESTOS ENGINEERING & SUPPLY CO.<br>OWENS-BROCKWAY GLASS CONTAINERS<br>BROCKWAY GLASS CO., INC.<br>OWENS-ILLINOIS GLASS COMPANY<br>O-I |
| QUINTEC INDUSTRIES, INC. | WESTERN FIBROUS GLASS<br>WESTERN FIBERGLAS COMPANY<br>WESTGLASS<br>INSULECTRO<br>MULDOON INSULATION |
| SYD CARPENTER MARINE CONTRACTOR<br>INC. | SYD CARPENTER COMPANY |

7

| | |
|---|---|
| VIACOM INC. | WESTINGHOUSE ELECTRIC CORPORATION<br>VIACOM INTERNATIONAL, INC.<br>VIACOM PLUS |
| WARREN PUMPS LLC | WARREN PUMPS INC.<br>WARREN PUMPS-HOUDAILLE, INC.<br>COLFAX PUMP GROUP<br>ALWEILER AG<br>HOUTTUIN BV<br>IMO PUMP<br>QUIMBY PUMP CO.<br>ZENITH PUMPS |
| YARWAY CORPORATION | YARNALL-WARING<br>TYCO FLOW CONTROL, INC.<br>TYCO INTERNATIONAL, INC. |

6.   At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising a certain substance, the generic name of which is asbestos and other products containing said substance.

7.   At all times herein mentioned, Defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised a certain substance, the generic name of which is asbestos, and other products and equipment containing said substance, in that said substance proximately caused personal injuries to users, consumers, workers, bystanders, and others, including Plaintiffs' Decedent RICHARD DOUCET (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the "exposed persons".

8.   Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty of due care.

8

9.      Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiffs' Decedent RICHARD DOUCET herein, would use or be in proximity of and exposed to said asbestos fibers.

10.     Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products and equipment would be used or handled resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiffs' Decedent RICHARD DOUCET herein, would be in proximity to and exposed to said asbestos fibers.

11.     Plaintiffs' Decedent RICHARD DOUCET has used, handled, or was otherwise exposed to asbestos and asbestos-containing products and equipment referred to herein in a manner that was reasonably foreseeable.   Decedent RICHARD DOUCET's exposure to asbestos and asbestos-containing products occurred at the various locations and times set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

12.     As a direct and proximate result of the conduct of the Defendants, their "alternate entities", and each of them, as aforesaid, Plaintiffs' Decedent RICHARD DOUCET's exposure to asbestos and asbestos-containing products caused the death of Plaintiffs' Decedent RICHARD DOUCET, as set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

13.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

9

14.    Plaintiffs' Decedent RICHARD DOUCET suffered from and died from lung cancer, caused by an exposure to asbestos and asbestos-containing products and equipment. Plaintiffs' Decedent RICHARD DOUCET was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

15.    As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities", and each of them, Plaintiffs' Decedent RICHARD DOUCET suffered permanent injuries to his person, body and health, including, but not limited to, lung cancer, other lung damage, and cancer, from the effect of exposure to asbestos fibers, proximately resulting in his death on November 5, 2010, all to the general damage of his heirs and estate in a sum in excess of the jurisdictional limit of a limited civil case.

16.    As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities", and each of them, Plaintiffs have incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays, other medical treatment, and consortium, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

17.    As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities", and each of them, Plaintiffs have been, and in the future will be, deprived of the consortium, support, society, solace, care, comfort, companionship, affection, advice, services and guidance of their Decedent RICHARD DOUCET.  Plaintiffs have also incurred, and will incur pecuniary loss, including loss of income, wages, profits and commissions, a diminishment of earning potential, loss of support and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

18.    Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

19.    Defendants, their "alternate entities", and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each

10

Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

20.     The herein-described conduct of said Defendants, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION

(Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

21.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in paragraphs 1 through 20 herein.

22.     Defendants, their "alternate entities", and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

23.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of the Defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Decedent RICHARD DOUCET herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

11

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

24.   "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said Defendants, their "alternate entities", and each of them, further failed to adequately warn of the risks to which Decedent RICHARD DOUCET and others similarly situated were exposed.

25.   In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-containing products and equipment, Defendants, their "alternate entities", and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said Defendants, their "alternate entities", and each of them, on or before 1930, and thereafter.

26.   On or before 1930, and thereafter, said Defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said Defendants, their "alternate entities," and each of them, knew that members of the general public, and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

27.   With said knowledge, said Defendants, their "alternate entities," and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than

12

attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, Defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their "alternate entities", and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

28.     The above-referenced conduct of said Defendants, their "alternate entities," and each of them, was motivated by the financial interest of said Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products.  In pursuance of said financial motivation, Defendants, their "alternate entities", and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiffs' Decedent RICHARD DOUCET.

29.     Plaintiffs allege that the aforementioned Defendants, their "alternate entities," and each of them, impliedly warranted their asbestos and asbestos-containing products and equipment to be safe for their intended use, but their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to "exposed persons."

30.     Plaintiffs further allege that Plaintiffs' Decedent RICHARD DOUCET's death as a result of cumulative exposure to asbestos and various asbestos-containing products and equipment manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, brought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged

13

and advertised by the aforementioned Defendants, their "alternate entities," and each of them, that Plaintiffs cannot identify precisely which asbestos or asbestos-containing products caused and/or contributed to the injuries complained of herein. The injurious exposures alleged herein are Plaintiffs' Decedent RICHARD DOUCET's exposures in the places and times set forth in Exhibit A to asbestos supplied with, affixed and/or added to, incorporated within, and/or installed on the defendants' products and/or equipment.

31.     Plaintiffs' Decedent RICHARD DOUCET relied upon Defendants, their "alternate entities," and each of their representations, lack of warnings, and implied warranties of the fitness of asbestos and asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Plaintiffs have been injured permanently as alleged herein.

32.     As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs have suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities", and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION

(False Representation Under Restatement of Torts Section 402-B)

AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

33.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

34.     At the aforementioned time when Defendants, their "alternate entities", and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities", and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said

14

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

product, and other "exposed persons", including, without limitation, Plaintiffs' Decedent RICHARD DOUCET and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

35.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons", including, without limitation, Plaintiffs' Decedent RICHARD DOUCET, and his employers, relied upon said representations of Defendants, their "alternate entities", and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

36.     Said representation by Defendants, their "alternate entities", and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities", and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons", thereby threatening the health and life of said persons, including Plaintiffs' Decedent RICHARD DOUCET herein.

37.     As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Intentional Tort/Intentional Failure to Warn)

AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE:

38.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

15

39.    At all times pertinent hereto, the Defendants, their "alternate entities", and each of them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property, or rights of the Plaintiffs. When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities", and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically, included suggestions of fact which were not true and which Defendants, their "alternate entities", and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "alternate entities", and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of the Plaintiffs as provided for in the aforementioned Civil Code sections.

40.    Since on or before 1930, the Defendants, their "alternate entities", and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products and equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health and safety of Plaintiffs' Decedent, and others in Decedent's position working in close proximity with such materials. The Defendants, their "alternate entities", and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Plaintiffs' Decedent RICHARD DOUCET, and others in Plaintiffs' Decedent's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiffs' Decedent and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)    Defendants, their "alternate entities", and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such materials and products to the health and safety of Plaintiffs' Decedent and others in Plaintiffs' Decedent's position working in close proximity with such materials until 1964, when certain of such

16

materials were labeled by some, but not all, of Defendants, their "alternate entities", and each of them, since on or before 1930. By not labeling such materials, products, and equipment as to their said hazards, Defendants, their "alternate entities", and each of them, caused to be suggested as a fact to Plaintiffs' Decedent that it was safe for Plaintiffs' Decedent RICHARD DOUCET to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b)     Defendants, their "alternate entities", and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendant, their "alternate entities", and each of them, were bound to disclose such information;

(c)     Defendants, their "alternate entities", and each of them, sold the aforementioned products, materials, and equipment to Plaintiffs' Decedent RICHARD DOUCET's employers and others without advising Plaintiffs' Decedent RICHARD DOUCET, his employer, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities", and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "alternate entities", and each of them, caused to be positively asserted to Plaintiffs' Decedent RICHARD DOUCET that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiffs' Decedent RICHARD DOUCET to work in close proximity to such materials;

(d)     Defendants, their "alternate entities", and each of them, suppressed from Plaintiffs medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their "alternate entities", and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiffs and others to be and remain ignorant thereof. Defendants, their "alternate entities",

17

and each of them, caused <u>Asbestos Magazine</u>, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)     Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and other industry organizations which, for and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiffs' Decedent RICHARD DOUCET by the suggestions and deceptions set forth above in this cause of action.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Decedent.  Such facts did mislead Decedent and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiffs' Decedent RICHARD DOUCET the true facts concerning such knowledge of danger, which Defendants, their "alternate entities", and each of them, were bound to disclose;

(g)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiffs' Decedent RICHARD DOUCET and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to

18

disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiffs' Decedent RICHARD DOUCET with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiffs' Decedent RICHARD DOUCET and others applying and installing such material;

(i)     Defendants, their "alternate entities", and each of them, when under a duty to so disclose, concealed from Plaintiffs' Decedent RICHARD DOUCET the true nature of the industrial exposure of Plaintiffs' Decedent RICHARD DOUCET and knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer.  Defendants, their "alternate entities", and each of them, also concealed from Plaintiffs' Decedent RICHARD DOUCET and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiffs' Decedent RICHARD DOUCET so that said physicians could not examine, diagnose, and treat Plaintiffs and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

(k)     Defendants, their "alternate entities", and each of them, failed to provide adequate information to physicians and surgeons retained by Plaintiffs' Decedent RICHARD DOUCET's employers and their predecessor companies, for purposes of making physical examinations of Decedent RICHARD DOUCET and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

41.     Defendants, their "alternate entities", and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Decedent's injuries, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California.  Decedent RICHARD DOUCET was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

42.     Defendants, their "alternate entities", and each of them, having such aforementioned knowledge, and the duty to inform Plaintiffs' Decedent RICHARD DOUCET about the true facts, and knowing that Decedent RICHARD DOUCET did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Plaintiffs' Decedent RICHARD DOUCET to remain unaware of the true facts and to induce Plaintiffs' Decedent RICHARD DOUCET to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

43.     As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiffs' Decedent RICHARD DOUCET sustained the injuries and damages alleged herein.  The herein-described conduct of said Defendants, their "alternate entities", and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as is hereinafter set forth.

### FIFTH CAUSE OF ACTION

#### (Premises Owner/Contractor Liability)

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS INCLUDING DOES 1-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, (hereinafter "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS") AND ALLEGE AS FOLLOWS:

44.     Plaintiffs, by this reference, incorporate the allegations contained in the General Allegations and paragraphs 1-43 of the First Cause of Action herein.

20

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

45.     At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products, and/or toxic substances to be constructed, installed, maintained, used, managed, and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos- and silica-containing products and insulation and other toxic substances. Said defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity", and that each such defendant enjoys the goodwill originally attached to each such "alternate entity".

46.     At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained, managed and/or controlled the following premises decedent RICHARD DOUCET worked and/or was present at as set forth in Exhibit A.

47.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid

21

respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff Decedent RICHARD DOUCET, his family members and other persons exposed to said asbestos and toxic substances while present at said premises.

48.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew or in the exercise or ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff Decedent RICHARD DOUCET, and other workers or persons so exposed, present at each of the aforesaid respective premises.

49.     At all times relevant herein, Plaintiff Decedent RICHARD DOUCET and/or his family members entered said premises and used or occupied each of said respective premises as intended and for each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and invitation.  In so doing, Plaintiff Decedent RICHARD DOUCET was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

50.     Plaintiff's Decedent RICHARD DOUCET at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

51.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, remained in control of the premises where Plaintiff Decedent RICHARD DOUCET's family members were performing their work.

52.     At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS owed to Plaintiff Decedent RICHARD DOUCET, and others similarly situated, a duty to exercise ordinary care in the management of such premises in order to avoid exposing

22

workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said persons.

53.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions; and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

54.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

55.     Prior to and at the times and places aforesaid, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired, and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Plaintiff.

56.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff and others unless special precautions were taken.

57.     In part, Plaintiff's Decedent RICHARD DOUCET was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take the necessary precautions.

///

23

58.   The work of contractors on premises controlled by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS created unsafe premises and an unsafe work place by reason of the release of dangerous quantities of toxic substances including, but not limited to, asbestos.

59.   The unsafe premises or work place was created, in part, by the negligent conduct of the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS. Said negligent conduct includes, but is not limited to:

(a)   Failure to warn of asbestos and other toxic dusts;

(b)   Failure to suppress the asbestos-containing or toxic dusts;

(c)   Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

(d)   Failure to provide adequate breathing protection, i.e., approved respirators or masks;

(e)   Failure to inspect and/or test the air;

(f)   Failure to provide medical monitoring; and

Failure to select and hire a careful and competent contractor or subcontractor.

60.   The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code of Procedure, section 1714, and California Labor Code, section 6400, et seq., or Health and Safety Code, section 40.200, et seq., and regulations promulgated thereunder.   Therefore, the Premises Owner/Contractor Liability Defendants are responsible for any breach of said duties whether by themselves or others.

61.   Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, statutes, and other governmental regulations promulgated by the United States Government, the State of California, and others, including, but not limited to, the General Industry Safety Orders promulgated pursuant to California Labor Code, section 6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including, but not limited to: Title VIII, Group 9 (Control of

24

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

Hazardous Substances), Article 81, sections 4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code, section 40.200, et seq., which empowers the South Coast Area Air Quality Management District to promulgate regulations including, but limited to: S.C.A.A.Q.M.D. Rule 1403; Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions, or contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions. Defendants' violations of said codes include, but are not limited to:

      (a)    Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

      (b)    Failing to segregate work involving the release of asbestos or other toxic dusts;

      (c)    Failing to suppress dust using prescribed ventilation techniques;

      (d)    Failing to suppress dust using prescribed "wet down" techniques;

      (e)    Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

      (f)    Failing to provide approved respiratory protection devices;

      (g)    Failing to ensure "approved" respiratory protection devices were used properly;

      (h)    Failing to provide for an on-going health screening program for those exposed to asbestos on the premises;

      (i)    Failing to provide adequate housekeeping and clean-up of the work place;

      (j)    Failing to properly warn of the hazards associated with asbestos as required by these statutes;

      (k)    Failing to properly report renovation and disturbance of asbestos-containing materials, including, but not limited to: S.C.A.A.Q.M.D. Rule 1403;

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

(l)     Failing to have an asbestos removal supervisor as required by regulation;

(m)    Failing to get approval for renovation as required by statutes; and

(n)    Failing to maintain records as required by statute.

62.    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, were the "statutory employer" of Plaintiff Decedent RICHARD DOUCET and/or his family members as defined in the California Labor Code and California case law.

63.    Plaintiff Decedent RICHARD DOUCET at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances, or statutes.

64.    At all times mentioned herein, Plaintiff Decedent RICHARD DOUCET was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

65.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

66.    As a legal consequence of the foregoing, Plaintiff Decedent RICHARD DOUCET developed an asbestos-related illness, which has caused great injury and disability as previously set forth, and plaintiffs have suffered damages as alleged herein.

67.    The herein-described conduct of said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

## SIXTH CAUSE OF ACTION
### (Loss of Consortium)

AS AND FOR A FURTHER, SIXTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF SUNSOON DOUCET COMPLAINS OF DEFENDANTS, DOES 1-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

68.    Plaintiff SUNSOON DOUCET incorporates by reference, each and every paragraph of the First through Fifth Causes of Action herein.

69.    Subsequent to the injuries and as a proximate result thereof, Plaintiff RICHARD DOUCET became unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home.  As a proximate result thereof, SUNSOON DOUCET has been permanently deprived in the past and will be deprived of the consortium of her spouse, including the performance of household duties and contribution of income, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

70.    As a direct and proximate result of the acts of Defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to Plaintiff RICHARD DOUCET as set forth in this complaint, Plaintiff SUNSOON DOUCET has suffered, and for a long period of time will continue to suffer, loss of consortium, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

Plaintiff SUNSOON DOUCET, individually:

1.    For general damages according to proof;

2.    For pecuniary and economic losses, including loss of income, wages, and support according to proof;

3.    For funeral and burial expenses according to proof;

4.    For damages for loss of consortium, love, companionship, comfort, affection, solace, moral support and/or society according to proof.

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

Plaintiff SUNSOON DOUCET, as successor-in-interest to RICHARD DOUCET:

    5.    For Plaintiffs' Decedent's medical and related expenses according to proof;

    6.    For exemplary or punitive damages according to proof;

    7.    For damages for fraud according to proof;

Plaintiff SUNSOON DOUCET, individually and as successor in interest to RICHARD DOUCET:

    8.    For Plaintiffs' cost of suit herein;

    9.    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED: May 3, 2011                  LAW OFFICE OF MARC I. WILLICK

                                    By: _____

                                         Marc I. Willick
                                         Attorney for Plaintiffs

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand trial by jury as to all issues so triable.

3

4

DATED: May 3, 2011                           LAW OFFICE OF MARC I. WILLICK

5

6

By:_____

7                                          Marc I. Willick
                                           Attorneys for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

## EXHIBIT "A"

Decedent RICHARD DOUCET's exposure to asbestos and asbestos-containing products

occurred at various locations within, among other states, California and at the times set forth below:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Massachusett Maritime Academy | USS Charleston | Cadet | 1951 - 1954 |
| Sun Oil Company | Marcus Hook Pennsylvania | Marine Engineer | September – December 1954 |
| U.S. Navy | USS Los Angeles (CA·135) | Repair Division Officer | January 1955 - June 1957 |
| U.S. Navy | Seven cruises aboard various aircraft carriers in and around maintenance on T-28, T-34, A1 Skyraider, F9F Cougar and "The Bug Smasher" aircraft. | Fighter Pilot | 1957 - 1978 |

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS

1

## EXHIBIT "B"

2

3          Decedent RICHARD DOUCET's exposure to asbestos and asbestos-containing products

caused severe and permanent injury to the Plaintiff including, but not limited to, breathing difficulties,

4

asbestosis, pleural plaques, lung cancer, and/or other cancer and other lung damage.

5

6          Decedent RICHARD DOUCET was diagnosed with lung cancer on or about September

15, 2010.

7

8          Decedent RICHARD DOUCET died from lung cancer on November 5, 2010.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION – ASBESTOS