EAPJ,PHV

## U.S. District Court
## Western District of Missouri (Jefferson City)
## CIVIL DOCKET FOR CASE #: 2:11-cv-04164-NKL
## Internal Use Only

Case et al v. American Standard, Inc. et al
Assigned to: District Judge Nanette K. Laughrey
Demand: $100,000
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 06/21/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**Daniel Fairman Case**

represented by **Sharon J. Zinns**
800 Third Ave.
New York, NY 10022
(212) 605-6200
Fax: (212) 605-6290
Email: szinns@lpklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wally Bley**
Bley Law Firm, PC
Woodrail Centre, 1000 West Nifong
Building 4, Suite 200
Columbia, MO 65203
(573) 443-8385
Fax: (573) 443-8395
Email: bley@socket.net
*ATTORNEY TO BE NOTICED*

**Mark J. Evans**
Evans & Kuhlman, LLC
105 East 5th Street
Suite 102
Kansas City, MO 64106
(816) 799-0330
Fax: (816) 799-0336
Email: mevans@evanskuhlman.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ivy Ellen Case**

represented by **Sharon J. Zinns**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wally Bley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark J. Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**American Standard, Inc.**
*, Individually and on behalf of its
division the Trane Company*

**Defendant**

**Anvil International Inc.**

**Defendant**

**A.W. Chesterton Co., Inc.**

**Defendant**

**Aurora Pump Company**

**Defendant**

**Bell & Gossett Company**
*a subsidiary of ITT Industries*

**Defendant**

**Borg Warner Corporation**

**Defendant**

**Buffalo Pumps**
*Division of Air & Liquid Systems
Corporation by merger*

**Defendant**

**Carrier Corporation**

**Defendant**

**Case Corporation**
*Individually and as Successor to New
Holland and International Harvester*

**Defendant**

**CBS Corporation**
*f/k/a Viacom, Inc., successor by merger
to CBC Corporation, f/k/a
Westinghouse Electric Corporation*

**Defendant**
**Cleaver-Brooks, Inc.**

**Defendant**
**Crane Co.**

**Defendant**
**Crane Pumps & Systems, Inc.**

**Defendant**
**Elliot Turbomachinery Co.**

**Defendant**
**FMC Corporation**
*On behalf of its former Peerless Pumps*

**Defendant**
**Ford Motor Company**

**Defendant**
**Foster Wheeler Energy Corp.**

**Defendant**
**Gardner Denver, Inc.**

**Defendant**
**General Electric Company**

**Defendant**
**Genuine Parts Company**

**Defendant**
**Goulds Pumps Incorporated**

**Defendant**
**Honeywell International, Inc.**
*f/k/a Alliedsignal, Inc., as successor-in-
interest to The Bendix Corporation*

**Defendant**
**Howden Buffalo, Inc.**

**Defendant**
**IMO Industries, Inc.**

**Defendant**
**Ingersoll-Rand Company**

**Defendant**
**ITT Industries, Inc.**

**Defendant**
**Jenkins Bros. Valves**

**Defendant**
**Maremont Corporation**

**Defendant**
**The Nash Engineering Company**

**Defendant**
**National Automotive Parts**
**Association**

**Defendant**
**Peerless Pumps**

**Defendant**
**Sterling Fluid Systems USA, LLC**
*formerly known as Peerless Pump*
*Company*

**Defendant**
**The Trane Company**

**Defendant**
**Tyco Flow Control, Inc.**

**Defendant**
**Union Carbide Corporation**

**Defendant**
**Velan Valve Corporation**

**Defendant**
**Viking Pump Co., Inc.**

**Defendant**
**Warren Pumps, Inc.**

**Defendant**
**Yarway Corporation**

**Defendant**
**York Industries Inc.**

**Defendant**

**York International**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/21/2011 | 1 | COMPLAINT *alleging tort claims for negligence, strict liability, breach of warranty, fraudulent conduct, malice, and gross negligence, and loss of consortium based on diversity jurisdiction under 28 U.S.C. § 1332 (a) & (b)* against All Defendants filed by Mark J. Evans on behalf of All Plaintiffs. Filing fee $350, receipt number 0866-2751195. Service due by 10/24/2011. (Attachments: # 1 Civil Cover Sheet)(Evans, Mark) (Entered: 06/21/2011) |
| 06/21/2011 | 2 | Motion to allow Sharon J. Zinns to appear pro hac vice (Pro Hac fee $50 receipt number 0866-2751330) filed by Mark J. Evans on behalf of All Plaintiffs. (Evans, Mark) (Entered: 06/21/2011) |
| 06/21/2011 | 3 | ORDER granting 2 motion to appear pro hac vice approved by Clerk of Court. Attorney Sharon J. Zinns for plaintiffs allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney. This is a TEXT ONLY ENTRY. No document is attached.(Bax, Laura) (Entered: 06/21/2011) |
| 06/21/2011 | 4 | Notice of EAP assignment to United States Magistrate Judge Matt J. Whitworth. (Attachments: # 1 General Order)(Bax, Laura) (Entered: 06/21/2011) |
| 06/28/2011 | 5 | ORDER ON PRETRIAL PROCEDURES entered by Judge Nanette Laughrey. Service must be obtained on all defendants within forty (40) days of the date of this Order unless otherwise authorized by the Court. (Kanies, Renea) (Entered: 06/28/2011) |
| 07/01/2011 | | ELECTRONIC SUMMONS ISSUED as to Elliot Turbomachinery Co., FMC Corporation, Ford Motor Company, Foster Wheeler Energy Corp., Gardner Denver, Inc., General Electric Company, Genuine Parts Company, Goulds Pumps Incorporated, Honeywell International, Inc. (Price, Jackie) (Entered: 07/01/2011) |
| 07/01/2011 | | ELECTRONIC SUMMONS ISSUED and emailed to plaintiff's attorney's office as to A.W. Chesterton Co., Inc., American Standard, Inc., Anvil International Inc., Aurora Pump Company, Bell & Gossett Company, Borg Warner Corporation, Buffalo Pumps, CBS Corporation, Carrier Corporation, Case Corporation, Cleaver-Brooks, Inc., Crane Co., Crane Pumps & Systems, Inc., Howden Buffalo, Inc., ITT Industries, Inc., Ingersoll-Rand Company, Jenkins Bros. Valves, Maremont Corporation, National Automotive Parts Association, Peerless Pumps, Sterling Fluid Systems USA, LLC, The Nash Engineering Company, The Trane Company, Tyco Flow Control, Inc., Union Carbide Corporation, Velan Valve Corporation, Viking Pump Co., Inc., Warren Pumps, Inc., Yarway Corporation, York Industries Inc., York International. (Russel, Jeri) (Entered: 07/01/2011) |
| 07/18/2011 | | SUMMONS ISSUED as to IMO Industries, Inc. (James, Carrie) (Entered: |

| | | 07/18/2011) | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

DANIEL FAIRMAN CASE and                    )
IVY ELLEN CASE,                            )
                                           )
      Plaintiffs,                      )    Civil Case No.: 2:11-cv-4164
                                           )
vs.                                        )    **COMPLAINT**
                                           )
AMERICAN STANDARD, INC., Individually      )
and on behalf of its division The Trane Company; )
ANVIL INTERNATIONAL INC.;                  )
A.W. CHESTERTON CO., INC.,                 )
AURORA PUMP COMPANY;                       )
BELL & GOSSETT COMPANY, a subsidiary       )
of ITT Industries;                         )
BORG WARNER CORPORATION;                   )
BUFFALO PUMPS,                             )
Division of Air & Liquid Systems Corporation )
by merger;                                 )
CARRIER CORPORATION;                       )
CASE CORPORATION,                          )
Individually and as Successor to New Holland )
and International Harvester;                )
CBS CORPORATION, f/k/a Viacom, Inc.,       )
successor by merger to CBS Corporation, f/k/a )
Westinghouse Electric Corporation;         )
CLEAVER-BROOKS INC.;                       )
CRANE CO.;                                 )
CRANE PUMPS & SYSTEMS, INC.;               )
ELLIOTT TURBOMACHINERY CO.;                )
FMC CORPORATION,                           )
on behalf of its former Peerless Pumps;    )
FORD MOTOR COMPANY;                        )
FOSTER WHEELER ENERGY CORP.;               )
GARDNER DENVER, INC.;                      )
GENERAL ELECTRIC COMPANY;                  )
GENUINE PARTS COMPANY;                     )
GOULDS PUMPS INCORPORATED;                 )
HONEYWELL INTERNATIONAL, INC.              )
f/k/a Alliedsignal, Inc., as successor-in-interest )
to The Bendix Corporation;                 )
HOWDEN BUFFALO INC.;                       )
IMO INDUSTRIES, INC.;                      )

| | |
|---|---|
| INGERSOLL-RAND COMPANY; | ) |
| ITT INDUSTRIES, INC.; | ) |
| JENKINS BROS. VALVES; | ) |
| MAREMONT CORPORATION; | ) |
| THE NASH ENGINEERING COMPANY; | ) |
| NATIONAL AUTOMOTIVE PARTS | ) |
| ASSOCIATION; | ) |
| PEERLESS PUMPS; | ) |
| STERLING FLUID SYSTEMS USA, LLC, | ) |
| formerly known as PEERLESS PUMP | ) |
| COMPANY; | ) |
| THE TRANE COMPANY; | ) |
| TYCO FLOW CONTROL, INC.; | ) |
| UNION CARBIDE CORPORATION; | )   **Plaintiff demands a trial by jury** |
| VELAN VALVE CORPORATION; | ) |
| VIKING PUMP CO., INC.; | ) |
| WARREN PUMPS, INC.; | ) |
| YARWAY CORPORATION; | ) |
| YORK INDUSTRIES INC.; | ) |
| YORK INTERNATIONAL, | ) |

Defendants.

## COMPLAINT FOR NEGLIGENCE, STRICT PRODUCT LIABILITY, BREACH OF WARRANTY, FRAUDULENT CONDUCT, MALICE AND GROSS NEGLIGENCE, AND LOSS OF CONSORTIUM

Plaintiffs, as and for their Complaint, by their attorneys, BLEY & EVANS, LC, and

LEVY PHILLIPS & KONIGSBERG LLP, respectfully allege as follows:

### JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332 (a), as

the matter in controversy exceeds $75,000 exclusive of interests and costs; and (b) the matter is

between citizens of different states.

2.     Venue is proper under 28 U.S.C. §1391 (a)(3) because at least one defendant is

subject to Personal Jurisdiction in this district.

## THE PARTIES

### I.     THE PLAINTIFFS

3.     Plaintiff DANIEL FAIRMAN CASE resides in Ashland, Missouri.  He is a citizen of the State of Missouri.  DANIEL FAIRMAN CASE was born on March 19, 1947.

4.     Plaintiff DANIEL FAIRMAN CASE is married to Plaintiff IVY ELLEN CASE. Plaintiff IVY ELLEN CASE resides in Ashland, Missouri.  She is a citizen of the State of Missouri. IVY ELLEN CASE was born on April 30, 1954.

### II.    THE DEFENDANTS

5.     Upon information and belief, and at all times hereinafter mentioned, American Standard, Inc., individually and on behalf of its division The Trane Company (hereinafter "**American Standard**") is a New Jersey business entity with its principal place of business located in New Jersey.  For the purposes of this Complaint, American Standard shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, American Standard: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the  State of Missouri; and (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, American Standard designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

6.     Upon information and belief, and at all times hereinafter mentioned, Anvil International, Inc., (hereinafter "**Anvil**") is a New Hampshire business entity with its principal

place of business located in New Hampshire. For the purposes of this Complaint, Anvil shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Anvil: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; and (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Anvil designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

7.      Upon information and belief, and at all times hereinafter mentioned, A.W. Chesterton Co., Inc., (hereinafter "**A.W. Chesterton**") is a Massachusetts business entity with its principal place of business located in Massachusetts. For the purposes of this Complaint, A.W. Chesterton shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, A.W. Chesterton: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; and (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, A.W. Chesterton designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

8.    Upon information and belief, and at all times hereinafter mentioned, Aurora Pump Company, (hereinafter "**Aurora**") is a North Carolina business entity with its principal place of business located in North Carolina. For the purposes of this Complaint, Aurora shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Aurora expected or should have expected its acts to have consequences within the State of New York and derives substantial revenue from interstate and/or international commerce. At all relevant times, Aurora designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

9.    Upon information and belief, and at all times hereinafter mentioned, Bell & Gossett Company, a subsidiary of ITT Industries (hereinafter "**Bell & Gossett**") is a Illinois business entity with its principal place of business located in Illinois. For the purposes of this Complaint, Bell & Gossett shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Bell & Gossett expected or should have expected its acts to have consequences within the State of New York and derives substantial revenue from interstate and/or international commerce. At all relevant times, Bell & Gossett designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

10.   Upon information and belief, and at all times hereinafter mentioned, Borg Warner Corporation, (hereinafter "**Borg Warner**") is an Michigan business entity with its principal place of business located in Michigan. For the purposes of this Complaint, Borg Warner shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Borg Warner: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b)

in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the  State of Missouri; and (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Borg Warner designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

11.     Upon information and belief, and at all times hereinafter mentioned, Buffalo Pumps, Division of Air & Liquid Systems Corporation by merger (hereinafter "**Buffalo Pumps**") is a New York business entity with its principal place of business located in New York. For the purposes of this Complaint, Buffalo Pumps shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Buffalo Pumps expected or should have expected its acts to have consequences within the State of New York and derives substantial revenue from interstate and/or international commerce. At all relevant times, Buffalo Pumps designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

12.     Upon information and belief, and at all times hereinafter mentioned, Carrier Corporation, (hereinafter "**Carrier**") is a Connecticut business entity with its principal place of business located in Connecticut.  For the purposes of this Complaint, Carrier shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Carrier: (a) was and still is a foreign corporation, duly authorized to do business in the State of  Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or

consumed in the  State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Carrier designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

13. Upon information and belief, and at all times hereinafter mentioned, Case Corporation, Individually and as Successor to New Holland and International Harvester (hereinafter "**Case**") is a New York business entity with its principal place of business located in New York. For the purposes of this Complaint, Case shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Case expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Case designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

14. Upon information and belief, and at all times hereinafter mentioned, CBS Corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation (hereinafter "**CBS**") is currently a Pennsylvania corporation with its principal place of business located in Pennsylvania. For the purposes of this Complaint, CBS shall include the present corporation, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, CBS: (a) was and still is a foreign corporation, duly authorized to do business in the State of  Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the  State of Missouri; and (e) expected or should have expected its acts to have

consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, CBS designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

15.     Upon information and belief, and at all times hereinafter mentioned, Cleaver-Brooks, Inc. (hereinafter "**Cleaver-Brooks**") is a Wisconsin business entity with its principal place of business located in Wisconsin. For the purposes of this Complaint, Cleaver-Brooks shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Cleaver-Brooks: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; and (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Cleaver-Brooks designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

16.     Upon information and belief, and at all times hereinafter mentioned, Crane Co. (hereinafter "**Crane**") is a New York business entity with its principal place of business located in New York. For the purposes of this Complaint, Crane shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Crane: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of

Missouri; and (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Crane designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

17.     Upon information and belief, and at all times hereinafter mentioned, Crane Pumps & Systems, Inc. (hereinafter "**Crane Pumps**") is an Ohio business entity with its principal place of business located in Ohio. For the purposes of this Complaint, Crane Pumps shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Crane Pumps expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Crane Pumps designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

18.     Upon information and belief, and at all times hereinafter mentioned, Elliott Turbomachinery Co. (hereinafter "**Elliott**") is a Pennsylvania business entity with its principal place of business located in Pennsylvania. For the purposes of this Complaint, Crane shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Crane: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; and (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or

9

international commerce. At all relevant times, Crane designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

19.     Upon information and belief, and at all times hereinafter mentioned, FMC Corporation, on behalf of its former Peerless Pumps (hereinafter "**FMC**") is a Pennsylvania business entity with its principal place of business located in Pennsylvania. For the purposes of this Complaint, FMC shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, FMC: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the  State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, FMC designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

20.     Upon information and belief, and at all times hereinafter mentioned, Ford Motor Company (hereinafter "**Ford**") is currently a Michigan corporation with its principal place of business located in Michigan. For the purposes of this Complaint, Ford shall include the present corporation, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Ford: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; (e) expected or should have expected its acts to have consequences within the

State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Ford designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

21.     Upon information and belief, and at all times hereinafter mentioned, Foster Wheeler Energy Corporation (hereinafter "**Foster Wheeler**") is a New Jersey business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, Foster Wheeler shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Foster Wheeler: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Foster Wheeler designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

22.     Upon information and belief, and at all times hereinafter mentioned, Gardner Denver, Inc. (hereinafter "**Gardner Denver**") is a Pennsylvania business entity with its principal place of business located in Pennsylvania. For the purposes of this Complaint, Gardner Denver shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Gardner Denver: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c)

regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Gardner Denver designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

23.     Upon information and belief, and at all times hereinafter mentioned, General Electric Company (hereinafter "**General Electric**") is a Massachusetts business entity with its principal place of business located in Massachusetts.  For the purposes of this Complaint, General Electric shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, General Electric: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, General Electric designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

24.     Upon information and belief, and at all times hereinafter mentioned, Genuine Parts Company (hereinafter "**Genuine Parts**") is a Georgia business entity with its principal place of business located in Georgia.  For the purposes of this Complaint, Genuine Parts shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Genuine Parts:

(a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Genuine Parts designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

      25.     Upon information and belief, and at all times hereinafter mentioned, Goulds Pumps Incorporated (hereinafter "**Goulds Pumps**") is a New York business entity with its principal place of business located in New York. For the purposes of this Complaint, Goulds Pumps shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Goulds Pumps: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Goulds Pumps designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

      26.     Upon information and belief, and at all times hereinafter mentioned, Honeywell International, Inc. f/k/a Alliedsignal, Inc., as successor-in-interest to The Bendix Corporation (hereinafter "**Honeywell**") is a New Jersey business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, Honeywell shall include the present

business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Honeywell: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the   State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Honeywell designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

27.     Upon information and belief, and at all times hereinafter mentioned, Howden Buffalo, Inc. (hereinafter "**Howden Buffalo**") is a South Carolina business entity with its principal place of business located in South Carolina.  For the purposes of this Complaint, Howden Buffalo shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Howden Buffalo expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Howden Buffalo designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

28.     Upon information and belief, and at all times hereinafter mentioned, IMO Industries, Inc. (hereinafter "**IMO**") is a North Carolina business entity with its principal place of business located in North Carolina.  For the purposes of this Complaint, IMO shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, IMO expected or should

14

have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, IMO designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

29.     Upon information and belief, and at all times hereinafter mentioned, Ingersoll-Rand Company (hereinafter "**Ingersoll-Rand**") is a New Jersey business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, Ingersoll-Rand shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Ingersoll-Rand: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the  State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Ingersoll-Rand designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

30.     Upon information and belief, and at all times hereinafter mentioned, ITT Industries, Inc. (hereinafter "**ITT**") is a New York business entity with its principal place of business located in New York. For the purposes of this Complaint, ITT shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, ITT: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the

State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, ITT designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

31.     Upon information and belief, and at all times hereinafter mentioned, Jenkins Bros. Valves (hereinafter "**Jenkins Bros.**") is a Connecticut business entity with its principal place of business located in Connecticut.  For the purposes of this Complaint, Jenkins Bros. shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Jenkins Bros. expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Jenkins Bros. designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

32.     Upon information and belief, and at all times hereinafter mentioned, Maremont Corporation (hereinafter "**Maremont**") is a Delaware business entity with its principal place of business located in Delaware.  For the purposes of this Complaint, Maremont shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Maremont: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the  State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or

international commerce. At all relevant times, Maremont designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

33.     Upon information and belief, and at all times hereinafter mentioned, The Nash Engineering Company (hereinafter "**Nash**") is a Maine business entity with its principal place of business located in Maine. For the purposes of this Complaint, Nash shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Nash expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Nash designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

34.     Upon information and belief, and at all times hereinafter mentioned, National Automotive Parts Association (hereinafter "**NAPA**") is a Georgia business entity with its principal place of business located in Georgia. For the purposes of this Complaint, NAPA shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, NAPA expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, NAPA designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

35.     Upon information and belief, and at all times hereinafter mentioned, Peerless Pumps (hereinafter "**Peerless**") is an Indiana business entity with its principal place of business located in Indiana. For the purposes of this Complaint, Peerless shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Peerless expected or should have

expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Peerless designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

36.     Upon information and belief, and at all times hereinafter mentioned, Sterling Fluid Systems USA, LLC, formerly known as Peerless Pump Company (hereinafter "**Sterling**") is an Indiana business entity with its principal place of business located in Indiana.  For the purposes of this Complaint, Sterling shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Sterling expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Sterling designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

37.     Upon information and belief, and at all times hereinafter mentioned, The Trane Company (hereinafter "**Trane**") is a New Jersey business entity with its principal place of business located in New Jersey.  For the purposes of this Complaint, Trane shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Trane: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the  State of Missouri; and (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or

international commerce. At all relevant times, Trane designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

38.     Upon information and belief, and at all times hereinafter mentioned, Tyco Flow Control, Inc. (hereinafter "**Tyco**") is a New Jersey business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, Tyco shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Tyco expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Tyco designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

39.     Upon information and belief, and at all times hereinafter mentioned, Union Carbide Corporation (hereinafter "**Union Carbide**") is a New York business entity with its principal place of business located in New York. For the purposes of this Complaint, Union Carbide shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Union Carbide: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Union Carbide designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

40.     Upon information and belief, and at all times hereinafter mentioned, Velan Valve Corporation (hereinafter **"Velan"**) is a Vermont business entity with its principal place of business located in Vermont. For the purposes of this Complaint, Velan shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Velan expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Velan designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

41.     Upon information and belief, and at all times hereinafter mentioned, Viking Pump Co., Inc. (hereinafter **"Viking"**) is an Iowa business entity with its principal place of business located in Iowa. For the purposes of this Complaint, Viking shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Viking expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Viking designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

42.     Upon information and belief, and at all times hereinafter mentioned, Warren Pumps, Inc. (hereinafter **"Warren"**) is a Massachusetts business entity with its principal place of business located in Massachusetts. For the purposes of this Complaint, Warren shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Warren expected or should have expected its acts to have consequences within the State of Missouri and derives substantial

revenue from interstate and/or international commerce. At all relevant times, Warren designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

43.    Upon information and belief, and at all times hereinafter mentioned, Yarway Corporation (hereinafter "**Yarway**") is a Texas business entity with its principal place of business located in Texas. For the purposes of this Complaint, Yarway shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, Yarway expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, Yarway designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

44.    Upon information and belief, and at all times hereinafter mentioned, York Industries, Inc. (hereinafter "**York Industries**") is a New Jersey business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, York Industries shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, York Industries expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, York Industries designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

45.    Upon information and belief, and at all times hereinafter mentioned, **York International** is a Pennsylvania business entity with its principal place of business located in Pennsylvania. For the purposes of this Complaint, York International shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon

information and belief and at all times hereinafter mentioned, York International: (a) was and still is a foreign corporation, duly authorized to do business in the State of Missouri; (b) in person or through an agent, transacts business in the State of Missouri; (c) regularly does and/or solicits business within the State of Missouri; (d) derives substantial revenue from goods used or consumed in the State of Missouri; (e) expected or should have expected its acts to have consequences within the State of Missouri and derives substantial revenue from interstate and/or international commerce. At all relevant times, York International designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

46.     All Defendants herein were, at all times pertinent, directly or indirectly engaged in the specification, mining, manufacturing, distribution, sales, licensing, leasing, installation, removal or use of asbestos, asbestos-containing products, products designed to be used with asbestos-containing products, and/or products that it was foreseeable would be used with asbestos-containing products. They were also engaged in the development, manufacture, distribution, sales, licensing or leasing of equipment, procedures, or technology necessary to mine, manufacture, sell, distribute, install, remove and use asbestos and asbestos-containing products.

## NATURE OF THE CASE

47.     Plaintiff DANIEL FAIRMAN CASE is 64 years old, a resident of Missouri, and suffers from mesothelioma, a cancer linked to asbestos exposure.

48.     Plaintiff IVY ELLEN CASE is 57 years old, a resident of Missouri, and is married to Plaintiff DANIEL FAIRMAN CASE.

49.     Plaintiff DANIEL FAIRMAN CASE was diagnosed with mesothelioma, a cancer caused by exposure to asbestos, in approximately May of 2011.

50. As a proximate result of defendants' misconduct, which is detailed below, Plaintiff DANIEL FAIRMAN CASE has developed mesothelioma; he has endured, and will continue to endure rounds of debilitating cancer treatments and medical procedures; he has experienced, and will experience, physical pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, disabilities, and loss of bodily functions; he has incurred, and will continue to incur medical expenses; and he has suffered from any and all other damages associated with the diagnosis, treatment, and medical course of his cancer and has otherwise suffered injury and damages. Plaintiff DANIEL FAIRMAN CASE has incurred and will continue to incur substantial loss of income.

51. Plaintiffs DANIEL FAIRMAN CASE and IVY ELLEN CASE have filed this lawsuit to recover compensatory and punitive damages against various defendants.

52. DANIEL FAIRMAN CASE was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, emanating from certain products he was working with and around, as described below:

    a. Upon information and belief, DANIEL FAIRMAN CASE was exposed to asbestos occupationally in the course of his employment in the U.S. Navy from approximately 1967 through approximately 1971. DANIEL FAIRMAN CASE served as an electronics technician and nuclear operator and was exposed to the following asbestos-containing materials, including, but not limited to: boilers and boiler components and parts; pumps; gaskets; valves; forced air blowers; soot blowers; packing materials; turbines; reduction gears; heat exchangers; exhausts; steam traps; generators; compressors; insulation; and other related ship equipment.

    b. Upon information and belief, DANIEL FAIRMAN CASE was further exposed to asbestos as he performed automotive repair work both occupationally and non-occupationally from approximately 1970 to the present. DANIEL FAIRMAN CASE was exposed to the following asbestos-containing materials, including, but not limited to: brakes; brake shoes; brake pads; brake linings; brake drums; mufflers; engines; clutches; and gaskets.

      c.     DANIEL FAIRMAN CASE may have been further exposed to asbestos in such a manner as further investigation and/or discovery may uncover.

      53.    DANIEL FAIRMAN CASE was exposed to asbestos, asbestos-containing products, products designed to be used with asbestos-containing products, and/or products that it was foreseeable would be used with asbestos-containing products, which were manufactured, sold, distributed, installed or utilized by the Defendants: AMERICAN STANDARD, INC., Individually and on behalf of its division The Trane Company; ANVIL INTERNATIONAL INC.; A.W. CHESTERTON CO., INC.; AURORA PUMP COMPANY; BELL & GOSSETT COMPANY, a subsidiary of ITT Industries; BORG WARNER CORPORATION; BUFFALO PUMPS, Division of Air & Liquid Systems Corporation  by merger; CARRIER CORPORATION; CASE CORPORATION, Individually and as Successor to New Holland and International Harvester; CBS CORPORATION, f/k/a Viacom, Inc., successor by merger to CBS Corporation, f/k/a  Westinghouse Electric Corporation; CLEAVER-BROOKS INC.; CRANE CO.; CRANE PUMPS & SYSTEMS, INC.; ELLIOTT TURBOMACHINERY CO.; FMC CORPORATION, on behalf of its former Peerless Pumps; FORD MOTOR COMPANY; FOSTER WHEELER ENERGY CORP.; GARDNER DENVER, INC.; GENERAL ELECTRIC COMPANY; GENUINE PARTS COMPANY; GOULDS PUMPS INCORPORATED; HONEYWELL INTERNATIONAL, INC. f/k/a Alliedsignal, Inc., as successor-in-interest to The Bendix Corporation; HOWDEN BUFFALO INC.; IMO INDUSTRIES, INC.; INGERSOLL-RAND COMPANY; ITT INDUSTRIES, INC.; JENKINS BROS. VALVES; MAREMONT CORPORATION; THE NASH ENGINEERING COMPANY; NATIONAL AUTOMOTIVE PARTS ASSOCIATION; PEERLESS PUMPS; STERLING FLUID SYSTEMS USA, LLC, formerly known as PEERLESS PUMP COMPANY; THE TRANE

COMPANY; TYCO FLOW CONTROL, INC.; UNION CARBIDE CORPORATION; VELAN VALVE CORPORATION; VIKING PUMP CO., INC.; WARREN PUMPS, INC.; and YARWAY CORPORATION; YORK INDUSTRIES INC.; and YORK INTERNATIONAL.

54. At all times herein set forth, the Defendants' products were being employed in the manner and for the purposes for which they were intended.

55. DANIEL FAIRMAN CASE's exposure to and inhalation, ingestion or absorption of asbestos fibers emanating from the use of the above-mentioned products was completely foreseeable and could or should have been anticipated by the Defendants.

56. The Defendants knew or should have known that the asbestos fibers contained in their products and/or the products with which their products were designed to be used had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

57. DANIEL FAIRMAN CASE suffers from an asbestos-related disease(s), including, but not limited to malignant mesothelioma. DANIEL FAIRMAN CASE first became aware that he suffers from said disease(s) in approximately May 2011 and subsequently thereto, became aware that the same was wrongfully caused. As a result of developing mesothelioma, DANIEL FAIRMAN CASE has endured, and will endure, great physical pain and suffering, mental anguish and emotional pain and suffering. Further, as a result of Defendants' wrongful conduct, DANIEL FAIRMAN CASE has received medical treatment for his asbestos related disease, incurring reasonable and necessary costs for medical care, diagnosis and treatment.

## COUNT I

## NEGLIGENCE

58.     The allegations in paragraphs One (1) through Fifty-Seven (57) above are realleged and incorporated by reference within this Count.

59.     At all times herein relevant, the Defendants had a duty to exercise reasonable care and caution for the safety of DANIEL FAIRMAN CASE and others working with and around the Defendants' asbestos-containing products.

60.     Defendants negligently produced, sold, supplied or otherwise put into the stream of commerce asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products.

61.     The Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

62.     As a designer, developer, manufacturer, distributor, supplier and seller of the above-described asbestos and asbestos-containing products, and/or machinery requiring the use of asbestos and/or asbestos-containing products, and Defendants owe a duty to foreseeable users and handlers of said products, to use ordinary care in designing, manufacturing, marketing, supplying and selling said products in such a manner as to render them safe for their intended and foreseeable users.

63.     The Defendants were negligent in that they failed to exercise ordinary care and caution for the safety of DANIEL FAIRMAN CASE in one or more of the following respects:

       a.     Included asbestos in their products when the Defendants knew or should have known that said asbestos would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

b. Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as DANIEL FAIRMAN CASE, working with or around them, would inhale, ingest or otherwise absorb asbestos;

c. Included asbestos in their products when adequate substitutes for the asbestos were available;

d. Failed to provide any or adequate warnings to persons working with and around their products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

e. Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

f. Failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as DANIEL FAIRMAN CASE might be exposed while working with or around the products; and,

g. Designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

64.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions on the part of the Defendants, DANIEL FAIRMAN CASE was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing DANIEL FAIRMAN CASE to develop the aforesaid asbestos disease, which disabled and disfigured DANIEL FAIRMAN CASE; DANIEL FAIRMAN CASE has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; DANIEL FAIRMAN CASE has in the past and will in the future experience great physical pain and mental anguish as

a result of his asbestos-induced disease and conditions. Plaintiff DANIEL FAIRMAN CASE has incurred and will continue to incur substantial loss of income.

## COUNT II

### STRICT PRODUCT LIABILITY

65.   The allegations in paragraphs One (1) through Sixty-Four (64) above are realleged and incorporated by reference within this Count.

66.   The Defendants placed their asbestos and asbestos-containing products on the market and knew or should have known they would be used without inspection for defects.

67.   Defendants failed to design, manufacture, market, distribute, supply and sell asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products in such a manner as to render them safe for their intended and foreseeable uses. By way of example and not limitation, Defendants:

   a.   Failed to design, develop, manufacture and test the asbestos, asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products in such a manner as to render them safe for their intended and foreseeable users, when Defendants knew or should have known that the foreseeable use of intended purpose of its products was by persons, specifically Plaintiff DANIEL FAIRMAN CASE, who worked with and around said products;

   b.   Marketed and sold said products while the same was in an unreasonably dangerous and defective condition, presenting a hazardous risk to Plaintiff DANIEL FAIRMAN CASE'S well-being;

   c.   Failed to recall or attempt to repair the defective products when Defendants were and had been aware of the propensity of said products to injure Plaintiff DANIEL FAIRMAN CASE;

   d.   Failed to properly test said products to ensure that they were reasonably safe for use throughout their product lifetime.

68.     Moreover, when Defendants' asbestos and asbestos-containing products left the Defendants' possession and were placed on the market, the products were defective and unreasonably dangerous, in that:

    a.    When used in the intended or reasonably foreseeable manner, the products were not reasonably safe for their intended use;

    b.    When used in the intended or reasonably foreseeable manner, the products failed to perform as safely as would be expected by an ordinary user or consumer;

    c.    When used in the intended or reasonably foreseeable manner, the products caused a risk of harm beyond that which would be contemplated by the ordinary user or consumer.

69.     Defendants violated the requirements of Section 402A of the Restatement of Torts, 2d, all of which proximately resulted in Plaintiff DANIEL FAIRMAN CASE's asbestos-related disease.

70.     Additionally, although Defendants knew or, in the exercise of ordinary care, should have known that their asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products were deleterious, and highly harmful to Plaintiff DANIEL FAIRMAN CASE's health, Defendants nonetheless:

    a.    Failed to advise or warn Plaintiff DANIEL FAIRMAN CASE of the dangerous characteristics of their asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products;

    b.    Failed to provide Plaintiff DANIEL FAIRMAN CASE with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliance, if any, to protect Plaintiff DANIEL FAIRMAN CASE from being harmed by exposure to asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products;

        c.      Failed to place any warnings on containers of said asbestos and asbestos-containing products alerting Plaintiff DANIEL FAIRMAN CASE of the dangers to health caused by contact with asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products;

        d.      Failed to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and/or a safe method of handling and installing asbestos and asbestos-containing products, or utilizing the machinery requiring the use of asbestos and/or asbestos-containing products in a safe manner.

71.     Defendants' products were also defective due to inadequate warning or instruction during and after the time of marketing in that Defendants knew, or in the exercise of reasonable care, should have known about the risks associated with their products and failed to provide reasonable and/or adequate warning or instruction in light of the likelihood that the asbestos, asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products would cause serious physical harm to Plaintiff DANIEL FAIRMAN CASE.

72.     As a direct and proximate result of using Defendants' asbestos and asbestos-containing products for the general purpose for which they were designed and intended, DANIEL FAIRMAN CASE was exposed to asbestos, contracted mesothelioma and has suffered and continues to suffer the injuries and damages set forth herein.

73.     Accordingly, Defendants are strictly liable to Plaintiffs DANIEL FAIRMAN CASE and IVY ELLEN CASE for their failure to warn, and for defective design and manufacture and/or marketing, distributing, supplying and selling a defective product.

## COUNT III

## BREACH OF WARRANTY

74.     The allegations in paragraph One (1) through Seventy-Three (73) above are realleged and incorporated by reference within this Count.

75.     Defendants caused Plaintiff's injuries and damages as stated above by manufacturing, selling, installing, and distributing asbestos-containing products and raw materials which failed to meet express and implied warranties of merchantability and fitness for intended purposes upon which Plaintiff had a right to rely and did rely.

76.     As a direct and proximate result of the breaches of these warranties, DANIEL FAIRMAN CASE was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing DANIEL FAIRMAN CASE to develop the aforesaid asbestos disease, which disabled and disfigured DANIEL FAIRMAN CASE; DANIEL FAIRMAN CASE has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; DANIEL FAIRMAN CASE has in the past and will in the future experience great physical pain and mental anguish as a result of his asbestos-induced disease and conditions. Plaintiff DANIEL FAIRMAN CASE has incurred and will continue to incur substantial loss of income.  Defendants are liable to Plaintiff for his damages.

## COUNT IV

### FRAUDULENT CONDUCT, MALICE AND GROSS NEGLIGENCE

77.     The allegations in paragraph One (1) through Seventy-Six (76) above are realleged and incorporated by reference within this Count.

78.     The Defendants had a duty to refrain from gross negligence, fraud and/or malicious acts or omissions which would harm DANIEL FAIRMAN CASE.

79.     Defendants are guilty of one or more of the following acts or omissions amounting to fraudulent misconduct, malice and gross negligent:

        a.     Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, included asbestos in their products, even though it was

31

completely foreseeable and could or should have been anticipated that persons such as DANIEL FAIRMAN CASE working with or around their products would inhale, ingest or otherwise absorb asbestos;

b. Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of person inhaling, ingesting or otherwise absorbing them;

c. Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, included asbestos in their products when adequate substitutes for the asbestos in them was available;

d. Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, removed any warnings regarding the dangers of asbestos from the packaging of asbestos-containing products supplied to persons working with an around the products and using the products in their intended and/or reasonably foreseeable manner;

e. Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, failed to provide any or adequate warnings to persons working with and around their products of the dangers of inhaling, ingesting or otherwise absorbing asbestos fibers in them;

f. Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, failed to provide any or adequate instructions concerning the safe methods of working with and around their products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

g. Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as DANIEL FAIRMAN CASE might be exposed while working with and around the products;

h. Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, failed to adequately label, warn, package, market, distribute, install, remove, or use asbestos in a reasonable manner which would minimize or eliminate the escape of asbestos dust fibers, thereby adding to the exposure of DANIEL FAIRMAN CASE and others similarly situated;

i.     Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, failed to take adequate steps to remedy the above failures, including but not limited to: (1) failure to recall or require removal of asbestos and asbestos products; coupled with (2) ongoing failure to conduct research as to how to cure or minimize asbestos injuries and how to use, install, or distribute asbestos so as to render it safe; and (3) failure to promptly and safely remove the asbestos now in place; and

j.     Intentionally or with gross negligence for the safety of DANIEL FAIRMAN CASE, designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

80.    As a direct and proximate result of one or more of the foregoing actions and/or omissions of Defendants, DANIEL FAIRMAN CASE was exposed to asbestos, has contracted mesothelioma and has suffered and continues to suffer the injuries and damages as described herein.

81.    Defendants' actions, as stated herein, constitute a flagrant disregard for the rights and safety of Plaintiff and by engaging in such actions, Defendants acted with gross negligence, fraud, recklessness, willfulness, wantonness and/or malice and should be held liable in punitive and exemplary damages to Plaintiffs DANIEL FAIRMAN CASE and IVY ELLEN CASE.

## COUNT V

### LOSS OF CONSORTIUM

82.    The allegations in paragraphs One (1) through Eighty-One (81) above are realleged and incorporated by reference within this Count.

83.    Plaintiff DANIEL FAIRMAN CASE is married to Plaintiff IVY ELLEN CASE. As a result of Defendants' wrongful conduct which caused her husband's above stated asbestos-related disease, Plaintiff IVY ELLEN CASE has suffered and will continue in the future

to suffer a loss of the support, consortium and society of her husband, together with related mental anguish and pain and suffering.

**WHEREFORE,** Plaintiffs, as a direct and proximate result of the negligence and conduct of each Defendant, have suffered and will continue to suffer great pain and severe mental anguish.

Plaintiffs, as a direct and proximate result of the negligence or other conduct of Defendants, have incurred expenses for medical, and/or hospital, and/or pharmaceutical, and/or surgical care and/or other expenses in an amount not yet determined, and will continue to incur such expenses into the future.

Plaintiffs, as a direct and proximate result of the negligence and other conditions of Defendants, have suffered economic damages and will continue to suffer them throughout their lifetimes.

The aforesaid acts and/or omissions of Defendants were grossly negligent, fraudulent and malicious.

Plaintiffs demand judgment against Defendants jointly and severally in an amount in excess of One Hundred Thousand Dollars ($100,000.00); punitive damages in an amount sufficient to punish Defendants for their misconduct and to deter similarly situated parties from committing like acts of misconduct in the future; and such other and further relief that this Court deems appropriate.

A trial by jury is hereby demanded as to all counts.

[SIGNATURE ON NEXT PAGE]

Respectfully submitted,

BLEY & EVANS, LC

BY:___s/Mark J. Evans_____
     Wally Bley, Esq. (#28657)
     Mark J. Evans, Esq. (#39050)
     1000 West Nifong Blvd., Bldg 4, Suite 200
     Columbia, MO 65203
     Telephone: (573) 355-5624
     Fax: (573) 443-8395
     Bley@bleyevanslaw.com
     Evans@bleyevanslaw.com

     and

     LEVY PHILLIPS & KONIGSBERG, LLP

BY:___s/Sharon J. Zinns_____
     Sharon J. Zinns, Esq. (SZ9280)
     800 Third Avenue
     New York, NY 10022
     Telephone: (212) 605-6200
     Fax: (212) 605-6290

     Attorneys for Plaintiff

Dated: June 21, 2011