# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: 1:11-cv-00279-S -LDA

St. Laurent v. A.W. Chesterton, Inc. et al
Assigned to: Judge William E Smith
Referred to: Magistrate Judge Lincoln D. Almond
Cause: 28:1442 Notice of Removal

Date Filed: 07/15/2011
Jury Demand: Defendant
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Rachel St. Laurent**
*Executrix for the Estate of Maurice St. Laurent*

represented by **Vincent L. Greene , IV**
Motley Rice LLC
321 South Main Street
Providence, RI 02903
457-7730
Fax: 457-7708
Email: vgreene@motleyrice.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**A.W. Chesterton, Inc.**

represented by **Brian D. Gross**
Cooley Manion Jones LLP
21 Custom House St.
Boston, MA 02110
617-737-3100
Fax: 617-737-0374
Email: bgross@cmjlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Air & Liquid Systems Corporation**
*as Successor by Merger to Buffalo Pumps, Inc.*

represented by **David A. Goldman**
Governo Law Firm LLC
Two International Place
Boston, MA 02110
617-737-9045
Fax: 617-737-9046
Email: dgoldman@governo.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Allied Signal, Inc.**

**Defendant**

**American Standard, Inc.**

**Defendant**

**B.F. Goodrich Company**

**Defendant**
**Bayer Cropscience, Inc.**

**Defendant**
**Borg Warner Morse Tec, Inc.**

**Defendant**
**CBS Corporation**

**Defendant**
**Carver Pump Company**

**Defendant**
**Cleaver Brooks Company**

**Defendant**
**Cornell Pump Company**

**Defendant**
**Crown Boilers**

**Defendant**
**Crown, Cork & Seal Company, Inc.**

**Defendant**
**Dana Corporation**

**Defendant**
**Ford Motor Company**

**Defendant**
**Foster Wheeler LLC**                   represented by   **James R. Oswald**
                                                          Adler Pollock & Sheehan P.C.
                                                          One Citizens Plaza
                                                          8th Floor
                                                          Providence, RI 02903
                                                          401-274-7200
                                                          Fax: 401-751-0604
                                                          Email: joswald@apslaw.com
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**
**General Electric Company**             represented by   **Jeffrey M. Thomen**
                                                          McCarter & English LLP
                                                          185 Asylum St.
                                                          CityPlace I
                                                          Hartford, CT 06103

860-275-6726
Fax: 860-560-5939
Email: jthomen@mccarter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Gould Pumps**

**Defendant**
**IMO Industries**

**Defendant**
**Industrial Holdings Corporation**

**Defendant**
**Ingersoll-Rand Co.**

**Defendant**
**John Crane, Inc.**

**Defendant**
**Lear Siegler Corporation**

**Defendant**
**Maremont Corporation**

**Defendant**
**Metropolitan Life Insurance
Company**

**Defendant**
**Milwaukee Valve Company**

**Defendant**
**National Automotive Parts
Association**

**Defendant**
**Owens-Illinois, Inc.**

**Defendant**
**P.I.C. Contractors, Inc.**

**Defendant**
**Packings & Insulations Corporation**

**Defendant**
**Pneumo-Abex Corp.**

**Defendant**

**Rapid American Corporation**

**Defendant**

**Riley Stoker Corp.**

**Defendant**

**Superior Boiler Works, Inc.**

**Defendant**

**Thiokol Corp.**

**Defendant**

**Union Carbide Corp.**

**Defendant**

**Uniroyal, Inc.**

**Defendant**

**Utica Boilers**

**Defendant**

**Viking Pump, Inc.**

**Defendant**

**Warren Pumps**

**Defendant**

**Weil McLain**

**Defendant**

**Oakfabco, Inc.**

**Defendant**

**Crane Co.**

**Cross Claimant**

**General Electric Company**                represented by    **Jeffrey M. Thomen**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*


V.

**Cross Defendant**

**General Electric Company**                represented by    **Jeffrey M. Thomen**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**A.W. Chesterton, Inc.**                    represented by **Brian D. Gross**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Air & Liquid Systems Corporation**        represented by **David A. Goldman**
*as Successor by Merger to Buffalo*                          (See above for address)
*Pumps, Inc.*                                                *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Allied Signal, Inc.**

**Cross Defendant**

**American Standard, Inc.**

**Cross Defendant**

**B.F. Goodrich Company**

**Cross Defendant**

**Bayer Cropscience, Inc.**

**Cross Defendant**

**Borg Warner Morse Tec, Inc.**

**Cross Defendant**

**CBS Corporation**

**Cross Defendant**

**Carver Pump Company**

**Cross Defendant**

**Cleaver Brooks Company**

**Cross Defendant**

**Cornell Pump Company**

**Cross Defendant**

**Crane Co.**

**Cross Defendant**

**Crown Boilers**

**Cross Defendant**

**Crown, Cork & Seal Company, Inc.**

**Cross Defendant**

**Dana Corporation**

**Cross Defendant**
**Ford Motor Company**

**Cross Defendant**
**Foster Wheeler LLC**

represented by **James R. Oswald**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**
**Gould Pumps**

**Cross Defendant**
**IMO Industries**

**Cross Defendant**
**Industrial Holdings Corporation**

**Cross Defendant**
**Ingersoll-Rand Co.**

**Cross Defendant**
**John Crane, Inc.**

**Cross Defendant**
**Lear Siegler Corporation**

**Cross Defendant**
**Maremont Corporation**

**Cross Defendant**
**Metropolitan Life Insurance Company**

**Cross Defendant**
**Milwaukee Valve Company**

**Cross Defendant**
**National Automotive Parts Association**

**Cross Defendant**
**Oakfabco, Inc.**

**Cross Defendant**
**Owens-Illinois, Inc.**

**Cross Defendant**

**P.I.C. Contractors, Inc.**

<u>Cross Defendant</u>
**Packings & Insulations Corporation**

<u>Cross Defendant</u>
**Pneumo-Abex Corp.**

<u>Cross Defendant</u>
**Rapid American Corporation**

<u>Cross Defendant</u>
**Riley Stoker Corp.**

<u>Cross Defendant</u>
**Superior Boiler Works, Inc.**

<u>Cross Defendant</u>
**Thiokol Corp.**

<u>Cross Defendant</u>
**Union Carbide Corp.**

<u>Cross Defendant</u>
**Uniroyal, Inc.**

<u>Cross Defendant</u>
**Utica Boilers**

<u>Cross Defendant</u>
**Viking Pump, Inc.**

<u>Cross Defendant</u>
**Warren Pumps**

<u>Cross Defendant</u>
**Weil McLain**

<u>Cross Claimant</u>
**Foster Wheeler LLC**                    represented by   **James R. Oswald**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


V.

<u>Cross Defendant</u>
**Foster Wheeler LLC**                    represented by   **James R. Oswald**
                                                          (See above for address)

*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**A.W. Chesterton, Inc.**                          represented by **Brian D. Gross**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*


**Cross Defendant**

**Air & Liquid Systems Corporation**               represented by **David A. Goldman**
*as Successor by Merger to Buffalo*                (See above for address)
*Pumps, Inc.*                                      *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Allied Signal, Inc.**

**Cross Defendant**

**American Standard, Inc.**

**Cross Defendant**

**B.F. Goodrich Company**

**Cross Defendant**

**Bayer Cropscience, Inc.**

**Cross Defendant**

**Borg Warner Morse Tec, Inc.**

**Cross Defendant**

**CBS Corporation**

**Cross Defendant**

**Carver Pump Company**

**Cross Defendant**

**Cleaver Brooks Company**

**Cross Defendant**

**Cornell Pump Company**

**Cross Defendant**

**Crane Co.**

**Cross Defendant**

**Crown Boilers**

**Cross Defendant**

**Crown, Cork & Seal Company, Inc.**

**Cross Defendant**

**Dana Corporation**

**Cross Defendant**

**Ford Motor Company**

**Cross Defendant**

**General Electric Company**                    represented by    **Jeffrey M. Thomen**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Gould Pumps**

**Cross Defendant**

**IMO Industries**

**Cross Defendant**

**Industrial Holdings Corporation**

**Cross Defendant**

**Ingersoll-Rand Co.**

**Cross Defendant**

**John Crane, Inc.**

**Cross Defendant**

**Lear Siegler Corporation**

**Cross Defendant**

**Maremont Corporation**

**Cross Defendant**

**Metropolitan Life Insurance Company**

**Cross Defendant**

**Milwaukee Valve Company**

**Cross Defendant**

**National Automotive Parts Association**

**Cross Defendant**

**Oakfabco, Inc.**

**Cross Defendant**

**Owens-Illinois, Inc.**

**Cross Defendant**

**P.I.C. Contractors, Inc.**

**Cross Defendant**

**Packings & Insulations Corporation**

**Cross Defendant**

**Pneumo-Abex Corp.**

**Cross Defendant**

**Rapid American Corporation**

**Cross Defendant**

**Riley Stoker Corp.**

**Cross Defendant**

**Superior Boiler Works, Inc.**

**Cross Defendant**

**Thiokol Corp.**

**Cross Defendant**

**Union Carbide Corp.**

**Cross Defendant**

**Uniroyal, Inc.**

**Cross Defendant**

**Utica Boilers**

**Cross Defendant**

**Viking Pump, Inc.**

**Cross Defendant**

**Warren Pumps**

**Cross Defendant**

**Weil McLain**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/15/2011 | 1 | NOTICE OF REMOVAL by Air & Liquid Systems Corporation from Superior Court - Providence County, case #PC 11-1655. (Filing fee $350 receipt #14670005832); Complaint filed by Rachel St. Laurent. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A - State Court Complaint, # 3 Exhibit B)(Jackson, Ryan) (Entered: 07/18/2011) |
| 07/15/2011 | 2 | STATE COURT RECORD by Air & Liquid Systems Corporation. |

| | | |
|---|---|---|
| | | (Attachments: # <u>1</u> Exhibit A - Air & Liquid Systems Corp.'s Answer, # <u>2</u> Exhibit B - Owen-Illinois' Answer, # <u>3</u> Exhibit C - Lear Siegler Diversified Holdings Corp.'s Answer, # <u>4</u> Exhibit Ingersoll-Rand Co.'s Answer)(Urizandi, Nisshy) (Entered: 07/18/2011) |
| 07/21/2011 | <u>3</u> | NOTICE of Appearance by Jeffrey M. Thomen on behalf of General Electric Company (Thomen, Jeffrey) (Entered: 07/21/2011) |
| 07/21/2011 | <u>4</u> | ANSWER to Complaint, CROSSCLAIM *and Answer to CrossClaim* against All Defendants by General Electric Company.(Thomen, Jeffrey) (Entered: 07/21/2011) |
| 07/21/2011 | <u>5</u> | Corporate Disclosure Statement by General Electric Company. (Thomen, Jeffrey) (Entered: 07/21/2011) |
| 07/25/2011 | <u>6</u> | NOTICE of Appearance by James R. Oswald on behalf of Foster Wheeler LLC (Oswald, James) (Entered: 07/25/2011) |
| 07/25/2011 | <u>7</u> | Corporate Disclosure Statement by Foster Wheeler LLC. (Oswald, James) (Entered: 07/25/2011) |
| 07/25/2011 | <u>8</u> | NOTICE by Foster Wheeler LLC *of Joinder in Notice of Removal* (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit)(Oswald, James) (Entered: 07/25/2011) |
| 07/25/2011 | <u>9</u> | ANSWER to Complaint, CROSSCLAIM against All Defendants by Foster Wheeler LLC.(Oswald, James) (Entered: 07/25/2011) |

 CT Corporation

**Service of Process Transmittal**
06/24/2011
CT Log Number 518730290

**TO:**     Rose Hoover, Vice Pres. Admin. and Corporate Sec.
Ampco-Pittsburgh Corporation
600 Grant Street, Suite 4600
Pittsburgh, PA 15219

**RE:**     **Process Served in Pennsylvania**

**FOR:**    Air & Liquid Systems Corporation (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Rachel St. Laurent, Executrix for the Estate of Maurice St. Laurent, Pltf. vs. A.W. Chesterton Company, et al. including Air & Liquid Systems Corporation, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Proof of Service Form, Complaint |
| **COURT/AGENCY:** | Providence County Superior Court, RI
Case # PC11-1655 |
| **NATURE OF ACTION:** | Asbestos Litigation - Fatal Injury/Wrongful Death |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Harrisburg, PA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/24/2011 postmarked on 06/22/2011 |
| **JURISDICTION SERVED:** | Pennsylvania |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days, exclusive of day of service |
| **ATTORNEY(S) / SENDER(S):** | Vincent L. Greene
Motley Rice LLC
321 South Main Street
Providence, RI 02903
401-457-7700 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/24/2011, Expected Purge Date: 06/29/2011
Image SOP
Email Notification, Rose Hoover RHOOVER@AMPCOPGH.COM
Email Notification, Jess Nock jnock@ampcopgh.com
Email Notification, Jen Sauers jsauers@ampcopgh.com
Email Notification, Nicole Sayles nsayles@ampcopgh.com
Email Notification, Insurance Department insurance@ampcopgh.com |
| **SIGNED:** | CT Corporation System |
| **PER:** | Sabra Dudding |
| **ADDRESS:** | 116 Pine Street
3rd Floor, Suite 320
Harrisburg, PA 17101 |
| **TELEPHONE:** | 717-234-6004 |

Page 1 of  1 / KJ

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**MotleyRice**®
LLC
ATTORNEYS AT LAW

1100 Glendon Ave., 14th Floor
Los Angeles, CA 90024-3503
o. 310.500.3540
f. 310.824.2870

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000
f. 843.216.9450

321 South Main St.
Providence, RI 02903
o. 401.457.7700
f. 401.457.7708

One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
o. 860.882.1681
f. 860.882.1682

275 Seventh Ave., 2nd Floor
New York, NY 10001
o. 212.577.0040
f. 212.577.0054

320 Chestnut St.
Morgantown, WV 26505
o. 304.413.0456
f. 304.413.0458

1000 Potomac St., Ste. 150
Washington, DC 20007
o. 202.232.5504
f. 202.232.5513

* Motley Rice LLP operates
the California office.

www.motleyrice.com

June 17, 2011

CT CORPORATION SYSTEM
116 Pine Street, Suite 320
Harrisburg, PA  17101

**Re:    RACHEL ST. LAURENT, Executrix for the Estate of MAURICE ST. LAURENT v. A.W. Chesterton Company, et al – PC11-1655**

Dear Sir or Madam:

Enclosed is a copy of the Summons and Complaint.  You are hereby served pursuant to the Rhode Island Civil Practice Rules on behalf of defendant Air & Liquid Systems Corporation successor by merger to Buffalo Pumps, Inc..

Very truly yours,

Vincent L. Greene IV

VLG/cvh
Enclosures

RRR# 7011 0110 0001 8262 *8062*

# State of Rhode Island and Providence Plantations

SUPERIOR COURT

**[X] PROVIDENCE/BRISTOL      [ ] KENT          [ ] WASHINGTON          [ ] NEWPORT**

RACHEL ST. LAURENT, Executrix
for the Estate of MAURICE ST. LAURENT,

CIVIL ACTION, FILE NO.   PC11-1655

**Plaintiff**

**Summons**

A.W. CHESTERTON COMPANY et al.

**Air & Liquid Systems Corporation successor by**

merger to Buffalo Pumps, Inc.
**Defendant**

**CT CORPORATION SYSTEM**
**116 Pine Street, Suite 320**
**Harrisburg, PA 17101**

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said superior court in the county indicated above.  You are hereby summoned and required to serve upon **Vincent L. Greene, Esq.** Plaintiff's attorney, whose address is **321 South Main Street, Suite 200, Providence, Rhode Island 02903** an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also he filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will there-after he barred from making such claim in any other action.

CLERK

Dated:  June 9, 2011

**(Seal of the Superior Court)**

**S-135** (REV.4/99)

C.I.-153

# State of Rhode Island and Providence Plantations

..............................................,SC

## PROOF OF SERVICE

I hereby certify that on the..............................................day of.........................I served a copy of this

summons and a copy of the complaint received therewith upon ........................................................................

..........................................................................................................................................................................

in the following manner:

By delivering a copy of the summons and complaint to him personally.

By leaving a copy of the summons and complaint at his dwelling house,...................................................

...................................................................................................,with a person of suitable age and discretion then
residing therein.

(address)

By leaving a copy of the summons and complaint at his usual place of abode,....................................

.................................................................................with a person of suitable age and discretion then
residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law

to receive service of process, namely.................................................................................................................

Such agent being one designated by statute to receive service, further notice as the statute requires was
given as follows:

.........................................................................................................................................................................

.........................................................................................................................................................................

.........................................................................................................................................................................

Sheriff's Fees

Travel . . . . . $.....................

Service . . . . . $.....................                    ...........................................

**Deputy Sheriff**

$.....................

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Note: Returnable to Plaintiff's Attorney forewith after service. Proof of service to be filed within time during which the person served must respond. | MOTLEY RICE LLC 321 South Main Street Providence, RI 02903 | Vincent L. Greene, Esq. | ATTOTNEY FOR PLAINTIFF | A.W. CHESTERTON COMPANY et al. | VS | RACHEL ST. LAURENT, Executrix for the Estate of MAURICE ST. LAURENT | SUPERIOR COURT | SUMMONS | FILE NO. PC11-1655 | CIVIL ACTION |

STATE OF RHODE ISLAND                          SUPERIOR COURT
PROVIDENCE, SC


RACHEL ST. LAURENT, Executrix
for the Estate of MAURICE ST. LAURENT,


     *Plaintiff,*

v.                                             CIVIL ACTION NO.:   PC-11-1655


A.W. CHESTERTON COMPANY,
AIR & LQUID SYSTEMS CORPORATION, as successor
     by merger to BUFFALO PUMPS,
ALLIED SIGNAL, INC., n/k/a HONEYWELL INTERNATIONAL, INC.,
AMERICAN STANDARD, INC., n/k/a TRANE US, INC., Individually and in their
     Capacity as owner of KEWANEE BOILER COMPANY,
B.F. GOODRICH COMPANY,
BAYER CROPSCIENCE, INC.,
  f/k/a AMCHEM PRODUCTS, INC.,
BORG WARNER MORSE TEC, INC., Successor-in-interest to
     BORG WARNER CORP.,
CBS CORPORATION,
  n/k/a VIACOM, INC.,
CARVER PUMP  COMPANY,
CLEAVER BROOKS COMPANY,
CORNELL PUMP COMPANY,
CRANE CO.,
CROWN BOILERS,
CROWN, CORK & SEAL COMPANY, INC.,
DANA CORPORATION,
FORD MOTOR COMPANY,
FOSTER WHEELER, LLC.,
GENERAL ELECTRIC COMPANY,
GOULD PUMPS,
IMO INDUSTRIES, f/k/a IMO DELAVAL,
INDUSTRIAL HOLDINGS CORPORATION, as successor to the
     CARBORUNDUM COMPANY, a/k/a CARBORUNDUM GRINDING
     WHEEL COMPANY,
INGERSOLL RAND COMPANY,
JOHN CRANE, INC.,
LEAR SIEGLER CORPORATION,
MAREMONT CORPORATION,
METROPOLITAN LIFE INSURANCE COMPANY,
MILWAUKEE VALVE COMPANY,
NATIONAL AUTOMOTIVE PARTS ASSOCIATION,
OAKFABCO, INC., Individually and in their Capacity as owner to
     KEWANEE BOILER CORPORATION,
OWENS-ILLINOIS, INC.,

P.I.C. CONTRACTORS, INC.,
PACKINGS & INSULATIONS CORPORATION,
PNEUMO-ABEX CORPORATION, as Successor in Interest to ABEX CORP.,
RAPID AMERICAN CORPORATION,
RILEY STOKER CORPORATION,
    n/k/a D.B. RILEY, INC.,
SUPERIOR BOILER WORKS, INC.,
THIOKOL CORP., n/k/a MORTON INTERNATIONAL, INC.,
UNION CARBIDE CORPORATION f/k/a UNION CARBIDE CHEMICALS
        & PLASTICS COMPANY, INC.,
UNIROYAL, INC.,
UTICA BOILERS,
VIKING PUMP, INC.,
WARREN PUMPS,
WEIL McLAIN, and
JOHN DOE (fictitious name),

   *Defendants.*

## COMPLAINT AND JURY DEMAND

1. Plaintiff is a citizen and resident of the State of North Carolina. She resides at 3448 Shadow Lake Lane, Matthews, North Carolina 28104. Maurice St. Laurent ("Plaintiff-worker") was injuriously exposed to asbestos as follows: Mr. St. Laurent was employed at the Walsh Kaiser Shipyard in Providence, Rhode Island from approximately 1942 until 1944. During this time he worked as a welder, pipefitter and second class engineer. Mr. St. Laurent then worked at HP Hood in Fall River, Massachusetts from approximately 1944 until 1952 as a boiler worker as well as New England Gas Co, Fall River, Massachusetts.   Mr. St. Laurent was employed at Stevens Realty in Fall River, Massachusetts from approximately 1952 until 1992. Stevens Realty owned several textile mills throughout Fall River, Massachusetts, Mr. St. Laurent worked as a boiler operator at Stevens and during this time would work at all the mills that they owned.   Finally, Mr. St. Laurent would perform brake on his vehicles and did so for a long period of time.   As a direct result of his exposure to asbestos, he suffered and died from mesothelioma.

2. Defendant <u>A.W. Chesterton Company</u> is a Massachusetts corporation with its

principal place of business in Massachusetts.  At all relevant times it did business in the State of Rhode Island.

      3.     Defendant Air & Liquid Systems Corporation, success by merger to Buffalo Pumps, Inc. is a Delaware corporation with its principal place of business in New York.  At all relevant times it did business in the State of Rhode Island.

      4.     Defendant Allied Signal, Inc. n/k/a Honeywell International Inc. is a Delaware corporation with its principal place of business in Michigan.  At all relevant times it did business in the State of Rhode Island.

      5.     Defendant American Standard, Inc., n/k/a Trane US, Inc., Individually and in their capacity as owner of Kewanee Boiler Company is a Delaware corporation with its principal place of business in Michigan.  At all relevant times it did business in the State of Rhode Island.

      6.     Defendant B.F. Goodrich Company is a New Jersey corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

      7.     Defendant Bayer Cropscience, Inc, is a Delaware corporation with its principal place of business in Pennsylvania.  Upon information and belief it did business in the State of Rhode Island.

      8.     Defendant BorgWarner Morse TEC, Inc., Successor-in-Interest to Borg Warner Corp., is a Delaware corporation with its principal place of business in Illinois.  At all relevant times it did business in the State of Rhode Island.

      9.     Defendant CBS Corporation, n/k/a Viacom, Inc., is a New York corporation with its principal place of business in New York.  At all relevant times it did business in the State of Rhode Island.

      10.    Defendant Carver Pump is a Delaware corporation with its principal place of business in Iowa.  At all relevant times it did business in the State of Rhode Island.

11.     Defendant <u>Cleaver-Brooks Company</u> is a Pennsylvania corporation with its principal place of business in Pennsylvania.  At all relevant times it did business in the State of Rhode Island.

12.     Defendant <u>Cornell Pump Company</u> is a Delaware corporation with its principal place of business in Oregon.  At all relevant times it did business in the State of Rhode Island.

13.     Defendant <u>Crane Co.</u> is a New Jersey corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

14.     Defendant <u>Crown Boilers</u> is a Pennsylvania corporation with its principal place of business in Pennsylvania.  At all relevant times it did business in the State of Rhode Island.

15.     Defendant <u>Crown, Cork & Seal Company, Inc.</u>, is a New York corporation with its principal place of business in Pennsylvania.  At all relevant times it did business in the State of Rhode Island.

16.     Defendant <u>Dana Corporation</u> is a Virginia corporation with its principal place of business in Ohio.  At all relevant times it did business in the State of Rhode Island.

17.     Defendant <u>Ford Motor Company</u> is a Delaware corporation with its principal place of business in Michigan.  At all relevant times it did business in the State of Rhode Island.

18.     Defendant <u>Foster Wheeler Corporation</u> is a New York corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

19.     Defendant <u>General Electric Company</u> is a New York corporation with its principal place of business in New York.  At all relevant times it did business in the State of Rhode Island.

20.     Defendant <u>Gould Pumps</u> is a New Jersey corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

21.     Defendant <u>IMO Industries, f/k/a IMO Delaval</u> is a Delaware corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of

Rhode Island.

22.     Defendant <u>Industrial Holdings Corporation as successor to the Carborundum Company, a/k/a Carborundum Grinding Wheel Company</u> is a New York corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

23.     Defendant <u>Ingersoll-Rand Co.</u> is a New Jersey corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

24.     Defendant <u>John Crane Co.</u> is a Delaware corporation with its principal place of business in Illinois.  At all relevant times it did business in the State of Rhode Island.

25.     Defendant <u>Lear Siegler Corporation</u> is a Delaware corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

26.     Defendant <u>Maremont Corporation</u> is a Delaware corporation with its principal place of business in Illinois.  At all relevant times it did business in the State of Rhode Island.

27.     Defendant <u>Metropolitan Life Insurance Company</u> is a mutual life insurance company of the State of New York with its principal place of business in the State of New York. At all relevant times it did business in the State of Rhode Island.

28.     Defendant <u>Milwaukee Valve Comany</u> is a Wisconsin corporation with its principal place of business in Wisconsin.  At all relevant times it did business in the State of Rhode Island.

29.     Defendant <u>National Auto Parts Association</u> is a Georgia corporation with its principal place of business in Georgia.  At all relevant times it did business in the State of Rhode

Island.

30.     Defendant <u>Oakfabco, Inc. Successor-in-Interest to Kewanee Boiler Corporation</u> is an Illinois corporation with its principal place of business in Illinois.  At all relevant times it did business in the State of Rhode Island.

31.     Defendant <u>Owens-Illinois, Inc.</u> is an Ohio corporation with its principal place of business in Ohio.  At all relevant times it did business in the State of Rhode Island.

32.     Defendant <u>P.I.C. Contractors, Inc.</u> is a Rhode Island corporation with its principal place of business in Rhode Island.  At all relevant times it did business in the State of Rhode Island.

33.     Defendant <u>Packings and Insulations Corporation</u> is a Rhode Island corporation with its principal place of business in Rhode Island.  At all relevant times it did business in the State of Rhode Island.

34.     Defendant <u>Packings and Insulations Corporation</u> is a Rhode Island corporation with its principal place of business in Rhode Island.  At all relevant times it did business in the State of Rhode Island.

35.     Defendant <u>Pneumo-Abex Corporation f/k/a Abex Corporation,</u> is a Delaware corporation with its principal place of business in New Hampshire.  At all relevant times it did business in the State of Rhode Island.

36.     Defendant <u>Rapid American Corporation</u> is a Delaware corporation with its principal place of business in Delaware.  At all relevant times it did business in the State of Rhode Island.

Through a series of corporate mergers, Rapid American Corporation expressly assumed all liabilities and debts of Philip Carey Manufacturing Company. Philip Carey Manufacturing Company has sufficient contracts with and/or did business in the State of Rhode Island such that it and all successor corporations including Rapid American Corporation has sufficient contracts and/or transacts business within the State of Rhode Island to subject them to the jurisdiction of this Court.

37.     Defendant Riley Stoker Corporation, n/k/a D.B. Riley, Inc., is a Massachusetts corporation with its principal place of business in Massachusetts. At all relevant times it did business in the State of Rhode Island.

38.     Defendant Superior Boiler Works, Inc. is an Ohio corporation with its principal place of business in Ohio. At all relevant times it did business in the State of Rhode Island.

39.     Defendant Thiokol Corp. is a Delaware corporation with its principal place of business in Delaware. At all relevant times it did business in the State of Rhode Island.

40.     Defendant Union Carbide Chemicals and Plastics Corporation is a New York corporation with its principal place of business in Connecticut. At all relevant times it did business in the State of Rhode Island.

41.     Defendant Uniroyal Inc., is a New Jersey corporation with its principal place of business in Connecticut. At all relevant times it did business in the State of Rhode Island.

42.     Defendant Utica Boilers. is a New York corporation with its principal place of business in New York. At all relevant times it did business in the State of Rhode Island.

43.     Defendant Viking Pumps is Delaware corporation with its principal place of business in Illinois. At all relevant times it did business in the State of Rhode Island.

44.     Defendant <u>Warren Pumps</u> is a Massachusetts corporation with its principal place of business in Massachusetts.  At all relevant times it did business in the State of Rhode Island.

45.     Defendant <u>Weil McLain</u> is a Delaware corporation with its principal place of 34..

Defendant <u>John Doe</u> (fictitious) represents one or more business entities whose real names and identities are presently unknown to Plaintiffs.

## COUNT I

46.     Plaintiff repeats and realleges all allegations contained in all paragraphs above as if fully set forth herein.

47.     Defendants mined, processed, manufactured, designed, supplied, delivered, and sold asbestos and asbestos-containing products and/or knowingly gave substantial assistance or encouragement to those who did so, at all times relevant herein.

48.     While at work, Plaintiff-worker was caused to inhale, absorb, ingest, and come into contact with asbestos and asbestos-containing products mined, processed, manufactured, designed, supplied, delivered, and/or sold by Defendants.

49.     The Defendants were negligent in that they each, jointly and severally:

a.     mined, processed, manufactured, designed, supplied, delivered, and/or sold asbestos and asbestos-containing products, and/or knowingly gave substantial assistance or encouragement to those who did so, that they knew, or reasonably should have known, were dangerous, defective, poisonous, and harmful to an individual's health, body, and life;

b.     failed to reasonably warn Plaintiffs of the harmful effects of exposure to asbestos and asbestos-containing products and/or knowingly gave substantial assistance or

encouragement to those who did so;

      c.     failed to provide Plaintiffs with the knowledge as to possible precautions to protect against the harmful effects of asbestos exposure and/or knowingly gave substantial assistance or encouragement to those who did so; and,

      d.     were otherwise negligent.

50.    As a direct and proximate result of the negligence of the Defendants, Plaintiff-worker suffered serious bodily injury, endured great pain and suffering, incurred medical and funeral expenses, suffered mental anguish, lost earnings and earning capacity, and was otherwise damaged. As a direct and proximate result of the negligence of the Defendants, Plaintiff-worker ultimately died.

51.    As a direct and proximate result of the negligence of the Defendants, Plaintiff-spouse has suffered, and will continue to suffer great pain and suffering, mental anguish, a loss of consortium, society, companionship, support, and dependency, and was otherwise damaged.

WHEREFORE Plaintiffs demand judgment and damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

## COUNT II

52.    Plaintiff repeats and realleges all allegations contained in all paragraphs above as if fully set forth herein.

53.    At all relevant times, the Defendants, as part of their regular business, mined, processed, manufactured, designed, supplied, delivered, and sold and/or knowingly gave substantial assistance or encouragement to those who did so, asbestos and asbestos-containing

products and put them into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and failed to provide reasonable warnings.

54.    The asbestos and asbestos-containing products were expected to, and did reach such persons, including Plaintiff-worker, without substantial change in the condition in which they were sold and/or supplied.

55.    At all relevant times, the asbestos and asbestos-containing products were used and employed for the purposes for which they were mined, processed, manufactured, designed, supplied, delivered, sold, and intended to be used and in a manner foreseeable to the Defendants.

56.    As a direct and proximate result of the defective, dangerous, and unsafe condition of the asbestos and asbestos-containing products that Defendants placed into the stream of commerce, Plaintiff-worker suffered serious bodily injury, endured great pain and suffering, incurred medical and funeral expenses, suffered mental anguish, lost earnings and earning capacity, and was otherwise damaged.   As a direct and proximate result of the defective, dangerous, and unsafe condition of the asbestos and asbestos-containing products that Defendants placed into the stream of commerce, Plaintiff-worker ultimately died.

57.    As a direct and proximate result of the defective, dangerous, and unsafe condition of the asbestos and asbestos-containing products that Defendants placed into the stream of commerce, Plaintiff-spouse has suffered, and will continue to suffer, great pain and suffering, mental anguish, a loss of society, consortium, companionship, support, dependency and was otherwise damaged.

WHEREFORE Plaintiff demands judgment and damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems

right and just.

## COUNT III

58.    Plaintiff repeats and realleges all allegations contained in all paragraphs above as if fully set forth herein.

59.    The Defendants expressly and impliedly warranted that the asbestos and asbestos-containing products that they mined, processed, manufactured, designed, supplied, delivered, and sold were fit for use, were merchantable, and were reasonably safe for the purpose intended.

60.    The Defendants breached their warranty in that the asbestos and asbestos-containing products were defective, unsafe, unreasonably dangerous, ultrahazardous, and unsuitable for the purpose intended.

61.    As a direct and proximate result of the breach by the Defendants, Plaintiff-worker suffered serious bodily injury, endured great pain and suffering, incurred medical and funeral expenses, suffered mental anguish, lost earnings and earning capacity, and was otherwise damaged.  As a direct and proximate result of the breach by the Defendants, Plaintiff-worker ultimately died.

62.    As a direct and proximate result of the breach by the Defendants, Plaintiff-spouse has suffered, and will continue to suffer great pain and suffering, mental anguish, a loss of consortium, society, companionship, support, and dependency, and was otherwise damaged.

WHEREFORE Plaintiff demands judgment and damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

## COUNT IV

63.     Plaintiff repeats and realleges all allegations contained in all paragraphs above as if fully set forth herein.

64.     The acts and omissions of Defendants that were the direct and proximate cause of Plaintiffs' injuries were willful, malicious, wanton, undertaken with reckless disregard of the rights of Plaintiffs, and were grossly negligent.

WHEREFORE Plaintiff demands judgment and punitive damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

## COUNT V

65.     Plaintiff repeats and realleges all allegations contained in all paragraphs above as if fully set forth herein.

66.     Defendants, individually and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed, and conspired among themselves and with other asbestos manufacturers and distributors to injure Plaintiffs.

67.     The Defendants knew that the others' conduct constituted a breach of duty and gave substantial assistance or encouragement to the other so to conduct itself.

68.     The Defendants acted in the following fashion:

a.      Metropolitan Life Insurance Company (Met Life) required a tangible quid pro quo from McGill University in the 1920s in exchange for them providing funding for a study of asbestos disease in Canadian miners.  The study revealed asbestos miners suffered from asbestosis.  The study was never published and agents of Met Life materially misrepresented in

the published literature this known fact.

b.     In 1932, Met Life, through its agents Dr. Anthony Lanza, Dr. Fellows, and others, assisted the Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey.  The report of his study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process.  This 1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issue of asbestos disease.  Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

c.     Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney J.C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza, Associate Medical Director of Met Life (insurers of Manville, Raybestos, and others) that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure; i.e., the seriousness of the disease process, asbestosis.  This was accomplished through intentional deletion of Dr. Lanza's description of asbestosis as "fatal" and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was known to be then.  As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935.  The defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the

insurer.

      d.     In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H.K. Porter Company), Union Asbestos and Rubber Company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data resulting in numerous misstatements of fact being made at scientific meetings.

      e.     On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall) Raybestos-Manhattan, Inc., Thermoid Company (whose assets and liabilities were later purchased by H.K. Porter Company,) Union Asbestos and Rubber Company and United States Gypsum Company. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

      f.     At this November 11, 1948 meeting, these defendants and their

representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos-containing products.

g.      At this meeting, the defendants intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald. The acts of these defendants were carried out by co-conspirator Defendant Met Life's agent, Dr. Lanza. These defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and the class of persons exposed to asbestos, including Plaintiffs.

h.      As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January, 1951, in the Archives of Industrial Hygiene and Occupational Medicine (Vol. 3, No. 1), a journal of the American Medical Association. The published version stressed those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLVs). Furthermore, that article made a false claim that the published report was the "complete survey" of Dr. Gardner's work. The defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries, government officials, medical doctors, agencies, the

public, and others.

i.      Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

j.      The following conspirators and others were members of the trade association known as Quebec Asbestos Mining Association (Q.A.M.A.):   Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), the Celotex Corporation (successor to Quebec Asbestos Corporation) National Gypsum Company (n/k/a Asbestos Claims Management. Corporation), and Turner & Newall (individually and successor to Bell Asbestos).  The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the A.M.A. 's Archives of Industrial Hygiene and Industrial Medicine in 1951.  Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators all indicating close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A.'s members.

k.      Defendants who were members of the Q.A.M.A., began on or about 1950 to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory controls of asbestos with the specific intent of misrepresenting the existing scientific information

and suppressing contrary scientific data in their possession and control.

l.      This plan of misrepresentation and influence over the medical literature began on or about 1950 when the Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, the Q.A.M.A. members refused to further fund the study and it was terminated and never publicly discussed.

m.      As a result of the termination of this study, these defendants fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators' agents Dr. Kenneth W. Smith, Dr. Paul Cartier, Dr. Arthur J. Vorwald, Dr. Anthony J. Lanza, Vandiver Brown, and Ivan Sabourin, said misrepresentations being directed to, inter alia, U.S. Government officials, Canadian government officials, U.S. National Cancer Institute, other medical organizations, and the general public, including Plaintiffs.

n.      Subsequently, the Q.A.M.A. defendant conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Drs. Braun and Truan reported to the Q.A.M.A that asbestosis did increase a worker's chances of incurring lung cancer.

o.      The Q.A.M.A. defendants thereafter caused, in 1958, a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in persons with asbestosis was edited out by agents of the Q.A.M.A. The published version of this

study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the defendant conspirators to be patently false.

p.      By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting a documented finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. defendants affirmatively misrepresented to the public and concealed from the public the extent of risks associated with inhalation of asbestos fibers.

q.      In approximately 1958, the Q.A.M.A. defendants publicized the edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

r.      The fraudulent misrepresentations beginning in 1946, as elaborated above and continuing with the publication of the 1958 Braun/Truan study, influenced the standards set for the TLVs, and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

s.      In 1967, the Q.A.M.A. defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risks involved in inhalation of asbestos products.

t.      In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories.   The following conspirators were in attendance:   Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of their agents, Cartier, Sabourin, and LeChance.

u.     At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos was also discussed.   In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these defendants conspired to prevent publication of the record of this 1952 Saranac Symposium and it was not published.   In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess cancers in animals that thereby fraudulently misrepresenting existing data, albeit secret, that could not be publicized because of the secrecy provisions contained in the 1936 Saranac agreement required by the asbestos industry members.

v.     The following conspirators were members of the Magnesia Insulation Manufacturers Association (MIMA):   Philip-Carey Corporation (predecessors to Celotex) Johns-Manville, and others.

w.     In 1955, these conspirators caused to be published the MIMA 85% Magnesia Insulation Manual.   This manual falsely and fraudulently misrepresented that asbestos-containing products offered no hazard to workers who used these products.

x.     The following conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI):   Raybestos-Manhattan, Johns-Manville, H.K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newall), National Gypsum (n/k/a Asbestos Claims Management Corporation), and others.

y.     In 1947, the members of the ATI, received a report from W.C.L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos

exposure. These defendants caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing TLV was acceptable.    Thereafter, these defendant conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluations of TLVs for asbestos exposure.

      z.    In 1953, conspirator National Gypsum (n/k/a Asbestos Claims Management Corporation), through its agents, in response to an inquiry from the Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products.    National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed from such applicators the need for respirators.

      aa.    In 1955, conspirator Johns-Manville, through its agent Kenneth W. Smith, M.D. caused to be published in the <u>AMA Archives of Industrial Health,</u> an article entitled "Pulmonary Disability in Asbestos Workers."  This published study materially altered the results of an earlier study in 1949 concerning the same set of workers.  This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

      bb.    In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as an agent for other alleged co-conspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no

existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, the conspirators were in secret possession of several studies that demonstrated that positive evidence did exist.

cc.     In 1957, the members of the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in fraudulent concealment from the public of material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

dd.     In 1964 the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irving J. Selikoff.  Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

ee.     In 1970, through their agents, Defendants The Celotex Corporation and Carey-Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease.  This constituted a fraudulent misrepresentation about the material facts known to these Defendants.

ff.     All conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of Met Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-conspirators for the other conspirators.

69.     All defendants:

a.     did a tortious act in concert with the other or pursuant to a common design

with them; and/or

       b.     knew that each other's conduct constituted a breach of duty and they each gave substantial assistance or encouragement to the other so to conduct himself; and/or

       c.     gave substantial assistance to the other in accomplishing a tortious result and its own conduct, separately considered, constitutes a breach of duty to the Plaintiffs.

      70.     The acts of the defendants as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation that proximately caused injury to the Plaintiffs in the following manner:

       a.     The material published or caused to be published by the defendants was false and incomplete in that the Defendants knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-containing products.

       b.     Defendants individually, as members of a conspiracy, as agents of other co-conspirators, and as aiders and abettors of each other intended that the publication of false and misleading reports and/or the nondisclosure of documented reports of the health hazards of asbestos:

        i.     maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

        ii.     assist in the continued pecuniary gain of the defendants through the sale of their products;

        iii.     influence in the defendants' favor proposed legislation to regulate asbestos exposure and;

        iv.     to provide a defense in lawsuits brought for injury resulting from

asbestos disease.

        c.     Plaintiffs reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-containing products and the absence of published medical and scientific reports on the extent, nature, and existence of hazards of asbestos and asbestos-containing products to continue exposure to asbestos because of a belief that it was safe.

        d.     Defendants individually, as members of a conspiracy, and as agents of each other intended that Plaintiffs rely upon the published report regarding the safety of asbestos and asbestos-containing products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue his exposure to these products.

        e.     Defendants individually, as members of a conspiracy, as agents of each other, as aiders and abettors of each other are and were in a position of superior knowledge regarding the health hazards of asbestos and therefore Plaintiffs had a right to rely on the published reports commissioned by the defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-containing products.

        f.     Plaintiff suffered and will continue to suffer injury as a direct and proximate result of the acts alleged herein.

        71.     As a direct and proximate result of the acts of the Defendants, Plaintiff-worker suffered serious bodily injury, endured great pain and suffering, incurred medical expenses, suffered mental anguish, lost earnings and earning capacity, and was otherwise damaged.  As a

direct and proximate result of the acts of the Defendants, Plaintiff-worker ultimately died.

72.    As a direct and proximate result of the acts of the Defendants, Plaintiff-spouse has suffered, and will continue to suffer great pain and suffering, mental anguish, a loss of consortium, society, companionship, support, and dependency, and was otherwise damaged.

WHEREFORE Plaintiff demands judgment and damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

Plaintiff hereby demand a trial by jury.

Respectfully Submitted by,
*MOTLEY RICE LLC*

Robert J. McConnell, Esq. (#3888)
Donald A. Migliori, Esq. (#4936)
Vincent L. Greene, Esq. (#5971)
321 South Main Street, 2nd Flr.
Providence, RI  02903
401-457-7700
401-457-7708 Fax

Providence, R.I.
Dated: 3/23/11



UNITED STATES POSTAGE
PITNEY BOWES
02 1P     $ 007.03⁰
0003162528   JUN 22 2011
MAILED FROM ZIP CODE 02903

**MotleyRice**®
LLC

ATTORNEYS AT LAW

321 South Main St.
Providence, RI 02903

ADDRESS SERVICE REQUESTED

7011 0110 0001 8262 8062

CERTIFIED MAIL℠

CT CORPORATION SYSTEM
116 Pine Street, Suite 320
Harrisburg, PA 17101