ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-03507-JSW

| | |
|---|---|
| Gerecke et al v. Huntington Ingalls Incorporated et al | Date Filed: 07/18/2011 |
| Assigned to: Hon. Jeffrey S. White | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Asbestos Litigation | Nature of Suit: 368 P.I. : Asbestos |
| | Jurisdiction: Diversity |

**Plaintiff**

**David Gerecke**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Harold*
*Gerecke, Deceased*

represented by **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Walter Gerecke**
*as Legal Heir of Harold Gerecke,*
*Deceased*

represented by **Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rebecca Gerecke Chapman**
*as Legal Heir of Harold Gerecke,*
*Deceased*

represented by **Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**General Electric Company**

**Defendant**

**General Dynamics Corporation**

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

| Date Filed | # | Docket Text |
|---|---|---|
| 07/18/2011 | 1 | COMPLAINT against CBS Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Huntington Ingalls Incorporated ( Filing fee $ 350, receipt number 34611062300.). Filed byRebecca Gerecke Chapman, David Gerecke, Walter Gerecke. (vlk, COURT STAFF) (Filed on 7/18/2011) (Additional attachment(s) added on 7/22/2011: # 1 Civil Cover Sheet) (vlk, COURT STAFF). (Entered: 07/20/2011) |
| 07/18/2011 | | CASE DESIGNATED for Electronic Filing. (vlk, COURT STAFF) (Filed on 7/18/2011) (Entered: 07/20/2011) |
| 07/18/2011 | 2 | NOTICE of Tag-Along Action by Rebecca Gerecke Chapman, David Gerecke, Walter Gerecke (vlk, COURT STAFF) (Filed on 7/18/2011) (vlk, COURT STAFF). (Entered: 07/20/2011) |
| 07/18/2011 | 3 | Certificate of Interested Entities by Rebecca Gerecke Chapman, David Gerecke, Walter Gerecke (vlk, COURT STAFF) (Filed on 7/18/2011) (vlk, COURT STAFF). (Entered: 07/20/2011) |
| 07/18/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Rebecca Gerecke Chapman, David Gerecke, Walter Gerecke. (vlk, COURT STAFF) (Filed on 7/18/2011) (vlk, COURT STAFF). (Entered: 07/20/2011) |
| 07/18/2011 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 10/19/2011. Case Management Conference set for 10/26/2011 01:30 PM. |

|  |  | (Attachments: # 1 Standing Order)(vlk, COURT STAFF) (Filed on 7/18/2011) (Entered: 07/20/2011) |
|---|---|---|
| 07/18/2011 | 6 | Summons Issued as to CBS Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Huntington Ingalls Incorporated. (vlk, COURT STAFF) (Filed on 7/18/2011) (Entered: 07/20/2011) |
| 07/22/2011 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (vlk, COURT STAFF) (Filed on 7/22/2011) (Entered: 07/22/2011) |
| 07/25/2011 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Jeffrey S. White for all further proceedings. Magistrate Judge Donna M. Ryu no longer assigned to the case. Signed by the Executive Committee on July 25, 2011. (cjl, COURT STAFF) (Filed on 7/25/2011) (Entered: 07/25/2011) |
| 07/26/2011 | 9 | INITIAL SCHEDULING CONFERENCE ORDER: Case Management Conference set for 10/28/2011 01:30 PM in Courtroom 11, 19th Floor, San Francisco. Case Management Statement due by 10/21/2011.. Signed by Judge Jeffrey S. White on 7/26/11. (jjoS, COURT STAFF) (Filed on 7/26/2011) (Entered: 07/26/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/29/2011 11:38:01 | | |
| **PACER Login:** | jp0001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-03507-JSW |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11  DAVID GERECKE, as Wrongful Death    )  No. _____
    Heir, and as Successor-in-Interest to )
12  HAROLD GERECKE, Deceased, and       )
    WALTER GERECKE, REBECCA             )
13  GERECKE CHAPMAN, as Legal Heirs of  )  COMPLAINT FOR SURVIVAL,
    HAROLD GERECKE, Deceased,           )  WRONGFUL DEATH - ASBESTOS;
14                                       )  DEMAND FOR JURY TRIAL
                                         )
15           Plaintiffs,                 )
                                         )
16  vs.                                  )
                                         )
17  HUNTINGTON INGALLS                   )
    INCORPORATED (FKA NORTHROP          )
18  GRUMMAN SHIPBUILDING, INC.),        )
    GENERAL ELECTRIC COMPANY,           )
19  GENERAL DYNAMICS                     )
    CORPORATION, FOSTER WHEELER         )
20  LLC (FKA FOSTER WHEELER             )
    CORPORATION), CBS CORPORATION       )
21  (FKA VIACOM INC., FKA               )
    WESTINGHOUSE ELECTRIC               )
22  CORPORATION),                        )
                                         )
23           Defendants.                 )
    _____)

24                            I.

25                         PARTIES

26       1.    Plaintiffs in this action are the above-captioned successor-in-interest to, or the

27  personal representative of the estate of Decedent; and the personal representatives on behalf of

28  ///

K:\ln\ured\11568\FED\PLD\cmp fed (wd).wpd            1
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1    the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

2    "Plaintiffs."

3        2.      The person who sustained asbestos-related lung injuries and death as a result of

4    their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

5    hereinafter "Decedent" is, with the date of death: HAROLD GERECKE died November 7, 2010.

6    DAVID GERECKE is the son of HAROLD GERECKE and is hereinafter referred to as

7    "Successor-in-Interest."

8        3.      Decedent sustained an asbestos-related lung disease and death by precisely the

9    following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

10   containing products at Decedent's jobsites.  The pathogenesis of Decedent's asbestos-related

11   diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by

12   reference herein.

13       4.      All of Plaintiffs' claims arise out of a similar series of occurrences: repeated

14   exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

15   and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period

16   of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,

17   resulting in cumulative, progressive, incurable lung diseases.

18       5.      Each Plaintiff claims damages for an asbestos-related disease arising from an

19   identical series of occurrences not dependent on Decedent's worksite but on the fact that

20   asbestos-containing products, when handled in the manner in which they were intended, released

21   harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The

22   allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature

23   of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are

24   all identical.

25       6.      Plaintiffs are informed and believe, and thereon allege, that at all times herein

26   mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

27   proprietorships and/or other business entities organized and existing under and by virtue of the

28   laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

1   said defendants, and each of them, were and are authorized to do and are doing business in the

2   State of California, and that said defendants have regularly conducted business in the State of

3   California.

## II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.   <u>Jurisdiction</u>:  Plaintiff DAVID GERECKE is a citizen of the State of Texas.

Plaintiff(s) WALTER GERECKE, REBECCA GERECKE CHAPMAN are citizens of the

following states, respectively: Washington, Missouri.

Defendants are each corporations incorporated under the laws of and having its principal

places of business in the following States:

| DEFENDANT | STATE |
| --- | --- |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia |
| GENERAL ELECTRIC COMPANY | Connecticut |
| GENERAL DYNAMICS CORPORATION | Virginia |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | New Jersey |
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | New York/Delaware |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

between citizens of different states in which the matter in controversy exceeds, exclusive of costs

and interest, seventy-five thousand dollars.

8.   <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of

California and assignment to the San Francisco Division of said district is proper as a substantial

part of the events or omissions which give rise to the claims asserted by Plaintiffs herein

occurred within the County of San Francisco, California, and Defendants are subject to personal

jurisdiction in this district at the time the action is commenced.

///

### III.

### CAUSES OF ACTION

FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF DAVID GERECKE COMPLAINS OF DEFENDANTS HUNTINGTON

INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.),

GENERAL ELECTRIC COMPANY, GENERAL DYNAMICS CORPORATION, FOSTER

WHEELER LLC (FKA FOSTER WHEELER CORPORATION), CBS CORPORATION (FKA

VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), THEIR

"ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR

NEGLIGENCE ALLEGES:

9.      At all times herein mentioned, each of the named defendants was the successor,

successor in business, successor in product line or a portion thereof, assign, predecessor,

predecessor in business, predecessor in product line or a portion thereof, parent, holding

company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

otherwise directing and/or facilitating the use of, or advertising a certain product, namely

asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

conduct of each successor, successor in business, successor in product line or a portion thereof,

assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

1   sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

2   rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

3   products containing asbestos. The following defendants, and each of them, are liable for the acts

4   of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

5   destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each

6   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

7   ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each

8   such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

9   role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

10   originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. AVONDALE SHIPYARDS, INC. CONTINENTAL MARITIME INDUSTRIES, INC. EASTERN IDAHO CONSTRUCTION COMPANY INGALLS SHIPBUILDING, INC. NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY NORTH CAROLINA SHIPBUILDING NORTHROP GRUMMAN SHIP SYSTEMS, INC. SERVICE ENGINEERING INDUSTRIES, INC. |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED TRUMBULL ELECTRIC MANUFACTURING COMPANY G E INDUSTRIAL SYSTEMS CURTIS TURBINES PARSONS TURBINES GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC. CBS CORPORATION WESTINGHOUSE ELECTRIC CORPORATION WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY B.F. STURTEVANT KPIX TELEVISION STATION PARAMOUNT COMMUNICATIONS, INC GULF & WESTERN INDUSTRIES, INC. NORTH & JUDD MANUFACTURING COMPANY |

28   ///

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL DYNAMICS CORPORATION | CONVAIR |
| | VULTEE AIRCRAFT INC. |
| | CONSOLIDATED VULTEE AIRCRAFT CORPORATION |
| | ASBESTOS CORPORATION LIMITED |

10. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

12. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

///

1        13.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

2  have known, and intended that the aforementioned asbestos and products containing asbestos and

3  related products and equipment, would be transported by truck, rail, ship, and other common

4  carriers, that in the shipping process the products would break, crumble, or be otherwise

5  damaged; and/or that such products would be used for insulation, construction, plastering,

6  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

7  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

8  breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

9  release of airborne asbestos fibers, and that through such foreseeable use and/or handling

10  "exposed persons," including Decedent herein, would use or be in proximity to and exposed to

11  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

12  persons working in proximity to said products, directly or through reentrainment.

13        14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-

14  containing products referred to herein in a manner that was reasonably foreseeable. Decedent's

15  exposure to asbestos and asbestos-containing products is on current information as set forth at

16  various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference

17  herein.

18        15.    As a direct and proximate result of the acts, omissions, and conduct of the

19  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure

20  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

21  or harm to the Decedent as set forth in **Exhibit A,** attached to Plaintiffs' complaint and

22  incorporated by reference herein.

23        16.    Plaintiffs are informed and believe, and thereon allege, that progressive lung

24  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

25  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

26  asbestos and asbestos-containing products over a period of time.

27  ///

28  ///

1       17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-

2 containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-

3 containing products presented any risk of injury and/or disease.

4       18.    As a direct and proximate result of the aforesaid conduct of the defendants, their

5 "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,

6 nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

7 amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this

8 complaint accordingly when the true and exact cost thereof is ascertained.

9       19.    As a direct and proximate result of the aforesaid conduct of the defendants, their

10 ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value

11 of medial care provided by Decedent's family members measured by, inter alia, the costs

12 associated with the hiring a registered nurse, home hospice, or other service provider, the true

13 and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to

14 amend this complaint accordingly when the true and exact costs are known or at time of trial.

15       20.    As a direct and proximate result of the aforesaid conduct of defendants, their

16 ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person,

17 body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and

18 related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,

19 from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven

20 at trial.

21       21.    As a further direct and proximate result of the said conduct of the defendants,

22 their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,

23 entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

24 pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is

25 requested to amend this complaint to conform to proof at the time of trial.

26       22.    As a further direct and proximate result of the said conduct of the defendants,

27 their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-

28 ///

1  containing products caused severe and permanent injury to Decedent, and ultimately Decedent

2  died on the date previously stated herein.

3      23.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

4  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

5  had full knowledge of, or should have known of, each of the acts set forth herein.

6      24.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the

7  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

8  and each defendant's officers, directors, and managing agents participated in, authorized,

9  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

10  each of their ALTERNATE ENTITIES as set forth herein.

11      25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

12  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in

13  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed

14  persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive

15  damages against said defendants.

16      WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

17  each of them, as hereinafter set forth.

18  SECOND CAUSE OF ACTION<br>(Products Liability - Survival)

19

20      PLAINTIFF DAVID GERECKE AS SUCCESSOR-IN-INTEREST TO THE

21  DECEDENT HAROLD GERECKE COMPLAINS OF DEFENDANTS HUNTINGTON

22  INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.),

23  GENERAL ELECTRIC COMPANY, GENERAL DYNAMICS CORPORATION, FOSTER

24  WHEELER LLC (FKA FOSTER WHEELER CORPORATION), CBS CORPORATION (FKA

25  VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), THEIR

26  "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE,

27  FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY

28  (SURVIVAL), COMPLAIN AS FOLLOWS:

26.   Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First Cause of Action herein.

27.   Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

28.   Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed persons," including Decedent herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

29.   "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Decedent and others similarly situated were exposed.

30.   In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part,

1    from scientific studies performed by, at the request of, or with the assistance of, said defendants,

2    their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

3    defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

4        31.    On or before 1930, and thereafter, said defendants, their ALTERNATE

5    ENTITIES and each of them, were aware that members of the general public and other "exposed

6    persons," who would come in contact with their asbestos and asbestos-containing products, had

7    no knowledge or information indicating that asbestos or asbestos-containing products could

8    cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

9    members of the general public and other "exposed persons," who came in contact with asbestos

10   and asbestos-containing products, would assume, and in fact did assume, that exposure to

11   asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

12   hazardous to health and human life.

13       32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

14   of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

15   lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

16   market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

17   asbestos-containing products without attempting to protect "exposed persons" from, or warn

18   "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

19   asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn

20   "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

21   asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

22   intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

23   and suppressed said knowledge from "exposed persons" and members of the general public, thus

24   impliedly representing to "exposed persons" and members of the general public that asbestos and

25   asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their

26   ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

27   representations with the knowledge of the falsity of said implied representations.

28   ///

1   33. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

2 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

3 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

4 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

5 sale, inspection, installation, contracting for installation, repair, marketing, warranting,

6 rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

7 directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

8 products. In pursuance of said financial motivation, said defendants, their ALTERNATE

9 ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

10 were consciously willing and intended to permit asbestos and asbestos-containing products to

11 cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

12 including Decedent.

13   34. Plaintiffs allege that the aforementioned defendants, their ALTERNATE

14 ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

15 products, to be safe for their intended use, but that their asbestos and asbestos-containing

16 products, created an unreasonable risk of bodily harm to exposed persons.

17   35. Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

18 their representations, lack of warnings, and implied warranties of fitness of asbestos and their

19 asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent

20 suffered permanent injury and death as alleged herein.

21   36. As a direct and proximate result of the actions and conduct outlined herein,

22 Decedent have suffered the injuries and damages herein alleged.

23   WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and

24 each of them, as hereinafter set forth.

25 ///

26 ///

27 ///

28

K:\Injured\11156R\FED\PLD\cmp fed (wd).wpd     12

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2

### THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

3    PLAINTIFF DAVID GERECKE, AS WRONGFUL DEATH HEIR, AND AS

4  SUCCESSOR-IN-INTEREST TO HAROLD GERECKE DECEASED, AND PLAINTIFF(S)

5  WALTER GERECKE, REBECCA GERECKE CHAPMAN AS LEGAL HEIR(S) OF

6  DECEDENT, COMPLAIN OF DEFENDANTS HUNTINGTON INGALLS INCORPORATED

7  (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), GENERAL ELECTRIC

8  COMPANY, GENERAL DYNAMICS CORPORATION, FOSTER WHEELER LLC (FKA

9  FOSTER WHEELER CORPORATION), CBS CORPORATION (FKA VIACOM INC., FKA

10 WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND

11 EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE

12 OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

13      37.    Plaintiffs incorporate by reference each paragraph contained within the First

14 Cause of Action as though fully set forth herein.

15      38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth

16 above.

17      39.    The individuals set forth as heirs constitute all of the surviving heirs of the

18 Decedent.

19      40.    As a direct and proximate result of the conduct of the defendants, their

20 ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

21 containing products caused Decedent to develop diseases from which condition Decedent died.

22 Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

23 filing the complaint.

24      41.    At all times prior to his death, Decedent was a parent to Plaintiff children.

25      42.    As a direct and proximate result of the conduct of defendants, and each of them,

26 and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

27 of care, society, comfort, attention, services, and support of Decedent all to the damage of

28 Decedent's heirs.

K:\Injured\111568\FED\PLD\cmp fed (wd).wpd                13

1     43.    As a further direct and proximate result of the conduct of defendants, and each of

2  them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount

3  currently not ascertained.

4     WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as

5  hereinafter set forth.

6                  FOURTH  CAUSE OF ACTION
                    (Products Liability - Wrongful Death)

7

8     PLAINTIFF DAVID GERECKE, AS WRONGFUL DEATH HEIR, AND AS

9  SUCCESSOR-IN-INTEREST TO HAROLD GERECKE DECEASED, AND PLAINTIFF(S)

10  WALTER GERECKE, REBECCA GERECKE CHAPMAN AS LEGAL HEIR(S) OF

11  DECEDENT, COMPLAIN OF DEFENDANTS HUNTINGTON INGALLS INCORPORATED

12  (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), GENERAL ELECTRIC

13  COMPANY, GENERAL DYNAMICS CORPORATION, FOSTER WHEELER LLC (FKA

14  FOSTER WHEELER CORPORATION), CBS CORPORATION (FKA VIACOM INC., FKA

15  WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND

16  EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT

17  CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS

18  FOLLOWS:

19     44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

20  paragraph of the First, Second and Third Causes of Action herein.

21     45.    As a direct and proximate result of the conduct of defendants, and each of them,

22  Decedent's heirs have sustained the injuries and damages previously alleged.

23     WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

24  each of them, as hereinafter set forth.

25  ///

26  ///

27  ///

28

## IV.

## DAMAGES AND PRAYER

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

(a)   For Plaintiffs' general damages according to proof;

(b)   For Plaintiffs' loss of income, wages and earning potential according to proof;

(c)   For Plaintiffs' medical and related expenses according to proof;

(d)   For Plaintiffs' cost of suit herein;

(e)   For exemplary or punitive damages according to proof;

(f)   For damages for fraud according to proof; and

(g)   For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated:  7/16/11                          BRAYTON❖PURCELL LLP


By: _____
David R. Donadio
Attorneys for Plaintiffs


## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated:  7/16/11                          BRAYTON❖PURCELL LLP


By: _____
David R. Donadio
Attorneys for Plaintiffs

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1          EXHIBIT A

2    <u>Decedent</u>: HAROLD GERECKE, Deceased.

3

4    <u>Decedent's injuries</u>:  Decedent was diagnosed with mesothelioma on or about June 2009

5

6    Decedent died on November 7, 2010.

7

8    <u>Retirement Status</u>:  Decedent retired from his last place of employment at regular retirement age.

9    He had therefore suffered no disability from his asbestos-related disease as "disability" is defined

10   in California Code of Civil Procedure § 340.2.

11

12   <u>Defendants</u>:  Plaintiffs contend that the asbestos-containing products to which Decedent  was or

13   may have been exposed to were manufactured, supplied, distributed, installed and/or contracted

14   for by defendants and each of them.  Decedent's exposure to asbestos occurred at the following

15   times and places, and involved exposure to dust created by the contractors and the products of the

16   entities listed below.  The exposure includes, <u>but is not limited,</u> to the following presently known

17   contractors and the manufacturers and distributors of asbestos-containing products:

18

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Strickard Standard Service Station | Strickard Standard Service Station, Jackson, MO | Service Station Attendant | 1954-1955 (Approx. 8 months) |
| US Navy | Norfolk Naval Shipyard, Portsmouth, VA | Machinist Mate | 1955 |
| | <u>TICONDEROGA</u> (CV-14) | | 1955- 1957 |
| | Norfolk Naval Shipyard, Portsmouth, VA | | 1957-1958 (Approx. 9 months) |
| | Naval Air Station, Alameda, CA | | 1958 |

28   ///

| | Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|---|
| 2 | US Navy | HANCOCK (CV-19) | Machinist Mate | 2/3/1958 - 11/23/1960 |
| 4 | | Hunters Point Naval Shipyard San Francisco, CA | | 1958 (Approx. 2 months) |
| 6 | | Naval Repair Facility Subic Bay Philippines | | |
| 8 | | Pearl Harbor Naval Shipyard Honolulu, HI | | (Approx. 6 weeks) |
| 10 | | Naval Repair Facility Yokosuka, Japan | | |
| 12 | | Naval Repair Facility Okinawa, Japan | | |
| 13 | | U.S. Navy Hong Kong, China | | |
| 14 | US Navy | Naval Station Treasure Island, San Francisco, CA | Shore Patrol | 11/1959-1962 |
| 16 | US Navy | Naval Repair Facility, Sasebo, Japan | Machinist | 1962 |
| 18 | | AJAX (AR-6) | | 12/1962-4/1965 |
| 19 | | Naval Repair Facility Yokosuka, Japan | | (Approx. 4 months) |
| 20 | | Naval Repair Facility Chinhae, Korea | | |
| 22 | | Naval Repair Facility Okinawa, Japan | | |
| 23 | | Naval Repair Facility Subic Bay Philippines | | |
| 25 | Nicolai Joffe Corp. Ship Dismantling Div. 9171 Wilshire Blvd., Ste. 428 | Nicolai Joffe Shipyard Richmond, CA | Dismantler | 4/1965-12/1965 |
| 27 | | OGLALA (ARG-1) | | |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Self-Employment | Moore's Garage 23rd St. Richmond, CA | Auto Mechanic | 1966 |
| US Department of Defense | Hunters Point Naval Shipyard, San Francisco, CA | Marine Machinist (Journeyman) | 9/22/1966-1967 (Approx. 1 year) |
| | Various ships including the following: | | |
| | MIDWAY (CV-41) | | (Approx. 40 hours) |
| | CONSTELLATION (CV-64) | | (Approx. 1 month) |
| | RANGER (CV-61) | | |
| | KIDD (DD-661) | | (Approx. 3 nights) |
| | BENNINGTON (CV-20) | | (Approx. 2 eight hour shifts) |
| | BON HOMME RICHARD (CV-31) | | (Approx. 16 hours) |
| | BRADLEY (DE-1041) | | (Approx. 3 shifts) |
| | CORAL SEA (CVA-43) | | (Approx. 8 hours) |
| | HALIBUT (SS-232) | | (Approx. 16 hours) |
| | HANCOCK (CV-19) | | (Approx. 40 hours) |
| | HECTOR (AR-7) | | (Approx. 24 hours) |
| | HORNET (CV-12) | | (Approx. 1 week) |
| | INTREPID (CV-11) | | (Less than 1 week) |
| | ENTERPRISE (CVAN-65) | | |
| | ORISKANY (CV-34) | | (Approx. 2 weeks) |

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Department of Defense | Mare Island Naval Shipyard, Vallejo, CA | Marine Machinist | 1/1/1968-9/1969 |
| | Various ships including the following: | | |
| | PINTADO (SSN-672) | | (Approx. 4 months) |
| | SCAMP (SS-588) | | (Approx. 4 months) |
| | DRUM (SSN-667) | | |
| | HAWKBILL (SSN-666) | | (Approx. 4 months, on and off) |
| | GUITARRO (SSN-665) | | (Approx. 2 days) |
| | LONG BEACH (CGN-9) | | (Approx. 1 week) |
| | THOMAS JEFFERSON (SSBN-618) | | (1 month, off and on) |
| | ANDREW JACKSON (SSBN-619) | | (Approx. 5 weeks) |
| | BREMERTON (CA-130) | | (Approx. 2 days) |
| | COCHRANE (DDG-21) | | |
| | DANIEL BOONE (SSBN-629) | | (1-2 months) |
| | GRAYBACK (SS-208) | | (Approx. 3 weeks) |
| | HADDOCK (SSN-621) | | (Approx. 16 hours) |
| | PLUNGER (SSN-595) | | (Approx. 1 week) |
| | SEA WOLF (SSN-575) | | |
| | LEWIS & CLARK (SSN-644) | | (Approx. 6 months, on & off) |
| | RAZORBACK (SS-394) | | (Approx. 1 month) |

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Marine Machinist | 1969-1983 |
| | Various ships, including: | | |
| | | Supervisor | 1983-1985 |
| | SACRAMENTO (AOE-1) | | Late 1970's (6-7 weeks) |
| | KITTY HAWK (CVA-63) | | (Approx. 6 months) |
| | CONSTELLATION (CV-64) | | (Approx. 9 months) |
| | MISSOURI (BB-63) | | (Approx. 1 month) |
| | NEW JERSEY (BB-62) | | Early 1980's (Approx. 6 weeks) |
| | BARB (SSN-596) | | |
| | BENNINGTON (CV-20) | | (Approx. 3 weeks) |
| | BOXER (CV-21) | | (Approx. 3 weeks) |
| | ENTERPRISE (CVAN-65) | | 1981 (Approx. 6 months) |
| | GRAYBACK (SSG-574) | | |
| | HANCOCK (CVA-19) | | 1977-1978 (Approx. 4 months) |
| | HECTOR (AR-7) | | Early 1980's |
| | MIDWAY (CVA-41) | | (Approx. 1 month) |
| | PATRICK HENRY (SSN-599) | | |
| | RANGER (CVA-61) | | Late 1970's-early 1980's (Approx. 4 months) |
| | VALLEY FORGE (CV-45) | | Late 1970's (Approx. 1 month) |

K:\Injured\111568\FED\PLD\cmp fcd (wd).wpd

21

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Department of Defense | Fisher Controls, School Marshalltown, IA | Trainee | Early 1970s (Approx. 4 weeks) |

NON-OCCUPATIONAL EXPOSURE:

During the 1950s and 1970s, Decedent performed automotive repair work on his personal vehicles. Decedent performed engine work and brake replacements on his personal vehicles. Decedent performed the same procedure during each brake replacement job. Decedent removed the existing, deteriorated brake pads, blew out the remaining asbestos-containing dust and residue with his breath and wiped the surface with a rag. Decedent hand sanded the replacement brake pad before installing it onto the shoe. Decedent purchased replacement brakes from WEST BAY AUTO, Port Orchard, Washington, and the AUTOZONE, Port Orchard, Washington.

1955 or 1956 DODGE (CHRYSLER LLC) Pick-up Truck: In 1966 decedent rebuilt the engine in this vehicle, including removing and replacing the engine and head gaskets. Decedent installed asbestos containing VICTOR (DANA COMPANIES, LLC (FKA DANA CORPORATION)) replacement gaskets.

1956 CHEVROLET (GENERAL MOTORS CORPORATION) Bel-Air: Decedent removed the original equipment manufacturer's brakes in 1962 and installed replacement brakes. Decedent installed BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brakes purchased from D&W AUTO PARTS, Richmond, California.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL