ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-03508-TEH

Johns et al v. General Electric Company et al            Date Filed: 07/18/2011
Assigned to: Hon. Thelton E. Henderson             Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Asbestos Litigation       Nature of Suit: 368 P.I. : Asbestos
                                                    Jurisdiction: Diversity

**Plaintiff**

**Judith Johns**                      represented by   **Alan R. Brayton**
*as Wrongful Death Heir, and as*                      Brayton Purcell LLP
*Successor-in-Interest to Kenneth Johns,*             222 Rush Landing Road
*Deceased*                                            P.O. Box 6169
                                                      Novato, CA 94948-6169
                                                      415-898-1555
                                                      Fax: 415-898-1247
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      Brayton Purcell LLP
                                                      222 Rush Landing Road
                                                      Novato, CA 94948-6169
                                                      (415) 898-1555
                                                      Fax: 415-898-1247
                                                      Email: DDonadio@braytonlaw.com
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth W. Johns Jr.**              represented by   **Alan R. Brayton**
*as Legal Heir of Kenneth Johns,*                     (See above for address)
*Deceased*                                            *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amy Burdick**                       represented by   **Alan R. Brayton**
*as Legal Heir of Kenneth Johns,*                     (See above for address)
*Deceased*                                            *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Warren Pumps, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/18/2011 | 1 | COMPLAINT against General Electric Company, Warren Pumps, LLC ( Filing fee $ 350, receipt number 34611062301.). Filed byKenneth W. Johns Jr., Judith Johns, Amy Burdick. (vlk, COURT STAFF) (Filed on 7/18/2011) (Additional attachment(s) added on 7/22/2011: # 1 Civil Cover Sheet) (vlk, COURT STAFF). (Additional attachment(s) added on 7/22/2011: # 2 Exhibit A) (vlk, COURT STAFF). (Entered: 07/20/2011) |
| 07/18/2011 | | CASE DESIGNATED for Electronic Filing. (vlk, COURT STAFF) (Filed on 7/18/2011) (Entered: 07/20/2011) |
| 07/18/2011 | 2 | NOTICE of Tag Along Action by Amy Burdick, Judith Johns, Kenneth W. Johns Jr. (vlk, COURT STAFF) (Filed on 7/18/2011) (vlk, COURT STAFF). (Entered: 07/20/2011) |
| 07/18/2011 | 3 | Certificate of Interested Entities by Amy Burdick, Judith Johns, Kenneth W. Johns Jr. (vlk, COURT STAFF) (Filed on 7/18/2011) (vlk, COURT STAFF). (Entered: 07/20/2011) |
| 07/18/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Amy Burdick, Judith Johns, Kenneth W. Johns Jr.. (vlk, COURT STAFF) (Filed on 7/18/2011) (vlk, COURT STAFF). (Entered: 07/20/2011) |
| 07/18/2011 | 5 | Summons Issued as to General Electric Company, Warren Pumps, LLC. (vlk, COURT STAFF) (Filed on 7/18/2011) (Entered: 07/20/2011) |
| 07/18/2011 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 10/19/2011. Case Management Conference set for 10/26/2011 01:30 PM. (Attachments: # 1 Standing Order)(vlk, COURT STAFF) (Filed on 7/18/2011) (Entered: 07/20/2011) |
| 07/22/2011 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (vlk, COURT STAFF) (Filed on 7/22/2011) (Entered: 07/22/2011) |
| 07/25/2011 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Thelton E. Henderson for all further proceedings. Magistrate Judge Donna M. Ryu no longer assigned to the case. Signed by the Executive Committee on July 25, 2011. (cjl, COURT STAFF) (Filed on 7/25/2011) (Entered: 07/25/2011) |
| 07/26/2011 | 9 | CLERK'S NOTICE on Reassignment. Initial Case Management Conference set for 10/31/2011 01:30 PM in Courtroom 12, 19th Floor, San Francisco. (tmi, COURT STAFF) (Filed on 7/26/2011) (Entered: 07/26/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/29/2011 11:15:11 | | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-03508-TEH |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

E-filing

Attorneys for Plaintiffs

*ORIGINAL FILED*

2011 JUL 18 P 1:24
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DMR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

CV 11 3508

| | |
|---|---|
| JUDITH JOHNS, as Wrongful Death Heir, and as Successor-in-Interest to KENNETH JOHNS, Deceased, and KENNETH W. JOHNS, JR., AMY BURDICK, as Legal Heirs of KENNETH JOHNS, Deceased,<br><br>                    Plaintiffs,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY, WARREN PUMPS, LLC,<br><br>                    Defendants. | No. _____<br><br>COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL |

I.

**PARTIES**

1.      Plaintiffs in this action are the above-captioned successor-in-interest to, or the personal representative of the estate of Decedent; and the personal representatives on behalf of the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as "Plaintiffs."

2.      The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos, hereinafter "Decedent" is, with the date of death: KENNETH JOHNS died August 6, 2010.

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1   JUDITH JOHNS is the spouse of KENNETH JOHNS and is hereinafter referred to as "surviving
2   spouse."

3       3.      Decedent sustained an asbestos-related lung disease and death by precisely the
4   following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-
5   containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related
6   diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by
7   reference herein.

8       4.      All of Plaintiffs' claims arise out of a similar series of occurrences:  repeated
9   exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants
10   and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period
11   of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,
12   resulting in cumulative, progressive, incurable lung diseases.

13       5.      Each Plaintiff claims damages for an asbestos-related disease arising from an
14   identical series of occurrences not dependent on Decedent's worksite but on the fact that
15   asbestos-containing products, when handled in the manner in which they were intended, released
16   harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The
17   allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature
18   of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are
19   all identical.

20       6.      Plaintiffs are informed and believe, and thereon allege, that at all times herein
21   mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole
22   proprietorships and/or other business entities organized and existing under and by virtue of the
23   laws of the State of California, or the laws of some other state or foreign jurisdiction, and that
24   said defendants, and each of them, were and are authorized to do and are doing business in the
25   State of California, and that said defendants have regularly conducted business in the State of
26   California.

27   ///

28   ///

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.   <u>Jurisdiction</u>:  Plaintiff JUDITH JOHNS is a citizen of the State of California.
Plaintiff(s) KENNETH W. JOHNS, JR., AMY BURDICK are citizens of the following states,
respectively: South Carolina; California.

Defendants are each corporations incorporated under the laws of and having its principal
places of business in the following States:

| DEFENDANT | STATE |
|-----------|-------|
| GENERAL ELECTRIC COMPANY | Connecticut |
| WARREN PUMPS, LLC | New Jersey |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action
between citizens of different states in which the matter in controversy exceeds, exclusive of costs
and interest, seventy-five thousand dollars.

8.   <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of
California and assignment to the San Francisco Division of said district is proper as a substantial
part of the events or omissions which give rise to the claims asserted by Plaintiffs herein
occurred within the County of San Francisco, California, and Defendants are subject to personal
jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence - Survival)

PLAINTIFF JUDITH JOHNS AS SUCCESSOR-IN-INTEREST TO THE DECEDENT
KENNETH JOHNS COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,
WARREN PUMPS, LLC, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND
FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.   At all times herein mentioned, each of the named defendants was the successor,
successor in business, successor in product line or a portion thereof, assign, predecessor,

1 predecessor in business, predecessor in product line or a portion thereof, parent, holding
2 company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole
3 or partial owner of or member in an entity researching, studying, manufacturing, fabricating,
4 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,
5 supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,
6 representing, endorsing servicing, installing, contracting for installation, repairing, marketing,
7 warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or
8 otherwise directing and/or facilitating the use of, or advertising a certain product, namely
9 asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be
10 called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious
11 conduct of each successor, successor in business, successor in product line or a portion thereof,
12 assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,
13 venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or
14 entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,
15 designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,
16 sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,
17 rebranded, manufactured for others and advertised a certain product, namely asbestos, and other
18 products containing asbestos. The following defendants, and each of them, are liable for the acts
19 of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual
20 destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each
21 of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE
22 ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each
23 such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading
24 role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill
25 originally attached to each such ALTERNATE ENTITY:

26 ///

27 ///

28 ///

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |
| WARREN PUMPS, LLC | WARREN PUMPS, INC.<br>QUIMBY PUMP COMPANY<br>WARREN STEAM PUMPS COMPANY |

10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

///

1   12. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

2 exercise due care in the pursuance of the activities mentioned above and defendants, and each of

3 them, breached said duty of due care.

4   13. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

5 have known, and intended that the aforementioned asbestos and products containing asbestos and

6 related products and equipment, would be transported by truck, rail, ship, and other common

7 carriers, that in the shipping process the products would break, crumble, or be otherwise

8 damaged; and/or that such products would be used for insulation, construction, plastering,

9 fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

10 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

11 breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

12 release of airborne asbestos fibers, and that through such foreseeable use and/or handling

13 "exposed persons," including Decedent herein, would use or be in proximity to and exposed to

14 said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

15 persons working in proximity to said products, directly or through reentrainment.

16   14. Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-

17 containing products referred to herein in a manner that was reasonably foreseeable. Decedent's

18 exposure to asbestos and asbestos-containing products is on current information as set forth at

19 various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference

20 herein.

21   15. As a direct and proximate result of the acts, omissions, and conduct of the

22 defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure

23 to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

24 or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and

25 incorporated by reference herein.

26   16. Plaintiffs are informed and believe, and thereon allege, that progressive lung

27 disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

28 ///

Case MDL No. 875  Document 7602-2  Filed 07/29/11  Page 10 of 23

1  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
2  asbestos and asbestos-containing products over a period of time.

3      17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-
4  containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-
5  containing products presented any risk of injury and/or disease.

6      18.    As a direct and proximate result of the aforesaid conduct of the defendants, their
7  "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,
8  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact
9  amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this
10  complaint accordingly when the true and exact cost thereof is ascertained.

11     19.    As a direct and proximate result of the aforesaid conduct of the defendants, their
12  ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value
13  of medial care provided by Decedent's family members measured by, inter alia, the costs
14  associated with the hiring a registered nurse, home hospice, or other service provider, the true
15  and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to
16  amend this complaint accordingly when the true and exact costs are known or at time of trial.

17     20.    As a direct and proximate result of the aforesaid conduct of defendants, their
18  ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person,
19  body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and
20  related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,
21  from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven
22  at trial.

23     21.    As a further direct and proximate result of the said conduct of the defendants,
24  their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,
25  entitlements, wages, profits, and commissions, a diminishment of earning potential, and other
26  pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is
27  requested to amend this complaint to conform to proof at the time of trial.

28  ///

1    22.    As a further direct and proximate result of the said conduct of the defendants,

2  their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-

3  containing products caused severe and permanent injury to Decedent, and ultimately Decedent

4  died on the date previously stated herein.

5    23.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

6  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

7  had full knowledge of, or should have known of, each of the acts set forth herein.

8    24.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the

9  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

10  and each defendant's officers, directors, and managing agents participated in, authorized,

11  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

12  each of their ALTERNATE ENTITIES as set forth herein.

13    25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

14  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in

15  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed

16  persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive

17  damages against said defendants.

18    WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

19  each of them, as hereinafter set forth.

20                             SECOND CAUSE OF ACTION
                              (Products Liability - Survival)

21

22    PLAINTIFF JUDITH JOHNS AS SUCCESSOR-IN-INTEREST TO THE DECEDENT

23  KENNETH JOHNS COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,

24  WARREN PUMPS, LLC, THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH

25  FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR

26  PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

27    26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

28  paragraph of the First Cause of Action  herein.

1    27.    Defendants, their "alternate entities," and each of them, knew and intended that
2  the above-referenced asbestos and asbestos-containing products would be used by the purchaser
3  or user without inspection for defects therein or in any of their component parts and without
4  knowledge of the hazards involved in such use.

5    28.    Said asbestos and asbestos-containing products were defective and unsafe for their
6  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
7  and/or death.  The defect existed in the said products at the time they left the possession of
8  defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause
9  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
10  persons," including Decedent herein, while being used in a reasonably foreseeable manner,
11  thereby rendering the same defective, unsafe, and dangerous for use.

12    29.    "Exposed persons" did not know of the substantial danger of using said products.
13  Said dangers were not readily recognizable by "exposed persons."  Said defendants, their
14  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
15  which Decedent and others similarly situated were exposed.

16    30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
17  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
18  sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,
19  promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
20  marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
21  and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
22  did so with conscious disregard for the safety of "exposed persons" who came in contact with
23  said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
24  ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
25  death resulting from exposure to asbestos or asbestos-containing products, including, but not
26  limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part,
27  from scientific studies performed by, at the request of, or with the assistance of, said defendants,
28  ///

1  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

2  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

3       31.    On or before 1930, and thereafter, said defendants, their ALTERNATE

4  ENTITIES and each of them, were aware that members of the general public and other "exposed

5  persons," who would come in contact with their asbestos and asbestos-containing products, had

6  no knowledge or information indicating that asbestos or asbestos-containing products could

7  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

8  members of the general public and other "exposed persons," who came in contact with asbestos

9  and asbestos-containing products, would assume, and in fact did assume, that exposure to

10  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

11  hazardous to health and human life.

12       32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

13  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

14  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

15  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

16  asbestos-containing products without attempting to protect "exposed persons" from, or warn

17  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

18  asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn

19  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

20  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

21  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

22  and suppressed said knowledge from "exposed persons" and members of the general public, thus

23  impliedly representing to "exposed persons" and members of the general public that asbestos and

24  asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their

25  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

26  representations with the knowledge of the falsity of said implied representations.

27       33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

28  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

K:\Injured\108876\FED\PLD\cmp fed (wd).wpd
10
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1    ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

2    manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

3    sale, inspection, installation, contracting for installation, repair, marketing, warranting,

4    rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

5    directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

6    products. In pursuance of said financial motivation, said defendants, their ALTERNATE

7    ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

8    were consciously willing and intended to permit asbestos and asbestos-containing products to

9    cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

10   including Decedent.

11      34.      Plaintiffs allege that the aforementioned defendants, their ALTERNATE

12   ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

13   products, to be safe for their intended use, but that their asbestos and asbestos-containing

14   products, created an unreasonable risk of bodily harm to exposed persons.

15      35.      Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

16   their representations, lack of warnings, and implied warranties of fitness of asbestos and their

17   asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent

18   suffered permanent injury and death as alleged herein.

19      36.      As a direct and proximate result of the actions and conduct outlined herein,

20   Decedent have suffered the injuries and damages herein alleged.

21      WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and

22   each of them, as hereinafter set forth.

23   ///

24   ///

25   ///

26

27

28

K:\Injured\108876\FED\PLD\cmp fed (wd).wpd                11
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1

## THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

2

3    PLAINTIFF JUDITH JOHNS, AS WRONGFUL DEATH HEIR, AND AS

4    SUCCESSOR-IN-INTEREST TO KENNETH JOHNS DECEASED, AND PLAINTIFF(S)

5    KENNETH·W. JOHNS, JR., AMY BURDICK AS LEGAL HEIR(S) OF DECEDENT,

6    COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, WARREN PUMPS,

7    LLC, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD,

8    SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE

9    (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

10       37.    Plaintiffs incorporate by reference each paragraph contained within the First

11   Cause of Action as though fully set forth herein.

12       38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth

13   above.

14       39.    The individuals set forth as heirs constitute all of the surviving heirs of the

15   Decedent.

16       40.    As a direct and proximate result of the conduct of the defendants, their

17   ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

18   containing products caused Decedent to develop diseases from which condition Decedent died.

19   Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

20   filing the complaint.

21       41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the

22   surviving spouse.

23       42.    As a direct and proximate result of the conduct of defendants, and each of them,

24   and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

25   of care, society, comfort, attention, services, and support of Decedent all to the damage of

26   Decedent's heirs.

27   ///

28   ///

1   43.   As a further direct and proximate result of the conduct of defendants, and each of

2   them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount

3   currently not ascertained.

4   WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as

5   hereinafter set forth.

6   <center>FOURTH CAUSE OF ACTION<br>(Products Liability - Wrongful Death)</center>

7

8   PLAINTIFF JUDITH JOHNS, AS WRONGFUL DEATH HEIR, AND AS

9   SUCCESSOR-IN-INTEREST TO KENNETH JOHNS DECEASED, AND PLAINTIFF(S)

10  KENNETH W. JOHNS, JR., AMY BURDICK AS LEGAL HEIR(S) OF DECEDENT,

11  COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, WARREN PUMPS,

12  LLC, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH,

13  SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

14  LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

15  44.   Plaintiffs incorporate herein by reference, as though fully set forth herein, each

16  paragraph of the First, Second and Third Causes of Action herein.

17  45.   As a direct and proximate result of the conduct of defendants, and each of them,

18  Decedent's heirs have sustained the injuries and damages previously alleged.

19  WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

20  each of them, as hereinafter set forth.

21  <center>**IV.**</center>

22  <center>**DAMAGES AND PRAYER**</center>

23  WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

24  each of them in an amount to be proved at trial in each individual case, as follows:

25  (a)   For Plaintiffs' general damages according to proof;

26  (b)   For Plaintiffs' loss of income, wages and earning potential according to proof;

27  (c)   For Plaintiffs' medical and related expenses according to proof;

28  (d)   For Plaintiffs' cost of suit herein;

1       (e)    For exemplary or punitive damages according to proof;

2       (f)    For damages for fraud according to proof; and

3       (g)    For such other and further relief as the Court may deem just and proper, including

4 costs and prejudgment interest.

5 Dated: _____7/16/11_____          BRAYTON❖PURCELL LLP

6

7                         By: _____

8                              David R. Donadio
                             Attorneys for Plaintiffs

9

10

11                           <u>JURY DEMAND</u>

12     Plaintiffs hereby demand trial by jury of all issues of this cause.

13

14 Dated: _____7/16/11_____          BRAYTON❖PURCELL LLP

15

16                         By: _____

17                              David R. Donadio
                             Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1    EXHIBIT A

2    Decedent: KENNETH JOHNS, Deceased.

3

4    Decedent's injuries: Decedent was diagnosed with asbestosis and asbestos-related pleural

5    disease on or about March 2008.

6

7    Decedent died on August 6, 2010.

8

9    Retirement Status: Decedent retired from his last place of employment at regular retirement age.

10   He had therefore suffered no disability from his asbestos-related disease as "disability" is defined

11   in California Code of Civil Procedure § 340.2.

12

13   Defendants: Plaintiffs contend that the asbestos-containing products to which Decedent was or

14   may have been exposed to were manufactured, supplied, distributed, installed and/or contracted

15   for by defendants and each of them.   Decedent's exposure to asbestos occurred at the following

16   times and places, and involved exposure to dust created by the contractors and the products of the

17   entities listed below.   The exposure includes, but is not limited, to the following presently known

18   contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | BAUSELL (DD-845) at the following locations: | Boilermaker | 8/09/1968-9/1971 |
|  | Naval Repair Facility, North Island, San Diego, CA; |  | 8/09/1968 - 9/7/1968; 3/1969 - 6/1970; 12/1970 |
|  | Far East deployment, including Yokosuka, Japan, Subic Bay Philippines, and Gulf of Tonkin, Vietnam; |  | 9/7/1968 - 3/4/1969; 6/1/1970 - 12/1/1970 |
|  | Long Beach Naval Shipyard, Long Beach, CA |  | 9/1971- 12/10/1971 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Triangle Service Production Data Inc., Bakersfield, CA | Oil fields at various central and southern CA locations, including, | Tester Specialist | 12/13/1971-1973 |
| | San Ardo Oil Fields, San Ardo, CA; | | |
| | US Naval Petroleum, Elk Hills, CA; | | |
| | Cymric Oil Field, Bakersfield, CA | | |
| | Raisin City Oil Field, Raisin City, CA; | | |
| | Various oil fields, Imperial County, CA; | | |
| | Oil field, Redlands, CA | | |
| Production Data, Inc. Bakersfield, CA | Oil fields at various central and southern CA locations, including, | Tester Specialist | 10/1973 - 9/1974; 4/1975-12/1975 |
| | San Ardo Oil Fields, San Ardo, CA; | | |
| | Cymric Oil Field, Bakersfield, CA; | | |
| | Thums Island Facility (Oil Reserves), Long Beach, CA; | | |
| | Signal Oil and Gas, Huntington Beach, CA | | |
| NL Industries, Inc., Kelly Luttmer 5430 LBJ Fwy., Ste. 1700, Dallas, TX | Various CA oil fields and Wyoming natural gas fields, including, | Tester (Supervisor) | 10/1975-1983 |
| | Midway Sunset Oil Field, Bakersfield, CA;. | | 1975-1/ 1981; |
| | Kern River Oil Field, Bakersfield, CA area; | | |
| | US Naval Petroleum, Elk Hills, CA; | | 1975 - 1/ 1981; |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| NL Industries, Inc., Kelly Luttmer 5430 LBJ Fwy., Ste. 1700, Dallas, TX (cont'd.) | Various CA oil fields and Wyoming natural gas fields, including, | Tester (Supervisor) | 10/1975-1983 |
| | Cymric Oil Field, Bakersfield, CA; | | |
| | Overthrust belt gas field, Evanston, WY; | | 1/1981 - 6/1982; 4/1983 - (Approx 4 months) |
| | Thunder Creek gas field, Gillette, WY area | | |
| Pengo Wireline of Wyoming, Inc. Evanston, WY | Oil fields at various central and southern CA locations, including, | Tester Specialist | 6/1982 - 4/1983 |
| | San Ardo Oil Fields, San Ardo, CA; | | |
| | Cymric Oil Field, Bakersfield, CA; | | |
| | US Naval Petroleum, Elk Hills, CA; | | |
| | Raisin City Oil Field, Raisin City, CA; | | |
| | Various oil fields, Imperial County, CA; | | |
| | Oil field, Redlands, CA | | |
| Baker Hughes Oilfield Operations, Houston, TX | Oil fields at various central and southern CA locations, including, | Tester Specialist | 1983 (Approx. 3 months) |
| | San Ardo Oil Fields, San Ardo, CA; | | |
| | Cymric Oil Field, Bakersfield, CA; | | |
| | US Naval Petroleum, Elk Hills, CA; | | |
| | Raisin City Oil Field, Raisin City, CA; | | |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Baker Hughes Oilfield Operations, Houston, TX (cont'd.) | Oil fields at various central and southern CA locations, including, | Tester Specialist | 1983 (Approx. 3 months) |
| | Various oil fields, Imperial County, CA; | | |
| | Oil field, Redlands, CA | | |
| United Wire Line Surveys, Inc., Bakersfield, CA Later known as Agnew and Sweet Corporation, 4205 Atlas Court, Bakersfield, CA | Various oil fields, Bakersfield, CA, area, including, | Tester Specialist | 1983-1986 |
| | Cymric Oil Field, Bakersfield, CA; | | |
| | US Naval Petroleum, Elk Hills, CA; | | |
| | Midway Sunset Oil Field, Bakersfield, CA; | | |
| | Kern River Oil Field, Bakersfield, CA area | | |
| Grayson Service, Bakersfield, CA | Various oil fields, Bakersfield, CA, area, including, | Tester Specialist | 1986-1989 |
| | Cymric Oil Field, Bakersfield, CA; | | |
| | US Naval Petroleum, Elk Hills, CA; | | |
| | Midway Sunset Oil Field, Bakersfield, CA; | | |
| | Kern River Oil Field, Bakersfield, CA area | | |

NON-OCCUPATIONAL EXPOSURE:

Friction Exposure:

In 1971, decedent changed the brakes on a used 1967 DODGE half-ton pickup, using a wire brush to scrape off old brake pads and an aerosol brake cleaner to remove brake dust, and installing RAYBESTOS (RAYMARK INDUSTRIES, INC.) brake shoes purchased from SOUTHERN AUTO PARTS, Bakersfield, California.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1   In 1983, decedent changed the brakes on a 1965 FORD MOTOR COMPANY half-ton pickup,
2   using a wire brush to scrape off old brake pads and an aerosol brake cleaner to remove brake
    dust, and installing RAYBESTOS (RAYMARK INDUSTRIES, INC.) brake shoes. Decedent
3   removed the old manual transmission clutch, scraped off old gaskets, and installed new gaskets
    and a BENDIX CORPORATION (HONEYWELL INTERNATIONAL, INC.) automatic clutch.
4   Decedent scraped off original gaskets and installed new gaskets. Decedent purchased
    replacement parts from SOUTHERN AUTO PARTS, Bakersfield, California.

5   In 1995, decedent changed the clutch in a 1970 FORD MOTOR COMPANY diesel two-ton
6   pickup truck. Decedent scraped off original gaskets and installed new gaskets and a four-speed
    BORG WARNER INDUSTRIAL PRODUCTS clutch purchased from the JIM BURGH FORD
7   dealership. Decedent rebuilt the original INTERNATIONAL TRUCK & ENGINE
    CORPORATION engine and transmission, replacing gaskets.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL