ADRMOP, E-Filing

## U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-03240-WHA

| | |
|---|---|
| Kelly et al v. CBS Corporation et al | Date Filed: 06/30/2011 |
| Assigned to: Hon. William Alsup | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Product Liability | Nature of Suit: 365 Personal Inj. Prod. Liability |
| | Jurisdiction: Diversity |

**Plaintiff**

**Barry Kelly**   represented by   **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Molly Kelly**   represented by   **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.

*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**General Electric Company**

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**Todd Shipyards Corporation**

**Defendant**

**Warren Pumps**

**Defendant**

**Raytheon Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/05/2011 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge William Alsup for all further proceedings. Magistrate Judge Laurel Beeler no longer assigned to the case. (kc, COURT STAFF) (Filed on 7/5/2011) (Entered: 07/05/2011) |
| 07/01/2011 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (ls, COURT STAFF) (Filed on 7/1/2011) (Entered: 07/01/2011) |
| 06/30/2011 |   | CASE DESIGNATED for Electronic Filing. (cjl, COURT STAFF) (Filed on 6/30/2011) (Entered: 06/30/2011) |
| 06/30/2011 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 12/22/2011. Case Management Conference set for 12/29/2011 10:30 AM in Courtroom 4, 3rd Floor, Oakland. (Attachments: # 1 Standing Order)(cjl, COURT STAFF) (Filed on 6/30/2011) (Entered: 06/30/2011) |
| 06/30/2011 | 5 | Summons Issued as to CBS Corporation, General Electric Company, Huntington Ingalls Incorporated, Raytheon Company, Todd Shipyards Corporation, Warren Pumps. (cjl, COURT STAFF) (Filed on 6/30/2011) (kc, COURT STAFF). (Entered: 06/30/2011) |
| 06/30/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Barry Kelly, Molly Kelly. (cjl, COURT STAFF) (Filed on 6/30/2011) (kc, COURT STAFF). (Entered: 06/30/2011) |
| 06/30/2011 | 3 | Certificate of Interested Entities by Barry Kelly, Molly Kelly. (cjl, COURT STAFF) (Filed on 6/30/2011) (kc, COURT STAFF). (Entered: 06/30/2011) |
| 06/30/2011 | 2 | NOTICE of Tag-Along Action by Barry Kelly, Molly Kelly. (cjl, COURT STAFF) (Filed on 6/30/2011) (kc, COURT STAFF). (Entered: 06/30/2011) |

| 06/30/2011 | 1 | COMPLAINT (with jury demand) against CBS Corporation, General Electric Company, Huntington Ingalls Incorporated, Raytheon Company, Todd Shipyards Corporation, Warren Pumps (Filing fee $350, receipt number 34611061628). Filed by Barry Kelly, Molly Kelly. (cjl, COURT STAFF) (Filed on 6/30/2011) (Additional attachment(s) added on 7/5/2011: # 1 Civil Cover Sheet) (kc, COURT STAFF). (Entered: 06/30/2011) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/05/2011 14:13:21 | | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-03240-WHA |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., CA S.B. #73685
DAVID R. DONADIO, ESQ., CA S.B. #154436
BRAYTON✜PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BARRY KELLY and MOLLY KELLY, )
            )  No. CV 11 3240
    Plaintiffs,  )
            )  COMPLAINT FOR ASBESTOS
vs.         )  PERSONAL INJURY/ PRODUCTS
            )  LIABILITY/LOSS OF CONSORTIUM;
CBS CORPORATION (FKA VIACOM )  DEMAND FOR JURY TRIAL
INC., FKA WESTINGHOUSE )
ELECTRIC CORPORATION), )
GENERAL ELECTRIC COMPANY, )
HUNTINGTON INGALLS )
INCORPORATED (FKA NORTHROP )
GRUMMAN SHIPBUILDING, INC.), )
TODD SHIPYARDS CORPORATION, )
WARREN PUMPS, LLC, RAYTHEON )
COMPANY, )
            )
    Defendants. )
_____ )

I.

**PARTIES**

1.   Plaintiff in this action, BARRY KELLY, has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos. Plaintiff, MOLLY KELLY, has sustained loss of consortium as set forth in the Third Cause of Action.

///

2. Plaintiff BARRY KELLY sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3. The pathogenesis of Plaintiff BARRY KELLY's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4. All of Plaintiffs' claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff BARRY KELLY's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff BARRY KELLY, resulting in cumulative, progressive, incurable lung diseases.

5. Plaintiff BARRY KELLY claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6. As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff BARRY KELLY.

7. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8. <u>Jurisdiction</u>: Plaintiffs BARRY KELLY and MOLLY KELLY are both citizens of the State of Texas.

Defendants are each corporations incorporated under the laws of and having its principal

1  places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | New York/Delaware |
| GENERAL ELECTRIC COMPANY | Connecticut/New York |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia |
| TODD SHIPYARDS CORPORATION | Washington/Delaware |
| WARREN PUMPS, LLC | New Jersey |
| RAYTHEON COMPANY | Massachusetts/Delaware |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9. <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF BARRY KELLY COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), TODD SHIPYARDS CORPORATION, WARREN PUMPS, LLC, RAYTHEON COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10. At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

\\\

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC. <br> CBS CORPORATION <br> WESTINGHOUSE ELECTRIC CORPORATION <br> WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY <br> B.F. STURTEVANT <br> KPIX TELEVISION STATION <br> PARAMOUNT COMMUNICATIONS, INC <br> GULF & WESTERN INDUSTRIES, INC. <br> NORTH & JUDD MANUFACTURING COMPANY |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY <br> HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED <br> TRUMBULL ELECTRIC MANUFACTURING COMPANY <br> G E INDUSTRIAL SYSTEMS <br> CURTIS TURBINES <br> PARSONS TURBINES <br> GENERAL ELECTRIC JET ENGINES |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. <br> AVONDALE SHIPYARDS, INC. <br> CONTINENTAL MARITIME INDUSTRIES, INC. <br> EASTERN IDAHO CONSTRUCTION COMPANY <br> INGALLS SHIPBUILDING, INC. <br> NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY <br> NORTH CAROLINA SHIPBUILDING <br> NORTHROP GRUMMAN SHIP SYSTEMS, INC. <br> SERVICE ENGINEERING INDUSTRIES, INC. |
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION <br> SEATTLE-TACOMA SHIPBUILDING CORP. |
| WARREN PUMPS, LLC | WARREN PUMPS, INC. <br> QUIMBY PUMP COMPANY <br> WARREN STEAM PUMPS COMPANY |

11.  At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

13. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

14. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

///

15. Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

16. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17. Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18. Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost

thereof is ascertained.

21. As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

24. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF BARRY KELLY COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), TODD SHIPYARDS CORPORATION, WARREN PUMPS, LLC, RAYTHEON COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants,

their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30. On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31. With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

1 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
2 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
3 sale, inspection, installation, contracting for installation, repair, marketing, warranting,
4 rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-
5 containing products. In pursuance of said financial motivation, said defendants, their
6 ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed
7 persons" and in fact were consciously willing and intended to permit asbestos and asbestos-
8 containing products to cause injury to "exposed persons" and induced persons to work with and
9 be exposed thereto, including Plaintiff.

10     33.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE
11 ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
12 products to be safe for their intended use but that their asbestos and asbestos-containing products,
13 created an unreasonable risk of bodily harm to exposed persons.

14     34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
15 and various asbestos-containing products manufactured, fabricated, inadequately researched,
16 designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
17 for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
18 marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
19 aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
20 cannot identify precisely which asbestos or asbestos-containing products caused the injuries
21 complained of herein.

22     35.    Plaintiff relied upon defendants', their "alternate entities'", and each of their
23 representations, lack of warnings, and implied warranties of fitness of asbestos and their
24 asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has
25 been injured permanently as alleged herein.

26     36.    As a direct and proximate result of the actions and conduct outlined herein,
27 Plaintiff has suffered the injuries and damages previously alleged.

28     WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

K:\Injured\115572\FED\PLD\cmp fed (pi-lc).wpd      11
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

ENTITIES, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (Loss of Consortium)

AS AND FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF MOLLY KELLY COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), TODD SHIPYARDS CORPORATION, WARREN PUMPS, LLC, RAYTHEON COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

37.  Plaintiffs incorporate by reference each and every paragraph of the First through Second Causes of Action herein.

38.  Plaintiffs BARRY KELLY and MOLLY KELLY were married on April 22, 2007, and at all times relevant to this action were, and are now, husband and wife.

39.  Prior to plaintiff BARRY KELLY's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, BARRY KELLY has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, plaintiff MOLLY KELLY has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

40.  Plaintiff's discovery of the cause of her loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

41.  As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to plaintiff BARRY KELLY as set forth in this complaint, plaintiff MOLLY KELLY has suffered, and for a long period of time will

1  continue to suffer loss of consortium, including but not by way of limitation, loss of services,
2  marital relations, society, comfort, companionship, love and affection of said spouse, and has
3  suffered severe mental and emotional distress and general nervousness as a result thereof.

## IV.

## PRAYER

WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

Plaintiff BARRY KELLY:

    (a)    For plaintiff's general damages according to proof;

    (b)    For plaintiff's loss of income, wages and earning potential according to proof;

    (c)    For plaintiff's medical and related expenses according to proof;

Plaintiff MOLLY KELLY:

    (d)    For plaintiff's damages for loss of consortium according to proof;

Plaintiffs BARRY KELLY and MOLLY KELLY:

    (e)    For plaintiffs' cost of suit herein;

    (f)    For exemplary or punitive damages according to proof;

    (g)    For damages for fraud according to proof; and

    (h)    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: 6/6/11

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues of this cause.

Dated: 6/6/11

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

# EXHIBIT A

EXHIBIT A

Plaintiff: BARRY KELLY

Plaintiff's injuries: Plaintiff was diagnosed with mesothelioma on or about March 2011.

Retirement Status: Plaintiff is still employed and therefore has suffered no disability due to his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendants: Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants. Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Academy | Student | 6/1969-1973 |
| | GUADALCANAL (LPH-7) | | 1970 (Approx. 1 month); 1972 (Approx. 1 month) |
| U.S. Navy | Naval Training Center San Diego, CA | Trainee | 1972-1975 |
| | Naval Repair Facility (32nd St.) San Diego, CA | | |
| | Long Beach Naval Shipyard Long Beach, CA | Officer (Main Propulsion Assistant) | |
| | DOWNES (DE-1070) | | |
| U.S. Navy | Naval Air Station Pensacola, FL | Pilot | 1975-8/1976 |
| | Naval Air Station North Island, San Diego, CA | | |
| | INDEPENDENCE (CV-62) | Officer | 4/1977-12/1977 |

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy (cont'd.) | Naval Air Station Pensacola, FL | Pilot | 1975-8/1976 |
| | DWIGHT D. EISENHOWER (CVN-69) | | 1/1978-1980 |
| | U.S. Naval Academy Annapolis, MD | | 1980-1983 |
| | Naval Air Station, Cecil Field Jacksonville/Yukon, FL | Trainer | 1983-1985 |
| | SARATOGA (CV-60) | | 1986-1987 |

NON-OCCUPATIONAL:

HOME REMODEL:
At a young age plaintiff participated in home improvement projects at his family residence at 3 Alice Street, Chenango Bridge, New York. Plaintiff assisted his father in installing a floor in their basement. Plaintiff was in proximity to his father as his father cut asbestos containing ARMSTRONG (ARMSTRONG WORLD INDUSTRIES, INC.) vinyl asbestos floor tiles. Plaintiff assisted his father in re-roofing their home. Plaintiff was in proximity to his father as his father cut and applied asbestos containing JOHNS MANVILLE (MANVILLE TRUST) roofing felt.

FRICTION:
Plaintiff owned a 1969 TRIUMPH (FORD MOTOR COMPANY) Spitfire. Plaintiff owned, maintained and repaired this vehicle from 1970-1980. Plaintiff removed the original equipment manufacturer's asbestos containing brakes and replaced them with asbestos containing brakes manufactured by BENDIX (HONEYWELL INTERNATIONAL, INC.) and RAYBESTOS (RAYMARK INDUSTRIES, INC.). Plaintiff removed original equipment manufacturer's asbestos containing exhaust manifold and carburetor gaskets. Plaintiff removed the carburetor and carburetor gasket and replaced it with a STROMBERG carburetor and carburetor gaskets included with the new carburetor. Plaintiff purchased asbestos containing brakes and gaskets from LOU RAPPAPORT'S AUTO, Binghamton, New York.