ADRMOP, E-Filing

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:11-cv-03399-PJH

McClain et al v. United States Steel Corporation et al  
Assigned to: Hon. Phyllis J. Hamilton  
Cause: 28:1332 Diversity-Product Liability

Date Filed: 07/11/2011  
Jury Demand: Plaintiff  
Nature of Suit: 368 P.I. : Asbestos  
Jurisdiction: Diversity

**Plaintiff**

**Gloria McClain**  
*as Wrongful Death Heir, and as*  
*Successor-in-Interest to Tommy*  
*McClain, Deceased*

represented by **Alan R. Brayton**  
Brayton Purcell LLP  
222 Rush Landing Road  
P.O. Box 6169  
Novato, CA 94948-6169  
415-898-1555  
Fax: 415-898-1247  
*ATTORNEY TO BE NOTICED*

**David R. Donadio**  
Brayton Purcell LLP  
222 Rush Landing Road  
Novato, CA 94948-6169  
(415) 898-1555  
Fax: 415-898-1247  
Email: DDonadio@braytonlaw.com  
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lorrie Stevens**

represented by **Alan R. Brayton**  
(See above for address)  
*ATTORNEY TO BE NOTICED*

**David R. Donadio**  
(See above for address)  
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wendy Spencer**

represented by **Alan R. Brayton**  
(See above for address)  
*ATTORNEY TO BE NOTICED*

**David R. Donadio**  
(See above for address)  
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rebecca March**
*as Legal Heirs of Tommy McClain,*
*Deceased*

represented by **Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States Steel Corporation**
*formerly known as*
USX Corporation

**Defendant**

**General Dynamics Corporation**

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**Gunderson, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/11/2011 | 1 | COMPLAINT for Survival, Wrongful Death - Asbestos; Demand for Jury Trial against General Dynamics Corporation, Gunderson, Inc., Huntington Ingalls Incorporated, United States Steel Corporation (Filing fee $ 350.00, receipt number 34611061980). Filed by Wendy Spencer, Gloria McClain, Lorrie Stevens, Rebecca March. (Attachments: # 1 Civil Cover Sheet) (gba, COURT STAFF) (Filed on 7/11/2011) (Entered: 07/12/2011) |
| 07/11/2011 | 2 | Certificate of Interested Entities by Rebecca March, Gloria McClain, Wendy Spencer, Lorrie Stevens (gba, COURT STAFF) (Filed on 7/11/2011) (Entered: 07/12/2011) |
| 07/11/2011 | 3 | NOTICE of Tag-Along Action by Rebecca March, Gloria McClain, Wendy Spencer, Lorrie Stevens (gba, COURT STAFF) (Filed on 7/11/2011) (Entered: 07/12/2011) |
| 07/11/2011 | 4 | Summons Issued as to General Dynamics Corporation, Gunderson, Inc., Huntington Ingalls Incorporated, United States Steel Corporation. (gba, COURT STAFF) (Filed on 7/11/2011) (Entered: 07/12/2011) |
| 07/11/2011 | 5 | Declination to Proceed Before a U.S. Magistrate Judge by Rebecca March, Gloria McClain, Wendy Spencer, Lorrie Stevens. (gba, COURT STAFF) (Filed on 7/11/2011) (Entered: 07/12/2011) |

| 07/11/2011 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 10/14/2011. Case Management Conference set for 10/21/2011 01:30 PM in Courtroom G, 15th Floor, San Francisco. (gba, COURT STAFF) (Filed on 7/11/2011) (Entered: 07/12/2011) |
| 07/11/2011 | | CASE DESIGNATED for Electronic Filing. (gba, COURT STAFF) (Filed on 7/11/2011) (Entered: 07/12/2011) |
| 07/14/2011 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (klhS, COURT STAFF) (Filed on 7/14/2011) (Entered: 07/14/2011) |
| 07/14/2011 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Phyllis J. Hamilton for all further proceedings. Judge Magistrate Judge Joseph C. Spero no longer assigned to the case. Signed by Executive Committee on 7/14/11. (mab, COURT STAFF) (Filed on 7/14/2011) (Entered: 07/14/2011) |
| 07/25/2011 | 9 | ORDER SETTING CASE MANAGEMENT CONFERENCE. Joint Case Management Statement due by 11/10/2011. Initial Case Management Conference set for 11/17/2011 02:00 PM. Signed by Judge Phyllis J. Hamilton on 7/25/11. (nah, COURT STAFF) (Filed on 7/25/2011) (Entered: 07/25/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/29/2011 11:32:35 | | |
| **PACER Login:** | bp0355 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** 4:11-cv-03399-PJH |
| **Billable Pages:** | 3 | **Cost:** 0.24 |



1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON✦PURCELL LLP
3  Attorneys at Law
   222 Rush Landing Road
4  P.O. Box 6169
   Novato, California  94948-6169
5  (415) 898-1555
   (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11  GLORIA MCCLAIN, as Wrongful Death        )  No.
    Heir, and as Successor-in-Interest to    )
12  TOMMY MCCLAIN, Deceased, and             )  CV 11 3399
    LORRIE STEVENS, WENDY SPENCER,           )
13  REBECCA MARCH, as Legal Heirs of         )  COMPLAINT FOR SURVIVAL;
    TOMMY MCCLAIN, Deceased,                 )  WRONGFUL DEATH - ASBESTOS;
14                                           )  DEMAND FOR JURY TRIAL
                Plaintiffs,                  )
15                                           )
    vs.                                      )
16                                           )
    UNITED STATES STEEL                      )
17  CORPORATION (FKA USX                     )
    CORPORATION), GENERAL                    )
18  DYNAMICS CORPORATION,                    )
    HUNTINGTON INGALLS                       )
19  INCORPORATED (FKA NORTHROP               )
    GRUMMAN SHIPBUILDING, INC.),             )
20  GUNDERSON, INC.,                         )
                                             )
21              Defendants.                  )

22

23                              I.

24                           PARTIES

25       1.    Plaintiffs in this action are the above-captioned successor-in-interest to, or the

26  personal representative of the estate of Decedent; and the personal representatives on behalf of

27  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

28  "Plaintiffs."

BRAYTON✦PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1     2.     The person who sustained asbestos-related lung injuries and death as a result of
2 their inhalation of asbestos fibers through the person's occupational exposure to asbestos,
3 hereinafter "Decedent" is, with the date of death: TOMMY MCCLAIN died July 11, 2010.
4 GLORIA MCCLAIN is the spouse of TOMMY MCCLAIN and is hereinafter referred to as
5 "surviving spouse."

6     3.     Decedent sustained an asbestos-related lung disease and death by precisely the
7 following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-
8 containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related
9 diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by
10 reference herein.

11     4.     All of Plaintiffs' claims arise out of a similar series of occurrences: repeated
12 exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants
13 and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period
14 of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,
15 resulting in cumulative, progressive, incurable lung diseases.

16     5.     Each Plaintiff claims damages for an asbestos-related disease arising from an
17 identical series of occurrences not dependent on Decedent's worksite but on the fact that
18 asbestos-containing products, when handled in the manner in which they were intended, released
19 harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The
20 allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature
21 of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are
22 all identical.

23     6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein
24 mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole
25 proprietorships and/or other business entities organized and existing under and by virtue of the
26 laws of the State of California, or the laws of some other state or foreign jurisdiction, and that
27 said defendants, and each of them, were and are authorized to do and are doing business in the
28 ///

1 | State of California, and that said defendants have regularly conducted business in the State of
2 | California.

3 | **II.**

4 | **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

5 | 7.    Jurisdiction:  Plaintiff GLORIA MCCLAIN is a citizen of the State of California.

6 | Plaintiff(s) LORRIE STEVENS, WENDY SPENCER, REBECCA MARCH are citizens of the

7 | following states, respectively: California.

8 | Defendants are each corporations incorporated under the laws of and having its principal

9 | places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| UNITED STATES STEEL CORPORATION (FKA USX CORPORATION) | Delaware; Pennsylvania |
| GENERAL DYNAMICS CORPORATION | Delaware; Virginia |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Delaware; Virginia |
| GUNDERSON, INC. | Oregon |

17 | This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

18 | between citizens of different states in which the matter in controversy exceeds, exclusive of costs

19 | and interest, seventy-five thousand dollars.

20 | 8.    Venue / Intradistrict Assignment.  Venue is proper in the Northern District of

21 | California and assignment to the San Francisco Division of said district is proper as a substantial

22 | part of the events or omissions which give rise to the claims asserted by Plaintiffs herein

23 | occurred within the County of San Francisco, California, and Defendants are subject to personal

24 | jurisdiction in this district at the time the action is commenced.

25 | ///

26 | ///

27 | ///

28 | ///

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence - Survival)

PLAINTIFF GLORIA MCCLAIN AS SUCCESSOR-IN-INTEREST TO THE DECEDENT TOMMY MCCLAIN COMPLAINS OF DEFENDANTS UNITED STATES STEEL CORPORATION (FKA USX CORPORATION), GENERAL DYNAMICS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), GUNDERSON, INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.     At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

1   sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

2   rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

3   products containing asbestos. The following defendants, and each of them, are liable for the acts

4   of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

5   destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each

6   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

7   ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each

8   such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

9   role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

10   originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| UNITED STATES STEEL CORPORATION (FKA USX CORPORATION) | USX CORPORATION |
| | CONSOLIDATED WESTERN PIPE & STEEL |
| | CONSOLIDATED WESTERN STEEL CORPORATION |
| | CONSOLIDATED STEEL SHIPYARD |
| | WESTERN PIPE & STEEL |
| | CONSOLIDATED SHIPBUILDING CORP. |
| | UNITED STATES STEEL, LLC |
| | U.S. STEEL SUPPLY |
| | U.S. STEEL COMPANY |
| | COLUMBIA STEEL COMPANY |
| | AMERICAN BRIDGE & IRON |
| | CARNEGIE-ILLINOIS STEEL CORPORATION |
| | FEDERAL SHIPBUILDING |
| | AMERICAN TRISTAR |
| | OIL WELL SERVICING COMPANIES |
| | OIL WELL SUPPLY COMPANY |
| | MARATHON OIL CORPORATION |
| | COLUMBIA-GENEVA STEEL DIVISION |
| GENERAL DYNAMICS CORPORATION | CONVAIR |
| | VULTEE AIRCRAFT INC. |
| | CONSOLIDATED VULTEE AIRCRAFT CORPORATION |
| | ASBESTOS CORPORATION LIMITED |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. |
| | AVONDALE SHIPYARDS, INC. |
| | CONTINENTAL MARITIME INDUSTRIES, INC. |
| | EASTERN IDAHO CONSTRUCTION COMPANY |
| | INGALLS SHIPBUILDING, INC. |
| | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
| | NORTH CAROLINA SHIPBUILDING |
| | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
| | SERVICE ENGINEERING INDUSTRIES, INC. |

1      10.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

2 each of them, were and are engaged in the business of researching, manufacturing, fabricating,

3 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

4 supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

5 promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

6 warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

7 otherwise directing and/or facilitating the use of, or advertising a certain product, namely

8 asbestos and other products containing asbestos.

9      11.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and

10 each of them, singularly and jointly, negligently, and carelessly researched, manufactured,

11 fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed

12 to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,

13 supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,

14 installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,

15 rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

16 and other products containing asbestos, in that said products caused personal injuries to users,

17 consumers, workers, bystanders and others, including the Decedent herein, (hereinafter

18 collectively called "exposed persons"), while being used in a manner that was reasonably

19 foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by

20 "exposed persons."

21      12.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

22 exercise due care in the pursuance of the activities mentioned above and defendants, and each of

23 them, breached said duty of due care.

24      13.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

25 have known, and intended that the aforementioned asbestos and products containing asbestos and

26 related products and equipment, would be transported by truck, rail, ship, and other common

27 carriers, that in the shipping process the products would break, crumble, or be otherwise

28 damaged; and/or that such products would be used for insulation, construction, plastering,

1    fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
2    limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
3    breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the
4    release of airborne asbestos fibers, and that through such foreseeable use and/or handling
5    "exposed persons," including Decedent herein, would use or be in proximity to and exposed to
6    said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
7    persons working in proximity to said products, directly or through reentrainment.

8         14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-
9    containing products referred to herein in a manner that was reasonably foreseeable. Decedent's
10   exposure to asbestos and asbestos-containing products is on current information as set forth at
11   various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference
12   herein.

13        15.    As a direct and proximate result of the acts, omissions, and conduct of the
14   defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure
15   to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,
16   or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and
17   incorporated by reference herein.

18        16.    Plaintiffs are informed and believe, and thereon allege, that progressive lung
19   disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
20   without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
21   asbestos and asbestos-containing products over a period of time.

22        17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-
23   containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-
24   containing products presented any risk of injury and/or disease.

25        18.    As a direct and proximate result of the aforesaid conduct of the defendants, their
26   "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,
27   nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact
28   ///

1    amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this

2    complaint accordingly when the true and exact cost thereof is ascertained.

3       19.    As a direct and proximate result of the aforesaid conduct of the defendants, their

4    ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value

5    of medial care provided by Decedent's family members measured by, inter alia, the costs

6    associated with the hiring a registered nurse, home hospice, or other service provider, the true

7    and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to

8    amend this complaint accordingly when the true and exact costs are known or at time of trial.

9       20.    As a direct and proximate result of the aforesaid conduct of defendants, their

10    ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person,

11    body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and

12    related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,

13    from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven

14    at trial.

15       21.    As a further direct and proximate result of the said conduct of the defendants,

16    their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,

17    entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

18    pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is

19    requested to amend this complaint to conform to proof at the time of trial.

20       22.    As a further direct and proximate result of the said conduct of the defendants,

21    their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-

22    containing products caused severe and permanent injury to Decedent, and ultimately Decedent

23    died on the date previously stated herein.

24       23.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

25    directors and managing agents participated in, authorized, expressly and impliedly ratified, and

26    had full knowledge of, or should have known of, each of the acts set forth herein.

27       24.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the

28    fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

1  and each defendant's officers, directors, and managing agents participated in, authorized,

2  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

3  each of their ALTERNATE ENTITIES as set forth herein.

4      25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

5  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in

6  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed

7  persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive

8  damages against said defendants.

9      WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

10  each of them, as hereinafter set forth.

11
### SECOND CAUSE OF ACTION
(Products Liability - Survival)

12

13      PLAINTIFF GLORIA MCCLAIN AS SUCCESSOR-IN-INTEREST TO THE

14  DECEDENT TOMMY MCCLAIN COMPLAINS OF DEFENDANTS UNITED STATES

15  STEEL CORPORATION (FKA USX CORPORATION), GENERAL DYNAMICS

16  CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP

17  GRUMMAN SHIPBUILDING, INC.), GUNDERSON, INC., THEIR "ALTERNATE

18  ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND

19  DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN

20  AS FOLLOWS:

21      26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

22  paragraph of the First Cause of Action herein.

23      27.    Defendants, their "alternate entities," and each of them, knew and intended that

24  the above-referenced asbestos and asbestos-containing products would be used by the purchaser

25  or user without inspection for defects therein or in any of their component parts and without

26  knowledge of the hazards involved in such use.

27      28.    Said asbestos and asbestos-containing products were defective and unsafe for their

28  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

1 and/or death. The defect existed in the said products at the time they left the possession of
2 defendants, their ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause
3 personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
4 persons," including Decedent herein, while being used in a reasonably foreseeable manner,
5 thereby rendering the same defective, unsafe, and dangerous for use.

6      29.     "Exposed persons" did not know of the substantial danger of using said products.
7 Said dangers were not readily recognizable by "exposed persons." Said defendants, their
8 ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
9 which Decedent and others similarly situated were exposed.

10      30.     In researching, manufacturing, fabricating, designing, modifying, testing or failing
11 to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
12 sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,
13 promoting, representing, endorsing servicing, installing, contracting for installation, repairing,
14 marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
15 and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
16 did so with conscious disregard for the safety of "exposed persons" who came in contact with
17 said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
18 ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
19 death resulting from exposure to asbestos or asbestos-containing products, including, but not
20 limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part,
21 from scientific studies performed by, at the request of, or with the assistance of, said defendants,
22 their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
23 defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

24      31.     On or before 1930, and thereafter, said defendants, their ALTERNATE
25 ENTITIES and each of them, were aware that members of the general public and other "exposed
26 persons," who would come in contact with their asbestos and asbestos-containing products, had
27 no knowledge or information indicating that asbestos or asbestos-containing products could
28 cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

1  members of the general public and other "exposed persons," who came in contact with asbestos
2  and asbestos-containing products, would assume, and in fact did assume, that exposure to
3  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
4  hazardous to health and human life.

5      32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
6  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
7  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
8  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
9  asbestos-containing products without attempting to protect "exposed persons" from, or warn
10 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
11 asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn
12 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
13 asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
14 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
15 and suppressed said knowledge from "exposed persons" and members of the general public, thus
16 impliedly representing to "exposed persons" and members of the general public that asbestos and
17 asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their
18 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
19 representations with the knowledge of the falsity of said implied representations.

20     33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,
21 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE
22 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
23 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
24 sale, inspection, installation, contracting for installation, repair, marketing, warranting,
25 rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise
26 directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing
27 products. In pursuance of said financial motivation, said defendants, their ALTERNATE
28 ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

1 were consciously willing and intended to permit asbestos and asbestos-containing products to
2 cause injury to "exposed persons" and induced persons to work with and be exposed thereto,
3 including Decedent.

4     34.    Plaintiffs allege that the aforementioned defendants, their ALTERNATE
5 ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
6 products, to be safe for their intended use, but that their asbestos and asbestos-containing
7 products, created an unreasonable risk of bodily harm to exposed persons.

8     35.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of
9 their representations, lack of warnings, and implied warranties of fitness of asbestos and their
10 asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent
11 suffered permanent injury and death as alleged herein.

12     36.    As a direct and proximate result of the actions and conduct outlined herein,
13 Decedent have suffered the injuries and damages herein alleged.

14     WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and
15 each of them, as hereinafter set forth.

16
### THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)
17

18     PLAINTIFF GLORIA MCCLAIN, AS WRONGFUL DEATH HEIR, AND AS
19 SUCCESSOR-IN-INTEREST TO TOMMY MCCLAIN DECEASED, AND PLAINTIFF(S)
20 LORRIE STEVENS, WENDY SPENCER, REBECCA MARCH AS LEGAL HEIR(S) OF
21 DECEDENT, COMPLAIN OF DEFENDANTS UNITED STATES STEEL CORPORATION
22 (FKA USX CORPORATION), GENERAL DYNAMICS CORPORATION, HUNTINGTON
23 INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.),
24 GUNDERSON, INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH
25 FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR
26 NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

27     37.    Plaintiffs incorporate by reference each paragraph contained within the First
28 Cause of Action as though fully set forth herein.

1   38.   The heirs at law of the Decedent and their relationship to the Decedent is set forth
2   above.

3   39.   The individuals set forth as heirs constitute all of the surviving heirs of the
4   Decedent.

5   40.   As a direct and proximate result of the conduct of the defendants, their
6   ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-
7   containing products caused Decedent to develop diseases from which condition Decedent died.
8   Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of
9   filing the complaint.

10   41.   At all times prior to his death, Decedent was a faithful and dutiful spouse to the
11   surviving spouse.

12   42.   As a direct and proximate result of the conduct of defendants, and each of them,
13   and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss
14   of care, society, comfort, attention, services, and support of Decedent all to the damage of
15   Decedent's heirs.

16   43.   As a further direct and proximate result of the conduct of defendants, and each of
17   them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount
18   currently not ascertained.

19   WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as
20   hereinafter set forth.

21   ### FOURTH CAUSE OF ACTION
(Products Liability - Wrongful Death)
22

23   PLAINTIFF GLORIA MCCLAIN, AS WRONGFUL DEATH HEIR, AND AS
24   SUCCESSOR-IN-INTEREST TO TOMMY MCCLAIN DECEASED, AND PLAINTIFF(S)
25   LORRIE STEVENS, WENDY SPENCER, REBECCA MARCH AS LEGAL HEIR(S) OF
26   DECEDENT, COMPLAIN OF DEFENDANTS UNITED STATES STEEL CORPORATION
27   (FKA USX CORPORATION), GENERAL DYNAMICS CORPORATION, HUNTINGTON
28   INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.),

1  GUNDERSON, INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH

2  FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR

3  PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

4      44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

5  paragraph of the First, Second and Third Causes of Action herein.

6      45.    As a direct and proximate result of the conduct of defendants, and each of them,

7  Decedent's heirs have sustained the injuries and damages previously alleged.

8      WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

9  each of them, as hereinafter set forth.

10                                    **IV.**

11                          **DAMAGES AND PRAYER**

12     WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

13  each of them in an amount to be proved at trial in each individual case, as follows:

14     (a)    For Plaintiffs' general damages according to proof;

15     (b)    For Plaintiffs' loss of income, wages and earning potential according to proof;

16     (c)    For Plaintiffs' medical and related expenses according to proof;

17     (d)    For Plaintiffs' cost of suit herein;

18     (e)    For exemplary or punitive damages according to proof;

19     (f)    For damages for fraud according to proof; and

20     (g)    For such other and further relief as the Court may deem just and proper, including

21  costs and prejudgment interest.

22  Dated: _____                    BRAYTON❖PURCELL LLP

23

24                                    By: _____
                                          David R. Donadio
25                                        Attorneys for Plaintiffs

26

27

28

1

## JURY DEMAND

2  Plaintiffs hereby demand trial by jury of all issues of this cause.

3

4  Dated: _____7/11/11_____          BRAYTON❖PURCELL LLP

5

6                                        By: _____

7                                             David R. Donadio
                                             Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1                               EXHIBIT A

2   Decedent: TOMMY MCCLAIN, Deceased.

3

4   Decedent's injuries: Decedent was diagnosed with mesothelioma on or about April 2010.

5

6   Decedent died on July 11, 2010.

7

8   Retirement Status: Decedent retired from his last place of employment at regular retirement age.

9   He had therefore suffered no disability from his asbestos-related disease as "disability" is defined

10  in California Code of Civil Procedure § 340.2.

11

12  Defendants: Plaintiffs contend that the asbestos-containing products to which Decedent was or

13  may have been exposed to were manufactured, supplied, distributed, installed and/or contracted

14  for by defendants and each of them. Decedent's exposure to asbestos occurred at the following

15  times and places, and involved exposure to dust created by the contractors and the products of the

16  entities listed below. The exposure includes, but is not limited, to the following presently known

17  contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Pacific Ship Repair (Pier 36), San Francisco, CA Various unknown ships | Insulator (Helper) | 6/1957-9/1957; 1961 |
| Employer | Location of Exposure | Job Title | Exposure Dates |
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Todd Shipyard, Alameda, CA | Insulator (Helper) | 6/1957-9/1957; 1961 |
|  | Various unknown ships |  |  |
|  | Todd Shipyard Warehouse, Alameda, CA |  |  |

28  ///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Planters Peanuts, San Francisco, CA | Insulator | 1/1958-12/1958 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Charles Ayres Co. 698 Minnesota Street San Francisco, CA | American Can Company, 3rd St., San Francisco, CA | Insulator | 6/1958 - 9/1958; 5/1959 - 8/1959 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Charles Ayres Co. | Agnew State Mental Hospital, Santa Clara, CA | Insulator | 6/1958 - 9/1958; 5/1959 - 8/1959 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Charles Ayres Co. | Charles Ayres Co. Shop, San Francisco, CA | Insulator (Helper) | 6/1958 - 9/1958; 5/1959 - 8/1959 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Charles Ayres Co. | Todd Shipyard, Alameda, CA | Insulator (Helper) | 6/1958 - 9/1958; 5/1959 - 8/1959 approx. 3 weeks |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Owens Corning Fiberglas Warehouse, San Francisco, CA | Insulator | 1959 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Various San Francisco Bay Area Shipyards, including, but not limited to: | Insulator | 1961-1972 (on & off) |
| | Pacific Ship Repair (Pier 36), San Francisco, CA | | |
| | Todd Shipyard, San Francisco, CA | | |
| | Triple A Machine Shop, San Francisco, CA | | |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| | Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|---|
| 1 2 3 4 | Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH (cont'd) | Various San Francisco Bay Area Shipyards, including, but not limited to: | Insulator | 1961-1972 (on & off) |
| 5 6 | | Bethlehem Steel & Shipbuilding, San Francisco, CA | | |
| 7 | | Todd Shipyard, Alameda, CA | | |
| 8 9 | | Willamette Shipyard, Richmond, CA | | |
| 10 11 | | Pacific Far East Line (Pier 32), San Francisco, CA | | |
| 12 13 | | Matson Navigation (Piers 32 & 35), San Francisco, CA | | |
| 14 15 | | Various ships including, but not limited to: JAPAN BEAR (1955) | | |
| 16 | | SULTAN | | |
| 17 | | MARIPOSA (1953) | | |
| 18 | | LURLINE (1932) | | |
| 19 | | MAGNOLIA (1941) | | |
| 20 21 | | Various American President Line Ships, Pier 50, San Francisco, CA | | |
| 22 23 | | MONTEREY (1952) Matson Navigation (Piers 32 & 35) San Francisco, CA | | |
| 24 25 | | GOLDEN BEAR (1955) | | |
| 26 | | CALIFORNIA BEAR (1954) | | |
| 27 28 | | TORTUGA (LSD-26) | | |

K:\Injured\113707\FED\PLD\CMP FED (WD).wpd                    19

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH (cont'd) | Various San Francisco Bay Area Shipyards, including, but not limited to: | Insulator | 1961-1972 (on & off) |
| | BRETON (CVE-10) | | |
| | CHINA BEAR (1962) | | |
| | CLEVELAND (LPD-7) | | |
| | GENERAL J.C. BRECKENRIDGE (AP-176) | | (on & off) |
| | MATSON line ships | | |
| | LURLINE ships | | |
| | AMERICAN PRESIDENT LINES | | |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Bethlehem Shipyard, San Francisco, CA | Insulator | 1/1960-12/1972 (approximately) |
| | ANGELO PETRI (1943) | | (approx. 2 weeks each year) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Naval Air Station, Alameda, CA, various unknown vessels including but not limited to: naval destroyers, submarines and troop transports | Insulator | 1/1960-12/1972 (approximately) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Santa Rosa Golf & Country Club, Santa Rosa, CA | Insulator | Early 1960s |

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Crown-Zellerbach, Antioch, CA | Insulator (Apprentice) | Early 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy, Toledo, OH | Stanford University Palo Alto, CA | Insulator | Early-Mid 1960s (15 days) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy Toledo, OH | AEC–Lawrence Livermore Labs Livermore, CA | Insulator | Early-Mid 1960s (2 weeks) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Hartford Building, (650 California St.), San Francisco, CA | Insulator | 1/1964-12/1965 (approx. 4-5 months) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Fox Plaza Building, 1390 Market St., San Francisco, CA | Insulator | Early 1965-1966 (approx. 1-2 years) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Ghiradelli Square, San Francisco, CA | Insulator | 1/1966-12/1967 (approximately) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Cornign Pkwy, Toledo, OH | Stanford Medical Center Palo Alto, CA | Insulator | 1966-1967 (2 weeks) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | PG&E Powerhouse, 3rd Street, San Francisco, CA | Insulator | Mid-Late 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Southern Pacific Building, San Francisco, CA | Insulator | 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Bechtel Building, Beale St., San Francisco, CA | Insulator | 1960s (approx. 1-2 weeks) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Bank of America Building, Market St., San Francisco, CA | Insulator | 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Transamerica Building, San Francisco, CA | Insulator | 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Palace Hotel, San Francisco, CA | Insulator | Early 1960s (approx. 1-2 days) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Japanese Cultural Center, San Francisco, CA | Insulator | 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | BART Steam Tunnels, Market Street, San Francisco, CA | Insulator | 1960s |
| | Emporium, San Francisco, CA | | |

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | University of San Francisco, (USF), San Francisco, CA | Insulator | 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Hunters Point Naval Shipyard, San Francisco, CA | Insulator | 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy Toledo, OH | Kaiser Hospital McArthur Blvd. Oakland, CA | Insulator | Early-Mid 1960s (10-15 days) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy Toledo, OH | U.C. Berkeley Berkeley, CA | Insulator | Early-Mid 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Alcoa Building, San Francisco, CA | Insulator | Mid 1960s, (approx. 4-5 times) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | St. Francis Hotel, San Francisco, CA | Insulator | Mid 1960s (approx. 8 months) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | Children's Hospital, San Francisco, CA | Insulator | Mid 1960s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas, One Owens Corning Pkwy, Toledo, OH | UC Berkeley, Berkeley, CA | Insulator | 1/1964-12/1965 (approximately) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy, Toledo, OH | UCSF Medical Center, Parnassus, San Francisco, CA | Insulator | Mid 1960s (2-3 jobs) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy Toledo, OH | NASA-Ames Research Moffett Field, Sunnyvale, CA | Insulator | 1967-1969 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy Toledo, OH | Lockheed, Sunnyvale, CA | Insulator | 1967-1969 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy Toledo, OH | U.C. Berkeley Berkeley, CA | Insulator | Late 1960s-Early 1970s |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Toledo, OH Owens Corning Fiberglas One Owens Corning Pkwy, | Stanford University Palo Alto, CA | Insulator | Late 1960s - early 1970s(15 days) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy, Toledo, OH | Anderson Christofani Boat Yard, San Francisco, CA | Insulator | Late 1960s-Early 1970s, approx. a few weeks |

ALASKA QUEEN (1946)

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Owens Corning Fiberglas One Owens Corning Pkwy, Toledo, OH | Letterman Hospital & Medical Center, San Francisco, CA | Insulator | 1969 |

///

///