# U.S. District Court
## Northern District of Alabama (Eastern)
## CIVIL DOCKET FOR CASE #: 1:11−cv−02731−PWG

Franklin et al v. Dana Holding Corporation et al
Assigned to: Magistrate Judge Paul W Greene
Cause: 28:1332 Diversity−Personal Injury

Date Filed: 07/29/2011
Jury Demand: Defendant
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**Ray Franklin**                         represented by   **Thomas J Knight**
HUBBARD &KNIGHT
1125 Noble Street
PO Drawer 1850
Anniston, AL 36201
256−237−9586
Fax: 256−237−9594
Email: hubbardknight@msn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve R Morris**
PO Box 814
Wedowee, AL 36278
1−256−357−9211
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donna Franklin**                       represented by   **Thomas J Knight**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve R Morris**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Dana Holding Corporation**

**Defendant**

**Eaton Corporation**                    represented by   **Janine A McKinnon**
MAYNARD COOPER &GALE PC
1901 Sixth Avenue North, Suite 2400
Birmingham, AL 35203
205−254−1000
Fax: 205−254−1999
Email: jmckinnon@maynardcooper.com
*ATTORNEY TO BE NOTICED*

**John Albert Smyth , III**
MAYNARD COOPER &GALE PC
AmSouth Harbert Plaza, Suite 2400
1901 6th Avenue North
Birmingham, AL 35203−2618
205−254−1000
Fax: 205−254−1999
Email: jsmyth@maynardcooper.com
*ATTORNEY TO BE NOTICED*

Katherine Ann Berkmeier Collier
MAYNARD COOPER &GALE PC
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203
205 254–1863
Fax: 205 254–1999
Email: kcollier@maynardcooper.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Fruehauf Trailer Corporation**

**Defendant**

**Hobart Brothers Company**                    represented by    **Timothy W Knight**
KEE &SELBY LLP
1900 International Park Drive, Suite 220
Birmingham, AL 35243
205–968–9900
Fax: 205–968–9909
Email: tk@keeselby.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Honeywell, Inc.**
*Specificaly excluding liability for Narco,
individually and as a successor to Allied
Signal, Bendix, Wheelabrator, Rust
Engineering and Allied Chemical*

**Defendant**

**Maremount Corporation**

**Defendant**

**Metropolitan Life Insurance Company**        represented by    **Michael A Vercher**
CHRISTIAN &SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203–2696
205–795–6588
Fax: 205–795–6588
Email: mavercher@csattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Pneumo Abex LLC**
*Successor in intrest to Abex Corporation*

**Defendant**

**Rapid American Corporation**

**Defendant**

**Ratek Corporation**                          represented by    **J Bentley Owens , III**
STARNES DAVIS FLORIE LLP
PO Box 598512
Birmingham, AL 35259–8512
205–868–6000
Fax: 205–868–6099
Email: jbo@starneslaw.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rockwell Automation**
*Successor by merger to Allen−Bradley Co.,LLC*

represented by **Scott F Singley**
BRUNINI GRANTHAM GROWER
&HEWES PLLC
410 Main Street
PO Box 7520
Columbus, MS 39705
662−240−9744
Fax: 662−240−4127
Email: ssingley@brunini.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thompson Tractor Co., Inc.**

represented by **James R Shaw**
HUIE FERNAMBUCQ &STEWART LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223−2484
205−251−1193
Fax: 205−251−1256
Email: jrs@hfsllp.com
*ATTORNEY TO BE NOTICED*

**Jeffrey Bartow Cannon , Jr.**
HUIE FERNAMBUCQ &STEWART,
LLP
3 Protective Center, 2801 Highway 280
South, Suite 200
Birmingham, AL 35223
205 251−1193
Fax: 205 251−1256
Email: jbc@hfsllp.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/29/2011 | 1 | NOTICE OF REMOVAL by Eaton Corporation from Calhoun County Circuit Court, case number CV−2011−0153., filed by Eaton Corporation. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A Part 1)(JLC, ) (Additional attachment(s) added on 8/1/2011: # 3 Exhibit A Part 2, # 4 Exhibit A Part 3, # 5 Exhibit A Part 4, # 6 Exhibit A Part 5, # 7 Exhibit B, # 8 Exhibit C, # 9 Exhibit D) (JLC, ). (Additional attachment(s) added on 8/1/2011: # 10 Corporate Disclosure Statement) (JLC, ). (Entered: 07/29/2011) |
| 07/29/2011 | | COMPLAINT against Dana Holding Corporation, Eaton Corporation, Fruehauf Trailer Corporation, Hobart Brothers Company, Honeywell, Inc., Maremount Corporation, Metropolitan Life Insurance Company, Pneumo Abex LLC, Rapid American Corporation, Ratek Corporation, Rockwell Automation, Thompson Tractor Co., Inc., filed by Donna Franklin, Ray Franklin.(Deemed filed 5/5/2011 in the Circuit Court of Calhoun County − attached to the Notice of Removal as Exhibit A Part 1, pages 16−54.)(JLC, ) (Entered: 07/29/2011) |
| 07/29/2011 | 2 | MOTION to Sever by Thompson Tractor Co., Inc.. (Deemed filed 6/13/2011 in the Circuit Court of Calhoun County.) (JLC, ) (ASL, ). (Entered: 07/29/2011) |
| 07/29/2011 | | ANSWER to Complaint with Jury Demand by Thompson Tractor Co., Inc..(Deemed Filed 6/13/2011 in the Circuit Court of Calhoun County,attached to the Notice of Removal as Exhibit A Part 2, page 63−76)(JLC, ) (Entered: 08/01/2011) |

| 07/29/2011 | | ANSWER to Complaint with Jury Demand by Hobart Brothers Company.(Deemed Filed 6/14/2011 in the Circuit Court of Calhoun County, attached to the Notice of Removal as Exhibit A Part 2, pages 113–126.)(JLC, ) (Entered: 08/01/2011) |
|---|---|---|
| 07/29/2011 | | ANSWER to Complaint with Jury Demand by Eaton Corporation. (Deemed Filed 6/15/2011 in the Circuit Court of Calhoun County, attached to the Notice of Removal as Exhibit A Part 3, pages 4–25.)(JLC, ) (Entered: 08/01/2011) |
| 07/29/2011 | | MOTION to Sever by Eaton Corporation.(Deemed Filed 6/15/2011 in the Circuit Court of Calhoun County, attached to the Notice of Removal as Exhibit A Part 3, pages 45–47.) (JLC, ) (Entered: 08/01/2011) |
| 07/29/2011 | | ANSWER to Complaint with Jury Demand by Metropolitan Life Insurance Company.(Deemed Filed 6/16/2011 in the Circuit Court of Calhoun County, attached to the Notice of Removal as Exhibit A Part 3, pages 66–99.)(JLC, ) (Entered: 08/01/2011) |
| 07/29/2011 | | MOTION to Sever by Hobart Brothers Company.(Deemed Filed 6/22/2011 in the Circuit Court of Calhoun County, attached to the Notice of Removal as Exhibit A Part 3, pages 119–120.) (JLC, ) (Entered: 08/01/2011) |
| 07/29/2011 | | ORDER OF SEVERANCE GRANTING 2 MOTION to Sever filed by Thompson Tractor Co., Inc., Goldkist Holdings, Inc.and Hub Trucking Company, Inc.. Signed by Circuit Judge Debra H. Jones on 7/29/2011 in the Circuit Court of Calhoun County, attached to the Notice of Removal as Exhibit A Part 5, pages 141–142.(JLC, ) (Entered: 08/01/2011) |
| 07/29/2011 | | SEVERANCE ORDER GRANTING MOTION to Sever filed by Hobart Brothers Company, SEVERANCE ORDER GRANTING MOTION to Sever filed by Eaton Corporation. Deemed Filed 7/29/2011 by Circuit Judge Debra H. Jones in the Circuit Court of Calhoun County, attached to the Notice of Removal as Exhibit B, pages 2–3. (JLC, ) (Entered: 08/01/2011) |
| 07/29/2011 | | NOTICE of Corporate Disclosure by Eaton Corporation, attached to the Notice of Removal as Exhibit #10. (JLC, ) (Entered: 08/01/2011) |
| 07/30/2011 | 3 | NOTICE by Rockwell Automation re 1 Notice of Removal *Joinder of Flowserve US, Inc., solely as successor to Rockwell Manufacturing Co., in Notice of Removal* (Singley, Scott) (Entered: 07/30/2011) |
| 07/30/2011 | 4 | ANSWER to Complaint *on behalf of Flowserve US, Inc., solely as successor to Rockwell Manufacturing Co.* by Rockwell Automation.(Singley, Scott) (Entered: 07/30/2011) |
| 08/01/2011 | | Filing Fee: Filing fee $ 350, receipt_number 1126–1449661. related document 1 NOTICE OF REMOVAL by Eaton Corporation from Calhoun County Circuit Court, case number CV–2011–0153., filed by Eaton Corporation. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A Part 1)(JLC, ). (Smyth, John) (Entered: 08/01/2011) |
| 08/01/2011 | 5 | NOTICE by Eaton Corporation *NOTICE OF TAG–ALONG ACTION* (Smyth, John) (Entered: 08/01/2011) |

# IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

FILED

11 MAY -5 PM 12: 58

TED HOOKS
CIRCUIT CLERK
CALHOUN COUNTY, AL

| | |
|---|---|
| RAY FRANKLIN AND<br>DONNA FRANKLIN, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )Civil Action No.: CV 2011 0 0 0 1 5 3 |
| | ) |
| EMPLOYER DEFENDANTS: | ) |
| | ) |
| GOLD KIST HOLDINGS, INC.,  F/K/A<br>GOLD KIST INCORPORATED ; | ) |
| | ) |
| HUB TRUCKING, INC.; | ) |
| | ) |
| THOMPSON TRACTOR CO., INC.; | ) |
| | ) |
| and A, B, C & D  whose true names are<br>otherwise unknown to Plaintiffs but will<br>be added by amendment when correctly<br>ascertained. | ) |
| | ) |
| DANA HOLDING CORPORATION; | ) |
| | ) |
| EATON CORPORATION; | ) |
| | ) |
| FRUEHAUF TRAILER CORPORATION; | ) |
| | ) |
| HOBART BROTHERS COMPANY;<br>HONEYWELL, INC., specifically<br>excluding liability for NARCO,<br>individually and as successor to<br>ALLIED SIGNAL, BENDIX,<br>WHEELABRATOR, RUST<br>ENGINEERING, AND ALLIED<br>CHEMICAL; | ) |
| | ) |
| MAREMOUNT CORPORATION; | ) |
| | ) |
| METROPOLITAN LIFE INSURANCE<br>COMPANY; | ) |
| | ) |
| PNEUMO ABEX LLC, successor in<br>interest to ABEX CORPORATION; | ) |
| | ) |
| RAPID AMERICAN CORPORATION; | ) |

RAYTEK CORPORATION;                          )
                                             )
ROCKWELL AUTOMATION, successor               )
by merger to ALLEN-BRADLEY CO.,              )
LLC;                                         )
                                             )
and E, F, G, H, I & J, all of whose true     )
names are otherwise unknown to               )
Plaintiffs but will be added by              )
amendment when correctly ascertained, )
                                             )
            Defendants.                      )

## COMPLAINT

**NOW COME** the Plaintiffs, Ray Franklin and Donna Franklin and state their

claims against the above-named Defendants, as follows:

### I. STATEMENT OF JURISDICTION AND VENUE

1.  The plaintiff and defendants are subject to the jurisdiction of this Court in that

plaintiff is a resident citizen of and was injured in this State and County, said injuries giving

rise to this claim, that material transactions which are the subject matter of this civil action

took place in this state and county, that the defendants caused  injury to plaintiff in this

state and county, in that defendants conduct business by agent in this state and county, and

that the Court otherwise has jurisdiction of the subject matter and of the persons of the

parties in this civil action.

2.     Plaintiff Ray Franklin was an employee, employed by the defendants Hub

Trucking, Gold Kist, Inc.(currently Gold Kist Holdings, Inc.), Thompson Tractor Company,

Inc., A, B, C, and D(collectively hereinafter referred to as "Employer Defendants"), at their

facilities located in Alabama, and employed by them in various locations in this county and

in state of Alabama.  As of  May, 2010, the relationship of employer and employee, or

master and servant, existed between Plaintiff and Defendants. On or about May, 2010, and

before, the plaintiff and the defendants were subject to the Alabama Worker's Compensation Act as it existed on that date.

3.     Defendants were severally the marketer, promoter, seller, manufacturer, distributor and entity which did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, fail to warn, and otherwise handle and distribute asbestos containing products. Each defendant does business in Alabama and in Calhoun County, and at all times relevant each sold in Alabama and in Calhoun County, the aforementioned hazardous product, asbestos, or is otherwise subject to this Court's jurisdiction. The defendants do business by agent in this state and county and have caused tortious injury in this state and county by manufacturing and selling a dangerous and defective product. Each defendant, acting directly or by agent, is legally responsible to Plaintiffs as a consequence of that defendants' (A) transacting any business in this state, (B) contracting to supply services or goods in this state, (C) causing tortious injury or damage by an act or omission in this state, (D) causing tortious injury or damage in this state by an act or omission outside this state and the defendant regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state, (E) causing injury or damage in this state to a person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the defendant might reasonably have expected such other person to use, consume, or be affected by the goods in this state, and the defendant also regularly does or solicits business, or engages in any other persistent course of conduct, or  derives substantial revenue from goods used or consumed or services rendered in this state, and otherwise had or has some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the defendant to come to this state to defend an action.

The amount in controversy in this civil action exceeds the jurisdictional minimum for the Circuit Courts. This Court has jurisdiction hereof both as to the subject matter and in personam.

### III. STATEMENT OF BACKGROUND FACTS - PLAINTIFFS

4.      Plaintiff Ray Franklin contracted one or more asbestos-related diseases including Asbestosis. The Plaintiff was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein throughout his employment, and in his environment while  employed. During the course of his employment, the Plaintiff, Ray Franklin, worked, including but not limited to, working as a driver from 1974-1977, hauling, loading and unloading building supplies, including multiple trips to the Celotex factory in New Orleans where asbestos siding was manufactured. The Celotex Corporation has since been sold, and is now known as Rapid American Corporation.  When Plaintiff went inside the factories, the dust which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace.  From 1978 to 1980, Plaintiff Ray Franklin worked for Anniston Army Depot, where he worked tearing down asbestos exhaust  pipes, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace.  From 1980 to 1984, he worked for Hub Trucking Inc., changing brake shoes. The brake dust from the brake shoes, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace.  In 1984, he moved to Gold Kist, Inc.(currently Gold Kist Holdings, Inc.) where he worked as a mechanic changing clutch plates, the dust from the clutch plates, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. He worked at Gold Kist, Inc.(currently Gold

Kist Holdings, Inc.) for ten years, until 1994. From 1994, until June, 2009, Plaintiff Ray Franklin worked for Thompson Tractor Company, Inc., changing brake shoes. In the bay next to him the employees changing brake shoes would blow through a pipe to get the dust off of the shoes so they wouldn't be so dirty when they went home. This brake dust, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. He worked at Thompson Tractor Company, Inc., in that asbestos filled environment, for fourteen years.

5. Plaintiff Ray Franklin has now been diagnosed with Asbestosis.

6. On or about May, 2010, while employed for the Defendants and while acting within the line and scope of his employment, the plaintiff, Ray Franklin, received an injury or injuries arising out of and in the course of plaintiff's said employment by the defendants, he discovered this in April, 2011, when he received confirmation from his doctor that he had Asbestosis, from working for defendants. As the proximate result of said employment, Plaintiff has suffered a permanent injury to his person.

7. As a direct and proximate result of plaintiff's said injuries, the plaintiff suffered both temporary total disability and a permanent loss earning capacity and eventually total disability as a result of permanent loss of use of his lung capacity, of which is said by the doctors to be inevitable, as a result of said injuries.

8. As a further direct and proximate result of plaintiff's said injuries, the plaintiff was caused to need and to obtain medical care and treatment and incur expenses for such care and treatment. That the Defendants have failed to provide the Plaintiff with medical care or temporary benefits as a result of his injury. As such the Plaintiff was forced to use his own funds and his own insurance to obtain medical treatment including surgical services, and now suffers from a permanent disability

9.   The defendants had timely and actual notice of the incident referred to herein within the time specified by the Alabama Worker's Compensation Act.

10.  The plaintiff's average gross weekly earnings from defendants at the time of the aforementioned injuries and incident were approximately $1000.00 per week. During this same period of time, the plaintiff was also entitled to certain fringe benefits by and from the defendants within the meaning of the Alabama Worker's Compensation Act.

11.  The defendants have generally failed or refused to pay all of the temporary, total, and permanent disability benefits and necessary and reasonable medical expenses to which the plaintiff is entitled under law. A genuine justiciable controversy has arisen between the parties concerning the extent of plaintiff's entitlement to benefits under the Alabama Worker's Compensation Act.

12.  Plaintiff has already incurred and expects to incur other expenses for medical, vocational and other expenses, and evidence exists in support of plaintiff's claim for compensation and other benefits.

13.  Plaintiff is entitled to compensation and other benefits as allowed and provided by the Alabama Worker's Compensation Act.  Plaintiff states that it has been necessary to hire attorneys to represent him in this matter and hereby requests of this Honorable Court that these attorneys receive attorney's fees of 15% of the amount received from said Defendants and that the Plaintiff be awarded the court costs in filing this matter.

14. Plaintiff is also entitled to compensation for loss of consortium. As a proximate consequence of the negligence, recklessness, and wantonness and other actionable conduct of the Defendants,  Plaintiff Ray Franklin  was seriously injured and has suffered both temporary total disability and a permanent loss earning capacity and eventually total disability as a result of permanent loss of use of his lung capacity.  Plaintiff Donna Franklin

is the wife of Ray Franklin and is entitled by law to such damages as would reasonably compensate the Plaintiff Donna Franklin for damages sustained by loss of her husband's consortium, including help, love, companionship, affection, society, comfort, solace, support, relations and services.  Plaintiffs also suffered substantial medical, hospital and other related damages, lost wages, loss of income, disability, loss of consortium, property damage and loss of use, and other loss, cost and expenses, which are still accruing and for which they are entitled to recover from Defendants under applicable law.

### IV. STATEMENT OF BACKGROUND FACTS -DEFENDANTS

15.    The Plaintiffs adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

16.    The term "Employer Defendant" refers to each and every one of those defendants which employed Plaintiff Ray Franklin and exposed the Plaintiff to the asbestos-containing products in the work environment.

17.    The following defendants are "Employer Defendants". (The asbestos containing products produced by each defendant that have been identified at the plaintiff's workplaces, during his employment years there, are set out hereinbelow):

18.    **HUB TRUCKING, INC.**, From 1980 to 1984, Plaintiff Ray Franklin worked for Hub Trucking Inc., changing brake shoes. The brake dust from the brake shoes, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. Hub Trucking Inc., may be served through its registered agent, Harold Rice, Sr., County Road 32, Wedowee, AL 36278.

19.    **GOLD KIST HOLDINGS, INC. f/k/a  GOLD KIST INCORPORATED** In 1984, Plaintiff Ray Franklin   moved to the working environment at Gold Kist,

Inc.(currently Gold Kist Holdings, Inc.) where he worked as a mechanic changing clutch plates, the dust from the clutch plates, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. He worked at Gold Kist, Inc.(currently Gold Kist Holdings, Inc.) for ten years, until 1994. Gold Kist Holdings, Inc., may be served by its registered agent, J. David Dyson, 244 Perimeter Center Pkwy, Atlanta, GA 30346.

20.    **THOMPSON TRACTOR CO., INC.** From 1994, until June, 2009, Plaintiff Ray Franklin worked for Thompson Tractor Company, Inc., changing brake shoes. In the bay next to him the employees changing brake shoes would blow through a pipe to get the dust off of the shoes so they wouldn't be so dirty when they went home. This brake dust, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. He worked at Thompson Tractor Company, Inc., in that asbestos filled environment, for fourteen years. Thompson Tractor Company, Inc., may be served by its registered agent, Thomas H. McGough, 2401 Pinson Highway , Birmingham, AL 35217.

21.    The term "Producer Defendant" refers to each and every one of those defendants which produced and/or manufactured asbestos-containing products and/or materials and placed the asbestos-containing products and/or materials into the stream of commerce.

22.    The following defendants are "Producer Defendants". (The asbestos containing products produced by each defendant that have been identified at plaintiffs workplaces, during his employment years there, are set out hereinbelow).

23.    **DANA HOLDING CORPORATION** whose principal place of business is in Ohio, and may be served by its registered agent, Ct Corporation System, 1300 East

Ninth Street, Cleveland,OH 44114.

-Driveline products (axles, driveshafts, and transmissions)

-Power technologies (sealing and thermal-management products)

24.    **EATON CORPORATION** is a Delaware corporation whose principal

place of business is 1209 Orange Street, Wilmington, Delaware 19801.

- Asbestos containing products, including but not limited to Industrial

Automation Products.

25.    **FRUEHAUF TRAILER CORPORATION** is an Indiana corporation whose

principal place of business is 111 Monument Circle Indianapolis, INDIANA 46204.

26.    **HOBART BROTHERS COMPANY** is an Ohio corporation whose

principal place of business is 3600 W. Lake Avenue, Glenview, Illinois 60025-5811.

- Asbestos containing products, including but not limited to Welding Products

- Asbestos containing products, including but not limited to Welding Flux;

- Asbestos containing products, including but not limited to Welding Electrodes;

- Asbestos containing products, including but not limited to Welding Machines;

- Asbestos containing products, including but not limited to Welding Rods.

27.    **MAREMONT CORPORATION** is an Illinois corporation whose

principal place of business is One Noblitt Plaza, Columbus, Indiana 47202.

- Asbestos containing products, including but not limited to Brake Linings;

- Asbestos containing products, including but not limited to Brake Shoes.

28.    **METROPOLITAN LIFE INSURANCE COMPANY** is a New York

corporation whose principal place of business is 1 Madison Avenue, New York, New

York 10010.

- Insurance company.

29.    **PNEUMO ABEX LLC,** successor in interest to ABEX CORPORATION is a Delaware corporation whose principal place of business is One Liberty Lane, Hampton, New Hampshire 03842.

- Asbestos containing products, including but not limited to Industrial

  Automotive;

- Asbestos containing products, including but not limited to Aerospace Segments.

30.    **RAPID AMERICAN CORPORATION** is a Delaware corporation whose principal place of business is 888 Seventh Avenue, New York, New York 10106.

- Asbestos containing products, including but not limited to Cements;

- Asbestos containing products, including but not limited to Pipe Covering.

31.    **RAYTEK CORPORATION,** is an Ohio corporation whose principal place of business is 6095 Parkland Blvd, Suite 310, Mayfield Hts. OH 44124.

32.    **ROCKWELL AUTOMATION,** successor by merger to ALLEN-BRADLEY CO., LLC is a Delaware corporation whose principal place of business is 777 E. Wisconsin Avenue, Suite 1400, Milwaukee, Wisconsin 53202.

- Pumps

- Valves.

33. Each defendant is sued (a) in its individual capacity, (b) as a successor in interest to each of those entities specifically identified herein as the Defendant's predecessor in interest, (c) as a successor in interest to each of those entities which, through discovery or otherwise, is identified during the course of litigation as the Defendant's predecessor in interest, (d) as an alter ego to each of those entities specifically identified herein as the Defendant's adjunct or instrumentality, and (e) as an alter ego to each of those entities which, through discovery or otherwise, is identified during the course of litigation as the

Defendant's adjunct or instrumentality.

## DEFENDANTS' CONDUCT AND PLAINTIFF'S INJURY

34. The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

35. The Defendants acted by and through their agents, servants, and employees, and are liable for the conduct of their agents, servants, and employees. Whenever this complaint refers to Defendants' actionable conduct, it includes the conduct of Defendants' agents, servants, and employees.

36. Whenever this complaint refers to asbestos-containing products and/or materials, it includes, without limitation, all products and/or materials containing any amount of any form of asbestos and/or any form of talc.

37. The Defendants, at all times relevant to this complaint, knew, or in the exercise of ordinary care should have known, that asbestos was poisonous and harmful to human beings and that asbestos-containing products and/or materials posed a serious health hazard to humans, particularly in connection with the human lungs and respiratory system but also in connection with other vital organs.

38. Plaintiffs Ray Franklin was injured as a direct and proximate consequence of the conduct of the Defendants, which were negligent in some or all of the following respects:

A. Producing and/or manufacturing and placing into the stream of commerce asbestos- containing products and/or materials.

B.　Distributing, selling, and/or placing into the stream of commerce asbestos-containing products and/or materials, including their own asbestos-containing products and/or materials and asbestos-containing products and/or materials produced or

manufactured by others.

C.    Specifying the use of asbestos-containing products and/or materials on equipment, including both, equipment produced, manufactured, distributed, sold and/or placed into the stream of commerce by the Defendants, and on equipment produced, manufactured, distributed, sold, and/or placed into the stream of commerce by others.

D.    Marketing asbestos-containing products and/or materials to industries which Defendants knew, or should have known, would expose workers and their families to dust from such asbestos-containing products and/or materials.

E.    Failing to properly design and manufacture asbestos-containing products and/or materials.

F.    Failing to properly test asbestos-containing products and/or materials before they were released for consumer use.

G.    Failing to develop and to utilize a substitute material for asbestoscontaining products and/or materials.

H.    Failing to specify for use on equipment safe substitutes for asbestos containing products and/or materials.

I.    Failing to timely and adequately warn Plaintiffs of the dangerous characteristics and serious health hazards associated with secondary exposure to asbestos-containing products and/or materials.

J.    Failing to provide Plaintiffs with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect the Plaintiffs from being harmed and disabled by exposure to asbestos-containing products and/or materials.

K.    Failing to take precautions to protect Plaintiffs from exposure to asbestos-

containing products and/or materials while Plaintiff was an invitee on premises occupied, controlled, and/or owned by the Defendants.

L.      Failing to place timely and adequate health warnings on the containers of asbestos-containing products and/or materials, and/or on the asbestos-containing products and/or materials themselves, and/or on equipment requiring or calling for the use of asbestos-containing products and/or materials.

M.      Failing to take reasonable precautions or to exercise reasonable care to publish, to adopt, and to enforce a safety plan and/or safe method of handling and installing asbestos-containing products and/or materials.

N.      Failing to recall and/or to remove from the stream of commerce asbestos-containing products and/or materials despite knowledge of their unsafe and dangerous nature.

O.      Engaging in a conspiracy or conspiracies to affirmatively misrepresent and/or to suppress material facts about the dangers of exposure to asbestos fibers and the seriousness of the health hazard posed by asbestos fibers.

P.      Specifically disregarding the safety of Plaintiffs and fraudulently concealing from Plaintiffs the dangerous nature of the asbestos fibers to which Plaintiffs was exposed.

Q.      Otherwise (a) causing and/or contributing to cause Plaintiffs to be exposed to asbestos-containing products and/or materials and/or (b) failing to prevent Plaintiffs from being secondarily exposed to asbestos-containing products and/or materials.

The Defendants' actions were negligent, reckless, and willful and wanton and constituted an outrageous disregard for the health and safety of workers and their families, including Plaintiff Ray Franklin, who was exposed to asbestos-containing products and/or materials in his workplace.

## COUNT ONE

## Alabama Extended Manufacturer's Liability Doctrine

39. The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding and following paragraphs of this complaint as if fully set forth herein.

40. The initial cause of action for personal injury is grounded in the Alabama Extended Manufacturer's Liability Doctrine.

41. The asbestos-containing products and/or materials to which Plaintiff Ray Franklin was exposed were unreasonably dangerous when applied to their intended use in the usual and customary manner in that:

A.    The asbestos fibers contained in the asbestos-containing products and/or materials are highly carcinogenic and otherwise injurious to the tissue of the human body when inhaled into the respiratory system or ingested into the digestive system.

B.    The asbestos fibers contained in the asbestos-containing products and/or materials are fibrous by nature and increase in friability with exposure to heat or friction or by mere passage of time, so that such asbestos fibers are subject to being readily inhaled or ingested into the respiratory and digestive systems of person in the vicinity thereof.

42.    The Defendants caused the unreasonably dangerous asbestos-containing products and/or materials to enter the market, as a result of which Plaintiff Ray Franklin was exposed and suffered grave and progressive bodily injuries.

43. The Defendants knew or should have known in the exercise of ordinary care and diligence that the asbestos-containing products and/or materials were unreasonably dangerous. Nevertheless, the Defendants made no effort to recall the asbestos-containing

products and/or materials. The Defendants thus allowed Plaintiff Ray Franklin to be exposed to the asbestos-containing products and/or materials without warning of the dangers thereof or taking preventive measures to protect Plaintiff Ray Franklin from asbestos exposure, as a proximate result of which Plaintiff Ray Franklin suffered grave and progressive bodily injury.

**COUNT TWO**

**Negligence and Intentional Tort**

44. The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding and following paragraphs of this complaint as if fully set forth herein.

45. The second cause of action for personal injury is grounded in legal theories of negligence and intentional tort.

46. The Defendants acted tortiously in concert with one another, and in some instances, intentionally, to advance, to pursue or to implement agreements concerning the misrepresentation, concealment, and/or destruction of scientific and legal evidence concerning the health hazards of asbestos.

47. The Defendants reached an agreement or understanding to inflict a wrong against Plaintiff Ray Franklin and other similarly situated individuals. Moreover, the Defendants' minds met on the object or course of action, amounting to some mutual mental action coupled with an intent to commit the acts which resulted in the injuries to Plaintiff Ray Franklin. In short, the Defendants formulated a preconceived plan with unity of design and purpose to misrepresent, conceal and/or destroy scientific and/or legal evidence concerning the health hazards of asbestos. They intended to engage in a course of conduct which resulted in injuries, and the course of conduct was known to them through their

officers, directors, agents, servants, and managers.

48.  The Defendants' liability is joint for all of the tortious conduct and resultant injuries, as well as for the wanton behavior of each Defendant, including the wantonness of co-conspirators not sued herein.

49.  The Defendants acted in concert along with other co-conspirators not sued herein with the intent to deceive and to misinform Plaintiff Ray Franklin and others about the health hazards of asbestos.

50.  Plaintiff Ray Franklin and others similarly situated were the targets of the intentional acts of deception and misrepresentation.

51.  In particular, the Defendants, acting through their own medical departments and in conjunction with those of their co-conspirators, including their trade associations, investigated the health hazards faced by workers, thereby learning, or in the exercise of reasonable care, having to learn, of the hazards of asbestos.

52.  Acting maliciously, the Defendants initially suppressed and misrepresented the results of investigations, actively concealing the information from customers, from the users of the asbestos-containing products and/or materials, from their own workers, from the employees of contractors working upon their premises, and from governmental and medical authorities. Ultimately, however, the Defendants conspired to destroy or to alter records of knowledge in order to prevent the scientific and medical evidence from being discovered by the victims of their conspiracy and to forestall regulatory efforts and legislation intended to protect innocent workers from the invisible dusty death.

53.  Each Defendant either, (a) actively took part in the suppression, concealment, misrepresentation, and eventual destruction of data and evidence, and/or (b) furthered the plan or plans by cooperation, and/or (c) lent aid or encouragement to the actual

wrongdoers, and/or (d) ratified and adopted the wrongdoers' acts done for their benefit.

54. The acts of the Defendants in furtherance of their plan of deception were done intentionally or negligently, and in concert, rendering them each jointly and severally liable for the wanton behavior of the other Defendants and coconspirators not sued herein with whom they acted in concert.

55. As a result of the conspiratorial acts described above, the dangers of asbestos to the human respiratory and digestive systems were hidden from industry in particular and society in general, with the consequences (a) that asbestos-containing products and/or materials were installed in virtually every plant and building in the United States and a large part of the rest of the industrialized world, (b)  that asbestos-containing products and/or materials were used in virtually every brake shoe, and clutch plate, in the United States and a large part of the rest of the industrialized world, (c) that safe substitutes were not developed by industry until after asbestos-containing products and/or materials had already been made and distributed by the Defendants, and (d) that a large number of people who have come into contact with asbestos-containing products and/or materials have become ill or died as a result of the inhalation or ingestion of asbestos fibers.

56. Plaintiff Ray Franklin was among those who worked in the hidden danger of asbestos, sometimes unaware of the presence of asbestos and always unaware of the carcinogenic and other adverse properties of asbestos fibers. As a proximate consequence of the conspiratorial acts of the Defendants in affirmatively misrepresenting and/or suppressing evidence concerning the carcinogenic and other adverse properties of the asbestos-containing products and/or materials. Plaintiff Ray Franklin was caused to be exposed to, and was unable to protect himself from the asbestos fibers, and consequently, was exposed to asbestos in his work environment,

and thereby suffered grave and progressive bodily injuries.

## COUNT THREE

### Negligence in the Course of Employment

57. The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments  and allegations set forth in the preceding and following paragraphs of this complaint as if fully set forth herein.

58. The third cause of action for personal injury is grounded in a legal theory of negligence and intentional tort.

59. Plaintiff Ray Franklin was exposed to dangerous and carcinogenic asbestos fibers. The Defendants knew or should have known that Plaintiff Ray Franklin, in the course of his employment, was being exposed to asbestos-containing products and/or materials which would injure Plaintiff, and the Defendants owed a duty of care to Plaintiff to protect them from the dangers of exposure to the asbestos-containing products and/or materials.

60. The Defendants specifically disregarded the safety and health of Plaintiff Ray Franklin and failed to protect him from the carcinogenic and other adverse effects of the asbestos fibers to which he was exposed by (a) failing to warn him that he was being exposed to dangerous asbestos containing products, and by (b) failing to remove  the dangerous asbestos containing products and/or materials promptly after the Defendants became aware of their presence and the dangers thereof.

61. The Defendants further concealed from Plaintiff Ray Franklin the carcinogenic and other adverse effects of the asbestos fibers to which he was exposed in his work environment.

62.  As a proximate result of the conduct of the Defendants, Plaintiff Ray Franklin was exposed to dangerous and carcinogenic asbestos fibers which caused him grave bodily injury.

**COUNT FOUR**

**Fraudulent Concealment / Misrepresentation /Alteration of Medical Studies**

**/Conspiracy /Aiding and Abetting Conspiracy**

63.  The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments  and allegations set forth in the preceding and following paragraphs of this complaint as if fully set forth herein.

64.  As will be discussed below, the Defendants used a number of trade and industrial hygiene associations to further the goals of their conspiracy to control the dissemination of research and information regarding the hazards of asbestos and other substances to lend an air of independence and legitimacy to the information which was published, albeit in edited form.

65.  Defendant Metropolitan Life and other Defendants named herein, individually and/or as successors-in-interest of other corporations, and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed, and conspired among themselves and with other asbestos manufactures and distributors to injure Plaintiff Ray Franklin.

Defendants acted in the following fashion:

A.      Metropolitan Life Insurance Company (Met Life) required a tangible quid pro quo from McGill University in the 1920s in exchange for them providing funding for a study of asbestos disease in Canadian miners. The study was never published and agents of Met

Life materially misrepresented in the published literature the fact that asbestos miners developed asbestosis.

B.      In 1932, Met Life, through its agents Dr. Anthony Lanza, Dr. Fellows, and others, assisted the Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from pneumoconiosis, including asbestosis, including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issue of asbestos disease. Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

C.      Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney J. C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza, Associate Medical Director of Met Life (insurers of Manville, Raybestos, and others), that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure; i.e., the seriousness of the disease process, asbestosis. This was accomplished through intentional deletion of Dr. Lanza's description of asbestosis as fatal and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestosis as a disease process less serious than it actually is and was then known to be, and deletion of information concerning levels of exposure. As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935. The Defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence

proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the insurer.

D.      In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke corporation, Johns-Manville corporation, Keasby & Mattison company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing, Thermoid Rubber co., Southern Asbestos Co., (whose liabilities have been assumed by H. K. Porter Company), Union Asbestos and Rubber company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data resulting in numerous misstatements of fact being made about scientific data resulting in numerous misstatements of fact being made at scientific meetings.

E.      On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (whose assets and liabilities were later purchased by H. K. Porter Company), Union Asbestos and Rubber Company, and U. S. Gypsum Company. U. S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

F. At the November 11, 1948, meeting, these Defendants and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogeniucity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure from asbestos and asbestos-containing products.

G.      At this meeting, the Defendants intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald. The acts of these Defendants were carried out by coconspirator Defendant Met Life's agent, Dr. Lanza. These Defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public in general and the class of persons exposed to asbestos, including Plaintiff Ray Franklin.

H.      As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January 1951, in the Archives of Industrial Hygiene and Occupational Medicine (Vol. 3, No. 1), a journal of the American Medical Association. The published version stressed those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLV's). Furthermore, that article made a false claim that the published report was the complete survey of Dr. Gardner's work. The Defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries,

government officials, medical doctors, agencies, the public, and others.

I.      Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that the inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

J.      The following conspirators and others were members of the trade association known as Quebec Asbestos Mining Association: Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), Rapid American Corporation (successor to Philip Carey and Quebec Asbestos Corporation, National Gypsum Company (nlk!a Asbestos Claims Management Corporation), Flintkote, Cape Asbestos, Turner & Newall (individually and successor to Bell Asbestos). The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the AMA Archives of Industrial Health in 1951. Evidence of the Q.A.M.A., as well as correspondence from Co-conspirators, indicates close
monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A's members.

K.      Defendants who were members of the Q.A.M.A. began, on or about 1950, to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory controls of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

L.      This plan of misrepresentation and influence over the medical literature began on or about 1950 when the Q.A.M.A. members selected Saranac Laboratories to do

an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, the Q.A.M.A. members refused to further fund the study and it was terminated and never publicly discussed.

M.     As a result of the termination of this study, these Defendants fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators' agents Kenneth W. smith, M.D., Paul Cartier, M.D., Arthur J. Vorwald, M.D., Anthony J. Lanza, M.D., Vandiver Brown, and Ivan Sabourin, said misrepresentations being directed to inter alia, U. S. Government officials, Canadian Government officials, U. S. National Cancer Institute, other medical organizations, and the general public, including Plaintiff Ray Franklin.

N.     Subsequently, the Q.A.M.A. Defendant conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Drs. Braun and Truan reported to the Q.A.M.A. that asbestosis did increase a worker's chances of incurring lung cancer.

O.     The Q.A.M.A. Defendants thereafter caused, in 1958, a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in persons with asbestosis was edited out by agents of the Q.A.M.A. The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the Defendant conspirators to be patently false.

P.     By falsifying and causing publication of studies concluding that the asbestos exposure did not cause lung cancer and simultaneously omitting a documented Finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. Defendants affirmatively

misrepresented to the public and concealed from the public the extent of risk associated with inhalation of asbestos fibers.

Q.      In approximately 1958, the Q.A.M.A. Defendants publicized the edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

R.      The fraudulent misrepresentation beginning in 1946, as elaborated above and continuing with publication of the 1958 Braunl Truan study, influenced the standard set for the TLVs and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

S.      In 1967, the Q.A.M.A. Defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risk involved in inhalation of asbestos products.

T.      In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories. The following conspirators were in attendance: Central Mining & Investment Corporation, Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of their agents, Cartier, Sabourin, and LeChance.

U.      At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos were also discussed. In an affirmative attempt to mislead the public about the extent of health risk associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these Defendants conspired to prevent publication of the record of his 1952 Saranac Symposium and it was not published. In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess cancers in animals and thereby fraudulently misrepresenting existing data, albeit secret, that could not

be publicized because of the secret provisions contained in the 1936 Saranac agreement required by the asbestos industry members.

V.      The following conspirators were members of the Magnesia Insulation Manufactures Association MIMA): Philip-Carey Corporation (predecessors to Rapid American Corporation), Johns-Manville, and others.

W.      In 1955, these conspirators caused to be published the MIMA *85%* Magnesia insulation Manual. This manual falsely and fraudulently misrepresented that asbestos-containing products offered no hazard to workers who used these products.

X.      The following conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI): Garlock, Uniroyal, Raybestos-Manhattan, Johns-Manville, H. K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newell), National Gypsum (n/k/a Asbestos claims Management Corporation), Cape Asbestos and others.

Y.      In 1947, the members of the ATI, received a report from W.C.L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure. These Defendants and Metropolitan Life caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and classes of persons exposed to asbestos that the then-existing TLV was acceptable. Thereafter, these Defendant conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluation of TLVs for asbestos exposure.

Z.      In 1953, conspirator National Gypsum (nlk/a Asbestos Claims Management Corporation), through its agents, in response to an inquiry from the Indiana Division of

Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed form such applicators the need for respirators.

AA.     In 1955, conspirator Johns-Manville, through its agent Kenneth W. Smith, M.D., caused to be published in the AMA Archives of Industrial Health, an article entitled A Pulmonary Disability in Asbestos Workers. This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

BB.     In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as an agent for other alleged coconspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer when, in fact, the conspirators were in secret possession of several studies which demonstrated that positive evidence did exist.

CC.     In 1957, the members of the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in fraudulent concealment from the public of material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

DD.     In 1964, the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irvin J. Selikoff. Thereafter, these members of the ATI embarked upon a campaign to

further misrepresent the association between asbestos exposure and lung cancer.

EE.    In 1970, through their agents, defendants The Celotex Corporation (Predecessor of Rapid American Corporation) and Cary-Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease. This constituted a fraudulent misrepresentation about the material facts known to these Defendants.

FF.    All Conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of Met Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-conspirators for the other conspirators.

GG.    Certain of the Defendants and/or co-conspirators, including but not limited to Westinghouse Electric Corporation, Metropolitan Life, Raybestos Manhattan, Johns-Manville, Dresser Industries, Harbison-Walker, General Refractories, Pittsburgh Coming, PPG Industries, General Electric, Uniroyal, Owens-Illinois and Owens-Corning Fiberglass, were members of the Industrial Hygiene Foundation (AIHF). The IHF, touted by its industry members as an independent research agency, was used by the members of the asbestos industry to suppress the truth about asbestos and other substances and generate misleading or outright substances and generate misleading or outright false scientific publications. For example, in the 1 940s the IHF was contacted by the Asbestos Textile Institute to conduct a study on asbestos dust. Mr. W. C. L. Hemeon, an industrial hygienist who worked for the IHF, completed the study and forwarded the report entitled Report on Preliminary dust Investigation for Asbestos Textile Institute in June 1947. Mr. Hemeon's report indicated that workers exposed to less than the recommended threshold limit value

for asbestos were nonetheless developing diseases. The IHF never published this study and, in doing so, acted to conceal the study from the general public, including asbestos exposed workers.

HH.    As discussed infra, the IHF also assisted in the QAMA in the publication of the edited version of the Braum Truan report in 1958 which reported the conclusion, known to the IHF and its members to be false, that asbestos exposure did not increase the incidence of lung cancer.

II.    The Activities of IHF and its members substantially assisted the coconspirators by retarding the development of knowledge about the hazards of asbestos.

JJ.    Metropolitan Life and other co-conspirators downplayed the seriousness of the hazard of exposure to diatomaceous earth by misleading public health officials in California.

66.  As a direct and proximate result of the above referenced conspirators intentional publication of deceptive and misleading medical data and information as described in the preceding paragraphs, and upon which data the Plaintiff Ray Franklin, and those charged with warning him reasonably relied, the Plaintiff Ray Franklin inhaled or otherwise was exposed to and ingested hazardous dust resulting in the injuries described in this Complaint.

67.  Additionally and alternatively, as a direct and proximate result of Metropolitan Life's actions and omissions as described above, the Plaintiff Ray Franklin was caused to remain ignorant concerning the danger of human exposure to asbestos and other substances, resulting in damage to the Plaintiff Ray Franklin by depriving the him, his employers, and the general public of opportunities to be aware of the hazards of asbestos and other substances exposure, and thus the opportunity to take proper safety precautions

and/or avoid this exposure. Because of this ignorance and intentional failure to warn, the Plaintiff Ray Franklin inhaled, was exposed to, or otherwise ingested hazardous asbestos dust resulting in the injuries described above.

68. The conspirators fraudulently concealed from the Plaintiff the alteration of its published test results, the actions and omissions and concerted design and conspiracy, all as described in the paragraphs above, until the Plaintiff Ray Franklin discovered said conduct following his diagnosis of asbestos-related injuries.

69. Certain of the Defendants, in addition, belong to the IHF and the AIA/NA also known as the Asbestos Information Association/North America and took part in certain activities wherein they individually and through their organization took steps to stop the dissemination of information with regard to asbestos and its hazards, took steps to influence proposed regulation of asbestos by making misleading statements regarding the health effects of asbestos and conspired to make false representations with regard to the safety and hazards of asbestos-containing products.

70. Certain of these Defendants in the IHF, AID/NA, ATI, the Asbestosis Research Council and/or other organizations, acting individually and as members of a conspiracy and as agents of other co-conspirators took steps to fraudulently conceal and/or fraudulently misrepresent the hazards of asbestos which proximately caused injury Plaintiff Ray Franklin in the following manner:

(a)     published material or caused to be published material that the Defendants individually and/or through their organizations knew was false and incomplete in that the Defendants knowingly and deliberately deleted certain references to the known health hazards of asbestos and asbestos related products;

(b)     that the publication of these false and misleading reports and non-disclosure

of documented reports on the health hazards of asbestos were done to maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos related products;

(c)     that the acts were perpetrated to influence in the Defendants' favor proposed legislation to regulate asbestos exposure, and

(d)     that the acts in question were also done to provide a defense in lawsuits brought for injury and death resulting from asbestos disease.

132.  In continuing their asbestos exposure, the Plaintiff Ray Franklin reasonably relied upon the published medical and scientific data about the purported lack of hazards of asbestos products, Defendants' false representations that their products were safe, and the lack of publicity about the hazards of asbestos, which he reasonably believed to be safe.

71.  Defendants individually, as members of a conspiracy, and as agents of other co-conspirators intended that the Plaintiff Ray Franklin rely upon the published reports regarding the safety of asbestos and asbestos-related products, to continue his exposure to those products.

72.  Defendants individually, as members of a conspiracy, and as agents of other co-conspirators are in a position of superior knowledge regarding the health hazards of asbestos and, therefore, the Plaintiff Ray Franklin had a right to rely on the published reports commissioned by the Defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos related products. This conduct was directed at all states of the United State including Alabama.

73.  Certain Defendants belonged to The Mellon Institute and the Industrial Hygiene Foundation (IHF), which were institutes whose functions included involved in research and

communications to member companies regarding the health effects of inhaling asbestos dust. In 1935, The Mellon Institute conducted a meeting at which time a plan was developed where members of the asbestos industry would join together to combat publicity and dissemination of data on the hazards of asbestos.

74. Beginning in the early 1940's, the IHF was involved in a study by W.C.L. Hemeon entitled Report of Preliminary Dust Investigation for Asbestos Textile Institute, June, 1947. This study was done in connection with members of the Asbestos Textile Institute (ATI). This study found that workers exposed to less than the recommended threshold limit value for asbestos were nonetheless developing disease. The IHF never published this study and, in doing so, acted to conceal the study from the general public including asbestos exposed workers.

75. Beginning in the mid-1950's, the IHF and The Mellon Institute were involved in the publication of works by Dr. Braun and Mr. Truan entitled An epidemiological Study of Lung Cancer in Asbestos Miners. In its original form in September, 1957, this study had concluded that workers with asbestosis had an increased incidence of lung cancer and that the Canadian government had been under-reporting cases of asbestosis. The final published version of this study in June, 1958, deleted the conclusion that workers with asbestosis suffered an increased incidence of lung cancer and that the Canadian government had been under-reporting cases of asbestosis. The members and agents of the IHF and The Mellon Institute, individually and through these organizations, conspired with the members of the Quebec Asbestos Mining Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, to delete the above-described information regarding asbestos and cancer.

76. The above-described actions of the members and agents of the IHF and The Mellon Institute constituted intentional deception and fraud in actively misleading the

public about the extent of the hazards connected with breathing asbestos dust.

77. The above-described actions of the IHF and The Mellon Institute and their individual members substantially contributed to retarding the development of knowledge about the hazards of asbestos and thereby substantially contributed to injuries suffered by the Plaintiff Ray Franklin. The Plaintiff reserves the right to supplement these allegations once the defendants have identified all their memberships in trade organizations and the memberships of their officers, agents, employees and directors.

## COUNT FIVE

### Product Liability, Combined and Concurring Negligence,

### Intentional Tort and Conspiracy

78. The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding and following paragraphs of this complaint as if fully set forth herein.

79. The fifth cause of action is based on legal theories of product liability, combined and concurring negligence, intentional tort, and conspiracy.

80. As a result of Defendants' actions, Plaintiff Ray Franklin was exposed to unreasonably dangerous, defective, negligently manufactured and marketed asbestos containing products and/or materials, which caused grave and progressive bodily injury to Plaintiff Ray Franklin.

81. Plaintiffs assert that they have filed suit either within the applicable state statute of limitations period, and/or that their claims are timely as a matter of law pursuant to 42 U.S.C. § 9658, a provision of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Under this provision, the running of the state statute of limitations for applicable actions is delayed until "the date the plaintiff knew (or reasonably

should have known) that the personal injury or property damages ... were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A). The provision "'creates a federally mandated discovery rule for the accrual of state law claims involving releases of hazardous substances that cause or contribute to personal injury....'" *Kowaiski v. Goodyear Tire and Rubber Co.*, 841 F. Supp. 104, 107 (W.D.N.Y. 1994)(quoting *Soo Line Ry. Co. v. B.J. Carney & Co.*, 797 1472, 1487 (D.Minn. 1992). Application of the statute to a state law cause of action does not depend on the existence of an underlying federal CERCLA action. *Id.* at 107-08.

## COUNT SIX

### Workers Compensation

82. The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding and following paragraphs of this complaint as if fully set forth herein.

83. The fifth cause of action is based on legal theories of workers compensation.

84. As a result of Defendant's actions, Plaintiff Ray Franklin contracted one or more asbestos-related diseases including Asbestosis. The Plaintiff was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein throughout his employment, and in his environment while employed. During the course of his employment, the Plaintiff, Ray Franklin, worked, including but not limited to, working as a driver from 1974-1977, hauling, loading and unloading building supplies, including multiple trips to the Celotex factory in New Orleans where asbestos siding was manufactured. The Celotex Corporation has since been sold, and is now known as Rapid American Corporation. When Plaintiff went inside the factories, the dust which contained

significant amounts of asbestos-containing products and materials, floated throughout the workplace. From 1978 to 1980, Plaintiff Ray Franklin worked for Anniston Army Depot, where he worked tearing down asbestos exhaust pipes, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. From 1980 to 1984, he worked for Hub Trucking Inc., changing brake shoes. The brake dust from the brake shoes, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. In 1984, he moved to Gold Kist, Inc.(currently Gold Kist Holdings, Inc.) where he worked as a mechanic changing clutch plates, the dust from the clutch plates, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. He worked at Gold Kist, Inc.(currently Gold Kist Holdings, Inc.) for ten years, until 1994. From 1994, until June, 2009, Plaintiff Ray Franklin worked for Thompson Tractor Company, Inc., changing brake shoes. In the bay next to him the employees changing brake shoes would blow through a pipe to get the dust off of the shoes so they wouldn't be so dirty when they went home. This brake dust, which contained significant amounts of asbestos-containing products and materials, floated throughout the workplace. He worked at Thompson Tractor Company, Inc., in that asbestos filled environment, for fourteen years.

85.   Plaintiff Ray Franklin has been diagnosed with Asbestosis.

86.   On or about May, 2010, while employed for the Defendants and while acting within the line and scope of his employment, the plaintiff, Ray Franklin, received an injury or injuries arising out of and in the course of plaintiff's said employment by the defendants when he received confirmation from his doctor that he had Asbestosis, from working for defendants. As the proximate result of said employment, Plaintiff has suffered a permanent injury to his person.

87. As a direct and proximate result of plaintiff's said injuries, the plaintiff suffered both temporary total disability and a permanent loss earning capacity and eventually total disability as a result of permanent loss of use of his lung capacity, of which is said by the doctors to be inevitable, as a result of said injuries.

88. As a further direct and proximate result of plaintiff's said injuries, the plaintiff was caused to need and to obtain medical care and treatment and incur expenses for such care and treatment. That the Defendants have failed to provide the Plaintiff with medical care or temporary benefits as a result of his injury. As such the Plaintiff was forced to use his own funds and his own insurance to obtain medical treatment including surgical services, and now suffers from a permanent disability

89. The defendants had timely and actual notice of the incident referred to herein within the time specified by the Alabama Worker's Compensation Act.

90. The plaintiff's average gross weekly earnings from defendants at the time of the aforementioned injuries and incident were approximately $1000.00 per week. During this same period of time, the plaintiff was also entitled to certain fringe benefits by and from the defendants within the meaning of the Alabama Worker's Compensation Act.

91. The defendants have generally failed or refused to pay all of the temporary, total, and permanent disability benefits and necessary and reasonable medical expenses to which the plaintiff is entitled under law. A genuine justiciable controversy has arisen between the parties concerning the extent of plaintiff's entitlement to benefits under the Alabama Worker's Compensation Act.

92. Plaintiff has already incurred and expects to incur other expenses for medical, vocational and other expenses, and evidence exists in support of plaintiff's claim for compensation and other benefits.

93. Plaintiff is entitled to compensation and other benefits as allowed and provided by the Alabama Worker's Compensation Act. Plaintiff states that it has been necessary to hire attorneys to represent him in this matter and hereby requests of this Honorable Court that these attorneys receive attorney's fees of 15% of the amount received from said Defendants and that the Plaintiff be awarded the court costs in filing this matter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands judgment as follows:

(a) An Order authorizing plaintiff to employ the undersigned counsel to prosecute this action on behalf of the plaintiff;

(b) That the Court award the plaintiff temporary and permanent disability benefits, vocational and rehabilitation benefits, any and all medical expenses, future medical benefits to which the plaintiff is entitled, and all such other relief as to which the plaintiff is entitled under the Alabama Worker's Compensation Act;

(c) That the Court order the defendant to reimburse the plaintiff for all deposition and other litigation expenses reasonably incurred in the prosecution of this action;

(d) That the Court award to the plaintiff such other and further relief as to which the plaintiff is entitled under the circumstances.

(e) the Plaintiffs hereby demand judgment jointly and severally against all of the Defendants in an amount to be assessed by the Court as proper and just, together with all special and general damages permitted under applicable law as the Court deems proper and just.

Thomas J. Knight
Attorney for Plaintiffs
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36201
Phone: 256-237-9586
Facsimile: 256-237-9594
email: hubbardknight@msn.com


Steve R. Morris
Attorney for Plaintiff
P.O. Box 814
Wedowee, Alabama 36278
Phone: (256) 357-9222
Facsimile: 256-237-9594
email: stevemorrislaw@yahoo.com


**STATE OF ALABAMA,**

**CALHOUN COUNTY.**

Before me, the undersigned Notary Public in and for the State of Alabama at Large, personally appeared Ray Franklin, who is known to me and who being by me first duly sworn, deposes on oath and says:

That he has read the foregoing Complaint and that the statements made therein are true and correct to the best of his knowledge, information and belief.


Ray Franklin

Sworn to and subscribed before me this
4 day of May , 2011.


NOTARY PUBLIC

**STATE OF ALABAMA,**

**CALHOUN COUNTY.**

**TO THE HONORABLE JUDGE OF CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA:**

Comes now Ray Franklin and shows unto your Honor that he was an employee of Hub Trucking Inc., Gold Kist Holdings, Inc., and Thompson Tractor Company, Inc., and was an employee as defined by the Workmen's Compensation Laws of Alabama; that he suffered an injury on May, 2010, while acting in the line and scope of his employment; that he has been unable to reach settlement with his employer and prays for permission to secure the services of attorneys to represent him in said matter and requests permission to secure the services of Steve R. Morris and Thomas J. Knight, Attorneys at Law.

_Ray Franklin_
Ray Franklin

State of Al
County of Randolph
    Sworn to & subscribed before me this
4th day of May, 2011.

_Jaluthia A. Hodnett_
my Commission expires 08-09-2014