(AGRx), DISCOVERY, MANADR, RELATED-P

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-06192-PA -AGR

Richard Keeney et al v. A.W. Chesterton Company
Assigned to: Judge Percy Anderson
Referred to: Magistrate Judge Alicia G. Rosenberg
Case in other court: Superior Court State of CA County of
                Los Angeles, BC457255
Cause: 28:1441 Notice of Removal - Product Liability

Date Filed: 07/27/2011
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Federal Question

**Plaintiff**

**Richard Keeney**

represented by

**Carlos J E Guzman**
Farrise Firm PC
225 South Olive Street Suite 102
Los Angeles, CA 90012
800-748-6186
Fax: 510-588-4536
Email: cguzman@farriselaw.com
*ATTORNEY TO BE NOTICED*

**Karen J Chedister**
Farrise Firm PC
225 South Olive Street Suite 102
Los Angeles, CA 90012
800-748-6186
Fax: 510-588-4536
*ATTORNEY TO BE NOTICED*

**Rett Drake-Beck Bergmark**
Farrise Firm PC
225 South Olive Street Suite 102
Los Angeles, CA 90012
800-748-6186
Fax: 510-588-4536
*ATTORNEY TO BE NOTICED*

**Simona A Farrise**
Farrise Firm PC
225 South Olive Street Suite 102
Los Angeles, CA 90012
800-748-6186
Fax: 510-588-4536
Email: farriselaw@farriselaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Howard J Garcia**                        represented by   **Carlos J E Guzman**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Karen J Chedister**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Rett Drake-Beck Bergmark**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Simona A Farrise**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Tiffany Shanae Woods**
                                                            Wagner and Pelayes
                                                            1325 Spruce Street Suite 200
                                                            Riverside, CA 92507
                                                            951-686-4800
                                                            Fax: 951-686-4801
                                                            Email: twoods@farriselaw.com
                                                            *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**A.W. Chesterton Company**

**Defendant**

**Alta Building Material Company**

**Defendant**

**Ameron International Corporation**

**Defendant**

**Asbestos Corporation Ltd**

**Defendant**

**Buffalo Pumps Inc**

**Defendant**

**BW/IP International Inc**
*individually and as*
*Successor*
Byron Jackson Pump Co.

**Defendant**

**Calaveras Asbestos Ltd**

**Defendant**

**CBS Corporation**

**Defendant**

**Certainteed Corporation**

**Defendant**

**Crane Co**

**Defendant**

**Crown Cork and Seal Co Inc**
*Mundet Cork Company*

**Defendant**

**D.W. Nicholson Corporation**

**Defendant**

**Dana Douglass Insulation Company
Inc**

**Defendant**

**Flowserve International Inc**

**Defendant**

**Ford Motor Company**

**Defendant**

**Foster Wheeler LLC**            represented by  **Charles S Park**
*Erroneously Sued As*                            Brydon Hugo and Parker
Foster Wheeler USA Corporation                   135 Main Street 20th Floor
                                                 San Francisco, CA 94105
                                                 415-808-0300
                                                 Fax: 415-808-0333
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Edward R Hugo**
                                                 Brydon Hugo and Parker
                                                 135 Main Street 20th Floor
                                                 San Francisco, CA 94105
                                                 415-808-0300
                                                 Fax: 415-808-0333
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Thomas Jeffrey Moses**
                                                 Brydon Hugo and Parker

135 Main Street 20th Floor
San Francisco, CA 94105
415-808-0300
Fax: 415-808-0333
Email: tmoses@bhplaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gardner Denver Inc**

**Defendant**

**General Electric Company**

**Defendant**

**Georgia-Pacific Corporation**

**Defendant**

**Gladding-McBean and Company**
*formerly known as*
Interpace

**Defendant**

**Golden Gate Drywall**

**Defendant**

**Goulds Pump Inc**

**Defendant**

**Hanson Permanente Cement Inc**
*Kaiser Cement*

**Defendant**

**IMO Industries Inc**
*formerly known as*
Delaval Turbine Inc
*formerly known as*
Sharples Inc

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**ITT Industries Inc**

**Defendant**

**J.T. Thorpe and Son Inc**

**Defendant**

**John Crane Inc**

**Defendant**

**Johnson Mechanical Contractors Inc**

**Defendant**

**Kaiser Gypsum Company Inc**

**Defendant**

**Kelly-Moore Paint Company Inc**
*PACO*

**Defendant**

**Los Angeles Rubber Company**

**Defendant**

**Nash Engineering Co**

**Defendant**

**Parker Hannifin Corporation**

*Successor*
Sacomo-Sierra

**Defendant**

**Peerless Pumps**

**Defendant**

**Riley Power Inc**
*formerly known as*
DB Riley Inc

**Defendant**

**Roper**

**Defendant**

**Slakey Brothers Inc**

**Defendant**

**Soco West Inc**
*fka Brenntag West Inc. (Soco-Lynch)*

**Defendant**

**University Mechanical and
Engineering Contractors Inc**

**Defendant**

**Viking Pump Inc**

**Defendant**

**Warren Pumps Inc**

<u>Defendant</u>

**Westburne Pipe and Supply**

<u>Defendant</u>

**Yarway Corporation**

<u>Defendant</u>

**Does**
*1 through 400*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/27/2011 | <u>1</u> | NOTICE OF REMOVAL from Superior Court State of CA County of Los Angeles, case number BC457255 with Conformed copy of summons and complaint. Case assigned to Judge Percy Anderson, Discovery to Magistrate Judge Alicia G. Rosenberg. (Filing fee $ 350 PAID), filed by Defendant Foster Wheeler LLC.[Conformed copy of First Amended Complaint submitted attached Notice of Removal page 64 of document](car) (Additional attachment (s) added on 7/29/2011: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D AND E, # <u>5</u> Exhibit F - J, # <u>6</u> Exhibit K-N, # <u>7</u> Exhibit O, # <u>8</u> Exhibit O - 1 OF 27, # <u>9</u> Exhibit O - 2 OF 27, # <u>10</u> Exhibit O - 3 OF 27, # <u>11</u> Exhibit O - 4 OF 27, # <u>12</u> Exhibit O - 5 OF 27, # <u>13</u> Exhibit O - 6 OF 27, # <u>14</u> Exhibit O - 7 OF 27, # <u>15</u> Exhibit O - 8 OF 27, # <u>16</u> Exhibit O - 9 OF 27, # <u>17</u> Exhibit O - 10 OF 27, # <u>18</u> Exhibit O - 11 TO 27, # <u>19</u> Exhibit O - 12 OF 27, # <u>20</u> Exhibit O - 13 OF 27, # <u>21</u> Exhibit O - 14 OF 27, # <u>22</u> Exhibit O - 15 OF 27, # <u>23</u> Exhibit O- 16 OF 27, # <u>24</u> Exhibit O - 17 OF 27, # <u>25</u> Exhibit O - 18 OF 27, # <u>26</u> Exhibit O - 19 OF 27, # <u>27</u> Exhibit O - 20 OF 27, # <u>28</u> Exhibit O - 21 OF 27, # <u>29</u> Exhibit O - 22 OF 27, # <u>30</u> Exhibit O - 23 OF 27, # <u>31</u> Exhibit O - 24 OF 27, # <u>32</u> Exhibit O - 25 OF 27, # <u>33</u> Exhibit O - 26 OF 27, # <u>34</u> Exhibit O - 27 OF 27, # <u>35</u> Ntc of Asgmt, # <u>36</u> Civil Cover Sheet) (mg). (Entered: 07/28/2011) |
| 07/27/2011 | 2 | CONFORMED COPY OF FIRST AMENDED COMPLAINT against Defendants amending Notice of Removal, <u>1</u> ,filed by plaintiffs Richard Keeney, Howard J Garcia on 6/1/11 submitted attached Notice of Removal] (car) Modified on 7/28/2011 (car). (Entered: 07/28/2011) |
| 07/27/2011 | <u>4</u> | DEFENDANT Foster Wheeler LLC incorrectly served herein as Foster Wheeler USA Corporation's Disclosure Statement and Certification of Interested Parties Pursuant to Federal Rule of Civil Procedure 7.1 (car) (mg). (Entered: 07/28/2011) |
| 07/27/2011 | <u>5</u> | DEFENDANT Foster Wheeler LLC incorrectly served herein as Foster Wheeler USA Corporation's Notice of Related Case(s) filed by Defendant Foster Wheeler LLC. Related Case(s): CV07-8338 VBF RCx; CV08-0118R JTLx; CV08-0248R PLAx; CV08-00282 VBF AGRx; CV08-00501GPS AJWx [See Document for further information] (car) (mg). (Entered: 07/28/2011) |

| 07/27/2011 | 6 | DEFENDANT Foster Wheeler LLC incorrectly served herein as Foster Wheeler USA Corporation's Notice of Tag-Along Action (car) (Additional attachment(s) added on 7/29/2011: # 1 Exhibit B) (mg). (Entered: 07/28/2011) |
| 07/27/2011 | 7 | NOTICE TO PARTIES OF ADR PROGRAM filed.(car) (Entered: 07/28/2011) |
| 07/27/2011 | 8 | STANDING ORDER by Judge Percy Anderson: This action has been assigned to the calendar of Judge Percy Anderson. All counsel are ordered to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of the Central District of California. See document for further details. (gk) (Entered: 07/28/2011) |
| 07/28/2011 | 3 | NOTICE OF CLERICAL ERROR: Due to clerical error docket entry was issued an item control number Re: Amended Complaint 2 (car) (Entered: 07/28/2011) |
| 08/01/2011 | 9 | NOTICE OF MOTION AND MOTION to Remand Case to Los Angeles Superior Court- Central filed by plaintiff Howard J Garcia. Motion set for hearing on 8/29/2011 at 01:30 PM before Judge Percy Anderson. (Attachments: # 1 Memorandum, # 2 Declaration of Carlos Guzman, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10)(Woods, Tiffany) (Entered: 08/01/2011) |
| 08/02/2011 | 10 | AFFIDAVIT by affiant: Nationwide Legal and Wanda Claudio re Notice of Removal,,,,, 1 filed by Defendant Foster Wheeler LLC (Attachments: # 1 Affidavit Certificate of Service)(Moses, Thomas) (Entered: 08/02/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/02/2011 12:23:31 | | |
| **PACER Login:** | bh1524 | **Client Code:** 4801-2521 |
| **Description:** | Docket Report | **Search Criteria:** 2:11-cv-06192-PA -AGR End date: 8/2/2011 |
| **Billable Pages:** | 6 | **Cost:** 0.48 |

ORIGINAL

1  Simona A. Farrise, Esq. (CSB No. 171708)
   Rett D.B. Bergmark, Esq. (CSB No. 169401)
2  Carlos J. Guzman, Esq. (CSB No. 219185)
   Karen J. Chedister, Esq. (CSB No. 099473)
3  FARRISE FIRM, P.C.
   225 South Olive Street, Ste. 102
4  Los Angeles, California 90012
   Telephone: (800) 748-6186
5  Facsimile: (510) 588-4536
   farriselaw@farriselaw.com
6
   Attorneys for Plaintiffs
7

**FILED**
LOS ANGELES SUPERIOR COURT

JUN 0 1 2011

John A. Clarke, Executive Officer/Clerk
By_____ Deputy
   RUBINA LOPEZ

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11  RICHARD KEENEY and HOWARD J. GARCIA,    Case No.: BC 457255

12            Plaintiffs,                    **FIRST AMENDED COMPLAINT FOR
                                             PERSONAL INJURY; DEMAND FOR**
13  vs.                                      **JURY TRIAL**

14  A.W. CHESTERTON COMPANY; ALTA
    BUILDING MATERIAL COMPANY; AMERON        [COMPLEX ASBESTOS LITIGATION -
15  INTERNATIONAL CORPORATION;               SUBJECT TO THE GENERAL ORDERS
    ASBESTOS CORPORATION, LTD.; BUFFALO      CONTAINED IN FILE NO. C 700000]
16  PUMPS, INC.; BW/IP INTERNATIONAL, INC.,
17  individually and as successor-in-interest to   NEGLIGENCE; BREACH OF IMPLIED
    BYRON JACKSON PUMP CO.; CALAVERAS        WARRANTY; STRICT PRODUCTS
18  ASBESTOS, LTD.; CBS CORPORATION;         LIABILITY; FALSE
    CERTAINTEED CORPORATION; CRANE CO.;      REPRESENTATION UNDER
19  CROWN CORK & SEAL COMPANY, INC.          RESTATEMENT OF TORTS SECTION
20  (MUNDET CORK COMPANY); D.W.              402-B; FRAUD/INTENTIONAL
    NICHOLSON CORPORATION; DANA;             MISREPRESENTATION;
21  DOUGLASS INSULATION COMPANY, INC.;       FRAUD/FAILURE TO WARN;
22  FLOWSERVE INTERNATIONAL, INC.; FORD      CONSPIRACY TO DEFRAUD;
    MOTOR COMPANY; FOSTER WHEELER USA        NEGLIGENCE: CLUTCH & BRAKE
23  CORPORATION; GARDNER DENVER, INC.;       ASSEMBLIES, MECHANISMS &
    GENERAL ELECTRIC COMPANY; GEORGIA-       COMPONENTS; STRICT LIABILITY;
24  PACIFIC CORPORATION; GLADDING-           CLUTCH AND BRAKE ASSEMBLY
25  McBEAN & COMPANY, fka INTERPACE;         LIABILITIES; LOSS OF CONSORTIUM
    GOLDEN GATE DRYWALL; GOULDS PUMP,
26  INC.; HANSON PERMANENTE CEMENT, INC.     The Honorable Judge Amy D. Hogue
    (KAISER CEMENT); IMO INDUSTRIES, INC.,   Department 34
27  fka DeLAVAL TURBINE, INC., and
28

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY (WITH DEMAND FOR JURY TRIAL)          PAGE 1

SHARPLES, INC.; INGERSOLL-RAND
COMPANY; ITT INDUSTRIES, INC.; J.T.
THORPE & SON, INC.; JOHN CRANE, INC.;
JOHNSON MECHANICAL CONTRACTORS,
INC.; KAISER GYPSUM COMPANY, INC.;
KELLY-MOORE PAINT COMPANY, INC.
(PACO); LOS ANGELES RUBBER COMPANY;
NASH ENGINEERING CO.; PARKER
HANNIFIN CORPORATION, as successor-in-
interest to SACOMO-SIERRA; PEERLESS
PUMPS; RILEY POWER, INC., fka DB RILEY,
INC.; ROPER; SLAKEY BROTHERS, INC.;
SOCO WEST, INC., fka BRENNTAG WEST,
INC. (SOCO-LYNCH); UNIVERSITY
MECHANICAL & ENGINEERING
CONTRACTORS, INC.; VIKING PUMP, INC.;
WARREN PUMPS, INC.; WESTBURNE PIPE &
SUPPLY; YARWAY CORPORATION; and
DOES 1 THROUGH 400,

Defendants.

Plaintiffs RICHARD KEENEY and HOWARD J. GARCIA submit this First Amended
Complaint, which corrects dates and name errors in the Amended Complaint, but makes no
substantive changes, as follows:

Paragraph 17 (a), p. 10, lines 8-9.

Paragraph 17(b), p. 10, lines 20-21

Paragraph 17(c), p. 11, lines 10-11

Paragraph 17 (d), p. 11, line 22

Paragraph 78, p. 42, line 4

**GENERAL ALLEGATIONS – ALL DEFENDANTS**

1.     Plaintiffs, RICHARD KEENEY and HOWARD J. GARCIA, comes now on
behalf of himself and complains and alleges as to ALL DEFENDANTS and each of them named
herein as identified or as a fictitiously named defendant as "DOES" that he has and continues to
suffer, permanent , and serious injuries including terminal cancer called mesothelioma, and/or
future increased risk of injuries to his person, body and health, including and progressive lung
disease (including, but not limited to, asbestosis, scarring, plaques and/or calcifications), and the

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY (WITH DEMAND FOR JURY TRIAL)          PAGE 2

1   mental and emotional distress attendant thereto, causing him economic and non-economic

2   damage in excess of $50,000.00 for which defendants and each of them are liable and

3   responsible to jointly and/or severally as permitted by law.

4       2.    Plaintiffs RICHARD KEENEY and HOWARD J. GARCIA are referred to herein

5   and throughout as "plaintiff", "plaintiffs", "Mr. KEENEY" or "Mr. GARCIA". All references to

6   "plaintiff" or "plaintiffs" shall refer either to RICHARD KEENEY or HOWARD J. GARCIA or

7   both plaintiffs collectively, and if subsequently so amended, the legal heirs, representatives,

8   successors in interest to RICHARD KEENEY or HOWARD J. GARCIA.

9       3.    Plaintiff, RICHARD KEENEY's disability within the meaning of California Code

10   of Civil Procedure section 340.2 does not exist, as plaintiff was diagnosed with mesothelioma

11   years after his taking a normal retirement for non-health reasons; hence, this complaint is timely

12   under law.

13       4.    The true names and capacities, whether individual, corporate, associate,

14   governmental or otherwise, of defendants FIRST DOE through FOUR-HUNDRETH DOE,

15   inclusive, are unknown to plaintiffs at this time, whom plaintiffs therefore sues by such fictitious

16   names. When the true names and capacities of said defendants have been ascertained, plaintiffs

17   will amend this complaint accordingly. Plaintiffs are informed and believes, and thereon alleges,

18   that each defendant designated herein as a DOE is responsible, negligently or in some other

19   actionable manner, for the events and happenings hereinafter referred to, and caused injuries and

20   damages proximately thereby to plaintiffs, as hereinafter alleged.

21       5.    Plaintiffs know of no other party who should be joined as defendant herein; in the

22   event such party or parties exist, any such party is included and nominally named as a

23   fictitiously- named "DOE" defendant herein.

24       6.    Plaintiffs are informed and believes, and alleges, that at all times herein

25   mentioned defendants and each of them including defendants FIRST DOE through FOUR-

26   HUNDRETH DOE, inclusive, were and are authorized to do business in the State of California,

27   that said defendants have regularly conducted business in the County of Los Angeles, State of

28   California, and that certain of said defendants presently designate and have at pertinent times

have designated the County of Los Angeles as their principal place of doing business within the

State of California. Plaintiffs further allege that throughout the times above some or all of the

1 above-identified defendants maintained their principal places of business and/or

2 contemporaneous business offices in Los Angeles County, State of California, including Los

3 Angeles County business locations at which asbestos-containing products, materials, equipment

4 and components of these defendants were designed, manufactured, assembled, furnished,

5 shipped, warehoused, sold, supplied, distributed to which plaintiff Mr. KEENEY and Los

6 Angeles County residents were exposed without warning or protection from these defendants.

7         7.      At all times herein mentioned, each of the defendants, except as otherwise

8 alleged, was the agent, servant, employee and/or joint venturer of his co defendants, and each of

9 them, and at all said times, each defendant was acting in the full course and scope of said agency,

10 service, employment and/or joint venture. Defendants and each of them agreed and conspired

11 among themselves, and with certain other individuals and/or entities, to act, or not to act, in such

12 a manner that resulted in injury to the plaintiffs; and such defendants, as co-conspirators, are

13 liable for the acts, or failures to act, of the other conspiring defendants. Among other entities and

14 persons, defendants, and each of them, are liable for the acts of each and every "alternate entity"

15 as identified below in that they conspired with one another to make, sell, distribute, design and or

16 provide products and services which would injure plaintiffs which defendants and their co-

17 conspirators and alternate entities knew were dangerous and would place individuals such as

18 plaintiff, RICHARD KEENEY risk for serious injury including cancer, but withheld and

19 concealed that information and knowledge from plaintiff, RICHARD KEENEY and others

     resulting in the harm complained of herein.

20         8.      As to each and every defendant, Plaintiffs do not herein allege or claim any

21 exposure under any of the following causes of action at this time with regard to any product,

22 action, place or activity relating to any military and/or government products; any asbestos-

23 exposure relating to military and/or governmental products, any actions by a federal officer; or

24 activities related in any way to any federal enclave. This Complaint does not nor intends to in

     any way assert claims based on federal subject matter jurisdiction.

25         9.      At all times herein mentioned, each of the defendants was the successor,

26 successor in business, successor in product line or a portion thereof, assign, predecessor,

27 predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, alter

28 ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or

1  member in an entity researching, studying, manufacturing, fabricating, designing, labeling,

2  assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing,

3  installing, contracting for installation, repairing, marketing, warranting, rebranding,

4  manufacturing for others, packaging and advertising a certain substance, the generic name of

5  which is asbestos and asbestos-containing products.  Said entities shall hereinafter collectively be

6  called "alternate entities".  Each of the herein named defendants are liable for the tortious

7  conduct of each successor, successor in business, successor in product line or a portion thereof,

8  assign, predecessor, predecessor in business, predecessor in product line or a portion thereof,

9  parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it

10  was a member of, or funded; that researched, studied, manufactured, fabricated, designed,

11  labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected,

12  serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded,

13  manufactured for others and advertised a certain substance, the generic name of which is

14  asbestos and asbestos-containing products.  The following defendants, and each of them, are

15  liable for the acts of each and every "alternate entity", and each of them, in that there has been a

16  virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants have

17  acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants

18  and each of them, caused the destruction of plaintiffs' remedy against each such "alternate

19  entity"; each such defendant has the ability to assume the risk  spreading role of each such

20  "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each

    such "alternate entity."

21
    | DEFENDANT | ALTERNATE ENTITY |
22  | --- | --- |
    | BW/IP INTERNATIONAL, INC., | BYRON JACKSON PUMP CO. |
23  | CBS CORPORATION | VIACOM; WESTINGHOUSE ELECTRIC CORPORATION; WECO; WESCO; B.F. STURTEVANT COMPANY |
24  | CERTAINTEED CORPORATION | KEASBY & MATTISON; GUSTIN BACON MANUFACTURING CO. |
25
26  | CRANE CO. | CRANITE; CHEMICAL PUMP DIVISION; CHEMPUMP, INC., a/k/a JENKINS VALVES, INC., a/k/a PACIFIC PUMPS, INC. |
27

28

| | |
|---|---|
| CROWN CORK & SEAL COMPANY, INC., individually and as successor-in-interest to, MUNDET CORK COMPANY | MUNDET INSULATION; MUNDET CORK COMPANY |
| FLOWSERVE INTERNATIONAL INC. | BW/IP INTERNATIONAL, INC. (formerly known as BYRON JACKSON PUMP DIVISION), BYRON JACKSON PUMP COMPANY, FLOWSERVE PUMP CORPORATION, EDWARD VALVE INC., EDWARD VALVE & MANUFACTURING, JOHNSTON PUMP COMPANY, BW/IP INTERNATIONAL, INC. (f/k/a BYRON JACKSON PUMP DIVISION), BYRON JACKSON PUMP COMPANY, PACIFIC PUMPS, NORDSTROM VALVES, INC., NORDSTROM AUDCO, LLC, MERCO-NORDSTROM VALVE COMPANY, KAMMER VALVES INC., KAMMER CONTROL VALVES, KAMMER VENTILE, DURION CASTINGS COMPANY, THE DURIRON COMPANY, INC., DURCO INTERNATIONAL, INC., ALDRICH, ALDRICH DARLING VALVE; DURAMETALLIC CORPORATION |
| GEORGIA-PACIFIC CORPORATION | BESTWALL; BESTWALL GYPSUM COMPANY |
| IMO INDUSTRIES, INC. (formerly known as DELAVAL TURBINE, INC. and SHARPLES INC.) | DELAVAL TURBINE, INC.; SHARPLES INC. |
| INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG; DRESSER-RAND POWERWORKS; THERMOKING; TERRY STEAM TURBINE COMPANY; WHITON MACHINE CO. |
| PARKER HANNIFIN CORPORATION, individually and as successor-in-interest to, SACOMO-SIERRA | SACOMO-SIERRA |
| SOCO WEST, INC. formerly known as BRENNTAG WEST, INC. | BRENNTAG WEST, INC. |
| WARREN PUMPS, INC. | QUIMBY PUMPS |
| WESTBURNE SUPPLY, INC., | P.E. O'HARE; WESTERN PLUMBING |

1  individually and as successor-in-         SUPPLY CO., LTD.
   interest to, P.E. O'HARE and
2  WESTERN PLUMBING SUPPLY
   CO., LTD.
3
4                              **PRODUCT DEFENDANTS**

5        10.    PLAINTIFFS incorporate fully here by reference as though fully set forth all of

6  the General Allegations above and COMPLAINS hereafter of defendants and each of them

7  separately and collectively including their alternate entities identified in paragraph 8 above as

8  "PRODUCT DEFENDANTS" and allege against each of them as hereafter set forth where

9  "PRODUCT DEFENDANTS" are referenced or referred to.  Said "PRODUCT DEFENDANTS"

10 as they are referred to hereafter and throughout this complaint include FIRST DOE through

11 TWO-HUNDREDTH DOE;  A.W. CHESTERTON COMPANY; ALTA BUILDING

12 MATERIAL COMPANY; AMERON INTERNATIONAL CORPORATION; ASBESTOS

13 CORPORATION, LTD.; BUFFALO PUMPS, INC.; BW/IP INTERNATIONAL, INC.,

14 individually and as successor-in-interest to BYRON JACKSON PUMP CO.; CALAVERAS

15 ASBESTOS, LTD.; CBS CORPORATION; CERTAINTEED CORPORATION; CRANE CO.;

16 CROWN CORK & SEAL COMPANY, INC. (MUNDET CORK COMPANY); D.W.

17 NICHOLSON CORPORATION; DANA; DOUGLASS INSULATION COMPANY, INC.;

18 FORD MOTOR COMPANY; FOSTER WHEELER USA CORPORATION; GARDNER

19 DENVER, INC.; GENERAL ELECTRIC COMPANY; GEORGIA-PACIFIC CORPORATION;

20 GLADDING-McBEAN & COMPANY, fka INTERPACE; GOLDEN GATE DRYWALL;

21 GOULDS PUMP, INC.; HANSON PERMANENTE CEMENT, INC. (KAISER CEMENT);

22 IMO INDUSTRIES, INC., fka DeLAVAL TURBINE, INC., and SHARPLES, INC.;

23 INGERSOLL-RAND COMPANY; ITT INDUSTRIES, INC.; J.T. THORPE & SON, INC.;

24 JOHN CRANE, INC.; JOHNSON MECHANICAL CONTRACTORS, INC.; KAISER

25 GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY, INC. (PACO); LOS

26 ANGELES RUBBER COMPANY; NASH ENGINEERING CO.; PARKER HANNIFIN

27 CORPORATION, as successor-in-interest to SACOMO-SIERRA; PEERLESS PUMPS; RILEY

28 POWER, INC., fka DB RILEY, INC.; ROPER; SLAKEY BROTHERS, INC.; SOCO WEST,
   INC., fka BRENNTAG WEST, INC. (SOCO-LYNCH); UNIVERSITY MECHANICAL &
   ENGINEERING CONTRACTORS, INC.; VIKING PUMP, INC.; WARREN PUMPS, INC.;

1  WESTBURNE PIPE & SUPPLY; YARWAY CORPORATION. All of these entities, and each

2  of them, and their respective foregoing ALTERNATE ENTITIES, are referred to hereinafter

3  throughout and collectively as "PRODUCT DEFENDANTS".

**FIRST CAUSE OF ACTION**

**Negligence**

**[Against All PRODUCT DEFENDANTS]**

FOR A FIRST CAUSE OF ACTION, PLAINTIFFS COMPLAIN of defendants and each

of them separately and collectively as "PRODUCT DEFENDANTS" identified in paragraph 9

above and allege as hereafter set forth and for a cause of action for negligence alleges:

11.     At all times herein mentioned, each of the defendant, and each of them, was the

successor, successor in business, successor in product line or a portion thereof, assign,

predecessor, predecessor in business, predecessor in product line or a portion thereof, parent,

subsidiary, alter ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial

owner of or member in an entity researching, studying, manufacturing, fabricating, designing,

labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting,

servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding,

manufacturing for others, packaging and advertising a certain substance, the generic name of

which is asbestos and asbestos-containing products.  Each of the herein named defendants are

liable for the tortious conduct of each successor, successor in business, successor in product line

or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a

portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or

entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

designed, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold,

inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

rebranded, manufactured for others and advertised a certain substance, the generic name of

which is asbestos and asbestos-containing products.

12.     At all times herein mentioned, defendants ONE HUNDRED FIFTIETH DOE

through TWO HUNDREDTH DOE were Officers and Directors of named defendants herein as

FIRST DOE through ONE HUNDRED FORTY-NINTH DOE.

13.     At all times herein mentioned, defendants, including PRODUCT DEFENDANTS,

1   and each of them, were and are engaged in the business of researching, manufacturing,

2   fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale,

3   selling, supplying, inspecting, servicing, installing, contracting for installation, repairing,

4   removing, demolishing, marketing, warranting, rebranding, manufacturing for others, packaging

5   and advertising a certain substance, the generic name of which is asbestos, and other products,

6   materials and equipment containing asbestos (hereinafter and throughout, "asbestos-containing

7   products").

8        14.    At all times herein mentioned, defendants, including PRODUCT DEFENDANTS,

9   and each of them, singularly and jointly, negligently and unreasonably researched, manufactured,

10   fabricated, designed, tested or failed to test, recalled or retrofitted or failed to recall or retrofit

11   where such was reasonable, warned or failed to warn, labeled or failed to label, assembled,

12   distributed, leased, bought, offered for sale, sold, supplied, inspected, serviced, installed,

13   contracted for installation, contracting for fabrication, repaired, removed and/or demolished,

14   marketed, warranted, rebranded, manufactured for others, packaged and advertised asbestos and

15   asbestos-containing products that proximately caused personal injuries to persons themselves

16   using, working with, working around or living with persons working with or around such

17   asbestos and asbestos-containing products (hereinafter collectively called "exposed persons"),

18   including plaintiff, RICHARD KEENEY, while being used in a manner that was intended by or

19   otherwise reasonably foreseeable to defendants, including PRODUCT DEFENDANTS, thereby

20   rendering such asbestos and asbestos-containing products unsafe and dangerous to such exposed

21   persons.

     15.    Defendants, including PRODUCT DEFENDANTS, and each of them, had a non-

22   delegable and continuing post-sale duty to exercise due care in the pursuance of the activities set

23   forth above, yet defendants, including PRODUCT DEFENDANTS, and each of them, breached

said non-delegable and continuing duty of due care.

24        16.    Plaintiff, RICHARD KEENEY, in a manner that was reasonably foreseeable to

25   defendants, including PRODUCT DEFENDANTS, himself used, handled, disturbed, or was a

26   bystander to the use, handling and disturbance of, and/or was environmentally exposed to

27   asbestos and asbestos-containing products for which defendants, including PRODUCT

28   DEFENDANTS, were, are and remain liable and legally responsible, including, but not limited

to, through PRODUCT DEFENDANTS' design, manufacture, use, supply, distribution, specification, sale or other use of the same.

17.    Plaintiff, RICHARD KEENEY, as a worker, product user and/or bystander to the use of defendants, including PRODUCT DEFENDANTS', asbestos and asbestos-containing products, whereby plaintiff alleges exposure to asbestos by defendants, including PRODUCT DEFENDANTS, at locations within State of California, including, but not limited to the following:

(a)    Various construction jobs in Santa Clara, County and Northern, California (1954-1958): Between 1954 through approximately 1958, plaintiff RICHARD KEENEY worked as a laborer with his father on various construction jobs in Northern, California. During and throughout these years, plaintiff alleges he and his father assisted in the construction of various jobsites working with and/or around various asbestos and asbestos-containing products, materials and equipment used, supplied, installed, removed, replaced, specified, required or otherwise disturbed on the premises of the various jobsites by and around Mr. KEENEY, and by such means Mr. KEENEY's person, clothing, as well as his hair and body, was contaminated with asbestos from asbestos and asbestos-containing products used, handled, or otherwise disturbed on the premises of the various jobsites and from products used at the location.  As a result, plaintiff was exposed to asbestos by PRODUCT DEFENDANTS' asbestos and asbestos-containing products, for they as well as the PREMISES DEFENDANTS are liable.

(b)    Various construction jobs in Santa Clara, County and Northern, California (1954-1958): Between 1954 through approximately 1958, Plaintiff alleges that his father was involved in the construction and remodeling of various industrial, residential and commercial jobs where plaintiff was exposed to asbestos without warning.  Plaintiff's father assisted in the construction of various jobsites working with and/or around various asbestos and asbestos-containing products, materials and equipment used, supplied, installed, removed, replaced, specified, required or otherwise disturbed on the premises of the various jobsites by and around his father, and by such means his father's person, clothing, as well as his hair and body, was contaminated with asbestos from asbestos and

asbestos-containing products used, handled, or otherwise disturbed on the premises of the various jobsites and from products used at the location. Plaintiff lived with his father in the same home during the aforesaid years. By these means, plaintiff was para-occupationally exposed to asbestos when that asbestos was brought home on his father's person and clothing and contaminated the Keeney family's vehicle, home, clothing and furnishings with asbestos exposing plaintiff and family members. As a result, plaintiff RICHARD KEENEY also was exposed to asbestos by PRODUCT DEFENDANTS' asbestos and asbestos-containing products for which the PRODUCT DEFENDANTS' are liable.

(c)     C&H Sugar, Crocket, California (1979-1995): Between <u>1979 through approximately 1995</u>, plaintiff RICHARD KEENEY worked as a pump mechanic, millwright and general laborer. During and throughout these years, plaintiff alleges he was exposed to asbestos from PRODUCT DEFENDANTS' asbestos and asbestos-containing products, materials and equipment (hereinafter, collectively, "asbestos-containing products") during and as a result of plaintiff's work with PRODUCT DEFENDANTS' asbestos and asbestos-containing products, as well as a bystander to others working with PRODUCT DEFENDANTS' asbestos and asbestos-containing products during the use, addition to, application, clean-up, construction, destruction, erection, handling, inspection, installation, maintenance, preparation, removal, repair, replacement, overhaul, and other disturbance of PRODUCT DEFENDANTS' asbestos and asbestos-containing products.

(d)     Automotive Repair (1940s-1960s): Between the 1940s through <u>1960s</u>, plaintiff performed automotive work. Plaintiff regularly inspected vehicles' asbestos-containing brakes and clutch assemblies and performed the repair, removal and replacement of said products. Plaintiff also performed engine inspection, maintenance, overhaul and repairs, requiring his routine removal, replacement and wire-scraping off of engine head, valve cover and exhaust gaskets. As a result, plaintiff was exposed to asbestos by PRODUCT DEFENDANTS' asbestos and asbestos-containing products for which the PRODUCT

1   DEFENDANTS' are liable.

2       18.    As a direct and proximate result of the conduct of the defendants, including

3   PRODUCT DEFENDANTS, and each of them, as aforesaid, plaintiff was exposed to asbestos

4   from defendants' asbestos and asbestos-containing products, caused severe and permanent injury

5   to plaintiff, RICHARD KEENEY including, but not limited to, that described hereinabove.

6       19.    Plaintiffs are informed and believes, and thereon alleges, that the injuries and

7   harm from asbestos hereinabove described from which plaintiff suffers are and have been caused

8   by inhalation of asbestos fibers without perceptible trauma; said asbestos disease results from

9   plaintiff's exposure to defendants', including PRODUCT DEFENDANTS', asbestos and

10   asbestos-containing products.

11       20.    Plaintiff, RICHARD KEENEY suffers from a mesothelioma, a lethal cancer

12   caused by exposure to asbestos and asbestos-containing products. Mr. KEENEY was not aware

13   at the time of exposure that asbestos or asbestos-containing products presented any risk of injury

14   and/or disease. The asbestos and asbestos-containing products of each named defendant and

15   each DOE defendant, including, but not limited to, PRODUCT DEFENDANTS, were a

16   substantial factor in contributing to, and in causing, injury to plaintiff, RICHARD KEENEY as

17   set forth herein.

18       21.    Plaintiff, RICHARD KEENEY further alleges his injuries are a result of

19   cumulative exposure to asbestos and asbestos containing products manufactured, fabricated,

20   inadequately researched, designed, inadequately tested, recalled, retrofitted, labeled or failed to

21   label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed,

22   contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others,

23   packaged and advertised by the aforementioned defendants, including PRODUCT

24   DEFENDANTS, their "alternate entities", and each of them and that plaintiff cannot identify

25   precisely which asbestos or asbestos containing product(s) specifically caused the injuries

26   complained of herein, rather that they each and all during the course of plaintiff's work and the

27   work of others around plaintiff, which use caused plaintiff's asbestos exposure which

28   contributed to increase the risk of his developing his asbestos illness described hereinabove, and

1  that they did in fact do so.

2      22.    In researching, mining, shipping, manufacturing, fabricating, designing, testing or

3  failing to test, recalled or retrofitted or failed to recall or retrofit where such was reasonable,

4  warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale,

5  selling, inspecting, servicing, installing, contracting for installation, repairing, marketing,

6  warranting, rebranding, manufacturing for others, packaging and advertising asbestos and

7  asbestos containing products, defendants, including PRODUCT DEFENDANTS, and each of

8  them, did so with conscious disregard for the safety of exposed persons, including plaintiff, who

9  came into contact with said asbestos and asbestos containing products, in that said defendants,

10  including PRODUCT DEFENDANTS, and each of them, had prior knowledge that there was a

11  substantial risk of injury or death resulting from exposure to asbestos or asbestos containing

12  products, including, but not limited to, the injury and harm described hereinabove. Said

13  knowledge was obtained, in part, from scientific studies performed by, at the request of, or with

14  the assistance of, said defendants, including PRODUCT DEFENDANTS, their "alternate

15  entities", and each of them, and which knowledge was obtained by said defendants, including

16  PRODUCT DEFENDANTS, their "alternate entities", and each of them on or before 1930, and

17  thereafter.

18      23.    On or before 1930, and thereafter, said defendants, including PRODUCT

19  DEFENDANTS, their "alternate entities" and each of them, were aware that members of the

20  general public and product users and other "exposed persons", who would come in contact with

21  asbestos and asbestos containing products, had no knowledge or information indicating that

22  asbestos or asbestos containing products could cause injury, and said defendants, including

23  PRODUCT DEFENDANTS, their "alternate entities", and each of them, knew that members of

24  the general public and other "exposed persons", who came in contact with asbestos and asbestos

25  containing products, would assume, and in fact did assume, that exposure to asbestos and

26  asbestos containing products was safe, when in fact said exposure was extremely hazardous to

27  health and human life.

28      24.    With said knowledge, said defendants, including PRODUCT DEFENDANTS,
   their "alternate entities", and each of them, opted to research, manufacture, mine, ship, fabricate,

design, label, assemble, distribute, lease, buy, offer for sale, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos containing products.  Rather than attempting to protect or prevent injury to "exposed persons", or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos containing products, defendants, their "alternate entities", and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities", and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

25.     The above referenced conduct of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, was motivated by the financial interest of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, in the continuing, uninterrupted research, manufacture, fabrication, design, labeling, assembly, design, distribution, lease, purchase, sale, offer for sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos containing products.  In pursuance of said financial motivation, said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, consciously disregarded the safety of exposed persons and were in fact consciously willing and intended to permit asbestos and asbestos containing products to cause injury to exposed persons and induced exposed persons, including plaintiff, to work with and otherwise be exposed to defendants' asbestos and asbestos-containing products.

26.     Plaintiff and other exposed persons relied upon defendants', including PRODUCT DEFENDANTS, and each of their representations, concealment of know facts, lack of warnings, and implied warranties of fitness of their asbestos and asbestos-containing products.  As a direct, foreseeable and proximate result thereof, plaintiff has been injured permanently as alleged further herein.

27.     Defendants, , including PRODUCT DEFENDANTS, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

28.     Defendants, , including PRODUCT DEFENDANTS, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each defendants', including PRODUCT DEFENDANTS, officers, directors and managing agents participated in , authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

29.     The above referenced conduct of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, was willful, despicable, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of exposed persons, including plaintiff.   Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

30.     As a direct and proximate result of the aforesaid conduct of defendants, including PRODUCT DEFENDANTS, and each of them, plaintiff has suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, the injury and harm described hereinabove, and the mental and emotional distress attendant thereto, causing him economic and non-economic damage in excess of $50,000.00.

31.     As a direct and proximate result of the aforesaid conduct of the defendants, including PRODUCT DEFENDANTS, and each of them, plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

32.     As a further direct and proximate result of the said conduct of the defendants, including PRODUCT DEFENDANTS, and each of them, plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, including PRODUCT DEFENDANTS, as hereinafter set forth.

### SECOND CAUSE OF ACTION

#### Breach of Implied Warranty

#### [Against All PRODUCTS DEFENDANTS]

AS and FOR A SECOND CAUSE OF ACTION, plaintiff complains of PRODUCTS DEFENDANTS, and each of them, and alleges:

33.     Plaintiff here re-alleges and incorporates by reference as though fully set forth herein paragraphs 1 through 31 of the First Cause of Action, *supra*.

34.     The PRODUCTS DEFENDANTS, and each of them, impliedly warranted that the afore-described asbestos and asbestos-containing products were of good and merchantable quality and fit for their intended use.

35.     The implied warranty made by the PRODUCTS DEFENDANTS, and each of them, that the asbestos and asbestos-containing products were of good and merchantable quality for the particular intended use was breached in that certain harmful, poisonous and deleterious matter and particles, namely, asbestos dust, debris, fiber and particulate, were given off into the atmosphere when such asbestos and asbestos-containing products were used and handled as intended by and foreseeable to PRODUCTS DEFENDANTS by exposed persons, including plaintiff, resulting in exposure to asbestos from defendants' asbestos and asbestos-containing products.

36.     As a direct and proximate result of the breach of implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff developed an illness and harm described hereinabove.  Plaintiff was damaged as fully set forth herein, including those special damages herein alleged.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, including PRODUCT DEFENDANTS, as hereinafter set forth.

### THIRD CAUSE OF ACTION

#### Strict Products Liability – Design and Manufacturing Defects

#### [Against All PRODUCTS DEFENDANTS]

AS and FOR A THIRD CAUSE OF ACTION, plaintiff complains of PRODUCTS

1   DEFENDANTS, and each of them, and alleges:

2         37.    Plaintiff here re-alleges and incorporates by reference as though fully set forth

3   herein paragraphs 1 through 31 of the First Cause of Action, *supra*, and paragraphs 31 through

4   35 of the Second Cause of Action, *supra*.

5         38.    At all time herein mentioned, as set forth hereinabove and incorporated herein by

6   reference, PRODUCTS DEFENDANTS and each them manufactured, designed, supplied,

7   distributed, installed, or sold products which were defective in that they were not as safe as an

    ordinary consumer of such products would expect.  Such product defect in PRODUCT
8
    DEFENDANTS' products being a substantial factor and a legal cause of plaintiff injury and
9
    harm as set forth hereinabove.
10
          39.    Defendants, including PRODUCTS DEFENDANTS, and each of them, knew that
11
    the aforementioned asbestos and asbestos-containing products would be used without inspection
12
    for defects by the user thereof, including exposed persons, including plaintiff.

13        40.    At all times mentioned herein, Plaintiff reasonably was unaware of the dangerous

14  nature of asbestos and asbestos-containing products, including those of PRODUCTS

15  DEFENDANTS.

16        41.    At all times mentioned herein, Defendants, including PRODUCTS

17  DEFENDANTS, and each of them, were aware of the dangerous and defective nature of asbestos

18  and asbestos-containing products when they were used in their intended or reasonably

    foreseeable manner; and that defendants, including PRODUCTS DEFENDANTS, were aware
19
    that persons that would use and otherwise foreseeable be exposed to these asbestos and asbestos-
20
    containing products were not aware of the dangerous nature of those products; and that
21
    defendants nonetheless took no action to warn or otherwise protect exposed persons, including
22
    Plaintiff, who foreseeable would be exposed to these defective and inadequately labeled asbestos
23
    and asbestos-containing products.

24        42.    Defendants, including PRODUCTS DEFENDANTS, aforementioned asbestos

25  and asbestos-containing products were used by Plaintiff and exposed persons in the manner for

26  which they were intended or would be foreseeable used, and Plaintiff was exposed to said

27  asbestos and asbestos products in a manner foreseeable to defendants, including PRODUCTS

28  DEFENDANTS.

43. As a direct and proximate result of the foregoing conduct, Plaintiff was harmed and injured as heretofore alleged.

44. As a proximate result of defects in the aforementioned asbestos and asbestos-containing products of defendants, including PRODUCTS DEFENDANTS, Plaintiff was damaged as fully set forth herein, including those special damages herein alleged.

45. The foregoing acts of the defendants, including PRODUCTS DEFENDANTS, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of Plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned asbestos and asbestos-containing products to Plaintiff's employers or to those entities that installed and/or handled the asbestos and asbestos-containing products to which Plaintiff was exposed, knew that these asbestos and asbestos-containing products released invisible, respirable asbestos dust, debris, fiber and particulate when used, installed, removed, handled or otherwise disturbed as intended and foreseeable, and that said asbestos dust, debris, fiber and particulate were extremely dangerous when inhaled. The defendants, including PRODUCTS DEFENDANTS, and each of them, did not warn or insufficiently warned regarding the dangerous nature of said asbestos and asbestos-containing products, nor took any action to protect exposed persons, including Plaintiff, from exposure to said asbestos and asbestos-containing products, despite knowing that exposed persons, including Plaintiff, had no knowledge of the dangerous and hazardous nature thereof, and would thereby be exposed to and inhale asbestos fibers, which Plaintiff did to his injury and harm; accordingly, plaintiff is entitled to recover punitive damages from defendants herein.

46. At all time herein mentioned, as set forth hereinabove and incorporated herein by reference, PRODUCT DEFENDANTS and each of them manufactured, designed, supplied, distributed, installed, and/or sold asbestos or asbestos containing products which were defective in that asbestos was used when alternative and safer designs and materials were available and could and should have been substituted and used instead of the deadly asbestos and which defect in PRODUCT DEFENDANTS' product is a legal cause of plaintiff's injury and harm as set forth hereinabove.

47. At all times herein mentioned, as set forth above and incorporated herein by reference, Plaintiff himself was otherwise exposed to asbestos from asbestos and asbestos-

1  containing products of defendants, including PRODUCTS DEFENDANTS, and each of them,

2  also referred to hereinafter as the "defective and improperly labeled products." Defendants'

3  asbestos and asbestos-containing products failed to warn at all or adequately of the danger that

4  defendants, including PRODUCTS DEFENDANTS, knew or reasonably should have known of,

5  regarding the hazards and dangers of said products; that these asbestos and asbestos-containing

6  products failed to perform as safely as an ordinary consumer would expect when used as

7  intended or in a reasonably foreseeable manner; and that the risk of defendants' asbestos and

8  asbestos-containing products outweighed any benefit of the defendant's design, and that safer

9  alternatives existed that could have been substituted.

     WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

10  each of them, including PRODUCT DEFENDANTS, as hereinafter set forth.

11                              **FOURTH CAUSE OF ACTION**

12           **False Representation Under Restatement of Torts Section 402-B**

13                        **[Against All PRODUCTS DEFENDANTS]**

14       AS and FOR A FOURTH CAUSE OF ACTION, plaintiff complains of defendants,

15  including PRODUCTS DEFENDANTS, and each of them, and alleges:

16       48.    Plaintiff here re-alleges and incorporates by reference as though fully set forth

17  herein paragraphs 1 through 31 of the First Cause of Action, paragraphs 31 through 35 of the

18  Second Cause of Action, paragraphs 36 through 46 of the Third Cause of Action, *supra.*

19       49.    At the aforementioned time when defendants, their "alternate entities," and each

20  of them, including PRODUCT DEFENDANTS, researched, manufactured, fabricated, designed,

21  modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled,

22  distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed,

23  contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others,

24  packaged and advertised the said asbestos and asbestos-containing products, as herein above set

25  forth, the defendants, their "alternate entities," and each of them, expressly and impliedly

26  represented to members of the general public, including the purchasers and users of said product,

27  and other "exposed persons," including the plaintiff and workers to whose work plaintiff was a

28  bystander, that asbestos and asbestos-containing products, were of merchantable quality, and safe

     for the use for which they were intended.

50.    The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the plaintiff and workers to whose work plaintiff was a bystander, relied upon said representations of defendants, their "alternate entities," and each of them, including PRODUCT DEFENDANTS, in the selection, purchase and use of asbestos and asbestos-containing products.

51.    Said representations by defendants, their "alternate entities," and each of them, including PRODUCT DEFENDANTS, were false and untrue, and defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products, were not safe for their intended use, nor were they of merchantable quality as represented by defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," including the plaintiff and workers to whose work plaintiff was a bystander, thereby threatening the health and life of said persons including plaintiff herein.

52.    As a direct and proximate result of the above, their "alternate entities," and each of them, plaintiff sustained the injuries and damages herein set forth.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, including PRODUCT DEFENDANTS, as hereinafter set forth.

### FIFTH CAUSE OF ACTION

#### Fraud/Intentional Misrepresentation

#### [Against All PRODUCTS DEFENDANTS]

AS and FOR A FIFTH CAUSE OF ACTION, plaintiff complains of PRODUCTS DEFENDANTS, and each of them, and alleges:

53.    Plaintiff here re-alleges and incorporates by reference as though fully set forth herein paragraphs 1 through 31 of the First Cause of Action, paragraphs 31 through 35 of the Second Cause of Action, paragraphs 36 through 46 of the Third Cause of Action, and paragraphs 47 through 51 of the Fourth Cause of Action, *supra*.

54.    At all times herein mentioned, as set forth above and incorporated herein by reference, defendants and each of them including PRODUCTS DEFENDANTS owed Plaintiff a

1  duty, as provided for in Sections 1708 through 1710 of the Civil Code of the State of California,

2  to abstain from injuring the person, property or rights of the Plaintiff.  In violation of that duty,

3  the defendants, including PRODUCTS DEFENDANTS, and each of them, did do the acts and

4  omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing

5  injury to the Plaintiff as is more fully set forth herein.  Such acts and omissions consisted of acts

6  falling within Section 1710, and more specifically were suggestions of fact which were not true

7  and which the defendants did not believe to be true, assertions of fact of that which was not true,

8  which the defendants had no reasonable ground for believing it to be true, and the suppression of

9  facts when a duty existed to disclose it, all as are more fully set forth herein, and the violation of

10  which as to any one such item gave rise to a cause of action for violation of the rights of the

    Plaintiff as provided for in the aforementioned code sections.

11      55.    Since 1924, the defendants, including PRODUCTS DEFENDANTS, and each of

12  them, have known and have been possessed of the true facts consisting of medical and scientific

13  data and other knowledge which clearly indicated that the materials and products referred to

14  herein were and are hazardous to the health and safety of the Plaintiff, and others in Plaintiff's

15  position working in close proximity with such materials and have known of the dangerous

16  propensities of other of the aforementioned materials and products prior to that time and with

17  intent to deceive Plaintiff, and others in his position and with intent that he and such others

18  should be and remain ignorant of such facts and with intent to induce Plaintiff and such others to

19  alter his and their positions to his and their injury and/or risk and in order to gain advantages did

20  do the following acts:

21      a.    Defendants, and each of them, did not label any of the aforementioned

22  asbestos-containing materials and products as to the hazards of such materials and

23  products to the health and safety of Plaintiff and others in Plaintiff's position working in

24  close proximity with such materials despite the fact that the knowledge of such hazards

25  was existing and known to defendants, and each of them, since 1924.  By not labeling

26  such materials as to their said hazards defendants, and each of them, Caused to be

27  suggested as a fact to Plaintiff and Plaintiff's employer that it was safe for Plaintiff to

28  work in close proximity to such materials when in fact it was not true and defendants did

    not believe it to be true;

b.      Defendants, and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when defendants were bound to disclose such information;

c.      Defendants, and each of them, sold the aforementioned asbestos and asbestos-containing products and materials to Plaintiff and/or Plaintiff's employer and others without advising such employers and others of the dangers of use of such materials to persons working in close proximity thereto, when defendants knew of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers. Thereby, defendants caused to be positively asserted to Plaintiff and/or Plaintiff's employer and others of that which was not true and which defendants had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by said defendants, and each of them, of that which was and is not true, to wit, that it was safe for Plaintiff to work in close proximity to such materials;

d.      The term "FRAUDULENT CONSPIRATORS" as used hereinafter includes but is not limited to: defendant HONEYWELL INTERNATIONAL, INC. (successor in interest to ALLIED SIGNAL and BENDIX CORPORATION) (herein, "BENDIX") and defendant PNEUMO-ABEX, LLC (successor in interest to and formerly known as AMERICAN BRAKEBLOK CORPORATION and ABEX CORPORATION) (herein, "ABEX"), Anthony Lanza, M.D., Arthur Vorwald, M.D., Leroy Gardner, M.D., Johns-Manville, Raybestos-Manhattan (now Raymark Industries, Inc. [Raymark]), Russell Manufacturing (whose liabilities have been assigned by H.K. Porter Company), Union Asbestos and Rubber Company, Thermoid Company (whose assets and liabilities have been purchased by H.K. Porter Company), Carey-Canada, Quebec Asbestos Corporation, Celotex Corporation, Industrial Hygiene Foundation, Mellon Institute, all members of the Asbestos Textile Institute [ATI], and all members of the Friction Materials Standards Institute [FMSI] and their respective predecessors and successors. The full and complete extent of the acts of FRAUDULENT CONSPIRATORS and their

agents is not entirely known, discovered, and revealed. However, plaintiff alleges that some of the revealed and discovered illegal acts of FRAUDULENT CONSPIRATORS and their agents are as follows:

i.      The above-identified FRAUDULENT CONSPIRATORS, individually and as agents of one another and as co-FRAUDULENT CONSPIRATORS, agreed and conspired among themselves, with other asbestos manufacturers and distributors, and with certain individuals including but not limited to Anthony Lanza, M.D. (Lanza) and defendant METROPOLITAN LIFE INSURANCE COMPANY (MET LIFE) to injure the plaintiff in the following fashion (the following is not an exclusive list of the wrongful acts of the FRAUDULENT CONSPIRATORS but a representative list):

ii.      Beginning in 1929, defendant MET LIFE entered into agreements with Johns-Manville and others to fund studies of the affects of asbestos exposure on Canadian asbestos miners. When the data from these studies proved that Canadian asbestos miners were developing asbestosis, defendant MET LIFE, Johns-Manville, and others suppressed its publication; further, Anthony Lanza, M.D. (then a MET LIFE employee) actively misrepresented the results of the Canadian study for many years thereafter to meetings of health care professionals seeking information regarding asbestos exposure.

iii.      In approximately 1934, FRAUDULENT CONSPIRATORS Johns-Manville and defendant MET LIFE, through their agents, Vandiver Brown and attorney J.C. Hobart, and fraudulent-conspirator Raybestos Manhattan (Raybestos), through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza, Associate Director, defendant MET LIFE (insurers of Johns-Manville and Raybestos), that Dr. Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts and conclusions about asbestos exposure; including but not limited to descriptions of the seriousness of the disease process of asbestosis. The misrepresentation was accomplished through intentional deletion of Dr. Lanza's initial description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestosis as a

disease process less serious than it was known to be by the FRAUDULENT

CONSPIRATORS. As a result, Lanza's study was published in the medical

literature containing said misleading statements in 1935. The FRAUDULENT

CONSPIRATORS were motivated, in part, to effectuate this fraudulent

misrepresentation and fraudulent non-disclosure by the desire to influence

proposed legislation to regulate asbestos exposure, to provide a defense in

lawsuits involving Johns-Manville, Raybestos, and defendant MET LIFE, as

insurer, and to promote the use of their asbestos products.

      iv.     The above-described conspiracy continued and was furthered in

1936, when FRAUDULENT CONSPIRATORS American Brakeblok

Corporation (defendant PNEUMO-ABEX, above), Bendix Corporation

(defendant HONEYWELL INTERNATIONAL, INC. above), Asbestos

Manufacturing Company, Gatke Corporation, Johns-Manville, Keasbey &

Mattison Company (then an alter-ego to fraudulent-conspirator Turner & Newall,

a.k.a., T&N), Raybestos-Manhattan (Raymark), Russell Manufacturing (whose

liabilities have been assumed by H.K. Porter Company), Union Asbestos and

Rubber Company and United States Gypsum, entered into an agreement with a

leading medical research facility named Saranac Laboratories. Under the

agreement, the FRAUDULENT CONSPIRATORS acquired the power to decide

what information Saranac Laboratories could publish regarding asbestos disease

and could also control in what form such publications were to occur. Their

agreement provided these FRAUDULENT CONSPIRATORS the power and

ability affirmatively to misrepresent the results of the work at Saranac

Laboratories, and also gave these FRAUDULENT CONSPIRATORS power to

suppress material facts included in any study. On numerous occasions thereafter,

the FRAUDULENT CONSPIRATORS exercised their power to prevent Saranac

scientists from disclosing material scientific data, resulting in numerous

misstatements of fact regarding the health effects of asbestos exposure at

scientific meetings.

      v.     The Saranac Conspiracy and agreement was furthered on

November 11, 1948, when representatives of the following FRAUDULENT

CONSPIRATORS met at Johns-Manville headquarters: Johns-Manville,

American Brakeblok Division of American Brake and Shoe Foundry (defendant

PNEUMO-ABEX, above), Bendix (defendant HONEYWELL

INTERNATIONAL, INC.) Corporation, Gatke Corporation, Keasbey & Mattison

Company (Turner & Newall /T&N), Raybestos (now Raymark), Thermoid

Company (H.K. Porter Company), Union Asbestos and Rubber Company, United

States Gypsum Company (via agent Vandiver Brown of JM) and defendant MET

LIFE.

   vi.      At the November 11, 1948 meeting, these FRAUDULENT

CONSPIRATORS, and their representatives and agents, decided to exert their

influence to materially alter and misrepresent material facts about the substance of

research conducted by Dr. Leroy Gardner at the Saranac Laboratories beginning

in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice

and also included an evaluation of the health effects of asbestos on humans with a

critical review of the then-existing standards for asbestos dust exposure.

   vii.     At this meeting, these FRAUDULENT CONSPIRATORS

intentionally and affirmatively decided that Dr. Gardner's work should be edited

to delete material facts about the cancer-causing propensity of asbestos, the health

effects of asbestos on humans and the critique of the dust standards. The

FRAUDULENT CONSPIRATORS then published these deceptive and fraudulent

statements in the medical literature as edited by Dr. Arthur Vorwald, also of the

Saranac Laboratories. These FRAUDULENT CONSPIRATORS thereby

fraudulently misrepresented the risks of asbestos exposure to the public, in

general, and the class of persons exposed to asbestos, including the plaintiff.

   viii.    As a direct result of influence exerted by the FRAUDULENT

CONSPIRATORS, Dr. Vorwald published Dr. Gardner's edited work in the

Journal of Industrial Hygiene. AMA Archives of Industrial Hygiene and

Occupational Health in 1951 in a form that stressed those portions of Dr. Garner's

work that the FRAUDULENT CONSPIRATORS wished stressed, but which

omitted reference to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of the risks. The FRAUDULENT CONSPIRATORS affirmatively and deliberately disseminated this deceptive and fraudulent Vorwald publication to university libraries, government officials, agencies and others.

ix.     Such actions constitute a material affirmative misrepresentation of the total context of material facts involved in Dr. Garner's work and resulted in creating an appearance that inhalation of asbestos was less of health problem than Dr. Garner's unedited work indicated.

x.     When Dr. Vorwald subsequently tried to publish more complete information regarding Dr. Gardner's animal studies, the FRAUDULENT CONSPIRATORS required his discharge from the Saranac Laboratories, denied him permission to publish or complete Gardner's work, and actively discouraged institutions of higher learning from hiring or retaining Dr. Vorwald in any capacity.

xi.     Additional FRAUDULENT CONSPIRATORS were members of the trade association known as Quebec Asbestos Mining Association (Q.A.M.A.) (including Johns-Manville Corporation), that participated in the above-described misrepresentation of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the AMA Archives of Industrial Health in 1951, taking further affirmative acts to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory control of asbestos (including to inter alia, U.S. Government officials, Canadian government officials, U.S. National Cancer Institute, medical organizations, health professionals, and the general public, including Plaintiff), with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

xii.     In furtherance of the 1929 conspiracy, furthered by the 1936

Saranac Conspiracy, in 1952, a Symposium regarding the health effects of asbestos was held at the Saranac Laboratories with Saranac fraudulent conspirators in attendance, including, but not limited to Lanza, Johns-Manville, Turner & Newall, Raybestos-Manhattan, among others.

xiii.     At the 1952 Saranac meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos were also discussed. In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort fraudulently to conceal those risks from the public, these FRAUDULENT CONSPIRATORS conspired to prevent publication of the record of this 1952 Saranac Symposium and it was not published. In addition, the FRAUDULENT CONSPIRATORS induced Dr. Vorwald not to announce the results of his and Dr. Garner's animal studies showing excess cancers in animals which thereby fraudulently misrepresented existing secret data which could not be publicized owing to the secrecy provisions contained in the 1936 Saranac agreement heretofore described.

xiv.     Additional FRAUDULENT CONSPIRATORS were members of the trade association known as the Asbestos Textile Institute (ATI), including Raybestos, Johns-Manville, H.K. Porter, Keasbey & Mattison (Turner & Newall/T&N) and National Gypsum, Uniroyal, Inc. (aka CDU Holding Company, Uniroyal Holding Company and Uniroyal Goodrich Tire Company).  Plaintiffs contend also that defendant ABEX and its predecessors also have been members of the ATI.

xv.     In furtherance of the forgoing conspiracy, in 1947, these FRAUDULENT CONSPIRATORS, members of the ATI, received a report from industrial hygienist W.C.L. Hemeon (Hemeon) regarding asbestos, which suggested re-evaluation of the then-existing maximum exposure limits for asbestos exposure. These FRAUDULENT CONSPIRATORS caused the Hemeon report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public

and class of persons exposed to asbestos that the then-existing maximum exposure limit for asbestos was acceptable. Thereafter, these FRAUDULENT CONSPIRATORS withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluations of their Threshold Limit Values for asbestos exposure.

      xvi.      In furtherance of the foregoing conspiracy, in 1955, the National Cancer Institute held a meeting at which fraudulent-conspirator Johns-Manville, individually and as an agent for other co-FRAUDULENT CONSPIRATORS and Dr. Vorwald, as agent of FRAUDULENT CONSPIRATORS, affirmatively misrepresented that there was no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, the FRAUDULENT CONSPIRATORS were in secret possession of several suppressed studies which demonstrated that positive evidence did exist.

      xvii.      In furtherance of the foregoing conspiracy, in 1957, the above FRAUDULENT CONSPIRATORS and members of the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in fraudulently concealing from the public material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

      xviii.      In furtherance of the foregoing conspiracy, in 1964, FRAUDULENT CONSPIRATORS who were members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently published by Dr. Irving J. Selikoff of the Mount Sinai Research Center. Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

      xix.      Additional FRAUDULENT CONSPIRATORS was the Industrial Hygiene Foundation (IHF) and its members and research institutes whose functions included involvement in research regarding the health effects of

inhaling asbestos dust.

xx.        Beginning in the early 1940's, the IHF was involved in a study by Hemeon entitled Report of Preliminary Dust Investigation for Asbestos Textile Institute, June 1947. This study was done in connection with members of the Asbestos Textile Institute (ATI). This study found that workers exposed to less than the recommended maximum exposure level for asbestos were nonetheless developing disease. As a part of the conspiracy, the IHF never published this study. By the mid 1950's, the IHF was editing publication of works by Braun and Truan (An Epidemiological Study of Lung Cancer in Asbestos Miners) that concluded that workers with asbestosis has an increased incidence of lung cancer and that the Canadian government had been under-reporting cases of asbestosis, deleted these key conclusions in the published version in active furtherance of this fraudulent conspiracy with above-identified FRAUDULENT CONSPIRATORS, constituting intentional deception and fraud in actively misleading the public about the extent of the hazards connected with breathing asbestos dust.

xxi.        All FRAUDULENT CONSPIRATORS identified above approved and ratified and furthered the previous fraudulent-conspiratorial acts of FRAUDULENT CONSPIRATORS Johns-Manville, Raybestos (now known as Raymark), Lanza, and defendant MET LIFE, and all the alleged co-FRAUDULENT CONSPIRATORS during the date and circumstances set forth above, acted as agents and co-FRAUDULENT CONSPIRATORS for the other FRAUDULENT CONSPIRATORS.

xxii.        As evidence of Raymark's fraud, concealment, suppression, and fraudulent-conspiratorial misconduct and of the referenced FRAUDULENT CONSPIRATORS, and each of them, as herein set forth, Raymark's President and/or other senior executives corresponded with other senior executives of Raymark's co-FRAUDULENT CONSPIRATORS, which series of correspondence and related documents and papers are commonly referenced as "The Sumner Simpson Papers."

xxiii.        Further as evidence of the fraud, concealment, suppression, and

fraudulent-conspiratorial-misconduct of the members of the Asbestos Textile Institute as herein set forth, the ATI and the Industrial Hygiene Foundation kept minutes of their regular meetings, discussions, resolutions, and related actions, recorded in "The ATI Minutes."

e.      The above-described fraud and conspiracy to defraud was additionally furthered through the formation of the Friction Materials Standards Institute (FMSI) and its predecessors, the Brake Lining Manufacturers' Association, and the Clutch Facing and Brake Lining Standards Institute. The members thereof, specifically including defendants HONEYWELL INTERNATIONAL, INC. (successor in interest to ALLIED SIGNAL and BENDIX CORPORATION) (herein, "BENDIX") and defendant PNEUMO-ABEX, LLC (successor in interest to and formerly known as ABEX CORPORATION) (herein, "ABEX"), joined with, ratified and furthered the fraudulently-fraudulent-conspiratorial actions of the below-identified additional FRAUDULENT CONSPIRATORS as further set forth below, including, but not limited to:

        i.      The FMSI, and its predecessors, the Brake Lining Manufacturers' Association, the Clutch Facing & Brake Linings Standards Institute, were formed to be the ears and mouthpiece of the friction materials industry, swelling in numbers, influence and overt activities through the 1950s and thereafter. Defendants BENDIX and ABEX were active, contributing members of the FMSI throughout all pertinent time periods and actions set forth below.

        ii.     The FMSI FRAUDULENT CONSPIRATORS actively and aggressively lobbied the Illinois Pollution Control Board to stop a proposed ban on asbestos in friction materials, succeeding in their efforts to prevent a warning by the Illinois government to the general population regarding the hazards of asbestos from automotive and vehicle friction (brake) linings and materials.

        iii.    The FMSI FRAUDULENT CONSPIRATORS further actively and successfully lobbied and later sued the Environmental Protection Agency to thwart proposed Occupational Safety & Health Administration ("OSHA") regulations and actual application of the OSHA regulations to allow their asbestos-containing products to continue to be manufactured, sold, supplied and

distributed without interruption, interference, regulation or ban.

iv.     Even though they disseminated materials and information to the general public stating the opposite, the FMSI FRAUDULENT CONSPIRATORS, including defendants BENDIX and ABEX , knew, and suppressed, information that:

1. OSHA regulations, even if enforced and complied with, would not prevent asbestos disease in workers exposed to their products;

2. Chrysotile asbestos – not just amphibole asbestos - causes mesothelioma, lung cancer, asbestosis, and other incurable and disabling disease;

3. brake workers suffered "considerable exposures" to respirable asbestos fibers during the intended use, installation and expected replacement of friction materials;

4. there was no "safe" level of exposure to respirable asbestos; and

5. there was a substantial risk and danger suffered by bystanders and family members of brake mechanics because of the release of respirable asbestos in the use of friction materials, as herein described.

v.     In so doing, the FMSI FRAUDULENT CONSPIRATORS, specifically including defendants BENDIX and ABEX, overtly furthered and acted in furtherance of the preceding and ongoing conspiracy of the Asbestos Industry, set forth more fully below. As a result Plaintiff herein relied on the false and fraudulent statements and misrepresentations of all FRAUDULENT CONSPIRATORS, including BENDIX and ABEX, causing Plaintiff's use of and exposure to asbestos dust, debris, fiber and particulate generated, created and released by the asbestos and asbestos-containing products manufactured, sold, supplied, distributed or otherwise placed into the stream of commerce by one or more of the FRAUDULENT CONSPIRATORS named herein, including defendants BENDIX and ABEX, resulting in harm and injury to plaintiff as hereinabove described. This exposure to asbestos and asbestos-related products from these FRAUDULENT CONSPIRATORS, was an act in furtherance of this conspiracy that caused plaintiff's asbestos-related disease and injuries.

f.     By the above means and fraudulently-conspiratorial acts, defendants affirmatively failed to warn Plaintiff and Plaintiff's employer and others of the nature of the said asbestos and asbestos-containing products, to wit: dangerous when breathed, causing pathological effects without noticeable trauma, when possessed with knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it;

g.     Failed to provide Plaintiff with information concerning adequate protective masks and devices for use with and application and installation of the products of the defendants, and each of them, when they knew that such protective measures were necessary, when they were under a duty to disclose such information, and if not advised as to use would result in injury to the Plaintiff and others applying and installing such materials;

h.     Concealed from Plaintiff the true nature of the industrial exposure of Plaintiff, the fact that they and each of them, knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and such person would immediately be in not good health, the fact that he had in fact been exposed to harmful materials and the fact that the materials to which he was exposed would cause pathological effects without noticeable trauma, when under a duty to and bound to disclose it;

i.     Failed to provide information to the public at large and buyers, users and physicians employed by Plaintiff and Plaintiff's employer for the purpose of conducting physical examinations of Plaintiff and others working in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose, and treat workers coming into contact with asbestos, in that the materials to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, when under a duty to supply such information and such failure is likely to mislead for want of communication of such facts; and.

j.     Defendants, and each of them, affirmatively misrepresented that asbestos containing products were safe to use and handle, when they knew such statements were false when made, or made said false statements recklessly and without regard for whether

1  the statements were true.

2      56.    Each of the foregoing acts, suggestions, assertions and forbearances to act when a

3  duty existed to act, the said defendants, and each of them, having such knowledge, knowing the

4  Plaintiff did not have such knowledge and would breathe such material innocently, was done

5  falsely and fraudulently and with full intent to induce Plaintiff to himself use or work around

6  others using asbestos and asbestos products of defendants, including PRODUCTS

7  DEFENDANTS, or otherwise work in a dangerous environment caused by the same and to cause

8  plaintiff to remain unaware of the true facts, all in violation of Section 1710 of the Civil Code of

9  the State of California.

       57.    Plaintiff relied upon the said acts, suggestions, assertions and forbearances of

10  defendants, including PRODUCTS DEFENDANTS, and each of them; and had Plaintiff known

11  the true facts, he would not have continued to work in the said environment, himself use or work

12  around others using asbestos and asbestos products of defendants, including PRODUCTS

13  DEFENDANTS.

14      58.    Plaintiff had no knowledge that the foregoing acts were actionable at law when

15  they were committed, and cannot be charged with knowledge or inquiry thereof.

16      59.    Each of the said acts and forbearances to act were caused by false, fraudulent and

17  malicious motives of the defendants, including PRODUCTS DEFENDANTS, and each of them,

18  and plaintiff is entitled to exemplary and punitive damages.  The foregoing acts of the

19  defendants, including PRODUCTS DEFENDANTS, and each of them, were done wantonly,

20  willfully, oppressively and in conscious disregard of the safety of Plaintiff and similar exposed

21  persons, and that as a result, Plaintiff, having no knowledge of the dangerous and hazardous

22  nature thereof, was thereby exposed to and inhaled asbestos fibers from defendants' asbestos and

23  asbestos products, thereby harming plaintiff, causing his above described injury, harm and

24  damage.  Accordingly, plaintiff is entitled to recover punitive damages against defendants,

   including PRODUCT DEFENDANTS.

25      WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

26  each of them, including PRODUCT DEFENDANTS, as hereinafter set forth.

27  ///

28

### SIXTH CAUSE OF ACTION

#### Fraud/Failure to Warn

#### [Against All PRODUCTS DEFENDANTS]

AS-AND FOR A SIXTH CAUSE OF ACTION, plaintiff complains of PRODUCTS DEFENDANTS, and each of them, and alleges:

60.     Plaintiff here re-alleges and incorporates by reference as though fully set forth herein paragraphs 1 through 31 of the First Cause of Action, paragraphs 31 through 35 of the Second Cause of Action, paragraphs 36 through 46 of the Third Cause of Action, paragraphs 47 through 51 of the Fourth Cause of Action, and paragraphs 47 through 58 of the Fifth Cause of Action, *supra*.

a.     By the above means and fraudulently-conspiratorial acts, defendants affirmatively failed to warn Plaintiff and other exposed persons of the nature of the said asbestos and asbestos-containing products, to wit:  dangerous when breathed, causing pathological effects without noticeable trauma, when possessed with knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it;

b.     Failed to provide Plaintiff with information concerning adequate protective masks and devices for use with and application and installation of the products of the defendants, and each of them, when they knew that such protective measures were necessary, when they were under a duty to disclose such information, and if not advised as to use would result in injury to the Plaintiff and others applying and installing such materials;

c.     Concealed from Plaintiff the true nature of the industrial exposure of Plaintiff, the fact that they and each of them, knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and such person would immediately be in not good health, the fact that he had in fact been exposed to harmful materials and the fact that the materials to which he was exposed would cause pathological effects without noticeable trauma, when under a duty to and bound to disclose it;

d.     Failed to provide information to the public at large and buyers, users and

physicians employed by Plaintiff and Plaintiff's employer for the purpose of conducting physical examinations of Plaintiff and others working in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose, and treat workers coming into contact with asbestos, in that the materials to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, when under a duty to supply such information and such failure is likely to mislead for want of communication of such facts; and.

       e.     Defendants, and each of them, affirmatively misrepresented that asbestos containing products were safe to use and handle, when they knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

61.     Each of the foregoing acts, suggestions, assertions and forbearances to act when a duty existed to act, the said defendants, and each of them, having such knowledge, knowing the Plaintiff did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce Plaintiff to himself use or work around others using asbestos and asbestos products of defendants, including PRODUCTS DEFENDANTS, or otherwise work in a dangerous environment caused by the same and to cause plaintiff to remain unaware of the true facts, all in violation of Section 1710 of the Civil Code of the State of California.

62.     Plaintiff relied upon the said acts, suggestions, assertions and forbearances of defendants, including PRODUCTS DEFENDANTS, and each of them; and had Plaintiff known the true facts, he would not have continued to work in the said environment, himself use or work around others using asbestos and asbestos products of defendants, including PRODUCTS DEFENDANTS.

63.     As a direct and proximate result of the above actions of defendants, their "alternate entities," and each of them, plaintiff sustained the injuries and damages herein set forth.

64.     Plaintiff had no knowledge that the foregoing acts were actionable at law when they were committed, and cannot be charged with knowledge or inquiry thereof.

65.     Each of the said acts and forbearances to act were caused by false, fraudulent and

1   malicious motives of the defendants, including PRODUCTS DEFENDANTS, and each of them,

2   and plaintiff is entitled to exemplary and punitive damages. The foregoing acts of the

3   defendants, including PRODUCTS DEFENDANTS, and each of them, were done wantonly,

4   willfully, oppressively and in conscious disregard of the safety of Plaintiff and similar exposed

5   persons, and that as a result, Plaintiff, having no knowledge of the dangerous and hazardous

6   nature thereof, was thereby exposed to and inhaled asbestos fibers from defendants' asbestos and

7   asbestos products, thereby harming plaintiff, causing his above described injury, harm and

8   damage. Accordingly, plaintiff is entitled to recover punitive damages against defendants,

9   including PRODUCT DEFENDANTS.

        WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

10   each of them, including PRODUCT DEFENDANTS, as hereinafter set forth.

11                     **SEVENTH CAUSE OF ACTION**

12                         **Conspiracy to Defraud**

13               **[Against All PRODUCTS DEFENDANTS]**

14         AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff complains of PRODUCTS

15   DEFENDANTS, and each of them, and alleges:

16         66.     Plaintiff here re-alleges and incorporates by reference as though fully set forth

17   herein paragraphs 1 through 64 above of the First through Sixth Causes of Action, *supra*,

18         67.     At all times mentioned, defendants, including PRODUCTS DEFENDANTS, and

19   each of them, knowingly and willfully conspired and agreed among themselves to perpetrate

20   upon Plaintiff and Plaintiff the acts complained of as set forth in the First through Sixth Causes

21   of Action as are incorporated herein, specifically including all acts set forth in Paragraph 54 the

    Fifth Cause of Action, *supra*, specifically hereby incorporated by reference as if fully set forth

22   herein. Defendants, including PRODUCTS DEFENDANTS, and each of them, performed these

23   acts in furtherance of the fraudulent conspiracy and agreement hereinabove alleged in the Fourth

24   Cause of Action and did further fraudulently conspire to violate State and Federal laws and

25   regulations, the full and complete nature and extent of which are unknown at this time, but

26   known full well to defendants and each of them.

27         68.     As a result of this fraudulent conspiracy and by reason the aforesaid acts of

28   PRODUCTS DEFENDANTS, and each of them, Plaintiff was damaged to his health and

abilities resulting in general damages to Plaintiff in addition to special damages herein alleged

69.   Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, including PRODUCTS DEFENDANTS, and each of them, and plaintiff is entitled to exemplary and punitive damages.  The foregoing acts of the defendants, including PRODUCTS DEFENDANTS, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of Plaintiff and similar exposed persons, and that as a result, Plaintiff, having no knowledge of the dangerous and hazardous nature thereof, was thereby exposed to and inhaled asbestos fibers from defendants' asbestos and asbestos products, thereby harming and injuring plaintiff.  Accordingly, plaintiff is entitled to recover punitive damages against defendants, including PRODUCT DEFENDANTS.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, including PRODUCT DEFENDANTS, as hereinafter set forth.

## EIGHTH CAUSE OF ACTION EQUIPMENT DEFENDANTS:

### Negligence: Clutch & Brake Assemblies,

### Mechanisms & Components

FOR A FURTHER, EIGHTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR WRONGFUL DEATH (NEGLIGENCE) FOR CLUTCH COMPONENTS AND BRAKE ASSEMBLIES, MECHANISMS AND LININGS, AND OTHER COMPONENTS OF OTHER CLUTCH AND BRAKE ASSEMBLIES, PLAINTIFFS COMPLAIN OF DEFENDANTS BORGWARNER MORSE TEC, INC., individually and as successor-in-interest to, and formerly known as FORD MOTOR COMPANY and THREE HUNDRED FIRST DOE through four HUNDREDTH DOE, inclusive, AND THEIR ALTERNATE ENTITIES (hereinafter and throughout, collectively, "EQUIPMENT DEFENDANTS"), AND EACH OF THEM, AND FOR A EIGHTH CAUSE OF ACTION ALLEGES:

70.   Plaintiffs do not know presently the true names or capacities of the defendants sued herein under the fictitious names of THREE HUNDRED FIRST DOE through FOUR HUNDREDTH DOE, inclusive, whether corporate, associate or individual, and Plaintiffs prays leave to amend this complaint to allege said true names and/or capacities when the same are ascertained.  Plaintiffs are informed and believe and therefore allege that each of the EQUIPMENT DEFENDANTS designated herein as a DOE is negligently, intentionally and/or

1    strictly liable or responsible in some manner for the events and happenings herein referred to,

2    and proximately caused injury and damages to Plaintiffs as hereinafter alleged. These

3    EQUIPMENT DEFENDANTS were at all times herein and still are corporations authorized to

4    and doing business in the State of California.

5         71.    At all times herein mentioned, defendants THREE HUNDRED FIFTY-FIRST

6    DOE through FOUR HUNDREDTH DOE were Officers and Directors of defendants named

7    herein as THREE HUNDRED FIRST DOE through THREE HUNDRED FIFTIETH DOE.

8         72.    Plaintiffs hereby re-alleges and incorporates by reference as if fully set forth

9    herein the allegations contained in paragraphs 10 through 31 of the First Cause of Action, *supra*;

     paragraphs 32 through 35 of the Second Cause of Action, *supra*; paragraphs 36 through 46 of the

10   Third Cause of Action, *supra*; paragraphs 47 through 51 of the Fourth Cause of Action, *supra*;

11   paragraphs 52 through 58 of the Fifth Cause of Action, *supra*; paragraphs 59 through 64 of the

12   Sixth Cause of Action, *supra*; and paragraphs 65 through 68 of the Seventh Cause of Action,

13   *supra*.

14        73.    At all times herein mentioned, each of the defendants, including EQUIPMENT

15   DEFENDANTS, was the successor, successor in business, successor in product line or a portion

16   thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion

17   thereof, parent, subsidiary, alter ego, agent and/or fiduciary wholly or partially owned by, or the

18   whole or partial owner of or member in an entity researching, studying, manufacturing,

19   fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale,

20   selling, inspecting, servicing, installing, contracting for installation, repairing, marketing,

21   warranting, rebranding, manufacturing for others, packaging and advertising a certain product

22   and substance, the generic name of which is asbestos, and other products, materials and

23   equipment containing asbestos. Said entities shall hereinafter collectively be called "alternate

24   entities". Each of the herein named defendants are liable for the tortious conduct of each

25   successor, successor in business, successor in product line or a portion thereof, assign,

26   predecessor, predecessor in business, predecessor in product line or a portion thereof, parent,

27   subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a

     member of, or funded, that researched, studied, manufactured, fabricated, designed, labeled or

28   failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced,

installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product and substance, the generic name of which is asbestos, and other products, materials and equipment containing asbestos. The following defendants, including EQUIPMENT DEFENDANTS, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; defendants, including EQUIPMENT DEFENDANTS, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants, including EQUIPMENT DEFENDANTS, and each of them, Caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity.

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| DOES 301-400 | Alternate Entities of DOES 301-400 |

74.    EQUIPMENT DEFENDANTS manufactured or supplied defective clutch components and brake assemblies or mechanisms which were incorporated into various makes and models of automobiles, trucks, and other vehicles designed, manufactured, sold, supplied, marketed, distributed, specified and otherwise placed into the stream of commerce by EQUIPMENT DEFENDANTS. Said clutch components and brake assemblies or mechanisms were negligently designed, manufactured, sold, supplied, marketed, specified and placed into the stream of commerce in that:

a.    The design of said clutch and brake assemblies and mechanisms incorporated the use of asbestos-containing clutch facings/plates and brake linings;

b.    By the normal, foreseeable, intended and known operation of these EQUIPMENT DEFENDANTS' automobiles, trucks, and other vehicles and the necessary and integral clutch and brake assemblies and mechanisms thereof, the asbestos clutch and brake linings are ground, worn, pulverized, deteriorated, abraded, and otherwise disturbed during the regular and ordinary use of EQUIPMENT DEFENDANTS' automobiles, trucks, and other vehicles, thereby creating friable and respirable asbestos-laden dust, debris, fiber and particulate which was either trapped within the clutch and brake assemblies/mechanisms/enclosures of these automobiles,

trucks, and other vehicles;

c.    The design of said EQUIPMENT DEFENDANTS' automobiles, trucks, and other vehicles, including the clutch and brake assemblies/mechanisms thereof, and the continuous degeneration and destruction by the normal, intended, foreseeable and known operation of the same, unavoidably required as a part of the normal operation, use and maintenance of said automobiles, trucks, and other vehicles that the asbestos clutch facings/components and brake linings therein needed to be and were removed and replaced;

d.    Said EQUIPMENT DEFENDANTS effectively required, and often designated and specified, the use of asbestos-containing clutch facings/components and brake linings throughout the time period of at least 1940-1980, particularly given the absence -- known to the EQUIPMENT DEFENDANTS - of non-asbestos alternatives available on the market; nonetheless, EQUIPMENT DEFENDANTS failed to alter or redesign their automobiles, trucks, and other vehicles, including the clutch and brake assemblies/mechanisms thereof, to avoid the necessary replacement of those internal asbestos-containing clutch and brake friction components;

e.    During the normal and necessary maintenance, inspection, repair and overhaul of EQUIPMENT DEFENDANTS' automobiles, trucks, and other vehicles and their clutch and brake assemblies/mechanisms thereof, asbestos-containing clutch components and brake linings were necessarily inspected, disturbed, removed, replaced and reinstalled, during which work asbestos-containing dust unavoidably was encountered, generated and released by EQUIPMENT DEFENDANTS' automobiles, trucks, and other vehicles because of the design of the clutch and brake assemblies and mechanisms thereof;

f.    EQUIPMENT DEFENDANTS knew or should have known that this asbestos-containing dust would be generated, created, released and encountered during the regular use and maintenance of the clutch and brake assemblies and mechanisms of their automobiles, trucks, and other vehicles and linings, and that such dust created an increased risk of asbestos disease to all exposed persons, including decedent, who were exposed to and consequently breathed asbestos-containing dust from EQUIPMENT

DEFENDANTS' defective clutch and brake assemblies and mechanisms of their automobiles, trucks;

g.      The EQUIPMENT DEFENDANTS, and each of them, failed to warn and/or properly instruct all exposed persons, including decedent, including users, consumers, or others – including bystanders to that work - of the asbestos-containing dust hazard which existed at the time of regular inspection, maintenance, repair and replacement of its automobiles, trucks, and other vehicles' clutch and brake assembly asbestos clutch and brake facings and linings.  Such failure includes, but is not limited to:

i.      Failure to place prominent and adequate warnings or instructions in and on the clutch and brake assemblies and mechanisms, including any covers, panels, enclosures, assemblies, shoes, pads and drums thereof;

ii.      Failure to place any or adequate warnings or instructions in the owners', technical and service manuals accompanying or provided for said automobiles, trucks (including 18-wheel trucks), busses and other vehicles; and

iii.      Failure to provide any or adequate information regarding the asbestos hazards associated with the regular use and maintenance of the automobiles, trucks, and other vehicles and its integral clutch and brake assemblies and mechanisms thereof.

75.      EQUIPMENT DEFENDANTS' automobiles, trucks, and other vehicles, including their integral clutch and brake assemblies and mechanisms thereof, as designed, manufactured, sold, supplied, marketed and placed into the stream of commerce by defendants failed to perform as safely as the ordinary consumer would expect, even though these products performed as designed.

76.      EQUIPMENT DEFENDANTS' automobiles, trucks, and other vehicles' use and design, including their integral clutch and brake assemblies and mechanisms and asbestos-containing necessary components thereof , both as original equipment and as replacement parts, created unreasonable inherent risks which outweighed the benefits of said use and/or design.

77.      The dangers inherent in EQUIPMENT DEFENDANTS' automobiles, trucks, and other vehicles' use and design, including their integral clutch and brake assemblies and mechanisms and asbestos-containing necessary components thereof , were unknown and

1  unforeseeable to exposed persons, including decedent, and others around them performing work
2  on defendants' clutch and brake assemblies and mechanisms.

3       78.    Plaintiff RICHARD KEENEY was exposed to asbestos-containing dust, debris,
4  fiber and particulate by EQUIPMENT DEFENDANTS, which was created, generated and
5  released by the normal, foreseeable, intended, specified and known use of EQUIPMENT
6  DEFENDANTS' automobiles, trucks, and other vehicles, including the integral clutch and brake
7  assemblies and mechanisms necessarily using asbestos-containing components thereof, which
   plaintiffs contend caused decedent's mesothelioma and/or other asbestos-related lung
8  disease/damage (including, but not limited to, asbestosis, scarring, plaques and calcifications).
9
       79.    EQUIPMENT DEFENDANTS' negligence and defective products as described in
10 this cause of action were a direct cause of decedent's injuries, and the injuries and damages
11 thereby sustained by plaintiffs as a result, alleged herein.

12       80.    None of plaintiffs' claims hereinabove seek to impose liability on the
13 EQUIPMENT DEFENDANTS for the products or actions of any third party that may have
14 manufactured or supplied replacement asbestos clutch or brake linings or components used in the
15 hereinabove described EQUIPMENT DEFENDANTS' clutch and brake assemblies.

16       WHEREFORE, Plaintiffs pray judgment against EQUIPMENT DEFENDANTS, their
17 "alternate entities," and each of them, as hereinafter set forth.

18                          **NINTH CAUSE OF ACTION**

19                 **Strict Liability: Clutch & Brake Assemblies,**

20                      **Mechanisms & Components**

       AND AS FOR A FURTHER, NINTH, SEPARATE AND DISTINCT CAUSE OF
21 ACTION FOR PRODUCTS LIABILITY (STRICT LIABILITY) FOR CLUTCH
22 COMPONENTS AND BRAKE ASSEMBLIES, MECHANISMS AND LININGS,
23 PLAINTIFFS COMPLAIN OF EQUIPMENT DEFENDANTS, AND EACH OF THEM, AND
24 ALLEGES AS FOLLOWS:

25       81.    Plaintiffs hereby re-alleges and incorporates by reference as if fully set forth
26 herein the allegations contained in paragraphs 10 through 31 of the First Cause of Action, *supra*;
27 paragraphs 32 through 35 of the Second Cause of Action, *supra*; paragraphs 36 through 46 of the
28 Third Cause of Action, *supra*; paragraphs 47 through 51 of the Fourth Cause of Action, *supra*;

paragraphs 52 through 58 of the Fifth Cause of Action, *supra*; paragraphs 59 through 64 of the Sixth Cause of Action, *supra*; paragraphs 65 through 68 of the Seventh Cause of Action, *supra*; and paragraphs 69 through 79 of the Eighth Cause of Action, *supra*.

82. EQUIPMENT DEFENDANTS' defective products as described in this cause of action did not perform as safely as an ordinary consumer would have expected at the time of their use by the afore-described exposed persons, including decedent.

83. EQUIPMENT DEFENDANTS' defective products as described in this cause of action were used in a manner foreseeable by defendants.

84. The gravity of the potential harm resulting from the use of EQUIPMENT DEFENDANTS' defective products as described in this cause of action, and the likelihood such harm would occur, outweighed the cost of feasible alternative designs, including providing adequate warning of such potential harm, including asbestos-related disease.

85. EQUIPMENT DEFENDANTS' conduct and defective products as described in this cause of action were a direct cause of decedent's injuries, and the injuries and damages thereby sustained by plaintiffs.

86. Nothing hereinabove claimed seeks to impose liability on the EQUIPMENT DEFENDANTS named in this cause of action for the products or actions of any third party that may have supplied replacement brake linings used in the hereinabove described brake assemblies.

WHEREFORE, Plaintiffs pray judgment against EQUIPMENT DEFENDANTS, their "alternate entities," and each of them, as hereinafter set forth.

### TENTH CAUSE OF ACTION - LOSS OF CONSORTIUM

AND AS FOR A FURTHER, TENTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF HOWARD J. GARCIA COMPLAINS OF DEFENDANTS, INCLUDING DOE DEFENDANTS ONE THROUGH THREE-HUNDRED, AND EACH OF THEM, AND ALLEGES:

85. Plaintiff incorporates herein by reference, as set forth fully herein, all paragraphs of the First through Ninth Causes of Action herein.

86. Plaintiffs RICHARD KEENEY and HOWARD J. GARCIA are legally

1  recognized domestic partners entitled to the benefits of law and all rights accorded to married

2  couples, and were so at the time of plaintiff RICHARD KEENEY's injury.

3       87.    Plaintiff RICHARD KEENEY sustained injuries caused by inhalation of asbestos

4  fibers. Prior to the aforesaid injuries, said domestic partner was able to and did perform duties as

5  a domestic partner. Subsequent to the injuries, and as a proximate result thereof, said domestic

6  partner was unable to perform the necessary duties as a domestic partner and the work and

7  service usually performed in the care, maintenance and management of the family home. By

8  reason thereof, plaintiff HOWARD GARCIA was deprived of the consortium of plaintiff's

9  domestic partner RICHARD KEENEY, including the performance of said duties, all to

10  plaintiff's damages.

11  **PRAYER FOR RELIEF – ALL DEFENDANTS AND ALL CAUSES OF ACTION**

12      WHEREFORE, plaintiffs pray judgment against all defendants, their "alternate entities",

13  and each of them, including PRODUCT DEFENDANTS and EQUIPMENT DEFENDANTS, as

14  follows:

15      1.    For plaintiffs' general damages according to proof;

16      2.    For plaintiffs' loss of income, wages, earning capacity and earning potential

17  according to proof;

18      3.    For plaintiffs' medical and related expenses according to proof;

19      4.    For plaintiffs' cost of suit herein;

20      5.    For exemplary or punitive damages according to proof;

21      6.    For such other and further relief as the court may deem just and proper, including

22  costs as provided in C.C.P. §998, C.C.P. §1032 and related provisions of law;

23      7.    For Plaintiff HOWARD GARCIA's damages from his loss of consortium and loss

24  of economic benefit.

25      / / /

26      / / /

27      / / /

28      / / /

* * *

### DEMAND FOR JURY TRIAL

Plaintiffs herein, each and all, also by this pleading demand a jury trial on all issues set forth hereinabove and as shall or might arise pursuant to the same.

DATED: May 31, 2011                    FARRISE FIRM, P.C.


                                       By:   Simona A. Farrise, Esq.
                                             Karen J. Chedister, Esq.
                                             Attorneys for Plaintiffs

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Drew Aresca, declare: I am and was at the time of service hereunder mentioned, over the age of eighteen (18) years, not a party to the within cause, my business address is

[X] 225 S. Olive, Ste. 102, Los Angeles, California 90012
[] 1850 Mount Diablo Blvd., Suite 610, Walnut Creek, CA 94596

On June 1, 2011, I served true copies of the following document(s) described as:

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY; DEMAND FOR JURY TRIAL**

**SUMMONS TO FIRST AMENDED COMPLAINT**

on the interested parties in this action as follows:

### "SERVICE LIST ATTACHED"

[X] (BY MAIL) pursuant to C.C.P. Section 1013(a). By placing [] the original or [X] a true copy thereof enclosed in a sealed envelope. I am readily familiar with the firm's practice of collection and processing of documents for mailing. Under that practice, it would be deposited with United States Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 1, 2011 at Los Angeles, California.

Drew Aresca

PROOF OF SERVICE

RICHARD KEENEY V. A.W. CHESTERTON, ET AL.

LOS ANGELES SUPERIOR COURT CASE NO: BC457255

| Counsel or Agent For Service | Contact Info | Attorney for Defendant |
|---|---|---|
| Cooley Manion Jones Hake Kurowski LLP<br>444 S. Flower Street, suite 1550<br>Los Angeles, CA 90071 | p: (213) 622 -7300<br>f: (2130 622 - 7313 | A.W. Chesterton Compnay |
| Marla Jones<br>1111 Howel Avenue<br>Anaheim, CA 92805 | | Alta Building Material Company |
| Leonard J. McGill<br>245 South Los Robles Avenue<br>Pasadena, CA 91101 | | Ameron International Corporation |
| Charles Kistner<br>874 Oliver Street<br>North Tonawanda, NY 14120 | | Buffalo Pumps, Inc. |
| Jennifer McCormick<br>300 Lakeside Drive<br>Oakland, CA 94612 | | Calaveras Asbestos, Ltd. |
| Pond North LLP<br>350 South Grand Avenue<br>Suite 3300<br>Los Angeles, CA 90071 | p: (213) 617 - 6170<br>f: (213) 623 - 3594 | CBS Corporation |
| McKenna Long & Aldridge LLP<br>300 S. Grand Ave, Suite 1400<br>Los Angeles, CA 90071 | p: (213) 688 - 1000<br>f: (213) 243 - 6330 | Certainteed Corporation |
| K&L Gates LLP<br>10100 Santa Monica Blvd, 7th floor<br>Los Angeles, CA 90067 | p: (310) 552 - 5000<br>f: (310) 552 - 5001 | Crane Co. |
| Ellen Velie<br>1 Crown Way<br>Philadelphia, PA 19154 | | Crown Cork & Seal Company Inc.,<br>(Mundet Cork Company) |
| Foley & Mansfield PLLP<br>300 Lakeside Drive, 19th floor<br>Oakland, CA 94612 | p: (510) 590 - 9500<br>f: (510) 590 - 9595 | D.W. Nicholson Corporation |
| Yukevich Calfo & Cavanaugh  355 S.<br>Grand Avenue, 15th Floor<br>Los Angeles, CA 90071-1560 | t: (213) 362-7777<br>f: (213) 362-7788 | Ford Motor Company |
| Poole Shaffery LLP<br>445 South Figueroa Street<br>Suite 2520<br>Los Angeles, CA 90071 | p: (213) 439 - 5390<br>f: (213) 439 - 0183 | Gardner Denver, Inc. |

| | | |
|---|---|---|
| Scott Lascala<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801 | | Georgia Pacific Corporation |
| Vogl & Meredith LLP  456<br>Montgomery Street, 20th Floor<br>San Francisco, CA 94104 | t: (415) 398-0200<br>f: (415) 398-2820 | Gladding McBean & Company fka<br>Interpace |
| Gordon & Rees LLP Embarcadero<br>Center West<br>275 Battery Street ,<br>Twentieth Floor<br>San Francisco, CA 94111 | t: (415) 986-5900<br>f: (415) 986-8054 | Gould Pumps, Inc. |
| Becky DeGeorge<br>CSC Lawyers Incorporating Service<br>2730 Gateway Oaks Drive,<br>suite 100<br>Sacramento, CA 95833 | | Hanson Permanente Cementl Inc<br>(Kaiser Cement) |
| Howard Rome Martin & Ridley LLP<br>1775 Woodside Road, Suite 200<br>Redwood City, CA 94061-3436 | t: (650) 365-7715<br>f: (650) 364-5297 | IMO Industries, Inc., fka Delaval<br>Turbine, Inc., and Sharples, Inc. |
| Paul Matthews<br>Prentice Hall<br>2711 Centerville Road, #400<br>Wilmington, DE 19808 | | ITT Industries, Inc. |
| Robert M. Hamblett<br>Two Embarcadero Center,<br>Suite 1800<br>San Francisco, CA 94111-3941 | p: (415) 288 - 9800<br>f: (415) 288 - 9802 | John Crane, Inc. |
| Cassinat Law Corporation<br>4815 Laguna Park Drive, Suite C<br>Elk Grove, CA 95758 | t: (916) 393-3030<br>f: (916) 393-4238 | Johnson Mechanicals Contractors, Inc. |
| Becky DeGeorge<br>CSC Lawyers Incorporating Service<br>2730 Gateway Oaks Drive,<br>Suite 100<br>Sacramento, CA 95833 | | Kaiser Gypsum Company, Inc |
| Faith Page<br>10833 Le Conte Ave, ER-105<br>Los Angeles, CA 90095 | | Kathy Clarito |
| Richard Eckhart<br>2915 East Washington Boulevard<br>Los Angeles, CA 90023 | | Los Angeles Rubber Company |
| Sedgwick LLP<br>801 South Figueroa Street<br>19th floor<br>Los Angeles, CA 90017-5556 | p: (213) 426 - 6900<br>f: (213) 426 - 6921 | Parker Hannifin Corporation as sii to<br>Sacomo-Sierra |

| | | |
|---|---|---|
| Becky DeGeorge<br>CSC Lawyers Incorporating Service<br>2730 Gateway Oaks Drive,<br>Suite 100<br>Sacramento, CA 95833 | | University Mechanical & Engineering<br>Contractors, Inc. |
| Deb Clark<br>406 State Street<br>Cedar Falls, IA 50613 | | Viking Pump, Inc. |
| Bernardo Martinez<br>Corporation Service Company<br>84 State Street<br>Boston, MA 02109 | | Warren Pumps, Inc. |
| Manatt, Phelps & Phillips, LLP<br>One Embarcadero Center<br>30th Floor<br>San Francisco, CA 94111 | t: (415) 291-7400<br>f: (415) 291-7474 | Westburne Supply Inc. |