ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON✥PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

THOMAS HUFF and TAMARA HUFF,

    Plaintiffs,

vs.

CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY,

    Defendants.

No. CV 11 3772

**COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL**

## I.
## PARTIES

1. Plaintiff in this action, THOMAS HUFF, has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos. Plaintiff, TAMARA HUFF, has sustained loss of consortium as set forth in the Third Cause of Action.

2. Plaintiff THOMAS HUFF sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3. The pathogenesis of Plaintiff THOMAS HUFF's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

K:\Injured\108323\FED\PLD\cmp fed (pi).wpd     1
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

4. All of Plaintiffs' claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff THOMAS HUFF's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff THOMAS HUFF, resulting in cumulative, progressive, incurable lung diseases.

5. Plaintiff THOMAS HUFF claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6. As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff THOMAS HUFF.

7. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8. <u>Jurisdiction</u>: Plaintiff THOMAS HUFF is a citizen of the State of Florida.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |
| GENERAL ELECTRIC COMPANY | New York/Connecticut |

///

1  This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9. <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF THOMAS HUFF COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10. At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC.<br>CBS CORPORATION<br>WESTINGHOUSE ELECTRIC CORPORATION<br>WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY<br>B.F. STURTEVANT<br>KPIX TELEVISION STATION<br>PARAMOUNT COMMUNICATIONS, INC<br>GULF & WESTERN INDUSTRIES, INC.<br>NORTH & JUDD MANUFACTURING COMPANY |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating,

1  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,
2  supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,
3  promoting, representing, servicing, installing, contracting for installation, repairing, marketing,
4  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or
5  otherwise directing and/or facilitating the use of, or advertising a certain product, namely
6  asbestos and other products containing asbestos.

7      12.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and
8  each of them, singularly and jointly, negligently, and carelessly researched, manufactured,
9  fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed
10 to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,
11 supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,
12 installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
13 rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,
14 and other products containing asbestos, in that said products caused personal injuries to users,
15 consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter
16 collectively called "exposed persons"), while being used in a manner that was reasonably
17 foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by
18 "exposed persons".

19     13.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
20 exercise due care in the pursuance of the activities mentioned above and defendants, and each of
21 them, breached said duty of due care.

22     14.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
23 have known, and intended that the aforementioned asbestos and products containing asbestos and
24 related products and equipment, would be transported by truck, rail, ship, and other common
25 carriers, that in the shipping process the products would break, crumble, or be otherwise
26 damaged; and/or that such products would be used for insulation, construction, plastering,
27 fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
28 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

1  breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the
2  release of airborne asbestos fibers, and that through such foreseeable use and/or handling
3  "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to
4  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
5  persons working in proximity to said products, directly or through reentrainment.

6  15. Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-
7  containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's
8  exposure to asbestos and asbestos-containing products is on current information as set forth at
9  various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and
10 incorporated by reference herein.

11 16. As a direct and proximate result of the acts, omissions, and conduct of the
12 defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure
13 to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,
14 or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and
15 incorporated by reference herein.

16 17. Plaintiff is informed and believes, and thereon alleges, that progressive lung
17 disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
18 without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
19 asbestos and asbestos-containing products over a period of time.

20 18. Plaintiff suffers from a condition related to exposure to asbestos and asbestos-
21 containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-
22 containing products presented risk of injury and/or disease.

23 19. As a direct and proximate result of the aforesaid conduct of defendants, their
24 ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,
25 permanent injuries and/or future increased risk of injuries to their persons, body and health,
26 including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and
27 emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to
28 Plaintiff's general damage.

20. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

21. As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

24. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///
///
///

## SECOND CAUSE OF ACTION
(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF THOMAS HUFF COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

1  and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
2  did so with conscious disregard for the safety of "exposed persons" who came in contact with
3  said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
4  ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
5  death resulting from exposure to asbestos or asbestos-containing products, including, but not
6  limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part,
7  from scientific studies performed by, at the request of, or with the assistance of, said defendants,
8  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
9  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.
10    30.    On or before 1930, and thereafter, said defendants, their ALTERNATE
11 ENTITIES and each of them, were aware that members of the general public and other "exposed
12 persons", who would come in contact with their asbestos and asbestos-containing products, had
13 no knowledge or information indicating that asbestos or asbestos-containing products could
14 cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
15 members of the general public and other "exposed persons", who came in contact with asbestos
16 and asbestos-containing products, would assume, and in fact did assume, that exposure to
17 asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
18 hazardous to health and human life.
19    31.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
20 of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
21 lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
22 market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
23 asbestos-containing products without attempting to protect "exposed persons" from or warn
24 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
25 asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn
26 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
27 asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
28 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

K:\Injured\108323\FED\PLD\cmp fed (pi).wpd                    9
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff.

33. Plaintiff alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

34. Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

35. Plaintiff relied upon defendants', their "alternate entities'", and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has been injured permanently as alleged herein.

36. As a direct and proximate result of the actions and conduct outlined herein, Plaintiff has suffered the injuries and damages previously alleged.

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Loss of Consortium)

AS AND FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF TAMARA HUFF COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

37. Plaintiffs incorporate by reference each and every paragraph of the First through Second Causes of Action herein.

38. Plaintiffs THOMAS HUFF and TAMARA HUFF were married on July 4, 1994, and at all times relevant to this action were, and are now, husband and wife.

39. Prior to Plaintiff THOMAS HUFF's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, THOMAS HUFF has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, Plaintiff TAMARA HUFF has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

///

40. Plaintiff's discovery of the cause of her loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

41. As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Plaintiff THOMAS HUFF as set forth in this complaint, Plaintiff TAMARA HUFF has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

## IV.
## PRAYER

WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

Plaintiff THOMAS HUFF:

(a) For Plaintiff's general damages according to proof;

(b) For Plaintiff's loss of income, wages and earning potential according to proof;

(c) For Plaintiff's medical and related expenses according to proof;

Plaintiff TAMARA HUFF:

(d) For Plaintiff's damages for loss of consortium according to proof;

Plaintiffs THOMAS HUFF and TAMARA HUFF:

(e) For Plaintiffs' cost of suit herein;

(f) For exemplary or punitive damages according to proof;

(g) For damages for fraud according to proof; and

(h) For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: 7/28/11

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

| | |
|---|---|
| 1 | **JURY DEMAND** |
| 2 | Plaintiff hereby demands trial by jury of all issues of this cause. |
| 3 | |
| 4 | Dated: 7/29/11      BRAYTON❖PURCELL LLP |
| 6 | By: _____ |
| 7 | David R. Donadio<br>Attorneys for Plaintiffs |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

Plaintiff: THOMAS HUFF

Plaintiff's injuries: Plaintiff was diagnosed with mesothelioma on or about June 2011, and with asbestosis on or about March 2009 and asbestos-related pleural disease on or about April 2008.

Retirement Status:

Plaintiff retired from his last place of employment at regular retirement age. He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendants: Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants. Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center Great Lakes, IL | Trainee | 7/6/1964-9/10/1964 |
| U.S. Navy | LIBERTY (AGTR-5) | Boiler Technician | 9/25/1964-5/12/1966 |
| | Willamette Iron and Steel, Portland, Oregon | | 6/1964-6/1968; 6/17/1970-6/16/1972 |
| | Naval Air Station North Island San Diego, CA | | (approx. 2 weeks) |
| | THOR (ARC-4) | | 5/19/1966-1/26/1968 |

///

K:\Injured\108323\FED\PLD\cmp fed (pi).wpd          15
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy (cont'd.) | MAUNA LOA (AE-8) at Newport, RI (2 months) | Boiler Technician | 7/31/1970-12/16/1971 |
| | Naval Station Newport, RI | | 12/16/1971-3/1/1971 |
| | DETROIT (AOE-4) | | 9/8/1971-3/1/1972 |
| | Naval Station Norfolk, VA | | (approx. 4-5 months) |
| General Electric Company PO BOX 60320 Ft. Meyers, Florida 33906-6320 | General Electric Company, Louisville, Kentucky | Assembler | 4/1968-6/1968 |
| Liberty Plastics and Metal Company, PO Box 743 Louisville, Kentucky 40201-0743 | Liberty Plastics and Metal Company, Louisville, Kentucky | Welder | 10/1968- 3/1969 |
| Corhart Refractories Co Inc PO Box 10157, Louisville, Kentucky 402010-0157 | Corhart Refractories Louisville, Kentucky | Forklift Operator | 1/1969-6/1969 |
| Saginaw Asphalt Paving Company 9300 DIX Dearborn, Michigan 48120-1528 | Saginaw Asphalt Paving Company, Saginaw, Michigan | Dispatcher | 4/1969-9/1969 |
| NST Metals Inc 721 E Main Street #723 Louisville, Kentucky 40202-1005 | NST Metals Inc Fabrication Shop, Louisville, Kentucky | Welder | 7/1969-9/1969 |
| Gunther's Gas Repair Service 1021 Trevilian Way Louisville, Kentucky 40213-0000 | Residential Homes, Louisville, Kentucky | Service Technician | 10/1969-12/1969 |
| Henry Vogt Machine Company 1000 W Ormsby Louisville, Kentucky 40210-1873 | Henry Vogt Machine Company Louisville, Kentucky | Foundry Worker | 1/1970-6/1970 |
| Newport Shipyard Inc PO Box 4224 Middletown, Rhode Island 02840-0011 | Newport Shipyard Inc Newport, Rhode Island | Laborer | 7/1971-12/1971 |
| Philip Morris USA Inc 15 Maury Street Richmond, VA | Philip Morris USA Inc Louisville, Kentucky | Stacker | 4/1973-6/1973 |

| | Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|---|
| 1 2 | | | | |
| 3 4 5 | Chester W Ryan Jr. Valley Welding & MFG CO 3944 Crane Run Road, Louisville, Kentucky 40211-0000 | Unknown Commercial Sites, Louisville Kentucky | Welder | 7/1973-12/1973 |
| 6 7 | Bankhead Enterprises Inc 1080 Donald l Hollowell Parkway NW Atlanta, Georgia 30318-6677 | Bankhead Enterprises Inc Atlanta, Georgia | Welder | 4/1975-12/1978 (off and on) |
| 8 9 | Monitor Manufacturing 2525 Spalding Drive Atlanta, Georgia 30350-3618 | Georgia Power Alpharetta, Georgia | Sheetmetal Worker | 1978 |
| 10 11 | C. Ingram Company PO Box 80137, Athens, Georgia 30608-0137 | Johns Manville Factory, Winder, Georgia | Sheetmetal Worker | 8/1978-12/1979 |
| 12 13 | C Ingram Company PO Box 80137, Athens, Georgia 30608-0137 | Certainteed Factory, Athens Georgia | Sheetmetal Worker | 1/1980-4/1980 |
| 14 15 16 | Stokes Duct & Sheetmetal Corp 2001 7th Avenue North Lake Worth Florida 33461-3808 | IBM Building Lantana, Florida | Sheet Metal Worker | 4/1980-9/1980 |
| 17 18 | Advanced Truck Equipment 1315 Neptune Drive Boynton Beach, Florida 33426-8403 | Advanced Truck Equipment Shop Boynton Beach, Florida | Welder | 1983 |
| 19 20 21 | Bechtel Power Corp 50 Beale Street Tax Dept, San Francisco, California 64105-1813 | St. Lucie Nuclear Power Plant (Florida Power & Light) Hutchinson Island Fort Pierce, FL | Sheet Metal Worker | 1/1983- 3/1983 |
| 22 23 | Iveys Inc PO Box 610 Kosciusko, MS 39090-0610 | Hollywood Memorial Hospital, Hollywood, Florida | Sheet Metal Worker | 1985-1986 |
| 24 25 | John Waters Inc 2315 Watterson Trail Louisville, Kentucky 40299-2533 | Bacon's Shopping Center Shively, Kentucky | Sheet Metal Worker | 1990 |
| 26 27 | Thermal Concepts Inc 2201 College Avenue Davie, Florida 33317-7343 | Movie Theater, Louisville, Kentucky; | Sheet Metal | 1991 |
| 28 | | Unknown Commercial Site Richmond, Virginia | | |

1 NON OCCUPATIONAL EXPOSURE:

2 Friction Exposure:

3 Plaintiff removed brake parts, ground them down in his home and and blew them out with an air hose, creating dust. Plaintiff removed the bell housing and transmission and unbolted the clutch
4 causing dust to be released. Plaintiff unbolted and cut the muffler off with a hacksaw disturbing asbestos gasket material, creating dust. Plaintiff removed and replaced asbestos containing
5 VICTOR (DANA COMPANIES, LLC (FKA DANA CORPORATION)) automotive gaskets.

6 Plaintiff purchased a 1951 Ford sedan in 1963 and changed the brakes twice using BENDIX replacement parts. Plaintiff changed the clutch one time with BORG WARNER replacement
7 part. Plaintiff purchased all parts from NAPA AUTO in Chivelli, Kentucky, and SHONEYS AUTO in Louisville, Kentucky on Cain Run Road.

8

Plaintiff owned a 1964 Chevrolet sedan in 1970 and changed the brakes twice with BENDIX
9 replacement parts purchased from NAPA AUTO in Chivelli, Kentucky, and SHONEYS AUTO in Louisville, Kentucky on Cain Run Road.

10

Plaintiff purchased a 1956 General Motors pickup truck in 1978 and changed the brakes one
11 time with BENDIX replacement parts. Plaintiff installed a new GENERAL MOTORS engine, scraping gaskets, creating dust. Plaintiff replaced the clutch with a BORG WARNER
12 replacement. Plaintiff purchased parts from DISCOUNT AUTO and NAPA AUTO in Athens, Georgia.

13

Plaintiff purchased a 1979 FORD Grand Tourino in 1981 and replaced the original equipment
14 manufactured brakes with BENDIX replacement parts purchased from NAPA AUTO in Athens, Georgia.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADRMOP, E-Filing

## U.S. District Court
## California Northern District (Oakland)
### CIVIL DOCKET FOR CASE #: 4:11-cv-03772-LB

| | |
|---|---|
| Huff et al v. CBS Corporation et al | Date Filed: 08/01/2011 |
| Assigned to: Magistrate Judge Laurel Beeler | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Personal Injury | Nature of Suit: 368 P.I. : Asbestos |
| | Jurisdiction: Diversity |

**Plaintiff**

**Thomas Huff** represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tamara Huff** represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*

Westinghouse Electric Corporation

**Defendant**

**General Electric Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/03/2011 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (lsS, COURT STAFF) (Filed on 8/3/2011) (Entered: 08/03/2011) |
| 08/01/2011 |   | CASE DESIGNATED for Electronic Filing. (kc, COURT STAFF) (Filed on 8/1/2011) (Entered: 08/03/2011) |
| 08/01/2011 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 1/19/2012. Case Management Conference set for 1/26/2012 at 10:30 AM before Magistrate Judge Laurel Beeler. (Attachments: # 1 Standing Order)(kc, COURT STAFF) (Filed on 8/1/2011) (Entered: 08/03/2011) |
| 08/01/2011 | 5 | Summons Issued as to CBS Corporation, General Electric Company. (kc, COURT STAFF) (Filed on 8/1/2011) (Entered: 08/03/2011) |
| 08/01/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Tamara Huff, Thomas Huff. (kc, COURT STAFF) (Filed on 8/1/2011) (Entered: 08/03/2011) |
| 08/01/2011 | 3 | NOTICE of Tag-Along Action by Tamara Huff, Thomas Huff (kc, COURT STAFF) (Filed on 8/1/2011) (Entered: 08/03/2011) |
| 08/01/2011 | 2 | Certificate of Interested Entities or Persons by Tamara Huff, Thomas Huff (kc, COURT STAFF) (Filed on 8/1/2011) (Entered: 08/03/2011) |
| 08/01/2011 | 1 | COMPLAINT, jury trial demanded, against CBS Corporation, General Electric Company (Filing fee $350, receipt number 34611062834). Filed byThomas Huff, Tamara Huff. (Attachments: # 1 Civil Cover Sheet)(kc, COURT STAFF) (Filed on 8/1/2011) (Entered: 08/03/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/04/2011 09:25:13 | | | |
| **PACER Login:** | bp0355 | **Client Code:** |   |
| **Description:** | Docket Report | **Search Criteria:** | 4:11-cv-03772-LB |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |