**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

MDL Docket No. 875 – IN RE: Asbestos Product Liability Litigation (No. VI)

*Patti Donlon, Individually and as Successor-in-Interest to the Estate of Patrick Donlon, Decedent, Sean Donlon, and Does One through Ten, Inclusive v. AC and S, Inc., et al.,* N.D. California, C. A. No. 3:11-cv-03376-JSW

**PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)
OR IN THE ALTERNATIVE TO CONTINUE CTO-424 PENDING A RULING ON
PLAINTIFFS' MOTION TO REMAND IN THE DISTRICT COURT**

## I. INTRODUCTION

### A. THIS CASE SHOULD NOT BE TRANSFERRED TO THE EASTERN DISTRICT OF PENNSYLVANIA BECAUSE A REMAND RULING IS PENDING IN THE DISTRICT COURT

This case was removed from San Francisco Superior Court to the district court in the Northern District of California on July 8, 2011. Plaintiffs filed their Motion to Remand on July 22, 2011, which was set for hearing on August 26, 2011. On July 26, 2011, the judge to which this case was assigned in the district court recused herself. Two days later, this case was reassigned. As a result of the reassignment, Plaintiffs' remand motion set for hearing on August 26, 2011 was vacated. On August 5, 2001, Plaintiffs re-filed their Motion to Remand for a hearing on October 7, 2011, which is the earliest possible hearing date available based on the new district court judge's calendar.

Should the Northern District Court remand this action to state court for the reasons set forth in Plaintiffs' Motion to Remand, which is summarized below, an order transferring this action to the Eastern District of Pennsylvania would be unnecessary and moot. Plaintiffs therefore request that the Conditional Transfer Order ("CTO-424") be vacated to enable the district court to rule on Plaintiffs' remand motion.

Alternatively, Plaintiffs request that the Judicial Panel defer the decision on the transfer of this action and continue the conditional transfer of this case to a date after the Northern District Court of California has issued its ruling on Plaintiffs' Motion to Remand this action to state court.

### B. THIS CASE SHOULD BE REMANDED TO STATE COURT FOR THE REASONS SET FORTH IN PLAINTIFFS' MOTION TO REMAND PENDING IN THE NORTHERN DISTRICT COURT OF CALIFORNIA

Plaintiffs request that CTO-424 be vacated so that the transferee court may address the substantive issues Plaintiffs raised in their pending remand motion. In a nutshell, the removal of this case is without factual basis nor supported by law.

Defendant United Technologies Corporation ("UTC") removed this case from San Francisco Superior Court pursuant to 28 USC §1442(a)(1) (federal officer or agency removal) on July 8, 2011. On July 15, 2011, defendant Curtiss-Wright Corporation ("Curtiss-Wright") joined UTC's removal

notice. On July 25, 2011, defendant The Boeing Company ("Boeing") also joined UTC's removal.[1]

Plaintiffs' decedent, Patrick Donlon, died from mesothelioma caused by asbestos exposure. UTC removed this case alleging that the aircraft engines with which Mr. Donlon worked and from which Plaintiffs claim he was exposed to asbestos, were subject to government approval and therefore protected under the federal officer removal statute. However, UTC completely fails to set forth any admissible evidence that either the use of asbestos in its aircraft engines or its failure to warn Plaintiffs' decedent of asbestos hazards was at the direction of a federal officer.

Most importantly, there is no evidence, nor will there be any evidence that UTC's failure to warn of the hazards of asbestos was at the direction of a federal officer. Because Plaintiffs have dismissed all causes of action, other than their failure to warn claims, as against UTC and Curtiss-Wright and the other named aircraft engine manufacturers, defendants have not and will not be able to meet their burdens pursuant to a government contractor defense.

The only evidence UTC offers to meet its strict burden of establishing alleged federal control is the declaration of Allan Shiffler. Mr. Shiffler's declaration, which is UTC's attempt to show that the Navy controlled all aspects of UTC's design and manufacture of aircraft engines, contains nothing but conclusory blanket statements. Of key significance is that upon a careful review of Mr. Shiffler's declaration, it becomes evident that he does not offer any opinion as to what the Navy told UTC to do or not do regarding asbestos warnings on defendant's aircraft engines; indeed, the words "asbestos" and "warning" are absent from Mr. Shiffler's entire declaration. It is incomprehensible that the Navy would have instructed defendants not to put warning on its asbestos-containing products. And UTC's only evidence, via the Shiffler declaration, does not establish otherwise.

Additionally, Mr. Shiffler's declaration in this case is almost identical to a declaration he executed in Sandra Norsworthy v. Aircraft Braking Systems f/k/a The Goodyear Tire & Rubber Co., et al. (Case No. 08-4778, Middlesex County Superior Court in the Commonwealth of Massachusetts.)[2] In the Norsworthy case, Mr. Shiffler was produced as UTC's person most knowledgeable in response to a deposition notice seeking facts, documents and witnesses that

---

[1] Other than joining UTC's notice of removal; neither Curtiss-Wright nor Boeing offered any independent evidence to meet their burden under the government contractor defense.

[2] Allan Shiffler's declaration in the Norsworthy case in attached as Exhibit J to the Declaration of Steven M. Harowitz, filed concurrently herewith.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)**
PAGE 3

support UTC's claim of the government contractor defense for having supplied the Navy and the Air Force asbestos-containing products. At his deposition, Mr. Shiffler testified that the *one and only* engine he worked on during his tenure as UTC's employee was used *only* for the Air Force and *never* for the Navy[3]. Mr. Shiffler further testified that he does not know if UTC possesses any military specification for its manuals nor does he know what requirements were contained in a military specification. Mr. Shiffler testified that he was not aware that the military ever told UTC to not warn about the hazards of asbestos in its manuals.

Mr. Shiffler's testimony makes clear that his declaration in support of UTC's removal of this case lacks personal knowledge regarding alleged *Navy* control and fails to affirmatively show that he is competent to testify to any of the matters stated therein as required under Fed. R. Civ. P. 56(e) and Daubert v. Merrell Dow Pharmaceuticals, Inc., (1993) 509 U.S. 579. Without showing that Plaintiffs' failure to warn claims are based on acts directed by any federal officer, UTC cannot establish federal subject matter jurisdiction.

A litany of cases exists throughout the United States, and in this district, holding that removal based on federal officer jurisdiction is unavailable in failure to warn cases such as the instant case. They so hold because there is no evidence that the government directed defendants not to warn about the dangers of asbestos in the products purchased by the government, and that defendants' removal was based on speculation regarding what the United States Navy would have done. In re Joint Eastern and Southern Dist. New York Asbestos Litig., 897 F.2d 626 (2d Cir.1990); Tate v. Boeing Helicopters, 55 F.3d 1150 (6th Cir.1995); Holdren v. Buffalo Pumps, Inc., 614 F.Supp.2d 129 (D. Mass. 2009.), followed by Lindenmayer v. Allied Packing & Supply, Inc., 2010 WL 234906 (N.D.Cal., Jan. 14, 2010.)

The claims in those cases, as in this case, are limited by way of disclaimer in the Complaint to state law failure to warn claims. Various courts, including the U.S. Supreme Court, have repeatedly confirmed that plaintiffs may use such disclaimers to prevent removal, including in asbestos and product liability cases subject to potential transfer to multi-district litigation. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."). Because the only claims alleged

---

[3] In this case, Plaintiffs' decedent Patrick Donlon was a Navy aviation mechanic, not an Air Force mechanic.

against the aircraft engine manufacturing defendants, including UTC and Curtiss-Wright, are failure to warn, this case must be remanded due to a lack of federal subject matter jurisdiction.

UTC does not state that ***any particular government officer expressly specified the use of asbestos as an ingredient for the engines on which Mr. Donlon worked in the Navy***. Nor does UTC state that ***any government official prevented defendant from warning about the hazards of asbestos*** at the direction of the Navy. UTC has not cited to or provided ***any contractual provisions, aircraft specifications or like documents*** buttressing Mr. Shiffler's generic assertions. Nor does UTC identify any discretionary decision by a federal officer which caused decedent to be exposed to asbestos.

To enable the transferee court to rule on the above summary of issues raised in Plaintiffs' Motion to Remand this case to state court, Plaintiffs respectfully request that the Judicial Panel vacate its CTO-425, or alternatively, defer the decision on the transfer of this action to a date after the transferee court has issued its ruling on Plaintiffs' motion to remand.

## II. STATEMENT OF FACTS

### A. CASE HISTORY IN THE NORTHERN DISTRICT COURT

This action is based on Patrick Donlon's death from mesothelioma caused by his exposure to defendants' asbestos-containing products. (Complaint at ¶ 3-16, Harowitz Decl. ¶2, Ex. A.) Plaintiffs allege that Mr. Donlon's exposure to defendants' asbestos-containing products transpired during his service in the U.S. Navy as an aviation mechanic. (Preliminary Fact Sheet to Complaint, pg. 3, Harowitz Decl. ¶2, Ex. A.)

On June 23, 2011, prior to UTC's filing of the removal notice and Curtiss-Wright's and Boeing's joinder in the same, Plaintiffs dismissed all claims except their failure to warn claims as to the aircraft defendants, including UTC, Curtiss-Wright and Boeing. (Request for Dismissal, Harowitz Decl. ¶3, Ex. B.)

On July 8, 2011, UTC removed this case to the district court based on Mr. Donlon's work as an aviation mechanic in the Navy. (UTC's Notice of Removal, Harowitz Decl. ¶4, Ex. C.) On July 15, 2011, Curtiss Wright joined UTC's removal. (Curtiss-Wright's Joinder, Harowitz Decl. ¶5, Ex. D.) On July 25, 2011, Boeing joined UTC's removal. (Boeing's Joinder, Harowitz Decl. ¶6,

Ex. E.)

On July 22, 2011, Plaintiffs filed their Motion to Remand this case to state court with a hearing set for August 26, 2011. (Plaintiffs' Motion to Remand, Harowitz Decl. ¶7, Ex. F.) On July 26, 2011, the Honorable Susan Illston, to whom this case was assigned in the district court, filed an order of recusal. (Order of Recusal, Harowitz Decl. ¶8, Ex. G.) This case was re-assigned to the Honorable Jeffrey S. White on July 28, 2011. (Id.) The re-assignment of Judge White vacated all motion that were pending before Judge Illston, therefore, on August 5, 2011, Plaintiffs re-noticed their remand motion for a hearing before Judge White on October 7, 2011, which was the earliest available hearing date based on Judge White's calendar. (Id.)

### B. CASE HISTORY IN THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

On July 20, 2011, the United States Judicial Panel on Multidistrict Litigation, issued a conditional transfer order, CTO-424, in this matter to the Eastern District of Pennsylvania. (Conditional Transfer Order, Harowitz Decl. ¶ 9.) Plaintiffs sent notice to the Judicial Panel on July 26, 2011 of their intent to oppose the transfer of the instant action to the Eastern District of Pennsylvania. (Plaintiffs' Notice of Opposition, Harowitz Decl. ¶ 10.) On the same day, the Judicial Panel issued a notice of filed opposition and briefing schedule for Plaintiffs' motion to vacate CTO-424. (Id.)

## III. LEGAL ARGUMENT

### A. A DECISION ON WHETHER TO TRANSFER OF THE INSTANT ACTION TO THE EASTERN DISTRICT OF PENNSYLVANIA IS NOT RIPE FOR ADJUDICATION

Upon receiving notice of the removal of this action, Plaintiffs timely filed a motion to remand this action to state court. Plaintiffs' Motion for Remand is pending in the transferee district court located in the Northern District of California. Should the district court remand this action to state court, an order transferring this action to the Eastern District of Pennsylvania would be unnecessary and moot. Plaintiffs therefore request that the CTO-424 be vacated to enable the district court to rule on Plaintiffs' motion to remand. Alternatively, Plaintiffs request that the Judicial Panel defer the decision on the transfer of this action to a date after the district court has ruled on Plaintiffs' pending motion to remand this action to state court.

### B. PLAINTIFFS' CLAIMS AGAINST REMOVING DEFENDANTS ARE LIMITED TO STATE LAW FAILURE TO WARN CLAIMS AND THUS, THERE IS NO FEDERAL SUBJECT MATTER JURISDICTION TO SUPPORT REMOVAL

Defendants assert federal officer jurisdiction under 28 U.S.C. § 1442, subdivision (a), as the exclusive basis for subject matter jurisdiction. They generally contend, without any relevant supporting evidence, that the actions for which it is supposedly being sued were directed and compelled by the United States Navy.

In their complaint, however, Plaintiffs expressly stated the following:

> "...For purposes of the claims alleged herein, the Federal Courts lack subject matter jurisdiction over this action, as there is no federal question and incomplete diversity of citizenship due to the presence of a California defendant. Removal is improper. Every claim arising under the Constitution, treaties, or law of the United States is expressly disclaimed, including any claim arising from an act or omission on a federal enclave, or of any Officer of the U.S. or any agency or person acting under him occurring under color of such of office. No claim of admiralty or maritime law is raised. Plaintiffs sue no foreign state or agency. By this allegation, plaintiffs are not disclaiming State law claims arising exposures on Federal enclaves. Plaintiffs are only disclaiming claims which would be directed at the Federal government and/or Federal officers..."

(Complaint at ¶ 3-16, Harowitz Decl. ¶2, Ex. A.)

If there is any doubt as to the meaning of Plaintiffs' allegations, Plaintiffs' attorneys dismissed all claims as to UTC, Curtiss-Wright and Boeing except for their failure to warn claims so that they are only proceeding against defendants on a failure to warn theory of liability. (Request for Dismissal, Harowitz Decl. ¶3, Ex. B.)

Federal courts have frequently given effect to such disclaimers, and ordered remand, on the basis that there is nothing on which to rest jurisdiction. Indeed, plaintiffs may use such disclaimers to preserve state court jurisdiction. "The party who brings suit is master to decide what law he will rely upon." Willy v. Coastal Corp., 855 F.2d 1160, 1167 (5th Cir. 1988); See also, Lindenmayer v. Allied Packing & Supply, Inc., 2010 WL 234906 (N.D.Cal., Jan. 14, 2010) (Harowitz Decl., ¶14, Ex. K.) and Westbrook v. Asbestos Defendants (BHC), 2001 WL 902642 (N.D. Cal. July 31, 2001) (Harowitz Decl., ¶15, Ex. L.) Disclaimers to preclude removal are specifically authorized because "the plaintiff has the prerogative of determining the theory of his action and ... may defeat removal to the federal courts by avoiding allegations which provide a basis for the assertion of federal

jurisdiction." Jones v. General Tire & Rubber Co., 541 F.2d 660. 664 (7th Cir. 1976). "[I]f a plaintiff indeed has a viable state law claim, he may depend on it alone and thereby defeat attempts at removal." Carpenter v. Wichita Indep. Sch. Dist., 44 F.3d 362, 367 (5th Cir. 1995), citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 391, fn. 7 (1987).

      These principles are applied in products liability cases where plaintiffs – like here – seek to avoid removal and/or federal multi-district litigation. District courts in California have repeatedly remanded asbestos cases based on disclaimers. In Westbrook v. Asbestos Defendants (BHC), 2001 WL 902642 (N.D. Cal. July 31, 2001), the plaintiffs provided a disclaimer that excluded any claim based on exposure to asbestos at federal job sites. The court granted remand, stating "[t]he court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal job sites in Vessels. ***This waiver, therefore, justifies remand.*** If plaintiffs later attempt to reverse course and are allowed to do so by the state court despite their expressed waiver, [defendant] can always file for removal once again." Id. at p. 3, emphasis added; see also, Overly v. Raybestos-Manhattan, Inc., 1996 WL 532150, 3 (N.D. Cal., Sept. 9, 1996) (Harowitz Decl., ¶16, Ex. M).; Schilz v. A.P. Green Ind., Inc., 2002 WL 102608, 1 (N.D. Cal., Jan. 15, 2002) (Harowitz Decl., ¶17, Ex. N). [remand granted based on plaintiffs' waiver of design defect claims that could have given rise to federal officer exposure]. Most recently, a district court in Louisiana cited these California cases and held that plaintiffs' pre-removal disclaimer precluded removal. Sheppard v. Northrop Grumman Systems Corp., 2007 WL 1550992 (E.D. La., May 24, 2007) (Harowitz Decl., ¶18, Ex. O). As it explained in Sheppard, "the court concludes that its decision to follow plaintiffs' disclaimer is further supported by the fact that, unlike the plaintiffs in Overly and Westbrook who disclaimed causes of action post-removal, Plaintiff here disclaimed these causes action in his original petition in state court." Id. at 7.

      In these cases, the use of a disclaimer was based on the proposition that a plaintiff is free to plead his or her action, including the waiver of federal claims, so that he or she may proceed in state court. And that is exactly what Plaintiffs did in this case: waive any and all possible federal claims in order to defeat removal and preserve state court jurisdiction. Plaintiffs therefore request that the Judicial Panel vacate its transfer order to enable the district court to adjudicate whether Plaintiffs'

state law failure to warn claims warrant remand of this action to state court.

## C. DEFENDANTS FAILED THEIR BURDEN OF ESTABLISHING FEDERAL OFFICER JURISDICTION UNDER 28 U.S.C. §1442(a)(1)

A defendant that seeks to remove a case under Section 1442(a)(1) has the burden of proving four jurisdictional elements: (1) that it is a "person" within the meaning of the statute; (2) that it acted under the direction of a federal officer; (3) that it has a colorable federal defense to the plaintiff's claims; and (4) that there is a causal nexus between the plaintiff's claims and the acts the defendant performed under color of federal office. Arnold v. Blue Cross & Blue Shield, 973 F.Supp. 726, 739 (S.D. Texas 1997) (*citing* Mesa v. California, 489 U.S. 121, 124-25, 129-31, 134-35 (1989)). Plaintiffs particularly address UTC's failure to meet the second, third and fourth prongs of the Mesa test.

### 1. UTC Has Not And Cannot Show That It Acted Under The Direction Of A Federal Officer

Under the second prong of the Mesa test, UTC must demonstrate that it acted at the direction of a specific federal officer when designing the aircraft engines with which Mr. Donlon worked. UTC must prove that it worked under the "direct and detailed control" of a federal officer. Arnold, 973 F.Supp. at 740. Establishing this element requires more than merely alleging that the acts in question were generally carried-out under federal auspices. Ryan v. Dow Chemical Co.,781 F.Supp. 934, 947 (E.D.N.Y. 1992); Good v. Armstrong World Industries, Inc., 914, F.Supp. 1125, 1129; Arness v. Boeing North America, Inc., 997 F.Supp. 1268, 1273 (C.D. Ca. 1998). "[R]emoval must be predicated upon a showing that the acts that form the basis for the state civil suit . . . were performed pursuant to [a federal] officer's direct orders or to comprehensive and detailed regulations." (Id.).

A company acts under color of federal law only when its action "may be fairly treated as that of the [government] itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350-51 (1974). The fact that a corporation is performing under government contracts whose specifications it must meet does not automatically transform its conduct into government action. "Many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or

1  submarines for the government. Acts of such private contractors do not become acts of the
2  government by reason of their significant or even total engagement in performing public contracts."
3  Rendell-Baker v Kohn, 457 U.S. 830, 841 (1942).

### a. UTC Does Not And Cannot Identify The Federal Officer Who Directed It To Incorporate Asbestos Into Its Engines Or Directed It To Exclude Safety Warnings

In order for UTC to successfully set forth a colorable federal defense, it must prove that it acted at the direction and under the control of a *specific* federal officer. That control must have been exercised by a specific, individual federal official, not an entire agency. Good, supra, 914 F. Supp. at 1128-1129. UTC's notice of removal is clearly insufficient in this regard. It does not allege (much less establish) that *any federal officer expressly required it to use asbestos-containing materials in manufacturing aircraft engines*. Good, 914 F.Supp. at 1129. UTC fails to identify, let alone, provide any contracts, agreements, regulations or specifications from the Navy requiring that asbestos be used on Pratt & Whitney's engines even though its witness Allan Shiffler's averments are supposedly based on his review of these very documents. (UTC's Notice of Removal ¶16 and Declaration of Allan Shiffler, ¶¶5, 7, 9, Harowitz Decl. ¶4, Ex. C.)

Allan Shiffler was born in 1941; he worked for Pratt & Whitney from 1966 until his retirement in 2003. (Deposition of United Technologies Corporation by Allan J. Shiffler, taken on April 7, 2011, Harowitz Decl. ¶11, Ex. J, pgs.9:6-12; 10:23-11:6.)[4] Contrary to the statements contained in the declaration he executed to support removal filed by UTC, Mr. Shiffler had previously admitted during his deposition in the Norsworthy matter that the *one and only military aircraft engine* on which he worked during his entire tenure at Pratt & Whiney was the model "TF33" used by the Air Force, but *never* used by the *Navy*:

```
16  Q. All right. When we left off yesterday, we
17  were talking about the development of the dash 100A
18  version of the TF33, correct?
19  A. Yes.
20  Q. All right. Other than the development of
21  that engine, were you personally involved in the
22  development of any new engine or new variant of any
23  engine for the United States military during your
```

---

[4] Plaintiffs' decedent Patrick Donlon served in the Navy from 1955 to 1958, almost a decade before Allan Shiffler began working for UTC.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)**                                                                                                                                                  PAGE 10

```
24  employment at Pratt & Whitney?
 1     A. No.
 2     Q. And were you involved in any contract
 3  negotiations for the development of any new engine
 4  or new variant of any engine other than the TF33
 5  during your tenure at Pratt & Whitney?
 6     A. No.
14  Q. Okay. Was the dash 100A engine ever sold
15  on the civilian side?
16     A. No.
17     Q. Was it ever put in anything other than an
18  AWACS aircraft by the Air Force?
19     A. The 100A?
20     Q. Yes.
21     A. No.
22     Q. And was it ever sold to any other branch of
23  the military, the Navy?
24     A. No.
```

(Deposition of United Technologies Corporation by Allan J. Shiffler, taken on April 8, 2011, Harowitz Decl. ¶12, Ex. K, pgs.103:16-104:6; 111:14-24.)

UTC's evidence via Allan Shiffler not only fails to establish that defendant acted under a federal officer, it shows that UTC actually has *no* evidence that it acted under *any Navy officer* because Mr. Shiffler never worked on an engine that was supplied to the Navy.

### b. Defendant Cannot Prove That It Failed To Warn At The Direction Of A Federal Officer

The government contractor defense applies in very narrow circumstances:

> Boyle displaces state law only when the government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion. In Re: Hawaii Federal Asbestos Cases, 960 F.2d at 813 (internal quotations omitted). Accord Dorse v. Eagle-Picher Indus., Inc., 898 F.2d 1487, 1489 (11th Cir. 1990).

Several Courts have rejected the government contractor defense in asbestos cases or found that the defense does not apply in circumstances similar to those presented here. See In re Joint Eastern and Southern District Asbestos Litigation *(1)*, 715 F.Supp. 1167, 1169 (E.D.N.Y. 1988) (Court rejected military contractor defense holding that federal specifications were silent on the matter of warnings and defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications); Hansen v. Johns-Manville Products Corp., 734 F.2d 1036, 1044-45 (5th Cir. (Tex.) 1984), *reh'g denied* 744 F.2d 94, *cert. denied* 470 U.S. 1051; Nobriga v. Raybestos-

Manhattan, Inc., 683 P.2d 389, 392 (Hawaii 1984); In re New York City Asbestos Litigation, 542 N.Y.S.2d 118, 120-21 (1989); In re Joint E. & S. Dist. N.Y. Asbestos Litig., 897 F.2d 626, 629-30, (2nd Cir. (N.Y.) 1990); In re Joint Eastern & Southern Dist. Asbestos Litig., 715 F.Supp. 1167 (E.D.N.Y. 1988); Faulk v. Owens-Corning Fiberglass Corp., 48 F.Supp.2d 653, 663-64 (E.D.Tex. 1999) (applying federal law); Good v. Armstrong World Indus., 914 F.Supp. 1125, 1131 (E.D.Pa. 1996).

In Overly v. Raybestos- Manhattan, 1996 WL 532150 (N.D. Cal. 1996), defendant Avondale Industries removed an asbestos case to federal court based on federal officer jurisdiction. The Overly court explained that "plaintiffs have proceeded against Avondale on the 'failure to warn theory' of product liability." Overly at p. 1.

The Overly court stated:

> [I]n order to meet the Boyle test in a failure to warn case, the defendant must show that the government affirmatively instructed it regarding the provision of warnings. Defendant's only showing on this motion relates to the government's manufacturing and engineering specifications. Defendant has not demonstrated that the government provided "reasonably precise specifications" affecting Avondale's provision of warnings. [citation omitted] Absent a showing by defendant that the federal government gave specific instructions to Avondale not to warn employees of the existence of asbestos, Avondale is offered no protection by government contractor immunity. [citation omitted] Therefore defendant fails to meet the second prong of the Mesa standard because Avondale has no colorable federal defense to the charges in this case. Overly at pp. 3-4.

In order for the federal contractor defense to apply in the failure to warn context, a defendant must show a conflict between state law and federal policy. Hilbert v. McDonnell Douglas Corp. 529 F.Supp.2d 187 (D. Mass. 2008), citing Oliver v. Oshkosh Truck Corp., 96 F.3d 992 at 1003 (7th Cir.1996.); Tate v. Boeing Helicopters, 55 F.3d 1150 (6th Cir.1995.); and In re Joint Eastern and Southern Dist. New York Asbestos Litig., 897 F.2d 626 (2d Cir.1990.) In other words, the party attempting to invoke a federal officer defense must show that "the government made me do it." In re Joint Eastern and Southern Dist. New York Asbestos Litig., 897 F.2d 626 at 632 (2d Cir.1990), citing Boyle v. United Tech. Corp., (1988) 487 U.S. 500.

In this context, UTC must prove both that the government made UTC incorporate asbestos-containing materials in its engines and that the government prevented UTC from providing warnings regarding the hazards associated with those asbestos-containing products. Holdren v. Buffalo Pumps, Inc., 614 F.Supp.2d 129 (D. Mass. 2009.), followed by Lindenmayer v. Allied

Packing & Supply, Inc., 2010 WL 234906 (N.D.Cal., Jan. 14, 2010).

If both federal policy and state law can be satisfied at the same time, the contractor may not assert the defense. (Id.) **_Defendant may not defeat a failure to warn claim simply by showing the elements of the Boyle defense to a design defect claim._** In order to assert a colorable federal defense in a failure to warn claim, defendant "**_must_** rebut the obvious inference: that it never tried to warn about asbestos at all." Hilbert, supra at 202. (Emphasis added.)

Here, UTC relies upon the standards set forth in Boyle in an attempt to raise a colorable defense to Plaintiffs' failure to warn claim based upon Allan Shiffler's generic declaration. Under Good and Hilbert, UTC does not even come close to meeting its burden because not only has Mr. Shiffler admitted that he has never worked on any Pratt & Whitney engines that were supplied to the *Navy*, Mr. Shiffler previously testified that he is not aware of any response from the military to UTC regarding warnings about asbestos because UTC never bothered to ask the military:

```
 9   Q. Was Pratt & Whitney ever told by the
10   military not to put warnings about asbestos in its
11   manuals?
12        MR. TABASKY: Objection. You can answer
13   if you know.
14   A. I'm not aware of them asking.
15   Q. You're not aware of Pratt asking the
16   military whether they could?
17   A. Exactly.
18   Q. All right. And if Pratt didn't ask the
19   military whether they could, then there wouldn't be
20   a response from the military one way or the other,
21   correct?
22        MR. TABASKY: Objection.
23   A. Yes.
```

(Deposition of United Technologies Corporation by Allan J. Shiffler, taken on April 8, 2011, Harowitz Decl. ¶12, Ex. K, pg. 144:9-23.)

Because ample case law makes clear that the Boyle standard does not apply in failure to warn cases, and because UTC did not and cannot prove that it did in fact try to warn about asbestos but was not permitted to by its federal contracts with the Navy that defendant has not submitted as evidence, UTC has not raised a colorable defense to Plaintiffs' claims, and this case must be remanded.

### 2. UTC Has Not Raised a Colorable Federal Defense

To satisfy the third prong of the Mesa test, UTC must raise a colorable federal defense, which it fails to do. In order to assert a colorable federal defense, UTC "must do more than simply plead a federal defense. Rather, [it] must plead a *colorable* federal defense." Faulk v. Owens-Corning Fiberglass, Corp., 48 F.Supp.2d 653, 664 (emphasis original). The defense amounts to a claim that "the government made me do it." In Re: Hawaii Federal Asbestos Cases, 960 F.2d at 813 (citing In Re: Joint E. S. Dist. N. Y. Asbestos Litig., 897 F.2d 626, 632 (2d Cir. 1990)).

And it is not enough for the defendant to allege that it has a colorable defense because it simply supplied products to the military or supplied products to the military in compliance with government specifications. If this were the case then every lawsuit involving asbestos exposure from military ships or aircraft would be in federal court. Federal contractors do not enjoy any type of automatic immunity. Lamb v. Martin Marietta Energy Systems, Inc., 835 F.Supp. 959, 962-63 (W.D. Ky. 1993) (citing United States v. Boyd, 378 U.S. 39, 44 (1964)). Rather, this defense applies only to specific situations, which the defendant must establish through admissible evidence. *Lamb*, 835 F.Supp. at 959.

While a defendant need not prove its federal defense in order to satisfy this prong of the *Mesa* test, it still must offer enough evidence to show that the defense is colorable. This requires, at a minimum, pleading each necessary element and offering some supporting evidence. *Lamb*, 835 F.Supp. at 966-67. Defendant fails to do so here.

### a. The Military Contractor Defense Does Not Apply Where The Products at Issue Are Stock Equipment Readily Available to Commercial Users

Defendant has not, and cannot, produce evidence that the asbestos-containing materials that caused Mr. Donlon's mesothelioma were nothing more than standard, stock equipment used interchangeably in its aircraft engines, as required by this Circuit in In Re: Hawaii Federal Asbestos Cases, 960 F.2d 806, 812 (9th Cir. 1992) (government contractor defense not applicable when the product is a stock item that was not ". . . manufactured with the special needs of the military in mind"). The mere selection of such standard asbestos-containing components by the government does not provide the supplier or contractor with a basis for removal. Boyle, 487 U.S. at 509

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER
(CTO-424)
PAGE 14

(government contractor defense does not apply to injury caused by "stock" item or "standard equipment").

In fact, the asbestos materials that Plaintiffs claim caused Mr. Donlon's mesothelioma and his death would have been the same standard asbestos products available in the private sector market. There was nothing special or unique about them as explained by Allan Shiffler:

```
 3   Q.  Would you consider it an unusual situation
 4   for a spare part for a Pratt & Whitney engine in an
 5   Air Force plane to come from a parts overhaul shop
 6   as opposed to through Pratt & Whitney?
 7           (Objection by multiple counsel.)
 8   A.  They may have acquired non -- what I would
 9   consider noncritical parts.
10   Q.  What do you consider to be a noncritical
11   part?
12   A.  Clamps, bolts; common bolts and nuts that
13   are common throughout the industry, throughout the
14   aerospace industry, those types of items; gaskets,
15   MS, AN parts, those sorts of items.
16   Q.  And to the extent that a part like that is
17   used on a Pratt & Whitney engine, can any part be
18   used, or do they have to be parts that were designed
19   and built pursuant to Pratt's specifications?
20   A.  Our recommendation to the Air Force is that
21   they use our recommended parts; however, the Air
22   Force themselves have the option to utilize what
23   they call equivalencies.
24   Q.  And when you say "equivalencies," is that
 1   something that the Air Force deemed to be equivalent
 2   to the Pratt part?
 3   A.  Yes.
 4   Q.  And it was a part that was obtained from
 5   someone other than Pratt?
 6   A.  Yes.
```

(See Deposition of United Technologies Corporation by Allan J. Shiffler, taken on April 8, 2011, Harowitz Decl. ¶12, Ex. K, pg. 123:3-124:6)

The mere selection of such stock components by the government does not cloak the supplier or contractor with immunity from suit. In Re: Hawaii Federal Asbestos Cases, 960 F.2d at 806. As the Court explained in Boyle:

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. Boyle, 487 U.S. at 509.

In applying the principles set forth in Boyle, in In Re: Hawaii Federal Asbestos Cases, 960 F.2d at 806, the Ninth Circuit specifically addressed the instant situation. In In Re: Hawaii Federal Asbestos Cases, the court found that the military contractor defense was not a barrier to plaintiffs' state court claims because the asbestos insulation at issue was not "military equipment" since it was used in both commercial and military applications.

The Ninth Circuit, citing Boyle, set forth as follows:

> …the fact that a company supplies goods to the military does not, in and of itself, immunize it from liability for the injuries caused by those goods. ***Where the goods ordered by the military are those readily available, in substantially similar form, to commercial users, the military contractor defense does not apply***.

In Re: Hawaii Federal Asbestos Cases, 960 F.2d at 811, *citing* Boyle at 512.

The court explained the rationale:

> That Boyle speaks of the military contractor defense as immunizing contractors only with respect to the military equipment they produce for the United States is consistent with the purposes the Court ascribes to that defense. The Boyle Court noted that the military makes highly complex and sensitive decisions regarding the development of new equipment for military usage. Allowing contractors who are hired to manufacture that equipment to be sued for the injuries caused by it would impinge unduly on the military's decision making process. The contractors would either refuse to produce the military equipment for the Government or would raise their prices to insure against their potential liability for the Government's designs. (Id.)

The court further explained:

> These same concerns do not exist in respect to products readily available on the commercial market. The fact that the military may order such products does not make them "military equipment." The products have not been developed on the basis of involved judgments made by the military but in response to the broader needs and desires of end-users in the private sector. (Id.)

As set forth above, such stock equipment, used in both commercial and military applications are not subject to federal officer removal, and do not give rise to a federal defense. Allan Shiffler's deposition testimony makes clear that the asbestos materials used in UTC's aircraft engines (gaskets, clamps, bolts) were nothing more than ***noncritical*** and therefore non-military standard asbestos products available in the commercial market. (See Deposition of United Technologies Corporation by Allan J. Shiffler, taken on April 8, 2011, Wang Decl., Ex. D, pg. 123:3-124:6),

By designing and manufacturing engines for use in the military that contained the same

---

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER**
(CTO-424)                                                                                           PAGE 16

asbestos-containing materials as were being used in the private sector, UTC was not and could not have been acting at the direction of a federal officer. As such, UTC does not have even a colorable federal defense to Plaintiffs' claims.

>   b. **Even if the Products at Issue are Considered "Military Equipment" And The Boyle Elements Applied to a Failure to Warn Case, UTC Does not Raise a Colorable Federal Defense Since it Cannot Prove That in Making Decisions Regarding Warnings, it Was Acting in Compliance with Reasonably Precise Specifications Imposed by the Unites States**

The government contractor defense shields government contractors from liability only when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle, 487 U.S. at 512. The third element of the government contractor defense requires the defendant to prove that it warned the government about the risks involved that it knew, but the government did not. Faulk, 48 F.Supp. at 666.

As the Boyle court noted:

> The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract, but withholding it would produce no liability. Boyle, at 512.

> The Court's inclusion of a warning element must indicate that approval requires some level of evaluation and review; otherwise a government contractor might argue one day that it should have the benefit of the defense despite its failure to give a warning because the government had rubber-stamped the design, because the information withheld would have been no use to the government and was not desired by the government, and because the provision of the information would not have affected the government's "approval" of the design. Trevino v. General Dynamics Corp. 865 F. 2d. 1474.

Rather than producing evidence of what it knew about the hazards of asbestos, UTC produces a declaration from industrial hygienist William Ringo, who speculates, without any foundation or citations to documentary support, that "the state-of-the-art scientific knowledge regarding asbestos-related health hazards in the 1950s, 1960s and 1970s, would not have included any information or knowledge that an aircraft engine mechanic…would be at risk for any asbestos-

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER
(CTO-424)                                                                                                    PAGE 17

related disease from the work performed on aircraft engines." (Declaration of William Ringo at ¶ 10.) Mr. Ringo's declaration suffers from two notable deficiencies. First, nowhere in his declaration does Mr. Ringo introduce evidence regarding <u>UTC's own knowledge</u> about the dangers of its own products, versus the knowledge of the government. Second, <u>regardless of what the Navy purportedly knew, Mr. Shiffler unequivocally testified that the military never prevented UTC from warning about asbestos hazards</u>. Thus, Mr. Ringo's opinions regarding what the government purportedly should have known about the hazards of asbestos is a red herring that does not meet UTC's burden of establishing a colorable federal defense.

### 3. UTC Cannot Establish Causal Nexus Between Its Actions Under The Control Of A Federal Officer And Plaintiffs' Failure to Warn Claims.

The fourth prong of the *Mesa* test requires a "causal nexus" between plaintiffs' claims and defendant's acts allegedly taken under federal direction – and again UTC fails to set forth any facts whatsoever. As explained below, Plaintiffs' claims against UTC are based on its failure to warn about the dangers of asbestos that UTC incorporated into the design and manufacture of its asbestos-containing aircraft engines. In order for UTC to show that there was a causal nexus between its actions under the control of a federal officer and plaintiffs' claims, it must show that a federal officer specifically dictated that UTC (1) must use asbestos in its engines, and (2) must <u>not</u> warn about the dangers of that asbestos. <u>Faulk</u>, 48 F.Supp.2d at 663 ("the federal government did not dictate any specifications regarding the warning about asbestos-containing products").

UTC's only evidence anywhere in the record on this prong is again Allan Shiffler's declaration. Mr. Shiffler's declaration in this case is nearly identical to the one he executed in support of UTC's removal under federal officer jurisdiction in the <u>Norsworthy</u> case. (Declaration of Allan J. Shiffler in support of Defendant United Technologies Corporation's Notice of Removal, authenticated and attached as Exhibit 4 to the Deposition of United Technologies Corporation by Allan J. Shiffler, taken on April 8, 2011, Harowitz Decl. ¶13, Ex. L.) However, as Mr. Shiffler explained during his deposition in the <u>Norsworthy</u> matter, the statements contained in his nearly identical declaration are not based on his personal knowledge since he was not employed by Pratt & Whiney before 1966. (Deposition of United Technologies Corporation by Allan J. Shiffler, taken on

April 8, 2011, Harowitz Decl. ¶13, Ex. L, pgs. 146:14-147:5; 149:22-151:24.)

Mr. Shiffler further testified that while his declaration stated that "these military specialists at Pratt & Whitney controlled the design and manufacture of an aircraft engine produced at Pratt & Whitney for the United States military"[5], what he really meant to say was that the military simply had veto power over *defendant's own designs*:

> 11   Q. *Paragraph 8 there, if you look down at the*
> 12   *last sentence of Paragraph 8, you say, "During the*
> 13   *period of my employment at Pratt & Whitney, these*
> 14   *military specialists at Pratt & Whitney controlled*
> 15   *the design and manufacture of any aircraft engine*
> 16   *produced at Pratt & Whitney for the United States*
> 17   *military."*
> 18        *And I take it by "controlled the design*
> 19   *and manufacture" you mean that they had veto power*
> 20   *over Pratt's designs?*
> 21   *A. Yes.*
> 22   *Q. They weren't the ones putting the designs*
> 23   *together?*
> 24   *A. Right.*

(Id. at pg. 156:11-24.)

> 1    Q. *Let's flip to the next page, Paragraph 10.*
> 2    *You say, "Any written material such as warnings or*
> 3    *product manuals that accompanied the engines built*
> 4    *by Pratt & Whitney for the United States military*
> 5    *were similarly controlled and specified by the*
> 6    *United States military."*
> 7        *You don't have any personal knowledge as*
> 8    *to what control, if any, the military exercised over*
> 9    *manuals that were drafted by Pratt, do you?*
> 10       *MR. TABASKY: Objection.*
> 11   *A. Other than by the contract requirements for*
> 12   *publications.*
> 13   *Q. Okay.*
> 14   *A. And there is -- it does list quite a bit of*
> 15   *guidelines.*
> 16   *Q. So the contracts for the publications not*
> 17   *only tell Pratt that it has to create manuals, but*
> 18   *it gives some information as to what has to be in*
> 19   *the manuals?*

---

[5] Mr. Shiffler's declaration in this case differs slightly from the Norsworthy case in that instead of the word "military" that was used throughout his prior declaration, he has changed "military" to "Navy" in his declaration here. However, in light of Mr. Shiffler's testimony that he had never worked on a Pratt & Whitney engine supplied to the Navy, his entire declaration lacks personal knowledge under Fed. R. Civ. P. 56(e) and is inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., (1993) 509 U.S. 579.

```
20   A. Yes.
21   Q. As you sit here today without the contract
22   in front of you, can you tell me what else it says
23   other than Pratt has to create manuals?
24   A. No.
 1   Q. We'd need the contract to know exactly what
 2   they say?
 3        MR. TABASKY: Objection.
 4   A. Because they vary (nodding).
 5   Q. All right. So when you say "were
 6   controlled and specified by the United States
 7   military," what you mean is that the written
 8   materials were subject to a contract?
 9   A. Yes.
```

(Id. at 157:1-158:9.)

By its own admission, UTC's only evidence offered in support of its removal notice is nothing more than the speculation of a former company employee who has no personal knowledge of any of UTC's dealings with the Navy. Such evidence fails to show that a specific federal officer directed UTC not to warn, including the failure to place appropriate warnings *on or with* its asbestos-containing engines.

Plaintiffs therefore request that the Judicial Panel vacate its transfer order to enable the district court to adjudicate whether defendant met its burden in demonstrating that removal of this action is proper under federal officer jurisdiction.

IV.   **CONCLUSION**

Plaintiff respectfully requests that the Judicial Panel vacate its conditional transfer order, or alternatively, defer the decision on the transfer of this action to a date after the transferee court has issued the pending ruling on Plaintiffs' motion to remand this action to state court. An order vacating the conditional transfer order is necessary to enable the district court to hear and rule on the issues raised in Plaintiff's motion to remand the instant action to state court.

Dated: August 8, 2011                    HAROWITZ & TIGERMAN, LLP

                                         By: _____
                                         Steven M. Harowitz (State Bar No. 71117)
                                         harowitz@htlawoffices.com
                                         HAROWITZ & TIGERMAN, LLP
                                         450 Sansome Street, 3rd Floor
                                         San Francisco, CA 94111
                                         Telephone: (415) 788-1588
                                         Facsimile:  (415) 788-1598
                                         Attorney for Plaintiffs Patti Donlon and Sean Donlon