# EXHIBIT 10

1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

10  MICHAEL E. JENKINS,                                    CASE NO. 09-cv-0101 DMS (LSP)

11                                    Plaintiff,          **ORDER DENYING MOTION TO**
                                                          **REMAND**
12      vs.

    ALLIED PACKING & SUPPLY, INC., et al.,
13
                                      Defendant.

14
15          Plaintiff brought this state law tort action in San Diego Superior Court against Defendants,
16  including Defendant Leslie Controls, Inc. ("Leslie Controls"), on July 21, 2008. Plaintiff alleges, *inter*
17  *alia,* that Defendants violated their California state law duty to warn him of the dangers posed by
18  asbestos in their products, and that he developed lung cancer as a result.  Plaintiff alleges asbestos
19  exposure from serving as a pipefitter aboard the U.S. Navy vessels U.S.S. Marshall, U.S.S. Collett,
20  and U.S.S. Fletcher. Defendant Leslie Controls furnished and fabricated valves and related equipment
21  for Navy vessels under contract during the 1940s to 1960s.  It removed the case pursuant to the federal
22  officer removal statute, 28 U.S.C. § 1442(a)(1), on January 9, 2009.  Plaintiff now seeks to have the
23  case remanded. (Doc. 18.)  The matter is suitable for submission without oral argument, pursuant to
24  Civil Rule 7.1.  For the following reasons, the motion is denied.

25  **A.    Legal Standard for Removal under 28 U.S.C. § 1442**

26          Pursuant to 28 U.S.C. § 1442(a)(1), a civil action may be removed by "[a]ny officer of the
27  United States or any agency thereof, or person acting under him, for any act under color of such
28  office." 28 U.S.C. § 1442(a)(1). To satisfy § 1442, a government contractor must (1) demonstrate that

1   it acted under the direction of a federal officer; (2) raise a colorable federal defense to plaintiff's

2   claims; and (3) demonstrate a causal nexus between plaintiff's claims and the acts defendant performed

3   under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-125, 134-135 (1989).[1]

4          Generally, removal statutes are to be strictly construed, and any doubt as to the right to remove

5   should be resolved in favor of remanding to state court. *See, e.g., Gaus v. Miles, Inc.*, 980 F.2d 564,

6   566 (9th Cir.1992). Unlike removal under § 1441(a), however, § 1442 strongly favors removal. *See*

7   *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252-53 (9th Cir. 2006) ("when federal officers

8   and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of

9   removal."). Indeed, under § 1442 a federal officer may remove a case even if the plaintiff could not

10  have filed the case in federal court; removal is not subject to the well-pleaded complaint rule, *i.e.*, a

11  federal officer's defense can provide subject matter jurisdiction; and, a federal officer or agency

12  unilaterally may remove a case, without the consent of any other defendant. *Id.* at 1253.

13  **B.    Discussion**

14         Plaintiff argues that Leslie Controls fails to establish removal was proper under § 1442(a).

15  Plaintiff further argues that, Leslie Controls' defense notwithstanding, removal is improper because

16  he specifically disclaimed any claims for relief arising under federal law. Plaintiff also raises

17  evidentiary objections to Leslie Controls' evidence. The Court turns first to the evidentiary challenges,

18  then to the merits.

19         **1.    Plaintiff's Evidentiary Objections to the Notice of Removal**

20         Leslie Controls submitted declarations from Matthew Wrobel and Rear Admiral Roger Horne

21  (ret.) in support of its notice of removal. Plaintiff objects to these declarations on various grounds.

22  First, as to Mr. Wrobel's declaration, Plaintiff argues: (1) the declaration is inadmissible hearsay; (2)

23  Mr. Wrobel fails to provide a basis for his expert opinion under Fed. R. of Evid. 702, and hence, it

24  lacks foundation; and (3) the declaration is irrelevant because Mr. Wrobel does not refer to any

25  specifications regarding asbestos warnings or testify as to whether the Navy prevented Leslie Controls

26  from fulfilling its state law duty to warn. (Doc. 18-3, at 1-2.) Similarly, Plaintiff objects to Rear Adm.

27  _____

28         [1] The removing party must also qualify as a federal officer or person acting under the same. As a corporation, Leslie Controls meets this requirement, *see Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D. Cal. 1992), and the parties do not contend otherwise.

Horne's declaration because: (1) it is inadmissible hearsay; (2) Rear Adm. Horne does not state whether he has personal knowledge of Leslie Control's products specifications, design, or manufacture, or whether warnings were placed on them; and (3) Rear Adm. Horne offers an expert opinion that lacks foundation under Fed. R. of Evid. 702. (*Id.* at 2.)  Plaintiff asks the Court to strike Rear Adm. Horne's declaration because it is contrary to deposition testimony given by him on June 12, 2006, in *Baxter v. Alfa Laval, Inc., et al.*, Middlesex (Mass.) Super Ct., No. 05-4314. (*Id.* at 2-3.)

As a general matter, these objections are not meritorious.  Mr. Wrobel is Group Director of Quality Assurance at Leslie Controls.  His testimony is based on his personal knowledge following forty-one years of employment with Defendant, where he was personally involved in Navy procurement contracts at various stages of contracting. (Wrobel Decl. ¶1.)  Rear Adm. Horne's Navy career focused on ship design, engineering, construction, overhaul and inspection, ultimately achieving the rank of Chief Engineer and Deputy Commander, Naval Sea Systems Command for Ship Design and Engineering. (Horne Decl. ¶2.)  He testifies that he has personal knowledge of the Navy's comprehensive plans, specifications, and requirements which governed suppliers like Leslie. Because Mr. Wrobel and Rear Adm. Horne testify as a percipient witnesses, neither offers opinion testimony that is subject to Fed. R. of Evid. 702.  Moreover, both declarations are relevant, because both Mr. Wrobel and Rear Adm. Horne offer testimony concerning the Navy's supervision of Leslie Control's product manufacturing and its control over the issuance of warnings. (Wrobel Decl. ¶¶6-14; Horne Decl. ¶¶7-16.)  Finally, assuming Rear Adm. Horne's declaration is inconsistent with his deposition testimony in *Baxter*, such inconsistency "is not ordinarily a basis for striking the testimony." *United States v. Powers*, 467 F.2d 1089, 1095-1096 (7th Cir. 1972).

### 2.   Plaintiff's Disclaimers

Plaintiff's Complaint recites the following:

> The Federal Courts lack subject matter jurisdiction over this action as there is no federal question and incomplete diversity of citizenship exists due to the presence of one or more California defendants.  Removal is improper.  Every claim arising under the constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or any officer of the U.S. or any agency acting under him occurring under color of such office). . . . Plaintiff specifically disclaims any federal . . . claim that would give rise to federal jurisdiction.

(Compl. ¶3.)  Moreover, Plaintiff recites that, to the extent any of Plaintiff's asbestos exposure took

1  place on a federal enclave, military vessel, or in the construction, repair or maintenance of a military

2  vessel or aircraft, Plaintiff's negligence claims are based solely on a theory of failure to warn. (*Id.*)

3      Plaintiff contends that irrespective of Leslie Control's arguments under the federal officer

4  removal statute, removal is improper because Plaintiff expressly disclaimed any claim arising under

5  federal law in his complaint. (Mot. at 17-18.)  Citing *Westbrook v. Asbestos Defendants*, 2001 WL

6  902642 (N.D. Cal. 2001), *Shild v. A.P. Green Indus., Inc.*, 2002 WL 102608 (N.D. Cal. 2002), and

7  *Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal. 1996), Plaintiff argues the use of such

8  disclaimers operates to defeat removal in asbestos cases because as the Plaintiff he is free to elect what

9  law he will rely upon. (*Id.*, at 17-18; Reply at 18.)

10      Under § 1442(a), "suits against federal officers may be removed despite the nonfederal cast of

11  the complaint; the federal-question element is met if the *defense* depends on federal law." *Jefferson*

12  *County v. Acker*, 527 U.S. 423, 431 (1999) (emphasis added).  Plaintiff maintains that he has waived

13  any claims raising a federal question, because "any act or omission by [Leslie Controls] at the direction

14  of [the Navy] is not the subject of this suit." (Mot. at 17.)  Plaintiff's argument is flawed because it

15  presupposes that Leslie Controls is not entitled to a federal contractor defense.  "One of the most

16  important reasons for [federal officer] removal is to have the validity of the defense . . . tried in a

17  federal court." *Willingham v. Morgan*,  395 U.S. 402, 407 (1969).  Thus, if Leslie Controls satisfies

18  *Mesa*, Plaintiff's disclaimers have no effect on the propriety of removal.

19      3.    **Removal Under § 1442(a)**

20      Leslie Controls contends that removal is proper because it satisfies *Mesa*.  Plaintiff contends

21  Leslie Controls does not satisfy *Mesa*, because it fails to offer credible evidence demonstrating that

22  it acted at the specific direction of the Navy to omit warnings about the dangers of asbestos exposure.

23      *a.*    *Acts Under the Direction of a Federal Officer*

24      A private party defendant satisfies *Mesa's* first prong – acts under the direction of a federal

25  officer – upon a showing it "assist[ed] or help[ed] to carry out the duties or tasks of a federal superior."

26  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 127 S.Ct. 2301, 2307 (2007).  Such assistance

27  establishes a "special relationship" between the contractor and the federal government involving

28  "subjection, guidance, or control" that is sufficient to support removal. *Id.*, at 2307, 2310.

1     Defendants provide sufficient evidence that Leslie Controls acted under the direction of the

2  federal government.  Leslie Controls manufactured valves for Naval vessels, and Rear Adm. Horne

3  testifies that "in each and every instance where Leslie contracted with the [Navy] for the provision of

4  equipment, the [Navy] exercised discretion or control over the design, manufacture, inspection and

5  testing of all such equipment." (Horne Decl. ¶17.)  Pursuant to the terms of all contracts between

6  Leslie Controls and the Navy, "the Navy retained authority to direct and control the performance under

7  the terms of the contract." (*Id.*)  Moreover, "[t]he Navy had complete control over aspect of each piece

8  of equipment" through detailed specifications that governed the design and manufacturing of the

9  equipment itself, as well as written materials accompanying the equipment, such as operating manuals,

10  safety and hazard information and precautionary labeling.  (*Id.* at ¶¶15-16.)  Similarly, Mr. Wrobel

11  testifies that the Navy exercised "direction and control" over the design, manufacture, inspection and

12  testing of all equipment.  (Wrobel Decl. ¶15.)  Navy personnel had the authority to inspect, accept or

13  reject equipment and to halt production if the equipment did not meet the Navy's specifications.  (*Id.*

14  at ¶9.)  Finally, if the Navy did detect deficiencies in the procured equipment, it "directed and

15  controlled [Leslie Controls] in formulating a response to correct any such deficiencies." (*Id.* at ¶12.)

16     Indeed, these activities occurred in the context of Leslie Controls furnishing and fabricating

17  valves and related equipment for Navy vessels under contract from the 1940s to 1960s.  Those vessels

18  were used to perform the Navy's various war and peacetime missions.  If Leslie Controls (or any other

19  contractor) had not provided the equipment, the Navy would have had to produce those valves by

20  itself.  This "special relationship" is on all fours with the Supreme Court's example in *Watson*:

21     The assistance that private contractors provide federal officers goes beyond simple
      compliance with the law and helps officers fulfill other basic governmental tasks.  In
22     the context of [*Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir.
      1998)], for example, Dow Chemical fulfilled the terms of a contractual agreement by
23     providing the Government with a product that it used to help conduct a war.  Moreover,
      at least arguably, Dow performed a job that, in the absence of a contract with a private
24     firm, the Government itself would have had to perform.

25  127 S. Ct. at 2308.  Accordingly, this prong is met.

26          *b.    Colorable Federal Defense*

27     To meet the second prong of the *Mesa* test, Leslie Controls must show that it has a colorable

28  federal defense. 489 U.S. at 128.  A defense may be colorable even if the court ultimately rejects it.

09-cv-0101

1   *Jefferson County*, 527 U.S. at 431; *see Willingham*, 395 U.S. at 407 (federal "officer need not win his

2   case before he can have it removed").  The government contract defense shields contractors from state

3   tort liability for defects in military equipment supplied to the United States when "(1) the United States

4   approved reasonably precise specifications; (2) the equipment conformed to those specifications; and

5   (3) the supplier warned the United States about the dangers in the use of the equipment that were

6   known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512

7   (1988).  The Ninth Circuit clarified *Boyle's* application to failure to warn claims in *Butler v. Ingalls*

8   *Shipbuilding, Inc.*, where it held the defense "inapplicable . . . in the absence of evidence that . . .

9   [defendant] was acting in compliance with reasonably precise specifications imposed on [it] by the

10   United States." 89 F.3d 582, 586 (9th Cir. 1996) (quotations omitted).

11          According to Plaintiff, Leslie Controls "must in fact show that as a result of following a

12   directive or order from the government it was prevented from fulfilling its state law duty to warn."

13   (Reply at 4.) Citing *Overly v. Raybestos-Manhattan*, Plaintiff argues that removal is only proper upon

14   a showing that "the government affirmatively instructed it regarding the provision of warnings." 1996

15   WL 532150, *4 (N.D. Cal. 1996).  Plaintiff argues Leslie Controls' evidence is insufficient because

16   the declarants fail to identify precise specifications on asbestos warnings.  At most, Plaintiff argues

17   Mr. Wrobel's declaration establishes that "at no time did the Navy instruct Leslie Controls *not to warn*

18   of the dangers of asbestos." (*Id.* at 8.)

19          Plaintiff's argument is unavailing.  First, the Court notes that *Overly* was decided before

20   *Durham,* and thus, its reasoning is questionable.  *Compare Overly,* 1996 WL 532150, *2 ("[federal

21   officer] removal statute is strictly construed against removal jurisdiction and doubt is resolved in favor

22   of remand") *with Durham,*  445 F.3d at 1253 ("when federal officers and their agents are seeking a

23   federal forum, we are to interpret section 1442 broadly in favor of removal").  Second, both *Butler,*

24   89 F.3d at 586 and *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 813 (9th Cir. 1992), state that

25   for the federal contractor defense to apply *on the merits,* a defendant must show that it "act[ed] in

26   compliance with reasonably precise specifications imposed on [it] by the United States." Here, Rear

27   Adm. Horne testifies that "the Navy controlled the decision making with respect to instructions and

28   warnings on every piece of equipment." (Horne Decl. ¶15.)  The Navy "determined the nature of

1   hazards to be subject to any precautionary labeling and the content of any such labeling." (*Id.* at ¶16.)

2   Because the Navy "would not, and could not, permit" a contractor to place warnings on any equipment

3   that might interfere with the Navy's mission, and "the Navy dictated every aspect of . . . warnings

4   associated with its ships, it did not permit deviation from any of its contractors." (*Id.* at ¶14.) This

5   testimony is corroborated by Mr. Wrobel, who testifies that the "Navy has precise specifications,

6   practices, and procedures that governed the content of any communication affixed to machinery

7   supplied by Leslie [Controls] to the Navy as shown on approved Navy drawings." (Wrobel Decl. ¶14.)

8   "At no time did the [Navy] instruct Leslie Controls to affix warnings or caution statements regarding

9   asbestos hazards to a piece of equipment intended for installations onto a [Navy] vessel."[2] (*Id.*) The

10  inference to be drawn from this evidence is that Leslie Controls' alleged failure to warn resulted from

11  compliance with the Navy's specifications, which precluded any such warning.

12        Plaintiff attempts to rebut this inference by submitting the Navy's "Uniform Labeling Program

13  for Hazardous Industrial Chemicals and Materials," dated September 24, 1956. ("Uniform Labeling

14  Program," Gardner Decl. Ex. D.) According to Plaintiff, this instruction details labeling for hazardous

15  products supplied to the Navy, and the instruction specifically states that it does not govern the type

16  of labeling required by "State and Federal laws and regulations." (*Id.* at ¶2(a).) Because this program

17  does not trump labels required by state law, Plaintiff argues the Navy did not intend for Leslie Controls

18  to omit all warnings on its products. (Reply at. 7.) However, this instruction does not apply to

19  products containing asbestos, as its stated purpose "is to standardize . . . labeling requirement for

20  hazardous *chemical* products." (Uniform Labeling Program, ¶1.) Plaintiff fails to rebut the inference

21  to be drawn from Leslie Controls' evidence.

22        Leslie Controls also satisfies the last two *Boyle* prongs, *i.e.,* whether its product complied with

23  the Navy's specifications and whether Leslie Controls knew more about asbestos hazards than the

24  Navy. Mr. Wrobel's testimony establishes that the Navy had the authority to reject any equipment that

25  was not up to its specifications. (Wrboel Decl. ¶¶9, 12.) From this, the inference can be drawn that,

26  if Plaintiff was exposed to asbestos from Leslie Controls' valves while on board a Navy vessel, the

27

28        [2]  Plaintiff objects to this portion of Mr. Wrobel's testimony under "the best evidence rule,"
    Fed. R. Evid. 1002.  However, Mr. Wrobel is not attempting to prove the content of a particular
    specification; rather his testimony is based on his personal knowledge.

09-cv-0101

1   valves necessarily met Navy specifications. *Machnik v. Buffalo Pumps Inc.*, 506 F.Supp.2d 99, 103

2   (D. Conn. 2007). Finally, Leslie Controls submits evidence that the Navy's knowledge of the asbestos

3   hazards on board its vessels and in its supply yards was "state-of-the-art" during relevant periods of

4   Plaintiff's alleged exposure. (*See* Declaration of Gerald Kerby, M.D. ¶¶23, 27 and Declaration of

5   Ernani D. Storlazzi ¶¶40-41.) The Navy, according to this evidence, would have known of any

6   dangers that were known to Leslie Controls. *See Nesbiet v. General Electric Co.*, 399 F.Supp.2d 205,

7   212 (S.D.N.Y. 2005). The Court concludes Leslie Controls has presented a colorable federal defense

8   sufficient for purposes of removal.

9            c.   *Causal Nexus*

10           Finally, to show the existence of a "causal nexus," Leslie Controls must show that Plaintiff's

11   claims "[arose] out of the acts done by [the defendant] under color of federal authority." *Mesa*, 489

12   U.S. at 131-32. Plaintiff's claims against Leslie Controls pertain to the warnings (or lack thereof)

13   affixed to valves produced pursuant to strict Naval specifications. Any warnings promulgated (or not

14   promulgated) with respect to the valves were governed by those specifications and "the Navy did not

15   permit contractors to deviate from any of its specifications." (Opp. at 13.) Nevertheless, Plaintiff

16   argues that the causal nexus is not met because Leslie Controls fails to show any conflict between the

17   Navy's specifications and state law, as required by *Boyle*. (Mot. at 16.) Assuming such a conflict is

18   necessary to this analysis, it is plain that "the Navy's control over warnings directly interfered with

19   [Leslie Controls'] ability to fulfill its state law obligation to warn about the dangers of asbestos."

20   *Nesbiet*, 399 F.Supp.2d at 212. Accordingly, Leslie Controls has established a sufficient causal nexus

21   for purposes of this motion.

22   **C.   Conclusion**

23           The Court finds that Leslie Controls has met its burden to remove this action. Accordingly,

24   Plaintiff's motion to remand is DENIED.

25   **IT IS SO ORDERED.**

26   DATED: March 25, 2009

27

28

                                            HON. DANA M. SABRAW
                                            United States District Judge

09-cv-0101