# EXHIBIT  11

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Karen Park | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Remand filed by plaintiffs Edgardo R. Salamante and Nola Salamante ("Plaintiffs") (Docket No. 26). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for September 22, 2008, is vacated, and the matter taken off calendar.

Plaintiffs allege claims for negligence, breach of warranty, strict liability, and loss of consortium arising out of Mr. Salamante's exposure to asbestos-containing products manufactured, fabricated, installed, or otherwise distributed by defendants. Specifically, Plaintiffs' claims that defendants violated their obligations imposed under state law to warn Mr. Salamante of the dangers associated with their asbestos-containing products. Plaintiffs allege that Mr. Salamante was exposed to the asbestos contained in defendants' products between 1957 and 1996 when he was a steward aboard various United States Navy vessels, as well as a shipwright and mechanic at the Long Beach Naval Shipyard in Long Beach, California. Plaintiffs commenced the action in Los Angeles Superior Court on June 2, 2008 and served defendant Foster Wheeler Energy Corp. ("Foster Wheeler") on June 19, 2008. Foster Wheeler removed the action to this Court on July 17, 2008. Foster Wheeler based its Notice of Removal on 28 U.S.C. § 1442(a)(1)'s federal officer removal statute. 28 U.S.C. § 1442(a) provides, in relevant part:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a).

Suits against federal officers are an exception to the general rule that a case is removable only if the federal question appears on the face of a properly pleaded complaint. See Jefferson County v.

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075, 144 L. Ed. 2d 408 (1999). "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Id. "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting Jefferson County, 527 U.S. at 431, 119 S. Ct. at 2075, and citing Mesa v. California, 489 U.S. 121, 124–25, 131–35, 109 S. Ct. 959, 962, 965–67, 103 L. Ed. 2d 99 (1989)).

In establishing the propriety of removal under the federal officer removal statute, the defendant need not prove a valid federal defense, only a colorable defense:

> In construing the colorable federal defense requirement, we have rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." We therefore do not require the officer virtually to "win his case before he can have it removed."

Jefferson County, 527 U.S. at 431, 119 S. Ct. at 2075 (quoting Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969)). Indeed, unlike other removal statutes, which are to be interpreted strictly, "the Supreme Court has mandated a generous interpretation of the federal officer removal statute . . . ." Durham, 445 F.3d at 1252. The Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" Arizona v. Manypenny, 451 U.S. 232, 242, 101 S. Ct. 1657, 1664, 68 L. Ed. 2d 58 (1981) (quoting Willingham, 395 U.S. at 407, 89 S. Ct. at 1816); see also Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").[1]

---

[1] Plaintiffs argue that Foster Wheeler, a private actor, has a "special burden" in establishing the official nature of its activities, relying on Williams v. General Elec. Co., 418 F. Supp. 2d 610, 614 (M.D. Pa. 2005) (citing Freiberg v. Swinerton & Walberg Prop. Servs., Inc., 245 F. Supp. 2d 1144, 1150 (D. Colo. 2002). Plaintiffs cite no Ninth Circuit case for this proposition. On the contrary, in Durham, discussed above, the Ninth Circuit found that a broad interpretation of the federal officer removal statute was appropriate as applied to a government contractor. See 445 F.3d at 1252. In the absence of binding authority to the contrary, the Court follows the Ninth Circuit's articulation of the appropriate interpretation of the statute. See id.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

In removing the action pursuant to the federal officer removal statute, Foster Wheeler claims that it is entitled to assert the "military contractor defense." The military contractor defense shields contractors from liability for state tort law for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Tech. Corp., 487 U.S. 500, 512, 108 S. Ct. 2510, 2518, 101 L. Ed. 2d 442 (1988). Although originally developed in the design defect context, the military contractor defense also applies in cases where a plaintiff alleges that the government contractor breached a state law duty to warn of potential dangers. In actions alleging a failure to warn claim against a military contractor, the supplier cannot be liable when it can show: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003–04 (7th Cir. 1996); see also In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 813 (9th Cir. 1992).

Plaintiffs argue in their Motion to Remand that they have disclaimed any claim that could allow this Court to exercise jurisdiction pursuant to the federal officer removal statute. Specifically, the Complaint alleges:

> Plaintiff specifically disclaims any federal cause of action or any claim that would give rise to federal jurisdiction. To the extent that any of Plaintiff's asbestos exposure took place on a federal enclave, or to the extent that any of Plaintiff's asbestos exposure occurred on board vessels of the United States military (including Naval ships) or in the construction, maintenance and/or repair of United States military vessels and/or aircraft, Plaintiff's negligence claims against manufacturers, sellers and suppliers of asbestos-containing products installed on such vessels and/or aircraft are not based on the theory of defective design, but rather are based only on the theory of failure to warn. Since there is no evidence that the United States Government, or any of its military branches, specifically instructed manufacturers from which it purchased asbestos-containing products not to warn about the health hazards associated with exposure to asbestos, there can be no valid claim to federal jurisdiction pursuant to federal enclave, federal officer or federal contractor provisions of the United States Code. This disclaimer pertains to all of plaintiffs' claims, including those of negligence and products liability, as asserted herein.

(Complaint, ¶ 4.) Despite their purported disclaimer, Plaintiffs specifically seek damages from defendants for exposure to asbestos Mr. Salamante may have come in contact with while he served on

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

various United States Navy vessels, as well as at the Long Beach Naval Shipyard.  First, because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiffs' disclaimer nor its characterization of their claims are determinative.  See Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007) ("[Plaintiff's] argument that the suit must be remanded because his complaint disclaimed any federal claims is unavailing . . . . Subject matter jurisdiction under § 1442(a)(1) is based upon a federal defense, regardless of whether the plaintiff's cause of action rests on state law. . . . [O]nce [Defendant] meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction."); Ballenger v. Agco Corp., No. C 06-2271 CW, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007) (denying motion to remand despite complaint's disclaimer of "any claim arising from any act or omission of the United States, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States").  Moreover, Plaintiffs' disclaimer is based on an alleged lack of evidence by the defendants that the government prevented the defendants from providing warnings regarding asbestos-related health hazards.  To the extent that Foster Wheeler does have such evidence, Plaintiffs' disclaimer is ineffective for this reason as well.

In their Motion to Remand, Plaintiffs state that their "complaint contains causes of action limited to state-based failure to warn claims."  (Motion to Remand, p. 7, ll. 27–28.)  Plaintiffs argue that Foster Wheeler has not met its burden to establish the existence of a valid federal defense to Plaintiffs' claims.  Specifically, while conceding that Foster Wheeler is a "person" within the meaning of § 1442(a)(1), Plaintiffs contend that Foster Wheeler has not demonstrated that it can assert either a "causal nexus" between its actions taken at the direction of a federal officer and Plaintiffs' claims or a "colorable federal defense" based on military contractor immunity.  See Durham, 445 F.3d at 1251.  According to Plaintiffs, absent evidence of specific facts that Foster Wheeler was prevented from placing warnings on its products, Foster Wheeler cannot meet its burden to prove either the requisite causal nexus or the applicability of the military contractor defense.  Contrary to Plaintiffs' assertions, however, Foster Wheeler's burden at this stage of the proceedings is not so exacting.

To establish their military contractor defense, defendants rely in large part on the declarations of J. Thomas Schroppe, Ben Lehman, and Lawrence Betts.  Schroppe is a retired engineer who worked at Foster Wheeler from 1962 to 1999.  Lehman is a retired Rear Admiral, who joined the Navy in 1942 and served as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944 and as Ship Superintendent at the San Francisco Naval Shipyard from 1952 to 1954.  Lehman also worked as an engineer at GE from 1946 to 1948.  Betts, a physician, served in the Navy from 1972 until 2001 when he retired with the rank of Captain.

Lehman's declaration indicates that during the period during Mr. Salamante's service in the Navy, "the U.S. Navy had complete control over every aspect of every piece of equipment" used on Navy ships.  (Lehman Decl., ¶ 10.)  According to Lehman:

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

Military specifications governed every significant characteristic of the equipment used on U.S. Navy Ships, including instructions and warnings. Drawings for nameplates, the texts of instruction manuals, and every other document relating to the construction, maintenance, and operation of the vessel was approved by the U.S. Navy. This control included the decision of what warnings should or should not be included. Thus, the U.S. Navy controlled the decisions with regard to instructions and warnings on every piece of equipment. The U.S. Navy would not, and could not, permit any equipment manufacturer or supplier to interfere with the Navy's mission by placing warnings on any equipment [or in any instructions or manuals with accompanied the equipment] on any U.S. Navy ships or in any shipyards in which U.S. Navy Ships were built or repaired that might cause Sailors or workers to deviate from their mission . . . .

In addition to specifications for the design and manufacture of the equipment itself, the U.S. Navy also had detailed specifications that governed the form and content of the written materials to be delivered with the equipment, including boilers, to be supplied to the U.S. Navy. . . . In short, the U.S. Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors.

The U.S. Navy would never permit a supplier to suggest, advise, or require any actions that would be disruptive to the normal operation of the ship in its primary function of defending our Country. . . . Any written material regarding procedures for working around boilers that differed would have interfered with the normal and necessary operations of U.S. Navy ships. Indeed, in its specifications for manuals the U.S. Navy specifically limited warning information to items and events dealing with the operation of equipment. By definition, the application or removal of insulation would have been included.

. . . .

The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to asbestos hazards on their equipment. This would have included boilers. Further, the U.S. Navy would not have allowed Foster Wheeler to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor in accordance with its contracts, including its technical operations manuals. To do so would have

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

interfered with the U.S. Navy's mission and control of its ships and personnel.

(Lehman Decl., ¶¶ 10–14 (first alteration in original).)  In reviewing a similar declaration submitted by Lehman, the court in Nesbiet v. General Elec. Co. concluded that Lehman's declaration raised "the inference that GE did not provide a warning concerning the dangers of asbestos because the Navy did not permit any such warning." 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005).

Schroppe, who is personally familiar with the degree of supervision and control exercised by the Navy in procurement contracts with Foster Wheeler for boilers and other auxiliary equipment, stated that technical manuals accompanying naval boilers "included safety information related to the operation of naval boilers only to the extent directed by the Navy."  (Schroppe Decl., ¶ 21.)

> Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy.  Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

(Id., ¶ 22.)  Although the Lehman and Schroppe Declarations may not establish the absence of a triable issue of fact with respect to the first two prongs of the Boyle test, as modified by Oliver for a failure to warn claim, Foster Wheeler need not prove so much at this preliminary stage of the proceedings.  See Oliver, 96 F.3d at 1003 (applying military contractor defense when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government . . . .").  Again, to establish the propriety of their removal, Foster Wheeler must only show a "colorable" federal defense, not a winning one.

The third prong of the military contractor defense requires the contractor to have "warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Id. at 1004.  Defendants rely on the Betts Declaration to meet this third factor of the Boyle test.  Through his training and experience, Betts became familiar with "the history and practice of the Navy occupational health program from its early days before World War II until the present time." (Betts Decl., ¶ 2.)  According to Betts, the "Navy's knowledge regarding the applications of asbestos and the health effects represented the state of the art.  During the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos-containing products on a marine steam boiler on United States Navy ships known by a boiler manufacturer, like Foster Wheeler, that were not known by the United States and the United States Navy."  (Id., ¶ 31.)  Based upon the Betts Declaration, Foster Wheeler has provided sufficient evidence that there were no dangers known by

Case MDL No. 875 Document 7717-11 Filed 09/22/2008 Page 2 of 87
Case 2:08-cv-04674-PA-JTL Document 40 Filed 09/22/2008 Page 7 of 7

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-4674 PA (JTLx) | Date | September 22, 2008 |
|---|---|---|---|
| Title | Edgardo Salamante, et al. v. Quintec Indus., Inc., et al. | | |

it that were not known by the government.  See Nesbiet, 399 F. Supp. 2d at 209 ("[A]ccording to Betts's affidavit, [Defendant] could not have possessed any information regarding the dangers posed by the use of asbestos-containing products in marine steam turbines that was not already known by the U.S. Navy.").

The Court therefore concludes that Foster Wheeler has met its burden, at this stage of the proceedings, to establish a "colorable" military contractor defense for purposes of removal under 1442(a)(1).[2/]  The Court also finds that Foster Wheeler has submitted sufficient evidence of a "causal nexus" between Plaintiffs' claims and the actions Foster Wheeler took at the direction of a federal officer.  As did the court in Nesbiet, this Court finds that Foster Wheeler's evidence "is sufficient for purposes of section 1442(a) to demonstrate that the Navy's control over warnings directly interfered with [Defendant's] duty to warn under state law.  Thus, [Defendant] has satisfied the 'causal nexus' requirement."  Id. at 213.

For all of the foregoing reasons, the Court finds that defendants have raised a "colorable" federal defense to the claims alleged in Plaintiffs' Complaint.  As a result, Foster Wheeler's removal pursuant to § 1442(a)(1) was proper.  Plaintiffs' Motion to Remand is therefore denied.

In its Opposition, Foster Wheeler asks that the Court stay determination of the Motion to Remand pending a decision by the Multidistrict Litigation Panel whether to transfer this case to the Eastern District of Pennsylvania as a potential "tag-along action" to MDL No. 875.  The Court notes that Foster Wheeler did not move for a stay, but rather simply asked for one in its Opposition.  Foster Wheeler argues that a stay would serve judicial economy.  The Court, however, finds that judicial economy would best be served by moving this case forward so it may be litigated in the proper forum.  Determining that federal jurisdiction exists appears to be an appropriate prerequisite to determining which federal forum is best.  The Court therefore denies Foster Wheeler's request for a stay.

IT IS SO ORDERED.

---

[2/]     The Court recognizes that when faced with arguably similar evidence, other courts have reached a different result.  See, e.g., Barrett v. CLA-VAL Co., Case No. 07-7774 PSG (FFMx) (C.D. Cal. Feb. 5, 2008); Hilbert v. McDonnell Douglas Corp., No. 07CV11900-NG, 2008 WL 53266 (D. Mass. Jan. 3, 2008).  The Court declines to follow these cases because, in the Court's view, they place too high a burden on a defendant to prove its military contractor defense at such an early stage in the litigation.  Given the liberality with which removals under § 1442 are to be considered, this more exacting standard appears to conflict with Ninth Circuit precedent.  See Durham, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").