**U.S. District Court**
**District of New Jersey [LIVE] (Newark)**
**CIVIL DOCKET FOR CASE #: 2:11-cv-04078-FSH -PS**

| | |
|---|---|
| ROBINSON, et al v. AIR & LIQUID SYSTEMS CORPORATION et al | Date Filed: 07/13/2011 |
| Assigned to: Judge Faith S. Hochberg | Jury Demand: Both |
| Referred to: Magistrate Judge Patty Shwartz | Nature of Suit: 368 P.I. : Asbestos |
| Cause: 28:1332 Diversity-Product Liability | Jurisdiction: Diversity |

**Plaintiff**

**WILLIAM J. ROBINSON**                            represented by    **ROBERT E. LYTLE**
SZAFERMAN, LAKIND, BLUMSTEIN &
BLADER, PC
QUAKERBRIDGE EXECUTIVE CENTER
101 GROVERS MILL ROAD
SUITE 200
LAWRENCEVILLE, NJ 08648
(609) 275-0400
Email: rlytle@szaferman.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**GAIL A. ROBINSON**                            represented by    **ROBERT E. LYTLE**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AIR & LIQUID SYSTEMS**
**CORPORATION**
*as successor by merger to Buffalo Pumps, Inc.*

**Defendant**

**ALLIED CHEMICAL CORPORATION**
*formerly known as*
GENERAL CHEMICAL

**Defendant**

**A.O. SMITH CORPORATION**
*doing business as*
A.O. SMITH WATER PRODUCTS
COMPANY

**Defendant**

**ARMSTRONG INTERNATIONAL, INC.**

**Defendant**

**CARRIER CORPORATION**
*also known as*
BRYANT MANUFACTURING
CORPORATION

**Defendant**

**CBS CORPORATION**
*formerly known as*
VIACOM, INC., successor by merger to CBS
CORPORATION f/k/a WESTINGHOUSE
ELECTRIC CORPORATION

represented by **CHARLES F. FORER**
ECKERT SEAMANS CHERIN &
MELLOTT, LLCOHHOLM & EWING, PC
TWO LIBERTY PLACE
50 SOUTH 16TH STREET, 22ND FLOOR
PHILADELPHIA, PA 19102
(215) 851-8400
Fax: (215) 851-8383
Email: cforer@eckertseamans.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**COMPUDYNE CORPORATION**
*individually and as successor to York-Shipley*

**Defendant**

**CRANE CO.**

**Defendant**

**CRANE PUMPS & SYSTEMS, INC.**

**Defendant**

**CROWN CORK & SEAL CO.**

**Defendant**

**FLOWSERVE**
*individually and as successor to Durco Pumps*

**Defendant**

**FMC CORPORATION**
*individually and as succesor to Northern Pump
Company and Peerless Pumps*

represented by **W. MATTHEW REBER**
KELLEY, JASONS, MCGUIRE &
SPINELLI, L.L.P.
SUITE 1500
CENTRE SQUARE WEST
1500 MARKET STREET
PHILADELPHIA, PA 19102
(856) 522-0174
Email: mreber@kjmsh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**FOSTER WHEELER ENERGY CORP.**

**Defendant**

**GARDNER DENVER, INC.**

**Defendant**

**GENERAL ELECTRIC, INC.**

**Defendant**

**GEORGIA- PACIFIC LLC**

**Defendant**

**GOULDS PUMPS INCORPORATED**

**Defendant**

**HONEYWELL INTERNATIONAL, INC.**
*formerly known as*
ALLIED SIGNAL, INC. as successor-in-
interest to Allied Chemical Corporation,
General Chemical anf The Bendix Corporation

**Defendant**

**IMO INDUSTRIES, INC.**
*individually and as successor-in-interest to*
*and*
*formerly known as*
DELAVAL TURBINE, TRANSAMERICA
DELAVAL

**Defendant**

**INGERSOLL-RAND COMPANY**          represented by **LISA PASCARELLA**
                                                    PEHLIVANIAN BRAATEN &
                                                    PASCARELLA L.L.C.
                                                    2340 RT. 34
                                                    PO BOX 648
                                                    MANASQUAN, NJ 08736
                                                    732 588-8888
                                                    Email: km@pehli.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**LABOUR PUMP CO.**

**Defendant**

**MAGNATROL VALVE CORP.**

**Defendant**

**NATIONAL AUTOMOTIVE PARTS**
**ASSOCIATION**

**Defendant**

**ROCKWELL INTERNATIONAL CORP.**

**Defendant**

**SPIRAX SARCO, INC.**

**Defendant**

**TRANE U.S. INC.**          represented by **LISA PASCARELLA**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Defendant**

Case MDL No. 875   Document 7730-3   Filed 08/22/11   Page 4 of 50

**UNION CARBIDE CORP.**

**Defendant**

**WOOLSULATE CORP.**

**Defendant**

**YARWAY CORPORATION**

**Cross Claimant**

**CBS CORPORATION**                    represented by **CHARLES F. FORER**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**GAIL A. ROBINSON**                   represented by **ROBERT E. LYTLE**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**WILLIAM J. ROBINSON**                represented by **ROBERT E. LYTLE**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/13/2011 | 1 | COMPLAINT against A.O. SMITH CORPORATION, AIR & LIQUID SYSTEMS CORPORATION, ALLIED CHEMICAL CORPORATION, ARMSTRONG INTERNATIONAL, INC., CARRIER CORPORATION, CBS CORPORATION, COMPUDYNE CORPORATION, CRANE CO., CRANE PUMPS & SYSTEMS, INC., FLOWSERVE, FMC CORPORATION, FOSTER WHEELER ENERGY CORP., GARDNER DENVER, INC., GENERAL ELECTRIC, INC., GEORGIA- PACIFIC LLC, NATIONAL AUTOMOTIVE PARTS ASSOCIATION, ROCKWELL INTERNATIONAL CORP., CROWN CORK & SEAL CO., SPIRAX SARCO, INC., TRANE U.S. INC., UNION CARBIDE CORP., WOOLSULATE CORP., YARWAY CORPORATION ( Filing fee $ 350 receipt number 3828148.) JURY DEMAND., filed by WILLIAM J. ROBINSON. (Attachments: # 1 Civil Cover Sheet)(dr, ) Modified on 7/29/2011 (nic). (Entered: 07/19/2011) |
| 07/22/2011 | 2 | SUMMONS ISSUED as to A.O. SMITH CORPORATION, AIR & LIQUID SYSTEMS CORPORATION, ALLIED CHEMICAL CORPORATION, ARMSTRONG INTERNATIONAL, INC., CARRIER CORPORATION, CBS CORPORATION, COMPUDYNE CORPORATION, CRANE CO., CRANE PUMPS & SYSTEMS, INC., FLOWSERVE, FMC CORPORATION, FOSTER WHEELER ENERGY CORP., GARDNER DENVER, INC., GENERAL ELECTRIC, INC., GEORGIA- PACIFIC LLC, GOULDS PUMPS INCORPORATED, HONEYWELL INTERNATIONAL, INC., IMO INDUSTRIES, INC., INGERSOLL-RAND COMPANY, LABOUR PUMP CO., MAGNATROL VALVE CORP., NATIONAL AUTOMOTIVE PARTS ASSOCIATION, ROCKWELL INTERNATIONAL CORP., CROWN CORK & SEAL CO., SPIRAX SARCO, INC., TRANE U.S. INC., UNION CARBIDE CORP., WOOLSULATE CORP., YARWAY CORPORATION Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. Issued By *Marie S. Nunes* (mn, ) Modified on 7/29/2011 (nic). (Entered: 07/22/2011) |
| 08/10/2011 | 3 | AMENDED COMPLAINT against All Defendants All Defendants., filed by GAIL A. |

| | | |
|---|---|---|
| | | ROBINSON, WILLIAM J. ROBINSON. (Attachments: # 1 Certificate of Service)(LYTLE, ROBERT) (Entered: 08/10/2011) |
| 08/12/2011 | 4 | AFFIDAVIT of Service for Complaint and Summons served on A.O. Smith Corporation on 8/01/2001, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 5 | AFFIDAVIT of Service for Complaint and Summons served on Air & Liquid Systems Corporation on 8/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 6 | AFFIDAVIT of Service for Complaint and Summons served on Armstrong International, Inc. on 8/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 7 | AFFIDAVIT of Service for Complaint and Summons served on Carrier Corporation on 7/29/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 8 | AFFIDAVIT of Service for Complaint and Summons served on CBS Corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation on 8/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 9 | AFFIDAVIT of Service for Complaint and Summons served on Crane Co. on 8/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 10 | AFFIDAVIT of Service for Complaint and Summons served on Crown Cork & Seal Co. on 08/02/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 11 | AFFIDAVIT of Service for Complaint and Summons served on Flowserve, individually and as successor to Durco Pumps on 07/29/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 12 | AFFIDAVIT of Service for Complaint and Summons served on FMC Corporation, individually and as successor to Northern Pump Company and Peerless Pumps on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 13 | AFFIDAVIT of Service for Complaint and Summons served on Foster Wheeler Energy Corp. on 08/02/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 14 | AFFIDAVIT of Service for Complaint and Summons served on Gardner Denver, Inc. on 8/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 15 | AFFIDAVIT of Service for Complaint and Summons served on General Electric, Inc. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 16 | AFFIDAVIT of Service for Complaint and Summons served on Georgia-Pacific LLC on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 17 | AFFIDAVIT of Service for Complaint and Summons served on Goulds Pumps Incorporated on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| | | |

| 08/12/2011 | 18 | AFFIDAVIT of Service for Complaint and Summons served on Honeywell International, Inc. f/k/a Allied Signal, Inc., as successor-in-interest to Allied Chemical Corporation, General Chemical, and The Bendix Corporation on 08/02/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| --- | --- | --- |
| 08/12/2011 | 19 | AFFIDAVIT of Service for Complaint and Summons served on IMO Industries, Inc., individually and as successor-in-interest to and f/k/a Delaval Turbine, Transamerica Delaval on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 20 | AFFIDAVIT of Service for Complaint and Summons served on Ingersoll-Rand Company on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 21 | AFFIDAVIT of Service for Complaint and Summons served on Magnatrol Valve Corp. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 22 | AFFIDAVIT of Service for Complaint and Summons served on National Automotive Parts Association on 7/29/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 23 | AFFIDAVIT of Service for Complaints and Summons served on Rockwell International Corp. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 24 | AFFIDAVIT of Service for Complaint and Summons served on Spirax Sarco, Inc. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 25 | AFFIDAVIT of Service for Complaint and Summons served on Trane U.S. Inc. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 26 | AFFIDAVIT of Service for Complaint and Summons served on Union Carbide Corp. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 27 | AFFIDAVIT of Service for Complaint and Summons served on Woolsulate Corp. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 28 | AFFIDAVIT of Service for Complaint and Summons served on Yarway Corporation on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 29 | AFFIDAVIT of Service for Complaint and Summons served on Crane Pumps & Systems, Inc. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/12/2011 | 30 | AFFIDAVIT of Service for Complaint and Summons served on LaBour Pump Co. on 08/01/2011, filed by GAIL A. ROBINSON, WILLIAM J. ROBINSON. (LYTLE, ROBERT) (Entered: 08/12/2011) |
| 08/15/2011 | 31 | ANSWER to Amended Complaint, CROSSCLAIM against All Plaintiffs by CBS CORPORATION.(FORER, CHARLES) (Entered: 08/15/2011) |
| 08/15/2011 | 32 | Corporate Disclosure Statement by CBS CORPORATION. (FORER, CHARLES) (Entered: 08/15/2011) |

| 08/16/2011 | 33 | ANSWER to Complaint by TRANE U.S. INC..(PASCARELLA, LISA) (Entered: 08/16/2011) |
| 08/16/2011 | 34 | ANSWER to Complaint by INGERSOLL-RAND COMPANY.(PASCARELLA, LISA) (Entered: 08/16/2011) |
| 08/19/2011 | 35 | NOTICE of Appearance by W. MATTHEW REBER on behalf of FMC CORPORATION (REBER, W.) (Entered: 08/19/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/22/2011 10:13:09 | | | |
| **PACER Login:** | ld1115 | **Client Code:** | 2000-1412 |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-cv-04078-FSH -PS Start date: 1/1/1970 End date: 8/22/2011 |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Rd., Suite 200
Lawrenceville, N.J. 08648
(609) 275-0400

LEVY, PHILLIPS & KONIGSBERG
101 Grovers Mill Rd., Suite 200
Lawrenceville, N.J. 08648
(609) 720-0400

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

WILLIAM J. ROBINSON and GAIL A.
ROBINSON,

          Plaintiffs,

      -against-

AIR & LIQUID SYSTEMS CORPORATION,
as successor by merger to Buffalo
Pumps, Inc.; A.O. SMITH
CORPORATION, d/b/a A.O. Smith Water
Products Company; ARMSTRONG
INTERNATIONAL, INC.; CARRIER
CORPORATION a/k/a Bryant
Manufacturing Corporation; CBS
CORPORATION, f/k/a Viacom, Inc.,
successor by merger to CBS
Corporation, f/k/a Westinghouse
Electric Corporation; COMPUDYNE
CORPORATION, individually and as
successor to York-Shipley;
CRANE CO.; CRANE PUMPS & SYSTEMS,
INC.; CROWN CORK & SEAL CO.;
FLOWSERVE, individually and as
successor to Durco Pumps; FOSTER
WHEELER ENERGY CORP.; GARDNER
DENVER, INC.; GENERAL ELECTRIC,
INC.; GEORGIA-PACIFIC LLC; GOULDS
PUMPS INCORPORATED; HONEYWELL
INTERNATIONAL, INC. f/k/a Allied
Signal, Inc., as successor-in-
interest to Allied Chemical
Corporation, General Chemical and
The Bendix Corporation; IMO
INDUSTRIES, INC. individually and
as successor-in-interest to and

Civil Action No:
2:11-cv-04078

**FIRST AMENDED COMPLAINT
AND JURY DEMAND**

613256.1

f/k/a Delaval Turbine, Transamerica
Delval; INGERSOLL-RAND COMPANY;
LABOUR PUMP CO.; MAGNATROL VALVE
CORP.; NATIONAL AUTOMOTIVE PARTS
ASSOCIATION; ROCKWELL INTERNATIONAL
CORP.; SPIRAX SARCO, INC.; TRANE
U.S. INC.; UNION CARBIDE CORP.;
WOOLSULATE CORP.; YARWAY
CORPORATION; FMC CORPORATION,
individually and as successor to
Northern Pump Company and on behalf
of its former Peerless Pumps;
GENERAL CHEMICAL INDUSTRIAL
PRODUCTS, INC., individually d/b/a
General Chemical (Soda Ash)
Partners and as successor to
Honeywell International Inc., f/k/a
Allied Chemical Corporation; TATA
CHEMICALS, as successor to and
d/b/a General Chemical Industrial
Products, Inc.; TATA CHEMICALS
LTD., as successor to General
Chemical (Soda Ash) Partners; and
TATA CHEMICALS NORTH AMERICA, INC.,
individually and as successor-in-
interest to General Chemical
Industrial Products, Inc.; John Doe
Corporations 1-50; and John Doe
Corporations 51-75,

                                    Defendants


Plaintiffs, WILLIAM J. ROBINSON and GAIL A. ROBINSON, by
their attorneys, SZAFERMAN, LAKIND, BLUMSTEIN, & BLADER, P.C. and
LEVY PHILLIPS & KONIGSBERG, LLP, respectfully allege as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this action
under 28 U.S.C. 1332 as: (a) the matter in controversy exceeds
$75,000 exclusive of interests and costs; and (b) the matter is
between citizens of different states.

613256.1                              2

2.    Venue is proper under 28 U.S.C. 1391(a)(3) because at least one defendant is subject to personal jurisdiction in this district.

### THE PARTIES

### I.    THE PLAINTIFFS

3.    Plaintiff WILLIAM J. ROBINSON resides in Green River, Wyoming. He is a citizen of the State of Wyoming. WILLIAM J. ROBINSON was born on February 6, 1936.

4.    Plaintiff WILLIAM J. ROBINSON is married to Plaintiff GAIL A. ROBINSON. Plaintiff GAIL A. ROBINSON resides in Green River, Wyoming. She is a citizen of the State of Wyoming. GAIL A. ROBINSON was born on July 13, 1937.

### II.    THE DEFENDANTS

5.    Upon information and belief, and at all times hereinafter mentioned, Air & Liquid Systems Corporation, as successor by merger to Buffalo Pumps, Inc. (hereinafter **"Air & Liquid Systems"**) is a foreign business entity with its principal place of business located in New York. For the purposes of this Complaint, Air & Liquid Systems shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Air & Liquid Systems was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey,

has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Air & Liquid Systems designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

6. Upon information and belief, and at all times hereinafter mentioned, A.O. Smith Corporation, d/b/a A.O. Smith Water Products Company (hereinafter "A.O. Smith") is a foreign business entity with its principal place of business located in Wisconsin. For the purposes of this Complaint, A.O. Smith shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. A.O. Smith was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, A.O. Smith designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

7. Upon information and belief, and at all times hereinafter mentioned, Armstrong International, Inc. (hereinafter "**Armstrong International**") is a foreign business entity with its

4

principal place of business located in Michigan. For the purposes
of this Complaint, Armstrong International shall include the
present business entity, as well as all of its predecessor
corporations and entities as applicable. Armstrong International
was and still is a foreign corporation, duly authorized to do
business in the State of New Jersey and has, in person or through
an agent, transacted business in the State of New Jersey, has
derived revenue from goods used or consumed in the State of New
Jersey, has derived revenue from interstate and/or international
commerce, and expected or should have expected its acts to have
consequences within the State of New Jersey. At all relevant
times, Armstrong International designed, marketed, manufactured,
distributed, supplied and sold asbestos-containing products.

8.   Upon information and belief, and at all times
hereinafter mentioned, Carrier Corporation a/k/a Bryant
Manufacturing Corporation (hereinafter **"Carrier"**) is a foreign
business entity with its principal place of business located in
Connecticut. For the purposes of this Complaint, Carrier shall
include the present business entity, as well as all of its
predecessor corporations and entities as applicable. Carrier was
and still is a foreign corporation, duly authorized to do
business in the State of New Jersey and has, in person or through
an agent, transacted business in the State of New Jersey, has
derived revenue from goods used or consumed in the State of New

5

Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Carrier designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

9.   Upon information and belief, and at all times hereinafter mentioned, CBS Corporation f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation(hereinafter **"CBS"**) is a foreign business entity with its principal place of business located in Pennsylvania. For the purposes of this Complaint, CBS shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. CBS was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, CBS designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

10.   Upon information and belief, and at all times hereinafter mentioned, Compudyne Corporation, individually and as

successor to York-Shipley (hereinafter **"Compudyne"**) is a foreign business entity with its principal place of business located in Maryland. For the purposes of this Complaint, Compudyne shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Compudyne was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Compudyne designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

11.   Upon information and belief, and at all times hereinafter mentioned, Crane Co. (hereinafter **"Crane"**) is a foreign business entity with its principal place of business located in New York. For the purposes of this Complaint, Crane shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Crane was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New

Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Crane designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

12.   Upon information and belief, and at all times hereinafter mentioned, Crane Pumps & Systems, Inc (hereinafter **"Crane Pumps"**) is a foreign business entity with its principal place of business located in Ohio. For the purposes of this Complaint, Crane Pumps shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Crane Pumps was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Crane Pumps designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

13.   Upon information and belief, and at all times hereinafter mentioned, Crown Cork & Seal, Co. (hereinafter **"Crown Cork"**) is a foreign business entity with its principal place of

business located in Pennsylvania. For the purposes of this
Complaint, Crown Cork shall include the present business entity,
as well as all of its predecessor corporations and entities as
applicable. Crown Cork was and still is a foreign corporation,
duly authorized to do business in the State of New Jersey and
has, in person or through an agent, transacted business in the
State of New Jersey, has derived revenue from goods used or
consumed in the State of New Jersey, has derived revenue from
interstate and/or international commerce, and expected or should
have expected its acts to have consequences within the State of
New Jersey. At all relevant times, Crown Cork designed, marketed,
manufactured, distributed, supplied and sold asbestos-containing
products.

14.  Upon information and belief, and at all times
hereinafter mentioned, Flowserve, individually and as successor
to Durco Pumps (hereinafter **"Flowserve"**) is a foreign business
entity with its principal place of business located in New York.
For the purposes of this Complaint, Flowserve shall include the
present business entity, as well as all of its predecessor
corporations and entities as applicable. Flowserve was and still
is a foreign corporation, duly authorized to do business in the
State of New Jersey and has, in person or through an agent,
transacted business in the State of New Jersey, has derived
revenue from goods used or consumed in the State of New Jersey,

9

has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Flowserve designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

15.   Upon information and belief, and at all times hereinafter mentioned, FMC Corporation, individually and as successor to Northern Pump Company and on behalf of its former Peerless Pumps(hereinafter **"FMC"**) is a foreign business entity with its principal place of business located in Pennsylvania. For the purposes of this Complaint, FMC shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. FMC was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, FMC designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

16.   Upon information and belief, and at all times hereinafter mentioned, Foster Wheeler Energy Corp. (hereinafter

"**Foster Wheeler**") is a domestic business entity with its
principal place of business located in New Jersey. For the
purposes of this Complaint, Foster Wheeler shall include the
present business entity, as well as all of its predecessor
corporations and entities as applicable. Foster Wheeler was and
still is a domestic corporation, duly authorized to do business
in the State of New Jersey and has, in person or through an
agent, transacted business in this State, has derived revenue
from goods used or consumed in this State, has derived revenue
from interstate and/or international commerce, and expected or
should have expected its acts to have consequences within the
State of New Jersey. At all relevant times, Foster Wheeler
designed, marketed, manufactured, distributed, supplied and sold
asbestos-containing products.

  17.  Upon information and belief, and at all times
hereinafter mentioned, Gardner Denver, Inc. (hereinafter "**Gardner
Denver**") is a foreign business entity with its principal place of
business located in Pennsylvania. For the purposes of this
Complaint, Gardner Denver shall include the present business
entity, as well as all of its predecessor corporations and
entities as applicable. Gardner Denver was and still is a foreign
corporation, duly authorized to do business in the State of New
Jersey and has, in person or through an agent, transacted
business in the State of New Jersey, has derived revenue from

goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Gardner Denver designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

18. Upon information and belief, and at all times hereinafter mentioned, General Chemical Industrial Products, Inc., individually d/b/a General Chemical (Soda Ash) Partners and as successor to Honeywell International Inc., f/k/a Allied Chemical Corporation (hereinafter **"General Chemical"**) is a domestic business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, General Chemical shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. General Chemical was and still is a domestic corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in this State, has derived revenue from goods used or consumed in this State, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, General Chemical designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

19. . Upon information and belief, and at all times hereinafter mentioned, General Electric, Inc. (hereinafter **"General Electric"**) is a foreign business entity with its principal place of business located in Connecticut. For the purposes of this Complaint, General Electric shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. General Electric was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, General Electric designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

20. Upon information and belief, and at all times hereinafter mentioned, Georgia-Pacific LLC (hereinafter **"Georgia-Pacific"**) is a foreign business entity with its principal place of business located in Delaware. For the purposes of this Complaint, Georgia-Pacific shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Georgia-Pacific was and still is a foreign corporation, duly authorized to do business in the State

of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Georgia-Pacific designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

21.   Upon information and belief, and at all times hereinafter mentioned, Goulds Pumps Incorporated (hereinafter **"Goulds Pumps"**) is a foreign business entity with its principal place of business located in New York. For the purposes of this Complaint, Goulds Pumps shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Goulds Pumps was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Goulds Pumps designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

22.   Upon information and belief, and at all times
hereinafter mentioned, Honeywell International, Inc., f/k/a
Allied Signal, Inc. as successor-in-interest to Allied Chemical
Corporation, General Chemical and The Bendix Corporation
(hereinafter **"Honeywell"**) is a domestic business entity with its
principal place of business located in New Jersey. For the
purposes of this Complaint, Honeywell shall include the present
business entity, as well as all of its predecessor corporations
and entities as applicable. Honeywell was and still is a domestic
corporation, duly authorized to do business in the State of New
Jersey and has, in person or through an agent, transacted
business in this State, has derived revenue from goods used or
consumed in this State, has derived revenue from interstate
and/or international commerce, and expected or should have
expected its acts to have consequences within the State of New
Jersey. At all relevant times, Honeywell designed, marketed,
manufactured, distributed, supplied and sold asbestos-containing
products.

23.   Upon information and belief, and at all times
hereinafter mentioned, IMO Industries, Inc., individually and as
successor-in-interest to and f/k/a Delaval Turbine, Transamerica
Delaval (hereinafter **"IMO"**) is a foreign business entity with its
principal place of business located in North Carolina. For the
purposes of this Complaint, IMO shall include the present

business entity, as well as all of its predecessor corporations and entities as applicable. IMO was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, IMO designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

24.  Upon information and belief, and at all times hereinafter mentioned, Ingersoll-Rand Company (hereinafter **"Ingersoll-Rand"**) is a domestic business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, Ingersoll-Rand shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Ingersoll-Rand was and still is a domestic corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in this State, has derived revenue from goods used or consumed in this State, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the

State of New Jersey. At all relevant times, Ingersoll-Rand designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

25.  Upon information and belief, and at all times hereinafter mentioned, Labour Pump Company (hereinafter **"Labour Pump"**) is a foreign business entity with its principal place of business located in Indiana. For the purposes of this Complaint, Labour Pump shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Labour Pump was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Labour Pump designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

26.  Upon information and belief, and at all times hereinafter mentioned, Magnatrol Valve Corp. (hereinafter **"Magnatrol"**) is a domestic business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, Magnatrol shall include the present business entity,

as well as all of its predecessor corporations and entities as
applicable. Magnatrol was and still is a domestic corporation,
duly authorized to do business in the State of New Jersey and
has, in person or through an agent, transacted business in this
State, has derived revenue from goods used or consumed in this
State, has derived revenue from interstate and/or international
commerce, and expected or should have expected its acts to have
consequences within the State of New Jersey. At all relevant
times, Magnatrol designed, marketed, manufactured, distributed,
supplied and sold asbestos-containing products.

27.   Upon information and belief, and at all times
hereinafter mentioned, National Automotive Parts Association
(hereinafter **"NAPA"**) is a foreign business entity with its
principal place of business located in Georgia. For the purposes
of this Complaint, NAPA shall include the present business
entity, as well as all of its predecessor corporations and
entities as applicable. NAPA was and still is a foreign
corporation, duly authorized to do business in the State of New
Jersey and has, in person or through an agent, transacted
business in the State of New Jersey, has derived revenue from
goods used or consumed in the State of New Jersey, has derived
revenue from interstate and/or international commerce, and
expected or should have expected its acts to have consequences
within the State of New Jersey. At all relevant times, NAPA

designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

28.   Upon information and belief, and at all times hereinafter mentioned, Rockwell International Corp. (hereinafter **"Rockwell"**) is a foreign business entity with its principal place of business located in Nevada. For the purposes of this Complaint, Rockwell shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Rockwell was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Rockwell designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

29.   Upon information and belief, and at all times hereinafter mentioned, Spirax Sarco, Inc. (hereinafter **"Spirax"**) is a foreign business entity with its principal place of business located in Delaware. For the purposes of this Complaint, Spirax shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Spirax was

and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Spirax designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

30.   Upon information and belief, and at all times hereinafter mentioned, Trane U.S. Inc.(hereinafter **"Trane U.S."**) is a foreign business entity with its principal place of business located in Delaware. For the purposes of this Complaint, Trane U.S. shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Trane U.S. was and still is a foreign corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in the State of New Jersey, has derived revenue from goods used or consumed in the State of New Jersey, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Trane U.S. designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

31.   Upon information and belief, and at all times
hereinafter mentioned, Union Carbide Corporation (hereinafter
**"Union Carbide"**) is a foreign business entity with its principal
place of business located in New York. For the purposes of this
Complaint, Union Carbide shall include the present business
entity, as well as all of its predecessor corporations and
entities as applicable. Union Carbide was and still is a foreign
corporation, duly authorized to do business in the State of New
Jersey and has, in person or through an agent, transacted
business in the State of New Jersey, has derived revenue from
goods used or consumed in the State of New Jersey, has derived
revenue from interstate and/or international commerce, and
expected or should have expected its acts to have consequences
within the State of New Jersey. At all relevant times, Union
Carbide designed, marketed, manufactured, distributed, supplied
and sold asbestos-containing products.

32.   Upon information and belief, and at all times
hereinafter mentioned, Woolsulate Corp. (hereinafter
**"Woolsulate"**) is a domestic business entity with its principal
place of business located in New Jersey. For the purposes of this
Complaint, Woolsulate shall include the present business entity,
as well as all of its predecessor corporations and entities as
applicable. Woolsulate was and still is a domestic corporation,
duly authorized to do business in the State of New Jersey and
has, in person or through an agent, transacted business in this

613256.1                              21

State, has derived revenue from goods used or consumed in this
State, has derived revenue from interstate and/or international
commerce, and expected or should have expected its acts to have
consequences within the State of New Jersey. At all relevant
times, Woolsulate designed, marketed, manufactured, distributed,
supplied and sold asbestos-containing products.

33.  Upon information and belief, and at all times
hereinafter mentioned, Yarway Corporation (hereinafter **"Yarway"**)
is a foreign business entity with its principal place of business
located in Texas. For the purposes of this Complaint, Yarway
shall include the present business entity, as well as all of its
predecessor corporations and entities as applicable. Yarway was
and still is a foreign corporation, duly authorized to do
business in the State of New Jersey and has, in person or through
an agent, transacted business in the State of New Jersey, has
derived revenue from goods used or consumed in the State of New
Jersey, has derived revenue from interstate and/or international
commerce, and expected or should have expected its acts to have
consequences within the State of New Jersey. At all relevant
times, Yarway designed, marketed, manufactured, distributed,
supplied and sold asbestos-containing products.

34.  Upon information and belief, and at all times
hereinafter mentioned, Tata Chemicals, as successor to and d/b/a
General Chemical Industrial Products, Inc. (hereinafter **"Tata
Chemicals"**) is a domestic business entity with its principal

place of business located in New Jersey. For the purposes of this
Complaint, Tata Chemicals shall include the present business
entity, as well as all of its predecessor corporations and
entities as applicable. Tata Chemicals was and still is a
domestic corporation, duly authorized to do business in the State
of New Jersey and has, in person or through an agent, transacted
business in this State, has derived revenue from goods used or
consumed in this State, has derived revenue from interstate
and/or international commerce, and expected or should have
expected its acts to have consequences within the State of New
Jersey. At all relevant times, Tata Chemicals designed, marketed,
manufactured, distributed, supplied and sold asbestos-containing
products.

35.   Upon information and belief, and at all times
hereinafter mentioned, Tata Chemicals Ltd., as successor to
General Chemical (Soda Ash) Partners (hereinafter **"Tata Chemicals
Ltd."**) is a domestic business entity with its principal place of
business located in New Jersey. For the purposes of this
Complaint, Tata Chemicals Ltd. shall include the present business
entity, as well as all of its predecessor corporations and
entities as applicable. Tata Chemicals Ltd. was and still is a
domestic corporation, duly authorized to do business in the State
of New Jersey and has, in person or through an agent, transacted
business in this State, has derived revenue from goods used or
consumed in this State, has derived revenue from interstate

613256.1                         23

and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Tata Chemicals Ltd. designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

36. Upon information and belief, and at all times hereinafter mentioned, Tata Chemicals North America, Inc., individually and as successor-in-interest to General Chemical Products, Inc. (hereinafter **"Tata Chemicals North America"**) is a domestic business entity with its principal place of business located in New Jersey. For the purposes of this Complaint, Tata Chemicals Ltd. shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Tata Chemicals North America, Inc. was and still is a domestic corporation, duly authorized to do business in the State of New Jersey and has, in person or through an agent, transacted business in this State, has derived revenue from goods used or consumed in this State, has derived revenue from interstate and/or international commerce, and expected or should have expected its acts to have consequences within the State of New Jersey. At all relevant times, Tata Chemicals North America, Inc. designed, marketed, manufactured, distributed, supplied and sold asbestos-containing products.

37. John Doe Corporations 1 through 50 are the fictitious names of corporations, partnerships, and/or other business

entities whose identities are not presently known, and who mined, manufactured, sold, marketed, installed and/or removed asbestos or asbestos containing products to which Plaintiff used or was exposed.

38.   John Doe Corporations 51 through 75 are the fictitious names of corporations, partnerships, and/or other business entities whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who mined, milled, manufactured, sold, marketed, installed and/or removed asbestos, or asbestos containing products, which Plaintiff used or to which he was exposed.

39.   All Defendants herein were, at all times pertinent, directly or indirectly engaged in the specification, mining, manufacturing, distribution, sales, licensing, leasing, installation, removal or use of asbestos, asbestos-containing products, products designed to be used with asbestos-containing products, and/or products that it was foreseeable would be used with asbestos-containing products. They were also engaged in the development, manufacture, distribution, sales, licensing or leasing of equipment, procedures, or technology necessary to mine, manufacture, sell, distribute, install, remove and use asbestos and asbestos-containing products.

## NATURE OF THE CASE

40.   Plaintiff WILLIAM J. ROBINSON is 75 years old, a resident of Wyoming, and suffers from mesothelioma, a cancer linked to asbestos exposure.

41.   Plaintiff GAIL A. ROBINSON is 73 years old, a resident of Wyoming, and is married to Plaintiff WILLIAM J. ROBINSON.

42.   Plaintiff WILLIAM J. ROBINSON was diagnosed with mesothelioma, a cancer caused by exposure to asbestos, in approximately May 5, 2011.

43.   As a proximate result of Defendants' misconduct, which is detailed below, Plaintiff WILLIAM J. ROBINSON has developed mesothelioma; he has endured, and will continue to endure rounds of debilitating cancer treatments and medical procedures; he has experienced, and will experience, physical pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, disabilities, and loss of bodily functions; he has incurred, and will continue to incur medical expenses; and he has suffered from any and all other damages associated with the diagnosis, treatment, and medical course of his cancer and has otherwise suffered injury and damages. Plaintiff WILLIAM J. ROBINSON has incurred and will continue to incur substantial loss of income.

44.   Plaintiffs WILLIAM J. ROBINSON and GAIL A. ROBINSON have filed this lawsuit to recover compensatory and punitive damages against the various Defendants.

613256.1

26

45. WILLIAM J. ROBINSON was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, emanating from certain of Defendants' products he was working with and around, as described below:

    a. From approximately 1970 through 1998, WILLIAM J. ROBINSON worked as a mechanic, performing surface maintenance throughout the Allied Chemical/General Chemical Plant. During the course of this employment, Plaintiff worked with and around asbestos-containing products including, but not limited to, gaskets, packing, joint-compound, boilers, compressors, steam traps, turbines, valves, pumps and other like equipment; and

    b. WILLIAM J. ROBINSON was also exposed to asbestos, throughout the 1980's by performing repair work on his own personal vehicles at his residence in Wyoming. As a result of this work, Mr. Robinson was exposed to asbestos fibers, dust minerals and/or particles and other finished and/or unfinished asbestos products.

    c. WILLIAM J. ROBINSON may have been further exposed to asbestos in such a manner as further investigation and/or discovery may uncover.

46. WILLIAM J. ROBINSON was exposed to asbestos, asbestos-containing products, products designed to be used with asbestos-containing products, and/or products that it was foreseeable would be used with asbestos-containing products, which were manufactured, sold, distributed, installed or utilized by the Defendants: AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to Buffalo Pumps, Inc.; A.O. SMITH CORPORATION, d/b/a A.O. Smith Water Products Company; ARMSTRONG INTERNATIONAL, INC.; CARRIER CORPORATION a/k/a Bryant Manufacturing Corporation; CBS

27

CORPORATION, f/k/a Viacom, Inc., successor by merger to CBS

Corporation, f/k/a Westinghouse Electric Corporation; COMPUDYNE

CORPORATION, individually and as successor to York-Shipley; CRANE

CO.; CRANE PUMPS & SYSTEMS, INC.; CROWN CORK & SEAL CO.;

FLOWSERVE, individually and as successor to Durco Pumps; GARDNER

DENVER, INC.; GENERAL ELECTRIC, INC.; GEORGIA-PACIFIC LLC; GOULDS

PUMPS, INC.; HONEYWELL INTERNATIONAL, INC., f/k/a Allied Signal,

Inc. as successor-in-interest to Allied Chemical Corporation,

General Chemical and The Bendix Corporation; IMO INDUSTRIES,

INC., individually and as successor-in-interest to and f/k/a

Delaval Turbine, Transamerica Delaval; INGERSOLL-RAND COMPANY;

LABOUR PUMP CO.; MAGNATROL VALVE CORP.; NATIONAL AUTO PARTS

ASSOCIATION;  ROCKWELL INTERNATIONAL CORP.; SPIRAX SARCO, INC.;

TRANE U.S. INC.; UNION CARBIDE CORP.; WOOLSULATE CORP.; YARWAY

CORPORATION; GENERAL CHEMICAL INDUSTRIAL PRODUCTS, INC.,

individually d/b/a General Chemical (Soda Ash) Partners and as

successor to Honeywell International Inc., f/k/a Allied Chemical

Corporation; FMC CORPORATION, individually and as successor to

Northern Pump Company and on behalf of its former Peerless Pumps;

TATA CHEMICALS as successor to and d/b/a General Industrial

Products, Inc.; TATA CHEMICALS LTD., as successor to General

Chemical (Soda Ash) Partners; TATA CHEMICALS NORTH AMERICA, INC.,

individually and as successor-in-interest to General Chemicals

Industrial Products, Inc; JOHN DOE CORPORATIONS 1-50; and JOHN

DOE CORPORATION 51-75.

613256.1

28

47. At all times herein set forth, the Defendants' products were being employed in the manner and for the purposes for which they were intended.

48. WILLIAM J. ROBINSON's exposure to and inhalation, ingestion or absorption of asbestos fibers emanating from the use of the above-mention products was completely foreseeable and could or should have been anticipated by the Defendants.

49. The Defendants knew or should have known that the asbestos fibers contained in their products and/or the products with which their products were designed to be used had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

50. WILLIAM J. ROBINSON suffers from an asbestos-related disease(s), including, but not limited to, malignant mesothelioma. WILLIAM J. ROBINSON first became aware that he suffers from Mesothelioma in approximately May 5, 2011 and subsequently thereto, became aware that it was wrongfully caused. As a result of developing mesothelioma, WILLIAM J. ROBINSON has endured, and will endure, great physical pain and suffering, mental anguish and emotional pain and suffering. Further, as a result of Defendants wrongful conduct, WILLIAM J. ROBINSON has received medical treatment for his asbestos related disease, incurring reasonable and necessary costs for medical care, diagnosis and treatment.

613256.1

29

## COUNT I

### NEGLIGENCE

51.  The allegations in paragraphs One (1) through Fifty
(50) above are realleged and incorporated by reference within
this Count.

52.  At all times herein relevant, the Defendants had a duty
to exercise reasonable care and caution for the safety of WILLIAM
J. ROBINSON and others working with and around the Defendants'
asbestos and asbestos-containing products.

53.  Defendants negligently produced, sold, supplied or
otherwise put into the stream of commerce asbestos and asbestos-
containing products and/or machinery requiring the use of
asbestos and/or asbestos-containing products.

54.  The Defendants knew or should have known that the
asbestos fibers contained in their products had a toxic,
poisonous, and highly deleterious effect upon the health of
persons inhaling, ingesting or otherwise absorbing them.

55.  As a designer, developer, manufacturer, distributor,
supplier and seller of the above-described asbestos and asbestos-
containing products, and/or machinery requiring the use of
asbestos and/or asbestos-containing products, Defendants owed a
duty to foreseeable users and handlers of these products, to use
ordinary care in designing, manufacturing, marketing, supplying
and selling these products in such a manner as to render them
safe for their intended and foreseeable users.

56. The Defendants were negligent in that they failed to exercise ordinary care of caution for the safety of WILLIAM J. ROBINSON in one or more of the following respects:

a. Defendants included asbestos in their products when they knew or should have known that said asbestos would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

b. Defendants included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as WILLIAM J. ROBINSON, working with or around them, would inhale, ingest or otherwise absorb asbestos;

c. Defendants included asbestos in their products when adequate substitutes for the asbestos were available;

d. Defendants failed to provide any or adequate warnings to persons working with and around their products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

e. Defendants failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

f. Defendants failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as WILLIAM J. ROBINSON might be exposed while working with or around the products; and/or

g. Defendants designed, manufactured and sold equipment, vehicles, machinery, technology and systems that included asbestos-containing components and required and/or specified the use to asbestos-containing replacement components.

57.   As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions on the part of the Defendants, WILLIAM J. ROBINSON was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing WILLIAM J. ROBINSON to develop the aforesaid asbestos disease, which disabled and disfigured WILLIAM J. ROBINSON.

58.   WILLIAM J. ROBINSON has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions.

59.   WILLIAM J. ROBINSON has in the past and will in the future experience great physical pain and mental anguish as a result of his asbestos-induced and conditions.

60.   Plaintiff WILLIAM J. ROBINSON has incurred and will continue to incur substantial loss of income.

## COUNT II

## STRICT PRODUCT LIABILITY

61.   The allegations in paragraphs One (1) through Sixty (60) above are realleged and incorporated by reference within this Count.

62.   The Defendants placed their asbestos and asbestos-containing products on the market and knew or should have known they would be used without inspection for defects.

613256.1                                              32

63.   Defendants failed to design, manufacture, market, distribute, supply and sell asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products in such a manner as to render them safe for their intended and foreseeable uses. By way of example and not limitation, Defendants:

    a.   Failed to design, develop, manufacture and test the asbestos, asbestos containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products in such a manner as to render them safe for their intended and foreseeable users, when Defendants knew or should have known that the foreseeable use of intended purpose of its products was by persons, specifically Plaintiff WILLIAM J. ROBINSON, who worked with and around said products;

    b.   Marketed and sold said products while the same was in an unreasonably dangerous and defective condition, presenting a hazardous risk to Plaintiff WILLIAM J. ROBINSON'S well-being;

    c.   Failed to recall or attempt to repair the defective products when Defendants were and had been aware of the propensity of said products to injure Plaintiff WILLIAM J. ROBINSON; and/or

    d.   Failed to properly test said products to ensure that they were reasonably safe for use throughout their product lifetime.

64.   Moreover, when Defendants' asbestos and asbestos-containing products left the Defendants' possession and were placed on the market, the products were defective in that:

    a.   When used in the intended or reasonably foreseeable manner, the products were not reasonably safe for their intended use;

    b.   When used in the intended or reasonably foreseeable manner, the products failed to perform

613256.1

33

as safely as would be expected by an ordinary user
or consumer; and/or

c.   When used in the intended or reasonably
     foreseeable manner, the products caused a risk of
     harm beyond that which would be contemplated by
     the ordinary user or consumer.

65.   Defendants violated the requirements of Section 402A of

the Restatement of Torts, 2d, all of which proximately resulted

in Plaintiff WILLIAM J. ROBINSON's asbestos-related disease.

66.   Additionally, although Defendants knew, or in the

exercise of ordinary care should have known, that their asbestos

and asbestos-containing products and/or machinery requiring the

use of asbestos and/or asbestos-containing products were

deleterious, and highly harmful to Plaintiff WILLIAM J.

ROBINSON's health, Defendants nonetheless:

a.   Failed to advise or warn Plaintiff WILLIAM J.
     ROBINSON of the dangerous characteristics of their
     asbestos and asbestos-containing products and/or
     machinery requiring the use of asbestos and/or
     asbestos containing products;

b.   Failed to provide Plaintiff WILLIAM J. ROBINSON
     with the knowledge as to what would be reasonably
     safe and sufficient wearing apparel and proper
     protective equipment and appliance, if any, to
     protect Plaintiff WILLIAM J. ROBINSON from being
     harmed by exposure to asbestos and asbestos-
     containing products and/or machinery requiring the
     use of asbestos and/or asbestos-containing
     products;

c.   Failed to place any warnings on containers of said
     asbestos and asbestos containing products alerting
     Plaintiff WILLIAM J. ROBINSON of the dangers to
     health caused by contact with asbestos and/or
     asbestos-containing products and/or machinery
     requiring the use of asbestos and/or asbestos
     containing products; and/or

> d.   Failed to take reasonable precautions or to
>      exercise reasonable care to publish, adopt and
>      enforce a safety plan and/or a safe method of
>      handling and installing asbestos and asbestos-
>      containing products, or utilizing the machinery
>      requiring the use of asbestos and/or asbestos-
>      containing products in a safe manner.

67.   Defendants' products were also defective due to inadequate warning or instruction during and after the time of marketing in that Defendants knew, or in the exercise of reasonable care should have known, about the risks associated with their products and failed to provide reasonable and/or adequate warning or instruction in light of the likelihood that the asbestos, asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products would cause serious physical harm to Plaintiff WILLIAM J. ROBINSON.

68.   As a direct and proximate result of using Defendants' asbestos and asbestos-containing products for the general purpose for which they were designed and intended, WILLIAM J. ROBINSON was exposed to asbestos, contracted mesothelioma and has suffered and continues to suffer the injuries and damages set forth herein.

69.   Accordingly, Defendants are strictly liable to Plaintiffs WILLIAM J. ROBINSON and GAIL A. ROBINSON for their failure to warn, and for defective design and manufacture and/or marketing, distribution, supplying and selling a defective product(s).

### COUNT III

### BREACH OF WARRANTY

70.   The allegations in paragraph One (1) through Sixty-nine (69) above are realleged and incorporated by reference within this Count.

71.   Defendants caused Plaintiff's injuries and damages as stated above by manufacturing, selling, installing, and distributing asbestos-containing products and raw materials which failed to meet express and implied warranties of merchantability and fitness for intended purposes upon which Plaintiff had a right to rely and did rely.

72.   As a direct and proximate result of the breaches of these warranties, WILLIAM J. ROBINSON was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing WILLIAM J. ROBINSON to develop the aforesaid asbestos disease, which disabled and disfigured WILLIAM J. ROBINSON.

73.   WILLIAM J. ROBINSON has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions.

74.   WILLIAM J. ROBINSON has in the past and will in the future experience great physical pain and mental anguish as a result of his asbestos-induced disease and conditions.

75. Plaintiff WILLIAM J. ROBINSON has incurred and will continue to incur substantial loss of income. Defendants are liable to Plaintiff for his damages.

## COUNT IV

### FRAUDULENT CONDUCT, MALICE AND GROSS NEGLIGENCE

76. The allegations in paragraph One (1) through Seventy-five (75) above are realleged and incorporated by reference within this Count.

77. The Defendants had a duty to refrain from gross negligence, fraud and/or malicious acts or omissions which would harm WILLIAM J. ROBINSON.

78. Defendants are guilty of one or more of the following acts or omissions amounting to fraudulent misconduct, malice and gross negligence:

  a. Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as WILLIAM J. ROBINSON working with or around their products would inhale, ingest or otherwise absorb asbestos;

  b. Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of person inhaling, ingesting or otherwise absorbing them;

  c. Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, included asbestos in their products when adequate substitutes for the asbestos in them was available;

d.   Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, removed any warnings regarding the dangers of asbestos from the packaging of asbestos-containing products supplied to persons working with and around the products and using the products in their intended and/or reasonably foreseeable manner;

e.   Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, failed to provide any or adequate warnings to persons working with and around their products of the dangers of inhaling, ingesting or otherwise absorbing asbestos fibers in them;

f.   Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, failed to provide any or adequate instructions concerning the safe methods of working with and around their products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

g.   Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as WILLIAM J. ROBINSON might be exposed while working with and around the products;

h.   Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, failed to adequately label, warn, package, market, distribute, install, remove, or use asbestos in a reasonable manner which would minimize or eliminate the escape of asbestos dust fibers, thereby adding to the exposure of WILLIAM J. ROBINSON and others similarly situated;

i.   Intentionally or with gross negligence for the safety of WILLIAM J. ROBINSON, failed to take adequate steps to remedy the above failures, including but not limited to: (1) failure to recall or require removal of asbestos and asbestos products; coupled with (2) ongoing failure to conduct research as to how to cure or minimize

asbestos injuries and how to use, install, or
distribute asbestos so as to render it safe; and
(3) failure to promptly and safely remove the
asbestos now in place; and/or

j.   Intentionally or with gross negligence for the
safety of WILLIAM J. ROBINSON, designed,
manufactured and sold equipment, vehicles,
machinery, technologies and systems that included
asbestos-containing components and required and/or
specified the use of asbestos-containing
replacement components.

79.   As a direct and proximate result of one or more of the

foregoing actions and/or omissions of Defendants, WILLIAM J.

ROBINSON was exposed to asbestos, has contracted mesothelioma and

has suffered and continues to suffer the injuries and damages as

described herein.

80.   Defendants' actions, as stated herein, constitute a

flagrant disregard for the rights and safety of Plaintiff and by

engaging in such actions, Defendants acted with fraud, gross

negligence, recklessness, willfulness, wantonness and/or malice

and should be held liable in punitive and exemplary damages to

Plaintiffs WILLIAM J. ROBINSON and GAIL A. ROBINSON.

<u>COUNT V</u>

<u>PREMISES LIABILITY</u>

81.   From approximately 1970 to 1998, Plaintiff WILLIAM J.

ROBINSON worked as a mechanic at the Soda Ash Facility (the

"Facility"), located in Green River, Wyoming.   During that time,

he performed surface maintenance work in and around asbestos

containing products, including, but not limited to, gaskets,

packing, joint-compound, boilers, compressors, steam traps,
turbines, valves, pumps and other like equipment.

82.   During Mr. Robinson's employment, at various times, the
Facility came under the ownership of several corporations who
operated the premises. At the time of his initial employment in
1970, the Facility was owned and operated by Allied Chemical
Corporation, which in 1985 merged with the Signal Corporation to
become Allied/Signal Corporation, who operated the facility. In
1989, Allied Signal acquired the Honeywell Corporation, merging
with it to become Honeywell International, Inc., (Honeywell)
which continued to operate the Facility until 1989, when it sold
the Facility to General Chemical Industrial Products, Inc.
General Chemical operated the Facility until 2008, when it sold
the operation to Tata Chemicals, Ltd.

83.   While employed by these Defendant companies, WILLIAM J.
ROBINSON worked with or in the vicinity of others working with,
asbestos, asbestos-containing products and/or asbestos-containing
machinery, from which he was exposed to asbestos fibers, dust,
minerals and/or particles and other finished and/or unfinished
asbestos products.

84.   As the owner and occupier of the premises upon which
Mr. Robinson worked, and as Mr. Robinson's employers, Allied
Chemical Corporation, Allied/Signal Corporation, Honeywell
International, Inc. and General Chemical Industrial Products,
Inc. (the "Premises Defendants") owed him a non-delegable duty to

613256.1

exercise ordinary care to render the premises in which he worked reasonably safe for the purposes embraced in Mr. Robinson's employment.

85.   The Premises Defendants' duty extended to workers on its premises for the foreseeable risk of exposure to friable asbestos.

86.   The Premises Defendants' breached their duty to WILLIAM J. ROBINSON:

    a.   By failing to warn Mr. Robinson, about the foreseeable risks of exposure associated with the handling of, contact with, or proximity to asbestos and/or asbestos-containing products and machinery; and/or

    b.   By otherwise failing to protect Mr. Robinson against the foreseeable risk of exposure to friable asbestos and asbestos dust coming from the Facility owned or occupied by the Premises Defendants.

87.   As a direct and proximate result of Plaintiff WILLIAM J. ROBINSON's exposure during his employment at the Premises Defendants' Facility, he contracted mesothelioma and suffers from various diverse injuries and attendant complications.

## COUNT VI

### LOSS OF CONSORTIUM

88.   The allegations in paragraphs One (1) through Eighty-seven (87) above are realleged and incorporated by reference within this Count.

89.   Plaintiff WILLIAM J. ROBINSON is married to Plaintiff GAIL A. ROBINSON. As a result of Defendants' wrongful conduct which caused her husband's above stated asbestos-related disease,

Plaintiff GAIL A. ROBINSON has suffered and will continue in the future to suffer a loss of the support, consortium and society of her husband, together with related mental anguish and pain and suffering.

**WHEREFORE,** Plaintiffs, as a direct and proximate result of the negligence and conduct of each Defendant, have suffered and will continue to suffer great pain and severe mental anguish.

Plaintiffs, as a direct and proximate result of the negligence of other conduct of Defendants, have incurred expenses for medical, and/or hospital, and/or pharmaceutical, and/or surgical care and/or other expenses in an amount not yet determined, and will continue to incur such expenses into the future.

Plaintiffs, as a direct and proximate result of the negligence and other conditions of Defendants, have suffered economic damages and will continue to suffer them throughout their lifetimes.

The aforesaid acts and/or omissions of Defendants were grossly negligent, fraudulent and malicious.

Plaintiffs demand judgment against Defendants jointly and severally in an amount in excess of One Hundred Thousand Dollars ($100,000.000); punitive damages in an amount sufficient to punish Defendants for their misconduct and to deter similarly situated parties from committing like acts of misconduct in the future; and such other and further relief that this Court deems appropriate.

A trial by jury is hereby demanded as to all counts.

Respectfully submitted,

SZAFERMAN, LAKIND,
BLUMSTEIN, & BLADER, P.C.

BY:_____
Robert E. Lytle, Esq.
101 Grovers Mill Road
Suite 200
Lawrenceville, NJ 08648
Telephone: (609) 275-0400
Fax: (609) 275-4511

Attorneys for Plaintiff

Dated: August _10_, 2011