DOCKET FOR CASE #3:11-cv-04199-NC
In the Northern District of California
(San Francisco)
*Marisa Bond, et al. v. A.W. Chesterton
Company, et al.*

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-04199-NC

Bond et al v. A.W. Chesterton Company et al
Assigned to: Magistrate Judge Nathanael M. Cousins
Cause: 28:1442 Petition for Removal

Date Filed: 08/24/2011
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Marisa Bond**
*individually and as successor in interest of*
*Alan Bond, Deceased*

represented by **Richard A. Brody**
Brent Coon & Associates
44 Montgomery Street, Suite 800
San Francisco, CA 94104
415-489-7420
Fax: 415-489-7426
Email: rick.brody@bcoonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Allen Pagan**

represented by **Richard A. Brody**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**A.W. Chesterton Company**

**Defendant**

**Abb, Inc.**
*individually and as successor in interest to*

**Defendant**

**Gould, Inc.**

**Defendant**

**ITE Imperial Corporation**

**Defendant**

**Brown Boveri Electric, Inc**

**Defendant**

**Garfield Molding Company, Inc**

**Defendant**

**Meriden Molded Plastics, Inc**

<u>Defendant</u>

**Air & Liquid Systems Corporation**
*as successor by merger to Buffalo Pumps, Inc.*

<u>Defendant</u>

**Allied Packing & Supply, Inc.**

<u>Defendant</u>

**Armstrong International, Inc.**

<u>Defendant</u>

**Aurora Pump Company**

<u>Defendant</u>

**Bae Systems Hawaii Shipyards, Inc.**

<u>Defendant</u>

**Bae Systems Norfolk Ship Repair, Inc.**

<u>Defendant</u>

**Bae Systems San Diego Ship Repair, Inc.**

<u>Defendant</u>

**Bae Systems San Francisco Ship Repair, Inc.**

<u>Defendant</u>

**BW/IP, Inc,**
*and its wholly owned subsidiaries*

<u>Defendant</u>

**CBS Corporation**
*individually and as successor in interest to Westinghouse Electric and BF Sturdevant Company*

<u>Defendant</u>

**Cleaver Brooks, Inc.**

<u>Defendant</u>

**Crane Co.**

<u>Defendant</u>

**Cummins Inc.**

<u>Defendant</u>

**Dover Corporation**
*individually and as successor in interest to The Blackmer Pump Power &*

*Manufacturing Company*

**Defendant**

**Eaton Hydraulics LLC**
*formerly known as Vickers, Inc and as
successor in interest to C.H. Wheeler
Company*

**Defendant**

**Electric Boat Corporation**

**Defendant**

**Flowserve Corporation**
*individually and as successor in interest to
Durametallic Corporation*

**Defendant**

**Flowserve Corporation**
*individually and as successor in interest to
Worthington Pump Company*

**Defendant**

**Flowserve US, Inc.**

**Defendant**

**Foster Wheeler USA Corporation**

**Defendant**

**Fraser's Boiler Service, Inc.**

**Defendant**

**Fryer-Knowles, Inc.**

**Defendant**

**Gardner Denver Machinery, Inc.**
*individually and as successor in interest to
Nash Engineering Co. and Nash Pumps*

**Defendant**

**General Dynamics Corporation**

**Defendant**

**Goulds Pumps, Incorporated**

**Defendant**

**Henry Vogt Machine Co.**

**Defendant**

**Hill Brothers Chemical Company**

**Defendant**

**Hopeman Brothers, Inc.**

**Defendant**

**IMO Industries, Inc.**
*individually and as successor in interest to*
*Dela Val Steam Turbine Co.,*

**Defendant**

**Ingersoll Rand Company**
*individually and as successor in interest to*
*Terry Steam Turbine Company*

**Defendant**

**ITT Corporation**
*formerly known as ITT Industries, Inc.,*
*individually and as successor to Bell &*
*Gossett*

**Defendant**

**Lockheed Shipbuilding Company**
*fka Lockheed Shipbuilding & Construction,*
*and Puget Sound Bridge and Dry Dock*
*Company*

represented by **Guy P. Glazier**
Knott & Glazier LLP
201 Spear Street, Suite 1520
San Francisco, CA 94105
415 356-1100
Fax: 415 356-1105
Email: glazier@knottglazier.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael David Smith**
Knott and Glazier LLP
201 Spear Street
Suite 1520
San Francisco, CA 94105
415-356-1100
Fax: 415 356-1105
Email: smith@knottglazier.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**M. Slayen & Associates, Inc.**

**Defendant**

**Metalclad Insulation Corporation**
*individually and as successor in interest to*
*Northern California Insulation*

**Defendant**

**Mouvex-Blackmer**
*individually and as successor in interest to*
*The Blackmer Pump Power &*
*Manufacturing Company*

**Defendant**

**Parker-Hannifin Corporation**
*individually and as successor in interest to*
*Sacomo-Sierra*

<u>**Defendant**</u>

**Patterson Pump Company**
*as successor in interest to C.H. Wheeler*
*Company*

<u>**Defendant**</u>

**Rapid-American Corporation**

<u>**Defendant**</u>

**Sterling Fluid System (USA) LLC**
*formerly known as Peerless Pump Company*

<u>**Defendant**</u>

**Sulzer Pumps (US) Inc.**

<u>**Defendant**</u>

**SYD Carpenter Marine Contractors, Inc.**

<u>**Defendant**</u>

**The Epoxylite Corporation**

<u>**Defendant**</u>

**The Nash Engineering Company**

<u>**Defendant**</u>

**The WM Powell Company**

<u>**Defendant**</u>

**Todd Shipyards Corporation**

<u>**Defendant**</u>

**Trane U.S. Inc.**
*formerly known as American Standard Inc*

<u>**Defendant**</u>

**Triple A Machine Shop, Inc.**

<u>**Defendant**</u>

**Uniroyal Holding, Inc.**

<u>**Defendant**</u>

**Viad Corporation**
*individually and as successor in interest to*
*Griscom-Russell and Dial Corporation*

<u>**Defendant**</u>

**Vickers, LTD**
*individually and as successor in interest to*

*C.H. Wheeler Company*

**Defendant**

**Viking Pump, Inc.**

**Defendant**

**Warren Pumps, LLC**

**Defendant**

**Yarway Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/25/2011 | 1 | NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1442(a)(FEDERAL OFFICER) (NO PROCESS) from Superior Court for the State of California in and for the County of Alameda. Their case number is RG09450785. (Filing fee $350.00 receipt number 34611063864). Filed Lockheed Shipbuilding Company. (aaa, COURT STAFF) (Filed on 8/25/2011) (Entered: 08/25/2011) |
| 08/25/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 11/30/2011. Case Management Conference set for 12/7/2011 10:00 AM. Signed by Magistrate Judge Nathanael M. Cousins on 8/25/11. (Attachments: # 1 NC Standing Order, # 2 Standing Order(aaa, COURT STAFF) (Filed on 8/25/2011) (Entered: 08/25/2011) |
| 08/25/2011 | 3 | INDEX AND ATTACHMENT OF ADDITIONAL PLEADINGS by Lockheed Shipbuilding Company re 1 Notice of Removal, (aaa, COURT STAFF) (Filed on 8/25/2011) (Entered: 08/25/2011) |
| 08/25/2011 | 4 | DISCLOSURE STATEMENT (F.R.C.P.7.1) by Lockheed Shipbuilding Company (aaa, COURT STAFF) (Filed on 8/25/2011) (Entered: 08/25/2011) |
| 08/25/2011 | 5 | NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS (L.R.3-13) by Lockheed Shipbuilding Company (aaa, COURT STAFF) (Filed on 8/25/2011) (Entered: 08/25/2011) |
| 08/25/2011 | 6 | Certificate of Interested Entities or Persons by Lockheed Shipbuilding Company identifying Other Affiliate Nationwide Indemnity for Lockheed Shipbuilding Company. (aaa, COURT STAFF) (Filed on 8/25/2011) (Entered: 08/25/2011) |
| 08/29/2011 | 7 | CERTIFICATE OF SERVICE by Lockheed Shipbuilding Company (Smith, Michael) (Filed on 8/29/2011) (Entered: 08/29/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/29/2011 09:40:43 | | |
| PACER Login: | kg0289 | Client Code: | bond |
| Description: | Docket Report | Search Criteria: | 3:11-cv-04199-NC |
| Billable Pages: | 4 | Cost: | 0.32 |

FIRST AMENDED COMPLAINT

©COPY

1  Richard A. Brody, Esq. (SBN 100379)
   rick.brody@bcoonlaw.com
2  BRENT COON & ASSOCIATES
   44 Montgomery Street, Suite 800
3  San Francisco, CA. 94104.
   Telephone: 415.489.7420
4  Facsimile: 415.489.7426

5  Attorneys for Plaintiffs

6

7

ENDORSED
FILED
ALAMEDA COUNTY

JUL 0 1 2011

CLERK OF THE SUPERIOR COURT

Anita Dhir

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   IN AND FOR THE COUNTY OF ALAMEDA

10

| | |
|---|---|
| 11  MARISA BOND, individually and as successor in interest to ALAN BOND, Deceased; and | Case No. RG-09-450785 |
| 12  ALLEN PAGAN, | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| 13       Plaintiff, | **(WRONGFUL DEATH—ASBESTOS)** |
| 14  v. | 1. Negligence |
| 15  A.W. CHESTERTON COMPANY, ABB, INC., | 2. Strict Products Liability |
|     individually and as successor in interest to | 3. Failure to Warn |
| 16  GOULD, INC., ITE IMPERIAL | 4. Breach of Warranties |
| 17  CORPORATION, BROWN BOVERI | 5. Fraud and Conspiracy |
|     ELECTRIC, INC., GARFIELD MOLDING | 6. False Representation Under |
| 18  COMPANY, INC, and MERIDEN MOLDED |    Restatement Torts Section 402-B |
|     PLASTICS, INC., AIR & LIQUID SYSTEMS | 7. Survival Action |
| 19  CORPORATION, as successor by merger to | **Punitive Damages** |
| 20  BUFFALO PUMPS, INC.; ALLIED PACKING | |
|     & SUPPLY, INC.; ARMSTRONG | |
| 21  INTERNATIONAL, INC.; AURORA PUMP | |
| 22  COMPANY; BAE SYSTEMS HAWAII | |
|     SHIPYARDS, INC.; BAE SYSTEMS | |
| 23  NORFOLK SHIP REPAIR, INC.; BAE | |
| 24  SYSTEMS SAN DIEGO SHIP REPAIR, INC.; | |
|     BAE SYSTEMS SAN FRANCISCO SHIP | |
| 25  REPAIR, INC.; BW/IP, INC., and its wholly- | |
|     owned subsidiaries; CBS CORPORATION, | |
| 26  formerly known as VIACOM, INC., individually | |
| 27  and as successor in interest to WESTINGHOUSE | |
|     ELECTRIC and BF STURDEVANT | |
| 28  COMPANY; CLEAVER-BROOKS, INC.; | |

1

CRANE CO.; CUMMINS INC.; DOVER
CORPORATION, individually and as successor
in interest to THE BLACKMER PUMP POWER
& MANUFACTURING COMPANY; EATON
HYDRAULICS LLC, formerly known as
VICKERS, INC. and as successor in interest to
C.H. WHEELER COMPANY; ELECTRIC
BOAT CORPORATION; FLOWSERVE
CORPORATION, individually and as successor
in interest to DURAMETALLIC
CORPORATION; FLOWSERVE
CORPORATION, individually and as successor
in interest to WORTHINGTON PUMP
COMPANY; FLOWSERVE US, INC.; FOSTER
WHEELER USA CORPORATION; FRASER'S
BOILER SERVICE, INC.; FRYER-KNOWLES,
INC.; GARDNER DENVER, INC., formerly
known as GARDNER DENVER MACHINERY,
INC., individually and as successor in interest to
NASH ENGINEERING CO. and NASH
PUMPS; GENERAL DYNAMICS
CORPORATION; GOULDS PUMPS,
INCORPORATED; HENRY VOGT MACHINE
CO.; HILL BROTHERS CHEMICAL
COMPANY; HOPEMAN BROTHERS, INC.;
IMO INDUSTRIES, INC., individually and as
successor in interest to DELAVAL STEAM
TURBINE CO.; INGERSOLL-RAND
COMPANY, individually and as successor in
interest to TERRY STEAM TURBINE
COMPANY; ITT CORPORATION, formerly
known as ITT INDUSTRIES, INC., individually
and as successor to BELL & GOSSETT;
LOCKHEED SHIPBUILDING COMPANY,
f/k/a LOCKHEED SHIPBUILDING &
CONSTRUCTION, and PUGET SOUND
BRIDGE AND DRY DOCK COMPANY; M.
SLAYEN & ASSOCIATES, INC.;
METALCLAD INSULATION CORPORATION,
individually and as successor in interest to
NORTHERN CALIFORNIA INSULATION;
MOUVEX-BLACKMER, individually and as
successor in interest to THE BLACKMER PUMP
POWER & MANUFACTURING COMPANY;
PARKER-HANNIFIN CORPORATION,

2

individually and as successor in interest to
SACOMO-SIERRA; PATTERSON PUMP
COMPANY, as successor in interest to C.H.
WHEELER COMPANY; RAPID-AMERICAN
CORPORATION; STERLING FLUID SYSTEM
(USA), LLC, formerly known as PEERLESS
PUMP COMPANY; SULZER PUMPS (US)
INC.; SYD CARPENTER MARINE
CONTRACTOR, INC.; THE EPOXYLITE
CORPORATION; THE NASH ENGINEERING
COMPANY; THE WM. POWELL COMPANY;
TODD SHIPYARDS CORPORATION; TRANE
U.S. INC., formerly known as AMERICAN
STANDARD INC.; TRIPLE A MACHINE
SHOP, INC.; UNIROYAL HOLDING, INC.;
VIAD CORPORATION, individually and as
successor in interest to GRISCOM-RUSSELL
and DIAL CORPORATION; VICKERS, LTD,
individually and as successor in interest to C.H.
WHEELER COMPANY; VIKING PUMP, INC.;
WARREN PUMPS, LLC; YARWAY
CORPORATION; and DOES 1 through 500,
inclusive,

  Defendants.

Plaintiffs MARISA BOND, individually and as successor in interest to ALAN BOND,
Deceased; and ALLEN PAGAN (hereinafter "plaintiffs") complain of all defendants, and each of
them, and allege:

## GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

1.    (a)    Plaintiffs are the legal heirs of ALAN BOND, Deceased (hereinafter referred
to as the "Decedent").  The decedent died from asbestos related lung cancer on August 28, 2010.
The name of each plaintiff and the relationship to Decedent is as follows:

| Name | Relationship |
|------|--------------|
| Marisa Bond | Daughter |
| Allen Pagan | Son |

      (b)    Each plaintiff brings this action on his or her own behalf.  In addition,
MARISA BOND brings this action as successor in interest to ALAN BOND, Deceased.

3

1          (c)   Plaintiffs are collectively referred to as "plaintiffs" herein.  Plaintiffs know

2    of no other parties who should be named as a plaintiff herein.

3        2.   Plaintiffs are ignorant of the true names and capacities of DOES 1 through 500

4    named as plaintiffs herein.  Plaintiffs are ignorant of the true names and capacities of defendants

5    sued herein as DOES 1 through 500, inclusive, and therefore sue these defendants by such fictitious

6    names.  Plaintiffs will amend this complaint to allege their true names and capacities when

7    ascertained.  Plaintiffs are informed and believe and thereon allege that each of said fictitiously

8    named defendants are, through their negligence, intentional torts, and/or conduct giving rise to

9    strict liability, responsible or liable in some manner for the occurrences herein alleged, and that the

10   injuries herein alleged were the direct and legal result of said negligence, intentional torts, and/or

11   conduct giving rise to strict liability.

12       3.   At all times mentioned in this complaint, each of the defendants was the agent and

13   employee of each of the remaining defendants, and by their actions as alleged in this complaint

14   each defendant was acting within the course and scope of this agency and employment, and each

15   defendant has ratified and approved the acts of the remaining defendants.  The federal courts lack

16   subject matter jurisdiction over this action, as there is no federal question and incomplete diversity

17   of citizenship exists due to the presence of one or more California defendants.  Removal is

18   improper.  Every claim arising under the constitution, treaties, or laws of the United States is

19   expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or

20   of any officer of the U.S. or any agency or person acting under him occurring under color of such

21   office).  No claim of admiralty or maritime law is raised.  Plaintiffs sue no foreign state or agency.

22   Venue is proper in Alameda County, California.

23       Plaintiff specifically disclaims any federal cause of action or any claim that would give rise

24   to federal jurisdiction.  To the extent that any of Decedent's asbestos exposure took place on a

25   federal enclave, or to the extent that any of Decedent's asbestos exposure occurred on board vessels

26   of the United States military (including Naval ships) or in the construction, maintenance and/or

27   repair of United States military vessels and/or aircraft, plaintiff's negligence claims against

28   manufacturers, sellers and suppliers of asbestos-containing products installed on such vessels

4

1   and/or aircraft are not based on the theory of defective design, but rather are based only on the

2   theory of failure to warn.  Since there is no evidence that the United States Government, or any of

3   its military branches, specifically instructed manufacturers from which it purchased asbestos-

4   containing products not to warn about the health hazards associated with exposure to asbestos,

5   there can be no valid claim to federal jurisdiction pursuant to federal enclave, federal officer or

6   federal contractor provisions of the United States Code.  This disclaimer pertains to all of plaintiffs'

7   claims, including those of negligence and products liability, as asserted herein.

8          4.          A.W. CHESTERTON COMPANY; ABB, INC., individually and as

9   successor in interest to GOULD, INC, ITE IMPERIAL CORPORATION, BROWN BOVERI

10  ELECTRIC, INC, GARFIELD MOLDING COMPANY, INC, and MERIDEN MOLDED

11  PLASTICS, INC.; AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to

12  BUFFALO PUMPS, INC.; ALLIED PACKING & SUPPLY, INC.; ARMSTRONG

13  INTERNATIONAL, INC.; AURORA PUMP COMPANY; BAE SYSTEMS HAWAII

14  SHIPYARDS, INC.; BAE SYSTEMS NORFOLK SHIP REPAIR, INC.; BAE SYSTEMS SAN

15  DIEGO SHIP REPAIR, INC.; BAE SYSTEMS SAN FRANCISCO SHIP REPAIR, INC.; BW/IP,

16  INC., and its wholly-owned subsidiaries; CBS CORPORATION, formerly known as VIACOM,

17  INC., individually and as successor in interest to WESTINGHOUSE ELECTRIC and BF

18  STURDEVANT COMPANY; CLEAVER-BROOKS, INC.; CRANE CO.; CUMMINS INC.;

19  DOVER CORPORATION, individually and as successor in interest to THE BLACKMER PUMP

20  POWER & MANUFACTURING COMPANY; EATON HYDRAULICS LLC, formerly known as

21  VICKERS, INC. and as successor in interest to C.H. WHEELER COMPANY; ELECTRIC BOAT

22  CORPORATION; FLOWSERVE CORPORATION, individually and as successor in interest to

23  DURAMETALLIC CORPORATION; FLOWSERVE CORPORATION, individually and as

24  successor in interest to WORTHINGTON PUMP COMPANY; FLOWSERVE US, INC.; FOSTER

25  WHEELER USA CORPORATION; FRASER'S BOILER SERVICE, INC.; FRYER-KNOWLES,

26  INC.; GARDNER DENVER, INC., formerly known as GARDNER DENVER MACHINERY,

27  INC., individually and as successor in interest to NASH ENGINEERING CO. and NASH PUMPS;

28  GENERAL DYNAMICS CORPORATION; GOULDS PUMPS, INCORPORATED; HENRY

5

1  VOGT MACHINE CO.; HILL BROTHERS CHEMICAL COMPANY; HOPEMAN BROTHERS,
2  INC.; IMO INDUSTRIES, INC., individually and as successor in interest to DELAVAL STEAM
3  TURBINE CO.; INGERSOLL-RAND COMPANY, individually and as successor in interest to
4  TERRY STEAM TURBINE COMPANY; ITT CORPORATION, formerly known as ITT
5  INDUSTRIES, INC., individually and as successor to BELL & GOSSETT; LOCKHEED
6  SHIPBUILDING COMPANY, f/k/a LOCKHEED SHIPBUILDING & CONSTRUCTION, and
7  PUGET SOUND BRIDGE AND DRY DOCK COMPANY; M. SLAYEN & ASSOCIATES, INC.;
8  METALCLAD INSULATION CORPORATION, individually and as successor in interest to
9  NORTHERN CALIFORNIA INSULATION; MOUVEX-BLACKMER, individually and as
10 successor in interest to THE BLACKMER PUMP POWER & MANUFACTURING COMPANY;
11 PARKER-HANNIFIN CORPORATION, individually and as successor in interest to SACOMO-
12 SIERRA; PATTERSON PUMP COMPANY, as successor in interest to C.H. WHEELER
13 COMPANY; RAPID-AMERICAN CORPORATION; STERLING FLUID SYSTEM (USA), LLC,
14 formerly known as PEERLESS PUMP COMPANY; SULZER PUMPS (US) INC.; SYD
15 CARPENTER MARINE CONTRACTOR, INC.; THE EPOXYLITE CORPORATION; THE
16 NASH ENGINEERING COMPANY; THE WM. POWELL COMPANY; TODD SHIPYARDS
17 CORPORATION; TRANE U.S. INC., formerly known as AMERICAN STANDARD INC.;
18 TRIPLE A MACHINE SHOP, INC.; UNIROYAL HOLDING, INC.; VIAD CORPORATION,
19 individually and as successor in interest to GRISCOM-RUSSELL and DIAL CORPORATION;
20 VICKERS, LTD, individually and as successor in interest to C.H. WHEELER COMPANY;
21 VIKING PUMP, INC.; WARREN PUMPS, LLC; YARWAY CORPORATION; and DOES 1
22 through 500, inclusive, are at all times herein mentioned, and were corporations or other business
23 entities organized and existing under the laws of the state of California and/or qualified to do
24 business in this state.
25 ///
26 ///
27 ///
28 ///

6

1    A.    MANUFACTURING/DISTRIBUTING DEFENDANTS.  The following

2  defendants designated as "manufacturing/distributing defendants" are named in their capacities as

3  manufacturers, distributors, suppliers and installers of asbestos-containing products:  A.W.

4  CHESTERTON COMPANY; ABB, INC., individually and as successor in interest to GOULD,

5  INC., ITE IMPERIAL CORPORATION, BROWN BOVERI ELECTRIC, INC.; GARFIELD

6  MOLDING COMPANY, INC, and MERIDEN MOLDED PLASTICS, INC.; AIR & LIQUID

7  SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC.; ALLIED

8  PACKING & SUPPLY, INC.; ARMSTRONG INTERNATIONAL, INC.; AURORA PUMP

9  COMPANY; BAE SYSTEMS HAWAII SHIPYARDS, INC.; BAE SYSTEMS NORFOLK SHIP

10  REPAIR, INC.; BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC.; BAE SYSTEMS SAN

11  FRANCISCO SHIP REPAIR, INC.; BW/IP, INC., and its wholly-owned subsidiaries; CBS

12  CORPORATION, formerly known as VIACOM, INC., individually and as successor in interest to

13  WESTINGHOUSE ELECTRIC and BF STURDEVANT COMPANY; CLEAVER-BROOKS,

14  INC.; CRANE CO.; CUMMINS INC.; DOVER CORPORATION, individually and as successor in

15  interest to THE BLACKMER PUMP POWER & MANUFACTURING COMPANY; EATON

16  HYDRAULICS LLC, formerly known as VICKERS, INC. and as successor in interest to C.H.

17  WHEELER COMPANY; ELECTRIC BOAT CORPORATION; FLOWSERVE CORPORATION,

18  individually and as successor in interest to DURAMETALLIC CORPORATION; FLOWSERVE

19  CORPORATION, individually and as successor in interest to WORTHINGTON PUMP

20  COMPANY; FLOWSERVE US, INC.; FOSTER WHEELER USA CORPORATION; FRASER'S

21  BOILER SERVICE, INC.; FRYER-KNOWLES, INC.; GARDNER DENVER, INC., formerly

22  known as GARDNER DENVER MACHINERY, INC., individually and as successor in interest to

23  NASH ENGINEERING CO. and NASH PUMPS; GENERAL DYNAMICS CORPORATION;

24  GOULDS PUMPS, INCORPORATED; HENRY VOGT MACHINE CO.; HILL BROTHERS

25  CHEMICAL COMPANY; HOPEMAN BROTHERS, INC.; IMO INDUSTRIES, INC.,

26  individually and as successor in interest to DELAVAL STEAM TURBINE CO.; INGERSOLL-

27  RAND COMPANY, individually and as successor in interest to TERRY STEAM TURBINE

28  COMPANY; ITT CORPORATION, formerly known as ITT INDUSTRIES, INC., individually and

7

1   as successor to BELL & GOSSETT; LOCKHEED SHIPBUILDING COMPANY, f/k/a

2   LOCKHEED SHIPBUILDING & CONSTRUCTION, and PUGET SOUND BRIDGE AND DRY

3   DOCK COMPANY; M. SLAYEN & ASSOCIATES, INC.; METALCLAD INSULATION

4   CORPORATION, individually and as successor in interest to NORTHERN CALIFORNIA

5   INSULATION; MOUVEX-BLACKMER, individually and as successor in interest to THE

6   BLACKMER PUMP POWER & MANUFACTURING COMPANY; PARKER-HANNIFIN

7   CORPORATION, individually and as successor in interest to SACOMO-SIERRA; PATTERSON

8   PUMP COMPANY, as successor in interest to C.H. WHEELER COMPANY; RAPID-

9   AMERICAN CORPORATION; STERLING FLUID SYSTEM (USA), LLC, formerly known as

10  PEERLESS PUMP COMPANY; SULZER PUMPS (US) INC.; SYD CARPENTER MARINE

11  CONTRACTOR, INC.; THE EPOXYLITE CORPORATION; THE NASH ENGINEERING

12  COMPANY; THE WM. POWELL COMPANY; TODD SHIPYARDS CORPORATION; TRANE

13  U.S. INC., formerly known as AMERICAN STANDARD INC.; TRIPLE A MACHINE SHOP,

14  INC.; UNIROYAL HOLDING, INC.; VIAD CORPORATION, individually and as successor in

15  interest to GRISCOM-RUSSELL and DIAL CORPORATION; VICKERS, LTD, individually and

16  as successor in interest to C.H. WHEELER COMPANY; VIKING PUMP, INC.; WARREN

17  PUMPS, LLC; and YARWAY CORPORATION.

18          B.      ASBESTOS FIBER DEFENDANTS.  The following defendants designated

19  as "asbestos fiber defendants" are named in their capacities as miners, millers, manufacturers,

20  distributors, and rebranders of asbestos fiber: HILL BROTHERS CHEMICAL COMPANY.

21          C.      INSULATION DEFENDANTS.  The following defendants designated as

22  "insulation defendants" are named in their capacities as companies that manufactured, sold or

23  distributed asbestos-containing thermal insulation products, including but not limited to pipe

24  covering, block insulation, cements, sealants, adhesives, and cloth: METALCLAD INSULATION

25  CORPORATION, individually and as successor in interest to NORTHERN CALIFORNIA

26  INSULATION; PARKER-HANNIFIN CORPORATION, individually and as successor in interest

27  to SACOMO-SIERRA; RAPID-AMERICAN CORPORATION; and UNIROYAL HOLDING,

28  INC.

8

1        D.    GASKET AND PACKING DEFENDANTS. The following defendants

2 designated as "gasket and packing defendants" are named in their capacities as manufacturers and

3 distributors of asbestos-containing products including but not limited to gasket and packing

4 products: A.W. CHESTERTON COMPANY; ALLIED PACKING & SUPPLY, INC.; CRANE

5 CO.; FLOWSERVE CORPORATION, individually and as successor in interest to

6 WORTHINGTON PUMP COMPANY; FLOWSERVE US, INC.; and PARKER-HANNIFIN

7 CORPORATION, individually and as successor in interest to SACOMO-SIERRA.

8        E.    MECHANICAL EQUIPMENT DEFENDANTS. The following defendants

9 designated as "mechanical equipment defendants" are named in their capacities as manufacturers,

10 sellers, distributors and rebranders of asbestos-containing mechanical equipment including but not

11 limited to pumps, valves, turbines, motors, condensors, separators, steam traps, strainers, engines,

12 HVAC systems, steam generators, boilers, cooling tower accessories, cooling exchangers,

13 evaporative coolers, condensing units, flexible duct connectors, forced draft blowers, controller and

14 regulator equipment, refrigeration equipment, heating equipment, heat exchangers, furnaces, and

15 liquid level indicators: AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to

16 BUFFALO PUMPS, INC.; ARMSTRONG INTERNATIONAL, INC.; AURORA PUMP

17 COMPANY; BW/IP, INC., and its wholly-owned subsidiaries; CBS CORPORATION, formerly

18 known as VIACOM, INC., individually and as successor in interest to WESTINGHOUSE

19 ELECTRIC and BF STURDEVANT COMPANY; CLEAVER-BROOKS, INC.; CRANE CO.;

20 CUMMINS INC.; EATON HYDRAULICS LLC, formerly known as VICKERS, INC.;

21 FLOWSERVE CORPORATION, individually and as successor in interest to WORTHINGTON

22 PUMP COMPANY; FOSTER WHEELER USA CORPORATION; FRASER'S BOILER

23 SERVICE, INC.; GARDNER DENVER, INC., formerly known as GARDNER DENVER

24 MACHINERY, INC, individually and as successor in interest to NASH ENGINEERING CO. and

25 NASH PUMPS; GENERAL DYNAMICS CORPORATION; GOULDS PUMPS,

26 INCORPORATED; HENRY VOGT MACHINE CO.; IMO INDUSTRIES, INC., individually and

27 as successor in interest to DELAVAL STEAM TURBINE CO.; INGERSOLL-RAND

28 COMPANY, individually and as successor in interest to TERRY STEAM TURBINE COMPANY;

9

1   ITT CORPORATION, formerly known as ITT INDUSTRIES, INC., individually and as successor

2   to BELL & GOSSETT; MOUVEX-BLACKMER, individually and as successor in interest to THE

3   BLACKMER PUMP POWER & MANUFACTURING COMPANY; PATTERSON PUMP

4   COMPANY, as successor in interest to C.H. WHEELER COMPANY; STERLING FLUID

5   SYSTEM (USA), LLC, formerly known as PEERLESS PUMP COMPANY; SULZER PUMPS

6   (US) INC.; THE NASH ENGINEERING COMPANY; THE WM. POWELL COMPANY;

7   TRANE U.S. INC., formerly known as AMERICAN STANDARD INC.; VIAD CORPORATION,

8   individually and as successor in interest to GRISCOM-RUSSELL and DIAL CORPORATION;

9   VICKERS, LTD, individually and as successor in interest to C.H. WHEELER COMPANY;

10   VIKING PUMP, INC.; WARREN PUMPS, LLC; and YARWAY CORPORATION

11         F.     BOILER DEFENDANTS. The following defendants designated as "boiler

12   defendants" are named in their capacities as manufacturer of boilers and furnaces that contained

13   asbestos-containing insulation, gaskets, packing and refractory products: CLEAVER-BROOKS,

14   INC.; CLEAVER-BROOKS, INC.; CRANE CO.; FOSTER WHEELER USA CORPORATION;

15   FRASER'S BOILER SERVICE, INC.; TRANE U.S. INC., formerly known as AMERICAN

16   STANDARD INC.;

17         G.     SHIPYARD CONTRACTOR DEFENDANTS. The following defendants

18   designated as "shipyard contractor defendants" are named in their capacities as companies that

19   installed, sold, removed and maintained asbestos-containing products, including but not limited to

20   thermal insulation, boilers, gaskets, and packing at shipyards: BAE SYSTEMS HAWAII

21   SHIPYARDS, INC.; BAE SYSTEMS NORFOLK SHIP REPAIR, INC.; BAE SYSTEMS SAN

22   DIEGO SHIP REPAIR, INC.; BAE SYSTEMS SAN FRANCISCO SHIP REPAIR, INC.;

23   FRASER'S BOILER SERVICE, INC.; FRYER-KNOWLES, INC.; HOPEMAN BROTHERS,

24   INC.; M. SLAYEN & ASSOCIATES, INC.; METALCLAD INSULATION CORPORATION,

25   individually and as successor in interest to NORTHERN CALIFORNIA INSULATION; and SYD

26   CARPENTER MARINE CONTRATOR, INC.

27   ///

28   ///

1       H.    CABLE WIRE ELECTRICAL DEFENDANTS.  The following defendants

2 designated as "cable wire electrical defendants" are named in their capacities as companies that

3 manufactured, sold, distributed, installed or removed asbestos-containing electrical equipment and

4 components, including but not limited to: cable wire, circuit breakers, transformers, and switch

5 boxes:  ABB, INC., individually and as successor in interest to GOULD, INC., ITE IMPERIAL

6 CORPORATION, BROWN BOVERI ELECTRIC, INC., GARFIELD MOLDING COMPANY,

7 INC, and MERIDEN MOLDED PLASTICS, INC.

8       I.    CONTRACTOR DEFENDANTS.  The following defendants designated as

9 "contractor defendants" are named in their capacities as companies that manufactured, sold,

10 installed, removed, replaced, supplied, disturbed, manipulated and/or maintained asbestos-

11 containing materials:  SYD CARPENTER MARINE CONTRACTOR, INC.

12       J.    PREMISES DEFENDANTS.  The following defendants designated as

13 "premises defendants" are named in their capacities as owners, lessors, operators, managers,

14 general contractors, sub-contractors or who otherwise controlled the premises during or prior to the

15 time that plaintiff and/or decedent was present, and who caused asbestos-containing products to be

16 fabricated, constructed, installed, maintained, used, replacement, and/or repaired on such premises

17 by their own workers and/or by various contractors so as to allow and cause release of fibers at the

18 time of fabricating, constructing, installing, maintaining, using, replacing and/or repairing the

19 premises resulting in the release of dangerous quantities of toxic asbestos fibers into the air, thereby

20 creating a hazardous condition on the premises:  ELECTRIC BOAT CORPORATION; GENERAL

21 DYNAMICS CORPORATION; LOCKHEED SHIPBUILDING COMPANY, f/k/a LOCKHEED

22 SHIPBUILDING & CONSTRUCTION, and PUGET SOUND BRIDGE AND DRY DOCK

23 COMPANY; TODD SHIPYARDS CORPORATION, and TRIPLE A MACHINE SHOP, INC.

24    5.    At all times mentioned herein, defendants, and each of them, were engaged in the

25 business of mining, milling, manufacturing, testing, developing, processing, importing, converting,

26 compounding, assembling, fabricating, modifying, designing, specifying, approving, supplying,

27 distributing, delivering, packaging, labeling, advertising, marketing, warranting, applying,

28 installing, and inspecting asbestos, and products produced therefrom, for sale to and use by

11

1  members of the general public, as well as for sale to and use by other parties to manufacture,

2  assemble, supply, distribute, label, apply and install products made therefrom, or both.

3      6.     The defendants, and each of them, acting through their agents, servants and/or

4  employees, cause and have caused in the past certain asbestos-containing products and asbestos-

5  related insulation, refractory materials, fireproofing, gasket and packing materials, bulkhead

6  insulation, decking materials, rope, cloth, tile flooring, boiler and turbine covers, as well as various

7  automotive gaskets, brakes, clutch and other materials to be placed on the market and in the stream

8  of interstate commerce with the result that said products and materials came into use by plaintiff

9  and those working in close proximity to plaintiff at relevant times herein.

10     7.     Decedent was exposed to asbestos during the course of his life in the manner and

11  during the time periods set forth below:

12      Decedent was employed at the following locations where he alleges possible exposure to

13  asbestos:

| YEAR(S) | EMPLOYER/LOCATION | JOB TITLE | JOB DUTIES |
|---|---|---|---|
| 1959 – 1962 | Jewell Food Store Chicago, IL | Stock clerk | Stock clerk |
| 1963 – 1968 | United States Navy USS Benjamin Stoddert (DD 622) | GMG2 (gunners mate) | Gunner's Mate |
| 1968 – 1969 | Carl's Super Shell Service Station 95th and Halstead Chicago, IL | Night manager | Night manager |
| 1969 – 1970 | United States Postal Service Congress Expressway Chicago, IL | Clerk | Clerk |
| 1970 – 1971 | Electronic Computer Programming Institute (ECPI) Chicago, IL | Student | Student |
| 1970 – 1972 | United States Postal Service Airport Annex Honolulu, Hawaii | Delivery messenger | Delivery messenger |
| 1974 – 1980 | United States Navy Pearl Harbor Naval Shipyard Building 199 Honolulu, Hawaii 96860 | Police officer | Patrol work in buildings and on ships |

12

FIRST AMENDED COMPLAINT FOR DAMAGES
(WRONGFUL DEATH – ASBESTOS)

| YEAR(S) | EMPLOYER/LOCATION | JOB TITLE | JOB DUTIES |
|---------|-------------------|-----------|------------|
| 1975 – 1976 | Honolulu Community College Honolulu, Hawaii | Student | Student in police sciences |
| 1980 – 1989 | Pearl Harbor Naval Shipyard Honolulu, Hawaii | Marine machinist | Outside marine machinist |
| 1989 – 1994 | Mare Island Naval Shipyard Vallejo, CA and other locations including Alameda Naval Air Station | Marine machinist | Outside marine machinist |
| 2005 – 2007 | Umcqua Bank American Canyon, CA | Bank courier | Bank courier |
| 2007 – 2009 | Charter Oak Bank Napa, CA | Bank courier | Bank courier |

8.     During the course and scope of his employment, Decedent continually worked with and in close proximity to others who were working with asbestos and asbestos-containing products. He routinely and regularly worked in close proximity to asbestos and asbestos-containing products and was continually exposed to asbestos fibers which were released from asbestos and asbestos-containing products which were mined, milled, manufactured, processed, imported, converted, compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and sold by defendants, and each of them.

9.     Decedent's exposure to asbestos was the direct and legal cause of his development of lung cancer and other asbestos-related illnesses and disabilities whose relationship to asbestos is as yet unknown to plaintiff herein.

## FIRST CAUSE OF ACTION

### (Negligence)

FOR A FIRST CAUSE OF ACTION, plaintiffs complain of the defendants, and each of them, and allege:

10.     Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations herein.

///

///

13

11.     At all times relevant herein, defendants and each of them, owed a duty of due care which required them to exercise ordinary care to protect against an unreasonable risk of harm. This duty was owed to Decedent and plaintiffs.

12.     Decedent's development of lung cancer and related conditions is the direct and legal result of the conduct of the defendants, and each of them, in that they negligently and carelessly researched, tested or failed to test, manufactured, designed, specified, developed, labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed, distributed and supplied asbestos and asbestos-containing products. Defendants, and each of them, without any adequate warning to the consumer or user, produced, sold, and otherwise put into the stream of interstate commerce the foregoing materials which said defendants and each of them knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to decedent's body, lungs, respiratory system, skin and health. Further, defendants and each of them knew, or through the exercise of ordinary care should have known, that exposure to asbestos is, and at all times relevant herein has been, associated with terminal and incurable diseases which have caused and continue to cause death.

13.     During the time period when Decedent was exposed to asbestos in the manner described above, he had no knowledge that said exposure placed him at risk for developing the diseases described herein and therefore had no opportunity, nor can he be charged with a duty or breach of duty, to protect himself against said harmful asbestos exposure. Plaintiffs had no knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them, were actionable at law when they were committed and cannot be charged with knowledge or inquiry thereof.

14.     The lung cancer, asbestosis, pleural plaques, and related conditions that afflicted Decedent developed at a microscopic and undetectable level over an extended period of time, without noticeable trauma, and was therefore unknown and unknowable to Decedent until his physicians diagnosed him with lung cancer, asbestosis, pleural plaques and related conditions

///

///

14

1  within the pertinent statute of limitations.  Prior to his diagnosis, Decedent did not know, nor

2  through the exercise of reasonable diligence could he have known, that his disease and related

3  conditions were caused by his exposure to the defendants' asbestos and asbestos-containing

4  products.

5      15.      As a direct and legal result of the conduct of the defendants, and each of them,

6  Decedent developed a disease known and designated as lung cancer, asbestosis, pleural plaques and

7  related conditions, from which he died.

8      16.      And as a further direct and legal result it was necessary for Decedent to retain the

9  services of physicians, hospitals, hospice, and other health care professionals to diagnose, treat, and

10  provide palliative care for Decedent from when he first experienced symptoms related to his

11  asbestos-caused conditions until the end of his life.  Plaintiffs do not yet know the full extent of

12  treatment rendered to Decedent nor the reasonable value of medical services rendered to Decedent

13  herein and therefore requests leave to amend this complaint when that sum is determined.

14      17.      As a direct and legal result of the conduct of the defendants, and each of them, and

15  of Decedent's diagnosis of, and death from, lung cancer, asbestosis, pleural plaques and related

16  conditions, Decedent was unable to follow his normal or any gainful occupation for certain periods

17  of time preceding his diagnosis and until Decedent's death.  Plaintiffs and Decedent incurred, and

18  will incur, loss of income, wages, pensions, earning potential, profits and commissions, and other

19  pecuniary losses. Plaintiffs do not know the amount of said past losses and therefore request leave

20  to amend this complaint when that sum is determined.

21      18.      As a further, direct and proximate result of the conduct of defendants, and each of

22  them, plaintiffs buried Decedent and incurred damages for consequential costs of Decedent's

23  funeral, burial and related expenses in a sum to be subsequently determined.

24      19.      As a further direct and legal result of the conduct of the defendants, and each of

25  them, plaintiffs sustained the loss of Decedent's love, companionship, comfort, care, assistance,

26  protection, affection, society, support, teaching and tutelage, all to plaintiffs' damage in an amount

27  of at least $50,000.

28  ///

15

20.  Since 1924, the defendants, and each of them, knew or should have known of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the Decedent, and others in Decedent's position working in close proximity with such materials. The defendants, and each of them, knew or should have known of the dangerous propensities of the aforementioned materials and products since before that time.

21.  Although defendants knew or should have known of the aforementioned information, defendants, and each of them, negligently, carelessly, and recklessly failed to label any of the aforementioned asbestos-containing materials and products, including those with which and around which Decedent worked such as thermal insulation materials specified for or on/in boilers, regarding the hazards of such materials and products to the health and safety of Decedent and others in Decedent's position working in close proximity with such materials until 1964.

22.  Commencing in 1964, many of such asbestos-containing materials were not labeled as hazardous by all of the defendants herein, despite the fact that the knowledge of such hazards existed and that defendants, and each of them, knew or should have known of such hazards since 1924. At all times herein mentioned, defendants, and each of them, negligently, carelessly, and recklessly:

A.  failed to provide information relating to the danger of the use of the aforementioned materials to Decedent and others in Decedent's position and the general public concerning the dangerous nature of the aforementioned materials to workers

B.  failed to disseminate such information in a manner which would give general notice to the public and knowledge of the hazardous nature thereof, when defendants were bound to disclose such information;

C.  sold the aforementioned products and materials to Decedent's employer(s) and others without advising such employers and others of dangers of the use of such materials to persons working in close proximity thereto, when defendants knew or should have known of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers.

///

16

1    D.  negligently, carelessly and recklessly misrepresented to Decedent, others in

2  Decedent's position, and Decedent's employer that it was safe for Decedent to work in close

3  proximity to such materials, when they knew that this was not the case.

4    E.  negligently, carelessly and recklessly failed to disclose to Decedent, others in

5  Decedent's position, Decedent's employer, and members of the general public, medical and

6  scientific data and knowledge of the results of studies including, but not limited to, the information

7  and knowledge of the contents of the Lanza report.

8    23.    Defendants, and each of them, knew or should have known  of the connection

9  between inhalation of asbestos fibers and lung cancer, asbestosis, pleural plaques, and related

10  conditions which information was disseminated through the Asbestos Textile Institute and other

11  industry organizations to all other defendants, and each of them, herein.

12    24.    At all times mentioned herein, defendants, and each of them, knew or should have

13  known of the connection between inhalation of asbestos fibers and cancer, which information

14  disseminated through the Asbestos Textile Institute and other industry organizations to all other

15  defendants herein.

16    25.    Defendants, and each of them, negligently, carelessly and recklessly failed to

17  provide the above described medical and scientific data to Decedent, others in Decedent's position,

18  Decedent's employer(s), and members of the general public concerning such knowledge of danger,

19  when defendants were bound to disclose it;

20    26.    Defendants, and each of them, knew or should have known that said asbestos-

21  containing materials were dangerous when breathed and caused pathological effects without

22  noticeable trauma, and that such material was dangerous and a threat to the health of persons

23  coming into contact therewith.  Defendants, and each of them negligently, carelessly and recklessly

24  did not warn Decedent, other's in Decedent's position, Decedent's employer(s) and the general

25  public of this information.

26    27.    Defendants, and each of them, knew or should have known that adequate protective

27  masks and devices should be used by workers such as Decedent when applying and installing the

28  asbestos-containing products of the defendants.  Defendants, and each of them, knew or should

17

1   have known that not wearing an adequate protective mask and/or device would result in injury to

2   the Decedent and others applying and installing such materials. Defendants, and each of them,

3   negligently, carelessly and recklessly do not inform workers such as Decedent, and others applying

4   and installing such materials of the aforementioned information.

5        28.    Defendants, and each of them, knew or should have known that Decedent and

6   anyone similarly situated in an industrial and construction setting would be exposed to defendants'

7   asbestos-containing products, and that, upon inhalation of asbestos such persons would, in time,

8   develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all. Defendants,

9   and each of them, negligently, carelessly and recklessly failed to provide information to the public

10  at large and buyers, users, and physicians employed by Decedent and Decedent's employer for the

11  purpose of conducting physical examinations of Decedent and others working with or near asbestos

12  that exposure to these materials would cause pathological effects without noticeable trauma.

13       29.    The foregoing acts of the defendants, and each of them, and the negligent, careless

14  and reckless conduct of the defendants, and each of them, as described hereinabove, and were done

15  recklessly, wantonly, willfully, oppressively, and in conscious disregard of the safety of Decedent

16  herein, in that:

17       A.  The defendants, and each of them, prior to and at the time of sale, distribution or

18  supply of the aforementioned products to Decedent's employer or to others who in turn sold to

19  Decedent's employers, and to other persons relevant herein, knew or should have known that the

20  foregoing asbestos fibers released from said products during the foreseeable operations of applying

21  and removing same, were dangerous when inhaled.

22       B.  Defendants, and each of them, knew or should have known of the hazards and

23  dangers of working with or around asbestos products produced or supplied by defendants, and each

24  of them. The defendants, and each of them, knew or should have known that said products would

25  be used by Decedent and others who had no knowledge of the dangerous and hazardous nature

26  thereof.

27  ///

28  ///

18

1     C.  Defendants, and each of them, either did not warn or insufficiently warned

2  regarding the dangerous nature of said products.  Defendants, and each of them, did not place a

3  sufficient warning on the said product or package thereof regarding said dangerous nature.

4  Accordingly, plaintiffs are entitled to an award of punitive damages.

5     WHEREFORE, plaintiffs pray judgment as hereinafter set forth.

6               **SECOND CAUSE OF ACTION**

7               **(Strict Products Liability)**

8     AS AND FOR A SECOND CAUSE OF ACTION, plaintiffs complain of the defendants,

9  and each of them, and allege:

10    30.     Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

11  fully set forth herein, each and every allegation contained in the General Allegations and the First

12  Cause of Action herein, except allegations pertaining to negligence contained in Paragraphs 11

13  through 14 herein.

14    31.     At all times mentioned herein defendants, and each of them, during the ordinary

15  course of business, mined, milled, manufactured, imported, supplied, distributed, delivered,

16  packaged, labeled, advertised, sold, marketed, distributed, delivered, installed, applied and

17  otherwise introduced into the stream of commerce asbestos and asbestos-containing products which

18  were defective due to their design, manufacture, sufficiency or lack of warning, and/or failure to

19  meet ordinary use or consumer expectations of safety when used in an intended or reasonably

20  foreseeable manner.

21    32.     The asbestos and asbestos-containing products were defective when the defendants,

22  and each of them, marketed and introduced them into the stream of commerce.  Defendants, and

23  each of them, knew that the aforementioned products would be used without inspection for defects

24  by the user thereof.

25    33.    At all times herein mentioned Decedent, Decedent's employer, and other persons

26  relevant herein, purchased from defendants, and each of them, asbestos and asbestos-containing

27  products.

28  ///

*Bond, et al. v. A. W. Chesterton Company, et al.*     FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. RG-09-450785             (WRONGFUL DEATH--ASBESTOS)

34. *Defective Design*: The products were defectively designed in that:

    A. The products failed to perform as safely as an ordinary consumer would expect in their intended or reasonably foreseeable use or manner of operation, or,

    B. The products had inherent risks of danger that outweighed their benefits; alternate and safer substitute products existed and the state-of-the-art required their use given the seriousness of the potential danger, likelihood of its occurrence, feasibility, cost and adverse consequences to the product and to the consumer of a safer alternative design.

35. *Failure to Warn*: Defendants knew or reasonably should have known of the dangerous propensities of their products but nonetheless distributed and marketed their products with inadequate warning of its dangers.

36. Each of Defendants' products reached Decedent without substantial change in its condition.

37. The aforementioned products were used by Decedent and those in close proximity to Decedent in a foreseeable manner, and in the manner for which they were intended. Defendants' products were used in a manner reasonably foreseeable by Defendants, which Defendants intended or knew they would be used, or for which they marketed them or knew they were marketed to be used.

38. At all times mentioned herein, plaintiffs and Decedent were unaware of the dangerous nature of the aforementioned products.

39. The defective design of Defendants' products and failure to warn were the proximate causes of Decedent's injuries and death.

40. As a direct and legal result of the conduct of the defendants, and each of them, Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth, from which he died.

41. The aforementioned products were used by Decedent and those in close proximity to Decedent in a foreseeable manner, and in the manner for which they were intended.

///
///

20

*Bond, et al. v. A. W. Chesterton Company, et al.*
Case No. RG-09-450785        FIRST AMENDED COMPLAINT FOR DAMAGES
(WRONGFUL DEATH--ASBESTOS)

42.     A.  Defendants, and each of them, knew that defendants' asbestos-containing products would be used by Decedent and anyone similarly situated in an industrial and construction setting without inspection for defects.

B.  Defendants, and each of them, knew that such persons would be exposed to defendants' asbestos-containing products.

C.  Defendants, and each of them, knew that, upon inhalation of asbestos from defendant's asbestos-containing products, such persons would, in time, develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all.

D.  At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, defendants and each of them knew or should have known of the risks and hazards associated with the use and/or exposure of its products.

E.  At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them failed to warn or provided inadequate warnings to persons who used or would be exposed to its defective asbestos-containing products, including Decedent, of the dangers and hazards associated with its products.

F.  At the time defendants, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, defendants, and each of them failed to provide instructions or provided inadequate instructions to persons who used its defective asbestos-containing products, or who would be exposed to said products, including Decedent, of the dangers and hazards associated with its products.

G.  Defendants, and each of them, prior to and at the time of placing the aforementioned products in to the stream of commerce, including but not limited to supplying said products to Decedent's employer or to others who in turn sold to Decedent's employers, and to other persons relevant herein, knew that the asbestos which Decedent and others around him were exposed to was dangerous. The defendants, and each of them, either did not warn or insufficiently

///

///

21

1  warned regarding the dangerous nature of said products, and failed to place a sufficient warning on

2  the said product or package thereof regarding said dangerous nature, despite knowing that said

3  products would be used by Decedent and others around him who had no knowledge of the

4  dangerous and hazardous nature thereof.

5  43.  The conduct of the Defendants, and each of them, was motivated by their financial

6  interests.  In this financial pursuit, Defendants consciously disregarded the safety of users, and

7  persons exposed to their products, and were consciously willing to permit their products and

8  premises to injure workers and others, including Decedent in order to maximize profits.  They

9  consciously disregarded the well-publicized risks of asbestos exposure because to have kept

10  consumers and end users like Decedent safe would have required said defendants to make less

11  money or limit distribution of their products.  The defendants, and each of them, either did not

12  warn or insufficiently warned regarding the dangerous nature of said products, nor placed a

13  sufficient warning on the said product or package thereof regarding said dangerous nature, despite

14  knowing that said products would be used by Decedent and others around him who had no

15  knowledge of the dangerous and hazardous nature thereof.  Defendants' conduct as described

16  herein was and is willful, malicious, outrageous, and in conscious disregard and indifferent to the

17  safety and health of workers and others exposed to asbestos, including Decedent, and therefore

18  Plaintiffs are entitled to an award of punitive damages.

19  WHEREFORE, plaintiffs pray judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Failure to Warn)

22  AS AND FOR A THIRD CAUSE OF ACTION, plaintiffs complain of the defendants, and

23  each of them, and allege:

24  44.  Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

25  fully set forth herein, each and every allegation contained in the General Allegations and the First

26  and Second Causes of Action herein, except allegations pertaining to negligence contained in

27  Paragraphs 11 through 14 herein and those allegations pertaining to design and manufacturing

28  defect contained in the Second Cause of Action.

22

45.    At all relevant times, the asbestos and asbestos-containing products which were mined, milled, manufactured, tested, developed, processed, imported, converted, compounded assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by defendants, and each of them, were defective as a result of defendants' failure to warn or give adequate warning that the particular risk of developing an asbestos-related disease, and risk of death from an asbestos-related disease resulting from exposure to asbestos, rendered the product unsafe for its intended or reasonably foreseeable use.

46.    At all relevant times, the defendants and each of them had specific knowledge of these risks or could have known of these risks by the application of scientific knowledge available at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying, approving, inspecting, applying and installing the asbestos and asbestos-containing products.

47.    As a direct and legal result of the conduct of the defendants, and each of them, Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiffs pray judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Breach of Warranties)

AS AND FOR A FOURTH CAUSE OF ACTION, plaintiffs complain of defendants, and each of them, and allege:

48.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the General Allegations and the First Cause of Action herein, except allegations pertaining to negligence contained in Paragraphs 11 through 14 herein.

///

///

///

23

49.     The defendants, and each of them, sold, supplied, delivered or otherwise distributed to Decedent, or to another purchaser or user who subsequently sold, supplied, delivered or otherwise distributed to Decedent, or to others working in close proximity to Decedent, the above-described asbestos and asbestos-containing products to which Decedent was exposed.

50.     The defendants, and each of them, knew the intended purpose of the asbestos and asbestos-containing products prior to marketing said products, and knew or should have known that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing these products.

51.     The defendants, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose.

52.     Defendants, and each of them, impliedly warranted that their products were of merchantable quality and safe, fit and proper for the uses which Defendants knew or intended were to be made of them at the time of selling them.

53.     Decedent reasonably relied on the skill, knowledge and judgment of defendants, and each of them, in Decedent's use of the products as a basis of the bargain under which such products were bought and used.

54.     The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by defendants, and each of them, in that said products had dangerous propensities when put to the use for which each of these Defendants knew or intended they were marketed or sold, and would cause severe injury to users or bystanders, such as Decedent.

55.     The defendants, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, advising Decedent and others working in close proximity to Decedent that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing said products.

///

24

56.    As a direct and legal result of the conduct of the defendants, and each of them, Decedent developed an asbestos-related disease known and designated as asbestos related lung cancer, from which he died.  Plaintiffs have incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiffs pray judgment as is hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Fraud and Conspiracy)

AS AND FOR A FIFTH CAUSE OF ACTION, plaintiffs complain of the defendants, and each of them, and allege:

57.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though fully set forth herein, each and every allegation contained in the First through Fourth Causes of Action herein.

58.    Pursuant to Section 1708 of the Civil Code of California, the defendants and each of them, owed a duty to Decedent at all times relevant herein to abstain from injuring the Decedent or infringing upon any of his rights.

59.    The defendants, and each of them, breached the duty they owed to Decedent and plaintiffs pursuant to Section 1708 of the Civil Code of California by willfully deceiving him with the intent to induce him to alter his position to his injury or risk. The defendants, and each of them, deceived the Decedent and committed actionable fraud pursuant to Section 1709 and Section 1710 of the Civil Code of California.

60.    The defendants, and each of them, as more fully set forth below, suggested as fact that which was not true, and that which defendants, and each of them, did not believe was true.

61.    The defendants, and each of them, as more fully set forth below, asserted as fact that which was not true, and that which defendants, and each of them, had no reasonable grounds for believing was true.

62.    The defendants, and each of them, as more fully set forth below, suppressed facts which they were obligated to disclose, and gave information of other facts which were likely to mislead for want of communication of the undisclosed facts.

25

63.     The defendants, and each of them, made promises without any intention of keeping those promises.

64.     Since 1924, the defendants, and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the Decedent, and others in plaintiffs' position working in close proximity with such materials. The defendants, and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time, and with intent to deceive Decedent, and others in his position, and with intent that he and such others should be and remain ignorant of such facts, and with intent to induce Decedent and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages did do the following acts:

A.     Defendants, and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Decedent and others in Decedent's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the defendants herein, despite the fact that the knowledge of such hazards existed and was known to defendants, and each of them, since 1924. By not labeling such materials as to their said hazards, defendants, and each of them, caused to be suggested as a fact to Decedent and Decedent's employer that it was safe for Decedent to work in close proximity to such materials when in fact it was not true and defendants did not believe it to be true;

B.     Defendants, and each of them, suppressed information relating to the danger of the use of the aforementioned materials by requesting the suppression of information to the Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers and by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof, when defendants were bound to disclose such information;

///

///

26

Bond, et al. v. A. W. Chesterton Company, et al.          FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. RG-09-450785                                     (WRONGFUL DEATH--ASBESTOS)

1    C.    Defendants, and each of them, sold the aforementioned products and materials

2    Decedent's employer and others without advising such employers and others of dangers of the use

3    of such materials to persons working in close proximity thereto, when defendants knew of such

4    dangers, as set forth herein; and, as set forth above, had a duty to disclose such dangers. Thereby,

5    defendants caused to be positively asserted to Decedent's employer that which was not true and

6    which defendants had no reasonable ground for believing to be true, and in a manner not warranted

7    by the information possessed by said defendants, and each of them, to wit, that it was safe for

8    Decedent to work in close proximity to such materials;

9    D.    Defendants, and each of them, suppressed and continue to suppress from everyone,

10   including Decedent and Decedent's employer, medical and scientific data and knowledge of the

11   results of studies including, but not limited to, the information and knowledge of the contents of the

12   Lanza report. Although bound to disclose it, defendants, and each of them, influenced A. J. Lanza

13   to change his report, the altered version of which was published in Public Health Volume at page I

14   in 1935, thereby causing Decedent to be and remain ignorant thereof.  Defendants, and each of

15   them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger,

16   thereby lessening the probability of notice of danger to the users thereof;

17   E.    Defendants, and each of them, belonged to, participated in, and financially

18   supported the Asbestos Textile Institute and other industry organizations which, and on behalf of

19   defendants, and each of them, actively promoted the suppression of information of danger to users

20   of the aforementioned products and materials, thereby misleading Decedent and Decedent's

21   employer by the suggestions and deceptions set forth above in this cause of action. The Dust

22   Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos

23   Textile Institute was specifically enjoined to study the subject of dust control.   Discussions in this

24   committee were held many times regarding the dangers inherent in asbestos and the dangers which

25   arise from the lack of control of dust, and the suppression of such information from 1946 to a date

26   unknown to plaintiffs at this time;

27   /-/-/

28   / / /

27

Bond, et al. v. A. W. Chesterton Company, et al.              FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. RG-09-450785                                         (WRONGFUL DEATH--ASBESTOS)

F.     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos- Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and lung cancer, asbestosis, pleural plaques, and related conditions which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein. Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein. Thereby, defendants suggested as a fact that which is not true and disseminated other facts likely to mislead Decedent and Decedent's employer and which did mislead them by withholding afore described medical and scientific data and by not giving Decedent or Decedent's employer the true facts concerning such knowledge of danger, when defendants were bound to disclose it;

G.     Defendants, and each of them, failed to warn Decedent and Decedent's employer that said materials were dangerous when breathed and caused pathological effects without noticeable trauma, despite the fact that defendants possessed knowledge and were under a duty to disclose that such material was dangerous and a threat to the health of persons coming into contact therewith;

H.     Defendants, and each of them, failed to provide Decedent with information concerning adequate protective masks and devices to be used when applying and installing the products of the defendants, and each of them, despite the knowledge of defendants and a duty to disclose that such protective measures were necessary and would result in injury to the Decedent and others applying and installing such materials if not so advised;

///
///
///
///

28

1    I.    Defendants, and each of them, concealed from Decedent the true nature of the

2    industrial and construction exposure of Decedent, and knew that Decedent and anyone similarly

3    situated, upon inhalation of asbestos would, in time, develop irreversible conditions of either

4    pneumoconiosis, asbestosis or cancer, or all, and that the materials to which he was exposed would

5    cause pathological effects without noticeable trauma despite the fact that defendants were under a

6    duty to and bound to disclose it; and

7         J.    Defendants, and each of them, failed to provide information to the public at large

8    and buyers, users, and physicians employed by Decedent and Decedent's employer for the purpose

9    of conducting physical examinations of Decedent and others working with or near asbestos of the

10   true nature of the hazards of asbestos, and that exposure to these materials would cause

11   pathological effects without noticeable trauma to the public, including buyers, users, and

12   physicians employed by Decedent and Decedent's employer so that said physicians could examine,

13   diagnose and treat Decedent and others who were exposed to asbestos, despite the fact that

14   defendants, and each of them, were under a duty to so inform and said failure was misleading.

15        65.   Defendants, and each of them, having the aforementioned knowledge of facts and

16   knowing that the Decedent did not possess such knowledge, acted falsely and fraudulently and with

17   full intent to cause Decedent to remain unaware of those facts and to induce Decedent to work with

18   and around unsafe products in a dangerous environment, all in violation of Section 1710 of the

19   Civil Code of the State of California.

20        66.   At all times mentioned, the defendants, and each of them, knowingly and willfully

21   conspired and agreed among themselves to perpetrate upon Decedent the unlawful acts complained

22   of in Paragraph 20 through 29 of the First Cause of Action, and this Fifth Causes of Action.

23        67.   The defendants, and each of them, and at least one of them, did the acts herein

24   alleged in Paragraphs 59 through 64 of this Cause of Action in furtherance of the conspiracy and

25   agreement as herein alleged, and also acted in furtherance of a conspiracy and agreement between

26   and among the defendants, and each of them, to violate State and Federal laws and regulations, the

27   ///

28   ///

29

1    exact nature and extent of which are unknown at this time, but known full well to defendants, and

2    each of them. These actions were done maliciously, wantonly, and in reckless disregard for the

3    health and safety of others, including Decedent herein.

4         68.    Decedent reasonably relied upon the misrepresentations of the defendants, and each

5    of them, and in reliance on same continued to work with and around asbestos and asbestos-

6    containing products. Decedent would have taken steps to protect his health and life had he known

7    the facts, which were known to the defendants, and each of them, about exposure to asbestos and

8    asbestos-containing products. Decedent would not have knowingly continued to work in an unsafe

9    environment. He had no knowledge of the foregoing facts and actions of the defendants, and each

10   of them, at the time when they were committed, and cannot be charged with knowledge or inquiry

11   thereof.

12        69.    As a direct and legal result of the conduct of the defendants, and each of them,

13   Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related

14   conditions and disabilities as previously set forth, from which he died.  Plaintiffs have incurred

15   damages in excess of $50,000.00 in addition to the special damages alleged.

16        WHEREFORE, plaintiffs pray judgment as is hereinafter set forth.

17                        SIXTH CAUSE OF ACTION

18            (False Representation Under Restatement Torts Section 402-B)

19        AS AND FOR A SIXTH CAUSE OF ACTION, plaintiffs complain of the defendants, and

20   each of them, and allege:

21        70.    Plaintiffs incorporate by reference as though fully set forth herein, each and every

22   allegation of the First, Second, Third, Fourth, and Fifth Causes of Actions herein.

23        71.    At the aforementioned time when defendants, and each of them, researched,

24   manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed,

25   advertised, marketed, warranted, inspected, repaired, offered for sale and sold the said asbestos and

26   asbestos-containing products, as hereinabove set forth, the defendants, and each of them, expressly

27   ///

28   ///

30

*Bond, et al. v. A. W. Chesterton Company, et al.*          FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. RG-09-450785                                        (WRONGFUL DEATH–ASBESTOS)

1    and impliedly represented to members of the general public, including the purchasers and users of

2    said product, and including Decedent herein and his employers, that asbestos and asbestos-

3    containing products were of merchantable quality, and safe for the use for which they were

4    intended.

5        72.    The purchasers and users of said asbestos and asbestos-containing products,

6    including Decedent and his employers, relied upon said representations of defendants and each of

7    them, in the selection, purchase and use of asbestos and asbestos-containing products.

8        73.    Said representations by defendants, and each of them, were false and untrue, in that

9    the asbestos and asbestos-containing products were not safe for their intended use, nor were they of

10   merchantable quality as represented by defendants, and each of them, in that asbestos and asbestos

11   containing products have very dangerous properties and defects whereby said products cause lung

12   cancer, asbestosis, pleural plaques, and other diseases, and have other defects that cause injury and

13   damage to the users of said products, including the Decedent herein, thereby threatening the health

14   and life of Decedent.

15       74.    As a direct and legal result of the conduct of the defendants, and each them

16   Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related

17   conditions and disabilities as previously set forth, from which he died.  Plaintiffs have incurred

18   damages in excess of $50,000.00 in addition to the special damages alleged herein.

19           WHEREFORE, plaintiff prays judgment as hereinafter set forth.

20                   **SEVENTH CAUSE OF ACTION**

21                   **(Survival Action and Punitive Damages)**

22           AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiffs complain of the defendants,

23   and each of them, and allege as follows:

24       75.   Plaintiffs hereby incorporate each allegation contained in each and every paragraph

25   of the General Allegations and the First through Sixth Causes of Action, inclusive, as though fully

26   realleged in respect to this cause of action.

27   ///

28   ///

                                             31

*Bond, et al. v. A. W. Chesterton Company, et al.*          FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. RG-09-450785                                       (WRONGFUL DEATH--ASBESTOS)

76.   Prior to his death, Decedent had a cause of action against defendants herein for personal injuries arising from his exposure to asbestos. Subsequent to the arisal of this cause of action and within the pertinent statutes of limitation, Decedent who would have been the plaintiff in this action if he had lived, died.

77.   As a proximate result of the conduct of defendants, and each of them, Decedent was required to, and did, employ physicians and surgeons to examine, treat and care for him and did incur medical and incidental expenses in a sum to be subsequently determined.

78.   As a further, direct and proximate result of the conduct of defendants, and each of them, Decedent was prevented from attending to his usual occupation for a period of time and thereby incurred damages for loss of earnings in a sum to be subsequently determined.

79.   As a further, direct and proximate result of the conduct of defendants, and each of them, Plaintiffs buried Decedent and incurred damages for consequential costs of Decedent's funeral and burial in a sum to be subsequently determined.

80.   As a direct and legal result of the conduct of the defendants, and each of them, prior to Decedent's death, Decedent sustained the damages alleged herein, in an amount of at least $50,000.

WHEREFORE, plaintiffs MARISA BOND, individually and as successor in interest to ALAN BOND, Deceased; and ALLEN PAGAN pray judgment as follows:

**First, Second, and Fifth Causes of Action**

1.   General damages in an amount in excess of $50,000.00 in accordance with proof;

2.   Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3.   Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with proof;

4.   Special damages in accordance with the proof;

5.   Prejudgment interest and post-judgment interest in accordance with law;

6.   Costs of suit; and,

7.   Such and other and further relief as the Court deems just and proper.

32

*Bond, et al. v. A. W. Chesterton Company, et al.*          FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. RG-09-450785                                    (WRONGFUL DEATH--ASBESTOS)

**Third, Fourth, and Sixth Causes of Action**

1. General damages in an amount in excess of $50,000.00 in accordance with proof;

2. Special damages in accordance with the proof;

3. Prejudgment interest and post-judgment interest in accordance with law;

4. Costs of suit; and,

5. Such and other and further relief as the Court deems just and proper.

**Seventh Cause of Action**

1. General damages in an amount in excess of $50,000.00 in accordance with proof;

2. Special damages in accordance with the proof;

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with proof;

4. Prejudgment interest and post-judgment interest in accordance with law;

5. Costs of suit; and

6. Such and other and further relief as the Court deems just and proper.

DATED: June 28, 2011                    BRENT COON & ASSOCIATES

                                        By: _____
                                            RICHARD A. BRODY
                                            Attorneys for Plaintiffs

33