1  Ronald A. McIntire, Bar No. 127407
   RMcIntire@perkinscoie.com
2  Bo W. Kim, Bar No. 217394
   BKim@perkinscoie.com
3  **PERKINS COIE LLP**
   1888 Century Park East, Suite 1700
4  Los Angeles, CA  90067-1721
   Telephone: 310.788.9900
5  Facsimile:  310.843.1284

6  Attorneys for Defendant
   THE BOEING COMPANY
7

8
9                UNITED STATES DISTRICT COURT
10              FOR NORTHERN DISTRICT OF CALIFORNIA
11              BEFORE THE JUDICIAL PANEL ON
                   MULTIDISTRICT LITIGATION
12

| | |
|---|---|
| 13  IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION | MDL Case No. 875 |
| 15  PATTI DONLON, Individually and as Successor-in-Interest to the Estate of PATRICK THEISEN DONLON, Decedent, SEAN DONLON; and DOES ONE through TEN, inclusive,<br><br>Plaintiffs,<br><br>v.<br><br>AC AND S, INC., et al.,<br><br>Defendants. | N. D. Cal. Case No. CV 11 3376<br><br>**DEFENDANT THE BOEING COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER**<br><br>Panel Hearing Date:     September 27, 2011 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 1

III. ARGUMENT .................................................................................................................... 2

    A. A Decision to Transfer This Action to the Eastern District of Pennsylvania is Ripe as Defendants Initially Alleged a Proper Basis for Removal ..................... 2

    B. The Broad and Liberal Standard for Federal Officer Removal Under 28 U.S.C. § 1442(a)(1) ............................................................................................. 3

    C. UTC's Notice of Removal Satisfies the Liberal Pleading Requirements of 28 U.S.C. § 1446(a) .................................................................................................. 5

    D. Boeing Has Satisfied the Requirements for Asserting Federal Officer Removal .................................................................................................................. 6

        1. Boeing is a "person" within the meaning of the Federal Officer Removal statute. ................................................................................... 6

        2. Boeing was "acting under" a federal officer in manufacturing the T-28 and SNJ aircraft ......................................................................... 7

        3. Boeing raises a colorable government contractor defense ......................... 8

            a. The government contractor defense applies to failure to warn claims .................................................................................. 10

                (i) *Boyle* only requires that the government retain discretion over warnings, not that it actually dictate or prohibit specific warnings ............................................. 10

            b. The T-28 and SNJ aircraft were not off-the-shelf products .......... 13

IV. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Boyle v. United Technologies Corp.*,
   487 U.S. 500 (1988) .................................................................................................... passim

*Durham v. Lockheed Martin Corp.*,
   445 F.3d 1247 (9th Cir. 2006) ............................................................................................. 1, 4

*Getz v. Boeing*,
   2011 WL 3275957 (9th Cir. 2011) ..................................................................................... passim

*Hagen v. Foster*,
   739 F. Supp. 2d 770 (E.D. Pa. 2010) .......................................................................................... 5

*Hudgens v. Bell Helicopters/Textron*,
   328 F.3d 1329 (11th Cir. 2003) ................................................................................................. 9

*In re Hawaii Federal Asbestos Cases*,
   960 F.2d 806 (9th Cir. 1992) ............................................................................................. 11, 13

*Jefferson County v. Acker*,
   137 F.3d 1314 (11th Cir. 1998), *rev'd on other grounds*, 527 U.S. 423 (1999) .................. 4, 9

*Jefferson County v. Acker*,
   527 U.S. 423 (1999) ............................................................................................... 3, 4, 7, 10

*Kerstetter v. Pac. Scientific Co.*,
   210 F.3d 431 (5th Cir. 2000) ..................................................................................................... 9

*Lopez v. Three Rivers Elec. Coop.*,
   166 F.R.D. 413 (E.D. Mo. 1996) ............................................................................................... 7

*Mesa v. California*,
   489 U.S. 121 (1989) ........................................................................................................ 4, 8, 9

*Miller v. Diamond Shamrock*,
   275 F.3d 414 (5th Cir. 2001) ............................................................................................ 13, 14

*Oliver v. Oshkosh Truck Corp.*,
   96 F.3d 992 (7th Cir. 1996) ....................................................................................................... 9

*Papapetrou v. Boeing Company*,
   2008 WL 548770 (N.D. Ill. 2008) ............................................................................................. 7

*Ramey v. Martin Baker Aircraft Co.*,
   874 F.2d 946 (4th Cir. 1989) ..................................................................................................... 9

# TABLE OF AUTHORITIES
(continued)

**Page**

*Snell v. Bell Helicopter Textron, Inc.*,
 107 F.3d 744 (9th Cir. 1997)......................................................................................... 2, 9

*Tate v. Boeing Helicopters,*
 140 F.3d 654 (6th Cir. 1998)............................................................................................. 9

*Venezia v. Robinson*,
 16 F.3d 209 (7th Cir. 1994)............................................................................................... 4

*Watson v. Philip Morris Companies*,
 551 U.S. 142 (2007)........................................................................................................... 8

*White v. Humana Health Plan, Inc.*,
 No. 06 C 5546, 2007 WL 1297130 (N.D. Ill. May 2, 2007)......................................... 5

*Willingham v. Morgan*,
 395 U.S. 402 (1969)...................................................................................................... 1, 4

*Winters v. Diamond Shamrock Chem. Co.*,
 149 F.3d 387 (5th Cir. 1998)..................................................................................... passim

**STATUTES**

28 U.S.C. § 1442(a) .............................................................................................................. 1, 8, 11

28 U.S.C. § 1442(a)(1) ............................................................................................................ passim

**28 U.S.C. § 1446(a)** ...................................................................................................................... 5

**OTHER AUTHORITIES**

14C Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 3733 at 645-46
 (West 2009).......................................................................................................................... 5

## I. INTRODUCTION

Plaintiffs' Motion to Vacate lacks merit. This case arises out of decedent Patrick Donlon's alleged asbestos exposure from U.S. military aircraft, and hence belongs in federal court and should be transferred to the Multidistrict Litigation Docket 875. The Boeing Company's ("Boeing'") military aircraft at issue were designed and manufactured under contracts with and pursuant to specifications provided by the U.S. Government. Plaintiffs' Motion to Vacate should be denied for the following reasons:

1. Boeing has an absolute right to remove this case under the federal officer removal statute. 28 U.S.C. § 1442(a); *see Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

2. Plaintiffs' motion lacks merit, because it incorrectly assumes that Boeing is required to prove its entitlement to a federal defense before removing to federal court. This is not the law. Boeing is not required to prevail on its defenses at this stage; it is merely required to set forth "colorable" bases to support its removal. *Willingham v. Morgan*, 395 U.S. at 407.

3. Under *Getz v. Boeing*, 2011 WL 3275957 (9th Cir. 2011), the government contractor defense is not only applicable to failure to warn claims, but also does not require removing a defendant to produce evidence that specific warnings were required or rejected by the Government. The evidence submitted herewith demonstrates that Boeing issued warnings pertaining to the relevant military aircraft and component parts under close government supervision and control, pursuant to comprehensive and detailed contracts and specifications provided by the United States Navy.

Plaintiffs' Motion should be denied, as removal was proper, and this case should transfer to the MDL.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This is an asbestos wrongful death action by plaintiffs Patti Donlon, Individually and as Successor-in-Interest to the Estate of Patrick Theisen Donlon, and Sean Donlon ("Plaintiffs"). Plaintiffs claim that the decedent Patrick Donlon developed an asbestos-related disease as a result

of exposure to asbestos fibers released from defendants' products; among the many alleged exposures, Plaintiffs claim Mr. Donlon's work on U.S. Navy airplanes exposed him to asbestos fibers. (Attachment 1 hereto, Declaration of Bo W. Kim, previously filed in the Northern District of California in Support of Defendant The Boeing Company's Joinder in Defendant United Technology Corporation's Notice of Removal of Action Under 28 U.S.C. § 1442(a)(1) (hereinafter "Kim Decl."), p. 49.)

On July 12, 2011, Boeing was notified for the first time that plaintiffs' allegations against Boeing were related to the North American Aviation T-28 and SNJ aircraft. (Kim Decl. ¶ 4.) On July 8, 2011, defendant United Technologies Corporation's ("UTC") removed this case to the Northern District of California on federal officer jurisdiction grounds. On July 25, 2011, Boeing filed its Joinder to UTC's Notice of Removal. On July 20, 2011, the United States Judicial Panel on Multidistrict Litigation issued a conditional transfer order to the Eastern District of Pennsylvania. On August 9, 2011, plaintiffs filed their Motion to Vacate the Conditional Transfer Order.[1]

### III.  ARGUMENT

**A.  Failure to Warn Claims Involving Military Aircraft Are Subject to Federal Jurisdiction**

Plaintiffs argue that conditional transfer to the MDL in the Eastern District of Pennsylvania is not ripe, because they expressly waived their claims to all but state law failure to warn claims. (Pls. Mem. 6:19-9:1). However, a disclaimer of the federal nature of a claim does not preclude the assertion of a federal defense. *See Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 749 (9th Cir. 1997) ("[W]hether the defense will apply cannot be determined by the label attached to the claim.") Plaintiffs' argument was flatly rejected by the Ninth Circuit Court of Appeals in *Getz v. Boeing*, wherein the court held that failure to warn claims are subject to the government contractor defense when a contractor "show[s] that it acted in compliance with reasonably precise specifications imposed on it by the United States in deciding whether to

---

[1] On August 5, 2011, plaintiffs filed their Motion to Remand in the Northern District of California, noticing a hearing date of October 7, 2011. On August 19, 2011, Boeing filed its Opposition to Plaintiff's Motion to Remand.

provide a warning." *Getz v. Boeing*, 2011 WL 3275957 at *10 (9th Cir. Aug. 2, 2011) (internal citations omitted); *see also infra* Part III(D)(3)(a).  Thus, as Plaintiffs' failure to warn claims arise out of Boeing's action or inaction pertaining to military aircraft manufactured pursuant to strict government specifications and supervision, the removal was proper.  There is no legitimate reason why this case should not be transferred to the Eastern District of Pennsylvania.

**B.     The Broad and Liberal Standard for Federal Officer Removal Under 28 U.S.C. § 1442(a)(1).**

The Federal Officer Removal statute provides, in pertinent part:

> (a)     A civil action … commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1)     The United States or any agency thereof or any officer (***or any person acting under that officer***) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office ….

28 U.S.C. § 1442(a)(1)(emphasis added).

This statute authorizes federal officers—and persons acting under them, such as military contractors—to remove state court actions to federal court based on a "colorable" federal defense, including the government contractor defense as set forth in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). The independent right of removal afforded by the statute is absolute when three elements are satisfied. First, the defendant must be a "person" under the statute. Second, there must be a causal connection between the defendant's actions done while "acting under" an officer or agency of the United States and the plaintiffs' claim. Third, the defendant must assert a colorable federal defense. *Jefferson County*, 527 U.S. at 431; *Mesa v. California*, 489 U.S. 121, 133 (1989); *Durham*, 445 F.3d at 1252.

The Federal Officer Removal statute is afforded a ***broad and liberal interpretation***. The Supreme Court has repeatedly recognized that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court." *Jefferson County*, 527 U.S. at 431 (quoting *Willingham v. Morgan*, 395 U.S. at 407). To advance this policy, the

1  Supreme Court has rejected a narrow, grudging interpretation of the statute, and specifically

2  instructed district courts to credit the removing defendant's theory of the case for purposes of

3  both elements of the jurisdictional inquiry.  This liberal interpretation is required because "[j]ust

4  as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the

5  purpose of the removal statute, so would demanding an airtight case on the merits in order to

6  show the required causal connection." *Jefferson County*, 527 U.S. at 432 (citations omitted)

7  (citing *Willingham*, 395 U.S. at 407); *accord Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d

8  387, 398 (5th Cir. 1998) ("[T]he statute's 'color of federal office' requirement is neither 'limited'

9  nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying

10 rationale.") (citation omitted).

11  As a consequence of this broad and liberal interpretation of the statute, section 1442 does

12 not require the removing defendant to "'win his case before he can have it removed.'" *Jefferson*

13 *County*, 527 U.S. at 431 (quoting *Willingham*, 395 U.S. at 407); *see also Venezia v. Robinson*,

14 16 F.3d 209, 212 (7th Cir. 1994) ("A federal defendant need not show that he is entitled to *prevail*

15 in order to have access to the federal forum.").  Indeed, "§ 1442 does not require the resolution of,

16 or ***even a detailed inquiry into***, the merits of the federal defense advanced." *Jefferson County v.*

17 *Acker*, 137 F.3d 1314, 1317 (11th Cir. 1998), *rev'd on other grounds*, 527 U.S. 423 (1999)

18 (emphasis added).  Instead, section 1442 requires only that the federal defense be plausible at the

19 time of removal.  *Winters*, 149 F.3d at 400 ("[D]efendants ***need not prove the asserted defense***,

20 but need only articulate its 'colorable' applicability to the plaintiff's claims.") (emphasis added).

21 **C.    UTC's Notice of Removal Satisfies the Liberal Pleading Requirements of 28 U.S.C. § 1446(a).**

22

23  As an initial matter, the Court should reject plaintiffs' argument that removal was

ineffective because defendants did not submit "admissible evidence" supporting removal.

24
   (Pls.' Mem., pp. 3:5-7.)  Plaintiffs misconstrue defendant's evidentiary burden at the time of

25
   removal.

26
    A notice of removal is simply a pleading that contains allegations of jurisdiction, and is

27
   governed by the liberal rules applicable to all pleadings.  *See*, *e.g.*, *White v. Humana Health Plan*,

28

1  *Inc.*, No. 06 C 5546, 2007 WL 1297130, at *3 (N.D. Ill. May 2, 2007) ("Traditional rules of
2  notice pleading apply to notices of removal."); *see also* 14C Charles Alan Wright et al.,
3  FEDERAL PRACTICE AND PROCEDURE § 3733 at 645-46 (West 2009) ("[T]he same liberal rules
4  employed in testing the sufficiency of a pleading should apply to appraise the sufficiency of a
5  defendant's notice of removal."). Indeed, the Federal Removal Statute provides that a notice of
6  removal need only contain "a short and plain statement of the grounds for removal." 28 U.S.C.
7  § 1446(a).

8  Moreover, a defendant need not submit "evidence" supporting its removal allegations.
9  Rather, a removing defendant need only submit "a copy of all process, pleadings, and orders
10 served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). UTC's Notice
11 of Removal and Boeing's Joinder thereto satisfy these liberal pleading requirements.

12 Indeed, "a defendant is entitled to removal under Section 1442(a)(1) where the defendant
13 identifies facts which, ***viewed in the light most favorable to the defendant***, entitle him to a
14 complete defense." *Hagen v. Foster*, 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010) (emphasis added).
15 "These facts may be cited in the answer, the notice of removal or in the response to a motion for
16 remand." *Id.* at n.8. When analyzing federal officer removal jurisdiction, the court "***is not called***
17 ***upon at this preliminary stage to pierce the pleadings*** or dissect the facts stated." *Id.* at 782
18 (emphasis added).

19 Here, UTC presented a declaration by Allan Shiffler who worked with UTC over
20 37 years. (Decl. of Allan J. Shiffler.) Mr. Shiffler's testimony came from his personal experience
21 at the company and with the government contracting process, as well as review of relevant
22 documents. (Decl. of Allan J. Shiffler.) UTC additionally supported their Notice of Removal
23 with testimony by William Ringo, who testified as to the knowledge of the United States
24 regarding the health hazards of working around asbestos-containing materials. (Ringo Decl..)
25 These declarations and the evidence presented formed the basis for UTC's pleading of the
26 necessary elements of the government contractor defense (*see infra* Part (C)(3)).

27 Similarly, Boeing presented Plaintiff's Verified Answers to Standard Interrogatories
28 Propounded by Defendants ("Answers"). (Kim Decl., p. 42, Ex. C.) These Answers provided the

initial details of plaintiff's case against Boeing, tying his exposure to his service as a Navy aviation mechanic. (*Id.* at p. 49.) Boeing also presented, in sworn affidavit by its counsel, information that it had received via email communication from plaintiff's that plaintiff's alleged decedent was exposed to asbestos allegedly contained in the T-28 and SNJ military aircraft manufactured by Boeing's predecessor North American Aviation. (Kim Decl., ¶ 4.) North American manufactured these aircraft and published maintenance manuals as a result of its contracts it had entered into with the Navy and other military branches. (Attachment 2 hereto, Declaration of Michael Lombardi and exhibits, previously filed in the Northern District of California in Support of Defendant the Boeing Company's Opposition to Plaintiff's Motion to Remand (hereinafter "Lombardi Decl."), Exs. 1-6.)

In short, defendants have satisfied the liberal pleading requirements under § 1442 to support removal.

**D.      Boeing Has Satisfied the Requirements for Asserting Federal Officer Removal.**

**1.      Boeing is a "person" within the meaning of the Federal Officer Removal statute.**

It is well settled, and plaintiffs do not dispute, that a corporation is a "person" entitled to the benefit of removal under 28 U.S.C. § 1442(a)(1). *See*, *e.g.*, *Winters*, 149 F.3d at 398.

**2.      Boeing was "acting under" a federal officer in manufacturing the T-28 and SNJ aircraft.**

The second requirement for federal officer removal is that the actions of the removing defendant that are causally connected to plaintiffs' claims were done while the defendant was "acting under" a federal officer. *See Jefferson County*, 527 U.S. at 431, 447. The Supreme Court has made clear that this requirement must be interpreted broadly and that courts must "credit the [removing defendant's] theory of the case" when making the "acting under" determination. *Id.* at 432.

The concurrently-filed Declaration of Michael Lombardi authenticates certain records entered into between North American and the Navy. (Lombardi Decl., ¶¶ 1-8.) Attached to the declaration are contracts between North American and the military (including the Navy) controlling the design, manufacture, and ultimate delivery of the SNJ aircraft, and contracts

1  controlling the design, manufacture, and delivery of the T-28 aircraft.  (*Id.*, Exs. 1-3, 5.)  Also
2  attached to Mr. Lombardi's declaration are copies of certain portions of Naval maintenance
3  manuals for both the SNJ and T-28.  (*Id.*, Exs. 4, 6.)  The SNJ manual provides that the aircraft
4  was developed "for use by the Naval Reserves" and that its "[m]aterials, processes, and design
5  specifications are in accordance with the requirements of the U.S. Army Air Corps."  (*Id.*, Ex. 4,
6  p. 2.)  T-28 maintenance manual notes, in particular, that it was "published by direction of the
7  Chief of the Bureau of Naval Weapons."  (*Id.*, Ex. 6, p. 1.)
8  Thus, the evidence here clearly establishes that Boeing was "acting under" an officer of
9  the United States within the meaning of 28 U.S.C. § 1442(a)(1).
10  Numerous courts have held that the development and procurement of military weapons
11  systems under government direction and supervision inherent in such programs satisfy the "acting
12  under" requirement.  *See*, *e.g.*, *Winters*, 149 F.3d at 400 (Defense Department's specifications and
13  supervision over Agent Orange defoliant sufficed to demonstrate that defendants acted pursuant
14  to federal direction); *Papapetrou v. Boeing Company*, 2008 WL 548770 at *4 (N.D. Ill. 2008)
15  ("Rather than just complying with regulations, Boeing was acting as a federal contractor to build
16  the Helicopter for the U.S. Army"); *Lopez v. Three Rivers Elec. Coop.*, 166 F.R.D. 413, 414-15
17  (E.D. Mo. 1996) (denying motion to remand where Boeing alleged it was "acting under" federal
18  officer in its design and manufacture of CH-47D for U.S. Army).  Thus, defendants need not
19  identify a specific federal officer; it is sufficient for Boeing to demonstrate institutional
20  supervision – here, U.S. Navy – to satisfy the removal standard under federal officer jurisdiction.
21  That Boeing was "acting under" a federal officer is reinforced by the United States
22  Supreme Court's decision in *Watson v. Philip Morris Companies*, 551 U.S. 142 (2007).  In
23  *Watson*, the court rejected Philip Morris's argument that mere compliance with government
24  regulation of the cigarette industry established that Philip Morris was "acting under" a federal
25  officer.  Philip Morris had cited many lower court decisions upholding federal officer removals
26  by government contractors and argued that it was unfair to allow government contractors to
27  remove cases to federal court under the Federal Officer Removal statute, while denying the same
28

1 removal right to companies like tobacco companies that are subject to extensive federal
2 regulation. The Supreme Court's response to this argument was:

> [T]he private contractor in such cases is helping the Government to produce an item that it needs. The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. In the context of *Winters [v. Diamond Shamrock Chemical Co., 149 F.3d 387 (5th Cir. 1998)]*, for example, Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war. Moreover, at least arguably, Dow performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.

9 *Id*. at 153-54.

10 As in *Winters*, Boeing provided "the Government with a product that it used to help
11 conduct a war." These products were commissioned under government contracts and delivered
12 with government-approved maintenance manuals. (Lombardi Decl., Exs. 1-6.) Boeing was thus
13 "acting under" the U.S. Navy when it produced the relevant aircraft, and the requirement of a
14 "causal nexus" between plaintiffs' allegations and Boeing's conduct is satisfied here.

15 **3.    Boeing raises a colorable government contractor defense.**

16 Boeing has satisfied the final requirement for removal under 28 U.S.C. § 1442(a) by
17 raising a colorable federal defense. *Mesa*, 489 U.S. at 121-22. Here, Boeing invokes the
18 "government contractor defense" formulated in *Boyle v. United Technologies Corp.*, 487 U.S. at
19 500. Under *Boyle*, state law cannot impose liability for alleged defects in military equipment
20 when "(1) the United States approved reasonably precise specifications; (2) the equipment
21 conformed to those specifications; and (3) the supplier warned the United States about the
22 dangers in the use of the equipment that were known to the supplier but not to the United States."
23 *Id.* at 512. *See also*, *e.g.*, *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1340, 1345
24 (11th Cir. 2003); *Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 465 (5th Cir. 2000); *Tate v.
25 Boeing Helicopters,* 140 F.3d 654, 660 (6th Cir. 1998); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d
26 992, 998-99 (7th Cir. 1996); *Ramey v. Martin Baker Aircraft Co.*, 874 F.2d 946, 950 (4th Cir.
27 1989).

28

The government contractor defense (also referred to as "military contractor defense") shields government contractors from liability, whether a claim is couched in terms of design defect or manufacturing defect, so long as the product at issue conformed to government specifications. The Ninth Circuit has held that the label a plaintiff attaches to his or her product defect claim does not control the applicability of the government contractor defense:

> We agree with the district court that the military contractor defense can apply to manufacturing defects. Although *Boyle's* holding concerned liability for design defect claims, the Court's reasoning encompasses claims alleging manufacturing defects. As the court observed in *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 801 (5th Cir. 1993), "whether the defense will apply cannot be determined by the label attached to the claim. Strict adherence to the three *Boyle* conditions specifically tailored for the purpose will ensure that the defense is limited to appropriate claims." Thus, whether the defense applies to a claim based on an alleged manufacturing defect depends on whether the particular product at issue was manufactured in conformity with reasonably precise specifications approved by the government.

*Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 749 (9th Cir. 1997).

During removal a defendant need only allege this colorable defense. ("§ 1442 does not require the resolution of, or ***even a detailed inquiry into***, the merits of the federal defense advanced.") *Jefferson County*, 137 F.3d at 1317 (emphasis added). As mentioned above, the exhibits attached to Michael Lombardi's declaration contain contracts entered into between Boeing's predecessor North American, and the military (including the Navy). (Lombardi Decl., Exs. 1-3, 5.) Also contained within are maintenance manuals that were published at the direction of Navy. (*Id.*, Exs. 4, 6.) To the extent that these government-approved manuals contain specific warnings, their publication and approval by the government is sufficient to support Boeing's theory in its pleading not only that the military "exercised its discretion and approved certain warnings", but that it also "provided the warnings required by the government." *Getz v. Boeing*, 2011 WL 3275957, at *11.

Since "***[D]efendants need not prove the asserted defense***, but need only articulate its 'colorable' applicability to the plaintiff's claims," *Winters*, 149 F.3d at 400, Boeing need not proceed at this time to prove the *Boyle* defense on the merits. *See also Jefferson County*, 527 U.S. at 431 (removing defendant to "'win his case before he can have it removed.'"). The

Lombardi declaration and the government contracts attached thereto sufficiently demonstrate that Boeing has asserted a colorable government contractor defense, which is all it required to do at this stage. (Lombardi Decl., ¶¶ 1-8, Exs. 1-6.)

**a.   The government contractor defense applies to failure to warn claims.**

**(i)   *Boyle* only requires that the government retain discretion over warnings, not that it actually dictate or prohibit specific warnings.**

Although plaintiffs have limited their claims against Boeing to failure to warn claims, the Ninth Circuit has conclusively established that *Boyle*'s government contractor defense applies to failure to warn claims. *Getz*, 2011 WL 3275957, at *10-*11.

Furthermore, as applied to failure to warn claims, the government contractor defense does not require the contractor to affirmatively show that it had suggested certain warnings to the government, nor does it require the contractor to show that any proposed warnings were rejected by the government. *Id.* at *11. Instead, the defense only requires that the defendant "demonstrate that the government approved reasonably precise specifications" which has the ***end effect*** of "limiting the contractor's ability to comply with [its] duty to warn." *Id.* (internal quotations omitted). The attached excerpts of maintenance manuals for both the T-28 and SNJ indicate that the manuals were published pursuant to government approval. The SNJ manual states that the aircraft was developed "for use by the Naval Reserves" and that its "[m]aterials, processes, and design specifications are in accordance with the requirements of the U.S. Army Air Corps." (*Id.*, Ex. 4, p. 2.) Similarly, the T-28 manual was "published by direction of the Chief of the Bureau of Naval Weapons." (*Id.*, Ex. 6, p. 1.) These statements show that the military retained discretion over the manuals and their contents—including warnings found in the manual.

Boeing has thus successfully alleged a colorable defense for the purposes of § 1442(a) removal.

Of importance to this case is whether the "government exercised its discretion when it selected relevant warnings[.]" *Id.* at *11. The Ninth Circuit in *Getz* rejected the argument that plaintiffs assert in their motion to remand that *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 811 (9th Cir. 1992), "limit[s] the defense to cases in which the government specifically

1  forbids warnings altogether or to instances where the government explicitly dictates the content of
2  the warnings adopted." *Id.*  *Getz* stated that *Hawaii Federal Asbestos* and similar cases "only
3  require that **governmental approval** … of particular warnings 'conflict' with the contractor's duty
4  to warn under state law." *Id.* (internal quotations omitted) (emphasis added).  The court
5  concluded that "given that the Army considered, reviewed, and determined which warnings to
6  provide, the government's exercise of discretion necessarily conflicts with the Contractors' duty
7  to warn under state law" and found that *Boyle* applied even though Boeing offered no evidence in
8  that case to indicate that it had suggested specific warnings to the government, or that the
9  government rejected those warnings. *Id.* (internal quotations omitted).

10  *Getz* holds that ultimately the "government exercise[s] its discretion when it select[s]
11  relevant warnings." *Id.* at *11.  "Thus, because the [Government], not the Contractors, selected
12  which warnings to include in the Manual, plaintiffs' contention that the government did not
13  exercise discretion over the content of these warnings is meritless.  Where the government
14  chooses its own warnings, the contractor has certainly fulfilled [*Boyle*'s] first condition." *Id.*  It is
15  this selection of **some** warning that forms the basis of the *Boyle* defense in failure to warn claims.

16  In their motion, plaintiffs argue that the failure to warn claim does not apply since
17  evidence presented in UTC's notice of removal indicates that the military never specifically
18  prevented UTC from warning about asbestos hazards. (Pls.' Mem., pp. 18:4-6).  This argument
19  was rejected by the Ninth Circuit in *Getz* ("Plaintiffs' contention that the government did not
20  exercise discretion over the content of these warnings is meritless.  Where the government
21  chooses its own warnings, the contractor has certainly fulfilled [*Boyle*'s] first condition.").  *Getz*,
22  2011 WL 3275957, at *11.

23  The exhibits attached to Michael Lombardi's declaration demonstrate that the SNJ and the
24  T-28 were both manufactured under government contracts, and that those aircraft came with
25  manuals that contain warnings. (Lombardi Decl., Exs. 1-6.)  These manuals were published
26  subject to the government's control and discretion. (*See* Ex. 4, p. 2; *see also* Ex. 6, p. 1.)  As
27  "*Boyle* makes clear that government discretion, rather than dictation is the standard", *Getz*,
28  2011 WL 3275957, at *11, the exercise of discretion that produced these manuals is sufficient for

1  *Boyle* to apply here. Regardless of what background processes or discussions went into
2  determining which warnings were ultimately published, the very act of finalizing and approving
3  the manuals for publication necessarily implicates exercise in government discretion sufficient to
4  allege the government contractor defense. In fact, the T-28 contract specifically states that,
5  regarding publications related to the aircraft, "[p]reliminary inspection of publications will be
6  made by the cognizant Naval Inspector at the Contractor's plant[.]" (Lombardi Decl., Ex. 5,
7  p. 19.) As Boeing is not required at this stage to prove each of the elements of the government
8  contractor defense, the mere presentation of this evidence is sufficient to bar plaintiffs' claims.
9  Boeing must merely demonstrate a colorable defense, which it has done: the evidence provided
10 shows that it is plausible that the government contractor defense may be alleged here.

          **b.**      **The T-28 and SNJ aircraft were not off-the-shelf products.**

12 Plaintiffs contend erroneously that the products at issue in this case were off-the-shelf
13 products. (Pls.' Mem., pp. 14:20-17:3.) The government contractor defense has often been held
14 inapplicable when "the goods ordered by the military are those readily available … to commercial
15 users[.]" *Hawaii Federal Asbestos*, 960 F.2d at 811. However, products that were specifically
16 commissioned by the government still retain their right to the defense, even when the product
17 itself contained off-the-shelf components. *Miller v. Diamond Shamrock*, 275 F.3d 414 (5th Cir.
18 2001).

19 The Fifth Circuit in *Winters* heard claims alleging that Agent Orange, the defoliant widely
20 used during the Vietnam War, was not subject to the military contractor defense. *Id.* The
21 plaintiffs in that case argued that the defense did not apply to Agent Orange since the defoliant
22 was, in fact, a combination of chemicals that were widely available to the general public. *Id.* at
23 419. The Fifth Circuit rejected this argument. *Id.* It reasoned that although Agent Orange's
24 constituent components may have come from off-the-shelf sources, the ***final product*** itself had
25 been procured pursuant to the government contracting practices, and as such satisfied the *Boyle*
26 test. *Id.* at 419-420.

27 Plaintiffs in this case rely extensively upon *Hawaii Federal Asbestos* to argue that the
28 products in this case were off-the-shelf products that are not subject to the government contractor

01038-6096/LEGAL21633710.2        -12-        DEFENDANT BOEING'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CTO

1  defense. (Pls.' Mem., pp. 14:20-17:3.) Specifically, plaintiffs allege that "the asbestos materials
2  that … caused Mr. Donlon's mesothelioma and his death would have been the same standard
3  asbestos products available in the private market." (*Id.* at pp. 15:3-15:5.) Yet the facts of
4  *Hawaii Federal Asbestos* are very different from the facts in this case. In *Hawaii Federal*
5  *Asbestos*, a manufacturer of asbestos insulation products attempted to plead the government
6  contractor defense. *Id.* at 809-11. Its insulation was simply purchased by the Navy, much as it
7  might have been by any other customer, and did not comprise "new equipment for military
8  usage." *Id.* at 811. As such, insulation bought by the government was held to not have been
9  "developed on the basis of involved judgments made by the military[.]" *Id.* Indeed, nowhere in
10 that case did the defendant argue that the Navy's purchase of asbestos insulation constituted
11 anything other than a regular bulk purchase by a customer—it just so happened that the customer
12 was the military.

13 The facts in this case more closely resemble the facts found in *Winters*: a case of a product
14 designed pursuant to government specifications that just so happened to contain off-the-shelf
15 components. 275 F.3d at 419-20. Even though the ***products at issue here are complex military***
16 ***aircraft and their engines***, plaintiffs rest their argument that minute and distinct ***components*** in
17 those products—certain gaskets, clamps and bolts—could be purchased off-the-shelf. (Pls.'
18 Mem., pp. 16:21-16:27.) Yet, plaintiffs themselves state that the ultimate product that allegedly
19 injured decedent were "aircraft engines." *Id.*

20 Although these gaskets, clamps, and bolts may have been available on the wider market,
21 each is merely a single ***component*** in the overall ***product*** which plaintiffs allege caused the injury
22 to the decedent. And those products, the SNJ and T-28 aircraft, were commissioned pursuant to
23 detailed specifications embodied in contracts with the government. (Lombardi Decl., Exs. 1-3,
24 5).) Such aircraft were most certainly not available on the wider market. In this regard, it is
25 noteworthy that *Winters* cautioned against reaching "an absurd result" on the basis that "all
26 products can eventually be broken down into various off-the-shelf components."
27 *Diamond Shamrock*, 275 F.3d at 419-20. Here, as in *Diamond Shamrock*, "[t]he combination of
28 off-the-shelf component parts does not necessarily create a new off-the-shelf product." *Id.* at 420.

01038-6096/LEGAL21633710.2            -13-            DEFENDANT BOEING'S OPPOSITION TO
                                                    PLAINTIFFS' MOTION TO VACATE CTO

1  As such, the aircraft at issue here still fall within the ambit of the *Boyle* government contractor
2  test.

### IV.   CONCLUSION

For all the foregoing reasons, plaintiffs Motion to Vacate Conditional Transfer Order should be denied.

DATED:  August 30, 2011                     **PERKINS COIE LLP**

By: *s/ Bo W. Kim*

Bar No. 217394
BKim@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA  90067-1721
Telephone: 310.788.9900
Facsimile:  310.843.1284

Attorneys for Defendant
THE BOEING COMPANY

## CERTIFICATE OF SERVICE

On August 30, 2011, I electronically filed this document through the CM/ECF system. The Notice of Electronic Case Filing automatically generated by the system and sent to all parties entitled to service under the Federal Rules of Civil Procedure and the Local Rules of the United States Judicial Panel on Multidistrict Litigation who have consented to electronic service shall constitute service of the filed document to all such parties.

By: *s/ Bo W. Kim*

Bar No. 217394
BKim@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.843.1284

Attorneys for Defendant
THE BOEING COMPANY