1

2

3   Ronald A. McIntire, Bar No. 127407
    RMcIntire@perkinscoie.com
4   Bo W. Kim, Bar No. 217394
    BKim@perkinscoie.com
5   **PERKINS COIE LLP**
    1888 Century Park East, Suite 1700
6   Los Angeles, CA  90067-1721
    Telephone: 310.788.9900
7   Facsimile:  310.843.1284

8   Attorneys for Defendant
    THE BOEING COMPANY
9

10

11              **UNITED STATES DISTRICT COURT**

12          **FOR NORTHERN DISTRICT OF CALIFORNIA**

13          **BEFORE THE JUDICIAL PANEL ON**
                **MULTIDISTRICT LITIGATION**
14

15   IN RE: ASBESTOS PRODUCTS          | MDL Case No. 875
     LIABILITY LITIGATION
16

17   PATTI DONLON, Individually and as      | N. D. Cal. Case No. CV 11 3376
     Successor-in-Interest to the Estate of
18   PATRICK THEISEN DONLON,                 **DEFENDANT THE BOEING COMPANY'S**
     Decedent, SEAN DONLON; and DOES        **OPPOSITION TO PLAINTIFFS' MOTION**
19   ONE through TEN, inclusive,            **TO VACATE CONDITIONAL TRANSFER**
                                            **ORDER**
20                        Plaintiffs,
                                            **ATTACHMENT 2, PART 1 OF 4 –**
21          v.                              **DECLARATION OF MICHAEL**
                                            **LOMBARDI**
22   AC AND S, INC., et al.,

23                        Defendants.

24                                          Panel Hearing Date:       September 27, 2011

25

26

27

28

Ronald A. McIntire, Bar No. 127407
RMcIntire@perkinscoie.com
Bo W. Kim, Bar No. 217394
BKim@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant
THE BOEING COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

PATTI DONLON, Individually and
as Successor-in-Interest to the Estate
of PATRICK THEISEN DONLON,
Decedent, SEAN DONLON; and
DOES ONE through TEN, inclusive,

Plaintiffs,

v.

AC AND S, INC., et al.,

Defendants.

Case No. CV 11 3376

**DEFENDANT THE BOEING
COMPANY'S EXHIBITS TO
DECLARATION OF
MICHAEL LOMBARDI IN
SUPPORT OF DEFENDANT THE
BOEING COMPANY'S
OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND;
EXHIBIT 1, PART 1**

Date:       October 7, 2011
Time:       9:00 a.m.
Judge:      Honorable Jeffrey S. White

DEFENDANT THE BOEING COMPANY'S
EXHIBITS TO LOMBARDI DECLARATION
CV 11 3376

# EXHIBIT 1

EXHIBIT 1 - PAGE 3

U. S. Standard Form No. 32, Rev.
Approved by the Secretary of the
Treasury June 18, 1935

**S NJ-2**

Contract No. W 535 ac-12769
(2927)

# CONTRACT

## (SUPPLIES)

JFR

**W** , **W** ........ :

---

WAR DEPARTMENT

(Department)

---

NORTH AMERICAN AVIATION, INC.

(Contractor)

---

Contract for: 92 BC-1A Airplanes, Spare Parts, Skeleton Airplane and Data

Amount, $: 1,659,090.20

Place: Materiel Division, Air Corps, U. S. Army, Wright Field, Dayton, Ohio

The Finance Officer, U. S. Army, Wright Field, Dayton, Ohio, is designated as the officer to make payments in accordance with this contract.

The supplies and services to be obtained by this instrument are authorized by, are for the purpose set forth in and are chargeable to the following Procurement Authorities, the available balances of which are sufficient to cover cost of same:

|  |  |  |
|---|---|---|
| NG 15430 P 58-3037 A 1405-9 | - | 336,757.40 |
| FD 1252 P 6-1370 A 1505.002-9 | - | 708,962.80 |
| FD 1252 P 6-1370 A 1505.002-0 | - | 248,137.10 |
| AC 40 P 12-3037 A 0705.003-9 | - | 28,475.50 |
| NG 15430 P 58-3037 A 1405-0 | - | 336,757.40 |

AFP: 144297

Approval recommended:
June 28, 1939.
(Signed) H. H. Arnold
H. H. Arnold,
Major General, Air Corps,
Chief of the Air Corps.

Approved: Jun 30 1939
By direction of the Secretary of War
under the provisions of Section 10
(c) and (t), Act of July 2, 1926.
(Signed) Louis Johnson
Louis Johnson,
The Assistant Secretary of War.

**EXHIBIT 1 - PAGE 4**

## CONTRACT FOR SUPPLIES

THIS CONTRACT, entered into this Jun 24 1939 day of         , 19   , by THE UNITED STATES OF AMERICA, hereinafter called the Government, represented by the contracting officer executing this contract, and

– NORTH AMERICAN AVIATION, INC. –

a corporation organized and existing under the laws of the State of     Delaware

of the city of     Inglewood     , in the State of     California hereinafter called the contractor, witnesseth that the parties hereto do mutually agree as follows:

ARTICLE 1. *Scope of this contract.*—The contractor shall furnish and deliver to the Government all of the articles, supplies and/or data as set forth more particularly in Article 16 hereof.

for the consideration stated One Million Six Hundred Fifty Nine Thousand Ninety Dollars and Twenty Cents ($1,659,090.20), payable as set forth more particularly in Article 18 hereof.

in strict accordance with the specifications, schedules and drawings, all of which are made a part hereof and designated as follows: As set forth more particularly in Article 16 hereof.

Deliveries shall be made as follows: As set forth more particularly in Article 17 hereof. Liquidated damages as contemplated in Article 30 hereof for delays in deliveries of airplanes, skeleton airplane and spare parts contracted for hereunder beyond the time specified for delivery of such airplanes, skeleton airplane and spare parts in Article 17 hereof will be assessed at the rate of one-twentieth of one percent (1/20 of 1%) of the unit price of each airplane and skeleton airplane for each calendar day of delay in delivery of airplanes and skeleton airplane beyond the dates set forth in Article 17 hereof, provided however, that such liquidated damages shall not accrue for any article of any item of airplanes or skeleton airplane called for and which is delayed in delivery beyond the time scheduled in strict accordance with the specifications, schedules and drawings all of which are made a part hereof and designated as follows:

in Article 17 hereof in any amount exceeding fifteen percent (15%) of the unit price provided for the payment of such article, and one-twentieth of one percent (1/20 of 1%) of the total contract price of spare parts not delivered within the time specified for each calendar day of delay in delivery of such spare parts as set forth in Article 17 hereof, provided however, that such liquidated damages shall not accrue in any amount exceeding fifteen percent (15%) of money value of spare parts which are delayed in delivery beyond the time scheduled in the contract. The provisions of Article 5 hereof shall be applicable with reference to deliveries of all items called for under the terms of Article 16 hereof, other than airplanes, spare parts and skeleton airplane.

ac-12969

EXHIBIT 1 - PAGE 5

U. S. Standard Form No. 32
(Revised June 18, 1935)
SHEET 2

[SUPPLY CONTRACT]

ARTICLE 2. *Changes.*—Where the supplies to be furnished are to be specially manufactured in accordance with drawings and specifications, the contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings or specifications, except Federal Specifications. Changes as to shipment and packing of all supplies may also be made as above provided. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or his duly authorized representative. Any claim for adjustment under this article must be asserted within 10 days from the date the change is ordered, provided, however, that the contracting officer, if he determines that the facts justify such action, may receive and consider, and with the approval of the head of the department or his duly authorized representative, adjust any such claim asserted at any time prior to the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in Article 12 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the contract as changed.

ARTICLE 3. *Extras.*—Except as otherwise herein provided, no charge for extras will be allowed unless the same have been ordered in writing by the contracting officer and the price stated in such order.

ARTICLE 4. *Inspection.*—(a) All material and workmanship shall be subject to inspection and test at all times and places and, when practicable, during manufacture. In case any articles are found to be defective in material or workmanship, or otherwise not in conformity with the specification requirements, the Government shall have the right to reject such articles, or require their correction. Rejected articles, and/or articles requiring correction, shall be removed by and at the expense of the contractor promptly after notice so to do. If the contractor fails to promptly remove such articles and to proceed promptly with the replacement and/or correction thereof, the Government may, by contract or otherwise, replace and/or correct such articles and charge to the contractor the excess cost occasioned the Government thereby, or the Government may terminate the right of the contractor to proceed as provided in Article 5 (or in the article entitled "Delays—Liquidated Damages", quoted in paragraph 5 of the Directions, if it is substituted for Article 5) of this contract, the contractor and surety being liable for any damage to the same extent as provided in said Article 5 (or in said substitute article) for terminations thereunder.

(b) If inspection and test, whether preliminary or final, is made on the premises of the contractor or subcontractor, the contractor shall furnish, without additional charge, all reasonable facilities and assistance for the safe and convenient inspections and tests required by the inspectors in the performance of their duty. All inspections and tests by the Government shall be performed in such a manner as not to unduly delay the work. Special and performance tests shall be as described in the specifications. The Government reserves the right to charge to the contractor any additional cost of inspection and test when articles are not ready at the time inspection is requested by the contractor.

(c) Final inspection and acceptance of materials and finished articles will be made after delivery, unless otherwise stated. If final inspection is made at a point other than the premises of the contractor or a subcontractor, it shall be at the expense of the Government except for the value of samples used in case of rejection. Final inspection shall be conclusive except as regards latent defects, fraud, or such gross mistakes as amount to fraud. Final inspection and acceptance or rejection of the materials or supplies shall be made as promptly as practicable, but failure to inspect and accept or reject materials or supplies shall not impose liability on the Government for such materials or supplies as are not in accordance with the specifications. In the event public necessity requires the use of materials or supplies not conforming to the specifications, payment therefor shall be made at a proper reduction in price.

ARTICLE 5. *Delays—Damages.*—[remainder of article illegible/redacted]

(3)   10—1865

ARTICLE 6. *Responsibility for supplies tendered.*—The contractor shall be responsible for the articles or materials covered by this contract until they are delivered at the designated point, but the contractor shall bear all risk on rejected articles or materials after notice of rejection. Where final inspection is at point of origin but delivery by contractor is at some other point, the contractor's responsibility shall continue until delivery is accomplished.

ARTICLE 7. *Increase or decrease.*—Unless otherwise specified, any variation in the quantities herein called for, not exceeding 10 percent, will be accepted as a compliance with the contract, when caused by conditions of loading, shipping, packing, or allowances in manufacturing processes, and payments shall be adjusted accordingly.

ARTICLE 8. *Payments.*—The contractor shall be paid, upon the submission of properly certified invoices or vouchers, the prices stipulated herein for articles delivered and accepted or services rendered, less deductions, if any, as herein provided. Unless otherwise specified, payments will be made on partial deliveries accepted by the Government when the amount due on such deliveries so warrants; or when requested by the contractor, payments for accepted partial deliveries shall be made whenever such payments would equal or exceed either $1,000 or 50 percent of the total amount of the contract.

ARTICLE 9. *Additional security.*—Should any surety upon the bond for the performance of this contract become unacceptable to the Government, or if any such surety shall fail to furnish reports as to his financial condition from time to time as requested by the Government, the contractor must promptly furnish such additional security as may be required from time to time to protect the interests of the Government and of persons supplying labor or materials in the prosecution of the work contemplated by the contract.

ARTICLE 10. *Officials not to benefit.*—No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

ARTICLE 11. *Covenant against contingent fees.*—The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business.

ARTICLE 12. *Disputes.*—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto. In the meantime the contractor shall diligently proceed with performance.

ARTICLE 13. *Domestic articles.*—Unless the head of the department or independent establishment concerned shall determine it to be inconsistent with the public interest, or the cost to be unreasonable, only such unmanufactured articles, materials, and supplies as have been mined or produced in the United States, and only such manufactured articles, materials, and supplies as have been manufactured in the United States substantially all from articles, materials, or supplies mined, produced, or manufactured, as the case may be, in the United States shall be delivered pursuant to this contract, except as noted in the specifications and/or other papers hereto attached. The provisions of this article shall not apply with respect to articles, materials, or supplies for use outside the United States, or if articles, materials, or supplies of the class or kind to be used, or the articles, materials, or supplies from which they are manufactured are not mined, produced, or manufactured, as the case may be, in the United States in sufficient and reasonably available commercial quantities and of a satisfactory quality.

ARTICLE 14. *Definitions.*—(a) The term "head of the department" as used herein shall mean the head or any assistant head of the executive department or independent establishment involved, and the term "his duly authorized representative" shall mean any person authorized to act for him other than the contracting officer.

(b) The term "contracting officer" as used herein shall include his duly appointed successor or his authorized representative.

ARTICLE 15. *Alterations.*—The following changes were made in this contract before it was signed by the parties hereto: Articles 16 to 44, inclusive, added, all as approved by the Director of the Bureau of the Budget and/or The Assistant Secretary of War. Article 27 hereof, deleted. The words "or a regular dealer in" appearing in line 2 of paragraph (a) of Article 29 hereof, deleted. Paragraph (b) of Article 29 hereof, deleted. Paragraph (g) of Article 33 hereof, deleted. Article 34 hereof, deleted. Article 35 hereof, deleted and the following substituted therefor: "As set forth in Article 18 hereof". Paragraph (a) of Article 3 hereof, deleted. Article 5 hereof deleted.

(4) 10—1805    ao—12969

EXHIBIT 1 - PAGE 7

Article 16. - Articles and Supplies Called For - (1) WHEREAS, the procurement of airplanes of the type hereinafter specified and conforming to the terms and requirements of Air Corps Specification No. 0-901 dated September 1, 1935, as amended by Amendments Nos. 1 and 2 thereto dated December 3, 1938 and January 24, 1939, respectively, which Specification, as amended, is by this specific reference made a part hereof, was made the subject matter of a competition under Circular Proposal 39-100 dated October 21, 1938, as amended by Amendments Nos. 1 to 10, inclusive, thereto, dated December 1, 1938, December 8, 1938, December 14, 1938, December 20, 1938, January 4, 1939, January 25, 1939, January 31, 1939, February 15, 1939, April 8, 1939 and April 15, 1939, respectively, under the terms and provisions of the Act of July 2, 1926, and

WHEREAS, in response to said Circular Proposal 39-100, as amended, the Contractor herein was the bidder submitting the design receiving the highest figure of merit, and

WHEREAS, The Secretary of War under the authority of the Act of July 2, 1926, being desirous of procuring a lot quantity of airplanes manufactured and constructed essentially in accordance with the design of the Contractor receiving the highest figure of merit in the competition above referred to, negotiated with the Contractor herein for the purchase of said lot quantity of airplanes, and

WHEREAS, the Contractor herein has agreed to furnish the quantity of airplanes called for herein for the consideration hereinafter set forth, which prices are considered fair and reasonable and do not exceed those bid by the Contractor for the airplanes called for herein in response to the aforementioned Circular Proposal, and

WHEREAS, The Secretary of War has made an award on such basis to the Contractor,

NOW, THEREFORE, it is expressly understood and agreed by and between the parties hereto that the Contractor shall furnish and deliver to the Government all of the following airplanes, aeronautical equipment, spare parts and technical data, to-wit:

Item 1 - Ninety-two (92) Airplanes, Basic Combat, Single-Engine, being known and designated as Contractor's type and model NA-55-1, and likewise known and designated as Air Corps type and model BC-14, each complete and all manufactured, built and constructed in accordance with the terms and requirements of North American Aviation Specification Report No. 552 dated April 10, 1939, and likewise including alternate fuel and oil tanks as set forth in paragraph A of Appendix III, and being constructed in accordance with alternate construction set forth in paragraph D of Appendix III, which Specification with Appendix III thereto, is by this specific reference made a part hereof. Each of the airplanes called for under the terms of this Item shall likewise comply with all of the terms and requirements of Air Corps Specification No. C-901, as amended, hereinbefore referred to. In the event that Contractor's Specification with Appendix thereto and Air

Page 4-A of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 8

Corps Specification No. C-901, as amended, are specifically at variance;
one with the other, in any respect, then and in that event the terms and
requirements of Contractor's Specification No. 552 with Appendix III
thereto shall govern, control and be complied with with respect to any
such item or items as to which such variation may exist. Provision shall
be made in each of the airplanes called for under the terms of this Item
for the installation therein of one (1) Pratt & Whitney Model R-1340-33R2
Aeronautical Engine, which shall be in accordance with the terms and re-
quirements of Pratt & Whitney Specification No. 1057 dated March 22, 193.
which Specification is by this specific reference made a part hereof.
The engines referred to are likewise designated as Air Corps type and model
R-1340-47, and shall be furnished by the Government in the manner herein-
after set forth without cost to the Contractor but shall be installed by
the Contractor without additional cost to the Government.

Item 2 -- Certain spare parts for all of the airplanes called for under
the terms of Item 1 of this Article at the respective unit
prices set forth by the Contractor in Percentage Breakdown
of Component Parts heretofore furnished to the Government by
the Contractor, and at the total price set forth for such
spare parts in Article 18 hereof. Said items of spare parts,
together with the unit prices therefor, are more particularly
set forth in Percentage Breakdown of Component Parts, herein-
fore referred to. It being impracticable to designate at
this time the particular parts and quantities thereof required
said particular parts and quantities thereof required will be
itemized in a list to be furnished the Contractor not later than
thirty (30) days from and after the date of approval of this
contract, which list will be designated as Exhibit "A" to this
contract and will be attached to and made a part hereof. Said
Exhibit "A" shall contain the quantities of and the unit prices
for the parts required and the total contract cost thereof, not
in excess however of the amount designated for said spare parts
in Article 18 hereof. Should said total amount appearing in
Exhibit "A" be less than the amount stipulated in Article 18
of this contract to be paid for spare parts, it is mutually agreed
that said total amount appearing in Article 18 hereof shall be
reduced to the total contract price for the spare parts required
as set forth in Exhibit "A".

Item 3 - One (1) Skeleton Airplane of the type called for under the
terms of Item 1 of this Article consisting of the following:

Complete airplane, less Government-furnished equipment, ex-
cept as hereinafter set forth, engine controls, fuel tanks,
and lines, oil tanks and lines, all electrical wiring except
that necessary to operate the retracting units and/or flaps.
Fabric may be eliminated where used as a surface covering.
Brackets for mounting equipment not contributing to the
structural strength of the airplane may be eliminated. All
power units for operating retracting units and/or flaps shall

Page 4-B of Contract № 535 ac-12969

EXHIBIT 1 - PAGE 9

be installed whether Government furnished or furnished by
the Contractor. Final finish coating need not be applied.

Item 4 - One (1) complete set of direct-reading dark-brown negatives from
which legible blue-line prints can be reproduced of the following:

    (a) Drawings and group parts lists of the first airplane to be
delivered under the terms of Item 1 of this Article, prepared
in accordance with the terms and requirements of U. S. Army
Specification No. 98-40100 dated March 2, 1937, as amended
by Amendment No. 5 thereto dated July 25, 1938, which Speci-
fication, as amended, is by this specific reference made a
part hereof.

    (b) Drawings and parts lists of the airplanes as called for
under the terms of Item 1 of this Article which are changed
subsequent to the delivery of the first of said airplanes
and prior to delivery of the last airplane called for.

    (c) Numerical parts lists of the airplanes called for under the
terms of Item 1 of this Article in accordance with the
terms and requirements of U. S. Army Specification No. 98-40100
as amended, hereinbefore referred to.

Item 5 - One (1) complete set of stress analysis and weight data prepared
in blue-print form and in triplicate of the airplanes called for
under the terms of Item 1 of this Article, which data shall in-
clude analysis of all important fittings and joints.

Item 6 - One (1) complete manuscript copy of Handbook of Instructions
with Parts Catalogue and Price List Compilation covering the
airplanes called for under the terms of Item 1 of this Article,
and prepared in accordance with all of the terms and requirements
of U. S. Army Air Corps Specification No. 40102-C dated February
25, 1937, as amended by Amendment No. 1 thereto dated March 5,
1938, which Specification, as amended, is by this specific refer-
ence made a part hereof.

Item 7 - One (1) set of complete bill of material covering the airplanes
called for under the terms of Item 1 of this Article prepared in
accordance with all of the terms and requirements of U. S. Army
Specification No. 98-40038-C dated December 5, 1936, which Speci-
fication is by this specific reference made a part hereof. Any
necessary revisions of said bill of material subsequent to the
delivery of the data called for herein as hereinafter set forth
shall be made without additional cost to the Government and de-
livered in the manner hereinafter set forth.

    (2) All of the airplanes called for under the terms of Item 1 of
this Article shall be serially numbered by the Contractor with serial
numbers to be furnished to the Contractor by the Contracting Officer in

EXHIBIT 1 - PAGE 10

writing at a later date.

(3) It is expressly understood and agreed by and between the parties hereto that the Government shall furnish to the Contractor for installation in each airplane called for under the terms of Item 1 of this Article one (1) aeronautical engine of the model mentioned and described in said Item 1 of this Article. All of such engines and all of the materials equipment and/or supplies listed in Air Corps Specification No. C-901, as amended, hereinbefore referred to, or elsewhere in this contract as being furnished by the Government shall be furnished without cost to the Contractor f.o.b. cars, Inglewood, California, and shall be installed by the Contractor without additional cost to the Government. All detachable blade propellers shall be assembled by the Contractor without additional cost to the Government. The instructions contained in said Air Corps Specification No. C-901, as amended shall govern relative such equipment and its installation. All other materials, equipment and/or supplies required by the Contractor for the complete performance of this contract shall be furnished and installed by the Contractor. Any materials, supplies and/or equipment furnished hereunder by the Government and not permanently installed in the articles and/or parts called for hereunder or properly expended by the Contractor in the performance of this contract shall be properly packed, boxed and/or crated by the Contractor at its expense and returned to the Government f.o.b. cars, Inglewood, California. Government bills of lading for such return shall be furnished but the Contractor shall make application therefor upon Air Corps Materiel Division Form No. which will be furnished upon request.

Article 17. - Delivery - (1) The first three (3) airplanes to be delivered under the terms of Article 16 of this contract shall be delivered to the Government within one hundred (100) days from and after the date of approval of this contract. The remaining airplanes to be delivered under the terms of said Article 16 shall be delivered at the following rates:

Two (2) airplanes, additional, during the thirty (30) day period commencing ninety (90) days after the scheduled date of delivery of the first three airplanes; Five (5) airplanes, additional, during the thirty (30) day period commencing one hundred and twenty (120) days after the scheduled date of delivery of the first three airplanes; Nine (9) airplanes, additional, during the thirty (30) day period commencing one hundred and fifty (150) days after the scheduled date of delivery of the first three airplanes; Fourteen (14) airplanes, additional, during the thirty (30) day period commencing one hundred and eighty (180) days after the scheduled date of delivery of the first three airplanes; Sixteen (16) airplanes, additional, during the thirty (30) day period commencing two hundred and ten (210) days after the scheduled date of delivery of the first three airplanes; Sixteen (16) airplanes, additional, during the thirty (30) day period commencing two hundred and forty (240) days after the scheduled date of delivery of the first three airplanes; Sixteen (16) airplanes, additional, during the thirty (30) day period commencing two hundred and seventy (270) days after the scheduled date of delivery of the first three airplanes; the remaining eleven (11) airplanes during the thirty (30) day period commencing three hundred (300) days from and after the scheduled date of delivery of the first three airplanes.

Page 4-D of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 11

All of the airplanes called for under the terms of Article 16 of this
contract shall be delivered completely set-up, serviced and ready for flight
at the flying field of the Contractor near Inglewood, California. Except
as hereinafter set forth it is expressly understood and agreed to by and
between the parties hereto that all fuel, oil and/or cooling fluid neces-
sary for engine tests and/or flight tests required to be made under the pro-
visions of U. S. Army Specification No. 98-1800-G dated August 6, 1936, as a-
mended by Amendment No. 4 thereto dated March 4, 1938, which Specification,
as amended, is by this specific reference made a part hereof, shall be furn-
ished and supplied at the expense of the Contractor. It is further under-
stood and agreed that all fuel, oil and/or cooling fluid necessary for fly-
away shall be furnished by the Contractor at its expense in an amount to be
designated by the ferry pilot for each airplane delivered. Such delivery
so far as the first airplane called for under the terms of Article 16 here-
of is concerned, shall be for test only subject to the terms and conditions
contained in Article 20 of this contract. In the event that it becomes nec-
essary to ship any of the airplanes called for by rail, same shall be deliv-
ered to the Government f.o.b. cars, Inglewood, California, and such changes
as are necessary relating to packing and shipping shall be made under the
provisions of Article 2 hereof. In the event that such rail shipment is
ordered, Government bills of lading will be furnished but the Contractor
shall make application therefor upon Air Corps Materiel Division Form No.
26, which will be furnished upon request. Names of consignees and complete
shipping instructions, including markings for packages, will be furnished
in such bills of lading. Should shipment of any of the airplanes called
for overseas become necessary, or should less-than-carload lot shipments
thereof become necessary, such changes as are necessary relating to packing
and shipping will be made under the terms of Article 2 hereof.

(2) The spare parts called for under the terms of Item 2 of
Article 16 of this contract shall be delivered to the Government f.o.b.
cars, Inglewood, California, packed for domestic shipment in accordance
with the current issue of the consolidated freight classification as "loose"
that is racked or blocked in cars; the contents of each car shipped as car-
load shall be listed on bill of lading showing the weight of each piece or
part. Government bills of lading will be furnished to cover shipments but
the Contractor shall make application therefor upon Air Corps Materiel Divi-
sion Form No. 26, which will be furnished upon request. Shipments shall be
made to destinations to be designated at a later date. Names of consignees
and complete shipping instructions, including markings for packages, will be
furnished in Government bills of lading to be supplied as hereinbefore set
forth. Should it be necessary to pack any of the spare parts called for for
over-seas shipment or for shipment in less than car-load lots, such change
as are necessary relating to packing and shipping will be made under the
provisions of Article 2 hereof.

All of the spare parts called for under the terms of Item 2 of Article 16
hereof shall be delivered as follows:

A sufficient quantity thereof to equal not less than ten percent (10%)
of the total value of spare parts called for under the terms of Item 2

Page 4-B of Contract # 535 ac-12969

EXHIBIT 1 - PAGE 12

at a date not later than the scheduled date of delivery of the tenth (10th) airplane called for under the terms of Item 1;

Ten percent (10%) additional, of the total value of spare parts called for under the terms of Item 2 at a date not later than the scheduled date of delivery of the nineteenth (19th) airplane called for under the terms of Item 1;

Ten percent (10%) additional, of the total value of spare parts called for under the terms of Item 2 at a date not later than the scheduled date of delivery of the thirty-third (33rd) airplane called for under the terms of Item 1;

Ten percent (10%) additional, of the total value of spare parts called for under the terms of Item 2 at a date not later than the scheduled date of delivery of the forty-ninth (49th) airplane called for under the terms of Item 1;

Ten percent (10%) additional, of the total value of spare parts called for under the terms of Item 2 at a date not later than the scheduled date of delivery of the sixty-fifth (65th) airplane called for under the terms of Item 1;

Twenty percent (20%) additional, of the total value of spare parts called for under the terms of Item 2 at a date not later than the scheduled date of delivery of the eighty-first (81st) airplane called for under the terms of Item 1;

Twenty percent (20%) additional, of the total value of spare parts called for under the terms of Item 2 at a date not later than the scheduled date of delivery of the ninety-second (92nd) airplane called for under the terms of Item 1;

The remaining ten percent (10%) of the total value of spare parts called for under the terms of Item 2 at a date not later than thirty (30) days from and after the date of delivery of the last airplane called for under the terms of Item 1, as scheduled in paragraph (1) above.

It is expressly understood and agreed by the parties hereto that the Government reserves the right to designate the particular items of spare parts upon which it desires priority shipment; such designation shall be made by the Government, if at all, when the list of spare parts referred to in Item 2 of Article 16 of this contract is furnished to the Contractor.

(3) The skeleton airplane as called for under the terms of Item 3 of Article 16 of this contract shall be delivered to the Government in cars, Inglewood, California, packed in accordance with the current issue of the consolidated freight classification for domestic shipment not later than thirty (30) days prior to the scheduled date of delivery of the first airplane called for under the terms of Item 1 of Article 16 of this contract. Government bills of lading will be furnished for such shipment but the Contractor shall make application therefor upon Air Corps Material Division Form No. 26, which will be furnished upon request. Name of consignee and complete shipping instructions, including markings for packages, will be furnished in Government bills of lading to be furnished as hereinbefore set forth. In the event that it should be necessary to disassemble the skeleton airplane called for under the terms of Item 3 of Article 16 for delivery to destination as set forth herein, it is expressly understood

Page 4-F of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 13

and agreed by and between the parties hereto that the Contractor shall
reassemble such skeleton airplane after receipt at destination without
additional cost to the Government therefor.

(4) All of the data called for under the terms of Items 4, 5,
6 and 7 of Article 16 of this contract shall be delivered to the Govern-
ment f.o.b. Wright Field, Wright, Greene County, Ohio, at the expense of
the Contractor and shall be consigned to the Quartermaster, Wright Field,
Wright, Greene County, Ohio, marked for "Air Corps Supply Officer". Said
data shall be delivered as hereinafter set forth:

(a)     The negatives called for under the terms of sub-item (a) of
        Item 4 of Article 16 of this contract shall be delivered
        not later than the date of delivery of the first airplane
        called for under the terms of Article 16 of this contract.

(b)     The negatives called for under the terms of sub-item (b) of
        Item 4 of Article 16 of this contract shall be delivered
        not later than thirty (30) days from and after the incorpora-
        tion of changes covered thereby in the airplanes affected.

(c)     The negatives called for under the terms of sub-item (c) of
        Item 4 of Article 16 of this contract shall be delivered not
        later than thirty (30) days from and after the date of deliv-
        ery of the last airplane called for under the terms of Article
        16 of this contract.

(d)     The stress analysis called for under the terms of Item 5
        of Article 16 of this contract shall be delivered not later than
        forty-five (45) days prior to the date of delivery of the first
        airplane called for under the terms of Article 16 of this con-
        tract, to which such analysis relates.

(e)     The weight data called for under the terms of Item 5 of Article
        16 of this contract shall be delivered at such rate as progress
        on the contract may permit.

(f)     The manuscript copy of the handbook and the price list called
        for under the terms of Item 6 of Article 16 of this contract
        shall be delivered at the time set forth in Specification No.
        10162-C, as amended, referred to in said Item 6.

(g)     The complete bill of material called for under the terms of
        Item 7 of Article 16 of this contract shall be delivered
        not later than ninety (90) days from and after the date of
        delivery of the first airplane called for under the terms of
        Article 16 of this contract. Any necessary revisions of said
        bill of material shall be delivered not later than thirty (30)
        days from and after the date of delivery of the last airplane
        called for under the terms of said Article 16 of this contract.

Page 1-6 of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 14

Article 15. - Payments - (1) The total amount which the Government agrees to pay the Contractor for the complete and faithful performance of this contract is the sum of One Million Six Hundred Fifty Nine Thousand Ninety Dollars and Twenty Cents ($1,659,090.20). Payment of the foregoing amount shall be made as follows:

(a) For the 92 airplanes as called for under the terms of Item 1 of Article 16 of this contract in the manner hereinafter set forth at $16,144.70 per airplane, total - - - - - - - - - - - - - - - - - - - $1,485,312.40

(b) For the spare parts as called for under the terms of Item 2 of Article 16 of this contract, upon final inspection, delivery to and acceptance by the Government - - - - - - - - - - - - - - - - - - - 115,302.30

(c) For the skeleton airplane as called for under the terms of Item 3 of Article 16 of this contract, upon final inspection, delivery to and acceptance by the Government - - - - - - - - - - - - - - - - - - - 14,525.50

(d) For the data as called for under the terms of Item 4 of Article 16 of this contract, upon final inspection, delivery to and acceptance by the Government, at $.15 per square foot, total not to exceed - - - - 750.00

(e) For the stress analysis and weight data as called for under the terms of Item 5 of Article 16 of this contract, upon final inspection, delivery to and acceptance by the Government - - - - - - - - - - - - - - - - - - - 6,200.00

(f) For the manuscript copy of Handbook of Instructions as called for under the terms of Item 6 of Article 16 of this contract, upon final inspection, delivery to and acceptance by the Government - - - - - - - - - - - - - - - - - - - 4,500.00

(g) For the complete bill of material as called for under the terms of Item 7 of Article 16 of this contract, upon final inspection, delivery to and acceptance by the Government - - - - - - - - - - - - - - - - - - - 2,500.00

(2) Partial payments will be made as the work progresses at the end of each calendar month or as soon thereafter as practicable on authenticated statements of expenditures of the Contractor approved by the Contracting Officer. In preparing such statements of expenditures the material delivered in the factory and work done upon such material for the performance of the contract may be taken into consideration. In making such partial payments there shall be paid to the Contractor not more than seventy-five percent (75%) of the amount established in such statements of expenditures; provided, however, that partial payments shall not be made in excess of fifty percent (50%) of the total contract price; provided, further, that

Page 4-H of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 15

be partial payment shall be made after delivery to the Government for ac-
ceptance of the first airplane to be delivered under the terms of the
contracts and purchase order, that each airplane delivered under the terms
of this contract shall be payment upon delivery and acceptance at the unit
price pertinent to the said Contractor, but that in making payment for each of
such airplanes there shall be deducted from the unit price therefor its
proportionate amount of the moneys actually paid to the Contractor thereto-
fore as pertinent under the authority herein contained. Payments for
the first airplane to be delivered under the terms of Article 16 hereof
are likewise to be subject to the conditions set forth in Article 20 hereof.
All articles called for, except airplanes, shall be paid for in the manner
provided upon final inspection, delivery to and acceptance by the Government
of said articles.

(3) Prices herein include any Federal Tax heretofore imposed by
the Congress which is applicable to the material on the bid. If any sales
tax, processing tax, adjustment charge, or other taxes or charges are imposed
or changed by the Congress after the date set for the opening of the bid and
made applicable directly upon the production, manufacture, or sale of the
supplies covered by the bid, and are paid to the Government by the Contractor
on the articles or supplies herein contracted for, then the prices named in
the bid will be increased or decreased accordingly, and any amount due the
Contractor as a result of such change will be charged to the Government
on invoices or vouchers (or invoices) as separate items. The prices herein
do not include any Federal taxes from which exemption is granted, or as to
which a credit or refund is provided for under the provisions of Section 401
of the Revenue Act of 1935 (Act of August 30, 1935; 49 Stat. 1014, 1025-1026);
nor any tax imposed by a State, County, or Municipality upon the transaction
of this procurement of these materials.

Article 19. - Guaranty - (1) It is expressly understood and
agreed by and between the parties hereto that the Contractor guarantees
that the airplanes and/or other articles called for under the terms of this
contract shall meet and comply with the requirements of the pertinent speci-
fications theretofore set forth, including performance of any and all air-
planes to be made the terms of this contract, or which may be furnished
under the provisions of any option herein contained.

(2) It is further expressly understood and agreed that in the
event that any of the airplanes and/or other articles called for under the
terms of this contract fail to meet any of the requirements contained in
the specifications in the pertinent specifications applicable thereto that
then and in such event no obligation shall rest upon the Government to accept
any such airplanes and/or articles so failing to meet such
requirements in the event of such failure and in the further event that
the Government should require the acceptance and purchase of any article
and/or articles failing to meet the terms of this contract and/or the
specifications applicable relating to same, the Government reserves to it-
self the right to purchase such article and/or articles at a proper reduc-
tion in price to be negotiated between the parties hereto.

Article 20. - Inspection - (1) Inspection and acceptance of the
first airplane called for under the terms of Item 1 of Article 16 of this

Page 1-1 of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 16

contract shall be made in accordance with the following:
The Contractor shall notify the Air Corps Representative at the Contractor's
plant when the first airplane called for under the terms of Item 1 of Article
16 hereof shall be available to the Government for engineering inspection.
Upon completion of engineering inspection the Government shall forthwith
notify the Contractor of all changes, if any, which are necessary for com-
pliance with the contract requirements, and upon accomplishment and comple-
tion of such changes by the Contractor, the airplane shall be flight tested.
Such airplane shall be delivered to the Government set-up, serviced and
ready for flight at the flying field of the Contractor near Inglewood, Cal-
ifornia, for test and acceptance. It is mutually agreed and understood
by and between the parties hereto that notwithstanding the provisions of
U. S. Army Specification No. 98-1800-C, as amended, hereinbefore referred
to, said airplane shall be preliminary flight performance tested beyond the
scope covered by said U. S. Army Specification No. 98-1800-C, as amended,
for the purpose of determining whether the airplane meets the provisions of
the pertinent specifications relating thereto and of the guarantee of the
Contractor as hereinbefore set forth. Such tests of the airplane shall be
conducted at the expense of the Government except that fuel, oil and
cooling fluid for three (3) hours of flight performance tests and for fly-
away in amounts to be designated by the ferry pilot shall be furnished
by the Contractor. Tests shall consist of not to exceed twenty (20) hours
actual flying time and the Government shall furnish fuel, oil and cooling
fluid for testing exceeding three (3) hours time. Any and all flight tests
that may be run under the terms of this provision shall be at the risk of
the Contractor as to any damage to the airplane or to any Government-owned
equipment installed therein, resulting from faulty design or workmanship
relating to said airplane, or from structural or other defects in the air-
plane itself, or the improper installation of equipment therein, but at
the risk of the Government as to any damage to said airplane or Government-
owned equipment installed therein due to faulty pilotage on the part of
the Government or to defective equipment furnished by the Government and
installed in such airplane. Subject to the conditions set forth in
paragraph (2) of Article 18 hereof, final acceptance of the first airplane
called for under the terms of Item 1 of Article 16 of this contract shall
be made by the Government in the manner hereinbefore set forth, and final
payment therefor shall not become due and payable until such final acceptance
by the Government of said airplane.

      (2) Subject to the special conditions affecting the first air-
plane called for under Article 16 hereof, as hereinabove provided for, all
airplanes shall be inspected and accepted at the flying field near the
plant of the Contractor, hereinbefore referred to, in accordance with the
provisions of U. S. Army Specification No. 98-1800-C, as amended, herein-
before referred to.

      (3) The liability for loss of or damage to any airplane con-
tracted for during flight tests required by U. S. Army Specification No.
98-1800-C, as amended, hereinbefore referred to, shall be as prescribed in
said U. S. Army Specification No. 98-1800-C, as amended.

Page 4-J of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 17

(4) The spare parts and skeleton airplane called for under the terms of Items 2 and 3 of Article 16 of this contract shall be inspected and accepted by the Government at the plant of the Contractor, Inglewood, California. All of the data and drawings called for under the terms of Items 5 to 7, inclusive, of Article 16 of this contract shall be inspected and accepted by the Government at Headquarters, Materiel Division, Air Corps, U. S. Army, Wright Field, Dayton, Ohio.

Article 21. - Options - (1) (a) The Government is granted the right and option to increase the number of airplanes to be furnished under the terms of Article 16 of this contract (including airplanes to be furnished as spare parts as well as complete airplanes) to the following lot quantities under the circumstances however as set forth below:

All of the unit prices hereinbelow stipulated are applicable to airplanes in the lot quantities indicated, constructed in accordance with the terms and requirements of North American Aviation Specification Report NA-552 dated April 10, 1939, referred to in Item 1 of Article 16 of this contract, but not including any alternate requirements set forth in Appendix III to said Specification Report. However, in the event of the exercise of any of such options, it is expressly understood and agreed by and between the parties hereto that such additional airplanes shall be constructed in accordance with the alternate requirements listed in paragraphs (A) and (D) of Appendix III to said specification. The additional cost for the incorporation of such alternate requirements in the lot quantities indicated below are set forth more particularly in Exhibit "E" attached to and made a part of this contract and shall be added to the unit prices hereinbelow stipulated.

(A lot quantity of 101 airplanes, composed of complete and spare parts, is being purchased under the terms of this contract. For the purpose of applying the formula for interpolation as set forth in sub-paragraph (b) hereinafter set forth, the price applicable for a lot quantity of 100 airplanes is $15,300.00.)

(a)    To increase the lot quantity of airplanes to 105 at a unit price of $15,250.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(b)    To increase the lot quantity of airplanes to 110 at a unit price of $15,200.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(c)    To increase the lot quantity of airplanes to 115 at a unit price of $15,150.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(d)    To increase the lot quantity of airplanes to 120 at a unit price of $15,100.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(e)    To increase the lot quantity of airplanes to 125 at a unit price of $15,050.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(f)    To increase the lot quantity of airplanes to 130 at a unit price of $15,010.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

Page 4-K of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 18

(g) To increase the lot quantity of airplanes to 135 at a unit price of $14,970.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(h) To increase the lot quantity of airplanes to 140 at a unit price of $14,930.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(i) To increase the lot quantity of airplanes to 145 at a unit price of $14,890.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(j) To increase the lot quantity of airplanes to 150 at a unit price of $14,850.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(k) To increase the lot quantity of airplanes to 160 at a unit price of $14,760.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(l) To increase the lot quantity of airplanes to 170 at a unit price of $14,670.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(m) To increase the lot quantity of airplanes to 180 at a unit price of $14,580.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(n) To increase the lot quantity of airplanes to 190 at a unit price of $14,490.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(o) To increase the lot quantity of airplanes to 200 at a unit price of $14,410.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(p) To increase the lot quantity of airplanes to 210 at a unit price of $14,370.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(q) To increase the lot quantity of airplanes to 220 at a unit price of $14,330.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(r) To increase the lot quantity of airplanes to 230 at a unit price of $14,300.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(s) To increase the lot quantity of airplanes to 240 at a unit price of $14,270.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

Page 4-b of Contract N 535 ac-12969

EXHIBIT 1 - PAGE 19

(t) To increase the lot quantity of airplanes to 250 at a unit price of $14,240.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(u) To increase the lot quantity of airplanes to 260 at a unit price of $14,210.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(v) To increase the lot quantity of airplanes to 270 at a unit price of $14,180.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(w) To increase the lot quantity of airplanes to 280 at a unit price of $14,150.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(x) To increase the lot quantity of airplanes to 290 at a unit price of $14,120.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(y) To increase the lot quantity of airplanes to 300 at a unit price of $14,090.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(z) To increase the lot quantity of airplanes to 310 at a unit price of $14,080.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(aa) To increase the lot quantity of airplanes to 320 at a unit price of $14,070.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(bb) To increase the lot quantity of airplanes to 330 at a unit price of $14,060.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(cc) To increase the lot quantity of airplanes to 340 at a unit price of $14,050.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(dd) To increase the lot quantity of airplanes to 350 at a unit price of $14,040.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(ee) To increase the lot quantity of airplanes to 360 at a unit price of $14,030.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(ff) To increase the lot quantity of airplanes to 370 at a unit price of $14,020.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

Page 4-M of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 20

(gg)    To increase the lot quantity of airplanes to 380 at a unit price of $14,020.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(hh)    To increase the lot quantity of airplanes to 450 at a unit price of $14,010.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(ii)    To increase the lot quantity of airplanes to 500 at a unit price of $14,000.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

(jj)    To increase the lot quantity of airplanes to 1000 at a unit price of $14,000.00, in lieu of the unit price per airplane set forth in Article 18 hereof.

It is expressly understood and agreed however that in the event of the exercise by the Government of any option or options hereinbefore reserved the spare parts called for under the terms of Item 2 of Article 16 hereof shall at the time of such exercise be changed to a money value equivalent not to exceed twelve and one-half percent (12-1/2%) of the price of total lot quantity of airplanes to be purchased under the terms of any such option or options at the unit prices hereinabove set forth.

(b)    In the event the lot quantity of additional airplanes to be procured as a result of the exercise of any option or options hereinabove reserved in sub-paragraph (a) hereof falls between the lot quantities indicated above, the unit price for such lot quantity of airplanes to be furnished shall be established by deducting from the unit price set forth for the next lower lot quantity, the product of 1/applicable increment and the difference between the specified unit prices bracketing the lot quantity of airplanes to be procured and the number by which said lot quantity of airplanes to be procured exceeds said lower lot quantity bid upon. The additional costs for incorporation of alternate installations as provided for in paragraph (a) hereof shall be taken into consideration when computing the unit prices for additional lot quantities of airplanes under the provisions of this sub-paragraph.

(c)    It is further expressly understood and agreed that this option, if exercised, shall be exercised in writing by the Contracting Officer within ninety (90) days from and after the date of approval of this contract, and that if same is not then so exercised, same shall lapse and be of no further effect.

(2)    (a)    It is expressly understood and agreed by and between the parties hereto that the Government may at its option at times and subject to the limitations on prices indicated hereinbelow effect increases in the lot quantity of airplanes, including spare parts therefor, called for under the terms of Items 1 and 2 of Article 16 of this contract, to any lot quantity indicated in sub-paragraph (a) of paragraph (1) of this Article.

Page 14H of Contract W535 ac-12969

EXHIBIT 1 - PAGE 21

subject to the additional costs set forth in said sub-paragraph (a), said option or options to be exercised if at all, within six (6), twelve (12), and eighteen (18) months from and after the date of approval of this contract by notice in writing from the Contracting Officer, and the unit prices for the additional airplanes and spare parts therefor so procured shall be negotiated by and between the parties hereto, but in no event shall they exceed the respective unit prices set forth in sub-paragraph (a) of paragraph (1) above for each respective lot quantity indicated therein, plus the amounts stipulated in said sub-paragraph (a) of paragraph (1), plus the respective percentage values indicated below:

| Period for Exercise of Option | Additional Percentage Value |
|---|---|
| (a) Three to six months from and after the date of approval of contract | 5% |
| (b) Six to twelve months from and after the date of approval of contract | 10% |
| (c) Twelve to eighteen months from and after the date of approval of contract | 15% |

It is expressly understood and agreed however that in the event of the exercise by the Government of any option or options hereinbefore reserved the spare parts called for under the terms of Item 2 of Article 16 hereof shall at time of such exercise be changed by a money value equivalent not to exceed twelve and one-half percent (12-1/2%) of the price of the total lot quantity of airplanes to be purchased under the terms of any such option or options at the unit prices to be computed as above set forth.

(b) In the event the lot quantity of additional airplanes to be procured as a result of the exercise of any option or options hereinabove reserved in sub-paragraph (a) hereof falls between the lot quantities indicated, the basic unit prices for the purpose of computing unit prices as set forth in sub-paragraph (a) above for such lot quantity of airplanes to be purchased shall be established in the same manner as is set forth in sub-paragraph (b) of paragraph (1) of this Article.

(3) The Government further reserves the right and option to procure from the Contractor at any time within six (6) months from and after May 1, 1939, all or any part of the studies and data hereinafter indicated at prices to be negotiated at the time of the exercise of this option, but not in excess of the prices hereinafter indicated:

(a)   Study and consideration of the airplane design to determine and make in the drawings such engineering changes as may be required for most efficient quantity production methods -$165,000.00

(b)   The preparation of operation, estimate and tool order cards. The purpose of this preparation is to schedule the proposed emergency production and to determine the required floor space arrangement, personnel requirements and similar

Page 4-C of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 22

data for the most efficient manufacturing arrangements. A
schedule of production will be prepared and furnished as well
as a plant layout giving the proposed rearrangement of tools
and shop equipment and indicating the flow of work required
for the proposed emergency schedule. This work is expected
to be performed with such thoroughness that all preliminary
paper work would be in readiness for use upon receipt of
an order to proceed with the proposed emergency production
and parts manufacture could be started immediately upon
availability of necessary material – – – – – – – – – – – $225,000.00

(c)  The design of all large assembly fixtures and complicated
tools – – – – – – – – – – – – – – – – – – – – – – – – – –   50,000.00

(d)  The preparation of necessary purchase requisitions and
purchase orders for all airplane material, tool material,
parts, etc., to permit the immediate placing of this
business upon receipt of an order – – – – – – – – – – –   30,000.00

(e)  The investigation and verification of intended subcon-
tractors to determine their qualifications for the per-
formance of the work to be required of them. The intent
of this requirement is to seek out sources qualified to man-
ufacture airplane parts with the objective of utilizing
the maximum capacity of the prime contractor for assembly
purposes only – – – – – – – – – – – – – – – – – – – – –   15,000.00

It is expressly understood and agreed by and between the parties that in
the event of the exercise by the Government of the option herein reserved
the exact number of airplanes to be manufactured upon which the above
described data shall be based shall be furnished to the Contractor at
the time of the exercise of such option.

Article 22. – Reproduction Rights – It is expressly understood
and agreed by and between the parties hereto, that after payment is completed
under the terms of this contract, the Government shall have the right, with-
out further compensation to the contractor, to construct, or have constructed
in accordance with the contractor's design, and to use any number of airplanes,
parts and/or accessories and sell said aircraft, parts and/or accessories
according to law as condemned material; provided, that the contractor shall,
nevertheless be at liberty to apply for a patent on any features originated
by him, and shall be entitled to enjoy the exclusive rights under such patent
as he may obtain as against all other persons, except the United States
Government, or its assignee as aforesaid.

Article 23. – License Rights – (1) The Contractor agrees to grant
and by the execution of this contract does grant, sell and convey to the Gov-
ernment, for the consideration set forth above and without additional cost,
a non-exclusive, irrevocable right and license to utilize for all Government
purposes, and to practice and cause to be practiced any and all discoveries,

Page 1-P of Contract W 535 ac-18969

EXHIBIT 1 - PAGE 23

inventions, improvements and suggestions heretofore and/or hereafter made,
perfected, devised and/or acquired by the Contractor, its representatives,
employees or other cooperatives and incorporated in the construction of the
airplanes called for, which discoveries, inventions, improvements and/or
suggestions are and/or were wholly or in part developed, perfected and/or
reduced to practice with the aid and/or cooperation of the Government or
of Government personnel, and/or by the Contractor to meet explicit Govern-
mental requirements.

(2)  The license herein granted includes the right of the Govern-
ment to make, have made, use and sell for Governmental purposes any and all
devices and articles and things, made, perfected and/or devised in the manner
hereinbefore set forth and incorporated in the airplanes called for as
aforesaid, but does not transfer to the Government any right or license in
and to any process patents, shop practices and/or manufacturing methods
held or acquired by the Contractor.

(3)  The right and license herein conveyed shall extend through-
out the United States, its territories and all foreign countries and shall
remain in full force and effect during the full term of patent and/or other
rights held by the Contractor and relating to the devices and/or things here-
inbefore referred to.

Page 4-Q of Contract W 535 ac-12969

EXHIBIT 1 - PAGE 24

ARTICLE 24. *Termination when Contractor not in Default.* If, in the opinion of the Contracting Officer upon the approval of The Secretary of War, the best interests of the Government so require, this contract may be terminated by the Government, even though the contractor be not in default, by a notice in writing relative thereto from the Contracting Officer to the contractor. In case such notice be given the contractor this contract shall terminate, ipso facto, upon the giving of said notice. Upon such termination the contractor shall forthwith deliver to the Government f.o.b. cars, contractor's plant, in their then state of completion, all articles, spare parts, drawings and other information and things called for herein, not previously delivered, and all work in process, materials and fabricated parts acquired and/or produced by the contractor for the performance of this contract, and the Government shall then forthwith pay the contractor all amounts, if any, remaining due and unpaid under this contract for completed articles, spare parts, drawings and other information and things called for herein, theretofore completed, delivered and accepted by the Government; and the Government shall also forthwith pay the contractor for all partially completed articles, spare parts, work in process, materials, fabricated parts, drawings and other information and things to be so delivered hereunder, an amount to be computed as follows:

(a) There shall be determined by an audit conducted by or for the Contracting Officer, the total net amount of all expenditures and obligations made and/or incurred by the contractor under this contract in designing, manufacturing and delivering said partially completed articles, spare parts, work in process, materials, fabricated parts, drawings and other information and things so delivered hereunder.

(b) The contractor and the Contracting Officer shall agree upon an estimate, based on the foregoing audit and any other pertinent data, of the net cost to the contractor of fully completing and delivering said partially completed articles, spare parts, drawings and other information and things called for herein, all in accordance with the requirements of this contract had it not been terminated, including in such estimate all cost previously incurred under this contract in designing and manufacturing said partially completed articles, spare parts, drawings and other information and things, as well as those costs which would be required in the future for the entire completion and delivery thereof. In the event of the failure of the Contractor and the Contracting Officer to arrive promptly at such an agreement, said estimate shall be determined in the manner provided in this contract for the adjustment of claims and disputes.

(c) The percentage which the foregoing item (a) is of item (b) shall then be determined and a sum of money equal to that same percentage of the total contract price (plus or minus any additions or deductions for changes), of such partially completed articles, spare parts, drawings and other information and things, had they been completed, delivered and accepted in accordance with the terms of this contract, shall then be computed.

(d) The total of all payments, if any, previously made to the contractor on account of such partially completed articles, spare parts, drawings and other information and things, shall then be ascertained.

(e) The contractor shall then be paid the same sum of money computed in accordance with (c) above, less the total of item (d).

Upon the making of said payments all obligations of the Government to make further payments or to carry out other undertakings hereunder shall cease forthwith and forever, except that all rights and obligations of the respective parties under the Articles, if any, of this contract applicable to Patent Infringments and Reproduction Rights shall remain in full force and effect.

ARTICLE 25. *Liability for Government Property.*—The contractor's liability for loss or damage to Government property delivered to it for installation in the articles contracted for hereunder, or for use in connection with the performance of this contract, shall be that of a bailee under a mutual benefit bailment.

ARTICLE 26. *Sub-Contracts.*—No contract shall be made by the contractor with any other party for furnishing any of the completed or substantially completed articles, spare parts, or work herein contracted for without the written approval of the Contracting Officer.

ARTICLE 27. [illegible struck-through text]

ARTICLE 28. *Furnishing of Materials and Supplies by the Government.*—The Contracting Officer may at his option from time to time furnish the contractor with materials and/or supplies not readily obtainable in the open market and which are required by the contractor for the performance of this contract. In such event, the cost to the Government of such materials and/or supplies, plus 10% of such cost, shall be deducted from the contract price of the articles, spare parts, supplies, and/or work herein contracted for in such manner and at such times as the Contracting Officer may specify. The said cost to the Government shall be determined and fixed by the Contracting Officer.

*Page 4-B of Contract: W 535 AC- 12989*

**EXHIBIT 1 - PAGE 25**

ARTICLE 29 *Representations and Stipulations Pursuant to Public Act No. 846, 74th Congress.* (a) The contractor is the manufacturer of ▓▓▓▓▓▓▓▓▓▓ the materials, supplies, articles, or equipment to be manufactured or used in the performance of the contract.

(b) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(c) No person employed by the contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract shall be permitted to work in excess of 8 hours in any one day or in excess of 40 hours in any one week, unless such person is paid such applicable overtime rate as has been set by the Secretary of Labor.

(d) No male person under 16 years of age and no female person under 18 years of age and no convict labor will be employed by the contractor in the manufacture or production or furnishing of any of the materials, supplies, articles, or equipment included in the contract.

(e) No part of the contract will be performed nor will any of the materials, supplies, articles, or equipment to be manufactured or furnished under said contract be manufactured or fabricated in any plants, factories, buildings, or surroundings or under working conditions which are insanitary or hazardous or dangerous to the health and safety of employees engaged in the performance of the contract. Compliance with the safety, sanitary, and factory inspection laws of the State in which the work or part thereof is to be performed shall be prima-facie evidence of compliance with this subsection.

(f) Any breach or violation of any of the foregoing representations and stipulations shall render the party responsible therefor liable to the United States of America for liquidated damages, in addition to damages for any other breach of the contract, in the sum of $10 per day for each male person under 16 years of age, or each female person under 18 years of age, or each convict laborer knowingly employed in the performance of the contract, and a sum equal to the amount of any deductions, rebates, refunds, or underpayment of wages due to any employee engaged in the performance of the contract; and, in addition, the agency of the United States entering into the contract shall have the right to cancel same and to make open market purchases or enter into other contracts for the completion of the original contract, charging any additional cost to the original contractor. Any sums of money due to the United States of America by reason of any violation of any of the representations and stipulations of the contract as set forth herein may be withheld from any amounts due on the contract or may be recovered in a suit brought in the name of the United States of America by the Attorney General thereof. All sums withheld or recovered as deductions, rebates, refunds, or underpayments of wages shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employees who have been paid less than minimum rates of pay as set forth in such contracts and on whose account such sums were withheld or recovered: Provided, that no claims by employees for such payments shall be entertained unless made within one year from the date of actual notice to the contractor of the withholding or recovery of such sums by the United States of America.

(g) The contractor shall post a copy of the stipulations in a prominent and readily accessible place at the site of the contract work and shall keep such employment records as are required in the Regulations under the act available for inspection by authorized representatives of the Secretary of Labor.

(h) *The foregoing stipulations shall be deemed inoperative if this contract is for a definite amount not in excess of $10,000.*

(i) (*Employees affected.*) When operative, the stipulations shall be deemed applicable only to employees engaged in or connected with the manufacture, fabrication, assembling, handling, supervision, or shipment of materials, supplies, articles, or equipment required under the contract and shall not be deemed applicable to office or custodial employees.

(j) (*Overtime*) (1) When the stipulations herein are operative, employees engaged in or connected with the manufacture, fabrication, assembling, handling, supervision, or shipment of materials, supplies, articles, or equipment used in the performance of the contract may be employed in excess of 8

Wright Field 1-7-39-423

**EXHIBIT 1 - PAGE 26**

hours in any one day or in excess of 40 hours in any one week, provided such persons shall be paid for any hours in excess of such limits the overtime rate of pay which has been set therefor by the Secretary of Labor.

(2)   Until otherwise set by the Secretary of Labor the rate of pay for such overtime shall be one and one-half times the basic hourly rate or piece rate received by the employee.

(3)   If in any one week or part thereof an employee is engaged in work covered by the contractor's stipulations, his overtime shall be computed after 8 hours in any one day or after 40 hours in any one week during which no single daily total of employment may be in excess of 8 hours without payment of the overtime rate.

(F)   (*Records of employment.*)  Every contractor subject to the stipulations herein contained shall maintain the following records of employment which shall be available for the inspection and transcription of authorized representatives of the Secretary of Labor:

(1)   Name, address, sex, age, and occupation of each employee covered by the contract stipulations.

(2)   Wage and hour records for each such employee including the rates of wages and the amount paid each day period, the hours worked each day and each week, and the period during which each such employee was engaged on a Government contract with the number of such contract.

Such records shall be kept on file for at least one year after the termination of the contract.

*Page* 4-T *of Contract W-535 AC-* 12969

Wright Field 1-7-39-2M

EXHIBIT 1 - PAGE 27

ARTICLE 10   *Delays—Liquidated Damages.*—If the contractor refuses or fails to make delivery of the materials or supplies within the time specified in Article 1, or any extension thereof, the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the contractor shall pay to the Government, as fixed, agreed, and liquidated damages for each calendar day of delay in making delivery, the amount as set forth in the specifications or accompanying papers, and the contractor and his sureties shall be liable for the amount thereof: Provided, however, That the Government reserves the right to terminate the right of the contractor to proceed with deliveries or such part or parts thereof as to which there has been delay, and to purchase similar material or supplies in the open market or secure the manufacture and delivery thereof by contract or otherwise, charging against the contractor and his sureties any excess cost occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere: Provided further, That the contractor shall not be charged with liquidated damages or any excess cost when the delay in delivery is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God or the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and delays of a sub-contractor due to such causes unless the contracting officer shall determine that the materials or supplies to be furnished under the sub-contract are procurable in the open market, if the contractor shall notify the contracting officer in writing of the cause of any such delay, within ten (10) days from the beginning thereof or within such further period as the contracting officer shall, with the approval of the head of the department or his duly authorized representative, prior to the date of final settlement of the contract, grant for the giving of such notice. The contracting officer shall then ascertain the facts and extent of the delay and extend the time for making delivery when in his judgment the findings of fact justify such an extension, and his findings of fact shall be final and conclusive on the parties hereto, subject only to appeal, within thirty (30) days, by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for making delivery, shall be final and conclusive on the parties hereto.

EXHIBIT 1 - PAGE 28

1  Ronald A. McIntire, Bar No. 127407
   RMcIntire@perkinscoie.com
2  Bo W. Kim, Bar No. 217394
   BKim@perkinscoie.com
3  **PERKINS COIE LLP**
   1888 Century Park East, Suite 1700
4  Los Angeles, CA 90067-1721
   Telephone: 310.788.9900
5  Facsimile: 310.788.3399

6  Attorneys for Defendant
   THE BOEING COMPANY

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 PATTI DONLON, Individually and          Case No. CV 11 3376
   as Successor-in-Interest to the Estate
12 of PATRICK THEISEN DONLON,              **DEFENDANT THE BOEING
   Decedent, SEAN DONLON; and             COMPANY'S EXHIBITS TO
13 DOES ONE through TEN, inclusive,        DECLARATION OF
                                           MICHAEL LOMBARDI IN
14              Plaintiffs,                 SUPPORT OF DEFENDANT THE
                                           BOEING COMPANY'S
15         v.                              OPPOSITION TO PLAINTIFFS'
                                           MOTION TO REMAND;
16 AC AND S, INC., et al.,                 EXHIBIT 1, PART 2**

17              Defendants.

18
                                           Date:      October 7, 2011
19                                         Time:      9:00 a.m.
                                           Judge:     Honorable Jeffrey S. White
20

21

22

23

24

25

26

27

28
─────────────────────────────────────────────
                                           DEFENDANT THE BOEING COMPANY'S
01038-6096/LEGAL21558338.1                 EXHIBITS TO LOMBARDI DECLARATION
                                           CV 11 3376

ARTICLE **31** *Manufacturers Cross-License Agreement—Manufacturers' Aircraft Association.*—(a) The contractor will hold and save the Government, its representatives, and all other persons acting for it as agent, harmless from all demands or liabilities for alleged use of any patented invention in the making or supplying or using of the articles or work herein contracted for, or in any way concerning the fulfillment of this contract by the contractor, unless such use of the patented invention, being necessary to the fulfillment of the contract, is specifically prescribed in writing by the Government or the use necessarily flows from the nature of the thing being produced or supplied: *Provided, however,* That the obligation of the contractor in this respect shall include all demands and liabilities based on patents that are enjoyed by members of the Manufacturers' Aircraft Association or on patents that are cross-licensed under the so-called Cross-License Agreement and/or its supplements, under which the members of said Association are entitled to the use of certain patents; and if and when required, the contractor will discharge and secure the Government from all demand or liability on account thereof by proper release from the patentee or patentees or by bond or otherwise to the satisfaction of the Chief of the Air Corps.

(b) The Government will hold and save the contractor, its representatives and agents, subcontractors, or otherwise, harmless from all liability under judgments by courts of competent jurisdiction that may be obtained against the contractor, its representatives or agents, subcontractors or otherwise, because of the use of any patented invention specifically prescribed and authorized in writing by the Government as necessary for the performance of this contract, or the use of any patented invention which necessarily flows from the nature of the thing being produced, but not otherwise: *Provided,* That such patent or patents so used are not owned or controlled by the contractor, its officers or employees or persons in privity with the contractor, or are not enjoyed by members of the Manufacturers' Aircraft Association, or are not cross-licensed under the Cross-License Agreement or any supplement thereto: *Provided further,* That immediate notice of any demand, liability, or legal proceedings arising from such use is given in writing by the contractor to the contracting officer, and reserving to the Government the right to intervene in any such demand or proceeding and in its discretion to defend the same or make settlement thereof, and the contractor shall furnish all information in its possession and all assistance of its employees requested by the Government.

ARTICLE **32** *Property Accountability.*—The Air Corps property Accountable Officer, Central District, Wright Field, Dayton, Ohio, is designated as the officer to maintain the necessary property records in connection with this contract as contemplated by paragraph 10, A. R. 35-6520.



Page 4 V of Contract W 535 AC-12969

Wright Field 12-27-38-2000.

**EXHIBIT 1 - PAGE 29**

*Article* **33**—*Provisions Reference Section 14 of the Act Approved April 3, 1939—Limitation on Profits—*
It is expressly understood and agreed by both parties hereto that the contractor hereby agrees:

(a)  To make a report under oath to the Secretary of War upon completion of this contract in such form as may be prescribed by the Secretary of War, including a statement of the total contract price, the cost of performing the contract, the net income and the percentum such net income bears to the contract price.  A copy of such report shall be submitted by the contractor to the Secretary of the Treasury for consideration in connection with the Federal income tax returns of the contractor for the taxable year or years concerned.

(b)  To pay into the Treasury profit, as hereinafter provided shall be determined by the Treasury Department, in excess of 12 per centum of the total contract prices, of such contracts within the scope of the law as are completed by the particular contracting party within the income taxable year, such amount to become the property of the United States but the surety under such contracts shall not be liable for the payment of such excess profit: Provided, That if there is a net loss or a net profit less than 12 per centum on all such contracts or subcontracts completed by the particular contractor or subcontractor within any income taxable year, such net loss or deficiency in profit shall be allowed as a credit in determining the excess profit, if any, for the next four succeeding income taxable years.  Provided further, That if such amount is not voluntarily paid the Secretary of the Treasury shall collect the same under the usual methods employed under the Internal-Revenue laws to collect Federal income taxes: Provided further, That all provisions of law (including penalties) applicable with respect to the taxes imposed by Title 1 of the Revenue Act of 1934, and not inconsistent with this section, shall be applicable with respect to the assessment, collection, or payment of excess profit to the Treasury as provided by this section, and to refunds by the Treasury of over-payments of excess profits into the Treasury.

(c)  To make no subdivisions of any contract or subcontract for the same article or articles for the purpose of evading the provisions of the aforesaid Act, but any subdivision of any contract or subcontract involving an amount in excess of $10,000 shall be subject to the conditions herein prescribed.

(d)  To furnish the Secretary of War promptly and as occurring the name and address of each subcontractor with whom any subcontract in excess of $10,000 shall be entered into.

(e)  That the manufacturing spaces and books of its own plant, affiliates, and subdivisions shall at all times be subject to inspection and audit by any person designated by the Secretary of War, the Secretary of the Treasury and/or by a duly authorized committee of Congress.

(f)  To make no subcontract unless the subcontractor agrees to the foregoing conditions; Provided that the report of such subcontractor, upon completion, shall be submitted to the Secretary of War and a copy to the Secretary of the Treasury.

(g)  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Article 34.—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮

(a)  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(b)  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(c)  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Page 1 of Contract W 535 AC- 18969*

**EXHIBIT 1 - PAGE 30**

ARTICLE 35 *Partial Payments.*— [struck-through text] As set forth in Article 13 hereof.

ARTICLE 36 *Title to Property Where Partial Payments are Made.*—The title to all property upon which any partial payment is made prior to the completion of this contract, shall vest in the Government in its then condition forthwith upon the making of any such partial payment of payments: *Provided, however,* That nothing herein shall deprive the contractor of any further partial or final payments due or to become due hereunder; nor relieve the contractor and/or the Government of any of their respective rights or obligations under this contract.

ARTICLE 37 *Title to Property where Partial Payments are Made and Default Occurs.*—The contractor agrees that in case of default by it in the performance of this contract or of other termination thereof before completion, such default or other termination shall ipso facto operate to vest in the Government title to all property acquired and/or produced by the contractor for the performance of this contract, the title to which has not been previously vested in the Government under the provisions of this contract: *Provided,* That the provisions of this section shall not be operative unless at least one partial payment has been made under this contract.

ARTICLE 38 *Fire Insurance.*—The contractor agrees to insure against fire all property in its possession upon which a partial payment is about to be made, such insurance to be in a sum at least equal to the amount of such payment plus all other partial payments, if any, theretofore made thereon, and further agrees to keep such property so insured, free of cost to the Government, until the same is delivered to the Government.   Such property is to be considered as delivered to the Government upon its final acceptance.   Such insurance policy or policies shall be taken out with a company or companies satisfactory to the contracting officer and shall provide that loss, if any, shall be payable to the contractor and the Government as their respective interest may appear.   All such policies shall be filed with the contracting officer and shall be subject to his approval as to form and substance.

ARTICLE 39 *Provisions Reference Public Work or Service.*— [struck-through text]

(b)   This contract is entered into subject to the provisions of the Act approved August 24, 1935 (Public No. 321, 74th Congress), entitled:

"AN ACT requiring contracts for the construction, alteration, and repair of any public buildings or public work of the United States to be accompanied by a performance bond protecting the United States and by an additional bond for the protection of persons furnishing material and labor for the contruction, alteration, or repair of said public buildings or public work."

*Page 4-7  of Contract IV 535 AC- 12949*

EXHIBIT 1 - PAGE 31

ARTICLE **40** *Cost Records.*—The contractor agrees to keep cost records in accordance with its own methods and practices of computing costs of all expenses incurred by it in connection with the performance of this contract and such records shall be available for inspection of the Contracting Officer or his representative after the completion or earlier termination of this contract. Such cost data shall be for the information of the Government, but shall in no way affect the contract price of the articles, spare parts, supplies or work covered by this contract.

ARTICLE **41** *Progress Reports.*—The contractor agrees to furnish the Contracting Officer bi-weekly reports in triplicate, showing the status of the work at the respective dates of such reports.

ARTICLE **42** *Delivery Dates.*—For the purpose of determining the fulfillment of this contract so far as delivery dates are concerned, the time of delivery of the articles shall be calculated as the date of final Government inspection ready for shipment to destination as certified to by the Government representative. In the event that material for installation which is to be supplied by the Government is not delivered to the contractor before the date or dates on which it is required in order that the delivery dates specified in the contract may be met, such date or dates of delivery of Government material to be agreed upon between the contractor and the Government representative, the Government agrees that the required delivery dates may be extended. This extension, however, shall not exceed that period of delay actually caused by the late delivery of Government-furnished material. If any item or items of material which the Government is required to furnish are not received by the contractor before the dates hereinbefore provided, or as extended by the Government, the article or articles affected by such non-receipt of Government material shall be considered as complete without such material, but only for the purpose of determining the delivery date at the option of the Contracting Officer.

ARTICLE **43** *Inspection by Contractor and Report.*—The contractor shall provide an acceptable and complete system covering the inspection of all material, fabrication methods and finished parts. This system shall be approved by the Government representative who shall be assigned at the contractor's plant. Records of all such inspection work shall be kept complete and shall be available to the Government representative at all times. The work of construction shall at all times be open to the duly authorized Government representative for the purpose of inspection, and every facility shall be afforded such inspectors for the prosecution of their work. The Government representative shall have the right to require replacement of parts not in accordance with the approved drawings or showing inferior workmanship or material, or which, in his opinion are unsuited for the purpose intended or seriously overweight. The contractor shall inform the inspector when materials or parts are ready for inspection. The Contractor shall, in the manufacture of the articles to be supplied under this contract, be required to use jigs, fixtures, and/or other devices and appliances in all processes where such use is conducive to interchangeability and uniformity of the product, of such character as will reduce the necessity for selective assembly to the least practicable minimum, and whenever the inspector shall determine that any jig, fixture, device or other appliance is incorrect, worn, damaged, or defective to such an extent as to adversely affect basic interchangeability of the article manufactured, he shall so inform the contractor in the same manner as applied to the rejection of defective material presented for acceptance by the Government representative, and the contractor shall not thereafter use the said jig, fixture, or appliance, in its incorrect, worn, damaged, or defective form in the manufacture of articles intended for delivery under this contract. The passing as satisfactory of any particular part or piece of material by the Government representative does not relieve the contractor from any responsibility regarding faulty workmanship or material which may be subsequently discovered prior to final acceptance.

ARTICLE **44** *Approval.*—This contract shall be subject to the written approval of The Secretary of War or such officer as said Secretary may designate and shall not be binding until so approved. The date of such approval shall be deemed to be the true date for the purpose of determining all times of performance.

Page **4** of Contract W 535 AC- 12969

**EXHIBIT 1 - PAGE 32**

U. S. Standard Form No. 32
(Revised June 18, 1935)
SHEET 3

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

THE UNITED STATES OF AMERICA

By (Signed) J. C. Shively
J. C. SHIVELY, MAJOR, A.C., U.S. ARMY

CONTRACTING OFFICER
(Official title)

Two witnesses:

(Signed) L. S. Connelly                    NORTH AMERICAN AVIATION, INC.
                                                                                    Contractor.
(Signed) Ruth I. Myers                     B(Signed) J. H. Kindelberger, Pres.

                                                            Inglewood, California.
                                                            (Business address)

I,                                                    , certify that I am the

Secretary of the corporation named as contractor herein; that

who signed this contract on behalf of the contractor, was then
of said corporation; that said contract was duly signed for and in behalf of said corporation by authority
of its governing body, and is within the scope of its corporate powers.

[CORPORATE SEAL]

I hereby certify that, to the best of my knowledge and belief, based upon observation and inquiry,

J. H. KINDELBERGER                         , who signed this contract for the  NORTH

AMERICAN AVIATION, INCORPORATED                      , had authority to execute the same, and is the indi-
vidual who signs similar contracts on behalf of this corporation with the public generally.

(Signed) J. C. Shively
J. C. SHIVELY, MAJOR, A.C., U.S. ARMY   Contracting Officer.
(5)    10—1803

EXHIBIT 1 - PAGE 33

## DIRECTIONS FOR PREPARATION OF CONTRACT

1. This form or U. S. Standard Form No. 33 shall be used whenever a formal contract is entered into for the procurement of supplies and manufactured articles, whether stock or special, except coal, but their use will not be required in foreign countries.

2. There shall be no deviation from this standard contract form, except as provided for in these Directions, and except as authorized by the Director of Procurement. Where interlineations, deletions, additions, or other alterations are permitted, specific notations of the same shall be entered in the blank space following the article entitled "Alterations" before signing. This article is not to be construed as general authority to deviate from the standard form. Deletion of the descriptive matter not applicable in the preamble need not be noted in the article entitled "Alterations."

3. The blank space of Article 1 is intended for the insertion of a statement of supplies to be furnished or work done, together with time and place of performance and price, or for the enumeration of papers which contain the necessary data.

4. If it is deemed necessary to include an article on patents the Invitation to Bidders shall so state and the following article be used:

ARTICLE _____. *Patents.*—The contractor shall hold and save the Government, its officers, agents, servants, and employees, harmless from liability of any nature or kind, including costs and expenses, for or on account of any patented or unpatented invention, article, or appliance manufactured or used in the performance of this contract, including their use by the Government.

Where any patent or patents are to be excepted from the operation of this article, such exceptions will be specifically stated, by reference to the patent number, date of issue, and name of patentee, in a proviso to be added to the article.

5. If it is deemed necessary to provide for liquidated damages for delay, the following article shall be substituted for article 5 and prospective bidders so advised:

ARTICLE _____. *Delays—Liquidated Damages.*—If the contractor refuses or fails to make delivery of the materials or supplies within the time specified in Article 1, or any extension thereof, and the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the contractor shall pay to the Government, as fixed, agreed, and liquidated damages for each calendar day of delay in making delivery, the amount as set forth in the specifications or accompanying papers, and the contractor and his sureties shall be liable for the amount thereof: *Provided, however,* That the Government reserves the right to terminate the right of the contractor to proceed with deliveries or such part or parts thereof as to which there has been delay, and to purchase similar material or supplies in the open market or secure the manufacture and delivery thereof by contract or otherwise, charging against the contractor and his sureties any excess cost occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere: *Provided further,* That the contractor shall not be charged with liquidated damages or any excess cost when the delay in delivery is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God or the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and delays of a subcontractor due to such causes unless the contracting officer shall determine that the materials or supplies to be furnished under the subcontract are procurable in the open market, if the contractor shall notify the contracting officer in writing of the cause of any such delay, within 10 days from the beginning thereof, or within such further period as the contracting officer shall, with the approval of the head of the department or his duly authorized representative, prior to the date of final settlement of the contract, grant for the giving of such notice. The contracting officer shall then ascertain the facts and extent of the delay and extend the time for making delivery when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for making delivery shall be final and conclusive on the parties hereto.

6. If approval of the contract is required before it shall become binding, the following article must be added:

ARTICLE _____. *Approval.*—This contract shall be subject to the written approval of _____ and shall not be binding until so approved.

(Contracts subject to approval are not valid until approved by the authority designated to approve them, and the contractor's copy will not be delivered, nor any distribution made, until such approval. All changes and deletions must have been made before the contract is forwarded for approval.)

7. The number of executed copies and of certified copies, designation of disbursing officer, statement of appropriations, amount of bond, designation of place of inspection, as well as other administrative details, shall be as directed by the department to which the contract pertains.

8. All blank spaces must be filled in or ruled out. The contract must be dated, and the bond must bear the same or subsequent date.

9. An officer of a corporation, a member of a partnership, or an agent signing for the principal, shall place his signature and title after the word "By" under the name of the principal. A contract executed by an attorney or agent on behalf of the contractor shall be accompanied by two authenticated copies of his power of attorney, or other evidence of his authority to act on behalf of the contractor.

10. If the contractor is a corporation, one of the certificates following the signatures of the parties must be executed. If the contract is signed by the secretary of the corporation, then the first certificate must be executed by some other officer of the corporation under the corporate seal, or the second certificate executed by the contracting officer. In lieu of either of the foregoing certificates there may be attached to the contract copies of so much of the records of the corporation as will show the official character and authority of the officer signing, duly certified by the secretary or assistant secretary, under the corporate seal, to be true copies, and attested by such witnesses with his usual signature. Typewrite or print name under all signatures to contract and bond.

11. The full name and business address of the contractor must be inserted, and the contract signed under signature.

12. If it is definitely known that final acceptance cannot be accomplished within 10 or 20 days from date of delivery, due to necessity for tests or analyses which cannot be accomplished within that time, delete from U. S. Standard Form 31, before issuance, the discount provision relating to 10 calendar days or to both 10 and 20 calendar days. The provision relating to discounts may also be deleted when funds do not become available so that payment may be made within such time limits.

13. When the contract is for technical material to be specially manufactured, the following article may be used:

ARTICLE _____. *No subcontract shall be made by the contractor with any other party for furnishing any of the completed or substantially completed articles, spare parts, or work herein contracted for without the written approval of the contracting officer.*

14. Additional contract provisions and instructions deemed necessary for the particular work, not inconsistent with the standard forms nor involving questions of policy, may be incorporated in the specifications or other accompanying papers.

(6)

10—1865  U. S. GOVERNMENT PRINTING OFFICE

EXHIBIT 1 - PAGE 34

EXHIBIT "A"
Attached to and made a part of Contract W535ac12969
with
North American Aviation, Inc.

| Item No. | Article | Qty. | Unit | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| | 10001 WING INSTALLATION | | | | |
| 1 | Wing joint cover | 20 | Set | 16.27 | 325.40 |
| 2 | Wing fillet | 10 | " | 116.79 | 1167.90 |
| | 15001 CENTER SECTION WING INSTALLATION | | | | |
| 3 | Center section complete including landing gear support casting and pin, electrical wiring, brake, hydraulic, fuel and instrument lines, aileron control cables, flap operating rods, rollers, bushings and links. Tank sumps and pump fairing if built in tank. But does not include fuel gauge, fuel cock, flap operating cylinder, flaps, or any other item that is specifically mentioned in breakdown. (BC-1A airplanes) | 2 | " | 2092.69 | 4185.38 |
| 3A | Center section complete including landing gear support casting and pin, electrical wiring, brake, hydraulic, fuel and instrument lines, aileron control cables, flap operating rods, rollers, bushings and links. Tank sumps and pump fairing if built in tank. But does not include fuel gauge, fuel cock, flap operating cylinder, flaps, or any other item that is specifically mentioned in breakdown. (AT-1 airplanes) | 2 | " | 2092.69 | 4185.38 |
| 4 | Landing gear support casting and pin | 8 | " | 207.00 | 1656.00 |
| 5 | Flap operating rods and yoke | 10 | " | 16.41 | 164.10 |
| 6 | Flap operating rod rollers | 50 | " | 7.41 | 370.50 |
| 7 | Flap operating rod rollers, bushings | 100 | " | 3.20 | 320.00 |
| 8 | Landing gear links | 30 | " | 4.36 | 130.80 |
| 9 | Tank sumps | 3 | " | 75.97 | 227.91 |
| 10 | Tank sump fairing (BC-1A) | 2 | " | 38.06 | 76.12 |
| 10A | Tank sump fairing (AT-1 airplanes) | 3 | " | 38.06 | 114.18 |
| 11 | Gas tank doors | 5 | " | 31.81 | 159.05 |
| 12 | Loose access doors | 6 | " | 14.82 | 88.92 |
| 13 | Removable cantilever nose | 10 | " | 69.72 | 697.20 |
| | 16001 OUTBOARD PANEL INSTALLATION | | | | |
| 14 | Outboard panel complete including electrical wiring, instrument lines, aileron control cables, bellcrank and connecting rod, flap operating rod, rollers, bushings and links. But does not include aileron, flap, wing tip or any other item that is specifically mentioned in breakdown. | 8 | " | 1920.35 | 15362.80 |
| 15 | Aileron bellcrank | 15 | " | 15.25 | 228.75 |
| 16 | Aileron connecting rod | 12 | " | 16.27 | 195.24 |

-1-

EXHIBIT 1 - PAGE 35

EXHIBIT "A"
Attached to and made a part of Contract W535ac12969
with
North American Aviation, Inc.

| Item No. | Article | Qty. | Unit | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| 17 | Flap operating rods and yokes | 10 | Set | 21.93 | 219.30 |
| 18 | Flap operating rod rollers | 25 | " | 9.88 | 247.00 |
| 19 | Flap operating rod roller bushings | 50 | " | 4.21 | 210.50 |
| 20 | Flap operating rod links | 50 | " | 6.54 | 327.00 |
| 21 | Landing light door less glass | 10 | " | 14.09 | 140.90 |
| 22 | Landing light door glass | 10 | " | 21.06 | 210.60 |
| 23 | Loose access doors | 20 | " | 17.29 | 345.80 |
| 24 | Aileron hinges | 20 | " | 28.76 | 575.20 |
| 25 | Wing tips | 40 | " | 49.10 | 1964.00 |
| | **16001 AILERON INSTALLATION** | | | | |
| 26 | Aileron complete | 15 | " | 218.62 | 3279.30 |
| 27 | Trim tab | 8 | " | 19.75 | 158.00 |
| 28 | Trim tab rod | 8 | " | 13.80 | 110.40 |
| | **18001 FLAP INSTALLATION** | | | | |
| 29 | Outboard flaps complete | 10 | " | 64.50 | 645.00 |
| 30 | Inboard flaps complete | 15 | " | 51.86 | 777.90 |
| 31 | Eyebolt bushings for outboard and inboard flaps | 20 | " | 6.83 | 136.60 |
| 32 | Eyebolts for outboard and inboard flaps | 30 | " | 14.96 | 448.80 |
| | **20001 EMPENNAGE INSTALLATION** | | | | |
| 33 | Empennage fairing | 10 | " | 38.64 | 386.40 |
| | **21001 HORIZONTAL STABILIZER INSTALLATION** | | | | |
| 34 | Horizontal stabilizer complete | 3 | " | 267.57 | 802.71 |
| 35 | Tips | 14 | " | 8.86 | 124.04 |
| 36 | Hinges and eyebolts | 15 | " | 41.98 | 629.70 |
| | **22001 ELEVATOR INSTALLATION** | | | | |
| 37 | Elevator complete | 12 | " | 250.28 | 3003.36 |
| 38 | Trim tab | 10 | " | 21.50 | 215.00 |
| 39 | Trim tab control mechanism | 8 | " | 40.67 | 325.36 |
| 40 | Loose access doors and plates | 6 | " | 2.47 | 14.82 |
| | **23001 VERTICAL STABILIZER INSTALLATION** | | | | |
| 41 | Vertical stabilizer complete | 3 | " | 98.20 | 294.60 |
| 42 | Hinges and eyebolts | 5 | " | 21.04 | 105.20 |
| | **24001 RUDDER INSTALLATION** | | | | |
| 43 | Rudder complete | 14 | " | 176.35 | 2468.90 |
| 44 | Trim tab | 10 | " | 12.35 | 123.50 |
| 45 | Trim tab control mechanism | 8 | " | 20.33 | 162.64 |
| 46 | Loose access doors and plates | 5 | " | 1.16 | 5.80 |

-2-

EXHIBIT 1 - PAGE 36

EXHIBIT "A"

Attached to and made a part of Contract W535ac12969

with

North American Aviation, Inc.

| Item No. | Article | Qty. | Unit | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| | 31001  ENGINE COWLING INSTALLATION | | | | |
| 47 | Engine ring cowl | 15 | Set | 281.80 | 4227.00 |
| 48 | Air Scoop screen | 10 | " | 3.20 | 32.00 |
| 49 | Ring cowl lugs | 10 | " | 40.82 | 408.20 |
| 50 | Baffle plate at engine mount | 12 | " | 13.07 | 156.84 |
| 51 | Inner fixed cowl (less shroud) | 2 | " | 230.67 | 461.34 |
| 52 | Inner removable cowl | 8 | " | 116.21 | 929.68 |
| 53 | Inner cowl formers | 12 | " | 49.39 | 592.68 |
| | 31101  FUSELAGE INSTALLATION | | | | |
| 54 | Fuselage side panels (front) | 10 | " | 145.11 | 1451.10 |
| 55 | Firewall | 2 | " | 73.94 | 147.88 |
| 56 | Fuselage cowl (front section) (BC-1A airplanes) | 5 | " | 24.69 | 123.45 |
| 56A | Fuselage cowl (front section) (AT-1 airplanes) | 5 | " | 42.19 | 210.95 |
| 57 | Removable cowling | 5 | " | 41.93 | 209.65 |
| | 31201  ENCLOSURE AND WINDSHIELD INSTALLATION | | | | |
| 58 | Windshield complete | 10 | " | 97.76 | 977.60 |
| 59 | Windshield glass | 20 | " | 28.03 | 560.60 |
| 60 | Enclosure complete less windshield and rear hood | 12 | " | 231.83 | 2781.96 |
| 61 | Enclosure glass | 5 | " | 136.69 | 683.45 |
| 62 | Track rollers and bushings | 20 | " | 18.88 | 377.60 |
| 63 | Enclosure rear hood complete | 8 | " | 106.62 | 852.96 |
| 64 | Enclosure rear hood glass | 3 | " | 42.85 | 128.55 |
| 65 | Enclosure tracks | 20 | " | 35.15 | 703.00 |
| | 31901  ENGINE MOUNT INSTALLATION | | | | |
| 66 | Mount complete including attaching bolts, bushings, washers and shock absorbers | 4 | " | 125.81 | 503.24 |
| 67 | Absorbers | 25 | " | 5.08 | 127.00 |
| | 33101  CHASSIS ASSEMBLY INSTALLATION | | | | |
| 68 | Oleo, fork and axle assembly | 16 | " | 835.40 | 13364.40 |
| 69 | Packing | 100 | " | 6.22 | 622.00 |
| 70 | Oleo pivot fitting with bushings and retracting strut pin | 10 | " | 78.15 | 781.50 |
| | 33501  LANDING GEAR FAIRING INSTALLATION | | | | |
| 71 | Landing gear fairing | 30 | " | 52.15 | 1564.50 |
| 72 | Links, pins, special bolts | 15 | " | 17.00 | 255.00 |
| | 33401  WHEEL BRAKE INSTALLATION | | | | |
| 73 | Master brake cylinder | 10 | " | 67.98 | 679.80 |

-3-

EXHIBIT 1 - PAGE 37

EXHIBIT "A"
Attached to and made a part of Contract W535ac12969
with
North American Aviation, Inc.

| Item No. | Article | Qty. | Unit | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| 74 | Packing master brake cylinder | 100 | Set | 4.45 | 445.00 |
| 75 | Cable and handle (Parking) | 5 | " | 4.94 | 24.70 |
| 76 | Stem Part No. 25-33412 | 50 | " | 2.79 | 139.50 |
| 77 | Retainer, parking brake valve Part No. 19-33419 | 75 | " | 1.12 | 84.00 |
| 78 | Stem Part No. 19-33430 | 50 | " | 2.85 | 142.50 |
| 79 | Flexible lines | 100 | " | 5.66 | 566.00 |
| | 33501 LANDING GEAR RETRACTING MECHANISM INSTALLATION | | | | |
| 80 | Lock fitting (down position) | 10 | " | 40.82 | 408.20 |
| 81 | Lock pin | 15 | " | 6.10 | 91.50 |
| 82 | Rods and bellcranks | 10 | " | 45.76 | 457.60 |
| | 34001 TAIL WHEEL INSTALLATION | | | | |
| 83 | Oleo | 18 | " | 119.11 | 2143.98 |
| 84 | Packing | 75 | " | 3.68 | 276.00 |
| 85 | Post assembly | 8 | " | 91.80 | 734.40 |
| 86 | Housing (less bearing) | 12 | " | 27.60 | 331.20 |
| 87 | Fairing | 30 | " | 6.68 | 200.40 |
| | 42001 ACCESSORIES INSTALLATION | | | | |
| 88 | Exhaust manifold | 22 | " | 228.35 | 5023.70 |
| 89 | Carburetor air chamber | 8 | " | 24.69 | 197.52 |
| 90 | Hot air shroud | 6 | " | 26.87 | 161.22 |
| 91 | Air ducts and blast tubes | 6 | " | 42.27 | 253.62 |
| 92 | Rods (engine section) | 5 | " | 6.97 | 34.85 |
| 93 | Rods and bellcranks (fuselage) | 5 | " | 17.87 | 89.35 |
| | 45001 STARTER CONTROL INSTALLATION | | | | |
| 94 | Hand starter bracket and shaft | 3 | " | 23.97 | 71.91 |
| | 47001 LUBRICATING SYSTEM INSTALLATION | | | | |
| 95 | Oil tank | 8 | " | 55.30 | 442.40 |
| | 48001 FUEL SYSTEM INSTALLATION | | | | |
| 96 | Fuel gauge | 15 | " | 31.38 | 470.70 |
| 97 | Misc. brackets, supports, dials, handles, rods, gear box, fittings, clips, clamps, straps, etc. | 3 | " | 158.33 | 474.99 |
| | 52001 SURFACE CONTROLS INSTALLATION | | | | |
| 98 | Control lock assembly | 5 | " | 24.55 | 122.75 |
| | 52101 CONTROL COLUMN INSTALLATION | | | | |
| 99 | Tube assembly (less sticks and sockets) | 4 | " | 32.97 | 131.88 |
| 100 | Connecting tube assembly | 4 | " | 9.44 | 37.76 |

EXHIBIT 1 - PAGE 38

EXHIBIT "A"
Attached to and made a part of Contract W535ac12969
with
North American Aviation, Inc.

| Item No. | Article | Qty. | Unit | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| | 59201  ELEVATOR CONTROL ASSEMBLY | | | | |
| 101 | Elevator horn | 10 | Set | 15.11 | 151.10 |
| | 12401  AILERON CONTROL INSTALLATION | | | | |
| 102 | Rudder pedal connecting tubes | 6 | " | 15.83 | 94.98 |
| 103 | Hinge brackets, supports, pulleys, springs, clamps, fairleads, etc. | 2 | " | 112.72 | 225.44 |
| | 52501  FLAP CONTROL INSTALLATION | | | | |
| 104 | Control handles, rods and bellcranks | 8 | " | 21.79 | 174.32 |
| | 57001  FURNISHINGS INSTALLATION | | | | |
| 105 | Rear vision mirror | 20 | " | 2.76 | 55.20 |
| | 59301  HEATING AND VENTILATING INSTALLATION | | | | |
| 106 | Heater | 6 | " | 22.37 | 134.22 |
| 107 | Hot and cold air ducts | 18 | " | 7.70 | 138.60 |
| | 55301  TOWING INSTALLATION | | | | |
| 108 | Holddown and towing fittings | 15 | " | 10.89 | 163.35 |
| | 61301  HYDRAULIC INSTALLATION | | | | |
| 109 | Landing gear retracting cylinders | 17 | " | 111.70 | 1898.90 |
| 110 | Flap operating cylinder | 12 | " | 50.26 | 603.12 |
| 111 | Bleeding, landing gear retracting cylinders and flap operating cylinders | 100 | " | 5.79 | 579.00 |
| 112 | Hand pump | 10 | " | 35.44 | 354.40 |
| 113 | Power control and selector valve | 15 | " | 106.33 | 1594.95 |
| 114 | Tubing, hand pump, power control valve and selector valve | 100 | " | 2.65 | 265.00 |
| 115 | Flexible line | 60 | " | 3.49 | 209.40 |
| 116 | Reservoir | 5 | " | 19.03 | 95.15 |
| 117 | Misc. brackets, supports, clips, clamps, etc. | 4 | " | 24.69 | 98.76 |
| 118 | Fittings, check valve, snubbers | 3 | " | 35.01 | 105.03 |
| | 61901  FIXED GUN INSTALLATION | | | | |
| 119 | Ammunition, link and ejection chutes | 4 | " | 54.91 | 219.64 |
| 120 | Misc. brackets, supports, shield, etc. (fuselage) | 6 | " | 31.38 | 188.28 |
| | 62001  FLEXIBLE GUN INSTALLATION | | | | |
| 121 | Gun track | 2 | " | 18.01 | 36.02 |
| 122 | Ammunition box holder | 4 | " | 13.36 | 53.44 |

-5-

EXHIBIT 1 - PAGE 39

EXHIBIT "A"
Attached to and made a part of Contract W535ac12969
with
North American Aviation, Inc.

| Item No. | Article | Qty. | Unit | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| 123 | Misc. supports, brackets, clamps | 5 | Set | 10.89 | 54.45 |
| | 71001 COMMUNICATING INSTALLATION | | | | |
| 124 | Radio mast | 20 | " | 11.62 | 232.40 |
| 125 | Marker beacon masts (BC-1A airplanes) | 10 | " | 4.07 | 40.70 |
| 125A | Marker beacon masts (AT-1 airplanes) | 10 | " | 4.07 | 40.70 |
| | 73001 MISCELLANEOUS EQUIPMENT INSTALLATION | | | | |
| 126 | Blind flying hood | 20 | " | 34.86 | 697.20 |
| 127 | ENGINE SECTION ASSEMBLY consisting of Ring cowl lugs, Baffle plate at engine mount, Inner fixed cowl (less shroud), Inner removable cowl, Inner cowl formers. Installation of Baffle plate at engine mount, Inner fixed cowl, Inner removable cowl, Inner cowl formers, Mount complete including attaching bolts, bushings, washers and shock absorbers, Installation of mount complete including attaching bolts, bushings, washers and shock absorbers, Exhaust manifold, Carburetor air chamber, Hot air shroud, Oil cooler, Engine driven fuel pump, Air ducts and blast tubes, Rods (engine section), misc. supports, brackets, etc., Installation of exhaust manifold, Carburetor air chamber, Hot air shroud, Oil cooler, Engine driven fuel pump, Air ducts and blast tubes, Rods (engine section), misc. supports, brackets, etc., Rods (engine section), Rods and bellcrank (engine section), brackets, Installation of Rods and bellcrank (engine section), Brackets, Lines and connections (engine section), Hand starter bracket and shaft, Oil tank, Oil drain valve, Oil lines, misc. supports, brackets, straps, clamps, hose, liners, etc., Installation of Oil tank, Oil drain valve, Oil lines, misc. supports, brackets, straps, clamps, hose, liners, etc., Fuel lines (engine section), Instrument lines (engine section), Grease gun and clamps, Heater, Hot and cold air ducts, Electrical (engine section), Installation of Electrical (engine section), Engine driven pump, Flexible line, Solid lines and block (engine section), Installation of Engine driven pump, Flexible line, Solid lines and block (engine section), Impulse tube, solenoid cable, support, bracket, clips, pulley (engine section), Installation of Impulse tube, solenoid cable, support, bracket, clips. | 20 | " | 1499.91 | 29998.20 |

-6-

EXHIBIT 1 - PAGE 40

EXHIBIT "A"
Attached to and made a part of Contract W535ac12569
with
North American Aviation, Inc.

| Item No. | Article | Qty. | Unit | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| 127 | Pin Part No. 25-58038 | 10 | Set | 6.20 | 62.00 |
| 128 | Bearing Part No. 25-58041 | 20 | " | 4.01 | 80.20 |
| 129 | Gasket Part No. 51-58101-12 | 100 | " | .06 | 6.00 |
| 130 | Bearing Part No. 55-58182 | 10 | " | 2.56 | 25.60 |
| 131 | Retainer Part No. 55-58183 | 15 | " | 1.30 | 19.50 |
| 132 | Ring Part No. 55-58127 | 10 | " | 1.10 | 11.00 |
| 133 | Ring Part No. 55-58180 | 15 | " | 1.10 | 16.50 |
| 134 | Piston Part No. 55-58126 | 5 | " | 9.41 | 47.05 |
| 135 | Ring Part No. L-1217N | 100 | " | .60 | 60.00 |
| 136 | Piston Part No. 55-58124 | 5 | " | 3.60 | 18.00 |
| 137 | Bearing Part No. 55-58182 | 10 | " | 2.65 | 26.50 |
| 138 | Retainer Part No. 55-58185 | 5 | " | 1.42 | 7.10 |
| 139 | Piston Part No. 25-58016 | 5 | " | 3.73 | 18.65 |
| 140 | Bearing Part No. 55-58140 | 5 | " | 1.12 | 5.60 |
| 141 | Retainer Part No. 25-58022 | 20 | " | .31 | 6.20 |
| 142 | Head Part No. 25-58018 | 10 | " | .91 | 9.10 |
| 143 | Gasket Part No. 51-58101-6 | 100 | " | .04 | 4.00 |
| 144 | Retainer Part No. 55-58139 | 10 | " | .92 | 9.20 |
| 145 | Valve Part No. 55-58138 | 20 | " | .56 | 11.20 |
| 146 | Ring Part No. 55-58157 | 10 | " | .60 | 6.00 |
| 147 | Ring Part No. 55-58158 | 10 | " | .60 | 6.00 |
| 148 | Retainer Part No. 25-58008 | 10 | " | .40 | 4.00 |
| 149 | Valve Part No. 50-58037 | 15 | " | 8.96 | 134.40 |
| 150 | Retainer Part No. 50-58040 | 10 | " | .42 | 4.20 |
| 151 | Retainer Part No. 50-58041 | 10 | " | .42 | 4.20 |
| 152 | Pin Part No. 50-58054 | 5 | " | 2.69 | 13.45 |
| 153 | Gasket Part No. 51-58101-11 | 100 | " | .09 | 9.00 |
| 154 | Valve Part No. 55-58141 | 20 | " | 3.13 | 62.60 |
| 155 | Seat Part No. 55-58142 | 10 | " | 2.24 | 22.40 |
| 156 | Washer Part No. 55-58146 | 18 | " | .18 | 3.24 |
| 157 | Washer Part No. B985-17-21-32 | 30 | " | .06 | 1.80 |
| 158 | Nut Part No. 55-58149 | 10 | " | 1.79 | 17.90 |
| 159 | Valve Part No. 55-58151 | 20 | " | 5.37 | 107.40 |
| 160 | Retainer Part No. 55-58154 | 5 | " | 2.01 | 10.05 |
| 161 | Retainer Part No. 55-58155 | 5 | " | 2.01 | 10.05 |
| | | | | | 135240.56 |

NOTE: The contract price stipulated in Paragraph (1) (b) of Article 18 of the contract, as amended and reduced by Paragraph 1 b. of Change Order, Serial No. 2827, Change No. 2 to the contract, is further reduced in an amount of $1,209.79 under the provisions of Item 2 of Paragraph (1) of Article 16 of the contract as a credit to Procurement Authority AC 18 P 2-3037 A 0705——90.

-7-

EXHIBIT 1 - PAGE 41

## EXHIBIT "B"

ATTACHED TO AND MADE A PART OF CONTRACT № 55) AO-12969

## Appendix III - Paragraph A - Alternate Fuel and Oil Tanks

Price = 94.5% of the follwoing bid prices:

| Lot Quantity | Bid Price |
|---|---|
| 100 | 732.19 |
| 105 | 723.04 |
| 110 | 713.89 |
| 115 | 704.73 |
| 120 | 695.58 |
| 125 | 686.43 |
| 130 | 672.70 |
| 135 | 658.97 |
| 140 | 645.24 |
| 145 | 631.52 |
| 150 | 617.79 |
| 160 | 594.91 |
| 170 | 572.03 |
| 180 | 553.72 |
| 190 | 535.42 |
| 200 | 512.53 |
| 210 | 507.96 |
| 220 | 503.38 |
| 230 | 494.23 |
| 240 | 485.08 |
| 250 | 475.92 |
| 260 | 466.77 |
| 270 | 457.62 |
| 280 | 448.47 |
| 290 | 439.32 |
| 300 | 435.74 |
| 310 | 430.16 |
| 320 | 425.59 |
| 330 | 421.01 |
| 340 | 416.43 |
| 350 | 411.85 |
| 360 | 407.28 |
| 370 | 407.28 |
| 380 | 402.71 |
| 390 | 398.13 |

-1-

EXHIBIT 1 - PAGE 42

Exhibit "B"
Contract W 535 ac-12969

| Lot Quantity | Bid Prices |
|---|---|
| 400 | 393.55 |
| 410 | 388.98 |
| 420 | 384.40 |
| 430 | 379.82 |
| 440 | 375.25 |
| 450 | 375.25 |
| 460 | 370.67 |
| 470 | 370.67 |
| 480 | 370.67 |
| 490 | 370.67 |
| 500 | 370.67 |

Appendix III - Paragraph D - Alternate Airplane Construction.

Price = 64.5% of the following bid prices:

| Lot Quantity | Bid Price |
|---|---|
| 100 | 596.30 |
| 105 | 588.85 |
| 110 | 581.40 |
| 115 | 573.94 |
| 120 | 566.49 |
| 125 | 559.04 |
| 130 | 547.85 |
| 135 | 536.67 |
| 140 | 525.49 |
| 145 | 514.31 |
| 150 | 503.13 |
| 160 | 484.50 |
| 170 | 465.86 |
| 180 | 450.95 |
| 190 | 436.05 |
| 200 | 417.41 |
| 210 | 413.69 |
| 220 | 409.96 |
| 230 | 402.51 |
| 240 | 395.05 |

-2-

EXHIBIT 1 - PAGE 43

Exhibit "B"
Contract W 535 AC-12969

| Lot Quantity | Bid Price |
|---|---|
| 250 | 387.60 |
| 260 | 380.14 |
| 270 | 372.69 |
| 280 | 365.24 |
| 290 | 357.78 |
| 300 | 354.06 |
| 310 | 350.33 |
| 320 | 346.60 |
| 330 | 342.87 |
| 340 | 339.15 |
| 350 | 335.42 |
| 360 | 331.69 |
| 370 | 331.69 |
| 380 | 327.97 |
| 390 | 324.24 |
| 400 | 320.51 |
| 410 | 316.79 |
| 420 | 313.06 |
| 430 | 309.33 |
| 440 | 305.61 |
| 450 | 305.61 |
| 460 | 301.88 |
| 470 | 301.88 |
| 480 | 301.88 |
| 490 | 301.88 |
| 500 | 301.88 |

In the event the lot quantity of airplanes procured falls between the lot
quantities as indicated above, the additional cost shall be computed as set
forth in sub-paragraph (b) of paragraph (1) of Article 21 of Contract
W 535 AC-12969. In the event the quantity of airplanes procured exceeds
the 500 quantity the cost as noted for quantity of 500 shall apply.

-3-

EXHIBIT 1 - PAGE 44

LSC/rin

# CHANGE ORDER

| | |
|---|---|
| Prepare in Septuplicate. | |
| Attach no copy. | |
| Execute in triplicate. | |

## WAR DEPARTMENT
## AIR CORPS
### MATERIEL DIVISION
### WRIGHT FIELD      DAYTON, OHIO

Serial No. 3173      Date  6-18-40
Change No.  7         to
Contract No.  W 535 ac-12969
Dated   June 24, 1939.

To: North American Aviation, Inc., Inglewood, California.

SUBJECT:    Additional Airplanes.

A. REGING:   Contract W 535 ac-12969, as amended.

C. LER:

T.W. GET:

3.     The Government hereby elects to exercise its right and option contained in Paragraph (2)(a) of Article 21 of Contract W 535 ac-12969 to increase the lot quantity of airplanes and spare parts called for under the terms of Article 16 of the contract, as amended, and it is mutually understood and agreed by the parties hereto that so much of the provisions of the contract, as amended, as are affected by said increase are changed as set forth hereinbelow:

a.     The lot quantity of Airplanes, Basic Combat, Single-Engine, being purchased under the terms of Contract W 535 ac-12969 (as heretofore increased under Change Order, Serial No. 2827, Change No. 2 to the contract from 101 to 186) is hereby further increased from 186 to 211. The additional airplanes shall be constructed in accordance with Contractor's Detail Specification No. SD-264-2A dated September 21, 1939, and revised May 6, 1940, which revised specification is by this specific reference made a part hereof; and provision shall be made in each of said additional airplanes for the installation therein of one (1) Pratt & Whitney Model R-1340-36 Engine. The additional airplanes shall be furnished at a unit cost of $15,726.10 ($14,366.00, the lot quantity price for 211 airplanes + $1,360.10, the increase due to exercise of option 6 to 12 months after date of the contract in accordance with the provisions of Paragraph (2)(a) of Article 21 of the contract); total for twenty-five (25) additional airplanes - - - - - - - - - - - - - - - -$393,152.50

b.     Certain spare parts for all of the additional airplanes called for hereinabove shall be furnished in the quantities and at the unit prices set forth in a list designated as Exhibit "A" attached to and made a part of this Change Order.  Total cost - - - - - - - - - - - - - - - - - - - - - - - - - - - - $43,821.31

c.     The contractor shall furnish and deliver the following data in the quantities and at the prices indicated:

25 in airplanes
25 in terms
OK next 3/17/41

(2)   Fifty (50) copies of Pilot's Handbook, at $2.00 each; total - - - - - - - - - - - - - - - - - - -   $100.00

25 in airplanes
9 in Bear
OK 3/17 num

(2)   Thirty-four (34) Erection and Maintenance Manuals at $12.00 each; total - - - - - - - - - - - - - - - - -   $408.00

OK 3/18/41
num

➤ (3)   Five (5) Weight and Balance Reports at $90.00 each; total - - - - - - - - - - - - - - - - - - - - -   $450.00

SHEET 1.

EXHIBIT 1 - PAGE 45

Change Order, Serial No. 3173, Change No. 7 to Contract W 535 ac-12969. Sheet 1-A.

2.    The additional airplanes called for hereinabove shall be designated Model SBU-2, and shall be serially numbered 2548 to 2572, inclusive.

3.    a.  In the manufacture and construction of the additional airplanes, heat-treatment of aluminum alloy parts, in accordance with Navy Department Specification (including dip quenching) shall be made, at an additional cost of $525.00 per airplane; total for twenty-five (25) airplanes - - - - - - - - - - - - - - - - - - - -$13,125.00

       b.  Likewise, in the manufacture and construction of the additional airplanes the contractor shall furnish and install in each of said airplanes the following equipment:

          (1)  Signal Assemblies, Fuel Pressure, Type C-1, A.C. Drawing 35D4127.
          (2)  Landing Light Assem., Type A-5, A.C. Drawing 36D3469
                with Type A-19 Lamps.
          (3)  Fuel Pressure Switch-Over Signal Lamp Assem., Type A-1, A.C. Drawing 35B5071.
          (4)  Safety Belts (Pilot type) B-10.
          (5)  Relief Tubes, 33B4738.
          (6)  Wheel and Brake Assem., Hydraulic Axle 25258G.
          (7)  Tail Wheel (10-1/2" dia. streamline) 25264B.

          Additional cost for the above $281.91 per airplane; total for twenty-five (25) airplanes - - - - - - - - - - - - - - - - - - - $7,047.75

4.    The Government-furnished equipment required for the additional airplanes will be furnished to the contractor by the Bureau of Aeronautics, Navy Department, without cost to the contractor, f.o.b. cars, Inglewood, California, and shall be installed by the contractor without additional cost to the Government.

5.    Inspection of the additional airplanes and spare parts called for hereinabove shall be conducted by the Inspection Service of the Bureau of Aeronautics, Navy Department, but final acceptance of the airplanes and spare parts shall be made by the Air Corps Representative at the contractor's plant.

6.    Delivery: The additional airplanes shall be delivered in accordance with the general provisions of Article 17 of the contract within thirty (30) days after receipt of engines, and commencing in November, 1940. The spare parts shall be delivered concurrently with the airplanes.

       REASON:  Additional airplanes, spare parts and data required by the Bureau of Aeronautics, Navy Department. The variations in the unit prices of spare parts over the original contract prices are due to the requirement of dip quenching where applicable and the difference in Navy requirements.

Sheet 1-A.

EXHIBIT 1 - PAGE 46

Change Order Serial No. 3173, Change No. 7 to Contract W-535 ac-12969, Sheet 1-B

x
x

x

x

x

x

x

x

x

x

x

Approval recommended:
June ___, 1940

Approved:

Louis Johnson,
Acting Secretary of War.

H. H. Arnold,
Major General, Air Corps,
Chief of the Air Corps.

SHEET 1-B

EXHIBIT 1 - PAGE 47

SERIAL NO.

Except as hereby amended, all the terms and conditions of the Contract affected shall remain unmodified and in full force and effect and shall also apply in carrying out the provisions of this Change Order.

Initiated by: _____    Agreed to: _____    Ordered by: _____

Chief of Branch

1st INDORSEMENT

Inglewood, Calif.    June 7, 1945
(Place)    (Date)

TO: CONTRACTING OFFICER:

1. Contractor or Vendor hereby acknowledges above Change Order and agrees to comply therewith

under the terms immediately hereinafter indicated.

(a) For the total consideration of $155,104.56    in addition to    that provided in the Contract affected, and which
is to become due forthwith upon delivery of all the articles and spare parts affected.

(b) With an extension of the delivery date or dates set forth in Contract affected of    no change    days, for delivery of all of the articles and spare parts affected.

(c) The estimated / guaranteed weight of the article is increased / decreased from    no change    pounds to    no change    pounds.

(d) The estimated / guaranteed performance of the engine shall be increased / decreased to    no change    H.P. at    no change    R.P.M.

(e) The center of gravity of the airplane has been moved    no change    inches forward / backward and    no change    inches upward / downward by the above change.

(f) The estimated / guaranteed performance of the airplane is altered as follows:

(1) High speed at    no change    altitude increased / decreased from    no change    m.p.h. to    no change    m.p.h.

(2) Rate of climb at    no change    altitude increased / decreased from    no change    per minute to    no change    ft. per min.

(3) Service ceiling increased / decreased from    no change    feet, to    no change    feet.

(4) Absolute ceiling increased / decreased from    no change    feet, to    no change    feet.

(5) Flying Qualities

**NOTE: There will be no change in Performance, Weights, etc. covered by above item from those shown in Spec. SD-264-2A.**

NOTE: Delete words not applicable. In Sections (c), (d) and, (f), the word "estimated" must be deleted when the items have been guaranteed in the original contract.

It is hereby warranted that in the event award is made to the undersigned the unmanufactured articles, materials, or supplies furnished the United States will have been mined or produced in the United States, and the manufactured articles, materials, and supplies will have been manufactured in the United States all from articles, materials, or supplies mined, produced or manufactured, as the case may be, in the United States, except as noted below or otherwise indicated in this bid.

NORTH AMERICAN AVIATION    (SEAL)
(Contractor or Vendor)

By _____
(Signature of Official with Title held)

AFP: 157343

2nd INDORSEMENT Washington, D. C.,    June 7, 1945
(Place)    (Date)

TO: CONTRACTOR or VENDOR:

1. The terms proposed by you in the first indorsement are (not) accepted by the Government.

2. The supplies and services to be obtained by this instrument are authorized by, are for the purpose set forth in and are chargeable to Procurement Authority AC 76 F 12-3037 A 5207-005-0    the available balance of which is sufficient to cover cost of same. Except as noted below, or otherwise indicated herein all manufactured articles, materials, or supplies furnished under this Change Order shall have been mined or produced in the United States, and all manufactured articles, materials or supplies shall have been manufactured in the United States substantially from articles, materials, or supplies mined or produced or manufactured, as the case may be, in the United States.

Approved: _____

_____
Contracting Officer

Mat. Div. A. C. 414-Wright Field 12-2-43-#M sets of 2    SHEET 2    _____
Contracting Officer

EXHIBIT 1 - PAGE 48

EXHIBIT "A"

ATTACHED TO AND MADE A PART OF CHANGE ORDER, SERIAL NO. 5173,
CHANGE NO. 7 TO CONTRACT W 535 ac-12969

LIST OF SPARE PARTS FOR TWENTY-FIVE
MODEL SBD-2 AIRPLANES

| ITEM NO. | ARTICLE | QTY. | UNIT | UNIT COST | TOTAL COST |
|---|---|---|---|---|---|
| | **10001 WING INSTALLATION** | | | | |
| 1 | Wing joint cover | 5 | Set | 60.80 | 304.00 |
| 2 | Wing fillet | 5 | Set | 100.80 | 504.00 |
| | **13001 CENTER SECTION WING INSTALLATION** | | | | |
| 3 | Center section complete including landing gear support casting and fine electrical wiring, brake, hydraulic, fuel and instrument lines, aileron control cables, flap operating rods, rollers, bushings and links. Tank sumps and sump fairing if built-in tank, but does not include fuel range, fuel cock, flap operating cylinder, flaps, or any other item that is specifically mentioned in breakdown (BCw-1A airplane). | 1 | Set | 2,270.43 | 2,270.43 |
| | **14001 OUTBOARD PANEL INSTALLATION** | | | | |
| 14 | Outboard panel complete including electrical wiring, instrument lines, aileron control cables, ballasting and connecting rod, flap operating rod, rollers, bushings and links. But does not include aileron, flap, wing tip or any other item that is specifically mentioned in breakdown. | 6 | Set | 1,967.03 | 11,802.18 |
| 15 | Wing tips | 25 | set | 60.40 | 1,510.00 |
| | **16001 AILERON INSTALLATION** | | | | |
| 16 | Aileron complete | 10 | Set | 260.30 | 2,603.00 |
| | **18001 FLAP INSTALLATION** | | | | |
| 29 | Outboard flaps complete | 15 | Set | 71.34 | 1,070.10 |
| 30 | Inboard flaps complete | 15 | Set | 56.06 | 1,009.44 |
| | **20001 EMPENNAGE INSTALLATION** | | | | |
| 33 | Empennage fairing | 7 | Set | 46.40 | 324.80 |
| | **21801 HORIZONTAL STABILIZER INSTALLATION** | | | | |
| 34 | Horizontal stabilizer complete | 4 | Set | 288.54 | 1,154.16 |

EXHIBIT 1 - PAGE 49

| ITEM NO. | ARTICLES | QTY. | UNIT | UNIT COST | TOTAL COST |
|---|---|---|---|---|---|
| | **22001 ELEVATOR INSTALLATION** | | | | |
| 37 | Elevator complete | 7 | Set | 277.00 | 1,939.00 |
| | **23001 VERTICAL STABILIZER INSTALLATION** | | | | |
| 41 | Vertical stabilizer complete | 3 | Set | 105.53 | 316.59 |
| | **24001 RUDDER INSTALLATION** | | | | |
| 43 | Rudder complete | 10 | Set | 206.37 | 2,063.70 |
| | **31001 ENGINE COWLING INSTALLATION** | | | | |
| 47 | Engine ring cowl | 3 | Set | 339.04 | 1,017.12 |
| 48 | Air Scoop Screen | 3 | Set | 3.20 | 9.60 |
| 49 | Ring cowl lugs | 3 | Set | 40.77 | 122.31 |
| 50 | Baffle plate at engine mount | 3 | Set | 15.76 | 47.28 |
| 51 | Inner fixed cowl (less shroud) | 3 | Set | 151.02 | 453.06 |
| 52 | Inner removable cowl | 3 | Set | 213.15 | 655.35 |
| 53 | Inner cowl formers | 3 | Set | 39.28 | 117.84 |
| | **31601 ENCLOSURE AND WINDSHIELD INSTALLATION** | | | | |
| 58 | Windshield complete | 4 | Set | 87.76 | 351.04 |
| 60 | Enclosure complete less windshield and rear hood | 3 | Set | 311.89 | 967.39 |
| 63 | Enclosure rear hood complete | 4 | Set | 142.94 | 571.76 |
| | **31901 ENGINE MOUNT INSTALLATION** | | | | |
| 66 | Mount complete including attaching bolts, bushings, washers, and shock absorbers | 5 | Set | 165.81 | 829.05 |
| | **33101 CHASSIS ASSEMBLY INSTALLATION** | | | | |
| 68 | Oleo, fork and axle assembly | 8 | Set | 853.10 | 6,827.20 |
| | **33301 LANDING GEAR FAIRING INSTALLATION** | | | | |
| 71 | Landing gear fairing | 6 | Set | 60.94 | 365.64 |
| 72 | Links, pins, special bolts | 6 | Set | 7.58 | 45.48 |
| | **34001 TAIL WHEEL INSTALLATION** | | | | |
| 83 | Oleo | 8 | Set | 119.11 | 952.88 |
| 85 | Post assembly | 8 | Set | 89.21 | 713.68 |
| 86 | Housing (less bearing) | 8 | Set | 95.60 | 764.80 |
| 87 | Fairing | 10 | Set | 5.02 | 50.20 |
| | **42001 ACCESSORIES INSTALLATION** | | | | |
| 88 | Exhaust Manifold | 10 | Set | 228.55 | 2,285.50 |
| | **47001 LUBRICATING SYSTEM INSTALLATION** | | | | |
| 95 | Oil Tank | 4 | Set | 94.05 | 762.20 |

TOTAL . . . 43,365.37

EXHIBIT 1 - PAGE 50

MDAC-414-WP-4-16-40-10M sets of 7 pgs.

# CHANGE ORDER

### WAR DEPARTMENT
### AIR CORPS
MATERIEL DIVISION
WRIGHT FIELD    DAYTON, OHIO

| | |
|---|---|
| Serial No. | 3752 | Date 1-23-41 |
| Change No. | 13 | to |
| Contract No. | W 535 ac-12969 |
| Dated | June 24, 1940 |

Prepare in Septuplicate

Detach no copy.

Execute in triplicate

TO: North American Aviation, Inc., Inglewood, California
SUBJECT: Deferred Deliveries
AFFECTING: Contract W 535 ac-12969, as amended
ORDER:
REASON:

1.

WHEREAS, the provisions of Paragraph (6) of Change Order, Serial No. 3173, Change No. 7, to Contract W 535 ac-12969, the twenty five (25) Navy Model SNJ-2 Airplanes shall be delivered within thirty (30) days after receipt of engines and commencing in November, 1940; and

WHEREAS, the failure of the Government to deliver engines for installation, as aforesaid, has, without the fault of the Contractor, delayed the work of the Contractor so as to prevent completion and delivery of the airplanes called for, in accordance with the delivery schedule of the contract; and

NOW, THEREFORE, in consideration of the premises the parties hereto agree as follows:

a. All of the Navy Model SNJ-2 Airplanes called for under Paragraph (1) (a) of Change Order, Serial No. 3173, Change No. 7, to Contract W 535 ac-12969, shall be delivered in accordance with the general provisions of Article 17 of the Contract and the following schedule, in lieu of the schedule originally specified in same change order:

         8 - December, 1940
        17 - January , 1941

REASON: Late delivery of Government-furnished engines.

The Contract consideration is not affected by this change order.

Approval recommended:
February 10, 1941

Geo. H. Brett,
Major General, U.S.A.,
The Assistant.

Approved:

Robert P. Patterson,
Under Secretary of War.

SHEET 1.

EXHIBIT 1 - PAGE 51

SERIAL NO. 3752, Change No. 13, to Contract W 535 ac-12969, Sheet 2

Except as hereby amended, all the terms and conditions of the Contract affected shall remain unmodified and in full force and effect and shall also apply in carrying out the provisions of this Change Order.

Approved by:                                      Ordered by:

A. E. JONES, LT. COL., A. C.                      G. V. McPIKE, MAJOR, A. C.
Chief, Contract Section                           Contracting Officer.

## 1st INDORSEMENT

Inglewood, California         January 28, 1941
(Place)                       (Date)

TO: CONTRACTING OFFICER:

1. Contractor or Vendor hereby acknowledges above Change Order and agrees to comply therewith under the terms immediately hereinafter indicated:

(a) For the total consideration of $ Nothing      in addition to / less than      that provided in the Contract affected, and which is to become due / be deducted forthwith upon delivery of all the articles and spare parts affected.

(b) With an extension of the delivery date or dates set forth in Contract affected of No change days, for delivery of all of the articles and spare parts affected.

(c) The estimated / guaranteed weight of the article is increased / decreased from No Change pounds to -- pounds

(d) The estimated / guaranteed performance of the engine shall be increased / decreased to No Change H. P. at -- R. P. M.

(e) The center of gravity of the airplane has been moved No Change inches forward / backward and No Change inches upward / downward by the above change.

(f) The estimated / guaranteed performance of the airplane is altered as follows:

(1) High speed at No Change altitude increased / decreased from No Change m. p. h. to -- m. p. h.

(2) Rate of climb at No Change altitude increased / decreased from No Change ft. per minute to -- ft. per min.

(3) Service ceiling increased / decreased from No Change feet, to -- feet

(4) Absolute ceiling increased / decreased from No Change feet, to -- feet

(5) Flying Qualities No Change

NOTE: Delete words not applicable. In Sections (c), (d) and (f) the word "estimated" must be deleted when a weight and performance has been guaranteed in the original contract.

It is hereby warranted that in the event award is made to the undersigned the unmanufactured articles, materials, or supplies furnished the United States will have been mined or produced in the United States, and the manufactured articles, materials, and supplies will have been manufactured in the United States all from articles, materials, or supplies mined, produced or manufactured, as the case may be, in the United States, except as noted below or otherwise indicated in this bid.

NORTH AMERICAN AVIATION, INC. (SEAL)
(Contractor or Vendor)

By Noble Shropshire, Contract Administrator
(Signature of Official with Office held)

**NO AFP**

## 2nd INDORSEMENT

(Place)                       (Date)

TO: CONTRACTOR or VENDOR:

1. The terms proposed by you in the first indorsement are (not) accepted by the Government.

2. The supplies and services to be obtained by this instrument are authorized by, are for the purpose set forth in and are chargeable to Procurement Authority the available balance of which is sufficient to cover cost of same. Except as noted below or otherwise indicated herein all unmanufactured articles, materials, or supplies furnished under this Change Order shall have been mined or produced in the United States and all manufactured articles, materials, or supplies shall have been manufactured in the United States substantially from articles, materials, or supplies mined, produced or manufactured, as the case may be, in the United States.

Contracting Officer.

Approved:

NDAC-414-WF-S-16-40-10M sets of 2 pgs.        SHEET 2.

EXHIBIT 1 - PAGE 52

1  Ronald A. McIntire, Bar No. 127407
   RMcIntire@perkinscoie.com
2  Bo W. Kim, Bar No. 217394
   BKim@perkinscoie.com
3  **PERKINS COIE LLP**
   1888 Century Park East, Suite 1700
4  Los Angeles, CA 90067-1721
   Telephone: 310.788.9900
5  Facsimile: 310.788.3399

6  Attorneys for Defendant
   THE BOEING COMPANY

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11 PATTI DONLON, Individually and        Case No. CV 11 3376
   as Successor-in-Interest to the Estate
12 of PATRICK THEISEN DONLON,            **DEFENDANT THE BOEING**
   Decedent, SEAN DONLON; and           **COMPANY'S EXHIBITS TO**
13 DOES ONE through TEN, inclusive,      **DECLARATION OF**
                                         **MICHAEL LOMBARDI IN**
14            Plaintiffs,                **SUPPORT OF DEFENDANT THE**
                                         **BOEING COMPANY'S**
15     v.                               **OPPOSITION TO PLAINTIFFS'**
                                         **MOTION TO REMAND;**
16 AC AND S, INC., et al.,               **EXHIBIT 2**

17            Defendants.

18
                                         Date:    October 7, 2011
19                                       Time:    9:00 a.m.
                                         Judge:   Honorable Jeffrey S. White
20

21

22

23

24

25

26

27

28

01038-6096/LEGAL21558338.1                          DEFENDANT THE BOEING COMPANY'S
                                                    EXHIBITS TO LOMBARDI DECLARATION
                                                                       CV 11 3376

# EXHIBIT 2

EXHIBIT 2 - PAGE 53

*(handwritten signature)*

Standard Form No. 33 (Revised)
As modified for use by the Navy Department
May 1936

Cont. t No. NOs— 68924

Opening, _____ May 10 ____, 19 39

# CONTRACT
### (SUPPLIES)

Contract made under method (As modified for the use of the Navy Department)

No. 3(a)(b) of "Method of or
Absence of Advertising" on          NAVY DEPARTMENT
the reverse of Standard Form       BUREAU OF SUPPLIES AND ACCOUNTS
                                          (Department)
No. 1034.                   NORTH AMERICAN AVIATION, INC.
                                          (Contractor)

**RESTRICTED**

**SNJ-2**

Contract for _____ Airplanes _____        Amount, $ 676,400.00

Place _____ Various _____

THIS CONTRACT, entered into this **28th** day of **September**, 19 **39**, by the UNITED STATES OF AMERICA, hereinafter called the Government, represented by the contracting officer executing this contract, and **North American Aviation, Inc.** a corporation organized and existing under the laws of the State of **Delaware**

~~a partnership consisting of~~
~~an individual trading as~~
of the city of **Inglewood**, in the State of **California** hereinafter called the contractor, witnesseth that the parties hereto do mutually agree as follows:

ARTICLE 1. *Scope of this Contract.*—The contractor shall furnish and deliver all supplies or services covered by the items or lots hereto attached, for the consideration stated opposite each item or each lot in the schedules, in strict accordance with the specifications, schedules, and drawings, all of which are made a part hereof and designated as follows: As stated in the schedules concerned.

Deliveries shall be made as follows: As stated in the schedules concerned.

ARTICLE 2. *Changes.*—Where the supplies to be furnished are to be specially manufactured in accordance with drawings and specifications, the contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings or specifications, except Federal Specifications. Changes as to shipment and packing of all supplies may also be made as above provided. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or his duly authorized representative. Any claim for adjustment under this article must be asserted within 10 days from the date the change is ordered: *Provided, however,* That the contracting officer, if he determines that the facts justify such action, may receive and consider, and with the approval of the head of the department or his duly authorized representative, adjust any such claim asserted at any time prior to the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in Article 12 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the contract as changed.

ARTICLE 3. *Extras.*—Except as otherwise herein provided, no charge for extras will be allowed unless the same have been ordered in writing by the contracting officer and the price stated in such order.

ARTICLE 4. *Inspection.*—(*a*) All material and workmanship shall be subject to inspection and test at all times and places and, when practicable, during manufacture. In case any articles are found to be defective in material or workmanship, or otherwise not in conformity with the specification requirements, the Government shall have the right to reject such articles, or require their correction. Rejected articles, and/or articles requiring correction, shall be removed by and at the expense of the contractor promptly after notice so to do. If the contractor fails promptly to remove such articles and to proceed promptly with the replacement and/or correction thereof, the Government may, by contract or otherwise, replace and/or correct such articles and charge to the contractor the excess cost occasioned the Government thereby, or the Government may terminate the right of the contractor to proceed as provided in Article 5 (or in the article entitled "Delays—Liquidated Damages," quoted in paragraph 5 of the Directions, if it is substituted for Article 5) of this contract, the contractor and surety being liable for any damage to the same extent as provided in said Article 5 (or in said substitute article) for terminations thereunder.

(*b*) If inspection and test, whether preliminary or final, is made on the premises of the contractor or subcontractor, the contractor shall furnish, without additional charge, all reasonable facilities and assistance for the safe and convenient inspections and tests required by the inspectors in the performance of their duty. All inspections and tests by the Government shall be performed in such a manner as not to delay the work unduly. Special and performance tests shall be as described in the specifications. The Government reserves the right to charge to the contractor any additional cost of inspection and test when articles are not ready at the time inspection is requested by the contractor.

(*c*) Final inspection and acceptance of materials and finished articles will be made after delivery, unless otherwise stated. If final inspection is made at a point other than the premises of the contractor or a subcontractor, it shall be at the expense of the Government except for the value of samples used in case of rejection. Final inspection shall be conclusive except as regards latent defects, fraud, or such gross mistakes as amount to fraud. Final inspection and acceptance or rejection of the materials or supplies shall be made as promptly as practicable, but failure to inspect and accept or reject materials or supplies shall not impose liability on the Government for such materials or supplies as are not in accordance with the specifications. In the event public necessity requires the use of materials or supplies not conforming to the specifications, payment therefor shall be made at a proper reduction in price.

ARTICLE 5. *Delays—Damages.*—If the contractor refuses or fails to make deliveries of the materials or supplies within the time specified in Article 1, or any extension thereof, the Government may by written notice terminate the right of the contractor to proceed with deliveries or such part or parts thereof as to which there has been delay. In such event, the Government may purchase similar materials or supplies in the open market or secure the manufacture and delivery of the materials and supplies by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost

EXHIBIT 2 - PAGE 54

2

occasioned the Government thereby: *Provided,* That the contractor shall not be charged with any excess cost occasioned the Government by the purchase of materials or supplies in the open market or under other contracts when the delay of the contractor in making deliveries is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God or of the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and delays of a subcontractor due to such causes unless the contracting officer shall determine that the materials or supplies to be furnished under the subcontract are procurable in the open market, if the contractor shall notify the contracting officer in writing of the cause of any such delay, within 10 days from the beginning thereof, or within such further period as the contracting officer shall, with the approval of the head of the department or his duly authorized representative, prior to the date of final settlement of the contract, grant for the giving of such notice. The contracting officer shall then ascertain the facts and extent of delay, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal within 30 days by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay shall be final and conclusive on the parties hereto.

ARTICLE 6. *Responsibility for supplies tendered.*—The contractor shall be responsible for the articles or materials covered by this contract until they are delivered at the designated point, but the contractor shall bear all risk on rejected articles or materials after notice of rejection. Where final inspection is at point of origin but delivery by contractor is at some other point, the contractor's responsibility shall continue until delivery is accomplished.

ARTICLE 7. *Increase or decrease.*—Unless otherwise specified, any variation in the quantities herein called for, not exceeding 10 percent, will be accepted as a compliance with the contract, when caused by conditions of loading, shipping, packing, or allowances in manufacturing processes, and payments shall be adjusted accordingly.

ARTICLE 8. *Payments.*—The contractor shall be paid, upon the submission of properly certified invoices or vouchers, the prices stipulated herein for articles delivered and accepted or services rendered, less deductions, if any, as herein provided. Unless otherwise specified, payments will be made on partial deliveries accepted by the Government when the amount due on such deliveries so warrants; or, when requested by the contractor, payments for accepted partial deliveries shall be made whenever such payments would equal or exceed either $1,000 or 50 percent of the total amount of the contract.

ARTICLE 9. *Additional security.*—Should any surety upon the bond for the performance of this contract become unacceptable to the Government, or if any such surety shall fail to furnish reports as to his financial condition from time to time as requested by the Government, the contractor must promptly furnish such additional security as may be required from time to time to protect the interests of the Government and of persons supplying labor or materials in the prosecution of the work contemplated by the contract.

ARTICLE 10. *Officials not to benefit.*—No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

ARTICLE 11. *Covenant against contingent fees.*—The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business.

ARTICLE 12. *Disputes.*—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto. In the meantime the contractor shall diligently proceed with performance.

ARTICLE 13. *Domestic articles.*—Unless the head of the department or independent establishment concerned shall determine it to be inconsistent with the public interest, or the cost to be unreasonable, only such unmanufactured articles, materials, and supplies as have been mined or produced in the United States, and only such manufactured articles, materials, and supplies as have been manufactured in the United States substantially all from articles, materials, or supplies mined, produced, or manufactured, as the case may be, in the United States shall be delivered pursuant to this contract, except as noted in the specifications and/or other papers hereto attached. The provisions of this article shall not apply with respect to articles, materials, or supplies for use outside the United States, or if articles, materials, or supplies of the class or kind to be used, or the articles, materials, or supplies from which they are manufactured are not mined, produced, or manufactured, as the case may be, in the United States in sufficient and reasonably available commercial quantities and of a satisfactory quality.

ARTICLE 14. *Definitions.*—(a) The term "head of the department" as used herein shall mean the head or any assistant head of the executive department or independent establishment involved, and the term "his duly authorized representative" shall mean any person authorized to act for him other than the contracting officer.

(b) The term "contracting officer" as used herein shall include his duly appointed successor or his authorized representative.

ARTICLE 15. *Alterations.*—The following changes were made in this contract before it was signed by the parties hereto:

ARTICLE 16. *Patents.*—The contractor shall hold and save the Government, its officers, agents, servants, and employees, harmless from liability of any nature or kind, including costs and expenses, for or on account of any patented or unpatented invention, article, or appliance manufactured or used in the performance of this contract, including their use by the Government, unless otherwise specifically stipulated in this contract.

EXHIBIT 2 - PAGE 55

NOTE

As payment under this contract or any modification thereof can be
made only by the Bureau of Supplies and Accounts, no work is to be
undertaken involving additional cost or involving a modification in
the specifications, drawings terms or conditions of this contract,
until and unless such additional work or modification has been agreed
to in writing by the Bureau of Supplies and Accounts.

EXHIBIT 2 - PAGE 56

NOTE: DELIVERY
Item
3(a) & 3(b) - 3 airplanes in January 1940, 10 additional airplanes in February 1940, 10 additional airplanes in March 1940, 10 additional airplanes in April 1940, and 3 additional airplanes in May 1940.

Page 4, Article 17, Item 3(a) is changed to read as follows:

"The first airplane shall be delivered, set up, serviced with 100 gallons of gasoline and 10 gallons of oil of the proper rating, and ready for flight, at or near the contractor's plant, in January 1940, but not before acceptance of items 1 and 2."

Page 7, Article 18, Item 3(a) is changed to read as follows:

"The airplanes shall be furnished substantially identical with the last airplane delivered under contract NOs-62916, completely assembled and ready for flight, except that changes may be ordered as provided under CHANGES, and with the exception that a stabilizer with a slight additional area and a vertical tail surface of somewhat different form with its hinge line moved back approximately 6 inches shall be furnished. Two sets of Erection and Maintenance Instructions in accordance with Bureau of Aeronautics Specification SR-59b and two copies of Pilot's Handbook in accordance with Bureau of Aeronautics Specification SR-81a shall be furnished with the airplane."

Page 10, Article 20(c) is changed to read as follows:

"The contractor shall proceed with the manufacture of item 3(b), the airplanes, and item 4, the spare parts, upon receipt of notice of award of contract.

Page 10, Article 21(a) is changed to read as follows:

"The first airplane, item 3(a), shall be demonstrated by the contractor before the Inspector of Naval Aircraft, U.S.N., or other representative, designated by the Bureau of Aeronautics, at or near the contractor's plant, in accordance with the provisions of Bureau of Aeronautics specification SR-38B, except for the following modifications:"

Page 11, Article 22 - Paragraphs (a) and (b) are eliminated, and that paragraphs (c) and (d) relettered (a) and (b), and changed to read as follows:

"(a) The Navy Department will conduct trials on the airplane, item 3(a), after delivery and acceptance at its expense to determine whether the contract guarantees have been met, except that the contractor shall furnish at his own expense a competent airplane and engine mechanic or mechanics as required by the Navy Department.

(b) The Government assumes all risk during the trials conducted by the Navy Department (Board of Inspection and Survey), except that in case of accident if it be definitely determined that the accident is due to faulty installation, material, design, and/or construction for which the contractor is responsible, the contractor shall be liable for damage to the airplane and to Government furnished material to the extent of repairing such damage or repairing the airplane and Government furnished material at no further cost to the Navy Department."

Contract No. Non. 68924

Page 12, Article 2d, Item 3(a) is changed to read as follows:

"The first airplane will be accepted after satisfactory completion of the contractor's demonstration, Article 21(a), and upon completion of final inspection of the airplane by the Navy Department (Inspector of Naval Aircraft)."

| GOVERNMENT FURNISHED MATERIAL IN ADVANCE OF DELIVERY DATE | | |
|---|---|---|
| ITEM | 3(a) | Bibl |

## POWER PLANT

Item 1 - One Pratt & Whitney Model R-1340-6 engine complete with engine accessories not otherwise provided and Power Plant accessory Drives ................................ At once 50 Days
2 - One 2-blade Hamilton Standard Propeller, Controllable Pitch, 2-position hydraulic control 9'-0" dia. Hub #2D30, Blades 6101-12 Range 14° to 24° ......... At once 30 Days
3 - One Vacuum Pump, Type B-2. and Oil Separator .... At once 71 Days
4 - One Hand Inertia Starter - Eclipse Series 6 with Integral Booster Magneto, Crank Extension, and Handcrank................................ At once 70 Days
5 - One Engine-driven Fuel Pump, PR-12B .............. At once 70 Days
6 - One Engine Log Book ................................ At once 20 Days
7¼-One Signal Assembly, Fuel Pressure, Type C-1, AC Dwg. 3594127 ................................ At once 60 Days
8 - Throttle Stops ................................ At once 90 Days
9 - ngine Data Plate for Cockpit .................... At once 70 Days

## INSTRUMENTS

Item 1 - Two Airspeed Indicators ........................... At once 90 Days
2 - One Air Thermometer ................................ At once 90 Days
3 - Two Altimeters ................................ At once 90 Days
4 - Two Clocks ................................ At once 90 Days
5 - Two engine Gage Units (length of capilli rise, 8" and 12'0") ................................ At once 90 Days
6 - Two Compasses, Mark IX ........................... At once 90 Days
7 - Two Tachometers ................................ At once 90 Days
8 - Two Turn and Bank Indicators .................... At once 90 Days
9 - Two Manifold Pressure Gages ..................... At once 90 Days
10 - One Thermocouple 14-point for all cylinders of the engine including Selector Switches & Temperature Indicator (length of leads 10 ft.) first airplane only) ................................ At once 90 Days
11 - One Oil Thermometer (outlet)(length of capillary 5 ft.) (first airplane only) .................... At once 90 Days
12 - One Carburetor Air Thermometer .................. At once 90 Days
13 - Two Rate of Climb Indicators .................... At once 90 Days
14 - One Single-point Thermocouple Indicator Including Lead (10 ft.) and Cosset .................... At once 90 Days
15 - Two Suction Gage (8318A) ........................ At once 90 Days
16 - One Airspeed Head ................................ At once 90 Days
17 - Two Directional Gyros ........................... At once 90 Days

## ELECTRICAL EQUIPMENT

Item 1 - One Generator, Type GE-1 ....................... At once 70 Days
2 - One Control Box, Type F-2B ...................... At once 70 Days
3 - One Battery, S-34 ................................ At once 30 Days
4 - Voltammator, Type A-1 with Shunt and Resistor ... At once 30 Days
5¾- Two Landing Light Assemblies, Type A-8, Dwg. 36D3469 with two (2) Type A-19 Lamps ...... At once 40 Days
5 - Instrument Lights as required ................... At once 30 Days
7 - Exterior Lights (Running, Type B-22, Type A-3 and Type A-4, One (1) each re wired) ................... At once 30 Days

EXHIBIT 2 - PAGE 58

Contract No. Nos. 68924        3.

ITEM                                             3(a)    3(b)

## ELECTRICAL EQUIPMENT - Cont'd.

Item 8 - One Generator Cut-out, Type A-1 ............... At once   70 Days
    9 - One Fuel Pressure Switch-over Signal Lamp
       Assembly, A-1, Dwg. 3585071 .................... At once   70 Days
   10 - Six Lamps, 12-16 V. 2 c.p. (2 spares) D.C.
       Bayonet Base, Frosted NAF 212772-16 ...........At once   40 Days

## ARMAMENT

Item 1 - One Very's Pistol Cartridge Container (B.O.
       162676) Mark II .............................. At once   90 Days
     2 - One Flare Release Handle, M-2 (Double)
       B.C. 120457) .............................. At once   90 Days

## EQUIPMENT

Item 1 - Two Safety Belts (Pilot Type) R-10 ........... At once 90 Days
     2 - One Airplane First Aid Package ................ At once 90 Days
     3 - One Airplane Log Book ......................... At once 20 Days
     4 - Two Relief Tubes, 3384738 ..................... At once 30 Days
     5 - Two Wheel and Brake Assemblies, Hydraulic,
       Axle 25258G ................................... At once 70 Days
     6 - Two Casings (27" Smooth Contour) 26545 ...... At once 70 Days
     7 - Two Inner Tubes, 26546 ....................... At once 70 Days
     8 - One Tail Wheel (10-1/2" Dia. Streamline)
       252643 ........................................ At once 70 Days
     9 - Casings - Tail Wheel, 265413 ................. At once 70 Days
   10 - One Inner Tube - Tail Wheel, 26542A .......... At once 70 Days

EXHIBIT 2 - PAGE 59

BIDS ON THIS SCHEDULE OF SUPPLIES FOR THE U.S. NAVY WILL BE OPENED AT 10:00 A.M.

SCHEDULE 524 674
a....ii

<div align="right">
ORIGINAL) Indicate which<br>
DUPLICATE) by erasure
</div>

Send this schedule ACCOMPANIED BY BID ON STANDARD GOVERNMENT FORM OF BID (STANDARD FORM NO 31 NAVY EDITION) BOTH IN DUPLICATE PROPERLY EXECUTED IN ACCORDANCE WITH INSTRUCTIONS.
TO THE
BUREAU OF SUPPLIES AND ACCOUNTS
NAVY DEPARTMENT, WASHINGTON,D. C.
BID OF

FULL NAME OF BIDDER _____

ADDRESS _____
DISCOUNT: Subject to the conditions specified in Standard Form No. 31 accompanying this schedule discount will be allowed for payment within calendar days as follows.

Within 10 days.. ; Within 20 days...................; Within 30 days ... ..........:
(AFTER DELIVERY)    (AFTER DELIVERY)    AFTER DELIVERY)
Bids offering a discount upon any other basis should clearly state the conditions under which the discount is offered.
DELIVERY to be in accordance with the Conditions Governing Delivery of Supplies to the Navy.
Unless otherwise specified by the bidder it is understood and agreed that only such unmanufactured articles, materials and supplies as have been mined or produced in the United States and only such manufactured articles materials, and supplies as have been manufactured in the United States substantially all from articles, materials or supplies mined produced or manufactured as the case may be in the United States shall be delivered pursuant to a contract awarded as a result of this bid.

FEDERAL TAX

(a) Supplies and material required for the exclusive use of the United States and/ or for use as fuel supplies, ship's stores, sea stores, or legitimate equipment on vessels of war of the United States and/or for export or shipment to a possession of the United States may be exempted from payment of the manufacturer's excise tax imposed by TITLE IV of the Revenue Act of 1932, as amended. A tax exemption certificate will be furnished to exempt the article from the tax, when tax exemption is claimed by the bidder in the execution of the following stipulations:

The amount of federal tax paid or payable on articles subject to tax under Title iV of the Revenue Act of 1932, as amended, are(included - excluded) in the prices bid herein, and the bidder (has - has not) claimed and/or (will - will not) claim exemption from, credit for, or refund of such taxes with respect to sales of said articles as provided by law. ,

(b) Prices bid herein include any other Federal tax heretofore imposed by the Congress which is applicable to the material on this bid. Any sales tax, duties imposts, revenues excise or other taxes which may hereafter (the date set for the opening of this bid)be imposed by the Congress and made applicable to the material on this bid will be charged to the Government and entered on invoice as a separate item.

SALES TAX, STATE, LOCAL, ETC.

(1) Revenue taxes imposed by states, Municipalities or sub-divisions thereof on the sale of articles, are not applicable to sales to th Federal Government. A tax exemption certificate will be furnished, if required, when the following information is furnished by the bidder.

<div align="center">
(a) Name of the taxing agency_____ _____<br>
(State, local, etc)<br>
(b) Amount of tax $ _____ .. ...
</div>

**EXHIBIT 2 - PAGE 60**

317-P

## REPRESENTATIONS AND STIPULATIONS PURSUANT TO PUBLIC ACT NO. 846, 74TH CONGRESS

It is understood and agreed that this bid and any contract awarded thereon for a definite amount in excess of $10,000.00 or for an indefinite amount which MAY exceed $10,000.00, shall be subject to the representations and stipulations of Public Act No. 846, 74th Congress, and regulations issued by the Secretary of Labor pursuant thereto as follows:

a. The contractor is the manufacturer of or a regular dealer in the materials, supplies, articles, or equipment to be manufactured or used in the performance of the contract.

b. All persons employed by the contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract will be paid, without subsequent deduction or rebate on any account, not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work or in the particular or similar industries or groups of industries currently operating in the locality in which the materials, supplies, articles, or equipment are to be manufactured or furnished under the contract: Provided, however, That this stipulation with respect to minimum wages shall apply only to purchases or contracts relating to such industries as have been the subject matter of a determination by the Secretary of Labor.

c. No person employed by the contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract shall be permitted to work in excess of 8 hours in any 1 day or in excess of 40 hours in any 1 week, unless such person is paid such applicable overtime rate as has been set by the Secretary of Labor.

d. No male person under 16 years of age and no female person under 18 years of age and no convict labor will be employed by the contractor in the manufacture or production or furnishing of any of the materials, supplies, articles, or equipment included in the contract.

e. No part of the contract will be performed and will any of the materials, supplies, articles, or equipment to be manufactured or furnished under said contract be manufactured or fabricated in any plants, factories, buildings, or surroundings or under working conditions which are insanitary or hazardous or dangerous to the health and safety of employees engaged in the performance of the contract. Compliance with the safety, sanitary, and factory inspection laws of the State in which the work or part thereof is to be performed shall be prima-facie evidence of compliance with this subsection.

f. Any breach or violation of any of the foregoing representations and stipulations shall render the party responsible therefor liable to the United States of America for liquidated damages, in addition to damages for any other breach of contract, in the sum of $10 per day for each male person under 16 years of age or each female person under 18 years of age, or each convict laborer knowingly employed in the performance of the contract, and a sum equal to the amount of any deductions, rebates, refunds, or underpayment of wages due to any employee engaged in the performance of the contract; and, in addition, the agency of the United States entering into the contract shall have the right to cancel same and to make open-market purchases or enter into other contracts for the completion of the original contract, charging any additional cost to the original contractor. Any sums of money due to the United States of America by reason of any violation of any of the representations and stipulations of the contract as set forth herein may be withheld from any amounts due on the contract or may be recovered in a suit brought in the name of the United States of America by the Attorney General thereof. All sums withheld or recovered as deductions, rebates, refunds, or underpayments of wages shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employees who have been paid less than minimum rates of pay as set forth in such contracts and on whose account such sums were withheld or recovered: Provided, That no claims by employees for such payments shall be entertained unless made within 1 year from the date of actual notice to the contractor of the withholding or recovery of such sums by the United States of America.

g. The contractor shall post a copy of the stipulations in a prominent and readily accessible place at the site of the contract work and shall keep such employment records as are required in the Regulations under the act available for inspection by authorized representatives of the Secretary of Labor.

h. The foregoing stipulations shall be deemed inoperative if this contract is for a definite amount not in excess of $10,000.00.

A bidder or contractor shall be deemed to be a "manufacturer" or "regular dealer" within the meaning of stipulation a. if he falls within one of the following categories:

(a) A manufacturer is a person who owns, operates, or maintains a factory or establishment that produces on the premises the materials, supplies, articles, or equipment required under the contract and of the general character described by the specifications.

(b) A regular dealer is a person who owns, operates, or maintains a store, warehouse, or other establishment in which the materials, supplies, articles, or equipment of the general character described by the specifications and required under the contract are bought, kept in stock, and sold to the public in the usual course of business.

(1) A regular dealer in lumber and timber products, if a wholesale lumber dealer, may be a person who owns, operates, or maintains a place of business in which the materials, supplies, articles, or equipment of the general character described by the specifications and required under the contract are bought for the account of such person and sold to the public in the usual course of business; provided that at least more than 50% of his business is such purchase and sale of such materials, supplies, articles, or equipment; and provided further, that upon all orders to manufacturers for direct shipment to the United States he agrees to insert a notice in the manufacturer in the effect that the supplies are purchased for the United States and that the manufacturer is within the terms of Article 104 of these Regulations requiring compliance with the provisions of the "Public Contracts Act'.

(2) A machine tool dealer may be a person possessing, through contract or agreement with a manufacturer, the responsibility for selling that manufacturer's products, with respect to a specific territory and who is authorized by such manufacturer to offer its products and to negotiate and conclude contracts for the furnishing thereof; provided, that upon all orders to manufacturers for direct shipment to the United States he agrees to insert a notice to the manufacturer to the effect that the supplies are purchased for the United States and that the manufacturer is within the terms of Article 104 of these Regulations requiring compliance with the provisions of the "Public Contracts Act'.

Every bid received from any bidder who does not fall within one of the foregoing categories shall be rejected.

Until otherwise set by the Secretary of Labor, the rate of pay for any overtime performed under the conditions of stipulation c. shall be one and one-half times the basic hourly rate or place rate received by the employee. Overtime in any one week or part thereof an employee is engaged in work covered by the contract stipulations, shall be computed after eight hours in any one day or after 40 hours in any one week during which no single daily total of employment may be in excess of eight hours without payment of the overtime rate.

The stipulations affecting employees shall be deemed applicable only to employers engaged in or connected with the manufacture, fabrication, assembling, handling, supervision, or shipment of materials, supplies, articles, or equipment required under the contract and shall not be deemed applicable to office or custodial employees.

Any contractor subject to the representations and stipulations embodied herein shall maintain the following records of employment which shall be available for the inspection and transcription of authorized representatives of the Secretary of Labor.

a. Name, address, sex, and occupation of each employee covered by the contract stipulations.

b. Date of birth of each such employee under 21 years of age.

c. Wage and hour records for each such employee including the rate of wages and the amount paid each pay period, the hours worked each day and each week, and the period during which each such employee was engaged on a government contract with the number of such contract. Compliance with this subsection shall be deemed complete if wage and hour records for all employees in the plant are maintained during the period between the award of any government contract and the date of delivery of the materials, supplies, articles, or equipment:Provided, That where no separate records for employees engaged on government contracts are maintained, it shall be presumed until affirmative proof is present to the contrary that all employees in the plant, from the date of award of any such contract until the date of delivery of the materials, supplies, articles, or equipment, were engaged on such government contract.

EXHIBIT 2 - PAGE 61

The attention of bidders is invited to the following finding
promulgated by the Secretary of Labor under date of 14 December
1938;

"The minimum wages for employees engaged in the performance of
contracts with agencies of the United States Government, subject
to the provisions of the Public Contracts Act (49 Stat. 2036; 41
U.S.C. Sup. III 35) for the manufacture of supply of aeroplanes,
aircraft engines, and aircraft propellers, with the exception of
light or commercial aircraft as distinguished from military and
large transport aircraft, and with the exception of propellers
and engines for light or commercial aircraft, to be 50 cents an
hour, or $20.00 per week of 40 hours, arrived at either upon a
time or piece work basis; provided that apprentices may be employed
at lower rates if their employment conforms to the standards of
the Federal Committee on Apprenticeship."

40-F

EXHIBIT 2 - PAGE 62

290-P-7

Supplies, General

*BILLING INSTRUCTIONS.* Invoices in payment shall bear the following certificates signed by the duly authorized representative of the contractor billing the materials:

> I certify that the above bill is correct and just; that payment therefor has not been received; and that except as otherwise noted all of the articles, materials, and supplies covered by this invoice, if unmanufactured articles, materials, and supplies have been mined or produced in the United States, and if manufactured articles, materials, and supplies they have been manufactured in the United States substantially all from articles, materials, or supplies mined, produced, or manufactured, as the case may be, in the United States.

> I certify that the stipulations required by law and/or under contract, etc., with respect to wages, rights, and hours of work of employees have been complied with.

In case the bidder qualifies the domestic material clause in the invitation, the exception must be indicated on the invoice as an addition to or modification of the prescribed certificate.

The prescribed certificates shall be printed, typed or stamped on the voucher or invoice. In cases where it is physically impossible to execute additional certificates on the face of the invoice, these certificates will be placed on the reverse of the invoice. Additional (separate) sheets for certifications only will not be accepted.

The certificates may be executed separately or combined into one certificate at the option of the contractor.

**EXHIBIT 2 - PAGE 63**

# AIRCRAFT

PROFIT LIMITATION ON CONTRACTS FOR THE CONSTRUCTION AND
OR MANUFACTURE OF ANY COMPLETE AIRCRAFT OR PORTION THEREOF.

(ACT APPROVED MARCH 27, 1934 PUBLIC NUMBER 135, AS AMENDED)

In case the award exceeds $10,000.00 it is agreed that the
contractor will be bound to the following stipulations:

*(a)* To make a report, under oath, to the Secretary of the Navy upon
completion of this contract, in such form as may be prescribed by the
Secretary of the Navy, including a statement of the total contract
price, the cost of performing the contract, the net income and the per
centum such net income bears to the contract price. A copy of such
report shall be submitted by the contractor to the Secretary of the
Treasury for consideration in connection with the Federal income tax
returns of the contract for the taxable year or years concerned.

*(b)* To pay into the Treasury profit as hereinafter provided shall be
determined by the Treasury Department, in excess of 12 per centum of
the total contract prices for the construction and or manufacture of
any complete aircraft or portion thereof, of such contracts within the
scope of law as are completed by the particular contracting party with-
in the income taxable year, such amount to become the property of the
United States, but the surety under such contracts shall not be liable
for the payment of such excess profit: Provided, That if there is a
net loss, or a net profit less than 12 per centum, as aforesaid on all
such contracts or subcontracts for the construction and or manufacture
of any complete aircraft or portion thereof completed by the particular
contractor or subcontractor within any income taxable year, such net
loss or deficiency in profit shall be allowed as a credit in deter-
mining the excess profit, if any, during the next succeeding four income
taxable years, and that the method of ascertaining the amount of excess
profit, initially fixed upon shall be determined on or before June 30,
1939: Provided further, That if such amount is not voluntarily paid the
Secretary of the Treasury shall collect the same under the usual methods
employed under the Internal-Revenue laws to collect Federal income taxes:
Provided further, That all provisions of law (including penalties)
applicable with respect to the taxes imposed by Title I of the Revenue
Act of 1934, and not inconsistent with this section, shall be applicable
with respect to the assessment, collection, or payment of excess profit
to the Treasury as provided by this section, and to refunds by the
Treasury of over payments of excess profits into the Treasury.

*(c)* To make no subdivisions of any contract or subcontract for the same
article or articles for the purpose of evading the provisions of the
aforesaid Act but any subdivision of any contract or subcontract involv-
ing an amount in excess of $10,000 shall be subject to the conditions
herein prescribed.

*(d)* To furnish the Secretary of the Navy promptly and as occurring the
name and address of such subcontractor with whom any subcontract in
excess of $10,000 shall be entered into.

*(e)* That the manufacturing spaces and books of its own plant, affiliates,
and subdivisions shall at all times be subject to inspection and audit
by any person designated by the Secretary of the Navy, the Secretary of
the Treasury and/or by a duly authorized committee of Congress.

*(f)* To make no subcontract unless the subcontractor agrees to the fore-
going conditions; Provided that the report of such subcontractor, upon
completion, shall be submitted to the Secretary of the Navy and a copy
to the Secretary of the Treasury.

The method of ascertaining the amount of such excess profit to be paid
into the Treasury shall be as determined by the Secretary of the Treasury
in agreement with the Secretary of the Navy.

Treasury Regulations prescribing the method of ascertaining the amount
of the excess profit to be paid to the United States under this Act may be
obtained from *The Commissioner of Internal Revenue, Washington, D.C.*

329-F

EXHIBIT 2 - PAGE 64

SCHEDULE 5-0-104                                    Page 2

Bureau Reqn:  IC  Title 13-X-2.

                                        See note
Bureau:   Aeronautics.

Appn:  (70631) 1701502.001(1), Aviation Navy, 1940.

Purpose:  Additional Class VSN Airplanes for the Naval Service.

ARTICLES 1 to 16.  CONTRACT TERMS, STANDARD FORM NO. 32.

ARTICLE 17.  ITEMS, PRICES AND DELIVERIES:

    (a)  The items and consideration are:

| Item | | Qty. | Unit Price | Total |
|------|---|------|-----------|-------|
| 1. | Design Data and Drawings in ac-cordance with Specification SR-6E, Part I. | 1 set | | $1,020.00 |
| 2. | Tests and Miscellaneous Data in accordance with Specifica-tion SR-6E, Part II. | 1 set | | $ 960.00 |
| 3(a). | Airplane; Class VSN. | 1 | | $ 15,500.00 |
| 3(b). | Airplanes; Class VSN as follows: | | | |
| | Price On. | 8 | $ | $ |
| | "    " | 17 | | $ |
| | "    " | 26 | | $ |
| | "    " | 35 | $15,550.00 | $ 544,250.00 |

    NOTE:  Failure to bid on all quantities listed under
           Item 3(b) may operate to invalidate the entire bid.

| 4. | Spare parts to approximately twenty per cent (20%) of the money value of Items 3(a) and 3(b) for the quantity awarded. | | | $ 114,150.00 |
| 5. | Final Corrected Information and Drawings, in accordance with Specification SR-6E, Part III, for production contracts. | 1 set | | $ 2,400.00 |
| | Total | | | $676,400.00 |

                                    (S-500-104, Page 2)

**EXHIBIT 2 - PAGE 65**

either or both Options severally until the maximum quan-
tity under the contract (36 airplanes) shall have been
procured, provided that the Options be exercised in
writing by t . Contracting Officer within the period of
time reserved for exercising these Options.

(c) For delivery of any or all airplanes, Under Item 3(b), other-
wise than as stipulated under delivery and where the Navy Department
shall notify the contractor at least sixty (60) days before the
scheduled delivery date of the airplanes, the unit price shall be
adjusted as follows:

Packed in cars f.o.b. contractor's plant,
                        increase (or decrease) $ ___200.00___ each;
Crated f.o.b. contractor's plant,
                        increase (or decrease) $ ___400.00___ each;
Packed for ocean shipment, f.o.b. contractor's plant,
                        increase (or decrease) $ ___700.00___ each.

(d) DELIVERY REQUIREMENTS UNDER STRAIGHT BID AND OPTIONS:

Deliveries are to be in accordance with "Conditions Governing
Delivery of Supplies to the Navy". Delivery is construed to occur
on the date that the item is accepted by the Government at the de-
livery point specified. Deliveries for the respective items are to
be made by the contractor as follows:

Item 1, Design Data and Drawings, after inspection by
the Inspector of Naval Aircraft at the contractor's plant,
shall be delivered to the Navy Department (Bureau of Aero-
nautics) within (bidder insert) 30 days after date of
contract.

Item 2, Tests and Miscellaneous Data, after inspection
by the Inspector of Naval Aircraft at the contractor's
plant, shall be delivered to the Navy Department (Bureau
of Aeronautics) within (bidder insert) 30 days after
date of contract.
See note on delivery of Items 3(a) and 3(b)

Item 3(a). The first airplane shall be delivered, set
up, and ready for flight, at the Naval Air Station, Ana-
costia, D. C., within (bidder insert) ___ days after date
of contract, but not before acceptance of Items 1 and 2.

(S-500-894, Page 4)

EXHIBIT 2 - PAGE 66

_____    " _____ " (s)·  " _____    "
_____    " _____ " (s)  " _____    ", etc.

    Item 4.  Spare Parts shall be delivered, racked in cars;
boxed or crated, f.o.b., at or near the contractor's plant,
at a rate at least proportionate to the delivery of air-
planes, Item 3(b).

<div align="right">(S-500-294, Page 5)</div>

EXHIBIT 2 - PAGE 67

SCHEDULE ...          Page 6

    Item 5. Final Corrected Information and Drawings, after inspection by the Inspector of Naval Aircraft, at the contractor's plant, shall be delivered in accordance with Bureau of Aeronautics Specification SR-6B, Part III. Delivery to be complete within thirty (30) days after delivery of the last airplane.

NOTE: In the event that material for installation, which is to be supplied by the Government, is not delivered to the contractor before the date or dates on which it is required in order that the delivery dates specified in the contract may be met, such dates of delivery of Government Material to be agreed upon between the contractor and the Inspector of Naval Aircraft, the Navy Department agrees that the required delivery dates may be extended, but this extension shall not exceed that period of delay actually caused by the late delivery of Government Furnished Material.

ARTICLE 18. DESCRIPTION OF ITEMS AND SPECIFICATIONS:

    Item 1. Design Data and Drawings shall be applicable to the airplanes, Items 3(a) and 3(b), and as required by Bureau of Aeronautic. Specification SR-6B, Part I, Par. 8, except as follows and as amplified by the type specification:

    (A) Wind Tunnel Model Drawings and Data – Omit.

    (B) Mock-up – Omit.

    (C) Tail Rise Calculations and Drawings – Omit.

    (D) Structural Calculations – (See structural calculations in Item 2).

    (E) Preliminary Weight and Balance Report – Required.

    (F) Emergency Flotation Gear – Omit.

    (G) Detail Specification – Required – Based on Bureau of Aeronautics Type Specification SD-110-28.

    (H) Finish Specification – Required.

    (J) Drawings, only wherein these airplanes differ from the prototype.

    (K) Benching and Handling Gear – Omit.

(S-500-894, Page 6)

EXHIBIT 2 - PAGE 68

SCHEDULE 500-594

Item 2. Tests and Miscellaneous Data shall be applicable to the airplanes, Items 3(a) and 3(b), and as required in Bureau of Aeronautics Specification SR-6E, Part II, Par. 5, except as follows and as amplified by the type specification:

(A) Structural Calculations:-

Reports previously submitted for the prototype airplane may be referenced separately in single page report form if applicable to the airplane or may be resubmitted with revisions in case of any redesign of structural members.

(B) Tests:-

Structures Tests - Omit.

Equipment Tests:

16, 17, 18, 20 and 22 - Omit.

19 and 21 - Required.

Add No. 23 - Tests for Carbon Monoxide in accordance with Bureau of Aeronautics Specification SR-93.

(C) Actual Weight and Balance - Required.

(D) Tail Rise Calculations - Omit.

(E) Photographs - 3 sets only wherein these airplanes differ from the prototype airplane.

(F) Erection and Maintenance Instructions - Required.

(G) Power Plant Inspection Report - Required.

(H) Preliminary Composite Bill of Material - Omit.

(I) Shop Drawings - Omit.

(J) Radio Equipment Drawings - Omit.
    See Note

Item 3(a). The airplane shall be furnished in accordance with Bureau of Aeronautics Type Specification SD-116-28 dated 13 March 1939 for Class VSN Airplane, completely assembled and ready for flight, except that changes may be ordered as provided under CHANGES. Two (2) sets of Erection and Maintenance Instructions in accordance with Bureau of Aeronautics Specification SR-69B and two (2) copies of Pilot's Handbook in accordance with Bureau of Aeronautics Specification SR-81A shall be furnished with the airplane.

Item 3(b). Each airplane shall be complete the same as the airplane, Item 3(a), when finally accepted, except that changes may be ordered as provided under CHANGES. One (1) set of Erection and Maintenance Instructions in accordance with Bureau of Aeronautics Specification SR-69B and two (2) copies of Pilot's Handbook in accordance with Bureau of Aeronautics Specification SR-81A shall be furnished with each airplane.

(S-500-894, Page 7)

EXHIBIT 2 - PAGE 69

SCHEDULE 500-894                                            Page 8

Item 4: Spare Parts:

(a)  The contractor shall submit spare parts list[s] in accordance
with Specification SR-64D.  These lists will show the prices at
which each of the several parts will be furnished by the contractor.
The parts and quantities thereof which are to comprise the spare
parts, Item 4, will be specified in accordance with SR-64D as fol-
lows:  The parts to be ordered from the first list (major spares)
will be specified within fifteen (15) days after receipt of a satis-
factory list.  The remaining parts (overhaul spares and detail parts
will be specified within thirty (30) days after receipt of a satis-
factory second list.

(b)  The sum of the prices of all the spare parts for one air-
plane shall not exceed the unit contract price of an airplane under
Item 3(b) less installation, final assembly and test prices. Packing
prices may be added to spare parts prices, as permitted by Specifi-
cation SR-64D.

Item 5:  Final Corrected Information and Drawings shall be appli-
cable to the airplanes, Items 3(a) and 3(b), and as required in
Bureau of Aeronautics Specification SR-6E, Part III, for production
airplane contracts, except as follows:

   (A)  Final Corrected Information:

      (1)  Detail Specification - Required.

      (2)  Finish Specification - Omit.

      (3)  Structural Calculations:-

           Required as described under Item 2(A).

      (4)  Tests:-

           Reports of tests submitted for the prototype
           airplane may be referenced separately in
           single page report form or may be resubmitted
           with revisions if necessary to show the effects
           of any redesign.

      (5)  Airplane Photographs:-

         (a)  Photographs of Airplane - Only wherein
              this airplane differs from the proto-
              type.

         (b)  Jigs and Fixture Photographs - Omit.

                                        (S-500-894, Page 8)

EXHIBIT 2 - PAGE 70

Case MDL No 375 JSW Document 7776-4 Filed 08/30/11 Page 73 of 95
Case: MDL No. 375 JSW Document 64-4 Filed 08/9/11 Page 20 of 51

SCHEDULE 500-894                                                    Page 9

      (6)  Weight and Balance Reports – Required.

   (B)  Final Corrected Drawings – Only wherein this air-
         plane differs from the prototype, and in quan-
         tities as follows:

     (a)  Thirteen (13) sets of blueprints or white-
          prints for distribution by the Inspector
          of Naval Aircraft.

     (b)  Two (2) sets of paper vandyke prints.

     (c)  Indices in kind, of complete set of draw-
          ings including difference , applicable to
          these airplanes.

   (C)  Printed Catalogues and Data:–

     (1)  Pilot's Handbook – Required.

     (2)  Erection and Maintenance Instructions – Required.

     (3)  Spare Parts Lists – Required.

     (4)  Charts showing interchangeability – Required.

     (5)  Bill of Material – Required.

ARTICLE 19.  GOVERNMENT MATERIAL:

    The Navy Department will furnish for installation in the air-
planes the material listed as Government Furnished Material in Bureau
of Aeronautics Type Specification SD-110-28 except that the Navy De-
partment reserves the right to furnish drawings of material listed in
lieu of furnishing the material when required by the contractor to
make provision for the installation of that material.

NOTE:  Bidders shall state in their bids the number of days
      each item of Government Furnished Material listed in
      Appendix 1(a) of Type Specification SD-110-28 will
      be required at their plant in advance of: (1) the
      delivery date of the airplane, Item 3(a); (2) the
      delivery date of the first airplane, Item 3(b). This
      information shall be submitted in triplicate.

ARTICLE 20.  RELEASE FOR MANUFACTURE:

    (a)  Item 1, Design Data and Drawings, shall be delivered for re-
lease by the Navy Department (Bureau of Aeronautics) prior to the
contractor's proceeding with subsequent items of this contract. These
data and drawings will be acted upon by the Navy Department (Bureau
of Aeronautics) within thirty (30) days after receipt. Revised data
and drawings shall be delivered for portions not released by the Navy
Department (Bureau of Aeronautics). The necessity for the delivery
of any revised data and drawings shall not serve to extend the deliv-
dates of any items on this contract. The contractor may proceed with
the manufacture of the portions of Item 2, Tests and Miscellaneous
Data, and Item 3(a), the first airplane, for those portions of Item 1,
Design Data and Drawings, released by the Navy Department (Bureau of
Aeronautics).

                          (S-500-894, Page 9)

EXHIBIT 2 - PAGE 71

SCHEDULE 500-894

(b) Item 2, Tests and Miscellaneous Data, shall be delivered to and approved by the Navy Department (Bureau of Aeronautics) before the first airplane, Item 3(a), is subjected to flight, unless the contractor is otherwise authorized by the Navy Department (Bureau of Aeronautics).

See Note

(c) The contractor shall proceed with the manufacture of Item 3(b), the airplanes, and Item 4, the spare parts, of this contract upon final acceptance of Item 3(a), the first airplane, or when formal authorization to proceed with manufacture has been given by the Navy Department (Bureau of Aeronautics).

(d) Notwithstanding anything herein to the contrary, it is agreed that the Government shall not be obligated in any way for any expense incurred by the contractor for parts of Item 2, Tests and Miscellaneous Data, and Item 3(a), the first airplane, which have not been released by the Navy Department (Bureau of Aeronautics) for manufacture nor for any expenses incurred by the contractor for any of Item 3(b), the airplanes, and Item 4, spare parts, on which the contractor has not been authorized to proceed.

NOTE:   Bidders shall state what reductions in price and changes in time of delivery will be made if release for manufacture of all airplanes is given (a) upon award of contract, and (b) upon release of Item 1. In the event of acceptance of such reductions, Article 20 will be modified as necessary at time of award of contract.

ARTICLE 21. DEMONSTRATIONS:   See Note

(a) The first airplane, Item 3(a), shall be demonstrated by the contractor in accordance with the provisions of Bureau of Aeronautics Specification SR-36-3, except for the following modifications:

SECTION D - PRELIMINARY DEMONSTRATION PROCEDURE:

D-3(b).   The useful load at start of flight shall be that of Paragraph 104a of SD-110-28.

D-4.   The useful load carried shall be that of Paragraph 104a of SD-110-28.

D-5(a) & (b).   Same as D-4.

SECTION G - FINAL DEMONSTRATION PROCEDURE:

The useful load carried in all parts of the demonstration shall be that of Paragraph 104a of SD-110-28.

NOTE:  Bidders shall state what reduction in price of Item 3(a) will be made for elimination of the above demonstrations and application of part (b) of this Article to the first airplane, Item 3(a).

EXHIBIT 2 - PAGE 72

SCHEDULE 500-894                                           Page II

(b) Each airplane, Item 3(b), shall be demonstrated by the contractor by ground test in accordance with Bureau of Aeronautics Specification E-43 and by flight test to insure proper alignment and satisfactory functioning of the airplane prior to delivery.

(c) All demonstrations shall be at contractor's risk and expense. The contractor shall assume liability for any injury or damage to his own employees, agents or property, or to third parties or property of third parties incurred as a result of accidents during the demonstration of the airplanes.

ARTICLE 22. TRIALS:

*See Note*

(a) Subsequent to the demonstration of the first airplane, Item 3(a), such trials of the airplane will be conducted by the Navy Department (Board of Inspection and Survey) as may be considered necessary by it for the purpose of determining whether or not the contract guarantees have been fulfilled and that the airplane is satisfactory for service use.

(b) Final inspection of the airplane, Item 3(a), shall be a function of the Navy Department (Board of Inspection and Survey).

(c) Trials conducted by the Navy Department (Board of Inspection and Survey) will be at Government expense except that the contractor shall furnish at his own expense a competent airplane and engine mechanic or mechanics as required by the Navy Department.

(d) The Government assumes all risk during trials conducted by the Navy Department (Board of Inspection and Survey) except that in case of accident if it be definitely determined that the accident is due to faulty installation, material, design, and/or construction for which the contractor is responsible, the contractor shall be liable for damage to the airplane and to Government Furnished Material to the extent of repairing such damage or replacing the airplane and Government Furnished Material at no further cost to the Navy Department. In case of accident to the airplane during the trials for which the contractor is not responsible, the Government may have the damage to the airplane repaired by the contractor by an amendment to this contract. In case of an accident to the airplane, for which the contractor is not responsible and the Navy Department decides not to have the damage repaired by the contractor, the airplane shall be finally accepted at once.

ARTICLE 23. GUARANTEES:

(a) The contractor guarantees *the following:* (~~that each of the airplanes, Items~~) 3(a) and 3(b), will meet the following minimum requirements:

    (A) *The* ~~Each~~ airplane under all load conditions specified in Specification SD-(110-26) and in all other respects, is satisfactory for service use as a Scout airplane.
    —264-2

    (B) *The* ~~Each~~ airplane, under all load conditions specified in SD-110-26 is in correct flying balance, controllable and positively stable in the air about each of the three major axes, with free and locked longitudinal, lateral, and directional controls.

(S-500-894, Page 11)

EXHIBIT 2 - PAGE 73

SCHEDULE 500-894.                                                      Page 12

(C)  *The*
(Each) airplane under all load conditions speci-
fied in SD-110-28 is controllable and stable
on the ground.

(D)  *The*
(Each) airplane under all load conditions speci-
fied in SD-110-28 is satisfactory for service
use in taking-off from and landing on the ground.

(E)  *weight empty (Chg. B)* --- *3 823 Cbs.*
(That the weight empty of each airplane, as de-
fined in SD-110-28, Par. 105a, will not exceed
(bidder insert) ( 3536 ) pounds.)

(F)  *The*
That the performance of (each) airplane as a Scout
airplane, with useful load specified in Par. 104a
of Type Specification SD-110-28 will be:

Maximum speed at engine rated power and
altitude, not less than (~~bidder insert~~)
   205   MPH.

Minimum speed without power at sea level,
not more than (~~bidder insert~~)  67   MPH.

Service ceiling, starting with normal load,
not less than (~~bidder insert~~) 20,000 feet.

*Note.*

(b)  The performance guarantees are made with the understanding
that the Model R-1340-6 engine furnished by the Government will de-
liver 500 BHP at 2200 RPM from sea level to 8500 feet altitude, and
500 BHP at 2200 RPM for take-off purposes, ( using 2-blade controllable
pitch propeller as described in Type Specification SD-110-28.  The
engines furnished will be operated with domestic aviation gasoline
of 87 octane number.)

(c)  The contractor and the Navy Department, agree that, if the
brake horse power of an engine of similar type to those furnished
the contractor as determined by official dynamometer tests, deviates
from the rated horsepower given in Par. (b) the performance guaran-
tees shall be modified for the horse power variation by an approved
performance calculation procedure.

ARTICLE 24.  ACCEPTANCE:  see note

Item 1, Design Data and Drawings, will be accepted upon release
of all portions thereof by the Navy Department (Bureau of Aeronau-
tics).

Item 2, Tests and Miscellaneous Data, will be accepted upon ap-
proval of all portions thereof by the Navy Department (Bureau of
Aeronautics).

Item 3(a), the first airplane, will be preliminarily accepted
after satisfactory completion of the contractor's Demonstration,
Article 21. Final acceptance shall be made upon satisfactory com-
pletion of the Trials, Article 22, and after authorization and
satisfactory inclusion by the contractor of changes recommended by
the Navy Department (Bureau of Aeronautics) provided that the Trials
conducted by the Navy Department show that the airplane has met the
Guarantees, Article 23.

(S-500-894, Page 12)

EXHIBIT 2 - PAGE 74

Each airplane under Item 3(b) and Optional will be accepted
after the contractor's satisfactorily completing the Demonstration,
Article 21, for the airplane concerned, and upon completion of
final inspection of the airplane concerned by the Navy Department
(Inspector of Naval Aircraft), and provided that Item 3(a), the
first airplane, has been finally accepted.

Item 4, spare parts, will be accepted at a rate at least propor-
tionate to the delivery of the airplanes under Item 3(b) additional
and upon completion of final inspection of the parts concerned by
the Navy Department (Inspector of Naval Aircraft), but not before
final acceptance of Item 3(a).

Item 5, Final Corrected Information and Drawings, will be ac-
cepted upon approval of all portions thereof by the Navy Department
(Bureau of Aeronautics).

ARTICLE 25. PAYMENTS:

(a) Payment for Items 1 and 2 shall become due and payable upon
acceptance.

(b) Payments for each of the airplanes, Items 3(a) and 3(b), an
for airplanes, airframes, ordered under option and for spare parts,
Item 4, in lots of not less than $5,000.00 in value, will become due
upon delivery and final acceptance of the airplanes or spare parts
concerned.

(c) Payment for Item 5 shall become due and payable upon ac-
ceptance.

ARTICLE 26. USE OF PATTERNS AND FORGING AND EXTRUSION DIES:

(a) The contractor hereby agrees to grant to the Government
(Navy Department) the right to use, or have used, in the plant of
the manufacturer where generally located, any or all patterns and
forging and extrusion dies owned or controlled by the contractor,
which are used for producing parts incorporated in airplanes de-
livered under this contract. The Government (Navy Department) may
exercise this right whenever such fabrication of materials may be
desired by the Government (Navy Department), provided the Departmen
gives the contractor reasonable (30 days where practicable) notice
prior to the commencement of the fabrication of such material and
provided such use by the Department does not conflict with the con-
tractor's requirements for materials fabricated by such patterns
and dies. It is understood and agreed that the contractor has the
undisputed right to change at any time and from time to time any or
all of the above mentioned patterns and dies, to provide for normal
changes in design and/or manufacturing processes instigated by the
contractor.

(b) It is further agreed that the Government (Navy Department)
shall have the right to exercise the use of this article at any time
within seven (7) years after the date of this contract.

ARTICLE 27. DUPLICATION OF DESIGN:

This contract is on the express condition that the Government has
the right, without further compensation to the contractor, to con-
struct or have constructed for Government use according to the desi
or drawings, plans, and specifications forming a part of this con-
tract any number of articles or parts, and to use and/or sell said
articles or parts according to law as condemned material.

(S-500-694, Page 13)

EXHIBIT 2 - PAGE 75

ARTICLE 26 . DESIGN RESPONSIBILITY.

In releasing design data and/or drawings, the Navy Department accepts no responsibility for the successful operation of the equipment manufactured to the same. Any changes in design, method, and/or material which may be found necessary to make the completed equipment meet the requirements of this contract shall be done at the expense of the contractor.

ARTICLE 29 . CORRECTION OF DEFECTS

It is agreed that the contractor shall make at his own expense, such changes involving correction of defective design, installation, material, and/or construction in each of the ____airplanes____ and spare parts as the Navy Department may decide should be incorporated, prior to final acceptance. Where any ____airplanes____ or spare parts concerned has already been finally accepted, material and services for correction of such defects in design, installation, material, and/or construction, are to be furnished by the contractor without cost to the Government, provided that the Government must notify the contractor of such defects not later than six (6) months after final acceptance of such ____airplanes and/ or spare parts____ This time is to be the guarantee period. If defective design, material, installation, and/or construction are of such a nature that the Navy Department considers such action desirable, entire ____airplanes____ and/or spare parts will be returned to the contractor at Government expense for complete rebuilding at the contractor's expense. The contractor agrees to proceed without delay with the correction of these defects in a manner satisfactory to the Navy Department and to deliver such ____airplanes____ and/or spare parts to the original point of final acceptance. If ____airplanes____ and/or spare parts are returned for rebuilding, the guarantee period shall be extended to six (6) months after final acceptance of such rebuilt ____airplanes and  or spare parts____

ARTICLE 30 . SECRECY, NEW FEATURES OF DESIGN.

The contractor agrees that this contract is made on the express condition that the subject matter involved affects and relates to the national defense of the United States, and that the Navy Department holds the right to maintain all features of design involved in this contract confidential until such time as it deems it advisable to release them. The contractor obligates himself to comply with such secrecy requirements to the best of his ability and agrees not to publish, divulge, or sell anything pertaining thereto until specifically authorized so to do by the Navy Department.

ARTICLE 31 . INSPECTION DETAILS.

(a) The contractor shall provide a complete and acceptable inspection system covering the inspection of all materials, designs, fabricating methods, jigs, and finished parts. This system shall be satisfactory to the Government (Inspector of Naval Aircraft).

(b) The contractor shall use in the manufacture of the supplies to be furnished under the contract, suitable jigs, fixtures, and/or other devices and appliances in all processes where such use is conducive to interchangeability and uniformity of the product.

( c) Except for changes, the parts of supplies delivered on this contract shall be interchangeable with parts of supplies of the same model delivered to the Government by the contractor on previous contracts.

(d) Until final inspection has been completed, the Government shall have the right to reject supplies or parts of supplies which are unsuited for the purpose intended, of unsatisfactory design, of inferior workmanship, or which are overweight.

ARTICLE 32 . WEIGHT CONTROL.

A system of weight control during design and construction satisfactory to the Inspector of Naval Aircraft, shall be provided by the contractor in accordance with Bureau of Aeronautics Specification No. SR-5B of 10 August 1935.

EXHIBIT 2 - PAGE 76

ARTICLE  33.  CHANGES.

(a)    The Bureau of Supplies and Accounts as the contracting Bureau for the Navy Department, is the authority for any changes in the requirements, specifications, drawings, and/or designs. However, any changes in specifications, and in drawings and/or designs, not involving a change in contract price may be authorized in writing by the Bureau of Aeronautics.

(b)    Any change involving a change in contract price shall be authorized in writing by the Bureau of Supplies and Accounts after recommendation of the Bureau of Aeronautics and statement that the price agreed upon is reasonable and in the interest of the government, and is the total difference in price due to such change. No work involving such change is to be undertaken until after approval by the Bureau of Supplies and Accounts.

(c)    Authority to make a change, whether involving change in contract price or not shall be in writing, and the contractor agrees to proceed with such changes without delay where thus duly authorized.

(d)    The specifications may at any time be changed by agreement in writing between the contractor and the Bureau of Aeronautics, provided that each desired change shall be requested in writing by the party desiring it. In the absence of agreement, the final decision of any such request shall be made by the Bureau of Aeronautics in writing, provided it shall have accorded the contractor an opportunity for a hearing. A reasonable time shall be set by the Bureau of Aeronautics for such hearing, and pending such final decision, production and acceptance shall proceed as if no request for a change in specifications had been made. Changes agreed to or so decided upon shall be incorporated as rapidly as practicable, but in such manner as not unduly to interfere with continuity of production. No change involving an increase in cost shall be put into effect until it is authorized by the Bureau of Supplies and Accounts after recommendation from the Bureau of Aeronautics.

(e)    If the contractor desires to make a change, he shall submit with a written request an itemized statement of the additional cost for the entire contract due to such change, also the estimated weight change, change in performance guarantees, and delivery dates.

(f)    The contracting officer may at any time and without notice to the sureties make a change in this contract within the general scope thereof and this contract is based upon the express condition that such changes may be made.

**EXHIBIT 2 - PAGE 77**

ARTICLE __34__. LOSS OR DAMAGE AND INSURANCE.

(a)    In the event of loss of or damage to material furnished by the Government and/or to material on account of which the Government has made a payment to the contractor, while in the possession of the contractor, its agent or agents, from whatever cause, the contractor shall make good such loss or damage by replacing the material or by paying the Government the cost of replacement.

(b)    The contractor shall, at its own expense, keep all material furnished by the Government and/or on account of which the Government has made payment to the contractor or on account of which the contractor has applied for a progress payment, fully insured against the usual risks of loss or damage from fire or due to flight operations conducted by the contractor, its agent or agents.

(c)    The insurance shall be in the name of the United States of America and/or the contractor, and it shall be effected with such domestic underwriters as may be approved by the Secretary of the Navy. The policies shall contain a loss payable clause making losses payable to the Secretary of the Navy, or order. Any payments thereunder shall inure to the benefit of the United States to the extent of any loss suffered by the United States and not made good by the contractor, as hereinbefore provided, and to the contractor as to any remaining balance or otherwise.

(d)    Insurance policies shall be filed with the Judge Advocate General of the Navy, who shall retain custody thereof so long as the contractor is responsible for the subject matter thereof.

(e)    In lieu of specific insurance policies hereunder the Secretary of the Navy may, in his discretion, accept coverage under shop or blanket insurance carried by the contractor where the contractor carries such shop or blanket insurance against loss or damage from fire or due to flight operations conducted by the contractor, its agent or agents, and will certify such fact, under corporate seal, to the Secretary of the Navy: Provided, that the Secretary of the Navy may, in his discretion, require the contractor to submit the policies of shop or blanket insurance for his inspection as to adequacy of insurance, which policies will be returned to the contractor when such a fact is determined.

ARTICLE __35__. RECORD OF COST.

The contractor obligates himself to set up a separate record of costs against this contract for subsequent consideration and inspection by authorized representatives of the Navy Department (Bureau of Supplies and Accounts).

ARTICLE __36__. SUB-CONTRACTS.

The contractor shall not procure from any other party, either by sub-contract or otherwise, the whole, or any completed or substantially completed part of the articles or work herein contracted for without the written approval of the Navy Department (Bureau of Aeronautics).

EXHIBIT 2 - PAGE 78

NOTICE TO BIDDERS:

(a) If and when an award is made, the Government reserves the right to make award for any quantity of airplanes from 9 to 36 inclusive, as may be deemed to the best advantage of the Government.

(b) The Government further reserves the right to withhold award under this schedule for a period of ninety (90) days after date of opening of bids and bidders shall specifically agree in their bids to this reservation.

(c) Award under this contract will be made to the bidder that the Secretary of the Navy shall find to be the lowest responsible bidder that can satisfactorily perform the work or the service required to the best advantage of the Government.

(d) Drawings and data used in the design of this type of airplane are available for inspection by those invited to submit proposals at the Bureau of Aeronautics, Navy Department, Washington, D. C., and at the office of the Inspector of Naval Aircraft, Santa Monica, Calif. These data and drawings do not form a part of the specifications for this contract but are made available for inspection so that the bidders will have full information of the type of airplane involved.

(e) An airplane of the type referred to herein may be available for examination by the bidders at some point on the East Coast. Information regarding the availibility and exact location of the airplane can be obtained from the Bureau of Aeronautics, Navy Department Washington, D. C.

(f) The successful bidder, if he so requests, will be furnished the airplane referred to above and copies of all design data and drawings applicable thereto available to the Bureau of Aeronautics. The Government does not assume responsibility for the accuracy or correctness of the airplane, drawings, or design data, and it does not assume responsibility for the satisfactory operation of any parts constructed thereto.

(g) Bidders shall insert in the following spaces the approximate shipping weight and cubic measurements for use in estimating shipping costs and planning for shipment and storage:

Number of boxes required per airplane   One

General contents of each box    Complete airplane


Approximate outside dimensions of each box 10'5" x 8" x 25'6"

Approximate gross weight of each box         8400 lb.

Approximate cu. ft. vol. of each box         2142 cu. ft.

If boxed, number of cars required per airplane   One

     or, number of airplanes per car          One

If racked, number of cars required per airplane  One

     or, number of airplanes per car          One


(S-500-894, Page 17)

EXHIBIT 2 - PAGE 79

(h)  Specifications can be obtained on application of bidders
concerned from the Bureau of Supplies and Accounts.

(i)  An airplane of the model described in the specifications,
must have been built and flight tested, prior to award of contract.
Only minor variations from these specifications (and approved model)
will be considered.

(j)  AGREEMENT.  Bidders shall execute the "Agreement" attached
to and forming a part of this bid as to "Confidential" or Restricted
specifications.

*   (k)  Only bidders eligible under the provisions of Public Resolu-
tion No. 67, 74th Congress, approved 31 August 1935, may receive an
award on this schedule.  All bids shall be accompanied by a certifi-
cate by the bidder that the requirements of said resolution have been
complied with or will be complied with, as a necessary precedent to
the acceptance of an award, or that said resolution is not appli-
cable to the bidder with the reasons therefor.  Further, the accept-
able bidder if required to register by the said resolution will be
required to file a certified copy of the Certificate of Registration
as a necessary precedent to the execution of a contract.

*Certificate No. 4 of Public Resolutions No. 67, 74th Congress is on
file with Bu. of Supplies & Accounts, Navy Department.

EXHIBIT 2 - PAGE 80

290-P-1

## AGREEMENT

Schedule No. 500-894        Place Inglewood, Calif.

Specification        Date ___ May 5th, 1939

     In consideration of the receipt of the referenced specifications, plans, and accompanying papers, I agree on behalf of and for the undersigned to the following:

     (A)  The undersigned individual, firm or corporation, its representatives, agents and/or subcontractors will not supply or disclose any information regarding equipment or material of the model or kind referred to therein, or incorporate in other products special features of design or construction peculiar to the article or articles speci- fied therein without specific authority of the Navy Department in each case.

     (B)  In the case of not submitting a bid or offer on the subject proposal, or in case the bid is not accepted, the Undersigned will promptly return by hand or by reg- istered mail, the referenced specifications, plans and accompanying papers, together with all copies thereof, to the Bureau of Supplies and Accounts, Navy Department, Washington, D. C.

     (C)  It is understood that the provisions of the Act of Congress, approved 15 June 1917, including section three thereof, and re-enacted by joint resolution on 3 March 1921, quoted in part below, apply to such of the referenced documents of whatever nature as are marked "restricted"   "confidential" or "secret".

     ". . . . . . . whoever, lawfully, or unlawfully having possession of, access to, control over, or being intrusted with any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint plan, map, model, instrument, ap- pliance, or note relative to the national defense, wilfully communicates or transmits or attempts to communicate or transmit the same to any person not entitled to receive it, or wilfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it; or whoever, being intrusted with or having lawful possession or control of any document, writing, code book, signal book, sketch, photograph negative, blueprint, plan, map, model, note, or information, relating to the national defense, through gross negligence permits the same to be removed from its proper place of custody or delivered to anyone in violation of his trust, or to be lost, stolen, abstracted, or destroyed, shall be punished by a fine of not more than $10,000 or by imprisonment for not more than two years, or both . . . . . . . . . .".

     (D)  It is further understood and agreed that failure to properly safeguard and/or to promptly return as specified in "B" above all documents therein specified may be con- sidered sufficient cause for refusing in the future to entrust the undersigned with the use or custody of any specifications, plans, or documents of a restricted or confidential nature.

*IN WITNESS HEREOF:*

NOBLE SHROPSHIRE,
Executive Engineer

Signed ___ J. L. ATWOOD

*Official capacity* Vice President
           (MUST BE AN OFFICER OF THE COMPANY)

For NORTH AMERICAN AVIATION, I.C.

Address Inglewood, California

**EXHIBIT 2 - PAGE 81**

4

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

THE UNITED STATES OF AMERICA,

By _____

Purchasing Officer,
Bureau of Supplies and Accounts,
Navy Department.
....................................................
(Official title)

*Two witnesses:*

_____        _____
                                                                          *Contractor.*
_____        _____

                                        _____
                                                  (Business address)

I, _____ , certify that I am the
Secretary of the corporation named as contractor herein; that
who signed this contract on behalf of the contractor, was then
of said corporation; that said contract was duly signed for and in behalf of said corporation by authority
of its governing body, and is within the scope of its corporate powers.

                                                                          [CORPORATE SEAL]
                                        ....................................................

I hereby certify that, to the best of my knowledge and belief, based upon observation and inquiry,
_____ , who signed this contract for the
_____ , had authority to execute the same, and is the indi-
vidual who signs similar contracts on behalf of this corporation with the public generally.

                                        ....................................................
                                                          *Contracting Officer.*

U. S. Standard Form No. 26 (Revised)
   Approved by the Secretary
      of the Treasury
      Sept. 16, 1936.

# PERFORMANCE BOND

## (CONSTRUCTION OR SUPPLY)

### (As modified for use by the Navy Department)

———————

**Know all Men by these Presents,** That we,

(See Instructions 4, 5, and 7)

as PRINCIPAL and

                                                                          as SURETY,
(See Instructions 2, 3, 6, and 7)
are held and firmly bound unto the United States of America, hereinafter called the Government, in the
penal sum of

                                                                          dollars
lawful money of the United States, for the payment of which sum well and truly to be made, we bind our-
selves, our heirs, executors, administrators, and successors, jointly and severally, firmly by these presents.

THE CONDITION OF THIS OBLIGATION IS SUCH, That whereas the principal entered into a certain con-
tract, hereto attached, with the Government, dated _____ , 19

NOW, THEREFORE, If the principal shall well and truly perform and fulfill all the undertakings, cov-
enants, terms, conditions, and agreements of said contract during the original term of said contract and
any extensions thereof that may be granted by the Government, with or without notice to the surety,
and during the life of any guaranty required under the contract, and shall also well and truly perform
and fulfill all the undertakings, covenants, terms, conditions, and agreements of any and all duly author-
ized modifications of said contract that may hereafter be made, notice of which modifications to the surety
being hereby waived, then, this obligation to be void; otherwise to remain in full force and virtue.

IN WITNESS WHEREOF, the above-bounden parties have executed this instrument under their several
seals this _____ day of _____ , 19 , the name and corporate seal of each
corporate party being hereto affixed and these presents duly signed by its undersigned representative,
pursuant to authority of its governing body.

*In presence of—*

_____        _____ [SEAL]
                                                  (Principal)
_____        _____ [SEAL]
                                                  (Principal)
_____        _____ [SEAL]
                                                   (Surety)
_____        _____ [SEAL]
                                                   (Surety)

The rate of premium on this bond is _____ per thousand.

Total amount of premium charged, $_____

(The above must be filled in by corporate surety)

If individual sureties sign the above bond the Affidavits and Certificates on the Appended Sheet must be executed.

EXHIBIT 2 - PAGE 82

1   Ronald A. McIntire, Bar No. 127407
    RMcIntire@perkinscoie.com
2   Bo W. Kim, Bar No. 217394
    BKim@perkinscoie.com
3   **PERKINS COIE LLP**
    1888 Century Park East, Suite 1700
4   Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
5   Facsimile: 310.788.3399

6   Attorneys for Defendant
    THE BOEING COMPANY

7

8               **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10

11  PATTI DONLON, Individually and          Case No. CV 11 3376
    as Successor-in-Interest to the Estate
12  of PATRICK THEISEN DONLON,              **DEFENDANT THE BOEING**
    Decedent, SEAN DONLON; and             **COMPANY'S EXHIBITS TO**
13  DOES ONE through TEN, inclusive,        **DECLARATION OF**
                                            **MICHAEL LOMBARDI IN**
14                  Plaintiffs,             **SUPPORT OF DEFENDANT THE**
                                            **BOEING COMPANY'S**
15          v.                              **OPPOSITION TO PLAINTIFFS'**
                                            **MOTION TO REMAND;**
16  AC AND S, INC., et al.,                 **EXHIBIT 3**

17                  Defendants.

18
                                            Date:    October 7, 2011
19                                          Time:    9:00 a.m.
                                            Judge:   Honorable Jeffrey S. White
20

21

22

23

24

25

26

27

28

01038-6096/LEGAL21558338.1                            DEFENDANT THE BOEING COMPANY'S
                                                      EXHIBITS TO LOMBARDI DECLARATION
                                                                            CV 11 3376

# EXHIBIT 3

EXHIBIT 3 - PAGE 83



EXHIBIT 3 - PAGE 84

## CONTRACT FOR SUPPLIES

THIS CONTRACT, entered into this ........................ day of ........................ , 19....
by THE UNITED STATES OF AMERICA, hereinafter called the Government, represented by the Contracting Officer executing this contract, and

NORTH AMERICAN AVIATION, INC.

a corporation organized and existing under the laws of the State of ___Delaware___

~~a partnership~~
~~XXXIXXXXI~~

~~an individual trading as~~
~~XXIXIXX XXIXXXXIXX~~ ........................ , in the State of ___California___,
hereinafter called the Contractor, witnesseth that the parties hereto do mutually agree as follows:

ARTICLE 1. **Definitions and Miscellaneous Provisions**—(a) The term "Secretary of War" as used herein shall include the Under Secretary of War, and the term "his duly authorized representative" shall mean any person or board authorized to act for him other than the Contracting Officer.

(b) Except for the original signing of this contract, and except as otherwise stated herein, the term "Contracting Officer" as used herein shall include his duly appointed successor or his authorized representative.

(c) Unless otherwise expressly provided herein, all the supplies to be furnished hereunder shall be manufactured and supplied in strict accordance with the specifications, schedules and drawings respectively applicable thereto, as stated herein. Unless otherwise provided herein, all specifications, schedules and drawings referred to herein or in any exhibit or appendix attached hereto are hereby made a part hereof.

(d) This contract was negotiated under the authority of the First War Powers Act, 1941, and Executive Order No. 9001, December 27, 1941.

ARTICLE 2. **Changes.**—Where the supplies to be furnished are to be specially manufactured in accordance with drawings and specifications, the Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings or specifications. Changes as to shipment and packing of all supplies may also be made as above provided. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. Any claim for adjustment under this Article must be asserted within 90 days from the date the change is ordered, provided, however, that the Contracting Officer, if he determines that the facts justify such action, may receive, consider and adjust any such claim asserted at any time prior to the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in Article 12 hereof. But nothing provided in this Article shall excuse the Contractor from proceeding with the contract as changed.

ARTICLE 3. **Extras.**—Except as otherwise herein provided, no charge for extras will be allowed unless the same have been ordered in writing by the Contracting Officer and the price stated in such order.

ARTICLE 4. **Inspection.**—(a) All material and workmanship shall be subject to inspection and test at all times and places and, when practicable, during manufacture. In case any articles are found to be defective in material or workmanship, or otherwise not in conformity with the specification requirements, the Government shall have the right to reject such articles, or require their correction. Rejected articles, and/or articles requiring correction shall be removed by and at the expense of the Contractor promptly after notice so to do. If the Contractor fails to remove promptly such articles and to proceed promptly with the replacement and/or correction thereof, the Government may, by contract or otherwise, replace and/or correct such articles and charge to the Contractor the excess cost occasioned the Government thereby, or the Government may terminate the right of the Contractor to proceed as and subject to the conditions provided in Article 5 of this contract, the Contractor and surety being liable for any damage to the same extent as provided in said Article 5 for terminations thereunder.

(1-a) —2—

EXHIBIT 3 - PAGE 85

(b) If the inspection ... [illegible] ... the contractor or a subcontractor ... [illegible] ... without additional charge all ... [illegible] ... in the performance of any duty of inspection made by the Government ... [illegible]. In such a manner as not to ... [illegible] ... method in the specifications. The Government reserves the right to charge to the Contractor the additional cost of inspection and inspection articles are not ready at the time inspection is required by the Contractor.

(c) Final inspection and acceptance of materials and finished article will be made after delivery, unless otherwise stated. If final inspection is made at a point other than the premises of the Contractor or a subcontractor, it shall be at the expense of the Government except for the value of samples used in case of rejection. Final inspection shall be conclusive except as regards latent defects, fraud, or such gross mistakes as amount to fraud. Final inspection and acceptance or rejection of the materials or supplies shall be made as promptly as practicable, but failure to inspect and accept or reject supplies or any act ... [illegible] ... the Contractor ... In the event ... [illegible] ... the use of materials or supplies not conforming to the specifications, payment therefor shall be made at a proper reduction in price.

ARTICLE 5. Delays—Damages.—(a) If the Contractor refuses or fails to make deliveries of the supplies within the time specified in Article 16, or any extension thereof, the Government, subject to the provisions of paragraph (b) below, may, by a notice in writing from the Contracting Officer to the Contractor of its intention to terminate under this Article, terminate the right of the Contractor to proceed with delivery of the supplies or such parts thereof as to which there has been delay. In such event, the Government may (1) require the Contractor to deliver to the Government such completed supplies, partially completed supplies and materials, parts, plans, drawings, information, and contract rights of the Contractor, (hereinafter called manufacturing material), as the Contractor has produced or acquired for the performance of such portion of this contract as to which the right to proceed with delivery is terminated, and accomplish or secure the completion or manufacture of supplies therewith; and, in addition thereto or in lieu thereof (2) purchase in the open market or secure by contract or otherwise, the manufacture and delivery of supplies similar to those called for by this contract in an amount which together with the supplies, if any, completed under (1) above shall not exceed the amount of supplies the right to proceed with delivery of which is terminated. If delivery is made pursuant to clause (1) of the preceding sentence the Government shall pay to the Contractor, less any previous payments, the following: (a) For each unit of the completed supplies accepted by the Government the unit contract price, and (b) for all partially completed supplies and manufacturing material delivered, the unit contract price for each unit of supplies completed or manufactured therewith, less the cost to the Government of completion or manufacture, but if that cost exceeds the unit contract price, the Contractor and his sureties shall be liable for such excess. If the cost to the Government of supplies procured in accordance with clause (2) above exceeds the corresponding unit price or prices under this contract, the Contractor and his sureties shall be liable for such excess.

(b) The Government shall not have a right of termination under this Article if the delay of the Contractor in making deliveries is an excusable delay, as hereinafter defined. The Contracting Officer shall ascertain the cause of the delay, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject to appeal within thirty days by the Contractor to the Secretary of War or his duly authorized representative, whose decision on such appeal as to the cause of delay shall be final and conclusive on the parties hereto. The term "excusable delay" as used in this paragraph means any delay in making deliveries which results without fault or negligence on the part of the Contractor and which is due to causes beyond his control including, without being limited to, acts of God or of the public enemy, any preference, priority or allocation order issued by the Government or any other act of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather; and, unless the Contracting Officer shall determine that the materials or supplies to be furnished under a subcontract are procurable in the open market, any delay of a subcontractor which results without fault or negligence on the part of the Contractor, and which is due to causes beyond the control of the Contractor, including without being limited to the types of causes above enumerated.

(c) Delay in delivery resulting from the inability of the Contractor, acting with due diligence, to procure materials or parts required for the manufacture of the articles called for hereunder shall be considered an excusable delay within the meaning of this Article.

EXHIBIT 3 - PAGE 86

Case3:11-cv-03370-JSW Document54-5 Filed08/19/11 Page6 of 11

[illegible] from the [illegible] of a [illegible] number of skilled [illegible] [illegible] being [illegible] for service in the Armed [illegible] [illegible] the meaning of this Article.

except as provided in Article 12 hereof [illegible]

ARTICLE 6. Responsibility for Supplies Tendered.—The Contractor shall be responsible for the articles or materials covered by this contract until they are delivered at the designated point, but the Contractor shall bear all risk on rejected articles or materials after notice of rejection. Where final inspection is at point of origin but delivery by Contractor is at some other point, the Contractor's responsibility shall continue until delivery is accomplished.

ARTICLE 7. Increase or Decrease.—A variation in the quantities herein called for will be accepted as a compliance with this contract (and payments shall be adjusted accordingly), but only (i) when caused by conditions of loading, shipping, packing, or allowances in manufacturing processes, and (ii) if and to the extent specified in Article 15 hereof.

ARTICLE 8. Payments.—The Contractor shall be paid, upon the submission of properly certified invoices or vouchers, the prices stipulated herein for articles delivered and accepted or services rendered, less deductions, if any, as herein provided. Unless otherwise specified, payments will be made on partial deliveries accepted by the Government when the amount due on such deliveries so warrants; or, when requested by the Contractor, payments for accepted partial deliveries shall be made whenever such payments would equal or exceed either $1,000 or 50 per cent of the total amount of the contract.

ARTICLE 9. Additional Security.—Should any surety upon any bond for the performance of this contract become unacceptable to the Government, or if any such surety shall fail to furnish reports as to his financial condition from time to time as requested by the Government, the Contractor must promptly furnish such additional security as may be required from time to time to protect the interests of the Government and of persons supplying labor or materials in the prosecution of the work contemplated by the contract.

ARTICLE 10. Officials Not to Benefit.—No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

ARTICLE 11. Covenant against Contingent Fees.—The Contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business.

ARTICLE 12. Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact which may arise under this contract, and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail a copy thereof to the Contractor at his address shown herein. Within 30 days from said mailing the Contractor may appeal in writing to the Secretary of War, whose written decision or that of his designated [illegible] or representatives thereon shall be final and conclusive upon the parties hereto. The Secretary of War may, in his discretion, designate an individual, or individuals, other than the Contracting Officer, or a board as his authorized representative to determine appeals under this Article. The Contractor shall be afforded an opportunity to be heard and offer evidence in support of his appeal. The president of the board, from time to time, may divide the board into divisions of one or more members and assign members thereto. A majority of the members of the board or of a division thereof shall constitute a quorum for the transaction of the business of the board or of a division, respectively, and the decision of a majority of the members of the board or of a division shall be deemed to be the decision of the board or of a division.

(4-5) — 6 — [illegible] 11-[illegible]

as the case may be. If a majority of the members of a division are unable to agree on a decision or if within 30 days after a decision by a division the board or the president thereof directs that the decision of the division be reviewed by the board, the decision will be so reviewed, otherwise the decision of a majority of the members of a division shall become the decision of the board. If a majority of the members of the board is unable to agree upon a decision, the president will promptly submit the appeal to the Under Secretary of War for his decision upon the record. A vacancy in the board or in any division thereof shall not impair the powers nor affect the duties of the board or division nor of the remaining members of the board or division, respectively. Any member of the board, or any examiner designated by the president of the board for that purpose, may hold hearings, examine witnesses, receive evidence and report the evidence to the board or to the appropriate division, if the case is pending before a division. Pending decision of a dispute hereunder the Contractor shall diligently proceed with the performance of this contract. Any sum or sums allowed to the Contractor under the provisions of this Article shall be paid by the United States as part of the cost of the articles or work herein contracted for and shall be deemed to be within the contemplation of this contract.

ARTICLE 15. **Domestic Articles.**—Unless the Secretary of War shall determine it to be inconsistent with the public interest, or the cost to be unreasonable, only such unmanufactured articles, materials, and supplies as have been mined or produced in the United States, and only such manufactured articles, materials, and supplies as have been manufactured in the United States substantially all from articles, materials, or supplies mined, produced, or manufactured, as the case may be, in the United States shall be delivered pursuant to this contract, except as noted in the specifications and/or other papers hereto attached. The provisions of this article shall not apply with respect to articles, materials, or supplies for use outside the United States, or if articles, materials, or supplies of the class or kind to be used, or the articles, materials, or supplies from which they are manufactured are not mined, produced, or manufactured, as the case may be, in the United States in sufficient and reasonably available commercial quantities and of a satisfactory quality. (This Article is applicable only to the extent that this contract relates to articles of food or clothing not specifically exempted from the above-mentioned restrictions.)

EXHIBIT 3 - PAGE 88



EXHIBIT 3 - PAGE 89

Article 19 - Position Supply and Spare Parts.

(a) The Contractor shall furnish and deliver to the Government the following articles to the Government for use in the manner set forth below:

Item 1 —
Two hundred (200) type reconnaissance (RF-84) aircraft, RF type and model RF-84, fully in certain accordance with Appendix 2 hereto, for use in the manner set forth herein, at a unit price of $115,000.00; total ........................ $26,152,500.00

Item 2 —
Spare parts for the Aircraft called for under Item 1 above. The kinds and quantities of such Spare Parts and the prices therefor shall be finally determined in accordance with the provisions of Appendix 1 (i.e. ... ) hereto as referred to in this contract. The total amount to be paid for such Spare Parts shall not exceed ........................ $ 7,123,125.00

Item 3 —
The Contractor shall be responsible for the design and development of special hand tools and special ground equipment necessary for the repair and maintenance of the aircraft called for by this contract, and shall furnish such items of special hand tools and ground equipment as may be selected by the Government, all as provided in Appendix 1 hereto. The total amount to be paid for such tools and ground equipment shall not exceed ........................ $ 142,462.50

(b) Attached hereto and by reference made a part hereof as Appendix 1 to this contract is an Appendix entitled "Army Air Forces Spare (Maintenance) Parts Provisioning." The Government and the Contractor shall in all respects comply with the provisions of said Appendix. In any case where items of Article 19 (a) of this contract call for spare parts in accordance with the provisions of said Appendix 1 hereto, the lists, quantities and final amount for each such item shall be separately stated and approved.

(c) The Contractor shall serially number the Aircraft called for hereunder with serial numbers to be furnished to the Contractor in writing by the Contracting Officer at a later date.

(d) The Contractor shall accomplish and furnish an Aircraft Acceptance Report with each Aircraft delivered hereunder in accordance with Army Air Forces Specification No. 14035 dated 16 July 1942 and Amendment No. 1 thereto dated 27 July 1942.

- 7 -

W 33-038 ac-1909

EXHIBIT 3 - PAGE 90



EXHIBIT 3 - PAGE 91

From: Contr. Admin., Dallas Texas ALO:sml 4/9/45
Info: Cowdery(3), Roland(2), Bomb M/D #2, Lynch(3), Clements(4), Cavanaugh Trainer File.

C O P Y

NAVAL SPEEDLETTER

1PC-1 (9127) baw
SNJ-6 (AT-6F)

31 March 1945.

BUREAU OF AERNAUTICS MATERIAL OFFICER
C/O ARMY AIR FORCES
MIDWESTERN PROCUREMENT DISTRICT OFFICE
P. O. BOX 117 MUNICIPAL AIRPORT
WICHITA KANSAS

SUBJECT: ADDITIONAL PROCUREMENT OF SNJ'S AT NORTH AMERICAN
DALLAS ON CONTRACT AC-1909.

1. RE UR LTR., EN11-O(1)L4-3(22) DATED 24 MARCH 1945.

2. U. S. NAVY HAS BEEN ALLOCATED 580 SNJ-6 AIRPLANES (ARMY MODEL
AT-6F) FROM THE AAF. DELIVERIES TO BEGIN IN APRIL AT THE RATE OF
65 PER MONTH THROUGH NOVEMBER AND 60 IN DECEMBER. THE FIRST FIVE
(5) ARE TO COMPLETE NA ER 20000-229 FOR 525 AIRPLANES AND THE RE-
MAINING 575 ARE TO BE PROCURED ON NAER 3000-209.

3. ATSC AND AAFPR AT NAA DALAAS NOW FULLY COGNIZANT OF EXPECTED
DELIVERIES FOR NAVY.

4. NO ADDITIONAL TIME IS NECESSARY ON ENGINEERING DRAWINGS AS
NAVY MODEL IDENTICAL WITH AAF AND AGREEMENT BETWEEN ATSC AND BUAER
IS THAT ALL DESIGN DATA FURNISHED TO THE NAVY BY THE CONTRACTOR WILL
BE IDENTICAL WITH THAT FURNISHED AAF ON ARMY AIRCRAFT.

                              C. J. EMKINS,
                              LT. COMDR., (SC), USN
                              BY DIRECTION OF BA GR-CD

                  BUREAU OF AERNAUTICS GENERAL REPRESENTATIVE
                  CENTRAL DISTRICT, WRIGHT FIELD, DAYTON, OHIO

ECR-A
1070

                              C O P Y

EXHIBIT 3 - PAGE 92