1

2

3   Ronald A. McIntire, Bar No. 127407
    RMcIntire@perkinscoie.com
4   Bo W. Kim, Bar No. 217394
    BKim@perkinscoie.com
5   **PERKINS COIE LLP**
    1888 Century Park East, Suite 1700
6   Los Angeles, CA  90067-1721
    Telephone: 310.788.9900
7   Facsimile: 310.843.1284

8   Attorneys for Defendant
    THE BOEING COMPANY
9

10

11                  **UNITED STATES DISTRICT COURT**

12          **FOR NORTHERN DISTRICT OF CALIFORNIA**

13              **BEFORE THE JUDICIAL PANEL ON**
                **MULTIDISTRICT LITIGATION**
14

15  | IN RE: ASBESTOS PRODUCTS | MDL Case No. 875 |
    | LIABILITY LITIGATION | |
16

17  | PATTI DONLON, Individually and as | N. D. Cal. Case No. CV 11 3376 |
    | Successor-in-Interest to the Estate of | |
18  | PATRICK THEISEN DONLON, | **DEFENDANT THE BOEING COMPANY'S** |
    | Decedent, SEAN DONLON; and DOES | **OPPOSITION TO PLAINTIFFS' MOTION** |
19  | ONE through TEN, inclusive, | **TO VACATE CONDITIONAL TRANSFER** |
    | | **ORDER** |
20  | Plaintiffs, | |
    | | **ATTACHMENT 2, PART 2 OF 4 –** |
21  | v. | **DECLARATION OF MICHAEL** |
    | | **LOMBARDI** |
22  | AC AND S, INC., et al., | |
23  | Defendants. | |
24  | | Panel Hearing Date:        September 27, 2011 |
25

26

27

28

Ronald A. McIntire, Bar No. 127407
RMcIntire@perkinscoie.com
Bo W. Kim, Bar No. 217394
BKim@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant
THE BOEING COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATTI DONLON, Individually and as Successor-in-Interest to the Estate of PATRICK THEISEN DONLON, Decedent, SEAN DONLON; and DOES ONE through TEN, inclusive,<br><br>Plaintiffs,<br><br>v.<br><br>AC AND S, INC., et al.,<br><br>Defendants. | Case No. CV 11 3376<br><br>**DEFENDANT THE BOEING COMPANY'S EXHIBITS TO DECLARATION OF MICHAEL LOMBARDI IN SUPPORT OF DEFENDANT THE BOEING COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND; EXHIBIT 4**<br><br>Date: October 7, 2011<br>Time: 9:00 a.m.<br>Judge: Honorable Jeffrey S. White |

DEFENDANT THE BOEING COMPANY'S
EXHIBITS TO LOMBARDI DECLARATION
CV 11 3376

# EXHIBIT 4

EXHIBIT 4 - PAGE 93



SNJ-2 AIRPLANE— LEFT SIDE

Manufactured For The

UNITED STATES NAVY

By

NORTH AMERICAN AVIATION, INC.

Inglewood, California

JULY 24, 1940

NOT LIABLE FOR ACCURACY
AND EFFECTIVENESS OF
ORIGINAL TEXT.

Revised 4-7-41

EXHIBIT 4 - PAGE 94

Case MDL No. 375 JSW Document 7775-4-6 Filed 08/80/11 Page 5 of 78

NORTH AMERICAN AVIATION, INC.
Report No. NA-866

## - INTRODUCTION -

The purpose of this Handbook of Erection and Maintenance
Instructions is to provide operating personnel with information and
instructions regarding the erection, assembly, operation, mainten-
ance and inspection of the Model SNJ-2 Airplane.

For information on operating and flying the SNJ-2 Airplane
from a pilot's point of view, refer to the Pilot's Handbook which is
also supplied with the airplane. All current publications issued by
the Bureau of Aeronautics that contain pertinent information should
be considered a source of information, although they are not refer-
red to in this Handbook.

The SNJ-2 Airplane, manufactured by North American Aviation,
Inc., is of the two place, low wing, land monoplane type, a develop-
ment of the U. S. Army Air Corps Model BC-1 Airplane, for use by the
Naval Reserves as a scout and training airplane. Materials, proces-
ses, and design specifications are in accordance with the require-
ments of the U. S. Army Air Corps, as incorporated in the BC-1 Air-
plane. The airplane is powered with a single Pratt and Whitney,
Model R-1340-36, nine-cylinder, radial, air-cooled engine.

EXHIBIT 4 - PAGE 95

NORTH AMERICAN AVIATION, INC.
Report No. NA-866

## SECTION IV

### SERVICE INSTRUCTIONS

1. <u>Power Plant Installation</u>

a. <u>Engine Data.</u> - The airplane is powered with a Pratt and Whitney Model R-1340-36, nine-cylinder, radial, air-cooled engine. The blower ratio is 10:1 and the compression ratio is 6:1. For engine characteristics, see power curve. The engine rating at sea level take-off is 600 B.H.P. at 2250 R.P.M. with 36 in.Hg. manifold pressure. The normal rating at 6000 feet is 550 B.H.P. at 2200 R.P.M. with 31.8 in.Hg. manifold pressure. The engine is to be operated with gasoline of 92 octane number.

b. <u>General Installation.</u> - The entire power plant, including all accessory units forward of the firewall, may be installed on the airplane in one complete unit, or the engine may be installed on the engine mount after the mount, oil tank, oil cooler, fixed engine ring cowl and other power plant units are installed on the airplane. The sequence of operations required for both methods are outlined below. Engine mount attachment fittings, line connecting blocks, control rods, etc., are conveniently located and easily connected. Engine lifting eyes are mounted between engine cylinders No. 1 and No. 2, and No. 1 and No. 9. Hoisting lugs are located on the engine mount at the two upper points of attachment to the fuselage.
CAUTION: These engine mount lugs, at rear of engine mount, are for hoisting power plant only; DO NOT use to hoist airplane. Refer to page 153 for further hoisting instructions.

c. <u>Power Plant Complete.</u> - The sequence of operations necessary to install the complete assembled power plant, including all units forward of the firewall, is as follows; (refer to pages 60, and 61 for letters designating points of attachment).

    (1) Due to the snug fit, it is recommended that the four engine mount fuselage attachment fittings, and attachment bolts, AN8-13, be cleaned and coated with graphite grease, prior to installation.

    (2) When proper lifting sling arrangements and clearances are obtained, (see page 13), take up slack in chain hoist and raise power plant into position, engaging the two upper points of attachment (C) to the fuselage prior to the two lower points of attachment (L).

    (3) Secure each engine mount attachment fitting to its respective fuselage attachment bolt with an AN960-816 washer, AN310-8 nut, and AN380-3-3 cotter.

    (4) Lower hoisting chains and remove sling.

**EXHIBIT 4 - PAGE 96**



REFER TO N.A. DWG. NO. 65-40061

POWER PLANT INSTALLATION - LEFT SIDE

EXHIBIT 4 - PAGE 97

(Carburetor Air Intake System, cont.)

    b. Carburetor Air Control. - Cold air from the air inlet scoop, - or hot air from the exhaust manifold shroud, may be taken into the carburetor through a valve in the air mixing chamber below the carburetor. The control, incorporating notches for vernier adjustment, is mounted on the forward end of the control shelf at the left side of the front cockpit. The control handle is pulled back to obtain hot air and pushed forward to admit cold air. Intermediate positions of the control will position the valves to allow varying mixtures of hot and cold air to enter the mixing chamber. (See air intake diagram, page 85.)

    c. Carburetor Air Temperature Indicator. - A carburetor air temperature indicator, graduated in degrees (C), is mounted on the main instrument panel of the front cockpit. The air temperature indicator is actuated by a thermometer inserted in the duct assembly between the mixing chamber and carburetor.

10. Landing Gear

    a. Description:

    (1) General: - The landing gear of the SNJ-2 Airplane completely retracts inboard into the wing center section, just forward of the front spar. The gear is of the single leg, half-fork type, and is supported on the front spar of the center section. Retraction is accomplished by means of an engine driven hydraulic pump or a hand operated hydraulic pump, located in the front cockpit. The operation in either case is controlled essentially by a selector valve lever located in each cockpit. Power control levers are used in addition to the selector valve lever, when operating with the engine driven pump. Positive mechanical latches and lock pins are provided for the retracted and extended positions, respectively. Both locking mechanisms are interconnected with the selector valve control levers by means of rod assemblies and bellcranks. A mechanical position indicator is provided at the left side of the front cockpit to show the position of each strut at all times. A warning horn is also provided and will operate when the landing gear is not locked in the extended position and the R.P.M. of the engine is below 1000. Detailed instructions for adjusting the warning device will be found on page 140, of this Handbook. An instruction plate for operating the hydraulic system is located adjacent to the mechanical position indicator on the control shelf at the left side of the front cockpit. For landing gear controls and additional operating instructions, refer to page 133 of this Handbook.

    (2) Shock Strut: - A Bendix pneudraulic shock strut, which is of the combined hydraulic and pneumatic type, constitutes the main unit of each landing gear. The maximum amount of piston travel is

EXHIBIT 4 - PAGE 98



EXHIBIT 4 - PAGE 99

Case3:MDL-cNo3875-JBW-Document 777654-F Filed 08/30/15/11 Page 10 of 78

(Landing Gear Shock Strut, cont.)

8 inches. Torsional resistance is provided by a torque arm arrange-
ment which connects the piston and cylinder of each unit. Each strut
assembly is pivoted on a polished steel pin which is pressed into a
support casting bolted to the wing center section front spar and end
plate.

(3) Wheels and Tires: - The landing gear wheel assembly,
(Air Corps Spec. 25258, 27-inch, Type II), is of the one-piece cast
aluminum alloy drop center type. The wheel is machined to permit in-
stallation of the steel brake drum liner, bearing cups and tire. The
wheel access fairing is of stamped aluminum alloy, easily removed to
inflate the tire and inspect the Timken roller bearings and internal
bracing ribs. The landing gear tires (Air Corps Spec. 26545) are 27
inches in diameter and of six-ply, smooth contour. Small raised in-
flation seams running around the outside circumference on each side
of the casing are provided to aid in maintaining proper inflation.
The tire's inner tube (Air Corps Spec. 26546) is provided with a flex-
ible rubber valve stem.

(4) Operating Cylinders: - A landing gear hydraulic operat-
ing cylinder is mounted at each end of the outer wing panel, forward
of the front spar. These cylinders are the points of energy from
which the landing gear is operated. The cylinder pistons are attach-
ed to the oleo strut attachment fitting at the forward inboard side,
just above the pivot pin. When operating the landing gear, fluid un-
der pressure enters the operating cylinders at the end selected by
the selector valve, thereby causing the strut to swing up or down, as
required, about its pivot point.

(5) Retracted Position Latches: - A spring loaded steel
latch, triangular in shape, is located at each side of the fuselage,
immediately outboard of each lower engine mount firewall attachment
fitting. The latches are designed and located so that when the land-
ing gear reaches the fully retracted position they become engaged
with a roller extending from the inboard side of each wheel axle.
The retracted position latches may be released from either cockpit
by means of the landing gear control handles. The landing gear,
when released, will fall to the "down" position by its own weight, or
may be forced down hydraulically.

(6) Extended Postion Lock Mechanism: - As the landing gear
swings downward toward the fully extended position, a large boss at
the top of shock strut moves into a steel fitting bolted to the land-
ing gear support casting. The movement at the boss into the slot
presses a spring loaded beveled lock pin, located at the mouth of the
slot, back into the landing gear support casting. With landing gear
down, the lock pin snaps into place behind boss, securely locking
landing gear in down position. Should the lock pin spring fail, the

EXHIBIT 4 - PAGE 100

NORTH AMERICAN AVIATION, INC.                                    Page 89
Report No. NA-866

(Landing Gear Extended Position Lock Mechanism, cont.)

lock pin may be manually forced into place by pushing control handle
down to extreme end of sector assembly along area marked, "Emergency
Push Down to Engage Pin", in front cockpit. The extended position
locks may be released from the front cockpit only by means of the
landing gear control handle. To move the control handle in the front
cockpit from "DOWN" position to "UP" position, pull out on the con-
trol handle, a precaution incorporated to prevent unintentional re-
traction. WARNING: DO NOT push handle into emergency position until
wheels are down.

        b.  Service and Maintenance. - Instructions for servicing the
shock strut are engraved on a metal plate attached to the strut.
These instructions, with additional information, are as follows: -

        (1)  Refilling Shock Strut: - The following servicing should
be accomplished after rolling the airplane forward, to a position on
level ground, out of the wind and away from the slip stream of the
propellers. Adhere to the following procedure: -

            (a)  To refill either shock strut, remove the access
cover located on the upper surface of wing center section, directly
above the strut.

            (b)  Remove hex cap in air valve at top of strut, slow-
ly release all air from strut by depressing stem of valve core, then
back-off the filler plug, which contains the air valve, one turn un-
til all the fizzing of air and fluid stops and the strut is fully com-
pressed.

            (c)  Remove the filler plug and check the fluid level.
The level of the fluid should be flush with the filler plug hole when
the strut is fully compressed. Fill if required with a mixture of
castor oil and alcohol (Lockheed No. 5 or equivalent hydraulic fluid)
in accordance with the current issue of Bureau of Aeronautics' T. O.
No. 27-39. To clean cylinders, flush with denatured alcohol.

            (d)  Replace filler plug loosely and cause the strut to
extend and retract several times, to eliminate air traps in the strut.
Remove the plug and again check the fluid level, repeating same pro-
cedure each time until proper fluid level is obtained. Then seal
plug tightly with a wrench. NOTE: This filler plug is provided with
an annular ring on the under side of the hex. A soft copper gasket
is provided between this ring and the plug seat on strut. These
seats must be free from dirt and marks and the plug must be seated
snugly to prevent air leaks at this point. If needed, a new gasket
should be used each time the plug is replaced.

        (2)  Inflating Shock Strut: - When inflating the shock strut
as in the following procedure, the airplane should be rocked occasion-
ally to overcome packing friction, thus preventing over-inflation.
Do NOT over-inflate, as hard taxiing and bounce at contact will re-
sult. This is also important because of possible damage to the valve

EXHIBIT 4 - PAGE 101

Case MDL No. 875 Document 7776-6 Filed 08/30/11 Page 12 of 78
Case MDL No. 875 Document 64-6 Filed 08/19/11 Page 12 of 78

(Inflating Shock Strut, cont.)

core as high pressure is released. The actual air pressure required to inflate the strut depends upon the axial load on the strut due to the weight of the airplane and also the friction due to packing, and any bending or torsional loads on the strut. Under normal loading conditions, approximately 200 lbs./sq.in. will be required. Due to the small quantity of air in the strut and the relative high pressure, it is inadvisable to attempt to measure the pressure with a gauge. After the strut has been correctly adjusted, readjustments should not be made for minor changes; a variation of 1/4 inch is permissible. To inflate strut adhere to the following procedure: -

(a) Attach high pressure air hose to air valve and inflate strut until it lifts the weight of the fully loaded airplane to a static position of 1-1/2 inches, the correct expansion under full load.

(b) Replace hex cap, which is a secondary seal, and screw down tightly, but not so tightly that the tin seat in the cap is forced inward, thereby depressing the valve core stem.

(c) Test valve core and seat around filler plug by putting a little soapy water around these joints to show the presence of air bubbles. Usually, leaks around other parts will be evidenced by seepage of fluid.

(3) Tire Maintenance: - Access to valve is gained by removing dzus fastened outside wheel fairing. The landing gear tire pressure should be such that the deflection marks on the side of the tire just contact the ground line when the airplane is in the three-point position. Under normal loading conditions, this pressure will be approximately 30 lbs./sq.in. Tires should be checked and inflated with airplane on hard level ground.

c. Replacement.

(1) Shock Strut: - Each landing gear unit is interchangeable. The sequence necessary to remove a unit without removing the shock strut attachment fitting at the pivot pin is as follows: -

(a) Jack airplane approximately 12 inches by means of outer wing jacking points.
(b) Set landing gear controls and connecting linkage for the down position of the landing gear.
(c) Completely deflate strut by depressing air valve at top of strut.
(d) Remove filler plug and air valve assembly at top of strut.
(e) Disconnect brake line at wheel and drain line. Plug end of line.

EXHIBIT 4 - PAGE 102

Case: MDL No. 875 Document 73764-6 Filed 08/30/11 Page 13 of 77
Case 14-cv-08276-JSW Document 54-6 Filed 08/29/11 Page 13 of 38

(Shock Strut Replacement, cont.)

     (f)   Disconnect flexible hydraulic line at con-
          nection to non-flexible line located in the
          upper portion of wing center section leading
          edge. Plug end of line.

     (g)   Detach flexible hydraulic line from clip se-
          curing it to forward side of shock strut at-
          tachment fitting.

     (h)   Disconnect end of landing gear fairing clevis
          rod from strut.

     (i)   Remove the four nuts from the bolts securing
          the strut to its attachment fitting at strut
          pivot pin.

     (j)   Lower strut through its attachment fitting.

          To reinstall strut, reverse the sequence of opera-
tions outlined above, and service brake system as specified on page
113, of this Handbook. When installing brake line, make certain strut
is fully extended. The additional cable length is taken up between
the last point of attachment, which is on the forward side of strut
attachment fitting, and its connecting point to the rigid brake line.
When installing position indicator cable, make certain the clevis end
of the cable at indicator arms is adjusted to obtain the correct in-
dication.

     (2)   Shock Strut Attachment Fitting: - The sequence of oper-
ations necessary to remove the shock strut attachment fitting is as
follows: -

     (a)   Remove bolts and screws as required to remove the
          cantilever leading edge assembly from wing center
          section.

     (b)   Disconnect mechanical landing gear position indi-
          cator cable from the lower aft end of the shock
          strut attachment fitting.

     (c)   Remove stud bolt securing the landing gear operat-
          ing cylinder piston to the strut attachment fit-
          ting and retract piston into cylinder.

     (d)   Remove the locking bolt and pivot pin nut, and
          slip the strut attachment fitting from the pin.

          To reinstall the strut attachment fitting, reverse the
procedure outlined above. Make certain that the pivot pin is prop-
erly shimmed to provide ample clearance between the pivot pin support
casting and the strut attachment fitting, so that lug at top of strut
will travel in and out of lock fitting without binding. When instal-
ling retainer nut on pivot pin, make certain the nut is adjusted to
prevent fore and aft travel of the strut on the pivot pin without
binding.

EXHIBIT 4 - PAGE 103

Case: MDL No. 375 JSW Document 7776-6 Filed 08/30/11 Page 14 of 78
Case: MDL No. 375 JSW Document 64-6 Filed 08/19/11 Page 13 of 78

## NOMENCLATURE - LANDING GEAR CONTROL DIAGRAM

(Refer to Page 93, and N.A. Dwgs. 65-33001 and 65-52506)

| | | |
|---|---|---|
| 1. | Link - Position Indicator Lock Pin | 36-33521 |
| 2. | Bolt - Aircraft, 1/4 - 28 | AN4-12 |
| 3. | Link - Control Rod Support | 36-33517 |
| 4. | Bolt - Clevis, 1/4 - 28 | AN24-16 |
| 5. | Pin - Flat Head, 1/8 | AN392-13 |
| 6. | Arm - Lock Pin Push Rod L.H. | 55-33548 |
| 7. | Arm - Lock Pin Push Rod R.H. | 55-33563 & -1 |
| 8. | Bolt - Clevis, 1/4 - 28 | AN24-14 |
| 9. | Bushing - Spacer | B1009-R4-12 |
| 10. | Rod - Lock Pin Push | 36-33541 |
| 11. | Spring - Lock Pin | 36-33520 |
| 12. | Support - Lock Pin L.H. | 55-33513 |
| 13. | Support - Lock Pin R.H. | 55-33513-1 |
| 14. | Pin - Lock | 55-33525 |
| 15. | Bolt - Clevis, 1/4 - 28 | AN24-36 |
| 16. | Nut - Aircraft - Shear | AN320-4 |
| 17. | Fitting - Lock & Hoist R.H. | 54-33534-3 |
| 18. | Strut - R.H. Pneudraulic (Bendix) | *54381 |
| | | **54251 |
| 19. | Fitting - Retracting Oleo Attaching R.H. | 54-33118-1 |
| 20. | Bolt - Oleo Fairing | 36-33309 |
| 21. | Rod - Fairing Door Actuating | 54-33578 |
| 22. | Fitting - Fairing Attaching | 36-33310 |
| 23. | Fairing Assembly - R.H. | 54-33305-1 |
| 24. | Link Assembly - Torsion (Bendix) | 54256 |
| 25. | Bolt - Aircraft, 3/8 - 24 | AN6-25 |
| 26. | Lug - Towing & Jacking (Bendix) 54384 L.H. & 54383 R.H. | |
| 27. | Support - Retracted Position Retainer R.H. | 54-33509-1 |
| 28. | Bolt - Aircraft, 5/16-24 | AN5-16 |
| 29. | Shaft - Retracted Position Lock Torque | 36-33558 |
| 30. | Pulley - Control | AN210-1A |
| 31. | Latch - Locking Mechanism Cam L.H. | 55-33515 |
| 32. | Latch - Locking Mechanism Cam R.H. | 55-33515-1 |
| 33. | Link - Locking Mechanism | 55-33540 |
| 34. | Arm - Locking Mechanism | 36-33514 |
| 35. | Spring - Locking Mechanism Latch | 54-33553 |
| 36. | Support - Retracted Position Retainer L.H. | 54-33509 |
| 37. | Bolt - Aircraft, 1/4 - 28 | AN4-21A |
| 38. | Fairing Assembly - L.H. | 54-33305 |
| 39. | Strut - L.H. Pneudraulic (Bendix) | *54380 |
| | | **54250 |
| 40. | Bearing - Operating Strut | 54-33583 |
| 41. | Pin - Pivot | 54-33112 |
| 42. | Fitting - Retracting Oleo Attaching L.H. | 54-33118 |

* - Airplanes, Serial Nos. 2008 to 2043, incl.
** - Airplanes, Serial Nos. 2548 to 2572, incl.

Revised 4-7-41

EXHIBIT 4 - PAGE 104

NORTH AMERICAN AVIATION, INC.
Report No. NA-866

## NOMENCLATURE - LANDING GEAR CONTROL DIAGRAM (cont.)

| | | |
|---|---|---|
| 43. | Fitting - Lock & Hoist L.H. | 54-33534-2 |
| 44. | Rod - Lock Pin Control L.H. | 36-33569-2 |
| 45. | Rod - Position Indicator Switch Actuating | 36-54028 |
| 46. | Bellcrank - Lock Pin Control Rod L.H. | 36-33549 |
| 47. | Fairlead - Cable | 55-13266 |
| 48. | Rod - Lock Pin Control L.H. | 54-33569 |
| 49. | Bellcrank - Locking Mechanism Operating | 55-33544 |
| 50. | Rod Assembly - "DOWN" Position Lock Control | 36-33569-11 |
| 51. | Bellcrank - Lock Control Rod | 36-33510 |
| 52. | Rod - Lock Pin Operating | 55-33516 |
| 53. | Rod - Selector Valve Control | 54-58092 |
| 54. | Link - Selector Valve Control | 55-33567 |
| 55. | Bellcrank - Selector Valve Control Rod | 54-58014-2 |
| 56. | Rod - Selector Valve Rear Control | 54-58083-2 |
| 57. | Handle - Selector Valve Rear Control | 55-33512 |
| 58. | Sector Assembly - Control | 55-33560 |
| 59. | Arm - Left Position Indicator Pointer | 55-33527 |
| 60. | Arm - Right Position Indicator Pointer | 55-33528 |
| 61. | Cable - Position Indicator L.H. | 55-33562-2 |
| 62. | Rod - "UP" Position Latch Control | 54-33539 |
| 63. | Cable - Position Indicator R.H. | 55-33562-3 |
| 64. | Rod - R.H. "UP" Position Lock Control Push | 54-33565 |
| 65. | Fairlead - Cable | 55-13265 |
| 66. | Fairlead - Cable | 36-13123 |
| 67. | Bellcrank - "UP" Position Lock Pin Control Rod R.H. | 55-33550 |
| 68. | Rod - "UP" Position Lock Pin Control R.H. | 36-33569-5 |
| 69. | Key - Control Handle | 55-33584 |
| 70. | Screw - Washer Head | AC525-10-24 |
| 71. | Grip - Front Cockpit Control | 55-33507 |
| 72. | Socket - Control Handle | 55-33505 |
| 73. | Spring - Control Handle | 36-33574 |
| 74. | Bolt - Clevis #10-32 | AN23-18 |
| 75. | Tube - Control Handle | 55-33570 |

Revised 4-7-41

EXHIBIT 4 - PAGE 105



LANDING GEAR HYDRAULIC
SYSTEM (REFERENCE)

DETAIL **A**
LOCKPIN ASSEMBLY
(R.H. OPPOSITE)

DETAIL **B**
FRONT HANDLE

C AND D INDICATOR SWITCH
BOXES (REFERENCE)

REVISED 4-7-41   LANDING GEAR CONTROL DIAGRAM

EXHIBIT 4 - PAGE 106



LANDING GEAR WARNING SYSTEM DIAGRAMS

AIRPLANES SERIAL NOS. 2548 TO 2572 INCL.

AIRPLANES SERIAL NOS. 2008 TO 2043 INCL.

NOTE: WIRE NUMBERS CORRESPOND WITH THOSE ON N.A. DWG. NO. 79-54002

NOTE: WIRE NUMBERS CORRESPOND WITH THOSE ON N.A. DWG. NO. 63-54002

REVISED 4-7-41

EXHIBIT 4 - PAGE 107

Case MDL No. 375 Document 7776-4 Filed 08/30/11 Page 18 of 77
Case M:19-cv-08376-JSW Document 64-6 Filed 08/19/11 Page 47 of 78

(Landing Gear Replacement, cont.)

     (3) **Inspection of Landing Gear Attachment:** - Inspect shims, located between landing gear support casting and strut attachment fitting, for wear and damage. Also inspect for the maximum allowable limit of .005 inch between landing gear pivot pin and strut attachment fitting.

     (4) **Packing:** - The packing used in the struts consists of two special moulded composition rings separated by aluminum alloy spacer rings. The design of the packing box requires rings with inside flexible sealing lips. Sealing on the lip side of the packing is accomplished automatically by the hydraulic pressure; hence, any leakage on this side of the packing cannot be remedied by tightening down on the packing nuts. However, leakage past the fixed side of the packing can usually be eliminated by tightening down on packing nut as the heel of the ring is thus forced firmly against the packing gland wall. Tightening of the gland should always be accomplished with the air pressure released. Packing rings may be replaced as follows: -

     (a) Remove the shock strut as instructed in foregoing paragraph c.(1).
         CAUTION: Be sure to deflate strut.
     (b) Disconnect torque arm at point of attachment to strut cylinder and detach brake line.
     (c) Unscrew packing nut, using special spanner wrench provided for this purpose.
     (d) Pull out piston tube assembly; if necessary, use a slight lumping action to break rings loose.
     (e) A visual inspection will indicate method of removing rings.
     (f) New rings should be installed in same manner as old ones. It is desirable to coat the rings with hydraulic fluid before installation.
     (g) After rings are installed and strut reassembled, tighten packing nut down firmly to provide seal at heel of ring on side opposite lip.
     (h) Safety packing nut.

     (5) Adjustment:

     (a) Landing Gear Lock Pins: - Adjustment of the landing gear down position lock pins is accomplished by disconnecting the operating linkage from end of rod at rear of each lock pin. Turn rod as required for proper adjustment of landing gear lock pin and then connect operating linkage. Access to the rod is gained by removing the bottom forward access door at each end of center section near the bolting angles. Correct adjustment of the lock pins is obtained when, in the locked position, both landing gear lock pins extend 1-1/4 inches from the face of its lock fitting.

EXHIBIT 4 - PAGE 108

NORTH AMERICAN AVIATION, INC.                                    Page 95
Report No. NA-866

(Landing Gear Adjustment, cont.)

                    (b)  Landing Gear Lock Pin Operating Linkage: - Landing
gear lock pin operating linkage must be carefullly adjusted in order
to obtain proper operation of the lock pins.  Adjustment of rods is
accomplished by detaching rod ends from corresponding bellcranks,
loosening lock nuts and rotating rod ends until desired adjustment is
obtained.  After adjustments have been made, ascertain that bellcrank
rod end at the left lock pin assembly does not contact the edge of
the holes in the spar when the selector valve control handle in the
cockpit is set in the extreme downward "EMERGENCY" position.  Also
make certain that this same rod does not contact the longest operat-
ing rod when the selector valve control handle is set for the "UP"
position.

11.  Tail Wheel

        a.  General Description. - The tail wheel assembly consists of
an aluminum alloy support casting, attached at two points to the rear
bulkhead of the fuselage structure, a chrome-molybdenum steel forging
knuckle assembly mounted on Timken roller bearings within the rear
portion of the support, and a Bendix No. 53895, pneudraulic shock
strut.  The shock strut is attached to an extension fitting at the
extreme aft end of the support, the upper or piston end of the strut
being attached to the fuselage structure.  A standard Air Corps
10-1/2 inch diameter streamlined wheel assembly is mounted on the
axle at the lower end of the tail wheel knuckle.  The tail wheel as-
sembly is of the swivel type and is capable of rotating 360°.  The
wheel is restrained to trail aft during flight by a spring attached
between a trunnion on the forward end of the support and a central-
izer at top of the knuckle.  The centralizer is notched and engages
with a spring loaded lock plunger mounted on the support when the
wheel is trailing directly aft, in alignment with the landing gear.
A control handle for releasing lock plunger is located at the left
side of the pilot's seat in the front cockpit.  A 19-52440 spring is
attached to the cable at fuselage bulkhead No. 5, to take up slack in
cable.  A turnbuckle is incorporated adjacent to the spring, access
to which is obtained by means of the parachute flare access door on
top of fuselage.  When it is desired to ground maneuver the airplane,
place this control forward to permit the wheel to rotate.  Pulling
back on the control locks the tail wheel in the trailing position, as
in take-off and landing.  If the control handle is placed in the lock-
ed position while taxiing in a turn, the lock will not engage until
the airplane is held straight, permitting the tail wheel to line up.
When the handle is in the rear position for locking and the cable is
slack, the lock is not engaged.  The tail wheel shall be locked at
all times except just before entering a turn and until a straight
course is resumed.  It shall be locked before take-off and landing.
It will be found that the lock can be released much more readily after
landing if it is released before starting a turn.  A turn while taxi-
ing with the lock engaged places considerable load on the lock mech-
anism, thereby making it more difficult to release.

EXHIBIT 4 - PAGE 109

Ronald A. McIntire, Bar No. 127407
RMcIntire@perkinscoie.com
Bo W. Kim, Bar No. 217394
BKim@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant
THE BOEING COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATTI DONLON, Individually and as Successor-in-Interest to the Estate of PATRICK THEISEN DONLON, Decedent, SEAN DONLON; and DOES ONE through TEN, inclusive,<br><br>Plaintiffs,<br><br>v.<br><br>AC AND S, INC., et al.,<br><br>Defendants. | Case No. CV 11 3376<br><br>**DEFENDANT THE BOEING COMPANY'S EXHIBITS TO DECLARATION OF MICHAEL LOMBARDI IN SUPPORT OF DEFENDANT THE BOEING COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND; EXHIBIT 5, PART 1**<br><br><br>Date: October 7, 2011<br>Time: 9:00 a.m.<br>Judge: Honorable Jeffrey S. White |

01038-6096/LEGAL21558338.1

DEFENDANT THE BOEING COMPANY'S
EXHIBITS TO LOMBARDI DECLARATION
CV 11 3376

# EXHIBIT 5

EXHIBIT 5 - PAGE 110

DEPARTMENT OF THE NAVY
BUREAU OF AERONAUTICS
WASHINGTON 25, D. C.

## FIXED PRICE CONTRACT

**NEGOTIATED CONTRACT NO.** NOas 53-313-1 (Superseding Letter of Intent for Contract NOas 53-313)

**PLACE OF INSPECTION** Contractor's plant, Los Angeles, California and/or Downey, California (Item 7, Final Inspection at Bureau of Aeronautics)

**APPROPRIATION** Section A of the Schedule

**AMOUNT** $40,770,691.00 (Subject to the provisions of Section D of the Schedule)

**AUTHORITY** P. D. EN11-526-53, P. D. EN11-527-53, P. D. EN11-532-53 1st Revision and P. D. EN11-546-53 (Plans Coordination Division); and Amendment Request dated 5 March 1953 (Production Division)

THIS CONTRACT, entered into as of 24 September , 19 52, by and between the UNITED STATES OF AMERICA, hereinafter called the Government, represented by the Contracting Officer executing this contract, and

NORTH AMERICAN AVIATION, INC,

whose address is International Airport, Los Angeles 45, California,

hereinafter called the Contractor,

WITNESSETH, that the parties hereto do mutually agree as follows:

The rights and obligations of the parties to this contract shall be subject to and governed by Part I, The General Provisions and the contract clauses of this contract, by the Specifications and Schedule, and by the Drawings of the Navy, which is hereby incorporated by reference and made a part hereof, between any provisions of said General Provisions and the Specifications for the Inspection of Material, this contract, and the Schedule shall control. In the event of conflict between the Schedule, the Schedule shall control. In the event of conflict between the services as set forth in the attached Schedule, the Contractor shall provide the services as set forth in the Schedule and the General Provisions. Part I, Table of Contents of the sections of the Schedule and the General Provisions.

THIS CONTRACT IS CERTIFIED UNDER DMS REGULATION 1, DO-A-1

NAVAER-3580A

Contract NOas 53-313-1

## TABLE OF CONTENTS

The Schedule, on pages 1 through 12, consists of the following Sections:

SECTION A - ARTICLES TO BE FURNISHED AND PRICES
SECTION B - DELIVERIES
SECTION C - DESCRIPTION OF ITEMS AND SPECIFICATIONS
SECTION D - REDETERMINATION OF CONTRACT PRICES
SECTION E - AVAILABILITY OF FACILITIES
SECTION F - LETTER OF INTENT
SECTION G - GUARANTEES

## GENERAL PROVISIONS

General Provisions A-1 through A-10 of Part A, and B-1 through B-5, B-7 through B-10, B-11 applicable only to special tools and ground handling equipment, demonstrations and items which are of an experimental or prototype nature to be furnished under this contract, and B-12, B-13 of Part B attached to Basic Agreement, Contract NOas 53-200B, dated 13 February 1953, and Amendment No. 1 thereto, dated 1 October 1953, between the Department of the Navy and North American Aviation, Inc., are hereby incorporated by reference and made a part of this contract, as fully as if set forth herein.

EXHIBIT 5 - PAGE 112

Contract NOas 53-313-1

SCHEDULE

SECTION A - ARTICLES TO BE FURNISHED AND PRICES

| Item | Articles or Services | Quantity | Unit Price | Total Price |
|------|---------------------|----------|------------|-------------|
| | **LOT I** | | | |
| 1 | Modify and flight test two(2) Model T-28A airplanes. | | (Included in the price of Items 3 and 8) | |
| 2 | Design data and drawings for Model T-28B aircraft. | | | |
| 3 | Airplanes, Model T-28B. | 173 | $72,865.00 | $12,605,645.00 |
| 3a | Armament Kits | 8 | (Included in the price of Item 3) | |
| 4 | Spare Parts for Item 3, approximately twenty-four per cent (24%) of the total money value of Item 3. | | | 3,025,355.00 |
| 5 | Special tools and ground handling equipment for Item 3, approximately one per cent (1%) of the total money value of Item 3. | | | 126,056.00 |
| 6 | Demonstrations and Flight Tests. | | | 1,059,264.00 |
| 7 | Publications. | | | 204,024.00 |
| | | | Total, Lot I - | $17,020,344.00 |
| | **LOT II** | | | |
| 8 | Airplanes, Model T-28B. | 265 | $72,865.00 | $19,309,225.00 |
| 9 | Spare Parts for Item 8, approximately twenty-two per cent (22%) of the total money value of Item 8. | | | 4,248,030.00 |

- 1 -

EXHIBIT 5 - PAGE 113

Contract NOas 53-313-1

| Item | Articles or Services | Quantity | Unit Price | Total Price |
|------|---------------------|----------|-----------|-------------|
| 10 | Special tools and ground handling equipment for Item 8, approximately one per-cent (1%) of the total money value of Item 8. | | | $ 191,092.00 |

Total, Lot II - $23,750,347.00

Total, Lots I and II - $40,770,691.00

The Appropriations chargeable hereunder are as follows:

### LOT I

17X1504.31(93) Aircraft and Related Procurement, Navy, (1953 Program - Aircraft Procurement), Account 31440, Bureau Control No. 17/10000, Program 110A, Object Classification 099 - $17,020,344.00.

### LOT II

17X1504.21(52) Aircraft and Related Procurement, Navy, (1952 Program - Aircraft Procurement), Account 31440, Bureau Control No. 17/10000, Program 110A, Object Classification 099 - $23,750,347.00.

SECTION B - DELIVERIES

Item 1, Lot I - The two (2) Model T-28 airplanes hereunder shall be delivered at the Contractor's plant, Downey, California, to the U. S. Air Force during the month of September 1952 and thereafter shall be flown to the Los Angeles facility, Los Angeles, California, for removal of the engine and propellers and returned to the T-28 production line at the Contractor's plant, Downey, California.

The modified airplanes to be furnished hereunder shall be delivered at the Contractor's plant, Downey, California, set up, fueled and ready for flight in accordance with the following delivery schedule:

- 8 -

EXHIBIT 5 - PAGE 114

Contract N0as 53-313-1

## DELIVERY SCHEDULE

| Month | Quantity |
|-------|----------|
| November 1953 | 1 airplane |
| December 1953 | 1 airplane |

Total — 2 airplanes

Item 2, Lot I - The design data and drawings to be furnished hereunder shall be delivered to the Government in accordance with the requirements of Addendum No. 568, dated 7 August 1953, to Specification SR-6.

Item 3, Lot II and Item 8, Lot II - The airplanes, Model T-28s, to be furnished hereunder shall be delivered f.o.b. Contractor's Plant, Downey, California, set up, fueled and ready for flight in accordance with the following delivery schedule:

## DELIVERY SCHEDULE

| Month | Quantity |
|-------|----------|
| September 1953 | 1 airplane |
| October 1953 | 1 airplane |
| November 1953 | 2 airplanes |
| December 1953 | 19 airplanes |
| January 1954 | 25 airplanes |
| February 1954 | 41 airplanes |
| March 1954 | 25 airplanes |
| April 1954 | 25 airplanes |
| May 1954 | 25 airplanes |
| June 1954 | 25 airplanes |
| July 1954 | 25 airplanes |
| August 1954 | 25 airplanes |
| September 1954 | 25 airplanes |
| October 1954 | 25 airplanes |
| November 1954 | 25 airplanes |
| December 1954 | 25 airplanes |
| January 1955 | 25 airplanes |
| February 1955 | 25 airplanes |
| March 1955 | 27 airplanes |
| April 1955 | 25 airplanes |
| May 1955 | 15 airplanes |

Total — 436 airplanes

Item 3a, Lot I - The armament kits to be furnished hereunder shall be delivered as follows:

One (1) - Concurrently with the aircraft scheduled for armament trials.

One (1) - To be delivered f.o.b. Contractor's plant, Downey, California, in sufficient time for utilization in the Contractor's demonstrations.

- 3 -

EXHIBIT 5 - PAGE 115

Item 4, Lot I; and Item 9, Lot II - The spare parts to be furnished hereunder shall be packed as hereinafter specified and delivered f.o.b. Contractor's plants, Los Angeles, California and/or Downey, California, in accordance with the requirements of the document entitled "Spare Parts Provisioning Document for United States Air Force and Navy Airframe Production Contracts", approved by the Munitions Board 15 December 1949, which document is by this reference incorporated herein and made a part hereof.

The spare parts shall be preserved, packaged, packed and marked for shipment in accordance with the provisions of Specification ANA list FT-1004 and MIL-STD-129, dated 9 August 1951.

Item 5, Lot I; and Item 10, Lot II - The special tools and ground handling equipment to be furnished hereunder shall be packed as hereinafter specified and delivered f.o.b. Contractor's plants, Los Angeles, California and/or Downey, California, in accordance with the requirements of the document entitled "Special Tools and Ground Handling Equipment Provisioning Document for United States Air Force and Navy Production Contracts", approved by the Munitions Board 12 October 1950, which document is by this reference incorporated herein and made a part hereof, except that Specification MIL-D-5861 (Aer), dated 1 August 1950, shall apply in lieu of Specification AN-D-17.

The special tools and ground handling equipment shall be preserved, packaged, packed and marked for shipment in accordance with the provisions of Specification ANA list FT-1004 and MIL-STD-129, dated 9 August 1951.

Item 6, Lot I - The demonstrations and flight tests to be furnished hereunder shall be completed in accordance with Specification SR-38, as modified by Addendum No. T-288.

Item 7, Lot I - The publications to be furnished hereunder shall be delivered in accordance with the requirements of Exhibit A entitled "Publications Contract Requirement Serial No. 313-53", which Exhibit is attached hereto and made a part hereof.

SECTION C - DESCRIPTION OF ITEMS AND SPECIFICATIONS

Item 1, Lot I - The Contractor shall modify two (2) Model T-28A airplanes with an R-1820-76 engine installation in accordance with Report NA-52-980, dated 30 September 1952, and Amendments Nos. 1 and 2 thereto, in lieu of the present R-1300 engine installation. In addition, the Contractor shall flight test the modified airplanes.

Item 2, Lot I - The design data and drawings to be furnished hereunder shall be in accordance with the requirements of Addendum No. 568, dated 7 August 1953, to Specification SR-6.

- 4 -

EXHIBIT 5 - PAGE 116

Item 3, Lot I; and Item 8, Lot II - The airplanes, Model T-28B, to be furnished hereunder shall be in accordance with the requirements of Detail Specification SD-494-1, dated 2 June 1953. For the purposes of this contract, the end item (Model T-28B aircraft), is to be considered a non-standard commercial supply.

Item 3a, Lot I - The kits to be furnished hereunder shall be in accordance with Appendix No. 5 to Specification S.D.-494-1.

Item 4, Lot I; and Its 9, Lot II - The spare parts to be furnished hereunder shall be in accordance with the requirement of the document entitled "Spare Part Provisioning Document for United States Air Force and Navy Airframe Production Contracts", approved by the Munitions Board 15 December 1949.

Item 5, Lot I; and Item 10, Lot II - The special tools and ground handling equipment to be furnished hereunder shall be in accordance with the requirements of the document entitled "Special Tools and Ground Handling Equipment Provisioning Document for United States Air Force and Navy Production Contracts", approved by the Munitions Board 12 October 1950, except that Specification MIL-D-6861 (Aer), dated 1 August 1950, shall apply in lieu of Specification AN-D-17.

Item 6, Lot I - The demonstrations and flight tests to be furnished hereunder shall be in accordance with Specification SR-38, as modified by Addendum No. T-28B.

Item 7, Lot I - The publications to be furnished hereunder shall be in accordance with the requirements of Exhibit A entitled "Publications Contract Requirement Serial No. 313-53".

In addition to the work specified above, the Contractor shall also prepare and furnish the following reports in accordance with instructions set forth in Bureau of Aeronautics Production Division, "Field Instruction Manual" and "Instructions for use of Material Inspection and Receiving Report, DD Form #250 NAVEXOS P-120-E3.03.00", for the duration and in the form approved by the Bureau of Budget:

(1) Production Progress Reports, DD Form #375.

(2) Material Inspection and Receiving Reports, DD Form #250.

(3) Government-Furnished Aircraft Equipment Requirement Schedule, DD Form 610 (when applicable).

(4) Government-Furnished Aircraft - Weekly Status - Shortage Reports, DD Form #611 (when applicable).

- 5 -

EXHIBIT 5 - PAGE 117

SECTION D - REDETERMINATION OF CONTRACT PRICES

(a) General. The prices of Items 3, 6, 7 and 8 under this contract are billing prices until revised in accordance with the provisions of this clause. The prices of all items, and the prices of changes and amendments, are billing prices and subject to revision in accordance with the provisions of this clause, unless otherwise specified.

(b) Pending establishment of the target price in accordance with subparagraph (g) hereof, the Government shall in no event be obligated to make payment to the Contractor in an amount in excess of $40,770,691.00 or such other amount as may be authorized in writing by the Contracting Officer, and the Contractor shall not be obligated to proceed hereunder provided it has given notice to the Contracting Officer at least sixty (60) days prior to the date such ceiling is reached.

(c) Submission of Data for Establishment of Target Price. Within sixty (60) days after the end of the month in which the fortieth (40th) unit to be manufactured hereunder is shop completed, or at such other time as the Contracting Officer may direct, the Contractor shall forward to the Contracting Officer (i) a statement of all costs incurred to the date of such shop completion or such other time as directed by the Contracting Officer under the items of this contract subject to price revision, (ii) an estimate of costs to be incurred by the Contractor to complete performance of all work and obligations under such items and (iii) data to support the accuracy and reliability of such estimates.

(d) Submission of Data. Within ninety (90) days after the end of the month in which the Contractor has delivered the last unit referred to in Items 3 and 8 of this contract or at such other time as the Contracting Officer may approve, the Contractor shall forward to the Contracting Officer in such form as the Contracting Officer may reasonably require (i) a statement of all costs incurred by the Contractor in performing all work under the items of this contract subject to price revision, and (ii) an estimate of costs of such further performance, if any, as may be necessary to complete performance of all work and obligations under such items. The Contractor may include as a separate item in the statement of costs to be submitted hereunder, an amount to be agreed upon by the Contractor and the Contracting Officer representing the difference between (i) the cost of materials, supplies, and sub-assemblies purchased for but not allocated to the performance of the contract by the Contractor which may be reasonably expected to remain on hand or which are on hand as surplus materials at the conclusion of the contract, and (ii) the value of such materials, supplies and sub-assemblies at the conclusion of the contract.

(e) Accounting Procedures. The Contractor agrees to maintain books, records, documents and other evidence pertaining to the costs and expenses of this contract, in accordance with generally accepted accounting principles and practices normally

Contract NOas 53-313-1

followed by the Contractor, and to the extent and in such detail as is neces-
sary for the establishment of costs applicable to the items of this contract
subject to price revision.

(f) Certification. An officer or other responsible official of the Con-
tractor authorized by it to do so, shall certify on each statement of costs
forwarded to the Contracting Officer-in accordance with the requirements of
this clause, that the incurred costs are based upon the accounting records
of the Contractor, that such records have been kept in accordance with generally
accepted accounting principles and practices normally followed by the Con-
tractor, that such incurred costs are correct to the best of his knowledge and
belief and that the estimate of costs to complete is considered reasonable.

(g) Establishment of Target Price. Items 3, 6, 7 and 8. Upon submission
of the information required by paragraph (e) above, the Contractor and the
Contracting Officer shall promptly negotiate to establish the target costs
which when added to a target profit equal to nine (9%) of such target costs
constitute the target prices. Such target prices of said items shall con-
stitute the revised billing prices and shall be evidenced by an Amendment to
this contract. Failure to agree shall be a dispute concerning a question of
fact within the meaning of the clause of this contract entitled "Disputes".

(h) Items Priced Pursuant to Established Provisioning Procedures.

(i) Items 4 and 9, Spare Parts. The unit prices of spare parts shall
exclude the estimated cost of engineering and tooling and shall be determined
in accordance with "Spare Parts Provisioning Document for United States Air
Force and Navy Airframe Production Contracts", approved by the Munitions Board
15 December 1949, which document is incorporated herein by reference. The
Contractor shall furnish with the Priced Spare Parts order a detailed statement
of the method used in pricing such order and separate cost breakdowns of a re-
presentative number of major parts included in the order. If any Priced Spare
Parts order is received by the Contracting Officer from the Contractor prior to
the establishment of the target prices of Items 3, 6, 7 and 8, the aggregate
billing prices for spare parts set forth therein shall be established by
negotiation. In the event that billing prices for such spare parts orders have
been so established prior to the establishment of the target prices, the aggregate
target price for spare parts under such order or orders shall be established by
negotiation at the same time and in the same manner as for Items 3, 6, 7 and 8.
In either case spare parts unit prices need not be revised. If any Priced Spare
Parts order is received by the Contracting Officer from the Contractor subsequent
to the establishment of the target prices of Items 3, 6, 7 and 8, the target prices
for such spare parts shall be similarly established by negotiation. The target
prices established pursuant to this paragraph shall be added to the contract by

- 7 -

EXHIBIT 5 - PAGE 119

Contract NOas 53-313-1

amendment which shall indicate the effect on the contract target price, target profit and ceiling. Failure to agree shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes".

(14) Item 5 and 10, Special Tools and Ground Handling Equipment. The unit prices of special tools and ground handling equipment shall be determined in accordance with "Special Tools and Ground Handling Equipment Provisioning Document for United States Air Force and Navy Production Contracts", approved by the Munitions Board 12 October 1950, except that Specifications MIL-D-6861(Aer), dated 1 August 1950, shall apply in lieu of Specification AN-D-17, which document is incorporated herein by reference. For the purpose of establishing prices of special tools and ground handling equipment the Contractor shall furnish information similar to that required above for the pricing of spare parts. The establishment of billing prices, or target prices, as the case may be, shall be accomplished in the same manner as for spare parts as shown in (h)(1) above.

(1) **Final Price Revision.**

Upon submission of the information required by paragraph (d) above, the Contractor and the Contracting Officer shall promptly establish a final contract price of the items subject to revision in accordance with the provisions of this clause in the following manner:

(i) On the basis of the information submitted by the Contractor in accordance with paragraph (d) above, together with the results of such investigation as the Contracting Officer may deem appropriate, there shall be established by negotiation the adjusted total contract cost of the items subject to price revision. Failure to agree shall constitute a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes".

(ii) The final contract price of such items shall be established by adding to the adjusted total contract cost, as negotiated under paragraph (i) above, an allowance for profit determined in accordance with the instructions set forth in Paragraph (iii) below, provided, however, that in no event shall the final contract price of such items exceed 125% of the contract target cost thereof.

(iii) The allowance for profit with respect to such items shall be determined by adding to or deducting from the contract target profit an amount to be determined in accordance with the following schedule:

- 8 -

EXHIBIT 5 - PAGE 120

Contract NOas 53-313-1

| When the adjusted total contract cost is: | The allowance for profit is: |
|---|---|
| Equal to the contract target cost | Contract target profit |
| Greater than the contract target cost | Contract target profit less 25% of the amount by which the adjusted total contract cost exceeds the contract target cost. |
| Less than the contract target cost | Contract target profit plus 25% of the amount by which the adjusted total contract cost is less than the contract target cost. |

(j) Adjustment of Payments. If the final contract price, as determined under paragraph (i) of this clause, is greater than the aggregate of billing prices for items subject to price revision, as such billing prices may have been revised from time to time, and provided the Contractor has met the other requirements of this contract, the Contractor shall promptly be paid the amount of such excess. If such final contract price is less than the aggregate of such billing prices, provisions shall be made for prompt reimbursement by the Contractor to the Government of the amount of the deficiency. The total amount so payable and the method of payment shall be set forth in an amendment to the contract.

(k) Termination. In the event this contract is terminated, in whole or in part, settlement shall be made in accordance with the provisions of the clause hereof entitled "Termination for the Convenience of the Government" or the provisions of the clause hereof entitled "Default" whichever is applicable, subject to the following:

(i) If this contract is terminated in its entirety at any time prior to agreement upon revised prices hereunder, the Contractor and the Contracting Officer shall, if termination settlement is to be negotiated on an inventory basis, negotiate to establish such prices for completed articles and services, the price of which was subject to revision hereunder, as may be equitable under the circumstances. Failure to agree shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes".

(ii) If this contract is partially terminated the Contractor and the Contracting Officer shall agree upon such revisions in the provisions of this clause, including target price, as may be equitable under the circumstances. Failure to agree shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes".

- 9 -

EXHIBIT 5 - PAGE 121

Contract NOas 53-913-1

(1) Adjustment of Billing Price. If at any time it appears that the final unit prices will be substantially greater or less than the unit prices at which units under this contract are being billed, this contract may be amended to adjust such unit billing prices. The establishment of adjusted prices for billing purposes only shall in no way limit or affect the price revision to be computed in accordance with the provisions of this clause.

## SECTION E - AVAILABILITY OF FACILITIES

The prices and the delivery schedule stated herein are based on the continued use by the Contractor on a no-charge basis of the facilities furnished to the Contractor by the U. S. Air Force under Facilities Contracts AF33(038)-20077, AF33(038)-9546 and AF33(600)-17535, and by the U. S. Navy under Contracts NOa 1094 and NOa 5065. Inasmuch as the facilities furnished under the above contracts are required by the Contractor in order to furnish the items at the prices specified under Section A and in accordance with the delivery schedule set forth under Section B of this contract, it is agreed that the non-availability of such facilities to the Contractor on a no-charge basis shall afford sufficient grounds for an equitable adjustment in accordance with the terms and procedure provided in the Section of this contract entitled "Changes".

P11-1        SECTION F      - LETTER OF INTENT

The Letter of Intent for Contract NOas 53-913      , dated 24 September 1952, as amended and extended, was issued in anticipation of the execution of this contract. This contract completely supersedes such Letter of Intent, as amended and extended, and constitutes the entire agreement between the parties. Any and all acts of performance under such Letter of Intent, as amended and extended, whether made by the Government or by the Contractor, shall be deemed to have been made, done or performed under the applicable provisions of this contract.

1-1

- 10 -

EXHIBIT 5 - PAGE 122

Contract NOas 53-313-1

SECTION G - GUARANTEES

(a) The Contractor guarantees that each of the airplanes under the applicable load conditions set forth in Specification SD-494-1 will meet the following minimum requirements:

(1) That each airplane will be satisfactory in all respects for naval service use as a training airplane in all types of training except carrier landings, catapult takeoffs and field carrier landing practice;

(2) That each airplane will be in correct flying balance, controllable and positively stable in the air about each of the three major axes, with either free or fixed longitudinal, lateral and directional controls;

(3) That each airplane will be controllable and stable on the ground;

(4) That each airplane will be satisfactory in taking off and landing on an ordinary landing field;

(5) That the weight empty of each airplane, as defined in Specification SD-494-1, paragraph 3.1.3.3a, will not exceed 6,456 pounds;

(6) That the performance of each airplane as a training airplane will be:

Maximum speed with normal rated power at 20,700 feet at design gross weight less one-half fuel shall be not less than 232 knots.

Rate of climb at sea level with normal rated power (1275 bhp) at design gross weight less one-half fuel shall be not less than 3,360 feet per minute.

Stalling speed at sea level with zero thrust, full flaps, 104 pounds reserve fuel shall be not more than 67 knots.

Take-off distance over a 50 foot obstacle, zero wind, design gross weight using 1100 bhp shall not exceed 1,265 feet.

Note: All terms used in the foregoing performance requirements shall be as defined in the notes to paragraph 3.1.2a of Specification SD-494-1.

- 11 -

EXHIBIT 5 - PAGE 123

Contract NOas 53-313-1

(b) The performance guarantees are made with the understanding that engine performance shall be in accordance with paragraph 3.12.2.1a of Specification SD-494-1.

(c) The guaranteed weight-empty set forth above shall be adjusted for increases in weight caused by changes in accordance with the Section hereof entitled "Changes" and for overweight or underweight of Government-Furnished Property as compared with the weights thereof set forth in Specification SD-494-1. Airplane weight empty shall be determined in accordance with the procedure established in Specification AN-W-11b, dated 12 May 1948.

(d) The Contractor further guarantees that the articles provided for under this contract will conform to the specifications therefor and will be free from defects in material and workmanship, subject to the provisions of the Section hereof entitled "Correction of Defects".

- 12 -

EXHIBIT 5 - PAGE 124

NAVAER—1824 (Rev. 8-48)

CONTRACT NO.
NOas 53-313-1

This negotiated contract is made pursuant to the provisions of Section 2'( ....1........)
of the Armed Services Procurement Act of 1947 (Public Law 413, 80th Congress), and any required determination
and findings with respect thereto has been made.

IN WITNESS WHEREOF the parties hereto have executed this contract as of the day and year
first above written.

UNITED STATES OF AMERICA

By _____
Contracting Officer
Bureau of Aeronautics      (JAMES S. TASSIE)
Department of the Navy

WITNESSES:

                                                    NORTH AMERICAN AVIATION, INC.
(1) _____                                  (Contractor)

                                                    By  J. L. Atwood
(2) _____                                  J. L. Atwood

        NOTE: In the case of a corporation,     TITLE  President
        witnesses are not required but
        certificate below must be completed.

                                                    International Airport
                                                    Los Angeles 45, California
                                                      (Business address of Contractor)

## CERTIFICATE

        I, L. R. Taylor                                              , certify that I am
the  Assistant     Secretary of the corporation named as Contractor in the foregoing contract;
that  J. L. Atwood              who signed said contract on behalf of the Contractor was
then  President               of said corporation; that said contract was duly signed
for and in behalf of said corporation by authority of its governing body and is within the scope of its corporate
powers.

                                            _____
                                            (Signature of person certifying)
                                            L. R. Taylor

                                                    (CORPORATE SEAL)

EXHIBIT 5 - PAGE 125

EXHIBIT A
TO
Contract NOas 53-313-i

Publications Contract Requirement Serial No. 313-53

Technical Publications for T-28B Aircraft (North American Aviation, Inc.)

To Be Furnished: To cover Model T-28B Aircraft:

1. The Contractor shall furnish Reproducible copies each of the following:

(a) Flight Handbook
(b) Handbook of Maintenance Instructions
(c) Revision Pages to AN01-60FG-3, Handbook of Structural Repair
(d) Illustrated Parts Breakdown
(e) Supplemental Handbook of Operation, Maintenance and Repair Instructions with Parts Breakdown, if required.
(f) Revision Pages to each of the above to keep them current.

2. Fifty (50) copies of a Handbook of Inspection Requirements.
3. Copies of Temporary Flight and Maintenance Handbooks, if required.
4. A list of Contractor-Furnished Equipment and supplements to keep it current.

Description and Specifications:

1. The reproducible copies to be furnished hereunder shall be prepared in accordance with Specifications MIL-E-5474A, MIL-E-7863(Aer) and the following:

(a) Flight Handbook - Specification MIL-H-7700 with Bureau of Aeronautics Standard Exceptions, dated 1 April 1952, and Specific Exceptions for T28-B aircraft as follows:

3.1.2.13.2.6 - CLIMB CHART - Substitute "Maximum Cruise Power" for "Military Power".

3.1.2.13.3.5 - Humidity Correction for Take-Off - Substitute "Power Deficiency" for "Maximum Manifold Pressure".

3.1.2.13.3.6 - Take-Off - Add additional correction Grid for Power Deficiency. Chart required for distance over 50 foot obstacles. Include correction for runway slope.

3.1.2.13.3.6.1 - Land Based - Insert between second and third sentences: "A correction Grid for altitude effects due to humidity shall be attached to the Density Altitude scale (ORDINATE)." In fifth sentence, substitute "Deficiency" for "Loss due to Humidity".

- 1 -

EXHIBIT 5 - PAGE 126

Contract NOas-53-313-1

Publications Contract Requirements Serial No. 313-53

3.1.2.13.3.8 - **Nautical Miles Per Pound** - Power defined by RPM and BMEP with corresponding MAP limits for those aircraft having BMEP Gages.

Add: **Critical Field Lengths Curve.** Similar to take-off curve but indicating critical conditions for power failure and corrective action.

Include sufficient data as necessary to describe operation in Manual Lean as recommended by engine manufacturer.

(b) Handbook of Maintenance Instructions Specification MIL-H-5473A, except that the pertinent Handbook of Engine Service Instructions shall be referenced but not duplicated.

(c) Revision Pages to AN01-60FG-3, Handbook of Structural Repair - Same Specification as the basic Handbook.

(d) Illustrated Parts Breakdown - Specification MIL-B-5005A and proposed amendment, dated 24 November 1951.

(e) Supplemental Handbook of Operation, Maintenance and Repair Instructions with Parts Breakdown Specification - MIL-H-7107(Aer). This handbook shall contain any data (except Appendix I of the Flight Handbook) which must be omitted from the Flight, Maintenance, Repair and Inspection Handbooks and Parts Breakdown by reason of higher security classification.

(f) Revisions shall be prepared in accordance with the same specifications as the Handbooks they revise. Revisions shall be supplied for (a), (b), (c) and (d) above to cover all changes during the life of the contract. Revisions shall be supplied for (e) above for the life of the contract or until the supplemental Handbook is integrated with (a), (b), (c) and (d).

2. The Handbook of Inspection Requirements shall be prepared in accordance with Specification MIL-H5096A. Copies shall conform in general to Specification MIL-H-5474A, shall be typewritten, unjustified, shall be reproduced by ozalid or similar method, shall be bound, dated and properly identified on the cover.

3. Temporary Handbooks may be prepared in any form suitable to the Contractor's facilities (Ozalid, photostat, etc.). They shall be advance copies of the Flight Handbook (including Operating Data) and Maintenance Handbook to be supplied in reproducible form under the contract and shall contain all information, including illustrations, required to operate and maintain the aircraft. They shall be in loose-leaf form, bound and dated. Revision sheets shall be supplied to keep the Temporary Handbooks correct and up to date until printed copies of the service Handbooks are available.

4. The List of Contractor-Furnished Equipment and Supplements shall be prepared in accordance with Specification MIL-L-7976(Aer).

- 2 -

EXHIBIT 5 - PAGE 127

Contract NOas 53-813-i

Publications Contract Requirements Serial No. 313-53

**Deliveries:**

1. Publications furnished under 1 and 4 shall be packed in accordance with Specification MIL-E-5474A and delivered, all transportation charges prepaid, by the Contractor, to the Department of the Navy, Bureau of Aeronautics, Washington 25, D. C., Attention: PB-22.

2. Publications furnished under 1(a) through 1(e) shall be delivered at the Bureau of Aeronautics not later than thirty (30) days before delivery of the first service aircraft. For the purpose of this Section, the "first service aircraft" is defined as the first aircraft on the contract to be delivered for regular service operation, as distinguished from operation for demonstration, test or trials.

3. Revisions furnished under 1(f) shall be delivered at ninety (90) day intervals, beginning ninety (90) days from date of delivery of the basic publications, or more frequently if considered necessary by the Bureau of Aeronautics or by the Contractor. If no revisions are necessary at the end of any ninety (90) day interval, a negative report shall be furnished in lieu thereof. Final revisions shall be delivered within ninety (90) days after delivery of the last aircraft on the contract. In lieu of a final revision, the Contractor may submit a statement that no further revision is necessary, and if this statement is acceptable to the Bureau of Aeronautics no further revisions will be required.

4. A maximum of thirty (30) copies of the Handbook of Inspection Requirements shall be supplied to the Bureau of Aeronautics Representative at the Contractor's plant, Los Angeles, California, for placing one (1) copy in each of the first ten (10) aircraft and in alternate aircraft thereafter, upon delivery. Twenty (20) copies shall be delivered, concurrently with delivery of the first aircraft to destinations to be furnished by the Bureau of Aeronautics.

5. Temporary Flight and Maintenance Handbooks shall be delivered if any aircraft are delivered to the Government prior to delivery of the first service aircraft. Six (6) copies of each Handbook shall be furnished with the first such aircraft and one (1) copy each with any additional such aircraft. Two (2) copies of all Temporary Handbooks and revision sheets furnished shall be delivered to the Department of the Navy, Bureau of Aeronautics, Washington 25, D. C., Attention: PB-22, concurrently with delivery of the Temporary Handbooks in the Aircraft.

6. Basic List of Contractor-Furnished Equipment shall be delivered at least ten (10) days before the Provisioning Meeting for the aircraft. Supplements shall be delivered on the first day of the month following the date of each definitely established change in the list, for the life of the contract.

- 3 -

EXHIBIT 5 - PAGE 128

Contract NOas 53-313-1

Publications Contract Requirements Serial No. 313-53

Inspection and Acceptance: Preliminary inspection of publications will be made by
the cognizant Naval Inspector at the Contractor's plant, Los Angeles, California.
Final inspection and acceptance of publications will be made by the Publications
Division, Bureau of Aeronautics.

Invoices: Invoices showing the contract number will be submitted, in quadruplicate,
via the cognizant Naval Inspector, to the Department of the Navy, Bureau of Aeronautics,
Washington 25, D. C., Attention: OT-67, for certification as to receipt and acceptance
and for transmittal to the U. S. Navy Regional Accounts Office, Eleventh Naval District,
San Diego, California.

The contract price includes no compensation to the Contractor for any pages which
the Contractor is required to furnish to keep the Handbooks current. If such pages
are furnished the Contractor shall submit cost proposals therefor at intervals not
to exceed six (6) months and an equitable adjustment of the contract price shall be
made. Any disagreement between the Contractor and the Government concerning such an
adjustment shall be considered a dispute concerning a question of fact within the
meaning of the clause of this contract entitled "Disputes".

EXHIBIT 5 - PAGE 129

# BILLING INSTRUCTIONS FOR CONTRACT NOas

*Strict compliance with the Billing Instructions will facilitate early payment of invoices. No payments can be made, however, until the contract is returned, properly executed, to the Bureau of Aeronautics, Department of the Navy, Washington 25, D. C.*

1. **GENERAL:** In case of conflict between the provisions of the Billing Instructions and the express terms of the contract, the express terms of the contract shall control.

2. **PREPARATION OF INVOICES:**

   (a) **CONCERNING THE GENERAL FORM OF INVOICES:** Invoices are to be prepared by contractors on their regular billing forms. There is required to be stamped, printed or typewritten upon the original copy of each invoice the following certificate.

   > I certify that the above bill is correct and just and that payment therefor has not been received.

   _____
   Contractor

   By_____
   Authorized Representative

   Such certificate must actually appear on the original copy of the invoice—an accompanying, annexed or separate certificate will not be acceptable—and must be signed in the name and on behalf of the Contractor by an authorized representative.

   (b) **CONCERNING ASSIGNMENTS:** Notwithstanding an assignment of money claims pursuant to authority contained in the contract, the Contractor—not the assignee—is required to prepare invoices. Where such an assignment has been made, the original copy of the invoice must refer to the assignment and must show that payment of the invoice is to be made directly to the assignee, as follows:

   > Pursuant to the instrument of assignment, dated _____, make payment of this invoice to (name and address of assignee).

   _____
   Contractor

   By_____
   Title

3. **MARKING OF SHIPPING CONTAINERS:**

   The following information must plainly appear on all shipping boxes or containers:

   (1) Name of Contractor
   (2) Name and Address of Consignee
   (3) Contract Number Preceded by NOas Symbol
   (4) Contents (only if contract is unclassified):
      (a) Item or Items
      (b) Identification or Model Designation of Item or Items
      (c) Quantity of Each Item or Items

4. **SUBMISSION OF INVOICES AND PLACE OF PAYMENT:**

   Invoices, showing the contract number, will be submitted by you, in quadruplicate, to the cognizant Naval Inspector for certification as to receipt and acceptance (or, in the case of progress payments, appropriate certification under the terms of the contract) and transmittal to the U. S. Navy Regional Accounts Office, Eleventh Naval District, San Diego, California, where public vouchers will be prepared and payment will be made. A separate invoice shall be prepared and submitted, in quadruplicate, for each activity designated to receive supplies and services.

EXHIBIT 5 - PAGE 130

## BILLING INSTRUCTIONS FOR CONTRACT NOs. 53-313-1

5. If this contract is classified Restricted, Confidential, or Secret, invoices submitted under the contract shall be prepared so that the supplies or services concerned thereby can be identified only by reference to the contract. For example, the invoice may state, "Contract N____, Item 2, 100 @ $1.00 - $100.00". The security classification shown on the contract shall not appear on the invoices.

- 2 -

**EXHIBIT 5 - PAGE 131**

INSTRUCTIONS TO INSPECTORS   NOas 53-113-1

The Bureau of Aeronautics Representative, Los Angeles 45, California,
has been assigned as the Naval Inspector having cognizance of this
contract for preliminary inspection. Such inspector will conduct
physical inspection short of final inspection and acceptance of the
materials and services being procured, and will perform contract
administration, and security administration (when necessary). Final
inspection and acceptance will be made by the Bureau of Aeronautics.

The inspector designated above for preliminary inspection will certify
interim vouchers against cost type contracts. The final voucher will be
processed and certified by the Bureau of Aeronautics in accordance with
established procedure.

The above instructions apply to Item 7, Lot I.

NAVAER 2891 (New 8-52)

(page 1 of 2)

EXHIBIT 5 - PAGE 132

INSTRUCTIONS TO INSPECTORS    NOas 53-313-i

The Bureau of Aeronautics Representative, Los Angeles 45, California,
has been assigned as the Naval Inspector having cognizance of this
contract for technical inspection. Such inspector will conduct
physical inspection at the place of manufacture, perform tests, and
accept or reject the supplies or services being procured in accordance
with the terms of the contract. Such inspector will also perform
contract and security administration (when necessary) in connection
with the contract and will certify invoices and vouchers as required
by the terms of the contract.

The above instructions apply to all items, except Item 7, Lot I.

NAVAER 3891A (New 8-52)

(page 2 of 2)

EXHIBIT 5 - PAGE 133

DEPARTMENT OF THE NAVY
Bureau of Aeronautics
Washington 25, D. C.

Aer-CT-65

Extension No. 1 to
Letter of Intent for
Contract NOas 53-313

30 September 1953

130039

North American Aviation, Inc.
Downey, California

Gentlemen:

By its Letter of Intent for Contract NOas 53-313 dated 24 September 1952 the Navy Department signified its intention to enter into a formal contract for the supplies and/or services specified therein.

Since it will not be feasible to consummate a formal contract within the time specified in that Letter, the limiting date of said Letter of Intent is hereby extended to 31 March 1954.

Very truly yours,

J. M. Schaeffer
Contracting Officer
Bureau of Aeronautics

NAVAER-1/26 (Rev. 10-51)

EXHIBIT 5 - PAGE 134

RESTRICTED

NORTH AMERICAN AVIATION, INC.

GENERAL ORDER

Date 27 August 1953

Revision 2 Nov 1953

NA-200, Supplement
Letter of Intent for
Contract NOa(s)53-313
Fixed Price - Incentive Type
438 Model T-28B Airplanes
Defense Order Rating DO-A-1

Distribution: Los Angeles - Kindleberger-Atwood, Cena, Rossia, Lane, Schmitt, Horton, Chase, Virgin, Leabeth-Anspach, Smithson-Rund, Rice-Hansen, Dawe, Magely, Shropshire, Houston, Taylor

1. This Supplement nullifies and supersedes original General Order NA-200, and all Supplements issued prior to the date hereof.

This Supplement is issued:

a) to add Item 10.
b) to show the latest delivery schedule.
c) to include latest price revision information.

2. All work authorized by this General Order is the responsibility of the Los Angeles plant. Purchase Orders will be issued for necessary interplant support.

3. Based on Letter of Intent for Contract NOa(s)53-313 as amended and Buyer Letter 50106 dated 11 April 1953 proceed with the production of the following :

Lot 1

Item 1 - Design Data and drawings in accordance with Addendum No. 568 to Specification SR-61.

Item 2(a) - Refer to General Order NA-199.

Item 2(b) - One hundred and seventy-three (173) airplanes, Model T-28B, in accordance with Detail Specification SD-494-1, dated 2 September 1952.

Item 3 - Spare Parts, approximately twenty-four percent (24%) of the total money value of Item 2, to be furnished in accordance with "Spare Parts Provisioning Document for U. S. Air Force and Navy Airframe Production Contracts" approved by Munitions Board 15 December 1949.

Item 4 - Special Tools and Ground Handling Equipment, approximately one percent (1%) of the total money value of Item 2, to be _____ in accordance with "Special Tools and Ground Handling Equipment Provisioning Document for U. S. Air Force and Navy Production Contracts" approved by Munitions Board 12 October 1950, except that Specification MIL-D-6861 (Aer) dated 1 August 1950 shall apply in lieu of Specification AN-P-17.

Item 5 - Demonstrations, in accordance with Specification HR-38 as modified by Addendum No. T-28B.

RESTRICTED

SECURITY INFORMATION

EXHIBIT 5 - PAGE 135

Item 6     - Publications, to be furnished in accordance with Publications Contract Requirements, Serial No. 313-53.

## Lot II

Item 7     - Two Hundred and sixty-five (265) airplanes, Model T-28B, in accordance with Detail Specification SD-494-1 dated 1 December 1952.

Item 8     - Spare Parts, approximately twenty-two percent (22%) of the total money value of Item 7, to be furnished in accordance with "Spare Parts Provisioning Document for United States Air Force and Navy Airframe Production Contracts" approved by the Munitions Board 15 December 1949.

Item 9     - Special Tools and Ground Handling Equipment to approximately one percent (1%) of the total money value of Item 7, to be furnished in accordance with "Special Tools and Ground Handling Equipment Provisioning Document for the United States Air Force and Navy Production Contracts" approved by the Munitions Board 12 October 1950, except that Specification MIL-D-6861 (Aer) dated 1 August 1950 shall apply in lieu of Specification AN-D-17.

Item 10     - Two (2) armament kits in accordance with Appendix #5 to Specification SD-494-1.

4. Pending the receipt of the Definitive Contract, the written approval of the cognizant Naval Inspector shall be obtained for all subcontracts and Purchase Orders hereunder, either individually or in such grouped or summarized form as the Inspector shall approve.

It should be noted that expenditures against this General Order are limited to $15,000,000.00 and are allotted as follows:

| | |
|---|---|
| Engineering | $2,000,000.00 |
| Tooling | 2,000,000.00 |
| Manufacturing | 1,500,000.00 |
| Material | 9,500,000.00* |

* NOTE: This allocation includes the requirements of General Order 9013.

5. The delivery schedule is as follows:

## Lot I

Item 1, 3, 4, 5, 6 - In accordance with applicable specifications and Bureau of Aeronautics provisioning procedures.

Item 2 (b)     -

| | | | | | |
|---|---|---|---|---|---|
| September | 1953 | 3 | February | 1954 | 25 |
| October | 1953 | 1 | March | 1954 | 25 |
| November | 1953 | 2 | April | 1954 | 25 |
| December | 1953 | 19 | May | 1954 | 25 |
| January | 1954 | 25 | June | 1954 | 45 |

RESTRICTED
SECURITY INFORMATION

EXHIBIT 5 - PAGE 136

RESTRICTED

General Order: RA-200, Supplement 5     Page 3

## Lot II

| Item 7 | | | | | |
|---|---|---|---|---|---|
| July | 1954 | - 25 | January | - 1955 | - 25 |
| August | 1954 | - 25 | February | - 1955 | - 25 |
| September | 1954 | - 25 | March | - 1955 | - 25 |
| October | 1954 | - 25 | April | - 1955 | - 25 |
| November | 1954 | - 25 | May | - 1955 | - 15 |
| December | 1954 | - 25 | | | |

Items 8 and 9    - In accordance with applicable specifications and Bureau of Aeronautics provisioning procedures.

Item 10     - To be furnished later.

6. The Letter of Intent has been completely declassified by BuAer Instruction 5500.12 dated 4 December 1952.

This document contains information affecting the National Defense of the United States within the meaning of the Espionage Laws, Title 18 U.S.C., Sections 793 and 794. Its transmission or the revelation of its contents in any manner to any unauthorized person is prohibited by law.

7. This Letter of Intent is subject to the Renegotiation Act of 1951.

8. It is anticipated that the Price Revision Article for this contract will be the "Incentive Type".

In order to facilitate revision of target prices assembly costs shall be accumulated for the following blocks of airplanes:

| | | | |
|---|---|---|---|
| 2 airplanes | (1 thru 2) | 70 airplanes | (86 thru 155) |
| 13 airplanes | (3 thru 15) | 70 airplanes | (156 thru 225) |
| 20 airplanes | (16 thru 35) | 70 airplanes | (226 thru 295) |
| 25 airplanes | (36 thru 60) | 70 airplanes | (296 thru 365) |
| 25 airplanes | (61 thru 85) | 73 airplanes | (366 thru 438) |

Interim Redetermination of target prices is to be negotiated using costs accumulated through 31 January 1954.

9. Attention is invited to the fact that all Master Change Records are to be written against BAA Specification RA-52-986, dated 31 October 1952.

10. The serial numbers assigned by the Bureau of Aeronautics to these airplanes are:

        airplanes of Item 2(b)   - 137638 through 137810
        airplanes of Item 7   - 138103 through 138367

11. The 5000 Series of Account are applicable under this General Order.

Invoices shall be submitted to the BAR Inglewood, for certification as to receipt and acceptance and transmittal to the U. S. Navy Regional Accounts Office, Eleventh Naval District, San Diego, California.

RESTRICTED

... ...ATION

Approved ...

EXHIBIT 5 - PAGE 137

RESTRICTED

NORTH AMERICAN AVIATION, INC.

GENERAL ORDER

Date 14 January 1953

NA-200, Supplement 5
Letter of Intent for
Contract NOa(s)53-313
Fixed Price - Incentive Type
438 Model T-28B Airplanes
Defense Order Rating DO-A-1

Distribution: Los Angeles - Messrs: Kindelberger-Atwood (1), Cann-Roscia (2), Lane (1), Schmitt (1), Burton (1), Chase (1), Virgin (1), Lesbeth-Anspach (5) Magely (24), Shropshire (13), Houston (1), Taylor (2), Waite (1), Rice-Hansen (5), Daws (2), Smithson-Rund (22)

1. This General Order NA-200, Supplement 5, revises and supersedes original General Order NA-200 and Supplements 1 thru 4.

2. All work authorized by this General Order is the responsibility of the Los Angeles plant. Purchase Orders will be issued for necessary interplant support.

3. Based on Letter of Intent for Contract NOa(s)53-313 and Amendments 1 and 2 thereto proceed with the production of the following:

Lot I

Item 1 - Design data and drawings in accordance with Addendum No. 568 to Specification SR-6.

Item 2(a) - Refer to General Order NA-199.

Item 2(b) - One hundred and seventy-three (173) airplanes, Model T-28B, in accordance with Detail Specification SD-494-1 dated 2 September 1952.

Item 3 - Spare Parts, approximately twenty-four percent (24%) of the total money value of Item 2, to be furnished in accordance with "Spare Parts Provisioning Document for U.S. Air Force and Navy Airframe Production Contracts" approved by Munitions Board 15 December 1949.

Item 4 - Special Tools and Ground Handling Equipment, approximately one percent (1%) of the total money value of Item 2, to be furnished in accordance with "Special Tools and Ground Handling Equipment Provisioning Document for U.S. Air Force and Navy Production Contracts" approved by Munitions Board 12 October 1950, except that Specification MIL-D-6861 (Aer) dated 1 August 1950 shall apply in lieu of Specification AN-D-17.

Item 5 - Demonstrations, in accordance with Specification SR-38 as modified by Addendum No. T-28B.

Item 6 - Publications, to be furnished in accordance with Publications Contract Requirements, Serial No. 313-53.

RESTRICTED

SECURITY INFORMATION

EXHIBIT 5 - PAGE 138

RESTRICTED

GENERAL ORDER NO. NA-200, Supplement 5                                   Page 2

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### Lot II

Item 7 – Two Hundred and sixty five (265) airplanes, Model T-28B, in accordance with Detail Specification SD-494-1 dated 1 December 1952.

Item 8 – Spare parts, approximately twenty-two percent (22%) of the total money value of Item 7, to be furnished in accordance with "Spare Parts Provisioning Document for United States Air Force and Navy Airframe Production Contracts" approved by the Munitions Board 15 December 1949.

Item 9 – Special tools and ground handling equipment to approximately one percent (1%) of the total money value of Item 7, to be furnished in accordance with "Special Tools and Ground Handling Equipment Provisioning Document for the United States Air Force and Navy Production Contracts" approved by the Munitions Board 12 October 1950, except that Specification MIL-D-6861 (Aer) dated 1 August 1950 shall apply in lieu of Specification AN-D-17.

4. Pending the receipt of the Definitive Contract, the written approval of the cognizant Naval Inspector shall be obtained for all subcontracts and Purchase Orders hereunder, either individually or in such grouped or summarized form as the Inspector shall approve.

It should be noted that expenditures against this General Order are limited to $15,000,000      and are allotted as follows:

|  |  |
|---|---|
| Engineering | $2,000,000.00 |
| Tooling | 2,000,000.00 |
| Manufacturing | 1,500,000.00 |
| Material* | 9,500,000.00 |

*NOTE: This allocation includes the requirements of General Order 9013.

5. The delivery schedule is as follows:

#### LOT I

Items 1, 3, 4, 5, 6 – In accordance with applicable specifications and Bureau of Aeronautics provisioning procedures.

| Item 2(b) | | | | | |
|---|---|---|---|---|---|
| August | 1953 - 3 | | January | 1954 - 20 |
| September | 1953 - 10 | | February | 1954 - 20 |
| October | 1953 - 20 | | March | 1954 - 20 |
| November | 1953 - 20 | | April | 1954 - 20 |
| December | 1953 - 20 | | May | 1954 - 20 |

#### LOT II

Items 8 and 9 – In accordance with applicable specifications and Bureau of Aeronautics provisioning procedures.

## RESTRICTED

# SECURITY INFORMATION

EXHIBIT 5 - PAGE 139

1   Ronald A. McIntire, Bar No. 127407
    RMcIntire@perkinscoie.com
2   Bo W. Kim, Bar No. 217394
    BKim@perkinscoie.com
3   **PERKINS COIE LLP**
    1888 Century Park East, Suite 1700
4   Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
5   Facsimile: 310.788.3399

6   Attorneys for Defendant
    THE BOEING COMPANY
7

8               **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10

11  PATTI DONLON, Individually and          Case No. CV 11 3376
    as Successor-in-Interest to the Estate
12  of PATRICK THEISEN DONLON,              **DEFENDANT THE BOEING**
    Decedent, SEAN DONLON; and             **COMPANY'S EXHIBITS TO**
13  DOES ONE through TEN, inclusive,        **DECLARATION OF**
                                            **MICHAEL LOMBARDI IN**
14              Plaintiffs,                 **SUPPORT OF DEFENDANT THE**
                                            **BOEING COMPANY'S**
15      v.                                  **OPPOSITION TO PLAINTIFFS'**
                                            **MOTION TO REMAND;**
16  AC AND S, INC., et al.,                 **EXHIBIT 5, PART 2**

17              Defendants.

18
                                           Date:   October 7, 2011
19                                         Time:   9:00 a.m.
                                           Judge:  Honorable Jeffrey S. White
20

21

22

23

24

25

26

27

28

RESTRICTED

GENERAL ORDER NO. NA-200, Supplement                                              Page 3

| Item 7 | | | | | |
|--------|-----------|-----------|----------|-----------|----------|
| | June | 1954 - 20 | January | 1955 - 20 |
| | July | 1954 - 20 | February | 1955 - 20 |
| | August | 1954 - 20 | March | 1955 - 20 |
| | September | 1954 - 20 | April | 1955 - 20 |
| | October | 1954 - 20 | May | 1955 - 20 |
| | November | 1954 - 20 | June | 1955 - 20 |
| | December | 1954 - 20 | July | 1955 - 5 |

6.   The Letter of Intent has been completely declassified by BuAer Instruction 5500.12 dated 4 December 1952.

   This document contains information affecting the National Defense of the United States within the meaning of the Espionage Laws, Title 18 U.S.C., Sections 793 and 794. Its transmission or the revelation of its contents in any manner to any unauthorized person is prohibited by law.

7.   This Letter of Intent is subject to the Renegotiation Act of 1951.

8.   It is anticipated that the Price Revision Article for this contract will be the "Incentive Type".

9.   Attention is invited to the fact that all Master Change Records are to be written against NAA Specification NA-58-986, dated 31 October 1952.

10.  The serial numbers assigned by the Bureau of Aeronautics to these airplanes are:

             airplanes of Item 2(b) - 137638 through 137810
             airplanes of Item 7    - 138103 through 138367

11.  Normal accounts in use on NA numbered contracts will be used to cover all operations.

   Invoices shall be submitted to the BAR Inglewood, for certification as to receipt and acceptance and transmittal to the U.S. Navy Regional Accounts Office, Eleventh Naval District, San Diego, California

                                               Approved _____

TWH/al

RESTRICTED

SECURITY INFORMATION

EXHIBIT 5 - PAGE 140

RESTRICTED

NORTH AMERICAN AVIATION, INC.

GENERAL ORDER

Date   12 December 1952

NA-200, Supplement 4
Letter of Intent for
Contract NOa(s)53-313
Fixed Price - Incentive Type
173 Model T-28B Airplanes
Defense Order Rating DO-A-1

Distribution : Los Angeles - Messrs: Kindleberger (1), Cann-Roscia (2),
Lane (1), Schmitt (1), Burton (1), Chase (1), Virgin (1),
Lenbeth-Magely (24), Shropshire (13), Houston (1), Taylor (2),
Waite (1), Rice-Hansen (5), Dawe (2), Magely (24), Shropshire (13)

1.   This General Order NA-200, Supplement 4, revises and supersedes original
General Order NA-200 and Supplements 2 and 3 thereto.

2.   All work authorized by this General Order is the responsibility of the Los Angeles
plant.  Purchase Orders will be issued for necessary interplant support.

3.   Based on Letter of Intent for Contract NOa(s)53-313 proceed with the production
of the following:

Item 1      -  Design data and drawings in accordance with Addendum No. 568 to
Specification SR-6.

Item 2(a)   -  Refer to General Order NA-199.

Item 2 (b)  -  One hundred and seventy-three (173) airplanes, Model T-28B, in accord-
ance with Detail Specification SD-494-1 dated 2 September 1952.

Item 3      -  Spare Parts, approximately twenty-four percent (24%) of the total
money value of Item 2, to be furnished in accordance with "Spare
Parts Provisioning Document for U.S. Air Force and Navy Airframe
Production Contracts" approved by Munitions Board 15 December 1949.

Item 4      -  Special Tools and Ground Handling Equipment, approximately one
percent (1%) of the total money value of Item 2, to be furnished
in accordance with "Special Tools and Ground Handling Equipment
Provisioning Document for U. S. Air Force and Navy Production
Contracts" approved by Munitions Board 12 October 1950, except
that Specification MIL-D-6661 (Aer) dated 1 August 1950 shall
apply in lieu of Specification AN-D-17.

Item 5      -  Demonstrations, in accordance with Specification SR-36 as modified
by Addendum No. T-28B.

Item 6      -  Publications, to be furnished in accordance with Publications
Contract Requirements, Serial No. 313-53.

4.   Pending the receipt of the Definitive Contract, the written approval of the
cognizant Naval Inspector shall be obtained for all subcontracts and Purchase
Orders hereunder, either individually or in such grouped or summarized form
as the Inspector shall approve.

RESTRICTED

SECURITY INFORMATION

EXHIBIT 5 - PAGE 141

It should be noted that expenditures against this General Order are limited to $8,000,000.00 and are allotted as follows:

| | |
|---|---|
| Engineering | $ 1,680,000.00 |
| Tooling | 1,917,000.00 |
| Manufacturing | 1,403,000.00 |
| Material * | 3,000,000.00 |

\* NOTE: This allotment includes the requirements of General Order 9013.

5.  The delivery schedule is as follows:

Items 1, 3, 4, 5, 6 - In accordance with applicable spycifications and Bureau of Aeronautics provisioning procedures.

| Item 2(b) - | | | | | |
|---|---|---|---|---|---|
| | August | 1953 - 3 | January | 1954 - 20 |
| | September | 1953 - 10 | February | 1954 - 10 |
| | October | 1953 - 20 | March | 1954 - 20 |
| | November | 1953 - 20 | April | 1954 - 20 |
| | December | 1953 - 20 | May | 1954 - 20 |

6.  The Letter of Intent has been classified "Restricted" by the Bureau of Aeronautics.

This document contains information affecting the National Defense of the United States within the meaning of the Espionage Laws, Title 18 U.S.C., Sections 793 and 794. Its transmission or the revelation of its contents in any manner to any unauthorized person is prohibited by law.

7.  This Letter of Intent is subject to the Renegotiation Act of 1951.

8.  It is anticipated that the Price Revision Article for this contract will be the "Incentive Type".

9.  Attention is invited to the fact that all Master Change Records are to be written against NAA Specification NA-52-986, dated 31 October 1952.

10.  The serial numbers assigned by the Bureau of Aeronautics to these airplanes are: 137638 through 137810.

11.  Normal accounts in use on NA numbered contracts will be used to cover all operations.

Invoices shall be submitted to the BAR Inglewood, for certification as to receipt and acceptance and transmittal to the U. S. Navy Regional Accounts Office, Eleventh Naval District, San Diego, California.

Approved _____

TPH/al

RESTRICTED
SECURITY INFORMATION

EXHIBIT 5 - PAGE 142

GENERAL ORDER

Date  14 October 1952

RECEIVED
OCT 15 1952

NA-200, Supplement #3
Letter of Intent for
Contract NOa(s)53-313
Fixed Price - Incentive Type
173-Model T-28B Airplanes
Defense Order Rating DO-A-1

To Messrs: Atwood, Dawe, Burton, Houston, Lambeth, Nagely, Rice, Shropshire,
Cann, Smithson, Taylor, Auspach, Virgin, Gallant

1. This General Order NA-200, Supplement #3, revises and supersedes original
General Order NA-200 and Supplements 1 and 2 thereto.

2. All work authorized by this General Order is the responsibility of the
Los Angeles plant. Purchase Orders will be issued for necessary interplant
support.

3. Based on Letter of Intent for Contract NOa(s)53-313 proceed with the production
of the following:

Item 1 - Design data and drawings in accordance with Addendum No. 568 to
Specification SR-6.

Item 2 - One hundred and seventy-three (173) airplanes, Model T-28B, in
accordance with Detail Specification SD-494-1 dated 2 September
1952.

Item 3 - Spare Parts, approximately twenty-four percent (24%) of the total
money value of Item 2, to be furnished in accordance with "Spare
Parts Provisioning Document for U.S. Air Force and Navy Airframe
Production Contracts" approved by Munitions Board 15 December 1949.

Item 4 - Special Tools and Ground Handling Equipment, approximately one
percent (1%) of the total money value of Item 2, to be furnished
in accordance with "Special Tools and Ground Handling Equipment
Provisioning Document for U. S. Air Force and Navy Production
Contracts" approved by Munitions Board 12 October 1950, except
that Specification MIL-D-6861 (Aer) dated 1 August 1950 shall
apply in lieu of Specification AN-D-17.

Item 5 - Demonstrations, in accordance with Specification SR-38 as modified
by Addendum No. T-28B.

Item 6 - Publications, to be furnished in accordance with Publications
Contract Requirements, Serial No. 313-53.

4. Pending the receipt of the Definitive Contract, the written approval of the
cognizant Naval Inspector shall be obtained for all subcontracts and Purchase
Orders hereunder, either individually or in such grouped or summarized form
as the Inspector shall approve.

RESTRICTED
SECURITY INFORMATION

EXHIBIT 5 - PAGE 143

RESTRICTED

It should be noted that expenditures against this General Order are limited
to $8,000,000.00 and are allotted as follows:

|   |   |
|---|---|
| Engineering | $ 1,680,000.00 |
| Tooling | 1,017,000.00 |
| Manufacturing | 1,403,000.00 |
| Material | 3,000,000.00 |

5. The delivery schedule is as follows:

Items 1, 3, 4, 5, 6 - In accordance with applicable specifications and Bureau
of Aeronautics provisioning procedures.

| Item 2 - | August | 1953 - 3 | January | 1954 - 20 |
|---|---|---|---|---|
| | September | 1953 - 10 | February | 1954 - 20 |
| | October | 1953 - 20 | March | 1954 - 20 |
| | November | 1953 - 20 | April | 1954 - 20 |
| | December | 1953 - 20 | May | 1954 - 20 |

6. The Letter of Intent has been classified "Restricted" by the Bureau of
Aeronautics.

This document contains information affecting the National Defense of the
United States within the meaning of the Espionage Laws, Title 18 U.S.C.,
Sections 793 and 794. Its transmission or the revelation of its contents
in any manner to any unauthorized person is prohibited by law.

7. This Letter of Intent is subject to the Renegotiation Act of 1951.

8. It is anticipated that the Price Revision Article for this contract will be
the "Incentive Type".

9. Attention is invited to the fact that all Master Change Records are to be
written against NAA Specification NA-52-986, dated 31 October 1952.

10. The serial numbers assigned by the Bureau of Aeronautics to these airplanes are:
137638 through 137810.

11. Normal accounts in use on NA numbered contracts will be used to cover all
operations.

Invoices shall be submitted to the BAR, Inglewood, for certification as to
receipt and acceptance and transmittal to the U. S. Navy Regional Accounts
Office, Eleventh Naval District, San Diego, California.

Approved _____

TYH/sl

RESTRICTED

SECURITY INFORMATION

EXHIBIT 5 - PAGE 144

RESTRICTED

NORTH AMERICAN AVIATION, INC.

GENERAL ORDER

Date: 10 September 1952

NA-200, Supplement #2
Letter of Intent for
Contract NOA(s)53-313
Fixed Price - Incentive Type
175 Model T-28B Airplanes
Defense Order Rating DO-A-1

TO Messrs: Atwood, Davo, Burton, Houston, Isbeth, Magely, Rice, Shropshire, Conn, Smithson, Tayler, Anspach, Virgin, Gallant

1. This General Order NA-200, Supplement #2, revises and supersedes original General Order NA-200 and Supplement 1, thereto.

2. All work authorized by this General Order is the responsibility of the Los Angeles plant. Purchase Orders will be issued for necessary interplant support.

3. Based on Letter of Intent for Contract NOA(s)53-313 proceed with the production of the following:

Item 1 - Design data and drawings in accordance with Addendum No. 568 to Specification SH-6.

Item 2 - One hundred and seventy five (175) airplanes, Model T-28B, in accordance with Detail Specification SD-494-1 dated 2 September 1952.

Item 3 - Spare Parts, approximately twenty-four percent (24%) of the total money value of Item 2, to be furnished in accordance with "Spare Parts Provisioning Document for U.S. Air Force and Navy Airframe Production Contracts" approved by Munitions Board 15 December 1949.

Item 4 - Special Tools and Ground Handling Equipment, approximately one percent (1%) of the total money value of Item 2, to be furnished in accordance with "Special Tools and Ground Handling Equipment Provisioning Document for U.S. Air Force and Navy Production Contracts" approved by Munitions Board 12 October 1950, except that Specification MIL-D-6061 (Air) dated 1 August 1950 shall apply in lieu of Specification AN-D-17.

Item 5 - Demonstrations, in accordance with Specification SH-38 as modified by Addendum No. T-28B.

Item 6 - Publications, to be furnished in accordance with Publications Contract Requirements, Serial No. 313.53.

RESTRICTED
SECURITY INFORMATION

EXHIBIT 5 - PAGE 145

GENERAL ORDER NO. MA-300, Supplement #2                                   Page 2

pending the receipt of the definitive Contract, the written approval of the cognizant Naval Inspector shall be obtained for all subcontracts and Purchase Orders hereunder, either individually or in such grouped or summarized form as the Inspector shall approve.

It should be noted that expenditures against this General Order are limited to $8,000,000.00 and are allotted as follows:

| | |
|---|---|
| Engineering | $ 1,680,000.00 |
| Tooling | 1,917,000.00 |
| Manufacturing | 1,403,000.00 |
| Material | 3,000,000.00 |

5. The delivery schedule is as follows:

Item 1, 3, 4, 5, 6 -- In accordance with applicable specifications and Bureau of Aeronautics provisioning procedures.

| Item 2 - | | | | | | |
|---|---|---|---|---|---|---|
| | August | 1953 - 5 | | January | 1954 - 20 |
| | September | 1953 - 10 | | February | 1954 - 20 |
| | October | 1953 - 20 | | March | 1954 - 20 |
| | November | 1953 - 20 | | April | 1954 - 20 |
| | December | 1953 - 20 | | May | 1954 - 20 |

6. The Letter of Intent has been classified "Restricted" by the Bureau of Aeronautics.

This document contains information affecting the National Defense of the United States within the meaning of the Espionage Laws, Title 18 U.S.C. Sections 793 and 794. Its transmission or the revelation of its contents in any manner to any unauthorized person is prohibited by law.

7. This Letter of Intent is subject to the Renegotiation Act of 1951.

8. It is anticipated that the Price Revision Article for this contract will be the "Incentive Type".

9. Attention is invited to the fact that all Master Change Records are to be written against NAA Specification NA-52-986, dated 31 October 1952.

10. The serial numbers assigned by the Bureau of Aeronautics to these airplanes 137536 through 137610.

11. Normal accounts in use on NA numbered contracts will be used to cover all operations.

Invoices shall be submitted to the NAA, Inglewood, for certification as to receipt and acceptance and transmittal to the U.S. Navy Regional Accounts Office, Eleventh Naval District, San Diego, California.

EXHIBIT 5 - PAGE 146

RESTRICTED

NORTH AMERICAN AVIATION, INC.

GENERAL ORDER

Date 12 September 1952

NA-200, Supplement #1
Proposed Fixed Price
Contract NOa(s)53-313

To Messrs: Atwood, Dawe, Burton, Houston, Lembeth, Magely, Rice, Shropshire, Caum, Smithson, Taylor, Anspach, Virgin, Gallant

---

1. This General Order NA-200, Supplement #1, nullifies and supersedes original General Order NA-200.

2. All work authorized by this General Order is the responsibility of the Los Angeles Plant. Purchase Orders will be issued for necessary interplant support.

3. This General Order is issued in anticipation of Contract NOa(s) 53-313 and authorizes:

   a) Engineering development of the Model T-28B airplane with an R-1820 engine.

   b) Diversion to this General Order of those applicable or common materials and supplies terminated from the NA-189 (158 T-28A airplanes on Contract AF33 (600)5895) by Government Termination Docket Number 31798 (NAA Termination Sales Order Number C-1229).

Approved

TYB/al

RESTRICTED
SECURITY INFORMATION

EXHIBIT 5 - PAGE 147

RESTRICTED

NORTH AMERICAN AVIATION, INC.

GENERAL ORDER

Date 27 August 1952

RECEIVED
AUG 28 1952
CHIEF ENGR'S.
OFFICE

GR-2001G
Proposed Fixed Price
Contract for T-2J
Navy Trainer Airplane

To Messrs: Atwood, Dawe, Burton, Houston, Lambeth, Magely, Rice
Shropshire, Cann, Smithson, Taylor, Anspach, Virgin, Gallant

1. This is the initial release of this General Order.

2. All work authorized by this General Order is the responsibility of the
   Los Angeles Plant. Purchase Orders will be issued for necessary interplant
   support.

3. This General Order is issued in anticipation of a Navy production order for
   T-2J airplanes and authorizes:

   a) Engineering development of the Model T-2J airplane with an R-1820
      engine.

   b) Diversion to this General Order of those applicable or common
      materials and supplies terminated from the NA-189 (158 T-28A
      airplanes on Contract AF33 (600)5895) by Government Termination
      Docket Number 31798 (NAA Termination Sales Order Number C-1229).

Approved _J. E. Atwood_

EM/11

RESTRICTED
SECURITY INFORMATION

EXHIBIT 5 - PAGE 148

NORTH AMERICAN AVIATION, INC.

# MASTER CHANGE RECORD

Number: 200-0
Page: 1 o/t

To: Hoffman
From: Chief Engineer's Office

Date: 10-10-52
Revised: 1-14-53

MODEL   T-28B (NA-200)

**-1 Title:** Initiation of T-28B Airplane

*Description of Change:* Proceed with complete engineering design and release for production of a quantity of one hundred seventy three (173) model T-28B airplanes in accordance with NAA Specification NA-52-986, dated 10-31-52, as authorized by General Order NA-200, Supplement #3, dated 10-14-52. These airplanes are covered by Navy contract NOa(S)53-313. Serial numbers for these airplanes are 1 (137638) thru 173 (137810).

C A N C E L L E D - Superseded by MCR T-28B-0.

Initiating Ref.:        Noted
Submittal Ref.:
Final Subm. Ref.:
Acceptance Ref.:
General References:

Interm. Stage
Change Control Letter
Guarant'd Weight Empty Cb'g:
Primary Load Cond. C. G. Cb'g:

Engrg. Complin.:

### Change Effective in Production

| Model | Serial No. | Contract | Spec. | C.C.N. |
|-------|-----------|----------|-------|--------|

> NOTE: This MCR for Contractor information and record purposes only and requires no contractual action. No charges are to be made against this MCR.

---

To:
From:

Date:
Revised:

MODEL



Title:
Description of Change:

Initiating Ref.:
Submittal Ref.:
Final Subm. Ref.:
Acceptance Ref.:
General References:

Interm. Stage
Change Control Letter
Guarant'd Weight Empty Cb'g:
Primary Load Cond. C. G. Cb'g:

Engrg. Complin.:

### Change Effective in Production

| Model | Serial No. | Contract | Spec. | C.C.N. |
|-------|-----------|----------|-------|--------|

EH:pdh

**EXHIBIT 5 - PAGE 149**

DEPARTMENT OF THE NAVY
BUREAU OF AERONAUTICS
WASHINGTON 25, D. C.

Aer-CT-65

D9-A-1
Certified Under
CMP Regulation 3

RESTRICTED
Security Information

Letter of Intent for Contract
NOas 53-313
Appropriation:
See Enclosure (1)

North American Aviation, Inc.
Downey, California

24 SEP 1952        13...113

Encl: (1) Schedule of Supplies and Other Provisions
      (2) Walsh-Healey Poster Form FC-13
      (3) Bureau of Aeronautics Termination Article for Letters of Intent
      (4) Progress Payments Clause for Letters of Intent
      (5) Military Security Requirements Clause
      (6) Authorization and Consent Clause
      (7) Examination of Records Clause
      (8) Publications Contract Requirements, Serial No. 313-53

Sirs:

1. This Letter of Intent signifies the intention of the Department of the Navy to enter into a formal contract with you for the performance of the work and delivery of the supplies described in enclosure (1), in accordance with the delivery requirements established therein. You are hereby authorized to proceed immediately with such work, and to enter into subcontracts and issue purchase orders necessary therefor. You shall obtain the written approval of the cognizant Naval Inspector for all subcontracts and purchase orders hereunder, either individually or in such grouped or summarized form as the Inspector shall approve.

2. If the Walsh-Healey Public Contracts Act (41 U. S. Code 35-45) is applicable to this Letter of Intent you are required to display enclosure (2) in a conspicuous place in your plant.

3. In the event this Letter of Intent is terminated, the Government shall not be obligated to make payment to you pursuant to the provisions of enclosure (3) in an amount in excess of $ 8,000,000.00 (or such other amount as may hereafter be specified in writing by the Contracting Officer of the Bureau of Aeronautics) for costs and any profit which may be allowed hereunder; provided, however, that such limitation does not apply to settlement expenses as described in paragraph 8-402 (b) (2?) of the Armed Services Procurement Regulation. You will not be bound to continue performance under this Letter of Intent if such performance would cause the amount to be expended by you hereunder, together with a reasonable allowance for profit, to exceed such limitation. If at any time you have reason to believe that an increase in such limitation is necessary within the next 60 days, you shall notify the Contracting Officer to that effect, proposing a new limitation figure and giving appropriate supporting data, so that the Contracting Officer may in his discretion increase such limitation. The amount of any progress payments made under this Letter of Intent shall be deducted from any amount payable to you pursuant to the provisions of enclosure (3).

RESTRICTED
Security Information
NAVAER 2728-1 (Revised 6-52)

Unclassified when Sections A, B,
and Enclosure (8) are removed.

EXHIBIT 5 - PAGE 150

NOas 53-313

4. This Letter of Intent is subject to the Renegotiation Act of 1951 (P. L. 9, 82nd Congress) and shall be deemed to contain all the provisions required by Section 104 of said Act. The Contractor (which term as used in this paragraph means the party contracting to furnish the materials or perform the work required by this Letter of Intent), agrees to insert the provisions of this paragraph in all subcontracts as required by Section 104 of the Renegotiation Act of 1951; provided, that the Contractor shall not be required to insert the provisions of this paragraph in any subcontract of a class or type described in Section 106(a) of the Renegotiation Act of 1951.

5. The clauses contained in paragraphs 7-103.8 (entitled "Assignment of Claims"), 7-103.12 (entitled "Disputes"), 7-104.16 (entitled "Gratuities"), 9-102 (entitled "Notice and Assistance Regarding Patent Infringement"), 9-103 (entitled "Reporting of Royalties"), 9-104 (entitled "Filing of Patent Applications"), and 9-202 (entitled "Copyright") of the Armed Services Procurement Regulation, as amended to the date of this Letter of Intent, and the provisions of the enclosures listed on page 1 of this Letter of Intent, other than enclosure (2), are by this reference incorporated herein and made a part hereof.

6. All contract clauses required by statute to be incorporated in contracts for supplies of the kind described in enclosure (1) are by this reference incorporated in this Letter of Intent.

7. Production and furnishing of the classified printed matter, if any, called for by this Letter of Intent are subject to and governed by the provisions of the current edition of "Security Measures for the Protection of Classified Printed Matter During Production" (NAVEXOS P-29), which provisions are hereby incorporated in this Letter of Intent by reference. You shall include a provision identical to this paragraph in all subcontracts which call for the production and furnishing of classified printed matter under this Letter of Intent.

8. You shall prepare and furnish the following: (a) Production Progress Report, DD Form #375, in accordance with instructions set forth in Bureau of Aeronautics Production Division "Field Instruction Manual," and (b) Material Inspection and Receiving Report, DD Form #250, in accordance with instructions set forth in the Administration Manual, Material Inspection Service, USN (NAVEXOS P-129). The edition of "General Specifications for the Inspection of Material", issued by the Department of the Navy, which is current at the date of this Letter of Intent, is by this reference incorporated herein and made a part hereof. To the extent of any inconsistency between "General Specifications for the Inspection of Material" and other provisions of this Letter of Intent, such other provisions shall control.

9. This negotiated Letter of Intent is made pursuant to the provisions of Section 2(c)(1) of the Armed Services Procurement Act of 1947 (P. L. 413, 80th Congress), and any required determination and findings with respect thereto have been made.

NAVAER 2722-2 (Revised 6-52)

EXHIBIT 5 - PAGE 151

NOas 53-313

10.  If the foregoing is acceptable to you, please sign the enclosed two copies of this Letter of Intent and return them to the Bureau of Aeronautics, attention CT-43, within 15 days after receipt of this letter.  Such acceptance will establish this Letter of Intent as a contract on the terms set forth herein.  If this Letter of Intent is not acceptable to you in its present form, you should not sign it, but should return all copies hereof to the Bureau of Aeronautics, attention CT-43, as promptly as possible, and in any event within 15 days after receipt hereof, with a statement of your objections to this letter.  Until both you and the Contracting Officer have unconditionally signed this Letter of Intent, or a revision hereof, the Government will not be under any contractual obligation to you in connection with the work described in this letter.

Very truly yours,

Contracting Officer
Bureau of Aeronautics

ACCEPTED AS OF THE DATE OF THIS LETTER

NORTH AMERICAN AVIATION, INC.
(Name of Contractor)

BY _____

TITLE  J. L. Atwood, President

NAVAER 2722-3 (Revised 6-52)

EXHIBIT 5 - PAGE 152

Page 1 of Enclosure (1)
to Letter of Intent for
Contract NOas 53-313.
Enclosure (1) consists of
3 pages.

R E S T R I C T E D
Security Information

SCHEDULE OF SUPPLIES AND OTHER PROVISIONS

A. Articles to be Furnished.

The articles to be furnished by the Contractor are as follows:

| Item | Article | Quantity |
|------|---------|----------|
| 1 | Design data and drawings in accordance with Addendum No. 568 to Specification SR-6 | |
| 2 | Airplanes, Model T-28, in accordance with Detail Specification SD-494-1 dated 2 September 1952 | 175 |
| 3 | Spare Parts, approximately twenty-four percent (24%) of the total money value of Item 2, to be furnished in accordance with "Spare Parts Provisioning Document for U. S. Air Force and Navy Airframe Production Contracts" approved by Munitions Board 15 December 1949 | |
| 4 | Special Tools and Ground Handling Equipment, approximately one percent (1%) of the total money value of Item 2, to be furnished in accordance with "Special Tools and Ground Handling Equipment Provisioning Document for U. S. Air Force and Navy Production Contracts" approved by Munitions Board 12 October 1950, except that Specification MIL-D-6861 (Aer) dated 1 August 1950 shall apply in lieu of Specification AN-D-17 | |
| 5 | Demonstrations, in accordance with Specification SR-38 as modified by Addendum No. T-28 | |

R E S T R I C T E D
Security Information

EXHIBIT 5 - PAGE 153

Page 2 of Enclosure (1)
to Letter of Intent for
Contract NOas 53-313.
Enclosure (1) consists of
3 pages.

R E S T R I C T E D
Security Information

| Item | Article | Quantity |
|------|---------|----------|
| 6 | Publications, to be furnished in accordance with Publications Contract Requirements, Serial No. 313-53, enclosure (8) | |

Navy serial numbers 137636 through 137810 have been assigned to the aircraft to be furnished under Item 2.

B. Deliveries.

The airplanes to be furnished hereunder shall be delivered in accordance with the following schedule:

| Item | 1953 Aug | Sep | Oct | Nov | Dec | 1954 Jan | Feb | Mar | Apr | May |
|------|------|-----|-----|-----|-----|------|-----|-----|-----|-----|
| 2 | 5 | 10 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |

C. Appropriation.

The appropriation chargeable under this Letter of Intent is as follows:

17X1504.31(53) CARP, Navy (1953 Program
Aircraft Procurement) Bureau Control
No. 10000, Account 31440, Program 110A

D. Office to Make Payments.

The Navy Regional Accounts Office, Eleventh Naval District, San Diego, California, is hereby designated as the office to make the payments provided for in this Letter of Intent, and under any contract superseding this Letter of Intent.

E. Naval Inspector.

The Bureau of Aeronautics Representative, Inglewood, California, is the Naval Inspector having cognisance of this Letter of Intent.

R E S T R I C T E D
Security Information

EXHIBIT 5 - PAGE 154

Case: MDL No. 08-375 JSW Document 54-8 Filed 08/04/11 Page 67 of 27

153864

## Technical Information:

The Contractor agrees to and does hereby grant to the Government, to the full extent of the Contractor's right to do so without payment of compensation to others, the right to reproduce, use and disclose for governmental purposes (including the right to give to foreign governments for their information as the national interest of the United States may demand) all or any part of the reports, drawings, blueprints, data and technical information specified to be delivered by the Contractor to the Government under this contract; provided, however, that nothing contained in this paragraph shall be deemed, directly or by implication, to grant any license under any patent now or hereafter issued to which such technical information does or may hereafter relate.

## Other Provisions:

The clause contained in subparagraph (a) of paragraph 9-103 (entitled "Patent Indemnity") has been omitted with the understanding that the subject matter thereof will be negotiated prior to the execution of a definitive contract. If prior to the execution of a definitive contract, the ASPR is amended to provide patent clause(s) appropriate for the type of item (or components thereof) being procured under this Letter of Intent, such clause(s) will be included in the definitive contract. The definitive contract will also contain the following:

"Contractor certifies that the contract price includes no cost factor to cover contingency of liability or infringement of any patent."

Paragraph 9-107.1 (entitled "Patent Rights") of the Armed Services Procurement Regulation, as amended to the date of this Letter of Intent, is by this reference incorporated herein and made a part hereof. The provisions of such clause are applicable only to the special tools and ground handling equipment and demonstrations being procured under this Letter of Intent.

In subparagraph (c) of the clause entitled "Patent Rights" at the end of subsection (ii) following the words "to which it pertains", add the following:

"and subject to the obligations, if any, in respect of, under all terms and conditions set forth in that agreement known as Cross License Agreement of the Manufacturers Aircraft Association, Inc., in effect as of December 31, 1956 as supplemented by the agreement of September 4th, 1937."

EXHIBIT 5 - PAGE 155

## BUREAU OF AERONAUTICS TERMINATION ARTICLE FOR LETTERS OF INTENT

(a)  Performance of work under this Letter of Intent shall terminate if a definitive contract shall not have been executed by the last day of the twelfth full calendar month after the date hereof, or by the date fixed in any extension hereof, or upon the receipt by you prior thereto of a Notice of Termination from the Government, to the extent and on the date specified in such Notice.

(b)  After termination you shall take such action related to, and necessary and proper for, the termination and settlement of this Letter of Intent, including the termination and settlement of purchase orders and subcontracts and the disposition and preservation of property in which the Government has or may acquire an interest, as the contracting officer may authorize, direct, approve or ratify.

(c)  You and the contracting officer may agree upon the whole or any part of the amount or amounts to be paid to you by reason of the termination of work pursuant hereto, which amount or amounts may include an allowance for profit which is reasonable under all the circumstances, and the Government shall pay the agreed amount or amounts. The Government shall not be obligated to pay to the contractor any amount for anticipatory profits resulting from the termination or cancellation of any subcontract or order.

(d)  In the event of the failure of you and the contracting officer to agree upon the whole amount to be paid to you, the Government, but without duplication of any amounts agreed upon in accordance with paragraph (c), shall pay to you (less amounts due from you) the total (without duplication of any item) of: (i) the cost of the work terminated hereunder; (ii) the cost of action taken by you under paragraph (b) hereof and any other reasonable cost incidental to termination of work under this Letter of Intent, including expenses incidental to the determination of the amount due to you as the result of the termination of work under this Letter of Intent; and (iii) such profit with respect to the terminated work as the contracting officer may find to be reasonable under all circumstances.

(e)  Except for normal spoilage and to the extent that the Government shall have otherwise expressly assumed the risk of loss, there shall be excluded from any amounts otherwise payable to you under paragraphs (c) or (d) all amounts allocable to or payable in respect of property which is destroyed, lost, stolen or damaged so as to become undeliverable prior to the transfer of title to the Government or to a buyer pursuant to paragraph (b), or prior to the 60th day after delivery to the Government of any inventory schedule of such property, whichever shall first occur.

(f)  For the purposes of paragraph (d) hereof, the amount of the payments to be made by the Government to you on account of cost shall be determined in accordance with Section II entitled "Contract Cost Principles" of the Armed Services Procurement Regulation of 1948.

(g)  Nothing herein shall be construed to authorize the allowance of a profit to you if the contracting officer finds that you have delayed the execution of a definitive contract for an unreasonable period without proper cause.

(h)  The term "the contracting officer" means the Chief of the Bureau of Aeronautics or any person designated by him as a contracting officer.

NAVAER 2722-B                        ENCLOSURE (8)

EXHIBIT 5 - PAGE 156

Case MDL No. 875 Document 7776-4 Filed 08/30/11 Page 69 of 77
Case 2:05-cv-08375-PGS-JSW Document 47-8 Filed 02/17/11 Page 39 of 27

NOas 53-313

## BUREAU OF AERONAUTICS TERMINATION ARTICLE FOR LETTERS OF INTENT

(a) Performance of work under this Letter of Intent shall terminate if a definitive contract shall not have been executed by the last day of the twelfth full calendar month after the date hereof, or by the date fixed in any extension hereof, or upon the receipt by you prior thereto of a Notice of Termination from the Government, to the extent and on the date specified in such Notice.

(b) After termination you shall take such action related to, and necessary and proper for, the termination and settlement of this Letter of Intent, including the termination and settlement of purchase orders and subcontracts and the disposition and preservation of property in which the Government has or may acquire an interest, as the contracting officer may authorize, direct, approve or ratify.

(c) You and the contracting officer may agree upon the whole or any part of the amount or amounts to be paid to you by reason of the termination of work pursuant hereto, which amount or amounts may include an allowance for profit which is reasonable under all the circumstances, and the Government shall pay the agreed amount or amounts. The Government shall not be obligated to pay to the contractor any amount for anticipatory profits resulting from the termination or cancellation of any subcontract or order.

(d) In the event of the failure of you and the contracting officer to agree upon the whole amount to be paid to you, the Government, but without duplication of any amounts agreed upon in accordance with paragraph (c), shall pay to you (less amounts due from you) the total (without duplication of any item) of: (i) the cost of the work terminated hereunder; (ii) the cost of action taken by you under paragraph (b) hereof and any other reasonable cost incidental to termination of work under this Letter of Intent, including expenses incidental to the determination of the amount due to you as the result of the termination of work under this Letter of Intent; and (iii) such profit with respect to the terminated work as the contracting officer may find to be reasonable under all circumstances.

(e) Except for normal spoilage and to the extent that the Government shall have otherwise expressly assumed the risk of loss, there shall be excluded from any amounts otherwise payable to you under paragraphs (c) or (d) all amounts allocable to or payable in respect of property which is destroyed, lost, stolen or damaged so as to become undeliverable prior to the transfer of title to the Government or to a buyer pursuant to paragraph (b), or prior to the 60th day after delivery to the Government of an inventory covering such property, whichever shall first occur.

(f) For the purposes of paragraph (d) hereof, the amounts of the payments to be made by the Government to you on account of cost shall be determined in accordance with Section IV, entitled "Contract Cost Principles" of the Armed Services Procurement Regulation of 1948.

(g) Nothing herein shall be construed to authorize the allowance of a profit to you if the contracting officer finds that you have delayed the execution of a definitive contract for an unreasonable period without proper cause.

(h) The term "the contracting officer" means the Chief of the Bureau of Aeronautics or any person designated by him as a contracting officer.

NAVAER 2728-3                    ENCLOSURE (3)

EXHIBIT 5 - PAGE 157

NOas 53-313

## PROGRESS PAYMENTS

(a) The Government will make progress payments from time to time as the work progresses, but not more frequently than once each week, upon the presentation of invoices approved by the Bureau of Aeronautics Representative, showing the cost to the Contractor of materials, inventories, engineering, tooling, and work in process, properly chargeable to this Letter of Intent under generally accepted accounting principles and practices. Such progress payments shall be made in an amount equal to ninety percent (90%) of the amount of such invoices; provided, however, that the aggregate amount of such progress payments shall not exceed $7,200,000.00, and provided further that the Government reserves the right to withhold progress payments if, in the opinion of the Contracting Officer, the Contractor is not making satisfactory progress under this Letter of Intent.

(b) Upon the making of any progress payment under this Letter of Intent, title to all materials, inventories, engineering, tooling and work in process theretofore acquired or produced by the Contractor for the performance of this Letter of Intent and properly charged thereto under generally accepted accounting principles and practices, shall forthwith vest in the Government; and title to all like materials, inventories, engineering, tooling and work in process thereafter acquired or produced by the Contractor for the performance of this Letter of Intent and properly charged thereto under generally accepted accounting principles and practices shall vest in the Government forthwith upon acquisition or production; provided, that nothing herein shall relieve the Contractor or the Government of any of their respective rights or obligations under this Letter of Intent.

(c) It is recognised that property, title to which is or hereafter may become vested in the Government under the provisions of this Letter of Intent, may be (i) incorporated in articles to be furnished hereunder, (ii) disposed of by the Contractor as obsolete, worn out, or damaged, (iii) altered from time to time, or (iv) expended in the production of such articles. To the extent any such property is not incorporated in articles delivered hereunder or disposed of as obsolete, worn out or damaged or expended in the production of such articles, title to such property shall pass to and vest in the Contractor when such property is no longer necessary or useful for the performance of this Letter of Intent, subject, in cases of termination, to the provisions of enclosure (3) hereto.

(d) The Contractor shall maintain adequate accounting control over such property on its books and records.

ENCLOSURE (4)

EXHIBIT 5 - PAGE 158

NOas 53-313

SECTION _____ - MILITARY SECURITY REQUIREMENTS

(a) The provisions of the following paragraphs of this clause shall apply only if and to the extent that this contract involves access to matter classified "Top Secret," "Secret," "Confidential," or "Restricted."

(b) The Contractor agrees to provide and maintain a system of security controls within its or his own organization in accordance with (i) the requirements of the Department of Defense Industrial Security Manual for Safeguarding Classified Matter, dated January 18, 1951, as in effect on date of this contract, which Manual is hereby incorporated by reference and made a part of this contract, and (ii) any amendments to said Manual required by the demands of national security as determined by the Government and made after the date of this contract, notice of which has been furnished to the Contractor.

(c) The Government agrees that it shall indicate when necessary by classification ("Top Secret," "Secret," "Confidential," or "Restricted"), the degree of importance to the national defense of information pertaining to supplies, services, and other matters to be furnished by the Contractor to the Government or the Government to the Contractor, and the Government shall give written notice of such classification to the Contractor and of any subsequent changes thereof. The Contractor is authorized to rely on any letter or other written instrument signed by the Contracting Officer changing the classification of matter.

(d) Designated representatives of the Government responsible for inspection pertaining to industrial plant security shall have the right to inspect at reasonable intervals the procedures, methods, and facilities utilized by the Contractor in complying with the requirements of the terms and conditions of this clause. Should the Government, through its authorized representative, determine that the Contractor's security methods, procedures, or facilities do not conform to such requirements, it shall submit a written report to the Contractor advising him of the proper action to be taken in order to effect compliance with such requirements.

(e) Any disagreement concerning a question of fact arising under this clause shall be considered a dispute within the meaning of the clause of this contract entitled "Disputes."

(f) The Contractor agrees to insert, in all subcontracts hereunder which involves access to classified matter, provisions which shall conform substantially to the language of this clause, including this paragraph (f).

NAVAER 2779 (Nov 11-51)

ENCLOSURE (5)

EXHIBIT 5 - PAGE 159

SECTION    AUTHORIZATION AND CONSENT

NObs 53-313

The Government hereby gives its authorization and consent (without prejudice to its rights of indemnification, if such rights are provided for in this contract) for all use and manufacture, in the performance of this contract or any part hereof, or any amendment hereto or any subcontract hereunder (including any lower-tier subcontract), of any patented invention (i) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract; or (ii) utilized in the machinery, tools or methods the use of which necessarily results from compliance by the Contractor or the using subcontractor with (a) specifications or written provisions now or hereafter forming a part of this contract, or (b) specific written instructions given by the Contracting Officer directing the manner of performance.

NAVAER 3451-166    ENCLOSURE (6)

EXHIBIT 5 - PAGE 160

Case: MDL No. 875 Document 7776-4 Filed 08/30/11 Page 73 of 77

NOas 53-313

## EXAMINATION OF RECORDS CLAUSE

(a) The Contractor agrees that the Comptroller General of
the United States or any of his duly authorized representatives
shall, until the expiration of three years after final payment
under this contract, have access to and the right to examine
any directly pertinent books, documents, papers, and records
of the Contractor involving transactions related to this contract.

(b) The Contractor further agrees to include in all his
subcontracts hereunder a provision to the effect that the sub-
contractor agrees that the Comptroller General of the United States
or any of his duly authorized representatives shall, until the
expiration of three years after final payment under this con-
tract with the Government, have access to and the right to examine any
directly pertinent books, documents, papers, and records of
such subcontractor involving transactions related to the sub-
contract. The term "subcontract" as used in this clause ex-
cludes (i) purchase orders not exceeding $1,000 and (ii) sub-
contracts or purchase orders for public utility services at rates
established for uniform applicability to the general public.

ENCLOSURE (7)

**EXHIBIT 5 - PAGE 161**

NOas 53-313

Publications Contract Requirements Serial No: 313-53

R E S T R I C T E D
Security Information

NOas 53-313

Technical Publications for T-28B Aircraft (North American)

To Be Furnished: To cover Model T-28B Aircraft:

1. Reproducible copies each of the following:

    (a) Flight Handbook
    (b) Handbook of Maintenance Instructions
    (c) Revision Pages to AN01-60FU-3, Handbook of Structural Repair
    (d) Illustrated Parts Breakdown
    (e) Supplemental Handbook of Operation, Maintenance and Repair Instructions
        with Parts Breakdown, if required
    (f) Revision Pages to each of the above to keep them current.

2. Fifty (50) copies of a Handbook of Inspection Requirements.

3. Copies of Temporary Flight and Maintenance Handbooks, if required.

4. A list of Contractor Furnished Equipment and supplements to keep it current.

Description and Specifications:

1. The reproducible copies shall be prepared in accordance with Specifications
MIL-H-5474A, MIL-H-7863(Aer) and the following:

    (a) Flight Handbook - MIL-H-7700 with Bureau of Aeronautics Standard Exceptions
        dated 1 April 1952 and Specific Exceptions for T28-B aircraft as follows:

        3.1.2.13.2.6 - CLIMB CHART - Substitute "Maximum Cruise Power" for
                "Military Power".

        3.1.2.13.3.5 - Humidity Correction for Take-Off - Substitute "Power
                Dificiency" for "Maximum Manifold Pressure".

        3.1.2.13.3.6 - Take-Off - Add additional correction Grid for Power
                Deficiency. Chart required for distance over 50 ft.
                obstacle. Include correction for runway slope.

        3.1.2.13.3.6.1 Land Based - Insert between 2nd and 3rd sentences: "A cor-
                rection Grid for altitude effects due to humidity shall be
                attached to the Density Altitude scale (ORDINATE)." In
                5th sentence, substitute "Deficiency" for "Loss due to
                Humidity".

R E S T R I C T E D
Security Information

- 1 -

ENCLOSURE (8)

EXHIBIT 5 - PAGE 162

NOas 53-313

R E S T R I C T E D
Security Information

3.1.2.13.3.8 - Nautical Miles Per Pound - Power defined by NPM and BMEP with corresponding MAP limits for those aircraft having BMEP Gages.

Add: Critical Field Lengths Curve - Similar to take-off curve but indicating critical conditions for power failure and corrective action.

Include sufficient data as necessary to describe operation in Manual Lean as recommended by engine manufacturer.

(b) Handbook of Maintenance Instructions - MIL-H-5473A, except that the pertinent Handbook of Engine Service Instructions shall be referenced but not duplicated.

(c) Revision Pages to AN01-60FG-3, same specification as the basic handbook.

(d) Illustrated Parts Breakdown-MIL-B-5005A and proposed amendment dated 24 November 1951.

(e) Supplemental Handbook of Operation, Maintenance & Repair Instructions with Parts Breakdown - MIL-H-7107(Aer). This handbook shall contain any data (except Appendix I of the Flight Handbook) which must be omitted from the Flight, Maintenance, Repair & Inspection Handbooks & Parts Breakdown by reason of higher security classification.

(f) Revisions shall be prepared in accordance with the same specifications as the handbooks they revise. Revisions shall be supplied for (a), (b), (c) and (d) above to cover all changes during the life of the contract. Revisions shall be supplied for (e) above for the life of the contract or until the supplemental handbook is integrated with (a), (b), (c) and (d).

2. The Handbook of Inspection Requirements shall be prepared in accordance with Specification MIL-H-5096A. Copies shall conform in general to MIL-H-5474A, shall be typewritten, unjustified, shall be reproduced by ozalid or similar method, shall be bound, dated and properly identified on the cover.

3. Temporary Handbooks may be prepared in any form suitable to the contractor's facilities (Ozalid, photostat, etc.). They shall be advance copies of the Flight Handbook (including Operating Data) and Maintenance Handbook to be supplied in reproducible form under the contract and shall contain all information, including illustrations, required to operate and maintain the aircraft. They shall be in loose-leaf form, bound and dated. Revision sheets shall be supplied to keep the Temporary Handbooks correct and up to date until printed copies of the service handbooks are available.

4. The List of Contractor Furnished Equipment and Supplements shall be prepared in accordance with Specification MIL-L-7976(Aer).

R E S T R I C T E D
Security Information

- 2 -

ENCLOSURE (8)

EXHIBIT 5 - PAGE 163

RESTRICTED
Security Information

NOas 53-313

Publications Contract Requirements Serial No: 313-53

Deliveries:

1. Publications 1 and 4 shall be packed in accordance with Specification MIL-H-5474A and delivered, all transportation charges prepaid by the contractor, to the Department of the Navy, Bureau of Aeronautics, Washington 25, D. C., Attention: PB-22.

2. Publications 1(a) through 1(e) shall be delivered at the Bureau of Aeronautics not later than 30 days before delivery of the first service aircraft. For the purpose of this section, the "first service aircraft" is defined as the first aircraft on the contract to be delivered for regular service operation, as distinguished from operation for demonstration, test or trials.

3. Revisions 1(f) shall be delivered at 90 day intervals, beginning 90 days from date of delivery of the basic publications, or more frequently if considered necessary by the Bureau of Aeronautics or by the contractor. If no revisions are necessary at the end of any 90 day interval, a negative report shall be furnished in lieu thereof. Final revisions shall be delivered within 90 days after delivery of the last aircraft on the contract. In lieu of a final revision, the contractor may submit a statement that no further revision is necessary, and if this statement is acceptable to the Bureau of Aeronautics no further revisions will be required.

4. A maximum of 30 copies of the Handbook of Inspection Requirements shall be supplied to the Bureau of Aeronautics Representative at the contractor's plant for placing one copy in each of the first 10 aircraft and in alternate aircraft thereafter, upon delivery. Twenty (20) copies shall be delivered, concurrent with delivery of the first aircraft, to destinations to be furnished by the Bureau of Aeronautics.

5. Temporary Flight and Maintenance Handbooks shall be delivered if any aircraft are delivered to the government prior to delivery of the first service aircraft. Six (6) copies of each handbook shall be furnished with the first such aircraft and one copy each with any additional such aircraft. Two copies of all Temporary Handbooks and revision sheets furnished shall be delivered to the Bureau of Aeronautics, Attention: PB-22, concurrently with delivery of the Temporary Handbooks in the Aircraft.

6. Basic List of Contractor Furnished Equipment shall be delivered at least 10 days before the Provisioning Meeting for the aircraft. Supplements shall be delivered on the first day of the month following the date of each definitely established change in the list, for the life of the contract.

Inspection and Acceptance: Preliminary inspection of publications will be made by the cognizant Naval Inspector; final inspection and acceptance will be made by the Publications Division, Bureau of Aeronautics.

Invoices: Invoices showing the contract number will be submitted in quadruplicate via the cognizant Naval Inspector to the Department of the Navy, Bureau of Aeronautics, Attention: CT-14, Washington 25, D. C., for certification as to receipt and acceptance and for transmittal to cognizant U.S. Navy Regional Accounts Office.

RESTRICTED
Security Information

- 3 -

ENCLOSURE (8)

EXHIBIT 5 - PAGE 164

NOas 53-313

Publications Contract Requirements Serial No: 313-53

**R E S T R I C T E D**
Security Information

The contract price includes no compensation to the contractor for any pages which he is required to furnish to keep the Handbooks current. If such pages are furnished the contractor shall submit cost proposals therefor at intervals not to exceed six (6) months and an equitable adjustment of the contract price shall be made. Any disagreement between the contractor and the Government concerning such an adjustment shall be considered a dispute concerning a question of fact within the meaning of General Provision No. 12 of this contract, entitled "Disputes."

- 4 -

**EXHIBIT 5 - PAGE 165**