ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-04327-RS

Dennis v. Bath Iron Works Corporation et al
Assigned to: Hon. Richard Seeborg
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 08/30/2011
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Ronald Dennis**                    represented by    **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
Novato, CA 94948-6169
(415) 898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bath Iron Works Corporation**

**Defendant**

**Boeing Company, The**

**Defendant**

**General Electric Company**

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**Lockheed Martin Corporation**

<u>Defendant</u>

**Todd Pacific Shipyards Corporation**

<u>Defendant</u>

**Todd Shipyards Corporation**

<u>Defendant</u>

**United Technologies Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/30/2011 | 6 | Declination to Proceed Before a U.S. Magistrate Judge by Ronald Dennis. (gba, COURT STAFF) (Filed on 8/30/2011) (Entered: 08/31/2011) |
| 08/30/2011 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 12/8/2011. Case Management Conference set for 12/15/2011 10:00 AM in Courtroom 3, 17th Floor, San Francisco. (gba, COURT STAFF) (Filed on 8/30/2011) (Entered: 08/31/2011) |
| 08/30/2011 | 4 | Summons Issued as to Bath Iron Works Corporation, Boeing Company, The, General Electric Company, Huntington Ingalls Incorporated, Lockheed Martin Corporation, Todd Pacific Shipyards Corporation, Todd Shipyards Corporation, United Technologies Corporation. (gba, COURT STAFF) (Filed on 8/30/2011) (Entered: 08/31/2011) |
| 08/30/2011 | 3 | Certificate of Interested Entities by Ronald Dennis (gba, COURT STAFF) (Filed on 8/30/2011) (Entered: 08/31/2011) |
| 08/30/2011 | 2 | NOTICE of Tag Along Action by Ronald Dennis (gba, COURT STAFF) (Filed on 8/30/2011) (Entered: 08/31/2011) |
| 08/30/2011 | 1 | COMPLAINT for Asbestos Personal Injury Products Liability; Demand for Jury Trial against Bath Iron Works Corporation, Boeing Company, The, General Electric Company, Huntington Ingalls Incorporated, Lockheed Martin Corporation, Todd Pacific Shipyards Corporation, Todd Shipyards Corporation, United Technologies Corporation (Filing fee $ 350.00, receipt number 34611064109). Filed by Ronald Dennis. (Attachments: # 1 Civil Cover Sheet) (gba, COURT STAFF) (Filed on 8/30/2011) (Entered: 08/31/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/01/2011 09:52:45 | | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-04327-RS |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

RONALD DENNIS,

        Plaintiff,

vs.

BATH IRON WORKS CORPORATION,
THE BOEING COMPANY, GENERAL
ELECTRIC COMPANY, HUNTINGTON
INGALLS INCORPORATED (FKA
NORTHROP GRUMMAN
SHIPBUILDING, INC.), LOCKHEED
MARTIN CORPORATION, TODD
PACIFIC SHIPYARDS CORPORATION,
TODD SHIPYARDS CORPORATION,
UNITED TECHNOLOGIES
CORPORATION,

        Defendants.

No.

**CV 11 4327**

COMPLAINT FOR ASBESTOS
PERSONAL INJURY/ PRODUCTS
LIABILITY; DEMAND FOR JURY TRIAL

*Left margin:* BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

## I.

## PARTIES

1.    Plaintiff in this action, RONALD DENNIS, has sustained asbestos-related lung

injuries as a result of his inhalation of asbestos fibers through his occupational exposure to

asbestos.

2.    Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos

fibers released during the handling of asbestos-containing products at Plaintiff's, Plaintiff's

1 father's, Alonzo Dennis's, and Plaintiff's brothers', Wayne Dennis's and William Dennis's,
2 jobsites.

3     3.     The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit**
4 **A**, attached to Plaintiff's complaint and incorporated by reference herein.

5     4.     All of Plaintiff's claims arise out of repeated exposure to asbestos-containing
6 products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or
7 maintained by defendants at Plaintiff's, Plaintiff's father's and Plaintiff's brothers' worksites, over
8 a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the
9 Plaintiff, resulting in cumulative, progressive, incurable lung diseases.

10     5.     Plaintiff claims damages for an asbestos-related disease arising from a series of
11 occurrences not dependent on Plaintiff's, Plaintiff's father's and Plaintiff's brothers' worksite but
12 on the fact that asbestos-containing products, when handled in the manner in which they were
13 intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung
14 disease.

15     6.     As used herein, Plaintiff shall mean the above-captioned asbestos-injured
16 Plaintiff.

17     7.     Plaintiff is informed and believes, and thereon alleges that at all times herein
18 mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole
19 proprietorships and/or other business entities organized and existing under and by virtue of the
20 laws of the State of California, or the laws of some other state or foreign jurisdiction, and that
21 said defendants, and each of them, were and are authorized to do and are doing business in the
22 State of California, and that said defendants have regularly conducted business in the County of
23 San Francisco, State of California.

24 **II.**

25 **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

26     8.     Jurisdiction: Plaintiff RONALD DENNIS is a citizen of the State of Georgia.

27     Defendants are each corporations incorporated under the laws of and having its principal
28 places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| BATH IRON WORKS CORPORATION | Maine |
| THE BOEING COMPANY | Delaware/Illinois |
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia |
| LOCKHEED MARTIN CORPORATION | Maryland |
| TODD PACIFIC SHIPYARDS CORPORATION | Delaware/Washington |
| TODD SHIPYARDS CORPORATION | Delaware/Washington |
| UNITED TECHNOLOGIES CORPORATION | Delaware/Pennsylvania |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9. Venue / Intradistrict Assignment. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF RONALD DENNIS COMPLAINS OF DEFENDANTS BATH IRON WORKS CORPORATION, THE BOEING COMPANY, GENERAL ELECTRIC COMPANY, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), LOCKHEED MARTIN CORPORATION, TODD PACIFIC SHIPYARDS CORPORATION, TODD SHIPYARDS CORPORATION, UNITED

///

1  TECHNOLOGIES CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF

2  THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

3       10.     At all times herein mentioned, each of the named defendants was the successor,

4  successor in business, successor in product line or a portion thereof, assign, predecessor,

5  predecessor in business, predecessor in product line or a portion thereof, parent, holding

6  company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

7  or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

8  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

9  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

10  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

11  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

12  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

13  asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

14  called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

15  conduct of each successor, successor in business, successor in product line or a portion thereof,

16  assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

17  venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

18  entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

19  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

20  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

21  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

22  products containing asbestos. The following defendants, and each of them, are liable for the acts

23  of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

24  destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

25  of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

26  ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each

27  such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

28  ///

1    role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

2    originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| THE BOEING COMPANY | BOEING NORTH AMERICAN, INC. |
| | BOECON CORPORATION |
| | McDONNELL DOUGLAS CORPORATION |
| | DOUGLAS AIRCRAFT CO. |
| | COLLINS RADIO COMPANY |
| | ROCKWELL INTERNATIONAL CORPORATION |
| | ROCKWELL INTERNATIONAL CORPORATION, |
| | MEASUREMENT AND FLOW CONTROL DIVISION |
| | AUTONETICS, INC. |
| | ROCKETDYNE |
| | ROCKWELL MANUFACTURING COMPANY |
| | ROCKWELL-STANDARD, INC. |
| | ROCKWELL SPRING & AXLE CO. |
| | ROCKWELL SPRING & AXLE CO., |
| | TIMKEN-DETROIT AXEL DIVISION |
| | NORTH AMERICAN ROCKWELL |
| | NORTH AMERICAN AVIATION, INC. |
| | NAVION |
| | VERTOL CORPORATION |
| | BOEING VERTOL COMPANY |
| | BOEING AIRPLANE COMPANY |
| | STEARMAN AIRCRAFT COMPANY |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| HUNTINGTON INGALLS | AVONDALE INDUSTRIES, INC. |
| INCORPORATED | AVONDALE SHIPYARDS, INC. |
| (FKA NORTHROP | CONTINENTAL MARITIME INDUSTRIES, INC. |
| GRUMMAN SHIPBUILDING, INC.) | EASTERN IDAHO CONSTRUCTION COMPANY |
| | INGALLS SHIPBUILDING, INC. |
| | NEWPORT NEWS SHIPBUILDING AND DRY DOCK |
| | COMPANY |
| | NORTH CAROLINA SHIPBUILDING |
| | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
| | SERVICE ENGINEERING INDUSTRIES, INC. |
| LOCKHEED MARTIN CORPORATION | LOCKHEED CORPORATION |
| | LOCKHEED MISSILES & SPACE CO., INC. |
| | LOCKHEED AIRCRAFT CORPORATION |
| | LOCKHEED PROPULSION COMPANY |
| | GLENN L. MARTIN AIRCRAFT COMPANY |
| | LOCKHEED MARTIN TACTICAL SYSTEMS, INC. |
| | LORAL CORPORATION |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION<br>SEATTLE-TACOMA SHIPBUILDING CORP. |
| TODD PACIFIC SHIPYARDS<br>CORPORATION | TODD SHIPYARDS CORPORATION |
| UNITED TECHNOLOGIES<br>CORPORATION | UNITED AIRCRAFT CORPORATION<br>UNITED AIRCRAFT & TRANSPORT CORPORATION<br>PRATT & WHITNEY<br>HAMILTON STANDARD CO.<br>SIKORSKY AIRCRAFT CORP. |

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons." In part, and without limitation as to other defendants, defendants BATH IRON WORKS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA

1    NORTHROP GRUMMAN SHIPBUILDING, INC.), TODD PACIFIC SHIPYARDS

2    CORPORATION and TODD SHIPYARDS CORPORATION, manufactured, modified, serviced

3    and/or repaired asbestos-containing ships and vessels.

4       13.   Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

5    exercise due care in the pursuance of the activities mentioned above and defendants, and each of

6    them, breached said duty of due care.

7       14.   Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

8    have known, and intended that the aforementioned asbestos and products containing asbestos and

9    related products and equipment, would be transported by truck, rail, ship, and other common

10   carriers, that in the shipping process the products would break, crumble, or be otherwise

11   damaged; and/or that such products would be used for insulation, construction, plastering,

12   fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

13   limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

14   breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the

15   release of airborne asbestos fibers, and that through such foreseeable use and/or handling

16   "exposed persons," including Plaintiff herein, and Plaintiff's father and Plaintiff's brothers, would

17   use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging,

18   products, environment, and clothing of persons working in proximity to said products, directly or

19   through reentrainment.

20       15.   Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-

21   containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

22   exposure to asbestos and asbestos-containing products is on current information as set forth at

23   various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and

24   incorporated by reference herein.

25       16.   As a direct and proximate result of the acts, omissions, and conduct of the

26   defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure

27   to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

28   ///

1 || or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and
2 || incorporated by reference herein.

3       17.    Plaintiff is informed and believes, and thereon alleges, that progressive lung
4 || disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
5 || without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
6 || asbestos and asbestos-containing products over a period of time.

7       18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-
8 || containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-
9 || containing products presented risk of injury and/or disease.

10      19.    As a direct and proximate result of the aforesaid conduct of defendants, their
11 || ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,
12 || permanent injuries and/or future increased risk of injuries to their persons, body and health,
13 || including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and
14 || emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to
15 || Plaintiff's general damage.

16      20.    As a direct and proximate result of the aforesaid conduct of the defendants, their
17 || "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur
18 || in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays
19 || and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this
20 || time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost
21 || thereof is ascertained.

22      21.    As a further direct and proximate result of the said conduct of the defendants,
23 || their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature
24 || and extent of which are not yet known to Plaintiff; and leave is requested to amend this
25 || complaint to conform to proof at the time of trial.

26      22.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
27 || directors and managing agents participated in, authorized, expressly and impliedly ratified, and
28 || had full knowledge of, or should have known of, each of the acts set forth herein.

1     23.    Defendants, their "alternate entities," and each of them, are liable for the

2 fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

3 and each defendant's officers, directors and managing agents participated in, authorized,

4 expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

5 each of their ALTERNATE ENTITIES as set forth herein.

6     24.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

7 and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious

8 disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of

9 example and by way of punishing said defendants, seeks punitive damages according to proof.

10    WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

11 each of them, as hereinafter set forth.

12
### SECOND CAUSE OF ACTION
(Products Liability)

13

14    AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

15 ACTION FOR PRODUCTS LIABILITY, PLAINTIFF RONALD DENNIS COMPLAINS OF

16 DEFENDANTS BATH IRON WORKS CORPORATION, THE BOEING COMPANY,

17 GENERAL ELECTRIC COMPANY, HUNTINGTON INGALLS INCORPORATED (FKA

18 NORTHROP GRUMMAN SHIPBUILDING, INC.), LOCKHEED MARTIN CORPORATION,

19 TODD PACIFIC SHIPYARDS CORPORATION, TODD SHIPYARDS CORPORATION,

20 UNITED TECHNOLOGIES CORPORATION, THEIR "ALTERNATE ENTITIES," AND

21 EACH OF THEM, AS FOLLOWS:

22     25.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

23 allegations contained in each paragraph of the First Cause of Action herein.

24     26.    Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended

25 that the above-referenced asbestos and asbestos-containing products would be used by the

26 purchaser or user without inspection for defects therein or in any of their component parts and

27 without knowledge of the hazards involved in such use.

28 ///

1    27.    Said asbestos and asbestos-containing products were defective and unsafe for their
2  intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.
3  The defect existed in the said products at the time they left the possession of defendants, their
4  "alternate entities," and each of them. Said products did, in fact, cause personal injuries,
5  including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff
6  herein,and Plaintiff's father and Plaintiff's brothers, while being used in a reasonably foreseeable
7  manner, thereby rendering the same defective, unsafe and dangerous for use.

8    28.    "Exposed persons" did not know of the substantial danger of using said products.
9  Said dangers were not readily recognizable by "exposed persons." Said defendants, their
10  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
11  which Plaintiff and others similarly situated were exposed.

12    29.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
13  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
14  sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,
15  marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
16  and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
17  did so with conscious disregard for the safety of "exposed persons" who came in contact with
18  said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
19  ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
20  death resulting from exposure to asbestos or asbestos-containing products, including, but not
21  limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part,
22  from scientific studies performed by, at the request of, or with the assistance of, said defendants,
23  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
24  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

25    30.    On or before 1930, and thereafter, said defendants, their ALTERNATE
26  ENTITIES and each of them, were aware that members of the general public and other "exposed
27  persons", who would come in contact with their asbestos and asbestos-containing products, had
28  no knowledge or information indicating that asbestos or asbestos-containing products could

1  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

2  members of the general public and other "exposed persons", who came in contact with asbestos

3  and asbestos-containing products, would assume, and in fact did assume, that exposure to

4  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

5  hazardous to health and human life.

6        31.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

7  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

8  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

9  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

10  asbestos-containing products without attempting to protect "exposed persons" from or warn

11  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

12  asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn

13  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

14  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

15  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

16  and suppressed said knowledge from "exposed persons" and members of the general public, thus

17  impliedly representing to "exposed persons" and members of the general public that asbestos and

18  asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their

19  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

20  representations with the knowledge of the falsity of said implied representations.

21        32.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

22  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

23  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

24  manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

25  sale, inspection, installation, contracting for installation, repair, marketing, warranting,

26  rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-

27  containing products. In pursuance of said financial motivation, said defendants, their

28  ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed

1  persons" and in fact were consciously willing and intended to permit asbestos and asbestos-
2  containing products to cause injury to "exposed persons" and induced persons to work with and
3  be exposed thereto, including Plaintiff.

4      33.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE
5  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
6  products to be safe for their intended use but that their asbestos and asbestos-containing products,
7  created an unreasonable risk of bodily harm to exposed persons.

8      34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
9  and various asbestos-containing products manufactured, fabricated, inadequately researched,
10 designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
11 for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
12 marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
13 aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
14 cannot identify precisely which asbestos or asbestos-containing products caused the injuries
15 complained of herein.

16     35.    Plaintiff relied upon defendants', their "alternate entities'", and each of their
17 representations, lack of warnings, and implied warranties of fitness of asbestos and their
18 asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has
19 been injured permanently as alleged herein.

20     36.    As a direct and proximate result of the actions and conduct outlined herein,
21 Plaintiff has suffered the injuries and damages previously alleged.

22     WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
23 ENTITIES, and each of them, as hereinafter set forth.

24 **IV.**

25 **PRAYER**

26     WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
27 ENTITIES, and each of them in an amount to be proved at trial, as follows:

28     (a)    For Plaintiff's general damages according to proof;

1      (b)    For Plaintiff's loss of income, wages and earning potential according to proof;

2      (c)    For Plaintiff's medical and related expenses according to proof;

3      (d)    For Plaintiff's cost of suit herein;

4      (e)    For exemplary or punitive damages according to proof;

5      (f)    For damages for fraud according to proof; and

6      (g)    For such other and further relief as the Court may deem just and proper, including

7      costs and prejudgment interest.

8

9  Dated: 8/28/11                  BRAYTON❖PURCELL LLP

10

11                              By:

12                                 David R. Donadio
                                 Attorneys for Plaintiff

13

14

15                       JURY DEMAND

16  Plaintiff hereby demands trial by jury of all issues of this cause.

17

18  Dated: 5/28/11                  BRAYTON❖PURCELL LLP

19

20                              By:

21                                 David R. Donadio
                                 Attorneys for Plaintiff

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1 | EXHIBIT A

2 | Plaintiff: RONALD DENNIS

3

4 | Plaintiff's injuries: Plaintiff was diagnosed with lung cancer on or about July 2011, and with

5 | asbetsosis on or about April 2011.

6

7 | Retirement Status:

8 | Plaintiff retired from his last place of employment at regular retirement age. He has

9 | therefore suffered no disability from his asbestos-related disease as "disability" is defined in

10 | California Code of Civil Procedure § 340.2.

11

12 | Defendants: Plaintiff contends that the asbestos-containing products to which he was or may

13 | have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by

14 | Defendants. Plaintiff's exposure to asbestos occurred at the following times and places, and

15 | involved exposure to dust created by the contractors and the products of the entities listed below.

16 | The exposure includes, but is not limited, to the following presently known contractors and the

17 | manufacturers and distributors of asbestos-containing products:

18

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Self employment | Client's home Various locations in Southern California | Automobile Mechanic | 1966 - 1994 |
| U.S. Air Force | U.S. Air Force Bunker Hill AFB Peru, IN | Freight Specialist | 7/1966- 3/1967 |
| | Naval Construction Battalion Center Port Hueneme, CA | | 1967 (3 months) |

26 | ///

27 | ///

28 | ///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | U.S. Air Force Saigon, AFB | Freight Specialist | 3/7/1967 - 1968 (approx. 1 year) |
| | Cam Ranh Bay, Vietnam | | March 1967 (Approx. 6 months) |
| | U.S. Air Force Tan Son Nhut AFB Saigon, Vietnam | Freight Specialist | 1968 - 1969 (approx. 1 year) |
| U.S. Air Force | U.S. Air Force Norton AFB San Bernardino, CA | Freight Specialist | 1969 - 1970 |
| James J. Kirst Kirst Const. Co. 836 W. Woodbury Rd. Altadena, CA 91001 | Residential homes Chino, CA | Laborer | 4/1970 - 6/1970 |
| Bridgestone Americas Tire Operations LLC/% Jim Southerland Tax Department 535 Marriott Drive Nashville, TN 37214-5092 | Firestone Tire & Rubber Albany, GA | Tire Builder | 4/1973 - 6/1973 |
| U.S. Air Force | U.S. Air Force Chanute AFB, Rantoul, IL | Trainee | 10/1973-12/1973 |
| U.S. Air Force | U.S. Air Force Norton AFB San Bernardino, CA | Aircraft Mechanic | 11/13/1973 - 1/1978 |
| Kaiser Steel Resources Inc & Subsidiaries 3633 E Inland Empire Blvd Ste 850 Ontario, CA 91764-4922 | Kaiser Steel Various locations, including blast and open hearth furnaces, soaking pits, and coke ovens Fontana, CA | Crane Operator | (one year) |
| U.S. Department of Defense | Long Beach Naval Shipyard Long Beach, CA | Laborer (Supervisor) | 1981 - 1982 |
| | Various Naval Vessels including but not limited to BELLEAU WOOD (LHA-3) | | |
| | GRIDLEY (DLG-21) | | |

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense (cont'd.) | Long Beach Naval Shipyard Long Beach, CA | Laborer (Supervisor) | 1981 - 1982 |
| | NEW JERSEY (BB-62) | | |
| | OGDEN (LDP-5) | | |
| | PELELIU (LHA-5) | | |
| | SCHOFIELD (FFG-3) | | |
| | LONG BEACH (CGLN-160) | | |
| | TICONDEROGA (CV-14) | | |
| | KEARSARGE (CV-33) | | |
| U.S. Air Force (Reserves) | U.S. Air Force March AFB (Inside Shop) Edgemont/Moreno Valley/Riverside, CA | Aircraft Mechanic | 1984 - 1986 |
| | U.S. Air Force Norton AFB San Bernardino, CA | | (once a month for 2-3 months) |
| Lockheed Martin Aeronautical Systems 6801 Rockledge Dr. Bethesda, MD 20817 | Lockheed Aircraft Corp. Ontario, CA | Structural Mechanic | 1986 - 1988 |
| Sts. Services Inc. 2000 NE Jensen Beach Blvd. Jensen Beach, FL 34957 | Unknown Aircraft Repair Facility Birmingham, AL | Repairman | 1989 - 1990 |

PARA-OCCUPATIONAL EXPOSURE:

    Plaintiff lived with his father, insulator Alonzo Wayne Dennis, deceased, from his birth in 1948 until plaintiff left home in 1966. Plaintiff also lived with his brother insulator Wayne Dennis, deceased, c/o Paul & Hanley, from his birth in 1948 until Wayne left home in 1957. Plaintiff lived with his brother insulator William Dennis, deceased, formerly c/o Brayton◆Purcell, LLP, until William left home in approximately 1963, and then again between 1970 and 1973, on Rockview Drive, in Garden Grove, California.

    Plaintiff's father and brothers Wayne and William worked as insulators at Long Beach Naval Shipyard, the father from 1952; Wayne from 1955 and William from 1959. All three men wore their own work clothes home and drove in the family car to and from work. They returned home with insulation dust on their clothing and regularly sat in the living room still wearing dusty work clothes. Plaintiff's mother shook out and laundered the work clothes in the house.

Plaintiff's father's, Alonzo Dennis's, work history is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Long Beach Naval Shipyard Long Beach, CA | Long Beach Naval Shipyard Long Beach, CA | Insulator | 1952 - 1963 |

Plaintiff's brother Wayne Dennis's work history is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Long Beach Naval Shipyard Long Beach, CA | Long Beach Naval Shipyard Long Beach, CA | Insulator | 1955 - 1957 |

Plaintiff's brother William Dennis's work history is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| United States Government | Long Beach Naval Shipyard Long Beach, CA | Insulator | 9/2/1959 - 1963 |
| | Long Beach Naval Shipyard shop | | 1959-1960 |
| | COONTZ (DLG-9) | | 9/2/1959 - 1963 |
| | KEARSARGE (CV-33) | | |
| | CHEVALIER (DD-805) | | |
| | ROCHESTER (CA-124) | | 1960s (Approx. 1 month) |
| | THETIS BAY (CVE-90) | | Late 1950s or Early 1960s (Approx. 2 weeks)(Approx. 2 weeks |
| | HORNET (CVS-12) | | Early 1960s (Approx. 1 month) |
| | TRATHEN (DD-530) | | 1959-1963 |
| | WADDELL (DDG-24) | | |
| | HIGBEE (DD-806) | | |
| | HULL (DD-945) | | Early 1960s |

18
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| United States Government (cont'd.) | Long Beach Naval Shipyard Long Beach, CA | Insulator | 9/2/1959 - 1963 |
| | MCKEAN (DD-784) | | Early 1960s (Approx. 3 months) |
| | COLLETT (DD-730) | | 1960s |
| | EVERSOLE (DD-789) | | |
| | MADDOX (DD-731) | | |
| | MORTON (DD-948) | | |
| | OZBOURN (DD-846) | | |
| | TAUSSIG (DD-746) | | |
| | EVERETT F. LARSON (DD-830) | | 10/1962 |
| | CATAMOUNT (LSD-17) | | 1/1962 (Approx. 2 weeks) |
| | BRONSTEIN (DE-1037) | | Early 1970s |
| | CAYUGA (LST-1186) | | Early 1970s |
| | FLETCHER (DD-445) | | Early 1970s |
| | TICONDEROGA (CV-14) | | 1970 |

Automobile Repair:

Plaintiff recalls performing brake, clutch, and engine rebuild work on his personal vehicles from approximately the mid-1960s to the late 1980s. Plaintiff performed this work in the garage or in his yard, at his various residences, including in Anaheim and Garden Grove, California. Plaintiff mostly removed original, factory installed gaskets during engine rebuilds. Most of the head gaskets plaintiff used in the engine rebuilds were original equipment. When he pulled the head off, he knew that it has never been removed previously because the valve covers had never been removed. When performing brake jobs, plaintiff would remove the old drum brakes, pull all parts out from everything inside the hub including the wheel cylinders, use an air compressor to blow out the dust and put the new brake shoes on.

Plaintiff purchased all of his vehicles used. Plaintiff purchased all asbestos-containing replacement parts from NAPA AUTO PARTS (GENUINE PARTS COMPANY ), Rialto, California; FIRESTONE AUTO PARTS (BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC), Anaheim, California; KRAGEN AUTO PARTS (CSK AUTO, INC.), San Bernardino, California; CHIEF AUTO PARTS (AUTOZONE WEST, INC.), San Bernardino, California; and brake parts, including brake linings, from an unknown CHEVROLET (GENERAL MOTORS CORPORATION) dealership in San Bernardino, California.

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1    1953 STUDEBAKER: Plaintiff obtained this car in 1970. In the early 1970s, Plaintiff
2    performed brake, clutch, and engine rebuild work. Plaintiff installed new BENDIX
    (HONEYWELL INTERNATIONAL, INC.) brakes, and FEL-PRO (FEDERAL-MOGUL
    ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-PRODUCTS
3    MANUFACTURING CO.) gaskets designed for a 289 FORD engine, he purchased at CHIEF
    AUTO PARTS (AUTOZONE WEST, INC.) in Orange County, California.
4

    1955 CHEVROLET (GENERAL MOTORS CORPORATION) BELAIR: Plaintiff obtained this
5    car in 1973. Plaintiff performed brake and clutch work. Plaintiff installed new CHEVROLET
    (GENERAL MOTORS CORPORATION) purchased from CHIEF AUTO PARTS
6    (AUTOZONE WEST, INC.) in Orange County, California.

7    1957 CHEVROLET (GENERAL MOTORS CORPORATION) BELAIR: Plaintiff obtained this
    car in 1977. Plaintiff performed brake and engine rebuilt work. Plaintiff installed new BENDIX
8    (HONEYWELL INTERNATIONAL, INC.) brakes he purchased from NAPA AUTO PARTS
    (GENUINE PARTS COMPANY ), Rialto, California.
9

    1957 PLYMOUTH Fury: Plaintiff obtained this car in 1966. Plaintiff performed engine rebuild
10   work with his friend, Tom Weedon, Garden Grove, California. Plaintiff installed VICTOR
    (DANA COMPANIES, LLC (FKA DANA CORPORATION) purchased from CHIEF AUTO
11   PARTS (AUTOZONE WEST, INC.) in Orange County, California.

12   1958 CHEVROLET (GENERAL MOTORS CORPORATION) Impala: Plaintiff obtained this
    vehicle in 1977. Plaintiff performed engine rebuild work. Plaintiff installed FEL-PRO
13   (FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-
    PRODUCTS MANUFACTURING CO.) gaskets he purchased from KRAGEN AUTO PARTS
14   (CSK AUTO, INC.), San Bernardino, California.

15   1959 PONTIAC: Plaintiff obtained this vehicle in 1966. Plaintiff performed engine rebuild
    work. Plaintiff installed FEL-PRO (FEDERAL-MOGUL ASBESTOS PERSONAL INJURY
16   TRUST AS SUCCESSOR TO FELT-PRODUCTS MANUFACTURING CO.) gaskets he
    purchased from KRAGEN AUTO PARTS (CSK AUTO, INC.), Beach Boulevard, Garden
17   Grove, California.

18   1960 DODGE (CHRYSLER LLC) De Soto: In 1970, plaintiff performed brake and engine
    rebuild work with his friend Mike Hagen, San Bernardino, California. Plaintiff installed
19   MOPAR (CHRYSLER LLC) brakes he purchased from NAPA AUTO PARTS (GENUINE
    PARTS COMPANY ). Plaintiff installed FEL-PRO (FEDERAL-MOGUL ASBESTOS
20   PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-PRODUCTS MANUFACTURING
    CO.) gaskets he purchased from KRAGEN AUTO PARTS (CSK AUTO, INC.).
21

    1960 OLDSMOBILE 98: Plaintiff performed engine rebuild work.
22

    1961 CADILLAC DeVille: In 1972, Plaintiff performed brake work. Plaintiff removed the
23   original, factory-installed brakes, and installed new CHEVROLET (GENERAL MOTORS
    CORPORATION) brakes purchased from CHIEF AUTO PARTS (AUTOZONE WEST, INC.)
24   in Orange County, California.

25   1961 LINCOLN Continental: Plaintiff performed brake and engine rebuild work.

26   1963 VW Bus: In the mid-1970s, Plaintiff performed brake, clutch, and engine rebuild work
    with his friend Bobby Wasson, San Bernardino, California. Plaintiff installed new BENDIX
27   (HONEYWELL INTERNATIONAL, INC.) brakes and FEL-PRO (FEDERAL-MOGUL
    ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-PRODUCTS
28   MANUFACTURING CO.) gaskets he purchased from NAPA AUTO PARTS (GENUINE
    PARTS COMPANY ), Rialto, California. Plaintiff removed the existing BORG WARNER

1  (BORG-WARNER CORPORATION BY ITS SUCCESSOR IN INTEREST, BORGWARNER
2  MORSE TEC INC.) clutch, and installed a new BORG WARNER clutch purchased from NAPA
   AUTO PARTS (GENUINE PARTS COMPANY), Rialto, California.

3  1963 Ford (FORD MOTOR COMPANY) truck F-150: In the mid-1970s, Plaintiff performed
   brake, clutch, and engine rebuild work. Plaintiff installed new BENDIX (HONEYWELL
4  INTERNATIONAL, INC.) brakes and FEL-PRO (FEDERAL-MOGUL ASBESTOS
   PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-PRODUCTS MANUFACTURING
5  CO.) gaskets he purchased from NAPA AUTO PARTS (GENUINE PARTS COMPANY ),
   Rialto, California.
6
   1964 DODGE (CHRYSLER LLC) Dart: In the early 1970s, Plaintiff performed brake, clutch,
7  and engine rebuild work. Plaintiff installed MOPAR (CHRYSLER LLC) brakes and FEL-PRO
   (FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-
8  PRODUCTS MANUFACTURING CO.) gaskets he purchased from KRAGEN AUTO PARTS
   (CSK AUTO, INC.), San Bernardino, California.
9
   1965 FORD Mustang: In 1970, Plaintiff performed brake work. Plaintiff installed
10 MOTORCRAFT (FORD MOTOR COMPANY) brakes purchased from NAPA AUTO PARTS
   (GENUINE PARTS COMPANY ), Rialto, California.
11
   1966 PONTIAC Grand Prix: In 1971, Plaintiff removed the original factory-installed brakes
12 from this vehicle, and installed new GENERAL MOTORS CORPORATION brakes he
   purchased from NAPA AUTO PARTS (GENUINE PARTS COMPANY ), Rialto, California.
13
   1966 VW Bug: Plaintiff performed clutch work. In 1983, plaintiff installed a BORG WARNER
14 (BORG-WARNER CORPORATION BY ITS SUCCESSOR IN INTEREST, BORGWARNER
   MORSE TEC INC.) clutch with Bobby Wasson's cousin, Denver, Colorado. Plaintiff installed
15 new BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes he purchased from NAPA
   AUTO PARTS (GENUINE PARTS COMPANY ), Rialto, California.
16
   1966 CHEVROLET (GENERAL MOTORS CORPORATION) Chevelle ss: Plaintiff performed
17 brake and engine rebuild work. In 1975, plaintiff installed new BENDIX (HONEYWELL
   INTERNATIONAL, INC.) brakes he purchased from NAPA AUTO PARTS (GENUINE
18 PARTS COMPANY ), Rialto, California.

19 1968 FORD Mustang: Plaintiff performed clutch and engine rebuild work. In 1984, plaintiff
   installed new BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes he purchased from
20 NAPA AUTO PARTS (GENUINE PARTS COMPANY ), Rialto, California. Plaintiff installed
   FEL-PRO (FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR
21 TO FELT-PRODUCTS MANUFACTURING CO.) gaskets he purchased from KRAGEN AUTO
   PARTS (CSK AUTO, INC.), San Bernardino, California.
22
   1967 Ford FAIRLANE: Plaintiff performed brake and engine rebuild work.
23
   1967 Ford FAIRLANE 500: Plaintiff performed brake and engine rebuild work.
24
   1969 CHEVROLET (GENERAL MOTORS Corporation) Camaro: Plaintiff performed engine
25 rebuild work. In 1973, Plaintiff installed new GENERAL MOTORS CORPORATION brakes
   and FEL-PRO (FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST AS
26 SUCCESSOR TO FELT-PRODUCTS MANUFACTURING CO.) gaskets he purchased from
   NAPA AUTO PARTS (GENUINE PARTS COMPANY ), Rialto, California.
27
   1969 PLYMOUTH Roadrunner: Plaintiff performed brake and clutch work. In the mid-1970s,
28 plaintiff installed new BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes he purchased
   from PEP BOYS (PEP BOYS MANNY MOE & JACK OF CALIFORNIA, THE).

1 | 1969 Ford Galaxie: Plaintiff performed brake and engine rebuild work.

2 | 1970 OLDSMOBILE Toronado: Plaintiff performed brake work. In the mid-1970s, plaintiff
installed new GENERAL MOTORS CORPORATION brakes he purchased from NAPA AUTO
3 | PARTS (GENUINE PARTS COMPANY ), Rialto, California.

4 | 1971 PLYMOUTH. In the late 1970s, plaintiff installed new GENERAL MOTORS
CORPORATION brakes he purchased from NAPA AUTO PARTS (GENUINE PARTS
5 | COMPANY ), Colorado.

6 | 1971 PLYMOUTH Barracuda (CHRYSLER LLC): Plaintiff performed brake work. In 1975,
plaintiff installed MOPAR (CHRYSLER LLC) brakes he purchased from NAPA AUTO PARTS
7 | (GENUINE PARTS COMPANY ).

8 | 1973 CHEVROLET (GENERAL MOTORS CORPORATION) Cheyenne: Plaintiff performed
brake and clutch work.

9

10 | 1973 TOYOTA: Plaintiff overhauled the engine twice and performed brake and clutch work.
Plaintiff removed the original factory-installed gaskets, and installed FEL-PRO (FEDERAL-
MOGUL ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-PRODUCTS
11 | MANUFACTURING CO.) gaskets he purchased from KRAGEN AUTO PARTS (CSK AUTO,
INC.), San Bernardino, California. Plaintiff installed new BENDIX (HONEYWELL
12 | INTERNATIONAL, INC.) brakes he purchased from NAPA AUTO PARTS (GENUINE
PARTS COMPANY ), Rialto, California.

13

14 | 1973 CHEVROLET (GENERAL MOTORS CORPORATION) truck: In the mid-1990s,
plaintiff installed new BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes and FEL-
PRO (FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO
15 | FELT-PRODUCTS MANUFACTURING CO.) gaskets he purchased from KRAGEN AUTO
PARTS (CSK AUTO, INC.), Canton, Georgia with his brother-in-law, Tom Kratzer, deceased.

16

17 | 1979 CHEVROLET (GENERAL MOTORS CORPORATION) Camaro: Plaintiff performed
brake and engine rebuild work. In the mid-1990s, plaintiff installed new BENDIX
(HONEYWELL INTERNATIONAL, INC.) brakes and FEL-PRO (FEDERAL-MOGUL
18 | ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-PRODUCTS
MANUFACTURING CO.) gaskets he purchased from KRAGEN AUTO PARTS (CSK AUTO,
19 | INC.), Canton, Georgia.

20 | 1984 MAZDA truck: Plaintiff purchased automobile in 1985 and plaintiff removed the OEM
brakes and performed brake work.

21

22 | FORD 1 ½ -ton truck. In the late 1970s, plaintiff replaced the brakes on this truck, which was
owned by Tom Flemming, San Bernardino. Plaintiff installed RAYLOC (GENUINE PARTS
COMPANY) brakes purchased from NAPA AUTO PARTS (GENUINE PARTS COMPANY),
23 | Rialto, California.

24 | 1977 CHRYSLER LeBaron. In the late 1980s or early 1990s, plaintiff installed FEL-PRO
(FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR TO FELT-
25 | PRODUCTS MANUFACTURING CO.) gaskets he purchased from KRAGEN AUTO PARTS
(CSK AUTO, INC.), State Street and Florida Ave., San Jacinto, California.

26

27 | Plaintiff currently contends he was exposed to asbestos during this automobile repair work.

28 | ///

1 | Home Remodel:

2 Plaintiff removed sheetrock from the bedroom of his sister's, Mary Dennis Kratzer's, home in
Albany, Georgia, in 1973 and installed new sheetrock and drywall accessory products. Plaintiff
3 mixed dry UNITED STATES GYPSUM COMPANY joint compound with water, and applied it
to the sheetrock joint seams and sanded it smooth. Plaintiff currently contends that he was
4 exposed to asbestos during this home improvement work.

K:\Injured\115252\FED\PLD\cmp fed (pi-2exp).wpd

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL