BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MDL Docket No. 875 – IN RE: Asbestos Product Liability Litigation (No. VI)

*Patti Donlon, Individually and as Successor-in-Interest to the Estate of Patrick Donlon, Decedent, Sean Donlon, and Does One through Ten, Inclusive v. AC and S, Inc., et al.,* N.D. California, C. A. No. 3:11-cv-03376-JSW

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424) OR IN THE ALTERNATIVE TO CONTINUE CTO-424 PENDING A RULING ON PLAINTIFFS' MOTION TO REMAND IN THE DISTRICT COURT**

# TABLE OF CONTENTS
Page

I. INTRODUCTION..........................................................................................................1

II. ARGUMENT.................................................................................................................2

   A. The District Court Must First Decide Plaintiffs' Motion To Remand To Determine If Federal Subject Matter Jurisdiction Exists........................................2

   B. Defendants Have Still Failed To Make A Prima Facie Showing Of Any Valid Basis For Federal Jurisdiction Over Plaintiffs' State Law Claims.........................3

      1. UTC/Curtiss-Wright...........................................................................................3

      2. Boeing................................................................................................................6

      3. The Cases On Which Boeing Rely Are Without Merit .....................................8

         a. Getz v. The Boeing Company .......................................................................8

         b. Watson v. Phillip Morris Co., Inc. ................................................................10

III. CONCLUSION ............................................................................................................11

# TABLE OF AUTHORITIES

Page

### Cases

Boyle v. United Technologies Corp., 487 U.S. 500 (1988)..........................3, 4, 5, 6, 8, 9, 10
Butler v. Ingalls Shipbuilding Inc., 89 F.3d 582 (9th Cir. 1996)..................................4
Conroy v. Fresh Del Monte Produce, 325 F.Supp.2d 1049 (N.D. Cal. 2004) ....................2
Faulk v. Owens-Corning Fiberglass Corp., 48 F.Supp.2d 653 (E.D.Tex 1999)..................6
Freiberg v. Swinerton & Walberg Property Services, Inc., 245 F.Supp.2d 1144
(D.Colo. 2002) ...................................................................................................8
Fung v. Abex Corp., 816 F.Supp. 569 (N.D. Cal. 1992) ..............................................3
Getz v. The Boeing Company, 2011 WL3275957 ............................................8, 9, 10
In re Joint E. & S. Dist. N.Y. Asbestos Litig., 897 F.2d. 626 (2d Cir. 1990)...................4
Madden v. A.H. Voss., 2009 WL 3415377 ................................................................2
Mesa v. California, 489 U.S. 121 (1989).....................................................................3
Villarreal v. Chrysler Corp., 1996 WL 116832 ............................................................3
Watson v. Phillip Morris Cos., Inc., 551 U.S. 142 (2007)......................................10, 11
Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387 ......................................4, 10

## I. INTRODUCTION

Defendants United Technologies Corporation ("UTC") and the the Boeing Company ("Boeing") filed oppositions to Plaintiffs' motion to vacate CTO-424. Defendant Curtiss-Wright Corporation ("Curtiss-Wright") joined UTC's opposition. No defendant shows that transferring this action is warranted.

Defendants completely ignore Plaintiffs' failure to warn claims in this case. And, because Plaintiffs' complaint allegation against these defendants is for failure to warn, this failure to address that issue is fatal to their position. Although defendants attached voluminous affidavits and document that purportedly support their claim of the government contractor defense, upon close examination, none of defendants' evidence contains any relevant information concerning whether the Navy expressly specified the use of asbestos as an ingredient for use on the engines/planes on which Mr. Donlon worked in the Navy. Nor is there any information in the mountain of documents defendants submitted that even suggests that the Navy prevented defendants from warning about the hazards of asbestos.

Even though defendants have not cited to or provided any contractual provisions, aircraft specifications or like documents to meet their burden on removal, they blindly rely on cases in which the government contractor defense was held to apply because the court in those cases found that kind of evidence supporting federal officer jurisdiction, which is glaringly absent from this case. These defendants remove cases routinely. They are fully aware what evidence they must offer to meet their burden of showing a colorable government contractor defense. Yet, none has offered anything relevant on the issue of whether the Navy required defendants to use asbestos and prevented them from warning about its hazards. Instead, they offer exhibit after exhibit of irrelevant technical and maintenance literature that offer no information on either the use of asbestos in defendants' products or whether they were prevented from warning about the hazards of asbestos.

Without any such evidence before this Panel, defendants have not shown any basis for the federal officer jurisdiction. Because federal subject matter jurisdiction is lacking, this case should

---

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)**

not be conditionally transferred to the MDL until a hearing on Plaintiffs' remand motion in the district court on October 21, 2011.[1]

Plaintiffs request that the Judicial Panel either grant their motion to vacate CTO-424 or defer the decision on the transfer of this action and continue the conditional transfer of this case to a date after October 21, 2011, when the Northern District Court of California has issued its ruling on Plaintiffs' Motion to Remand this action to state court.

## II. ARGUMENT

### A. The District Court Must First Decide Plaintiffs' Motion To Remand To Determine If Federal Subject Matter Jurisdiction Exists

Contrary to defendants' claim, the merits of Plaintiffs' pending motion to remand must be decided first because this initial assessment will confirm that defendants' removal of this case was improper and that federal subject matter jurisdiction is lacking in this case. "Generally, jurisdiction is a preliminary matter that should be resolved before all other." Madden v. A.H. Voss., 2009 WL 3415377, *1. In Conroy v. Fresh Del Monte Produce, 325 F.Supp.2d 1049, 1053 (N.D.Cal. 2004), the court reasoned:

> First, the court should give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court....preliminary scrutiny to the merits appears to be necessary because the venue statute, 28 U.S.C. § 1404(a), does not vest courts with unlimited power to transfer a civil action to any federal district. Rather, § 1404(a) limits transfer of a civil action to "any other district or division where it might have been brought." A district or division is one where the action "might have been brought" if, among other things, when the action began the proposed transferee district court would have had subject matter jurisdiction over the action. ***In other words, because a court may only transfer a case to a venue where the case could have been brought originally, questions regarding subject matter jurisdiction must be resolved before any such***

---

[1] At the time Plaintiffs filed their motion to vacate CTO-424, the hearing on their motion to remand was set for October 7, 2011. Since then, the district court has continued that hearing to October 21, 2011 on its own motion.

*transfer.*
(Emphasis added.)

Cases further agree that judicial economy is best served when district courts decide motions to remand before consideration of transferring cases to the MDL. Fung v. Abex Corp., 816 F.Supp. 569, 573 (N.D. Cal. 1992); Villarreal v. Chrysler Corp., 1996 WL 116832, *1. As previously set forth in Plaintiffs' motion to vacate, because defendants' removal is not remotely viable, this case cannot and should not be transferred to a federal court where there is a complete absence of jurisdiction. Hence, judicial economy requires that the district court decide Plaintiffs' remand motion first before transferring this case to the MDL.

### B. Defendant Have Still Failed To Make A Prima Facie Showing Of Any Valid Basis For Federal Jurisdiction Over Plaintiffs' State Law Claims

In this case, whether a valid federal basis for removal exists comes down to one and only one consideration – ***whether the government prohibited the defendants from warning about asbestos hazards, thus creating a conflict between complying with their alleged contracts and complying with their state law duty to warn.***

Plaintiffs have limited their case to claims for failure to warn about the hazards of asbestos. They have dismissed all claims except their state law failure to warn claims as against removing defendants. No claims for design defect are being alleged as against these defendants. As stated in Plaintiffs' original remand papers, Mesa requires that there be a causal nexus between the defendants' actions under color of federal office (supplying aircraft/engines to the Navy) and Plaintiffs' state law claims (failure to warn of asbestos hazards). Mesa v. California, 489 U.S. 121, 136 (1989). There must be a "significant conflict" between the state law duty and the federal contract. Boyle v. United Technologies Corp. 487 U.S. 500, 507 (1988). If there is no conflict between the federal policy and the state law, there is no causal nexus, and there is no basis for removal. Plaintiffs have shown that there was no conflict between the removing defendants' contracts with the Navy for the manufacture of aircraft/engines and their state law duty to warn about asbestos hazards.

#### 1. UTC/Curtiss-Wright

On the merits, UTC fails to make a prima facie showing that federal officer jurisdiction

exists in this case. UTC incorrectly argues the government contractor defense is applicable to state law failure to warn claims under Boyle. A careful reading of Boyle shows that while the defense is available in a failure to warn context, to avail itself of the government contractor defense, a private contractor like UTC must show that: (1) the United States approved reasonably precise specifications for the products or equipment (UTC's engines); (2) the products or equipment conformed to those specifications; and (3) the contractor warned the United States about any dangers known to the contractor but not to the United States. Boyle, 487 U.S. at 512. In the context of a failure to warn claim, in order to satisfy the elements of the government contractor defense a ***defendant must show that the government itself dictated an inadequate warning that was meant to accompany a product.*** See Butler v. Ingalls Shipbuilding Inc., 89 F.3d 582, 586 (9th Cir. 1996) ("[T]he government contractor's defense ... is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning, [the defendant] was ... acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States.") ; Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 401, (contractors hired to produce the carcinogenic defoliant Agent Orange for military use during the Vietnam War established the first element of the Boyle standard by showing that they did not put warnings on the product because they "were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract.")(emphasis added); In re Joint E. & S. Dist. N.Y. Asbestos Litig., 897 F.2d 626, 630 (2d Cir. 1990)("*Boyle*'s requirement of government approval of 'reasonably precise specifications' mandates that the federal duties be ***imposed*** upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, ... and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product.") (emphasis in original).

UTC has not met the Boyle burden. The only evidence UTC has submitted is the affidavit of Allan J. Shiffler, an engineer employed by UTC's Pratt & Whitney division from 1966 until 2003.[2] As stated in detail in Plaintiffs' motion to remand, contrary to the statements contained in

---

[2] UTC also submitted the affidavit of William P. Ringo, an industrial hygienist, in support of its notice of removal. The gist of Ringo's affidavit is that the Navy's knowledge of the health hazards

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)**

the declaration he executed in this case, Mr. Shiffler had previously admitted during his deposition in another asbestos case that the *one and only military aircraft engine* on which he worked during his entire tenure at Pratt & Whiney was the model "TF33" used by the Air Force, but *never* used by the *Navy*. UTC ignores this crucial fact and overbroadly insists that Mr. Shiffler's declaration "establishes the necessary level of Navy control over written materials and warnings accompanying UTC military aircraft engines intended for the Navy." (UTC's Notice of Removal, Declaration of Allan J. Shiffler, ¶11.)

These statements could not represent Mr. Shiffler's personal knowledge because Mr. Shiffler did not work at Pratt & Whitney during the time period when defendant was supplying the engines to which Mr. Donlon was exposed. Moreover, even if these statement show that warnings required prior Navy approval, unaddressed is whether UTC was prevented from giving adequate warnings about the asbestos contained in the aircraft engines that it manufactured for the Navy. In fact, from Mr. Shiffler's own deposition testimony submitted in Plaintiffs' motion to remand, Mr. Shiffler admitted that he has no knowledge nor is he aware of any response from the military to UTC regarding warnings about asbestos because *UTC never bothered to ask the military*.

Not only is there a total lack of evidence that the Navy prevented UTC from complying with state-law duties to warn of the danger of asbestos contained in the engines UTC supplied to the Navy, but Plaintiffs' evidence show that the Navy expected manufacturers to supply warnings concerning hazardous substances in military equipment in accordance with state law. A memorandum dated September 1956 from the Office of the Secretary of the Navy regarding labeling of hazardous substances specifically states that warnings accompanying products manufactured for the Navy by contractors are "to be affixed by the manufacturer." The Secretary of the Navy, in an Instruction to the heads of the Navy's departments, including the Chief of the

---

associated with the use of asbestos in aircraft engines during the time that Mr. Donlon was serving in the Navy as an aviation mechanic represented the state of the art and, consequently, UTC could not have possessed any information regarding the dangers posed by the use of asbestos in aircraft engines that was not already known by the Navy. As stated in Plaintiffs' motion to remand, Mr. Ringo lacks personal knowledge as to what the Navy knew or should have known about asbestos hazards; but more importantly, because UTC has failed to satisfy the first prong of the Boyle standard, the Court need not address whether UTC has satisfied the third prong of the standard, e.g. whether UTC needed to warn the Navy about any dangers known to the contractor but not to the United States, to avail itself of the government contractor defense.

Bureau of Aeronautics, has specifically acknowledged that state law warnings should be issued by manufacturers:

> 2. Scope. This Instruction applies to the labeling of all hazardous materials throughout the Naval Establishment wherever distribution of hazardous chemicals and materials is made to the actual consumer (shop, office, or unit). It applies to materials received from any supply source, provided that the material is intended for ultimate use at the local activity. In this regard it refers to labeling of the original container, as well as any other container to which the material may subsequently be transferred. This Instruction is not intended to govern:
>
> a. The type of labels to be affixed by the manufacturer. (These are governed by State and Federal Laws and regulations depending on the nature of the material...)

(SECNAV Instruction 5160.8, Ex. A to the Harowitz Decl., ¶2.)

This memorandum states that the content of such manufacturer-created warnings is to be "governed by State and Federal laws and regulations depending on the nature of the material and whether the shipment is interstate or intrastate." Id. It is clear that the Navy expected equipment manufacturers like UTC to furnish the warnings that accompanied the products that they produced for the Navy and that such warnings would comply with state law.

The evidence presented by defendants here is devoid of support for a finding of a causal nexus between acts taken by UTC at the direction of the Navy and the failure to warn alleged by Plaintiffs. There is also a total lack of showing that the Navy approved reasonably precise specifications that prevented UTC from complying with its state-law duty to warn for purposes of the Boyle government contractor defense. See Faulk v. Owens-Corning Fiberglass Corp., 48 F.Supp.2d 653, 663 (E.D.Tex.1999) (federal officer removal was improper where "the federal government provided no direction or control on warnings when using asbestos ... [and] did not prevent Defendants from taking their own safety precautions heeding state-law standards[.]").

### 2. Boeing

Like UTC, none of Boeing's evidence touches on, let alone supports, the key preliminary issue of federal officer jurisdiction in this case. Boeing provided as exhibits, a series of six

contracts, maintenance manuals and handbooks or portions thereof that contain no relevant information that Boeing was precluded from warning about the hazards of asbestos. There is no showing that the language of these manuals was directed specifically by the Navy <u>to not</u> include warnings. These exhibits do not even demonstrate that the Navy specified for the use of asbestos in Boeing's aircraft:

- Exhibit 1 is a 1939 Contract for "92 BC-1A Airplanes, Spare Parts, Skeleton Airplane and Data." (Contract no. W535 AC-12969, dated June 24, 1939, Ex. 1 to Declaration of Michael Lombardi, pg. 3.) This Contract is inadmissible because it is irrelevant for two reasons. First, this is a 1939 Contract, which predates Mr. Donlon's Navy work by 16 years. Second, this is a Contract for "92 airplanes, basic combat, single engine, being known and designated as Contractor's type and *model NA-55-1*.[3] (<u>Id.</u> at pg. 7.) Boeing has admitted that the planes at issue here are the models SNJ and T-38.

- Exhibit 2 is another irrelevant 1939 Contract which lists, via coded jargon (e.g. SR-81A, CH-69) the specifications applicable to the inspection and maintenance instruction/handbooks to be provided by the Contractor. However, Boeing has not included the text of the specifications for its inspection and maintenance manuals/handbooks and as such, there is no evidence what the specifications required from Boeing. (Contract no. NOs-68924, dated September 28, 1939, Ex. 2 to Lombardi Decl., pg 6.)

- Exhibit 3, where legible, looks to be a 1945 standardized military form contract. Again, this document has no relevance to what the Navy allegedly required Boeing to or not to do from 1955 to 1958, which is when Mr. Donlon worked as an aviation mechanic. (Contract no. W33-038 AC-1909, Ex. 3 to Lombardi Decl.)

- Exhibit 4 is a 1941 manual for the SNJ-2 airplane. This document again is 14 years too early to be relevant here. Furthermore, while there were instructions on how to replace various pieces of equipment, the manual contained no information concerning the materials used on the planes and/or their hazardous nature and certainly nothing regarding warnings. (Report no. NA-866, dated April 7, 1941, Ex. 4 to Lombardi Decl.)

- Exhibit 5 is a 1952 contract concerning model T-28 planes. This document is 3 years too early to be relevant. Further, this Contract calls for Boeing to provide the

---

[3] The only place in the Contract where model number SNJ-2 is mentioned is a handwritten notation on the first page of the Contract. However, it is not clear who wrote down that model number as the language of the Contract never refers to the airplanes discussed in the Contract as model SNJ-2. Boeing's custodian of records, Mr. Lombardi, provides no foundation for this handwritten note nor does he provide the chain of custody as such would relate to the alteration of this Contract.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)**

PAGE 7

following technical publications: flight handbook, handbook of maintenance instructions, handbook of operation, maintenance and repair instructions with parts breakdown. (Contract no. NOa(s)-53-313-1, dated September 24, `952, Ex. 5 to Lombardi Decl.) However, there is no information in this Contract that shows that the military required Boeing's technical publications to warn or not warn about hazards associated with working on Boeing's planes, including the dangers of asbestos. (Id.)

- Exhibit 6 is a 1962 revision of a 1955 handbook of maintenance instructions for T-28 planes. Again, Mr. Donlon was out of the service by 1958, without the 1955 version of the handbook, this document is too late to be relevant. According to this document, by 1962, Boeing's maintenance handbook included "notes, cautions and warning" regarding various technical methods of tightening screws, releasing pressure from valves or waiting to deflate tires before pulling certain levers. But the handbook contains no warnings about asbestos hazards. (Manual 01-60FGB-2, revised June 1, 1962, Ex. 6, Parts 1-3, Lombardi Decl.)

Boeing's untimely evidence, as briefly summarized above, merely show that the Navy reviewed and inspected defendant's planes as well as its technical literature before rubber stamping them for dissemination. Nothing in Boeing's evidence shows that defendant has sustained its burden of demonstrating a causal nexus between Plaintiffs' state law failure to warn claims and Boeing's alleged contractual obligations to the Navy. "To sustain this burden, the defendant must also by direct averment exclude the possibility that the state action was based on acts or conduct of his not justified by his federal duty." Freiberg v. Swinerton & Walberg Property Services, Inc., 245 F.Supp. 2d 1144, 1155 (D. Colo. 2002). Nothing in Boeing's evidence shows that complying with its Navy contracts would have been in direct contradiction with defendant's state law duties.

3. **The Cases On Which Boeing Rely Are Without Merit**

    a. **Getz v. The Boeing Company**

Getz arose out of an Army Special Operations helicopter crash in Afghanistan when the helicopter's engines suddenly shut down. Getz, 2011 WL3275957, *1. Plaintiffs, who included those injured in the crash and the heirs of those who died, appealed from the district court's summary judgment in favor of Boeing, Honeywell and Goodrich. Id. Defendants Boeing, Honeywell and Goodrich moved for summary judgment under the Boyle government contractor defense. Defendants Honeywell and Goodrich, not Boeing, submitted governmental contracts that indicated that the Army undertook tests on Honeywell's and Goodrich's engines and control

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)

PAGE 8

systems. Getz, 2011 WL3275957, *5-*6. This evidence also showed that the allegedly defective helicopter engine components were detailed in full to the Army engineers and the elements which caused the crash were fully discussed by defendants and Army experts, together. Id. at *5-*6. Honeywell and Goodrich's evidence showed that the Army reviewed defendants' designs, attended defendants' design meetings, made changes, considered the specific products and their potential problems at length, and then approved their usage in Army helicopters. Because evidence demonstrated that the engines and control systems as installed in the crashed helicopter were the same as those designed by the Army, Honeywell and Goodrich together, the court found the second Boyle factor was met. Id. at * 7-*8. Because evidence also showed the Army was well aware of the risk of flame-outs, such as the one which caused the helicopter crash, and well aware of the design changes that could be done to avoid them, the court found that the third Boyle factor was also met. Id.*9-*10. And as to Boeing, because the court believed that Boeing was only named as a defendant because it had delivered an aircraft containing the defective parts manufactured by Honeywell and Goodrich, the government contractor defense was similarly extended to Boeing. Id.

In contrast to Getz, there is no evidence of Boeing's designs for the SNJ and T-28 aircrafts that defendant claims were submitted to the Navy or what Navy changes were made to Boeing's designs or what Boeing did to notify the Navy of the hazards of exposure to Boeing's asbestos component parts, what Boeing knew, what the Navy knew, what warnings were passed on, what meetings were attended, what specifications applied, what debates held, what alternatives considered, and so on.

There is simply nothing in this case relevant to the Boyle defense provided by Boeing. Boyle does not set a low bar. It is very specific as to exactly what relationship the military and the defendant must have had in order for the defendant to wipe its hands of all liability to injured military serviceman. The Getz court considered whether the plaintiffs could state a claim under state law for failure to warn, or if the defendants had successfully met their burden by evidencing: 1. the government exercised its discretion approved certain warnings (reasonably precise specifications), 2. the contractor provided the warnings required by the government and 3. the

---

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)**

contractor warned the government about the dangers, which were not known to the government, thereby limiting the contractor's ability to comply with its own duty to warn. Id. at *11. The Getz court had substantial evidence at its disposal on all three factors, including the "significant" fact that in Getz the Army was fully responsible for the Operator's Manual and its contents and held that these three requirements had been met. Id.

By contrast, here, every document Boeing has offered this Court shows that it was the Boeing's responsibility for preparing, creating and designing the manuals and maintenance guides for its planes.

### b. Watson v. Phillip Morris Co., Inc.

In its Opposition, Boeing suggests that the Supreme Court's decision in Watson v. Phillip Morris Cos., Inc., 551 U.S. 142 (2007) supports the notion that Boeing was "acting under" a federal officer. Boeing relies on Watson to cite Winters "[a]s in *Winters*, Boeing provided 'the Government with a product that it used to help conduct a war.' These products were commissioned under government contracts and delivered with government-approved maintenance manuals." (Id.) This interpretation is not supported by the Watson opinion.

The Watson Court merely used Winters as an example of how the Philip Morris factual situation differed from that in Winters. The court did not discuss the merits of Winters, ***did not conclude*** that Winters is representative of controlling principals of law, did not address whether state law failure to warn claims are in significant conflict with federal contracts under the Boyle standard, and certainly did not conclude that every manufacturer that provided the government with a product under a military contract is entitled to federal jurisdiction under the federal officer defense. In fact, in the Watson decision, the Court specifically stated that the only reason that it discussed Winters in its decision was to distinguish the circumstances in that case from the circumstances in Watson:

> These circumstances distinguish Winters from this case. For present purposes that distinction is sufficient. And we need not further examine here (a case where private contracting is not the issue) whether and when particular circumstances may enable private contractors to invoke the statute.

Watson, cite 127 S.Ct. 2301. The Court in fact goes to great length to state that it is not ruling on the circumstances that may enable private contractors to invoke the federal officer defense.

### III. CONCLUSION

This case does not belong in federal court because federal officer jurisdiction is lacking. In order for defendants to meet their burden of showing that removal was proper in this case, they must provide admissible evidence that the government contracts under which they were building products for the Navy specifically prevented each of them from complying with their state law duty to warn. That has not happened here. In contrast, as Plaintiffs have shown, it is clear that during the relevant time period when Mr. Donlon served in the Navy, the Navy required manufacturers to comply with their state law duties.

Defendants know or should know that this case does not belong in federal court. They oppose Plaintiffs' Motion to Remand, they oppose Plaintiffs' Motion to Vacate CTO-424 and they have filed a Motion to Stay the Proceedings in the District Court. Defendants simply do not want Plaintiffs' Motion to Remand to be heard by the district court because they know or should know there is no valid basis for their removal.

Plaintiffs urge this Panel to grant the instant motion to vacate the conditional transfer order or at a minimum allow Plaintiffs' Motion to Remand to go forward on October 21, 2011 in the District Court of Northern California so this case may be remanded to state court and proceed to trial setting.

Dated: September 6, 2011

HAROWITZ & TIGERMAN, LLP

By: _____
Steven M. Harowitz (State Bar No. 71117)
harowitz@htlawoffices.com
HAROWITZ & TIGERMAN, LLP
450 Sansome Street, 3rd Floor
San Francisco, CA 94111
Telephone: (415) 788-1588
Facsimile: (415) 788-1598
Attorney for Plaintiffs Patti Donlon and Sean Donlon

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-424)**