# ATTACHMENT 3

(SSx), DISCOVERY, MANADR

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-07024-JFW -SS

Beverly Dowell et al v. Alfa Laval Inc et al
Assigned to: Judge John F. Walter
Referred to: Magistrate Judge Suzanne H. Segal
Case in other court: Superior Court State of CA County
                   of Los Angeles, BC463332
Cause: 28:1441 Notice of Removal - Asbestos
Litigation

Date Filed: 08/25/2011
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

### Plaintiff

**Beverly Dowell**
*individually and successor in interest
to Edward Dowell, deceased*

represented by **Daniel L Keller**
Keller Fishback and Jackson LLP
18425 Burbank Boulevard Suite 610
Tarzana, CA 91356
818-342-7442
Fax: 818-342-7616
Email: dkeller@kfjlegal.com
*ATTORNEY TO BE NOTICED*

**Stephen M Fishback**
Keller Fishback and Jackson LLP
18425 Burbank Boulevard Suite 610
Tarzana, CA 91356
818-342-7442
Fax: 818-342-7616
Email: sfishback@kfjlegal.com
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Mark Dowell**

represented by **Daniel L Keller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen M Fishback**
(See above for address)
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Melinda McMillen**

represented by **Daniel L Keller**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen M Fishback**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Alfa Laval Inc**

**Defendant**

**Asbestos Corporation Ltd**

**Defendant**

**Air and Liquid Systems Corporation**
*successor by merger to Buffalo Pumps Inc*

represented by **Glen R Powell**
Gordon & Rees LLP
275 Battery Street Suite 2000
San Francisco, CA 94111
415-986-5900
Fax: 415-986-8054
Email: gpowell@gordonrees.com
*ATTORNEY TO BE NOTICED*

**James G Scadden**
Gordon & Rees LLP
Embarcadero Center West
275 Battery Street Suite 2000
San Francisco, CA 94111
415-986-5900
Fax: 415-986-8054
*ATTORNEY TO BE NOTICED*

**Michael J Pietrykowski**
Gordon & Rees LLP
Embarcadero Center West
275 Battery Street Suite 2000
San Francisco, CA 94111
415-986-5900
Fax: 415-986-8054
*ATTORNEY TO BE NOTICED*

**Defendant**

**D.B. Riley Inc**

**Defendant**

**Crane Company**

**Defendant**

**Crosby Valve Inc**

**Defendant**

**Crown Cork and Seal Company Inc**

**Defendant**

**Flowserve Corporation**
*individually and*
*Successor*
Durametallic Corporation

**Defendant**

**FMC Corporation**

**Defendant**

**IMO Industries Inc**

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**ITT Corporation**
*individually and*
*Successor*
Bell and Gossett

**Defendant**

**Allis Chalmers**

**Defendant**

**J.T. Thorpe and Son Inc**

**Defendant**

**Mechanical Drive and Belting**
*formerly known as*
L.A. Rubber Co

**Defendant**

**Metalclad Insulation Corporation**

**Defendant**

**Owens-Illinois Inc**

**Defendant**

**Rapid American Corporation**

**Defendant**

**Sepco Corporation**

**Defendant**

**Sterling Flud Systems**
*individually and*
*Successor*
Peerless Pump Company
*Successor*
Indian Head Inc

**Defendant**

**Trane USA Inc**

**Defendant**

**Warren Pumps Inc**

**Defendant**

**Does**
*1-500*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/25/2011 | 1 | NOTICE OF REMOVAL from Superior Court State of CA County of Los Angeles, case number BC463332 with Conformed copy of summons and complaint. Case assigned to Judge John F. Walter, Discovery to Magistrate Judge Suzanne H Segal. (Filing fee $ 350 PAID), filed by Defendant Air and Liquid Systems Corporation.(car) (Additional attachment(s) added on 8/30/2011: # 1 Exhibit Part 1, # 2 Exhibit Part 2, # 3 Exhibit Part 3) (ds). (Entered: 08/26/2011) |
| 08/25/2011 | 2 | NOTICE OF TAG-ALONG ACTION filed by Defendant Air and Liquid Systems Corporation. (car) (ds). (Entered: 08/26/2011) |
| 08/25/2011 | 3 | NOTICE TO PARTIES OF ADR PROGRAM filed.(car) (Entered: 08/26/2011) |
| 08/25/2011 | 4 | DISCLOSURE STATEMENT filed by Defendant Air and Liquid Systems Corporation (car) (ds). (Entered: 08/26/2011) |
| 08/25/2011 | 5 | NOTICE of Removal to Adverse Parties filed by Defendant Air and Liquid Systems Corporation. (car) (ds). (Entered: 08/26/2011) |
| 08/26/2011 | 6 | STANDING ORDER by Judge John F. Walter (se) (Entered: |

08/26/2011

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/06/2011 11:42:55 | | | |
| PACER Login: | gr0084 | Client Code: | MGT 8010110 |
| Description: | Docket Report | Search Criteria: | 2:11-cv-07024-JFW -SS End date: 9/6/2011 |
| Billable Pages: | 4 | Cost: | 0.32 |

Stephen M. Fishback, Esq. (State Bar No. 191646)
Daniel L. Keller, Esq. (State Bar No. 191738)
**KELLER, FISHBACK & JACKSON LLP**
18425 Burbank Blvd., Ste. 610
Tarzana, California 91356
Telephone: 818.342.7442
Facsimile: 818.342.7616

Attorneys for Plaintiffs

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 10 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
RUGENA LOPEZ

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES
## (UNLIMITED JURISDICTION)

BEVERLY DOWELL, individually and
successor in interest to EDWARD DOWELL,
deceased; MARK DOWELL; MELINDA
MCMILLEN;

       Plaintiffs,

      vs.

ALFA LAVAL, INC.;
ASBESTOS CORPORATION LTD.;
BUFFALO PUMPS, INC.;
D.B. RILEY, INC.;
CRANE COMPANY;
CROSBY VALVE, INC.;
CROWN CORK & SEAL COMPANY, INC.;
FLOWSERVE CORPORATION, individually
   and successor-in-interest to
   DURAMETALLIC CORPORATION;
FMC CORPORATION;
IMO INDUSTRIES, INC.;
INGERSOLL-RAND COMPANY;
ITT CORPORATION, individually and
   successor-in-interest to BELL & GOSSETT,
   ALLIS CHALMERS;
J.T. THORPE & SON, INC.;
MECHANICAL DRIVE & BELTING, fka
   L.A. RUBBER CO.;
METALCLAD INSULATION
   CORPORATION;

Case No.      BC 463332

**COMPLAINT FOR DAMAGES**
(WRONGFUL DEATH)
(ASBESTOS)

(ACTION IS SUBJECT TO GENERAL
ORDERS IN FILE NO. C700000)

**Negligence**
**Strict Liability**
**False Representation Under Restatement**
   **Section 402-B**
**Intentional Tort**
**Premises Owner/Contractor Liability**
**Survival Action**

COMPLAINT FOR WRONGFUL DEATH

PAGE 1

1  OWENS-ILLINOIS, INC.;
    RAPID AMERICAN CORPORATION;
2  SEPCO CORPORATION;
    STERLING FLUD SYSTEMS, individually
3      and successor-in-interest to PEERLESS
      PUMP COMPANY and INDIAN HEAD,
4     INC.;
5  TRANE USA, INC.;
    WARREN PUMPS, INC.;
6  DOES 1-500;
7         Defendants

8

9      Plaintiffs herein and hereby allege as follows in this Complaint For Damages, Wrongful

10 Death Asbestos, as follows: Beverly Dowell, individually and successor-in-interest to Edward

11 Dowell, deceased ("Decedent"), Mark Dowell, and Melinda McMillen ("Plaintiff(s)") complain

12 and allege as follows:

13     1. The true names and capacities, whether individual, corporate, associate, governmental

14 or otherwise, of defendants DOES 1 through 500, are unknown to plaintiffs at this time, who

15 therefore sues said defendants by such fictitious names. When the true names and capacities of

16 said defendants have been ascertained, plaintiffs will amend this complaint accordingly. Plaintiffs

17 are informed and believe, and thereon allege, that each defendant designated herein anonymously

18 as a DOE 1-500 is responsible, negligently or in some other actionable manner, for the events and

19 happenings hereinafter referred to, and caused injuries and damages thereby to the Decedent, as

20 hereinafter alleged.

21     2. At all times herein mentioned, each of the defendants was the agent, servant, employee

22 and/or joint venturer of his co-defendants, and each of them, and at all said times, each defendant

23 was acting in the full course and scope of said agency, service, employment and/or joint venture.

24 This action is subject to the Los Angeles Superior Court's General Orders.

25     3. Plaintiffs are informed and believe, and thereon alleges that at all times herein

26 mentioned, defendants on Exhibits "B" – "C" and DOES 1 through 500, inclusive, were and are

27 corporations, partnerships, unincorporated associations, sole proprietorships and/or other business

28 entities organized and existing under and by virtue of the laws of the State of California, or the

laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were

COMPLAINT FOR WRONGFUL DEATH

and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Los Angeles, State of California.

**First Cause of Action**
**(Negligence)**

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:**

4. At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedies against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiffs' remedies against each such "alternate entity"; each such defendant has the ability to assume the risk-

---

1  spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

2  originally attached to each such "alternate entity."

3      5.  At all times herein mentioned, defendants, their "alternate entities," and each of them,

4  were and/or are engaged in the business of researching, manufacturing, fabricating, designing,

5  modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

6  inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-

7  branding, manufacturing for others, packaging and advertising a certain product, namely asbestos

8  and other products containing asbestos.  Said asbestos and other products containing asbestos

9  (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-containing

10  products") specifically include, but are not limited to: thermal insulation; cloth; gaskets, packing,

11  valves, generators, boilers, pumps, coolers, fireproofing, purifiers, refractory materials, and other

12  asbestos-containing products currently unknown or unspecified by plaintiffs but likely to be

13  ascertained during the course and scope of discovery and investigation.

14      6.  At all times herein mentioned, defendants, their "alternate entities" and each of them,

15  singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed,

16  modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health

17  hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

18  inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-

19  branded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

20  and other products containing asbestos, in that said products caused personal injuries to users,

21  consumers, workers, bystanders and others, including the Decedent herein, (hereinafter

22  collectively called "exposed persons"), while being used in a manner that was reasonably

23  foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

24      7.  Defendants, their "alternate entities," and each of them, had a duty to exercise due care

25  in the pursuance of the activities mentioned above and defendants, and each of them, breached said

    duty of due care.

26      8.  Defendants, their "alternate entities" and each of them, knew, or should have known,

27  and intended that the aforementioned asbestos and products containing asbestos would be

28  transported by truck, rail, ship and other common carriers, that in the shipping process the products

---

COMPLAINT FOR WRONGFUL DEATH

1   would break, crumble or be otherwise damaged; and/or that such products would be used for

2   insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other

3   applications, including, but not limited to sawing, chipping, hammering, scraping, sanding,

4   breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos

5   fibers, and that through such foreseeable use and/or handling "exposed persons," including

6   Decedent herein, would use or be in proximity to and exposed to said asbestos fibers.

7        9.   Decedent has used, handled or been otherwise exposed to asbestos and asbestos-

8   containing products referred to herein in a manner that was reasonably foreseeable. Decedent's

9   exposure to asbestos and asbestos-containing products occurred at various locations as set forth in

10   Exhibit "A," among others, attached to plaintiffs' Complaint and incorporated by reference herein.

11        9a.   Defendants, their "alternate entities," and each of them breached their legal duties

12   by, among other acts and inactions:

13        (a) failing to warn Decedent of the dangers, characteristics, and potentialities of their

14   asbestos-containing products when they knew or should have known that exposure to their

15   asbestos-containing products would cause disease and injury;

16        (b) failing to warn Decedent of the dangers to which he was exposed when they knew or

17   should have known of the dangers;

18        (c) failing to exercise reasonable care to warn Decedent of what would be safe, sufficient,

19   and proper protective clothing, equipment, and appliances when working with or near or being

20   exposed to their asbestos and asbestos-containing products;

21        (d) failing to provide safe, sufficient and proper protective clothing, equipment and

22   appliances with their asbestos and asbestos-containing products;

23        (e) failing to test its asbestos and asbestos-containing products in order to ascertain the

24   extent of danger involved upon exposure thereto;

25        (f) failing to conduct such research as should have been conducted in the exercise of

26   reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and

27   asbestos-containing products;

28        (g) failing to remove the product or products from the market when the defendant

corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-

COMPLAINT FOR WRONGFUL DEATH

1     containing products;

2        (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to

3     asbestos to adequately warn and apprise Decedent of said dangers, hazards, and potentialities

4     discovered;

5        (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos

6     to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards,

7     and potentialities;

8        (j) failing to advise Decedent and others that the risks inherent in their asbestos-containing

9     product greatly outweighed the benefits, if any,  afforded by such products; and

10        (k) generally using unreasonable, careless, and negligent conduct in the manufacture,

11     fabrication, supply, distribution, sale, installation, and/or use of their asbestos and asbestos-

12     containing products, among other actions/inactions.

13        Plaintiffs disclaim any cause of action or recovery for any injuries and damages resulting

14     from exposure to asbestos caused by the acts or omissions of defendants committed at the specific

15     and proven direction of an officer of the United States Government acting within in his official

16     capacity. To the extent that any of the Decedent's relevant asbestos exposure occurred on board

17     active vessels or aircraft of the United States military or the construction and/or repair of such

18     vessels or aircraft occurred on proven federal enclaves,  plaintiffs' negligence and strict liability

19     claims against manufacturers, sellers and suppliers of pumps, valves, boilers, turbines, separators,

20     steam traps, engines and other mechanical or similar equipment installed in such vessels and

21     aircraft are not based on the theory of defective design, but rather on the theory of failure to warn

22     of the health risks and hazards associated with working with and/or around asbestos and asbestos-

23     containing products only and renders such defendants liable in both negligence and in strict

24     products liability for such marketing defect.

25        10.  As a direct and proximate result of the conduct of the defendants, their "alternate

26     entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing

27     products caused Decedent, Edward Dowell, to contract asbestosis, asbestos pleural diseases, lung

    cancer, and other asbestos-related diseases, from which he died on or about June 30, 2010.

28        11.  Plaintiffs did not learn of the causal relationship between Decedent's exposure to

1   asbestos and his death until less than one year before the date on which this complaint is filed.

2       12.   Plaintiffs are the heirs of Edward Dowell, deceased, as follows:

3           A.   Beverly Dowell, spouse and successor-in-interest to Edward Dowell;

4           B.   Mark Dowell, son;

5           C.   Melinda McMillen, daughter.

6       13.   Defendants, their "alternate entities," and each of them, and their officers, directors

7   and managing agents participated in, authorized, expressly and impliedly ratified, and had full

8   knowledge of, or should have known of, each of the acts set forth herein.

9       14.   Defendants, their "alternate entities," and each of them, are liable for the fraudulent,

10   oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's

11   officers, directors and managing agents participated in, authorized, expressly and impliedly

12   ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate

13   entities" as set forth herein.

14       15.   As a result of the conduct of defendants, and each of them, plaintiffs' sustained

15   pecuniary loss resulting from the loss of love, comfort, society, attention, services and support of

16   Decedent in a sum invoking the unlimited jurisdiction limits of this Court.

17       16.   The herein-described conduct of said defendants, their "alternate entities," and each of

18   them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and

19   indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and

    by way of punishing said defendants, seek punitive damages according to proof.

20       WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

21   each of them, as hereinafter set forth.

22

23   **SECOND CAUSE OF ACTION**<br>(Strict Liability)

24   AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

25   ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF

    DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE

26   ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

27       17.   Plaintiffs incorporate herein by reference, as though fully set forth herein, the

28   allegations contained in Paragraphs 4-5 and 8-16 of the First Cause of Action herein.

---

COMPLAINT FOR WRONGFUL DEATH

18.   Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

19.   Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons," including Decedent herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

20.   "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which Decedent and others similarly situated were exposed.

21.   In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, mesothelioma, lung cancer, and asbestosis. Said knowledge was obtained, in part, from scientific studies, government data, and medical data to which defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of, said defendants, their "alternate entities," and each of them, and which knowledge was obtained by said defendants, their "alternate entities," and each of them on or before 1930, and thereafter.

COMPLAINT FOR WRONGFUL DEATH

22.   On or before 1930, and thereafter, said defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their "alternate entities," and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

23.   With said knowledge, said defendants, their "alternate entities," and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

24.   The above-referenced conduct of said defendants, their "alternate entities," and each of them, was motivated by the financial interest of said defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance

1   of said financial motivation, said defendants, their "alternate entities," and each of them,

2   consciously disregarded the safety of "exposed persons" and in fact were consciously willing and

3   intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons"

4   and induced persons to work with and be exposed thereto, including Decedent.

5       25.  Plaintiffs allege that the aforementioned defendants, their "alternate entities," and

6   each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for

7   their intended use but that their asbestos and asbestos-containing products, created an

8   unreasonable risk of bodily harm to exposed persons.

9       26.  Plaintiffs further allege Decedent's injuries are a result of cumulative exposure to

10   asbestos and various asbestos-containing products manufactured, fabricated, inadequately

11   researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased,

12   bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

13   repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by

14   the aforementioned defendants, their "alternate entities," and each of them and that plaintiffs

15   cannot identify precisely which asbestos or asbestos-containing products caused the injuries

16   complained of herein.

17       27.  Decedent relied upon defendants, their "alternate entities'," and each of their

18   representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-

19   containing products. As a direct and proximate result of the conduct of the defendants, their

20   "alternate entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-

21   containing products caused Decedent to contract asbestosis, lung cancer and other asbestos-

22   related diseases from which he died on June 30, 2010.

23       WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

24   each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
#### (False Representation Under Restatement of Torts Section 402-B)

AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

COMPLAINT FOR WRONGFUL DEATH

28.   Plaintiffs hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

29.   At the aforementioned time when defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the defendants, their "alternate entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the Decedent herein and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

30.   The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the Decedent and his employers, relied upon said representations of defendants, their "alternate entities," and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

31.   Said representations by defendants, their "alternate entities," and each of them, were false and untrue, and defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons, including Decedent herein.

32.   As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused Decedent to contract asbestosis, lung cancer and other asbestos-related diseases from which he died on June 30, 2010.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

1   each of them, as hereinafter set forth.

2

## FOURTH CAUSE OF ACTION
### (Intentional Tort)

3

4   AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF
    ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708

5   THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT

6   "B," DOES 11-300, THEIR "ALTERNATE ENTITIES," AND ALLEGE AS
    FOLLOWS:

7

8   33.   Plaintiffs, by this reference, hereby incorporate by reference, as though fully set forth

9   herein, each and every allegation contained in the First and Third Causes of Action herein

10  excepting therefrom allegations pertaining to negligence.

11  34.   At all times pertinent hereto, the defendants, their "alternate entities," and each of

12  them, owed Decedent a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of

13  the State of California, to abstain from injuring the person, property or rights of the Decedent.

14  When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and

15  each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the

16  Decedent as is more fully set forth herein. Such acts and omissions consisted of acts falling within

17  Section 1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of

18  fact which were not true and which defendants, their "alternate entities," and each of them, did not

19  believe to be true; assertions of fact which were not true and which defendants, their "alternate

20  entities," and each of them, had no reasonable ground for believing to be true, and the suppression

21  of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any

22  one such duty gave rise to a cause of action for violation of the rights of the Decedent as provided

    for in the aforementioned Civil Code sections.

23  35.   Since on or before 1930, the defendants, their "alternate entities," and each of them,

24  have known and have possessed the true facts of medical and scientific data and other knowledge

25  which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiffs'

26  First Cause of Action were and are hazardous to the health and safety of Decedent, and others in

27  Decedent's position working in close proximity with such materials. The defendants, their

28  "alternate entities," and each of them, have known of the dangerous propensities of other of the

---

COMPLAINT FOR WRONGFUL DEATH

aforementioned materials and products since before that time. With intent to deceive Decedent, and others in Decedent's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Decedent and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

a.     Defendants, their "alternate entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Decedent, and others in Decedent's position working in close proximity with such materials, until 1964 when certain of such materials were labeled by some, but not all, of defendants, their "alternate entities," and each of them, herein when the knowledge of such hazards was existing and known to defendants, their "alternate entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, defendants, their "alternate entities," and each of them, caused to be suggested as a fact to Decedent that it was safe for Decedent to work in close proximity to such materials, when in fact it was not true, and defendants, their "alternate entities," and each of them, did not believe it to be true;

b.     Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would given general notice to the public and knowledge of the hazardous nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose such information;

c.     Defendants, their "alternate entities," and each of them, sold the aforementioned products and materials to Decedent's employer and others without advising Decedent and others of the dangers of use of such materials to persons working in close proximity thereto when defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, defendants, their "alternate entities," and each of them, caused to be positively asserted to Decedent that which was

not true and that which defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, to wit, that it was safe for Decedent to work in close proximity to such materials;

        d.      Defendants, their "alternate entities," and each of them, suppressed from Decedent medical and scientific data and knowledge of the results of studies including, but not limited to, the information and knowledge of the contents of the Lanza report. Although bound to disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Decedent and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

        e.      Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Decedent by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Decedent at this time;

        f.      Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other

1   defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the
2   defendants, their "alternate entities," and each of them, acquired medical and scientific information
3   of the connection between inhalation of asbestos fibers and cancer, which information was
4   disseminated through the Asbestos Textile Institute and other industry organizations to defendant
5   herein. Thereby, defendants, their "alternate entities," and each of them, suggested to the public as
6   a fact that which is not true and disseminated other facts likely to mislead Decedent. Such facts did
7   mislead Decedent and others by withholding the afore-described medical and scientific data and
8   other knowledge and by not giving Decedent the true facts concerning such knowledge of danger,
9   which defendants, their "alternate entities," and each of them, were bound to disclose;

10          g.      Defendants, their "alternate entities," and each of them, failed to warn
11  Decedent and others of the nature of said materials which were dangerous when breathed and
12  which could cause pathological effects without noticeable trauma, despite the fact that defendants,
13  their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose
14  that said materials were dangerous and a threat to the health of persons coming into contact
15  therewith;

16          h.      Defendants, their "alternate entities," and each of them, failed to provide
17  Decedent with information concerning adequate protective masks and other equipment devised to
18  be used when applying and installing the products of the defendants, and each of them, despite
19  knowing that such protective measures were necessary, and that they were under a duty to disclose
20  that such materials were dangerous and would result in injury to the Decedent and others applying
    and installing such material;

21          i.      Defendants, their "alternate entities," and each of them, when under a
22  duty to so disclose, concealed from Decedent the true nature of the industrial exposure of
23  Decedent and knew that Decedent and anyone similarly situated, upon inhalation of asbestos
24  would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.
25  Defendants, their "alternate entities," and each of them, also concealed from Decedent and others
26  that harmful materials to which they were exposed would cause pathological effects without
27  noticeable trauma;

28          j.      Defendants, their "alternate entities," and each of them, failed to provide

information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Decedent and Decedent's employers so that said physicians could examine, diagnose and treat Decedent and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

k.   Defendants, their "alternate entities," and each of them, failed to provide adequate information to physicians and surgeons retained by Decedent's employers and their predecessor companies, for purposes of making physical examinations of Decedent and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

36.   Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file First Report of Occupational Injury of Illness regarding Decedent's injuries, as required by law, and did willfully fail and omit to file report of injury and occupational disease with the State of California. Decedent was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

37.   Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duty to inform Decedent about the true facts, and knowing the Decedent did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Decedent to remain unaware of the true facts and to induce Decedent to work in a dangerous environment, all in violation of Sections 1708, 1709, 1710, and 1711 of the Civil Code of the State of California.

WHEREFORE, plaintiffs pray judgment as is hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (Premises Owner/Contractor Liability)

AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF COMPLAIN OF DEFENDANTS ON EXHIBIT "C," DOES 301-450, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

38.   Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 9-16 of the First Cause of Action.

39.   At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances. The defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedies against each such alternate entity; defendants, and each of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiffs' remedies against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such alternate entity, and that each such defendant enjoys the goodwill originally attached to each such alternate entity.

40.   At all times mentioned herein, the above-listed Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed on Exhibit "A" and others where Decedent was present. The information provided on Exhibit "A" is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, Decedent might have been present at those or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

41.   Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, disturbed,

maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Decedent and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

42.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Decedent and other workers or persons so exposed present on each of the aforesaid respective premises.

43.   At all times relevant herein, Decedent entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, Decedent was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

44.   Decedent at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

45.   The hazardous condition or risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises was not a known condition that Decedent's employer was hired to correct or repair.

46.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants and each of them, remained in control of the premises where Decedent was performing his work.

47.   At all times mentioned herein, the Premises Owner/Contractor Liability Defendants owed to Decedent, and others similarly situated, a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Decedent to an

unreasonable risk of harm and to avoid causing injury to said person.

48.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

49.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Decedent of, the existence of the aforesaid dangerous conditions and hazards on said premises.

50.   At all times herein mentioned, said Premises Owner/Contractor Liability Defendants and each of them, negligently provided unsafe equipment for the performance of the work that caused or contributed to Decedent's injuries.

51.   Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air, and thereby injured Decedent.

52.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Decedent and others unless special precautions were taken. The said Premises Owner/Contractor Liability Defendants, and each of them, knew or should have known that the work required special procedures and instruction so as to be accomplished in a safe manner and avoid injury to Decedent and others. The Premises Owner/Contractor Liability Defendants were aware or should have been aware that such special procedures and instructions were not taken nor provided.

53.   In part, Decedent was exposed to dangerous quantities of asbestos fibers and other

COMPLAINT FOR WRONGFUL DEATH

toxic substances by reason of such premises owners and/or contractors' failure to take the necessary precautions.

54.   The work, actions and/or inactions of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

55.   The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

    a.   Failure to advise and warn of asbestos and other toxic dusts;

    b.   Failure to suppress the asbestos-containing or toxic dusts;

    c.   Failure to remove the asbestos-containing and toxic dusts through use of ventilation or other approved appropriate means;

    d.   Failure to provide adequate breathing protection, i.e., approved respirators or masks;

    e.   Failure to inspect and/or test the air;

    f.   Failure to provide proper medical monitoring, medical check-ups, and reviews.

56.   The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

57.   Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous

Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code §40200, et seq., which empowers the Bay Area Air Quality Management District to promulgate regulations including but not limited to BAAQMD. Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

a.   Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

b.   Failing to segregate work involving the release of asbestos or other toxic dusts;

c.   Failing to suppress dust using prescribed ventilation techniques;

d.   Failing to suppress dust using prescribed "wet down" techniques;

e.   Failing to warn or educate Decedent or others regarding asbestos or other toxic substances on the premises;

f.   Failing to provide approved respiratory protection devices;

g.   Failing to ensure "approved" respiratory protection devices were used properly;

h.   Failing to provide for an on-going health screening program for those exposed to asbestos on the premises which included disclosure and/or discussion of ongoing health consequences of asbestos exposure with Decedent;

i.   Failing to provide adequate housekeeping and clean-up of the work place;

j.   Failing to properly warn of the hazards associated with asbestos as required by these statutes;

k.   Failing to properly report renovation and disturbance of asbestos-containing materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401 and S.C.A.Q.M.D regulations;

l.   Failing to get approval for renovation as required by statutes;

m.   Failing to maintain records as required by statute;

n.   Failing to conform to and comply with statutes, rules, and regulations regarding worker and workplace safety; including but not limited to those mandated by OSHA, EPA, and California legislature;

o.   Failing to provide Decedent with alternative, safe, asbestos-free work areas and/or failure to remove Decedent from an asbestos-laden environment where ongoing exposures to asbestos increased the risk of Decedent contracting an asbestos-related disease.

p.   Failing to have an asbestos removal supervisor as required by regulation;

58.   Decedent at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances or statutes.

59.   At all times mentioned herein, Decedent was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

60.   In such circumstances where Decedent was the employee or "statutory employee" as defined by the California Labor Code and California case law of said Premises Owner/Contractor Liability Defendants, such Premises Owner/Contractor Liability Defendants owed a duty of care to prevent injury, harm, damage, or loss to Decedent. Instead, well outside the normal risk of Decedent's employment, said Premises Owner/Contractor Liability Defendants caused Decedent to be exposed to asbestos-containing materials, products, and other toxic substances, and fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos and toxic products contamination, as well as the known and recognized injurious health consequences of repeated and reoccurring exposures by Decedent to asbestos-containing materials, products, and other toxic substances.

61.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known,

that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

62.    Said Premises Owner/Contractor Liability Defendants knew of the harmful exposures to asbestos sustained by Decedent at, by and/or through the actions and/or inactions of their own employees or others under the direct and immediate instruction, control and/or supervision of said Premises Owner/Contractor Liability and said Premises Owner/Contractor Liability Defendants concealed and/or failed to disclose to Decedent the harmful effects and bodily injuries suffered by Decedent as a result of such exposures to asbestos.

63.    As a legal consequence of the foregoing, Decedent's exposure to asbestos and asbestos-containing products caused Decedent to contract lung cancer and other asbestos-related diseases from which he died on June 30, 2010.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### (Survival Action)

**AS AND FOR A FURTHER, SIXTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR SURVIVAL DAMAGES, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, INCLUSIVE, AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

64.    Plaintiffs incorporate by reference herein each and every paragraph of the First through Fifth Causes of Action of this complaint, and makes them a part of this, the Sixth Cause of Action, as though fully set forth herein.

65.    On June 30, 2010, Decedent, Edward Dowell who would have been a plaintiff in this action if he had lived, died.

66.    As a proximate result of the conduct of the defendants and each of them, Decedent and plaintiffs were required to, and did, employ physicians and surgeons to examine, treat and care for him, and did incur medical and incidental expenses in a sum to be subsequently determined.

67.    As a further, direct and proximate cause of the conduct of defendants, and each of

COMPLAINT FOR WRONGFUL DEATH

them, Decedent was prevented from attending to his usual occupation for a period of time, could not maintain or exceed his income capacity, and thereby incurred damages for loss of earnings in a sum to be subsequently determined.

WHEREFORE, plaintiffs pray judgment against defendant, and each of them, as is hereinafter set forth.

## DAMAGES

Plaintiffs pray judgment against defendants and each of them as follows:

For general damages according to proof;

For special damages according to proof;

For medical expenses according to proof;

For loss of income according to proof;

For punitive damages according to proof;

For burial and funeral expenses according to proof;

For plaintiffs costs of suit herein; and,

For such other further relief as this Court and the law deems just and proper.

Dated: June 9, 2011

KELLER, FISHBACK & JACKSON LLP

By _____
Daniel L. Keller
Attorneys for Plaintiff

COMPLAINT FOR WRONGFUL DEATH

## EXHIBIT "A"

Decedent, Edward Dowell, suffered from asbestos-related diseases including, but not limited to, lung cancer, which caused or contributed to his death on June 30, 2010.

Decedent, Edward Dowell, performed and worked around others who performed many and various repair, maintenance, inspection and installation tasks with asbestos-containing products, which may have included, but are not limited to asbestos-containing: thermal insulation; cloth; gaskets, packing, valves, generators, boilers, pumps, coolers, fireproofing, purifiers, refractory materials and other asbestos-containing products and materials currently unknown or unspecified by plaintiffs.

Plaintiffs allege and believe that Edward Dowell's exposures to asbestos may have occurred at job sites including, but not limited to, those listed below. Decedent, Edward Dowell, was also exposed to asbestos dust that was carried into his work areas on the person and clothing of co-workers. While performing his regular job duties, his person and clothing were contaminated with such asbestos dust.

Plaintiffs allege and believe that Edward Dowell's exposure occurred at job sites including, but not limited to, the following:

EMPLOYER:    Allied Aluminum
DATE:    1951-1961
DURATION:    Approximately 10 years
JOB TITLE:    Metal Worker
SITE: Fontana, CA

EMPLOYER:    United States Navy
DATE:    1962-1997
DURATION:    Approximately 35 years
JOB TITLE:    Machinist, Civil Servant
SITE:    Long Beach Naval Shipyard, Long Beach, CA

Plaintiff's investigation and discovery are continuing.

1

**EXHIBIT "B"**

2 ALFA LAVAL, INC.;

3 ASBESTOS CORPORATION LTD.;

4 BUFFALO PUMPS, INC.;

5 D.B. RILEY, INC.;

6

7 CRANE COMPANY;

8 CROSBY VALVE, INC.;

9 CROWN CORK & SEAL COMPANY, INC.;

10 FLOWSERVE CORPORATION, individually and successor-in-interest to
11     DURAMETALLIC CORPORATION;

12 FMC CORPORATION;

13 IMO INDUSTRIES, INC.;

14 INGERSOLL-RAND COMPANY;

15 ITT CORPORATION, individually and successor-in-interest to BELL & GOSSETT,
16     ALLIS CHALMERS;

17 J.T. THORPE & SON, INC.;

18 MECHANICAL DRIVE & BELTING, fka L.A. RUBBER CO.;

19 METALCLAD INSULATION CORPORATION;

20

21 OWENS-ILLINOIS, INC.;

22 RAPID AMERICAN CORPORATION;

23 SEPCO CORPORATION;

24 STERLING FLUID SYSTEMS, individually and successor-in-interest to PEERLESS
25     PUMP COMPANY and INDIAN HEAD, INC.;

26 TRANE USA, INC.;

27 WARREN PUMPS, INC.; DOES 1-300

28

---

COMPLAINT FOR WRONGFUL DEATH

1

## EXHIBIT "C"

2

MECHANICAL DRIVE & BELTING, fka L.A. RUBBER CO.;

3

METALCLAD INSULATION CORPORATION;

4

J.T. THORPE & SON, INC.;

5

DOES 301-450;

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CERTIFIED MAIL

7010 3090 0001 6296 1065

U.S. POSTAGE
$7.23
FOR LG ENV.
91356
07/22/11
02    1P00
06496526

Buffalo Pumps, Inc.
c/o CT Corporation System
111 Eighth Ave.
New York, NY 10011

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE
Case Number _____

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.30). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Pending Assignment | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

**\*Class Actions**
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S.Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the Outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   JOHN A. CLARKE, Executive Officer/Clerk
                                                                          By_____, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil only**).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

    **Cases for Which Mediation May Be Appropriate**
    Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

    **Cases for Which Mediation May <u>Not</u> Be Appropriate**
    Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

    **Cases for Which Arbitration May Be Appropriate**
    Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

    **Cases for Which Arbitration May <u>Not</u> Be Appropriate**
    If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

    **Cases for Which Neutral Evaluation May Be Appropriate**
    Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

    **Cases for Which Neutral Evaluation May <u>Not</u> Be Appropriate**
    Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Daniel L. Keller (State Bar No. 191738)
Keller, Fishback & Jackson LLP
18425 Burbank Blvd., Ste 610 Tarzana, CA 91356

TELEPHONE NO.: (818) 342-7442    FAX NO.: (818) 342-7616
ATTORNEY FOR (Name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012-3117
BRANCH NAME: Stanley Mosk Courthouse

FOR COURT USE ONLY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 10 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
RUGENA LOPEZ

CASE NAME:
Beverly Dowell, et al. v Alfa Laval, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
| --- | --- | --- |
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 463332 JUDGE: DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☑ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): SIX
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 9, 2011

Daniel L. Keller
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

| SHORT TITLE:<br>Beverly Dowell, et al. v. Alfa Laval, Inc., et al. | CASE NUMBER<br>BC463332 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 30+   ☐ HOURS/ ☑ DAYS

Item II.  Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☑ A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4.<br>1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4.<br>1., 2., 4.<br>1., 2., 3.<br>1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: Beverly Dowell, et al. v. Alfa Laval, Inc., et al. | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|

**Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)**

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action (Check only one) | C<br>Applicable Reasons -See Step 3 Above |
|---|---|---|
| Professional Negligence (25) | ☐ A6017   Legal Malpractice<br>☐ A6050   Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| Other (35) | ☐ A6025   Other Non-Personal Injury/Property Damage tort | 2., 3. |

**Employment**

| | | |
|---|---|---|
| Wrongful Termination (36) | ☐ A6037   Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024   Other Employment Complaint Case<br>☐ A6109   Labor Commissioner Appeals | 1., 2., 3.<br>10. |

**Contract**

| | | |
|---|---|---|
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004   Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008   Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019   Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028   Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| Collections (09) | ☐ A6002   Collections Case-Seller Plaintiff<br>☐ A6012   Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| Insurance Coverage (18) | ☐ A6015   Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009   Contractual Fraud<br>☐ A6031   Tortious Interference<br>☐ A6027   Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |

**Real Property**

| | | |
|---|---|---|
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300   Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023   Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018   Mortgage Foreclosure<br>☐ A6032   Quiet Title<br>☐ A6060   Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |

**Unlawful Detainer**

| | | |
|---|---|---|
| Unlawful Detainer-Commercial (31) | ☐ A6021   Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020   Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022   Unlawful Detainer-Drugs | 2., 6. |

**Judicial Review**

| | | |
|---|---|---|
| Asset Forfeiture (05) | ☐ A6108   Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115   Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Beverly Dowell, et al. v. Alfa Laval, Inc., et al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151   Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152   Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153   Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141   Sister State Judgment | 2., 9. |
| | | ☐ A6160   Abstract of Judgment | 2., 6. |
| | | ☐ A6107   Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140   Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112   Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030   Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040   Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011   Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121   Civil Harassment | 2., 3., 9. |
| | | ☐ A6123   Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124   Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190   Election Contest | 2. |
| | | ☐ A6110   Petition for Change of Name | 2., 7. |
| | | ☐ A6170   Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100   Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: Beverly Dowell, et al. v. Alfa Laval, Inc., et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>□1. ☑2. □3. □4. □5. □6. □7. □8. □9. □10. | ADDRESS: 925 Harbor Plaza |
|---|---|
| CITY: Long Beach | STATE: CA | ZIP CODE: 90801 | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _Stanley Mosk_ courthouse in the _Central_ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: _June 9, 2011_

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4

NOTICE SENT TO:

Fishback, Stephen M., Esq.
Keller, Fishback & Jackson LLP
18425 Burbank Blvd., Suite 610
Tarzana,          CA  91356-6918



ORIGINAL FILEL

FILED
JUN 14 2011

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| BEVERLY DOWELL ET AL | | CASE NUMBER |
| --- | --- | --- |
| VS. | Plaintiff(s), | BC463332 |
| ALFA LAVAL INC ET AL | | **NOTICE OF CASE MANAGEMENT CONFERENCE** |
| | Defendant(s). | |

### TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/
attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for  October 11, 2011  at  8:30 am  in Dept. 17
at 111 North Hill Street, Los Angeles, California  90012.

**NOTICE TO DEFENDANT:**     **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE
DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form #
CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement
may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the
case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order
establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the
case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay
Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case
Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections
177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date:  June 14, 2011

RICHARD RICO, Judicial Officer

### CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein,
and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[✓] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a
separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[  ] by personally giving the party notice upon filing the complaint.
Date:  June 14, 2011

John A. Clarke, Executive Officer/Clerk

by _____, Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

NOTICE SENT TO:

Fishback, Stephen M., Esq.
Keller, Fishback & Jackson LLP
18425 Burbank Blvd., Suite 610
Tarzana,        CA   91356-6918



**OK ORIGINAL FILE**

JUN 14 2011

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| BEVERLY DOWELL ET AL | | CASE NUMBER |
| VS. | Plaintiff(s), | BC463332 |
| ALFA LAVAL INC ET AL | Defendant(s). | **ORDER TO SHOW CAUSE HEARING** |

To the party/attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on <u>August 9, 2011</u> at <u>8:30 am</u> in <u>Dept. 17</u> of this court, Central District, 111 North Hill Street, Los Angeles, California 90012, and show cause why sanctions should not be imposed for:

**Failure to file Proof of Service of [ ] Petition [ ] Summons and [ ] Complaint [ ] Cross-Complaint pursuant to California Rules of Court, rule 3.110(b) and (c) as to: ALL DEFENDANTS**

Failure to comply or appear may result in sanctions, pursuant to one or more of the following: California Rules of Court, rule 2.30, and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[ ] To avoid a mandatory appearance all required documents must be filed in [ ] this Dept [ ] Clerk's Office, Room _102_ at least 5 court days prior to the date of the hearing.

[ ] The Court may infer from your failure to appear that possession of the premises is no longer at issue, and that your case is not entitled to preference in setting pursuant to Code of Civil Procedure section 1179a.

[ ] You are ordered to give notice of said hearing forthwith to any party served with summons and complaint prior to OSC Hearing and file a Proof of Service in this department or Clerk's Office at least 5 court days prior to the date of the hearing.

Dated: <u>June 14, 2011</u>

RICHARD E. RICO

### CERTIFICATE OF MAILING

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Hearing upon each party or counsel named above by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown above with the postage thereon fully prepaid.

Date: June 14, 2011

John A. Clarke, EXECUTIVE OFFICER/CLERK

By _____, Deputy Clerk

### ORDER TO SHOW CAUSE HEARING

LACIV 166-1 (Rev. 09/08)
LASC Approved 06-04

LASC Local Rules, Chapter 7
Cal. Rules of Court, rule 2.30

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

| |
|---|
| FOR COURT USE ONLY |
| (SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ALFA LAVAL, INC.
SEE ATTACHED

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Beverly Dowell, individually and successor in interest to Edward
Dowell, deceased, Mark Dowell; Melinda Dowell

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 14 2011

John A Clarke, Executive Officer/Clerk
By AMBER LaFLEUR-CLAYTON, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

111 North Hill Street
Los Angeles, California 90012-3117

CASE NUMBER:
*(Número del Caso):*
BC462332

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Keller, Fishback & Jackson LLP, 18425 Burbank Blvd., Ste 610, Tarzana, CA 91356  818-342-7442 (Ph.)

DATE:
*(Fecha)*            JOHN A. CLARKE        Clerk, by            AMBER LaFLEUR-CLAYTON            , Deputy
                                          *(Secretario)*                                      *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

JUN 14 2011

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Buffalo Pumps, Inc.

   under: ☒ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Beverly Dowell, et al. v. Alfa Laval, Inc., et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff  ☑ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

ASBESTOS CORPORATION LTD.;
BUFFALO PUMPS, INC.;
D.B. RILEY, INC.;
CRANE COMPANY;
CROSBY VALVE, INC.;
CROWN CORK & SEAL COMPANY, INC.;
FLOWSERVE CORPORATION, individually and successor-in-interest to
     DURAMETALLIC CORPORATION;
FMC CORPORATION;
IMO INDUSTRIES, INC.;
INGERSOLL-RAND COMPANY;
ITT CORPORATION, individually and successor-in-interest to BELL & GOSSETT,
     ALLIS CHALMERS;
J.T. THORPE & SON, INC.;
MECHANICAL DRIVE & BELTING, fka L.A. RUBBER CO.;
METALCLAD INSULATION CORPORATION;
OWENS-ILLINOIS, INC.;
RAPID AMERICAN CORPORATION;
SEPCO CORPORATION;
STERLING FLUD SYSTEMS, individually and successor-in-interest to PEERLESS
     PUMP COMPANY and INDIAN HEAD, INC.;
TRANE USA, INC.;
WARREN PUMPS, INC.;
DOES 1-500;

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

## ADDITIONAL PARTIES ATTACHMENT
### Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com