UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
MDL 875 – IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION

-------------------------------------------------------------------x
THIS DOCUMENT RELATES TO:


**CONDITIONAL TRANSFER ORDER (CTO-439)**

-------------------------------------------------------------------x


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| **CHARLES C. ALBRECHT and**<br>**LAURA ALBRECHT,** | Civil Action<br>Nº 11 Civ 5990 (BSJ) (MHD) |
| Plaintiffs, | |
| - against - | |
| **A.O. SMITH WATER PRODUCTS,** *et al.*, | |
| Defendants. | |

-------------------------------------------------------------x


**BRIEF IN SUPPORT OF MOTION TO VACATE**
<u>**CONDITIONAL TRANSFER ORDER**</u>

A. **INTRODUCTION**

On or about April 20, 2011, plaintiffs filed their Summons and Complaint against Lockheed Martin Corporation ("Lockheed") and numerous other defendants, in the Supreme Court of the State of New York, County of New York, and were assigned Index Nº 190152-11 ("State Court Complaint"). The State Court Complaint incorporated by reference the New York City Asbestos Litigation ("NYCAL") – Weitz & Luxenberg, P.C. Standard Asbestos Complaint for Personal Injury Nº 7, and thereby alleged causes of action sounding in products liability, negligence, loss of consortium, as well as other claims arising from plaintiff Charles C. Albrecht's personal injuries caused by his occupational exposures to asbestos-containing products manufactured, distributed sold or otherwise marketed or applied by defendants.

Upon plaintiffs' filing of the instant action in the New York state court, the case was placed on the New York City Asbestos Litigation ("NYCAL") "*in extremis*" docket. Under the NYCAL Case Management Order, *in extremis* cases, in which the plaintiffs are suffering excruciating, inevitably fatal asbestos-caused cancer diseases, particularly mesothelioma, are assigned placement in "accelerated trial clusters." *See, e.g., In re New York City Asbestos Litig. – Horn, et al.*, Index Nos. 190281/2009, *et al.*, 2010 NY Slip Op 32462U, 2010 N.Y. Misc. LEXIS 4348, at *1 (N.Y. Sup. Ct., NY County, Sept. 9, 2010) (describing numerous cases "transferred as part of an *in extremis* cluster to this court pursuant to the NYCAL Amended Case Management Order for trial). Even where the victim, as in this case, may die before having seen his or her day in court, the accelerated schedule is adhered to, which affords the aggrieved family an expeditious resolution. *See In re New York City Asbestos Litig. – Collura v. A.O. Smith Water*

*Prods.,* Index № 112742/2004, 806 N.Y.S.2d 446, 446 (N.Y. Sup. Ct., NY County, Sept. 15, 2005) ("Every six months in May and November, 200 of them are taken from the extremis docket to be tried as quickly as possible with a schedule set for the following six months. The extremis docket consists of the most dire cases – those where the plaintiffs have died or suffer from an asbestos disease that is fatal").

Nevertheless, on or about August 26, 2011, defendant Lockheed filed a Notice of Removal in this Court of plaintiffs' State Court Action, pursuant to 28 U.S.C. §§ 1442(a) and 1446 [annexed as **Exhibit "1"**].  Because it clearly appears on the face of the Notice of removal that removal should not be permitted, plaintiffs filed their motion in the Southern District of New York, before the Honorable Barbara S. Jones, for remand to the state court, pursuant to 28 U.S.C. §§ 1445(c), 1446(c)(4) and 1447.  Alternatively, the federal court lacks subject matter jurisdiction in all events because there is no basis upon which the court can conclude that a conflict existed between the federal contracts and the defendant's state-law duty to warn, and hence there is no colorable federal defense for federal subject matter jurisdictional purposes.  Accordingly, plaintiffs have argued in the Southern District of New York, this case should also be summarily remanded pursuant to 28 U.S.C. § 1447.

The right of removal is a limited one, and is appropriate only when a federal interest in the matter exists.  *Willingham v. Morgan*, 395 U.S. 402 (1969).  Moreover, the removing party bears the burden of proffering evidence establishing a basis for jurisdiction.  *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011); *Meridian Sec. Inc., v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006).  Doubts regarding the propriety of removal must be resolved in favor of remand to the state court.  *California v. Atl. Richfield Co. (In re Methyl Tertiary Butyl*

*Ether ("MTBE") Products Liability Litig.*, 488 F.3d 112, 124 (2d Cir.2007) ("we have held that out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolv[e] any doubts against removability").

## B. THE WORKERS' COMPENSATION BAR PRECLUDES REMOVAL

Lockheed's Notice of Removal alleges that it "manufactured aircraft for the United States Armed Forces" while plaintiff Charles Albrecht was "employed as an aircraft mechanic in 1954 by Lockheed" [Exh. 1, at ¶ 3-4]. Lockheed attaches those portions of Mr. Albrecht's deposition testimony (Exh. 4 to Lockheed's Notice) corroborating the fact that plaintiff was a Lockheed employee when he sustained exposures to asbestos-containing materials for which Lockheed was responsible during the period when Lockheed performed work under Armed Forces contracts.

Under New York's Workers' Compensation Law, the administrative workers' compensation scheme provides the sole exclusive remedy against an employer when an employee is injured during the course of employment. N.Y. Workers Comp. L. § 11; *see Cunningham v. State*, 60 N.Y.2d 248, 251 (1983) ("Section 11 of the Workers' Compensation Law provides that the liability of an employer under that law shall be exclusive and in place of any other liability to the employee or his dependents for the injury or death of the employee").

Where, as here, the removing defendant itself concedes that the very claims against it upon which it bases its removal to the federal court could not have been at issue or prosecuted in the state court action, the removal is a nullity and the case must be summarily remanded. 28 U.S.C. § 1445(c) ("may not be removed"). *See Pabon v. Railroad Maintenance Corp.*, 79 A.D.2d 511, 433 N.Y.S.2d 566, 567-68 (N.Y. App. Div., 1st Dep't 1980) (Workers'

Compensation Law does not permit the Court "to interfere in matters within the exclusive competence of the board"); *Williams v. Jeffrey Management Co.*, 918 N.Y.S.2d 401 (N.Y. Sup. Ct., N.Y. County 2010) ("the court does not have original jurisdiction to entertain an action by an employee against his employer or co-employee for damages flowing from an injury incurred during the course of employment.  Exclusive jurisdiction resides with the Worker's Compensation Board"); *see also Sicktish v. Vulcan Industries of Buffalo, Inc.*, 33 A.D.2d 975, 307 N.Y.S.2d 385, 387 (N.Y. App. Div., 4th Dep't 1970) ("To bring an accident within the exclusive jurisdiction of the Workmen's Compensation Law, it is sufficient if the accident arises logically out of the employment and the hazards of the way in and way out are part of the employment.  It follows that plaintiff's remedy is under the Workmen's Compensation Law"); *see generally Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 7, 12 n.2 (1989) (noting that, "Under the Texas Workers' Compensation Act, an employee who suffers an injury in the course of employment 'shall have no right of action against [the] employer . . . but . . . shall look for compensation solely to the [employer's insurer]," and stating that, "In this case, removal would also be precluded by 28 U.S.C. § 1445(c) . . . which states: 'A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States'").

As the Honorable Matthew Jasen explained on behalf of the majority in the New York Court of Appeals decision in *O'Rourke v. Long*, 41 N.Y.2d 219 (1976), "It is axiomatic that, as to an employer, where workmen's compensation provides a remedy, the remedy that it provides, save for the rare case, is exclusive . . . .  If the right to sue the employer has been stripped away by workmen's compensation coverage, it is an arrogation of jurisdiction to consider a tort

complaint on its merits." 41 N.Y.2d at 221.

      The Workers' Compensation bar in this case is somewhat analogous – albeit in far stronger form – to a plaintiff's disclaimer or waiver of claims arising out work done on federal projects. Courts have sometimes ruled that such waivers require remand to the state court. *See, e.g., Westbrook v. Asbestos Defendants (BHC)*, Nº C-01-1661 VRW, 2001 U.S. Dist. LEXIS 11575, at *5-7 (N.D. Cal. July 31, 2001); *accord Madden v. A.H. Voss Co.*, Nº C 09-03786 JSW, 2009 U.S. Dist. LEXIS 101680, at *8-9 (N.D. Cal. Oct. 21, 2009); *see generally Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976) ("the plaintiff has the prerogative of determining the theory of his action and . . . may defeat removal to the federal courts by avoiding allegations which provide a basis for the assertion of federal jurisdiction"); *Carpenter v. Wichita Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. 1995) (same); *King v. Provident Bank*, 428 F. Supp. 2d 1226, 1231 (M.D. Ala. 2006) ("in the present case, King has very clearly alleged only state law claims and has stated that she disclaims any potential federal law claims. Therefore, the Court finds that there is no basis for federal question jurisdiction"); *cf. Despres v. Ampco-Pittsburgh Corp.*, 577 F. Supp. 2d 604, 608 (D. Ct. 2008) ("Unlike in *Westbrook,* the Plaintiffs in this case have not excluded from their claims against Viad all instances of asbestos exposure as a result of Griscom-Russell's work on behalf of the Navy").

      In sum, plaintiffs are not asserting, and could not under New York law assert, the claims upon which Lockheed has removed this case. Any such claims arise under the exclusive remedy provisions of New York's Workers' Compensation Law, and the case is therefore nonremovable, pursuant to 28 U.S.C. § 1445(c). That removal is improper is apparent on the face of Lockheed's Notice of Removal and the exhibits annexed thereto, and therefore this case should also be

remanded pursuant to 28 U.S.C. §§ 1446(c)(4) and 1447(c).

In its opposition brief filed in the Southern District of New York on September 12, 2011, Lockheed responds that "plaintiff is wrong" with respect to the Workers' Compensation point because, according to Lockheed, "plaintiff's alleged common law torts . . . do not 'arise under' any workers' compensation scheme, and because "[n]owhere in the Complaint does Plaintiff allege a single cause of action under, or even mention, New York Workers' Compensation Law" [Doc. 12, Case 1:11-cv-05990-BSJ (S.D.N.Y. Sept. 12, 2011), at pp. 1, 2, 10].

Lockheed is correct about plaintiffs' Complaint, but entirely misguided about what this means with respect to the court's subject matter jurisdiction. The point is that, for any claims upon which Lockheed purports to derive the ability to remove this case to federal court, any such claims would have to arise under New York's Workers' Compensation Law. No such claims appear in plaintiffs' Complaint, and this is because such claims cannot be brought in the New York state court, and plaintiffs did not bring them. Lockheed now attempts to transform the shield provided to it, immunizes it from suit for employment-related injuries, into a sword permitting it to remove this case and to thereby deprive plaintiffs of their chosen forum (and to substantially delay their day in court).

C. **LACK OF A COLORABLE FEDERAL DEFENSE REQUIRES REMAND**

Apart from the absence of any claims in this case that would afford this Court subject matter jurisdiction, based on the Workers' Compensation Law, it is also the case that the federal court lacks subject matter jurisdiction because Lockheed's removal papers have not sufficiently alleged any colorable federal defense.

Lockheed alleges that its work during Mr. Albrecht's tenure as a Lockheed employee was "under the direction of the Secretaries of the Departments of Defense, United States Army, Air Force, and Navy" [Exh. 1, at ¶ 10]. Lockheed claims that it is therefore entitled to removal based upon a government contractor defense, both as to plaintiffs' design defect and failure to warn claims [Exh. 1, at ¶¶ 11-12]. However, requisite to having raised a colorable federal defense, the defendant must show that the Government's specifications or contract terms made it impossible for the contractor simultaneously to comply with those specifications and to fulfill State law warnings requirements. *E.g., In re New York City Asbestos Litig. – Ronsini v. Garlock, Inc.*, 256 A.D.2d 250, 251 (N.Y. App. Div., 1st Dep't 1998) (no basis for defendant's requested government contractor defense absent such a conflict); *Hilbert v. McDonnell Douglas Corp., supra*, 529 F. Supp. 2d 187, 199-200, 202 (D. Mass. 2008) (rejecting defendants' "claim that the military specifications, though not explicitly forbidding warnings about asbestos, were so precise that the defendants could not simultaneously warn about asbestos and conform to the specifications," and concluding that "there is simply no basis upon which the Court can conclude that a conflict existed between the federal contracts and the defendants' state-law duty to warn"); *In re Joint Eastern & Southern Dist. Asbestos Litig. – Ferraiuolo*, 715 F. Supp. 1167, 1169 (E.D & S.D.N.Y. 1988) ("[o]n the facts of *Boyle*, compliance with both federal and state mandates at once was impossible because each dictated a contrary helicopter design. The federal specifications, for reasons of military necessity, called for a hatch that opened outward, while state law called for a hatch that opened inward. By contrast, in this case, because the federal specifications were silent on the matter of warnings, defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications"); *Granier v. Northrup*

*Grumman Ship Sys.*, Civ. Action № 06-3738 Section "L"(1), 2008 U.S. Dist. LEXIS 103245, at *9-10 (E.D. La. Dec. 12, 2008) ("[a]lthough Avondale arguably 'acted under' the Navy's direction when working by detailed instructions to build the destroyers, the specifications under the contract specified technical parameters, and only had more general references to safety regulations.  The federal government provided no direction on warnings when using asbestos, and further did not prevent Avondale from taking its own safety precautions above the minimum standards incorporated in the federal contracts.  Thus, the Court finds that Avondale has failed to establish a causal connection between the Navy's direction pursuant to the design contracts and plaintiff's failure to warn claims").

Similarly, with regard to plaintiffs' design-defect claims, the defendant's burden in establishing the cognizability of a government contract defense is to show that compliance with the specifications or contracts would have directly contradicted, and been incompatible with, State law safe-design requirements.  More specifically, if the specifications or contracts called for a particular performance level, but did not otherwise require the use of asbestos *and only asbestos* in order to obtain that performance level, defendants cannot properly seek to hide behind a "government-made-me-do-it" defense.  *E.g., Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1486 (5th Cir. 1989) (defendant "argues that the Navy approved the design specifications set forth in each of the working drawings, and points to the signature of a government official in a box marked 'approved' at the bottom of each of the working drawings.  The district court, however, found that 'the level of review here was not sufficient to constitute 'approval'. . . .  The district court [correctly] held that . . . [t]he Navy set only general performance standards leaving the details to [defendant]") (cited approvingly by the Honorable

Jack B. Weinstein in *Isaacson v. Dow Chemical Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 304 F. Supp.2d 404, 434 (E.D.N.Y. 2004)); *Green v. A.W. Chesterton Co.*, Civil № 04-218-P, slip op., at 10 (D. Me. Feb. 22, 2005) [annexed hereto as **Exhibit "2"**] ("I cannot rule out whether [defendant] chose to incorporate asbestos insulation into the subject products in order to meet a performance specification as opposed to an asbestos specification"); *Snowdon v. A.W. Chesterton Co.*, Civil № 04-219-P, slip op., at 10 (D. Me. Feb. 22, 2005) [annexed hereto as **Exhibit "3"**] (same).

**1. Failure to Warn**

In the removal context, when presented with the pertinent military specifications which actually address the warnings issue, courts have held that there is no colorable federal defense for federal subject matter jurisdictional purposes. For example, the full record of Navy specifications has been analyzed by Captain Arnold P. Moore, who has helped design six major classes of naval warships and been instrumental in the modernization of three additional classes. Annexed hereto as **Exhibit "4"** is Captain Moore's curriculum vitae. Attached as **Exhibit "5"** is the Declaration of Captain Arnold P. Moore, originally submitted in support of remand to the New York State court in the case of *Smith v. Anchor Packing Co.*, № 08 Civ. 7219 (GEL), 2008 U.S. Dist. LEXIS 92041 (S.D.N.Y. Nov. 12, 2008). The Declaration and the documents annexed thereto establish, beyond any reasonable doubt, that the Navy afforded the contractors the discretion, and indeed encouraged and "required" them, to warn about hazards [Exh. 5, at ¶ 11].[1]

---

[1] For clarity, this Brief annexes Captain Moore's Declaration without exhibits, but annexes certain of his exhibits separately, where relevant, as exhibits to this Declaration,

Captain Moore explained, for example – as illustrative of the Navy's expectation that its contractors *would* take the initiative to issue adequate warnings – that one defendant, Foster Wheeler, submitted drawings subsequently approved ("rubber stamped") by the Navy, which drawings "specifically require[] a boiler component to be equipped with a warning plate. Clearly this drawing illustrates that the U.S. Navy did not prohibit manufacturers from providing warning plates when manufacturers deemed them necessary" [Exh. 5, at ¶ 22]. The Foster Wheeler drawing referenced by Captain Moore is annexed hereto as **Exhibit "6"**.[2]

In his Order in *Smith* granting plaintiff's motion to remand the case for lack of federal jurisdiction (albeit principally on other grounds), Judge Gerard E. Lynch noted that "[t]he federal defense asserted [on the basis of the Lehman allegations] was in any event, for the reasons advanced by plaintiffs, somewhat dubious." Also fairly recently, the Honorable Shira A. Scheindlin issued a remand ruling in *Miranda v. Abex Corp.*, № 08 Civ. 5509 (SAS) (S.D.N.Y. Oct. 31, 2008), annexed hereto as **Exhibit "7"**. In *Miranda*, Judge Scheindlin concluded that "[a] review of the evidence submitted by GE shows that it has failed to assert a colorable federal defense [because] GE can assert a federal defense only if the Air Force 'dictated' the content of warnings to it" [Exh. 7, at 8-9]. As in the present cases, defendants' assertions "suggest[ed] that the government was silent as to whether or not (GE was) permitted to warn" [Exh. 7, at 10].

Moreover, flatly belying Lockheed's (implicit) claim that the contractors would have had no discretion to affix warnings of their own to products they delivered to the Armed Forces

---

[2] The warning requirement written by Foster Wheeler, and submitted to the Navy, appears on the second page of this exhibit, in the center of the drawing, as follows: "Note: 1 drawn valve . . . To be equipped with a warning plate inscribed thus: 'use only when all oil burners are secured'" [Exh. 6].

during Mr. Albrecht's exposure period, 1954, annexed as **Exhibit "8"** is a copy, in relevant part, of the Navy's "Interim Military Specification: Book, Instruction, Preparation, Contents and Approval"–MIL-B-15071A(Ships), effective October 20, 1952.  The section addressing "General Data" which equipment suppliers should include within the instruction book or manual they supply with their equipment prescribes that this portion of the contractor's manual "shall contain data such as the following:  a "[s]afety notice (where high voltages or special hazards are involved)" [Exh. 8, at § 3.5.1.1(a)].[3]

     Further subsections within this 1952 specification advise that equipment manuals "shall contain methods of installation, alignment, precautions, mounting instructions, recommendations regarding shielding, grounding or bonding" [*id*., at § 3.5.1.3].  Clearly, this provision concerning information to be provided with respect to installation of the equipment leaves it to the contractor to provide complete and correct "precautions" and safety guidance.  The specification similarly requires "simple, brief and effective instructions, including normal routines and precautions to be observed in starting, operating, and shutting-down the equipment" [*id*., at § 3.5.1.5], "as well as instructions for disassembly and replacement of worn or damaged parts" [*id*., at § 3.5.1.6].  Another provision prescribes generally that "[i]nstructions shall be included stressing the importance of properly maintaining any safety devices, interlocks, provided to prevent damage to equipment or injury to personnel" [*id*., at § 3.4.1.8.1(f)].  This provision of the actual specification addressing "safety devices" is utterly inconsistent with any claim that the Navy

---

       [3]     The specification annexes a sample "warning" which concerns "voltages over 300 volts," but the specification's prescription, once again, is that data "such as" any such warning shall be included, and no example is provided with regard to "special hazards" other than high voltages, leaving this to the contractor's discretion.

would have prohibited asbestos-related safety warnings. For by this provision of the very sort of specification cryptically alluded to but tellingly omitted from Lockheed's papers, the Navy *invited and required* that contractors inform equipment users of the need to maintain safety measures that could prevent injury to personnel.

Because the specification was largely otherwise silent, the contractor retained discretion to provide the content of any such safety notice, precautions, and instructions, depending upon the nature of, or special hazards associated with, the particular product being supplied. In all events, the specification evinced a concern that the contractor adequately provide instructions and precautions with regard both to equipment maintenance and personal safety. More to the point, there is absolutely nothing whatsoever about this document which supports the view that any defendant was prevented by Government regulations from issuing warnings regarding the hazards of asbestos, as Lockheed would have this Court conclude.

To state a tautology, the contractor whose manual or instruction book accompanying its product complied with the above-referenced specification would necessarily have been deemed to have been in substantial compliance with the specification; and the specification would allow for a finding of substantial compliance in the event the contractor chose to comply with state law by warning about the hazards of its product's asbestos-containing components. Absent, at the very least, colorable evidence – and not merely insupportable speculation – establishing that the Armed Forces would have precluded defendant contractors from warning, defendant is certainly not entitled to removal on this defense.

Annexed hereto as **Exhibit "9"** is a copy, in relevant part, of the "Military Specification: Technical Manuals for Mechanical and Electrical Equipment"–MIL-T-15071B(Ships), effective

August 16, 1954. This document patterns the 1952 specification, and the two appear to be equivalent in all relevant respects.

Under such circumstances, and given the above proofs, even had Lockheed alleged, as required under federal officer removal jurisprudence, that Government specifications would have conflicted with state law warnings requirements, any such claims would be speculative and, indeed, false. For, as shown, the military specifications governing the manuals and instructions to accompany equipment supplied to the Government establish exactly the opposite proposition from that advanced by defendant – namely, that the Armed Forces required, and thus would not have prohibited, defendant from providing safety warnings in compliance with New York state law during plaintiff's exposure period.

Even apart from the probative nature of the milspecs governing product instructions and manuals, courts have deemed the assertions of defense witnesses who have attempted, on occasion (albeit not in the instant remand papers), to proffer an opinion, without basis, that the Government "would have" prohibited warnings, too speculative, and otherwise insufficient, to support removal. *See e.g., Hilbert* [Exh. 4]; *Westmiller v. IMO Indus.*, Case № C05-945RSM, 2005 U.S. Dist. LEXIS 29371, at *8 (W.D. Wa. Oct. 20, 2005) (deeming Admiral Ben J. Lehman's affidavit without "sufficient specificity to establish a colorable [federal government contractor] defense," and his statements "too vague to constitute a showing of 'reasonably precise specifications' that were imposed during the relevant time period").

In sum, as Captain Moore attests, the Government did not dictate warnings and safety requirements, did not prevent manufacturers from warning, but rather "relied heavily upon its manufacturers and vendors to identify hazards associated with their products," and "to provide

warnings" about those hazards [Exh. 5, at ¶¶ 11-12].  It is thus clear that defendant certainly could have complied both with its contract terms requirements and with state law warnings requirements.  As stated in *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653 (E.D. Tex. 1999), "the federal government provided no direction or control on warnings when using asbestos; moreover, the federal government did not prevent Defendants from taking their own safety precautions heeding state-law standards . . . ."  48 F. Supp. 2d at 663.

     Accordingly, "[a]t a minimum, courts have restricted the applicability of the government contractor defense in failure to warn cases to situations in which the government's approval or prohibition of certain warnings has precluded a contractor from complying with state-law duties to warn. . . .  In the specific context of asbestos cases, the *Boyle* standard means that, even if a federal contract mandates the use of asbestos in a certain product, yet provides no requirements as to the warnings to be furnished regarding exposure to asbestos, a contractor could comply with everything 'promised the Government' while at the same time following the 'state-prescribed duty of care' both to warn regarding asbestos exposure and to create procedures to avoid potentially fatal exposure to asbestos dust."  *Weese v. Union Carbide Corp.*, Civil № 07-581-GPM, 2007 U.S. Dist. LEXIS 73970, at *27-29 (S.D. Ill. Oct. 3, 2007).

     As further stated relatively recently by the Federal court in *Holdren v. Buffalo Pumps, Inc.*, Civil Action № 08cv10570-NG, 2009 U.S. Dist. LEXIS 38253 (D. Mass. May 4, 2009), defendants "together submitted volumes of evidence seeking to show that the Navy would not have permitted them to warn about the dangers of asbestos, if they had tried.  But the Court's decision rests ultimately on what is missing from the record.  The defendants have submitted no evidence that the Navy expressly prohibited asbestos warnings by manufacturers; no evidence

that they ever attempted to warn about asbestos destined for the Navy; no evidence that the Navy ever rejected any other manufacturer's proposed asbestos warning; and no evidence that defendants warned of asbestos on other, non-military equipment they produced during the same period, by contrast to the equipment they supplied to the Navy. Finally, they offer no persuasive evidence of an overall Navy-wide policy that would have conflicted with manufacturer asbestos warnings." 2009 U.S. Dist. LEXIS 38253, at *9-10][4]; *see also* Memorandum and Order, *In re Joint Eastern and Southern Districts Asbestos Litigation – Grispo et al.*, CV-88-4577 (S.D.N.Y. June 27, 1989) (Hon. Charles P. Sifton) [annexed hereto as **Exhibit "10"**] (the history of government specifications do not provide "a sufficient basis for a rational inference that the government affirmatively prohibited warnings from being given").

### 2. Design Defect

It has been shown above that, in the design context, the defendant's burden even in establishing the cognizability of a government contract defense is to show that compliance with the specifications or contracts would have directly contradicted, and been incompatible with, state law safe-design requirements. If the specifications called for a particular performance level, but did not otherwise strictly require the use of asbestos *and only asbestos* in order to obtain that performance level, defendants cannot properly seek to hide behind a "government-made-me-do-it" defense. *Trevino, supra*; *Green* [Exh. 2]; *Snowdon* [Exh. 3]. Moreover, the contractor's supply to the Government of the same products, following the same design, that it sold

---

[4] In *Miranda* [Exh. 7], Judge Scheindlin cites approvingly to *Hilbert*, in ruling that "GE's asserted federal defense fails," similarly observing that "GE fails to 'rebut the obvious inference: that [it] never tried to warn about asbestos at all'" [Exh. 7, at 10].

commercially in non-government contracting contexts, enhances the manufacturer's burden in proving active government involvement in the product's design. *E.g., Isaacson, supra*, 304 F. Supp.2d 404, 434 ("Ordering ordinary off-the-shelf toothpaste in its usual commercial packaging would not satisfy this prong").

Recently, in *Prewett v. Goulds Pumps (IPG)*, Case № C09-0838 RSM, 2009 U.S. Dist. LEXIS 91732 (W.D. Wa. Sept. 9, 2009), the Federal court addressed defendant's assertion that the government contractor defense was "colorable" (for removal purposes) in respect to the design defect causes of action. The Court explained that state law is displaced only "where a significant conflict exists between an identifiable federal policy or interest and the operation of state law." 2009 U.S. Dist. LEXIS 91732, *11 (quoting *Boyle*, 487 U.S. 500, 512).

The *Prewett* Court noted that defendant sold asbestos-containing equipment to the Government that was similar to what it sold commercially, and in such a case "the government contractor defense is inapplicable." 2009 U.S. Dist. LEXIS 91732, *13. Moreover, said the Honorable Ricardo S. Martinez in *Prewett*, "[c]ompliance with performance standards is not necessarily incompatible with state law, thus there is no conflict between state products liability and a contractor's duties under its government contract and no displacement of state law." *Id.*, at *15]. As in *Prewett*, Lockheed has wholly failed to demonstrate "that the Navy substantively considered the use of asbestos and made a discretionary decision to approve it" with regard to this defendant's products to which plaintiff's decedent was exposed; nor does defendant establish that the Government required asbestos components and only asbestos components in relation to these cases. *Id.*, at *16-17.

Finally annexed in this regard, as **Exhibit "11"**, is the Declaration of Joseph H. Chilcote,

17

dated July 9, 1981, with his exhibits attached. Mr. Chilcote was a project engineer with the Department of the Navy, Bureau of Ships, from 1942 through 1964. He attested that the Navy did not, and could not practicably, develop its own specifications for thermal insulation materials. Rather, the Bureau of Ships "invariably consulted with industry to determine product availability from preexisting commercial sources," and regularly met with industry representatives, from whom the specifications were derived and taken [Exh. 11, at ¶ 3].

As Mr. Chilcote further attested, in procuring insulation or other asbestos-containing products, the Navy relied wholly upon the manufacturers' "specific and comprehensive knowledge," and adapted its needs and specifications "to products and materials already commercially available," as revealed by the manufacturers [Exh. 11, at ¶3]. Accordingly, it was the contractors' discretion, not the Navy's, which pre-determined the asbestos content of any such products supplied to the Navy during the relevant time periods.

The principal case relied upon by Lockheed in opposing remand in the Southern District of New York is *In re "Agent Orange" Prod. Liabity Litig.*, 517 F.3d 76 (2d Cir. 2008), wherein the Second Circuit discussed the Boyle standard whereby a government contractor defense may lie if, among other factors, "the United States approved reasonably precise specifications for the allegedly defectively designed equipment." *Id.*, at 88. Lockheed disregards the *Agent Orange* Court's articulation fleshing out the standard however, whereby the Court emphasized that, "[w]here the government merely rubber stamps a design, . . . or where the government merely orders a product from stock without a significant interest in the alleged design defect, the government has not made a discretionary decision in need of protection, and the defense is therefore inapplicable." *Id.*, at 90 (omitting citations). Nor does Lockheed show any regard for a

principle distinction between the instant case and that in *Agent Orange*, namely, that in the latter case "the plaintiffs do not dispute the defendants' assertions that 2,4,5-T and 2,4-D were not commercially available at the same high concentrations as that contained in Agent Orange." *Id.*

D.  **CONCLUSION**

For all of the foregoing reasons, plaintiffs respectfully submit that their instant motion for an order vacating the conditional transfer order as to the instant plaintiffs be granted.  In the alternative, plaintiffs respectfully request that the panel adjourn this matter until Judge Jones, in the Southern District of New York, has had the opportunity to rule on plaintiffs' related motion to remand this case to the New York state court.

Dated:   New York, New York
            September 13, 2011

//ss// *Alani Golanski*
_____
ALANI GOLANSKI [AG-8165]