

**L. MARIE SNOWDON, Individually and As Personal Representative of the Estate of FREDERICK L. SNOWDON, Deceased, Plaintiff, v. A.W. CHESTERTON COMPANY, et al., Defendants.**

Civil No. 04-219-P

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE**

366 F. Supp. 2d 157; 2005 U.S. Dist. LEXIS 2987; CCH Prod. Liab. Rep. P17,397

**February 22, 2005, Decided**

**DISPOSITION:** Motion to remand was granted.

**COUNSEL:** [**1] For L MARIE SNOWDON, Personal Representative of the Estate of Frederick L. Snowdon, Sr., Deceased, Plaintiff: ANTONIO PYLE, PITTSBURG, PA; G. WILLIAM HIGBEE, MCTEAGUE, HIGBEE, CASE, COHEN, WHITNEY & TOKER, P.A., TOPSHAM, ME.

For A W CHESTERTON COMPANY, Defendant: JOHN B. MANNING, JONATHAN F. TABASKY, COOLEY, MANION, JONES, BOSTON, MA; STEVEN R. RAND, DESMOND & RAND, P.A., WESTBROOK, ME.

For BUFFALO PUMPS, Defendant: DAVID M. GOVERNO, JENIFFER A.P. CARSON, GOVERNO LAW FIRM LLC, BOSTON, MA; JOHN HUBBARD RICH, III, PERKINS, THOMPSON, HINCKLEY & KEDDY, PORTLAND, ME.

For CARRIER CORPORATION, Defendant: DANIEL RAPAPORT, PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLC, PORTLAND, ME; PETER J. RUBIN, BERNSTEIN, SHUR, SAWYER, & NELSON, PORTLAND, ME.

For CLIFTON ASSOCIATES formerly known as JOHNSON ASBESTOS CORP, Defendant: JUDITH PERITANO, PIERCE, DAVIS & PERITANO, BOSTON, MA.

For EASTERN REFRACTORIES CO INC, Defendant: JOHN HUBBARD RICH, III, PERKINS, THOMPSON, HINCKLEY & KEDDY, PORTLAND, ME; THOMAS SCHULTEN, PERKINS, THOMPSON, HINCKLEY & KEDDY, Portland, Maine.

For GENERAL ELECTRIC CO, Defendant: CATHERINE A. MOHAN, SUZANNE RAUDENBUSH, MCCARTER & ENGLISH, LLP, [**2] HARTFORD, CT; JOEL BENEDICT CASEY, MICHAEL J. PEARCE & ASSOCIATES, PORTLAND, ME.

For GOULD PUMPS INC, Defendant: JEFFREY T. EDWARDS, PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLC, PORTLAND, ME.

For HOPEMAN BROTHERS INC, PATTERSON PUMP CO Individually and as Successor to C.H. Wheeler Manufacturing, Defendants: BRITA J.

FORSSBERG, STEVEN F. WRIGHT, WRIGHT AND ASSOCIATES, PORTLAND, ME.

For NEW ENGLAND INSULATION CO, Defendant: THEODORE H. KIRCHNER, NORMAN, HANSON & DETROY, PORTLAND, ME.

For RAPID AMERICAN CORP, Defendant: EDWARD S. MACCOLL, MARK G. FUREY, THOMPSON, BULL, FUREY, BASS & MACCOLL, LLC, P.A., PORTLAND, ME.

For VIACOM INC as Successor-in-Interest by Merger to CBS Corporation formerly known as WESTINGHOUSE ELECTRIC CORP., Defendant: ELIZABETH G. STOUDER, RICHARDSON, WHITMAN, LARGE & BADGER, PORTLAND, ME.

For WLB HOLDING CO, Defendant: MICHAEL E. SAUCIER, THOMPSON & BOWIE, PORTLAND, ME.

**JUDGES:** Margaret J. Kravchuk, U.S. Magistrate Judge.

**OPINION BY:** Margaret J. Kravchuk

**OPINION**

[*159] **MEMORANDUM OF DECISION** [1] ON MOTION TO REMAND

> 1  Pursuant to *Fed.R.Civ.P. 73(b)*, the parties have consented to allow United States Magistrate Judge Margaret J. Kravchuk decide plaintiffs pending motion to remand.

[**3] The plaintiff L. Marie Snowdon has moved for remand of her state law wrongful death and products liability claims, which arise from the death of her husband, allegedly due to workplace exposure to asbestos that the defendants manufactured and supplied to the Bath Iron Works Corporation, where the plaintiff's husband was [*160] once employed as a pipefitter. Snowdon contends that defendant Viacom Inc. did not timely file its notice of removal and that its notice fails to satisfy the prerequisites for removal set by *28 U.S.C. § 1442*. (Mot. to Remand, Docket No. 2; Brief in Support, Docket No. 3.) I conclude that the removal petition was timely filed, but fails to establish that this court has jurisdiction under *§ 1442(a)(1)*, the federal officer removal statute. Accordingly, I now **GRANT** Snowdon's motion to remand.

**Findings of Fact**

Snowdon's second amended complaint was filed in state court in April 2004. The allegations set forth in the complaint assert in very general terms, *inter alia*, that Viacom is liable in negligence for producing and supplying asbestos-containing products to the decedent's employer, Bath Iron Works, in violation of a duty owed [**4] to the decedent to provide a product not unreasonably dangerous and to exercise reasonable care in the production and marketing of such products. (Second Am. Compl., PP 5-12, Docket No. 1, Ex. A.) Viacom filed an answer in due course, and identified as an affirmative defense the government contractor defense, sometimes referred to as the military contractor defense. (Answer to Second Am. Compl., 13th Affirmative Defense, Docket No. 3, Ex. B.)

Viacom then commenced certain discovery initiatives designed to uncover the nature of the decedent's work at Bath Iron Works, including the names of the particular vessels he worked on. On September 14, 2004, Viacom received, through counsel, supplemental interrogatory responses submitted by Snowdon, in which Snowdon specified the particular Navy ships that her husband had worked on. Based on this response, Viacom was able to ascertain from its records particular asbestos-insulated turbines and related components that the decedent may have been exposed to that had been manufactured and supplied by its predecessor-in-interest, Westinghouse Electric Corporation. Viacom subsequently filed a notice of removal on October 12, 2004, within 30 days of [**5] its receipt of Snowdon's supplemental interrogatory responses.

In support of its notice of removal, Viacom submitted two affidavits, discussed below. Those

affidavits reflect that, as a general matter, the turbines Westinghouse constructed and supplied to the Navy for the vessels on which the decedent worked were constructed in accordance with navy regulations and specifications and the construction process itself was subject to the ongoing control, direction and oversight of the Navy.

**The Removal Standard**

Pursuant to *28 U.S.C. § 1442(a)(1)*:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office. . . .

In order for a government contractor defendant to successfully remove a state law claim to federal court under *§ 1442(a)(1)*, [**6] the defendant must demonstrate two things: (1) that it acted under the direction of an officer of the United States in the performance of its contract duties and (2) that it has a colorable basis to satisfy the three elements of the federal contractor "defense" [2] standard prescribed by the [*161] Supreme Court in *Boyle v. United Technologies Corporation, 487 U.S. 500, 512, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988)*. See *Freiberg v. Swinerton & Walberg Prop. Servs., 245 F. Supp. 2d 1144, 1150 (D. Co. 2002)*; *Crocker v. Borden, Inc., 852 F. Supp. 1322, 1325 (E.D. La. 1994)*; *Pack v. AC & S, Inc., 838 F. Supp. 1099, 1101 (D. Md. 1993)*; *Ryan v. Dow Chem. Co., 781 F. Supp. 934, 939, 945 (E.D.N.Y. 1992)*. [3] With respect to a products liability case such as this, in order to satisfy the "acting under" requirement of *§ 1442(a)(1)*, the removing defendant must demonstrate that the government specified the composition of the offending product at issue so that there is a "causal nexus between the federal officer's directions and the plaintiffs claims." *Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 398 (5th Cir. 1998)*; *Ryan, 781 F. Supp. at 947* [**7] ("The rule established is that removal by a person acting under' a federal officer must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.").

2   There is some question whether the doctrine really amounts to a "defense" as opposed to a standard of liability. See *Ryan, 781 F. Supp. at 944-45*.

3   It has been something of a habit for courts to state the removal test in three parts:

(1) whether the defendant can demonstrate it was acting under the direction of a federal officer or agency;

(2) whether a colorable federal defense is made out; and

(3) whether there is a causal connection between the activities conducted by the contractor and the claims asserted in the state court action.

See *Freiberg, 245 F. Supp. 2d at 1150*; *Crocker, 852 F. Supp. at 1325*; *Pack, 838 F. Supp. at 1101*. I have stated the test in two parts because, as a practical matter, the "acting under" prong and the "causal connection" prong overlap. See *Winters, 149 F.3d at 398*. Occasionally there is also a fourth dispute over a defendant's ability to qualify as a "person" under *§ 1442*. See id. There is no such challenge presented in this case and I am unaware of any case in which it was found that a corporation could not

qualify as a "person" acting under a federal officer or agency.

[**8] As for demonstrating a colorable federal contractor defense (sometimes referred to as the military contractor defense), the Supreme Court has prescribed a three-part test:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle*, 487 U.S. at 512. Because the defendant invokes the jurisdiction of the court, it bears the burden of establishing that an exercise of federal jurisdiction is proper. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 831 (1st Cir. 1997). See also *Jones & Jones v. Pineda & Pineda*, 22 F.3d 391 (1st Cir. 1994) ("Once the federal defendant has a plausible federal defense, removal is appropriate so that the federal court may determine whether the defense succeeds. A federal defendant need not show that he is entitled to prevail in order to have [**9] access to the federal forum.") (quoting *Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994)). To meet their burden, the defendant may present facts "by traverse," *Mesa v. California*, 489 U.S. 121, 132, 103 L. Ed. 2d 99, 109 S. Ct. 959, *i.e.*, by averring facts additional to those set forth in the plaintiffs' complaints, because the federal officer removal statute "serves to overcome the well-pleaded complaint' rule which would otherwise preclude [*162] removal even if a federal defense were alleged." *Id.* at 136.

**Discussion**

Snowdon argues that Viacom's notice of removal was not timely filed because Viacom failed to file it within 30 days of Snowdon's second amended complaint, even though Viacom asserted the federal contractor defense in its answer. Alternatively, Snowdon argues that Viacom's notice is deficient because it fails to establish that Viacom (actually Viacom's predecessor, Westinghouse Electric Corporation) was "acting under" a federal officer when it engaged in the conduct giving rise to her claims or that Viacom has a colorable federal contractor defense. I address these concerns in turn.

**A. Timeliness**

Snowdon makes much of the fact that Viacom raised [**10] the possibility of a federal contractor defense among other affirmative defenses set forth in its answer to the second amended complaint. According to Snowdon, if Viacom could foresee the possible applicability of this defense, it must have also been on notice that the case was removable. I do not find this argument so compelling. In order to assert sufficient facts to support a removal notice that is premised on the government contractor defense, Viacom needed some information tending to establish that the decedent's exposure to asbestos related to a Westinghouse product procured by the government pursuant to a contract that specifically called for the use of asbestos as a component. The allegations contained in the second amended complaint are far too general and sweeping to provide a basis for Viacom to reasonably conclude that the deceased was exposed to such a product, unless, of course, all of the asbestos Westinghouse ever supplied to BIW was supplied pursuant to contracts with the US Navy that specifically called for the use of asbestos. Presumably, any contractor falling into this category would be quick to proclaim the fact. There is no suggestion that Viacom or Westinghouse [**11] met this criterion I do not consider it reasonable to require every federal contractor who petitions for removal under the federal officer removal statute to disavow the possibility that the plaintiff might have been exposed to asbestos in connection with the construction of non-government ships, thereby effectively admitting that a plaintiff could have been exposed to asbestos from products manufactured by the contractor for which the federal contractor defense would not be available.

Viacom's notice of removal reflects that its first ascertainment of a colorable basis for asserting the federal contractor defense in positive averments of fact occurred on September 14, 2004, with its receipt of supplemental interrogatory responses submitted by Snowdon, in which Snowdon indicated that her husband had worked on specific Navy ships for which Westinghouse had supplied asbestos-insulated turbines pursuant to contracts with the US Navy that, according to Westinghouse, called for the incorporation of asbestos insulation. Because the October 12, 2004, filing of the notice of removal came 28 days after Viacom's receipt of Snowdon's supplemental interrogatory response, and because the supplemental [**12] interrogatory response was the first "paper" from which it could be ascertained that the case was removable, the notice was timely under *28 U.S.C. § 1446*.

### B. The *§ 1442* "Acting Under" Requirement

Snowdon contends that Viacom cannot show that "any federal officer directly controlled and supervised the work" Westinghouse performed on turbines [*163] (Docket No. 3 at 7) or that the Navy "ordered Westinghouse to use asbestos thermal insulation or controlled any warnings given by Westinghouse in connection with the sale or use of its product" (Id. at 8). The inquiry here is whether the evidence adduced by Viacom demonstrates that the US Navy specified the incorporation of asbestos into the defendant's product to which the decedent was exposed so that there is a "causal nexus between the federal officer's directions and the plaintiffs claims." *Winters, 149 F.3d at 398*; see also *Ryan, 781 F. Supp. at 950* (explaining that mere provision of a dangerous product pursuant to a government order will not support removal where the claim is based on product design and manufacture). I conclude that the evidence offered by Viacom is [**13] not sufficiently probative to satisfy that standard.

Viacom endeavors to meet its burden with an affidavit recently subscribed to under penalty of perjury by James M. Gate, "former Manager of Design Verification of the Marine Division of Westinghouse Electric Corporation," and a 1996 affidavit subscribed to in like fashion by Roger B. Horne, Jr., "a retired Rear Admiral of the United States Navy," who, throughout his Navy career, "concentrated in ship design, engineering, construction, overhaul and inspection." The portions of the Horne affidavit that Viacom highlights in its memorandum reflect that turbine design, construction, repair and inspection were subject to Navy "control," "oversight," and "monitoring," including on-site inspection of Westinghouse's turbine manufacturing facility in Sunnyvale, California. (Horne Aff., P 7.) I am satisfied that these and the other averments in the Horne affidavit establish for present purposes that Westinghouse's construction of turbines, in general, constituted activity subject to the control and direction of federal officers and agents of the US Navy. However, Viacom fails to highlight anything in either the Horne affidavit or the exhibits [**14] attached to the affidavit that demonstrates that any Navy contracts -- or regulations or specifications incorporated into any Navy contract -- required the utilization of asbestos insulation in conjunction with turbine construction. That information is supplied exclusively in the Gate affidavit, which relates:

> The contracts incorporate NAVSEA contract specifications, which in turn incorporate military specifications, and these documents require use of asbestos-containing thermal insulation for the turbines (Gate Aff., P 13);
>
> There [were] military specifications known as MilSpecs . . . which governed all aspects of ship construction. The MilSpecs totaled tens of thousands of pages and governed all aspects of a vessel's design and construction and specified the materials to be used, including asbestos-containing thermal insulation (Id., P 16);
>
> The U.S. Navy specifications for the Westinghouse turbines . . . incorporated several lower-level specifications, including those governing the components or materials used for or with the turbines.

> . . . Some of these specifications required the use of asbestos-containing materials, such as thermal insulation for turbines [**15] (Id., P 17); and
>
> Each turbine was specifically designed for the vessel or class of vessels in question. In other words, the turbines for a vessel or class were not interchangeable, but instead, were custom built, *i.e.*, the instruments were not "off the shelf" product (Id., P 18).

According to Viacom, the Horne and Gate affidavits "establish conclusively that Westinghouse was acting pursuant to comprehensive and detailed regulations authorized by the Secretary of the Navy, including regulations requiring the use of [*164] asbestos-containing materials as thermal insulation for the turbines, and pursuant to . . . direct orders." (Opp'n of Def. Viacom, Docket No. 8, at 9.)

Snowdon takes issue with the Horne affidavit because it refers to and incorporates documents that do not make any mention of asbestos. Snowdon takes issue with the Gate affidavit because it refers to asbestos-specific regulations and specifications without attaching any documents. Snowdon also informs the court in an affidavit submitted by her counsel that shortly after the filing of Viacom's notice of removal she requested by letter that Viacom produce copies of the asbestos-specific regulations [**16] or specifications mentioned in the Gate affidavit. (Higbee Aff., P 6, Docket No. 3, Ex. C.) The letter sent in response to the request, authored by Viacom's counsel, brushed off the request, stating: "Please be advised that we believe the information in the [Gate] affidavit is sufficient. We do not intend to provide additional information at this time." (Oct. 19, 2004, Letter of Elizabeth Stouder, Esq., attached to Higbee Aff. as Ex. 2.) According to Snowdon, Viacom's failure to produce the regulations or specifications means that "there is nothing before the Court to establish that in supplying asbestos containing thermal insulation . . . Westinghouse was acting pursuant to an officer's direct orders." (Docket No. 3 at 8-9.) Viacom relegates its rejoinder to a footnote in its opposition memorandum:

> In an effort to distract the Court from focusing its attention on the Horne Affidavit and the Gate Affidavit to support Westinghouse's position that it "acted under" a federal officer, the Plaintiff raises the fact that she requested the specifications Gate referred to in his affidavit and Westinghouse denied the request. This was in an attempt by the Plaintiff to suggest that [**17] like the defendant seeking removal in *Freiberg*, Westinghouse has no contractual support for its claims that the federal government had direct control over Westinghouse. Unlike the defendant seeking removal in *Freiberg*, Westinghouse does not object to, and is able to, provide the Plaintiff with the United States Navy specifications requiring the use of asbestos-containing products. Westinghouse simply requests that the Plaintiff follow the Federal Rules of Civil Procedure which require the Plaintiff to serve discovery requests on Westinghouse rather than to send a letter to counsel for Westinghouse asking for the documents.

(Docket No. 8 at 9 n.2.) Viacom's repeated reference to Freiberg is interesting.

In Freiburg, the asbestos-producing defendant who sought removal pursuant to § 1442 clearly recognized, as did the court, the desirability of producing the actual documents that might conclusively establish the necessary proof that the government specifically ordered that the defendant install asbestos in a military facility. *245 F. Supp. at 1151*. However, the defendant sought to avoid having to present the underlying documents because the facility [**18] in question was "high security," the government had retained all of the relevant documents, and the defendant wanted to

avoid the "extremely time consuming' process of having the government review and turn over the documents." *Id.* In contrast, Viacom here reveals that it is presently able to provide the specifications at issue, but feels the plaintiff ought not have a chance to see them until discovery is commenced. It seems to me that Viacom overlooks the fact that it bears the burden of proof on the appropriateness of this court asserting federal jurisdiction and that the court itself has a certain interest in seeing the actual documents so that it need not deign to enter findings based on an affiant's hearsay, whether or not it is offered under penalty of perjury. With that, I turn to addressing the affidavit testimony offered by Viacom.

[*165] As for the Horne affidavit, I am not concerned with its failure to mention asbestos-specific requirements. It is apparent that the affidavit is designed simply to convey the high degree of control and oversight that the US Navy exercises over the construction and maintenance of all military vessels. The Horne affidavit is not designed to address [**19] the more specific issue of whether a particular contractor's products or components incorporated asbestos pursuant to US Navy requirements. That is the purpose of the Gate affidavit.

As for the Gate affidavit, I agree with Snowdon that the failure to incorporate as exhibits any of the actual asbestos-specific regulations or specifications that are referred to in the affidavit and that are presently available to Viacom raises a real and significant concern. [4] On balance, limited as I am to considering the Gate affidavit on the decisive question of whether Westinghouse was "acting under" a federal officer or agency with specific reference to its use of asbestos-containing insulation on vessel turbines and related components, I conclude that Viacom fails to carry its burden under § *1442*. First, in every instance in which Gate speaks of asbestos-specific regulations, he does not state that the US Navy regulations or specifications *specified* asbestos. Rather, he states that that the US Navy regulations or specifications *required* asbestos. Although the distinction seems trivial, I cannot rule out whether Viacom chose to incorporate asbestos insulation into the subject products [**20] in order to meet a performance specification as opposed to an asbestos specification. See, e.g.,*Cabalic v. Owens-Corning Fiberglas Corp., No. C 94-2571 EFL, 1994 WL 564724, *3, 1994 U.S. Dist. LEXIS 14380, *9 N.D. Cal. Oct. 6, 1994)* (Order of Remand) (finding that defendant failed to provide proof that its product incorporated asbestos pursuant to a design uniquely specified for government use where "the government specifications at issue relate to performance requirements and not design or manufacturing requirements.") Second, Gate's affidavit testimony, which simply describes the content of the regulations and specifications is, in the absence of the documents themselves, nothing more than hearsay and is not entitled to any weight. Because Viacom fails to carry its burden of proving that Westinghouse was "acting under" a federal officer or agency when it incorporated asbestos into its products, I **GRANT** Snowdon's motion for remand.

> 4   I am not so much concerned with Viacom's refusal to produce the documents to Snowdon at her request. The point is that it does not produce them in support of its notice of removal but admits that it has them available for such production.

[**21] **Conclusion**

For the reasons stated above, Snowdon's motion for remand (Docket No. 2) is **GRANTED.**

*So Ordered.*

Dated February 22, 2005

Margaret J. Kravchuk

U.S. Magistrate Judge