ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-04545-TEH

Koszalka v. Huntington Ingalls Incorporated et al
Assigned to: Hon. Thelton E. Henderson
Demand: $0
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 09/13/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**Lisa Koszalka**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Bruce*
*Waygood, Deceased*

represented by **David R. Donadio**
Brayton Purcell LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
(415) 898-1555
Fax: (415) 898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
(415) 898-1555
Fax: (415) 898-1247
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**United States Steel Corporation**
*formerly known as*
USX Corporation

| Date Filed | # | Docket Text |
|---|---|---|

| 09/13/2011 | 1 | COMPLAINT for Survival, Wrongful Death - Asbestos & Demand for Jury Trial - [Summons Issued] against Huntington Ingalls Incorporated & United States Steel Corporation, [Filing Fee: $350.00, Receipt Number 34611064612] Filed by Plaintiff Lisa Koszalka. (tn, COURT STAFF) (Filed on 9/13/2011) (tn, COURT STAFF). (Additional attachment(s) added on 9/14/2011: # 1 Complaint) (tn, COURT STAFF). (Entered: 09/14/2011) |
| --- | --- | --- |
| 09/13/2011 | 2 | SUMMONS Issued as to Defendants Huntington Ingalls Incorporated & United States Steel Corporation. (tn, COURT STAFF) (Filed on 9/13/2011) (tn, COURT STAFF). (Entered: 09/14/2011) |
| 09/13/2011 | 3 | ADR SCHEDULING ORDER: Joint Case Management Statement due 1/2/2012 & InitialCase Management Conference set for 1/9/2012 at 1:30 PM.. (tn, COURT STAFF) (Filed on 9/13/2011) (Entered: 09/14/2011) |
| 09/13/2011 | 4 | NOTICE of Tag-Along Action filed by Plaintiff Lisa Koszalka. (tn, COURT STAFF) (Filed on 9/13/2011) (Entered: 09/14/2011) |
| 09/13/2011 | 5 | Certification of Interested Entities or Persons filed by Lisa Koszalka. (tn, COURT STAFF) (Filed on 9/13/2011) (Entered: 09/14/2011) |
| 09/13/2011 | 6 | Declination to Proceed Before a United States Magistrate Judge & Request for Reassignment to a United States District Court Judge filed by Plaintiff Lisa Koszalka. (tn, COURT STAFF) (Filed on 9/13/2011) (Entered: 09/14/2011) |
| 09/13/2011 | | CASE DESIGNATED for Electronic Filing. (tn, COURT STAFF) (Entered: 09/14/2011) |

| PACER Service Center | | |
| --- | --- | --- |
| Transaction Receipt | | |
| 09/15/2011 09:30:08 | | |
| **PACER Login:** bp0355 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 3:11-cv-04545-TEH |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON✠PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

ORIGINAL
FILED

2011 SEP 13  P 3: 08

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7  # E-filing

8  ## UNITED STATES DISTRICT COURT

TEH

9  ## NORTHERN DISTRICT OF CALIFORNIA

10  ## SAN FRANCISCO DIVISION

| | |
|---|---|
| 11 LISA KOSZALKA, as Wrongful Death Heir, and as Successor-in-Interest to | No. **CV 11 4545** |
| 12 BRUCE WAYGOOD, Deceased, | |
| 13       Plaintiff, | COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL |
| 14 vs. | |
| 15 HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP | |
| 16 GRUMMAN SHIPBUILDING, INC.), UNITED STATES STEEL | |
| 17 CORPORATION (FKA USX CORPORATION), | |
| 18       Defendants. | |
| 19 | |

20  ## I.

21  ## PARTIES

22       1.      Plaintiff in this action is the above-captioned successor-in-interest to, or the

23  personal representative of the estate of Decedent; and the personal representatives on behalf of

24  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

25  "Plaintiff."

26       2.      The person who sustained asbestos-related lung injuries and death as a result of

27  their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

28  hereinafter "Decedent" is, with the date of death: BRUCE WAYGOOD died September 15,

BRAYTON✠PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1    2010.  LISA KOSZALKA is the daughter of BRUCE WAYGOOD and is hereinafter referred to

2    as "Successor-in-Interest."

3        3.    Decedent sustained an asbestos-related lung disease and death by precisely the

4    following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

5    containing products at Decedent's jobsites.  The pathogenesis of Decedent's asbestos-related

6    diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by

7    reference herein.

8        4.    All of Plaintiff's claims arise out of a similar series of occurrences:  repeated

9    exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

10   and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period

11   of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,

12   resulting in cumulative, progressive, incurable lung diseases.

13       5.    Each Plaintiff claims damages for an asbestos-related disease arising from an

14   identical series of occurrences not dependent on Decedent's worksite but on the fact that

15   asbestos-containing products, when handled in the manner in which they were intended, released

16   harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The

17   allegations of Plaintiff regarding the nature of Decedent's asbestos-related diseases, the nature of

18   asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all

19   identical.

20       6.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

21   mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

22   proprietorships and/or other business entities organized and existing under and by virtue of the

23   laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

24   said defendants, and each of them, were and are authorized to do and are doing business in the

25   State of California, and that said defendants have regularly conducted business in the State of

26   California.

27   ///

28   ///

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.      <u>Jurisdiction</u>:  Plaintiff LISA KOSZALKA is a citizen of the State of California.

Defendants are each corporations incorporated under the laws of and having its principal

places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia/Virginia |
| UNITED STATES STEEL CORPORATION (FKA USX CORPORATION) | Delaware/Pennsylvania |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

between citizens of different states in which the matter in controversy exceeds, exclusive of costs

and interest, seventy-five thousand dollars.

8.      <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of

California and assignment to the San Francisco Division of said district is proper as a substantial

part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred

within the County of San Francisco, California, and Defendants are subject to personal

jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
(Negligence - Survival)

PLAINTIFF LISA KOSZALKA AS SUCCESSOR-IN-INTEREST TO THE

DECEDENT BRUCE WAYGOOD COMPLAINS OF DEFENDANTS HUNTINGTON

INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.),

UNITED STATES STEEL CORPORATION (FKA USX CORPORATION), THEIR

"ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR

NEGLIGENCE ALLEGES:

9.     At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively be called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos.  The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

///

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. |
| | AVONDALE SHIPYARDS, INC. |
| | CONTINENTAL MARITIME INDUSTRIES, INC. |
| | EASTERN IDAHO CONSTRUCTION COMPANY |
| | INGALLS SHIPBUILDING, INC. |
| | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
| | NORTH CAROLINA SHIPBUILDING |
| | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
| | SERVICE ENGINEERING INDUSTRIES, INC. |
| UNITED STATES STEEL CORPORATION (FKA USX CORPORATION) | USX CORPORATION |
| | CONSOLIDATED WESTERN PIPE & STEEL |
| | CONSOLIDATED WESTERN STEEL CORPORATION |
| | CONSOLIDATED STEEL SHIPYARD |
| | WESTERN PIPE & STEEL |
| | CONSOLIDATED SHIPBUILDING CORP. |
| | UNITED STATES STEEL, LLC |
| | U.S. STEEL SUPPLY |
| | U.S. STEEL COMPANY |
| | COLUMBIA STEEL COMPANY |
| | AMERICAN BRIDGE & IRON |
| | CARNEGIE-ILLINOIS STEEL CORPORATION |
| | FEDERAL SHIPBUILDING |
| | AMERICAN TRISTAR |
| | OIL WELL SERVICING COMPANIES |
| | OIL WELL SUPPLY COMPANY |
| | MARATHON OIL CORPORATION |
| | COLUMBIA-GENEVA STEEL DIVISION |

10.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,

1  supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,

2  installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,

3  rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

4  and other products containing asbestos, in that said products caused personal injuries to users,

5  consumers, workers, bystanders and others, including the Decedent herein, (hereinafter

6  collectively called "exposed persons"), while being used in a manner that was reasonably

7  foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by

8  "exposed persons."

9      12.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

10  exercise due care in the pursuance of the activities mentioned above and defendants, and each of

11  them, breached said duty of due care.

12      13.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

13  have known, and intended that the aforementioned asbestos and products containing asbestos and

14  related products and equipment, would be transported by truck, rail, ship, and other common

15  carriers, that in the shipping process the products would break, crumble, or be otherwise

16  damaged; and/or that such products would be used for insulation, construction, plastering,

17  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

18  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

19  breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

20  release of airborne asbestos fibers, and that through such foreseeable use and/or handling

21  "exposed persons," including Decedent herein, would use or be in proximity to and exposed to

22  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

23  persons working in proximity to said products, directly or through reentrainment.

24      14.     Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-

25  containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's

26  exposure to asbestos and asbestos-containing products is on current information as set forth at

27  various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference

28  herein.

15.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

16.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17.     Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

18.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19.     As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, ///

1   from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven

2   at trial.

3        21.    As a further direct and proximate result of the said conduct of the defendants,

4   their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,

5   entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

6   pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is

7   requested to amend this complaint to conform to proof at the time of trial.

8        22.    As a further direct and proximate result of the said conduct of the defendants,

9   their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-

10  containing products caused severe and permanent injury to Decedent, and ultimately Decedent

11  died on the date previously stated herein.

12       23.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

13  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

14  had full knowledge of, or should have known of, each of the acts set forth herein.

15       24.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the

16  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

17  and each defendant's officers, directors, and managing agents participated in, authorized,

18  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

19  each of their ALTERNATE ENTITIES as set forth herein.

20       25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

21  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in

22  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed

23  persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive

24  damages against said defendants.

25       WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

26  each of them, as hereinafter set forth.

27  ///

28  ///

SECOND CAUSE OF ACTION
(Products Liability - Survival)

PLAINTIFF LISA KOSZALKA AS SUCCESSOR-IN-INTEREST TO THE

DECEDENT BRUCE WAYGOOD COMPLAINS OF DEFENDANTS HUNTINGTON

INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.),

UNITED STATES STEEL CORPORATION (FKA USX CORPORATION), THEIR

"ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE,

FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY

(SURVIVAL), COMPLAIN AS FOLLOWS:

26.     Plaintiff incorporates herein by reference, as though fully set forth herein, each

paragraph of the First Cause of Action  herein.

27.     Defendants, their "alternate entities," and each of them, knew and intended that

the above-referenced asbestos and asbestos-containing products would be used by the purchaser

or user without inspection for defects therein or in any of their component parts and without

knowledge of the hazards involved in such use.

28.     Said asbestos and asbestos-containing products were defective and unsafe for their

intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

and/or death.  The defect existed in the said products at the time they left the possession of

defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

persons," including Decedent herein, while being used in a reasonably foreseeable manner,

thereby rendering the same defective, unsafe, and dangerous for use.

29.     "Exposed persons" did not know of the substantial danger of using said products.

Said dangers were not readily recognizable by "exposed persons."  Said defendants, their

ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

which Decedent and others similarly situated were exposed.

30.     In researching, manufacturing, fabricating, designing, modifying, testing or failing

to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

1   sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

2   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

3   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

4   and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

5   did so with conscious disregard for the safety of "exposed persons" who came in contact with

6   said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

7   ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

8   death resulting from exposure to asbestos or asbestos-containing products, including, but not

9   limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part,

10  from scientific studies performed by, at the request of, or with the assistance of, said defendants,

11  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

12  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

13          31.     On or before 1930, and thereafter, said defendants, their ALTERNATE

14  ENTITIES and each of them, were aware that members of the general public and other "exposed

15  persons," who would come in contact with their asbestos and asbestos-containing products, had

16  no knowledge or information indicating that asbestos or asbestos-containing products could

17  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

18  members of the general public and other "exposed persons," who came in contact with asbestos

19  and asbestos-containing products, would assume, and in fact did assume, that exposure to

20  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

21  hazardous to health and human life.

22          32.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

23  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

24  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

25  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

26  asbestos-containing products without attempting to protect "exposed persons" from, or warn

27  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

28  asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn

1  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

2  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

3  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

4  and suppressed said knowledge from "exposed persons" and members of the general public, thus

5  impliedly representing to "exposed persons" and members of the general public that asbestos and

6  asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their

7  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

8  representations with the knowledge of the falsity of said implied representations.

9      33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

10  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

11  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

12  manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

13  sale, inspection, installation, contracting for installation, repair, marketing, warranting,

14  rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

15  directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

16  products.  In pursuance of said financial motivation, said defendants, their ALTERNATE

17  ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

18  were consciously willing and intended to permit asbestos and asbestos-containing products to

19  cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

20  including Decedent.

21      34.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE

22  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

23  products, to be safe for their intended use, but that their asbestos and asbestos-containing

24  products, created an unreasonable risk of bodily harm to exposed persons.

25      35.    Plaintiff relied upon defendants', their ALTERNATE ENTITIES, and each of their

26  representations, lack of warnings, and implied warranties of fitness of asbestos and their

27  asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

28  suffered permanent injury and death as alleged herein.

36.     As a direct and proximate result of the actions and conduct outlined herein, Decedent have suffered the injuries and damages herein alleged.

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

PLAINTIFF LISA KOSZALKA, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO BRUCE WAYGOOD DECEASED, COMPLAINS OF DEFENDANTS HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), UNITED STATES STEEL CORPORATION (FKA USX CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

37.     Plaintiff incorporates by reference each paragraph contained within the First Cause of Action as though fully set forth herein.

38.     The heirs at law of the Decedent and their relationship to the Decedent is set forth above.

39.     The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

40.     As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiff was unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41.     At all times prior to his death, Decedent was a parent to Plaintiff children.

42.     As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

///

1   of care, society, comfort, attention, services, and support of Decedent all to the damage of

2   Decedent's heirs.

3       43.     As a further direct and proximate result of the conduct of defendants, and each of

4   them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount

5   currently not ascertained.

6       WHEREFORE, Plaintiff prays judgment against defendants, and each of them, as

7   hereinafter set forth.

8                        FOURTH  CAUSE OF ACTION
                         (Products Liability - Wrongful Death)

9

10      PLAINTIFF LISA KOSZALKA, AS WRONGFUL DEATH HEIR, AND AS

11  SUCCESSOR-IN-INTEREST TO BRUCE WAYGOOD, DECEASED, COMPLAINS OF

12  DEFENDANTS HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP

13  GRUMMAN SHIPBUILDING, INC.), UNITED STATES STEEL CORPORATION (FKA USX

14  CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A

15  FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

16  LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

17      44.     Plaintiff incorporates herein by reference, as though fully set forth herein, each

18  paragraph of the First, Second and Third Causes of Action herein.

19      45.     As a direct and proximate result of the conduct of defendants, and each of them,

20  Decedent's heirs have sustained the injuries and damages previously alleged.

21      WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

22  each of them, as hereinafter set forth.

23                              **IV.**

24                    **DAMAGES AND PRAYER**

25      WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

26  each of them in an amount to be proved at trial in each individual case, as follows:

27      (a)     For Plaintiff's general damages according to proof;

28      (b)     For Plaintiff's loss of income, wages and earning potential according to proof;

1    (c)    For Plaintiff's medical and related expenses according to proof;

2    (d)    For Plaintiff's cost of suit herein;

3    (e)    For exemplary or punitive damages according to proof;

4    (f)    For damages for fraud according to proof; and

5    (g)    For such other and further relief as the Court may deem just and proper, including

6    costs and prejudgment interest.

7    Dated: _____              BRAYTON❖PURCELL LLP

8

9                                        By: _____

10                                          David R. Donadio
                                           Attorneys for Plaintiff

11

12

13                                  JURY DEMAND

14        Plaintiff hereby demands trial by jury of all issues of this cause.

15

16   Dated: _____              BRAYTON❖PURCELL LLP

17

18                                       By: _____

19                                          David R. Donadio
                                           Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

K:\Injured\106705\FED\Pldgs\cmp-fed-(wd-no-spouse).wpd           14
                 COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

<u>Decedent</u>:  BRUCE WAYGOOD, Deceased.

<u>Decedent's injuries</u>:  Decedent was diagnosed with lymphoma on or about March 1995, with asbestosis on or about June 2008, and with asbestos-related pleural disease on or about September 1993.

Decedent died on September 15, 2010.

<u>Retirement Status</u>:  Decedent retired from his last place of employment at regular retirement age. He had therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

<u>Defendants</u>:  Plaintiff contends that the asbestos-containing products to which Decedent  was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.   Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| <u>Employer</u> | Location of <u>Exposure</u> | <u>Job Title</u> | Exposure <u>Dates</u> |
|---|---|---|---|
| Hall and Co. Endeans Building, Auckland, New Zealand | <u>SEAGULL</u> (1907) | Deck Hand | 1944 (7 months) |
| Union Steam Ship Company of New Zealand | <u>KARITANE</u> (1938) | Deck Hand | 1944 (5 months) |
| United Fruit Company Panama City, Panama | <u>SAN BRUNO</u> (1920) | Ordinary Seaman | 4/29/1945-5/17/1945 |
| Matson Navigation Company Pier 32 San Francisco, CA | <u>JAMES GORDON BENNETT</u> (1942) | Messman | 7/23/45-10/14/45 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| American Hawaiian Steam Ship Company | CAROLINIAN (1921) | Able-Bodied Seaman | 11/6/45-3/26/46 (on and off) |
| Bethlehem Steel Shipyard, Mariposa Street, San Francisco, CA | Various unknown ships | Sailor | 05/7/1946-12/31/1961 (off and on) |
| W. R. Chamberlin & Co. | MOLINE VICTORY (1945) | Able-Bodied Seaman | 5/14/46-11/25/46 |
| Pacific Tankers Inc., United States | MISSION SANTA ANA (1945) | Able-Bodied Seaman | 1/31/47-5/20/47 |
| Pacific Far East Lines, San Francisco, CA | GREAT REPUBLIC (1943) | Able-Bodied Seaman | 7/23/47-9/19/47 |
| Matson Navigation Co. Oakland, CA | HAWAIIAN CITIZEN (1944) | Able-Bodied Seaman | 10/18/47-3/11/48 |
| American President Lines, San Francisco, CA | PRESIDENT MONROE (1940) | Able-Bodied Seaman | 3/31/48-10/11/48 |
| Pacific Transport Lines, Pier 29, 31 San Francisco, CA | HONG KONG TRANSPORT (1945) | Able-Bodied Seaman | 2/23/1949-4/11/1950 |
| Pacific Transport Lines, Pier 29 San Francisco, CA | AMERICAN TRANSPORT (1941) | Able-Bodied Seaman | 7/13/1950 -4/12/1951 |
| Pacific Far East Lines, Pier 33, San Francisco, CA | PACIFIC BEAR (1944) | Able-Bodied Seaman | 7/10/51-10/13/51 |
| | Ports in Norfolk, VA; Haifa, Israel | | |
| Pacific Tankers, Inc. | SAUGATUCK (AO-75) | Boatswain | 1/21/52-7/17/52 |
| | Moore Dry Dock, Oakland, CA | | |
| | Port Hueneme, CA | | |
| | Ports in Philadelphia, PA; Panama; Guantanamo Bay, Cuba; San Juan, Puerto Rico; Sardinia, Italy; and Aruba | | |

*///*

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Coastwise Line Ships | CODINGTON (AK-173) | Deck Maintenance Man | 10/16/52-7/18/53 |
| | Port in Incheon, South Korea | | |
| American President Lines, Alameda, CA | SHOOTING STAR (1942) | Deck Maintenance Man | 10/5/53-10/31/54 |
| | Ports in Yokohama, Japan; Seattle, WA; Okinawa, Japan; Alameda, CA | | |
| Pacific Far East Line, San Francisco, CA | F. J. LUCKENBACH (1943) | Deck Maintenance Man | 1/24/55-2/9/56 |
| | Ports in Yokohama, Japan; Guam | | |
| American President Lines Pier 50 San Francisco, CA | SWARTHMORE VICTORY (1945) | Deck Maintenance Man | 5/10/56-7/27/56 |
| American President Line Ships, Pier 50 San Francisco, CA | GROVE CITY VICTORY (1945) | Deck Maintenance Man | 1/25/57-5/16/57 |
| | | Able-Bodied Seaman | 5/17/57-9/19/59 |
| Pacific Far East Line, San Francisco, CA | CANADA BEAR (1945) | Boatswain | 12/17/1957 - 3/26/1958 |
| Matson Navigation Co. Oakland, CA | HAWAIIAN EDUCATOR (1945) | Able-Bodied Seaman | 12/24/1958 - 5/31/1959 |
| United Vintners | ANGELO PETRI (1943) | Boatswain | 12/27/1960 - 2/22/61 |
| Matson Navigation Lines, Oakland, CA | HAWAIIAN FARMER (1944) | Able-Bodied Seaman | 1/10/1962- 5/10/1962 |
| | Pearl Harbor, HI | | |
| | California & Hawaiian Sugar, Crockett, CA | | |

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Association for the Preservation of the Presidential Yacht POTOMAC 520 Water St. Oakland, CA | POTOMAC | Boatswain | 1994-2005 (on and off) |

NON OCCUPATIONAL EXPOSURE

FRICTION WORK:
Decedent performed brake jobs and head gasket work on various personal vehicles. When performing brake jobs, decedent used the same routine on each occasion.  Decedent removed old drum brakes, cleaning the brake assemblies and drums with a brush, a rag and an air hose and installing new drum brakes.  Decedent scraped and chipped old burned out head gaskets off of engines.

Decedent purchased a 1956 Chrysler Imperial in 1960.  Decedent replaced the brakes  two times in the 1960s and 1970s with replacement parts from KRAGEN AUTO SUPPLY CO. (CSK AUTO, INC.), Potrero Hill, San Francisco, California.  Decedent removed the existing brake shoes and blew the assemblies out with an airhose

Decedent purchased a 1957 Chrysler Imperial in 1960.  Decedent replaced the brakes one time in the 1960s with replacement parts from KRAGEN AUTO SUPPLY CO. (CSK AUTO, INC.) Potrero Hill, San Francisco, California.  Decedent removed the existing brake shoes and blew the assemblies out with an airhose.

Decedent purchased a 1958 CHRYSLER Imperial in 1960.  Decedent replaced the brakes twice in the 1960s, including the manufacturer's original equipment brakes, with  replacement parts from KRAGEN AUTO SUPPLY CO. (CSK AUTO, INC.).  Decedent removed the existing brake shoes and blew the assemblies out with an airhose.

Decedent purchased four 1960s Volkswagen Vans in the late 1960s.  Decedent replaced the brakes twice on each in the late 1960s through the 1970s  with replacement parts from KRAGEN AUTO SUPPLY CO. (CSK AUTO, INC.).  Decedent removed the existing brake shoes and blew the assemblies out with an airhose.