```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3                              NEW ORLEANS

 4
      ROBERT ANDREW BOURGEOIS              DOCKET NO: 96-3764
 5                                         NEW ORLEANS, LOUISIANA
      VERSUS                               SECTION: "L"
 6                                         JANUARY 15, 1996
      A. P. GREEN INDUSTRIES, INC.,
 7    ET AL
                                               PETITION FOR REMOVAL
 8

 9    ******************************************************

10
                           TRANSCRIPT OF HEARING
11              BEFORE THE HONORABLE ELDON E. FALLON
                         U.S. DISTRICT JUDGE
12
      ******************************************************
13    APPEARANCES:

14
      FOR PLAINTIFF:                 MICKEY P. LANDRY, ESQ.
15                                   LEBLANC, MAPLES & WADDELL,
                                     PLACE ST. CHARLES
16                                   201 ST. CHARLES AVENUE - 3204
                                     NEW ORLEANS, LOUISIANA  70170
17                                   (504) 524-3223

18    FOR AMERICAN MOTORISTS:        ROBERT E. CARAWAY, III, ESQ.
                                     PLAUCHE, MASELLI & LANDRY,
19                                   201 ST. CHARLES AVENUE - 4240
                                     NEW ORLEANS, LOUISIANA  70170
20                                   (504) 582-1142

21
      COURT REPORTER:                PATRICIA F. DURONCELET
22                                   501 MAGAZINE STREET
                                     NEW ORLEANS, LOUISIANA  70130
23                                   (504) 589-7781

24
      RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIBED BY CAT
25
```

**EXHIBIT 3**

Patricia F Duroncelet, CCR

Exhibit 3 - Volume 1

1                THE CLERK: Civil action number 96-3764, Robert
2    Andrew versus A. P. Green, et al.
3                THE COURT: Counsel make appearances for the
4    record.
5                MR. LANDRY: Mickey Landry for the plaintiff?
6                MR. CARRAWAY: Robert Caraway for American
7    Motorists Insurance Company.
8                THE COURT: Gentlemen, I have read in detail all of
9    your briefs, they considerably deal with the issue in depth.
10   I have read the cases that you cited to me, some of them were
11   reported, some of them were not, but I will listen to any
12   oral argument that you feel I can profit from.
13               MR. LANDRY: Thank you, Your Honor, Mickey Landry
14   for the plaintiffs. Your Honor, the Court having indicated
15   that you are familiar with the briefs and the case law, I
16   will attempt to be brief and jsut reserve a little time if I
17   could to reply to Mr. Caraway's comments.
18               Your Honor, the first issue that I think the Court,
19   I respectfuly submit, that the Court should address is the
20   issue of timeliness. And, Your Honor, just as a little bit
21   of background, this is a class action lawsuit on behalf of a
22   gentleman exposed but not yet diagnosed with asbestos related
23   illness in the workplace employment. We filed this
24   encompassing class action for all areas. The vessels that
25   they worked on in the '60s and early '70s encompassed a large

1  amount of Navy vessels, more than what their brief indicates,
2  I believe its at page 22, that even the private vessels were
3  under extensive government control, not that I agree with
4  that, but that's their contention. If that is true, Your
5  Honor, they knew when this case was filed that they had an
6  opportunity, if there was a possibility to remove it, that
7  they had thirty days to do that. And, Yuor Honor, they say
8  that they didn't know until some discovery was done, that's
9  what they say, but, Your Honor, Judge Livadais, when
10 presented with the same question, thought that foolishness,
11 there are three thousand cases pending against these
12 gentlemen -- and Mr. Merick's case is in CDC and they know
13 what the basis of that liability is. They had thirty days,
14 they missed the thirty days.
15          THE COURT: That's the Porche' case?
16          MR. LANDRY: Yes, sir.
17          THE COURT: The motion for remand -- the motion to
18 remove was November the 19th, 1996?
19          MR. LANDRY: Yes, sir. Your Honor, I am going to
20 address, quickly, a couple of ponts and be brief. There's
21 two important cases that you really need to understand and
22 that's the Mesa case and the Bold case. Mesa involved a male
23 postal employee on his route who got into a traffic accident
24 and was cited for a traffic citation and tried to get into
25 federal court, and they said no you can't do that. Bold

involved a successful plaintiff whose son was killed in a helicopter. The helicopter door opened in or out and didn't allow the gentlemen to get in or out and he sufficated, he drowned. They sued the contractor for products liability. The court said no, the Navy specifically told you to make that door out, he got stuck, that's the example of when we should allow a defendant to be relieved of liability in that case. And, Your Honor, this case is not like that case. This case involves a claim against executive officers.

I received a brief from Mr. Caraway Monday night or Tuesday morning and I have not had a chance to file a response. There's a new case in the federal courts out in California and what they say is that the defense arises from a significant conflict between state law that would hold government contractors liable for design defective military equipment and federal districts in realizing the trade offs between greater state and greater combat effectiveness.

But, Your Honor, there is no conflict here, the Avondale executive officers could have built the vessels and not exposed my men to this dangerous chemical, they could have warned them and by warning them could have provided them with a safe place to work. That's really in essence the Bold discussion, and its really interesting to me, lagally, as far as when you get into the analysis of the Bold, you have to say is this military equipment. Now, Your Honor if it's

1 military equipment then it would have certain possibilities
2 of product liability for design defect attaching, but if its
3 not, then it wouldn't.
4     As a threshold matter I am not bringing, nor have I
5 brought, a cause of action against Mr. Caraway's clients for
6 product liability.
7     They make much of whether its a failure to warn,
8 Your Honor, I have attempted to make a comprehensive, state
9 based Louisiana state tort negligence claim, but what you
10 have to remember is that in this military contract defense,
11 one of the cases say that there's a difference between a can
12 of beans and a super duper aircraft carrier R67.  In this
13 California case, they brought the example of the IN RE:
14 HAWAII case, and in the IN RE: HAWAII case it said the
15 manufacturer conceded that the asbestos at issue was exactly
16 the same products sold in significant quantities to private
17 industry.  I have a letter from Mr. Cali, who represents
18 Owens-Corning Fiberglas, one of the defendants, which I will
19 file, offer and introduce into evidence and put into the
20 record, its going to be in my supplemental brief that I
21 didn't get their's until Tuesday morning, and Your Honor, I
22 provided a copy to the Court, it will be in my response.  And
23 Mr. Cali indicates that nothing is different about the K19s
24 and the military vessels or private vessels, its identically
25 the same.  So as to that, Your Honor, I don't think their

1  argument as to that issue carries much weight.

2  THE COURT: They take the position that the specs
3  called for asbestos and they put asbestos in, in the way the
4  specs called for it, and the specs were pretty specific in
5  deciding the type, or indicating the type and quantity and
6  quality and so forth. And they did what they were told to do
7  and therefore they were acting under the specific direction
8  of the government, therefore they had a right. What say you
9  on that?

10  MR. LANDRY: Well, Your Honor, that is belied by
11  the representations in sworn testimony given by Pete Territo
12  at page 135 of his deposition. He said that they were in
13  charge of safety. You know what that would be like, Your
14  Honor, that would be like a Navy vessel that needs a door, a
15  heavy steel door on it and when they lifted it up, it dropped
16  on some men and killed them, we'd say well we used a rope
17  instead of a chain, but we were supposed to put it on the
18  ship, so we are governed by the government contractor
19  defense. I'm not suing them because they used the spectus,
20  I'm suing because they didn't warn my clients. First of all,
21  they didn't tell them that asbestos was dangerous, they
22  didn't tell because they didn't know it was dangerous, they
23  couldn't protect themselves and because they couldn't protect
24  themselves they didn't provide them a safe place to work.
25  But that is the question, Your Honor, that the Court needs to

1  address is how much control did they have.

2  And that leads me right into what the Overlay court
3  was presented with and what this Court is going to be
4  presented with and what Judge Duval was recently presented
5  with and that is the only way that they can seek the comfort
6  of this government contractor defense is if they can tell you
7  that the government told them to put this product on the
8  vessel and not warn the employees.  They could have
9  segregated the work force, they could have provided them with
10 respirators.  Mr. Blanchard, this is how bazaar it gets, Your
11 Honor, their vice-president of production didn't even know
12 asbestos was dangerous until 1979.  He is a vice-president of
13 safety and that's at page 99 of his deposition.

14       THE COURT:  Before you sit down, on the
15 longshoreman harbor workers compensation act, what's the
16 significance of that?

17       MR. LANDRY:  Your Honor, we are pursuing claims
18 under the Louisiana state based laws.  The law was in flux
19 for a number of years and in 1992 the Cole versus Celotex
20 decision basically put to rest the argument of a cool
21 contraction; and what the Cole decision says was to decide
22 whether someone contracts a cause of action, -- and its a
23 Herculean task, I take it back, we can't do that.  So what we
24 are going to do, we are going to say a plaintiff in
25 Louisiana, when he receives the injury, the injury is event,

1  we are going to apply a key significant events test as
2  opposed to an accrual or contractor theory test. In that
3  vain, they looked at events and accidents and they said
4  events and accidents is the immediate time after the
5  exposure, an asbestos injury is a continual exposure and the
6  injuries happen as you breath the dust. What happened, then,
7  Your Honor, was they said, we will apply the law at the time
8  of the exposure. If you look at 1061 footnote 17, they talk
9  about a companion case where its not only a pre-exposure and
10 post-exposure to the comparative fault act and said we are
11 reminding you that we are not getting into this task of
12 deciding when a cause of action accrues, they use that
13 herculean business again, and we will apply the law at the
14 time of the exposure.
15        Now, there is an interesting case before Judge
16 Schwartz in a case called BERGERON, which they cited in their
17 opinion but they neglected to cite the subsequent case. In
18 the Bergeron case, Your Honor, its a little bit digressive,
19 but that case involved a wrongful death case and the Court
20 said no, a wrongful death doesn't come about until the person
21 dies, so we will apply the law at his death. Judge Schwartz
22 then had the benefit of the Cole opinion, and in 1994 he
23 reversed his previous opinion and said even for wrongful
24 death claims, the cause of action and the accrual is not the
25 issue, the issue is what law was in effect at the time of his

1 exposure.

2 And the interesting argument, at least from a legal
3 standpoint, I believe, is that they used the contribution
4 claim which is if a gentleman is exposed by a bunch of
5 defendants, their contribution claim is vested at the time of
6 exposure. So that what the Court said, Your Honor, is that
7 the event, the preliminary injury, the fault, the damages
8 took place at that time and the wrongful death was just
9 another component. I think if the Court would look at the
10 first decision, the analysis shows that the law is without
11 doubt at the time of exposure, at least in the federal
12 system. We have not had, to this date, have a supreme court
13 in a Louisana case say that that is the law. Although I will
14 tell you, recently, Your Honor, there is a case called Thomas
15 versus Amco that said for people exposed between 1952 and
16 1975, before they listed lung cancer a disease, you could sue
17 the company directly.

18 In any event, Your Honor, if we go back to '72,
19 Kent State, bell bottoms, Richard Nixon, that's the law we
20 are applying here and at that time the Supreme Court of the
21 United States issued a case called Sunship, and I'm sure the
22 Court is familiar with Sunship, but basically what Sunship
23 said was, we are not going to put these maritime workers at
24 the disadvantage of not knowing where they will full, we will
25 allow the longshore worker compensation act to supplement

1  rather than supplant, Your Honor.

2  After that case, the Louisiana Supreme Court in
3  Porche' versus Avaondale Shipyard, reviewed the jurisprudence
4  and accepted the Sunship rational. Subsequently, Your Honor,
5  Logan versus Louisiana Dry Dock in '89.

6  Now, they raise an interesting argument and that
7  argument is this, the workman's compensation law was changed
8  in 1989 to restrict a plaintiff who potentially could receive
9  benefits from the longshore workers compensation act and the
10 Louisiana workman's compensation act which says if you got a
11 chance for both, Louisiana law will direct you to federal, in
12 1990. Your Honor, my men were exposed in the '60s and '70s,
13 there's a Louisiana Supreme Court case directly on point
14 called Stelly and in that that was the issue, a man was
15 injured in '89, he files his cause of action in '90, after
16 the amendment, does he have a cause of action under Louisiana
17 workers comp, or is he relegated to what that says. And what
18 the Court says is no, they said that would be
19 unconstitutional. Your Honor, if in 1992 they couldn't use
20 the Louisiana comparative fault law to divest a plaintiff of
21 his vested substantive tort right under Louisiana law, which
22 was called a vested property right, if you couldn't do that
23 in '92, the Court made sure in '94 or '95, when the Stelly
24 case came out and said we are still not going to allow you to
25 do that, but if we did allow you to do that, it would be

1 unconstitutional, not only the Louisiana State Constitution
2 but the United States Constitution.
3     And I think the analogy is two guys working
4 together in '74, they get severely injured, one gentleman
5 dies, all of his rights are accrued then. One poor man holds
6 on until '78, you can't pass a law in '77 to take away his
7 cause of action, what laws you couldn't pass away in '90 to
8 take away his cause of action, which the Supreme Court has
9 told us vested at the time of exposure.
10     THE COURT: The same way with the plaintiff against
11 the executive officers, don't have the claim anymore, but you
12 still have it.
13     MR. LANDRY: That's correct, we still have that and
14 that's what we have. Now, I want to say one other thing and
15 if you have any more questions I will answer, but I will be
16 glad to sit down and allow. Mr. Caraway to respond.
17     There's a three part Mesa test and in that Mesa
18 test, the second part involves the state based defenses or
19 the federal contractor or the government defenses that they
20 have to the plaintiffs' claim. Now, there is a case, Your
21 Honor, on the longshore harbor worker that says this, the
22 longshore harbor workers act is nothing more than a statutory
23 defense to a state court cause of action. And then they said
24 this. The classic circumstance of non-removability. Now,
25 Your Honor, when they first filed their petition in the case

1  I identify with Judge Duval, I thought they were moving on
2  the longshore harbor worker, I wasn't aware of this federal
3  government defense and I researched that and there's a case
4  called Swift Ships and in that case they said that removal on
5  that basis of the longshore worker compensation was, "absurb
6  on its face and the court is generally troubled as to how any
7  claim can be made in good faith."  And Your Honor asked me,
8  if I had to be honest with Your Honor, Mr. Caraway didn't do
9  that, he went under the government contractor defense and
10 then kind of backdoored in under preemption.  He never said
11 preemption.  I think the supplemental momo is treading very
12 close now to the area that he can't be in, because if he's
13 just in the area of preemption, and that's the basis for
14 removal, that's a classic circumstance of non-removability.
15         One final comment, Your Honor.  The third part of
16 the Mesa requirements, requirements that you draw a causal
17 nexus between the conduct of the defendant and his imposed
18 duty by the government.  And I don't normally like to read,
19 but this is a premises liability case.  I will tell you what
20 they said.  And they said, "In that both the causal nexus and
21 causal federal defense are necessary requirements under 28
22 USC 1442, that is lacking, in essence, plaintiff's claims are
23 for negligence not for manufacturer of goods or equipment
24 that's directed to the federal government, therefore,
25 plaintiff's claims are clearly more analygous to the

1  prosecution by the State of California against postal
2  employees' negligent operation of postal vehicles while on
3  duty, where the Supreme Court found no federal jurisdiction
4  under federal law to removal."
5      And that's basically my argument, Your Honor.
6      THE COURT: Thank you, Counsel. Let me hear from
7  your opponent.
8      MR. CARAWAY: Thank you, Judge. Thank you,
9  Counsel. Judge, I will try to stay away as much as I can
10 from the things that we have tried to set forth as clearly as
11 I'm capable of, as much as I can, in my briefs and address
12 some of the things that Mr. Landry has brought up in oral
13 argument. I want to correct a few things, some of which I
14 think were inadvertant on the part of Mr. Landry. Mr.
15 Landry has reference to the vice-president, he was not the
16 vice-president of safety at Avondale, but the vice-president
17 of production. Mr. Landry on the notice issue said that,
18 gee, some of these vessels that the plaintiffs worked on were
19 private vessels and that Avondale takes the position that
20 even when individuals are working on private vessels that
21 they are subjected to this substantial government direction
22 and supervision and therefore we should have known on the
23 basis of our own position that within thirty days of the
24 filing of this suit we should have removed the case. If Your
25 Honor, and I know Your Honor has said that he has read the

briefs carefully, our position is not as Mr. Landry has characterized it, and I regret to say, as Judge Livadais characterized it in the Porche' case. Our position is that there were some private vessels built at Avondale that were built pursuant to government subsidy and that includes maybe a dozen or so steam powered, subsidized cargo projects, including some that we know or believe that at least three of these four plaintiffs worked on, but that the overwhelming majority of what can be termed private vessels at Avondale, has nothing to do with the government, in the sense of doing projects directly for the government or under government subsidy. When we say under government subsidy, those contracts are literally signed -- they are three way contracts, the United States government, for example, some ships that were built for Lykes back in the '60s, the United States government, Department of Commerce, Maritime Administration is a signatory on the contract as well as Lykes Brothers, for example, and Avondale.

We have provided Your Honor with the Avondale ship list, you can readily see that hundreds if not thousands of vessels have been built by Avondale since it's beginning in 1938. The great majority of those vessels have nothing whatsoever to do with any government requirements or specification or government supervision of the ship building project. And I feel like we have been put into a dilemma, of

1  course, we tried to address as much as we can and still be in
2  good faith in removing cases. Judge Livaudais' opinion but
3  he apparently misunderstood the facts that we asserted in
4  those briefs, I hope Your Honor appreciates them a little bit
5  better without going into detail.

6  There are many, many men who work at Avondale who
7  may or may not have been exposed to asbestos or have been
8  exposed to asbestos in the past, who have done no work at all
9  on ships built for the United States Navy or no work at all
10 on ships built under government subsidy for private
11 companies, and which therefore their claims would not be
12 removable. I do not have the means to tell whether or not
13 those claims are removable unless it says something in the
14 petition itself or until I obtain some document during the
15 course of the litigation that tells me based upon my
16 experience, on its face that the claims involve an issue of
17 federal jurisdiction under the federal office removal
18 statute.

19 THE COURT: Don't you find yourself in a difficult
20 situation along several lines with that argument? One, if
21 this were the first asbestos case filed in the country, I
22 could understand it a little more clearly that maybe you
23 didn't know, but all of us have lived long enough and been
24 around the block enough times to know that everything now in
25 this whole asbestos arena is on computer and you just plug in

1  a name and you get not only every dock the person worked on,
2  but every vessel a person worked on, and another button and
3  you get every asbestos product that he was exposed to and so
4  forth and so on. Its not like fishing in unchartered waters
5  in this one.
6         Secondly, as I read the petition, or the pleading,
7  you are also in a difficult situation in that it seems to me
8  that at Avondale you are not going to have a separate rule,
9  safety provision requirements for people who work aboard
10 government vessels and those who don't. You are not going to
11 have the A. team and B. team in so as far as the A. team you
12 are warned and the B. team you are not warned and then
13 asbestos is throughout, but simply because -- and so their
14 position throughout the country has been, in the cases that I
15 have been reading, have been that we are not complaining
16 about the selection of asbestos, we are complaining about the
17 fact that they were not warned of the hazards and/or supplied
18 with some safety provisions to guard against the hazards.
19 Because the fact that it's a hazard may be so, but you can do
20 something about it, otherwise we wouldn't be removing
21 asbestos from the buildings now. You can work around it if
22 you are provided with the proper gear or if you are warned of
23 the problem. And that's their position.
24         MR. CARAWAY: Judge, I will try to respond in brief
25 to really the three points that I think you've made. And I

think the first point is that - and I can understand Your Honor's presuming that somehow if you hang around the stuff long enough that we have to punch some buttons and we know everything there is to know about any of these claims once they are filed or within a short period thereafter. Maybe it should be that way, but it isn't that way. And the reality is that I don't even know, of course, I don't represent Avondale, but I don't know and I can tell you from discussions with the various lawyers for Avondale and with people at Avondale, they cannot even tell me, they could not give me a list if I asked for it tomorrow of every person who ever worked at Avondale. And that may be surprising to you, but its true. What happens is that the employment records of these individuals are located -- in most cases they are actually on micro film and located in four different offices in four different places at Avondale shipyards. There are personnel records, medical records, workman's compensation records, four bureauracies, when I request employment records for any given plaintiff, basically kick into motion.

And just so that you can see the context that we have been operating under for the last two years, and Mr. Landry knows this as well as anybody because most of the claims that we have defended have come out of his office to the tune of hundreds, over the last couple of years. We are literally getting employment records for plaintiffs the day