1  or two days, at most, in advance of their scheduled

2  depositions, just because of the time it takes for Avondale

3  people to go through the motions on request for dozens and

4  dozens of these records.

5         So, no, I don't have a button to push I wish I had.

6  I have got hundreds of claims that I'm defending, this

7  lawsuit both from the plaintiffs prospective and our

8  prospective essentially relative to most law suits have sat

9  dormant with almost no activity since the day it was filed.

10 We still don't have a Judge for this case.

11        THE COURT:  Is Judge Carmel still working?

12        MR. CARAWAY:  He apparently retired at the end of

13 the year and we have not been advised in any official way

14 that there's going to be a particular judge.  Rumor has it

15 that perhaps Judge Ward may take over this, but I don't have

16 any confirmation of that.  So I hope that you can appreciate

17 that I don't have this big, you know, super computerized data

18 bank in my little law firm, nor does Avondale or counsel for

19 Avondale have some resource where we can punch in a guy's

20 name and know within date of service of a petition or

21 everything that we need to know about him.  I have defended

22 claims brought by security guards alleging asbestos exposure.

23 And when I find that out, the last thing that I want to do is

24 remove that case to federal court.  That guy may have been

25 exposed to asbestos but he was was exposed to asbestos

Patricia F Duroncelet, CCR

Exhibit 3 - Volume 2

1  because he was a ship craftsman, working on a ship for the

2  United States government under heavy, daily supervision of

3  those government inspectors.

4          The second point that you raised has to do with,

5  well, you don't have a team A or B, and there's no question

6  about that, we don't have a team A or B at the Avondale

7  safety department, and it would be absurb to suggest, really,

8  that some standards that the Avondale safety department

9  operated under at any given historical time that somehow a

10 difference was made in the way in which the Avondale safety

11 department viewed these issues depending on whether or not it

12 involved a government project or not.  That's not the issue

13 though.  The issue, which is the threshold issue, as to

14 whether or not I have knowledge, I, as a defendant in this

15 case or my client, really, has knowledge sufficient to

16 warrant a good faith removal of a claim filed in state court

17 is whether or not the particular individual involved or who

18 has alleged the jury is an individual whose work was

19 performed substantially on projects that were, number one,

20 subject to the specifications and requirements that we have

21 provided Your Honor, probably more than you wanted to see;

22 and number two, which were subject to that intense government

23 supervision and inspection.  I mean I just simply don't have

24 a warrant to come into court.  Sure I have been around the

25 block now in this stuff and if I have a guy who worked at the

1   Avondale repair yard and he was exposed to asbestos.  I know
2   enough to think that the chances are pretty high that he was
3   exposed to asbestos on a boat or some kind of boat that was
4   being repaired over there.  What I don't know and I wouldn't
5   argue with is that the safety precautions that Avondale
6   undertook, were different in any manner.  What I don't know,
7   which is critical from the standpoint of federal
8   jurisdiction, is whether or not there was some kind of heavy
9   Navy involvement at the Harvey yard, and in most most cases
10  it would be no, and I would have to defend the suit, even in
11  federal and state court.

12         Mr. Landry mentions Aaron as if it somehow has some
13  relevance in what we have attempted to do here.  It stands
14  for the proposition that the longshore act within its own
15  terms does not advance a congressional intent to preempt the
16  entire litigation field with regard to issues that would give
17  rise to benefits under the longshore act, and that's all it
18  stands for.  Those were defendants who removed a case, not on
19  the basis of federal officer removal, but on the basis they
20  have preempted the whole field.  And our position here is
21  much more narrow than that; and it is that, as Your Honor
22  knows, that there is a preemption within the conflict between
23  the Louisiana law which allows co-employees to be sued and
24  the exclusive remedy provision seen back in 1959 in the
25  longshore act.

1          Now, the Porche' court wrote a very long opinion,
2    not without a descent, coming down on one side of this issue.
3    It is a complicated issue and presumably, as well qualified
4    and austere a group as the Alabama Supreme Court, looked at
5    the identical same issue and came down, I believe unanimously
6    on the other side of the issue.  There is no federal decision
7    that I can look to interpreting federal law as to this
8    specific question of whether or not there is preemption by
9    the federal act or the state act as to whether or not the men
10   that I insure can be sued.  Mr. Landry has not pointed to
11   one, if the Court is aware of one, or believes that somehow
12   Sunship decided the question --
13          THE COURT:  You feel that Sunship did not?
14          MR. CARAWAY:  Sunship did not and we specifically
15   refer to the footnote in our supplemental brief.
16          THE COURT:  I saw it.
17          MR. CARAWAY:  Which I think not only standing by
18   itself, but the Sunship court referred to that, there have
19   been at least two federal decisions that we also quoted in
20   our brief which have specifically interpreted various
21   aspects, although admittedly, not this exact issue, as
22   raising legitimate issues of preemption, selective
23   preemption, and what's involved here is really, its an
24   analysis under general federal preemption law, and that is
25   there's simply a conflict that's unvoidable.

1          THE COURT:  What's your argument, because from the

2    standpoint of the conflict, the conflict really comes about

3    primarily post '72 with the longshoreman act, prior to that

4    we got a little inkling of it, maritime logo cases, but by

5    and large there wasn't any conflict Jenson drew it at the

6    water's edge.  And his position is that his claim predates

7    all of this and therefore he is not concerned about that

8    situation because its not an issue here

9          MR. CARAWAY:  I have really a two prong response to

10   that.  One of them has to do with the particularities of this

11   particular lawsuit that we are dealing with here today.  The

12   petition alleges in this case is brought by four individuals

13   on behalf of themselves and seeking to became representives

14   of a class of people and that class is defined as those

15   persons who have been injured by exposure to asbestos and

16   were employees of Avondale and who have not an identical, to

17   date or prior to filing of this suit, a named claim.  And

18   that class or subclass of individuals who though exposed as

19   employees of Avondale Industries through the years, have

20   suffered to date no physical injury; and you might say this

21   is an action for monitoring so that the damages, so to speak,

22   are the failure to give medical monitoring in the past.  And,

23   of course, the relief sought is the creation of some kind of

24   medical monitoring system.

25          With regard to that second subclass, these are

1    individuals who, under Cole, under any conceiveable argument,

2    have not yet -- never suffered a physical injury as a result

3    of their employment at Avondale.  Any injury that they may

4    suffer in the future, any injury that they claim to have

5    suffered now arises after, certainly after 1959 when the

6    longshore act, specifically with regard to onboard ship

7    repair people, rather than people on the shore, gave rights

8    to my insureds immunizing them from these suits by

9    co-employees.  And also would arise after the 1989 amendment

10   to the Louisiana workman's compensation act, which

11   specifically said we no longer cover these individuals.

12   That's part of my answer, is that within the petition for

13   damages of the plaintiffs themselves, they assert that they

14   are themselves and seek to represent a class of people that

15   includes people who never suffered microscopic injury and are

16   not alleging any injury that has been suffered as a result of

17   this work at Avondale.

18          My second response to you is that the one thing

19   that I find that Porche' fails to acknowledge, and this is

20   why I think there's an irreconcilable conflict between the

21   two statutory schemes, Porche' -- this is not simply a

22   conflict under vested rights under state law to receive

23   compensation under some tort scheme established under

24   Louisiana law versus some archaic lets protect the employer

25   scheme, under federal law that is enacted later.  It is a

1    conflict between rights and immunities that are given under
2    Louisiana law versus rights and immunities that Mr. Peter
3    Torio, one of the men that I insured and who I represent at
4    trial, who is the only one of these individuals still at
5    Avondale, or Mr. John Chantrey or any of the other people who
6    dutifully perform their jobs as employees at Avondale and
7    here find twenty or thirty years later that they are
8    personally being subjected to suits for asbestos injuries.
9         Now, I don't see any way to look at this that
10   except that as a matter of rights and immunities are in
11   direct conflict.  On the one hand, those that go back all the
12   way to 1959 established that profound law that these men not
13   be subject to the unfairness of suit by co-employees.  And on
14   the other hand, Louisiana law, that at least as substantially
15   put together by the Louisiana Supreme Court in Canner versus
16   Cornick, which I'm sure Your Honor is familiar with, which
17   was sort of generated out of an unfortunate situation in
18   Louisiana at that time in which state compensation benefits
19   under their own workman's compensation scheme were generally
20   and widely recognized not to be very accurate.  And those are
21   two bodies of law, and I believe that the Fininger court has
22   acknowledged are in direct conflict.  How do you see your way
23   out of that, it is not as simple as Porche' says, vested
24   rights occuring jurisdiction, it is not that simple.
25        Judge, just to address a few more points, if I may.

1   I feel like, and I told Mr. Landry this when I walked in, I

2   feel a little bit like Florida State in the forth quarter and

3   I'm behind by 21 points.  It's a tough thing Judge, Judge

4   Duval has rendered an opinion, I do want to correct something

5   that Mr. Landry said to you in a letter yesterday, this is

6   not the third court that has addressed exactly the same

7   issues by exactly the same parties, in exactly the same way.

8   The Overlay case, which, of course, was brought by Avondale

9   itself in removal in California Supreme Court, I didn't have

10  anything to do with that.  But the factual situation there is

11  an individual who is an employee of Westinghouse Corporation,

12  who basically brought a premises liability action against

13  Avondale. The Overlay Court said, with regard to the federal

14  defense, it's not arguable that you have this federal defense

15  because number one, we are under an injunction from the Ninth

16  Circuit saying the failure to warn claim basically is not

17  covered under one of the defenses that you are raising, the

18  government contractor defense.  And number two, you are

19  raising some type of statutory employment argument that is

20  not in the longshore act and therefore you really have not

21  asserted any kind of federal defense.  And there is no causal

22  nexus because of the failure to warn.  In Porche', its really

23  a notice decision, admittedly, Judge Livadais wanted to send

24  a message, I think, to Travelers Insurance Company to remove

25  those cases,  more or less along the lines of get out of here

1    and don't come back.  And he said that he thought it was
2    really persuasive.  But when he decide on those cases, it was
3    decided on the basis of notice.
4         Judge Duval is really the first Judge who has
5    addressed these issues that we have raised on the merits,
6    within the context in which they should be raised.  We
7    disagree, we provided you with a supplemental brief, I just
8    want to end on two notes, one is on the issue of a colorable
9    defense.  I shouldn't have to persuade you, Judge, and under
10   Willingham from the United States Supreme Court, in fact, a
11   long line of Supreme Court, United States Supreme Court cases
12   and other cases, I shouldn't have to bear the burden in order
13   to avail myself of federal court in this case to persuade you
14   that Filinger is correct and Porche' is wrong.  My burden is
15   to show that I have a colorable federal defense.  The fact
16   that it has been accepted by the highest court of one of
17   these states to me is more or less ipso facto persuasive and
18   when the opinion from Judge Duval gets published I will have
19   to make a note to send it to the Supreme Court of Alabama.
20   Its a complicated issue, admittedly.  I'm not sure whose
21   right but I do know this, one of the highest courts in one of
22   the states in this country has been persuaded, and at least
23   two federal courts have carved out certain parts of the
24   longshore act, in Steven v Premium, state law, its a tough
25   case, but it's a colorable argument.

1        The other thing that I would like to say with
2   regard to this failure to warn thing.  You know, Judge, I was
3   looking at the pleadings again before I came over here and
4   I'm not privy to what the pleadings said in Overlay, but I am
5   privy to what the pleadings say here.  What they say here can
6   be found essenially in the plaintiffs' petition in paragraph
7   15.  Mr. Landry can say what he will about this is a failure
8   to warn claim in order to avail themselves of the
9   persuasiveness of the Overlay opinion in order to avail
10  themselves of the persuasiveness and to whatever degree its
11  there in the Geauthier (spelled phonectically) opinion, but
12  the pleadings speak for themselves.  And the pleadings
13  allege, yes, some factual assertions having to do with the
14  warnings issue, in fact, there are two specific allegations
15  having to do with that.  But they also allege that the
16  Avondale supervises, and I'm quoting, "fail to provide a safe
17  work place."  Kind of a general allegation but it keys right
18  in to the statutory deed under Louisiana law which says that
19  Avondale had a duty to provide its employees with a safe
20  place to work.  They allege that the Avondale supervisors
21  failed to provide safety equipment.  That is not a failure to
22  warn issue, Judge, but that is an issue in which we are
23  either right or wrong.  We have provided an affidavit from
24  Mr. Danny Joyce and we have provided other affidavits that
25  will show you that using the S---- contract as an example,

1   that federal, that the Department of Labor regulations were

2   incorporated into these contracts, we have provided you with

3   those regulations that specifically talk about what duties

4   shipyards like Avondale were under with regard to protecting

5   their workers during that era, what safety equipment is

6   specifically addressed.  And we have maintained and given you

7   affidavits to support these, including sworn testimony from a

8   plaintiff in some unrelated lawsuits, that there were Navy

9   safety people on hand doing daily walk through inspections.

10  These issues plaintiffs allege that we failed to provide them

11  with correct safety equipment, that's directly addressed in

12  those safety regulations that were made part of the contracts

13  and inspected on these Navy projects on a daily basis by the

14  United States Department of Navy safety inspectors.  They

15  allege that the United States failed to remove asbestos

16  hazards from the work place and it's contradicted.  Mr.

17  Landry has not argued the case despite this allegation that

18  the asbestos, which we believe these individuals were exposed

19  to in the crafts that they were in, and incidently, there are

20  only three of these men who we think their claims are

21  removable.  The lawsuit was filed on behalf of three guys,

22  the guy in the warehouse, I have no -- I will concede right

23  now, the one guy who's a warehouseman, whose name I believe

24  is Robicheaux, his claim by consent should be sent back to

25  state court.  I have no idea where that man was operating and

Patricia F Duroncelet, CCR

1  I think environment is subject to federal inspection

2  regulation specifications.  These other men are different,

3  they were riggers, ship fitters, they operated under the

4  supervision of Mr. S----- and Mr. Blanchard whose job it was

5  to build those ships for the United States government.

6          THE COURT:  I understand your position.

7          MR. CARAWAY:  We were told to put that on the ship,

8  the allegation says that we timely failed to remove asbestos,

9  I'm here to say, and we provided proof for it, that we did

10  not and were not at liberty.  Sir, the case law of the Fifth

11  Circuit is no different from any other circuit.  The

12  allegations of the plaintiffs' petition at the time of

13  removal are what controlled the issue of federal

14  jurisdiction, it does not matter that there may be issues

15  that are also state law issues, the Supreme Court has

16  specifically said in the Willingham case, quoting one of

17  their own decisions, going back to the last century.  And

18  I'll leave on this note.  "Nor is it any objection that

19  questions are involved which are not all the federal

20  character, if one of the latter exists, if there be a single

21  such ingredient in the balance, it is sufficient."  That

22  element is decided upon the subject of jurisdiction.

23          THE COURT:  Gentlemen, you all have briefed it for

24  me, I have looked over the material in some detail, I'm ready

25  to move on it.

1          The lawsuit before me is an action which seeks
2   medical monitoring for people who have been occupationally
3   exposed to asbestos products during the construction and/or
4   work on the various vessels around Avondale shipyards.  Cause
5   of action for medical monitoring has been recognized in this
6   circuit by the Hagee case, Fifth Circuit a 1986 case.
7          The plaintiffs in this case, several of them seek
8   to remand the proceedings to the state court, the case has
9   been removed to this court.  A civil action was originally
10  filed in this case on January the 23rd of 1996 in the Twenty-
11  fourth Judicial District of Jefferson.  Among other people
12  who were named as a defendant, American Motorists Insurance
13  Company, was one of them.  In addition to Travelers Insurance
14  Company, in addition to the various and sundry executive
15  officers of Avondale, American Motorists, as well as several
16  of the other defendants were served with the plaintiff's
17  original petition on February the 8th of 1996. American
18  Motorists was removed on November 19, 1996 on the basis of
19  the information contained in other documents revealed for the
20  first time that the action was removable under 28 USC
21  1446(b).
22         The present motion before the Court is to remand
23  the case.  The pleadings were initially filed, as I said, on
24  January the 23rd, 1996, they were received on February the
25  8th of 1996, and the removal was filed on November 19, 1996.

1          The matter may be remanded either because of a
2   defect in procedure or a lack of subject matter jurisdiction.
3   Under 28 USC 1446(b), the defendant must remove within thirty
4   days after receipt of the initial pleading.
5          American Motorists notice of removal, the Court
6   feels was not timely because American motorists had access to
7   knowledge since at least early February of the facts of the
8   case that formed the basis of the removal.  They should have
9   removed the action within thirty days on or before March the
10  11th of 1996. I find Porche' versus Flexitallic, civil action
11  number 96-27 persuasive and helpful in that particular
12  matter.  But even if it were not timely, I also think that
13  the action is not removable under 1442(a)(1) because the
14  Avondale interest did not act, as I read the pleadings and
15  the affidavits and the information, under the control or
16  direction of a federal officer with respect to the
17  plaintiffs' asserted in the action.
18         In order to qualify as a federal officer or a
19  person acting under him, the removing party must, one,
20  demonstrate that it acted under the direction of a federal
21  officer.  Two, must raise a federal defense to the
22  plaintiff's claim.  And three, demonstrate a causal nexus
23  between the plaintiff's claim and the acts it performed under
24  the color of federal officers.  This is what counsel has
25  called to the Court's attention in the Mesa versus California

Patricia F Duroncelet, CCR

1   case, 49 US 121 et seq.  The removal must be predicated upon

2   a showing that the acts forming the basis of the state court

3   suit were performed pursuant to the officers' direct and

4   detailed control, a general auspices, a general control does

5   not satisfy the riggers of 1442 (a)(1).

6           The issue in this case is not the products

7   liability or some cases you will see in the literature

8   occasionally where vessels were built too long and they are

9   subject to wave action and they break in half, we see this in

10  some cases where the argument is that its built improperly

11  and the defense is on the basis that the defense is made in

12  this particular case.  The courts in those cases, although

13  they are seldom in the common days, touch on them a bit more

14  perhaps in the courts but the argument is that they fail not

15  because of any defect in the equipment, not because of the

16  improper work performed on the vessel but simply because of

17  the design defect, they were as to long and should not have

18  been that long and therefore they were acting under the

19  control and supervision of the government and therefore you

20  are entitled to that particular defense.  I don't see this

21  particular case in that ball park even, I think the issue

22  here is whether there was safety rules, regulations,

23  equipment, atmosphere, information imparted to the people,

24  warnings, things of that sort which are completely under the

25  supervision and control of Avondale.  They would not expose

1   some people to some hazards and other people to other
2   hazards, they have to have a uniform safety program
3   regardless of who they do work for.
4           So I think the issue in this case is that the
5   government may have had some general control, the inspectors
6   may have come aboard the vessels but we all know when the
7   inspectors come aboard the vessels they are going to make
8   sure that the work is going on and the work is being done
9   properly in the sense of the proper gauge steel and the
10  proper placement of the ribs and so forth and so on.  And
11  they are often given the safety equipment to go board the
12  vessel by Avondale, they get their visitors equipment and
13  their visitors hat, whether its blue or white or red, they
14  use it and go aboard unless they specifically brought there
15  their own.  So Avondale even suits them out.  So they are not
16  -- Avondale, in that instance, is really telling them what to
17  wear and what to do and where to go and whose working on the
18  vessel rather than the other way around.
19          Moreover, the plaintiffs' claims in this case are
20  based on Louisiana state law and do not rise to the level of
21  Constitutional law treaties of the United States.  Therefore,
22  the Court feels that federal jurisdiction does not exist
23  under 28 USC 1441(b).
24          And finally, the defendants urge that the
25  longshoreman act is a basis for removal.  The Aaron case

1   which we discussed, 876 fed 2nd 1157, indicates that that is
2   not a basis for a removal.  But the argument made that there
3   are some specific federal rights, I don't read Sunship or
4   Porche' in that rigorous manner.  I do think there is some --
5   until the state statute said, if federal act is applicable
6   then the state is not applicable, there would be no reason to
7   pass the state statute if Sunship settled that issue or said
8   that the federal preempts the state, it would have been a
9   vain and useless thing and cases citing that particular state
10  statute would be citing a vain and useless thing.
11          So I do feel that that reliance on the longshoreman
12  harbor workers act is not sufficient to make it a federal
13  question or to raise it to federal jurisdiction.
14          The motion to remand is granted.  I have reviewed
15  the material, the plaintiff asks for costs and attorneys
16  fees, there are cases which have granted it, I'm familiar
17  with the case in San Francisco and others, but I think this
18  issue is not uncomplicated, the briefs raise intriguing
19  issues and I think that counsel is certainly in his right in
20  responding to the duty to seek removal in this particular
21  case and did do so and did it professionally and well, so I
22  will deny that motion to award attorneys fees and court
23  costs.
24          Thank you, gentlemen.
25          MR. LANDRY:  Thank you, Judge.

Patricia F Duroncelet, CCR

MR. CARAWAY:   Thank you, Judge.

\*          \*          \*



Patricia F Duroncelet, CCR