Westlaw.

Page 1

Not Reported in F.Supp., 1994 WL 679827 (E.D.La.)
**(Cite as: 1994 WL 679827 (E.D.La.))**

▷
Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
John ANDERSON, et al.
v.
AVONDALE INDUSTRIES, INC., et al.

Civ. A. No. 94-3021.
Dec. 5, 1994.

*ORDER AND REASONS*
DUVAL, District Judge.
  **\*1** A Motion to Remand filed by plaintiffs John Anderson and Eva Washington Anderson came for hearing on November 30, 1994 [FN1]. Having entertained oral argument and reviewing the pleadings, memoranda and the relevant law, the Court finds the motion to be meritorious.

### RELEVANT FACTS AND PROCEDURAL HISTORY
  Mr. Anderson worked at Avondale from 1967 to 1980. In March of 1994, he was diagnosed with cancer that he contends was caused by his being exposed to asbestos at Avondale. On August 29, 1994, plaintiffs filed a petition for damages against Avondale, its directors, and those entities that supplied Avondale with asbestos products. Those defendants include Borden, Inc. [FN2]

  Only one Borden-produced asbestos product has been positively identified as being at issue in the instant litigation. That product is a lagging adhesive referred to as "M-6-B." In 1952, a government specification was issued that encompassed this product. This specification was MIL-A-15199A. In 1959, the specification was superseded by MIL-A-15199B. While it is unclear as to when Borden began manufacturing M-6-B, it is clear that the United States government, through the Navy or otherwise, was never involved in the development process or production of M-6-B at Borden.

  On September 16, 1994, Borden removed plaintiffs' action to federal court based on 28 U.S.C. § 1442(a)(1) which reads in relevant part:

  (a) A civil action ... commenced in a state court against any of the following persons may be removed by them to a district court of the United States for the district and division embracing the place wherein it is pending:

  (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office....

  (emphasis added). During the mid-1940's, Borden acted in conjunction with the Navy in developing certain non-asbestos lagging products. Even though these products are not at issue in this litigation, Borden contends that under the above-quoted statute, it is entitled to remove this case because of that prior government supervision.

  The issue presented distills into whether a company's "acting under" an officer of the United States or agency thereof with respect to products that are not the alleged basis for liability in litigation supports the removal of a case dealing with another, unrelated and allegedly harmful, injurious product over which there was no such governmental supervision.[FN3]

### WAS REMOVAL PROPER?
  The burden of proof for establishing federal jurisdiction is placed upon the party seeking removal. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 42 S.Ct. 35 (1921). " 'If the right to remove is doubtful, the case should be remanded.' " *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 939 (citation omitted); *Butler v. Polk,* 592 F.2d 1293, 1296 (5th Cir.1979) (axiomatic that ambiguities are generally construed against removal).

  **\*2** The United States Court of Appeals for the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT
12

Not Reported in F.Supp., 1994 WL 679827 (E.D.La.)
**(Cite as: 1994 WL 679827 (E.D.La.))**

Page 2

Fifth Circuit recognizes that § 1442(a)(1) provides the only exception to the well-pleaded complaint rule found in *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42 (1908). *Aquafaith Shipping, Ltd. v. Jarillas,* 963 F.2d 806 (5th Cir.) *cert. denied,* 113 S.Ct. 413 (1992) (citing *Mesa v. California,* 489 U.S. 121, 136-37, 109 S.Ct. 959, 968 (1989). Thus, by virtue of this federal statute, where "a person" "acting under" federal officers can present a colorable "government contractor defense," the case is removable by such a "person." *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 939 (E.D.N.Y.1992) (emphasis added). The power to remove is absolute, provided the proper procedures are followed. *Id.* (citing *Willingham v. Morgan,* 395 U.S. 402, 406, 89 S.Ct. 1813 (1969). *See* Wright & Miller, *Federal Practice and Procedure,* § 3727 at 459 n. 35; *Doe v. Kerwood,* 969 F.2d 165, 168 n. 12 and accompanying text (5th Cir.1992). There is no need to obtain other defendants' consent.[FN4]

In *Ryan,* the district court provides a succinct history of the statute that mirrors the Supreme Court's analysis. As stated by the court:

> [I]ts earlier incantations were drafted to protect officials who faced state government resistance to specific federal laws. The concern underlying each however, has been the same: that state governments hostile to duly enacted federal laws would be able to frustrate the implementation of those laws by bringing or allowing to be brought civil or criminal actions in state court against the federal officials responsible for their implementation.

*Id.,* 781 F.Supp. at 941-42. The court in that decision noted that of late the United States Supreme Court has become more circumspect in its application of the statute culminating in *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959 (1989). In *Mesa,* the Supreme Court set forth the criteria necessary to support removal under this statute and made it clear that in order to invoke the removal power of § 1442(a)(1), a "person" seeking removal must allege a federal law defense. *Crocker v. Borden,* 852 F.Supp. 1322 (E.D.La.1994) (Livaudais, J.); *Akin v. Big Three Indus., Inc.,* 851 F.Supp. 819 (E.D.Tex.1994); *Ryan,* 781 F.Supp. at 943.

A. IS BORDEN A "PERSON?"

Thus, the threshold inquiry is whether Borden is a "person." While there is evidently some case law to the contrary, this Court concurs with the majority of courts that has found that a corporation can be considered a "person" for purposes of the subject removal statute. *Akin,* 851 F.Supp. at 822. This finding is supported by 1 U.S.C. § 1 which instructs that when construing Congressional acts, unless context indicates otherwise, a "person" includes corporations. *Id.* n. 2. *See Crocker,* 852 F.Supp. at 1325; *Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1192-03 (D.Md.1993); *Ryan,* 781 F.Supp. at 943; and *Bakalis v. Crossland Savings Bank,* 781 F.Supp. 140, 143-44 (E.D.N.Y.1991). Thus, Borden is considered a "person" for purposes of removal.

B. DOES BORDEN FULFILL THE *MESA* REQUIREMENTS?

\*3 As previously noted, the next inquiry is whether the mandate of *Mesa* is fulfilled. The three pronged inquiry requires the moving "person" acting "under a federal officer" to:

(1) demonstrate that it acted under the direction of a federal officer;

(2) raise a federal defense to the plaintiffs' claims; and

(3) demonstrate a causal nexus between plaintiffs' claims and acts it performed under color of federal office.

*Crocker,* 852 F.Supp. at 1325. The Court finds that Borden has failed in its burden of proof with respect to this first element.

As stated in *Ryan:*

> The rule established is that removal by a "person acting under" a federal officer must be predicated

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 679827 (E.D.La.)
**(Cite as: 1994 WL 679827 (E.D.La.))**

upon a showing that the acts that form the basis for the state, civil or criminal suit were performed pursuant to an officer's direct order or to comprehensive and detailed regulations.

*Ryan v. Dow Chemical Co.,* 781 F.Supp. at 947 (emphasis added). In *Ryan,* the court found that where the persons being sued for formulating and producing Agent Orange, all of which its components were developed without direct government control and all of which methods of manufacture were determined by the defendants, not the government, the removing party did not meet its burden of proof.

> Although the defendants later produced and delivered Agent Orange under the control of federal officers, these subsequent acts are distinct from the earlier acts of product and manufacturing design being sued upon. The government sought only to buy ready-to-order herbicides, not to cause, control or prevent the production of the unwanted by-product, dioxin, which is the alleged cause of plaintiffs' injuries. The necessary direct and detailed official control over the acts for which the defendants are now being sued is therefore lacking.

*Id.* at 950 (emphasis added).

As noted, there was only one substance, M-B-6, which contained asbestos that Borden made that plaintiffs contend subject Borden to liability. To demonstrate the "control" required under the first *Mesa* element, Borden produced the affidavit of Carl Erikson. He was the chief chemist at Arabol Manufacturing Co. until it was bought out by Borden, where he continued to work. He attested at great length with regard to other non-asbestos lagging devices and the intimate involvement that a Walter P. Sinclair with the United States Navy's Naval Engineering and Experimental Station at Annapolis had in drafting other non-asbestos product specifications. However, the affidavit is glaringly silent in regard to Mr. Sinclair's or any other government agent's involvement with M-B-6. Mr. Erikson's only attestations with regard to M-B-6 are:

> 14. Arabol also produced a product referred to as M-6-B to meet government specification MIL-A-15199B.
>
> 15. This government specification required that the product contain asbestos.
>
> 16. Arabol did not produce M-6-B before the government specification regarding the required components was issued.
>
> **\*4** 17. Arabol manufactured limited quantities of M-6-B for the United States Navy to meet this government specification.

(Memorandum in Opposition, Exhibit 1).

There is absolutely no evidence presented of intimate government oversight or involvement in the design or production of M-6-B. As noted in *Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1103 (D.Md.1993), " '[d]irect control' is established by showing strong government intervention and the possibility that a defendant will be sued in state court as a result of the federal control." *Id.* (citation omitted). Another court describing the necessary connexity stated as follows:

> [The case law] allows private corporations to remove only when the corporation is so intimately involved with government functions as to occupy essentially the position of an employee of the government. Government employees are the primary protected class of § 1442(a)(1). *Willingham v. Morgan,* 395 U.S. 402, 89 S.Ct. 1813 (1969).

*Bakalis v. Crossland Sav. Bank,* 781 F.Supp. 140, 145 (E.D.N.Y.1991).

Plaintiffs have produced deposition testimony of Mr. Erikson that indicates that Mr. Erikson has absolutely no recollection of the government's involvement in the development of M-6-B. Plaintiffs have presented deposition testimony that demon-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 679827 (E.D.La.)
**(Cite as: 1994 WL 679827 (E.D.La.))**

Page 4

strates that this substance was manufactured before a 1952 Military specification issued concerning the substance. (Memorandum in Support of Motion to Remand, Exhibit 1, Dep. of Carl Erikson, pp. 69-70). Mr. Erikson specifically testified that he has no knowledge where the specifications for M-B-6 came from. He also does not remember whether government inspectors were at Arabol at the time, contrary to his very specific memories with respect to the other substances. Furthermore, evidence indicates that this asbestos-containing material may have been used in ships manufactured at Avondale for private industry in 1967. (Memorandum in Support of Motion to Remand, Exhibit 5).

For purposes of removal, Borden relied heavily on *Crocker v. Borden,* 852 F.Supp. 1322 (E.D.La.1994) (Livaudais, J.); however, that case is readily distinguishable from the case at bar. In *Crocker,* a party-manufacturer presented an unrebutted affidavit outlining in detail the intimate control and supervision by the Department of the Navy with respect to turbine motors that was the basis for a third-party demand. Here, the affiant, who has such specific memories in relation to the non-asbestos substances, has no particular memory in regard to M-B-6 and its development. Furthermore, there is overwhelming evidence to rebut Borden's contentions.

Considering the history of § 1442(a)(1), and the dearth of evidence presented by the party removing and the plethora of evidence presented by the party seeking remand, the Court finds that Borden failed in proving the first *Mesa* requirement. Borden has failed to show that it "was acting under" a federal officer with respect to the allegedly injurious product, and that failure in and of itself defeats the removal, mooting any inquiry with respect to other two prongs of *Mesa.* Therefore, the Court finds that it has no jurisdiction over this matter, and it must remand this suit pursuant to 28 U.S.C. § 1447(c).

*5 Accordingly, the Motion to Remand filed by plaintiffs John Anderson and Eva Washington Anderson is GRANTED, and this case shall be REMANDED to the Civil District Court for the Parish of Orleans.

IT IS SO ORDERED.

> FN1. In conjunction with the original motion, plaintiffs sought sanctions under Fed.R.Civ.P. 11; however, at oral argument, that motion was withdrawn.

> FN2. The subject products were apparently manufactured by the Arabol Manufacturing Company which was purchased by Borden in 1963. The two parties will be collectively referred to as "Borden."

>> At Paragraph XIII, Borden, Inc. is named as having manufactured, distributed, and sold silica and asbestos-containing adhesive products.

> FN3. It must be noted that in oral argument, representation was made that Borden had been successful in a motion for summary judgment in state court in a similar asbestos suit because it proved that the only material manufactured by Borden that was used at Avondale was certain non-asbestos products. It is on these products which Borden relies to support the § 1442(a)(1) removal because there is proof that the United States government helped develop them.

>> Thus, Borden indicated that once it removed the case based on products that plaintiffs do not contend caused harm, it would seek dismissal based on the fact that there were no Borden products containing asbestos at Avondale. This approach appears to the Court to be a classic example of placing the cart before the horse.

> FN4. Plaintiffs contended in their motion

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 679827 (E.D.La.)
**(Cite as: 1994 WL 679827 (E.D.La.))**

Page 5

      that procedurally Borden had improperly removed this action because it had not obtained the consent of all the served defendants. While apparently this may be irrelevant under § 1442(a)(1), the issue is rendered moot by the Court's findings herein.

E.D.La.,1994.
Anderson v. Avondale Industries, Inc.
Not Reported in F.Supp., 1994 WL 679827 (E.D.La.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.