FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF

2003 MAY 30 PM 1:06

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RUDY WALKER ET AL. | CIVIL ACTION |
| VERSUS | NO: 03-1036 |
| AVONDALE INDUSTRIES, INC. ET AL. | SECTION: "S" (2) |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the "Motion to Remand" of Joan and Rudy Walker is **GRANTED**, and the case is **REMANDED** to Civil District Court for the Parish of Orleans, State of Louisiana.

### I. BACKGROUND

Rudy Walker, Sr. and Joan Walker filed a petition for damages in Civil District Court for the Parish of Orleans against executive officers for Avondale Industries, Inc. (Avondale defendants),[1] Commercial Union Insurance Company, Highlands Insurance Company, American Motorists Insurance Company, Eagle, Inc., Flintkote Company, Foster Wheeler, L.L.C., Garlock, Inc.,

---

[1] The officers are Edward Blanchard, Albert Bossier, J. Melton Garrett, Steven Kennedy, and Peter Territo.

DATE OF ENTRY
MAY 3 0 2003


EXHIBIT 13

General Electric Company, Hopeman Brothers, Inc. (Hopeman), Liberty Mutual Insurance Company, McCarty Corporation, Okonite Company, Owens-Illinois, Inc., Rhone-Poulenac AG Company, Benjamin Foster, Reilly-Benton Company, Inc., Rockbestos-Supernant Cable Corp., Taylor,-Seindenbach, Inc., Uniroyal, Inc., Viacom, Inc., Northrop Grumman Ship Systems, Inc., and Travelers Indemnity Company, asserting claims related to Rudy's exposure to asbestos dust and fibers during his employment with Avondale at its shipyards in Algiers, Harvey, and Avondale, Louisiana, between 1956 and 1969 and on the premises of Avondale from 1970 to 1997.[2] Rudy was diagnosed with mesothelioma and related ill effects on October 10, 2002, and his illness was confirmed on February 12, 2003.

On April 11, 2003, Defendant Foster Wheeler L.L.C. (Foster Wheeler) removed the case to federal court.[3] Foster Wheeler

---

[2] The court considers the claims in the state court petition as they existed at the time of removal. See Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995). The complaint alleges that Rudy's exposure occurred when he was working on civilian ships, as well as Navy ships, and on the premises of Avondale. As long as one claim is cognizable under § 1442(a)(1), the entire action may be removed regardless of whether part or most of Rudy's alleged asbestos exposure occurred on civilian ships.

[3] There is no merit to the plaintiffs' contention that removal is procedurally defective because the remaining defendants did not join in Foster Wheeler's removal. A federal officer may remove a case to federal court even if the officer is one of several defendants, without the consent of other defendants. See Akin v. Ashland Chemical, 156 F.3d 1030, 1034

2

asserts that the court has subject matter jurisdiction over the claims because it is a person that acted under the authority of an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1)[4] because it was a major manufacturer of boilers in construction of United States Navy vessels. The Walkers filed a motion to remand the case to state court.[5]

## II. DISCUSSION

The plaintiffs contend that Foster Wheeler is not entitled to removal under the federal officer removal statute. Section 1442 provides in relevant part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be

---

(10th Cir. 1998) (citing Fowler v. Southern Bell Tel & Tel. Co., 343 F.2d 150, 152 (5th Cir. 1965)).

[4] The plaintiffs incorrectly state that Foster Wheeler does not allege that it is a federal officer. In the "Notice of Removal" Foster Wheeler states that "[t]he basis for removal is that this action involves a person, i.e., Foster Wheeler, that acted under the authority of an officer or agency of the United States, within the meaning of 28 U.S.C. § 1442(a)(1)." Accordingly, Foster Wheeler has not removed the case based on a defense, but on the federal officer removal statute.

[5] Numerous asbestos cases in the Eastern District of Louisiana have been remanded to state court for a variety of reasons. See e.g. Mouton v. Flexitallic, Inc., No. 99-0162 (defendant failed to establish colorable federal defense under the second prong of the Mesa test); Roley v. Eagle, Inc., No. 00-3713 (the affidavits were inadequate to establish that the turbines were manufactured under the direction of a federal officer); Turner v. Mine Safety Appliances Co., No. 01-0325 (removal was untimely, and exceptions did not apply); Rodriquez v. AcandS, Inc., No. 01-0586 (removal untimely); Roynter v. Kaiser Aluminum & Chemical Corp., No. 01-1824 (lack of subject matter jurisdiction based on lack of complete diversity).

3

> removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

One of the most important functions of a federal officer's right of removal "is to allow a federal court to determine the validity of an asserted official immunity defense." Winters v. Diamond, 149 F.3d 387, 397 (5th Cir. 1998). "Removal pursuant to § 1442(a)(1) is thus meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." Id. (internal quotation and citation omitted). In order to gain access to a federal forum, the defendant must demonstrate that (1) it is a person within the meaning of the statute acting under color of federal authority when committing the alleged injurious acts, (2) a colorable federal defense is raised, and (3) there is a causal nexus between the plaintiff's claims and the acts the defendant performed under color of federal office. Id. at 398. "[T]he statute's `color of federal office' requirement is neither 'limited' nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying rationale." Id. (quoting Murray v. Murray, 621 F.2d 103, 107 (5th Cir. 1980)).

Further, although the defendant need not prove his defense, he must articulate that he is entitled to raise a colorable defense arising out of his official duties. Id. at 400.

Under the first prong of the inquiry, Foster Wheeler was acting under the direction of the Navy's control because the Navy exerted ongoing control over its manufacture of each component part used in its Navy boilers. The evidence shows that Foster Wheeler did not have independent authority to revise or alter the Navy specifications, and its compliance with the specifications was ensured through detailed review by Navy personnel.

Foster Wheeler contends, under the second prong, that it has stated a colorable "government contractor defense," which immunizes government contractors from civil liability arising out of the performance of federal procurement contracts. Pursuant to the defense, as clarified in Boyle v. United Technologies Corp., 108 S.Ct. 2510 (1988), a defendant whose design or manufacture of products is directed by the federal government can evade liability under state law for injuries resulting from the use of such products by demonstrating that 1) approval of reasonably precise specifications was received from the United States, 2) the product conformed to the specifications, and 3) the supplier warned the United States of possible dangers in the use of the product that was known to the supplier but unknown to the United States. "The reasonably precise standard is satisfied as long as

5

the specifications address, in reasonable detail, the product design feature alleged to be defective." Kerstetter v. Pacific Scientific Company, 210 F.3d 431, 438 (5th Cir. 2000).

Foster Wheeler presents the affidavit of J. Thomas Schroppe to support its assertion that the Navy boilers were designed and manufactured in compliance with detailed military specifications. In paragraphs 14(b) and 16, Schroppe addresses the use of insulation:

> 14(b) Refractory and Insulation: Specification identified the material, arrangement of various bricks and insulating materials on various boiler walls and provided specific Mil Specs for each type of insulating/refractory material.
>
> . . . .
>
> 16. . . . . With regard to procurement of insulating and refractory material, the specific requirements for insulation and refractory items are listed in MIL-B-18381, which then references additional Mil Specs for each specific type of refractory/insulating material required. . . . The FWC purchase order would reference the appropriate Mil Spec for each item shipped. The vendor, in turn, would supply materials that conformed to the Mil Spec and ship it directly to the shipyard. . . so they may be incorporated into the final boiler erection.

However, Schroppe's affidavit falls short of stating that the Navy required Foster Wheeler to use asbestos as insulation for the boilers. Foster Wheeler presents no further evidence to show that it was required to use asbestos as insulation.

Alternatively, Foster Wheeler argues that, even if the Navy did not require asbestos to be used in Foster Wheeler's boilers and

6

that non-asbestos products on the Navy's approved materials lists would have satisfied the Navy's performance requirements, the Navy's approval of Foster Wheeler's choice of materials is sufficient to assert a colorable defense. The argument is without merit. The relevant question in determining whether the asserted immunity defense is colorable is whether the defense arises out of Foster Wheeler's official duties based on a requirement in the government specifications that Foster Wheeler use asbestos as insulation. Foster Wheeler has not made that showing; therefore, it has not made a colorable claim for the government contractor defense.[6]

---

[6] In addition to Foster Wheeler, the Avondale defendants and Hopeman filed oppositions to the motion to remand. The Avondale defendants and Hopeman did not remove the case to federal court, and they cite no authority for raising issues concerning federal officer removal in this procedural posture. Hopeman contends that it may have its own independent basis for seeking removal, but simply adopts all oppositions filed by the other defendants. The Avondale defendants assert that, independent of the removal filed by Foster Wheeler, there is an independent basis for denying the plaintiffs' motion to remand. Generally, the Avondale defendants contend that the Secretary of Navy and numerous other federal officers exercised direct and detailed control over the construction of the vessels alleged to have caused Rudy's injury. Further, the Avondale defendants contend that they can assert colorable federal defenses to the claims made against them under the immunity provision in the Longshore and Harbor Workers' Compensation Act. Even if the Avondale defendants were properly before the court, they have not raised a colorable federal defense that has been recognized under the jurisprudence of the Fifth Circuit. Further, the court is unpersuaded by the reasoning of the Alabama Supreme in Fillinger v. Foster, 448 So.2d 321 (Ala. 1984) criticizing the Supreme Court of Louisiana in Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La. 1976).

New Orleans, Louisiana, this 29 day of May, 2003.

*[signature]*
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE