ADRMOP

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:11-cv-04681-PJH

Grennan v. Foster Wheeler LLC
Assigned to: Hon. Phyllis J. Hamilton
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 09/21/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**John Grennan**    represented by    **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 09/21/2011 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 12/29/2011. Case Management Conference set for 1/5/2012 02:00 PM. (Attachments: # 1 Standing Order)(vlk, COURT STAFF) (Filed on 9/21/2011) (Entered: 09/26/2011) |
| 09/21/2011 | 5 | Declination to Proceed Before a U.S. Magistrate Judge by John Grennan. (vlk, COURT STAFF) (Filed on 9/21/2011) (Entered: 09/23/2011) |

| 09/21/2011 | 4 | Certificate of Interested Entities by John Grennan (vlk, COURT STAFF) (Filed on 9/21/2011) (Entered: 09/23/2011) |
|---|---|---|
| 09/21/2011 | 3 | NOTICE of Tag Along Action by John Grennan (vlk, COURT STAFF) (Filed on 9/21/2011) (Entered: 09/23/2011) |
| 09/21/2011 | 2 | Summons Issued as to Foster Wheeler LLC. (vlk, COURT STAFF) (Filed on 9/21/2011) (Entered: 09/23/2011) |
| 09/21/2011 | 1 | COMPLAINT against Foster Wheeler LLC ( Filing fee $ 350, receipt number 34611064880.). Filed byJohn Grennan. (Attachments: # 1 Civil Cover Sheet) (vlk, COURT STAFF) (Filed on 9/21/2011) (Entered: 09/23/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/26/2011 12:54:23 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:11-cv-04681-PJH |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

ORIGINAL
FILED

2011 SEP 21 P 1: 33

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

E-filing

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

PJH

11  JOHN GRENNAN,                          )  No.
                                           )
12                Plaintiff,               )  CV 11        4681
                                           )
13  vs.                                    )  COMPLAINT FOR ASBESTOS
                                           )  PERSONAL INJURY/ PRODUCTS
14  FOSTER WHEELER LLC (FKA FOSTER         )  LIABILITY; DEMAND FOR JURY TRIAL
    WHEELER CORPORATION),                  )
15                                         )
                  Defendant.               )
16                                         )

17

18                            I.

19                          PARTIES

20      1.    Plaintiff in this action, JOHN GRENNAN, has sustained asbestos-related lung

21  injuries as a result of his inhalation of asbestos fibers through his occupational exposure to

22  asbestos.

23      2.    Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos

24  fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

25      3.    The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit**

26  **A**, attached to Plaintiff's complaint and incorporated by reference herein.

27      4.    All of Plaintiff's claims arise out of repeated exposure to asbestos-containing

28  products manufactured, distributed, and/or sold by defendant and supplied to, installed and/or

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\108854\fed\PLD\cmp fed (pi).wpd

maintained by defendant at Plaintiff's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative, progressive, incurable lung diseases.

5.     Plaintiff claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6.     As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff.

7.     Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendant was and is corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendant, was and is authorized to do and are doing business in the State of California, and that said defendant has regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8.     <u>Jurisdiction</u>: Plaintiff JOHN GRENNAN is a citizen of the State of California.

Defendant is each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| FOSTER WHEELER LLC<br>   (FKA FOSTER WHEELER CORPORATION) | New Jersey |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

///

9.  <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendant is subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF JOHN GRENNAN COMPLAINS OF DEFENDANT FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), ITS "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10.  At all times herein mentioned, each of named defendant was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendant is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

1  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

2  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

3  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

4  products containing asbestos.  The following defendant, is liable for the acts of each and every

5  ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of

6  plaintiff's remedy against each such ALTERNATE ENTITY; defendant, has acquired the assets,

7  product line, or a portion thereof, of each such ALTERNATE ENTITY; defendant, caused the

8  destruction of plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant

9  has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that

10  each such defendant enjoys the goodwill originally attached to each such ALTERNATE

11  ENTITY:

12  DEFENDANT                                   ALTERNATE ENTITY

13  FOSTER WHEELER LLC                    FOSTER WHEELER CORPORATION

14        11.    At all times herein mentioned, defendant, its ALTERNATE ENTITIES, and each

15  of them, were and are engaged in the business of researching, manufacturing, fabricating,

16  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

17  supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

18  promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

19  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

20  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

21  asbestos and other products containing asbestos.

22        12.    At all times herein mentioned, defendant, its ALTERNATE ENTITIES and each

23  of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated,

24  designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of

25  the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

26  sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed,

27  represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded,

28  manufactured for others, packaged and advertised, a certain product, namely asbestos, and other

products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

13.     Defendant, its ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendant, breached said duty of due care.

14.     Defendant, its ALTERNATE ENTITIES, and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15.     Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

16.     As a direct and proximate result of the acts, omissions, and conduct of the defendant, its ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or

///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1   harm to the plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated

2   by reference herein.

3          17.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

4   disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

5   without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

6   asbestos and asbestos-containing products over a period of time.

7          18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

8   containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

9   containing products presented risk of injury and/or disease.

10          19.    As a direct and proximate result of the aforesaid conduct of defendant, its

11   ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,

12   permanent injuries and/or future increased risk of injuries to their persons, body and health,

13   including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and

14   emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to

15   Plaintiff's general damage.

16          20.    As a direct and proximate result of the aforesaid conduct of the defendant, its

17   "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur

18   in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

19   and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this

20   time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost

21   thereof is ascertained.

22          21.    As a further direct and proximate result of the said conduct of the defendant, its

23   "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and

24   extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to

25   conform to proof at the time of trial.

26          22.    Defendant, its ALTERNATE ENTITIES, and each of them, and their officers,

27   directors and managing agents participated in, authorized, expressly and impliedly ratified, and

28   had full knowledge of, or should have known of, each of the acts set forth herein.

23.     Defendant, its "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of its ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of its ALTERNATE ENTITIES as set forth herein.

24.     The herein-described conduct of said defendant, its ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example and by way of punishing said defendant, seeks punitive damages according to proof.

WHEREFORE, Plaintiff prays judgment against defendant, its "alternate entities," and each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION<br>(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF JOHN GRENNAN COMPLAINS OF DEFENDANT FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), ITS "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26.     Defendant, its ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of its component parts and without knowledge of the hazards involved in such use.

27.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendant, its "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while

1  being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and

2  dangerous for use.

3       28.    "Exposed persons" did not know of the substantial danger of using said products.

4  Said dangers were not readily recognizable by "exposed persons". Said defendant, its

5  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

6  which Plaintiff and others similarly situated were exposed.

7       29.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

8  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

9  sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

10  marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

11  and asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them, did

12  so with conscious disregard for the safety of "exposed persons" who came in contact with said

13  asbestos and asbestos-containing products, in that said defendant, its ALTERNATE ENTITIES,

14  and each of them, had prior knowledge that there was a substantial risk of injury or death

15  resulting from exposure to asbestos or asbestos-containing products, including, but not limited to,

16  asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific

17  studies performed by, at the request of, or with the assistance of, said defendant, its

18  ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

19  defendant, its ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

20       30.    On or before 1930, and thereafter, said defendant, its ALTERNATE ENTITIES

21  and each of them, were aware that members of the general public and other "exposed persons",

22  who would come in contact with their asbestos and asbestos-containing products, had no

23  knowledge or information indicating that asbestos or asbestos-containing products could cause

24  injury, and said defendant, its ALTERNATE ENTITIES, and each of them, knew that members

25  of the general public and other "exposed persons", who came in contact with asbestos and

26  asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos

27  and asbestos-containing products was safe, when in fact said exposure was extremely hazardous

28  to health and human life.

31.     With said knowledge, said defendant, its ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendant, its ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendant, its ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32.     The above-referenced conduct of said defendant, its ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendant, its ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendant, its ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff.

33.     Plaintiff alleges that the aforementioned defendant, its ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe

1  for their intended use but that their asbestos and asbestos-containing products, created an

2  unreasonable risk of bodily harm to exposed persons.

3      34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos

4  and various asbestos-containing products manufactured, fabricated, inadequately researched,

5  designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered

6  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

7  marketed, warranted, rebranded, manufactured for others, packaged and advertised by the

8  aforementioned defendant, its ALTERNATE ENTITIES, and each of them and that Plaintiff

9  cannot identify precisely which asbestos or asbestos-containing products caused the injuries

10  complained of herein.

11     35.    Plaintiff relied upon defendant's, its "alternate entities'", and each of their

12  representations, lack of warnings, and implied warranties of fitness of asbestos and their

13  asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has

14  been injured permanently as alleged herein.

15     36.    As a direct and proximate result of the actions and conduct outlined herein,

16  Plaintiff has suffered the injuries and damages previously alleged.

17     WHEREFORE, Plaintiff prays judgment against defendant, its ALTERNATE ENTITIES,

18  and each of them, as hereinafter set forth.

19                                    **IV.**

20                                   **PRAYER**

21     WHEREFORE, Plaintiff prays judgment against defendant, its ALTERNATE ENTITIES,

22  and each of them in an amount to be proved at trial, as follows:

23     (a)    For Plaintiff's general damages according to proof;

24     (b)    For Plaintiff's loss of income, wages and earning potential according to proof;

25     (c)    For Plaintiff's medical and related expenses according to proof;

26     (d)    For Plaintiff's cost of suit herein;

27     (e)    For exemplary or punitive damages according to proof;

28     (f)    For damages for fraud according to proof; and

1    (g)    For such other and further relief as the Court may deem just and proper, including

2            costs and prejudgment interest.

3

4  Dated: 9|19|11                  BRAYTON❖PURCELL LLP

5

6                                By: _____

7                                    David R. Donadio
                                Attorneys for Plaintiff

8

9

10                                JURY DEMAND

11         Plaintiff hereby demands trial by jury of all issues of this cause.

12

13  Dated: 9|19|11                  BRAYTON❖PURCELL LLP

14

15                                By: _____

16                                    David R. Donadio
                                Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

12

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

EXHIBIT A

Plaintiff:  JOHN GRENNAN

Plaintiff's injuries:  Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, including, but not limited to breathing difficulties, asbestosis, and/or other lung damage, and increased risk and fear of developing mesothelioma, lung cancer and various other cancers.  Plaintiff was diagnosed with asbestos-related pleural disease on  July 2008 and asbestosis on June 2009.

Retirement Status:  The injured party is still employed and therefore has suffered no disability due to his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendant:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendant.  Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| John Muir Hospital Walnut Creek, CA | John Muir Hospital Walnut Creek, CA | Lab Assistant | 1969-1970 (approx. 2 years); 1971 |

Job Duties:  Plaintiff washed laboratory equipment.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Sherwin-Williams Co., 101 Prospect Ave. NW, Cleveland, OH | Sherwin-Williams Co. Oakland, CA | Laborer | 7/1971-9/1971; 1/1972-6/1972 |

Job Duties:  Plaintiff worked as a laborer.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center, San Diego, CA | Trainee | 9/8/1972-11/22/1972 |
| | SAMUEL GOMPERS (AD-37) Naval Repair Facility (32nd Street Annex) San Diego, CA | Fireman | 9/23/72-3/10/73 |
| | WHITE SANDS (ARD-20) Floating Drydock San Diego, CA | Machinist's Mate | 3/11/1973-3/27/1974 |
| | Hunters Point Naval Shipyard San Francisco, CA | | 1973 (approx. 2 weeks) |
| | Mare Island Naval Shipyard Vallejo, CA | | 1973 (approx. 2 weeks) |
| | POINT LOMA (AGDS-2) Floating Drydock San Pedro, CA | Machinist's Mate | 3/28/1974-8/8/1975 |
| | Fellows & Stewart, Inc. Terminal Island, CA | | |
| | Treasure Island Naval Station San Francisco, CA | | 9/3/1975 |

Job Duties:  Plaintiff served with the 32nd Street Shore Support Group in San Diego, California, where he was assigned to clean boilers and tubes.  Plaintiff was assigned temporary shore duty from September 1972 through March 1973.  During shore duty plaintiff was stationed aboard the SAMUEL GOMPERS where he was required to board approximately 12 destroyers to engage in maintenance and repair as fireman apprentice.  Plaintiff recalls as many as 4 boilers on the each of the destroyers.  Plaintiff saw the boilers opened up aboard these destroyers.  Plaintiff recalls entering boilers to access the tubes and to repair the fireboxes inside the boilers on these destroyers.  Plaintiff recalls working inside the fireboxes of about 6 of the destroyers.  Plaintiff recalls scraping and removing refractory materials from the tubes of these boilers.  Plaintiff recalls a rope type gasket on the doors of the boilers.  Plaintiff recalls using a scraper and/or a putty knife to remove gaskets.  Plaintiff recalls seeing visible dust created by this work which he inhaled.  Plaintiff does not recall wearing any type of respirator or mask.  Plaintiff recalls seeing other servicemen working on these boilers.  Plaintiff's job duties included chipping paint, scraping fire sides and boilers, punching tubes in the mud drum up to water drum, and scraping gasket materials from boiler doors and handles.  Plaintiff recalls thermal insulation and pipe insulation aboard these destroyers as well as lots of valves, pumps, and equipment.  Plaintiff observed others working with valves, and pumps.  Plaintiff also engaged in maintenance and

1   repair on the SAMUEL GOMPERS.  Plaintiff's job duties included chipping paint, learning how to repack valves, learning how to make gaskets, and cleaning bilge pumps.

2       Plaintiff worked below decks on the SAMUEL GOMPERS, specifically in the engine room and the boiler room.  Plaintiff recalls 2 boilers on the SAMUEL GOMPERS.  Plaintiff

3   worked in close proximity to boiler tenders as they replaced insulation in and repaired these boilers.  Plaintiff removed hand hole gaskets on boilers and was trained on the different

4   components of boilers.  Plaintiff was present when the boilers were opened up.  Plaintiff went into the firebox inside the boilers at least one time for training purpose.

5       Plaintiff assisted in assembling and disassembling valves.  Plaintiff was taught how to punch gaskets and to take out and replace packing.  Plaintiff recalls using a cork screw to remove

6   the packing.  Plaintiff recalls working with ANCHOR PACKING, PARKER SEAL, GARLOCK, and other rolls of gaskets which he did not see a name.  Plaintiff recalls using ANCHOR-brand

7   packing.  Plaintiff recalls that the packing came in a can and was cut to size.

        Plaintiff worked aboard the WHITE SANDS (ARD-20) and POINT LOMA (AGDS-2)

8   Auxiliary Repair Drydocks.  While aboard the WHITE SANDS (ARD-20), a floating dry dock, plaintiff was assigned to an auxiliary steam crew.  Plaintiff repacked valves, ran a donkey boiler,

9   ran an evaporator, and maintained air compressors, pumps, reefers, valves and associated equipment.  The "Donkey" boiler had a firebox, which plaintiff worked inside on some occasions

10  to clean up.  Plaintiff operated this boiler.  Plaintiff removed insulation from the exterior of this boiler on one occasion.  Plaintiff worked with "a lot" of valves aboard the WHITE SANDS.

11  Plaintiff recalls that the valves were mostly flanged, but some sweated.  In order to make repairs, the system would have to be shut down and the gaskets needed to be scraped, the flange needed

12  to be removed.  Plaintiff recalls working with WORTHINGTON VALVES.  Plaintiff recalls removing packing and that the packing came in reels or in a can.  Plaintiff recalls removing and

13  installing GARLOCK, ANCHOR, and PARKER SEAL-brand packing from the valves while on the WHITE SANDS.  Plaintiff recalls removing and installing bonnet gaskets.  Plaintiff recalls

14  using GARLOCK- or ANCHOR-brand gasket materials most of the time.  Most of the time plaintiff made his own gaskets out of sheet gasket material.  Plaintiff would cut off a piece from

15  the sheet and use a ball peen hammer to fit to size.  Plaintiff recalls an evaporator aboard the WHITE SANDS.  Plaintiff operated this evaporator and replaced gaskets on the valves.

16      Plaintiff recalls working with a reciprocating INGERSOLL RAND air compressor.

17  Plaintiff had to repack the air compressor on several occasions.  Plaintiff recalls that the packing he used on the air compressor was a stem-type packing.  The packing was ANCHOR,

18  GARLOCK, or PARKER SEAL.  Plaintiff recalls working with various brands of pumps.

    Plaintiff recalls repacking the pumps with GARLOCK, ANCHOR, and PARKER -brand

19  packing.  Plaintiff also recalls having to repack the refrigeration system on the WHITE SANDS.

    Plaintiff had to open up the expansion valve and replace the packing.  Plaintiff recalls using either GARLOCK, ANCHOR, or PARKER SEAL-brand packing.

20      While docked at Hunters Point Naval Shipyard, plaintiff saw civilian contractors come

21  aboard the WHITE SANDS.  Plaintiff recalls that GENERAL ELECTRIC had its crew on board working on the bathyscaph batteries.  The WHITE SANDS docked at Mare Island after leaving

22  Hunters Point in the winter of 1973.  Plaintiff remained at Mare Island for two weeks and was aboard ship part of the time.  Normal repair work was being done while the ship was at Mare Island.

23      After plaintiff left the WHITE SANDS, he boarded the POINT LOMA (AGDS-2), which

24  was also an Auxiliary Repair Drydock.  Plaintiff's duties aboard the POINT LOMA included operating the turbine, the evaporator, and the maintenance of various associated pumps and

25  equipment.  Plaintiff was stationed in the engine room on this ship.  Plaintiff recalls two boilers aboard the POINT LOMA manufactured by FOSTER WHEELER.  Plaintiff saw others working

26  on the boilers, including outside contractors.  Plaintiff saw outside contractors working on the boilers in Fellows and Stuart Shipyard in San Pedro.  Plaintiff recalls a large amount of thermal

27  insulation on the POINT LOMA because it was built for use in the Arctic.  Plaintiff observed a large quantity of insulation being removed and installed.  Plaintiff participated in the removal and

28  reinstallation of insulation.  Plaintiff remembers removing and installing insulation on steam pipes.  The new installation installed was "half-round" and was mudded over.  The insulating cement mud was a powder that needed to be mixed with water.  The bags were smaller than

50 pounds; however, plaintiff cannot remember the maker of the powder.  Plaintiff recalls that the powder came in a box encased in plastic.  The dry materials were mixed with water.  This was a very dusty process, and no respirator was used.  Plaintiff recalls performing work on a WESTINGHOUSE turbine while aboard the POINT LOMA.  Plaintiff saw contractors opening up the port-side turbine to work on it at San Pedro and was present when the turbine was opened up.

Plaintiff recalls replacing packing on an INGERSOLL RAND reciprocating pump. Plaintiff recalls that the manufacturer of the packing that he removed and installed was ANCHOR, PARKER, or GARLOCK.

Plaintiff recalls replacing gaskets in valves aboard the POINT LOMA.  The valves were manufactured by YARWAY and WORTHINGTON.  Plaintiff recalls removing packing and that the new packing came in reels or in a can.  Plaintiff recalls removing and installing GARLOCK, ANCHOR, and PARKER SEAL-brand packing from the valves aboard the POINT LOMA. Plaintiff recalls working with VICTOR gasket materials on the POINT LOMA when replacing a flange gasket.  This gasket was a sheet material and was fitted using a ball peen hammer or scissors.  Plaintiff stood Cold Iron Watch and worked below decks while contractors worked on equipment when the equipment was shut down.

Plaintiff recalls the following shipmates on the SAMUEL GOMPERS (AD-37):  Michael Hall (address unknown); Cliff Hancock (address unknown); George Wilson, Georgia; and Donald Bagley, Los Angeles, California.

Plaintiff recalls shipmates on the WHITE SANDS (ARD-20):  Dave Baker, San Diego, California; Steve Holland, Colorado; Michael Hall (address unknown); Cliff Hancock (address unknown); Ron Zupko, Michigan; Mr. Perkins, San Diego, California; Chief Mullins, San Diego, California; Patrick Lasswell, Three Rivers, California; Jack Todd, Oakdale, California; James Quisenberry, San Diego, California; Mr. Bertram, Seal Beach, California; Rick LaPointe, Pittsburg, California; Mr. Bracewell (address unknown); Ron Zupko (address unknown); Mr. Reese (address unknown); Mr. Hensley (address unknown) and Dave Lane, Vermont.

Plaintiff recalls shipmates on the POINT LOMA (AGDS-2):  Dave Baker, San Diego, California; Steve Holland, Colorado; Cliff Hancock (address unknown); Mr. Perkins, San Diego, California; Chief Mullins, San Diego, California; Patrick Lasswell, Three Rivers, California; Jack Todd, Oakdale, California; James Quisenberry, San Diego, California; Mr. Bertram, Seal Beach, California; Rick LaPointe, Pittsburg, California; Mr. Reese (address unknown); and Dave Lane, Vermont.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Debco Manufacturing, P.O. Box 4233, Walnut Creek, CA | Allspice Warehouse Concord, CA | Warehouseman | 7/1975-12/1975 |

Job Duties:  Plaintiff operated a forklift with which he loaded and unloaded spices in trucks at a warehouse.  Plaintiff recalls co-worker Greg Goulart.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| PG&E Antioch, CA | PG&E Antioch, CA, Contra Costa Water Plant | Auxiliary Control Operator | 12/7/1975-2/14/1980 (approx. 5 years) |
| | | Assistant Control Operator | |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

Job Duties:  As a Union Local 1245 Electrical Worker, plaintiff operated and conducted quality assurance on approximately ten boilers, including a BABCOCK & WILCOX COMPANY boiler. Plaintiff punched holes in a condenser.  Plaintiff worked in close proximity to electricians who scraped arc shields, switchgear and replaced asbestos gaskets in GENERAL ELECTRIC COMPANY turbines.  Plaintiff worked in close proximity to pipefitters who punched gaskets from GARLOCK SEALING TECHNOLOGIES, LLC asbestos sheet gasket material with a ball-peen hammer and installed these gaskets in pipes and replaced asbestos packing in YARWAY CORPORATION steam traps and LESLIE CONTROLS, INC. valves.  Plaintiff worked in close proximity to BECHTEL (SEQUOIA VENTURES INC.) employees who swept up asbestos dust from these work areas.

In approximately 1979, for two days, plaintiff recalls a steam leak in Unit 5 that propelled a large amount of asbestos fiber into the air and onto all equipment and everyone working within its close proximity, including plaintiff.  Plaintiff recalls the following co-workers:  Bill Kramer, Antioch, California; John Gillio, Antioch, California; Doug Taylor, Antioch, California; Mr. Tellez, Oakley, California; Gary Surfus, Antioch, California; Roy Rodgers, Antioch, California; Ed Caruso, Pittsburg, California; Bill Webb, Antioch, California; Ed Medina, Pittsburg, California; Chic Seivers, Antioch, California; Lou Parker, Pittsburg, California; Don Phillips, Antioch, California; Bill Parmenter, Antioch, California; Gary Kraus (address unknown) and Bill Lyle (deceased).

As auxiliary operator plaintiff monitored the firing aisle of the boilers and the auxiliary equipment, ran the evaporators, made chemical tests on water, operated valves, cleaned clinkers out of the firebox, changed from natural gas fuel to oil fuel and back the other way, racked out 480 breakers, monitored the intake water screens, chlorinated the intake tunnel, swept underneath the turbines and around the boilers, operated various valves out in the fuel/oil yard, and swept up floors on a regular basis.

Plaintiff recalls that there 10 boilers.  Plaintiff recalls that Unit 1-4 had 6 boilers and 3 turbines, Unit 4 had one boiler and 1 turbine, Unit 5 had one boiler and one turbine, and Unit 6 and 7 each had one boiler and one turbine.  Plaintiff recalls that the manufacturer of boilers 1-6 was BABCOCK & WILCOX boilers and the turbines were GENERAL ELECTRIC.

Plaintiff recalls seeing the boilers opened and contractors inside the fire boxes.  Plaintiff recalls BECHTEL (SEQUOIA VENTURES) was one of the contractors.  Plaintiff saw thermal insulation on pipes and boilers.  Plaintiff disturbed thermal insulation when he was opening valves.  There were main steam valves on top of a boiler and insulation on the top of the boilers. Plaintiff saw others removing and installing insulation on and around the boilers.  Plaintiff cannot recall the names of the contractors.  Plaintiff recalls seeing contractors.  Plaintiff recalls that the manufacturers of the valves were WORTHINGTON, YARWAY, and CRANECO., as well as many other manufacturers.  Plaintiff does not recall the maintenance history.  Plaintiff recalls seeing these contractors remove and install ANCHOR and GARLOCK packing on these valves.  Plaintiff also recalls seeing others working with new GARLOCK gaskets.  Plaintiff recalls seeing others operating INGERSOLL RAND and WORTHINGTON pumps and saw these pumps being repacked.  Plaintiff recalls seeing others doing drywall taping, mostly repairs and patch jobs.  Plaintiff recalls the following co-workers at the Contra Costa Water Plant:  Bill Kramer, Doug Talyor, Gary Surface, Bill Webb, Bill Lyle, Mr. Phillips, Mr. Scoglund, Dave Barrett, Bob Scanton, John Guilio, Dean Medford, Kerry Mitozinka, Ed Medina, Roy Rogers, Lou Parker, Chic Seavers, Mr. Tellez, Bill Parmenter, and Ed Caruso.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| PG&E Antioch, CA | PG&E Antioch, CA | Groundman | 12/15/1980-5/1/1983 |
|  |  | Lineman (Apprentice) | 5/1/1983-5/1/1986 |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

Job Duties:  Plaintiff worked at both the Antioch PG&E facility as well as various locations in and around Antioch California, on Rule 20 jobs.  Specific locations included City Hall in Antioch, Main St. in Pittsburg and Discovery Bay.

As a Groundman, plaintiff dug holes with mechanical augers to access damaged cables, ran PVC conduit, assisted on overhead and underground new construction, installed overhead and underground transformers and wire, and replaced suspension and/or stacked insulators.  Plaintiff also worked in above ground to underground wire conversion which consisted of moving overhead wire underground for aesthetic reasons.  Plaintiff installed underground transformers and splice boxes and cut transformer partitions which were made of a Bakelite material.  The transformers and partitions were made by GENERAL ELECTRIC AND WESTINGHOUSE.  Plaintiff cut the Bakelite material with a hacksaw on these jobs.  Plaintiff saw visible dust when cutting these Bakelite boxes, and inhaled this dust.  Plaintiff never wore a respirator.

Plaintiff recalls seeing BECHTEL employees cleaning up and sweeping up debris in Units 1-5.  Plaintiff recalls being around the BECHTEL employees for around 5-10 minutes on this occasion.  Plaintiff recalls the following co-workers:  Jim Lowery, Placerville, California; Rich Avila, Antioch, California; Jack Byrd, Shingletown, California; Mike Wilson, Oakley, California and Wayne Douglas, Antioch, Bob Wolf, John Lidel, Dave Sweeney, and Tim Hennessey, California.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| PG&E Antioch, CA | PG&E Antioch, CA | Lineman | 5/2/1986- 1993 |

Job Duties:  Plaintiff worked as a Lineman at the Antioch PG&E facility as well as various locations in and around Antioch California.  Outside of the Antioch facility, plaintiff's job duties included splicing conductors, operating the underground locator, making repairs to the cables, working on primary conductors and secondary service wires manufactured by Perrelli, OKONITE, and located underground electric hot lines.  Plaintiff recalls using "Hot Sticks" manufactured by Chance.  Plaintiff recalls that these "Hot Sticks" were made of Bakelite.  Plaintiff recalls that this material would occasionally break off and create dust.  Plaintiff recalls that these sticks were about 6 feet long and used to extend one's arm and disconnect connectors as a remote way to get a job done.  Plaintiff had to cut into asbestos cement pipe with his hacksaw on some occasions to see if there were wires running through it.  Plaintiff recalls that it was 2 inches in diameter and whitish with a smooth texture.  Plaintiff recalls the following co-workers:  Rich Avila, Dave Sweeney, Bob Wolf, John Lidel, as well as a Mr. Clevinger, Mr. Quesada, and Mr. McDonald.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| PG&E Antioch, CA | PG&E Antioch, CA | Inspector | 1993- 1995 |

Job Duties:  As a Contractor Inspector, plaintiff inspected housing tracts that were being built in developments, observed overhead and underground repairs.  This position was mainly administrative in nature, approximately 95% admin, 5% hands-on work.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| PG&E Antioch, CA | PG&E Antioch, CA | Business Representative | 1995- 1996 |

Job Duties:  Plaintiff worked as a New Business Representative from 1995-1996 out of the PG&E facility in Antioch.  Plaintiff's job duties included meeting with contractors, bringing materials to estimating, and scheduling projects.  Customers were mostly commercial, but some residential customers.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| PG&E Antioch, CA | PG&E Antioch, CA | Inspector | 1996- 1997 |

Job Duties:  Plaintiff had similar duties to those mentioned above as a New Business Rep, except that Plaintiff's main responsibility was to make sure that correct materials were used, the depths were right, and making sure switch gear was correct.  Plaintiff engaged in mostly administrative work during this time period.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| PG&E Antioch, CA | PG&E Antioch, CA | Inspector (Supervisor) | 1997- 2000 |

Job Duties:  Plaintiff's job duties included supervising technical inspectors at numerous housing developments.  If any problems arose, plaintiff would handle them.  Plaintiff worked primarily in the office answering phone calls of contractors regarding inspections, no hands-on work.  Plaintiff recalls co-workers Leroy Foster, Rick Sonnyborn, and Rudy "Buzzy" Quesada.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| PG&E Lake Almanor, CA | PG&E Lake Almanor, CA Canyon Dam Service Center | Lineman | 2000-2002 |

Job Duties:  In 2000, plaintiff went back to being a lineman.  Plaintiff's job duties were similar to those for his previous past lineman employment in the 1980s, as described above.  Plaintiff recalls co-workers Mike Udivich, Daryl Whitley, Mike Johnson, and Kevin Moore.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

///

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|---------------------|-----------|----------------|
| PG&E Red Bluff, CA. | PG&E Red Bluff, CA | Coordinator (Resources) | 11/1/2005- Nov. 2008 |

Job Duties:  As a Union Local 1245 Electrical Worker, plaintiff planned and coordinated work crews and project logistics.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL