ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-04770-JSW

Burke et al v. CBS Corporation et al                    Date Filed: 09/26/2011
Assigned to: Hon. Jeffrey S. White                     Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury               Nature of Suit: 368 P.I. : Asbestos
                                                       Jurisdiction: Diversity

**Plaintiff**

**Donna Burke**                       represented by  **Alan R. Brayton**
*as Wrongful Death Heir, and as*                      Brayton Purcell LLP
*Successor-in-Interest to*                            222 Rush Landing Road
                                                      PO Box 6169
                                                      Novato, CA 94948-6169
                                                      415-898-1555
                                                      Fax: 415-898-1247
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      Brayton Purcell LLP
                                                      222 Rush Landing Road
                                                      PO Box 6169
                                                      Novato, CA 94948-6169
                                                      415-898-1555
                                                      Fax: 415-898-1247
                                                      Email: DDonadio@braytonlaw.com
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Burke**                       represented by  **Alan R. Brayton**
*Deceased*                                            (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Debra Ann Burke-Capone**            represented by  **Alan R. Brayton**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jodi Leigh Burke-Demarest**                    represented by **Alan R. Brayton**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **David R. Donadio**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amanda Marie Spees**                           represented by **Alan R. Brayton**
*Legal Heir of James Burke, Deceased*                           (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **David R. Donadio**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**Metropolitan Life Insurance
Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/28/2011 | 7 | ORDER SETTING CASE MANAGEMENT CONFERENCE AND REQUIRING JOINT CASE MANAGEMENT CONFERENCE STATEMENT. Signed by Judge JEFFREY S. WHITE on 9/28/11. (jjoS, COURT STAFF) (Filed on 9/28/2011) (Entered: 09/28/2011) |
| 09/26/2011 | 6 | Summons Issued as to CBS Corporation, Metropolitan Life Insurance Company. (hdj, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/27/2011) |
| 09/26/2011 | 5 | Certificate of Interested Entities by Donna Burke, James Burke, Debra Ann Burke-Capone, Jodi Leigh Burke-Demarest, Amanda Marie Spees (hdj, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/27/2011) |
| 09/26/2011 | 4 | NOTICE of Tag-Along Action by Donna Burke, James Burke, Debra Ann Burke-Capone, Jodi Leigh Burke-Demarest, Amanda Marie Spees (hdj, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/27/2011) |

| 09/26/2011 | 3 | Declination to Proceed Before a U.S. Magistrate Judge by Donna Burke, James Burke, Debra Ann Burke-Capone, Jodi Leigh Burke-Demarest, Amanda Marie Spees. (hdj, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/27/2011) |
| 09/26/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 12/30/2011. Case Management Conference set for 1/6/2012 01:30 PM. (Attachments: # 1 Standing Order, # 2 Standing Order)(hdj, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/27/2011) |
| 09/26/2011 | 1 | COMPLAINT against CBS Corporation, Metropolitan Life Insurance Company ( Filing fee $ 350, receipt number 34611065052.). Filed byJames Burke, Donna Burke, Debra Ann Burke-Capone, Amanda Marie Spees, Jodi Leigh Burke-Demarest. (hdj, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/27/2011) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 09/28/2011 09:59:34 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-04770-JSW |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ORIGINAL FILED

2011 SEP 26  P 1: 14

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON✧PURCELL LLP
3  Attorneys at Law
   222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

E-filing

6  Attorneys for Plaintiffs

7

JSW

8                  UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11  DONNA BURKE, as Wrongful Death      )    No.   CV  11      4770
    Heir, and as Successor-in-Interest to )
12  JAMES BURKE, Deceased, and DEBRA    )
    ANN BURKE-CAPONE, JODI LEIGH        )    COMPLAINT FOR SURVIVAL,
13  BURKE-DEMAREST, AMANDA              )    WRONGFUL DEATH - ASBESTOS;
    MARIE SPEES, as Legal Heirs of JAMES )   DEMAND FOR JURY TRIAL
14  BURKE, Deceased,                    )
                                        )
15         Plaintiffs,                  )
                                        )
16  vs.                                 )
                                        )
17  CBS CORPORATION (FKA VIACOM         )
    INC., FKA WESTINGHOUSE              )
18  ELECTRIC CORPORATION),              )
    METROPOLITAN LIFE INSURANCE         )
19  COMPANY,                            )
                                        )
20         Defendants.                  )
                                        )
21

22                            I.

23                         PARTIES

24        1.      Plaintiffs in this action are DONNA BURKE successor-in-interest to the estate of

25  JAMES BURKE; and DONNA BURKE, DEBRA ANN BURKE-CAPONE, JODI LEIGH

26  BURKE-DEMAREST and AMANDA MARIE SPEES as Wrongful Death heirs of James Burke,

27  and all are on behalf of and are all hereinafter referred to as "Plaintiffs."

28  ///

BRAYTON✧PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\24396\FED\cmp-fed-wd-Met.wpd

2.      The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos, hereinafter "Decedent" is, with the date of death: JAMES BURKE died September 28, 2010. DONNA BURKE is the spouse of JAMES BURKE and is hereinafter referred to as "surviving spouse."

3.      Decedent sustained an asbestos-related lung disease and death by precisely the following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at Decedent's jobsites.  The pathogenesis of Decedent's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4.      All of Plaintiffs' claims arise out of a similar series of occurrences:  repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent, resulting in cumulative, progressive, incurable lung diseases.

5.      Each Plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on Decedent's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical.

6.      Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the
///

State of California, and that said defendants have regularly conducted business in the State of California.

## II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.      <u>Jurisdiction</u>:  Plaintiff DONNA BURKE is a citizen of the State of Pennsylvania. Plaintiff(s) DEBRA ANN BURKE-CAPONE, JODI LEIGH BURKE-DEMAREST, AMANDA MARIE SPEES are citizens of the following states, respectively: Pennsylvania; Pennsylvania; North Carolina.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |
| METROPOLITAN LIFE INSURANCE COMPANY | New York/New York |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.      <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiffs herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

///

///

///

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence - Survival)

PLAINTIFF DONNA BURKE AS SUCCESSOR-IN-INTEREST TO THE DECEDENT JAMES BURKE COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), METROPOLITAN LIFE INSURANCE COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.      At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively be called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

products containing asbestos.  The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC. CBS CORPORATION WESTINGHOUSE ELECTRIC CORPORATION WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY B.F. STURTEVANT KPIX TELEVISION STATION PARAMOUNT COMMUNICATIONS, INC GULF & WESTERN INDUSTRIES, INC. NORTH & JUDD MANUFACTURING COMPANY |

10.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,

installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

12.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

13.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

///

15.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

16.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17.     Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

18.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19.     As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and

///

///

related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21.    As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

22.    As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive damages against said defendants.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

## SECOND CAUSE OF ACTION
### (Products Liability - Survival)

PLAINTIFF DONNA BURKE AS SUCCESSOR-IN-INTEREST TO THE DECEDENT JAMES BURKE COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), METROPOLITAN LIFE INSURANCE COMPANY, THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First Cause of Action herein.

27.    Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

28.    Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease and/or death.  The defect existed in the said products at the time they left the possession of defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed persons," including Decedent herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

29.    "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons."  Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Decedent and others similarly situated were exposed.

30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

1   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

2   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

3   and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

4   did so with conscious disregard for the safety of "exposed persons" who came in contact with

5   said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

6   ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

7   death resulting from exposure to asbestos or asbestos-containing products, including, but not

8   limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part,

9   from scientific studies performed by, at the request of, or with the assistance of, said defendants,

10  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

11  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

12          31.     On or before 1930, and thereafter, said defendants, their ALTERNATE

13  ENTITIES and each of them, were aware that members of the general public and other "exposed

14  persons," who would come in contact with their asbestos and asbestos-containing products, had

15  no knowledge or information indicating that asbestos or asbestos-containing products could

16  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

17  members of the general public and other "exposed persons," who came in contact with asbestos

18  and asbestos-containing products, would assume, and in fact did assume, that exposure to

19  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

20  hazardous to health and human life.

21          32.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

22  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

23  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

24  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

25  asbestos-containing products without attempting to protect "exposed persons" from, or warn

26  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

27  asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn

28  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products.  In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent.

34.     Plaintiffs allege that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use, but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

35.     Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent suffered permanent injury and death as alleged herein.

///

11

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

36.     As a direct and proximate result of the actions and conduct outlined herein, Decedent have suffered the injuries and damages herein alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

PLAINTIFF DONNA BURKE, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO JAMES BURKE DECEASED, AND PLAINTIFF(S) DEBRA ANN BURKE-CAPONE, JODI LEIGH BURKE-DEMAREST, AMANDA MARIE SPEES AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

37.     Plaintiffs incorporate by reference each paragraph contained within the First Cause of Action as though fully set forth herein.

38.     The heirs-at-law of decedent and their relationships to the decedent are:

| NAME | RELATIONSHIP TO DECEDENT |
|---|---|
| DONNA BURKE | Spouse |
| DEBRA ANN BURKE-CAPONE | Daughter |
| JODI LEIGH BURKE-DEMAREST | Daughter |
| AMANDA MARIE SPEES | Daughter |

39.     The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

40.     As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41.     At all times prior to his death, Decedent was a faithful and dutiful spouse to the surviving spouse.

42.     As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

43.     As a further direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

**FOURTH  CAUSE OF ACTION**
(Products Liability - Wrongful Death)

PLAINTIFF DONNA BURKE, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO JAMES BURKE DECEASED, AND PLAINTIFF(S) DEBRA ANN BURKE-CAPONE, JODI LEIGH BURKE-DEMAREST, AMANDA MARIE SPEES AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

44.     Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First, Second and Third Causes of Action herein.

45.     As a direct and proximate result of the conduct of defendants, and each of them, Decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

### FIFTH CAUSE OF ACTION
Aiding and Abetting Battery
[Against Metropolitan Life Insurance Company]

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF COMPLAINS OF DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, THEIR ALTERNATE ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

46.     Plaintiff incorporates herein by reference, as though fully set forth hereat, each and every allegation of the First and Second Causes of Action as though fully set forth herein.

47.     This cause of action is for the aiding and abetting of battery by METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

48.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned defendant MET LIFE was and is a corporation organized and existing under and by virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is doing business in the State of California, and regularly conducted or conducts business in the State of California.  At times relevant to this cause of action, MET LIFE was an insurer of J-M.

49.     Decedent was exposed to asbestos-containing dust created by the use of the asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the asbestos or asbestos-related products supplied by J-M caused plaintiff's asbestos-related disease and injuries.

50.     Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-related disease in Canadian mines and mills, including those of J-M.  Those studies revealed that miners and mill workers were contracting asbestosis at relatively low levels of dust.  McGill University, which conducted the studies, sought permission from MET LIFE to publish the results but they were never published.  MET LIFE prepared its own report of these studies.

51.     Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S. plants manufacturing asbestos-containing products, including a J-M plant.  Those studies showed

that workers in substantial numbers were contracting asbestosis, at levels less than what became
the Threshold Limit Value ('TLV") of 5mppcf.  The MET LIFE report was never published or
disseminated except to plant owners, including J-M.

52.     In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,
New Jersey.  Results were consistent with those of the Canadian and previous U.S. plant studies.
They were never published.

53.     In 1934, J-M and others whose plants MET LIFE had studied agreed with MET
LIFE that it should issue a report of its studies.

54.     MET LIFE submitted a draft of its report to J-M.  J-M requested, for legal and
business reasons, that certain critical parts of the draft be changed.  MET LIFE's official in
charge was Lanza.  MET LIFE through Lanza did make changes that J-M requested, including:

(a)     Deletion of MET LIFE's conclusion that the permissible dust level for asbestos
        should be less than that for silica;

(b)     Addition of the phrase that asbestosis clinically appeared to be milder than
        silicosis.

The report, thus altered, was published in 1935.  It was misleading, and intentionally so, because
it conveyed the incorrect propositions that asbestosis was a less serious disease process than
silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases
than was the case for silica dust.

55.     MET LIFE had a close relationship with J-M.  It invested money in J-M.  It
provided group health and life insurance to J-M.  MET LIFE IN 1934 agreed to supply industrial
hygiene services to J-M, including dust counts, training employees to monitor dust levels,
examining employees, and recommending protective equipment.  MET LIFE and Lanza were
viewed as experts on industrial dusts.

56.     In 1933, MET LIFE through Lanza issued the following advice to J-M:

(a)     Disagreeing with the recommendation of a J-M plant physician, MET LIFE
        advised against warning workers of the fact that asbestos dust is hazardous to their
        health, basing its advice in view of the extraordinary legal situation;

(b)     When the plant physician judged the best disposition of an employee with asbestosis was to remove him from the dust, MET LIFE advised instead that disposition should depend on his age, nature of work and other factors and to leave him alone if he is old and showing no disability, for, MET LIFE stated, economic and production factors must be balanced against medical factors.

57.     J-M followed the MET LIFE advices and did not warn its workers, including plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying workers of their disease.

58.     In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation ("AHF").  One of the AHF purposes was to develop standards for dust levels that would serve as a defense in lawsuits and workers' compensation claims.

59.     MET LIFE funded partially another study that tentatively recommended in 1938 a TLV for asbestos dust of 5mpccf, the same as for silica dust.  MET LIFE was aware of data from its own, unpublished reports that showed that level was too high for asbestos dust.  MET LIFE nonetheless promoted that TLV as proper.

60.     In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant. That report showed that workers exposed to less than the recommended maximum levels of dust were developing disease.  MET LIFE was a member of the IHF and Lanza was on its medical committee.  The Hemeon report, which was supplied to J-M and other owners, never was published.

61.     In 1936, J-M and other asbestos companies agreed with a leading medical research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the others retained control over publication of the results.  In 1943 Saranac's Dr. Leroy Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long fiber asbestos contracted cancer.

///

///

62.     Dr. Gardner died in 1946.  J-M and other companies wanted parts of the Saranac results published and enlisted the assistance of MET LIFE's Lanza.  J-M and other companies decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as Saranac's critique of existing dust standards.  Lanza directed Saranac to delete the offending materials.  Saranac did so, and the altered report was published in 1951 by Saranac's Dr. Vorwald, in the *AMA Archives of Industrial Hygiene*.

63.     Lanza left MET LIFE at the end of 1948, and took a position at New York University, funded by MET LIFE.  He continued to misrepresent that asbestos does not cause cancer into the 1950s.

64.     The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE official was on its medical committee, through Drs. Braun and Truan conducted a study of Canadian miners.  The original report, in 1957, found an increased incidence of lung cancer in persons exposed to asbestos.  The sponsors, including J-M, caused those findings to be stricken, and the report published in 1958 contained the false conclusion that asbestos exposure alone did not increase the risk of lung cancer.

65.     The false and misleading reports that a link between asbestos exposure and cancer was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low or zero.

66.     J-M not later than 1933 was inflicting asbestos dust on its workers in its plants knowing that the dust was hazardous and was causing workers to contract disease that could and would disable and kill them.  As MET LIFE advised, J-M did not warn its workers of the hazard.  J-M committed battery on workers in its plants, including plaintiff, by that conduct.

67.     MET LIFE knew that J-M's conduct constituted a breach of its duties to its workers.  MET LIFE gave substantial assistance to J-M in committing batteries on its workers, including plaintiff, through MET LIFE's conduct described above, including by:

(a)     Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in view of the extraordinary legal situation, such that J-M did not warn its workers, including plaintiff;

1     (b)    Deleting the findings of its own draft report that the allowable limits for asbestos

2             dust should be less than those for silica dust, and promoting a false and unsafe

3             TLV which specified maximum levels of silica dust, and promoting a false and

4             unsafe TLV which specified maximum levels of dust for workers, including

5             plaintiff, which MET LIFE knew was wrong through its own studies;

6     (c)    Advising J-M to keep certain workers continuing to work at dusty areas in the

7             plant even after J-M was aware that their lungs showed asbestos-induced changes,

8             lest other workers including plaintiff be alerted to the dangers of working in the

9             dust.

10     WHEREFORE, plaintiff prays judgment against defendants, their ALTERNATE

11  ENTITIES, and each of them, as hereinafter set forth.

12                                IV.

13                   DAMAGES AND PRAYER

14     WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

15  each of them in an amount to be proved at trial in each individual case, as follows:

16     (a)    For Plaintiffs' general damages according to proof;

17     (b)    For Plaintiffs' loss of income, wages and earning potential according to proof;

18     (c)    For Plaintiffs' medical and related expenses according to proof;

19     (d)    For Plaintiffs' cost of suit herein;

20     (e)    For exemplary or punitive damages according to proof;

21     (f)    For damages for fraud according to proof; and

22     (g)    For such other and further relief as the Court may deem just and proper, including

23  costs and prejudgment interest.

24  Dated: 9/24/11                   BRAYTON❖PURCELL LLP

25

26                                 By:

27                                     David R. Donadio
                                   Attorneys for Plaintiffs

28

1

<u>JURY DEMAND</u>

2

Plaintiffs hereby demand trial by jury of all issues of this cause.

3    Dated: _____9/24/11_____                    BRAYTON❖PURCELL LLP

4

5                                                  By: _____
                                                       David R. Donadio
6                                                      Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\24396\FED\cmp-fed-wd-Met.wpd                  19
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

Decedent:  JAMES BURKE, Deceased.

Decedent's injuries:  Decedent was diagnosed with mesothelioma on or about May 28, 1999.

Decedent died on September 28, 2010.

Retirement Status:  Decedent stopped working on May 1999, due to his mesothelioma.

Defendants:  Plaintiffs contend that the asbestos-containing products to which Decedent  was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.   Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| United States Navy | NORRIS (DDE-859) at Naval Station, Newport, RI; Naval Drydock and Repair Facility, San Juan, Puerto Rico | Personnel Officer | 12/16/1959-3/13/1961 |
| Patterson Kelley CO, Inc. 100 Burson Street East Stroudsburg, PA 18301 | Patterson Kelley CO 100 Burson Street East Stroudsburg, PA | Inspector | 12/1966-3/1971 |
| General Electric plant later owned by National Electric Carbon Products Operation, Inc., 100 Stokes Ave. East Stroudsburg, PA | General Electric/ National Electric Carbon Products Operation, Inc., 100 Stokes Ave. East Stroudsburg, PA plant | Customer Service Manager | 7/1971- approx. 1974; 1993 |
| | | Office Worker (supervisor) | approx. 1974-1977 |
| | | Production Manager | approx. 1977-1993 |