ADRMOP

# U.S. District Court
## California Northern District (Oakland)
### CIVIL DOCKET FOR CASE #: 4:11-cv-04769-PJH

| | |
|---|---|
| Keys et al v. General Electric Company | Date Filed: 09/26/2011 |
| Assigned to: Hon. Phyllis J. Hamilton | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Asbestos Litigation | Nature of Suit: 368 P.I. : Asbestos |
| | Jurisdiction: Diversity |

**Plaintiff**

**Dewayne Keys**    represented by **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Patricia Keys**    represented by **Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

| Date Filed | # | Docket Text |
|---|---|---|
| | | |

| | | |
|---|---|---|
| 09/26/2011 | 5 | Declination to Proceed Before a U.S. Magistrate Judge by Dewayne Keys, Patricia Keys. (vlk, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/28/2011) |
| 09/26/2011 | 4 | Certificate of Interested Entities by Dewayne Keys, Patricia Keys (vlk, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/28/2011) |
| 09/26/2011 | 3 | NOTICE of Tag Along Action by Dewayne Keys, Patricia Keys (vlk, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/28/2011) |
| 09/26/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 12/29/2011. Case Management Conference set for 1/5/2012 02:00 PM. (Attachments: # 1 Standing Order)(vlk, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/28/2011) |
| 09/26/2011 | 1 | COMPLAINT with jury demand against General Electric Company ( Filing fee $ 350, receipt number 34611065051.). Filed byPatricia Keys, Dewayne Keys. (Attachments: # 1 Civil Cover Sheet)(vlk, COURT STAFF) (Filed on 9/26/2011) (Entered: 09/28/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/28/2011 13:44:39 | | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:11-cv-04769-PJH |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

```
 1  ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R. DONADIO, ESQ., S.B. #154436
 2  BRAYTON✦PURCELL LLP
    Attorneys at Law
 3  222 Rush Landing Road
    P.O. Box 6169
 4  Novato, California 94948-6169
    (415) 898-1555
 5  (415) 898-1247 (Fax No.)
 6  Attorneys for Plaintiffs
```

ORIGINAL FILED
2011 SEP 26 P 1:09
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DEWAYNE KEYS and ) No. 
PATRICIA KEYS, ) CV 11 - 4769 PJH
              )
    Plaintiffs, ) COMPLAINT FOR ASBESTOS
              ) PERSONAL INJURY/ PRODUCTS
vs.           ) LIABILITY/ LOSS OF CONSORTIUM;
              ) DEMAND FOR JURY TRIAL
GENERAL ELECTRIC COMPANY, )
              )
    Defendant. )

### I.

### PARTIES

1. Plaintiff in this action, DEWAYNE KEYS, has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos. Plaintiff, PATRICIA KEYS, has sustained loss of consortium as set forth in the Third Cause of Action.

2. Plaintiff DEWAYNE KEYS sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3. The pathogenesis of Plaintiff DEWAYNE KEYS' asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

///

4.	All of Plaintiffs' claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff DEWAYNE KEYS' worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff DEWAYNE KEYS, resulting in cumulative, progressive, incurable lung diseases.

5.	Plaintiff DEWAYNE KEYS claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6.	As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff DEWAYNE KEYS.

7.	Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8.	<u>Jurisdiction</u>: Plaintiff DEWAYNE KEYS is a citizen of the State of Oregon.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | New York/Connecticut |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

K:\Injured\110064\FED\PLD\cmp fed (pilc).wpd    2
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

9. <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF DEWAYNE KEYS COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10. At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |

11.  At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12.  At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,

1 supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

13. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

14. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15. Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

16.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

21.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

24. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

<div style="text-align:center">

SECOND CAUSE OF ACTION
(Products Liability)

</div>

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF DEWAYNE KEYS COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.

1  The defect existed in the said products at the time they left the possession of defendants, their
2  "alternate entities," and each of them.  Said products did, in fact, cause personal injuries,
3  including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff
4  herein, while being used in a reasonably foreseeable manner, thereby rendering the same
5  defective, unsafe and dangerous for use.
6        28.    "Exposed persons" did not know of the substantial danger of using said products.
7  Said dangers were not readily recognizable by "exposed persons."  Said defendants, their
8  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
9  which Plaintiff and others similarly situated were exposed.
10       29.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
11 to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
12 sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,
13 marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
14 and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
15 did so with conscious disregard for the safety of "exposed persons" who came in contact with
16 said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
17 ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
18 death resulting from exposure to asbestos or asbestos-containing products, including, but not
19 limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part,
20 from scientific studies performed by, at the request of, or with the assistance of, said defendants,
21 their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
22 defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.
23       30.    On or before 1930, and thereafter, said defendants, their ALTERNATE
24 ENTITIES and each of them, were aware that members of the general public and other "exposed
25 persons", who would come in contact with their asbestos and asbestos-containing products, had
26 no knowledge or information indicating that asbestos or asbestos-containing products could
27 cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
28 members of the general public and other "exposed persons", who came in contact with asbestos

K:\Injured\110064\FED\PLD\cmp fed (pilc).wpd         8
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

1  and asbestos-containing products, would assume, and in fact did assume, that exposure to
2  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
3  hazardous to health and human life.

4      31.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
5  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
6  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
7  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
8  asbestos-containing products without attempting to protect "exposed persons" from or warn
9  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
10 asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn
11 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
12 asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
13 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
14 and suppressed said knowledge from "exposed persons" and members of the general public, thus
15 impliedly representing to "exposed persons" and members of the general public that asbestos and
16 asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their
17 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
18 representations with the knowledge of the falsity of said implied representations.

19     32.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,
20 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE
21 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
22 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
23 sale, inspection, installation, contracting for installation, repair, marketing, warranting,
24 rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-
25 containing products. In pursuance of said financial motivation, said defendants, their
26 ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed
27 persons" and in fact were consciously willing and intended to permit asbestos and asbestos-
28 ///

1  containing products to cause injury to "exposed persons" and induced persons to work with and
2  be exposed thereto, including Plaintiff.

3      33.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE
4  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
5  products to be safe for their intended use but that their asbestos and asbestos-containing products,
6  created an unreasonable risk of bodily harm to exposed persons.

7      34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
8  and various asbestos-containing products manufactured, fabricated, inadequately researched,
9  designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
10 for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
11 marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
12 aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
13 cannot identify precisely which asbestos or asbestos-containing products caused the injuries
14 complained of herein.

15     35.    Plaintiff relied upon defendants', their "alternate entities'", and each of their
16 representations, lack of warnings, and implied warranties of fitness of asbestos and their
17 asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has
18 been injured permanently as alleged herein.

19     36.    As a direct and proximate result of the actions and conduct outlined herein,
20 Plaintiff has suffered the injuries and damages previously alleged.

21     WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
22 ENTITIES, and each of them, as hereinafter set forth.

<div align="center">

THIRD CAUSE OF ACTION
(Loss of Consortium)

</div>

25 AS AND FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF
26 ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF PATRICIA KEYS COMPLAINS OF
27 DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES,"
28 AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

37.     Plaintiffs incorporate by reference each and every paragraph of the First through Second Causes of Action herein.

38.     Plaintiffs DEWAYNE KEYS and PATRICIA KEYS were married on June 16, 1997, and at all times relevant to this action were, and are now, husband and wife.

39.     Prior to Plaintiff DEWAYNE KEYS' injuries as alleged, he was able and did perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, DEWAYNE KEYS has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, service and duties in the future.  As a proximate result thereof, Plaintiff PATRICIA KEYS has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

40.     Plaintiff's discovery of the cause of her loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

41.     As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Plaintiff DEWAYNE KEYS as set forth in this complaint, Plaintiff PATRICIA KEYS has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

## IV.

## PRAYER

WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

Plaintiff DEWAYNE KEYS:

(a)     For Plaintiff's general damages according to proof;

(b)     For Plaintiff's loss of income, wages and earning potential according to proof;

(c)     For Plaintiff's medical and related expenses according to proof;

Plaintiff PATRICIA KEYS:

(d)    For Plaintiff's damages for loss of consortium according to proof;

Plaintiffs DEWAYNE KEYS and PATRICIA KEYS:

(e)    For Plaintiffs' cost of suit herein;

(f)    For exemplary or punitive damages according to proof;

(g)    For damages for fraud according to proof; and

(h)    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: 9/19/11

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated: 9/19/11

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

# EXHIBIT A


EXHIBIT A

<u>Plaintiff</u>:  DEWAYNE KEYS

<u>Plaintiff's injuries</u>:  Plaintiff was diagnosed with asbestosis on or about 2006 and with asbestos-related pleural disease on or about April 2010.

<u>Retirement Status</u>:

    Plaintiff retired from his last place of employment at regular retirement age.  He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

<u>Defendants</u>:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.  Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| <u>Employer</u> | Location of <u>Exposure</u> | <u>Job Title</u> | Exposure <u>Dates</u> |
|---|---|---|---|
| United States Navy | Naval Training Center San Diego, CA | Recruit | 9/15/1955 |
|  | <u>KERMIT ROOSEVELT</u> (ARG-16); Naval Repair Facility, Sasebo, Japan | Fireman (Apprentice) | 12/15/1955-1956 (approximately 4 months) |
|  | <u>BURTON ISLAND</u> (AGB-1); Todd Shipyard, Seattle, WA; Point Barrow, AK; Arctic Circle | Fireman/Engineman | 6/1/1956- 3/31/1959 |
|  | Pier 91, Seattle, WA |  |  |
|  | Puget Sound Naval Shipyard, Bremerton, WA |  | (2 weeks ) |
|  | Bethlehem Steel Shipyard, San Francisco, CA |  |  |

K:\Injured\110064\FED\PLD\cmp fed (pilc).wpd     14
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Merritt-Chapman & Scott Corp., Jacksonville, FL | Merritt-Chapman & Scott Blue River, Or | Mechanic (Helper) | 1960-1961 (8 months) |
| Diehl Fenley Solomon et al. Lookout Logging & Construction Co. Blue River, OR 97413 | Lookout Logging & Construction Co. Blue River, OR | Truck driver | Mid-1960s (3 months) |
| Roger R. Tyler 234 SE Ephrata, WA 98823 | Stockyard Ephrata, WA | Mechanic | 1964 (2 weeks) |
| Weston Farming Co. Weston, OR | Weston Farming Co. Weston, OR | Mechanic | 1965 (4 months) |
| Line-Up Shops Inc. 834 SE Sandy Blvd. Portland, OR | Line-Up Shops Inc. Portland, OR | Mechanic | 1966 (8-12 months) |
| Globe Brake Center Portland, OR | Globe Brake Center 936 SE, Portland, OR | Mechanic; Service Manager | 7/1966-12/1969 |
| DeWayne Keys, Self-Employed | Elgin, OR; Boise Cascade, OR | Truck Driver | 1972-1974; 1976 |
| Curry County Gold Beach, OR | Curry County Mechanical Shops in Gold Beach, Port Orford, and Brookings, OR | Mechanic; Safety Inspector | 1977; 1979-1997 |
| D L J Trucking Co. Oakland, OR | Sherman Brothers Logging Mechanics Shop Nesika Beach, OR | Mechanic | 1978 (1 month) |
| Coast Auto Center Inc. 530 Chetco Ave. Brookings, OR | Coast Auto Center Inc. Brookings, OR and Chrysler dealership Tigard, OR | Service Manager | 1978-1979 (approximately 8 months) |

NON-OCCUPATIONAL

FRICTION

1941 CHEVROLET: Plaintiff purchased this car in 1962 or 1963. Plaintiff performed two brake jobs and two clutch jobs installed. Plaintiff used BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes. Plaintiff overhauled the engine. Plaintiff scraped and used a power wire brush to remove all the old gaskets on the engine. Plaintiff replaced the pan gaskets on the engine. Plaintiff installed FEL-PRO pan, head, intake and exhaust manifold, valve cover, water pump, fuel pump, carburetor, and timing gear cover gaskets. Plaintiff also installed FEL-PRO rope packing around the grooves of the oil pan. Plaintiff performed the maintenance work at home. Plaintiff's father assisted with the engine overhaul on this vehicle.

1961 STUDEBAKER HAWK: Plaintiff purchased this car in 1967. Plaintiff performed one brake job on all four wheels. Plaintiff used BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes purchased at Best Distributing in Portland, Oregon. Plaintiff replaced the engine on this vehicle and installed a brand new engine purchased from a STUDEBAKER dealership. Plaintiff installed carburetor gaskets and two exhaust manifold donut gaskets manufactured by FEL-PRO and purchased from Best Distributing in Portland, Oregon. Plaintiff sanded one of the FEL-PRO exhaust donut gaskets to remove some of the imperfections. Plaintiff used a hand-held grinder to modify the carburetor gasket, which took approximately 20 minutes. Plaintiff used a vacuum cleaner to clean up the dust. Plaintiff recalls that Woody Frontenite, deceased, and a gentlemen named Leroy, last name unknown, assisted with this vehicle work.

1975 MERCEDES: Plaintiff purchased the 1975 MERCEDES in 1982. The car had 63,000 miles on it. Plaintiff used a screw driver to remove the brake pads. Plaintiff also removed the replaced the original clutch. Plaintiff purchased the replacement brake and clutch parts at the MERCEDES dealership in Spokane, Washington.