# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-04797-SI

Busby v. Huntington Ingalls Incorporated et al          Date Filed: 09/28/2011
Assigned to: Hon. Susan Illston                         Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Asbestos Litigation            Nature of Suit: 368 P.I. : Asbestos
                                                        Jurisdiction: Diversity

**Plaintiff**

**Dan Busby**                    represented by   **Alan R. Brayton**
                                                 Brayton Purcell LLP
                                                 222 Rush Landing Road
                                                 PO Box 6169
                                                 Novato, CA 94948-6169
                                                 415-898-1555
                                                 Fax: 415-898-1247
                                                 *ATTORNEY TO BE NOTICED*

                                                 **David R. Donadio**
                                                 Brayton Purcell LLP
                                                 222 Rush Landing Road
                                                 PO Box 6169
                                                 Novato, CA 94948-6169
                                                 415-898-1555
                                                 Fax: 415-898-1247
                                                 Email: DDonadio@braytonlaw.com
                                                 *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**Todd Shipyards Corporation**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 09/28/2011 | 4 | NOTICE of Tag-Along Action by Dan Busby (ysS, COURT STAFF) (Filed on 9/28/2011) (Entered: 09/29/2011) |
| 09/28/2011 | 3 | Certificate of Interested Entities or Persons by Dan Busby (ysS, COURT STAFF) (Filed on 9/28/2011) (Entered: 09/29/2011) |
| 09/28/2011 | 2 | Declination to Proceed Before a U.S. Magistrate Judge by Dan Busby. (ysS, |

| | | |
|---|---|---|
| | | COURT STAFF) (Filed on 9/28/2011) (Entered: 09/29/2011) |
| 09/28/2011 | 1 | COMPLAINT (summons issued); against Huntington Ingalls Incorporated, Todd Shipyards Corporation ( Filing fee $ 350, receipt number 34611065150.). Filed byDan Busby. (ysS, COURT STAFF) (Filed on 9/28/2011) (Entered: 09/29/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/29/2011 10:18:58 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-04797-SI |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |



1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON✷PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

7

8  **E-filing**

   **UNITED STATES DISTRICT COURT**

9  **NORTHERN DISTRICT OF CALIFORNIA**

10  **SAN FRANCISCO DIVISION**

11  DAN BUSBY,                          )
                                        )  CV 11        4797
12          Plaintiff,                  )
                                        )
13  vs.                                 )  COMPLAINT FOR ASBESTOS
                                        )  PERSONAL INJURY/ PRODUCTS
14  HUNTINGTON INGALLS                  )  LIABILITY; DEMAND FOR JURY TRIAL
    INCORPORATED (FKA NORTHROP          )
15  GRUMMAN SHIPBUILDING, INC.),        )
    TODD SHIPYARDS CORPORATION,         )
16                                      )
            Defendants.                 )
17

18                          **I.**

19                      **PARTIES**

20      1.      Plaintiff in this action, DAN BUSBY, has sustained asbestos-related lung injuries

21  as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

22      2.      Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos

23  fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

24      3.      The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit**

25  **A,** attached to Plaintiff's complaint and incorporated by reference herein.

26      4.      All of Plaintiff's claims arise out of repeated exposure to asbestos-containing

27  products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or

28  maintained by defendants at Plaintiff's worksites, over a period of years, caused from release of

BRAYTON✷PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1   toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative,

2   progressive, incurable lung diseases.

3       5.      Plaintiff claims damages for an asbestos-related disease arising from a series of

4   occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing

5   products, when handled in the manner in which they were intended, released harmful asbestos

6   fibers which when inhaled by Plaintiff, caused serious lung disease.

7       6.      As used herein, Plaintiff shall mean the above-captioned asbestos-injured

8   Plaintiff.

9       7.      Plaintiff is informed and believes, and thereon alleges that at all times herein

10  mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole

11  proprietorships and/or other business entities organized and existing under and by virtue of the

12  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

13  said defendants, and each of them, were and are authorized to do and are doing business in the

14  State of California, and that said defendants have regularly conducted business in the County of

15  San Francisco, State of California.

16                                    **II.**

17              **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

18      8.      <u>Jurisdiction</u>: Plaintiff DAN BUSBY is a citizen of the State of Montana.

19      Defendants are each corporations incorporated under the laws of and having its principal

20  places of business in the following States:

21

| DEFENDANT | STATE |
|---|---|
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), | Virginia |
| TODD SHIPYARDS CORPORATION | Washington/Delaware |

25      This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

26  between citizens of different states in which the matter in controversy exceeds, exclusive of costs

27  and interest, seventy-five thousand dollars.

28  ///

9.      <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF DAN BUSBY COMPLAINS OF DEFENDANTS HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10.     At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

1   entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

2   designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

3   sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

4   rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

5   products containing asbestos. The following defendants, and each of them, are liable for the acts

6   of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

7   destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

8   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

9   ENTITY; defendants, and each of them, caused the destruction of plaintiff's remedy against each

10  such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

11  role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

12  originally attached to each such ALTERNATE ENTITY:

13  | DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. AVONDALE SHIPYARDS, INC. CONTINENTAL MARITIME INDUSTRIES, INC. EASTERN IDAHO CONSTRUCTION COMPANY INGALLS SHIPBUILDING, INC. NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY NORTH CAROLINA SHIPBUILDING NORTHROP GRUMMAN SHIP SYSTEMS, INC. SERVICE ENGINEERING INDUSTRIES, INC. |
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION SEATTLE-TACOMA SHIPBUILDING CORP. |

21          11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

22  each of them, were and are engaged in the business of researching, manufacturing, fabricating,

23  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

24  supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

25  promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

26  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

27  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

28  asbestos and other products containing asbestos.

12.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons."  In part, and without limitation as to other defendants, defendants HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) and TODD SHIPYARDS CORPORATION, manufactured, modified, serviced and/or repaired asbestos-containing ships and vessels.

13.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

14.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to

said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15.    Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

16.    As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17.    Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19.    As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20.    As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

1  and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this

2  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost

3  thereof is ascertained.

4       21.   As a further direct and proximate result of the said conduct of the defendants,

5  their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature

6  and extent of which are not yet known to Plaintiff; and leave is requested to amend this

7  complaint to conform to proof at the time of trial.

8       22.   Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

9  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

10  had full knowledge of, or should have known of, each of the acts set forth herein.

11       23.   Defendants, their "alternate entities," and each of them, are liable for the

12  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

13  and each defendant's officers, directors and managing agents participated in, authorized,

14  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

15  each of their ALTERNATE ENTITIES as set forth herein.

16       24.   The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

17  and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious

18  disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of

19  example and by way of punishing said defendants, seeks punitive damages according to proof.

20       WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

21  each of them, as hereinafter set forth.

22                    <u>SECOND CAUSE OF ACTION</u>
                          (Products Liability)
23

24       AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

25  ACTION FOR PRODUCTS LIABILITY, PLAINTIFF DAN BUSBY COMPLAINS OF

26  DEFENDANTS HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP

27  GRUMMAN SHIPBUILDING, INC.), TODD SHIPYARDS CORPORATION, THEIR

28  "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26.     Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28.     "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants,

1   their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

2   defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

3        30.    On or before 1930, and thereafter, said defendants, their ALTERNATE

4   ENTITIES and each of them, were aware that members of the general public and other "exposed

5   persons", who would come in contact with their asbestos and asbestos-containing products, had

6   no knowledge or information indicating that asbestos or asbestos-containing products could

7   cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

8   members of the general public and other "exposed persons", who came in contact with asbestos

9   and asbestos-containing products, would assume, and in fact did assume, that exposure to

10  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

11  hazardous to health and human life.

12       31.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

13  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

14  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

15  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

16  asbestos-containing products without attempting to protect "exposed persons" from or warn

17  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

18  asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn

19  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

20  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

21  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

22  and suppressed said knowledge from "exposed persons" and members of the general public, thus

23  impliedly representing to "exposed persons" and members of the general public that asbestos and

24  asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their

25  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

26  representations with the knowledge of the falsity of said implied representations.

27       32.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

28  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

1   ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

2   manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

3   sale, inspection, installation, contracting for installation, repair, marketing, warranting,

4   rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-

5   containing products. In pursuance of said financial motivation, said defendants, their

6   ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed

7   persons" and in fact were consciously willing and intended to permit asbestos and asbestos-

8   containing products to cause injury to "exposed persons" and induced persons to work with and

9   be exposed thereto, including Plaintiff.

10           33.     Plaintiff alleges that the aforementioned defendants, their ALTERNATE

11   ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

12   products to be safe for their intended use but that their asbestos and asbestos-containing products,

13   created an unreasonable risk of bodily harm to exposed persons.

14           34.     Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos

15   and various asbestos-containing products manufactured, fabricated, inadequately researched,

16   designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered

17   for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

18   marketed, warranted, rebranded, manufactured for others, packaged and advertised by the

19   aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff

20   cannot identify precisely which asbestos or asbestos-containing products caused the injuries

21   complained of herein.

22           35.     Plaintiff relied upon defendants', their "alternate entities'", and each of their

23   representations, lack of warnings, and implied warranties of fitness of asbestos and their

24   asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has

25   been injured permanently as alleged herein.

26           36.     As a direct and proximate result of the actions and conduct outlined herein,

27   Plaintiff has suffered the injuries and damages previously alleged.

28   ///

1    WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

2   ENTITIES, and each of them, as hereinafter set forth.

3                                          IV.

4                                       **PRAYER**

5    WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

6   ENTITIES, and each of them in an amount to be proved at trial, as follows:

7          (a)    For Plaintiff's general damages according to proof;

8          (b)    For Plaintiff's loss of income, wages and earning potential according to proof;

9          (c)    For Plaintiff's medical and related expenses according to proof;

10         (d)    For Plaintiff's cost of suit herein;

11         (e)    For exemplary or punitive damages according to proof;

12         (f)    For damages for fraud according to proof; and

13         (g)    For such other and further relief as the Court may deem just and proper, including

14                costs and prejudgment interest.

15

16   Dated:  9/24/11                    BRAYTON❖PURCELL LLP

17

18                                      By: _____
                                            David R. Donadio
19                                          Attorneys for Plaintiff

20

21

22                                    JURY DEMAND

23   Plaintiff hereby demands trial by jury of all issues of this cause.

24

25   Dated:  9/24/11                    BRAYTON❖PURCELL LLP

26

27                                      By: _____
                                            David R. Donadio
28                                          Attorneys for Plaintiff

K:\Injured\109190\FED\PLD\cmp fed (pi).wpd                    11
        COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

Plaintiff:  DAN BUSBY

Plaintiff's injuries:  Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, including, but not limited to breathing difficulties, asbestosis, and/or other lung damage, and increased risk and fear of developing mesothelioma, lung cancer and various other cancers.  Plaintiff was diagnosed with asbestosis on or about January 2000 and with asbestos-related pleural disease on or about July 2008.

Retirement Status:  The injured party retired from his last place of employment at regular retirement age.  He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.  Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| The Beachcomber Restaurant Port Orchard, WA | The Beachcomber Restaurant Port Orchard, WA | Dishwasher | 1966-1967 Approx. 1.5 years |
| U. S. Army | Various locations, including but not limited to: | | 8/15/1967- 6/5/1969 |
| | U.S. Army Fort Lewis, Tacoma, WA | Trainee | Approx. 4 months |
| | U.S. Army Fort Benning, GA | Trainee | Approx. 4 weeks |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Army (cont'd.) | Various locations, including but not limited to: | | 8/15/1967-6/5/1969 |
| | U.S. Army Okefenokee Swamp, GA/FL | Trainee | Approx. 2 weeks |
| | U.S. Army Panama City, FL | Trainee | Approx. 2 weeks |
| | U.S. Army Vietnam | Reconnaissance | Approx. 1 year |
| Hunt Fuel and Transfer 5717 Navy Yard, Highway 21 Bremerton, WA | Hunt's Lumber Mill Gorst, WA | Laborer | 8/1969-12/1969 Approx. 4 months |
| Willy's Arco Route 2, Box 6 Poulsbo, WA | Willy Gillette's Arco Service Station Poulsbo, WA | Mechanic | 4/1970-6/1971 (full-time); 1972-1973 (part-time) |
| Metzdorf Restaurant 1209 Kirkland Avenue NE Renton, WA | Alderbrook Inn Union, WA | Host | 7/1971-12/1971 |
| United States Department of Defense | Naval Ammunition Depot Bangor, WA | Stevedore | 5/1972-10/1972 |
| Pope and Talbot Lumber Mill Portland, OR | Pope and Talbot Lumber Mill Port Gamble, WA | Green Chain Worker | 1/1973 Approx. 3 weeks |
| Jim Neal's residence Silverdale, WA | Jim Neal's residence Silverdale, WA | Mechanic | 1973-1980 |
| Fraser Boiler Service | Multiple locations, in addition to those listed below | Laborer | 1973-1975 |
| Fraser Boiler Service | Foss Tug and Launch Company Seattle, WA | Laborer | 1974-1975 Approx. 2 weeks |
| Fraser Boiler Service | Duwamish Shipyard Seattle, WA | Laborer | 1974-1975 Approx. 2 weeks |

///

///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Fraser Boiler Service | Lockheed Shipyard Seattle, WA | Laborer | 1974-1975 Approx. 4 months |
| | POLAR STAR (WAGB-10) | | |
| | SPERRY (AS-12) | | |
| | DOWNES (FF-1070) | | |
| | REASONER (FF-1063) | | |
| Fraser Boiler Service | Todd Shipbuilding Seattle, WA | Laborer and Boilermaker | 1974-1975 Approx. 4 months |
| Fraser Boiler Service | Port of Seattle Seattle, WA | Laborer | 1974-1975 Approx. 6 months |
| Fraser Boiler Service | Swedish Medical Center Seattle, WA | Laborer | 1974-1975 Approx. 1 week |
| Fraser Boiler Service | American Smelting and Refining Company Tacoma, WA | Laborer | 1974-1975 Approx. 2 weeks |
| Fraser Boiler Service | Unocal Chemical Kennewick, WA | Laborer | 1974-1975 Approx. 2 weeks |
| Fraser Boiler Service | Seattle Steam Company Seattle, WA | Laborer | 1974-1975 Approx. 1 month |
| Fraser Boiler Service | Tesoro Refinery Anacortes, WA | Laborer | 1974-1975 Approx. 2 weeks |
| Fraser Boiler Service | Bethlehem Steel Seattle, WA | Laborer | 1974-1975 Approx. 2 months |
| Fraser Boiler Service | Lloyd Building Seattle, WA | Laborer | 1974-1975 Approx. 3 weeks |
| | Tower Building Seattle, WA | | |
| Fraser Boiler Service | Rogers Olympic Foundry Seattle, WA | Laborer | 1974-1975 Approx. 1 week |
| Fraser Boiler Service | Seattle Daily Journal of Commerce Building Seattle, WA | Laborer | 1974-1975 Approx. 2 weeks |
| Fraser Boiler Service | Tacoma News Print Tacoma, WA | Laborer | 1974-1975 Approx. 2 weeks |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Fraser Boiler Service | Bethel Tower Seattle, WA | Laborer | 1974-1975 Approx. 1 week |
| Fraser Boiler Service | ARCO Refinery, Cherry Point Blaine, WA | Laborer | 1974-1975 Approx. 2 weeks |
| Fraser Boiler Service | Puget Sound Refining Company Seattle, WA | Laborer | 1974-1975 Approx. 1 week |
| Central Kitsap School District Silverdale, WA | Various schools Silverdale, WA | Janitor | 1975 Approx. 2 months |
| Fraser Boiler Service | Various locations, including but not limited to those listed below | Boilermaker | 1975-1981 |
| Fraser Boiler Service | Port of Rotterdam Rotterdam, The Netherlands | Boilermaker | 1975 Approx. 6 weeks |
| Fraser Boiler Service | Various shipyards in and around San Diego, CA, including but not limited to: | Boilermaker | 1975-1981 |
| | Naval Repair Facility North Island, San Diego, CA | | Approx. 6 months |
| | RANGER (CVA-61) | | Approx. 4 months |
| | CARPENTER (DD-825) | | Approx. 2 months |
| | Unknown Shipyard San Diego, CA | | Approx. 2 months |
| Fraser Boiler Service | Various ships at shipyards in Portland, Oregon, including but not limited to: | Boilermaker | 1975-1981 Approx. 10 months |
| | Albina Engine and Machine Works, Swan Island, Portland, OR | | |

///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Fraser Boiler Service (cont'd.) | Various ships at shipyards in Portland, Oregon, including but not limited to: | Boilermaker | 1975-1981 Approx. 10 months |
| | Dillingham Shipyard Portland, OR ARCO JUNEAU (1974) | | |
| | STEIN (FF-1065) | | |
| Fraser Boiler Service | Lockheed Shipyard Seattle, WA POLAR STAR (WAGB-10) | Boilermaker | 1975-1981 Approx. 1 year |
| Fraser Boiler Service | Todd Shipyard Seattle, WA BENJAMIN STODDERT (DDG-22) HEATHER EXPRESS (1975) KLIKITAT (AOG-64) NORDIC EXPRESS THERIOT OFFSHORE WALLA WALLA (1973) | Boilermaker | 1975-1981 |
| Fraser Boiler Service | Port of Seattle Seattle, WA | Boilermaker | 1975-1981 |
| Fraser Boiler Service | Lake Union Dry Dock Co. Seattle, WA | Boilermaker | 1975-1981 |
| Fraser Boiler Service | Puget Sound Naval Shipyard Bremerton, WA | Boilermaker | 1975-1981 |
| Fraser Boiler Service | Duwamish Shipyard Seattle, WA | Boilermaker | 1975-1981 |
| Fraser Boiler Service | Dry Dock Company Tacoma, WA | Boilermaker | 1975-1981 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Fraser Boiler Service | Todd Shipyard Tacoma, WA | Boilermaker | 1975-1981 |
| Fraser Boiler Service | Seattle Steam Company Seattle, WA | Boilermaker | 1976 Approx. 1 month |
| United States Department of Defense | Puget Sound Naval Shipyard Bremerton, WA | Boilermaker | 1976-1977 (1 year) |
| | ENTERPRISE (CVAN-65) | | Approx. 11 months |
| Fraser Boiler Service | Kimberly-Clark Paper Mill Everett, WA | Boilermaker | 1977 Approx. 1 month |
| Fraser Boiler Service | Bethlehem Steel Seattle, WA | Boilermaker | 1977 Approx. 1 week |
| Fraser Boiler Service | Boeing Manufacturing Plant Everett, WA | Boilermaker | 1977-1978 |
| Fraser Boiler Service | Gas Work Park Seattle, WA | Boilermaker | Late 1970's Approx. 2 weeks |
| Camas Boiler | Various ships at shipyards in the Portland, OR, area, including but not limited to: | Boilermaker | 1980 Approx. 4 months |
| | Albina Engine and Machine Works, Swan Island, Portland, OR | | |
| | Willamette Iron and Steel Works, Portland, OR | | |
| | Dillingham Shipyard, Swan Island, Portland, OR | | |
| | Kaiser, Swan Island Shipyard, Portland, OR | | |
| | Northwest Marine Iron Works, Swan Island, Portland, OR | | |
| | RATHBURNE (FF-1057) | | |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Camas Boiler (cont'd.) | Various ships at shipyards in the Portland, OR, area, including but not limited to: | Boilermaker | 1980 Approx. 4 months |
| | MEYERKORD (FF-1058) | | |
| | GRAY (FF-1054) | | |
| | BAGLEY (FF-1069) | | |
| | HURRICANE (1944) | | |
| Camas Boiler | Various ships at shipyards in and around Seattle, WA, including but not limited to: | Boilermaker | 1980 Approx. 5 months |
| | Lockheed Shipbuilding Seattle, WA | | |
| | Todd Shipyard Seattle, WA | | |
| | BROOKE (DEG-1) | | |
| | SPERRY (AS-12) | | |
| | DOWNES (FF-1070) | | |
| | GRIDLEY (DG-21) | | |
| | KNOX (DE-1052) | | |
| | REASONER (FF-1063) | | |
| | ROARK (FF-1053) | | |
| | SPOKANE (1973) | | |
| Dave Cassida Logging Railroad Street F Easton, WA | Forested area near Easton, WA | Logger | 1983 Approx. 1 month |
| Hyak Ski Resort Snoqualmie Pass, WA | Hyak Ski Resort Snoqualmie Pass, WA | Heavy Equipment Mechanic | 1983-1988 |
| McPherson's Automotive Snoqualmie Pass, WA | McPherson's Automotive Snoqualmie Pass, WA | Mechanic | 1985-1987 |
| North Central Construction Moses Lake, WA | Rest Area Elk Heights, WA | Equipment Operator | 1986 Approx. 2 months |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| PWM, Inc. Kellogg, ID | PWM, Inc. Unknown location | Unknown | 1988-1989 |
| Echo Bay Mining | Echo Bay gold mines Republic, WA | Equipment Operator | 1990-1991 |
| Curlew Apartments Curlew, WA | Curlew Apartments Unknown location | Unknown | 1992 |
| Time Wise, Inc. 1930 2nd Ave N. Okanogan, WA | Time Wise, Inc. Unknown location | Unknown | 1992 |
| Burlington Northern Railroad/ Santa Fe Railroad | Burlington Northern Railroad, Railroad Station Libby, MT | Heavy Equipment Operator | 1992-2002 |

NON-OCCUPATIONAL EXPOSURE:

During summers from 1983 to 1989, plaintiff went to Rainey Creek, near Libby, Montana, and would cut trees, then cut the logs into smaller logs for firewood, which he then used.  Plaintiff recalls cutting the trees caused visible dust, and plaintiff recalls it looked like a light snowstorm when he would cut the trees.  Plaintiff states the trees had vermiculite on them, which was residue from mining at the W.R. GRACE plant in Libby, Montana, which was about a mile from W.R. GRACE'S largest vermiculite mine.  Plaintiff currently contends he was exposed to asbestos as a result of this work.

Friction:

Plaintiff performed maintenance work at his home on several vehicles from 1976 to 2000.  When performing brake jobs, plaintiff used the same routine on each occasion.  Plaintiff removed the existing drum brakes, cleaned the brake assemblies and drums by blowing on them, and installed new drum brakes.  When performing clutch jobs, plaintiff disturbed friction disks during the removal and installation process.  When performing engine overhauls, plaintiff scraped and chipped existing burned out gaskets off exhaust manifolds and engine head gaskets.

Neighbor's 1973 FORD (FORD MOTOR COMPANY) PINTO:  Plaintiff performed maintenance work on this vehicle in 1976.  Plaintiff replaced the brakes.  Plaintiff recalls the manufacturer of the replacement brakes was RAYBESTOS (RAYMARK INDUSTRIES, INC.).  Plaintiff recalls when he replaced the brakes, he replaced the original manufacturer's brakes.  Plaintiff recalls when he replaced the clutch, he replaced the original manufacturer's clutch.  Plaintiff recalls the supplier of the replacement parts was NAPA AUTO PARTS, Silverdale, Washington.

1973 TOYOTA CELICA:  Plaintiff purchased brand new from a dealership in Bremerton, Washington.  Plaintiff performed maintenance work on this vehicle in 1977.  Plaintiff replaced the rear drum brakes at Jim Neal's house.  Plaintiff recalls the manufacturer of the replacement brakes was RAYBESTOS (RAYMARK INDUSTRIES, INC.).  Plaintiff recalls when he replaced the brakes, he replaced the original manufacturer's brakes.  Plaintiff used compressed air to clean out the brake assemblies for 2-5 minutes per wheel when he removed the brakes.  Plaintiff recalls the supplier of the replacement brakes was WESTBAY AUTO, Silverdale, Washington.  Plaintiff removed five gaskets from the engine.  Plaintiff recalls when he removed the gaskets, he removed the original manufacturer's gaskets.  Plaintiff purchased the replacement gaskets from TOYOTA dealership in Bremerton, Washington.

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1969 VOLKSWAGEN BUG:  Plaintiff performed maintenance work on this vehicle in 1982 or 1983.  Plaintiff replaced the clutch and the engine.  Plaintiff recalls the manufacturer of the replacement clutch was DELCO (GENERAL MOTORS CORPORATION).  Plaintiff recalls when he replaced the clutch, he replaced the original manufacturer's clutch.  Plaintiff recalls the manufacturer of the replacement gaskets was FEL-PRO.  Plaintiff recalls when he replaced the engine, he replaced the original manufacturer's engine gaskets.  Plaintiff recalls the supplier of the replacement parts was NAPA AUTO PARTS, Silverdale, Washington.

1973 FORD (FORD MOTOR COMPANY) 3/4-TON TRUCK (engine) - Plaintiff performed maintenance work on this vehicle in 1984, in Republic, Washington.  Plaintiff replaced the engine on this vehicle.  Plaintiff recalls the manufacturer of the replacement engine gaskets was FEL-PRO.  Plaintiff recalls when he replaced the engine, he replaced the original manufacturer's engine gaskets.  Plaintiff used compressed air to clean the gasket residue from the engine.  Plaintiff recalls he performed work with Dennis McPherson, Ellensburg, Washington.

1980 CHEVROLET (GENERAL MOTORS CORPORATION) 3/4-TON CUSTOM DELUXE: Plaintiff performed maintenance work on this vehicle in 1990.  Plaintiff replaced the engine on this vehicle.  Plaintiff recalls the supplier of the replacement gaskets was FEL-PRO.  Plaintiff recalls when he replaced the engine, he replaced the original manufacturer's engine gaskets.  Plaintiff recalls the supplier of the replacement parts was NAPA AUTO PARTS, Libby, Montana.

1984 FIAT FIERRO:  Plaintiff performed maintenance work on this vehicle in 1993.  Plaintiff replaced the clutch on this vehicle.  Plaintiff recalls the manufacturer of the replacement clutch was MOPAR (CHRYSLER LLC).  Plaintiff recalls that when he replaced the clutch, he replaced the original manufacturer's clutch.  Plaintiff recalls the supplier of the replacement clutch was NAPA AUTO PARTS, Libby Montana.

1980 HONDA CIVIC:  Plaintiff performed maintenance work on this vehicle between 1993 and 2000.  Plaintiff replaced the brakes and the clutch on this vehicle.  Plaintiff recalls the supplier of the replacement brakes was WAGNER (FEDERAL-MOGUL PRODUCTS, INC.).  Plaintiff recalls the supplier of the replacement clutch was DELCO (GENERAL MOTORS CORPORATION).  Plaintiff recalls the supplier of the replacement parts was JOHNNY'S AUTO PARTS, Libby, Montana.  Plaintiff currently contends he was exposed to asbestos during this automotive work.