# EXHIBIT 1

 CT Corporation

**Service of Process Transmittal**
11/15/2010
CT Log Number 517604042

TO: General Counsel
Viad Corp
1850 N. Central Avenue, Suite 800
Phoenix, AZ 85004-4545

RE: **Process Served in Delaware**

FOR: Viad Corp (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Wilford Knowles and Laura Knowles, Pltfs. vs. A.W. Chesterton Company, et al. including Viad Corporation, etc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Letter(s), Summons (2 sets), Proof of Service Form, Complaint and Jury Demand |
| **COURT/AGENCY:** | Rhode Island Superior Court, RI Case # PC10-3967 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 11/15/2010 postmarked: "Illegible" |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days |
| **ATTORNEY(S) / SENDER(S):** | Vincent L. Greeene Motley Rice LLC 321 South Main Street 2nd Floor Providence, RI 02940 401-457-7700 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/15/2010, Expected Purge Date: 11/20/2010 Image SOP Email Notification, General Counsel DSHAY@VIAD.COM Email Notification, Daryl Hagg dhagg@viad.com |
| **SIGNED:** | The Corporation Trust Company |
| **PER:** | Scott LaScala |
| **ADDRESS:** | 1209 Orange Street Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of 1 / DA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**MotleyRice** LLC
ATTORNEYS AT LAW

November 8, 2010

The Corporation Trust Company
1209 Orange Street
Wilmington , DE  19801

Re:   Wilford Knowles and Laura Knowles v. A.W. Chesterton Company, et al
      Civil Action – PC10-3967

Dear Sir or Madame:

Enclosed is a copy of the summons and complaint.  You are hereby served pursuant to the Rhode Island Civil Practice Rules on behalf of defendant Viad Corporation.

Please be advised that the complaint was filed in the Superior Court of Rhode Island on July 8, 2010.  We had originally perfected service on July 14, 2010, which was ultimately returned to our office.

Our office was informed you would be accepting service at this time. Please accept service of our complaint and summons in the above case at this time.  I have enclosed a copy of our original attempt.

Thank you for your immediate attention to this matter.  Should you have any further questions, please do not hesitate to contact me at 1-800-701-6377 extension 7730.

Very truly yours,

Vincent L. Greene
VLG/jen

Enclosures

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000
f. 843.216.9450

321 South Main St.
Providence, RI 02903
o. 401.457.7700
f. 401.457.7708

One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
o. 860.882.1681
f. 860.882.1682

275 Seventh Ave., 2nd Floor
New York, NY 10001
o. 212.577.0040
f. 212.577.0054

320 Chestnut St.
Morgantown, WV 26505
o. 304.413.0456
f. 304.413.0458

www.motleyrice.com

# State of Rhode Island and Providence Plantations

SUPERIOR COURT

[X] PROVIDENCE/BRISTOL     [ ] KENT          [ ] WASHINGTON          [ ] NEWPORT

WILFORD KNOWLES and ,                                   CIVIL ACTION, FILE NO.   PC10-3967
LAURA KNOWLES

......................................................................................
   Plaintiff
                                                                  }          *Summons*

A.W. CHESTERTON COMPANY et al.                              Viad Corporation
......................................................................................   The Corporation Trust Company
Defendant                                                      1209 Orange Street
                                                              Wilmington, DE 19801

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said superior court in the county indicated above.  You are hereby summoned and required to serve upon **Vincent L. Greene, Esq.** Plaintiff's attorney, whose address is **321 South Main Street, Suite 200, Providence, Rhode Island 02903** an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will there-after he barred from making such claim in any other action.

......................................................................................,
                                        CLERK

Dated:  November 5, 2010

(Seal of the Superior Court)

S-135 (REV.4/99)                                              C.I.-153

# State of Rhode Island and Providence Plantations

..............................................,SC

## PROOF OF SERVICE

I hereby certify that on the.................................................day of...........................I served a copy of this

summons and a copy of the complaint received therewith upon ................................................................…...

...............................................................................................................................................…....

in the following manner:

By delivering a copy of the summons and complaint to him personally.

By leaving a copy of the summons and complaint at his dwelling house,......................................…........

.....................….......…………………………………………………………..,with a person of suitable age and discretion then
       (address)
residing therein.

By leaving a copy of the summons and complaint at his usual place of abode,...........................................

.......................................................................................with a person of suitable age and discretion then
residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law

to receive service of process, namely................................................................................................…...

Such agent being one designated by statute to receive service, further notice as the statute requires was
given as follows:
...........................................................................................................................................................
...........................................................................................................................................................
...........................

Sheriff's Fees
Travel . . . . . . $.......................

Service . . . . . $.......................
                   .................................................
$.......................                 **Deputy Sheriff**

Note: Returnable to Plaintiff's Attorney forewith after service. Proof of service to be filed within time during which the person served must respond.

ATTORNEY FOR PLAINTIFF

Vincent L. Greene, Esq.
MOTLEY RICE LLC
321 South Main Street
Providence, RI 02903

A.W. CHESTERTON COMPANY et al.

VS

WILFORD KNOWLES and
LAURA KNOWLES

SUPERIOR COURT

SUMMONS

FILE NO. PC10-3967

CIVIL ACTION

 **CT Corporation**

2394 East Camelback Road
Phoenix, AZ 85016

602 277 4792 tel
602 277 3116 fax
www.ctlegalsolutions.com

R E C E I V E D
JUL 21 2010
MOTLEY RICE-RI

July 19, 2010

Vincent L. Green IV
MotleyRice LLC
321 South Main St.,
Providence, RI 02903

Re: Wilford Knowles and Laura Knowles, Pltfs. vs. A.W. Chesterton Company et al. including Viad Corporation, Dft.

Case No. PC10-3967

Dear Sir/Madam:

We are herewith returning the Letter, Summons, Complaint which we received regarding the above captioned matter.

Viad Corporation is not listed on our records or on the records of the State of AZ.

Very truly yours,

Duc Le
Fulfillment Specialist

Log# 516968642

FedEx Tracking# 791902062580

cc: Superior Court State of Rhode Island and Providence Plantations

., RI .


**MotleyRice** LLC
ATTORNEYS AT LAW

July 14, 2010

CT Corporation System
2394 Camelback Road
Phoenix, AZ 85016

**Re:** **Wilford Knowles and Laura Knowles v. A.W. Chesterton Company,
et al – PC10-3967**

Dear Sir or Madam:

Enclosed is a copy of the Summons and Complaint. You are hereby served
pursuant to the Rhode Island Civil Practice Rules on behalf of defendant Viad
Corporation.

Very truly yours,

*Vincent L. Greene*

Vincent L. Greene IV

VLG/jen
Enclosures
RRR# 7009225000039 4814396

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000
f. 843.216.9450

321 South Main St.
Providence, RI 02903
o. 401.457.7700
f. 401.457.7708

One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
o. 860.882.1681
f. 860.882.1682

275 Seventh Ave., 2nd Floor
New York, NY 10001
o. 212.577.0040
f. 212.577.0054

320 Chestnut St.
Morgantown, WV 26505
o. 304.413.0456
f. 304.413.0458

www.motleyrice.com

# State of Rhode Island and Providence Plantations

SUPERIOR COURT

**[X] PROVIDENCE/BRISTOL**      **[ ] KENT**          **[ ] WASHINGTON**          **[ ] NEWPORT**

WILFORD KNOWLES and ,
LAURA KNOWLES

CIVIL ACTION, FILE NO.   PC10-3967

...............................................
   Plaintiff

A.W. CHESTERTON COMPANY et al.
...............................................
Defendant

}

_Summons_

Viad Corporation
CT Corporation System
2394 Camelback Road
Phoenix, AZ 85016

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said superior court in the county indicated above.  You are hereby summoned and required to serve upon Vincent L. Greene, Esq. Plaintiff's attorney, whose address is 321 South Main Street, Suite 200, Providence, Rhode Island 02903 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will there-after be barred from making such claim in any other action.

.................................................................. ,
CLERK

Dated:  July 14, 2010

(Seal of the Superior Court)

S-135 (REV.4/99)

C.L-153

STATE OF RHODE ISLAND                    SUPERIOR COURT
PROVIDENCE, SC

WILFORD KNOWLES and
LAURA KNOWLES,

    *Plaintiffs,*

v.

CIVIL ACTION NO.: PC 10 3961

A.W. CHESTERTON COMPANY,
BAYER CROPSCIENCE, INC.,
  f/k/a AMCHEM PRODUCTS, INC.,
BW/IP INTERNATIONAL INC., Individually and as Successor in Interest to
    BYRON JACKSON PUMP CO.,
CBS CORPORATION f/k/a VIACOM, INC.,
    Successor by Merger and f/k/a
    WESTINGHOUSE ELECTRIC CORP.,
    Individually and as Successor in Interest to
    B.F. STURTEVANT COMPANY,
CRANE CO.,
CROWN, CORK & SEAL CO., INC.,
DC FABRICATORS INC., Individually and as Successor in Interest to C.H. WHEELER,
EATON HYDRAULICS, INC., f/k/a VICKERS INCORORATED,
ELLIOTT COMPANY f/k/a ELLIOTT TURBOMACHINERY,
FAIRBANKS MORSE PUMP CORPORATION,
FOSTER WHEELER, LLC.,
GENERAL ELECTRIC COMPANY,
THE GORMAN-RUPP COMPANY, Individually and as Successor in
    Interest to GRISCOM-RUSSELL CO., PATTERSON PUMP COMPANY
    and C.H. WHEELER MANUFACTURING CO.,
IMO INDUSTRIES, successor to IMO DELAVAL,
INGERSOLL-RAND COMPANY,
McNALLY INDUSTRIES, LLC, f/k/a McNALLY INDUSTRIES, INC.,
    Individually and as Successor in Interest to NORTHERN PUMP CO.,
METROPOLITAN LIFE INSURANCE COMPANY, .
OWENS ILLINOIS INC.,
PATTERSON PUMP COMPANY, a Subsidiary of the
    GORMAN-RUPP COMPANY (Individually and as Successor
    to C.H. WHEELER MANUFACTURING and GRISCOM-RUSSELL CO.),
P.I.C. CONTRACTORS, INC.,
PACKINGS & INSULATIONS CORPORATION,
RAPID AMERICAN CORPORATION.,
RILEY STOKER CORPORATION,

n/k/a D.B. RILEY, INC.,
SPX CORP., Successor in Interest to AURORA PUMP COMPANY
     and FAIRBANKS MORSE PUMP COMPANY,
UNION CARBIDE CHEMICALS AND PLASTICS COMPANY, INC,
UNIROYAL, INC.,
VIAD CORPORATION, Individually and Successor in Interest to
     DIAL CORPORATION, Successor to GRISCOM-RUSSELL COMPANY,
VIAD CORPORATION f/k/a THE DIAL CORPORATION,
     Individually and as Successor in Interest to BALDWIN LIMA
HAMILTON and GRISCOM-RUSSELL COMPANY,
WARREN PUMPS, and
JOHN DOE (fictitious name),

     *Defendants.*

## COMPLAINT AND JURY DEMAND

1.     Plaintiffs are citizens and residents of the State of Rhode Island. They reside at 114 B Lake Erie Street, Middletown, Rhode Island 02842. Wilford Knowles, ("Plaintiff-worker") was injuriously exposed to asbestos as follows: Mr. Knowles was a member of the United States Navy from approximately 1941 until 1962, with a nine month leave in 1945 until September of 1946, as a fireman and after his re-enlistment in 1946 as an electrician. During this time he worked in the fire control division, fire room and then performing work throughout the ships. While he was serving in the Navy, Mr. Knowles was stationed on board the USS Omaha, the USS Bremerton, the USS Coral Sea, the USS Norton Sound, the USS Joseph P. Kennedy Jr, the USS Arcadia and the USS Harlan R. Dickson. He was also spent time at the following shipyards: Newport Naval Base, Newport, RI – basic training, Todd Shipyard, WA, Great Lakes Naval Training Center, IL, and Boston Naval Yard, Boston, MA. After his active duty, Mr. Knowles was an electrician at the Newport Naval Base in Newport, RI from approximately 1962-1979.

As a direct result of his exposure to asbestos, he is suffering from asbestos related pleural disease. His wife, Laura Knowles, ("Plaintiff-spouse") makes a claim for loss of consortium due to her spouse's asbestos-related disease.

2.      Defendant <u>A.W. Chesterton Company</u> is a Massachusetts corporation with its principal place of business in Massachusetts. At all relevant times it did business in the State of Rhode Island.

3.      Defendant <u>Bayer Cropscience, Inc.</u> is a Delaware corporation with its principal place of business in Pennsylvania. At all relevant times it did business in the State of Rhode Island.

4.      Defendant <u>BW/IP International Inc., Individually and as Successor in Interest to Byron Jackson Pump Co.</u> is a Delaware corporation with its principal place of business in Texas. At all relevant times it did business in the State of Rhode Island.

5.      Defendant <u>CBS Corporation, f/k/a Viacom, Inc. Successor by Merger and f/k/a Westinghouse Electric Corp., Individually and as Successor in Interest to B.F. Sturtevant Company</u> is a Delaware corporation with its principal place of business in New York. At all relevant times it did business in the State of Rhode Island.

6.      Defendant <u>Crane Co.</u> is a Connecticut corporation with its principal place of business in Connecticut. At all relevant times it did business in the State of Rhode Island.

7.      Defendant <u>Crown, Cork & Seal Company, Inc.,</u> is a New York corporation with its principal place of business in Pennsylvania. At all relevant times it did business in the State of Rhode Island.

8.      Defendant <u>DC Fabricators Inc., Individually and as Successor in Interest to C.H.</u>

3

Wheeler is a Pennsylvania corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

9.    Defendant Eaton Hydraulics, Inc., f/k/a Vickers Incorporated is a Delaware corporation with its principal place of business in Ohio.  At all relevant times it did business in the State of Rhode Island.

10.    Defendant Elliott Company f/k/a Elliott Turbomachinery is a Delaware corporation with its principal place of business in Pennsylvania.  At all relevant times it did business in the State of Rhode Island.

11.    Defendant Foster Wheeler, LLC is a New York corporation with its principal place of business in New York.  At all relevant times it did business in the State of Rhode Island.

12.    Defendant General Electric Company is a New York corporation with its principal place of business in New York.  At all relevant times it did business in the State of Rhode Island.

13.    Defendant The Gorman-Rupp Company, Individually and as Successor in Interest to Griscom-Russell Co., Patterson Pump Company and C.H. Wheeler Manufacturing Co. is an Ohio corporation with its principal place of business in Ohio.  At all relevant times it did business in the State of Rhode Island.

14.    Defendant IMO Industries, successor to IMO Delaval is a New Jersey corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

15.    Defendant Ingersoll-Rand Co. is a New Jersey corporation with its principal place of business in New Jersey.  At all relevant times it did business in the State of Rhode Island.

4

16.     Defendant McNally Industries, LLC f/k/a McNally Industries, Inc., Individually and as Successor in Interest to Northern Pump Co. is a Delaware corporation with its principal place of business in Wisconsin. At all relevant times it did business in the State of Rhode Island.

17.     Defendant Metropolitan Life Insurance Company, is a mutual life insurance company of the State of New York with its principal place of business in the State of New York. At all relevant times it did business in the State of Rhode Island.

18.     Defendant Owens-Illinois, Inc., is an Ohio corporation with its principal place of business in Ohio. At all relevant times it did business in the State of Rhode Island.

19.     Defendant Patterson Pump Company, a Subsidiary of the Gorman-Rupp Company (Individually and as Successor to C.H. Wheeler Manufacturing and Griscom-Russell Co.) is an Ohio corporation with its principal place of business in Georgia. At all relevant times it did business in the State of Rhode Island.

20.     Defendant P.I.C. Contractors, Inc. is a Rhode Island corporation with its principal place of business in Rhode Island. At all relevant times it did business in the State of Rhode Island.

21.     Defendant Packings and Insulations Corporation is a Rhode Island corporation with its principal place of business in Rhode Island. At all relevant times it did business in the State of Rhode Island.

22.     Defendant Rapid American Corporation is a Delaware corporation with its principal place of business in Delaware. At all relevant times it did business in the State of Rhode Island.

Through a series of corporate mergers, Rapid American Corporation expressly assumed

5

all liabilities and debts of Philip Carey Manufacturing Company. Philip Carey Manufacturing Company has sufficient contracts with and/or did business in the State of Rhode Island such that it and all successor corporations including Rapid American Corporation has sufficient contracts and/or transacts business within the State of Rhode Island to subject them to the jurisdiction of this Court.

23. Defendant <u>Riley Stoker Corporation, n/k/a D.B. Riley, Inc.,</u> is a Massachusetts corporation with its principal place of business in Massachusetts. At all relevant times it did business in the State of Rhode Island.

24. Defendant <u>SPX Corporation, Successor in Interest to Aurora Pump Company and Fairbanks Morse Pump Company</u> is a Delaware corporation with its principal place of business in Michigan. At all relevant times it did business in the State of Rhode Island.

25. Defendant <u>Union Carbide Chemicals and Plastics</u> Corporation is a New York corporation with its principal place of business in Connecticut. At all relevant times it did business in the State of Rhode Island.

26. Defendant <u>Uniroyal, Inc.</u> is a Connecticut corporation with its principal place of business in Connecticut. At all relevant times it did business in the State of Rhode Island.

27. Defendant <u>Utica Boilers.</u> is a New York corporation with its principal place of business in New York. At all relevant times it did business in the State of Rhode Island.

28. Defendant <u>Viad Corporation Individually and as Successor in Interest to the Dial Corporation, Successor to Griscom-Russell Company</u> is a Delaware corporation with its principal place of business in Arizona. At all relevant times it did business in the State of Rhode Island.

29.     Defendant <u>Viad Corporation f/k/a The Dial Corporation, Individually and as Successor in Interest to Baldwin Lima Hamilton and Griscom-Russell Company</u> is a Delaware corporation with its principal place of business in Arizona.  At all relevant times it did business in the State of Rhode Island.

30.     Defendant <u>Warren Pumps</u> is a Massachusetts corporation with its principal place of business in Massachusetts.  At all relevant times it did business in the State of Rhode Island.

31.     Defendant <u>John Doe</u> (fictitious) represents one or more business entities whose real names and identities are presently unknown to Plaintiffs.


## COUNT I

32.     Plaintiffs repeat and reallege all allegations contained in all paragraphs above as if fully set forth herein.

33.     Defendants mined, processed, manufactured, designed, supplied, delivered, and sold asbestos and asbestos-containing products and/or knowingly gave substantial assistance or encouragement to those who did so, at all times relevant herein.

34.     While at work, Plaintiff-worker was caused to inhale, absorb, ingest, and come into contact with asbestos and asbestos-containing products mined, processed, manufactured, designed, supplied, delivered, and/or sold by Defendants.

35.     The Defendants were negligent in that they each, jointly and severally:

a.     mined, processed, manufactured, designed, supplied, delivered, and/or sold asbestos and asbestos-containing products, and/or knowingly gave substantial assistance or encouragement to those who did so, that they knew, or reasonably should have known, were

7

dangerous, defective, poisonous, and harmful to an individual's health, body, and life;

       b.     failed to reasonably warn Plaintiffs of the harmful effects of exposure to asbestos and asbestos-containing products and/or knowingly gave substantial assistance or encouragement to those who did so;

       c.     failed to provide Plaintiffs with the knowledge as to possible precautions to protect against the harmful effects of asbestos exposure and/or knowingly gave substantial assistance or encouragement to those who did so; and,

       d.     were otherwise negligent.

36.     As a direct and proximate result of the negligence of the Defendants, Plaintiff-worker suffered serious bodily injury, endured great pain and suffering, incurred medical expenses, suffered mental anguish, lost earnings and earning capacity, requires medical monitoring, and was otherwise damaged.

37.     As a direct and proximate result of the negligence of the Defendants, Plaintiff-spouse has suffered, and will continue to suffer great pain and suffering, mental anguish, a loss of consortium, society, companionship, support, and dependency, and was otherwise damaged.

WHEREFORE Plaintiffs demand judgment and damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

## COUNT II

38.     Plaintiffs repeat and reallege all allegations contained in all paragraphs above as if fully set forth herein.

39.     At all relevant times, the Defendants, as part of their regular business, mined,

processed, manufactured, designed, supplied, delivered, and sold and/or knowingly gave substantial assistance or encouragement to those who did so, asbestos and asbestos-containing products and put them into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and failed to provide reasonable warnings.

40.     The asbestos and asbestos-containing products were expected to, and did reach such persons, including Plaintiff-worker, without substantial change in the condition in which they were sold and/or supplied.

41.     At all relevant times, the asbestos and asbestos-containing products were used and employed for the purposes for which they were mined, processed, manufactured, designed, supplied, delivered, sold, and intended to be used and in a manner foreseeable to the Defendants.

42.     As a direct and proximate result of the defective, dangerous, and unsafe condition of the asbestos and asbestos-containing products that Defendants placed into the stream of commerce, Plaintiff-worker suffered serious bodily injury, endured great pain and suffering, incurred medical expenses, suffered mental anguish, lost earnings and earning capacity, requires medical monitoring, and was otherwise damaged.

43.     As a direct and proximate result of the defective, dangerous, and unsafe condition of the asbestos and asbestos-containing products that Defendants placed into the stream of commerce, Plaintiff-spouse has suffered, and will continue to suffer, great pain and suffering, mental anguish, a loss of society, consortium, companionship, support, dependency and was otherwise damaged.

WHEREFORE Plaintiffs demand judgment and damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems

right and just.

## COUNT III

44.     Plaintiffs repeat and reallege all allegations contained in all paragraphs above as if fully set forth herein.

45.     The Defendants expressly and impliedly warranted that the asbestos and asbestos-containing products that they mined, processed, manufactured, designed, supplied, delivered, and sold were fit for use, were merchantable, and were reasonably safe for the purpose intended.

46.     The Defendants breached their warranty in that the asbestos and asbestos-containing products were defective, unsafe, unreasonably dangerous, ultrahazardous, and unsuitable for the purpose intended.

47.     As a direct and proximate result of the breach by the Defendants, Plaintiff-worker suffered serious bodily injury, endured great pain and suffering, incurred medical expenses, suffered mental anguish, lost earnings and earning capacity, requires medical monitoring, and was otherwise damaged.

48.     As a direct and proximate result of the breach by the Defendants, Plaintiff-spouse has suffered, and will continue to suffer great pain and suffering, mental anguish, a loss of consortium, society, companionship, support, and dependency, and was otherwise damaged.

WHEREFORE Plaintiffs demand judgment and damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

## COUNT IV

49.     Plaintiffs repeat and reallege all allegations contained in all paragraphs above as if fully set forth herein.

50.     The acts and omissions of Defendants that were the direct and proximate cause of Plaintiffs' injuries were willful, malicious, wanton, undertaken with reckless disregard of the rights of Plaintiffs, and were grossly negligent.

WHEREFORE Plaintiffs demand judgment and punitive damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

## COUNT V

51.     Plaintiffs repeat and reallege all allegations contained in all paragraphs above as if fully set forth herein.

52.     Defendants, individually and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed, and conspired among themselves and with other asbestos manufacturers and distributors to injure Plaintiffs.

53.     The Defendants knew that the others' conduct constituted a breach of duty and gave substantial assistance or encouragement to the other so to conduct itself.

54.     The Defendants acted in the following fashion:

a.     Metropolitan Life Insurance Company (Met Life) required a tangible quid pro quo from McGill University in the 1920s in exchange for them providing funding for a study of asbestos disease in Canadian miners. The study revealed asbestos miners suffered from

11

asbestosis.  The study was never published and agents of Met Life materially misrepresented in the published literature this known fact.

b.      In 1932, Met Life, through its agents Dr. Anthony Lanza, Dr. Fellows, and others, assisted the Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey.  The report of his study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process.  This 1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issue of asbestos disease.  Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

c.      Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney J.C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza, Associate Medical Director of Met Life (insurers of Manville, Raybestos, and others) that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure; i.e., the seriousness of the disease process, asbestosis.  This was accomplished through intentional deletion of Dr. Lanza's description of asbestosis as "fatal" and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was known to be then.  As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935. The defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to

12

provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the insurer.

d.      In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H.K. Porter Company), Union Asbestos and Rubber Company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data resulting in numerous misstatements of fact being made at scientific meetings.

e.      On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake-and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall) Raybestos-Manhattan, Inc., Thermoid Company (whose assets and liabilities were later purchased by H.K. Porter Company,) Union Asbestos and Rubber Company and United States Gypsum Company. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

13

f.      At this November 11, 1948 meeting, these defendants and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos-containing products.

g.      At this meeting, the defendants intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald. The acts of these defendants were carried out by co-conspirator Defendant Met Life's agent, Dr. Lanza. These defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and the class of persons exposed to asbestos, including Plaintiffs.

h.      As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January, 1951, in the Archives of Industrial Hygiene and Occupational Medicine (Vol. 3, No. 1), a journal of the American Medical Association. The published version stressed those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLVs). Furthermore, that article made a false claim that the published report was the "complete survey" of Dr. Gardner's work. The defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr.

14

Vorwald publication to university libraries, government officials, medical doctors, agencies, the public, and others.

       i.     Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

       j.     The following conspirators and others were members of the trade association known as Quebec Asbestos Mining Association (Q.A.M.A.): Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), the Celotex Corporation (successor to Quebec Asbestos Corporation) National Gypsum Company (n/k/a Asbestos Claims Management Corporation), and Turner & Newall (individually and successor to Bell Asbestos). The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the A.M.A. 's Archives of Industrial Hygiene and Industrial Medicine in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators all indicating close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A.'s members.

       k.     Defendants who were members of the Q.A.M.A., began on or about 1950 to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory

controls of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

l.      This plan of misrepresentation and influence over the medical literature began on or about 1950 when the Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos.  After a preliminary report authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, the Q.A.M.A. members refused to further fund the study and it was terminated and never publicly discussed.

m.      As a result of the termination of this study, these defendants fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators' agents Dr. Kenneth W. Smith, Dr. Paul Cartier, Dr. Arthur J. Vorwald, Dr. Anthony J. Lanza, Vandiver Brown, and Ivan Sabourin, said misrepresentations being directed to, inter alia, U.S. Government officials, Canadian government officials, U.S. National Cancer Institute, other medical organizations, and the general public, including Plaintiffs.

n.      Subsequently, the Q.A.M.A. defendant conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer.  In 1957, Drs. Braun and Truan reported to the Q.A.M.A that asbestosis did increase a worker's chances of incurring lung cancer.

o.      The Q.A.M.A. defendants thereafter caused, in 1958, a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in

16

persons with asbestosis was edited out by agents of the Q.A.M.A. The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the defendant conspirators to be patently false.

        p.      By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting a documented finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. defendants affirmatively misrepresented to the public and concealed from the public the extent of risks associated with inhalation of asbestos fibers.

        q.      In approximately 1958, the Q.A.M.A. defendants publicized the edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

        r.      The fraudulent misrepresentations beginning in 1946, as elaborated above and continuing with the publication of the 1958 Braun/Truan study, influenced the standards set for the TLVs, and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

        s.      In 1967, the Q.A.M.A. defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risks involved in inhalation of asbestos products.

        t.      In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories. The following conspirators were in attendance: Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of their agents, Cartier,

Sabourin, and LeChance.

u.     At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos was also discussed.  In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these defendants conspired to prevent publication of the record of this 1952 Saranac Symposium and it was not published.  In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess cancers in animals that thereby fraudulently misrepresenting existing data, albeit secret, that could not be publicized because of the secrecy provisions contained in the 1936 Saranac agreement required by the asbestos industry members.

v.     The following conspirators were members of the Magnesia Insulation Manufacturers Association (MIMA):   Philip-Carey Corporation (predecessors to Celotex) Johns-Manville, and others.

w.     In 1955, these conspirators caused to be published the MIMA 85% Magnesia Insulation Manual.   This manual falsely and fraudulently misrepresented that asbestos-containing products offered no hazard to workers who used these products.

x.     The following conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI):  Raybestos-Manhattan, Johns-Manville, H.K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newall), National Gypsum (n/k/a Asbestos Claims Management Corporation), and others.

y.     In 1947, the members of the ATI, received a report from W.C.L. Hemeon

18

regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure. These defendants caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing TLV was acceptable. Thereafter, these defendant conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluations of TLVs for asbestos exposure.

z.   In 1953, conspirator National Gypsum (n/k/a Asbestos Claims Management Corporation), through its agents, in response to an inquiry from the Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed from such applicators the need for respirators.

aa.   In 1955, conspirator Johns-Manville, through its agent Kenneth W. Smith, M.D. caused to be published in the AMA Archives of Industrial Health, an article entitled "Pulmonary Disability in Asbestos Workers." This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

bb.   In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as an agent for other alleged co-conspirators) and

19

Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, the conspirators were in secret possession of several studies that demonstrated that positive evidence did exist.

        cc.     In 1957, the members of the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in fraudulent concealment from the public of material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

        dd.     In 1964 the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irving J. Selikoff. Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

        ee.     In 1970, through their agents, Defendants The Celotex Corporation and Carey-Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease. This constituted a fraudulent misrepresentation about the material facts known to these Defendants.

        ff.     All conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of Met Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-conspirators for the other conspirators.

        55.     All defendants:

a.      did a tortious act in concert with the other or pursuant to a common design with them; and/or

b.      knew that each other's conduct constituted a breach of duty and they each gave substantial assistance or encouragement to the other so to conduct himself; and/or

c.      gave substantial assistance to the other in accomplishing a tortious result and its own conduct, separately considered, constitutes a breach of duty to the Plaintiffs.

56.      The acts of the defendants as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation that proximately caused injury to the Plaintiffs in the following manner:

a.      The material published or caused to be published by the defendants was false and incomplete in that the Defendants knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-containing products.

b.      Defendants individually, as members of a conspiracy, as agents of other co-conspirators, and as aiders and abettors of each other intended that the publication of false and misleading reports and/or the nondisclosure of documented reports of the health hazards of asbestos:

i.      maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

ii.      assist in the continued pecuniary gain of the defendants through the sale of their products;

iii.      influence in the defendants' favor proposed legislation to regulate asbestos exposure and;

21

iv.    to provide a defense in lawsuits brought for injury resulting from asbestos disease.

c.    Plaintiffs reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-containing products and the absence of published medical and scientific reports on the extent, nature, and existence of hazards of asbestos and asbestos-containing products to continue exposure to asbestos because of a belief that it was safe.

d.    Defendants individually, as members of a conspiracy, and as agents of each other intended that Plaintiffs rely upon the published report regarding the safety of asbestos and asbestos-containing products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue his exposure to these products.

e.    Defendants individually, as members of a conspiracy, as agents of each other, as aiders and abettors of each other are and were in a position of superior knowledge regarding the health hazards of asbestos and therefore Plaintiffs had a right to rely on the published reports commissioned by the defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-containing products.

f.    Plaintiffs suffered and will continue to suffer injury as a direct and proximate result of the acts alleged herein.

57.    As a direct and proximate result of the acts of the Defendants, Plaintiff-worker suffered serious bodily injury, endured great pain and suffering, incurred medical expenses,

suffered mental anguish, lost earnings and earning capacity, and was otherwise damaged.

58.    As a direct and proximate result of the acts of the Defendants, Plaintiff-spouse has suffered, and will continue to suffer great pain and suffering, mental anguish, a loss of consortium, society, companionship, support, and dependency, and was otherwise damaged.

WHEREFORE Plaintiffs demand judgment and damages against the Defendants, jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

Plaintiffs hereby demand a trial by jury.

By their attorneys,

Robert J. McConnell, Esq. (#3888)
Donald A. Migliori, Esq. (#4936)
Vincent L. Greene, Esq. (#5971)
*MOTLEY RICE LLC*
321 South Main Street, 2nd Floor
Providence, RI  02940-6067
401-457-7700
401-457-7708 Fax

Providence, RI.
Dated:

23

CERTIFIED MAIL

**MotleyRice** LLC   ATTORNEYS AT LAW

7010 1870 0003 2480 6115

321 South Main St.
Providence, RI 02903

ADDRESS SERVICE REQUESTED

The Corporation Trust Company

1209 Orange Street

Wilmington, DE 19801

# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: 1:10-cv-00499-S -LDA

| | |
|---|---|
| Knowles et al v. A.W. Chesterton Company et al | Date Filed: 12/13/2010 |
| Assigned to: Judge William E Smith | Jury Demand: Both |
| Referred to: Magistrate Judge Lincoln D. Almond | Nature of Suit: 368 P.I. : Asbestos |
| Cause: 28:1441 Notice of Removal-Asbestos Litigation | Jurisdiction: Federal Question |

**Plaintiff**

**Wilford Knowles**                    represented by    **Donald A. Migliori**
                                                         Motley Rice LLC
                                                         321 South Main Street
                                                         2nd Floor
                                                         Providence, RI 02903-7108
                                                         457-7700
                                                         Fax: 457-7708
                                                         Email: dmigliori@motleyrice.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Robert J. McConnell**
                                                         Motley Rice LLC
                                                         321 South Main Street
                                                         2nd Floor
                                                         Providence, RI 02903
                                                         457-7700
                                                         Fax: 457-7708
                                                         Email: bmcconnell@motleyrice.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Vincent L. Greene , IV**
                                                         Motley Rice LLC
                                                         321 South Main Street
                                                         Providence, RI 02903
                                                         457-7730
                                                         Fax: 457-7708
                                                         Email: vgreene@motleyrice.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Laura Knowles**                      represented by    **Donald A. Migliori**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Robert J. McConnell**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vincent L. Greene , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**A.W. Chesterton Company**

**Defendant**

**Bayer Cropscience, Inc.**
*formerly known as*
Amchem Products, Inc.

**Defendant**

**BW/IP International Inc.**                    represented by **Brian D. Gross**
*Individually and as Successor in*                            Cooley Manion Jones LLP
*Interest to Byron Jackson Pump Co.*                          21 Custom House St.
                                                             Boston, MA 02110
                                                             617-737-3100
                                                             Fax: 617-737-0374
                                                             Email: bgross@cmjlaw.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**CBS Corporation**
*f/k/a Viacom, Inc., successor by Merger*
*and f/k/a Westinghouse Electric Corp.,*
*Individually and as Successor in*
*Interest to B.F. Sturtevant Company*

**Defendant**

**Crane Co.**

**Defendant**

**Crown, Cork & Seal Co., Inc.**

**Defendant**

**DC Fabricators Inc.**
*Individually and as Successor in*
*Interest to C.H. Wheeler*

**Defendant**

**Eaton Hydraulics, Inc.**
*formerly known as*
Vickers Incorporated

**Defendant**

**Elliott Company**
*formerly known as*
Elliott Turbomachinery

**Defendant**

**Fairbanks Morse Pump Corporation**

**Defendant**

**Foster Wheeler, LLC**

**Defendant**

**General Electric Company**                    represented by **Jeffrey M. Thomen**
McCarter & English LLP
185 Asylum St.
CityPlace I
Hartford, CT 06103
860-275-6726
Fax: 860-560-5939
Email: jthomen@mccarter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Gorman-Rupp Company**
*Individually and as Successor in*
*Interest to Griscom-Russell Co.,*
*Patterson Pump Company and C.H.*
*Wheeler Manufactoring Co.*

**Defendant**

**IMO Industries**                             represented by **Beth A. Oldmixon**
*successor to IMO Delaval*
Pierce, Davis & Perritano
90 Canal Street
Fourth Floor
Boston, MA 02114
617-350-0950
Fax: 617-350-7760
Email: boldmixon@piercedavis.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**McNally Industries, LLC**
*f/k/a McNally Industries, Inc.,*
*Individually and as Successor in*
*Interest to Northern Pump Co.*

<u>**Defendant**</u>

**Metropolitan Life Insurance
Company**

<u>**Defendant**</u>

**Owens Illinois Inc.**                               represented by   **Peter J. Rubin**
Bernstein Shur Sawyer & Nelson
100 Middle Street
Portland, ME 04101
207-774-1200
Email: prubin@bernsteinshur.com
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Patterson Pump Company**
*a Subsidiary of the Gorman-Rupp*
*Company (Individually and as*
*Successor to C.H. Wheeler*
*Manufacturing and Griscolm-Russell*
*Co.)*

<u>**Defendant**</u>

**P.I.C. Contractors, Inc.**

<u>**Defendant**</u>

**Packings & Insulations Corporation**

<u>**Defendant**</u>

**Rapid American Corporation**

<u>**Defendant**</u>

**Riley Stoker Corporation**
*now known as*
D.B. Riley, Inc.

<u>**Defendant**</u>

**SPX Corp.**
*Successor in Interest to Aurora Pump*
*Company and Fairbanks Morse Pump*
*Company*

<u>**Defendant**</u>

**Union Carbide Chemicals and
Plastics Company, Inc.**

**Defendant**

**Uniroyal, Inc.**

**Defendant**

**Viad Corporation**                        represented by **Stephen Adams**
*Individually and as Successor in*          Taylor, Duane, Barton & Gilman, LLP
*Interest to Dial Corporation, Successor*   10 Dorrance St.
*to Griscolm-Russell Company*               8th Floor
                                            Providence, RI 02903
                                            273-7171
                                            Fax: 273-2904
                                            Email: sadams@taylorduane.com
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Kristen M. Whittle**
                                            Taylor, Duane, Barton & Gilman, LLP
                                            10 Dorrance St.
                                            8th Floor
                                            Providence, RI 02903
                                            273-7171
                                            Fax: 273-2904
                                            Email: kwhittle@taylorduane.com
                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Viad Corporation**                        represented by **Stephen Adams**
*f/k/a The Dial Corporation, Individually*  (See above for address)
*and as Successor in Interest to Baldwin*   *LEAD ATTORNEY*
*Lima Hamilton and Griscolm-Russell*        *ATTORNEY TO BE NOTICED*
*Company*

**Defendant**

**Warren Pumps**                            represented by **Beth A. Oldmixon**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

**Cross Claimant**

**BW/IP International Inc.**                 represented by **Brian D. Gross**
*Individually and as Successor in*          (See above for address)
*Interest to Byron Jackson Pump Co.*        *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*


V.

**Cross Defendant**

**BW/IP International Inc.**                 represented by **Brian D. Gross**
*Individually and as Successor in*          (See above for address)
*Interest to Byron Jackson Pump Co.*        *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**A.W. Chesterton Company**

**Cross Defendant**

**Bayer Cropscience, Inc.**

**Cross Defendant**

**CBS Corporation**
*f/k/a Viacom, Inc., successor by Merger*
*and f/k/a Westinghouse Electric Corp.,*
*Individually and as Successor in*
*Interest to B.F. Sturtevant Company*

**Cross Defendant**

**Crane Co.**

**Cross Defendant**

**Crown, Cork & Seal Co., Inc.**

**Cross Defendant**

**DC Fabricators Inc.**
*Individually and as Successor in*
*Interest to C.H. Wheeler*

**Cross Defendant**

**Eaton Hydraulics, Inc.**

**Cross Defendant**

**Elliott Company**

**Cross Defendant**

**Fairbanks Morse Pump Corporation**

**Cross Defendant**

**Foster Wheeler, LLC**

**Cross Defendant**

**General Electric Company**          represented by **Jeffrey M. Thomen**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**IMO Industries**
*successor to IMO Delaval*

**Cross Defendant**

**Ingersoll-Rand Company**

<u>Cross Defendant</u>

**McNally Industries, LLC**
*f/k/a McNally Industries, Inc.,*
*Individually and as Successor in*
*Interest to Northern Pump Co.*

<u>Cross Defendant</u>

**Metropolitan Life Insurance**
**Company**

<u>Cross Defendant</u>

**Owens Illinois Inc.**

<u>Cross Defendant</u>

**P.I.C. Contractors, Inc.**

<u>Cross Defendant</u>

**Packings & Insulations Corporation**

<u>Cross Defendant</u>

**Patterson Pump Company**
*a Subsidiary of the Gorman-Rupp*
*Company (Individually and as*
*Successor to C.H. Wheeler*
*Manufacturing and Griscolm-Russell*
*Co.)*

<u>Cross Defendant</u>

**Rapid American Corporation**

<u>Cross Defendant</u>

**Riley Stoker Corporation**

<u>Cross Defendant</u>

**SPX Corp.**
*Successor in Interest to Aurora Pump*
*Company and Fairbanks Morse Pump*
*Company*

<u>Cross Defendant</u>

**The Gorman-Rupp Company**
*Individually and as Successor in*
*Interest to Griscom-Russell Co.,*
*Patterson Pump Company and C.H.*
*Wheeler Manufactoring Co.*

<u>Cross Defendant</u>

**Union Carbide Chemicals and
Plastics Company, Inc.**

**Cross Defendant**
**Uniroyal, Inc.**

**Cross Defendant**

**Viad Corporation**
*Individually and as Successor in
Interest to Dial Corporation, Successor
to Griscolm-Russell Company*

represented by **Stephen Adams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Viad Corporation**
*f/k/a The Dial Corporation, Individually
and as Successor in Interest to Baldwin
Lima Hamilton and Griscolm-Russell
Company*

represented by **Stephen Adams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Warren Pumps**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/13/2010 | 1 | NOTICE OF REMOVAL by Viad Corporation(Individually and as Successor in Interest to Dial Corporation, Successor to Griscolm-Russell Company), Viad Corporation(f/k/a The Dial Corporation, Individually and as Successor in Interest to Baldwin Lima Hamilton and Griscolm-Russell Company) from Providence County Superior Court, case number PC10-3967. ( Filing fee $ 350 receipt number 14670004413) (Attachments: # 1 Exhibit A-State Court Complaint, # 2 Exhibit B, # 3 Exhibit C- Declaration of C. Cushing, # 4 Exhibit C1, # 5 Exhibit D- Declaration of B. Lehman, # 6 Exhibit D1, # 7 Exhibit D2- Affidavait of D. Sargent, Jr., # 8 Civil Cover Sheet) Exhibit L pages 77-300, not scanned due to exceeding system capacity; available in court file.(Smith, Rana) (Entered: 12/14/2010) |
| 12/16/2010 | 2 | NOTICE of Appearance by Jeffrey M. Thomen on behalf of General Electric Company (Thomen, Jeffrey) (Entered: 12/16/2010) |
| 12/16/2010 | 3 | Corporate Disclosure Statement by General Electric Company. (Thomen, Jeffrey) (Entered: 12/16/2010) |
| 12/16/2010 | 4 | Corporate Disclosure Statement by Viad Corporation(Individually and as Successor in Interest to Dial Corporation, Successor to Griscolm-Russell Company), Viad Corporation(f/k/a The Dial Corporation, Individually and as Successor in Interest to Baldwin Lima Hamilton and Griscolm-Russell Company). (Adams, Stephen) (Entered: 12/16/2010) |
| 12/23/2010 | 5 | STATE COURT RECORD by Viad Corporation(Individually and as Successor in Interest to Dial Corporation, Successor to Griscolm-Russell Company) and |

| | | |
|---|---|---|
| | | Viad Corporation f/k/a The Dial Corporation, Individually and as Successor in Interest to Baldwin Lima Hamilton and Griscolm-Russell Company (Attachments: # 1 Exhibit 3-CBS Corp.'s Answer to Complaint, # 2 Exhibit 4-DC Fabricator's Inc.'s Answer to Complaint, # 3 Exhibit 5- Warren Pumps, LLC Answer to Complaint, # 4 Exhibit 7- General Electric Company's Answer to Compliant, # 5 Exhibit 10- Metropolitan Life Insurance Company's Answer to Complaint, # 6 Exhibit 11- Eaton Hydraulics, LLC Answer to Complaint, # 7 Exhibit 12- Crown, Cork & Seal Co., Inc.'s Answer to Complaint, # 8 Exhibit 15- Gorman Rupp Co.'s Answer to Complaint, # 9 Exhibit 17- Elliott Company's Answer to Complaint, # 10 Exhibit 20- Riley Stoker Corp. n/k/a Riley Power, Inc.'s Answer to Complaint)(Smith, Rana) (Entered: 12/23/2010) |
| 01/24/2011 | 6 | NOTICE of Appearance by Brian D. Gross on behalf of BW/IP International Inc. (Gross, Brian) (Entered: 01/24/2011) |
| 01/24/2011 | 7 | Corporate Disclosure Statement by BW/IP International Inc. identifying Corporate Parent Flowserve Corporation for BW/IP International Inc... (Gross, Brian) (Entered: 01/24/2011) |
| 01/24/2011 | 8 | ANSWER to Complaint, CROSSCLAIM against All Defendants by BW/IP International Inc..(Gross, Brian) (Entered: 01/24/2011) |
| 04/04/2011 | 9 | NOTICE of Appearance by Kristen M. Whittle on behalf of Viad Corporation (Individually and as Successor in Interest to Dial Corporation, Successor to Griscolm-Russell Company) (Whittle, Kristen) (Entered: 04/04/2011) |
| 04/04/2011 | 10 | NOTICE by Viad Corporation(Individually and as Successor in Interest to Dial Corporation, Successor to Griscolm-Russell Company) *Notice of Filing of Tag-Along Notice* (Whittle, Kristen) (Entered: 04/04/2011) |
| 08/15/2011 | 11 | NOTICE of Appearance by Peter J. Rubin on behalf of Owens Illinois Inc. (Rubin, Peter) (Entered: 08/15/2011) |
| 08/15/2011 | 12 | Corporate Disclosure Statement by Owens Illinois Inc.. (Rubin, Peter) (Entered: 08/15/2011) |
| 08/18/2011 | 13 | NOTICE of Appearance by Beth A. Oldmixon on behalf of IMO Industries (Oldmixon, Beth) (Entered: 08/18/2011) |
| 08/18/2011 | 14 | NOTICE of Appearance by Beth A. Oldmixon on behalf of Warren Pumps (Oldmixon, Beth) (Entered: 08/18/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/12/2011 10:25:25 | | | |
| **PACER Login:** | td0090 | **Client Code:** | 08023-34/Viad/Knowles |
| **Description:** | Docket Report | **Search Criteria:** | 1:10-cv-00499-S -LDA |
| **Billable Pages:** | 6 | **Cost:** | 0.48 |