UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
CHARLES C. ALBRECHT and
LAURA ALBRECHT,

       Plaintiffs,

  v.

A.O. SMITH WATER PRODUCTS et al.,

       Defendants.
---------------------------------------- X

11 Civ. 5990(BSJ)
**Memorandum & Order**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

  Plaintiffs Charles C. Albrecht ("Mr. Albrecht") and Laura Albrecht (collectively, "Plaintiffs") brought this suit in the Supreme Court of the State of New York against over forty defendants, including Lockheed Martin Corporation ("Lockheed"), for injuries resulting from Mr. Albrecht's exposure to asbestos while working for Lockheed on aircraft manufactured by Lockheed.[1] Lockheed removed this action under the federal officer removal statute, 28 U.S.C. § 1442, and now Plaintiffs move the Court to remand this action to state court for further proceedings. For the reasons stated below, Plaintiffs' Motion to Remand is DENIED.

---

[1] Mr. Albrecht passed away on August 25, 2011. Def.'s Opp. Mot. Remand 3. Laura Albrecht remains a party to this suit.

1

*Background*

## I. Charles C. Albrecht

Mr. Albrecht was employed by Lockheed as an aircraft mechanic in New York for approximately six months in 1954. Albrecht Dep. 305. The aircraft upon which he worked were manufactured by Lockheed under government contracts with the military, including the Navy. *Id.* at 311. During his employment, Mr. Albrecht was exposed to asbestos and consequently developed an "asbestos related" disease. Compl. ¶ 159.

## II. Procedural History

On or about April 21, 2011, Plaintiffs filed a personal injury lawsuit in the Supreme Court of the State of New York against Lockheed and approximately forty other defendants, alleging that the defendants' negligence and failure to warn Mr. Albrecht led to his asbestos-related disease. Def.'s Notice Removal ¶ 1. On August 2, 2011, Mr. Albrecht was deposed and explained that he had worked on aircraft manufactured by Lockheed during the period when he claimed he was exposed to asbestos. *Id.* ¶ 3.

On August 26, 2011, Lockheed filed a timely Notice of Removal, seeking to remove the lawsuit in order to raise a colorable federal defense. On August 30, 2011, Plaintiffs filed an emergency motion to remand the action to state court.

### III. Affidavits

To support their contentions for and against removal, the parties submitted numerous declarations about the contracting relationship between Lockheed and the military. The most salient portions of those declarations are collected below.

#### A. Lockheed's Declarations

##### 1. Declaration of Ralph Richard Heppe

Ralph Richard Heppe worked for Lockheed from 1947 until 1988, mostly at Lockheed's facilities in Burbank, California. Heppe Decl. ¶ 2. He held several positions over this period, including Vice President of Government Programs and President of Lockheed California Company, in which he gained direct knowledge of Lockheed's negotiations with the military and oversaw the processes Lockheed used to manufacture aircraft for the military. *Id.*

According to Heppe, the military exercised extensive control over all aspects of aircraft manufacturing under its contracts and was "intimately" involved in the manufacturing process. Heppe Decl. ¶ 16. In addition to onsite military personnel that monitored Lockheed's manufacturing processes, the military provided detailed specifications, including specifications about "the markings that could be placed on military aircraft and aircraft component parts." Heppe Decl. ¶¶ 6-8. Any alterations to these specifications had to be

3

"accepted and approved" by the military and the military "always had a veto power" over specifications. Heppe Decl. ¶ 10. The military would also supply certain component parts that it would purchase from other manufacturers, known as Government Furnished Equipment ("GFE"). Heppe Decl. ¶ 12. This gave the military complete control over the markings and warnings placed on GFE, depending on the specifications it imposed on GFE manufacturers, which meant that GFE was delivered to Lockheed with any warnings and labels already affixed. Heppe Decl. ¶¶ 13-15.

Lastly, Heppe stated that Lockheed had "no unique knowledge" about asbestos, knew nothing of the dangers of asbestos, and knew nothing more than the government about asbestos. Heppe Decl. ¶ 22.

**2. Declaration of Valentino Jimenez**

Valentino Jimenez has worked for Lockheed since 1971 and currently serves as an aircraft engineer. Jimenez Decl. ¶ 3. In his capacity, Jimenez has knowledge of the particular military specifications and Lockheed manufacturing practices in effect during Mr. Albrecht's employment. *Id.* ¶¶ 4-7. Especially relevant, Jimenez has knowledge concerning the manufacturing of the WV-2/RC-121 aircraft maintained by Lockheed in the late 1950s and early 1960s at the New York Idlewild Airport facility where Albrecht worked in 1954. *Id.* ¶ 10.

4

According to Jimenez, the military supplied a "substantial quantity of GFE" under the terms of Contract 52-763, the contract governing the manufacture of the aircraft maintained at the hangar where Mr. Albrecht worked. Jimenez Decl. ¶¶ 11-12. He also stated that the military instituted "detailed rules and regulations concerning the markings, insignia, and warnings aircraft manufacturers were allowed to place on Military aircraft" and submitted an exhibit of such a specification. Jimenez Decl. ¶ 14. In particular, he explained that the military prohibited the addition of any labels or warnings without formal military approval. *Id.*

Like Heppe, Jimenez also declared that he was unaware of any information or documents indicating that Lockheed had knowledge of the dangers of asbestos when it manufactured the aircraft allegedly causing Mr. Albrecht's exposure. Jimenez Decl. ¶ 15.

### 3. Other Declarations

Two other declarations from former Lockheed employees were submitted by Lockheed, which both thoroughly corroborate the extensive oversight and control that the military exercised over the contracted aircraft and Lockheed's manufacturing facilities. Quirino Decl. ¶¶ 7-12; Brodie Decl. ¶¶ 6-16. Notably, a former Lockheed engineer stressed that military approval of

5

specifications involved extensive review and "was not simply a 'rubber stamp' process." Brodie Decl. ¶ 12.

In addition, Lockheed has submitted the 1939 Annual Report of the Surgeon General, U.S. Navy, and excerpted portions in which the Surgeon General describes the dangers of asbestos and asbestosis. DiLonardo Decl. Ex. B. Lockheed also attached the *Navy Medical Bulletin* and Minimum Requirements for Safety and Industrial Health, both of which were produced by the Navy and acknowledge the health hazards of asbestos exposure. DiLonardo Decl. Exs. A, C.

**B. Plaintiffs' Declarations**

**1. Declaration of Arnold P. Moore**

Arnold P. Moore is a Professional Engineer and formal naval officer who worked on naval ships for twenty-eight years. Moore Decl. ¶ 1. According to Moore, the Navy did not prevent manufacturers from attaching warnings and safety labels to naval machinery and, in fact, required that manufacturers supply such warnings. Moore Decl. ¶ 11. Moore refers to a particular ship specification for boiler plates, which required manufacturers to affix a warning. Golanski Decl. Ex. 12.

**2. Declaration of Joseph H. Chilcote**

Joseph H. Chilcote was a project engineer for the Navy's Bureau of Ships for twenty-two years, during which he drafted manufacturing specifications. Chilcote Decl. ¶ 2. According to

6

Chilcote, the Navy often consulted with contracted manufacturers to decide which pre-assembled components to purchase from third-party manufacturers and often relied on contractors' "specific and comprehensive knowledge" in making these decisions. Chilcote Decl. ¶ 3.

### *Discussion*

#### I. Nonremovable Actions Under § 1445(c)

Plaintiffs contend that removal is improper because the lawsuit arises under workers' compensation laws and is, accordingly, a nonremovable action under 28 U.S.C. § 1445(c). Golianski Decl. ¶¶ 8-14. This argument is baseless since Plaintiffs admit that their complaint fails to state any workers' compensation claims and they fail to explain how the other claims in the lawsuit could arise under New York's workers' compensation laws. Pls.' Reply Supp. Mot. Remand at 2-3.

#### II. Removal Under § 1442

Having concluded that § 1445(c) does not preclude removal, the only issue remaining is whether removal is appropriate under the federal officer removal statute, 28 U.S.C. § 1442.

##### A. Standard of Review

As an initial matter, courts must differentiate between removal under § 1442 and removal under the general removal

7

statute, 28 U.S.C. § 1441. When a party seeks to remove a case under § 1441, removal is disfavored unless the defendant establishes the court's jurisdiction under § 1331 or § 1332. However, when a party seeks to remove a case under § 1442, removal is favored in the interest of public policy. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law.").

The policy interest that creates this presumption of removal under § 1442 is the government's need to provide a federal forum for its officers and those who are "acting under" a federal office. *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969) (stating that "Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum" and that "[t]his policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)"); *see also Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960). In furtherance of this policy interest, the Supreme Court has held that courts must broadly construe the federal officer removal statute to allow a defendant access to a federal forum without first having to prove the merits of its defense. *Willingham*, 395 U.S. at 406-07; *Durham v. Lockheed*

8

*Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("Because it's so important to the federal government to protect federal officers, removal rights under section 1442 are much broader than those under section 1441."). Accordingly, an analysis under § 1442 must view the evidence and facts in the light most favorable to the defendant. *Hagen v. Benjamin Foster Co.*, 770 F. Supp. 2d 770, 783; *Durham*, 445 F.3d at 1249 (citing *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960)) ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").

### 1. Requirements for Removal Under § 1442

Under § 1442, a defendant may remove an action from state court to federal court if the defendant is a federal agency, a federal officer, or considered to be acting on behalf of the government. For § 1442 to apply, a defendant must satisfy four prongs by showing that 1) it is a "person" within the meaning of the statute, 2) it was "acting under" the control of a federal office or officer, 3) it raises a "colorable federal defense," and 4) there is a "causal connection" between the claims and the conduct performed under the control of a federal office or officer. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007); *Isaacson v. Dow Chem. Co.*, 517

9

F.3d 129, 133-34 (2d Cir. 2008).[2] Since the parties do not dispute that Lockheed is a "person" within the meaning of the statute, the Court need only evaluate the second, third, and fourth prongs. The analysis for the second and fourth prongs largely follows the analysis of the third prong, so the colorable federal defense prong will be addressed first, followed by the acting under and causal connection prongs.[3] For the reasons recited below, Lockheed has satisfied all four prongs.

### a. The Colorable Federal Defense Prong

Plaintiffs challenge removal on the ground that Lockheed has failed to assert a colorable federal contractor defense. To

---

[2] The exact text of § 1442(a) reads:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
>
> (2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.
>
> (3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties;
>
> (4) Any officer of either House of Congress, for any act in the discharge of his official duty under an order of such House.

28 U.S.C. § 1442(a).

[3] See Hagen, 739 F. Supp. 2d at 785 ("[J]ust as the acting under analysis becomes redundant where a defendant in a government contractor case makes out a colorable federal defense, resolving the causal nexus requirement is not difficult in light of the Court's colorability determination because the causal nexus analysis is essentially the same as the colorable defense requirement.")(internal quotations omitted).

10

present a federal contractor defense for a failure to warn claim, a defendant must establish three elements: 1) that "the United States approved reasonably precise specifications," 2) that "the equipment conformed to those specifications," and 3) that the defendant "warned the United States about the dangers in the use of the equipment that were known to the [defendant] but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988); *In re Joint Eastern and Southern Dist. New York Asbestos Litig.*, 897 F.2d 626, 629 (2d Cir. 1990) (affirming that the three *Boyle* elements apply to both design defect and failure to warn actions). Based on the evidence on the record, Lockheed has established a colorable federal defense.

In regard to the first and second elements, Plaintiffs primarily argue that Lockheed has not demonstrated that the government specifications and contract terms made it impossible for it to comply with State law design defect and warnings requirements. Golianski Decl. ¶ 17. In support of this position, Plaintiffs argue that Lockheed cannot prove that it was unduly restricted by "reasonably precise specifications" because it has not produced or referenced "a single contract, nor a single Government specification, calling for or addressing the asbestos content of any aircraft-related materials." Pls.' Reply Supp. Mot. Remand at 4. Consequently, Plaintiffs argue

11

that Lockheed failed to satisfy its affirmative responsibility to place warnings on its aircraft. *Id.* at 4-5.

Although the evidence provided by Lockheed may ultimately prove insufficient to support its defense on the merits, the Court finds that Plaintiffs overestimate the demands of § 1442 at this stage of the proceedings. To establish jurisdiction under § 1442, Lockheed need not prove its defense but need only show that it has the underpinnings of a valid federal defense. *Hagen*, 739 F. Supp. 2d at 782-83 ("While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense."). To support a colorable defense, Lockheed has submitted multiple declarations that reiterate the meticulous specifications and scrupulous control that the military exerted over its manufacturing. Viewed in the light most favorable to Lockheed, this evidence suggests that the military's control of its operations went far beyond mere "rubber stamping," *Hagen*, 739 F. Supp. 2d at 783 (quoting *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1156-57 (6th Cir. 1995)), and is sufficient to make colorable a claim that "government officials ultimately [] remain[ed] the agents of decision" in Lockheed's manufacture of

12

military aircraft. *In re Joint Eastern and Southern Dist. New York Asbestos Litig.*, 897 F.2d at 630. In addition, Plaintiffs' affidavits are of fleeting relevance since, as Lockheed notes, they concern the manufacture of military ships, which appears very different from the manufacture of aircraft. Def.'s Opp. Mot. Remand 16 n.9.

In regard to the third element, Plaintiffs have misconstrued the burden of demonstrating colorability to the extent that they interpret the federal contractor defense to impose an absolute duty to warn upon Lockheed. In order for a defendant to support a colorable federal defense, it must only establish that it warned of dangers "that were known to [it] but not to the United States." *Boyle*, 487 U.S. at 512. A defendant is not required to warn the government where "the government knew as much or more than the defendant contractor about the hazards of the product." *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1216 (3d Cir. 1989). Viewed in the light most favorable to Lockheed, the evidence supports Lockheed's claim that it had no obligation to warn the military about asbestos or to place warnings on the contracted aircraft. The evidence—excerpts from the *Navy Medical Bulletin*, the Annual Report of the Navy Surgeon General, and the Heep and Jimenez declarations—paint a colorable picture either that the Navy knew about the hazards of asbestos and Lockheed, therefore, had no

13

obligation to warn the military, or that Lockheed knew nothing about the dangers of asbestos and, therefore, had no obligation to warn the military.

### b. The Acting Under and Causal Connection Prongs

The acting under and causal connection prongs of § 1442 are closely related to one another and often turn on much of the same evidence as the colorable federal defense prong. *In re Methyl Tertiary Butyl Ether Prods. Liab.*, 488 F.3d at 124 (noting that the arising under and causal connection prongs "tend to collapse into a single requirement"); *Willingham*, 395 U.S. at 409. These two prongs are satisfied if the actions subject to suit resulted directly from government specifications or direction. 488 F.3d at 124-25. Along with all of the evidence supporting the colorable federal defense prong, Lockheed has satisfied the arising under and causal connection prongs with the Jimenez declaration, which explains that extensive military control was also exercised over Lockheed's manufacture of the WV-2/RC-121 aircraft serviced at the facility where Mr. Albrecht worked.

Since the Court has found that Lockheed has raised a colorable federal contractor defense, the Court need not address Lockheed's arguments regarding its defense based on a theory of derivative sovereign immunity.

14

### *Conclusion*

Accordingly, Lockheed has established that it has a colorable federal defense available to support removal under § 1442. For the foregoing reasons, Plaintiffs' Motion to Remand is DENIED.

SO ORDERED:

*Barbara S. Jones*

**BARBARA S. JONES**

**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York

        October 20, 2011