EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BONNIE VON DELL and | : | |
| and JOHN VON DELL, | : | |
| | : | Case No. 1:11-cv-00786 SLR |
| Plaintiffs, | : | |
| | : | |
| v. | : | TRIAL BY JURY DEMANDED |
| | : | |
| THE BOEING COMPANY (individually | : | |
| and as successor to MCDONNELL | : | |
| DOUGLAS CORPORATION), et al., | : | |
| | : | |
| Defendants. | : | |

## THE BOEING COMPANY'S OBJECTION TO
## THE SPECIAL MASTER'S REPORT AND RECOMMENDATION
## <u>REGARDING PLAINTIFFS' EMERGENCY MOTION TO REMAND</u>

**WHITE AND WILLIAMS LLP**

**CHRISTIAN J. SINGEWALD (#3542)**
824 North Market Street, Suite 902
P. O. Box 709
Wilmington, DE 19899-0709
(302) 654-0424
Attorney for Defendant, *The Boeing Company*

Dated: October 28, 2011

Boeing objects to the Report and Recommendation of the Special Master (D.I. 23) under Federal Rule of Civil Procedure 53(f). The Special Master erred in finding (1) that Mark Sargent's testimony regarding AWACS triggered the deadline to remove to federal court, and (2) that Mr. Sargent's testimony established facts that clearly establish that Mrs. Von Dell worked on or near AWACS wiring harnesses. These errors resulted in an erroneous recommendation that this Court find Boeing's removal untimely. The Court should therefore reject the Special Master's recommendation.

The timeliness issue turns on when the "nexus" requirement for federal officer removal was satisfied. A defendant removing on federal officer grounds must establish "a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998). The Special Master found the nexus established by Mr. Sargent, a co-worker witness, who testified on May 24 that the facility where he and Mrs. Von Dell worked assembled wire harnesses for AWACS aircraft. Boeing objects to this finding because that testimony did not provide the link between Plaintiffs' claims and AWACS. Plaintiffs supplied this missing link in their counsel's August 9 letter, which made clear for the first time that Plaintiff's claim against Boeing included exposure to AWACS.

The Special Master ordered that objections be filed within three days and be no more than three pages, single spaced. This Court reviews the Special Master's findings *de novo*. Fed. R. Civ. P. 53(f)(3).

**Error No. 1 – The Special Master Erred in Holding that Testimony about a Military Product's Presence on a Worksite Established the Nexus Requirement, Absent Testimony Connecting Plaintiffs' Claims to the Product.**

The premise of the Special Master's conclusion is that testimony that a military product was assembled at Rohr established a nexus between Plaintiffs' claim and that product. The Special Master reasoned that Sargent's testimony that a part of the Rohr facility dealt with AWACS wiring harnesses established a link between Mrs. Von Dell's claims and the AWACS. The following portions of the Report show that the Special Master found the nexus based on the general presence of AWACS wiring harnesses at Rohr:

- The Special Master described Sargent's testimony as a "clear and unequivocal identification of the AWACS engines and its components being Defendant's products at Rohr." (D.I. 23 at 5.)

- "Given the description of the electrical wire harness department and the work done there, it does not matter whether Sargent testified that Bonnie Von Dell worked on an AWACS wire harness. The fact remains that someone in the electrical wire harness department did." (D.I. 23 at 7.)

- "While it is true that Sargent did not claim to have any personal knowledge nor specific details regarding the types of wire harnesses Bonnie Von Dell assembled at Rohr, his testimony unequivocally demonstrated that Bonnie Von Dell worked in the space where wire harnesses destined for AWACS were being assembled. This fact in conjunction with Plaintiffs' complaint alleging occupational exposure to asbestos while working as a wire harness assembler at Rohr, in the Special Master's view,

> amounts to 'Plaintiffs claiming that [Bonnie] Von Dell was [also] exposed to asbestos from wire destined for AWACS.'" (D.I. 23 at 9.)

The problem with this logic is Plaintiff did not testify that she worked on AWACS components. To the contrary, she testified that Rohr only assembled harnesses for commercial aircraft. (Von Dell Video Dep. p. 68:17-24, Ex. A). Sargent did not testify that Plaintiff worked on AWACS components. Rather, he did not know what she worked on (Sargent Dep. at 89:8-20, 90:12-18, Ex. B), and had no recollection of Mrs. Von Dell working on wiring harnesses destined for *any* Boeing aircraft, much less the AWACS. (D.I. No. 23 at 5, Ex. B at 68-69.)

Nothing linked Plaintiffs' claims to the AWACS, until the August 9 letter. (Ex. C). Evidence that military products are generally present on a worksite does not establish the required nexus. *See Durham v. Lockheed*, 445 F.3d 1247, 1251 (9th Cir. 2006)("Until Durham revealed *which aircraft he had worked on* during his … career, Lockheed couldn't assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense.")(emphasis added); *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 740 (E.D. Pa. 2011)("[s]imply stating that Decedent was employed at the … Naval Shipyard is insufficient" . . . "[causal] nexus was not revealed until Plaintiffs' Answers to Special Interrogatories stated that, '*Plaintiffs contend* that [Defendant] sold, supplied, marketed, and distributed asbestos containing products *to which Decedent was exposed* while in the U.S. Navy . . . including . . . [the military equipment removal was based upon].")(emphases added).

Adopting the Special Master's approach that evidence of the general presence of military products on a worksite—without specific evidence tying the products to Plaintiffs' claims— would gut the nexus requirement and invite removals based on the thinnest allegations of exposure. This case illustrates the problem. Had Boeing removed after Sargent's deposition, Plaintiffs would have argued for remand based on the nexus requirement, and the court likely would have remanded. Adopting a rule that requires defendants to remove based on the general presence of military products (*e.g.*, testimony that a plaintiff was in the military) would burden the courts with improvident removals. *See Contois v. Able Indus., Inc.*, 523 F. Supp. 2d 155, 158 (D. Conn. 2007).

Additionally, Boeing did not, as the Special Master suggests, "concede that the triggering event is when it learned that AWACS engines and its components were being assembled at Rohr." (D.I. 23 at 8.) To the contrary, Boeing's position is that removal would have been triggered if Plaintiff testified that she had worked on AWACS harnesses. Boeing clarified this position when it argued that Sargent's testimony regarding AWACS muddied the waters by putting Boeing "in a position . . . to guess or speculate about what exactly Mrs. Von Dell was claiming." (Hearing Tr. at 21:4-7, Ex. D.) Mere utterance of "AWACS" was not sufficient, standing alone, to trigger removability.

**Error No. 2 – The Special Master Erred in Finding that Sargent's Testimony Established Facts that Clearly Establish that Mrs. Von Dell Worked on or near AWACS Wiring Harnesses.**

The Special Master's report concludes that a number of facts are "clear" from Sargent's testimony. (D.I. 23 at 6.) But careful examination of the testimony reveals that facts the Special Master regarded as clear are anything but clear.

- The Special Master found that "[i]t is clear from [Sargent's] deposition that Bonnie Von Dell worked in the electrical wire harness department at Rohr; that everyone in the department did the same job; that the workers in the department made wire harnesses for various engines, including the Boeing 707 AWACS." (D.I. 23 at 6.) Sargent did not work in the electrical department, and his knowledge regarding Plaintiff's work was limited at best. (*See* Ex. B at 66:23-67:1, 89:2-7.) Sargent *never* worked alongside Mrs. Von Dell and only saw her "in passing." (*Id.* at 26:7-9.), and had no recollection of her actually working on Boeing harnesses. (*Id.* at 68:3-8.) This finding is unsupported.

- The Special Master found that "[i]t is clear from Sargent's testimony that all wire harnesses were assembled in the same space by each and all of Rohr's wire harness assemblers, including Bonnie Von Dell." (D.I. 23 at 6.) However, Sargent did not work in the same department as Von Dell (Ex. B at 89:1-7.), and he had no knowledge of the particular engines or aircraft on which the wire harnesses would be installed. (*Id.* at 89:8-16.) Sargent's testimony regarding what went on in the electrical department amounts to little more than speculation. This finding is unsupported.

The above findings are erroneous, and they were material as they formed the basis of the Special Master's conclusion that the testimony established a link between the presence of AWACS' components and Plaintiffs' claims. As the Special Master noted, Sargent "did not claim to have any personal knowledge nor specific details regarding the types of wire harnesses Bonnie Von Dell assembled at Rohr." (D.I. 23 at 9.) Given the speculative nature of Sargent's testimony, it would have been speculation for Boeing to assume based on that testimony that Mrs. Von Dell claimed exposure to AWACS, in particular given her contrary testimony that Rohr only dealt with commercial aircraft.

Mrs. Von Dell testified that Rohr assembled engines for commercial aircraft only. (Ex. A at 68:17-22.) The August 9 letter first unequivocally established that Mrs. Von Dell's allegations included exposure to AWACS aircraft. Even assuming Sargent had clearly established that AWACS components were present throughout Rohr—which he did not—the portions of his testimony cited above cast serious doubt on whether Mrs. Von Dell's allegations would or would not include exposure to AWACS. The doubt created by Sargent's testimony precluded Boeing from finding a clearly established or unequivocal ground for removability.

If this Court adopts the report of the Special Master, the rule under § 1446(b) that the grounds for removal be "clearly established" and "unequivocal" will be deprived of any significance. Under the Special Master's analysis, a defendant would perpetually be forced to decide between filing a notice of removal too soon or too late. Boeing requests that this Court reject the report and recommendation of the Special Master.

WHITE AND WILLIAMS LLP

CHRISTIAN J. SINGEWALD (#3542)
824 North Market Street, Suite 902
P. O. Box 709
Wilmington, DE 19899-0709
(302) 654-0424

Dated: October 28, 2011                    Attorney for Defendant, *The Boeing Company*

# EXHIBIT A

BONNIE VON DELL - VIDEO

Page 1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

IN RE:  ASBESTOS LITIGATION            )
                                       )
BONNIE VON DELL and JOHN VON DELL,)
                                       )
          Plaintiffs,            )C.A. No. N10C-09-124 ASB
                                       )
       vs.                        )
                                       )
3M COMPANY a/k/a MINNESOTA MINING )
& MANUFACTURING COMPANY, et al.,  )
                                       )
                                       )
          Defendants.            )
_____)


VIDEOTAPED DEPOSITION OF

BONNIE VON DELL

TUESDAY, JANUARY 25, 2011


          VIDEOTAPED DEPOSITION OF BONNIE VON DELL,
commencing from 9:25 a.m. to 2:00 p.m., Tuesday, the 25th of
January, 2011, taken on behalf of the Plaintiffs and
reported at Holiday Inn Express-SeaTac Airport, 19621
International Boulevard, SeaTac, Washington, before Mary Ann
Pennington Certified Court Reporter for the State of
Washington, CCR No. 3016.

BONNIE VON DELL - VIDEO

1    Q.    How long did you work there?

2    A.    I worked there until '85, and I was laid off

3    and then called back and worked until '92 when they

4    closed the plant down.

5    Q.    Okay.  Is Rohr Industries the longest period of

6    employment that you had for your entire life?

7    A.    Yes.

8    Q.    What did -- what did Rohr do?  What kind of a

9    factory was it?

10   A.    They were an assembly plant for engines,

11   airplane engines.

12   Q.    Okay.

13   A.    They assembled the wire -- from the wire

14   harnesses, everything that went on a -- a jet engine, we

15   made at the plant, the harnesses, the piping, all of

16   this.

17   Q.    And these were jet engines for commercial

18   aircraft, military aircraft, what?

19          MS. YEE:  Objection.

20   A.    Commercial aircraft.

21   Q.    Go ahead.

22   A.    Commercial.

23   Q.    It was all commercial aircraft?

24   A.    Right.

25   Q.    I'm going to show you some photographs that you

Case MDL No. 875 Document 7992-5 Filed 10/28/11 Page 9 of 26

# EXHIBIT B

MARK SARGENT

Page 1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

IN RE: ASBESTOS LITIGATION            )
                                      )
BONNIE VON DELL and JOHN VON DELL,)
                                      )
                                      )
        Plaintiffs,          )C.A.No. N10C-09-124 ASB
                                      )
    vs.                               )
                                      )
3M COMPANY a/k/a MINNESOTA MINING )
& MANUFACTURING COMPANY, et al.,  )
                                      )
                                      )
        Defendants.          )
_____)

DEPOSITION OF
MARK SARGENT
TUESDAY, MAY 24, 2011

        DEPOSITION OF MARK SARGENT, commencing from
8:59 a.m. to 12:01 p.m., Tuesday, the 24th of May, 2011,
taken on behalf of the Defendants and reported at Holiday
Inn Express-SeaTac Airport, 19621 International Boulevard,
SeaTac, Washington, before Mary Ann Pennington, Certified
Court Reporter for the State of Washington, CCR No. 3016.

MARK SARGENT

Page 68

1    they manufactured?

2         A.   No, I don't.

3         Q.   So you just know generally that they had wire

4    at the plant, correct?

5         A.   Yes.

6         Q.   And as to Ms. Von Dell, you wouldn't have a

7    specific recollection of her using a specific

8    manufacturer's wiring; is that correct?

9              MR. McDOWELL:  Objection.  Form.

10             THE WITNESS:  Correct.

11             MS. CANTRELL:  I'm sorry, counsel.  This is

12   Camille Cantrell.  Can the court reporter read back the

13   witness's answer regarding the manufacturers of wire,

14   please.

15             THE COURT REPORTER:  Yes.  Just a moment.

16                  (Requested material was read back.)

17             MS. CANTRELL:  Thank you very much.

18             THE COURT REPORTER:  You're welcome.

19   BY MS. GUMAPAC:

20        Q.   As to Boeing specifically, you wouldn't have

21   any recollection of any harnesses Ms. Von Dell would

22   have worked on as to Boeing, correct?  Let me rephrase.

23   That was a bad question.  I'll strike that.

24             Do you have any specific personal knowledge

25   of Ms. Von Dell ever working on a harness for Boeing?

MARK SARGENT

Page 69

1     A.   That's pretty -- she worked in that area.

2  She would have worked on Boeing wire harnesses.

3     **Q.  But do you have any specific recollection of**

4  **her working on Boeing harnesses?**

5       MR. McDOWELL:  Objection.  Form.

6       MS. PARKER:  Calls for speculation.  Lacks

7  foundation.

8       THE WITNESS:  No.

9  BY MS. GUMAPAC:

10     **Q.  After the harnesses were put together, what**

11  **was the next step in the production line?**

12     A.   They would bag.  They would tag them with the

13  part numbers, model aircraft, and they would put them

14  in a bag.

15       MS. PARKER:  Move to strike.  Speculative.

16       THE WITNESS:  A clear, plastic bag.

17  BY MS. GUMAPAC:

18     **Q.  Other than the new harness work that Ms. Von**

19  **Dell -- that you believe Ms. Von Dell performed, do you**

20  **know if she did anything else in the plant?**

21     A.   I don't.

22     **Q.  Was Ms. Von Dell, if you know, assigned a**

23  **certain seat in the electrical department?**

24     A.   I do not.

25     **Q.  Do you know if the electrical department had**

MARK SARGENT

Page 66

1    **harnesses?**

2         MS. PARKER:  Vague.  Ambiguous.  Calls for

3    speculation.  Lacks foundation.

4         THE WITNESS:  They had a schematic on a piece of

5    4 by 8 plywood.  Actually, in some cases there were

6    multiple sheets of plywood with a schematic that would

7    cover the whole thing.  It's basically a picture of

8    what you are to build.  There are areas on that

9    schematic that tell you what wire to use, where to

10   terminate that wire, what plug to use.  It's kind of

11   a -- it's a roadmap of how to build that harness.  And

12   they built that harness over the picture on that

13   schematic.

14   BY MS. GUMAPAC:

15       **Q.   Now, these harness assemblers, would they**

16   **need special training or schooling to do their job?**

17       A.   On-the-job training.

18        MS. PARKER:  Same objections.  I'm sorry.  Can

19   we go off the record?

20        MS. GUMAPAC:  Off the record.

21            (Off the record.)

22   BY MS. GUMAPAC:

23       **Q.   Sir, back on the record.  Just as a**

24   **clarification, you didn't work in the electrical**

25   **department, correct?**

MARK SARGENT

1      A.   Correct.

2      Q.   You wouldn't have any specific knowledge as

3   to how the electrical department assembled these

4   harnesses, correct?

5      A.   No.

6          MS. PARKER:  Is that a correct statement that

7   she just said?

8          THE WITNESS:  That is correct.

9   BY MS. GUMAPAC:

10     Q.   So all the stuff that you're stating now is

11  just based on your observations, not to actual personal

12  knowledge; is that correct?

13         MR. McDOWELL:  Object to the form.

14         THE WITNESS:  Yes.

15         MS. PARKER:  Objection.  Misleading testimony.

16  BY MS. GUMAPAC:

17     Q.   Do you know the manufacturers of any of the

18  wiring used on these harnesses?

19         MS. PARKER:  Calls for speculation.

20         THE WITNESS:  The names on the boxes of the

21  wire -- Teledyne was one, Thermo Electric, and, I

22  believe, there was Tensolite.

23  BY MS. GUMAPAC:

24     Q.   Now, all these manufacturers of wiring that

25  you just named, do you know specifically which wires

MARK SARGENT

1        A.    That's correct.

2        Q.    **You never worked in the department with**

3  **Mrs. Von Dell, correct?**

4        A.    Correct.

5        Q.    **And you never worked alongside of Mrs. Von**

6  **Dell at Rohr, correct?**

7        A.    Correct.

8        Q.    **And you have no personal knowledge regarding**

9  **a particular engine on which any harness she worked**

10  **would be installed; is that correct?**

11        A.    Correct.

12        Q.    **Therefore, you have no personal knowledge**

13  **regarding a particular aircraft that any harness**

14  **Ms. Von Dell worked on would eventually be installed,**

15  **correct?**

16        A.    Correct.

17        Q.    **You have no information regarding any**

18  **products, materials, or equipment Ms. Von Dell used on**

19  **any particular harness, correct?**

20        A.    Correct.

21        Q.    **And you have no personal knowledge regarding**

22  **any products, materials, or equipment that Ms. Von Dell**

23  **used at any time at Rohr, correct?**

24        A.    I don't understand the question because we've

25  been talking about wires.  She worked in that area.  I

Case MDL No. 875 Document 7992-5 Filed 10/28/11 Page 16 of 26

# EXHIBIT C

Jeffrey B. Simon (CA, NY, TX)
Ron C. Eddins (CA, TX)
David C. Greenstone (CA, NY, TX)
Jennifer L. Bartlett (CA)
Christopher J. Panatier (CA, PA, TX)
Brian P. Barrow (CA)
ASSOCIATES
Erin Anderson Nowell (TX)
Lisa M. Barley (CA)
Jordan Blumenfeld-James (CA)
Benjamin D. Braly (CA, FL, TX)
Laura M. Cabutto (TX)
Clay B. Carroll (CA, TX)
Rebecca A. Cucu (CA)

Jessica M. Dean (CA, TX)
Tyson B. Gamble (CA)
Robert A. Green (CA)
Ethan A. Horn (CA)
Heather L. Long (TX, NM)
Darren P. McDowell (TX)
Conor R. Nideffer (CA)
Rachel C. Perkins (TX)
Kathryn A. Pryor (TX)
Stuart J. Purdy (CA)
Lisa White Shirley (FL, LA, TX)
Dana C. Simon (TX)
J. Bradley Smith (TX)
Jay E. Stuemke (TX)



SIMON, EDDINS & GREENSTONE, LLP

PLEASE RESPOND TO THE TEXAS OFFICE

August 9, 2011

**VIA E-MAIL &**
**FACSIMILE (302) 654-0245**
Christian J. Singewald
White and Williams LLP
824 North Market Street, Suite 902
Wilmington, DE 19899-0709

Re:   *Bonnie Von Dell, et al. v. 3M Company, et al*; CA No. N10C-09-124 ASB

Dear Mr. Singewald:

This is a response to your letter to Rachel Perkins of August 1, 2011. You complain that the subject areas upon which we will examine Boeing's corporate representative are not sufficiently specific. We have made every effort to obtain reasonable discovery from Boeing to which we are entitled and have only been met with constant delay, undo resistance and incomplete discovery. I hope that this communication will provide you with very clear and understandable terms under which we can conduct discovery on your client, Boeing, without any further delay.

While I do not agree that any of the subject areas laid out by us were difficult to understand or so vague as to induce paralysis on the part of Boeing or its lawyers, I will narrow some of the areas for examination where possible and also provide clarifications based on your objections as stated in your letter.

**Subject Area 1:**

You are aware, I trust, that proving defendant's knowledge of (or access to) the hazards of asbestos is a key component of plaintiff's case. For over 30 years of asbestos litigation, one of the most basic and straightforward ways that a defendant's knowledge or access to information has been established is by proving membership in organizations known to provide such information to its members. Hundreds of defendants have offered witnesses to speak on this issue and I am unaware of any exceptional feature possessed by Boeing such that it is unable to respond. Each of the organizations listed in this subject

TEXAS OFFICE:
3232 MCKINNEY AVENUE, SUITE 610
DALLAS, TEXAS 75204
TEL: 214.276.7680
FAX: 214.276.7699

ATTORNEYS & COUNSELORS AT LAW
www.seglaw.com

CALIFORNIA OFFICE:
301 E. OCEAN BLVD., SUITE 1950
LONG BEACH, CALIF. 90802
TEL: 562.590.3400
FAX: 562.590.3412

Christian J. Singewald
August 9, 2011
Page 2

Re:   *Von Dell v. Boeing Company*

area have supplied information on asbestos hazards to its members. These organizations were not chosen at random.

You object that we used the word "discussed" in our discovery and that word is "unintelligible" to you. Please allow us to rephrase the subject area as follows:

"1)   Defendant's memberships in any of the below trade organizations who disseminated information (trade magazines, periodicals, leaflets, meeting minutes, etc.) regarding the hazards of asbestos in human beings, exposure prevention methods, and/or regulations pertaining to asbestos exposure.

(a)-(p) [as originally listed]"

**Subject Area 2:**

Plaintiff will restate this subject area as follows:

"2)   The subject matter, content and breadth of any contracts between Defendant and Rohr Industries Aerospace Assembly Plant in Auburn, Washington (Country of United States, Planet Earth, Milky Way Galaxy, The Universe) between 1978 and 1992 pertaining to the manufacture of aircraft engines and wiring harnesses for use therein. For purposes of this area, the subject aircraft shall be limited to the Boeing 707, 727, 737 and AWACS."

**Subject Area 3:**

Boeing complains that at least some information sought by this subject area could potentially "reveal proprietary information and that public disclosure of such information could cause competitive harm to Boeing." Plaintiff has already executed a protective order to protect Boeing from any such harm, however, remote it may be, and would agree to seal any portions of the witness's transcript shown by Boeing to contain "proprietary information." Plaintiff will restate this subject area as follows:

"3)   The meaning, explanation of and expounding upon specifications, drawings, plans, materials lists, etc. for Boeing aircraft or aircraft components assembled or manufactured at the Rohr Industries Aerospace Assembly Plant in Auburn, Washington between 1978 and 1992. For purposes of this area, the subject aircraft shall be limited to the Boeing 707, 727, 737, 747 and 707AWACS."

Christian J. Singewald
August 9, 2011
Page 3

Re:    *Von Dell v. Boeing Company*

**Subject Area 4:**

Plaintiff will restate this subject area as follows:

"4)    Defendant's use of warnings or labels pertaining to asbestos hazards on any parts or components of Boeing aircraft."

You will note that this request is not narrowed to specific aircraft as Boeing's use of asbestos warnings in any context, would be relevant to its knowledge of asbestos hazards while also illuminating Boeings use or failure to use reasonable or ordinary care.

**Subject Area 5:**

As discussed above, a Defendant's knowledge of asbestos hazards is one of the most relevant, and thereby discoverable issues in an asbestos case. Boeing states that this topic "purports to require Boeing to canvass hundreds or thousands of current or former employees…" Boeing knows that it need not canvass its entire workforce through time in memorial in order to address this area. Boeing could easily determine how many employees were working in the areas of safety, health, workplace regulations, industrial hygiene and/or occupational medicine, determine who among such people maintained responsibility for the various areas and offer them for this part of the deposition. Boeing further understands that under Rule 30(b)(6), it is charged with providing witnesses who have conducted any necessary research so as to be able to provide substantive information on each area of inquiry. Plaintiff understands that a witness may not have had direct personal knowledge of an issue, but that a witness may conduct an investigation so as to assemble the requested facts.

Plaintiff will attempt to narrow this request to unburden Boeing in producing a witness for this area:

"5)    Defendant's knowledge of hazards of asbestos in human beings, exposure prevention methods, and/or regulations pertaining to asbestos exposure to the extent that such issues were addressed amongst Boeing employees with responsibilities in the areas of safety, health, workplace regulations, industrial hygiene and/or occupational medicine. For purposes of this area, the relevant time period is 1960-1992. "

**Subject Area 6:**

Plaintiff will restate this subject area as follows:

Christian J. Singewald
August 9, 2011
Page 4

*Re: Von Dell v. Boeing Company*

"6)     The presence of any Boeing employees at the Rohr Industries Aerospace
        Assembly Plant in Auburn, Washington at any time between 1978 and
        1992, whose purpose it was to assist in, oversee, supervise, offer input on
        or be otherwise engaged in the assembly and/or manufacture of aircraft. "

**Subject Area 7:**

Whether or not a defendant who utilized asbestos in its products conducted
research or testing as to the potential hazards of those products is plainly relevant and
discoverable. The request assumes nothing about the hazards of asbestos. Plaintiff seeks
to inquire of Boeing the extent to which any research or testing was done on any asbestos
used by Boeing in its aircraft. If Boeing's answer is "we didn't do any because we didn't
think it was dangerous," then that is Boeing's answer. Either way, Plaintiff is still entitled
to conduct inquiry on this subject.

Plaintiff will restate this subject area as follows:

"7)     Any research or testing conducted by Boeing on the subject of the
        potential hazards of asbestos generally and as incorporated into its aircraft
        parts and components, and any warnings or precautions provided by
        Boeing to customers, mechanics, technicians or assemblers pertaining to
        asbestos hazards, if any."

**Subject Area 8:**

While Mrs. Von Dell may not have been exposed to all asbestos products in use
by Boeing at all times (and she certainly wasn't), there are various other reasons why the
span of years in which Boeing incorporated asbestos into parts or components used in its
aircraft. It is entirely relevant to issues of negligence, product defects, the use of potential
safer alternatives, etc. This request is *not* limited to engines or wiring harnesses as used
by Mrs. Von Dell as Boeing's use of asbestos in some areas and not in others may speak
to its failure to exercise reasonable care.

Plaintiff will restate this subject area as follows:

"8)     The span of years during which Boeing incorporated asbestos-containing
        parts or components into its aircraft, including but not limited to the
        Boeing 707, 727, 737, 747 and 707AWACS."

Christian J. Singewald
August 9, 2011
Page 5

Re:     *Von Dell v. Boeing Company*

**Subject Area 9:**

> Plaintiff will restate this subject area as follows:

> "9)     The rationale (i.e., engineering reasons, cost reasons, etc.) for the specification or use of asbestos-containing wires and/or cables in the engines and wiring harnesses of the Boeing 707, 727, 737, 747 and 707AWACS."

**Subject Area 10:**

> Plaintiff will restate this subject area as follows:

> "10)     Defendant's internal correspondence addressing the potential health hazards, specific to asbestos, posed by the installation, construction and/or maintenance of wire, cable or wire harnesses from 1960-the present."

The time period of this request extends to the present as any discussion of the hazards of asbestos from wire/cable, etc. would be relevant to causation in the case.

**Subject Area 11:**

> Plaintiff withdraws this subject area.

**Subject Area 12:**

Citations or violations of various rules and regulations pertaining to asbestos are relevant, regardless of time period and location for numerous reasons such as: notice of hazards and/or knowledge of asbestos hazards before and during the time Mrs. Von Dell worked, Boeing's failure to address potential asbestos hazards in some instances and not in others, establishing Boeing's general conduct toward the issue of asbestos, actions or omissions to act in response to violations and citations. By way of simple example, a citation having to do with the presence of asbestos after 1978 would be probative that asbestos was present, to the extent such a fact is denied by Boeing.

> Plaintiff will restate this subject area as follows:

> "12)     Citations and/or violations of municipal, state and/or federal regulations by Boeing pertaining to asbestos between the years of 1960 until 1986."

Christian J. Singewald
August 9, 2011
Page 6

*Re:    Von Dell v. Boeing Company*


**Subject Area 13:**

   Plaintiff will restate this subject area as follows:

   "13)   Defendant's document retention policy as it applies to aircraft
          specifications, drawings and materials lists, corporate memoranda
          pertaining to the subject of asbestos in any context (use of, hazards of,
          purchase of), and documents which are the subject of litigation.

**Subject Area 14:**

   With regard to our inquiry on the issue of product testing, Defendant notes an
objection to this request that it is not specific to the locations where Mrs. Von Dell
worked. Such specificity is not required in any context, as the ability for wiring and cable
to release asbestos and the levels of release are relevant in the first instance. It is a
separate issue as to whether or not Boeing is in possession of air monitoring or asbestos
testing for the specific locations where Mrs. Von Dell worked, and will inquire as to that
information as well.

   Plaintiff will restate this subject area as follows:

   "14)   The results of any studies, tests or evaluations of the potential or actual
          asbestos content and/or asbestos fiber release from wire or cable
          containing asbestos, received from any source."

**Subject Area 15:**

   Plaintiff withdraws this subject area as it is adequately addressed by Subject Area
12.

**Subject Area 16:**

   Plaintiff withdraws this subject area.

**Subject Area 17:**

   Plaintiff withdraws this subject area.

   Lastly, pursuant to Ms. Perkins request on July 22, please produce a
representative that is able to interpret and explain the documents that Boeing produced in

Christian J. Singewald
August 9, 2011
Page 7

Re:     *Von Dell v. Boeing Company*

response to discovery requests in this case. The representative should be able to testify about the contents of the documents, the origin of each document, and the date of each document. The representative should also be able to testify about the process by which these documents were selected for production, and about any other documents that were requested but not produced for whatever reason.

As you can see from the above, we have made a genuine effort to streamline our areas of inquiry for the deposition of Boeing's corporate representative. I am hopeful that you will provide this deposition at your earliest possible convenience. If there are areas where you still have objections, I recommend they be made in the context of the deposition as it is difficult to predict exactly what questions will be asked and what answers will be given. Additionally, please contact myself or Rachel to discuss these issues by phone if you believe it will help to resolve any conflicts.

Very truly yours,

Chris Panatier

CP/cbm

Case MDL No. 875 Document 7992-5 Filed 10/28/11 Page 24 of 26

# EXHIBIT D

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF DELAWARE

3

4     BONNIE and JON VON DELL,     )

                                   )

5            Plaintiff,            )

                                   ) Civil Action No.

6     v.                           ) 1:11-CV-00786-SLR

                                   )

7     BOEING, et al.,              )

                                   )

8            Defendants.           )

                                   )

9

10

11           Teleconference taken in the above matter

12    pursuant to notice before Ellen Corbett Hannum,

13    Registered Merit Reporter, in the law offices of Fox

14    Rothschild LLP, 919 Market Street, Wilmington, Delaware,

15    on Wednesday, October 19, 2011, beginning at

16    approximately 2:00 p.m., there being present:

17

18    BEFORE:  THE HONORABLE VINCENT J. POPPITI, SPECIAL MASTER

19

20            CORBETT REPORTING - A VERITEXT COMPANY

21               Registered Professional Reporters

22               300 Delaware Avenue - Suite 815

23                  Wilmington, DE 19801

24                     302-571-0510

Page 21

```
 1    mistaken.  Therefore, when Mr. Sargent testified that

 2    there were AWACS at the facility --

 3                    SPECIAL MASTER POPPITI:  Right.

 4                    MR. ROSS:  -- Boeing was put in a

 5    position at that point to guess or speculate about what

 6    exactly Mrs. Von Dell was claiming.  His testimony did

 7    not clarify, but it rather muddied the waters.

 8                    SPECIAL MASTER POPPITI:  Let me ask,

 9    Counsel, what difference -- you seem to suggest that the

10    whole nature -- and I think that's the language that you

11    used -- the nature of her cause of action, if you will,

12    changed when plaintiffs' counsel specifically identified

13    or clarified topics that included AWACS engines.

14                    My question is this -- and here is the

15    difficulty I am having.  If Mrs. Von Dell said AWACS, and

16    you concede that that would have given you notice, and

17    she didn't, but her designated witness for product

18    identification did, what's the difference?

19                    MR. ROSS:  The difference is that we

20    have got conflicting testimony.  The difference is that

21    there is a difference between an offhand reference in a

22    deposition that conflicts with the testimony of an

23    asbestos plaintiff and a reference in a revised 30(b)(6)

24    notice which functionally, in my opinion, is a revision
```