ADRMOP

# U.S. District Court
# California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:11-cv-05256-SBA

Spilmon et al v. General Electric Company
Assigned to: Hon. Saundra Brown Armstrong
Case in other court: Superior Court of CA, County of San Francisco, CGC-11-275897
Cause: 28:1441 Petition for Removal- Asbestos Litigation

Date Filed: 10/28/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Marie Spilmon**
*as Wrongful Death Heir, and Successor-in-Interest Marion Spilmon, and as Legal Heir of Marion Spilmon*

represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marion Spilmon**
*Deceased*

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Genevieve Spilmon**
*as Legal Heir of Marion Spilmon*

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mark Spilmon**
*as Legal Heir of Marion Spilmon*

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lia Burris**
*as Legal Heir of Marion Spilmon*

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Martin Spilmon**
*as Legal Heir of Marion Spilmon*

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rita Lavoy**                                                 represented by **David R. Donadio**
*as Legal Heir of Marion Spilmon*                                              (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joel Spilmon**                                              represented by **David R. Donadio**
*as Legal Heir of Marion Spilmon*                                              (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*


V.

**Defendant**

**General Electric Company**                                  represented by **Charles Todd Sheldon**
                                                                               Sedgwick LLP
                                                                               One Market Plaza
                                                                               Steuart Tower, 8th Floor
                                                                               San Francisco, CA 94105
                                                                               415-781-7900
                                                                               Fax: 415-781-2635
                                                                               Email:
                                                                               charles.sheldon@sedgwicklaw.com
                                                                               *LEAD ATTORNEY*
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Allison Michele Low**
                                                                               Sedgwick LLP
                                                                               One Market Plaza
                                                                               Steuart Tower, 8th Floor
                                                                               San Francisco, CA 94105-1008
                                                                               415-781-7900
                                                                               Fax: 415-781-2635
                                                                               Email: allison.low@sedgwicklaw.com
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Derek S. Johnson**
                                                                               Sedgwick LLP
                                                                               One Market Plaza
                                                                               Steuart Tower, 8th Floor
                                                                               San Francisco, CA 94105
                                                                               415-781-7900
                                                                               Fax: 415-781-2635
                                                                               Email:
                                                                               derek.johnson@sedgwicklaw.com
                                                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
|            |   |             |

| 10/28/2011 | 1 | NOTICE OF REMOVAL from Superior Court of CA, County of San Francisco. Their case number is CGC-11-275897. (Filing fee $350 receipt number 34611006339). Filed byGeneral Electric Company. (jlm, COURT STAFF) (Filed on 10/28/2011) (Entered: 10/28/2011) |
| 10/28/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 2/1/2012. Case Management Conference set for 2/8/2012 03:00 PM. (Attachments: # 1 Standing Order - SBA)(jlm, COURT STAFF) (Filed on 10/28/2011) (Entered: 10/28/2011) |
| 10/28/2011 | 3 | Declination to Proceed Before a U.S. Magistrate Judge by General Electric Company. (jlm, COURT STAFF) (Filed on 10/28/2011) (Entered: 10/28/2011) |
| 10/28/2011 | 4 | Certificate of Interested Entities, filed by General Electric Company (jlm, COURT STAFF) (Filed on 10/28/2011) (Entered: 10/28/2011) |
| 10/28/2011 | 5 | NOTICE of Appearance of Charles T. Sheldon, Derek S. Johnson as Counsel, filed by General Electric Company (jlm, COURT STAFF) (Filed on 10/28/2011) (Entered: 10/28/2011) |
| 10/28/2011 | 6 | NOTICE of Pendency of Other Actions, filed by General Electric Company (jlm, COURT STAFF) (Filed on 10/28/2011) (Entered: 10/28/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/01/2011 13:43:39 | | |
| PACER Login: | sd0076 | Client Code: | 05045-079666 |
| Description: | Docket Report | Search Criteria: | 4:11-cv-05256-SBA |
| Billable Pages: | 2 | Cost: | 0.16 |

DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON✤PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato CA 94948-6169
(415) 898-1555

Attorneys for Plaintiffs

**ENDORSED**
**FILED**
San Francisco County Superior Court

SEP 1 3 2011

CLERK OF THE COURT
BY: PARAM NATT
Deputy Clerk

ASBESTOS
CASE MANAGEMENT CONFERENCE

AUG 1 6 2012 1:30 PM

DEPARTMENT   220

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

MARIE SPILMON, as Wrongful Death
Heir, and as Successor-in-Interest to
MARION SPILMON, Deceased; and
GENEVIEVE SPILMON, MARK
SPILMON, LIA BURRIS, MARTIN
SPILMON, RITA LAVOY, and JOEL
SPILMON, as Legal Heirs of MARION
SPILMON, Deceased,

        Plaintiffs,

vs.

GENERAL ELECTRIC COMPANY;
Defendants as Reflected on Exhibit 1
attached to the Summary Complaint
herein; and DOES 1-8500.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ASBESTOS**
No.

**C G C - 1 1 - 2 7 5 8 9 7**

COMPLAINT FOR SURVIVAL,
WRONGFUL DEATH - ASBESTOS

     1.     MARION SPILMON (hereinafter and in the Complaint referred to as "decedent")

died on October 19, 2010, as a result of the asbestos-related diseases set forth on Exhibit A.

     2.     MARIE SPILMON is the Successor-in-Interest to decedent.

///

///

///

THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158

BRAYTON✤PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\110221\pld\cmp-wdsrv2Met.wpd

1

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

3.    The heirs-at-law of decedent and their relationships to the decedent are:

| NAME | AGE | RELATIONSHIP TO DECEDENT |
|------|-----|--------------------------|
| MARIE SPILMON | 51 Years | Daughter |
| GENEVIEVE SPILMON | Over 18 | Spouse |
| MARK SPILMON | Over 18 | Son |
| LIA BURRIS | Over 18 | Daughter |
| MARTIN SPILMON | Over 18 | Son |
| RITA LAVOY | Over 18 | Daughter |
| JOEL SPILMON | Over 18 | Son |

4.    Plaintiffs bring this action as specified in Section 377.60 of the Code of Civil Procedure as decedent's legal heirs.

5.    At all times prior to his death, decedent was a faithful and dutiful spouse to plaintiff GENEVIEVE SPILMON and parent to plaintiff children.

6.    Plaintiffs' claims are as set forth in ©**Brayton❖Purcell Master Complaint for [Survival] [Loss of Consortium] Wrongful Death** (hereinafter "Master Complaint") - Asbestos No. 828684 filed March 3, 2003, in San Francisco Superior Court.  A copy of the Master Complaint and General Order No. 55 may be obtained upon request from Brayton❖Purcell, and designated portions of the Master Complaint are incorporated by reference herein pursuant to the authority conferred by General Order No. 55.  Plaintiffs' claims are as set forth in said Master Complaint against defendants herein as follows:

///

///

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

**DEFENDANTS* ON EXHIBITS:**

| Cause of Action | B | B-1 | C | D | E | F | G | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First (Negligence-Survival) | ☒ | ☐ |  | ☐ | ☐ | ☐ | ☐ | ☐ |  |  | ☐ | ☐ | ☐ |  |
| Second (Products Liability-Survival) | ☒ | ☐ |  |  |  |  | ☐ |  |  |  | ☐ | ☐ |  |  |
| Third (False Representation) As to Defendant FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) only. | ☒ | ☐ |  |  |  |  | ☐ |  |  |  |  |  |  |  |
| Fourth (Loss of Consortium) | ☐ | ☐ | ☐ | ☐ | ☐ |  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |  |
| Fifth (Negligence-Wrongful Death) | ☒ | ☐ | ☐ | ☐ |  |  | ☐ | ☐ |  |  | ☐ | ☐ | ☐ |  |
| Sixth (Products Liability-Wrongful Death) | ☒ | ☐ |  |  |  |  | ☐ |  |  |  | ☐ | ☐ |  |  |
| Seventh (Premises Owner/Contractor Liability) |  | ☐ | ☒ | ☐ |  |  | ☐ |  |  |  |  |  |  |  |
| Eighth, Ninth, Tenth (Unseaworthiness, Negligence [Jones Act],Maintenance and Cure) |  |  |  |  | ☒ |  |  |  |  |  |  |  |  |  |
| Eleventh (Longshore and Harbor Workers Compensation Act [LHWCA]) |  |  |  |  | ☐ |  |  |  |  |  |  |  |  |  |
| Twelfth, Thirteenth (F.E.L.A.) |  |  |  |  |  | ☐ |  |  |  |  |  |  |  |  |
| Fourteenth, Fifteenth (Respiratory Safety Devices) |  |  |  |  |  |  | ☐ |  |  |  |  |  |  |  |
| Sixteenth, Seventeenth (Brake Shoe Grinding) |  |  |  |  |  |  | ☐ |  |  |  |  |  |  |  |
| Eighteenth (Concert of Action) |  |  |  |  |  |  |  | ☒ |  |  |  |  |  |  |
| Nineteenth (Fraud, Deceit/Negligent Misrepresentation) |  |  |  |  |  |  |  |  | ☒ |  |  |  |  |  |
| Twentieth (Fraud and Deceit/Concealment) |  |  |  |  |  |  |  |  | ☒ |  |  |  |  |  |
| Twenty-First (Fraud and Deceit/Intentional Misrepresentation) |  |  |  |  |  |  |  |  |  | ☒ |  |  |  |  |
| Twenty-Second (Fraud/Deceit - Kent) |  |  |  |  |  |  |  |  |  |  | ☐ |  |  |  |
| Twenty-Third (Aiding/Abetting Battery - Met Life) |  |  |  |  |  |  |  |  |  |  |  |  |  | ☒ |

*and their alternate entities as set forth in the Master Complaint or on any Exhibit.

7.    Decedent's asbestos-related injury, date of diagnosis, employment status, and history of exposure to asbestos are as stated on Exhibit A.

8.    Plaintiffs hereby amend the Master Complaint on file herein, to incorporate a new Twenty-Third Cause of Action, set forth below, specially plead against the defendant listed on Exhibit N, namely METROPOLITAN LIFE INSURANCE COMPANY.  (Plaintiffs are in the process of amending the Master Complaint herein and will include this new Cause of Action in said amendment.)

"TWENTY-THIRD CAUSE OF ACTION
Aiding and Abetting Battery
[Against Metropolitan Life Insurance Company
and Does 7501-7900, Inclusive]

AS AND FOR A FURTHER, TWENTY-THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF(S) COMPLAINS OF DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY, DEFENDANTS ON EXHIBIT N, DOES 7501-7900, THEIR ALTERNATE ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

239.    Plaintiff incorporates herein by reference, as though fully set forth hereat, each and every allegation of the First through Third and Eighteenth, Nineteenth, Twentieth, and Twenty-First Causes of Action as though fully set forth herein.  (As used throughout this cause of action, 'plaintiff' refers to all named plaintiffs and/or all named decedents from whom the named plaintiffs' injuries may derive.)

240.    This cause of action is for the aiding and abetting of battery by METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

241.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned defendant MET LIFE was and is a corporation organized and existing under and by virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is doing

1   business in the State of California, and regularly conducted or conducts business in the County

2   of San Francisco, State of California.  At times relevant to this cause of action, MET LIFE was

3   an insurer of J-M.

4       242.  Plaintiff, was exposed to asbestos-containing dust created by the use of the

5   asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the

6   asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease

7   and injuries.

8       243.  Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-

9   related disease in Canadian mines and mills, including those of J-M.  Those studies revealed

10   that miners and mill workers were contracting asbestosis at relatively low levels of dust.

11   McGill University, which conducted the studies, sought permission from MET LIFE to publish

12   the results but they were never published.  MET LIFE prepared its own report of these studies.

13       244.  Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S.

14   plants manufacturing asbestos-containing products, including a J-M plant.  Those studies

15   showed that workers in substantial numbers were contracting asbestosis, at levels less than what

16   became the Threshold Limit Value ('TLV") of 5mppcf.  The MET LIFE report was never

17   published or disseminated except to plant owners, including J-M.

18       245.  In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,

19   New Jersey.  Results were consistent with those of the Canadian and previous U.S. plant

20   studies.  They were never published. .

21       246.  In 1934, J-M and others whose plants MET LIFE had studied agreed with MET

22   LIFE that it should issue a report of its studies.

23       247.  MET LIFE submitted a draft of its report to J-M.  J-M requested, for legal and

24   business reasons, that certain critical parts of the draft be changed.  MET LIFE's official in

25   charge was Lanza.  MET LIFE through Lanza did make changes that J-M requested, including:

26       (a)    Deletion of MET LIFE's conclusion that the permissible dust level for asbestos

27           should be less than that for silica;

28   ///

     (b)    Addition of the phrase that asbestosis clinically appeared to be milder than

           silicosis.

The report, thus altered, was published in 1935.  It was misleading, and intentionally so,

because it conveyed the incorrect propositions that asbestosis was a less serious disease process

than silicosis and that higher levels of asbestos dust could be tolerated without contracting

diseases than was the case for silica dust.

    248.  MET LIFE had a close relationship with J-M.  It invested money in J-M.  It

provided group health and life insurance to J-M.  MET LIFE IN 1934 agreed to supply

industrial hygiene services to J-M, including dust counts, training employees to monitor dust

levels, examining employees, and recommending protective equipment.  MET LIFE and Lanza

were viewed as experts on industrial dusts.

    249.  In 1933, MET LIFE through Lanza issued the following advices to J-M:

     (a)    Disagreeing with the recommendation of a J-M plant physician, MET LIFE

           advised against warning workers of the fact that asbestos dust is hazardous to

           their health, basing its advice in view of the extraordinary legal situation;

     (b)    When the plant physician judged the best disposition of an employee with

           asbestosis was to remove him from the dust, MET LIFE advised instead that

           disposition should depend on his age, nature of work and other factors and to

           leave him alone if he is old and showing no disability, for, MET LIFE stated,

           economic and production factors must be balanced against medical factors.

    250.  J-M followed the MET LIFE advices and did not warn its workers, including

plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying

workers of their disease.

    251.  In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation

("AHF").  One of the AHF purposes was to develop standards for dust levels that would serve

as a defense in lawsuits and workers' compensation claims.

    252.  MET LIFE funded partially another study that tentatively recommended in 1938 a

TLV for asbestos dust of 5mpccf, the same as for silica dust.  MET LIFE was aware of data

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1    from its own, unpublished reports that showed that level was too high for asbestos dust. MET

2    LIFE nonetheless promoted that TLV as proper.

3        253. In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the

4    AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.

5    That report showed that workers exposed to less than the recommended maximum levels of

6    dust were developing disease. MET LIFE was a member of the IHF and Lanza was on its

7    medical committee. The Hemeon report, which was supplied to J-M and other owners, never

8    was published.

9        254. In 1936, J-M and other asbestos companies agreed with a leading medical research

10   facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the

11   others retained control over publication of the results. In 1943 Saranac's Dr. Leroy Gardner, in

12   charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long

13   fiber asbestos contracted cancer.

14       255. Dr. Gardner died in 1946. J-M and other companies wanted parts of the Saranac

15   results published and enlisted the assistance of MET LIFE's Lanza. J-M and other companies

16   decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as

17   Saranac's critique of existing dust standards. Lanza directed Saranac to delete the offending

18   materials. Saranac did so, and the altered report was published in 1951 by Saranac's Dr.

19   Vorwald, in the *AMA Archives of Industrial Hygiene*.

20       256. Lanza left MET LIFE at the end of 1948, and took a position at New York

21   University, funded by MET LIFE. He continued to misrepresent that asbestos does not cause

22   cancer into the 1950s.

23       257. The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE

24   official was on its medical committee, through Drs. Braun and Truan conducted a study of

25   Canadian miners. The original report, in 1957, found an increased incidence of lung cancer in

26   persons exposed to asbestos. The sponsors, including J-M, caused those findings to be stricken,

27   and the report published in 1958 contained the false conclusion that asbestos exposure alone did

28   not increase the risk of lung cancer.

1    258.  The false and misleading reports that a link between asbestos exposure and cancer

2   was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low

3   or zero.

4    259.  J-M not later than 1933 was inflicting asbestos dust on its workers in its plants

5   knowing that the dust was hazardous and was causing workers to contract disease that could

6   and would disable and kill them.  As MET LIFE advised, J-M did not warn its workers of the

7   hazard.  J-M committed battery on workers in its plants, including plaintiffs' decedent, by that

8   conduct.

9    260.  MET LIFE knew that J-M's conduct constituted a breach of its duties to its

10   workers.  MET LIFE gave substantial assistance to J-M in committing batteries on its workers,

11   including plaintiff's decedent, through MET LIFE's conduct described above, including by:

12   (a)   Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in

13           view of the extraordinary legal situation, such that J-M did not warn its workers,

14           including plaintiff's decedent;

15   (b)   Deleting the findings of its own draft report that the allowable limits for asbestos

16           dust should be less than those for silica dust, and promoting a false and unsafe

17           TLV which specified maximum levels of silica dust, and promoting a false and

18           unsafe TLV which specified maximum levels of dust for workers, including

19           plaintiffs' decedent, which MET LIFE knew was wrong through its own studies;

20   (c)   Advising J-M to keep certain workers continuing to work at dusty areas in the

21           plant even after J-M was aware that their lungs showed asbestos-induced

22           changes, lest other workers including plaintiffs' decedent be alerted to the

23           dangers of working in the dust.

24    WHEREFORE, plaintiff prays judgment as is hereinafter set forth."

25   ///

26   ///

27   ///

28

1       9.    Plaintiffs do not make a claim for either false representation or punitive

2   damages against any named defendant herein, except as against defendant FOSTER WHEELER

3   LLC (FKA FOSTER WHEELER CORPORATION).

4   Dated: 9\11\11

                        BRAYTON❖PURCELL LLP

6                          By:

7                           David R. Donadio
                        Attorneys for Plaintiffs

# EXHIBIT 1

1

## **EXHIBIT 1 - LIST OF DEFENDANTS**

2

3  GENERAL ELECTRIC COMPANY
4  FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION)
   METROPOLITAN LIFE INSURANCE COMPANY
5  HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.)
   WESTERN MacARTHUR COMPANY
6  MacARTHUR COMPANY
   WESTERN ASBESTOS COMPANY
7  KAISER VENTURES LLC
   YARWAY CORPORATION
8  ATLAS VALVE COMPANY, INC.
   and DOES 1-8500,

9
       Defendants.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT A

EXHIBIT A

Decedent's exposure to asbestos and asbestos-containing products occurred at various locations both inside and outside the State of California, including but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Navy | Naval Station, Great Lakes, IL | Fireman | 4/1944 - 8/1944 |
| | PICKING (DD-685) | | 8/1944 - 12/1945 |
| U. S. Navy | SEIVER (APA-233) | Machinist Mate | 1/1946 - 6/1946 |
| | Hunters Point Naval Shipyard, San Francisco, CA | | |
| U. S. Navy | Various locations, including, but not limited to: | Machinist Mate | 3/1/1950-9/30/1969 |
| | GENERAL J. C. BRECKINRIDGE (AP-176) | | 3/24/1950-4/1/1950 |
| | Naval Supply Center, Pearl Harbor, HI | | 3/1950-7/1950 |
| | BRUSH (DD-745) | Machinist Mate (2nd Class) | 7/1950-12/1950 |
| | LAFFEY (DD-724) | Machinist Mate (2nd Class) | 1/1951-10/1953 |
| | ARD-16 | | 1/1954-3/1954 |
| | Boston Naval Shipyard, Boston, MA | | |
| | Naval Air Station, Newport, RI | | |
| | CORAL SEA (CVA-43) | | 4/1954-5/1956 |
| | Norfolk Naval Shipyard, Portsmouth, VA | | |

///

EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1                              EXHIBIT A (cont'd.)

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Navy (cont'd.) | Various locations, including, but not limited to: | Machinist Mate | 3/1/1950-9/30/1969 |
|  | Naval Station Great Lakes, IL |  | 6/1956-2/1960 |
|  | KAWISHIWI (AO-146) | Chief Petty Officer, Machinist Mate Master Chief | 4/1960-1/1966 |
|  | Pearl Harbor Naval Shipyard, Honolulu, HI |  |  |
|  | Naval Repair Facility, Subic Bay, Philippines |  |  |
|  | Ports in Vietnam and the Philippines |  |  |
|  | Leadership School, Great Lakes, IL | Battalion Commander | 3/1966-4/1966 |
|  | Naval Station, Great Lakes, IL | Battalion Commander | 4/1966-9/1969 |
| Triple P, Inc. Necedah, WI 54646 | Triple P Gaskets Necedah, WI | Maintenance Mechanic | 4/1971 - 12/1978 |

19      Decedent's exposure to asbestos and asbestos-containing products caused severe and

20  permanent injury to the decedent, including, but not limited to breathing difficulties and/or

21  other lung damage, and ultimately, death.  Decedent was diagnosed with lung cancer on or

22  about May 2008, and with asbestosis and asbestos-related pleural disease on or about April

23  2009.

24      Decedent retired from his last place of employment as a result of becoming disabled due

25  to an illness not related to asbestos.  He had therefore suffered no disability from his asbestos-

26  related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

27

28                                                                      EXHIBIT A

# EXHIBIT B

EXHIBIT B

DEFENDANTS

| | |
|---|---|
| GENERAL ELECTRIC COMPANY | WESTERN MacARTHUR COMPANY |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | MacARTHUR COMPANY |
| | WESTERN ASBESTOS COMPANY |
| METROPOLITAN LIFE INSURANCE COMPANY | KAISER VENTURES LLC |
| | YARWAY CORPORATION |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | ATLAS VALVE COMPANY, INC. |
| | DOES 1-800 |

ALTERNATE ENTITY

| | |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| | |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| | |
| WESTERN MacARTHUR COMPANY | WESTERN ASBESTOS CO. |
| | MAC ARTHUR COMPANY |
| | BAY CITIES ASBESTOS COMPANY |
| | F.K. PINNEY, INC. |
| | |
| KAISER VENTURES LLC | KAISER VENTURES, INC. |
| | OREGON SHIPBUILDING CORPORATION |
| | KAISER STEEL RESOURCES, INC. |
| | KAISER CO., INC. |
| | KAISER STEEL CORPORATION |
| | KAISER RESOURCES, INC. |
| | KAISER SHIPYARD - VANCOUVER |
| | KSC RECOVERY, INC. (Successor to the Bankruptcy Estate of Kaiser Steel Corporation) |
| | |
| YARWAY CORPORATION | YARNALL-WARING COMPANY |
| | YARNALL-WARING CO. |

EXHIBIT B

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

**EXHIBIT C**

EXHIBIT C

DEFENDANTS

WESTERN MacARTHUR COMPANY
MacARTHUR COMPANY
WESTERN ASBESTOS COMPANY
DOES 1001-2000

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| WESTERN MacARTHUR COMPANY/MacARTHUR COMPANY/WESTERN ASBESTOS COMPANY | Various | Various |

EXHIBIT C

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT H

1

<u>EXHIBIT H</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
DOES 5000-8000

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT H

**EXHIBIT I**

1

<u>EXHIBIT I</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
DOES 5000-7500

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT I

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT J

1

<u>EXHIBIT J</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
DOES 7400-7500

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT J**

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS